**DANIEL E. BECNEL, JR.**

Our office began accepting clients in the Formaldehyde Litigation well over a year ago. Our office has consulted with fourteen different law firms from Texas, South Carolina, Mississippi, Louisiana and Florida concerning the Formaldehyde case.

Our office has retained numerous experts, including Dr. John Doull from Kansas who wrote the book "Cassarett & Doull's Toxicology, The Basic Science of Poisons." Dr. Doull set the standard for formaldehyde in the atmosphere well over thirty years ago for the United States Government. Our office also retained Dr. Daniel Acosta, a Pharmacologist and Toxicologist from Cincinnati. Our office also retained Dr. Suzanne Parisian, former FDA Medical Officer, and a Pathologist from Arizona and Dr. Thaddeus Goddish of Ball State University in Muncie, Indiana. In addition, my office has hired Professor Arthur Miller from the Harvard Law School and New York University School of Law on issues dealing with class certification and the fairness of any proposed settlement. We have also hired Professor Dane Ciolino as our expert in legal ethics particularly relating to Mass Torts.

Our office filed the necessary paperwork to institute the MDL in this litigation. I personally flew to New York to coordinate oral arguments and was asked by all parties to present the oral argument before the MDL Panel in New York which assigned the case to the Eastern District of Louisiana, U.S. District Judge Kurt D. Engelhardt.

Our office also has been disseminating relevant information to all lawyers involved and have coordinated numerous conference calls and an in person meeting in LaPlace, Louisiana on November 15, 2007. Matt Moreland of my office will make a full report to the Court concerning the meeting and the suggestions made by all lawyers and/or firms who have filed cases in this litigation.

I believe my reputation for working cooperatively with plaintiff attorneys is evidenced by the fact that in most major litigation in Louisiana involving class actions, my office is usually asked to handle the finances, prepare the proof of claims, secure the experts, and organize and complete the disbursement. I was asked to do this very thing in the Murphy Oil Litigation which was recently settled for $330 million. My office hired over 80% of all of the experts in that case, handled the finances and my computer specialist handled the Proof of Claims office in that litigation.

Among the major MDL's in which I received committee appointments are the following:

MDL No. 330 - <u>Swine Flu Immunization Products Liability Litigation</u>. This was one of the first major vaccine cases in the United States. I was a member of the Plaintiffs' Legal Committee appointed by U.S. District Judge Gearhart Gisel (deceased). My office handled the case finances, as well as performed document review at the Center for Disease Control and the National Institute of Health. This case was fully litigated and ultimately settled. Our office kept all time sheets for submission to the Court.

MDL No. 926 - <u>In Re Breast Implant Products Liability Litigation</u>. My office supplied forty-three full-time lawyers, paralegals and computer specialists for document review for over two years at the document depository in Cincinnati, Ohio. I personally took the deposition of the CEO of Dow Corning Corporation and Dr. Georgeaide, the inventor of the MEC Breast Implant device. In addition, my office supplied over four million dollars to finance this litigation when the Committee was unable to continue funding the case. This case resulted in a settlement in excess of $7 billion.

MDL No. 1014 - <u>Orthopedic Bone Screw Products Liability Litigation</u>. My office supplied numerous individuals to the document depository who worked on this case full-time for over four years. In addition, when only three or four members of the Plaintiffs' Legal Committee could finance the case, I used over $2 million of my personal finances to prevent the litigation from ending. This case was ultimately resolved in federal court in Philadelphia for $100 million as well as in federal court in California and state court in Tennessee. I was personally involved in this litigation and took many of the depositions in the United States and France.

MDL No. 1038 - <u>Norplant Contraceptive Products Liability Litigation</u>. As a member of the Plaintiffs' Steering Committee, I was responsible for organizing, managing and maintaining the National Document Depository at my LaPlace office. My office supplied all computers, shelving, desks and most of the personnel to review millions of documents.

MDL No. 1057 - <u>Telectronics Pacing Systems, Inc., Accufix "J" Leads Products Liability Litigation</u>.   My office was asked by U.S. District Judge Spiegel to organize the Plaintiffs' Committee.   I personally took many of the depositions and secured many of the experts which were utilized in a summary jury trial.   This case was ultimately settled for the policy limits of $100 million.

MDL No. 1203 - <u>In Re Diet Drug (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation</u>.   My office filed the original petition for a MDL and U.S. District Judge Bechtle appointed me co-chair of the Federal/State Liaison Committee.   This case settled for $3.7 billion dollars in federal court as a class action settlement and $18 billion in state courts with individual settlements.

MDL No. 1355 - <u>In Re Propulsid Products Liability Litigation</u>.   My office filed the first Propulsid case and initiated the MDL.   Appointed by U.S. District Judge Eldon Fallon to the Executive Committee. This case settled for $100 million.

MDL No. 1373 - <u>Bridgestone/Firestone, Inc. ATX, ATX II and Wilderness Tires Products Liability Litigation</u>.   Our office was involved in the MDL taking depositions, motion practice, and ultimately settling individual cases and the class in state court after the Seventh Circuit reversed the certification of the class.

MDL No, 1401 - <u>Sulzer Inter-Op Hip Prosthesis Products Liability Litigation</u>.   My office initiated the MDL transfer in this litigation and I was appointed to the Plaintiffs' Steering Committee by U.S. District Judge Kathleen O'Malley.   I spent weeks in Vienna, Austria taking depositions and the case was ultimately resolved for $1 billion.   Our office also reviewed many of the documents and hired many of the experts and law professors dealing with "veil piercing" issues.

MDL No. 1431 - <u>In Re Baycol Products Liability Litigation</u>.   My office initiated the MDL transer in the Baycol case and was asked by the Plaintiffs' Committee to fly to Cologne, Germany to meet with the Board of Directors of Bayer AG at a shareholders meeting to initiate settlement discussions.   I was appointed to the Plaintiffs' Steering Committee by U.S. District Judge Michael Davis and was involved in the creation of a grid which was ultimately used in a $1.3 billion settlement.

MDL No. 1477 - <u>In Re Serzone Products Liability Litigation</u>.   Our office filed one of the first Serzone cases and initiated the MDL transfer.   I was appointed a member of the Plaintiffs' Steering Committee and this case recently settled for approximately $80 million.   My office represents many of the claimants.

MDL No. 1481 - <u>In Re Meridia Products Liability Litigation</u>.   Our office initiated the MDL transfer   in this litigation.     I was appointed a member of the Plaintiffs' Steering Committee.    This case was lost.

MDL No. 1535 - <u>In Re Welding Rod Products Liability Litigation</u>.   My office initiated the MDL transfer in this litigation and I was appointed to the Plaintiffs' Steering Committee by Judge O'Malley.   My office had six lawyers working full time on document review.   I secured many of the experts and one of my clients was scheduled to be first "bellwether" case tried before Judge O'Malley in Cleveland.   Additionally, I have taken a number of the depositions in this matter.

MDL No. 1626 - <u>In Re Accutane Products Liability Litigation</u>.   After Accutane was granted MDL status, I was asked to be a member of the Plaintiffs' Steering Committee, concentrating on experts and document review.

MDL No. 1629 - <u>In Re Neurontin Marketing and Sales Practices Litigation</u>.   My office initiated the MDL transfer in this litigation.   Settlement thus far has been paid to the U.S. Government for $430 million and to the "whistleblower" Dr. Franklin for $28 million.   The consumer class, as well as the individual suicide cases are pending.   I was appointed Co-Lead Counsel to the Plaintiffs' Steering Committee by U.S. District Judge Patti B. Saris.

MDL No. 1632 - <u>In Re High Sulfur Content Gasoline Products Liability Litigation</u>.   My office filed the first suit in this litigation and my office initiated the MDL transfer.   Agreements were reached with Motiva (Shell) and defense counsel to allow a contemporaneous settlement program and litigation.   Lawyers from throughout the country asked that I serve as Liaison Counsel.   My office also handles the finances for the Plaintiffs' Steering Committee.

MDL No. 1657 - <u>In Re Vioxx Products Liability Litigation</u>.   My office initiated the MDL transfer in this case.   I was asked by the lawyers throughout the U.S. to argue for numerous jurisdictions, and the case was assigned to the Eastern District of Louisiana, U.S. District Judge Eldon Fallon.   The case settled for $4.85 billion and our office has over 1000

claimants that will participate in this settlement.

MDL No. 1742 - In Re Ortho Evra Products Liability Litigation. Member of the Plaintiffs' Steering Committee appointed by U.S. District Judge David Katz for the Northern District of Ohio. I was also on the Settlement Committee and 200 cases have been settled with thousands more to go.

MDL No. 1708 - In Re Guidant Corp. Implantable Defibrillators Products Liability Litigation. Member of the Plaintiffs' Steering Committee. A comprehensive settlement was reached in this case and made public yesterday, $245 million.

MDL No. 1746 - In Re Medtronics, Inc. Implantable Defibrillators Products Liability Litigation. Member of the Plaintiffs' Steering Committee and the Settlement Committee. A confidential settlement was reached in this case.

MDL No. 1785 - In Re Bausch & Lomb, Inc. Contact Lens Solution. Appointed to the Executive Committee by U.S. District Judge David Norton for the District of South Carolina.

MDL No. 1845 - In Re ConAgra Peanut Butter Products Liability Litigation. Appointed to the Plaintiffs' Steering Committee by U.S. District Judge Thomas W. Thrash, Jr.

Our office was also involved in the Minot, North Dakota Train Derailment case, the largest anhydrous ammonia release in the country. The case recently settled for $35 million against the Canadian Pacific Railroad.

Our office was involved in the DPC Festus, Missouri case which was the largest chlorine release in the United States which injured approximately 345 people, as well as extensive property damage. The case has settled for $22 million.

As Lead Trial Counsel, I tried the Vulcan Chemical Release case in Ascension Parish before a jury, which ultimately resulted in a plaintiffs' verdict and, thereafter, a $14 million settlement for thousands of plaintiffs. The trial lasted three months.

I also tried, as Lead Trial Counsel, the Mother's Day Bus Crash which involved the death of 24 individuals and the injuries of 17 people before Judge Rosemary Ledet. This trial lasted three months.

I was a founding member of the Castano Tobacco Litigation which ultimately resulted in a global settlement in excess of $200 billion. I took many of the depositions and I also represented the State of California in the settlement. I was involved in the Tobacco Litigation before Judge Ganucheau, the trial lasted almost a year and resulted in over a half a billion dollar judgment.

Judge Eldon Fallon and I were on the Plaintiffs' Committee in M/V George Prince Frosta ferry boat sinking in the Mississippi River in which 78 people were killed. He and I, and our Committee, were able to settle this case before U.S. District Judge Alvin Rubin (deceased) within one year of the event. Today, this is still the largest maritime disaster in the United States.

Should the Court wish me to serve as the Plaintiffs' Liaison Counsel, I can personally assure the Court I will attend every meeting and work cooperatively as I have done in the past with lawyers from throughout the country. Additionally, I have the financial ability and experience to properly fund this litigation.

Our office has nurses, paralegals, computer specialists and sufficient office space to provide an independent document depository should that be necessary. This office is fifteen minutes from the New Orleans airport and has twenty computer stations which can be activated at a moments notice.

Our office is an equal opportunity employer with African Americans and Hispanics, as both secretaries and lawyers.

I would be honored if the Court gives me the opportunity to serve as the Plaintiffs' Liaison Counsel. It is clear from the efforts I have expended and the tasks thus far accomplished in this litigation that I have sufficient time to dedicate to the prosecution of this case. Moreover, my extensive experience and history of cooperation on similar committees speaks for itself, and supports the conclusion that I am abundantly qualified to serve as the Plaintiffs' Liaison Counsel in this MDL.