**SEAN K. TRUNDY**

I, Sean K. Trundy, submit this memorandum in support of my nomination as liaison counsel.

In 1992, I graduated with a Bachelor of Arts in English, *magna cum laude*, from The Citadel, Military College of South Carolina, where I held the rank of cadet lieutenant colonel, the second highest ranking position in the Corps of Cadets. While in college, I studied at Gonville & Caius College, Cambridge University, England. I earned my Juris Doctor degree from the University of South Carolina School of Law in 1995. Upon graduation from law school, I joined the downtown Charleston law firm Wise & Cole, which became the present day Pratt-Thomas & Walker. I remained there for more than 8 years, becoming a partner and member of the firm's executive committee. I was rated "BV" by Martindale-Hubbell after only 5 years of practice. At the beginning of 2004, I left my former firm to practice by myself.

I am a member of the following bars and courts:

South Carolina Bar
U.S. District Court, District of South Carolina
U.S. Courts of Appeals for the Fourth, Fifth, Sixth and Eighth Circuits

I am a civil trial lawyer. I have served as lead lawyer in more than 50 jury trials, participated in countless others, and handled scores of non-jury trials and arbitrations. I have tried cases and handled motions in the South Carolina state and federal courts, the Delaware federal court, and bankruptcy courts throughout the nation. I have argued in the South Carolina Supreme Court and Court of Appeals more than a dozen times and have written numerous briefs in the Fourth, Fifth, Sixth and Eighth Circuit Courts of Appeals, plus a petition for certiorari to the U.S. Supreme Court.

Of relevance to this action, my practice has included serious personal injury litigation on behalf of both plaintiffs and defendants, construction litigation involving mold contamination, sick building syndrome, and defective building products, including glued wood products, and mass tort litigation. On this last topic, I served for years with another lawyer as national counsel coordinating the defense for an insurer, Safety National Casualty Corporation, which wrote commercial policies for some of the nation's largest manufacturers and then found itself embroiled in coverage issues arising out of the mass tort maelstrom. We represented Safety National in massive coverage disputes brought by Dow Corning, Bristol Myers Squibb, Federal Mogul and others. These coverage actions involved the nation's largest law firms and were litigated in jurisdictions from coast to coast.

Certainly, the Court should have an explanation for why lawyers from South Carolina are involved in this case. In 1989, Charleston, South Carolina was devastated by Hurricane Hugo. Americans turned out in force to help Charleston recover. In September, 2005, just after Katrina hit, several of my more altruistic contractor friends enlisted me to join them on a trip to the Gulf Coast to find uninsured residents we could help with our hammers and chainsaws (this was really just returning the favor we had received in 1989). We made friends with a lot of Mississippi and Louisiana residents. I also have some friends in the national media and learned of the first inklings of the

1

formaldehyde trailer crisis before it was aired.

Armed with that knowledge, I enlisted the help of Paul Dominick of Nexsen Pruet, LLC (http://www.nexsenpruet.com/) to investigate whether a viable case existed. I travelled to New Orleans and Paul and I were retained by several hurricane victims and paid for some of the first air quality tests in trailers (April/May, 2006). Once we were assured of the validity of the crisis, we filed the very first case on behalf of hurricane victims against FEMA and the trailer manufacturers, *Hillard et al. v. Gulfstream Coach et al.* Hillard, filed on May 18, 2006, has served to toll the statute of limitations for all Katrina and Rita victims.

When our case was filed, I was contacted by numerous news outlets. The news stories (Trundy was interviewed by Dan Rather and the CBS Evening News) inspired several Indiana residents, who had participated in the manufacturing of the trailers themselves, to contact me. After researching the law on contacts with former employees of defendants, I travelled to Indiana twice and met with numerous of these employees. We have learned much about why these trailers are so dangerous, and have pursued this angle with requests for production to the manufacturer defendants (stayed while the action was transferred to the MDL).

Paul and I have argued several motions regarding claims against FEMA and the causes of action against the manufacturers, both in front of Judge Lemmon.

If chosen as liaison counsel, I will bring with me the resources of Paul Dominick and Nexsen Pruet. Nexsen Pruet has more than 170 lawyers in multiple offices. It has deployed its staff and lawyers already on massive research topics regarding class certification, the claims against FEMA, and perhaps most importantly, the remedies available to the Plaintiffs. Nexsen Pruet has vast experience with large class actions and complex cases.

Paul Dominick individually has deep experience with building products, especially glued wood products. We believe that knowledge will be particularly valuable because the formaldehyde problem stems from the use of inferior oriented-strand board. Paul has served as counsel in numerous class actions and other large cases, including tobacco, fuel spill, mining and defective building products litigation.

I maintain a very low volume caseload and stand ready to devote myself full time to this litigation. I feel a sense of ownership and obligation, having filed first. Nexsen Pruet's financial and manpower resources stand behind me. I am grateful also for the vast experience of the other lawyers involved in this case, and look forward to working closely with them.