UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In Re: FEMA TRAILER | | * | CIVIL ACTION 2:07-MD-1873 |
| FORMALDEHYDE PRODUCTS | | | |
| LIABILITY LITIGATION | | * | |
| | | | |
| | | * | JUDGE ENGLEHARDT - DIV. N |
| | | | |
| PERTAINS TO: | NELSON versus | * | MAGISTRATE ROBY - MAG. 4 |
| | GULF STREAM, | | |
| | U.S.D.C. W.D. LA | * | |
| | No. 07-921 | | |
| | | * | |

**************************************************************************

RESPONSE AND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

MAY IT PLEASE THE COURT:

Plaintiffs, Kimberly Nelson, et al, hereby respond to this Court's November 20, 2007, Order.

Plaintiffs appreciate this opportunity to: 1) clarify their motion for preliminary injunction and explain

the irreparable harm that is occurring every day; 2) request that the Federal Emergency Management

Agency ("FEMA") and FEMA's Administrator R. David Paulison ("Paulison") be immediately

joined as defendants; and 3) specify particular injunctive and mandatory relief that ir required to

alleviate the suffering of 52,000 trailer residents, prior to this Court's January 18, 2008 Initial

Conference.

**Irreparable Harm is Occurring Every Day**[1]

As the Agency for Toxic Substances and Disease Registry ("ATSDR") recently reported, these hurricane victims are being exposed to formaldehyde levels that are "sufficient to cause acute symptoms in some people," can cause allergic sensitization, and increased risk of cancer.  *See* ATSDR Updated Health Consultation (Exhibit A to Motion for Preliminary Injunction).  Children, especially those with asthma, allergies, and other pre-existing medical conditions, which are prevalent among the FEMA trailer residents are particularly susceptible to formaldehyde exposure.  Elderly hurricane victims, many of whom have lung and heart conditions, are also especially susceptible to formaldehyde.

Even residents who are not suffering obvious symptoms are still living in constantly fear due to not knowing if they are being exposed to formaldehyde, not knowing if they are being silently injured, and fearing that they face an increased risk of cancer.  In the past three months, more than 4,600 trailer residents (nearly nine percent of the occupied trailers) have called FEMA with health concerns.

Many of the FEMA trailer residents are impoverished and lack access to medical care.  The community health care providers, pediatricians and general practice physicians who treat the trailer residents are not experts in diagnosing and treating toxic chemical exposures.

Further, the residents and their physicians do not know the formaldehyde levels that each

---

[1]     Plaintiffs hereby adopt and incorporate by reference the factual statements, documents and citations contained in their previously-filed motion for preliminary injunction, memorandum in support of motion for preliminary injunction, proposed amended complaint, original complaint and pleadings filed in the McGuire litigation.  Plaintiffs further reserve and request that right to present evidence and testimony at a contradictory hearing on their motion for preliminary injunction, pursuant to Rule 65.

person has been exposed to, and cannot obtain that data themselves. Air sampling and analytical

testing for formaldehyde costs $1,000 or more per trailer. Formaldehyde testing will enable

physicians to determine which illness are formaldehyde-related. Formaldehyde testing could also

alleviate resident's fears, if some of the trailers are found to not have hazardous formaldehyde levels.

### FEMA is a Necessary Party

This Court's November 6, 2007 Pretrial Order #1, Section 7, resulted in the Nelson plaintiffs'

pending, unopposed motion for leave to file an amended complaint, which names FEMA and

Paulison as defendants, being delayed until after the January 18, 2008 Initial Conference. *See*

Magistrate Judge's Order, dated November 21, 2007 (Doc. 14).[2]  Plaintiffs urge this Court to either

modify Section 7 of Pretrial Order #1, or modify the Magistrate Judge's Order, to grant plaintiffs

leave to file their amended complaint and serve FEMA and Paulison.[3]

---

[2]      If, as Justice Department counsel has contended in correspondence to counsel, plaintiffs' amended complaint does not contain a sufficient statement of this Court's jurisdiction over FEMA, further amendment to assert jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 706, the Fifth Amendment to the Constitution and the Equal Access to Justice Act, 28 U.S.C. § 2142, and claims pursuant to FEMA's leases with trailer residents can be readily accomplished by adding a few paragraphs to the complaint. *See Batiste v. United States*, No. 02-2654 (E.D. La. 2/13/03) 2003 U.S. Dist. Lexis 2315. *See also Ridgely v. FEMA*, No. 07-2146 (E.D. La. 6/13/07) 2007 U.S. Dist. Lexis 43002.

[3]      Plaintiffs hereby reserve their right to move this Court to review the Magistrate Judge's Order, pursuant to Rule 72 and Local Rule 74.1E.

Until FEMA and Paulison become parties to this case, FEMA will be free to move,[4] donate,[5]

and/or sell[6] the contaminated trailers, and will not be subject to this Court's evidence preservation

order.  *See* Pretrial Order #1, Section 13.  Once FEMA and Paulison becomes parties, much of the

relief requested in plaintiffs' preliminary injunction motion will be accomplished since FEMA and

Paulison will be subject to this Court's evidence preservation order.  *See* Pretrial Order#1, Sec. 13.

Without FEMA and Paulison's participation, the preliminary injunction motion is futile,

since only Paulison and FEMA can move people out of trailers, test every trailer and provide medical

services to trailer residents.  While a two month delay for the preliminary injunction hearing might

be reasonable if only monetary damages were at issue, more than 50,000 children, adults and elderly

individuals living in FEMA trailers are enduring illness and fears related to formaldehyde exposure

every day.  "Delays that might be altogether reasonable in the sphere of economic regulation are less

tolerable when human lives are at stake.  This is particularly true when the very purpose of the Act

is to protect those lives."  *Public Citizens Health Research Group v. Auchter*, 702 F.2d 1150, 1157 -

1158 (D.C. Cir.  1983)(mandating OSHA action on toxic chemical exposure).

Documents released by the House Committee show that FEMA was involved in the actual

---

[4]     FEMA has moved many of the trailers from trailer parks to storage lots in
        Louisiana and elsewhere.  About 300 trailers are moved every week, according to
        FEMA reports.

[5]     On September 11, 2007, FEMA announced a program to transfer 1,000 unused
        "as is" temporary housing units (mobile homes) to Native American tribal
        governments, which supposedly comply with HUD's formaldehyde standards for
        larger trailers.  FEMA suppled mobile homes to Native American tribes and other
        victims of the Southern California fires, without performing formaldehyde testing.

[6]     FEMA unilaterally temporarily halted trailer sales due to the formaldehyde
        concerns, but is free to resume trailer sales at any time.

design of the toxic trailers and has known about hurricane victims' formaldehyde exposure for many months.  Even if plaintiffs are eventually prevented from obtaining monetary damages from FEMA by the byzantine requirements of the Federal Tort Claims Act, FEMA's participation in this litigation will be necessary, particularly if the trailer manufacturers and contractors assert government contractor defenses.

<strong><u>Immediate Relief is Necessary and Appropriate</u></strong>

To alleviate the trailer resident's medical conditions and emotional distress this Court should take the following actions:

**1.      Allow FEMA and Paulison to Be Immediately Joined as Defendants:**

Plaintiffs respectfully request that this Court modify Section 7 of  Pretrial Order #1, or alternatively, modify the Magistrate Judge's November 21, 2007 Order, to allow the amended complaint to be filed.  Once the amended complaint is filed, plaintiffs can serve FEMA and Paulison through the U.S. Attorney and Attorney General within a few days.  Joining FEMA before the Initial Conference will also assure that the initial conference "is not a perfunctory exercise."  Manual for Complex Litigation, § 11.21, p. 57.  Without FEMA's counsel attending the Initial Conference, the case management plan will almost certainly have to be revised to accommodate the Department of Justice.

**2.      Order FEMA and Paulison to Immediately Move Residents Out of Trailers:**

FEMA already has a list of more than 2,273 Louisiana residents that called FEMA during September, 2007, and asked to be moved out of trailers due to health concerns.  Those individuals are still living in the toxic trailers and are still being exposed to formaldehyde.  Those men, women and children are but a small fraction of the people who want to get out of the hazardous trailers.  This

Court should order FEMA and Paulison to immediately provide housing and/or hotel vouchers to all trailer residents.  Ending residents' exposure is the first step in alleviating their medical conditions and emotional distress.

**3.      Order FEMA and Paulison to Provide Immediately Medical Information and Services To Trailer Residents:**

FEMA is authorized to direct any Federal agency to provide staff, resources and supplies for the provision of health and safety measures, pursuant to 42 U.S.C. § 5170a.  ATSDR and the Centers for Disease Control have already studied the FEMA trailers and issued reports.  Now, ATSDR and CDC's medical and toxicology expertise should be made available to all FEMA trailer residents and their physicians, so that their formaldehyde-related conditions can be diagnosed and treated.

**4.      Order FEMA and Paulison to Test Occupied Trailers:**

Four months have passed since FEMA Administrator, R. David Paulison, told the House Committee that formaldehyde testing would begin.  To date, none of the 52,000 occupied trailers have been tested, despite ATSDR and CDC being poised to begin, and despite ATSDR reporting on the formaldehyde levels that can cause medical conditions.  Formaldehyde testes performed by the Sierra Club and by independent testing laboratories indicates that most of the trailers have formaldehyde levels  above ATSDR and OSHA's criteria.  Without knowing the formaldehyde levels that they were exposed to, trailer residents and their physicians have to speculate and cannot make informed decisions on medical treatment.

Depending on the number of staff assigned to this effort, testing all 52,000 trailers may take

several months.[7]   Trailers occupied by children and the elderly who have preexisting medical conditions and residents with acute respiratory and circulatory conditions should be given priority for testing.  Formaldehyde data on a few hundred occupied trailers may also allow ATSDR, CDC and independent experts to assess the overall risks and to isolate particular brands and/or batches of trailers that have the highest formaldehyde levels.

## Conclusion

This Court's immediate intervention is required to end the daily formaldehyde exposure of the more than 50,000 children, adults and the elderly, who are still living in FEMA trailers; provide expert medical services and medical information to the affected residents; and begin formaldehyde testing of occupied trailers.  As this Court noted, the preservation of evidence and discovery provisions of Pretrial Order #1 will accomplish the remainder of plaintiffs' requests for injunctive relief, once FEMA and Paulison become parties to this litigation.

**WHEREFORE**, for the foregoing reasons, plaintiffs, Kimberly Nelson, et al, pray that this Court, after a contradictory evidentiary hearing, grant their motion for preliminary injunction and grant injunctive and mandatory relief.

---

[7]    To expedite the formaldehyde testing and avoid future disputes about the test results, this Court should order FEMA to consult with ATSDR and CDC, and with plaintiffs' experts to jointly develop a mutually-acceptable, reliable and accurate formaldehyde testing protocol.

Respectfully submitted,

__/s/ John K. Etter____
ROY J. RODNEY, JR.(# 2079)
JOHN K. ETTER (# 25042)
RODNEY & ETTER, LLC
200 West Congress Street, Ste. 650
Lafayette, LA 70501
Telephone:(337) 232-6924
Fax: (337) 232-6854
**Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has this day been forwarded to all known counsel of record , by placing same in the United States Mail, properly addressed and postage pre-paid, or via electronic filing and transmission. Signed this 28th day of November, 2007.  A copy of this pleading will also be hand delivered to the Office of the United States Attorney for the Eastern District of Louisiana.

_____/s/ John K. Etter_____

JOHN K. ETTER