UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  FEMA TRAILER                              MDL NO. 1873
        FORMALDEHYDE
        PRODUCTS LIABILITY LITIGATION             SECTION "N" (4)

                                                  JUDGE ENGELHARDT
                                                  MAG. JUDGE ROBY

This Document Relates to: All Cases

**OBJECTION TO THE PROPOSED COMMITTEE
AS PRESENTLY CONSTITUTED**

NOW INTO COURT, comes Daniel E. Becnel, Jr. who in accordance with the Pretrial Order entered the 6th day of November, 2007 and the December 12, 2007 Order avers as follows:

1.

While I have no personal objection to anyone the Court appointed to serve on the PSC, it should be pointed out that most of the Court's appointments consist of sole practitioners' which raises the question of whether they have the financial resources to prosecute this case for the many years an MDL typically lasts.  For this reason, most major MDL Courts have appointed between twelve to twenty-one people to the PSC.  This is due to the fact that a case involving as many defendants as are in this case, requires multi-tracking depositions and prosecuting these cases involves enormous costs.  The Court should be made aware that the average assessment in the last six MDL's in which my office has been involved ranged from $150,000 to $500,000 per firm.  The average trial of a major MDL bellweather case costs at least $500,000.  It is my belief that the committee, as presently appointed, will incur substantial difficulties because of a lack of personnel within the respective firms and the lack of their respective financial abilities to undertake such a heavy burden of expenditures.  A document depository must be established with an average cost of at least $10,000 per month.  A document depository administrator will

cost approximately $75,000 to $100,000 per year. The average MDL will last four to five years. Most firms who are sole practitioners will therefore have to employ numerous independent contractors with an average cost of $50,000 to $100,000 per person, per year. These costs will all be called "held" costs and in my vast experience in MDL's, this MDL Committee will suffer from a lack of funds due to the inability of certain members to contribute and/or timely pay assessments. More often than not, over 40% of the firms appointed to a MDL's PSC, fail to timely pay their assessments. The Court need only examine the recent Murphy Oil case to see an example of this fact. This is in spite of the fact that the Murphy Oil case was a fairly simple toxic tort case with settlement negotiations ongoing from the very beginning. Difficult cases such as the FEMA Trailer Formaldehyde Products Liability Litigation will require numerous assessments due to the multiple defendants and numerous Trial Teams and issues related to massive motion practice.

2.

Another good example would be the Vioxx case. The average cost of the MDL trials before Judge Fallon was $2,000,000.00. I personally do not believe that the Committee as appointed has the necessary financial resources to fund such expensive litigation. I therefore urge the Court to reconsider its December 12, 2007 Order and vastly expand the Committee in the interest of serving the litigants.

3.

The defendants have unlimited resources and most of the plaintiffs cannot fund any portion of the case thus, all funding will have to be supplied by the law firms involved. Because of the economy and the decreased ability to borrow funds, this will put the plaintiffs case at risk for lack of financial resources and the manpower necessary to fulfill the responsibility of a Plaintiffs' Committee. An example of the amount of money necessary to fund major complex litigation is enclosed from the last two cases that my office settled with other committees. One was the DPC case in which my office had to spend

$907,975.04 (See attached marked "Exhibit A"). The other was the Minot, North Dakota Train Derailment case in which my office had to spend $568,837.35 (See attached marked "Exhibit B"), plus lend one of my co-counsel $300,000 to cover their expenses that they were unable to meet. I am also enclosing herein a recent article from DRI Magazine (See attached marked "Exhibit C"). Because I have personally been involved in at least half of the cases listed, I can assure the Court from my experience and knowledge what financial and personal resources are needed to effectively run an MDL. For example, in MDL 926, In Re Silicone Gel Breast Implants Product Liability Litigation, my office had to lend four firms over $6,000,000 because they were unable to meet payroll and assessments. As a result of this, the MDL was about to collapse ─ this was three years before the ultimate seven billion dollar settlement was reached. In MDL 1657, In Re Vioxx Marketing, Sales Practices and Products Liability Litigation, my office had seven people working full-time for over three years reviewing documents of only one defendant, Merck. Another example is the Gaylord Litigation which has now been ongoing for over ten years. The PLC was unable to get a loan and some committee members were unable to pay their assessments and it was necessary that my office advance an additional $2,000,000 to cover expenses, experts, depositions, etc. Few, if any firms with whom I work from across the country are willing to make that type of commitment.

4.

Every month that goes by requires infusions of cash and personnel into these large MDL's. Law firms are unwilling to commit resources or personnel if they are not members of the MDL Committee, due to the risk these costs will not be reimbursed. Therefore, I once again urge the Court to reconsider the number of counsel appointed and expand it considerably to avoid disadvantages to the plaintiffs because of a lack of money or personnel. When Fact Sheets are required in this MDL, this will be a massive undertaking, especially considering many firms had aggressive advertising programs with hundreds, or if

not thousands of cases. Those firms must commit their resources to their individual clients, as well as take on the responsibility of performing common benefit work and paying assessments. The Committee as presently constituted consists of excellent lawyers with fine credentials but some are lacking in the financial and personnel resources necessary to fund an MDL.

5.

Despite the fact that basically no one wanted to serve as Liaison Counsel, this Honorable Court has appointed Mr. Gerald Meunier and Justin Woods as Co-Liaison Counsel. Mr. Meunier and Mr. Woods previously indicated to plaintiffs' lawyers that they did not wish to serve in this capacity because of their responsibilities in the MRGO case, the Levee Failure case and the Vioxx case. It should be noted that Mr. Meunier and Mr. Woods were asked to serve in that capacity at an early meeting in this litigation and they both respectively declined. Subsequently, the Court entered an Order asking for the submission of names. Only two people were willing to serve as Liaison Counsel and the Court chose not to appoint either.

Respectfully submitted,

/s/ Daniel E. Becnel, Jr.
DANIEL E. BECNEL, JR. (#2926)
BECNEL LAW FIRM, LLC
106 West Seventh Street
P. O. Drawer H
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445

CERTIFICATE OF SERVICE

I do hereby certify that I have on this 13th day of December, 2007, served a copy of the above and foregoing pleading on counsel for all parties via electronic cm/ecf to those registered users and via regular mail to those not registered.

/s/ Daniel E. Becnel, Jr.