## MULTIDISTRICT LITIGATION

Examining Rationales Used by the Judicial Panel on Multidistrict Litigation

# The Selection of a Transferee Court for MDLs

By James M. Wood, Monique Hunt McWilliams and Delaney M. Anderson

**P**harmaceutical, medical device and vaccine products liability litigation.





James M. Wood is a partner in the Oakland office of Reed Smith where, for more than 30 years, he has focused on the representation of manufacturers of prescription medicines and medical devices. Monique Hunt McWilliams is counsel in corporate litigation for Eli Lilly and Company in Indianapolis. Her practice focuses on managing domestic and international product liability litigation, including the management of litigation for alliance/collaboration products. Delaney M. Andersen is a J.D. Candidate at the University of California, Berkeley–School of Law.

EXHIBIT C

The Judicial Panel on Multidistrict Litigation (JPML or "the Panel") is authorized to transfer civil actions from multiple federal districts to a single judge if they involve one or more common questions of fact. The transfer is done to consolidate all pretrial proceedings. The Panel does so when it determines that the transfer "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. §1407 (West 2003). In deciding whether to consolidate litigation, the Panel is not constrained by any venue restrictions. Id. §1407(g); Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 213 (1977). Indeed, the Panel has complete discretion to choose a transferee court that it feels will best serve the statute's goal of judicial efficiency.

For the 22 years between 1975 and July of 2007, the Panel centralized cases involving pharmaceutical, medical device and vaccine products liability litigation in 51 multidistrict litigations. (These cases are listed in Table A, pages 14–15, by MDL number, name of litigation, year coordinated and rationales for transfer.) In doing so, it used any one of 10 distinct rationales in making its transfer orders. This article examines the Panel's use of these 10 transfer rationales and identifies areas that a company seeking or opposing coordination might develop in its pleadings filed with the Panel.

### Background to Multidistrict Litigation

While the Panel has no authority over the transferee judges during multidistrict proceedings, its initial selection of a transferee court can have a significant impact on the parties involved in multidistrict litigation. 28 U.S.C. §1407(b).

The transfer and centralization process may be initiated by one or more of the parties in the action, or by the Panel itself on an order to show cause. Id. §1407(c); Federal Judicial Center, Manual for Complex Litigation §20.131, at 219–20 (4th ed. 2004). A transfer is effective when the Panel issues a transfer order with a schedule of cases to be transferred. The order is filed in the Office of the Clerk of the transferee court. Manual for Complex Litigation §20.131, at 220. Once actions are transferred, the transferee judge conducts pretrial proceedings and makes important determinations regarding discovery and other pretrial matters. Id. §20.132, at 222. Although a transfer under Section 1407 prohibits the transferee judge from conducting a trial, the court can rule on dispositive motions, including motions to dismiss and motions for summary judgment. The transferee judge may also enter consent decrees if the parties reach a settlement during the pretrial proceedings. Id. Since "[f]ew cases are remanded for trial... [and] most multidistrict litigation is settled in the transferee court," the selection of transferee court is a critical concern for all parties. Id. §20.132, at 221–22.

Even though it has complete discretion to determine the most appropriate transferee forum, the Panel over time has used 10 distinct rationales in selecting transferee districts for pharmaceutical, medical device and vaccine products liability litigation. Defendants involved in litigation of this type might benefit from understanding these rationales behind the selection of the transferee court. This background is particularly important given the Panel's strong proclivity to grant transfer motions involving product liability cases. *See* Mark Herrmann & Pearson Bownas, *Making Book on the MDL Panel: Will It Centralize Your Products Liability Cases?*, 8 BNA Class Action Litigation Report, February 9, 2007, at 110–116; James M. Wood, *The Judicial Coordination of Drug and Device Litigation: A Review and Critique*, 54 Food and Drug Law Journal 325, 330 (1999). By understanding how the Panel selects transferee courts, defendants, whether they initially support or oppose transfer, can evaluate their strategies regarding multidistrict litigation. In drafting a response, defendants should also carefully consider what venues to support at an early stage, since orders of the panel are not reviewable "except by extraordinary writ pursuant to the provisions of title 28, section 1651, United States Code." 28 U.S.C. §1407(e).

### Overview of the Transfer of Prescription Product Cases

Since 1973, the Panel has transferred 51 prescription product cases. (*See* Table A, pages 14–15, for the list of the 51 MDL litigations broken down by year with a summary of the rationales for the transfers.)



During the 1970s and 1980s, there were only six prescription product cases transferred for coordination. Since then, there has been a steady increase in the number of cases coordinated, with the high being 20 cases transferred in 2006 alone. (See Table B, "Number of Pharmaceutical, Medical Device and Vaccine Products Liability Multidistrict Litigations Transferred by Year," page 16.) For the 51 cases transferred, the selected jurisdictions of Minnesota, the Eastern District of Pennsylvania,

Table A

| MDL | | Year | 1. Capacity of court | 2. # AGDIPs | 3. Location of discovery | 4. Geographic center | 5. Judge experience | 6. Judge expertise | 7. Stage of actions | 8. Parties favor | 9. Neutral judge | 10. Docket in jurisdiction | Rationales |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MDL 211 | In re A.H. Robins Co., Inc. 'Dalkon Shield' IUD Products Liability Litigation | 1975 | | 1 | | 1 | | | | | | | A |
| MDL 330 | In re Swine Flu Immunization Products Liability Litigation | 1978 | | | 1 | | | | | | | | B |
| MDL 343 | In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation | 1978 | | 1 | 1 | 1 | | | | | | | C |
| MDL 367 | In re Cutter Laboratories, Inc. "Braunwald-Cutter" Aortic Heart Valve Products Liability Litigation | 1979 | | | | | | 1 | 1 | 1 | | | D |
| MDL 486 | In re Richardson-Merrell Inc. | 1982 | | | 1 | | | | | | | | E |
| MDL 780 | In re Sabin Oral Polio Vaccine Products Liability Litigation | 1988 | | 1 | 1 | | | | | | | | F |
| MDL 850 | In re Cordis Pacemaker Products Liability Litigation | 1990 | | | | | | 1 | 1 | | | | G |
| MDL 865 | In re Showa Denko K.K. L-Tryptophan Products Liability Litigation-II | 1990 | | 1 | | | | 1 | | 1 | | | H |
| MDL 907 | In re Eli Lilly & Co., Prozac Products Liability Litigation | 1991 | | 1 | 1 | | | | | | | | I |
| MDL 920 | In re Pantopaque Products Liability Litigation | 1992 | | | | | | | 1 | | | | J |
| MDL 926 | In re Silicone Gel Breast Implants Products Liability Litigation | 1992 | | | | 1 | | | | 1 | | | |
| MDL 986 | In re Factor VIII or IX Concentrate Blood Products Litigation | 1993 | | | 1 | 1 | | 1 | | | | | |
| MDL 1001 | In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation | 1994 | | 1 | | 1 | | 1 | | | | | |
| MDL 1004 | In re Abbott Laboratories Omniflox Products Liability Litigation | 1994 | | | 1 | | | 1 | | | | | |
| MDL 1013 | In re Copley Pharmaceutical, Inc., (Albuterol) | 1994 | | | | | 1 | | | 1 | | | |
| MDL 1014 | In re Orthopedic Bone Screw Products Liability Litigation | 1994 | | 1 | | | | 1 | | | 1 | | |
| MDL 1034 | In re Fialuridine ("FIAU") Products Liability Litigation | 1994 | | 1 | 1 | | | 1 | 1 | | | | |
| MDL 1038 | In re Norplant Contraceptive Products Liability Litigation | 1994 | | 1 | | | | | | | | | |
| MDL 1048 | In re Febatol Products Liability Litigation | 1995 | | | | | | 1 | 1 | | | | |
| MDL 1057 | In re Teletronics Pacing System Inc. Accufix Atrial "J" Leads Products Liability Litigation | 1995 | | | | 1 | 1 | 1 | | | | | |
| MDL 1060 | In re Baxter Healthcare Corp. Gammagard Products Liability Litigation | 1995 | | | 1 | | | | | | | | |
| MDL 1148 | In re Latex Gloves Products Liability Litigation | 1997 | | | | | 1 | | | | | | |
| MDL 1203 | In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation | 1997 | | | | | 1 | | | | | | |
| MDL 1348 | In re Rezulin Products Liability Litigation | 2000 | 1 | | | | 1 | | | | | | |
| MDL 1355 | In re Propulsid Products Liability Litigation | 2000 | 1 | | | 1 | | | | | | | |
| MDL 1387 | In re ProtoGen Sling and Vesica System Products Liability Litigation | 2001 | 1 | 1 | | | | | | | | | |
| MDL 1396 | In re St. Jude Medical, Inc., Silzone Heart Valves Products Liability Litigation | 2001 | 1 | | 1 | 1 | | | | | | | |
| MDL 1401 | In re Sulzer Orthopedics, Inc., Hip Prosthesis and Knee Prosthesis Products Liability Litigation | 2001 | 1 | | | 1 | | | | | | | |
| MDL 1407 | In re Phenylpropanolamine (PPA) Products Liability Litigation | 2001 | 1 | | | | | | | | | | |

the Northern District of Ohio, the Southern District of New York and the Southern District of Ohio have collectively reviewed 19 of the 51 cases. (*See* Table C, "Number of Pharmaceutical, Medical Device and Vaccine MDLs Transferred to Each District," page 16 and Table D, "MDLs Transferred to Each District," page 17.) At least four judges have been selected no less than twice. (*See* Table E, "Transfer Judges for Pharmaceutical, Medical Device and Vaccine Products Liability Litigation," pages 18–19.)

| MDL | Year | 1. Capacity of court | 2. # Actions | 3. Location of discovery | 4. Geographic center | 5. Judge experience | 6. Judge expertise | 7. Stage of actions | 8. Parties favor | 9. Neutral judge | 10. Coord. w/ state action |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MDL 1431 In re Baycol Products Liability Litigation | 2001 | 1 | | | | | | | | | |
| MDL 1477 In re Serzone Products Liability Litigation | 2002 | 1 | | | | | | | | | |
| MDL 1481 In re Meridia Products Liability Litigation | 2002 | 1 | | | | 1 | | | | | |
| MDL 1507 In re Prempro Products Liability Litigation | 2003 | 1 | 1 | | 1 | | | | | | |
| MDL 1574 In re Paxil Products Liability Litigation | 2003 | 1 | | | | 1 | | | | | |
| MDL 1596 In re Zyprexa Products Liability Litigation | 2004 | | | | | 1 | | | | | |
| MDL 1598 In re Ephedra Products Liability Litigation | 2004 | | | | | | 1 | | | | |
| MDL 1626 In re Acutane Products Liability Litigation | 2004 | 1 | 1 | | | | 1 | | | | |
| MDL 1657 In re Vioxx Marketing, Sales Practices and Products Liability Litigation | 2005 | 1 | | | | 1 | | | | | 1 |
| MDL 1699 In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation | 2005 | 1 | | | | 1 | | | | | |
| MDL 1708 In re Guidant Corp. Implantable Defibrillators Products Liability Litigation | 2005 | 1 | 1 | 1 | 1 | | | | | | |
| MDL 1724 In re Viagra Products Liability Litigation | 2006 | 1 | | | | 1 | | | | | |
| MDL 1726 In re Medtronic, Inc., Implantable Defibrillators Products Liability Litigation | 2005 | | | 1 | 1 | | | | | | |
| MDL 1736 In re Celexa and Lexapro Products Liability Litigation | 2006 | 1 | | | | 1 | 1 | | | | |
| MDL 1742 In re Ortho Evra Products Liability Litigation | 2006 | | | | | 1 | | | 1 | 1 | |
| MDL 1760 In re Aredia and Zometa Products Liability Litigation | 2006 | 1 | 1 | | | | | 1 | 1 | | |
| MDL 1763 In re Human Tissue Products Liability Litigation | 2006 | | | 1 | | | 1 | | | | |
| MDL 1769 In re Seroquel Products Liability Litigation | 2006 | | | | | | 1 | | | | |
| MDL 1785 In re Bausch & Lomb Inc. Contact Lens Solution Products Liability Litigation | 2006 | | | 1 | 1 | | | | | | |
| MDL 1789 In re Fosamax Products Liability Litigation | 2006 | | 1 | | | 1 | | | 1 | | |
| MDL 1836 In re Mirapex Products Liability Litigation | 2007 | | | | 1 | | 1 | 1 | | | |
| MDL 1842 In re Kugel Mesh Hernia Patch Products Liability Litigation | 2007 | | | 1 | | | | | | | |
| **Total # Rationale** | | 18 | 15 | 15 | 15 | 14 | 12 | 9 | 7 | 2 | 1 |

Rationales
A. Capacity of the district's courts (in terms of technology, time, resources, whether they are handling other MDLs)
B. Number of actions pending in the transferee district
C. Location of the headquarters or other facility of a defendant (where discovery may be found)/Location of headquarters of federal agency with best "nexus to principal issues" (Swine Flu)
D. Geographically central location for the litigation
E. Judge (or court) has experience in directing MDL litigation
F. Judge has expertise in the specific type of litigation (because presided over actions with similar questions); Judge already presiding over proceeding involving same defendants; possibility of coordination
G. Stage of actions pending in the transferee district (early stages or advanced; advanced can also mean exclusion of an action)
H. Some number (or majority) of parties (P, D, Both) favor the forum
I. Transfer to a district with a neutral judge that neither party requested to ensure perception of fairness (Breast Implant)
J. Coordination with related state actions



Table B. Number of Pharmaceutical, Medical Device and Vaccine Products Liability Mutlidistrict Litigations Transferred By Year



Table C. Number of Pharmaceutical, Medical Device and Vaccine MDLs Transferred to Each District

Table D. MDLs Transferred to Each District

| # of MDLs Transferred → District | MDL | Case |
|---|---|---|
| 7 → Minnesota | MDL 1001 | In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation |
| | MDL 1396 | In re St. Jude Medical, Inc., Silzone Heart Valves Products Liability Litigation |
| | MDL 1431 | In re Baycol Products Liability Litigation |
| | MDL 1708 | In re Guidant Corp. Implantable Defibrillators Products Liability Litigation |
| | MDL 1724 | In re Viagra Products Liability Litigation |
| | MDL 1726 | In re Medtronic, Inc., Implantable Defibrillators Products Liability Litigation |
| | MDL 1836 | In re Mirapex Products Liability Litigation |
| 3 → Eastern District Pennsylvania | MDL 1014 | In re Orthopedic Bone Screw Products Liability Litigation |
| | MDL 1148 | In re Latex Gloves Products Liability Litigation |
| | MDL 1203 | In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation |
| 3 → Northern District Ohio | MDL 1401 | In re Sulzer Orthopedics, Inc., Hip Prosthesis and Knee Prosthesis Products Liability Litigation |
| | MDL 1481 | In re Meridia Products Liability Litigation |
| | MDL 1742 | In re Ortho Evra Products Liability Litigation |
| 3 → Southern District New York | MDL 1348 | In re Rezulin Products Liability Litigation |
| | MDL 1598 | In re Ephedra Products Liability Litigation |
| | MDL 1789 | In re Fosamax Products Liability Litigation |
| 3 → Southern District Ohio | MDL 486 | In re Richardson-Merrell Inc. |
| | MDL 850 | In re Cordis Pacemaker Products Liability Litigation |
| | MDL 1057 | In re Teletronics Pacing System Inc. Accufix Atrial "J" Leads Products Liability Litigation |
| 2 → Central District California | MDL 1060 | In re Baxter Healthcare Corp. Gammagard Products Liability Litigation |
| | MDL 1574 | In re Paxil Products Liability Litigation |
| 2 → District of Columbia | MDL 330 | In re Swine Flu Immunization Products Liability Litigation |
| | MDL 1034 | In re Fialuridine ("FIAU") Products Liability Litigation |
| 2 → Eastern District Louisiana | MDL 1355 | In re Propulsid Products Liability Litigation |
| | MDL 1596 | In re Zyprexa Products Liability Litigation |
| 2 → Eastern District New York | MDL 367 | In re Cutter Laboratories, Inc. "Braunwald-Cutter" Aortic Heart Valve Products Liability Litigation |
| | MDL 1596 | In re Zyprexa Products Liability Litigation |
| 2 → Maryland | MDL 780 | In re Sabin Oral Polio Vaccine Products Liability Litigation |
| | MDL 1387 | In re ProtoGen Sling and Vesica System Products Liability Litigation |
| 2 → Middle District Florida | MDL 1626 | In re Acutane Products Liability Litigation |
| | MDL 1769 | In re Seroquel Products Liability Litigation |
| 2 → New Jersey | MDL 920 | In re Pantopaque Products Liability Litigation |
| | MDL 1763 | In re Human Tissue Products Liability Litigation |
| 2 → Northern District California | MDL 1048 | In re Febatol Products Liability Litigation |
| | MDL 1699 | In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation |
| 2 → Northern District Illinois | MDL 986 | In re Factor VIII or IX Concentrate Blood Products Litigation |
| | MDL 1004 | In re Abbott Laboratories Omniflox Products Liability Litigation |
| 2 → South Carolina | MDL 865 | In re Showa Denko K.K. L-Tryptophan Products Liability Litigation—II |
| | MDL 1785 | In re Bausch & Lomb Inc. Contact Lens Solution Products Liability Litigation |
| 1 → Eastern District Arkansas | MDL 1507 | In re Prempro Products Liability Litigation |
| 1 → Eastern District Michigan | MDL 343 | In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation |
| 1 → Eastern District Missouri | MDL 1736 | In re Celexa and Lexapro Products Liability Litigation |
| 1 → Eastern District Texas | MDL 1038 | In re Norplant Contraceptive Products Liability Litigation |
| 1 → Kansas (on OSC) | MDL 211 | In re A.H. Robins Co., Inc. 'Dalkon Shield' IUD Products Liability Litigation |
| 1 → Middle District Tennessee | MDL 1760 | In re Aredia and Zometa Products Liability Litigation |
| 1 → Northern District Alabama | MDL 926 | In re Silicone Gel Breast Implants Products Liability Litigation |
| 1 → Rhode Island | MDL 1842 | In re Kugel Mesh Hernia Patch Products Liability Litigation |
| 1 → Southern District Indiana | MDL 907 | In re Eli Lilly & Co., Prozac Products Liability Litigation |
| 1 → Southern District West Virginia | MDL 1477 | In re Serzone Products Liability Litigation |
| 1 → Western District Washington | MDL 1407 | In re Phenylpropanolamine (PPA) Products Liability Litigation |
| 1 → Wyoming | MDL 1013 | In re Copley Pharmaceutical, Inc. (Albuterol) |

## The Rationales

The 10 rationales used by the Panel in selecting a transferee court were identified by analyzing the transfer orders in the 51 multidistrict litigations involving pharmaceutical, medical device and vaccine products liability cases between 1975 and July of 2007. The Panel publishes most of its transfer orders in the Federal Supplement, and now makes the more recent orders available online through the Panel website. Judicial Panel on Multidistrict Litigation, http://www.jpml.uscourts.gov/index.html. However, the Panel is not required by its rules to publish every transfer order it issues, and multiple transfer orders were never released for publication, nor are they on its website. Copies of unpublished orders are retained by the court, and can be requested from the clerk of the Panel.

The transfer orders are generally brief and have two main components: the Panel's reasons for granting the centralization of the actions, and its rationales behind the selection of the transferee court. While the Panel's initial decision to grant centralization is of utmost importance, this article does not address the court's reasoning in denying or granting motions for centralization. Rather, the analysis here focuses on the court's determination of transferee forum in cases where it decided to grant centralization. (The rationales used for each of the 51 cases are charted in Table A, pages 14–15. Table F, "Usage of Rationales by Year," page 20, identifies the use of these rationales by year and Table G, "Use of Transfer Rationales," page 21, ranks them in descending order.)

The 10 rationales identified from the 51 transfer orders, from the most frequently used to the least, are: 1) the capacity of the district court to handle multidistrict litigation; 2) the number of actions pending in the transferee district; 3) the location of relevant discovery, such as at a corporate headquarters; 4) selecting a geographically central location for the litigation; 5) selecting a judge with experience conducting multidistrict litigation; 6) selecting a judge with expertise in the subject area; 7) the stage of the actions pending in the transferee district; 8) whether either party favors selection of the transferee court; 9) selecting a neutral judge; and 10) coordinating the federal multidistrict litigation with related state actions.

Aside from these rationales that the Panel frequently uses in determining a transferee court, the Panel has also enumerated at least two principles that are *not* used in identifying that transferee court. First, the panel does *not* consider in its decision the suggestion by either party that a certain district or judge is more or less likely to render a favorable or unfa-

Table E. Transfer Judges for Pharmaceutical, Medical Device and Vaccine Products Liability Litigation

| MDL | | Year | Transferee Judge |
|---|---|---|---|
| MDL 920 | In re Pantopaque Products Liability Litigation | 1992 | Ackerman, Harold A. |
| MDL 1004 | In re Abbott Laboratories Omniflox Products Liability Litigation | 1994 | Aspen, Marvin E. |
| MDL 1203 | In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation | 1997 | Bechtle, Louis C. |
| MDL 1699 | In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation | 2005 | Breyer, Charles R. |
| MDL 1013 | In re Copley Pharmaceutical, Inc. (Albuterol) | 1994 | Brimmer, Clarence A. |
| MDL 1760 | In re Aredia and Zometa Products Liability Litigation | 2006 | Campbell, Todd J. |
| MDL 1769 | In re Seroquel Products Liability Litigation | 2006 | Conway, Anne C. |
| MDL 1431 | In re Baycol Products Liability Litigation | 2001 | Davis, Michael J. |
| MDL 907 | In re Eli Lilly & Co., Prozac Products Liability Litigation | 1991 | Dillin, Hugh |
| MDL 1348 | In re Rezulin Products Liability Litigation | 2000 | Duffy, Kevin Thomas |
| MDL 1355 | In re Propulsid Products Liability Litigation | 2000 | Fallon, Eldon E. |
| MDL 1657 | In re Vioxx Marketing, Sales Practices and Products Liability Litigation | 2005 | Fallon, Eldon E. |
| MDL 1708 | In re Guidant Corp. Implantable Defibrillators Products Liability Litigation | 2005 | Frank, Donovan W. |
| MDL 330 | In re Swine Flu Immunization Products Liability Litigation | 1978 | Gesell, Gerhard A. |
| MDL 1477 | In re Serzone Products Liability Litigation | 2002 | Goodwin, Joseph R. |
| MDL 986 | In re Factor VIII or IX Concentrate Blood Products Litigation | 1993 | Grady, John F. |
| MDL 1481 | In re Meridia Products Liability Litigation | 2002 | Gwin, James S. |
| MDL 1742 | In re Ortho Evra Products Liability Litigation | 2006 | Katz, David A. |
| MDL 1789 | In re Fosamax Products Liability Litigation | 2006 | Keenan, John F. |
| MDL 343 | In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation | 1978 | Kennedy, Cornelia G. |
| MDL 1034 | In re Fialuridine ("FIAU") Products Liability Litigation | 1994 | Lamberth, Royce C. |
| MDL 1387 | In re ProtoGen Sling and Vesica System Products Liability Litigation | 2001 | Legg, Benson Everett |
| MDL 1842 | In re Kugel Mesh Hernia Patch Products Liability Litigation | 2007 | Lisi, Mary H. |
| MDL 1148 | In re Latex Gloves Products Liability Litigation | 1997 | Ludwig, Edmund V. |
| MDL 1048 | In re Febatol Products Liability Litigation | 1995 | Lynch, Eugene F. |
| MDL 1001 | In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation | 1994 | Magnuson, Paul A. |

vorable ruling for it or be predisposed to the litigant's contention. *See In re Glenn W. Turner Enterprises Litigation*, 368 F. Supp. 805 (Jud. Pan. Mult. Lit. 1973) Second, the inconvenience of counsel is generally not a factor considered, unless the inconvenience of counsel would significantly affect the convenience of parties or witnesses. *See In re Anthracite Coal Antitrust Litigation*, 436 F. Supp. 402 (Jud. Pan. Mult. Lit. 1977).

Transfer orders have been examined to try to tease out patterns and trends that would allow parties to predict where the Panel will transfer a specific multidistrict litigation. However, in the past, it has been determined that "[p]recedent, unfortunately, is not helpful" in this respect. *See Wood, supra*, at 334; *see also* Cahn, *supra* note 2, at 214–15. Indeed, the wide discretion of the Panel makes it exceedingly difficult to predict which rationales it will apply in selecting the transferee forum for a specific case. In selecting a court, the Panel must evaluate the factors present in each case and balance the competing interests. Cahn, *supra* note 2, at 214–15. However, it is still worthwhile to understand the rationales frequently used by the court. While parties cannot predict how the Panel will determine the forum for their centralized litigation, defendants who understand the principles and how they are used can evaluate which of their preferred transferee courts has the best chance of being selected by the Panel.

### The Capacity of the District Court to Handle Multidistrict Litigation

This factor appears especially important to consider in selecting a suggested transferee forum. It is the most frequently offered rationale for transfer by the Panel, used in 18 of the 51 (35 percent) cases reviewed. However, this number alone does not tell the whole story. The rationale was first used by the Panel in 2000, 15 years after its first transfer of a prescription product case. *Id.* (The first instance of the rationale was in MDL 1348 *In re Rezulin Products Liability Litigation* (Jud. Pan. Mult. Lit. 2000) (unpublished). (*See* Table F, "Usage of Rationales by Year," page 20, for a chronology of the use of each of the 10 rationales.) Since that time, it has been used in 18 out of 28 transfer orders. Specifically, the Panel cites to caseload conditions and resources of the district including available technology. *See, e.g.*, MDL 1396 *In re St. Jude Medical, Inc., Silzone Heart Valves Products Liability Litigation* (2001) (unpublished); MDL 1431 *In re Baycol Products Liability Litigation* (2001 Jud. Pan. Mult. Lit.) (2001 WL 34134820). The Panel stays keenly aware of the caseload and capacity of district courts, and keeps this in mind when assigning multidistrict litigation.

| MDL | | Year | Transfer Judge |
|---|---|---|---|
| MDL 1724 | In re Viagra Products Liability Litigation | 2006 | Magnuson, Paul A. |
| MDL 1763 | In re Human Tissue Products Liability Litigation | 2006 | Martini, William J. |
| MDL 1626 | In re Acutane Products Liability Litigation | 2004 | Moody, James S. |
| MDL 780 | In re Sabin Oral Polio Vaccine Products Liability Litigation | 1988 | Motz, Frederick |
| MDL 1785 | In re Bausch & Lomb Inc. Contact Lens Solution Products Liability Litigation | 2006 | Norton, David C. |
| MDL 1401 | In re Sulzer Orthopedics, Inc., Hip Prosthesis and Knee Prosthesis Products Liability Litigation | 2001 | O'Mally, Kathleen McDonald |
| MDL 865 | In re Showa Denko K.K. L-Tryptophan Products Liability Litigation—II | 1990 | Perry, Matthew J. |
| MDL 1574 | In re Paxil Products Liability Litigation | 2003 | Pfaelzer, Marianna R. |
| MDL 926 | In re Silicone Gel Breast Implants Products Liability Litigation | 1992 | Pointer, Sam C. |
| MDL 1598 | In re Ephedra Products Liability Litigation | 2004 | Rakoff, Jed S. |
| MDL 1060 | In re Baxter Healthcare Corp. Gammagard Products Liability Litigation | 1995 | Real, Manuel L. |
| MDL 850 | In re Cordis Pacemaker Products Liability Litigation | 1990 | Rice, Walter H. |
| MDL 1726 | In re Medtronic, Inc., Implantable Defibrillators Products Liability Litigation | 2005 | Rosenbaum, James M. |
| MDL 1836 | In re Mirapex Products Liability Litigation | 2007 | Rosenbaum, James M. |
| MDL 1407 | In re Phenylpropanolamine (PPA) Products Liability Litigation | 2001 | Rothstein, Barbara Jacobs |
| MDL 486 | In re Richardson-Merrell Inc. | 1982 | Rubin, Carl B. |
| MDL 1038 | In re Norplant Contraceptive Products Liability Litigation | 1994 | Schell, Richard A. |
| MDL 1736 | In re Celexa and Lexapro Products Liability Litigation | 2006 | Sippel, Rodney W. |
| MDL 1057 | In re Teletronics Pacing System Inc. Accufix Atrial "J" Leads Products Liability Litigation | 1995 | Spiegel, S. Arthur |
| MDL 211 | In re A.H. Robins Co., Inc. 'Dalkon Shield' IUD Products Liability Litigation | 1975 | Their, Frank G. |
| MDL 1396 | In re St. Jude Medical, Inc., Silzone Heart Valves Products Liability Litigation | 2001 | Tunheim, John R. |
| MDL 367 | In re Cutter Laboratories, Inc. "Braunwald-Cutter" Aortic Heart Valve Products Liability Litigation | 1979 | Weinstein, Jack B. |
| MDL 1596 | In re Zyprexa Products Liability Litigation | 2004 | Weinstein, Jack B. |
| MDL 1507 | In re Prempro Products Liability Litigation | 2003 | Wilson, William R. |
| MDL 1014 | In re Orthopedic Bone Screw Products Liability Litigation | 1994 | Yohn, William H. |

### The Number of Actions Pending in the Transferee District

Of the 51 multidistrict proceedings reviewed, the court cited the number of actions pending in the transferee district as a rationale for transferring the cases to that district 15 times (29 percent). (The rationale was used first in 1975 in MDL 211 *A.H. Robins Co, Inc. 'Dalkon Shield' IUD Products Liability Litigation*, 406 F. Supp. 540 (Jud. Pan. Mult. Lit. 1975). (*See* Table G, "Use of Transfer Rationales by Judicial Panel on Multidistrict Litigation," page 21.) This rationale is used most consistently when a single district houses a disproportionate number of the pending actions. The court may also use the rationale in transferring some cases without making it explicit in the transfer order. For example, in MDL 1863 *In re Mirapex Products Liability Litigation* (2007), the court did not cite the number of actions pending as a rationale for transfer in its order. Despite that omission, the fact that 54 out of 58 of the actions were pending in the selected transferee district was likely considered by the Panel.

While the number of actions pending in a potential transferee district is a factor in selecting the appropriate district for centralization under 28 USCS §1407, it is not controlling, especially where actions are nearly equally divided between two districts, or where another factor considered by the court significantly outweighs it. *See* MDL 1760 *In re Aredia and Zometra Products Liability Litigation* (Jud. Pan. Mult. Lit. 2006) (transferring actions to district with four actions pending rather than one of two districts with 15 actions pending each). In addition, having a significant number of actions, or indeed any actions, pending in a transferee district is not required. On 14 occasions (27 percent), the Panel transferred litigation to a transferee court where no actions were pending at the time of transfer.

### The Location of Relevant Discovery

The location of relevant discovery, including documents and witnesses, was given by the Panel as a factor in transferring 15 actions (29 percent). In most of these actions, that meant transferring the case to a location near the headquarters or a facility of a sole or key defendant or of a government agency. *See, e.g.*, MDL 330 *In re Swine Flu Immunization Products Liability Litigation*, 446 F. Supp. 244 (1978); MDL 486 *In re Richardson-Merrell Inc.*, 533 F. Supp. 489 (Jud. Pan. Mult. Lit. 1982). The argument for choosing a transferee court near a hub of relevant discovery appears to be more persuasive with the Panel in cases that have a single defendant or a small number of defendants, where discovery will be found mainly in a few locations. *See, e.g.*, MDL 486 *In re Richardson-Merrell Inc.*, 533 F. Supp. 489 (Jud. Pan. Mult. Lit. 1982); MDL 1708 *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation* (Jud. Pan. Mult. Lit. 2005); MDL 1785 *In re Bausch & Lomb Inc. Contact Lens Solution Products Liability Litigation*.

### Selecting a Geographically Central Location for the Litigation

One of the main concerns of the Panel is to ensure that the multidistrict litigation is assigned to a court where it can be conducted efficiently. Efficiency includes minimizing costs and reducing the time demands on both the parties and the court. Because of these concerns, a frequently cited factor supporting a transferee district is its geographically central location for the litigation. The Panel used this rationale in 15 of the 51 proceedings examined (29 percent). (*See* Table G, "Use of Transfer Rationales by Judicial Panel on Multidistrict Litigation," page 21.) The rationale was most often used where the actions to be centralized were spread over several geographically disperse districts, and a central location with access to transportation was an appropriate forum. *See, e.g.*, MDL 211 *In re A.H. Robins Co., Inc. 'Dalkon Shield' IUD Products Liability Litigation*, 406 F. Supp. 540 (Jud. Pan. Mult. Lit. 1975); MDL 1742 *In re Ortho Evra Products Liability Litigation* (Jud. Pan. Mult. Lit. 2006).

### Selecting a Judge with Experience Conducting Multidistrict Litigation

Another significant factor considered by the Panel is whether the judge in the transferee forum is experienced with multidistrict litigation and complex litigation. The Panel has said that "[w]here each of three districts in which actions are pending has been suggested by various parties as appropriate transferee district and no district clearly stands out as most appropriate transferee forum, actions may be transferred under 28 USCS §1407 to a district in which the judge is best qualified to supervise actions toward most just and expeditious conclusion." *In re South Cent. States Bakery Products Antitrust Litigation*, 433 F. Supp. 1127 (Jud. Pan. Mult. Lit. 1977). Accordingly, the Panel used this rationale in transferring litigation in 14 of the 51 actions reviewed (27 percent). (*See* Table G, "Use of Transfer Rationales by Judicial Panel on Multidistrict Litigation," page 21.)

Table F. Usage of Rationales by Year/Number of Pharma, Medical Device and Vaccine MDLs Transferred by Year

| Year | Rationale | | | | | | | | | | Total MDLs for Year |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | |
| 1975 | | 1 | | 1 | | | | | | | 2 |
| 1978 | | 1 | 2 | 1 | | | | | | | 4 |
| 1979 | | | | | | 1 | 1 | 1 | | | 3 |
| 1982 | | | 1 | | | | | | | | 1 |
| 1988 | | 1 | 1 | | | | | | | | 2 |
| 1990 | | 1 | | | | 2 | 1 | 1 | | | 5 |
| 1991 | | 1 | 1 | | | | | | | | 2 |
| 1992 | | | | | 1 | | 1 | | 1 | | 3 |
| 1993 | | | 1 | 1 | | 1 | | | | | 3 |
| 1994 | | 4 | 2 | 1 | 1 | 2 | 2 | 1 | 1 | 1 | 15 |
| 1995 | | | 1 | 1 | 1 | 1 | 1 | 1 | | | 6 |
| 1997 | | | | | 2 | | | | | | 2 |
| 2000 | 2 | | | 1 | 1 | | | | | | 4 |
| 2001 | 5 | 1 | 1 | 2 | | | | | | | 9 |
| 2002 | 2 | | | | 1 | | | | | | 3 |
| 2003 | 2 | 1 | | 1 | 1 | | | | | | 5 |
| 2004 | 1 | 1 | | | 1 | 2 | | | | | 5 |
| 2005 | 3 | 1 | 2 | 2 | 2 | | | | | | 10 |
| 2006 | 3 | 2 | 2 | 3 | 3 | 2 | 2 | 3 | | | 20 |
| 2007 | | | 1 | 1 | | 1 | 1 | | | | 4 |
| Totals | 18 | 15 | 15 | 15 | 14 | 12 | 9 | 7 | 2 | 1 | |

### Selecting a Judge with Expertise in the Subject Area

In cases involving "many complex technical and medical questions," the Panel may give great weight to the fact that a district court judge already has developed an expertise in the subject area of the tort. *See* MDL 367 *In re Cutter Laboratories, Inc. "Braunwald-Cutter" Aortic Heart Valve Products Liability Litigation* (Jud. Pan. Mult. Lit. 1979); MDL 1057 *In re Teletronics Pacing System Inc. Accufix Atrial "J" Leads Products Liability Litigation* (Jud.Pan.Mult.Lit. 1995). The Panel has found in 12 cases (24 percent) that a choice of transferee court based on this rationale serves the interests of efficiency and fairness, starting with *Cutter Laboratories, Inc. "Braunwald-Cutter" Aortic Heart Valve Products Liability Litigation* in 1979. The expertise may be developed by having presided over pending actions in the litigation, or having presided over related actions, such as a securities action, against the defendant. *See* MDL 1057 *In re Teletronics Pacing System Inc. Accufix Atrial "J" Leads Products Liability Litigation* (Jud. Pan. Mult. Lit. 1995); MDL 1004 *In re Abbott Laboratories Omniflox Products Liability Litigation* (Jud. Pan. Mult. Lit. 1994). (*See also* Table E, "Transfer Judges," pages 18–19.)

### The Stage of the Actions Pending in the Transferee District

In addition to the number of actions pending in a district, the Panel historically has considered the stage of those actions in making a transfer order. The Panel used this rationale in nine of the 51 (17 percent) transfer orders included in this analysis. (*See* Table G, "Use of Transfer Rationales by Judicial Panel on Multidistrict Litigation," page 20.) Representations from a district in which significant discovery, such as the collection of documents and the taking of depositions, has already been initiated can affect the Panel's decision. *See, e.g.,* MDL 367 *In re Cutter Laboratories, Inc. "Braunwald-Cutter" Aortic Heart Valve Products Liability Litigation,* 465 F. Supp. 1295 at 1297–98 (Jud. Pan. Mult. Lit. 1979); MDL 1014 *In re Orthopedic Bone Screw Products Liability Litigation* (Jud. Pan. Mult. Lit. 1994) (unpublished transfer order). The factor can be a double-edged sword for parties trying to sway the panel toward a certain jurisdiction, since the Panel may also order certain actions excluded from multidistrict litigation proceedings if it finds that, because of their advanced stage, it would be in the interests of justice to do so. *See, e.g.,* MDL 336 *Ortho Pharmaceutical "Lippies Loop" Products Liability Litigation,* 447 F. Supp. 1073 (Jud. Pan. Mult. Lit. 1978) (transfer denied).

### Whether Either Party Favors Selection of the Transferee Court

Where nearly all parties agree not only on transfer but also on a transferee court, the Panel may transfer the action to the mutually agreeable court. *See In re Brown Co. Securities Litigation,* 325 F. Supp. 307. (Jud. Pan. Mult. Lit. 1971). However, such agreement is rare. More likely, one party opposes centralization and there are multiple suggestions from plaintiffs and defendants as to the appropriate forum if the action is transferred. Of the 51 proceedings reviewed, the transferee court was supported by both plaintiff and defendant in only 11 (22 percent). In nine cases (17 percent), the transferee court was supported by neither party. In six of the proceedings (12 percent), the transferee forum was supported by only the defendant; and in 21 cases (24 percent), by only the plaintiff. These data do not mean that the plaintiff's selection is more often granted. Rather, because of the sheer number of plaintiffs in the proceedings, a forum requested by one of them often ultimately becomes the transferee forum.

### Selecting a Neutral Judge

In two cases (four percent), the Panel determined that because such acrimony existed between the parties and counsel, it selected a forum suggested by neither party. The Panel did so in order to ensure that there



> The wide discretion of the Panel makes it exceedingly difficult to predict which rationales it will apply in selecting the transferee forum.

would be no feelings of unfairness resulting from the selection of a transferee forum suggested by either party. *See* MDL 926 *In re Silicone Gel Breast Implants Products Liability Litigation,* 793 F. Supp. 1098 (1992); MDL 1013 *In re Copley Pharmaceutical, Inc., (Albuterol)* (Jud. Pan. Mult. Lit. 1994). This rationale is used in very specific cases where the Panel determines that the "level of acrimony has caused the parties



Table G. Use of Transfer Rationales by Judicial Panel on Multidistrict Litigation

and counsel on the various sides to harbor a perception that they would be unfairly affected by selection of any of the suggested forums." See MDL 1013 *In re Copley Pharmaceutical, Inc., (Albuterol)* (Jud. Pan. Mult. Lit. 1994). The Panel is generally reluctant to take such a position, and did not suggest that any of the transferee courts in these cases would have in fact

Table H. Requested or Supported by MDL

| MDL | Case | Transferee District | Plaintiff | Defendant | Both | Neither | Actions Pending in Transferee District | Total Actions Pending/Transferred | In how many districts | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| MDL 211 | In re A.H. Robins Co., Inc. 'Dalkon Shield' IUD Products Liability Litigation | Kansas (on OSC) | 1 | | | | 16 | 54 | 22 | |
| MDL 330 | In re Swine Flu Immunization Products Liability Litigation | District of Columbia | | | | | 0 | 26 | 17 | 5 |
| MDL 343 | In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation | Eastern District Michigan | | 1 | | | 1 | 15 | 12 | |
| MDL 367 | In re Cutter Laboratories, Inc. "Braunwald-Cutter" Aortic Heart Valve Products Liability Litigation | Eastern District New York | 1 | | | | 2 | 15 | 11 | |
| MDL 486 | In re Richardson-Merrell Inc. | Southern District Ohio | | 1 | | | 3 | 45 | 22 | |
| MDL 780 | In re Sabin Oral Polio Vaccine Products Liability Litigation | Maryland | | | | 1 | 1 | 6 | 6 | 6 |
| MDL 850 | In re Cordis Pacemaker Products Liability Litigation | Southern District Ohio | | | 1 | | 1 | 2 | 2 | |
| MDL 865 | In re Showa Denko K.K. L-Tryptophan Products Liability Litigation—II | South Carolina | 1 | | | | 27 | 39 | 10 | |
| MDL 907 | In re Eli Lilly & Co., Prozac Products Liability Litigation | Southern District Indiana | | 1 | | | 0 | ~12 | 9 | |
| MDL 920 | In re Pantopaque Products Liability Litigation | New Jersey | 1 | | | | 1 | 2 | 2 | |
| MDL 926 | In re Silicone Gel Breast Implants Products Liability Litigation | Northern District Alabama | | | 1 | | 0 | 78 | 33 | |
| MDL 986 | In re Factor VIII or IX Concentrate Blood Products Litigation | Northern District Illinois | 1 | | | | 1 | 28 | 6 | |
| MDL 1001 | In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation | Minnesota | | 1 | | | 144 | 173 | 11 | |
| MDL 1004 | In re Abbott Laboratories Omniflox Products Liability Litigation | Northern District Illinois | 1 | | | | 0 | 25 | 19 | 7 |
| MDL 1013 | In re Copley Pharmaceutical, Inc. (Albuterol) | Wyoming | | | 1 | | 0 | 21 | 13 | |
| MDL 1014 | In re Orthopedic Bone Screw Products Liability Litigation | Eastern District Pennsylvania | | 1 | | | 8 | 37 | 13 | |
| MDL 1034 | In re Fialuridine ("FIAU") Products Liability Litigation | District of Columbia | | | 1 | | 2 | 3 | 2 | |
| MDL 1038 | In re Norplant Contraceptive Products Liability Litigation | Eastern District Texas | | | | | 1 | 20 | 16 | 5 |
| MDL 1048 | In re Febatol Products Liability Litigation | Northern District California | | | 1 | | 1 | 2 | 2 | |
| MDL 1057 | In re Teletronics Pacing System Inc. Accufix Atrial "J" Leads Products Liability Litigation | Southern District Ohio | 1 | | | | 3 | 15 | 6 | |
| MDL 1060 | In re Baxter Healthcare Corp. Gammagard Products Liability Litigation | Central District California | | | 1 | | 0 | 16 | 8 | |
| MDL 1148 | In re Latex Gloves Products Liability Litigation | Eastern District Pennsylvania | 1 | | | | 3 | 13 | 8 | |
| MDL 1203 | In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation | Eastern District Pennsylvania | | | | | 0 | 9 | 9 | 5 |
| MDL 1348 | In re Rezulin Products Liability Litigation | Southern District New York | | | | 1 | 0 | 19 | 13 | |
| MDL 1355 | In re Propulsid Products Liability Litigation | Eastern District Louisiana | 1 | | | | 1 | 2 | 2 | |
| MDL 1387 | In re ProtoGen Sling and Vesica System Products Liability Litigation | Maryland | | | | 1 | 1 | 16 | 13 | |
| MDL 1396 | In re St. Jude Medical, Inc., Silzone Heart Valves Products Liability Litigation | Minnesota | | 1 | | | 2 | 8 | 7 | |
| MDL 1401 | In re Sulzer Orthopedics, Inc., Hip Prosthesis and Knee Prosthesis Products Liability Litigation | Northern District Ohio | 1 | | | | 4 | 30 | 13 | |

been unfair, but made a selection of a neutral judge nonetheless in the interest of efficiency. *Id.* This rationale was last used in 1994. (*See* Table G, "Use of Transfer Rationales by Judicial Panel on Multidistrict Litigation," page 21.)

**Coordinating the Federal Multidistrict Litigation with Related State Actions**

The Panel selected the transferee forum for

| MDL | Case | Transferee District | Plaintiff[1] | Defendant[2] | Both[3] | Neither[4] | Actions Pending in Transferee District | Total Actions Pending in Transfer | In how many districts | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| MDL 1407 | In re Phenylpropanolamine (PPA) Products Liability Litigation | Western District Washington | 1 | | | | 6 | 14 | 6 | |
| MDL 1431 | In re Baycol Products Liability Litigation | Minnesota | 1 | | | | 2 | 36 | 20 | |
| MDL 1477 | In re Serzone Products Liability Litigation | Southern District West Virginia | | | | 1 | 0 | 6 | 4 | |
| MDL 1481 | In re Meridia Products Liability Litigation | Northern District Ohio | | | | 1 | 0 | 2 | 2 | |
| MDL 1507 | In re Prempro Products Liability Litigation | Eastern District Arkansas | | | | 1 | 1 | 6 | 4 | |
| MDL 1574 | In re Paxil Products Liability Litigation | Central District California | 1 | | | | 1 | 12 | 11 | |
| MDL 1596 | In re Zyprexa Products Liability Litigation | Eastern District New York | 1 | | | | 0 | 6 | 6 | 8 |
| MDL 1598 | In re Ephedra Products Liability Litigation | Southern District New York | | | | | 0 | 15 | 10 | 5 |
| MDL 1626 | In re Acutane Products Liability Litigation | Middle District Florida | 1 | | | | 3 | 7 | 3 | 9 |
| MDL 1657 | In re Vioxx Marketing, Sales Practices and Products Liability Litigation | Eastern District Louisiana | 1 | | | | 9 | 148 | 41 | |
| MDL 1699 | In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation | Northern District California | 1 | | | | 1 | 31 | 18 | |
| MDL 1708 | In re Guidant Corp. Implantable Defibrillators Products Liability Litigation | Minnesota | 1 | | | | 2 | 6 | 5 | |
| MDL 1724 | In re Viagra Products Liability Litigation | Minnesota | 1 | | | | 1 | 7 | 7 | |
| MDL 1726 | In re Medtronic, Inc., Implantable Defibrillators Products Liability Litigation | Minnesota | | | 1 | | 2 | 25 | 14 | |
| MDL 1736 | In re Celexa and Lexapro Products Liability Litigation | Eastern District Missouri | | | | 1 | 0 | 11 | 8 | |
| MDL 1742 | In re Ortho Evra Products Liability Litigation | Northern District Ohio | | | 1 | | 1 | 13 | 9 | |
| MDL 1760 | In re Aredia and Zometa Products Liability Litigation | Middle District Tennessee | | | 1 | | 4 | 35 | 4 | |
| MDL 1763 | In re Human Tissue Products Liability Litigation | New Jersey | | | 1 | | 5 | 7 | 3 | |
| MDL 1769 | In re Seroquel Products Liability Litigation | Middle District Florida | | 1 | | | 0 | 114 | 6 | 10 |
| MDL 1785 | In re Bausch & Lomb Inc. Contact Lens Solution Products Liability Litigation | South Carolina | | | 1 | | 1 | 10 | 9 | |
| MDL 1789 | In re Fosamax Products Liability Litigation | Southern District New York | | | 1 | | 15 | 19 | 4 | |
| MDL 1836 | In re Mirapex Products Liability Litigation | Minnesota | 1 | | | | 54 | 58 | 5 | |
| MDL 1842 | In re Kugel Mesh Hernia Patch Products Liability Litigation | Rhode Island | 1 | | | | 1 | 13 | 13 | |
| Total # | | | 21 | 6 | 11 | 9 | | | | |

[1] Plaintiff only supported choice of transferee district
[2] Defendant only supported choice of transferee district
[3] Both parties supported choice of transferee district. "Both" includes those who prefer a district in the alternative, and where a limited number of plaintiffs or defendants (or a specified tag along plaintiff) prefer it
[4] Neither party supported choice of transferee district
[5] Not specified
[6] But, D wanted DC, and chosen with this in mind
[7] Forum suggested by intervening plaintiffs in consolidated securities actions pending in that district against Abbott.
[8] Suggested by plaintiffs in potential tag along actions
[9] Defendant supported two of the Middle District of Florida actions remaining in that district.
[10] Defendant requested court select location with experienced jurist, large capacity, convenient transportation.

one litigation out of the 51 reviewed (two percent) based on the rationale that the district could best coordinate the federal multidistrict litigation with related state actions. *See* MDL 1014 *In re Orthopedic Bone Screw Products Liability Litigation* (Jud. Pan. Mult. Lit. 1994). This rationale is in keeping with the Panel's main goal of promoting judicial efficiency. While not a frequently used ra-

> A frequently cited factor supporting a transferee district is its geographically central location for the litigation.

tionale, it could be an important factor for parties to consider in proposing a forum if state litigation is already pending on the same matter. This rationale was last used in 1994. (*See* Table G, "Use of Transfer Rationales by Judicial Panel on Multidistrict Litigation," page 21)

Given the certainty that when there are federal product liability cases there are state cases as well, it is surprising that the Panel has not relied upon this factor more than once. Most states do not have an equivalent to 28 U.S.C. §1407 because state court jurisdiction seldom extends beyond the state borders. *See Long v. Abbott Laboratories*, 1999 WL 33545517 (N.C. Super. 1999). For the reasons it makes sense to coordinate cases in the federal courts under MDL, it may also make sense to coordinate cases pending within a single state's court system. Mark Herrmann & Geoffrey J. Ritts, *Products Liability—Statewide Proceedings*, The National Law Journal (Oct. 2003). Seven states, in fact, have codified procedures for coordinating mass tort litigation in their jurisdictions. They are California, New Jersey, New York, Pennsylvania, Tennessee, Texas and West Virginia. Cal. Civ. Proc. Code §404 (2005); 1B NJPRAC R 4:38A (West 2005); NY Unif. Civ. R., Tr. Cts. §202.69; Pa. R. Civ. P. 213.1 (2004); Tenn. Shelby County Cir. Ct. R. 30 (2005); Tex. Gov't Code Ann. §§74.161–74.164 (Vernon Supp. 2004); W. Va. T.C.R., Rule 26.01 (2004).

If litigation has been coordinated in an MDL proceeding, it would seem clear that it would be even more efficient for state courts to coordinate with or defer to the MDL court. Yet, there is no formal procedure for coordination of related cases pending in state and federal courts. Federal Judicial Center, Manual For Complex Litigation, Fourth 263 (2004) at 264. An exception to this fact would be certification of a national class. However, such certification is unlikely in a mass tort case alleging personal injuries or property damages based on state law causes of action. *Id.* at 376–77. Of the states that have formal state coordination procedures, California, New Jersey, New York and Pennsylvania have deferred, or have procedures in place to defer, to the MDL. New York has even codified deferring to the MDL to promote development of state-federal coordination mechanisms. Herrmann & Ritts, *supra* note 52. In other states, such as California, the purpose for deferral is to avoid duplicating or contradicting the discovery produced in the MDL proceeding. *See Retail Clerks Union Local 648 v. Exxon Corp.*, 1985 WL 15444 (Cal. Super. 1985); *see also Lewis v. Bayer A.G.*, 2002 Phila. Ct. Com. Pl. LEXIS 87, 38 (Phila. Com. P. 2002) ("it seems prudent to adhere to the relevant guidelines in the order" by the MDL judge). Idaho, Maine, Massachusetts and Oklahoma have also deferred to the MDL, although they do not have formal state coordination procedures for mass tort litigation. *Cosgrove By and Through Winfree v. Merrell Dow Pharmaceuticals*, 117 Idaho 470 (Idaho 1989); *Hodge v. Johnson & Johnson Medical, Inc.*, 2002 WL 32068348 (Me. Super. 2002); *Linnen v. A.H. Robins Co., Inc.*, 1999 WL 462015 (Mass. Super. 1999); *Travis v. Leonard Morse Hosp.*, 1996 WL 1293664 (Mass. Super. 1996); *Catalogna v. Copley Pharmaceutical, Inc.*, 3 Mass. L. Rptr. 4411995 WL 809925 (Mass. Super. 1995); *In re Oklahoma Breast Implant Cases*, 847 P.2d 772 (Okla. 1993).

### Conclusion

Knowledge of these rationales does not make it possible to predict conclusively where the Panel will transfer a specific action. The Panel performs a balancing test in each litigation, taking into account all of the relevant rationales. In addition the Panel's analysis can be affected by the potential for tag-along actions, and even perhaps the composition of the Panel itself. While predictions are thus difficult, understanding the rationales does aid companies in preparing their pleadings for the Panel that argue for their preferred transfer location. By taking the Panel's use of these rationales into account, companies can better address the Panel's concerns in their pleadings and present the best case possible for their choice. Choosing a location that comports with the Panel's rationales and effectively pleading its merit can thus help companies influence a very important decision in the multidistrict litigation process.



Table I. Support By Parties for Judicial Panel's Selected Transferee District

- Plaintiff only supported choice of transferee district
- Defendant only supported choice of transferee district
- Both parties supported choice of transferee district
- Neither party supported choice of transferee district

Neither party 9 actions 19%
Plaintiff only 21 actions 45%
Both parties 11 actions 23%
Defendant only 6 actions 13%

Judicial Panel on Multidistrict Litigation

| Panel Member | 1975 | 1977 | 1978 | 1979 | 1980 | 1982 | 1984 | 1988 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alfred Murrah | X | | | | | | | | | | | | | | | | | | | | | | | | |
| John Minor Wisdom | X | X | X | | | | | | | | | | | | | | | | | | | | | | |
| Edward Weinfeld | X | X | X | | | | | | | | | | | | | | | | | | | | | | |
| Edwin A. Robson | X | X | X | X | | | | | | | | | | | | | | | | | | | | | |
| William H. Becker | X | X | | | | | | | | | | | | | | | | | | | | | | | |
| Joseph S. Lord | X | X | X | | | | | | | | | | | | | | | | | | | | | | |
| Stanley A. Weigel | X | X | X | X | | | | | | | | | | | | | | | | | | | | | |
| Andrew A. Caffrey | | X | X | X | X | X | X | X | | | | | | | | | | | | | | | | | |
| Roy W. Harper | | | X | X | X | X | | | | | | | | | | | | | | | | | | | |
| Murray I. Gurfein | | | | | X | X | | | | | | | | | | | | | | | | | | | |
| Charles R. Weiner | | | | | X | X | X | | | | | | | | | | | | | | | | | | |
| Edward S. Northrop | | | | | X | X | | | | | | | | | | | | | | | | | | | |
| Robert Schnacke | | | | | X | X | X | | X | | | | | | | | | | | | | | | | |
| Fred Daugherty | | | | | | X | X | | X | | | | | | | | | | | | | | | | |
| Sam C. Pointer | | | | | | X | X | | | | | | | | | | | | | | | | | | |
| Hugh S. Dillin | | | | | | | X | | X | X | X | | | | | | | | | | | | | | |
| Milton Pollack | | | | | | | X | | X | X | X | X | X | | | | | | | | | | | | |
| Louis Pollak | | | | | | | X | | X | X | X | | | | | | | | | | | | | | |
| John S. Nangle | | | | | | | X | | X | X | X | X | X | X | X | X | X | | | | | | | | |
| Halbert O. Woodward | | | | | | | X | | X | X | X | | | | | | | | | | | | | | |
| Robert R. Merhige | | | | | | | | | X | X | X | X | X | X | X | | | | | | | | | | |
| William B. Enright | | | | | | | | | X | X | X | X | X | X | X | X | | | | | | | | | |
| Clarence A. Brimmer | | | | | | | | | | | X | X | X | X | X | X | | | | | | | | | |
| John F. Grady | | | | | | | | | | | X | X | X | X | X | X | | | | | | | | | |
| Barefoot Sanders | | | | | | | | | | | X | X | X | X | X | X | | | | | | | | | |
| Louis C. Bechtle | | | | | | | | | | | | | X | X | X | X | X | | | | | | | | |
| John F. Keenan | | | | | | | | | | | | | | | | | X | X | X | X | X | X | X | | |
| Terrell Hodges | | | | | | | | | | | | | | | | | | X | X | X | X | X | X | X | |
| Morey L. Sear | | | | | | | | | | | | | | | | | | X | X | | | | | | |
| Bruce M. Selya | | | | | | | | | | | | | | | | | | X | X | X | X | | | | |
| Julia Smith Gibbons | | | | | | | | | | | | | | | | | | X | X | X | | | | | |
| D. Lowell Jensen | | | | | | | | | | | | | | | | | | X | X | X | X | X | X | X | |
| J. Frederick Motz | | | | | | | | | | | | | | | | | | | X | X | X | X | X | X | |
| Robert L. Miller | | | | | | | | | | | | | | | | | | | | X | X | X | X | X | |
| Kathryn H. Vratil | | | | | | | | | | | | | | | | | | | | | X | X | X | X | |
| David R. Hansen | | | | | | | | | | | | | | | | | | | | | | X | X | X | |
| Anthony J. Scirica | | | | | | | | | | | | | | | | | | | | | | | | X | |
| John G. Heyburn II | | | | | | | | | | | | | | | | | | | | | | | | X* | |

☐ = Panel Chairman

*Effective as of June 14, 2007

*** Note: a clear problem with an analysis of this information is that we do not have information for the years where no transfer in these categories were made. Also, some unpublished orders (such as Sabin Oral Polio Vaccine) do not list the then-current panel members. As such, to do a complete analysis, it would be necessary to use oders in other categories from the missing years to fill in the incomplete information. It may be best to contact the Panel clerk and inquire if a listing of Panel judges and their tenures is available.