UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER　　　　　　　　　　　　　　　MDL NO. 1873
　　　　FORMALDEHYDE
　　　　PRODUCT LIABILITY LITIGATION
　　　　　　　　　　　　　　　　　　　　　　　　　　SECTION "N-4"

　　　　　　　　　　　　　　　　　　　　　　　　　　JUDGE: ENGLEHARDT
　　　　　　　　　　　　　　　　　　　　　　　　　　MAG: ROBY

**THIS DOCUMENT IS RELATED TO ALL CASES**
*****************************************************************************

**MEMORANDUM IN SUPPORT OF MOTION FOR
ENTRY OF A "LONE PINE" ORDER**

**MAY IT PLEASE THE COURT:**

Defendants, Gulf Stream Coach, Inc., Recreation by Design, LLC, Fleetwood Enterprises, Inc., Coachmen Industries, Inc., Forest River, Inc., Pilgrim International, Inc., Starcraft RV, Inc., Jayco Enterprises, Inc., Thor Industries, Inc. and Keystone RV Company ("Defendants"), submit this Memorandum in Support of Its Motion for Entry of a "Lone Pine" Order.

**I.　NATURE OF THE CASE**

This case is the consolidation of various federal toxic tort suits in which Plaintiffs (individually and purportedly on behalf of thousands of potential class members) claim to have inhabited trailers that were provided to them by the Federal Emergency Management Agency (hereinafter "FEMA") as a result of the uninhabitability of their residences due to Hurricane Katrina which made landfall in Louisiana on August 29, 2005. Plaintiffs claim injuries resulting from the release of formaldehyde in those trailers. As a result of that exposure, Plaintiffs have filed suit against Gulf Stream Coach, Inc.; Fleetwood; Monaco; KZRV, LP; Starcraft; Pilgrim; and Coachmen (among others) seeking recovery for personal injury, personal discomfort, annoyance, fear of health, and for additional temporary housing and emotional distress and

mental anguish resulting from the knowledge of exposure to formaldehyde.

## II.  PURPOSE OF THE "LONE PINE" ORDER

In the face of superficial allegations, and faced with the technical nature of trying a toxic tort case and the significance of mastering the voluminous material that accompanies such litigation, Defendants are faced with a "cruel trilema." Should a) the litigation proceed, possibly at a high cost; b) should the litigation be settled; or c) should the defendant merely "hold out" against the plaintiff, hoping they would drop the case? A fourth and infinitely more practical alternative was created: the "Lone Pine" order.

The Lone Pine order is a case management tool for balancing the burdens imposed by toxic tort allegations in multiple-plaintiff and multiple-defendant cases. The order derives its name from the case of *Lore v. Lone Pine Corp.*, No. L 33606-85, (N.J. Super. Ct. Law Div. 1986). That case involved numerous plaintiffs claiming personal injury and property damage allegedly caused by pollution from the Lone Pine Landfill. The New Jersey Superior Court issued a case management order which required each plaintiff to provide:

1)  with respect to each claim of personal injury

    (a)  Facts of each individual plaintiff's exposure to alleged toxic substances at or from Lone Pine Landfill; and

    (b)  Reports of treating physicians and medical or other experts, supporting each individual plaintiff's claim of injury and causation by substances from Lone Pine Landfill; and

(2)  with respect to each claim with diminution of property value

    (a)  Each individual plaintiff's address, including tax block and lot number, for the property alleged to have declined in value; and

    (b)  Reports of real estate or other experts supporting each plaintiff's claim of diminution of property value, including the timing and degree of such diminution and the causation of same.

2

Plaintiffs were given four months to provide this information, which, as the court observed, was the "basic facts plaintiffs must furnish in order to support their claims of injury and property damage." Ultimately, plaintiffs in *Lone Pine* were unable to comply with the court's order (thus demonstrating they could not establish a *prima facie* case) and their claims were dismissed.

A Lone Pine order is particularly appropriate in cases such as this one where the plaintiffs' pleadings contain nothing more than non-specific allegations of formaldehyde emissions[1] and a litany of alleged personal injuries. By focusing the case on the critical issues of each plaintiff's alleged exposure to formaldehyde and the alleged causation between defendants' alleged emission of formaldehyde and each plaintiff's alleged injuries, the court is able to determine whether a *prima facie* case can be established against a defendant. Critically, the mere allegation that a plaintiff has been exposed to unidentified levels of formaldehyde is insufficient to establish liability against any defendant. While the plaintiffs will undoubtedly rely on a recent DHHS Health Consultation, that document does not provide any support for the plaintiffs' allegations. First, the report noted that "different commercial brands of trailers yielded different formaldehyde levels." *See* "An Update and Revision of ATSDR's February 2007 Health Consultation: Formaldehyde Sampling of FEMA Temporary-Housing Trailers Baton Rouge, Louisiana, September-October, 2006, "p.5.[2] Second, the report states the following:

> [i]t does not assess formaldehyde levels in trailers under actual use

---

[1] For example, in *Hillard*, the plaintiffs simply refer to "exposure to unlawful and harmful levels of formaldehyde while residing in FEMA Housing." *Hillard* Compl. ¶ 2. Although referring generally to regulations referencing formaldehyde level, see *id.* at ¶¶ 11-12, no allegations specify the level of formaldehyde to which plaintiffs have allegedly been exposed.

[2] A copy of the ATSDR's publication can be found at http://www.atsdr.cdc.gov/substances/formaldehyde/public_assessment.html.

3

>conditions. It does not assess the health status of people currently living in FEMA trailers. The analysis results presented in this report cannot be generalized to all FEMA trailers and they cannot be used to predict the health consequences of living in those trailers. Because this health consultation is not analyzing human exposures it does not define a level of concern.

*Id.* Indeed, the report acknowledges that any health problems could be associated with other exposures to the trailers, such as "mold, cleaning products, tobacco smoke, and carbon monoxide." *Id.* at 20. Plaintiffs, therefore, cannot rely on this report to support their allegations. Rather, they must come forward with evidence specifying the product to which they were allegedly exposed and other specific facts regarding their exposure and injuries.

The Lone Pine order serves to separate those cases (or even those plaintiffs) with meritorious claims from those with unfounded claims and saves enormous litigation costs and judicial resources. The information required from plaintiffs under a Lone Pine order is nothing more than the information plaintiffs are required to know under modern pleading rules in advance of filing suit. Fed. R. Civ. P. 11(b)(3); *see also Bell Atlantic Corp. v. Twombly*, No. 05-1126, 127 S.Ct. 1955, 1965 (U.S. 2007) (holding that under Federal Rule of Civil Procedure 8, a plaintiff is obligated to provide more than labels and conclusions and "a formulaic recitation of the elements of a cause of action will not do."). Further support of the Court's authority to issue a Lone Pine order can be found in Federal rule of Civil Procedure 1 which states that the Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."

### III. FEDERAL COURTS HAVE EMPLOYED "LONE PINE" ORDERS

The Fifth Circuit has recognized the value of Lone Pine orders. In *Acuna v. Brown & Root*, 200 F.3d 335 (5th Cir. 2000), two personal injury actions involving 1,600 total plaintiffs were consolidated on appeal. In each case, plaintiffs brought suit in state court against various

defendants alleging personal injuries and property damages arising from the defendants uranium mining and processing activities.  The cases were removed to the federal district court for the Western District of Texas where they were treated as related cases.  First, in *Acuna* and then in *Garcia* (the second case), the court issued pre-discovery scheduling orders that required the plaintiffs to establish certain elements of their claims through expert affidavits.  The affidavits had to specify for each plaintiff:

    a)    the injuries or illness suffered by the plaintiff that were caused by the alleged uranium exposure;

    b)    the materials or substance causing the injury;

    c)    the facility thought to be their source;

    d)    the dates or circumstances and means of exposure to the injurious materials; and

    e)    the scientific and medical bases for the expert's opinions.

In reviewing the court's action, the Fifth Circuit noted that Lone Pine orders are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation, and that they are issued in the Federal Courts under the wide discretion afforded district judges over the management of discovery under Federal Rule of Civil Procedure 16.  *Id.* at 340.  The Fifth Circuit found that it was within the court's discretion to take steps to manage the complex and potentially burdensome discovery that the cases would require and that the scheduling orders essentially required the information which plaintiffs should have had before filing their claims pursuant to Rule 11.  *Id.*  "Each plaintiff should have had at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries." *Id.*

In *Eggar v. Burlington Northern R.R. Co.* (D. Mont. 1991), 1991 WL 315 487, aff'd in

*Claar v. Burlington Northern Railroad Co.*, 29 F.3d 499 (9th Cir. 1994), the district court, concerned that plaintiffs might not be able to demonstrate a causal connection between their work place chemical exposure and their injuries, issued a case management order consolidating twenty-seven cases for pre-trial purposes. The order required plaintiffs to submit affidavits from physicians listing each plaintiff's specific injuries, the particular chemical(s) that, in the physician's opinion caused each injury, and the scientific basis for the physician's conclusions. *Id.* at 500.

Lone Pine orders have been issued in the United States District Courts for the Middle District of Louisiana. In *In Re: 2000 ExxonMobile Release Litigation*, Master Docket No. 00-MD-1-C-1 (M.D. La 2003)[3] the Honorable Magistrate Judge Stephen Riedlinger entered an Order requiring each plaintiff to provide an affidavit from a qualified treating or other physician stating: the identity of the particular substances allegedly released from the plant to which each plaintiff was exposed, and the manner and duration of each exposure; to a reasonable medical probability, the diagnosis of injury, illness or condition of the plaintiff; and to a reasonable medical probability, that each injury, illness or condition diagnosed was caused by exposure to the particular substances released from the plant. Further, Magistrate Judge Riedlinger required that each affidavit specify all medical examinations, testimony or treatment of the plaintiff relied upon by the physician to support any diagnosis and the conclusion that any injury, illness, or condition of the plaintiff was caused by exposure to the particular substances emanating from the facility. The order required similar information regarding the property damage claims.

A similar Lone Pine Order was entered in *In Re: 1994 Exxon Chemical Plant Fire Litigation*, Master Docket No. 94-MS-3-C-1.[4] There, Magistrate Judge Riedlinger noted that if

---

[3]  Attached hereto as Exhibit "A."
[4]  Attached hereto as Exhibit "B."

the plaintiff is unable to link his alleged exposure to an injury, "then the court should be concerned with the viability of that plaintiff's claim." The Fifth Circuit noted with approval the use of this case management tool that had streamlined the case. *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 604 (5th Cir. 2006).[5]

Other federal district courts have also found this type of case management order useful. In *Turner v. Firestone Tire & Rubber Co.*, No. 5-95CV-152 (E.D. Tex. May 31, 1996), Judge David Folsom entered an order requiring each plaintiff to file an affidavit from medical or other experts stating the particular substances to which each plaintiff claimed exposure, the identity of the manufacturer of those substances, and the manner, duration and concentration of each exposure. In addition, each plaintiff was required to submit "a sworn statement by a medical expert or other qualified expert that to a reasonable degree of medical probability the exposure described…was a cause of such illness, injury or condition."

In the case of *Carlton Gene Rinehart v. CIBA-Geigy Corporation*, No. 96-517-M2 (M.D. La. July 6, 2000)[6] Magistrate Judge Christine Noland recognized the use of a Lone Pine Order and required each of the named plaintiffs to provide the Court and defendants, within 90 days from the signing of the Order, a report identifying any environmental injury alleged to be suffered by the plaintiffs, or to be suffered by the plaintiffs in the future. The Court required the report to supply sufficient evidence that the alleged injuries were caused by chemicals to make a *prima facie* case. The Court further required each plaintiff to provide the Court and defendants *prima facie* evidence that the plaintiffs' property was damaged.

### IV.   OTHER COURTS HAVE EMPLOYED "LONE PINE" ORDERS

---

[5]   Attached hereto as Exhibit "C."

[6]   Attached hereto as Exhibit "D."

7

The Lone Pine procedure or the functional equivalent has been employed by numerous other courts in toxic tort suits. Although these cases are not binding on this Court, they are presented to demonstrate the acceptance and use of Lone Pine orders in toxic tort cases. In *Schelske v. Creative Nail Design*, 933 P.2d 799 (Mont. 1997), the trial court entered a case management order that was "designed to help focus the extensive discovery and to aid in the handling of the complex, multi-party litigation." *Id.* at 801. The order required the plaintiff (an ex-beautician claming she was exposed to toxic substances at the beauty salon where she worked) to provide the defendants with a list of products, the circumstances of the alleged exposure, an identification of each specific chemical which allegedly caused harm, and a physician's opinion of a causal connection between exposure and injury. The physician's affidavit was required to 1) list all injuries, illness, or conditions suffered by the plaintiff; 2) specify the chemical(s) that caused each illness, injury or condition; and 3) state the scientific bases for the physician's conclusion. *Id.* The suit was dismissed when the plaintiff failed to produce the required information. The Montana Supreme Court upheld the dismissal of the suit holding that she had not sufficiently complied with the case management order (patterned after the order approved in *Claar*) requiring that she plead each chemical that allegedly caused harm and provide a physician's opinion as to causal link between each exposure and injury. *Id.*

In *Cottle v. Superior Court*, 5 Cal.Rptr.2d 882 (Cal. Ct. App. 1992), the trial court required each plaintiff to file a statement identifying the substances to which he or she was exposed, the dates, place and method of exposure, the resulting injury, and the identity of each medical expert who would support each claim of injury. The court of appeals upheld the trial court's application of the case management order on the basis that a "court may order the exclusion of evidence if the plaintiffs are unable to establish a *prima facie* claim prior to the start of trial." *Id.* at 890.

In *Martinez v. City of San Antonio*, 40 S.W.3d 587 (Tex. App. - San Antonio, 2001, pet. denied), approximately 600 San Antonio residents sued various defendants in three separate lawsuits (that were later consolidated for discovery) for alleged injuries resulting from exposure to lead-contaminated soils during construction of the Alamodome Sports Complex. Plaintiffs brought suit under the theories of negligence, gross negligence, public and private nuisance, negligence per se, trespass, maintenance of an ultra-hazardous activity, and unconstitutional taking of property. The trial court entered a Lone Pine order, selecting a small number of plaintiffs (50) for full discovery and requiring plaintiffs to prepare expert reports for such plaintiffs within 90 days. The trial court subsequently entered a no evidence summary judgment in favor of the defendants. On appeal, the plaintiff appellants complained the Lone Pine order hindered their ability to conduct the discovery necessary to overcome the no-evidence motion. The court of appeals disagreed noting that "appellants are presumed to have duly investigated their case before filing suit. *Id.* at 592.

The Texas Supreme Court has recognized the importance in toxic tort cases of discovery of plaintiffs' evidence of exposure and causation. In *Able Supply Co. v. Moye*, 898 S.W.2d 866, 700 (Tex. 1995) the court stated: "Each defendant is entitled to discover whether there has been a medical determination that an illness has been caused by the defendant's product." The court recognized that requiring plaintiffs to come forward with information "linking each plaintiff's injuries with a particular product will simplify the case, streamline costs to both plaintiffs and defendants, conserve judicial resources, and aid the trial court in preparing a plan for the trial of these cases." *Id.* at 771. Similarly, in *In re: Colonial Pipeline Co.*, 968 S.W.2d 938, 942 (Tex. 1998), a case based upon claims of nuisance and trespass, the court observed that "[w]ithout discovery of basic medical information from all plaintiffs, each defendant is put in the position of preparing to defend itself against claims that may not involve [its alleged contaminant]."

9

Further, discussion of the wisdom and utility of Lone Pine orders is found in D. Alan Rudin, *Strategies in Litigating Multiple Plaintiff Toxic Tort Suits, in* ENVIRONMENTAL LITIGATION 122, 137-42 (Janet S. Kole et al. Eds. 1991). Ruden states that Lone Pine orders are useful to achieve efficiency and economy in toxic tort cases. Because numerous plaintiffs are usually involved, discovery is difficult to control, and a case management order (CMO) can regulate the process. A CMO can avoid duplication of effort by allowing common issues and claims to be identified and addressed *en masse*. Because of the unknown properties of certain chemicals, the individualized nature of each plaintiff's medical and social history, and the long latency period of certain ailments, establishing a causal relationship between and injury and chemical exposure is often difficult. A Lone Pine CMO forces plaintiffs to substantiate a *prima facie* case of exposure, injury and causation.

## V.   DEFENDANTS' PROPOSED "LONE PINE" ORDER

The Lone Pine order proposed for this case requires each named plaintiff[7] to present competent medical evidence that the personal injuries he or she alleges are caused by exposure to formaldehyde and expert testimony that the particular level of exposure can cause the claimed medical conditions. It also directs each plaintiff to bring forth sufficient evidence to establish a *prima facie* case of the levels of exposure to formaldehyde allegedly released from the RVs and travel trailers. As a threshold matter, however, each plaintiff should be required to first identify by manufacturer and serial number the travel trailer to which each plaintiff claims exposure.

Additionally, like the Lone Pine order entered by Magistrate Judge Riedlinger in *In Re 2000 ExxonMobil Release Litigation*, the order proposed for this case requires that each plaintiff claiming personal injuries submit an affidavit from a qualified physician stating: (1) to a

---

[7]   While Defendants are initially only seeking a Lone Pine order against each named plaintiff, Defendants reserve the right to seek a Lone Pine order against every plaintiff at the appropriate time.

reasonable medical probability, the diagnosis of injury, illness or condition of the plaintiff; and (2) to a reasonable medical probability that each injury, illness, or condition diagnosed was caused by exposure to formaldehyde.  Further, defendants request plaintiffs provide an affidavit from an expert that the specific level of formaldehyde that each plaintiff was allegedly exposed to were sufficient to cause the above.  These affidavits should set forth the methodology used by the expert and the factual basis for the expert's conclusions.

## VI.  CONCLUSION

All of the information requested in the proposed Lone Pine order is relevant and discoverable.  The Court has discretion to enter this case management order, particularly in this toxic tort case in which no allegations specify a harmful level of formaldehyde or even identify the level of formaldehyde to which each plaintiff is allegedly exposed.  Neither are Defendants seeking to have each case automatically dismissed; rather Defendants rely on Rule 37(b)(2) to provide relief for any disobedience of the Court's order.  Producing this information at the outset

would reduce costs and save time. For these reasons, Defendants request that their motion be granted.

Respectfully submitted:

**DUPLASS, ZWAIN, BOURGEOIS, MORTON, PFISTER & WEINSTOCK**

s/Andrew D. Weinstock

_____
**ANDREW D. WEINSTOCK (#18495)**
**JOSEPH G. GLASS (#25397)**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
andreww@duplass.com
jglass@duplass.com

**SCANDURRO & LAYRISSON**

s/Timothy D. Scandurro

_____
**TIMOTHY D. SCANDURRO #18424**
**DEWEY M. SCANDURRO #23291**
607 St. Charles Avenue
New Orleans, LA 70130
Telephone: (504) 522-7100
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

**THE PRESTON LAW FIRM, L.L.P.**

s/Lyon H. Garrison

_____
**LYON H. GARRISON**
909 Poydras Street, Suite 1800
New Orleans, LA 70112
527-0109
lgarrison@prestonlawfirm.com
**Counsel for Defendant, Recreation by Design, LLC**

**NELSON, MULLINS, RILEY**

**& SCARBOROUGH, LLP**

s/Richard K. Hines, V

_____

**RICHARD K. HINES, V**
**JERRY L. SAPORITO**
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6154
Richard.hines@nelsonmullins.com
**Counsel for Fleetwood Enterprises, Inc.**

**TAYLOR, PORTER, BROOKS & PHILLIPS, LLP**

s/John Stewart Tharp

_____

John Stewart Tharp
451 Florida Street, 8th Floor
Baton Rouge, LA 70801
(225) 387-3221
stewart.tharp@taylorporter.com
**Counsel for Defendant, Coachmen Industries, Inc.**

**GIEGER, LABORDE & LAPEROUSE, LLC**

s/Ernest P. Gieger, Jr.

_____

**ERNEST P. GIEGER, JR.**
**JASON D. BONE**
701 Poydras Street, Suite 4800
New Orleans, LA 70139
561-0400
egieger@glllaw.com
jbone@glllaw.com
**Counsel for Defendant, Forest River, Inc.**

**JONES, WALKER, WAECHTER, POITEVENT,
CARRERE & DENEGRE, LLP**

s/James C. Percy
_____
**JAMES C. PERCY**
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, LA  70809
(225) 248-2130
jpercy@joneswalker.com

**JONES, WALKER, WAECHTER, POITEVENT,
CARRERE & DENEGRE, LLP**

s/Madeleine Fischer
_____
**MADELEINE FISCHER
RYAN E. JOHNSON**
201 St. Charles Avenue
New Orleans, LA 70170
mfischer@joneswalker.com
rjohnson@joneswalker.com
**Counsel for Defendants, Pilgrim International, Inc.,
Starcraft RV, Inc., Jayco Enterprises, Inc., Thor
Industries, Inc. and Keystone RV Company**

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of December, 2007, a copy of the foregoing Memorandum in Support of a Motion for Entry of a "Lone Pine" Order was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to all known counsel of record by operation of the court's electronic filing system.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com