to the complaint were still being filed through 1997. In April of both 1997 and 1998, plaintiffs filed amended complaints adding new defendants. In October of 1998, the District Judge granted the motion to deny class certification, thereby clearing the way to set final discovery deadlines.

At the December 1998 conference, held to set these deadlines, counsel for the plaintiffs indicated that they believed that it was necessary to give public notice that class certification had been denied and that it was premature to set final deadlines if additional plaintiffs were going to bring additional suits. A motion requesting time to publish notice was filed in January, 1999 and was granted later that month. Appeal of this ruling was taken in February, 1999.

At another status conference held in March of 1999, the defendant Exxon informed the Court that it had just filed the Motion for Entry of Proposed Discovery Management Order No. 3. Since the appeal had not been ruled on, and the Court felt that it needed the issues involved briefed, no action was taken at this conference. This motion was referred to the undersigned in June, 1999 and denied in September of 1999.

In October, 1999, another status conference was held and plaintiffs' counsel informed the Court that he had filed additional suits, but they were filed in districts other than the Middle District of Louisiana. Since the appeal of the notice issue was still pending, and it was uncertain how many plaintiffs would end up in this suit, again no discovery deadlines were set. The appeal was ruled on the following month – November, 1999.

2

After the appeal was ruled on, another conference was set for April. Due to a conflict for one of the attorneys, however, this conference was rescheduled to May, 2000. In April, defendant Exxon filed it's motion re-urging it's Motion for Entry of Proposed Discovery Management Order No. 3 as no additional plaintiffs had been brought into this suit.

The motion for entry of a management order seeks to have the Court enter what has come to be known as a Lone Pine order, named after the case wherein the first publicized order was entered - *Lore v. Lone Pine Corp.*, No. L33606-85 (N.J.Super.Ct. Law Div., Monmouth Co., Jan. 1, 1986), reprinted in 1 Toxic L.Rep. (BNA)726. The Lone Pine case was a New Jersey toxic tort case against a landfill operator and the generators and haulers of toxic materials to the landfill. A year after the suit was filed, the Court ordered the plaintiffs to submit the following within 4 months:

(1) plaintiffs would provide the following documentation with respect to each claim for personal injuries:

    (a) Facts of each individual plaintiff's exposure to alleged toxic substances at or from Lone Pine Landfill;

    (b) Reports of treating physicians and medical or other experts, supporting each individual plaintiff's claim of injury and causation by substances from Lone Pine Landfill;

(2) plaintiffs would provide the following with respect to each individual plaintiff's claim for diminution of property value:

    (c) Each individual plaintiff's address, including tax block and lot number, for the property alleged to have declined in value;

    (d) Reports of real estate or other experts supporting each individual plaintiff's claim of diminution of property value, including the timing and degree of such diminution and the causation of same.

*Id.* After the deadlines had run, the Court found that the information submitted was insufficient as it failed to provide anything that resembled a prima facie cause of action based upon property diminution or personal injuries and dismissed the case for failure to comply with the Court's Order.

This Court will not require plaintiffs to submit all of the above information as there is a considerable difference between the two cases. In Lone Pine, the Environmental Protection Agency had prepared a summary of sixteen studies on the Lone Pine Landfill. These summaries cataloged and evaluated all the information available on the Lone Pine problem and the location of the resulting pollution. In the present case, plaintiffs have not been allowed any discovery and plaintiffs have no other information concerning the site.

In *Kinnick v. Schierl, Inc.*, 541 N.W.2d 803 (1995), plaintiffs complained of underground contamination of two properties. When defendants filed a motion for summary judgment, the plaintiffs' experts only showed "possible" routes of contamination. No experts testified to a reasonable degree of probability that contaminants came from defendants' property. Even thought there was seven more months of discovery, the Court granted the defendant's summary judgment motion as discovery had been on going for two years.

Some of the Lone Pine orders which have been published[1] have not been uniform, however, as Mr. Jerry A. Lindheim explains in Section II. of his article in the Tort and Insurance Law Journal:

> Lone Pine orders also usually require plaintiffs to submit reports of treating physicians or experts supporting each individual plaintiff's claims of injury, including the nature of each injury and the causation between each injury and each toxic substance and form of exposure.

Jerry A. Lindheim, *Self-Insurers and Risk Managers: Annual Survey*, 27 Tort & Ins. L.J. 445, § II (1992). Mr. Lindheim has also set forth the conundrum inherent in issuing such an order:

> While the procedure of negating an element of the plaintiffs' prima facie case by requiring them to present evidence in support of their allegations resembles a motion for summary judgment, Lone Pine motions differ from summary judgment motions in two key respects. First, the showing required to satisfy a Lone Pine order may be less than the quantum of evidence required to create a fact question in response to a motion for summary judgment. Second, a judge hearing a motion for summary judgment may allow the plaintiffs to proceed with discovery in order to obtain evidence for use in opposing the motion. However, proceeding with discovery in the absence of evidence supporting the plaintiffs' prima facie case is the very thing that Lone Pine orders are designed to prevent.

*Id.* at § II. However, the benefit in their use, Mr. Lindheim states, in requiring plaintiffs in massive cases to demonstrate at the outset some minimal level of support for their claims,

---

[1] *Grant v. E.I. Du Pont De Nemours and Co., Inc.*, 1993 WL 146634 (E.D.N.C. 1993); *Renaud v. Martin Marietta Corp.*, 749 F.Supp. 1545 (D.Colo., 1990); *Kinnick v. Schierl, Inc.*, 197 Wis.2d 855, 541 N.W.2d 803, (1995); *In re Love Canal Actions*, 145 Misc.2d 1076, 547 N.Y.S.2d 174 (Supreme Court, Niagra County 1989); Scott A. Steiner, *The Case Management Order: Use and Efficacy in Complex Litigation and the Toxic Tort*, 6 Hastings W.-N.W. J. Envtl. L. & Pol'y 71 (1999) and cases cited therein.

5

is that it will ensure that completely unsupported claims will not consume the resources of the parties or the judiciary. Further, since plaintiffs and their counsel should have evidence to support their claims before filing suit,[2] it should not be unduly burdensome or unfair to require them to make a preliminary showing before initiating discovery in mass toxic tort cases. *Id.* at § II; *but see,* John T. Burnett, *Lone Pine Orders: A Wolf In Sheep's Clothing For Environmental and Toxic Tort Litigation,* 14 J. Land Use & Envtl. L. 53 (1998) (arguing that Lone Pine Orders allow courts to ignore existing procedural rules and safeguards and lack consistency in their use and application and are thus not equally applied).

The Fifth Circuit Court of Appeal has given some indication of their position on Lone Pine Orders. Although not of precedential valve,[3] the Fifth Circuit has issued an unpublished opinion wherein the Court vacated a dismissal of eight plaintiffs' claims for failure to comply with a case management order in a toxic tort case. *Antionette Abram, et al. v. Reichhold Chemicals Inc., et al.,* No. 95-60784, 5th Cir. (attached). The Court stated that the record did not indicate that the District Court employed lesser sanctions before dismissing the action, as is required by Federal Rule of Civil Procedure 41(b). The Court went on to affirm the District Court's dismissal of seven remaining plaintiffs' claims, however, for failure to present competent evidence that their illnesses were caused by exposure to chemicals from the Reichhold site. The District Court granted defendant's

---

[2] *Hale v. Harney,* 786 F.2d 688, 692 (5th Cir. 1986).

[3] U.S. Ct. of App. 5th Cir. Local Rule 47.5.4, 28 U.S.C.A. (Although an unpublished opinion may not be used as precedent, it may be persuasive.)

6

motions for summary judgment as the plaintiffs' expert's testimony would be inadmissible at trial as his opinion was merely unsupported speculation.

This Court is persuaded that the Fifth Circuit Court of Appeal would disfavor dismissal for failure to comply with the case management order as it would not provide the safeguards that are inherent in a motion for summary judgment. However, requiring plaintiffs to prove a prima facie case before allowing full discovery may save all parties tremendous expense and time. Further, there are only seven plaintiffs in this case. It should not be unduly burdensome or unfair to require plaintiffs' counsel to make a preliminary showing of the facts supporting exposure and to obtain medical reports supporting each plaintiff's claim of injury and causation thereof by exposure to chemicals before initiating full discovery.

This preliminary showing, or prima facie case is defined by Black's Law Dictionary as:

> A prima facie case consists of sufficient evidence in the type of case to get plaintiff past a motion for directed verdict in a jury case or motion to dismiss in a nonjury case; it is the evidence necessary to require defendant to proceed with his case. Courts use concept of 'prima facie case' in two senses: (1) in sense of plaintiff producing evidence sufficient to render reasonable a conclusion in favor of allegation he asserts; this means plaintiff's evidence is sufficient to allow his case to go to jury, and (2) courts use 'prima facie' to mean not only that plaintiff's evidence would reasonably allow conclusion plaintiff seeks, but also that plaintiff's evidence compels such a conclusion if the defendant produces no evidence to rebut it.

Black's Law Dictionary 1190 (6th ed. 1990) (citations omitted).

Further, prima facie evidence is defined as:

7

> Evidence good and sufficient on its face. Such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient. Evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence.
>
> That quantum of evidence that suffices for proof of a particular fact until the fact is contradicted by other evidence; once a trier of fact is faced with conflicting evidence, it must weigh the prima facie evidence with all of the other probative evidence presented. Evidence which, standing alone and unexplained, would maintain the proposition and warrant the conclusion to support which it is introduced. An inference or presumption of law, affirmative or negative of a fact, in the absence of proof, or until proof can be obtained or produced to overcome the inference.

*Id.* (citations omitted).

If the plaintiffs in this case are unable to prove a prima facie case, this Court will not dismiss the action, but the defendants will be able to file motions for summary judgment challenging plaintiffs' case. Otherwise, full discovery will be allowed.

Plaintiffs are not required to identify each and every chemical alleged to be at the facilities, or the defendants which are responsible for the chemicals, but must supply sufficient evidence that the alleged injuries were caused by chemicals to make a prima facie case.

The Court does not know whether the seven plaintiffs allege property damage. However, since the plaintiffs will be required to make a prima facie case concerning their medical condition, they should also present prima facie evidence regarding any property damage. This is the only way all of the issues can be addressed via motions for summary judgment.

8

Accordingly;

**IT IS ORDERED** that each of the named plaintiffs shall provide to the Court and defendants, within 90 days from the signing of this Order, a report identifying any environmental injury alleged to be suffered by the plaintiffs, or to be suffered by the plaintiffs in the future, and the report must supply sufficient evidence that the alleged injuries were caused by chemicals to make a prima facie case.

**IT IS FURTHER ORDERED** that each plaintiff provide to the Court and defendants within 90 days from the signing of this Order prima facie evidence that said plaintiff's property was damaged. This evidence shall include specific scientific evidence that one or more chemical substances, which may have been sent to the EPAC-site and/or the CLAW-site, reside in the soil, surface water, or ground water, on, above, or below said property.

Signed in Baton Rouge, Louisiana this 6th day of July, 2000.

MAGISTRATE JUDGE CHRISTINE NOLAND

9