UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: FEMA TRAILER          * | CIVIL ACTION 2:07-MD-1873 |
| FORMALDEHYDE PRODUCTS | |
| LIABILITY LITIGATION         * | |
| * | JUDGE ENGLEHARDT - DIV. N |
| PERTAINS TO:    ALL CASES   * | MAGISTRATE ROBY - MAG. 4 |

*************************************************************************

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

MAY IT PLEASE THE COURT:

Plaintiffs, Kimberly Nelson, et al, hereby reply to the response filed by the Federal Emergency Management Agency ("FEMA") and FEMA Administrator, R. David Paulison ("Paulison"). Plaintiffs, again, urge this Court to require FEMA to take immediate action to end the toxic formaldehyde exposures, and to end the uncertainty and emotional distress of thousands of hurricane victims. Otherwise, the trailer residents will have to endure several more months of fear and injury, while one percent (1%) of the trailers[1] are tested and FEMA considers its response to that test data.

---

[1] FEMA recently announced that CDC will test 500 out of the 50,000 occupied trailers.

### FEMA's Response

Rather than informing the Court that FEMA and Paulison will comply with this Court's directives,[2] FEMA and Paulison filed a lengthy objection to this Court's jurisdiction[3] and specifically stated that FEMA will not comply with this Court's protective order. *See* Response (Doc. 61), p. 21, n. 13.[4]

Rather than providing a detailed plan for testing the trailers and relocating residents, FEMA directed this Court to the Centers for Disease Control and Prevention ("CDC") December 13, 2007 press release, which provides, at most, a general outline of formaldehyde testing of slightly more than one percent (1.1%) of the occupied trailers, to be done over several weeks followed by several weeks of data analysis. *See* Response, p. 4, n. 4; CDC Press Release, Exhibit A. CDC and FEMA's press release leaves many questions unanswered, including when, where and how trailers will be

---

[2]  On November 29, 2007, this Court directed FEMA and Paulison to submit a written response to plaintiffs' supplemental memorandum, in which FEMA was required to "at the very least, set forth a detailed plan for testing the FEMA trailer units and, if necessary, for providing alternative housing for the trailer residents." (Doc. 26). That order also indicated that this Court "intends to allow" amendments to add FEMA to this litigation and directed counsel for FEMA and Paulison to attend this Court's January 18, 2008 Initial Conference. (Doc. 26).

On December 14, 2007, this Court directed FEMA to: 1) provide 72 hours written notice of testing to plaintiffs and defense liaison counsel; 2) permit representatives of plaintiffs and defendants to observe and record formaldehyde testing; and 3) provide copies of trailer resident questionnaires.

[3]  FEMA appears to contend that its acts and omissions are beyond judicial review and that FEMA has sole discretion to provide relief to trailer residents, on FEMA's terms and schedule.

[4]  FEMA's reliance on the Privacy Act as a basis for not permitting plaintiffs and defendants to observe the formaldehyde testing is over-stated. *See News-Press v. U.S. Department of Homeland Security*, 489 F.3d 1173, 1206 (11th Cir. 2007)(ordering FEMA to disclose addresses of disaster assistance recipients).

tested, whether the testing will reflect actual conditions experienced by residents, and what FEMA will do after the 500 trailers are tested and the test data is analyzed.  *See* Transcript of CDC and FEMA December 13, 2007 Press Conference, Exhibit B.  This Court should require FEMA to provide a formaldehyde testing plan that is sufficiently detailed to allow review and comment by independent toxicology and medical experts, and review by this Court.

This Court Can and Should Review and Remedy FEMA's Acts and Omissions:

The Administrative Procedure Act, 5 U.S.C. § 706, provides that,

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall – (1) **compel agency action unlawfully withheld or unreasonably delayed . . .** (emphasis added).[5]

As Judge Berrigan recently ruled, "this Court finds that its authority to review FEMA's actions clearly exists as to any actions that are mandated by statute, and more importantly, any actions that may rise to the level of a constitutional violation by the agency." *Ridgely v. Federal Emergency Management Agency*, No. 07-2146 (E.D. La. 6/13/07) 2007 U.S. Dist. Lexis 43002 (*quoting McWaters v. FEMA*, 436 F.Supp.2d 802, 812 (E.D. La. 2006).  This Court has jurisdiction and authority to prevent FEMA from depriving thousands of hurricane victims of their health and

---

[5] Plaintiffs believe that their extensive factual allegations concerning FEMA's acts and omissions, none of which have been denied by FEMA, are sufficient to demonstrate this Court's jurisdiction.  Further, "if it is determined that jurisdiction has not been established Rule 15(a) of the Federal Rules of Civil Procedure dictates that leave to amend shall be freely given when justice so requires." *Batiste v. United States*, No. 02-2654 (E.D. La. 2/13/03) 2003 U.S. Dist. Lexis 2315.

well-being. *See Association of Community Organizations for Reform Now ("ACORN") v. Federal Emergency Management Agency*, 463 F.Supp.2d 26 (D. D.C. 2006). *See also Public Citizen Health Research Group v. Food and Drug Administration*, 724 F.Supp. 1013, 1019 (D. D.C. 1989)("*Public Citizen v. FDA*"); *Rosas v. Brock*, 826 F.2d 1004 (11th Cir. 1987). This Court should not permit FEMA's temporary housing program to continue without judicial review, and should permit plaintiffs to present evidence in support of their motion for preliminary injunction.

### FEMA Does Not Have Discretion to Provide Unsafe Housing

When the federal government provides housing, the government must, "at a minimum, [remove] hazards to life, health and safety." *Conille v. Secretary of Housing and Urban Development*, 840 F.2d 105, 116 (1st Cir. 1988). FEMA's contention that it has discretion to delay testing these toxic trailers (Response, p. 20), ignores the fact that FEMA provided the trailers to hurricane victims who had no other housing options. *See also* George M. Armstrong, Jr. and John C. LaMaster, *The Implied Warranty of Habitability: Louisiana Institution, Common Law Innovation*, 46 La. L. Rev. 195 (November, 1985).

FEMA cannot remain indifferent and insensitive to the presence of toxic chemicals in housing owned by FEMA. *See Mann v. Pierce*, 803 F.2d 1552, 1558 (11th Cir. 1986)(holding that HUD can be liable for asbestos hazards and exposure). This Court should hear plaintiffs' motion for preliminary injunction and, then, require FEMA to perform formaldehyde testing and move hurricane victims out of the toxic trailers "with all deliberate speed."[6]

---

[6] *Brown v. Board of Education (Brown II)*, 349 U.S. 294, 300; 75 S. Ct. 753, 757 (1955).

Immediate Relief is Required

FEMA's argument that plaintiffs' motion for preliminary injunction does not require immediate consideration, because news media reported on formaldehyde risks several months ago, was rejected by the Court in *ACORN v. FEMA*, 463 F.Supp.2d at 36. Here, as in that case, plaintiffs waited in vain for FEMA to take action and waited for FEMA to fulfill Paulison's commitments to Congress. Now, "each additional day plaintiffs go without assistance, they are harmed further." *Id.*

It is undisputed that formaldehyde is a hazardous chemical that causes both immediate and long-term adverse health effects, particularly to unborn infants, children, the elderly and those with pre-existing health conditions, including asthma, allergies, pulmonary and heart conditions. While various agencies have established maximum exposure levels for certain settings, no one contends that formaldehyde is safe, beneficial or healthy. FEMA's suggestion that there is not sufficient evidence of formaldehyde hazards is contradicted by its own memoranda and conduct. *See* House Oversight and Government Reform Committee Staff Report, July 19, 2007, Exhibit C. Further, plaintiffs requested and are entitled to an evidentiary hearing to present fact and expert testimony and documents demonstrating the trailers' contamination.

Even a temporary delay in testing the contaminated trailers and in moving people out of the trailers "results in irreparable injury on a massive scale." *Environmental Defense Fund, Inc. v. Hardin*, 428 F.2d 1093 (D.C. Cir. 1970)(mandating expedited review of DDT). As in the Toxic Shock Syndrome litigation, "unnecessary delay may subject individuals to unnecessary dangers and even inflict harm on those in need of final action." *Public Citizen v. FDA*, 724 F.Supp. at 1019. To determine whether this Court's intervention is required at this time, this Court should "ascertain the length of time that has elapsed since the agency came under a duty to act, consider the

reasonableness of the delay, and examine the consequences of the delay. Delays which might be reasonable in the context of economic regulation are less tolerable when human lives are at stake." *Id.* Considering that FEMA has been aware of the formaldehyde exposure for more than eighteen months, FEMA's proposed many weeks for testing of one percent of the trailers and data analysis, without taking action for the other 99 percent of trailer residents is unreasonable.

Congress Has Demanded Action by FEMA to End the Formaldehyde Exposures

Congressmen Melancon and Waxman expressed their concern about formaldehyde exposure of trailer residents to Paulison on August 10, 2006, and requested all information and documents in FEMA's possession relating to the formaldehyde reports, as well as FEMA's plans to address the toxic exposures.

On July 19, 2007, the day after FEMA provided hundreds of pages of previously-withheld records and e-mails to the House Oversight and Government Reform Committee, Administrator Paulison testified that,

> "FEMA fully agrees with Members of Congress and the public that there should be a thorough investigation of the relationship between indoor air quality in the travel trailers and any corresponding health effects. CDC initially estimated that an investigation of that type would take at least a year. **Neither [the Department of Homeland Security] nor the residents can wait that long for those results before taking action.** Consequently, the investigation will take a two-phased approach, with an initial rapid study . . ., and a more in-depth study to give us a better understanding of the complete issues. This work will be initiated using multiple Federal Partners working together to provide decision makers and trailer residents with a plan, **as soon as possible**." (Emphasis added).

Yet, on December 5, 2007, Senators Landrieu and Stevens, wrote to Administrator Paulison

"to express our disappointment over FEMA's recent decision to halt plans to test FEMA trailers for higher levels of formaldehyde and to urge FEMA to resume testing and work on a solution to this problem immediately." While FEMA's December 13, 2007 announcement that it will begin testing one percent of the trailers for formaldehyde starting this week appears to be progress, FEMA's oft-delayed response to Congressional calls for action does not bode well for its newest effort.

As the D.C. Circuit Court of Appeals stated twenty years ago, "action that Congress has ordered for the protection of public health all too easily becomes hostage to bureaucratic recalcitrance, factional infighting, and special interest politics. At some point, we must lean forward from the bench to let an agency know, in no uncertain terms, that enough is enough." *Public Citizen Health Research Group v. Brock*, 823 F.2d 626, 627 (D.C. Cir. 1987)(ordering OSHA to set limits for Ethylene Oxide exposure and regularly submit progress reports to the court). *See also Public Citizen Health Research Group v. Auchter*, 702 F.2d 1150 (D.C. Cir. 1983).

### FEMA's Federal Tort Claims Act Arguments Are Premature

FEMA devotes much of its response to arguing that plaintiffs can never prevail on their compensatory damages claims against FEMA due to Stafford Act immunity and the byzantine administrative claim procedures of the Federal Tort Claims Act ("FTCA"). Despite receiving thousands of formaldehyde complaints from trailer residents, the media, advocacy groups, Congress, contractors, and its own employees, FEMA takes the position that plaintiffs have not sufficiently presented claims for FEMA to be able to consider the nature, scope and worth of trailer residents' damages. Further, FEMA insists that trailer residents must submit a particular dollar figure for their damages, despite the facts that: 1) trailer residents' damages are increasing every day; and 2) it may

be years before they will know the full extent of damages caused by formaldehyde exposure.

However, FEMA's FTCA arguments and defenses are not relevant to the motion presently before this Court.  Today, trailer residents want to know how high the formaldehyde levels are in their trailers, they want to move out of the trailers, and they want medical assistance and advice on diagnosing and treating their formaldehyde-related illnesses.  Trailer residents' claims for substantial compensatory and punitive monetary damages against FEMA and against the private defendants are not at issue, today.

## Conclusion

"FEMA has been created by Congress and the President to serve the needs of citizens in their darkest hours, which for some citizens are now being measured in terms of years.  The Court [should order] defendants to return to their original mandate of alleviating their suffering and to focus its substantial powers on continuing to help those entitled to relief."  *Ridgely v. Federal Emergency Management Agency*, No. 07-2146 (E.D. La. 6/13/07) 2007 U.S. Dist. Lexis 43002.

Respectfully submitted,

  /s/ John K. Etter
ROY J. RODNEY, JR.(# 2079)
JOHN K. ETTER (# 25042)
RODNEY & ETTER, LLC
200 West Congress Street, Ste. 650
Lafayette, LA 70501
Telephone:(337) 232-6924
Fax: (337) 232-6854
**Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing pleading has this day been forwarded to all known counsel of record via electronic filing. A copy has also been delivered to counsel for the Federal Emergency Management Agency, Henry T. Miller and Jacqueline Coleman Snead, via electronic mail. Signed this 18th day of December, 2007.

            /s/ John K. Etter
            JOHN K. ETTER