**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

IN RE: FEMA TRAILER                          MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                 SECTION "N-4"
                                             JUDGE ENGELHARDT
                                             MAG. JUDGE ROBY

**THIS DOCUMENT IS RELATED TO ALL CASES**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**FEDERAL EMERGENCY MANAGEMENT AGENCY'S**
**RESPONSE AND OBJECTIONS TO LIAISON**
**COUNSELS' MOTIONS FOR PROTECTIVE ORDERS**

**INTRODUCTION**

The Federal Emergency Management Agency ("FEMA") files this memorandum in opposition to Defense Liaison Counsel's ("DLC") Exparte/Consent Motion [Dkt. No. 95] and Plaintiffs' Liaison Counsel's ("PLC") Motion for Protective Order [Dkt. No. 96]. First, the Court should deny DLC's motion because Fed. R. Civ. P. 26(c)(1) does not authorize entry of a protective order in the instant case. Second, both DLC and PLC's motions are premature because, as evidenced by the attached correspondence and Government's arguments, for many of the alleged disputed issues, there is no dispute, and further negotiations would have substantially narrowed and better defined the issues that require Court action. Finally, in the event the Court addresses the substance of the relief sought by Liaison Counsel, the motions should be denied because Liaison Counsel has failed to demonstrate that they require the requested FEMA's assistance to identity and inspect Emergency Housing Units ("EHU"), i.e., travel trailers, mobile homes, and park model units, and requiring FEMA to comply with the proposed protective orders imposes an undue burden and undue costs upon FEMA and the taxpayer.

**FACTS RELEVANT TO LIAISON COUNSELS'**
**REQUEST FOR PROTECTIVE ORDERS**

1.      As Liaison Counsel notes, FEMA currently has custody and control of more than one-hundred thousand (100,000) EHU. These EHUs are located at FEMA managed staging areas, and include: (1) units used as temporary emergency housing by victims of Hurricanes Katrina and Rita and subsequently returned to FEMA, and (2) new, unused EHU. Exh. 1, Hackett Dec. ¶¶2-3.

2.      It is undersigned counsel understanding that FEMA has issued a contract to dispose of excess EHUs but has stayed disposal of excess EHUS, in part, because of this litigation.

3.      As a result of the hold placed on disposal of excess EHUs, FEMA's staging areas in the Gulf Coast Region will reach maximum storage capacity in March 2008.  Exh. 1, Hackett Dec. ¶6.

4.      As of February 1, 2008, there were approximately 38,297 households located in trailers and mobile homes.  *See* FEMA, Results Of Indoor Air Quality Testing Of Trailers And Mobile Homes For Formaldehyde In Mississippi And Louisiana: Frequently Asked Questions at http://www.fema.gov/media/archives/2008/021408.shtm.

5.      In February 2008 CDC/ATSDR recommended, because of potential health concerns associated with detection formaldehyde in occupied EHUs, that  FEMA work to relocate families before the weather warms.  *Id*.  FEMA is actively working to move people into alternative long-term housing as rapidly as possible.  *Id.*  Unless FEMA is allowed to commence disposal of excess EHUs, FEMA will need to obtain additional storage areas.  Exh. 1, Hackett Dec.  ¶6-9.  It costs FEMA $14 million to open and operate a new storage area for one-year.  Exh. 1, Hackett Dec. ¶7.

6.      At the January 30, 2008, Chambers Conference, FEMA offered to:  (1) postpone disposal of excess EHUs, but require Plaintiffs and Defendants to bear the cost associated with retention of excess EHU after April 15, 2008; (2) provide Liaison Counsel with a list of EHUs at FEMA's storage areas that will allow them to identify EHUs by manufacturer and VIN/FEMA bar code numbers; and (3) make EHUs at FEMA storage areas available for inspection at a mutually convenient date and time.  *See* Exh. 2, February 1, 2008, Letter.

7.      Government and Liaison Counsel agreed at the January 30, 2008, Chambers Conference that when FEMA received a request to retrieve an EHU located on private property it would notify and provide Liaison Counsel with the identity of the manufacturer and vehicle identification number of the vacated unit.  If Liaison Counsel wanted to inspect the unit, they would notify FEMA and a Government contractor would retrieve the EHU and deliver it to a location selected and operated by Liaison Counsel.  *See* Exh. 2, February 1, 2008, Letter.  Upon

the completion of testing, Liaison Counsel would notify FEMA and the Government contractor would retrieve the EHU from Liaison Counsel and transport it to a FEMA contractor's deactivation center. *See* Exh. 2, February 1, 2008, Letter.

8. On January 30, 2008, PLC served a Fed. R. Civ. P. 45 subpoena that required FEMA to produce a list of all Hurricane Katrina and Rita victims and information relating to each of those persons on or before February 11, 2008. Exh. 3, Subpoena. PLC also demanded that FEMA produce documents relating to the purchase of EHUs and the addresses for the deactivation sites operated by FEMA contractors. *Id*.

9. On January 31, 2008, PLC informed undersigned counsel that it was unable to conduct testing of occupied EHUs located on private property in accordance with the representations made during the January 30, 2008, Chamber's Conference. *See* Exh. 2, February 1, 2008, Letter. PLC requested that FEMA provide them with a list of EHUs at FEMA or contractor operated trailer parks, and that FEMA make those EHUs available for inspection and testing after they had been vacated. FEMA is currently attempting to identify and prepare a list of those units.

10. On February 11, 2008, consistent with Fed. R. Civ. P. 45, the Government issued its response and objections to PLC's subpoena. Exh. 4, February 11, 2008, Letter. The Government objected to the requests demanding it to identify FEMA aid recipients and documents relating to its procurement of EHUs on various grounds and produced a list identifying the addresses for the deactivation sites operated by FEMA's contractors. *Id*.

11. On February 20, 2008, FEMA produced a searchable Excel Spreadsheet for units at FEMA storage area. That Spreadsheet allows a user to locate an EHUs using a VIN/FEMA bar code number and also allows the user to EHUs by the manufacturer that constructed the unit. Thus, for example, DLC's Exhibit A, Part 3 lists over three-hundred (300) represented claimants and provides the VIN/FEMA bar code number for the EHU the claimants occupied. *See* DLC's Motion, Exh. A, Part 3. Using the Spreadsheet the user can identify the staging area where that EHUs are located.

12. As to claimants listed on DLC's Exhibit A, Parts 1 & 2, Liaison Counsel can

1  identify and locate the EHUs occupied by those claimants by obtaining from the claimants the

2  VIN/FEMA bar code numbers of the EHUs that they occupied.  Liaison Counsel asserts that the

3  taxpayer should bear the cost and expense of identifying the EHUs that claimants occupied and/or

4  the claimants may not have that information.

5      13.    Negotiations to resolve and narrow potential disputes have been ongoing with the

6  most recent conference call on February 20, 2008.  At that time PLC requested the names and

7  addresses for all victims of Hurricanes Katrina and Rita who resided in EHUs.  The Government

8  rejected PLC's demand for several reasons, including that the information is protected by the

9  Privacy Act.  5 U.S.C. §522a.  FEMA, however, is agreeable to providing Liaison Counsel with

10  the VIN/FEMA bar code number for a claimant if Liaison Counsel provides: (1) a Privacy Act

11  release; (2) information that will facilitate FEMA's efforts to identify VIN/FEMA bar code

12  information, including:  (a) claimant's FEMA application number; (b) identity of the person who

13  applied for and was assigned the EHU; (c) location/address where the claimant occupied the

14  EHU; (d) best estimate of dates that EHU was issued and retrieved; and (3) demonstrates that they

15  are unable to obtain the VIN/FEMA bar code for the claimant without FEMA's assistance.  *See*

16  Souza Dec. ¶¶4-7.  On February 22, 2008, Government counsel provided Liaison Counsel with

17  language sufficient to allow FEMA to release Privacy Act information to Liaison Counsel, and it

18  is undersigned counsel's understanding that PLC agreed to investigate their ability to obtain

19  Privacy Act releases.[1]/

20      14.    PLC has demands that FEMA indefinitely stay disposal of all used and new EHUs

21  pending its determination of what units to inspect and its inspection of those units and demands

22  that FEMA pay all costs associated of with retention of excess EHUs pending the inspections.

23  FEMA has agreed to postpone disposal of excess EHUs with the caveat that the costs associated

24  _____

25  [1]/    As Government counsel expressed to DLC in response to notice of intent to file the
instant motion, to the extent that Liaison Counsel is unable to identify a unit that a represented
26  party occupied, the demand that FEMA identify the unit and place a hold on the unit pending
Liaison Counsel's receipt of Privacy Act waiver for that claimant the request is not unreasonable.
27  However, Liaison Counsel has failed to proffer any evidence that they are unable to identify the
EHU that the claimants' occupied without FEMA's assistance.  Until Liaison Counsel
28  demonstrate that they are unable to identify a claimant's unit there is no reason to require FEMA
to search for and/or place a hold on any such unit.

1  with retaining any excess EHU after April 15, 2008, should be shifted and borne by the Plaintiffs
2  and Defendants.  *See* Exh. 2, February 1, 2008, Letter.

3      15.    Liaison Counsel has requested that FEMA and the Center for Disease
4  Control/Agency Toxic Disease Registry ("CDC/ATSDR") stay and/or agree to various restrictions
5  relating to destructive testing of formerly occupied or new EHUs.  The Government has refused
6  PLC's demand, and proposed that it notify Liaison Counsel of any plans to conduct such testing
7  so that if the parties cannot resolve any potential dispute regarding the testing, Liaison Counsel
8  can file a motion for protective order.[2]/

9      16.    FEMA has transferred five (5) trailers to its disposal contractor for purposes of
10 allowing the contractor to investigate and assess the most efficient way to demolish trailers.  Some
11 of these trailers were apparently occupied by Hurricane Katrina or Rita disaster victims.  The
12 disposal contractor has stayed demolition of the trailers and the Government has provided Liaison
13 Counsel with information regarding each unit.  FEMA intends to allow Liaison Counsel a
14 reasonable opportunity inspect those units.

15     17.    On Thursday, February 21, 2008, DLC notified the Court and the Government that
16 it intended to file a Motion for Protective Order.  Exh. 5, February 21, 2008, E-Mails.  In response
17 the Government urged DLC to reconsider because any request for Court action was premature.  *Id*.

18     18.    On Tuesday, February 26, 2008, PLC served the Government by electronic mail
19 with their motion for protective order requesting relief substantially different from the relief

20 _____

21 [2]/    Undersigned counsel learned from CDC/ATSDR counsel on February 25, 2008, that in
22 November 2007, FEMA made available to them four (4) trailers for destructive testing.  These
   trailers were apparently previously used and stored near Purvis, MS.  Pieces were cut out of the
23 select EHUs and shipped to Lawrence Berkeley National Laboratory. Berkeley, CA, for testing.
   CDC/ATSDR provided the following identifying information regarding the four EHUs:
24

25      | Trailer Manufacturer | VIN |
        | --- | --- |
        | Gulfstream Cavalier | 1NL1VTR2661064665 |
26      | Pilgrim International | 5L4TF332563013658 |
        | Thor Industry Dutchman | 47CTDER256G520549 |
27      | Coachman Spirit of America | 1TC2B970861308196 |

28 CDC/ATSDR Counsel has represented that CDC/ATSDR has no plans to conduct any further
   destructive testing.

**FEMA's Response And Objections To Liaison
Counsel's Motions For Protective Order**s          - 5 -

sought by DLC through its motion for protective order.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(c)(1) (amended effective December 1, 2007) provides in pertinent part:

> *A party or person from whom discovery is sought may move for a protective order* . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  The court may, for good cause, issue an order to protect a party or person from . . . undue burden or expense, including . . . (B) specifying terms, including time and place, for the disclosure or discovery.

Fed. R. Civ. P. 26(c)(1) (emphasis added).

Federal Rule of Civil Procedure 26(c) (1) authorizes a court "[u]pon motion by a party . . . *from whom discovery is sought*, . . . and for good cause shown" to enter a protective order prohibiting or limiting discovery.  A party seeking a protective order or entity seeking to modify a discovery request must show good cause and the specific need for protection.  *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990).  "Good cause" exists when justice requires the protection of "a party or person from any annoyance, embarrassment, oppression, or undue burden or expense."  Fed.R.Civ.P. 26(c); *Landry*, 901 F.2d at 435.  "The court is required to balance the competing interests of allowing discovery and protecting the parties . . . from undue burdens."  *Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 595 (E.D. Tex. 2003).  The party seeking a protective order "must make 'a particular and specific demonstration of fact' in support of its request and may not rely upon 'stereotyped and conclusory statements.'"  *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 536-37 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981)).  The party asserting that the requested discovery constitutes an undue burden or expense must demonstrate through declaration or explanation the nature and extent of the burden or expense.  *Id.* at 537.  *See also Kutilek v. Gannon*, 132 F.R.D. 296, 300 (D. Kan.1990) (party objecting to discovery as unduly burdensome "cannot rely on some generalized objections, but must show specifically how [the requested discovery] is burdensome and/or overly broad by submitting affidavits or some detailed explanation as to the nature of the claimed burden.").

If a discovery request will result in a significant cost or expense it will constitute an undue

burden unless the party seeking the discovery agrees to pay costs associated with the request. *See Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir.1996) (Rules 45 and 26 give "considerable discretion" in determining whether expense-shifting in discovery production is appropriate in a given case); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 669 F.2d 620, 623-624 (10th Cir.1982) (requiring a requesting party to pay the costs of complying with its subpoena duces tecum, which included the costs of time to search for the requested records because the discovery request was for the benefit of the requesting party); *In re New England Carpenter Health Benefits Fund*, 2006 WL 3050806 *2 (C.D. IL 2006) (quashing discovery request unless party seeking discovery from non-party pays costs associated the request); *Multitechnology Services, L.P. v. Verizon Southwest f/k/a GTE Southwest Inc.*, 2004 WL 1553480 * 2 (N.D. Tex. 2004) (ordering requesting party to pay half of costs associated with response to discovery request).

## ARGUMENT

The Court should deny Liaison Counsels' Motions for Protective Orders because contrary to DLC's assertion, Fed. R. Civ. P. 26(c)(1) does not authorize the court to enter a protective order compelling FEMA to search for and/or preserve evidence. Furthermore, even if Fed. R. Civ. P. 26(c)(1) authorized such relief, in the instant case the request for that relief is premature because DLC has failed to demonstrate a need for the requested information and/or preservation of evidence. Specifically, further negotiations may well have resolved all of DLC concerns, or, at the very least, substantially narrowed the issues that required Court action – notably the DLC failed to comply with Fed. R. Civ. P. 26(c) (1) requirement that they certify that court action is required to resolve the dispute. Similarly, the Court should reject PLC's motion because they failed to meet and confer prior to filing the motion and Government counsel believes that further discussions would have narrowed the issues that require Court action. Finally, if the Court is willing to entertain and consider the merits of Liaison Counsels' motions, the Court should deny those motions, because Liaison Counsel has failed to demonstrate the need for the requested relief and the relief they seek is overly broad and imposes an undue burden and undue cost upon the Government and taxpayer.

**I.      LIAISON COUNSEL'S REQUEST FOR A PROTECTIVE ORDER SHOULD BE DENIED BECAUSE THEY FAIL TO DEMONSTRATE THAT COURT ACTION IS REQUIRED.**

The Court should reject Liaison Counsel's request for entry of a protective order because they have failed to demonstrate that Court action is required.  As an initial matter, contrary to DLC's assertion, Fed. R. Civ. P. 26(c)(1) does not authorize entry of a protective order in the instant matter.  Specifically, that rule contemplates issuance of a protective order to prevent or modify discovery requests.  Rule 26(c)(1) contemplates and authorizes the party or person from whom discovery is sought, i.e., the Government to seek a protective order.  *See* Fed. R. Civ. P. 26(c)(1) ("[a] party or any person from whom discovery is sought may move for a protective order").   In the instant case, if DLC is not satisfied with the FEMA's attempts to voluntarily accommodate their requests for information or access to EHUs, they should request leave of Court to conduct discovery and issue the appropriate discovery requests demanding production of information and/or access to EHUs.[3]/

Furthermore, even if the Court were to entertain Liaison Counsels' for motion protective orders or *sua sponte* characterize and treat the motions as request to compel, granting Liaison Counsels' requests is inappropriate because they have failed to demonstrate the need for such relief.  Specifically, it is the Government's belief that further negotiations should have resolved all disputes between the Government and DLC, and substantially narrowed the dispute between the Government and PLC.  *See* Exh. 5, E-mails.  That such is the case is evident by the simple fact that evidence proffered by Liaison Counsel in support of their motion demonstrates that given FEMA's voluntary offer to make any EHU in its possession and custody available for inspection, with the searchable excel spreadsheet FEMA, Liaison Counsel have the ability to locate and test most if not all EHUs that the claimants occupied and the units that each Defendant Manufacturer built.  *See* DLC's Motion, Exh. Part 3.

Similarly, PLC has failed to demonstrate the need for most of the information sought

---

[3]/      In this regards, FEMA has attempted to accommodate Liaison Counsel's requests for information.  However, the information Liaison Counsel seeks is constantly changing and for this reason alone they should be required issue a formal discovery request before seeking to compel the Government to produce information and/or make certain EHUs available for inspection.

through their motion for protective order.  First, as to their request regarding destructive testing, the Government has already voluntarily agreed to notify Liaison Counsel of any future destructive testing of EHUs occupied by victims of Hurricane Katrina and Rita prior to such tests taking place, and if the parties are unable to reach an agreement regarding the testing of such units, it will allow Liaison Counsel to seek Court action to resolve any disputed matters before proceeding with those tests.  Simply put, there is no dispute that requires the Court to grant PLC's request for a protective order relating to destructive testing.  Moreover, the onerous and burdensome restrictions PLC requests that the Court impose upon any such testing is contrary to public health and safety, because those restriction may *per se* deter the Government from conducting any such further testing and thereby inadvertently prevent discovery of valuable information that may protect the health and safety of people occupying EHUs.

Similarly there is no dispute regarding PLC's request for a list of new unoccupied EHUs at FEMA staging areas.   Again, FEMA has agreed to provide that the information to Liaison Counsel and it has also agreed to make those units available for testing.  Once again there is absolutely no justification for entry of a protective order.  Furthermore, PLC can use the Spreadsheet to identify the number of EHUs built by each Manufacturer and the location of those units, and using the VIN/FEMA bar code can locate the unit that each of the claimants occupied.

Simply put, Liaison Counsels' requests for protective orders are premature because further negotiations will substantially narrow the issues that require Court action.

**II.     LIAISON COUNSELS'  FAILED TO DEMONSTRATE A NEED FOR PROTECTIVE ORDERS AND ENTRY OF SUCH ORDERS WILL IMPOSES AN UNDUE BURDEN AND UNDUE COSTS UPON THE TAXPAYER.**

To the extent the Court considers Liaison Counsels' motions for protective orders ripe for review, the Government objects because they have failed to demonstrate the need for protection and the proposed orders impose an undue burden and undue costs upon the taxpayer.  To date FEMA has voluntarily sought to assist Liaison Counsel and accommodate their request to inspect any EHU in the Government custody and control.  Liaison Counsel has failed to demonstrate a need for the requested protective orders.  Furthermore, the proposed protective orders impose an undue burden and undue costs because they require FEMA to: (1) search for and identify EHUs

1   that Liaison Counsel already has the ability to identify and inspect; (2) search for EHUs that

2   Liaison Counsel cannot readily identify without requiring them to provide FEMA with

3   information that will facilitate FEMA's search for the requested information; (3) pay all costs

4   associated with retention of excess EHUs; (4) require FEMA to violate the Privacy Rights Act, 5

5   U.S.C. §522a.[4]/

6         In the instant case, Liaison Counsel have failed to demonstrate a need to compel the

7   Government to identify EHUs occupied by claimants, by specific manufacturer or model because

8   FEMA has provided a spreadsheet that allows them to identify EHUs by VIN/FEMA bar code, or

9   sort information by manufacturer.  Thus, Liaison counsel with an EHU VIN/FEMA bar code, can

10  locate a specific unit.  As evidenced by DLC's Exhibit Part 3, virtually all represented parties have

11  the ability to identify the VIN/bar code number of the EHU that they occupied.  *See* DLC Motion,

12  Exh. Part 3.[5]/  Accordingly, there is absolutely no reason to impose upon FEMA a duty to identify

13  EHUs that a claimant occupied absent a showing that the claimant is unable to identify the

14  VIN/FEMA bar code for the unit they occupied.

15        Moreover, if Liaison Counsel demonstrates that a claimant is unable to identify the

16  VIN/FEMA bar code, FEMA is not opposed to searching its records to identify that VIN/FEMA

17  bar code.  However, to allow FEMA to search and provide that information in a cost-efficient

18  manner FEMA requires more than just a name.[6]/  Specifically, FEMA requires that Liaison

19

20  [4]/     The Privacy Act provides, in pertinent part, "[n]o agency shall disclose any record which
21  is contained in a system of records by any means of communication to any person, or to another
    agency," except by written consent of that person, subject to certain exceptions, none of which is
22  present in this case.  5 U.S.C. §522a(b).

23  [5]/     PLC indicated at the February 20, 2008, conference call represented they believes
    approximately 60% of their clients know the VIN/FEMA bar code for the units that they
24  occupied.

25  [6]/     The Privacy Act bars FEMA from disclosing to Liaison Counsel information relating to
26  FEMA aid recipients without a release from the aid recipient.  5 U.S.C. § 522a(b).  FEMA has
    provided to Liaison Counsel a language that will authorize it to release Privacy Act information.

27

28        PLC suggests that the simple fact that it has submitted lists of persons who they assert
    Plaintiffs have signed up as claimants in this litigation authorizes FEMA to release protected
    Privacy Act information to Liaison Counsel.  Contrary to PLC's assertion, the mere filing of a list

**FEMA's Response And Objections To Liaison**                    - 10 -
**Counsels' Motions For Protective Order**s

1 Counsel provide:  (a) the claimant's FEMA application number; (b) the identity of person who
2 applied and was assigned the EHU that the claimant lived in, (c) location where claimant occupied
3 the EHU; (d) best estimate of date the EHU was assigned and retrieved.  With this information
4 FEMA can effectively search its records to identify the EHU that a claimant occupied.  Exh. 6,
5 Souza Dec. ¶¶4-7.

6        Liaison Counsel also apparently demands through their protective orders that the taxpayer
7 continue to bear all costs associated with retention of excess EHUs.  As an initial matter the
8 Government is not currently a party, and although it expects that it will eventually be made a
9 party, even in the event the Court were to ultimately decide that the decision in In Re: FEMA
10 Trailer Formaldehyde Product Liability Litigation, relating to Hillard v. United States,, MDL NO.
11 1873 (E.D. La.) (Lemon, J.) [Docket No. 138] was wrongly decided and it has subject matter
12 jurisdiction under the Federal Tort Claims Act, 28 U.S.C. §§1346(b), 2671-80, given the number
13 of administrative tort claims that have been filed, the United States will only be a Defendant in an
14 extremely small number of the claims that make up this MDL action.  As such, it is appropriate
15 for the Court to treat the Government as a non-party and shift costs associated with FEMA's
16 retention of excess EHUs to Plaintiffs and Defendants.  Furthermore, shifting of these costs is
17 important because the costs associated with retention of excess EHUs is staggering.  First-year
18 costs to start up and operate a storage area is $14 million dollars.  Exh. 1, Dec. Hackett ¶¶7-9.
19 Next month, because it is not disposing of excess trailers, FEMA will exhaust its existing storage
20 space.  Id.  If FEMA is not allowed to commence disposal of excess units in the near future,
21 FEMA will be required to open additional storage areas and each additional storage area will cost
22 $14 million dollars.  Id.  Given these substantial costs and fact that FEMA has provided Liaison
23 Counsel with a reasonable opportunity to identify and test a representative sample of EHUs the
24 Court should require Plaintiffs and Defendants to pay all costs for storage of excess EHUs after
25 April 15, 2008.

26        Furthermore, it is also appropriate to cost shift in the instant case because Plaintiffs and

27

28

of claimants is not a recognized exception to the Privacy Act, rather what is required is a written
release from each claimant.  5 U.S.C. §522a(b).

1  Defendants have had plenty of time to test EHUs. The first of the MDL cases was filed in May

2  2006, and others soon thereafter.  As such, Plaintiffs and Defense counsel have be aware for

3  almost two years of the need to investigate and test EHUs.  Nevertheless, for the most part they

4  chose not to inspect units.  The Government should not be required to bear the burden and costs

5  associated with their neglect.  Given the parties failure to inspect the units in a timely and prompt

6  manner, it is reasonable and fair to shift cost when the only reason to keep the excess units is to

7  provide Plaintiffs and Defendants with an opportunity to inspect the units.

8  **CONCLUSION**

9  For all the reasons set forth herein, the Court should deny Liaison Counsels' Motions for a

10 Protective Order.  Specifically, the Court should deny that motion because it is premature and the

11 evidence submitted demonstrates that had the parties engaged in further negotiations we may have

12 resolved the dispute, or at the very least, substantially narrowed the issues that requires Court

13 action.

14 Furthermore, to the extent the Court believes that it is appropriate to enter a Protective

15 Order, the Government respectively requests that the Court substantially narrow and modify

16 DLC's proposed Order.  Specifically, the Government requests that the Court Order:

17 (1)  That Liaison Counsel shall complete by April 15, 2008, testing of any and
18       all EHUs occupied by represented party where the represented party has the
         ability to identify the VIN and/or FEMA bar code for the unit that they
19       occupied.

20 (2)  For any represented claimants who was assigned a EHU that Liaison
         Counsel demonstrates that the claimant has lost or misplaced the VIN
21       and/or FEMA bar code, Liaison Counsel will produce to FEMA on or
         before March 7, 2008:  (a) the claimant's FEMA application number; (b)
22       the identity of the person who applied and was assigned the EHU that the
         represented claimant occupied; (c) location/ address where the claimant
23       occupied the EHU; (d) best estimate of the date FEMA issued the EHU;
         and (e) best estimate of date that FEMA's contractor retrieved the EHU.
24       Upon receipt of that information FEMA will promptly search its records
         and attempt to identify the EHU that the claimant occupied, if that EHU is
25       in a FEMA storage area it will segregate and/or place a hold on disposal of
         that unit, and will identify to Liaison Counsel the results of its search and
26       make the unit available for inspection and testing upon receipt of a Privacy
         Act release from that claimant.

27 (3)  Plaintiffs and Defendants will bear costs associated with FEMA's retention
         of any excess EHUs after April 15, 2008.  For this purpose, any travel
28       trailer or park model unit acquired by FEMA for purposes of providing
         temporary emergency housing to victims of Hurricanes Katrina and Rita are

**FEMA's Response And Objections To Liaison
Counsels' Motions For Protective Orders**          - 12 -

1  considered by FEMA to be excess. In the event Liaison Counsel fails to
identify or place a hold or an EHU on or before April 15, 2008, FEMA may
2  deposed of that EHU and no adverse inference or claim of spoliation may
be asserted by any person or entity against the Government for its disposal
3  of any such EHUs.

4  Dated: February 27, 2008                    Respectfully Submitted,

5                                              PETER D. KEISLER
                                               Assistant Attorney General, Civil Division
6
                                               C. FREDERICK BECKNER III
7                                              Deputy Assistant Attorney General, Civil Division

8                                              J. PATRICK GLYNN
                                               Director, Torts Branch, Civil Division
9
                                               MICHELLE BOYLE
10                                             Trial Attorney

11                                             *//S// Henry T. Miller*
                                               HENRY T. MILLER (D.C. Bar No. 411885)
12                                             Senior Trial Counsel
                                               United States Department of Justice
13                                             Civil Division – Torts Branch
                                               P.O. Box 340, Ben Franklin Station
14                                             Washington, D.C. 20004
                                               Telephone No: (202) 616-4223
15                                             Facsimile No: (202) 616-4473
                                               E-mail: Henry.Miller@USDOJ.Gov
16
                                               Attorneys for the United States of America
17
OF COUNSEL:
18
JORDAN FRIED
19 Associate Chief Counsel
Federal Emergency Management Agency
20 Department of Homeland Security
500 C Street, SW
21 Washington, D.C. 20472

22 JANICE WILLIAM-JONES
Trial Attorney
23 Office of Chief Counsel, Litigation Division
Federal Emergency Management Agency
24 Department of Homeland Security
500 C Street, SW
25 Washington, D.C. 20472

26

27

28

**FEMA's Response And Objections To Liaison
Counsels' Motions For Protective Orders**          - 13 -

1

**CERTIFICATE OF SERVICE**

2

      I hereby certify that on February 27, 2008, the foregoing Memorandum, and accompanying
and Exhibits 1-6 were filed via the U.S. District Court's CM/ECF electronic filing system a copy

3

thereof was served upon Liaison Counsel.

4

                         *//S// Henry T. Miller*
                         HENRY T. MILLER (D.C. Bar No. 411885)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FEMA's Response And Objections To Liaison**
**Counsels' Motions For Protective Order**s       - 14 -