UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-4"<br><br>JUDGE ENGELHARDT<br>MAG. JUDGE ROBY |

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION
TO COMPEL DEFENDANT UNITED STATES/FEMA
TO RESPOND TO SUBPOENA FOR CERTAIN INFORMATION**

**MAY IT PLEASE THE COURT:**

**1. The Defendant United States/FEMA has failed
to provide certain information under subpoena, making
a Rule 37 motion both necessary and appropriate.**

On January 28, 2008, through Jordan Fried as Associate Chief Counsel for Litigation, Department of Homeland Security, Federal Emergency Management Agency (FEMA), the latter agency (now a named defendant in this litigation) was issued a subpoena. Served on plaintiffs' behalf by Court-appointed Co-Liaison Counsel for Plaintiffs, it called for defendant to produce on February 11, 2008 certain documents and written information. *See* 1/28/08 Letter from Justin Woods to Jordan Fried, accompanied by subpoena, attached as Exhibit I. Among the specified items to be produced was

> a listing of the names and current or last-known mailing or street addresses of all persons in the Gulf south region who requested to be provided with a travel trailer, mobile housing unit or other temporary housing unit by FEMA following hurricanes Katrina and Rita.

*See* Exhibit I (specifically, Item 3 on Exhibit A attached to plaintiffs' subpoena).

On February 1, 2008, Henry Miller, Senior Trial Counsel, U.S. Department of Justice, sent an e-mail to Mr. Woods, Plaintiffs' Co-Liaison Counsel Gerald Meunier, and Defendants' Co-Liaison Counsel Andrew Weinstock, in response to the subpoena.  Mr. Miller suggested (*inter alia*) that the subpoena request for the above information be withdrawn.  *See* 2/1/08 Letter from Henry Miller to Messrs. Woods, Meunier and Weinstock, attached as Exhibit II, at pp. 3-4. Although Mr. Miller further indicated that a more formal response to the subpoena would be forthcoming, subsequent discussions with him confirm that his e-mail is offered as the defendant's sole written response to the subpoena, and that the Government maintains its position that, under the Privacy, the disclosure of the names and addresses of individuals who may have resided in FEMA-provided emergency housing is prohibited and cannot be produced absent Court order.

Being advised of these events, this Court directed by Order of March 20, 2008, that plaintiffs file a motion "to compel the Government to respond to the outstanding subpoena....," specifically to resolve the question whether plaintiffs' may obtain the requested list.  The other items sought in the subpoena at issue and not yet produced by the Government are not addressed at this time.

This motion proceeds under Rule 37(a) of the Federal Rules of Civil Procedure, which authorizes a party to "move for an Order compelling disclosure or discovery."  Rule 37(a)(1), FRCP.  The Rule encompasses motions to compel the disclosure and production of that which has been made the subject of a valid subpoena, when the recipient of the subpoena has declined to respond.  Further, to the extent Rule 37 motion practice requires certification that the movant

"has in good faith conferred or attempted to confer with the person or party failing to make disclosure," it should be noted the aforementioned discussions with counsel for the Government (some in Chambers with the Court present), as well as a recent telephone conversation between Mr. Miller and Mr. Meunier, all serve to satisfy this requirement. The requisite written certificate to this effect, pursuant to Local Rule 37.1, is attached.

## 2. The Effects of Class Action Pendency

Plaintiffs' arguments in support of production of FEMA's list of the names and current or last-known mailing addresses of all individuals who received emergency housing assistance in the form of mobile housing units or travel trailers following Hurricanes Katrina and Rita, are predicated upon plaintiffs' proposal as to how this MDL might proceed as a mass joinder. This memorandum in support of the motion to compel, therefore, begins with discussion of that proposal.

It is well-settled Supreme Court jurisprudence that the pendency of a class action interrupts the running of all applicable statutes of limitations as to the claims of those who by definition are included in the proposed class. *See American Pipe & Construction Co v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Accordingly, plaintiffs in this MDL need not file individual lawsuits as long as there are pending class action allegations which include their claims by definition.[1] Unless and until the Court rules under Rule 23 that there is no class, prescription is interrupted as to all such claims.

---

[1] Incorporating class action allegations in previously-filed actions in this MDL, plaintiffs' Master Complaint broadly defines the proposed plaintiff class as "[a]ll individuals who resided for any length of time in FEMA-provided housing units within the states of Louisiana, Mississippi, Alabama and Texas after Hurricanes Katrina and Rita." *See* Master Complaint, ¶s 6 & 95.

Despite this procedural advantage to plaintiffs, however, the pendency of a Rule 23 class action carries with it a clear disadvantage for both sides, i.e., the numerous claims of all of the unnamed and absent members of the proposed class are not disclosed or identified unless and until there is a formal proof of claim process following a decision to certify the class. The process of determining whether to certify a class, including review on appeal, is itself time-consuming; and, in the event of certification, further delay is interposed in establishing a centralized proof of claim process. During this entire effort, the parties remain unable to share and analyze precise information as to the number and nature of the claims asserted in the action.

Although an MDL is by definition a "pretrial" proceeding under 28 U.S.C. §1407(a), the history of multi-district litigation indicates that these proceedings do offer a unique opportunity to achieve global settlement. Indeed, the <u>Manual for Complex Litigation</u> expressly encourages presiding MDL judges to "make the most" of this settlement opportunity. *See* <u>Manual for Complex Litigation</u> (4th ed.), §20.132, p. 223. Conversely, if the parties do not arrive at a global settlement in the course of an MDL, the remand of the various cases to their fora of origin, makes it extremely difficult for the litigants to achieve settlement efficiently, much less in the near term. Assuming agreement that the MDL should be explored as an opportunity to achieve settlement, it is essential that claims information be fully developed and shared. There is no other way to assess claims and negotiate intelligently toward possible resolution.

If the parties first were to proceed with class certification efforts, neither a certification nor a non-certification result would achieve the desired prompt and efficient disclosure of claims information during the pendency of this MDL. As noted, even if a Rule 23 class ultimately were certified, there would be a period of delay for review on appeal of this decision, followed by

formal notice and a proof of claim process which itself would be time-consuming.  If, on the other hand, the ultimate ruling was <u>not</u> to certify a class under Rule 23, potentially thousands of individual lawsuits asserting the known claims then would be necessary to file on the basis that the interruption of the statute of limitations period had ended, following which there would have to be a process for organizing and assembling claims information through traditional discovery channels.  Proceeding first toward a class certification or non-certification outcome also would constitute unavoidable delay in the development of "merits issues" in the case, which in itself would postpone a proper assessment of the liability and causation issues which inform settlement discussions.  Bellwether trials, for example, would have to await at least some measure of case-specific merits discovery; but class certification discovery presumably would take place in advance of same.[2]

### 3.  A Mass Joinder with Certain Features Can Both Avoid the Prescription of Claims and Allow for the Desired Disclosure of Claims Information

The parties and the Court can decide to temporarily defer the process which leads to either class certification or class non-certification, by instead focusing more immediately upon the appropriate way to obtain claims information without having multitudinous lawsuits filed and discovery conducted as to the plaintiffs named in these lawsuits.  Claims information-gathering can occur in an organized and expedited way through negotiated forms such as the Plaintiff Fact Sheet herein.  In effect, the litigants agree upon what claims information is needed and

---

[2]The notion of resolving liability issues in a bellwether trial pending class certification raises questions not only whether a bellwether plaintiff effectively, and preemptively, opts out of the putative class by proceeding to trial individually, but whether it is prudent to litigate liability issues in an individual case in advance of an anticipated "common issues" trial following class certification.

appropriate both for initial evaluation purposes, and to categorize claims for the purpose of selecting potential bellwether trial plaintiffs.

With thousands upon thousands of already-identified claimants in this litigation, the completion of the Plaintiff Fact Sheet process is a significant undertaking. Plaintiffs' counsel in this case are prepared to organize themselves and invest the necessary resources in staff and case management to accomplish the task, assuming that in the process their clients are not further burdened with the need to file individual lawsuits because of the running of the statute of limitations, and submit to formal discovery on a case-by-case basis. For this reason, the execution of the negotiated and approved Plaintiff Fact Sheet should be accompanied by the execution of a "tolling agreement," whereby the defendant manufacturers and individual claimants enter into an express understanding that any applicable statutes of limitations are tolled as to the claim, pending further efforts in the MDL and either resolution in the MDL or remand of all cases upon conclusion of the MDL.[3] The agreement would apply to all existing claims of participating class members.[4]

With the claims-gathering and tolling procedures in place, Rule 23 class certification can and should be addressed. It is appropriate and necessary that this MDL result in a decision

---

[3] In Louisiana, tolling agreements may not be enforceable as a matter of law. Therefore, a Louisiana mass joinder may be filed in the Eastern District of Louisiana and essentially "parked," for the same period of time during which tolling agreements as to the other states (Mississippi, Alabama and Texas) are in existence. The mass joinder would have an exhibit attachment listing all names of Louisiana claimants in the MDL. It would effectively serve as a tolling agreement, and would be an administrative device not requiring responsive pleadings or any other action on the part of counsel. This approach was taken under the Propulsid MDL by Judge Eldon Fallon.

[4] It should be acknowledged that in this toxic exposure case there may exist inchoate claims, i.e., asymptomatic claims which legally may arise only later upon the known manifestation of a disease allegedly related to formaldehyde exposure.

whether or not this is a case suitable for handling on behalf of a plaintiff class with appropriate subclasses; and, if the decision is non-certification, the finality of that ruling will end the interruption of prescription.  Plaintiffs agree that a decision on class certification must accompany the process they propose.  It is a matter of proper timing.  The parties and the Court should have further discussion about when a class certification decision will be rendered, following proper briefing on the part of the parties, so that in turn it may be known when that decision (if not appealed) will become final.  Plaintiffs are confident that such case management decisions can be scheduled in connection with the other events discussed above, i.e., the execution of the Plaintiff Fact Sheet and a tolling agreement to accompany same, so as not to prejudice either side or undermine the two-fold objectives of (1) claim disclosure and (2) avoidance of multiple individual lawsuits being filed in the MDL.[5]

It is worth noting that in the Vioxx MDL Judge Fallon followed a course of action consistent with what plaintiffs propose herein.  In that matter, there were five bellwether trials, the first of which proceeded in November 29, 2005 with a mistrial declared on the basis of a "hung jury" on December 12, 2005, followed by retrial in February 2006.  The second MDL bellwether trial was in August 2006.  The third was in September 2006.  The fourth was in November 2006.

---

[5]The tolling agreements in question will be executed with defendant manufacturers only. As to the defendant FEMA, the timely filing of administrative claims under the FTCA (e.g., using Form 95) already serves to interrupt prescription on a claim-by-claim basis.  There will be no need to file these cases as Court actions unless and until the Government denies the claims administratively.  But all FTCA claimants should be considered individuals making claims against manufacturers as well, and will be obliged to execute fact sheets and provide claim information beyond what is disclosed in Form 95.  The defendant Government will be a beneficiary of this additional claims information, of course, and entitled to make case-related decisions based on same.

It was only <u>after</u> these four (of a total of five) bellwether trials that Judge Fallon rendered his Order and Reasons formally denying the certification of a proposed national class of personal injury claimants.  *See* 11/22/06 Order and Reasons denying class certification, *In Re: Vioxx Products Liability Litigation*, MDL 1657, Section "L," EDLA (Doc. #8875).  This decision, not appealed, became final.  Meanwhile, a process already was in place for the execution of "Plaintiff Profile Forms," accompanied by tolling agreements to interrupt the applicable statutes of limitations.  This gathering of claims information — as well as the bellwether trial results — facilitated the discussions which culminated in a global resolution.

It is true that no pre-certification Rule 23 notice was sent to putative class members in Vioxx such as plaintiffs will propose herein.  But it also is true that the prospect of a comprehensive, direct communication with <u>all</u> potential claimants was never possible in Vioxx.  On the contrary, it would have been impossible to mail case management information to each and every person claiming a heart attack or stroke from Vioxx.  Indeed, this fact has produced unavoidable consequences in the Vioxx MDL, to the extent the announced settlement expressly excludes any claimant (for lack of notice or otherwise) who failed to either file an individual action or sign a tolling agreement and complete the negotiated claim form.

In this MDL, however, there exists a known and identifiable universe of claimants, who can be reached by mail based on a list currently in FEMA's possession.  Here, it <u>is</u> possible to directly communicate with all putative class members, i.e., <u>all</u> who have resided previously in FEMA-furnished emergency housing units.  This presents a unique opportunity to assure that each and every one of these potential claimants receives an actual notification of how the Court and the parties in this MDL intend to proceed in terms of gathering claims information for those

who wish to present existing claims. This notification process offers the realistic prospect of a truly comprehensive database of claims, as opposed to a period of non-disclosure due to the delays inherent in awaiting the outcome of class certification and case-by-case discovery, a period in this case capable of even outlasting this "pretrial" MDL proceeding.

### 4. The Mailing List Identifying All Possible Claimants is Essential to Fairly Implement Necessary and Proper Notice

(A)     The desirability of notice as a matter of case management

It is essential in the above-articulated approach that a fair, due process notice be given to all claimants currently defined within the pending plaintiff class, to the effect that they are obliged to proceed with the filing of a Plaintiff Fact Sheet by a date certain if they wish to assert claims through the MDL. The notice would further advise them that the alternative to filing a fact sheet will be to possibly have to file an individual lawsuit, the deadline for which will depend upon when and whether should the Court decides that the case will or will not proceed as a class action. The tolling agreement and/or Louisiana mass joinder as means of interrupting prescription also will be discussed in the notice to these putative class members. The thrust of the notice is education, not solicitation. The language will be carefully crafted and, hopefully, agreed upon among the parties as well as with the Court. It will not encourage people to file claims, but simply advise them that, if they are interested in protecting their legal rights through the MDL, there are certain steps which they should take at this time.

In effect, as discussed further *infra*, the notice will constitute information analogous to a case management or pretrial order contemplated under FRCP 16.

As noted, and regardless of whether or how many individuals respond to the notice and/or

fill out Plaintiff Fact Sheets by the established deadline, the Court will proceed with a scheduled class certification decision, following which the only option of any absent claimants will be to file a timely lawsuit. The day will come sooner rather than later, in other words, when the Court and the parties in this MDL will learn who is asserting an existing claim and who is not making a claim herein. But more importantly, as to those who <u>are</u> making claims, the parties will have employed <u>without delay</u> an agreed-upon mechanism (the Plaintiff Fact Sheet) to discern important, basic information about the claim. Again, notice to all known, potential claimants is key; the more comprehensive the process, the more comprehensive the resulting claims information.

(B)     <u>The broad authority of the Court to authorize notice to putative class members</u>

It is important to distinguish between mandatory and discretionary notices under Rule 23. Mandatory notice requirements are prescribed by Rule 23(c)(2), applicable to certified Rule 23 actions for damages such as the proposed class in this matter. But the redactors of the Rule saw fit by amendment in 1966 to add a provision allowing for discretionary notice under Rule 23(d)(1) & (2).

Specifically, Rule 23(d)(1)(B) provides that a district judge "may issue orders" that require giving appropriate notice to some or all class members in order "to protect class members and fairly conduct the action...." Under Rule 23(d)(2) an order under Rule 23(d)(1) "may be combined with an order under Rule 16," which relates to scheduling, case management and other pretrial orders. This provision [Rule 23(d)(2)], in the words of one class action commentator,

> ....serves as a catch-all provision in the class action rule, codifying the <u>inherent judicial power</u> to give notice to class members other than the named parties when the circumstances warrant it.

> Basically, notice under subdivision (d)(2) serves as a <u>management tool throughout the litigation</u>, as well as a means for bolstering due process protections for absent class members, in appropriate circumstances.

*See* <u>Newberg on Class Actions</u> (4th ed.), Chap. 3, §8:15, pp. 206-07 [emphasis added].

Since a Rule 23 class action is pending, this District Court thus has express as well as inherent authority to promulgate appropriate notices to the putative class. The content of the proposed notice in this case clearly relates to case management information, making the requested order for a pre-certification notice one that relates to Rule 16 issues, just as Rule 23(d)(2) suggests.

One context in which the issue of pre-certification notice arises, is where the parties reach a proposed settlement with some or all defendants, and the district judge must decide whether to hold in abeyance motions to dismiss based upon settlement, pending a class certification decision, or whether, alternatively, pre-certification notice of the proposed settlement should be promulgated. Even where it is more appropriate to hold such proposed settlements and dismissals in abeyance pending certification and <u>not</u> send notice, however, the case law suggests that the availability of pre-certification notice under Rule 23(d) is preserved:

> This is not to say that pre-certification determination and the notice are never appropriate in the pre-certification case. The question is not one of power. The power is clear whether we look to the purposes of 23(e) or to the specific language of 23(d). But the question is whether the court should exercise the power and that is the question committed for resolution to the informed judgment of the District Court.

*Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1309 (4th Cir. 1978).

The question, then, is not whether such pre-certification notice authority <u>exists</u>, but
-11-

whether the use of the authority is <u>appropriate</u> in these circumstances. The 1966 amendment to Rule 23, which added the discretionary notice provision,

> does not require notice at any stage, but rather calls attention to its availability and invokes the court's discretion.

*See* Federal Civil Judicial Procedure and Rules (2008 Ed.) [Thompson West] at p. 129 [Advisory Committee Notes, Rule 23]. The Advisory Committee notes for the Rule further indicate that this discretion is informed by the twin considerations of class member protection and fundamental fairness. *See id.* [citations omitted].

The anticipated objection by FEMA that the pre-certification notice proposed by plaintiffs at this stage of the litigation, even if authorized under Rule 23(d)(2), is unwarranted because it is unprecedented, in the first place ignores the circumstances making this MDL itself unique. The absent class members herein represent the victims of one of the worst disasters in history. They are a displaced population of citizens with potential claims, many of whom presumably are in the process of either moving out of their trailers because of the formaldehyde problem, being urged by the Federal Government to do so, and/or faced with the urgent problem of finding alternative housing for family members at a difficult time (especially given the housing shortage which prevails, for example, in metropolitan New Orleans). The stated Rule 23(d) objective of protecting absent class members clearly is served by an efficient, comprehensive communication to these individuals to the effect that the pending MDL contemplates their filling out a claim form should they wish to participate, and further advising them that it may be unnecessary for them to file individual lawsuits if and when the suspended prescriptive period runs again, pursuant to completion of a claim form coupled with tolling agreements and/or a Louisiana mass

joinder. These are not self-evident matters, but case management procedures and action steps critical to the individuals in question. Given the circumstances in which they find themselves, surely they have a right to be properly educated about these matters through direct-mail communication, rather than being left to the vagaries of market-driven solicitation activity among certain plaintiffs' counsel.[6]

There is another important and unique factor to consider: Federal Government representatives have communicated directly with, and remain in direct communication with, a number of the putative class members to whom plaintiffs propose to send a Rule 23(d)(2) notice. For example, written fliers from the Government have been distributed to trailer residents, announcing — and to some extent, interpreting — the results of the testing protocol conducted by a federal agency, The Center for Disease Control and Prevention (CDC). A copy of a sample of this flier is attached as Exhibit III(a).

FEMA also has acknowledged that, under the CDC testing protocol, actual field interviews are being conducted between CDC/Government representatives and trailer residents, to discuss the results of the CDC testing. Plaintiffs and their representatives are not invited to, or present at, these discussions, even in the cases of claimants actually represented by counsel; but attached as Exhibit III(b) is a sample letter which the CDC has sent to one of the (represented) claimants whose trailer has been tested. The letter, which interprets the test results and states the Government position on safe and unsafe exposure, serves as an additional example of direct and

---

[6]Despite the publicity that formaldehyde exposure in FEMA trailers has received in the media, and despite the advertising and marketing activities of plaintiffs' counsel, the plaintiff attorney group organized by the Plaintiffs' Steering Committee represents approximately 20,000 plaintiffs. Published reports indicate that approximately <u>145,000</u> individuals received emergency housing units from FEMA after Hurricanes Katrina an Rita.

case-relevant communication with class members, in this instance a class member who already has retained counsel. *See* 2/20/08 CDC letter to Frances Crawford [Exhibit III(b)].

Finally, under the procedure which has followed the CDC testing protocol, FEMA has established a toll-free telephone number and invites trailer residents to call that number to have discussions with Government representatives about formaldehyde exposure in their trailers. In these discussions, FEMA communicates with trailer residents about making alternative housing arrangements discussions, a matter which clearly has implications in the legal case relative to the mitigation of damages. Moreover, legal counsel for FEMA (Mr. Miller) has invoked the Privacy Act as a basis for not disclosing herein the test results of those class members not currently represented by counsel. *See* 3/27/08 e-mail to Weinstock, Woods and Meunier from Henry Miller, attached as Exhibit III(c).

It is not plaintiffs' intention to retroactively object to these ongoing communications with putative class members. But in balancing the various factors that inform its discretion in this matter, this Court should take note of the fact that FEMA, a named defendant with litigation interests adverse to plaintiffs and putative class members, has been allowed to engage in ongoing communication with presumably thousands of class members, unrepresented and otherwise, relative to the levels of formaldehyde found in their trailers <u>and the implications of same as far as the defendant Government is concerned</u>. To suggest that these same class members have no right to be advised of important case management information affecting their legal rights because a class is not formally certified, implicates both the "class protection" and "fundamental fairness" policies of Rule 23(d) in ways unique to this case and, yes, unprecedented.

As one expert commentator on Rule 23 has noted, a district judge's implied and inherent

-14-

power under Rule 23(d) to communicate to nonparty, putative class members that they must take some affirmative step in the litigation, can prove important to the Court and the litigants

> since some knowledge of the size and membership of the class is necessary in order to make certain orders during the course of the proceedings and to give everyone some sense of the litigation's dimensions.

*See* Arthur Miller, "Problems of Giving Notice in Class Actions," 58 FRD 299, at 313 (1973). Plaintiffs would submit that it is fair not simply to class members, therefore, but to all litigants in this MDL and the Court itself, that further case management be informed by the number of claimants actually intent on proceeding herein.

The same class action scholar (Harvard Law Professor Arthur Miller) also has commented on another anticipated argument by FEMA (and perhaps the defendant manufacturers as well), namely, that the proposed notification to absent claimants will have the undesired and inappropriate consequence of stirring up litigation. This is not a new issue, but one which Professor Miller puts it in proper context, based on actual history and case experience:

> Mention also should be made of the risk of claims solicitation when the notice is attorney-drawn. Although this factor has been much commented upon, the cases indicate that the district judges are being very sensible in terms of the procedures for composing and distributing the notice. Thus, although there have been instances of improper conduct in connection with the notice procedure, it is fair to say that these abuses have been extremely rare. Moreover, this particular threat can be handled by local rule or by following some of the suggestions made in the <u>Manual for Complex and Multi-District Litigation</u>. The possibility of overreaching should not obscure the fact that the composition and dissemination of the notice often should be a cooperative venture.

*See id.* at pp. 327-28 [citations omitted].

The language, like the timing, of the notice is thus critical. The parties should negotiate

cooperatively and in earnest to secure proper content for the notice, and strive to do so under a Court-imposed deadline.  The plaintiffs not only are ready to participate in these discussions, but, per the Court's directions, will on April 15 furnish an initial, proposed notice for consideration.

### 5.  The Privacy Act expressly provides that otherwise prohibited disclosure may occur on the basis of Court order

It previously has occurred in this litigation that the Government declined to furnish certain requested information about trailer residents and the identity of the trailers they used, citing the Privacy Act.  Nonetheless, this Court agreed that such information be disclosed as to represented claimants even in the absence of express Privacy Act waivers, in order that the parties might proceed with appropriate testing of trailers in the Government inventory.  The objections to disclosure based on the Privacy Act in that instance were overcome, properly, because the Act itself recognizes that Court orders represent one of the bases for the otherwise-prohibited disclosure of citizen information possessed by the Government.

The Privacy Act, 5 U.S.C. §552a, states that "no agency shall disclose any record which is contained in a system of records...to any person...except pursuant to a written request by...the individual to whom the record pertains, unless disclosure of the record would be...pursuant to the order of a court of competent jurisdiction."  *See* 5 U.S.C. §522a(b)11 [emphasis added].  Hence, among a total of twelve situations in which information or record disclosure is permitted by the statute without the written consent of the affected individual, one subsection specifically enumerates "the order of a court" as a basis for disclosure.  Here, for the reasons already discussed, this Court's order is legally justified and authorized.

It also is important to emphasize that the proposed disclosure of the requested list of

names and addresses will <u>not</u> be given directly to the counsel or the parties in this litigation, as did occur with the earlier disclosure of emergency housing information provided to represented claimants.  Rather, as the plaintiffs' proposed protocol and notice will confirm, and has already been discussed with both the Court and counsel for the Government, the list to be furnished by FEMA will be provided only to the Court and to an independent, Court-Appointed "Notice Administrator."  The latter will implement the mail-out of the notice (with appropriate cross-checking of good and current addresses through national databases affording same).  Returns and responses in connection with the notice will be directed to, and received only by, the Notice Administrator (although reviewable by the Court).  In this way, no private or confidential information to the effect that a given individual has received emergency housing assistance from FEMA ever will be disclosed publicly in the record, or to anyone other than the Court and the Notice Administrator.  The latter company appropriately can be bound by a confidentiality and protective order not to reveal the information on the list, or any responses to the notice, to anyone other than the Court.

The potential benefit to the citizens in question, therefore, far outweighs any potential privacy breach.  Indeed, such privacy concerns exist in theory only.  If the individual is silent in response to the mailed notice, it will never be known that that individual received emergency assistance through FEMA.  If the individual does respond by indicating an interest to proceed with the Plaintiff Fact Sheet/tolling agreement process, then, self-evidently, that individual would waive any confidentiality or privacy in reference to the fact that he/she previously received emergency housing assistance from FEMA.

Reported jurisprudence supports disclosure under the circumstances herein,

notwithstanding the Privacy Act.  For example, in *Sun-Sentinel Co. v. U.S. Department of Homeland Sec.,* 431 F.2d 1258 (S.D. FL) 2006, a news organization sued FEMA to compel Freedom of Information Act [FOIA] disclosure of information reflecting FEMA's response to certain Florida hurricanes, which information included the names and addresses of individuals who had received assistance after these storms.  The district judge found that, while there was some privacy interest associated with the requested information, that interest was easily overcome by the public interest in having the information disclosed to the media.  *See id.* at 1269.  Here, of course, no such public disclosure is even contemplated.

In *News-Press v. U.S. Dept. of Homeland Sec.*, 489 F.3rd 1173 (11th Cir. 2007), another news organization brought suit against FEMA under FOIA seeking disbursement-of-benefits data in connection with four hurricanes that struck Florida in 2004.  The news organization specifically sought the names and addresses of those who applied for disaster assistance.  In discussing the need to balance interest of privacy with the public interest in disclosing such information, the district judge quickly dismissed FEMA's argument that some embarrassment or stigma would attach to disclosure concerning the receipt of Government assistance from FEMA.  The Court noted that there was no "means test" for receiving FEMA aid, and that, to the contrary, FEMA itself had worked diligently to eliminate any potential stigma that might accompany its extension of aid to citizens.  *See* 489 F.3rd at 1200.

### Conclusion

Under authority of Rule 37, and pursuant to objectives of Rules 16 and 23(d), plaintiffs accordingly request the entry of an Order compelling the defendant United States/FEMA to immediately and forthwith furnish to the Court and to a Court-Appointed Notice Administrator,

certain information that was the subject of the earlier-subpoena directed to this defendant, specifically: "a listing of the names and current or last-known mailing or street addresses of all persons in the Gulf south region who requested to be provided with a travel trailer, mobile housing unit or other temporary housing unit by FEMA following hurricanes Katrina and Rita." Plaintiffs propose that this list be utilized by the Court and Notice Administrator to promulgate a case management notice, the content and timing of which will be determined by further proceedings herein.

       Respectfully submitted:

       **FORMALDEHYDE TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY: s/Gerald E. Meunier
   GERALD E. MEUNIER, #9471
   **PLAINTIFFS' CO-LIAISON COUNSEL**
   Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
   2800 Energy Centre, 1100 Poydras Street
   New Orleans, Louisiana 70163
   Telephone: 504/522-2304
   Facsimile: 504/528-9973
   gmeunier@gainsben.com

   s/Justin I. Woods
   JUSTIN I. WOODS, #24713
   **PLAINTIFFS' CO-LIAISON COUNSEL**
   Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
   2800 Energy Centre, 1100 Poydras Street
   New Orleans, Louisiana 70163
   Telephone: 504/522-2304
   Facsimile: 504/528-9973
   jwoods@gainsben.com

>							COURT-APPOINTED PLAINTIFFS'
>							STEERING COMMITTEE
>								ANTHONY BUZBEE, Texas # 24001820
>								RAUL BENCOMO, #2932
>								FRANK D'AMICO, #17519
>								MATT MORELAND, #24567
>								LINDA NELSON, #9938
>								RONNIE PENTON, #10462

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

>							s/Gerald E. Meunier
>							GERALD E. MEUNIER, #9471