UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-4"
JUDGE ENGELHARDT
MAG. JUDGE ROBY

THIS DOCUMENT IS RELATED TO ALL CASES

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE UNITED STATES OF AMERICA' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' STEERING COMMITTEE MOTION TO COMPEL DEFENDANT
UNITED STATES/FEMA TO RESPOND TO SUBPOENA

INTRODUCTION

Defendant United States of America ("United States") hereby files this opposition to the Motion of Plaintiffs' Steering Committee ("PSC") to Compel the Federal Emergency Management Agency ("FEMA") to produce and disclose personal contact information for non-party disaster aid recipients who were issued, or requested to be issued, temporary emergency housing units ("EHUs" or "units") after Hurricanes Katrina and Rita. ("PSC Mot.") [Dkt. No. 119].

The Court should deny PSC's Motion because the requested information is protected by the Privacy Act of 1974, 5 U.S.C. § 552a. The Privacy Act prohibits the government from disclosing "any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." Moreover, contrary to PSC's assertion, the "Court Order" exception to the Privacy Act, 5 U.S.C.

§ 552a(b)(11), does not authorize the release of the information PSC seeks because that information is not relevant to any claim or defense at issue in this litigation.  Further, PSC's filing of a Complaint seeking class action status does not make the requested information relevant under applicable law.  Finally, the information sought by PSC is unduly burdensome because the request is overbroad and not reasonably calculated to lead to the discovery of admissible evidence in this case.  For these reasons, the Court should deny PSC's Motion.

## RELEVANT FACTS

1.  On or about January 28, 2008, Plaintiffs' Liaison Counsel ("PLC") issued a Fed. R. Civ. P. 45 subpoena to FEMA.  The subpoena set a return date of February 11, 2008, and requested extensive discovery, including the demand that FEMA produce contact information for all persons who resided in, or requested to be provided with, FEMA-issued EHUs, in response to Hurricanes Katrina and Rita.  PSC did not provide any Privacy Act releases or waivers in support of that request.

2.  On February 11, 2008, the United States issued its Fed. R. Civ. P. 45(c)(2)(B) response and objections to PLC's subpoena.  *See* Exh. 1, Letter and Proof of Transmission, from Michelle Boyle to Liaison Counsel, dated February 11, 2008.  The United States objected to PSC's subpoena on various ground including that the subpoena was premature; that the information it sought was protected by the Privacy Act; was unduly burdensome in that it was not reasonably calculated to lead to the discovery of admissible evidence relevant to claims and defenses at issue in this case; and that the information sought was privileged.  *See id.*

3.  To date, the United States has voluntarily cooperated with Liaison Counsel and invested a substantial amount time and government resources to produce extensive amounts of

2

information to Liaison Counsel regarding EHUs. On February 22, 2008, the United States produced a list that identifies all units – including to the extent possible, the manufacturer, model, vehicle identification number, and FEMA barcode of each unit – currently in FEMA's inventory, to facilitate Liaison Counsel's ability to identify EHUs that they wanted to examine and test. *See* Exh. 2, Letter from Michelle Boyle to Liaison Counsel, dated February 22, 2008. The United States has offered to make any of these units available to Liaison Counsel for examination and testing. PLC is expected to identify units from this list to be tested on or before April 21, 2008.

4. On February 29, 2008, the United States provided to Liaison Counsel an inventory of units currently located in group and commercial housing sites. *See* Exh. 3, Letter from Michelle Boyle to Liaison Counsel, dated February 29, 2008. This was done to accommodate PLC's request to test units "in place," *i.e.*, units that had not been deactivated and moved to FEMA storage facilities. To date, PLC has not identified any units from this list for testing. Defendants' Liaison Counsel ("DLC") has indicated that defendants would like to test any units identified by PLC. *See* Exh. 4, E-mail from Andrew Weinstock to Michelle Boyle, dated March 11, 2008.

5. On March 20, 2008, the United States provided to Liaison Counsel an inventory of new and unused units in FEMA's possession and custody, to accommodate PLC's request to test such units for formaldehyde levels. *See* Exh. 5, E-mail from Michelle Boyle to Liaison Counsel, dated March 20, 2008. On March 27, 2008, PLC identified units from this inventory that it would like to examine and test. *See* Exh. 6, E-mail from Justin Woods to Henry Miller, dated March 27, 2008. DLC has indicated that defendants would like to test the units that PLC has

identified.  *See* Exh. 4.  This testing is scheduled to be completed by May 30, 2008.

6.  At Liaison Counsel's request, the United States conducted a name search of the FEMA Recovery and Response Action Tracking System ("FRRATS") database to identify EHUs occupied by represented plaintiffs in this litigation.  The results of that search were provided to Liaison Counsel on April 2, 2008.  *See* Exh. 7, Letter from Michelle Boyle to Liaison Counsel, dated April 2, 2008.  Liaison Counsel is scheduled to provide the United States with a list of units to be tested, from these results, on or before April 21, 2008.

## PROCEDURAL POSTURE

On March 18, 2008, PSC, pursuant to Court Order, filed a Master Complaint, which named the United States as a defendant as to 8 plaintiffs.  To date, these are the only persons who have filed suit against the United States.  Because a suit against the United States brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-80, may only be maintained where each and every person suing has exhausted his/her administrative remedies, the United States is not a defendant with respect to the majority of plaintiffs in this case.  28 U.S.C. § 2675(a).  *See also Hoskins v. United States*, 2001 WL 175237, at *3 n.6 (E.D. La. Feb. 20, 2001) (Berrigan, J.).

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 26, the information PSC seeks through its Motion must be reasonably calculated to lead to the discovery of admissible evidence relevant to a claim or defense at issue in this litigation.  Fed. R. Civ. P. 26(b)(1).  Plaintiffs in this litigation assert that they were negligently and wrongfully exposed to formaldehyde in EHUs issued to them by FEMA after Hurricanes Katrina and Rita.  *See* Administrative Master Complaint [Dkt. No. 109]

("Master Compl.") ¶¶ 6, 31, 39. Thus, any discovery sought in this litigation must relate to the substance of plaintiffs' claims, or to the defenses of the United States or private defendants. Because the information PSC seeks, by definition, does not relate to the claim or defense of any party to this litigation, it is not discoverable under the Federal Rules of Civil Procedure.

PSC's attempt to dress its request as one that is independently authorized by the Privacy Act's "Court Order" exception, 5 U.S.C. § 552a(b)(11), or Fed. R. Civ. P. 23 ("Class Actions"), is unavailing, because neither basis allows PSC to circumvent the relevance requirement of Rule 26. To the contrary, disclosure under either provision actually depends on a court's determination that the requested information is relevant to a claim or defense in the first instance. Here, PSC cannot make such a showing. Instead, PSC's Motion is being brought solely for the convenience of the private parties, and to allow plaintiffs to potentially forego their demand for Rule 23 class action status. Since neither the Privacy Act's "Court Order" exception, nor Rule 23, authorizes this Court to pierce the Privacy Act for such purposes, PSC's Motion should be denied.

## ARGUMENT

I.  **The Privacy Act Bars Disclosure Of The Requested Information.**

PSC seeks production of contact information for persons who requested or lived in the more than 140,000 EHUs issued by FEMA in response to Hurricanes Katrina and Rita. The Court should deny PSC's Motion because those records are protected from such production by the Privacy Act, which provides, in pertinent part, that the United States shall not "disclose any record which is contained in a system of records by any means of communication to any person, or to another agency," except by written consent of that person. 5 U.S.C. § 522a(b). The

5

Privacy Act reflects Congress' awareness of the need to protect information contained in government record-keeping "systems," and to prevent its disclosure without the consent of the person(s) to whom the information pertains.  *See* Introductory Remarks of Senator Sam. J. Ervin, Jr., on S. 3418, 93rd Cong., 2d Sess. (May 1, 1974), 120 Cong. Rec. S6741, *reprinted in* LEGISLATIVE HISTORY OF THE PRIVACY ACT OF 1974, at 3-8 (1976).

The Privacy Act reduced the "threats the computer poses to privacy" by restricting both the collection and dissemination of personal information.  *Id.* at 6-8.  The collection of information by an agency was to be restricted to information necessary to "accomplish [its] proper purpose," while the dissemination thereof was to be restricted to only those agency employees with a need for the information, except pursuant to a written waiver of the person whose records were at issue.  *Id.*  Initially, the Privacy Act called for "the removal of any name and address from a mailing list upon the written request of the individual," *id.*, and the Privacy Act currently provides, in pertinent part, "[a]n individual's name and address may not be sold or rented by an agency unless such action is specifically authorized by law."  5 U.S.C. § 552a(n). *See also United States Dep't of Defense v. FLRA*, 510 U.S. 487, 502-504 (1994) (Privacy Act prohibited government agency from disclosing to union representatives the home addresses of bargaining unit employees who had not yet joined the union).

FEMA requires disaster assistance applicants to disclose personal information, including names, addresses, and the identity of family members, to assist in making eligibility determinations and in providing assistance.  *See* Exh. 8, FEMA Form 90-69B, Declaration and Release.  Pursuant to the Privacy Act and FEMA's implementing regulations, FEMA is prohibited from disclosing that information unless such disclosure is necessary for its disaster

response mission. *See id.*; 44 C.F.R. § 206.110(j); 71 F.R. 38,408-38,409 (July 6, 2006). Neither FEMA's regulations, nor any provision of the Privacy Act, authorizes the relief PSC seeks simply because it may be convenient for the private parties, notwithstanding any protective measure that may be taken by the Court to minimize potential risks associated with the disclosure.

PSC has not provided FEMA with Privacy Act waivers signed by the persons whose records are sought. Nor could PSC do so, since such persons, who have filed neither administrative tort claims, nor lawsuits in this case, are not clients of PSC. In this respect, such persons resemble the bargaining unit employees in *United States Dep't of Defense*. *See* 510 U.S. at 489-490. At issue in that case were union representatives' demands for the home addresses of bargaining unit employees who had not yet joined the unions, in order to facilitate communication with those persons. *Id.* at 499-500. The Supreme Court ruled that the Privacy Act prohibited the disclosure of such information, even though the union representatives, by statute, represented the interests of the persons whose contact information they sought. *Id.* at 493. The Supreme Court explained that any exception to the Privacy Act that would authorize such disclosure "must be found within the Privacy Act itself." *Id.* at 498. Finding none, the Court denied the requested disclosure. *Id.* at 502.

PSC's assertion that the Court should pierce the Privacy Act in the instant case, is less persuasive than the arguments of the union representatives in *United States Dep't of Defense*. In that case, the representatives sought contact information for persons whom they in fact represented. 510 U.S. at 493. By contrast, PSC seeks the release of contact information for persons it does not currently represent, but whom it would like to represent in the future as part

of this litigation. *See* PSC Memorandum in Support of Motion to Compel Defendant United States/FEMA to Respond to Subpoena for Certain Information [Dkt. No. 119-2] ("PSC Memo.") at 9. PSC, and perhaps DLC, apparently believe this is a "good idea" because, if the Court grants the request, PSC may forego its demand for Rule 23 class action status. *See* PSC Memo. at 4-6; Joint Report No. 1 of Plaintiffs' and Defendants' Liaison Counsel ¶ 9 [Dkt. No. 89]; Joint Report No. 2 of Plaintiffs' and Defendants' Liaison Counsel ¶ VI [Dkt. No. 111].

The Privacy Act does not contain an exception permitting the release of private information for the convenience of the private parties, or for any informal agreement regarding class action status. *See United States Dep't of Defense*, 510 U.S. at 498-499 ("Congress could have enacted an exception to the Privacy Act's coverage for information 'necessary' for collective-bargaining purposes, but it did not do so."). Such release would be barred, even if the Court could guarantee the information would be used in the limited manner proposed by PSC, because the ultimate use of the information is not relevant to whether a Privacy Act exception applies. *See id.* In short, the Privacy Act prohibits FEMA from disclosing the records PSC seeks because there has been no waiver, and because disclosure for the purpose of notifying persons of a pending lawsuit is not a recognized exception under the Act.

**II.    The Privacy Act's "Court Order" Exception Is Not Applicable Because The Records Sought Are Not Relevant To Claims And Defenses At Issue In This Litigation.**

Contrary to PSC's assertion, the "Court Order" exception to the Privacy Act does not authorize the Court to compel production of the requested information. That exception provides that an agency may disclose certain records that are otherwise protected if the disclosure is ordered by a court of competent jurisdiction. 5 U.S.C. § 552a(b)(11); *Gilbreath v. Guadalupe Hosp. Found., Inc.*, 5 F.3d 785, 791 (5th Cir. 1993). For the exception to apply, the court must

first determine that the information sought is relevant to the claims and defenses at issue in a pending lawsuit. *See Laxalt v. McClatchy*, 809 F.2d 885, 888-889 (D.C. Cir. 1987) (Fed. R. Civ. P. 26 and 45 relevance standards govern discoverability under Court Order exception); *Snyder v. United States*, 2003 WL 21088123 (E.D. La. May 12, 2003) (Roby, J.) (same); *United States v. Luwisch*, 1998 WL 720657 (E.D. La. Oct 8, 1998) (Wilkinson, J) (same).

Courts have consistently followed this well-established rule and denied motions to compel production of protected Privacy Act records absent a showing that they are relevant to claims and defenses in the given lawsuit. For example, in *Snyder*, under the Privacy Act, this Court denied a motion to compel production of personnel records of *the alleged tortfeasor*, because they were not relevant to the specific claims in the suit. 2003 WL at *3. By contrast, PSC's argument in the instant case substantially weaker than that made in *Snyder*. PSC's Motion seeks contact information for the persons who occupied, or requested to be provided with, the more than 140,000 EHUs issued by FEMA in response to Hurricanes Katrina and Rita. PSC would like the Court to make the contact information available to an independent non-party entity who would inform these persons about the litigation and their opportunity to participate in it. Such records, by definition, do not pertain to claims or defenses at issue in this case, because they do not pertain to persons whose actions are at issue in this case. PSC implicitly concedes this point by describing the purpose for which the records are sought, which is not for use at trial, nor for any other discovery-related purpose, but simply for notification of non-parties regarding this litigation.[1]

---

[1] Likewise, in *Luwisch*, the court denied a motion to compel production of information that was protected by the Privacy Act because it was irrelevant to the litigation and unduly burdensome. 1998 WL at *2. The court reasoned that "the truly relevant information . . . may

9

Moreover, the nondisclosure of personal identifiers in the context of non-party discovery such as this has been widely recognized in the Fifth Circuit and other Circuits, *even in* the absence of a Privacy Act objection. For example, in analyzing a request for information under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), courts must undertake a balancing test with respect to records that are subject to privacy concerns. *See United States Dep't of Defense*, 510 U.S. at 494-495. That test is less onerous than the exacting standard of the Privacy Act, which does not call for balancing but simply prohibits disclosure unless a statutory exception applies. *Id.* Nevertheless, courts have consistently denied requests for the personal information of non-parties under such less prohibitive standards. *See Harbolt v. Dep't of State*, 616 F.2d 772 (5th Cir. 1980) (district court properly protected names and addresses of non-parties under FOIA); *Halloran v. Veteran's Admin.*, 874 F.2d 315, 324 (5th Cir. 1989) (under FOIA, district court properly allowed discovery with personal identifiers of non-party redacted).[2]

---

be a sub-set" of the records sought. *Id.* Likewise, in this case, the Court has applied 5 U.S.C. § 552a(b)(11) to effect a limited waiver of the Privacy Act for a sub-set of the records sought, namely, records relating to "the represented Plaintiffs" in the litigation, further demonstrating the applicability of this well-established rule to this case. Order, March 4, 2008 [Dkt. No. 104].

[2] The case cited by PSC in this regard is distinguishable in a number of respects. *See* PSC Memo. at 17-18, *citing Sun-Sentinel Co. v. U.S. Dep't of Homeland Sec.*, 431 F.2d 1258 (S.D. Fl. 2006), *aff'd sub nom.*, *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173 (11th Cir. 2007). *First*, that case concerned disclosure pursuant to FOIA, 5 U.S.C. § 552(b)(6), which, as noted *supra*, is more permissive than the Privacy Act with respect to the disclosure of personal information. *Second*, the records sought in that case, *i.e.*, the names and addresses of certain recipients of FEMA-provided assistance, were alleged, and found, to have an independent relevance to the purpose of the request. 489 F.3d at 1192-1193. Specifically, the plaintiff news agency sought to superimpose a map of certain hurricanes' paths of destruction over the addresses it sought, for purposes of investigating whether aid was fairly distributed to households in different geographic areas. *Id.* Ultimately, the court ordered the disclosure of the addresses for this purpose, but not of the names, citing concerns regarding "solicitors," and holding such disclosure would "constitute a clearly unwarranted invasion of personal privacy." *Id.* at 1205, 1207.

In this case, PSC has not demonstrated, nor even alleged, that the materials sought in its Motion are relevant to *this litigation*. Rather, PSC claims the contact information it seeks may relate to other, future suits because it will inform the FEMA disaster assistance recipients of the litigation and of their opportunity to participate therein. PSC Memo. at 9. Therefore, the Motion should be denied because the relief it seeks is not authorized under the Court Order exception to the Privacy Act, 5 U.S.C. § 552a(b)(11).

### III.    PSC's Attempt To Utilize A Court-Appointed Notice Administrator Does Not Convert The Discovery It Seeks Into Information Relevant To The Litigation.

At some point, PSC will need to decide whether or not it will pursue class certification. *See* Joint Report No. 1 ¶ 9 ("it may be appropriate initially, if not throughout this litigation, to handle the claims of plaintiff [sic.] on a mass joinder basis, as opposed to a class action certified under Rule 23."); Master Compl. ¶ 6 ("All plaintiffs . . . seek the certification of a class action"). To date, PSC apparently has not decided which method of prosecution to pursue. *See* PSC Mot. at 3-9. Meanwhile, PSC seeks the admittedly "unprecedented" relief called for in its Motion – for the Court to notify to putative class members in the absence of class certification – because going through the typical channels of class certification is "time-consuming." PSC Memo. at 5, 12. For the following reasons, PSC's request should be denied.

Significantly, the notice provisions of Rule 23 ("Class Actions") follow its certification provisions, which require the Court to make a class certification determination at "an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Thus, courts approve notice, if at all, only after the determination to certify a class. *See* ARTHUR MILLER, PROBLEMS OF GIVING NOTICE IN

CLASS ACTIONS, 58 F.R.D. 299, 317 (1973).  Otherwise, there would be no way to ascertain *which* persons should be notified of the suit.  *See Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1303 (4th Cir. 1978).  If a class is not certified, that decision frequently results from a judicial determination that the claims and defenses at issue in the cases are not sufficiently related as to warrant class certification.  *See* HERBERT NEWBERG, ET AL., NEWBERG ON CLASS ACTIONS § 17.2 (4th ed. 2002) ("A mass accident resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways.") (internal citation omitted).

       This point underscores the fact that class certification, and subsequent notice, are grounded in relevance determinations such as that described *supra*, at 8-11.  The Court's informed oversight in this regard is important because "[p]rocedures to aggregate claims sometimes encourage the filing of questionable claims, accelerate the rate at which claims are presented, or even create a mass tort out of what otherwise might simply have been a flurry of similar cases that would have quickly faded away."  MANUAL FOR COMPLEX LITIGATION § 22.1 at 347 (internal citation omitted); *accord* NEWBERG ON CLASS ACTIONS § 17.2 n.19 (even after a class is certified, there is a risk of "an unseemly rush to bring the first case and provide, through notice to all injured persons, a kind of legalized ambulance chasing.") (internal citation omitted).

**IV.**    **PSC Has Not Identified A Basis In The Law Or Facts Of This Case For Such Notice.**

       It appears that, apart from arguing that the discovery PSC seeks is relevant to claims and defenses at issue in this litigation, PSC argues that the notice it seeks is somehow authorized by the Federal Rules of Civil Procedure or other authority.  For the following reasons, any such

argument must be rejected by the Court.

### A. PSC's Motion Contravenes The Text And Purpose Of Fed. R. Civ. P. 23 With Respect To Notice To Absent Class Members.

Because absent members of a certified class are presumptively included in and bound by the lawsuit and any settlement, notice may be required in order to give them the opportunity to opt-out of the lawsuit or settlement, object to the representation, or take other action to protect their rights. Fed. R. Civ. P. 23(c), (e); Advisory Committee Notes at 128-129; NEWBERG ON CLASS ACTIONS § 8.1. Thus, if PSC pursues class certification under Rule 23, and such certification is granted, then the questions of whether and when to provide notice to absent class members, and of the manner and timing of any such notice, may properly be before the Court at that time. Fed. R. Civ. P. 23(c) ("Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.").

By contrast, PSC now desires to provide notice to putative class members, in order to give them the opportunity to opt-*into* the suit and thereby allow PSC to forego its demand for class action status. PSC Memo. at 9. Therefore, any reliance by PSC on Rule 23 is misplaced because PSC's reason for seeking notice in this case is inconsistent with the text and purpose of Rule 23. *See id.* at 10-15.

The authorities PSC cites on this issue do not support its assertion that Rule 23 authorizes the relief it seeks. For example, PSC's reliance on *Shelton v. Pargo, Inc.*, 582 F.2d 1298 at 1309, is inapposite. *See* PSC Memo. at 11. In *Shelton*, the class representative had negotiated a settlement prior to a certification determination. 582 F.2d at 1301. The narrow issue in that case was whether the court was required to issue notice of the proposed settlement to putative class members, pursuant to Rule 23(e) ("Settlement, Voluntary Dismissal, or Compromise"), which

13

had been interpreted by some courts, at that time, to require such notice. *Id.* at 1302. In other words, the issue was whether to treat the case as though it were a class action for purposes of settlement, whether or not a class was actually certified. *Id.* at 1308. The *Shelton* court held that such notice may be proper, if the settlement would harm putative class members, under due process and the class representative's fiduciary duties to them. *Id.* at 1309.

Courts have consistently held that this issue should only be reached if such settlement and dismissal "directly affect adversely the rights of individuals not before the court." *See Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978), *aff'd*, 932 F.2d 965 (5th Cir. 1991), *cert. denied*, 502 U.S. 861 (1991). In the instant case, the Court should not reach this issue because there is no such settlement pending. Assuming there were, the Court would first need to find that absent persons' rights were implicated in the settlement before considering whether to treat the case as a class action for settlement purposes. If so, then all putative class members would presumptively be bound by the settlement unless they opt-out. By contrast, PSC seeks a procedure for persons who have not filed administrative claims or lawsuits, or sought counsel, to opt-*into* this suit. This distinction belies PSC's reliance on the issue raised in *Shelton*.[3]

The "discretion" PSC points to in this regard, *see* PSC Memo. at 12, actually refers to a court's discretion to issue the notice described above – to unidentified putative class members

---

[3] In any event, Rule 23(e) was amended in 2003 to resolve the ambiguity addressed in cases such as *Shelton* as to whether, in the absence of a class determination, notice of a proposed settlement must be issued. Former Rule 23(e) referred to the "'dismissal or compromise of 'a *class action*.' That language could be – and at times was – read to *require* court approval of settlements with putative class representatives that resolved only individual claims." By contrast, the new Rule 23(e) "requires approval only if the claims, issues, or defenses of a *certified class* are resolved by a settlement, voluntary dismissal, or compromise." Rule 23(e) Advisory Committee Notes at 131 (emphasis added) (internal citation omitted).

14

whose substantive rights are affected by a pending settlement – versus being required to hold the case in abeyance pending class certification.  582 F.2d 1298 at 1309.  It in no way refers to the "discretion" or "power" PSC would like this Court to exercise, *i.e.*, to issue notice to putative class members in the absence of any certification determination or pending settlement.

### B. The Other Authorities Cited By PSC Do Not Authorize The Relief Sought Because They Refer To Notice After Class Certification.

PSC's argument that Rule 23(d)(2) "suggests" pre-certification notice is authorized is misplaced.  PSC Memo. at 10-11.  That section provides, "[a]n order under Rule 23(d)(1) may be altered or amended . . . and may be combined with an order under Rule 16 ["Pretrial Conferences; Scheduling; Management]."  Rule 23(d)(1), in turn, provides that in "conducting an action *under this rule*," the court may issue orders relating to case management or the protection of absent class members (emphasis added).  The authority to issue case management orders in class actions under Rules 23 and 16, therefore does not state or imply authority for the relief sought here, where no class has been certified and therefore no class action is pending.

Nor does the secondary authority cited by PSC.  *See* PSC Memo. at 10-11, 15.  The fact that "Rule 23(d)(2) serves as a catch-all provision *in the class action rule*, codifying the inherent judicial power to give notice *to class members*" does not by its terms or by implication relate to any pre-certification proceedings.  *See* NEWBERG ON CLASS ACTIONS § 8:15, at 206-207 (emphasis added).  Likewise, PSC's reference to "'nonparty,' putative class members," *see* PSC Memo. at 15, actually refers to persons who *are* class members but who are unnamed in a given case.  PROBLEMS OF GIVING NOTICE IN CLASS ACTIONS, 58 F.R.D. 299 at 325.  In short, PSC's authority does not support its request for this Court to depart from the well-established rule that notice should not be issued under Rule 23 in the absence of class certification.

15

### C. PSC's Request Has No Basis In Fact Because This Lawsuit Is Well-Publicized And Has Gained Extensive Participation From New Plaintiffs In Recent Months.

PSC would like to obtain the list of persons who requested units from FEMA, in order to provide them with notice of the lawsuit and the opportunity to participate therein. PSC Memo. at 5-9. PSC apparently is concerned that interested individuals may not otherwise know of that opportunity. *Id.* As demonstrated below, PSC's concerns in this regard are unfounded.

As an initial matter, FEMA has provided actual notice to disaster assistance recipients in EHUs regarding formaldehyde-related issues.[4] *See*, *e.g.*, PSC Mot. Exh. IIIa. Therefore, all residents presumably know of any formaldehyde-related concerns with respect to their units. Moreover, as of November 2007, a FEMA call-center dedicated to responding to formaldehyde-related concerns, had received calls from 4,609 households regarding formaldehyde. *See* Exh. 9, FEMA, MYTHS & FACTS: TRAVEL TRAILERS, dated November 8, 2007. A smaller number of occupants requested to be, and were, moved into alternate housing, and many callers did not decide whether or not to move. *Id.*

With respect to this litigation, the facts clearly show that PSC has no need to obtain the list it seeks. As of February 1, 2008, there were 18 cases in this litigation consisting of claims by several hundred plaintiffs. *See* Joint Report No. 1 ¶ 1. By February 29, 2008, the litigation included claims of over 20,000 plaintiffs, and implicated approximately 8,000 units. *See*

---

[4] Notably absent from PSC's pleadings is a stated desire to assist these persons in obtaining long-term housing. On the contrary, PSC complains that FEMA is contacting them. PSC Memo. at 13-14. It is difficult to understand how that complaint relates to this Motion. Nevertheless, the United States notes that FEMA must communicate with disaster assistance recipients in order to carry out its congressionally-mandated mission of providing them with appropriate assistance under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5206.

Transcript of Motion Proceedings, February 29, 2008 at 5. Thus, in one month, PSC was able to obtain more clients for this litigation than the total number of formaldehyde-related concerns FEMA had received. Moreover, PSC concedes that this litigation is extensively publicized. PLC Memo. at 13 n.6. Thus, PSCs' own pleading and actions belie its claim that, in the absence of the notice it seeks, potential plaintiffs will not know of the pendency of the litigation and of their opportunity to participate therein.

**V.    PSC's Motion Seeks Relief That Is Unduly Burdensome Because It Is Overbroad And Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence.**

PSC's Motion should be denied because it presents an undue burden on FEMA. *See* Fed. R. Civ. P. 45(c)(3). The Fifth Circuit analyzes the following five factors to determine whether a subpoena *deuces tecum* presents an undue burden: "1) the relevance of the information requested; 2) the need of the party for the documents; 3) the breadth of the document request; 4) the time period covered by the request; 5) the particularity with which the party describes the requested documents; and 6) the burden imposed" (including the expense and inconvenience) upon the non-party. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818, 820-822 (5th Cir. 2004). For the following reasons, this subpoena fails under this analysis. As discussed *supra* at 8-11, the information sought by PSC is unquestionably irrelevant to the litigation. Moreover, PSC's need for such information is nonexistent in this case because the information, by definition, does not relate to this case, but to other, hypothetical, future cases. To the extent a sub-set of this information may be relevant to this litigation, *i.e.*, information regarding named plaintiffs, that is easily obtainable from the plaintiffs themselves, who are represented by PSC. Moreover, the United States has already produced discovery with respect to such a sub-set, *i.e.*,

17

thousands of named plaintiffs, in this case. *See* Exh. 7.

Further, the request is overbroad in that it does not seek personal identifiers for just plaintiffs, or even for all persons who resided in FEMA-issued units, but for all persons "who *requested* to be provided with a trailer." PSC Mot. at 1 (emphasis added). Since by definition this request applies to persons who *did not reside in trailers*, it encompasses persons who could not possibly bring a claim that would arise from alleged injuries sustained while residing in FEMA-issued trailers or units. The terms of the request only underscore the fact that it is not designed to discover relevant information. *See* Fed. R. Civ. P. 26(b)(1). Therefore, the Court should follow the well-established rule of this Circuit and deny PSC's Motion as unduly burdensome. *See*, *e.g.*, *Wiwa*, 392 F.3d at 818, 820-822 (noting "[a] court may find that a subpoena presents an undue burden when the subpoena is facially overbroad"); *Buford v. Howe*, 10 F.3d 1184, 1187, 1189 (5th Cir. 1994) (district court properly quashed subpoena of medical records that were privileged and that could be obtained by other, "less obtrusive" means, *even though* the personal identifiers were deleted); *see also Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 376-377 (5th Cir. 2004) (district court properly quashed subpoena for testimony that was unduly burdensome and obtainable by other means).

## CONCLUSION

For the foregoing reasons, this Court should deny PSC's Motion with prejudice and award the United States its full costs incurred in opposing the Motion, pursuant to Fed. R. Civ. P. 37(a)(5)(B).

Dated: April 10, 2008　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　JEFFREY S. BUCHOLZ
　　　　　　　　　　　　　　　　　　　　　　Acting Assistant Attorney General, Civil Division

　　　　　　　　　　　　　　　　　　　　　　C. FREDERICK BECKNER, III
　　　　　　　　　　　　　　　　　　　　　　Deputy Assistant Attorney General, Civil Division

　　　　　　　　　　　　　　　　　　　　　　J. PATRICK GLYNN
　　　　　　　　　　　　　　　　　　　　　　Director, Torts Branch, Civil Division

　　　　　　　　　　　　　　　　　　　　　　HENRY T. MILLER
　　　　　　　　　　　　　　　　　　　　　　Senior Trial Counsel

　　　　　　　　　　　　　　　　　　　　　　_____//S//_____
　　　　　　　　　　　　　　　　　　　　　　MICHELLE G. BOYLE (Va. Bar. No. 73710)
　　　　　　　　　　　　　　　　　　　　　　Trial Attorney
　　　　　　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　　　　　　Civil Division – Torts Branch
　　　　　　　　　　　　　　　　　　　　　　P.O. Box 340, Ben Franklin Station
　　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20004
　　　　　　　　　　　　　　　　　　　　　　Telephone No: (202) 616-4447
　　　　　　　　　　　　　　　　　　　　　　E-mail: Michelle.Boyle@usdoj.gov

　　　　　　　　　　　　　　　　　　　　　　Attorneys for the United States of America

OF COUNSEL:

JORDAN FRIED
Associate Chief Counsel
JANICE WILLIAMS-JONES
Trial Attorney
Office of Chief Counsel
FEMA DHS
500 C Street, SW
Washington, D.C. 20472

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2008, the foregoing Memorandum, and accompanying Exhibits 1-9 to said document, were filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

                                                                                                                                 //S//_____
                                                                                                       Michelle G. Boyle (Va. Bar No. 73710)