UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-4"<br>JUDGE ENGELHARDT<br>MAG. JUDGE ROBY |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DEFENDANT UNITED STATES OF AMERICA'S EXHIBITS
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FTCA AND
CONTRACT CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION

U.S. EXHIBIT NO. 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: FEMA TRAILER            *       CIVIL ACTION 2:07-MD-1873
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION           *
                                       JUDGE ENGLEHARDT –DIV. N
                               *
                                       MAGISTRATE ROBY – MAG. 4

*************************************************************************

## DECLARATION OF STEPHEN C. MILLER

I, Stephen C. Miller state and declare as follows:

1. I am employed by the Federal Emergency Management Agency (FEMA), a component agency of the Department of Homeland Security (DHS), as a Contracting Officer Technical Representative. During the response to hurricanes Katrina and Rita I served as the Inventory Supervisor, FEMA HQ Logistics Emergency Housing Unit. As the Inventory Supervisor I was responsible for directing the movement of all temporary Emergency Housing Units (EHUs) from the original point of procurement to the physical site where the units would be received by FEMA. In addition, I was also responsible for the transfer of EHUs between storage facilities throughout the impacted area. Further, I was responsible for ensuring that facilities were notified when EHUs would be delivered to their site and in my position as Inventory Supervisor I am familiar with the receiving and inspection process that took place at these facilities upon receipt of a new EHU from a vendor and/or manufacturer, and issuance of an EHU to an installation contractor.

2. Soon after Hurricane Katrina struck, the decision was made to identify and purchase EHUs as quickly as possible and on an unprecedented scale for purposes of providing emergency temporary housing assistance to Hurricane Katrina disaster victims. For purposes of

1

receiving new EHUs from vendor and/or contractors and processing and issuing the EHUs to disaster victims, FEMA set up storage sites in the Gulf Coast region.

3. I am familiar with the document assigned identification numbers FEMA09-00073 to FEMA09-00074 that is Exhibit A to this declaration. This two-page document is a FEMA Standard Form 90-13, Temporary Housing Unit Inspection Report. FEMA Standard Form 90-13 outlines and provides guidelines that FEMA representatives used to inspect EHUs to determine and ascertain (i) whether or not to accept or reject new EHUs delivered by vendors and/or manufacturers to storage sites, (ii) whether or not to accept or reject refurbished EHUs; (iii) the condition of EHU issued to a FEMA contractor that installed the unit for disaster victims, and (iv) the condition of the unit after the disaster victim vacated the unit.

4. Vendors and/or contractors delivered new EHUs to the storage sites in the Gulf Coast region. Prior to taking possession, custody, and ownership, a FEMA representative conducted a walk through inspection of the EHU. Consistent with Standard Form 90-13, Temporary Housing Inspection Report, the FEMA representative inspected the EHU to ensure that the unit was new, contained contracted for amenities, i.e., basic appliances, furniture, and that it had not been damaged in transit. In the event a unit failed this inspection, FEMA required the vendor and/or manufacturer to make the necessary repairs and/or modifications prior to its acceptance of the unit. There are no FEMA rules or regulations that I am aware of that required FEMA to test EHUs to determine indoor ambient residential formaldehyde levels, either as a condition for acceptance of new EHUs from a vendor and/or manufacturer, or as a requirement prior to issuing a unit to an installation contractor for purposes of installing the unit for a disaster victim. FEMA relied upon the vendor and manufacturer, and their expertise with construction and manufacture of EHUs, to provide EHUs that were safe and habitable, and FEMA did not

inspect or test units to determine whether or not they had hidden problems or defects such as formaldehyde. Moreover, even if FEMA had wanted to inspect or test for formaldehyde the representatives responsible for inspecting units had neither the expertise nor ability to conduct such tests. To the extent the vendor or manufacture included any notice or documents with a unit, including any materials relating to formaldehyde, any such materials would have been provided to the installation contractor to when they took possession of the unit from FEMA.

5.  FEMA also maintained at various times between three (3) and five (5) Contract Officer Technical Inspectors (TI) on site at the Gulf Stream Coach, Inc. (Gulf Stream), manufacturing facility in Indiana. The primary responsibility of these TIs was to facilitate transportation of trailers from the Gulf Stream facility to the Gulf Coast region and to monitor production schedule. In addition to these duties, the TIs also inspected approximately one out of every five EHUs that came off the Gulf Stream production line. The TIs, consistent with Standard Form 90-13, Temporary Housing Inspection Report, Inspection Report, conducted a walk through inspection to ensure that the units contained contracted for amenities, i.e., basic appliances, furniture, and that the had not been physically damaged during their production. In the event that a unit was rejected, FEMA requested that the necessary repairs and/or modifications be made prior to shipping the unit to a staging site. The TIs relied upon the vendor and manufacturer and their expertise with construction and manufacture of EHUs, to ensure that the units FEMA received were safe and habitable units and did not inspect, nor did they have the ability to inspect, to determine whether or not the units had hidden problems.

6.  Upon acceptance of a new EHU at a storage site, the unit remained at the storage site until issued to an installation contractor for delivery to a disaster victim. Consistent with Standard Form 90-13, Temporary Housing Inspection Report, Inspection Report, a walk through

3

inspection was conducted prior to issuing a unit to the installation contractor to document the condition of the unit when it left FEMA's possession, custody and control.

7.  Upon a unit being vacated by a disaster victim, the unit was again inspected. This inspection, consistent with Standard For 90-13, Temporary Housing Inspection Report, Inspection Report, consisted of a walk through inspection to determine the condition of the unit upon its return to FEMA.

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 14th day of May 2008

*[signature]*
STEPHEN C. MILLER
Contract Officer Technical Representative
Gulf Coast Recovery Office
DHS / FEMA

# DEPARTMENT OF HOMELAND SECURITY
## FEDERAL EMERGENCY MANAGEMENT AGENCY
### TEMPORARY HOUSING UNIT INSPECTION REPORT

1. Temporary Housing Unit No.
2. Serial No./Vin

### 3. TYPE OF INSPECTION

| | Transport | Dispatch | Receipt |
|---|---|---|---|
| Storage | ☐ | ☐ | |
| Staging | ☐ | ☐ | |
| Site | ☐ | ☐ | |
| RFO | | | ☐ |
| Move In | | | ☐ |
| Move Out | | | ☐ |

### 4. TYPE OF FACILITY

- ☐ Other
- ☐ Mobile Home
- ☐ Travel Trailer

### 5. APPLIANCES

| Type | Manufacturer | Model | Serial No. |
|---|---|---|---|
| Furnace | | | |
| Range | | | |
| Microwave | | | |
| Refrigerator | | | |
| A/C | | | |
| Water Heater | | | |

### 6. UNIT INFO

a. Manufacturer
b. Year
c. Size (Ft., -inc towing hitch)
d. Number of Bedrooms

### 7. INSPECTIONS
☐ Disaster   ☐ Storage

### 8. CONDITION OF FURNISHINGS, INTERIOR & EXTERIOR
N = NEW  G = GOOD  P = POOR  D = DAMAGED  M = MISSING

Handicap  ☐ Yes  ☐ No

| FURNISHINGS | STO | DIS | REC | FURNISHINGS | STO | DIS | REC | FURNISHINGS | STO | DIS | REC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kitchen & Dining | | Condition | | First Bedroom | | Condition | | Bathroom | | Condition | |
| Dinette Table | | | | Double Bed, Complete | | | | Commode | | | |
| Dinette Chairs (6 for 3 BR) | | | | Mirror | | | | Tub/Shower | | | |
| Range | | | | Cabinets Storage | | | | Lavatory | | | |
| Range Hood & Vent Fan | | | | Curtains & Rods | | | | Cosmetic Cabinet | | | |
| Refrigerator | | | | Light Fixtures | | | | Mirror | | | |
| Curtains & Rods | | | | Second Bedroom | | | | Curtains & Rods | | | |
| Cabinets | | | | Double Bed, Complete | | | | Light Fixtures | | | |
| Sink | | | | Mirror | | | | Exterior Condition | | | |
| Light Fixtures | | | | Cabinet Storage | | | | Water Heater | | | |
| Fire Extinguster | | | | Curtains & Rod | | | | Doors | | | |
| A/C   Living Room | | | | Light Fixtures | | | | 2 Key Per Door | | | |
| Couch | | | | Third Bedroom | | | | Windows | | | |
| Arm Chair | | | | Double Bed, Complete | | | | Screens | | | |
| End Table | | | | Mirror | | | | Front Panels | | | |
| Coffe Table | | | | Cabinet Storage | | | | Left Side Panels | | | |
| Curtains & Rods | | | | Curtains & Rod | | | | Rear Panels | | | |
| Light Fixtures | | | | Light Fixtures | | | | Right Side Panels | | | |
| Hall | | | | Interior Condition | | | | Roof Vents | | | |
| Furnace | | | | Floor Covering | | | | Towing Hitch | | | |
| Smoke Detector | | | | Wall Panels | | | | Axels & Springs | | | |
| Light Fixtures | | | | Ceiling Panels | | | | Wheels & Tires | | | |

9. MARK LOCATION OF EXTERIOR DAMAGE ON DIAGRAM BELOW:

RIGHT SIDE      LEFT SIDE      FRONT      REAR

NOTE: Tail light harness furnished by:  ☐ Towing Contractor

10. COMMENTS (If more space is needed, concinue on reverse)

| 11. READY FOR OCCUPANCY | CONTRACT W. O. No. | INSPECTOR SIGNATURE | DATE |
|---|---|---|---|
| 12. OCCUPANT NAME | | ADDRESS | THA No. |

13. REPRESENTATIVES ACKNOWLEDGEING CONDITIONS ABOVE:

| NAME (Contractor) | SIGNATURE AND DATE (Contractor) | SIGNATURE AND DATE (FEMA Rep.) |
|---|---|---|
| Dispatch To/Form Storage | | |
| Receipt To/From Storage | | |
| Dispatch To/From Site | | |
| Occupant SIGNATURE (Move In or Out)   DATE | FEMA REP. SIGNATURE | DATE |

FEMA Form 90-13, JUL 05

FEMA09-000073

## GENERAL INFORMATION

**PURPOSE:** The Temporary Housing Unit Inspection Report is utilized to document the condition of the mobile home and contents during each transaction that occuars for temporary housing.

| TRANSACTION | RESPONSIBILITY | APPLICABLE ITEMS | DISTRIBUTION |
|---|---|---|---|
| 1. Transport From Storage to DFO<br>a. Dispatch from Storage<br>b. Receipt at DFO Staging<br>(a. & b. Inspection done utilizing same form) | a. Storage Dispatch Rep<br>b. Staging Receiving Inspector | a. 3 (Check Storage Dispatch) 1-2, 4-10, 13 (Dispatch To/From Storage blocks)<br>b. 3 (Check Staging Receipt) 8-10, 13 (Receipts To/From Storage blocks). | a. Copy 3 - Storage MH File<br>b. Original, Copy 1 Staging File<br>c. Copy 2 - Towing Contractor |
| 2. Transport From Staging to Site<br>a. Dispatch from Staging<br>b. Receipt at Site (a. & b. Inspection done utilizing same form) | a. Staging Controls<br>b. Installation Inspector | a. Utilizing Original and Copy 1 from Tranasaction 1, Item 3 (Check Staging/Dispatch) 13 (Dispatch to Site Blocks)<br>b. Verify condition in items 8 & 9 | a. Original - Staging File, Copy 1 - Set up Contractor's Transporter<br>b. None |
| 3. RFO (Ready for Occupancy) | Installation Inspector | 3. (Check RFO), 1, 7, 4, 10-12. | Original, Copy 1 & 2, held by Inspector, machine copy for Computer entry. |
| 4. Move - in | Installation Inspector | Utilizing Original and copies from Transaction 3, Item 3 (Check Move - In) 2, 5, 6, 8-10, 12, 13 (Occupant Move In Blocks) | Original - Occupant Files at JFO, Copy 1- Occupan. Copy 2 - Computer entry. |
| 5. Move - Out | Installation Inspector | Utilizing Original and copies from Transaction 4, as comparison: 3 (Check Move - Out), 1, 5, 6, 7, 8-10 12, 13 (Occupant Move Out Blocks) | Original - Occupant Files at JFO,<br>Copy 1- Occupant<br>Copy 2- Storage,<br>Copy 3 - Computer entry. |
| 6. Transport From Site to Staging<br>a. Dispatch From Site<br>b. Receipt at Staging ( a. & b. Inspections done utilizing same form) | a. MHOPs Deactivation Inspector<br>b. Staging Inspector | a. 3 (Check Site/Dispatch) 1, 5, 6, 7, 8-10. 13 (Dispatch From Site),<br>b. 3 *\(Check Site Receipt), 8-10. | a. Original - Copy 1 & 2 - Staging File Copy 3 - Contractor's Transporter.<br>b. None |
| 7. Transport From Staging to Storage<br>a. Dispatch From Staging<br>b. Receipt from Storage | a. Staging Controls<br>b. Storage Receiving Inspector | Utilizing Original and copies from Transaction 6, item 3 (Check Staging/Dispatch, 2, 6, 10, 13, (Dispatch to Storage).<br>b. 3 (Check Storage/Receipt, 8-10, 13 (Receipt to Storage) | a. Original - Copy 2 - Storage File<br>b. Original - Storage MH File<br>Copy 1 - Towing Contractor. |

### INSTRUCTIONS

6. **TEMPORARY HOUSING UNIT** - Indicate the mobile home manufacturer, year of manufacture, size (width and length - including towing hitch), and number of bedrooms.

7. **INSPECTING** - Indicate DFO or Storage which is conducting inspection.

8. **CONDITION OF FURNISHINGS** - Using the code indicated, mark condition. DIS column for Dispatch Inspection, REC column for Receipt Inspection.

9. **MARK LOCATION OF EXTERIOR DAMAGE** - Draw on the unit sketches of the location of any major exterior damage.

10. **COMMENTS** - Provide any additional information concerning problems, conditions or locaton of unit.

11. **READY FOR OCCUPANCY CERTIFICATION** - Inspector indicates Work Order Number from the FEMA Form 90-26, INSTALLATION WORK ORDER; Signs and dates block. Incomplete items on set up may be noted in item 10.

12. **OCCUPANT NAME, ADDRESS, THA NUMBER** - Indicate occupant, address of installation site and the registration number of the occupant.

**ALL OTHER ITEMS ARE SELF-EXPLANTORY**

COMMENTS: