**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | |
|---|---|
| IN RE: FEMA TRAILER                )<br>       FORMALDEHYDE PRODUCTS  )<br>       LIABILITY LITIGATION       )<br>                                 ) | **MDL NO. 1873**<br>**SECTION "N" (4)**<br><br>**JUDGE ENGELHARDT** |

**MANUFACTURING DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR**
**JOINT RULE 12(b)(6) MOTION TO DISMISS**

**MAY IT PLEASE THE COURT:**

American Homestar Corporation; Oak Creek Homes, L.P.; Oak Creek Homes, Inc.; Coachmen Recreational Vehicle Company, LLC; Coachmen Industries, Inc.; Recreation by Design, LLC; Jayco Enterprises, Inc.; Pilgrim International, Inc.; Starcraft RV, Inc.; Thor California, Inc.; Keystone RV Company; KZ RV, L.P.; Monaco Coach Corporation; R-Vision, Inc.; DS Corporation; Dutchmen Manufacturing, Inc.; Gulf Stream Coach, Inc.; Forest River, Inc.; Horton Homes, Inc.; Silver Creek Homes; TL Industries, Inc.; Frontier RV, Inc.; Skyline Corporation; Layton Homes Corporation; Fairmont Homes, Inc.; Fleetwood Canada, Ltd.; Fleetwood Homes of North Carolina, Inc.; Fleetwood Enterprises, Inc.; and any other Fleetwood subsidiary that may be deemed to be the real party in interest ("Manufacturing Defendants"), respectfully submit this Memorandum in Support of their Rule 12(b)(6) Motion to Dismiss. Plaintiffs' Administrative Master Complaint fails to state a claim upon which relief can be granted, and should be dismissed, in the following respects:

    (1)      Plaintiffs' claims sounding in Breach of Express Warranty for Property Damage and Personal Injury fail under Alabama, Mississippi, Texas, and Louisiana law;

    (2)      Plaintiffs' claims sounding in Breach of Implied Warranty of Merchantability for Property Damage fail under Alabama, Mississippi, and Texas law;

(3)     Plaintiffs' claims sounding in Breach of Implied Warranty for Fitness for a
         Particular Purpose for Property Damage and Personal Injury fail under Alabama,
         Mississippi, and Texas law;

(4)     Plaintiffs' claims are barred by the Economic Loss Doctrine under Alabama,
         Mississippi, Texas, and Louisiana law;

(5)     Plaintiffs' claims for Medical Monitoring are precluded by Alabama, Mississippi,
         Texas, and Louisiana law;

(6)     Plaintiffs fail to state a claim because they do not connect any particular Plaintiff
         to any particular Manufacturing Defendant's product (alternatively,
         Manufacturing Defendants move that the Court order Plaintiffs to amend their
         pleadings under Rule 12(e)); and

(7)     Plaintiffs fail to state a claim because they lack standing.

## STATEMENT OF FACTS

As this Court is well aware, on October 24, 2007, several related suits were transferred to
this Court by the Judicial Panel on Multi District Litigation.  These cases were all filed in the
aftermath of Hurricanes Katrina and Rita by and on behalf of individuals in Louisiana,
Mississippi, Alabama, and Texas who claim: (1) to have resided in manufactured travel trailers,
park models or mobile homes along the US Gulf Coast, and (2) to have been subjected to
exposure to unlawful and harmful levels of formaldehyde while residing in FEMA Housing.  *See*
Admin.  Master Compl. ¶¶ 17, 32.  On November 6, 2007, this Court entered its Pretrial Order
No. 1, which consolidated these actions under the style "In Re: FEMA FORMALDEHYDE
PRODUCTS LIABILITY LITIGATION" and the identification "MDL No. 1873."  Pursuant to
the Court's Pretrial Order No. 2, Plaintiffs filed an Administrative Master Complaint on March
18, 2008.

The Manufacturing Defendants consist of various manufacturers who allegedly sold
manufactured housing or travel trailers ("Subject Units") to FEMA, either directly or through
government contractors who then sold the Subject Units to FEMA.  FEMA provided the Subject

Units to various individuals who had been displaced by Hurricanes Katrina and Rita, including Plaintiffs.  *See* Admin. Master Compl.  ¶ 17.  At all times, the Federal Government, through FEMA, directly provided Plaintiffs with the temporary housing.  *Id.* ¶ 22.  Dissatisfied with their temporary housing, Plaintiffs allege that the Subject Units contain formaldehyde emissions in violation of federal regulations.  *Id.* ¶¶ 29, 39.  Plaintiffs allege causes of action against Manufacturing Defendants under the state laws of Louisiana, Alabama, Mississippi, and Texas purportedly growing out of the alleged exposure to improper formaldehyde levels.  Plaintiffs' allegations include (1) negligence, (2) strict liability, (3) failure to warn, and (4) breach of express and implied warranty claims against Manufacturing Defendants .  *Id.* ¶¶ 132-204.

The jurisdictional basis of Plaintiffs' claims against Manufacturing Defendants is diversity of citizenship and the Class Action Fairness Act of 2005.  *Id.* ¶¶ 12, 13.  Plaintiffs seek injunctive relief as well as unspecified actual, consequential and punitive damages from all Defendants.  *Id.* at p.76.

In seeking relief, Plaintiffs allege that the formaldehyde levels "have" caused the Plaintiffs to suffer damages, but do not state what injuries the formaldehyde actually caused any of the named plaintiffs.  *Id.* ¶¶ 95, 153, 175.  In praying for compensatory damages, Plaintiffs provide only a generic list of types of past and *future* damages for which Plaintiffs claim the Defendants are jointly and/or individually responsible.  *Id.* at p.74.  Plaintiffs have further demanded "the reasonable costs of medical monitoring."  *Id.* at p.75.

## ARGUMENT AND CITATION OF AUTHORITY

**I.     Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) is designed "to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare

litigants the burdens of unnecessary pretrial and trial activity." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989), *superseded by statute on other grounds as stated in Brown v. Citicorp*, No. 97-C-6337, 1997 U.S. Dist. LEXIS 16496 (N.D. Ill. Oct. 16, 1997); *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Rule 12(b)(6) motions directly challenge the legal theory of the complaint, not the sufficiency of any evidence that might be adduced or presented. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

A Rule 12(b)(6) dismissal is appropriate where the alleged claim(s) fails to assert a legally cognizable theory as a matter of law <u>or</u> the claim(s) fail to allege sufficient facts to support a cognizable legal claim. *Smile Care Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996), *cert denied*, 519 U.S. 1028 (1996). "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A Rule 12(b)(6) dismissal is proper "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006).

Furthermore, the allegations in the pleading must *plausibly* suggest that the plaintiff is entitled to relief in order to meet "the threshold requirement of [Federal Rule of Civil Procedure] 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" *Twombly*, 127 S. Ct. at 1966 (granting defendants' 12(b)(6) motion for dismissal where plaintiffs' complaint, which cited lawful parallel conduct in support of its antitrust allegations, failed to present plausible grounds to infer an agreement in violation of § 1 of the Sherman Act). A complaint that "stops short of the line between possibility and plausibility of 'entitlement to

relief" is insufficient.  *Id.* at 1966.  Plaintiffs' legal claims suffer from various fatal deficiencies,

rendering Rule 12(b)(6) relief appropriate in this case.

## II.    Choice of Law

Although for purposes of this motion subject matter jurisdiction is not at issue, it

presumptively appears that this Court may exercise jurisdiction over the instant litigation based

on diversity of citizenship grounds and/or the Class Action Fairness Act of 2005.[1]  Accordingly,

as in other diversity cases, federal courts are obligated to apply the choice of law rules of the

forum state.  *Spence v. Glock*, 227 F.3d 308, 311 (5th Cir. 2000).  Thus, the choice of law rules

of Louisiana apply here.  Pursuant to their request for certification, Plaintiffs have brought claims

under the laws of four different states -- Louisiana, Alabama, Mississippi, and Texas -- with the

individual plaintiffs from each state making up that proposed subclass.[2]  Where Plaintiffs allege

that injuries have occurred in multiple states, courts applying Louisiana choice of law rules have

separately applied the laws of each state to the injuries that allegedly occurred in it.  *Brookshire*

*Bros. Holding, Inc. v. Total Containment, Inc*., No. 04-1150, 2006 U.S. Dist. LEXIS 69072

(W.D. La. Sept. 26, 2006) (in a product liability case, applying Texas law to those injuries that

occurred in Texas and Louisiana law to those injuries that occurred in Louisiana).  In the instant

matter, the laws of Louisiana, Alabama, Mississippi, and Texas will apply respectively to the

claims of the residents of each state.

---

[1]      As this Court is well aware the Class Action Fairness Act of 2005 expanded subject matter diversity jurisdiction in the class action context.  *See* P.L. No. 109-2, § 4, 119 Stat. 4, 9; *see also* 28 U.S.C. § 1332(d).

[2]      This Court will need to address the differences in state laws in analyzing whether class certification is appropriate.  *See In re Vioxx Prods. Liab. Litig*., 239 F.R.D. 450, 458 (E.D. La. 2006) (conducting choice of law analysis to determine which state's law applies in analyzing hurdles to certification).  As discussed in depth in other submissions to the Court, the Manufacturing Defendants are confident that class certification is inappropriate in this instance.

### III.  Plaintiffs Are Precluded From Recovering for Breach of Warranty as a Matter of Law.

Plaintiffs are seeking recovery for alleged personal injury and alleged economic loss as a result of a purported breach of warranty.  In articulating their causes of action for Mississippi and Alabama Plaintiffs, Plaintiffs include a provision that they are seeking all "general, special, incidental and consequential damages as shall be proven at time of trial[.]"  *See* Admin. Master Compl.  ¶¶ 155 (under Mississippi law), 177 (under Alabama law).  In articulating the compensatory damages sought by Plaintiffs in all four states, Plaintiffs include that same statement, then go on to articulate that they are also seeking:

> [F]or those who purchased housing units from FEMA, those certain plaintiffs are entitled to the return of the purchase price with interest from the time it was paid, the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the housing units, expenses incurred through mitigation of damages, attorneys' fees, and all damages allowed under [applicable Louisiana law regarding contracts, sales, and redhibition] including all damages occasioned by the Federal Government's failure to perform its contractual obligations and all other damages, whether foreseeable or not, that are a direct consequence of its failure to perform.

*See id.* at p.75.  Plaintiffs' claims for breach of warranty are precluded by Mississippi, Alabama, and Texas law regardless of whether Plaintiffs seek recovery for economic loss or for personal injury.

### A.  Mississippi: As a matter of law, Plaintiffs are precluded from recovery for any purported breach of any purported warranty, express or implied.

Plaintiffs cannot recover for any breach of warranty claim under Mississippi law.  While Plaintiffs only specifically articulate a cause of action for breach of *express* warranty under Mississippi law, see Admin. Master Compl. ¶ 151, to the extent the Administrative Master Complaint may be deemed to allege breach of implied warranties, these too are barred by applicable Mississippi law.  Plaintiffs cannot recover for any breach of warranty claim for

property damage because Plaintiffs are not "buyers" as required under Mississippi law.[3]

Furthermore, Mississippi law precludes recovery for breach of express warranty and implied

warranty for fitness in cases in which a plaintiff does not rely upon an affirmation or skill of the

defendant.  Plaintiffs have not alleged any such reliance.  Accordingly, Plaintiffs fail to state a

breach of warranty claim against Manufacturing Defendants under applicable Mississippi law.

> **1.      Claims for breach of warranty seeking property damage are barred because Plaintiffs lack standing.**

Plaintiffs lack standing to recovery for breach of warranty for property damage because

Plaintiffs are not "purchasers" or "buyers" as required under fundamental contract and warranty

principles.  The Uniform Commercial Code ("UCC"), as adopted by Mississippi, requires a

"buyer"[4] or "purchaser" and assumes a "contract for sale" and "sale"[5] for breach of warranty

claims.  *See generally*, Miss. Code Ann. §§ 75-2-101, *et seq.* (adopting nearly verbatim the

UCC).  For example, Section 303 of the UCC, as adopted in Mississippi, states that an express

warranty is an affirmation made by the seller to the "buyer."  Miss. Code Ann. § 75-2-313.[6]

Section 314 states that an implied warranty of merchantability is a warranty that goods are

---

[3]      Plaintiffs have pled that FEMA purchased the Subject Units from the Manufacturing Defendants.  *See* Admin. Master Compl. ¶¶ 24, 25, 29, 30, 31, 52.  Plaintiffs further allege that FEMA provided the Subject Units to certain plaintiffs subject to a "lease agreement and/or contract".  *See id.* ¶¶ 100-105.  To the extent certain Plaintiffs allege to have purchased a Subject Unit from FEMA or any Manufacturing Defendant, or any other entity, see, *e.g.*, Admin. Master Compl. ¶ 121 (alleging that the federal government sold certain Subject Units to certain unidentified plaintiffs), the warranty claims of those particular purchasing Plaintiffs may be barred for the reasons set forth *infra*.

[4]      Miss. Code Ann. § 75-2-103 defines a "buyer" as "a person who buys or contracts to buy goods."

[5]      Miss. Code Ann. § 75-2-106 states in relevant part that: a "'Contract for sale' includes both a present sale of goods and a contract to sell goods at a future time.  A 'sale' consists in the passing of title from the seller to the buyer for a price (Section 75-2-401)."

[6]      Miss. Code Ann. § 75-2-313 states in relevant part that an express warranty is: "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain…that the goods shall conform to the affirmation or promise."

merchantable as implied in a contract for "sale."  Miss. Code Ann. § 75-2-314.[7]  Section 315 provides that a party breaches an implied warranty where the seller has reason to know of any particular purpose that the goods are required, and that the "buyer" is relying on the seller's skill or judgment.  Miss. Code Ann. § 75-2-315.[8]

Thus, it is axiomatic -- indeed, it is ingrained in basic UCC warranty law -- that only a "buyer" may sue to recover economic damages for breach of warranty.  The UCC's definition of express and implied warranties is laden with references to the "buyer," the "bargain," and the "contract for sale."  *See* Miss. Code Ann. §§ 75-2-313, 314, and 315.  Only one who buys or contracts to buy the subject good may sue for breach of warranty.  *Id.; c.f. Hicks v. Thomas*, 516 So.2d 1344 (Miss. 1987).

From the definitions of "buyer," "sale," and "contract for sale," found in Mississippi's UCC, *see* footnotes 4 and 5 *supra*, it is clear that Plaintiffs who did not purchase their Subject Unit have no standing to sue for breach of warranty for property damage.  It is undisputed that many Plaintiffs did not purchase the subject homes from the Manufacturing Defendants.  As stated in the Administrative Master Complaint, "the United States of America, through FEMA, began *providing* temporary housing to plaintiffs . . . ."  Admin. Master Compl. ¶ 22 (emphasis added).  Plaintiffs' use of the word "providing" is fatal to their claim.  Plaintiffs further allege that the Subject Units were provided "subject to the terms of a lease agreement and/or contract."[9]

---

[7]     Miss. Code Ann. § 75-2-314 states in relevant part: "…a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

[8]     Miss. Code Ann. § 75-2-315 states in relevant part: "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish goods, there is … an implied warranty that the goods shall be fit for such purpose."

[9]     Plaintiffs do not allege, as indeed they cannot, that the units were provided subject to a contract *of sale*.

Admin. Master Compl. ¶ 100.  To the extent Plaintiffs did not purchase a Subject Unit, they are not "buyers" under Mississippi's UCC.

The proposition that a plaintiff cannot recover for property damage under theories of breach of warranty for property they have not bought is consistent with the well-settled legal principle that a party must have a property right in the allegedly damaged property in order to claim property damage.  Plaintiffs who did not purchase a Subject Unit do not have any recognizable property interest in the Subject Units.  Accordingly, Plaintiffs cannot recover for property damage under claims for breach of warranty.

2. **Mississippi Plaintiffs Cannot Recover for Breach of Express Warranty Because Manufacturing Defendants Did Not Make Any Affirmations Upon Which Plaintiffs Relied.**

Mississippi law dictates that an express warranty is only created by an affirmation, description, promise, or sample by the seller that becomes a basis for the bargain.[10]  Miss. Code Ann. § 75-2-313;[11] *Austin v. Will-Burt Co.*, 232 F. Supp. 2d 682, 687 (N.D. Miss. 2002).  Thus, an express warranty is not created unless the purchaser relies upon the seller's affirmation or promise.  *See id.*  Mississippi courts have consistently dismissed claims for breach of express warranty where the plaintiffs could not prove that they relied on the alleged express affirmation or promise when purchasing the subject product.  *See Austin v. Will-Burt Co.*, 232 F. Supp. 2d at

---

[10]    Plaintiffs do not allege that Manufacturing Defendants made an express affirmation regarding the Subject Units manufactured by Manufacturing Defendants.  Although Plaintiffs make the imprecise allegation that there were "express factual representations upon which the claimant justifiably relied," see Admin. Master Compl. ¶ 151, this bare recitation of the elements fails the plausibility standard for showing that a plaintiff is entitled to relief as laid out in *Twombly, supra.*

[11]    Miss. Code Ann. § 75-2-313 states in relevant part:
(1)   Express warranties by the seller are created as follows:
    (a)    Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
    (b)    Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
    (c)    Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

687 ("[a]n express warranty is any affirmation of fact or promise which concerns the product and becomes part of the basis for the purchase of such a product").  Again, Plaintiffs cannot recover for breach of an express warranty under Mississippi law because Manufacturing Defendants did not make, and Plaintiffs have not pled, any affirmations or promises upon which Plaintiffs relied in purportedly selecting their Subject Units.

> ### 3.   Mississippi Plaintiffs Cannot Recover for Breach of Warranty for Fitness Because Plaintiffs Do Not Allege that Manufacturing Defendants Were Aware That Plaintiffs Were Relying on the Manufacturing Defendants.

Similarly, Miss. Code Ann. § 75-2-315 states that an implied warranty exists only where "the buyer is *relying* on the seller's skill or judgment to select or furnish suitable goods[.]"  Miss Code Ann. § 75-2-315 (emphasis added).[12]  Under Mississippi law, the warranty of fitness for a particular purpose does not apply where a plaintiff does not have contact with the defendant when purchasing the product because under such circumstance the plaintiff could not have relied on the skill or knowledge of the defendant in picking the product.  *Albritton v. Coleman Co.*, 813 F. Supp. 450, 455 (S.D. Miss. 1992) (breach of an implied warranty of fitness arises when "the buyer in turn relies on the seller's skill and judgment in selecting the individual product"); *Austin v. Will-Burt Co.*, 232 F. Supp. 2d at 688.

In *Austin*, the plaintiffs' alleged breach of implied warranty of fitness after the plaintiff-decedent was electrocuted by the defendant's product.  *Austin v. Will-Burt Co.*, 232 F. Supp. 2d at 684-85.  The decedent was an employee of a TV station that utilized the defendant's telescoping mast for use on an electronic news-gathering van.  *Id.*  The defendant had sold the

---

[12]   Miss. Code Ann. § 75-2-315 states in pertinent part:
. . . where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose.

particular product to a third-party who had later sold the product to the decedent's employer.  *Id.*

The court held that plaintiffs were precluded from recovering for breach of implied warranty

"where plaintiffs did not purchase the product from the defendant as the plaintiffs never relied on

the skill or knowledge of the defendant's representative in picking the product, but rather,

purchased the product from a third-party."  *Id.* at 688.  Accordingly, the court held the decedent

could not have relied on the defendant in selecting the product and the plaintiffs were precluded

from recovery.  *Id.*  As previously noted, there is no allegation that any Plaintiff had any contact

with Manufacturing Defendants during the "conveyance" by FEMA of the Subject Units to

Plaintiffs.  Plaintiffs therefore could not have relied on the representations, skill, or knowledge of

Manufacturing Defendants.  Thus, Plaintiffs cannot recover for breach of implied warranty of

fitness under Mississippi law.

### B.      Alabama:  As a matter of law, Plaintiffs are precluded from recovery for any purported breach of any purported warranty.

Similarly, Plaintiffs cannot recover for breach of express or implied warranty under

Alabama law, *see* Admin. Master Compl. ¶¶ 161, 173 (pleading both types of breach of

warranty), for property damage because Plaintiffs are not "buyers" as defined and required under

Alabama law.  Furthermore, Plaintiffs cannot recover for breach of express or implied warranty

of fitness for either property damage or personal injury because Plaintiffs did not rely on any

express or implied representation by Manufacturing Defendants.

#### 1.      Claims for breach of warranty for property damage are barred are a matter of law.

As a matter of law, Plaintiffs' claims for breach of warranty, whether express or implied,

fail to state a claim upon which relief may be granted for property damage because Plaintiffs lack

standing as required under Alabama law.

> **a.   Alabama Plaintiffs Lack Standing Because They Are Not "Purchasers" or "Buyers."**

Similar to the law of Mississippi, Alabama law limits recovery for economic damages under breach of warranty to those who are "buyers" or "purchasers."  Alabama defines a "buyer" as a person who "buys or contracts to buy goods."  Ala. Code § 7-2-103 (setting forth definitions to terms used in recognizing claims under Alabama's commercial code).  Accordingly, Plaintiffs cannot recover for economic loss resulting from any alleged breach of warranty because Plaintiffs were not "buyers" as required under Alabama's commercial code, which sets forth a party's right to recover for breach of warranties.[13]

> **b.   Alabama Plaintiffs Are Precluded for Recovering for Property Damage Because No Privity Exists Between Plaintiffs and Manufacturing Defendants.**

Alabama Plaintiffs cannot recover for breach of express or implied warranties against Manufacturing Defendants because Manufacturing Defendants did not sell the subject homes directly to Plaintiffs, and, therefore, the Alabama Plaintiffs are not in privity of contract with Manufacturing Defendants.  It is well-established under Alabama law that in order to recover for property damage, a plaintiff must prove privity of contract for warranty actions involving property damage.  *Barre v. Gulf Shores Turf Supply, Inc.*, 547 So.2d 503, 504 (Ala. 1989) ("[T]he plaintiff must prove privity of contract in an action on an express warranty where no injuries to natural persons are involved.").  Alabama courts have consistently held that a manufacturer cannot be held liable for breach of implied warranty in cases of economic injury unless the plaintiff can prove privity exists between the plaintiff and the manufacturer.  *Rampey v. Novartis Consumer Health, Inc.*, 867 So.2d 1079, 1087 (Ala. 2003) ("[T]here is no right of

---

[13]   To the extent certain Plaintiffs purportedly purchased a Subject Unit from FEMA, such purchasing Plaintiffs' claims may be barred for the reasons set forth *infra*.

action on an implied warranty theory against a manufacturer for property damage without privity of contract.").

In *Rampey*, plaintiff-consumers filed a class action suit for breach of warranties against the defendant-manufacturer of an over-the-counter drug after learning that the subject product contained an ingredient believed to cause pre-cancerous and cancerous conditions. *Id*. at 1081. The plaintiffs sought injunctive relief and damages for economic loss. *Id.* The court dismissed the plaintiffs' claims for implied warranties because the plaintiffs had never purchased the subject product directly from the defendant-manufacturer. Instead, the defendant-manufacturer had sold the subject product exclusively to distributors and wholesalers who, in turn, sold the subject product to the plaintiff-consumers. *Id.* at 1083. Accordingly, the court held that the plaintiffs' breach of warranty claims did not extend to the defendant-manufacturer. *Id.* at 1092; *Bryant v. Southern Energy Homes, Inc.*, 682 So.2d 3, 5 (Ala. 1996) (holding implied warranty of fitness for a particular purpose did not apply to a manufacturer of mobile homes because the defendant-manufacturer sold the subject product to a third-party and not the plaintiff).

Plaintiffs cannot recover for breach of express or implied warranty for property damage or any alleged loss flowing therefrom under Alabama law because Plaintiffs have no privity of contract with Manufacturing Defendants. Rather, FEMA "provided" the Subject Units to Plaintiffs. At no point did Manufacturing Defendants and Plaintiffs enter into a contractual relationship pertaining to the Subject Units; Plaintiffs' "contractual relationship," if any, was with FEMA. *See* Admin. Master Compl. ¶ 100. Like the defendant-manufacturer in *Rampey*, Manufacturing Defendants never distributed or sold the Subject Units directly to Plaintiffs. Without having alleged any contractual relationship for the sale of the Subject Units with

Manufacturing Defendants, Plaintiffs' claims for breach of express and implied warranties must be dismissed as a matter of Alabama law.

>**2.**      **Alabama Plaintiffs Are Precluded from Recovering for Express Warranty Because Manufacturing Defendants Did Not Make an Affirmation or Promise that Became a Basis of the Bargain.**

Alabama Plaintiffs cannot recover for breach of express warranty, whether for personal injury or property damage, because there is no allegation that Manufacturing Defendants made any affirmation or promise to Plaintiffs.  Under Alabama law, a plaintiff cannot recover for an alleged breach of express warranty unless the plaintiff can demonstrate that there was an affirmation or promise made by the defendant upon which the plaintiff relied in purchasing the product.  *See Ex Parte Gen. Motors Corp.*, 769 So. 2d 903, 907-10 (Ala. 1999).  In *General Motors*, the plaintiff sued the defendant-car manufacturer after the plaintiff suffered injuries resulting from an automobile accident that occurred after the subject vehicle had continuously stalled.  *Id.* at 905-6.  The plaintiff sued in tort and for breach of warranties, including breach of express warranty.  *Id.*  The plaintiff merely alleged a breach of express warranty and generally pointed to an extended warranty in which the defendant-manufacturer promised it would cover the cost of towing.  In dismissing the plaintiff's claim for breach of express warranty against the defendant-manufacturer, the court held that the plaintiff could not recover for express warranty because there was no evidence of any affirmation or promise made by the defendant-manufacturer to the plaintiff with respect to the alleged defect upon which the plaintiff relied in purchasing the subject vehicle.  *Id.*

The present case is nearly identical to *General Motors.*  Here, Plaintiffs have done nothing more than merely allege a breach of express warranty.  Further, in contrast to the plaintiff in *General Motors*, Plaintiffs have not even alleged <u>any</u> warranty by Manufacturing

Defendants.  Here, no warranty could have existed between Manufacturing Defendants and

Plaintiffs because no representation was ever made by Manufacturing Defendants to Plaintiffs.

Put simply, Plaintiffs never relied upon any affirmation or promise made by any Manufacturing

Defendant.  In fact, there is no allegation in the Administrative Master Complaint that Plaintiffs

ever had any choice in determining the manufactured home in which Plaintiffs would

temporarily reside.  Instead, Plaintiffs have been utilizing whatever temporary housing was

afforded to them by FEMA.  Accordingly, Plaintiffs cannot recover for any damage arising from

a breach of express warranty as a matter of Alabama law.

**3.      Alabama Plaintiffs Are Precluded for Recovering for Breach of an Implied Warranty of Fitness Because Plaintiffs Do Not Allege that Manufacturing Defendants Were Aware That Plaintiffs Were Relying On Manufacturing Defendants.**

While Plaintiffs do not specifically enumerate a cause of action for breach of implied

warranty of fitness, Plaintiffs do allege strict product liability on the basis of breach of any

implied or express warranties.  Admin. Master Compl. ¶¶ 161, 173.  To the extent Plaintiffs

allege breach of the implied warranty of fitness, such claim is barred.  Alabama's implied

warranty for fitness rule is codified at Ala. Code § 7-2-315:

> Where the seller at the time of contracting has reason to know any
> particular purpose for which the goods are required and that the buyer is
> relying on the seller's skill or judgment to select or furnish suitable goods,
> there is . . . an implied warranty that the goods shall be fit for such
> purpose.

Thus, a claim for warranty for fitness for a particular purpose does not apply where a plaintiff

does not know he is purchasing the defendant's product because under such circumstance the

plaintiff could not have relied on the skill or knowledge of the defendant in selecting the product.

*Ex parte Gen. Motors Corp.*, 769 So.2d at 911.  In *General Motors*, in addition to suing the

manufacturer, as has been discussed above, the plaintiff sued the car dealership from which he

15

purchased the allegedly defective automobile for breach of implied warranty of fitness.  *Id.*  The court held that the plaintiff could not recover for an alleged breach of implied warranty of fitness because the plaintiff had failed to demonstrate that the defendant-dealership knew that the plaintiff was relying on the dealership's expertise and that the plaintiff did, in fact, rely on the dealership's skill or knowledge in selecting the subject vehicle.  *Id.*

Plaintiffs do not allege that they relied on Manufacturing Defendants' skill or knowledge in selecting their respective Subject Units.  Again, Plaintiffs do not allege that they were even involved in selecting their Subject Unit.  According to the Complaint, FEMA provided Plaintiffs with the Subject Units.  Plaintiffs have merely been occupying, on a temporary basis, whatever Subject Unit was provided to them by FEMA.  Plaintiffs have not even alleged that they knew they were occupying a Subject Unit produced by Manufacturing Defendants.  Accordingly, Plaintiffs cannot recover for breach of implied warranty for fitness as a matter of Alabama law.

### C.  Texas:  As a matter of law, Plaintiffs are precluded from recovery for any purported breach of any purported warranty.

Texas' commercial code mirrors Alabama and Mississippi law.  Therefore, Plaintiffs are precluded from recovering for all warranties for property damage because Plaintiffs do not meet the definition of "buyer" under Texas law.  Further, Plaintiffs have failed to establish that they relied upon a promise or upon the skill and knowledge of Manufacturing Defendants as required to demonstrate breach of express warranty and implied warranty for fitness.  Thus, like the Alabama and Mississippi Plaintiffs, the Texas Plaintiffs fail to state a breach of warranty claim against Manufacturing Defendants upon which relief may be granted.

1.      **Claims for Breach of Warranty Seeking Property Damage are Barred Because Plaintiffs Lack Standing.**

Like Alabama and Mississippi, Texas has adopted the UCC's definitions for breach of warranty.  *See generally* Tex. Bus. & Com. Code § 2.101, *et seq.* (adopting the UCC nearly verbatim).  An implied warranty of merchantability is a warranty that goods are merchantable that is implied in a "contract for sale."  *Id.* § 2.314.  Again, nearly identically to Alabama and Mississippi law, Texas law provides that a party breaches an implied warranty for fitness where the seller knows that the "buyer" is relying on the seller's skill or judgment.  *Id.* § 2.315.  In fact, Texas courts have held that "the UCC does not confer blanket authority to sue for breach of warranty . . . only a 'buyer' may sue to recover economic damages for non-conformities of tender, including breaches of warranties."  *DaimlerChrysler Corp. v. Inman*, 121 S.W.3d 862, 882 (Tex. Ct. App. 2003), *rev'd on other grounds*, 51 Tex. Sup. Ct. J. 422 (Tex. 2008).  Thus, only one who buys or contracts to buy the subject good may sue for breach of warranty.  Here, Plaintiffs cannot recover damages for alleged breach of warranties of the Subject Units when Plaintiffs have never had a recognized property interest in the Subject Units.[14]

2.      **Texas Plaintiffs Cannot Recover for Breach of Warranty for Fitness Because Plaintiffs Do Not Allege that Manufacturing Defendants Were Aware That Plaintiffs Were Relying On Manufacturing Defendants.**

Texas law, like that of Alabama and Mississippi, also requires that a plaintiff must have relied on the defendant's skill or knowledge in selecting the product in order to set forth a justiciable cause of action.  It is not enough that the plaintiff relied on an intermediary rather than the named defendants.  *Harris Packaging Corp. v. Baker Concrete Constr.*, 982 S.W.2d 62, 67 (Tex. Ct. App. 1998), *overruled in part on other grounds by Med. City Dallas, Ltd. v. Carlisle*

---

[14]      To the extent certain Plaintiffs purportedly purchased a Subject Unit from FEMA, such purchasing Plaintiffs' claims may be barred for the reasons set forth *infra*.

*Corp.,* 51 Tex. Sup. Ct. J. 753 (Tex. 2008).  Thus, Texas courts have held that a plaintiff cannot recover for breach of implied warranty for fitness, whether for property damage or personal injury, unless the plaintiff can demonstrate that the he relied on a representation or recommendation by the defendant for selecting the subject product.  *See Cook-Pizzi v. Van Waters & Rogers, Inc.*, 94 S.W.3d 636, 647-48 (Tex. App. 2002).  Again, Plaintiffs cannot prove this critical element.  There is no allegation that Plaintiffs were even aware that Manufacturing Defendants manufactured their units at the time FEMA distributed the Subject Units to Plaintiffs. Accordingly, Plaintiffs' claims for breach of implied warranty for fitness must be dismissed under Texas law.

> **3.     Texas Plaintiffs Cannot Recover for Breach of Express Warranty Because Manufacturing Defendants Did Not Make Any Affirmations or Promises Upon Which Plaintiffs Relied.**

Plaintiffs have not explicitly enumerated a count for breach of express warranty under Texas law in the Administrative Master Complaint.  However, to the extent Plaintiffs' allegations may be read to state a claim for breach of express warranty, they cannot recover.  Texas has defined an express warranty as "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes a basis *for the bargain*."  Tex. Bus. & Com. Code Ann. § 2.313 (emphasis added).  Texas courts have held that the "basis for the bargain" injects a requirement of reliance into express warranty claims.  *PPG Indus. Inc. v. JMB/Houston Centers Partners LP,* 146 S.W.3d 79, 99 (Tex. 2004).  In *Harris*, *supra*, a Texas court clarified this concept by explaining that not only must the defendant have made an affirmation *to the plaintiff*, but also the affirmation must have been made in connection with contracting for the sale of the goods.  *Harris,* 982 S.W.2d at 66-7.  The court held that purported statements made by the

defendant to the plaintiff could not have been a "basis of the bargain" because there was never any contract between the plaintiff and the defendant.  *Id.* at 67.

Similarly here, Plaintiffs cannot-- and do not -- allege that any statements made by Manufacturing Defendants became a "basis for the bargain" because there was never any contract for the sale of the Subject Units from the Manufacturing Defendants to Plaintiffs. Correspondingly, Plaintiffs cannot -- and do not -- allege that the Manufacturing Defendants made any representations to Plaintiffs in the course of contracting for sale of the Subject Units. Thus, Plaintiffs' claims for breach of express warranty must be dismissed as a matter of Texas law.

**D.     Louisiana:  As a matter of law, Plaintiffs are precluded from recovery for any purported breach of express warranty.**

Plaintiffs assert claims under the Louisiana Products Liability Act for breach of express warranty (Doc 109, paragraph 138(i)), but have not stated that they relied upon the warranty in deciding to use the trailers.  To present a claim for a breach of an express warranty under the LPLA, a plaintiff must show that "the plaintiff was induced to use the product because of [the express] warranty.  *Caboni v. General Motors Corp.,* 278 F.3d 448, 453-55 (5th Cir.2002); *see also* La.Rev.Stat. Ann. § 9:2800.58 (manufacturer is potentially liable only "if the express warranty has induced the claimant or another person or entity to use the product").  In the absence of allegations that Plaintiffs were induced to use the trailers because they relied upon the express warranty, and particularly where Plaintiffs have not alleged any specifics regarding the terms of the express warranty that were allegedly breached, Plaintiffs have not stated a claim for breach of express warranty under Louisiana law.  *See Id.*

**IV.    Plaintiffs' Claims For Economic Loss Should Be Dismissed Because They Have No Ownership Interest In the Subject Units And Because They Are Barred By The Economic Loss Doctrine.**

Plaintiffs lack standing to recover for economic losses for their alleged property damage because Plaintiffs are not property owners.  The actual owner of the Subject Units is the U.S. government.  Even assuming, *arguendo,* that Plaintiffs may claim property damage to some abstract ownership interest in the Subject Units or that they may assert a property damage claim for the purported loss of a housing subsidy because they chose to live in a Subject Unit -- which is denied -- they would be barred from recovery under principles of both negligence and strict liability by the Economic Loss Doctrine.

The genesis of the Economic Loss Doctrine is found in a California case, *Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145 (Cal. 1965), in which the Court explained:

> The law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods.  The history of the doctrine of strict liability and tort indicates that it was designed, not to undermine the warranty provisions of the Sales Act or the Uniform Commercial Code but, rather, to govern the distinct problem of **physical injuries**.

*Seely*, 403 P.2d at 159-61 (emphasis added).

Thereafter, in a 1986 decision the United States Supreme Court unanimously embraced and adopted the majority rule of *Seely*.  The Court held that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself, and thus, no products-liability claim for negligence or strict liability lies "when the only injury claimed is economic loss."  *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986).

**A.      Mississippi: Plaintiffs' Claims for Negligence and Strict Liability Are Barred By the Economic Loss Doctrine.**

The principles set forth in *Seely* and *East River* have been embraced and adopted by both Mississippi federal courts and Mississippi state courts.  In Mississippi, a plaintiff who suffers only economic loss as a result of an allegedly defective product may not recover in strict liability or negligence, though such damages may be pursued under a breach of warranty theory. *Progressive Ins. Co. v. Monaco Coach Corp.*, 2006 U.S. Dist. LEXIS 21251, at *8 (S.D. Miss. March 29, 2006); *Lee v. General Motors Corp.*, 950 F. Supp. 170, 172-73 (S.D. Miss. 1996); *State Farm Mutual Auto Ins. Co. v. Ford Motor Co.*, 736 So.2d 384, 387 (Miss. Ct. App. 1999).

No plaintiff named in the Administrative Master Complaint has specifically identified any present injury.  It is patently obvious that, aside from their attempt to recover for *future* injury without proving *present* injury, the only damages that Plaintiffs are claiming and for which they seek recovery are economic damages they claim to have incurred as a result of damage to the Subject Units themselves.  However, as shown above, such recovery is barred under Mississippi law by the Economic Loss Doctrine.

**B.      Texas: Plaintiffs' Claims for Negligence and Strict Liability Are Barred By the Economic Loss Doctrine.**

Texas has also adopted the Economic Loss Doctrine.  The doctrine applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself.  The Texas Supreme Court established that purely economic losses, even if suffered as a result of negligence, are not recoverable.  *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991).  The Court reasoned that when the only loss or damages is to the subject matter of the contract, the plaintiff's actions are ordinarily on the contract.  *Id.* at 494 (citations omitted).  Acknowledging that, although the plaintiff pleaded his

action as one in negligence, the Court held that the economic loss caused by the defendant's actions sounded in contract and therefore the plaintiff's negligence claim was barred.  *Id.*; *see also Medical City Dallas, Ltd. v. Carlisle Corp.*, No. 06-0660, 2008 Tex. LEXIS 315, at *14 (Tex. April 11, 2008).

Because the Plaintiffs fail to identify any present injury in the Administrative Master Complaint, the only damages that Plaintiffs are claiming and for which they seek recovery are economic damages incurred as a result of alleged damage to the Subject Units themselves. However, as shown above, such recovery is barred under Texas law by the Economic Loss Doctrine.

**C.   Alabama:  Plaintiffs' Claims for Negligence and Strict Liability Are Barred By the Economic Loss Doctrine.**

Persuaded by the reasoning of the United States Supreme Court, in 1989 the Alabama Supreme Court adopted the Economic Loss Doctrine.  *Lloyd Wood Coal Co. v. Clark Equipment Co.*, 543 So. 2d 671 (Ala. 1989) (affirming grant of summary judgment to defendant on plaintiff's negligence claim where the only damage was to the product itself).  More recently, the Alabama Supreme Court reaffirmed that one cannot recover in tort for the negligence manufacture of a product where the only injury is to the product itself.  *Bay Lines, Inc. v. Stoughton Trailers, Inc.*, 838 So. 2d 1013, 1019 (Ala. 2002).

Again, because the Plaintiffs fail to identify any present injury in the Administrative Master Complaint, the only damages that Plaintiffs are claiming and for which they seek recovery are economic damages incurred as a result of alleged damage to the Subject Units themselves.  As explained above, such recovery is barred under Alabama law by the Economic Loss Doctrine.

**D.      Louisiana:  Plaintiffs' Claims for Negligence and Strict Liability Are Barred By the Economic Loss Doctrine.**

There is clear support for the Economic Loss Doctrine in Louisiana's statutory scheme. The Louisiana Civil Code contains several provisions governing choice of law scenarios. One, article 3545, sets forth the rule for conflicts that occur in products liability cases. *See* LA. CIV. CODE. art. 3545 (2006). The comments to that article state:

> This Article applies to any injury caused by a product, rather than to the product itself. *The latter type of damage is likely to be characterized as contractual in nature* and thus would be governed by the Title on conventional obligations. *Id*. cmt. (a).

The comments envision a form of redress for property damage that is limited solely to those found in contract. *See id*. That is the exact rationale of the economic loss doctrine – there is no tort recovery for purely economic loss. When the thing itself is allegedly defective, then the remedy is governed by the rules of contract. Only under those rules can recovery for economic loss be considered.

In addition to those comments, the Louisiana Products Liability Act (LPLA) tacitly applies the economic loss doctrine. The LPLA defines damage in a products liability context as "including damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that [the Civil Code Articles on redhibition] do not allow recovery for such damage or economic loss." LA. REV. STAT. ANN. § 9:2800.53(5). Since Louisiana's redhibition statutes allow for the recovery of economic damages, the LPLA does not. The statutory scheme does not change simply because these particular plaintiffs do not have a redhibition claim.

As the Plaintiffs fail to identify any present injury in the Administrative Master Complaint, the only damages that Plaintiffs are claiming are economic damages incurred as a

result of alleged damage to the Subject Units themselves.  As explained above, such recovery is barred under Louisiana law.

**V.      Plaintiffs' Claims for Medical Monitoring Must Be Dismissed Under Louisiana, Alabama, Mississippi, and Texas Law.**

Louisiana, Alabama, Mississippi, and Texas law dictate that a claim for medical monitoring cannot be sustained without a present manifestation of injury.  All four states follow the modern trend and precedent set by other jurisdictions in refusing to recognize medical monitoring without a showing of injury.  *See* La. Civil Code Article 2315; *see also Henry v. Dow*, 701 N.W.2d 684, 691-92 (Mich. 2005) (reasoning it was for the Michigan Legislature, not the court, to decide whether to allow a cause of action for medical monitoring absent physical injury; a cause of action based on exposure would create a potentially limitless pool of plaintiffs; and there would be a huge burden on court finance and employees that would stem from administering a medical monitoring trust fund); *Badillo v. Am. Brands*, 16 P.3d 435, 441 (Nev. 2001) (holding that Nevada common law does not recognize a cause of action for medical monitoring); *Wood v. Weyth-Ayerst Labs,* 82 S.W.3d 849, 856-57 (Ky. 2002) (holding that without a showing of present physical injury, cause of action for negligence has yet to accrue); *Hinton v. Monsato,* 813 So. 2d 827, 831 (Ala. 2001), discussed *infra.*

Here, Plaintiffs allege generally that their damages include "past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, [and] past and future reasonable and necessary medical expenses." Admin. Master Compl. at p. 74.  Plaintiffs allege that the formaldehyde levels "have" caused the Plaintiffs to suffer damages, but do not state what injuries the formaldehyde actually caused any of the named plaintiffs.  *Id.* ¶¶ 95, 153, 175.  These allegations are broad enough that Plaintiffs could be seeking medical monitoring costs for only alleged *future* injuries.  Critically, in alleging

that class certification is appropriate, Plaintiffs allege that there is a need for medical monitoring because of an "increased risk of contracting a . . . disease" because of the alleged exposure to formaldehyde.[15]  *Id.* ¶ 91.  What is missing from this allegation is an assertion that medical monitoring is necessary because of a *present* disease or condition of the class members.  No plaintiff named in the Administrative Master Complaint has identified specifically any present injury.

> **A.  Louisiana:  From the facts alleged in Plaintiffs' Complaint, medical monitoring claims are not permitted as a matter of law.**

Plaintiffs' ability to obtain medical testing and monitoring under Louisiana law is governed by Louisiana Civil Code article 2315.  Plaintiffs' ability to recover medical monitoring costs as an element of damages was severely limited as part of the sweeping reform to Louisiana's civilian legal tradition beginning in 1996.  Civil Code article 2315 was amended effective July 9, 1999 to overrule Louisiana Supreme Court precedent and exclude as an element of damages "costs for future medical treatment, services, surveillance, or procedures of any kind

---

[15]     Paragraph 91 of the Administrative Master Complaint states:

> Class certification is also appropriate for the reasonable costs of medical monitoring for all class members under a court-supervised medical monitoring fund.  This action may be properly maintained as a class action for all necessary and appropriate final injunctive relief and/or corresponding declaratory relief for the following, non-exclusive reasons:
>
> a.   The class members have had significant exposure to a known and proven hazardous substance;
>
> b.   As a result of this exposure, members suffer a significantly increased risk of contracting a serious latent disease(s);
>
> c.   Class members' risk of contracting a serious latent disease(s) is great than (1) the risk of contracting the same disease had they not been exposed and (2) the chances of members of the general non-exposed public of developing a disease(s);
>
> d.   A monitoring procedure exists that can make the early detection of any serious latent disease(s) if possible;
>
> e.   The monitoring procedures are prescribed by medical professionals and such monitoring is reasonably necessary for early detection and treatment;
>
> f.   The increased risk of disease(s) from exposure warrants medical monitoring beyond that which an individual would normally pursue;
>
> g.   Medical benefits are gained through early detection of disease(s); and,
>
> h.   But for all defendants' action or inaction, the members would not have incurred the additional cost of medical monitoring and treatment resulting from exposure to formaldehyde.

unless such treatment, services, surveillance, or procedures are directly related to a *manifest physical or mental injury of disease*."  La. Civ. Code art. 2315(B) (emphasis added); *see also Abney v. Exxon Corp.*, 755 So.2d 283 (La. App. 1 Cir. 1999).

**B.      Mississippi:  From the facts alleged in Plaintiffs' Complaint, medical monitoring claims are not permitted as a matter of law.**

Mississippi has never recognized a cause of action for medical monitoring as sought by Plaintiffs here.  Indeed, recently, the Fifth Circuit was faced with the exact issue of whether Mississippi recognizes a claim for medical monitoring without the manifestation of a specific present physical injury.  *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809 (5th Cir. 2006). The Supreme Court of Mississippi responded to a certified question from the Fifth Circuit, stating that "it would be contrary to current Mississippi law to recognize a claim for medical monitoring allowing a plaintiff to recover medical monitoring costs for mere exposure to a harmful substance without proof of current physical or emotional injury from that exposure." *Paz v. Brush Engineered Materials, Inc.,* 949 So. 2d 1, 5-6 (Miss. 2007).

Accordingly, since there has been only a bare assertion that Plaintiffs have suffered some unidentified damage, including possibly only alleged future damages, related to exposure to formaldehyde in the trailers manufactured by Manufacturing Defendants, the motion to dismiss should be granted as a matter of law.

**C.      Alabama: From the facts alleged in Plaintiffs' Complaint, medical monitoring claims are not permitted as a matter of law.**

In recognition of Alabama's long-standing tort principles requiring a physical injury, Alabama has refused to recognize medical monitoring as a remedy without evidence of a present physical injury.  Under Alabama law, Plaintiffs cannot recover in tort without a present manifestation of a physical injury.  *Hinton v. Monsanto Co.*, 813 So.2d 827, 829 (Ala. 2001).  In

*Hinton*, the putative class members sought costs for medical monitoring after alleging that class members had been exposed to harmful chemicals that had been released into the environment by the defendant.  *Id.* at 828.  However, the proposed class members did not allege that they sustained a physical injury or illness as a result of their exposure to the harmful chemicals.  *Id.* Instead, the plaintiff-class members claimed that their injury consisted of the potential for later harmful health effects.  *See id.*  The court held that Alabama tort public policy dictates that mere concern that a product may potentially later cause physical harm does not constitute an "injury." *Id.* at 829.  Thus, the *Hinton* court held that without evidence of actual injury, the plaintiffs could not recover damages for health monitoring to detect whether the plaintiffs develop an injury in the future.  *Id.*

Like the plaintiffs in *Hinton*, Plaintiffs have not alleged any specific present injury or physical manifestations of harm from the alleged formaldehyde exposure.  At best, Plaintiffs have presented nothing more than a bare assertion that they have suffered some injury.  *See* Admin. Master Compl. ¶¶ 95, 153, 175.  Without an allegation of a specific physical injury, Plaintiffs are precluded from recovering for medical monitoring under Alabama tort law.  *See Twombly*, 127 S.Ct. at 1965 ("A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do.").  As a result, the Alabama Plaintiffs fail to state a claim for medical monitoring upon which relief can be granted.

   **D.    Texas:  From the facts alleged in Plaintiffs' Complaint, medical monitoring claims are not permitted as a matter of law.**

Although exhaustive research has failed to find a single reported Texas appellate decision addressing the issue of whether a plaintiff can recover for medical monitoring in the absence of a present manifestation of injury, the United States District Court for the Western District of

27

Texas, applying existing Texas law, has recently refused to recognize recovery for medical monitoring without injury. *Norwood v. Raytheon Co.*, 414 F. Supp. 2d 659, 668-69 (W.D. Tex. 2006). Notably, the *Norwood* court enumerated several reasons why Texas law precludes recovery for medical monitoring: (1) Texas public policy precludes a plaintiff from seeking recovery for the mere fear of future injury without actual manifestation of an illness; (2) Texas courts would likely follow the modern trend, as well as nearby jurisdictions in rejecting such claims for medical monitoring; (3) a federal court cannot create a new state cause of action. *Id.*

In *Norwood*, the plaintiffs sought class certification on behalf of radar operators who allegedly had been exposed to radiation but had not yet been affected with an illness resulting from such exposure. *Id.* at 661. The plaintiffs sought relief in the form of a fund to finance medical monitoring and surveillance necessary to protect the plaintiffs from an increased risk of harm and disease. *Id.* at 661-62. In granting the defendants' motion to dismiss the plaintiffs' medical monitoring claim, the court looked to a Texas Supreme Court case in which the court had rejected a claim for mental anguish for increased likelihood of injury resulting from asbestos exposure. *Id.* at 664 (citing *Temple-Inland Forest Prods. Corp. v. Carter*, 993 S.W.2d 88, 93 (Tex. 1999)). Texas courts have held that a plaintiff cannot recover for fear of future illness without demonstrating a present injury as a matter of public policy. *Temple-Inland*, 993 S.W.2d at 93. Specifically, the absence of a present physical injury "make[s] it very difficult for judges and juries to evaluate which exposure claims are serious and which are not." *Id.* Also, the absence of physical injury leads to unpredictable liability. Finally, allowing recovery absent physical injury would result in an influx of claims that would burden the legal system's limited resources. *Id.*

Moreover, the *Norwood* court noted the trend in other jurisdictions in rejecting medical monitoring claims absent the manifestation of an injury. *Norwood,* 414 F. Supp. 2d at 666-67. The rejection of claims for medical monitoring without evidence of a physical injury by other jurisdictions further bolsters the position that the Texas Supreme Court would follow the trend of rejecting such claims. Lastly, the *Norwood* court held that recognizing a cause of action for medical monitoring -- an action that has not been recognized by a Texas court -- would constitute an improper innovation of state law. *Id.* The court held that Fifth Circuit law precludes a court from creating a new cause of action. *Id.* Accordingly, the court dismissed the plaintiffs' claims for medical monitoring and held that a Texas Supreme Court would not likely adopt a claim for medical monitoring. *Id.* at 668. Likewise, this Court should not permit this claim to go forward and should grant the motion to dismiss.

In summary, Plaintiffs cannot recover for medical monitoring under the laws of Louisiana, Alabama, Mississippi, or Texas. Plaintiffs' Administrative Master Complaint lacks sufficient factual allegations to support an absolutely essential element to a claim for medical monitoring: a manifest physical or mental injury or disease resulting from formaldehyde exposure. Plaintiffs' bare assertion that they have suffered an unspecified injury does not meet the pleading requirements to survive a motion to dismiss. Rather, Plaintiffs have provided merely the "formulaic recitation of the elements" that the Supreme Court has found insufficient. *Twombly*, 127 S. Ct. at 1965. Thus, Plaintiffs' claims for medical monitoring should be dismissed.

**VI.    Plaintiffs' Claims Should be Dismissed, or Alternatively, Plaintiffs Should Be Required to Make a More Definite Statement, Because Plaintiffs Do Not Connect Any Plaintiff to Any of the Manufacturing Defendants**

**A.    The Administrative Master Complaint fails to state a claim because it makes collective allegations that do not connect any particular Plaintiff to any of the Manufacturing Defendants**

Federal Rule 8(a) requires that a plaintiff assert "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Courts in the Eastern District of Louisiana have long recognized that the complaint must contain enough factual specificity to give the defendants fair notice of the nature of the plaintiffs' claims.  *Louisiana Acorn Fair Housing Organization v. Hillery*, No. CIV A 00-0530, 2000 WL 666376, *2 (E.D. La. May 19, 2000).  Collective allegations that refer to *all* plaintiffs and *all* defendants are insufficient.

Non-specific and collective allegations are even more problematic when plaintiffs assert sweeping class action claims, as they have done here.  This is because of the "sheer magnitude of the risk to which the class action, in contrast to the individual actions . . ., exposes [a defendant]."  *Matter of Rhone-Poulenc Rorer, Inc*., 51 F. 3d 1293, 1297 (7th Cir. 1995), *cert. denied*, *Grady v. Rhone-Poulenc Rorer, Inc.*, 516 U.S. 867 (1995) (discussing risks of class action in context of whether a decision to certify is appealable).  Federal Rule 23 does not relax the pleadings standards for class actions.[16]  Just the opposite, a class action complaint must clearly define which claims are directed against which defendants and allege the elements required under Federal Rule 23.[17]

---

[16]    *Matte v. Sunshine Mobile Homes, Inc.,* 270 F. Supp.2d 805, 821 ("The Supreme Court has spoken clearly on this issue:  That a suit may be a class action…adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by another, unidentified member of the class to which they belong and which they purport to represent.'") (internal citations omitted).

[17]    This Court's Uniform Rule 23.1 arguably imposes a more strict standard that Federal Rule 23, requiring that a class action complaint allege additional facts to support the request for class action status, including,

Like the underlying complaints, the Administrative Master Complaint does not allege facts to connect a particular Plaintiff with any of the Manufacturing Defendants.  The following examples from the Administrative Master Complaint illustrate this collective "shotgun" approach, lumping all Plaintiffs and Defendants together:

> Paragraph 26:  Plaintiffs allege, without identifying any particular Defendant, that all Defendants "rushed through production many of the housing units, using substandard materials and/or employing irregular practices during the manufacturing process which resulted in the housing units containing high levels of formaldehyde."  The Administrative Master Complaint does not distinguish between any of the Defendants (approximately sixty different parties) or any of the housing units they allegedly manufactured.

> Paragraph 30:  In this paragraph, Plaintiffs lump all Defendants together and allege that *all* units "manufactured prior to the hurricanes and those later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to the Manufacturing Defendants' use of certain materials in their construction and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, but that the Manufacturing Defendants failed to warn the Federal Government about these dangers, which were not known to the Federal Government."

> Paragraph 31:  In this paragraph, Plaintiffs collectively accuse all Manufacturing Defendants of fraud and conspiracy and allege that they intentionally concealed

---

but not limited to, facts to demonstrate: (a) the size and definition of the alleged class; and (b) the basis upon which the plaintiffs claim to be adequate representatives of the proposed class.

information concerning "dangerous levels of formaldehyde and/or posed the threat of producing dangerous levels of formaldehyde…" in FEMA housing units. In addition to lumping all sixty Defendants together, these allegations do not meet the heightened pleading requirements for fraud under Federal Rule 9(b).

Paragraph 32:  In this paragraph, Plaintiffs simply allege that they have "all spent significant time in the FEMA-provided housing units by one or more of the Manufacturers or Unnamed Manufacturers and provided to plaintiffs by the Federal Government" and that they all "have all been exposed to dangerously high concentrations of the formaldehyde which is emitted from products used in the manufacture of the subject housing units."  Plaintiffs do not allege any facts to connect an individual Plaintiff to any product manufactured by any Defendant.

Plaintiffs compounded the problem created by collective allegations by asserting claims against all Manufacturing Defendants under Louisiana, Alabama, Mississippi, and Texas state law, without distinguishing between Plaintiffs or Defendants.  This creates confusion and leaves the Manufacturing Defendants unable to defend against Plaintiffs' claims or even to determine which law applies to Plaintiffs' claims.

As an example, a Louisiana resident Plaintiff who lives in a Jayco unit may have a claim under Louisiana law, but will not likely have a claim under Alabama, Mississippi, or Texas law.[18]  With the non-specific and collective allegations in the Administrative Master Complaint and the underlying complaints, a Defendant like Jayco cannot determine whether the

---

[18]     The choice of law issues presented here underscore the need for more precision in plaintiffs' claims.  To apply Louisiana's choice of law rules, among other things, the Court must be able to identify the domicile of the plaintiff and the defendant.  *See* Louisiana Civil Code Articles 3542-3545.  This necessarily requires that each named plaintiff identify the defendant against which he or she is asserting a claim.

Administrative Master Complaint or underlying complaints assert a claim under Louisiana law, or attempts to assert a claim under any of the other states' laws that are alleged.

Other Louisiana federal courts have considered the problem created by collective allegations and found that dismissal was proper.  For example, in *Matte v. Sunshine Mobile Homes, Inc.*, 270 F.Supp.2d 805 (W.D. La. 2003), Judge Melancon considered a class action related to defective mobile homes manufactured by a variety of defendants.  Like the Administrative Master Complaint filed here, the *Matte* plaintiffs made collective allegations and did not allege facts to connect any particular plaintiff and any particular defendant.

Instead, the plaintiffs made broad-brush claims that, according to the Court, were "devoid of allegations that any named plaintiff ever owned, rented, occupied, resided in, or otherwise had any contact with *any* mobile home – whether manufactured by one of the 282 defendants or another entity." *Id.* at 814.  The manufacturer-defendants in *Matte* filed motions to dismiss under Federal Rule 12(b)(1), (2) and (6).

Judge Melancon adopted the report of Magistrate Judge Mildred E. Methvin, who found that, without a particularized claim against any of the defendants, the Court lacked subject matter jurisdiction because the plaintiffs lacked constitutional standing to bring their claims.  As a result, he dismissed the plaintiffs' claims because none of them could state with certainty that any particular plaintiff lived in a mobile home manufactured by a particular manufacturer.  The court also rejected the plaintiffs' arguments that it should somehow relax the standing requirements just because the plaintiffs filed their claims as a class action.  *Id*. at 821.

The Court should apply the same reasoning here.  No Plaintiff alleged he or she lived in or had any connection with housing units manufactured by the Manufacturing Defendants.  Consequently, the Court should find that the Administrative Master Complaint and underlying

complaints have not stated claims against the Moving Defendants under the states' laws involved and the claims should be dismissed in their entirety.[19]

**B.    Alternatively, if the Court does not dismiss the claims against the Manufacturing Defendants, it should order Plaintiffs to amend their claims under Federal Rule 12(e) to satisfy the pleading standards under the Federal Rules of Civil Procedure.**

Federal Rule of Civil Procedure Rule 12(e) authorizes a district court to require a more definite statement when a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading . . . ."  A bare-bones allegation that a wrong occurred without any of the facts giving rise to the plaintiff's injury does not provide adequate notice. *Beanal v. Freeport McMoran, Inc.*, 197 F. 3d 161, 164 (5th Cir. 1999); *Matthews v. Soc. Sec. of La.,* No. CIV A 01-2267, 2002 WL 1022267, *2 (E.D. La. May 20, 2002).  Moreover, if a defendant cannot understand what the plaintiff is claiming in his complaint, the defendant cannot respond to the allegations.  *Matthews v. Soc. Sec. of La.,* 2002 WL 1022267 at *2.

The motion for more definite statement is appropriate when, as here with the Administrative Master Complaint, the Defendants are simply trying to determine exactly what claims the Plaintiffs have made against them.  As another judge of this Court recognized recently,

> This is not a case in which defendants are trying [to] subvert the intent of the federal rule requiring only notice pleading, nor is their motion for a more definite statement merely a disguised attempt at discovery.  Rather, defendants rightly protest that they cannot adequately respond to the complaint because it is impossible to discern with any degree of certainty exactly what claims plaintiffs mean to assert therein.  Accordingly, the motion for a more definite statement is GRANTED.

---

[19]    The Moving Defendants have also asserted a Motion for More Definite Statement, which is discussed below.   If the Court does not dismiss plaintiffs' claims, the Moving Defendants request that the Court order the plaintiffs to amend their Master Complaint and the underlying complaints to comply with federal pleading standards.

*Sargent v. Riley*, No. CIV A 02-1857, 2003 WL 30418, *4 (E.D. La. Jan. 3, 2003) (Judge Africk).

The federal rules make it clear that courts should liberally construe the plaintiffs' complaint. However, federal courts have also recognized that the complaint must at least contain enough factual specificity to give the defendants fair notice of the nature of the plaintiffs' claims. *Louisiana Acorn Fair Housing Organization v. Hillery*, 2000 WL 666376 at *2.

The notice requirement is particularly important where a complaint names multiple defendants. In that situation, the plaintiff must allege his claims sufficiently so that each of the defendants can understand which claims and allegations are directed at them. Collective references to "all defendants" are insufficient.

For example, in *Caraveo v. Nielsen Media Research, Inc*., No. 01 CIV 9609, 2002 WL 530993, *3 (S.D.N.Y. April 8, 2002), the court granted a motion for a more definite statement where the plaintiff impermissibly lumped together allegations concerning 25 different defendants. The court found that the complaint was defective because it did not particularize the allegations to the individual defendants:

> We also find that the Complaint does not clearly identify which of the factual allegations are being asserted against which of the defendants. In paragraphs 14-166, where factual allegations are listed, Plaintiff repeatedly refers to "defendants" in a manner that is vague and ambiguous with respect to which defendants engaged in which actions.

*Id.*

In *Bower v. Weisman*, 639 F. Supp 532 (S.D.N.Y. 1986), a district court ruled that a complaint was vague and ambiguous where it contained collective references to the defendants. Recognizing the very same problem that exists with the plaintiffs' allegations here, the *Bower* court granted the motion for more definite statement because the defendant could not

35

"effectively respond to [the plaintiff's] complaint until he knows which claims [the plaintiff] is asserting against him in his individual capacity." *Id.* at 538. Other federal courts have reached similar conclusions. *See Khalid Bin Talal Bin Abul Azaiz Al Seud v. E.F. Hutton & Company, Inc.*, 720 F. Supp. 671, 686 (N.D. Il. 1989) (granting motion under FRCP 12(e) and noting that the "individual defendants cannot be expected to respond to allegations this vague which merely employ the word "defendants").

The question of whether Plaintiffs have sufficient alleged their claims is not new to this proceeding. In response to the complaints filed in the *Hillard* and *McGuire* matters, Judge Lemmon granted the defendants' motion for more definite statement and ordered the plaintiffs to provide specific allegations regarding their claims. *Hillard*, 06-2576, Rec. Doc. No. 138 (Feb. 28, 2007 ruling). Despite that ruling, Plaintiffs still have not pled their claims sufficiently.

If the Court does not dismiss the claims against the Manufacturing Defendants, it should order Plaintiffs to amend the Administrative Master Complaint and the underlying complaints to comply with federal pleading standards. At a minimum, Plaintiffs must allege facts such as where each of them lives (i.e., a specific location, not just a state), what type of housing that each lives (or lived) in, the manufacturer of that housing, the VIN or serial number of the housing unit, when Plaintiffs moved in and whether Plaintiffs still live in that housing, along with the circumstances related to Plaintiffs' alleged exposure to formaldehyde. These basic facts will allow the Manufacturing Defendants to prepare a proper response to Plaintiffs' claims.

Furthermore, Federal Rule of Civil Procedure 9(f) provides: "For the purposes of testing the sufficiency of a pleading, averments of time and place are material . . ." In this matter, Manufacturing Defendants require specific allegations of time and place for purposes of establishing venue and jurisdiction and in order to determine whether Plaintiffs' claims are barred

by the applicable statutes of limitations."  Allegations of time and place are necessary in pleading certain types of tort claims.  For example, in a suit for personal injuries caused by the defendant's alleged negligence, the plaintiff has been required to assert specifically the time and place where the injury occurred."  5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1309 (3rd ed. 2004) (discussing Fed. R. Civ. P. 9(f)).

Because Plaintiffs assert claims under the substantive laws of four states, Manufacturing Defendants cannot know whether individual Plaintiffs have causes of action without specifically knowing where each Plaintiff was allegedly injured.  *See Linnabery v. DePauw*, 695 F. Supp. 411, 412 (C.D. Ill. 1988) (in a personal injury tort case, holding that "because . . . the location of Plaintiff's alleged injury is crucial to a determination of whether or not he has a cause of action . . . Plaintiff must provide a more definite statement as to the alleged location of the accident in question").  Additionally, without knowing when each individual Plaintiff was allegedly injured, Defendants cannot know whether each Plaintiff's claim is barred by the applicable statute of limitations.  *See Cowan v. Fid. Interstate Life Ins. Co.*, 89 B.R. 564, 567-8 (E.D. La. 1988) (noting that Rule 9(f)'s primary purpose is to provide a mechanism for the early adjudication of certain defenses, especially the statute of limitations, and stating that "since Rule 9(f) makes allegations of time material, a defendant may raise the limitation defense on a 12(b)(6) motion in [sic] dismiss . . .  In other words, a plaintiff is not relieved from having to make specific allegations of time, when such are material, merely because a defendant may have the option to assert an affirmative limitation defense.").

**VII.   Plaintiffs' Claims Should be Dismissed for Lack of Standing**

As noted in Section V above, the Administrative Master Complaint does not allege a single fact to connect a particular Plaintiff with any of the Manufacturing Defendants.  Because of this critical failure, Plaintiffs' claims should be dismissed for lack of standing.

The United States Constitution limits the federal judicial power to designated "cases" and controversies."  U.S.Const., Art. III, § 2.  In this vein, it is well understood that federal courts may only determine such matters that arise in the context of a genuine "case" or "controversy" within the meaning of Article III.  *DaimlerChrysler Corp. v. Cuno,* 126 S.Ct. 1854, 1861 (2006); *Elk Grove Unified School Dist. v. Newdow,* 124 S.Ct. 2301, 2308 (2004); *SEC v. Medical Committee for Human Rights*, 92 S.Ct. 577, 580 (1972).  In fact, the Supreme Court has repeatedly explained that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Raines v. Byrd,* 117 S.Ct. 2312, 2317 (1997); *see also Simon v. Eastern Kentucky Welfare Rights Organization,* 96 S.Ct. 1917, 1924 (1976).

Notably, the doctrine of standing is an essential part of the case-or-controversy requirement of Article III.  *Lujan v. Defenders of Wildlife*, 112 S.Ct. 2130, 2136 (1992).  As such, "[t]he party invoking federal jurisdiction bears the burden of establishing the elements of standing."  *Lujan*, 112 S.Ct. at 2136.

Standing is employed essentially to refuse to determine the merits of a legal claim on the ground that even though the claim may be correct the litigant advancing it is not properly situated to be entitled to its judicial determination.  Wright & Miller, 13 Fed. Prac. & Proc. Juris.2d § 3531 (2005).  In short, a plaintiff must have standing to sue in order to present a justiciable case or controversy to the court.  *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 102 S.Ct. 752, 758 (1982).  Importantly, the focus in a

determination of standing is on the party, not the claim itself.  *Id.* at 765; *O'Hair v. White*, 675

F.2d 680, 685 (5th Cir. 1982).  In this vein, the Fifth Circuit explained, in *Hill v. City of Houston*,

764 F.2d 1156 (5th Cir. 1985), that:

> [S]tanding involves whether this plaintiff is a proper party to request an adjudication of the particular issue.  This is a separate inquiry from whether the party should prevail.  In fact, it is not proper for the court to consider the likelihood of success on the merits in determining the plaintiff's standing . . . ."

*Hill*, 764 F.2d at 1159-60.

In short, the question of standing is whether the litigant is entitled to advance the

particular claim and to have the court decide the merits of the dispute or of particular issues.

*Allen v. Wright*, 104 S.Ct. 3315, 3324 (1984); *Warth v. Seldin*, 95 S.Ct. 2197, 2205 (1975).

More particularly, as explained by the United States Supreme Court in *International Primate*

*Protection League v. Administrators of Tulane Educ. Fd.*, 111 S.Ct. 1700 (1991):

> Standing does not refer simply to a party's capacity to appear in court.  Rather, standing is gauged by the specific common-law, statutory or constitutional claims that a party presents.  Typically, . . . the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.

*International Primate Protection League*, 111 S.Ct. at 1704.

With regard to the Plaintiffs in the Administrative Master Complaint, not one is identified

as having any connection with any home manufactured by any particular Defendant.  In fact,

there is no allegation that any of the Plaintiffs lived in, visited, or has even seen a unit

manufactured by any particular Defendant.  As such, there is no nexus between any

representative Plaintiff and any Defendant; therefore, no representative Plaintiff has

demonstrated the requisite standing to bring an action against any Defendant.  Therefore,

respectfully, the Manufacturing Defendants posit to this Honorable Court that they should be

dismissed from this matter without prejudice or that the Plaintiffs be ordered to replead,

delineating the connection they claim to a particular manufacturer's product.

## CONCLUSION

As Manufacturing Defendants have established, the following causes of action must be

dismissed as a matter of law:

(1)    Breach of Express Warranty for Property Damage and Personal Injury (Alabama, Mississippi, Texas, and Louisiana);

(2)    Breach of Implied Warranty of Merchantability for Property Damage (Alabama, Mississippi, and Texas);

(3)    Breach of Implied Warranty for Fitness for a Particular Purpose for Property Damage and Personal Injury (Alabama, Mississippi, and Texas);

(4)    All claims barred by the Economic Loss Doctrine (Alabama, Mississippi, Texas, and Louisiana);

(5)    Medical Monitoring (Louisiana, Alabama, Mississippi, and Texas);

(6)    All claims that do not connect a particular Plaintiff to a particular Manufacturing Defendant's product; and

(7)    All claims for which Plaintiffs lack standing.
        Alternatively, if the Court does not dismiss those claims connecting a particular Plaintiff

to a particular Manufacturing Defendant, the Court should order Plaintiffs to amend their

pleadings under Rule 12(e) to provide a more definite statement.

Respectfully submitted:

/s/ Andrew D. Weinstock
ANDREW D. WEINSTOCK
JOSEPH G. GLASS
Duplass, Zwain, Bourgeois, Morton,
Pfister & Weinstock
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Fax: (504) 837-3119
andreww@duplass.com

*DEFENSE LIAISON COUNSEL*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has this date been served on all counsel of record in this proceeding by:

( )   Hand Delivery                     ( )   Prepaid U.S. Mail

( )   Facsimile                         ( )   Federal Express

(XX)   CM/ECF

New Orleans, Louisiana this 19th day of May, 2008.

/s/ Andrew D. Weinstock
ANDREW D. WEINSTOCK