UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                                    MDL NO. 07-1873
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION                                   SECTION "N" (4)

**FAIRMONT HOMES, INC.'S MEMORANDUM IN SUPPORT OF
RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION,
OR ALTERNATIVELY FOR LACK OF SUBJECT MATTER JURISDICTION AND/OR
<u>FAILURE TO STATE A CLAIM, AND FOR OTHER RELIEF</u>**

Fairmont Homes, Inc. ("Fairmont") submits this memorandum in support of its motion to dismiss the claims against it asserted in the Administrative Master Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and alternatively under Rules 12(b)(1) for lack of subject matter jurisdiction and/or 12(b)(6) for failure to state a claim on which relief can be granted.  Because the plaintiffs' claims reveal no basis for the Court to exercise specific or general jurisdiction over Fairmont, and because the Administrative Master Complaint in any event identifies no case or controversy involving Fairmont, and because Fairmont is not named in any underlying suit, but only in the Administrative Master Complaint, the motion to dismiss should be granted.

## I. <u>Allegations Against Fairmont</u>

The plaintiffs' sole specific reference to Fairmont is in paragraph 8(c)(xiv) of the Administrative Master Complaint, which alleges that Fairmont "conducts business in the states of Louisiana, Mississippi, Alabama and Texas, and which manufactured and supplied FEMA

trailers or housing units as defined below pursuant to contracts with FEMA for use in those states." The pleadings do not reveal any specifics of the business allegedly conducted in those states, and do not identify any plaintiff who is alleged to live or to have lived in a Fairmont temporary housing unit. In fact, Fairmont had no meaningful jurisdictional presence in Louisiana, Mississippi, Alabama or Texas, either at the time of Hurricanes Katrina and Rita or now, has no dealers and sells no products in those states, and sold no travel trailers to FEMA.

A small number of Fairmont manufactured homes may have been purchased from dealers outside of the forum state(s) by FEMA, but Fairmont is not aware of any such homes which were actually occupied by any plaintiffs or potential class members. A search of the FRRATS lists provided by FEMA reveals no plaintiffs in a Fairmont unit. A search of the inventories of all FEMA-owned trailers on lists provided by FEMA indicates that FEMA owns Fairmont units that are located only in Frostburg, Maryland (22 homes identified as Fairmont units) and Hope, Arkansas (40 homes), a total of 62 units, none of which have ever been occupied, according to FEMA.

## II.  Personal Jurisdiction – Rule 12(b)(2)

Fairmont is a modular home and manufactured housing business located in Indiana. Fairmont is incorporated under the laws of the State of Indiana, and maintains its principal place of business there.[1]  Fairmont has no manufacturing facilities, and neither owns nor leases any property, in Louisiana, Mississippi, Texas, or Alabama. Fairmont has no offices, telephone numbers, or bank accounts in Louisiana, Mississippi, Texas, or Alabama.[2]

---

[1]  Exh. A, ¶2.

[2]  Exh. A., ¶7.

Fairmont did not contract with FEMA to sell the government any travel trailers after Hurricanes Katrina and Rita.[3]  The lawsuit does not allege that Fairmont sold anything directly to the plaintiffs.

To obtain jurisdiction over Fairmont, plaintiffs have the burden of proving either (1) that the cause of action arose out of Fairmont's purposeful contacts with the potential forum states of Louisiana, Mississippi, Texas, and Alabama, so as to confer "specific jurisdiction," or (2) that Fairmont's contacts with the forum state(s) were "systematic and continuous" so as to confer "general jurisdiction."  Asarco, Inc. v. Glenara, Ltd., 912 F.2d 784, 786 (5th Cir. 1990).  The plaintiffs bear the burden of establishing constitutionally sufficient contacts by Fairmont with the forum state(s) in order to invoke this Court's jurisdiction.  See, e.g., WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989).

### 1.    There is no general jurisdiction over Fairmont.

Where the cause of action does not arise out of a defendant's purposeful contacts with the forum, due process requires that the defendant be engaged in "continuous and systematic contacts" in the forum state in order to support the exercise of general jurisdiction over the defendant.  Dalton v. R & W Marine, Inc., 897 F.2d 1359, 1361-2 (5th Cir. 1990), citing Helicopteros Nacionales de Columbia, S.A. v. Fall, 466 U.S. 408 (1984).

The courts rigorously apply this standard.  For example, in Dalton, the fact that a foreign corporation generated 12.9% of its total revenue from chartering boats to its Louisiana subsidiaries, engaged in advertising that reached Louisiana, and purchased boats at marshals' sales in Louisiana, was not sufficiently systematic and continuous to constitute a general presence in this state.  Dalton, 897 F.2d at 1362.  See also, Bearry v. Beech Aircraft Corp., 818

---

[3]      Exh. A, ¶4.

F.2d 370, 274 (5th Cir. 1987) (foreign manufacturer that had distribution network in forum state consisting of subsidiary and third parties, had a nationwide advertising program, and conducted nearly $250 million in business in the forum state did not have continuous and systematic contacts with the forum state sufficient to support general jurisdiction, where manufacturer had no control over dealers located in the state, was never qualified to do business in the state, had no telephone listing, warehouse, manufacturing facilities, or bank accounts in the state, and deliberately negotiated and consummated all business transactions in another state).

Here, the issue isn't even close. Fairmont has no meaningful jurisdictional presence at all in any of the potential forum states. Clearly, the Court does not have general jurisdiction over Fairmont.

### 2.  There is no specific jurisdiction over Fairmont.

The Court should not exercise specific jurisdiction unless "the defendant has purposefully directed his activities toward the forum and the plaintiff's injury relates to the defendant's contacts with the forum." Villar v. Crowley Maritime Corp., 990 F.2d 1489, 1496 (5th Cir. 1993), cert. denied, 510 U.S. 1044 (1994) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

Jurisdiction is improper unless there is some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum state, and thus invokes the benefits and protections of its laws. Quill Corp. v. North Dakota By and Through Heitkamp, 504 U.S. 298, 306-07 (1992). In addition, these sorts of minimum contacts, as reflected by the nature and quality of a defendant's acts in a forum, must reveal that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); see also, Burger King Corp. v. Rudzewicz, 471 U.S.

462-476 (1985).

Specific jurisdiction requires specific, constitutionally meaningful jurisdictional contacts for each and every claim asserted against a defendant. "Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause. Thus, if a plaintiff's claims relate to different forum contacts of the defendant, specific jurisdiction must be established for each claim." Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 275 (5th Cir. 2006).

The sole specific allegation directed against Fairmont is that it "manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA." (Doc 109 - Administrative Master Complaint, paragraph 8(c)(xiv).)  In fact, Fairmont did not have any contracts with FEMA, and did not sell anything to these plaintiffs.[4]  From the inventory lists, it appears that FEMA may own some Fairmont units, presumably acquired from dealers' lots in other parts of the country because Fairmont has no dealers in the potential forum states. However, the only such Fairmont units appear to be the 22 in Maryland and the 40 in Arkansas. Fairmont is not aware that any of its units made it to the forum state(s), and such has not been alleged by plaintiffs.

Fairmont's relationship with FEMA travel trailer manufacturer Gulf Stream (they share a corporate parent, and Fairmont owns a minority share of Gulf Stream's stock) does not give the Court personal jurisdiction over Fairmont. The law in this circuit is that a subsidiary's contacts with the forum state cannot be imputed to the parent corporation for purposes of establishing

---

[4]       Exh. A, ¶4.

personal jurisdiction over the parent, unless the parent's exercise of control over the subsidiary is so great that the separate corporate existence of the subsidiary is a mere fiction.  <u>See</u>, <u>e.g.</u>, <u>Southmark Corp. v. Life Investors, Inc.</u>, 851 F.2d 763, 773-4 (5th Cir. 1988); <u>Hargrave v. Fibreboard Corp.</u>, 710 F.2d 1154, 1159 (5th Cir. 1983); <u>Dalton v. R & W Marine, Inc.</u>, 897 F.2d 1359, 1363 (5th Cir. 1990).  The relevant factors in the Fifth Circuit – none of which have been pleaded by the plaintiffs – include (1) the percentage of the parent's ownership of the subsidiary's stock; (2) whether the corporations have overlapping directors and officers; (3) whether the corporations maintain separate accounting systems and bank accounts and file separate tax returns; (4) whether the parent exercises complete authority over the subsidiary's general policy; and (5) whether the subsidiary exercises complete authority over its daily operations.  <u>Dalton</u>, 897 F.2d at 1363; <u>Southmark</u>, 851 F.2d at 773.

In <u>Hargrave</u>, the Fifth Circuit noted that "so long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other . . . we have noted often that one hundred percent stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations . . . generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes . . . the degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship."  710 F.2d at 1160.

Judge Berrigan in <u>Lindy Investments, L.P. v. Shakertown Corp.</u> applied the <u>Hargrave</u> factors and ruled that a parent corporation was not subject to this Court's jurisdiction in a suit relating to the subsidiary's allegedly defective product, even though (1) the parent corporation owned 100% of the subsidiary's stock; (2) the corporations allegedly had overlapping officers

and directors; (3) the corporations allegedly commingled funds, the parent company took loans from a line of credit for the subsidiary and the subsidiary later paid down the parent's line of credit; (4/5) the parent corporation had only a single director, who allegedly controlled the finances of the subsidiary, setting its budget, reviewing its performance and holding a veto over expenditures. 1996 WL 497191, pp. 2-3 (E.D. La. 8-30-1996). The two corporations shared the same address and telephone number, and allegedly transferred vehicles from subsidiary to parent for no consideration. Id. at 3. The parent held the patents for the subsidiary's products and held the trademark on the subsidiary's corporate name. Id. The defendants contended that commingled funds were properly accounted for, there were no common directors or officers in the relevant time period, and that the parent did not control the subsidiary's daily operations during the relevant time period. Judge Berrigan concluded:

> "The Court finds that the plaintiffs have failed to make a prima facie showing of personal jurisdiction over Vanguard. The showing made by the plaintiffs falls short of sufficiently establishing that [parent corporation] Vanguard controlled the day-to-day business operations and affairs of [subsidiary] Shakertown/Winlock. Instead, the facts presented are substantially identical to those facing the Hargrave court: the parent owned subsidiary stock, the companies had, at best, few common officer and directors, corporate formalities were scrupulously observed, the companies maintained separate bank accounts and budgets and did not improperly commingle assets so as to call for the exceptional remedy of treating the parent and subsidiaries as one. 'Indeed, ... the Fifth Circuit [has] refused to disregard the corporate entity on facts that were much stronger than those [the plaintiffs] rely on.' *Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1497 (5th Cir.1993), *cert. denied,* 510 U.S. 1044 (1994). The contacts between Vanguard and Shakertown/Winlock more resemble those between a parent company and its subsidiaries."

Id. at 3.

The evidence clearly establishes that Fairmont and Gulf Stream are distinct jurisdictional entities. Fairmont owns less than half of Gulf Stream's stock; the two companies maintain separate bank accounts and have their own employees; and the companies exercise separate

authority over their operations.[5]

Under the relevant standards, it is clear that Fairmont does not have constitutionally sufficient contacts with the forum state(s).  The personal jurisdiction motion should be granted.

### III.     Law and Argument -  Fairmont's Rule 12(b)(1) and 12(b)(6) Motions[6]

Fairmont Homes is named as a defendant in the Administrative Master Complaint (Doc. 109), but is not named in any underlying suit.  Fairmont was once a party to the McGuire litigation, which is part of this MDL proceeding, but Fairmont was voluntarily dismissed from that litigation by plaintiffs' counsel after Fairmont filed a motion asserting a lack of personal jurisdiction, and other defenses, including many based on the facts and arguments listed above. Fairmont was not included as a defendant in the second Pujol suit (No. 08-3217), filed in this Court on May 9, 2008, which was intended to establish an underlying suit for defendants in the Administrative Master Complaint, but for whom there was no underlying lawsuit.  No plaintiff has been identified in pleadings as a resident of a Fairmont home, and to the knowledge of undersigned counsel, no plaintiff's attorney has identified a client in a Fairmont unit to date.

### 1.      Rule 12(b)(1) – Subject Matter Jurisdiction

The lack of an underlying suit, and the lack of a plaintiff in a Fairmont unit, means there is no case or controversy involving Fairmont, and therefore no subject matter jurisdiction over claims against Fairmont because no plaintiff has standing to bring such a claim.  *See Matte v. Sunshine Mobile Homes, Inc.,* 270 F. Supp.2d 805, 813-14 (W.D. La. 2003), citing *Warth v. Seldin*, 422 U.S. 490, 498, 498-499, 94 S. Ct. 2197 (1975).

---

[5]      Exh. A, ¶¶ 5-6.

[6]      As stated in the accompanying Motion, Fairmont addresses these issues only in the event the Court finds the personal jurisdiction motion is not well-founded.  By order of the Court, all preliminary motions are to be filed on or before May 19, 2008, and the Court has instructed the defendants to assert issues such as personal jurisdiction and lack of service, followed by other motions, to ensure preservation of the jurisdictional defenses.

In *Matte*, the plaintiffs brought a class action based on allegedly defective mobile homes manufactured by a variety of defendants.  Similar to the Administrative Master Complaint, the complaint in *Matte* failed to allege a specific connection between any particular plaintiff and any particular defendant.  270 F. Supp.2d at 814-816.

The defendants in *Matte* filed motions to dismiss under Rules 12(b)(1), (2) and (6).  The Court found that it lacked subject matter jurisdiction because the plaintiffs lacked constitutional standing to bring their claims, because none could state with certainty that any particular one of them lived in a mobile home manufactured by a particular manufacturer.  The court rejected the plaintiffs' arguments that the Court should somehow relax the standing requirements because the plaintiffs filed their claims as a class action, explaining: "The Supreme Court has spoken clearly on this issue: That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by another, unidentified member of the class to which they belong and which they purport to represent.'"  *Id*. at 821 (internal citations omitted). For the same reasons articulated in *Matte*, this Court should dismiss Plaintiff's claims against Fairmont pursuant to Rule 12(b)(1) for lack of jurisdiction.

### 2.      Rule 12(b)(6) – Failure to State a Claim

Alternatively, and for the same factual reasons, plaintiffs fail to state a claim for which relief can be granted against Fairmont.  There is no underlying suit against Fairmont, and no plaintiff or identified putative class member in a Fairmont unit.  Therefore, the pleadings fail to state a claim against Fairmont.  This issue is presented in more detail in the master motion filed on behalf of the Manufacturing Defendants, in which Fairmont joins.

Also, as noted above, Fairmont does not own a majority of Gulf Stream's stock, but even

status as a true parent company of Gulf Stream would not give rise to a cause of action for the alleged fault of Gulf Stream, either under Louisiana law or under the laws of Indiana, where Fairmont and Gulf Stream are incorporated.  La. R.S. 12:93(B); Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164, 116-68 (La. 1991); Indiana Code § 23-1-26-3(b) (1993); Aronson v. Price, 644 N.E.2d 864, 867-68 (Ind. 1994) (applying Indiana law).

The laws of the state of incorporation determine whether a corporate veil should be pierced.  Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 646-47 (5th Cir. (La. ) 6/12/2002).  Because Fairmont is incorporated under Indiana law, Indiana law should govern whether the corporation's existence can be ignored to impose liability on shareholders.  The Indiana Supreme Court explained Indiana law in Aronson:

> [T]he burden is on the party seeking to pierce the corporate veil to prove that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice.
> * * *
> In deciding whether a plaintiff has met this burden of proof, an Indiana court considers whether the plaintiff has presented evidence showing: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.

644 N.E.2d at 867.  Plaintiffs have not made any specific allegations that would support the complete disregard of Fairmont's separate legal existence, and the imposition of liability on Fairmont, under either Indiana or Louisiana law.

Rule 12(b)(6) is the appropriate vehicle for dismissing such claims.  In Capital Parks, Inc. v. Southeastern Advertising and Sales, the Fifth Circuit upheld a district court's grant of a 12(b)(6) motion because, among other reasons, the plaintiff failed to plead facts indicating that

piercing of the corporate veil would be appropriate.  30 F.3d 627,630 (5th Cir. (Tex.)1994).  In HWB, Inc. v. Metalpro Industries, L.L.C., Judge Africk of this Court ruled that Rule 12(b)(6) required dismissal of a suit against the owner of an interest in a limited liability company, where there were no allegations that the owner was acting in a personal capacity distinct from his role as manager of the company.  2006 WL 1581329, pp. 2-3 (E.D. La. 6/7/2006).

Accordingly, the claims against Fairmont should also be dismissed because plaintiffs have not alleged any facts or legal theory that could result in liability for Fairmont.

## V.  Conclusion

Fairmont has no jurisdictional presence in the potential forum states and should be dismissed from this matter for lack of personal jurisdiction.  Fairmont and Gulf Stream are separate entities, and only Gulf Stream contracted with FEMA and sold travel trailers to FEMA. Fairmont Homes, Inc. requests, based on the allegations in the Administrative Master Complaint and the evidence submitted, that the claims against it be dismissed for lack of personal jurisdiction, and because the Administrative Master Complaint fails to establish subject matter jurisdiction for lack of a stated claim against Fairmont, and further fails to state a claim against Fairmont upon which relief can be granted.

Respectfully submitted,

  /s/ Timothy D. Scandurro
**SCANDURRO & LAYRISSON, L.L.C.**
TIMOTHY D. SCANDURRO, Bar #18424, TA
DEWEY M. SCANDURRO, Bar #23291
607 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 522-7100

-and-

**DUPLASS, ZWAIN, BOURGEOIS,**
  **MORTON, PFISTER & WEINSTOCK**
Andrew D. Weinstock, Esq.
Joseph Glass, Esq.
3838 N. Causeway Blvd., Suite 2900
Metairie, Louisiana  70002

*Counsel for Fairmont Homes, Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion has been served on all known counsel via CM/ECF or United States Postal Service, first class mail, properly addressed and postage prepaid this day, May 19, 2008:


  /s/ Timothy D. Scandurro
TIMOTHY D. SCANDURRO

X:\Docs\4206 GULF STREAM\PLDGS\MEMO IN SUPPORT OF MTN - LACK OF PERSONAL JURISDICTION.doc