UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER  　　　　　　　　　MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION  　　　　SECTION "N-4"

　　　　　　　　　　　　　　　　　　　　JUDGE ENGELHARDT
　　　　　　　　　　　　　　　　　　　　MAG. JUDGE ROBY

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

<u>SUPPLEMENTAL MEMORANDUM OF PLAINTIFFS'
STEERING COMMITTEE (PSC) IN SUPPORT
OF MOTION TO COMPEL</u>

**MAY IT PLEASE THE COURT:**

On April 1, 2008, the Plaintiffs' Steering Committee (PSC) filed a Motion to Compel the defendant United States/FEMA to produce certain information under subpoena, *to-wit*: FEMA's list of the names and addresses of all putative class members. Defendant filed an opposition memorandum, and the motion was orally argued (in chambers) before the Court. The Court subsequently denied the motion in part, but reserved ruling on the question whether the referenced list should be produced for the purpose of issuing a notice to some or all putative class members, pending a review by the Court and the parties of the written records of all prior formaldehyde-related communications to FEMA emergency housing residents initiated by FEMA or other federal agencies. Counsel for the U.S./FEMA now has furnished these records.

At the status conference and hearing of May 9, 2008 the Court invited oral argument by

-1-

the parties regarding the implications of these documented communications between the Government and putative class members insofar as plaintiffs' motion to compel is concerned. Following same, the Court ordered supplemental written memoranda on the issue.

## I. CASE LAW RECENTLY CITED BY DEFENDANT

Although it is understood that this supplemental memorandum on plaintiffs' behalf is not for the purpose of restating legal arguments already presented, plaintiffs have requested the opportunity to address a case decision cited for the first time by counsel for the Government in the oral argument of May 9, 2008. Having now considered this case decision, the PSC welcomes the Court's attention to it, and respectfully submits it is further jurisprudential support for plaintiffs' motion.

In *Sanft v. Winnebago Industries, Inc.*, 216 FRD 453 (M.D. Iowa 2003), a class action was brought under ERISA against an employer (Winnebago) for having improperly reduced benefits under a deferred compensation plan for employees. The district judge denied certification on the ground that plaintiffs had failed to satisfy the numerosity requirement of Rule 23(a)(1) of the Federal Rules of Civil Procedure (FRCP). *See* 216 FRD at 456.

Plaintiffs filed a motion to reconsider the denial of class certification, and, in the alternative, sought a district court order requiring the defendant to provide plaintiffs' counsel with a current list of the names and addresses of putative class members (deferred compensation plan participants), in order to facilitate a Court-directed notice to these absent class members. While not explicit in the reported decision, the clear inference is that the intended notice to these absent class members would be to the effect that the district judge had denied class certification, since plaintiffs also requested an order that each claimant would have 90 days to join the

litigation as an additional party, starting from the date of the requested notice. *See* 216 FRD at 456.

The district court denied the motion to reconsider its decision on class certification but granted the plaintiffs' motion to compel production of the putative class member list so that the requested notice could be sent, invoking the discretionary notice authority of FRCP 23(d). *See* 216 FRD at 460-61.

Defendants apparently cite *Sanft* for the proposition that a discretionary Rule 23(d) notice of the type sought herein, properly should occur only after a denial of class certification.[1] *Sanft*, however, does not hold that a pre-certification discretionary notice under Rule 23(d) is unwarranted. Indeed, the case could not stand for this proposition, since the only request made by plaintiffs in the case was a request made after a decision denying class certification. As plaintiffs previously have pointed out, there is simply nothing in the language, Advisory Notes, or scholarly commentary associated with Rule 23, which restricts discretionary notice orders to situations following a denial of class certification. The pertinent provision in Rule 23 which allows the notice requested by plaintiffs, makes clear that the district court's authority can be invoked at any time "[i]n conducting an action under this rule..." Rule 23(d)(1), FRCP.

The relevance of *Sanft* is its justification for discretionary notice to absent class members on the ground that notification of an existing legal case may be necessary to protect these class members against the risk of inaction on their part. The language of the Court in authorizing the

---

[1] Counsel for the Government at oral argument suggested (not for the first time) that the notice proposed by the PSC is merely an attempt at "solicitation of cases." This objection, however, is utterly inconsistent with counsel's reliance upon *Sanft*, inasmuch as the mere timing of the notice directed in *Sanft* (before or after a decision on certification) in no way cures a supposed objection to solicitation.

issuance of a Rule 23(d)(2) notice in *Sanft* is instructive in this regard:

> Here, as a practical matter, the circumstances of this case pose a significant risk of prejudice to putative class members who do not receive notice of this order [denying certification].... If the putative class members do not receive notice of this order they may permit the statute of limitations to run on their claims. The Court is therefore of the opinion that notice of this order should be given to putative class members.

216 FRD at 460.

*Sanft*, then, supports plaintiffs' position that a Rule 23(d) notice to absent class members <u>is</u> justified to the extent class members will be prejudiced in not being made aware of their opportunity to assert claims in this MDL. The issue is timing; not <u>whether</u> such a notice is given, but <u>when</u>.

The question of timing, however, is not resolved by *Sanft*, a case in which pre-certification notice was not even at issue. The question of timing is only answerable based on an analysis of the facts and circumstances of this case; and plaintiffs submit that these weigh heavily in favor of a notice prior to this Court's class certification decision. The "significant risk of prejudice to putative class members" referred to in *Sanft* will be avoided in this case only through such a pre-certification notice, because here, unlike in *Sanft*, <u>both</u> of the express objectives of a discretionary Rule 23(d) notice are implicated: (1) the protection of class interests <u>and</u> (2) the fair conduct of the litigation [Rule 23(d)(1)(B)].

Here, the MDL will be more fairly and efficiently conducted (in terms of the potential for global resolution) if comprehensive claims data is obtained before this Court's expected ruling of class certification in 6 to 8 months. Waiting to issue a notice until after a decision on certification — should certification be denied — will virtually assure that settlement evaluation,

merits discovery encompassing all manufacturers, and truly representative bellwether trials all will be delayed by the prospect of a largely incomplete and unknown "universe" of actual claimants. If the 90-day deadline for joinder requested in *Sanft*, for example, were put into effect at the end of this year or early part of next year (presumably the soonest time any denial of certification by this Court would occur), it will be the spring of 2009 before even the identities of all MDL claimants are known, much less Plaintiff Fact Sheets executed.

As to the Rule 23(d) objective of protecting absent class members, a key factual distinction between this case and *Stanf* further confirms the need for a pre-certification notice herein. In *Stanf*, there is no indication that the defendant was having regular, ongoing communications with putative class members about issues raised in the litigation, much less about key elements of the claims of toxic exposure being asserted in the class action against the defendant. In the case at hand, however, an important reason why this Court should not wait to direct the class notice until after a decision on certification, is that the defendant Government now has produced written evidence of its communication with the putative class which call into serious question whether the ability of absent class members to make informed decisions about participating in this MDL, has been — and continues to be — undermined by the defendant Government's messages about formaldehyde exposure. This issue is more fully developed below.

## II. DEFENDANT COMMUNICATIONS WITH CLASS MEMBERS

(A)     VIEWS OF PLAINTIFFS' EXPERT

As a general proposition, it stands to reason that the citizens who have been displaced by

Hurricanes Katrina or Rita and who have been dependent upon the federal government for emergency housing, are likely to view federal agencies as both authoritative and reliable sources of information regarding the health effects of formaldehyde exposure in these housing units. The question that must be asked is whether these same citizens would be caused to accept what these agencies are telling them about formaldehyde exposure, if it were disclosed that the United States/FEMA is a named defendant in this Multi-District Litigation class action (in which more than 17,000 claimants have retained counsel), and/or that, according to its own admission, FEMA has now received approximately 4,000 Form 95 administrative claims under the FTCA as a result of alleged formaldehyde exposure in these units. Yet, there does not appear to be a single mention of the pendency of the litigation or of the status of the U.S./FEMA as an adverse party herein, in any of the communications between federal agencies and putative class members. This omission is glaring, given that the communications at issue concern the very thing (formaldehyde exposure/risks) that gives rise to the legal claims asserted against the U.S./FEMA.

One of plaintiffs' experts in this matter is Mary DeVany, an industrial hygienist for over thirty years who is both a Certified Safety Professional (CSP) in Comprehensive Practice and a Certified Hazardous Materials Manager at the Master Level (CHMM). Ms. DeVany has reviewed a representative sample of some of the written material furnished by the Government evidencing the communications which agencies have had with class members. Her report on same, dated May 15, 2008, is attached hereto as Exhibit I.

One of the reactions of Ms. DeVany to these communications is that FEMA's failure to disclose the conflict of interest that arises from its status as a source of health risk information for class members on the one hand, and its simultaneous status as an adverse party in the litigation

on the other, may be viewed as a breach of the ethical duty of the scientists and medical personnel who have contributed to these materials. *See* Exhibit I at p. 3-4.[2]

In addition, there are any number of instances in these communications where formaldehyde is portrayed by the Government as both a common substance or a pollutant which accounts for symptoms similar to those associated with the "common cold," and a substance encountered in everyday life and present in the human body. In isolation, these statements may not be problematic, but there is little doubt that, in context, they suggest to the exposed person that the risk of formaldehyde exposure in these housing units should not be seen as a serious threat to health. Ms. DeVany addresses this issue in her attached report, with regard to both the failure in some of the materials to truly provide information promised in the title of the document, and the suggestion in other materials that exposure to formaldehyde in these confined housing unit spaces is no more significant than the exposure that occurs in the open-air daily activities of everyday life. *See* Exhibit I at pp. 1-2.

Perhaps more troubling is the failure of certain materials to fully disclose the health effects of formaldehyde, and to minimize the risk of this exposure, even when that is the precise subject of the communication. Recurrent in the material, specifically in those places where attempts are made to answer resident questions about how formaldehyde might affect the person's health, are assessments of different levels or gradients of risks associated with the specific "parts per billion" testing levels in those cases where CDC test results have been shared

---

[2] Even if this Court ultimately should decide not to promulgate a notice to class members prior to the decision on class certification, it should consider directing FEMA to make a disclosure in each and every communication with class members about the fact that the U.S./FEMA is named as a defendant in this litigation.

with residents. Ms. DeVany notes in this regard that "no mention is made that overexposure to formaldehyde, especially in children, can cause changes to the immune system," and, further, that no specific mention is made of the fact that exposure also can increase the risk of both pharyngeal and brain cancer. *See* Exhibit I at pp. 2-3. These obviously are serious health issues; the failure of the Government to make mention of them in the course of discussing test results is cause for profound concern on the part of plaintiffs' counsel. In the context of Rule 23(d)/*Sanft*, the PSC submits that these omissions in fact give rise to potential legal prejudice to putative class members, should they later be called upon to formally decide upon participation in these proceedings. Are they expected to make such a critical decision on the basis of incomplete, if not misleading, information from an adverse party in the litigation?

As the PSC has noted previously, the communications to putative class members from federal agencies clearly has extended beyond neutral statements of scientific fact to subjective interpretation and assessments of risk. Nowhere is this more evident than in the report on CDC test results; and Ms. DeVany criticizes the Government's interpretation of the "ppb" levels and associated risks in its explanation of these results. *See* Exhibit I at p. 3. These are instances of concern for class counsel, inasmuch as residents have no reason to challenge, must less suspect, the Government's interpretations and assessments of risk.

(B)  OTHER NOTABLE COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS FOUND IN THE PROVIDED MATERIALS

In addition to the specific elements of the Government communications with putative class members noted by Ms. DeVany, *supra*, the following also should be considered by the Court in deciding the issue at hand:

In the provided materials, putative class members are told by FEMA that "[o]ver time, formaldehyde goes away and the odors and the effects decrease or disappear." Title #1, Doc. No. FEMA 09-000387. As this Court is aware, plaintiffs' claims in this litigation are that certain health effects of exposure to formaldehyde may be permanent. It is patently unfair that absent class members now have been advised by an adverse party that the effects of formaldehyde completely "disappear" over time.

As Ms. DeVany notes, among the messages from federal agencies to residents are that formaldehyde is commonplace in the environment and that symptoms of formaldehyde exposure may be comparable to those associated with the flu or the "common cold." The fuller extent to which these messages have been conveyed are in the following materials: Title #5, at Doc. No. FEMA 09-000388; Title #10, at Doc. No. CDC- 000153; Title #28, at Doc. No. CDC-000011; Title #33, at Doc. No. FEMA 09-000385; Title #37, at Doc. No. CDC-00099; and Title #42, at Doc. No. FEMA 10-000376.

The instances in the communications where the Government sets forth its interpretations of the formaldehyde exposure risk, usually by setting forth "ranges" of risks corresponding to formaldehyde concentration, are numerous and recurrent: Title #24, at Doc. Nos. CDC-000146-148; Title #25, at Doc. Nos. CDC-000161-162; Title #29, at Doc. No. CDC-000117; Title #30, at Doc. No. CDC-000126; Title #31, at Doc. No. CDC-000138; Title #34, at Doc. Nos. FEMA 09-000381-382; Title #36, at Doc. No. CDC-00090; Title #37, at Doc. No. CDC-000104; and Title #42, at Doc. No. FEMA 10-000377.[3]

---

[3]This latter communication, in explaining why there "is not a single number that will tell us if your mobile home's level is high or low," advises putative class members that "there are no laws or regulations for formaldehyde...." This is a remarkable assertion to a lay person, who by

Finally, to put into proper context the conflict of interest concern raised by the PSC and Ms. DeVany, the Court is referred to the numerous places in these communications where class members are assured that a federal agency will answer their health-related questions regarding formaldehyde exposure, and generally be the source for seeing to it that they receive proper guidance in regard to their concerns of exposure. *See* Title #2, at Doc. No. FEMA 09-000409 [CDC toll-free phone number given to anyone inquiring with "medical questions"]; Title #3, at Doc. No. FEMA 09-000403 [*id.*]; Title #4, at Doc. No. FEMA 10-000378 [CDC is "readily available to answer any health related questions you may have"]; Title #6, at Doc. No. FEMA 10-000388 [direct referral to CDC for anyone calling to report health issues related to formaldehyde]; Title #12, at Doc. No. CDC-000154 [gives toll-free number for CDC to learn more about "indoor air quality and health"]; Title #13, at Doc. No. CDC-000181 [*id.*]; Title #14, at Doc. No. CDC-000165 [*id.*]; Title #17, at Doc. No. CDC-000158 [pledges that FEMA and CDC are working together "to find out whether there was formaldehyde" in the trailers]; Title #19, at Doc. No. CDC-000167 [toll-free number for CDC for more information about indoor air quality in trailers]; Title #20, at Doc. No. CDC-000170 [invites residents to "talk one-on-one with CDC scientists about the results of testing for formaldehyde...."]; Title #21, at Doc. No. CDC-000082 [promotes public meetings with FEMA and CDC to discuss formaldehyde test results and "other health-related information"]; Title #23, at Doc. No. FEMA 09-000390 [announces that CDC has analyzed test results, which are not final, and promises that "CDC will share more information over the next several weeks"]; Title #28, at Doc. Nos. CDC-000008-9

---

definition is part of a pending MDL class action claiming that the dangerous levels of formaldehyde in these trailers for which FEMA is at least partly accountable, do indeed constitute breaches of numerous legal duties and requirements of law.

[directs callers to discuss with FEMA any "compensation concerns" related to formaldehyde exposure]; Title #28, at Doc. No. CDC-000016 [assures residents that CDC and FEMA will "work with [them] to take steps to protect the health of everyone"]; Title #38, at Doc. No. FEMA 09-000426 [in answer to question about whether FEMA will pay medical expenses related to formaldehyde exposure, response is that FEMA "is not authorized" to do so "[a]t this time....," obviously leaving open the possibility that FEMA may do so in the future]; Title #41, at Doc. No. FEMA 10-000375 [states position that FEMA will not be paying medical expenses "at this time," but promises class member that requests will be documented "in the event medical cost assistance becomes available in the future"].

      The PSC wishes to emphasize that it does not oppose or criticize the efforts of appropriate federal agencies to assist these trailer residents, specifically those who, on their own initiative, contact the agencies with questions or concerns about formaldehyde exposure. Nor is it the intent of this motion to secure an order that any such assistance efforts cease and desist. Rather, the PSC submits that a Rule 23(d) notice is needed at this time to alert absent class members as to the existence of this litigation in which the Government is a defendant.[4] If one of the fundamental objectives of a Rule 23(d) notice is to protect absent class members, it is difficult to see how that protection does not warrant such information being communicated

---

[4] It is acknowledged that FEMA does advise of the right to counsel in these communications, but does not do consistently, and appears to do so only in specific response to an individual asking about the right to sue FEMA. *See* Title #28, at Doc. No. CDC-000013. The PSC is not simply concerned about absent class members who already have an interest in bringing legal action against FEMA. It has a broader concern for all class members who are in regular contact with the Government about formaldehyde exposure, and who may not be aware of this MDL case, of the Government's status as a defendant in this case, and of their right to participate in the case through the filing of a claim form (PFS).

-11-

immediately to identifiable individuals on a list or lists in FEMA's custody at this time.

### III. CONCLUSION

The PSC suspects it will be the position of defendants that this motion to compel requires an evidentiary hearing, so that the Court can make a factual finding whether the Government communications with class members have been prejudicial. Respectfully, however, no such hearing is needed. The written communications themselves, of course, should be made part of the record. Based on this record alone, the attached report of Mary DeVany serves to confirm what already may be deduced from these written communications, *to-wit*: (1) absent class members have been in regular communication with an adverse party about that party's subjective assessment of a fundamental issue in this litigation (formaldehyde exposure and the health effects of same); (2) virtually nowhere in these communications with class members does the adverse party disclose that it is a defendant in these proceedings, giving rise to a self-evident conflict of interest; and (3) in being repeatedly invited to rely upon not just neutral statements of fact but an adverse party's subjective assessments and "ranges" of health risks, and in being repeatedly invited to look to a federal agency (whether it is FEMA or CDC) for further answers to concerns about the health risks of formaldehyde exposure, putative class members already have been affected in terms of their ability to make informed choices regarding this litigation.

For the foregoing reasons, the PSC respectfully reurges its motion to compel, so that the FEMA list of putative class members can be furnished to the Court and a Court-Appointed Notice Administrator, and an appropriate Rule 23(d) notice sent to these individuals prior to the Court's decision on class certification.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**


BY:    s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        gmeunier@gainsben.com


        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        jwoods@gainsben.com



**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON, #9938
        RONNIE PENTON, #10462

## CERTIFICATE OF SERVICE

      I hereby certify that on May 19, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                  s/Gerald E. Meunier
                                  GERALD E. MEUNIER, #9471