**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | ) | MDL NO. 07-1873 |
| FORMALDEHYDE PRODUCT | ) | |
| LIABILITY LITIGATION | ) | SECTION "N-4" |
| | ) | |
| | ) | JUDGE ENGELHARDT |
| | ) | |
| THIS DOCUMENT IS RELATED TO | ) | MAG. JUDGE ROBY |
| THE ADMINISTRATIVE MASTER | ) | |
| COMPLAINT | ) | |

**MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
**ADMINISTRATIVE MASTER COMPLAINT**
**ON BEHALF OF NEWLY ADDED DEFENDANTS**
**CMH MANUFACTURING INC., SOUTHERN ENERGY HOMES, INC.,**
**GILES INDUSTRIES, INC., SUNRAY RV, LLC,**
**PALM HARBOR MFG., LP, AND**
**PALM HARBOR ALBEMARLE, LLC**

Newly added Defendants CMH Manufacturing, Inc., Southern Energy Homes, Inc., Giles Industries, Inc., SunRay RV, LLC, Palm Harbor Mfg., LP and Palm Harbor Albemarle, LLC (collectively hereinafter referred to as "New Defendants") hereby file this memorandum of law in support of their Motion to Dismiss Plaintiffs' Administrative Master Complaint.

## I.      INTRODUCTION

Plaintiffs have failed to satisfy their burden of establishing Article III standing against the New Defendants.  As a result, this Court does not have subject matter jurisdiction over Plaintiffs' claims against the New Defendants.  This civil action must consequently be dismissed against the New Defendants.

Rather remarkably, Plaintiffs' Administrative Master Complaint ("AMC") does not even attempt to allege a single, specific allegation, link or connection between any named Plaintiff and any of the New Defendants filing this motion.  Instead, through the AMC, the putative Plaintiff class as a whole has improperly asserted vague, amorphous claims against an entire "industry." In this regard, the AMC totally disregards the constitutional limitations on this Court's jurisdiction, basic precepts of American jurisprudence, the common law and the Federal Rules of Civil Procedure.  As such, the AMC is inherently defective and should be dismissed.

Plaintiffs' AMC is fatally flawed and must be dismissed for four independently sufficient reasons.  First, Plaintiffs have not alleged the requisite Article III constitutional standing against the New Defendants specifically.  Plaintiffs do not even attempt to assert specific allegations of individualized injury proximately caused by any specific New Defendant.  Second, Plaintiffs' AMC filing is a fictitious procedural creature with no basis or support in the Federal Rules of Civil Procedure or the Rules of Procedure of the Judicial Panel on Multidistrict Litigation or its enabling statute.  Third, the named Plaintiffs have improperly joined whatever individual claim each may theoretically have against a specific Defendant with claims that other Plaintiffs may or

01638819.6

may not have against other Defendants and have failed to demonstrate any common evidentiary link between either Plaintiffs' claims or the Defendants.[1]   Fourth, New Defendants herein assert many standard Rule 12 defenses and expressly join in those presented in the Motion to Dismiss of the Manufacturing Defendants filed concurrently herewith.   Accordingly, and by incorporation and adoption of the motions to dismiss filed by all other Defendants, New Defendants respectfully request that this Court dismiss New Defendants from this action.

## II.    STATEMENT OF MATERIAL FACTS

For purposes of this motion, the relevant pleading facts are simple and uncontested.

Referred to as part of the "FEMA Trailer litigation," Plaintiffs' AMC purports to be a class action on behalf of persons residing or living along the Gulf Coast of the United States in travel trailers, park models, and manufactured homes (hereinafter collectively, "housing units") provided by FEMA after Hurricanes Katrina and Rita in August and September 2005.  (Doc. No. 109, p.26 at ¶¶ 17-25.)   Plaintiffs allege injuries attributable to purportedly high levels of formaldehyde contained in the housing units, which they contend were neither designed nor constructed in accordance with "reasonably precise" Government specifications.  (*Id.* at ¶¶ 26-29.)

As early as May 1, 2006,[2] Plaintiffs initiated the FEMA Trailer Litigation through separate lawsuits against certain Defendants in the Louisiana federal district courts.  Thereafter, Plaintiffs in one action pending in the Eastern District of Louisiana moved, pursuant to 28 U.S.C. Section 1407, to centralize this litigation for coordinated and consolidated pretrial proceedings in

---

[1]  Plaintiffs' AMC might be likened to "all automobile drivers in the U.S." suing "all automobile manufacturers in the U.S." for any injuries sustained as a result of driving the automobiles.  This would prima facie constitute improper joinder.

[2]  *See Hillard, et al v. United States of America, et al,* 2:06-cv-02576, previously pending in the United States District Court, Eastern District of Louisiana.

the Eastern District of Louisiana.   Over objections, the United States Judicial Panel on Multidistrict Litigation granted Plaintiffs' motion and issued a Transfer Order pertaining to three actions previously pending in the Eastern District of Louisiana and another previously pending in the Western District of Louisiana.  Since the issuance of the Transfer Order, a substantial number of additional "tag along" actions, which were also initiated in various state and federal courts, have been removed and/or transferred to this Court.

In Pre-Trial Order No. 2, this Honorable Court directed Plaintiffs' counsel to "file a consolidated Master Complaint by February 29, 2008.  The Master Complaint shall incorporate and supercede all pending actions and those subsequently filed, removed, or transferred to this Court as part of this proceeding."  Instead, Plaintiffs' counsel, on March 14, 2008, filed directly in the MDL proceeding the AMC that purportedly added the New Defendants to the litigation. There is no substantive or procedural basis for such an independent, direct filing in an MDL proceeding.  Further and importantly, not a single New Defendant had been named as a party defendant in any civil action previously commenced and transferred to this MDL proceeding.

### III.    MOTION TO DISMISS STANDARD

In 2007, the United States Supreme Court significantly altered the standard for federal courts to use in deciding a motion to dismiss.  *See Bell Atlantic v. Twombly,* 127 S. Ct. 1955 (2007) ("*Twombly*").  Pre-*Twombly*, claims were dismissed only if the court found that a plaintiff could prove "no set of facts" that would entitle him to relief.  *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  *Twombly* retired the *Conley* "no set of facts" language, *Twombly*, 127 S. Ct. at 1969 ("[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard."), and ushered in a new "plausible claim" pleading standard.  *Id.* at 1974.  The Supreme Court held in *Twombly* that in order to survive a motion to dismiss, a plaintiff cannot

simply set forth conclusory allegations of the bare elements of a cause of action. *Id*. at 1964-65 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .") (citations omitted). Instead, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 127 S. Ct. at 1965 n.3. A plaintiff must allege "enough facts to . . . . nudge[] [his] claims across the line from conceivable to plausible" in order to prevent the dismissal of the complaint. *Id*. at 1974.

The Fifth Circuit has subsequently embraced *Twombly*'s "plausible claim" requirement. *See e.g., Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) ("*Guidry*") ("The plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face'") (citing *Twombly*); *Samford v. Staples,* 249 Fed. Appx. 1001, 1003-04 (5th Cir. 2007) (holding conclusory allegations insufficient to overcome motion to dismiss under *Twombly*).

## IV.   ARGUMENT

Among the over sixty-five (65) identified Plaintiffs in this case, not a single one alleges he or she ever lived in a specific housing unit manufactured by any New Defendant. (Doc No. 109). Not a single Plaintiff alleges a specific physical injury. Not a single Plaintiff alleges that his specific injury was proximately caused by a specific New Defendant.

In sum, the AMC pleads **absolutely no connection** between New Defendants and the named Plaintiffs. Instead, *all* of the Plaintiffs attempt to collectively plead against all Defendants, including the New Defendants, the following "product liability" claims, covered in nine counts, under: (i) the Louisiana Products Liability Act, (ii) Mississippi Code Annotated Section 11-1-63, (iii) the Alabama Extended Manufacturer's Liability Doctrine, Code of

Alabama Section 6-5-521 (2005), and (iv) Texas Product Liability Law.  As set forth below, all of these claims against New Defendants should be dismissed.

## A.   PLAINTIFFS LACK ARTICLE III STANDING TO ASSERT CLAIMS AGAINST NEW DEFENDANTS.

### 1)   Plaintiffs' Allegations Patently Fail to Satisfy The Constitutionally Minimum Requirements for Article III Standing.

#### a)   Article III Standing is a Threshold Jurisdictional Issue.

The United States Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies."  U.S. Const., art. III, § 2, cl. 1.[3]  One of the "landmarks, setting apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III . . . is the doctrine of standing.  . . . [T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("*Lujan*") (citations omitted).[4]  In *Allen v. Wright,* 468 U.S. 737, 752 (1984) ("*Allen*"), the United States Supreme Court explained:  "Typically, ... the standing inquiry

---

[3] Federal courts are courts of limited jurisdiction and the presumption is against the exercise of subject matter jurisdiction.  *Trizec Properties, Inc. v. United States Mineral Products Co.*, 974 F.2d 602, 604 (5th Cir. 1991) ("*Trizec*") ("Federal courts are courts of limited jurisdiction, having only the authority endowed by the Constitution and that conferred by Congress."); *Town of Lantana, Fla. v. Hopper*, 102 F.2d 118, 119 (5th Cir. 1939) ("Federal Courts are of limited jurisdiction, fixed by statute, and the presumption is against jurisdiction throughout the case."); *Birmingham Post Company v. Brown*, 217 F.2d 127, 130 (5th Cir. 1954) ("'Courts of the United States are of limited jurisdiction . . . hence the presumption that a cause is without the jurisdiction of one of those courts unless the contrary affirmatively appears from the record.'") (citation omitted).

[4] As the Supreme Court and the Fifth Circuit embrace:  "Of the doctrines that have evolved under Article III, including standing, mootness, ripeness, and political question, the requirement that the litigant have standing is perhaps the most important."  *Henderson v. Stadler*, 287 F.3d 374, 378 (5th Cir. 2002) ("*Henderson*") (quoting *Allen v. Wright,* 468 U.S. 737, 750 (1984) ("*Allen*")).  This doctrine:

> [E]mbraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the **general prohibition on a litigant's raising another person's legal rights**, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law.

*Henderson,* 287 F.3d at 378; *Allen,* 468 U.S. at 741 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 474-75 (1982) ("*Valley Forge*")) (emphasis added).

requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."

The Fifth Circuit has explained that Article III standing presents a threshold issue because "it determines the court's fundamental power to even hear the suit." *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 319 (5th Cir. 2002) ("*Rivera*"); *Lewis v. Knutson*, 699 F. 2d 230, 237 (5th Cir. 1983) ("Since plaintiff must satisfy the case or controversy requirement of Article III to properly invoke the court's jurisdictional powers, standing must be resolved as a preliminary matter").

As a result, "[a] FED. R. CIV. P. 12(b)(1) motion for lack of subject matter . . . jurisdiction must be considered by the district court before other challenges 'since the court must find jurisdiction before determining the validity of a claim.'"  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (citation omitted); *accord Ford v. NYL Care Health Plans of the Gulf Coast, Inc.*, 301 F.3d 329, 332 n.1 (5th Cir. 2002) ("*Ford*") (recognizing "the fundamental point that wherever possible, Article III standing must be addressed before all other issues 'because it determines the court's fundamental power even to hear the suit.'") (citing *Rivera*, 283 F.3d at 319).

The Fifth Circuit has repeatedly ruled that federal courts must *sua sponte* determine whether a named plaintiff has Article III standing, even in the absence of a party's challenge.  In a recent *en banc* decision, the Fifth Circuit dismissed a case for lack of standing by the named plaintiff and explained that, "[s]tanding is a jurisdictional requirement . . . A federal court must consider its jurisdiction *sua sponte*."  *Doe v. Tangipahoa Parish School Board*, 494 F.3d 494, 496 n.1 (5th Cir. 2007) (*en banc*) ("*Doe*"); *accord Ford*, 301 F.3d at 331-32 ("Although Article

III constitutional standing was not raised by the parties or considered by the district court, we must - where necessary - raise it *sua sponte*.")[5]

Indeed, it is well settled that "[wi]thout jurisdiction the court cannot proceed at all in any case.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to a court is that of announcing the fact and dismissing the cause." *Hix v. U.S. Army Corps of Engineers,* 155 Fed. Appx. 121, 127 (5th Cir. 2005) (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1995)).

b)    Plaintiff Bears the Burden of Establishing Article III Standing.

With respect to a standing challenge, the United States Supreme Court has made clear -- "[t]he party invoking federal jurisdiction bears the burden of establishing the elements of standing." *Lujan,* 504 U.S. at 561.  Following suit, the Fifth Circuit recognizes "the **plaintiff constantly bears the burden of proof that jurisdiction does in fact exist**." *Ramming v. United States of America*, 281 F. 3d 158, 161 (5th Cir. 2001) (citations omitted) (emphasis added); *Rivera*, 283 F.3d at 318 ("The Plaintiffs, as the party invoking federal jurisdiction, bear the burden of establishing the[] elements" of constitutional standing).   In *Ford*, the Fifth Circuit explained that "'[t]he party invoking federal jurisdiction' . . . bears the burden of proof in establishing all three elements [of standing].  'Failure to establish any one [of them] deprives the federal courts of jurisdiction to hear the suit." *Ford*, 301 F.3d at 332 (citations omitted).  This is so during all phases of litigation, including before class certification is considered.  *Rivera,*  283

---

[5] *See also Trizec*, 974 F.2d at 604; *Lewis v. Hunt*, 492 F.3d 565, 568 (5th Cir. 2007); *Union Planters Bank N.A. v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004);  *MCG, Inc. v. Great Western Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990).

F.3d at 320 ("[t]he district court erred by not demanding such a showing [of standing] before it certified the class.").[6]

      c)     There are Three Required Elements of Article III Standing.

The United States Supreme Court has explained that three elements must be met in order to satisfy the constitutional minimum of standing:

> First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560-61 (citations omitted).[7]

Given these three requirements for Article III standing, every plaintiff must make a plausible showing that he personally suffered some actual or threatened injury as a proximate result of some improper conduct of a specific defendant.  *See Valley Forge*, 454 U.S. at 472. The United States Supreme Court has explained that "the constitutional limits on standing eliminate claims in which the plaintiff has failed to make out a case or controversy between himself and the defendant."  *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979); *see also Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 690 (E.D. Pa. 1973) (dismissing plaintiff's case against nineteen defendants with whom plaintiff had had no interaction and

---

[6] *See also Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. July 16, 1981) (Unit A) ("[i]nclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing."); *Sannon v. United States,* 631 F.2d 1247, 1251-52 (5th Cir. 1980) (named plaintiffs' claims became moot before they filed a motion for class certification; Fifth Circuit vacated the district court's order granting class-wide relief and remanded with instructions to dismiss the purported class action as moot).

[7] *See also Doe*, 494 F.3d at 496 ("Constitutional standing requires that the plaintiff personally suffered some actual or threatened injury that can fairly be traced to the challenged action and is redressable by the courts.").

noting that "[i]t is a fundamental principle of law that a plaintiff must demonstrate injury to himself by the parties whom he sues before that plaintiff can successfully state a cause of action");   Where the parties in question have had no dealings with one another, the named defendant can necessarily have taken no action that injured the plaintiff.

             d)    <u>Plaintiffs Have Failed to Satisfy Their Burden of Proof of Establishing Article III Standing.</u>

In *Doe*, the *en banc* Fifth Circuit explained that mere assumption cannot satisfy a plaintiff's burden to establish standing:

> "[W]e cannot assume that the [named plaintiff] suffered the type of injury that would confer standing.  As noted, 'the party invoking federal jurisdiction bears the burden of establishing [standing] . . . . Mere assumption . . . . cannot satisfy their burden to prove standing."

*Doe*, 494 F.3d at 498 (citation omitted).

In the case at bar, not a single Plaintiff has alleged that he or she has lived in a housing unit made by one of the New Defendants.  Similarly, not a single Plaintiff has alleged that he or she was harmed as a proximate result of any action taken by any specific New Defendant. Obviously therefore, Plaintiffs' AMC fails to satisfy Plaintiffs' burden of establishing Article III standing as to the New Defendants.   As a result, this Court does not have subject-matter jurisdiction over the claims by the Plaintiffs against New Defendants.

        **2)**    **Plaintiffs Have No Standing As Class Representatives.**

             a)    <u>Class Allegations Do Not Cure Article III Deficiencies.</u>

In an effort to sidestep their individual constitutional pleading requirements (which they clearly have not met), Plaintiffs attempt to present their case as a purported class action, but this "approach" does not cure Plaintiffs' lack of standing.  *See Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976).  The Fifth Circuit has explained that, "[i]nclusion of class

action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing . . . .   If the plaintiff has no standing individually, no case or controversy arises." *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981) (standing is an inherent prerequisite to the class certification inquiry); *see also In re: Reliant Energy ERISA Litigation*, 336 F. Supp. 2d 646, 653 (S.D. Tex. 2004) ("A potential class representative must demonstrate individual standing *vis à vis* the defendant; he cannot acquire such standing by virtue of bringing a class action.").   Moreover, whether a named plaintiff has standing must be considered on a claim-by-claim basis.  *See Dallas Gay Alliance, Inc. v. Dallas County Hospital District*, 719 F. Supp. 1380, 1386 (N.D. Tex. 1989) ("The standing requirement of Article III must be analyzed and applied issue by issue. . . . [E]ach named Plaintiff must establish the requisite case-or-controversy in order to represent himself or any other members of the putative class.").

Where a named plaintiff in a class action fails to allege a present injury or a sufficiently concrete threat of injury from each defendant, there is no case or controversy with regard to that defendant.  *See O'Shea v. Littleton*, 414 U.S. 488, 493-95 (1974).  Each plaintiff must allege and show that as to each claim he has personally been injured, not merely alleging that injury has been suffered by other, unidentified members of a purported class to which he belongs and which he purports to represent.  *Blum v. Yaretsky*, 457 U.S. 991, 1001 n.13 (1982).  Accordingly, unless a named Plaintiff can demonstrate the requisite case or controversy between himself and a New Defendant, that Plaintiff may not  "seek relief on behalf of himself or any other member of the class." *O'Shea*, 414 U.S. at 494.[8]

---

[8] The fact that the identified Plaintiffs also attempt to assert state common law claims against New Defendants does not change the analysis.  Federal Courts are clear that states may not enlarge the scope of Article III standing.  *See Transcontinental Gas Pipeline Corp. v. Dakota Gasification Co.*, 782 F. Supp. 336, 340 (S.D. Tex. 1991) (noting that "subject matter jurisdiction can neither be granted nor destroyed by state law"); *see also Beach v. Owens-Corning Fiberglass Corp.*, 728 F.2d 407, 409 (7th Cir. 1984) ("State law cannot be construed to enlarge or contract federal jurisdiction"); *Begay v. Kerr-McGee Corporation*, 682 F.2d 1311, 1315 (9th Cir. 1982) (noting that states

(*Footnote continued on next page*)

    b)  <u>Courts in the Fifth Circuit and Across the Country Agree That Class Allegations Alone Do Not Create Standing.</u>

  The Fifth Circuit and this Honorable Court were recently faced with precisely the same Article III standing issue in *Audler v. CBC Innovis, Inc.,* 519 F.3d 239 (5th Cir. 2008) ("*Audler*").  In *Audler*, a Louisiana homeowner, whose property was damaged by floodwaters from Hurricane Katrina, brought a purported class action lawsuit against the company that provided flood zone determinations to his lender as well as against nineteen other defendants alleged to have been in the same business.  The Named Plaintiff had no dealings with nineteen of the defendants ("Class Defendants") that were named in the purported class action complaint.  The Class Defendants filed a motion to dismiss asserting, *inter alia*, lack of standing.  *Id.* at 247.  This Court granted the motion to dismiss filed by the single defendant with which the Named Plaintiff had dealings (CBC Innovis, Inc.), dismissed all defendants from the lawsuit, and denied all other pending motions as moot.  *Id.*  On appeal, two of the Class Defendants filed a motion to dismiss the appeal for lack of standing by the Named Plaintiff.  *Id.*  The Fifth Circuit explained that "[b]ecause standing is a jurisdictional requirement, we must address it before considering the merits of [a] claim."  *Id.* at 247-48.  The Fifth Circuit granted the motion to dismiss the appeal, dismissed the Named Plaintiff's claims against the Class Defendants, and ruled that the Named Plaintiff's "claims against the Class Defendants . . . must be dismissed for lack of standing."  *Id.* at 248 (citations omitted).[9]  The Fifth Circuit explained as follows:

---

(*Footnote continued from previous page*)

"have no power to enlarge or contract the federal jurisdiction") (internal quotation marks omitted)).  Accordingly, even assuming *arguendo* that a plaintiff meets the requirements to bring a suit under a state statute or a common law claim, such a plaintiff must still meet the requirements of Article III standing in order to assert that claim in federal court.

[9] Since the Class Defendants had no dealings with the Named Plaintiff, the Fifth Circuit ruled that the Class Defendants "have caused [the Named Plaintiff] no cognizable injury".  *Audler*, 519 F.3d at 247.  The Fifth Circuit found that the Named Plaintiff "lacks standing to bring claims against any Defendant other than CBC Innovis, Inc."

(*Footnote continued on next page*)

> Ordinarily, under the general principles of standing, "a litigant may
> not merely 'champion the rights of another.'"   Instead, "a
> plaintiff's complaint must establish that he has a 'personal stake' in
> the alleged dispute, and that the alleged injury suffered is
> particularized as to him."

*Id*. at 248 (citations omitted).[10]

The same result from *Audler* applies here.[11]   The Plaintiffs in this case do not have Article III standing against the New Defendants.   As a result, this Court does not have subject matter jurisdiction over the claims by the Plaintiffs against the New Defendants.   The New Defendants' motion to dismiss for lack of subject matter jurisdiction should consequently be granted.[12]

The Western District of Louisiana agreed in a case eerily analogous to the present matter. *Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 828 (W.D. La. 2003) ("*Matte*").   In *Matte,* sixteen plaintiffs brought a putative class action against two hundred and eighty-two (282) mobile home manufacturers alleging defects in mobile homes.   For all but one of the defendants, there was no named plaintiff who owned a mobile home that they manufactured.   In dismissing the other two hundred and eighty-one (281) defendants, the court held that a plaintiff who owned a mobile home manufactured by one defendant lacked standing to sue other mobile home

---

(*Footnote continued from previous page*)
and consequently dismissed the Named Plaintiff's claims against the Class Defendants "for lack of standing."   *Id*. at 245.

[10] The Motion to Dismiss the Appeal filed by two of the Class Defendants in *Audler* is attached hereto as Exhibit "1".

[11] By granting the motion to dismiss the appeal arising from a case that had itself been decided on a motion to dismiss, the Fifth Circuit reached its *Audler* decision on Article III standing based solely on the pleadings - *i.e.*, on the same basis that a district court would decide a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based solely on the complaint.

[12]  The Fifth Circuit also rejected Plaintiffs' attempts to assert standing through the juridical link doctrine.  *Audler*, 519 F.3d at 248.  Even courts that do recognize the juridical link doctrine would not apply it here because the doctrine is relevant only to class certification and not to Article III standing.  *See In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 170-71 (D. Mass. 2004) ("[i]t is clear that class certification and Article III standing are separate and distinct issues, regardless of whether the named plaintiff's injury is similar to that of unnamed plaintiffs. . . . In short, 'the juridical link doctrine' is not relevant to the issue of standing.").

manufacturers, explaining that "if a plaintiff lacks standing to bring an action, he does not cure the defect by creating a Rule 23 class in the hopes that some members of the class will have standing to sue the defendant." *Id*. at 826.

> Thus, a plaintiff who lacks standing to sue a defendant may not acquire such status through class representation. Standing is one of the keys necessary to open the door to the federal courthouse. Rule 23 merely provides a procedural doorstop which holds the door open for qualified class members, once it has been opened by the person or persons initially seeking entry.

*Id.* (internal citations omitted).

In addition to the Fifth Circuit and federal district courts in Louisiana, courts across the country recognize dismissal is proper when the named plaintiffs in a purported class action have no case or controversy against a defendant. *See, e.g., Jackson v. Resolution GGF Oy.*, 136 F.3d 1130, 1132 (7th Cir. 1998) (dismissing claims against Norwest, a defendant with whom the named plaintiffs had had no interaction, and noting that there "is no case or controversy between Norwest and any of the named plaintiffs, so Norwest must be dismissed as a party"); *Dunden et al. v. FirstPlus Bank et al.*, No. 408, 2002 WL 1155325, *2-3 (S.D. Ill., Apr. 29, 2002) (addressing the question of "whether the named Plaintiffs have standing to pursue their claims against the holder Defendants that have never held their notes" and stating that "clearly, the answer is no"); *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 694 (E.D. Pa. 1973) ("A Plaintiff may not use the procedural device of a class action to boot strap himself into standing he lacks"); *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 996-97 (D. Md. 2002) (noting that in "a multi-defendant action or class action, the named plaintiffs must establish that they have been harmed by each of the defendants" and dismissing the claims against defendants with whom the named plaintiffs had no contractual relationship because the "plaintiffs cannot

possibly show that their injuries, such as they have suffered, are traceable to the conduct of any of these defendants").[13]

Thus, federal courts have consistently rejected analogous attempts by named plaintiffs in purported class actions to assert blanket claims against multiple defendants, holding that the requirement for a plaintiffs' Article III standing is not met when the alleged injury could not be attributable to any action by a named defendant.  Because none of the named Plaintiffs here allege specific injury caused by a specific New Defendant, they have no Article III standing to assert a claim against any New Defendant.  Accordingly, this Court does not have subject matter jurisdiction as to the claims of the Plaintiffs against the New Defendants and the AMC must be dismissed as to each and every New Defendant.

Consequently, there is no need to consider the remainder of this memorandum in support of the pending motion to dismiss.  Out of an abundance of caution, however, New Defendants

---

[13] Plaintiffs make a half-hearted attempt to connect Defendants together with a passing conclusory allegation of conspiracy.  However, this scant, clearly baseless reference to Defendants' alleged improper conduct among "others and/or each other" does not meet the *Twombly* standard of pleading conspiracy.

In paragraph 31 of the AMC, Plaintiffs aver:

> 31.  Plaintiffs submit that Manufacturing Defendants ignored or deliberately and fraudulently concealed and/or condoned the concealment, and/or conspired with , advised, encouraged, or aided others and/or each other to conceal that the housing units, both those which were manufactured prior to the hurricanes and those later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to the Manufacturing Defendants' use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, all in order to sell the Manufacturing Defendants' products, and/or avoid the litigation by persons injured by formaldehyde emissions.

(Doc. No. 109, p. 28 at ¶ 31).

Notably, however, Plaintiffs do not allege a single <u>fact</u> regarding who allegedly conspired to conceal information, who were the alleged co-conspirators, what specific information was allegedly concealed, by which particular Defendants, nor how or when such concealment took place.  All of these omissions are fatal to Plaintiffs' cause because the AMC lacks the particularity required by Rule 9(b) and relevant jurisprudence.  *See, e.g., Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992).  And, like the vast majority of the AMC, the allegations patently fail to meet the acceptable pleading standard set forth in *Twombly*.

15

will demonstrate that the AMC is separately and severally defective under the MDL enabling statute and the rules promulgated thereto as well as Rule 20 of the *Federal Rules of Civil Procedure* related to joinder of party plaintiffs and defendants.

**B.      THE AMC SHOULD BE DISMISSED BECAUSE IT DOES NOT CONSTITUTE A COMPLAINT UNDER THE FEDERAL RULES OF CIVIL PROCEDURE NOR IS IT A PROPER PROCEDURAL DEVICE UNDER THE RULES OF PROCEDURE OF THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION.**

Dismissal of the New Defendants is also proper pursuant to Rules 12(b)(4) and 12(b)(5) for insufficient process and insufficient service of process.  Rule 4 of the Federal Rules of Civil Procedure requires that "a summons must be served with a copy of the complaint."  FED. R. CIV. P. 4(c)(1).  Rule 3 of the Federal Rules of Civil Procedure states "a civil action is commenced by filing a complaint with the Court."  However, the only document naming the New Defendants is styled as an "Administrative Master Complaint" and was filed directly in the MDL Court.  Neither the Rules of Procedure of the Judicial Panel on Multidistrict Litigation nor their enabling statute provide for the direct initiation of a lawsuit in the MDL proceeding, and therefore the "Administrative Master Complaint" did not properly "commence" an action against the New Defendants.[14]  Therefore, no complaint against the New Defendants exists that could have been

---

[14]   The Rules of Procedure of the Judicial Panel on Multidistrict Litigation promulgated pursuant to 28 U.S.C. § 1407 contemplate the transfer of an action commenced in or removed to a federal district court where jurisdiction and venue are originally proper.  The procedures also appropriately allow for objections to transfers of "tag-along" actions.

    **Rule 1.6. Transfer of Files**
    (a)  Upon receipt of a certified copy of a **transfer order** from the clerks of the transferee district court, the clerk of the transferor district court shall forward to the clerk of the transferee district court the complete original file and a certified copy of the docket sheet for each transferred action.

    **Rule 7.4.  Conditional Transfer Orders for "Tag-Along Actions"**
    (a)  Upon learning of the pendency of a potential "tag-along action," as defined in Rule 1.1 of these Rules, an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court . . . The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer,
                                                             (*Footnote continued on next page*)

01638819.6

served with the Summons, and no case has been filed in any judicial district whatsoever asserting claims against or naming the New Defendants.

As this Court is aware, the Eastern District of Louisiana has "experimented with direct filing" in order "to eliminate some administrative inefficiencies of Multidistrict litigation…" *In Re: Vioxx Products Liability Litigation*, 478 F.Supp. 2d 897, 903 (E.D. La. 2007) ("*Vioxx*"). However, the direct-filing process instituted by the Court with Pre-Trial Order No. 11 ("PTO 11") in the *Vioxx* litigation is inapplicable to the litigation before this Court for many reasons. First, the *Vioxx* litigation dealt with one primary defendant against whom every plaintiff alleged claims - Merck & Co., Inc. ("Merck"). In the instant matter, it is believed that no plaintiff has a claim against more than one of the sixty-two (62) manufacturing defendants named in the "Administrative Master Complaint." Accordingly, the efficiencies achieved by PTO 11 in the *Vioxx* litigation have no application to the instant matter. Additionally, in the *Vioxx* litigation, Merck "stipulated and agreed" to the direct-filing process and preserved certain defenses in the process. In this case, the FEMA has refused to agree to a direct-filing process or to the waiver of its venue or jurisdiction defenses. Similarly, the New Defendants do not agree to a direct-filing process, nor do they agree to any circumvention of the well-established process for the filing of

---

(*Footnote continued from previous page*)
> shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

Similarly, the enabling statute for the Panel on Multidistrict Litigation, 28 U.S.C. § 1407, does not contemplate the filing of original actions into an ongoing MDL proceeding but rather, simply provides a mechanism for transfer of an action originally commenced in or removed to a federal district court where jurisdiction and venue are proper:

> **Multidistrict Litigation**
>
> **(a)** When civil actions involving one or more common questions of fact are **pending in different districts**, such actions may be **transferred** to any district for coordinated or consolidated pretrial proceedings. Such **transfers** shall be made by the judicial panel on multidistrict litigation. . . Each action so **transferred shall be remanded** by the panel at or before the conclusion of such pretrial proceedings to the **district court from which it was transferred . . .**

separate cases in a court with proper jurisdiction and proper venue and the subsequent transfer of tag-along cases to a MDL, including the parties' rights to object to transfer.

Accordingly, no complaint has been filed in any judicial district naming the New Defendants, and subsequently transferred by the MDL panel to this Court, and thus, there is no civil action over which this Court may exercise subject matter jurisdiction. Since no complaint has been filed, it follows that no complaint has been served on these Defendants along with a Summons. Therefore, the failure of the Plaintiffs to serve a copy of a Complaint with the Summons requires the dismissal of this action under Rule 12(b)(4) and (5).

**C.    PLAINTIFFS' CLAIMS AGAINST NEW DEFENDANTS ARE IMPROPERLY JOINED WITH THE CLAIMS MADE AGAINST THE ORIGINAL DEFENDANTS.**

The AMC is also fatally flawed because Plaintiffs have improperly joined any claims that one Plaintiff might have against one Defendant with the claims that other unrelated Plaintiffs may have against other unrelated Defendants, a defect that is underscored by Plaintiffs': (1) improper filing of an action against New Defendants proceeding in the MDL directly; (2) failure to file individual complaints on behalf of individual plaintiffs against individual manufacturers against which they have actual claims; and (3) failure to file complaints in appropriate jurisdictions and venues, the effect of which has been to completely circumvent MDL transfer procedures provided for in the MDL enabling statute and the rules promulgated thereto.

As a threshold matter, "Rule 20 requires that a right to relief be asserted against each defendant in order to allow their joinder." Fed. R. Civ. P. 20(a); *see also* 7 CHARLES ALAN WRIGHT & ARTHUR MILLER ET AL, FEDERAL PRACTICE AND PROCEDURE § 1657 (3d ed. 2008). Assuming this threshold inquiry is met, Rule 20 allows for the joinder of multiple plaintiffs or defendants only when there are claims "arising out of the same transaction, occurrence, or series

of transactions or occurrences . . . ."[15]   Because none of the Plaintiffs have Article III standing against the New Defendants, the threshold requirement for Rule 20 joinder has not been met -- The joinder of Plaintiffs and Defendants in this matter is facially improper.  In addition, the AMC fails to satisfy the basic requirement that the claims by Plaintiffs against New Defendants arise from the same transaction or occurrence.[16]

    1)       **Plaintiffs' Claims Do Not Arise from the Same Transaction or Occurrence.**

Courts often rule that plaintiffs who join together to file suit fail to satisfy Rule 20 when their claims do not arise out of a single transaction or occurrence.  For example, in *Campo v. State Farm and Cas. Co.*, No. 06-2611, 2007 WL 2155792 (E.D. La., July 26, 2007) several plaintiffs, who held homeowner's policies for their residences with defendant State Farm, joined suit to allege State Farm improperly adjusted and processed their claims for insurance proceeds following Hurricane Katrina.  Recognizing the plaintiffs' claims involved different properties, different insurance adjusters, different witnesses, different combinations of wind and flood, different injuries, different policies and different defenses, the court severed the claims of the improperly joined plaintiffs.  *Id.* at *3; *see also, Rohr v. Metropolitan Ins. & Cas. Co.*, No. 06-

---

[15] Additionally, there must be "questions of law or fact common to all these persons" in the action.  FED. R. CIV. P. 20(a).  Because the same transaction or occurrence requirement is clearly not met here, this Court need not decide whether Plaintiffs have also met this second requirement.

[16] Plaintiffs' AMC is a pleading "shortcut," and in addition to misjoinder, Plaintiffs' improper amalgamation of parties and claims creates innumerable other procedural problems.  For instance, venue based on the convenience of the parties and witnesses is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  For each plaintiff's claim, there is but one manufacturing defendant – the defendant that manufactured the THU that allegedly harmed the plaintiff.  As a result, in every instance there may be two districts in which venue would be proper: (1) the district in which the plaintiff occupied the THU and their alleged harm occurred, 28 U.S.C. § 1391(a)(2); and the district in which the THU the plaintiff occupied was manufactured, 28 U.S.C. § 1391(a)(1)-(2).  Thus, for every plaintiff who occupied a THU outside this Court's district, both the district in which they occupied the THU and the district in which the THU was manufactured would be more convenient for the parties and witnesses and would better serve the interest of justice as opposed to the Eastern District of Louisiana.  Plaintiffs' AMC appears to intentionally ignore these very important issues in an attempt to avoid having to properly plead and file their claims.

10511, 2007 WL 163037, at *3 (E.D. La., Jan. 17, 2007) (quoting *Comer v. Nationwide Mut. Ins. Co.*, No. 1:05CV436-LTD-RHW, 2006 WL 1066645, at *2 (S.D. Miss., Feb. 23, 2006) ("in another case involving 'hundreds of Plaintiffs [who were] joined in a single lawsuit, each asserting claims that ar[ose] out of damage to [different] property caused by Hurricane Katrina,' the court concluded that the Plaintiffs should be required to file separate complaints."))

Similarly, Plaintiffs in the instant case allegedly:

- Lived in different housing units in different places – i.e., all Plaintiffs did not reside in a single housing unit in a single location;

- Lived in different housing unit categories – i.e., Plaintiffs resided in either a travel trailer, a park model, or a manufactured home;

- Lived in different housing units manufactured by different companies at different plants at different times – i.e., Plaintiffs claim that over 60 different companies built one or more housing unit types that are at issue in this case;

- Have experienced a variety of different injuries and will presumably present different witnesses to prove their purported injuries and the remaining elements of their claims.

As demonstrated above, because Plaintiffs' claims are artificially levied against an entire industry, and not against a single company defendant (as was the case in *Vioxx*), they cannot satisfy Rule 20 scrutiny and are improperly joined in this action.

### 2) New Defendants Are Also Wrongfully Joined With The Other Defendants And With Each Other.

Courts apply the very same "transaction or occurrence" analysis to the joinder of party defendants. *Compare* FED. R. CIV. P. 20(a)(1)(A) and 20(a)(2)(A). For example, in *Pergo, Inc. v. Alloc., Inc.,* 262 F. Supp. 2d 122 (D.C.N.Y. 2003), the owner of certain patents sued

competitor-defendants for infringement, which prompted defendants' motion to sever.  Granting the defendants' motion, the court held, "the fact that two parties may manufacture or sell similar products, and that the sales or production may have infringed the identical patent owned by the plaintiffs is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)."  *Id.* at 128.  Regardless of the manner in which any other defendant purportedly designed, manufactured, tested, marketed, distributed, licensed and sold housing units to FEMA, that has nothing to do with what each New Defendant did or did not do with respect to the units they sold to FEMA.[17]  Moreover, there is simply no legitimate claim that New Defendants acted in concert, in a conspiracy, or in any other joint fashion with the other Defendants, *see supra n.* 10.  Consequently, Plaintiffs' efforts to attack the entire industry[18] through selected individuals, who have alleged claims against certain Defendants but not others, should fail -- any alleged mistakes made by one company, if any, has no bearing on whether other companies did or did not make their own mistakes.

---

[17] Notably, Plaintiffs' improvident attempt to join New Defendants demonstrates the clear distinctions between the manufactured home defendants and the existing travel trailer defendants.  Unlike the travel trailers, every aspect of the manufactured home industry is regulated by HUD.  In fact, many years ago, HUD both investigated and wrestled with the formaldehyde issues.  As a result of that investigation, HUD has established formaldehyde standards, regulates formaldehyde emissions in building products, requires HUD inspection and certification of the units for compliance prior to leaving the manufacturing plant, and requires that formaldehyde warnings be placed in each home.  Additionally, HUD regulations address ventilation systems and discuss indoor air exchange requirements which are not applicable at all to the travel trailer industry.

[18] The Fifth Circuit has recognized that claims against an industry based upon the theory of market share liability are not available under the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51, *et seq.. Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245 (5th Cir. 1997).  Similarly, courts in Alabama, Texas and Mississippi have either rejected outright or refused to apply market share liability.  *See, e.g., Franklin Co. School Bd. v. Lake Asbestos of Quebec, Ltd.*, No. 84-AR-5435-NW, 1986 WL 69060, *5-6 (N.D. Ala. Feb. 13, 1986); *Spring Branch Independent School Dist. v. NL Industries, Inc.*, No. 01-02-01006-CV, 2004 WL 140403, at *4 (Tex. App., June 24, 2004) (it is "bedrock principle of Texas law that a plaintiff must identify the manufacturer of the product that allegedly injured it") (citing *Gaulding v. Celotex Corp.*, 772 S.W. 3d 66, 68 (Tex. 1989)); *Jones v. NL Industries*, No. 4:03 CV 229 MB., 2006 WL 1487026, at *2 (N.D. Miss., May 24, 2006).  As such, Plaintiffs must show that a New Defendant manufactured home was the direct proximate cause of any alleged harm or damage to a specifically named Louisiana, Alabama, Texas or Mississippi Plaintiff.  Otherwise, every named Plaintiff lacks standing to bring an action against every New Defendant.

### 3) Joinder is Improper Regardless of Class Allegations.

The fact that Plaintiffs bring this case as a class action does not cure their Rule 20 problems.  For example, in *Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151 (2d Cir. 1974) ("*Nassau County*"), four associations of insurance agents filed a class action on behalf of their agents against one hundred and sixty-four (164) insurance companies alleging the termination of agency contracts in violation of securities laws through the imposition of requirements such as selling new lines of insurance, meeting higher volume requirements, etc.  The court held that "by joining the 164 defendant companies in one action they have failed to comply with Rule 20(a) of the Federal Rules of Civil Procedure relating to joinder of defendants."  *Id.* at 1154.  The court recognized:

> Here there has been no showing of a right to relief arising from the same transaction or series of transactions.  No allegation of conspiracy or concert of action has been asserted.  No connection at all between the practices engaged in by each of the 164 defendants has been alleged.  Their actions as charged were separate and unrelated, with terminations at different times for different reasons with regard to different agents.

*Id.*; *see also Cohen v. D.C. Nat'l Bank*, 59 F.R.D. 84, 87 (D.D.C. 1972) (in a putative class action, "the plaintiffs may not join a defendant for the purpose of asserting a claim which is not the claim of any named plaintiffs.").  The same is true with respect to the over sixty (60) named Defendants in the present case, and thus New Defendants are improperly joined in this matter.

Parties that are misjoined may be dropped from the lawsuit.[19]  *See* FED. R. CIV. P. 21. The only solution under Rule 21 is to dismiss all of the New Defendants from this action and allow this civil action to continue only as to properly named Defendants.  *Nassau County*, 497 F.2d at 1154-55 (proper remedy for misjoinder of thousands of claims is dismissal).

---

[19] Alternatively, Rule 21 allows misjoined claims to be severed and proceeded with separately, but that is not an option here because no named Plaintiff in this lawsuit has a claim against any New Defendant.

**D.      INCORPORATION OF ADDITIONAL GROUNDS AND DEFENSES.**

New Defendants herein specifically adopt and join the following motions and briefs filed by other Defendants and assert the following additional Rule 12 defenses:

·        Failure to State a Claim Upon Which Relief May Be Granted;

·        Failure of Service of Process;

·        Insufficiency of Service of Process;

·        Lack of Personal Jurisdiction;

·        Improper Venue;

·        Inconvenient Venue;

·        Plaintiff's "failure to warn" claim under the Louisiana Products Liability Act fails as a matter of law as to the manufactured housing defendants.  As Plaintiffs' counsel admits in the AMC, HUD mandated a warning concerning formaldehyde exposure and promulgated the text of the warning in the Code of Federal Regulations.  Under *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947), all persons are charged with constructive knowledge of the published federal laws, rules and regulations.  Under Louisiana Civil Code Article 5, no person may claim ignorance of the law.  Even if one or more of the Plaintiffs could demonstrate that there was no HUD-mandated warning posted in one of the manufactured houses, the Plaintiffs' claim of a failure to warn would still fail as a matter of law because they are charged with knowledge of the warning in any event because it is published in the Code of Federal Regulations.;

·        Manufacturing Defendants' Rule 12(b)(6) Motion to Dismiss Under Louisiana, Alabama, Mississippi and Texas Law and supporting Memorandum;

·        Manufacturing Defendants' Rule 9(b) Motion to Dismiss and supporting Memorandum; and

·        Federal Rule of Civil Procedure Rule 12(B) Preservation Lists Filed on Behalf of Existing Defendants

23

## V.   CONCLUSION

As New Defendants have established through the arguments set forth above and adopted herein by incorporation, the AMC must be dismissed as a matter of law.

Respectfully submitted,


/s/ *James K. Carroll*
James K. Carroll
One of the Attorneys for New Defendants


**OF COUNSEL:**

FOWLER RODRIGUEZ & CHALOS
400 Poydras Street, 30th Floor
New Orleans, Louisiana 70130
Telephone: 504-523-2600
Fax: 504-523-2705

- and -

Lee E. Bains, Jr.
Thomas W. Thagard, III
Edward A. "Ted" Hosp
Edward S. Sledge IV
MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2616
Telephone:  (205) 254-1000
Fax:  (205) 254-1999

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document by first-class mail to all counsel of record who are non-CM/ECF participants.

01638819.6

_/s/ James K. Carroll_
Of Counsel

25