7.

Venue is proper in this court pursuant to La. C.C.P. art. 42 and LSA-R.S. 13:3203 in that many of the events or omissions giving rise to the claims asserted herein occurred in this district, and the defendants are subject to personal jurisdiction in this district.

## HISTORICAL BACKGROUND OF THE DEVELOPMENT OF THE FLOOD DETERMINATION INDUSTRY

8.

All claims asserted in this Class Action Petition for Damages are based solely on Louisiana law, and nothing in this Petition should be construed as an effort to set forth a private cause of action under federal statutes. Nevertheless, the flood determination industry which is the subject of this litigation developed in response to requirements imposed on lenders pursuant to federal legislation. Accordingly, a discussion of the development of the flood determination industry necessarily involves a discussion of the federal legislative and administrative response to flood losses.

9.

Floods are the most costly and common natural disaster in the United States. Floods in the United States caused an average of about $6 billion dollars in damages per year between 1955 and 1999. Prior to 1968, the federal government attempted to control flooding on a national scale by providing funds for flood control projects such as dams, levees, sea walls and the like. Despite these efforts, flood losses escalated and the federal government paid increasing sums in disaster assistance. Flood insurance was virtually unavailable in the private sector.[1]

---

[1]Even at present, flood coverage is almost universally excluded from basic homeowners and business property policies written in Louisiana as well as in the rest of the country.

USCA5 774

10.

With the passage of the National Flood Insurance Act of 1968, the Congress changed the federal government's role in flood disasters. The 1968 Act established the National Flood Insurance Program (NFIP), a federal program which enables property owners to purchase federally subsidized flood insurance protection. The NFIP provides flood coverage for improved real estate or manufactured homes, and for their contents.

11.

The NFIP offers flood insurance to property owners in communities that participate in the NFIP by adopting and enforcing ordinances to reduce future flood risks. When a community agrees to reduce potential flood losses and participates in the program, the NFIP offers flood insurance to protect community members' buildings and their contents against these losses. The Federal Emergency Management Agency (FEMA) publishes maps indicating flood hazard areas in various communities. The task of identifying and mapping flood-prone areas informs communities and residents within them that they are at risk of flooding (i.e., that they are within SFHAs).[2] Property owners in these areas are required to purchase and retain flood insurance for the life of their mortgage loans, and this is called the mandatory purchase requirement.

12.

From 1968 until the adoption of the Flood Disaster Protection Act of 1973, the purchase of flood insurance was voluntary. During these years, few communities joined the NFIP, and few property owners purchased flood insurance. By 1973, about 2,200 of an estimated 21,000 flood-prone communities had joined the NFIP, and about 95,000 flood

---

[2] A SFHA defines the area in which there is a one percent (1%) chance of being flooded in any given year (i.e., the 100-year flood plain). Over a 30-year period, there is at least a 26% chance that a SFHA will be flooded to the elevation of the 100-year flood. A flood insurance rate map (FIRM) identifies areas designated as SFHAs.

USCA5 775

policies were in force. The properties covered by these insurance policies comprised a small proportion of the eligible buildings in identified SFHAs in participating communities. The Congress consequently concluded that "A voluntary participation . . . yields too few subscribers."

13.

As a result of flooding along the East Coast caused by Hurricane Agnes in 1972, the 1968 Act was expanded by The Flood Disaster Protection Act of 1973. The 1973 Act addressed the low participation rates by establishing the mandatory purchase requirement and prohibiting regulated lenders from making, increasing, extending or renewing any loan secured by improved real estate or personal property located in a SFHA unless the secured building and any personal property securing the loan are covered by flood insurance for the term of the loan.

14.

The result of the 1973 amendment was a "great increase" in the number of participating communities and in the number of policies in force. By 1977, about 15,000 of the estimated 21,000 flood-prone communities were participating in the NFIP and approximately 1.2 million policies were in force at the end of that year.

15.

Congress began to revisit the issue of national flood insurance in the late 1980s, largely because FEMA reported that only 14% of structures in SFHAs were covered by flood insurance and because more than 20% of flood insurance policies were not renewed annually. After multi-billion dollar flooding in the Midwest during the summer of 1993, Congress responded by enacting the National Flood Insurance Reform Act of 1994. The 1994 Act expanded the mandatory purchase requirement to include property owners who obtain loans from "federally-regulated lending institutions" and whose loans are secured by improved real

USCA5 776

estate or a manufactured home. The 1994 Act defines a regulated lending institution (hereinafter "regulated lender") as any "bank, savings & loan association, credit union, farm credit bank, federal land bank association, production credit association, or similar institution subject to the supervision of a federal entity for lending regulation." These entities include, among others, the Federal Reserve System and the Federal Deposit Insurance Corporation (FDIC).

16.

When a lender determines that a loan on improved real estate or a manufactured home is or will be located in a SFHA, these lenders are required to provide borrowers with written notice that the building or manufactured home is located in a SFHA, as well as the mandatory purchase requirement of flood insurance. The 1994 amendments also gave lenders the authority to escrow premiums or force place flood insurance on behalf of the owners of properties in SFHAs for which, at the time of loan origination or at any time during the term of the loan, the property is not adequately insured. If a borrower will not voluntarily obtain coverage and a lender is unable to force place coverage, the lender must deny the loan.

17.

The amount of insurance that must be purchased is limited to the value of the property subject to the maximum amount of insurance available through the National Flood Insurance Program. Homeowners can purchase up to $250,000 in coverage for their homes through the NFIP while $500,000 in coverage is available for commercial buildings. In both instances, coverage is also available for the contents of these buildings. Thus, the Flood Disaster Protection Act of 1973, as amended, mandates the purchase of flood insurance in SFHAs of any community. The Act further requires that mortgage companies, banks, and other lending institutions that are making or guaranteeing a loan secured by a building in a SFHA assure that flood insurance is purchased and retained through the life of the loan. This requirement

USCA5 777

applies in all communities which FEMA has identified as having SFHAs, including those communities that are not participating in the National Flood Insurance Program.

18.

Prior to the closing of a mortgage loan, lenders are required to determine whether any improved real estate or a manufactured home is or will be located in a SFHA. In all instances, lenders or flood determination companies are required to complete a standard flood hazard determination (SFHD) form to record the results of a determination. Lenders are further obligated to retain a copy of the form for the life of the loan and to be able to produce a copy upon request. The form records the determination and identifies the flood hazard zone within which the building or manufactured home is or will be located.

19.

Once a determination form has been completed, the determination can be used for seven additional years when a borrower increases, extends or renews a loan secured by improved real estate with the original lender. A new determination is required if the Flood Insurance Rate Map (FIRM)[3] is revised or updated after the initial determination. A new flood determination is required when the property owner refinances a loan or obtains a home equity loan or second mortgage from a lender other than the one that obtained the initial determination, regardless of the interval since the original determination.

20.

Prior to the development of the flood determination industry, and prior to the 1994 Reform Act, lending institutions themselves typically made determinations about a property's location relative to a SFHA. These determinations often involved surveys by licensed professional surveyors. In response to the need of lenders to more quickly obtain flood

---

[3] FEMA publishes the Flood Insurance Rate Map (FIRM). The FIRM identifies the SFHAs and is the basis for the establishment of premium rates for flood coverage through NFIP.

USCA5 778

determinations, companies specializing in providing prompt flood determinations emerged.
To process determinations quickly, most determination companies have developed databases
that combine information from FIRMs and data from other sources, into an automated
process. When addresses are transmitted electronically and when the determination process
is automated, a flood hazard determination can be completed and returned to a lender in
minutes.

21.

Most regulated lenders now depend on flood determination companies, but as a result
of the 1994 Reform Act, lenders can do so "only to the extent [such a company] guarantees
the accuracy of the information." All information provided on the SFHD form must be
guaranteed by the flood determination company.

22.

The members of the flood determination industry and the defendant class have
adopted methodologies for performing flood determinations which are fast and efficient, but
which they know or should know present a high risk of inaccuracy, especially in the border
zones of SFHAs.

23.

The flood determination industry is and has been aware of an alarming rate of
inaccuracy given current methods of making flood determinations. For example, the flood
determination industry collected data on approximately 94 million flood determinations
performed for lending institutions between 1997 and 2003 by seven flood determination
companies, all of which provide determinations in all states. The data suggests that slightly
more than 5% of all residential properties in the United States are in SFHAs. In Louisiana,
25% of such properties are in SFHAs. The study found a variation among the seven
determination companies and their assessment of the percentage of properties in each state

USCA5 779

that are in SFHAs.  In Florida, as an illustration, one company estimated that 34.3% of

residential properties are in SFHAs.  Another company estimated that percentage to be

24.7%.  Having lending clients in different parts of the state provides some explanation for

the differences, but still other data underscores the fact that flood determinations are rife with

inaccuracy.  As part of an internal review in 2002, Fannie Mae randomly selected 9,500 loans

in its portfolio and then asked four flood determination companies to indicate whether the

buildings associated with these loans were inside or outside of SFHAs.  All four firms agreed

on the determinations for 3,001 addresses.  For 2,784 of these addresses (or 29% of the

9,500), all four companies agreed that the properties were inside or outside of SFHAs.  The

four companies also agreed that the location of another 217 properties (2% of the 9,500) was

indeterminable.  One or more companies disagreed about the location or the ability to

determine the location of 3,261 properties (34% of the 9,500).  For the remaining 3,238 loans

(34% of the 9,500), no three firms were able to agree that the properties were inside an

SFHA, outside an SFHA or indeterminable.  This data suggests that many property owners

are told they are not in SFHAs when they actually are in them.

### THE ISSUANCE OF THE INCORRECT FLOOD DETERMINATION TO THE REPRESENTATIVE PLAINTIFF

24.

On March 29, 2001, Brian A. Audler, representative plaintiff herein, granted a

mortgage to Gulf Coast Bank and Trust Company, a regulated lender, in connection with the

residential property at 3612 Juno Drive, Chalmette, Louisiana 70043.  A Standard Flood

Hazard Determination was executed on March 19, 2001 by defendant Flood Zone

Determination Services, which provided the following certification:

> IS BUILDING/MOBILE HOME IN SPECIAL FLOOD
> HAZARD AREA (ZONES CONTAINING THE LETTERS
> "A" OR "V")?   __YES   X NO

USCA5 780

If yes, flood insurance is required by the Flood Disaster
Protection Act of 1973.

If no, flood insurance is not require by the Flood Disaster
Protection Act of 1973.

25.

The flood determination performed by defendant Flood Zone Determination Services

on the Audler property was incorrect.  The property at 3612 Juno Drive is in actuality in an

A zone and therefore in a SFHA.

26.

Mr. Audler's property was damaged by floodwaters from Hurricane Katrina on

August 29, 2005, and the property was not covered by a flood policy on that date by virtue

of the incorrect flood zone determination made by Flood Zone Determination Services.

## THE ISSUANCE OF INCORRECT FLOOD DETERMINATIONS TO THE
## OTHER MEMBERS OF THE CLASS OF PLAINTIFFS

27.

The members of the putative plaintiff class contacted lending institutions for the

purposes of financing or refinancing residential and commercial property located in the State

of Louisiana.

28.

On or before the closing date on these properties, the members of the putative

defendant class were requested to issue flood determinations as to whether or not the

properties were located in a SFHA.  In response, the determination companies issued

determinations on Special Flood Hazard Determination (SFHD) forms, as standardized and

issued by FEMA, advising that the properties were not in SFHAs, and that the purchase of

flood insurance was not required.

USCA5 781

29.

The members of the putative plaintiff class, as a result of the inaccurate flood determinations issued by the members of the putative defendant class, did not have flood insurance at the time of their flood losses from Hurricane Katrina and Hurricane Rita.

## THE LOUISIANA HURRICANES OF 2005 AND THE ABSENCE OF A RESPONSE FROM THE FLOOD DETERMINATION INDUSTRY

30.

At 6:10 a.m. on Monday, August 29, 2005 (CDT), Hurricane Katrina made landfall in the State of Louisiana near Buras-Triumph in Plaquemines Parish. Later in the morning, the Storm struck Metropolitan New Orleans. A powerful storm surge pushed huge waves ahead of the the Hurricane, flooding much of St. Bernard Parish and the New Orleans' Ninth Ward just as Hurricane Betsy had 40 years earlier. Parts of Jefferson, St. Tammany and other parishes were also flooded. In the days that followed, levee breaches inundated almost 80% of the improved property in the City of New Orleans as well as additional Jefferson Parish properties.

31.

Only a matter of days after Katrina's flood waters receded from the southeast Louisiana parishes, southwest Louisiana was slammed by Hurricane Rita on September 21, 2005, causing widespread flooding in Cameron, Calcasieu and other parishes.

32.

The flooding of Louisiana from these two hurricanes was and is the subject of enormous media attention. Indeed, Katrina's flooding has been widely hailed as the greatest natural disaster in American history. The plight of the thousands of flooded Louisiana property owners who had standard property policies but no flood coverage has been well chronicled.

USCA5 782

33.

The defendant class knows and has known that many of these uninsured flooded property owners have properties in border zones of SFHAs, and that the determinations issued on those properties may or may not have been correct. The flood determination industry is aware that many flood victims are uninsured solely due to the defendants' failures to correctly determine the proper flood zone for the plaintiffs' properties.

34.

Despite their knowledge that many uninsured losses from the 2005 Louisiana hurricanes were created by the large margin for error they tolerate in the preparation of flood determinations, the members of the defendant class have not voluntarily acknowledged and responded to their contribution to the uninsured losses from Hurricanes Katrina and Rita. Notwithstanding their capability to do so, the flood determinations industry has not taken upon itself to identify flooded Louisiana properties which were at risk to be miscertified, reassess the accuracy of those certifications and notify and compensate those who are uninsured due to the defendants' incorrect certifications.

## CLASS ACTION ALLEGATIONS

### Plaintiff Class

35.

Plaintiff institutes this class action against defendants on his own behalf and as a representative of a class consisting of all homeowners and business owners who: 1) sustained flood damage from Hurricanes Katrina and Rita in the State of Louisiana; 2) had no flood insurance at the time of their flood losses; and 3) had a flood determination performed on their home or business prior to Hurricanes Katrina and Rita, which incorrectly determined their property to be outside of a Special Flood Hazard Area ("SFHA") when, in fact, the property was located in a SFHA.

USCA5 783

36.

This action satisfies the prerequisites to a class action enunciated in La. C.C.P. art. 591.

37.

The named plaintiff herein is a member of the class he seeks to represent.

38.

The class is so numerous that joinder of all members is impracticable. FEMA estimates that there are in excess of 108,500 homes, excluding businesses, in Louisiana that sustained flood damage due to Hurricane Katrina, and many additional properties were flooded by Hurricane Rita in southwest Louisiana. As stated above, studies of the determination industry indicate that as many as one-third (1/3) of the flood determinations are potentially incorrect. As a result, there are likely thousands of property owners who did not have flood insurance at the time of the Hurricanes due to incorrect flood determinations. The identity of the property owners, and the location of their properties, is readily determinable from records in the possession of the defendants.

39.

There are questions of law and fact common to the plaintiff class including, but not limited to:

    a)    Whether the defendants negligently performed flood determinations for homeowners and business owners in the State of Louisiana;

    b)    Whether the determination companies have negligently misrepresented the accuracy of their flood determinations;

    c)    Whether the determination companies breached the guaranty or warranty of their flood determinations;

USCA5 784

d)   Whether it is foreseeable for determination companies to know that property owners would not obtain flood insurance when a determination is made that a property is outside of a SFHA;

e)   Whether the determination companies owed a duty to the plaintiffs to make a correct flood determination;

These and other questions of law and/or fact are common to the class and predominate over any questions affecting only individual class members.

40.

The claims of the named plaintiff is typical of the claims of the respective class he seeks to represent, in that the named plaintiff and all members of the proposed class have had flood determinations by the defendants that incorrectly found them to be outside a SFHA area when, in fact, their property was actually located in a SFHA, and as a result, failed to have in place flood insurance at the time of the 2005 Louisiana hurricanes. All plaintiffs sustained flood damage as a result of Hurricanes Katrina and/or Rita.

41.

Plaintiff will fairly and adequately represent and protect the interest of the members of the class he seeks to represent.

42.

Plaintiff has retained counsel competent and experienced in complex class action and mass tort litigation to represent him and the members of the proposed class. Accordingly, the interest of the class will adequately be protected and advanced. In addition, there is no conflict of interest among plaintiff and the members of the proposed class.

43.

Class certification is appropriate pursuant to La. C.C.P. art. 592 because, among other things, defendants have acted on grounds generally applicable to the class making

USCA5 785

appropriate injunctive and/or declaratory relief appropriate in the following forms: (1) a court supervised screening program as more fully described below; and (2) a declaratory judgment setting forth the rights of the parties as more fully discussed below.

44.

Class certification is also appropriate pursuant to La. C.C.P. art. 592 because, as set forth above, common issues of law and fact predominate over any individual issues and certification of the claims as class claims is superior to other available methods for the fair and efficient adjudication of these claims.  In addition, there would be enormous economic benefit to the courts and parties in litigating these common issues on a class wide basis rather than in individual trials.  Plaintiff foresees no difficulties in the management of this action as a class action.

Court Supervised Screening Program

45.

Plaintiff also seeks certification of the claims asserted herein pursuant to La. C.C.P. art. 592 for equitable, injunctive, and declaratory relief to create a court supervised screening program funded by the defendants to identify for compensation proper plaintiff class members, i.e., those Louisiana property owners who suffered uninsured flood damage due to miscertification.

46.

The representative plaintiff and the class as a whole will benefit from such relief, and their interests are aligned, because of their shared risk of having an incorrect flood determination. In addition to providing a means for compensating only those persons who are actual victims of miscertification, the court supervised screening program will assure that prior miscertifications will be corrected, thereby protecting Louisiana homeowners and business owners from future uninsured flood losses caused by defendants' certification

USCA5 786

errors. In addition to protecting the interests of the plaintiff class, the defendant class will also benefit from the court supervised screening program in that they will be able to correct miscertifications in areas extremely vulnerable to flooding and thereby avoid additional exposure to homeowners, business owners and their lender clients for future flood events affecting the miscertified properties.

47.

Accordingly, defendants should be required to establish a screening program that includes, *inter alia*:

a)   A requirement that the defendant class identify the certifications they issued on properties flooded by Hurricanes Katrina and Rita which stated that the properties were not in an SFHA;

b)   Establishing a trust fund, in an amount to be determined, to pay for the professional surveying of properties, both residential and commercial, of individuals likely to be members of the plaintiff class.  The properties to be surveyed would be those owned by homeowners and business owners who

(1)   had a mortgage (or previous mortgage);

(2)   had flood damage at the time of the hurricanes;

(3)   had no flood insurance at the time of the hurricanes;

(4)   had been determined by defendants (prior to Hurricanes Katrina and Rita) to be located outside a SFHA; and

(5)   whose property is located in an area which is not clearly outside of an SFHA.

c)   Notification to the uninsured flood victim of miscertifications identified by the screening program.

USCA5 787

d)    Appraisal of flood damage to class members identified through the screening program.

48.

Plaintiffs and the members of the class have no adequate remedy at law in that they do not have the financial resources to have their property surveyed and, if found to be in a SFHA, have an appraisal of their flood damage.  Without a court approved screening program as described above, plaintiffs and the members of the class will continue to face "uninsured" flood damage as a direct and proximate result of the incorrect flood determinations performed by the defendants.

**Declaratory Relief**

49.

In addition to the other relief sought, the putative plaintiffs request that this court, pursuant to La. C.C.P. arts. 591 *et seq.* declare the rights, status, and legal relations of the parties as a result of the mortgage contracts and flood determinations at issue, specifically the right of the plaintiffs to recover damages from the flood determination companies, as a result of their incorrect determination of plaintiffs' properties to be outside a SFHA when, in fact, the properties were located within a SFHA.

**Defendant Class**

50.

Defendants are a putative class consisting of all determination companies which undertook the responsibility to make flood determinations prior to plaintiffs' purchase or refinancing of their home or business before Hurricane Katrina.   The defendant class satisfies the prerequisites for a class action.  The class is so numerous that joinder is impracticable.  The questions of law and fact common to the class are the same as those of

USCA5 788

the putative plaintiffs. Also, the claim against each defendant is typical of the claims against the defendant class.

## FIRST CAUSE OF ACTION

### Negligence and Negligent Misrepresentation

51.

At all times relevant to this action, the members of the defendant class negligently made representations and omissions of facts as set forth above. The issuance of incorrect flood determination constitutes negligent misrepresentation actionable pursuant to La. Civ. Code Arts. 2315 and 2316.

52.

At all times herein mentioned, the members of the defendant class had a duty to exercise reasonable care in the determination of the flood zone in which the members of the plaintiff class members' properties were located. The putative defendants failed to exercise ordinary care in the determination of the flood zone, in that putative defendants knew, or should have known, that the manner in which the flood zone was determined was faulty, careless and riddled with errors.

## SECOND CAUSE OF ACTION

### Failure to Warn

53.

The putative defendants negligently and carelessly failed to warn mortgage companies, banks, and other lenders, as well as the putative plaintiffs herein, that their determinations of flood zones were not accurate, or were subject to a high risk of inaccuracy, and further failed to warn of prior incorrect flood determinations known to them so as to allow the putative plaintiffs an opportunity to obtain accurate determinations of their flood zones.

USCA5 789

## THIRD CAUSE OF ACTION

Breach of Guaranty and/or Warranty

54.

The putative defendants made a guaranty and/or warranty at the time they issued the subject flood determinations that the determinations were 100% accurate, and that the putative defendants would be 100% responsible if the flood determinations were incorrect.

55.

The putative defendants breached their guaranty and/or warranty to provide accurate flood determinations of the putative plaintiffs' properties.

## FOURTH CAUSE OF ACTION

Detrimental Reliance

56.

The putative plaintiffs incorporate by reference and hereby reallege paragraphs 1 through 74 above as though fully set forth in words and figures.

57.

At all times herein relevant to this action, the putative plaintiffs relied on the flood determinations issued by the putative defendants, which stated that the plaintiffs' properties were not located in areas requiring flood insurance.

58.

The putative plaintiffs' reliance on the flood determinations issued by the putative defendants was detrimental to them, in that it caused them to not purchase and/or retain flood insurance on their properties, or alternatively, to decline to purchase real property in a flood zone, giving rise to claims for detrimental reliance.

USCA5 790

## DAMAGES

### 59.

That as a direct and legal result of the aforesaid acts or omissions of the putative defendants, the putative plaintiffs unknowingly purchased property in a flood zone and/or failed to obtain and/or retain flood insurance (structural and contents) to cover the full amount of the value of their properties, and as a result, suffered uninsured flood losses.

### 60.

That as a direct and legal result of the aforesaid acts or omissions of the putative defendants, the putative plaintiffs have incurred and will continue to incur, the following damages, expenses and costs which were not covered by insurance:

(a)     flood damage to the structure on their properties;

(b)     flood damage to the contents or personal property located inside the structures;

(c)     loss of use of their residential properties;

(d)     increased cost of construction (ICC);

(e)     loss of business income from their commercial properties; and

(f)     such other general and special damages as will be disclosed in discovery and proven at trial.

### 61.

As a result of these uninsured losses, plaintiffs have also suffered:

(a)     emotional and physical distress, anguish, grief and inconvenience;

(b)     loss of enjoyment of life; and

(c)     such other damages as will be disclosed in discovery and proven at trial.

USCA5 791

<u>**PRAYER**</u>

W H E R E F O R E, plaintiff prays:

62.

That the defendants be served with a copy of this class action complaint and summoned to appear and answer same;

63.

That after due proceedings, this action be certified as a class action pursuant to the provisions of La.C.C.P. art. 591 *et seq.*, for the purposes of determining the common issues of liability for damages;

64.

That upon certification of the class action, the Court call for the formulation of a suitable case management plan pursuant to La.C.C.P. art. 593.1(C);

65.

That this action be certified as a class action on behalf of the proposed classes described herein, and that counsel of record be appointed to represent the classes;

66.

That a comprehensive court supervised screening program be created as proposed herein to assure the identification of the owners of those properties, both residential and commercial, that were incorrectly determined to be outside of a special flood hazard area, and that an appropriate appraisal be performed on the flood damage to those properties.

67.

That after due proceedings, there be a judgment in this matter in favor of the putative plaintiff class and against the putative defendant class for such damages as are reasonable in the premises. The plaintiffs further pray for a judgment declaring defendant class members liable to the petitioner and all members of the plaintiff class for damages resulting

USCA5 792

from the failure to appropriately determine whether properties were located in a special flood hazard area.

68.

That the rights of the representative plaintiff and putative plaintiff class members be established to show their entitlement to compensatory damages, and the amounts thereof be reserved for determination in their individual actions when appropriate.

69.

That plaintiff recover attorneys' fees and costs for the prosecution of this class action, together with interest on all damages from the date of judicial demand until paid, and for any and all equitable relief as the law and the nature of the case may allow.

Respectfully submitted,

R. GLENN CATER, ESQ. (LA Bar # 4045)
JENNIFER N. WILLIS, ESQ. (LA Bar # 14377)
Cater & Willis
3723 Canal Street
New Orleans, Louisiana 70119
Post Office Box 792450
New Orleans, Louisiana 70179
Telephone:   (504) 488-6300
Facsimile:   (504) 488-6302

and

DAVID A. BOWLING, ESQ. (LA Bar #1726)
SUSANNAH C. McKINNEY, ESQ. (LA Bar # 14349)
Wilson & Bowling, A.P.L.C.
Place St. Charles
201 St. Charles Avenue, Suite 2411
New Orleans, Louisiana   70170-2411
Telephone:   (504) 586-5200
Facsimile:   (504) 586-5201

and

USCA5 793

MARK W. DAVIS, ESQ. (MS Bar #5840)
MARTIN D. CRUMP, ESQ. (MS Bar #10652)
Davis & Feder, P.A.
1712 15ᵗʰ Street, Suite 300
P. O. Drawer 6829
Gulfport, Mississippi  39506
Telephone:   (228) 863-6000
Facsimile:    (228) 864-8907

Please serve all defendants via La. Long Arm Statute La.R.S. 13:3201 et seq except numbers 10 and 18 which are to be served through the appropriate Sheriff's Office:

1.   Flood Zone Determination Services
     Officer of the Corporation
     819 Walnut Street
     Kansas City, Missouri  64106

     and

     Flood Zone Determination Services
     520 East Main Street
     Carnegie, Pennsylvania  15106

2.   1ˢᵗ Flood of Norwalk, LLC
     Officer of the Corporation
     60 Newton Street
     Norwalk, Ohio  44857

3.   AFC/Aeraflood
     Officer of the Corporation
     807 Charles Avenue #428
     Pittsburgh, Pennsylvania  15136

4.   Advantage Air, Land & Sea, Inc.
     Officer of the Corporation
     2859 Central Street, Suite 184
     Evanston, Illinois  60201

5.   America's Flood Services, Inc.
     Officer of the Corporation
     2941 Sunrise Boulevard, Suite 180
     Rancho Cordova, California  95742-6589

6.   American Flood Research, Inc.
     Officer of the Corporation
     1820 Preston Park Boulevard, Suite 1100
     Plano, Texas  75093-3664

USCA5 794

7.    CBA Information Services
      Officer of the Corporation
      IV Executive Campus, Suite 200
      Cherry Hill, New Jersey  08002-4105

8.    CBC Innovis
      Officer of the Corporation
      819 Walnut Street
      Kansas City, Missouri  64106

9.    Centerpoint Flood Services, Inc.
      Officer of the Corporation
      527 Airway Drive
      Alcoa, Tennessee  37701

10.   Credit Bureau of Louisiana
      Officer of the Corporation
      610 Crockett Street
      Shreveport, Louisiana  71101

11.   FNIS Flood Services
      Officer of the Corporation
      1521 N. Cooper Street, 4th Floor
      Arlington, Texas  76011

12.   Federal Flood Certification Corporation
      Officer of the Corporation
      4000 Horizon Way
      Irving, Texas  75063

13.   First American Flood Data Services
      Officer of the Corporation
      11902 Burnet Road
      Austin, Texas  78758-2902

14.   Transamerica Flood Hazard Certification, Inc.
      Officer of the Corporation
      First American Way
      Santa Ana, California  92707

15.   First Lenders Data, Inc.
      Officer of the Corporation
      7000 N. MoPac Expressway, 2nd Floor, Suite 2127
      Austin, Texas  78731

16.   Flood Insurance Services, Inc.
      Officer of the Corporation
      4000 Horizon Way
      Irving, Texas  75063

USCA5 795

17.  Flood Zone Correction, Inc.
     Officer of the Corporation
     1665 Palm Beach Lakes Boulevard, Suite 900
     West Palm Beach, Florida 33401

18.  Floodgard, Inc.
     Officer of the Corporation
     72060 Ramos Avenue
     Covington, Louisiana 70433

19.  FNIS Flood Services d/b/a LSI Flood Services
     Officer of the Corporation
     1521 North Cooper Street, Fourth Floor
     Arlington, Texas 76011

20.  Geotrac, Inc.
     Officer of the Corporation
     1521 North Cooper Street, Fourth Floor
     Arlington, Texas 76011

21.  Integrated Loan Services
     Officer of the Corporation
     27 Inwood Road
     Rocky Hill, Connecticut 06067

22.  Landsafe Flood Determination, Inc.
     Officer of the Corporation
     6400 Legacy Drive
     Plano, Texas 75024

23.  My Flood Zone
     Officer of the Corporation
     19038 Lenton Place SE #233
     Monroe, Washington 98272

24.  National Flood Research (NFR) a/k/a Factual Flood Data
     Officer of the Corporation
     5777 Central Avenue, Suite 225
     Boulder, Colorado 80301

25.  Old Republic Site Management Services, Inc.
     Officer of the Corporation
     3700 Forums Drive, Suite 105
     Flower Mound, Texas 75028

26.  Property Research Data, Ltd.
     Officer of the Corporation
     2730 Quail Land
     Northbrook, Illinois 60062

USCA5 796

27.  Stewart Mortgage Information
     Officer of the Corporation
     1980 Post Oak Boulevard, Suite 900
     Houston, Texas 77056

28.  Stormwater Research Group (SRG)
     Officer of the Corporation
     6808 Hill Meadow Drive
     Austin, Texas 78736

29.  Trans Union Settlement Solutions a/k/a Trans Union Flood Compliance Services
     Officer of the Corporation
     348 Harris Hill Road
     Buffalo, New York 14221

30.  Nationwide Total Flood Services, Inc.
     Officer of the Corporation
     6033 W. Century Boulevard, Suite 1075
     Los Angeles, California 90045

31.  Wells Fargo Insurance, Inc.
     Officer of the Corporation
     600 S. Highway 169, 12th Floor
     St. Louis, Park, Minnesota 55426

p:\30441\Plead\ClassAction\Petition-082506

USCA5 797