**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION**

| | | |
|---|---|---|
| **IN RE: FEMA TRAILER** | ) | **MDL NO. 07-1873** |
| **FORMALDEHYDE PRODUCT** | ) | |
| **LIABILITY LITIGATION** | ) | **SECTION "N-4"** |
| | ) | |
| | ) | **JUDGE ENGELHARDT** |
| | ) | |
| **THIS DOCUMENT IS RELATED TO** | ) | **MAG. JUDGE ROBY** |
| **THE ADMINISTRATIVE MASTER** | ) | |
| **COMPLAINT** | ) | |

**MEMORANDUM IN SUPPORT OF
MOTION TO STAY OR TO EXTEND
DISCOVERY, TESTING AND PROCEDURAL DEADLINES
SOLELY AS THEY RELATE TO NEW DEFENDANTS
CMH MANUFACTURING INC., SOUTHERN ENERGY HOMES, INC.,
GILES INDUSTRIES, INC., PALM HARBOR MFG., LP, AND
PALM HARBOR ALBEMARLE, LLC
AND
REQUEST FOR EXPEDITED HEARING**

01641340.1

Newly Added Defendants CMH Manufacturing, Inc., Southern Energy Homes, Inc., Giles Industries, Inc., Palm Harbor Mfg., LP and Palm Harbor Albemarle, LLC (collectively hereinafter referred to as "New Defendants") hereby respectfully offer this memorandum in support of their motion, pursuant to Fed. R. Civ. P. 26(c), for an order staying all discovery, testing and procedural deadlines solely as they relate to New Defendants, pending this Court's ruling upon New Defendants' Motion to Dismiss Administrative Master Complaint.  The New Defendants' Motion to Dismiss establishes, *inter alia*, that this Court does not have subject matter jurisdiction over the Plaintiffs' claims against the New Defendants because the Plaintiffs do not have the requisite Article III standing against the New Defendants.  This civil action should not proceed against the New Defendants until this Court has determined whether it has subject matter jurisdiction over the Plaintiffs' claims against the New Defendants.  Such an order staying all deadlines relating to the New Defendants would allow all other parts of the case to proceed generally against the existing Defendants in the matter, just not as to those housing units manufactured by any New Defendant.

## INTRODUCTION

For the past two years, since May 2006, Plaintiffs' counsel has been pursuing claims against the existing defendants in this litigation, primarily manufacturers of travel trailers.  In March, by way of their Administrative Master Complaint ("AMC"), Plaintiffs' counsel attempted to "add in" the entire manufactured housing industry, by suing every manufactured housing company they could identify.

While this memorandum sets forth the valid legal reasons for issuing a stay related to the New Defendants, there are also some very real and overriding practical considerations that the Court should take into account.  The truth of the matter is that the manufactured housing

2

01641340.1

defendants are in a substantively different posture than the existing travel trailer defendants, and Plaintiffs' claims against the two groups of Defendants can and should be handled differently.

From a judicial management perspective, the manufactured home defendants are different because they have a very small "profile" in this litigation, having sold significantly smaller numbers of units to FEMA -- the great majority of which were never occupied by the putative class and remain on FEMA's lots, unused and unopened. For instance, out of the over 110,000 housing units at issue in this litigation, it appears that Palm Harbor only sold 440 homes to FEMA and 217 of these appear on FEMA's Never Occupied List. Thus, there are only 213 homes that putative class members could have theoretically lived in, and Plaintiffs have yet to identify a single Plaintiff on any list who resided in a Palm Harbor home.[1]

From a legal analysis perspective, manufactured home defendants are different because, unlike the travel trailers, every aspect of the manufactured home industry is regulated by HUD. In fact, many years ago, HUD both investigated and wrestled with the formaldehyde issues. As a result of that investigation, HUD has established formaldehyde standards, regulates formaldehyde emissions in building products, requires HUD inspection and certification of the units for compliance with HUD regulations prior to leaving the manufacturing plant, and requires that formaldehyde warnings be placed in each home.[2] Additionally, HUD regulations address

---

[1] Furthermore, Plaintiffs are intentionally testing disproportionate and non-representative samples of manufactured houses that have never been occupied. For instance, Plaintiffs are testing at least 40 Palm Harbor Never Occupied Units which comprises almost 20% of all homes in which any putative class member may have theoretically lived (217). Thus, Palm Harbor's expense and burden of matching Plaintiffs' testing will be totally disproportionate in relation to the total amount of units it sold to FEMA. Apparently, all of manufactured home defendants are in this same situation.

[2] As a result, Plaintiff's "failure to warn" claim under the Louisiana Products Liability Act fails as a matter of law as to the manufactured housing defendants. As Plaintiffs' counsel admits in the AMC, HUD mandated a warning concerning formaldehyde exposure and promulgated the text of the warning in the Code of Federal Regulations. Under *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947), all persons are charged with constructive knowledge of the published federal laws, rules and regulations. Under Louisiana Civil Code Article 5, no person may claim ignorance of the law. Even if one or more of the Plaintiffs could demonstrate that there was no HUD-mandated

(*Footnote continued on next page*)

01641340.1

ventilation systems and discuss indoor air exchange requirements which are not applicable to the travel trailer industry.

From a fairness perspective, as is demonstrated below, the formaldehyde testing of the manufactured homes will be much more burdensome, labor intensive, time consuming and expensive than the testing of the travel trailers. Thus, Plaintiffs' Counsel's ongoing testing of the never occupied units is falling totally out of proportion onto New Defendants.

Accordingly, for judicial, legal, and practical reasons, it makes sense to treat the manufactured homes defendants differently.

## SUMMARY OF ARGUMENT FOR ISSUING STAY

As to New Defendants, discovery, testing and procedural issues should be stayed for four independently sufficient reasons. First, New Defendants' Motion to Dismiss challenges Plaintiffs' Article III standing in this case and this Court's subject matter jurisdiction over the matter. The law is quite clear that all such threshold jurisdictional challenges should, as a matter of law and fundamental fairness, be resolved before discovery as to New Defendants begins.

Second, clear authority of the United States Supreme Court strongly suggests that this Court should rule upon New Defendants' pending Motion to Dismiss prior to requiring New Defendants to engage in the extremely expensive and time consuming defense of this expansive litigation. *Bell Atlantic Corp., et al v. Twombly,* 127 S.Ct. 1955 (2007) ("*Twombly*"); *see also Chudasama v. Mazda Motor Corp.,* 123 F. 3d 1353 (11th Cir. 1997) (*"Chudasama"*).

Third, Plaintiffs' counsel and the existing Defendants have been fully engaged in the defense of this case for two full years. Fundamental fairness requires that New Defendants be

---

(*Footnote continued from previous page*)
warning posted in one of the manufactured houses, the Plaintiffs' claim of a failure to warn would still fail as a matter of law because they are charged with knowledge of the warning in any event because it is published in the Code of Federal Regulations.

4

01641340.1

given a fair amount of time to adequately examine Plaintiffs' claims, develop legal defenses, determine case strategy, assess Plaintiffs' proposed discovery, assess their need for discovery from Plaintiffs, appreciate the science involved in Plaintiffs' claims, conduct internal investigations, determine case expertise needs, consult experts, retain experts, consider testing protocols, and prepare to oppose Plaintiffs' Motion for Class Certification.  In sum, New Defendants clearly have an interest and right to proceed with discovery, testing and class certification in a manner and timeframe that does not work such extreme prejudice upon them. Indeed, the PLC, DLC and this Court have already expressly or impliedly recognized the need for stays or extensions to discovery deadlines involving the newly added defendants in this case.

Furthermore, while a refusal to grant a stay will inflict severe prejudice on New Defendants, such a stay will not prejudice the Plaintiffs, the existing Defendants or the Court, all of whom can proceed with discovery, testing and class discovery on the current schedule the Court has set.[3]  To the same end, such a stay would certainly not prejudice FEMA, who can simply set aside New Defendants' few housing units while transferring or disposing of the units of existing defendants for which testing will have been completed in accordance with Pretrial Order No. 3.

Finally, the formaldehyde testing of the manufactured homes is much more labor intensive, time consuming and expensive than the testing of the travel trailer units and will as a matter of necessity need to be conducted on different timetables.

---

[3] Indeed, Plaintiffs should not be heard to complain of prejudice by such a stay which is necessitated by Plaintiffs' untimely and improper attempt to inject New Defendants into the litigation almost 2 years after the first lawsuits were initiated.

5

01641340.1

## ARGUMENT

**I.     This Court Must Decide Whether It Has Subject Matter Jurisdiction Over The New Defendants Before Discovery Can Proceed.**

Discovery involving New Defendants in this case, including the inspections of the New Defendants' housing units, and collateral procedural fights (e.g., class certification) should not proceed in this case as they relate to New Defendants when subject matter jurisdiction is in question. The United States Supreme Court recently reaffirmed the "long and venerable line of our cases" holding that, "'[w]ithout jurisdiction the court cannot proceed at all in any cause'. . . . The requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception.'" *Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 94-95 (1998) (citations omitted); *see also Hix v. U.S. Army Corps of Engineers,* 155 Fed. Appx. 121, 127 (5th Cir. 2005) ("Without jurisdiction the court cannot proceed at all in any case. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to a court is that of announcing the fact and dismissing the cause.").

In *Ford v. NYL Care Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 n.1 (5th Cir. 2002), the Fifth Circuit recognized "the fundamental point that wherever possible, Article III standing must be addressed before other issues 'because it determines the court's fundamental power even to hear the suit.'"[4]

As summarized by the Southern District of Texas:

> The Fifth Circuit has explained: Where a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the Constitution and statute, the federal tribunal poaches upon

---

[4] *See also Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).

> the territory of a coordinate judicial system, and its decisions, opinions, and orders are of no effect.

*In re Silica Products Liability Litigation,* 398 F. Supp. 2d 563, 645 (S.D. Tex. 2003) (citing *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 n. 6 (5th Cir. 2001)).

As indicated above, New Defendants' Motion to Dismiss and supporting brief establish that this Court has no jurisdiction over New Defendants in this matter because the Plaintiffs do not have Article III standing against the New Defendants. This Court must decide the threshold issue of jurisdiction before anything else happens involving New Defendants, including discovery. *See, e.g., Dresser v. Ingolia,* 2007 WL 2571939 (E.D. La Sep. 4, 2007) (district court granted defendant's motion to stay discovery pending the outcome of its decision on defendant's motion to dismiss for lack of subject-matter jurisdiction); *Southern Christian Leadership Conference*, *Louisiana Chapter v. Supreme Court of the State of Louisiana*, 61 F.Supp. 2d 499, 503 (E.D. La. 1999) (motion to stay granted pending a ruling on defendants' motion to dismiss for failure to state a claim, or alternatively for lack of standing).

**II.     Clear Legal Precedent Mandates a Temporary Extension of All Deadlines As They Relate to New Defendants Pending a Ruling on New Defendants' Motion to Dismiss.**

New Defendants' Motion to Dismiss challenges Plaintiffs' AMC and the jurisdiction of this Honorable Court on various grounds. Under *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007) ("*Twombly*") and related cases, discovery, the inspection of New Defendants' housing units and procedural deadlines should be stayed or extended as they relate to New Defendants until the motion to dismiss and jurisdictional challenges to Plaintiffs' AMC are resolved by this Court.

### A. *Twombly* Requires More than Labels and Conclusions that Fail to Rise Above the Speculative Level.

In holding that plaintiff failed to state a claim sufficient to survive defendant's motion to dismiss, the United States Supreme Court in *Twombly* explained that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' **requires more than labels and conclusions**, and a formulaic recitation of the elements of a cause of action will not do…." *Id.* at 1964-65 (emphasis added).[5]  Importantly, one of the significant factors in the *Twombly* Court's decision requiring plaintiffs to plead "more than labels and legal conclusions" was the substantial cost of litigation.

The cost-conscious Court recognized that "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." *Id.* at 1966. The Court reasoned that because "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases," the requirement of fact pleading is necessary to weed out[6] those cases with no reasonably founded

---

[5] Similarly, the Fifth Circuit has embraced *Twombly*'s new "plausible claim" requirement. *See, e.g., Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing *Twombly*, 478 U.S. at 1965) ("Factual allegations must be enough to raise a right to relief **above the speculative level**."); *see Samford v. Staples,* 249 Fed. Appx. 1001 (5th Cir. 2007) (holding conclusory allegations insufficient to overcome motion to dismiss under *Twombly*); 5 Charles Allen Wright & Arthur Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (emphasis added).

[6] The Court also explained,

> [i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through "careful case management," given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side.

(*Footnote continued on next page*)

hope that discovery will reveal relevant evidence to support a claim. *Id.* at 1968. Moreover, the new "plausibility" dismissal standard prevents plaintiffs with largely groundless claims from using costly discovery to increase the settlement value of cases and seeking support for claims that have not been plead. *Id.* at 1966. The Court concluded, "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 1967.

The Eleventh Circuit reasoned similarly in the case of *Chudasama v. Mazda Motor Corp.,* 123 F. 3d 1353, 1367 (11th Cir. 1997) ("*Chudasama*"). In *Chudasama*, the Eleventh Circuit explained that "**[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins**." (emphasis supplied). The Eleventh Circuit noted that because a motion to dismiss "always presents a purely legal question; there are no issues of fact because the allegations contained in the pleadings are presumed to be true. Therefore, neither the parties nor the court have any need for discovery before the court rules on the motion." *Id.* at 1367 (citations omitted).

In reaching the conclusion that a motion to dismiss should be ruled upon before discovery begins in a case, the Eleventh Circuit examined the litany of burdens and expenses that discovery places on not only the litigants, but also the court, which may be avoided by a court's ruling on a motion to dismiss:

> Discovery imposes several costs on the litigant from whom discovery is sought. These burdens include the time spent searching for and compiling relevant documents; the time,

---

(*Footnote continued from previous page*)
*Id.* at 1967 (citing, *e.g.*, Easterbrook, *Discovery as Abuse*, 69 B.U.L. Rev. 635, 638 (1989) ("Judges can do little about impositional discovery when the parties control the legal claims to be presented and conduct the discovery themselves.")).

9

01641340.1

> expense, and aggravation of preparing for and attending depositions; the costs of copying and shipping documents; and the attorneys' fees generated in interpreting discovery requests, drafting responses to interrogatories and coordinating responses to production requests, advising the client as to which documents should be disclosed and which ones withheld, and determining whether certain information is privileged. . . Both parties incur costs related to the delay discovery imposes on reaching the merits of the case. Finally, discovery imposes burdens on the judicial system; scarce judicial resources must be diverted from other cases to resolve discovery disputes.
>
> **If the district court dismisses a non-meritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided.** Conversely, delaying ruling on a motion to dismiss such a claim until after the parties complete discovery encourages abusive discovery and, if the court ultimately dismisses the claim, imposes, unnecessary costs. For these reasons, any legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery state, if possible. **Allowing a case to proceed through the pretrial processes with an invalid claim that increases the costs of the case does nothing but waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, squander scarce judicial resources, and damage the integrity and the public's perception of the federal judicial system.**

*Id.* at 1367-68. (emphasis added).

Accordingly, this Honorable Court should address the issues raised in New Defendants' Motion to Dismiss prior to the New Defendants being required to engage in overwhelmingly expensive and time consuming litigation. This is especially true given that Plaintiffs' allegations in the AMC, as shown below, fall woefully below any requisite minimum pleading standard.

### B. The Labels and Legal Conclusions in Plaintiffs' AMC Fail to Satisfy the *Twombly* Standard.

A cursory review of Plaintiffs' AMC reveals a slew of potential dismissal grounds that should necessarily be resolved before discovery is allowed to proceed. For example, Plaintiffs do not separately and severally allege <u>any</u> <u>fact</u> supporting their grounds for Article III standing

10

against the New Defendants or for subject-matter jurisdiction. Rather, Plaintiffs group a litany of impermissible "legal conclusions" masquerading as facts to support those grounds. Aside from the spare residence assertions contained in the "Parties" section of the AMC, Plaintiffs do make not a single specific factual allegation directly against any New Defendant nor do they even attempt to allege that a specific plaintiff with Article III standing resided in a specific New Defendant's housing unit. New Defendants are simply and impermissibly lumped in with the other Defendants under an deluge of allegations generally directed to an entire industry. This is of particular concern to New Defendants who have not been previously sued heretofore with a valid complaint, either in this Court or in any other court for the allegations at issue here.

Moreover, all of this expensive discovery, testing and procedural disputes are moving rapidly forward despite that fact that the only document (improperly) joining the New Defendants in the litigation is styled as an "Administrative Master Complaint" which was improperly filed directly in the MDL Court. Neither the Rules of Procedure of the Judicial Panel on Multidistrict Litigation nor their enabling statute provide for the direct initiation of a lawsuit before the multi-district court, and therefore the "Administrative Master Complaint" does not properly "commence" an action against the New Defendants.[7] Therefore, no complaint against

---

[7]   The Rules of Procedure of the Judicial Panel on Multidistrict Litigation promulgated pursuant to 28 U.S.C. § 1407 contemplate the transfer of an action commenced in or removed to a federal district court where jurisdiction and venue are originally proper. The procedures also appropriately allow for objections to transfers of "tag-along" actions.

> **Rule 1.6. Transfer of Files**
> (a)  Upon receipt of a certified copy of a **transfer order** from the clerks of the transferee district court, the clerk of the transferor district court shall forward to the clerk of the transferee district court the complete original file and a certified copy of the docket sheet for each transferred action.
>
> **Rule 7.4.  Conditional Transfer Orders for "Tag-Along Actions"**
> (a) Upon learning of the pendency of a potential "tag-along action," as defined in Rule 1.1 of these Rules, an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court . . . The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer,

(*Footnote continued on next page*)

01641340.1

the New Defendants exists that could have been served with the Summons, and no case has been filed in any judicial district whatsoever asserting claims against or naming these Defendants. Thus, New Defendants are being required to expend significant resources in a "matter" which does not really even exist.

In light of this situation, the clear message from *Twombly* and *Chudasama* is that a district court should rule on a motion to dismiss as a threshold matter and narrow the issues in the case in order to reduce the risk of abusive discovery. The discussion in *Twombly* and *Chudasama* could not be more applicable to the case at hand, which is a purported nationwide class action asserting nine different claims under federal law and four different states' law against sixty-three (63) "Manufacturing Defendants" and the federal government. (Doc. No. 109, pp. 10-24). In a nationwide class action, *every* claim for relief against every *different* defendant significantly enlarges the scope of discovery. Thus, the burden discovery will place on the parties and the Court in this case will be significant, which is especially true if Plaintiffs' "labels and legal conclusions" that fail to rise "above the speculative level" are allowed to continue unfettered. As such, the motions to dismiss Plaintiffs' claims should be decided prior to the beginning of discovery.

---

(*Footnote continued from previous page*)
    shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

Similarly, the enabling statute for the Panel on Multidistrict Litigation, 28 U.S.C. § 1407, does not contemplate the filing of original actions into an ongoing MDL proceeding but rather, simply provides a mechanism for transfer of an action originally commenced in or removed to a federal district court where jurisdiction and venue are proper:

> **Multidistrict Litigation**
> **(a)** When civil actions involving one or more common questions of fact are **pending in different districts**, such actions may be **transferred** to any district for coordinated or consolidated pretrial proceedings. Such **transfers** shall be made by the judicial panel on multidistrict litigation. . . Each action so **transferred shall be remanded** by the panel at or before the conclusion of such pretrial proceedings to the **district court from which it was transferred . . .**

12

01641340.1

### III. Fundamental Fairness Requires That New Defendants Be Given An Opportunity to Assess Plaintiffs' Claims and Prepare A Defense.

As stated above, Plaintiffs' counsel and the existing Defendants have been totally immersed in this litigation for almost two years. The addition of New Defendants in this action in the middle of discovery, testing of housing units and class certification discovery is not the fault of New Defendants but rather a result of the belated decision by Plaintiffs' counsel to expand exponentially this litigation. New Defendants should not be held hostage to Plaintiffs' deadlines and discovery until they have a fair opportunity to adequately examine Plaintiffs claims, develop legal defenses, determine case strategy, assess Plaintiffs' proposed discovery, assess their need for discovery from Plaintiffs,[8] appreciate the science involved in Plaintiffs' claims, conduct internal investigations, determine case expertise needs, consult experts, retain experts, consider testing protocols, and prepare to oppose Plaintiffs' Motion for Class Certification.

Indeed, this Court contemplated the need for such extensions when it fashioned Pretrial Order No. 2. This Court recognized, "[n]othing in this Order shall be interpreted to restrict the ability of the parties to stipulate to an extension of discovery deadlines in a particular case or to move for an extension of discovery deadlines in a particular case based on a showing of good cause." (Doc. No. 87, p. 5 at ¶ II.D).[9] As demonstrated herein, New Defendants have clearly met their "good cause" showing.

Similarly, in Joint Report No. 2 of Plaintiffs' and Defendants' Liaison Counsel ("Joint Report No. 2"), the PLC and the DLC stipulated that the addition of new defendants in the AMC

---

[8] The New Defendants were not provided any meaningful opportunity to participate in the drafting of Master Interrogatories and Requests for Production insofar as those were completed and served 15 days before New Defendants' response to the AMC was even due to be filed.

[9] In Pretrial Order No. 3 dated April 8, 2008, the Court affirmed extensions to discovery could be allowed upon a "good cause showing." (Doc. No. 123, p. 2 at ¶ (5)).

13

01641340.1

could necessitate the need for deadline extensions. (Doc. No. 111). In Joint Report No. 2, the PLC and DLC noted, "[t]he AMC also adds additional manufacturer defendants that have been identified. The approximate total number of manufacturer defendants is sixty (60). **The addition of the new manufacturer defendants may necessitate the extension of certain discovery deadlines put in place in Pre-Trial Order Number 2 (DOC No. 87)."** (*Id.* at ¶ IV.) (emphasis added). The PLC and DLC contemplated precisely the scenario whereby it would be necessary to afford the added defendants deadline extensions.

## IV. The Testing of the Manufactured Homes Is Entirely Different From Testing Travel Trailers and Is Proving Time Consuming and Exceedingly Expensive.

Having been advised by Defendants' Liaison Counsel regarding this Court's concern about extending any deadlines, many of the newly added defendants have attempted to hurriedly retain experts, accumulate data necessary to develop testing protocols, assign personnel, retain contractors to provide equipment only to find the practicalities of testing are proving in many cases insurmountable.

Proper testing protocols for the manufactured homes, in order to mimic actual living conditions, must take into account both passive ventilation and operation of mechanical ventilation to achieve realistic air exchange rates. Unlike the travel trailers, however, manufactured homes are not factory equipped with generators or pre-installed HVAC units. Therefore, the testing of the units presents the following difficulties and expenses that are not common with travel trailers:

1)   Electricity is needed to operate the ventilation and HVAC systems. Electricity is not readily available at the FEMA sites.

2)   The homes as stored by FEMA are often not located in close enough proximity to each other to allow for multiple units to be powered by a single generator.

3)   FEMA approved electricians must be brought in to wire the homes.

4)  Air compressors must be brought in and electrically installed for each unit to run the HVAC system.

5)  HVAC contractors must be brought in to install the HVAC units.

6)  Some of the homes are stored so closely that the HVAC units, stored in the homes, cannot be removed from the units because the dimensions of the air conditioners are greater than the space between the homes.

While these matters may be described by Plaintiffs' counsel as mere inconveniences, these undue costs, problems and logistics are truly unjust in light of the fact that Plaintiffs' counsel has not even been able to allege that a single Plaintiff has Article III standing against a New Defendant. This is true DESPITE the fact that Plaintiffs' counsel has been working on these cases for 2 years and New Defendants less than 60 days.

## CONCLUSION

The necessity of determining the threshold issues of Article III standing and subject matter jurisdiction, as well as *Twombly,* common sense, fundamental fairness and judicial economy all mandate a stay of discovery, testing and procedural issues as they relate to the New Defendants. Because New Defendants' motions to dismiss may dispose of this case entirely, a stay of these deadlines and matters as to them is necessary to allow this Court to consider the threshold issues of Article III standing and subject matter jurisdiction. Furthermore, New Defendants should be accorded additional time to prepare their defense, consider and retain experts, develop protocols and make other practical considerations crucial to the defense of Plaintiffs' claims. In sum, it makes sense, logically, legally and factually, to treat the New Defendants differently and to put them on a separate defensive track.

WHEREFORE, New Defendants respectfully request that this Court grant its motion to stay or extend indefinitely discovery, testing and procedural deadlines solely as they relate to New Defendants, until this Court rules upon New Defendants' motion to dismiss. Such an order

15
01641340.1

may allow all other parts of the case to proceed generally against the existing defendants in the matter, just not as to those housing units manufactured by any New Defendant. New Defendants also respectfully request an expedited hearing on this motion to stay.

Respectfully submitted,

/s/ *James K. Carroll*
James K. Carroll
One of the Attorneys for New Defendants

**OF COUNSEL:**

FOWLER RODRIGUEZ & CHALOS
400 Poydras Street, 30th Floor
New Orleans, Louisiana 70130
Telephone: 504-523-2600
Fax: 504-523-2705

- and -

Lee E. Bains, Jr.
Thomas W. Thagard, III
Edward A. "Ted" Hosp
Edward S. Sledge IV
MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2616
Telephone: (205) 254-1000
Fax: (205) 254-1999

01641340.1

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 19, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document by first-class mail to all counsel of record who are non-CM/ECF participants.

                                        */s/ James K. Carroll*
                                        Of Counsel