11.7    **Company Board Nomination.** The Company shall have agreed to nominate Alan C. Neely for election to its Board of Directors for so long as Mr. Neely is employed under the Employment Agreement, subject to the Board of Directors' fiduciary obligations under Delaware law and duties and responsibilities under applicable securities laws and exchange listing requirements.

**Section XII**
**THE CLOSING**

12.1    **Time and Date.** Subject to the terms and conditions set forth herein, the closing of the transactions contemplated hereby (the "Closing") shall take place, effective as of March 3, 2006 (the "Effective Date"), by overnight delivery and facsimile and/or email transmission of documents and instruments such date as may be agreed upon by them, but in no event later than March 20, 2006. unless extended by written agreement of the parties (the "Closing Date").

12.2    **Deliveries by Sellers at Closing.** At the Closing, the Sellers shall deliver or cause to be delivered to the respective Purchasers the following executed instruments and agreements:

A.    **Bills of Sale.** Bills of Sale transferring to Purchasers all of Sellers' right, title and interest in and to the respective Purchased Assets;

B.    **Assignment and Assumption Agreements.** Assignment and Assumption Agreements assigning to Purchasers all of Sellers' respective right, title and interest in and to the duties and obligations arising from and after the Closing Date under the Contracts, the Leases and the Open Orders;

C.    **Consents.** Written consents in the form and substance satisfactory to Purchasers of each person or entity whose consent is required to consummate the transactions contemplated herein;

D.    **Certificates of Incumbency.** A certificate of incumbency evidencing the authority of each of the individuals executing on behalf of the respective Sellers this Agreement and any documents of transfer or any other nature in connection therewith;

E.    **Authorizing Resolutions.** Resolutions of the stockholders of Industries, the directors of Enterprises, certified by an officer thereof, and joint written consent of the sole member and governor of SunRay, authorizing this Agreement and the transactions contemplated herein;

F.    **Certificates of Sellers.** A certificate of each Seller's officer or member dated the Closing Date certifying (i) the fulfillment of the conditions specified in Article VIII hereof, and (ii) that all warranties and representations of such Seller contained in this Agreement are true and correct at and as of the Closing Date as though such warranties and representations were made at and as of such time;

G.    **Escrow Agreement.** The Escrow Agreement executed by the Sellers.

H.    **Employment Agreement; Non-competition Agreements and Option Agreement.** The Employment Agreement, Neely Non-competition Agreement and Option Agreement executed and delivered by Alan C. Neely, and the Shareholder Non-competition Agreements executed and delivered by each of the

24

shareholders or members of the respective Sellers who are individuals and by the individuals holding or owning the beneficial interests in each of the shareholders or members of the Sellers that are entities.

I.      **Additional Documents.** All such further instruments and documents as Purchasers may reasonably request for the more effective conveyance, assignment or transfer to the Purchasers of any of the Purchased Assets; and

J.      **Opinion of Counsel.** An opinion of legal counsel for the Sellers dated the Closing Date, in form and substance reasonably acceptable to the Purchaser.

12.3    **Deliveries by Purchasers at Closing.** At the Closing Purchasers will execute and deliver to Sellers the following:

A.      **Payment to Sellers.** Payment by wire transfer of the cash portion of the Purchase Price less the amount to be paid to the Escrow Account;

B.      **Payment to Escrow Agent.** Payment by wire transfer of the amount to be paid to the Escrow Account;

C.      **Issuance of Shares.** Issuance of the Shares in payment of the remaining portion of the Purchase Price in accordance with Section 2.2C;

D.      **Employment Agreement, Non-competition Agreements and Option Agreement.** The Employment Agreement, Neely Non-competition Agreement and Shareholder Non-competition Agreements, and Option Agreement executed and delivered on behalf of the Purchasers;

E.      **Escrow Agreement.** The Escrow Agreement executed by the Purchasers and the Escrow Agent;

F.      **Certificate of Incumbency.** A Certificate of Incumbency evidencing the authority of each of the individuals executing on behalf of Purchasers this Agreement and any documents of transfer or other nature in connection therewith;

G.      **Certificate of Resolutions of Board.** Resolutions of the Board of Directors of Purchasers, certified by the Secretary of Purchasers, authorizing this Agreement and the transactions contemplated herein, and resolutions of the Board of Directors of the Company, certified by the Secretary of the Company, authorizing the Guaranty of Purchaser's obligations hereunder by the Company;

H.      **Purchaser's Certificate.** A certificate of each Purchaser's authorized officer dated the Closing Date certifying that (i) the conditions specified in Section XI hereof have been fulfilled and (ii) all representations and warranties of such Purchaser contained herein are true and correct at and as of the Closing Date as though such warranties and representations were made at and as of such time;

I.      **Opinion of Purchaser's Counsel.** An opinion of legal counsel for Purchaser and the Company dated the Closing Date in form and substance reasonably acceptable to the Seller.

25

**Section XIII**
**INDEMNIFICATION**

13.1    **Indemnification.** Each Seller hereby agrees to indemnify and hold the Purchasers, the Company and their respective directors, officers, employees and agents (other than Alan C. Neely, who will be an employee of the Purchasers following the Closing), and their respective successors and assigns (all of such indemnified companies and individuals are collectively referred to hereafter as the "Indemnified Party") harmless from the following:

A.    **Misrepresentation, Nonfulfillment of Agreement.** Any liability, loss, cost, expense, damage, claim or deficiency resulting from any misrepresentation set forth herein or in any Schedule hereto, any breach of any warranty set forth herein or any breach, nonfulfillment of or failure to perform any covenant, duty or obligation set forth herein on the part of the Seller;

.B.    **Inaccuracies in Closing Documents.** Any inaccuracy in, breach of or misrepresentation in any certificate or other document required to be delivered hereunder at the Closing by the Seller in accordance with any provision of this Agreement;

C.    **Taxes.** Any claim against or liability of the Seller for delinquent or unpaid taxes of any kind or nature, including, without limitation, withholding taxes, and any related interest, penalty or fine, whether to the federal or any state or local government, agency or instrumentality, attributable to taxable periods ending on or before the Closing Date, except to the extent such taxes have been reserved against in the Closing Balance Sheet;

D.    **Contingent Liabilities.** Any claim or liability arising out of a transaction or event occurring prior to the Closing Date, including a claim or liability arising out of or from a transaction or event occurring after the Closing Date with respect to products manufactured prior to the Closing Date, that is not reserved against or included as a liability on the Closing Balance Sheet; provided, however, that product warranty service in the ordinary course of business that does not involve litigation (including arbitration, mediation, or administrative or other adversarial proceedings) does not constitute a claim or liability subject to this Section 13.1D;

E.    **Attending Costs and Expenses.**    All liabilities, claims, actions, suits, proceedings, demands, assessments, judgments and costs incident to and reasonably incurred by the Indemnified Party on account of any of the foregoing, including, without limitation, reasonable attorney's fees and other expenses of investigation or litigation (including all arbitration, mediation, or administrative or other adversarial proceedings)

13.2    **Limits of Indemnification.** The liability under Section 13.1 hereof:

A.    shall not arise unless the Indemnified Party suffers a Covered Breach.   A "Covered Breach" means either:

(i)    a single indemnifiable course of conduct, related set of circumstances, occurrence or event, by or as a result of which the damages suffered by Indemnified Party arising therefrom exceed Ten Thousand and 00/100

26

Dollars ($10,000.00), but is not subject to the Limited Litigation Indemnity, in which event the Seller shall be liable for the entire amount of such Covered Breach; or

(ii)  a matter to which the Limited Litigation Indemnity under Section XIV applies, if the Purchasers' indemnity amount thereunder has been exceeded, in which event the Seller shall be liable for the excess of the Covered Breach over the Limited Litigation Indemnity amount.

B.  shall in all events be limited to an amount equal to $15,840,000 minus Sellers' Transaction Expenses.

13.3    **Claims Against Escrow.** Any claim that an Indemnified Party may have against a Seller under this Agreement shall be made against the Escrow Account pursuant to the terms and conditions of this Agreement and the Escrow Agreement, and the Sellers shall be jointly and severally liable to the extent of the Escrow Account. To the extent that the amount of the Covered Breaches exceed the amount in the Escrow Account, the claim may be made against the respective Seller.

13.4    **Method of Asserting Claims Against Seller.** All claims for indemnification under this Section XIII made by an Indemnified Party shall be asserted and resolved as follows:

A.  In the event that any claim or demand for which a Seller would be liable hereunder is asserted against or sought to be collected from an Indemnified Party by a third party, the Indemnified Party shall promptly notify the Seller of such claim or demand, specifying the nature of such claim or demand and the amount or the estimated amount thereof to the extent then feasible (which estimate shall not be conclusive of the final amount of such claim or demand) (the "Claim Notice"). For the purpose of this Section 13.4 "Notice Period" shall mean twenty (20) calendar days from the delivery of the Claim Notice (the "Notice Period"), except that in the event the Claim Notice relates to the institution of litigation or arbitration proceedings, the Notice Period shall extend until ten (10) calendar days prior to the due date, including any extension thereof, of a responsive pleading by the Indemnified Party. As to any Claim Notice, the Seller shall have the right to request an extension of the Notice Period in order to conduct an investigation of the Claim Notice in cooperation with the Indemnified Party, and such an extension request shall not be unreasonably refused. Within the Notice Period the Seller shall notify the Indemnified Party:

(i)  whether or not the Seller disputes liability to the third party or to the Indemnified Party hereunder with respect to such claim or demand, and

(ii)  whether or not Seller desires, at its sole cost and expense, to defend the Indemnified Party against such claim or demand. In the event that the Seller notifies the Indemnified Party within the Notice Period that the Seller desires to defend against such claim or demand, except as hereinafter provided, the Seller shall have the right to defend the Indemnified Party by appropriate proceedings, which proceedings shall be promptly settled or prosecuted by them to a final conclusion in such a manner as to avoid any risk of the Indemnified Party becoming subject to liability for any other matter. If the Indemnified Party desires to participate in, but not control, any such defense or settlement, it may do

27

so at its sole cost and expense. If the Seller elects not to defend the Indemnified Party against such claim or demand, whether by not giving timely notice as provided above or otherwise, then the amount of any such claim or demand, or, if the same be contested by the Seller or by the Indemnified Party (but the Indemnified Party shall have no obligation to contest any such claim or demand), then that portion thereof as to which such defense is unsuccessful shall be conclusively deemed to be a liability of the Seller hereunder; provided, however, that the Indemnified Party is otherwise entitled to indemnification with respect to such claim or demand under Section 13.1 hereof.

B.      In the event the Indemnified Party should have a claim hereunder which does not involve a claim or demand being asserted against or sought to be collected from it by a third party, the Indemnified Party shall promptly send a Claim Notice with respect to such claim to the Seller. If the Seller does not notify the Indemnified Party within a twenty (20) day Notice Period that the Seller disputes such claim, it shall be conclusively deemed a liability of the Seller hereunder.

C.      Nothing herein shall be deemed to prevent the Indemnified Party from making a claim hereunder for potential or contingent claims or demands provided the Claim Notice is made within the warranty survival period set out in Section 3.31 and sets forth the specific basis for any such potential or contingent claim or demand, to the extent then feasible and the Indemnified Party has reasonable grounds to believe that such a claim or demand may be made.

    13.5    **Payment of Claims**. In the event that a Seller is required to make any payment under this Section XIII, the Seller shall direct the Escrow Agent to make such payment from the Escrow Fund within ten (10) days after the determination of such amount. If the amount in the Escrow Fund is insufficient to pay the claim in full, the Seller shall pay such excess amount within ten (10) days after such determination.

    13.6    **Indemnified Claims by Purchaser**. Purchaser does hereby indemnify and agree to hold the Sellers, their respective officers, stockholders, members, managers, employees and agents, and their respective successors and assigns harmless from the following:

        A.      **Misrepresentation, Nonfulfillment of Agreement**. Any liability, loss, cost, expense, damage, claim or deficiency resulting from any misrepresentation set forth herein, breach of any warranty set forth herein or any breach, nonfulfillment of, or failure to perform any covenant, duty or obligation set forth herein on the part of Purchasers;

        B.      **Liabilities of Purchasers**. Any liability, loss, cost, damage or expense arising in connection with or resulting from the operation of the Business on or after the Closing Date, including without limitation, tax and environmental liability;

        C.      **Inaccuracies in Closing Documents**. Any inaccuracy in, breach of or misrepresentation in any certificate or other document required to be delivered hereunder at the Closing by Purchasers in accordance with any provision of this Agreement.

D. **Attending Costs and Expenses.** All liabilities, claims, actions, suits, proceedings, demands, assessments, judgments and costs incident to and reasonably incurred on account of any of the foregoing, including, without limitation, reasonable attorney's fees and other expenses of investigation or litigation (including all arbitration, mediation, or administrative or other adversarial proceedings); and

13.7 **Method of Asserting Claim Against Purchaser.** All claims for indemnification under this Section XIII made against a Purchaser shall be asserted and resolved in the manner set out for asserting and resolving claims made against the Seller under Section 13.4 hereof, except any reference in Section 13.4 to Seller shall mean Purchasers and any reference to an Indemnified Party shall mean Seller. In the event that Purchaser is required to make any payment under this Section XIII, Purchaser shall pay the indemnitee entitled thereto such amount within ten (10) days after the determination of such amount in immediately available funds.

13.8 **Exclusivity.** This Section XIII shall be the sole and exclusive remedy of the parties and their respective directors, officers, agents, successors and assigns for any breach of any representation and warranty or any nonfulfillment of any covenant contained in this Agreement or for any other matter in respect of which indemnification may be sought under Section XIII.

## Section XIV
## LIMITED LITIGATION INDEMNITY FOR INDUSTRIES AND SUNRAY

Purchasers hereby agree that they will indemnify Industries and SunRay from and against, all liabilities, claims, actions, suits, proceedings, demands, assessments, judgments, expense, damage, claim or deficiency, and costs incident to and reasonably incurred on account of any of the foregoing, including, without limitation, reasonable attorney's fees and other expenses of investigation or litigation (including all arbitration, mediation, or administrative or other adversarial proceedings), arising out of or related to product liability or warranty claims, including administrative action by the United States Department of Housing and Urban Development, arising on or after the Closing Date with respect to products sold by Industries or SunRay, or sold after the Closing Date but produced prior to the Closing Date, to the extent of a cumulative annual aggregate of One Hundred Thousand Dollars ($100,000) per year for each of the four years following the Closing Date. All claims for indemnification under this Section XIV against a Purchaser shall be asserted and resolved in the manner set out for asserting and resolving claims made against the Seller under Section 13.4 hereof, *except* that the provisions of Section 13.4A(ii) shall not apply, it being the intent and understanding of the parties that the Purchasers shall have complete and absolute control of the defense of any proceeding to which this Limited Litigation Indemnity shall apply. The parties expressly acknowledge their agreement that the matters listed on Schedule 3.16 are the sole responsibility of the Sellers and are not subject to this Limited Litigation Indemnity.

## Section XV
## MISCELLANEOUS

15.1 **Notices.** All communications or notices required or permitted by this Agreement shall be in writing and shall be deemed to have been given at the earlier of the date when actually delivered to the officer of a corporate party designated below by personal delivery or facsimile transmission or the fifth day following the date deposited in the United States mail, certified or registered mail, postage prepaid, return receipt requested, and addressed as follows, unless and until any of such parties notifies the others in accordance with this Section 15.1 of a change of address:

If to the Company:        Southern Energy Homes, Inc.
                          Attention: Keith O. Holdbrooks
                                  President and Chief Executive Officer
                          144 Corporate Way
                          P. O. Box 390
                          Addison, Alabama 35540
                          Fax (256) 747-7586

with a copy (which shall not constitute notice) to:
                          Dan E. Batchelor, Esq.
                          Executive Vice President and General Counsel
                          Southern Energy Homes, Inc.
                          3284 Morgan Drive
                          Birmingham, Alabama  35243
                          Fax (205) 823-6001

with additional copy (which shall not constitute notice) to:
                          Carolyn L. Duncan
                          Cabaniss, Johnston, Gardner, Dumas & O'Neal LLP
                          2001 Park Place North, Suite 700
                          Birmingham, Alabama 35203

If to any Seller:         Alan C. Neely
                          405 South Broad Street
                          New Tazewell, Tennessee 37825
                          Fax (423) 626-6919

with a copy (which shall not constitute notice) to:
                          Ivan J. Schell, Esq.
                          Reed Weitkamp Schell & Vice PLLC
                          500 West Jefferson Street, Suite 2400
                          Louisville, Kentucky 40202
                          Fax (502) 562-2200

15.2    **Binding Agreement; Assignment.**   This Agreement and the right of the parties hereunder shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

15.3    **Entire Agreement.**  This Agreement, the Employment Contract, the Option Agreement, the Non-competition Agreement, the  Escrow Agreement and the Schedules and Exhibits attached hereto, and the documents delivered pursuant hereto, constitute the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersede and revoke any prior agreement or understanding relating to the subject matter of this Agreement.  Any amendment or modification to this Agreement must be in writing, signed by all parties.

15.4    **Counterparts.**  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. A signature on any counterpart may be a facsimile or an electronically transmitted signature, and such signature shall have the same force and effect as an original signature.

15.5    **Expenses.**   Whether or not the transactions contemplated hereby are consummated, the parties hereto will each pay their own attorneys' and accountants' fees, expenses and disbursements in connection with the negotiation and preparation of this Agreement and Schedules and all other costs and expenses incurred in performing and complying with all conditions to be performed under this Agreement; provided, however, that in the event the transactions contemplated hereby are consummated, the aggregate expenses paid by Industries and SunRay will not exceed $115,000.   The cost of the items listed on Schedule 15.5 (which also includes the expenses provided for in Section VI, 9.6 and 10.9) will be divided equally between the Sellers and the Purchasers, subject to the cap on Sellers' expenses under Section 9.6, and to the extent paid by the Sellers will reduce the cash portion of the Purchase Price.

15.6    **Confidentiality.** If, for any reason, the transactions contemplated by this Agreement are not consummated, any confidential information obtained by any party hereto from any other party shall not be disclosed or used by any such party, other than as required by applicable laws or regulations or in connection with any litigation arising under this Agreement, and each party shall return to the other all documents and written information obtained from such other party as such other party or its counsel may request in writing.

15.7    **Further Assurances.**   Upon reasonable request from time to time the parties hereto will execute and deliver such further instruments as are necessary or appropriate to the consummation of the transactions contemplated hereby.

15.8    **Construction.** Within this Agreement, the singular shall include the plural and the plural shall include the singular, and any gender shall include the other genders, all as the meaning in the context of this Agreement shall require.

15.9    **Incorporation.** All Schedules and Exhibits attached to this Agreement are by this reference incorporated herein and made an essential part hereof.

15.10    **Cooperation.** The parties hereto will cooperate fully with each other and their respective counsel and accountants in connection with all steps to be taken as part of their obligations under this Agreement.

15.11    **Captions.** The captions used in this Agreement are inserted for convenience only and shall not constitute a part hereof.

15.12    **Governing Law.**   This Agreement shall be governed and regulated and the rights and liabilities of all parties hereto shall be construed pursuant to the laws of the State of Tennessee, without regard to principles of conflicts of laws, except with respect to matters of law concerning the internal corporate affairs of any corporate entity which is a party to or the subject of this Agreement, and as to those matters the law of the jurisdiction under which the respective entity derives its powers shall govern.

31

IN WITNESS WHEREOF, the undersigned parties have entered into and executed this Agreement under seal to be effective as of the day and year first above written.

**Sellers:**

**GILES INDUSTRIES OF TAZEWELL, INCORPORATED**
a Tennessee corporation

By:_____ (Seal)
  Alan C. Neely
  Its President and Authorized Seller's Agent

**R.O. GILES ENTERPRISES, INC.**
a Tennessee corporation

By:_____ (Seal)
  Alan C. Neely
  Its Authorized Seller's Agent

**SUNRAY RV, LLC**
a Tennessee limited liability company

By:_____ (Seal)
  Alan C. Neely
  Its Sole Member and Governor

**Purchasers:**

**GILES ACQUISITION CORP.**
an Alabama corporation

By:_____ (Seal)
  Keith O. Holdbrooks
  Its President

**SUNRAY ACQUISITION, LLC**
an Alabama limited liability company

By:_____ (Seal)
  Keith O. Holdbrooks
  Its President

_____
**Alan C. Neely**

32

IN WITNESS WHEREOF, the undersigned parties have entered into and executed this Agreement under seal to be effective as of the day and year first above written.

**Sellers:**

**GILES INDUSTRIES OF TAZEWELL,
INCORPORATED**
a Tennessee corporation

By:_____ (Seal)
         Alan C. Neely
         Its President and Authorized Seller's Agent

**R.O. GILES ENTERPRISES, INC.**
a Tennessee corporation

By:_____ (Seal)
         Alan C. Neely
         Its Authorized Seller's Agent

**SUNRAY RV, LLC**
a Tennessee limited liability company

By:_____ (Seal)
         Alan C. Neely
         Its Sole Member and Governor

**Purchasers:**

**GILES ACQUISITION CORP.**
an Alabama corporation

By:_____ (Seal)
         Keith O. Holdbrooks
         Its President

**SUNRAY ACQUISITION, LLC**
an Alabama limited liability company

By:_____ (Seal)
         Keith O. Holdbrooks
         Its President


_____

**Alan C. Neely**

**EXHIBIT 5**

**Secretary of State**

Division of Business Services

312 Eighth Avenue North

6th Floor, William R. Snodgrass Tower

Nashville, Tennessee 37243

DATE: 03/21/06
REQUEST NUMBER: 5725-2405
TELEPHONE CONTACT: (615) 741-2286
FILE DATE/TIME: 03/21/06 1008
EFFECTIVE DATE/TIME: 03/21/06 1630
CONTROL NUMBER: 0012733

TO:
REED WEITKAMP SCHELL& VICE PLLC
500 WEST JEFFERSON S
SUITE 2400
LOUISVILLE, KY 40202-2812

RE:
  GILES FAMILY HOLDINGS, INC.
  ARTICLES OF AMENDMENT TO THE CHARTER

THIS WILL ACKNOWLEDGE THE FILING OF THE ATTACHED DOCUMENT WITH AN
EFFECTIVE DATE AS INDICATED ABOVE.

WHEN CORRESPONDING WITH THIS OFFICE OR SUBMITTING DOCUMENTS FOR
FILING, PLEASE REFER TO THE CORPORATION CONTROL NUMBER GIVEN ABOVE.

PLEASE BE ADVISED THAT THIS DOCUMENT MUST ALSO BE FILED IN THE OFFICE
OF THE REGISTER OF DEEDS IN THE COUNTY WHEREIN A CORPORATION HAS ITS
PRINCIPAL OFFICE IF SUCH PRINCIPAL OFFICE IS IN TENNESSEE.

-----------------------------------------------------------------------
-----------------------------------------------------------------------

FOR: ARTICLES OF AMENDMENT TO THE CHARTER                ON DATE: 03/21/06

FROM:                                                    FEES
REED WEITKAMP SCHELL & VICE PLLC        RECEIVED:     $20.00         $0.00
SUITE 2400
500 WEST JEFFERSON              TOTAL PAYMENT RECEIVED:           $20.00
LOUISVILLE, KY 40202-0000
                                        RECEIPT NUMBER: 00003898952
                                        ACCOUNT NUMBER: 00239982

*Riley C. Darnell*

RILEY C. DARNELL
SECRETARY OF STATE

SS-4458



**State of Tennessee**

**Department of State**
Corporate Filings
312 Eighth Avenue North
6th Floor, William R. Snodgrass Tower
Nashville, TN 37243

**ARTICLES OF AMENDMENT
TO THE CHARTER
(For-Profit)**

For Office Use Only

5725.2405

CORPORATE CONTROL NUMBER (IF KNOWN) ___0012733___

PURSUANT TO THE PROVISIONS OF SECTION 48-20-106 OF *THE TENNESSEE BUSINESS CORPORATION ACT*, THE UNDERSIGNED CORPORATION ADOPTS THE FOLLOWING ARTICLES OF AMENDMENT TO ITS CHARTER:

1. PLEASE INSERT THE NAME OF THE CORPORATION AS IT APPEARS OF RECORD:
   Giles Industries of Tazewell, Incorporated

   IF CHANGING THE NAME, INSERT THE NEW NAME ON THE LINE BELOW:
   Giles Family Holdings, Inc.

   **FILED**

2. PLEASE MARK THE BLOCK THAT APPLIES:

   [X] AMENDMENT IS TO BE EFFECTIVE WHEN FILED BY THE SECRETARY OF STATE.
   [ ] AMENDMENT IS TO BE EFFECTIVE, _____ (MONTH, DAY, YEAR)

   (NOT TO BE LATER THAN THE 90TH DAY AFTER THE DATE THIS DOCUMENT IS FILED.) IF NEITHER BLOCK IS CHECKED, THE AMENDMENT WILL BE EFFECTIVE AT THE TIME OF FILING.

3. PLEASE INSERT ANY CHANGES THAT APPLY:
   A. PRINCIPAL ADDRESS: _____ STREET ADDRESS _____
      _____
      CITY                          STATE / COUNTY                                  ZIP CODE
   B. REGISTERED AGENT: _____
   C. REGISTERED ADDRESS: _____ STREET ADDRESS _____
      _____
      CITY          **TN** STATE                ZIP CODE          COUNTY
   D. OTHER CHANGES:

4. THE CORPORATION IS FOR PROFIT.

5. THE MANNER (IF NOT SET FORTH IN THE AMENDMENT) FOR IMPLEMENTATION OF ANY EXCHANGE, RECLASSIFICATION, OR CANCELLATION OF ISSUED SHARES IS AS FOLLOWS:

6. THE AMENDMENT WAS DULY ADOPTED ON ___March 20, 2006___ (MONTH , DAY, YEAR)
   BY (Please mark the block that applies):

   [ ] THE INCORPORATORS WITHOUT SHAREHOLDER ACTION, AS SUCH WAS NOT REQUIRED.
   [ ] THE BOARD OF DIRECTORS WITHOUT SHAREHOLDER APPROVAL, AS SUCH WAS NOT REQUIRED.
   [X] THE SHAREHOLDERS.

   President
   SIGNER'S CAPACITY

   _signature_
   SIGNATURE

   March 20, 2006
   DATE

   Alan C. Neely
   NAME OF SIGNER (TYPED OR PRINTED)

SS-4421 (Rev. 10/01)                Filing Fee: $20.00                RDA 1678

# EXHIBIT 6

**Secretary of State**

**Division of Business Services**

312 Eighth Avenue North

6th Floor, William R. Snodgrass Tower

Nashville, Tennessee 37243

DATE: 03/21/06
REQUEST NUMBER: 5725-2406
TELEPHONE CONTACT: (615) 741-2286
FILE DATE/TIME: 03/21/06 1007
EFFECTIVE DATE/TIME: 03/21/06 1630
CONTROL NUMBER: 0449084

TO:
REED WEITKAMP SCHELL & VICE PLLC
500 WEST JEFFERSON S
SUITE 2400
LOUISVILLE, KY 40202-2812

RE:
 SUNRAY INVESTMENTS, LLC
 ARTICLES OF AMENDMENT - LIMITED LIABILITY COMPANY

THIS WILL ACKNOWLEDGE THE FILING OF THE ATTACHED DOCUMENT WITH AN EFFECTIVE
DATE AS INDICATED ABOVE.

WHEN CORRESPONDING WITH THIS OFFICE OR SUBMITTING DOCUMENTS FOR FILING, PLEASE
REFER TO THE LIMITED LIABILITY COMPANY CONTROL NUMBER GIVEN ABOVE.  PLEASE BE
ADVISED THAT THIS DOCUMENT MUST ALSO BE FILED IN THE OFFICE OF THE REGISTER OF
DEEDS IN THE COUNTY WHEREIN A LIMITED LIABILITY COMPANY HAS ITS PRINCIPAL
OFFICE IF SUCH PRINCIPAL OFFICE IS IN TENNESSEE.

---

FOR: ARTICLES OF AMENDMENT - LIMITED LIABILITY COMPANY      ON DATE: 03/21/06

FROM:
REED WEITKAMP SCHELL & VICE PLLC
SUITE 2400
500 WEST JEFFERSON
LOUISVILLE, KY 40202-0000

RECEIVED:    FEES    $0.00
             $20.00

TOTAL PAYMENT RECEIVED:       $20.00

RECEIPT NUMBER: 00003898954
ACCOUNT NUMBER: 00239982

RILEY C. DARNELL
SECRETARY OF STATE

SS-4458



**State of Tennessee**

**Department of State**
Corporate Filings
312 Eighth Avenue North
6th Floor, William R. Snodgrass Tower
Nashville, TN 37243

**ARTICLES OF AMENDMENT
TO ARTICLES OF ORGANIZATION
(LLC)**

For Office Use Only

**FILED**

2006 MAR ... AH 10: C >
SECRETARY OF STATE

5725.2486

---

LIMITED LIABILITY COMPANY CONTROL NUMBER (IF KNOWN)    0449084

PURSUANT TO THE PROVISIONS OF §48-209-104 OF THE TENNESSEE LIMITED LIABILITY COMPANY ACT OR §48-249-204 OF THE TENNESSEE REVISED LIMITED LIABILITY COMPANY ACT, THE UNDERSIGNED ADOPTS THE FOLLOWING ARTICLES OF AMENDMENT TO ITS ARTICLES OF ORGANIZATION:

PLEASE MARK THE BLOCK THAT APPLIES:

☒ AMENDMENT IS TO BE EFFECTIVE WHEN FILED BY THE SECRETARY OF STATE.
☐ AMENDMENT IS TO BE EFFECTIVE _____ , _____ (DATE) _____ (TIME).
(NOT TO BE LATER THAN THE 90TH DAY AFTER THE DATE THIS DOCUMENT IS FILED.) IF NEITHER BLOCK IS CHECKED, THE AMENDMENT WILL BE EFFECTIVE AT THE TIME OF FILING.

1. PLEASE INSERT THE NAME OF THE LIMITED LIABILITY COMPANY AS IT APPEARS ON RECORD:    SunRay RV, LLC

IF CHANGING THE NAME, INSERT THE NEW NAME ON THE LINE BELOW:

   SunRay Investments, LLC

2. PLEASE INSERT ANY CHANGES THAT APPLY:

   A. PRINCIPAL ADDRESS: _____
                                               STREET ADDRESS

   _____
   CITY                           STATE/COUNTY                          ZIP CODE
   B. REGISTERED AGENT: _____

   C. REGISTERED ADDRESS: _____
                                               STREET
                                               TN
   _____
   CITY                   STATE              ZIP CODE          COUNTY
   D. OTHER CHANGES:

3. THE AMENDMENT WAS DULY ADOPTED ON     3          20          2006
                                                          MONTH      DAY          YEAR

(If the amendment is filed pursuant to the provision of §48-209-104 of the TN LLC Act, please also complete the following by checking one of the two boxes:) AND THE AMENDMENT WAS DULY ADOPTED BY THE
☐ BOARD OF GOVERNORS WITHOUT MEMBER APPROVAL AS SUCH WAS NOT REQUIRED
☒ MEMBERS

Sole Member & Governor                          _____
SIGNER'S CAPACITY                                         SIGNATURE

                                                Alan Neely
                                                NAME OF SIGNER (TYPED OR PRINTED)

SS-4247 (REV. 01/06)              Filing Fee: $20.00                          RDA 2458

**EXHIBIT 7**

Articles of Amendment

To

Articles of Incorporation

Of

## Giles Acquisition Corp.

### Changing the Name of the Corporation to Giles Industries, Inc.

Pursuant to the provisions of Section 10-2B-10.06 of the Alabama Business Corporation Act (the "Act"), the undersigned Corporation created and existing under the laws of the State of Alabama hereby adopts the following Articles of Amendment to its Articles of Incorporation:

Article I:      The name of the Corporation is Giles Acquisition Corp.

Article II:      The following Amendment to the Articles of Incorporation was adopted by the Board of Directors and the sole Shareholder of the Corporation on the 21st day of march, 2006, in the manner prescribed by the Act:

Resolved that, the name of the Corporation shall be changed from Giles Acquisition Corp. to "Giles Industries, Inc.," and Article I of the Corporation's Articles of Incorporation shall be amended to read as follows:

The name of the Corporation shall be **Giles Industries, Inc.**

Article III:      The number of shares of the Corporation outstanding at the time of such adoption was 1,000 shares of common capital stock; the number of shares entitled to vote thereon was 1,000; and all of the said 1,000 shares were voted in favor of this Amendment.

DATED this the 21st day of March, 2006.

Giles Acquisition Corp.

By: _____
     Dan E. Batchelor
     Its Executive Vice President

This document prepared by:
Carolyn L. Duncan
Cabaniss, Johnston, Gardner, Dumas & O'Neal LLP
2001 Park Place North, Suite 700
Birmingham, Alabama 35203

Nancy L. Worley
Secretary of State

P.O. Box 5616
Montgomery, AL 36103-5616

# STATE OF ALABAMA

I, Nancy L. Worley, Secretary of State of the State of Alabama, having custody of the Great and Principal Seal of said State, do hereby certify that pursuant to the provisions of Section 10-2B-4.02, **Code of Alabama 1975**, and upon an examination of the corporation records on file in this office, the following corporate name is reserved as available:

Giles Industries, Inc.

This domestic corporation name is proposed to be incorporated in Jefferson County and is for the exclusive use of Laura Payne, 2000 Interstate Park Dr Ste 204, Montgomery, AL 36109 for a period of one hundred twenty days beginning March 21, 2006 and expiring July 20, 2006.

2006032300169350    2/2
Bk: LR200505 Pg:19913
03/23/2006 03:29:00 PM AMEND
Fee - $11.00

Total of Fees and Taxes-$11.00
LINDA



In Testimony Whereof, I have hereunto set my hand and affixed the Great Seal of the State, at the Capitol, in the City of Montgomery, on this day.

March 21, 2006

Date

Nancy L. Worley

Secretary of State

## ARTICLES OF INCORPORATION

### OF

### GILES ACQUISITION CORP.

2 0 0 6 0 2 / 6 4 8 9

For the purpose of forming a corporation under the Alabama Business Corporation Act and any act amendatory thereof, supplementary thereto or substituted therefor (hereinafter referred to as the "Act"), the undersigned does hereby sign and adopt these Articles of Incorporation, and, upon the filing for record of these Articles of Incorporation in the office of the Judge of Probate of the county in which the initial registered office is established under Article III hereof, the existence of a corporation (hereinafter referred to as the "Corporation"), under the name set forth in Article I hereof, shall commence.

### ARTICLE I
### NAME

The name of the Corporation shall be **Giles Acquisition Corp.**

### ARTICLE II
### SHARES OF CAPITAL STOCK

**2.1    Authorized Shares.**   The aggregate number of all shares of capital stock the Corporation shall have authority to issue shall be 1,000 shares at par value of $0.01 per share.

**2.2    Rights of Shares.**  All issued and outstanding shares shall have the same preferences, limitations and relative rights, including, without limitation, (i) unlimited voting rights for all purposes at the rate of one (1) vote for each issued and outstanding share and (ii) the right to receive the net assets of the Corporation upon dissolution thereof. To the extent not inconsistent with the foregoing, or with the provisions of the Act or the Constitution of Alabama, the Board of Directors may determine, in whole or in part, the preferences, limitations and relative rights of the shares prior to the issuance of any shares.

**2.3    Denial of Shareholder's Preemptive Rights.**  No shareholder shall be entitled as a matter of right to subscribe for, purchase, or receive any shares of stock, or other securities convertible into stock, of the Corporation which it may issue, or sell, whether such shares are now or hereafter authorized, but all such additional shares of stock or other securities may be issued and disposed of by the Board of Directors to such persons and upon such terms as in its absolute discretion it may deem advisable. No shareholder of any shares of stock shall have any preemptive rights with respect to the issuance of any class of stock, including treasury shares.

### ARTICLE III
### INITIAL REGISTERED OFFICE AND REGISTERED AGENT

The street address of the initial registered office of the Corporation is 3284 Morgan Drive, Birmingham, AL 35216, USA, and the name of the initial registered agent at such registered office is Dan E. Batchelor.

## ARTICLE IV
## INCORPORATOR

The name and address of the incorporator is:

| Name | Address |
|------|---------|
| Dan E. Batchelor | 3284 Morgan Drive<br>Birmingham, AL 35216 |

## ARTICLE V
## INITIAL BOARD OF DIRECTORS

**5.1**     The number of directors constituting the initial Board of Directors shall be three.

**5.2**     The names and addresses of the individuals who are to serve as the initial directors until the first annual meeting of shareholders or until their successors be elected and qualify are:

| Directors | Address |
|-----------|---------|
| Keith O. Holdbrooks | 144 Corporate Way<br>Addison, Alabama 35540 |
| Dan E. Batchelor | 3284 Morgan Drive<br>Birmingham, Alabama 35216 |
| James L. Stariha | 144 Corporate Way<br>Addison, Alabama 35540 |

## ARTICLE VI
## PURPOSES, OBJECTS AND POWERS

**6.1**     The purposes for which the Corporation is organized are to design, assemble, manufacture, construct, finish, sell and otherwise deal in manufactured housing and related products, and to buy, sell, repair, utilize and operate any and all equipment, parts, inventory and materials of every kind and description for use in such business. In addition, the Corporation is formed for the purpose of engaging in any lawful business, act or activity for which a corporation may be organized under the Act, it being the purpose and intent of this Article to invest the Corporation with the broadest purposes, objects and powers lawfully permitted a corporation formed under the Act; and to carry on any and all aspects, ordinary or extraordinary, of any lawful business and to enter into and carry out any transaction, ordinary or extraordinary, permitted by law, having and exercising in connection herewith all powers given to corporations by the Act and all other applicable laws of the State of Alabama.

**6.2**     The foregoing Section 6.1, and each phrase thereof, shall be construed, in their broadest sense, not only as purposes and objects for which the Corporation has been organized, but also as powers of the Corporation in addition to those powers specifically conferred upon the Corporation by law, and it is hereby expressly provided that the foregoing specific enumeration of such purposes, objects and

2

powers shall not be held to limit or restrict in any manner the powers of the Corporation otherwise granted by law. All words, phrases and provisions in this Article are used in their broadest sense, are not limited by reference to, or inference from, any other words, phrases or provisions and shall be so construed. For purposes of these Articles of Incorporation, the term "person" means and includes any individual or entity.

### ARTICLE VII
### INTERNAL AFFAIRS

The following provisions for the regulation of the business and for the conduct of the affairs of the Corporation, the directors and the shareholders are hereby adopted:

7.1    The initial bylaws of the Corporation shall be adopted by the shareholders. The power to alter, amend, or repeal the bylaws or adopt new bylaws shall be vested in the shareholders, which power may be exercised in the manner and to the extent provided in the bylaws. The bylaws may contain any provisions for the regulation of the business and for the conduct of the shareholders not inconsistent with the Act or these Articles of Incorporation.

7.2    Subject to the limitations set forth in the Act, these Articles of Incorporation, as amended from time to time, and the bylaws, as amended from time to time, the business and affairs of the Corporation shall be managed by the Board of Directors. The number of directors comprising the initial Board of Directors shall be the number of persons listed as directors in Article V hereof. Thereafter, the number of directors of the Corporation shall be fixed from time to time by the bylaws, or, in the absence of a bylaw fixing the number of directors, the number of directors shall be the same as the number comprising the initial Board of Directors. The number of directors shall be increased or decreased from time to time by amendment to the bylaws, provided that the Board of Directors shall consist of not less than one natural person.

7.3    The Corporation reserves the right from time to time to amend, alter or repeal each and every provision contained in these Articles of Incorporation, or to add one or more additional provisions, in the manner now or hereafter prescribed or permitted by the Act, and all rights conferred upon shareholders at any time are granted subject to this reservation.

IN TESTIMONY WHEREOF, witness the hand of the undersigned incorporator on this, the __7TH__ day of February, 2006.

Dan E. Batchelor, Incorporator

This instrument prepared by:
Carolyn L. Duncan
**Cabaniss, Johnston, Gardner,**
    **Dumas & O'Neal**
2001 Park Place North, Suite 700
Post Office Box 830612
Birmingham, Alabama 35283-0612
Telephone: (205) 716-5200

3

Nancy L. Worley
Secretary of State

P.O. Box 5616
Montgomery, AL 36103-5616

# STATE OF ALABAMA

I, Nancy L. Worley, Secretary of State of the State of Alabama, having custody of the Great and Principal Seal of said State, do hereby certify that pursuant to the provisions of Section 10-2B-4.02, **Code of Alabama 1975,** and upon an examination of the corporation records on file in this office, the following corporate name is reserved as available:

**Giles Acquisition Corp.**

This domestic corporation name is proposed to be incorporated in Jefferson County and is for the exclusive use of Brian G. Wilson, 2001 Park Place North Suite 700, Birmingham, AL 35203 for a period of one hundred twenty days beginning January 30, 2006 and expiring May 31, 2006.

State of Alabama - Jefferson County
I certify this instrument filed on:
2006 FEB 07 04:29:28:99PM

Mtg. Tax
Recorded and $
Deed Tax and Fee Amt.
and $ 36.00     Total $    36.00
$              MARK GAINES, Judge of Probate

200602/6489

In Testimony Whereof, I have hereunto set my hand and affixed the Great Seal of the State, at the Capitol, in the City of Montgomery, on this day.

January 30, 2006

Date



Nancy L. Worley                    Secretary of State

**EXHIBIT 8**

Amendment to
Articles of Organization
of
Sunray Acquisition, LLC



Changing the Name of the Company to
Sunray RV, LLC

Pursuant to § 10-12-11 of the Code of Alabama, the undersigned, being the sole member of SunRay Acquisition, LLC, an Alabama limited liability company (the "Company") does hereby adopt this Amendment to the Articles of Organization of the Company and does hereby set forth the following:

1.      The name of this limited liability company is: SunRay Acquisition, LLC.

2.      The Articles of Organization of the Company were filed on February 8, 2006 in the Probate Office of Jefferson County, Alabama.

3.      The following amendment to the Articles of Organization was adopted in the manner provided for by the Alabama Limited Liability Company Act::

    **Resolved**, that Article I of the Company's Articles of Organization shall be amended so that Section 1.1 shall read as follows:

    1.1  The name of the Company shall be **SunRay RV, LLC.**

4.      The amendment, consistent with the Limited Liability Company Act, was approved by the sole member of the Company and in accordance with the requirements set forth in the Company's Articles of Organization and Operating Agreement as in effect on the date hereof.

IN WITNESS WHEREOF the sole member of SunRay Acquisition, LLC, acting by and through its duly authorized officer, does hereby adopt this Amendment to the Company's Articles of Organization.

Dated this the 21st day of March, 2006.

20060323000169400   1/1
Bk: LR200605 Pg:19950
03/23/2006 03:36:10 PM AMEND
Fee - $11.00

Total of Fees and Taxes-$11.00
LINDA

Sole Member:
GILES ACQUISITION CORP.

By: _____
Dan E. Batchelor
Its Executive Vice President

This instrument prepared by
Carolyn L. Duncan
Cabaniss, Johnston, Gardner, Dumas & O'Neal LLP
2001 Park Place North, Suite 700
Birmingham, Alabama 35203

# ARTICLES OF ORGANIZATION

## OF

## SUNRAY ACQUISITION, LLC

2 0 0 6 0 2 / 7 3 1 7

For the purpose of forming a limited liability company under the Alabama Limited Liability Company Act, ALA. CODE §§ 10-12-1 et seq. (1999 Repl.), and any act amendatory thereof, supplementary thereto or substituted therefor (the "Act"), the undersigned does hereby sign and adopt these Articles of Organization (the "Articles"), and, upon the filing for record of these Articles of Organization in the office of the Judge of Probate of the county in which the initial registered office is established under Article IV hereof, the existence of a limited liability company (the "Company"), under the name set forth in Article I hereof, shall commence.

## ARTICLE I

### NAME

1.1      The name of the Company shall be **SunRay Acquisition, LLC**.

## ARTICLE II

### DURATION OF COMPANY

**2.1**      The period of duration of the Company shall be perpetual; provided, however, that the Company may be sooner dissolved (a) upon the written consent of two-thirds (2/3) of the members of the Company; (b) as provided in the Operating Agreement between the members of the Company and the Company; or (c) as otherwise provided in the Act.

## ARTICLE III

### PURPOSES, OBJECTS AND POWERS

**3.1**      The purposes, objects and powers of the Company are:

(a)      To engage in any lawful business, act or activity for which a limited liability company may be organized under the laws of the state of Alabama.

(b)      Without limiting the scope and generality of the foregoing, to engage in the business of the manufacture and sales of travel trailers and similar products, and such other business as the member shall from time to time determine, and in any other business directly or indirectly related thereto.

(c)      To have and to exercise any and all of the powers specifically granted in the Act, none of which shall be deemed to be inconsistent with the nature, character or the object of the Company and none of which are denied to it by these Articles of Organization.

## ARTICLE IV

### REGISTERED OFFICE AND REGISTERED AGENT

**4.1**     The location and mailing address of the initial registered office of the Company shall be 3284 Morgan Drive, Birmingham, Alabama 35216.

**4.2**     The name of the initial registered agent of the Company at such address shall be Dan E. Batchelor.

## ARTICLE V

### INITIAL MEMBERSHIP OF THE COMPANY

**5.1**     The name and address of the initial member of the Company is as follows:

| MEMBER | ADDRESS |
|--------|---------|
| Giles Acquisition Corp., an Alabama corporation | 144 Corporate Way P.O. Box 390 Addison, AL 35540 |

## ARTICLE VI

### ADMISSION OF ADDITIONAL MEMBERS

**6.1**     The member or members of the Company shall have the right to admit additional members to the Company upon the written consent of all the members of the Company.

## ARTICLE VII

### ELECTION TO CONTINUE IN BUSINESS
### WHEN THERE IS NO REMAINING MEMBER

**7.1**     The Company shall be dissolved and its affairs shall be wound up when there is no remaining member unless either:

(a)     The holders of all the financial rights in the Company agree in writing, within ninety (90) days after the cessation of membership of the last member, to continue the legal existence and business of the Company and to appoint one or more new members; or

(b)     The legal existence and business of the Company is continued and one or more new members are appointed.

2

## ARTICLE VIII

### MANAGEMENT OF THE COMPANY

**8.1**    The Company shall be managed by not less than three (3) managers who shall serve until the first meeting of member of the Company, or until their successors are duly elected and qualified.  The name, office and mailing address of the managers are as follows:

| Manager | ADDRESS |
|---|---|
| Keith O. Holdbrooks, President | 144 Corporate Way<br>Addison, AL 35540 |
| Dan E. Batchelor, Executive Vice President and Secretary | 3284 Morgan Drive<br>Birmingham, AL 35216 |
| James L. Stariha, Treasurer and Assistant Secretary | 144 Corporate Way<br>Addison, AL 35540 |

## ARTICLE IX

### AMENDMENT OF THE ARTICLES OF ORGANIZATION

**9.1**    Any amendment to these Articles of Organization shall be approved by a vote of two-thirds (2/3) of the members of the Company entitled to vote thereon.

## ARTICLE X

### ORGANIZATION OF THE COMPANY

**10.1**    The name and address of the organizer of the Company are as follows:

| ORGANIZER | ADDRESS |
|---|---|
| Dan E. Batchelor | 3284 Morgan Drive<br>Birmingham, Alabama 35216 |

3

**IN TESTIMONY WHEREOF**, the undersigned has affixed his hand and seal as the organizer of the Company on this the _____ day of February, 2006.

_____
Dan E. Batchelor, Organizer

This instrument prepared by:
Carolyn L. Duncan
**Cabaniss, Johnston, Gardner,**
**Dumas & O'Neal**
2001 Park Place Tower, Suite 700
Birmingham, Alabama 35203
(205) 716-5200

State of Alabama - Jefferson County
I certify this instrument filed on:
2006 FEB 09 10:20:36:31AM
Recorded and $     Mtg. Tax
and $     Deed Tax and Fee Amt.
$    36.00    Total $    36.00
MARK GAINES, Judge of Probate



200602/7317

4