```
 1                    UNITED STATES DISTRICT COURT
 2                    EASTERN DISTRICT OF LOUISIANA
 3
 4
 5   IN RE:   FEMA TRAILER           *   Docket MDL 1873-N
     FORMALDEHYDE PRODUCTS           *
 6   LIABILITY LITIGATION            *   March 20, 2008
                                     *
 7                                   *   10:00 a.m.
     * * * * * * * * * * * * * * * *
 8
 9
                      STATUS CONFERENCE BEFORE THE
10                    HONORABLE KURT D. ENGELHARDT
                      UNITED STATES DISTRICT JUDGE
11
12
     APPEARANCES:
13
14   For the Plaintiffs:         Gainsburgh, Benjamin, David,
                                   Meunier & Warshauer, LLC
15                               BY:  JUSTIN I. WOODS, ESQ.
                                      GERALD EDWARD MEUNIER, ESQ.
16                               1100 Poydras Street, Suite 2800
                                 New Orleans, Louisiana 70163
17
18
                                 Becnel Law Firm
19                               BY:  DANIEL E. BECNEL, JR., ESQ.
                                 BY:  MATTHEW B. MORELAND, ESQ.
20                               106 West Seventh Street
                                 Reserve, Louisiana 70084
21
22
     For the Defendant:          Duplass, Zwain, Bourgeois, Morton,
23                                 Pfister & Weinstock
                                 BY:  ANDREW D. WEINSTOCK, ESQ.
24                               3838 N. Causeway Blvd.
                                 Suite 2900
25                               Metairie, Louisiana 70002
```

1  APPEARANCES:

2

3  For the United States        U.S. Department of Justice
   of America:                  Civil Division - Torts Branch
                                BY:  HENRY T. MILLER, ESQ.
4                               P.O. Box 340, Ben Franklin Station
                                Washington, DC 20044
5

6  Official Court Reporter:     Jodi Simcox, RMR, FCRR
                                500 Poydras Street
7                               Room HB-406
                                New Orleans, Louisiana 70130
8                               (504) 589-7780

9

10

11  Proceedings recorded by mechanical stenography, transcript

12  produced by computer.

13

14

15

16

17

18

19

20

21

22

23

24

25

## PROCEEDINGS

### (March 20, 2008)

**THE DEPUTY CLERK:** All rise.

**THE COURT:** You may be seated. Thank you for your patience. I'd like to start promptly, and this was noticed for a 10:00 status conference with all counsel in this case. I apologize for the delay, but I can assure you that I was covering a lot of important material, which hopefully we can relate to you here in short order with those who are on the committees.

At this time let me ask one of the liaison counsel -- whichever one you'd like -- to give us an update. All of you should be aware, and perhaps probably should have already seen, the administrative master complaint that's been filed earlier this week pursuant to the court's deadline. So that document is available if you haven't gotten it already.

So, counsel, would one of you-all like to give us an update at this point?

**MR. WOODS:** Good morning, Your Honor. Justin Woods for the PSC.

We did file -- or we have prepared a joint report for defendant's liaison counsel. And to begin with, we have to report that there are two additional cases that have been filed. One in the Southern District of Mississippi entitled *Charles Meshack, et. al. versus Circle B Enterprises*,

1  and that was filed in the Southern District of Mississippi on
2  March 14th, 2008.
3              There was another matter filed in the Southern
4  District of Alabama, and that is captioned *Betty White, et. al.*
5  *versus Circle B Enterprises*, and that was also filed on
6  March 14th, 2008.  Neither one of those matters to this date
7  have been transferred into this current MDL proceeding.
8              The next item that we discussed is the
9  deconstructive or destructive procedure of emergency housing
10 units at federal prison facilities.  We were informed by the
11 Department of Justice that there will be a contemplated
12 memorandum of understanding to be entered with FEMA and the
13 Bureau of Federal Prisons and UNICOR to deconstruct and destroy
14 five emergency housing units.
15             Plaintiffs and defendants have had an
16 opportunity to test all of those five units that are going to
17 be destroyed at the Federal Bureau of Prisons facilities.
18 However, we were informed that as part of the
19 deconstruction/destruction process that there will be certain
20 tests that will take place -- certain OSHA safety and health
21 tests that will take place that will test levels of
22 formaldehyde, mold, and mildew, and other possible
23 contaminants.
24             We have asked that we be present, or that we be
25 allowed to videotape those proceedings if we're not allowed to

1  be present, because we've been informed by the government that
2  there are security issues, of course, involved in attending the
3  testing at the prison facilities.
4           I believe that now we have some assurance from
5  the government that we will work towards to discover if there's
6  a possibility to have a Federal Bureau of Prisons individual,
7  or employee, or someone at that facility to videotape those
8  proceedings for us, and we'll continue discussions with the
9  federal government on that issue.
10       **MR. WEINSTOCK:**  No, Your Honor.  We'll wait back to
11  hear from the government.
12       **THE COURT:**  That was the topic that we discussed in
13  our meeting with the committees, ways to get around the
14  concerns of the government, or to address those concerns
15  regarding security, and I think we've made some headway.  And
16  Mr. Miller, who is here on behalf of the government, is going
17  to double-check and see what exactly can be done along the
18  lines that we have discussed.
19           But I think that -- I feel confident that
20  there's a resolution of that issue that everyone can live with,
21  such that at least the videotaping of that destruction can
22  occur.  Go ahead, Mr. Woods.
23       **MR. WOODS:**  Yes, Your Honor.  Thank you.
24           The next item that we discussed was the
25  plaintiff and defendant testing protocols, which is part of our

1  report as well.  The plaintiffs, we're still awaiting certain
2  information from FEMA so that we're able to have our experts
3  that have been retained in this matter to put together a
4  testing protocol that will entail statistical sampling.
5           Right now, we're waiting for FEMA to provide us
6  certain information that -- we provided FEMA with a list of
7  plaintiffs or claimants that we are aware of at this time, and
8  we're trying to, through the aid of FEMA and the searching of
9  their FRRATS database, connect those individuals with their
10 actual trailers that they resided in.
11          We need that information in order to accurately
12 prepare a testing protocol for us to proceed.  We've been
13 informed by FEMA -- by Mr. Miller that the Louisiana database
14 has been searched, that the names are now being searched
15 through the Texas, and Mississippi, and, perhaps, Alabama
16 databases.
17          At that point we will -- based upon the results,
18 we'll then try to figure out how we will proceed in identifying
19 the remaining plaintiffs and their units.  Andy will discuss
20 that.
21      **MR. WEINSTOCK:**  Your Honor, as I indicated last time,
22 we were considering testing all of the units that were
23 associated with plaintiffs who have signed up for this
24 litigation, 21,000 plus people on the various spreadsheets,
25 that is, in fact, our plan.

1           On a timing issue, where our hands are somewhat
2  tied waiting for the government and the plaintiffs to get
3  together to match up -- I think this is now in the government's
4  hands -- but to match up where -- who from those spreadsheets
5  lived in which trailers, and then we can help figure out where
6  those trailers are.  There will be a do-not-destruct hold on
7  those units.
8           My understanding is the government is going to
9  take units from these storage sites, transport them to federal
10 penitentiaries for deconstruction.  That's the current plan.
11 Everything's always subject to change, possibly.  But under
12 that plan, it will enable us to go in and test the ones they
13 don't take in a fairly timely manner.
14          We have a protocol for the testing we want to
15 do, but we don't have a time line yet because we don't know
16 when we're going to start; and, of course, the one other
17 complicating factor is there may be some new parties in the
18 complaint.
19      **THE COURT:**  Right.  I was going to raise that.  That
20 that has kind of slowed, or will have the net effect of slowing
21 us down a bit, which is a bit frustrating from my point of
22 view.  Because I mentioned to the group the last time that I
23 really wanted to get into the expert testing much sooner rather
24 than later.
25          Because I think that will bring us -- subject to

1  the motion practice, it will bring us directly into trying some
2  of these bellwether cases.
3              Mr. Miller, is there any idea -- now that you
4  have some information from plaintiffs and defendants, is there
5  any idea, time-wise, on when the completion of that work -- and
6  I'm talking about the matching up of names and units and serial
7  numbers -- when that might be completed?
8         **MR. WEINSTOCK:**  Your Honor, my understanding for the
9  Louisiana database, which is the most -- probably going to be
10 the most successful, that I had complained earlier, came back
11 at about a 50 percent match.  They're searching the Mississippi
12 database now, and then they'll turn it over to the Texas.
13             I think it takes about a week to run each one,
14 and I was hoping that we'd get this done by the end of next
15 week.
16        **THE COURT:**  Okay.  Good.
17        **MR. WEINSTOCK:**  But it may be possible -- and I don't
18 know -- we might be able to hand over the results of the
19 Louisiana testing right away, but I don't think that's
20 necessarily going to help.  I think they want all the results
21 at one time.
22        **THE COURT:**  I think you're right.  But that's good.
23 That sounds like a reasonable time frame we can operate under.
24 And, obviously, the sooner the better that that information can
25 be provided would be greatly appreciated so that way we can get

1  these experts to work.
2            The issue of the other defendants.  We have
3  defendants who have been added in the master complaint.  And we
4  are attempting, I understand on your side, Mr. Weinstock, to
5  try to find out which of these defendants are affiliated with
6  in some way, such that they will be represented by counsel
7  already involved in the case, or that they are somehow
8  affiliated in the sense that they, technically, may be new
9  parties, but from the viewpoint of the procedure of this case
10 are not new in that sense.
11           Having said that, we believe that there will be
12 some of these new defendants who are truly new to the case who
13 will want their own counsel.  They'll have to, basically, start
14 with educating themselves, and perhaps familiarizing
15 themselves, with the work that you and your co-defendant
16 counsel have already done to try to investigate to find out
17 where they are in this case.
18           So I guess that's my concern is that we do that
19 sooner -- we're going to try to get those people served.  I
20 understand by the end of today you'll be able to tell the court
21 and counsel which defendants are not truly new defendants,
22 although nominally new, and which defendants you believe to
23 have no relationship to the previous defendants such that those
24 people can be served and be joined in this case as soon as
25 possible.

1  **MR. WEINSTOCK:**  That's correct, Your Honor.  We'll
2  give a report of what we have at 4:30 to the plaintiffs.
3  **THE COURT:**  Okay.  The court is going to go ahead and
4  issue those summonses, based upon the information that you
5  provide to us today, so that the plaintiffs can proceed to get
6  those defendants in the case through proper service.
7  Okay.  Mr. Woods, anything further you want to
8  cover?
9  **MR. WOODS:**  No, Your Honor, nothing on the master
10  complaint.
11  Our next topic was the plaintiff fact sheet.
12  That fact sheet has been finalized with the changes ordered by
13  the court.  With the court's approval, the PFS will disseminate
14  the plaintiff fact sheet to those named plaintiffs for
15  completion and for service on the defendants steering committee
16  for July 16th, 2008.
17  **THE COURT:**  Okay.  Good.  Let's go ahead and do that.
18  **MR. WOODS:**  Okay.  Thank you, Your Honor.
19  The other item that we need to discuss is the
20  joint notice protocol, which is an agenda item for us.
21  Your Honor, we've, of course, prior to this
22  formal status conference, we discussed with the defendants the
23  possibility of entering into an agreement to compile a joint
24  notice in order to communicate to residents of emergency
25  housing units that this litigation is actually proceeding.

1           I think that what we've come to agree upon is
2  that the plaintiffs will file a motion by April 1, 2008, which
3  is that the basis of that motion will be to compel the federal
4  government to respond to the subpoena that we had previously
5  issued to them in which we will be given the information that
6  we need in order to compile a notice that will, hopefully, be
7  administered by a third party.
8           Again, we'll file that motion by April 1st,
9  2008, and we will schedule the argument for hearing on
10 April 18th, 2008.  As part of our motion, we will attach a
11 draft of what we will consider to be an appropriate,
12 court-approved, hopefully, notice to those residents.
13      **MR. WEINSTOCK:**  Yes, Your Honor, we'll await the
14 filing of the motion and the draft of the joint notice
15 protocol.  We've talked in chambers, and long before this, you
16 know, how this matter is best to proceed and where the class
17 issue fits versus a mass joiner issue and, therefore, where
18 notice comes into play.
19           That's certainly something in discussion.
20      **THE COURT:**  Well, I've asked plaintiffs' counsel to
21 submit, not to file into the record necessarily, unless they
22 see fit to do so, but to at least discuss and submit to counsel
23 for the government and counsel for the defendants an overall
24 description of the preferred mode of procedure vis-à-vis mass
25 joinder or class, Rule 23 considerations, all the *American Pipe*

1  considerations.  In other words, what the game plan is going to
2  be in terms of an overall procedure.
3  　　　　　　So I've asked them to circulate that by April
4  the 15th --
5  　　　　**MR. WOODS:**  April 15th.
6  　　　　**THE COURT:**  -- so that I can understand it, and so
7  can the defense counsel, and counsel for the government; and it
8  will be discussed at my next status conference with liaison
9  counsel, which will also occur on April 18th.
10 　　　　　　All right.  Go ahead.
11 　　　　**MR. WEINSTOCK:**  Your Honor, that leaves us with the
12 defense item, which is the issue of pretrial publicity.
13 　　　　　　Obviously, this case has had some high profile
14 in the media.  What concerns us is lawyers commenting in the
15 media.  Certainly people have First Amendment rights.  They can
16 talk about things.  We're concerned it might get to the point
17 where it's rising to the level of commenting on the evidence
18 that will ultimately be part of this litigation, and that's a
19 concern.
20 　　　　　　Some day this is going to be tried, parts of it,
21 to a jury.  And the fact that public statements are made
22 regarding things that may be items of evidence is problematic
23 and will cause even more strain in trying to find a jury who
24 can try this case who doesn't have a relative maybe that was in
25 a unit.

1              There's a lot of complicating factors that we're
2  going to have for picking a jury, and I don't think we need to
3  add to that.
4              **THE COURT:**  Well, I hear what you're saying.  I guess
5  there are several concerns here, and we did discuss this in the
6  back as well.  There are several concerns.  You mentioned First
7  Amendment concerns.  There are concerns from a public interest
8  point of view with the government.  We, obviously, have some
9  interests from elected officials with regard to inquiries being
10 made of various government agencies regarding this.
11             I'm not going to take any action based upon what
12 you're telling me, except simply to caution all counsel:  Those
13 who have the opportunity to comment to any type of media
14 outlet, whether it's electronic, or whatever, or print media,
15 to try to be careful and give that some consideration when, and
16 if, asked about this litigation, that ultimately we are going
17 to have to pick juries for a claim -- probably more than one
18 claim -- as we try these bellwether cases.
19             So I think all counsel, as officers of the
20 court, can be cognizant of the problem that that might cause
21 and can still do what they need to do to attract clients,
22 represent clients, and proceed with the litigation, without
23 making remarks that are prejudicial or harmful to the progress
24 of the litigation.  So I think we can all be cognizant of that,
25 and I hope that we would be.

1     Is there anything further that liaison counsel
2  has to report at this point?
3     **MR. WOODS:**  No, Your Honor, I believe that's it.  It
4  covers all of our topics.
5     **THE COURT:**  All right.  I have scheduled -- before we
6  open the floor here to any further discussion at this point, I
7  have scheduled an April 18th conference with liaison counsel;
8  and when I say "liaison counsel" at this juncture, that would
9  include Mr. Miller or counsel for the government.
10          I have also scheduled our next meeting for all
11  counsel, our next status conference will be here on May the
12  9th at 10:00 a.m., hopefully promptly at 10:00 a.m., and a
13  meeting with the liaison counsel and committees for 9:00 a.m.
14  earlier that morning the same day.
15          So that is going to be the schedule from here on
16  out.  Let me also remind you-all that we have in place -- our
17  Pretrial Order 2 does have some deadlines, which I hope to
18  meet, even including these new defendant parties.
19          I want to say -- I have it here in front of
20  me -- the May 19th date is the date for motion practice in
21  response to the administrative master complaint, May 19th
22  including 12(b)(6) motions.
23          So that's the next date that's on our horizon,
24  other than the ones we've talked about here as part of
25  Mr. Woods' and Mr. Weinstock's presentation.  That's the next

1  date that we need to be cognizant of, and I fully expect
2  parties, including new parties, to be able to meet.
3           Anybody else?  Let me start here with just
4  committee members.  Does anybody else have any issue that they
5  would like to raise, or anything else that you would like for
6  the group to know at this point?
7           Then we'll open the floor, having seen no hands
8  in response to that question.  If there are any matters that
9  need to be discussed amongst all of us here now, I'll certainly
10 give the opportunity.  Mr. Becnel?
11          **MR. BECNEL:**  Yes, Your Honor.
12          Your Honor, I would just like to address the
13 comment that liaison counsel meant concerning publicity and
14 First Amendment.  We've had that extensively litigated in the
15 tobacco cases, probably as most people know, and it was
16 litigated again in the Fen-Phen case, the breast implant case
17 here in New Orleans --
18          **THE COURT:**  Mr. Becnel, let me cut you off, because
19 my hope is that we not litigate it here.  I know it has been
20 litigated.  And other than my cautionary remark, which I
21 think -- and especially I know you've handled many of these
22 that you're going to be cognizant of that -- but I really don't
23 want it to be something that we litigate here today.
24          I suspect that you're about to embark on an oral
25 argument which might better be served for an occasion where I

1  have to take some action.
2              My hope is that we're not going to get to that
3  point so ...
4         **MR. BECNEL:**  I just wanted to make the court aware of
5  those four cases with litigation in it on that issue.
6         **THE COURT:**  I'm aware of it and I raised those
7  components of those arguments when we met with the committees,
8  and I kind of alluded to them here.  Although not in as much
9  detail, but I kind alluded to them here, that there are some
10 concerns along the lines I've discussed:  First Amendment
11 concerns, public health information concerns that come into
12 play.
13             And it's not simply an instance where the court
14 is going to want to intervene in terms of what public speech
15 can be made.
16        **MR. BECNEL:**  Secondly, Judge, I'm -- as we start
17 getting towards deadlines on statute of limitations, whether
18 *American Pipe* applies or doesn't apply, one of the things that
19 many MDL courts have done is allowed direct filing into the MDL
20 forum, even though -- and, in fact, Mr. Menuier just sent out
21 an excellent paper that he's going to present to DRI in a few
22 weeks that I read yesterday.
23             What happens in these MDL cases is, let's say if
24 I file a case for New Orleans, it's here.  If I file a case for
25 Baton Rouge, it's got to then go to the MDL panel.  Before you

1  even get to know about it, it might be five to six months.  So
2  what has been a practical matter is allowing them to be filed
3  directly here.  And then in 98 percent of the major MDL cases,
4  they're either resolved here, or they're tried here by consent,
5  or something else.
6          But it just -- you're trying to move this case
7  as fast as you can for all the parties.  By having this thing
8  go to the MDL panel -- and they only meet six times a year
9  about -- you might not know about a case that's filed next week
10 for six months.
11         **THE COURT:**  Well, let me say, this issue came up last
12 time.  As a matter of fact, I think your partner, Mr. Moreland,
13 had raised it at one point, whether it was in the general
14 meeting or whether in a committee meeting, but it did come up
15 last time and I had indicated a willingness to sign an order
16 allowing for direct filing here, and I'm still willing to do
17 that.
18         I would suggest that --
19         **MR. MEUNIER:**  We'll submit one, Judge.
20         **THE COURT:**  I think it's in everybody's interest.
21 Even if a case that would ultimately be sent elsewhere, I think
22 that your point is well taken.  Rather than go through all of
23 that, we should have the ability for new cases to be filed
24 directly here.
25         So I appreciate your raising it again.  Because

Case 2:07-md-01873-KDE-MBN   Document 321   Filed 06/06/08   Page 18 of 20

18

1  it needs to be addressed, and I'm willing to sign that order to
2  get that done for the reasons that you've just said.
3         **MR. BECNEL:**  That was one of my main concerns.
4  Because, for example, we argue cases on the 27th before the
5  panel and it might be two months before they meet again.  And
6  then it also requires somebody either to go there, oppose it,
7  and, I mean, it just --
8         **THE COURT:**  I understand.  I understand.  I think,
9  again, your point is well taken, and I'm willing to go ahead
10 and remedy that for the reasons that you've just said.  There
11 are practical reasons to do it the way you suggested.
12        **MR. BECNEL:**  Thank you, sir.
13        **THE COURT:**  Thank you, Mr. Becnel.
14              Anybody else have anything that we need to
15 discuss as a group here today?
16              If you know of any attorneys that are not here,
17 please advise them if they ask you what happened here today,
18 what was discussed.  As always, we do keep a transcript.  And
19 the reason we have these in the courtroom is not simply because
20 of the number of people, but also we like to keep a transcript
21 so that those who are not in attendance, or even if you have
22 something that you need to get a transcript for to review that
23 we discussed at this conference or others, we'll have a
24 transcript available.
25              Ultimately -- I don't know that we're doing this

JODI SIMCOX, RMR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

1  just yet, but as we get more into the substantive issues here,
2  my thought is to go ahead and make that transcript available
3  online.  We'll talk about that later.
4              I think we're still at the outset here where
5  we're trying to meet these deadlines to get the issues joined
6  and to get the motion practice up and running.  So that's a
7  thought that we need to keep in mind for the future, whether
8  we're going to go ahead and put these transcripts online.
9              Anything else that anybody -- the floor is open
10 for discussion.
11             **MR. MORELAND:**  Yes, Your Honor.  One other issue.  If
12 you could direct the Clerk's Office to set up a Web site very
13 similar to that in Vioxx and Propulsid, I think it would be
14 helpful.  That MDL is not listed on the court's Web site.
15             **THE COURT:**  Yes, that's -- it's not, and it's my
16 intent also to get that done as well, sooner rather than later.
17 I hadn't done that up front because we're still in -- we have
18 new parties that are coming in, but now may be the perfect time
19 to do that in light of new parties being added.
20             **MR. MORELAND:**  If simply just a calendar for access
21 to the case.
22             **THE COURT:**  We'll try to address that in short order.
23 All right.  Last call?  Anybody have anything they want to
24 raise at this point?  Mr. Miller?
25             **MR. MILLER:**  Oh, no.

```
 1              THE COURT:  Mr. Weinstock, you and your group are
 2   satisfied for the time being as of 10:45?
 3              MR. WEINSTOCK:  10:46, Your Honor.
 4              THE COURT:  Mr. Woods and Mr. Menuier?
 5              MR. MEUNIER:  We're satisfied, Judge.
 6              THE COURT:  I, again, urge all of you-all that if
 7   issues do come up, please contact the court, get through
 8   liaison counsel, please contact the court as promptly as
 9   possible.  That has happened on several occasions in the last
10   month or two, and I encourage you to please do that.
11              I'd rather tackle whatever naughty little
12   problem we run into in short order, rather than roll it over
13   into something that might delay the litigation.
14              Anything else?  All right.  Thank you-all very
15   much.
16              ALL LAWYERS:  Thank you, Your Honor.
17              (WHEREUPON, the Court was adjourned.)
18                               *****
19                            CERTIFICATE
20       I, Jodi Simcox, RMR, FCRR, Official Court Reporter
     for the United States District Court, Eastern District of
21   Louisiana, do hereby certify that the foregoing is a true and
     correct transcript, to the best of my ability and
22   understanding, from the record of the proceedings in the
     above-entitled and numbered matter.
23
24
                              /s/ Jodi Simcox, RMR, FCRR
25                              Jodi Simcox, RMR, FCRR
                                Official Court Reporter
```