**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

**IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

**MDL NO. 1873**

**SECTION "N-4"**

**JUDGE ENGELHARDT**
**MAG. JUDGE ROBY**

**THIS DOCUMENT IS RELATED TO ALL CASES**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**OPPOSITION BY PLAINTIFFS TO RULE 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION BY DEFENDANT COACHMEN INDUSTRIES, INC.**

NOW INTO COURT, through undersigned counsel comes Plaintiffs, who present this memorandum in opposition to the Rule 12(B)(2) Motion to Dismiss filed by Defendant, Coachmen Industries, Inc., alleging lack of personal jurisdiction. Plaintiffs request that this Honorable Court deny Defendant's motion for the following reasons.

## I. Introduction

Plaintiffs allege in the Administrative Master Complaint (Doc #109) that Coachmen Industries, Inc. (hereinafter "Coachmen") manufactured and supplied FEMA trailers or temporary housing units to victims of hurricanes Katrina and Rita in Texas, Louisiana, Mississippi, and Alabama.[1] Coachmen purports in its Memorandum in Support of its 12(B)(2) Motion to Dismiss for Lack of Personal Jurisdiction that "Coachmen does not manufacture recreational vehicles."[2] An

[1] Administrative Master Complaint, p. 12.
[2] Memorandum in Support of Rule 12(B)(2) Motion to Dismiss, p. 1.

internet search for "Coachmen" produces a link to the Coachmen Industries, Inc. website along with a brief description of the company which reads: "Manufacturer of recreational vehicles, modular homes, and related products."[3] Nevertheless, Coachmen denies being a manufacturer of recreational vehicles, but instead claims that its wholly owned subsidiaries Coachmen Recreational Vehicle Company, LLC (hereinafter "CRV") and Viking Recreational Vehicles, LLC (hereinafter "Viking") are the manufacturers of the units used by FEMA in the aftermath of Hurricanes Katrina and Rita. Coachmen's 2007 Annual Report, however, includes statistics for Coachmen's sales of Mobile Homes, Travel Trailers, Fifth Wheels, Camping Trailers, and Parts/Supplies.[4]

Coachmen claims that it does no business in the States of Texas, Louisiana, Mississippi, and Alabama because the products used by FEMA were not the products of Coachmen but products of CRV and Viking. However, in response to the inquiry initiated by the Committee on Oversight and Government Reform of the United States House of Representatives, Rick Lavers, President and Chief Executive Officer of Coachmen, stated that "we know that a proportionately small number of our products were used by FEMA."[5] Plaintiffs submit that if Coachmen holds itself accountable to Congress for what it claims as "our products," which were used by FEMA in the States of Texas, Louisiana, Mississippi, and Alabama, then it should also be held accountable by this Honorable Court for those same products used in these states.

## II. Argument

Defendant, Coachmen, contends that this Court cannot exercise *in personam* jurisdiction over it because "Coachmen has no contacts with the States of Louisiana, Mississippi, Alabama or

---

[3] Exhibit A, (Yahoo search).
[4] Exhibit B, (Annual Report, p. 3).
[5] Exhibit C, (Press Release).

Texas."[6] "To meet a challenge to *in personam* jurisdiction prior to trial, plaintiff need only make a *prima facie* showing of jurisdiction, so that the allegations of the complaint are taken as true except as controverted by the defendant's affidavits and conflicts in the affidavits are resolved in the plaintiff's favor."[7]

"The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice."[8] Coachmen only contests the "minimum contacts" prong of the analysis, and Plaintiffs consequently focus this argument on the analysis of Coachmen's contacts with the States of Texas, Louisiana, Mississippi, and Alabama.

**A. Minimum Contacts**

"Minimum contacts" can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction.[9] "Specific jurisdiction over a nonresident corporation is appropriate when that corporation has purposefully directed its activities at the forum state and the 'litigation results from alleged injuries that 'arise out of or relate to' those activities.'"[10] "General jurisdiction, on the other hand, will attach where the nonresident defendant's

---

[6] Memorandum in Support of Rule 12(B)(2) Motion to Dismiss, p. 3.

[7] *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990), citing *Travelers Indemnity Co. v. Calvert Fires Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986), modified on other grounds, (836 F.2d 850 (1988).

[8] *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999), quoting *International Shoe Co. v. State of Washington, 326 U.S. 310 (1945).*

[9] *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000), citing *Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994).

[10] *Id.*, (citations omitted).

contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.'"[11] Plaintiffs respectfully submit that this Court may assert specific jurisdiction over Coachmen.

As stated in *Ruston Gas Turbines, Inc. v. Donaldson Co.*:

> The "minimum contacts" prong, for specific jurisdiction purposes, is satisfied by actions, or even just a single act, by which the non-resident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." The non-resident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state.[12]

This Court may assert specific jurisdiction over Coachmen because Coachmen has purposefully availed itself of the laws and benefits of the States of Texas, Louisiana, Mississippi, and Alabama by manufacturing products which it could reasonably foresee would connect it to those states such that it should reasonably anticipate being haled into court there.

Coachmen asserts that it does not have the requisite "minimum contacts" for this Court to assert specific jurisdiction over it because Coachmen "does not manufacture recreational vehicles"[13] In Coachmen's 2007 Annual Report, however, it describes itself as follows: "Coachmen Industries, Inc. is one of America's leading manufacturers of recreational vehicles (RVs), systems-built homes and multi-family residential structures."[14]

In addition, Coachmen admitted that it knew of FEMA's use of Coachmen's travel trailers in a press release responding to a Congressional inquiry into the levels of formaldehyde in Coachmen

---

[11] *Id.*, (citations omitted).

[12] *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (citations omitted).

[13] Exhibit D, (Affidavit of Colleen Zuhl Jr.).

[14] Exhibit B, (Annual Report, p. 2).

travel trailers by the Committee on Oversight and Government Reform of the United States House of Representatives. Coachmen knew that FEMA would use those trailers in these four hurricane ravaged states, and therefore it purposefully directed its activities toward those states, subjecting it to specific jurisdiction.

Coachmen asserts that its subsidiaries manufactured the products which have been made the subject of this litigation, and that Coachmen Industries Inc. is merely the parent corporation. Coachmen boasts that it is a "manufacturer of recreational vehicles (RVs), systems-built homes and multi-family residential structures" on its website, in its Annual Reports, in its SEC filings, and in Congressional Inquiries. Alternatively, Plaintiffs submit that Coachmen is an alter ego of its subsidiaries such that it should be held liable for their acts as well as its own.

**B. Corporate Relationship**

Coachmen does not dispute that its subsidiaries are subject to personal jurisdiction.[15] Therefore, demonstrating that Coachmen is the alter ego of its subsidiaries by piercing the corporate veil will subject Coachmen to the personal jurisdiction of this Court whether it is a manufacturer or not.

In *Hargrave v. Fireboard Corp.*, the Fifth Circuit set out the factors to be considered when deciding if a parent corporation may be held liable for the acts of its subsidiaries.[16] These factors are summarized in *Dickson Marine Inc. v. Panalpina, Inc.*:

> The *Hargrave* factors are (1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete

---

[15] Memorandum in Support of Rule12(B)(2) Motion to Dismiss, p. 5.

[16] *Hargrave v. Fireboard Corp.*, 710 F.2d 1154 (5th Cir. 1983).

> authority over general policy; (7) did the subsidiary exercise complete authority over daily operations.[17]

Based on the *Hargrave* factors, Coachmen dominates the activities of its subsidiaries such that they are essentially one and the same.

Coachmen wholly owns its three subsidiaries CRV, CRV-Ga, and Viking.[18] The headquarters for CRV, CRV-Ga, and Coachmen are all the same: 423 Middlebury, IN 46540.[19] Michael Terlep is the President of Coachmen's RV-Group (which includes CRV, CRV-Ga, and Viking) and is listed as an officer of Coachmen Industries, Inc.[20] No other directors or officers are listed in the subsidiaries' company profiles.

Coachmen does not observe corporate formalities or maintain separate corporate records. It consolidates all of its subsidiaries into two categories: the RV Group and the Housing Group.[21] It does not even separate the individual subsidiaries for tax purposes but treats all the RV companies' revenue as a whole and all the housing companies' revenue as a whole.[22] Coachmen dictates both its groups' accounting practices and the amount of money allocated to each segment by Coachmen.[23] Coachmen exercises complete authority over its subsidiaries' general policy. Marketing, employee compensation, and product direction are all controlled by the president of the RV Group, not each company's own officers.[24] It is not clear whether each subsidiary controls its own day-to-day

---

[17] *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331 (5th Cir. 1999), citing *Hargrave* 710 F.2d at 1160.

[18] Exhibit B, (Form 10-K, Page 2, found in Annual Report).

[19] Exhibits E, F and G. (Company Contact Information).

[20] Exhibit H, (Yahoo Finance Insider Roster).

[21] Exhibit B, (Form 10-K, Page 48, found in Annual Report)

[22] *Id.*

[23] *Id.* at 48, 67.

[24] Exhibit I, (8-K minutes, pp. 5-9).

operations. In the case of CRV and CRV-Ga, because their headquarters are located in the same place as that of Coachmen, Plaintiffs maintain that Coachmen's influence on day-to-day operations is significant. Plaintiffs submit that all the *Hargrave* factors pull in favor of holding Coachmen as the alter ego of its subsidiaries.

Even more convincing than the *Hargrave* factors, are the Fifth Circuit's corporate relationship factors listed in *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.* Here the Fifth Circuit listed the factors as follows:

> (1) the parent and the subsidiary have common stock ownership
> (2) the parent and the subsidiary have common directors or officers;
> (3) the parent and the subsidiary have common business departments;
> (4) the parent and the subsidiary file consolidated financial statements and tax returns;
> (5) the parent finances the subsidiary;
> (6) the parent caused the incorporation of the subsidiary;
> (7) the subsidiary operates with grossly inadequate capital;
> (8) the parent pays the salaries and other expenses of the subsidiary;
> (9) the subsidiary receives no business except that given to it by the parent;
> (10) the parent uses the subsidiary's property as its own;
> (11) the daily operations of the two corporations are not kept separate; and
> (12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.[25]

In addition to the factors already weighing in favor of holding Coachmen as the alter ego of its subsidiaries, the factors in *Gundle* tilt the analysis further in Plaintiffs' favor. Coachmen files consolidated tax forms and reports to the IRS and SEC.[26] Coachmen finances its subsidiaries with resources based on each subsidiary's performance the previous year.[27] Coachmen formed Viking Recreational Vehicles, LLC in 1976.[28] Coachmen formed Coachmen Recreational Vehicles, LLC

---

[25] *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 208 (5th Cir. 1996).

[26] Exhibit B, (Annual Report).

[27] Exhibit B, (Annual Report).

[28] Exhibit J, (Viking history).

in 2000.[29] Coachmen formed Coachmen Recreational Vehicles of Georgia, LLC in 2001.[30] Coachmen considers all property of its subsidiaries to be its own and has upon numerous occasions relocated its subsidiaries' manufacturing operations to the Coachmen manufacturing facilities located at its headquarters in Middlebury, IN.[31] In addition, Coachmen's subsidiaries are limited liability companies and have no managers and, therefore, hold no shareholder or board meetings.[32] The addition of the *Gundle* factors demonstrates further that Coachmen is, in fact, the alter ego of its subsidiaries.

Coachmen has repeatedly held itself out to the public as the manufacturer of the products which are the subject of this litigation. It has controlled nearly every aspect its wholly owned subsidiaries, which it claims are indirect subsidiaries. Coachmen's recent assertions of corporate separateness are convenient and unfounded. Plaintiffs submit that so long as Coachmen allows its products to enter a stream of commerce which runs through the States of Texas, Louisiana, Mississippi, and Alabama, this Court holds personal jurisdiction over it.

At the very least, discovery activity should be allowed so that a proper record of Coachmen's relationship to its subsidiaries, and its corporate presence in this jurisdiction, can be established. To this extent, the instant motion is premature.

**III. Conclusion**

Coachmen maintains the requisite "minimum contacts" with the States of Texas, Louisiana, Mississippi and Alabama for this Court to hold personal jurisdiction over it. Plaintiffs vigorously

[29] Exhibit K, (CRV Information from Indiana Secretary of State ).
[30] Exhibit L, (CRV-Ga Information from Indiana Secretary of State).
[31] Exhibit I, (8k minutes).
[32] Exhibits K, L, and M, (Viking Information from Indiana Secretary of State).

contest the conclusory statements in the affidavit of Colleen Zuhl, Jr., Chief Financial Officer of Coachmen. Coachmen, by its own admission, is a manufacturer of products made the subject of this litigation. In addition, Coachmen is an alter ego of its subsidiaries, exercising near complete control over them, and thus, Coachmen isliable for their tortious acts as well as its own. Plaintiffs submit that the Administrative Master Complaint and this Opposition have provided facts and law making out a *prima facie* case against Coachmen and its subsidiaries. It is well-settled that "[w]hen alleged jurisdictional facts are disputed, [the Court] must resolve all conflicts in favor of the party seeking to invoke...jurisdiction."[33] Plaintiffs accordingly submit that this Court should deny Coachmen's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY: s/Gerald E. Meunier

GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
gmeunier@gainsben.com

[33] *Ruston Gas*, 9 F.3d at 418 (citations omitted).

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
RONNIE PENTON, #10462

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471