## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                           MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                  SECTION "N-4"

                                              JUDGE ENGELHARDT
                                              MAG. JUDGE ROBY

**THIS DOCUMENT IS RELATED TO ALL CASES**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN OPPOSITION TO THE MANUFACTURING DEFENDANTS' JOINT RULE 12(B)(6) MOTION TO DISMISS [Doc. No. 210]

**MAY IT PLEASE THE COURT:**

Plaintiffs, through undersigned counsel for the Plaintiffs' Steering Committee ["PSC"], respectfully submit this Memorandum in Opposition to the Manufacturing Defendants' Joint 12(b)(6) Motion to Dismiss, based upon the plaintiffs failure to state claims for the breach of warranty, application of the "economic loss" rule, and the unavailability of the medical monitoring remedy. As set forth below, Defendants have failed to meet their burden under Rule 12(b)(6) as to each issue raised, and the motion should be denied.

I.      **Applicable Standard.**

Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. *See Southern Christian Leadership Conference v. Supreme Court*, 252 F.3d 781, 786 (5th Cir. 2001). In considering a Rule 12(b)(6) motion to dismiss, the Court must take the well-pleaded factual allegations of the complaint as true. *See Jaufre v. Taylor*, No. Civ. A. 03-0028, 04 WL 1444945,

at *1 (E.D.La. 6/25/04) (citing *Baker v. Putnal* 75 F.3d 190, 196 (5ᵗʰ Cir. 1996); *American Waste & Pollution Control Co. v. Browning-Ferris, Inc*., 949 F.2d 1384, 1386 (5ᵗʰ Cir. 1991)).  Furthermore, "[a]ll questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor."  *Lewis v. Fresne*, 252 F.3d 352, 357 (5ᵗʰ Cir. 2001); *McKinney v. Irving Indep. Sch. Dist*., 309 F.3d 308, 310 (5ᵗʰ Cir. 2002).  The issue is not whether plaintiffs will ultimately prevail, but whether plaintiffs are entitled to offer evidence to support their claim.  *See Scheuer v. Rhodes*, 416 U.S. 232 (1974).  Accordingly, the court may dismiss a complaint "only if it appears certain that the plaintiff[s] cannot prove any set of facts in support of [their] claim that would entitle [them] to relief."  *Jaufre,* at *1.

Moreover, where pleaded facts are in dispute, as they are *sub judice*, judgment on the pleadings is premature.  *See Stanton v. Larsh*, 239 F.2d 104, 106 (5ᵗʰ Cir. 1956).  If, as in this case, well-pled complaints give defendants fair notice of the claims and the grounds therefor,  plaintiffs are entitled to a liberal opportunity for discovery to "disclose more precisely the basis of both the claim and defense and to define more narrowly the disputed facts and issues."  *Conley v. Gibson*, 355 U.S. 41, 48-49  (1957).

II.     **Defendants' Arguments Concerning Plaintiffs' Warranty Claims**.

Defendants claim that Plaintiffs are precluded from recovering under various breach of warranty theories in light of the laws in Mississippi, Alabama, Texas and Louisiana.   *See* Manufacturing Defendants Joint 12(b)(6) motion at p. 6.  The argument lacks merit under the applicable law of each state in question.

(A)     **Mississippi Law**

Defendants argue that under Mississippi warranty law Plaintiffs are precluded from recovery

because, among other reasons, they are not "buyers" under Mississippi UCC Section 75-2-103.  *See* Manufacturing Defendants Joint Rule 12(b)(6) Motion at 7.  In essence, Defendants claim that there is no contractual privity between Defendants and Plaintiffs and, as such, the warranty claims must fail.  However, that argument plainly ignores the fact that Mississippi warranty law does not limit recovery to persons in privity or to direct "buyers."

Mississippi Code Section 11-7-20 has eliminated the necessity of contractual privity in all actions, including actions for breach of warranty actions:

> In all causes of action for personal injury or property damage or economic loss brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, ***privity shall not be a requirement to maintain said action***.

Mississippi Code, 11-7-20 (emphasis added).

This principle applies not only to cases in which the end-user actually purchased the product at issue, but also to cases where the end-user has not made any purchase at all. *See e.g. Hargett v. Midas Intern. Corp.*, 508 So.2d 663 (Miss. 1987) (Purchaser of used motor home brought action against manufacturer to recover for breach of implied warranty of merchantability; held that manufacturer of motor home was a "seller" for purposes of implied warranty of merchantability and that privity was not required); *Hicks v. Thomas*, 516 So.2d 1344 (Miss.1987) (Privity was not required in order for purchaser of truck to assert claim for breach of implied warranty of title against party that transferred truck to purchaser's immediate seller).  For instance, in *Cochran v. Rockwell Intern. Corp.* the Court held that an airplane pilot who brought a products liability suit against the manufacturer and seller of an airplane purchased by his employer, could recover for injuries sustained in a forced landing of a defective aircraft through an action against the seller under a

breach of implied warranty theory.  564 F.Supp. 237 (D.C.Miss.1983).  In so reasoning, the Court

stated:

> In view of Ayres' [Defendant's] policy of advertising the merits of Thrush airplanes for crop dusting operations and its prominence as a Rockwell distributor in the southeastern United States, it is implicit from the evidence that Sharpe, as the purchaser, relied upon Ayres' skill and judgment in making the purchase and that Ayres had reason to know of the particular purpose for which the Thrush was to be used. Thus, Ayres' sale also extended an implied warranty of fitness for a particular purpose…Because of the defective condition of the Thrush which rendered it unsuitable for normal use as an airplane as well as unfit for particular use as a crop duster, Ayres breached implied warranties existing under Mississippi law…**Moreover, in Mississippi it should be noted that the original limitation of the scope of third-party beneficiaries who might claim the protection of an implied warranty, which was originally restricted by § 75-2-318, and under which plaintiff could not qualify, was abolished in 1976**. Chapter 385, General Laws of 1976, rather curiously carried as § 11-7-20 under the heading of Practice in Circuit Courts, and not as a part of the Uniform Commercial Code, unmistakably declares that **"in all actions for personal injury ⋯ brought on account of breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain the action."** Thus, **plaintiff, as the user** in his capacity as pilot-employee of Sharpe, Ayres' purchaser, **is entitled to sue Ayres as seller for breach of implied warranty.**

*Id*. at 242-43 (emphasis added).  *Cochran* makes clear that Mississippi law does not require the end-

user to have actually purchased the defective product before her or she can recover under warranty

theories.  In essence, the end-user is able to stand in the shoes of the purchaser and be subrogated

to the rights of the actual purchaser.

Moreover, as shown in *Cochran,* the reliance element  for purposes of a breach of implied

warranty a claim can be implicit.  Just so, in this case it is now clear in the record that the federal

government relied on the manufacturers' skill and judgment to provide a safe product in purchasing

the housing units to be used by plaintiffs.  It is not necessary to show that Defendants made any

express affirmation, description, promise or sample *directly* to Plaintiffs; under Mississippi law,

third-party beneficiaries who are not privy to the underlying contract still may recover under a

warranty claim.

Regarding express warranties, Defendants rely on *Austin v. Will-Burt Co.,* 232 F.Supp.2d 682 (N.D.Miss., 2002) for the proposition that Mississippi courts dismiss claims for breach of express warranty "where the plaintiffs could not *prove* that the plaintiffs relied on the alleged express affirmation or promise" of the seller in purchasing the goods. *See* Manufacturing Defendants' Joint 12(b)(6) motion at 9 (emphasis added). In that case, the court held that no express warranty existed between the manufacturer of a telescoping mast and a television news van worker who was killed when the mast came into contact with power lines. By contrast, in the present case, summary judgment standards do not apply, as Plaintiffs have not yet had the opportunity through discovery to "prove" anything, thus, providing further evidence of the premature nature of Defendant's motion. The Austin case also is distinguishable because the news station in that matter had acquired the mast nearly 10 years after the manufacturer made its original sale to a different purchaser. *Id*. Here, the federal government purchased the units at issue for the specific and immediate use of plaintiffs.

Lastly, under Mississippi case law, affirmations need not be communicated directly to the buyer by the seller to induce purchase. *See Forbes v. General Motors Corp.,* 935 So.2d 869, 875 (Miss. 2006) (in products liability action against automobile manufacturer and dealership for defective air bag held that manufacturer could be liable for having breached express warranty in owner's manual, even though consumer never read owner's manual). Thus, the fact that the federal government stood as an intermediary in the transactions at issue does not prove fatal to Plaintiffs' warranty claims under Mississippi law.

**(B)    Alabama Law**

Defendants assert that Plaintiffs' Alabama express warranty claims should be dismissed

because, "Plaintiffs lack standing and are not in privity of contract with Defendant as required under Alabama law." *See* Manufacturing Defendants 12(b)(6) motion at 11. However, Alabama Code Section § 7-2-318 states:

> **A sellers' warranty, whether express or implied, extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.**

In cases of purely economic loss, a plaintiff arguably cannot recover on a breach of warranty theory where there is no privity of contract. *See Rampey v. Novartis Consumer Health, Inc.*, 867 So.2d 1079 (Ala. 2003). But the above statute plainly abolishes vertical privity where personal injury is alleged. *See Land v. Huffman Mfg. Co.*, 420 F.Supp. 459 (M.D.Ala.1976) (It is statutory law that the defense of lack of privity is not available in cases involving personal injury). In the instant case, Plaintiffs have clearly alleged more than mere economic injury. *See, e.g.* Administrative Master Complaint, ¶ 153 ("plaintiffs have suffered and will continue to suffer damages... for past and future physical pain and mental suffering...medical expenses...physical impairments and disability...). At this stage in the litigation, where Plaintiffs have not yet had a chance to *prove* such injuries, it is premature to dismiss on this basis.

Furthermore, regarding the express warranty claims, Defendants' reliance on *Ex Parte General Motors Corp.* is misplaced. Notably, *General Motors* involved a summary judgment motion, not a motion to dismiss at the pleadings stage for failure to state a claim. 769 So.2d 903, 907-10 (Ala. 1999). In granting the summary judgment motion, the court observed that nothing in the *discovery* record supported evidence of a warranty, noting, "Tucker's deposition testimony contains no evidence that the dealership knew that he was relying on the dealership's skill or judgment to furnish him with an appropriate car or that he, in fact, did rely on the dealership's skill

or judgment." *Ex Parte General Motors Corp.,* 769 So.2d. at 906.  At this stage, Defendants' assertion that Plaintiffs' lack evidence of reliance is premature for 12(b)(6) motion practice.

General Motors is also distinguishable from the present case in that the court deemed the dealer, not the remote manufacturer, to be the "seller."  Here, it is clear that the Defendants, not the government, are the "sellers," as Defendants themselves emphasize that there was no "sale" between FEMA and the Plaintiffs.  Furthermore, under the language of Alabama Code Section § 7-2-318, statements that form the basis of an express warranty do not have to be communicated directly from the seller to the injured end-user. *See Bishop v. Faroy Sales,* 336 So.2d 1340, 1343 (Ala.1976).[1]

Additionally, Defendants' argument that Plaintiffs' implied warranty of fitness claim should be dismissed also is without merit.  To contend that Plaintiffs' failure to plead reliance on Defendants' skill or judgment is fatal to Plaintiffs' claims simply ignores the liberal notice pleading requirements set forth in the Federal Rules. *See* Fed.R.Civ. P. Rule 8(a).  Furthermore, Alabama case law holds that third party beneficiaries can satisfy the reliance element of the implied warranty of fitness vicariously through the actual buyer of the goods at issue.  In *Chase v. Kawasaki Motors Corp.*, for example, it was held that children who were injured while operating an all terrain vehicle (ATV) could satisfy the reliance element of their implied warranty of fitness for a particular purpose claim against the ATV dealer under Alabama law by proving reliance on the part of their mother, the buyer, without having to prove that they themselves relied upon the seller's skill and judgment. *Chase*, 140 F.Supp.2d 1280 (M.D.Ala.2001).

---

[1] In Bishop, the court states, "Sellers and buyers are not limited by definition to retailers and consumers. By its terms, a seller is anyone who sells, including a manufacturer or distributor. Thus, a manufacturer's or distributor's warranty extends to 'any natural person if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by the breach of the warranty.' A manufacturer or distributor intends the products he sells to eventually arrive in the hands of consumers. Thus, by the terms of the [7-2-318] statute, a manufacturer's or distributor's warranty would extend to the final buyer-consumer of the product (as well as to other possible parties horizontally) if he is injured in person by the breach of the warranty".

**(C)**   **Texas Law**

Defendants assert essentially the same arguments under Texas law as under Mississippi and Alabama law—that Plaintiffs may not recover under any warranty theories because they are not "buyers" under Texas UCC law; that there is no evidence of reliance to recover for breach of express warranty or implied warranty for fitness; and that Plaintiffs cannot recover for either property damage or personal injury because Defendants did not make any affirmations upon which Plaintiffs relied. Manufacturing Defendants' 12(b)(6) motion p. 16-19.

Texas' UCC § 2-318 is neutral on the question of third-party beneficiaries of warranties as well as the need for contractual privity in order to recover, pointing instead to case law for a determination. *See* Tex. Bus. & Com.Code § 2.318.  Texas case law, in turn, provides that with regard to express warranties, the affirmation of fact or promise made by the seller to the "buyer" that serves as the "basis of the bargain" does not necessarily have to be made *directly* from the seller. In *PPG Industries, Inc. v. JMB/Houston Centers Partners* ,146 S.W.3d 79, 88 (Tex. 2004) the Texas Supreme Court stated:

> Unlike most other states, Texas adopted the UCC without choosing any of its three options concerning who may sue on warranties; instead, the Legislature expressly delegated that choice to the courts. Pursuant to that mandate, in Nobility Homes of Texas, Inc. v. Shivers, we held a downstream purchaser of a mobile home could bring implied warranty claims directly against a remote manufacturer, even though there was no privity of contract between them. While it appears we have never addressed the same issue regarding express warranties, several lower courts have applied the same rule in that context-express warranties pass with the goods… a downstream buyer can sue a remote seller for breach of an implied warranty.

*Id.* at 88-89. *(citing, e.g., DaimlerChrysler Corp. v. Inman*, 121 S.W.3d 862, 881 (Tex.App.-Corpus Christi 2003, pet. filed); *U.S. Tire-Tech, Inc. v. Boeran, B.V.,* 110 S.W.3d 194, 198 (Tex.App.-Houston [1st Dist.] 2003, pet. denied); *Edwards v. Schuh*, 5 S.W.3d 829, 833 (Tex.App.-Austin

1999, no pet.); *Indust-Ri-Chem Lab., Inc. v. Par-Pak Co.,* 602 S.W.2d 282, 287-88 (Tex.Civ.App.-Dallas 1980, no writ)); *see also Nobility Homes of Texas, Inc. v. Shivers,* 557 S.W.2d 77 (Sup. 1977) (Manufacturer of mobile home was responsible, without regard to privity, for economic loss which resulted to remote purchaser of mobile home from manufacturer's breach of implied warranty of merchantability under § 2.314).

Additionally, Texas law does recognize the right of a **non-buyer** third party to sue under breach of warranty claims. In *Garcia v. Texas Instruments, Inc.,* for example, an employee of a buyer of sulfuric acid brought suit to recover against the seller for acid burns sustained by an employee when the container of acid broke. 610 S.W.2d 456 (Tex. 1980). The court held that the absence of contractual privity did not preclude the employee from maintaining a cause of action against the seller for personal injuries resulting from the breach of implied warranty.  Thus, the employee's action was governed in its entirety by the under the Texas Business and  Commercial Code, including its four-year statute of limitations. *Id.*

### (D)    Louisiana law

With respect to a warranty theory of recovery, Plaintiffs have alleged sufficient facts in their complaint to support a claim under the Louisiana Products Liability Act ["LPLA"].  Under the LPLA, Plaintiffs must prove: first, that the product possesses an "unreasonably dangerous" characteristic; second, that this unreasonably dangerous characteristic proximately caused plaintiffs' damages; and third, that injury arose from a "reasonably anticipated use" of the product.  A product is unreasonably dangerous if: (1) the product is unreasonably dangerous in construction or composition; (2) the product is unreasonably dangerous in design; (3) the product is unreasonably dangerous because an adequate warning about the product has not been provided; or (4) the product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product.  La. Rev. Stat. Ann. § 9:2800.54.

Plaintiffs' Complaint alleges that Defendants manufactured unreasonably dangerous motor homes which emit unlawful and harmful levels of formaldehyde; that these dangerous levels of formaldehyde are causing Plaintiffs to suffer injuries; and that Plaintiffs are using the motor homes as their residences.

In support of the instant motion, Defendants assert that because Plaintiffs have not shown that they were induced to use the product because of the express warranty that the claim should be dismissed. Manufacturing Defendants Joint 12(b)(6) Motion at 19.  However, in *Caboni v. General Motors Corp.*, 278 F.3d 448 (5th Cir 2002), *the case upon which Defendants themselves rely*, the court determined that whether or not Plaintiff relied on statements that could constitute an express warranty was a genuine issue of material fact that went beyond the pleadings and was inappropriate for *summary judgment* disposal. *Id.* at 453.  Neither Plaintiffs nor Defendants have yet had the opportunity to prove anything, however, and dismissal at this stage of the proceedings would be premature even under the authority cited by Defendants.

Moreover, Louisiana law does not require that an end-user have *directly* relied on the affirmations as it allows those not in privity to recover under warranty claims.  As the Louisiana Supreme Court recently reasoned in *Aucoin v. Southern Quality Homes, LLC*:

> [T]his Court held in *Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc.*, 262 La. 80, 262 So.2d 377 (1972), that the buyer could recover directly from the manufacturer for breach of warranty, despite the fact that there was no privity of contract between them. In *Media Production*, the Court stated, **Louisiana has aligned itself with the consumer-protection rule, by allowing a consumer without privity to recover, whether the suit be strictly in tort or upon implied warranty**…262 So.2d at 380-81. We see no reason why the rule should not apply to the pecuniary loss resulting from the purchase of a new automobile that proves unfit for use because of latent defects. **The pecuniary loss resulting from an unusable vehicle is recoverable when there is an Express warranty without privity…**

2008 WL 498668 at p. 4 (La. 2008)[emphasis added].

Plaintiffs' Complaint clearly alleges that the housing units provided did not conform to the

express warranties made by the Manufacturing defendants. Administrative Master Complaint ¶ 138d. It is fundamental procedural law that "the plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests. . . . A 12(b)(6) motion tests only the sufficiency of the claim set out in the plaintiff's pleadings." *Mann v. Adams Realty Co., Inc.*, 556 F.2d 288, 293 (5th Cir. 1977).   Furthermore, in *McManus v. Fleetwood Enterprises, Inc.,* the Fifth Circuit held that because "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." and as such "plaintiff need not correctly specify the legal theory, so long as the plaintiff alleges facts upon which relief can be granted" the complaint's California state law claim for breach of implied warranty of merchantability was sufficient to allege a Texas law of implied warranty of merchantability claim. 320 F.3d 545, 551 (5th Cir. 2003); *see also American Specialty Systems, Inc. v. Chicago Metallic*, Not Reported in F.Supp.2d, 2002 WL 406965 at 7 (N.D.Ill. 2002) (Plaintiffs are not required "to parrot the language of the UCC [or the LPLA]; the allegations in the complaint are sufficient to meet the liberal pleading requirements of Federal Rule of Civil Procedure 8(a)").   Plaintiffs clearly have satisfied the liberal notice pleading standards that apply to the Master Complaint.

### III. <u>The Economic Loss Rule</u>

Defendants argue that plaintiffs lack standing to recover for their economic loss claims, because: 1) they are not owners of the housing units; 2) the U.S. Government is the actual owner of same; and 3) plaintiffs are barred from recovery by the economic loss doctrine under strict liability and negligence.

-11-

In products liability cases, it is now well - established that product ownership is not required for an action to proceed. *See East River S.S. Corp., et al., v. Transamerica Delaval, Inc.*, 476 U.S. 858, 873 (1986).

As to the economic loss rule invoked by defendants, this doctrine stands for the principle that under tort law a plaintiff cannot recover damages for purely monetary harm, as opposed to physical injury or property damage, unless a special relationship exists between the parties. Defendants assert that Plaintiffs' economic loss claims are barred from recovery under strict liability and negligence,   citing as authority both *East River Steamship Corp. supra* and *Seely v. White Motor Company*, 63 Cal.2d 9, 403 P.2d 145 (Cal. 1965).  Both of these cases, however, are distinguishable from the matter at hand, since both dealt with business or economic losses only.

In *Seely,* the plaintiff suffered no physical injuries, only damage to the product at issue (a truck purchased to haul heavy loads in his business).  See 403 P.2d at 147.  Plaintiff therfore sought damages exclusively  for the economic losses to his business.  *Id*.  The court held that there were no economic loss damages available under tort for businesses and the plaintiff's remedy was in his contract. *Id*. at 151.  Significant in the court's decision was the plaintiff's ability to shop around for a truck that met his business needs.  *Id*. at 152.

*East River* was an admiralty case which adopted a "similar" approach to *Seely* regarding purely monetary loss claims resulting from a defective product.  476 U.S. at 871.  The Court, applying product liability concepts to a maritime tort case, held that a "manufacturer in a commercial relationship has no duty under either a negligence or strict product liability theory to prevent a product from injuring itself." *Id*.   In the footnote to this sentence the Court clarified its

-12-

holding by stating "We do not reach the issue whether a tort cause of action can ever be stated in admiralty when the only damages sought are economic." *Id.*

In both of these cases the only damages were economic damages to a business where there existed a commercial contract through which the plaintiff could seek redress. There were no physical injuries or injuries to other property. The Plaintiffs in the case at hand, however, do not seek recovery for damages to the products (trailers) themselves. They assert that, in addition to the loss of adequate and safe housing, they also suffered physical injuries from exposure to formaldehyde. Therefore their claims are not barred by the economic loss doctrine because their claims are not purely economical damages for only the product itself.

**(A).    Mississippi: Plaintiffs' Claims for Negligence and Strict Liability Are Not Barred By The Economic Loss Doctrine.**

Defendants assert that under Mississippi law Plaintiffs cannot recover for economic losses caused by their travel trailers. To support their argument Defendants cite three Mississippi cases where the plaintiffs suffered only economic losses. In *Lee v. General Motors Corp.* the plaintiffs sought solely economic damages for GM lowering the standards on the roofs of their Blazers. 950 F.Supp. 170 (S.D. Miss 1996). The plaintiffs sustained no personal injuries and had no accidents. *Id.* at 172. While the Mississippi Supreme Court had not, and still has not, addressed this issue, the Southern District of Mississippi made an <u>Erie</u> guess and held that there is no remedy under negligence and/or strict liability in tort for damages that are solely economic in nature. *Id.* at 174.

In *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, plaintiff's only damages were economic damage to the product itself, there were no personal injuries or damage to other property. 736 So.2d 384 (Miss. Ct. App. 1999). The economic loss doctrine bars claims under

strict liability and negligence when the only damage is to the product itself.  *Id*. at 387.  The court noted that Mississippi's products liability statue does not define 'commercial damage to the product itself,  yet this is presumed to mean damages caused by the product itself that adversely affects the product's monetary value, the type of recovery that is considered beyond the scope of the state's product liability law of torts  *Id*. at 388.

In *Progressive Ins. Co. v. Monaco Coach Corp.*, the plaintiff's claim, again,  was for economic loss only; the plaintiff did not allege any personal injury.  2006 WL 839520, *2 (S.D. Miss. 2006).  The court distinguished claims of individual consumers with physical injuries from consumers who suffer only economic damages and dismissed Progressive's strict liability and defect claims "under the economic loss doctrine ***because*** of the absence of any personal injury resulting from the alleged defect." Id at *2 and *5 (emphasis added).

Because Plaintiffs in the case are alleging more than damage to the product itself (trailer) and are also alleging present personal injuries related to the formaldehyde in the trailer, their claims do not fall under the exclusion of Mississippi's economic loss doctrine.

**(B).   Texas: Plaintiffs' Claims for Negligence and Strict Liability Are Not Barred By the Economic Loss Doctrine.**

Defendants assert that Plaintiffs' claims for economic loss are barred by Texas' economic loss doctrine because Plaintiffs only seek economic damages and cite two cases in support of this proposition.  When the only loss or damage is to the subject matter of the contract the plaintiff's remedy is usually in contract. *Southwestern Bell Telephone Co. v. Delanney* 809 S.W.2d 493, 494 (Tex. 1991).  In *Southwestern Bell* the plaintiff's only claim was for economic loss to his business because of the phone company's omission of his directory advertising.  *Id.*  In *MedicalCityDallas, Ltd. V Carlisle Corp*, the plaintiffs contracted with the defendant for roof

-14-

work, which was later evaluated by a consultant who found the roof to be in poor condition.  251 S.W.3d 55. (Tex 2008).  Plaintiff's only damages were for cost incurred for replacing the roof. *Id*.  Under Texas' economic loss rule the nature of the injury helps determine what duty was breached and what damages are appropriate.  *Id*.  When the only injury is economic loss to the subject matter of the contract, the remedy is in contract.  *Id*.

Because Plaintiffs in this case assert damages in excess of economic damages, including personal injuries from residing in trailers with high levels of formaldehyde their claims are not purely economic losses to the subject matter and thus are not barred by the economic loss doctrine.

**(C).    Alabama: Plaintiffs' Claims for Negligence and Strict Liability Are Not Barred By the Economic Loss Doctrine.**

Defendants assert that under Alabama law there is no recovery in tort for negligent manufacturing of a product where the only injury is to the product itself.  Defendants assert that Plaintiffs in this case do not identify any present injury and only seek economic damages caused by the travel trailers provided by FEMA.  In support of their argument Defendants cite two Alabama Supreme Court cases.  *Lloyd Wood Coal Co. v. Clark Equipment Co.*, 543 So.2d 671 (Ala. 1989) and *Bay Lines, Inc. v. Stoughton Trailers, Inc.*, 838 So.2d 1013 (Ala. 2002).

Like their previous arguments, Defendants cite cases where the only damage was to the product itself, which was purchased for a business use with a commercial contract.  In *Lloyd Wood,* the Court relied on the rationale of *East River* and held that had there been personal injury or property damage other than to the product itself an action in tort would have arisen. 543 So.2d at 674.  In *Bay Lines* the Court also distinguished between claims for injury only to the product and those with injury to a person or other property and found that when only the product is

injured the remedy lies in contract and warranty.  838 So.2d at 1019.  This too was a commercial

contract in which the court reasoned that damage to the product is a risk that can be considered

and allocated in a contract.  *Id*. at 1020.

Plaintiffs in this case do not allege damages only to the trailers. They assert that the high

levels of formaldehyde also caused physical injuries.  Therefore, Alabama's economic loss

doctrine does not bar Plaintiffs' claims under negligence and strict liability.

**(D).    Louisiana: Plaintiffs' Claims for Negligence and Strict Liability Are Not Barred By the Economic Loss Doctrine.**

Defendants are correct that Louisiana Civil Code sets forth choice-of-law rules for

product liability cases under the Louisiana Products Liability Act (hereafter "LPLA").  *See* La.

Civ.Code. art. 3545 (2006). The comments to that article state:

"This Article applies to any injury caused by a product, rather than to the product itself. The latter type of damages is likely to be characterized as contractual in nature and thus would be governed by the Title on conventional obligations. This Article applies to any injury directly sustained by a person or his property, whether or not that person is the owner of the product and whether or no he was using the product at the time of the injury."

Moreover, the definition of damages for the purpose of the LPLA includes <u>all</u> damage

caused by a product, including "damage to the product itself and economic loss arising from a

deficiency in or loss of use of the product" to the extent there is no recovery for economic loss

under redhibition.  LSA-R.S. 9:2800.53(5).  The remedies available for redhibitory defects are

rescission of the sale or a reduction of the buyer's price. La. Civ. Code Art 2520  Plaintiffs in

this case by and large did not enter into  sales contract for the housing units.  To this extent,

plaintiffs concede that in most cases any recovery for economic loss under Louisiana law will

proceed herin under the LPLA, not redhibition.

-16-

Defendants, however, have no legal basis on which to suggest that claims under the LPLA are limited to either economic or non-economic damages.  The Act makes both categories of recovery available

**IV.   Medical Monitoring Damages under Alabama, Mississippi, Texas, and Louisiana law.**

Defendants' argument with respect to medical monitoring ignores the mandate of  Rule 12(b)(6) that all plaintiff allegations are to be taken as true, and all reasonable inferences are to be drawn in favor of plaintiffs, for purposes of deciding this motion.  Defendants' entire argument, in fact, turns on the erroneous assumption that plaintiffs have failed to allege a present and manifest injury.  Plaintiffs not only  have alleged currently manifest injury, they have specifically pled the symptoms of such injury.  Each of the states in which these claims are brought, Mississippi, Alabama, Louisiana and Texas would recognize a claim for medical monitoring where a manifest injury is present.  Moreover, at least of those states, Alabama, has expressly recognized that an injury may be manifest even when detectable only by medical means.  Additionally, Texas state courts have given some indication that they would embrace a medical monitoring claim even in the absence of current injury.

Defendants' argument ignores the unequivocal allegations of the AMC, which for purposes of the pending Rule 12 motions, this Court must accept as true.  The injuries alleged in the AMC are not limited to "possible future injuries."  Rather the AMC charges defendants with responsibility for:

> all damages which plaintiffs herein *have suffered* and *continue to suffer*, proximately caused by the defendants' acts or omissions, which damages include but are not limited to past and future physical injuries, *past* and future mental and *physical* pain and

suffering, [and] past and future physical impairments and disabilities...

(AMC, ¶ 204, emphasis added).

Defendants suggest that all medical monitoring claims must be dismissed, because the class claims "*possibly* only alleged future damages." (Manufacturing Defendants Memorandum, p. 26 *emphasis* added).  For purposes of a Rule 12 motion, all reasonable inferences are to be drawn in favor of plaintiffs. The fact that plaintiffs' claims are "possibly" only for future damage does not satisfy defendants' burden.  Even assuming defendants are correct in their assertion that a presently manifest injury – as defendants define it –  is a prerequisite to a medical monitoring claim, for defendants to prevail on their Rule 12 motion, plaintiffs must have alleged that their claims are *only* for future damage, not "possibly only" for future damages.  Plaintiffs have not limited their alleged injury to future damage; in fact, plaintiffs have affirmatively alleged present injuries.  Whether plaintiffs can prove such injuries is not to be considered by the Court at this stage of the proceedings.

Even in those states that have adopted a manifest injury requirement, what constitutes manifest injury is a factual inquiry largely unaddressed by the jurisprudence of those states.  For instance, the Alabama Supreme Court has noted that a manifest injury can include an injury which is undetectable to the plaintiff, but which may be detected by a doctor.  Louisiana, Mississippi, and Texas have yet to address the issue of whether an injury which is asymptomatic to the patient, but detectable by medical science, would constitute a manifest injury giving rise to a medical monitoring claim.  Indeed, Texas state courts have yet to embrace a requirement that a plaintiff have a manifest injury in order to bring a claim for medical monitoring.  Whether plaintiffs can establish a manifest injury, and what constitutes a manifest injury under the laws of

-18-

the four states at issue, are questions that cannot be resolved before a record on this fact-sensitive

inquiry is before the Court.  For now, it suffices that plaintiffs have alleged that they "have

suffered... physical injury."

       **(A)**     **Medical Monitoring under Alabama law.**

      As defendants apparently concede, Alabama would recognize a claim for medical

monitoring if plaintiffs allege that they have suffered a manifest injury. *Hinton v. Montsanto Co.*,

813 So.2d 827 (Ala. 2001).  In *Hinton*, the plaintiff claimed an entitlement to medical monitoring

"in the absence of a physical manifestation of injury."  The *Hinton* court held that *in the absence*

*of physical manifestation of injury*, medical monitoring was not available under Alabama law.

However, the *Hinton* court also noted the many potential benefits of a medical monitoring

remedy, and gave every indication that where a manifest physical injury was present, medical

monitoring would be an available remedy.  Under the rationale of *Hinton*, in the instant case,

where plaintiffs have alleged a manifest physical injury, Alabama would recognize plaintiffs'

entitlement to medical monitoring.

      Most importantly, Alabama courts have recently refined the definition of "manifest

present injury" to include injuries which may be undetectable to the patient, but which may be

detected by medical science.  *Griffin v. Unocal Corp.*, 2008 WL 204445 at 2, – So.2d – (Ala.

2008).  At this stage of the pleadings, plaintiffs have not set forth the full extent of the injuries

that they have suffered as a result of their exposure to formaldehyde.  However, in addition to the

irritant symptoms and respiratory ailments identified in the AMC, formaldehyde exposure has

been associated with clinically diagnosable  chromosomal changes, which – particularly in

susceptible populations like children, can be a precursor to cancer.  When called upon to prove

their manifest injuries, plaintiffs will demonstrate these silent symptoms as well as their irritant and respiratory symptoms.

In *Griffin v. Unocal*, the Alabama Supreme Court adopted as the decision of that Court Justice Harwood's dissent with respect to manifestation of injury in *Cline v. Ashland, Inc.*, 970 So.2d 755 (Ala. 2007). In *Cline*, Justice Harwood concluded that an injury which could be detected by medical science, even if undetectable by the patient, would constitute a present manifest injury. Justice Harwood reasoned:

> Thus, as used in the phrase "manifest, present injury," the word "manifest" designates a condition that has evidenced itself sufficiently that its existence is objectively evident and apparent, *even if only to the diagnostic skills of a physician*. Such injuries would constitute "manifest present injury" under Alabama law.

> *Cline*, 970 So.2d at 774 (emphasis added, citations omitted).

Per the Alabama Supreme Court's recent decision in *Griffin*, this definition of manifest injury is now the rule in Alabama.

**(B)     Medical Monitoring under Louisiana law.**

Louisiana has long recognized a claim for medical monitoring when exposure to hazardous materials results in a need for medical surveillance for early detection of disease. *Bourgeois v. A.P. Green Indus., Inc.*, 97-3188 (La.7/8/98), 716 So.3d 355. Subsequent to *Bourgeois*, the Louisiana legislature revised Civil Code article 2315 to require that to sustain a claim for medical monitoring, the surveillance "must be directly related to a manifest physical or mental injury or disease." There can be no question that, defendants unsupported assertions notwithstanding, plaintiffs have alleged a manifest physical or mental injury or disease.

Plaintiffs have alleged that they "have suffered and continue to suffer... physical injuries [and] physical and mental pain and suffering..."

Courts faced with medical monitoring claims under Louisiana subsequent to the revision of LSA-C.C. art. 2315 have allowed plaintiffs to proceed with claims for medical monitoring where, as here, plaintiffs have also alleged current physical injuries. *See e.g. Hillard v. United States of America*, 2007 WL 647292, 5 (E.D. La. 2007). In *Hillard*, an earlier- filed case now part of this MDL proceedings, claims of damage from formaldehyde containing trailers were presented, and it is true that Judge Lemmon dismissed the medical monitoring claims based only on future injuries. But the Court there declined to dismiss medical monitoring claims to the extent that the complaint alleged actual injuries, as is the case here.

It also should be noted that revised article 2315 allows for surveillance in cases of either physical *or* mental injury. LSA-C.C. 2315. In addition to alleging current physical injury, plaintiffs have alleged a currently manifest emotional injury. The Louisiana Supreme Court has recognized that under Louisiana law, one can recover from a purely emotional injury arising from exposure to hazardous substances if one can demonstrate "a particular likelihood of genuine and serious mental distress arising from special circumstances." *Bonnette v. Conoco*, 2001-2767 (La. 1/28/03), 837 So.2d 1219, 1234-1235. Plaintiffs have alleged emotional injury. Whether prolonged exposure to formaldehyde fumes during long-term habitation of off-gassing trailers in the heat of the deep-south Summer is sufficient to constitute "special circumstances" under *Bonnette* is a question of fact that cannot be disposed of through Rule 12 motion practice.

Indeed, none of the questions presented by this medical monitoring claim are properly resolved by Rule 12 Motion practice. The question of what constitutes a present manifest injury

-21-

under Louisiana law is a mixed question of law and fact that cannot be properly addressed in the Rule 12 stage of the proceedings.  Louisiana might well follow the trend recognized by Alabama and other courts that an injury which is undetectable to the layperson, but which may be detected through medical diagnosis is a "manifest injury."  Additionally, the instant case may be one in which the emotional distress claims arise under such special circumstances as to constitute a "mental injury" giving rise to medical monitoring under LSA-C.C. art 2315.  This Court should not hasten to resolve these questions in the absence of a fully developed factual record.

      **(C)**      **Medical Monitoring under Mississippi law.**

      While the Mississippi Supreme Court has declined to recognize a cause of action for medical monitoring in the absence of any current injury, Mississippi would apparently have no problem awarding necessary medical monitoring, where, as here, plaintiffs have alleged a present physical injury.  *Paz v. Brushed Engineered Materials, Inc.*, 949 So.2d 1 (Ms. 2007).  In *Paz*, the United States Fifth Circuit certified to the Mississippi Supreme Court the question of whether Mississippi law allowed medical monitoring where plaintiffs did not claim any present injury.  In answering this question, the Supreme Court of Mississippi made clear that it recognized the policy reasons in favor of medical monitoring, but declined to find a cause of action for medical monitoring in the absence of any current injury, because Mississippi tort law requires a current injury as a prerequisite to any claim for damages.

      The *Paz* court made clear that its holding barred medical monitoring claims only where the plaintiff alleged no current injury.  "Further, the determination of whether Mississippi can recognize a medical monitoring action hinges on *whether the purported cause of action includes*

*a compensable injury*." *Paz*, 949 So.2d at ¶16 (emphasis added).  Where, as here, plaintiffs have

alleged current physical injuries, Mississippi law would allow a claim for medical monitoring.

      **(D)**     **Medical Monitoring under Texas Law.**

      As defendants have correctly pointed out, Texas courts have apparently not yet answered

the question of whether a claimant may bring a cause of action for medical monitoring without

having alleged any current injury.  However, Texas courts would certainly recognize such a claim

when, as here, the plaintiff has alleged a current injury.  The federal district case cited by

defendants in support of their assertion that Texas would not recognize a claim for medical

monitoring based its conclusion on the fact that plaintiffs had not alleged a current injury.  *See*

*Norwood v. Raytheon Co.*, 414 F.Supp.2d 659 (W.D. Tex. 2006). That court reasoned that since

an injury is element of a tort claim under Texas law, plaintiffs could were not entitled to medical

monitoring *in the absence of any alleged current injury*.  Here, where plaintiffs have alleged

current injury, there is no authority to suggest that Texas courts would not allow a claim for the

cost of medical monitoring.

      It is worth noting that, while no Texas court has spoken directly on the issue of whether

Texas law recognizes medical monitoring as a cause of action in the absence of present injury, at

least two Texas state courts have allowed such claims to proceed beyond the pleadings phase.  In

*Crofton v. Amoco Chems. Co.*, No. 01-01-00526-CV, 2003 WL 21297588 (Tex. App-Houston

[1st Dist.] May 30, 2003, pet. denied), the Texas appellate court affirmed the granting of

*summary judgment* as to medical monitoring claims, after plaintiffs failed to introduce *evidence*

to support their medical monitoring claim.  Likewise, in  *Earthman v. Am. Home Prods.*, No.

97-10-03790, 1998 WL 2024150 (9th Dist. Ct., Montgomery County, Tex., October 19, 1998),

the district court certified a class action on behalf of claimants seeking medical monitoring. Admittedly, neither of these courts directly addressed the question of whether and under what circumstances Texas law would allow medical monitoring.  Nevertheless, both of these courts apparently recognized that the question was one not susceptible to dismissal on the pleadings, and allowed plaintiffs in these cases to proceed to develop a record.

**V.   Defendants' assertion that Plaintiffs' cannot state a claim under Rule 12 because they do not connect any particular product to any particular defendant**.

With respect to this issue, Plaintiffs respectfully adopt and incorporate the arguments made in other motions before the Court.

**VI.   Lack of Standing**.

With respect to this issue, Plaintiffs respectfully adopt and incorporate the arguments made in other motions before the Court.

**VII.   Conclusion**.

Based on the foregoing, the PSC respectfully requests that this Honorable Court deny Defendants' Joint Rule 12(b)(6) Motion to Dismiss.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE     PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier_____
           GERALD E. MEUNIER, #9471
           **PLAINTIFFS' CO-LIAISON COUNSEL**
           Gainsburgh, Benjamin, David, Meunier &
           Warshauer, L.L.C.
           2800 Energy Centre, 1100 Poydras Street
           New Orleans, Louisiana 70163
           Telephone:     504/522-2304

-24-

Facsimile:    504/528-9973
gmeunier@gainsben.com


s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com


**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
    ANTHONY BUZBEE, Texas # 24001820
    RAUL BENCOMO, #2932
    FRANK D'AMICO, #17519
    MATT MORELAND, #24567
    LINDA NELSON, #9938
    RONNIE PENTON, #10462


## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471