UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-4"<br><br>JUDGE ENGELHARDT<br>MAG. JUDGE ROBY |

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PSC MEMORANDUM IN OPPOSITION TO MOTION
TO DISMISS ADMINISTRATIVE MASTER COMPLAINT
ON BEHALF OF NEWLY ADDED DEFENDANTS CMH
MANUFACTURING INC., SOUTHERN ENERGY HOMES,
INC., GILES INDUSTRIES, INC., SUNRAY RV, LLC,
PALM HARBOR MFG., LP, AND PALM HARBOR
ALBEMARLE, LLC [DOC. 230 & 259]**

**MAY IT PLEASE THE COURT:**

Plaintiffs submit the following opposition to the motion of various defendant manufacturers, specifically with respect to those issues listed below which are raised by the motion directly, as opposed to other issues as to which these defendant-movants adopt and corporate by reference motions filed by others:[1]

---

[1] Specifically, defendant-movants adopt and join motions and briefs filed by First American Real Estate Solutions of Texas, LP and Wells Fargo Insurance, Inc., with respect to the following: (1) failure to state a claim; (2) failure of service of process; (3) insufficient service of process; (4) lack of personal jurisdiction; (5) improper venue; (6) inconvenient venue; (7) failure to state a sufficient lack of warning claim under LPLA; (8) other manufacturing defendants' 12(b)(6) motions; (9) other manufacturing defendants 9(b) motion and (10) rule 12(b) preservation list filed on behalf of existing defendants. Plaintiffs respond to these issues in the other motions in which they directly are raised, and likewise incorporate and adopt herein for

**LACK OF STANDING**

Defendants contend that the Administrative Master Complaint fails to assert that the named plaintiffs themselves were directly and specifically injured by all or each of the named defendants, and that, accordingly, plaintiffs lack standing.[2] Defendants' argument, however, fails to recognize the well-settled law on standing inquiries in the class action context and the import of the "juridical link" doctrine. Further, a challenge to standing at this pre-certification stage is, as a matter of law, premature. Controlling jurisprudence makes clear that, where issues of Article III "standing" are intertwined with Rule 23 class certification issues, standing should be considered <u>after</u> class certification inquiry. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999).

**A. Defendants' arguments regarding standing fail to properly recognize the import of the juridical link doctrine to this case.**

The juridical link doctrine arose out of the Ninth Circuit's decision in *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir.1973). In determining whether a plaintiff without a cause of action against a specific defendant could "'fairly and adequately' protect the interests of those who do have such causes of action" for purposes of Rule 23(a), the *La Mar* court held that if the proposed

---

purposes of the instant motion those same arguments in opposition made elsewhere.

[2]This plaintiff's response regarding defendants' standing arguments is intended to address all such motions and accompanying memoranda submitted by defendants on the issue, including: Motion 230 by CMH Manufacturing, Inc., Southern Energy Homes, Inc., Giles Industries, Inc., Sunray RV, LLC, Palm Harbor Mfg., LP, and Palm Harbor Albermarle, LLC, Memo at 6-16; Motion 210 Defendants' Joint 12(b)(6) Motion; Motion 214 Morgan Buildings & Spas, Inc. And Morgan Building Systems, Inc., Memo at 2-4; Motion 230 Horton Homes, Inc. (adopting Motion 230); Motion 240 Indiana Building Systems, LLC d/b/a "Holly Park" Memo at 1-3; Scotbilt Homes, Inc. (adopting Motion 230); Motion 245 Redman Homes, Inc. (adopting Motion 230); Patriot Homes, Inc. (adopting Motions 230 and 210); Motion 248 Liberty Homes, Inc. and Waverlee Homes, Inc. (adopting Motions 230 and 210).

class plaintiffs as a group, both those who are named and those un-named, have suffered compensable harm at the hands of defendants which are "juridically related in a manner that suggests a single resolution of the dispute would be expeditious," the claim could go forward. *La Mar*, 489 F.2d at 466. The juridical link doctrine is premised on the notion that **the class, not the class representative**, is the relevant legal entity for the purpose of Article III justiciability concerns. *See Payton v. County of Kane*, 308 F.3d 673, 679 (7th Cir.2002).

Other federal courts likewise have recognized that for purposes of addressing standing challenges, a juridical link exists where "plaintiff class as a whole has been victim of a unified governmental policy carried out by the individual defendants." *See, Matte v. Sunshine Mobile Homes, Inc.,* 270 F.Supp.2d 805 (W.D.La. 2003) (*citing, Akerman v. Oryx Communications, Inc.,* 609 F.Supp. 363, 376 (S.D.N.Y.1984) (*aff'd,* 810 F.2d 336 (2nd Cir.1987)); *Marcera v. Chinlund,* 595 F.2d 1231 (2d Cir.1979), *vacated on other grounds*, 442 U.S. 915, 99 S.Ct. 2833 (1979) (standing where class of sheriff defendants implemented a statewide administrative practice of denying contact visitation rights to prison inmates).[3]

In the present case, defendants' arguments on standing are directly triggered by the use of the class action vehicle for plaintiffs' claims. At the core of this class action against defendants is the allegation that various manufacturers, in the wake of hurricanes Katrina and Rita, all contracted with

---

[3] *See also, e.g., Haas v. Pittsburgh Nat. Bank,* 60 F.R.D. 604 (W.D. Pa. 1973) (in consumer class action under Truth in Lending Act (TILA) and application of state laws against three defendant banks, plaintiff was accorded standing against all defendants though plaintiff had dealings only with two of them); *Samuel v. University of Pittsburgh,* 56 F.R.D. 435 (W.D. Pa. 1972) (Plaintiff was permitted standing to sue three state universities though plaintiff was affiliated with only one); *Northern Acceptance Trust 1065 v. AMFAC, Inc.,* 51 F.R.D. 487 (D. Haw. 1971) (minority shareholder of one of three merging companies allowed standing to represent minority shareholders in all three companies because of a common course of conduct by defendants).

the federal government to manufacture and provide FEMA temporary homes. The manufacturers all entered into these contracts to build and provide homes through FEMA in furtherance of the federal government's policy to provide direct assistance to the hurricane victims under to the Stafford Act. Plaintiff class members allegedly suffered injury as a result of dangerous and unlawful levels of formaldehyde found in these homes, all of which were manufactured and provided by the defendant manufacturers in furtherance of arrangements with FEMA. Plaintiffs submit that the manufacturers are thus juridically linked, allowing the class to proceed with claims against all named defendant manufacturers at this time.

Defendants' reliance on *Matte v. Sunshine Mobile Homes, Inc.,* 274 F.3d 212 (5th Cir.2001) in support of their standing challenges is misplaced. Indeed, the district court in *Matte,* in considering Rule 12(b)(1) and 12(b)(6) motions to dismiss for lack of standing, recognized that federal courts have applied a juridical-link exception to determine standing in the class action context where the plaintiffs were victims of a unified government policy. *Matte,* 270 F.Supp.2d at 827-828. The *Matte* court declined to apply the doctrine, but on facts clearly distinguishable from the case at bar.

In *Matte*, plaintiffs argued that the juridical link among the mobile-home manufacturer defendants was "the Manufactured Home Construction and Safety Standards Act," which ensures the safety and quality of mobile homes. In this case, however, there is more than a statute on the books linking the manufacturers as defendants. Here, the link among these defendants goes well beyond applicable federal statutes governing the quality of construction of the homes, to the conduct and activity of these manufacturer defendants in contracting with the federal government to provide trailers to displaced hurricane victims. In *Matte*, no such collective and common nexus to contacts

with another defendant (the Federal Government) existed.

The latter factual distinction is especially important, as illustrated by the case of *Weiss v. Weiner's Circle of Chicago, Inc.*, 1995 WL 755328 (NDIL 1995). There, plaintiffs brought a class action initially against one group of defendants (Weiner's Circle of Chicago, Inc., Bailey & Associates, Inc., and William Bailey) based upon plaintiffs' contracts with these defendants for the sale of campground memberships, which plaintiffs allege were fraudulent contracts. Subsequently, plaintiffs amended their class action complaint to add other defendants (lenders) which allegedly had been assigned the contracts in question. The newly-added "lender defendants" sought dismissal for lack of standing, arguing that none of the named plaintiffs or class members had actually suffered harm compensable legally by the lenders. The district court denied the motion to dismiss for lack of standing, citing the "juridical link" doctrine that such standing challenges are resolved, or at least deferred, when

> all defendants are <u>juridically related</u> in a manner that suggests a single resolution of the dispute would be expeditious.

1995 WL 755328 (Slip Opinion at p. 3) [citing *LaMar*]. In particular, the district court reasoned that:

> [e]ach plaintiff and defendant have connection to each other through Bailey & Associates. Because the defendants are "juridically related" in this manner...it would be expeditious to allow the Lender defendants to be joined and obtain a single resolution.

*Id.*

In the same way, all of the manufacturing defendants in this action are juridically linked or related to FEMA, because it was their contractual relationship with and arrangements with FEMA which give rise to the claims of each and every plaintiff who is either named or proceeds as an

unnamed class member at this juncture.

Finally, the PSC should note that it does intend to "match" each named plaintiff in both the Master Complaint and in the *Pujol* Complaint with a named manufacturing defendant, to the fullest extent possible. This information is being developed presently, and the PSC expects to file a proposed amendment to both the Master Complaint and the *Pujol* Complaint in the near future, specifying wherever possible the identity of the manufacturer for the units occupied by each of the named plaintiffs. Plaintiffs recognize that such "matching" is critical in this case for any number of reasons, not only the "standing" matter now raised (which, again, the PSC feels is overcome by the "juridical link" doctrine as it applies to this class action), but for reasons including: an accurate claims database through the execution of Plaintiff Fact Sheets, differentiation of the scope and involvement of specific manufacturers in relationship to the total inventory of units which were occupied by represented plaintiffs; the selection of bellwether trial plaintiffs; and the formulation of an intelligent evaluation of the case for potential settlement and other purposes. This intended "match" as to named plaintiffs, makes it even more clear that the above-cited Supreme Court holding in *Ortiz* fully applies. As specifically recognized in the *Matte* case cited by defendants, the Supreme Court in *Ortiz* held that Rule 23 certification stands as a logical antecedent to Article III standing concerns, except in those cases where the standing issues exist regardless of class certification. Here, once the named plaintiffs are matched to specific manufacturers, the only possible context in which a standing challenge could be made is in the class certification context, so that any present challenge, prior to class certification, is premature under the governing jurisprudence. It is in the class certification analysis that the issues of typicality, commonality, etc. will be fully explored, and it is in that context wherein defendants will be allowed to argue that this case should not proceed on

behalf of any class member as to whom the identity of the manufacturer aligned with that claimant is unknown.

Defendants assert the Administrative Master Complaint lacks sufficient specificity with regard to each individually named Plaintiff's claims against specific defendants. As the court in *Matte* stated, "At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice to establish standing, assuming they meet the minimum requirements." 270 F.Supp.2d 805, 816 (W.D.La. 2003) (*citing Public Citizen, Inc. v. Bomer*, 274 F.3d 212 (5th Cir.2001); *Defenders of Wildl*ife, 504 U.S. at 561, 112 S.Ct. 2130)).[4] Here the FEMA litigation Plaintiffs' Complaint specifically alleges that "all of the Plaintiffs have spent significant time in the FEMA-provided housing units manufactured by one or more of the named or unnamed Manufacturing Defendants" Administrative Master Complaint, ¶ 32. Additionally, the Administrative Master Complaint clearly alleges injury as a result of Defendants' actions; for example, it states regarding Mississippi claims, "As a direct and proximate result of the Manufacturing Defendants' acts and omissions, plaintiffs have suffered and will continue to suffer damages… for past and future physical pain and mental suffering…medical expenses…physical impairments and disability..." and "severe mental pain, anguish and suffering". Administrative Master Complaint, ¶¶ 153 and 154; *see also, e.g.* ¶¶ 155, 175, 177, 176; "Compensatory Damages:

---

[4] It is clear from *Matte* the threshold for making out standing in the complaint is fairly low as it is subject to a motion to dismiss standard and does not require the level of specificity Defendants assert. Indeed it was the complete absence of facts alleged, **either specific or general**, that was fatal to the *Matte* plaintiffs. In *Matte*, "[p]laintiffs do not allege any injury-general or specific. In fact, so bare is the complaint that it leaves one wondering if any plaintiff has so much as walked past a mobile home, much less been injured by one. As noted, plaintiffs admit only to a 'possibility' that some of them have either lived in, occupied or purchased 'at some time or another' a mobile home manufactured by defendants." *Id*. at 816.

All States" Section at p. 74. The Complaint also specifically alleges facts regarding the federal government's obligations under the Stafford Act and its use of Defendant Manufacturers' housing units to fulfill those obligations. Administrative Master Complaint, ¶¶ 46-60. It is clear that the Complaint meets the three elements of the constitutional minimum of standing: that Plaintiffs have suffered an 'injury in fact', that there is a causal connection between the injury and the conduct complained of, and that it is likely that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 2136, 2137, 119 L.Ed.2d 351 (1992) (footnote, citations, and internal quotation marks omitted). Furthermore, the allegations related to the Stafford Act and Defendants' part in fulfilling a unified government purpose make out a basis for use of the juridical link doctrine.

The Seventh Circuit case of *Payton v. County of Kane* also provides clear guidance for the issue at hand. *See* 308 F.3d 673 (7th Cir. 2002), *reh'g en banc denied by Payton v. County of Kane*, 55 Fed.Appx. 386 (7th Cir. 2003), *cert. denied by Carroll County, Ill. v. Payton,* 540 U.S. 812 (U.S. Oct 06, 2003), *and on remand to Payton v. County of Kane,* 301 F.Supp.2d 835 (N.D.Ill. 2004) *aff'd by Payton v. County of Carroll*, 473 F.3d 845 (7th Cir. 2007). In that case six named plaintiffs-arrestees brought a class action against 19 different Illinois county jails that charged a bond fee, above and beyond the set bail amount, as a condition of their release. The court held that the plaintiffs-arrestees sufficiently satisfied Article III's standing requirement by stating in their complaint that their rights under Eighth and Fourteenth Amendments to United States Constitution were violated by certain county jails. *Id.* at 676. The court held so even though the representatives

could not make out **direct** claims against all of the named defendants[5] and essentially treated the "standing" issue as a Rule 23 typicality inquiry. The *Payton* court opined:

> We come therefore to the central issue in this case, which is whether these named plaintiffs may represent a class that includes people from the other 17 named counties. We have begun our analysis with the question of class certification, mindful of the Supreme Court's directive to consider issues of class certification prior to issues of standing. See *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999): "the class certification issues are ... logically antecedent to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing. Thus the issue about Rule 23 certification should be treated first." Id. at 831, 119 S.Ct. 2295 (citations omitted)...

*Id*. at 679 (many citations omitted).[6] Under *Payton*, Defendants standing challenges in the present case are more properly reserved for analysis in the class certification context.

Furthermore, in *Vulcan Golf, LLC v. Google Inc.,* the federal district court held that the standing issues raised by defendants-- **which mirror the challenges raised by Defendants in our present case**-- were more properly analyzed under a juridical link inquiry at the class certification stage. In that case, internet domain name owners brought a class action against an internet search engine operator, domain name registrants, and companies that aggregated numerous domain names from individual domain registrants claiming violations of Lanham Act, Anticybersquatting Consumer Protection Act (ACPA), Racketeer Influenced and Corrupt Organizations (RICO) Act, and state law. --- F.Supp.2d ----, 2008 WL 818346 at 4 (N.D.Ill. 2008). Some defendants argued that because named plaintiffs themselves claimed no direct

---

[5] Noting that the plaintiffs invoked the juridical link doctrine, the court stated "In our case, given that the bail bond fee is imposed pursuant to a state statute … it is reasonable for the putative plaintiff class to try to hold all counties accountable within one suit."

[6] The *Payton* court did not decide the typicality question due to an incomplete record from the lower court, though in a subsequent affirmation of a remand decision the court held that the typicality requirement was not satisfied due to various differences in the way the counties may have implemented the statute. See *Payton v. County of Carroll*, 473 F.3d 845 (7th Cir. 2007).

injury from them, they had no standing.  The court refused to dismiss as to those defendants, stating:

> In order to establish standing, the plaintiffs attempt to rely on the juridical link doctrine…The juridical link doctrine, however, is more properly referred to as part of the class certification inquiry…**Class certification is not yet before the court, and any Article III standing issues are inherently intertwined with the class certification determination due to the plaintiffs' invocation of the juridical link doctrine**. The court will thus postpone its analysis of the Article III standing issue as raised by Sedo and Ireit until the motion for class certification is before it. This is consistent with the Seventh Circuit's recognition that in certain circumstances, it is appropriate for the court "to consider issues of class certification prior to issues of standing." Payton v. County of Kane, 308 F.3d 673 (7th Cir.2002) ("the class certification issues are ... logically antecedent to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing. Thus the issue about Rule 23 certification should be treated first") (*citing Ortiz v. Fibreboard Corp*., 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999)).

*Id.* at 7, 8 (enphasis added).

Finally, the recent Fifth Circuit case of *Audler v. CBC Innovis Inc.,* though relied upon by defendants, specifically recognized that *Ortiz* calls for issues of standing to be reviewed only after class certification has taken place in appropriate circumstances.  The Court confirmed that this Circuit has made an exception to this only where "the issue of standing would exist **regardless of whether the suit were filed by plaintiffs jointly or as a class action**." 519 F.3d 239, 248 (5th Cir. 2008) (emphasis added) (*citing Matte v. Sunshine Mobile Homes, Inc.,* 274 F.3d 212 (5th Cir.2001); *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 318 (5th Cir.2002)).  Thus, although the *Audler* plaintiffs raised the juridical link doctrine as a response to the defendants standing challenge, the Court did not proceed to apply the juridical link doctrine because the named plaintiff **himself** did not have standing for his **direct** claims; and, furthermore; there was not even the "prospect of class certification in that case." *Id.*  In the case

at bar, the named plaintiffs do have standing to make direct claims against the manufacturers of the units provided to them.  By pleading amendment, each named plaintiff is expected to be matched to a manufacturing defendant.  This makes the specific holding in *Audler* inapplicable, even as the Fifth Circuit's reasoning in that case fully supports plaintiffs' position herein.

## **STATUS OF ADMINISTRATIVE MASTER COMPLAINT**

Defendants argue that the Administrative Master Complaint does not constitute a traditional complaint under the Federal Rules of Civil Procedure because it did not truly "commence" an action, and that the Administrative Master Complaint also does not constitute proper procedure under the rules for multi-district litigation.  Plaintiffs concede and fully concur in the first point, but adamantly oppose the latter.

The Court will recall that, after the filing of the Master Complaint, various defendants raised concerns about the lack of underlying, supportive actions filed in this MDL with respect to claims and defendants asserted a name for the first time in the Master Complaint.  Plaintiffs understood, and in fact agreed with, these concerns, and accordingly filed the case of *Pujol v. The United States of America,* No. 08-3217 (EDLA), intended to serve as an underlying and supportive action of for all of the new claims and new defendants appearing in the Master Complaint.  In this way, once the administrative purpose of the Master Complaint is served, and once these MDL pretrial proceedings conclude, the *Pujol* action will stand for whatever further pretrial or trial purposes remain with respect to these recently -added claims and defendants.

Accordingly, plaintiffs believe that this particular challenge in the instant motion is effectively mooted by the filing of the *Pujol* action.

With respect to the argument that the Master Complaint herein is an inappropriate procedural device under MDL practices and procedures because it was filed directly in these proceedings, plaintiffs frankly do not grasp the logic of this position. Admittedly, the Master Complaint did not "commence" an action in the traditional sense, and therefore is not to be treated as a traditional complaint. The fact that it was filed directly in the MDL forum, of course, is a necessity growing out of the administrative purpose of the Master Complaint itself. In the *Propulsid* MDL, Judge Fallon explained the judicial interpretation of FRCP 42(a) "to authorize the filing of a unified or master complaint in cases consolidated both for pretrial discovery and for trial." *In Re: Propulsid Products Liability Litigation*, 208 FRD 133, 141 (EDLA 2002) [citations omitted]. He further explained that such consolidation is "intended only as a procedural device used to promote judicial efficiency and economy." *See id.*

Here, especially now that concerns about the absence of an underlying and supportive action have been cured by the filing of *Pujol*, the Master Complaint filed by plaintiffs serves precisely the administrative purpose meant to be served by such pleadings in multi-district litigation. Specifically, the Master Complaint sets forth all of the causes of actions and claims which are the subject of these consolidated proceedings, so that defendants may now proceed with dispositive motion practice aimed at or targeting these claims and issues. It is understood that the Court's rulings on these dispositive issues will have force and effect with respect to the underlying actions, to the extent those actions present the identical claims and issues addressed in the current motion practice. To challenge the Master Complaint as improper simply because it was filed directly in this forum, is to fundamentally misconstrue the purpose and usefulness of the pleading in cases such as the one at hand.

**MISJOINDER OF CLAIMS**

Defendant-movants argue that there has been an improper joinder of claims herein under FRCP 20, because the claims of a given plaintiff against a given defendant had been joined with the claims of "unrelated" plaintiffs against other "unrelated" defendants.

This argument first misconstrues the administrative nature and purpose of a Master Complaint in this MDL proceeding. The Complaint is not to be treated as a traditional complaint, but as an administrative device which does join together all of the claims presented in the MDL, for unified handling and the disposition of "common issue" motion practice. At the outset, therefore, it is respectfully submitted that this argument has no basis in response to an MDL Master Complaint.

Moreover, even to the extent a traditional Rule 20(a) analysis applied, whereby plaintiffs herein would be required to join only those claims which arise out of "the same transaction, occurrence, or series of transactions or occurrences," it is respectfully submitted that this standard is satisfied. As previously argued in connection with the standing challenge brought by defendants, there is an obvious juridical link and relationship between and among all plaintiffs and all defendants in this matter. That link is FEMA. Every defendant manufacturer made arrangements with FEMA, either directly or through an intermediary, to provide emergency housing units to the victims of hurricanes Katrina and Rita. Plaintiffs are the citizens who suffered as a result of this transaction or series of transactions and occurrences.

To the extent defendants truly are challenging satisfaction of the "commonality" requirement of Rule 23, their argument is premature. At this juncture, it is not only appropriate

but necessary to join all plaintiff class claims against all defendants in the same Master Complaint, so that common issues can be addressed and disposed of through appropriate motion practice and other pretrial procedures.

Ultimately, the "solution" to a Rule 20 misjoinder is set forth in Rule 21, which states that misjoinder "not a ground for dismissing an action," but rather a basis upon which the Court may make certain case management decisions, such as severance, etc. Since this MDL is statutorily limited to "pretrial" matters only, it stands to reason that, once the Master Complaint has served its purpose, and assuming no resolution of the litigation after all efforts have been exhausted through the MDL proceeding, it would be appropriate for the Court to issue both remand and/or severance orders to properly align plaintiffs' claims, defendants and defenses for further proceedings, including trial proceedings. In other words, in response to the Master Complaint at this phase of the proceedings, it would make no sense to pursue the solution to misjoinder set forth in Rule 21.

### Other Issues Presented and Responded to by Incorporation

Defendant-movants, beyond the above-specified issues, simply reiterate other issues which have been raised by other defendant-movants in other motions, and incorporate and adopt all such arguments. Likewise, the PSC now respectfully incorporates and adopts all of its opposition authority and argument set forth in memoranda in response to other motions which have raised these issues.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

        BY:    s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
RONNIE PENTON, #10462

## **CERTIFICATE OF SERVICE**

    I hereby certify that on June 18, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document

and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier<br>
GERALD E. MEUNIER, #9471