1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF LOUISIANA
2    ********************************************************************

3
     IN RE:  FEMA TRAILER
4    FORMALDEHYDE PRODUCTS                Docket No. MDL-1873(N)
     LIABILITY LITIGATION                 New Orleans, Louisiana
5                                         Friday, April 18, 2008

6    ********************************************************************

7
                  TRANSCRIPT OF MOTION PROCEEDINGS
8        HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
                  UNITED STATES DISTRICT JUDGE
9

10
     APPEARANCES:

11
     FOR THE PLAINTIFF
12   STEERING COMMITTEE:              GAINSBURGH BENJAMIN DAVID
                                      MEUNIER AND WARSHAUER
13                                    BY:  GERALD E. MEUNIER, ESQ.
                                           JUSTIN I. WOODS, ESQ.
14                                    2800 Energy Centre
                                      1100 Poydras Street, Suite 2800
15                                    New Orleans, LA 70163

16

17   FOR THE DEFENDANTS'
     LIAISON COUNSEL:                 DUPLASS ZWAIN BOURGEOIS MORTON
18                                    PFISTER & WEINSTOCK
                                      BY:  ANDREW D. WEINSTOCK, ESQ.
19                                         JOE GLASS, ESQ.
                                      Three Lakeway Center
20                                    3838 N. Causeway Boulevard, Suite 2900
                                      Metairie, LA 70002

21

22   FOR THE GOVERNMENT:              UNITED STATES DEPARTMENT OF JUSTICE
                                      BY:  HENRY T. MILLER, ESQ.
23                                         MICHELLE G. BOYLE, ESQ.
                                           Civil Division - Torts Branch
24                                    P.O. Box 340, Ben Franklin Station
                                      Washington, D.C. 20004

25

```
 1
      FOR FEMA:                    FEMA DHS
 2                                 BY:  JANICE WILLIAMS-JONES, ESQ.
                                   Office of Chief Counsel
 3                                 500 C Street, SW
                                   Washington, D.C. 20472
 4

 5

 6
      Official Court Reporter:     Karen A. Ibos, CCR, RPR, CRR
 7                                 500 Poydras Street, Room HB-406
                                   New Orleans, Louisiana 70130
 8                                 (504) 589-7776

 9

10
           Proceedings recorded by mechanical stenography, transcript
11    produced by computer.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>P R O C E E D I N G S</u>

(FRIDAY, APRIL 18, 2008)

(MOTION PROCEEDINGS)


1    THE COURT:  The court has before it a motion by the

2    Plaintiff Steering Committee, which is record document No. 119.  It

3    is a motion to compel the defendant United States for failure to

4    respond to a subpoena for certain information.  The subpoena is

5    attached as Exhibit 1, also with a letter from Mr. Woods

6    transmitting the subpoena.  The court has reviewed the memoranda

7    submitted by the parties and has also reviewed the relevant

8    jurisprudence.

9         So would anybody like to make any opening remarks on this?

10   You need not repeat what's all in the memo, if we can just pick up

11   from there.

12        MR. MEUNIER:  Gerry Meunier for the plaintiffs, your

13   Honor.  And there are just a few points I want to emphasize, and

14   then if you don't mind I would like to respond more specifically to

15   some arguments raised in the opposition brief.

16        I don't think it can be overemphasized that the MDL does

17   present a unique opportunity for global resolution.  And it is a

18   truly unique opportunity and it depends upon, in our view,

19   identifying and evaluating claims on a comprehensive basis.  And as

20   we've indicated in chambers in discussions and in our motion, if you

21   approach that objective through the process which puts Rule 23

1   certification at the forefront of the MDL proceedings that carries

2   with it a number of very distinct disadvantages.

3          Conversely, if you have claims identified through a fact

4   sheet/tolling agreement process pending the certification ruling, I

5   think that approach has much to offer the court and the litigants;

6   and frankly, I think it's supported by history, including the most

7   recent history of the <u>Vioxx</u> MDL in which that very approach was

8   taken and where the outcome I believe was successful for the

9   litigants and for the court.

10         We believe that a proper pre-certification notice to a

11  list of known putative class members, which we believe is authorized

12  under the discretionary notice provision of Rule 23(d), are

13  essential to that process.  And, Judge, the key legal decisions that

14  you have to make in connection with this motion we think are clearly

15  vested in your discretion, that as to Rule 23(d) notice the question

16  is not if you have authority to direct the issuance of a notice to

17  putative class members prior to certification, but whether you feel

18  it's justified in this case given the circumstances and given the

19  case management approach we hope to take.

20         And as to the Privacy Act which is the chief defense

21  against the motion, again the question is not if a court by order

22  can require the disclosure of that which is otherwise protected

23  under the act, but whether a court in its discretion feels justified

24  in doing so, again in this case as a matter of case management.

25         So in other words, the exercise of the court order

1  exemption in the Privacy Act clearly gives you discretionary

2  authority.

3          Let me turn, if I may, to some of the arguments, key

4  arguments made by the government.  I believe that the government

5  makes what amounts to an artificial distinction between the

6  management value and the merits value of this claims information.

7  It's argued that the court order exemption of the Privacy Act

8  applies only if the information at issue is relevant to a claim or a

9  defense, and that here, according to the government, it isn't

10 relevant to a claim or defense, it's merely to serve the convenience

11 of the parties.

12          Well, we think that information as to the identity and the

13 location of putative class members and potential claimants is not

14 just a matter of convenience, it truly goes to the heart of what

15 claims and defenses are going to be presented in this MDL because

16 this information will define the scope and the nature of the claims

17 and the defenses:  What claims are going to be asserted, what

18 damages are going to be alleged, what defenses are going to be made,

19 what manufacturers are going to be ultimately called on to defend

20 claims made in this MDL as a mass tort proceeding.  So the relevance

21 of the information makes possible, is that it makes possible a

22 transition from what is pled in the class action to individualized

23 concrete claims and defenses asserted in the case; and I can't

24 imagine anything more relevant to the management and disposition of

25 claims and defenses than knowing what the claims are and I think

 1    that information is critical.

 2         I also think that the government misconstrues the

 3    importance of the distinction between mandatory and discretionary

 4    notice under Rule 23.  There is reference in their brief to the

 5    circumstances in which this court would send out a notice after

 6    certification.  That's laid out in Rule 23(c), that is not the

 7    issue.  There is a clear, separate provision in Rule 23, 23(d) for

 8    discretionary notice, which can be given at any stage, including

 9    prior to certification, to address any step in litigation.  And, in

10    fact, in 23(e) we see it even linked to Rule 16, which has to do

11    with case management issues, steps that need to be taken in a case.

12    And that's exactly what this notice will be about.

13         We think the twofold inquiry under Rule 23 is is it

14    protective of class members, will it facilitate a fair conduct of

15    the action, and we believe that this information meets both

16    criteria.

17         And also there is some reference, I believe it's not

18    intended the way it's written, some reference in their brief at page

19    15 that the authority you have to do this does not exist where no

20    class has been certified, and therefore, no class is pending.  Well,

21    as the court knows, the pendency of a class action triggers the

22    provisions of Rule 23, the pendency and not simply the certification

23    of a pending class.

24         I think it's also an indication of the fundamental

25    disagreement we have with the government when I read in their brief

1    at page 7 that the PSC does not currently represent these FEMA

2    trailer residents, past and present.  The proposed class definition

3    clearly identifies these individuals as putative class members, and

4    as court appointed plaintiffs counsel we do have an obligation and a

5    responsibility to them.  And I didn't cite it in my brief, but if

6    you look at *Newberg on Class Actions*, Section 1348, there is an

7    elaborate discussion there about not just the right but the

8    obligation of counsel to protect the rights and interests of absent

9    putative class members and the corresponding obligation to

10   communicate important matters.

11           And look, one way we could go in this is we could in total

12   deference to the Privacy Act say forget about giving this list to a

13   notice administrator so that we don't see it and then having the

14   notice issued and having people respond, and just give us the list

15   as plaintiffs' counsel who have an obligation to putative class

16   members and we will confect our own communication using the list

17   directly.  We've tried not to go that way because we do see a

18   Privacy Act issue and we are trying to erect this barrier of the

19   notice administrator.

20           THE COURT:  We had talked about a third-party

21   administrator who could with this information send a notice to

22   people on the list, is that still the intent?

23           MR. MEUNIER:  Yes, that's the intent, Judge.

24           THE COURT:  And the notice, so that we're clear, the

25   notice would be what you have attached to your proposal regarding

1    proceeding on a mass joint basis?

2         MR. MEUNIER:  Exactly, Judge.  And I would have to say

3    this on the language of it, that is the language of a trained

4    attorney, namely myself.  And there are experts on class notice who

5    are very skilled at using language and words that lay people, some

6    of whom may not have a lot of formal education, can truly

7    understand.

8         And I would only ask that if we do this I be given a

9    chance to have a notice expert, who I assume would also be the same

10   as the notice administrator, work with the court and with us to, you

11   know, to make sure that what we say in that notice is clear to

12   people.  But the content of it, the intent of it is there.

13        THE COURT:  One of the other objections that the

14   government made was that the subpoena was too broad; if that was

15   your intent, then the subpoena was too broad because it related to

16   persons who had applied for housing as opposed to those who actually

17   received it and lived in it.  Can we be clear on that?

18        MR. MEUNIER:  We can, Judge, we can fix that.  I do agree

19   that the specific scope of the individual list that we're looking

20   for would certainly be intended to be limited to those who actually

21   received and were placed in the FEMA units.  Obviously a mere

22   request does not bring them within the scope of the defined class.

23        Finally, I just want to address -- well, two more things.

24   One is I do think if we're talking about equity factors and

25   balancing, it's important to emphasize that FEMA has had ample

1   opportunity to communicate with these same people.  We've cited in

2   our brief any number of instances in which that's been done both in

3   connection with the CDC testing and otherwise.

4          And you don't have to look beyond an attachment to

5   Mr. Miller's brief to see another example of what I'm talking about.

6   He attaches a press release that FEMA sent out in which they say

7   FEMA distributed 70,000 formaldehyde and housing fact sheets to the

8   occupants of every FEMA unit.  The press release then goes on to

9   talk about the fact that formaldehyde is found in chairs and

10  carpentry and drapes and then emphasizes that to date FEMA's

11  headquarter safety office has not received any employee health

12  complaints related to working in those units.

13         I am not ascribing bad motive, I am simply saying this.

14  This is an adverse party.  The whole issue here is what is safe and

15  unsafe about levels of formaldehyde, and they have had ample chance

16  already and they continue to have that chance to communicate with

17  these people.  So for there to be resistance to the idea of what I

18  see as a neutral notice that alerts these people to the right they

19  have to make a claim does not seem to be properly balanced.

20         Finally, Judge, I just want to mention the Supreme Court

21  case of Department of Defense v. FLRA, which really appears to be

22  the chief case on which the government relies.  You know, that was a

23  case where two unions made FOIA requests of various federal agencies

24  that they furnish to union representatives the home addresses of

25  agency employees who were not union members.  The information about

1   where -- the names of these people and where they work was known.

2   The union said, look, we've got a collective bargaining

3   responsibility under the labor laws.  We have to do collective

4   bargaining for the units that these people work in, so we have some

5   statutory obligation here and we ought to know how to reach them.

6           And Justice Thomas when he said that the FOIA exemption of

7   the Privacy Act, which again is not what we're dealing with here, we

8   are dealing with a different exemption, the court order exemption,

9   but the FOIA exemption of the Privacy Act, which was the focus of

10  that case, involved this balance between the need to know and the

11  privacy issues.  Justice Thomas said these people have not joined a

12  union and now they're going to be getting mail from a union rep

13  saying, you know, please join the union.  And they may have good

14  reason not to be bothered by that, and so I am going to say they

15  have the privacy interest.

16          I think that's legally and factually distinguishable.

17  First of all, we are not dealing with the FOIA exemption, we're

18  dealing with the court order exemption.  Secondly, those union reps

19  are trying to make contact with people who had already decided they

20  were not interested in being union members.  That was not a class

21  action.  Rule 23 was not part of the analysis.  There was not a

22  relationship between counsel and putative class members.  And there

23  was not the discretionary notice power for pre-cert notice of Rule

24  23(d).  So for any number of reasons, we don't think that case is

25  legally and factually similar to carry the day for the government.

1           If there were a Supreme Court case to look at, and I

2    regret that we did not identify it in our brief, it would be Gulf

3    Oil v. Bernard, which was a Supreme Court case that directly dealt

4    with Rule 23(d) and the issue of notice to class members.  The court

5    already knows this, perhaps, it's an employment discrimination case,

6    the defendant employer, Gulf Oil, entered into a settlement with the

7    EEOC to pay employees certain backpay benefits.  Gulf Oil the

8    defendant started writing to people about the settlement, plaintiffs

9    filed a class action for the same people.  Plaintiff's counsel said

10   we want to communicate, we want to tell people what they should know

11   about this while the defendant's out there getting it himself.  The

12   defendant filed a motion to stop the plaintiffs from communicating,

13   and the court refused to issue a ban on the communication.

14           THE COURT:  Was that a circumstance where the information

15   was known to plaintiffs already that they were utilizing to

16   communicate?  You said the defendants came to court to stop the

17   plaintiff.  Obviously they were already doing it, so they must have

18   had the information to disseminate already.

19           MR. MEUNIER:  Well, I think it was more of an issue where

20   the plaintiffs wished to offset information.

21           THE COURT:  Right.  But, I mean, that's more of a free

22   speech perhaps issue --

23           MR. MEUNIER:  It was.

24           THE COURT:  -- as opposed to give me the information so

25   that I can now use it to exercise --

1     MR. MEUNIER:  It was, it was.  Although, I guess the

2   relevance of the case is this:  No. 1, in that case you have

3   recognition of the district court's discretionary authority under

4   Rule 23 in the area of class communication.

5     THE COURT:  Right.

6     MR. MEUNIER:  And in that case I think you have the

7   Supreme Court taking seriously the right of plaintiffs' counsel in

8   class actions, even prior to certification, to communicate with

9   class members.  The court did not shut that effort down and said,

10  you know, you're going to have to have a hearing and show me there's

11  abuse before I do a First Amendment ban on communication.

12     I'm just saying it's a case much more so than the defense

13  case where the Supreme Court tells us, I think what is pertinent

14  here which is when you've got putative class members and you have a

15  need to communicate with them, it's a serious matter, the district

16  judge has the authority in that regard and we are not just going to

17  do things that inhibit the ability of counsel to make contact when

18  it's necessary.

19     So for all of those reasons, your Honor, we ask the court

20  to grant this motion, following which we will submit a notice

21  protocol.  We've proposed already the mass joinder case management

22  protocol we suggest, we've submitted the type of notice we'd send,

23  and it will just get us started in the direction.

24     And I want to make it clear, the way that I, we conceive

25  this, the letter would merely give people a deadline by which to

1   declare that they are interested in proceeding with a claim.  And if

2   they respond to the notice administrator, yes, I am interested in

3   making a claim, at that point we go forward with the fact sheet.  In

4   other words, we are not burdening people right now with a fact

5   sheet, we are not sending it in the mail to them.  We simply want to

6   know who is really out there who is going to be participating in

7   making a claim and who isn't.

8          And then as you see in our layout of a mass joinder, we

9   don't halt, cease and desist the road to a class certification

10  ruling, I think that proceeds as it did in Vioxx.  But as we

11  approach that time, we are gathering the comprehensive claims info

12  where we can make appropriate bellwether trial selections, we can

13  get our arms around the fact sheets, we can know what we're dealing

14  with, we acknowledge, and I know this has been important to the

15  defendant manufacturers, at some point you will in our proceedings

16  decide on Rule 23, that's important to the defendants.  If your

17  decision is not to certify, the time starts running and at some

18  point people are prescribed on whether they could do it.

19          THE COURT:  Let me ask you this.  We give them a date in

20  this notice, you should respond by such and such a date.  What of

21  the relevant prescription statute of limitation time periods, both

22  in Louisiana and the other states involved, a claimant who doesn't

23  respond to that notice and then decides three months later, you

24  know, I'm still within that time frame, I would like to assert such

25  a claim, I'm going to go hire my own lawyer, file that lawsuit,

```
 1   those people would still wind up coming here, wouldn't they, as part
 2   of the MDL?
 3            MR. MEUNIER:  They would.
 4            THE COURT:  So how does this get us any further down the
 5   road if we still are operating, as we must be under the state
 6   provided tort statute of limitations?  Does it just kind of get us a
 7   little bit more information?
 8            MR. MEUNIER:  It accelerates the process.  Your Honor, at
 9   the end -- let me just use Vioxx again.  At the end of the day in
10   Vioxx we had not necessarily captured each and every claimant in the
11   country who wanted to sue Merck because of Vioxx.  I mean, that only
12   happens -- if that's your aim, that only happens when all of the
13   statutes run to the two years under the FTCA, when the American Pipe
14   interruption prescription is done and the four states statutes toll.
15   And when that magic day or series of dates arrive, you then know no
16   more claims.

17            I am not suggesting to you that this process is going to
18   take those dates and deliver them to the doorstep at an earlier
19   time.  What I am suggesting is that if we do this, we will be in a
20   position with the defendants to get our arms around who likely is
21   going to be appearing as litigants, which will in turn help us
22   evaluate the scope of this thing, decide on appropriate bellwethers
23   if we want a representative sample.  It'll just enable us sooner
24   rather than later to have serious discussions about how to bring
25   this to a close.
```

1          And I end where I began, if the MDL -- there are some MDL

2     judges who don't see that as their role and that's a traditional

3     view.  I am just here to do pretrial and then it'll be remanded and

4     it falls out.  But if the more current, I would say enlightened view

5     is, let's try to resolve it, but let's not make it a black hole

6     where we're here five years from now waiting to see if FTCA statutes

7     have run, if the Alabama statute has run since you decided

8     certification, and we'll wait around and know and we want to get our

9     arms around it sooner rather than later.  This is a tool that works.

10          THE COURT:  All right.  My primary concern at this

11     point -- and I'll tell you this so that you all can tailor your

12     remarks accordingly, my primary concern at this point is to try to

13     get conceptually down the road on mass joinder versus class.  And

14     that's one of those things I was referring to earlier this morning

15     that we have sat at this table and discussed, gee, wouldn't it be

16     great if we did it this way, wouldn't it be great if we did it that

17     way, and everybody kind of nods their heads like that would be good,

18     that would be a good thing.  And we're still trying to come to grips

19     with that, and I realize that that needed to take sometime to

20     develop, but I am really focused on just getting that decided sooner

21     rather than later.

22          And I take it your argument is that this mechanism is

23     going to allow you to somehow evaluate the claim and be able to

24     present it as a mass joinder sooner or later.  Is there anything

25     that you want to add in that context that would strengthen the

1    court's desire to try to do it the way you're suggesting?

2             MR. MEUNIER:  It will, without question, encourage and

3    motivate plaintiffs and their counsel to proceed herein with a focus

4    up front on a mass joinder versus a class certification approach.

5             I should also add, Judge, that if this case were to be

6    certified as a class action, we would have to go through the claims

7    process we're talking about anyway.

8             THE COURT:  Right.

9             MR. MEUNIER:  And I think this plaintiff fact sheet, which

10   has now been agreed upon, serves as a class action claim form, it's

11   just that you do it later, after certification, after the Fifth

12   Circuit, after, after, after.  This advances the agenda, and, yes,

13   it clearly will facilitate the conversion ultimately into a mass

14   joinder because plaintiffs do give something up there, they give up

15   the protection of a class action, albeit the people may think the

16   odds are against us on getting certification, Rule 23 certification

17   provides a lot of advantages.

18             But if plaintiffs know, look, we can take on the burden

19   now, it's not an easy task, we can get all of our people to fill out

20   these claim forms, got to do it anyway, class or no class, we can

21   get tolling agreements so we don't have thousands of suits filed.

22   It takes some work, but if we on the plaintiff's side think that

23   this really will get us in a position where we can sit down with the

24   defendant manufacturers in particular and say, can we look at

25   resolution, can we pick an intelligent bellwether trial plaintiff,

1   we're all for that.

2         THE COURT:  I guess my concern is we go through all of

3   this and I allow you to get from the government what you want to get

4   and then you get all of this information and you say, you know, this

5   is great, thanks, Judge, but we kind of like the class vehicle

6   anyway.  My hope is that we can get -- the desire was to try to

7   proceed as a mass joinder.  I am gathering from you that there is no

8   way to know if we hit a certain number of claimants, I don't know

9   what the criteria is, where this tips that decision or makes that

10  procedure more doable or more likely than if we were to proceed as a

11  class.

12         And you're right, I mean, it has to be done one way or the

13  other, I hear what you're saying.  Notification has to be given and

14  the only way it's not given is if I don't certify the class and it's

15  not a mass joinder and we just go ahead and try the common issues

16  and spin it out into the individual trials.  I don't think anybody

17  here really wants that, because I would consider this effort to be a

18  failure as an MDL if that's all we did.  I can render a decision and

19  have other courts cite it, hopefully, and follow it.  If that's the

20  case I think we're here to do much more than that, I think we're

21  here to try to not only get common rulings that would apply to every

22  claimant, but also to try the bellwether cases and try to get some

23  results that would facilitate a settlement of some sort depending on

24  those results.

25         Andy, you didn't file anything on this.  Have you got any

1    position on this?

2        MR. WEINSTOCK:  I did not file anything, but sitting here

3    I realize I have more of a dog in this fight than I thought.  The

4    question is, consistent with your comments, is timing is everything.

5    If a class is not certified, notice must go out at that time telling

6    people class has not been certified, which to me makes this

7    discussion highly relevant but also premature, unless the court's

8    envisioning a pre-certification hearing notice and a post

9    certification hearing notice.  It's going to get to the same place.

10        THE COURT:  Well, we would have to, that's what I think is

11    sort of the scenario.  If we give this notice and they come back and

12    they say, you know what, class action is where we want to be and I

13    either certify or not certify, there's got to be some notice then

14    again provided stating you need to pursue your own claim because

15    you're not part of the class as it stands now, or here is what you

16    need to do in order to be considered a member of the class that the

17    court has certified.  So, yeah, it's got to be.

18        MR. WEINSTOCK:  That's why to me it seems like there

19    should be one notice after certification determination, which I

20    truly believe I'll win, we have 47 different ailments, 60 different

21    manufacturers, I mean every plaintiff would need their own subclass.

22    But regardless, that's an argument for another day.

23         To me the correct timing of notice is after certification,

24    there is no class, if you want to come in, call this number, get on

25    board, we're going to proceed, your rights are starting to run, do

1    something.  Now we're sending out a notice saying your rights aren't

2    running, do you want to get in on this, and that's really a much

3    different type of notice to me and maybe not one as compelling as

4    needed to say right now you're being protected but we want to know

5    who you are.

6              MR. MEUNIER:  Can I respond to that, Judge?

7              THE COURT:  Go ahead and then we'll hear from the

8    government.

9              MR. MEUNIER:  We are going to urge certification.  I think

10   everyone here wants a ruling on the merits that is a contested for

11   the record ruling on the merits.  We're going to have to have

12   briefing, we're going to have to either reach stipulations or we're

13   going to have to conduct some discovery relative to class

14   certification.

15             I don't know how long all of that's going to take, I don't

16   know to what extent that's going to distract us from the important

17   issues like testing evidence before it's destroyed.  My worry is

18   that if we wait to get arms around existing claims until there is a

19   response to something sent out after that ruling, we will be talking

20   about doing this next year, or at end of this year, and valuable

21   time will have been lost.

22             So I don't -- you know, I had never contemplated two

23   notices.  My perception of this was that you do a discretionary

24   pre-cert notice now that hopefully informs us as to who is and is

25   not coming forward.  True, people can sit out there and do nothing

1   and still have a case, but the hope of this is that there aren't

2   going to be a lot of those.  That's my assumption.  But once the

3   court rules, if we do this, we announce what we're announcing now,

4   the court rules and the time runs, I don't think there is any

5   obligation to send out another notice, and I had not seen that being

6   necessary.  I am not opposed to it, but if you're saying why not

7   wait because we're going to have to do it anyway, I don't

8   necessarily subscribe to that.

9           THE COURT:  I mean, if that's the case then we ought to

10   have a class cert hearing sooner rather than later.  And yet again,

11   the beautiful picture we painted here was let's not get bogged down

12   in that and have to do discovery, let's get the units tested and

13   let's try these cases and start getting some substantive results.

14   And we decided that, no, let's push the class issue to the back end.

15   And the context of that discussion was, hey, why don't we do this as

16   a mass joinder.

17           So I am still having problems figuring out how this

18   process, if the court were to go down this road, how is this process

19   going to get us away from the class idea, how do we overcome an

20   allegation that's already been made for class certification -- I

21   understand why you made it, you have to protect the record -- how do

22   we as a result of this process get this from being a class

23   certification issue and on to trial as a mass joinder, and that's

24   the disconnect that I have.

25           We've been kicking this around and I am trying to get down

1    the road here a ways and I am not quite following.

2           MR. MEUNIER:  Judge, it ends up as a mass joinder only

3    when you deny class cert and the time runs.

4           THE COURT:  I understand that.

5           MR. MEUNIER:  That's immutable, that's the conversion to

6    mass joinder.  So let's --

7           THE COURT:  But didn't we say that we were going to do the

8    cert hearing, we were going to pretermit that?

9           MR. MEUNIER:  Right.  And the reason for that was that if

10   we focused on class cert now, it would:  (A) distract us from merits

11   and other things, case development, we would have delay, and we

12   wouldn't be learning what I always thought was important to know,

13   who is making claims here.  We have 17,000 to 18,000 claimants who

14   have hired attorneys.  That may be all we see.  I mean, there's been

15   publicity about the case, although I submit most of the publicity

16   has been between FEMA and the class members, but that leaves 120

17   some odd thousand, perhaps, who are by definition in the class who

18   are absent, not yet heard from.

19           My concept was when we had these discussions about let's

20   defer class cert and treat it as a mass joinder, that in treating it

21   as a mass joinder, which is let's focus on individual claims, we

22   would do our best to find out who those are.

23           THE COURT:  Right.

24           MR. MEUNIER:  And not just say, well, let's deal with the

25   17,000 we got.  We could do that, but I submit that if we do that

1  and ignore the rest, the tail may be wagging the dog.  Why not find

2  out how big a pool of claims we're talking about and you'll find out

3  eventually anyway.  I am not saying this is the only way to find

4  out, but this way gives us an information process now that is useful

5  to resolution, that's all.

6          Does it make it more likely that there will be a mass

7  joinder than a class action?  I believe it does, but I think that

8  likelihood exists regardless of what we do.  You're going to decide

9  class cert, the time is going to run for appeal, we're going to have

10  a mass joinder, and that's going to happen in the life of this MDL,

11  either sooner or later.

12          But to me that reality doesn't change the argument that

13  sooner rather than later we should make an effort to find out about

14  the claims.  And I believe because these are putative class members

15  and I believe you have the authority, we can do that.  That's all.

16  This is a case management effort and I do believe it facilities the

17  handling of the matter as a mass joinder, and it facilities it

18  because it will allow us to have global resolution discussions and

19  bellwether trials without having to wait for the day when there's a

20  formal ruling on class cert, an appeal or no appeal, et cetera.

21          THE COURT:  Well, you've mentioned bellwether trials a few

22  times.  Haven't we claimants now that could be bellwether trial

23  participants that will be just as exemplary than somebody who is out

24  there that hasn't sent in a fact sheet?

25          MR. MEUNIER:  Arguably you could.  I mean, look, in the

1   Vioxx case, Judge Fallon, and I mentioned this in my brief, he tried

2   four of the five bellwether trials before ruling on the class

3   certification.  He kept class cert pending and I will submit to you

4   there was a reason.  He didn't want to have a situation where he got

5   flooded with umpteen thousand individual lawsuits because the time

6   ran out for people to file suits.  He felt the better approach was,

7   let the claimants be identified through a plaintiff profile form and

8   a tolling agreement.  No lawsuits needed, claim forms.

9          We selected the bellwether trial plaintiffs in Vioxx, I

10  will concede, without knowing the full universe of claims.  So, yes,

11  the answer is we could take the 17,000 known claimant pool and we

12  could use it as a base for selecting bellwether trials.  Do I know

13  now as I sit here that the other hundred and some odd thousand

14  putative class members are typified and the information and nature

15  of those claims is truly captured by those who are signed up with

16  lawyers?  No way to tell.  But I am not suggesting that 17,000 are

17  so small a number that you couldn't say, you know, let's start

18  picking bellwethers from that group irrespective of what we find out

19  about other claims.

20          THE COURT:  Okay.  Well, let me go ahead and let the

21  government weigh in on this now.

22          MS. BOYLE:  Thank you, your Honor.  Michelle Boyle for the

23  United States.

24          Our remarks are fairly well laid out in our pleadings, but

25  what I'll do is just try to respond to the oral argument that was

1   made today and as to your Honor's questions.

2          THE COURT:  That's fine.

3          MS. BOYLE:  There are two main reasons why this motion

4   should be denied.  I'll focus on the second reason first, which is

5   that Rule 23, the interpreting case law and the Advisory Committee

6   notes do not contemplate the procedure that is being proffered by

7   plaintiffs.  And if the so-called notice which the United States

8   submits at this point at this time in the litigation because it does

9   not effect the substantive rights of any claimants or putative class

10  members, which is the purpose of notice, is not actually notice in

11  the true sense of that term under Rule 23.  And if so, this

12  procedure seems incongruus as to the notice that could be required

13  later after a class certification, that is the reason why.

14          Rule 23(c) provides that a certification determination

15  should be made at an early practicable time.  After that both the

16  mandatory and discretionary notice provisions appear after the

17  certification provisions.  The discretionary notice provision the

18  United States would submit is misinterpreted by the Plaintiff

19  Steering Committee.  What that is is that it refers to the court's

20  discretion of whether or not to issue notice at all by contrast

21  under the mandatory notice provision with respect to a class

22  certified under 23(b)(3) if the court does find that the class

23  action is superior to the other methods of adjudication because of

24  the common questions of law and fact, then the notice is mandatory.

25          However, if the court certifies under 23(b)(1) or (2) then

1    the notice is discretionary and it would be at that point for the

2    court to determine whether or not to issue notice.  And the

3    availability of a list such as that which is at issue in this case

4    can at that point be a factor in your Honor's decision whether or

5    not to issue the notice and the manner and timing of notice and so

6    on and so forth.

7         There is an exception to this rule that notice should only

8    be issued after a certification determination contained in the

9    Advisory Committee notes of Rule 23(e) also establishing the case

10   cited by plaintiff Shelton v. Pargo, which provides that in the

11   event of a settlement offer, even if no class is actually certified,

12   it may be proper, depending on the facts and circumstances, for

13   courts to issue notice at that point.

14        For example, in Vioxx, which is also cited by the

15   plaintiffs, that case is distinguishable in a number of grounds, but

16   it doesn't support the relief that is at issue today.  First there

17   was no Privacy Act objection in that case, there was no government

18   actor.  But in any event, in the Supreme Court case not cited in our

19   pleadings but available at 437 U.S. 343, 1978 Oppenheimer Fund

20   provides that a request for a list of persons for class notice that

21   is brought pursuant to discovery rules must be analyzed Rule 23 and

22   not under the discovery rules.

23        So in keeping with that rule, in Vioxx the plaintiffs

24   concede in their brief no notice of this nature was issued in that

25   case.  After settlement offer was made, which took place after the

1   bellwether trials as well as after the denial of the class

2   certification, then those plaintiffs who had a pending or tolled

3   complaint as of that time were issued notice with respect to how to

4   submit their claims to the settlement program and the deadlines.

5   However, none of those plaintiffs' rights with respect to the

6   settlement were precluded -- rather let me correct myself.

7           If they failed to participate in the settlement program by

8   the established deadlines, then their right to take advantage of the

9   settlement offer was precluded.  However, their right to file a

10  later suit if their claim were to accrue at a later date because of

11  their injuries that they were claiming, that rate was not precluded.

12          And in this respect, actually, the plaintiffs' notice that

13  they submitted, I believe earlier this week, is actually wrong when

14  it states that only those who fill out this form will be allowed to

15  participate as claimants in the MDL.

16          Now I'll just try to address some of the points that were

17  made.

18          With respect to case management, the MDL statute certainly

19  authorizes and requires the court to manage the case that is before

20  it; however, the MDL statute as well as Rule 23(d) which provides

21  under, "this rule, the court may issue orders to protect "class

22  members" and fairly conduct the action."  The case management

23  authority and duty that the court is bound to apply really only

24  applies to the case that is before the court, which in this case is

25  a pending class action and that is all that is before the court.

1      By contrast to issue the list or to compel FEMA to provide

2   the list to the court for a "notice" contravene the text in purpose

3   of Rule 23, and at this stage it doesn't actually accomplish the

4   purpose of what the notice is designed to do under Rule 23, and,

5   therefore, the United States submits that at this point all it is is

6   merely an invitation or in other words an advertisement for absent

7   persons who are already covered by the class action to nevertheless

8   fill out paperwork and join the suit.  And in that respect that

9   relief, we submit, is improper because it's not authorized under

10   Rule 23.

11      With respect to the Gulf Oil case that was cited, I have

12   not read that case, however, it appears from the Plaintiff Steering

13   Committee's description that a settlement offer also was at issue in

14   that case.  And so in that respect it's more like Vioxx where there

15   was a settlement offer that would preclude a person's substantive

16   rights where the court determined that in the circumstances notice

17   should be given.

18      By contrast in this case there hasn't been any, as far as

19   I'm aware, settlement offer made or any type of global procedure

20   undertaken with respect to settlement.

21      Briefly with respect to the Privacy Act and the normal

22   discovery channels, as I've already stated, the Oppenheimer case

23   stands for the proposition that the court needs to decide under Rule

24   23.  But in any event, since it was raised in our objections to

25   discovery, I'd just like to highlight that this also isn't true

1    discovery in the true sense of the term because it's seeking a list

2    of persons who are not parties and, therefore, those claims or

3    defenses could not be at issue.

4              The Department of Defense v. FRLA case of 1994, the

5    Supreme Court case did analyze a request for records that were

6    initially made then objected to under the Privacy Act.  However,

7    because the Privacy Act contains a FOIA exception, it also contains

8    the court order exception which we have explained in our brief is

9    only relevant with respect to discovery if Rule 26 is satisfied.

10             But with respect to the FOIA exception, that analysis

11   requires the court to undertake a balancing test, as the Plaintiffs

12   Steering Committee noted, between the privacy right protected and

13   the public's interest in the disclosure of the information because

14   FOIA is a public interest statute.

15             And in that respect, the FOIA test is actually more

16   lenient than the Privacy Act test which provides that unless an

17   exception applies, the Privacy Act protected information should not

18   be disclosed.

19             But in any event, the court analyzed whether the FOIA

20   exception would apply and found that it would not because the unions

21   were seeking the contact information to facilitate their own

22   operations, not to expose some type of public interest to the

23   public.  And in that respect that case would still support the

24   United States' position that no public interest is being sought here

25   with respect to the list, but rather it's being sought to facilitate

1    the case preparation efforts of the Plaintiff Steering Committee.

2            And the other cases cited in our brief, as well as cited

3    in the Plaintiff Steering Committee's brief, the Sun-Sentinel case

4    also support that proposition as well.

5            Finally, with respect to using the confidential court

6    appointed notice administrator, at this stage in the litigation that

7    should not change the court's analysis with respect to this issue.

8    For one thing as described earlier, there is no balancing test

9    between the degree of the invasion of the privacy and the benefit to

10   be gained by the disclosure.

11       THE COURT:  That wouldn't satisfy the Privacy Act

12   concerns, putting everything else aside, the other issues, I am not

13   trying to minimize those, but if we were to use a third-party

14   administrator such that plaintiffs' counsel would not receive the

15   information, defense counsel would not receive the information, that

16   would not satisfy a Privacy Act concern?

17       MS. BOYLE:  No, your Honor.  The Privacy Act provides and

18   this is held in the United States Department of Defense case, that

19   the information is protected unless a statutory exception applies.

20   And in this case the statutory exception that's being alleged is the

21   court order exception which could be applied as was done on the

22   March 4th order to allow FEMA to disclose information that would

23   relate to a claim or defense in this litigation under Rule 26.

24   However, in this case that is not sufficient here because this only

25   pertains to persons who -- to other persons who have not filed suit,

1   and, therefore, it could not be brought under the court order

2   exception to discovery.

3        THE COURT:  Well, the tricky part of the non-party

4   argument is that, I mean, they're class members, they're potential

5   class members.  So we're kind of going round and round on the issue

6   of the argument of whether these are truly non-parties,

7   non-claimants or whether they're, in fact, claimants as we sit here

8   today.

9        MS. BOYLE:  In that case, your Honor, the United States

10   submits that under Rule 23 and the Oppenheimer case which compels

11   the inquiry to be made under Rule 23, that this notice is also

12   improper because it's not noticed under Rule 23.

13        If you -- if we come to the point of notice being required

14   pursuant to Rule 23 to protect absent putative class members'

15   rights, at that point certainly the court should consider the manner

16   of the notice, such as perhaps the proposal that is being made

17   today, and the manner and timing and the propriety of the method of

18   that notice.  And also at the rate of accuracy that the notice could

19   be, could facilitate, and Professor Newberg write s about this and

20   there is also a case in this court, the Educational Testing Service

21   Litigation, where the notice administrator did achieve an accuracy

22   rate of about 96%, and that was found on a challenge that was found

23   to be a high rate of accuracy and it was found to protect the absent

24   class members' rights

25        THE COURT:  Sounds like you're offering as the

1   government's position that the class cert hearing should be sooner

2   and imminent rather than later.

3          MS. BOYLE:  Your Honor, Rule 23(c) provides that

4   certification should be done at an early practicable time.  With

5   respect to -- and that is because of this very issue based on the

6   Advisory Committee notes which is how to inform -- how to protect

7   the absent class members.  And the United States supports this

8   method.

9          The only addition I would make on behalf of the United

10  States is that pursuant to the FTCA, the class action cannot be

11  maintained unless all of the members exhaust their administrative

12  remedies.  But in any event, whether the class certification takes

13  place now or whether it takes place later as in the case of Vioxx,

14  that determination is really at its core a relevance determination

15  as to how related all of the claims are to each other.  So in Vioxx

16  after the bellwether trials apparently assisted the court in

17  assessing the spectrum of claims and defenses that were at issue.

18         On the other hand Rule 23(c) does say that the court

19  should make a determination at an early practicable time.  I believe

20  the United States hasn't developed a firm position on exactly when

21  certification must be made.

22         THE COURT:  But certainly before any of this type of

23  procedure be employed.

24         MS. BOYLE:  Yes, your Honor.

25         THE COURT:  All right.

 1          MS. BOYLE:  And the rules and supporting case law we

 2     believe support that.

 3          THE COURT:  Okay.  Do you want to respond?

 4          MR. MEUNIER:  May I respond briefly, your Honor?

 5          THE COURT:  Go ahead.

 6          MR. MEUNIER:  First, as you point out, contrary to the

 7     government's position, the list does pertain to those for whom a

 8     suit has been filed.  It pertains to putative class members on

 9     behalf a class action is pending.  They are absent litigants.  They

10     are absent parties to this case.

11          I am happy through Oppenheimer to make our motion rise or

12     fall on Rule 23.  I am perfectly happy to have you analyze this

13     question under Rule 23, and Rule 23 could not to me be more clear

14     that you have two types of notice, the mandatory post cert notice

15     under Rule 23(c), the discretionary notice at any step of the way

16     under Rule 23(d); and the test is will it protect the class members,

17     will it fairly conduct the action.

18          And I think if we analyze it that way, you've got the

19     authority -- again, we get back to the question it's not an if you

20     have the authority, it's a whether you choose to exercise it.  So

21     Rule 23 informs us that you have the authority and I think the

22     decision for you is should I exercise it at this time.

23          And finally, just on Vioxx again.  You know, in Vioxx

24     where class certification was deferred, where bellwether trials took

25     place prior to certification, but where pending class certification

1   we had an enormous amount of effort in getting profile forms filed,

2   we had an enormous amount of effort in getting tolling agreements

3   executed.  Why?  Why did we go through all of that in <u>Vioxx</u>?  Why

4   didn't we just wait until after certification and let the appeals

5   run and then see what suits were filed?  That's the other way to do

6   it.  The reason we did it in <u>Vioxx</u> is because it enabled us with the

7   defendants to know what we were dealing with sooner rather than

8   later, which is helpful to everyone.  It's helpful to everyone.

9          So when you look at it on what will enable the fair

10  conduct of the action, to us it's rather simple.  Know who is making

11  a claim, try to know that sooner rather than later.  And I'll say

12  this, the <u>Vioxx</u> settlement was built on an information platform.

13  And you know what?  The <u>Vioxx</u> settlement by its definition excludes

14  people who didn't fill out profile forms and signed tolling

15  agreements.

16         What you ended up with in <u>Vioxx</u> is a settlement, in other

17  words, that by its terms excludes these absent class members who

18  choose to sit on their rights and who don't come forward and who

19  say, you know, what.  I am just going to wait for a class cert

20  ruling, I am going to wait for my statute of limitations to run, and

21  then I am going to file an individual lawsuit.  You know, that's

22  what I say becomes the tail wagging the dog.  If that's the way we

23  choose to find out.

24         All we're saying here is, look.  It's a way we can find

25  something out, it's a way we can determine sooner rather than later.

```
 1    And the court can decide how it wants to do this, the court can
 2    decide that it's not so important to find out now and the court can
 3    decide, tell you what, let's do class cert first; all I am saying is
 4    we're going to end up, no matter what, in a position where we've
 5    got, let's say, a mass joinder and at that moment we're either going
 6    to know more or less about who is making a claim.  More or less.
 7    And this is a legitimate way to find out sooner rather than later.
 8              So you've got the authority, it's a pre-cert notice
 9    authority that's clearly in the rule, the only question is do you
10    choose to exercise it.
11              I failed to see in anything I've heard here a downside.  I
12    thought I was going to hear today, well, the downside is you're
13    going to stir up a lot of litigation, you're going to inspire people
14    to come forward who otherwise wouldn't come forward.  I haven't even
15    heard that argument.  So what's the downside of this?  What's the
16    downside of an invitation to a known group?
17              We have something here we didn't have in Vioxx.  There was
18    no way to mail the known universe of claims in Vioxx.  We have that
19    here.  I don't think that you're likely to find more than a handful
20    of cases that are class action cases where the information is in the
21    hands of an adverse party right now as to who the claimants are.  So
22    if the argument isn't you're going to inspire claims, if the
23    argument isn't shame on you for wanting to know something private
24    about these people, I mean the information is going to a notice
25    administrator.
```

1           If those aren't the arguments, if the argument I am

2  hearing is instead you shouldn't do it this way, Judge, because if

3  we really go strictly by the book, we should do class cert.  And

4  that's a case management call, and if you don't see the benefits in

5  case managing, then I can't convince you to exercise your authority

6  but the authority is there.

7           MR. WEINSTOCK:  May I respond?

8           THE COURT:  To you and then go back to the government.

9           MR. WEINSTOCK:  I'll try to be brief.  You're right in

10 that once upon a time we were painting a rosy picture of all of the

11 things that we could do.  But part of that rosy picture that we

12 discussed and envisioned did not include filing a master amended

13 complaint as a class action.  Initially the thought was a

14 superseding complaint as a mass joinder.

15          It wasn't filed that way, that's fine.  But now I have to

16 deal with the fact that we have a class action and we have to get --

17 from our perspective that determination needs to be made sooner

18 rather than later.  And I don't want --

19          THE COURT:  You're saying we should have a class cert

20 hearing sooner?

21          MR. WEINSTOCK:  Sure, absolutely.  I mean, we need

22 ultimately a merits determination of class.  Win or lose we need

23 that.  And sooner rather than later is the only way to go in my mind

24 and I think in my entire group's mind.

25          The issue of notice I think, it keeps going back and

1   forth, I am trying to follow these arguments on what's mandatory and

2   what's discretionary, it was my impression that you needed to send

3   out notice after certification was denied to tell people you have

4   rights that are going to be dismissed, you need to take action on

5   them; and that's where I came up with the discussion about a second

6   notice, and maybe that's something we need to brief to determine

7   that because I have not heard before that, hey, class can be denied

8   and you don't have to tell anybody it's been denied and their rights

9   are gone.

10          It's my understanding that they come back in and file a

11  suit and say, hey, I didn't know there was a class denied, nobody

12  told me.  I thought I was protected by this class cert that was

13  going on.  Now it's gone and nobody told me I had to come to court,

14  so here I am five years later with my lawsuit without a denial of

15  certification and adequate notice that that has taken place I have

16  no protection to anybody's statute of limitations are starting to

17  run which means we will be here in ten years and that's not

18  anybody's fault.

19          So, yes, I absolutely think that certification needs to go

20  forward.  It needs to go forward sooner rather than later.  I don't

21  envision it as a long, drawn out process.  We've learned a ton about

22  certification already, we've learned that the plaintiff experts

23  believe there is 47 different medical conditions, which in

24  combination 47 squared is 3,619 different medical conditions you

25  have; we learned they believe there is 60 defendants, not ten; so

1   you multiply that number you have 217,000 different types of

2   plaintiffs.  Like I said before, and I wasn't kidding, each

3   plaintiff needs their own subclass at this level.

4           If you have two models per defendant, you're up to 434,000

5   different subclasses of plaintiffs.  We've learned quite a bit that

6   we can go forward on and get a merits determination of class

7   certification, but that's got to come quickly.  And I don't think it

8   needs to be next year or some long drawn out process, but it's got

9   to be done.  And if and when it's done, and preferably sooner rather

10  than later, there is a need to send out a notice to everybody on

11  that list and you determine that's a good way to do it, that's the

12  time to do it.

13          That's why I said earlier I think it's not -- it's

14  premature more than anything.  Notice is going to have to be given,

15  whether it's given through the media or through this specific list,

16  that's a determination for whatever the court determines is best.

17  And if it's that specific list and you want to order that, that's

18  the time to do it to me; but that's the part where I don't have a

19  dog in this fight because it's not my list.

20      MS. BOYLE:  Your Honor, the United States does agree that

21  it sounds like based on the facts and circumstances that are

22  happening that class certification proceedings sooner are preferable

23  to later.

24          But just with respect to the response from Mr. Meunier,

25  with respect to the plaintiff fact sheets, the Plaintiff Steering

1    Committee already is doing exactly what they say they would like

2    this notice to facilitate.  As well in Vioxx that process was

3    underway so that by the time the settlement offer came to the table,

4    certainly the Plaintiff Steering Committee had enough information to

5    ascertain whether or not they would like to accept the offer.  And

6    certainly nothing is preventing them from doing that in this case.

7          And finally, besides the legal issue under Rule 23 which

8    the United States submits clearly precludes the cert class, there is

9    a strong policy argument to be made that the request is because it's

10   not notice authorized under 23, all it is is an advertisement.  The

11   Privacy Act legislative history clearly was designed, shows the

12   Privacy Act was designed to protect mailing lists such as this list;

13   and the MDL statute and Rule 23 case management provision provide

14   that the court must ensure fairness for all parties, which is to

15   manage the case that is before the court and not to improperly

16   advertise so that new cases could be brought into the case.

17         And for the foregoing reasons the United States submits

18   the motion should be denied.

19         MR. MEUNIER:  Judge, the only mandatory notice under Rule

20   23 is a post certification notice that there has been a class

21   certified.  Period.  There is no other mandatory notice under Rule

22   23, there is no mandate that you send out a notice that there's been

23   no class certification.  There is only a mandate that you send out a

24   notice that there has been.  So it is the case that if you don't

25   send out a notice after Rule 23 certification people are exposed and

1    the time runs.

2            You know, Rule 23 gives you such a thing called issues

3    certification.  If we are now going to focus on that foremost, first

4    and foremost, we have the concern on our side -- now, there are

5    certain common issues that we should take up in lieu of individual

6    bellwether trials that can be disposed of on a class basis.  We may

7    have to ask you to cert the case under Rule 23(c)(4) as an issues

8    class, we may have to do that.

9            Now, meanwhile we'll be filling out our claim forms,

10   meanwhile there's over 100,000 absent class members who are not

11   hearing from us.  One of the defendants knows exactly who they are

12   and will continue to communicate with them.  I don't think this is

13   an ideal set up to front-end load class certification.  I understand

14   why the defendants want it, I don't think it's the way to get us

15   where we want to get; because if we do that -- and we are going to

16   lose some time because we are going to have to make a proper record,

17   we are obliged here, we are obliged to urge certification at least

18   of an issues class, we are going to have to ask for some discovery,

19   we are going to have to ask for some stipulations, we are going to

20   have to pay some attention to this if that's where we're headed.

21   It's the long road.

22            What will happen if you choose not to certify a class,

23   whether or not a notice goes out, is you're going to get a lot of

24   lawsuits filed once people realize that they no longer have the

25   protection of American Pipe.  Not just lawsuits filed by the people

1    we're trying to contact, lawsuits filed by the 17,000 people we

2    represent; because once there is no American Pipe protection we'll

3    have 17,000 people filing individual lawsuits, and they will be

4    filed in Alabama and they'll be filed in Texas and they'll be filed

5    in Louisiana.  So we can do it that way.  I think it is a cumbersome

6    way to proceed.

7           And again, for the life of me, I don't understand the

8    resistance to the approach that was proven to work in Vioxx, I don't

9    hear it as a problem in terms of you're going to bother people, I

10   don't hear of it as a problem in terms of you're going to have a lot

11   of people stirred and do something, all I'm hearing is now why don't

12   we do it another way, why don't we do class cert first.  Why?  The

13   defendants want the time ticking on prescription, that's obviously

14   what they want.

15         MR. WEINSTOCK:  That's clearly why we want it.

16         MR. MEUNIER:  And we'll deal with that, but I am just

17   telling the court and opposing counsel what that's going to mean is

18   when that time starts running sooner rather than later, we're headed

19   to thousands of lawsuits being filed by known claimants.

20         MR. WEINSTOCK:  That's the only place that you've lost me,

21   because never have I rejected the idea of tolling agreements for

22   your 17,000 or any other 17,000 you sign up.  I don't know where

23   they have to file an individual lawsuit if we have an agreement on a

24   tolling arrangement.

25         You want your cake and you want to eat it, too.  You want

1    to say we're going to proceed mass joinder but you want the class

2    hanging out there, the procedure hanging out there so my case is

3    never prescribed, the statute of limitations is always interrupted,

4    and so there is no arm around it, no known universe because the

5    universe could always get bigger.

6            MR. MEUNIER:  It's fine that I represent the absent class

7    members, too.

8            MR. WEINSTOCK:  As long as there's certification pending.

9            THE COURT:  My concern is what of the class allegations at

10   some point the court will have to dispose of those, questionnaire or

11   no questionnaire, notice or no notice, at some point the court will

12   have to dispose of that, and you've made that point and I think

13   clearly everybody agrees.

14            With this information if we were to proceed in this

15   fashion, and I understand the Vioxx argument and all of the

16   complications of it, at what juncture would we encounter these class

17   allegations?  If we all agree that that's something that the court

18   must do, at what juncture would we encounter these allegations and

19   how will that not put us crosswise later on?

20            MR. MEUNIER:  I submitted the calendar and organization of

21   events in the proposal of the mass joinder.

22            THE COURT:  Yes, I have it here.

23            MR. MEUNIER:  And in direct response, your Honor, under

24   this calendar proposal, August 15 would be the date by which there

25   would be a required response to the notice.  So our hope and

1   expectation is that on August 15 we now know the critical missing

2   piece of information, which is who is and who is not coming forward

3   in this MDL.

4        Now, we have a certification hearing under this schedule

5   taking place November 19.  So by the end of the year, by the end of

6   the year if the decision of the court is not to certify a class,

7   that becomes arguably final by the end of the calendar year.  But

8   meanwhile on August 15 we'll know something that is to us terribly

9   important, which is who is and who is not going to get on a tolling

10  agreement and a fact sheet that removes the obligation to file an

11  individual suit and that tells us what claims we're dealing with.

12       Then the time is running from the end of the year on when

13  people's statutes of limitations will preclude them from any legal

14  remedy because there's no more American Pipe protection.  And this

15  is again more pertinent to the manufacturers than to the government.

16       So in answer to your question, it's a variable answer, but

17  if the trigger date is the end of the year and you take each state's

18  statute of limitations out and you know there is no more claim from

19  that state.  You know, this case may be remanded before the final

20  bell tolls.  My hope is the case may be settled before the final

21  bell tolls.  I hope that the case may be settled before, so we'll

22  get there, we'll get there.

23       What I'm hearing today is why don't we get there now?  Why

24  don't we just go ahead and do class cert ASAP and start the trigger

25  date?  Well, you're still going to have that outer deadline out in

1    the future, which I think will outlast the MDL.  I don't pretend --

2    I don't believe that you're going to keep this MDL long enough to

3    await the final outer possible deadline for every possible claim to

4    be made based on a trigger date of no class.  I just don't think --

5         And if your intention is to hold the MDL for that long, I

6    assume you would be holding it for that long to know, okay.  Who is

7    in, who is out?  Why, let's see if we can't settle.  We get there

8    that way, too, it's just a longer, more complicated way.  Yeah, we

9    have to do it.

10        The defendants have to know that people are not going to

11   hide in the bushes forever and I understand that.  I actually think

12   this helps the defendants because it brings people forward sooner

13   rather than later and that was always my understanding that we had,

14   you want people coming forward sooner.

15        So, Judge, that's the calendar proposal we have is that

16   notice allows us to know in mid August and the court reaches a class

17   certification ruling in mid November.

18        THE COURT:  Why don't we do this.  Why don't we just take

19   a few minute break here and we'll come back.  This might be

20   something I might want to take the weekend to ponder and get you all

21   back on the telephone on Monday at some point, and it's got to be

22   ruled on soon, by Monday, that would be my intent.  I could do so

23   with the court reporter here and get you all on the phone rather

24   than reconvene here.

25        Let me give that some thought for a few minutes.  If you

1   want to go ahead and use the restroom or whatever in the meantime,

2   it will only be a few minutes, but why don't we meet back here.

3          (WHEREUPON, A RECESS WAS TAKEN.)

4          THE COURT:  Why don't you all have a seat.  I think that

5   it would be beneficial to take some more time to look at this over

6   the weekend.  Let me say generally that this has gone -- it's not an

7   issue as simple as do we get the list of names to a third-party

8   administrator to send out notices.  It seems as though we have a

9   change in position on the part of the defendants with regard to this

10  class cert issue, which I was hoping and thinking that we had come

11  beyond that.

12          But be that as it may, I am going to say what I said

13  earlier is we've got to stop having conferences where we kind of

14  bounce off-the-walls with all of these ideas; and the case is no

15  longer in the germination stage, it's here, and I am going to have

16  to just start giving some deadlines and we're going to have to

17  follow them.  Now, if we're going to go the class cert route, we're

18  going to have some deadlines and we're going to follow them and

19  we're going to do them and get that issue off.

20          If we're not going to go that route -- and in suggesting

21  that I'm not saying that that's how I'm ruling on this particular

22  issue -- but we can't keep having the sort of stream of

23  consciousness procedure, and I guess I'm talking to you mainly,

24  Andy, not as a criticism of you but as your committee, you all are

25  not being specific enough and it goes to this issue of these

1    affirmative defenses that go -- we've got to get a plan, a game plan

2    here that everybody is on the same page.  If there's something that

3    needs to be treated in an adversarial fashion, let's tee it up and

4    let's decide it.

5          But every time we get seemingly close to getting something

6    done, I am sensing that there is some wriggling off the hook.  Some

7    of your clients are giving you, or I should say your cocounsel, are

8    giving you some flack about it.  We had this with the idea of this

9    defense of we need to test every unit, and if the claimant's unit

10   hasn't been tested, the claimant can prove his case.  I've said that

11   already and if that's an issue that needs to be put on the record,

12   then we need to put it on the record.

13         But I guess it's counterproductive to have a conference

14   where seemingly we're in agreement as to a game plan and then there

15   is some dichotomy that leaves here where we are not all on the same

16   page.  So the biggest aspect of that that's a problem today is this

17   issue of class certification, because I thought we had all agreed

18   that a mass joinder procedure, regardless of how we got to it, would

19   be preferable.  That was before the government was in the case, I

20   understand that and I've held to something that was discussed or

21   agreed to when you weren't in the case.  Nonetheless, we're now --

22   it's kind of brought to a head by this issue of notification in the

23   context that that notification is going to be given, as well as the

24   timing of the notification.

25         So that's the problem.  And I really want to take the

1    weekend to think about it and work on it.  I would like to get you

2    all on the phone Monday, I am thinking around 11 central time.

3    That, of course, is all subject to me being allowed in this building

4    on Monday with all of the Code Pink and whoever else shows up out

5    here on Poydras Street.

6              MR. MEUNIER:  What's happening?

7              THE COURT:  The Western Hemisphere or something rather,

8    the president of Mexico and Canada and every place else is coming to

9    Gallier Hall.  Which I'm sure is going to be a great event, but

10   we've already been put on notice that access to our building is

11   subject to whatever security measures they decide.  I'm told Tuesday

12   is going to be the worst of the two days in terms of us being able

13   to get here and work.

14             But assuming that we're here on Monday, I would like to do

15   it at 11 central time.  I plan to be here and I don't think Monday

16   is going to be a problem.  That'll give me a chance to go through

17   the materials again and really give some thought to what you all

18   have told me today.  These are all valid considerations, I don't

19   think anything that you've told me, it's all grist for the mill, and

20   it's going to be a decision that is going to be a significant one

21   with regard to the course of litigation certainly between now and

22   the end of the year and possibly further.

23             My goal has always been to try to move the ball down the

24   field on this thing and try to get, I just told the clerks, to get

25   from Point A to Point B in the most direct, quickest, efficient,

1   cost efficient and time efficient fashion, and that's my overriding

2   goal here, too.  So I need to figure out what's the best way of

3   doing it, whether it's what Gerry and Justin have suggested or

4   whether it's going the other way and teeing up the certification and

5   getting that out of the way.  I had hoped we were beyond that, but

6   we never did agree to do one or the other, so to your credit.

7           MR. WEINSTOCK:  I just briefly want to address it.  I

8   don't know that we changed positions but the game has changed.  But

9   from day one and today I still believe mass joinder is the superior

10  way to approach the resolution of this case.  The problem is I am

11  handed a class action, I've got to deal with it.

12          THE COURT:  Right.

13          MR. WEINSTOCK:  And I think the first conversation we had,

14  to use your analogy, was I want to take the wheels off the bus,

15  Gerry just wanted to take the air out of tires.  From day one I said

16  class certification has to go away, whether it's by pleading or by

17  hearing, I understand that's changed.

18          THE COURT:  You have.  And I am not being critical, I am

19  not suggesting that you represented one thing and now are telling me

20  something else.  That was the discussion that we had and you're

21  accurately stating your position then.  I didn't find it unexpected

22  that he's pled class certification because that is in several of the

23  complaints that had already been filed.  I interpreted that more as

24  sort of a place marker to be dealt with in our efforts to go the

25  mass joinder route.

1       And my question now is how do I get -- what is that route

2   and how do we get on that road sooner rather than later.  If we can

3   do this as a mass joinder case it's going to be a lot easier to

4   settle, ultimately we want to have that conversation here before we

5   start spinning these cases out back to where they came from.  My

6   goal would be to get it all resolved here and not have to send

7   anything back anywhere, to go ahead and get it all resolved here.

8   But to do that we're going to have to have bellwether trials, to do

9   that we're going to have to get rid of somehow this class

10  certification issue by either having a class or not having one.

11      And so we've got to figure out a way and I've got to

12  figure out a way to get from here to there.  I don't think we

13  anticipated, I'll speak for myself, I guess I don't think that I

14  appreciated the gravity of this notice issue raising that decision

15  at this point forcing -- I don't want to say forcing, but certainly

16  implicating that decision now.  And maybe that was naive on may part

17  to think that there could be a notice provision outside of a

18  decision with regard to how we're going to proceed as a class or as

19  mass joinder.  But I think it does implicate that bigger picture, it

20  does implicate it.

21      I understand your argument that it is not necessarily, and

22  ultimately I may agree with you, but certainly that is on the heap

23  of things that go into this decision is how it's going to impact

24  getting from class to mass joinder.

25          MR. MEUNIER:  And, your Honor, for us again, it's all

1  about identification of claims.  We cannot resolve this case in this

2  MDL unless we identify the claims while we're here, not later, while

3  we're here.

4         THE COURT:  I understand.

5         MR. MEUNIER:  And to me identifying the claims is a

6  priority, and that's the whole point of our request for a list when

7  we know a list exists telling us each and everyone who is a

8  potential claimant.  I realize it's an issue of timing and I

9  appreciate the concerns that have been expressed.

10         But again, from day one I hope we've been consistent, yes,

11  let's approach this as a mass joinder; but if we're going to

12  approach it successfully as a mass joinder and try to do something

13  to resolve it, we have to know as much about the claims as we can

14  possibly know as soon as we can possibly know it.  And that's why I

15  don't think waiting for a class cert and statutes to run and all of

16  that, that's a slow boat, I am trying to front-end load claims

17  identification, that's the whole point of it.

18         THE COURT:  I am a cut-to-the-chase type of person.  I

19  mean, as far as I'm concerned, send out the notices, get everybody

20  in here, let's talk turkey, let's try a few, and get those skins on

21  the wall whichever way they fall and then close it down.  But we

22  cannot ignore -- the procedure maybe inconvenient but it's there and

23  it's got to be employed.

24         Go ahead, Michelle, you were about to say something.

25         MS. BOYLE:  Thank you.  Just to respond as a factual

1  matter.  That point that Mr. Meunier made assumes a lot.  It assumes

2  that all of the people in trailers have claims, and, in fact, the

3  facts show that out of the over 100,000 people there have been

4  approximately 4,500 or so, which is noted in our exhibits, that have

5  called FEMA with respect to concerns.

6       And so this factual basis underscores the government's

7  position that the purpose of this "notice" at this stage is not

8  notice in the true sense of the term, with respect to substantive

9  rights under Rule 23, it's just an early way of informing people

10 about the litigation, and in that respect resembles more of an

11 advertisement.

12      THE COURT:  Well, the other thing that troubles me about

13 this whole consideration, it's really kind of unique, is the fact

14 that I think Gerry is right that one of the parties to the case, at

15 least a party for right now, has this information and has been

16 communicating with the very people that are at issue in this case.

17 And I think that, if for no other reason, that distinguishes this

18 circumstance -- it's not an insignificant fact, it distinguishes

19 this circumstance from the other cases that we've been talking

20 about, the cases that you and I have been looking at.  So that's

21 another concern.

22      MS. BOYLE:  Your Honor, if I may address that very

23 briefly?

24      THE COURT:  Very briefly.

25      MS. BOYLE:  The United States isn't aware of any

1   allegation of improper communication regarding this litigation per

2   se, only actions taken pursuant to the Stafford Act to distribute

3   the assistance.  If the Plaintiff Steering Committee believes

4   there's been some type of interference with respect to the

5   litigation rights of persons, the proper vehicle for redress for

6   that would not be a motion to compel the list to sign everyone up

7   for litigation, but rather some type of petition for injunctive

8   relief or some type of method for the court to have received FEMA's

9   distribution of the aid.

10            THE COURT:  I understand that.

11            MR. MEUNIER:  All we're saying is you're communicating

12   about a key fact in the litigation, which is formaldehyde levels and

13   the safety thereof.  It goes to the heart of the case.  And

14   pretermiting your right to do it or whether you have the right to be

15   doing it, you're doing it and it's happening, and I think these same

16   people who have potential claims ought to know that there is a way

17   to assert a claim in the MDL and a time to do it in.  Period.  It

18   doesn't seem fair to me that they're being filled with information

19   from the government about what these levels mean but hearing nothing

20   at all about the opportunity to address and exposure of claims if

21   they choose to make them.

22            We went out of our way with this notice to include bold

23   print language.  Look, we are not telling you you have a claim, we

24   are not telling you you have a valid basis for a claim, we're not

25   making any assertions on that.  We're just alerting you to this

1    forum.   Anyway.

2            THE COURT:  Let's do this.  Why don't we plan on -- can we

3    reach you at the numbers we already have at 11 --

4            MR. MILLER:  Certainly, yes.

5            THE COURT:  -- on Monday?  If for some reason you're at a

6    different number, call my chambers and let us know where we can find

7    all of you all.  For instance, if you three are not together, we

8    will get you on the line separately wherever you are.  And likewise

9    you all.

10           Let me try to work through it a little bit, and we'll also

11   have the court reporter on Monday to take down whatever we discuss

12   while on the phone Monday.  Okay?

13           MR. MEUNIER:  Thank you, Judge.

14           MR. MILLER:  Thank you, Judge.

15           THE COURT:  All right, thank you all.

16           MR. WEINSTOCK:  Thank you, your Honor.

17           MS. BOYLE:  Thank you, your Honor.

18        (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

19

20

21                          *  *  *  *  *  *

22

23

24

25

1

2

3                        REPORTER'S CERTIFICATE

4

5

6        I, Karen A. Ibos, CCR, Official Court Reporter, United States

7    District Court, Eastern District of Louisiana, do hereby certify

8    that the foregoing is a true and correct transcript, to the best of

9    my ability and understanding, from the record of the proceedings in

10   the above-entitled and numbered matter.

11

12

13                              /s/ Karen A. Ibos _____

14                         Karen A. Ibos, CCR, RPR, CRR

15                         Official Court Reporter

16

17

18

19

20

21

22

23

24

25