UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION:  N(4) |
| | * | |
| This Document Relates to:  ALL CASES | * | JUDGE: ENGELHARDT |
| | * | MAG: ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF
## MOTION FOR PROTECTIVE ORDER ON MERITS DISCOVERY

**MAY IT PLEASE THE COURT:**

Manufacturing Defendants Liaison Counsel ("MDLC") submits this Memorandum in

Support of the Motion for Protective Order on Merits Discovery.

## I.  FACTUAL BACKGROUND

This Multi-District Litigation is the consolidation of twenty-three state and federal toxic

tort suits in which an estimated thirty thousand named Plaintiffs (individually and purportedly on

behalf of potentially hundreds of thousands of putative class members) claim to have inhabited

temporary housing units ("THUs") that were provided to them by the Federal Emergency

Management Agency ("FEMA") as a result of the alleged uninhabitability of their residences due

to Hurricanes Katrina and Rita.  (Rec. Doc. No. 109, at ¶ 96).  Plaintiffs claim injuries resulting

from the alleged release of formaldehyde and/or formaldehyde vapors in those THUs.  (Rec.

Doc. No. 109, at ¶ 30).  As a result of that claimed exposure, Plaintiffs have filed suit against

sixty-seven defendants that allegedly manufactured the THUs used by the Plaintiffs.  (Rec. Doc.

No. 109, at ¶ 8 and Rec. Doc. No. 379, at ¶¶ 6-8).  Moreover, Plaintiffs have named as defendant

the United States Government through FEMA, and Plaintiffs seek recovery for alleged physical

1

and mental pain and suffering, physical impairments and disability, medical expenses, loss of earnings capacity, loss of enjoyment and quality of life, loss of consortium, travel expenses, out-of-pocket expenses, attorney's fees, and the loss of use and/or opportunity to use safe and adequate shelter allegedly resulting from the purported exposure to formaldehyde.  (Rec. Doc. No. 109 at "Compensatory Damages: All States" ¶, p. 74).

During the course of this litigation, the Court issued several Pre-Trial Orders, including Pre-Trial Order No. 8 (Rec. Doc. No. 287) that establishes specific class certification deadlines intended to facilitate a class certification hearing currently scheduled for no later than November 19, 2008.  In conjunction with Pre-Trial Order No. 8, starting on June 25, 2008 the parties were to begin deposing non-parties, and party depositions are to begin on July 7, 2008, with the Defendants and Plaintiffs alternating weeks. (Rec. Doc. No. 287, at ¶¶ 5 and 6).  Consequently, on June 13, 2008 Plaintiffs began noticing depositions of non-parties.[1]  The Notices included a broad and exhaustive range of topics.  (*See, e.g.*, Deposition Notice of Bourget's of the South, L.L.C., attached to the Motion for Protective Order on Merits Discovery as Exhibit "A").

As a result of numerous issues raised by both the parties and non-parties involving the non-party depositions, following a conference with the Court the non-party depositions scheduled to begin on begin on June 25, 2008 were voluntarily continued.  (Rec. Doc. No. 391). Meanwhile, Plaintiffs' Liaison Counsel ("PLC"), MDLC and Government Counsel ("GC") diligently worked to address additional concerns raised by the scope of the PLC's draft 30(b)(6) Deposition Notice to the manufacturing defendants.  During the week of June 23, 2008 several lengthy discovery conferences were held among PLC, MDLC and GC to narrow the scope of the

---

[1]      The alphabet soup of non-parties noticed include: FCI (Formaldehyde Counsel, Inc.), IMHA (Indiana Manufactured Housing Association), MHI (Manufactured Housing Institute), IWPA (International Wood Products Association), RVIA (Recreational Vehicle Industry Association), The Shaw Group, Inc., Fluor Corporation, CH2M Hill, Inc. and Bourget's of the South, L.L.C.

draft Notice and to modify the deadlines in Pre-Trial Order No. 8 to allow the parties to complete necessary class certification discovery while still meeting the deadline for the class certification hearing.

Under the proposed amended Pre-Trial No. 8 deadlines, ten weeks are allotted to conduct non-expert depositions, with five weeks each for the Plaintiffs and Defendants.[2]  Throughout the aforementioned discovery conferences, PLC repeatedly advised that the number of depositions required would necessitate "multiple tracking" the depositions: potentially twelve or more at the same time.  GC has likewise repeatedly expressed an inability to accommodate multiple tracked depositions due to limited resources, and GC has requested the Court's assistance in resolving the dispute.  The Court has suggested that if a Conference is required, that the parties be prepared to offer alternative proposals to resolve the dispute.

In the meantime, PLC and MDLC were unable to reach an agreement concerning the scope of the draft Manufacturing Defendant 30(b)(6) Notice.  Fundamentally, Defendants object to several topics as seemingly directed towards merits discovery rather than class certification discovery.  Because of the broad scope of the Notice, both MDLC and PLC anticipate that Plaintiffs will need more than one day to complete each 30(b)(6) deposition.  Thus, MDLC respectfully suggests that the Manufacturing Defendants 30(b)(6) issues are inextricably intertwined with GC's concerns over multiple tracked depositions.

Considering the foregoing, MDLC suggests that a limitation on the scope of certain discovery on merits issues and allowing the discovery only on specified terms and conditions will resolve all parties' concerns while maintaining the class certification hearing deadline.

---

[2]     Under the standing Pre-Trial Order, six weeks are allotted to conduct non-expert depositions, with three weeks each for the Plaintiffs and Defendants.  (Rec. Doc. No. 287)

## II.      LAW AND ARGUMENT

### 1.      Federal Rules of Civil Procedure Rule 26

Federal Rules of Civil Procedure Rule 26 provides that parties may obtain discovery regarding any matter, not privileged, which is relevant to the issues raised by the claims or defenses of any party.  Fed. R. Civ. P. 26(b).  The Rule further instructs that:

> Upon motion by a party or by the person from whom discovery is sought ... and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the disclosure or discovery not be had;
>
> (2) **that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or plac**e;
>
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>
> (4) **that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters**;…

Fed. R. Civ. P. 26(c)(emphasis added).

Whether discovery will be allowed in connection with a motion for class certification lies within the discretion of the trial court.  *Stewart v. Winter*, 699 F.2d 328, 331 (5th Cir. 1982).  As noted by the *Stewart* Court:

> In light of the mandate of Rule 23(c)(1) that a certification determination be made "[as] soon as practicable after the commencement of [the] action," we think it imperative that the district court be permitted to limit pre-certification discovery to evidence that, in its sound judgment, would be "necessary or helpful" to the certification decision.  Our prior decisions make it clear, however, that in most cases "a certain amount of discovery is essential in order to determine the class action issue and the proper scope of a class action."

*Stewart*, 699 F.2d at 331 (citing *Pittman v. E.I. DuPont de Nemours & Co.*, 552 F.2d 149, 150 (5th Cir. 1977)).  Providing more guidance, the Manual for Complex Litigation, Third (1995) instructs, in part:

> The determination whether the prerequisites of Rules 23(a) and (b) are satisfied can generally be made on the pleadings and declarations, with relatively little need for discovery. To the extent discovery is needed prior to the certification hearing, it should be directed at the named parties; only upon a demonstration of need-for example, where persons are identified as having information relevant to certification issues-should discovery of putative class members be permitted. If discovery is needed, the court may want to (1) impose appropriate limitations on the number and scope of depositions and other discovery directed at class representatives, and (2) establish a limited time period within which to conduct specific class-related discovery.

Manual for Complex Litigation, Third (1995), p. 215.

**2.     Class Certification Discovery**

As previously noted, the dispute made the subject of this Motion for Protective Order concerns the scope of the manufacturing defendant deposition discovery sought by PLC.  In turn, the broad scope of the depositions increases the amount of time necessary for each manufacturing defendant deposition.  This, in turn, further taxes the limited GC resources. MDLC will begin by identifying the Manufacturing Defendant 30(b)(6) Notice issues, and then suggest an alternative solution to the problems.

**a.     Manufacturing Defendant 30(b)(6) Notice**

Initially, MDLC wishes to emphasis that both parties have made concessions concerning the draft sixteen-page Manufacturing Defendant 30(b)(6) Notice and this cooperation has resulted in only limited points of contention.  For the most part, the points of contention focus on whether the topics are necessary for class certification, as opposed to merits discovery.  For example, topic number five of the draft Notice reads as follows:

5.      **Health Issues and Concerns:**

    a.    The circumstances through and under which you first became aware of any health hazards associated with exposure to formaldehyde and/or urea-formaldehyde-based resins.

    b.    The circumstances through and under which you first became aware of the existence of formaldehyde levels exceeding 0.008 ppm in the THUs provided to those persons displaced by hurricanes Katrina and Rita from August 29, 2005 to the present.

    c.    The circumstances through and under which you first became aware of the existence of formaldehyde levels exceeding 0.03 ppm in the THUs provided to those persons displaced by hurricanes Katrina and Rita from August 29, 2005 to the present.

    d.    Studies concerning the health effects of formaldehyde emissions in THUs including, but not limited to, studies by FEMA, CDC, ATSDR, OTPER, OSHA and NIOSH, and any non-governmental entity.

    e.    What you understand or consider to be a safe level or safe levels of formaldehyde concentrations in indoor air for residents or users of THUs, and any and all studies, publications, reports, testing, and test results utilized to identify or support your understanding of this level or these levels.

    f.    Your understanding of and familiarity with the government's position that "research is continuing on the possible long-term effects of exposure to formaldehyde" pursuant to representations made in 24 C.F. R. § 3280.309.

    g.    All health, medical, or scientific research, literature, journals, publications or material with respect to any potential health effect associated with formaldehyde or formaldehyde-based resins.

    h.    Steps taken to coordinate with any manufacturer or supplier to resolve concerns about formaldehyde emissions in THUs.

Draft Manufacturing Defendant 30(b)(6) Notice.[3]

---

[3]    MDLC has not attached this draft notice as an exhibit inasmuch as PLC is revising the Notice to incorporate agreements reached at the discovery conferences.  If the Court desires a complete copy of the Notice, it will be provided.

6

PLC contends that the foregoing issues are pertinent and necessary to establish commonality at the certification hearing.  Upon information and belief, PLC contends that by examining these areas the PLC may be able to establish a common issue by showing that all, or a vast majority, of the manufacturing defendants shared a common knowledge concerning formaldehyde and presumably safe levels of exposure.  Thus, as MDLC understands the argument, PLC asserts that the proposed areas of inquiry are essential and relevant to the commonality issue to be heard by Court at the class certification hearing.

Contrarily, MDLC asserts that each individual defendant's corporate knowledge concerning formaldehyde, formaldehyde's alleged health hazards at various levels of exposure and research on the foregoing has absolutely no relevance to the question of class certification. Certainly, some of the issues might be of interest to PLC when conducting merits discovery. Nonetheless, there is no basis for inquiring into these areas for the purposes of class certification. Further, MDLC asserts that PLC's suggestion that such areas are not directed to merits, but rather class certification commonality issues, is illusory.  In their May 15, 2008 Position Paper on Elements of Class Certification, Plaintiffs failed to identify or discuss as an issue the manufacturing defendants' alleged "collective" knowledge of formaldehyde and presumably safe levels of exposure.  (*See* Plaintiffs' Position Paper on Elements of Class Certification, attached to the Motion for Protective Order on Merits Discovery as Exhibit "B").  Certainly, if the Court is to accept the PLC's assertion that such knowledge could establish commonality at the class certification hearing, the converse is true: disparate knowledge among the defendant manufacturers on these issues establishes the inadequacy of the class action vehicle for resolving these actions.

Likewise, section 1(k) of the draft Notice seeks:

k.      Whether, if at the levels seen in THUs as a result of the CDC testing, the health of class members could be affected.

Draft Manufacturing Defendant 30(b)(6) Notice.

This topic seemingly will be a legal determination made the subject of extensive expert testimony.  Much like the health issues and concerns above, MDLC suggests that this area of testimony does not assist the court in determining the class certification issue.  For the same reasons argued above, this topic is best left for later merits discovery.

Finally, section 6(f) of the draft Notice seeks:

f.      Communications internally and/or by or between any local, state, or federal governmental agency, members of Congress, and/or members of the Executive Branch of government, Defendants, manufacturers and/or suppliers of THUs regarding providing housing to individuals displaced by hurricanes Katrina and Rita.

Draft Manufacturing Defendant 30(b)(6) Notice.

Simply stated, MDLC contends that any communications between the individual manufacturing defendants and the various governmental entities does nothing to further the class certification issue.  Again, some of these inquiries ultimately may have relevance to merits discovery.  However, at this time such inquiries fail to promote an efficient use of the most limited resource of all parties: time.

By limiting the PLC's Manufacturing Defendant 30(b)(6) Notice to class certification issues, the amount of time needed for each deposition, as well as the number of deponents necessary, will be greatly reduced.  Thus, more depositions will be completed in the available time frame.  Moreover, these deponents can be spread over more days, alleviating the need for excessive multiple tracks.  Regardless of whether the class is ultimately certified, merits discovery can be supplemented and completed after the certification hearing.

8

**b.      No Discovery is Necessary Because All Class Certification Issues are Evident from the Pleadings**

The case law in this Circuit clearly holds that pre-certification discovery is not required when resolution of class certification issues under Rule 23(a) and (b) is evident from the pleadings and other available information before the court.   In several instances, courts have severely limited or denied requests for class certification discovery where, as here, the decision on certification was apparent from the parties' submissions.   Furthermore, where

In *Stewart*, 669 F.2d at 331, the Fifth Circuit considered the propriety of the district court's denial of extensive, merits related discovery that was sought by the plaintiffs in support of their motion for class certification.   The court noted that it was proper for the district court to deny plaintiffs' discovery requests because it would have resulted in extensive document production relating to all aspects of the case.   *Id.*   The court also upheld the district court's refusal to permit merits discovery in the context of class certification discovery, stating:

> While much of [plaintiffs' discovery requests] may have been relevant to the merits of the class claims, very little of it could have been necessary or helpful to determining the threshold issues posed by Rule 23(a) and (b). Enforcing plaintiffs' sweeping request would have imposed on defendants one of the major burdens of defending this omnibus class action prior to any determination that the action was maintainable as such.

*Id.* at 332.  The *Stewart* court also held that it was proper to deny the plaintiffs' motion for class certification absent any discovery because that case was "one of those where the decision on certification of the class action **can properly be made upon the information afforded in the pleadings**.  *Id*. (emphasis added) (*citing*, *Huff v. N.D. Cass. Co.*, 485 F.2d 710, 713 (5th Cir. 1973) (en banc)).  Therefore, under *Stewart*, plaintiffs may not request overly burdensome, merits-based discovery at the pre-certification stage, and the court may make a determination on class-certification issues without requiring discovery on class certification issues.

9

Several courts in this Circuit have similarly limited the scope of class certification discovery, particularly where the pleadings allowed for a determination of the class certification issues.  In *Blair v. Source One Mortgage Services Corp.*, 1997 WL 79289, 96-24971997 WL 79289 (E.D. La. 2/24/97), attached hereto as Exhibit "C," this court considered whether the defendants were required to respond to extensive discovery propounded by plaintiffs prior to a determination of class certification issues.  The *Blair* court, citing from the Manual for Complex Litigation, Third (1995), and relying on *Stewart*, recognized that the extent and scope of class certification discovery "lies within the discretion of the trial court."  *Id*. at *1-2.  The court further impliedly recognized the benefit of denying merits discovery until resolution of class certification issues.  *Id*.  As such, the court ordered the parties to develop a pre-certification discovery plan and stated that "there might not even be a need for discovery prior to the class certification motion."  *Id*. at *2.  *See also Huff v. N.D. Cass. Co. of Alabama*, 485 F.2d 710, 713 (5th Cir. 1973) (recognizing that class certification decision may be based solely upon the pleadings); *Chevron USA, Inc. v. Vermilion Parish School Board*, 215 F.R.D. 511, 516, fn. 5 (W.D. La. 2003) (citing *Stewart* and recognizing that the denial of class certification discovery is proper when the decision on class certification can properly be made upon the information afforded in the pleadings).

In the present case, the pleadings allow a determination of all the class certification issues.  In fact, Plaintiffs' Position Paper on Elements of Class Certification makes clear that no pre-class certification discovery is necessary, <u>particularly from the defendants.</u>

### i.      Predominance and Superiority Under Rule 23(b)(3)

Under Rule 23(B)(3), the court is required to determine if "the questions of law or fact common to class members predominate over any questions affecting only individual members,

10

and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Plaintiffs' position paper enumerates all of the questions of law and fact necessary for the Court can make this determination without discovery.

In their position paper, plaintiffs state:

a. "[T]here are obviously many and varying circumstances attaching to the exposure and effects to the occupants of the trailers and mobile homes involved in these claims; …."

b. "All of the housing units where provided to putative class members by FEMA."

c. "Plaintiffs believe that the defendant manufacturers deviated in the same manner from specifications by the governmental purchaser."

d. "The governmental contractor defense is common to all plaintiffs and all manufacturers."

e. "[C]laimants were exposed at different levels, over varying lengths and under myriad conditions, …."

f. "Admittedly, there are different damages sustained by class members."

Exhibit B, pp. 1-2.

The facts, issues and defenses provided by the plaintiffs allow the Court to make a determination under Rule 23(b)(3).  The Court simply has to look at the information in the submissions and determine if the common questions of law and fact (*i.e.* general causation related to formaldehyde exposure) predominate over the questions affecting the individual class members (*i.e.* differences in specific causation, exposure, duration, damages, and liability of different defendants).   In short, plaintiffs have presented the Court with all of the facts, issues and information it needs to determine if the requirements of Rule 23(b)(3) and no discovery would be "necessary or helpful" to this determination.

11

ii.      **Rule 23(a) Requirements**

Under Rule 23(a), the Court must determine whether the numerosity, commonality and typicality requirements are satisfied, and that the representative parties will fairly and adequately represent the interests of the class. Once again, the plaintiffs' position paper provides the court with all the information necessary to decide these issues.

Plaintiffs state that "[t]here are tens of thousands of victims of governmental misconduct, manufacturer negligence and product liability who will fall within the class definition …." Plaintiffs' Position Paper at p. 3. Additionally, plaintiffs' Master Complaint lists numerous plaintiffs who have already filed suit and which are now included in this MDL. Given these facts, the Court should be able to determine whether the numerosity requirement is satisfied without requiring discovery, particularly from the defendants.

Plaintiffs also provide in their position paper that "[a]ll members of the proposed class were provided with similar housing units, each with identical defect, i.e. exposure to occupants of unsafe levels of formaldehyde" and that the "toxic effects of formaldehyde are common to all exposed subjects …." Given these statements, and the prior statements enumerating the obvious differences in the specific exposure levels, symptoms, and damages, as well as the *different* defendants who may be liable to the *different* individual plaintiffs, the Court clearly can make the commonality determination based upon the pleadings, and no further discovery <u>from the defendants</u> would be necessary or helpful to this determination.

If plaintiffs assert that there is some need for discovery from the defendants to determine the similarity of defendants' actions or omissions, the defendants would remind the Court that this is not an action that seeks certification of a class of defendants. In fact, as the Court will have already observed, any single plaintiff should only have a claim against a single

12

manufacturing defendant inasmuch as a plaintiff will only have resided in one unit. Therefore, similar relationships between and among the various manufacturing defendants is entirely irrelevant to class certification.

Plaintiffs have also presented sufficient information for the Court to make a determination on the typicality requirement. Plaintiffs state that "all class members, victims of a horrendous natural event were again victimized by a Federal agency and its suppliers" and that they were "knowingly subjected to a toxic hazard …." Once again, these statements are sufficient for the Court to determine if the representatives claims are typical of the proposed class. At the very least, plaintiffs' statements show that there is no need for discovery <u>from the defendants</u>.

Finally, plaintiffs state that "the PLC will offer class representatives as required to comply with [the Adequacy] requirement. Clearly, no discovery is necessary or relevant <u>from the defendants</u> to determine if this requirement is satisfied.

### iii.    Rule 23(b)(2) Requirements

Under Rule 23(b)(2), the Court must determine whether "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Once again, plaintiffs' own statements make this determination appropriate on the pleadings.

Plaintiffs state that "the harm done to the class … is ongoing" and that the "harm may be mitigated by court ordered … injunctive or declaratory relief." Plaintiffs' further state that these remedies "can be invoked to protect the long term health of the adult and children victims of formaldehyde exposure." Exhibit "B" at p. 4. Once again, plaintiffs have provided the necessary information for the Court to determine whether the requirements of Rule 23(b)(2) are

13

satisfied.  The Court simply has to look at the proposed injunctive relief and determine if it is appropriate respecting the class as a whole.

As provided in *Stewart* and other cases in this Circuit, the class certification issues in this case may properly be decided by the plaintiffs' own pleadings.  Therefore, discovery is not necessary on class certification issues, particularly <u>from the defendants</u>.

### c.       <u>Proposed Solution to the Multiple Deposition Track Issue</u>

Currently, sixty-seven manufacturing defendants have been identified in the MDL cases. Additionally, nine non-party depositions have been noticed.  Due to the scope of the 30(b)(6) deposition notices for both the parties and the non-parties, PLC admits that more than one day will be necessary for each Notice.  Presumably, a representative plaintiff will be provided for at least each defendant.  Thus, assuming seven hours of deposition for each plaintiff deponent and two days for each manufacturing defendant and non-party deposition, a minimum of two hundred nineteen deposition days will be required to complete the depositions, not including travel days.  When the depositions are spread over the currently available six weeks, this results in over seven deposition tracks.

MDLC suggests that the parties have already taken steps to alleviate some of the issues by working to extend the discovery deadlines and grouping depositions to occur in the same location.  However, MDLC suggests that limiting the time allowed for each deposition, as well as limiting the scope of each deposition as discussed above, will ensure that the parties complete class certification discovery before the class certification hearing deadline.  MDLC suggests that each deponent, both plaintiff and defendant, be limited to four hours of examination, with a maximum of two depositions scheduled per location per day.  By this limitation, sixty depositions on a single track can be completed even holding to the current six-week limitation in

14

Pre-Trial Order No. 8.  With these limitations, double tracking the depositions over ten weeks will allow two hundred manufacturing defendant, non-party and representative plaintiff depositions to be completed before the certification hearing.


### III.   CONCLUSION

**WHEREFORE,** considering the foregoing, Manufacturing Defendants Liaison Counsel respectfully requests that this Honorable Court issue an Order limiting the scope of Plaintiffs' 30(b)(6) depositions of the manufacturing defendants to class certification issues by striking the topics identified herein and that all class certification depositions (plaintiff and defendant) be limited to four hours of examination, with a limit of two depositions per location, per day.


Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS, PFISTER & WEINSTOCK**

s/Andrew D. Weinstock

_____
**ANDREW D. WEINSTOCK #18495**
**JOSEPH G. GLASS #25397**
3838 N. Causeway Blvd., Suite 2900
Metairie, LA 70002
(504) 832-3700

# **C E R T I F I C A T E**

I hereby certify that on the 1st day of July, 2008, a copy of the foregoing Memorandum in

Support of Motion for Protective Order on Merits Discovery was filed electronically with the

Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by

operation of the court's electronic filing system and all other counsel of record via e-mail and

U.S. Mail.

s/Andrew D. Weinstock

_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com