UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER  			MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION		SECTION N-4
                                                                      JUDGE ENGELHARDT
                                                                      MAG. JUDGE ROBY

*************************************************************************

**PLAINTIFFS' POSITION PAPER ON
ELEMENTS OF CLASS CERTIFICATION**

**I.    PREDOMINANCE AND SUPERIORITY UNDER RULE 23(B)(3)**

In the absence of discovery and expert investigation, these issues are clearly not ripe for adjudication. However, even at this stage, some issues clearly predominate, suggesting that class management is likely superior to the litigation of tens of thousands of individual claims. While there are obviously many and varying circumstances attaching to the exposure and effects to the occupants of the trailers and mobile homes involved in these claims, it seems likely that the distinctions may be without significant difference.

All of the housing units involved were provided to putative class members by FEMA. These units were made available in lieu of housing subsidies otherwise available under Federal regulations. Plaintiffs believe that the defendant manufacturers all deviated in the same manner from specifications mandated by the governmental purchaser. The governmental contractor defense is common to all plaintiffs and all manufacturers. Similarly, pursuant to the uniform program of

-1-

provision and delivery of the units to putative members, it appears that the "discretionary function" defense asserted by the government will be determined under common legal principles and identical facts.

Further, as preliminary investigation has indicated to the PLC, levels and duration of exposure from all such units were sufficient to cause the symptoms and increased risk of cancer claimed by all class members. The fact that claimants were exposed at different levels, over varying lengths and under myriad conditions, will likely prove irrelevant to the ultimate issue of causation of the respiratory symptomology, respiratory diagnoses, increased risk of carcinogenicity and concomitant fear of cancer. Stated differently, if the dose to all members of the class is demonstrated to be sufficient to cause the injuries claimed, then the variations of dose will likely be deemed irrelevant.

The variations in state law should not prove impediment to class certification. Should there be significant differences in the burden of proof as among the citizens of the four states sought to be included in the class definition, sub-classing and appropriate jury interrogatories will suffice to manage the differences. Similarly, class sub-grouping can likely efficiently cope with _real_ distinctions among class members, such as occupants of trailer homes versus those of mobile homes. After completion of expert input and adequate discovery, the PLC will suggest class and sub-class definitions so as to manage any distinction with significant difference.

Admittedly, there are different damages sustained by class members. Such differences are not necessarily a bar to class certification. The cases are legion in holding that superiority of management by class certification is not defeated by the possibility of individual trials of damages after trial of predominant common issues.

**II.     RULE 23(A) REQUIREMENTS**

The prerequisites of Rule 23(a) are clearly met in plaintiffs' request for class certification.

1. NUMEROSITY

There are tens of thousands of victims of governmental misconduct, manufacturer negligence and product liability who will fall within the class definition(s) which will be sought herein. By the time of the certification hearing, the claims on many thousands of victims <u>will have been timely perfected under the Federal Torts Claims Act</u>.

2. COMMONALITY

All members of the proposed class were provided with similar housing units, each with the identical defect, i.e. exposure to occupants of unsafe levels of formaldehyde. The toxic effects of formaldehyde are common to all exposed subjects at the levels and prolonged occupancy experienced by class members. The risk of future disease cannot likely be distinguished among the class members, all of whom have been exposed to unsafe levels of the same toxin. The defenses of the government and manufacturers are common to all class members, since the availability of such defenses will hinge on the actions of the defendants rather than those of individual members of the class.

3. TYPICALITY

The experiences of the proposed and to be proposed class representatives are typical of the class and sub-class members for whom they will provide representation. Indeed, all class members, victims of a horrendous natural event were again victimized by a Federal agency and its suppliers. They were knowingly subjected to a toxic hazard without means or knowledge to protect themselves. There is no "Noah-like" tabulation which requires a matching of class representative

to each defendant. Rather, all that is required by Rule 23(a)(3) is that the class representative's claims be typical of and without conflict of interest to the claims of the class or sub-class. To the extent necessary the PLC can offer representatives to achieve the intent of the rule.

    4.    ADEQUACY

This rule really addresses the issue of conflict of interest. The proposed class representative must not have interests which are antagonistic to those of the class. The PLC will offer class representatives as required to comply with this requirement.

### III.   ECONOMIC LOSS

Having been deprived of the safe housing which the government tendered in the form of trailers and mobile homes which were not fit for their intended use, the class (or the heads of family sub-class) make claims against the government and manufacturer defendants for economic loss. Such loss can likely best be computed by reference to the loss of housing subsidy that would have been available but for the tender of the housing units at issue. Certification of a class for the purpose of resolving this claim is even less problematic than that of personal injury issues. Here, the liability and damage issues are common. The amount of economic loss to each family can be computed by a formula common to the entire class.

### IV.   RULE 23(B)(2) INJUNCTIVE RELIEF

The harm done to the class by the government and manufacturer is ongoing. This harm may be mitigated by court ordered programs in the form of final injunctive or declaratory relief. This Court's equitable powers, with or without supporting state remedies, can be invoked to protect the long term health of the adult and children victims of formaldehyde exposure. While the PLC and its experts are still investigating the long term health implications of the class members' exposures,

some potential remedies seem justified.  The negligent parties responsible for the risk of future disease, teratogenic risk and genetic damage inherent in this exposure should be held accountable and required to fund appropriate research and monitoring to mitigate these health concerns.  See e.g. Scott v. American Tobacco Company, et al. _____ So.2d     (4th Cir. 200  ), writ denied    So.2d (200 ).

There is a sub-group of the class who are continuing to occupy unsafe trailers and mobile homes for whom injunctive relief may be appropriate and required to provide safe alternative facilities.  The extent of this problem and possible remedies is under investigation.

## CONCLUSION

Class certification is a viable management tool, available to this Court to assist in the resolution of the claims of tens of thousands of similarly situated putative class members. Certification is far superior to the filing of individual suits and will be conducive to the resolution of the predominant issues, including defenses.  It is likely that rulings common to all class members will result in amicable disposition of remaining individual damage claims.

    Respectfully submitted:

    **FEMA TRAILER FORMALDEHYDE**
    **PRODUCT LIABILITY LITIGATION**

    BY:    s/Gerald E. Meunier
             GERALD E. MEUNIER, #9471
             **PLAINTIFFS' CO-LIAISON COUNSEL**
             Gainsburgh, Benjamin, David, Meunier &
             Warshauer, L.L.C.
             2800 Energy Centre, 1100 Poydras Street
             New Orleans, Louisiana 70163
             Telephone:    504/522-2304
             Facsimile:    504/528-9973
             gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        jwoods@gainsben.com


        **COURT-APPOINTED PLAINTIFFS'**
        **STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON, #9938
        RONNIE PENTON, #10462

## CERTIFICATE OF SERVICE

    I hereby certify that on May 15, 2008, I electronically mailed the foregoing to Andrew D. Weinstock, Esq., Liaison Counsel for all Non-Governmental Defendants and to Henry Miller, Esq. And Michelle Boyle, Attorney at Law, Counsel for Governmental Defendants.

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713