**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

IN RE: FEMA TRAILER                )     **MDL NO. 1873**
      FORMALDEHYDE PRODUCTS   )     **SECTION "N" (4)**
      LIABILITY LITIGATION         )
                                   )     **JUDGE ENGELHARDT**
                                   )

## MANUFACTURING DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR JOINT RULE 12(B)(6) MOTION TO DISMISS [DOC. NO. 210]

The Manufacturing Defendants[1] respectfully submit this Reply Brief in further support of their Joint Rule 12(b)(6) Motion to Dismiss [Doc. No. 210].

## Argument and Citation of Authority

### I.   Plaintiffs Have Argued Under the Incorrect Motion to Dismiss Standard.

In their Opposition [Doc. 349], Plaintiffs, either inadvertently or through design, fail to set forth the appropriate standard regarding Rule 12(b)(6) motions to dismiss. Plaintiffs incorrectly instruct this Court that it "may dismiss a complaint 'only if it appears certain that the plaintiff[s] cannot prove any set of facts in support of [their] claim that would entitle [them] to relief.'" *See* Mem. Opp'n [Doc. No. 349] at 2. To the contrary, the United States Supreme Court has abrogated the traditional test found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) with its ruling in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Now, plaintiffs must state a "plausible claim" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. at 1974.[2]

---

[1]     As defined in their Joint Rule 12(b)(6) motion [Doc. No. 210].

[2]     Courts in each state at issue in this case have applied the *Twombly* standard. *See Coggins v. Abbett*, No. 3:08-CV-262, 2008 U.S. Dist. LEXIS 47372, at *12-13 (M.D. Ala. June 18, 2008); *Commodity Futures Trading Comm'n v. Uforex Consulting, LLC*, No. 07-0046, 2008 U.S. Dist. LEXIS 37122, at *1 (W.D. La. Apr. 2, 2008); *Elam v. Pharmedium Healthcare Corp.*, No., 2:07-CV-212-P-A, 2008 U.S. Dist. LEXIS

With its holding in *Twombly*, the Supreme Court "retired" the "no set of facts" test, stating instead that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief **requires more than labels and conclusions**, and a **formulaic recitation** of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . .
>
> * * *
>
> Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests. [As set forth in Wright & Miller § 1202, at 94, 95], Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it."

*Twombly*, 127 S. Ct. at 1964-65 (citations omitted).

Given Plaintiffs' fundamental mistake concerning the applicable standard regarding a 12(b)(6) motion to dismiss, it is not surprising that Plaintiffs appear to believe they have sufficiently pled claims for breach of warranty, economic loss, and medical monitoring. But this mistake does not cure the deficiencies in the Administrative Master Complaint ("AMC").[3]

## II.   Plaintiffs Are Precluded From Recovering For Breach Of Warranty As A Matter of Law.

As set forth in the Joint Motion to Dismiss, the applicable Mississippi, Alabama, Texas, and Louisiana law bar Plaintiffs' claims for breach of warranty. Fundamentally, Plaintiffs' claims for breach of express warranty are barred in all states because Plaintiffs have not

---

35509, at *2-3 (N.D. Miss. Apr. 18, 2008); *In re Enron Corp. Sec.*, No. H-01-3624, 2008 U.S. Dist. LEXIS 21560, at *27-29 (S.D. Tex. Mar. 19, 2008).

[3]     On June 23, 2008, Plaintiffs filed their First Supplemental and Amended Master Complaint [Doc. No. 379]. The amendments to the Master Complaint are not material to the Manufacturing Defendants' Joint Rule 12(b)(6) Motion to Dismiss.

sufficiently alleged that the Manufacturing Defendants made any affirmation that constitutes an express warranty. To the contrary, Plaintiffs' bare, formulaic allegation that there were "express factual representations upon which the claimant justifiably relied," *see* AMC ¶ 151, does not meet the *Twombly* pleading standard. In addition, Plaintiffs' other breach of warranty claims are largely barred by the laws of the four forum states respectively for the various reasons set forth below.

      A.    *Mississippi*

At the outset, Defendants note that Plaintiffs mischaracterize their argument. Plaintiffs say that in essence, Defendants argue that warranty claims must fail because there is no privity between manufacturers and Plaintiffs. However, that is not the argument Defendants make. Defendants concede that privity is not a necessary element of a warranty claim, pursuant to Mississippi Code Section 11-7-20. That does not mean, however, that a plaintiff can bring a claim if she is not a purchaser. While the abolishment of privity gives the end purchaser greater leeway to pursue the proper manufacturer, the plaintiff must still be a purchaser. *See* MISS. CODE ANN. § 75-2-314(1) (emphasis added). As stated in Defendants' original motion, an implied warranty of merchantability is only implied in "a <u>contract of sale</u>." *Id*.

Furthermore, the case cited by Plaintiffs, *Cochran v. Rockwell Int'l Corp.*, 564 F. Supp. 237 (N.D. Miss 1983), is distinguishable from the instant case. In *Cochran*, the plaintiff was the employee of the employer-purchaser of an aircraft. As an employee, he occupied a special position that the Plaintiffs in this case do not occupy. The United States Court of Appeals for the Fifth Circuit has long recognized, going back to the days when privity was required in Mississippi, that employees should be viewed as standing in the shoes of their employer "and thus [they go] beyond the reach of the general rule requiring privity in breach of warranty actions

arising out of product-caused injuries." *Necaise v. Chrysler Corp.*, 335 F.2d 562, 570 n. 15 (5th Cir. 1964). Though privity is no longer required, employees still occupy a special position in regards to the implied warranty of merchantability. Though normally the doctrine requires the plaintiff to be a purchaser, employees are able to circumvent that rule, as we see in *Cochran*. Plaintiffs in this case stand in stark contrast to that rule—they occupy no privileged position that allows them to skirt the requirement of being purchasers. Without that status, they have no standing to bring a warranty claim under Mississippi law.

Turning next to Plaintiffs' reliance argument, Plaintiffs claim that the reliance element required to state a claim for breach of implied warranty may be implicit—but Plaintiffs do not cite to any allegation or any portion of the record that could be construed as an implicit allegation. Although Plaintiffs assert that "it is now clear in the record that the federal government relied on the manufacturers' skill and judgment to provide a safe product in purchasing the housing units to be used by plaintiffs," Mem. Opp'n at 4, Plaintiffs do cite to the record in this case.

Additionally, as set forth in Defendants' Joint Motion to Dismiss, applicable Mississippi law bars any claim for breach of implied warranty of fitness for a particular purpose. The warranty of fitness does not apply where a plaintiff does not have contact with the defendant when purchasing the product because under such circumstance the plaintiff could not have relied on the skill or knowledge of the defendant in picking the product. *Albritton v. Coleman Co.*, 813 F. Supp 450, 455 (S.D. Miss. 1992); *Austin v. Will-Burt Co.*, 232 F. Supp. 2d 682, 687 (N.D. Miss. 2002). Plaintiffs have not alleged that any Plaintiff had any contact with any Manufacturing Defendant during the "conveyance" by FEMA of the Subject Units to Plaintiffs.

Without such contact, Plaintiffs could not have relied on the representations, skill, or knowledge of any Manufacturing Defendant.

With respect to Plaintiffs' breach of express warranty claims, Plaintiffs have not alleged that any Manufacturing Defendant made an express affirmation regarding the Subject Units. In support of their Memorandum in Opposition, Plaintiffs seem to think that it is critical that the *Austin v. Will-Burt Co.* case cited in Defendants' Joint Motion turned on the fact that the plaintiffs there could not *prove* that the plaintiffs *relied* on any alleged express affirmation made by the seller of goods. *Austin v. Will-Burt Co.*, 232 F. Supp. 2d 682 (N.D. Miss. 2002). Plaintiffs are correct that a motion to dismiss turns not on proof, but, rather, on the sufficiency of the allegations. But here, although alleging breach of express warranty, Plaintiffs have not sufficiently alleged that *any* Manufacturing Defendant ever made *any* affirmation. It is axiomatic that a statement that is never made cannot be relied upon.

Plaintiffs further argue that, under Mississippi law, affirmations need not be communicated directly to the buyer by the seller to induce purchase, relying on *Forbes v. General Motors Corp.* to support this proposition. *See* Mem. Opp'n at 5. But the *Forbes* case involved an allegation of breach of an express warranty in an owner's manual, which was relayed to the purchaser of a vehicle by the salesman. *Forbes v. Gen. Motors Corp.*, 935 So. 2d 869, 875 (Miss. 2006). The court there was unmoved by the fact that the buyer did not read the warranty regarding the driver-side air bag because it was clear that the buyer relied on the salesman's statement in purchasing the vehicle, and, in fact, paid more to purchase a vehicle with an air bag. *Id.*

Here, there is no allegation of any specific communication by the Manufacturing Defendants beyond the formulaic recitation of the elements. While Plaintiffs imprecisely allege

that there were "express factual representations upon which the claimant justifiably relied," *see* AMC ¶ 151, this bare, formulaic recitation fails the plausibility standard for showing that a plaintiff is entitled to relief as set forth in *Twombly*.

B.     *Alabama*

Plaintiffs admit that they "arguably cannot recover" for purely economic loss on a breach of warranty theory when there is no privity of contract, see Memo. Opp'n at 6, which is a position supported by case law. *Barre v. Gulf Shores Turf Supply, Inc.*, 547 So. 2d 503, 504 (Ala. 1989); *Rampey v. Novartis Consumer Health, Inc.*, 867 So. 2d 1079, 1087 (Ala. 2003). With that concession, Plaintiffs focus on an exception for personal injury claim. But Plaintiffs have not met the *Twombly* standard for pleading personal injury. By relying on the allegation that "plaintiffs have suffered and will continue to suffer damages . . . for past and future physical pain and mental suffering . . . medical expenses . . . physical impairments and disability," Plaintiffs have asserted just the sort of "bare averment" of labels and conclusions rejected by the Supreme Court in *Twombly*. *See* Mem. Opp'n at 6.

Plaintiffs make the blanket assertion that they have suffered physical injury, yet in all the 76 pages of the Amended Master Complaint, they have not alleged a single actual injury caused to any named plaintiff. Rather, Plaintiffs make the bare assertion that they want relief and are therefore entitled to it. Such insufficient pleading does not meet the standard set forth by the Supreme Court of the United States. Because Plaintiffs have not sufficiently plead any personal injury, and privity is required to recover economic loss under breach of warranty, Plaintiffs' breach of warranty claims should be dismissed under Alabama law.

Additionally, as there was no statement or affirmation made by any Manufacturing Defendant to support a breach of express warranty claim, such should also be dismissed for that

reason as well. Plaintiffs' lengthy attempt to distinguish *Ex Parte General Motors Corp.* is both unavailing and unnecessary. It matters not that the law of Alabama may hold that third-party beneficiaries can satisfy the reliance element regarding breach of warranty.  It is unnecessary to embark upon an inquiry of whether there has been reliance where, as here, there has been no statement or affirmation in the first instance upon which any purchaser or end-user may or may not have relied.[4]  Plaintiffs should not be permitted to proceed to discovery on this point when they cannot even sufficiently aver reliance.

  C.  *Texas*

  In arguing that Texas supports the right of a non-buyer to recover for breach of warranty, Plaintiffs rely on *Garcia v. Texas Instruments, Inc.*, 610 S.W.2d 456 (Tex. 1980). But *Garcia* merely holds that privity is not a requirement to recover for *personal injury* claims under a theory of breach of implied warranty. As discussed *supra*, Plaintiffs have not met the applicable pleading standard under *Twombly* in alleging personal injuries. Additionally, Plaintiffs apparently concede that, under Texas law, they cannot recover for economic damages because they were not in privity with the Manufacturing Defendants. As a result, since Plaintiffs have not sufficiently pled personal injuries, and they cannot recover for economic damages under their breach of implied warranty claims, Plaintiffs' breach of warranty claims should be barred in their entirety under Texas law.

  Neither can Plaintiffs recover for breach of express warranty. It matters not whether Texas law allows a third-party beneficiary to recover for breach of express warranty. Rather, where, as here, there has been no statement or affirmation in the first place, there is nothing upon

---

[4]  The Manufacturing Defendants further specifically deny any reliance upon any such statement or affirmation by either the federal government or Plaintiffs.

which a buyer or end-user may rely. Thus, as set forth *supra*, Plaintiffs' claims for breach of express warranty should be dismissed under Texas law.

      *D.    Louisiana*

      Contrary to what Plaintiffs assert in their Memorandum in Opposition, it does not matter that the *Caboni v. General Motors Corp.* case involved a genuine issue of material fact that went beyond the pleadings. *See* Mem. Opp'n at 10. In *Caboni*, the 5th Circuit Court of Appeals found that a reasonable jury could find that an excerpt from the owner's manual of a pickup truck created an express warranty under the LPLA. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448 (5th Cir. 2002). The Court of Appeals found that "[a] reasonable jury could find that the passage [was] a 'representation' or 'statement of alleged fact' about the air bag system that 'represents' or 'affirms' that the air bag will meet a 'specified level of performance[.]'" *Id.* at 453. The Court of Appeals reversed the trial court's finding that the above provision did not create an express warranty under the LPLA. Here, Plaintiffs do not point to anything nearly so concrete as an owner's manual. Rather, Plaintiffs merely aver that there were "express factual representations upon which the claimant justifiably relied." *See* AMC ¶ 151. Such formulaic pleading fails the *Twombly* standard.

**III.   Plaintiffs' Claims For Recovery Under Strict Liability And Negligence Are Barred By The Economic Loss Doctrine.**

      Consequential, purely economic losses are barred by the economic loss doctrine. While Plaintiffs assert that they "do not seek recovery for damages to the products (trailers) themselves," see Mem. Opp'n at 13, other pleadings suggest they are still seeking economic losses, such as the loss of a housing subsidy.[5] Additionally, regarding any Plaintiffs who

---

[5]     Plaintiffs' Position Paper on Elements of Class Action Certification, submitted to the Court via e-mail on May 15, 2008 (not filed into the record), states that economic loss can be computed by references to the

allegedly bought their units, Plaintiffs seek "return of the purchase price with interest from the time it was paid, the reimbursement of the reasonable expenses occasioned by the sale and those incurred by the preservation of the housing units, [and] expenses incurred through mitigation of damages[.]" *See* AMC at p. 75.

It is not only damages for injury to the product itself that are barred by the economic loss rule—it is any type of economic loss. In *Zurich American Insurance Co. v. Hughes, Waters & Askanase, L.L.P.*, the Texas Court of Appeals ruled that a plaintiff's claims for cleanup work and spoiled food costs that resulted from the collapse of a wall were barred by the economic loss doctrine as purely economic losses. No. 11-05-00044-CV, 2006 Tex. App. LEXIS 6037, at *10 (Tex. App. July 13, 2006). In deciding that the plaintiff's claims were barred, the Court referred to several Texas cases barring various types of consequential economic damages under the economic loss doctrine. The types of consequential economic damages barred include: additional costs incurred because of a faulty fuel tank repair, credit damage and increased costs incurred because of that damage, litigation costs incurred because of a statement posted by a former employee on an internet bulletin board, and a contractor's claim for increased costs because of a gas company's failure to properly lay or mark pipelines. 2006 Tex. App. LEXIS 6037, at *7-8. Similarly, in *Bay Lines, Inc. v. Stoughton Trailers, Inc.* the Supreme Court of Alabama held that the plaintiff's claims for loss of investment in its trailers, the costs of delayed shipping and damaged freight, and other increased costs of doing business that resulted from defects in trailer panels were barred by the economic loss doctrine. 838 So. 2d 1013. 1019-20 (Ala. 2002). Therefore, to the extent Plaintiffs seek to recover for any purported loss of a housing subsidy under negligence or strict liability, such claims should be dismissed.

---

"loss of housing subsidy that would have been available but for the tender of the housing units at issue." (Pls.' Position Paper at 4.)

A.      *Mississippi*

Plaintiffs argue that Mississippi's economic loss doctrine does not apply to them because they allege personal injuries related to living in the trailers, not simply damage to the trailers themselves. Plaintiffs believe that their assertions of personal injury damages allow them to skirt the economic loss doctrine and recover their property damage.

Defendants believe that Plaintiffs misinterpret the effect of their personal injury allegations. While Plaintiffs are correct that the cases cited in Defendants' original motion do not involve claimants with personal injury, it does not follow that an allegation of personal injury renders the economic loss doctrine inapplicable. *Progressive Ins. Co. v. Monaco Coach Corp.*, No. 1:05-CV-37, 2006 U.S. Dist. LEXIS 21251 (S.D. Miss. Mar. 29, 2006); *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170 (S.D. Miss 1996); *State Farm Mut. Auto Ins. Co. v. Ford Motor Co.*, 736 So. 2d 384 (Miss. Ct. App. 1999). As the court said in *Progressive Insurance Co.,* "[t]he distinction the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff having an accident causing physical injury." 2006 U.S. Dist. LEXIS 21251 at *2; *East Miss. Elec. Power Ass'n v. Porcelain Prods. Co.*, 757 F. Supp. 748, 751 (S.D. Miss. 1990). When Plaintiffs cite *Progressive* against Defendants to argue that the economic loss doctrine does not apply "***because*** of the absence of any personal injury resulting from the alleged defect," Plaintiffs again misunderstand the impact of their personal injury allegations. *See* 2006 U.S. Dist. LEXIS 21251 at *5 (emphasis in Plaintiffs' brief). In that case, what was undermined by the lack of personal injury was the entire tort action itself, not the effect of the economic loss doctrine. The doctrine still nullified tort claims for purely economic loss.

In Mississippi, the economic loss doctrine simply holds that recovery in a tort-based products liability action is limited to damages for physical harm, thus excluding damages that are purely economic in nature. *Miss. Phosphates Corp. v. Furnace & Tube Serv.*, No. 1:07-CV-1140, 2008 WL 313770, *1 (S.D. Miss. Feb. 1, 2008). While tort claims for personal injury are preserved, those claims have no bearing on the effectiveness of the doctrine to block economic damages. The doctrine simply restricts tort recovery to personal injury; it is not activated or deactivated when a plaintiff happens to incur physical harm. *See Lyndon Property Ins. Co. v. Duke Levy & Assoc.*, 475 F.3d 268, 274 (5th Cir. 2007). Thus, Plaintiffs' tort claims for property damages are excluded under Mississippi's economic loss doctrine.

B.     Alabama

Similarly, Plaintiffs allege that Alabama's economic loss doctrine does not apply to them because they allege personal injuries, not simply damage to the trailers themselves. To the contrary, the economic loss doctrine bars tort recovery of economic loss where the damages alleged are consequential damages resulting from an "injury" or other damage to the product at issue. In *Bay Lines v. Stoughton Trailers*, 838 So. 2d 1013 (Ala. 2003), the court found that the plaintiff's alleged damages were unrecoverable under causes of action sounding in tort. There, the plaintiff sought recovery of consequential damages caused by defects in trailer panels. *Id.* Specifically, the court found that the fact that the plaintiff's alleged damages "including having to purchase replacement trailers and having to pay its customers for such problems as delayed shipping and damages freight" were barred under the economic loss doctrine. *Bay Lines*, 838 So. 2d at 1120. The Supreme Court of Alabama affirmed the trial court's dismissal of all tort claims under those circumstances.

Similarly, Plaintiffs' attempt to recover consequential damages related to alleged property damage under causes of action sounding in tort is barred by the application of Alabama's economic loss doctrine.

C.      *Texas*

Just as they did under Mississippi and Alabama law, Plaintiffs argue that the Texas economic loss rule does not bar their claims because they assert damages in excess of economic loss. And, just as they did under Mississippi and Alabama law, Plaintiffs overestimate the impact that their personal injury allegations have on the effectiveness of the doctrine.

Texas courts have adopted "the well developed notion that the law of contract should control actions for purely economic losses and that the law of tort should control actions for personal injuries." *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 82 (Tex. 1977). Those courts are also able to differentiate between tort claims that seek to recover purely economic damage and those that do not. In *Thompson v. Epsey Houston & Associates*, the plaintiff sued an engineering consulting firm for its role in the construction of an apartment complex. 899 S.W.2d 415, 417 (Tex. App. 1995). After the plaintiff discovered many defects in the property, he sued, alleging breach of contract and negligence. *Id*. at 417-18. After defendant prevailed on summary judgment on the trial level, the appellate court affirmed the holding as to the tort claims that resulted in economic damages only and overruled the holding as to damages outside the scope of economic loss. *Id*. at 422. The court was able to make a distinction between tort claims for economic damages, which were barred by the economic loss doctrine, and those that went beyond economic damages. *See id*. The situation is the same in our case, where Plaintiffs seek property damage under a theory of tort. While Plaintiffs' personal injury damages

are still viable under tort, the economic loss doctrine will bar any other claims for economic damages. *See id*.

      *D.*     *Louisiana*

Plaintiffs argue that the economic loss doctrine does not apply to their Louisiana tort claims. However, in so arguing, they do nothing to refute the notion that products liability actions do <u>not</u> provide recovery for damage to the product itself. *See* LA. CIV. CODE art. 3545 cmt. (a). This damage is contractual in nature, and thus a tort action is not the proper mode of recovery for economic damage associated with the property itself. *See id*.

Furthermore, Plaintiffs believe they are entitled to economic damages under the Louisiana Products Liability Act because they are unable to recover under redhibition. As stated in Defendants' original motion, "damages" under the LPLA are defined in such a way that economic damages are only recoverable under the Act when they are not recoverable under redhibition. LA. REV. STAT. ANN. art. § 9:2800.53(5) (2007). Plaintiffs equate their inability to recover under redhibition with the idea that redhibition does not provide for economic damages in this situation. That is not what is meant by the definition of "damages" under the LPLA. If Plaintiffs were purchasers of these trailers, then redhibition would provide the remedy for their economic loss. *See* LA. CIV. CODE art. 2520. Just because there were <u>not</u> purchasers does not mean that redhibition does not establish a remedy for economic loss in these circumstances. Because redhibition does in fact establish that remedy, then the same remedy is precluded under the LPLA. In their Opposition, Plaintiffs concede that their tort claims proceed under the LPLA. Accordingly, they have no remedy for economic loss under their cause of action.

**IV.     Plaintiffs' Claims For Medical Monitoring Damages Are Barred Because Plaintiffs Have Not Alleged Present Injury.**

Plaintiffs have not sufficiently alleged under *Twombly* that they suffer any specific present and manifest injury; therefore, their medical-monitoring claims cannot survive. In a misguided attempt to argue that they have adequately plead present injury, Plaintiffs can only point to a paragraph of the AMC which purports to characterize all the compensatory damages to which Plaintiffs claim they are entitled:

### COMPENSATORY DAMAGES: ALL STATES

> In addition to and by way of <u>summarizing</u> the compensatory damages prayed for herein, the Named Plaintiffs and Putative Class Members aver that the defendants, the United States of America through FEMA and the Manufacturing Defendants, individually and/or jointly are responsible for all damages which plaintiffs herein have suffered and continue to suffer, proximately caused by the defendants' acts and/or omissions as pled, which damages include, but are not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses…

*See* AMC at p. 74 (emphasis added). Indeed, only the words "and continue to suffer" could possibly be construed as referring to any the present time. Even if that were sufficient to refer to the present, this "summary" of damages in a closing paragraph is insufficient to plead a present and manifest injury under *Twombly*. No allegation of present injury is included under the specific counts of action plead against Manufacturing Defendants. Despite the 76 pages of the AMC, none of the named plaintiffs identified any specific present and manifest injury. Given the lack of any mention of any present injury, Plaintiffs are only seeking the costs of medical monitoring for diseases they *could* contract. In fact, Plaintiffs appear to be basing their medical-monitoring claim on unnamed injuries that are "asymptomatic to the patient, but detectable by medical science." Mem. Opp'n at 18.

Plaintiffs do not allege that any plaintiff has suffered any present injury. As present injury is a prerequisite to an award of medical-monitoring damages, Plaintiffs fail to state a claim for medical monitoring and such should be dismissed.

A.    Alabama

In support of Plaintiffs' interesting theory that even asymptomatic plaintiffs have "manifest injuries," Plaintiffs can only point to a case that does not even address medical-monitoring claims. Plaintiffs rely on *Griffin v. Unocal* for the proposition that an injury only detectible by medical science can constitute present injury. But the *Griffin* case only addressed the question of when an injury accrues for purposes of the statute of limitations—and did not address what types of injuries support a medical-monitoring claim. Plaintiffs do not point to a case that has adopted the statute-of-limitations standard in a medical-monitoring case.

Plaintiffs gloss over their deficient pleadings and claim that "[a]t this stage of the pleadings, plaintiffs have not set forth the full extent of the injuries that they have suffered as a result of their exposure to formaldehyde." *See* Mem. Opp'n at 19. But Plaintiffs have not set forth *any* present physical injury that *any* plaintiff has allegedly suffered. For these reasons and the reasons set forth *supra*, Plaintiffs' claims for medical monitoring should be dismissed.

B.    Louisiana

As Plaintiffs accurately note, in the *Hillard* action, which is an earlier-filed case now part of this MDL proceeding, Judge Lemmon dismissed the medical-monitoring claims to the extent Plaintiffs alleged future injuries, allowing the medical monitoring claims to survive "[t]o the extent that plaintiffs' complaint allege[d] actual injuries suffered." *See Hillard v. United States*, No. 2006-CV-02576, 2007 WL 647292, at *5 (E.D. La. Feb. 28, 2007). Although the order makes no determination of whether Plaintiffs did in fact allege actual injuries, it is worth noting

that that order was issued three months before the *Twombly* decision. As set forth above, Plaintiffs have not sufficiently alleged present injury to meet the applicable standard.

   C.     *Mississippi*

   Plaintiffs concede that Mississippi does not recognize a claim for medical monitoring where there is no present injury.  *See* Mem. Opp'n at 22. Such is the case here.  For all the reasons set forth above, Plaintiffs' claims for medical monitoring should be dismissed.

   D.     *Texas*

   In *Norwood v. Raytheon Co.*, the district court found that Texas courts would not recognize a claim for medical monitoring without present injury. *Norwood v. Raytheon Co.*, 414 F. Supp. 2d 659 (W.D. Tex. 2006). Plaintiffs recognize this holding and can only argue against it by re-stating their argument that they believe they have alleged a present injury—a conclusion that the Manufacturing Defendants reject, as previously briefed.

   Plaintiffs also cite two cases that reached a decision regarding medical-monitoring claims at the summary judgment stage. Plaintiffs improperly infer that the courts "apparently recognized" that a medical-monitoring claim is not subject to dismissal on the pleadings. Mem. Opp'n at 24. But there is no indication in those cases that there was ever a previous motion to dismiss that was denied or that the court ever decided (in these pre-*Twombly* cases) that the plaintiffs sufficiently plead a present injury. *See Crofton v. Amoco Chems. Co.*, No. 01-01-00526-CV, 2003 WL 21297588 (Tex. App.-Houston [1st Dist.] May 30, 2003, pet. denied); *Earthman v. Am. Home Prods.*, No. 97-10-03790, 1998 WL 2024150 (9th Dist. Ct., Montgomery County, Tex., Oct. 19, 1998). Therefore, Plaintiffs' reading of those cases should be disregarded. Because Plaintiffs do not plausibly allege present physical injury, Plaintiffs' claim for medical monitoring should be dismissed.

**V.      The AMC Fails To State A Claim Because Plaintiffs Have Failed To Connect Any Plaintiff To Any Manufacturing Defendant.**

Although Plaintiffs state in their opposition brief [Doc. No. 350][6] that they "intend to 'match' each named plaintiff . . . with each named manufacturing defendant" no match has currently been made. Indeed Plaintiffs acknowledge that they can only do it "to the fullest extent possible," which leaves open the possibility that this "match" may never occur for every manufacturing defendant. In further response, the Manufacturing Defendants incorporate and adopt the arguments made by other defendants in reply to Plaintiffs' opposition on this point.

**VI.      Plaintiffs Have Not Established Article III Standing And Their Claims Should Be Dismissed.**

Because of this "match" problem, which has not been cured, Plaintiffs are unable to show that they have standing to sue the Manufacturing Defendants. In further response, the Manufacturing Defendants incorporate and adopt the arguments made by other defendants in reply to Plaintiffs' opposition on this point.[7]

## Conclusion

For the reasons stated above and raised in their underlying memorandum of law, the Manufacturing Defendants request that the following causes of action be dismissed as a matter of law:

---

[6]      Plaintiffs' opposition to this argument is made in a separate opposition [Doc. 350] that Plaintiffs adopted for its opposition to the Manufacturing Defendants' Joint Rule 12(b)(6) Motion.

[7]      Plaintiffs' opposition to this argument is also made in a separate opposition [Doc. 350] that Plaintiffs adopted for its opposition to the Manufacturing Defendants' Joint Rule 12(b)(6) Motion.

(1)    Breach of Express Warranty for Property Damage and Personal Injury (Alabama, Mississippi, Texas, and Louisiana);

(2)    Breach of Implied Warranty of Merchantability for Property Damage (Alabama, Mississippi, and Texas);

(3)    Breach of Implied Warranty for Fitness for a Particular Purpose for Property Damage and Personal Injury (Alabama, Mississippi, and Texas);

(4)    All claims barred by the Economic Loss Doctrine (Alabama, Mississippi, Texas, and Louisiana);

(5)    Medical Monitoring (Louisiana, Alabama, Mississippi, and Texas);

(6)    All claims that do not connect a particular Plaintiff to a particular Manufacturing Defendant's product; and

(7)    All claims for which Plaintiffs lack standing.

Alternatively, if the Court does not dismiss those claims connecting a particular Plaintiff to a particular Manufacturing Defendant, the Court should order Plaintiffs to amend their pleadings under Rule 12(e) to provide a more definite statement.

Respectfully submitted:

/s/ Andrew D. Weinstock
ANDREW D. WEINSTOCK
JOSEPH G. GLASS
Duplass, Zwain, Bourgeois,
Pfister & Weinstock
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Fax: (504) 837-3119
**DEFENSE LIAISON COUNSEL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has this date been served on all counsel of record in this proceeding by:

( )    Hand Delivery       ( )    Prepaid U.S. Mail

( )    Facsimile           ( )    Federal Express

(XX)   CM/ECF

New Orleans, Louisiana this 2nd day of July, 2008.

                    /s/ Andrew D. Weinstock_____
                    ANDREW D. WEINSTOCK