**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

**IN RE: FEMA TRAILER**                                     **MDL NO. 1873**
**FORMALDEHYDE**
**PRODUCT LIABILITY LITIGATION**              **SECTION N-4**
                                                                      **JUDGE ENGELHARDT**
                                                                      **MAG. JUDGE ROBY**

**THIS DOCUMENT IS RELATED TO ALL CASES**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT UNITED STATES OF AMERICA'S REPLY IN RESPONSE**
**TO "PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE 'UNITED**
**STATES OF AMERICA'S MOTION TO DISMISS PLAINTIFFS' FTCA AND**
**CONTRACT CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION'"**

**THIS DOCUMENT IS RELATED TO DOCKET NOS. 196 & 348**

**TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    I.     The Court Should Deny PSC's Request To Conduct
         Further Discovery.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.    The United States' Motion Should Be Resolved
         Pursuant To Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    III.   Statements That It Is FEMA's Policy
         To Provide "Safe" Housing Do Not Constitute
         A Mandatory Specific Requirement.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    IV.   PSC Has Failed To Identify Any Objective Scientific Or Technical
         Standards That Imposed A Mandatory And
         Specific Obligation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    V.    The Challenged Conduct Is Susceptible To Policy Analysis.. . . . . . . . . . . . . . 21

    VI.   Administrative Master Complaint Count 1. . . . . . . . . . . . . . . . . . . . . . . . . . 24

         A.    La. C.C.Art. 2696, Claim For Warranty
              Against Vices or Defects. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

         B.    La.C.C.Arts. 2317, 2317.1, Acts Of Others
              And Of Things In Custody. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

## FEDERAL CASES

**CASES**                                                                    **PAGE**

*ALX El Dorado, Inc. v. SW Sav. & Loan Assoc.*,
   36 F.3d 409 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 13, passim

*Aretz v. United States*,
   604 F.2d 417 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Audler v. CBC Innovis Inc.*,
   519 F.3d 239 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Autery v. United States*,
   992 F.2d 1523 (11th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Baldassaro v. United States*,
   64 F.3d 206 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, passim

*Bank One Texas v. United States*,
   157 F.3d 397 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bear Medicine v. United States*,
   241 F.3d 1208 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Berkovitz v. United States*,
   486 U.S. 531 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bevley v. United States*,
   2001 WL 294052 *3 (E.D. La. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bishop v. Veterans Admin.*,
   1996 WL 741859 *3 (E.D. La. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Blackburn v. United States*,
   100 F.3d 1426 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bragg v. United States*,
   55 F.Supp.2d 575 (S.D. Miss. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

**CASES** <span style="float:right">**PAGE**</span>

*Buchanan v. United States,*
915 F.2d 969 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Cameron v. DEA,*
959 F. Supp. 92 (D. P.R. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Campbell v. United States,*
167 F. Supp. 440 (D. Mass. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Castro v. United States,*
2007 WL 471095 *4 (S.D. Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Charles v. USPS,*
2007 WL 925899 *1 (E.D.  La. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cleveland v. United States,*
546 F.Supp.2d 732 (N.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Commerce and Industry Ins. Co. v. Grinnell Corp.,*
280 F.3d 566 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sarmiento v. Texas Bd. of Vet. Med.,*
939 F.2d 1242 (5th Cir.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cranford v. United States,*
466 F.3d 955 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Daigle v. Shell Oil Co.,*
972 F.2d 1527 (10th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dalehite v. United States,*
346 U.S. 15 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 25

*Daniels v. United States,*
135 Fed.Appx. 900 (8th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Dowl v. Tulane Univ. Hosp. & Clinic,*
2005 WL 2060921 *2 (E.D. La. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Dykstra v. Bureau of Prisons,*
140 F.3d 791 (8th Cir.1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**CASES**                                                                    **PAGE**

*Elder v. United States*,
    312 F.3d 1172 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*FDIC v. Meyer*,
    510 U.S. 471 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Fisher Bros. Sales, Inc. v. United States*,
    46 F.3d 279 (3rd Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ford v. Am. Motors Corp.*,
    770 F.2d 465 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gadd v. United States*,
    971 F.Supp. 502 (D. Utah 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

*Garza v. United States*,
    161 Fed. Appx. 341, 2005 WL 3478009 *4 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . 14

*Gaubert v. United States*,
    499 U.S. 315 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 14, passim

*Gibson v. Federal Bureau of Prisons*,
    121 Fed. Appx. 549 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Guile v. United States*,
    422 F.3d 221 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hawes v. United States*,
    409 F.3d 213 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hix v. Army Corps. of Eng.*,
    155 Fed.Appx. 121 (5th Cir.  2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 12, passim

*Hughes v. United States*,
    110 F.3d 765 (11th Cir.1997).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ignatiev v. United States*,
    238 F.3d 464 (D.C. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Joint East. & South. Dist. Asbestos Lit.*,
    891 F.2d 31 (2d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**CASES**                                                                           **PAGE**

*Jamison v. United States*,
    491 F.Supp.2d 608 (W.D. La. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Johnson v. Sawyer*,
    47 F.3d 716 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Johnson v. United States*,
    2000 WL 1528078 *3 (E.D. La. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Kelly v. Panama Canal Com'n*,
    26 F.3d 597 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Kelly v. United States*,
    241 F.3d 755 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

*Kennewick Irr. Dist. v. United States*,
    880 F.2d 1018 (9th Cir.1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kock v. United States*,
    814 F. Supp. 1221 (D. Md. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kokkonen v. Guardian Life Ins. Co of Am.*,
    511 U.S. 375 (1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Laird v. Nelms*,
    406 U.S. 797 (1971).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lathers v. Penguin Industries, Inc.*,
    687 F.2d 69 (5th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Layton v. United States*,
    984 F.2d 1496 (8th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lively v. United States*,
    870 F.2d 296 (5th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 25

*Marlys Bear Medicine v. United States*,
    192 F.Supp.2d 1053 (D. MT 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*McDaniel v. United States*,
    899 F.Supp. 305 (E.D. Tex. 1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**CASES**                                                                      **PAGE**

*McNeily v. United States*,
    6 F.3d 343 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mesa v. United States*,
    123 F.3d 1435 (11th Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mid-South Holding Co., Inc. v. United States*,
    225 F.3d 1201 (11th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Myers v. United States*,
    17 F.3d 890 (6th Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*New Mexico v. HUD*,
    1987 WL 109007 (10th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Potter v. Delta Airlines, Inc.*,
    98 F.3d 881 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Raleigh v. Snowbird*,
    992 F. Supp. 1295 (D. Utah 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Raz v. United States*,
    132 F.3d 1454 (5th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rich v. United States*,
    119 F.3d 447 (6th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rosebush v. United States*,
    119 F.3d 438 (6th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Shea Homes Ltd. v. United States*,
    397 F.Supp.2d 1194 (N.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Sheridan v. United States*,
    487 U.S. 392 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Skwira v. United States*,
    344 F.3d 64 (1st Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**CASES**                                                                                                                                 **PAGE**

*U.S. States Fidelity & Guar. Co. v. United States*,
    837 F.2d 116 (3d Cir. 1988)................................................................ 8

*Whisnant v. United States*,
    400 F.3d 1177 (9th Cir. 2005) ............................................. 2, 19, 20

*Williams v. United States*,
    71 F.3d 502 (5th Cir. 1995)............................................................. 2


**STATE CASES**

*Barnes v. Riverwood Apartments Partnership, App.*,
    870 So.2d 490 (La.App. 2004)......................................................... 25

*Montecino v. Bunge Corp., Inc.*,
    895 So.2d 603 (La.App. 2005)......................................................... 25


**FEDERAL STATUTES**

28 U.S.C §§1346(a)(2)...................................................................... 25

28 U.S.C. §1346(b)(1)............................................................... 2, 11, 25

28 U.S.C. §2680(a)...................................................................... 2, 12

28 U.S.C. §2680(h)........................................................................ 24

42 U.S.C. §5174(b)(2)(A)............................................................... 22


**STATE STATUTES**

La. C. C. Art. 2696....................................................................... 24

La. C. C. Art. 2317........................................................................ 4

La. C. C. Art. 2696........................................................................ 4

La. C. C. Art. 2696....................................................................... 24

La C. C. Art. 2316......................................................................... 11

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 10, 13

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## FEDERAL REGULATIONS

42 CFR §206.110(c).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

44 CFR §206.110(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

# INTRODUCTION

Defendant United States of America hereby replies to Plaintiffs' Steering Committee's (PSC) Memorandum in Opposition to Defendant United States of America's Motion to Dismiss Plaintiffs' FTCA and Contract Claims for Lack of Subject Matter Jurisdiction (PSC Opp.) [Dkt. No. 348].  At issue in this lawsuit are the actions taken by the Federal Emergency Management Agency (FEMA) to purchase and provide temporary emergency housing units (EHU) for more than 140,000 families who lost their homes because of Hurricanes Katrina and Rita.  In making the determination of how and where to house these families, FEMA faced an unprecedented task. FEMA's issue of concern was not, nor should it have been as PSC suggests formaldehyde fumes, but rather to identify and obtain basic temporary emergency housing for the disaster victims.  The applicable statutes and regulations authorized FEMA to exercise its discretion in determining the appropriate EHU, and imposed absolutely no requirements relating to formaldehyde, and its decision to rely on vendors and manufacturers to provide it with safe units was discretionary and reasonable.  Similarly, FEMA's response actions to formaldehyde complaints and safety concerns were not constrained by any mandatory and specific statute or regulation, and it did respond to formaldehyde safety concerns and that its response changed over time as its assessment and awareness of the nature and scope the potential problem increased.

The essence of PSC's claims is that FEMA should have done more, and done more sooner.  These claims, however, constitute nothing more than attempts to second-guess FEMA's emergency response actions, which are protected because they inherently involved and required FEMA to weigh and balance safety, economic, social and political concerns.

PSC appears to assert two procedural arguments and four substantive arguments in

opposition to the government's motion.  The Court should reject PSC's procedural arguments

because: (1) contrary to PSC's assertion, no further discovery is necessary to resolve whether

PSC's FTCA claims are barred by the discretionary function exception, *see* PSC Opp. at 11; and

(2) the government's motion should be decided pursuant to Fed. R. Civ. P 12(b)(1) because the

issues relevant to the discretionary function exception are separate and distinct from the merits of

PSC's FTCA state-law negligence claims.  *See* PSC Opp. 3-4.[1]/

---

[1]/     PSC mistakenly asserts that the government bears the burden of showing that claims are barred by the discretionary function exception.  PSC Opp. at 8, 11.  However, this mistake is not particularly relevant to the instant motion.  The issues presented are legal questions – interpretation of statutes and regulations and whether the challenged decisions are the types of decisions that are susceptible to policy analysis.  An agency's interpretation of its regulations or policies is entitled to deference unless it is plainly erroneous, *see Gadd v. United States*, 971 F.Supp. 502, 508 (D. Utah 1997), and the interpretation of statute or regulation is an issue "on which neither party bears the burden of proof – and their exists no burden of proof on either side." *Williams v. United States*, 71 F.3d 502, 504 (5th Cir. 1995).

However, to the extent some factual dispute arises in the context of subject matter jurisdiction, PSC, contrary to its assertion, bears the burden of proof.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Dowl v. Tulane Univ. Hosp. & Clinic*, 2005 WL 2060921 *2 (E.D. La. 2005) (Engelhardt, J.) (plaintiff must prove subject matter jurisdiction over FTCA claim); *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D. Tex. 1995), *aff'd*, 102 F.3d 551 (5th Cir.1996); *Castro v. United States*, 2007 WL 471095 *4 (S.D. Tex. 2007); *Jamison v. United States,* 491 F.Supp.2d 608, 613-14 (W.D. La. 2007); *Charles v. USPS*, 2007 WL 925899 *1 (E.D.  La. 2007).  *See also Kokkonen v. Guardian Life Ins. Co of Am.*, 511 U.S. 375, 377 (1994) (the burden of establishing jurisdiction rests upon the party asserting jurisdiction).

PSC's reliance upon *Kelly v. Panama Canal Com'n*, 26 F.3d 597 (5th Cir. 1994) and *Whisnant v. United States*, 400 F.3d 1177, 1180-81 (9th Cir. 2005) is misplaced.  PSC Opp. at 8 n.4.  *Kelly* is not an FTCA claim, and it is well established that "[F]ederal courts are . . . empowered to hear only those cases that are within the constitutional grant of judicial power, and that have been entrusted to them by . . . Congress." *Sarmiento v. Texas Bd. of Vet. Med.*, 939 F.2d 1242, 1245 (5th Cir.1991).  The FTCA constitutes a limited waiver of sovereign immunity, and that waiver as set forth in 28 U.S.C. §1346(b)(1) "shall not apply to . . . the failure to exercise or perform a discretionary function or duty . . ." 28 U.S.C. §2680(a).  *See* 28 U.S.C. §1346(b)(1) (the waiver of sovereign immunity is "[s]ubject to the provisions of chapter 171" ).  That FTCA waiver of sovereign immunity does not extend to the performance of a discretionary function and as such PSC bears the burden of proving that its claims are not barred by Congress's the exclusion of discretionary decisions from the FTCA waiver of sovereign immunity.  *See Hix*

The Court should also reject PSC's four substantive objections to the government's motion.  First, the Court should reject PSC's argument that public statements by FEMA officials that it is the agency's policy to provide "safe" housing imposed a mandatory and specific requirement.  PSC Opp. at 19-24.  It is well established that a goal or general policy, such as a desire to provide "safe" housing, does is not satisfy the requirements of the first prong of the discretionary function exception because it fails to set forth what action, if any, FEMA must take to make EHUs or occupants safe.  Similarly, PSC's second argument that objective technical or scientific standards dictated a specific response action is simply wrong.  *See* PSC Opp. at 34-42.  The selection of a level of concern in the absence of any applicable mandatory formaldehyde indoor EHU air standard, or even a residential indoor air standard, required the government to choose an appropriate level of concern and that decision made in the context of an emergency temporary housing response required it to weigh and balance health and safety concerns, various potential actions that could be taken to address safety concerns, and the social, political and economic ramifications any response action.  Contrary to PSC's assertion, neither the statements that FEMA wants to provide safe housing, nor various entities' issuance of other formaldehyde concentration levels, such as the Agency for Toxic Substances and Disease Registry's (ATSDR) Minimum Risk Level, make the challenged actions an objective scientific or technical matter.

Third, PSC argues that the government failed to prove that the challenged conduct

---

*v. Army Corps. of Eng.*, 155 Fed.Appx. 121, 128 fn.8 (5th Cir.  2005) (if claim barred by discretionary function dismissal should be for lack of subject matter jurisdiction); *ALX El Dorado, Inc. v. SW Sav. & Loan Assoc.*, 36 F.3d 409, 410 n.5 (5th Cir. 1994).  Furthermore, PSC's reliance on the Ninth Circuit's decision *Whisnant* is misplaced given Fifth Circuit precedent.  Moreover, most other courts that have addressed this matter have also rejected the Ninth Circuit's position.  *See Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006); *Hawes v. United States*, 409 F.3d 213, 216 (4th Cir. 2005); *Daniels v. United States*, 135 Fed.Appx. 900, 901 (8th Cir. 2005); *Skwira v. United States*, 344 F.3d 64, 71 (1st Cir. 2003).

involved actual consideration of policy factors.  PSC Opp. at 24- 29.  The Court must reject this argument because the applicable standard is whether the challenged conduct was "susceptible" to policy analysis, and it is well established that decisions involving contract terms and conditions as well as what actions are necessary or appropriate to protect health and safety are susceptible to policy analysis.  Moreover, the evidence submitted by both PSC and the government demonstrates that FEMA actively weighed and balanced policy considerations in determining what actions to take.  Finally, the Court lacks subject matter jurisdiction over Count 1, La.C.C. Art. 2696 claims because that is a contract claim, or alternatively, if a tort, it is barred because it is a strict, no fault liability claim.  Dismissal of  Count 1 La.C.C. Arts. 2317 and 2317.1 claims is required because they are barred by the discretionary function exception.

I.      **The Court Should Deny PSC's Request To Conduct Further Discovery.**

Contrary to PSC's assertion, no further discovery is required or justified because the "factual" issues presented by the government's motion are simple, and the "factual" information relevant to the motion has already been identified and produced.  Resolution of the government's discretionary function motion requires the Court to resolve four issues:

> ***     Whether a statute, regulation, or policy imposed a mandatory and specific requirement upon FEMA to insert formaldehyde design specifications in its contracts for the purchase of EHUs.

> ***     Whether a statute, regulation or policy dictated a mandatory and specific action(s) that FEMA was required to take in response to formaldehyde fume complaints and safety concerns.

> ***     Whether FEMA's omission of formaldehyde design specification from its contracts to purchase EHUs is "susceptible" to policy analysis.

> ***     Whether FEMA's decisions regarding what actions, if any, to take in response to safety concerns associated with formaldehyde fume complaints in EHUs are "susceptible" to policy analysis.

The only discovery that is potentially required to respond to these issues is a determination of whether or not FEMA had any internal unpublished regulation or policy that required it to insert formaldehyde design specifications in its contracts for the purchase of EHUs. The reason that this is the only issue that may justify discovery is simple.  To satisfy the first prong of the discretionary function exception PSC must identify a statute, regulation or policy that imposed a mandatory and specific requirement, and show that the challenged conduct violated the requirement.  *See generally Kelly v. United States*, 241 F.3d 755, 761 (9th Cir. 2001) (broad mandates that do not specify a particular course of conduct do not remove discretion). For purposes of prong one, discovery is constrained to identifying internal guidelines or policies that governed the challenge conduct.  *See Ignatiev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001) (for purposes of responding to discretionary function motion discovery should be limited to whether internal guidelines or policy imposed a mandatory and specific requirement that prohibited the challenged conduct); *Campbell v. United States*, 167 F. Supp. 440, 448 (D. Mass. 2001) (minimal discovery to respond to discretionary function motion are internal rules that govern the challenged conduct).  No discovery is required or justified for purposes of identifying statutes or regulations because identification of those materials is a matter of legal research, not discovery.  *See Kock v. United States*, 814 F. Supp. 1221, 1232 (D. Md. 1993) (existence of a mandatory or specific statute or regulation is "a matter of legal research, not discovery").  No discovery is required as to the government's actual conduct because such conduct is relevant only if PSC first shows that the challenged conduct was constrained by an applicable mandatory and specific statute, regulation or policy that prescribed and prohibited such conduct.

Moreover, in the instant case, no further discovery for purposes of the first prong analysis

is required.  For purposes of its motion, FEMA conducted a search for internal policies relating

to formaldehyde in EHUs and FEMA identified no such policies and submitted the declaration of

Mr. McCreary, the Contract Officer in charge of purchasing the EHUs and he has declared under

oath that FEMA had no internal policies governing formaldehyde in EHUs.  Ex. 10, Dec.

McCreary ¶10 [Dkt. 196-14].[2/]

Furthermore, the discovery the PSC asserts that they require has already either been done

or is simply not relevant to the motion.  PSC asserts that based upon general statements made by

FEMA officials at Congressional Hearings and declarations issued by Mr. McCreary, the FEMA

Contract Officer in charge of the purchase of EHUs, and Mr. Souza, one of the FEMA Officials

responsible for determining FEMA response actions, that FEMA had a policy to provide "safe"

housing, and that FEMA's desire to provide "safe" housing  requires discovery to determine

whether this imposed any mandatory and specific requirements regarding formaldehyde in EHUs.

PSC Opp. at 22-23, 47-48.  As substantiated by Mr. McCreary, FEMA had "no rules, regulations,

or specifications governing formaldehyde in EHUs, and . . . relied exclusively upon the vendors'

---

[2/]     Federal Rule Civil Procedure 56(f) requires that PSC show by affidavit the "specific
reasons it cannot present facts essential to justify its opposition."  *See Potter v. Delta Airlines,
Inc.*, 98 F.3d 881, 887 (5th Cir. 1996) (if discovery required it up to plaintiff to move for Rule
56(f) continuance).  Consistent with Rule 56(f), it is well established that mere speculation as to
what may be discovered is insufficient to justify granting a continuance or request for discovery.
*See Cameron v. DEA*, 959 F. Supp. 92, 93-94 (D. P.R. 1997) (there must be plausible basis to
believe that discoverable materials exist that would likely raise genuine issue of material fact);
*Raleigh v. Snowbird*, 992 F. Supp. 1295, 1298 (D. Utah 1998) (granting summary judgment even
though plaintiff requested discovery), *aff'd*, 172 F.3d 63 (10th Cir. 1999).  Dismissal of FTCA
claims is appropriate unless PSC can show a plausible basis to believe that FEMA had relevant
internal regulations requiring it to insert formaldehyde design specifications in the contracts to
purchase EHUs or set forth with specificity what actions to take in response to formaldehyde
complaints or safety concerns.  The evidence proffered by PSC and the government demonstrate
that there exists no good faith basis to believe that FEMA had any such internal policy or
regulations, accordingly, Court should reject PSC's request for discovery.

and manufacturers' to construct and provide FEMA with new units, under warranty, that met and complied with any and all applicable regulatory requirements, and that would provide disaster victims with a safe, habitable place to live . . ."  Ex. 10, Dec. McCreary ¶10 [Dkt. 196-14]. Moreover, as Mr. Souza, explained, as a result of the formaldehyde concerns associated with the Katrina and Rita EHUs, in July 2007 FEMA adopted a policy to require formaldehyde specifications in all future contracts for EHUs.  Ex. 8, Dec. Souza ¶16 [Dkt. 196-11].  Simply put, FEMA sought to acquire safe EHUs, but FEMA had absolutely no internal policy that required it to insert formaldehyde specification or requirements in its contracts or take any specific actions in response to formaldehyde complaints or safety concerns.  Accordingly, because FEMA has already declared under oath that it has no such internal policies and PSC have provided no plausible explanation as to why FEMA would have had any such policy in place, the Court should reject PSC's request for discovery.[3]/

PSC also asserts that it requires discovery to determine whether the discretion that was exercised served an underlying policy goal, and whether FEMA misapplied scientific or regulatory standards.  PSC Opp. at 22-23, 47-48.  Discovery on these issues is not relevant to the motion because the determination required by the second prong of the discretionary function exception is an objective legal question, not a subjective factual question.  *See Baldassaro v. United States*, 64 F.3d 206, 211 (5th Cir. 1995) (rejecting argument that discretionary act is one that was *actually* balanced against social, economic, and political concerns).[4]/  The second prong

---

[3]/      That there exists no such internal regulations or policies is further evidenced by the fact that Congress has held extensive hearings on formaldehyde in the FEMA trailers and has been critical of FEMA for failing to have any such policies.

[4]/      Even if there is no evidence that economic, social, or political policy concerns were actually considered in making the challenged decisions, the discretionary function exception still

of the analysis requires the Court to determine whether the alleged wrongful acts, the decisions to purchase EHUs and the omission of formaldehyde specific design specifications, as well as the determination of the actions to take in response to formaldehyde fume complaints and safety concerns, are the type of decisions that are *susceptible* to economic, social, and political policy factors. *Id*. at 210-11. Although the PSC's Administrative Master Complaint [Dkt. No. 119] and evidence proffered by the PSC and the government demonstrates that the challenged decisions actually involved consideration of policy factors, that evidence is irrelevant. Rather, the Court must resolve an objective legal question – whether either of the challenged decisions are *susceptible* to policy analysis. In other words, is the omission of formaldehyde contract specifications *susceptible* to policy analysis given that they were purchased from commercial vendors and manufacturers to provide temporary emergency housing for disaster victims. Similarly are the actions FEMA took in response to formaldehyde fume complaints and safety concerns *susceptible* to economic, social and political policy concerns. Simply put, these are objective legal issues and PSC is not entitled to any discovery. *See Gaubert v. United States*, 499 U.S. 315, 324-25 (1991)*; Rosebush*, 119 F.3d at 443-44; *Hughes*, 110 F.3d at 768-69; *Mid-South Holding Co., Inc. v. United States*, 225 F.3d 1201, 1207 fn.7 (11th Cir. 2000); *Mesa*, 123 F.3d at 1439 (claimant not entitled to discovery to determine whether challenged actions are susceptible to policy considerations, because it involves a legal and not a factual determination).

---

applies if the decisions are susceptible to that type of policy analysis. *See Dykstra v. Bureau of Prisons*, 140 F.3d 791, 795-96 (8th Cir.1998); *Mesa v. United States*., 123 F.3d 1435 (11th Cir.1997); *Hughes v. United States*, 110 F.3d 765, 768-69 (11th Cir.1997); *Rosebush v. United States*, 119 F.3d 438, 440 (6th Cir. 1997); *In re Joint East. & South. Dist. Asbestos Lit.*, 891 F.2d 31, 37 (2d Cir. 1989) ("[I]t is unimportant whether the government actually balanced economic, social, and political concerns in reaching its decision."); *U.S. States Fidelity & Guar. Co. v. United States*, 837 F.2d 116, 120-21 (3d Cir. 1988).

Similarly, discovery relating to scientific or technical issues is not required unless PSC

identifies and proffers a mandatory and specific scientific or technical standard that required a

purchaser of an EHU to insert formaldehyde design specifications in the contract or specified

what actions to take in response to formaldehyde complaints or safety concerns.[5]/  PSC has failed

to identify any such scientific or technical standard, and, absent identification of any such

requirement, no discovery is justified.[6]/  *See Fisher Bros. Sales, Inc. v. United States*,

46 F.3d 279, 286 (3rd Cir. 1995) (the use of the "susceptible" standard was intended to foreclose

and prohibit discovery of government officials' "subjective" intent).

## II.      The United States' Motion Should Be Resolved Pursuant To Fed. R. Civ. P. 12(b)(1).

Contrary to PSC's assertion, the United States' motion should be resolved under Fed. R.

Civ. P. 12(b)(1) because the issues relevant to discretionary function are not so intermeshed with

the merits of PSC's FTCA state-law negligence claim so as to prevent their separate

consideration.  *See* PSC Opp. 3-4.  Conversion of a Rule 12(b)(1) jurisdictional challenge to a

Rule 56(c) summary judgment motion is only appropriate when the jurisdiction issue and merits

---

[5]/      Although not a mandatory and specific requirement, the only recommended course of
conduct to take in response to concerns about formaldehyde in a residential structure is ATSDR's
and the Environmental Protection Agency's (EPA) advice that ventilation is the appropriate and
an effective way to lower formaldehyde levels and reduce the risks associated with exposure to
formaldehyde.  Ex. 16, Tox. Profile at 00025 [Dkt. 196-27]; Ex. 34, EPA at 0002-3 [Dkt. 196-
45].  FEMA consistent with this advice issued a pamphlet in July 2006 that told occupants to
vent their EHUs if they had concerns about formaldehyde fumes.  Ex. 22, Brochure [Dkt. 196-
33].

[6]/      PSC concedes there are no mandatory and specific formaldehyde levels for EHU or
residential structures.  If a standard had in fact governed the EHUs at issue and identified specific
actions that had to be taken in response if exceeded the PSC's argument would have merit.
However, in the absence of any such specific standard and a specific requirement as to what
action to take the action level is exceeded, PSC identification of potential alternate levels of
concern is not relevant to the pending motion.  *Shea Homes Ltd. v. United States*, 397 F.Supp.2d
1194, 1199 (N.D. Cal. 2005) (a numeric standard does not specify a specific course of conduct).

are so "intermeshed as to prevent the separate consideration and decision of the jurisdiction question." *Ford v. Am. Motors Corp.*, 770 F.2d 465, 468 (5th Cir. 1985). *See Hix*, 155 Fed.Appx. at 128 fn.8.

Separate consideration of the government's motion is appropriate because the issues presented are whether FEMA's challenged conduct was governed by a mandatory and specific statute, regulation or policy and whether the challenged discretionary decisions are susceptible to policy analysis. Neither issue implicates the merits of PSC's FTCA state law negligence claims because: (1) the violation of a federal statute, regulation or policy cannot constitute a basis for imposition of liability under the FTCA, *see Bishop v. Veterans Admin.*, 1996 WL 741859 *3 (E.D. La. 1996); (2) whether FEMA was negligent and abused its discretion, or failed to exercise due care, is irrelevant to the discretionary function analysis, *see Hix*, 155 Fed. Appx. at 125 n.4 ; (3) whether a statute, regulation, or policy imposed a mandatory and specific requirement or the challenged conduct is susceptible to policy analysis are legal issues, not merit-based fact issues. *See Baldassaro*, 64 F.3d at 211.

Comparison of the legal elements and facts relevant to the discretionary function exception and PSC's FTCA state law negligence claims demonstrates that they present separate and distinct issues and are not so intermeshed as to prevent resolution of the motion under Rule 12(b)(1). To resolve the government's discretionary function motion the Court must decide whether: (1) a statute, regulation or policy imposed a mandatory and specific requirement upon FEMA to insert formaldehyde design specification in its contract to purchase EHUs or sets forth specific response actions FEMA was required to take because of concerns associated with formaldehyde fumes in EHUs, and (2) the types of decisions FEMA had to make are susceptible

to economic, social, or political policy concerns.  *See Gaubert*, 499 U.S. at 324-25; *ALX El Dorado*, 36 F.3d at 411. The only facts relevant to the resolution of the government's motion are what, if any, statute, regulation, or policy governed the challenged conduct.  *See supra* at 5, 8.

In contrast, resolution of PSC's FTCA state law tort claims requires the Court to resolve whether claimants were injured as a result of exposure to formaldehyde and whether any such injuries were "caused by the negligent or wrongful act or omission . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. §1346(b)(1).  For purposes of Count II, to establish liability pursuant to Louisiana Civil Code Article 2316, PSC must prove that:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008).[7]/

Resolution of the first prong of the discretionary function exception does not implicate the merits of PSC's FTCA state law negligence claims because whether a federal statute, regulation, or policy imposes a mandatory and specific requirement is irrelevant to the merits of PSC's state-law negligence claims.  This is because the FTCA does not authorize imposition of liability based upon a breach of a federal statutory or regulatory duty or requirement.  *See Johnson v. Sawyer*, 47 F.3d 716, 728-29 (5th Cir. 1995); *Myers v. United States*, 17 F.3d 890,

---

[7]/     *See also* PSC Opp. at 52 (setting forth elements PSC asserts that they must prove to establish negligence under La.C.C.Arts. 2317, 2317.1).

899 (6th Cir.1994) (FTCA does not allow recovery based upon breach of a duty imposed by federal regulations); *Bishop v. Veterans Admin.*, 1996 WL 741859 *3 (E.D. La. 1996).  *Cf. Raz v. United States*, 132 F.3d 1454 (5th Cir. 1997) (same).

Furthermore, resolution the discretionary function exception does not implicate the merits because it requires the Court to make an objective legal determination as to whether a statute, regulation, or policy constrained the challenged conduct and imposed a mandatory and specific requirement and whether the challenged conduct is susceptible to policy analysis.  *See Baldassaro*, 64 F.3d at 211.  Whether the challenged conduct constitutes actionable negligence is irrelevant because the discretionary function exception applies "whether or not the discretion involved be abused."  28 U.S.C. §2680(a).  As explained in *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018 (9th Cir.1989), "negligence is simply irrelevant to the discretionary function inquiry."  *Id.* at 1029.  *See Hix*, 155 Fed. Appx. at 125 n.4 (due care is not an element of the discretionary function exception); *Buchanan v. United States*, 915 F.2d 969, 970-71 (5th Cir. 1990) (same); *Lively v. United States*, 870 F.2d 296, 297 (5th Cir. 1989) (negligence is not an element of the discretionary function exception to the FTCA).  Thus, "[w]hether . . . employees were negligent in making any . . . decisions is irrelevant" to whether claims are barred by the discretionary function exception.  *Layton v. United States*, 984 F.2d 1496, 1502 (8th Cir. 1993).[8]/

Simply put, the government's motion does not implicate the merits of PSC's FTCA state-law negligence claims, and, therefore, the Court should resolve the motion pursuant to Rule

---

[8]/     *See also Dalehite v. United States*, 346 U.S. 15, 33 (1953) ("exercise of discretion could not be abused without negligence or a wrongful act"); *Autery v. United States*, 992 F.2d 1523, 1528 (11th Cir. 1993) (discretionary function applies to policy judgments, even to those constituting abuse of discretion); *Bevley v. United States*, 2001 WL 294052 *3 (E.D. La. 2001).

12(b)(1).  *See Hix,* 155 Fed. Appx. at 128 n.8.[9]/

## III.   Statements That It Is FEMA's Policy To Provide "Safe" Housing Do Not Constitute A Mandatory Specific Requirement.

PSC incorrectly asserts that it meets the first prong of the analysis because officials have made statements that it is FEMA's policy to provide "safe" housing and PSC has shown that whether the EHUs were safe is a disputed issue of fact.  PSC Opp. at 19-24.  The Court should reject this argument because the general statements by FEMA officials that they want to provide "safe" housing imposed no mandatory and specific duty to (1) insert formaldehyde design specifications in the purchase contracts and/or test and inspect for formaldehyde prior to issuing EHUs for distribution to disaster victims, or (2) respond in a specific manner to formaldehyde fume complaints or safety concerns.[10]/

In *Gaubert*, the Supreme Court explained that for purposes of the first prong of the discretionary function analysis, "[t]he requirement of choice or judgment is not satisfied if a 'federal statute, regulation, or policy *specifically prescribes a course of action* for an employee to follow. . . .'"  *Gaubert*, 499 U.S. at 322 (emphasis added).  If there is no prescribed course of conduct or action, then an employee acting pursuant to a statute, regulation, or policy must

---

[9]/    *See also ALX El Dorado, Inc.*, 36 F.3d at 410 n.5; *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993); *Buchanan*, 915 F.2d at 970.  *Cf. Bank One Texas v. United States,* 157 F.3d 397, 403 (5th Cir. 1998) (summary judgment is an inappropriate way to effect dismissal for lack of subject matter jurisdiction).

[10]/    PSC asserts that plaintiffs had a Constitutional right to formaldehyde free trailers, FEMA violated these rights, and PSC needs to conduct discovery on this issue.  PSC Opp. at 21, 31. The Court should reject this argument because the government has not waived its immunity with regard to Constitutional torts.  *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994); *Gibson v. Federal Bureau of Prisons*, 121 Fed. Appx. 549, 551 (5th Cir. 2004) (per curiam).

exercise judgment and choice.  *See Commerce and Industry Ins. Co. v. Grinnell Corp.,* 280 F.3d

566, 571-72 (5th Cir. 2002); *Rich v. United States*, 119 F.3d 447, 450 (6th Cir. 1997).

"[A]lleg[ing] only some generalized failures to follow mandatory rules" without "point[ing] to

even one relevant mandatory limitation on . . . statutory discretion . . . [is] insufficient to defeat

the first part of the *Gaubert* test."  *ALX El Dorado, Inc.,* 36 F.3d at 411-12.  Unless a statute,

regulation, or policy gives "specific direction," it does not eliminate discretion.  *Guile v. United*

*States,* 422 F.3d 221, 231 (5th Cir. 2005).

It is well established that a general policy statement such as a desire to provide "safe"

housing lacks sufficient specificity to satisfy the requirements of the first part of the discretionary

function test.  In *Guile,* 422 F.3d 221, the plaintiff asserted that the requirement to provide "a

safe environment" imposed a mandatory and specific requirement.  *Id*. at 231 n.12.  The Fifth

Circuit rejected this argument and explained that "[t]his vague statement does not sufficiently

prescribe any particular course of action that . . . would remove the government's discretion . . ."

*Id*. at 231 n.12.  *See also Garza v. United States*, 161 Fed. Appx. 341, 346, 2005 WL 3478009 *4

(5th Cir. 2005) (duty to keep prisoner "safe and free from harm" does not impose a specific

course of action); *Hix*, 155 Fed.Appx. at 127 (what actions to take to ensure public safety are

susceptible to policy concerns).[11]/  The Court must reject PSC's argument that statements that

---

[11]/      *See also Elder v. United States*, 312 F.3d 1172, 1177-78 (10th Cir. 2002) (requirement to
protect safety and health does not specifically prescribe a course of action to be followed); *Kelly
v. United States*, 241 F.3d 755, 761 (9th Cir. 2001) (broad mandates that do not specify a
particular course of conduct do not remove discretion); *Blackburn v. United States*, 100 F.3d
1426, 1432-33 (9th Cir. 1996) (manuals imposing a safety requirement, were not sufficiently
specific because they did not detail by what means the requirement were to be met); *Autery v.
United States*, 992 F.2d 1523, 1528-29 (11th Cir.1993) (regulation that provided "safeguarding
of human life takes precedence" was not sufficiently specific to remove discretion); *Daigle v.
Shell Oil Co.*, 972 F.2d 1527, 1540-41 (10th Cir. 1992) (requirement "to prevent, minimize, or
mitigate damage to the public health or welfare" lacked sufficient specificity); *Allen*, 816 F.2d at

FEMA wanted to provide "safe" EHUs imposed a specific and mandatory requirement.

**IV.   PSC Has Failed To Identify Any Objective Scientific Or Technical Standards That Imposed A Mandatory And Specific Obligation.**

Contrary to PSC's contention, the decision to use 0.3 ppm as an objective level of concern for purposes of the Fall 2006/February 2007 ventilation study is susceptible to policy concerns. *See* PSC Opp. at 34-42. The scientific or technical standard's rule applies when there exists scientific or technical standards that are applicable and govern the challenged conduct, thereby removing discretion. *Berkovitz v. United States*, 486 U.S. 531, 547 (1988). In the instant case that rule does not apply because there existed absolutely no formaldehyde ambient air standard for residential structures, much less, for EHUs, nor were there any mandatory and specific standards as to what should have been done in response to formaldehyde safety concerns. Moreover, it is well established that the determination of an appropriate safety standard – a public health and safety standard that may justify some response action – is a policy-based decision, and, is especially true in the instant case because the decision regarding the level of formaldehyde that would be the "level of concern" had significant and substantial social, economic, and political implication. *See Fisher Bros. Sales, Inc.,*46 F.3d at 286. Moreover, if as PSC suggests the ATSDR's 365 day Minimum Risk Level (MRL) should have constituted the "level of concern," even the immediate eviction and relocation and dispersal of EHU occupants into pre-Katrina residential structures throughout the fifty states would have constituted an

---

1427 (McKay, J. concurring opinion); *Shea Homes*, 397 F.Supp.2d at 1199 ("protect public health and safety, and the environment" requires government to make discretionary judgments as to the substance and timing of the specific steps); *Gadd*, 971 F. Supp. at 507 (requirements that leave unresolved of how to attain public health and safety are discretionary).

insufficient "safety" response.[12]/

PSC mistakenly argues that the government's selection of the formaldehyde "level of concern" is an objective scientific and technical decision and, therefore, is not the type of decision that is susceptible to economic, social, and political policy concerns.  Contrary to PSC's argument, a decision regarding what is sufficiently safe if made in the absence of an applicable scientific or objective standard are protected because the decision makers must weigh and balance health and safety risks, as well as economic, social and political policy factors.[13]/  See *Hix*, 155 Fed.Appx. at 127 (what actions to take to ensure public safety is susceptible to policy

---

[12]/    ATSDR formaldehyde MRL for long-term exposure is 0.008 ppm (8 ppb).  Ex. 23, ATSDR Report at 00010, Table 3 [Dkt. 196-34].  As reported by ATSDR, the ambient air concentration level for formaldehyde in heavily populated areas, near some industries, and in residential structures are commonly in the range of 10-20 ppb.  Ex. 16, Tox. Profile at 00022 [Dkt. 196-27]; Ex. 29, CDC at 00471 [Dkt. 196-40].

[13]/    The Court need look no father than the analysis conducted by the Department of Housing and Urban Development (HUD) in selecting 0.4 ppm as its indoor air target level for formaldehyde in manufactured housing (mobile homes) to reach this conclusion.  HUD discussing its selection of that target level explained that:

> [T]here was considerable disagreement . . . regarding the adequacy of 0.4 ppm to protect manufactured home occupants from discomfort and from acute and chronic health effects.
>
> *    *    *
>
> HUD believes that the product standards will result in a 0.4 ppm indoor level under the specified conditions and that this level, given economic considerations, is reasonable. . . . In any event, it is not possible to implement a formaldehyde standard that will protect the entire population.
>
> *    *    *
>
> Studies of human exposure to formaldehyde still do not conclusively establish whether there is a level of formaldehyde that will not cause acute symptoms. Therefore, HUD continues to rely on the Committee on Toxicology's conclusion that there is no population threshold for the irritant effect of formaldehyde in studies of human exposure to formaldehyde.

Ex. 9, Fed. Reg. at 00007, 8-10 [Dkt. 196-13].

concerns); *Fisher Bros. Sales, Inc.,*46 F.3d at 286; *Cleveland v. United States*, 546 F.Supp.2d 732, 765 (N.D. Cal. 2008) (safety-related decisions are protected policy-based decisions in the absence of any established safety policies and the absence of any objective technical or scientific standard that prescribed a specific course of conduct).

The court's decision in *New Mexico v. HUD*, 1987 WL 109007 (10th Cir. 1987), is instructive and explains why an objective formaldehyde indoor air quality level involves weighing and balancing policy concerns.  At issue was the plaintiff's challenge regarding HUD's selection of 0.4 ppm as its indoor air target level for formaldehyde in mobile homes.  In rejecting the plaintiffs' argument that selection of 0.4 ppm was arbitrary and  capricious the court explained:

> The establishment of an objective standard, such as a target ambient air level, necessarily requires arbitrary line-drawing.  In some cases, there may be no strong reason for a particular numerical standard rather than a somewhat higher or lower number; the standard selected need only be within a "zone of reasonableness."  In view of the lack of definitive medical evidence, [and] the cost to the public, . . . HUD has given adequate reasons for its choice and the target level selected is within a "zone of reasonableness."

*New Mexico*, 1987 WL 109007 at *4.

In the instant case, the government's selection of an objective level of concern for purposes of assessing the effectiveness of ventilation involved many more policy considerations than HUD's selection of 0.4 ppm.  This is because HUD's decision had no impact on people already living in mobile homes, while in contrast, the decision would impact 140,000 families; adoption of the ATSDR MRL as PSC was the proper course of conduct would have required immediate relocation of all 140,000 families.  Clearly, in assessing the appropriate standard to apply in the context of a temporary emergency housing response, the decision at a bare minimum

required the government to consider various levels, and weigh and balance the potential health and safety benefits of a potentially overly protective standard verses a standard based upon the no or lowest observed adverse effect levels.  Simply consider had FEMA used the ATSDR MRL, it would have been required to immediately commence relocating approximately140,000 families, notwithstanding the fact that as of July 2007, it had received fewer than 300 complaints about formaldehyde.  Ex. 18, Statement Paulison at 000003 [Dkt. 196-29]; Ex. 24, FEMA Release at 000191 [Dkt. 196-35].  Underlying PSC's argument is the apparent belief that given formaldehyde concerns FEMA should have evicted and relocated all EHU occupants.  However, given the housing shortage, such action was impossible, or would have required the evacuation and relocation of the 140,000 families to outlying areas or other states where housing was available.  FEMA's decision was made in the context of an emergency housing response and the challenged decision within that context clearly implicated health and safety, social, economic and political policy concerns.  *See* Ex. 38, *Hillard v. United States*, Civ. Act., No. 06-2576, Mot. Hearing Trans. p.14, line 25 - p.17, line 1 (Lemmon, J.).  As such, contrary to PSC's assertion, the decision is fraught with policy concerns.[14]/

      Moreover, the ventilation study that PSC complains of did not constitute FEMA's only

---

[14]/      Furthermore, the selection of 0.3 ppm, instead of the ATSDR MLR that PSC insists should have chosen, was reasonable.  The studies upon which the ATSDR MRLs for formaldehyde are based show that the actual no observed adverse effect levels and/or lowest observed adverse effect levels for formaldehyde range from 0.24 ppm to 0.98 ppm*, see* Ex. 23, ATSDR at 00010, Table 3 [Dkt. 196-34], and, as previously discussed, HUD's indoor air formaldehyde target level for mobile homes is 0.4 ppm.  Ex. 9, Fed. Reg. at 00007, 8-10 [Dkt. 196-13].  Moreover, ATSDR explicitly warns against the use of MRLs in the manner urged by PSC explaining "that MRLs are not intended to define . . . clean up or action levels for ATSDR or other Agencies" and, this is in part, because "MRL may be as much as a hundredfold below levels shown to be nontoxic . . ."  Ex. 35, ATSDR MRLs at 00001 [Dkt. 196-46].  *See also supra* note 12.

response to formaldehyde safety concerns but, rather, was simply one portion of a more comprehensive response.  In addition to the ventilation study, FEMA when notified of an occupant's complaint about formaldehyde fumes, encouraged the occupant to increase ventilation; and if that did not resolve the complaint, the EHU was replaced with an older unit that was less likely to have formaldehyde fumes.  FEMA also issued a pamphlet to all EHU occupants that explained what formaldehyde is, warned occupants to consult their medical care provider if they had any health concerns, and advised occupants to ventilate their units to reduce formaldehyde levels.  Ex. 8, Dec. Souza ¶14 [Dkt. 196-12]; Ex. 21, FEMA Corresp. [Dkt. 196-32]; Ex. 22, Brochure [Dkt. 196-33].  These actions were consistent with the ATSDR and EPA's published recommended response to formaldehyde concerns.  *See supra* Note 4.

Finally, PSC's reliance upon the Ninth Circuit's decisions in *Whisnant*, 400 F.3d 1177 and *Bear Medicine v. United States*, 241 F.3d 1208 (9th Cir. 2001) is misplaced.  As an initial matter the Fifth Circuit has recognized that determinations regarding what actions to take to ensure public safety are susceptible to policy concerns.  *Hix*, 155 Fed.Appx. at 127.  Moreover, *Whisnant* does not support PSC's argument.  In *Whisnant,* the plaintiff alleged that he was injured as a result of exposure to mold in a military commissary.  *See* 400 F.3d at 1179-80.  At issue in that case was an alleged failure by the government to take any action to address a three-year history of mold contamination, complaints of illness among customers and employees of the commissary, and tests that allegedly revealed toxic, carcinogenic molds colonizing the meat department.  *Id*.  The court held that the failure to take *any* "safety" response actions over a three-year period was not barred by the exception because objective scientific and technical standards required the government to take some safety action.  *Id*. at 1185 (claims that the government

ignored health hazards that were called to its attention are not barred by discretionary function exception).  *Whisnant* is not persuasive authority because it is undisputed that FEMA responded upon learning about formaldehyde fume complaints from EHU occupants and at issue in this lawsuit is the sufficiency of the safety policies they adopted in response to those concerns.  *See Cleveland*, 546 F.Supp.2d at 765 (*Whisnant* does not apply when safety actions are taken and there is no established safety policy or objective technical or scientific standard that proscribed a specific course of conduct).

Similarly, PSC's reliance on *Bear Medicine*, 241 F.3d 1208, is misplaced.  There, the Ninth Circuit, recognizing that "each case requires individual analysis," *id*. at 1215, concluded that the exception did not apply in the context of a case involving the responsibilities of the Bureau of Indian Affairs (BIA), with respect to a suit by a tribal member who was injured on an Indian Reservation due to the negligence of a contractor, explaining that the BIA was "the only organization on the reservation with the appropriate safety expertise and has virtually complete control of the timbering operations on Indian lands."  *Id*.  On remand, the district court concluded that the exception did not apply, noting that "[d]espite both the power to direct and supervise [the contractor's] operations and knowledge that proper safety precautions were not being taken, the [government] failed to take *any* action to protect [plaintiff]."  *Marlys Bear Medicine v. United States*, 192 F. Supp.2d 1053, 1057 (D. MT 2002) (emphasis added).  Here, in contrast, the contractors on which FEMA relied were builders of long-standing, FEMA did not breach any special fiduciary relationship in relying on those builders' expertise, and, unlike in *Whisnant* and *Bear Medicine*, the United States did take steps as it learned more information–and those steps plainly were susceptible to policy considerations.

V.      **The Challenged Conduct Is Susceptible To Policy Analysis.**

PSC misconstrues the applicable law and incorrectly asserts that the motion should be denied because the government has failed to articulate and identify any significant social, economic, or political policy reasons for FEMA's conduct in this matter.  PSC Opp. at 28.  PSC misapprehends the applicable standard.  The Fifth Circuit has explicitly rejected the argument that the government must articulate and prove that FEMA actually considered social, economic or political policy factors.  In *Baldassaro*, the court explained:

> The Supreme Court's seminal decision in *United States v. Gaubert* instructs that when established government policy allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when he exercises that discretion.  As the Supreme Court noted, the appropriate inquiry is whether the act in question is "susceptible to policy analysis."

*Baldassaro*, 64 F.3d at 211.  *See also Gaubert*, 499 U.S. at 324; *Johnson v. United States*, 2000 WL 1528078 *3 (E.D. La. 2000).

Moreover, if a statute or regulations authorized the challenged conduct, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  *Gaubert*, 499 U.S. at 324.  *See also Baldassaro*, 64 F.3d at 208-09.  As the court in *Bragg v. United States*, 55 F.Supp.2d 575 (S.D. Miss. 1999) explained:

> [I]n light of this presumption, to survive a motion to dismiss based on the discretionary function exception a complaint "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." . . . [I]n determining whether the discretionary function exception bars a suit against the government, the focus of the inquiry is on the nature of the action taken and on whether that action is susceptible to policy analysis.

*Id.* at 597 (citing *Baldassaro*, 64 F.3d at 208).

In the instant case, the applicable statutes and regulations explicitly authorized FEMA to

exercise its discretion to determine appropriate temporary emergency housing and authorized it to use issue EHUs.[15]/  Neither the applicable statute nor regulation imposed any mandatory and specific requirements relating to formaldehyde.  42 U.S.C. §5174(b)(2)(A); 42 CFR §206.110(c).  Congress explicitly instructed that the decision should be based on "upon considerations of cost-effectiveness, convenience to the individuals and households, and such other factors as the President may consider appropriate."  42 U.S.C. §5174(b)(2)(A).  Similarly the applicable regulation instructed FEMA to "determine the appropriate type of housing assistance to be provided . . . based on considerations of cost-effectiveness, convenience . . . and availability of the types of assistance."  44 CFR §§206.110(a), (c), 206.117.

As such, the issue before the Court is whether the challenged conduct, FEMA's failure to insert formaldehyde related design specifications in its contracts to purchase trailers in the context of the immediate and urgent need to obtain EHUs as quickly as possible to provide temporary emergency housing for more than 140,000 families all in the context of responding to the most destructive natural disaster in the history of the United States that destroyed 300,000

---

[15]/    PSC highlights FEMA's Office of General Counsel (OGC) June 2006 instruction not to test individual units, *see* PSC Opp. at 37; characterizes FEMA's decision to assess the effectiveness of ventilation instead of testing individual units as "manipulation" of data; and asserts that FEMA choose a level of concern that was 100 times higher than "health base levels." *See* PSC Opp. at 42.  All of these actions constituted discretionary decisions that are susceptible to health and safety, economic, and social policy considerations.  Moreover, involvement of OGC in the policy making decision was appropriate in the context of ongoing concerns about of FEMA's response, particularly in the context of the filing of the *Hillard* class action complaint.  Furthermore, what PSC's refers to as "manipulation" of data is no such thing but, rather, the determination to test effectiveness of ventilation as a global remedy for formaldehyde accumulation as opposed to testing concentration levels in individual units.  Similarly, FEMA's decision to rely on "health base levels" such as ATSDR's MRLs is reasonable given that ATSDR explicitly advises that they may be 100s of times below the level that will cause any effect and should not be used as "action levels" by other agencies.  Ex. 35, ATSDR MRLs at 00001 [Dkt. 196-46].

homes destroyed and displaced over 1.1 million people is susceptible to policy concerns.  Clearly

FEMA Contract Officers' decision regarding what terms to include in the contracts in the context

of the immediate and urgent need for temporary emergency housing and decision to rely upon

commercial vendors and manufacturers to provide safe EHUs is susceptible to health and safety,

social, and economic policy considerations.

Similarly, PSC challenges the sufficiency of FEMA's response to formaldehyde concerns.

It is well established that decisions regarding what actions to take in response to health and safety

concerns are susceptible to policy analysis because they required the decision maker to weigh and

balance health risks, various potential response actions, and potential health and safety concerns,

as well as political, social and economic consequences associated with any potential response.[16]

FEMA's decision regarding the appropriate response to formaldehyde is similarly infused with

such policy considerations, including, but not limited to, assessment of the magnitude of the

problem and assessment and consideration of potential solutions to the health and safety concern

– including everything from doing nothing to immediately evicting and relocating all 140,000

families.  FEMA chose neither of those options but, rather, decided to deal with actual

complaints on a case-by-case basis, issue a brochure that instructed occupants to increase

ventilation and see their doctors if they had health concerns, and study the effectiveness of

ventilation in reducing formaldehyde levels.[17]  Ex. 8, Dec. Souza ¶14 [Dkt. 196-12]; Ex. 21,

---

[16] *See also* Cases cited in Defendant United States of America's Memorandum in Support of its Motion to Dismiss Plaintiffs' FTCA and Contract Claims For Lack of Subject Matter Jurisdiction at 43 fn.23 [Dkt. 196-3].

[17] PSC asserts that FEMA's brochure was misleading because it should have provided additional information.  Although not relevant to discretionary function analysis, the brochure is accurate and urged occupants to see their medical care provider if they had health concerns. Again, PSC is simply challenging FEMA's decision regarding what constituted sufficient

FEMA Corresp. [Dkt. 196-32]; Ex. 22, Brochure [Dkt. 196-33].  Moreover, as FEMA's awareness and of the nature and scope of the potential problem increased, FEMA modified its response to address the increased concern.[18]/  Contrary to PSC's argument, whether FEMA was negligent and violated any standard of care is irrelevant; rather, the issue is simply whether the challenged decisions, decisions made in the context of an emergency disaster response, are susceptible to policy analysis.  Because the government has shown that the decisions at issue are not only susceptible but fraught with policy concerns Court should reject PSC's argument.

**VI.    Administrative Master Complaint Count 1.**

      **A.    La. C.C.Art. 2696, Claim For Warranty Against Vices or Defects**.

      PSC apparently does not challenge the government's argument that the Court lacks jurisdiction over its Count 1 La.C.C. Art. 2696 claims.[19]/  Any claim premised on La.C.C. Art. 2696 is a contract claim because it arises out of the "lease" of the trailer from FEMA.  *See Barnes v. Riverwood Apt. Part.*, App., 870 So.2d 490 (La.App. 2004).  As PSC recognizes, this Court lacks subject matter jurisdiction over any such contract claim.  PSC Opp. 49-50.

      Moreover, even if PSC's Count 1, La.C.C.Art. 2696 claim constitutes a tort, dismissal is

---

information and/or alleging that FEMA made negligent misrepresentations.  If the former, the claim is barred by discretionary function, and if the later it is barred by the misrepresentation exception.  28 U.S.C. §2680(h).  Furthermore, as FEMA learned more it issued additional brochures that provide further information to occupants.  Ex. 26, FEMA Flyer [Dkt. 196-37]; Ex. 30, FEMA/CDC Formaldehyde Flyer [Dkt. 196-41].

[18]/    *See* Ex. 18, Statement Paulison at 000007-08 [Dkt. 196-29]; Ex. 24, FEMA Release at 000191 [Dkt. 196-35]; Ex. 25, FEMA Release at 00193-94 [Dkt. 196-36]; Ex. 29, CDC/FEMA Joint Release [Dkt. 196-40]; Ex. 30, FEMA/CDC Formaldehyde Flyer [Dkt. 196-41].

[19]/    La.C.C.Art. 2696 provides in pertinent part that [t]he lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and . . . [t]his warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee."  La.C.C.Art. 2696.

required.  Article 2696 imposes strict liability.  *See Montecino v. Bunge Corp., Inc.*, 895 So.2d 603 (La.App. 2005).  It is well established that the FTCA does not extend the waiver sovereign immunity to claims based upon strict liability.  28 U.S.C. §§1346(b)(1), 2671.[20]/

### B.    La.C.C.Arts. 2317, 2317.1, Acts Of Others And Of Things In Custody.

PSC asserts that the Court has subject matter jurisdiction over their Count 1 La.C.C.Arts. 2317, 2317.1 negligence claims.  PSC Opp. at 52.  The government agrees that the claims premised on La.C.C.Art. 2317, as modified by 2317.1, sound in negligence and are not barred by the Tucker Act, 28 U.S.C §§1346(a)(2), 1491(a).  Nevertheless, dismissal of these claims is required because they are barred by the discretionary function exception for the same reason that the other tort claims are barred.  Furthermore, the Court also lacks jurisdiction over this claim to the extent it authorizes or imposes liability for acts of any person or entity other then a FEMA employee acting within the scope of his employment.  28 U.S.C. §1346(b)(1).

---

[20]/     *See also Dalehite v. United States*, 346 U.S. 15, 44 (1953) (the FTCA "is to be invoked only on a 'negligent or wrongful act or omission' of an employee"); *Laird v. Nelms*, 406 U.S. 797, 802-03 (1971); *Lively*, 870 F.2d at 300; *Lathers v. Penguin Industries, Inc.*, 687 F.2d 69, 72 (5th Cir. 1982); *Aretz v. United States*, 604 F.2d 417, 427 (5th Cir. 1979).

## CONCLUSION

For all the reasons set forth herein, and in the government's initial memorandum, the Court should grant the United States' motion and dismiss Plaintiffs' claims for lack of subject matter jurisdiction.

Dated: July 2, 2008.                    Respectfully Submitted,

GREGORY S. KATSAS
Assistant Attorney General, Civil Division

C. FREDERICK BECKNER III
Deputy Assistant Attorney General, Civil Division

J. PATRICK GLYNN
Director, Torts Branch, Civil Division

MICHELLE BOYLE
Trial Attorney

//S// *Henry T. Miller*
HENRY T. MILLER (D.C. Bar No. 411885)
Senior Trial Counsel
United States Department of Justice
Civil Division – Torts Branch
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20004
Telephone No:  (202) 616-4223
E-mail:  Henry.Miller@USDOJ.Gov

Attorneys for the United States of America

OF COUNSEL:

JORDAN FRIED
Associate Chief Counsel
JANICE WILLIAM-JONES
Trial Attorney
FEMA/DHS
Department of Homeland Security
Washington, D.C. 20472

**United States' Reply To Plaintiffs' Opp.**
**Memo. To United States' Motion to Dismiss**          26

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2008, the foregoing Memorandum, and accompanying

Motion, Declaration, and Exhibits were filed via the U.S. District Court's CM/ECF electronic

filing system a copy thereof was served upon Liaison Counsel.

//S// *Henry T. Miller*
HENRY T. MILLER (D.C. Bar No. 411885)