UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                          MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                 SECTION "N-4"
                                             JUDGE ENGELHARDT
                                             MAG. JUDGE ROBY


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


DEFENDANT UNITED STATES OF AMERICA'S MOTION
TO DISMISS PLAINTIFFS' FTCA AND CONTRACT CLAIMS
FOR LACK OF SUBJECT MATTER JURISDICTION


U.S. EXHIBIT NO. 38

1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


| | | |
|---|---|---|
| KEITH HILLARD, ET AL, | * | Civil Action |
| | * | No. 06-2576 |
| Plaintiffs, | * | |
| | * | Section "S" |
| v. | * | |
| | * | New Orleans, Louisiana |
| UNITED STATES OF AMERICA, | * | September 13, 2006 |
| ET AL, | * | |
| | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * *

MOTIONS,
BEFORE THE HONORABLE MARY ANN VIAL LEMMON,
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiffs:            Bice & Palermo
                              By:  J. ROCK PALERMO, III, ESQ.
                              723 Kirby Street
                              Post Office Box 2125
                              Lake Charles, Louisiana 70602

                              Sean K. Trundy, LLC
                              By:  SEAN K. TRUNDY, ESQ.
                              Post Office Box 41343
                              North Charleston, SC 29423

For the Defendant,            U.S. Department of Justice
United States of America:     Federal Programs Branch
                              DC Civil Division
                              By:  JACQUELINE E. COLEMAN, ESQ.
                              20 Massachusetts Avenue, Rm. 7214
                              Washington, DC 20001

For the Defendant,            Saporito Law Firm, LLC
Fleetwood Enterprises, Inc.:  By:  EDWARD T. HAYES, ESQ.
                              639 Loyola Avenue, Suite 2100
                              New Orleans, Louisiana 70113

APPEARANCES (Cont'd.):


For the Defendants,                   Jones, Walker, Waechter,
KZRV LP, Starcraft RV, and            Poitevent, Carrere & Denegre, LLP
Pilgrim International:                 By:  MADELINE FISCHER, ESQ.
                                      By:  RYAN E. JOHNSON, ESQ.
                                      Four United Plaza
                                      8555 United Plaza Boulevard
                                      Baton Rouge, Louisiana 70809


For the Defendant,                    Scandurro & Layrisson, L.L.C.
Gulf Stream Coach, Inc.:              By:  TIMOTHY D. SCANDURRO, ESQ.
                                      607 St. Charles Avenue, Suite 100
                                      New Orleans, Louisiana 70130


                                      Duplass, Zwain, Bourgeois,
                                      Morton, Pfister & Weinstock
                                      By:  ANDREW D. WEINSTOCK, ESQ.
                                      Three Lakeway Center
                                      3838 North Causeway Boulevard
                                      Suite 2900
                                      Metairie, Louisiana 70002


Court Audio Operator:                 Cynthia Crawford

Transcriptionist:                     Dorothy Bourgeois
                                      c/o U.S. District Court
                                      500 Poydras Street, Room C151
                                      New Orleans, Louisiana 70130
                                      (504) 589-7721


Proceedings recorded by electronic sound recording,

transcript produced by transcription service.

3

1                 P R O C E E D I N G S

2            (Wednesday, September 13, 2006)

3            (Call to Order of the Court)

4       THE COURT:  Civil Action 06-2576, *Keith Hillard v.*

5 *United States of America*.  Would Counsel please step forward

6 and make your appearances for the record.

7       MR. PALERMO:  Your Honor, Rock Palermo and Sean

8 Trundy for the Plaintiffs.

9       MS. COLEMAN:  Jacqueline Coleman here on behalf of

10 the United States.

11       MR. JOHNSON:  Good morning, Your Honor, Ryan Johnson

12 and Madeline Fischer on behalf of KZRV, Starcraft and Pilgrim.

13       THE COURT:  Thank you.

14       MR. SCANDURRO:  Good morning, Your Honor, Tim

15 Scandurro and Andy Weinstock for Gulf Stream Coach.

16       THE COURT:  Thank you.  All right, I am ready when

17 you are.

18       MR. PALERMO:  Your Honor, there's a number of several

19 motions; I don't know what you'd like to take up first.

20       THE COURT:  Well, I do not have any preference.  I

21 will allow you to do it your way.

22       MR. PALERMO:  I suggest perhaps that the United

23 States' Motion to Dismiss would go first.

24       THE COURT:  Thank you.

25       MS. COLEMAN:  Good morning, Your Honor, Jacqueline

1    Coleman appearing on behalf of the United States.   The issue

2    presented in the United States' Motion to Dismiss is actually

3    quite narrow.   It's simply whether or not this Court has

4    subject matter jurisdiction over the Stafford Act that

5    Plaintiffs have alleged.   And as demonstrated in the

6    Government's Motion to Dismiss as well as our opposition to

7    Plaintiff's Motion for a TRO, that question must be answered in

8    the affirmative.

9           Their claim is against the United States which

10   requires that there be a waiver of sovereign immunity and as

11   Plaintiffs can see, there is no waiver of sovereign immunity in

12   the Stafford Act itself.   Therefore for this Court to have

13   jurisdiction over their claim any waiver must be found in the

14   Administrative Procedure Act.   The Administrative Procedure Act

15   waives sovereign immunity as to challenges to final agency

16   decisions except in two instances; one, where the underlying

17   statute, here the Stafford Act, expressly precludes judicial

18   review.   And secondly, where the action challenged is committed

19   to agency discretion by law.

20          As we've demonstrated in our Motion to Dismiss both

21   exceptions apply in this case, however, because it's very clear

22   that the Stafford Act expressly precludes judicial review here,

23   there is no need to actually analyze this case under the second

24   exception.   Section 5148 of the Stafford Act precludes from

25   judicial review any agency contact pursuant to the Stafford Act

1    that is a discretionary function.  And here, Plaintiffs are

2    challenging FEMA's decision to provide trailers to victims of

3    Hurricanes Katrina and Rita which is a discretionary function

4    pursuant to 42 USC Section 5174 which authorizes the President

5    -- it specifically provides that the President may provide

6    direct housing assistance.

7            And pursuant to that provision, FEMA in this

8    situation did provide trailers and Plaintiffs claim under the

9    Stafford Act is based on the provision of trailers pursuant to

10   that discretionary authority.

11           As we cited in our brief, the body of case law under

12   the Stafford Act is actually quite small, but in all of those

13   cases it's very clear that in determining whether or not there

14   is a viable Stafford Act claim which is the only claim that

15   Plaintiffs currently have against the United States.  They look

16   to whether or not there has been a mandatory requirement in the

17   Stafford Act itself or in its regulations that would remove the

18   conduct from the express preclusion of judicial review under

19   Section 5148.  And as Plaintiffs papers are quite clear, they

20   in fact have not alleged any required conduct under the

21   Stafford Act that FEMA has violated, and for that reason their

22   claim should be dismissed for lack of jurisdiction.

23           What Plaintiffs have done in their papers is rely on

24   a large body of case law under the Federal Torts Claims Act and

25   although the Government did cite a couple of FTCA cases, it was

6

1   for the purpose of laying out the test that courts that have

2   gone to evaluate Stafford Act claims have used.  It was not to

3   suggest as Plaintiffs have that FTCA cases have any direct

4   applicability to the question that's currently before this

5   Court.  Plaintiffs had brought a Torts Claim Act and they

6   dismissed it, and therefore the only issue is whether or not

7   they have a viable Stafford Act claim.

8           And as the case law is clear and as we've

9   demonstrated in our papers, the conduct that they are alleging

10  was unlawful is not a requirement of the Stafford Act or its

11  regulations, and therefore, for that reason, this conduct is

12  within the express preclusion of judicial review under the

13  Stafford Act and their claim should be dismissed.  If

14  Your Honor would like me to I can turn to their Motion for

15  Preliminary Injunction because in part the disposition of the

16  Motion to Dismiss does dictate that that motion also be denied.

17          THE COURT:  Yes, ma'am.

18          MS. COLEMAN:  Or I can reserve that for later.

19          THE COURT:  Go forward, please.

20          MS. COLEMAN:  Okay.  The Plaintiffs here are seeking

21  a mandatory preliminary injunction and the standard for such

22  relief is extraordinarily high and has not been met in this

23  case.  They must demonstrate four things:  One is a substantial

24  likelihood of success on the merits.  Number two is irreparable

25  harm.  Number three is that granting the injunction would be

1   more harmful to the Plaintiffs than to the United States.   And

2   then second (sic) that granting the injunction is in the public

3   interest.   And we submit that they have not satisfied any of

4   the elements of a mandatory preliminary injunction.

5          And for the reasons that we've argued that our Motion

6   to Dismiss should be granted, their Motion for Preliminary

7   Injunction should be denied.   The Plaintiffs have not

8   demonstrated any likelihood of success on the merits.   Again,

9   because it has not demonstrated any requirement of the Stafford

10   Act that they alleged the United States has violated.

11          As to their claim of irreparable harm, the only

12   support that they have submitted to this Court is a newspaper

13   article that has absolutely nothing to do with the named

14   Plaintiffs in this action, and in fact, that newspaper article

15   does suggest that there are not in fact regulations that govern

16   the trailers that are at issue in this lawsuit.   And for that

17   reason they've failed to demonstrate that if this Court denies

18   their relief that the Plaintiffs will suffer any irreparable

19   harm.

20          And then as a secondary point, Plaintiffs failed to

21   bring their motion earlier.   They've waited by their own

22   evidence almost ten months after they claimed there was

23   evidence of high levels of formaldehyde before they sought this

24   mandatory preliminary injunction.   And as we've indicated in

25   our opposition, the case law suggests that the failure to bring

· 8

1   a timely Motion for Preliminary Injunction underlines any kind

2   of irreparable harm.  And for that reason we submit that their

3   motion should be denied.

4        And then as to the last two elements of preliminary

5   injunction, here they're asking the Court to essentially

6   require FEMA to conduct testing under court supervision and the

7   Stafford Act simply does not provide that such a burden be

8   placed on FEMA and in the absence of their demonstration of

9   irreparable harm, it would be more harmful to the agency than

10  to Plaintiffs for this Court to impose a burden particularly at

11  the height of hurricane season and force FEMA to direct

12  resources to court-ordered testing that claimants have failed

13  to demonstrate is required.  And for these reasons we ask the

14  Court to grant our Motion to Dismiss as to Plaintiff's Stafford

15  Act claim as well as to deny their Motion for Preliminary

16  Injunction.

17       THE COURT:  All right.

18       MS. COLEMAN:  If Your Honor has any questions, I'll

19  be happy to answer them.

20       THE COURT:  I am all right at this time.

21       MS. COLEMAN:  Okay, thank you.

22       MR. TRUNDY:  May it please the Court, Your Honor, I'm

23  Sean Trundy here on behalf of Plaintiffs and thank you for the

24  opportunity to appear in your court.  Judge, the Hurricane

25  Katrina victims that are in FEMA trailers need your help, and

1  you have the power to help them.  The United States' motion

2  tells you that this Court can't even address these questions,

3  and I'm here to try to convince you otherwise.

4       The problem is, is that these folks are trapped in

5  300 to 320 square feet of living space with high levels of

6  formaldehyde in the heat and humidity of the Gulf Coast.

7       THE COURT:  Tell me how my mandating testing is going

8  to help them?  It seems to me if they are there and they are

9  being exposed to it, that they can move out.  But I mean what

10  can FEMA do if they test and find that it is?  What is the

11  alternative that you suggest?

12       MR. TRUNDY:  Well Your Honor, good question and I

13  will address it in this way.  We asked for the injunction.  In

14  response to the injunction FEMA said:  No, you shouldn't do

15  that.  Pilgrim and Starcraft, I believe, said:  Don't do that.

16  We don't want you to go into those trailers.  Gulf Stream has

17  come up with an interesting and I think very mature and well

18  thought out response.  Gulf Stream says that sounds like a

19  pretrial discovery issue.  It makes some sense that if testing

20  is going to be done, that everybody know how it is done and

21  what the results are and that the Court have some interaction

22  in it, so refer this to the magistrate.  And we concur on that.

23  We think that that is a good decision, a good case management

24  decision, a good decision in the broad scheme of things.

25       And so another important point, Judge, is that FEMA

1    decided to engage in testing on its own and it announced it to

2    MSNBC and not to us.  We learned of it from MSNBC.  And I

3    wanted to talk about that because that kind of shows we know

4    there is a problem here.  There is a problem.  The question is:

5    What is the vehicle to get to the relief?

6           So the answer to your precise question, Judge, is

7    that we are impressed and appreciate Gulf Stream's response to

8    that motion and we agree with their suggested relief.  Their

9    referring that to a magistrate and dealing with it as a

10   pretrial discovery issue sounds good to all of us.  Let's all

11   be on the same page about what's going on and maybe we'll get

12   some good results out of a certain manufacturer's trailer out

13   of some trailers rather than others.  That's unlikely but it

14   would be good to see.

15          Judge, going back to the 12(b)(1) motion where the

16   United States says you can't address this case; we disagree.

17   In this Court's opinion in the Guimbellot case back in 2004,

18   you wrote that ultimately a Motion to Dismiss for lack of

19   subject matter jurisdiction should be granted only if it

20   appears certain that the plaintiff cannot prove any set of

21   facts in support of his claim that would entitle plaintiff to

22   relief.  That's not the case here.

23          In the Porche decision from 1999 you concluded that

24   because of factual findings regarding jurisdiction are

25   intertwined with the merits of the case, a 12(b)(1) dismissal

1   would be inappropriate.   The same holds true here, Judge.

2              I want to address this issue.   Both sides have cited

3   a bunch of cases.   One thing that leaps out to me out of these

4   cases Judge is how many times has FEMA been told that it does

5   not have unfettered discretion in disaster relief efforts under

6   the Stafford Act?   Judge Hittner in Texas told them that it

7   wasn't.   The Fifth Circuit in the Denham case said if we were

8   to accept the Government's argument it would essentially

9   emasculate the waiver of sovereign immunity that we find in the

10  APA, in the Stafford Act itself, because the Stafford Act says

11  no judicial review of discretionary actions.   And in effect

12  Federal Torts Claims Act so we can't emasculate something that

13  has been given by the Government.

14              In the Dureiko case which the Government cites and

15  which is important, the court says:   Accepting the Government's

16  position would lead to some absurd results.   In the Torres case

17  which the Government cites, the Court wrote, and that was the

18  Virgin Islands case:   If Congress had intended every aspect of

19  authorizing, implementing and operating a disaster relief

20  effort to be outside the waiver of immunity granted by the

21  FTCA, it would have used broader language than the identical

22  discretionary function exemption found in both the FTCA and the

23  Stafford Act.   Torres leads me to what the Government brought

24  up in its reply, Judge.   Was, oh these plaintiffs are casting a

25  tort wolf in a sheep's clothing.

1    Well, we're not doing that, Judge.  What we're saying

2  is that the FTCA and the Stafford Act have exactly the same

3  discretionary immunity exemption and the Torres case agrees

4  with that.  The U.S. advocates the two part test that we find

5  in the U.S. Supreme Court case of Berkovitz which is a tort

6  claims case.  And importantly, in the Dureiko case, relied on

7  by FEMA here, the U.S. argued that the two part test coming

8  from the FTCA collapses into one analysis.  It wasn't a policy

9  decision under the Stafford Act.  Well, they were right to say

10  you've got to look at that two part test and so forth.  They

11  took that position in Dureiko.  They can't here now say that

12  those cases don't apply.

13    You, of course, Judge are required to look at what

14  was the intent of Congress when it passed these laws and when

15  it waives sovereign immunity as to some things but granted a

16  discretionary immunity exemption as to others.  The U.S. cites

17  the Heckler case, a 1985 Supreme Court case.  It's an

18  interesting case in that Chief Justice Rehnquist shows his

19  annoyance with being presented with the question of should the

20  FDA determine that a certain drug is safe and effective for

21  killing people in executions.  But he brings up two questions

22  which are important and pivotal to this analysis.  Is what was

23  done; is that peculiarly within the agency's expertise?  If so,

24  we're going to think that that may be immune, that may be a

25  discretionary item.  In this case, being a landlord is not

1   peculiarly within FEMA's expertise.

2           The second question that Chief Justice Rehnquist

3   throws out is:  Has the agency affected property rights;

4   because the courts traditionally exist to protect property

5   rights.   In this case that's precisely what we're dealing with

6   here is property rights and FEMA's dealing with these people

7   and where they live and what they live in.   So under these two

8   analyses of the Heckler case which actually found that the

9   FDA's decision to not analyze a certain drug was immune, Chief

10  Justice Rehnquist's questions guide us towards this case, there

11  being no immunity.

12          And we know Judge from plenty of cases including

13  the Perales case cited by the Government out of the Fifth

14  Circuit, that this Court should not try to become Congress.   It

15  should not try to become the Executive Branch.   That's what

16  we're not allowed to do and we're not allowed to try to ask the

17  Court to do that with our lawsuit.   Perales in the Fifth

18  Circuit used the language of:  You can't impermissibly

19  substitute the court's judgment for that of the regulatory

20  agency whose decision making authority is delegated by

21  Congress.

22          Likewise you can't -- the Plaintiffs can't seek a

23  restructuring of the apparatus established by the Executive

24  Branch to fulfill its legal duties.   We don't do that, Judge,

25  and what that leads me to is that you can't sue the Government

14

1   for being a bad Government, but you can sue the Government for

2   being a bad landlord.  And Your Honor, that's what we're doing

3   in this case.  The pivotal issue is that once the decision is

4   made, that protected decision, that debate that goes on in

5   FEMA, wherever it might be about are we going to give money?

6   Are we going to buy a hotel?  Pay for hotel rooms?  Buy

7   trailers; what are we going to do?  Once that's done the

8   execution of that decision is reviewable by this Court.  If the

9   Court will allow me, I'd like to read from the Indian Towing, a

10  U.S. Supreme Court case, it's at keynotes 8 and 9 and it's

11  important language, Judge.

12          This case of course was a barge case that originated

13  in this district.  And the Supreme Court wrote:  The Coast

14  Guard need not undertake the lighthouse service.  But once it

15  exercised its discretion to operate a light on Chandeleur

16  Island and engendered reliance on the guidance afforded by the

17  light, it was obligated to use due care to make certain that

18  the light was kept in good working order.  And if the light did

19  become extinguished, then the Coast Guard was further obligated

20  to use due care to discover this fact and to repair the light

21  or give warning that it was not functioning.  If the Coast

22  Guard failed in its duty and damage was thereby caused to

23  petitioners, the United States is liable.  And that was a tort

24  claims case right there.

25          Interestingly, Judge, you could -- and the court said

15

1   discretionary immunity doesn't shield the Coast Guard in this

2   case.  Had it wanted to, it could have --

3           THE COURT:  That is a little bit easier to see

4   because you know what they did that they should not have done

5   and you know what they should have done instead of what they

6   did.  That is what I am having a real hard problem

7   conceptually.  Can you answer those two questions as it applies

8   to you?  It probably does not really fit right into the motions

9   that we are hearing but just conceptually, the whole case?

10          MR. TRUNDY:  Conceptually Judge, the fact of the

11  Government becoming a landlord is vitally important and

12  addresses your question, because you're right, you have to get

13  to the heart of the matter.  What did the Government do wrong

14  here?  FEMA decided what we are going to do is we are going to

15  purchase these trailers and then we are going to become a

16  landlord.  We are going to enter into leases with these folks.

17  The leases themselves incorporate state law.

18          When FEMA does -- when the Government does that in

19  any state, in any jurisdiction, when it becomes a landlord it's

20  subject to state laws, and it has to be a good landlord.  There

21  is a federal common law implied warranty of habitability.  We

22  assert that the National Housing Act applies.  We assert that

23  the Manufactured Housing Act informs what FEMA ought to do.  In

24  short, Judge, FEMA doesn't have the right to be a landlord and

25  harm its tenants.  That's the wrong that we're asserting here.

16

1    And when you say -- when we talk about what is the wrong; one

2    thing that the Government doesn't out and out say that the FTCA

3    and the APA are mutually exclusive but it's important for me to

4    say that they are not, that you can have one wrong that can

5    yield to types of relief.

6              And as to, you know, we seek to represent a class.

7    There's a lot of people and as to these people and as to FEMA,

8    as opposed to the manufacturers, the best route that we feel is

9    to seek equitable relief from this Court through the APA.   So

10   the wrong is, Judge, that the landlord -- that once it became a

11   landlord, it didn't have the right, it didn't have the

12   discretion to expose its tenants to this harmful gas.

13             THE COURT:  And what should they have done?

14             MR. TRUNDY:  Judge, well as you have mentioned, we

15   are not at the point where we have to suggest the remedies.

16             THE COURT:  I am just trying to understand it

17   conceptually.

18             MR. TRUNDY:  Well, once we get through discovery

19   we'll find out and it deals with the manufacturers as well, why

20   it is that these folks are in this position.   Should there have

21   been better supervision of the construction of these trailers?

22             THE COURT:  Well, we have known for what, 40 years

23   that trailers, mobile homes, have formaldehyde.   I mean that is

24   nothing new.  Let us say you have thousands and thousands and

25   thousands of homeless people and you have to provide housing,

1   what is the alternative?

2        MR. TRUNDY:  Judge, I don't know that we are required

3   at this point to answer.  I certainly understand the

4   intellectual curiosity of where do you go with this, what was

5   wrong and what was the alternative.  There could be many

6   answers that will come out in discovery.  Is it a quality

7   control issue?  Is it an inspection issue?  Is it a warnings

8   issue?  Is it to have moved -- to have had a plan to move these

9   folks out sooner than leaving them in for a year now, or ten

10  months in this environment where we know that these things are

11  not made for long-term habitability?  It's something, Judge.

12  We don't have to answer the question at this time.  They are

13  responsible as a landlord.  They don't have the right; they

14  don't have the discretion to expose these folks to this gas.

15       The Fifth Circuit has called it discretionary

16  decision making accompanied by non discretionary acts of

17  execution.  We attack here the non discretionary acts of

18  execution.  And just going back to -- we had gone onto this

19  colloquy under the Indian Towing Act, Judge.  You certainly

20  could see where a court could in that case say:  Well, they let

21  the light go out, there could have been these decisions of

22  there were no boats coming, we would save on the electrical

23  bills or so forth.   You can always find decisions behind any

24  action.  What we are obligated to do is to use the Fifth

25  Circuit's analysis in Parker, the common sense and functional

18

1   approach, the common sense the pragmatist approach of what is

2   the essential act that spawned the damages?  Was it the

3   decision to put them in the trailers?  It was becoming a

4   landlord that is keeping people in an environment which is

5   poisoning them with formaldehyde gas.

6           We have asserted in our briefing Judge that you don't

7   need to get to the standards question because we're not

8   attacking a choice or a judgment.  But if you were to have to

9   get to the standards question, Dureiko informs the analysis

10  there, there the court said:  Once you've entered into a

11  contract you, the Government, have voluntarily established

12  standards for yourself.  The same thing has happened in this

13  case.  The lease implicates state law.  As I mentioned earlier,

14  there's the National Housing Act, there are the state laws that

15  govern the landlords and tenants.  There's the Federal Common

16  Law of Habitability.  Another point from the Gaubert or

17  Gaubert, a U.S. Supreme Court case and the Varig Airlines case,

18  Judge, is that they say when the court does have to find some

19  standard to measure the Government's conduct against you look

20  for a statute, regulation or a policy.

21          Policy is important because when you read through the

22  National Housing Act which applies by its very terms to all

23  branches of Government and the Manufactured Housing Act.  When

24  you look at the Federal Register and what's in there about

25  formaldehyde, the OSHA and the HUD regulations, it's clear that

19

1   there is a policy here not to expose people to what they're

2   being exposed to in this case.

3           Judge, I want to -- my last point before closing is

4   that the Berkovitz U.S. Supreme Court case ends with a note

5   about discovery may yet yield.  What went on here may shed

6   light on whether it was discretionary, whether there was a

7   decision involved.  That ties in with your 12(b)(1) decision in

8   Porche where you found that the factual findings could be

9   intertwined with the claims in the case.  And so we would

10  assert Judge, that you don't have to at this time, that it

11  would not be the right thing to assert at this time, that as a

12  matter of law these plaintiffs can never make an APA claim

13  against the Government, because they can.

14          I want to -- I have already addressed the injunction

15  issue, Judge, and so I just want to close with a short

16  statement about two of the named Plaintiffs.  Jenny Lusich

17  lives in Bay St. Louis and they have a piece of property where

18  they've got about three trailers on there.  And Jenny said to

19  me out there at the property, "You know, we are where we are

20  and it is what it is, and we're dealing with it.  But this is

21  going to happen again, and we just hope that the next crew of

22  folks or segment of society that has to deal with this has it a

23  little better."

24          And then I talked to Mr. Carter, who is Jenny

25  Lusich's father and I mentioned to him that I live on the Coast

20

1   in South Carolina and he pointed out his trailer and he said,

2   "Take a look at your future."  Judge, you have the power to

3   help these people.  We ask that you do it and deny the United

4   States' Motion to Dismiss.

5          THE COURT:  Thank you.

6          MS. COLEMAN:  Your Honor, I want to correct a

7   misimpression that Plaintiffs gave which is that we are making

8   the argument that this Court doesn't have the authority to

9   review FEMA's conduct.  The argument we're making is that they

10  don't have a viable Stafford Act claim and that is a

11  distinction that is relevant to have this Court rule on the

12  Government's Motion to Dismiss.  I'll take the Dureiko case

13  which is one of the ones that Plaintiffs have used in support

14  of their argument to say that this Court should deny our Motion

15  to Dismiss.

16          In that case it wasn't a Stafford Act claim that the

17  Plaintiffs were bringing.  The argument that they made there

18  was that Section 5148 of the Stafford Act preclude any review

19  of the conduct that was at issue in Dureiko.  The Court went on

20  to hold that the Plaintiffs had a viable contract claim, not a

21  Stafford Act claim, and that's very different from the

22  situation here.  We are not making the argument that Section

23  5148 precludes any review of the conduct that Plaintiffs are

24  challenging.  We are saying that Section 5148 precludes a

25  Stafford Act claim.  And both parties have cited two cases

1   where in fact a Stafford Act claim was allowed to proceed past

2   a Motion to Dismiss, and in both of those cases there was a

3   specific provision that the court found that was violated by --

4   allegedly violated by the Government.

5           Here, as we've pointed out in our Motion to Dismiss,

6   Plaintiffs have not identified any provision of the Stafford

7   Act that they are alleging was violated.  They have various of

8   tort liabilities.  They claim that the Government was a bad

9   landlord.  Those however are not grounded in any requirement of

10  the Stafford Act.  So, even under the analysis in cases on

11  which they've relied their claim is not -- does not withstand a

12  Motion to Dismiss.

13          For example, in their opposition they cite the

14  McWaters case and argue that this Court should follow that

15  analysis and deny our motion.  In that case the court dismissed

16  some of the claims.  Others were allowed to go forward.  The

17  only Stafford Act claim that was allowed to go forward was

18  based on the court's finding that there was an allegation of a

19  violation of Section 42 USC 5151.  In the Ninth Circuit's case

20  Graham, the court found that there was a clearly prescribed

21  requirement in the Stafford Act under Section 5174(e) that was

22  allegedly violated and for that reason they held that the

23  discretionary function test was not applicable.

24          Here, Plaintiffs have advanced various theories of

25  liability but none of them is grounded in the Stafford Act.

1    And because they've failed to cite and they have now had

2    several opportunities to do so, both in their Motion for TRO

3    and their opposition to our Motion to Dismiss, and here in

4    court, they still have failed to identify any requirement in

5    the Stafford Act or its regulations that allows their claim to

6    go forward.  And because they've failed to do so, their claim

7    under the Stafford Act is precluded as a matter of law under

8    Section 5148 because there has not been any identification of a

9    requirement in the Stafford Act that would allow a Stafford Act

10   claim to go forward.

11          The other point I wanted to address is the notion of

12   discovery.  We submit that, again the issue before this Court

13   is a legal one.  Discovery has no bearing on whether or not

14   there's a statutory provision in the Stafford Act on which they

15   could proceed past the Motion to Dismiss.  And then secondly,

16   as I indicated earlier, the basis for the waiver would be the

17   Administrative Procedure Act, and therefore any review by this

18   Court would be limited to the administrative record and that

19   would be the basis for the determination and discovery would

20   not be appropriate in that context.

21          And unless Your Honor has any additional questions I

22   think that covered their points.

23          THE COURT:  Thank you.

24          MS. COLEMAN:  Thank you.

25          THE COURT:  Anything further?

1        MR. TRUNDY:  Your Honor, we have additional motions.

2        THE COURT:  Proceed, please.

3        MR. JOHNSON:  Thank you, Judge, Ryan Johnson on

4   behalf of KZ, Starcraft and Pilgrim.  And thank you, Judge, I

5   wasn't sure if we were finished with the preliminary injunction

6   issues.  But as the Court is aware we have filed a Motion for

7   More Definite Statement.  And there are four main points that I

8   want to raise.  I know the Court is familiar with the briefs

9   and I won't reiterate what is in them, but there are four main

10  points here, Judge.  Number one, I'm going to talk about why

11  the Motion for More Definite Statement is particularly

12  appropriate in this situation.

13       The second is I'm going to point out for the Court

14  the problems that the Plaintiffs allegations pose for the Court

15  and for the moving Defendants and really for all of the

16  manufacturer Defendants.

17       The third is to address briefly the local rule that

18  the Court has enacted on Class Action Pleading 23.1 E.

19       And the fourth is to briefly address the arguments

20  that the Plaintiffs have made in response to our motion.

21       Now, on my first point Judge, the Court knows what

22  the standard is for a 12(b) motion.  Certainly, they are not

23  frequently granted and we'll admit that right up front, but

24  this case is particularly appropriate Judge for a more definite

25  statement of the Plaintiff's claims even though they have