**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | ) | **MDL NO. 07-1873** |
| FORMALDEHYDE PRODUCT | ) | |
| LIABILITY LITIGATION | ) | **SECTION "N-4"** |
| | ) | |
| | ) | **JUDGE ENGELHARDT** |
| | ) | |
| THIS DOCUMENT IS RELATED TO | ) | **MAG. JUDGE ROBY** |
| THE ADMINISTRATIVE MASTER | ) | |
| COMPLAINT | ) | |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**
**ADMINISTRATIVE MASTER COMPLAINT ON BEHALF OF NEWLY ADDED**
**DEFENDANTS CMH MANUFACTURING INC., SOUTHERN ENERGY HOMES, INC.,**
**GILES INDUSTRIES, INC., SUNRAY RV, LLC, PALM HARBOR HOMES, INC.,**
**PALM HARBOR MFG., LP, AND PALM HARBOR ALBEMARLE, LLC**

**MAY IT PLEASE THE COURT:**

**INTRODUCTION**

Newly added Defendants CMH Manufacturing, Inc., Southern Energy Homes, Inc., Giles Industries, Inc., SunRay RV, LLC, Palm Harbor Mfg., LP, Palm Harbor Homes, Inc., and Palm Harbor Albemarle, LLC (collectively hereinafter referred to as "New Defendants")[1] hereby file this Reply Brief in further support of their Motion to Dismiss Plaintiffs' Administrative Master Complaint (Pacer Doc. No. 230) and in reply to the Plaintiffs' Response to the Motion to Dismiss (Pacer Doc. No. 350) ("Plaintiffs' Response").[2]  Plaintiffs have now admitted at least two facts that require the dismissal of this action:

---

[1] Newly Added Defendants Giles Industries, Inc., Giles Industries of Tazewell, Incorporated and SunRay RV, LLC appeared as named defendants in the original Administrative Master Complaint.  Based on the evidence presented by these defendants in their Motion for Summary Judgment (Pacer Doc. 239), Plaintiffs sought leave to amend the AMC to dismiss these entities and substitute others.  This Court granted Plaintiffs motion (Pacer Doc. 380), and Plaintiffs filed their First Supplemental and Amended Master Complaint (Pacer Doc. 379) dropping Giles Industries, Inc., Giles Industries of Tazewell, Incorporated and SunRay RV, LLC from this lawsuit.

[2] As a point of reference for the Court, if FEMA provided 135,509 total occupied units to the putative plaintiffs, New Defendants' total shares of potentially occupied units appear to range from approximately .0005 (SunRay) to .0063 (CMH).

First, Plaintiffs have admitted that the Administrative Master Complaint ("AMC") fails to set forth allegations that any particular Plaintiff lived in or was harmed by any particular housing unit manufactured by any particular New Defendant.  As a result, no Plaintiff in this action has Article III standing to pursue these claims against the New Defendants.  Plaintiffs' arguments that the Constitutional standing requirements are somehow lessened merely because the Plaintiffs have attempted to pursue this matter as a class action have no support under the case law of this or any other circuit.

Second, the Plaintiffs have now admitted that the AMC is not a true "Complaint" that serves to commence an action against any of the New Defendants.  Plaintiffs' argument that they have since cured this defect impermissibly seeks to validate – after the fact – the AMC that purports to name and bind New Defendants long before these entities were parties to any lawsuit.  As a result, the AMC should be dismissed as against the New Defendants because they had not yet been named as defendants in any actual civil action at the time the AMC was filed.

**I.    Class Allegations Cannot Create Article III Standing Where the Allegations of the Complaint Fail to Establish the Court's Jurisdiction**

Plaintiffs do not dispute the following points that were raised in the New Defendants' Original Brief (Pacer Doc. No. 230-2) ("New Defendants' Brief") concerning the Article III standing issue:

1.    Plaintiffs Bear the Burden of Establishing Article III Standing.
2.    There are Three Required Elements of Article III Standing.
3.    The AMC fails to identify a single plaintiff who has lived in a housing unit made by one of the New Defendants.
4.    The AMC fails to identify a single plaintiff who was harmed as a proximate result of any action taken by any specific New Defendant.

Plaintiffs' Response fails to discuss most of the extensive United States Supreme Court and Fifth Circuit authority cited in New Defendants' Brief on the Article III standing issue.  Instead,

Plaintiffs' Response focuses on an inapposite Supreme Court decision, a non-binding Ninth Circuit decision, which has not been embraced by the Fifth Circuit, and various decisions by courts outside the Fifth Circuit.

Plaintiffs' Response essentially contends first that this Court should not examine the standing issues because this case purports to be a class action. Plaintiffs further contend that if this Court were to examine the standing issue, the constitutional requirement that a Plaintiff demonstrate that he or she has standing is somehow lessened in the context of class action by virtue of the "juridical link" doctrine - a doctrine that has not been adopted in the Fifth Circuit. As demonstrated below, both of Plaintiffs' arguments must be rejected, and this action must be dismissed based on the Plaintiffs' failure to allege facts sufficient to conclude that they have standing to pursue this matter against the New Defendants.

> **A.     Contrary to Plaintiffs' Argument, in a Class Action, the Court Must First Determine Whether Named Plaintiffs Have Standing, and Not a Single Plaintiff Is Alleged to Have Lived in Any New Defendant-Made THU.**

Plaintiffs' Response contends that this Court should essentially defer any inquiry into standing based on United States Supreme Court's decision in *Ortiz v. Fibreboard Corp*., 527 U.S. 815 (1999) ("*Ortiz*"). Plaintiffs' argument stretches the holding in *Ortiz* well beyond the breaking point. Plaintiffs argue that *Ortiz* should be read to require the Court to ignore the facial defects in Plaintiffs' AMC and defer addressing the issue of standing until "<u>after</u> class certification inquiry." Plaintiffs' Response at 2. Plaintiffs severely misconstrue the import of *Ortiz*, and the vastly different context in which the standing issue arose in that case.

In *Ortiz,* the standing issue before the Court concerned the justiciability of the claims of the <u>absent unnamed</u> class members – and not the Article III standing of the <u>named</u> class representatives themselves as in this case. *Ortiz*, 527 U.S. at 831. As a result, in *Ortiz* the Court

followed *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997) ("*Amchem*"), in holding that the class certification issue was "logically antecedent" to the standing issue because the standing issue for the absent unnamed class members would not even exist but for class certification. *Amchem*, 521 U.S. at 613. That is not true in this case. In their Motion to Dismiss, the New Defendants are not alleging that the absent unnamed class members do not have standing (although this is undoubtedly true). Rather, the New Defendants' Motion to Dismiss establishes that the underlined named Plaintiffs have failed to satisfy their burden to establish that they have Article III standing to assert claims against the New Defendants. In such a situation, the reasoning in the *Ortiz* decision is simply not applicable. In this case, unlike in *Ortiz*, the standing issue raised by the New Defendants exists independently of the Plaintiffs' attempts to make this matter a class action.

The Fifth Circuit expressly recognized this limited application of *Ortiz* and *Amchem*:

> [a]lthough there is a limited exception for suits in which the class certification issues are 'logically antecedent to the existence of any Article III issues, this exception is not applicable here. In the instant case, in contrast to *Ortiz* and *Amchem*, the standing question would exist whether Rivera filed her claims alone or as part of a class; class certification did not create the jurisdictional issue.

*Rivera v. Wyeth-Ayerst Lab.*, 283 F.3d 315, 318 n. 6 (5th Cir. 2002). In this case, the New Defendants' Motion to Dismiss for lack of standing could and would have been filed regardless of the inclusion of class allegations because the named Plaintiffs – individually – have not alleged facts sufficient establish Article III standing against the New Defendants.

For these reasons, the Fifth Circuit's ruling in *Audler v. CBC Innovis, Inc.,* 519 F.3d 239 (5th Cir. 2008) ("*Audler*"), is particularly relevant to the instant matter. In *Audler*, the named plaintiff's claims against the one defendant, with which he had dealings, were dismissed. On

appeal, the question for the Fifth Circuit became, then, whether the named plaintiff could have Article III standing against the remaining defendants with which he had not dealt.  The Fifth Circuit found that the named plaintiff lacked standing, and dismissed the appeal.  *Id*. at 248 (citations omitted).  Since the remaining defendants had no dealings with the named plaintiff, the Fifth Circuit ruled that the class defendants "have caused [the named plaintiff] no cognizable injury".  *Audler*, 519 F.3d at 247.  According to the Court, the named plaintiff "lacks standing to bring claims against any Defendant other than [the defendant with which he dealt]".   In this action, the Plaintiffs have not bothered to set forth allegations sufficient to establish that any of them has Article III standing to pursue claims against any of the New Defendants.  *See also Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 828 (W.D. La. 2003) ("*Matte*").

Plaintiffs admit that they have not alleged that any particular Plaintiff ever lived in a home manufactured by any of the New Defendants.  Plaintiffs' admission is determinative of the standing issue.  The failure of the named Plaintiffs to allege facts that demonstrate their own Article III standing to assert a claim against the New Defendants deprives this Court of subject matter jurisdiction over those claims, and as such the New Defendants must be dismissed.

> **B.     The Juridical Link Doctrine, Which Has Never Been Adopted by the Fifth Circuit, Does Not Establish Standing in this Action.**

Plaintiffs do not actually dispute that the allegations of the AMC fail to establish the standing of any individual Plaintiff as against any of the New Defendants, nor could they.  As pointed out in the New Defendants' Brief, none of the sixty-five (65) identified named Plaintiffs in this case alleges he or she ever lived in a specific housing unit manufactured by any New Defendant.  Instead, Plaintiffs argue that the juridical link doctrine is sufficient to establish standing in this instance.  Plaintiffs' argument fails for several reasons.

First, the juridical link doctrine has never been adopted by the Fifth Circuit.  *See Audler*,

4

519 F.3d at 248 ("[t]he Fifth Circuit has not yet addressed the juridical link doctrine . . ."). Having been afforded the opportunity to create new law, the Fifth Circuit instead refused to adopt the juridical link doctrine, and has correctly continued to require plaintiffs to assert direct claims against each defendant in order to satisfy the Article III standing requirement.  This Court should not accept the Plaintiffs' invitation to create new law – an invitation that has been declined by the Fifth Circuit.

Second, "the juridical links doctrine has no bearing on the issue of standing." *Matte*, 270 F. Supp. 2d at 822; *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 170-71 (D. Mass. 2004) ("[i]t is clear that class certification and Article III standing are separate and distinct issues, regardless of whether the named plaintiff's injury is similar to that of unnamed plaintiffs. . . . In short, 'the juridical link doctrine' is not relevant to the issue of standing").[3]  The Constitutional requirement of Article III standing cannot be trumped by the Ninth Circuit's judge-made "juridical link" doctrine that is applicable to Rule 23 issues only.[4]

Third, this civil action is in the same posture as was *Audler* in that there exists <u>no</u> Plaintiff who has alleged sufficient facts against any of the New Defendants to find that he or she has standing.  Accordingly, as in *Audler*, "even if [the Fifth Circuit had] recognize[d] the juridical

---

[3] *See also Lindquist v. Farmers Insurance Company of Arizona*, 2008 U.S. Dist. LEXIS 11832, *36 (D. Ariz. Feb. 6, 2008) ("*Lindquist*") ("the 'juridical links' doctrine is only appropriately applicable in the context of Rule 23 class action analysis, as opposed to the separate, threshold issue of standing."); *Siemers v. Wells Fargo & Co.*, 2006 WL 3041090, *6 (N.D. Cal. Oct. 24, 2006) ("*Siemers*") ("the juridical-link doctrine has been held not to apply to standing questions at the pleading stage."); *Forsythe v. Sun Life Financial, Inc.*, 417 F. Supp. 2d 100, 119 n.19 (D. Mass. 2006) ("*Forsythe*") ("In the separate and distinct inquiry into a plaintiff's standing . . . the juridical links doctrine is not relevant."); *Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541, 544 n.2 (D. Nev. 2004) ("The Court declines to import [the] 'juridical link' doctrine into an Article III analysis.  A doctrine developed under Rule 23 based on judicial efficiency and expedience does not play a role in the Article III standing analysis."); *see also Audler*, 519 F.3d at 248; *Aguilar v. Allstate Fire and Cas. Ins. Co.*, 2007 WL 734809, *5 (E.D. La. March 6, 2007); *Shade-Popoola v. MD-Individual Practice Association, Inc.*, 230 F.R.D. 424, 431-32 (D. Md. 2005); *In re Organogenesis Securities Litigation*, 241 F.R.D. 397, 404-05 (D. Mass. 2007).

[4] Instead, the juridical link doctrine provides an exception to the Rule 23(a) requirement of 'typicality' and/or 'adequacy of representation' in class actions against multiple defendants."  *Matte*, 270 F. Supp. 2d at 822; *see also Lindquist*, 2008 U.S. Dist. LEXIS at *36; *Siemers*, 2006 WL 3041090 at *6; *Forsythe*, 417 F. Supp. 2d at 119 n.19.

link doctrine as a basis for standing, [these Plaintiffs] could not invoke it successfully." *Id.*

Here, no Plaintiff has alleged facts that establish Article III standing as against any of the New Defendants. The juridical link doctrine, even if it had been adopted in by the Fifth Circuit, does not apply to the Article III issue raised in the New Defendants' Motion to Dismiss.

### C. Plaintiffs' Statement That They Will Create Standing Later by Matching Plaintiffs to Defendants Is Not Sufficient, and Requires the Dismissal of this Action as Against the New Defendants.

While arguing (incorrectly) that the juridical link doctrine saves the AMC from dismissal, Plaintiffs essentially admit that the AMC is deficient because it fails to include allegations that any particular Plaintiff lived in or was harmed by any particular home or manufacturer of any home. Plaintiffs then contend that they will fix this deficiency at some later date. The Plaintiffs' startling admission that the AMC is currently insufficient, combined with the inapplicability of (and failure of the Fifth Circuit to adopt) the juridical link doctrine, is more than enough to dismiss the AMC and the underlying lawsuits immediately and in their entirety.

Article III standing presents a threshold issue because "it determines the court's fundamental power to even hear the suit." *Rivera*, 283 F.3d at 319. Plaintiffs' promise to cure the existing lack of standing in the future is therefore insufficient. Because the Plaintiffs have not sufficiently pled the facts necessary to establish Article III standing, this Court lacks subject matter jurisdiction over those claims against the New Defendants, and "[w]ithout jurisdiction the court cannot proceed at all in any case. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to a court is that of announcing the fact and dismissing the cause." *Hix v. U.S. Army Corps of Engineers,* 155 Fed. Appx. 121, 127 (5th Cir. 2005) (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1995)).

Here, not a single Plaintiff has alleged that he or she has lived in a housing unit made by

one of the New Defendants.  Similarly, not a single Plaintiff has alleged that he or she was harmed as a result of any action taken by any specific New Defendant.  The AMC fails to satisfy Plaintiffs' burden of establishing Article III standing as to the New Defendants.[5]  Therefore, this Court does not have subject-matter jurisdiction over the claims against New Defendants.

## II.   Plaintiffs Admit that the AMC Does Not Constitute a Proper Complaint Against the New Defendants as Necessary to Commence an Action.

Prior to the filing of the *Pujols* Complaint on May 9, 2008, the only document naming the New Defendants was the AMC that was filed directly in the MDL Court on March 14, 2008 – eight weeks earlier.  Plaintiffs' Response admits that the AMC did not serve to commence an action as against these New Defendants.  Plaintiffs' Response, p. 11.  Instead, Plaintiffs argue that the AMC is a proper procedural device utilized in the discretion of the Court in an MDL proceeding, and that the subsequent filing of the *Pujols* complaint cured any defect in the AMC. While Plaintiffs may be correct that the AMC was and is a proper administrative device against the original Defendants, the AMC can have no impact or effect against the New Defendants because when the AMC was filed, these New Defendants were not parties to any civil action – either filed directly in the Eastern District of Louisiana or transferred here by the MDL Panel.

Plaintiffs' invitation for the Court to take a "no harm no foul" approach on this issue ignores important safeguards afforded Defendants under the Federal Rules of Civil Procedure and the Rules of the Panel on Multi-District Litigation, and creates the risk of unforeseen consequences at later stages of this litigation.[6]  Though not expressly stating as much, Plaintiffs appear to ask this Court to find that the *Pujols* Complaint serves to relate-back to, and validate

---

[5] It is not the Defendants' burden to prove that Plaintiffs lack standing.  "The party invoking federal jurisdiction bears the burden of establishing the elements of standing."  *Lujan*, 504 U.S. at 561; *Ramming v. United States of America*, 281 F. 3d 158, 161 (5th Cir. 2001).

[6] As one example, New Defendants have been forced, at significant expense, to participate in motion practice and discovery purely by virtue of having been "named" in the AMC.

the addition of the New Defendants to this action through the AMC.  Again, this is more than a matter of form over substance.  The New Defendants are entitled to certain procedural and statutory processes that Plaintiffs seek to ignore because it is more convenient for them to do so. The New Defendants are entitled to an Order specifically declaring that the AMC is without force or effect as to them as they were not parties to any civil action when the AMC was filed.

**III.  New Defendants are Improperly Joined in This Action and Should be Dismissed, Severed or Placed on a Separate Track from the Original Defendants.**

Plaintiffs do not strenuously argue that the claims in this case are properly joined together.  Instead, they argue that this Court should keep the claims together for administrative purposes and that the proper remedy for a misjoinder is a severance or, down the road, a severance and remand for trial purposes.

It is therefore undisputed at this point that the claims in this action do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences . . . ."  Fed. R. Civ. P. 20(a).  As noted previously, and is now undisputed, Plaintiffs in the instant case allegedly lived in different housing units in different places; lived in different housing unit categories; lived in different housing units manufactured by different companies at different plants at different times; and have experienced a variety of different injuries and will presumably present different witnesses to prove their purported injuries and the remaining elements of their claims.

Plaintiffs' attempt to join the New Defendants suffers from an additional defect, though, in that the New Defendants are categorically different from the previously named Defendants. As the Plaintiffs go to great length to explain in their opposition to FEMA's Motion to Dismiss (Pacer Doc. No. 348) ("Plaintiffs' Response to FEMA"), the New Defendants, all of which are manufactured home defendants, are very different from the existing travel trailer defendants. *See, e.g.,* discussion at Plaintiffs' Response to FEMA, pp. 16, 17, 23, 25.  As pointed out by the

8

Plaintiffs themselves, every aspect of the manufactured home industry is regulated by HUD, in contrast to the travel trailer industry.  In fact, many years ago, HUD both investigated and wrestled with the formaldehyde issues.  As a result of that investigation, HUD has established formaldehyde standards, regulates formaldehyde emissions in building products, requires HUD inspection and certification of the units for compliance prior to leaving the manufacturing plant, and requires that formaldehyde warnings be placed in each manufactured home.  Additionally, HUD regulations address ventilation systems and discuss indoor air exchange requirements which are not applicable at all to the travel trailer industry.  Plaintiffs argue that "the United States knew that the travel trailers and park models in question were not going to be manufactured according to the same product standards established by HUD for mobile homes . . ."  Plaintiffs' Response to FEMA, p. 25.

This fundamental difference between the New Defendants and the previously added Defendants warrants treating these categories of Defendants separately.  The issues related to discovery, the defenses available and the information that Plaintiffs will require in order to establish their cases will be different in many ways.  As a result, the New Defendants respectfully ask that this Court find that the New Defendants have been misjoined, and dismiss them from this civil action.  In the alternative, the New Defendants ask that this Court create a second track as part of this MDL proceeding and assign the New Defendants to that separate track.  It is well within the discretion of the Court to create multiple tracks based on different categories of Plaintiffs or Defendants.  By assigning the New Defendants – all manufacturers of mobile homes rather than travel trailers or park models – to their own track, this Court will have the opportunity to deal separately and more efficiently with the unique legal and factual issues associated with the different units.

## CONCLUSION

As New Defendants have established through the arguments set forth above and adopted herein by incorporation, the AMC must be dismissed as a matter of law.[7]

Respectfully submitted,

/s/ James K. Carroll
James K. Carroll
One of the Attorneys for New Defendants

**OF COUNSEL:**
FOWLER RODRIGUEZ VALDES-FAULI
400 Poydras Street, 30th Floor
New Orleans, Louisiana 70130
Telephone: 504-523-2600
Fax: 504-523-2705

- and -

Lee E. Bains, Jr.
Thomas W. Thagard, III
Edward A. "Ted" Hosp
Edward S. Sledge IV
MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2616
Telephone:  (205) 254-1000
Fax:  (205) 254-1999

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document by first-class mail to all counsel of record who are non-CM/ECF participants.

/s/ James K. Carroll

---

[7] New Defendants herein specifically adopt and join the motions, briefs and reply briefs filed by other Defendants regarding their previously asserted additional grounds for dismissal of this action.

01659153.3