UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION:  N(4) |
| | * | |
| This Document Relates to:  ALL CASES | * | JUDGE: ENGELHARDT |
| | * | MAG: ROBY |

**************************************************************************

### MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING ELECTRONIC DISCOVERY

**MAY IT PLEASE THE COURT:**

Through Manufacturing Defendants' Liaison Counsel, defendants, Gulf Stream Coach, Inc., Recreation by Design, LLC, Fleetwood Enterprises, Inc., Fleetwood Canada, Ltd., Fleetwood Homes of North Carolina, Inc., Coachmen Industries, Inc., Forest River, Inc., Pilgrim International, Inc., Starcraft RV, Inc., Jayco Enterprises, Inc., Thor Industries, Inc., Monaco Coach Corporation, R-Vision, Inc., KZ RV, LP, Thor California, Inc., DS Corporation (d/b/a CrossRoads RV), Dutchmen Manufacturing, Inc., TL Industries, Inc. and Frontier RV, Inc. and Keystone RV Company (collectively, the "Manufacturing Defendants"), submit this Memorandum in Support of their Motion for Protective Order.

### I.  NATURE OF THE CASE

This Multi-District Litigation is the consolidation of twenty-three state and federal toxic tort suits in which an estimated thirty thousand named Plaintiffs (individually and purportedly on behalf of potentially hundreds of thousands of putative class members) claim to have inhabited temporary housing units ("THUs") that were provided to them by the Federal Emergency Management Agency as a result of the alleged uninhabitability of their residences due to

1

Hurricanes Katrina and Rita. (Rec. Doc. No. 109, at ¶ 96). Plaintiffs claim injuries resulting from

the alleged release of formaldehyde and/or formaldehyde vapors in those THUs. (Rec. Doc. No.

109, at ¶ 30). As a result of that claimed exposure, Plaintiffs have filed suit against sixty-seven

defendants that allegedly manufactured the THUs used by the Plaintiffs. (Rec. Doc. No. 109, at ¶

8 and Rec. Doc. No. 379, at ¶¶ 6-8). Moreover, Plaintiffs have named as defendant the United

States Government through FEMA, and Plaintiffs seek recovery for alleged physical and mental

pain and suffering, physical impairments and disability, medical expenses, loss of earnings

capacity, loss of enjoyment and quality of life, loss of consortium, travel expenses, out-of-pocket

expenses, attorney's fees, and the loss of use and/or opportunity to use safe and adequate shelter

allegedly resulting from the purported exposure to formaldehyde. (Rec. Doc. No. 109 at

"Compensatory Damages: All States" ¶, p. 74).

On May 1, 2008, Plaintiffs and Defendants exchanged discovery.  Plaintiffs requested

production of extensive documentation from the Manufacturing Defendants, which, by express

definition, includes "information stored in computers or other data storage or processing

equipment, or in magnetic or electronic media…."  (*See* Plaintiffs' First Interrogatories, Request

for Admissions and Requests for Production of Documents, attached hereto as Exhibit "A," at p.

3).  Likewise, the Manufacturing Defendants requested production of "electronically stored

information," which, by definition, is "…synonymous in meaning and equal in scope to the

usage of this term in Federal Rules of Civil Procedure 26 and 34(a)… [and]…also includes all

information created, manipulated, communicated, stored, and best utilized in digital form,

requiring the use of computer hardware and software as well as email of any type, category, or

status, including, incoming, outgoing, draft, or deleted email."  (*See* Manufacturing Defendants'

Initial Written Discovery to Plaintiffs, attached hereto as Exhibit "B," at p. 3).  As noted in Joint

Report No. 3 (Rec. Doc. No. 190) and Joint Report No. 4 (Rec. Doc. No. 387, at p. 2), the parties

have diligently labored to develop an efficient and reasonable plan for the production of the

electronically stored information.

The Manufacturing Defendants, in varying stages, have undertaken to determine the

scope of the information sought and the best means in which to capture the requested

information.  Upon information and belief, the most expeditious means of gathering this

information is by searching the electronically stored data (that has been or will be collected)

using specified keywords.  By running keyword searches, the parties will be able to more

properly identify for review and production those electronic files that truly have potential

relevance to the litigation.  However, as the Court can imagine, third party vendors specializing

in electronic searches of stored data do not provide their services absent compensation.  The fee

for such services are typically based on the amount of data to be searched and number of search

terms, and the cost is thereafter calculated based on the actual search conducted.  Each individual

search typically results in a new charge for the service.

In light of the fact that the individual defendants each face extremely high costs to

conduct searches of their respective electronically stored information, the Manufacturing

Defendants created a list of proposed search terms for Plaintiffs' review and requested that

Plaintiffs share the cost of the search.  Plaintiffs ultimately provided an expanded list of search

terms that contains over a hundred terms, while still reserving the right to later amend the list to

include additional search terms for later searches.  (*See* June 27, 2008 e-mail correspondence,

attached hereto as Exhibit "C").  Moreover, Plaintiffs have declined the Manufacturing

Defendants' offer to share in the costs of the searches.  (*See* July 3, 2008 e-mail correspondence,

attached hereto as Exhibit "D").  Finally, Plaintiffs have not expressed an intent to perform an

electronic search of their own computers or Internet accounts using any search terms.

Consequently, the Manufacturing Defendants respectfully request a Protective Order setting

forth the parameters for discovery of electronically stored information, including how the cost of

such searches will be fairly apportioned.

## II.     LAW AND ARGUMENT

### A.     Federal Rules of Civil Procedure Rule 26

Federal Rules of Civil Procedure Rule 26 provides that parties may obtain discovery

regarding any matter, not privileged, that is relevant to the issues raised by the claims or defenses

of any party.  Fed. R. Civ. P. 26(b).  Specifically concerning electronic discovery, the Rule

further provides:

> **(B)** *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

> **(C)** *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

>> **(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

>> **(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

>> **(iii)** the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(B) and (C).

The Rule also provides that a court may, for good cause, issue a protective order that shields a party from whom discovery is sought from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (A) forbidding the disclosure or discovery;
> (B) specifying terms, including time and place, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery; [and]
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; . . . .
>
> Fed. R. Civ. P. 26(c)(1).

For example, the court has the discretion to shift all or part of the cost of production to the party requesting the discovery. *Peskoff v. Faber*, 04-526, 2008 WL 2649506, at *2 (D.D.C. 7/7/08), attached hereto as Exhibit "E."   Cost shifting is appropriate only where electronic discovery imposes an undue burden or expense. *Id.* (citing *Quinby v. WestLB AG*, 245 F.R.D. 94, 104 (S.D.N.Y. 2006)).

**B.     Proposed Cost and Scope of Electronic Discovery**

The Court here is presented with a dispute over the parameters for production of electronically stored information.  The parties are unable to agree that only one costly search per manufacturing defendant will be required or how the costs of the search will be apportioned. Consequently, the Manufacturing Defendants respectfully request the Court's intervention.

Recently, the United States District Court for the District of Columbia addressed a similar dispute.  *See Peskoff*, 2008 WL 2649506.  In *Peskoff*, the court ascertained that a forensic search of the defendant's computers was justified, and was therefore called upon to determine how the

cost of the third party vendor search was to be apportioned.[1]  *Id.* at \*1.  The court began its

analysis by setting forth the appropriate legal standard, instructing:

> Under the Federal Rules of Civil Procedure, "the presumption is that the responding
> party [ *i.e.* Mr. Faber] must bear the expense of complying with discovery requests."
> *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253
> (1978). This presumption continues to operate where the discovery sought is
> electronically stored information. *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317
> (S.D.N.Y. 2003) ("Any principled approach to electronic evidence must respect this
> presumption."). *See also Wiginton v. C.B. Richard Ellis, Inc.,* 229 F.R.D. 568, 571-72
> (N.D.Ill. 2004); *Hagemeyer N. Am. Inc. v. Gateway Data Sciences Corp.,* 222 F.R.D.
> 594, 600 (E.D.Wis. 2004).
>
> The court has the discretion, however, to shift all or part of the costs of production to the
> requesting party, *i.e.* Mr. Peskoff. *Oppenheimer*, 437 U.S. at 358 (court may "condition[
> ] discovery on the requesting party's payments of the costs of discovery"); *Zubulake v.
> UBS Warburg LLC*, 216 F.R.D. 280, 283 (S.D.N.Y. 2003); Fed.R.Civ.P. 26(b)(2)(B)
> ("The court may specify conditions for the discovery."); FedR.Civ.P. 34 advisory
> committee's notes (1970) (court may issue orders that "require[ ] that the discovering
> party pay costs"). Where the requesting party seeks electronically stored information,
> "[s]hifting the cost of production from the producing party to the requesting party should
> be considered only when inaccessible data is sought." *OpenTV v. Liberate Techs*., 219
> F.R.D. 474, 476 (N.D.Cal. 2003) (*citing Zubulake,* 216 F.R.D. at 284; Fed.R.Civ.P. 26
> advisory committee's notes (2006) (court may order "payment by the requesting party of
> part or all of the reasonable costs of obtaining information from sources that are not
> reasonably accessible").
>
> The purpose of shifting the cost of production is to "protect [the responding party] from
> 'undue burden or expense.' " *Oppenheimer*, 437 U.S. at 358 ( *quoting* Fed.R.Civ.P.
> 26(c)). *See also Quinby v. WestLB AG,* 245 F.R.D. 94,104 (S.D.N.Y. 2006) ("[C]ost-
> shifting is appropriate only where electronic discovery imposes an undue burden or
> expense."); Fed.R.Civ.P. 34 advisory committee's notes (1970) (court may shift the cost
> of discovery so as "to protect respondent against undue burden or expense");
> Fed.R.Civ.P. 34  advisory committee's notes (2006) (the rules governing "issues of
> burden" are applicable to disputes arising from the inspection, testing, or sampling of
> electronically stored information);  Fed.R.Civ.P. 26(b), advisory committee's notes
> (2006) (the inquiry into whether there is good cause to compel burdensome discovery of
> electronically stored information is "coupled with" court's authority to set conditions for

---

[1]     Note that in *Peskoff v. Faber*, 244 F.R.D. 54 (D.D.C. 2007)("*Peskoff I*"), pursuant to Rule 26(b)(2)(C)(iii)
the court considered the preliminary burden/benefit analysis of whether the burden or expense of the
proposed discovery outweighs the likely benefit, considering the needs of the case, the amount in
controversy, the parties' resources, the importance of the issues at stake in the action and the importance of
the discovery in resolving the issue.  The court deferred on whether the cost justified the search until cost
estimates were obtained.

discovery). The burden on the responding party is to be considered in conjunction with the Rule 26(b)(2)(C) analysis, which was discussed above. *AAB Joint Venture v. United States*, 75 Fed.Cl. 432, 443 (2007).

*Id.*

The *Peskoff* court then applied the foregoing law to the issue before it.  The court noted that the cost of the forensic discovery was directly attributable to the actions and inactions of the defendant regarding the preservation of electronically stored information.  *Id.* at \*3.  The court recognized that the defendant's efforts to search for responsive electronically stored information was, at best, described as inadequate, that he failed to deactivate tools that automatically deleted the information and he failed to appear at hearings to explain the failings.  *Id.* at \*3-4.  Thus, the cost of the search was found to be a problem of the defendant's own making and not undue.  *Id.* at \*4.

Turning to the actions of the defendants here, several of the Manufacturing Defendants have obtained proposals for third party vendor searches of the electronically stored information. Even for manufacturers with a relatively small stake in this litigation in comparison to other manufacturer defendants, the cost of the search can be prohibitive.  For example, ScotBilt Homes is a manufacturer of manufactured housing.  Only approximately 275 ScotBilt Homes units were supplied to FEMA in relation to Hurricanes Katrina and Rita.  Of these units, approximately 100 have been identified as "new, unused."  Further, of the remaining approximately 175 units it appears that only three ScotBilt homes have been identified as either previously occupied or presently occupied by a putative class member.  Nonetheless, to search its electronically stored information for the current combined list of terms, the estimated cost will exceed $100,000.  For the larger manufacturers, the cost can be many times this amount.

Thus, unlike the *Peskoff* defendant, the Manufacturing Defendants submit that in planning the search of the electronically stored information, specific input has been solicited from Plaintiffs to ensure that the search will only be necessary one time and that it will be performed satisfactorily.   Even so, the cost of even a single search imposes an unduly burdensome expense in relation to its likely benefit, in many cases.   The Manufacturing Defendants recognize that such discovery is certainly permissible.   Indeed, particularly among the larger defendants, steps have already been undertaken in preparation of searching the data. However, the Manufacturing Defendants suggest that, at least for some defendants, the benefit of the discovery is outweighed by the burden imposed by the discovery.

Turning to the Rule 26(b)(2)(C)(iii) factors, the Court is to take into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving whether any particular defendant should be required to undertake a search of its electronically store information at this time. Certainly, these factors may favor allowing a reasonable search by some defendants.   However, when considering the respective numbers of potential THUs involved in the litigation for other defendants, these factors weigh more heavily in favor of prohibiting the type of undue burden Plaintiffs are attempting to impose through their overly broad discovery requests.   For those defendants wishing to assert that the burden outweighs the potential benefit, the Manufacturing Defendants suggest the Court could request separate briefing on the above-referenced factors.

In addition, the Manufacturing Defendants respectfully request that, if the Court is going to allow the request for electronic discovery to occur as to any particular Manufacturing Defendant at all, the Court limit the potential burden on each of the manufacturing defendants by ordering that only one search will be performed at the expense of the non-requesting party.   As

previously noted, the Manufacturing Defendants have solicited the Plaintiffs' input on the scope of the proposed search. Nonetheless, the Plaintiffs have reserved their right to request an additional search later. If such a subsequent search were requested, the Manufacturing Defendants would be faced with an unnecessary duplication of costs. Thus, the Manufacturing Defendants respectfully suggest that if a subsequent search is requested, that the cost of such a search should be borne by the Plaintiffs. Likewise, presuming that Plaintiffs are fulfilling their mutual obligation to search the electronically stored information in their possession, such searches can be limited to the parties' agreed upon terms. Thus, if a manufacturing defendant were to request any subsequent searches for terms not contained in the agreed upon list, it would be at that requesting party's cost.

### III.    CONCLUSION

**WHEREFORE,** considering the foregoing, the Manufacturing Defendants respectfully request that this Honorable Court issue an Order staying discovery of the Electronically Stored Information until the Court has established how the cost of electronically stored data searches will be apportioned, and further request an order that any subsequent electronically stored data search be borne by the requesting party.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/Andrew D. Weinstock

_____
**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Blvd., Suite 2900
Metairie, LA 70002
(504) 832-3700
**DEFENSE LIAISON COUNSEL**

# **C E R T I F I C A T E**

I hereby certify that on the 15th day of July, 2008, a copy of the foregoing Memorandum in Support of Motion for Protective Order Regarding Electronic Discovery was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

s/Andrew D. Weinstock

_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com