--- F.R.D. ----                                                                                                         Page 1
--- F.R.D. ----, 2008 WL 2649506 (D.D.C.)
**(Cite as: --- F.R.D. ----, 2008 WL 2649506 (D.D.C.))**

Peskoff v. Faber
D.D.C.,2008.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Jonathon E. PESKOFF, Plaintiff,
v.
Michael A. FABER, Defendant.
**Civil Action No. 04-526 (HHK/JMF).**

July 7, 2008.

Paul Yoshio Kiyonaga, Kiyonaga & Soltis, Washington, DC, for Plaintiff.
William A. Davis, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Washington, DC, for Defendant.

*MEMORANDUM OPINION*

JOHN M. FACCIOLA, United States Magistrate Judge.

**I.** *Background*

**\*1** This Court previously addressed the sufficiency of the search done by defendant Michael Faber for e-mails and other electronically stored information in response to plaintiff Jonathon Peskoff's discovery requests, and determined that it was "appropriate to ascertain the cost of forensic testing of the computers and server at issue to see if it justifies a forensic search of them."*Peskoff v. Faber,* 244 F.R.D. 54, 63 (D.D.C.2007). The parties submitted a joint bid proposal, *Request for Proposals from Qualified Forensic Computer Technicians to Search for Emails* [# 68], which the Court distributed to numerous vendors. Three bids were received, the lowest of which was $33,000,[FN1] and the parties were instructed to attempt to reach agreement on how to share that cost. Order (Feb. 21, 2008)[# 75]. No agreement could be reached so the matter was subsequently briefed[FN2] and is now ripe for resolution.

**II.** *The Forensic Examination*

The Court has determined that electronically stored information sought by Mr. Peskoff from Mr. Faber cannot be obtained without the aid of a forensic examination. *Peskoff,* 244 F.R.D. at 59. Even though the forensic examination necessarily involves the search of sources "not reasonably accessible because of undue burden or cost," the Court may nonetheless compel Mr. Faber to proceed if Mr. Peskoff "shows good cause[FN3], considering the limitations[FN4] of Rule 26(b)(2)(C)."Fed.R.Civ.P. 26(b)(2)(B); *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.,* 247 F.R.D. 567, 571 (D.Minn.2007) (court is to balance costs and potential benefits of discovery). The Court has already conducted much of this analysis and has held that the Rule 26(b)(2)(C) factors weigh strongly in favor of the discovery.*Peskoff,* 244 F.R.D. at 59-61 (finding, *inter alia,* that the information sought is highly relevant, not duplicative, and cannot be obtained from other sources).

The analysis was not completed, however, because the cost of the forensic search was not yet known. *Id.* at 61.We now know that the cost is approximately $33,000, and thus, as expected, "we are not confronting a situation where the anticipated cost of doing the forensic search will dwarf the final recovery."*Id.* at 59 (noting that Mr. Peskoff demands $2.5 million, and identifying three distinct claims totaling $840,000). It is the determination of this Court that, when balancing the cost of the forensic examination against the factors favoring the discovery, good cause exists to compel the forensic examination. *See Id.* at 59-60 (finding that the requested discovery is supported by the needs of the case, the sophistication of the parties, the amount in controversy, the importance of the issues at stake, and the importance of the requested discovery to the issues in the litigation).*Compare, e.g., Petcou v. C.H. Robinson Worldwide, Inc.,* No. 06-CV-2157, 2008 WL 542684, at \*2 (N.D.Ga. Feb. 25, 2008) (burden or expense of proposed discovery outweighs its

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

likely benefit where requests are overbroad and a response would cost hundreds of thousands of dollars) *with* *PSEG Power N.Y., Inc. v. Alberici Constructors, Inc.,* No. 05-CV-657, 2007 WL 2687670, at *11 (N.D.N.Y. Sep. 7, 2007) (potential for discovery outweighs the estimated cost of $37,500 for re-production of important e-mails). It will therefore be ordered that the forensic examination proceed.

### III. *The Allocation of Costs*

**\*2** The Court now turns to the allocation of the cost of the forensic examination.

#### A. *Legal Standards*

Under the Federal Rules of Civil Procedure, "the presumption is that the responding party [*i.e.* Mr. Faber] must bear the expense of complying with discovery requests."*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). This presumption continues to operate where the discovery sought is electronically stored information. *Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 317 (S.D.N.Y.2003) ("Any principled approach to electronic evidence must respect this presumption.").*See also Wiginton v. C.B. Richard Ellis, Inc.,* 229 F.R.D. 568, 571-72 (N.D.Ill.2004); *Hagemeyer N. Am. Inc. v. Gateway Data Sciences Corp.,* 222 F.R.D. 594, 600 (E.D.Wis.2004).

The court has the discretion, however, to shift all or part of the costs of production to the requesting party, *i.e.* Mr. Peskoff. *Oppenheimer,* 437 U.S. at 358 (court may "condition[ ] discovery on the requesting party's payments of the costs of discovery"); *Zubulake v. UBS Warburg LLC,* 216 F.R.D. 280, 283 (S.D.N.Y.2003); Fed.R.Civ.P. 26(b)(2)(B) ("The court may specify conditions for the discovery."); Fed.R.Civ.P. 34 advisory committee's notes (1970) (court may issue orders that "require[ ] that the discovering party pay costs"). Where the requesting party seeks electronically stored information, "[s]hifting the cost of production from the producing party to the requesting party should be considered only when inaccessible data is sought."*OpenTV v. Liberate Techs.,* 219 F.R.D. 474, 476 (N.D.Cal.2003) (*citing Zubulake,* 216 F.R.D. at 284);Fed.R.Civ.P. 26 advisory committee's notes (2006) (court may order "payment by the requesting party of part or all of the reasonable costs of obtaining information from sources that are not reasonably accessible").

The purpose of shifting the cost of production is to "protect [the responding party] from 'undue burden or expense.' "*Oppenheimer,* 437 U.S. at 358 (*quoting*Fed.R.Civ.P. 26(c)).*See also Quinby v. WestLB AG,* 245 F.R.D. 94, 104 (S.D.N.Y.2006) ("[C]ost-shifting is appropriate only where electronic discovery imposes an undue burden or expense."); Fed.R.Civ.P. 34 advisory committee's notes (1970) (court may shift the cost of discovery so as "to protect respondent against undue burden or expense"); Fed.R.Civ.P. 34 advisory committee's notes (2006) (the rules governing "issues of burden" are applicable to disputes arising from the inspection, testing, or sampling of electronically stored information); Fed.R.Civ.P. 26(b), advisory committee's notes (2006) (the inquiry into whether there is good cause to compel burdensome discovery of electronically stored information is "coupled with" court's authority to set conditions for discovery). The burden on the responding party is to be considered in conjunction with the Rule 26(b)(2)(C) analysis, which was discussed above. *AAB Joint Venture v. United States,* 75 Fed.Cl. 432, 443 (2007).

**\*3** The question presented can thus be summarized as follows: does the cost of the forensic examination represent to Mr. Faber, the responding party, a burden or expense so undue as to justify an exercise of the Court's discretion to break from the traditional presumption and shift some or all of that cost to Mr. Peskoff, the requesting party?

#### B. *Discussion*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

As has already been explained in prior opinions and will be summarized below, the need here for a forensic examination is directly attributable to what was and was not done by Mr. Faber to preserve electronically stored information. *Peskoff,* No. 04-cv-526, 2006 WL 1933483, at *4-6 (D.D.C. July 11, 2006); *Peskoff,* 240 F.R.D. 26, 29-31 (D.D.C.2007); *Peskoff,* 244 F.R.D. at 56-66. Taken together, those acts and omissions shatter any argument that the burden or expense of that forensic examination, if incurred by Mr. Faber, would be "undue."

First, Mr. Faber's efforts to search for responsive electronically stored information can, at best, be described as inadequate. As was stated in the Court's Memorandum Opinion of February 21, 2007:

> In this case, a hard drive, never searched, was produced and the plaintiff's sent and received emails were produced, but (1) there are significant and unexplained gaps in what was produced, and (2) other searches of electronic data that I specifically suggested could be done were not.
>
> Furthermore, all of the unopened emails in the Inbox-a total of fourteen-are dated the same day, a date following plaintiff's departure from NextPoint. The 10,436 emails in the "Old Mail" subfolder are all unopened. The emails in the "Old Mail" subfolder are for the period June 25, 2003, to April 14, 2004, but the emails in the 65 other subfolders are all dated for the period June 2000 to June 2001. Thus, there are gaps of several years among the various subfolders with no emails whatsoever during these time periods. While there may be reasons why this is so, on this record all one can say is that this phenomenon is inexplicable.

*Peskoff,* 240 F.R.D. at 30. The Court has described numerous searches that might yield responsive information, *Peskoff v. Faber,* 2006 WL 1933483, at *4, yet Mr. Faber "did not conduct any of these possible searches." *Peskoff,* 240 F.R.D. at 30-31; *Peskoff,* 244 F.R.D. at 56. The fruits of his limited search, described above, "raise[ ] many questions as to its completion and ... sufficiency." *Peskoff,* 244 F.R.D. at 58-59. Mr. Faber's unwillingness to take his discovery obligations seriously have contributed to the need for a forensic examination. *See e.g., Henry v. Quicken Loans,* 04-cv-40346, 2008 WL 474127, at *5 (E.D.Mich. Feb.15, 2008) (refusing to shift costs to the requesting party where those costs directly resulted from the responding party's inadequate search).

Second, Mr. Faber failed to deactivate network maintenance tools that automatically delete electronically stored information. On February 6, 2004, the day Mr. Peskoff threatened suit, Mr. Faber had an obligation to make a conscientious effort to preserve electronically stored information that would be relevant to this dispute. *See, e.g., Miller v. Holzmann,* No. 95-cv-1231, 2007 WL 172327, at *5-8 (D.D.C. Jan.17, 2007); *Zubulake v. UBS Warburg, LLC,* 220 F.R.D. 212, 218 (S.D.N.Y.2003); Fed.R.Civ.P. 37, advisory committee's notes (2006) ("When a party is under a duty to preserve information because of pending or reasonably anticipated litigation, intervention in the routine operation of an information system is one aspect of what is often called a 'litigation hold.' "). Mr. Faber did not have Mr. Peskoff's e-mails archived until April 2004, and at no point did he have the relevant back-up tapes preserved. *Peskoff,* 244 F.R.D. at 56. His failure to act has had tangible consequences, particularly the recycling of timely back-up tapes and the auto-deletion of relevant e-mails. *Id.* at 56-57.That this deleted information can only be recovered by a forensic examination, if it can be recovered at all, is directly attributable to Mr. Faber's inaction. *See, e.g., Quinby,* 245 F.R.D. at 104 (party should not be entitled to shift the costs of restoring and searching data that it converted into an inaccessible format at a time when it should have anticipated litigation).

**\*4** Finally, Mr. Faber, who did not appear at the evidentiary hearing held on June 19, 2007, has provided no explanation for these failings or for the

peculiar temporal gaps in his production, and he has refused to provide details of the search he purportedly conducted of his own e-mail. *Peskoff,* 244 F.R.D. at 55. That he has at this late stage not fully explained his actions provides an additional reason why the costs should not be shifted from him.

Unfortunately, an expensive forensic examination now presents the only hope for the discovery of electronically stored information that should already have been produced to Mr. Peskoff. In light of the facts presented here, there is no reason to deviate from the traditional rule that a responding party bears the costs of production. *See e.g., Cacovski v. United Farm Family Mut. Ins. Co.,* No. 07-CV-329, 2008 WL 2456342, at *4 (N.D. Ind. June 12, 2008) (ordering responding party's counsel to pay costs of production because costs were directly attributable to his failures, despite offer by requesting party to contribute). This is a problem of Mr. Faber's own making and, consequently, the expense and burden of the forensic examination can hardly be described as "undue."

### III. *Conclusion*

It will therefore be ordered that Mr. Faber pay $33,000 into the registry of the Court. The Court will dispense payments to the vendor as the invoices are received.

An Order accompanies this Memorandum Opinion.

> FN1. This bid, accompanied by a reasonable proposal, was considerably lower than the competitors, and was submitted by a vendor with demonstrable experience in forensic searching.
>
> FN2. The Court notes with disappointment that most of Mr. Faber's brief is devoted to the proposition that the applicable legal standard is Rule 45, rather than Rule 34 and Rule 26, because he argues that "this dispute concerns discovery from non-parties, not discovery from parties."*Defendant's and Non-Party Nextpoint's Brief Concerning Cost Allocation to Conduct Forensic Examination* [# 78] at 2. This argument has already been addressed at length and soundly rejected. Peskoff, 244 F.R.D. at 63-65 ("To assert this position now at this late date simply suggests a newfangled theory by which Faber's counsel attempts to thwart Peskoff's legitimate discovery efforts, and the Court will not allow it.").
>
> FN3. The following factors guide the "good cause" inquiry required under Rule 26(b)(2)(B): "(1) the specificity of the discovery request; the quantity of information available from other and more easily accessed sources; (2) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources."Fed.R.Civ.P. 26, advisory committee's notes (2006).
>
> FN4.Rule 26(b)(2)(C) limits otherwise permissible discovery if the court determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely bene-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.R.D. ----
--- F.R.D. ----, 2008 WL 2649506 (D.D.C.)
**(Cite as: --- F.R.D. ----, 2008 WL 2649506 (D.D.C.))**

Page 5

fit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

D.D.C.,2008.
Peskoff v. Faber
--- F.R.D. ----, 2008 WL 2649506 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.