UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | |
| | * | JUDGE: ENGELHARDT |
| This Document Relates to: | * | |
| ADMINISTRATIVE MASTER | * | |
| COMPLAINT | * | |
| | * | MAG: ROBY |

*************************************************************************

**MEMORANDUM IN SUPPORT OF**
**MANUFACTURING DEFENDANTS' MOTION TO STRIKE**

**MAY IT PLEASE THE COURT:**

Manufacturing Defendants submit the following Memorandum in Support of their Joint Motion to Strike certain plaintiffs from acting as class representatives at the Class Certification Hearing.

## I.  ISSUE PRESENTED

Plaintiffs have failed to comply with this Court's order by producing materially incomplete Plaintiff Fact Sheets for the purported class representatives. This failure has prejudiced the Manufacturing Defendants and this Court should sanction Plaintiffs by striking as class representatives those plaintiffs that have materially failed to provide the required information. Pretrial Order Number 8 Section 3(B) (Rec. Doc. No. 287) directed Plaintiffs' Liaison Counsel ("PLC") to "designate one half (1/2) of the total number of proposed class representatives and produce completed Plaintiff Fact Sheets" for those designated class representatives by July 1, 2008. As detailed below, the Plaintiff Fact

Sheets that were produced were not "completed" and failed to provide information

necessary for the Manufacturing Defendants to prepare for a class-certification hearing.

## II.     NATURE OF THE CASE

As this Court is well aware, this Multi-District Litigation is the consolidation of

twenty-three state and federal toxic tort suits in which an estimated thirty thousand

named Plaintiffs (individually and purportedly on behalf of potentially hundreds of

thousands of putative class members) claim to have inhabited temporary housing units

("THUs") that were provided to them by the Federal Emergency Management Agency.

(Rec. Doc. No. 109, at ¶ 96). Plaintiffs claim injuries resulting from the alleged release of

formaldehyde and/or formaldehyde vapors in those THUs. (Rec. Doc. No. 109, at ¶ 30).

As a result of that claimed exposure, Plaintiffs have filed suit against 67 defendants that

allegedly manufactured the THUs used by the Plaintiffs. (Rec. Doc. No. 109, at ¶ 8 and

Rec. Doc. No. 379, at ¶¶ 6-8). Moreover, Plaintiffs have named as defendant the United

States Government through FEMA, and Plaintiffs seek recovery for alleged physical and

mental pain and suffering, physical impairments and disability, medical expenses, loss of

earnings capacity, loss of enjoyment and quality of life, loss of consortium, travel

expenses, out-of-pocket expenses, attorney's fees, and the loss of use and/or opportunity

to use safe and adequate shelter allegedly resulting from the purported exposure to

formaldehyde. (Rec. Doc. No. 109 at "Compensatory Damages: All States" p. 74).

On May 23, 2008, this Court entered PTO No. 8, which imposes class-

certification deadlines based on a proposed order submitted by the PLC, Governments'

Counsel, and Manufacturing Defendants' Liaison Counsel ("MDLC").[1]   Section 3(B) of

PTO No. 8 imposes a specific obligation on the PLC:

> **July 1, 2008:** [Plaintiff Liaison Counsel] will designate one half (1/2) of the total number of proposed class representatives and produce completed Plaintiff Fact Sheets for these designated class representatives.

But the purported 28 class representatives failed to produce completed Plaintiff Fact

Sheets. The majority of Plaintiffs' responses to the Fact Sheet were incomplete or totally

disregarded. The MDLC sent the PLC a letter outlining Plaintiffs' failure to timely

provide completed responses, explaining each material deficiency.  *See* Exhibit "A", Ltr.

to Matthew Moreland (July 7, 2008) at 1 (the "Deficiency Letter").[2]   The MDLC

requested that Plaintiffs provide supplemental responses no later than July 11, 2008.  *Id.*

at 14.   The MDLC stated in the letter that if Plaintiffs' counsel failed to meet the

extended deadline of July 11, 2008, that the MDLC would file a motion addressing

Plaintiffs' noncompliance with the case-management obligations.  *Id.* To date, the PLC

has not provided a single piece of the missing information for any of the 28 purported

class representatives.

### III.    LAW AND ARGUMENT

**1.    The Court is permitted to sanction Plaintiffs for failure to comply with an Order.**

Rule 16(b) of the Federal Rules of Civil Procedure authorizes federal courts to

control and expedite the discovery process through a Scheduling Order. Fed. R. Civ. P.

16(b).  Rule 16(f)(1)(C) allows courts to issue "*any* just orders" as sanctions for violating

a pretrial order. Fed. R. Civ. P. 16(f)(1)(C).

---

[1]      PreTrial Order No. 8 (May 23, 2008) (Rec. Doc. No. 287).

[2]      Exhibit "A" includes an e-mail cover page dated July 7, 2008 showing that all parties were sent the deficiency letter from MDLC to PLC.

The Fifth Circuit has noted that "the trial court has 'broad discretion to preserve the integrity and purpose of the pretrial order'".  *Geiserman v. MacDonald,* 893 F.2d 787, 790 (5th Cir. 1990) (citing *Hodges v. U.S.*, 597 F.2d 1014, 1018 (5th Cir. 1979)).  In *Geiserman*, the plaintiff failed to timely designate an expert and the Court upheld the trial court's decision to strike the late expert witness designated and to preclude the expert's testimony. *Id.* at 790-91. The Court also held that the trial court was permitted to sanction the plaintiff for late responses to interrogatories by disregarding those responses. *Id.* at 793. In upholding the trial court's imposition of sanctions, the Court noted that the plaintiff's delay in complying with the pretrial order "would have disrupted the court's discovery schedule and the opponent's preparation." *Id.* at 791.  Here, Plaintiffs' violation of this Court's pretrial order by failing to properly and completely respond to the Fact Sheets produces identical consequences and likewise permits this Court to strike certain of the purported class representatives.

**2.      Plaintiffs have failed to comply with PTO No. 8 and have submitted inadequate Fact Sheets.**

Despite knowing for well over a month that Plaintiffs were required to complete Plaintiff Fact Sheets for the purported class representatives, the PLC has failed to complete just 28 of the Plaintiff Fact Sheets.[3] This Court, in an order proposed jointly by the parties, provided clear guidance regarding the timelines to meet in order to prepare for the November class-certification hearing. But Plaintiffs have failed to produce "completed Plaintiff Fact Sheets" by PTO No. 8's July 1, 2008 deadline. Plaintiffs have further failed to supplement the Plaintiff Fact Sheets.

---

[3]      Indeed, Plaintiffs have known since the Court's order on March 7, 2008 (Rec. Doc. No. 106) that each named plaintiff would be required to complete a Plaintiff Fact Sheet.

4

Because Plaintiffs have failed to comply with this Court's order, the class discovery necessary for the Manufacturing Defendants to complete cannot even begin. The Manufacturing Defendants were unable to depose even a single purported class representative during their first available week for depositions.[4] Given the reasonable time limitations in this case for depositions,[5] having a completed Plaintiff Fact Sheet is critical. A manufacturing defendant may even decide that the cost of taking a class representative deposition is outweighed by any benefit, particularly given that a completed Plaintiff Fact Sheet would provide information relevant to the class-certification hearing. But with the inadequate information provided by the purported class representative, a manufacturing defendant does not have sufficient information to make that decision. And Plaintiffs should not be permitted to shift the cost of obtaining this information to the Manufacturing Defendants by arguing that the deficiencies can be cured by a simple deposition. A class representative deposition is not intended to substitute for a Fact Sheet; rather the deposition is to gather information necessary for the class-certification hearing.

While there are some deficiencies in the Plaintiff Fact Sheets that are minor and unnecessary for class-certification purposes, a majority of Fact Sheets are so lacking and fail to comply with PTO No. 8 that the purported class representatives should be struck as class representatives.[6] Although difficult to outline the various deficiencies among this first 28 purported class representatives, there are four main categories of deficiencies that

---

[4]      In PTO No. 8, the week of July 7, 2008 was assigned to the defendants to set depositions.

[5]      *See* Order dated July 2, 2008 (Doc. Rec. No. 427), limiting plaintiff class representative depositions to no more than four hours.

[6]      At this time the Manufacturing Defendants are not moving to dismiss the purported class representatives' claims as provided in PTO No. 2, but the Manufacturing Defendants reserve the right to do so should Plaintiffs fail to cure the material deficiencies under PTO No. 2.

are relevant to class certification: 1) failure to sign the Certification, 2) failure to identify the manufacturing defendant involved,[7] 3) failure to sign the Privacy Act release, and 4) failure to provide required documentation or signed medical authorizations. For the Court's reference the Manufacturing Defendants have attached a chart of these deficiencies as Exhibit "B."

      **a.**      **Failure to sign the Certification**

An alarming 16 of the 28 proposed class representatives failed to properly sign the Certification.[8] By signing the Certification, the plaintiff attests that the information contained in the Fact Sheet is true:

> I declare under penalty of perjury subject to 28 U.S.C. §1746 that all of the information provided in this Plaintiff Fact Sheet is true and correct to the best of my knowledge, and that I have supplied all the documents requested in Part VIII of this Plaintiff Fact Sheet, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have signed the authorizations attached to this declaration.

Seven plaintiffs completely failed to sign the Certification: Heavenly Beasley, Adrina McCray, Dakyre Smith, Cedric Wilkerson, Jr., Kierra Wilson, Kody Wood, and LuAnn Workman. Nine other plaintiffs purportedly signed the Certification, but the manner of signing raises the question of whether the plaintiff signed and certified the final type-written version—often the Fact Sheet is typed with an extra Certification page attached and signed. The actual page signed, however, has handwriting on it, seeming to indicate that the plaintiff is only certifying the handwritten version and not the typed version. The

---

[7]      Indeed this failure is the subject of several pending motions to dismiss for lack of standing.

[8]      Interestingly, when the parties jointly drafted the Plaintiff Fact Sheet, the Manufacturing Defendants wanted the Certification to be notarized, but Plaintiffs insisted that it would be more feasible to have a Certification which was only signed by their client, yet even that step was not able to be completed with the class representatives.

importance of signing the typed version is exemplified by the Fact Sheet of Shirley

Labeau, in which her signature page identifies information for pharmacies that was not

included in the typed version. The plaintiffs that fall into this category are: Stephen A.

Alfonso, Elisha Dubuclet, Rommel Griffin, Damian Hargrove, Sr., Orlando Jaimevadi,

Shirley Labeau, Lakeesha N. Lightell, Stephanie A. Pizani, Heather L. Robertson-

Durand, and Rayfield Robinson, Jr.

> **b.      Failure to identify the Manufacturing Defendant involved.**

Several plaintiffs failed to provide the THU's Vehicle Identification Number

(VIN), the FEMA Identification Number, the Bar Code Number on the FEMA housing

unit, or the identity of the manufacturer.  Darren Madison, Dakyre Smith, and Sherri

Thomas and provided none of this information.  Stephanie Pizani could only offer the

name of the manufacturer, but failed to provide any other identifying information.

Lakeesha Lightell, Coren Lightell, and Orlando Jaimevadi also failed to provide the VIN

number for their FEMA housing unit.  Adrina McCray and Kody Wood failed to identify

the manufacturer and the "VIN" provided is not actually a VIN. Manufacturer

identification and unit numbers are essential to class issues. A manufacturing defendant,

without the VIN, cannot properly present its case on class-certification issues by

developing the factual variations involved in different units. Nor can the manufacturing

defendants—particularly where no manufacturer is identified—be assured of what units

that it manufactured are at issue.

> **c.      Failure to sign the Privacy Act Release.**

Several plaintiffs also failed to sign the included Privacy Act release. This release

is required by FEMA before it will release its file on each plaintiff to the Manufacturing

Defendants. The Manufacturing Defendants anticipate that FEMA's file on a plaintiff

will contain information relevant to a class-certification hearing, including information

regarding the THU, whether any repairs were done on the THU, whether the plaintiff

complained to FEMA of any allegedly-formaldehyde related symptoms, and other

information. The Plaintiffs that failed to sign the release are: Stephen A. Alfonso,

Heavenly Beasley, Darren Madison, Adrina McCray, Stephanie A. Pizani,[9] Heather L.

Robertson-Durand, Dakyre Smith, Cedric Leon Wilkerson, Jr., Kierra Wilson, Kody

Wood, and LuAnn Workman.

      **d.**     **Failure to provide required documentation or signed medical authorizations.**

Not a single purported class representative produced any medical records or other

relevant records, despite often stating that such records were in their possession or in the

possession of their attorney. Moreover, each plaintiff has their own individual set of

deficiencies related to the information requested in the Plaintiff Fact Sheets. The

Deficiency Letter details the plaintiff-specific shortcomings, ranging from a plaintiff's

failure to provide a description of their illnesses to a plaintiff's failure to produce reports

on testing allegedly done on individual FEMA housing units.[10]

One prejudicial setback for the manufacturing defendants are those plaintiffs that

(1) are making a claim for medical expenses, emotional damages, and/or lost wages; (2)

have not produced any documentation of medical treatment or employment; (3) *admit* to

being in possession of their medical records (or neglected to answer); and, (4) have failed

---

[9]      The Deficiency Letter inadvertently did not identify that Ms. Pizani had failed to sign the Privacy Act Release.

[10]     The Deficiency Letter also outlines a failure to produce provider-specific medical authorizations. Manufacturing Defendants have agreed with the PLC that plaintiffs are not required to sign provider-specific authorizations at this time, with the understanding that the Manufacturing Defendants are permitted to send the blank authorizations to providers

to sign HIPAA authorizations or authorizations for release of employment records. Essentially, defendants have been provided with nothing.  Among these plaintiffs are:

1. **Dakyre Smith –** Mr. Smith is minor and Letecheia Acker completed his questionnaire in a representative capacity.  Mr. Smith's Fact Sheet is less than half-completed.  He is making a claim for emotional damages, but it is unclear whether he is in possession of any medical documentation because that portion of the Fact Sheet was disregarded. Records have not been produced, and no signed authorizations were submitted.

2. **Heavenly Beasley –** Ms. Beasley is a minor, and Jocelyn Beasley completed her questionnaire in a representative capacity. She is making a claim for emotional damages, but it is unclear whether she is in possession of any medical documentation because that portion of the Fact Sheet was disregarded. Records have not been produced, and no signed authorizations were submitted.

3. **Mary London** – LaTonya London filled out the Fact Sheet for Ms. London, a minor. The Fact Sheet indicates that she is in possession of certain records, but no such records were provided.

4. **Adriana McCray –** Ms. McCray claims to be in possession of medical records and bills, but none of these documents have been submitted to defendants.  She also failed to indicate whether she submitted a Standard Form-95, as requested in Section VIII(B) of the fact sheet.  No signed authorizations were submitted.

5. **Kody Wood -** Mr. Wood is a six-year old child, and Adrina McCray completed his questionnaire in a representative capacity.  Mr. Wood is making a claim for emotional damages and medical expenses and admits to being in possession of

medical documentation.  Yet, those records have not been produced and no signed authorizations were submitted.

Equally prejudicial to the defendants, are those plaintiffs that *deny* being in possession of medical records and have failed to sign HIPAA authorizations.  Again, defendants have not been given the documentation they need prepare for the upcoming class certification hearing.  Among those plaintiffs are:

6. **Stephanie Pizani –** Ms. Pizani did not provide any medical authorizations.  Section VIII(B) asked Ms. Pizani to identify the health care professionals who treated her for each disease/illness that she is claiming.  Her response was "Family Doctors" and that she received treatment on "1/1/1002"—the clearly mistaken typewritten response.  This same date was duplicated in a later section of the questionnaire – Section IX (B).

7. **Heather Robertson-Durand –** Ms. Durand also makes a claim for lost wages, yet does not provide either the amount of time allegedly lost from work or the amount of income allegedly lost.  In addition to her failure to sign HIPAA authorizations, she did not sign authorizations for the release of employment records.

8. **Luann Workman-** Ms. Workman did not provide any medical authorizations to substantiate her claims.  She also did not provide any information regarding her primary care physicians or healthcare providers who treated her during the past seven years, in accordance with Section IX of the questionnaire.

Additionally, several plaintiffs are seemingly making claims for the wrongful death of a family member.  But these plaintiffs have produced no documentation of medical or psychological treatment, and they deny that they are in possession of any

medical records.  Some of these plaintiffs have also failed to sign HIPAA authorizations.

Among those plaintiffs are:

9.  **Cedric Leon Wilkerson, Jr. –** Mr. Wilkerson, Jr. is deceased and is represented by his father, Cedric Leon Wilkerson.  Mr. Wilkerson, Jr. allegedly died from cancer, and claims that a health care professional told him his illness was related to living in a FEMA housing unit.  Mr. Wilkerson indicated in his son's questionnaire that he is claiming the wrongful death of a family member (presumably his son), but he does not state the name of the deceased, and there is no questionnaire filled out by Mr. Wilkerson, individually.  Mr. Wilkerson Jr. claims that he is not in possession of any medical records, and no signed authorizations were submitted.

10.  **Kierra Wilson –** Ms. Wilson is a minor.  She is represented by Keena Magee in a representative capacity.  It appears that portions of this Fact Sheet were actually "cut and paste" from a previously completed fact sheet.  Ms. Wilson is making a claim for the wrongful death of Khaliah Magee, but is Section V(E) of the questionnaire, Khaliah Magee's current age is shown as one month.  Ms. Wilson claims that she is not in possession of any medical records, and no signed authorizations were submitted.

11.  **Jerome A. Culler and Joan Culler -** Mr. Culler filled out his own questionnaire and a questionnaire on behalf of his deceased wife.  But he produced no documentation evidencing medical or psychological treatment, either for himself or on behalf of his wife.  He claims that he has possession of medical records for his wife, but these documents were never produced.  While he signed medical

authorizations, the manner in which he filled it out was actually for the release of his own records, not his wife's; Ms. Culler's records are therefore inaccessible.

12. **Lakeesha Lightell and Coren Lightell -** Lakeesha filled out her own questionnaire and a questionnaire on behalf of her minor child, Coren Lightell.  Several of the answers provided for Coren are not answered, except for a notation on the side of the page which reads, "same".  Presumably, Ms. Lightell is referring to her own questionnaire; so, plaintiff has left it up to defendants to fill in the blanks.  It is not the defendants' responsibility to attempt to match up different plaintiffs' information.  Ms. Lightell also failed to indicate whether she is in possession of Coren's medical records – no records were produced.  Although Ms. Lightell claims to be in possession of her own medical records, no records were provided to defendants.  She did, however, sign authorizations for Coren and herself.

These discrepancies are only a sample of the incompleteness of the Plaintiff Fact Sheets.  Not one plaintiff has submitted an executed authorization for the release of social security disability records or workers' compensation records. Most plaintiffs admit that they are in possession of certain documents, yet did not produce those documents. All plaintiffs, with the exception of only one, that admitted to submitting a Standard Form 95 to a federal agency have failed to produce a copy to defendants.  Several plaintiffs claim to be in possession of test results allegedly performed on their individual FEMA housing unit, but not a single test report has been produced.  No pharmacy records, physician reports, medical bills, hospital records, or healthcare documents have ever been given to defendants.

3.      **Plaintiffs' Failure to Comply with PTO No. 8 Justifies This Court Striking Certain Purported Class Representatives as Class Representatives.**

Given the failure of Plaintiffs to complete the Fact Sheets, a necessary step to prepare for the class-certification hearing, this Court is permitted to strike certain of the purported class representatives as class representatives. The Manufacturing Defendants respectfully suggest that if a purported class representative has 1) failed to properly certify the Fact Sheet or 2) failed to fully identify the THU, then that purported class representative should be struck by the Court. If the only failure is failure to provide Section VIII documents, then the Manufacturing Defendants are not moving to strike the purported class representative at this time, but will reserve the right to do so if the required documents are not provided within another seven days of filing this motion. Applying that criteria, the only purported class representative that is not included in those categories is Joan Culler; however, because of her representative's failure to provide Section VIII documents as well the failure to provide an appropriately signed medical authorization, the Manufacturing Defendants move to strike her as well. With this criteria, the Manufacturing Defendants move to strike all but seven of the purported class representatives. The ones that should be struck are:

- Alfonso, Stephen A.
- Beasley, Heavenly
- Culler, Joan
- Dubuclet, Elisha (o/b/o Timia Dubuclet)
- Griffin, Rommel
- Hargrove, Damian Sr. (o/b/o Damian Hargrove, Jr.)
- Jaimevadi, Orlando
- Labeau, Shirley
- Lightell, Coren Michael
- Lightell, Lakeesha N.
- Madison, Darren
- McCray, Adrina
- Pizani, Stephanie A.

- Robertson-Durand, Heather L.
- Robinson, Rayfield, Jr.
- Smith, Dakyre
- Thomas, Sherri
- Wilkerson, Cedric Leon, Jr.
- Wilson, Kierra
- Wood, Kody
- Workman, LuAnn

These purported class representatives have failed to provide even the most essential information that is required for class-certification purposes, as set forth in PTO No. 8. This failure has prevent the Manufacturing Defendants from properly prepare for the class-certification hearing. The sanction of not permitting these individuals to proceed as purported class representatives is an appropriate remedy at this stage because plaintiffs have disrupted the court's discovery schedule and the Manufacturing Defendants' preparation for the class-certification hearing.

## IV.    CONCLUSION

**WHEREFORE,** the Manufacturing Defendants respectfully request that this Honorable Court issue an Order preventing the above-identified 21 purported class representatives from acting as class representatives at the Class Certification Hearing.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS, PFISTER & WEINSTOCK**

s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495**
**JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Fax: (504) 837-3119
andreww@duplass.com
***DEFENSE LIAISON COUNSEL***

## **C E R T I F I C A T E**

I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )     Hand Delivery                    ( )     Prepaid U.S. Mail

( )     Facsimile                          ( )     Federal Express

(X)     CM/ECF

New Orleans, Louisiana this 18th day of July, 2008.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495

15