## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-4"
JUDGE ENGELHARDT
MAG. JUDGE ROBY

## THIS DOCUMENT IS RELATED TO ALL CASES

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFFS' FIRST SET OF MASTER INTERROGATORIES
### TO ALL NON-GOVERNMENTAL DEFENDANTS

TO:  Andrew D. Weinstock, Esq.
     Liaison Counsel for all Non-Governmental Defendants.

**PLEASE TAKE NOTICE** that Plaintiffs propound the following **Interrogatories**

**to all Non-Governmental Defendants** pursuant to the Federal Rules of Civil

Procedure. You are hereby notified and required to respond to each Interrogatory within

the delays provided in Pre-Trial Order No. 2 (Doc. 87).

### INSTRUCTIONS

1. In answering these Interrogatories, please furnish all information, including hearsay, however obtained, which you have in your possession or which is known by you, your agents, employees, or attorneys, or which appears in any records or other information in your possession, custody, and control.

2. If you cannot answer an Interrogatory in full, after exercising due diligence to secure the full information, please so state and answer the remaining portion stating whatever information or knowledge you have concerning the remaining portion, and detailing your attempt to secure the unknown information.



3. These Interrogatories will be deemed to be continuing until, and during trial, and all non-governmental Defendants are under a duty to supplement any and all responses as required by the Federal Rules of Civil Procedure.

4. If any information is deemed privileged by you, please provide, for each such item, a description of the nature of the information not disclosed in a manner that, without revealing the information itself, will enable the undersigned to assess the applicability of the privilege or protection.

5. Your answers to these Interrogatories must be accompanied by a verification signed by you stating that your answers to these interrogatories are true and correct and have been made under oath.

6. For requests referring to policies, practices, criteria, methods, standards, and/or regulations, please include the agency and, when different, the applicable department's policies, practices, criteria, methods, standards, and/or regulations.

7. Please note that the Defendant is under a continuing duty, pursuant to Fed. R. Civ. P. 26(e), to supplement the answers to these Interrogatories upon obtaining subsequent additional information that renders the original answer incorrect or incomplete.

<u>DEFINITIONS</u>

1. The terms "you", "your", and "yours" shall mean the entity named herein, as well as all of its subsidiaries, parent companies, sibling companies, officers, contractors, agents, personnel, representatives, or other persons acting on behalf of, or at the request of, each individual entity named in the Administrative Master Complaint.

2. The term "incident" shall mean the incident or incidents that form the basis of Plaintiffs' Administrative Master Complaint (Doc # 109).

3. The term "document" shall mean any written, recorded, or graphic matter, however produced or reproduced, including photographs.  The term "document" shall be interpreted in its customary broad sense and shall include, but is not limited to, the following items: letters of credit; promissory notes; budgets, journals; registers; cancelled checks; accounts; work sheets; books; records; reports; notes; summaries; surveys; estimates; agreements; diaries; calendars; day timers; correspondence; letters; telegrams; e-mails; electronic archives of e-mails (whether deleted or not); voicemail; magnetically or optically recorded documents; archival copies of magnetically or optically recorded documents; documents that have been logically deleted but not physically erased; the actual media (whether magnetic,

optical or other) that have been used to record or forward documents; telexes; memoranda (including intra-office memoranda); summaries; notes; records of meetings; records of conferences; records of telephone conversations; records of personal interviews or conversations; drafts of documents; business records; maps; drawings; blueprints; charts; plans; specifications; computer printouts; computer archives (deleted or not); computer tapes; computer disks; CD ROMS; microfilm; microfiches; photographs; slides; negatives; motion pictures; video recordings; audio recordings (including transcription); data compilations from which information can be obtained, or translated into, a reasonably usable form; and any other information containing paper, writing, or physical thing in defendants' actual or constructive possession, custody or control. If any documents were, but are no longer, in defendant's actual or constructive possession, custody, or control, identify the document and state the date and manner of its disposition.

4. The term "identify", when used with respect to a natural person, shall mean that person's full name, present or last known employment, present or last known address, and most recent telephone number or numbers.

5. The term "identify", when used with respect to a document or photographs, shall mean to state the type of document (e.g. lease, memorandum, contract, e-mail, chart, diagram, etc.), its location and custodian, the date the document was created, and the identity of the party or parties whose names appear thereon. You may attach a copy of such document in lieu thereof.

6. The singular of each word herein shall be deemed to include the plural and vice-versa; the term "and" shall be deemed to include "or" and vice-versa; the term "any" shall be construed to include the term "all" and vice-versa; and the term "each" shall be construed to include the term "every" and vice-versa; the present tense shall be construed to include the past tense and vice-versa.

7. The term "defendant" and the term "you" shall be deemed synonymous and shall be deemed to include any and all appropriate agents, servants, employees, attorneys and other representatives of the defendant, expert witness, or any other person who has been retained or has otherwise been employed by Defendant in connection with this civil action or its underlying subject matter.

8. The term "date" shall mean the day of the month, the month, and the year. If the exact date is not known and is not available, give the approximate date and indicate that it is only approximate.

9. The term "address" shall mean the post office box number, street number, street,

city, state or province, country (other than the United States of America), and zip code.

10. The terms "relating", "concerning", and "reflecting" (or any of their forms) shall mean relating to, reflecting, constituting, representing, supporting, contradicting, referring to, relevant to, containing information about, stating, describing, analyzing, learning, embodying, containing, mentioning, studying, recording, discussing, or evaluating whether in opposition to or in support of defendant's allegations, contentions, positions, and claims in this action.

11. The term "communication" shall mean any transmission of information (whether written, electronic, or oral), the information transmitted, and the process by which the information is transmitted.

12. The term "person" means any natural person, business, legal or governmental entity or association.

13. The acronym "FEMA" is defined as the Federal Emergency Management Agency, as well as any umbrella or parental federal department encompassing the Federal Emergency Management Agency, such as the United States Department of Homeland Security.   The acronym "DHS" is defined as the United States Department of Homeland Security.

14. The acronyms CDC, ATSDR, OTPER, OSHA, and NIOSH mean Centers for Disease Control and Prevention, Agency for Toxic Substances and Disease Registry, Office of Terrorism Preparedness and Emergency Response, Occupational Safety and Health Administration, and National Institute for Occupational Safety and Health, respectively.

15. The terms "manufactured housing unit" or "housing unit" are defined as travel trailers, trailers, mobile homes, park trailers, temporary housing units, and emergency housing units.

16. The term "manufacture" means manufacture, produce, assemble, and distribute.

17. The term "install" means the process by which the manufactured housing unit is delivered to the person or persons displaced by hurricanes Katrina or Rita and integrated into whichever electrical, water and sewage systems that serve the property on which the manufactured housing unit is delivered.  The term "install" also encompasses the manner in which the unit is placed on the property for use.

18. The term "sale" means sale, donation, giving in kind, giving in payment, and all

other acts that transfer ownership.

19. The term "standards" means standards, specifications, rules, regulations, and guidelines.

20. The acronym "ppm" means parts per million.

21. Facilities. The term "facilities" means yards, offices, warehouses, production plants, manufacturing facilities, storage facilities and all other locations owned or leased by you in which your business is transacted.

22. Occurrence/Transaction. The terms "occurrence" and "transaction" mean the events described in the Complaint and other pleadings, as pleadings is defined in Fed.R.Civ.P.7(a).

23. End user.  The term "end user" means the occupant(s) of the manufactured housing unit and/or the intended recipient or user.  The term "end user" differs from the term "customer", who might buy the manufactured housing unit, but does not necessarily use it.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Please state your market share of the total number of manufactured housing units sold to FEMA, DHS and/or any other governmental agency in response to hurricanes Katrina and Rita.

### INTERROGATORY NO. 2:

Please identify and describe any contracts concerning manufactured housing units in which you and FEMA, DHS and/or any other governmental agency are a party from January 1, 1992 to the present.

### INTERROGATORY NO. 3:

Please state the total number of manufactured housing units sold by you to FEMA, DHS and/or any other governmental agency and state the total amount of  compensation that you received from FEMA, DHS and/or any other governmental agency in return for manufacturing and/or providing manufactured housing units in response to hurricanes Katrina and Rita.

**INTERROGATORY NO. 4:**

Please identify and describe any contracts, subcontracts, agreements, purchase orders, invoices, or any other documents by and between you and any raw material supplier/manufacturer, component part supplier/manufacturer, and finished materials supplier/manufacturer whose materials contained formaldehyde or formaldehyde-based resins used in the production of housing units manufactured by you from January 1, 1992 to the present.

**INTERROGATORY NO. 5:**

Please identify and describe the location of the facilities where each manufactured housing unit was manufactured by you for sale to FEMA, DHS and/or any other governmental agency for units manufactured in response to hurricanes Katrina and Rita.

**INTERROGATORY NO. 6:**

Please identify by name and job title each manager/supervisor employed by you who participated in any aspect of the design, manufacture, and/or the development of the installation protocol for any housing unit manufactured by you for sale to FEMA, DHS and/or any other governmental agency in response to hurricanes Katrina and Rita including, but not limited to, those persons in quality control, engineering, design, research and development.

**INTERROGATORY NO. 7:**

Please identify and describe the quality control and/or quality assurance processes and/or procedures concerning materials containing formaldehyde or formaldehyde-based resins at each of your manufacturing facilities.

**INTERROGATORY NO. 8:**

Please identify and describe all documents concerning the design, specifications, materials containing formaldehyde, assembly of units, and installation, and use of each type of housing unit manufactured by you from January 1, 2005 to the present. Please include in your response all drawings, schematics, material lists, lists of component part manufacturers/vendors, quality control inspections, shop documents and assembly line documents.

**INTERROGATORY NO. 9:**

Please identify and describe all actions taken to cure materials and products containing formaldehyde or formaldehyde-based resins and identify and describe all communications you had with FEMA, DHS, any other governmental agency and/or any other manufacturer

or supplier in this regard concerning housing units manufactured in response to hurricanes Katrina and Rita.

**INTERROGATORY NO. 10:**

Please identify and describe the chemical composition of any materials which contain formaldehyde or formaldehyde-based resins, including, but not limited to, particle board, press board, pressed wood, engineered wood, composite wood, plywood, fiberboard, and/or adhesives or any other component in any housing unit manufactured by you from January 1, 1992 to the present.

**INTERROGATORY NO. 11**:

Please identify and describe all entities who supplied you with materials containing formaldehyde or formaldehyde-based resins used by you to manufacture housing units from January 1, 1992 to the present.

**INTERROGATORY NO. 12:**

Please identify and describe all compensation paid by you to the entities that supplied you with materials containing formaldehyde or formaldehyde-based resins for housing units manufactured by you for sale from January 1, 1992 to the present.

**INTERROGATORY NO. 13:**

Please identify and describe any alternative materials (i.e., materials not containing formaldehyde or formaldehyde-based resins) that were available for purchase and use to manufacture housing units from January 1, 1992 to the present.

**INTERROGATORY NO. 14:**

Please identify and describe all standards, codes, regulations, guidelines, recommendations, industry practices, rules, policies, and/or procedures concerning the use of materials containing formaldehyde or formaldehyde-based resins in housing units manufactured by you from January 1, 1992 to the present.

**INTERROGATORY NO. 15:**

Please identify and describe any indoor and/or outdoor air quality monitoring and/or testing performed by you, or on your behalf, on manufactured housing units and/or housing storage areas from January 1, 1992 to the present.

**INTERROGATORY NO. 16:**

Please identify and describe any monitoring and/or testing performed by you, or on your behalf, for the presence of formaldehyde emissions from any component parts and/or materials used by you to manufacture housing units from January 1, 1992 to the present.

**INTERROGATORY NO. 17:**

Please identify and describe any safety procedures for your employees who worked with, or in close proximity to, materials containing formaldehyde or formaldehyde-based resins from January 1, 1992 to the present.

**INTERROGATORY NO. 18:**

Please identify and describe all documents including, but not limited to, owners manuals, warnings, pamphlets, safety use guidelines, instructions, and writings concerning formaldehyde with regard to manufactured housing units from January 1, 1992 to present.

**INTERROGATORY NO. 19:**

Please identify and describe any health, medical, or scientific research, literature, publications, or material in your possession, custody, or control, whether or not such documents were authored by you, with respect to any potential health effect associated with formaldehyde or formaldehyde-based resins.

**INTERROGATORY NO. 20:**

Please identify and describe all trade and/or industry organizations in which you are a member and state your length of affiliation therewith from January 1, 1992 to the present.

**INTERROGATORY NO. 21:**

Please identify the date(s) and how you discovered, or were informed, that exposure to formaldehyde and/or formaldehyde-based resins may cause any adverse health effect.

**INTERROGATORY NO. 22:**

Please identify and describe all communications (internal or otherwise) between you and FEMA, DHS and/or any other governmental agency or employee, and/or any other manufacturer or supplier of housing units regarding the manufacture or sale of manufactured housing units in response to hurricanes Katrina and Rita.

**INTERROGATORY NO. 23:**

Please state the name of the insurer and policy limits of any policy of insurance that may

cover the claims alleged herein.

## INTERROGATORY NO. 24:

Please identify the name, address, and area of expertise of each expert you may or will call to testify at hearings or trial of this matter.

## INTERROGATORY NO. 25:

Please identify any witness or exhibit you may rely on in this matter.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:    504/522-2304
       Facsimile:    504/528-9973
       gmeunier@gainsben.com


       s/Justin I. Woods
       JUSTIN I. WOODS, #24713
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:    504/522-2304
       Facsimile:    504/528-9973
       jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
RONNIE PENTON, #10462

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2008, I electronically mailed the foregoing to Andrew D.

Weinstock, Esq., Liaison Counsel for all Non-Governmental Defendants.

s/Justin I. Woods
JUSTIN I. WOODS, #24713

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-4"
JUDGE ENGELHARDT
MAG. JUDGE ROBY

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFFS' FIRST MASTER SET OF
## REQUEST FOR PRODUCTION OF DOCUMENTS
## TO ALL NON-GOVERNMENTAL DEFENDANTS

TO:   Andrew D. Weinstock, Esq.
      Liaison Counsel for all Non-Governmental Defendants.

**PLEASE TAKE NOTICE** that Plaintiffs propound the following **Request For**

**Production of Documents to all Non-Governmental Defendants** pursuant to the Federal

Rules of Civil Procedure. You are hereby notified and required to respond to each request

within the delays provided in Pre-Trial Order No. 2 (Doc. 87).

## INSTRUCTIONS

1. In responding to this Request for Production, if the responding party encounters any
ambiguities when construing a request or definition, the response shall set forth the matter
deemed ambiguous and the construction used in responding.

2. Whenever in this Request you are asked to identify and/or produce a document which
is deemed by you to be properly withheld from production for inspection or copying:

   A. With respect to any document or communication which you claim is privileged,
   identify the following facts to enable the Court to determine whether the claim of
   privilege is valid:

      1. If you are withholding the document under a claim of privilege (including,

but not limited to, the attorney-client privilege and the work product doctrine), please provide the information set forth in Fed.R.Civ.P.26(b)(5),including the type of document, the general subject matter of the document, the date of the document, and such other information as is sufficient to identify the document, including where appropriate, the author, addressee, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the information claimed to be protected, will enable this party to assess the applicability of the privilege or protection claimed by you;

2. If you are withholding the document for any reason other than an objection that the document is beyond the scope of discovery or that a request is unduly burdensome, identify as to each document and, in addition to the information requested in paragraph 2(A)(1) above, please state the reason for withholding the document.

B. When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portion as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the identity of the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

3. If production of any requested document is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery.

4. All requests for computerized data are to be in a computer-readable format.

5. Unless otherwise indicated, all requests are limited to documents applicable to, relating to, or concerned with, any or all properties, facilities and offices of defendant.

6. If any requested document is known by you to have existed, but no longer exists or no longer is in your possession, custody, or control, you are requested to identify the last known custodian thereof and state the date upon which it was lost or destroyed or otherwise became unavailable. If the document still exists, you are requested to identify its present custodian and location.

7. In accordance with Fed. R.Civ. P. 34(b), the documents shall be produced as they are kept in the usual course of business or shall be organized and identified to correspond with the following requests by number.

8. If the requested documents are maintained in a file, the file folder is included in the Request for Production.

9. Please note that the Defendant is under a continuing duty, pursuant to Fed. R.Civ.P.26(e), to supplement its responses to these Requests for Production upon obtaining subsequent additional information that renders the original answer incorrect or incomplete.

## DEFINITIONS

1. The terms "you", "your", and "yours" shall mean the entity named herein, as well as all of its subsidiaries, parent companies, sibling companies, officers, contractors, agents, personnel, representatives, or other persons acting on behalf of, or at the request of, each individual entity named in the Administrative Master Complaint.

2. The term "incident" shall mean the incident or incidents that form the basis of Plaintiffs' Administrative Master Complaint (Doc # 109).

3. The term "document" shall mean any written, recorded, or graphic matter, however produced or reproduced, including photographs.  The term "document" shall be interpreted in its customary broad sense and shall include, but is not limited to, the following items: letters of credit; promissory notes; budgets; journals; registers; cancelled checks; accounts; work sheets; books; records; reports; notes; summaries; surveys; estimates; agreements; diaries; calendars; day timers; correspondence; letters; telegrams; e-mails; electronic archives of e-mails (whether deleted or not); voicemail; magnetically or optically recorded documents; archival copies of magnetically or optically recorded documents; documents that have been logically deleted but not physically erased; the actual media (whether magnetic, optical or other) that have been used to record or forward documents; telexes; memoranda (including intra-office memoranda); summaries; notes; records of meetings; records of conferences; records of telephone conversations; records of personal interviews or conversations; drafts of documents; business records; maps; drawings; blueprints; charts; plans; specifications; computer printouts; computer archives (deleted or not); computer tapes; computer disks; CD ROMS; microfilm; microfiches; photographs; slides; negatives; motion pictures; video recordings; audio recordings (including transcription); data compilations from which information can be obtained, or translated into, a reasonably usable form; and any other information containing paper, writing, or physical thing in defendants' actual or constructive possession, custody or control.  If any documents were, but are no longer, in defendant's actual or constructive possession, custody, or control, identify the document and state the date and manner of its disposition.

4. The term "identify", when used with respect to a natural person, shall mean that person's full name, present or last known employment, present or last known address, and most recent telephone number or numbers.

Page 3 of  10

5. The term "identify", when used with respect to a document or photographs, shall mean to state the type of document (e.g. lease, memorandum, contract, e-mail, chart, diagram, etc.), its location and custodian, the date the document was created, and the identity of the party or parties whose names appear thereon.  You may attach a copy of such document in lieu thereof.

6. The singular of each word herein shall be deemed to include the plural and vice-versa; the term "and" shall be deemed to include "or" and vice-versa; the term "any" shall be construed to include the term "all" and vice-versa; and the term "each" shall be construed to include the term "every" and vice-versa; the present tense shall be construed to include the past tense and vice-versa.

7. The term "defendant" and the term "you" shall be deemed synonymous and shall be deemed to include any and all appropriate agents, servants, employees, attorneys and other representatives of the defendant, expert witness, or any other person who has been retained or has otherwise been employed by Defendant in connection with this civil action or its underlying subject matter.

8. The term "date" shall mean the day of the month, the month, and the year. If the exact date is not known and is not available, give the approximate date and indicate that it is only approximate.

9. The term "address" shall mean the post office box number, street number, street, city, state or province, country (other than the United States of America), and zip code.

10. The terms "relating",  "concerning", and "reflecting" (or any of their forms) shall mean relating to, reflecting, constituting, representing, supporting, contradicting, referring to, relevant to, containing information about, stating, describing, analyzing, learning, embodying, containing, mentioning, studying, recording, discussing, or evaluating whether in opposition to or in support of defendant's allegations, contentions, positions, and claims in this action.

11. The term "communication" shall mean any transmission of information (whether written, electronic, or oral), the information transmitted, and the process by which the information is transmitted.

12. The term "person" means any natural person, business, legal or governmental entity or association.

13. The acronym "FEMA" is defined as the Federal Emergency Management Agency, as well as any umbrella or parental federal department encompassing the Federal Emergency Management Agency, such as the United States Department of Homeland Security.  The acronym "DHS" is defined as the United States Department of Homeland

Security.

14. The acronyms CDC, ATSDR, OTPER, OSHA, and NIOSH mean Centers for Disease Control and Prevention, Agency for Toxic Substances and Disease Registry, Office of Terrorism Preparedness and Emergency Response, Occupational Safety and Health Administration, and National Institute for Occupational Safety and Health, respectively.

15. The terms  "manufactured housing unit" or "housing unit" are defined as travel trailers, trailers, mobile homes, park trailers, temporary housing units, and emergency housing units.

16. The term "manufacture" means manufacture, produce, assemble, and distribute.

17. The term "install" means the process by which the manufactured housing unit is delivered to the person or persons displaced by hurricanes Katrina or Rita and integrated into whichever electrical, water and sewage systems that serve the property on which the manufactured housing unit is delivered.  The term "install" also encompasses the manner in which the unit is placed on the property for use.

18. The term "sale" means sale, donation, giving in kind, giving in payment, and all other acts that transfer ownership.

19. The term "standards" means standards, specifications, rules, regulations, and guidelines.

20. The acronym "ppm" means parts per million.

21. Facilities. The term "facilities" means yards, offices, warehouses, production plants, manufacturing facilities, storage facilities and all other locations owned or leased by you in which your business is transacted.

22. Occurrence/Transaction. The terms "occurrence" and "transaction" mean the events described in the Complaint and other pleadings, as pleadings is defined in Fed.R.Civ.P.7(a).

23. End user.  The term "end user" means the occupant(s) of the manufactured housing unit and/or the intended recipient or user.  The term "end user" differs from the term "customer", who might buy the manufactured housing unit, but does not necessarily use it.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

Please produce all documents that reflect your total market share of the total number of manufactured housing units sold to FEMA, DHS and/or any other governmental agency in response to hurricanes Katrina and Rita.

### REQUEST FOR PRODUCTION NO. 2:

Please produce all contracts concerning manufactured housing units to which you and FEMA, DHS and/or any other governmental agency were a party from January 1, 1992 to the present.

### REQUEST FOR PRODUCTION NO. 3:

Please produce all documents that reflect the total number of manufactured housing units sold to FEMA, DHS and/or any other governmental agency and produce all documents that reflect the total amount of compensation that you received from FEMA, DHS and/or any other governmental agency in return for manufacturing and/or providing manufactured housing units in response to hurricanes Katrina and Rita.

### REQUEST FOR PRODUCTION NO. 4:

Please produce all contracts, subcontracts, agreements, purchase orders, invoices, or any other documents by and between you and any raw material supplier/manufacturer, component part supplier/manufacturer, and finished materials supplier/manufacturer whose materials contained formaldehyde or formaldehyde-based resins used in the production of housing units manufactured by you from January 1, 1992 to the present.

### REQUEST FOR PRODUCTION NO. 5:

Please produce all documents that identify the location of the facilities where each manufactured housing unit was manufactured by you for sale to FEMA, DHS and/or any other governmental agency in response to hurricanes Katrina and Rita.

### REQUEST FOR PRODUCTION NO. 6:

Please produce all documents that identify the names and job titles of each manager/supervisor employed by you who participated in any aspect of the design, manufacture, and/or installation of any housing unit manufactured by you for sale to FEMA, DHS and/or any other governmental agency in response to hurricanes Katrina and Rita including, but not limited to, those persons in quality control, engineering, design, research and development, sale and distribution, contract negotiation, and safety

compliance.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce all documents that reflect the quality control and quality assurance processes and/or procedures concerning material containing formaldehyde or formaldehyde-based resins at each of your manufacturing facilities from January 1, 1992 to the present.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce all documents that reflect the design, specifications, materials containing formaldehyde, assembly of units, installation, and use of each type of housing unit manufactured by you from January 1, 2005 to the present. Please include in your response all drawings, schematics, material lists, lists of component part manufacturers/vendors, quality control inspections, shop documents and assembly line documents.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce all documents that reflect actions taken to cure materials containing formaldehyde or formaldehyde-based resins used in manufactured housing units and produce all documents that reflect communications you had with FEMA, DHS, any other governmental agency and/or any other manufacturer or supplier in this regard from August 1, 2005 to the present.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce all documents that reflect the chemical composition of any materials which contain formaldehyde or formaldehyde-based resins, including, but not limited to, particle board, pressed wood, engineered wood, composite wood, plywood, press board, fiberboard, and/or adhesives or any other component in any housing unit manufactured by you from January 1, 1992 to the present.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce all documents that identify any entities who supplied you with materials containing formaldehyde or formaldehyde-based resins used by you to manufacture housing units from January 1, 1992 to the present.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce all documents that reflect any compensation paid by you to the entities that supplied you with materials containing formaldehyde or formaldehyde-based resins for housing units manufactured by you from January 1, 1992 to the present.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce all documents that identify any alternative material (i.e., materials not containing formaldehyde or formaldehyde-based resins) that were available for purchase and use to manufacture housing units from January 1, 1992 to the present.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce all standards, codes, regulations, guidelines, recommendations, industry practices, rules, policies, and/or procedures concerning the use of materials containing formaldehyde or formaldehyde-based resins in housing units manufactured by you from January 1, 1992 to the present.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce all documents that reflect any indoor and/or outdoor air quality monitoring and/or testing performed by you, or on your behalf, on manufactured housing units and/or housing storage areas from January 1, 1992 to the present.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce all documents that reflect any monitoring and/or testing performed by you, or on your behalf, for the presence of formaldehyde emissions from any component parts and/or materials used by you to manufacture housing units from January 1, 1992 to the present. Please include in this production all documents reflecting proposed or actual changes in such testing for housing units manufactured for sale to FEMA and/or DHS and/or any other governmental agency from August 29, 2005 to the present.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce all documents regarding safety procedures for your employees who worked with, or in close proximity to, materials containing formaldehyde or formaldehyde-based resins from January 1, 1992 to the present.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce all documents including, but not limited to, owners manuals, warnings, pamphlets, safety use guidelines, instructions, and writings concerning formaldehyde with regard to manufactured housing units from January 1,1992 to the present.

**REQUEST FOR PRODUCTION NO. 19:**

Please produce all health, medical, or scientific research, literature, publications or material in your possession, custody, or control, whether or not such documents were authored by

you, with respect to any potential health effect associated with formaldehyde or formaldehyde-based resins.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce all documents informing you that exposure to formaldehyde and/or formaldehyde-based resins may cause adverse health effects.

**REQUEST FOR PRODUCTION NO. 21:**

Please produce any communication (internal or otherwise) between you and FEMA, DHS and/or any other governmental agency or employee and/or any other manufacturer or supplier of housing units regarding the manufacture or sale of these units in response to hurricanes Katrina and Rita.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce certified copies of any policies of insurance, excess insurance, and umbrella insurance that may cover the claims made herein.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce all curriculum vitae and  written reports issued by any expert who has testified on your behalf from January 1, 1992 to present, whether at trial or at deposition, whom you may call as an expert witness at any hearing or trial of this matter.

**REQUEST FOR PRODUCTION NO. 24:**

Please produce all documents that relate to inspections, tests, studies, writings, drawings, graphs, charts, recordings, and/or opinions concerning formaldehyde, formaldehyde emissions and/or formaldehyde-based resins provided to, received from, and/or produced by any expert who will or may be called by you as a witness during any hearing or the trial of this matter.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE**
**PRODUCT LIABILITY LITIGATION**


BY:    s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       **PLAINTIFFS' CO-LIAISON COUNSEL**

Page 9 of  10

Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:     504/522-2304
Facsimile:     504/528-9973
gmeunier@gainsben.com


s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:     504/522-2304
Facsimile:     504/528-9973
jwoods@gainsben.com


**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
RONNIE PENTON, #10462


## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2008, I electronically mailed the foregoing to Andrew D.

Weinstock, Esq., Liaison Counsel for all Non-Governmental Defendants.

s/Justin I. Woods
JUSTIN I. WOODS, #24713

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-4"

JUDGE ENGELHARDT
MAG. JUDGE ROBY

THIS DOCUMENT IS RELATED TO ALL CASES

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' FIRST MASTER SET OF INTERROGATORIES PROPOUNDED TO THE UNITED STATES OF AMERICA THROUGH THE FEDERAL EMERGENCY MANAGEMENT AGENCY

**TO:**   Henry Miller, Esq.,
Michelle Boyle, Attorney at Law
on behalf of The United States of America
through The Federal Emergency Management Agency.

**PLEASE TAKE NOTICE** that Plaintiffs propound the following **Interrogatories**

**to The United States of America, through the Federal Emergency Management**

**Agency** pursuant to the Federal Rules of Civil Procedure. You are hereby notified and

required to respond to each Interrogatory within the delays provided in Pre-Trial Order

No. 2 (Doc. 87).

## INSTRUCTIONS

1. In answering these Interrogatories, please furnish all information, including
hearsay, however obtained, which you have in your possession or which is known
by you, your agents, employees, or attorneys, or which appears in any records or
other information in your possession, custody, and control.

2. If you cannot answer an Interrogatory in full, after exercising due diligence to secure the full information, please so state and answer the remaining portion stating whatever information or knowledge you have concerning the remaining portion, and detailing your attempt to secure the unknown information.

3. These Interrogatories will be deemed to be continuing until, and during trial, and The United States of America through the Federal Emergency Management Agency is under a duty to supplement any and all responses as required by the Federal Rules of Civil Procedure.

4. If any information is deemed privileged by you, please provide, for each such item, a description of the nature of the information not disclosed in a manner that, without revealing the information itself, will enable the undersigned to assess the applicability of the privilege or protection.

5. Your answers to these Interrogatories must be accompanied by a verification signed by you stating that your answers to these interrogatories are true and correct and have been made under oath.

6. For requests referring to policies, practices, criteria, methods, standards, and/or regulations, please include the agency and, when different, the applicable department's policies, practices, criteria, methods, standards, and/or regulations.

7. Please note that the Defendant is under a continuing duty, pursuant to Fed. R. Civ. P. 26(e), to supplement the answers to these Interrogatories upon obtaining subsequent additional information that renders the original answer incorrect or incomplete.

<u>DEFINITIONS</u>

1. The terms "you", "your", and "yours" shall mean The United States of America through the Federal Emergency Management Agency, as well as all of its subsidiary agencies, parent agencies, sibling agencies, officers, contractors, agents, personnel, representatives, or other persons acting on behalf of, or at the request of The United States of America through the Federal Emergency Management Agency.

2. The term "incident" shall mean the incident or incidents that form the basis of Plaintiffs' Administrative Master Complaint (Doc # 109).

3. The term "document" shall mean any written, recorded, or graphic matter, however produced or reproduced, including photographs.  The term "document"

shall be interpreted in its customary broad sense and shall include, but is not limited to, the following items: letters of credit; promissory notes; budgets, journals; registers; cancelled checks; accounts; work sheets; books; records; reports; notes; summaries; surveys; estimates; agreements; diaries; calendars; day timers; correspondence; letters; telegrams; e-mails; electronic archives of e-mails (whether deleted or not); voicemail; magnetically or optically recorded documents; archival copies of magnetically or optically recorded documents; documents that have been logically deleted but not physically erased; the actual media (whether magnetic, optical or other) that have been used to record or forward documents; telexes; memoranda (including intra-governmental memoranda); summaries; notes; records of meetings; records of conferences; records of telephone conversations; records of personal interviews or conversations; drafts of documents; business records; maps; drawings; blueprints; charts; plans; specifications; computer printouts; computer archives (deleted or not); computer tapes; computer disks; CD ROMS; microfilm; microfiches; photographs; slides; negatives; motion pictures; video recordings; audio recordings (including transcription); data compilations from which information can be obtained, or translated into, a reasonably usable form; and any other information containing paper, writing, or physical thing in defendants' actual or constructive possession, custody or control.  If any documents were, but are no longer, in defendant's actual or constructive possession, custody, or control, identify the document and state the date and manner of its disposition.

4. The term "identify", when used with respect to a natural person, shall mean that person's full name, present or last known employment, present or last known address, and most recent telephone number or numbers.

5. The term "identify", when used with respect to a document or photographs, shall mean to state the type of document (e.g. lease, memorandum, contract, e-mail, chart, diagram, etc.), its location and custodian, the date the document was created, and the identity of the party or parties whose names appear thereon. You may attach a copy of such document in lieu thereof.

6. The singular of each word herein shall be deemed to include the plural and vice-versa; the term "and" shall be deemed to include "or" and vice-versa; the term "any" shall be construed to include the term "all" and vice-versa; and the term "each" shall be construed to include the term "every" and vice-versa; the present tense shall be construed to include the past tense and vice-versa.

7. The term "defendant" and the term "you" shall be deemed synonymous and shall be deemed to include any and all appropriate agents, servants, employees, attorneys and other representatives of the defendant, expert witness, or any other person who has been retained or has otherwise been employed by Defendant in connection with this civil action or its underlying subject matter.

8. The term "date" shall mean the day of the month, the month, and the year. If the exact date is not known and is not available, give the approximate date and indicate that it is only approximate.

9. The term "address" shall mean the post office box number, street number, street, city, state or province, country (other than the United States of America), and zip code.

10. The terms "relating", "concerning", and "reflecting" (or any of their forms) shall mean relating to, reflecting, constituting, representing, supporting, contradicting, referring to, relevant to, containing information about, stating, describing, analyzing, learning, embodying, containing, mentioning, studying, recording, discussing, or evaluating whether in opposition to or in support of defendant's allegations, contentions, positions, and claims in this action.

11. The term "communication" shall mean any transmission of information (whether written, electronic, or oral), the information transmitted, and the process by which the information is transmitted.

12. The term "person" means any natural person, business, legal or governmental entity or association.

13. The acronym "FEMA" is defined as the Federal Emergency Management Agency, as well as any umbrella or parental federal department encompassing the Federal Emergency Management Agency, such as the United States Department of Homeland Security.  The acronym "DHS" is defined as the United States Department of Homeland Security.

14. The acronyms CDC, ATSDR, OTPER, OSHA, and NIOSH mean Centers for Disease Control and Prevention, Agency for Toxic Substances and Disease Registry, Office of Terrorism Preparedness and Emergency Response, Occupational Safety and Health Administration, and National Institute for Occupational Safety and Health, respectively.

15. The terms  "manufactured housing unit" or "housing unit" are defined as travel trailers, trailers, mobile homes, park trailers, temporary housing units, and

emergency housing units.

16. The term "manufacture" means manufacture, produce, assemble, and distribute.

17. The term "install" means the process by which the manufactured housing unit is delivered to the person or persons displaced by hurricanes Katrina or Rita and integrated into whichever electrical, water and sewage systems that serve the property on which the manufactured housing unit is delivered.  The term "install" also encompasses the manner in which the unit is placed on the property for use.

18. The term "sale" means sale, donation, giving in kind, giving in payment, and all other acts that transfer ownership.

19. The term "standards" means standards, specifications, rules, regulations, and guidelines.

20. The acronym "ppm" means parts per million.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Please identify and describe any contracts to which you and any manufactured housing unit manufacturer or supplier are a party and state any compensation paid by you in return for manufacturing and/or providing manufactured housing units from January 1, 1992 to the present.

### INTERROGATORY NO. 2:

Please identify and describe any standards, and the underlying studies, reports, testing and investigations, concerning the use of materials containing formaldehyde in manufactured housing units from January 1, 1992 to the present. For each such standard, please state (1) the standard; (2) the date of release of the standard; (3) any subsequent changes in the original standard; (4) the dates of the releases of the changes to the original standard; and (5) the name and date of the underlying studies, reports, testing, and investigations that in any way caused or relates to the changes in the standards.

### INTERROGATORY NO. 3:

Please identify and describe any specifications or other documents, including, but not limited to, videos, addressing the design, manufacture, construction, installation, and use of manufactured housing units for emergency housing.

## INTERROGATORY NO. 4:

Please describe how and when you first became aware of any health hazards associated with exposure to formaldehyde and/or formaldehyde-based resins from January 1, 1992 to the present.

## INTERROGATORY NO. 5:

Please describe how and when you first became aware of the existence of formaldehyde levels exceeding 0.008 ppm in the manufactured housing units provided to those persons displaced by hurricanes Katrina and Rita.

## INTERROGATORY NO. 6:

Please describe how and when you first became aware of the existence of formaldehyde levels exceeding 0.03 ppm in the manufactured housing units provided to those persons displaced by hurricanes Katrina and Rita.

## INTERROGATORY NO. 7:

Please identify all manufactured housing units provided to those persons displaced by hurricanes Katrina and Rita from August 29, 2005 to the present including each such manufactured housing unit's manufacturer, model, type of manufactured housing unit (i.e., mobile home, travel trailer, park model), serial number, vehicle identification number, date of manufacture, date of delivery, date of pick up from the resident, and current disposition of each manufactured housing unit.

## INTERROGATORY NO. 8:

Please identify any communications with residents of manufactured housing units, specifically including, but not limited to, communications regarding health concerns and/or complaints concerning odors from residents and/or anyone on their behalf from August 29, 2005 to the present.

## INTERROGATORY NO. 9:

Please identify any testing, test results, study methodologies and/or testing protocols for any testing performed by you or any Defendant, manufacturer or supplier of manufactured housing units, Center for Toxicology and Environmental Health (CTEH), and any other governmental agency including, but not limited to, the Environmental Protection Agency, the Centers for Disease Control, the Agency for Toxic Substances and Disease Registry, and the National Institute for Occupational Safety and Health, Occupational Safety and Health Administration,  or any other governmental agency, regarding formaldehyde and formaldehyde-based resins in manufactured housing units.

**INTERROGATORY NO. 10:**

Please identify the date, author, and the substance of each communication with any manufacturer or supplier of manufactured housing units from January 1, 2005 to the present.

**INTERROGATORY NO. 11:**

Please identify the date, author, and the substance of each communication from any manufacturer or supplier of manufactured housing units regarding possible formaldehyde emissions in manufactured housing units from January 1, 1992 to the present.

**INTERROGATORY NO. 12:**

Please identify all communications with any manufacturer or supplier of manufactured housing units or any local, state, or federal governmental agency (including internal communications) regarding the procurement and use of manufactured housing units following hurricanes Katrina and Rita.

**INTERROGATORY NO. 13:**

Please identify and describe any standards, or studies, reports, testing, and investigations concerning residential use of manufactured housing units and any associated health effects from January 1, 1992 to the present.

**INTERROGATORY NO. 14:**

Please identify and describe any communications (including internal communications) between you and any other governmental agency or manufacturer or supplier of

manufactured housing units regarding residential use of these units and/or associated health effects from January 1, 1992 to the present.

**INTERROGATORY NO. 15:**

Please identify any individual (including full names and job titles) who studied the health effects of exposure to formaldehyde emissions in manufactured housing units or component parts including, but not limited to, FEMA, CDC, ATSDR, OTPER, OSHA, and NIOSH.

**INTERROGATORY NO. 16:**

Please identify by date and author any indoor or outdoor testing for formaldehyde emissions performed by you, or anyone on your behalf, in manufactured housing units or staging/storage areas.

**INTERROGATORY NO. 17:**

Please identify and describe what you consider to be a safe level of formaldehyde in indoor air in a residential setting in manufactured housing units. Further, please identify and describe all studies, publications, reports, testing, test results, and test protocols utilized by you to determine what you consider to be a safe level of formaldehyde in these units.

**INTERROGATORY NO. 18:**

Please identify and describe any Congressionally mandated duties and responsibilities requiring you to provide safe housing to those persons displaced by natural or manmade disasters.

**INTERROGATORY NO. 19:**

Please identify and describe all communications internally and/or by or between any local, state or federal governmental agencies, members of Congress, and/or members of the Executive Branch of government regarding providing manufactured housing units to individuals displaced by hurricanes Katrina and Rita.

**INTERROGATORY NO. 20:**

Please identify all individuals who have asserted a claim against you alleging damages or injuries as a result of exposure to formaldehyde in a manufactured housing unit provided by you prior to August 29, 2005.

**INTERROGATORY NO. 21:**

Please explain in detail why no standard or regulation existed (prior to January 1, 2008) regarding formaldehyde or formaldehyde emissions in travel trailers, when such regulations existed for mobile homes.

**INTERROGATORY NO. 22:**

Please state the basis for 24 C.F. R. § 3280.309 which sets forth the "Important Health Notice" requirement for manufactured housing units and state what "research is continuing on the possible long-term effects of exposure to formaldehyde."

**INTERROGATORY NO. 23:**

Please describe in detail the factors involved in the decision-making process to provide manufactured housing units to displaced residents following natural or man-made disasters.

**INTERROGATORY NO. 24:**

Please describe in detail the factors involved in the decision making process to continue to provide manufactured housing units to displaced residents following testing performed as early as October 2005 which indicated that levels of formaldehyde in manufactured housing units may exceed applicable ATSDR minimum risk levels.

**INTERROGATORY NO. 25:**

Please state in detail what steps were taken in coordination with any housing unit manufacturer or supplier to resolve concerns about formaldehyde emissions in manufactured housing units.

**FEMA TRAILER FORMALDEHYDE**
**PRODUCT LIABILITY LITIGATION**


BY:   s/Gerald E. Meunier
      GERALD E. MEUNIER, #9471
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &
      Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:     504/522-2304
      Facsimile:      504/528-9973
      gmeunier@gainsben.com


      s/Justin I. Woods
      JUSTIN I. WOODS, #24713
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &
      Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:     504/522-2304
      Facsimile:      504/528-9973
      jwoods@gainsben.com


**COURT-APPOINTED PLAINTIFFS'**
**STEERING COMMITTEE**
            ANTHONY BUZBEE, Texas # 24001820
            RAUL BENCOMO, #2932
            FRANK D'AMICO, #17519
            MATT MORELAND, #24567


Page 10 of  11

LINDA NELSON, #9938
RONNIE PENTON, #10462

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2008, I electronically mailed the foregoing to Henry

Miller, Esq. And Michelle Boyle, Attorney at Law on behalf of the United States of America,

through The Federal Emergency Management Agency.

s/Justin I. Woods
JUSTIN I. WOODS, #24713

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-4"

JUDGE ENGELHARDT
MAG. JUDGE ROBY

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFFS' FIRST MASTER SET OF REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO THE UNITED STATES OF AMERICA THROUGH THE FEDERAL EMERGENCY MANAGEMENT AGENCY

**To:**   Henry Miller, Esq.,
Michelle Boyle, Attorney at Law
on behalf of The United States of America
through The Federal Emergency Management Agency.

**PLEASE TAKE NOTICE** that Plaintiffs propound the following **Request For**

**Production of Documents to The United States of America, through the Federal**

**Emergency Management Agency** pursuant to the Federal Rules of Civil Procedure.

You are hereby notified and required to respond to each request within the delays

provided in Pre-Trial Order No. 2 (Doc. 87).

INSTRUCTIONS

1. In responding to this Request for Production, if the responding party encounters any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

2. Whenever in this Request you are asked to identify and/or produce a document which is deemed by you to be properly withheld from production for inspection or copying:

A. With respect to any document or communication which you claim is privileged, identify the following facts to enable the Court to determine whether the claim of privilege is valid:

1. If you are withholding the document under a claim of privilege (including, but not limited to, the attorney-client privilege and the work product doctrine), please provide the information set forth in Fed.R.Civ.P.26(b)(5),including the type of document, the general subject matter of the document, the date of the document, and such other information as is sufficient to identify the document, including where appropriate, the author, addressee, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the information claimed to be protected, will enable this party to assess the applicability of the privilege or protection claimed by you;

2. If you are withholding the document for any reason other than an objection that the document is beyond the scope of discovery or that a request is unduly burdensome, identify as to each document and, in addition to the information requested in paragraph 2(A)(1) above, please state the reason for withholding the document.

B. When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portion as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the identity of the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

3. If production of any requested document is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery.

4. All requests for computerized data are to be in a computer-readable format.

5. Unless otherwise indicated, all requests are limited to documents applicable to, relating to, or concerned with, any or all properties, facilities and offices of defendant.

6. If any requested document is known by you to have existed, but no longer exists or no longer is in your possession, custody, or control, you are requested to identify the last known custodian thereof and state the date upon which it was lost or destroyed or otherwise became unavailable. If the document still exists, you are requested to identify its present custodian and location.

7. In accordance with Fed. R.Civ. P. 34(b), the documents shall be produced as they are kept in the usual course of business or shall be organized and identified to correspond with the following requests by number.

8. If the requested documents are maintained in a file, the file folder is included in the Request for Production.

9. Please note that the Defendant is under a continuing duty, pursuant to Fed. R.Civ.P.26(e), to supplement its responses to these Requests for Production upon obtaining subsequent additional information that renders the original answer incorrect or incomplete.

## DEFINITIONS

1. The terms "you", "your", and "yours" shall mean The United States of America through the Federal Emergency Management Agency, as well as all of its subsidiary agencies, parent agencies, sibling agencies, officers, contractors, agents, personnel, representatives, or other persons acting on behalf of, or at the request of The United States of America through the Federal Emergency Management Agency.

2. The term "incident" shall mean the incident or incidents that form the basis of Plaintiffs' Administrative Master Complaint (Doc # 109).

3. The term "document" shall mean any written, recorded, or graphic matter, however produced or reproduced, including photographs. The term "document" shall be interpreted in its customary broad sense and shall include, but is not limited to, the following items: letters of credit; promissory notes; budgets, journals; registers; cancelled checks; accounts; work sheets; books; records; reports; notes; summaries; surveys; estimates; agreements; diaries; calendars; day timers; correspondence; letters; telegrams; e-mails; electronic archives of e-mails (whether deleted or not); voicemail; magnetically or optically recorded documents; archival copies of magnetically or optically recorded documents; documents that have been logically deleted but not physically erased; the actual media (whether magnetic, optical or other) that have been used to record or forward documents; telexes; memoranda (including intra-governmental memoranda); summaries; notes; records of meetings; records of conferences; records of telephone conversations; records of personal interviews or conversations; drafts of documents; business records; maps; drawings; blueprints; charts; plans; specifications; computer printouts; computer archives (deleted or not); computer tapes; computer disks; CD ROMS; microfilm; microfiches; photographs; slides; negatives; motion pictures; video recordings; audio recordings (including transcription); data compilations from which information can be obtained, or translated into, a reasonably usable form; and any other information containing paper, writing, or physical

thing in defendants' actual or constructive possession, custody or control.    If any documents were, but are no longer, in defendant's actual or constructive possession, custody, or control, identify the document and state the date and manner of its disposition.

4. The term "identify", when used with respect to a natural person, shall mean that person's full name, present or last known employment, present or last known address, and most recent telephone number or numbers.

5. The term "identify", when used with respect to a document or photographs, shall mean to state the type of document (e.g. lease, memorandum, contract, e-mail, chart, diagram, etc.), its location and custodian, the date the document was created, and the identity of the party or parties whose names appear thereon.  You may attach a copy of such document in lieu thereof.

6. The singular of each word herein shall be deemed to include the plural and vice-versa; the term "and" shall be deemed to include "or" and vice-versa; the term "any" shall be construed to include the term "all" and vice-versa; and the term "each" shall be construed to include the term "every" and vice-versa; the present tense shall be construed to include the past tense and vice-versa.

7. The term "defendant" and the term "you" shall be deemed synonymous and shall be deemed to include any and all appropriate agents, servants, employees, attorneys and other representatives of the defendant, expert witness, or any other person who has been retained or has otherwise been employed by Defendant in connection with this civil action or its underlying subject matter.

8. The term "date" shall mean the day of the month, the month, and the year. If the exact date is not known and is not available, give the approximate date and indicate that it is only approximate.

9. The term "address" shall mean the post office box number, street number, street, city, state or province, country (other than the United States of America), and zip code.

10. The terms "relating",  "concerning", and "reflecting" (or any of their forms) shall mean relating to, reflecting, constituting, representing, supporting, contradicting, referring to, relevant to, containing information about, stating, describing, analyzing, learning, embodying, containing, mentioning, studying, recording, discussing, or evaluating whether in opposition to or in support of defendant's allegations, contentions, positions, and claims in this action.

11. The term "communication" shall mean any transmission of information (whether written, electronic, or oral), the information transmitted, and the process by which the information is transmitted.

12. The term "person" means any natural person, business, legal or governmental entity or association.

13. The acronym "FEMA" is defined as the Federal Emergency Management Agency, as well as any umbrella or parental federal department encompassing the Federal Emergency Management Agency, such as the United States Department of Homeland Security.  The acronym "DHS" is defined as the United States Department of Homeland Security.

14. The acronyms CDC, ATSDR, OTPER, OSHA, and NIOSH mean Centers for Disease Control and Prevention, Agency for Toxic Substances and Disease Registry, Office of Terrorism Preparedness and Emergency Response, Occupational Safety and Health Administration, and National Institute for Occupational Safety and Health, respectively.

15. The terms "manufactured housing unit" or "housing unit" are defined as travel trailers, trailers, mobile homes, park trailers, temporary housing units, and emergency housing units.

16. The term "manufacture" means manufacture, produce, assemble, and distribute.

17. The term "install" means the process by which the manufactured housing unit is delivered to the person or persons displaced by hurricanes Katrina or Rita and integrated into whichever electrical, water and sewage systems that serve the property on which the manufactured housing unit is delivered.  The term "install" also encompasses the manner in which the unit is placed on the property for use.

18. The term "sale" means sale, donation, giving in kind, giving in payment, and all other acts that transfer ownership.

19. The term "standards" means standards, specifications, rules, regulations, and guidelines.

20. The acronym "ppm" means parts per million.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

Please produce any contracts to which you and any manufacturer or supplier of manufactured housing units were a party from January 1, 1992 to the present and

produce all documents that reflect any and all compensation paid by you in return for manufacturing and/or providing manufactured housing units from January 1, 1992 to the present.

## REQUEST FOR PRODUCTION NO. 2:

Please produce all standards, studies, reports, testing, and investigations concerning the use of materials containing formaldehyde in manufactured housing units from January 1, 1992 to the present, specifically including, but not limited to, the standards regarding length of habitation in these housing units.

## REQUEST FOR PRODUCTION NO. 3:

Please produce all documents that reflect any specifications addressing the design, manufacture, construction, installation, and use of manufactured housing units and the studies, reports, testing, and investigations related thereto from January 1, 1992 to the present.

## REQUEST FOR PRODUCTION NO. 4:

Please produce all documents that reflect how and when you first became aware of any health hazards associated with exposure to formaldehyde and/or formaldehyde-based resins from January 1, 1992 to the present.

## REQUEST FOR PRODUCTION NO. 5:

Please produce all documents that reflect how and when you first became aware of the existence of formaldehyde levels exceeding 0.008 ppm in the manufactured housing units provided to those persons displaced by hurricanes Katrina and Rita from August 29, 2005 to the present.

## REQUEST FOR PRODUCTION NO. 6:

Please produce all documents that reflect how and when you first became aware of the existence of  formaldehyde levels exceeding 0.03 ppm in the manufactured housing units provided to those persons displaced by hurricanes Katrina and Rita from August 29, 2005 to the present.

Page 6 of  11

**REQUEST FOR PRODUCTION NO. 7:**

Please produce all documents that identify all manufactured housing units provided to those persons displaced by hurricanes Katrina and Rita from August 29, 2005 including each manufacturer, model, type of unit (i.e. mobile home, travel trailer, park model) serial number, vehicle identification number, date of manufacture, date of delivery, date of pick up from the resident, and current disposition of each housing unit.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce all documents that reflect any communications with residents of manufactured housing units,  specifically including, but not limited to, communications regarding health concerns and/or complaints of odors from residents and/or anyone on their behalf from August 29, 2005 to the present.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce all documents that reflect testing, test results, study methodologies and/or testing protocols between you and  any Defendant, manufacturer or supplier of manufactured housing units, Center for Toxicology and Environmental Health (CTEH) and any other governmental agency including, but not limited to, the Environmental Protection Agency, the Centers for Disease Control, the Agency for Toxic Substances and Disease Registry, and the National Institute for Occupational Safety and Health or any other governmental agency, regarding formaldehyde and formaldehyde-based resins in manufactured housing units.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce all documents that reflect any communications with any manufacturer or supplier of manufactured housing units from January 1, 2005 to the present.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce all documents that reflect communications from any manufacturer or supplier of manufactured housing units regarding possible formaldehyde emissions in manufactured housing units from January 1, 1992 to the present.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce all documents that reflect communications with any manufacturer or supplier of manufactured housing units regarding the design, construction, installation and/or use of manufactured housing units for displaced residents following hurricanes Katrina and Rita.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce all documents that reflect any standards and the underlying studies, reports, testing, and investigations concerning residential use of manufactured housing units from January 1, 1992 to the present.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce all documents that reflect any communications (including internal communications) between you and any other governmental agency or manufacturer or supplier of manufactured housing units regarding residential use of manufactured housing units from January 1, 1992 to the present.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce all studies concerning the health effects of formaldehyde emissions in manufactured housing units including, but not limited to, studies by FEMA, CDC, ATSDR, OTPER, OSHA and NIOSH, and any non-governmental entity.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce all documents that reflect any indoor or outdoor testing for formaldehyde emissions performed by you or anyone on your behalf in manufactured housing units or staging/storage areas.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce all documents that reflect what you consider to be a safe level of formaldehyde concentrations in indoor air in a residential setting in manufactured housing units. Further, please produce all studies, publications, reports, testing, and test results utilized by you to determine what you consider te be a safe level of indoor

formaldehyde concentrations.

## REQUEST FOR PRODUCTION NO. 18:

Please produce all documents that reflect any Congressionally mandated duties and responsibilities requiring you to provide safe housing to those persons displaced by natural or manmade disasters.

## REQUEST FOR PRODUCTION NO. 19:

Please produce all documents that reflect all communications internally and/or by or between any local, state, or federal governmental agency, members of Congress, and/or members of the Executive Branch of government, Defendants, manufacturers and/or suppliers of manufactured housing units regarding providing housing to individuals displaced by hurricanes Katrina and Rita.

## REQUEST FOR PRODUCTION NO. 20:

Please produce the curriculum vitae and written reports for every expert who may or will testify on your behalf at any hearing or trial of this matter.

## REQUEST FOR PRODUCTION NO. 21:

Please produce all documents which reflect any claims asserted against you alleging damages or injury as a result of exposure to formaldehyde in a manufactured housing unit provided by you prior to August 29, 2005.

## REQUEST FOR PRODUCTION NO. 22:

Please produce any document evidencing "research is continuing on the possible long-term effects of exposure to formaldehyde" pursuant to representations made in 24 C.F. R. § 3280.309.

## REQUEST FOR PRODUCTION NO. 23:

Please produce all communications from August 1, 2005 to the present concerning the aging and/or curing and/or off-gassing of materials containing formaldehyde or formaldehyde-based resins used in manufactured housing units.

**REQUEST FOR PRODUCTION NO. 24:**

Please produce any documents concerning the decision-making process to provide manufactured housing units to displaced residents following natural or man-made disasters.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce any documents concerning steps taken to coordinate with any manufacturer or supplier to resolve concerns about formaldehyde emissions in manufactured housing units.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street

New Orleans, Louisiana 70163
Telephone:     504/522-2304
Facsimile:     504/528-9973
jwoods@gainsben.com

### COURT-APPOINTED PLAINTIFFS'
### STEERING COMMITTEE

ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
RONNIE PENTON, #10462

### CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2008, I electronically mailed the foregoing to Henry

Miller, Esq. And Michelle Boyle, Attorney at Law on behalf of The United States of America

through The Federal Emergency Management Agency.

s/Justin I. Woods
JUSTIN I. WOODS, #24713