**Westlaw Delivery Summary Report for GLASS,JOSEPH G 2432302**

| | |
|---|---|
| Your Search: | TI(Holland & Summit) |
| Date/Time of Request: | Wednesday, August 20, 2008 13:19 Central |
| Client Identifier: | ADW |
| Database: | LA-CS-ALL |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 302 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2001 WL 930879 (E.D.La.)

**H**

Holland v. Summit Autonomous, Inc.
E.D.La.,2001.
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.
Monte G. HOLLAND, M.D., and Thomas Shealy,
M.D.
v.
SUMMIT AUTONOMOUS, INC., f/k/a SUMMIT
TECHNOLOGY, INC.
**No. CIV. A. 00-2313.**

Aug. 14, 2001.

AFRICK, Magistrate J.
**\*1** Plaintiffs, Monte G. Holland, M.D., and Thomas
Shealy, M.D., have filed a motion to withdraw con-
sent and vacate protective orders issued on Febru-
ary 28, 2001, and May 7, 2001, or alternatively, to
modify both protective orders. Defendant, Summit
Autonomous, Inc. ("Summit"), opposes the motion.

On February 28, 2001, pursuant to the joint motion
of plaintiffs and defendant for entry of a protective
order, the court ordered the entry of a protective or-
der, consented to by the parties, which provided in
pertinent part:

IT IS HEREBY ORDERED that:

1. In producing documents or other information to
opposing counsel, counsel for the producing party
may designate certain items (hereinafter
"Documents") as "confidential" by affixing an ap-
propriate stamp or other indication of an intent to
restrict access to the item. Such designation renders
the designated Documents, the information con-
tained therein, and any oral communications based
thereon subject to the terms of this Protective Order
("Order").

2. In the event the receiving party disagrees with
the designation, and the parties cannot otherwise
agree on the appropriate treatment of designated
Documents, the receiving party may move the

Court to set aside the designation. Unless timely re-
view of such ruling (*i.e.,* setting aside a designation
of "confidential") is sought, the challenged Docu-
ment shall no longer be subject to this Order.

3. The parties shall use the Documents produced by
the opposing party *only* for the purposes of the
above-captioned action and not for any other pur-
pose whatsoever, whether directly or indirectly, un-
less otherwise provided for in this Order.

4. The parties shall not give, show, make available,
or convey the Documents in any way to anyone
other than the Magistrate Judge, District Judge and
court personnel working on the above captioned lit-
igation (collectively, "the Court"), the parties and
their employees, the attorneys for the parties, em-
ployees of attorneys for the parties, and retained ex-
perts. When disclosure is to be made to anyone oth-
er than the Court, a party (or party employee) or a
party's attorney (or employee of the attorney), the
disclosing party agrees to provide a copy of this Or-
der to the recipient at the time of such disclosure,
and to secure their written agreement to comply pri-
or to disclosing any part of the Documents to that
person.

8. The provisions of this Order, insofar as they re-
strict the communication and use of the Documents,
shall continue to be binding following the conclu-
sion of this action, unless otherwise ordered by the
Court.

9. Nothing in this Consent Protective Order shall
limit counsel from voluntarily agreeing to modify
this Order or from seeking judicial modification
thereof.

Rec. Doc. No. 46 (emphasis added).

On May 7, 2001, pursuant to defendant's motion,
but after discussion with the parties, the court
entered a second protective order concerning the
depositions and attached exhibits produced in the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

multi-district litigation (MDL). The terms of the second protective order were more restrictive, providing that "[a]ll documents and depositions produced pursuant to this order shall be deemed confidential and are produced only to counsel and staff of Chopin, Wager, et. al. unless further relief is sought from this Court."(Rec.Doc. No. 96). Documents subject to the May 7, 2001, protective order were subject to protective orders issued by other courts as they were produced in connection with MDL.

**\*2** Plaintiffs now seek to withdraw their consent and for the court to vacate the protective order of February 28, 2001, or alternatively, to modify it, on the ground that the defendant has improperly designated many documents as "confidential." Plaintiffs also seek to modify the May 7, 2001, protective order, arguing that they should be permitted to disclose these documents to their clients, who are parties to this case, as well as their retained experts.

Plaintiffs complain that the provisions of the protective orders put the burden on them to have the "confidential" designation removed. Finally, plaintiffs contend that the defendant failed to show "good cause" for the issuance of the protective orders.

Defendant suggests that the plaintiffs' motion should be denied because there is a clear procedure for challenging the "confidential" designation. Defendant also argues that plaintiffs have failed to meet their burden of demonstrating "good cause" for modifying the protective orders.

This Court retains the authority to modify or lift confidentiality orders that it previously entered. *Pansy v. Borough of Stroudsbourg,* 23 F.3d 772, 784 (3d Cir.1994). There are basically three types of protective orders which are routinely issued. As the court in *Bayer AG and Miles, Inc. v. Barr Laboratories,* 162 F.R.D. 456, 465 (S.D.N.Y.1995), explained:

The narrowest is a protective order covering specif-

ic, identified information. With a narrow protective order, the court usually reviews the protected material, so it is clear that "good cause" existed for the protective order.

At the other extreme is an "umbrella" protective order that designates all discovery as protected, without any review or determination of "good cause" by the parties or the court. "Umbrella" protective orders are disfavored, and on a motion for modification, the burden generally will be on the party seeking protection to show good cause....

Between those two extremes is a "blanket" protective order that permits the parties to protect documents that they in good faith believe contain trade secrets or other confidential commercial information. Such protective orders are routinely agreed to by the parties and approved by the courts in commercial litigation, especially in cases between direct competitors. "Blanket" protective orders are essential to the functioning of civil discovery. "Good cause" generally exists for issuance of a blanket protective order permitting competitors to designate "confidential" commercial information as protected-at least in the context of a party motion for modification of a stipulated protective order.

In *Bayer AG and Miles, Inc.* 162 F.R.D. at 462-463, the court considered the following factors when a party sought modification of a stipulated protective order designed to protect matters of private, as opposed to public, interest: [FN1]

> **FN1.** Courts have distinguished protective orders issued in cases involving important public interests from those involving matters of interest only to private litigants. *See, e.g., Pansy,* 23 F.3d at 788 ("If [the matter sought to be protected] involves issues or parties of a public nature, and involves matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality.... On the other hand, if a case involves private litigants, and con-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 930879 (E.D.La.)

cerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality"). The litigants in this case do not suggest that their stipulated protective order was issued for compelling public interests, but only for matters of private interest, i.e., protecting the defendant's proprietary interest in its technology.

(1) good cause-if good cause was shown for the original protective order, the burden is on the party seeking modification to show good cause for modification; if good cause was not shown for the original protective order, the burden of showing good cause is on the party seeking continued confidentiality protection;[FN2]

> FN2. Protective orders are entered for "good cause". *See* Rule 26(c) of the Federal Rules of Civil Procedures. However, Rule 26(c) is silent as to which party has the burden of proof when there is an effort to modify a protective order.
>
> In *Pansy,* 23 F.3d at 790, the Court noted that "[t]he party seeking to modify the order of confidentiality must come forward with a reason to modify the order. Once that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order."However, when the modification motion is brought by "a party who stipulated to a blanket protective order, the party should be held to its agreement and thus should have the burden of showing good cause for its modification request."*Bayer,* 162 F.R.D. at 465.

**\*3** (2) the nature of the protective order (*i.e.,* narrow vs. broad, court imposed vs. court approved upon stipulation of the parties);

(3) the foreseeability at the time of the original protective order of the modification now requested; and

(4) the parties' reliance on the protective order.

The first question, then, is whether "good cause" was shown for the issuance of the protective orders. The particular justification for the issuance of the February, 2001, protective order in this case was the fact that the case involved commercially sensitive proprietary information or trade secrets, uncontrolled disclosure of which could cause harm to the defendant. The documents produced pursuant to the May, 2001, protective order were documents within the umbrella of protective orders issued in the MDL.

Out of the thousands of documents produced in this litigation, plaintiffs have submitted approximately twenty for *in camera* review. Plaintiffs argue that the submitted documents marked "confidential" by the defendant demonstrate that there was no good cause for the entry of the February, 2001, protective order.[FN3]

> FN3. The parties estimate that approximately 10,000 pages of documents have been produced, 7,800 of which were produced in the MDL. Such documents would be subject to the May, 2001, protective order. Approximately 2,500 documents were produced pursuant to the February, 2001, protective order.

The Court has reviewed the documents submitted by plaintiffs for *in camera* review and it agrees that several of those marked confidential by the defendant should not have been so marked. It is less clear whether other documents submitted for *in camera* review in conjunction with this motion are confidential. There is simply insufficient information in the memoranda to determine whether or not these documents are confidential.[FN4]

> FN4. The Court has not specifically dis-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

cussed the documents submitted by plaintiffs as they have been marked "confidential" and they are currently under seal.

The Court finds that good cause existed for the February, 2001, protective order because it was likely, given the subject matter of the litigation and the volume of documents produced, that many documents could contain commercially sensitive or proprietary information. Discovery in this increasingly contentious litigation has produced documents involving information concerning FDA certification, patent applications, and other information which may be commercially sensitive given the competitive medical device market.

With respect to the May, 2001, protective order, this order was issued upon defendant's motion, but after discussion with counsel for all parties, and it concerned the production of materials, including depositions and documents attached to depositions, which were the subject of protective orders issued in the MDL litigation. Plaintiffs' counsel conceded that with respect to MDL documents subject to another court's protective order, plaintiffs will have to seek modification of the protective orders from the issuing court.[FN5] The Court finds that "good cause" existed for the issuance of the May, 2001, protective order.

> FN5.*See, Dushkin Publishing Group, Inc. v. Kinko's Service Corp.,* 136 F.R.D. 334, 335-36 (D.D.C.1991).

Next, the Court looks to the nature of the protective orders. As previously noted, the February 28, 2001, protective order is a blanket order which was court approved, following a stipulation of the parties. The May 7, 2001, order was issued following a motion by defendant and discussion with counsel. It covers documents subject to protective orders in the MDL. Presumably, such documents may be disclosed by the MDL court for good cause shown.

***4** As to whether the need for a modification request was foreseeable at the time the protective orders were entered, it was certainly foreseeable that the parties might seek judicial modification of the protective orders if the receiving party was of the opinion that the defendant was routinely designating documents as confidential and such documents did not deserve such a designation.[FN6]

> FN6. As noted previously, paragraph 9 of the February 28, 2001 order states as follows in pertinent part:
>
>> Nothing in this Consent Protective Order shall limit counsel from voluntarily agreeing to modify this Order or from seeking judicial modification thereof.

The final consideration for determining whether a protective order should be modified is reliance. With respect to the reliance factor, the court in *Pansy,* 23 F.3d at 790, found:

The parties' reliance on an order, however, should not be outcome determinative, and should only be one factor that a court considers when determining whether to modify an order of confidentiality. "[E]ven though the parties to [a] settlement agreement have acted in reliance upon that order, they [do] so with knowledge that under some circumstances such orders may be modified by the court."*City of Hartford v. Chase,* 942 F.3d 130 (2d Cir.1991) (Pratt, J., concurring).

The extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery or to settle the case. For instance, reliance would be greater where a trade secret was involved, or where witnesses had testified pursuant to a protective order without invoking their Fifth Amendment privilege... Reliance will be less with a blanket order, because it is by nature overinclusive. *Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470 (475-76) (9th Cir.), *cert. denied,*506 U.S. 868, 113 S.Ct. 197 (1992).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 930879 (E.D.La.)

(Emphasis added).[FN7]

> FN7. The Second Circuit has adhered to a stringent standard for modification of a confidentiality order, holding that a confidentiality order may be modified only if an extraordinary circumstance or compelling need warrants the requested modification. *See City of Hartford v. Chase,* 942 F.2d 130, 135-36 (2d Cir.1991) and *Geller v. Branic International Realty Corp.,* 212 F.3d 734, 738 (2d Cir.2000). Other circuits reject this stringent standard. *See Pansy,* 23 F.3d at 789. *see also, Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 475-76 (9th Cir.), *cert. denied,*506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992); *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1428 (10th Cir.1990), *cert. denied,*498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991); *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 791 (1st Cir.1988), *cert. denied,*488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989).

While the defendant suggests that it has relied upon both parties in producing many of the documents, the Court finds that this factor does not militate in favor of the defendant as there is no evidence that the defendant's production of documents in reliance on the protective order have prejudiced it. For reasons stated later in this opinion, the Court is going to modify the protective orders by placing the burden of proving confidentiality on the producing party. If that burden is satisfied, disclosure will not occur.

Pursuant to the terms of the February 28, 2001, protective order, plaintiff, as the receiving party, may move the Court to set aside a "confidential" designation, but the order is unclear as to which party has the burden of establishing the confidentiality of the document. The burden of justifying the confidentiality of each document sought to be covered by a protective order should remain on the party seeking the order. *Pansy,* 23 F.3d at 786-87. Accord-

ingly, the Court finds that plaintiff's alternative request for relief should be granted. The Court will modify both protective orders to clarify that the producing party has the burden of proof with respect to demonstrating a document's confidential nature.

Counsel are directed to jointly review the documents at issue in order to determine whether any documents were improperly designated confidential. If the parties cannot agree on whether a document should remain designated as confidential, such document shall be the subject of a motion to challenge the designation.[FN8]

> FN8. Directing the party who challenges the designation to bring the motion is not overly burdensome. The same procedure is often utilized with respect to documents labeled as protected by attorney-client or work product privilege. Forcing the producing party to file a motion as to those documents to which the parties cannot agree would be of little benefit to the receiving party as that party would still have to respond in writing.

**\*5** There is one caveat, however. The Court retains the right to revoke the protective orders and require the defendant to seek a confidential designation on a document by document basis if, following an *in camera* inspection of the documents to which there is no agreement, the Court finds that the defendant is marking documents as confidential without good cause.

Counsel are to meet in good faith on August 14, 2001, at 9:30 a.m. and attempt to resolve any conflicts regarding documents which have been labeled as confidential.

Accordingly, for the above and foregoing reasons,

IT IS ORDERED that the motion of plaintiffs, Monte G. Holland, M.D., and Thomas Shealy, M.D., to withdraw consent and vacate protective

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 930879 (E.D.La.)

orders be DENIED.

IT IS FURTHER ORDERED that the alternative motion of plaintiffs to modify the protective orders be GRANTED to the extent set forth in this opinion.

E.D.La.,2001.
Holland v. Summit Autonomous, Inc.
Not Reported in F.Supp.2d, 2001 WL 930879 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.