**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | ) | **MDL NO. 07-1873** |
| FORMALDEHYDE | ) | |
| PRODUCT LIABILITY LITIGATION | ) | **SECTION "N-4"** |
| | ) | |
| | ) | **JUDGE ENGELHARDT** |
| | ) | |
| THIS DOCUMENT RELATES TO | ) | **MAG. JUDGE ROBY** |
| THE ADMINISTRATIVE MASTER | ) | |
| COMPLAINT AND TO ALL CASES | ) | |

**MEMORANDUM IN OPPOSITION TO PSC'S [NEW] MOTION FOR LEAVE
TO FILE SECOND SUPPLEMENTAL AND AMENDED MASTER COMPLAINT
ON BEHALF OF DEFENDANTS CMH MANUFACTURING, INC.,
SOUTHERN ENERGY HOMES, INC., PALM HARBOR HOMES, INC., PALM
HARBOR MFG., LP, PALM HARBOR ALBEMARLE, LLC, GILES FAMILY
HOLDINGS, INC., AND SUNRAY INVESTMENTS, LLC**

Defendants CMH Manufacturing, Inc., Southern Energy Homes, Inc., Palm Harbor

Homes, Inc., Palm Harbor Mfg., LP, Palm Harbor Albemarle, LLC, Giles Family Holdings, Inc.,

and SunRay Investments, LLC (the "Newly Added Defendants") respectfully submit this

memorandum in opposition to the PSC [New] Motion for Leave to File Second Supplemental

and Amended Master Complaint (Pacer Doc. No. 657) ("Plaintiffs' Motion").[1]

---

[1]  The Newly Added Defendants also respectfully submit this memorandum in opposition to the substantively identical Plaintiffs' [New] Motion for Leave to File Second Supplemental and Amended Complaint (Pacer Doc. No. 656) in *Pujol v. The United States of America*, No. 08-3217.  Plaintiffs filed their Original Motion for leave to file Second Supplemental and Amended Master Complaint relating in all cases on July 29, 2008 (Pacer Doc. No. 594) ("Plaintiff's Original Motion").  After the Newly Added Defendants filed their opposition to Plaintiffs' Original Motion (Pacer Doc. No. 614), Plaintiffs withdrew Plaintiffs' Original Motion.  (Pacer Doc. No. 641 granted by Pacer Doc. No. 649).  Plaintiffs have now filed Plaintiffs' Motion.  PSC's [proposed] Second Supplemental and Amended Master Complaint (Pacer Doc. No. 657-5) (the "Proposed Amended AMC") differs in substantive ways from the one they filed on July 29, 2008 (Pacer Doc. No. 594-5) (the "Original Proposed Amended AMC"), as discussed in p. 20, n.17, *infra*.  The Proposed Amended AMC, like the Original Proposed Amended AMC, seeks to add a large number of new plaintiffs, including some plaintiffs purportedly with standing to sue the Newly Added Defendants.

## INTRODUCTION

Plaintiffs' Motion is a brazen attempt to circumvent Article III of the United States Constitution and this Court's August 1, 2008 Order and Reasons (Pacer Doc. No. 599) ("Order")[2] granting the Newly Added Defendants' Motion to Dismiss (Pacer Doc. No. 259) the Administrative Master Complaint.  Plaintiffs' Motion establishes that not a single Named Plaintiff in the Administrative Master Complaint (Pacer Doc. No. 109) ("AMC") has Article III standing against the Newly Added Defendants.  Not a single one of the sixty-three (63) Original Named Plaintiffs ("Original Plaintiffs") in the AMC lived in a housing unit built by any of the Newly Added Defendants.  Instead, those sixty-three (63) Original Plaintiffs in the AMC lived in housing units built by Defendants other than the Newly Added Defendants.[3]

This Court was exactly correct in the Article III analysis in its Order.  Plaintiffs' Motion now confirms that "no plaintiff [in the AMC] is matched to any specific Newly Added Defendant."  *See* Order, p. 11.  Since Plaintiffs' Motion establishes that the Original Plaintiffs in the AMC lack Article III standing against the Newly Added Defendants, the necessary outcome of this Court's Order is that the PSC should not be allowed to amend the AMC to add additional plaintiffs and create Article III standing where none exists.  Under United States Supreme Court and Fifth Circuit binding precedent, the only course of action that this Court may take is to dismiss the case against the Newly Added Defendants.

**Plaintiffs' Motion attempts to add one hundred forty (140) *new* Named Plaintiffs – plaintiffs who have never been in this lawsuit before -- thirteen (13) of whom purportedly**

---

[2] This Court's Order is slated for publication. *In re FEMA Trailer Formaldehyde Products Liability Litigation*, ___ F. Supp. 2d ___, 2008 WL 3010040 (E.D. La. Aug. 1, 2008).

[3] Plaintiffs' Motion and Proposed Amended AMC seek to delete one of the sixty-three (63) Original Plaintiffs-- Carol Eleanor Salassi.  Pacer Doc. Nos. 657-2, p. 2 n.1 and 657-5, p. 1.

**have standing against the Newly Added Defendants.**[4]  This Court's Order granting the Newly Added Defendants' Motion to Dismiss was without prejudice to the right of Plaintiffs to seek leave to amend the complaint "to allege specific facts to support **existing Plaintiffs'** standing." Order, p. 10 (emphasis added).  Rather than being limited to the "existing plaintiffs," Plaintiffs' Motion seeks to add one hundred forty (140) *new* Plaintiffs to the AMC.  Binding precedent does not allow the Original Plaintiffs to file a lawsuit without Article III standing to sue certain defendants and then attempt to retroactively manufacture standing later by adding in Plaintiffs with standing.

## ARGUMENT

Plaintiffs in this litigation purport to sue manufacturers of certain trailers and manufactured homes provided by FEMA following Hurricanes Rita and Katrina, alleging injuries attributable to high levels of formaldehyde in the homes.  On March 18, 2008, the sixty-three (63) Original Plaintiffs filed the AMC that Plaintiffs' Motion now seeks to amend. Plaintiffs' Motion proposes to amend paragraph 7(c) of the AMC in order to list the specific manufacturer for each of the housing units in which the Original Plaintiffs lived.  **None of the Original Plaintiffs is "matched" to any of the Newly Added Defendants**.  Plaintiffs' Motion clarifies that the Original Plaintiffs actually lived in housing units built by defendants other than the Newly Added Defendants.  *See* Proposed Amended AMC ¶ 6 (Pacer Doc. No. 657-5), pp. 4-8.

---

[4] Plaintiffs' Original Motion failed to disclose on its face that it sought to add new plaintiffs to the AMC.  Plaintiffs' Original Motion, p. 1; *see also* Plaintiffs' Motion, p. 1.  Based on the lack of disclosure on the face of Plaintiffs' Original Motion, this Court's Order mistakenly states that "Plaintiffs in this MDL are not seeking to substitute new plaintiffs to create standing."  Order, p. 10.  In fact, Plaintiffs **are** seeking to substitute new plaintiffs to create standing.  *See* Proposed Amended AMC ¶ 7, pp. 8-18 (Plaintiffs propose to amend the AMC  by adding a new paragraph: "7(d)  In addition to the named plaintiffs identified in the foregoing paragraphs 7(a), (b), and (c), the following also are named plaintiffs exposed to injurious levels of formaldehyde. . . ." and listing one hundred and forty (140) new plaintiffs proposed to be added to the AMC).

3

Exhibit One to this Memorandum identifies: (1) each Original Plaintiff in the AMC, (2) the manufacturer alleged in the Proposed Amended AMC for each Original Plaintiff, and (3) the manufacturer identified in the Plaintiff Fact Sheet for each Original Plaintiff. Exhibit One then poses the question for each Original Plaintiff as to whether the Proposed Amended AMC alleges that the particular Plaintiff lived in a housing unit built by any of the Newly Added Defendants; the answer is "no" for every Original Plaintiff. Exhibit One finally poses the question for each Original Plaintiff as to whether the Plaintiff Fact Sheet identifies that the particular Plaintiff lived in a housing unit built by any of the Newly Added Defendants; again, the answer is "no" for every Original Plaintiff.[5]

This Court's Order cautioned that "any Defendants not specifically matched to individual Plaintiffs will be dismissed without prejudice." Order, p. 11. The concessions in Plaintiffs' Motion, the information contained in the attached Exhibit One, and the related Evidentiary Submission, establish that the Newly Added Defendants are not matched to any of the Original Plaintiffs. Based on this Court's Order, the Newly Added Defendants were dismissed based on the lack of standing by the Original Plaintiffs.

Ignoring the holding in this Court's Order, Plaintiffs' Motion now seeks to add one hundred forty (140) *new* Plaintiffs to the AMC, thirteen (13) of whom purport to have lived in homes manufactured by one of the Newly Added Defendants. Proposed Amended AMC ¶ 7, pp. 8-18.[6] Plaintiffs' Motion should be denied because the request to add new plaintiffs with alleged

---

[5] The Newly Added Defendants' Evidentiary Submission in Opposition to Plaintiffs' Original Motion (Pacer Doc. Nos. 614-3 to 614-10) ("Evidentiary Submission") is incorporated herein by reference. The Evidentiary Submission contains the relevant portions of the Plaintiffs' Fact Sheets for the Original Plaintiffs, identifying the manufacturer of the housing unit in which each Original Plaintiff lived.

[6] This Court correctly noted that Plaintiffs' Original Motion sought "to delete one named class representative, delete a number of defendants, add a number of new defendants, and match up class representatives with the names of the
*(Footnote continued on next page)*

4

standing against the Newly Added Defendants, where no Original Plaintiff had such Article III

standing, is a blatant attempt to manufacture standing in this case against the Newly Added

Defendants well after the filing of the AMC.  Binding United States Supreme Court and Fifth

Circuit law, as well as Article III of the United States Constitution and the caselaw interpreting

it, prohibit Plaintiffs' tactic.

**I.      No Original Plaintiffs Have Article III Standing to Sue the Newly Added
         Defendants.**

This Court has ruled that, "as it stands now, no plaintiff is matched to any specific Newly

Added Defendant.  Thus, the Court grants the instant Motion to Dismiss based on lack of

standing" without prejudice to a motion for leave to amend the Complaint "to allege specific

facts to support **existing plaintiffs'** standing."  Order, pp. 10-11 (emphasis added).  As this Court

ruled, there is no piggyback standing in the Fifth Circuit.  *See* Order, p. 7 ("The Fifth Circuit . . .

has continued to require plaintiffs to assert direct claims against *each defendant* in order to

satisfy the Article III standing requirement.") (emphasis added).  Since none of the Original

Plaintiffs actually lived in housing units built by the Newly Added Defendants, no Original

Plaintiff can "allege specific facts to support" Article III standing to sue the Newly Added

Defendants.  It is consequently undisputed that the Original Plaintiffs do not have Article III

standing to sue the Newly Added Defendants.

---

(*Footnote continued from previous page*)
manufacturers of travel trailer or mobile homes that they occupied." Order, p. 10.  Plaintiffs' Motion similarly seeks
these amendments and the Newly Added Defendants have no quarrel with those proposed amendments that do not
affect them.  Proposed Amended AMC ¶¶ 1-6, pp. 1-8.  However, in paragraph 7 (pp. 8-18) of the Proposed
Amended AMC, Plaintiffs also seek impermissibly to add one hundred and forty (140) *new* Plaintiffs, including
thirteen (13) purportedly with Article III standing against the Newly Added Defendants.  Proposed Amended AMC
¶ 7, pp. 8-18.  (Exhibit Two to this Memorandum identifies the one hundred and forty (140) new Plaintiffs who are
proposed to be added to the AMC and the manufacturer listed for each new plaintiff in the Proposed Amended
AMC.)  Plaintiffs' request to amend to add *new* Plaintiffs is the focus of this opposition.  *See also* p. 18, n.15.

II.     **Even with Plaintiffs' Proposed Amendment, No Original Plaintiff Has Standing to Sue the Newly Added Defendants, and Thus the Newly Added Defendants Must be Dismissed.**

This Court noted that it "may allow [P]laintiffs to amend or provide affidavits in order to further particularize the allegations of fact deemed supportive of [P]laintiffs' standing."  Order, p. 11 (citing *Warth v. Seldin,* 422 U.S. 490, 501-02 (1975) ("*Warth*")).  As noted above, Plaintiffs do just that in their Proposed Amended AMC that purports to "match" the Original Plaintiffs to their appropriate manufacturers.  Proposed Amended AMC ¶ 6, pp. 4-8.  None of the Original Plaintiffs, however, actually "match" with any Newly Added Defendant.  *See* Proposed Amended AMC ¶ 6, pp. 4-8 (failing to "match" any original Plaintiff with any of the Newly Added Defendants); Exhibit One, attached hereto.  Thus, even with the Proposed Amended AMC, Plaintiffs offer no particularized "allegations of fact" to support the Original Plaintiffs' standing to sue the Newly Added Defendants.

The United States Supreme Court direction is clear:  "If, after this opportunity" to amend the complaint to state "particularized allegations of fact deemed supportive of the plaintiff's standing," the "plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed."  *Warth*, 422 U.S. at 501-02.

Since the Original Plaintiffs do not have Article III standing against the Newly Added Defendants, this Court immediately loses subject matter jurisdiction over the claims against those defendants.  *See Lang v. French,* 154 F.3d 217, 222 n.28 (5th Cir. 1998) ("*Lang*") ("standing is an element of the constitutional requirement of 'case or controversy,' lack of standing deprives the court of subject matter jurisdiction"); *accord, In re Weaver*, 632 F.2d 461, 463 n.6 (5th Cir. 1980) ("*Weaver*"); *see also Audler v. CBC Innovis*, 519 F.3d 239, 247-48 (5th Cir. 2008) ("*Audler*").

Without subject matter jurisdiction over the claims against the Newly Added Defendants, the only thing this Court can do is dismiss the Newly Added Defendants. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."); *Stockman v. Federal Election Commission*, 138 F.3d 144, 151 (5th Cir. 1998) ("It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking."); *Stanley v. CIA*, 639 F.2d 1146, 1157 (5th Cir. 1981) ("A federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction."); *Audler*, 519 F.3d at 247-48 (dismissing multiple defendants against whom named plaintiff had no standing).

III.    **Because None of the Original Plaintiffs Have Standing Against the Newly Added Defendants, Plaintiffs Are Impermissibly Seeking to Add New Plaintiffs to Manufacture Standing Retroactively And Plaintiffs' Motion Should Be Denied.**

Plaintiffs now seek to amend the AMC to add, *inter alia*, thirteen (13) new Plaintiffs who allege that they lived in homes manufactured by one of the seven Newly Added Defendants. Indeed, Plaintiffs essentially admit their amendment is to manufacture standing against the Newly Added Defendants in this case:

> The proposed amended pleading not only clarifies the original Master Complaint by demonstrating for the record the individual Article III standing of each previously-named plaintiff and proposed class representative *vis-à-vis* a named defendant manufacturer, but also seeks to add proposed class representatives so that the same individual standing on the part of an actual claimant and class member can be demonstrated for each and every named defendant manufacturer . . . .

PSC Memorandum in Support of Motion for Leave to File Second Supplemental and Amended Master Complaint (Pacer Doc. 657-2) ("PSC Memorandum"), p. 5. As demonstrated herein, Plaintiffs' attempt to manufacture standing retroactively must fail.

7

Since the Original Plaintiffs have no Article III standing to sue the Newly Added Defendants, the only course of action a court may take is to dismiss the claims against those defendants for lack of standing. *See Warth,* 422 U.S. at 501-02; *Audler*, 519 F.3d at 247-48; *Lang,* 154 F.3d at 222 n.28; *Weaver*, 632 F.2d at 463 n.6. On three separate occasions, the Fifth Circuit has affirmed the denial of a motion to amend to add plaintiffs to try to retroactively create standing. Further, under the law of the Fifth Circuit, standing must exist *at the time of the filing of the complaint* and may not be created retroactively.

A.   **Under Binding Fifth Circuit Authority, a Plaintiff Without Standing May Not Subsequently Amend His Complaint to Add a Plaintiff With Standing.**

The Fifth Circuit, on three separate occasions, has refused to allow a plaintiff without standing to add a plaintiff with standing, and instead has dismissed the case. *See Summit Office Park, Inc. v. U.S. Steel Corp.,* 639 F.2d 1278, 1284 (5th Cir. 1981) ("*Summit*"); *Federal Recovery Services, Inc. v. U.S.A.,* 72 F.3d 447, 453 (5th Cir. 1996) ("*Federal Recovery*"); *Aetna Casualty & Surety Co., et al. v. Hillman*, 796 F.2d 770, 774 (5th Cir. 1986) ("*Aetna*").

In *Summit*, an indirect purchaser brought a purported class action asserting an antitrust claim against manufacturers of reinforced steel. *Summit*, 639 F.2d at 1279-80. After the United States Supreme Court ruled that an indirect purchaser cannot make a federal antitrust claim, the defendants filed a motion for summary judgment. *Id.* at 1280-81. Before the court ruled on that motion, the plaintiff filed a motion for leave to file an amended complaint with new direct purchaser plaintiffs, citing, as do Plaintiffs in this case, Rule 15(a) as support. *Id.* at 1281. The Fifth Circuit affirmed the district court's denial of the motion to amend: "[W]e hold only that where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint . . . ." *Id.* at 1282. The Original Plaintiffs have no standing to

assert a claim against the Newly Added Defendants, and thus have no standing to amend their Complaint to assert a claim against the Newly Added Defendants.

In *Aetna*, a plaintiff, which was found to have no standing, tried to use Rule 15(a) to amend the complaint to add a party with standing. *Aetna*, 796 F.2d at 773-74. The Fifth Circuit again refused to allow the amendment, and affirmed dismissal of the case, describing the new plaintiff and its claims as a "new lawsuit." *Id*. at 774-75.

Finally, in *Federal Recovery*, a corporate plaintiff was found to have no standing to make a False Claims Act claim, and the corporation tried to amend to cure the jurisdictional defect by seeking to add a new plaintiff. *Federal Recovery*, 72 F.3d at 448, 452. The Fifth Circuit ruled that the original plaintiff could not amend the complaint to add a new plaintiff:

> In *Aetna* . . . , we held that Rule 15 does not permit a plaintiff from amending its complaint to substitute a new plaintiff in order to cure the lack of subject matter jurisdiction.
>
> * * *
>
> "Rule 15 . . . do[es] not allow a party to amend to create jurisdiction where none actually existed."

*Id.* at 453 (citations omitted). [7]

In both *Summit* and *Aetna*, the Fifth Circuit further found that the amendment was properly denied because the new plaintiffs' lawsuit was like a new lawsuit. *Summit*, 639 F.2d at 1282-84; *Aetna*, 796 F.2d at 774-75. The Fifth Circuit has noted that claims against new

---

[7] District courts within the Fifth Circuit have also consistently held that a plaintiff without standing may not amend his complaint to add a new plaintiff to create standing retroactively. *See e.g., Levin v. Minnesota Life Ins. Co*., No. H-07-1330, 2008 WL 2704772, at *6 (S.D. Tex. July 7, 2008) (granting defendant's motion to dismiss named plaintiff's claim for lack of Article III standing, denying plaintiff's motion for leave to amend complaint to add a new class representative plaintiff, and explaining that because plaintiff "has no standing to assert any claim against Defendant, [plaintiff] also lacks standing to amend the complaint"); *Bhandari v. Cadence Design Systems, Inc.,* 485 F. Supp. 2d 747, 750 (E.D. Tex. 2007) ("*Bhandari*") ("A plaintiff who does not have standing to assert a claim against the defendant does not have standing to amend the complaint and control the litigation by substituting new plaintiffs. . ."); *Jackson v. Fidelity Nat'l Title Ins. Co.,* No. 3:07-CV-1706-G, 2008 WL 508489, at *3-4 (N.D. Tex. Feb. 26, 2008) ("without standing to bring suit, the plaintiff lacks the power to bring in a new plaintiff").

defendants "change[] the character of the litigation so as to make it substantially a new suit," and that adding a new defendant as a result does not generally relate back to the filing of the original complaint for statute of limitations purposes. *Braud v. Transport Service Co. of Ill.,* 445 F.3d 801, 806 (5th Cir. 2006) (citation omitted).  Plaintiffs' Motion here similarly seeks to add a new lawsuit – claims by new plaintiffs against Newly Added Defendants that arise out of transactions different from those of the Original Plaintiffs, and purporting to create standing to sue for the first time.   The proposed amendment, as in *Summit*, *Aetna* and *Federal Recovery*, should be denied. *See also Bhandari,* 485 F. Supp. 2d at 750 (substituting a new plaintiff with standing is "akin to initiating a new lawsuit with a new plaintiff and a new cause of action").[8]

In its Order, this Court recognized the existence of these three Fifth Circuit cases (*Summit*, *Federal Recovery,* and *Aetna*), but distinguished them on the mistaken belief, based on the lack of disclosure on the face of Plaintiffs' Original Motion, that "Plaintiffs in this MDL are not seeking to substitute new plaintiffs to create standing."   Order, p. 10; *see* n. 2, *supra*. Because Plaintiffs' Motion actually does seek to add new plaintiffs in an effort to create standing against the Newly Added Defendants, and because no Original Plaintiff has ever had Article III standing against the Newly Added Defendants, the Fifth Circuit cases are directly on point.

---

[8]  The Article III requirements are not procedural niceties, but, rather are fundamental constitutional principles that define and limit the role of federal courts within the Constitutional framework.  *See Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.   They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.") (citations omitted); *Howery v. Allstate Insurance Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (federal courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum.") (citations omitted).   **These issues also have important substantive ramifications on the Newly Added Defendants' defenses, including proper venue, prescription, and statute of limitations.**

Plaintiffs' Motion now seeking to add new plaintiffs with purported standing to sue the Newly Added Defendants should be denied.[9]

### B.   The Fifth Circuit Has Clearly Stated That Standing Must Exist Against a Defendant as of the Date of the Filing of the Complaint.

"[S]ubject matter jurisdiction is tested *at the time of the filing of the complaint*." *Whatley v. Resolution Trust Corp.,* 32 F.3d 905, 907 (5th Cir. 1994) (emphasis added). The Fifth Circuit has more particularly stated: "As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint." *Kitty Hawk Aircargo, Inc., v. Chao,* 418 F.3d 453, 460 (5th Cir. 2005) ("*Kitty Hawk*") (citation omitted). The Fifth Circuit in *Kitty Hawk* further stated that a plaintiff without standing at the time of the filing of the lawsuit "cannot rely on events that unfolded after the filing of the complaint" to establish standing and noted that the Supreme Court has explained that "acts occurring after commencement of the suit cannot retroactively create jurisdiction." *Kitty Hawk*, 418 F.3d at 460 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 570 n.4 (1992)).

Plaintiffs here are trying to do exactly what this controlling Fifth Circuit caselaw prohibits. Plaintiffs filed a lawsuit against an entire industry without naming plaintiffs with actual standing to sue numerous defendants. Instead, Plaintiffs rely on "acts occurring after the commencement of the suit" – namely, their purported post-filing identification of new plaintiffs with alleged standing to sue – in their attempt to create subject matter jurisdiction retroactively. Under the binding authority previously discussed, Plaintiffs' Motion to add new plaintiffs with claims against the Newly Added Defendants cannot be allowed.

---

[9] Plaintiffs' only argument regarding this binding Fifth Circuit authority is that they "concur with the Court's observation that the cases relied upon by defendants are distinguishable." PSC Memorandum, p. 14. Yet as discussed above, this Court's conclusion that the cases were distinguishable was based on the mistaken belief that Plaintiffs were *not* seeking to add new plaintiffs. Because Plaintiffs *are* seeking to add new plaintiffs, the three Fifth Circuit cases (*Summit, Federal Recovery,* and *Aetna*) are on point.

C.     *Warth v. Seldin* **Does Not Permit Plaintiffs to Cure Their Lack of Standing by Adding New Plaintiffs.**

This Court ruled that when the possible lack of subject matter jurisdiction is based on lack of standing, a plaintiff may amend his complaint "to further particularize the allegations of fact deemed supportive of *plaintiff's* standing." Order, p. 11 (citing *Warth*, 422 U.S. at 501-02) (emphasis added). That *Warth* language is clearly referring to the plaintiff already in the case. *Warth* thus allows an *original* plaintiff to amend his complaint to state more particularized facts supporting *his* standing. So, for example, Plaintiffs may file paragraph 6 of their Proposed Amended AMC, which "matches" the Original Plaintiffs with particular defendants in this case. Proposed Amended AMC ¶ 6 (pp. 4-8). However, in paragraph 7 of their Proposed Amended AMC, Plaintiffs attempt to add one hundred forty (140) *new* Plaintiffs, including thirteen (13) new Plaintiffs who purportedly "match" with one of the seven Newly Added Defendants. Proposed Amended AMC ¶ 7 (pp. 8-18). This extra step is not condoned by the language in *Warth*, which only addresses the original plaintiffs.

IV.    **Plaintiffs Offer No Caselaw to Support Their Position That They May Amend Their Complaint to Manufacture Standing Retroactively.**

In their effort to overcome this overwhelming and binding Article III authority mandating dismissal of their claims against the Newly Added Defendants, Plaintiffs rely on completely irrelevant "mootness" caselaw. In addition, Plaintiffs argue that the Proposed Amended AMC should be allowed pursuant to the necessities of MDL case management, the "liberal policy" towards amendments underlying Rule 15, and the trial court's "extensive power" under Rule 23(d). Plaintiffs also make the particularly curious argument that simply because this case is a class action, the amendment should be allowed. None of Plaintiffs' arguments have any merit.

01680181.2

A.      **Plaintiffs' Caselaw Addressing the Substitution of Class Plaintiffs When a Named Plaintiff's Claim Becomes Moot is Inapposite.**

Plaintiffs argue over and over that because the Fifth Circuit allows the substitution of a new named plaintiff in a class action when the original plaintiff's claim becomes moot, then they should be allowed here to add new plaintiffs to manufacture standing against the Newly Added Defendants where the Original Plaintiffs did not have such standing. PSC Memorandum, pp. 14-17. Plaintiffs' attempt to equate standing with mootness under these circumstances ignores the fundamental difference between the two concepts, as well as United States Supreme Court and Fifth Circuit binding precedent.

1.      **Standing is Determined As of the Date of the Filing of the Complaint; Mootness is Not.**

While the Article III case-or-controversy constitutional limitation on federal judicial authority underpins both standing and mootness jurisprudence, the "two inquiries differ" in "critical" ways. *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 180 (2000) ("*Friends of the Earth*"). Standing and mootness are not the same thing. Standing requires a plaintiff to have a "sufficient stake in otherwise justiciable controversy to obtain judicial solution of that controversy." *Sierra Club v. Mortion,* 405 U.S. 727, 731-32 (1972). In contrast, a case becomes "moot" when a plaintiff *who originally had a sufficient stake* – and thus standing -- reaches a point later in the litigation where he "no longer [has] a live stake in [the] continued litigation." *Graves v. Walton County Bd. of Educ.,* 686 F.2d 1135, 1137 (5th Cir. 1982) ("*Graves*").

Timing is everything. Plaintiffs' weak attempt to equate standing and mootness ignores clear Fifth Circuit precedent: "As with all questions of subject matter jurisdiction *except mootness*, standing is determined *as of the date of the filing of the complaint*." *Kitty Hawk*, 418 F.3d at 460 (emphasis added). Thus, the Fifth Circuit, as commanded by the United States

13

Supreme Court binding precedent discussed below, treats differently the two concepts of standing and mootness.  A plaintiff filing a lawsuit against a defendant must have Article III standing to make that claim *as of the date the complaint is filed.*

The United States Supreme Court has highlighted this glaring difference between the concept of standing and the concept of mootness *in the class action context*, and more particularly, in the context of allowing the substitution of a new plaintiff after the original plaintiff's claims had become moot.  In *Sosna v. Iowa,* 419 U.S. 393, 401 (1975) ("*Sosna*"), the Supreme Court held that in a certified class, new named plaintiffs could be substituted when the claim of the original named plaintiff had become moot.  In so holding, however, the Supreme Court reinforced that the requirement of standing is different:

> Our conclusion that this case is not moot in no way detracts from the firmly established requirements that the judicial power of Art. III courts extends only to 'cases and controversies' specified in that Article.  There must . . . be a named plaintiff who has such a case or controversy *at the time the complaint is filed* . . . .

*Sosna,* 419 U.S. at 402 (emphasis added); *see also Franks v. Bowman Transportation Co.,* 424 U.S. 747, 753 (1976) ("*Franks*") (reiterating the holding of *Sosna* and its requirement that there must be "a named plaintiff who has such a case or controversy at the time the complaint is filed").  In other words, while it may be fine to substitute a named plaintiff after the original named plaintiff's claims become moot, it is not fine to add a named plaintiff with standing when the original named plaintiffs never had standing to begin with – a named plaintiff must have standing to make claims against a defendant *at the time the case is filed*.

The Fifth Circuit, in a case cited by Plaintiff, has embraced *Sosna*'s requirement that a named plaintiff must have a case or controversy against a defendant at the time the case is filed. *See Graves,* 686 F.2d at 1137-38; *see also Audler*, 519 F.3d at 247-48; *Summit*, 639 F.2d at 1282 ("[W]e hold only that where a plaintiff [in a purported class action] never had standing to assert a

claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs. . .").

### 2.    Plaintiffs' Reliance on "Mootness" Caselaw is Thus Misguided.

Plaintiffs state:  "The Fifth Circuit not only has recognized and allowed for substitution of class representatives in certified class actions, it has allowed substitutions prior to a class having been certified. . ."  PSC Memorandum, p. 16.  *Every* case Plaintiffs cite in support of this proposition deals with *mootness*, not the issue of Article III standing at the time the case is filed. *See Lynch v. Baxley*, 651 F.2d 387, 387 (5th Cir. Unit B. 1981) ("*Lynch*") (allowing the substitution of new named plaintiffs after the challenged statute was amended and the original named plaintiffs' claims became moot); *Graves,* 686 F.2d at 1137 (allowing the substitution of new named plaintiffs in a school desegregation case where the original named plaintiffs, as students of the school system, had standing, but later their claims became moot when they graduated from the school system.); *Silva v. Vowell,* 621 F.2d 640, 643, 649 (5th Cir. 1980) ("*Silva*") (holding that once the named plaintiffs' claims became moot, the judge should have "allow[ed] intervention by another named plaintiff if necessary," but in so holding, noted earlier that "[t]here [was] no doubt that both plaintiffs had standing" when the case was filed).

In *every* one of these cases cited by Plaintiff, there was no question that the original plaintiff had standing to make a claim against the defendant at the time the case was filed.[10]  The issue of mootness arose because something changed as the litigation progressed, mooting the original plaintiff's claim.  Indeed, these cases rely on *Sosna*, *supra*, in holding or stating that the

---

[10]  *See Lynch,* 651 F.2d at 388 (noting that the original plaintiffs had standing but "likely . . . no longer have standing"); *Silva*, 621 F.2d at 643 (stating that "[t]here is no doubt that both plaintiffs had standing to assert such [original] claim as class representatives"); *Graves*, 686 F.2d at 1136 (noting that the original named plaintiffs in a school desegregation case had either graduated or left school, making their claims moot, thus indicating that they had been students previously and had standing at the time the case was filed).

mooting of the original plaintiffs' claims did not prevent the substitution of new plaintiffs with standing.[11]   The United States Supreme Court in *Sosna*, however, specifically stated that allowing such a substitution in the event of mootness did not alter the Article III requirement that a plaintiff must have standing to sue a defendant at the time the case is filed.  *See* p. 14, *supra*. Plaintiffs' caselaw, relying entirely on the mootness doctrine, is irrelevant to the standing issue in this case.

**B.     Plaintiffs Cannot Use the Federal Rules of Civil Procedure to Manufacture Article III Standing.**

Plaintiffs erroneously argue that the Proposed Amended AMC should be allowed under Federal Rules of Civil Procedure 15(b), 23(d), and 20, and as a necessity for effective MDL case management.  Simply put, the constitutional requirement of Article III standing trumps the procedural rules on which Plaintiffs rely.

First, the Federal Rules of Civil Procedure cannot be used to enlarge Article III jurisdiction.  28 U.S.C. § 2072 ("Such rules shall not abridge, enlarge or modify any substantive right") (the "Rules Enabling Act"); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999) ("*Ortiz*") (citing 28 U.S.C. § 2072 and adopting a narrow Rule 23 interpretation in a class action case to prevent the modification of a "substantive right"); *Port Drum Co. v. Umphrey,* 852 F.2d 148, 150 (5th Cir. 1988) ("*Port Drum*") (citing both 28 U.S.C. § 2072 and Fed.R.Civ.P. 82 in holding that a federal rule could not be used to create subject matter jurisdiction).[12]

---

[11]  *See Lynch*, 651 F.2d at 388; *Graves*, 686 F.2d at 1137-38; *Silva*, 621 F.2d at 649-50 n.10.

[12]   *See generally State of Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978) ("*Blue Bird*") ("It is axiomatic that a procedural rule cannot 'abridge, enlarge, or modify any substantive right.'") (citing 28 U.S.C. § 2072(b)); *see also Zurich Ins. Co. v. Logitrans, Inc.,* 297 F.3d 528, 531 (6th Cir. 2002) ("The Federal Rules of Civil Procedure cannot expand the subject matter jurisdiction of federal courts beyond the limits of the U.S. Constitution."); *Davis v. Coca-Cola Bottling Co., Cons*., 516 F.3d 955, 968 n.29 (11th Cir. 2008) (the Rules Enabling Act, "prohibits the use of a procedural rule to 'abridge, enlarge, or modify a substantial right.'  28 U.S.C. § 2072(b)").

16

Second, instead of helping Plaintiffs' cause, the Federal Rules of Civil Procedure actually prohibit what Plaintiffs are trying to do. *See* Fed.R.Civ.P. 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts . . . ."); *see also Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 613 (1997) ("*Amchem*") (quoting Fed.R.Civ.P. 82 in the class action context: "rules shall not be construed to extend . . . the [subject matter] jurisdiction of the United States district courts"); *Port Drum*, 852 F.2d at 150.

Third, if the Federal Rules of Civil Procedure cannot circumvent Article III, "effective MDL case management" certainly cannot.  By way of example, the Rule 23 settlement in *Amchem* arose out of an MDL, and despite the settlement being the result of  MDL case management, the Supreme Court nonetheless rejected it, citing its conflict with the Rules Enabling Act's prohibition on using a Rule of Civil Procedure to affect a substantive right. *Amchem*, 521 U.S. at 628.

Fourth, the plaintiffs in *Summit, supra,* and *Aetna, supra*, also tried to argue that a federal rule addressing amendments should allow a plaintiff without standing to amend in a plaintiff with standing.  The Fifth Circuit rejected plaintiffs' argument:

> The principal issue involved is not whether the complaint can be amended as a matter of course, as urged by appellants, but under the special circumstances here whether Summit could offer an amendment to the complaint at all.

*Summit,* 639 F.2d at 1282.  In *Federal Recovery,* the Fifth Circuit further stated:  "Rule 15 . . . does not allow a party to amend to create jurisdiction where none actually existed."  *Federal Recovery*, 72 F.3d at 453 (citations and internal quotation marks omitted).

In sum, if Article III prohibits a party from amending the complaint, whether a Federal Rule of Civil Procedure or case management considerations might allow the proposed

amendment is irrelevant.  The inquiry properly begins and ends with Article III, not the Federal Rules of Civil Procedure.

### C.       Plaintiffs' Remaining Arguments Have No Merit.

Plaintiffs essentially argue that because this case is a class action, none of this Article III caselaw should apply to it.[13]  Plaintiffs cite no case, other than the mootness cases discussed earlier, in support of this curious concept.  In fact, the named plaintiffs in a class action face the same Article III standing requirements as if the plaintiffs had brought the case individually, as class actions are in no way immune to the rigorous Article III standing requirements.[14]  This Court has already rejected Plaintiffs' argument that the Article III case law does not apply to a class action:  "[T]he Newly-Added Defendants' Motion to Dismiss for lack of standing could and would have been filed regardless of the inclusion of class allegations because the named Plaintiffs - individually - have not alleged facts sufficient to establish Article III standing.  Thus, it is proper for standing to be addressed now, at the pre-certification stage."  Order, p. 7.[15]  Further, *Sosna* and  *Franks* are both class action cases, and the United States Supreme Court was clear:  new plaintiffs may be substituted when an original plaintiff's case becomes moot, but a case must have an original plaintiff with standing to sue a defendant when the case is filed.

---

[13]  Plaintiffs argue that "defendants' analysis of the standing issue as it pertains to amendments in a class action proceeding is inappropriately rigid."  PSC Memorandum, p. 14.

[14]  This point is discussed extensively in the Memorandum of Law in Support of Motion to Dismiss Administrative Master Complaint on behalf of Newly Added Defendants (Pacer Doc. No. 259-2), pp. 10-16, which is incorporated herein by reference.

[15]  Plaintiffs' Proposed Amended AMC also seeks to add to the AMC a new claim that for those manufacturer defendants who are not "matched" with any Named Plaintiff, "one or more juridical links exist . . . obviat[ing] the need at this time to link the identity of an unnamed class member to a unit manufactured by a particular defendant . . ."  Proposed Amended AMC ¶ 8, pp. 18-19.  Plaintiffs' Proposed Amended AMC boldly ignores this Court's Order, which flatly rejected the juridical link doctrine and stated: "The Court cautions that any Defendants not specifically matched to individual Plaintiffs will be dismissed without prejudice."  Order, p. 11.  Thus, paragraph 8 (pp. 18-19) of the Proposed Amended AMC should not be allowed.

Plaintiffs' continued reliance on *Alexander v. Wyeth Laboratories, Inc.* (*In re Norplant Contraceptive Products Liability Litigation*), 163 F.R.D. 255 (E.D. Tex. 1995) ("*Alexander*") as support for allowing the amendment of additional Named Plaintiffs here is also misplaced. *Alexander* involved a products liability suit against three corporate *affiliates* that sold and distributed the *same* contraceptive product. *See Alexander*, 163 F.R.D. at 256. This case is entirely different in that multiple plaintiffs are suing entirely different defendants over entirely different products. In *Alexander*, there was no issue of a defendant without a "matching" plaintiff – all of the plaintiffs had purchased the defendants' one contraceptive device. *Id.* at 256-57. Thus, critically, standing was not an issue in *Alexander*. Further, the motion to amend in that case was *unopposed* by the defendants.

* * * * *

Because it is so clear that once a Plaintiff is found to have no Article III standing against a defendant, that defendant should be dismissed from the case (*see, e.g.*, *Audler*), this Court should deny Plaintiffs' Motion insofar as it attempts to add new plaintiffs to create standing retroactively without any consideration of the following arguments. Nonetheless, there are the following additional, independent reasons to deny Plaintiffs' Motion.

## V. Plaintiffs' Proposed Amended AMC is Untimely And Fails to Satisfy The Rule 16(b) "Good Cause" Standard.

### A. Plaintiffs' Proposed Amended AMC is Untimely.

This Court's Scheduling Order requires that all amendments to the Master Complaint be made "no later than ninety (90) days after the filing of the Master Complaint," or no later than

June 16, 2008.  Pretrial Order No. 2 (Pacer Doc. No. 87), p. 3.[16]  Plaintiffs' Motion, which was

filed on August 18, 2008, is out of time.[17]

> **B.     Rule 16(b) -- Not Rule 15(a) or Rule 23(d) -- Governs Whether to Allow Plaintiffs' Untimely Proposed Amended AMC And Plaintiffs Cannot Satisfy Their Burden of Showing "Good Cause" For The Amendment.**

Since there is a Scheduling Order in place and since the Proposed Amended AMC is late

under that Scheduling Order, the Rule 15(a) standard does not apply.  Rather, Rule 16(b)'s "good

---

[16] The AMC was filed on March 18, 2008 so the ninety (90) day deadline for proposed amendments ended on June 16, 2008.

[17] Plaintiffs mistakenly argue in response that they were allowed to add plaintiffs to the AMC after the June 16, 2008 deadline because "Pretrial Order No. 8 (Rec. Doc. 287, at ¶ 3), as well as this Court's orders of August 1, 2008 (Rec. Doc. Nos. 599 and 604), already have effectively amended the prior PTO No. 2."  PSC Memorandum, p. 10. Plaintiffs are wrong for three reasons.

First, this Court's August 1, 2008 Orders (Pacer Doc. Nos. 599 and 604) do *not* say anything about allowing Plaintiffs to amend their Master Complaint to *add new plaintiffs*.  To the contrary, because Plaintiffs' Original Motion failed to disclose on its face that it sought to add new plaintiffs, this Court's Order mistakenly concluded that "Plaintiffs in this MDL are not seeking to substitute new plaintiffs to create standing."  Order, p. 10.  This Court then concluded that Plaintiffs could amend the Master Complaint, pursuant to *Warth, supra,* "to allege specific facts to support *existing* plaintiffs' standing. . . ."  Order, p. 10 (emphasis added).  Thus, nowhere in a review of this Court's August 1, 2008 Orders (Pacer Doc. Nos. 599 and 604) is there an "effective amendment" of the PTO No. 2 deadline for adding parties.

Second, PTO No. 8 (Pacer Doc. No. 287) also does not "effectively amend" the deadline in PTO No. 2 (Pacer Doc. No. 87) for amendments to the AMC.  Indeed, PTO No. 8 does not even reference PTO No. 2.  PTO No. 8 merely establishes a July 1, 2008 deadline for Plaintiffs to designate *half* of their proposed class representatives and produce their completed Plaintiff Fact Sheets, and a August 1, 2008 deadline for Plaintiffs to designate the remaining *half* and produce their Plaintiff Fact Sheets.  PTO No. 8, p. 2, ¶ 3.  PTO No. 8 does state that it is meant to "supplement the existing class certification deadlines established in Pretrial Order No. 6."  PTO No. 8, p. 1.  PTO No. 6 (Pacer Doc. No. 135) makes no reference whatsoever to adding new plaintiffs.  Indeed, a review of PTO Nos. 2, 3, 4, 5, 6, 7, and 8 reflects that *only* PTO No. 2 addresses amendments to the Master Complaint.  PTO No. 8 does not allow them to *add* new Named Plaintiffs to manufacture Article III standing.  In any event, Plaintiffs' Motion was filed on August 18, 2008 and thus the Proposed Amended AMC is still untimely.

Third, Plaintiffs' Proposed Amended AMC differs significantly from the Original Proposed Amended AMC. *Compare* Pacer Doc. No. 657-5 *with* Pacer Doc. No. 594-5.  For example, Plaintiffs' Proposed Amended AMC seeks to add one hundred forty (140) new Plaintiffs, while the Original Proposed Amended AMC sought to add eighty-five (85) new Plaintiffs.  Plaintiffs' Original Proposed Amended AMC also sought to add *new* plaintiffs German Harrison, Louis Harrison, Jennifer Richland, Armani Harrison, Alijah Harrison, and Amya Freeman, purportedly with standing to sue Newly Added Defendant Giles Family Holdings, Inc. ("Giles").  Pacer Doc. No. 594-5, pp. 8-9.  Those six (6) individuals were the only proposed plaintiffs "matched" with Giles in the Original Proposed Amended AMC.  In the new Proposed Amended AMC, Plaintiffs remove *all* six (6) of those individuals, and instead seek to add Shontay Fontenot, Johnathan Fontenot, Sr., Johnathan Fontenot, Jr., Justin Fontenot, and Hailey Fontenot as the new plaintiffs "matched" with Giles.  Pacer Doc. No. 657-5, p. 9.  In addition, the Original Proposed Amended AMC did not "match" any plaintiff with Newly Added Defendant CMH Manufacturing, Inc., while the new Proposed Amended AMC purports to make such a match.  Pacer Doc. No. 657-5, p. 17.

cause" standard applies:  "[A] scheduling order shall not be modified except upon a showing of good cause and by leave of the district judge . . . ."  *S&W Enterprises, LLC v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003) ("*S&W*") (affirming denial of an untimely motion to amend complaint to add a new claim); *Hawthorne Land Co. v. Occidental Chemical Corp.*, 431 F.3d 221, 227 (5th Cir. 2006) ("*Hawthorne*") (affirming denial of an untimely motion to amend to add a new party defendant).

This Court's PTO No. 2 also establishes a "good cause" standard for any untimely proposed amendment to the AMC.  PTO No. 2, p. 3 ("Amendments to . . . the Master Complaint . . . may be filed with leave of Court, but in no event later than ninety (90) days after the filing of the Master Complaint . . . to which the amendment applies, except by leave of Court upon good cause shown.").[18]  Further, Plaintiffs *agreed* to the more stringent Rule 16(b) standard, as PTO No. 2 "reflects the agreement to date between the parties with respect to case management issues governing all proceedings in this matter."  PTO No. 2, p. 1.[19]

### C.  Plaintiffs Cannot Satisfy The "Good Cause" Standard For An Untimely Amendment

The Fifth Circuit has stated that in determining whether a party has shown "good cause" under Rule 16(b) for an untimely motion for leave to amend the complaint, the court should consider the following factors:  "(1) the explanation for the failure to move timely for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."  *Hawthorne*, 431 F.3d at 227.

---

[18]  Plaintiffs ignore PTO No. 2 when they argue that Rule 16(b)'s "good cause" standard should not apply because this is a purported class action, and thus any proposed amendments should be considered under the more lenient Rule 23(d) standard.  PSC Memorandum, pp. 10-11.

[19]  Nothing in PTO No. 8 reflects an intention of the Court to modify the amendment deadline set forth in PTO No. 2 or the "good cause" standard applicable to it.

In both *S&W* and *Hawthorne*, the Fifth Circuit did not find the explanation for the delay sufficient to satisfy the Rule 16(b) "good cause" standard.  In short, the moving parties did not offer a good reason as to why they could not have acted earlier.

Here, Plaintiffs have offered no explanation as to why they have not previously attempted to add these one hundred forty (140) new Plaintiffs.  In this case, there is an even greater argument against "good cause" than in *S&W* and *Hawthorne* because here the Original Plaintiffs did not have Article III standing to sue the Newly Added Defendants in the first place.

Plaintiffs' Motion seeks an amendment adding one hundred forty (140) new Plaintiffs that will enormously prejudice the Newly Added Defendants for five reasons.  First, allowing Plaintiffs to amend in new Plaintiffs with alleged standing to sue for the first time will permit Plaintiffs to avoid their obligation to file a new lawsuit with proper plaintiffs and in a proper venue.  Second, Plaintiffs will artificially attempt to argue that such amendment tolls the prescriptions/statute of limitations period when no proper plaintiff has yet filed a case against the Newly Added Defendants.  Third, an amendment will wrongfully deny the Newly Added Defendants their right to challenge venue and their inclusion in this MDL that has been focused on travel trailers rather than manufactured homes.

Fourth, since the AMC was originally filed on March 18, 2008 (over 5 months ago), Newly Added Defendants have been required to undertake the following action to prepare their defense in this litigation:

1) Retain experts;
2) Develop testing protocols;
3) Meet THU testing schedules for occupied and previously occupied units;
4) Identify and test THUs that were never occupied;
5) Object and respond to class certification discovery;
6) Begin process of objecting and responding to merits discovery;
7) Prepare clients for prospect of a Rule 30(b)(6) deposition;
8) Begin developing evidence to oppose class certification;

01680181.2

9) Gather documents for production;
10) Gather insurance policies for production; and
11) Filing preservation lists and motions for summary judgment.

These defensive steps have obviously imposed tremendous costs, fees and burdens on the Newly Added Defendants, despite the fact that there has not been a single Original Plaintiff with Article III standing against them. This is prejudice per se.

Fifth, the Newly Added Defendants face continuing burdens and costs in light of the impending class discovery cutoff of September 26, 2008[20] and developing a defense to Plaintiffs' Motion for Class Certification that is due on October 10, 2008.[21]

Article III is designed to protect against these very types of burdens and to avoid such inequities. In particular, a plaintiff must have Article III standing against a defendant before that defendant is required to undertake its substantive defense. Even setting aside for the sake of argument the threshold Article III standing issue, Plaintiffs have failed to establish "good cause" for the untimely proposed amendment under Rule 16(b), given the incredible prejudice that the Proposed Amended AMC imposes on the Newly Added Defendants. *See S&W*, 315 F.3d at 536-37 (affirming denial of untimely motion to amend in part because of ensuing prejudice to defendants).[22]

---

[20] Pretrial Order No. 13 (Pacer Doc. No. 564) ¶ 11.

[21] Pretrial Order No. 13 (Pacer Doc. No. 564) ¶ 13. PSC has failed to provide Plaintiff Fact Sheets for seven (7) of the thirteen (13) proposed new Plaintiffs who allegedly lived in a housing unit built by one of the Newly Added Defendants: Amaris McGallion, Lonnie McGallion, Linda Maydonado-West, Normal Wilson, Linda Davis, Wilford Jackson, and Mauro Lopez. In response to a question from this Court at the August 15, 2008 status conference, PSC incorrectly stated that all of the Plaintiff Fact Sheets for the proposed Plaintiffs were in the possession of the defendants. Transcript, p. 15.

[22] As set forth in SunRay RV, LLC's Memorandum in Support of Motion for Summary Judgment (Pacer Doc. No. 295-2), and as already recognized by Plaintiffs in their First Supplemental and Amended Master Complaint (Pacer Doc. No. 379), SunRay RV, LLC did not manufacture or sell any housing units to FEMA in the aftermaths of Hurricanes Katrina and Rita. Rather, SunRay RV, LLC merely purchased the assets, and not the liabilities, of another corporate entity. This Court's July 17, 2008 order (Pacer Doc. No. 541) recognized that, "Plaintiffs' First
(*Footnote continued on next page*)

**CONCLUSION**

The Newly Added Defendants respectfully ask this Court to consider the ramifications of allowing Plaintiffs' proposed untimely, incredibly prejudicial amendment to add one hundred forty (140) new Plaintiffs for the sole purpose of attempting to manufacture subject matter jurisdiction retroactively over the Newly Added Defendants where none exists. Plaintiffs' counsel in this case chose to sue an entire industry without having Plaintiffs with actual Article III standing against the Newly Added Defendants, with the hopes of possibly later finding a Plaintiff with Article III standing. Indeed, if allowed, why shouldn't *every* plaintiff's counsel in the future with a client having a claim against *one* defendant just file a class action against the entire industry, with the hopes of eventually finding a plaintiff with Article III standing to amend into the case down the road? Plaintiffs' proposed approach is an affront to the threshold constitutional inquiry required by Article III and directly contrary to the Fifth Circuit's holding in *Audler*.

The Original Plaintiffs never had Article III standing against the Newly Added Defendants. Under those circumstances, the only appropriate action for this Court is to dismiss the Newly Added Defendants from this civil action, just as the Fifth Circuit dismissed the Class Defendants in *Audler*. Plaintiffs' Motion seeks to manufacture jurisdiction against the Newly Added Defendants. Article III simply does not, and *should not*, allow Plaintiffs without Article

---

(*Footnote continued from previous page*)

Supplemental and Amended Master Complaint (Pacer No. 379) . . . dismisses . . . SunRay RV, LLC from the AMC and the *Pujols* complaints." This point is raised because the PSC Memorandum argues at one point that SunRay RV, LLC should be added as a new defendant. Pacer Doc. No. 657-2, p. 4. Newly Added Defendants believe this to be an oversight by the PSC because SunRay RV, LLC is not mentioned in the Proposed Amended AMC. *See* Proposed Amended AMC ¶ 5, pp. 2-4. However, out of an abundance of caution, Newly Added Defendants point out that SunRay RV, LLC is still not a proper party to this litigation, and any amendment attempting to add it should not be allowed.

01680181.2

III standing against the Newly Added Defendants to amend their Complaint to add new Plaintiffs who may have Article III standing against the Newly Added Defendants.

For all of the foregoing reasons, Plaintiffs' Motion, insofar as it seeks to add new Plaintiffs with purported standing against the Newly Added Defendants, should be DENIED.

Respectfully submitted by:

/s/ *Lee E. Bains, Jr.*
One of the Attorneys for Newly Added Defendants

**OF COUNSEL**
Thomas W. Thagard, III
Lorrie L. Hargrove
Edward A. "Ted" Hosp
Edward S. Sledge IV
**MAYNARD, COOPER & GALE, P.C.**
2400 Regions/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2616
Telephone 205-254-1000
Fax: 205-254-1999

-and-

James K. Carroll (#3898), T.A.
Stephanie D. Skinner (#21100)
Kati Cox Weaver (#30878)
**FOWLER RODRIGUEZ & CHALOS**
400 Poydras Street, 30th Floor
New Orleans, Louisiana 70130
Telephone: 504-523-2600
Fax: 504-523-2705

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document by first-class mail to all counsel of record who are non-CM/ECF participants.

/s/*Lee E. Bains, Jr.*
Of Counsel

25

01680181.2