UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | ) | MDL NO. 07-1873 |
| FORMALDEHYDE | ) | |
| PRODUCT LIABILITY LITIGATION | ) | SECTION "N-4" |
| | ) | |
| | ) | JUDGE ENGELHARDT |
| | ) | |
| THIS DOCUMENT RELATES TO | ) | MAG. JUDGE ROBY |
| THE ADMINISTRATIVE MASTER | ) | |
| COMPLAINT AND TO ALL CASES | ) | |

**MOTION TO RECONSIDER ORDER (REC. DOC. 720)
OR, IN THE ALTERNATIVE, TO CERTIFY FOR INTERLOCUTORY APPEAL**

**MAY IT PLEASE THE COURT:**

Come now Defendants CMH Manufacturing Inc., Southern Energy Homes, Inc., Palm Harbor Homes, Inc., Palm Harbor Mfg., LP Palm Harbor Albermarle, LLC, Giles Family Holdings, Inc., SunRay Investments, LLC (the "Newly Added Defendants"), Horton Homes, Inc., Silver Creek Homes, Inc., Redman Homes, Inc., Dutch Housing, Inc., Liberty Homes, Inc., Waverlee Homes, Inc., and ScotBilt Homes, Inc. (all moving Defendants are collectively referred to as "Un-Matched Defendants"), and respectfully move this Honorable Court to reconsider its Order (Rec. Doc. 720) ("October 6th Order") granting Plaintiffs' Motion for Leave to File Second Supplemental and Amended Complaint (Rec. Doc. 656) and PSC's Motion for Leave to File Second Supplemental and Amended Master Complaint (Rec. Doc. 657) (jointly referred to as "Plaintiffs' Motions to Amend Complaints"). As grounds for this Motion, Un-Matched Defendants respectfully state as follows:

1.      This Court's October 6th Order is contrary to controlling Fifth Circuit authority. *Summit Office Park, Inc. v. U.S. Steel Corp.,* 639 F.2d 1278, 1284 (5th Cir. 1981) ("*Summit*"); *Federal Recovery Services, Inc. v. U.S.A.,* 72 F.3d 447, 453 (5th Cir. 1996) ("*Federal Recovery*"); *Aetna Casualty & Surety Co., et al. v. Hillman*, 796 F.2d 770, 774 (5th Cir. 1986)

01701368.1

("*Aetna*"*)*; *Audler v. CBL Innovis*, 519 F.3d 239, 247-48 (5th Cir. 2008) ("*Audler*"). In its trilogy of decisions in *Summit, Federal Recovery*, and *Aetna*, the Fifth Circuit refused to allow a plaintiff without standing to amend the complaint to add a new plaintiff with standing, and instead required the dismissal of the case.[1] Contrary to that Fifth Circuit trilogy, this Court's October 6th Order allowed the original named plaintiffs in the Administrative Master Complaint (Rec. Doc. 109) ("Original Plaintiffs"), who did not have Article III standing against the Un-Matched Defendants, to amend the complaint to add new plaintiffs with standing against the Un-Matched Defendants. As the Fifth Circuit instructed in *Audler*, this Court must dismiss the defendants as to which the Original Plaintiffs do not have Article III standing.

2. This Court's October 6th Order is premised on the incorrect assumption that Plaintiffs' Motions to Amend Complaints are "in accordance with this Court's August 1, 2008 Order and Reasons." October 6th Order, p. 2. In fact, Plaintiffs' Motions to Amend Complaints are in violation of this Court's August 1, 2008 Order and Reasons (Rec. Doc. No. 599) ("August 1st Order") in several respects:

- This Court's August 1st Order granted plaintiffs leave to amend the complaint "to allege specific facts to support **existing plaintiffs'** standing." August 1st Order, p. 10 (emphasis added). Rather than being limited to allegations supporting the standing of "existing plaintiffs" as provided in this Court's August 1st Order (p. 10), Plaintiffs' Motions to Amend Complaints seek to add one hundred forty (140) *new* named

---

[1] The *Summit, Federal Recovery*, *Aetna*, and *Audler* cases are discussed at length in the Newly Added Defendants' Memorandum in Opposition to PSC's [New] Motion for Leave to File Second Supplemental and Amended Master Complaint (Rec. Doc. 677), which is incorporated herein by reference. District courts within the Fifth Circuit have also consistently held that a plaintiff without standing may not amend his complaint to add a new plaintiff to create standing retroactively. *See* Rec. Doc. 677, p. 9 n.7. Un-Matched Defendants also adopt and incorporate by reference the arguments and exhibits in the Memoranda in Opposition to Motion for Leave to File Second Amended Master Complaint on behalf of Horton Homes, Inc. (Rec. Doc. 679).

plaintiffs – plaintiffs who have never been in this lawsuit before.  *See* Proposed Amended AMC (Rec. Doc. 657-5) ¶ 7, pp. 8-18.

- Similarly, this Court stated its understanding that, "Plaintiffs in this MDL are not seeking to substitute new plaintiffs to create standing."  August 1st Order, p. 10.  Contrary to this Court's August 1st Order, Plaintiffs' Motions to Amend Complaints seek to add one hundred forty (140) new named plaintiffs to create standing.  *See* Proposed Amended AMC (Rec. Doc. 657-5) ¶ 7, pp. 8-18.

- This Court's August 1st Order flatly rejected the juridical link doctrine urged by Plaintiffs.  August 1st Order, pp. 7-8.  Contrary to this Court's August 1st Order, Plaintiffs' Motions to Amend Complaints seek to add a juridical link allegation.  *See* Proposed Amended AMC (Rec. Doc. 657-5) ¶ 8, pp. 18-19 (adding to the AMC a new claim that for those manufacturer defendants that are not "matched" with any Named Plaintiff, "one or more juridical links exist . . . obviat[ing] the need at this time to link the identity of an unnamed class member to a unit manufactured by a particular defendant. . .").

3. This Court's brief October 6th Order is inconsistent with the extended Article III analysis in its August 1st Order.  This Court was exactly correct in the Article III analysis in its August 1st Order granting the Newly Added Defendants' Motion to Dismiss (Pacer Doc. No. 259) the Administrative Master Complaint (Rec. Doc. 109) ("AMC").  *In re FEMA Trailer Formaldehyde Products Liability Litigation*, ___ F. Supp. 2d ___, 2008 WL 3010040 (E.D. La. Aug. 1, 2008).  In its August 1st Order, this Court ruled that, "as it stands now, no plaintiff is matched to any specific Newly Added Defendant.  Thus, the Court grants the instant Motion to Dismiss based on lack of standing" without prejudice to a motion for leave to amend the Complaint "to allege specific facts to support **existing plaintiffs'** standing."  August 1st Order,

pp. 10-11 (emphasis added). This Court's Order cautioned that "any Defendants not specifically matched to individual Plaintiffs will be dismissed without prejudice." August 1st Order, p. 11. Plaintiffs' Motions to Amend Complaints established that not a single one of the Original Plaintiffs lived in a housing unit built by the Un-Matched Defendants. Instead, those sixty-three (63) Original Plaintiffs in the AMC lived in housing units built by defendants other than the Un-Matched Defendants. As a result, the Original Plaintiffs in the AMC lacked Article III standing against the Un-Matched Defendants. Since none of the Original Plaintiffs in the AMC had Article III standing against the Un-Matched Defendants, this Court should have denied Plaintiffs' Motions to Amend Complaints to add new plaintiffs based on the controlling Fifth Circuit decisions in *Summit, Federal Recovery, Aetna*, and *Audler*.[2]

4. This threshold Article III standing issue is properly considered in the procedural context of Plaintiffs' Motions to Amend Complaints in light of the Fifth Circuit decisions in *Summit*, *Federal Recovery*, *Aetna*, and *Audler*, rather than being postponed until the Court's consideration of motions to dismiss the Second Supplemental and Amended Complaints.

WHEREFORE, Un-Matched Defendants respectfully move this Honorable Court to reconsider and vacate its October 6th Order (Rec. Doc. 720) and deny Plaintiffs' Motions to Amend Complaints (Rec. Doc. 656 and 657).

---

[2] In its August 1st Order, this Court recognized the existence of the three Fifth Circuit cases (*Summit*, *Federal Recovery,* and *Aetna*) and distinguished them on the mistaken belief that "Plaintiffs in this MDL are not seeking to substitute new plaintiffs to create standing." August 1st Order, p. 10. Because Plaintiffs' Motions to Amend Complaints do, in fact, seek to add one hundred forty (140) new plaintiffs in an effort to create standing against the Un-Matched Defendants, and because no Original Plaintiff in the AMC ever had Article III standing against the Un-Matched Defendants, the Fifth Circuit cases are directly on point and mandate the denial of Plaintiffs' Motions to Amend Complaints.

**MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1282(b)**

In the alternative, Un-Matched Defendants respectfully move this Honorable Court, pursuant to 28 U.S.C. § 1292(b), to certify its October 6th Order for interlocutory appeal because of the threshold Article III standing issues presented. As support, for its alternative Motion for Interlocutory Appeal, Un-Matched Defendants state as follows:

1. This case is perfect for interlocutory appeal. The controlling question of law is whether the Original Plaintiffs, who indisputably lack standing as against the Un-Matched Defendants, are to be permitted to amend the AMC to add wholly new plaintiffs who are alleged to have standing as against the Un-Matched Defendants. This question involves the threshold Constitutional issue of Article III standing. Further, this matter now involves the inconsistency or conflict between:

   a. this Court's October 6th Order granting Motions to Amend Complaints filed by the Original Plaintiffs;

   b. this Court's August 1st Order finding that the Original Plaintiffs lacked standing; and

   c. the Fifth Circuit decisions in *Summit*, *Federal Recovery*, and *Aetna* holding that an original plaintiff, who lacks standing, may not cure that fundamental defect by amending his complaint to add a new plaintiff who may have standing.

Thus, to the extent this Court declines to reconsider its October 6th Order, Fifth Circuit review will be helpful in resolving this threshold Constitutional issue in what may well otherwise be long and protracted litigation.

2. As discussed above, in its October 6th Order, this Court granted Plaintiffs' Motions to Amend Complaints. In so doing, the Court stated that the arguments advanced by the Un-Matched Defendants in their opposition to those motions could be presented in responsive

01701368.1                                       5

pleadings to the amended complaints. Perhaps in part because the Plaintiffs' original motion to amend (Rec. Doc. 594) failed to disclose that they intended to add new plaintiffs in order to establish standing, this Court's October 6th Order overlooked the fact that the Original Plaintiffs still lacked standing to file the amended complaints as against the Un-Matched Defendants. As a result, the Original Plaintiffs could not, under Fifth Circuit precedent, amend the AMC to manufacture standing by adding new plaintiffs.

3. Section 1292(b) of Title 28 permits a party to seek review of interlocutory orders when a district court certifies: (1) that its order "involves a controlling question of law as to which there is a substantial ground for difference of opinion;" and (2) that "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

4. The legislative history of § 1292(b) reflects its intended purpose. *See Hadjipateras v. Pacifica, S.A.,* 290 F. 2d 697, 702-03 (5th Cir. 1961) ("Each application is to be looked at then in the light of the underlying purpose reflected in the statute"). As detailed in a recent Eleventh Circuit decision, the addition of § 1292(b) was prompted by a proposal to Congress from the Judicial Conference of the United States Courts. *McFarlin v. Conseco Services, LLC*, 381 F. 3d 1251, 1256 (11th Cir. 2004) ("*McFarlin*"), citing 1958 U.S.C.C.A.N. 5258. *See also Hadjipateras*, 200 F. 2d at 702 ("[1292(b)] was a judge-sought, judge-made, judge-sponsored enactment."). In the legislative history, Congress set forth three examples of cases illustrative of the types of cases for which § 1292(b) is needed.

5. Significantly, the very first type of case envisioned by Congress for § 1292(b) to address involved an early motion challenging jurisdiction:

> [I]n a recent case, a motion to dismiss for want of jurisdiction was filed in the district court early in the proceedings. This district court denied the motion and the matter then proceeded to trial. The disposition of that case took almost 8 months. Upon final order the case was appealed and the court of appeals determined that the district court did not have jurisdiction and entered an order

> accordingly. Had this legislation been in effect at that time, the district judge could have stated in writing his opinion that the motion was controlling and the defendant could thereupon have made application to the court of appeals or a review of the order denying the motion. Had the court of appeals entertained such a motion and reached the conclusion which it ultimately did, it would have resulted in a saving of time of the district court and considerable expense on the part of the litigants.

*McFarlin,* 381 F. 3d at 1257, quoting the Senate Judiciary Committee Report, S. Rep. No. 2424 (1958), 1958 U.S.C.C.A.N. 5256. Thus, a motion questioning standing, as in this case, presents a textbook case for a § 1292(b) interlocutory appeal.

6.  Second, the Judicial Conference committee, in describing a case for which an interlocutory appeal should apply, gave the example of *Austrian v. Williams*, 198 F. 2d 697 (2nd Cir. 1952) ("*Austrian*"), a case in which the defendant raised the state statute of limitations as a defense, but the district court read into it a federal equitable rule that tolled it. *McFarlin,* 381 F. 3d at 1256, quoting 58 U.S.C.C.A.N. at 5260-61. After the trial resulted in a judgment against two of the defendants and those defendants appealed, the Second Circuit reversed, holding the federal court must apply the state statute of limitations in accordance with state law, thus barring the claims. *Id.* at 699-701. The Eleventh Circuit declared the *Austrian* case perfect for interlocutory appeal because: (a) a decision of the appeal would avoid protracted and expensive litigation, (b) the question at issue would be dispositive of the litigation; and (c) there is serious doubt as to how it should be decided. *McFarlin,* 381 F. 3d at 1256.

7.  This case is like *Austrian* in that a controlling issue of law – Article III standing – is raised in connection with Un-Matched Defendants' opposition to Plaintiffs' Motions to Amend the Complaints. A decision in the Un-Matched Defendants' favor would therefore "avoid protracted and expensive litigation," *McFarlin*, 381 F. 3d at 1256, quoting 1958 U.S.C.C.A.N. at 5260-61.

8. Third, the Judicial Conference Committee offered the example of dispositive motions in "antitrust and similar protracted cases." *Id*. The Senate Judiciary Committee Report further added that an example of a case in which a § 1292(b) appeal would be appropriate would be the "denial of a motion to dismiss an antitrust action," in light of the fact that disposition of antitrust actions may "take considerable time." *McFarlin*, 381 F. 3d at 1257, quoting 1958 U.S.C.C.A.N. at 5256. The case at hand is a massive putative class action filed against an entire industry as well as the federal government. Such an action clearly qualifies as a case that is every bit as protracted and complicated as an antitrust case. Without a doubt, this matter will be expensive, complex, and very time-consuming, as courts have well recognized. *See In re Corrugated Container Antitrust Litig*., 643 F. 2d 195, 217 (5th Cir. 1981) ("[V]irtually all class actions will result in long, complex and expensive trials"); *Bernard v. Gulf Oil Co*., 596 F. 2d 1249, 1259 (5th Cir. 1979), citing 7A C. Wright and A. Miller, Federal Practice and Procedure § 1791 at 193 (1972) ("class actions tend to be extremely complicated and protracted"). This case thus perfectly fits within the purview of every case envisioned by the legislative history of § 1292(b).

9. A party seeking a § 1292(b) interlocutory appeal must demonstrate that the ruling appealed from involves: (1) a controlling question of law; (2) as to which there is a substantial ground for difference of opinion; and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). All three criteria are satisfied here.

10. First, Un-Matched Defendants seek an interlocutory appeal on an issue in which a controlling question of law is in issue. Again, the question is whether the Original Plaintiffs, whom this Court already found in its August 1st Order did not establish their own Article III standing against the Un-Matched Defendants, may amend their complaints to add new plaintiffs

in order to create standing. This is a pure question of law making this Court's ruling on Plaintiffs' Motions to Amend Complaints appropriate for § 1292(b) review. This case is particularly appropriate for § 1292(b) review because it involves the threshold issue of Article III standing, the fundamental controlling question of law at the very outset of a case.[3]

11.     Second, there is substantial ground for difference of opinion on the issue in Plaintiffs' Motions to Amend Complaints. At least three Fifth Circuit decisions have held that a plaintiff who lacks standing cannot amend the Complaint to add plaintiffs who may have standing. *Summit*; *Federal Recovery*; *Aetna*. Thus, those controlling decisions are in direct conflict with this Court's October 6th Order.

12.     Third, the disposition of such controlling questions on appeal could materially advance the ultimate termination of this litigation.[4] If the Fifth Circuit agrees with Un-Matched Defendants that the Original Plaintiffs cannot amend their complaint to add new plaintiffs and manufacture standing, this case is over for the Un-Matched Defendants and, as this Court has indicated in its August 1st Order, the claims against them are to be dismissed without prejudice.

WHEREFORE, for the reasons set forth above, if this Court declines to reconsider its October 6th Order granting Plaintiffs' Motions to Amend Complaints, then Un-Matched Defendants respectfully request that this Court enter an order certifying for interlocutory review

---

[3] A court should establish its subject matter jurisdiction before determining any other issue in a case. *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 68 (1978) (describing the question of whether the district court had subject matter jurisdiction as a "threshold matter"); *Kirkland v. Midland Mortgage Co.,* 243 F. 3d 1277, 1279-80 (11th Cir. 2001) ("Federal courts . . . are required to inquire into their jurisdiction at the earliest possible point in the proceeding.") (citation omitted); *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 95, 118 S. Ct. 1003, 1012 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is `inflexible and without exception.'").

[4] All that is needed to satisfy this requirement is the resolution of a controlling legal question which would "serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin,* 381 F. 3d at 1259 (citations omitted).

under 28 U.S.C. § 1292(b) its October 6th Order, which granted Plaintiffs' Motions to Amend Complaints.

                    Respectfully submitted by:

                    /s/ *Lee E. Bains, Jr.*
                    One of the Attorneys for Newly Added Defendants

**OF COUNSEL:**

Thomas W. Thagard, III
Lorrie L. Hargrove
Edward A. "Ted" Hosp
Edward S. Sledge IV
**MAYNARD, COOPER & GALE, P.C.**
2400 Regions/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2616
Telephone 205-254-1000
Fax: 205-254-1999

-and-

James K. Carroll (#3898), T.A.
Stephanie D. Skinner (#21100)
Kati Cox Weaver (#30878)
**FOWLER RODRIGUEZ & CHALOS**
400 Poydras Street, 30th Floor
New Orleans, Louisiana 70130
Telephone: 504-523-2600
Fax: 504-523-2705

                 __/s/Ben L. Mayeaux_____
                 Ben L. Mayeaux (#19042)
                 One of the Attorneys for Horton Homes, Inc

**OF COUNSEL:**

Gregory A. Koury (#26364)
LABORDE AND NEUNER
1001 West Pinhook, Suite 200
Lafayette, Louisiana 70503
Telephone: 337-237-7000
Fax: (337-233-9450

                 __/s/ Thomas C. "Chris" Pennebaker _
                 Thomas C. "Chris" Pennebaker, (#24597)
                 One of the Attorneys for ScotBilt Homes, Inc.

**OF COUNSEL:**

Nielsen Law Firm, LLC
3838 North Causeway Blvd., Suite 2850
Metairie, LA 70002
Phone: (504) 837-2500
Fax: (504) 832-9165
email: tpennebaker@nielsenlawfirm.com


                 /s/ Lamont P. Domingue
                 Lamont P. Domingue - #20787

**OF COUNSEL:**

VOORHIES & LABBÉ
(A Professional Law Corporation)
Post Office Box 3527
700 St. John Street
Lafayette, Louisiana 70502-3527
Telephone: (337) 232-9700
Fax: (337) 235-4943
E-Mail:  LPD@volalaw.com

01701368.1              11

**CERTIFICATE OF SERVICE**

  I hereby certify that on October __, 2008, I electronically filed the foregoing Motion to Reconsider Order (Rec. Doc. 720) or, in the Alternative, to Certify for Interlocutory Appeal with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document by first-class mail to all counsel of record who are non-CM/ECF participants.

              /s/*Lee E. Bains, Jr.*
              Of Counsel