**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | ) | MDL NO. 07-1873 |
| FORMALDEHYDE | ) | |
| PRODUCT LIABILITY LITIGATION | ) | SECTION "N-4" |
| | ) | |
| | ) | JUDGE ENGELHARDT |
| | ) | |
| THIS DOCUMENT RELATES TO | ) | MAG. JUDGE ROBY |
| THE ADMINISTRATIVE MASTER | ) | |
| COMPLAINT AND TO ALL CASES | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**SECOND SUPPLEMENTAL AND AMENDED MASTER COMPLAINT**

Defendants CMH Manufacturing, Inc., Southern Energy Homes, Inc., Palm Harbor Homes, Inc., Palm Harbor Mfg., LP, Palm Harbor Albemarle, LLC, Giles Family Holdings, Inc., and SunRay Investments, LLC (the "Newly Added Defendants") respectfully submit this memorandum in support of their motion to dismiss the Second Supplemental and Amended Master Complaint (Rec. Doc. 722) ("Amended AMC").[1]

## INTRODUCTION

In its Order and Reasons (Rec. Doc. 720) ("October 6th Order") granting PSC's Motion for Leave to File Second Supplemental and Amended Master Complaint (Rec. Doc. 657) and Plaintiff's Motion for Leave to File Second Supplemental and Amended Complaint (Rec. Doc. 656), this Court ruled that, "[t]he arguments made in the oppositions to these motions may be presented in responsive pleadings to the amended complaints."   October 6th Order, p. 2.

---

[1] The Newly Added Defendants also respectfully submit this memorandum in support of the dismissal of the substantively identical Plaintiffs' Second Supplemental and Amended Complaint (Rec. Doc. 721) in *Pujol v. The United States of America*, No. 08-3217.

1

Pursuant to this Court's October 6th Order, Newly Added Defendants respectfully reassert their Article III standing arguments in support of their motion to dismiss the Amended AMC.[2]

The Amended AMC is a brazen attempt to circumvent Article III of the United States Constitution and this Court's August 1, 2008 Order and Reasons (Rec. Doc. 599) ("August 1st Order")[3] granting the Newly Added Defendants' Motion to Dismiss (Rec. Doc. 259) the Administrative Master Complaint.  The Amended AMC establishes that not a single named plaintiff in the Administrative Master Complaint (Rec. Doc. 109) ("AMC") had Article III standing against the Newly Added Defendants.  Not a single one of the sixty-three (63) original named plaintiffs ("Original Plaintiffs") in the AMC lived in a housing unit built by any of the Newly Added Defendants.  Instead, those sixty-three (63) Original Plaintiffs in the AMC lived in housing units built by Defendants other than the Newly Added Defendants.[4]

This Court was exactly correct in the Article III analysis in its August 1st Order.  The Amended AMC now confirms that "no plaintiff [in the AMC] is matched to any specific Newly Added Defendant."  *See* August 1st Order, p. 11.  Since the Amended AMC establishes that the Original Plaintiffs in the AMC lacked Article III standing against the Newly Added Defendants, the only course of action that this Court may take is to dismiss the case against the Newly Added Defendants.

**The Amended AMC adds one hundred forty (140) *new* named plaintiffs – plaintiffs who have never been in this lawsuit before -- thirteen (13) of whom purportedly have**

---

[2] This memorandum is filed without prejudice to the Newly Added Defendant's motion to reconsider, or in the alternative, certify for interlocutory appeal.

[3] This Court's Order is slated for publication.  *In re FEMA Trailer Formaldehyde Products Liability Litigation*, ___ F. Supp. 2d ___, 2008 WL 3010040 (E.D. La. Aug. 1, 2008).

[4] The Amended AMC deletes one of the sixty-three (63) Original Plaintiffs--Carol Eleanor Salassi.  Amended AMC ¶ 1, p 1.

01702754.4

**standing against the Newly Added Defendants.**  This Court's August 1st Order did not provide that the Original Plaintiffs could amend the complaint to add new plaintiffs.  Indeed, this Court stated its understanding that "Plaintiffs in their MDL are not seeking to substitute new plaintiffs to create standing."  August 1st Order, p. 10.  The Amended AMC, with its addition of 140 new plaintiffs to create standing, is therefore directly contrary to this Court's August 1st Order.

This Court's August 1st Order was without prejudice to the right of Plaintiffs to seek leave to amend the complaint "to allege specific facts to support **existing Plaintiffs'** standing." August 1st Order, p. 10 (emphasis added).  Rather than being limited to the "existing plaintiffs," the Amended AMC adds one hundred forty (140) *new* Plaintiffs to the AMC.  Binding precedent does not allow the Original Plaintiffs to file a lawsuit without Article III standing to sue certain defendants and then attempt to manufacture standing retroactively by later adding in new plaintiffs with standing against those defendants.

Another example of Plaintiffs' actions inconsistent with this Court's August 1st Order involves the juridical link doctrine.  In its August 1st Order, this Court flatly rejected the juridical link doctrine.   August 1st Order, pp. 7-8.  Plaintiffs' Amended AMC blatantly ignores this Court's August 1st Order by adding to the AMC a new claim that for those manufacturer defendants who are not "matched" with any named plaintiff, "one or more juridical links exist. . . obviat[ing] the need at this time to link the identity of an unnamed class member to a unit manufactured by a particular defendant . . ."  Amended AMC ¶ 8, pp. 18-19.

The named Plaintiffs in the Amended AMC have also improperly joined whatever individual claim each may theoretically have against a specific Defendant with claims that other

plaintiffs may or may not have against other Defendants and have failed to demonstrate any common evidentiary link between either Plaintiffs' claims or the Defendants.[5]

Finally, the Newly Added Defendants herein assert many standard Rule 12 defenses and expressly join in those presented in motions to dismiss filed by other Defendants.  Accordingly, and by incorporation and adoption of the motions to dismiss filed by all other Defendants, the Newly Added Defendants respectfully request that this Court dismiss the Newly Added Defendants from this action.

## PROCEDURAL BACKGROUND RELATING TO THIS MOTION

For purposes of this motion, the relevant facts are simple and uncontested.

Referred to as part of the "FEMA Trailer Litigation," the Original Plaintiffs filed the AMC that purported to be a class action on behalf of persons residing or living along the Gulf Coast of the United States in travel trailers, park models, and manufactured homes (hereinafter collectively, "housing units") provided by FEMA after Hurricanes Katrina and Rita in August and September 2005. AMC ¶¶ 17-25.  The Original Plaintiffs alleged injuries attributable to purportedly high levels of formaldehyde contained in the housing units, which they contend were neither designed nor constructed in accordance with "reasonably precise" Government specifications.  AMC ¶¶ 26-29.

As early as May 1, 2006,[6] certain plaintiffs initiated the FEMA Trailer Litigation through separate lawsuits against certain Defendants in the Louisiana federal district courts.  Thereafter, those plaintiffs moved, pursuant to 28 U.S.C. Section 1407, to centralize this litigation for

---

[5]   Plaintiffs' AMC and Amended AMC might be likened to "all automobile drivers in the U.S." suing "all automobile manufacturers in the U.S." for any injuries sustained as a result of driving the automobiles.  This would prima facie constitute improper joinder.

[6]   *See Hillard, et al v. United States of America, et al,* 2:06-cv-02576, previously pending in the United States District Court, Eastern District of Louisiana.

coordinated and consolidated pretrial proceedings in the Eastern District of Louisiana.  Over objections, the United States Judicial Panel on Multidistrict Litigation granted the plaintiffs' motion and issued a Transfer Order pertaining to three actions previously pending in the Eastern District of Louisiana and another previously pending in the Western District of Louisiana.  Since the issuance of the Transfer Order, a substantial number of additional "tag along" actions, which were also initiated in various state and federal courts, have been removed and/or transferred to this Court.

In Pre-Trial Order No. 2, this Honorable Court directed Plaintiffs' counsel to "file a consolidated Master Complaint by February 29, 2008.  The Master Complaint shall incorporate and supersede all pending actions and those subsequently filed, removed, or transferred to this Court as part of this proceeding."  Instead, Plaintiffs' counsel, on March 14, 2008, filed directly in the MDL proceeding the AMC that purportedly added the Newly Added Defendants to the litigation.[7]

On May 9, 2008, in an apparent attempt to correct the defects caused by a direct filing of the AMC against the Newly Added Defendants in the MDL proceeding, the Original Plaintiffs filed the *Pujol* original Complaint in the Eastern District of Louisiana.  (Doc. No. 08-3217).  On June 24, 2008, the Original Plaintiffs filed the *Pujol* Amended Complaint (Rec. Doc. 378) substituting and renaming some of the Defendants named in the *Pujol* original Complaint. However, in none of the Complaints filed – in this or any other civil action filed before the Amended AMC (filed on October 6, 2008) – does any single Plaintiff allege that he or she ever resided in a home manufactured by any particular Newly Added Defendant.  Indeed, not one of

---

[7] There is no substantive or procedural basis for such an independent, direct filing in an MDL proceeding against defendants that had not previously been sued in connection with this matter.  Further and importantly, not a single Newly Added Defendant had been named as a party defendant in any civil action previously commenced and transferred to this MDL proceeding.

the Original Plaintiffs alleged that he or she suffered any harm as a proximate result of any action by any specific Newly Added Defendant.

On May 21, 2008, the Newly Added Defendants filed a Motion to Dismiss the AMC (Rec. Doc. 259) arguing, *inter alia*, that the Original Plaintiffs lacked Article III Standing to assert claims against the Newly Added Defendants.  On August 1, 2008, this Honorable Court granted the Newly Added Defendants' Motion to Dismiss, doing so without prejudice to the right of the Original Plaintiffs to seek leave to amend the complaint "to allege specific facts to support existing Plaintiffs' standing."  August 1st Order, p. 10.

On August 18, 2008, in an effort to retroactively "cure" their lack of standing, the PSC, for the second time, filed a Motion for leave to file Second Supplemental and Amended Master Complaint (Rec. Doc. 657) and Motion for Leave File Second Supplemental and Amended Complaint (Rec. Doc. 656), both seeking to *add* one hundred forty (140) *new* named plaintiffs -- plaintiffs who have never been in this lawsuit before -- thirteen (13) of whom purportedly have standing against the Newly Added Defendants.  Over the Newly Added Defendants' objections, this Honorable Court issued its October 6th Order (Rec. Doc. 720) granting the PSC's Motion for Leave to File Second Supplemental and Amended Master Complaint (Rec. Doc. 657) and Plaintiff's Motion for Leave to File Second Supplemental and Amended Complaint (Rec. Doc. 656) and explaining that "[t]he arguments made in the oppositions to these motions may be presented in responsive pleadings to the amended complaints." October 6th Order, p. 2.

## MOTION TO DISMISS STANDARD

In 2007, the United States Supreme Court significantly altered the standard for federal courts to use in deciding a motion to dismiss.  *See Bell Atlantic v. Twombly,* 127 S. Ct. 1955 (2007) ("*Twombly*").  Pre-*Twombly*, claims were dismissed only if the court found that a plaintiff

could prove "no set of facts" that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). *Twombly* retired the *Conley* "no set of facts" language, *Twombly*, 127 S. Ct. at 1969 ("[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard."), and ushered in a new "plausible claim" pleading standard. *Id.* at 1974. The Supreme Court held in *Twombly* that in order to survive a motion to dismiss, a plaintiff cannot simply set forth conclusory allegations of the bare elements of a cause of action. *Id.* at 1964-65 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .") (citations omitted). Instead, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly,* 127 S. Ct. at 1965 n.3. A plaintiff must allege "enough facts to . . . . nudge[] [his] claims across the line from conceivable to plausible" in order to prevent the dismissal of the complaint. *Id.* at 1974.[8]

## <u>ARGUMENT</u>

## I.      PLAINTIFFS LACK ARTICLE III STANDING TO ASSERT CLAIMS AGAINST THE NEWLY ADDED DEFENDANTS.

Plaintiffs in this litigation purport to sue manufacturers of certain trailers and manufactured homes provided by FEMA following Hurricanes Rita and Katrina, alleging injuries attributable to high levels of formaldehyde in the homes. On March 18, 2008, the sixty-

---

[8] The Fifth Circuit has subsequently embraced Twombly's "plausible claim" requirement. See e.g., Guidry v. American Public Life Ins. Co., 512 F.3d 177, 180 (5th Cir. 2007) ("Guidry") ("The plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face'") (citing Twombly); Samford v. Staples, 249 Fed. Appx. 1001, 1003-04 (5th Cir. 2007) (holding conclusory allegations insufficient to overcome motion to dismiss under Twombly).

01702754.4

three (63) Original Plaintiffs filed the AMC.  **None of the Original Plaintiffs in the AMC is "matched" to any of the Newly Added Defendants**.[9]

Exhibit One to this Memorandum identifies: (1) each Original Plaintiff in the AMC and (2) the manufacturer alleged in the Amended AMC for each Original Plaintiff.  Exhibit One then poses the question for each Original Plaintiff as to whether the Amended AMC alleges that the particular Plaintiff lived in a housing unit built by any of the Newly Added Defendants; the answer is "no" for every Original Plaintiff.

This Court's August 1st Order cautioned that "any Defendants not specifically matched to individual Plaintiffs will be dismissed without prejudice."  August 1st Order, p. 11.  The allegations in the Amended AMC, and the information contained in the attached Exhibit One, establish that the Newly Added Defendants are not matched to any of the Original Plaintiffs. Based on this Court's August 1st Order, the Newly Added Defendants were dismissed based on the lack of Article III standing by the Original Plaintiffs.

Ignoring the holding in this Court's August 1st Order, the Amended AMC adds one hundred forty (140) *new* Plaintiffs to the AMC, thirteen (13) of whom purport to have lived in housing units manufactured by one of the Newly Added Defendants.  Amended AMC ¶ 7, pp. 8-18.  The addition of new plaintiffs with alleged standing against the Newly Added Defendants, where no Original Plaintiff had such Article III standing, is a blatant attempt to manufacture standing retroactively against the Newly Added Defendants well after the filing of the AMC. Binding United States Supreme Court and Fifth Circuit law, as well as Article III of the United States Constitution and the caselaw interpreting it, prohibit Plaintiffs' tactic.

---

[9] The Amended AMC clarifies that the Original Plaintiffs actually lived in housing units built by defendants other than the Newly Added Defendants.  *See* Amended AMC ¶ 6, pp. 4-8.

**A.      No Original Plaintiff Had Article III Standing to Sue the Newly Added Defendants.**

This Court has ruled that, "as it stands now, no plaintiff is matched to any specific Newly Added Defendant.  Thus, the Court grants the instant Motion to Dismiss based on lack of standing" without prejudice to a motion for leave to amend the Complaint "to allege specific facts to support **existing plaintiffs'** standing."  August 1st Order, pp. 10-11 (emphasis added). Since none of the Original Plaintiffs actually lived in housing units built by the Newly Added Defendants, no Original Plaintiff can "allege specific facts to support" Article III standing to sue the Newly Added Defendants.  It is consequently undisputed that the Original Plaintiffs do not have Article III standing to sue the Newly Added Defendants.[10]

**B.      Since No Original Plaintiff Had Standing to Sue the Newly Added Defendants, the Newly Added Defendants Must be Dismissed.**

This Court noted that it "may allow [P]laintiffs to amend or provide affidavits in order to further particularize the allegations of fact deemed supportive of [P]laintiffs' standing."  August 1st Order, p. 11 (citing *Warth v. Seldin,* 422 U.S. 490, 501-02 (1975) ("*Warth*")).  As noted above, Plaintiffs do just that in their Amended AMC that purports to "match" the Original Plaintiffs to their appropriate manufacturers.  Amended AMC ¶ 6, pp. 4-8.  None of the Original Plaintiffs, however, actually "match" with any Newly Added Defendant.  *See* Amended AMC ¶ 6, pp. 4-8 (failing to "match" any original Plaintiff with any of the Newly Added Defendants); Exhibit One, attached hereto.  Thus, even with the Amended AMC, Plaintiffs offer no particularized "allegations of fact" to support the Original Plaintiffs' standing to sue the Newly Added Defendants.

---

[10] As this Court has ruled, there is no piggyback standing in the Fifth Circuit.  *See* August 1st Order, p. 7 ("The Fifth Circuit . . . has continued to require plaintiffs to assert direct claims against *each defendant* in order to satisfy the Article III standing requirement.") (emphasis added).

The United States Supreme Court's direction is clear:  "If, after this opportunity" to amend the complaint to state "particularized allegations of fact deemed supportive of the plaintiff's standing," the "plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed."  *Warth*, 422 U.S. at 501-02.

Since the Original Plaintiffs did not have Article III standing against the Newly Added Defendants, this Court immediately loses subject matter jurisdiction over the claims against those defendants.  *See Lang v. French,* 154 F.3d 217, 222 n.28 (5th Cir. 1998) ("*Lang*") ("standing is an element of the constitutional requirement of 'case or controversy,' lack of standing deprives the court of subject matter jurisdiction"); *accord, In re Weaver*, 632 F.2d 461, 463 n.6 (5th Cir. 1980) ("*Weaver*").

The Fifth Circuit and this Honorable Court recently faced the same Article III standing issue in *Audler v. CBC Innovis, Inc.,* 519 F.3d 239 (5th Cir. 2008) ("*Audler*").  In *Audler*, a Louisiana homeowner, whose property was damaged by floodwaters from Hurricane Katrina, brought a purported class action lawsuit against the company that provided flood zone determinations to his lender as well as against nineteen other defendants alleged to have been in the same business.  The named plaintiff had no dealings with nineteen of the defendants ("Class Defendants") that were named in the purported class action complaint.  The Class Defendants filed a motion to dismiss asserting, *inter alia*, lack of standing.  *Id.* at 247.  This Court granted the motion to dismiss filed by the single defendant with which the named plaintiff had dealings (CBC Innovis, Inc.), dismissed all defendants from the lawsuit, and denied all other pending motions as moot.  *Id.*  On appeal, two of the Class Defendants filed a motion to dismiss the

appeal for lack of standing by the named plaintiff.  *Id.*[11]  The Fifth Circuit explained that "[b]ecause standing is a jurisdictional requirement, we must address it before considering the merits of [a] claim."  *Id*. at 247-48.  Since Class Defendants had no dealings with the named plaintiff, the Fifth Circuit ruled that the Class Defendants "have caused [the named plaintiff] no cognizable injury".  *Id*. at 247.  According to the Fifth Circuit, the named plaintiff "lacks standing to bring claims against any Defendant other than [the defendant with which he dealt]"  *Id*. at 245.  The Fifth Circuit consequently granted the Class Defendants' motion to dismiss the appeal, dismissed the named plaintiff's claims against the Class Defendants, and ruled that the named plaintiff's "claims against the Class Defendants . . . must be dismissed for lack of standing."  *Id*. at 248 (citations omitted).

The same result from *Audler* applies here.[12]  Just as the named plaintiff in *Audler* lacked Article III standing to sue the Class Defendants with which he had not dealt, the Original Plaintiffs in the AMC lacked Article III standing to sue the Newly Added Defendants with which they had not dealt since the Original Plaintiffs lived in housing units built by other defendants.

If the named plaintiff does not have Article III standing against a particular defendant, then that defendant must be dismissed based on lack of subject matter jurisdiction.  *Audler*, 519 F.3d at 247-48 (dismissing multiple defendants against whom named plaintiff had no standing); *see also Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed in any cause.  Jurisdiction is the power to declare the law,

---

[11] The Motion to Dismiss the Appeal filed by two of the Class Defendants in *Audler* is attached to Rec. Doc. 259 as Exhibit "1".

[12] By granting the motion to dismiss the appeal arising from a case that had itself been decided on a motion to dismiss, the Fifth Circuit reached its *Audler* decision on Article III standing based solely on the pleadings - *i.e.*, on the same basis that a district court would decide a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based solely on the complaint.

and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."); *Stockman v. Federal Election Commission*, 138 F.3d 144, 151 (5th Cir. 1998) ("It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking."); *Stanley v. CIA*, 639 F.2d 1146, 1157 (5th Cir. 1981) ("A federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction.").

C.   **Because None of the Original Plaintiffs Had Standing Against the Newly Added Defendants, the Amended AMC Impermissibly Adds New Plaintiffs to Try to Manufacture Standing Retroactively And Must be Dismissed.**

The Amended AMC adds, *inter alia*, thirteen (13) new Plaintiffs who allege that they lived in housing units built by one of the seven Newly Added Defendants.  As demonstrated herein, Plaintiffs' attempt to manufacture standing retroactively must fail.[13]

Since the Original Plaintiffs had no Article III standing to sue the Newly Added Defendants, the only course of action a court may take is to dismiss the claims against those defendants for lack of standing.  *See Warth*, 422 U.S. at 501-02; *Audler*, 519 F.3d at 247-48; *Lang*, 154 F.3d at 222 n.28; *Weaver*, 632 F.2d at 463 n.6.  On three separate occasions, the Fifth Circuit has affirmed the denial of a motion to amend to add plaintiffs to try to retroactively create standing.  Further, under the law of the Fifth Circuit, standing must exist *at the time of the filing of the complaint* and may not be created retroactively.

---

[13]  Indeed, Plaintiffs essentially admitted the purpose of the Amended AMC was to try to manufacture standing against the Newly Added Defendants in this case:

> The proposed amended pleading not only clarifies the original Master Complaint by demonstrating for the record the individual Article III standing of each previously-named plaintiff and proposed class representative *vis-à-vis* a named defendant manufacturer, but also seeks to add proposed class representatives so that the same individual standing on the part of an actual claimant and class member can be demonstrated for each and every named defendant manufacturer . . . .

PSC Memorandum in Support of Motion for Leave to File Second Supplemental and Amended Master Complaint (Rec. Doc. 657-2) ("PSC Memorandum"), p. 5.

01702754.4

      **i.**     **Under Binding Fifth Circuit Authority, a Plaintiff Without Standing May Not Subsequently Amend His Complaint to Add a Plaintiff With Standing.**

The Fifth Circuit, on three separate occasions, has refused to allow a plaintiff without standing to amend the complaint to add a new plaintiff with standing, and instead has dismissed the case. *See Summit Office Park, Inc. v. U.S. Steel Corp.,* 639 F.2d 1278, 1284 (5th Cir. 1981) ("*Summit*"); *Federal Recovery Services, Inc. v. U.S.A.,* 72 F.3d 447, 453 (5th Cir. 1996) ("*Federal Recovery*"*)*; *Aetna Casualty & Surety Co., et al. v. Hillman*, 796 F.2d 770, 774 (5th Cir. 1986) ("*Aetna*"*)*.

In *Summit*, an indirect purchaser brought a purported class action asserting an antitrust claim against manufacturers of reinforced steel. *Summit*, 639 F.2d at 1279-80. After the United States Supreme Court ruled that an indirect purchaser cannot make a federal antitrust claim, the defendants filed a motion for summary judgment. *Id.* at 1280-81. Before the court ruled on that motion, the plaintiff filed a motion for leave to file an amended complaint with new direct purchaser plaintiffs. *Id.* at 1281. The Fifth Circuit affirmed the district court's denial of the plaintiff's motion to amend: "[W]e hold only that where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint . . . ." *Id.* at 1282. The Original Plaintiffs have no standing to assert a claim against the Newly Added Defendants, and thus have no standing to amend their AMC to assert a claim against the Newly Added Defendants.

In *Aetna*, a plaintiff, which was found to have no standing, tried to amend the complaint to add a party with standing. *Aetna*, 796 F.2d at 773-74. The Fifth Circuit again refused to allow the amendment and affirmed dismissal of the case. *Id*. at 774-75.

Finally, in *Federal Recovery*, a corporate plaintiff was found to have no standing to make a False Claims Act claim, and the corporation tried to amend to cure the jurisdictional defect by

01702754.4

seeking to add a new plaintiff. *Federal Recovery*, 72 F.3d at 448, 452. The Fifth Circuit ruled that the original plaintiff could not amend the complaint to add a new plaintiff:

> In *Aetna* . . . , we held that Rule 15 does not permit a plaintiff from amending its complaint to substitute a new plaintiff in order to cure the lack of subject matter jurisdiction.
>
> * * *
>
> "Rule 15 . . . do[es] not allow a party to amend to create jurisdiction where none actually existed."

*Id.* at 453 (citations omitted).[14]

In both *Summit* and *Aetna*, the Fifth Circuit further found that the amendment was properly denied because the new plaintiffs' lawsuit was like a new lawsuit. *Summit*, 639 F.2d at 1282-84; *Aetna*, 796 F.2d at 774-75. The Fifth Circuit has noted that claims against new defendants "change[] the character of the litigation so as to make it substantially a new suit," and that adding a new defendant as a result does not generally relate back to the filing of the original complaint for statute of limitations purposes. *Braud v. Transport Service Co. of Ill.,* 445 F.3d 801, 806 (5th Cir. 2006) (citation omitted). Here, Plaintiffs' Amended AMC creates a new lawsuit – claims by new plaintiffs against Newly Added Defendants that arise out of transactions different from those of the Original Plaintiffs, and purporting to create standing to sue for the

---

[14] District courts within the Fifth Circuit have also consistently held that a plaintiff without standing may not amend his complaint to add a new plaintiff to create standing retroactively. *See e.g., Levin v. Minnesota Life Ins. Co*., No. H-07-1330, 2008 WL 2704772, at *6 (S.D. Tex. July 7, 2008) (granting defendant's motion to dismiss named plaintiff's claim for lack of Article III standing, denying plaintiff's motion for leave to amend complaint to add a new class representative plaintiff, and explaining that because plaintiff "has no standing to assert any claim against Defendant, [plaintiff] also lacks standing to amend the complaint"); *Bhandari v. Cadence Design Systems, Inc.,* 485 F. Supp. 2d 747, 750 (E.D. Tex. 2007) ("*Bhandari*") ("A plaintiff who does not have standing to assert a claim against the defendant does not have standing to amend the complaint and control the litigation by substituting new plaintiffs. . ."); *Jackson v. Fidelity Nat'l Title Ins. Co.,* No. 3:07-CV-1706-G, 2008 WL 508489, at *3-4 (N.D. Tex. Feb. 26, 2008) ("without standing to bring suit, the plaintiff lacks the power to bring in a new plaintiff").

first time.  *See also Bhandari,* 485 F. Supp. 2d at 750 (substituting a new plaintiff with standing is "akin to initiating a new lawsuit with a new plaintiff and a new cause of action").[15]

In its August 1st Order, this Court recognized the existence of these three Fifth Circuit cases (*Summit, Federal Recovery,* and *Aetna*), but distinguished them on the mistaken belief that "Plaintiffs in this MDL are not seeking to substitute new plaintiffs to create standing."  August 1st Order, p. 10; *see* p. 1, *supra*.  Because the Amended AMC actually does add one hundred forty (140) new plaintiffs in an effort to create standing against the Newly Added Defendants, and because no Original Plaintiff has ever had Article III standing against the Newly Added Defendants, the Fifth Circuit cases are directly on point.  The Amended AMC, which adds new plaintiffs with purported standing to sue the Newly Added Defendants, should be dismissed.

> ii.   **The Fifth Circuit Has Clearly Stated That Standing Must Exist Against a Defendant as of the Date of the Filing of the Complaint.**

"[S]ubject matter jurisdiction is tested *at the time of the filing of the complaint.*"  *Whatley v. Resolution Trust Corp.,* 32 F.3d 905, 907 (5th Cir. 1994) (emphasis added).  The Fifth Circuit has more particularly stated:  "As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint."  *Kitty Hawk Aircargo, Inc., v. Chao,* 418 F.3d 453, 460 (5th Cir. 2005) ("*Kitty Hawk*") (citation omitted).  The Fifth Circuit in *Kitty Hawk* further stated that a plaintiff without standing at the time of the filing of the lawsuit "cannot rely on events that unfolded after the filing of the complaint" to

---

[15] The Article III requirements are not procedural niceties, but, rather are fundamental constitutional principles that define and limit the role of federal courts within the Constitutional framework.  *See Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.") (citations omitted); *Howery v. Allstate Insurance Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (federal courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum.") (citations omitted).  **These issues also have important substantive ramifications on the Newly Added Defendants' defenses, including proper venue, prescription, and statute of limitations.**

establish standing and noted that the Supreme Court has explained that "acts occurring after commencement of the suit cannot retroactively create jurisdiction." *Kitty Hawk*, 418 F.3d at 460 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 570 n.4 (1992)).

Plaintiffs here are trying to do exactly what this controlling Fifth Circuit caselaw prohibits. Plaintiffs filed a lawsuit against an entire industry without naming plaintiffs with actual standing to sue the Newly Added Defendants. Instead, Plaintiffs rely on "acts occurring after the commencement of the suit" – namely, their purported post-filing identification of new additional plaintiffs with alleged standing to sue – in their attempt to create subject matter jurisdiction retroactively. Under the binding authority previously discussed, the Amended AMC, which adds new plaintiffs with claims against the Newly Added Defendants, must be dismissed.

### iii.   *Warth v. Seldin* **Does Not Permit Plaintiffs to Cure Their Lack of Standing by Adding New Plaintiffs.**

This Court ruled that when the possible lack of subject matter jurisdiction is based on lack of standing, a plaintiff may amend his complaint "to further particularize the allegations of fact deemed supportive of *plaintiff's* standing." August 1st Order, p. 11 (citing *Warth*, 422 U.S. at 501-02) (emphasis added). That *Warth* language is clearly referring to the plaintiff already in the case. *Warth* thus allows an *original* plaintiff to amend his complaint to state more particularized facts supporting *his* standing. So, for example, paragraph 6 of the Amended AMC, which "matches" the Original Plaintiffs with particular defendants in this case, is appropriate. Amended AMC ¶ 6, pp. 4-8. However, in paragraph 7 of the Amended AMC, Plaintiffs add one hundred forty (140) *new* Plaintiffs, including thirteen (13) new Plaintiffs who purportedly "match" with one of the seven Newly Added Defendants. Amended AMC ¶ 7, pp. 8-18. This extra step of adding new plaintiffs is not condoned by the language in *Warth*, which only addresses the original plaintiffs.

16

01702754.4

**D.      The Amended AMC Prejudices The Newly Added Defendants.**

The Amended AMC will enormously prejudice the Newly Added Defendants for five reasons.

First, allowing the Original Plaintiffs to amend in one hundred forty (140) new Plaintiffs with alleged standing to sue for the first time will permit Plaintiffs to avoid their obligation to file a new lawsuit with proper plaintiffs and in a proper venue.

Second, Plaintiffs will artificially attempt to argue that such amendment tolls the prescriptions/statute of limitations period when no plaintiff has yet filed a proper case against the Newly Added Defendants.

Third, the Amended AMC will wrongfully deny the Newly Added Defendants their right to challenge venue and their inclusion in this MDL that has been focused on travel trailers rather than manufactured homes.

Fourth, since the AMC was originally filed on March 18, 2008 (over 7 months ago), Newly Added Defendants have been required to undertake the following action to prepare their defense in this litigation:

1) Retain experts;
2) Develop testing protocols;
3) Meet THU testing schedules for occupied and previously occupied units;
4) Identify and test THUs that were never occupied;
5) Object and respond to class certification discovery;
6) Begin process of objecting and responding to merits discovery;
7) Prepare clients for prospect of a Rule 30(b)(6) deposition;
8) Begin developing evidence to oppose class certification;
9) Gather documents for production;
10) Gather insurance policies for production; and
11) Filing preservation lists and motions for summary judgment.

These defensive steps have obviously imposed tremendous costs, fees and burdens on the Newly Added Defendants, despite the fact that not a single Original Plaintiff in the AMC had Article III standing against them.  This is prejudice per se.

01702754.4

Fifth, the Newly Added Defendants face continuing burdens and costs in light of the impending class discovery cutoff and developing a defense to Plaintiffs' Motion for Class Certification.[16]

Article III is designed to protect against these very types of burdens and to avoid such inequities. In particular, a plaintiff must have Article III standing against a defendant before that defendant is required to undertake its substantive defense. The Original Plaintiffs in the AMC did not have Article III standing against the Newly Added Defendants so the Newly Added Defendants should not have been required to undertake their substantive defense in this litigation.[17]

## II. PLAINTIFFS' CLAIMS AGAINST THE NEWLY ADDED DEFENDANTS ARE IMPROPERLY JOINED WITH THE CLAIMS MADE AGAINST THE ORIGINAL DEFENDANTS.

The Amended AMC is also fatally flawed because Plaintiffs have improperly joined any claims that one Plaintiff might have against one Defendant with the claims that other unrelated Plaintiffs may have against other unrelated Defendants, a defect that is underscored by the Plaintiffs' following actions: (1) the improper filing of an action against the Newly Added Defendants proceeding in the MDL directly; (2) the failure to file individual complaints on

---

[16] Pretrial Order No. 17 (Rec. Doc. 700) ¶ 2, 4. PSC has failed to provide Plaintiff Fact Sheets ("PFS") for four (4) of the thirteen (13) new Plaintiffs who allegedly lived in a housing unit built by one of the Newly Added Defendants: Lonnie McGallion, Normal Wilson, Wilford Jackson, and Mauro Lopez. In response to a question from this Court at the August 15, 2008 status conference, PSC incorrectly stated that all of the PFS for the proposed Plaintiffs were in the possession of the defendants. Transcript, p. 15. In addition, several of the PFS were provided well after August 22, 2008 and several of the PFS remain totally deficient.

[17] As set forth in SunRay RV, LLC's Memorandum in Support of Motion for Summary Judgment (Rec. Doc. 295-2), and as already recognized by Plaintiffs in their First Supplemental and Amended Master Complaint (Rec. Doc. 379), SunRay RV, LLC did not manufacture or sell any housing units to FEMA in the aftermaths of Hurricanes Katrina and Rita. Rather, SunRay RV, LLC merely purchased the assets, and not the liabilities, of another corporate entity. This Court's July 17, 2008 Order (Rec. Doc. 541) recognized that, "Plaintiffs' First Supplemental and Amended Master Complaint (Rec. No. 379) . . . dismisses . . . SunRay RV, LLC from the AMC and the Pujols complaints." This point is raised because the Amended AMC asserts that two plaintiffs, Mary Harris and Norman Wilson, lived in housing units manufactured by SunRay RV, LLC. Amended AMC, pp. 10, 16. Newly Added Defendants point out that SunRay RV, LLC is still not a proper party to this litigation.

behalf of individual plaintiffs against individual manufacturers against which they have actual claims; and (3) the failure to file complaints in appropriate jurisdictions and venues, the effect of which has been to completely circumvent MDL transfer procedures provided for in the MDL enabling statute and the rules promulgated thereto.

As a threshold matter, "Rule 20 requires that a right to relief be asserted against each defendant in order to allow their joinder." Fed. R. Civ. P. 20(a); *see also* 7 CHARLES ALAN WRIGHT & ARTHUR MILLER ET AL, FEDERAL PRACTICE AND PROCEDURE § 1657 (3d ed. 2008). Assuming this threshold inquiry is met, Rule 20 allows for the joinder of multiple plaintiffs or defendants only when there are claims "arising out of the same transaction, occurrence, or series of transactions or occurrences . . . ."[18]   Because none of the Original Plaintiffs have Article III standing against the Newly Added Defendants, the threshold requirement for Rule 20 joinder has not been met – the joinder of Plaintiffs and Defendants in this matter is facially improper.   In addition, the Amended AMC fails to satisfy the basic requirement that the claims by Plaintiffs against the Newly Added Defendants arise from the same transaction or occurrence.[19]

### A.   Plaintiffs' Claims Do Not Arise from the Same Transaction or Occurrence.

---

[18]   Additionally, there must be "questions of law or fact common to all these persons" in the action.  FED R. CIV. P. 20(a).  Because the same transaction or occurrence requirement is clearly not met here, this Court need not decide whether Plaintiffs have also met this second requirement.

[19]   Plaintiffs' Amended AMC is a pleading "shortcut," and in addition to misjoinder, Plaintiffs' improper amalgamation of parties and claims creates innumerable other procedural problems.  For instance, venue based on the convenience of the parties and witnesses is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   For each Plaintiff's claim, there is but one manufacturing defendant – the defendant that manufactured the housing unit that allegedly harmed the particular Plaintiff.  As a result, in every instance there may be two districts in which venue would be proper: (1) the district in which the Plaintiff occupied the housing unit and his alleged harm occurred, 28 U.S.C. § 1391(a)(2); and (2) the district in which the housing unit the Plaintiff occupied was manufactured, 28 U.S.C. § 1391(a)(1)-(2).  Thus, for every Plaintiff who occupied a housing unit outside this Court's district, both the district in which the Plaintiff occupied the housing unit and the district in which the housing unit was manufactured would be more convenient for the parties and witnesses and would better serve the interest of justice as opposed to the Eastern District of Louisiana.  Plaintiffs' Amended AMC appears to intentionally ignore these very important issues in an attempt to avoid having to properly plead and file their claims.

19

Courts often rule that plaintiffs, who join together to file suit, fail to satisfy Rule 20 when their claims do not arise out of a single transaction or occurrence.  For example, in *Campo v. State Farm and Cas. Co.*, No. 06-2611, 2007 WL 2155792 (E.D. La., July 26, 2007), several plaintiffs, who held homeowner's policies for their residences with defendant State Farm, joined together in a single complaint to allege that State Farm improperly adjusted and processed their claims for insurance proceeds following Hurricane Katrina.  Recognizing the plaintiffs' claims involved different properties, different insurance adjusters, different witnesses, different combinations of wind and flood, different injuries, different policies and different defenses, the court severed the claims of the improperly joined plaintiffs.  *Id.* at *3; *see also, Rohr v. Metropolitan Ins. & Cas. Co.*, No. 06-10511, 2007 WL 163037, at *3 (E.D. La., Jan. 17, 2007) (quoting *Comer v. Nationwide Mut. Ins. Co.*, No. 1:05CV436-LTD-RHW, 2006 WL 1066645, at *2 (S.D. Miss., Feb. 23, 2006) ("in another case involving 'hundreds of Plaintiffs [who were] joined in a single lawsuit, each asserting claims that ar[ose] out of damage to [different] property caused by Hurricane Katrina,' the court concluded that the Plaintiffs should be required to file separate complaints."))

Similarly, Plaintiffs in the instant case allegedly:

- Lived in different housing units in different places – *i.e.*, all Plaintiffs did not reside in a single housing unit in a single location;

- Lived in different housing unit categories – *i.e.*, Plaintiffs resided in either a travel trailer, a park model, or a manufactured home;

- Lived in different housing units manufactured by different companies at different plants at different times – *i.e.*, Plaintiffs claim that over sixty (60) different companies built one or more housing unit types that are at issue in this case;

- Have experienced a variety of different injuries and will presumably present different witnesses to prove their purported injuries and the remaining elements of their claims.

As demonstrated above, because Plaintiffs' claims are artificially levied against an entire industry, and not against a single company defendant (as was the case in *Vioxx*), they cannot satisfy Rule 20 scrutiny and are improperly joined in this action.

**B.     The Newly Added Defendants Are Also Wrongfully Joined With The Other Defendants And With Each Other.**

Courts apply the very same "transaction or occurrence" analysis to the joinder of party defendants. *Compare* FED. R. CIV. P. 20(a)(1)(A) and 20(a)(2)(A). For example, in *Pergo, Inc. v. Alloc., Inc.,* 262 F.Supp. 2d 122 (S.D.N.Y. 2003), the owner of certain patents sued competitor-defendants for infringement, which prompted defendants' motion to sever. In granting the defendants' motion, the court held, "the fact that two parties may manufacture or sell similar products, and that the sales or production may have infringed the identical patent owned by the plaintiffs is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)." *Id.* at 128. Regardless of the manner in which any other defendant purportedly designed, manufactured, tested, marketed, distributed, licensed and sold housing units to FEMA, that has nothing to do with what each Newly Added Defendant did or did not do with respect to the housing units they sold to FEMA.[20]  Consequently, Plaintiffs'

---

[20] Notably, Plaintiffs' improvident attempt to join the Newly Added Defendants demonstrates the clear distinctions between the manufactured home defendants and the existing travel trailer defendants -- distinctions that were recognized at length by this Court in its October 3, 2008 Order and Reasons granting in part, and denying in part, the United States of America's Motion to Dismiss (Rec. Doc. 717). October 3rd Order, pp. 4-6. Unlike the travel trailers, every aspect of the manufactured home industry is regulated by HUD. In fact, many years ago, HUD both investigated and wrestled with the formaldehyde issues. As a result of that investigation, HUD has established formaldehyde standards, regulates formaldehyde emissions in building products, requires HUD inspection and certification of the units for compliance prior to leaving the manufacturing plant, and requires that formaldehyde

*(Footnote continued on next page)*

efforts to attack the entire industry[21] through selected individuals, who have alleged claims against certain Defendants but not others, should fail – any alleged mistakes made by one company, if any, has no bearing on whether other companies did or did not make their own mistakes.

**C.      Joinder Is Improper Regardless of Class Allegations.**

The fact that Plaintiffs bring this case as a class action does not cure their Rule 20 problems.  For example, in *Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151 (2d Cir. 1974) ("*Nassau County*"), four associations of insurance agents filed a class action on behalf of their agents against one hundred and sixty-four (164) insurance companies alleging the termination of agency contracts in violation of securities laws through the imposition of requirements such as selling new lines of insurance, meeting higher volume requirements, etc.  The court held that "by joining the 164 defendant companies in one action they have failed to comply with Rule 20(a) of the Federal Rules of Civil Procedure relating to joinder of defendants."  *Id.* at 1154.  The court recognized:

> Here there has been no showing of a right to relief arising from the same transaction or series of transactions.  No allegation of

---

(*Footnote continued from previous page*)
warnings be placed in each home.  Additionally, HUD regulations address ventilation systems and discuss indoor air exchange requirements which are not applicable at all to the travel trailer industry.

[21] The Fifth Circuit has recognized that claims against an industry based upon the theory of market share liability are not available under the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51, *et seq*.  *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245 (5th Cir. 1997).  Similarly, courts in Alabama, Texas and Mississippi have either rejected outright or refused to apply market share liability.  *See, e.g., Franklin Co. School Bd. v. Lake Asbestos of Quebec, Ltd.,* No. 84-AR-5435-NW, 1986 WL 69060, *5-6 (N.D. Ala. Feb. 13, 1986); *Spring Branch Independent School Dist. v. NL Industries, Inc.,* No. 01-02-01006-CV, 2004 WL 140403, at *4 (Tex. App., June 24, 2004) (it is "bedrock principle of Texas law that a plaintiff must identify the manufacturer of the product that allegedly injured it") (citing *Gaulding v. Celotex Corp.,* 772 S.W. 3d 66, 68 (Tex. 1989)); *Jones v. NL Industries,* No. 4:03 CV 229 MB., 2006 WL 1487026, at *2 (N.D. Miss., May 24, 2006).  As such, Plaintiffs must <u>show</u> that a housing unit manufactured by a Newly Added Defendant was the direct proximate cause of any alleged harm or damage to a specifically named Louisiana, Alabama, Texas or Mississippi Plaintiff.  Otherwise, every named Plaintiff lacks standing to bring an action against every Newly Added Defendant.

> conspiracy or concert of action has been asserted.  No connection at all between the practices engaged in by each of the 164 defendants has been alleged.   Their actions as charged were separate and unrelated, with terminations at different times for different reasons with regard to different agents.

*Id.*; *see also Cohen v. D.C. Nat'l Bank*, 59 F.R.D. 84, 87 (D.D.C. 1972) (in a putative class action, "the plaintiffs may not join a defendant for the purpose of asserting a claim which is not the claim of any named plaintiffs.").  The same is true with respect to the over sixty (60) named Defendants in the present case, and thus the Newly Added Defendants are improperly joined in this matter.

Parties that are misjoined may be dropped from the lawsuit.[22]  *See* FED. R. CIV. P. 21. Thus, the only solution under Rule 21 is to dismiss all of the Newly Added Defendants from this action and allow this civil action to continue only as to properly named Defendants.  *Nassau County*, 497 F.2d at 1154-55 (proper remedy for misjoinder of thousands of claims is dismissal).

## III.   INCORPORATION OF ADDITIONAL GROUNDS AND DEFENSES.

The  Newly Added Defendants herein specifically adopt and join the motions and briefs presented in motions to dismiss the AMC and Amended AMC filed by other Defendants and assert the following additional Rule 12 defenses:

- · Failure to State a Claim Upon Which Relief May Be Granted;

- · Failure of Service of Process;

- · Insufficiency of Service of Process;

- · Lack of Personal Jurisdiction;

- · Improper Venue;

---

[22] Alternatively, Rule 21 allows misjoined claims to be severed and proceeded with separately, but that is not an option here because no Original Plaintiff in the AMC had Article III standing to assert a claim against any Newly Added Defendant.

23

- Inconvenient Venue;

- Plaintiffs' "failure to warn" claim under the Louisiana Products Liability Act fails as a matter of law as to the manufactured housing defendants. As Plaintiffs' counsel admits in the AMC, HUD mandated a warning concerning formaldehyde exposure and promulgated the text of the warning in the Code of Federal Regulations. Under *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947), all persons are charged with constructive knowledge of the published federal laws, rules and regulations. Under Louisiana Civil Code Article 5, no person may claim ignorance of the law. Even if one or more of the Plaintiffs could demonstrate that there was no HUD-mandated warning posted in one of the manufactured houses, the Plaintiffs' claim of a failure to warn would still fail as a matter of law because they are charged with knowledge of the warning in any event because it is published in the Code of Federal Regulations.; and

- Federal Rule of Civil Procedure Rule 12(B) Preservation Lists Filed on Behalf of Existing Defendants.

## <u>CONCLUSION</u>

The Newly Added Defendants respectfully ask this Court to consider the ramifications of allowing the Amended AMC adding one hundred forty (140) new Plaintiffs for the sole purpose of attempting to manufacture subject matter jurisdiction retroactively over the Newly Added Defendants where none existed. Plaintiffs' counsel in this case chose to sue an entire industry without having Plaintiffs with actual Article III standing against the Newly Added Defendants, with the hopes of possibly later finding a Plaintiff with Article III standing. Indeed, if allowed, why shouldn't *every* plaintiff's counsel in the future with a client having a claim against *one* defendant just file a class action against the entire industry, with the hopes of eventually finding a plaintiff with Article III standing to amend into the case down the road? Plaintiffs' Amended AMC is an affront to the threshold constitutional inquiry required by Article III, directly contrary to the Fifth Circuit's holdings in *Audler*, *Summit, Federal Recovery*, and *Aetna*, and directly contrary to this Court's August 1st Order.

01702754.4

The Original Plaintiffs never had Article III standing against the Newly Added Defendants.  Under those circumstances, the only appropriate action for this Court is to dismiss the Newly Added Defendants from this civil action, just as the Fifth Circuit dismissed the Class Defendants in *Audler*.  The Amended AMC seeks to manufacture jurisdiction retroactively against the Newly Added Defendants.  Article III simply does not, and *should not*, allow Plaintiffs without Article III standing against the Newly Added Defendants to amend their complaint to add new Plaintiffs who may have Article III standing against the Newly Added Defendants.

For all of the foregoing reasons, the Newly Added Defendants' Motion to Dismiss should be GRANTED.

Respectfully submitted by:


/s/ *James K. Carroll.*
One of the Attorneys for Newly Added Defendants

**OF COUNSEL**
Thomas W. Thagard, III                    James K. Carroll (#3898), T.A.
Lorrie L. Hargrove                             Stephanie D. Skinner (#21100)
Edward A. "Ted" Hosp                      Kati Cox Weaver (#30878)
Edward S. Sledge IV                           **FOWLER RODRIGUEZ & CHALOS**
**MAYNARD, COOPER & GALE, P.C.**   400 Poydras Street, 30th Floor
2400 Regions/Harbert Plaza               New Orleans, Louisiana 70130
1901 Sixth Avenue North                   Telephone: 504-523-2600
Birmingham, Alabama 35203-2616        Fax: 504-523-2705
Telephone 205-254-1000
Fax: 205-254-1999

01702754.4

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2008, I electronically filed the foregoing Memorandum in Support of Motion to Dismiss Second Supplemental and Amended Master Complaint with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document by first-class mail to all counsel of record who are non-CM/ECF participants.

/s/*James K. Carroll*
Of Counsel

01702754.4