UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER      *    MDL NO. 07-1873
FORMALDEHYDE PRODUCT     *
LIABILITY LITIGATION         *    SECTION "N-4"
                          *
                          *    JUDGE KURT D. ENGELHARDT
                          *
THIS DOCUMENT IS RELATED TO   *    MAG. JUDGE KAREN WELLS ROBY
THE ADMINISTRATIVE MASTER    *
COMPLAINT                   *
                          *
AND TO                      *
                          *
STEPHANIE G. PUJOL, ET AL V.     *
THE UNITED STATES OF AMERICA,   *
ET AL, USDC No. 08-2317, "N-4"     *

---

## RESPONSE OF DEFENDANT, PHILIPS PRODUCTS INC., TO PLAINTIFFS' FIRST SET OF MASTER INTERROGATORIES TO ALL NON-GOVERNMENTAL DEFENDANTS

NOW INTO COURT, through undersigned counsel, comes Philips Products Inc., responding to plaintiffs' interrogatories as follows.

### GENERAL OBJECTIONS

Respondent objects to Plaintiffs' Instructions and Definitions on the following cumulative or alternative grounds.

1.     The Federal Rules of Civil Procedure do not authorize the proponent of discovery pleadings to define, delineate or otherwise specify the terms and

-1-



EXHIBIT
B

manner of the respondent's answers; but merely authorize a party to make inquires to which the opposing party is obliged to respond within the scope of discovery prescribed by and in the manner required by those rules.

2.   They unnecessarily and unreasonably expand the number of interrogatories beyond the maximum number authorized by the rules.

3.   They are overly broad to the extent that they request documents and information covering a number of years and many unrelated products which do not contain formaldehyde, and have no relevance to the claims raised in this litigation.  As such, compliance with these requests would impose on respondent an unduly burdensome and expensive task which would produce information not reasonably calculated to lead to the discovery of admissible evidence.

4.   The requests may impose upon respondent an obligation to identify, locate and review documents or other information not within its immediate possession or readily available to it, and thereby imposes an unreasonably harsh and expensive burden on respondent to obtain this information and to respond to these requests.

5.   Respondent objects to the requested discovery to the extent to which it may require that respondent locate and obtain documents or other information that is not in its immediate possession, which it does not currently have on file, or which is in the possession of others over whom respondent has no

-2-

control.

6.    Respondent objects to the discovery requests insofar as they might call for a legal conclusion or for production of documents or other information protected by the attorney-client privilege or the work product privilege.

Subject to and without waiving the foregoing objections, Philips Products, Inc. responds to plaintiffs' discovery requests as follows:

**INTERROGATORY NO. 1**:

Please state your market share of the total number of manufactured housing units sold to FEMA, DHS and/or any other governmental agency in response to hurricanes Katrina and Rita.

**ANSWER:**

Zero.

Philips Products, Inc. does not, and at no time did it, manufacture, broker, sell or supply housing units of any kind to anyone.  Philips does not now have, nor has it at any other time had, any contracts to supply housing units to FEMA, DHS, or any other governmental agency.

Philips Products, Inc. manufactures and sells doors, windows, range hoods and bathroom exhaust fans for use in Manufactured Housing[1]; and doors, range hoods and

---

[1]    A Manufactured Housing unit is one built to HUD construction standards and intended to be set up on and remain indefinitely at a designated site and used as long-term or permanent housing.

bathroom exhaust fans for use in Recreational Vehicles[2].

The only formaldehyde-containing materials that have been used in any of Philips' Products are medium density fiberboard ("MDF") or plywood, from which are or were made door jambs and headers on four (4) of the doors made for use in Manufactured Housing units.  None of Philips' other products incorporate any formaldehyde-containing materials.

**INTERROGATORY NO. 2:**

Please identify and describe any contracts concerning manufactured housing units in which you and FEMA, DHS and/or any other governmental agency are a party from January 1, 1992 to the present.

**ANSWER:**

Philips had no contracts concerning Manufacturing Housing units with FEMA, DHS or any other governmental entity.  See also answer to NO. 1, above.

**INTERROGATORY NO. 3:**

Please state the total number of manufactured housing units sold by you to FEMA, DHS and/or any other governmental agency and state the total amount of compensation that you received from FEMA, DHS and/or any other governmental agency in return for manufacturing and/or providing manufactured housing units in response to hurricanes Katrina and Rita.

---

[2]     A Recreational Vehicle is a wheel-mounted, towable trailer, which can be moved
        from place to place and is intended to be used as short-term, temporary housing.

**ANSWER:**

Zero.  Philips did not sell manufactured housing units to FEMA, DHS or any other entity.  See also answer to NO. 1, above.

**INTERROGATORY NO. 4:**

Please identify and describe any contracts, subcontracts, agreements, purchase orders, invoices, or any other documents by and between you and any raw material supplier/manufacturer, component part supplier/manufacturer, and finished materials supplier/manufacturer whose materials contained formaldehyde or formaldehyde-based resins used in the production of housing units manufactured by you from January 1, 1992 to the present.

**ANSWER:**

Philips purchases MDF or plywood from a distributor, but has no contracts or subcontracts.  Philips determines the specifications, negotiates the price, terms and delivery, and orders by purchase order.  The supplier invoices Philips for the materials.

**INTERROGATORY NO. 5:**

Please identify and describe the location of the facilities where each manufactured housing unit was manufactured by you for sale to FEMA, DHS and/or any other governmental agency for units manufactured in response to hurricanes Katrina and Rita.

**ANSWER:**

See answer to NO. 1, above.  Philips has manufacturing facilities in Selinsgrove, PA, Chester, SC, Clarksville, TX, Asheville, NC, Stayton, OR and Elkhart, IN.

-5-

**INTERROGATORY NO. 6:**

Please identify by name and job title each manager/supervisor employed by you who participated in any aspect of the design, manufacture, and/or the development of the installation protocol for any housing unit manufactured by you for sale to FEMA, DHS and/or any other governmental agency in response to hurricanes Katrina and Rita including, but not limited to, those persons in quality control, engineering, design, research and development.

**ANSWER:**

See answer to NO. 1, above.

**INTERROGATORY NO. 7:**

Please identify and describe the quality control and/or quality assurance processes and/or procedures concerning materials containing formaldehyde or formaldehyde-based resins at each of your manufacturing facilities.

**ANSWER:**

This interrogatory is not applicable to Philips.  Philips does not process or handle formaldehyde in the chemical or raw state.  Philips follows the mandates of the U.S. Department of Housing and Urban Development and understands that those suppliers from whom it purchases door jambs and headers made of MDF and plywood comply with those standards.  Philips is certified by third-party testing to sell products that meet HUD standards.

-6-

**INTERROGATORY NO. 8:**

Please identify and describe all documents concerning the design, specifications, materials containing formaldehyde, assembly of units, and installation, and use of each type of housing unit manufactured by you from January 1, 2005 to the present. Please include in your response all drawings, schematics, material lists, lists of component part manufacturers/vendors, quality control inspections, shop documents and assembly line documents.

**ANSWER:**

Not applicable.  See also answer to NO. 1, above.

**INTERROGATORY NO. 9:**

Please identify and describe all actions taken to cure materials and products containing formaldehyde or formaldehyde-based resins and identify and describe all communications you had with FEMA, DHS, any other governmental agency and/or any other manufacturer or supplier in this regard concerning housing units manufactured in response to hurricanes Katrina and Rita.

**ANSWER:**

This interrogatory is generally not applicable to Philips.  Philips does not "cure" any products containing formaldehyde or formaldehyde-based resins.  Philips has had no communications with FEMA, DHS or any other governmental agency or manufacturer or supplier concerning housing units manufactured in response to Hurricanes Katrina and Rita.  See also answer to NO. 1, above.

-7-

**INTERROGATORY NO. 10:**

Please identify and describe the chemical composition of any materials which contain formaldehyde or formaldehyde-based resins, including, but not limited to, particle board, press board, pressed wood, engineered wood, composite wood, plywood, fiberboard, and/or adhesives or any other component in any housing unit manufactured by you from January 1, 1992 to the present.

**ANSWER:**

Philips has no specific knowledge of the chemical composition of the MDF or plywood from which are made door jambs and headers which it purchases from third-party suppliers. It is generally aware that information on the composition of MDF and plywood resins may be found on Material Safety Data Sheets, and it relies upon the assurances of suppliers of those products that they comply with all applicable standards.

**INTERROGATORY NO. 11:**

Please identify and describe all entities who supplied you with materials containing formaldehyde or formaldehyde-based resins used by you to manufacture housing units from January 1, 1992 to the present.

**ANSWER:**

Philips buys door jambs and headers made from medium density fiberboard or plywood, which are already cut to length and painted. Philips then cuts and drills the material to accommodate door hinges and the door lock bolt. During the period 2005 through 2007, Philips purchased door jambs and headers from the following suppliers.

-8-

GM Wood Products                    Robert Weed Plywood
P.O. Box 266                        P.O. Box 487
531 Clay Street                     Bristol, IN 46507
Newaygo, MI 49337

## INTERROGATORY NO. 12:

Please identify and describe all compensation paid by you to the entities that supplied you with materials containing formaldehyde or formaldehyde-based resins for housing units manufactured by you for sale from January 1, 1992 to the present.

## ANSWER:

During the years indicated, the dollar amounts of Philips' purchases from each supplier were as shown:

2005

| GM Wood Products | $1,105,711.00 |
| Robert Weed Plywood | $1,072,223.00 |

2006

| GM Wood Products | $ 983,088.00 |
| Robert Weed Plywood | $ 757,877.00 |

2007

| GM Wood Products | $ 605,649.00 |
| Robert Weed Plywood | $1,337,322.00 |

## INTERROGATORY NO. 13:

Please identify and describe any alternative materials (i.e., materials not containing formaldehyde or formaldehyde-based resins) that were available for purchase and use to manufacture housing units from January 1, 1992 to the present.

**ANSWER:**

Vinyl, steel and solid wood are materials that do not contain formaldehyde and which may have been available for use in making the door jambs and headers which Philips manufactured. See also answer to NO. 1, above.

**INTERROGATORY NO. 14:**

Please identify and describe all standards, codes, regulations, guidelines, recommendations, industry practices, rules, policies, and/or procedures concerning the use of materials containing formaldehyde or formaldehyde-based resins in housing units manufactured by you from January 1, 1992 to the present.

**ANSWER:**

None, insofar as Philips' use of these materials is concerned. See also answer to NO. 1, above.

**INTERROGATORY NO. 15:**

Please identify and describe any indoor and/or outdoor air quality monitoring and/or testing performed by you, or on your behalf, on manufactured housing units and/or housing storage areas from January 1, 1992 to the present.

**ANSWER:**

No monitoring or testing has been done by Philips or on its behalf. See also answer to NO. 1, above.

**INTERROGATORY NO. 16:**

Please identify and describe any monitoring and/or testing performed by you, or on your

behalf, for the presence of formaldehyde emissions from any component parts and/or materials used by you to manufacture housing units from January 1, 1992 to the present.

**ANSWER:**

No monitoring or testing has been performed by Philips or on its behalf.  See also answer to NO. 1, above.

**INTERROGATORY NO. 17:**

Please identify and describe any safety procedures for your employees who worked with, or in close proximity to, materials containing formaldehyde or formaldehyde-based resins from January 1, 1992 to the present.

**ANSWER:**

Philips has adopted no specific safety procedures for employees working with or in proximity to MDF or plywood, other than utilization of standard personal protective equipment, e.g. safety glasses, earplugs and gloves.

**INTERROGATORY NO. 18:**

Please identify and describe all documents including, but not limited to, owners manuals, warnings, pamphlets, safety use guidelines, instructions, and writings concerning formaldehyde with regard to manufactured housing units from January 1, 1992 to present.

**ANSWER:**

Philips has no information of the sort requested.  See also answer to NO. 1, above.

**INTERROGATORY NO. 19:**

Please identify and describe any health, medical, or scientific research, literature,

publications, or material in your possession, custody, or control, whether or not such documents were authored by you, with respect to any potential health effect associated with formaldehyde or formaldehyde-based resins.

**ANSWER:**

Philips has nothing of the sort requested. See also answer to NO. 1, above.

**INTERROGATORY NO. 20:**

Please identify and describe all trade and/or industry organizations in which you are a member and state your length of affiliation therewith from January 1, 1992 to the present.

**ANSWER:**

| | |
|---|---|
| Manufactured Housing Institute | 20+ years |
| Recreational Vehicle Industry Association | 20+ years |
| American Architectural Manufacturers Association | 20+ years |
| National Association of Trailer Manufacturers | 8+ years |

**INTERROGATORY NO. 21:**

Please identify the date(s) and how you discovered, or were informed, that exposure to formaldehyde and/or formaldehyde-based resins may cause any adverse health effect.

**ANSWER:**

Philips lacks the knowledge requisite to answer this interrogatory.

**INTERROGATORY NO. 22:**

Please identify and describe all communications (internal or otherwise) between you and FEMA, DHS and/or any other governmental agency or employee, and/or any other

-12-

manufacturer or supplier of housing units regarding the manufacture or sale of manufactured housing units in response to hurricanes Katrina and Rita.

**ANSWER:**

Philips has had no communications with FEMA, DHS or any other governmental agency or employee, or with any manufacturer or supplier of housing units regarding the manufacture or sale of housing units in response to Hurricanes Katrina and Rita. See also answer to NO. 1, above.

**INTERROGATORY NO. 23:**

Please state the name of the insurer and policy limits of any policy of insurance that may cover the claims alleged herein.

**ANSWER:**

During the periods indicated, Philips was insured as follows:

06/01/2005 through 06/01/2006, AIG policy no. GL 574-23-20, $2 million each occurrence, $5 million aggregate.

06/01/06 through 06/01/08, Ace American Insurance Company policy no. G2 16 29 29 7, $5 million each occurrence, $5 million aggregate.

**INTERROGATORY NO. 24:**

Please identify the name, address, and area of expertise of each expert you may or will call to testify at hearings or trial of this matter.

**ANSWER:**

Philips has not identified, as yet, any expert whom it might call to testify in connection with this matter.

-13-

**INTERROGATORY NO. 25:**

Please identify any witness or exhibit you may rely on in this matter.

**ANSWER:**

With the exception of Thomas G. Swaney, Special Projects Manager and formally Vice-President Manufacturing-Operations, Philips has made no determination of what witnesses or what exhibits it may rely upon in this matter.

STATE OF COLORADO   )
                             )               VERIFICATION
COUNTY OF DENVER    )

I, James F. Parr, being duly sworn, depose and state that I am Assistant Secretary for Philips Products, Inc., and that I verify the truth and foregoing answers to interrogatories; that I am duly authorized by Philips Products, Inc. to do so; that many facts, statements and other matters therein are not within my personal knowledge, but that they were made, received, or kept by Philips Products, Inc. in the course of their business and are of a type ordinarily relied upon by Philips Products, Inc. in the conduct of their business. I am therefore informed that the facts stated therein are true.

Philips Products, Inc.

James F. Parr
Assistant Secretary

Subscribed and sworn to before me

this _14th_ day of _August_ , 200_8_ .

Notary Public
My commission expires

-14-

Respectfully Submitted,

**HEBBLER & GIORDANO, L.L.C.**
*Attorneys at Law*

THOMAS M. YOUNG, Bar No. 7547
ANTHONY J. MILAZZO, JR. Bar No. 9661
Hebbler & Giordano, L.L.C.
3636 S. I-10 Service Road W, Suite 300
Metairie, Louisiana 70001
Telephone: (504) 833-8007
Facsimile: (504) 833-2866
Email: young@hebblergiordano.com
***Attorneys for Philips Products, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on Plaintiffs'

Steering Committee via plaintiffs' liaison counsel: Gerald E. Meunier, Gainsburgh,

Benjamin, David, Meunier & Warshauer, L.L.C., Energy Centre, 1100 Poydras Street, Suite

2800, New Orleans, Louisiana 70163-2800 and Linda Nelson, Lambert & Nelson, PLC,

701 Magazine Street, New Orleans, Louisiana 70130; on the United States of America

through Henry Thomas Miller, Dept. Of Justice, Civil Division, Torts Branch, P.O. Box 340,

Ben Franklin Station, Washington, DC 200444 via email and first class U.S. mail this

14th day of August , 2008.

Thomas M. Young

-15-