UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) | MDL NO. 07-1873<br><br>SECTION "N-4"<br><br>JUDGE ENGELHARDT<br><br>MAG. JUDGE ROBY |
| THIS DOCUMENT RELATES TO THE ADMINISTRATIVE MASTER COMPLAINT AND TO ALL CASES | | |

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
### SECOND SUPPLEMENTAL AND AMENDED MASTER COMPLAINT

Defendants CMH Manufacturing, Inc., Southern Energy Homes, Inc., Palm Harbor Homes, Inc., Palm Harbor Mfg., LP, Palm Harbor Albemarle, LLC, Giles Family Holdings, Inc., and SunRay Investments, LLC (the "Newly Added Defendants") respectfully submit this reply memorandum in support of their motion to dismiss (Rec. Doc. 747) ("Motion to Dismiss") the Second Supplemental and Amended Master Complaint (Rec. Doc. 722) ("Amended AMC") and in response to the PSC Opposition to Certain Defendants' Motions to Dismiss Second Supplemental and Amended Master Complaint.  (Rec. Doc. 769) ("PSC Memorandum").[1]

### INTRODUCTION

The Newly Added Defendants' Motion to Dismiss and Supporting Memorandum (Rec. Doc. 747-2) ("Newly Added Defendants' Initial Brief") established three points.

---

[1] The Newly Added Defendants also respectfully submit this reply memorandum in support of the dismissal of the substantively identical Plaintiffs' Second Supplemental and Amended Complaint (Rec. Doc. 721) in *Pujol v. The United States of America*, No. 08-3217.

01710054.2

First, as a threshold matter, Plaintiffs have failed to satisfy their burden of establishing Article III standing against the Newly Added Defendants, and thus this Court does not have subject matter jurisdiction over Plaintiffs' claims against the Newly Added Defendants.

Second, the named Plaintiffs have improperly joined whatever individual claim each may theoretically have against a defendant with claims that other plaintiffs may or may not have against other defendants and have failed to demonstrate any common evidentiary link between either Plaintiffs' claims or the Defendants. Accordingly, the claims levied against the Newly Added Defendants solely as members of the "industry" should be dismissed.

Third, the Newly Added Defendants asserted, adopted and incorporated many standard Rule 12 defenses and expressly joined in other such motions.

The PSC Memorandum incorporates by reference its earlier briefs on the Article III issue and then focuses almost exclusively on the second of those three issues, involving improper joinder.

## ARGUMENT

I. **THE AMENDED AMC SHOULD BE DISMISSED AS TO THE NEWLY ADDED DEFENDANTS BECAUSE THE ORIGINAL PLAINTIFFS: (1) LACK ARTICLE III STANDING AGAINST THE NEWLY ADDED DEFENDANTS AND (2) MAY NOT AMEND THE AMC TO ADD NEW PLAINTIFFS.**

Rather than addressing the extensive United States Supreme Court and Fifth Circuit authority cited in the Newly Added Defendants' Initial Brief, the PSC Memorandum merely adopts by reference its arguments from earlier briefs.[2] Plaintiffs fail to address and implicitly

---

[2] PSC Memorandum, p. 2, incorporates by reference "the arguments contained in the PSC's memorandum at Rec. Docs. 656-2 and 657-2." Rec. Docs. 656-2 (applicable to *Pujol*) and 657-2 (applicable to all cases) are substantively identical on the Article III issue. For ease of reference, those PSC memoranda will be referred to jointly as "PSC 657-2 Memorandum" with citations to that document.

concede the following points concerning Article III standing from the Newly Added Defendants' Initial Brief:

- The Amended AMC establishes that not a single named plaintiff in the Administrative Master Complaint (Rec. Doc. 109) ("AMC") had Article III standing against the Newly Added Defendants. Not a single one of the sixty-three original named plaintiffs ("Original Plaintiffs") in the AMC lived in a housing unit built by any of the Newly Added Defendants. Instead, those sixty-three Original Plaintiffs in the AMC lived in housing units built by Defendants other than the Newly Added Defendants.[3]

- None of the Original Plaintiffs in the AMC is "matched" to any of the Newly Added Defendants so no Original Plaintiff had Article III standing to sue the Newly Added Defendants.[4]

- Standing must exist against a defendant as of the date of the filing of the complaint. *Whatley v. Resolution Trust Corp.,* 32 F.3d 905, 907 (5th Cir. 1994) ("[S]ubject matter jurisdiction is tested *as of the time of the filing of the complaint.*") (emphasis added).[5]

- Since no Original Plaintiff had standing to sue the Newly Added Defendants, the Newly Added Defendants must be dismissed. *Audler v. CBC Innovis, Inc.,* 519 F.3d 239 (5th Cir. 2008) ("*Audler*"); *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975); *Lang v. French,* 154 F.3d 217, 222 n.28 (5th Cir. 1998) ("*Lang*"); *In re Weaver*, 632 F.2d 461, 463 n.6 (5th Cir. 1980) ("*Weaver*").[6]

- Under binding Fifth Circuit authority, a plaintiff without standing may not subsequently amend his complaint to add a plaintiff with standing. *Summit Office Park, Inc. v. U.S. Steel Corp.,* 639 F.2d 1278, 1284 (5th Cir. 1981) ("*Summit*"); *Federal Recovery Services, Inc. v. U.S.,* 72 F.3d 447, 453 (5th Cir. 1995) ("*Federal Recovery*"); *Aetna Casualty & Surety Co., et al. v. Hillman*, 796 F.2d 770, 774 (5th Cir. 1986) ("*Aetna*").[7]

- The Amended AMC prejudices the Newly Added Defendants.[8]

---

[3] *See* Newly Added Defendants' Initial Brief, p. 2.

[4] *See* Newly Added Defendants' Initial Brief, pp. 8-12 and Exhibit One thereto (Rec. Doc. 747-3).

[5] *See* Newly Added Defendants' Initial Brief, pp. 15-16.

[6] *See* Newly Added Defendants' Initial Brief, pp. 9-12.

[7] *See* Newly Added Defendants' Initial Brief, pp. 13-16.

[8] *See* Newly Added Defendants' Initial Brief, pp. 17-18 and n.15.

01710054.2

## II. PLAINTIFFS OFFER NO CASELAW TO SUPPORT THEIR POSITION THAT THEY MAY AMEND THEIR COMPLAINT TO MANUFACTURE STANDING RETROACTIVELY.

In their effort to overcome the overwhelming and binding Article III authority mandating dismissal of Plaintiffs' claims against the Newly Added Defendants and cited in the Newly Added Defendants' Initial Brief, Plaintiffs rely on completely irrelevant "mootness" caselaw.

### A. Plaintiffs' Caselaw Addressing the Substitution of Class Plaintiffs When a Named Plaintiff's Claim Becomes Moot is Inapposite.

Plaintiffs argue over and over that because the Fifth Circuit allows the substitution of a new named plaintiff in a class action when the original plaintiff's claim becomes moot, then they should be allowed here to add new plaintiffs to manufacture standing against the Newly Added Defendants where the Original Plaintiffs did not have such standing.[9]  Plaintiffs' attempt to equate standing with mootness under these circumstances ignores the fundamental difference between the two concepts, as well as United States Supreme Court and Fifth Circuit binding precedent.

#### 1. Standing is Determined As of the Date of the Filing of the Complaint; Mootness is Not.

While the Article III case-or-controversy constitutional limitation on federal judicial authority underpins both standing and mootness jurisprudence, the "two inquiries differ" in "critical" ways. *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc (TOC), Inc.*, 528 U.S. 167, 180 (2000).  Standing and mootness are not the same thing.[10]  Timing is everything.  Plaintiffs' weak attempt to equate standing and mootness ignores clear Fifth Circuit

---

[9] PSC 657-2 Memorandum, pp. 14-17.

[10] Standing requires a plaintiff to have a "sufficient stake in otherwise justiciable controversy to obtain judicial solution of that controversy." *Sierra Club v. Morton,* 405 U.S. 727, 731-32 (1972). In contrast, a case becomes "moot" when a plaintiff *who originally had a sufficient stake* – and thus standing -- reaches a point later in the litigation where he "no longer [has] a live stake in [the] continued litigation." *Graves v. Walton County Bd. of Educ.,* 686 F.2d 1135, 1137 (5th Cir. 1982) ("*Graves*").

precedent: "As with all questions of subject matter jurisdiction *except mootness*, standing is determined *as of the date of the filing of the complaint*." *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005) ("*Kitty Hawk*") (internal quotations omitted) (emphasis added). Thus, the Fifth Circuit, as commanded by the United States Supreme Court binding precedent discussed below, treats differently the two concepts of standing and mootness. A plaintiff filing a lawsuit against a defendant must have Article III standing to make that claim *as of the date the complaint is filed.*

The United States Supreme Court has highlighted this glaring difference between the concept of standing and the concept of mootness *in the class action context*, and more particularly, in the context of allowing the substitution of a new plaintiff after the original named plaintiff's claims had become moot. In *Sosna v. Iowa,* 419 U.S. 393, 401 (1975) ("*Sosna*"), the Supreme Court held that in a certified class, new named plaintiffs could be substituted when the claim of the original named plaintiff had become moot. In so holding, however, the Supreme Court reinforced that the requirement of standing is different:

> Our conclusion that this case is not moot in no way detracts from the firmly established requirement that the judicial power of Art. III courts extends only to 'cases and controversies' specified in that Article. There must . . . be a named plaintiff who has such a case or controversy *at the time the complaint is filed* . . . .

*Sosna,* 419 U.S. at 402 (emphasis added); *see also Franks v. Bowman Transportation Co.,* 424 U.S. 747, 753 n.5 (1976) ("*Franks*") (reiterating the holding of *Sosna* and its requirement that there must be "a named plaintiff who has such a case or controversy at the time the complaint is filed"). In other words, while it may be fine to substitute a named plaintiff after the original named plaintiff's claims become moot, it is not fine to add a named plaintiff with standing when the original named plaintiffs never had standing to begin with – a named plaintiff must have standing to make claims against a defendant *at the time the case is filed*.

5

01710054.2

The Fifth Circuit has embraced *Sosna*'s requirement that a named plaintiff must have a case or controversy against a defendant at the time the case is filed. *See Graves,* 686 F.2d at 1137-38; *see also Audler*, 519 F.3d at 247-48; *Summit*, 639 F.2d at 1282 ("[W]e hold only that where a plaintiff [in a purported class action] never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs. . .").

### 2.     Plaintiffs' Reliance on "Mootness" Caselaw is Thus Misguided.

Plaintiffs state: "The Fifth Circuit not only has recognized and allowed for substitution of class representatives in certified class actions, it has allowed substitutions prior to a class having been certified. . ."[11]  *Every* case Plaintiffs cite in support of this proposition deals with *mootness*, not the issue of Article III standing at the time the case is filed.[12]  In *every* one of the cases cited by Plaintiffs, there was no question that the original plaintiff had standing to make a claim against the defendant at the time the case was filed.[13]  The issue of mootness arose because something changed as the litigation progressed, mooting the original named plaintiff's claim. Indeed, Plaintiffs' cited cases rely on *Sosna*, *supra*, in holding or stating that the mooting of the original plaintiffs' claims did not prevent the substitution of new named plaintiffs with

---

[11] PSC 657-2 Memorandum, p. 16.

[12] *See Lynch v. Baxley*, 651 F.2d 387, 387 (5th Cir. Unit B. 1981) ("*Lynch*") (allowing the substitution of new named plaintiffs after the challenged statute was amended and the original named plaintiffs' claims became moot); *Graves,* 686 F.2d at 1137 (allowing the substitution of new named plaintiffs in a school desegregation case where the original named plaintiffs, as students of the school system, had standing, but later their claims became moot when they graduated from the school system); *Silva v. Vowell*, 621 F.2d 640, 643, 649 (5th Cir. 1980) ("*Silva*") (holding that once the named plaintiffs' claims became moot, the judge should have "allow[ed] intervention by another named plaintiff if necessary," but in so holding, noted earlier that "[t]here [was] no doubt that both plaintiffs had standing" when the case was filed).

[13] *See Lynch,* 651 F.2d at 388 (noting that the original plaintiffs had standing but "likely . . . no longer have standing"); *Silva*, 621 F.2d at 643 (stating that "[t]here is no doubt that both plaintiffs had standing to assert such [original] claim as class representatives"); *Graves,* 686 F.2d at 1136 (noting that the original named plaintiffs in a school desegregation case had either graduated or left school, making their claims moot, thus indicating that they had been students previously and had standing at the time the case was filed).

standing.[14]  The United States Supreme Court in *Sosna*, however, specifically stated that allowing such a substitution in the event of mootness did not alter the Article III requirement that a plaintiff must have standing to sue a defendant at the time the case is filed.[15]  Plaintiffs' caselaw, relying entirely on the mootness doctrine, is irrelevant to the Article III standing issue in this case.

### B.     Plaintiffs' Remaining Arguments Have No Merit.

Plaintiffs essentially argue that because this case is a class action, none of this Article III caselaw should apply to it.[16]  Plaintiffs cite no case, other than the mootness cases discussed earlier, in support of this curious concept.  In fact, the named plaintiffs in a class action face the same Article III standing requirements as if the plaintiffs had brought the case individually, as class actions are in no way immune to the rigorous Article III standing requirements.[17]  This Court has already rejected Plaintiffs' argument that the Article III case law does not apply to a class action:  "[T]he Newly-Added Defendants' Motion to Dismiss for lack of standing could and would have been filed regardless of the inclusion of class allegations because the named Plaintiffs - individually - have not alleged facts sufficient to establish Article III standing.  Thus, it is proper for standing to be addressed now, at the pre-certification stage."  Order and Reasons (Rec. Doc. 599) ("August 1st Order"), p. 7.[18]  Further, *Sosna* and *Franks* are both class action

---

[14] *See Lynch*, 651 F.2d at 388; *Graves*, 686 F.2d at 1137-38; *Silva*, 621 F.2d at 649-50 n.10.

[15] *See* p. 5, *supra.*

[16] Plaintiffs argue that "defendants' analysis of the standing issue as it pertains to amendments in a class action proceeding is inappropriately rigid."  PSC 657-2 Memorandum, p. 14.

[17] This point is discussed extensively in the Memorandum of Law in Support of Motion to Dismiss Administrative Master Complaint on behalf of Newly Added Defendants (Pacer Doc. No. 259-2), pp. 10-16, which is incorporated herein by reference.

[18] Plaintiffs' Amended AMC also seeks to add to the AMC a new claim that for those manufacturer defendants who are not "matched" with any Named Plaintiff, "one or more juridical links exist . . . obviat[ing] the need at this time to link the identity of an unnamed class member to a unit manufactured by a particular defendant . . ."  Amended

(*Footnote continued on next page*)

cases, and the United States Supreme Court was clear: new plaintiffs may be substituted when an original plaintiff's case becomes moot, but a case must have an original plaintiff with standing to sue a defendant when the case is filed.[19]

### III. PLAINTIFFS' AMENDED AMC SHOULD BE DISMISSED FOR IMPROPER JOINDER.

The Plaintiffs' argument that joinder is proper simply fails on its face. Indeed, Plaintiffs do not once try to reconcile the innumerable differences that act as a bar to Rule 20 joinder:

- Plaintiffs lived in different housing units in different places -- i.e., all Plaintiffs did not reside in a single housing unit in a single location;

- Plaintiffs lived in different housing unit categories -- i.e., Plaintiffs resided in either a travel trailer (not regulated by HUD), a park model (not regulated by HUD), or a manufactured home (regulated by HUD)-- all of which contain disparate levels of formaldehyde;

- Plaintiffs lived in different housing units manufactured by different companies at different plants at different times -- i.e., Plaintiffs claim that over sixty (60) different companies built one or more housing unit types that are at issue in this case;

- Plaintiffs have experienced a variety of different injuries and will presumably present different witnesses to prove their purported injuries and the remaining elements of their claims.

Instead of addressing these overwhelmingly substantive differences, Plaintiffs merely regurgitate the "liberal approach to permissive joinder under Rule 20" and argue that this Court

---

(*Footnote continued from previous page*)
AMC ¶ 8, pp. 18-19. Plaintiffs' Amended AMC boldly ignores this Court's August 1st Order, which flatly rejected the juridical link doctrine and stated: "The Court cautions that any Defendants not specifically matched to individual Plaintiffs will be dismissed without prejudice." August 1st Order, p. 11. Thus, paragraph 8 (pp. 18-19) of the Amended AMC should be dismissed.

[19] Plaintiffs' continued reliance on *Alexander v. Wyeth Laboratories, Inc.* (*In re Norplant Contraceptive Products Liability Litigation*), 163 F.R.D. 255 (E.D. Tex. 1995) ("*Alexander*") as support for allowing the amendment of additional named plaintiffs here is also misplaced. *Alexander* involved a products liability suit against three corporate *affiliates* that sold and distributed the *same* contraceptive product. *See Alexander*, 163 F.R.D. at 256. This case is entirely different in that multiple plaintiffs are suing entirely different defendants over entirely different products. In *Alexander*, there was no issue of a defendant without a "matching" plaintiff – all of the plaintiffs had purchased the defendants' one contraceptive device. *Id.* at 256-57. Thus, critically, standing was not an issue in *Alexander*. Further, the motion to amend in that case was *unopposed* by the defendants.

8

01710054.2

should -- despite any and all procedural hurdles -- keep the claims together for administrative purposes.

What's more, Plaintiffs' attempt to distinguish two factually similar recent Eastern District of Louisiana decisions -- *Campo v. State Farm Fire and Cas. Co.*, No. 06-2611, 2007 WL 2155792 (E.D. La., July 26, 2007) ("*Campo*") and *Rohr v. Metropolitan Ins. & Cas. Co.*, No. 06-10511, 2007 WL 163037 (E.D. La., Jan. 17, 2007) ("*Rohr*") – also fails.  In their attempt to distinguish these two cases, Plaintiffs admit that the "common element" -- like the case at hand -- is Hurricane Katrina, but point out that the "multiplicity of individualized issues concerning the various contracts of insurance involved, the differing conditions of the insured properties pre- and post-Katrina, and the variations concerning how claims were (or were not) adjusted overwhelmed any common elements under the first prong of the [joinder] analysis."[20] What Plaintiffs fail to discuss, however, is how the numerous differences[21] detailed above would "overwhelm" any "common elements" that might exist in this case.

Plaintiffs' attempt to join the Newly Added Defendants suffers from an additional defect, though, in that the Newly Added Defendants are categorically different from the previously named Defendants.  As the Plaintiffs went to great length to explain in their opposition to FEMA's Motion to Dismiss (Pacer Doc. No. 348) ("Plaintiffs' Response to FEMA"), the Newly Added Defendants, all of which are manufactured home defendants, are very different from the existing travel trailer defendants.  *See, e.g.,* Plaintiffs' Response to FEMA, pp. 16, 17, 23, 25.  As pointed out by the Plaintiffs themselves, every aspect of the manufactured home industry is

---

[20] PSC Memorandum, pp. 5-6.

[21] Plaintiffs' failure to do so is indicative of the fact that the differences in claims in the case at hand greatly outnumber those in either *Campo* or *Rohr*.

regulated by HUD, in stark contrast to the travel trailer industry. In fact, many years ago, HUD both investigated and wrestled with the formaldehyde issues. As a result of that investigation, HUD established formaldehyde standards, regulates formaldehyde emissions in building products, requires HUD inspection and certification of the units for compliance prior to leaving the manufacturing plant, and requires that formaldehyde warnings be placed in each manufactured home. Additionally, HUD regulations address ventilation systems and discuss indoor air exchange requirements that are not applicable at all to the travel trailer industry. This Court recognized these very differences at length in its October 3, 2008 Order and Reasons granting in part, and denying in part, the United States of America's Motion to Dismiss (Rec. Doc. 717). October 3rd Order, pp. 4-6.

This fundamental difference between the Newly Added Defendants and the previously named Defendants warrants treating these categories of Defendants separately. The issues related to discovery, the defenses available and the information that Plaintiffs will require in order to establish their cases will be different in many ways. As a result, the Newly Added Defendants respectfully ask that this Court rule that the Newly Added Defendants have been mis-joined, and dismiss them from this civil action.

## CONCLUSION

For the reasons detailed in the Newly Added Defendants' Initial Brief and this reply brief, the Newly Added Defendants' Motion to Dismiss should be granted.

Respectfully submitted by:

*/s/ James K. Carroll*
One of the Attorneys for Newly Added Defendants

01710054.2

**OF COUNSEL**
Thomas W. Thagard, III
Lorrie L. Hargrove
Edward A. "Ted" Hosp
Edward S. Sledge IV
**MAYNARD, COOPER & GALE, P.C.**
2400 Regions/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2616
Telephone 205-254-1000

James K. Carroll (#3898), T.A.
Stephanie D. Skinner (#21100)
Kati Cox Weaver (#30878)
**FOWLER RODRIGUEZ VALDES-FAULI**
400 Poydras Street, 30th Floor
New Orleans, Louisiana 70130
Telephone: 504-523-2600
Fax: 504-523-2705
Fax: 205-254-1999

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2008, I electronically filed the foregoing Reply Memorandum in Support of Motion to Dismiss Second Supplemental and Amended Master Complaint with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document by first-class mail to all counsel of record who are non-CM/ECF participants.

/s/*James K. Carroll*
Of Counsel

11

01710054.2