UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCT LIABILITY LITIGATION | * | SECTION "N-4" |
| | * | JUDGE ENGELHARDT |
| | * | MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## JOINT REPORT NO. 7 OF LIAISON AND GOVERNMENT COUNSEL

Plaintiffs' Liaison Counsel ("PLC"), Manufacturing Defendants' Liaison Counsel ("MDLC")

and U.S. Government Counsel ("GC") respectfully submit this Joint Report No. 7.

**I.     REPORT OF CLAIMS AND CASE INVENTORY:**

PLC and MDLC report that a total of 30 actions now have been filed, or transferred into,

this MDL.  PLC and MDLC are unaware of any other actions filed in other districts that

currently are awaiting transfer into the MDL.  MDLC further reports that there currently are

approximately 1,096 plaintiffs named in all actions pending, or awaiting transfer into, the MDL.

The following complaints were filed since the last Joint Report:

**LOUISIANA:**

*Barry Babin and Wendy Babin, et al v. Cavalier Home Builders, LLC, et al.*  Filed in the

United States District Court for the Eastern District of Louisiana, Docket No. 08-4629, filed

October 10, 2008.

*Phyllis Laney, Individually and as Representative of Similarly Situated Persons versus The United States of America.* Filed in the United States District Court for the Eastern District of Louisiana, Docket No. 08-4630, filed on October 10, 2008.

FEMA estimates that approximately 11,000 to 12,000 persons have filed administrative claims against the United States Government/FEMA, which appear to pertain to the allegations giving rise to this MDL.

## II.   PLAINTIFF FACT SHEETS (PFS)

The PSC still operates a central claims office located at 4731 Canal Street, New Orleans, Louisiana.  PLC advises that it has delivered 1393 completed PFS to the Defendants to date.

The PSC to date has cured 488 deficiencies cited by Defendants pursuant to PreTrial Order No. 2 (Doc No. 87).

The parties have discussed, and hope to agree to, a process for the claimant verification of substantive PFS changes made necessary in the curing of such deficiencies.

## III.   FEMA INDIVIDUAL ASSISTANCE (IA) FILES

To date, the United States has produced the FEMA IA files for ninety-five (95) persons. This constitutes approximately 10,000 pages of material.  FEMA estimates that it takes FEMA document custodians approximately 50 minutes to retrieve and reproduce each individual IA file.

Pursuant to agreement, the United States has now produced the FEMA IA files for all proposed class representatives identified by PLC [Docket No. 666-2], save for the following five persons:

    Crystal L. Gumm
    Joseph Jack
    Amaris McGallion
    Libby Sylve (Hailey Sylve)
    Faye Williams

2

The United States has received FEMA IA files for these persons, but PLC has not provided the requisite Privacy Act releases. PLC was informed of these five deficiencies via letter, and had previously been on notice of four of the five deficiencies through the last Joint Report (September 30, 2008) [Docket No. 712]. Upon receipt of Privacy Act releases, the United States will produce these five persons' FEMA IA files to PLC and MDLC.

## IV.    TESTING OF TRAILERS

The testing of Temporary Housing Units, both currently occupied and previously occupied, continues at numerous locations. As of November 3, 2008, the PSC has completed the testing of 6,286 units, both never-occupied and previously- occupied, at fourteen FEMA locations. Although testing is ongoing, FEMA is not precluded from disposing of units.

Defendants have completed testing of over 100 currently occupied units by the date of this report and are continuing that testing.

FEMA continues to accommodate both PLC and MDLC's reasonable requests for testing so long as the testing does not interfere with normal FEMA operations. FEMA continues to make staging sites available to PLC and MDLC, with the exception of certain limited site closures. At this time, testing has temporarily been suspended at FEMA's Hope, Arkansas site, which is currently undergoing reorganization. It is expected that testing can resume at the Hope site in January 2009.

The PSC has completed its testing of never-before-occupied THU's pursuant to the Court's Pre-Trial orders. Further, the PLC, as agreed, has provided FEMA with all test results for the never-before-occupied THU's. PLC has provided FEMA with a list of the currently occupied and previously occupied units that it has tested, but has not provided FEMA with all test results from those units.

A.      **Currently Occupied Unit Testing:**

      1.      **Defendants**

Plaintiffs continue to provide occupied units for testing on a weekly basis.  Plaintiffs test these units on one day and Defendants test the units on the following day.  The occupied unit testing is going slowly, since only a few units are set up for testing each week.

B.      **Formerly Occupied Testing:**

      1.      **Defendants**

a.      Testing by DSC of previously occupied units continues at two FEMA sites, Lottie, Louisiana and Hope, Arkansas.  Weather, site conditions and limited availability of generators in the area following Hurricane Ike have delayed our completion of testing.  DCS will complete testing at Lottie this week and has approximately 40 units left to test at Hope.  FEMA reported on November 4, 2008, that Hope cannot be made available for testing by the DCS until January 2009 due to reorganization of the facility by FEMA.  In addition to the 40 units CTEH needs to complete testing at Hope, there is one defense attorney, David Bach, representing a number of manufacturers, who is testing separately from the main defense group, and who intends to test a number of units at Hope immediately after testing by the Joint Defense Group concludes.   In addition to this testing, DSC needs to complete its testing of class representative units.

b.      DSC has now had the opportunity to compare PSC's final list of class representatives against DSC's testing done to date and has determined that it has only tested two class rep units to date.  DSC has sent PSC a list of class representatives with the information it currently has on their units, requesting assistance from PSC in locating the remaining 94 class representative units so that DSC may test those units as well.  At the same time, DSC has sent

4

that list to FEMA requesting that they review their database to determine whether FEMA has any of these class rep units on sites. In addition, based on the lists that PSC has provided to Defendants to date of the units PSC has tested, Defendants have determined that PSC has tested 272 of the 876 plaintiffs for whom DSC has received Fact Sheets. Many of these units have not yet been located by FEMA. Defendants reserve the right to test all of these 876 units that can be located.

      c.      Upon deposing PSC's testing related expert witnesses (Hewett, DeVany and Kaltofen), Defendants recognized that PSC has not provided a complete list of all units tested to date and has not provided information that would allow us to determine who tested the units (occupants themselves versus vendors, the Sierra Club or others), whether the non occupied units tested were "never occupied" or "previously occupied" units. DSC also learned that certain units were "double tested" – that is either by using both passive and active sampling techniques during the same testing period or by re-testing the same unit on a different day under different weather conditions. Defendants do not have a list of those units "double tested". In addition, PSC's expert Ms. DeVany's testing group shadow-tested five units which our defense testing team CTEH had just finished testing. Defendants have not been provided with the identity of those units. Defendants have requested this information from PSC. The PSC will provide the requested information to the parties once it has been compiled by its experts.

      d.      DSC recently received a list of PSC tested units that included only FEMA bar codes and did not identify the units by VIN number, manufacturer, FEMA or other location where tested, which information PSC maintains for each of its tested units in its central testing database. DSC has requested PSC to provide a more complete list of tested units identifying the units by VIN numbers, manufacturer, FEMA bar code, whether units were occupied, never

occupied or previously occupied, giving date and location of testing and identifying whether occupants, PSC testing contractor or government agencies performed the testing so that DSC has a reasonable understanding of the type, number and conditions of testing of these units. The PSC has agreed to provide this requested information when determinable.

e.       Upon renewing its testing of units at FEMA sites, DSC understands that PSC's testing vendor has modified the test protocol to include use of a fan. Defendants have requested that PSC provide an amendment to their written protocol to explain this modification.

## 2.       Plaintiffs

With regard to previously occupied units currently located on FEMA property, Plaintiffs' testing of these units is ongoing.   However, Plaintiffs still are encountering certain logistical problems at the sites. Many units are not accessible without being moved to permit testing, and the PSC submits that FEMA has been slow to move these units. Further, the unit inventory supplied by FEMA to Plaintiffs' testing teams is often very inaccurate, which has caused further delays.

## 3.       United States

FEMA continues to accommodate both PLC and MDLC's reasonable requests for testing so long as the testing does not interfere with normal FEMA operations. FEMA has continued to make all staging sites available to PLC and MDLC whenever possible.

FEMA has provided PLC and MDLC with its inventory information, on a rolling basis, beginning in February, 2008, and has made all of its staging sites available to them from that time. FEMA's inventory information apparently does not contain the level of detail desired by PLC, such as place of manufacture. Nevertheless, FEMA has given both PLC and MDLC access to all sites so that the private parties can determine which units they would like to test.

Based on representations made by PLC and MDLC, the United States understands that the parties hope to conclude all planned testing of formerly occupied units in November 2008 at all sites except Hope, Arkansas.

## V.     CLASS CERTIFICATION

### Depositions:

The Parties have completed the depositions of all experts for class certification purposes.

The Newly added Defendants are conducting depositions of newly "matched" class representatives.  The Newly added Defendants have submitted an Ex Parte/Consent Motion to extend deposition of newly "matched" class representatives until November 13, 2008.

The United States notes that at least five class representative depositions were cancelled during the class discovery period without any advance notice because the witnesses failed to appear.  In addition, several depositions have been cancelled very close in time to the date set for deposition.  As a result of the hardship caused by these "no shows," and the frequency of cancellations, the United States has appeared via telephone at almost all recent class representative depositions.

The United States seeks at least 48 hours advance notice regarding the cancellation of depositions, unless the cancellation is due to reasons that would justify the absence of the witness at trial.  In the absence of such justification, the United States submits that it may seek to recover certain costs from the offending party.

The PSC has made every effort to inform all parties of cancellation of depositions in a timely manner.  There were certain cancellations that could not be avoided due to family emergencies for individuals.  For example, the deposition of Renay Gardner was cancelled following the landfall of Hurricane Gustav in order for her to travel to Texas to locate her then

"missing" daughter; the deposition of Constance Jordan was cancelled because of the death of a family member the night before her scheduled deposition.

Consistent with the Court's instructions, the parties will be meeting to identify and mark exhibits, and identify any demonstrative aids, to be used at the December 2, 2008 class certification hearing, and will produce a Joint Exhibit Book to the Court no later than November 19, 2008. They also will coordinate the use of the 2 hours of time allotted by the Court for live testimony, subject to the overall time limits established by the Court. Furthermore, MDLC and GC will confer to coordinate the use of the 30 minutes jointly allotted to the Defendants for purposes of argument on the Plaintiffs' Motion for Class Certification.

**Daubert Motions:**

The Court granted MDLC's Motion for Entry of Pretrial Order No. 20, allowing for the extension to file *Daubert* challenges. The deadline for Defendant's filing of any *Daubert* challenges is November 10, 2008, and the deadline for Plaintiffs' response to any such motions is November 24, 2008.

## VI.    MOTION PRACTICE

The following Motions are pending:

Motions set for Hearing on November 5, 2008:

Motion to Dismiss Class Claims and Rule 12(b)(6) Motion to Dismiss Patricia A. Burr's Individual Claims Morgan Buildings & Spas, Inc. and Morgan Building Systems, Inc. in *Pujol* (Doc. No. 726)

Motion to Dismiss Horton Homes in *Master Complaint* (Doc. No. 741)

Morgan's Motion in Limine to Exclude Evidence of Class Action Claims Morgan Buildings & Spas, Inc. and Morgan Building Systems, Inc., in *Pujol* (Doc. No 745)

The Newly Added Defendants' Motion to Dismiss Second Supplemental and Amended Master Complaint  CMH Manufacturing, Inc., Southern Energy Homes, Inc., Palm

Harbor Mfg., Palm Harbor Albermarle, LLC Giles Family Holdings, Inc., and SunRay Investments, LLC (Doc. No. 747)

Motion to Dismiss Scotbilt Homes, Inc. in *all cases* (Doc. No. 748)

Motion to Reconsider Order or In The Alternative to Certify for Interlocutory Appeal Southern Energy Homes, Inc., Palm Harbor Homes, Inc., Palm Harbor Mfg., LP Palm Harbor Albermarle LLC, Giles Family Holdings Inc., SunRay Investments LLC, Horton Homes Inc., Silver Creek Homes Inc., Redman Homes Inc., Dutch Housing, Inc., Liberty Homes Inc., Waverlee Homes Inc. and Scotbilt Homes, Inc. in *Master Complaint* (Doc. No. 749)


Motions set for Hearing on November 19, 2008:

Motion to Dismiss Second Supplemental and Amended Master Complaint filed by Liberty Homes, Inc., Waverlee Homes, Inc. and Redman Homes, Inc. (Doc. No. 756)

Motion for Leave to File First Supplemental and Amending Complaint *Aldridge, et al v. Gulf Stream* (Doc. No. 758)

Motion for Summary Judgment filed by Phillips Products, Inc. in *Pujol* (Doc. No. 779)

Master Response of Manufacturing Defendants to the Second Amended and Master Complaint of Plaintiffs Adopting Previously Filed 12(B) Motions *all cases* (Doc. No. 780)

American Homestar Defendants' Rule 12(b)(6) Motion to Dismiss (Pre-Emption) *all cases* (Doc. No. 781)

Coachmen Recreational Vehicle Company of Georgia LLC, and Viking Recreational Vehicle Company LLC's Response to the First and Second Supplemental and Amended Master Complaints of Plaintiffs Adopting Previously Filed 12(B) Motions *all cases* (Doc. No. 782)

Motion to Dismiss Coachmen Industries, Inc. for Lack of Personal Jurisdiction Adopting Previously Filed 12(B)(2) Motion *all cases* (Doc. No. 784)

## VII.   MOBILE HOUSING UNIT MANUFACTURERS SEPARATE "TRACK"

The PSC and counsel for the defendant manufacturers of Mobile Housing Units have

discussed submitting a proposal to the Court which places these defendants on a non-litigation

track so that settlement possibilities can be fully explored. A more detailed statement of this proposal will be submitted upon the Court's ruling regarding class certification.

The United States welcomes any conversations regarding future case management, but does not believe that it can fully assess the issues or reach any meaningful agreements until after class certification is decided. As to claims specifically involving Mobile Housing Units, the United States does not have an opinion on such case management, and submits that it has been dismissed from any such claims based on the Court's Order (October 3, 2008) [Docket No. 717].

## VIII.   MISCELLANEOUS

A.   On September 28, 2008, Patriot Homes, Inc. and its subsidiaries Patriot Manufacturing, Inc., and Patriot Homes of Texas, L.P. filed a Voluntary Petition for Chapter 11 Bankruptcy. The PSC will file appropriate motions in response to these developments.

B.   The Plaintiffs have requested they be allowed to withdraw several of the 96 class representatives from the August 22, 2008 list.

C.   Both sides have requested the ability to purchase units from FEMA. The parties need a plan for any destructive testing.

D.   The United States continues to actively investigate and pursue the possibility of transferring ownership of EHUs to PLC and MDLC. MDLC provided the United States with a list of the units they want shortly after the last Status Conference. PLC provided a list of units they want on Tuesday, November 4, 2008. The United States has conferred with Chief Counsel's Office, General Service Administration, and FEMA Counsel to identify a mechanism by which the Government can transfer ownership of EHUs to Liaison Counsel. Unfortunately, any standard disposal option cannot be employed because of the moratorium FEMA has placed

on the disposal of EHUs. Moreover, even if a standard disposal option could be employed, the pertinent regulations only allow disposal of Government property after it has first been offered to other Federal, State, and local government agencies, as well as qualified non-profit entities. As a result, such a mechanism would not allow for the direct sale and transfer of units.

FEMA Counsel is seeking to identify an alternative method by which EHUs can be directly sold to Liaison Counsel. Disposal of units for a "nominal" value is apparently impossible because it would violate strict Government property disposal regulations. It appears that the terms of any EHU sale and transfer will be required to provide that (1) the purchase applies only to units identified as "scrap," as defined in 41 CFR 102-36.240 – "property which has no value except for its basic material content"; (2) the units must be sold for fair market value – the price that the Government would receive for the units on the open market, but for FEMA's moratorium on the disposal of units (no dollar value has been established yet); (3) the units will be sold and transferred "as is, where is," with a restriction prohibiting persons from using these units for housing; (4) Liaison Counsel must enter into an indemnity and hold harmless agreement; and (5) Liaison Counsel will have to arrange for the pick-up and removal of any purchased units from the applicable FEMA storage site within a specified number of days subsequent to being notified that the purchased units are ready for pick-up. The United States will continue to actively pursue this type of sale and will continue to report to Liaison Counsel regarding this matter.

The PSC has repeatedly asked FEMA to provide it with an inventory from which to select "scrap" units for purchase but such an inventory has not been provided. Further, the PSC is concerned that the units that are available, in "scrap" condition, will not be in sufficient condition to conduct meaningful testing. It would be helpful for FEMA to provide the parties

with a description of units and their current conditions in order to make a more educated selection.

     E.    The United States is concerned that documents are being produced without being Bates numbered. This creates substantial logistical difficulties relating to authentication and document inventory control. The United States believes that the parties should specifically agree to Bates number all documents for identification prior to their production, unless the document is being produced in native format and cannot be Bates numbered.

     In an effort to provide documents to the parties in enough time to prepare for depositions during the class certification discovery phase, the PSC did not wish to slow the process down by which the parties received documents by having them bates-labeled. Now that class certification discovery has concluded, the PSC will mark and bates-label the exhibits that will be used at hearings and any other proceedings in this matter.

     F.    As previously mentioned to the Court, the United States is also concerned that a number of parties continue to send materials to the United States' P.O. Box or Street Address, through the United States Postal Service. Such a practice results in substantial delays in delivery due to security precautions. The United States requests that the Court enter an Order requiring all parties to send materials to GC via Federal Express, or some other shipping service, at the following address:

Henry T. Miller
c/o Chelsea Conanan
U.S. Dept. of Justice, Civil Division
1331 Penn. Ave., NW, Rm.8203-N
Washington, D.C. 20004
(202) 616-4449

Furthermore, the United States has and will continue to send materials to Liaison Counsel, and non-Liaison Counsel where required, via Federal Express or some other overnight shipping service.

G.     PLC and at least some Defense Counsel have asked the United States to assist them in matching claimants with emergency housing units ("EHUs"). Since March 2008, the United States' position has been that it will conduct a search of its database and produce responsive information regarding the unit a particular person occupied if the requesting party provides GC with the particular claimant's name along with any and all relevant search information, including, but not limited to, the claimant's (a) full name; (b) FEMA ID Number; (c) Social Security Number; (d) date of birth; (e) and address or location where he or she occupied an EHU.

The United States asks that Liaison Counsel, in submitting any such matching requests, submits their requests in the following manner: (1) requests should be sent in groups of approximately 500 claimants; (2) requests should include a list of names in Excel or PDF spreadsheet format; and (3) for each family of occupants, only the name of the head of household or one adult family member should be listed – no children or other minors should be included. Providing the United States with the requested information in this manner will help reduce search costs, increase the likelihood of matching a particular claimant and his or her family to a particular EHU, and allow FEMA to process and track requests as efficiently and promptly as possible.

H.     Finally, the United States submits that it plans to file a second motion challenging the Court's subject-matter jurisdiction in the months after class certification is determined. This motion will be predicated on the legal framework set forth in the Court's Order (October 3,

2008) [Docket No. 717], and will be based in large-part on a factual showing grounded in facts that have been elicited during the course of class certification discovery and obtained during recent factual inquiries.  The United States anticipates that this will not affect the status of merits discovery and recognizes that Plaintiffs will likely want sufficient discovery prior to having to respond to any such motion.

BY:    s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:   504/522-2304
        Facsimile:   504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:   504/522-2304
        Facsimile:   504/528-9973
        jwoods@gainsben.com

        s/Andrew D. Weinstock
        ANDREW D. WEINSTOCK, #18495
        **DEFENDANTS' LIAISON COUNSEL**
        Duplass, Zwain, Bourgeois,
        Pfister & Weinstock
        3838 N. Causeway Boulevard, Suite 2900
        Metairie, Louisiana 70002
        Telephone:   504/832-3700
        Facsimile:   504/837-3119
        andreww@duplass.com

s/ Henry T. Miller
HENRY T. MILLER
Senior Trial Counsel
ADAM M. DINNELL
MICHELLE G. BOYLE
Trial Attorneys
**ATTORNEYS FOR THE UNITED STATES OF AMERICA**
United States Department of Justice
Civil Division - Torts Branch
1331 Penn. Ave., NW, Rm. 8203-N
Washington, D.C. 20004
Telephone:    202/616-4449
Henry.Miller@usdoj.gov
Adam.Dinnell@usdoj.gov
Michelle.Boyle@usdoj.gov