**Westlaw Delivery Summary Report for WEINSTOCK,ANDREW 2432290**

| | |
|---|---|
| Date/Time of Request: | Monday, November 10, 2008 13:13 Central |
| Client Identifier: | ADW |
| Database: | DCT |
| Citation Text: | Slip Copy |
| Lines: | 243 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Slip Copy  Page 1
Slip Copy, 2008 WL 2185385 (E.D.La.)

Only the Westlaw citation is currently available.
United States District Court,E.D. Louisiana.
Joycelyn BALLARD
v.
BUNGE NORTH AMERICA, INC.
Civil Action No. 07-343.

May 22, 2008.

[H. Edward Sherman](#), [James Edmon Cazalot, Jr.](#), H. Edward Sherman, APLC, New Orleans, LA, for Joycelyn Ballard.

[Kathleen K. Charvet](#), [Adam C. McNeil](#), McGlinchey Stafford, PLLC, New Orleans, LA, for Bunge North America, Inc.

### ORDER AND REASONS

[CARL J. BARBIER](#), District Judge.

**\*1** Before the Court is Defendant's Motion for Summary Judgment (Rec.Doc.50). For the reasons below, Defendant's Motion is **GRANTED.**

### BACKGROUND

Plaintiff was an employee of the United States Department of Agriculture, Federal Grain Inspection Service. As per her job duties she tested grain samples provided by Bunge North America at its facility in St. Charles Parish. (Rec. Doc. 50-3, at 1). Plaintiff' job duties include smelling grain samples, and conducting tests on them. *Id.* Plaintiff alleges that she was twice exposed to phosphine gas fumigant while testing Bunge's grain samples. Plaintiff alleges the first such exposure occurred on January 4, 2006, and the second such exposure occurred on November 17, 2006.

As to the January 4, 2006, there is a dispute as to whether the grain sample was fumigated prior to its inspection by the FGIS. Nevertheless, Ms. Ballard claims that while inspecting grain from Bunge, she smelled phosphine fumigant in the sample. She claims that she had an immediate reaction, in that she fell down and became nervous and dizzy, coupled with a development of blurred vision and coughing. She claims that she filled out an incident report, before heading to the hospital, first at St. Charles General, and thereafter to West Jefferson General.

On November 16, 2006, Ms. Ballard was again working as the sampler at the FGIS inspection room at the Bunge facility in St. Charles Parish. She claims that she was again exposed to phosphine gas and again headed to West Jefferson General Hospital for treatment following the exposure.

It is undisputed that prior to the January incident, Plaintiff suffered from numerous pulmonary and respiratory problems. Plaintiff claims that the exposure to the phosphine gas has caused medical complications which have required extra treatment that was not required prior to the exposure. Further the plaintiff claims that the exposure caused her to lose her job with the FGIS and therefore she will have a significant claim for loss of future earnings.

Defendant denies liability and specifically disputes that any posphine gas was present. Defendant also claims that no physician has attributed any of her alleged health conditions to phosphine fumigant. Finally, Defendant disputes that Ms. Ballard has lost her job with FGIS. Defendant states that she is still employed by FGIS but in a different capacity.

### LEGAL STANDARDS

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *[Little v. Liquid Air Corp.,](#)* [37 F.3d 1069, 1075 (5th Cir.1994)](#) (citing [FED. R. CIV. P. 56(c)](#)). The moving party bears the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

initial burden of demonstrating to the court that there is an absence of genuine factual issues. *Id.* Once the moving party meets that burden, the non-moving party must go beyond the pleadings and designate facts showing that there is a genuine issue of material fact in dispute.*Id.*"A factual dispute is 'genuine' where a reasonable jury could return a verdict for the non-moving party. If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper." *Weber v.. Roadway Exp., Inc.,* 199 F.3d 270, 272 (5th Cir.2000) (citations omitted). The non-moving party's burden "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. [The courts] resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *[The courts] do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."Little,*37 F.3d 1075 (emphasis in original) (citations omitted).

### DISCUSSION

**\*2** As shown above, there are clearly some fact issues left to be determined in this litigation. However, the fact issues that remain do not rise to the level of material facts. In Louisiana, courts employ a duty-risk analysis when determining whether a plaintiff has a viable negligence claim. The analysis requires a plaintiff to establish five elements at trial: (1) that the defendant had a duty to conform his conduct to a specific standard; (2) proof that the defendant's conduct failed to conform to the appropriate standard; (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff' injuries; (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) proof of actual damages. *Bonin v. Ferrellgas, Inc.,* 877 So.2d 89, 94 (La.2004); *Perkins v. Entergy Corp.,* 782 So.2d 606, 611 (La.2001).* It is well settled, that if the Plaintiff fails to prove any element above, then there must be verdict in favor of the defendant. *Perkins,* 782 So.2d at 611.

In a toxic tort case like this one, Plaintiff must prove two elements of causation. First, the Plaintiff must provide scientific evidence of the harmful effects of a chemical. *Atkins v. Ferro Corp.,* 534 F.Supp.2d 662, 666 (M.D.La.2008). Courts have referred to this standard as "general causation." *Knight v.Kirby Inland Marine, Inc.,* 482 F.3d 347, 351 (5th Cir.2007). Once this burden is satisfied, the Plaintiff must prove that exposure to the chemical caused the injury complained of. *Atkins,* 534 F.Supp.2d at 662. Courts have referred to this standard as "specific causation." *Knight,* 482 F.3d at 351.

The Defendant claims that the Plaintiff cannot prove the causation element because there is no physician who has been deposed who could link the Plaintiff's medical condition to an exposure to phosphine gas. Defendant notes the following depositions.

- Dr. Edward Michals-stated that the Plaintiff had borderline pulmonary obstruction seven years ago, but she has not taken the proper steps to mitigate its progression.

- Dr. John Thiele-Dr. Thiele is Plaintiff's treating pulminologist who took an X-Ray of the Plaintiff's lungs on January 10, 2007 and found that there was no evidence related to acute inhalation injury. The doctor further testified that even if there was a toxic inhalation, its effects would not cause an acceleration or a permanent worsening of the pre-existing lung disease.

- Dr. Brooks Emory-Dr. Emory is a board certified pulminologist who completed an IME on the Plaintiff. Dr. Emory noted that any exposure that Plaintiff would have had would have been slight and that she has no evidence of pulmonary impairment at this time. He further stated that he

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

would attribute any present complaints of coughing to smoking.

• Dr. Manuel Lopez-Dr. Lopez is a board certified allergist and immunologist who reviewed the depositions in this case as well as the Plaintiff's medical records. Dr. Lopez determined that there was no evidence that Plaintiff's respiratory problems were caused by exposure to the two episodes of January 4 and November 16.

**\*3** • Dr. Jeremiah Sullivan-Dr. Sullivan is a toxicologist who was retained by the Defendant to review the Plaintiff's allegations. He states that Plaintiff was not exposed to phosphine gas long enough or at a great enough concentration for it to have caused the immediate reaction that she is claiming. Additionally, Dr. Sullivan opines that there are no permanent side effects of phosphine exposure.

Plaintiff has hired a Dr. Patricia Williams, who holds a Ph.D. in toxicology and teaches at the University of New Orleans to establish causation.[FN1] Dr. Williams has been hired, it appears, to provide evidence of both general and specific causation.[FN2] As to general causation, she states that "Phosphine is an acutely toxic gas.... Experimental animal studies have shown phosphine to be a respiratory irritant."(Rec. Doc. 77-22 at 18). Dr. Williams also cites a study from the EPA which states some of the effects of exposure to Phosphine gas. *Id.* at 22. None of the effects cited by Dr. Williams includes an effect called occupational asthma.

> FN1. Dr. Williams is not a medical doctor.

> FN2. At the final pre-trial conference held in this case, Plaintiff's counsel stated that he believed that Plaintiff's treating physicians could establish specific causation. Yet he could not point the Court to any specific place in the record in which a treating physician linked Plaintiff's current systems to the alleged exposure.

When considering a motion for summary judgment, the Court is required to draw all inferences in favor of the non-movant. *Pipes v. Dyna Ten Corp.,* 389 F.3d 488, 489-90 (5th Cir.2004). Here, while it is not clear that Dr. Williams has provided enough information to prove general causation, it is appropriate for the Court to draw the inference that she could. Therefore this Court will assume that the testimony of Dr. Williams is sufficient to prove general causation.[FN3]

> FN3. The Court notes that Defendant claims that Dr. Williams cannot conclusively link occupational asthma to exposure to phosphine gas. However, it is unnecessary for the Court resolve that issue at this time, given the Court's holding when it comes to specific causation.

Next the Plaintiff has to prove specific causation. Dr. Williams opines that Ms. Ballard is suffering from occupational asthma which is consistent with exposure to phosphine gas. (Rec. Doc. 77-22, at 32). However, as the Defendant notes, Dr. Williams is not a medical doctor, and is not licensed to practice medicine in Louisiana. Defendant cites previous testimony that she is not qualified to make a medical diagnosis. Therefore Dr. Williams cannot make a diagnosis as to Plaintiff's ailment. Cf. *Edmonds v. Ill. Cent. Gulf R. Co.,* 910 F.2d 1284, 1287 (5th Cir.1990)(holding that a psychologist who was not a medical doctor could not make a medical diagnosis). No other expert has made any diagnosis of occupational asthma, and no other expert has linked medical conditions to any inhalation of phosphine gas.

Plaintiff argues that that three of the doctors deposed in this case have treated Plaintiff for "an aggravation of her pulmonary condition."(Rec. Doc. 77, at 5). Plaintiff makes the argument that causation in Louisiana is established if before an accident, the plaintiff was able to perform her job duties but after the accident is no longer able to perform her job duties. (Rec. Doc. 77, at 6). Plaintiff cites no case law in support of her position. However,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Plaintiff's assertion is noticeably incomplete.

A search of Louisiana case law revealed the following passage: " 'A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.' " *Housley v. Cerise,* 579 So.2d 973, 980 (La.1991) (*quoting Lukas v. Ins. Co. of N. Am.,* 342 So.2d 591 (La.1977).[FN4]

> [FN4]. It is true that causation may be presumed in a worker's compensation claim if before an accident occurred, no disability existed, and after an accident occurred, a disability exists. *See Walton v. Normandy Village Homes Ass'n,* 475 So.2d 320, 324 (La.1985). But it is also true that worker's compensation claim is an exclusive remedy that precludes recovery in tort. *See Metoyer v. Auto Club Family Ins. Co.,* 536 F.Supp.2d 664, 669 n. 6 (E.D.La.2008)(*citing Noonan v. City of New Orleans,* 972 So.2d 344, 348 (La.App. 4 Cir.2007)).

**\*4** As shown from above, there must be medical evidence which shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. In this case, there is no medical evidence which shows the requisite causal connection. No medical doctor has related Plaintiff's worsening of her condition to the exposure to phospine gas. The closest that Plaintiff can point to is the statement that "[a]lthough Dr. John Thiele and Dr. Michael Robichaux were not familiar with the fumigant, phosph[i]ne, and its chemical properties and adverse effects on human beings, they both opined that Jocelyn Ballard had a reaction to inhalation of the phosph[i]ne at work."(Rec. Doc. 77, at 6). Therefore neither medical doctor can provide evidence that links exposure to phosphine to Plaintiff's condition. Further, as noted above, Dr. Williams cannot provide medical evidence, as she is not a medical doctor. Therefore, Plaintiff has not established specific causation as to her continuing medical condition.

In addition, Plaintiff has made the assertion that she had an immediate reaction to the phosphene, in that she "[fell] down, and [became] nauseous, dizzy, blurred vision [sic], and coughing."(Rec. Doc. 77, at 2). However, Ms. Ballard has not pointed the court to any medical testimony that links her reaction to phosphine inhalation.[FN5]

> [FN5]. The Court notes that Plaintiff attached to her opposition memorandum 27 exhibits constituting hundreds of pages of documentary evidence. Plaintiff's memorandum however, only referenced one exhibit. It is possible that somewhere in the exhibits is evidence relating Ms. Ballard's reaction to phosphene inhalation that has not already been considered by the Court. A district court is not required to scour the record for information that would support the non-movant. *See Smith ex. rel. Estate of Smith v. United States,* 391 F.3d 621, 625 (5th Cir.2004)( "The non-movant is ... required to articulate the precise manner in which the submitted or identified evidence supports his or her claim.")

Therefore, because the Plaintiff has not come forward with sufficient medical evidence to establish specific causation, this Court will **GRANT** Defendant's motion. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

E.D.La.,2008.
Ballard v. Bunge North America, Inc.
Slip Copy, 2008 WL 2185385 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.