Slip Copy Page 1
Slip Copy, 2008 WL 2400944 (S.D.W.Va.)

Only the Westlaw citation is currently available.
United States District Court, S.D. West Virginia.
William R. RHODES, et al., Plaintiffs,
v.
E.I. DuPONT DE NEMOURS AND COMPANY,
Defendant.
**Civil Action No. 6:06-cv-00530.**

June 11, 2008.

Gerald R. Rapien, Robert A. Bilott, Taft Stettinius & Hollister, Cincinnati, OH, Harry G. Deitzler, R. Edison Hill, Hill Peterson Carper Bee & Deitzler, Larry A. Winter, Winter, Johnson & Hill, Charleston, WV, J. Steven Justice, Taft Stettinius & Hollister, Dayton, OH, for Plaintiffs.

Anthony F. Cavanaugh, Douglas G. Green, Jennifer Quinn-Barabanov, Libretta P. Stennes, Mark P. Fitzsimmons, Steptoe & Johnson, Washington, DC, Laurence F. Janssen, Steptoe & Johnson, Los Angeles, CA, Nathan B. Atkinson, Spilman Thomas & Battle, Winston-Salem, NC, Niall A. Paul, Robert J. O'Neil, Stephanie L. Ojeda, Alexander Macia, Karin L. Weingart, Spilman Thomas & Battle, Charleston, WV, for Defendant.

### MEMORANDUM OPINION & ORDER

JOSEPH R. GOODWIN, Chief Judge.

**\*1** Pending before the court is the plaintiffs' Motion for Class Certification [Docket 188]. Under Rule 23(c) of the Federal Rules of Civil Procedure, the court must determine whether to certify the action as a class action "[a]t an early practicable time."This determination should only be made "when the court has sufficient information to decide whether the action meets the certification criteria of Rules 23(a) and (b)."Manual for Complex Litigation, Fourth, § 21.133 (2004). For the reasons stated below, this court **FINDS** that it does not have sufficient information to determine whether the plaintiffs have satisfied their burden of proving the requirements of Rule 23. The court **ORDERS** that a preliminary class certification hearing be held on **July 2, 2008, at 11:00 a.m.** in Charleston.

### I. Background

This case arises from defendant E.I. du Pont de Nemours and Company's ("DuPont") release of perfluoroctanoic acid,[FN1] a chemical known as PFOA or C-8, from its Washington Works plant in Wood County, West Virginia. The plaintiffs allege that C-8 from the defendant's plant has contaminated the drinking water supplied by the Parkersburg Utility Board ("PUB"), whose well field is located on the Ohio River five miles upstream from Dupont's Washington Works plant. (Am. Class Action Compl. ¶ 1 [Docket 6]; Def.'s Mem. Opp'n Class Certification 7 [Docket 193].) In Count XI of their Amended Class Action Complaint, filed on May 26, 2006, in the Circuit Court of Wood County, West Virginia, the plaintiffs seek medical monitoring for a class of individuals who have been supplied water by PUB for at least one year. (Am.Compl.¶¶ 117-25.) The plaintiffs seek various forms of relief in addition to medical monitoring, including the establishment of a medical monitoring fund, and other equitable relief such as alternative drinking water. (*Id.* at 19.)Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the plaintiffs moved for an order certifying a class of "all individuals (other than *Leach* Class Members)[FN2] who, for a period of at least one year since November 1, 2005, to the date of an Order certifying the class herein, have been residential water customers of the Parkersburg Water District."(Pls.' Mem. Class Certification 1-2; *see also* Mot. Class Certification [Docket 188].)

> FN1. According to DuPont, "PFOA is a polymerization aid used in the manufacture of fluoropolymers, substances with special properties that have manufacturing applications and are used to make various consumer and industrial products."(Def.'s

Mem. Opp'n Class Certification 7 [Docket 193].) The chemical is also known as ammonium perfluorooctanoate ("APFO"), FC-143, DFS-1, and DFS-2. (Pls.' Mem. Class Certification 1 n. 1 [Docket 189].)

FN2. This suit follows a related state action, *Leach v. E.I. du Pont de Nemours & Co.,* in the Circuit Court for Wood County, West Virginia, in which plaintiffs' counsel represented a class of persons alleging that Dupont's release of C-8 from its Washington Works plant contaminated their drinking water. *See Leach v. E.I. du Pont de Nemours & Co.,* No. 01-C-608 (Cir.Ct.W.Va.). As originally defined, this class arguably included residents of Parkersburg. (*See* Pls.' Mem. Class Certification 3; Def.'s Mem. Opp'n Class Certification 11-12.) After the class was certified, *see Leach v. E.I. du Pont de Nemours & Co.,* No. 01-C-608, 2002 WL 1270121, *1 (Cir.Ct.W.Va. Apr. 10, 2002), the parties agreed to clarify further the class definition, effectively excluding PUB customers. (Order Den. DuPont's Mot. Disqualification Judge George W. Hill at 4, *Leach v. E.I. du Pont de Nemours & Co.,* No. 01-C-608, (Cir. Ct. W. Va. June 26, 2003), Pls.' Mem. Class Certification, Ex. 7.) Under the *Leach* criteria, however, PUB customers could have identified themselves as class members due to their consumption of water from one of the six other public districts or private wells identified in the *Leach* class definition. (Def.'s Mem. Opp'n Class Certification 13.) Approximately 8,000 Parkersburg residents have identified themselves as *Leach* class members. (*See* Pls.' Mem. Class Certification 2 n. 2; Def.'s Mem. Opp'n Class Certification 13.)

## II. Applicable Law

*A. Medical Monitoring Cause of Action in West Virginia*

West Virginia recognizes a cause of action for medical monitoring expenses "where it can be proven that such expenses are necessary and reasonably certain to be incurred as a proximate result of a defendant's tortious conduct." *Bower v. Westinghouse Elec. Corp.,* 522 S.E.2d 424, 426 (W.Va.1999). In order to prevail on a medical monitoring claim, the plaintiff must prove that

> (1) he or she has, relative to the general population, been significantly exposed; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures exist that make the early detection of a disease possible.

**\*2** *Id.*

West Virginia courts "reject the contention that a claim for future medial expenses must rest upon the existence of present physical harm."*Id.* at 430.In so holding, the Supreme Court of Appeals of West Virginia explained that "[a]lthough the physical manifestation of an injury may not appear for years, the reality is that many of those exposed have suffered some legal detriment; the exposure itself and the concomitant need for medial testing constitute the injury."*Id.* at 430 (quoting *Hansen v. Mountain Fuel Supply,* 858 P.2d 970, 977 (Utah 1993)).

While the plaintiff must prove significant exposure to a proven hazardous substance and an increased risk of contracting a disease as a result of that exposure as part of a medical monitoring case, both the degree of that risk and whether the plaintiff will contract a disease remain speculative. "It is both difficult to quantify the amount of increased risk imposed on an individual who does not yet have a

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

disease and difficult to conceptualize what that risk is worth in money damages." *Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 746 F.2d 816, 826 (D.C.Cir.1984). The calculation of damages depends, therefore, on the quantification of necessary medical monitoring, required as a result of the exposure and accompanying risk of disease, and may be awarded despite the speculative nature of the plaintiff's injuries. *See Bower,* 522 S.E.2d at 431 (holding that a plaintiff is not "required to demonstrate the probable likelihood that a serious disease will result from the exposure.") "A claim for medical monitoring seeks to recover the anticipated costs of longterm diagnostic testing necessary to detect latent diseases that may develop as a result of tortious exposure to toxic substances." *Id.* at 429.This injury-the need for expensive diagnostic examination-"is neither speculative nor resistant to proof." *Id.* at 430.Thus, in order to recover, the plaintiff must prove "to a reasonable degree of medical certainty" that medical monitoring is "necessary in order to diagnose properly the warning signs of disease."[FN3] *Id.* at 431 (citing *In re Paoli RR. Yard PCB Litig.,* 916 F.2d 829, 851 (3d. Cir.1990)).

> FN3. West Virginia differs from other states recognizing medical monitoring by allowing plaintiffs to recover lump-sum damage awards as opposed to receiving compensation through the establishment of a court-administered fund. *Bower,* 522 S.E.2d at 434. In *Bower,* the Supreme Court of Appeals of West Virginia explained its holding, stating: "[w]hile there are situations where utilization of such funds may be beneficial, we do not presently see a need to constrain the discretion of the trial courts to fashion appropriate remedies in cases such as these."*Id.*

B. *Requirements for Class Action Certification*

The certification of a class action under Rule 23 is a two-step process. *See United Bhd. of Carpenters & Joiners, Local 899 v. Phoenix Assoc., Inc.,* 152 F.R.D. 518, 521 (S.D.W.Va.1994). First, the plaintiff must satisfy all four of the prerequisites of Rule 23(a). Second, the action must fall within at least one of the subsections of Rule 23(b).*See Lukenas v. Bryce's Mountain Resort,* 538 F.2d 594, 595 n. 2 (4th Cir.1976). If a plaintiff fails to meet any of the prerequisites, the court cannot certify a class action. Rule 23(a) and the proposed applicable subsections of Rule 23(b) provide the following:

> **(a) Prerequisites.**One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

> *3 **(b) Types of Class Actions.**A class action may be maintained if Rule 23(a) is satisfied and if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole;

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Fed.R.Civ.P. 23(a), (b)(1)-(2). The plaintiff bears the burden of persuading the court that a class should be certified. *See Bear v. Oglebay,* 142 F.R.D. 129, 131 (N.D.W.Va.1992) (citing *Int'l Woodworkers of Am., AFL-CIO v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259, 1267 (4th Cir.1981)). The Court has "wide discretion in deciding whether or not to certify a proposed class." *Cent. Wesleyan College v. W.R. Grace Co.,* 6 F.3d 177, 185 (4th Cir.1993) (quoting *In re A.H. Robbins Co.,* 880 F.2d 709, 728-29 (4th Cir.1989)).

### C. Federal Rule of Civil Procedure 23(a)

To meet the requirements of Rule 23(a), the plaintiffs must establish commonality and typicality of issues, adequacy of representation, and that the class is so numerous that joinder of all members is impracticable.Fed.R.Civ.P. 23(a). To prove commonality, the plaintiffs must establish that common questions of law or fact exist with respect to the class. Commonality can be achieved despite some factual variance among class members' claims, as long as common questions of law are present. *See Holsey v. Armour Co.,* 743 F.2d 199, 217 (4th Cir.1984). Nonetheless, "class certification is only proper when a determinative critical issue overshadows all other issues." *Stott v. Hayworth,* 916 F.2d 134, 145 (4th Cir.1990); *Black v. Rhone-Poulenc,* 173 F.R.D. 156, 161 (S.D. W. Va 1996). When common questions are non-dispositive and require the district court to do a "case by case, position by position, activity by activity analysis," class certification is inappropriate. *Stott,* 916 F.2d at 145.

The Rule 23(a) requirements of typicality and adequacy of representation often merge with the commonality requirement. *See*Fed.R.Civ.P. 23(a); *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 626 n. 20 (1997) (instructing that the adequacy of representation requirement merges with the requirements of commonality and typicality, and also "factors in competency and conflicts of class counsel"). To satisfy the typicality requirement, the named representatives' claims must have the same essential characteristics as the claims of the purported class. *Tipton v. Sec'y of Educ.,* Civ. A. No. 2:90-0105, 1993 WL 545724, *7 (S.D.W.Va. Aug. 28, 1992) (quoting *De La Fuente v. Stokely Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983)). To adequately represent the class, the "class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Prods., Inc.,* 521 U.S. at 625-26 (quoting *E. Tex. Motor Freight Sys., Inc v. Rodriguez,* 431 U.S. 395, 403 (1977)).

**\*4** Finally, numerosity requires that the class be of sufficient size that joinder of all members is "impracticable." In determining whether joinder is impracticable, a court should analyze the factual circumstances of the case rather than relying on numbers alone. *Cypress v. Newport News Gen & Nonsectarian Hosp. Ass'n,* 375 F.2d 648 (4th Cir.1967). Factors to be considered are "the estimated size of the class, the geographic diversity of class members, the difficulty of identifying class members, and the negative impact of judicial economy if individual suits were required." *Christman v. Am. Cyanamid Co.,* 92 F.R.D. 441, 451 (N .D.W.Va.1981); *see also McGlothlin v. Connors,* 142 F.R.D. 626, 632 (W.D.Va.1992).

### D. Federal Rule of Civil Procedure 23(b)

A proposed class action must also meet the requirements of at least one of the subsections of Rule 23(b). The plaintiffs suggest that both Rule 23(b)(1) and (2) apply in this case. For purposes of this order, only Rule 23(b)(2) is relevant.[FN4] Rule 23(b)(2) requires the party opposing the class to have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."Fed.R.Civ.P. 23(b)(2). Class actions under subsection (b)(2) are limited to those seeking primarily injunctive or declaratory relief.[FN5]

FN4. The defendant disputes the applica-

tion of either subsection. For purposes of this order, the court will only address subsection (b)(2) because, as discussed below, subsection (b)(2) requires cohesiveness, an element the plaintiffs seek to prove using expert evidence. Application of subsection (b)(1) is not dependent upon expert evidence.

> FN5. It is apparent to the court that the plaintiffs are seeking primarily injunctive or declaratory relief in the form of a court-supervised medical monitoring program. (*See* Am. Compl. ¶ 125 ("Plaintiffs and the class have no adequate remedy at law and, therefore, medical monitoring and the establishment of a medical monitoring fund are reasonably necessary to pay for medical monitoring.").)

This court agrees with the Third Circuit's requirement that a proposed class be "cohesive" to be certified under Rule 23(b)(2).*See Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 143 (3d. Cir.1998). The "cohesiveness" requirement originally arose in the 23(b)(3) context and stems from the Supreme Court's statement that "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc,* 521 U.S. at 623;*see also In re New Motor Vehicles Canadian Exp.,* No. MDL 1532, 2006 WL 623591, *8 (D.Me. Mar. 10, 2006). The *Barnes* court required cohesiveness under 23(b)(2) because "in a(b)(2) action, unnamed members are bound by the action without the opportunity to opt out." *Barnes,* 161 F.3d at 142-43. The cohesiveness requirement is similar to but "more stringent" than the commonality requirement of Rule 23(a).*See Lienhart v. Dryvit Syst., Inc.,* 255 F.3d 138, 147 n. 4 (4th Cir.2001); *Barnes,* 161 F.3d at 142-43.

In a traditional (b)(2) class, "when a class of individuals alleges a group harm, and seeks a broad, class-wide, injunctive remedy, there is an 'underlying premise' of cohesiveness that makes (b)(2) certification appropriate." *In re New Motor Vehicles,* 2006 WL 623591, at *9. Thus, when a 23(b)(2) class is cohesive, "[a]ny resultant unfairness to the members of the class [as a result of being bound by the action] was thought to be outweighed by the purposes behind class actions: eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation." *Barnes,* 161 F.3d at 143 (quoting *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 248-49 (3d Cir.1975)).

**\*5** If the injunctive remedy must be individualized, however, it would be "unjust to bind absent class members to a negative decision where the class representatives's claims present different individual issues than the claims of the absent members present." *Id.* at 143 (quoting *Santiago v. City of Philadelphia,* 72 F.R.D. 619, 628 (E.D.Pa.1976)). In addition, the presence of individual issues may result in an unmanageable case, negating the benefits of litigating as a class action. *Id.* Proposed medical monitoring classes may suffer from cohesion difficulties, and numerous courts across the country have denied certification of such classes. *In re St. Jude Med., Inc.,* 425 F.3d 1116, 1122 (8th Cir.2005) (citing *e.g., Ball v. Union Carbide Corp.,* 385 F.3d 713, 727-28 (6th Cir.2004)); *Zinser v. Accufix Research Inst., Inc .,* 253 F.3d 1180, 1195-96,*amended by* 273 F.3d 1266 (9th Cir.2001); *Barnes,* 161 F.3d at 143-46; *Boughton v. Cotter Corp .,* 65 F.3d 823, 827 (10th Cir.1995)).

### III. Analysis

The plaintiffs assert a cause of action for medical monitoring and seek certification of a class of "all individuals (other than *Leach* Class Members) who, for a period of at least one year since November 1, 2005, to the date of an Order certifying the class herein, have been residential water customers of the Parkersburg Water District."(Pls.' Mem. Class Certification 1-2; *see also* Mot. Class Certification.) "Although not specifically mentioned in the rule,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

the definition of the class is an essential prerequisite to maintaining a class action." *Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir.1976) (citing 3B James Wm. Moore et al., Moore's Federal Practice ¶ 23.04 (2d ed.1974)). Prior to considering the Rule 23 factors, the court must "determine whether a class exists and if so what it includes."*Id.*

Here, the plaintiffs' class definition suggests that the putative class members, as a function of being a residential PUB customer for a period of one year or more, share a common medical monitoring cause of action. The definition presumes that C-8 is "a proven hazardous substance." The plaintiffs have proffered evidence in support of their allegation that C-8 is toxic and that proffer will permit this court to review the issue for purposes of class certification.[FN6] The plaintiffs' class definition also includes a one-year duration requirement. This duration is based solely on the expert's opinion that those exposed for greater than one year may have a cause of action for medical monitoring. Because the class definition relies on the expert's opinion and methodology, I must therefore examine the expert's opinion in determining whether to certify the class.

> FN6. The court does note, however, that the settlement agreement reached between the parties in *Leach* expressly provides that the defendant denied any wrongdoing or liability. (Class Action Settlement Agreement § 4. 1, Pls.' Mem. Class Certification Ex. 8.) The agreement acknowledges that the parties dispute whether C-8 is toxic and establishes a Science Panel to determine whether some connection exists between C-8 exposure and any human disease. (*Id* . § 12.2.) The defendant is only required to fund medical monitoring for the class after that threshold requirement is met. (*Id.*)

The plaintiffs also rely exclusively upon their experts' opinions to support the assertion that the medical monitoring claim can be commonly proven and therefore satisfies the requirements of commonality and cohesiveness.[FN7] In support of their motion for class certification, the plaintiffs submit two preliminary expert reports from Drs. David Gray and Barry Levy. (Pls.' Mem. Class Certification, Exs. 55-56.) According to the plaintiffs, whether the putative class has been significantly exposed to C-8, resulting in an increased risk of disease and the need for medical monitoring, can be addressed and proven on a common, class-wide basis using Dr. Gray's risk-assessment approach. (*See* Reply 29 [Docket 206].)

> FN7. The plaintiffs extensively cite, and rely upon, the Circuit Court of Wood County's order certifying the putative class in *Leach* in their argument advocating class certification in this case. The *Leach* litigation is certainly relevant to this lawsuit, but this court must conduct its own Rule 23 analysis.

**\*6** The defendant disputes both the methodology employed by the plaintiffs' experts as well as their conclusions. (Def.'s Mem. Opp'n Class Certification 4 n. 7.) The defendant argues that proof of the plaintiffs' medical monitoring claim turns on individualized issues that defeat class certification. (*Id.* at 5.) For example, the defendant alleges that exposure will depend upon "individual water consumption habits; fluctuations in [C-8] levels in PUB drinking water; the duration of PUB water consumption; and exposure from other sources."(*Id.*) The defendant further asserts that causation must be individually proven because of "[d]ifferences in individual susceptibilities to [C-8] based upon characteristics such as age or gender, ... family history and individual habits."(*Id.*) Finally, the defendant contends that proof of the need for medical monitoring depends upon "an individual's habits, medical history, family history and other risk factors."(*Id.*) The defendant argues that these individualized factors require the court to deny class certification because the commonality, typicality, and adequacy requirements under 23(a), and the cohesiveness requirement under 23(b)(2), are not satisfied.

The plaintiffs counter that Dr. Gray's risk-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

assessment methodology "determines what particular, specific level of the chemical in the community's water presents an unreasonable, significant risk of harm to *all* members of the community."(Reply 30.) The plaintiffs acknowledge that "there are always going to be variations in the age, sex, weight, medical history, water consumption patterns, etc. among community water customers," but argue that the risk assessment methodology proposed by Dr. Gray "accounts for all of these potential 'individual' variations within the community through the use of certain routine, accepted variables (referred to as 'default values' and 'uncertainty factors') that adjust the risk assessment calculations appropriately to capture all of these potential variations."(*Id.*) The plaintiffs suggest that the method employed by their experts "is routinely used to assess and evaluate risks of harm to entire communities exposed to toxic chemicals in their drinking water."(*Id.*) The plaintiffs' argument suggests that this court should *assume,* for the purposes of class certification, that exposure, risk of disease, and necessary periodic medical examinations-each an element of the medical monitoring cause of action-may be proven on a class-wide basis. They also suggest that this court should accept the opinions proffered in support of class certification by the plaintiffs' experts without first evaluating their relevance or reliability.

The practice in the Fourth Circuit is to "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for affected parties and ... promote judicial efficiencies.' " *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 424 (4th Cir.2003) (quoting In re A.H. Robins Co., 880 F.2d at 740). The Supreme Court has instructed that district courts only certify class actions after conducting a "rigorous analysis" to determine whether the prerequisites of Rule 23(a) have been satisfied, *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161 (1982), and has recognized that "[e]valuation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 12 (1978) (quoting 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3911, 485 n. 45 (1976)).

**\*7** In accordance with these policies, the Fourth Circuit has held that a district court must not accept as true the allegations contained in the complaint, and should instead make the factual and legal inquiries necessary under Rule 23. *Gariety v. Grant Thorton, LLP,* 368 F.3d 356, 365 (4th Cir.2004). In so holding, the Fourth Circuit explained that the court "performs the public function of determining whether the representative parties should be allowed to prosecute the claims of absent class members" when considering whether to certify a class action. *Id.* at 366-67."Were the court to defer to the representative parties on this responsibility by merely accepting their assertions, the court would be defaulting on the important responsibility conferred on the courts by Rule 23 of carefully determining the class action issues and supervising the conduct of any class action certified." *Id.* at 367.Further, if the court were to do so, "every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order, frustrating the district court's responsibilities for taking a 'close look' at relevant matters, for conducting a 'rigorous analysis' of such matters, and for making 'findings' that the requirements of Rule 23 have been satisfied." *Id.* at 365 (internal citations omitted).

Although the majority of courts now recognize that district courts may look beyond the pleadings to determine whether the requirements of Rule 23 have been met,[FN8] previous disagreement existed as a result of some courts' misinterpretation of the Supreme Court's language in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974). In *Eisen,* the Supreme Court instructed that district courts are prohibited from conducting a "preliminary inquiry into the merits of a proposed class action" when they consider certification. *Id.* at 177-78.The Court ex-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

plained that Rule 23 does not permit such an inquiry and that "such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. " *Id.* at 177. Additionally, such inquiry at the class certification stage may "color the subsequent proceedings and place an unfair burden on the defendant." *Id.* at 178. Following *Eisen,* numerous courts, including some in the Fourth Circuit, concluded that "a judge may not consider any aspect of the merits, and has led other courts to think that a judge may not do so at least with respect to a prerequisite of Rule 23 that overlaps with an aspect of the merits of the case." *In re Initial Pub. Offering Sec. Lit.,* 471 F.3d 24, 34 (2d Cir.2006)("*IPO*"); see *Gariety,* 368 F.3d at 365 (recognizing the district court's misapplication of *Eisen* ).

> FN8.*See, e.g., Oscar Private Equity Invs. v. Allegiance Telecom, Inc.,* 487 F.3d 261 (5th Cir.2007); *In re Initial Public Offering Sec. Lit.,* 471 F.3d 24 (2d Cir.2006); *Heffner v. Blue Cross & Blue Shield of Alabama, Inc.,* 443 F.3d 1330 (11th Cir.2006); *In re Polymedica Corp. Sec. Litig.,* 432 F.3d 1 (1st Cir.2005); *Rodney v. Northwest Airlines, Inc.,* 146 Fed. Appx. 783 (6th Cir.2005); *Blades v. Monsanto Co.,* 400 F.3d 562 (8th Cir.2005); *Gariety v. Grant Thorton, LLP,* 368 F.3d 356, 365 (4th Cir.2004); *Newton v. Merril Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154 (3d. Cir.2001); *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672 (7th Cir.2001).

In the past several years, however, courts have reconsidered this interpretation of *Eisen* and concluded that notwithstanding the *Eisen* prohibition, district courts must comply with the procedural requirements of Rule 23 and make whatever factual and legal inquiries necessary under the rule. *Gariety,* 368 F.3d at 365. "*Eisen* simply restricts a court from expanding the Rule 23 certification analysis to include consideration of whether the proposed class is likely to prevail ultimately on the merits." *Id.* at 366. The prohibition "does not mean that consideration of facts necessary to a Rule 23 determination is foreclosed merely because they are required to be proved as part of the merits."*Id* . Thus, the "[p]laintiffs cannot tie the judge's hands by making allegations relevant to both the merits and class certification. *Szabo v. Bridgeport Mach., Inc.,* 249 F.3d 672, 677 (7th Cir.2001).

**\*8** District courts must conduct a "rigorous analysis" to determine whether the plaintiffs have proven that the prerequisites of Rule 23(a) have been satisfied. Thus, while it is clear that the district court may look beyond the pleadings, including consideration of proffered expert evidence, when making the class certification determination, use of expert evidence at this stage remains inconsistent. *Gariety,* 368 F.3d at 368; *Davis v. City of Portsmouth, Virginia,* 579 F.Supp. 1205, 1208 (E.D.Va.1983)."[T]he question of *when* an expert opinion is an appropriate tool in determining whether a class may be certified is a tricky one ." *Fogarazzo v. Lehman Bros., Inc,* No. 03 Civ. 5194(SAS), 2005 WL 361205, at \*1 (S.D.N.Y. Feb. 16, 2005) (emphasis added). The struggle with consideration of expert opinions during class certification stems, in part, from courts' misinterpretation of *Eisen* and their disagreement regarding whether courts should delve into the merits of a case at class certification. Although the Fourth Circuit has not addressed this issue,[FN9] the court finds guidance from other courts that have done so.

> FN9. Although the Fourth Circuit has not addressed the issue, the Middle District of North Carolina, in *DeLoach v. Philip Morris Co.,* 206 F.R.D. 551 (M.D.N.C.2002), rejected the defendants' argument that the plaintiff could not prove damages by common proof because of their expert's flawed methodology, stating that "the court will not referee in a battle of the experts, as it would be premature at this time." *Id. at* 564-66. The court held that its "role at the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

class certification stage is to inquire whether or not the proposed methods of proof are 'so insubstantial that they amount to no method at all.' " Id. at 566 (quoting In re Catfish Antitrust Litigation, 826 F.Supp. 1019, 1042 (N.D.Miss.1993)). In addition to the fact that *DeLoach* is not binding on this court, I also note that the case was decided prior to *Gariety,* in which the Fourth Circuit directed that district courts should make whatever factual and legal inquiries necessary under Rule 23. *Gariety,* 368 F.3d at 365.

A line of cases from the Second Circuit illustrates the connection between courts' prior reliance on *Eisen* in support of a strict rule prohibiting any inquiry into the merits of a case and their corresponding treatment of expert testimony proffered in support of class certification. *See* IPO, 471 F.3d 24; In re Visa Check/MasterMoney Antitrust Lit., 192 F.R.D. 68 (E.D.N.Y.2000)*("Visa Check I"), aff'd,* 280 F.3d 124, 135 (2d Cir.2001)*("Visa Check II").* In *Visa Check I,* the district court certified a group of merchants and trade associations that challenged Visa's and Mastercard's policy requiring merchants that accepted the companies' credit cards to also accept their debit cards. 192 F.R.D. at 71. The plaintiffs alleged that the policy violated sections 1 and 2 of the Sherman Antitrust Act and sought an injunction and treble damages. Id. at 71-73.The plaintiffs moved to certify a class of approximately four million merchants and submitted in support of their motion an economist's expert report that three central issues to the litigation could be determined on a class-wide basis. Id. at 73-74.Visa and Mastercard moved under Federal Rule of Evidence 702 to strike the expert's report, proffering their own expert report which challenged both the methodology of the plaintiff's expert and his conclusion that such issues could be established on a class-wide basis. Id. at 75-76.The district court denied the defendants' motion to strike and certified the class. The court first considered the defendants' motion to strike, concluding that the expert's report was not so flawed as to be inadmissible under *Daubert. Id.* at 77-78;*see also* Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). The court found that "there is a role for a *Daubert* inquiry at the class certification stage."*Id.* at 76.This role, noted the court, "is a limited one, tailored to the purpose for which the expert opinion is offered."*Id.* at 77.The Daubert analysis, conducted at class certification, will not determine "whether a jury at trial should be permitted to rely on [the plaintiffs' expert's] report to find facts as to liability, but rather whether [the court] may utilize it in deciding whether the requisites of Rule 23 have been met."*Id.* In so limiting its *Daubert* analysis, the district court explained that it was "expressly forbidden from engaging in a 'preliminary inquiry into the merits' and should not, at this stage in the proceedings, "delve into the merits of an expert's opinion, or indulge 'dueling' between opposing experts."*Id.* at 76 (quoting Eisen, 417 U.S. at 177; Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 292 (2d Cir.1999)). The court denied the defendants' motion to strike after finding that the opinion was "admissible for the narrow purpose for which it is offered: to support the plaintiffs' class certification motion."*Id.* at 78.

**\*9** After denying the defendants' motion to strike, the court considered whether the plaintiffs had satisfied Rule 23, applying a more permissive approach influenced by the misapplication of the *Eisen* prohibition on considering the merits. *Id.* at 84.The court concluded that the plaintiffs "have met their burden ... of showing that injury in fact is *susceptible* to common poof and that class treatment is therefore appropriate."*Id.* (emphasis added). Under Second Circuit jurisprudence, the plaintiff's "burden" was to make "some showing" that the Rule 23 requirements had been met. *See* Caridad, 191 F.3d at 292 (establishing the "some showing" standard of proof); *see also* IPO, 471 F.3d at 35 & n. 5 (describing standard in Second Circuit). Thus, although the district court applied *Daubert* in considering the defendants' motion to strike, it refused, based on the misapplication of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*Eisen,* to apply the same standard under Rule 23.

The Second Circuit affirmed the district court's certification of the class, and confirmed the court's reliance on *Eisen* in support of the rule that "a motion for class certification is not an occasion for examination of the merits of the case." *Visa Check II,* 280 F.3d at 135. Concerning the admissibility of an expert's opinion, the circuit court held that "[a] district court must ensure that the basis of the expert opinion is not so flawed that it would be inadmissible as a matter of law."*Id.* Under this line of reasoning, district courts "may not weigh conflicting expert evidence or engage in statistical dueling of experts."*Id* . Rather, "[t]he question for the district court at the class certification stage is whether plaintiffs' expert evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class, not whether the evidence will ultimately be persuasive."*Id.* Thus, so long as the plaintiff provided expert testimony whose methodology was not "fatally flawed," the court would accept the evidence for class certification purposes regardless of the challenges made by the defendant or any competing expert testimony.

In 2006, the Second Circuit addressed the "surprisingly unsettled" issue of "what standards govern a district judge in adjudicating a motion for class certification under Rule 23" and subsequently disavowed the *Visa Check* standard. *IPO,* 471 F.3d at 26. The court began by clarifying its interpretation of *Eisen,* bringing the Second Circuit in line with the majority of circuits that now hold that *Eisen* does not prohibit a consideration of the merits during the certification stage. *Id.* at 34 ("Unfortunately, the statement in *Eisen* that a court considering certification must not consider the merits has sometimes been taken out of context and applied in cases where a merits inquiry either concerns a Rule 23 requirement or overlaps with such a requirement.").

**\*10** The court recognized that "the *Eisen* caution was a major influence" on the Second Circuit's condemnation of "statistical dueling" between experts and the corresponding permissive approach in accepting reports of plaintiff's experts for purposes of class certification. *Id.* at 35.The court "disavow [ed] the suggestion in *Visa Check* that an expert's testimony may establish a component of a Rule 23 requirement simply by not being fatally flawed." *Id.* at 42.The court explained that the court's decision regarding class certification requires a determination that each of the Rule 23 requirements is satisfied and can only be made after applying a legal standard, e.g., numerosity, commonality, or predominance, to a set of facts, some of which might be in dispute. *Id.* at 40.Such "determination" may require the judge to resolve underlying factual disputes prior to applying the appropriate legal standard. *Id.*

The court instructed that the district court should make this determination "just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit."*Id.* at 42.Thus, although the court did not expressly instruct courts in the Second Circuit to apply the *Daubert* rule at the class certification stage, it did indicate that if such an analysis would be appropriate to "resolve a dispute about any other threshold prerequisite," such as the admissibility of an expert's testimony in a summary judgment motion, it would also be appropriate in considering class certification.

Concerning the scope of the district court's analysis, the court reaffirmed the limited nature of the class certification analysis. At the class certification stage, courts should only address and determine issues directly related to the Rule 23 requirements. Because *Eisen* is "properly understood to preclude consideration of the merits only when a merits issue is unrelated to a Rule 23 requirement, there is no reason to lessen a district court's obligation to make a determination that every Rule 23 requirement is met before certifying a class just because of some or even full overlap of that requirement with a merits issue."*Id.* Finally, the court noted that "overlap between a Rule 23 requirement and a merits issue justifies some adjustment in a district court's pro-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

cedures at the class certification stage" in order "[t]o avoid the risk that a Rule 23 hearing will extend into a protracted mini-trial."*Id.* The court noted that the district court must be "afforded considerable discretion to limit both discovery and the extent of the hearing on Rule 23 requirements ."*Id.* The court instructed, however, that "even with some limits on discovery and the extent of the hearing, the district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met."*Id.*

This court finds the Second Circuit's review of the recent development of the law and its reasoning to be helpful in determining this matter. Like the district court in *Visa Check I,* I agree that "there is a role for a *Daubert* inquiry at the class certification stage."FN10 *Visa Check I,* 192 F.R.D. at 76. *Daubert* and *Kumho Tire* teach us that testing the reliability of expert opinions before consideration of those opinions is an important function for the court. When expert evidence is offered at trial, the trial court must serve as a gatekeeper to "ensure that any and all scientific testimony ... is not only relevant, but reliable." *Kumho Tire Co., v. Carmichael,* 526 U.S. 137, 147 (1999) (citing *Daubert,* 509 U.S. at 589). Here, the court must satisfy itself that the facts, data, principles, and methods undergirding the expert opinions offered in support of class certification are similarly reliable prior to relying on those opinions during class certification. Failure to make this inquiry prior to certification would result in this court's failure to conduct the "rigorous analysis" required by the Supreme Court.

> FN10. Use of the *Daubert* analysis during class certification is inconsistent. Some federal district courts apply either a full *Daubert* analysis or a limited *Daubert* analysis, while other courts have rejected the applicability of *Daubert* at the class certification stage. *See generally* Steven Glickstein, Melissa C. Morrow, & Julie K. du Pont, *Does Daubert Apply to Class Certification Hearings?,* 695 PLI /Lit 423 (2003) (collecting cases that have applied varying *Daubert* standards during class certification); Joseph T. McLaughlin, Heather L. Dietrick, & Todd M. Beaton, Jr., *Expert Testimony and Class Certification: The Outcome Determinative Role of Daubert,* SN058 ALI-ABA 507 (2008) (same).

**\*11** While the class certification determination is certainly important to the litigants, this court is especially cognizant of its duty to protect absent class members' rights. Certification without adequate review of the parties' experts may substantially impair or foreclose the rights of absent class members if later review results in exclusion of the parties' experts. Given the high percentage of class actions which settle as a result of class certification,FN11 failure to conduct a *Daubert* analysis might invite plaintiffs to seek class status for settlement purposes, and essentially amounts to a "delegation of judicial power to the plaintiffs, who can obtain class certification just by hiring a competent expert." *West v. Prudential Sec.,* 282 F.3d 935, 938 (7th Cir.2002).

> FN11.*See* Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* 6 (2005) (noting that according to a 2005 study, ninety percent of certified class actions settled).

The *Daubert* analysis is especially necessary in this suit, where the plaintiffs assert a medical monitoring cause of action and rely on their experts' opinions to prove both the merits of their case as well as the appropriateness of class certification. Under the medical monitoring cause of action, the plaintiffs need not allege or prove a present physical injury. While proof of the hazardous nature of C-8 and the tortious conduct of the defendant may be proven, if at all, by direct evidence, the plaintiffs seek to prove the other elements-exposure, risk of disease, and the necessity for medical monitoring-by expert

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

testimony. The plaintiffs proffer this same expert testimony, based upon the same risk-assessment analysis, for the proposition that elements of the medical monitoring cause of action can be proven commonly.

"[C]lass action machinery is expensive and ... a court has the power to test disputed premises early on if and when the class action would be proper on one premise but not another." *Tardiff v. Knox County,* 365 F.3d 1, 4-5 (1st Cir.2004). Here, class certification turns on the court's acceptance of the plaintiffs' experts' opinions reached after applying their risk-assessment analysis. Although the court recognizes that those opinions are closely linked to the merits of the case, the court must conduct the required Rule 23 analysis.

This court has broad discretion when considering class certification; the district court "is free to consider matters developed through ... discovery, as well as other matters [the district court] considers appropriate for making its Rule 23 findings." *Gariety,* 368 F.3d at 368. Neither the Federal Rules of Evidence nor the Rules of Civil Procedure prohibit use of *Daubert* at the class certification stage and Rule 23 does not specifically provide for, require, or prohibit specific proceedings. In the interest of fairness and efficiency, prior to considering the expert opinions proffered by the plaintiffs to prove commonality and cohesiveness, the court concludes that the opinions offered by the plaintiffs' experts must be reliable and relevant under the pr inciples established in *Daubert.*

**\*12** Any findings made at this stage in the proceeding "serve the court *only* in its determination of whether the requirements of Rule 23 have been demonstrated." *Gariety,* 368 F.3d at 366. As both the *Visa I* and *IPO* courts noted, the *Daubert* inquiry must be limited to consideration of the expert's opinion which is offered to support the plaintiff's class certification motion. To inquire further would violate *Eisen's* rule against consideration of the merits during class certification. In recognition of the Supreme Court's directives-including *Eisen* and *Falcon*-the court "will inquire no further into the merits than is necessary to determine the likely contours of this action should it proceed on a representative basis." *Fisher v. Virginia Elec. & Power Co.,* 217 F.R.D. 201, 211 (E.D.Va.2003). However, "[i]f findings made in connection with those requirements overlap findings that will have to be made on the merits, such overlap is only coincidental." *Gariety,* 368 F.3d at 366.

While there is no requirement that a district court hold a preliminary hearing when considering class certification, numerous courts have determined that such a hearing is appropriate and useful. *Int 'l Woodworkers of Am., AFL-CIO v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259, 1268 (4th Cir.1981) ("It is not essential to the resolution of every class certification motion that the trial court conduct a hearing, but it is essential that a plaintiff be afforded a full opportunity to develop a record containing all the facts pertaining to the suggested class and its representatives."). According to the Fourth Circuit, "[i]t is seldom, if ever, possible to resolve class representation questions from the pleadings, and where facts developed during discovery proceedings are inadequate, an evidentiary hearing should be held on the request of the parties or, if necessary for a meaningful inquiry into the requisites of Rule 23, by the court sua sponte."*Id.*

The Civil Rules Advisory Committee has instructed that "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."Fed.R.Civ.P. 23(c)(1)(C) Adv. Comm. Notes 2003. This court **FINDS** that it does not have sufficient information to determine whether the plaintiffs have satisfied their burden and that in order to make this determination the court must test the plaintiffs' key experts' methodology and assumptions, proffered in support of class certification, under *Daubert.*Accordingly, this court **ORDERS** a *Daubert* hearing be held on **July 2, 2008, at 11:00 a.m.** in Charleston. Counsel shall be fully prepared to present evidence and argument.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party and to publish the decision on the court's website at www.wvsd.uscourts.gov.

S.D.W.Va.,2008.

Rhodes v. E.I. du Pont de Nemours and Co.
Slip Copy, 2008 WL 2400944 (S.D.W.Va.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.