Not Reported in F.Supp.2d                                                                                                            Page 1
Not Reported in F.Supp.2d, 2006 WL 278384 (N.D.Ga.), 69 Fed. R. Evid. Serv. 463

United States District Court,N.D. Georgia, Atlanta Division.
J.D. WRIGHT and Kimberly Jane Wright, Plaintiffs,
v.
**CASE CORPORATION**, Defendant.
No. Civ.A.1:03CV1618-JEC.

Feb. 1, 2006.

Clifford Harold Hardwick, Office of Clifford H. Hardwick, Roswell, GA, for Plaintiffs.
Daniel J. La Fave, Mark Kircher, Quarles & Brady, LLP, Milwaukee, WI, Melissa Dickey Peeler, Johnathan Tyler Krawcheck, Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, Atlanta, GA, for Defendant.

*ORDER*

CARNES, J.

**\*1** This case is presently before the Court on defendant's Motion to Exclude Plaintiff's Liability Expert [46], defendant's Motion for Summary Judgment [47], plaintiff's Motion to Exclude Defendant's Expert Witness [55], and defendant's Motion for Extension of Time to File Response [59]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion to Exclude Plaintiffs' Liability Expert [46] should be GRANTED, defendant's Motion for Summary Judgment [47] should be GRANTED in part and DENIED in part, plaintiff's Motion to Exclude Defendant's Expert Witness [55] should be DENIED, and defendant's Motion for Extension of Time to File Response [59] should be GRANTED.

*FACTUAL BACKGROUND*

This is a product liability action arising from plaintiff's injury while using a Model 1840 Uni-Loader manufactured by defendant. (Compl.[1].) On November 20, 2002, plaintiff [FN1] was using his Case Uni-loader (the "loader") to perform a landscaping job.[FN2] (Defendant's Statement of Material Facts ("SMF") at ¶ 1.) At the end of the work day, plaintiff parked the loader in front of his gooseneck trailer, with the arm of the trailer protruding into the area used to enter and exit the loader. (*Id.* at ¶ 2.) In preparing to exit the loader with the engine running, plaintiff raised the seat bar. (*Id.* at ¶ 3.) The seat bar is intended to activate the loader's operator presence system ("OPS"), which locks the controls that raise and manipulate the loader's bucket and permits the parking brake to engage. (*Id.*) As plaintiff was sliding out of the left side of the loader, the loader moved and its protective cage swung around and hit plaintiff in the back of the head, pushing his head into the neck of the trailer.[FN3] (SMF at ¶ 4.) Plaintiff sustained serious injuries when his head was crushed between the loader's protective cage and the trailer neck. (*Id.* at ¶ 5.)

FN1. Plaintiff J.D. Wright's wife, Kimberly Jane Wright, filed suit in state court alleging loss of consortium. Defendant removed the action to this Court, and the Court consolidated the two cases. (June 9, 2004 Order [39].) As Kimberly Wright's claim is derivative of J.D. Wright's claim, the Court uses the designation "plaintiff" to refer only to J.D. Wright unless it indicates otherwise. The Court refers to Kimberly Wright as "K.J. Wright."

FN2. Unless otherwise indicated, the Court draws the undisputed facts from Defendant Case Corporation's Statement of Material Facts ("SMF") [47] and Plaintiff's Response to Defendant's Statement of Material Facts ("PSMF") [23].

FN3. Defendant suggests that plaintiff

Not Reported in F.Supp.2d, 2006 WL 278384 (N.D.Ga.), 69 Fed. R. Evid. Serv. 463

somehow hit a control as he slid out of the loader, causing the loader's left wheels to advance uphill and setting the protective cage into motion. (SMF [22] at ¶ 4.) Plaintiff denies that he hit any control, stating instead that the seat bar popped out of the sprocket and caused the machine to start moving. (PSMF [23] at 4.)

Plaintiff subsequently filed this lawsuit, alleging that the OPS is defective in design because it failed to keep the loader from moving after plaintiff raised the seat bar. (Compl.[1].) Plaintiff also alleged that defendant failed to warn of the dangers associated with the loader, namely that the machine could still move once the operator raised the seat bar. (*Id.*)

Plaintiff originally filed this action in the Cobb County Superior Court. (Compl.[1].) Defendant removed the case to the United States District Court for the Northern District of Georgia, Atlanta Division. (Notice of Removal [1].) Plaintiff is a Georgia resident and defendant is a Delaware corporation with its principal place of business in Wisconsin. (*Id.* at ¶ 4.) Plaintiff seeks damages in excess of $75,000. (*Id.* at ¶ 5.) Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

### DISCUSSION

I. Defendant's Motion to Exclude Plaintiff's Expert Witness

In support of his product liability claims, plaintiff seeks to present the expert testimony of Mr. John Jones, a mechanical engineer. In his expert report, Jones states that the Model 1840 is defective because the OPS failed to prevent the loader from moving after plaintiff raised the seat bar. (Jones Report, attached to Def.'s Mot. for Summ. J. [22] at Ex. C.) He offers two alternative designs to rectify the purported defect: 1) a locking mechanism to secure the loader against unintended movement; and 2) a valving system on the hydraulic wheel drive motors to lock the wheels against movement. (*Id.*)

Defendant contends that Jones is not qualified to render expert opinions in this case, and that his opinions are not sufficiently reliable to meet the standards of admissibility set forth in Rule 702 of the Federal Rules of Evidence and by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Court agrees.

**\*2** In *Daubert,* the Supreme Court concluded that Rule 702 of the Federal Rules of Evidence governs the admissibility of scientific expert testimony. *Daubert,* 509 U.S. at 588. Rule 702 provides that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

FED.R.EVID. 702. Pursuant to Rule 702, scientific expert testimony is admissible when: (1) the expert is qualified to testify competently; (2) the expert's methodology is reliable; and (3) the expert's testimony will assist the trier of fact to understand the evidence or to determine a fact in issue in the case. *Allison v. McGhan Medical Corp.,* 184 F.3d 1300, 1309 (11th Cir.1999).

The *Daubert* Court emphasized the district court's "gatekeeping" role to ensure that scientific testimony is relevant and reliable before it is admitted as evidence. *Daubert,* 509 U.S. at 589. *See also Hudgens v. Bell Helicopters/Textron,* 328 F.3d 1329, 1342 (11th Cir.2003) (noting "the repeated emphasis the Supreme Court has placed upon the district court's 'gatekeeping' role in the determination of whether expert evidence should be admitted"). This gatekeeping obligation applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The "overarching" goal of *Daubert's* gatekeeping requirement is to ensure that

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

The proponent of expert testimony bears the burden of demonstrating that the expert "is qualified to render an expert opinion, that the opinion is reliable, and that the opinion would assist the trier of fact in resolving a disputed issue of material fact." *McDowell v. Brown,* 392 F.3d 1283, 1298 (11th Cir.2004).*See also, McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1238 (11th Cir.2005) (recognizing that "[t]he burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion") (citing *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir.2004)). As discussed below, plaintiff has not met his burden of showing that Jones is qualified, or that his opinions are reliable.

A. Qualification

In support of Jones' qualification as an expert, plaintiff refers to Jones' CV and notes that he is a "licensed professional engineer" and a "well-qualified hydraulics engineer." (Pl.'s Resp. to Def.'s Mot. to Exclude Pl.'s Expert [24] at 3.) As an initial matter, there is nothing in Jones' CV or in his deposition testimony that reveals any particular skill in the area of hydraulics or braking systems. (*See generally* Jones Dep. and Jones CV, attached to Def. Mot. for Summ. J. at Ex. D.) In fact, plaintiffs' suggestion that Jones has specialized expertise in hydraulics or braking systems is completely without support in the record.

**\*3** Moreover, the fact that Jones is a licensed engineer is, in and of itself, insufficient to qualify him as an expert in this case. *See United States v. Brown,* 415 F.3d 1257 (11th Cir.2005) (upholding district court's refusal to qualify expert with a Ph.D. in plant pathology who had only worked with the chemical substance at issue in the case on "isolated projects"), *Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.,* 958 F.2d 1169, 1174 (1st Cir.1992) (finding engineer unqualified to provide expert testimony on a purported design defect in a crane, where the engineer had no experience designing, maintaining, or operating cranes), and *Diviero v. Uniroyal Goodrich Tire Co.,* 919 F.Supp. 1353, (D.Ariz.1996) (concluding that engineer did not have the expertise to testify about a purported defect in steel belted radial tires). Jones' deposition testimony reveals that, while he may have an engineering degree, he has very little experience with the type of machinery at issue in this case. Jones has never done design or maintenance work on any type of loader. (Jones Dep. at 96.) Prior to this litigation his experience with the loader was limited to using a similar type of machine on a few occasions to clean his yard. (*Id.* at 95.)There is no evidence that Jones was involved in any publications or in-depth studies involving loaders or similar machinery. In fact, Jones was not at all familiar with the mechanics of the loader until he became involved in this lawsuit.[FN4] (*Id.* at 133.)

> FN4. Jones has spent a significant part of his career operating a company that manufactured custom stairs and acting as a professional expert witness. (Jones Dep. at 43, 49, 63, 88.)

Nor has Jones made a serious effort to gain expertise since plaintiff retained him as an expert. Even now, Jones' experience with loaders is limited to looking at the particular machine that plaintiff was using at the time of the accident. (Jones Dep. at 94.) Jones has not compared different loader designs or different manufacturers' products. (*Id.* at 94, 134.)Although he reviewed a prior accident report involving the Model 1835B Case loader, Jones does not know whether the Model 1835B is substantially similar to the Model 1840 at issue in this case. (*Id.* at 101.)He does not remember how much time he spent reviewing standards applicable to this particular machine, but he concedes that he is not aware of the most current version of those standards.(*Id.* at 173, 189, 190.)

As is apparent from his deposition testimony, Jones'

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

engineering degree does not provide the knowledge that would enable him to competently provide expert testimony about the machinery at issue in this case. Given his lack of experience-or even familiarity-with the type of machine involved in plaintiff's accident, Jones is not qualified as an expert, and defendant's motion to exclude his testimony should be granted.

B. Reliable Methodology

In addition, Jones' opinions are not sufficiently reliable to be admitted under Rule 702 and the standards of *Daubert.*Even a " 'supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based on some recognized scientific method.' " *McDowell,* 392 F.3d at 1298 (citing *Clark v. Takata Corp.,* 192 F.3d 750, 759 (7th Cir.1999)). To fulfill its gatekeeper obligation under *Daubert,* the Court must ensure that scientific evidence is "the product of reliable principles and methods" and "must screen out 'expert' testimony that is not sufficiently ... trustworthy for the factfinder to consider." *Brown,* 415 F.3d at 1266.

**\*4** The Supreme Court has identified several non-exclusive factors that a court may consider when evaluating whether a particular theory or study is reliable: (1) whether the theory in question can be and has been empirically tested; (2) whether the theory in question has been subjected to peer review and publication; (3) the theory's known or potential error rate; and (4) whether the theory is generally accepted in the field. *Daubert,* 509 U.S. at 593-95. As the Court emphasized in *Kumho Tire,* however, "the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire,* 526 U.S. at 141. The pertinence of the *Daubert* reliability factors "depends on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Brown,* 415 F.3d at 1268 (citing *Kumho Tire,* 526 U.S. at 150).

In this case, the Court finds the *Daubert* factors to be helpful measures of the reliability of Jones' opinions. As discussed, Jones states in his report that the Model 1840 Case loader is defective because the OPS failed to prevent the loader from moving after plaintiff raised the seat bar. (Jones Report, attached to Def.'s Mot. for Summ. J. [22] at Ex. C.) He offers two alternative designs to rectify the purported defect: 1) a locking mechanism to secure the loader against unintended movement; and 2) a valving system on the hydraulic wheel drive motors to lock the wheels against movement. (*Id.*) Applying the *Daubert* factors to Jones' report and deposition testimony, it is clear that Jones' "expert" opinions lack sufficient indicia of reliability to be admitted into evidence.

First, with respect to Jones' proposed alternative designs, he concedes in his deposition that he has not done any testing on either the locking mechanism or the valving system recommended in his report. (Jones Dep. at 178, 180)."[T]he absence of testing is a consistent factor in court decisions excluding expert testimony." *McGee v. Evenflo, Co., Inc.,* 2003 WL 23350439 \*9 (M.D. Ga.2003 (excluding as unreliable expert testimony on alternative design of carseat).*See also, Michigan Millers Mut. Ins. Corp. v. Benfield,* 140 F.3d 915, 921 (11th Cir.1998) (upholding district court's exclusion of expert testimony as unreliable where expert "performed no tests"). Testing is particularly important in alternative design cases, such as this one, where it is necessary to show that an alternative design is actually feasible. *Bourelle v. Crown Equipment Corp.,* 220 F.3d 532, 538 (7th Cir.2000) (finding engineer's opinion unreliable where the engineer did no testing to support his proposed alternative forklift designs).

Moreover, there is no evidence that Jones has published his designs, or otherwise subjected them to any form of peer review. Although Jones acknowledges feasability problems with at least one of his proposed alternative designs, he admits that he does not know how substantial the problems are. (Jones

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Dep. at 179.) The "error rate" of Jones' alternatives, therefore, is unquantifiable and potentially significant. Finally, Jones cannot point to any industry standards or literature that reference his proposed alternative designs, and he is not aware if his designs or similar ones are incorporated in other manufacturers' loaders or even in other models of Case loaders. (Jones Dep. at 180). Thus, it does not appear from the record that Jones' alternative designs are "generally accepted."

**\*5** Indeed, Jones characterizes his proposed alternative designs as simply "suggestions ... to give somebody an idea" of how the loader could be improved. (Jones Dep. at 179.) It is apparent from his testimony that Jones has done little more than "conceptualize his proposed modifications." *McGee,* 2003 WL 23350439 at \*13. *Daubert's* reliability prong requires more than "conceptualizing possibilities." *Id.*

Jones' opinion that the Model 1840 Case loader is defective is similarly unreliable. In Jones' report, he claims to have done "a series of performance tests," including disassembling the loader. (Def.'s Mot. for Summ. J. [22] at Ex. C.) At his deposition, however, Jones clarified that his opinion was based on approximately five minutes of "testing" during which Jones visually inspected the loader, took some measurements, and activated its controls. (Jones Dep. at 195). Further, Jones does not refer to any industry study, standard, or literature, to support his opinion.FN5 Indeed, Jones admits that he has not exhausted all the industry standards that pertain to the loader, and that he is not familiar with the most current version of the relevant standard, SAE J1388 JUN85. (Jones Dep. 80, 189-190.) Jones' report does not cite this standard, which sets forth the SAE recommended practice for this particular type of machinery. (*Compare* Def.'s Mot. for Summ. J. [22], Exs. C and D.) Finally, Jones has not done any comparative testing or benchmarking between Case loaders and other manufacturers' products, which could show "general acceptance" of his opinion that the Model 1840 Case loader is defective. (Jones Dep. at 135.)

> FN5. Jones cites OSHA standards as part of the basis for his expert report, but he acknowledges that OSHA standards are geared towards employers, not manufacturers or machine designers. (Jones Dep. at 201.) Jones further concedes that the additional standards cited in his report, dealing with automobiles and other unrelated types of machinery, have no bearing on the loader at issue in this case. (*Id.*)

Plaintiff asserts generally, and without citation to the record, that Jones' testimony is reliable because he has applied "universally accepted principle[s] of engineering" and "basic math" to the facts of the case. This is insufficient to meet plaintiff's burden, as the proponent of expert testimony, to establish the reliability of Jones' opinions. *See McDowell,* 392 F.3d at 1299 (rejecting as unreliable doctor's theory based on common sense and "universal" axiom that expedited treatment is preferable to delayed treatment). Based on all of the *Daubert* factors, and Jones' failure to articulate a sufficient scientific or technical basis for his opinions, Jones' opinions "lack the indicia of reliability necessary to survive a *Daubert* inquiry and challenge under Rule 702." *McClain,* 401 F.3d at 1240. Accordingly, defendant's Motion to Exclude Plaintiff's Liability Expert should be granted.

II. Defendant's Motion for Summary Judgment

Defendant contends that without Jones' testimony, plaintiff's product liability claims fail as a matter of law. (Def.'s Renewed Mot. for Summ. J. [47].) According to defendant, "a plaintiff cannot maintain a product liability action under Georgia law without supporting expert testimony."(*Id.* at 7.) The Court agrees with defendant that, in the absence of Jones' testimony, there is no evidence in the record to raise a genuine issue of fact as to whether the Model 1840 Case Loader is defective. Defendant is thus entitled to summary judgment on plaintiff's design

Case 2:07-md-01873-KDE-MBN   Document 863-10   Filed 11/10/08   Page 6 of 10

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2006 WL 278384 (N.D.Ga.), 69 Fed. R. Evid. Serv. 463

defect claim. Contrary to defendant's argument, however, plaintiff does not need to demonstrate that the loader was defective to prevail on his failure to warn claim. As there is sufficient evidence in the record to raise a genuine issue of fact on each element of plaintiff's failure to warn claim, this claim survives defendant's motion for summary judgment.

A. Summary Judgment Standard

**\*6** Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."" FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323.However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.After the movant has carried his burden, the non-moving party is then required to "go beyond the pleading" and present competent evidence designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324.While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247-48 (1986).

B. Plaintiff's Design Defect Claim [FN6]

> FN6. Plaintiff uses the terms "manufacturing defect" and "design defect" interchangeably throughout his pleadings. (*See* Compl. [1], and Pl.'s Resp. to Def.'s Mot. for Summ. J. [23] at 8-14.) The Court notes that this case does not involve a manufacturing defect. *See Rose v. Figgie Int'l, Inc.,* 229 Ga.App. 848, 853, 495 S.E.2d 77, 83 (1997) (distinguishing manufacturing and design defects). Specifically, even though plaintiff alleges that defendant's product was unreasonably dangerous, he presents no evidence suggesting that the product had a manufacturing error specific to his particular loader. Simply alleging that a product is dangerous, absent evidence of a deviation from the "perfect" or prototypical Model 1840 loader, is not sufficient to demonstrate the existence of a manufacturing defect. *Center Chemical Co. v. Parzini,* 234 Ga. 868, 869, 218 S.E.2d 580, 582 (1975). Moreover, plaintiff analyzes the case under the *Banks* risk-utility test, which applies to design defects, and plaintiff's expert fails to note any deviations in plaintiff's loader from the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:07-md-01873-KDE-MBN   Document 863-10   Filed 11/10/08   Page 7 of 10

Not Reported in F.Supp.2d											Page 7
Not Reported in F.Supp.2d, 2006 WL 278384 (N.D.Ga.), 69 Fed. R. Evid. Serv. 463

standard Model 1840 Loader. (Jones Report, attached to Def.'s Mot. for Summ. J. [22] at Ex. C.)

As noted, plaintiff alleges that the Model 1840 Case Loader has a design defect because its OPS allows the loader to move when the seat bar is raised. (Compl.[1].) Georgia applies a risk-utility analysis to design defect claims, whether based on a theory of negligence or strict liability.[FN7] *Banks v. ICI Americas, Inc.,* 264 Ga. 732, 450 S.E.2d 671 (1994); *Ogletree v. Navistar Int'l Transp. Corp.,* 271 Ga. 644, 645, 522 S.E.2d 467 (1999)). As the court explained in *Banks:*

> FN7. Plaintiff does not specify whether he seeks recovery in strict liability or negligence. (*See generally,* Compl. [1].) Adopting the risk-utility analysis in *Banks,* the Georgia Supreme Court declined to state definitively that the two theories (negligence and strict liability) always merge in design defect cases. *Banks,* 264 Ga. at 735, 450 S.E.2d at 671. In later cases, however, the court has recognized "that there is no significant distinction between negligence and strict liability for purposes of the risk-utility analysis." *Jones v. NordicTrack, Inc.,* 274 Ga. 115, 117, n. 5, 550 S.E.2d 101, 103 (2001) (citing *Ogletree v. Navistar Int'l Transp. Corp.,* 271 Ga. 644, 645, 522 S.E.2d 467 (1999)).*See also, Bryant v. Hoffman-La Roche, Inc.,* 262 Ga.App. 401, 410, 585 S.E.2d 723, 730 (2003)(holding that a claim for negligent design defect "cannot be treated as a distinct theory of recovery from [a] strict liability claim [ ], as the same risk-utility analysis applies").

[t]his risk-utility analysis incorporates the concept of 'reasonableness,' i.e., whether the manufacturer acted reasonably in choosing a particular product design, given the probability and seriousness of the risk posed by the design, the usefulness of the product in that condition, and the burden on the manufacturer to take the necessary steps to eliminate the risk. When a jury decides that the risk of harm outweighs the utility of a particular design (that the product is not as safe as it should be), it is saying that in choosing the particular design and cost trade-offs, the manufacturer exposed the consumer to greater risk of danger than he should have. **\*7** *Banks,* 264 Ga. at 734, 450 S.E.2d at 673. Under the risk-utility test, a product has a design defect when "the risks inherent in a product design" outweigh "the utility of the product so designed." *Id.* at 735, 450 S.E.2d at 674.

Thus, the essential inquiry under the risk-utility analysis is "whether the design chosen [by the manufacturer] was a reasonable one from among the feasible choices of which the manufacturer was aware or should have been aware." *Id.* at 736, 450 S.E.2d at 674. Evidence of the availability of alternative designs is particularly important to the inquiry, "in that the existence and feasibility of a safer and equally efficacious design diminishes the justification for using a challenged design." *Id.* at 735, 450 S.E.2d at 674. Indeed, the *Banks* court described the availability of feasible alternative designs as "the 'heart' of [a] design defect case." *Id.* at 736, 450 S.E.2d at 675. *See also, Jones,* 274 Ga. at 118, 550 S.E.2d at 103 ("The 'heart' of a design defect case is the reasonableness of selecting among alternative product designs and adopting the safest feasible one."). Other factors may also be relevant, including: "the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger; ... and the ability to eliminate danger without impairing the usefulness of the product or making it too expensive." *Banks,* 264 Ga. at 736, 450 S.E.2d at 675.

The Court having excluded Jones' testimony, there is no evidence in the record, on any of these factors, to suggest that defendant's design of the loader was unreasonable. In particular, there is no evidence of feasible alternative designs of the loader, the "heart" of a design defect case. *Id.* Nor is there any

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:07-md-01873-KDE-MBN   Document 863-10   Filed 11/10/08   Page 8 of 10

Not Reported in F.Supp.2d                                                                                              Page 8
Not Reported in F.Supp.2d, 2006 WL 278384 (N.D.Ga.), 69 Fed. R. Evid. Serv. 463

evidence that the design posed a danger, or that any purported danger could be eliminated without impairing the usefulness of the loader or making it too expensive. *See id.* at 736, 450 S.E.2d at 675 (discussing various factors that may be relevant to risk-utility analysis). In fact, without Jones' testimony, the only basis for finding a design defect in the loader is that plaintiff was injured while using it.[FN8] Plaintiff's injury is not a sufficient basis, in and of itself, for concluding that the loader is defective. *See Banks,* 264 Ga. at 737, 450 S.E.2d at 675 (reaffirming that "under Georgia law a manufacturer is not an insurer that its product is, from a design viewpoint, incapable of producing injury").

> FN8. The prior incidents cited in plaintiff's Opposition Brief are not relevant to plaintiff's design defect claim. Most of the incidents cited by plaintiff did not even involve the Model 1840 Case Loader that plaintiff claims is defectively designed, but other products manufactured by defendant. (*See, e.g.,* Pl.'s Resp. to Def.'s Renewed Mot. for Summ. J. [57] at Exs. 1-21, 30.) Those accidents that did involve the Model 1840 loader were not caused by the allegedly defective parking brake mechanism, but by other parts of the loader's machinery, such as the bucket and the arms. (*Id.* at Exs. 22-29.)

Plaintiff submits no evidence other than Jones' testimony that defendant's loader has a design defect. Because Jones' testimony is precluded under Rule 702 and *Daubert,* there remains no material issue of fact with regard to plaintiff's design defect claim. *Accord, Little v. NCR Corp.,* 1995 WL 929019 *16 (N.D.Ga.1995) (Hull, J.) (granting summary judgment on plaintiff's design defect claim under Georgia law where plaintiff presented no evidence of alternative safer designs of check encoding machine). Accordingly, defendant is entitled to summary judgment on plaintiff's design defect claim.

C. Plaintiff's Failure to Warn Claim

*8 Defendant does not address plaintiff's failure to warn claim separately in its Motion for Summary Judgment. Instead, applying the same analysis to the design defect and failure to warn claims, defendant contends that summary judgment is appropriate on all of plaintiff's product liability claims because, "absent an expert, [plaintiff] will be unable to establish that the [loader] was defective under Georgia's risk-utility test."(Def.'s Renewed Mot. for Summ. J. [47] at 7-8.) Contrary to defendant's argument, plaintiff's design defect and failure to warn claims "are separate and distinct claims arising from different duties owed by [a] manufacturer to consumers." *Battersby v. Boyer,* 241 Ga.App. 115, 117, 526 S.E.2d 159, 162 (1999). Even when a product is not defectively designed, a manufacturer that "has reason to anticipate that danger may result from a particular use" of the product "may be required to give adequate warning of the danger."*Id.* Thus, "a duty to warn can arise even if a product is not defective."*Id.*

Whether grounded in a strict liability or negligence theory, a manufacturer's duty to warn depends on the foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger. *See Wilson Foods Corp. v. Turner,* 218 Ga.App. 74, 75, 460 S.E.2d 532 (1995). Where a duty to warn arises, the duty may be breached by: (1) failing to adequately communicate the warning to the ultimate user; or (2) failing to provide an adequate warning of the product's potential risk. *Id.,* citing *Thornton v. E.I. Du Pont De Nemours & Co.,* 22 F.3d 284 (11th Cir.1994). Failure to communicate an adequate warning involves such questions as the location and presentation of the warning. *Id.*

Plaintiff alleges that defendant had a duty to warn of the danger that the loader could move when the seat bar was raised. (Pl.'s Opp'n to Def.'s Renewed Mot. for Summ. J. [57] at 5.) In order to prevail on its motion for summary judgment, defendant must either: "show that [plaintiff] has no evidence to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:07-md-01873-KDE-MBN   Document 863-10   Filed 11/10/08   Page 9 of 10

Not Reported in F.Supp.2d                                                                                                                Page 9
Not Reported in F.Supp.2d, 2006 WL 278384 (N.D.Ga.), 69 Fed. R. Evid. Serv. 463

support its case, or present 'affirmative evidence demonstrating that [plaintiff] will be unable to prove its case at trial.' " *Hammer v. Slater,* 20 F.3d 1137, 1141 (11th Cir.1994) (citing *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437-38 (11th Cir.1991)). Defendant has not directly addressed plaintiff's failure to warn claim in its Motion for Summary Judgment, and has provided no argument or authority for granting summary judgment on this claim. Thus, defendant has not met its burden of showing that it is entitled to summary judgment on plaintiff's failure to warn claim. *Celotex Corp.,* 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by "showing"-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case.").

Moreover, it appears that there is some evidence in the record to support plaintiff's failure to warn claim, even without Jones' testimony. Plaintiff's testimony and the testimony of defendant's expert suggest that it is possible for the loader to move when the seat bar is raised, particularly when the engine is running. (Pl.'s Opp'n to Def.'s Renewed Mot. for Summ. J. [57] at 5-6.) Yet, instructional postings on the loader indicate that the machine will not move when the seat bar is raised because the seat bar "engages [the] parking latch" and "engages [the] loader control lock." The owner's manual also states that "[w]hen the seat bar is in the UP position, the parking latch is ENGAGED."(Def.'s Mot. for Summ. J. [22] at Ex. H.) Thus, it is a question of fact whether the ordinary operator should have appreciated the danger that the loader was subject to move when the seat bar was raised. Moreover, the operating instructions warn operators to "run engine at half throttle for 10 minutes with transmission in neutral" before turning the engine off. (*Id.*) Given this instruction, it is arguably foreseeable that an operator, not appreciating the possibility that the loader would move with the parking latch engaged, would exit the loader with the engine running, in spite of a separate instruction to "turn the engine off" before exiting.

*9 As it appears that there is some evidence in the record to support plaintiff's failure to warn claim, and as defendant has not directly addressed the claim in its motion, summary judgment is not warranted. Accordingly, defendant's motion for summary judgment on plaintiff's failure to warn claim should be denied.

III. Plaintiff's Motion to Exclude Defendant's Expert Witness

Plaintiff has moved to exclude defendant's liability expert, James Bauer. (Pl.'s Mot. to Disqualify Def.'s Expert Witness [55].) Plaintiff does not challenge Bauer's qualification to provide expert testimony under *Daubert,* and Bauer appears to be well-qualified to provide expert testimony in this case. Plaintiff does not dispute that Bauer is a product design engineer with 45 years of experience in the design, manufacture, and maintenance of off-highway work machines, including ten years of experience designing similar loaders for a competing manufacturer. (Def.'s Expert Witness Disclosure ("Bauer Report"), attached to Pl.'s Mot. to File Supplemental Br. [19] at Ex. 2.) Bauer is also the named inventor on 26 loader design patents. (*Id.*)

Neither does plaintiff specifically apply the *Daubert* analysis to show that Bauer's opinions are "unreliable." Instead, plaintiff broadly suggests that Bauer's testimony is unreliable because: 1) he basses his opinion, in part, on a report written by Gary Stromberg, defendant's chief engineer; 2) he bases his opinion on "speculation" and other "facts made up by him;" and 3) he did not physically inspect the loader before writing his opinion.

Contrary to plaintiff's argument, the fact that Bauer relied on information contained in Stromberg's report does not require exclusion of Bauer's testimony. As the authority cited by plaintiff confirms, it is perfectly acceptable for Bauer to rely on drawings, photographs and other information provided by Stromberg, as long as he does not simply restate Stromberg's opinion. *See Stanchly v. McKenzie*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:07-md-01873-KDE-MBN   Document 863-10   Filed 11/10/08   Page 10 of 10

Not Reported in F.Supp.2d                                                                                                       Page 10
Not Reported in F.Supp.2d, 2006 WL 278384 (N.D.Ga.), 69 Fed. R. Evid. Serv. 463

*Tank Lines, Inc.,* 497 F.2d 529, 536-37 (5th Cir.1974).[FN9] Bauer cites a number of sources, in addition to Stolberg's report, that form the basis for his opinions. (Bauer Report at 1-2.) It is clear from his report that his testimony is not merely a regurgitation of Stolberg's opinions.

> FN9. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

Plaintiff's contention that Bauer's testimony is "speculation" is similarly flawed. This argument is based on Bauer's opinion that some part of plaintiff's body hit the loader's controls, causing the loader to move as plaintiff was exiting. Although plaintiff denies that he hit the controls, after studying various drawings and photographs, and drawing on his knowledge of this type of machinery, Bauer formed the opinion that this is the most likely scenario explaining how plaintiff's accident occurred. Bauer's testimony cannot be characterized as "speculation" merely because his opinion differs from plaintiff's recollection of the events.

Plaintiff's assertion that Bauer's testimony should be excluded because he did not physically inspect the loader is also unpersuasive. Although Bauer did not inspect the loader prior to drafting his written report, plaintiff does not dispute that he inspected the loader prior to his deposition to confirm his written opinions. (*See* Def.'s Resp. to Pl.'s Mot. to Disqualify Def.'s Expert Witness [63] at 2.) Plaintiff also criticizes Bauer for failing to disassemble the loader to examine the brakes. Plaintiff concedes, however, that the loader's braking mechanism was removed during an inspection conducted by Stolberg, with plaintiff's counsel present, in order to photograph it and preserve it as evidence. (*Id.* at 3.) Stolberg's photographs of the braking mechanism served as part of the foundation for Bauer's opinions. (Bauer Report at 1-2; Pl.'s Br. in Supp. of Mot. to Disqualify Def.'s Expert Witness [58] at 3.)

*10 Thus, none of plaintiff's objections to Bauer's testimony are valid, and Bauer appears to be well-qualified to provide expert testimony. At the same time, however, the Court cannot conclude from the materials in the record that all of Bauer's opinions are sufficiently reliable to withstand a *Daubert* challenge, particularly as neither party has attempted to apply the *Daubert* analysis to Bauer's testimony. In addition, most of Bauer's opinions concern the design of the Model 1840 Case loader, and are only relevant to plaintiff's design defect claim. As the Court has granted summary judgment on this claim, it is unclear whether and to what extent defendant still intends to rely upon Bauer's expert testimony. Thus, plaintiff's motion to disqualify Bauer should be denied without prejudice for the Court to determine, at trial or in a pre-trial motion, whether Bauer's opinions that defendant submits in defense of plaintiff's failure to warn claim, if any, are admissible under the standards of Rule 702 and *Daubert.*

### CONCLUSION

For the foregoing reasons, the Court finds that defendant's Motion to Exclude Plaintiffs' Liability Expert [46] should be GRANTED and defendant's Motion for Summary Judgment [47] should be GRANTED in part and DENIED in part, plaintiff's Motion to Disqualify Defendant's Expert Witness [55] is DENIED, and defendant's Motion for Extension of Time to File Response [59] is GRANTED.

SO ORDERED.

N.D.Ga.,2006.
Wright v. Case Corp.
Not Reported in F.Supp.2d, 2006 WL 278384 (N.D.Ga.), 69 Fed. R. Evid. Serv. 463

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.