1 of 1 DOCUMENT

HEATHER HILTON VS. MATRIXX INITIATIVES, INC., ET AL.

ACTION NO. 4:04-CV-519-Y

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION

2007 U.S. Dist. LEXIS 73264

February 20, 2007, Decided
February 20, 2007, Filed

**COUNSEL:** [*1] For Heather Hilton, Plaintiff: Seth Marshall Anderson, LEAD ATTORNEY, Jason B Stephens, Stephens & Anderson, Fort Worth, TX.

For Matrixx Initiatives Inc, Zicam LLC, Defendants: Michael R Berry, LEAD ATTORNEY, Jessica B Young, Thompson & Knight - Dallas, Dallas, TX; Alan J Lazarus, Drinker Biddle & Reath - San Francisco, San Francisco, CA; Susan M Sharko, Drinker Biddle & Reath - Florham Park, Florham Park, NJ.

For Kroger Texas LP, *Termed by order of Jan 13 2006, The Kroger Co, *Termed by Order of Jan 13 2006, Defendants: Michael R Berry, LEAD ATTORNEY, Jessica B Young, Thompson & Knight - Dallas, Dallas, TX.

Wade McMullen, Provider, Pro se, Fort Worth, TX.

For Matrixx Initiatives Inc, Zicam LLC, Cross Defendants: Michael R Berry, LEAD ATTORNEY, Jessica B Young, Thompson & Knight - Dallas, Dallas, TX.

For Matrixx Initiatives Inc, Zicam LLC, Cross Defendants: Michael R Berry, LEAD ATTORNEY, Thompson & Knight - Dallas, Dallas, TX.

**JUDGES:** TERRY R. MEANS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** TERRY R. MEANS

**OPINION**

ORDER GRANTING MOTIONS TO EXCLUDE AND MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the Motion to Exclude Testimony of Bruce W. Jafek, M.D. [document number 82], filed by defendants Matrixx Initiatives, [*2] Inc., and Zicam L.L.C. ("Defendants"). Also pending before the Court is Defendants' No-Evidence Motion for Summary Judgment [document number 81]. Defendants' motion to exclude seeks to exclude the expert testimony of Plaintiff's only causation witness. Defendants' summary-judgment motion seeks a summary judgment on all of Plaintiff's claims due, in part, to the fact that she does not have legally admissible evidence of causation.

In this case, plaintiff Heather Hilton ("Hilton") brings claims against Defendants contending that their product, Zicam(R) Cold Remedy No Drip Liquid Nasal Gel(R) ("Zicam"), caused the permanent loss of her senses of smell (a condition referred to as "anosmia") and taste. Hilton claims that immediately after using Zicam in August 2003, she experienced facial pain and awoke the next morning to the realization that she could not smell. Soon thereafter, she discovered she had lost her sense of taste as well. Hilton filed this lawsuit, alleging claims against Defendants for strict liability, negligence, gross negligence, fraud, misrepresentation, deceptive trade practices, and breach of warranty.

A hearing was held regarding the motion to exclude on September 27, [*3] 2006. Subsequent to the hearing, Defendants filed four supplemental appendices to their motion. Each supplemental appendix contains the decision of another federal district court, issued after the date of the hearing in this cause, excluding Jafek's

opinion testimony in a virtually identical case. In each of these four cases, the complainant allegedly lost his or her sense of smell and/or taste almost immediately after using Zicam.

After reviewing the evidence presented at the hearing, the argument of the parties, the applicable law, and the opinions submitted to the Court after the hearing, this Court similarly concludes that Jafek's testimony does not satisfy the requirements of *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and its progeny. Jafek's curriculum vitae reflects that his qualifications to testify as an expert witness on nasal ailments are impeccable; indeed, Defendants apparently do not challenge his qualifications. Rather, Defendants contend, and the Court agrees, that Jafek's causation opinion simply is not sufficiently reliable to be admissible.

In reaching this decision, this Court is persuaded primarily by the district court's opinion in *Sutherland v. Matrixx Initiatives, Inc., et al.,* No. 04-AR-0129-M, 2006 U.S. Dist. LEXIS 96652 (N. D. Ala. Nov. 7, 2006) [*4] . *See* Defs.' Second Supp. App. [document number 139]. That case was brought by a plaintiff who, like Hilton, used Zicam as directed on the package insert at the onset of cold symptoms and immediately felt a burning sensation followed by the loss of her senses of taste and smell. *See id.* at 10. The court in *Sutherland* noted that in a toxic tort case, the plaintiff must demonstrate both general and specific causation:

> In toxic tort cases like this one, the reliability analysis [under *Daubert*] must include the questions of causation. As the Eleventh Circuit noted in *McClain [v. Metabolife Int'l, Inc.,* 401 F.3d 1233 (11th Cir. 2005)]*, when the general causal effect of a particular toxin is not in doubt, the court need only engage in a *Daubert* analysis of the testimony as it relates to the specific harm to the individual plaintiff. However, where, as in this case, there is no general consensus as to the harmful effect of the particular substance (in this case, zinc glutonate), the trial court's *Daubert* analysis must include 'the general question of whether the drug or chemical **can** cause the harm the plaintiff [*5] alleges."

*Id.* at 13 (quoting *McClain,* 401 F. 3d at 1239). The court concluded that a general consensus on the effect of zinc gluconate, the active ingredient in Zicam, on human nasal tissue did not exist, thus forcing the plaintiff to demonstrate both general and specific causation. *Id.* at 15-16. The court further concluded that Jafek did not reliably reach his conclusion as to either general or specific causation, and it therefore excluded Jafek's opinion testimony and granted summary judgment in favor of the defendants due to the lack of reliable causation testimony.

This Court similarly concludes that Jafek's general causation testimony is both necessary, due to a lack of consensus, and inadmissible, due to is unreliability. As noted by the court in *Sutherland,* in order to prove general causation in this type of case,

> two major assertions must be established by the evidence. First, it must be shown that Zicam can reach the olfactory neuroepithelium, the part of the nose that regulates the sense of smell. Second, Zicam, and zinc gluconate, must be shown to harm the neuroepithelium in such a way as to cause permanent anosmia.

*Id.* at 13-14. In this case, Jafek has simply failed to reliably [*6] demonstrate that, when used as directed, Zicam reaches the olfactory neuroepithelium.

As noted in *Sutherland,* Jafek himself has had "mixed thoughts on the matter," having concluded in a 1983 paper that the "neuroepithelium is 'almost anatomically inaccessible,'" but now contending that the pathway to the neuroepithelium is simply a "straight shot." *Id.* at 14-15. His conclusion that Zicam must reach the neuroepithelium is based solely on his observations that when pumped, Zicam squirts for a distance of 4 to 10 feet, and the neuroepithelium is located only approximately two and one-half inches into the nostril. Given the testimony regarding the somewhat circuitous nature of the nasal pathway in a live human, particularly one suffering from congestion, the Court does not find this methodology compelling.

Jafek also bases his conclusion that Zicam reaches the neuroepitheleum, when used as directed, on his study of a defrosted cadaver. The Court agrees with the

*Sutherland* court's conclusions that Jafek's cadaver study is flawed. *See id.* at 16-18. The timing of the study is suspect, inasmuch as it was undertaken only after Jafek had already concluded, and announced publicly, that Zicam caused [*7] permanent anosmia. Additionally, it appears that in performing the study, Jafek inserted the Zicam bottle into the cadaver's nasal opening much farther than the package insert directions suggest. Furthermore, the fact that the cadaver's septal bulge was removed and the bisected head was covered with a sheet of glass before Jafek's experiment was performed raises serious questions as to whether the gel would perform in the same manner in a live human being. And, Dr. James Schwob, Defendant's expert witness, testified that cadaver studies had not been used to demonstrate intranasal drug distribution in published literature in over forty years.

For these and the other reasons articulated by the court in *Sutherland,* this Court similarly concludes that Jafek's conclusion that Zicam can reach the olfactory neuroepithelium is unreliable and therefore inadmissible. 1 Because Hilton has presented no other evidence demonstrating that, when used as directed, Zicam reaches the neuroepithelium, the Court concludes that summary judgment must be granted in Defendants' favor.

> 1  As a result, the Court need not reach the second part of the general-causation analysis, namely whether Hilton has adequately [*8] demonstrated that Zicam (zinc glutonate) harms the neuroepithelium in such a way as to cause permanent anosmia. Schwob agreed that it might, testifying that the harmful chemical for olfactory purposes is the zinc, regardless of whether it is combined with gluconate, as in Zicam, or with sulfate, as in the polio studies upon which Jafek relies. But even then Hilton would have to demonstrate the dosage that would cause permanent anosmia, and the Court is not convinced that she has adequately made that demonstration.
>
> Similarly, the Court's decision on general causation permits it to sidestep the specific causation issue as well. Jafek's specific causation opinion--namely, that Hilton's anosmia is the result of her Zicam use--is troubling. In reaching this opinion, Jafek relies primarily on the temporal relationship between Hilton's Zicam use and the onset of her anosmia. Quoting the opinion by the United States Court of Appeals for the Fifth Circuit in *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269 (5th Cir. 1998), Defendants correctly note that "'the [*9] temporal connection between exposure to chemicals and an onset of symptoms, standing alone, is entitled to little weight in determining causation.'" (Defs.' Br. [doc. 84] at 23 & n. 100.) In *Moore,* the Fifth Circuit discussed the decision in *Cavallo v. Star Enterprises,* 892 F. Supp. 756 (E.D. Va. 1995), *aff'd in part,* 100 F.3d 1150 (4th Cir. 1996). *Moore,* 151 F.3d at 278. The Fifth Circuit noted that in *Cavallo,* "[t]he court observed that although 'there may be instances where the temporal connection between exposure to a given chemical and subsequent injury is so compelling as to dispense with the need for reliance on standard methods of toxicology.'" *Id.* The Fifth Circuit concluded that, "[i]n the absence of . . . compelling circumstances such as those discussed in *Cavallo,*" the temporal connection is entitled to little weight. *Id.* The Court questions whether those compelling circumstances are not present here. Jafek was told by Hilton, and presumably she will testify, that immediately upon administering Zicam, she felt a burning sensation. She thereafter went to sleep and awoke the next morning having lost her sense of smell. Given the Court's decision regarding general causation, [*10] however, it need not decide this issue.

SIGNED February 20, 2007.

TERRY R. MEANS

UNITED STATES DISTRICT JUDGE

FINAL JUDGMENT

In accordance with the order issued this same day, the orders issued on January 13 and 26, 2006, and Federal Rule of Civil Procedure 58,

It is hereby ORDERED that defendants Matrixx Initiatives, Inc. and Zicam, L.L.C. are entitled to summary judgment, and all of Plaintiff's claims against them are DISMISSED WITH PREJUDICE to their refiling. All costs of Court under 28 U.S.C. § 1920 regarding these claims shall be borne by Plaintiff.

It is further ORDERED that all claims against defendants Botanical Laboratories, Inc., Kroger Texas, L.P. and The Kroger Co. are DISMISSED WITH PREJUDICE to their refiling. All costs of Court under 28 U.S.C. § 1920 regarding these claims shall be borne as agreed by the parties, or, if no agreement has been reached, by the party incurring same.

SIGNED February 20, 2007.

TERRY R. MEANS

UNITED STATES DISTRICT JUDGE

```
                                                                1084PC
********** Print Completed **********

Time of Request: Monday, November 10, 2008   17:38:09 EST

Print Number:    1823:124344871
Number of Lines: 151
Number of Pages: 4




















Send To:  DREEMAN, MAUREEN
          NELSON MULLINS RILEY & SCARBOROUGH
          ATLANTIC STATION
          201 17TH STREET NW
```