UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                                    MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                           SECTION "N-5"

                                                       JUDGE ENGELHARDT
                                                       MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

-------------------------------------------------------------------------

**MEMORANDUM IN OPPOSITION TO AMERICAN HOMESTAR DEFENDANTS'
RULE 12(b)(6) MOTION TO DISMISS (PRE-EMPTION) (DOC. 781)**

**MAY IT PLEASE THE COURT**

The Plaintiffs' Steering Committee ("PSC") respectfully submits this opposition to American Homestar Defendants' Rule 12(b)(6) Motion to Dismiss (Pre-emption). These Defendants allege that dismissal of plaintiffs' claims against them is proper on the ground that the National Manufactured Housing Construction and Safety Standards Act pre-empt plaintiffs' claims. However, the Act neither expressly nor implicitly pre-empts the state tort law-based claims of the plaintiffs against movants. For the reasons more fully set forth herein, the defendants' Motion should be denied.

**I. Factual Background**

American Homestar Corporation and Oak Creek Homes, collectively "American Homestar Defendants," were made defendants in the current action by the filing of the Amended Administrative Master Complaint which matched named plaintiffs to the American Homestar Defendants. (Rec. Doc. 722, filed on 10/06/2008). These defendants manufactured mobile

housing units as defined by the National Manufactured Housing Construction and Safety Standards Act [hereinafter referred to as the "Manufactured Housing Act" or the "Act"]. The units then were sold to FEMA after Hurricanes Katrina and Rita for the purpose of providing temporary housing to plaintiffs.

Plaintiffs in the Administrative Master Complaint and the Amended Administrative Master Complaints allege that the American Homestar Defendants, along with all other Manufacturing Defendants, manufactured products (housing units) which were defective based on unsafe levels of formaldehyde, and/or the absence of adequate warnings about same, giving rise to liability for the resulting injuries of plaintiffs pursuant to the tort laws of Alabama, Mississippi, Louisiana and Texas, as applicable to those plaintiffs who were exposed in these states respectively.

**II.  Law and Analysis**

Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. *See Southern Christian Leadership Conference v. Supreme Court*, 252 F.3d 781, 786 (5th Cir. 2001). In considering a Rule 12(b)(6) motion to dismiss, the Court must take the well-pleaded factual allegations of the complaint as true. *See Jaufre v. Taylor*, No. Civ. A. 03-0028, 04 WL 1444945, at *1 (E.D.La. 6/25/04) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In addition, "[a]ll questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 257 (5th Cir. 2001); *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 310 (5th Cir. 2002). The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claim. *See Scheuer v. Rhodes*, 416 U.S. 232 (1974). Accordingly, the

Court may dismiss a complaint "only if it appears certain that the plaintiffs[s] cannot prove any set of facts in support of [their] claim that would entitle[them] to relief." *Jaufre*, at *1.

Congress has the power to pre-empt state law under Article VI (the Supremacy Clause) of the U.S. Constitution. *See Meyer v. Conlon*, 162 F.3d 1264, 1268 (10th Cir. 1998). The exercise of this constitutional authority, however, is predicated on the "supremacy" of federal laws when state law conflicts with it. It is only when a state law conflicts with, or frustrates, federal law, that the former must give way under the pre-emption doctrine. *Maryland v. Louisiana*, 451 U.S. 725 (1981).

On the other hand, given the interest of avoiding unintended encroachment on the sovereign law-making authority of the States, a court interpreting federal law pertaining to a subject traditionally governed by state law should be reluctant to find pre-emption. The Supreme Court has held that pre-emption will not lie unless it is the "clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). The mere existence of federal statutes and federal regulations is not enough to pre-empt state law causes of action. *Whittington v. Patriot Homes*, 2008 WL 1736824 (W.D.La. 2008).

The Supreme Court recognizes the pre-emptive effect of federal law in three circumstances: (1) where Congress has defined expressly and explicitly the extent to which its enactment pre-empts state law; (2) where, in the absence of explicit pre-emptive language, state law is pre-empted because it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively; and (3) where a state law is pre-empted to the extent that it actually conflicts with federal law. *English v. General Elec. Co.*, 496 U.S. 72-78-79 (1990). The first category is considered "express pre-emption," while the second and third categories both

3

fall under the rubric of "implied pre-emption." *Id.*at 79. In the case at bar, the plaintiffs' state law claims are neither expressly nor impliedly pre-empted by the Manufactured Housing Act.

      **a.** <u>Plaintiffs' State Law Claims Are Not Expressly Pre-Empted by the Act.</u>

While the Manufactured Housing Act includes a pre-emption provision, it does not expressly pre-empt the plaintiffs' state law claims. The Act provides that no State or political subdivision shall have authority to establish any standard regarding construction or safety whenever a Federal manufactured home construction and safety standard is established under the Act. 42 U.S.C. §5403(d). The Act, however, also contains a saving provision which provides that "[c]ompliance with any Federal manufactured home construction or safety standard issued under this chapter does not exempt any person from any liability under common law." 42 U.S.C. §5409(c). To interpret the effect of these provisions, they must be construed narrowly in light of the presumption against pre-emption of state police powers. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

In *Greir v. American Honda Motor Co.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), the Supreme Court considered the effect on a state law claim of an almost identical pre-emption and saving clause contained in the National Traffic and Motor Vehicle Safety Act. The Court, relying heavily on the saving clause, concluded that the state tort law claim was not expressly pre-empted. *See Geier*, 529 U.S. at 868. It reasoned that a reading of the express pre-emption provision excluding state law tort actions gave actual meaning to the saving clause's language, thereby leaving adequate room for state tort law to operate, for example, where federal law creates only a floor, *i.e.*, a minimum safety standard. *Id.* at 868. The saving clause, in other words, served to preserve those actions that seek to establish fault pursuant to a safety standard greater than the minimum safety achieved by a federal regulation. *Id.* at 870.

Reading the pre-emption provision and the saving clause together, the Court further reasoned in *Geier* that the pre-emption provision of the federal Act was meant to pre-empt only state imposed regulations, not state tort law causes of action. Given the nearly identical nature of the pre-emption and saving clause provisions in the Manufactured Housing Act, this Court likewise should hold that the plaintiffs' tort claims are not expressly preempted by language prohibiting the adoption of competing formaldehyde "standards" by a State authority.

Several courts have held specifically that the pre-emption provision and the saving clause contained in the Manufacturing Housing Act do not expressly pre-empt state tort law claims, including products liability claims. *See e.g., Choate v. Champion Builders Co.*, 222 F.3d 788, 793-94 (10th Cir. 2000); *Whittington v. Patriot Homes*, 2008 WL 1736824 (W.D.La. 2008); *Richard v. Fleetwood Enterprises, Inc.*, 4 F.Supp. 650, 657 (E.D.Tex. 1998) ("The Manufacturing Housing Act does not expressly pre-empt state causes of actions."); *Perry v. Fleetwood Enterprises, Inc.*, 2007 WL 2893410 (M.D. Ala. 2007). As the Court will note, some of the defendant manufacturers in this case were defendants in these other cases as well.

It thus is clear from jurisprudence and the language of the Manufactured Housing Act itself that state tort law actions are exempt from the pre-emption provisions of the Manufactured Housing Act, and are not expressly pre-empted by federal law.

    **b.** <u>Plaintiffs' State Law Claims Are Not Impliedly Pre-Empted by the Act.</u>

The plaintiffs' state tort law claims are not impliedly pre-empted by the Manufactured Housing Act because they do not conflict with, or affect the superintendence of, the Act, and neither does the Act "occupy the field" of the manufactured housing industry.

Conflict pre-emption exists where state law actually conflicts with federal law in a way that makes it impossible for a party to comply with both state law and federal requirements, or

5

where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *English*, 496 U.S. at 79. By simply citing the federal regulatory standards regarding formaldehyde in plywood and particleboard, defendants do not demonstrate the impossibility of a manufacturer both complying with these minimum standards <u>and</u>, at the same time, avoiding liability based upon a level of formaldehyde safety sufficient to defeat state law allegations of a product defect. Certainly, at this pre-merits and pre-trial phase of the litigation, defendants likewise cannot demonstrate on a case-specific basis that <u>any</u> of the applicable state law product liability standards operate as an obstacle to the achievement of the minimal safety objectives of the referenced regulations.

The Manufactured Housing Act's implementing regulations specify that the test for determining whether a state action stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress is "whether the State rule can be enforced or the action taken without impairing the Federal superintendence of the manufactured home industry as established by the Act." 24 C.F.R. §3282.11(d). The state law claims brought by the plaintiffs do not compromise the federal superintendence of the manufactured home industry as established by the Act. The federal statute in question, the Manufactured Housing Act, states that when plywood or particleboard made of formaldehyde resin is used in the construction of a mobile home, the product must comply with certain emission standards. 24 C.F.R. 3280.308. These standards are determined by the United States Department of Housing and Urban Development [hereinafter "HUD"]. As movants concede, HUD merely considered, but did not adopt, an ambient air standard as such, instead identifying merely a "target ambient level" or 0.4 ppm in manufactured housing. Hence, the only standards at issue which are mandatory are those which require that formaldehyde emission not exceed 0.2 ppm from plywood and 0.03 ppm from

particleboard. As part of the same regulatory scheme, HUD also requires that the manufacturer post a warning in each manufactured home informing the occupant of health risks associated with formaldehyde emissions. 24 C.F.R. 3280.309(a). Again, however, nowhere in their motion do defendants demonstrate – indeed, at this juncture they <u>cannot</u> demonstrate – how any state tort law claim of a product defect will necessarily conflict with or impair these mandatory, minimum safety, and/or "target" air quality guidelines by federal regulation. Absent such a conflict, a case for pre-emption under the Supremacy Clause simply does not exist.

Defendants ultimately base their argument for federal pre-emption of state tort law upon the Supreme Court's holding in *Geier,* a case dealing with implied pre-emption. However, the federal statute at issue in *Geier* is fundamentally different from the regulations of the Manufactured Housing Act. In *Geier,* the plaintiffs claimed that their automobile should have been equipped with an airbag. *Geier*, 529 U.S. at 865. The Court noted that the Act at issue in that case, Federal Motor Vehicle Safety Standard 208, deliberately provided manufacturers with a range of choices among different passive restraint systems. *See id.*, at 874-5. The *Geier* plaintiffs' claim asserted in that case would have effectively eliminated use of the other choices offered under the federal standards. *See id.*

The plaintiffs' claims in the case at bar, however, do not impinge on any such range of choices officially extended to the defendant manufacturers, any more than plaintiffs' product defect claims stand in demonstrated conflict with the federally-mandated formaldehyde standards promulgated under the Manufactured Housing Act. In contrast to the federal regulations in *Geier*, the Manufactured Housing Act does not provide the manufacturers with options as it relates to the presence of formaldehyde in their product. Instead, the Act mandates a specific requirement as to the ppm levels of formaldehyde emissions of both plywood and particleboard.

There is no showing made herein that a finding in the plaintiffs' favor would conflict with the ppm levels dictated by the Act. Rather, the 0.2 and .03 ppm requirements of plywood and particleboard reasonably may be viewed as minimum standards, and not as specific levels beyond which a formaldehyde level of exposure within the housing unit cannot represent a condition considered unsafe as a matter of state product liability law. It likewise is clear that any existing federal superintendence of the manufactured housing industry as established by the Act remains fully intact notwithstanding the plaintiffs' state law claims, just as minimum standards of formaldehyde emission in plywood and particleboard would remain undisturbed notwithstanding plaintiffs' prosecution of claims herein.

Permitting the plaintiffs' claims to go forward also would be consistent with the stated purposes of the Manufactured Housing Act. Congress enacted the Manufactured Housing Act to "protect residents of manufactures housing with respect to personal injuries and the amount of insurance costs and property damages in manufactured housing." 42 U.S.C. §5401. Nothing in the Congressional declaration of purposes found in §5401 suggests a purpose of providing manufacturers of mobile homes with relief from state products liability law developed by state courts. *Choate*, 222 F.3d at 796. The state law claims pursued by the plaintiffs are intended to increase safety and reduce the number of personal injuries resulting from manufactured homes. The plaintiffs' claims would not affect the substance or the intended efficacy of the Manufactured Housing Act, and in fact are entirely consonant with same.

Finally, the Manufactured Housing Act has not been shown by movants to "occupy the field" of manufactured housing and plaintiffs' state law claims cannot be found to be impliedly pre-empted upon those grounds. "Field pre-emption" occurs when federal regulation in a legislative field is so pervasive that it is reasonable to infer that Congress left no room for the

state to supplement it. *Perry v. Fleetwood*, 2007 WL 2893410, *5, (M.D.Ala. 2007). Here, the very existence of the saving clause in the Manufactured Housing Act indicates that Congress did not intend to occupy the field. To the contrary, it has expressly excluded state law claims from the pre-emption provision. Courts faced with issue of pre-emption by the Manufactured Housing Act thus have concluded that federal regulation under the Act is not sufficiently pervasive to occupy the field. *See Choate*, 222 F.3d at 795 ("[T]he Manufactured Housing Act does not support [the] assertion that "Congress intended for the Federal Government to occupy the field of construction and safety of manufactured homes exclusively…"); *Richard*, 4 F.Supp. at 657 ("[T]here is no clear or manifest congressional intent for the federal regulation of the safety and sale of manufactured housing to completely occupy the field."); *Perry*, 2007 WL 2893410, *5.

### III. Conclusion

Plaintiffs' claims herein, proceeding under the various product liability laws of four different states, are neither expressly nor impliedly pre-empted by the Manufactured Housing Act or the regulations promulgated under it. The Manufactured Housing Act's pre-emption provision and saving clause unambiguously exempt state tort law claims from express pre-emption by the Act. Further, the state tort law claims brought by the plaintiffs have not been shown by defendants to either conflict with or affect the Act's superintendence of the manufactured housing industry. Since, the plaintiffs' state tort law claims are neither expressly nor impliedly pre-empted by the Manufactured Housing Act, the American Homestar Defendants' Motion to Dismiss should be denied.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE**
**PRODUCT LIABILITY LITIGATION**

       BY: s/Gerald E. Meunier
          GERALD E. MEUNIER, #9471
          **PLAINTIFFS' CO-LIAISON COUNSEL**
          Gainsburgh, Benjamin, David, Meunier &
          Warshauer, L.L.C.
          2800 Energy Centre, 1100 Poydras Street
          New Orleans, Louisiana  70163
          Telephone: 504/522-2304
          Facsimile: 504/528-9973
          gmeunier@gainsben.com


          s/Justin I. Woods
          JUSTIN I. WOODS, #24713
          **PLAINTIFFS' CO-LIAISON COUNSEL**
          Gainsburgh, Benjamin, David, Meunier &
          Warshauer, L.L.C.
          2800 Energy Centre, 1100 Poydras Street
          New Orleans, Louisiana  70163
          Telephone: 504/522-2304
          Facsimile: 504/528-9973
          jwoods@gainsben.com


          **COURT-APPOINTED PLAINTIFFS'
          STEERING COMMITTEE**
          ANTHONY BUZBEE, TEXAS #24001820
          RAUL BENCOMO, #2932
          FRANK D'AMICO, JR., #17519
          MATT MORELAND, #24567
          LINDA NELSON, #9938
          RONNIE PENTON, #10462


<u>**CERTIFICATE OF SERVICE**</u>

  I hereby certify that on November 12, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing

document and the notice of electronic filing by first-call mail to all counsel of record who are

non-CM/ECF participants.

                                                                                 s/Gerald E. Meunier
                                                                                 GERALD E. MEUNIER, #9471