**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION**

| | |
|---|---|
| **IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION** | **MDL NO. 1873**<br><br>**SECTION "N-4"<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ** |

**THIS DOCUMENT IS RELATED TO ALL CASES**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT UNITED STATES OF AMERICA'S MEMORANDUM IN
RESPONSE TO "PLAINTIFFS' MOTION FOR CLASS CERTIFICATION"
[Dkt. No. 764]**

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

FACTS RELEVANT TO PLAINTIFFS' REQUEST FOR
CLASS CERTIFICATION AGAINST THE UNITED STATES . . . . . . . . . . . . . . . . . . . . . . . 6

      I.    Facts Regarding Certain Persons Who Have Sought
              To Shift Jurisdiction Over Their Claims From FEMA To
              This Court By Choosing To File Suit Against The United States. . . . . . . . . . . . 6

            A.    The Pujol Family. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            B.    The Thomas Family. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            C.    The Huckabee Family. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      II.    Facts Regarding The Variety Of Emergency Housing Units
              Issued By FEMA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      I.    The Court May Not Certify A Class Action Absent A
              Determination That It Possesses Subject Matter Jurisdiction
              Over The Claims Of The Putative Class Claimants. . . . . . . . . . . . . . . . . . . . 12

      II.    Plaintiffs Must Demonstrate That They Satisfy The
              Requirements Of Fed. R. Civ. P. 23(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      I.    The Court Lacks Jurisdiction To Certify The Class Action Sought
              Against The United States. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            A.    Because Putative Class Members Have Not Satisfied The
                   FTCA's Prerequisites, The Court Lacks Subject Matter
                   Jurisdiction To Adjudicate Their Tort Claims Through
                   A Class Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        B.      Class Certification Should Be Denied Where Maintenance
Of A Class Action Would Be Inconsistent With An Applicable
Statutory Scheme, Such As That Of The FTCA. . . . . . . . . . . . . . . . . . . 22

II.     Class Certification Is Inappropriate Because Whether The Court
Has Jurisdiction Over The Claims Of Putative Class Members
Hinges On Whether Each Person's Individual Claims Fall Within
The FTCA's Limited Waiver Of Sovereign Immunity. . . . . . . . . . . . . . . . . . . . . 24

        A.      Putative Class Claimants Must Demonstrate That Their
Claims, Based On Their Individual Factual Circumstances,
Are Not Barred By The FTCA's Discretionary Function
Exception.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        B.      Putative Class Claimants Must Demonstrate That Their
Administrative Claims Were Filed Within Two Years Of
When The Claims Accrued Under the FTCA. . . . . . . . . . . . . . . . . . . . . 29

        C.      Putative Class Claimants Must Demonstrate That They
Have Filed Legally Sufficient Administrative Claims. . . . . . . . . . . . . . . 31

III.    Plaintiffs Cannot Meet Their Burden Of Showing That Their
Proposed Class Against The United States Satisfies The
Requirements of Fed. R. Civ. P. 23.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

        A.      Plaintiffs Cannot Satisfy The Numerosity Requirement of
Fed. R. Civ. P. 23 (a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

        B.      Plaintiffs Cannot Show That Issues Common To Putative
Class Members Predominate Over Individual Issues And
That A Class Action Is The Superior Method To Adjudicate
This Matter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

IV.    The Court Should Reject Plaintiffs' Request For Fed. R. Civ. P. 23
Certification Of Subclasses Against The United States. . . . . . . . . . . . . . . . . . . 35

        A.      The Court Should Reject Plaintiffs' Request For Certification
Of An Economic Loss Subclass Against The United States. . . . . . . . . . 35

        B.      The Court Should Reject Plaintiffs' Request For Certification Of
Subclasses Against The United States Involving Various Potential
Common Liability Related Fact Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

# TABLE OF AUTHORITIES
## FEDERAL CASES

**CASE**                                                                 **PAGE**

*Adashunas v. Negley*,
    626 F.2d 600 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 33

*Ahmed v. United States*,
    30 F.3d 514 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Amchem Prods., Inc., et al. v. Windsor, et al.*,
    521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 40

*Anderson v. United States*,
    803 F.2d 1520 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Arigo v. United States*,
    980 F.2d 1159 (8th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Atorie Air, Inc. v. FAA*,
    942 F.2d 954 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bell Atlantic Corp. v. AT&T Corp.*,
    339 F.3d 294 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Benjamin v. United States*,
    85 F. Supp. 2d 1034 (D. Colo. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Blain v. United States*,
    552 F.2d 289 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Block v. North Dakota ex rel. Bd. of Univ. and Sch. Lands*,
    461 U.S. 273 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Boughton v. Cotter Corp.*, 65 F.3d 823
    (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**CASE**                                                                      **PAGE**

*Caidin v. United States*,
    564 F.2d 284 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Castano v. Am Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Church of Scientology v. Director, FBI*,
    459 F. Supp. 748 (D.D.C. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cole v. General Motors Corp.*,
    484 F.3d 717, 727 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Cook v. United States*,
    978 F.2d 164 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*DeBremaecker v. Short*,
    433 F.2d 733 (5th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dondero v. United States*,
    775 F. Supp. 144 (D. Del. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Dowl v. Tulane Univ. Hosp.*,
    2005 WL 2060921 at *2 (E.D. La. Aug. 22, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 25

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*FDIC v. Meyer*,
    510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Fleming v. Travenol Labs., Inc.*,
    707 F.2d 829 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Gen. Tel. Co. v. Falcon*,
    457 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gene and Gene LLC v. Biopay LLC*,
    541 F.3d 318 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

*Gold v. Local 7 United Food & Comm. Workers Union*,
    159 F.3d 1307 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**CASE**                                                  **PAGE**

*Gollehon Farming v. United States*,
17 F. Supp. 2d 1145 (D. Mont. 1998), *aff'd* 207 F.3d 1373 (Fed. Cir. 2000),
*over'd on other grounds*, 402 F.3d 1167 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 18

*Graybeal v. American Savings & Loan Ass'n*,
59 F.R.D. 7 (D.D.C. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Green v. United States*,
2003 WL 21500553 at * 5 (E.D. La., June 4, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Gregory v. Mitchell*,
634 F.2d 199 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Guile v. United States*,
422 F.3d 221 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Guillory v. United States*,
699 F.2d 781 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Harrigan v. United States*,
63 F.R.D. 402 (E.D. Pa. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hohri v. United States*,
586 F. Supp. 769 (D.D.C. 1984), aff'd in rel. part, 847 F.2d 779 (Fed. Cir. 1988),
*cert. denied*, 488 U.S. 925 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hoskins v. United States, et al.*,
No. 00-1713, 2001 WL 175237 at *3 n.6 (E.D. La. Feb. 20, 2001) . . . . . . . . . . . . . . 18

*In Re: Ingram Barge Co.*,
435 F. Supp. 2d 524.3 (E.D. La. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Indus. Constr. Corp. v. U.S. Bureau of Reclamation*,
15 F.3d 963 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*James v. Home Constr. Co. of Mobile*,
621 F.2d 727 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*John v. Nat'l Sec. Fire & Cas. Co.*,
501 F.3d 443 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**CASE**                                                                    **PAGE**

*Johnson v. United States*,
    460 F.3d 616 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Kantor v. Kahn*,
    463 F. Supp. 1160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kokaras v. United States*,
    980 F.2d 20 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Lehman v. Nakshian*,
    453 U.S. 156 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lienhart v. Dryvit Sys. Inc.*,
    255 F.3d 138 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 33

*Lindsay, et al. v. Gov't Emp'ees Ins. Co.*,
    448 F.3d 416 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Louisiana ex rel. Guste v. M/V TESTBANK*,
    752 F.2d 1019 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Lunsford v. United States* ,
    418 F. Supp. 1045, *aff'd in relevant part*, 570 F.2d 221 (8th Cir. 1977)  . . . . . . . . . 18, 22

*Luria v. Civil Aeronautics Bd.*,
    473 F. Supp. 242 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Manko v. United States*,
    830 F.2d 831 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McCallister v. United States*,
    925 F.2d 841 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*McKenna v. First Horizon Home Loan Corp.*,
    475 F.3d 418 (1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*McWaters v. FEMA*,
    436 F. Supp. 2d 802 (E.D. La. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Molinar v. United States*,
    515 F.2d 246 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**CASE**                                                          **PAGE**

*Montoya v. United States*,
841 F.2d 102 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Nat'l Assoc. of Gov't Emp'ees v. City Pub. Serv. Bd.*,
40 F.3d 698 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Olden, et al. v. LaFarge Corp.*,
383 F.3d 495 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Orange" Prod. Liab. Litig.*,
818 F.2d 194 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Paul v. Igyarto*,
2002 WL 1610962 at *1 (E.D. La. July 18, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pederson v. Louisiana State Univ.*,
213 F.3d 858 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Pennsylvania v. Nat'l Ass'n of Flood Ins.*,
520 F.2d 11 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Plyler v. United States*,
900 F.2d 41 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Price v. United States*,
69 F.3d 46 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 25, 30

*Ridgely v. FEMA*,
512 F.3d 727 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39

*Schell v. Nat'l Flood Ins. Ass'n*,
520 F. Supp. 150 (D. Col. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Southern Pacific Transp. Co. v. United States*,
471 F. Supp. 1186 (E.D. Cal. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83, (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 25

**CASE**                                                                                      **PAGE**

*Steering Comm. v. Exxon Mobil Corp.,*
    461 F.3d 598 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Styskal v. Weld County Comm'rs,*
    365 F.3d 855 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Transco Leasing Corp. v. United States,*
    896 F.2d 1435 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Tucker v. United States Postal Serv.,*
    676 F.2d 954 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Unger v. Amedisys,*
    401 F.3d 316 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*United States v. Idaho,*
    508 U.S. 1 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Kubrick,*
    444 U.S. 111 (1979); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Mitchell,*
    445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Orleans,*
    425 U.S. 807 (1976); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Reilly,*
    385 F.2d 225 (10th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Sherwood,*
    312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Smith,*
    499 U.S. 160 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Testan,*
    424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Winokur v. Bell Fed. Sav. & Loan Ass'n,*
    58 F.R.D. 178 (N.D. Ill. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

viii

## STATE CASES

*Harp v. Pine Bluff Sand and Gravel Co.*,
 750 So.2d 226 (La. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Jaques v. Moses*,
 737 So.2d 64 (La. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Landry v. Pierre Part Natural Gas Co., Inc.*,
 413 So.2d 621 (La. App. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Pitts v. Bailes*,
 551 So.2d 1363 (La. App. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Skansi v. Signal Petroleum*,
 375 So.2d 965 (La. App. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Smith v. Louisiana Farm Bureau Cas. Ins. Co.*,
 603 So.2d 199 (La. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## FEDERAL STATUTES

1966 U.S. Code Cong. & Ad. News 2515 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 U.S.C. §1346(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16, 35

28 U.S.C. §2072(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. §2401(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 29

28 U.S.C. §2672 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

28 U.S.C. §2675(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

28 U.S.C. §2675(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28 U.S.C. §2677 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. §2678 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28 U.S.C. §2679(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 2680(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ix

## FEDERAL RULES

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 23(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 82 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## FEDERAL REGULATIONS

24 C.F.R. § 3280.308(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 C.F.R. § 14.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

28 C.F.R. §14.9(a)-(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

28 C.F.R. §14.2(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23

49 F.R. 31,996, 31,997-98 (Aug. 9, 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## SECONDARY SOURCES

35A Am. Jur. 2d Federal Tort Claims Act § 186 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Daniel A. Morris, Esq., Federal Tort Claims § 18.7 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**INTRODUCTION**

Pursuant to Pretrial Order No. 17 [Dkt. No. 700], defendant United States of America ("United States") hereby submits this separate memorandum in response to "Plaintiffs' Motion for Class Certification" [Dkt. No. 764]. Plaintiffs, through Plaintiffs' Steering Committee ("PSC"), seek to certify a class action against the United States and other defendants. While the United States agrees with other defendants that Plaintiffs cannot satisfy the general requirements of Fed. R. Civ. P. 23, it writes separately to explain why the requested class and subclasses cannot be certified against the United States.

As described in Plaintiffs' Administrative Master Complaint ("AMC"), Plaintiffs and putative class members seek to bring claims against the United States through the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b)(1), 2671-80. AMC [Dkt. No. 109] ¶ 9. The FTCA is a limited waiver of sovereign immunity – it serves as the sole means by which a person can sue the sovereign, the United States, in tort. Any person that seeks to have his or her rights adjudicated under the FTCA must comply with all of the FTCA's strictures and procedures. These requirements are jurisdictional in nature. Only after the FTCA's requirements are fully satisfied may a court exercise subject matter jurisdiction over a tort claim against the United States.

A class action cannot be certified against the United States in this case because the Court lacks subject matter jurisdiction under the FTCA to adjudicate the rights of all the putative class members in this action. Fed. R. Civ. P. 23 cannot override the jurisdictional requirements and framework of the FTCA. In establishing the FTCA, Congress specifically created a system whereby persons who seek to bring tort claims against the United States must first go through an

administrative claim process.  A court does not have subject matter jurisdiction to adjudicate a person's current or future tort claim against the United States until that person has exhausted his or her administrative remedies pursuant to that process.  In this case, Plaintiffs do not – and cannot – allege that all of the putative class and subclass members have sought to file administrative claims regarding this matter.  As a result, they cannot satisfy the Court that it has jurisdiction to maintain the proposed class action.

Even if Plaintiffs could allege that all putative class and subclass members had filed administrative claims, almost all of these persons have not gone through the legal process of deeming their pending administrative claims denied by individually filing suit against the United States – a jurisdictional prerequisite under the FTCA.  For all such persons with pending administrative claims, FEMA, the agency at issue, not this Court, is the sole entity with jurisdiction over any claims for personal injury or property damage arising out of a claimant's occupancy of a travel trailer, park model trailer, or manufactured housing unit (hereinafter collectively referred to as "emergency housing units," "EHUs," or "units") provided by FEMA after Hurricanes Katrina and Rita.

This framework is not optional.  Congress specifically built these procedures into the FTCA to promote and encourage the administrative resolution of claims, reduce the burden on courts, and reduce the costs associated with resolving claims.  The agency, in this case FEMA, statutorily possesses the exclusive jurisdiction to adjudicate and resolve any pending or potentially pending administrative claims – a court may not exercise jurisdiction over a person's tort claim against the United States until that person affirmatively attempts to divest the agency of jurisdiction by commencing an action in district court, more than six months after the agency

has received the person's administrative claim.  Only through this triggering action may a court

obtain subject matter jurisdiction over an FTCA claim, provided that the other jurisdictional

requirements of the FTCA are satisfied.  Although the number may grow, to date, only nineteen

persons involved in this litigation appear to have FTCA claims that could arguably be considered

properly before this Court.  *See infra* n.1 (noting that only the named plaintiffs in *Pujol*, *Johnson*,

and *Huckabee* have filed suit against the United States).  These are the only individuals who

have sought to shift jurisdiction over their claims from FEMA to this Court by individually filing

suit against the United States.

    As a result, the Court lacks jurisdiction to maintain a class action over the claims of the

putative class and subclasses offered by Plaintiffs.  The class and subclasses at issue necessarily

include: (1) persons that have failed to submit an administrative claim to FEMA and engage in

the administrative process; and (2) persons that have not exhausted the administrative process

because their administrative claims are still pending before FEMA, either because their claims

were received by FEMA less than six months ago, or because they have not yet chosen to deem

their claims denied by individually making the choice to file suit.  Because the FTCA's

requirements have not been met by all (or even most) putative class members, the Court is

without jurisdiction to adjudicate their claims in the form of a class action.  This failure to satisfy

the FTCA's framework is <u>wholly dispositive</u> of Plaintiffs' motion for class certification against

the United States.

    Nonetheless, even assuming that all putative class and subclass members in this case *had*

satisfied the FTCA's administrative claim requirement, and *had* sought to shift jurisdiction over

their claims from FEMA to this Court by individually choosing to file suit, a class action would

still be inappropriate.  A class action cannot be certified against the United States in this case for

a number of additional reasons: (1) the claims in this case will require the Court to resolve a

variety of individualized jurisdictional issues under the FTCA – including whether an

individual's claim falls outside the FTCA's limited waiver of sovereign immunity (*e.g.*, whether

a person's claim is barred by the FTCA's discretionary function exception based on the factual

particulars of his or her claim, *see* Order and Reasons at 42-43 [Dkt. No. 717]); (2) Plaintiffs

have failed to demonstrate how the class and subclasses requested against the United States

satisfy the requirements of numerosity, predominance, and superiority under Fed. R. Civ. P. 23;

and (3) Plaintiffs have failed to adequately support their request for certification of an economic

loss subclass or a liability subclass against the United States.  For all of these reasons, Plaintiffs'

motion for class certification must be denied.

## PROCEDURAL BACKGROUND

On March 18, 2008, Plaintiffs filed the AMC, which incorporated and superseded all

previously-filed actions that had been consolidated in this Multidistrict Litigation ("MDL"),

including those filed as putative class actions.  AMC [Dkt. No. 109] ¶ 5.[1]  The AMC specifically

---

[1] On May 9, 2008, a Complaint was filed in *Pujol v. United States*, No. 08-3217 [Dkt. No. 1].  This Complaint presumably constitutes the underlying substantive lawsuit that is the initial basis for the claims against the United States set forth in the AMC.  Since the filing of the *Pujol* Complaint, the United States has been made a defendant in two other lawsuits filed and consolidated in this MDL action.  *See Johnson v. United States*, No. 08-3602 (note that the *Johnson* Plaintiffs did not wait the necessary six months following the agency's receipt of their administrative claims before filing suit); *Huckabee v. Fleetwood Enters.*, No. 08-4095.  The eleven named plaintiffs in these actions, like the eight named plaintiffs in *Pujol*, (a total of nineteen persons) seek money damages from the United States for personal injuries allegedly caused by exposure to formaldehyde in EHUs supplied by FEMA.

In addition, it appears that United States may have been named or may be made a defendant in two additional underlying lawsuits that have been consolidated in this MDL.  *See*

asserts that certain named persons, the Pujol and Thomas families, are entitled to damages under the FTCA for personal injury resulting from exposure to formaldehyde in EHUs provided by FEMA.  The AMC then requests that the Court certify a Fed. R. Civ. P. 23 class action against the United States.  AMC ¶¶7(a), 93-95.  This is despite the fact that the AMC plainly alleges that only the members of the Pujol and Thomas families have actually "exhausted the requirements" of the FTCA and its administrative process.  *Id*. at ¶ 7.

Between May 23, 2008, and November 13, 2008, the parties conducted class certification related discovery.  Pretrial Order No. 8 (May 23, 2008) [Dkt. No. 287]; November 4, 2008, Order [Dkt. No. 830].  On August 22, 2008, Plaintiffs identified proposed class representatives. *See* Notice of Proposed Class Representatives [Dkt. No. 666].  Mrs. Stephanie Pujol is the only proposed class representative who has filed suit against the United States.  *Id*.

On October 24, 2008, Plaintiffs filed a Motion for Class Certification, requesting certification of a general class of all EHU residents under Fed. R. Civ. P. 23(b)(3) or, in the alternative, a specific subclass against the United States for "economic losses," and apparently, specific subclasses to address when FEMA: (1) knew or should have known that each and every EHU produced excessive formaldehyde emissions that posed a health risk to plaintiffs; (2) should have taken action to determine if all EHUs purchased and provided to the plaintiffs were habitable, functional, and suitable for occupancy; and (3) should have halted issuing EHUs to disaster victims and/or issued warnings to persons occupying the units.  PSC's Memorandum

---

*Laney v. United States*, No. 08-4630, Complaint [Dkt. No. 1]; *Aldridge v. Gulf Stream*, No. 07-9228, Motion for Leave to File First Supplemental and Amending Complaint [Dkt. No. 758].  To date, the United States has not been served with a Complaint in either of these actions, and as such, does not yet consider itself to be a defendant in these actions.

Supporting its Motion for Class Certification [Dkt. No. 764-2] ("PSC Memo.") at 20.[2]  Plaintiffs'

Motion did not address the fact that the majority of putative class members have neither

exhausted their administrative remedies against the United States, nor have they sought to shift

jurisdiction over their claims from FEMA to this Court by individually filing suit, as required by

the framework of the FTCA.

**FACTS RELEVANT TO PLAINTIFFS' REQUEST FOR**
**CLASS CERTIFICATION AGAINST THE UNITED STATES**

The following sample of facts obtained during the course of class certification discovery

is offered to demonstrate the variety of individual circumstances involved in this litigation.

These include the varying factual circumstances surrounding different claimants and the unique

factual distinctions among different EHUs.

I.      **Facts Regarding Certain Persons Who Have Sought To Shift Jurisdiction Over**
        **Their Claims From FEMA To This Court By Choosing To File Suit Against The**
        **United States.**

        A.      **The Pujol Family.**

        1.      From approximately November 2005 to December 2006, the Pujol family

occupied a FEMA-provided travel trailer in Metairie, Louisiana.  Ex. 1, Pujol Individual

Assistance ("IA") File Excerpts at FEMA86-117, 213, 236.  In approximately December 2006,

the Pujol family moved from the trailer into an apartment, for which they received rental

---

[2] Plaintiffs request in the alternative, as to Manufacturing Defendants, but apparently not as to the United States, that the Court certify the following subclasses consisting of claims for: (1) a medical monitoring program for all plaintiffs; and (2) a medical monitoring program for children who occupied EHUs.  PSC Memo. at 2-5, 17-20.  To the extent Plaintiffs actually seek certification of these subclasses as to the United States, the United States incorporates herein: (1) all of its arguments against class certification; (2) its arguments against certification of an economic damages subclass as to the United States, *see infra* § IV; and (3) Manufacturing Defendants' arguments against certification of such subclasses.

assistance from FEMA.  *Id.* at 213, 226-227.  The Pujol family vacated the travel trailer because Mrs. Pujol's parents, the owners of the land where the trailer had been placed, wanted the trailer removed from their property; Mr. and Mrs. Pujol suffered from numerous medical conditions and the trailer did not readily accommodate their medical equipment; and Mrs. Pujol found "more permanent . . . and more comfortable housing."  *Id.* at 127, 135, 202, 209, 218, 239; Ex. 3, Depo. Pujol at 67:16-22.  In the spring and summer of 2007, the Pujol family, after having vacated the trailer, suggested to FEMA, in conjunction with their request for rental assistance, that some of the family members may have been injured as a result of exposure to formaldehyde during the family's occupancy of the trailer.  *Id.* at 170-171, 227-228.

2.      On or about September 10, 2007, FEMA received administrative tort claims submitted by Plaintiffs Mr. and Mrs. Pujol, as well as their two children (through Mr. Pujol). Ex. 2, Pujol Adm. Claims at FEMA-23-39.  The Pujols allege that they have suffered the following personal injuries as a result of living in the trailer: sinus, respiratory, and other injuries; arthritic and pneumonia-like symptoms; headaches, nausea, emotional injuries, respiratory tract infections, worsening of sleep apnea, worsening of hepatitis C, chest pains, fatigue, shortness of breath, increased blood glucose, ear infections, "worsened ADHD and ODD symptoms," cough, nausea, vomiting, and future injuries.  *Id.* at 23-36.

3.      Prior to Hurricane Katrina, and continuing to the present time, Mrs. Pujol has suffered from, among other things, hypothyroidism, hepatitis C, orthopaedic problems, and repeated respiratory tract infections, and takes over 12 prescription medications.  *See* Ex. 3, Depo. Pujol at 73:14-88:25.

4.      Mrs. Pujol seeks $1 million in damages.  Mr. Pujol seeks $100,000, as well as

$750,000 on behalf of each of his two minor children.  Ex. 2 at 23, 27, 31, 36.  None of the Pujol claimants asserts an FTCA property damage claim.  *Id*.

**B.    The Thomas Family.**

5.    In or about February, 2006, FEMA issued the Thomas family a travel trailer in Kenner, Louisiana.  Ex. 4, Thomas IA File Excerpts at FEMA-229-36.  In the spring or summer of 2007, Mr. Thomas notified FEMA that he was interested in purchasing the trailer.  In September 2007, FEMA notified him that the unit was not available for purchase; and, later that same month, the Thomas family vacated the unit.  *Id*. at 196, 234, 237.  Available evidence indicates that the Thomas family did not complain to FEMA about odors or formaldehyde in the trailer.  *Id.* at 223-237.

6.    On or about September 10, 2007, FEMA received administrative tort claims submitted by Plaintiffs Sean and Phuong Thomas, on behalf of themselves and their two minor children.  Ex. 5, Thomas Adm. Claims at FEMA-42-57.  The Thomas claimants allege the following personal injuries as a result of living in the trailer: sinus, respiratory, and other injuries; arthritic and pneumonia-like symptoms, headaches, nausea, emotional injuries; injuries to the eyes and throat, nausea, vomiting, coughing, headache, joint stiffness, and future injuries. *Id.* at 42-54.

7.    Each member of the Thomas family seeks $150,000 in personal injury damages. *Id.* at 42, 46, 50, 54.  None of the Thomas claimants asserts a property damage claim.  *Id*.

**C.    The Huckabee Family.**

8.    On or about October 10, 2005, FEMA issued the Huckabee family a travel trailer in Kiln, Mississippi.  Ex. 6, Huckabee IA File Excerpts at FEMA114-50.  In January 2006,

FEMA issued the Huckabee family a mobile home at the same address where the trailer had been installed. *Id.* at 26-27, 50.  Between July 2006 and October 2006, the Huckabee family contacted FEMA and expressed an interest in purchasing the mobile home or trailer. *Id.* at 61-63.

9.      In or about May 2007, the Huckabee family complained to FEMA regarding formaldehyde and mold in their mobile home unit. *Id.* at 51-52, 64-65.  Also in or about May 2007, FEMA took the following actions: FEMA offered to relocate the family to a different mobile home in a commercial park, which the Huckabees refused; FEMA sent persons to inspect the mobile home and advise the Huckabee family regarding ventilation and cleaning techniques; and FEMA commenced action to provide the Huckabees with alternative housing. *Id.* at 52-54.  On or about June 20, 2007, at the Huckabees' request, FEMA placed a different mobile home at the same address where the previous trailer and mobile home had been placed. *Id.* at 53.

10.      In or about April 2008, the Huckabee family complained about formaldehyde in the replacement mobile home, and FEMA moved them to a hotel. *Id.* at 58.  From April 2008 to July 2008, FEMA provided the Huckabee family with hotel rooms and meals, and assisted them in attempting to locate an apartment that would accept FEMA rental assistance payments. *Id.* at 51-58, 76-80.  In July of 2008, the Huckabees vacated the hotel and moved into a housing unit provided by the Mississippi Emergency Management Agency. *Id.* at 79-80.

11.      FEMA received the Huckabees' administrative tort claims after December 2007. Ex. 7, Huckabee Adm. Claims at FEMA-931-37.  The Huckabees claim they suffered personal injuries as a result of exposure to formaldehyde and mold while residing in the EHUs, including respiratory ailments, pain and suffering, and psychological injuries. *Id*.  Each member of the

Huckabee family seeks $250,000 in damages for personal injury damages.  *Id.*  None of the Huckabees asserts a property damage claim.  *Id.*

## II.      Facts Regarding The Variety Of Emergency Housing Units Issued By FEMA.

12.      FEMA purchased in excess of 140,000 EHUs to provide emergency housing for victims of Hurricanes Katrina and Rita.  Ex. 8, FEMA Press Release No. HQ-08-002b (Feb. 12, 2008) at FEMA10-209.  These units came from a variety of different manufacturers and were built in a number of different ways – they were not built to a singular set of specifications.

13.      The United States Department of Housing and Urban Development's ("HUD") indoor air target level for formaldehyde in mobile homes is 0.4 parts per million (ppm) or 400 parts per billion (ppb).  49 F.R. 31,996, 31,997-98 (Aug. 9, 1984).  This standard describes the target indoor air formaldehyde level resulting from the manufacture of mobile homes using certain low-formaldehyde emissions materials.  *Id.* at 31,996, 24 C.F.R. § 3280.308(a).

14.      Several of the Manufacturing Defendants manufactured their travel trailers and park model trailers using only HUD-compliant materials.

15.      Fleetwood Enterprises, Inc. ("Fleetwood") constructed over 13,000 EHUs that were purchased by FEMA to provide emergency housing for disaster victims following Hurricanes Katrina and Rita.  Ex. 9, Letter to Hon. Karen Wells Roby from Joseph Glass at 2 (Aug. 13, 2008).  Since the 1980s, Fleetwood has maintained a policy of voluntarily constructing all of its EHUs, including those used to respond to Hurricanes Katrina and Rita, with HUD-compliant low-formaldehyde emissions materials – the same materials that makers of manufactured housing (mobile homes) are required to use.  Ex. 10, Fleetwood's Responses to Plaintiffs' First Interrogatories, Response No. 16.

10

16.     Gulfstream Coach, Inc. ("Gulfstream") manufactured approximately 50,000 EHUs that FEMA purchased to provide emergency housing for victims of Hurricanes Katrina and Rita.  Ex. 9 at 2.  Gulfstream has had in place a "long-standing" policy to use HUD-compliant low-formaldehyde emissions materials in the construction of all EHUs.  Ex. 11, Statement of Jim Shea, Chairman, Gulf Stream Coach, Inc., Before the House Committee on Oversight and Government Reform (July 9, 2008) at 8.

17.     In December 2007 and January 2008, the Centers for Disease Control ("CDC") tested 519 EHUs that FEMA had issued to Hurricane Katrina/Rita disaster victims.  Ex. 12, Final Report on Formaldehyde Levels in FEMA-Supplied Travel Trailers, Park Models, and Mobile Homes (July 2, 2008) at iii.  Formaldehyde levels in the 519 units that were tested ranged from 3 to 590 ppb.  *Id.* at 10.  Of those, only 5% contained formaldehyde levels in excess of 300 ppb. *Id.* at 23, Table 2.

18.     Plaintiffs have tested numerous EHUs as a part of this litigation.  One of Plaintiffs' experts, Mr. Kaltofen, reports that the median concentration level of formaldehyde in the tested units is .14 ppm (140 ppb), and that test results have ranged from no detection of formaldehyde to 4 ppm (4000 ppb).  Ex. 13, Kaltofen Expert Report at PL-218; Ex. 14, Depo. Kaltofen at 92:24-25.  Similarly, another of Plaintiffs' experts, Dr. Hewett, reports that of the 976 tested units of different manufacturers, only one manufacturer's mean formaldehyde concentration level exceeded the HUD indoor air target level for mobile homes of 400 ppb.  Ex. 15, Hewett Expert Report at 12-13, Table 8; Ex. 16, Depo. Hewett at 152:21-153:6.

## STANDARD OF REVIEW

In assessing whether to certify a class action against the United States, the Court must make two inquiries.  First, it must determine whether it possesses subject matter jurisdiction over the tort claims of all putative class members.  Second, it must determine, as to that class, whether Plaintiffs have met their burden of proof under Fed. R. Civ. P. 23.

**I.     The Court May Not Certify A Class Action Absent A Determination That It Possesses Subject Matter Jurisdiction Over The Claims Of The Putative Class Claimants.**

It is well established that a court cannot certify a class action where it lacks jurisdiction over the claims of the putative class members.  *See*, *e.g.*, *Amchem Prods., Inc., et al. v. Windsor, et al.*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b)").  Consistent with the requirement that the Court possess jurisdiction over the claims of the putative class claimants, Fed. R. Civ. P. 82 provides that the Rules of Civil Procedure, including Fed. R. Civ. P. 23, "do not extend . . . the jurisdiction of the district courts."  *See also Lindsay, et al. v. Gov't Emp'ees Ins. Co.*, 448 F.3d 416, 420 (D.C. Cir. 2006) ("Because subject matter jurisdiction is a prerequisite to class certification, it is properly reviewed in a Rule 23(f) interlocutory appeal."); *Olden, et al. v. LaFarge Corp.*, 383 F.3d 495, 498 (6th Cir. 2004) (same); *cf. Gene and Gene LLC v. Biopay LLC*, 541 F.3d 318, 323-34 (5th Cir. 2008) (court may decide subject matter jurisdiction during Rule 23(f) interlocutory appeal); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-95 (1998) (jurisdiction is a "threshold" inquiry).

As sovereign, the United States may not be sued without its consent – it is the existence

12

of this consent that defines the scope of the Court's jurisdiction. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Moreover, the consent of the United States to be sued cannot be implied, but must be unequivocally expressed. *See United States v. Idaho*, 508 U.S. 1, 6 (1993); *Guile v. United States*, 422 F.3d 221, 229 (5th Cir. 2005). As a result, a limited wavier of sovereign immunity, such as the FTCA, must be strictly construed in favor of the United States. *See Idaho*, 508 U.S. at 7; *United States v. Orleans*, 425 U.S. 807, 813 (1976); *Atorie Air, Inc. v. FAA*, 942 F.2d 954, 958 (5th Cir. 1991); *Paul v. Igyarto*, 2002 WL 1610962 at *1 (E.D. La. July 18, 2002) (Engelhardt, J.). Furthermore, Plaintiffs bear the burden of establishing that the Court has subject matter jurisdiction and that their claims are not barred by the jurisdictional exceptions to the FTCA's limited waiver. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Dowl v. Tulane Univ. Hosp.,* 2005 WL 2060921 at *2 (E.D. La. Aug. 22, 2005) (Engelhardt, J.) (plaintiff must show that court has subject matter jurisdiction over FTCA claim).

## II.     **Plaintiffs Must Demonstrate That They Satisfy The Requirements Of Fed. R. Civ. P. 23(b)(3).**

To obtain class certification under Fed. R. Civ. P. 23(b)(3), Plaintiffs must demonstrate that: (1) the proposed class is so numerous that joinder of its members is impracticable; (2) there are questions of law or fact common to the entire class; (3) the class representatives' claims are typical of those of the class; (4) the class representatives will fairly and adequately protect the interests of the class; and (5) the questions of law or fact common to all class members predominate over individual questions, such that a class action is the superior method to fairly and efficiently adjudicate the case. Fed. R. Civ. P. 23(a), (b)(3); *Gene and Gene LLC*, 541 F.3d at 325. The Court must conduct a "rigorous analysis" to determine whether Plaintiffs have met

13

these requirements.  *Unger v. Amedisys*, 401 F.3d 316, 320 (5th Cir. 2005); *Castano v. Am*

*Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d

598, 601 (5th Cir. 2006); *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

As the Fifth Circuit noted in *Gene and Gene LLC*,

> [t]he predominance inquiry requires a court to consider how a trial on the merits would be conducted if a class were certified.  This, in turn, entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials.  541 F.3d at 326, *citing Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003).

Additionally, "in order to maintain a class action, the class sought to be represented must

be adequately defined and clearly ascertainable."  *DeBremaecker v. Short*, 433 F.2d 733, 734

(5th Cir. 1970) (internal citations omitted).  "The existence of an ascertainable class of persons

to be represented by the proposed class representative is an implied prerequisite of Federal Rule

of Civil Procedure 23."  *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 444 n.3 (5th Cir.

2007) (citing *DeBremaecker*).  A court cannot certify a class if "an individualized inquiry is

needed to determine membership," and cannot conclude that the requirements of Rule 23 are

satisfied with respect to a class of unknown membership.  *Lienhart v. Dryvit Sys. Inc.*, 255 F.3d

138, 149 (4th Cir. 2001); *see also Winokur v. Bell Fed. Sav. & Loan Ass'n*, 58 F.R.D. 178, 180-

81 (N.D. Ill. 1972) (denying certification because it would be impossible without individual

hearings to determine which depositors of defendant savings and loan associations are in fact

members of the class); *Adashunas v. Negley*, 626 F.2d 600, 603-04 (7th Cir. 1980) (denying

class certification because of the "gargantuan task" of identifying members of the proposed

class; when the determination of class membership depends on individualized factors requiring

14

individual hearings, the class is not objectively definable and may not be certified). Finally,

Plaintiffs bear the burden to show they have satisfied the requirements of Fed. R. Civ. P. 23. *See*

*Gene and Gene LLC*, 541 F.3d at 325; *Unger*, 401 F.3d at 320 ("the party seeking [class]

certification bears the burden of establishing that *all* requirements of Rule 23 have been

satisfied"), *citing Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001)

(emphasis in original).

## ARGUMENT

**I.    The Court Lacks Jurisdiction To Certify The Class Action Sought Against
The United States.**

> **A.    Because Putative Class Members Have Not Satisfied The FTCA's
> Prerequisites, The Court Lacks Subject Matter Jurisdiction To Adjudicate
> Their Tort Claims Through A Class Action.**

The Court must deny Plaintiffs' motion to certify a class action against the United States

because the Court lacks subject matter jurisdiction over the claims of the putative class members.

*See* PSC Memo. at 2-6, 20[3]; AMC Counts 1 & 2. The sole means by which a person can sue the

United States in tort is the FTCA – this statute serves as a limited waiver of sovereign immunity

---

[3] Plaintiffs request that the Court certify a class of

> [a]ll individuals who resided for any length of time in emergency housing
> units provided by FEMA within the state[s] of [Louisiana, Texas,
> Mississippi, and Alabama] after Hurricanes Katrina and/or Rita, and who
> sustained damages recoverable under [Louisiana, Texas, Mississippi, or
> Alabama] law as a result of exposure to formaldehyde in these units.

PSC Memo. at 4-5. As described, this class could include persons who resided in EHUs for as
little as one day. In addition, this class would include persons that have not exhausted their
administrative remedies. Plaintiffs have never alleged that all members of this class have filed
administrative claims or have individually filed suit under the FTCA. In fact, Plaintiffs, through
the AMC, describe only eight named persons as having "exhausted the [administrative]
requirements" of the FTCA. AMC [Dkt. No. 109] ¶ 7.

and authorizes jurisdiction for certain personal injury and property damage claims arising out of the negligent or wrongful acts or omissions of government employees. *See* 28 U.S.C. § 2679(b)(1); *United States v. Smith*, 499 U.S. 160, 173 (1991). The FTCA contains a number of requirements and exceptions that define the scope of its waiver, and therefore define the scope of a court's jurisdiction. Among the FTCA's jurisdictional requirements is that a claimant must exhaust his or her administrative remedies before the appropriate federal agency before a court may hear his or her tort claim. In this case, until a person has exhausted the administrative claims process, FEMA, not a court, retains jurisdiction to adjudicate, compromise, and settle that person's claims arising from alleged formaldehyde exposure in an EHU. *See* 28 U.S.C. §§1346(b)(1), 2672, 2675(a), 2677; *Gregory v. Mitchell*, 634 F.2d 199, 203-04 (5th Cir. 1981) (the administrative exhaustion requirement is jurisdictional in nature and cannot be waived); *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995); *Molinar v. United States*, 515 F.2d 246, 249 (5th Cir. 1975) (adherence to the statutory procedure for making a claim against the sovereign is a jurisdictional prerequisite of the government's waiver of its immunity); *Plyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990); *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994).

The Court lacks jurisdiction over the claims of the putative class members in this case because the majority of them have failed to even initiate the administrative claim process with FEMA. In addition, just because a person has submitted an administrative claim does not mean that his or her tort claims can be adjudicated by this Court, as a class member or otherwise. FEMA retains jurisdiction over all pending administrative tort claims until such claims are formally denied, or until each claimant at issue, in accordance with the procedure described in

16

the FTCA, chooses to individually file suit against the United States, provided that his or her administrative claim has been pending with FEMA for at least six months.

Because the FTCA is a waiver of sovereign immunity, all of its conditions must be strictly observed, and cannot be overridden through Fed. R. Civ. P. 23. *See generally Block v. North Dakota ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 287 (1983); *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981). Congress specifically prescribed an administrative claim process as a part of the FTCA to: (1) reduce the burden placed on federal courts by facilitating settlement of FTCA claims at the administrative level; (2) decrease the government's cost of processing tort claims; and (3) promote fair and equitable treatment of claimants. H. Rep. No. 1532, 89th Cong., 2d Sess. 6 (1966); S. Rep. No. 1327, 89th Cong., 2d Sess. 11, *reprinted in* 1966 U.S. Code Cong. & Ad. News 2515, 2524. *See generally Tucker v. United States Postal Serv.*, 676 F.2d 954, 958-59 (3d Cir. 1982); *Dondero v. United States*, 775 F. Supp. 144, 147 (D. Del. 1991). Even when strict compliance may be futile, this requirement set forth by Congress must be satisfied before a court may exercise jurisdiction over a tort claim, whether the claimant is known or unknown. In acknowledgment of the FTCA's framework, courts have refused to disrupt or allow a claimant to carve out exceptions to the administrative claim process. *See Indus. Constr. Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 967 (10th Cir. 1994) (bringing an administrative claim is a jurisdictional prerequisite to suit, imposed by Congress, which the courts have no power to waive; the assertion that the administrative claim process is futile does not excuse this jurisdictional requirement); *Manko v. United States*, 830 F.2d 831, 840 (8th Cir. 1987) (the administrative claim process contains no exception for futility – for a court to carve out such an exception would disrupt the administrative claim procedure created by Congress).

17

Given that Plaintiffs cannot allege that all (or even most) members of the putative class or any subclass have exhausted the administrative claim process, the Court lacks jurisdiction to consider their tort claims in the form of a class action, or any other kind of action.  In effect, the FTCA mandates that a class action against the United States in tort cannot proceed unless each and every putative class member has filed an administrative claim and individually exhausted his or her administrative tort remedies, thereby allowing the Court to potentially exercise subject matter jurisdiction through the FTCA.  *See Hoskins v. United States, et al.*, No. 00-1713, 2001 WL 175237 at *3 n.6 (E.D. La. Feb. 20, 2001) (Berrigan, J.).  For these reasons, courts have uniformly held that class actions cannot be maintained under the FTCA where each and every putative class member has not individually exhausted his or her administrative remedies.[4]

Even if the Court were to consider only those putative class members who have filed administrative claims with FEMA (and even if their administrative claims have been pending

---

[4] *See, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 194, 198 (2d Cir. 1987); *Lunsford v. United States*, 570 F.2d 221, 224 (8th Cir. 1977); *Caidin v. United States*, 564 F.2d 284, 287 (9th Cir. 1977); *Blain v. United States*, 552 F.2d 289, 290-91 (9th Cir. 1977); *Pennsylvania v. Nat'l Ass'n of Flood Ins.*, 520 F.2d 11, 23-24 (3d Cir. 1975); *Gollehon Farming v. United States*, 17 F. Supp. 2d 1145, 1160-61 (D. Mont. 1998), *aff'd*, 207 F.3d 1373 (Fed. Cir. 2000), *over'd on other grounds*, 402 F.3d 1167 (Fed. Cir. 2005); *Hohri v. United States*, 586 F. Supp. 769, 793 (D.D.C. 1984), *aff'd in rel. part*, 847 F.2d 779 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 925 (1988); *Schell v. Nat'l Flood Ins. Ass'n*, 520 F. Supp. 150, 153 (D. Col. 1981); *Luria v. Civil Aeronautics Bd.*, 473 F. Supp. 242, 244-45 (S.D.N.Y. 1979); *Kantor v. Kahn*, 463 F. Supp. 1160, 1162-64 (S.D.N.Y. 1979); *Church of Scientology v. Director, FBI*, 459 F. Supp. 748, 754-55 (D.D.C. 1978); *Harrigan v. United States*, 63 F.R.D. 402, 408-09 (E.D. Pa. 1974).  A number of secondary authorities have also suggested that all members of a putative class action against the United States under the FTCA must satisfy the administrative claim requirement before a class action may be brought.  *See*  Am. Jur. 2d Federal Tort Claims Act § 186 (2007) ("in order for a case to be maintained as a class action for damages against the United States under the Federal Tort Claims Act, each alleged class member must exhaust administrative remedies as required by 28 U.S.C.A. §2675(a)."); Daniel A. Morris, Esq., *Federal Tort Claims* §18.7 (2007) ("each alleged class member must exhaust the administrative remedies").

with FEMA for more than six months), the Court still lacks subject matter jurisdiction over the

majority of these persons' tort claims.  Under the FTCA, a district court's authority to exercise

jurisdiction over an FTCA claim is "[s]ubject to the provisions of chapter 171 of this title."  28

U.S.C §1346(b)(1).  Chapter 171, 28 U.S.C. §2675(a), confers exclusive jurisdiction upon the

applicable Federal agency, in this case FEMA, to adjudicate, settle and compromise all tort

claims until either (1) the agency issues a final denial and the claimant disagrees with that

decision and institutes an action in district court, or (2) the administrative claim has been

pending before the agency for in excess of six-months and the claimant exercises the option to

forego the administrative process and institute a claim in district court.  Section 2675(a) provides

in pertinent part:

> An action shall not be instituted upon a claim against the United States . . .
> unless the claimant shall have first presented the claim to the appropriate
> Federal agency and his claim shall have been finally denied by the agency
> in writing and sent by certified or registered mail.  The failure of an
> agency to make final disposition of a claim within six months after it is
> filed shall, *at the option of the claimant any time thereafter*, be deemed a
> final denial of the claim for purposes of this section.

(emphasis added).[5]  Section 2672 of Title 28 invests the head of each Federal agency, during the

pendency of an administrative claim, with the authority to "consider, ascertain, adjust,

determine, compromise, and settle any claim for money damages against the United States for

---

[5] Consistent with Congress' intent to encourage the administrative resolution of claims
and decrease the burden on the judiciary, a properly filed administrative claim may be amended
prior to final agency action; and the claimant's option to sue upon such a claim does not accrue
until six months after a timely amendment.  28 C.F.R. §14.2(c).  Moreover, if the agency
adjudicates a claim and issues a final decision or denial, the claimant, rather than filing suit, may
instead ask the agency to reconsider its decision.  Upon the timely filing of a request for
reconsideration, the agency retains its exclusive jurisdiction to adjudicate the claim.  28 U.S.C
§2401(b); 28 C.F.R. §14.9(a)-(b).

injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment."[6]   In contrast, once a claimant "commences suit" in district court, the Attorney General of the United States is vested with authority to arbitrate, settle and compromise the action.  28 U.S.C. §2677.[7]

Simply put, the administrative procedure enacted by Congress makes the Federal agency, in this case FEMA, the exclusive arbiter of any and all tort claims until either FEMA issues a formal denial of the claim, or, if FEMA does not adjudicate and resolve the claim within six months, until the claimant affirmatively seeks to shift jurisdiction over the tort claim from FEMA to a district court by exercising his or her option under §2675(a) and individually commencing an action against the United States.[8]   This triggering action has not occurred with

---

[6] Section 2672 provides in pertinent part:

[A]ny such award, compromise, settlement, or determination shall be final and conclusive on all officers of the Government . . . . The acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States . . . .

[7] Section 2677 provides:

The Attorney General or his designee may arbitrate, compromise, or settle any claim cognizable under section 1346(b) of this title, *after the commencement of an action thereon*.  (Emphasis added.)

[8] As explained below, class certification is not appropriate for those few plaintiffs who have filed actions in district court, because before the Court can adjudicate the merits of their claims, these plaintiffs must demonstrate that they have satisfied the FTCA's administrative exhaustion requirement as well as the FTCA's other jurisdictional requirements, including, but not limited to: (1) that they have submitted legally sufficient administrative claims to FEMA; (2) that their claims are not barred by the two-year statute of limitations for filing an administrative tort claim with FEMA; and (3) that their claims are not barred by the FTCA's discretionary function exception, 28 U.S.C. 2680(a).  Just because a plaintiff has satisfied the

respect to the majority of putative class members, thereby depriving the Court of subject matter jurisdiction over their current or potential tort claims.  The FTCA is clear that it is the individual claimant, and no one else, who possesses the "option" to try to shift jurisdiction over his or her tort claim from the relevant Federal agency to a district court by commencing an action against the United States.  Neither Fed. R. Civ. P. 23, nor any other procedural method, can substitute for the required framework Congress set forth in the FTCA.

The notion that a district court may only exercise jurisdiction over an FTCA claimant's claim after the claimant has instituted and commenced an action is inherent in the FTCA's statutory framework, including its six-month statute of limitations.[9]  The FTCA does not recognize any exception for the maintenance of class actions.

---

FTCA's administrative exhaustion requirement does not mean that the Court has jurisdiction over his or her claim, nor does it mean that the claim may be adjudicated through a class action. *See infra*  §§ II-IV.

[9] The FTCA provides that its statute of limitations for instituting and commencing an action in district court does not accrue until after the agency has completed its exercise of jurisdiction and issued a formal decision denying the claim.  *See Arigo v. United States*, 980 F.2d 1159, 1161 (8th Cir. 1992) (final denial letter from the agency triggers a claimant's six-month statute of limitations to file suit); *Anderson v. United States*, 803 F.2d 1520, 1522-23 (9th Cir. 1986) (after six months, a claimant may either deem his or her claim denied and institute an action in district court or continue to await final agency action and consider filing suit thereafter); 28 U.S.C. §2672 (agency possesses settlement authority, subject only to FTCA provisions "relating to civil actions on tort claims against the United States").  *Cf. McCallister v. United States*, 925 F.2d 841, 843-44 (5th Cir. 1991) (there is no time limit for filing an FTCA action in district court unless the agency issues a final denial).  The claimant also has the option of leaving jurisdiction over the claim with the agency and pursuing an administrative resolution of the claim by requesting that the agency reconsider its decision.  *See* 28 U.S.C. §2675(a); 28 C.F.R. §14.9(a-b) (a claimant may pursue reconsideration with the agency, after the agency formally denies the claim, and prior to the expiration of the six-month period for instituting an action, if he does not institute an action in court).  This is further evidence that the "option" to file suit under Section 2675(a) belongs only to the claimant.

21

**B.** **Class Certification Should Be Denied Where Maintenance Of A Class Action Would Be Inconsistent With An Applicable Statutory Scheme, Such As That Of The FTCA.**

Even apart from the FTCA's jurisdictional requirements, the proposed class action against the United States is inconsistent with the basic structure of the FTCA, and thus, is inappropriate. *James v. Home Constr. Co. of Mobile*, 621 F.2d 727, 730-31 (5th Cir. 1980). In *James*, the Fifth Circuit held that a class action could not be maintained for claims under the Truth-in-Lending Act ("TILA") because that statute requires that the obligor give the creditor ten days notice before the matter can be brought to court. The Fifth Circuit reasoned that the statutory framework requiring notice was "a right which the creditor has with each individual obligor" and that "the notion of a class action in this sort of context would contradict . . . the Congressional intent about the nature of this action." *Id.* at 731, *citing Lunsford*, 418 F. Supp. 1045, *aff'd in relevant part*, 570 F.2d 221 (8th Cir. 1977). *See also McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 423 (1st Cir. 2007) (same).

As an initial matter, class certification is inconsistent with the FTCA's settlement authority provisions. As previously mentioned, while a claim is pending before an agency, the agency has exclusive jurisdiction to "consider, ascertain, adjust, determine, compromise" and settle the claim. 28 U.S.C. §2672. Aside from the jurisdictional barriers discussed above, certification of a class action in this case would deprive FEMA of its statutory right to assess and consider all potential tort claims against it that seek money damages based on the alleged acts or omissions of FEMA employees. Because the majority of putative class members have not exhausted their administrative remedies, FEMA, not a court, retains exclusive jurisdiction to settle and consider these claims. *See United States v. Reilly*, 385 F.2d 225, 229 (10th Cir. 1967)

22

(where Congress has set out a statutory procedure for the compromise of matters involving the United States, it implicitly negatives the use of any other procedure); 28 U.S.C. §2672 (an agency's settlement authority is subject only to provisions regarding federal suits under the FTCA).

Similarly, class certification is inconsistent with the FTCA's restrictions on damage awards and attorneys' fees.  While a claim is pending before an agency, a claimant may, at any time, increase the amount of damages demanded.  28 C.F.R. §14.2(c) (a claim may be amended by the claimant at any time prior to final agency action, or prior to the claimant's institution of an action).  However, once a claimant institutes an action and commences suit, damages are capped at the sum certain presented to the federal agency, unless the claimant demonstrates that any increase is "based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim."  28 U.S.C. §2675(b).  *See also Benjamin v. United* States, 85 F. Supp. 2d 1034, 1036-37 (D. Colo. 2000) (plaintiff barred from increasing damages demand after instituting an action and commencing suit).

Further, with respect to attorneys' fees, Congress has provided

> [n]o attorney may charge, demand, receive or collect for services
> rendered, fees in excess of 25 per centum of any judgement . . . or
> settlement . . . [by the Attorney General or his designee] made pursuant
> to section 2677 of this title, or in excess of 20 percentum of any award,
> compromise, or settlement . . . [made by the head of an agency] pursuant
> to section 2672 of this title.

28 U.S.C. §2678.  Certification of a class action against the United States in this case would be inconsistent with the FTCA's attorneys' fee provisions because the statute clearly provides for two separate categories of attorneys' fees – those fees that can be charged on any judgment or settlement achieved while the agency has jurisdiction over the claim and those fees that can be

23

charged on any judgment or settlement achieved while a district court potentially has jurisdiction over the claim. By certifying a class against the United States, the Court would be short-circuiting the FTCA's administrative process for the majority of putative class members. As noted above, this process is a distinct legal regime that must be exhausted – it is a process that contains its own unique procedural and substantive provisions.

For all these reasons, the Court should deny Plaintiffs' request to certify a class and certain subclasses against the United States.

**II.    Class Certification Is Inappropriate Because Whether The Court Has Jurisdiction Over The Claims Of Putative Class Members Hinges On Whether Each Person's Individual Claims Fall Within The FTCA's Limited Waiver Of Sovereign Immunity.**

As this Court has previously ruled, many of the putative class members' claims against the United States, even if these members have exhausted their administrative remedies, fall outside the FTCA's limited waiver of sovereign immunity. *See* Order and Reasons at 42-46 [Dkt. No. 717] (ruling on the applicability of the FTCA's discretionary function exception). Certainly, many of the claims of putative class members will be wholly barred on the basis of that ruling. To the extent that any claims survive the jurisdictional bars enunciated by this Court,[10] certification as to even this limited subset of claims is inappropriate against the United

---

[10]  The United States plans to file a second motion challenging the Court's subject matter jurisdiction based on the discretionary function exception in the months after class certification is determined. This motion will be predicated on the legal framework set forth in the Court's Order and Reasons, and will be grounded in facts that have been elicited during the course of class certification discovery and obtained during recent factual inquiries. The United States believes that this showing will indicate that <u>all</u> of FEMA's activities related to this matter, including its response to complaints and concerns regarding formaldehyde in EHUs, were susceptible to policy considerations. Nonetheless, the United States recognizes that at the present time, the Court's Order and Reasons governs the applicability of the discretionary function exception to this matter and, as explained below, under that ruling, application of the

States because determining whether this Court has jurisdiction over these potentially viable claims will require the kind of individualized assessment of putative class members that is incompatible with class certification.  Specifically, under the framework envisioned by the Court's ruling, such a jurisdictional inquiry will necessarily involve a person-by-person examination, and will require an assessment of whether each individual's claims are barred by the FTCA's discretionary function exception.  Jurisdiction will also hinge on a person-by-person examination of whether each individual's claims are barred by the FTCA's statute of limitations and administrative exhaustion requirements.  Such a scenario, where the Court's jurisdiction over putative class members may depend on individualized jurisdictional inquiries, renders class certification impossible.  The separation of powers doctrine requires that the Court engage in this jurisdictional inquiry before deciding the merits of any class claims.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-95 (1998) (the requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and "is inflexible and without exception") (internal citation and quotation marks omitted).  It is axiomatic that a federal court must satisfy itself that it has subject matter jurisdiction over any and all claims before proceeding to the merits of such claims – even when the question of the merits is easier to resolve and will be resolved against the claimants.  *See Gold v. Local 7 United Food & Comm. Workers Union*, 159 F.3d 1307, 1309-10 (10th Cir. 1998), *over'd on other grounds, Styskal v. Weld County Comm'rs*, 365 F.3d 855 (10th Cir. 2004).  Moreover, Plaintiffs bear the overarching burden to establish that the Court has subject matter jurisdiction and that

---

discretionary function exception will depend on the particular facts and circumstances surrounding each individual's interactions with FEMA and vice versa.

the claims of the putative class members fall within the FTCA's limited waiver of sovereign immunity.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Dowl v. Tulane Univ. Hosp.,* 2005 WL 2060921 at *2 (E.D. La. Aug. 22, 2005).

> **A.    Putative Class Claimants Must Demonstrate That Their Claims, Based On Their Individual Factual Circumstances, Are Not Barred By The FTCA's Discretionary Function Exception.**

Consistent with the Court's October 3, 2008, Order and Reasons, whether the Court has jurisdiction over any of the tort claims of putative class members that have not already been barred will hinge on whether each individual's claims fall outside the FTCA's discretionary function exception.  As outlined in the Court's ruling, this will necessarily require an individualized inquiry, thereby defeating the purpose of potentially managing this case as a class action.  *See* Order and Reasons at 42-43 [Dkt. No. 717].  Whether an individual's tort claim against the United States will be allowed to proceed or will be barred by the discretionary function exception will vary among all putative class members because each individual claimant must show that his or her claim is based on conduct that is not protected from suit by the exception.  Such a determination will be based on "different relevant facts that may or may not afford him/her such a claim."  *Id*. at 42 ("As for each plaintiff involved in this litigation, the evidence will undoubtedly differ, just as the individual claims will differ.").[11]  Pursuant to the Court's ruling, for each EHU resident, facts will vary as to whether FEMA had reason to believe that the particular EHU in question contained dangerous levels of formaldehyde and as to

---

[11] As described *supra* n.10, the United States plans to file a second jurisdictional motion to show that the FTCA's discretionary function exception bars all of these claims, because the United States has evidence that unambiguously shows that all of FEMA's testing and response decisions were made on the basis of policy considerations and were not based on the factors the Court considered to be outside the protections afforded by the discretionary function exception.

whether FEMA's response to that concern was susceptible to economic, political, social, or safety policy analysis.[12]  *Id.* at 44-46.

A review of the information contained in the FEMA disaster files for the Pujol, Huckabee, and Thomas families, three of the families who have instituted FTCA actions and commenced suit against the United States, confirm that the evidence relevant to the discretionary function inquiry directed by this Court's ruling will in fact differ from EHU resident to resident. For example, available evidence shows that the Pujol family resided in an EHU from approximately December 2005 to December 2006.  Ex. 1 at 117, 213, 236.  The Pujol family vacated the EHU in December 2006, because Mrs. Pujol's "landlords," her parents, wanted the EHU removed from their property, and because Mr. and Mrs. Pujol required medical equipment that was too large for the trailer.  *Id.* at 127, 135, 202, 209, 218; Ex. 3, Depo. Pujol at 67:16-22. Mrs. Pujol subsequently located an apartment that better suited her family's housing needs.  *Id.* at 135, 239.  FEMA thereafter provided rental assistance to pay for the apartment.  *Id.* at 245.  It was not until the spring and summer of 2007, after vacating the trailer, that the Pujols complained to FEMA regarding formaldehyde, in the context of seeking rental assistance.  *Id.* at 170-71, 227-28.

Similarly, the Huckabee family received a travel trailer in October 2005.  Ex. 6 at 50.  In January 2006, FEMA provided them with a mobile home.  *Id.* at 26-27, 50.  Between July and October 2006, the Huckabee family expressed an interest in purchasing the mobile home or

---

[12] That FEMA's determination of when and what action to take in response to individual complaints was a question of policy is supported by Plaintiffs' own toxicology experts, who opined that what action level to use and what action to take in response to formaldehyde concerns involves weighing and balancing various policy considerations.  *See*, *e.g.*, Ex. 17, Depo. Harry Milman at 76:9-24, 178:10-179:12, 189:7-14.

trailer from FEMA.  *Id.* at 61-63.  In May 2007, the Huckabee family complained to FEMA about formaldehyde and mold in the unit.  *Id.* at 51-52, 64-65.  In response, FEMA inspected the unit, provided instructions regarding mitigation and cleaning strategies, offered to move the Huckabees to a new mobile home in a commercial park (an offer they rejected), and, at the Huckabees' request, provided a different mobile home on the same property as the previous trailer and mobile home.  *Id.* at 52-54.  In the spring of 2008, the Huckabee family complained about formaldehyde in the replacement mobile home, and, shortly thereafter, FEMA moved them into a hotel and provided them with meal vouchers, meal deliveries, and assistance with finding an apartment.  *Id.* at 51-58, 76-80.

The facts relating to the Thomas family are also unique.  The Thomas family occupied an EHU from approximately February 2006 to September 2007.  Ex. 4 at 229-36.  FEMA records show that the Thomas family did not make any complaints to FEMA about odor or formaldehyde.  *Id.* at 223-237.  Rather, the records show that in the spring or summer of 2007, the Thomas family attempted to purchase their EHU, and that they moved out of the EHU in September 2007, shortly after FEMA informed them that the unit was not for sale.  *Id.* at 196, 234, 237.[13]

_____

[13] In examining the claims of the proposed class representatives (although Mrs. Pujol is the only class representative who has sought to shift jurisdiction over her claims to the Court by individually commencing an action), the available evidence demonstrates that they will also not be able to make the kind of individualized showing necessary to demonstrate that the discretionary function exception does not apply.  Many of the class representatives never made any complaints to FEMA about odors or formaldehyde in their EHUs.  *See* Ex. 18, Depo. Leroy Hargrove at 27:11-25; Ex. 19, Depo. Eric Smith at 115:19-22; Ex. 20, Depo. Stephen Alfonso at 114:3-6; Ex. 21, Depo. Sylvia Keyes at 65:16-18; Ex. 22, Depo. Corey Davis at 152:7-10, 153:21-25; Ex. 23, Depo. Damian Hargrove at 123:9-14.  Moreover, some of those that did complain to FEMA about formaldehyde were offered alternative housing in response to their concerns, although such offers were declined because these persons chose to remain in their

As shown above, the facts for each putative class member will differ regarding whether they made any complaints to FEMA and how FEMA responded to any concerns regarding formaldehyde.  As a result, the individualized facts surrounding each putative class member may need to be examined to determine whether his or her potential claims fall within the jurisdictional bounds of the FTCA's limited waiver of sovereign immunity.  Class certification is inappropriate in such a case where the existence of jurisdiction (whether the discretionary function exception applies) may have to be determined on a person-by-person basis, based on a showing of individualized facts.  Given the Court's October 3, 2008, ruling, and a review of the evidence related to these three families, it is clear that the evidence regarding application of the discretionary function exception will vary between individuals, requiring the Court to make a person-by-person determination of whether it has subject matter jurisdiction under the FTCA.

**B.     Putative Class Claimants Must Demonstrate That Their Administrative Claims Were Filed Within Two Years Of When The Claims Accrued Under the FTCA.**

In assessing whether the Court has jurisdiction over the claims of the putative class members, the Court must satisfy itself that all putative class members have complied with the FTCA's two year statute of limitations.  This will likely require the kind of individualized and fact specific inquiry that renders class certification inappropriate.  The FTCA provides that a "tort claim . . . shall be forever barred unless it is presented in writing to the appropriate Federal

---

current EHUs.  *See* Ex. 24, Douglas Hill IA File Excerpt at FEMA76-77; Ex. 25, Rayfield Robinson IA File Excerpt at FEMA29-114-115 ("app[licant] called in to req[uest] rental resources because of formaldehyde issue. . . . App[licant] returned . . . call very upset stating that he never had any Formaldehyde issues and he doesn't understand why FEMA keeps calling. App[licant] stated he only called the first time because he saw the number on the news and was told to call.").

29

agency within two years after such claim accrues . . . . "  28 U.S.C. §2401(b).  If a claimant fails to submit the administrative tort claim to the Federal agency within the allotted time, then the district court lacks subject matter jurisdiction over the claim.  *See Ramming,* 281 F.3d at 165 (FTCA statute of limitations for filing an administrative claim is jurisdictional).  A claim "accrues" under the FTCA when the claimant first knew or reasonably should have known "the existence and the cause of his injury."  *See United States v. Kubrick*, 444 U.S. 111, 113, 122-24 (1979); *Johnson v. United States*, 460 F.3d 616, 621-622 (5th Cir. 2006) (a claim accrues under the FTCA when the plaintiff knew of the injury alleged and reasonably had enough information to investigate its possible cause).

In this case, determining these jurisdictional facts may require a person-by-person analysis.  The facts relevant to when a putative class member knew or should have known the existence and cause of the alleged injury will vary from person to person, as will the facts surrounding if and when the person submitted an administrative claim to FEMA.  To meet their burden of establishing that the Court has subject matter jurisdiction, Plaintiffs must show that the claims of each putative class claimant accrued less than two years prior to their submission of an administrative claim to FEMA.  This kind of individualized jurisdictional inquiry defeats the purpose of managing a case as a class action.  Unless, and until, all putative class members have demonstrated that they have satisfied the FTCA's two year statute of limitations, the Court does not have jurisdiction to adjudicate their tort claims.

**C.     Putative Class Claimants Must Demonstrate That They Have Filed Legally Sufficient Administrative Claims.**

Similarly, whether the Court has jurisdiction over the claims of putative class members depends on whether each individual putative class member has filed a legally sufficient administrative claim with FEMA.  The Court must be satisfied that this jurisdictional prerequisite under the FTCA has been met before it can proceed to adjudicate the merits of any such claims.  Because whether this jurisdictional prerequisite has been satisfied will likely rest on an individualized inquiry, class certification is simply inappropriate in this context.  To meet the FTCA's legally sufficient administrative claim requirement, a claimant must show that the claim submitted to FEMA contained: (1) a description sufficient to enable the agency to initiate and investigate the claim; (2) a "sum certain" that the claimant seeks to recover; and (3) if the claim is submitted by a representative on behalf of another, the submitting party must be the legal representative of the claimant, or be authorized to file and administratively resolve the claim on the claimant's behalf.[14]  As Judge Berrigan noted in her dismissal (for lack of subject matter jurisdiction) of FTCA claims arising out of the government's response to Hurricane Katrina: "The filing of a deficient administrative claim is tantamount to no filing at all."  *In Re: Ingram Barge Co.*, 435 F. Supp. 2d 524, 527 n.3 (E.D. La.  2006) (Berrigan, J.) (internal citation omitted).  Absent a showing that all putative class claimants have satisfied this requirement, the

---

[14] *See* 28 C.F.R. §§ 14.2, 14.3; *Cook v. United States*, 978 F.2d 164, 166 (5th Cir. 1992) (dismissal of FTCA claims for failure to provide sufficient information to Federal agency); *Montoya v. United States*, 841 F.2d 102, 104-05 (5th Cir. 1988) (claimant must identify a sum certain); *Transco Leasing Corp. v. United States*, 896 F.2d 1435, 1443 (5th Cir. 1990) (claim must be filed by claimant or authorized legal representative); *Green v. United States*, 2003 WL 21500553 at * 5 (E.D. La., June 4, 2003) (Duval, J.) (each claimant must file an individual claim and satisfy the administrative jurisdictional prerequisites unless the person is the legal representative or is legally authorized to file on behalf of the claimant).

Court lacks jurisdiction to adjudicate their substantive claims, whether it is in the context of a class action, or otherwise.

**III.     Plaintiffs Cannot Meet Their Burden Of Showing That Their Proposed Class Against The United States Satisfies The Requirements of Fed. R. Civ. P. 23.**

**A.     Plaintiffs Cannot Satisfy The Numerosity Requirement of Fed. R. Civ. P. 23 (a)(1).**

Plaintiffs allege, without evidence, that numerosity is established in this case because the putative class members consist of "thousands" of "geographically dispersed" individuals.  PSC Memo. at 12.  However, for the following reasons, Plaintiffs' assertion is incorrect as to the United States.  Under Rule 23(a)(1), Plaintiffs must demonstrate that their proposed class against the United States "is so numerous that joinder of all members is impracticable."  *See also* HERBERT NEWBERG, ET AL., NEWBERG ON CLASS ACTIONS § 1:1 at 2 (Fourth ed. 2002) (a class action is proper where the relevant question "is of common or general interest to persons so numerous as to make it impracticable to bring them all before the court.") (internal citation omitted).  As previously described, the majority of putative class claimants against the United States have not exhausted the administrative process, thereby preventing the court from exercising jurisdiction over their potential tort claims.  Examining only those nineteen persons whose claims against the United States may be subject to the Court's jurisdiction at this time (those persons who have already exercised their option to individually file an FTCA action against the United States), it cannot be said that their joinder is "impracticable," rather it has already been done.

Even assuming that the Court has jurisdiction over some claims against the United States, Plaintiffs have failed to show how many putative class members have exhausted their

administrative remedies and filed legally sufficient administrative claims that would not

otherwise be barred by the FTCA's discretionary function exception and statute of limitations.[15]

*See Nat'l Assoc. of Gov't Emp'ees v. City Pub. Serv. Bd.*, 40 F.3d 698, 715-16 (5th Cir. 1994)

(denial of class certification was proper where only eleven persons were found to have brought

claims under the relevant statute within the applicable statute of limitations).  There is no

meaningful way at this juncture to ascertain how many people would be considered in this

selection of persons (those with claims that do not have obvious jurisdictional flaws).  In

addition, whether the Court has jurisdiction over the claims of putative class members may hinge

on an individualized factual inquiry under the FTCA; a class cannot be certified in this manner

because the bounds on the Court's jurisdiction would create a class of unknown membership that

is not objectively definable.  *See Adashunas v. Negley*, 626 F.2d 600, 603-04 (7th Cir. 1980).

> **B.     Plaintiffs Cannot Show That Issues Common To Putative Class
> Members Predominate Over Individual Issues And That A Class
> Action Is The Superior Method To Adjudicate This Matter.**

Plaintiffs have failed to meet their burden to show that class issues predominate and that

a class action is the superior method to adjudicate all claims against the United States.  *See* Fed.

R. Civ. P. 23(b)(3).[16]  As mentioned above, given that the Court lacks jurisdiction over the

---

[15] "To satisfy the numerosity prong, 'a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members.'"  *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000) (*quoting Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981)); *Fleming v. Travenol Labs., Inc.*, 707 F.2d 829, 833 (5th Cir. 1983); *Lienhart v. Dryvit Sys. Inc.*, 255 F.3d 138, 149 (4th Cir. 2001) (same).

[16] As part of the superiority inquiry, the Court should consider the likely difficulties in managing a class action, including the "whole range of practical problems that may render the class action format inappropriate" for the case.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974); Fed. R. Civ. P. 23(b)(3)(D).  Class certification is not a superior method of adjudication when individualized inquiries predominate over common questions of law or fact.  *See, e.g.,*

claims of a majority of putative class members and that threshold jurisdictional inquiries must be conducted to determine whether the remaining persons have claims that fall within the FTCA's limited waiver of sovereign immunity, a class action is not a feasible method to adjudicate tort claims against the United States.[17]  In considering the claims of putative class members against the United States, individual issues predominate over any common questions of law or fact.  In addition, management of Plaintiffs' claims against the United States through a class action is inferior given that the FTCA's framework specifically contravenes such a management structure under these circumstances.  Beyond any threshold jurisdictional issues, a determination as to the merits of claims in this litigation will hinge on a variety of individualized factual and expert showings.[18]

Furthermore, in examining those class members whose claims against the United States are, at this time, potentially subject to the jurisdiction of this Court (those persons who have exhausted their administrative remedies and chosen to individually file suit against the United

_Cole v. General Motors Corp._, 484 F.3d 717, 727, 730 (5th Cir. 2007) (considering individualized determinations necessary to evaluate plaintiffs' claims in finding class action not superior under Rule 23(b)(3)).

[17] In addition, the United States may be entitled to raise certain defenses (_e.g._, set-off for the payment of non-collateral sources) that necessarily require an individual inquiry into the factual particulars of each putative class member.  To date, the United States has paid significant sums of money to various claimants in this litigation, in forms such as rental and home repair assistance.  _See_, _e.g._, Ex. 26, Depo. Juanita Bridges at 132:20-133:6 (claimant has received $112,000 in assistance from the Government).

[18] Plaintiffs incorrectly assert that a class action is superior in this case because "thousands of claims arise from a catastrophic event."  PSC Memo. at 39.  Contrary to this assertion, any claims that have survived the Court's ruling on the discretionary function exception will likely hinge on unique individual fact patterns.  Claims against the United States do not arise from any single event, but rather from thousands of individually unique factual events regarding the issuance and treatment of thousands of different EHUs over the course of multiple years.  _See_ Order and Reasons at 42-46 [Dkt. No. 717].

States in district court), all such persons are already parties to this MDL.  Accordingly, any

common issues among this limited pool of persons can be effectively adjudicated through mass

joinder.

**IV.    The Court Should Reject Plaintiffs' Request For Fed. R. Civ. P. 23 Certification Of Subclasses Against The United States.**

Plaintiffs request that the Court certify a subclass against the United States for economic

loss, and appear to urge that the Court to adopt a "liability" subclass to address when FEMA:

(1) "knew or should have known . . . that [EHUs] . . . produced excessive formaldehyde

emissions, which posed a health risk to plaintiffs"; (2) should have taken action to determine if

all EHUs "purchased and provided to the plaintiffs were habitable, functional, and suitable" for

occupancy; and (3) should have "ceased and desisted in furnishing" EHUs and/or issued health

warnings to families occupying units.  PSC Memo at 20.  In addition to the various reasons noted

above, jurisdictional and otherwise, and the reasons addressed by other defendants, there are

specific reasons why the Court should not certify these defined subclasses against the United

States.

**A.    The Court Should Reject Plaintiffs' Request For Certification Of An Economic Loss Subclass Against The United States.**

As previously noted, the FTCA only waives liability for

> [C]ivil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission . . . of the government.

28 U.S.C. §1346(b).  Under the FTCA, the law of the state where the alleged act or omission

occurred is applied to determine whether a plaintiff has set forth a cause of action in negligence,

and how damages for loss of property or personal injury should be measured.  28 U.S.C.

§§1346(b), 2674.  As to Mrs. Pujol, the lone proposed class representative that has filed suit against the United States, the alleged negligent acts on the part of the United States appear to have occurred in Louisiana.  *See* AMC ¶7(a) [Dkt. 109]; Ex. 1 at 117, 213, 236.  Accordingly, if the Court reaches the merits of her claim, it will have to look to Louisiana tort law to measure the damages that Mrs. Pujol may recover.  *See Guillory v. United States*, 699 F.2d 781, 784 (5th Cir. 1983); *Southern Pacific Transp. Co. v. United States*, 471 F. Supp. 1186, 1189 (E.D. Cal. 1979).[19]

In this case, to the extent that any putative class members has suffered a recoverable personal injury, the Court will need to determine on a person-by-person basis whether the putative class member suffered any recoverable economic loss, such as lost income.  *See generally Jaques v. Moses*, 737 So.2d 64, 69 (La. App. 1999) (to show lost income, a "plaintiff must prove by a preponderance of the evidence that he suffered a loss of earning capacity.").  The need for this kind of individualized analysis strongly weighs against the utility of certifying this type of subclass against the United States.  Similarly, to recover medical expenses, each claimant must present individual evidence of both past medical expenses, and, as to any award of future medical expenses, and offer medical testimony regarding the "projected specific expenses" that the claimant will incur.  *Smith v. Louisiana Farm Bureau Cas. Ins. Co.,* 603 So.2d 199, 204 (La. App. 1992).  *See also Pitts v. Bailes*, 551 So.2d 1363, 1377 (La. App. 1989).

The determination of any economic loss claims based on damage to property will also

---

[19]  The FTCA claims of the Thomas family also are governed by applicable Louisiana tort law.  *See* Ex. 4 at 234.  In contrast, the Huckabee family's FTCA claims are governed by applicable Mississippi tort law.  *See* Ex. 6 at 51.

have to be resolved on a person-by-person basis.[20]  This reality strongly counsels against the

certification of an economic loss subclass against the United States.  In addition, the

determination of such a subclass invokes additional jurisdictional concerns that render the sub-

class unascertainable without a jurisdictional inquiry, which may rest on an individualized

examination.  The Court must assess whether all putative class members made claims for

property damage when they filed their administrative claims with FEMA.  Otherwise, there is no

jurisdiction for the Court to consider property damage claims as to these putative class claimants.

Based on a review of the administrative tort claims filed by the Pujol, Thomas, and Huckabee

families, it is clear that the Court would lack subject matter jurisdiction over any property

damage claims as to these persons because they specifically chose only to make an

administrative claim for personal injury, not property damage.  Exs. 2, 5, 7.  *See Kokaras v.*

*United States*, 980 F.2d 20, 22-23 (1st Cir. 1992) (holding that where claimant only

administratively asserted claims for property damage, court lacked jurisdiction over any personal

injury claims).

Further, even if some members of the putative subclass have submitted administrative

claims asserting property damage, a person cannot recover for property damage unless that

person can demonstrate that he or she possessed a proprietary interest in the property at issue –

---

[20] To the extent that Plaintiffs base their economic loss subclass on an argument that putative class members were deprived of a Constitutional property interest, it is not clear that such an argument is properly before the Court.  The AMC does not contain any such claims alleging a Constitutional violation.  In addition, such claims are clearly without subject matter jurisdiction under the FTCA.  *See FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994).

in this case, the person's EHU.[21]  *See Harp v. Pine Bluff Sand and Gravel Co.*, 750 So.2d 226, 229-230 (La. App. 1999) (ruling that claimant failed to show the requisite amount of proprietary interest in the damaged property to be entitled to recover economic damages); *see also Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1023 (5th Cir. 1985) (economic loss resulting from physical damage to property in which claimant has no proprietary interest is "a pragmatic limitation imposed by the Court upon the tort doctrine of foreseeability").

Although it is unclear whether such a claim is properly before the Court at this time, Plaintiffs assert in their memorandum that putative class members are entitled to recover economic loss damages because in *McWaters v. FEMA*, 436 F. Supp. 2d 802 (E.D. La. 2006) (Duval, J.), the court held that a disaster victim who qualifies for Individual Assistance has a due process right to housing assistance.  *See* PSC Memo. at 37-38.  As an initial matter, Plaintiffs' reliance on *McWaters* is misplaced.  The Fifth Circuit recently held that the Stafford Act, and its accompanying regulations governing the Individual Assistance housing program, even for persons who qualify for housing assistance, does not in and of itself create an entitlement to housing assistance.  *See Ridgely v. FEMA*, 512 F.3d 727, 634-45 (5th Cir. 2008).  To the extent Plaintiffs are asserting Constitutional claims, such a claims are without subject matter jurisdiction under the FTCA.  To the extent Plaintiffs claim that *McWaters* supports the notion that putative class members had a proprietary interest in their EHUs, it is clear that disaster victims did not possess any kind of leasehold-type interest in their EHUs because they did not

---

[21] Although not before the Court at this time, it is the United States' understanding, that at least some of the named plaintiffs in *Aldridge v. Gulf Stream*, No. 07-9228 [Dkt. No. 758], may have submitted administrative claims asserting property damage.  The United States has not yet been named as a defendant in this action, however, Plaintiffs have requested permission to amend the Complaint, in part, to add the United States as a defendant.

pay any rent (there was no consideration and no contract).  At best, under the FTCA's private analogous liability provision, the only potential proprietary interest the subclass could claim to possess or have possessed in the EHUs is the interest an occupant may have in using an emergency shelter that is owned and voluntarily provided by a private good Samaritan.  *See generally Ridgely*, 512 F.3d at 736 (holding that neither the Stafford Act, nor applicable regulations, compel FEMA to provide assistance, even upon a disaster victim's showing of eligibility).

Finally, even if the Court were to find that EHU occupants possessed some proprietary interest in their EHUs, under applicable state tort law, economic loss for damage to any such interest will likely invoke an individualized inquiry that is not suitable for class determination. For example, under Louisiana tort law, to recover economic damages for loss of use, a claimant must show that the leasehold interest was damaged, *i.e.*, the claimant's actual use of the property was impaired.  *See Skansi v. Signal Petroleum*, 375 So.2d 965, 967 (La. App. 1979); *Landry v. Pierre Part Natural Gas Co., Inc.*, 413 So.2d 621, 622-23 (La. App. 1982).

Certification of any economic loss subclass against the United States that depends on property damage is inappropriate because such claims cannot be resolved on a class-wide basis. If such claims are cognizable under the FTCA, and the Court possesses subject matter jurisdiction, resolving these claims will require the Court to make individualized determinations as to whether specific class members: (1) were entitled to housing assistance; (2) received EHUs; (3) had their use of the EHUs impaired; (4) and incurred economic damages as a result of their impaired use of the EHU.  Given the individualized nature of such claims, certification of such a subclass is not feasible.  *See generally Boughton v. Cotter Corp.*, 65 F.3d 823, 826-27 (10th Cir.

1995) (mass environmental tort cases are not well-suited for class action treatment because of the multitude of individual issues involved).

> **B.**      **The Court Should Reject Plaintiffs' Request For Certification Of Subclasses Against The United States Involving Various Potential Common Liability Related Fact Issues.**

The additional subclasses sought against the United States should not be certified because they relate to factual issues surrounding liability.  As discussed above, many of these matters have already been resolved through the Court's October 3, 2008, ruling.  To the extent that a factual question still exists regarding whether the claims of putative class members fall outside the discretionary function exception, the Court will likely have to undertake an individualized factual inquiry to assess whether the government activity at issue was susceptible to policy considerations.  *See* Order and Reasons at 44-46 [Dkt. No. 717].  This fact heavily weighs against management of this case as a class action.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997) (where the essential questions of fact presented in a case are individual in nature and can be resolved only on a case-by-case basis, the matter is not appropriate for class treatment); *Graybeal v. American Savings & Loan Ass'n*, 59 F.R.D. 7, 15 (D.D.C. 1973) (same).

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification should be denied.

Dated:  November 14, 2008

40

Respectfully Submitted,

GREGORY G. KATSAS
Assistant Attorney General

C. FREDERICK BECKNER III
Deputy Assistant Attorney General

J. PATRICK GLYNN
Director, Torts Branch
Civil Division

HENRY T. MILLER
ADAM BAIN
Senior Trial Counsel

ADAM M. DINNELL
JONATHAN R. WALDRON
Trial Attorneys


*//S// Michelle G. Boyle*
MICHELLE G. BOYLE (VA Bar No. 73710)
Trial Attorney, Torts Branch
Civil Division
United States Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, DC 20004
Phone:  (202) 616-4447
E-mail: Michelle.Boyle@usdoj.gov

Attorneys for Defendant
United States of America

OF COUNSEL:

JORDAN FRIED
Associate Chief Counsel
JANICE WILLIAM-JONES
Trial Attorney
FEMA/DHS

41

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2008, the foregoing Memorandum and accompanying Exhibits were filed via the U.S. District Court's CM/ECF electronic filing system, which will send a notice of electronic filing to Liaison Counsel.

Dated:  November 14, 2008

//S// *Michelle G. Boyle*

MICHELLE G. BOYLE (VA Bar No. 73710)