UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-4"
JUDGE ENGELHARDT
MAG. JUDGE CHASEZ

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEFENDANT UNITED STATES OF AMERICA'S EXHIBITS
IN SUPPORT OF ITS MEMORANDUM IN RESPONSE TO "PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION"
[Dkt. No. 764]

U.S. EXHIBIT NO. 16

# Transcript of the Testimony of
# Videotaped Deposition of Paul Hewett, Ph.D., CIH

**Date taken: October 3, 2008**

**In Re: FEMA Trailer Formaldehyde Products Liability Litigation**

**\*\*Note\*\***
All **electronic deposition & exhibit files**
are available at **www.psrdocs.com**.
Please call or e-mail reporters@psrdocs.com if you need a
**Username** and **Password**.

# Professional Shorthand Reporters, Inc.
Phone:   504-529-5255
Fax:   504-529-5257
Email:   reporters@psrdocs.com
Internet:   www.psrdocs.com

## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER           MDL NO. 1873
FORMALDEHYDE PRODUCTS         SECTION N(4)
LIABILITY LITIGATION          JUDGE ENGELHARDT

Videotaped deposition of PAUL HEWETT, Ph.D, CIH, Exposure Assessment Solutions, Inc., 1270 Kings Road, Morgantown, West Virginia 26508, taken at Lambert and Nelson, PLC, 701 Magazine Street, New Orleans, Louisiana 70130, on Friday, the 3rd of October, 2008.

REPORTED BY:
    GRETCHEN ALEXANDER, CCR, RPR
    PROFESSIONAL SHORTHAND REPORTERS, INC.
    (504) 529-5255

VIDEOGRAPHER:
    BRIAN SOILEAU
    PROFESSIONAL SHORTHAND REPORTERS
    (504) 529-5255

## Page 2

APPEARANCES:

LAMBERT & NELSON, PLC
(By: Hugh Palmer Lambert, Esq.)
701 Magazine Street
New Orleans, Louisiana 70130

    ATTORNEYS FOR PLAINTIFFS

GAINSBURGH, BENJAMIN, DAVID,
    MEUNIER & WARSHAUER, LLC
    (By: Justin I. Woods, Esq.)
    2800 Energy Centre
    1100 Poydras Street
    New Orleans, Louisiana 70163-2800

    ATTORNEYS FOR PLAINTIFFS

JONES, WALKER, WAECHTER, POITEVENT,
    CARRERE & DENEGRE, LLP
    (By: James C. Percy, Esq.)
    8555 United Plaza Boulevard
    Baton Rouge, Louisiana 70809-7000

    ATTORNEYS FOR DEFENDANTS, PILGRIM,
    KEYSTONE, MONACO, R-VISION,
    THOR CALIFORNIA, KZRV, DS/CROSSROADS
    AND DUTCHMEN

U.S. DEPARTMENT OF JUSTICE
Civil Division
(By: Adam M. Dinnell, Esq. and
    Michelle G. Boyle, Esq.)
Ben Franklin Station
P.O. Box 340
Washington, D.C. 20044

    ATTORNEYS FOR DEFENDANTS,
    UNITED STATES AND FEMA

## Page 3

APPEARANCES CONTINUED:
SCANDURRO & LAYRISSON, LLC
(By: Dewey M. Scandurro, Esq.)
607 St. Charles Avenue
New Orleans, Louisiana 70130

    ATTORNEYS FOR DEFENDANT,
    GULF STREAM COACH, INC.

HAILEY, MCNAMARA, HALL, LARMANN
    & PAPALE, LLP
    (By: David C. Bach, Esq.)
    (Appeared telephonically)
    One Galleria Boulevard
    Suite 1400
    Metairie, Louisiana 70011
    ATTORNEYS FOR DEFENDANT,
    AMERICAN HOMESTAR CORPORATION

NELSON MULLINS RILEY & SCARBOROUGH, LLP
(By: Taylor Tapley Daly, Esq.)
(Appeared telephonically)
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, Georgia 30363

    ATTORNEYS FOR DEFENDANT, FLEETWOOD
    ENTERPRISES, INC., FLEETWOOD CANADA
    LTD. AND FLEETWOOD HOMES OF
    NORTH CAROLINA, INC.

GIEGER, LABORDE & LAPEROUSE, LLC
(By: Jason D. Bone, Esq.)
One Shell Square, 48th Floor
701 Poydras Street.
New Orleans, Louisiana 70139-4800

    ATTORNEYS FOR DEFENDANTS,
    FOREST RIVER, INC.

## Page 4

APPEARANCES CONTINUED:
DEUTSCH, KERRIGAN & STILES, L.L.P.
(By: Joshua G. Keller, Esq.)
(Appeared telephonically)
755 Magazine Street
New Orleans, Louisiana 70130
    ATTORNEYS FOR DEFENDANT, RIVER BIRCH
    AND DESTINY INDUSTRIES, INC.

WILLINGHAM, FULTZ & COUGILL, LLP
(By: Thomas L. Cougill, Esq.)
(Appeared telephonically)
808 Travis Street
Suite 1608
Houston, Texas 77002

    ATTORNEYS FOR DEFENDANT,
    JAYCO AND STARCRAFT

GARRISON, YOUNT, FORTE &
    MULCAHY, LLC
    (By: Randall C. Mulcahy, Esq.)
    (Appeared telephonically)
    909 Poydras Street
    Suite 1800
    New Orleans, Louisiana 70112

    ATTORNEYS FOR DEFENDANTS, RECREATION
    BY DESIGN, LLC, TL INDUSTRIES, INC.,
    AND FRONTIER HOMES, INC.

DAIGLE, JAMISON & RAYBURN
(By: Walter K. Jamison, III, Esq.)
(Appeared telephonically)
303 West Vermilion Street
Suite 210
Lafayette, Louisiana 70502

    ATTORNEYS FOR DEFENDANT, SILVER CREEK

```
 1    APPEARANCES CONTINUED:
 2
 3    VOORHIES & LABBÉ
         (By: Lamont P. Domingue, Esq.)
 4       (Appeared telephonically)
         700 St. John Street
 5       Lafayette, Louisiana 70502
 6          ATTORNEYS FOR DEFENDANTS, CAVALIER
            HOME, WAVERLEE HOMES, REDMAN HOMES,
 7          DUTCH HOUSING, PATRIOT HOMES AND
            RIVER BIRCH
```
Page 5

```
 1              * * *
 2         EXAMINATION INDEX
 3                         Page
 4    EXAMINATION BY MR. PERCY: ............9
      EXAMINATION BY MS. BOYLE: ..........103
 5    EXAMINATION BY MR. SCANDURRO: .......141
      EXAMINATION BY MR. LAMBERT: .........157
 6
 7              * * *
 8         INDEX OF EXHIBITS
 9                         Page
10    Exhibit No. 1 ......................119
11    Dr. Hewett's report
```
Page 6

```
 1              S T I P U L A T I O N
 2
 3         It is stipulated and agreed by and
      among counsel for the parties hereto that the
 4    deposition of the aforementioned witness is
      hereby being taken for all purposes allowed
 5    under the Federal Rules of Civil Procedure,
      in accordance with law, pursuant to notice;
 6         That the formalities of reading
      and signing are specifically not waived;
 7         That the formalities of sealing,
      certification and filing are specifically
 8    waived;
           That all objections, save those as
 9    to the form of the question and the
      responsiveness of the answer, are hereby
10    reserved until such time as this deposition,
      or any part thereof, may be used or sought
11    to be used in evidence.
                * * * *
12         GRETCHEN ALEXANDER, Certified Court
      Reporter in and for the State of Louisiana,
13    officiated in administering the oath to the
      witness.
```
Page 7

```
              * * * *
      THE VIDEOGRAPHER:
         Today is the 3rd day of October,
      2008. The time is approximately 9:27. This
      is the videotaped deposition of Paul Hewett,
      Ph.D., taken at the offices of Lambert and
      Nelson located at 701 Magazine Street, New
      Orleans, Louisiana, for the case entitled
      FEMA Trailer Formaldehyde Products Liability
      Litigation in the United States District
      Court, Eastern District of Louisiana, MDL
      No. 1873.
         Will counsel please identify
      themselves and which party they represent.
      MR. PERCY:
         Jim Percy representing numerous of
      the manufacturing defendants, and I'll
      provide those to the court reporter.
      MR. BONE:
         Jason Bone for Forest River.
      MR. SCANDURRO:
         Dewey Scandurro for Gulf Stream
      Coach.
      MR. DINNELL:
         Adam Dinnell for defendant United
```
Page 8

1  the sand at the OSHA limit of .75 parts per
2  million, it appears that there would only be
3  two of the manufactures -- I'm sorry -- none
4  of the manufacturers would exceed .75 parts
5  per million as a mean value; is that right?
6      A   Yes, that's probably correct.
7  I'll take your word at it, but it's an
8  absolutely incorrect comparison.
9      Q   I'm just asking you about your
10 data. Don't take my word at it. Look at
11 your data --
12     A   No, no, I'm going to tell you why
13 the comparison is incorrect. The lines in
14 the sand are defined differently, and that's
15 the question I brought up earlier. How is
16 that .008 or .03 defined? Is it the average
17 across some broad span of time or are these
18 basically ceiling limits for each day?
19         Now, the OSHA limit is a limit for
20 each day. Therefore, it should be the 95th
21 or 99th percentile exposure, not the mean.
22 It's a fundamentally -- difference between a
23 longer-term limit, which we think these
24 ATSDR standards may be -- not confirmed, I
25 guess, because there's some uncertainty

Page 149

1  here -- and occupational limits, which tend
2  to be almost invariably for OSHA, for MSHA,
3  for consensus organizations, TLV committee,
4  ACGIH, AIHA, NIOSH, they tend to be limits
5  on each day.
6         Therefore, the relevant statistic
7  to compare to those limits is an upper
8  percentile such as the 95th or 99th
9  percentile. You can go to the AIHA
10 monograph on exposure assessment. I rep --
11 do I -- yeah, Bullock and Ignacio. That
12 will tell you about the proper statistical
13 interpretation of occupational limits.
14         Okay. Now, let me back up then.
15 If you're going to take a single-shift
16 limit, which these occupational limits are,
17 and try to convert that into a long-term
18 average limit, then you're going to have to
19 take a fraction of it. And the
20 recommendations go from one-tenth to
21 one-quarter to one-third of the limit. So
22 it's not simply comparing these means to
23 .75. You'd compare these means to something
24 like one-tenth of .75, one-quarter of .75.
25     MR. PERCY:

Page 150

1         Move to strike everything after
2  "yes" as nonresponsive.
3      MR. SCANDURRO:
4         I join in the objection, and I'll
5  reask the question.
6      MR. LAMBERT:
7         I think it's quite responsive, but
8  that's just the way you guys are.
9  EXAMINATION BY MR. SCANDURRO:
10     Q   In light of the fact that the
11 witness stated he would not answer my
12 question but the one he wanted me to ask,
13 I'll reask the question that I want to ask,
14 which is: Of the means that you referred to
15 in Table 1 of your report, do any of the
16 means for any of the manufacturers exceed
17 the OSHA limit of .75 parts per million?
18     MR. LAMBERT:
19        Objection. The reason I object is
20 because I think he's explained that those
21 shouldn't be compared to each other.
22     MR. SCANDURRO:
23        I'd still like an answer to my
24 question.
25     MR. LAMBERT:

Page 151

1         Why don't you just use .75, then.
2  Just ask him if --
3      MR. SCANDURRO:
4         That's --
5      MR. LAMBERT:
6         -- .75 is higher or lower than
7  .08.
8  EXAMINATION BY MR. SCANDURRO:
9      Q   Do you understand my question?
10     A   Yeah. I mean --
11     Q   Could you answer it, please?
12     A   Is there any mean in that column
13 that exceeds .75, and you've expected -- I
14 see one that -- well, I don't see any. Do
15 any exceed it? I don't know. It doesn't
16 look like any do. But it's an
17 apples-and-oranges comparison. But in
18 answer to your question, none of the mean
19 values in that column exceed the OSHA
20 single-shift limit of .75.
21     Q   Okay. And with respect to the .4
22 goal or target set by HUD, it appears that
23 there is only one of those manufacturers
24 that exceeds .4 as a mean; is that correct?
25 I'm referring you to Hyline.

Page 152

38 (Pages 149 to 152)

```
 1      MR. LAMBERT:
 2         Objection.
 3      THE WITNESS:
 4         In that column it appears that
 5   there's only one mean that exceeds the
 6   numeric value of .4.
 7      EXAMINATION BY MR. SCANDURRO:
 8   Q    And that's for Hyline; is that
 9   right?
10   A    Yes.
11   Q    And Hyline is -- the sample size
12   was only two trailers --
13   A    That is correct.
14   Q    -- for Hyline, right?
15        That doesn't give you a 95 percent
16   confidence interval for Hyline trailers,
17   does it?
18   A    Well, we'd actually calculate that
19   interval.  It's actually on the next table.
20   So we go to Hyline, the next table, and
21   let's look at the log -- well, let's see.
22   We can't even -- we can't even use lognormal
23   statistics because you only have one
24   measurement.
25        But the confidence interval for
                                    Page 153
```

```
 1   Hyline -- and I think I actually point this
 2   out in the report, and maybe not for Hyline,
 3   but for another manufacturer -- is extremely
 4   wide because you only have the two
 5   measurements.  In other words, we have a
 6   point estimate.  Given the data that we
 7   have, that's our best estimate of the true
 8   mean.  But there's tremendous statistical
 9   uncertainty in that estimate, so you have
10   this wide confidence interval.
11        Now, if we have one more
12   measurement, then we can calculate
13   confidence intervals using the lognormal
14   distribution assumption, but my guess is
15   they're going to be extremely wide as well,
16   which was -- gets back to the purpose of the
17   sample size exercise to come up with sample
18   sizes that will provide reasonably
19   consistent accurate statistics with narrow
20   confidence intervals.
21   Q    And long story short, the answer
22   is that you don't have enough data on Hyline
23   to say whether that's an accurate
24   statistical average or mean?
25   A    I mean, based upon the data here,
                                    Page 154
```

```
 1   no, it does not look like I have enough
 2   data, nor have I claimed that I had enough
 3   data.
 4   Q    You also referred to the American
 5   Conference of Government Industrial
 6   Hygienists, that's ACGIH; is that correct?
 7   A    That's correct, yes.
 8   Q    And they have a ceiling limit of
 9   .03 parts per million --
10   A    Right.
11   Q    -- is that right?
12        Looking at your table that you
13   referred to, Table 1 on page 12 of your
14   report, it appears that in addition to
15   Hyline, which we've just referenced, there's
16   only one other manufacturer, Heartland,
17   whose mean exceeds the ACGIH limit of .3
18   parts per million; is that right?
19   A    There's only -- I'll take your
20   word for it.  There's only one or so that
21   exceed the numeric value of .3.  But I will
22   state that is an apples to -- not oranges,
23   but an apples-to-kumquat comparison.  But
24   indeed, you are correct.
25   Q    And again, with that particular
                                    Page 155
```

```
 1   manufacturer, there are also only two of
 2   their trailers; is that right?
 3   A    If you say so.
 4   Q    Look at your report.
 5   A    Okay.  Which manufacturer are we
 6   on?
 7   Q    We're referring to Heartland in
 8   Table 1.
 9   A    Okay.  Yes.  It's two.  That
10   number is two.
11   Q    You'd like to have more trailers
12   than that to get a reliable mean?
13   A    I would hope so.
14   Q    Do you know whether the HUD goal
15   or target of .4 parts per million would be
16   an apples-to-kumquats comparison?
17   A    The HUD recommendation?  I have no
18   idea what the basis of that is.
19   Q    If the HUD standard were designed
20   for permanent habitation manufactured
21   housing, that would be an apples-to-apples
22   comparison, would it not?
23   A    One would think it would be.
24   Q    Back to the ACGIH standard of .3
25   parts per million, you're a member, I see
                                    Page 156
```