UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-4"
JUDGE ENGELHARDT
MAG. JUDGE CHASEZ

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEFENDANT UNITED STATES OF AMERICA'S EXHIBITS
IN SUPPORT OF ITS MEMORANDUM IN RESPONSE TO "PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION"
[Dkt. No. 764]

U.S. EXHIBIT NO. 17

# Transcript of the Testimony of
# Videotaped Deposition of Harry A. Milman, Ph.D.

**Date taken: October 6, 2008**

**In Re: FEMA Trailer Formaldehyde Products Liability Litigation**

***\*\*Note\*\****
All **electronic deposition & exhibit files**
are available at **www.psrdocs.com**.
Please call or e-mail reporters@psrdocs.com if you need a
**Username** and **Password**.

# Professional Shorthand Reporters, Inc.
Phone:   504-529-5255
Fax:   504-529-5257
Email:   reporters@psrdocs.com
Internet:   www.psrdocs.com

Case 2:07-md-01873-KDE-MBN   Document 904-21   Filed 11/14/08   Page 3 of 7

In Re: FEMA Trailer Formaldehyde Products Liability Litigation                Videotaped Deposition of Harry A. Milman, Ph.D.

## Page 1

```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF LOUISIANA

IN RE:  FEMA TRAILER          MDL NO. 1873
FORMALDEHYDE PRODUCTS         SECTION "N"(4)
LIABILITY LITIGATION          JUDGE ENGELHARDT

                    * * *

        Videotaped Deposition of HARRY
A. MILMAN, Ph.D., 14317 Bauer Drive,
Rockville, Maryland 20853, taken at the
offices of Lambert & Nelson, 701 Magazine
Street, New Orleans, Louisiana 70130, on
Monday, the 6th day of October, 2008.

REPORTED BY:
       JAMES T. BRADLE, CCR
       PROFESSIONAL SHORTHAND REPORTERS
       (504)529-5255
VIDEOGRAPHER:
       MICHAEL BERGERON
       PROFESSIONAL SHORTHAND REPORTERS
       (504)529-5255
```

## Page 2

```
 1   APPEARANCES:
 2      MURRAY LAW FIRM
        (BY: STEPHEN B. MURRAY, ESQUIRE)
 3      SUITE 1100, POYDRAS CENTER
        650 POYDRAS STREET
 4      NEW ORLEANS, LOUISIANA 70130
 5          ATTORNEYS FOR THE PLAINTIFFS
 6      SCANDURRO & LAYRISSON, L.L.C.
        (BY: DEWEY M. SCANDURRO, ESQUIRE)
 7      607 ST. CHARLES AVENUE
        NEW ORLEANS, LOUISIANA 70130
 8
            ATTORNEYS FOR DEFENDANT,
 9          GULF STREAM COACH, INC.
10      U.S. DEPARTMENT OF JUSTICE
        (BY: HENRY MILLER, ESQUIRE)
11      CIVIL DIVISION
        1331 PENN AVENUE, N.W.
12      ROOM 8220-N WASHINGTON, D.C. 20004
13          ATTORNEYS FOR DEFENDANT, UNITED
            STATES OF AMERICA
14
        GIEGER, LABORDE & LAPEROUSE
15      (BY: JASON D. BONE, ESQUIRE)
        701 POYDRAS STREET
16      SUITE 4800
        NEW ORLEANS, LOUISIANA  70139
17
            ATTORNEYS FOR DEFENDANT, FOREST
18          RIVER
19      NELSON MULLINS
        (BY: RICHARD K. HINES, V, ESQUIRE)
20      201 17TH STREET NW, SUITE 1700
        ATLANTA, GEORGIA 30363
21
            ATTORNEYS FOR DEFENDANTS,
22          FLEETWOOD ENTERPRISES, INC.,
            FLEETWOOD CANADA, LTD. AND
23          FLEETWOOD HOMES OF NORTH
            CAROLINA, INC.
24
25
```

## Page 3

```
 1   APPEARANCES CONTINUED:
 2      GARRISON, YOUNT, LORMAND, FORTE &
        MULCAHY, L.L.C.
 3      (BY: KELLY M. MORTON, ESQUIRE -
        VIA TELEPHONE)
 4      909 POYDRAS STREET
        SUITE 1800
 5      NEW ORLEANS, LOUISIANA 70112
 6          ATTORNEYS FOR DEFENDANTS,
            RECREATION BY DESIGN, LLC, TL
 7          INDUSTRIES, INC., AND FRONTIER
            RV, INC.
 8
        HAILEY, McNAMARA, HALL, LARMANN
 9      & PAPALE, L.L.P.
        (BY: DAVID C. BACH, ESQ.)
10      10725 PERKINS ROAD, 2ND FLOOR
        BATON ROUGE, LOUISIANA 70810
11          ATTORNEYS FOR DEFENDANTS,
            AMERICAN HOMESTAR CORPORATION
12          AND OAK CREEK HOMES
13      FOWLER RODRIGUEZ VALDES-FAULI
        (BY: STEPHANIE D. SKINNER, ESQUIRE -
14      VIA TELEPHONE)
        400 POYDRAS STREET, 30TH FLOOR
15      NEW ORLEANS, LOUISIANA 70130
16          ATTORNEYS FOR DEFENDANTS,
            CMH MANUFACTURING, SOUTHERN
17          ENERGY HOMES, INC., PALM HARBOR
            MANUFACTURING, LP, PALM
18          HARBOR ALBERMARLE, AND GILES
            INDUSTRIES, INC.
19
        VOORHIES & LABBE
20      (BY: LAMONT P. DOMINGUE, ESQUIRE -
        VIA TELEPHONE)
21      700 ST. JOHN STREET
        P.O. BOX 3527
22      LAFAYETTE, LOUISIANA 70502-3527
23          ATTORNEYS FOR DEFENDANTS, CAVALIER
            HOME BUILDERS, WAVERLEE HOMES,
24          REDMAN HOMES, DUTCH HOUSING,
            PATRIOT HOMES AND RIVER BIRCH
25
```

## Page 4

```
 1   APPEARANCES CONTINUED:
 2      DEUTSCH, KERRIGAN & STILES
        (BY: SCOTT HEDLUND, ESQUIRE -
 3      VIA TELEPHONE)
        755 MAGAZINE STREET
 4      NEW ORLEANS, LOUISIANA 70130
 5          ATTORNEYS FOR DEFENDANTS,
            DESTINY INDUSTRIES, LLC
 6          AND RIVER BIRCH HOMES
 7      JONES, WALKER, WAECHTER, POITEVENT,
        CARRERE & DENEGRE, LLP
 8      (BY: MADELEINE FISCHER, ESQUIRE)
        PLACE ST. CHARLES
 9      201 ST. CHARLES AVENUE
        NEW ORLEANS, LOUISIANA 70170
10
            ATTORNEYS FOR DEFENDANTS, PILGRIM,
11          KEYSTONE, MONACO, R-VISION, THOR
            CALIFORNIA, KZRV, DS/CROSSROADS
12          AND DUTCHMEN
13
14              * * *
15          EXAMINATION INDEX
16                   Page
17   EXAMINATION BY MR. HINES .............8
     EXAMINATION BY MR. MILLER ...........153
18   EXAMINATION BY MR. HINES ............211
19
20
21
22
23
24
25
```

Case 2:07-md-01873-KDE-MBN   Document 904-21   Filed 11/14/08   Page 4 of 7

In Re: FEMA Trailer Formaldehyde Products Liability Litigation     Videotaped Deposition of Harry A. Milman, Ph.D.

### Page 5

INDEX OF EXHIBITS

| | Page |
|---|---|
| Exhibit No. 1 | 8 |
| Notice of Videotaped Deposition of Harry A. Milman | |
| Exhibit No. 2 | 9 |
| Report of Harry A. Milman, Ph.D., dated August 21, 2008 | |
| Exhibit No. 3 | 18 |
| Document entitled "A 26-week inhalation toxicity study with formaldehyde in the monkey, rat, and hamster" by G.M. Rusch, et al | |
| Exhibit No. 4 | 148 |
| To be provided by Dr. Milner at the time of reading and signing | |
| Exhibit No. 5 | 168 |
| Copy of Dr. Milman's notes in the FEMA case and various correspondence (MILMAN-000777 through 000796) | |
| Exhibit No. 6 | 196 |
| Toxicological Profile for Formaldehyde, Agency for Toxic Substances and Disease Registry, July 1999 (ATSDR-00001 through 000027 and ATSDR-0000216 through 0000221) | |

### Page 6

STIPULATION

It is stipulated and agreed by and between counsel for the parties hereto that the deposition of the aforementioned witness is hereby being taken for all purposes allowed under the Federal Rules of Civil Procedure, in accordance with law, pursuant to notice;

That the formalities of reading and signing are specifically not waived;

That the formalities of filing, sealing, and certification are specifically waived;

That all objections, save those as to the form of the question and the responsiveness of the answer, are hereby reserved until such time as this deposition, or any part thereof, may be used or sought to be used in evidence.

* * *

JAMES T. BRADLE, CCR, Certified Court Reporter, officiated in administering the oath to the witness.

### Page 7

THE VIDEOGRAPHER:

Today is the 6th day of October, 2008. The time is approximately 9:11 a.m. This is the videotaped deposition of Mr. Harry Milman taken at the offices of Lambert & Nelson located at 701 Magazine Street, New Orleans, Louisiana, for the case entitled "FEMA Trailer Formaldehyde Products Liability Litigation."

Would counsel please identify themselves and which party they represent.

MR. MURRAY:
Stephen Murray, Sr., plaintiffs.

MR. HINES:
Richard Hines for the defendant Fleetwood.

MS. FISCHER:
Madeline Fischer for Monaco Coach Corporation, R-Vision, Inc., Dutchmen Manufacturing, KZRV, L.P., Keystone RV Company, Thor California and DS Corporation doing business as Crossroads RV.

MR. BACH:
David Bach with Hailey McNamara for American Homestar Corporation and Oak

### Page 8

Creek Homes.

MR. BONE:
Jason Bone for Forest River.

MR. MILLER:
Henry Miller for the defendant, United States of America.

MR. SCANDURRO:
Dewey Scandurro for Gulf Stream Coach.

* * * *

HARRY A. MILMAN, Ph.D., after having been first duly sworn by the above-mentioned court reporter, did testify as follows:

EXAMINATION BY MR. HINES:

Q All right. This will be the deposition of Dr. Harry A. Milman, Ph.D., taken by the defendants pursuant to notice and pursuant to the Federal Rules of Civil Procedure.

A copy of the notice is attached to this deposition as Exhibit 1, and a copy of Dr. Milman's report, and I will get him to identify it, will then be attached as Exhibit 2.

Case 2:07-md-01873-KDE-MBN   Document 904-21   Filed 11/14/08   Page 5 of 7

In Re: FEMA Trailer Formaldehyde Products Liability Litigation          Videotaped Deposition of Harry A. Milman, Ph.D.

**Page 73**

1   A   I do not.
2   Q   All right. Were you even aware
3   that there was a level set by HUD for
4   manufactured housing?
5   MR. MURRAY:
6       Objection. Asked and answered.
7   THE WITNESS:
8       I don't recall whether I was
9   aware.
10  EXAMINATION BY MR. HINES:
11  Q   You don't recall whether you were
12  aware?
13  A   I don't recall whether I reviewed
14  HUD's standard level. If it wasn't in those
15  documents that I provided to you, then I was
16  not aware of that value.
17  Q   Did any of the lawyers -- And I
18  take it you have had conversations with
19  attorneys representing the plaintiffs in
20  this case, correct?
21  A   On occasion.
22  Q   Did any of those lawyers ever tell
23  you, "Dr. Milman, I want to tell you that
24  since 1985, there has been a HUD level for
25  indoor ambient exposure to formaldehyde" or

**Page 74**

1   words to that effect?
2   A   I don't recall such a
3   conversation.
4   Q   Don't you think it would be
5   important to know that there's an indoor
6   ambient level for formaldehyde set by HUD?
7   MR. MURRAY:
8       Objection, vague. If you
9   understand the question, you can respond to
10  it. Important in what sense?
11  THE WITNESS:
12      Correct, I'm not -- I don't
13  understand what you mean by "important."
14  EXAMINATION BY MR. HINES:
15  Q   Well, in 1990, among other things,
16  you were working for an agency of the
17  Federal government, you were looking at the
18  carcinogenicity of formaldehyde vis-a-vis
19  animal studies, and you came to a conclusion
20  that it was carcinogenic.
21      You never did tell anybody, did
22  you, that somebody should reduce the HUD
23  level from the target level of 400 parts per
24  million --
25  MR. MURRAY:

**Page 75**

1       Objection to the form of the
2   question.
3   EXAMINATION BY MR. HINES:
4   Q   -- per billion?
5   MR. MURRAY:
6       It assumes that he was aware of it
7   at that time, and it assumes that these
8   animals lived in her house.
9   MR. MILLER:
10      Let me interpose an objection to
11  the speaking objections. It's the third
12  time now that a speaking objection has been
13  made and the witness has at least twice
14  parroted the objection. I think we have a
15  standing order that "object to the form"
16  preserves the objection and no further
17  objection is necessary.
18  MR. BONE:
19      Or instructions to the witness.
20  MR. MURRAY:
21      The objection is noted.
22  MR. HINES:
23      Go back to my question, if you
24  would, and ask it.
25  (Whereupon, the court reporter read back the

**Page 76**

1   requested testimony as follows:
2   THE COURT REPORTER:
3       Question: "Well, in 1990, among
4   other things, you were working for an agency
5   of the Federal government, you were looking
6   at the carcinogenicity of formaldehyde
7   vis-a-vis animal studies, and you came to a
8   conclusion that it was carcinogenic.
9       "You never did tell anybody, did
10  you, that somebody should reduce the HUD
11  level from the target level of 400 parts per
12  billion?"
13  MR. MURRAY:
14      Objection, vague. You can
15  respond.
16  THE WITNESS:
17      I'm a biological scientist, and as
18  such, therefore, my -- And the question that
19  you're posing here is a policy statement by
20  the agency. As a biological scientist, my
21  job was to review the studies from a
22  biological standpoint and make certain
23  conclusions. Exposure was -- The issue of
24  exposure was not in my area of research.
25  EXAMINATION BY MR. HINES:

Case 2:07-md-01873-KDE-MBN   Document 904-21   Filed 11/14/08   Page 6 of 7

In Re: FEMA Trailer Formaldehyde Products Liability Litigation          Videotaped Deposition of Harry A. Milman, Ph.D.

**Page 177**

1  MR. HINES:
2      Henry, let me ask you, your
3  question, I think, asked 519 parts per
4  billion. Did you mean 590 parts?
5  EXAMINATION BY MR. MILLER:
6      Q   The same hypothetical, 590 parts
7  per billion?
8      A   I thought that's what you said.
9  Yes.
10     Q   That's what I thought I said.
11 It's the same answer, whatever the exposure
12 level is?
13     A   Right.
14     Q   If we put all of us here, there
15 are about 10 of us in this room, and they're
16 saying that this room has formaldehyde at
17 590 parts per billion --
18     A   Right.
19     Q   -- and some of us might have
20 symptoms, whatever, you would have to have a
21 doctor do an independent individual
22 differential diagnosis, right?
23     A   Yes.
24     Q   And that's not something a
25 toxicologist does?

**Page 178**

1      A   No.
2      Q   Now, you also indicated that
3  you're a biological scientist?
4      A   Yes.
5      Q   And what the discussion came to
6  was the setting of regulatory standards, and
7  that came up in that context. Do you
8  remember that?
9      A   Yes.
10     Q   And you stated, I believe, and I
11 don't want to misphrase you, so correct me,
12 but I think you stated that in determining
13 what is the appropriate regulatory action
14 levels, standards, that's a policy decision;
15 is that right?
16     A   Yes.
17     Q   Why do you say that?
18     A   Because in a regulatory setting,
19 science is just one of the factors that a
20 regulatory agency looks at.
21     Q   And, in fact, in setting a
22 standard or regulation, given your
23 experience with EPA and the Public Health
24 Service, you got to consider economic
25 factors, you have to consider social,

**Page 179**

1  political factors? It might close down a
2  business?
3      A   Correct.
4      Q   An entire industry if you adopt
5  too restrictive of a regulation, correct?
6      A   Yes.
7      Q   And, in fact, when there is no
8  regulation available, isn't it implicit or
9  intrinsic whenever the Government is trying
10 to respond in the absence of a regulation,
11 that it has to make that policy
12 determination?
13     A   Yes.
14     Q   And you know that because that's
15 essentially part of the program that you
16 were doing when you were at EPA, correct?
17     A   Correct.
18     Q   That would happen with
19 formaldehyde, any chemicals that you ever
20 worked with when you were setting
21 regulation, correct?
22     A   Yes, it is.
23     Q   Or a standard where you're going
24 to take action, correct?
25     A   Correct.

**Page 180**

1      Q   Now, when we were talking about
2  cancer, I think you gave this hierarchy, and
3  correct me if I'm wrong, that in determining
4  whether or not a chemical should be
5  classified as possible, potential or known
6  human carcinogen, the best and most
7  important evidence is the epidemiological
8  studies?
9      A   Yes.
10     Q   And you are not an epidemiologist?
11     A   No.
12     Q   You're not an expert in
13 epidemiology?
14     A   No.
15     Q   It's not something you did for a
16 living during your 30 years with the
17 Government?
18     A   No.
19     Q   It's not something you have done
20 for the 10 years since you have been in
21 private practice?
22     A   No.
23     Q   And, in fact, what you know about
24 epidemiology as it relates to formaldehyde
25 are the documents and the literature search

45 (Pages 177 to 180)

Case 2:07-md-01873-KDE-MBN   Document 904-21   Filed 11/14/08   Page 7 of 7

In Re: FEMA Trailer Formaldehyde Products Liability Litigation					Videotaped Deposition of Harry A. Milman, Ph.D.

**Page 189**

1  residents were exposed to prior to moving
2  into the trailers is unacceptable.
3      Q    So if moving into the trailers
4  increased exposure even just one part per
5  billion, to you, that's unacceptable?
6      A    That's correct.
7      Q    Now, you would agree that FEMA,
8  who's having to make a decision on where to
9  put these people with no place to go,
10 they're having to make a policy decision in
11 determining that, making that decision, not
12 just from a toxicological perspective,
13 right?
14     A    Yes.
15     Q    And in doing that, they got to
16 weigh things like available alternate
17 housing, how far they have to dislocate the
18 persons, trying to rebuild the city and
19 putting people close to the area of the
20 disaster, correct?
21     A    Yes.
22     Q    And these are all intricate to
23 determining whether or not a government
24 agency, when making this determination, has
25 to weigh and balance those factors from day

**Page 190**

1  one; isn't that right?
2      A    Yes.
3      Q    Now, from a toxicological
4  perspective, in your opinion, any time you
5  expose anybody to a chemical greater than
6  background, that's an issue of concern to
7  you, right?
8      A    Correct.
9      Q    That's just because that's what
10 you do as a toxicologist, especially when
11 you come from a public health background,
12 right?
13     A    Yes, especially when a chemical is
14 a known human carcinogen.
15     Q    How many known human carcinogens
16 are there by EPA standard?
17     A    Well, that number is growing. I
18 would say somewhere in the neighborhood of
19 30 to 50.
20     Q    Now, one of the units, one of the
21 units, 519 units they tested had obviously
22 three parts per billion, correct?
23     A    Yes.
24     Q    That's below background level,
25 isn't it?

**Page 191**

1      A    Yes.
2      Q    And the ATSDR MRL standard for
3  lifetime exposure, the MRL standard, which
4  is eight parts per billion --
5      A    Correct.
6      Q    -- ambient exposure in a city
7  exceeds that, doesn't it?
8      A    In some places, yes.
9      Q    Well, in large cities, it exceeds
10 that? The general average is well above
11 that?
12     A    Right.
13 MR. MURRAY:
14     Objection. Asked and answered.
15 EXAMINATION BY MR. MILLER:
16     Q    So, in essence, in your opinion,
17 every single person who lives in a large
18 city in the United States for their lifetime
19 is exposed to formaldehyde levels that we
20 should be taking action about; isn't that
21 right?
22     A    That we should be concerned about,
23 yes.
24     Q    We should be medically monitoring,
25 shouldn't we, each of those persons, given

**Page 192**

1  your opinion?
2      A    Well --
3      Q    It's above background, sir?
4      A    It's above background. Medical
5  monitoring, you know, is a bigger question
6  now. We definitely should be concerned
7  about it. The question is whether we should
8  follow up each individual. That's on an
9  individual basis.
10     Q    Well, it's above background level.
11 It's a level of concern to you as a
12 toxicologist that justifies medical
13 monitoring in your opinion, doesn't it, sir?
14     A    Well, to do medical monitoring,
15 there are a number of factors that go into
16 it and --
17     Q    Well, whether you have defendants
18 to pay for it or the government pays for it,
19 but, in your opinion, everything being a
20 perfect world, unlimited resources, as a
21 toxicologist, from your perspective, those
22 people should be medically monitored, right?
23     A    With unlimited resources, yes.
24     Q    And that's what we're talking
25 about here. They're suing us, given that we

48 (Pages 189 to 192)