UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-4"
JUDGE ENGELHARDT
MAG. JUDGE CHASEZ

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEFENDANT UNITED STATES OF AMERICA'S EXHIBITS
IN SUPPORT OF ITS MEMORANDUM IN RESPONSE TO "PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION"
[Dkt. No. 764]

U.S. EXHIBIT NO. 22

# Transcript of the Testimony of
# **Corey W. Davis**

## Date taken: October 8, 2008

## In Re: FEMA Trailer Formaldehyde Products Liability Litigation

## *\*\*Note\*\**
All **electronic deposition & exhibit files**
are available at **www.psrdocs.com**.
Please call or e-mail reporters@psrdocs.com if you need a
**Username** and **Password**.

# **Professional Shorthand Reporters, Inc.**
**Phone:   504-529-5255**
**Fax:   504-529-5257**
**Email:   reporters@psrdocs.com**
**Internet:   www.psrdocs.com**

```
           UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF LOUISIANA


     IN RE:  FEMA TRAILER      MDL NO. 1873
     FORMALDEHYDE PRODUCTS     SECTION "N"(4)
     LIABILITY LITIGATION      JUDGE ENGELHARDT

                  *   *   *


          Deposition of COREY W. DAVIS, 2525 Arts
     Street, New Orleans, Louisiana 70117, taken
     at the offices of Gainsburgh, Benjamin,
     David, Meunier & Warshauer, L.L.C., 2800
     Energy Centre, 1100 Poydras Street, New
     Orleans, Louisiana 70163, on Wednesday, the
     8th day of October, 2008.


     REPORTED BY:
          JAMES T. BRADLE, CCR
          PROFESSIONAL SHORTHAND REPORTERS
          (504)529-5255
```

Page 1

```
 1    APPEARANCES:
 2      LAW OFFICES OF ROBERT M. BECNEL
        (BY: ROBERT M. BECNEL, ESQUIRE
 3       AND DIANE K. ZINK, ESQUIRE)
        425 WEST AIRLINE HIGHWAY, SUITE B
 4      LAPLACE, LOUISIANA 70068
 5      THE BUZBEE LAW FIRM
        (BY: J. SCOTT DANIELS, ESQUIRE)
 6      1910 ICE & COLD STORAGE BUILDING
        104 21ST STREET
 7      GALVESTON, TEXAS 77550
 8          ATTORNEYS FOR THE PLAINTIFFS
 9      U.S. DEPARTMENT OF JUSTICE
        (BY: HENRY MILLER, ESQUIRE)
10      CIVIL DIVISION
        1331 PENN AVENUE, N.W.
11      ROOM 8220-N WASHINGTON, D.C. 20004
12          ATTORNEYS FOR DEFENDANT, UNITED
            STATES OF AMERICA
13
        DUPLASS, ZWAIN, BOURGEOIS,
14       PFISTER & WEINSTOCK
        (BY: JOSEPH G. GLASS, ESQUIRE)
15      3838 NORTH CAUSEWAY BOULEVARD
        SUITE 2900
16      METAIRIE, LOUISIANA 70002
17          ATTORNEYS FOR DEFENDANT,
            GULF STREAM COACH, INC.
18
        U.S. DEPARTMENT OF HOMELAND SECURITY
19      OFFICE OF CHIEF COUNSEL
        (BY: CHARLES B. BARKSDALE, ESQUIRE)
20      500 C STREET, SW, SUITE 840
        WASHINGTON, DC 20472
21
            ATTORNEYS FOR FEMA
22
23
24
25
```

Page 2

```
 1    APPEARANCES CONTINUED:
 2      WILLINGHAM, FULTZ & COUGILL, LLP
        (BY: HAL L. ROACH, JR., ESQUIRE -
 3       VIA TELEPHONE)
        NIELS ESPERSON BUILDING
 4      808 TRAVIS, SUITE 1608
        HOUSTON, TEXAS  77002
 5
          ATTORNEYS FOR DEFENDANT,
 6      JAYCO AND STARCRAFT
 7          *  *  *
 8        EXAMINATION INDEX
 9                Page
```

```
10    EXAMINATION BY MR. GLASS ..............6
      EXAMINATION BY MR. BARKSDALE ........137
11    EXAMINATION BY MR. GLASS ............195
      EXAMINATION BY MR. BECNEL ...........197
12
13          *  *  *
14        INDEX OF EXHIBITS
15                Page
16    Exhibit No. 1 .......................10
17    Notice of Deposition of Corey Davis
18    Exhibit No. 2 .......................25
19    Plaintiff Fact Sheet for Corey Davis
20    Exhibit No. 3 .......................97
21    Plaintiffs' Original Complaint in the Culler
22    litigation
23    Exhibit No. 4 ......................115
24    Administrative Master Complaint in the MDL
25    No. 1873 litigation
```

Page 3

```
 1    Exhibit No. 5 ......................119
 2    First Supplemental and Amended Master
 3    Complaint in MDL No. 1873 litigation
 4    Exhibit No. 6 ......................120
 5    Second Supplemental and Amended Master
 6    Complaint in MDL No. 1873 litigation
 7    Exhibit No. 7 .......................24
 8    Power of Attorney and Contract of Employment
 9    Exhibit No. 8 ......................134
10    Plaintiffs' Response to Manufacturing
11    Defendants' Initial Written Discovery in MDL
12    No. 1873 litigation
13    Exhibit No. 9 .......................12
14    Copy of Mr. Davis' Louisiana Commercial
15    License
16    Exhibit No. 10 ......................38
17    Handwritten Plaintiff Fact Sheet for Corey
18    Davis
19    Exhibit No. 11 .....................135
20    Toxic Exposure/Formaldehyde Questionnaire
21
22
23
24
25
```

Page 4

1 (Pages 1 to 4)

In Re: FEMA Trailer Formaldehyde Products Liability Litigation                                          Corey W. Davis

---

1          S T I P U L A T I O N

2

3          It is stipulated and agreed by and

4    between counsel for the parties hereto that

5    the deposition of the aforementioned witness

6    is hereby being taken for all purposes

7    allowed under the Federal Rules of Civil

8    Procedure, in accordance with law, pursuant

9    to notice;

10          That the formalities of reading and

11   signing are specifically not waived;

12          That the formalities of filing,

13   sealing, and certification are specifically

14   waived;

15          That all objections, save those as to

16   the form of the question and the

17   responsiveness of the answer, are hereby

18   reserved until such time as this deposition,

19   or any part thereof, may be used or sought

20   to be used in evidence.

21

22                  * * *

23          JAMES T. BRADLE, CCR, Certified Court

24   Reporter, officiated in administering the

25   oath to the witness.

                                    Page 5

---

1    other, that's very difficult to take down

2    accurately.

3          Secondly, please answer "yes" or

4    "no" if your response is "yes" or "no,"

5    rather than saying "huh-uh" or "uh-huh" or

6    shaking your head or nodding your head.

7    Those are difficult things to take down.  If

8    you have some additional information you

9    want to provide beyond that "yes" or "no,"

10   feel free to provide it.

11          If you don't know the answer to a

12   question, that is an acceptable response.

13   If you don't understand my question, please

14   let me know and I will try and rephrase it.

15   If you respond to my question, I ask that

16   you respond from your own personal

17   knowledge, something you saw, you heard, you

18   smelled, you felt.

19          If you're giving me information

20   from some other source, something you heard

21   from somebody else, some information that

22   was provided from some other source, please

23   let me know that.  That's important

24   information for us to know.  If you're

25   making a guess, please let me know that,

                                    Page 7

---

1          COREY W. DAVIS,

2    after having been first duly sworn by the

3    above-mentioned court reporter, did

4    testify as follows:

5    EXAMINATION BY MR. GLASS:

6          Q    Good morning, Mr. Davis.

7          A    Good morning.

8          Q    I introduced myself to you a few

9    minutes ago.  My name is Joe Glass and I

10   represent Gulf Stream Coach, Inc., and I'm

11   here to take your deposition in relation to

12   a lawsuit that has been filed on your

13   behalf.

14          It's my understanding that you

15   have been named as a representative of the

16   plaintiff class, and I'm here to explore

17   your suitability for that role.  I'm sure

18   your counsel has gone through the process of

19   the deposition, but I'm going to reiterate

20   some of the points that he probably made.

21          First and foremost, please allow

22   me to finish asking my question before you

23   begin your response.  Everything that we are

24   saying is being typed up by the court

25   reporter, and when we're speaking over each

                                    Page 6

---

1    too, because I need to know when you're

2    telling me something that you're not sure of

3    and you're just making an assumption, a

4    guess or some other supposition.

5          If you need to take a break, let

6    me know.  We have a time limit here today by

7    court order, so it shouldn't be a problem,

8    but as we go on, you may need to take a

9    break for whatever reason.  If there's a

10   question pending, I will ask that you finish

11   your response to that question before we

12   take a break, but we will try and

13   accommodate you as quickly as possible.

14          I also need to state that we're

15   here taking your deposition in your capacity

16   as a class representative in relation to the

17   class hearing that's set by the Court and

18   we're not here for merits discovery, so

19   we're reserving our right to come back and

20   depose you when we get to the merits phase

21   of this litigation.

22          Do you understand the instructions

23   I just gave you?

24          A    Yes, sir.

25          Q    Okay.  Is there any reason why

                                    Page 8

---

                                        2  (Pages 5 to 8)

1  trailer?
2      A   No, sir.
3      Q   Now, when Mr. Glass was asking you
4  questions earlier, you were discussing, I
5  think you said it was hard to describe the
6  smell you smelled at some point in the
7  trailer.
8          What I was trying to ask initially
9  was, when you first walked into the trailer
10  that first day before the electricity was
11  hooked up, did you smell anything unusual at
12  that point?
13      A   Not that I can recall.
14      Q   How about the day you moved in
15  when the electricity was hooked up, what did
16  you smell at that point, if anything?
17      A   I don't recall.
18      Q   Are you saying you maybe did smell
19  something, but you just don't remember if
20  you did smell something that day?
21      A   I don't remember if I smelled
22  something or if I didn't that day.  I don't
23  know.
24      Q   Okay.  The first time you walked
25  around the trailer, you said the electricity

Page 149

1  A   Yeah.
2      Q   Was it daytime or nighttime?
3      A   It was probably afternoon.  I
4  don't remember.
5      Q   Was somebody there with you?
6      A   My mom.
7      Q   Did you all have a conversation
8  about it?
9      A   I can't recall.
10      Q   What makes that stick in your mind
11  as the time you first noticed this smell?
12  Were you doing something that's in your mind
13  as the first time you noticed that smell?
14  Do you know what you were doing at that
15  point?
16      A   No, not really.
17      Q   I know it may be difficult to
18  describe, but how would you describe the
19  smell?
20      A   I don't know.
21      Q   Let me try to break it down.  Was
22  it a good smell or a bad smell or was it an
23  unusual smell?
24      A   Just an unusual, foul smell.
25      Q   Now, at that point, what, if

Page 151

1  wasn't turned on.  Did it have a new smell,
2  like a new car smell, something like that?
3      A   I don't remember.
4      Q   Does that mean you may have, but
5  you just don't remember?
6      A   I just really don't remember what
7  kind of smell it had at that point in time.
8      Q   All right.  When you were
9  testifying before when Mr. Glass was asking
10  you questions, I believe your testimony was
11  that you smelled something two to three
12  weeks after moving in.  Does that sound
13  right?
14      A   Correct.
15      Q   Describe the first time you
16  remember smelling something or noticing
17  something.  Let me take it one step at a
18  time.  What did you notice, what
19  specifically did you notice?
20      A   It was just an odor.  We didn't
21  know what it was.  I didn't know what it was
22  at least.
23      Q   You actually remember that, that
24  point when you first remember experiencing
25  that smell?

Page 150

1  anything, did you do to talk to anybody
2  about the smell?  Did you tell somebody
3  that?
4      A   Well, me and my mom was in the
5  trailer, so we both smelled it, but to talk
6  to anybody else, no.
7      Q   Did there come a time that you
8  complained about it to any FEMA personnel or
9  any other Government personnel?
10      A   Not that I remember, no, sir.
11      Q   Did there come a time after you
12  first smelled it that you had any symptoms
13  related to the smell?  Do you think you ever
14  had any symptoms related to what you were
15  smelling?
16      A   Yeah, the first -- Well, when I
17  started smelling it, that's when the
18  irritation in the eyes and the irritation in
19  the nostrils began.
20      Q   Okay.  So that all happened, what,
21  the same day?
22      A   Somewhere around that period of
23  time.
24      Q   You don't remember if it happened
25  the same day the first time you noticed the

Page 152

38  (Pages 149 to 152)

In Re: FEMA Trailer Formaldehyde Products Liability Litigation                                 Corey W. Davis

---

**Page 153**

1 smell?
2     A    I know the irritation of the eyes
3 did.
4     Q    Okay. Did you have any
5 conversations with anybody about that at
6 that point?
7     A    Like I said, me and my mom was in
8 the house, so that was probably the only
9 person I talked to about it.
10    Q    Did you mention it to her?
11    A    Yes, sir.
12    Q    What did you say?
13    A    Just something was irritating my
14 eyes, making my eyes burn.
15    Q    What did she say?
16    A    She said she felt the same way.
17    Q    Did there ever come a time when
18 you complained to anyone with FEMA or the
19 Government about this smell?
20    A    No, sir.
21    Q    Did there ever come a time when
22 you complained to FEMA or anybody in the
23 Government about the irritation you were
24 experiencing?
25    A    No, sir.

**Page 154**

1     Q    After you and your mom were
2 occupying the trailer, who was the next
3 person after you two to occupy the trailer?
4     A    Meaning when we moved out?
5     Q    Was there anybody who occupied the
6 trailer with you and your mom?
7     A    Yes, my sister and her daughter.
8     Q    When did they begin to occupy it?
9     A    Maybe a month, a month and a half
10 before we moved out.
11    Q    Okay. So roughly, when would that
12 have been?
13    A    We moved out in March, so it had
14 to be the beginning of February, end of
15 January, something like that.
16    Q    Of 2000 --
17    A    Seven.
18    Q    Did you have any conversations
19 with them before they moved in about you
20 experiencing a smell or irritation?
21    A    I don't recall.
22    Q    Is that the type of thing you
23 would typically tell them before they moved
24 in?
25    A    I don't remember if I had a

**Page 155**

1 discussion about that with them before they
2 moved in.
3     Q    With the symptoms you were
4 describing when Mr. Glass was questioning
5 you, was there anything preventing you from
6 leaving the trailer? Is there some reason
7 why you didn't leave the trailer when
8 receiving those symptoms?
9     A    I didn't have anywhere else to go.
10    Q    When you had the symptoms you were
11 describing, what, if anything, would you do
12 to try to alleviate the symptoms, if
13 anything?
14    A    Go and sit outside, just probably
15 try to lay down and relax.
16    Q    Did you do anything to attempt to
17 open windows or anything like that?
18    A    Yes.
19    Q    Did you do that every time you had
20 the symptoms?
21    A    Yes, sir.
22    Q    Did that alleviate the symptoms?
23    A    No, sir, not as long as I was in
24 the trailer.
25    Q    Did it alleviate the symptoms if

**Page 156**

1 you left the trailer?
2     A    Yes, sir.
3     Q    When you would leave the trailer,
4 how long would you stay outside of the
5 trailer typically?
6     A    I don't recall how long I stayed
7 outside. I don't know.
8     Q    Say again.
9     A    I said I don't recall how long I
10 would sit outside. I don't know.
11    Q    Is that what you would do, you
12 would go outside and sit?
13    A    Yeah.
14    Q    Where would you sit?
15    A    On the house steps.
16    Q    During that time frame, what was
17 the type of damage your house had
18 experienced?
19    A    We had water up to the second
20 floor of our house.
21    Q    What's the status of your house
22 now as far as repairs? Has it been
23 repaired?
24    A    Yes, but it's not finished.
25    Q    Do you know when it will be

39 (Pages 153 to 156)