### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA
### NEW ORLEANS DIVISION

|  |  |
|---|---|
| IN RE: FEMA TRAILER<br>　　　FORMALDEHYDE PRODUCTS<br>　　　LIABILITY LITIGATION | ) MDL NO. 1873<br>) SECTION "N" (4)<br>)<br>) MAGISTRATE CHASEZ<br>) |

### SPECIFIC MANUFACTURING DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR JOINT RULE 12(b)(6) MOTION TO DISMISS (Doc. 210)

**MAY IT PLEASE THE COURT:**

Gulf Stream Coach, Inc., Silver Creek Homes, Inc., Alliance Homes, Inc. d/b/a Adrian Homes, Jayco, Inc., Jayco Enterprises, Inc., Starcraft RV, Inc., Coachmen Industries, Inc., Coachmen Recreational Vehicle Company, LLC, Coachmen Recreational Vehicle Company of Georgia, LLC, Viking Recreational Vehicle Company, LLC, Skyline Corporation, Layton Homes Corporation, Fleetwood Canada, Ltd., Fleetwood Homes of North Carolina, Inc., Fleetwood Enterprises, Inc., Fleetwood Travel Trailers of Maryland, Inc., any other Fleetwood subsidiary that may be deemed to be the real party in interest, Recreation by Design, LLC, TL Industries, Inc., Frontier RV, Inc., Play'Mor Trailers, Inc., Cavalier Home Builders, LLC, Champion Home Builders Co., Homes of Merit, Inc., Liberty Homes, Inc., Redman Homes, Inc., individually and f/k/a Dutch Housing, Inc., River Birch Homes, Inc., Waverlee Homes, Inc., Forest River, Inc., Palomino RV, Vanguard Industry of Michigan, ScotBilt Homes, Inc. and Horton Homes, Inc. ("Manufacturing Defendants"), respectfully submit this Memorandum in Support of their Rule 12(b)(6) Motion to Dismiss (Doc. 210). The Manufacturing Defendants listed above would like to reurge and adopt Sections I through V, pages 1 through 29 and pages 40 through 41. Plaintiffs' Administrative Master Complaint fails to state a claim upon which relief can be granted, and should be dismissed, in the following respects:

(1)     Plaintiffs' claims sounding in Breach of Express Warranty for Property Damage and Personal Injury fail under Alabama, Mississippi, Texas, and Louisiana law;

(2)     Plaintiffs' claims sounding in Breach of Implied Warranty of Merchantability for Property Damage fail under Alabama, Mississippi, and Texas law;

(3)     Plaintiffs' claims sounding in Breach of Implied Warranty for Fitness for a Particular Purpose for Property Damage and Personal Injury fail under Alabama, Mississippi, and Texas law;

(4)     Plaintiffs' claims are barred by the Economic Loss Doctrine under Alabama, Mississippi, Texas, and Louisiana law;

(5)     Plaintiffs' claims for Medical Monitoring are precluded by Alabama, Mississippi, Texas, and Louisiana law;

## STATEMENT OF FACTS

As this Court is well aware, on October 24, 2007, several related suits were transferred to this Court by the Judicial Panel on Multi District Litigation.  These cases were all filed in the aftermath of Hurricanes Katrina and Rita by and on behalf of individuals in Louisiana, Mississippi, Alabama, and Texas who claim: (1) to have resided in manufactured travel trailers, park models or mobile homes along the US Gulf Coast, and (2) to have been subjected to exposure to unlawful and harmful levels of formaldehyde while residing in FEMA Housing.  *See* Admin.  Master Compl. ¶¶ 17, 32.  On November 6, 2007, this Court entered its Pretrial Order No. 1, which consolidated these actions under the style "In Re: FEMA FORMALDEHYDE PRODUCTS LIABILITY LITIGATION" and the identification "MDL No. 1873."  Pursuant to the Court's Pretrial Order No. 2, Plaintiffs filed an Administrative Master Complaint on March 18, 2008.

The Manufacturing Defendants consist of various manufacturers who allegedly sold manufactured housing or travel trailers ("Subject Units") to FEMA, either directly or through government contractors who then sold the Subject Units to FEMA.  FEMA provided the Subject Units to various individuals who had been displaced by Hurricanes Katrina and Rita, including Plaintiffs.  *See* Admin. Master Compl.  ¶ 17.  At all times, the Federal Government, through FEMA, directly provided Plaintiffs with the temporary housing.  *Id.* ¶ 22.  Dissatisfied with their temporary

housing, Plaintiffs allege that the Subject Units contain formaldehyde emissions in violation of federal regulations.  *Id.* ¶¶ 29, 39.  Plaintiffs allege causes of action against Manufacturing Defendants under the state laws of Louisiana, Alabama, Mississippi, and Texas purportedly growing out of the alleged exposure to improper formaldehyde levels.  Plaintiffs' allegations include (1) negligence, (2) strict liability, (3) failure to warn, and (4) breach of express and implied warranty claims against Manufacturing Defendants .  *Id.* ¶¶ 132-204.

The jurisdictional basis of Plaintiffs' claims against Manufacturing Defendants is diversity of citizenship and the Class Action Fairness Act of 2005.  *Id.* ¶¶ 12, 13.  Plaintiffs seek injunctive relief as well as unspecified actual, consequential and punitive damages from all Defendants.  *Id.* at p.76.

In seeking relief, Plaintiffs allege that the formaldehyde levels "have" caused the Plaintiffs to suffer damages, but do not state what injuries the formaldehyde actually caused any of the named plaintiffs.  *Id.* ¶¶ 95, 153, 175.  In praying for compensatory damages, Plaintiffs provide only a generic list of types of past and *future* damages for which Plaintiffs claim the Defendants are jointly and/or individually responsible.  *Id.* at p.74.  Plaintiffs have further demanded "the reasonable costs of medical monitoring."  *Id.* at p.75.

## ARGUMENT AND CITATION OF AUTHORITY

**I.      Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) is designed "to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity."  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989), *superseded by statute on other grounds as stated in Brown v. Citicorp*, No. 97-C-6337, 1997 U.S. Dist. LEXIS 16496 (N.D. Ill. Oct. 16, 1997); *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).  Rule 12(b)(6) motions directly challenge the legal theory of the complaint, not the sufficiency of any evidence that might be adduced or presented.  *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

A Rule 12(b)(6) dismissal is appropriate where the alleged claim(s) fails to assert a legally cognizable theory as a matter of law <u>or</u> the claim(s) fail to allege sufficient facts to support a cognizable legal claim. *Smile Care Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996), *cert denied*, 519 U.S. 1028 (1996). "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A Rule 12(b)(6) dismissal is proper "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006).

Furthermore, the allegations in the pleading must *plausibly* suggest that the plaintiff is entitled to relief in order to meet "the threshold requirement of [Federal Rule of Civil Procedure] 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" *Twombly*, 127 S. Ct. at 1966 (granting defendants' 12(b)(6) motion for dismissal where plaintiffs' complaint, which cited lawful parallel conduct in support of its antitrust allegations, failed to present plausible grounds to infer an agreement in violation of § 1 of the Sherman Act). A complaint that "stops short of the line between possibility and plausibility of 'entitlement to relief'" is insufficient. *Id.* at 1966. Plaintiffs' legal claims suffer from various fatal deficiencies, rendering Rule 12(b)(6) relief appropriate in this case.

## II.    Choice of Law

Although for purposes of this motion subject matter jurisdiction is not at issue, it presumptively appears that this Court may exercise jurisdiction over the instant litigation based on diversity of citizenship grounds and/or the Class Action Fairness Act of 2005.[1] Accordingly, as in

---

[1]      As this Court is well aware the Class Action Fairness Act of 2005 expanded subject matter diversity jurisdiction in the class action context. *See* P.L. No. 109-2, § 4, 119 Stat. 4, 9; *see also* 28 U.S.C. § 1332(d).

other diversity cases, federal courts are obligated to apply the choice of law rules of the forum state. *Spence v. Glock*, 227 F.3d 308, 311 (5th Cir. 2000).  Thus, the choice of law rules of Louisiana apply here.  Pursuant to their request for certification, Plaintiffs have brought claims under the laws of four different states -- Louisiana, Alabama, Mississippi, and Texas -- with the individual plaintiffs from each state making up that proposed subclass.[2]  Where Plaintiffs allege that injuries have occurred in multiple states, courts applying Louisiana choice of law rules have separately applied the laws of each state to the injuries that allegedly occurred in it.  *Brookshire Bros. Holding, Inc. v. Total Containment, Inc*., No. 04-1150, 2006 U.S. Dist. LEXIS 69072 (W.D. La. Sept. 26, 2006) (in a product liability case, applying Texas law to those injuries that occurred in Texas and Louisiana law to those injuries that occurred in Louisiana).  In the instant matter, the laws of Louisiana, Alabama, Mississippi, and Texas will apply respectively to the claims of the residents of each state.

### III.   Plaintiffs Are Precluded From Recovering for Breach of Warranty as a Matter of Law.

Plaintiffs are seeking recovery for alleged personal injury and alleged economic loss as a result of a purported breach of warranty.  In articulating their causes of action for Mississippi and Alabama Plaintiffs, Plaintiffs include a provision that they are seeking all "general, special, incidental and consequential damages as shall be proven at time of trial[.]"  *See* Admin. Master Compl.  ¶¶ 155 (under Mississippi law), 177 (under Alabama law).  In articulating the compensatory damages sought by Plaintiffs in all four states, Plaintiffs include that same statement, then go on to articulate that they are also seeking:

> [F]or those who purchased housing units from FEMA, those certain plaintiffs are entitled to the return of the purchase price with interest from the time it was paid, the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the housing units, expenses

---

[2]   This Court will need to address the differences in state laws in analyzing whether class certification is appropriate.  *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 458 (E.D. La. 2006) (conducting choice of law analysis to determine which state's law applies in analyzing hurdles to certification).  As discussed in depth in other submissions to the Court, the Manufacturing Defendants are confident that class certification is inappropriate in this instance.

> incurred through mitigation of damages, attorneys' fees, and all damages
> allowed under [applicable Louisiana law regarding contracts, sales, and
> redhibition] including all damages occasioned by the Federal Government's
> failure to perform its contractual obligations and all other damages, whether
> foreseeable or not, that are a direct consequence of its failure to perform.

*See id.* at p.75.  Plaintiffs' claims for breach of warranty are precluded by Mississippi, Alabama, and

Texas law regardless of whether Plaintiffs seek recovery for economic loss or for personal injury.

### A.     Mississippi: As a matter of law, Plaintiffs are precluded from recovery for any purported breach of any purported warranty, express or implied.

Plaintiffs cannot recover for any breach of warranty claim under Mississippi law.  While

Plaintiffs only specifically articulate a cause of action for breach of *express* warranty under

Mississippi law, see Admin. Master Compl. ¶ 151, to the extent the Administrative Master

Complaint may be deemed to allege breach of implied warranties, these too are barred by applicable

Mississippi law.  Plaintiffs cannot recover for any breach of warranty claim for property damage

because Plaintiffs are not "buyers" as required under Mississippi law.[3]  Furthermore, Mississippi law

precludes recovery for breach of express warranty and implied warranty for fitness in cases in which

a plaintiff does not rely upon an affirmation or skill of the defendant.  Plaintiffs have not alleged any

such reliance.  Accordingly, Plaintiffs fail to state a breach of warranty claim against Manufacturing

Defendants under applicable Mississippi law.

### 1.     Claims for breach of warranty seeking property damage are barred because Plaintiffs lack standing.

Plaintiffs lack standing to recovery for breach of warranty for property damage because

Plaintiffs are not "purchasers" or "buyers" as required under fundamental contract and warranty

---

[3]     Plaintiffs have pled that FEMA purchased the Subject Units from the Manufacturing Defendants.  *See* Admin. Master Compl. ¶¶ 24, 25, 29, 30, 31, 52.  Plaintiffs further allege that FEMA provided the Subject Units to certain plaintiffs subject to a "lease agreement and/or contract".  *See id.* ¶¶ 100-105.  To the extent certain Plaintiffs allege to have purchased a Subject Unit from FEMA or any Manufacturing Defendant, or any other entity, see, *e.g.*, Admin. Master Compl. ¶ 121 (alleging that the federal government sold certain Subject Units to certain unidentified plaintiffs), the warranty claims of those particular purchasing Plaintiffs may be barred for the reasons set forth *infra*.

principles.  The Uniform Commercial Code ("UCC"), as adopted by Mississippi, requires a "buyer"[4] or "purchaser" and assumes a "contract for sale" and "sale"[5] for breach of warranty claims.  *See generally*, Miss. Code Ann. §§ 75-2-101, *et seq.* (adopting nearly verbatim the UCC).  For example, Section 303 of the UCC, as adopted in Mississippi, states that an express warranty is an affirmation made by the seller to the "buyer."  Miss. Code Ann. § 75-2-313.[6]  Section 314 states that an implied warranty of merchantability is a warranty that goods are merchantable as implied in a contract for "sale."  Miss. Code Ann. § 75-2-314.[7]  Section 315 provides that a party breaches an implied warranty where the seller has reason to know of any particular purpose that the goods are required, and that the "buyer" is relying on the seller's skill or judgment.  Miss. Code Ann. § 75-2-315.[8]

Thus, it is axiomatic -- indeed, it is ingrained in basic UCC warranty law -- that only a "buyer" may sue to recover economic damages for breach of warranty.  The UCC's definition of express and implied warranties is laden with references to the "buyer," the "bargain," and the "contract for sale."  *See* Miss. Code Ann. §§ 75-2-313, 314, and 315.  Only one who buys or contracts to buy the subject good may sue for breach of warranty.  *Id.; c.f. Hicks v. Thomas*, 516 So.2d 1344 (Miss. 1987).

---

[4]   Miss. Code Ann. § 75-2-103 defines a "buyer" as "a person who buys or contracts to buy goods."

[5]   Miss. Code Ann. § 75-2-106 states in relevant part that: a "'Contract for sale' includes both a present sale of goods and a contract to sell goods at a future time.  A 'sale' consists in the passing of title from the seller to the buyer for a price (Section 75-2-401)."

[6]   Miss. Code Ann. § 75-2-313 states in relevant part that an express warranty is: "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain…that the goods shall conform to the affirmation or promise."

[7]   Miss. Code Ann. § 75-2-314 states in relevant part: "…a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

[8]   Miss. Code Ann. § 75-2-315 states in relevant part: "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish goods, there is … an implied warranty that the goods shall be fit for such purpose."

From the definitions of "buyer," "sale," and "contract for sale," found in Mississippi's UCC, *see* footnotes 4 and 5 *supra*, it is clear that Plaintiffs who did not purchase their Subject Unit have no standing to sue for breach of warranty for property damage. It is undisputed that many Plaintiffs did not purchase the subject homes from the Manufacturing Defendants. As stated in the Administrative Master Complaint, "the United States of America, through FEMA, began *providing* temporary housing to plaintiffs . . . ." Admin. Master Compl. ¶ 22 (emphasis added). Plaintiffs' use of the word "providing" is fatal to their claim. Plaintiffs further allege that the Subject Units were provided "subject to the terms of a lease agreement and/or contract."[9] Admin. Master Compl. ¶ 100. To the extent Plaintiffs did not purchase a Subject Unit, they are not "buyers" under Mississippi's UCC.

The proposition that a plaintiff cannot recover for property damage under theories of breach of warranty for property they have not bought is consistent with the well-settled legal principle that a party must have a property right in the allegedly damaged property in order to claim property damage. Plaintiffs who did not purchase a Subject Unit do not have any recognizable property interest in the Subject Units. Accordingly, Plaintiffs cannot recover for property damage under claims for breach of warranty.

**2.      Mississippi Plaintiffs Cannot Recover for Breach of Express Warranty Because Manufacturing Defendants Did Not Make Any Affirmations Upon Which Plaintiffs Relied.**

Mississippi law dictates that an express warranty is only created by an affirmation, description, promise, or sample by the seller that becomes a basis for the bargain.[10] Miss. Code

---

[9]      Plaintiffs do not allege, as indeed they cannot, that the units were provided subject to a contract *of sale*.

[10]     Plaintiffs do not allege that Manufacturing Defendants made an express affirmation regarding the Subject Units manufactured by Manufacturing Defendants. Although Plaintiffs make the imprecise allegation that there were "express factual representations upon which the claimant justifiably relied," see Admin. Master Compl. ¶ 151, this bare recitation of the elements fails the plausibility standard for showing that a plaintiff is entitled to relief as laid out in *Twombly, supra*.

Ann. § 75-2-313;[11] *Austin v. Will-Burt Co.*, 232 F. Supp. 2d 682, 687 (N.D. Miss. 2002). Thus, an express warranty is not created unless the purchaser relies upon the seller's affirmation or promise. *See id.* Mississippi courts have consistently dismissed claims for breach of express warranty where the plaintiffs could not prove that they relied on the alleged express affirmation or promise when purchasing the subject product. *See Austin v. Will-Burt Co.*, 232 F. Supp. 2d at 687 ("[a]n express warranty is any affirmation of fact or promise which concerns the product and becomes part of the basis for the purchase of such a product"). Again, Plaintiffs cannot recover for breach of an express warranty under Mississippi law because Manufacturing Defendants did not make, and Plaintiffs have not pled, any affirmations or promises upon which Plaintiffs relied in purportedly selecting their Subject Units.

> **3.    Mississippi Plaintiffs Cannot Recover for Breach of Warranty for Fitness Because Plaintiffs Do Not Allege that Manufacturing Defendants Were Aware That Plaintiffs Were Relying on the Manufacturing Defendants.**

Similarly, Miss. Code Ann. § 75-2-315 states that an implied warranty exists only where "the buyer is *relying* on the seller's skill or judgment to select or furnish suitable goods[.]" Miss Code Ann. § 75-2-315 (emphasis added).[12] Under Mississippi law, the warranty of fitness for a particular purpose does not apply where a plaintiff does not have contact with the defendant when purchasing the product because under such circumstance the plaintiff could not have relied on the skill or knowledge of the defendant in picking the product. *Albritton v. Coleman Co.*, 813 F. Supp. 450,

---

[11]    Miss. Code Ann. § 75-2-313 states in relevant part:
  (1)   Express warranties by the seller are created as follows:
    (a)    Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
    (b)    Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
    (c)    Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

[12]    Miss. Code Ann. § 75-2-315 states in pertinent part:
  . . . where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose.

455 (S.D. Miss. 1992) (breach of an implied warranty of fitness arises when "the buyer in turn relies on the seller's skill and judgment in selecting the individual product"); *Austin v. Will-Burt Co.*, 232 F. Supp. 2d at 688.

In *Austin*, the plaintiffs' alleged breach of implied warranty of fitness after the plaintiff-decedent was electrocuted by the defendant's product. *Austin v. Will-Burt Co.*, 232 F. Supp. 2d at 684-85. The decedent was an employee of a TV station that utilized the defendant's telescoping mast for use on an electronic news-gathering van. *Id.* The defendant had sold the particular product to a third-party who had later sold the product to the decedent's employer. *Id.* The court held that plaintiffs were precluded from recovering for breach of implied warranty "where plaintiffs did not purchase the product from the defendant as the plaintiffs never relied on the skill or knowledge of the defendant's representative in picking the product, but rather, purchased the product from a third-party." *Id.* at 688. Accordingly, the court held the decedent could not have relied on the defendant in selecting the product and the plaintiffs were precluded from recovery. *Id.* As previously noted, there is no allegation that any Plaintiff had any contact with Manufacturing Defendants during the "conveyance" by FEMA of the Subject Units to Plaintiffs. Plaintiffs therefore could not have relied on the representations, skill, or knowledge of Manufacturing Defendants. Thus, Plaintiffs cannot recover for breach of implied warranty of fitness under Mississippi law.

## B.      Alabama: As a matter of law, Plaintiffs are precluded from recovery for any purported breach of any purported warranty.

Similarly, Plaintiffs cannot recover for breach of express or implied warranty under Alabama law, *see* Admin. Master Compl. ¶¶ 161, 173 (pleading both types of breach of warranty), for property damage because Plaintiffs are not "buyers" as defined and required under Alabama law. Furthermore, Plaintiffs cannot recover for breach of express or implied warranty of fitness for either property damage or personal injury because Plaintiffs did not rely on any express or implied representation by Manufacturing Defendants.

1.      **Claims for breach of warranty for property damage are barred are a matter of law.**

As a matter of law, Plaintiffs' claims for breach of warranty, whether express or implied, fail to state a claim upon which relief may be granted for property damage because Plaintiffs lack standing as required under Alabama law.

a.      **Alabama Plaintiffs Lack Standing Because They Are Not "Purchasers" or "Buyers."**

Similar to the law of Mississippi, Alabama law limits recovery for economic damages under breach of warranty to those who are "buyers" or "purchasers."  Alabama defines a "buyer" as a person who "buys or contracts to buy goods."  Ala. Code § 7-2-103 (setting forth definitions to terms used in recognizing claims under Alabama's commercial code).  Accordingly, Plaintiffs cannot recover for economic loss resulting from any alleged breach of warranty because Plaintiffs were not "buyers" as required under Alabama's commercial code, which sets forth a party's right to recover for breach of warranties.[13]

b.      **Alabama Plaintiffs Are Precluded for Recovering for Property Damage Because No Privity Exists Between Plaintiffs and Manufacturing Defendants.**

Alabama Plaintiffs cannot recover for breach of express or implied warranties against Manufacturing Defendants because Manufacturing Defendants did not sell the subject homes directly to Plaintiffs, and, therefore, the Alabama Plaintiffs are not in privity of contract with Manufacturing Defendants.  It is well-established under Alabama law that in order to recover for property damage, a plaintiff must prove privity of contract for warranty actions involving property damage.  *Barre v. Gulf Shores Turf Supply, Inc.*, 547 So.2d 503, 504 (Ala. 1989) ("[T]he plaintiff must prove privity of contract in an action on an express warranty where no injuries to natural persons are involved.").  Alabama courts have consistently held that a manufacturer cannot be held

---

[13]      To the extent certain Plaintiffs purportedly purchased a Subject Unit from FEMA, such purchasing Plaintiffs' claims may be barred for the reasons set forth *infra*.

liable for breach of implied warranty in cases of economic injury unless the plaintiff can prove privity exists between the plaintiff and the manufacturer. *Rampey v. Novartis Consumer Health, Inc.*, 867 So.2d 1079, 1087 (Ala. 2003) ("[T]here is no right of action on an implied warranty theory against a manufacturer for property damage without privity of contract.").

In *Rampey*, plaintiff-consumers filed a class action suit for breach of warranties against the defendant-manufacturer of an over-the-counter drug after learning that the subject product contained an ingredient believed to cause pre-cancerous and cancerous conditions. *Id*. at 1081. The plaintiffs sought injunctive relief and damages for economic loss. *Id.* The court dismissed the plaintiffs' claims for implied warranties because the plaintiffs had never purchased the subject product directly from the defendant-manufacturer. Instead, the defendant-manufacturer had sold the subject product exclusively to distributors and wholesalers who, in turn, sold the subject product to the plaintiff-consumers. *Id.* at 1083. Accordingly, the court held that the plaintiffs' breach of warranty claims did not extend to the defendant-manufacturer. *Id.* at 1092; *Bryant v. Southern Energy Homes, Inc.*, 682 So.2d 3, 5 (Ala. 1996) (holding implied warranty of fitness for a particular purpose did not apply to a manufacturer of mobile homes because the defendant-manufacturer sold the subject product to a third-party and not the plaintiff).

Plaintiffs cannot recover for breach of express or implied warranty for property damage or any alleged loss flowing therefrom under Alabama law because Plaintiffs have no privity of contract with Manufacturing Defendants. Rather, FEMA "provided" the Subject Units to Plaintiffs. At no point did Manufacturing Defendants and Plaintiffs enter into a contractual relationship pertaining to the Subject Units; Plaintiffs' "contractual relationship," if any, was with FEMA. *See* Admin. Master Compl. ¶ 100. Like the defendant-manufacturer in *Rampey*, Manufacturing Defendants never distributed or sold the Subject Units directly to Plaintiffs. Without having alleged any contractual relationship for the sale of the Subject Units with Manufacturing Defendants, Plaintiffs' claims for breach of express and implied warranties must be dismissed as a matter of Alabama law.

     **2.**     **Alabama Plaintiffs Are Precluded from Recovering for Express Warranty Because Manufacturing Defendants Did Not Make an Affirmation or Promise that Became a Basis of the Bargain.**

Alabama Plaintiffs cannot recover for breach of express warranty, whether for personal injury or property damage, because there is no allegation that Manufacturing Defendants made any affirmation or promise to Plaintiffs.  Under Alabama law, a plaintiff cannot recover for an alleged breach of express warranty unless the plaintiff can demonstrate that there was an affirmation or promise made by the defendant upon which the plaintiff relied in purchasing the product.  *See Ex Parte Gen. Motors Corp.*, 769 So. 2d 903, 907-10 (Ala. 1999).  In *General Motors*, the plaintiff sued the defendant-car manufacturer after the plaintiff suffered injuries resulting from an automobile accident that occurred after the subject vehicle had continuously stalled.  *Id.* at 905-6.  The plaintiff sued in tort and for breach of warranties, including breach of express warranty.  *Id.*  The plaintiff merely alleged a breach of express warranty and generally pointed to an extended warranty in which the defendant-manufacturer promised it would cover the cost of towing.  In dismissing the plaintiff's claim for breach of express warranty against the defendant-manufacturer, the court held that the plaintiff could not recover for express warranty because there was no evidence of any affirmation or promise made by the defendant-manufacturer to the plaintiff with respect to the alleged defect upon which the plaintiff relied in purchasing the subject vehicle.  *Id.*

The present case is nearly identical to *General Motors.*  Here, Plaintiffs have done nothing more than merely allege a breach of express warranty.  Further, in contrast to the plaintiff in *General Motors*, Plaintiffs have not even alleged <u>any</u> warranty by Manufacturing Defendants.  Here, no warranty could have existed between Manufacturing Defendants and Plaintiffs because no representation was ever made by Manufacturing Defendants to Plaintiffs.  Put simply, Plaintiffs never relied upon any affirmation or promise made by any Manufacturing Defendant.  In fact, there is no allegation in the Administrative Master Complaint that Plaintiffs ever had any choice in determining the manufactured home in which Plaintiffs would temporarily reside.  Instead, Plaintiffs

have been utilizing whatever temporary housing was afforded to them by FEMA.  Accordingly,

Plaintiffs cannot recover for any damage arising from a breach of express warranty as a matter of

Alabama law.

       **3.**      **Alabama Plaintiffs Are Precluded for Recovering for Breach of an Implied Warranty of Fitness Because Plaintiffs Do Not Allege that Manufacturing Defendants Were Aware That Plaintiffs Were Relying On Manufacturing Defendants.**

While Plaintiffs do not specifically enumerate a cause of action for breach of implied

warranty of fitness, Plaintiffs do allege strict product liability on the basis of breach of any implied

or express warranties.  Admin. Master Compl. ¶¶ 161, 173.  To the extent Plaintiffs allege breach of

the implied warranty of fitness, such claim is barred.  Alabama's implied warranty for fitness rule is

codified at Ala. Code § 7-2-315:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.

Thus, a claim for warranty for fitness for a particular purpose does not apply where a plaintiff does

not know he is purchasing the defendant's product because under such circumstance the plaintiff

could not have relied on the skill or knowledge of the defendant in selecting the product.  *Ex parte*

*Gen. Motors Corp.*, 769 So.2d at 911.  In *General Motors*, in addition to suing the manufacturer, as

has been discussed above, the plaintiff sued the car dealership from which he purchased the

allegedly defective automobile for breach of implied warranty of fitness.  *Id.*  The court held that the

plaintiff could not recover for an alleged breach of implied warranty of fitness because the plaintiff

had failed to demonstrate that the defendant-dealership knew that the plaintiff was relying on the

dealership's expertise and that the plaintiff did, in fact, rely on the dealership's skill or knowledge in

selecting the subject vehicle.  *Id.*

Plaintiffs do not allege that they relied on Manufacturing Defendants' skill or knowledge in

selecting their respective Subject Units.  Again, Plaintiffs do not allege that they were even involved

in selecting their Subject Unit.  According to the Complaint, FEMA provided Plaintiffs with the

Subject Units.  Plaintiffs have merely been occupying, on a temporary basis, whatever Subject Unit

was provided to them by FEMA.  Plaintiffs have not even alleged that they knew they were

occupying a Subject Unit produced by Manufacturing Defendants.  Accordingly, Plaintiffs cannot

recover for breach of implied warranty for fitness as a matter of Alabama law.

> **C.     Texas:  As a matter of law, Plaintiffs are precluded from recovery for any purported breach of any purported warranty.**

Texas' commercial code mirrors Alabama and Mississippi law.  Therefore, Plaintiffs are

precluded from recovering for all warranties for property damage because Plaintiffs do not meet the

definition of "buyer" under Texas law.  Further, Plaintiffs have failed to establish that they relied

upon a promise or upon the skill and knowledge of Manufacturing Defendants as required to

demonstrate breach of express warranty and implied warranty for fitness.  Thus, like the Alabama

and Mississippi Plaintiffs, the Texas Plaintiffs fail to state a breach of warranty claim against

Manufacturing Defendants upon which relief may be granted.

> **1.     Claims for Breach of Warranty Seeking Property Damage are Barred Because Plaintiffs Lack Standing.**

Like Alabama and Mississippi, Texas has adopted the UCC's definitions for breach of

warranty.  *See generally* Tex. Bus. & Com. Code § 2.101, *et seq.* (adopting the UCC nearly

verbatim).  An implied warranty of merchantability is a warranty that goods are merchantable that is

implied in a "contract for sale."  *Id.* § 2.314.  Again, nearly identically to Alabama and Mississippi

law, Texas law provides that a party breaches an implied warranty for fitness where the seller knows

that the "buyer" is relying on the seller's skill or judgment.  *Id.* § 2.315.  In fact, Texas courts have

held that "the UCC does not confer blanket authority to sue for breach of warranty . . . only a

'buyer' may sue to recover economic damages for non-conformities of tender, including breaches of

warranties."  *DaimlerChrysler Corp. v. Inman*, 121 S.W.3d 862, 882 (Tex. Ct. App. 2003), *rev'd on

other grounds*, 51 Tex. Sup. Ct. J. 422 (Tex. 2008).  Thus, only one who buys or contracts to buy the

subject good may sue for breach of warranty.  Here, Plaintiffs cannot recover damages for alleged

breach of warranties of the Subject Units when Plaintiffs have never had a recognized property

interest in the Subject Units.[14]

> **2.    Texas Plaintiffs Cannot Recover for Breach of Warranty for Fitness Because Plaintiffs Do Not Allege that Manufacturing Defendants Were Aware That Plaintiffs Were Relying On Manufacturing Defendants.**

Texas law, like that of Alabama and Mississippi, also requires that a plaintiff must have

relied on the defendant's skill or knowledge in selecting the product in order to set forth a justiciable

cause of action.  It is not enough that the plaintiff relied on an intermediary rather than the named

defendants.  *Harris Packaging Corp. v. Baker Concrete Constr.*, 982 S.W.2d 62, 67 (Tex. Ct. App.

1998), *overruled in part on other grounds by Med. City Dallas, Ltd. v. Carlisle Corp.,* 51 Tex. Sup.

Ct. J. 753 (Tex. 2008).  Thus, Texas courts have held that a plaintiff cannot recover for breach of

implied warranty for fitness, whether for property damage or personal injury, unless the plaintiff can

demonstrate that the he relied on a representation or recommendation by the defendant for selecting

the subject product.  *See Cook-Pizzi v. Van Waters & Rogers, Inc.*, 94 S.W.3d 636, 647-48 (Tex.

App. 2002).  Again, Plaintiffs cannot prove this critical element.  There is no allegation that

Plaintiffs were even aware that Manufacturing Defendants manufactured their units at the time

FEMA distributed the Subject Units to Plaintiffs.  Accordingly, Plaintiffs' claims for breach of

implied warranty for fitness must be dismissed under Texas law.

> **3.    Texas Plaintiffs Cannot Recover for Breach of Express Warranty Because Manufacturing Defendants Did Not Make Any Affirmations or Promises Upon Which Plaintiffs Relied.**

Plaintiffs have not explicitly enumerated a count for breach of express warranty under Texas

law in the Administrative Master Complaint.  However, to the extent Plaintiffs' allegations may be

read to state a claim for breach of express warranty, they cannot recover.  Texas has defined an

---

[14]    To the extent certain Plaintiffs purportedly purchased a Subject Unit from FEMA, such purchasing Plaintiffs' claims may be barred for the reasons set forth *infra*.

express warranty as "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes a basis *for the bargain*."  Tex. Bus. & Com. Code Ann. § 2.313 (emphasis added).  Texas courts have held that the "basis for the bargain" injects a requirement of reliance into express warranty claims.  *PPG Indus. Inc. v. JMB/Houston Centers Partners LP,* 146 S.W.3d 79, 99 (Tex. 2004).  In *Harris*, *supra*, a Texas court clarified this concept by explaining that not only must the defendant have made an affirmation *to the plaintiff*, but also the affirmation must have been made in connection with contracting for the sale of the goods.  *Harris,* 982 S.W.2d at 66-7.  The court held that purported statements made by the defendant to the plaintiff could not have been a "basis of the bargain" because there was never any contract between the plaintiff and the defendant. *Id.* at 67.

Similarly here, Plaintiffs cannot-- and do not -- allege that any statements made by Manufacturing Defendants became a "basis for the bargain" because there was never any contract for the sale of the Subject Units from the Manufacturing Defendants to Plaintiffs.  Correspondingly, Plaintiffs cannot -- and do not -- allege that the Manufacturing Defendants made any representations to Plaintiffs in the course of contracting for sale of the Subject Units.  Thus, Plaintiffs' claims for breach of express warranty must be dismissed as a matter of Texas law.

**D.     Louisiana:  As a matter of law, Plaintiffs are precluded from recovery for any purported breach of express warranty.**

Plaintiffs assert claims under the Louisiana Products Liability Act for breach of express warranty (Doc 109, paragraph 138(i)), but have not stated that they relied upon the warranty in deciding to use the trailers.  To present a claim for a breach of an express warranty under the LPLA, a plaintiff must show that "the plaintiff was induced to use the product because of [the express] warranty.  *Caboni v. General Motors Corp.,* 278 F.3d 448, 453-55 (5th Cir.2002); *see also* La.Rev.Stat. Ann. § 9:2800.58 (manufacturer is potentially liable only "if the express warranty has induced the claimant or another person or entity to use the product").  In the absence of allegations

that Plaintiffs were induced to use the trailers because they relied upon the express warranty, and particularly where Plaintiffs have not alleged any specifics regarding the terms of the express warranty that were allegedly breached, Plaintiffs have not stated a claim for breach of express warranty under Louisiana law.  *See Id.*

IV.   **Plaintiffs' Claims For Economic Loss Should Be Dismissed Because They Have No Ownership Interest In the Subject Units And Because They Are Barred By The Economic Loss Doctrine.**

Plaintiffs lack standing to recover for economic losses for their alleged property damage because Plaintiffs are not property owners.  The actual owner of the Subject Units is the U.S. government.  Even assuming, *arguendo,* that Plaintiffs may claim property damage to some abstract ownership interest in the Subject Units or that they may assert a property damage claim for the purported loss of a housing subsidy because they chose to live in a Subject Unit -- which is denied -- they would be barred from recovery under principles of both negligence and strict liability by the Economic Loss Doctrine.

The genesis of the Economic Loss Doctrine is found in a California case, *Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145 (Cal. 1965), in which the Court explained:

> The law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods.  The history of the doctrine of strict liability and tort indicates that it was designed, not to undermine the warranty provisions of the Sales Act or the Uniform Commercial Code but, rather, to govern the distinct problem of **physical injuries**.

*Seely*, 403 P.2d at 159-61 (emphasis added).

Thereafter, in a 1986 decision the United States Supreme Court unanimously embraced and adopted the majority rule of *Seely*.  The Court held that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself, and thus, no products-liability claim for negligence or strict liability lies "when the only injury claimed is economic loss."  *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986).

A.      **Mississippi: Plaintiffs' Claims for Negligence and Strict Liability Are Barred By the Economic Loss Doctrine.**

The principles set forth in *Seely* and *East River* have been embraced and adopted by both Mississippi federal courts and Mississippi state courts.  In Mississippi, a plaintiff who suffers only economic loss as a result of an allegedly defective product may not recover in strict liability or negligence, though such damages may be pursued under a breach of warranty theory.  *Progressive Ins. Co. v. Monaco Coach Corp.*, 2006 U.S. Dist. LEXIS 21251, at *8 (S.D. Miss. March 29, 2006); *Lee v. General Motors Corp.*, 950 F. Supp. 170, 172-73 (S.D. Miss. 1996); *State Farm Mutual Auto Ins. Co. v. Ford Motor Co.*, 736 So.2d 384, 387 (Miss. Ct. App. 1999).

No plaintiff named in the Administrative Master Complaint has specifically identified any present injury.  It is patently obvious that, aside from their attempt to recover for *future* injury without proving *present* injury, the only damages that Plaintiffs are claiming and for which they seek recovery are economic damages they claim to have incurred as a result of damage to the Subject Units themselves.  However, as shown above, such recovery is barred under Mississippi law by the Economic Loss Doctrine.

B.      **Texas: Plaintiffs' Claims for Negligence and Strict Liability Are Barred By the Economic Loss Doctrine.**

Texas has also adopted the Economic Loss Doctrine.  The doctrine applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself.  The Texas Supreme Court established that purely economic losses, even if suffered as a result of negligence, are not recoverable.  *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991).  The Court reasoned that when the only loss or damages is to the subject matter of the contract, the plaintiff's actions are ordinarily on the contract.  *Id.* at 494 (citations omitted).  Acknowledging that, although the plaintiff pleaded his action as one in negligence, the Court held that the economic loss caused by the defendant's actions sounded in contract and therefore the

plaintiff's negligence claim was barred.  *Id.*; *see also Medical City Dallas, Ltd. v. Carlisle Corp.*, No. 06-0660, 2008 Tex. LEXIS 315, at *14 (Tex. April 11, 2008).

Because the Plaintiffs fail to identify any present injury in the Administrative Master Complaint, the only damages that Plaintiffs are claiming and for which they seek recovery are economic damages incurred as a result of alleged damage to the Subject Units themselves. However, as shown above, such recovery is barred under Texas law by the Economic Loss Doctrine.

**C.     Alabama:  Plaintiffs' Claims for Negligence and Strict Liability Are Barred By the Economic Loss Doctrine.**

Persuaded by the reasoning of the United States Supreme Court, in 1989 the Alabama Supreme Court adopted the Economic Loss Doctrine.  *Lloyd Wood Coal Co. v. Clark Equipment Co.*, 543 So. 2d 671 (Ala. 1989) (affirming grant of summary judgment to defendant on plaintiff's negligence claim where the only damage was to the product itself).  More recently, the Alabama Supreme Court reaffirmed that one cannot recover in tort for the negligence manufacture of a product where the only injury is to the product itself.  *Bay Lines, Inc. v. Stoughton Trailers, Inc.*, 838 So. 2d 1013, 1019 (Ala. 2002).

Again, because the Plaintiffs fail to identify any present injury in the Administrative Master Complaint, the only damages that Plaintiffs are claiming and for which they seek recovery are economic damages incurred as a result of alleged damage to the Subject Units themselves.  As explained above, such recovery is barred under Alabama law by the Economic Loss Doctrine.

**D.     Louisiana:  Plaintiffs' Claims for Negligence and Strict Liability Are Barred By the Economic Loss Doctrine.**

There is clear support for the Economic Loss Doctrine in Louisiana's statutory scheme. The Louisiana Civil Code contains several provisions governing choice of law scenarios. One, article 3545, sets forth the rule for conflicts that occur in products liability cases. *See* LA. CIV. CODE. art. 3545 (2006). The comments to that article state:

This Article applies to any injury caused by a product, rather than to the product itself. *The latter type of damage is likely to be characterized as contractual in nature* and thus would be governed by the Title on conventional obligations. *Id*. cmt. (a).

The comments envision a form of redress for property damage that is limited solely to those found in contract. *See id*. That is the exact rationale of the economic loss doctrine – there is no tort recovery for purely economic loss. When the thing itself is allegedly defective, then the remedy is governed by the rules of contract. Only under those rules can recovery for economic loss be considered.

In addition to those comments, the Louisiana Products Liability Act (LPLA) tacitly applies the economic loss doctrine. The LPLA defines damage in a products liability context as "including damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that [the Civil Code Articles on redhibition] do not allow recovery for such damage or economic loss." LA. REV. STAT. ANN. § 9:2800.53(5). Since Louisiana's redhibition statutes allow for the recovery of economic damages, the LPLA does not. The statutory scheme does not change simply because these particular plaintiffs do not have a redhibition claim.

As the Plaintiffs fail to identify any present injury in the Administrative Master Complaint, the only damages that Plaintiffs are claiming are economic damages incurred as a result of alleged damage to the Subject Units themselves.  As explained above, such recovery is barred under Louisiana law.

**V.     Plaintiffs' Claims for Medical Monitoring Must Be Dismissed Under Louisiana, Alabama, Mississippi, and Texas Law.**

Louisiana, Alabama, Mississippi, and Texas law dictate that a claim for medical monitoring cannot be sustained without a present manifestation of injury.  All four states follow the modern trend and precedent set by other jurisdictions in refusing to recognize medical monitoring without a showing of injury.  *See* La. Civil Code Article 2315; *see also Henry v. Dow*, 701 N.W.2d 684, 691-92 (Mich. 2005) (reasoning it was for the Michigan Legislature, not the court, to decide whether to

allow a cause of action for medical monitoring absent physical injury; a cause of action based on exposure would create a potentially limitless pool of plaintiffs; and there would be a huge burden on court finance and employees that would stem from administering a medical monitoring trust fund); *Badillo v. Am. Brands*, 16 P.3d 435, 441 (Nev. 2001) (holding that Nevada common law does not recognize a cause of action for medical monitoring); *Wood v. Weyth-Ayerst Labs,* 82 S.W.3d 849, 856-57 (Ky. 2002) (holding that without a showing of present physical injury, cause of action for negligence has yet to accrue); *Hinton v. Monsato,* 813 So. 2d 827, 831 (Ala. 2001), discussed *infra.*

Here, Plaintiffs allege generally that their damages include "past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, [and] past and future reasonable and necessary medical expenses."  Admin. Master Compl. at p. 74.  Plaintiffs allege that the formaldehyde levels "have" caused the Plaintiffs to suffer damages, but do not state what injuries the formaldehyde actually caused any of the named plaintiffs.  *Id.* ¶¶ 95, 153, 175.  These allegations are broad enough that Plaintiffs could be seeking medical monitoring costs for only alleged *future* injuries.  Critically, in alleging that class certification is appropriate, Plaintiffs allege that there is a need for medical monitoring because of an "increased risk of contracting a . . . disease" because of the alleged exposure to formaldehyde.[15]  *Id.*

---

[15]   Paragraph 91 of the Administrative Master Complaint states:

> Class certification is also appropriate for the reasonable costs of medical monitoring for all class members under a court-supervised medical monitoring fund.  This action may be properly maintained as a class action for all necessary and appropriate final injunctive relief and/or corresponding declaratory relief for the following, non-exclusive reasons:
>
> a.   The class members have had significant exposure to a known and proven hazardous substance;
>
> b.   As a result of this exposure, members suffer a significantly increased risk of contracting a serious latent disease(s);
>
> c.   Class members' risk of contracting a serious latent disease(s) is great than (1) the risk of contracting the same disease had they not been exposed and (2) the chances of members of the general non-exposed public of developing a disease(s);
>
> d.   A monitoring procedure exists that can make the early detection of any serious latent disease(s) if possible;
>
> e.   The monitoring procedures are prescribed by medical professionals and such monitoring is reasonably necessary for early detection and treatment;
>
> f.   The increased risk of disease(s) from exposure warrants medical monitoring beyond that which an individual would normally pursue;

¶ 91.  What is missing from this allegation is an assertion that medical monitoring is necessary because of a *present* disease or condition of the class members.  No plaintiff named in the Administrative Master Complaint has identified specifically any present injury.

    **A.**    **Louisiana:  From the facts alleged in Plaintiffs' Complaint, medical monitoring claims are not permitted as a matter of law.**

Plaintiffs' ability to obtain medical testing and monitoring under Louisiana law is governed by Louisiana Civil Code article 2315.  Plaintiffs' ability to recover medical monitoring costs as an element of damages was severely limited as part of the sweeping reform to Louisiana's civilian legal tradition beginning in 1996.  Civil Code article 2315 was amended effective July 9, 1999 to overrule Louisiana Supreme Court precedent and exclude as an element of damages "costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a *manifest physical or mental injury of disease*." La. Civ. Code art. 2315(B) (emphasis added); *see also Abney v. Exxon Corp.*, 755 So.2d 283 (La. App. 1 Cir. 1999).

    **B.**    **Mississippi:  From the facts alleged in Plaintiffs' Complaint, medical monitoring claims are not permitted as a matter of law.**

Mississippi has never recognized a cause of action for medical monitoring as sought by Plaintiffs here.  Indeed, recently, the Fifth Circuit was faced with the exact issue of whether Mississippi recognizes a claim for medical monitoring without the manifestation of a specific present physical injury.  *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809 (5th Cir. 2006).  The Supreme Court of Mississippi responded to a certified question from the Fifth Circuit, stating that "it would be contrary to current Mississippi law to recognize a claim for medical monitoring allowing a plaintiff to recover medical monitoring costs for mere exposure to a harmful substance without

---

    g.    Medical benefits are gained through early detection of disease(s); and,

    h.    But for all defendants' action or inaction, the members would not have incurred the additional cost of medical monitoring and treatment resulting from exposure to formaldehyde.

proof of current physical or emotional injury from that exposure." *Paz v. Brush Engineered Materials, Inc.,* 949 So. 2d 1, 5-6 (Miss. 2007).

Accordingly, since there has been only a bare assertion that Plaintiffs have suffered some unidentified damage, including possibly only alleged future damages, related to exposure to formaldehyde in the trailers manufactured by Manufacturing Defendants, the motion to dismiss should be granted as a matter of law.

> **C.    Alabama: From the facts alleged in Plaintiffs' Complaint, medical monitoring claims are not permitted as a matter of law.**

In recognition of Alabama's long-standing tort principles requiring a physical injury, Alabama has refused to recognize medical monitoring as a remedy without evidence of a present physical injury.  Under Alabama law, Plaintiffs cannot recover in tort without a present manifestation of a physical injury.  *Hinton v. Monsanto Co.*, 813 So.2d 827, 829 (Ala. 2001).  In *Hinton*, the putative class members sought costs for medical monitoring after alleging that class members had been exposed to harmful chemicals that had been released into the environment by the defendant.  *Id.* at 828.  However, the proposed class members did not allege that they sustained a physical injury or illness as a result of their exposure to the harmful chemicals.  *Id.*  Instead, the plaintiff-class members claimed that their injury consisted of the potential for later harmful health effects.  *See id.*  The court held that Alabama tort public policy dictates that mere concern that a product may potentially later cause physical harm does not constitute an "injury."  *Id.* at 829.  Thus, the *Hinton* court held that without evidence of actual injury, the plaintiffs could not recover damages for health monitoring to detect whether the plaintiffs develop an injury in the future.  *Id.*

Like the plaintiffs in *Hinton*, Plaintiffs have not alleged any specific present injury or physical manifestations of harm from the alleged formaldehyde exposure.  At best, Plaintiffs have presented nothing more than a bare assertion that they have suffered some injury.  *See* Admin. Master Compl. ¶¶ 95, 153, 175.  Without an allegation of a specific physical injury, Plaintiffs are

precluded from recovering for medical monitoring under Alabama tort law.  *See Twombly*, 127 S.Ct. at 1965 ("A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do.").  As a result, the Alabama Plaintiffs fail to state a claim for medical monitoring upon which relief can be granted.

> **D.    Texas:  From the facts alleged in Plaintiffs' Complaint, medical monitoring claims are not permitted as a matter of law.**

Although exhaustive research has failed to find a single reported Texas appellate decision addressing the issue of whether a plaintiff can recover for medical monitoring in the absence of a present manifestation of injury, the United States District Court for the Western District of Texas, applying existing Texas law, has recently refused to recognize recovery for medical monitoring without injury.  *Norwood v. Raytheon Co.*, 414 F. Supp. 2d 659, 668-69 (W.D. Tex. 2006).  Notably, the *Norwood* court enumerated several reasons why Texas law precludes recovery for medical monitoring: (1) Texas public policy precludes a plaintiff from seeking recovery for the mere fear of future injury without actual manifestation of an illness; (2) Texas courts would likely follow the modern trend, as well as nearby jurisdictions in rejecting such claims for medical monitoring; (3) a federal court cannot create a new state cause of action.  *Id.*

In *Norwood*, the plaintiffs sought class certification on behalf of radar operators who allegedly had been exposed to radiation but had not yet been affected with an illness resulting from such exposure.  *Id.* at 661.  The plaintiffs sought relief in the form of a fund to finance medical monitoring and surveillance necessary to protect the plaintiffs from an increased risk of harm and disease.  *Id.* at 661-62.  In granting the defendants' motion to dismiss the plaintiffs' medical monitoring claim, the court looked to a Texas Supreme Court case in which the court had rejected a claim for mental anguish for increased likelihood of injury resulting from asbestos exposure.  *Id.* at 664 (citing *Temple-Inland Forest Prods. Corp. v. Carter*, 993 S.W.2d 88, 93 (Tex. 1999)).  Texas

courts have held that a plaintiff cannot recover for fear of future illness without demonstrating a

present injury as a matter of public policy. *Temple-Inland*, 993 S.W.2d at 93. Specifically, the

absence of a present physical injury "make[s] it very difficult for judges and juries to evaluate which

exposure claims are serious and which are not." *Id.* Also, the absence of physical injury leads to

unpredictable liability. Finally, allowing recovery absent physical injury would result in an influx of

claims that would burden the legal system's limited resources. *Id.*

Moreover, the *Norwood* court noted the trend in other jurisdictions in rejecting medical

monitoring claims absent the manifestation of an injury. *Norwood,* 414 F. Supp. 2d at 666-67. The

rejection of claims for medical monitoring without evidence of a physical injury by other

jurisdictions further bolsters the position that the Texas Supreme Court would follow the trend of

rejecting such claims. Lastly, the *Norwood* court held that recognizing a cause of action for medical

monitoring -- an action that has not been recognized by a Texas court -- would constitute an

improper innovation of state law. *Id.* The court held that Fifth Circuit law precludes a court from

creating a new cause of action. *Id.* Accordingly, the court dismissed the plaintiffs' claims for

medical monitoring and held that a Texas Supreme Court would not likely adopt a claim for medical

monitoring. *Id.* at 668. Likewise, this Court should not permit this claim to go forward and should

grant the motion to dismiss.

In summary, Plaintiffs cannot recover for medical monitoring under the laws of Louisiana,

Alabama, Mississippi, or Texas. Plaintiffs' Administrative Master Complaint lacks sufficient factual

allegations to support an absolutely essential element to a claim for medical monitoring: a manifest

physical or mental injury or disease resulting from formaldehyde exposure. Plaintiffs' bare assertion

that they have suffered an unspecified injury does not meet the pleading requirements to survive a

motion to dismiss. Rather, Plaintiffs have provided merely the "formulaic recitation of the

elements" that the Supreme Court has found insufficient. *Twombly*, 127 S. Ct. at 1965. Thus,

Plaintiffs' claims for medical monitoring should be dismissed.

## CONCLUSION

As Manufacturing Defendants have established, the following causes of action must be dismissed as a matter of law:

    (1)    Breach of Express Warranty for Property Damage and Personal Injury (Alabama, Mississippi, Texas, and Louisiana);

    (2)    Breach of Implied Warranty of Merchantability for Property Damage (Alabama, Mississippi, and Texas);

    (3)    Breach of Implied Warranty for Fitness for a Particular Purpose for Property Damage and Personal Injury (Alabama, Mississippi, and Texas);

    (4)    All claims barred by the Economic Loss Doctrine (Alabama, Mississippi, Texas, and Louisiana);

    (5)    Medical Monitoring (Louisiana, Alabama, Mississippi, and Texas);

Alternatively, if the Court does not dismiss those claims connecting a particular Plaintiff to a particular Manufacturing Defendant, the Court should order Plaintiffs to amend their pleadings under Rule 12(e) to provide a more definite statement.

                    Respectfully submitted:

                    /s/ Andrew D. Weinstock
                    ANDREW D. WEINSTOCK #18495
                    JOSEPH G. GLASS #25397
                    **DUPLASS, ZWAIN, BOURGEOIS,**
                    **PFISTER & WEINSTOCK**
                    3838 N. Causeway Boulevard, Suite 2900
                    Metairie, Louisiana 70002
                    Telephone: (504) 832-3700
                    Fax: (504) 837-3119
                    andreww@duplass.com
                    *DEFENSE LIAISON COUNSEL*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has this date been served on all counsel of record in this proceeding by:

( )    Hand Delivery             ( )    Prepaid U.S. Mail

( )    Facsimile                   ( )    Federal Express

(XX)   CM/ECF

New Orleans, Louisiana this 24th day of November, 2008.

/s/ Andrew D. Weinstock
ANDREW D. WEINSTOCK