**EXHIBIT 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | ) | MDL NO. 07-1873 |
| FORMALDEHYDE PRODUCT | ) | |
| LIABILITY LITIGATION | ) | SECTION "N-4" |
| | ) | |
| | ) | JUDGE ENGELHARDT |
| | ) | |
| THIS DOCUMENT IS RELATED TO | ) | MAG. JUDGE ROBY |
| THE ADMINISTRATIVE MASTER | ) | |
| COMPLAINT | ) | |

## AFFIDAVIT OF SUNRAY RV, LLC AND GILES INDUSTRIES, INC.

STATE OF TENNESSEE            )

COUNTY OF CLAIBORNE        )

Before me, the undersigned authority, in and for said County and State, this day personally appeared Alex England who, being first duly sworn, deposes and says as follows:

1.    My name is Alex England.

2.    I am a resident of the State of Tennessee, am over 21 years of age, am competent to give this affidavit and have personal knowledge of the matters herein.

3.    I am the Accounts Receivable Manager for SunRay RV, LLC and am the Shipping Manager for Giles Industries, Inc.

4.    In gathering the information contained in this Affidavit, I have personally reviewed the books and records of SunRay RV, LLC and Giles Industries, Inc. and affirm that the exhibits attached hereto are true and correct copies of reports created by those companies as they are kept in the ordinary course of business.

01635134.1

5.    Records show that a total of 355 travel trailers were manufactured under the trade name of SunRay and were sold to FEMA for Hurricanes Rita and Katrina.  All of these travel trailers are listed by VIN number, date of manufacture and date of sale on the exhibit hereto as Exhibit A.

6.    All of these units were manufactured, sold and shipped to FEMA prior to March 4, 2006.

7.    Records show that a total of 525 manufactured homes were manufactured under the trade name of Giles and were sold to FEMA for Hurricanes Rita and Katrina.  All of these manufactured homes are listed by VIN number, date of manufacture and date of sale on the exhibit hereto as Exhibit B.

8.    All of these units were manufactured, sold and shipped to FEMA prior to February 8, 2006.

Further affiant sayeth not.

Dated this the 16th day of May, 2008.

_____
Alex England

STATE OF TENNESSEE
COUNTY OF CLAIBORNE

Personally appeared the above-named Alex England and made oath that the foregoing statements made by him are true to the best of his knowledge and he believes this information to be true.

Sworn to and subscribed before me, this the 16 day May, 2008.

_____
Notary Public
My Commission Expires: _____

01635134.1

**Exhibit A**

| SERIAL # | INVOICE # | INV DATE | SHIP DATE | MODEL | FORMULA | VIN # | MAUFG DATE |
|---|---|---|---|---|---|---|---|
| FEMA | | | | | | | |
| 274 | 754 | 10/5/2004 | 10/5/2004 | 30SBH | 15,400.00 | 5L0RE30285T000274 | 9/30/2004 |
| 275 | 755 | 10/5/2004 | 10/5/2004 | 30SBH | 15,400.00 | 5L0RE302X5T000275 | 9/30/2004 |
| 276 | 758 | 10/5/2004 | 10/5/2004 | 30SBH | 15,400.00 | 5L0RE30215T000276 | 9/30/2004 |
| 259 | 757 | 10/5/2004 | 10/5/2004 | 30SBH | 15,400.00 | 5L0RE30215T000259 | 9/30/2004 |
| 260 | 753 | 10/5/2004 | 10/5/2004 | 30SBH | 15,400.00 | 5L0RE30285T000260 | 9/30/2004 |
| 136 | 751 | 10/5/2004 | 10/5/2004 | 30SBH | 15,400.00 | 5L0RE30275T000136 | 9/30/2004 |
| 137 | 752 | 10/5/2004 | 10/5/2004 | 30SBH | 15,400.00 | 5L0RE30295T000137 | 9/30/2004 |
| 261 | 759 | 10/5/2004 | 10/5/2004 | 30SBH | 15,400.00 | 5L0RE302X5T000261 | 9/30/2004 |
| 262 | 760 | 10/5/2004 | 10/5/2004 | 30SBH | 15,400.00 | 5L0RE30215T000262 | 9/30/2004 |
| 154 | 756 | 10/5/2004 | 10/5/2004 | 30SBH | 15,400.00 | 5L0RE30295T000154 | 9/30/2004 |
| 155 | 761 | 10/5/2004 | 10/5/2004 | 30SBH | 15,400.00 | 5L0RE30205T000155 | 9/30/2004 |
| 225 | 768 | 10/6/2004 | 10/6/2004 | 28BH | 12,300.00 | 5L0RS28275T000225 | 9/30/2004 |
| 246 | 764 | 10/6/2004 | 10/6/2004 | 25RLS | 15,700.00 | 5L0RE28255T000246 | 9/30/2004 |
| 245 | 763 | 10/6/2004 | 10/6/2004 | 25RLS | 15,700.00 | 5L0RE28235T000245 | 9/30/2004 |
| 243 | 762 | 10/6/2004 | 10/6/2004 | 25RLS | 15,700.00 | 5L0RE282X5T000243 | 9/30/2004 |
| 268 | 765 | 10/6/2004 | 10/6/2004 | 25RLS | 15,700.00 | 5L0RE28245T000268 | 9/30/2004 |
| 269 | 766 | 10/6/2004 | 10/6/2004 | 25RLS | 15,700.00 | 5L0RE28265T000269 | 9/30/2004 |
| 270 | 767 | 10/6/2004 | 10/6/2004 | 25RLS | 15,700.00 | 5L0RE28225T000270 | 9/30/2004 |
| 271 | 773 | 10/6/2004 | 10/6/2004 | 28BH | 12,300.00 | 5L0RS28235T000271 | 9/30/2004 |
| 272 | 774 | 10/6/2004 | 10/6/2004 | 28BH | 12,300.00 | 5L0RS28255T000272 | 9/30/2004 |
| 229 | 775 | 10/6/2004 | 10/6/2004 | 28BH | 12,300.00 | 5L0RS28245T000229 | 9/30/2004 |
| 230 | 771 | 10/6/2004 | 10/6/2004 | 28BH | 12,300.00 | 5L0RS28205T000230 | 9/30/2004 |
| 228 | 770 | 10/6/2004 | 10/6/2004 | 28BH | 12,300.00 | 5L0RS28225T000228 | 9/30/2004 |
| 227 | 769 | 10/6/2004 | 10/6/2004 | 28BH | 12,300.00 | 5L0RS28205T000227 | 9/30/2004 |
| 231 | 772 | 10/6/2004 | 10/6/2004 | 28BH | 12,300.00 | 5L0RS28225T000231 | 9/30/2004 |
| 301 | 796 | 11/5/2004 | 11/5/2004 | 30SBH | 15,400.00 | 5L0RE30275T000301 | 10/22/2004 |
| 304 | 798 | 11/5/2004 | 11/5/2004 | 30SBH | 15,400.00 | 5L0RE30225T000304 | 10/27/2004 |
| 305 | 799 | 11/5/2004 | 11/5/2004 | 30SBH | 15,400.00 | 5L0RE30245T000305 | 10/27/2004 |
| 308 | 800 | 11/5/2004 | 11/5/2004 | 30SBH | 15,400.00 | 5L0RE302X5T000308 | 11/1/2004 |
| 309 | 801 | 11/5/2004 | 11/5/2004 | 30SBH | 15,400.00 | 5L0RE30215T000309 | 11/2/2004 |
| 89 | 765607 | 11/5/2004 | 11/5/2004 | 27SQ | 14,800.00 | 5L0RE27225T000089 | 4/4/2004 |
| 289 | 802 | 11/5/2004 | 11/5/2004 | 25RLS | 15,700.00 | 5L0RE28215T000289 | 10/13/2004 |
| 306 | 803 | 11/5/2004 | 11/5/2004 | 25RLS | 15,700.00 | 5L0RE28285T000306 | 10/28/2004 |
| 307 | 804 | 11/5/2004 | 11/5/2004 | 25RLS | 15,700.00 | 5L0RE282X5T000307 | 10/28/2004 |
| 310 | 805 | 11/5/2004 | 11/5/2004 | 25RLS | 15,700.00 | 5L0RE282X5T000310 | 11/2/2004 |
| 300 | 795 | 11/5/2004 | 11/5/2004 | 30SBH | 15,400.00 | 5L0RE30255T000300 | 10/22/2004 |
| 302 | 797 | 11/5/2004 | 11/5/2004 | 30SBH | 15,400.00 | 5L0RE30295T000302 | 10/26/2004 |
| 294 | 793 | 11/5/2004 | 11/5/2004 | 28BH | 12,300.00 | 5L0RS28245T000294 | 10/18/2004 |
| 284 | 790 | 11/5/2004 | 11/5/2004 | 28BH | 12,300.00 | 5L0RS28215T000284 | 9/30/2004 |
| 285 | 791 | 11/5/2004 | 11/5/2004 | 28BH | 12,300.00 | 5L0RS28235T000285 | 10/11/2004 |
| 286 | 792 | 11/5/2004 | 11/5/2004 | 28BH | 12,300.00 | 5L0RS28255T000286 | 10/12/2004 |
| 295 | 794 | 11/5/2004 | 11/5/2004 | 28BH | 12,300.00 | 5L0RS28265T000295 | 10/19/2004 |
| 145 | 784 | 11/5/2004 | 11/5/2004 | 27SQ | 14,800.00 | 5L0RE27285T000145 | 9/30/2004 |
| 311 | 806 | 11/5/2004 | 11/5/2004 | 25RLS | 15,700.00 | 5L0RE28215T000311 | 11/3/2004 |
| 147 | 786 | 11/5/2004 | 11/5/2004 | 27SQ | 14,800.00 | 5L0RE27215T000147 | 9/30/2004 |
| 291 | 789 | 11/5/2004 | 11/5/2004 | 27SQ | 14,800.00 | 5L0RE27285T000291 | 10/14/2004 |
| 290 | 788 | 11/5/2004 | 11/5/2004 | 27SQ | 14,800.00 | 5L0RE27265T000290 | 10/14/2004 |
| 174 | 787 | 11/5/2004 | 11/5/2004 | 27SQ | 14,800.00 | 5L0RE27245T000174 | 9/30/2004 |
| 146 | 785 | 11/5/2004 | 11/5/2004 | 27SQ | 14,800.00 | 5L0RE272X5T000146 | 9/30/2004 |
| 327 | 814 | 11/8/2004 | 11/8/2004 | 28BH | 12,300.00 | 5L0RS28245T000327 | 10/5/2004 |
| 326 | 813 | 11/8/2004 | 11/8/2004 | 27SQ | 14,800.00 | 5L0RE27215T000326 | 11/5/2004 |
| 216 | 812 | 11/8/2004 | 11/4/2004 | 25RLS | 15,700.00 | 5L0RE28275T000216 | 9/30/2004 |
| 608 | 1154 | 9/15/2005 | 9/15/2005 | 30SBH LE | 15,720.00 | 5L0RE30296T000608 | 9/9/2005 |
| 609 | 1155 | 9/15/2005 | 9/15/2005 | 30SBH LE | 15,720.00 | 5L0RE30208T000609 | 9/10/2005 |
| 610 | 1156 | 9/15/2005 | 9/15/2005 | 30SBH LE | 15,720.00 | 5L0RE30276T000610 | 9/12/2005 |
| 611 | 1157 | 9/15/2005 | 9/15/2005 | 30SBH LE | 15,720.00 | 5L0RE30296T000611 | 9/12/2005 |
| 612 | 1158 | 9/15/2005 | 9/15/2005 | 30SBH LE | 15,720.00 | 5L0RE30208T000612 | 9/13/2005 |
| 613 | 1159 | 9/15/2005 | 9/15/2005 | 30SBH LE | 15,720.00 | 5L0RE30226T000613 | 9/13/2005 |
| 616 | 1160 | 9/15/2005 | 9/15/2005 | 28BH LE | 12,790.00 | 5L0RS28266T000616 | 9/14/2005 |
| 617 | 1161 | 9/15/2005 | 9/15/2005 | 28BH LE | 12,790.00 | 5L0RS28206T000617 | 9/14/2005 |
| 606 | 1153 | 9/15/2005 | 9/15/2005 | 30SBH XL | 15,720.00 | 5L0RE30256T000606 | 9/8/2005 |

**WHITE MOUNTAIN RV**

| | | | | | | |
|---|---|---|---|---|---|---|
| 316 | 520 | 12/3/2004 | 12/3/2004 | 25RLS XL | 16,235.00 | 5L0RE28205T000316 | 11/9/2004 |

**TRUCK MAN RV CENTER**

| | | | | | | |
|---|---|---|---|---|---|---|
| 597 | 1114 | 8/31/2005 | 9/15/2005 | 28BH LE | 12,290.00 | 5L0RS28298T000597 | 8/31/2005 |
| 594 | 1113 | 8/31/2005 | 9/13/2005 | 28BH LE | 12,640.00 | 5L0RS28236T000594 | 8/29/2005 |
| 587 | 1112 | 8/31/2005 | 9/15/2005 | 28BH LE | 12,290.00 | 5L0RS28266T000587 | 8/23/2005 |
| 586 | 1111 | 8/31/2005 | 9/15/2005 | 28BH LE | 12,290.00 | 5L0RS28246T000586 | 8/22/2005 |
| 579 | 1110 | 8/31/2005 | 9/14/2005 | 28BH LE | 12,290.00 | 5L0RS28276T000579 | 8/15/2005 |
| 577 | 1109 | 8/31/2005 | 9/14/2005 | 28BH LE | 12,290.00 | 5L0RS28236T000577 | 8/12/2005 |
| 574 | 1108 | 8/31/2005 | 9/13/2005 | 28BH LE | 12,290.00 | 5L0RS28286T000574 | 8/9/2005 |
| 524 | 1106 | 8/31/2005 | 9/15/2005 | 27SQ LE | 14,780.00 | 5L0RS27236T000524 | 6/21/2005 |
| 620 | 1163 | 9/16/2005 | 9/16/2005 | 28BH LE | 12,290.00 | 5L0RS28206T000620 | 9/18/2005 |
| 619 | 1162 | 9/16/2005 | 9/16/2005 | 28BH LE | 12,290.00 | 5L0RS28246T000619 | 9/15/2005 |
| 621 | 1164 | 9/17/2005 | 9/17/2005 | 28BH LE | 12,290.00 | 5L0RS28226T000621 | 9/16/2006 |
| 626 | 1170 | 9/21/2005 | 9/21/2005 | 28BH LE | 12,290.00 | 5L0RS28216T000626 | 9/20/2005 |
| 627 | 1171 | 9/21/2005 | 9/26/2005 | 28BH LE | 12,290.00 | 5L0RS28256T000627 | 9/20/2005 |
| 631 | 1175 | 9/23/2005 | 9/26/2005 | 28BH LE | 12,290.00 | 5L0RS28256T000631 | 9/23/2005 |
| 632 | 1176 | 9/23/2005 | 9/30/2005 | 28BH LE | 12,260.00 | 5L0RS28276T000632 | 9/23/2005 |
| 628 | 1173 | 9/23/2005 | 9/26/2005 | 28BH LE | 12,290.00 | 5L0RS28256T000628 | 9/21/2005 |
| 635 | 1179 | 9/26/2005 | 9/26/2005 | 28BH LE | 12,290.00 | 5L0RS28256T000635 | 9/24/2005 |
| 638 | 1182 | 9/27/2005 | 9/27/2005 | 30SBH LE | 15,220.00 | 5L0RE30276T000638 | 9/27/2005 |
| 649 | 1194 | 9/30/2005 | 10/4/2005 | 28BH VP | 11,640.00 | 5L0RS28226T000649 | 9/30/2005 |
| 646 | 1191 | 9/30/2005 | 9/30/2005 | 25RLS VP | 14,815.00 | 5L0RE28266T000646 | 9/30/2005 |
| 647 | 1192 | 9/30/2005 | 10/4/2005 | 25RLS VP | 14,815.00 | 5L0RE282X6T000647 | 9/30/2005 |
| 648 | 1193 | 9/30/2005 | 10/4/2005 | 28BH VP | 11,640.00 | 5L0RS28206T000648 | 9/30/2005 |
| 650 | 1195 | 10/4/2005 | 10/4/2005 | 28BH VP | 11,640.00 | 5L0RS28283T000650 | 10/3/2005 |
| 654 | 1200 | 10/5/2005 | 10/5/2005 | 28BH VP | 11,640.00 | 5L0RS28266T000654 | 10/4/2005 |
| 665 | 1203 | 10/10/2005 | 10/11/2005 | 28BH VP | 11,640.00 | 5L0RS28208T000665 | 10/8/2005 |
| 666 | 1204 | 10/10/2005 | 10/11/2005 | 28BH VP | 11,640.00 | 5L0RS28266T000666 | 10/8/2005 |
| 667 | 1205 | 10/10/2005 | 10/10/2005 | 28BH VP | 11,640.00 | 5L0RS28246T000667 | 10/8/2005 |
| 671 | 1212 | 10/11/2005 | 10/11/2005 | 28BH VP | 11,640.00 | 5L0RS28266T000671 | 10/10/2005 |
| 670 | 1211 | 10/11/2005 | 10/11/2005 | 28BH VP | 11,640.00 | 5L0RS28246T000670 | 10/10/2005 |
| 668 | 1208 | 10/11/2005 | 10/11/2005 | 28BH VP | 11,640.00 | 5L0RS28268T000668 | 10/10/2005 |
| 669 | 1209 | 10/11/2005 | 10/11/2005 | 28BH VP | 11,640.00 | 5L0RS28286T000669 | 10/10/2005 |
| 672 | 1213 | 10/12/2005 | 10/12/2005 | 28BH VP | 11,640.00 | 5L0RS28236T000672 | 10/11/2005 |
| 673 | 1214 | 10/12/2005 | 10/12/2005 | 28BH VP | 11,640.00 | 5L0RS282X6T000673 | 10/11/2005 |
| 674 | 1215 | 10/12/2005 | 10/12/2005 | 28BH VP | 11,640.00 | 5L0RS28216T000674 | 10/11/2005 |
| 675 | 1216 | 10/12/2005 | 10/12/2005 | 28BH VP | 11,640.00 | 5L0RS28236T000675 | 10/12/2005 |
| 677 | 1218 | 10/12/2005 | 10/12/2005 | 28BH VP | 11,640.00 | 5L0RS28276T000677 | 10/12/2005 |
| 678 | 1225 | 10/17/2005 | 10/17/2005 | 28BH VP | 11,640.00 | 5L0RS28296T000678 | 10/12/2005 |
| 721 | 1266 | 10/28/2005 | 11/1/2005 | 28BH VP | 11,640.00 | 5L0RS28266T000721 | 10/28/2005 |
| 720 | 1265 | 10/28/2005 | 11/1/2005 | 28BH VP | 11,640.00 | 5L0RS28246T000720 | 10/28/2005 |
| 719 | 1264 | 10/28/2005 | 11/1/2005 | 28BH VP | 11,640.00 | 5L0RS28286T000719 | 10/28/2005 |
| 718 | 1263 | 10/28/2005 | 11/1/2005 | 28BH VP | 11,640.00 | 5L0RS28266T000718 | 10/28/2005 |
| 717 | 1262 | 10/28/2005 | 11/1/2005 | 28BH VP | 11,640.00 | 5L0RS28217T000717 | 10/28/2005 |
| 716 | 1261 | 10/28/2005 | 11/1/2005 | 28BH VP | 11,640.00 | 5L0RS28228T000716 | 10/28/2005 |
| 714 | 1260 | 10/28/2005 | 11/1/2005 | 28BH VP | 11,640.00 | 5L0RS28296T000714 | 10/27/2005 |
| 712 | 1258 | 10/28/2005 | 11/1/2005 | 28BH VP | 11,640.00 | 5L0RS28256T000712 | 10/26/2005 |
| 711 | 1257 | 10/28/2005 | 11/1/2005 | 28BH VP | 11,640.00 | 5L0RS28236T000711 | 10/26/2005 |
| 707 | 1256 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS28216T000707 | 10/25/2005 |
| 706 | 1243 | 10/28/2005 | 10/29/2005 | 28BH VP | 11,640.00 | 5L0RS282X6T000706 | 10/25/2005 |
| 703 | 1255 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS28246T000703 | 10/22/2005 |
| 713 | 1259 | 10/28/2005 | 11/1/2005 | 28BH VP | 11,640.00 | 5L0RS28276T000713 | 10/22/2005 |
| 699 | 1242 | 10/28/2005 | 10/28/2005 | 28BH VP | 11,640.00 | 5L0RS28266T000699 | 10/10/2005 |
| 698 | 1253 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS28246T000698 | 10/20/2005 |
| 697 | 1252 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS28226T000697 | 10/20/2005 |
| 696 | 1251 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS28206T000696 | 10/20/2005 |
| 695 | 1250 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS28296T000695 | 10/19/2005 |
| 693 | 1249 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS28256T000693 | 10/19/2005 |
| 702 | 1254 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS28226T000702 | 10/22/2005 |
| 692 | 1248 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS28236T000692 | 10/18/2005 |
| 691 | 1247 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS28216T000691 | 10/18/2005 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 690 | 1248 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS282X6T000690 | 10/18/2005 |
| 688 | 1245 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS28216T000688 | 10/17/2005 |
| 687 | 1244 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS282X6T000687 | 10/15/2005 |
| 686 | 1241 | 10/28/2005 | 10/29/2005 | 28BH VP | 11,640.00 | 5L0RS28286T000686 | 10/15/2005 |
| 685 | 1240 | 10/28/2005 | 10/31/2005 | 28BH VP | 11,640.00 | 5L0RS28206T000685 | 10/12/2005 |
| 679 | 1239 | 10/28/2005 | 10/29/2005 | 28BH VP | 11,640.00 | 5L0RS28206T000679 | 10/12/2005 |
| 724 | 1269 | 11/1/2005 | 11/1/2005 | 28BH VP | 11,640.00 | 5L0RS28216T000724 | 11/1/2005 |
| 722 | 1267 | 11/1/2005 | 11/1/2005 | 28BH VP | 11,640.00 | 5L0RS28286T000722 | 11/1/2005 |
| 723 | 1268 | 11/1/2005 | 11/1/2005 | 28BH VP | 11,640.00 | 5L0RS282X6T000723 | 11/1/2005 |
| 729 | 1276 | 11/3/2005 | 11/3/2005 | 28BH VP | 11,640.00 | 5L0RS282X6T000729 | 11/2/2005 |
| 730 | 1277 | 11/3/2005 | 11/4/2005 | 28BH VP | 11,640.00 | 5L0RS28276T000730 | 11/3/2005 |
| 732 | 1280 | 11/4/2005 | 11/4/2005 | 28BH VP | 11,640.00 | 5L0RS28206T000732 | 11/4/2005 |
| 733 | 1281 | 11/4/2005 | 11/4/2005 | 28BH VP | 11,640.00 | 5L0RS28266T000733 | 11/4/2005 |
| 734 | 1282 | 11/4/2005 | 11/4/2005 | 28BH VP | 11,640.00 | 5L0RS28246T000734 | 11/4/2005 |
| 735 | 1283 | 11/5/2005 | 11/5/2005 | 28BH VP | 11,640.00 | 5L0RS28266T000735 | 11/4/2005 |
| 738 | 1285 | 11/5/2005 | 11/5/2005 | 28BH VP | 11,640.00 | 5L0RS28216T000738 | 11/5/2005 |
| 746 | 1290 | 11/11/2005 | 11/11/2005 | 28BH VP | 11,640.00 | 5L0RS28206T000746 | 11/8/2005 |
| 747 | 1291 | 11/11/2005 | 11/11/2005 | 28BH VP | 11,640.00 | 5L0RS28226T000747 | 11/10/2005 |
| 748 | 1292 | 11/11/2005 | 11/11/2005 | 28BH VP | 11,640.00 | 5L0RS28248T000748 | 11/10/2005 |
| 749 | 1293 | 11/11/2005 | 11/11/2005 | 28BH VP | 11,640.00 | 5L0RS28266T000749 | 11/10/2005 |
| 750 | 1294 | 11/11/2005 | 11/11/2005 | 28BH VP | 11,640.00 | 5L0RS28226T000750 | 11/11/2005 |
| 751 | 1295 | 11/11/2005 | 11/11/2005 | 28BH VP | 11,640.00 | 5L0RS28248T000751 | 11/11/2005 |
| 752 | 1299 | 11/11/2005 | 11/11/2005 | 28BH VP | 11,640.00 | 5L0RS28266T000752 | 11/11/2005 |
| 758 | 1305 | 11/14/2005 | 11/14/2005 | 28BH VP | 11,640.00 | 5L0RS28276T000758 | 11/14/2005 |
| 757 | 1304 | 11/14/2005 | 11/14/2005 | 28BH VP | 11,640.00 | 5L0RS28256T000757 | 11/14/2005 |
| 754 | 1301 | 11/14/2005 | 11/14/2005 | 28BH VP | 11,640.00 | 5L0RS282X6T000754 | 11/12/2005 |
| 755 | 1302 | 11/14/2005 | 11/14/2005 | 28BH VP | 11,640.00 | 5L0RS28216T000755 | 11/12/2005 |
| 753 | 1300 | 11/14/2005 | 11/15/2005 | 28BH VP | 11,640.00 | 5L0RS28286T000753 | 11/11/2005 |
| 756 | 1303 | 11/14/2005 | 11/14/2005 | 28BH VP | 11,640.00 | 5L0RS28236T000756 | 11/12/2005 |
| 895 | 1453 | 1/25/2006 | 1/25/2006 | 28BH VP | 11,640.00 | 5L0RS28265T000895 | 1/12/2006 |
| 896 | 1451 | 1/25/2006 | 1/25/2006 | 28BH VP | 11,640.00 | 5L0RS28285T000896 | 1/12/2006 |
| 898 | 1455 | 1/25/2006 | 1/25/2006 | 28BH VP | 11,640.00 | 5L0RS28216T000898 | 1/13/2006 |
| 900 | 1456 | 1/25/2006 | 1/25/2006 | 28BH VP | 11,640.00 | 5L0RS28266T000900 | 1/13/2006 |
| 899 | 1469 | 1/30/2006 | 1/30/2005 | 28BH VP | 11,640.00 | 5L0RS28236T000899 | 1/13/2006 |
| 942 | 1485 | 1/31/2006 | 2/2/2006 | 28BH VP | 11,640.00 | 5L0RS28206T000942 | 1/31/2006 |
| 946 | 1490 | 1/31/2006 | 2/6/2006 | 28BH VP | 11,640.00 | 5L0RS28246T000946 | 1/31/2006 |
| 945 | 1489 | 1/31/2006 | 2/6/2006 | 28BH VP | 11,640.00 | 5L0RS28266T000945 | 1/31/2006 |
| 943 | 1486 | 1/31/2006 | 2/6/2006 | 28BH VP | 11,640.00 | 5L0RS28226T000943 | 1/31/2006 |
| 941 | 1484 | 1/31/2006 | 2/2/2006 | 28BH VP | 11,640.00 | 5L0RS28296T000941 | 1/31/2006 |
| 944 | 1488 | 1/31/2006 | 2/6/2006 | 28BH VP | 11,640.00 | 5L0RS28246T000944 | 1/31/2006 |
| 939 | 1482 | 1/31/2006 | 2/2/2006 | 28BH VP | 11,640.00 | 5L0RS28206T000939 | 1/31/2006 |
| 940 | 1483 | 1/31/2006 | 2/2/2006 | 28BH VP | 11,640.00 | 5L0RS28276T000940 | 1/31/2006 |
| 934 | 1494 | 1/31/2006 | 2/3/2006 | 28BH VP | 11,640.00 | 5L0RS28216T000934 | 1/30/2006 |
| 935 | 1495 | 1/31/2006 | 2/3/2006 | 28BH VP | 11,640.00 | 5L0RS28236T000935 | 1/30/2006 |
| 936 | 1479 | 1/31/2006 | 2/2/2006 | 28BH VP | 11,640.00 | 5L0RS28255T000936 | 1/30/2006 |
| 937 | 1480 | 1/31/2006 | 2/2/2006 | 28BH VP | 11,640.00 | 5L0RS28275T000937 | 1/30/2006 |
| 938 | 1481 | 1/31/2006 | 2/2/2006 | 28BH VP | 11,640.00 | 5L0RS28296T000938 | 1/31/2006 |
| 947 | 1491 | 2/4/2006 | 2/7/2006 | 28BH VP | 11,640.00 | 5L0RS282X6T000947 | 1/31/2006 |
| 948 | 1492 | 2/7/2006 | 2/7/2006 | 28BH VP | 11,640.00 | 5L0RS28216T000948 | 1/31/2006 |
| 949 | 1493 | 2/7/2006 | 2/7/2006 | 28BH VP | 11,640.00 | 5L0RS28236T000949 | 1/31/2006 |
| 950 | 1497 | 2/7/2006 | 2/9/2006 | 28BH VP | 11,640.00 | 5L0RS282X6T000950 | 1/31/2006 |
| 951 | 1498 | 2/7/2006 | 2/8/2006 | 28BH VP | 11,640.00 | 5L0RS28216T000951 | 1/31/2006 |
| 952 | 1499 | 2/7/2006 | 2/8/2006 | 28BH VP | 11,640.00 | 5L0RS28236T000952 | 1/31/2006 |
| 953 | 1502 | 2/9/2008 | 2/9/2006 | 28BH VP | 11,640.00 | 5L0RS28256T000953 | 1/31/2006 |
| 954 | 1503 | 2/9/2006 | 2/9/2006 | 28BH VP | 11,640.00 | 5L0RS28276T000954 | 2/6/2006 |
| 955 | 1504 | 2/9/2006 | 2/9/2006 | 28BH VP | 11,640.00 | 5L0RS28295T000955 | 2/6/2006 |
| 956 | 1505 | 2/9/2006 | 2/9/2006 | 28BH VP | 11,640.00 | 5L0RS28206T000956 | 2/8/2006 |
| 957 | 1506 | 2/9/2006 | 2/8/2006 | 28BH VP | 11,640.00 | 5L0RS28226T000957 | 2/7/2006 |
| 959 | 1507 | 2/9/2006 | 2/9/2006 | 28BH VP | 11,640.00 | 5L0RS28266T000959 | 2/7/2006 |
| 960 | 1508 | 2/9/2006 | 2/9/2006 | 28BH VP | 11,640.00 | 5L0RS28286T000960 | 2/7/2006 |
| 973 | 1521 | 2/10/2006 | 2/14/2006 | 28BH VP | 11,640.00 | 5L0RS28206T000973 | 2/13/2006 |
| 972 | 1520 | 2/10/2006 | 2/13/2006 | 28BH VP | 11,640.00 | 5L0RS28296T000972 | 2/10/2006 |
| 971 | 1519 | 2/10/2006 | 2/13/2006 | 28BH VP | 11,640.00 | 5L0RS28276T000971 | 2/10/2006 |
| 970 | 1518 | 2/10/2006 | 2/13/2006 | 28BH VP | 11,640.00 | 5L0RS28256T000970 | 2/10/2006 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 969 | 1517 | 2/10/2006 | 2/13/2006 | 28BH VP | 11,640.00 | 5LORS28286T000969 | 2/10/2006 |
| 968 | 1516 | 2/10/2006 | 2/13/2006 | 28BH VP | 11,640.00 | 5LORS28276T000968 | 2/9/2006 |
| 964 | 1513 | 2/10/2006 | 2/13/2006 | 28BH VP | 11,840.00 | 5LORS282X8T000964 | 2/3/2009 |
| 966 | 1515 | 2/10/2006 | 2/10/2006 | 28BH VP | 11,640.00 | 5LORS28238T000966 | 2/9/2006 |
| 965 | 1514 | 2/10/2006 | 2/13/2006 | 28BH VP | 11,640.00 | 5LORS28216T000965 | 2/9/2006 |
| 963 | 1512 | 2/10/2006 | 2/13/2006 | 28BH VP | 11,640.00 | 5LORS28266T000963 | 2/8/2006 |
| 962 | 1511 | 2/10/2006 | 2/13/2006 | 28BH VP | 11,640.00 | 5LORS28266T000962 | 2/8/2006 |
| 967 | 1509 | 2/10/2006 | 2/10/2006 | 28BH VP | 11,640.00 | 5LORS28256T000967 | 2/9/2006 |
| 961 | 1510 | 2/10/2006 | 2/10/2006 | 28BH VP | 11,640.00 | 5LORS28246T000961 | 2/7/2006 |
| 958 | 1525 | 2/15/2006 | 2/15/2006 | 28BH VP | 11,640.00 | 5LORS28246T000958 | 2/7/2006 |

**ETHRIDGE RV CENTER**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 739 | 1286 | 11/8/2005 | 11/8/2005 | 28BH VP | 11,640.00 | 5LORS28236T000739 | 11/5/2005 |
| 740 | 1287 | 11/8/2005 | 11/8/2005 | 28BH VP | 11,640.00 | 5LORS282X8T000740 | 11/7/2005 |
| 743 | 1288 | 11/8/2005 | 11/8/2005 | 28BH VP | 11,640.00 | 5LORS28258T000743 | 11/8/2005 |
| 744 | 1289 | 11/9/2005 | 11/9/2005 | 28BH VP | 11,640.00 | 5LORS28276T000744 | 11/8/2005 |
| 792 | 1313 | 11/30/2005 | 12/5/2005 | 25RLS LE | 15,490.00 | 5LORE28286T000792 | 12/1/2005 |
| 793 | 1314 | 12/1/2005 | 12/5/2005 | 30SSH LE | 14,990.00 | 5LORE30286T000793 | 12/1/2005 |
| 791 | 771 | 12/1/2005 | 12/5/2005 | 27SQ LE | 14,790.00 | 5LORE27246T000791 | 12/1/2005 |
| 784 | 1326 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28266T000784 | 11/22/2005 |
| 809 | 1325 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28298T000809 | 12/5/2005 |
| 808 | 1324 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28278T000808 | 12/2/2005 |
| 807 | 1323 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28256T000807 | 12/2/2005 |
| 806 | 1322 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28236T000806 | 12/2/2005 |
| 805 | 1321 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28216T000805 | 12/2/2005 |
| 804 | 1320 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS282X8T000804 | 12/1/2005 |
| 803 | 1319 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28288T000803 | 12/1/2005 |
| 799 | 1318 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS282X6T000799 | 12/1/2005 |
| 797 | 1317 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28266T000797 | 12/1/2005 |
| 795 | 1316 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28226T000795 | 12/1/2005 |
| 786 | 1327 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28216T000786 | 11/23/2005 |
| 782 | 1336 | 12/5/2005 | 12/6/2005 | 28BH VP | 11,640.00 | 5LORS28246T000782 | 11/22/2005 |
| 785 | 1332 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS282X8T000785 | 11/23/2005 |
| 772 | 1328 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28216T000772 | 11/1/2005 |
| 759 | 1333 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28296T000759 | 11/14/2005 |
| 760 | 1334 | 12/5/2005 | 12/6/2005 | 28BH VP | 11,640.00 | 5LORS28256T000760 | 11/14/2005 |
| 761 | 1335 | 12/5/2005 | 12/6/2005 | 28BH VP | 11,640.00 | 5LORS28276T000761 | 11/15/2005 |
| 776 | 1329 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28296T000776 | 11/19/2005 |
| 762 | 1330 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28296T000762 | 11/15/2005 |
| 774 | 1331 | 12/5/2005 | 12/5/2005 | 28BH VP | 11,640.00 | 5LORS28256T000774 | 11/19/2005 |
| 741 | 1339 | 12/6/2005 | 12/7/2005 | 28BH LE | 12,315.00 | 5LORS28216T000741 | 11/7/2005 |
| 742 | 1340 | 12/6/2005 | 12/7/2005 | 28BH LE | 12,315.00 | 5LORS28236T000742 | 11/8/2005 |
| 818 | 1364 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS282X6T000818 | 12/7/2005 |
| 817 | 1363 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28266T000817 | 12/7/2005 |
| 816 | 1362 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28266T000816 | 12/6/2005 |
| 815 | 1361 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28246T000815 | 12/6/2005 |
| 814 | 1360 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28226T000814 | 12/6/2005 |
| 813 | 1359 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28206T000813 | 12/6/2005 |
| 765 | 1341 | 12/6/2005 | 12/6/2005 | 28BH VP | 11,640.00 | 5LORS28246T000765 | 11/16/2005 |
| 766 | 1342 | 12/6/2005 | 12/6/2005 | 28BH VP | 11,640.00 | 5LORS28266T000766 | 11/17/2005 |
| 767 | 1343 | 12/6/2005 | 12/6/2005 | 28BH VP | 11,640.00 | 5LORS28286T000767 | 11/17/2005 |
| 771 | 1365 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS282X6T000771 | 11/18/2005 |
| 780 | 1337 | 12/6/2005 | 12/6/2005 | 28BH VP | 11,640.00 | 5LORS28206T000780 | 11/21/2005 |
| 773 | 1344 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28236T000773 | 11/21/2005 |
| 802 | 1358 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28266T000802 | 12/1/2005 |
| 801 | 1357 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28246T000801 | 12/1/2005 |
| 800 | 1356 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28226T000800 | 12/1/2005 |
| 798 | 1355 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28286T000798 | 12/1/2005 |
| 775 | 1345 | 12/6/2005 | 12/6/2005 | 28BH VP | 11,640.00 | 5LORS28276T000775 | 11/18/2005 |
| 796 | 1354 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28246T000796 | 12/1/2005 |
| 794 | 1353 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28206T000794 | 12/1/2005 |
| 777 | 1346 | 12/6/2005 | 12/6/2005 | 28BH VP | 11,640.00 | 5LORS28206T000777 | 11/21/2005 |
| 789 | 1352 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28276T000789 | 12/1/2005 |
| 788 | 1351 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5LORS28256T000788 | 11/23/2005 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 787 | 1350 | 12/6/2005 | 12/10/2005 | 28BH VP | 11,640.00 | 5L0RS28236T000787 | 11/23/2005 |
| 778 | 1347 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5L0RS28226T000778 | 11/21/2005 |
| 779 | 1348 | 12/6/2005 | 12/7/2005 | 28BH VP | 11,640.00 | 5L0RS28246T000779 | 11/21/2005 |
| 783 | 1336 | 12/6/2005 | 12/6/2005 | 28BH VP | 11,640.00 | 5L0RS28266T000783 | 11/22/2005 |
| 781 | 1349 | 12/6/2005 | 12/6/2005 | 28BH VP | 11,640.00 | 5L0RS28226T000781 | 11/22/2005 |
| 770 | 1366 | 12/7/2005 | 12/7/2005 | 28BH LE | 12,315.00 | 5L0RS28286T000770 | 11/18/2005 |
| 825 | 1374 | 12/12/2005 | 12/12/2005 | 28BH VP | 11,640.00 | 5L0RS28276T000825 | 12/9/2005 |
| 824 | 1373 | 12/12/2005 | 12/12/2005 | 28BH VP | 11,640.00 | 5L0RS28226T000824 | 12/5/2005 |
| 823 | 1372 | 12/12/2005 | 12/12/2005 | 28BH VP | 11,640.00 | 5L0RS28236T000823 | 12/5/2005 |
| 821 | 1370 | 12/12/2005 | 12/12/2005 | 28BH VP | 11,640.00 | 5L0RS282X6T000821 | 12/5/2005 |
| 820 | 1369 | 12/12/2005 | 12/12/2005 | 28BH VP | 11,640.00 | 5L0RS28286T000820 | 12/7/2005 |
| 810 | 1367 | 12/12/2005 | 12/12/2005 | 28BH LE | 12,315.00 | 5L0RS28256T000810 | 12/5/2005 |
| 819 | 1368 | 12/12/2005 | 12/12/2005 | 28BH VP | 11,640.00 | 5L0RS28216T000819 | 12/7/2005 |
| 822 | 1371 | 12/12/2005 | 12/12/2005 | 28BH VP | 11,640.00 | 5L0RS28216T000822 | 12/8/2005 |
| 826 | 1375 | 12/13/2005 | 12/13/2005 | 28BH VP | 11,640.00 | 5L0RS28296T000826 | 12/9/2005 |
| 827 | 1376 | 12/13/2005 | 12/13/2005 | 28BH VP | 11,640.00 | 5L0RS28206T000827 | 12/9/2005 |
| 828 | 1377 | 12/13/2005 | 12/13/2005 | 28BH VP | 11,640.00 | 5L0RS28226T000828 | 12/9/2005 |
| 829 | 1378 | 12/13/2005 | 12/13/2005 | 28BH VP | 11,640.00 | 5L0RS28246T000829 | 12/12/2005 |
| 830 | 1379 | 12/13/2005 | 12/13/2005 | 28BH VP | 11,640.00 | 5L0RS28206T000830 | 12/12/2005 |
| 832 | 1380 | 12/13/2005 | 12/13/2005 | 28BH VP | 11,640.00 | 5L0RS28248T000832 | 12/12/2005 |
| 833 | 1381 | 12/13/2005 | 12/13/2005 | 28BH VP | 11,640.00 | 5L0RS28266T000833 | 12/12/2005 |
| 831 | 1383 | 12/14/2005 | 12/14/2005 | 28BH VP | 11,640.00 | 5L0RS28226T000831 | 12/12/2005 |
| 834 | 1384 | 12/14/2005 | 12/14/2005 | 28BH VP | 11,640.00 | 5L0RS28286T000834 | 12/13/2005 |
| 835 | 1385 | 12/14/2005 | 12/14/2005 | 28BH VP | 11,640.00 | 5L0RS282X6T000835 | 12/13/2005 |
| 836 | 1386 | 12/14/2005 | 12/14/2005 | 28BH VP | 11,640.00 | 5L0RS28216T000836 | 12/13/2005 |
| 846 | 1391 | 12/15/2005 | 12/16/2005 | 28BH VP | 11,640.00 | 5L0RS28246T000846 | 12/15/2005 |
| 845 | 1390 | 12/15/2005 | 12/15/2005 | 28BH VP | 11,640.00 | 5L0RS28228T000845 | 12/15/2005 |
| 843 | 1388 | 12/15/2005 | 12/15/2005 | 28BH VP | 11,640.00 | 5L0RS28296T000843 | 12/15/2005 |
| 844 | 1389 | 12/15/2005 | 12/15/2005 | 28BH VP | 11,640.00 | 5L0RS28206T000844 | 12/15/2005 |
| 847 | 1398 | 12/16/2005 | 12/16/2005 | 28BH VP | 11,640.00 | 5L0RS28268T000847 | 12/16/2005 |
| 848 | 1999 | 12/16/2005 | 12/16/2005 | 28BH VP | 11,640.00 | 5L0RS28286T000848 | 12/16/2005 |
| 840 | 1395 | 12/16/2005 | 12/16/2005 | 28BH VP | 11,640.00 | 5L0RS28236T000840 | 12/14/2005 |
| 841 | 1396 | 12/16/2005 | 12/16/2005 | 28BH VP | 11,640.00 | 5L0RS28256T000841 | 12/14/2005 |
| 839 | 1394 | 12/16/2005 | 12/16/2005 | 28BH VP | 11,640.00 | 5L0RS28276T000839 | 12/14/2005 |
| 838 | 1393 | 12/16/2005 | 12/16/2005 | 28BH VP | 11,640.00 | 5L0RS28258T000838 | 12/14/2005 |
| 837 | 1392 | 12/16/2005 | 12/16/2005 | 28BH VP | 11,640.00 | 5L0RS28238T000837 | 12/13/2005 |
| 842 | 1397 | 12/16/2005 | 12/19/2005 | 28BH VP | 11,640.00 | 5L0RS28276T000842 | 12/15/2005 |
| 849 | 1403 | 12/19/2005 | 12/19/2005 | 28BH VP | 11,640.00 | 5L0RS282X6T000849 | 12/16/2005 |
| 850 | 1404 | 12/19/2005 | 12/19/2005 | 28BH VP | 11,640.00 | 5L0RS28266T000850 | 12/16/2005 |
| 851 | 1405 | 12/19/2005 | 12/19/2005 | 28BH VP | 11,640.00 | 5L0RS28286T000851 | 12/19/2005 |
| 852 | 1406 | 12/19/2005 | 12/19/2005 | 28BH VP | 11,640.00 | 5L0RS282X5T000852 | 12/19/2005 |
| 859 | 1414 | 12/20/2005 | 12/20/2005 | 28BH VP | 11,640.00 | 5L0RS28228T000859 | 12/20/2005 |
| 857 | 1412 | 12/20/2005 | 12/20/2005 | 28BH VP | 11,640.00 | 5L0RS28296T000857 | 12/20/2005 |
| 858 | 1413 | 12/20/2005 | 12/21/2005 | 28BH VP | 11,640.00 | 5L0RS28206T000858 | 12/20/2005 |
| 855 | 1410 | 12/20/2005 | 12/20/2005 | 28BH VP | 11,640.00 | 5L0RS28256T000855 | 12/19/2005 |
| 854 | 1409 | 12/20/2005 | 12/20/2005 | 28BH VP | 11,640.00 | 5L0RS28236T000854 | 12/19/2005 |
| 853 | 1409 | 12/20/2005 | 12/20/2005 | 28BH VP | 11,640.00 | 5L0RS28216T000853 | 12/19/2005 |
| 856 | 1411 | 12/20/2005 | 12/20/2005 | 28BH VP | 11,640.00 | 5L0RS28276T000856 | 12/20/2005 |
| 860 | 1415 | 12/21/2005 | 12/21/2005 | 28BH VP | 11,640.00 | 5L0RS28296T000860 | 12/21/2005 |
| 861 | 1416 | 12/21/2005 | 12/21/2005 | 28BH VP | 11,640.00 | 5L0RS28206T000861 | 12/21/2005 |
| 862 | 1417 | 12/21/2005 | 12/21/2005 | 28BH VP | 11,640.00 | 5L0RS28228T000862 | 12/21/2005 |
| 867 | 782 | 12/22/2005 | 12/22/2005 | 28BH VP | 11,640.00 | 5L0RS28216T000867 | 12/22/2008 |
| 868 | 1423 | 12/22/2005 | 12/22/2005 | 28BH VP | 11,640.00 | 5L0RS28236T000868 | 12/22/2008 |
| 866 | 1421 | 12/22/2005 | 12/22/2005 | 28BH VP | 11,640.00 | 5L0RS282X6T000866 | 12/22/2008 |
| 865 | 1420 | 12/22/2005 | 12/22/2005 | 28BH VP | 11,640.00 | 5L0RS28286T000865 | 12/22/2008 |
| 863 | 779 | 12/22/2005 | 12/22/2005 | 28BH VP | 11,640.00 | 5L0RS28246T000863 | 12/21/2005 |
| 864 | 776 | 12/22/2005 | 12/22/2005 | 28BH VP | 12,140.00 | 5L0RS28266T000864 | 12/21/2005 |

ATCHAFALAYA RV

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 998 | 1539 | 2/22/2006 | 2/22/2006 | 28BH VP | 11,490.00 | 5L0RS28256T000998 | 2/22/2006 |
| 999 | 1540 | 2/22/2006 | 2/22/2006 | 28BH VP | 11,490.00 | 5L0RS28276T000999 | 2/22/2006 |
| 1000 | 1541 | 2/22/2006 | 2/22/2006 | 28BH VP | 11,490.00 | 5L0RS28288T001000 | 2/22/2006 |
| 1001 | 1542 | 2/22/2006 | 2/23/2006 | 28BH VP | 11,490.00 | 5L0RS282X5T001001 | 2/23/2006 |
| 1002 | 1543 | 2/23/2006 | 2/23/2006 | 28BH VP | 11,490.00 | 5L0RS28216T001002 | 2/23/2006 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 1003 | 1544 | 2/23/2006 | 2/23/2006 | 28BH VP | 11,490.00 5LQRS28236T001003 | 2/23/2006 |
| 1004 | 1545 | 2/23/2006 | 2/26/2006 | 28BH VP | 11,490.00 5LQRS28256T001004 | 2/23/2005 |
| 1005 | 1546 | 2/23/2006 | 2/24/2006 | 28BH VP | 11,490.00 5LQRS28276T001005 | 2/23/2006 |
| 1013 | 1556 | 2/24/2006 | 2/27/2006 | 28BH VP | 11,490.00 5LQRS28268T001013 | 2/25/2006 |
| 1011 | 1554 | 2/24/2006 | 2/27/2006 | 28BH VP | 11,490.00 5LQRS28226T001011 | 2/25/2006 |
| 1010 | 1553 | 2/24/2006 | 2/27/2006 | 29BH VP | 11,490.00 5LQRS28206T001010 | 2/24/2006 |
| 1012 | 1555 | 2/24/2006 | 2/27/2006 | 28BH VP | 11,490.00 5LQRS28246T001012 | 2/25/2006 |
| 1008 | 1551 | 2/24/2006 | 2/27/2006 | 28BH VP | 11,490.00 5LQRS28226T001008 | 2/24/2006 |
| 1007 | 1550 | 2/24/2006 | 2/24/2006 | 28BH VP | 11,490.00 5LQRS28206T001007 | 2/24/2006 |
| 1006 | 1549 | 2/24/2006 | 2/24/2006 | 28BH VP | 11,490.00 5LQRS28296T001006 | 2/24/2006 |
| 1009 | 1552 | 2/24/2006 | 2/25/2006 | 28BH VP | 11,490.00 5LQRS28246T001009 | 2/24/2006 |
| 1014 | 1557 | 2/27/2006 | 2/27/2006 | 28BH VP | 11,490.00 5LQRS28236T001014 | 2/27/2006 |
| 1015 | 1558 | 2/27/2006 | 2/27/2006 | 28BH VP | 11,490.00 5LQRS282X6T001015 | 2/27/2006 |
| 1016 | 1559 | 2/27/2006 | 2/27/2006 | 28BH VP | 11,490.00 5LQRS28216T001016 | 2/27/2006 |
| 1017 | 1560 | 2/27/2006 | 2/27/2006 | 28BH VP | 11,490.00 5LQRS28238T001017 | 2/27/2006 |
| 1018 | 1561 | 2/27/2006 | 2/27/2006 | 28BH VP | 11,490.00 5LQRS28256T001018 | 2/27/2006 |
| 1030 | 1576 | 2/28/2006 | 2/28/2006 | 28BH VP | 11,490.00 5LQRS28266T001030 | 2/28/2006 |
| 1037 | 1585 | 2/28/2006 | 3/3/2006 | 28BH VP | 11,490.00 5LQRS28298T001037 | 2/28/2006 |
| 1036 | 1584 | 2/28/2006 | 2/28/2006 | 28BH VP | 11,490.00 5LQRS28276T001036 | 2/28/2006 |
| 1035 | 1583 | 2/28/2006 | 3/3/2006 | 28BH VP | 11,490.00 5LQRS28256T001035 | 2/28/2006 |
| 1034 | 1580 | 2/28/2006 | 3/3/2006 | 28BH VP | 11,490.00 5LQRS28236T001034 | 2/28/2006 |
| 1033 | 1579 | 2/28/2006 | 3/3/2006 | 28BH VP | 11,490.00 5LQRS28216T001033 | 2/28/2006 |
| 1032 | 1578 | 2/28/2005 | 3/3/2006 | 28BH VP | 11,490.00 5LQRS282X6T001032 | 2/28/2006 |
| 1031 | 1577 | 2/28/2006 | 3/3/2006 | 28BH VP | 11,490.00 5LQRS28286T001031 | 2/28/2006 |
| 1029 | 1575 | 2/28/2006 | 3/3/2006 | 28BH VP | 11,490.00 5LQRS282X6T001029 | 2/28/2006 |
| 1027 | 1573 | 2/28/2006 | 3/3/2006 | 28BH VP | 11,490.00 5LQRS28266T001027 | 2/28/2006 |
| 1026 | 1571 | 2/28/2006 | 3/1/2006 | 28BH VP | 11,490.00 5LQRS28246T001026 | 2/28/2006 |
| 1025 | 1570 | 2/28/2006 | 3/1/2006 | 28BH VP | 11,490.00 5LQRS28226T001025 | 2/28/2006 |
| 1024 | 1567 | 2/28/2006 | 3/1/2006 | 28BH VP | 11,490.00 5LQRS28206T001024 | 2/28/2006 |
| 1023 | 1566 | 2/28/2006 | 2/28/2006 | 28BH VP | 11,490.00 5LQRS28296T001023 | 2/28/2006 |
| 1022 | 1565 | 2/28/2006 | 2/28/2006 | 28BH VP | 11,490.00 5LQRS28276T001022 | 2/28/2006 |
| 1021 | 1564 | 2/28/2006 | 2/28/2006 | 28BH VP | 11,490.00 5LQRS28256T001021 | 2/28/2006 |
| 1020 | 1563 | 2/28/2006 | 2/28/2006 | 28BH VP | 11,490.00 5LQRS28236T001020 | 2/28/2006 |
| 1019 | 1562 | 2/28/2006 | 2/28/2006 | 28BH VP | 11,490.00 5LQRS28276T001019 | 2/28/2006 |
| 1028 | 1574 | 2/28/2006 | 2/28/2006 | 28BH VP | 11,490.00 5LQRS28286T001028 | 2/28/2006 |

**Exhibit B**

| S/N | Inv # | Date mfr | Invoice date | Ship date | Model | Total | |
|-----|-------|----------|--------------|-----------|-------|-------|---|
| 6196 | 16294 | 10/26/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | 525 Units |
| 6203 | 16345 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6205 | 16346 | 10/26/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6206 | 16347 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6207 | 16348 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6208 | 16349 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6209 | 16350 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6210 | 16351 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6211 | 16352 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6212 | 16353 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6213 | 16354 | 10/29/2006 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6214 | 16355 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6215 | 16356 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6216 | 16357 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6217 | 16358 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6218 | 16359 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6219 | 16374 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6220 | 16375 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6221 | 16376 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6222 | 16377 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6223 | 16378 | 10/26/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6224 | 16379 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6225 | 16380 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6226 | 16381 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6227 | 16382 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6228 | 16383 | 10/26/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6229 | 16384 | 10/26/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6230 | 16385 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6231 | 16386 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6232 | 16389 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6233 | 16390 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6234 | 16391 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6235 | 16392 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6236 | 16393 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6237 | 16394 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6238 | 16395 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6239 | 16396 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6240 | 16397 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6241 | 16398 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6242 | 16399 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6243 | 16400 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6244 | 16401 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6245 | 16402 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6246 | 16403 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6247 | 16404 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6248 | 16405 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6249 | 16406 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6250 | 16407 | 10/29/2005 | 10/31/2005 | 10/31/2005 | FR60 | 27695 | |
| 6251 | 16408 | 11/1/2005 | 11/4/2005 | 11/4/2005 | FR60 | 27695 | |
| 6252 | 16409 | 11/1/2005 | 11/8/2005 | 11/9/2005 | FR60 | 27695 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 6253 | 16410 | 11/1/2005 | 11/8/2005 | 11/9/2005 | FR60 | 27695 |
| 6254 | 16411 | 11/1/2005 | 11/8/2005 | 11/9/2005 | FR60 | 27695 |
| 6255 | 16412 | 11/1/2005 | 11/4/2005 | 11/4/2005 | FR60 | 27695 |
| 6256 | 16413 | 11/1/2005 | 11/4/2005 | 11/4/2005 | FR60 | 27695 |
| 6257 | 16414 | 11/1/2005 | 11/4/2005 | 11/4/2005 | FR60 | 27695 |
| 6258 | 16415 | 11/1/2005 | 11/7/2005 | 11/8/2005 | FR60 | 27695 |
| 6259 | 16416 | 11/1/2005 | 11/7/2005 | 11/8/2005 | FR60 | 27695 |
| 6260 | 16417 | 11/1/2005 | 11/4/2005 | 11/4/2005 | FR60 | 27695 |
| 6261 | 16418 | 11/1/2005 | 11/4/2005 | 11/4/2005 | FR60 | 27695 |
| 6262 | 16419 | 11/1/2005 | 11/8/2005 | 11/9/2005 | FR60 | 27695 |
| 6263 | 16420 | 11/1/2005 | 11/7/2005 | 11/8/2005 | FR60 | 27695 |
| 6264 | 16421 | 11/1/2005 | 11/7/2005 | 11/8/2005 | FR60 | 27695 |
| 6265 | 16422 | 11/2/2005 | 11/4/2005 | 11/4/2005 | FR60 | 27695 |
| 6266 | 16447 | 11/3/2005 | 11/4/2005 | 11/4/2005 | FR60 | 27695 |
| 6267 | 16448 | 11/3/2005 | 11/4/2005 | 11/4/2005 | FR60 | 27695 |
| 6268 | 16449 | 11/3/2005 | 11/4/2005 | 11/4/2005 | FR60 | 27695 |
| 6269 | 16450 | 11/3/2005 | 11/4/2005 | 11/4/2005 | FR60 | 27695 |
| 6270 | 16451 | 11/3/2005 | 11/5/2005 | 11/8/2005 | FR60 | 27695 |
| 6271 | 16452 | 11/3/2005 | 11/8/2005 | 11/9/2005 | FR60 | 27695 |
| 6272 | 16453 | 11/3/2005 | 11/5/2005 | 11/5/2005 | FR60 | 27695 |
| 6273 | 16454 | 11/3/2005 | 11/5/2005 | 11/5/2005 | FR60 | 27695 |
| 6274 | 16455 | 11/3/2005 | 11/5/2005 | 11/8/2005 | FR60 | 27695 |
| 6275 | 16456 | 11/3/2005 | 11/8/2005 | 11/8/2005 | FR60 | 27695 |
| 6276 | 16457 | 11/3/2005 | 11/8/2005 | 11/8/2005 | FR60 | 27695 |
| 6277 | 16458 | 11/4/2005 | 11/8/2005 | 11/8/2005 | FR60 | 27695 |
| 6278 | 16459 | 11/4/2005 | 11/8/2005 | 11/9/2005 | FR60 | 27695 |
| 6279 | 16460 | 11/5/2005 | 11/8/2005 | 11/9/2005 | FR60 | 27695 |
| 6280 | 16461 | 11/5/2005 | 11/8/2005 | 11/9/2005 | FR60 | 27695 |
| 6281 | 16490 | 11/5/2005 | 11/8/2005 | 11/9/2005 | FR60 | 27695 |
| 6282 | 16491 | 11/5/2005 | 11/8/2005 | 11/9/2005 | FR60 | 27695 |
| 6283 | 16492 | 11/5/2005 | 11/8/2005 | 11/9/2005 | FR60 | 27695 |
| 6284 | 16493 | 11/8/2005 | 11/9/2005 | 11/9/2005 | FR60 | 27695 |
| 6285 | 16494 | 11/8/2005 | 11/6/2005 | 11/5/2005 | FR60 | 27695 |
| 6286 | 16495 | 11/8/2005 | 11/9/2005 | 11/9/2005 | FR60 | 27695 |
| 6287 | 16496 | 11/8/2005 | 11/9/2005 | 11/9/2005 | FR60 | 27695 |
| 6288 | 16497 | 11/8/2005 | 11/9/2005 | 11/9/2005 | FR60 | 27695 |
| 6289 | 16498 | 11/8/2005 | 11/9/2005 | 11/9/2005 | FR60 | 27695 |
| 6290 | 16499 | 11/8/2005 | 11/9/2005 | 11/9/2005 | FR60 | 27695 |
| 6291 | 16515 | 11/9/2005 | 11/10/2005 | 11/11/2005 | FR60 | 27695 |
| 6292 | 16516 | 11/9/2005 | 11/10/2005 | 11/11/2005 | FR60 | 27695 |
| 6293 | 16517 | 11/9/2005 | 11/10/2005 | 11/11/2005 | FR60 | 27695 |
| 6294 | 16518 | 11/9/2005 | 11/10/2005 | 11/11/2005 | FR60 | 27695 |
| 6295 | 16519 | 11/9/2005 | 11/11/2005 | 11/11/2005 | FR60 | 27695 |
| 6296 | 16520 | 11/9/2005 | 11/11/2005 | 11/11/2005 | FR60 | 27695 |
| 6297 | 16521 | 11/9/2005 | 11/11/2005 | 11/11/2005 | FR60 | 27695 |
| 6298 | 16522 | 11/9/2005 | 11/11/2005 | 11/10/2005 | FR60 | 27695 |
| 6299 | 16523 | 11/9/2005 | 11/11/2005 | 11/11/2005 | FR60 | 27695 |
| 6300 | 16524 | 11/9/2005 | 11/10/2005 | 11/11/2005 | FR60 | 27695 |
| 6301 | 16525 | 11/9/2005 | 11/11/2005 | 11/11/2005 | FR60 | 27695 |
| 6302 | 16526 | 11/9/2005 | 11/10/2005 | 11/11/2005 | FR60 | 27695 |
| 6303 | 16527 | 11/9/2005 | 11/11/2005 | 11/11/2005 | FR60 | 27695 |
| 6304 | 16528 | 11/9/2005 | 11/11/2005 | 11/11/2005 | FR60 | 27695 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 6305 | 16529 | 11/9/2005 | 11/11/2005 | 11/11/2005 | FR60 | 27695 |
| 6306 | 16530 | 11/9/2005 | 11/11/2005 | 11/11/2005 | FR60 | 27695 |
| 6307 | 16531 | 11/9/2005 | 11/11/2005 | 11/11/2005 | FR60 | 27695 |
| 6308 | 16532 | 11/10/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6309 | 16533 | 11/11/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6310 | 16534 | 11/10/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6311 | 16535 | 11/10/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6312 | 16536 | 11/11/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6313 | 16537 | 11/10/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6314 | 16538 | 11/10/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6315 | 16539 | 11/11/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6316 | 16540 | 11/11/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6317 | 16541 | 11/11/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6318 | 16542 | 11/11/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6319 | 16543 | 11/11/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6320 | 16544 | 11/3/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6321 | 16545 | 11/3/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27895 |
| 6322 | 16546 | 11/12/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6323 | 16547 | 11/12/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6324 | 16548 | 11/12/2005 | 11/14/2005 | 11/14/2005 | FR60 | 27695 |
| 6325 | 16549 | 11/12/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6326 | 16550 | 11/12/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6327 | 16551 | 11/12/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6328 | 16552 | 11/12/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6329 | 16553 | 11/12/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6330 | 16578 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6331 | 16579 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6332 | 16580 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6333 | 16581 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6334 | 16582 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6335 | 16583 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6336 | 16584 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6337 | 16618 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6338 | 16619 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6339 | 16620 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6340 | 16621 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6341 | 16622 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6342 | 16623 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6343 | 16624 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6344 | 16625 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6345 | 16626 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6346 | 16627 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6347 | 16628 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6348 | 16629 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6349 | 16630 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FR60 | 27695 |
| 6350 | 16631 | 11/22/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |
| 6351 | 16632 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |
| 6352 | 16633 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |
| 6353 | 16634 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |
| 6354 | 16635 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |
| 6355 | 16636 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |
| 6356 | 16637 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 6357 | 16638 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |
| 6358 | 16639 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |
| 6359 | 16640 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |
| 6360 | 16641 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |
| 6361 | 16642 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |
| 6362 | 16643 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |
| 6363 | 16644 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FR60 | 27695 |
| 6364 | 16645 | 11/28/2005 | 12/9/2005 | 12/12/2005 | FR60 | 27695 |
| 6365 | 16646 | 11/28/2005 | 12/9/2005 | 12/12/2005 | FR60 | 27695 |
| 6366 | 16647 | 11/28/2005 | 12/9/2005 | 12/12/2005 | FR60 | 27695 |
| 6367 | 16648 | 11/28/2005 | 12/9/2005 | 12/12/2005 | FR60 | 27695 |
| 6368 | 16649 | 11/28/2005 | 12/9/2005 | 12/12/2005 | FR60 | 27695 |
| 6369 | 16650 | 11/28/2005 | 12/9/2005 | 12/12/2005 | FR60 | 27695 |
| 6370 | 16651 | 11/28/2005 | 12/9/2005 | 12/12/2005 | FR60 | 27695 |
| 6371 | 16652 | 11/29/2005 | 12/12/2005 | 12/13/2005 | FR60 | 27695 |
| 6372 | 16653 | 11/29/2005 | 12/12/2005 | 12/13/2005 | FR60 | 27695 |
| 6373 | 16654 | 11/29/2005 | 12/12/2005 | 12/13/2005 | FR60 | 27695 |
| 6374 | 16655 | 11/29/2005 | 12/12/2005 | 12/13/2005 | FR60 | 27695 |
| 6375 | 16656 | 11/29/2005 | 12/12/2005 | 12/13/2005 | FR60 | 27695 |
| 6376 | 16657 | 11/29/2005 | 12/14/2005 | 12/14/2005 | FR60 | 27695 |
| 6377 | 16658 | 11/29/2005 | 12/14/2005 | 12/14/2005 | FR60 | 27695 |
| 6378 | 16659 | 11/29/2005 | 12/14/2005 | 12/15/2005 | FR60 | 27695 |
| 6379 | 16660 | 11/30/2005 | 12/14/2005 | 12/15/2005 | FR60 | 27695 |
| 6380 | 16661 | 11/30/2005 | 12/14/2005 | 12/15/2005 | FR60 | 27695 |
| 6381 | 16712 | 11/30/2005 | 12/14/2005 | 12/15/2005 | FR60 | 27695 |
| 6382 | 16713 | 11/30/2005 | 12/14/2005 | 12/15/2005 | FR60 | 27695 |
| 6383 | 16714 | 11/30/2005 | 12/14/2005 | 12/15/2005 | FR60 | 27695 |
| 6384 | 16715 | 11/30/2005 | 12/19/2005 | 12/20/2005 | FR60 | 27695 |
| 6385 | 16716 | 12/1/2005 | 12/19/2005 | 12/20/2005 | FR60 | 27695 |
| 6386 | 16717 | 12/1/2005 | 12/19/2005 | 12/20/2005 | FR60 | 27695 |
| 6387 | 16718 | 12/1/2005 | 12/19/2005 | 12/20/2005 | FR60 | 27695 |
| 6388 | 16719 | 12/1/2005 | 12/19/2005 | 12/20/2005 | FR60 | 27695 |
| 6389 | 16720 | 12/1/2005 | 12/19/2005 | 12/20/2005 | FR60 | 27695 |
| 6390 | 16721 | 12/1/2005 | 12/20/2005 | 12/21/2005 | FR60 | 27695 |
| 6391 | 16722 | 12/1/2005 | 12/19/2005 | 12/20/2005 | FR60 | 27695 |
| 6392 | 16723 | 12/12/2005 | 12/23/2005 | 12/27/2005 | FR60 | 27695 |
| 6393 | 16724 | 12/12/2005 | 12/23/2005 | 12/27/2005 | FR60 | 27695 |
| 6394 | 16725 | 12/12/2005 | 12/23/2005 | 12/27/2005 | FR60 | 27695 |
| 6395 | 16726 | 12/12/2005 | 12/23/2005 | 12/27/2005 | FR60 | 27695 |
| 6396 | 16727 | 12/12/2005 | 12/23/2005 | 12/27/2005 | FR60 | 27695 |
| 6397 | 16728 | 12/12/2005 | 12/23/2005 | 12/27/2005 | FR60 | 27695 |
| 6398 | 16729 | 12/12/2005 | 12/23/2005 | 12/27/2005 | FR60 | 27695 |
| 6399 | 16730 | 12/12/2005 | 12/23/2005 | 12/27/2005 | FR60 | 27695 |
| 6400 | 16731 | 12/12/2005 | 12/30/2005 | 12/31/2005 | FR60 | 27695 |
| 6401 | 16732 | 12/12/2005 | 12/30/2005 | 12/31/2005 | FR60 | 27695 |
| 6402 | 16733 | 12/12/2005 | 12/30/2005 | 12/31/2005 | FR60 | 27695 |
| 29285 | 15997 | 9/19/2005 | 9/20/2005 | 9/21/2005 | 856 | 19928 |
| 29286 | 15998 | 9/19/2005 | 9/20/2005 | 9/20/2005 | 856 | 19928 |
| 29287 | 15999 | 9/19/2005 | 9/20/2005 | 9/20/2005 | 856 | 19928 |
| 29288 | 16000 | 9/19/2005 | 9/20/2005 | 9/21/2005 | 856 | 19928 |
| 29289 | 16001 | 9/19/2005 | 9/20/2005 | 9/21/2005 | 856 | 19928 |
| 29290 | 16002 | 9/19/2005 | 9/20/2005 | 9/21/2005 | 856 | 19928 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 29291 | 16003 | 9/19/2005 | 9/20/2005 | 9/20/2005 | 856 | 19928 |
| 29292 | 16004 | 9/19/2005 | 9/20/2005 | 9/21/2005 | 856 | 19928 |
| 29293 | 16005 | 9/19/2005 | 9/21/2005 | 9/20/2005 | 856 | 19928 |
| 29294 | 16006 | 9/20/2005 | 9/20/2005 | 9/21/2005 | 856 | 19928 |
| 29295 | 16007 | 9/20/2005 | 9/20/2005 | 9/21/2005 | 856 | 19928 |
| 29296 | 16008 | 9/20/2005 | 9/20/2005 | 9/21/2005 | 856 | 19928 |
| 29297 | 16009 | 9/20/2005 | 9/21/2005 | 9/21/2005 | 856 | 19928 |
| 29298 | 16010 | 9/20/2005 | 9/20/2005 | 9/21/2005 | 856 | 19928 |
| 29299 | 16011 | 9/20/2005 | 9/20/2005 | 9/21/2005 | 856 | 19928 |
| 29300 | 16012 | 9/20/2005 | 9/20/2005 | 9/21/2005 | 856 | 19928 |
| 29301 | 16013 | 9/20/2005 | 9/21/2005 | 9/20/2005 | 856 | 19928 |
| 29302 | 16014 | 9/20/2005 | 9/21/2005 | 9/20/2005 | 856 | 19928 |
| 29303 | 16015 | 9/20/2005 | 9/20/2005 | 9/21/2005 | 856 | 19928 |
| 29304 | 16016 | 9/21/2005 | 9/21/2005 | 9/22/2005 | 856 | 19928 |
| 29305 | 16017 | 9/21/2005 | 9/21/2005 | 9/22/2005 | 856 | 19928 |
| 29306 | 16018 | 9/21/2005 | 9/22/2005 | 9/22/2005 | 856 | 19928 |
| 29307 | 16019 | 9/21/2005 | 9/22/2005 | 9/23/2005 | 856 | 19928 |
| 29308 | 16023 | 9/21/2005 | 9/21/2005 | 9/22/2005 | 856 | 19928 |
| 29309 | 16024 | 9/21/2005 | 9/21/2005 | 9/22/2005 | 856 | 19928 |
| 29310 | 16025 | 9/21/2005 | 9/21/2005 | 9/22/2005 | 856 | 19928 |
| 29311 | 16026 | 9/21/2005 | 9/27/2005 | 9/28/2005 | 856 | 19928 |
| 29312 | 16027 | 9/21/2005 | 9/21/2005 | 9/22/2005 | 856 | 19928 |
| 29313 | 16028 | 9/21/2005 | 9/22/2005 | 9/23/2005 | 856 | 19928 |
| 29314 | 16029 | 9/22/2005 | 9/22/2005 | 9/23/2005 | 856 | 19928 |
| 29315 | 16030 | 9/22/2005 | 9/22/2005 | 9/23/2005 | 856 | 19928 |
| 29316 | 16031 | 9/22/2005 | 9/22/2005 | 9/23/2005 | 856 | 19928 |
| 29317 | 16032 | 9/22/2005 | 9/22/2005 | 9/23/2005 | 856 | 19928 |
| 29318 | 16033 | 9/22/2005 | 9/22/2005 | 9/23/2005 | 856 | 19928 |
| 29319 | 16034 | 9/22/2005 | 9/22/2005 | 9/23/2005 | 856 | 19928 |
| 29320 | 16056 | 9/22/2005 | 9/26/2005 | 9/27/2005 | 856 | 22528 |
| 29321 | 16057 | 9/22/2005 | 9/26/2005 | 9/27/2005 | 856 | 22528 |
| 29322 | 16058 | 9/22/2005 | 9/26/2005 | 9/27/2005 | 856 | 22528 |
| 29323 | 16059 | 9/22/2005 | 9/26/2005 | 9/27/2005 | 856 | 22528 |
| 29324 | 16060 | 9/24/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29325 | 16061 | 9/24/2005 | 9/30/2005 | 10/10/2005 | 855 | 22528 |
| 29326 | 16062 | 9/24/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29327 | 16063 | 9/23/2005 | 9/30/2005 | 9/30/2005 | 856 | 22528 |
| 29328 | 16064 | 10/1/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29329 | 16065 | 9/23/2005 | 9/26/2005 | 9/27/2005 | 856 | 22528 |
| 29330 | 16066 | 9/23/2005 | 9/28/2005 | 9/28/2005 | 856 | 22528 |
| 29331 | 16067 | 9/23/2005 | 9/28/2005 | 9/29/2005 | 856 | 22528 |
| 29332 | 16088 | 9/23/2005 | 9/30/2005 | 9/30/2005 | 856 | 22528 |
| 29333 | 16069 | 9/28/2005 | 9/30/2005 | 9/30/2005 | 856 | 22528 |
| 29334 | 16070 | 10/1/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29336 | 16071 | 9/24/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29337 | 16072 | 9/26/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29338 | 16073 | 9/24/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29339 | 16074 | 9/24/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29340 | 16075 | 9/24/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29341 | 16086 | 9/26/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29342 | 16087 | 9/26/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29343 | 16088 | 9/26/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 29344 | 16089 | 9/26/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29345 | 16090 | 9/26/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29346 | 16091 | 9/26/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29347 | 16092 | 9/26/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29348 | 16093 | 9/26/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29349 | 16094 | 9/26/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29350 | 16095 | 9/26/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29351 | 16096 | 9/26/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29352 | 16097 | 9/27/2005 | 9/30/2005 | 10/5/2005 | 856 | 22528 |
| 29353 | 16098 | 9/27/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29354 | 16099 | 9/27/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29355 | 16100 | 9/27/2005 | 9/30/2005 | 10/3/2005 | 856 | 22528 |
| 29356 | 16101 | 9/27/2005 | 9/30/2005 | 10/5/2005 | 856 | 22528 |
| 29357 | 16102 | 9/27/2005 | 9/30/2005 | 10/5/2005 | 856 | 22528 |
| 29358 | 16103 | 9/27/2005 | 9/30/2005 | 10/5/2005 | 856 | 22528 |
| 29359 | 16104 | 9/27/2005 | 9/30/2005 | 10/5/2005 | 856 | 22528 |
| 29360 | 16105 | 9/27/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29361 | 16106 | 9/27/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29362 | 16107 | 9/28/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29363 | 16108 | 9/28/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29364 | 16109 | 9/28/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29365 | 16110 | 9/28/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29366 | 16111 | 9/28/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29367 | 16112 | 9/28/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29368 | 16113 | 9/28/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29369 | 16114 | 9/28/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29370 | 16115 | 9/28/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29371 | 16116 | 9/28/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29372 | 16117 | 9/29/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29373 | 16118 | 9/29/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29374 | 16119 | 9/29/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29375 | 16120 | 9/29/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29376 | 16130 | 9/29/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29377 | 16131 | 9/29/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29378 | 16132 | 9/29/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29379 | 16133 | 9/29/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29380 | 16134 | 9/29/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29381 | 16135 | 9/29/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29382 | 16136 | 9/30/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29383 | 16137 | 9/30/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29384 | 16138 | 9/30/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29385 | 16139 | 10/1/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29386 | 16140 | 10/1/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29387 | 16141 | 10/1/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29388 | 16142 | 10/1/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29389 | 16143 | 10/1/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29390 | 16144 | 10/1/2005 | 9/30/2005 | 10/10/2005 | 856 | 22528 |
| 29549 | 16427 | 11/23/2005 | 11/28/2005 | 11/29/2005 | FNR60 | 25295 |
| 29582 | 16475 | 11/18/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29603 | 16500 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29604 | 16501 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29605 | 16502 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 29606 | 16503 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29607 | 16504 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29608 | 16505 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29609 | 16506 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29610 | 16507 | 11/22/2005 | 11/23/2005 | 11/23/2005 | FNR60 | 25295 |
| 29611 | 16508 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29612 | 16509 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29613 | 16510 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29614 | 16511 | 11/22/2005 | 11/23/2005 | 11/23/2005 | FNR60 | 25295 |
| 29615 | 16512 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29616 | 16513 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29617 | 16514 | 11/22/2005 | 11/28/2005 | 11/29/2005 | FNR60 | 25295 |
| 29620 | 16562 | 11/22/2005 | 11/23/2005 | 11/23/2005 | FNR60 | 25295 |
| 29626 | 16563 | 11/22/2005 | 11/28/2005 | 11/29/2005 | FNR60 | 25295 |
| 29627 | 16564 | 11/22/2005 | 11/28/2005 | 11/29/2005 | FNR60 | 25295 |
| 29628 | 16565 | 11/17/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29629 | 16566 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29630 | 16567 | 11/15/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29631 | 16568 | 11/15/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29632 | 16569 | 11/15/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29633 | 16570 | 11/15/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29634 | 16571 | 11/15/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29635 | 16572 | 11/15/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29636 | 16573 | 11/22/2005 | 11/28/2005 | 11/29/2005 | FNR60 | 25295 |
| 29637 | 16574 | 11/16/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29638 | 16575 | 11/16/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29639 | 16576 | 11/16/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29640 | 16593 | 11/16/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29641 | 16594 | 11/16/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29642 | 16595 | 11/16/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29643 | 16596 | 11/22/2005 | 11/28/2005 | 11/29/2005 | FNR60 | 25295 |
| 29644 | 16597 | 11/16/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29645 | 16598 | 11/17/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29646 | 16599 | 11/17/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29647 | 16600 | 11/17/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29648 | 16601 | 11/22/2005 | 11/28/2005 | 11/29/2005 | FNR60 | 25295 |
| 29649 | 16602 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29650 | 16603 | 11/22/2005 | 11/28/2005 | 11/29/2005 | FNR60 | 25295 |
| 29651 | 16604 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29652 | 16605 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29653 | 16606 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29654 | 16607 | 11/22/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29655 | 16608 | 11/18/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29656 | 16609 | 11/18/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29657 | 16610 | 11/18/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29658 | 16611 | 11/18/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29659 | 16612 | 11/18/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29660 | 16613 | 11/21/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29661 | 16614 | 11/21/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29662 | 16615 | 11/21/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29663 | 16616 | 11/21/2005 | 11/22/2005 | 11/22/2005 | FNR60 | 25295 |
| 29664 | 16794 | 12/13/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 29665 | 16795 | 12/13/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |
| 29666 | 16796 | 12/23/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29667 | 16797 | 12/13/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |
| 29668 | 16798 | 12/13/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |
| 29669 | 16799 | 12/14/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |
| 29670 | 16800 | 12/14/2005 | 12/23/2005 | 12/27/2005 | FNR60 | 25295 |
| 29671 | 16801 | 12/14/2005 | 12/23/2005 | 12/24/2005 | FNR60 | 25295 |
| 29672 | 16802 | 12/14/2005 | 12/23/2005 | 12/24/2005 | FNR60 | 25295 |
| 29673 | 16803 | 12/23/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29674 | 16804 | 12/14/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |
| 29675 | 16805 | 12/14/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |
| 29676 | 16806 | 12/14/2005 | 12/23/2005 | 12/24/2005 | FNR60 | 25295 |
| 29677 | 16807 | 12/15/2005 | 12/23/2005 | 12/24/2005 | FNR60 | 25295 |
| 29678 | 16808 | 12/15/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29679 | 16809 | 12/15/2005 | 12/23/2005 | 12/24/2005 | FNR60 | 25295 |
| 29680 | 16813 | 12/15/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |
| 29681 | 16814 | 12/15/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |
| 29682 | 16815 | 12/15/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |
| 29683 | 16816 | 12/15/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29684 | 16817 | 12/15/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |
| 29685 | 16818 | 12/15/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |
| 29686 | 16819 | 12/16/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |
| 29687 | 16820 | 12/16/2005 | 12/19/2005 | 12/20/2005 | FNR60 | 25295 |
| 29688 | 16821 | 12/16/2005 | 12/20/2005 | 12/21/2005 | FNR60 | 25295 |
| 29689 | 16822 | 12/16/2005 | 12/20/2005 | 12/21/2005 | FNR60 | 25295 |
| 29690 | 16823 | 12/16/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29691 | 16824 | 12/16/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29692 | 16825 | 12/16/2005 | 12/20/2005 | 12/21/2005 | FNR60 | 25295 |
| 29693 | 16826 | 12/16/2005 | 12/20/2005 | 12/21/2005 | FNR60 | 25295 |
| 29694 | 16827 | 12/17/2005 | 12/20/2005 | 12/21/2005 | FNR60 | 25295 |
| 29695 | 16828 | 12/17/2005 | 12/20/2005 | 12/21/2005 | FNR60 | 25295 |
| 29696 | 16829 | 12/23/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29697 | 16830 | 12/17/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29698 | 16831 | 12/17/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29699 | 16832 | 12/19/2005 | 12/20/2005 | 12/21/2005 | FNR60 | 25295 |
| 29700 | 16833 | 12/19/2005 | 12/20/2005 | 12/21/2005 | FNR60 | 25295 |
| 29701 | 16834 | 12/23/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29702 | 16835 | 12/23/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29703 | 16836 | 12/19/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29704 | 16837 | 12/19/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29705 | 16838 | 12/19/2005 | 12/23/2005 | 12/27/2005 | FNR60 | 25295 |
| 29706 | 16839 | 12/19/2005 | 12/23/2005 | 12/27/2005 | FNR60 | 25295 |
| 29707 | 16840 | 12/23/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29708 | 16841 | 12/23/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29709 | 16842 | 12/20/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29710 | 16843 | 12/20/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29711 | 16844 | 12/20/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29712 | 16845 | 12/20/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29713 | 16849 | 12/20/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29714 | 16850 | 12/20/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29715 | 16851 | 12/20/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29716 | 16852 | 12/20/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 29717 | 16853 | 12/22/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29718 | 16854 | 12/21/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29719 | 16855 | 12/21/2005 | 12/30/2005 | 12/30/2005 | FNR60 | 25295 |
| 29720 | 16856 | 12/23/2005 | 12/23/2005 | 12/27/2005 | FNR60 | 25295 |
| 29721 | 16857 | 1/2/2006 | 1/12/2006 | 1/12/2006 | FNR60 | 25295 |
| 29722 | 16862 | 1/2/2006 | 1/12/2006 | 1/12/2006 | FNR60 | 25295 |
| 29723 | 16863 | 1/2/2006 | 1/12/2006 | 1/12/2006 | FNR60 | 25295 |
| 29724 | 16864 | 1/2/2006 | 1/17/2006 | 1/17/2006 | FNR60 | 25295 |
| 29725 | 16865 | 1/2/2006 | 1/12/2006 | 1/12/2006 | FNR60 | 25295 |
| 29726 | 16866 | 1/2/2006 | 1/12/2006 | 1/12/2006 | FNR60 | 25295 |
| 29727 | 16867 | 1/2/2006 | 1/12/2006 | 1/12/2006 | FNR60 | 25295 |
| 29728 | 16868 | 1/3/2006 | 1/17/2006 | 1/17/2006 | FNR60 | 25295 |
| 29729 | 16869 | 1/3/2006 | 1/30/2006 | 1/30/2006 | FNR60 | 25295 |
| 29730 | 16870 | 1/3/2006 | 1/19/2006 | 1/19/2006 | FNR60 | 25295 |
| 29731 | 16871 | 1/3/2006 | 1/19/2006 | 1/19/2006 | FNR60 | 25295 |
| 29732 | 16872 | 1/3/2006 | 1/19/2006 | 1/19/2006 | FNR60 | 25295 |
| 29733 | 16873 | 1/3/2006 | 1/17/2006 | 1/17/2006 | FNR60 | 25295 |
| 29734 | 16874 | 1/19/2006 | 1/19/2006 | 1/19/2006 | FNR60 | 25295 |
| 29735 | 16875 | 1/3/2006 | 1/19/2006 | 1/19/2006 | FNR60 | 25295 |
| 29736 | 16876 | 1/3/2006 | 1/16/2006 | 1/16/2006 | FNR60 | 25295 |
| 29737 | 16877 | 1/4/2006 | 1/23/2006 | 1/23/2006 | FNR60 | 25295 |
| 29738 | 16878 | 1/4/2006 | 1/23/2006 | 1/23/2006 | FNR60 | 25295 |
| 29739 | 16879 | 1/4/2006 | 1/12/2006 | 1/12/2006 | FNR60 | 25295 |
| 29740 | 16880 | 1/4/2006 | 1/12/2006 | 1/12/2006 | FNR60 | 25295 |
| 29741 | 16881 | 1/4/2006 | 1/19/2006 | 1/19/2006 | FNR60 | 25295 |
| 29742 | 16882 | 1/4/2006 | 1/12/2006 | 1/12/2006 | FNR60 | 25295 |
| 29743 | 16883 | 1/4/2006 | 1/25/2006 | 1/25/2006 | FNR60 | 25295 |
| 29744 | 16884 | 1/4/2006 | 1/23/2006 | 1/23/2006 | FNR60 | 25295 |
| 29745 | 16885 | 1/5/2006 | 1/12/2006 | 1/12/2006 | FNR60 | 25295 |
| 29746 | 16886 | 1/5/2006 | 1/16/2006 | 1/16/2006 | FNR60 | 25295 |
| 29747 | 16887 | 1/5/2006 | 1/13/2006 | 1/13/2006 | FNR60 | 25295 |
| 29748 | 16888 | 1/5/2006 | 1/13/2006 | 1/13/2006 | FNR60 | 25295 |
| 29749 | 16889 | 1/5/2006 | 1/18/2006 | 1/18/2006 | FNR60 | 25295 |
| 29750 | 16890 | 1/5/2006 | 1/13/2006 | 1/13/2006 | FNR60 | 25295 |
| 29751 | 16891 | 1/5/2006 | 1/23/2006 | 1/23/2006 | FNR60 | 25295 |
| 29752 | 16892 | 1/5/2006 | 1/13/2006 | 1/13/2006 | FNR60 | 25295 |
| 29753 | 16893 | 1/5/2006 | 1/13/2006 | 1/13/2006 | FNR60 | 25295 |
| 29754 | 16900 | 1/6/2006 | 1/25/2006 | 1/25/2006 | FNR60 | 25295 |
| 29755 | 16901 | 1/6/2006 | 1/23/2006 | 1/23/2006 | FNR60 | 25295 |
| 29756 | 16902 | 1/6/2006 | 1/13/2006 | 1/13/2006 | FNR60 | 25295 |
| 29757 | 16903 | 1/6/2006 | 1/18/2006 | 1/18/2006 | FNR60 | 25295 |
| 29758 | 16904 | 1/6/2006 | 1/23/2006 | 1/23/2006 | FNR60 | 25295 |
| 29759 | 16905 | 1/6/2006 | 1/18/2006 | 1/18/2006 | FNR60 | 25295 |
| 29760 | 16924 | 1/6/2006 | 1/18/2006 | 1/18/2006 | FNR60 | 25295 |
| 29761 | 16925 | 1/13/2006 | 1/13/2006 | 1/13/2006 | FNR60 | 25295 |
| 29762 | 16926 | 1/9/2006 | 1/16/2006 | 1/16/2006 | FNR60 | 25295 |
| 29763 | 16927 | 1/9/2006 | 1/13/2006 | 1/13/2006 | FNR60 | 25295 |
| 29764 | 16928 | 1/9/2006 | 1/16/2006 | 1/16/2006 | FNR60 | 25295 |
| 29765 | 16929 | 1/10/2006 | 1/13/2006 | 1/13/2006 | FNR60 | 25295 |
| 29766 | 16930 | 1/10/2006 | 1/16/2006 | 1/16/2006 | FNR60 | 25295 |
| 29767 | 16931 | 1/10/2006 | 1/13/2006 | 1/13/2006 | FNR60 | 25295 |
| 29768 | 16932 | 1/10/2006 | 1/16/2006 | 1/16/2006 | FNR60 | 25295 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 29769 | 16933 | 1/11/2006 | 1/19/2006 | 1/19/2006 | FNR60 | 25295 |
| 29770 | 16934 | 1/11/2006 | 1/24/2006 | 1/24/2006 | FNR60 | 25295 |
| 29771 | 16935 | 1/11/2006 | 1/23/2006 | 1/23/2006 | FNR60 | 25295 |
| 29772 | 16936 | 1/11/2006 | 1/19/2006 | 1/19/2006 | FNR60 | 25295 |
| 29903 | 16937 | 1/11/2006 | 1/17/2006 | 1/17/2006 | FNR60 | 25295 |
| 29904 | 16938 | 1/11/2006 | 1/25/2006 | 1/25/2006 | FNR60 | 25295 |
| 29905 | 16939 | 1/11/2006 | 1/24/2006 | 1/24/2006 | FNR60 | 25295 |
| 29906 | 16940 | 1/11/2006 | 1/24/2006 | 1/24/2006 | FNR60 | 25295 |
| 29907 | 16967 | 1/11/2006 | 1/18/2006 | 1/18/2006 | FNR60 | 25295 |
| 29908 | 16968 | 1/12/2006 | 1/17/2006 | 1/17/2006 | FNR60 | 25295 |
| 29909 | 16969 | 1/12/2006 | 1/18/2006 | 1/18/2006 | FNR60 | 25295 |
| 29910 | 16970 | 1/12/2006 | 1/18/2006 | 1/18/2006 | FNR60 | 25295 |
| 29911 | 16971 | 1/12/2006 | 1/18/2006 | 1/18/2006 | FNR60 | 25295 |
| 29912 | 16972 | 1/12/2006 | 1/18/2006 | 1/18/2006 | FNR60 | 25295 |
| 29913 | 16973 | 1/12/2006 | 1/23/2006 | 1/23/2006 | FNR60 | 25295 |
| 29914 | 16974 | 1/12/2006 | 1/18/2006 | 1/18/2006 | FNR60 | 25295 |
| 29915 | 16975 | 1/12/2006 | 1/18/2006 | 1/18/2006 | FNR60 | 25295 |
| 29916 | 16976 | 1/12/2006 | 1/30/2006 | 1/30/2006 | FNR60 | 25295 |
| 29917 | 16977 | 1/13/2006 | 1/31/2006 | 2/3/2006 | FNR60 | 25295 |
| 29918 | 16978 | 1/13/2006 | 1/30/2006 | 1/30/2006 | FNR60 | 25295 |
| 29919 | 16979 | 1/13/2006 | 1/31/2006 | 2/3/2006 | FNR60 | 25295 |
| 29920 | 16980 | 1/13/2006 | 1/30/2006 | 2/3/2006 | FNR60 | 25295 |
| 29921 | 16981 | 1/18/2006 | 1/30/2006 | 2/3/2006 | FNR60 | 25295 |
| 29922 | 16982 | 1/13/2006 | 1/31/2006 | 2/3/2006 | FNR60 | 25295 |
| 29923 | 16983 | 1/13/2006 | 1/31/2006 | 2/3/2006 | FNR60 | 25295 |
| 29924 | 16984 | 1/13/2006 | 1/26/2006 | 1/26/2006 | FNR60 | 25295 |
| 29925 | 16985 | 1/14/2006 | 1/31/2006 | 2/3/2006 | FNR60 | 25295 |
| 29926 | 16986 | 1/14/2006 | 1/23/2006 | 1/23/2006 | FNR60 | 25295 |
| 29927 | 16988 | 1/16/2006 | 1/25/2006 | 1/25/2006 | FNR60 | 25295 |
| 29928 | 16989 | 1/14/2006 | 1/24/2006 | 1/24/2006 | FNR60 | 25295 |
| 29929 | 16990 | 1/14/2006 | 1/25/2006 | 1/25/2006 | FNR60 | 25295 |
| 29930 | 16991 | 1/16/2006 | 1/31/2006 | 2/3/2006 | FNR60 | 25295 |
| 29931 | 16992 | 1/16/2006 | 1/23/2006 | 1/23/2006 | FNR60 | 25295 |
| 29932 | 16993 | 1/16/2006 | 1/24/2006 | 1/24/2006 | FNR60 | 25295 |
| 29933 | 16994 | 1/16/2006 | 1/26/2006 | 1/26/2006 | FNR60 | 25295 |
| 29934 | 16995 | 1/16/2006 | 1/31/2006 | 2/6/2006 | FNR60 | 25295 |
| 29935 | 16996 | 1/16/2006 | 1/25/2006 | 1/25/2006 | FNR60 | 25295 |
| 29936 | 16997 | 1/16/2006 | 1/24/2006 | 1/24/2006 | FNR60 | 25295 |
| 29937 | 16998 | 1/13/2006 | 1/25/2006 | 1/25/2006 | FNR60 | 25295 |
| 29938 | 16999 | 1/17/2006 | 1/24/2006 | 1/24/2006 | FNR60 | 25295 |
| 29939 | 17000 | 1/17/2006 | 1/25/2006 | 1/25/2006 | FNR60 | 25295 |
| 29940 | 17001 | 1/17/2006 | 1/17/2006 | 1/17/2006 | FNR60 | 25295 |
| 29941 | 17002 | 1/17/2006 | 1/17/2006 | 1/17/2006 | FNR60 | 25295 |
| 29942 | 17003 | 1/17/2006 | 1/30/2006 | 1/30/2006 | FNR60 | 25295 |
| 29943 | 17004 | 1/17/2006 | 1/17/2006 | 1/17/2006 | FNR60 | 25295 |
| 29944 | 17005 | 1/17/2006 | 1/19/2006 | 1/19/2006 | FNR60 | 25295 |
| 29945 | 17006 | 1/18/2006 | 1/30/2006 | 1/30/2006 | FNR60 | 25295 |
| 29946 | 17007 | 1/18/2006 | 1/30/2006 | 1/30/2006 | FNR60 | 25295 |
| 29947 | 17008 | 1/18/2006 | 1/19/2006 | 1/19/2006 | FNR60 | 25295 |
| 29948 | 17009 | 1/18/2006 | 1/31/2006 | 2/6/2006 | FNR60 | 25295 |
| 29949 | 17010 | 1/18/2006 | 2/7/2006 | 2/7/2006 | FNR60 | 25295 |
| 29950 | 17011 | 1/18/2006 | 2/7/2006 | 2/7/2006 | FNR60 | 25295 |

| 29951 | 17012 | 1/18/2006 | 1/26/2006 | 1/26/2006 | FNR60 | 25295 |
| 29952 | 17013 | 1/17/2006 | 1/30/2006 | 1/30/2006 | FNR60 | 25295 |
| 29953 | 17014 | 1/19/2006 | 1/23/2006 | 1/23/2006 | FNR60 | 25295 |
| 29954 | 17015 | 1/19/2006 | 2/7/2006 | 2/7/2006 | FNR60 | 25295 |
| 29955 | 17016 | 1/19/2006 | 1/30/2006 | 1/30/2006 | FNR60 | 25295 |
| 29956 | 17017 | 1/19/2006 | 2/7/2006 | 2/7/2006 | FNR60 | 25295 |
| 29957 | 17018 | 1/19/2006 | 1/30/2006 | 1/30/2006 | FNR60 | 25295 |

**EXHIBIT 2**



**Secretary of State**
# Business Information Search

| Secretary of State Web Site | Instructions |
|---|---|

| Name | I.D. Number |
|---|---|
| GILES INDUSTRIES OF TAZEWELL, INCORPORATED | 0012733 |

**Business Type\*:** CORPORATION
**Profit/Nonprofit:** FOR PROFIT
**Status\*:** CHANGED
**Date of Formation/Qualification:** 06/06/1968
**Domestic/Foreign:** DOMESTIC
**Place of Incorporation/Organization:** CLAIBORNE
**Duration:** PERPETUAL
**FYC(Fiscal Year Closing) Month:** DECEMBER

**Principal Office:**
**Address Line 1:** 405 S BROAD ST
**Address Line 2:**
**City:** NEW TAZEWELL
**State:** TN
**Zip:** 378257243
**Other than USA:**

**Registered Agent:**
**Name:** ALAN C NEELY
**Address Line 1:** 405 S BROAD ST
**Address Line 2:**
**City:** NEW TAZEWELL
**State:** TN
**Zip:** 378257243

**Business Filing History**

\* Important Note: Business filing History includes information about (1) the basis for an inactive status and (2) the current true name and filing status of a business with an assumed name or a changed status.

Note: This information is current as of three working days prior to today's date.

Report a Technical Issue

## Secretary of State
# Business Information Search

Secretary of State Web Site | Instructions

| Business Name | | I.D. Number | Status |
|---|---|---|---|
| GILES FAMILY HOLDINGS, INC. | | 0012733 | ACTIVE |

| Document Reference | Date | Filing Type | Filing Action |
|---|---|---|---|
| MA49P6311 | 06/06/1968 | CHARTER | |
| KEY ERROR | 08/16/1983 | CHARTER AMENDMENT | Principal Address Changed |
| 537 01826 | 04/12/1985 | CHARTER AMENDMENT | Principal Address Changed |
| 537 01826 | 04/12/1985 | CHARTER AMENDMENT | Stock Changed |
| 722 01134 | 11/09/1987 | AGENT/OFFICE CHANGE BY CORPORATION | Registered Agent Changed |
| 722 01134 | 11/09/1987 | AGENT/OFFICE CHANGE BY CORPORATION | Registered Office Changed |
| 1520-0675 | 11/03/1989 | ARTICLES OF MERGER | |
| FYC/REVENUE | 06/16/1990 | MAILING ADDRESS/FY CLOSING MONTH CHANGE | Fiscal Year Closing Changed |
| FYC/REVENUE | 10/02/1990 | MAILING ADDRESS/FY CLOSING MONTH CHANGE | Fiscal Year Closing Changed |
| 3404-1822 | 10/29/1997 | CHARTER AMENDMENT | Stock Changed |
| ROLL 3527 | 06/19/1998 | NOTICE OF DETERMINATION | |
| 3767-0979 | 04/01/1999 | ANNUAL RPT FILED | 11/17/1999 |
| ROLL 3699 | 06/18/1999 | NOTICE OF DETERMINATION | |
| ROLL 3744 | 09/17/1999 | CERTIFICATE OF ADMINISTRATIVE DISSOLUTION | |
| 3767-0979 | 11/17/1999 | ANNUAL REPORT W/REG OFFICE/AGENT CHANGE | Principal Address Changed |
| 3767-0979 | 11/17/1999 | ANNUAL REPORT W/REG OFFICE/AGENT CHANGE | Registered Agent Changed |

| | | | |
|---|---|---|---|
| 3767-0979 | 11/17/1999 | ANNUAL REPORT W/REG OFFICE/AGENT CHANGE | Registered Office Changed |
| 3769-0690 | 11/24/1999 | REINSTATEMENT FOLLOWING ADMIN DISSOLUTION | |
| 3774-0338 | 11/29/1999 | CERTIFICATE OF REINSTATEMENT | |
| 3802-0289 | 04/01/2000 | ANNUAL RPT FILED | 01/20/2000 |
| 4134-2217 | 04/01/2001 | ANNUAL RPT FILED | 02/27/2001 |
| 4454-1168 | 04/01/2002 | ANNUAL RPT FILED | 03/21/2002 |
| 4754-1396 | 04/01/2003 | ANNUAL RPT FILED | 03/17/2003 |
| 5059-2308 | 04/01/2004 | ANNUAL RPT FILED | 03/08/2004 |
| 5367-0803 | 04/01/2005 | ANNUAL RPT FILED | 02/24/2005 |
| 5725-2405 | 03/21/2006 | CHARTER AMENDMENT | Name Changed |
| 5736-0499 | 04/01/2006 | ANNUAL RPT FILED | 03/27/2006 |
| 5929-1135 | 04/01/2007 | ANNUAL RPT FILED | 01/26/2007 |
| 6248-0046 | 04/01/2008 | ANNUAL RPT FILED | 03/14/2008 |

This information is current as of three working days prior to today's date (except for some annual reports filed during the first four months of the calendar year).



Report a Technical Issue

**EXHIBIT 3**



## Secretary of State
## Business Information Search

| Secretary of State Web Site | Instructions |
|---|---|

| Name | I.D. Number |
|---|---|
| SUNRAY RV, LLC | 0449084 |

| | |
|---|---|
| Business Type*: | LIMITED LIABILITY COMPANY |
| Profit/Nonprofit: | FOR PROFIT |
| Status*: | CHANGED |
| Date of Formation/Qualification: | 06/23/2003 |
| Domestic/Foreign: | DOMESTIC |
| Place of Incorporation/Organization: | CLAIBORNE |
| Duration: | PERPETUAL |
| FYC(Fiscal Year Closing) Month: | DECEMBER |

**Principal Office:**

| | |
|---|---|
| Address Line 1: | 405 SOUTH BROAD ST |
| Address Line 2: | |
| City: | NEW TAZEWELL |
| State: | TN |
| Zip: | 37825 |
| Other than USA: | |

**Registered Agent:**

| | |
|---|---|
| Name: | ALAN NEELY |
| Address Line 1: | 405 SOUTH BROAD ST |
| Address Line 2: | |
| City: | NEW TAZEWELL |
| State: | TN |
| Zip: | 37825 |

**Business Filing History**

\* Important Note: Business filing History includes information about (1) the basis for an inactive status and (2) the current true name and filing status of a business with an assumed name or a changed status.

Note: This information is current as of three working days prior to today's date.

Search Again

Report a Technical Issue

## Secretary of State
# Business Information Search

| Secretary of State Web Site | Instructions |
|---|---|

| **Business Name** | | **I.D. Number** | **Status** |
|---|---|---|---|
| SUNRAY INVESTMENTS, LLC | | 0449084 | ACTIVE |

| Document Reference | Date | Filing Type | Filing Action |
|---|---|---|---|
| 6239-0233 | 03/07/2001 | CERTIFICATE OF REINSTATEMENT | |
| 4846-0181 | 08/23/2003 | ARTICLES OF ORGANIZATION | |
| 5100-2092 | 04/01/2004 | ANNUAL RPT FILED | 04/02/2004 |
| 5351-0027 | 04/01/2005 | ANNUAL RPT FILED | 01/21/2005 |
| 5725-2406 | 03/21/2006 | ARTICLES OF AMENDMENT | Name Changed |
| 5675-2493 | 04/01/2006 | ANNUAL RPT FILED | 02/02/2006 |
| 6236-2123 | 04/01/2007 | ANNUAL RPT FILED | 03/06/2008 |
| ROLL 6065 | 06/21/2007 | NOTICE OF DETERMINATION | |
| ROLL 6097 | 08/27/2007 | CERTIFICATE OF ADMINSTRATIVE DISSOLUTION | |
| 6236-2124 | 03/06/2008 | REINSTATEMENT FOLLOWING ADMIN DISSOLUTION | |

This information is current as of three working days prior to today's date (except for some annual reports filed during the first four months of the calendar year).



Report a Technical Issue

**EXHIBIT 4**

ASSET PURCHASE AGREEMENT

OF

GILES INDUSTRIES OF TAZEWELL, INCORPORATED
R.O. GILES ENTERPRISES, INC.

SALE TO

GILES ACQUISITION CORP.

AND OF

SUNRAY RV, LLC

SALE TO

SUNRAY ACQUISITION, LLC

******

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement is made and entered into as of the 3rd day of March, 2006, by and among Giles Industries of Tazewell, Incorporated, a Tennessee corporation ("Industries"), SunRay RV, LLC, a Tennessee limited liability company ("SunRay"), and R.O. Giles Enterprises, Inc., a Tennessee corporation ("Enterprises") (Industries, SunRay and Enterprises collectively, the "Sellers" and individually, a "Seller"; and Giles Acquisition Corp., an Alabama corporation ("Giles Acquisition Corp."), and SunRay Acquisition, LLC, an Alabama limited liability company ("SunRay Acquisition, LLC") (Giles Acquisition Corp. and SunRay Acquisition, LLC, collectively, the "Purchasers" and individually a "Purchaser"); and Southern Energy Homes, Inc., a Delaware corporation (the "Company"), relating to the purchase of the business and assets of Sellers. Alan C. Neely, who is the sole member of SunRay, the President of Industries and SunRay, and a holder of beneficial interest in Industries and Enterprises, is made a party to this Agreement solely for the purpose of Section 3.30 and Section VIII, and, in his capacity as Sellers Agent, solely for the purpose of Section VII.

### RECITALS:

A.  Industries owns and operates a business that manufactures and sells manufactured housing units at two facilities located in New Tazewell, Tennessee, doing business as "Giles Industries" (the "Industries Business"), SunRay owns and operates a business that manufactures and sells towable travel trailers at a facility located in New Tazewell, Tennessee, doing business as "SunRay RV" (the "SunRay Business") (the Industries Business and the SunRay Business collectively, the "Business"), and Enterprises owns certain real property used in the Industries Business.

B.  Each of Industries, SunRay and Enterprises is affiliated with the other by virtue of controlling, being controlled by or under common control with, the others. The individual beneficial owners of the respective Sellers are all members of the same family.

C.  Giles Acquisition Corp. is a wholly-owned subsidiary of the Company, and SunRay Acquisition, LLC is a wholly-owned subsidiary of Giles Acquisition Corp.

D.  Industries and SunRay desire to sell and the Purchasers desire to purchase the Business and all of the properties, assets, trade names, contracts, rights and other things of value owned by Industries and SunRay and used in the Business, and Enterprises desires to sell, and the Purchasers desire to purchase, the real estate upon which the Industries Business is located, subject to certain of their respective current liabilities and certain other stated obligations of the Sellers, all on the terms and conditions hereinafter set forth.

E.  The parties have agreed upon the terms and conditions of such sale and purchase and are setting out their agreement herein.

NOW, THEREFORE, in consideration of the premises, the covenants, promises and agreements hereinafter contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1

## Section I
## SALE AND PURCHASE OF ASSETS AND ASSUMPTION OF LIABILITIES

1.1     **Sale and Purchase of Assets.** On the terms and conditions set forth herein, the respective Sellers hereby agree to transfer, sell, convey and assign to Purchasers, free and clear of all liens and encumbrances (except those securing the Assumed Liabilities), and Purchasers agree to purchase from Sellers, the assets of Sellers of every kind and description used in the operation of the Business, wherever located, (collectively, the "Purchased Assets") including, without limitation, the assets hereinafter specifically described; provided, however, that the Purchased Assets shall not include the following (the "Excluded Assets"):

A.     **All Sellers.** The following assets of each of the Sellers:

(i)     company charter, articles and other organizational documents, minute books and membership ownership record books, qualifications to conduct business as a foreign corporation or company, taxpayer and other identification numbers, seals, minute books, stock transfer books, blank stock certificates, and other documents relating to the organization, maintenance, and existence of the Sellers as legal entities, all income tax returns and work papers directly relating to income tax returns, and any of the rights of the Sellers under this Agreement;

(ii)    Sellers' bank account(s) established for the purpose of receiving the proceeds of this sale, and which will contain less than $100.00 immediately prior to the Closing;

(iii)   prepaid excise and/or franchise taxes, to the extent attributable to periods after the Closing;

(iv)    insurance policies and the right to proceeds thereunder (except as provided in Section 9.6 and except proceeds paid for property damage that is unrepaired at the Closing);

(v)     employee benefit plans, arrangements and agreements; and

(vi)    leases of personal property leased by the Sellers and used in the operation of the Business that are not assignable according to the terms of such leases, as listed on Schedule 1.1A(vi).

B.     **Industries.** The following assets of Industries:

(i)     certificates of deposits listed on Schedule 1.1B(i) in the aggregate principal amount of $3,550,000;

(ii)    Charles Schwab Account in the amount of $402,864.41, as of January 31, 2006, and as it may be adjusted prior to the Closing;

(iii)   life insurance policies listed on Schedule 1.1B(iii) having approximately $1,296,200 in aggregate cash surrender value;

(iv)    the specific prepaid items listed on Schedule 1.1B(iv); and

2

▓▓▓▓those certain real properties known and identified on Industries' financial statements as the "Countryside Subdivision" and "Land" and having a current value on Industries' balance sheet dated as of December 31, 2005 of approximately $210,096 and $55,100, respectively, and more particularly described on Schedule 1.1B(v)(v).

1.2   **Purchased Assets.** Purchased Assets shall include, without limitation, the following assets owned by the respective Sellers and used in the Business as of the Closing Date (as defined in Section 12.1):

A.   **Assets of Industries and SunRay:**

(i)   **Cash.** Except as described in Section 1.1B(i), all of the remaining cash and cash equivalents of Industries and SunRay at the Closing Date, including, without limitation, such amounts deposited in any bank account or petty cash fund of Industries and SunRay, and including the transfer of Industries' and SunRay's bank accounts;

(ii)   **Inventory.** All of the inventory of Industries and SunRay in respect of the Business at the Closing Date, including raw materials, work-in-process, finished goods and inventory;

(iii)   **Accounts Receivable.** All of the accounts receivable and other receivables of Industries and SunRay at the Closing Date (the "Accounts Receivable");

(iv)   **Fixed Property, Plant and Equipment.** All buildings, structures, improvements and fixtures located thereon, including all electrical, mechanical, plumbing and other building systems, fire protection, security and surveillance systems, telecommunications, computer, wiring, and cable installations; utility installations, water distribution systems, and landscaping (the "Property and Plant"), and all machinery and equipment, tooling, vehicles, software, computers, supplies, desks, chairs, tables, furniture, fixtures and all other personal property of Industries and SunRay used in the operation of the Business, including but not limited to those items listed on Schedule 1.2A(iv) (the "Equipment");

(v)   **Leases.** Except as described in Section 1.1A(vi), the assignment of Industries and SunRay in and to the leases of the personal property leased by Industries and SunRay, respectively, and used in the operation of the Business, including but not limited to those leases listed on Schedule 1.2A(v) attached hereto (the "Leases");

(vi)   **Contracts.** All of Industries' and SunRay's right, title and interest in and to all contracts and agreements relating to the Business, limited however, to those Contracts listed on Schedule 1.2A(vi) attached hereto (the "Contracts");

(vii)   **Intellectual Property.** Industries' and SunRay's company name and all of their respective patents, trademarks, service marks and trade names,

3

inventions, proprietary rights, approvals and ratings to the extent assignable, and including but not limited to those listed on Schedule 1.2A(vii) attached hereto (collectively, the "Intellectual Property");

(viii)   **Information Technology.** All computer software licenses, software documentation, back-up tapes of data and software, all personal computers, file servers, telecommunication software and hardware, information technology fire protection equipment, security software and systems, as set forth on Schedule 1.2A(viii).

(ix)   **Prepaid Items and Deposits.** Except as described in Section 1.1A(iii) and 1.1B(iv), all prepaid items and deposits relating to the Business useful to Purchasers including, without limitation, those described on Schedule 1.2A(ix) attached hereto and all rental deposits under the Leases and utilities deposits (the "Prepaid Items and Deposits");

(x)   **Business Records.** All lists of dealers, suppliers and customers served by Industries and SunRay, all records of accounts receivable and payable, all personnel records, written policies and procedures, and all other business records of Industries and SunRay related to the operation of the Business (the "Business Records"), provided, however, that Industries and SunRay shall have reasonable access (with assistance of Purchaser's employees) to such Business Records subsequent to Closing for accounting and income tax return purposes, and with respect to litigation and administration of Excluded Assets and Excluded Liabilities; and

(xi)   **Miscellaneous.** All telephone numbers, post office boxes, website addresses, e-mail addresses, licenses and all governmental approvals and permits to the extent assignable and all other miscellaneous tangible and intangible rights, claims and assets.

B.   **Assets of Enterprises:**

That certain real property, presently enclosed by fencing, and consisting of approximately 59 acres, more or less, and all building(s) thereon, and that certain parcel of real property proximal to the Industries plants, both as specifically described in Schedule 1.2B (collectively, the "Real Estate").

1.3   **Assumed Liabilities.** Purchasers shall at the Closing, assume, and hold Industries and SunRay harmless from, only the following unpaid liabilities and obligations of Industries and SunRay (collectively, the "Assumed Liabilities"):

A.   The unpaid liabilities included in the Seller's statement of assets to be sold and liabilities to be assumed dated as of the Closing Date (the "Closing Balance Sheet"), but only to the extent included therein; and

B.   the Leases and Contracts; and

C.   the open purchase orders and sales orders ("Open Orders") outstanding as of the close of business on the last business day immediately preceding the Closing

4

Date and executed in the ordinary course of business by Seller, a true and complete list of which Open Orders shall be supplied to Purchaser by Seller prior to Closing.

1.4    **Liabilities Not Assumed.**  Other than the Assumed Liabilities, Purchasers shall not accept, assume, become or be liable for or subject to any liability, indebtedness, obligation or responsibility of Sellers or of any other person or entity in any way related to the ownership or operation, or both, of the Purchased Assets or the Business prior to the Closing Date, whether said liability, indebtedness, obligation or responsibility arises before or after the Closing. Without limiting the interpretation of this Section 1.4, Purchasers shall not assume any liability for income taxes of Sellers related to the within transaction, for retiree benefits or for franchise taxes, excise taxes, federal income taxes and state income taxes first due during or attributable to periods prior to Closing.  It is expressly agreed, without limiting the effect of the preceding sentence, that Purchasers shall not be obligated to assume or become liable for, without Purchasers' express written consent, any of Sellers' liabilities, debts or commitments of any kind whatsoever, known or unknown, fixed or contingent, or, without limitation, liabilities for federal, state, local or foreign income or revenue or sales taxes on account of any transactions of Sellers, including the consummation of this Agreement, liabilities which relate to any product liability or warranty claim with respect to products sold by Industries or SunRay or sold after the Closing Date but produced prior to the Closing Date (notwithstanding the Purchasers' Limited Litigation Indemnity of Industries and SunRay pursuant to Section XIV), any obligation or liability (including, but not limited to, any audits, tax returns, or reports) for or arising out of any pension, profit sharing, retirement, health, life or other benefit plan, including, but not limited to, those listed on Schedule 3.20, sponsored by any Seller or the Business, or for any costs or expenses of the Sellers incurred in connection with or resulting from the transactions contemplated by this Agreement except to the extent contemplated by Section 15.5.

**Section II**
**PURCHASE PRICE**

2.1    **Purchase Price.**  The Purchase Price for the Purchased Assets shall be Seventeen Million Six Hundred Thousand Dollars ($17,600,000) plus the assumption of the Assumed Liabilities, less the amount of the Sellers' expenses in connection with this Agreement pursuant to Sections VI, 9.6, 10.9 and 15.5 (collectively, the "Sellers' Transaction Expenses").

2.2    **Payment of Purchase Price**

A.    **Assumption and Payment of Certain Liabilities.**   At the Closing as part payment of the purchase price for the Purchased Assets, Purchaser shall assume and agree to pay, and hold Seller harmless from, the Assumed Liabilities. The following Assumed Liabilities will be paid and satisfied effective as of the Closing:

(i)    that certain obligation to Maxine Giles in the amount of $241,151.00, net of $43,689.23 and any other amounts owed by Mrs. Giles to the Sellers; and

(ii)    that certain obligation to Dorothy Neely in the amount of $416,152, net of $75,500 and any other amounts owed by Mrs. Neely to the Sellers.

5

B.   **Cash.** Fifteen Million, Eight Hundred Forty Thousand Dollars ($15,840,000) of the Purchase Price, less the amount of Sellers' Transaction Expenses, shall be paid in cash. Seven Hundred Fifty Thousand Dollars ($750,000), plus an amount equal to the receivables, if any, owed to Industries at the close of the tenth business day before the Closing Date under those certain contracts listed and identified as items 1, 2 and 3 on Schedule 1.2A(vi) (the "FEMA Receivable"), shall be deposited into an escrow account (the "Escrow Account") established pursuant to an escrow agreement in the form attached hereto (the "Escrow Agreement). The balance of the cash portion of the Purchase Price shall be paid by the Purchasers in cash at the Closing by bank wire transfer to the Sellers, allocated among the Sellers and/or their respective beneficial owners in such amounts as the Sellers shall direct by written instruction delivered to the Purchasers prior to the Closing Date.

C.   **Shares.** The remaining One Million Seven Hundred Sixty Thousand Dollars ($1,760,000) of the Purchase Price shall be paid by the delivery of that amount in value of unregistered shares of the common stock, $.01 par value of Southern Energy Homes, Inc. (the "Shares"). The Shares shall be subject to the agreement set forth in Section 8.2. For the purpose of computing the number of Shares issuable to the Sellers, the Shares will be valued at the last reported sale price on the earlier to occur of (i) the tenth business day prior to the Closing Date (ii) or February 15, 2006. The Sellers have directed that all of the Shares shall be allocated and distributed to Alan C. Neely. All such Shares shall be subject to the agreements set forth in Section VIII of this Agreement.

2.3   **Allocation of Purchase Price.** The Purchase Price shall be apportioned among the properties, assets, contracts, and business being sold by Sellers to Purchasers as set out in Schedule 2.3.

2.4   **FEMA Receivable Settlement.** Within ten (10) business days after the 180th day following the Closing Date, the following actions shall occur:

A.   Any portion of the FEMA Receivable that has not then been received by the Purchasers shall be paid from the Escrow Account to the Purchasers; and

B.   All the Purchasers' right, title and interest in and to any such uncollected portion of the FEMA Receivable shall be assigned and conveyed to the Sellers.

2.5   **Additional Payment to Sellers.** Of the funds then remaining in the Escrow Account after the FEMA Receivable has been settled as set forth in Section 2.4 above, all funds in excess of $750,000 shall promptly be paid and distributed to the Sellers, and the remaining $750,000 shall continue subject to the terms of the Escrow Agreement until termination thereof.

## Section III
## REPRESENTATIONS AND WARRANTIES OF SELLER

As an inducement to Purchasers to enter into this Agreement and to consummate the transactions contemplated hereby, each Seller, and, as to Section 3.30, Alan C. Neely, separately and severally, and not jointly, hereby represents and warrants to Purchasers that each of the following representations and warranties set out in this Section III is true and correct in all material respects to the best of its knowledge and belief, and acknowledges that each of said representations and warranties has been relied upon by

6

Purchasers and is material to the Company's and the Purchasers' decision to enter into this Agreement and to consummate the transaction contemplated herein.

3.1 **Company Existence and Power.** Each of Industries and Enterprises is a corporation, and SunRay is a limited liability company, duly organized under the laws of the State of Tennessee, validly existing, and in good standing under the laws of the State of Tennessee; has the power to own, operate, and lease its properties as presently owned, operated, and leased and to carry on its business as now being conducted; is duly qualified to conduct business and is in good standing in each jurisdiction in which a failure to qualify would have a material adverse effect on the Business where such qualification is necessary under the applicable laws of such jurisdiction; and has the requisite power and authority to enter into and perform its obligations under this Agreement in accordance with its terms.

3.2 **Authority Relative to Agreement.** The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated herein have been duly and effectively authorized by all necessary company action, including approval by Industries' and Enterprises' shareholders and SunRay's Members. This Agreement, upon execution by the Seller, will constitute the legal, valid and binding obligation of Seller in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, or other laws affecting creditors' rights generally, and except as may be limited by general principles of equity.

3.3 **Effect of Agreement.** Except as set forth on Schedule 3.3 hereof, the execution, delivery and performance of this Agreement by Seller and the consummation of the transactions contemplated herein do not require the consent, waiver, approval, license or authorization of any person or public authorities and do not violate, in any respect, any provision of law applicable to Seller; do not conflict with or result in any breach of Seller's articles or bylaws, or articles of organization or operating agreement, or with or without the giving of notice and/or the passage of time, any mortgage, deed of trust, license, lease, indenture or other agreement or other instrument, or any order, judgment, or any other restriction of any kind or character, to which Seller is a party or any of Seller's property may be bound; do not give to others any right to terminate, or result in any termination of, any such instrument; do not result in termination of any provisions of any such instrument; and do not result in the creation of any lien, charge or encumbrance upon any of the property of Seller.

3.4 **Ownership of Seller.** There are no outstanding subscriptions, options, warrants, rights, convertible securities, or other agreements or commitments obligating Seller to issue additional shares of stock or membership interest. The names and addresses of each of the stockholders or members, the social security numbers or tax identification number of each such stockholder or member to whom Shares will be issued, and the ownership interest of Seller owned by each stockholder or member are as shown on Schedule 3.4.

3.5 **Operation of Business.** The Seller has substantially complied with all laws, statutes, ordinances, rules, regulations and orders of all governmental entities applicable to the operations of its business, including, without limiting the generality of the foregoing, Title VII of the Civil Rights of 1954, as amended ("Title VII"), the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), the Equal Pay Act of 1963, as amended ("EPA"), the National Labor Relations Act of 1935, as amended ("NLRA"), the Federal Employee Retirement Income Security Act, as amended ("ERISA"), the Immigration Act, the Federal Occupation Safety Health Act ("OSHA"), the Fair Labor Standards Act ("FSLA"), the Americans With Disabilities Act ("ADA"), the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), or applicable statutes, regulations, orders and restrictions relating to employment standards and controls. Except as disclosed on Schedule 3.5, no notice has been issued and to Seller's best knowledge and belief, no investigation or review is pending or threatened by any governmental ent⁻

with respect to (i) any alleged violation by the Seller of any law, ordinance, rule, regulations, order, policy or guideline of any governmental entity, or (ii) any alleged failure to have all permits, certificates, licenses, approval and other authorizations required in connection with the operation of the Business.

3.6     **Financial Statements.**  Sellers' Balance Sheet and operating statement as of the fiscal year ending December 31, 2005 are set out in Schedule 3.6. The Balance Sheet fairly presents the financial condition of the Sellers as of December 31, 2005 and the earnings statement for the period ending December 31, 2005, fairly presents the results of the operations of the Business of Sellers for the calendar year ending December 31, 2005. The said financial statements have been prepared on a modified cash basis and do not contain any untrue statements of material fact or omit to state any material fact necessary in order to make the statements contained in this paragraph or therein not misleading.

3.7     **Material Changes.**  Since December 31, 2005, except as disclosed on Schedule 3.7 attached hereto, there has not been:

A.     any material adverse change in the condition, financial or otherwise, of the Business of Seller (other than changes in the ordinary course of business, none of which has been materially adverse and which are not in the aggregate materially adverse);

B.     damage, destruction or loss, whether or not covered by insurance, materially adversely affecting the Purchased Assets or the Business;

C.     any increase in the compensation payable or to become payable by the Seller to any of its employees or agents employed in connection with the operation of the Business, or in any bonus payment or arrangement made to or with any thereof, or any material change in the terms of an employee benefit plan through amendment or otherwise;

D.     any labor dispute with respect to or affecting the Business that would have a materially adverse effect upon the Business;

E.     any distributions to stockholders or members paid or declared by Seller;

F.     any merger or consolidation involving Seller, or any issuance or other transfer of membership interests or capital stock of Seller or of any options or warrants in respect thereof;

G.     any disposition of the assets of Seller other than in the ordinary course of business; or

H.     any change to accounting policies and procedures.

3.8     **Leases.**  Seller has previously delivered to Purchaser true and correct copies of the Leases together with all amendments and notices relating thereto and which Leases are listed on Schedule 1.2A(v).  The Leases listed on Schedule 1.2A(v) constitute all of the personal property leases to which Seller is a party as Lessor or Lessee. Such Leases remain in full force and effect, all rents and additional rents currently due on such Leases have been paid. No waivers, indulgences or postponements of Seller's obligations thereunder have been granted by any lessor, or of any lessor's obligations by Seller. There exists no event or occurrence, condition or act which, with the giving of notice, the lapse of time or the happening of any further event or condition would become a material default by Seller (or to the best of

8.

Seller's knowledge, by any lessor) under such Leases. To the best knowledge and belief of Seller, provided that the lessor's consent, if necessary, is obtained, the consummation of the transactions contemplated herein in accordance with the terms hereof will not constitute a material default under any Lease.

3.9     **Title to Purchased Assets.** Seller has (or, with respect to Inventory delivered after the date hereof, will have on the effective date of the sale) possession (except for outside processing, if any) or control of the Purchased Assets, and Seller has or, at the time of Closing, will have good and marketable title to all of the Purchased Assets subject to no mortgage, pledge, lien, conditional sales agreement, encumbrance, security interest, charge, or claim, including without limitation any federal, state or municipal tax claim or lien against any of the Purchased Assets.

3.10     **Tools and Inventory Owned by Third Parties.** Set forth on Schedule 3.10 is a true and correct list of all tools, equipment, components, materials, inventory, and any other personal property in the Seller's possession and used in the Business owned by third parties (except as may be subject to Leases listed in Schedule 1.2A(v)), or subject to third parties' rights, including, by way of example but without limiting the generality of the foregoing, tools or equipment owned and provided by materials suppliers for the Seller's use in connection with such materials, or inventory or other goods held on approval, on sale or return, or under consignment or other arrangement providing for Seller's use or possession but not ownership.

3.11     **Condition of Equipment.** The Property and Plant and the Equipment that is presently being used in the operation of the Business has been inspected by Purchasers and Purchasers purchase such Equipment "as is, where is" without representation or warranty for merchantability or fitness for particular purpose.

3.12     **Contracts and Commitments.** Sellers have previously delivered to Purchaser true and correct copies of all of the Contracts, which constitute all of the material outstanding contracts, agreements, commitments or understandings (written or oral) to which Seller is a party relating to the operation of the Business and which Contracts are listed on Schedule 1.2A(vi).  Neither Seller nor, any other party to any Contract or Open Order, is in material default under the terms of any Contract or Open Order other than as described in Schedule 3.12.  Seller is not subject to nor a party to any mortgage, lien, lease, agreement, contract, instrument, order, judgment or decree or any other restriction of any kind or character which would hinder the continued operation of the Business by Purchasers after the Closing on substantially the same basis as theretofore operated, except those liens securing the Assumed Liabilities.

3.13     **All Assets.** The Purchased Assets together with the Real Estate constitute all the material properties of any nature with which Seller has conducted the Business for the twelve month period prior to the Closing Date, subject to sale of inventory and additions and deletions of other assets in the ordinary course of business. Industries represents and warrants that the Real Estate is all of the real estate occupied by Industries and used in its Business.

3.14     **Insurance.** Set forth on Schedule 3.14 attached hereto is a true and correct schedule of all policies of insurance on which Seller is named as an insured party, and said schedule includes the name of the insurer, the nature of the insurance coverage and the policy limits.  The policies listed upon Schedule 3.14 are in full force and effect and all applicable premiums thereon have been paid in full through the dates indicated thereon. Such insurance is believed by Seller to be adequate in amount of coverage and risks insured against. Seller will continue to maintain the insurance coverage afforded by the policies listed on Schedule 3.14 in full force and effect up to and including the Closing Date.

9

3.15   **Judgments and Decrees.** Seller is not subject to any order, judgment or decree which would prevent the consummation of any of the transactions contemplated hereunder or compliance by Seller with the terms, conditions and provisions hereof.

3.16   **Litigation and Administrative Proceedings.** Except as set forth on Schedule 3.15 attached hereto, there are no actions, suits, or proceedings which have been served on Seller or, threatened against, at law or in equity, by or before any federal, state or municipal court or any other governmental department, commission, board, bureau, agency or instrumentality, or any arbitration or mediation forum. Seller is not subject to any liability by reason of a violation of any order, rule, or regulation of any federal, state, municipal or other governmental agency, department, commission, bureau, board or instrumentality to which Seller is subject. The language of this Section 3.16 shall apply, without limitation, to any and all actions or causes of action related directly or indirectly to the operations within the Real Estate.

3.17   **No Adverse Change.** To the best knowledge and belief of Seller, there exists no event, condition or other circumstance that immediately, or with a lapse of time, will materially adversely affect the Business as conducted by Seller. Except as set forth on Schedule 3.17, Seller has no knowledge of any pending changes in governmental laws or regulations that would materially and adversely affect Seller's Business.

3.18   **Name, Trademarks and Trade Names, Licenses, Etc.** To the best knowledge and belief of Seller, Seller owns or has adequate licenses or other rights to use its name and all trademarks, service marks, trade names, licenses, laboratory ratings and approvals, copyrights, patents, proprietary information, and designs either used in, or necessary for, the conduct of its Business; and all trademarks, service marks, trade names, licenses, laboratory ratings and approvals, copyrights, designs owned by or under license to Seller together with all pertinent information related thereto, including filing, registration and expiration dates, serial numbers, record owners and licenses and their essential terms are listed on Schedule 1.2A(vii) attached hereto. Seller has not interfered with, infringed upon, misappropriated, or otherwise come into conflict with any intellectual property rights of third parties, and has never received any charge, complaint, claim, demand, or notice alleging any 'such interference, infringement, misappropriation, or violation (including any claim that Seller must license or refrain from using any intellectual property rights of any third party). To Seller's best knowledge and belief, no third party has interfered with, infringed upon, misappropriated, or otherwise come into conflict with any intellectual property rights of Seller.

3.19   **Employment Agreements.** Except as set forth in Schedule 3.19 hereto, Seller has no written union contracts, employment contracts, consulting agreements, indemnification agreements, severance agreements or any other binding agreements relating to the employment of any of its employees. Seller is not a party to any agency, consulting or other agreement with respect to consultants or agents, except as described on Schedule 3.19. Seller has performed the obligations required to be performed by it under, and has complied with the provisions of, all agreements set forth on such Schedule 3.19, and all such agreements are in full force and effect and constitute the valid and legally binding obligations of the parties thereto. Except as set forth in the instruments referred to in said Schedule 3.19 and except as may be required by applicable law, upon termination of the employment of any of said employees, neither Seller nor Purchaser will by reason of anything done prior to the Closing hereunder be liable to any of said employees for so-called severance pay or any other payments.

3.20   **Employee Benefit Plans.** Schedule 3.20 contains a true and complete list of all employee benefit arrangements currently in effect covering employees of Seller. Other than as disclosed on Schedule 3.20 hereto, at no time prior to the date hereof has there been (and at no time from and after the date hereof through the Closing will there be) any pension, retirement, disability, medical, dental or other health plan, life insurance or other death benefit plan, profit sharing, deferred compensation, bonus

10

or other incentive plan, vacation benefit plan, severance plan, or other employee benefit plan or arrangement, including, without limitation, any pension plan ("Pension Plan") as defined in Section 3.2 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and any welfare plan ("Welfare Plan") as defined in Section 3(1) of ERISA, whether or not any of the foregoing is funded, and whether written or oral, (a) to which Seller is or was a party, or (b) with respect to which Seller has made any payments or contributions or may otherwise have any liability (including any such plan or arrangement formerly maintained by the Seller). No reportable Event (as described in Section 4043(b) of ERISA) has occurred with respect to any Pension Plan or Welfare Plan, and no event has occurred that would impose any liability on Seller or any Related Company (as defined in Section 414(c) of the Internal Revenue Code of 1986, as amended (the "Code")) under ERISA. Each Pension Plan and Welfare Plan is in material compliance, and has been administered materially in accordance with the applicable provisions of the Code and ERISA. Seller has made all payments due to be made to any Pension Plan or Welfare Plan.

3.21    **Salaries, Wage Rates.** Schedule 3.21, which schedule contains a true and accurate list of all salaried employees and their salary rates, a list of the rates of compensation for hourly employees in the Business and amounts paid on account of any incentive programs, a list of all bonuses paid or earned, and all expenses reimbursed to or paid on behalf of employees for and during the twelve month period prior to the Closing Date. Schedule 3.21 also lists all non-employees who have since December 31, 2005, performed services for the Seller as independent contractors, other than persons rendering legal or independent accounting services, and to whom the Seller has issued a Form 1099. Seller has properly treated all of such persons as independent contractors for purposes of federal employment taxes and income tax withholding in accordance with the Code.

3.22    **Ordinary Course of Business.** Other than as specifically disclosed to Purchaser hereunder, since December 31, 2005, Seller has conducted its business solely in the usual and ordinary manner and has refrained from any transaction not in the ordinary course of business.

3.23    **Accounts Receivable.** All outstanding Accounts Receivable to be purchased are bona fide, arose in the ordinary course of business, and, are collectible in full (less any reserve for bad debts) within 180 days of Closing. Except as set forth in Schedule 3.23, none of such Accounts Receivable are subject to any claim of off-set, recoupment, or counterclaim and Seller has no knowledge of any facts or circumstances giving rise to any such claims against it. No Account Receivable is contingent upon the performance of Seller of any obligation or contract. No person has any lien on the Accounts Receivable or any part thereof except those liens securing the Assumed Liabilities and except as set out in Schedule 3.25, and no agreement for deduction or discount has been made with respect to any such Accounts Receivable, other than in the ordinary course of business as disclosed on Schedule 3.23. The representations and warranties contained in this Section 3.23 do not apply to the FEMA Receivable.

3.24    **Books and Records.** Except as set forth on Schedule 3.24, Seller has maintained its books of account on a modified cash basis, consistently applied.

3.25    **Indebtedness.** Schedule 3.25 is a list of Seller's indebtedness including as to each indebtedness, the creditor's name and address, the principal balance and accrued interest as of a recent date together with a statement of the collateral securing each indebtedness. Seller has furnished to the Purchaser copies of all loan documents including capitalized personal property leases evidencing Seller's indebtedness.

3.26    **Preparation of Schedules.** The Seller's Schedules attached hereto have been prepared by Seller. The statements contained herein, in the Seller's Schedules, are true and correct in all material respects, and the Schedules do not omit any fact necessary to make the statements contained therein not

11

misleading in any material respect. The statements and information contained in the Schedules shall be deemed to constitute representations and warranties of Seller under this Agreement to the same extent as if herein set forth in full.

3.27   **Hazardous Materials.**  Except as disclosed on Schedule 3.27(a), Seller has not used or installed any Hazardous Material (as hereinafter defined) on, from, or in the Real Estate. Seller has not violated any applicable Environmental Laws (as hereinafter defined) relating to or affecting the Real Estate; all of Seller's properties are currently in compliance with all Environmental Laws, and there are no facts or circumstances currently existing upon or under such properties, or relating to such properties, which may violate any applicable Environmental Laws, and the Seller has not been served with any action, suit, investigation or proceeding against Seller, or the Real Estate seeking to enforce any right or remedy under any of the Environmental Laws. Seller has obtained all licenses, permits and/or other governmental or regulatory actions necessary to comply with Environmental Laws (the "Permits") and Seller is in full compliance with the terms and provisions of the Permits; and there has been no Release (as hereinafter defined) of any Hazardous Materials on or from the Real Estate; As used in this Agreement: (i) "Hazardous Material" or "Hazardous Materials" means and includes petroleum products, flammable explosives, radioactive materials, asbestos or any material containing asbestos, polychlorinated biphenyls, and/or any hazardous, toxic or dangerous waste, substance, chemical or material defined as such, or as a Hazardous Substance or any similar term, by, in or for the purposes of the Environmental Laws, including, without limitation section 101(14) of CERCLA (hereinafter defined); (ii) "Release" shall have the meaning given such term, or any similar term, in the Environmental Laws, including, without limitation, Section 101(22) of CERCLA; and (iii) "Environmental Law" or "Environmental Laws" shall mean any "Super Fund" or "Super Lien" law, or any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree, regulating, relating to or imposing liability or standards of conduct concerning any Hazardous Materials as may now be in effect, including, without limitation, the following, and all regulations promulgated thereunder or in connection therewith: the Super Fund Amendments and Reauthorization Act of 1986 ("SARA"); the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"); the Clean Air Act ("CAA"); the Clean Water Act ("CWA"); the Toxic Substances Control Act ("TSCA"); the Solid Waste Disposal Act ("SWDA"), as amended by the Resource Conservation and Recovery Act ("RCRA"); the Hazardous Waste Management System; and the Occupational Safety and Health Act of 1970 ("OSHA").

3.28   **Inventory.**  All items of inventory included in the Purchased Assets included in the Balance Sheet have been valued on a modified cash basis, using a first-in, first-out method, and fairly and accurately represent the inventory.

3.29   **Sensitive Payments.**  None of Seller or, to the best of Seller's knowledge after due inquiry, any officer, director, employee, agent or other representative of Seller or any person acting on their behalf, has made, directly or indirectly, any bribes, kickbacks, illegal political contributions with corporate funds, payments from corporate funds not recorded on the books and records of the payor, payments from corporate funds that were intentionally recorded falsely on the books and records of the payor, payments from corporate funds to governmental officials in their individual capacities or illegal payments from corporate funds to obtain or retain business either within the United States or abroad.

3.30   **Investment Representations.**  The Sellers and Alan C. Neely have informed the Purchasers and the Company that all the Company Shares to be issued in partial payment of the Purchase Price will be allocated and/or distributed to Mr. Neely. Mr. Neely accordingly hereby acknowledges his understanding that the Company Shares to be issued in partial payment of the Purchase Price will not have been registered, nor is registration contemplated, under the Securities Act of 1933, as amended (the "Securities Act") or under the securities laws of any state, but are being offered pursuant to exemptions

from the registration requirements of federal and state securities laws, based in part upon Mr. Neely's representations contained in this Agreement. Mr. Neely hereby represents and warrant as follows:

A.  **Seller Bears Economic Risk.** Mr. Neely, either alone or with his representatives and advisors, has substantial experience in evaluating and investing in private placement transactions of securities in companies similar to the Company so that he is capable of evaluating the merits and risks of an investment in the Company and has the capacity to protect his own interests. Mr. Neely must bear the economic risk of this investment indefinitely unless the Shares are registered pursuant to the Securities Act, or an exemption from registration is available. Mr. Neely understands that the Company has no present intention of registering the Shares or any shares of its common stock. He also understands that there is no assurance that any exemption from registration under the Securities Act will be available and that, even if available, such exemption may not allow him to transfer all or any portion of the Shares under the circumstances, in the amounts or at the times he might propose.

B.  **Acquisition for Own Account.** Mr. Neely is acquiring the Shares for his own account for investment only, and not with a view toward distribution.

C.  **Accredited Investor.** Mr. Neely represents that he is an accredited investor within the meaning of Section 501(a)(5) and/or (6) of Regulation D under the Securities Act.

D.  **Company Information.** Mr. Neely has been provided copies of the Company's Annual Reports to Shareholders for each of the fiscal years ended January 3, 2003, January 2, 2004 and December 31, 2004, its Quarterly Reports to Shareholders for each of the first three quarters of the fiscal years ending January 2, 2004, December 31, 2004 and December 30, 2005, the Company's proxy materials for its annual meetings of shareholders held in 2003, 2004 and 2005 (collectively, the "Company Information"), and such other information, if any, as he or his representatives have requested concerning the Company. He acknowledges that he (and his representatives, or other advisors, if any) has had the opportunity to ask questions of and receive satisfactory answers from the Company and its management concerning the Company, the Company Information and the Shares.

E.  **Rule 144.** Mr. Neely acknowledges and agrees that the Shares must be held indefinitely unless they are subsequently registered under the Securities Act or an exemption from such registration is available. He has been advised or is aware of the provisions of Rule 144 promulgated under the Securities Act, which permits limited resale of shares purchased in a private placement subject to the satisfaction of certain conditions, including, among other things: the availability of certain current public information about the Company, the resale occurring not less than one year (or two years as to certain persons) after a party has purchased and paid for the security to be sold, the sale being through an unsolicited "broker's transaction" or in transactions directly with a market maker (as said term is defined under the Securities Exchange Act of 1934, as amended) and the number of shares being sold during any three-month period not exceeding specified limitations.

13

3.31   **Survival.** The representations and warranties of Seller set forth in this Agreement shall be continuous and shall survive the Closing and delivery of the Purchased Assets for a period of four (4) years.

## Section IV
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

As an inducement to the Sellers to enter into this Agreement and to consummate the transactions contemplated hereby, each of the Purchasers and the Company hereby represent and warrant to Sellers each of the following representations and warranties and acknowledges that each of said representations and warranties has been relied upon by Sellers and is material to Sellers' decision to enter into this Agreement and to consummate the transaction contemplated herein:

4.1   **Corporate Existence and Power.** Giles Acquisition Corp. is a corporation and SunRay Acquisition, LLC is a limited liability company, each duly organized and validly existing, and each will be in good standing under the laws of the State of Alabama upon the timely filing of its initial Alabama Business Privilege Tax Return and Annual Report; the Purchaser and the Company each has the corporate power to own, operate, and lease its properties as presently owned, operated, and leased and to carry on its business as now being conducted; is duly qualified to do business and is in good standing in each jurisdiction in which a failure to qualify would have material adverse effect on the conduct of its business or ownership of its property where such qualification is necessary under the applicable laws of such jurisdiction; and has the requisite corporate power and authority to enter into and perform its obligations under this Agreement in accordance with its terms.

4.2   **Authority Relative to Agreement.** The execution, delivery, and performance of this Agreement by Purchaser, the Guaranty of Purchasers' obligations hereunder by the Company, and the consummation by Purchaser of the transactions contemplated hereby, have been duly and effectively authorized by all necessary corporate action, including approval of the board of directors of Purchaser and the board of directors of the Company. This Agreement, upon execution by Purchasers and Sellers, and the Guaranty of Purchaser's obligations by the Company will constitute the legal, valid and binding obligation of Purchaser and the Company, respectively, except as may be limited by bankruptcy, insolvency, reorganization or other laws affecting creditors rights generally and except as may be limited by general principles of equity.

4.3   **Effect of Agreement.** The execution, delivery and performance of this Agreement by Purchaser and the Guaranty of the Company, and the consummation by Purchaser of the transactions contemplated herein do not violate, in any respect, any provision of law applicable to Purchaser or the Company; do not conflict with or result in any breach of Purchaser's or the Company's articles of incorporation or by-laws, or articles of organization or operating agreement, or with or without the giving of notice and/or the passage of time, any mortgage, deed of trust, license, lease, indenture or other agreement or other instrument, or any order, judgment, or any other restriction of any kind or character, to which Purchaser or the Company is a party or by which Purchaser or the Company or any of Purchaser's or the Company's property may be bound; do not give to others any right to terminate, or result in any termination of, any such instrument; do not result in termination of any provisions of such instrument; and do not result in the creation of any lien, charge or encumbrance upon any of the property of Purchaser.

4.4   **Purchaser's Knowledge.** Purchaser has no knowledge of any fact, occurrence, event or condition that would make any representations or warranties of any Seller untrue in any material respect. Until the Closing Date, Purchaser will immediately advise Sellers in writing of any fact or occurrence or any pending or threatened occurrence of which it obtains knowledge which, if existing and known at any

14

time prior to the Closing Date, would make any representation or warranty of a Seller untrue in any material respect.

4.5   **Material Information, Etc.**  No representation or warranty made herein by Purchasers and the Company, and no statement made by Purchasers and the Company contained in the Company Information and any document, schedule, certificate or other instrument furnished or to be furnished to Sellers by Purchasers and the Company in connection with the transactions contemplated by this Agreement, contains or will contain any untrue statement of a material fact or omits or will omit to state any material facts necessary in order to make any statement of fact contained herein or therein not misleading.

4.6   **Survival.**  The representations and warranties of Purchaser set forth in this Agreement shall be continuous, and shall survive the Closing for a period of four (4) years, except on to Section 4.5, which shall survive three (3) years.

### Section V
### CONDUCT OF BUSINESS PENDING CLOSING

From and after the date hereof until the Closing:

5.1   **Full Access and Investigation.**  Purchaser and its authorized representatives shall have full access during normal business hours to all properties, books, records, contracts and documents of Seller, and Seller shall furnish or cause to be furnished (including through its employees as selected by Seller, authorized representatives and independent providers of professional services) to Purchaser and its authorized representatives all information with respect to the affairs and Business of Seller as Purchaser may reasonably request.  Purchaser shall have no right under this Agreement to contact any supplier, dealer or customer of Seller without the express written permission of Seller.

5.2   **Continue Business in Regular Course.**  Seller shall carry on the Business diligently and substantially in the same manner as it is currently being conducted and shall not make or institute any material change in its method of purchase, sale, lease, management, marketing, accounting, or operations without the prior written consent of Purchaser.  Unless otherwise consented to in writing by Purchaser, Seller shall:

A.   maintain all of the Purchased Assets presently being used in the operation of the Business in good operating condition and repair subject to normal operation;

B.   maintain insurance upon the Purchased Assets in amounts comparable to that in effect on the date hereof;

C.   preserve its present business organization intact, refrain from firing or terminating any of its present officers or employees, except in the ordinary course of business;

D.   maintain its books, accounts and records in the usual, regular and ordinary manner, on a basis consistent with prior years, endeavor to comply with all laws applicable to it and to the conduct of the Business, and perform all of its obligations without default;

15

E.   not sell or voluntarily dispose of any of the Purchased Assets, except in the ordinary course of business, nor engage in any merger or consolidation involving Seller;

F.   not incur any accounts payable with respect to the operation of the Business except in the ordinary course of business;

G.   not grant any increase in pay or perquisites to employees nor increase any salary, commission, bonus or management fee or other benefits to any employee except in the ordinary course of business, nor institute or amend in any material manner any bonus or pension or profit-sharing plan or program;

H.   not enter into any contract or commitment or engage in any transaction which is not in the ordinary course of business and consistent with past practice, nor permit any change in the character of the Seller's Business;

I.   use its best efforts to prevent the occurrence of any event that would result in any of its representations and warranties contained in this Agreement not being true and correct;

J.   use its best efforts to keep its Business intact and preserve its relationship with suppliers, dealers, customers and others with whom Seller has business relations;

K.   not remove any inventory or equipment from the Real Estate, except in the ordinary course of business; and

L.   not pay or declare any distributions to stockholders or members as such after December 31, 2005, other than those disclosed on Schedule 3.7.

5.3   **Consents of Purchaser.** No consent, recommendation or advice given by Purchaser to Seller pursuant to this Section V regarding the conduct of the Business pending the Closing shall constitute an understanding, commitment, representation or undertaking of Purchaser or give rise to any obligation or liability of Purchaser or constitute a waiver of any warranty, representation, covenant or agreement contained herein, except as may be expressly set forth in writing and signed by the parties hereto.

## Section VI
## REAL ESTATE TITLE REPORT AND SURVEY

6.1   Schedule 1.2B attached hereto is a legal description of the Real Estate. Seller shall furnish to Purchaser a standard form title insurance report indicating good title to the Real Estate in Seller free and clear of all liens and encumbrances other than those set forth on Schedule 1.2B, subject only to taxes and assessments, both general and special, which are a lien, but are not yet due and payable, zoning ordinances, limitations, reservations, easements and restrictions that do not materially adversely affect use of the Real Estate for operation of the Business.

6.2   Seller has caused a survey of the Real Estate that meets the requirements of an ALTA/ASCM survey to be delivered to Purchaser. Such survey locates all of the improvements thereon, sets out all easements and encroachments and certifies that none of the Real Estate lies within a flood hazard area.

6.3     The cost of the title insurance report and insurance policy; real property appraisal and survey, shall be divided equally between the Sellers and Purchasers, and in the event the transactions contemplated by this Agreement are closed, the Sellers' portion shall reduce the cash portion of the Purchase Price.

## Section VII
## SELLERS AGENT

7.1     **Agent Authorized to Act for All Sellers.**  Upon the execution of this Agreement, each of the Sellers shall be deemed to have irrevocably constituted and appointed Alan C. Neely (hereinafter sometimes referred to as the "Sellers Agent"), as the agent of each of them to act from and after the date hereof in accordance with the instructions of the Sellers to do such things and execute such documents that may be necessary, convenient or appropriate to facilitate the consummation of the transactions contemplated by this Agreement. Sellers hereby authorize and direct Sellers Agent to (i) receive payments under or pursuant to this Agreement and to disburse such payments to the Sellers and others, as contemplated by this Agreement; and (ii) receive and forward notices and communications pursuant to this Agreement. Following the Closing, Purchasers and the Company will deal directly with Sellers Agent on all matters concerning the Sellers and arising under or in connection with this Agreement, and will not be obligated to, and will not, notify, contact or otherwise communicate with the Sellers, or any of them, with respect to any such matter, specifically including but not limited to any matter for which indemnification or contribution to Purchasers from Sellers arising out of a claimed breach of a representation, warranty or covenant. In addition, Sellers Agent is hereby authorized to act on behalf of the Sellers in all matters, including, without limitation, with respect to negotiations of and consent to the determination of Purchase Price adjustments and to indemnification claims asserted by the Purchasers and regardless of whether paid in whole or in part from the Escrow Account. Any action taken by Sellers Agent pursuant to and in accordance with this Section VII shall be absolutely and irrevocably binding on each Seller as if such Seller had personally taken such action (or executed and delivered such document) or made such decision or determination in its own capacity.  The Sellers' Agent, acting in his capacity as such, shall have only the rights, power and authority granted in this Section VII. Notwithstanding any other provision of this Agreement, (x) with respect to those matters expressly covered by this Section VII, each of the Sellers hereby irrevocably relinquishes such Seller's right to act independently and other than through the Sellers Agent and (y) no Seller shall have any right by virtue or by availing of any provision in this Agreement, any such rights being irrevocably and exclusively delegated to the Sellers Agent who, acting in accordance with the terms hereof, shall be the sole party entitled to avail himself of the provisions of this Agreement.

7.2     **Purchasers' Reliance.**  The Purchasers and the Company shall be fully protected in dealing with the Sellers Agent under this Agreement and may rely upon the authority of the Sellers Agent to act as the agent of all of the Sellers in accordance with the grant of authority to the Sellers Agent under this Section VII. Any payment by a Purchaser that is required to be paid to the Sellers under this Agreement may be paid to the Sellers Agent in his capacity as such and shall be considered a payment by the Purchaser to the Sellers. The appointment of the Sellers Agent is coupled with an interest and shall be irrevocable except upon the written agreement of all of the Sellers.

7.3     **Successor.**  If there is a vacancy at any time in the position of Sellers Agent for any reason, or if Mr. Neely is unable or unwilling to serve in the position, the Sellers shall select a successor to fill such vacancy.

17

7.4   **Acknowledgment and Acceptance.**   The Sellers Agent acknowledges that he has carefully read and understands this Agreement, hereby accepts such appointment and designation, and represents that he will act in his capacity as Sellers Agent in strict compliance with and conformance to the provisions of this Section VII.

7.5   **Actions of the Sellers Agent.** The Sellers Agent shall not be liable to the Purchasers or to the Sellers for any error of judgment, or any act done or step taken or omitted by him in good faith or for any mistake in fact or law, or for anything which he may do or refrain from doing in connection with this Agreement, except for his own bad faith or willful misconduct. The Sellers Agent may seek the advice of legal counsel in the event of any dispute or question as to the construction of any of the provisions of this Agreement or its duties hereunder, and he shall incur no liability to the Purchasers or the Sellers and shall be fully protected with respect to any action taken, omitted or suffered by him in good faith in accordance with the opinion of such counsel.

7.6   **Expenses.** Sellers will reimburse Sellers Agent for all reasonable expenses incurred by the Sellers Agent in connection with the performance of his duties hereunder. The Sellers Agent may from time to time submit invoices to the Sellers covering such expenses, which expenses shall be paid promptly by the Sellers.

7.7   **Agent's Obligations.** Notwithstanding anything to the contrary hereunder and for the avoidance of doubt, the parties hereby acknowledge and agree that duties and responsibilities of the Sellers Agent under this Agreement shall be limited to those of an agent of the Sellers as set forth in this Section VII, and that the Sellers Agent shall only act as the agent of the Sellers and shall have no liability to the Purchasers with respect to any liability or obligation of the Sellers under this Agreement or the related transactions, it being further acknowledged and agreed that this Section 7.7 is not intended to limit liability or affect obligations that Alan C. Neely may owe as an officer, director, manager, owner or holder of any beneficial interest in any Seller under this Agreement.

### Section VIII
### AGREEMENTS REGARDING THE SHARES

8.1   **The Employee-Owned Shares.** As provided in Sections 10.10 and 11.6, it is a condition of the transaction contemplated hereby that Alan C. Neely be employed by the Purchaser, and as provided in Section 2.2C, that Mr. Neely be the ultimate beneficial owner of the Shares to be issued and delivered as part of the Purchase Price. The parties have made the following additional agreements concerning the Shares:

A.   **Put Option.** The Shares shall be subject to Mr. Neely's right to require that the Company repurchase the Shares (the "Put Option"). The Put Option shall be exercisable during the period beginning two (2) years after the Closing Date and ending ninety (90) days thereafter, at a price equal to one hundred ten percent (110%) of the last reported sale price of the Company's shares on the tenth business day prior to the Closing Date.

B.   **Call Option.** The Shares shall also be subject to the Company's right to require that Mr. Neely sell his Shares back to the Company (the "Call Option") at the then current fair market value in the event that Mr. Neely's employment is terminated under certain conditions.

18

C.   **Option Agreement.** The Company and Mr. Neely shall enter into the Option Agreement set forth in Exhibit 8.1C, evidencing Mr. Neely's Put Option and the Company's Call Option.

8.2   **Company's Right of First Offer.** If any Seller or distributee of a Seller, including Mr. Neely, holding Shares desires to transfer any or all of the Shares owned or held by such person, such holder (a "Selling Holder") shall deliver written notice (an "Offer Notice"), of such intention to transfer (an "Offer") to the Company. The Offer Notice shall identify the number of Shares subject to the Offer (the "Offered Shares"), the price per Share at which a sale is proposed to be made (the "Offer Price") (which Offer Price may be, but is not required to be, stated as an "at the market" price), and all other material terms and conditions of the proposed transfer. Each Seller agrees that such Seller will not enter into any discussions or negotiations with any person concerning a transfer except in full compliance with the provisions hereof.

A.   The receipt of an Offer Notice by the Company shall constitute an Offer by the Selling Holder to sell to the Company the Offered Shares at the Offer Price and on all other material terms and conditions as the proposed transfer. For a period of 10 days after receipt of the Offer Notice, the Company shall have the right, but not the obligation, to accept such Offer as to all but not less than all the Offered Shares by giving a written notice of acceptance (which shall be deemed irrevocable) (an "Acceptance Notice") to the Selling Holder prior to the expiration of such 10-day period and, if such Offer is so accepted within such 10-day period, such Offer shall be irrevocable. Failure to deliver the Acceptance Notice before the expiration of such 10-day period shall be deemed a rejection of such Offer. The tender by the Company of an Acceptance Notice to the Selling Holder shall constitute an agreement by the Company to purchase, and by the Selling Holder to sell to the Company, the Offered Shares at the Offer Price and, except as otherwise provided for in this Section A, on the terms and conditions set forth in the Offer Notice. In the instance of an "at the market" price, the price shall be determined as of the last reported sale on the day prior to the date of the Acceptance Notice.

B.   If the Offer Notice is accepted as to the Offered Shares within the 10-day period, the Company shall purchase, and pay the Offer Price in cash for, such Shares within a 20-day period after its delivery of an Acceptance.

C.   Upon the rejection or waiver of the Offer by the Company in accordance with Section 8.2A or the failure of the Company to consummate the purchase of the Offered Shares within the time period prescribed by Section 8.2B, the Selling Holder shall have the right to sell the Offered Shares to the third party on terms and conditions not more favorable to the Selling Holder than those set forth in the Offer Notice, subject to compliance with federal and state securities laws as set forth in Section 3.30. If any Offered Shares are not sold pursuant to the provisions of this Section 8.2 prior to the expiration of ninety (90) after rejection or waiver of the Offer by the Company, such Offered Shares shall become subject once again to the provisions and restrictions of this Section 8.2.

D.   If and to the extent any action required by this Section 3.2 to be taken within a specified period of time cannot be taken within such time period because of trading blackouts or other requirements necessary to assure compliance with securities laws, then the applicable time period shall be tolled for such amount of

19

time as necessary under the circumstances, and extended for an additional five (5) days thereafter.

### Section IX
### FURTHER COVENANTS OF PURCHASERS AND SELLERS

9.1.  **Right of Access and Furnishing Information.**  Each Seller shall give Purchasers or their duly appointed representatives (i) full access during normal business hours to the Purchased Assets and all Sellers' Business Records, including, but not limited to, customer lists, credit information, inventory sales and purchasing information and documentation relating to computer software, and Seller shall furnish such other information as Purchaser may from time to time reasonably request; (ii) authority to perform such reasonable inspections or tests on the Real Property, the Property and Plant and Equipment and the inventory as they shall deem appropriate to ensure that the Real Property is in compliance with all federal, state and local laws and regulations applicable thereto and in good condition and repair (ordinary wear and tear excepted); that the Property and Plant and Equipment is in good operating condition and repair and that the inventory is merchantable; provided that the performance of such inspections and tests does not unreasonably interfere with the operation of the Business; provided further that Seller shall deliver to Purchaser copies of all environmental reports that Seller has performed or had performed with respect to the Real Property or that Seller has in its possession, if any, and Purchaser shall deliver to Seller copies of environmental reports that Purchaser has performed with respect to the Real Property before the Closing; (iii) authority to perform such tests with respect to the accounting records of Seller, and the working papers of Seller's accountants with respect to the financial statements, as are deemed necessary by Purchaser or Purchaser's Accountants in order to ensure that the financial statements set out in Schedule 3.6 are complete and correct in all material respects and fairly present the financial position of Seller and the results of its operation; and (iv) authority to consult with Seller's officers and employees concerning the Purchased Assets and the Business. Sellers acknowledge that any inspections or tests performed by Purchasers shall neither diminish nor negate the warranties and representations made by Sellers to Purchasers in this Agreement. Purchaser may disclose any such information obtained concerning Sellers, the Purchased Assets or the Business to Purchasers' principal financing institution and other advisers of Purchasers to the extent Purchasers deem such disclosure necessary or desirable to enable such financiers and advisers to advise Purchasers concerning the Purchased Assets or the Business.

9.2   **Consents and Best Efforts.**  As soon as practicable, Purchasers and Sellers, as applicable, will commence all other reasonable action required hereunder to obtain all applicable permits, licenses, consents, approvals and agreements of, and to give all notices and make all filings with, any third parties as may be necessary to authorize, approve or permit the full and complete sale, conveyance, assignment or transfer of the Purchased Assets by a date early enough to allow the transactions contemplated hereunder to be consummated by the Closing Date. Sellers shall apply for or obtain, at Sellers' expense, (i) any and all consents to transfer material permits or licenses or (ii) any and all new permits or licenses required for continued operation of the Business.

9.3   **Tax Filing.**  Purchasers and Sellers agree that the purchase and sale provided for herein constitute an "applicable asset acquisition" within the meaning of § 1060 of the Code. Accordingly, the parties agree to report the transaction on Form 8594, and for any other required purpose, in a consistent manner.

9.4   **Corporate Existence.**  After the closing, Industries and Enterprises shall each maintain its respective corporate existence as a corporation, and SunRay shall maintain its existence as a limited liability company, duly organized, validly existing and in good standing under the laws of the State of Tennessee until five (5) years after the Closing Date; provided that if on such fifth anniversary date, a

20

Purchaser has duly notified a Seller of a claim for indemnification pursuant to Section 13.1, Seller shall maintain its corporate existence as hereinabove required until Purchaser's claim for indemnification shall have been finally determined and Seller shall have reimbursed Purchaser for the full amount of the indemnified liability, loss, claim, damage or expense. .

9.5     **Name Change.**  Industries and SunRay each agrees to change its name within thirty (30) days after the Closing Date to a name approved by the Purchaser, and not to use its present corporate name, or one confusingly similar thereto, in conducting any business activity after Closing.

9.6     **Liability Insurance.**  Until December 31, 2009, Industries shall maintain policies of general liability and product liability insurance in amounts of not less than $1,000,000 for injury to or death of one person, for damage to property or as a result of one occurrence, and not less than $2,000,000 for an annual aggregate for such injury, death or damage, and issued by such insurance companies as shall be reasonably acceptable to Purchasers, covering the operations of the Industries Business prior to the closing, which policy shall name Purchasers as additional named insureds.  The Sellers shall pay one-half the cost of this insurance coverage, up to a maximum of $125,000, and the Sellers' portion shall reduce the cash portion of the Purchase Price.  The remainder of the cost will be borne by the Purchasers.

9.7     **Retention of Books and Records.**  Each Seller shall retain for a period of five (5) years after the Closing Date, all of its books and records (including such records as may be stored in computer databases) relating to the Purchased Assets or the Business and not delivered to Purchasers at the Closing. During such period, Sellers will make such books and records available to Purchasers at Purchasers' cost and expense, for purposes of reasonable and legitimate inspection and copying.  In the event a Purchaser requires the original of any document in the possession of a Seller, such Seller shall provide the same, if available, subject to Seller's right to inspect and copy the same.  Sellers will have the right to destroy such books and records at any time after the end of the aforesaid period; provided, however, that Sellers shall give written notice to Purchasers prior to the time Sellers intend to destroy such books and records so that if a Purchaser wishes to take possession of all or some designated part of such books and records it may, at its expense, do so.

9.8     **Fulfillment of Conditions.**  Between the date hereof and the Closing Date, Purchasers and Sellers shall take any and all action on their respective parts necessary or appropriate to cause all of the conditions precedent set forth in Section X, Section XI and Section XII to be fulfilled.

9.9     **Post-Closing Tax Distribution Payment.**  Following the Closing, Purchasers will pay to the shareholders of Industries an amount equal to their 2006 tax liability (the "Industries Tax Distribution Payment").  The Industries Tax Distribution Payment to will be made as soon as practicable after the allocation of the Purchase Price has been completed in accordance with Section 2.3, and Industries' 2006 tax calculation through the Effective Date (as defined in Section 12.1) has been prepared and agreed to by both parties. The Industries Tax Distribution Payment will consist of the 2006 tax liability calculated through the Effective Date plus a $33,350 management fee owed by Industries to its shareholders for January and February 2006.  Purchasers will also pay to Alan C. Neely, as the sole member of SunRay, an amount equal to his 2006 tax distribution (the "SunRay Tax Distribution Payment").  The SunRay Tax Distribution Payment will be made as soon as practicable after SunRay's 2005 tax return has been prepared and SunRay's 2006 tax calculation through the Effective Date has been prepared and agreed to by both parties.  The SunRay Tax Distribution Payment will consist of the tax liability for 2005, and for January and February 2006.

21

## Section X
## CONDITIONS TO OBLIGATIONS OF PURCHASERS

Each and every obligation of Purchasers under this Agreement to be performed on or prior to the Closing Date shall be subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions:

10.1    **Representations and Warranties True at Closing.** The representations and warranties made by Sellers in or pursuant to this Agreement or given on behalf of any Seller hereunder shall be true and correct in all material respects on and as of the Closing Date with the same effect as though such representations and warranties had been made or given on and as of the Closing Date.

10.2    **Due Diligence Review.** Purchasers shall have Sellers' full cooperation in conducting a due diligence review of Sellers. Sellers shall have reasonably provided Purchaser and Purchasers' agents full and complete access to the property, books and records of Sellers and allowed Purchasers and Purchasers' agents to contact employees' accountants and personnel as selected by Sellers. The obligation of Purchasers to proceed with the transaction contemplated herein is expressly contingent upon the completion of such due diligence review and the Business and Purchased Assets being found to be satisfactory to Purchasers in Purchasers' sole discretion.

10.3    **Obligations Performed.** Each Seller shall have performed and complied with all agreements and conditions required by this Agreement to be performed or complied with by it prior to or at the Closing.

10.4    **Consents.** Each Seller shall have obtained and delivered to Purchasers written consents of all persons or entities whose consent is required to consummate the transactions contemplated herein and all of such consents shall remain in full force and effect at and as of the Closing.

10.5    **Delivery of Closing Documents.** Each Seller shall have delivered to Purchasers each of the closing documents listed and set forth in Section 12.2 hereof together with any additional documents Purchasers may reasonably request to effect the transactions contemplated herein.

10.6    **No Litigation or Government Investigations.** As of the Closing Date there shall be no litigation, including without limitation any litigation brought by any creditor of a Seller, or government investigation pending, in which an injunction is or may be sought against the transactions contemplated hereby or in which relief is sought against a Seller relating to this Agreement and the transactions described herein.

10.7    **No Investigations of Seller or Business.** As of the Closing Date there shall be no pending investigation by any municipal, state or federal government agency or regulatory body with respect to the Purchased Assets or the Business.

10.8    **No Material Change.** At the Closing, the Business and the Purchased Assets shall not have been materially and adversely affected as the result of fire, water, explosion, flood, act of God, accident or other casualty, material labor controversy, or any action by the United States or any other governmental authority, whether or not covered by insurance. Further, as of the Closing Date, and since December 31, 2005, Seller shall not have suffered any material adverse change in condition, financial or otherwise, of the Business.

10.9    **Environmental Conditions.** The Seller shall have corrected, to the extent requested by the Purchaser, any hazardous material condition at the Real Estate that is recommended to be corrected in

22

an environmental report (phase I, and phase II, if indicated) that is prepared by an engineer acceptable to both Sellers and Purchasers. One-half the cost of such engineering services and one-half the cost of such correction expenditures shall be liabilities of Seller and shall reduce the Purchase Price. In the event that Purchaser requests a correction of any hazardous material condition at the Real Estate that exceeds $13,500 and that Seller deems excessive and desires not to undertake, Seller may give written notice to Purchaser of its refusal to make the Correction and if the Purchaser does not retract or modify its request to Seller for Correction in a manner satisfactory to Seller in its sole discretion, in writing according to the method of notice as provided in Section 15.1 hereof, within five (5) business days after receipt of the notice from Seller, this Agreement shall thereon terminate, be null and void and each party shall be responsible for the costs that they may have incurred.

    **10.10   Option, Employment and Non-competition Agreements.** Industries' and SunRay's president, Alan C. Neely, shall have entered into the Option Agreement (Exhibit 8.1C), the form of employment agreement attached as Exhibit 10.10A, and including the Restricted Stock Award Agreement provided for therein (the "Employment Agreement"), and a non-competition agreement in the form attached as Exhibit 10.10B (the "Neely Non-competition Agreement"). In addition, each of the respective Sellers' other shareholders and members who is an individual, and each of the individual beneficial owners or interest holders of each such shareholder or member that is an entity, shall have entered into a Non-competition Agreement in the form attached as Exhibit 10.10C (the "Shareholder Non-competition Agreements").

**Section XI**
**CONDITIONS TO SELLER'S OBLIGATIONS**

    The obligation of the Sellers to consummate the transaction contemplated herein shall be subject to the fulfillment on or prior to the Closing Date of the following additional conditions:

    **11.1   Representations and Warranties True at Closing.** The representations and warranties made by Purchasers and the Company in this Agreement shall be true and correct on and as of the Closing Date with the same effect as though such representations and warranties had been made or given on and as of the Closing Date.

    **11.2   Obligations Performed.** Each Purchaser shall have performed and complied with all of its obligations under this Agreement that are to be performed or complied with by it prior to or at the Closing.

    **11.3   Delivery of Closing Documents.** Each Purchaser shall have delivered to Sellers each of the closing documents and instruments listed in Section 12.3 hereof together with any additional documents Sellers may reasonably request to effect the transactions contemplated herein.

    **11.4   No Notices.** Sellers shall not have received any notices from Purchasers pursuant to the provision of Section 4.4 above.

    **11.5   Consideration.** Sellers shall have received the cash portion of the Purchase Price in good funds via wire transfer and the Company shall have issued the Shares in accordance with Section 2.2.

    **11.6   Option, Employment and Non-competition Agreements.** The Company shall have executed and entered into the Option Agreement, the Employment Agreement (and Restricted Stock Award Agreement provided for therein), the Neely Non-Competition Agreement and the Shareholder Non-competition Agreements.

23

11.7    **Company Board Nomination.**  The Company shall have agreed to nominate Alan C. Neely for election to its Board of Directors for so long as Mr. Neely is employed under the Employment Agreement, subject to the Board of Directors' fiduciary obligations under Delaware law and duties and responsibilities under applicable securities laws and exchange listing requirements.

## Section XII
## THE CLOSING

12.1    **Time and Date.**  Subject to the terms and conditions set forth herein, the closing of the transactions contemplated hereby (the "Closing") shall take place, effective as of March 3, 2006 (the "Effective Date"), by overnight delivery and facsimile and/or email transmission of documents and instruments such date as may be agreed upon by them, but in no event later than March 20, 2006. unless extended by written agreement of the parties (the "Closing Date").

12.2    **Deliveries by Sellers at Closing.**  At the Closing, the Sellers shall deliver or cause to be delivered to the respective Purchasers the following executed instruments and agreements:

A.    **Bills of Sale.**  Bills of Sale transferring to Purchasers all of Sellers' right, title and interest in and to the respective Purchased Assets;

B.    **Assignment and Assumption Agreements.**  Assignment and Assumption Agreements assigning to Purchasers all of Sellers' respective right, title and interest in and to the duties and obligations arising from and after the Closing Date under the Contracts, the Leases and the Open Orders;

C.    **Consents.**  Written consents in the form and substance satisfactory to Purchasers of each person or entity whose consent is required to consummate the transactions contemplated herein;

D.    **Certificates of Incumbency.**  A certificate of incumbency evidencing the authority of each of the individuals executing on behalf of the respective Sellers this Agreement and any documents of transfer or any other nature in connection therewith;

E.    **Authorizing Resolutions.**  Resolutions of the stockholders of Industries, the directors of Enterprises, certified by an officer thereof, and joint written consent of the sole member and governor of SunRay, authorizing this Agreement and the transactions contemplated herein;

F.    **Certificates of Sellers.**  A certificate of each Seller's officer or member dated the Closing Date certifying (i) the fulfillment of the conditions specified in Article VIII hereof, and (ii) that all warranties and representations of such Seller contained in this Agreement are true and correct at and as of the Closing Date as though such warranties and representations were made at and as of such time;

G.    **Escrow Agreement.**  The Escrow Agreement executed by the Sellers.

H.    **Employment Agreement; Non-competition Agreements and Option Agreement.**  The Employment Agreement, Neely Non-competition Agreement and Option Agreement executed and delivered by Alan C. Neely, and the Shareholder Non-competition Agreements executed and delivered by each of the

24

shareholders or members of the respective Sellers who are individuals and by the individuals holding or owning the beneficial interests in each of the shareholders or members of the Sellers that are entities.

    I.    **Additional Documents.**    All such further instruments and documents as Purchasers may reasonably request for the more effective conveyance, assignment or transfer to the Purchasers of any of the Purchased Assets; and

    J.    **Opinion of Counsel.**    An opinion of legal counsel for the Sellers dated the Closing Date, in form and substance reasonably acceptable to the Purchaser.

12.3    **Deliveries by Purchasers at Closing.**    At the Closing Purchasers will execute and deliver to Sellers the following:

    A.    **Payment to Sellers.** Payment by wire transfer of the cash portion of the Purchase Price less the amount to be paid to the Escrow Account;

    B.    **Payment to Escrow Agent.** Payment by wire transfer of the amount to be paid to the Escrow Account;

    C.    **Issuance of Shares.** Issuance of the Shares in payment of the remaining portion of the Purchase Price in accordance with Section 2.2C;

    D.    **Employment Agreement, Non-competition Agreements and Option Agreement.** The Employment Agreement, Neely Non-competition Agreement and Shareholder Non-competition Agreements, and Option Agreement executed and delivered on behalf of the Purchasers;

    E.    **Escrow Agreement.**    The Escrow Agreement executed by the Purchasers and the Escrow Agent;

    F.    **Certificate of Incumbency.**    A Certificate of Incumbency evidencing the authority of each of the individuals executing on behalf of Purchasers this Agreement and any documents of transfer or other nature in connection therewith;

    G.    **Certificate of Resolutions of Board.** Resolutions of the Board of Directors of Purchasers, certified by the Secretary of Purchasers, authorizing this Agreement and the transactions contemplated herein, and resolutions of the Board of Directors of the Company, certified by the Secretary of the Company, authorizing the Guaranty of Purchaser's obligations hereunder by the Company;

    H.    **Purchaser's Certificate.**    A certificate of each Purchaser's authorized officer dated the Closing Date certifying that (i) the conditions specified in Section XI hereof have been fulfilled and (ii) all representations and warranties of such Purchaser contained herein are true and correct at and as of the Closing Date as though such warranties and representations were made at and as of such time;

    I.    **Opinion of Purchaser's Counsel.** An opinion of legal counsel for Purchaser and the Company dated the Closing Date in form and substance reasonably acceptable to the Seller.

**Section XIII**
**INDEMNIFICATION**

13.1    Indemnification. Each Seller hereby agrees to indemnify and hold the Purchasers, the Company and their respective directors, officers, employees and agents (other than Alan C. Neely, who will be an employee of the Purchasers following the Closing), and their respective successors and assigns (all of such indemnified companies and individuals are collectively referred to hereafter as the "Indemnified Party") harmless from the following:.

A.    Misrepresentation, Nonfulfillment of Agreement. Any liability, loss, cost, expense, damage, claim or deficiency resulting from any misrepresentation set forth herein or in any Schedule hereto, any breach of any warranty set forth herein or any breach, nonfulfillment of or failure to perform any covenant, duty or obligation set forth herein on the part of the Seller;

B.    Inaccuracies in Closing Documents. Any inaccuracy in, breach of or misrepresentation in any certificate or other document required to be delivered hereunder at the Closing by the Seller in accordance with any provision of this Agreement;

C.    Taxes. Any claim against or liability of the Seller for delinquent or unpaid taxes of any kind or nature, including, without limitation, withholding taxes, and any related interest, penalty or fine, whether to the federal or any state or local government, agency or instrumentality, attributable to taxable periods ending on or before the Closing Date, except to the extent such taxes have been reserved against in the Closing Balance Sheet;

D.    Contingent Liabilities. Any claim or liability arising out of a transaction or event occurring prior to the Closing Date, including a claim or liability arising out of or from a transaction or event occurring after the Closing Date with respect to products manufactured prior to the Closing Date, that is not reserved against or included as a liability on the Closing Balance Sheet; provided, however, that product warranty service in the ordinary course of business that does not involve litigation (including arbitration, mediation, or administrative or other adversarial proceedings) does not constitute a claim or liability subject to this Section 13.1D;

E.    Attending Costs and Expenses.    All liabilities, claims, actions, suits, proceedings, demands, assessments, judgments and costs incident to and reasonably incurred by the Indemnified Party on account of any of the foregoing, including, without limitation, reasonable attorney's fees and other expenses of investigation or litigation (including all arbitration, mediation, or administrative or other adversarial proceedings)

13.2    Limits of Indemnification. The liability under Section 13.1 hereof:

A.    shall not arise unless the Indemnified Party suffers a Covered Breach. A "Covered Breach" means either:

(i)    a single indemnifiable course of conduct, related set of circumstances, occurrence or event, by or as a result of which the damages suffered by Indemnified Party arising therefrom exceed Ten Thousand and 00/100

26

Dollars ($10,000.00), but is not subject to the Limited Litigation Indemnity, in which event the Seller shall be liable for the entire amount of such Covered Breach; or

(ii) a matter to which the Limited Litigation Indemnity under Section XIV applies, if the Purchasers' indemnity amount thereunder has been exceeded, in which event the Seller shall be liable for the excess of the Covered Breach over the Limited Litigation Indemnity amount.

B. shall in all events be limited to an amount equal to $15,840,000 minus Sellers' Transaction Expenses.

13.3 **Claims Against Escrow.** Any claim that an Indemnified Party may have against a Seller under this Agreement shall be made against the Escrow Account pursuant to the terms and conditions of this Agreement and the Escrow Agreement, and the Sellers shall be jointly and severally liable to the extent of the Escrow Account. To the extent that the amount of the Covered Breaches exceed the amount in the Escrow Account, the claim shall be made against the respective Seller.

13.4 **Method of Asserting Claims Against Seller.** All claims for indemnification under this Section XIII made by an Indemnified Party shall be asserted and resolved as follows:

A. In the event that any claim or demand for which a Seller would be liable hereunder is asserted against or sought to be collected from an Indemnified Party by a third party, the Indemnified Party shall promptly notify the Seller of such claim or demand, specifying the nature of such claim or demand and the amount or the estimated amount thereof to the extent then feasible (which estimate shall not be conclusive of the final amount of such claim or demand) (the "Claim Notice"). For the purpose of this Section 13.4 "Notice Period" shall mean twenty (20) calendar days from the delivery of the Claim Notice (the "Notice Period"), except that in the event the Claim Notice relates to the institution of litigation or arbitration proceedings, the Notice Period shall extend until ten (10) calendar days prior to the due date, including any extension thereof, of a responsive pleading by the Indemnified Party. As to any Claim Notice, the Seller shall have the right to request an extension of the Notice Period in order to conduct an investigation of the Claim Notice in cooperation with the Indemnified Party, and such an extension request shall not be unreasonably refused. Within the Notice Period the Seller shall notify the Indemnified Party:

(i) whether or not the Seller disputes liability to the third party or to the Indemnified Party hereunder with respect to such claim or demand, and

(ii) whether or not Seller desires, at its sole cost and expense, to defend the Indemnified Party against such claim or demand. In the event that the Seller notifies the Indemnified Party within the Notice Period that the Seller desires to defend against such claim or demand, except as hereinafter provided, the Seller shall have the right to defend the Indemnified Party by appropriate proceedings, which proceedings shall be promptly settled or prosecuted by them to a final conclusion in such a manner as to avoid any risk of the Indemnified Party becoming subject to liability for any other matter. If the Indemnified Party desires to participate in, but not control, any such defense or settlement, it may do

27

so at its sole cost and expense. If the Seller elects not to defend the Indemnified Party against such claim or demand, whether by not giving timely notice as provided above or otherwise, then the amount of any such claim or demand, or, if the same be contested by the Seller or by the Indemnified Party (but the Indemnified Party shall have no obligation to contest any such claim or demand), then that portion thereof as to which such defense is unsuccessful shall be conclusively deemed to be a liability of the Seller hereunder; provided, however, that the Indemnified Party is otherwise entitled to indemnification with respect to such claim or demand under Section 13.1 hereof.

B.      In the event the Indemnified Party should have a claim hereunder which does not involve a claim or demand being asserted against or sought to be collected from it by a third party, the Indemnified Party shall promptly send a Claim Notice with respect to such claim to the Seller. If the Seller does not notify the Indemnified Party within a twenty (20) day Notice Period that the Seller disputes such claim, it shall be conclusively deemed a liability of the Seller hereunder.

C.      Nothing herein shall be deemed to prevent the Indemnified Party from making a claim hereunder for potential or contingent claims or demands provided the Claim Notice is made within the warranty survival period set out in Section 3.31 and sets forth the specific basis for any such potential or contingent claim or demand, to the extent then feasible and the Indemnified Party has reasonable grounds to believe that such a claim or demand may be made.

13.5    **Payment of Claims.** In the event that a Seller is required to make any payment under this Section XIII, the Seller shall direct the Escrow Agent to make such payment from the Escrow Fund within ten (10) days after the determination of such amount. If the amount in the Escrow Fund is insufficient to pay the claim in full, the Seller shall pay such excess amount within ten (10) days after such determination.

13.6    **Indemnified Claims by Purchaser.** Purchaser does hereby indemnify and agree to hold the Sellers, their respective officers, stockholders, members, managers, employees and agents, and their respective successors and assigns harmless from the following:

A.      **Misrepresentation, Nonfulfillment of Agreement.** Any liability, loss, cost, expense, damage, claim or deficiency resulting from any misrepresentation set forth herein, breach of any warranty set forth herein or any breach, nonfulfillment of, or failure to perform any covenant, duty or obligation set forth herein on the part of Purchasers;

B.      **Liabilities of Purchasers.** Any liability, loss, cost, damage or expense arising in connection with or resulting from the operation of the Business on or after the Closing Date, including without limitation, tax and environmental liability;

C.      **Inaccuracies in Closing Documents.** Any inaccuracy in, breach of or misrepresentation in any certificate or other document required to be delivered hereunder at the Closing by Purchasers in accordance with any provision of this Agreement.

28

D.    **Attending Costs and Expenses.** All liabilities, claims, actions, suits, proceedings, demands, assessments, judgments and costs incident to and reasonably incurred on account of any of the foregoing, including, without limitation, reasonable attorney's fees and other expenses of investigation or litigation (including all arbitration, mediation, or administrative or other adversarial proceedings); and

13.7    **Method of Asserting Claim Against Purchaser.** All claims for indemnification under this Section XIII made against a Purchaser shall be asserted and resolved in the manner set out for asserting and resolving claims made against the Seller under Section 13.4 hereof, except any reference in Section 13.4 to Seller shall mean Purchasers and any reference to an Indemnified Party shall mean Seller. In the event that Purchaser is required to make any payment under this Section XIII, Purchaser shall pay the indemnitee entitled thereto such amount within ten (10) days after the determination of such amount in immediately available funds.

13.8    **Exclusivity.** This Section XIII shall be the sole and exclusive remedy of the parties and their respective directors, officers, agents, successors and assigns for any breach of any representation and warranty or any nonfulfillment of any covenant contained in this Agreement or for any other matter in respect of which indemnification may be sought under Section XIII.

## Section XIV
## LIMITED LITIGATION INDEMNITY FOR INDUSTRIES AND SUNRAY

Purchasers hereby agree that they will indemnify Industries and SunRay from and against, all liabilities, claims, actions, suits, proceedings, demands, assessments, judgments, expense, damage, claim or deficiency, and costs incident to and reasonably incurred on account of any of the foregoing, including, without limitation, reasonable attorney's fees and other expenses of investigation or litigation (including all arbitration, mediation, or administrative or other adversarial proceedings), arising out of or related to product liability or warranty claims, including administrative action by the United States Department of Housing and Urban Development, arising on or after the Closing Date with respect to products sold by Industries or SunRay, or sold after the Closing Date but produced prior to the Closing Date, to the extent of a cumulative annual aggregate of One Hundred Thousand Dollars ($100,000) per year for each of the four years following the Closing Date. All claims for indemnification under this Section XIV against a Purchaser shall be asserted and resolved in the manner set out for asserting and resolving claims made against the Seller under Section 13.4 hereof, *except* that the provisions of Section 13.4A(ii) shall not apply, it being the intent and understanding of the parties that the Purchasers shall have complete and absolute control of the defense of any proceeding to which this Limited Litigation Indemnity shall apply. The parties expressly acknowledge their agreement that the matters listed on Schedule 3.16 are the sole responsibility of the Sellers and are not subject to this Limited Litigation Indemnity.

## Section XV
## MISCELLANEOUS

15.1    **Notices.** All communications or notices required or permitted by this Agreement shall be in writing and shall be deemed to have been given at the earlier of the date when actually delivered to the officer of a corporate party designated below by personal delivery or facsimile transmission or the fifth day following the date deposited in the United States mail, certified or registered mail, postage prepaid, return receipt requested, and addressed as follows, unless and until any of such parties notifies the others in accordance with this Section 15.1 of a change of address:

If to the Company:  Southern Energy Homes, Inc.
Attention: Keith O. Holdbrooks
President and Chief Executive Officer
144 Corporate Way
P. O. Box 390
Addison, Alabama 35540
Fax (256) 747-7586

with a copy (which shall not constitute notice) to:
Dan E. Batchelor, Esq.
Executive Vice President and General Counsel
Southern Energy Homes, Inc.
3284 Morgan Drive
Birmingham, Alabama 35243
Fax (205) 823-6001

with additional copy (which shall not constitute notice) to:
Carolyn L. Duncan
Cabaniss, Johnston, Gardner, Dumas & O'Neal LLP
2001 Park Place North, Suite 700
Birmingham, Alabama 35203

If to any Seller:     Alan C. Neely
405 South Broad Street
New Tazewell, Tennessee 37825
Fax (423) 626-6919

with a copy (which shall not constitute notice) to:
Ivan J. Schell, Esq.
Reed Weitkamp Schell & Vice PLLC
500 West Jefferson Street, Suite 2400
Louisville, Kentucky 40202
Fax (502) 562-2200

15.2   **Binding Agreement; Assignment.**   This Agreement and the right of the parties hereunder shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

15.3   **Entire Agreement.** This Agreement, the Employment Contract, the Option Agreement, the Non-competition Agreement, the Escrow Agreement and the Schedules and Exhibits attached hereto, and the documents delivered pursuant hereto, constitute the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersede and revoke any prior agreement or understanding relating to the subject matter of this Agreement. Any amendment or modification to this Agreement must be in writing, signed by all parties.

15.4   **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. A signature on any counterpart may be a facsimile or an electronically transmitted signature, and such signature shall have the same force and effect as an original signature.

30

15.5   **Expenses.**   Whether or not the transactions contemplated hereby are consummated, the parties hereto will each pay their own attorneys' and accountants' fees, expenses and disbursements in connection with the negotiation and preparation of this Agreement and Schedules and all other costs and expenses incurred in performing and complying with all conditions to be performed under this Agreement; provided, however, that in the event the transactions contemplated hereby are consummated, the aggregate expenses paid by Industries and SunRay will not exceed $115,000.   The cost of the items listed on Schedule 15.5 (which also includes the expenses provided for in Section VI, 9.6 and 10.9) will be divided equally between the Sellers and the Purchasers, subject to the cap on Sellers' expenses under Section 9.6, and to the extent paid by the Sellers will reduce the cash portion of the Purchase Price.

15.6   **Confidentiality.**   If, for any reason, the transactions contemplated by this Agreement are not consummated, any confidential information obtained by any party hereto from any other party shall not be disclosed or used by any such party, other than as required by applicable laws or regulations or in connection with any litigation arising under this Agreement, and each party shall return to the other all documents and written information obtained from such other party as such other party or its counsel may request in writing.

15.7   **Further Assurances.**   Upon reasonable request from time to time the parties hereto will execute and deliver such further instruments as are necessary or appropriate to the consummation of the transactions contemplated hereby.

15.8   **Construction.**   Within this Agreement, the singular shall include the plural and the plural shall include the singular, and any gender shall include the other genders, all as the meaning in the context of this Agreement shall require.

15.9   **Incorporation.**   All Schedules and Exhibits attached to this Agreement are by this reference incorporated herein and made an essential part hereof.

15.10   **Cooperation.**   The parties hereto will cooperate fully with each other and their respective counsel and accountants in connection with all steps to be taken as part of their obligations under this Agreement.

15.11   **Captions.**   The captions used in this Agreement are inserted for convenience only and shall not constitute a part hereof.

15.12   **Governing Law.**   This Agreement shall be governed and regulated and the rights and liabilities of all parties hereto shall be construed pursuant to the laws of the State of Tennessee, without regard to principles of conflicts of laws, except with respect to matters of law concerning the internal corporate affairs of any corporate entity which is a party to or the subject of this Agreement, and as to those matters, the law of the jurisdiction under which the respective entity derives its powers shall govern.

31

IN WITNESS WHEREOF, the undersigned parties have entered into and executed this Agreement under seal to be effective as of the day and year first above written.

Sellers:

GILES INDUSTRIES OF TAZEWELL, INCORPORATED
a Tennessee corporation

By: _____ (Seal)
    Alan C. Neely
    Its President and Authorized Seller's Agent

R.O. GILES ENTERPRISES, INC.
a Tennessee corporation

By: _____ (Seal)
    Alan C. Neely
    Its Authorized Seller's Agent

SUNRAY RV, LLC
a Tennessee limited liability company

By: _____ (Seal)
    Alan C. Neely
    Its Sole Member and Governor

Purchasers:

GILES ACQUISITION CORP.
an Alabama corporation

By: _____ (Seal)
    Keith O. Holdbrooks
    Its President

SUNRAY ACQUISITION, LLC
an Alabama limited liability company

By: _____ (Seal)
    Keith O. Holdbrooks
    Its President

_____
Alan C. Neely

32

IN WITNESS WHEREOF, the undersigned parties have entered into and executed this Agreement under seal to be effective as of the day and year first above written.

Sellers:

GILES INDUSTRIES OF TAZEWELL,
INCORPORATED
a Tennessee corporation

By:_____ (Seal)
    Alan C. Neely
    Its President and Authorized Seller's Agent

R.O. GILES ENTERPRISES, INC.
a Tennessee corporation

By:_____ (Seal)
    Alan C. Neely
    Its Authorized Seller's Agent

SUNRAY RV, LLC
a Tennessee limited liability company

By:_____ (Seal)
    Alan C. Neely
    Its Sole Member and Governor

Purchasers:

GILES ACQUISITION CORP.
an Alabama corporation

By:_____ (Seal)
    Keith O. Holdbrooks
    Its President

SUNRAY ACQUISITION, LLC
an Alabama limited liability company

By:_____ (Seal)
    Keith O. Holdbrooks
    Its President

_____
Alan C. Neely

32

**EXHIBIT 5**

**Secretary of State**
**Division of Business Services**
312 Eighth Avenue North
6th Floor, William R. Snodgrass Tower
Nashville, Tennessee 37243

DATE: 03/21/06
REQUEST NUMBER: 5725-2405
TELEPHONE CONTACT: (615) 741-2286
FILE DATE/TIME: 03/21/06 1008
EFFECTIVE DATE/TIME: 03/21/06 1630
CONTROL NUMBER: 0012733

TO:
REED WEITKAMP SCHELL& VICE PLLC
500 WEST JEFFERSON S
SUITE 2400
LOUISVILLE, KY 40202-2812

RE:
GILES FAMILY HOLDINGS, INC.
ARTICLES OF AMENDMENT TO THE CHARTER

THIS WILL ACKNOWLEDGE THE FILING OF THE ATTACHED DOCUMENT WITH AN
EFFECTIVE DATE AS INDICATED ABOVE.

WHEN CORRESPONDING WITH THIS OFFICE OR SUBMITTING DOCUMENTS FOR
FILING, PLEASE REFER TO THE CORPORATION CONTROL NUMBER GIVEN ABOVE.

PLEASE BE ADVISED THAT THIS DOCUMENT MUST ALSO BE FILED IN THE OFFICE
OF THE REGISTER OF DEEDS IN THE COUNTY WHEREIN A CORPORATION HAS ITS
PRINCIPAL OFFICE IF SUCH PRINCIPAL OFFICE IS IN TENNESSEE.

----------------------------------------------------------------
----------------------------------------------------------------

FOR: ARTICLES OF AMENDMENT TO THE CHARTER               ON DATE: 03/21/06

FROM:                                          FEES
REED WEITKAMP SCHELL & VICE PLLC      RECEIVED:    $20.00          $0.00
SUITE 2400
500 WEST JEFFERSON                TOTAL PAYMENT RECEIVED:         $20.00
LOUISVILLE, KY 40202-0000
                                      RECEIPT NUMBER: 00003898952
                                      ACCOUNT NUMBER: 00239982

*Riley C. Darnell*

RILEY C. DARNELL
SECRETARY OF STATE

SS-4458



**State of Tennessee**

**Department of State**
Corporate Filings
312 Eighth Avenue North
6th Floor, William R. Snodgrass Tower
Nashville, TN 37243

**ARTICLES OF AMENDMENT**
**TO THE CHARTER**
**(For-Profit)**

For Office Use Only

CORPORATE CONTROL NUMBER (IF KNOWN)   0012733

PURSUANT TO THE PROVISIONS OF SECTION 48-20-106 OF *THE TENNESSEE BUSINESS CORPORATION ACT*, THE UNDERSIGNED CORPORATION ADOPTS THE FOLLOWING ARTICLES OF AMENDMENT TO ITS CHARTER:

1. PLEASE INSERT THE NAME OF THE CORPORATION AS IT APPEARS OF RECORD:
Giles Industries of Tazewell, Incorporated

IF CHANGING THE NAME, INSERT THE NEW NAME ON THE LINE BELOW:
Giles Family Holdings, Inc.

2. PLEASE MARK THE BLOCK THAT APPLIES:

[X] AMENDMENT IS TO BE EFFECTIVE WHEN FILED BY THE SECRETARY OF STATE.
[ ] AMENDMENT IS TO BE EFFECTIVE. _____ (MONTH, DAY, YEAR)

(NOT TO BE LATER THAN THE 90TH DAY AFTER THE DATE THIS DOCUMENT IS FILED). IF NEITHER BLOCK IS CHECKED, THE AMENDMENT WILL BE EFFECTIVE AT THE TIME OF FILING.

3. PLEASE INSERT ANY CHANGES THAT APPLY:
A. PRINCIPAL ADDRESS: _____
STREET ADDRESS
_____   _____   _____
CITY   STATE/COUNTY   ZIP CODE
B. REGISTERED AGENT: _____
C. REGISTERED ADDRESS: _____
STREET ADDRESS
_____   TN   _____   _____
CITY   STATE   ZIP CODE   COUNTY
D. OTHER CHANGES:

4. THE CORPORATION IS FOR PROFIT.

5. THE MANNER (IF NOT SET FORTH IN THE AMENDMENT) FOR IMPLEMENTATION OF ANY EXCHANGE, RECLASSIFICATION, OR CANCELLATION OF ISSUED SHARES IS AS FOLLOWS:

6. THE AMENDMENT WAS DULY ADOPTED ON   March 20, 2006   _____ (MONTH, DAY, YEAR)
BY (Please mark the block that applies):

[ ] THE INCORPORATORS WITHOUT SHAREHOLDER ACTION, AS SUCH WAS NOT REQUIRED.
[ ] THE BOARD OF DIRECTORS WITHOUT SHAREHOLDER APPROVAL, AS SUCH WAS NOT REQUIRED.
[X] THE SHAREHOLDERS.

President
SIGNER'S CAPACITY

SIGNATURE

March 20, 2006
DATE

Alan C. Neely
NAME OF SIGNER (TYPED OR PRINTED)

SS-4421 (Rev. 10/01)           Filing Fee: $20.00           RDA 1678

**EXHIBIT 6**

**Secretary of State**
**Division of Business Services**
312 Eighth Avenue North
6th Floor, William R. Snodgrass Tower
Nashville, Tennessee 37243

DATE: 03/21/06
REQUEST NUMBER: 5725-2406
TELEPHONE CONTACT: (615) 741-2286
FILE DATE/TIME: 03/21/06 1007
EFFECTIVE DATE/TIME: 03/21/06 1630
CONTROL NUMBER: 0449084

TO:
REED WEITKAMP SCHELL & VICE PLLC
500 WEST JEFFERSON S
SUITE 2400
LOUISVILLE, KY 40202-2812

RE:
SUNRAY INVESTMENTS, LLC
ARTICLES OF AMENDMENT - LIMITED LIABILITY COMPANY

THIS WILL ACKNOWLEDGE THE FILING OF THE ATTACHED DOCUMENT WITH AN EFFECTIVE
DATE AS INDICATED ABOVE.

WHEN CORRESPONDING WITH THIS OFFICE OR SUBMITTING DOCUMENTS FOR FILING, PLEASE
REFER TO THE LIMITED LIABILITY COMPANY CONTROL NUMBER GIVEN ABOVE.  PLEASE BE
ADVISED THAT THIS DOCUMENT MUST ALSO BE FILED IN THE OFFICE OF THE REGISTER OF
DEEDS IN THE COUNTY WHEREIN A LIMITED LIABILITY COMPANY HAS ITS PRINCIPAL
OFFICE IF SUCH PRINCIPAL OFFICE IS IN TENNESSEE.

----------------------------------------------------------------------

FOR: ARTICLES OF AMENDMENT - LIMITED LIABILITY COMPANY      ON DATE: 03/21/06

FROM:                                             FEES
REED WEITKAMP SCHELL & VICE PLLC      RECEIVED:   $20.00        $0.00
SUITE 2400
500 WEST JEFFERSON                    TOTAL PAYMENT RECEIVED:   $20.00
LOUISVILLE, KY 40202-0000
                                      RECEIPT NUMBER: 00003898954
                                      ACCOUNT NUMBER: 00239982

                                      *Riley C. Darnell*

                                      RILEY C. DARNELL
                                      SECRETARY OF STATE

SS-445R



**State of Tennessee**

**Department of State**
Corporate Filings
312 Eighth Avenue North
6th Floor, William R. Snodgrass Tower
Nashville, TN 37243

**ARTICLES OF AMENDMENT
TO ARTICLES OF ORGANIZATION
(LLC)**

*2006 MAR [ ] AM 10: [ ]*
*For Office Use Only*
*SECRETARY OF STATE*

**FILED**

5725 · 2486

LIMITED LIABILITY COMPANY CONTROL NUMBER (IF KNOWN)    0449084

PURSUANT TO THE PROVISIONS OF §48-209-104 OF THE TENNESSEE LIMITED LIABILITY COMPANY ACT OR §48-249-204 OF THE TENNESSEE REVISED LIMITED LIABILITY COMPANY ACT, THE UNDERSIGNED ADOPTS THE FOLLOWING ARTICLES OF AMENDMENT TO ITS ARTICLES OF ORGANIZATION:

PLEASE MARK THE BLOCK THAT APPLIES:

[X] AMENDMENT IS TO BE EFFECTIVE WHEN FILED BY THE SECRETARY OF STATE.
[ ] AMENDMENT IS TO BE EFFECTIVE _____, _____ (DATE) _____ (TIME).
(NOT TO BE LATER THAN THE 90TH DAY AFTER THE DATE THIS DOCUMENT IS FILED.) IF NEITHER BLOCK IS CHECKED, THE AMENDMENT WILL BE EFFECTIVE AT THE TIME OF FILING.

1. PLEASE INSERT THE NAME OF THE LIMITED LIABILITY COMPANY AS IT APPEARS ON RECORD:    SunRay RV, LLC
IF CHANGING THE NAME, INSERT THE NEW NAME ON THE LINE BELOW:
SunRay Investments, LLC

2. PLEASE INSERT ANY CHANGES THAT APPLY:

A. PRINCIPAL ADDRESS: _____
STREET ADDRESS

CITY _____  STATE/COUNTY _____  ZIP CODE _____
B. REGISTERED AGENT: _____

C. REGISTERED ADDRESS: _____
STREET
TN
CITY _____  STATE _____  ZIP CODE _____  COUNTY _____
D. OTHER CHANGES:

3. THE AMENDMENT WAS DULY ADOPTED ON    3    20    2006
                                        MONTH  DAY   YEAR

(If the amendment is filed pursuant to the provision of §48-209-104 of the TN LLC Act, please also complete the following by checking one of the two boxes:) AND THE AMENDMENT WAS DULY ADOPTED BY THE
[ ] BOARD OF GOVERNORS WITHOUT MEMBER APPROVAL AS SUCH WAS NOT REQUIRED
[X] MEMBERS

Sole Member & Governor
SIGNER'S CAPACITY

_____
SIGNATURE

Alan Neely
NAME OF SIGNER (TYPED OR PRINTED)

SS-4247 (REV. 01/06)          Filing Fee: $20.00          RDA 2458

**EXHIBIT 7**

Articles of Amendment

To

Articles of Incorporation

Of

### Giles Acquisition Corp.

Changing the Name of the Corporation to Giles Industries, Inc.

Pursuant to the provisions of Section 10-2B-10.06 of the Alabama Business Corporation Act (the "Act"), the undersigned Corporation created and existing under the laws of the State of Alabama hereby adopts the following Articles of Amendment to its Articles of Incorporation:

Article I:        The name of the Corporation is Giles Acquisition Corp.

Article II:        The following Amendment to the Articles of Incorporation was adopted by the Board of Directors and the sole Shareholder of the Corporation on the 21st day of march, 2006, in the manner prescribed by the Act:

Resolved that, the name of the Corporation shall be changed from Giles Acquisition Corp. to "Giles Industries, Inc.," and Article I of the Corporation's Articles of Incorporation shall be amended to read as follows:

The name of the Corporation shall be Giles Industries, Inc.

Article III:        The number of shares of the Corporation outstanding at the time of such adoption was 1,000 shares of common capital stock; the number of shares entitled to vote thereon was 1,000; and all of the said 1,000 shares were voted in favor of this Amendment.

DATED this the 21st day of March, 2006.

Giles Acquisition Corp.

By: _____
Dan R. Batchelor
Its Executive Vice President

This document prepared by:
Carolyn L. Duncan
Cabaniss, Johnston, Gardner, Dumas & O'Neal LLP
2001 Park Place North, Suite 700
Birmingham, Alabama 35203

Nancy L. Worley
Secretary of State

P.O. Box 5616
Montgomery, AL 36103-5616

# STATE OF ALABAMA

I, Nancy L. Worley, Secretary of State of the State of Alabama, having custody of the Great and Principal Seal of said State, do hereby certify that pursuant to the provisions of Section 10-2B-4.02, Code of Alabama 1975, and upon an examination of the corporation records on file in this office, the following corporate name is reserved as available:

Giles Industries, Inc.

This domestic corporation name is proposed to be incorporated in Jefferson County and is for the exclusive use of Laura Payne, 2000 Interstate Park Dr Ste 204, Montgomery, AL 36109 for a period of one hundred twenty days beginning March 21, 2006 and expiring July 20, 2006.



Total of Fees and Taxes=$11.00
LINDA

In Testimony Whereof, I have hereunto set my hand and affixed the Great Seal of the State, at the Capitol, in the City of Montgomery, on this day.



March 21, 2006

Date

Nancy L. Worley

Secretary of State

## ARTICLES OF INCORPORATION

### OF

### GILES ACQUISITION CORP.

200602/6489

For the purpose of forming a corporation under the Alabama Business Corporation Act and any act amendatory thereof, supplementary thereto or substituted therefor (hereinafter referred to as the "Act"), the undersigned does hereby sign and adopt these Articles of Incorporation, and, upon the filing for record of these Articles of Incorporation in the office of the Judge of Probate of the county in which the initial registered office is established under Article III hereof, the existence of a corporation (hereinafter referred to as the "Corporation"), under the name set forth in Article I hereof, shall commence.

### ARTICLE I
### NAME

The name of the Corporation shall be Giles Acquisition Corp.

### ARTICLE II
### SHARES OF CAPITAL STOCK

**2.1    Authorized Shares.**   The aggregate number of all shares of capital stock the Corporation shall have authority to issue shall be 1,000 shares at par value of $0.01 per share.

**2.2    Rights of Shares.**  All issued and outstanding shares shall have the same preferences, limitations and relative rights, including, without limitation, (i) unlimited voting rights for all purposes at the rate of one (1) vote for each issued and outstanding share and (ii) the right to receive the net assets of the Corporation upon dissolution thereof. To the extent not inconsistent with the foregoing, or with the provisions of the Act or the Constitution of Alabama, the Board of Directors may determine, in whole or in part, the preferences, limitations and relative rights of the shares prior to the issuance of any shares.

**2.3    Denial of Shareholder's Preemptive Rights.**  No shareholder shall be entitled as a matter of right to subscribe for, purchase, or receive any shares of stock, or other securities convertible into stock, of the Corporation which it may issue, or sell, whether such shares are now or hereafter authorized, but all such additional shares of stock or other securities may be issued and disposed of by the Board of Directors to such persons and upon such terms as in its absolute discretion it may deem advisable.  No shareholder of any shares of stock shall have any preemptive rights with respect to the issuance of any class of stock, including treasury shares.

### ARTICLE III
### INITIAL REGISTERED OFFICE AND REGISTERED AGENT

The street address of the initial registered office of the Corporation is 3284 Morgan Drive, Birmingham, AL 35216, USA, and the name of the initial registered agent at such registered office is Dan E. Batchelor.

## ARTICLE IV
### INCORPORATOR

The name and address of the incorporator is:

| Name | Address |
|------|---------|
| Dan E. Batchelor | 3284 Morgan Drive<br>Birmingham, AL 35216 |

## ARTICLE V
### INITIAL BOARD OF DIRECTORS

**5.1**    The number of directors constituting the initial Board of Directors shall be three.

**5.2**    The names and addresses of the individuals who are to serve as the initial directors until the first annual meeting of shareholders or until their successors be elected and qualify are:

| Directors | Address |
|-----------|---------|
| Keith O. Holdbrooks | 144 Corporate Way<br>Addison, Alabama 35540 |
| Dan E. Batchelor | 3284 Morgan Drive<br>Birmingham, Alabama 35216 |
| James L. Stariha | 144 Corporate Way<br>Addison, Alabama 35540 |

## ARTICLE VI
### PURPOSES, OBJECTS AND POWERS

**6.1**    The purposes for which the Corporation is organized are to design, assemble, manufacture, construct, finish, sell and otherwise deal in manufactured housing and related products, and to buy, sell, repair, utilize and operate any and all equipment, parts, inventory and materials of every kind and description for use in such business. In addition, the Corporation is formed for the purpose of engaging in any lawful business, act or activity for which a corporation may be organized under the Act, it being the purpose and intent of this Article to invest the Corporation with the broadest purposes, objects and powers lawfully permitted a corporation formed under the Act; and to carry on any and all aspects, ordinary or extraordinary, of any lawful business and to enter into and carry out any transaction, ordinary or extraordinary, permitted by law, having and exercising in connection herewith all powers given to corporations by the Act and all other applicable laws of the State of Alabama.

**6.2**    The foregoing Section 6.1, and each phrase thereof, shall be construed, in their broadest sense, not only as purposes and objects for which the Corporation has been organized, but also as powers of the Corporation in addition to those powers specifically conferred upon the Corporation by law, and it is hereby expressly provided that the foregoing specific enumeration of such purposes, objects and

2

powers shall not be held to limit or restrict in any manner the powers of the Corporation otherwise granted by law. All words, phrases and provisions in this Article are used in their broadest sense, are not limited by reference to, or inference from, any other words, phrases or provisions and shall be so construed. For purposes of these Articles of Incorporation, the term "person" means and includes any individual or entity.

## ARTICLE VII
## INTERNAL AFFAIRS

The following provisions for the regulation of the business and for the conduct of the affairs of the Corporation, the directors and the shareholders are hereby adopted:

7.1    The initial bylaws of the Corporation shall be adopted by the shareholders. The power to alter, amend, or repeal the bylaws or adopt new bylaws shall be vested in the shareholders, which power may be exercised in the manner and to the extent provided in the bylaws. The bylaws may contain any provisions for the regulation of the business and for the conduct of the shareholders not inconsistent with the Act or these Articles of Incorporation.

7.2    Subject to the limitations set forth in the Act, these Articles of Incorporation, as amended from time to time, and the bylaws, as amended from time to time, the business and affairs of the Corporation shall be managed by the Board of Directors. The number of directors comprising the initial Board of Directors shall be the number of persons listed as directors in Article V hereof. Thereafter, the number of directors of the Corporation shall be fixed from time to time by the bylaws, or, in the absence of a bylaw fixing the number of directors, the number of directors shall be the same as the number comprising the initial Board of Directors. The number of directors shall be increased or decreased from time to time by amendment to the bylaws, provided that the Board of Directors shall consist of not less than one natural person.

7.3    The Corporation reserves the right from time to time to amend, alter or repeal each and every provision contained in these Articles of Incorporation, or to add one or more additional provisions, in the manner now or hereafter prescribed or permitted by the Act, and all rights conferred upon shareholders at any time are granted subject to this reservation.

**IN TESTIMONY WHEREOF,** witness the hand of the undersigned incorporator on this, the 7TH day of February, 2006.

_____
Dan E. Batchelor, Incorporator

This instrument prepared by:
Carolyn L. Duncan
Cabaniss, Johnston, Gardner,
    Dumas & O'Neal
2001 Park Place North, Suite 700
Post Office Box 830612
Birmingham, Alabama 35283-0612
Telephone: (205) 716-5200

3

Nancy L. Worley
Secretary of State

P.O. Box 5616
Montgomery, AL 36103-5616

# STATE OF ALABAMA

I, Nancy L. Worley, Secretary of State of the State of Alabama, having custody of the Great and Principal Seal of said State, do hereby certify that pursuant to the provisions of Section 10-2B-4.02, Code of Alabama 1975, and upon an examination of the corporation records on file in this office, the following corporate name is reserved as available:

### Giles Acquisition Corp.

This domestic corporation name is proposed to be incorporated in Jefferson County and is for the exclusive use of Brian G. Wilson, 2001 Park Place North Suite 700, Birmingham, AL 35203 for a period of one hundred twenty days beginning January 30, 2006 and expiring May 31, 2006.

State of Alabama - Jefferson County
I certify this instrument filed on:
2006 FEB 07 04:29:28.99PM
Recorded and $
Mtg. Tax
and $ 36.00
Deed Tax and Fee Amt.
$          Total $  36.00
MARK GAINES, Judge of Probate

200602/6489



In Testimony Whereof, I have hereunto set my hand and affixed the Great Seal of the State, at the Capitol, in the City of Montgomery, on this day.

January 30, 2006

Date

Nancy L. Worley                    Secretary of State

**EXHIBIT 8**

Amendment to
Articles of Organization
of
Sunray Acquisition, LLC



Changing the Name of the Company to
Sunray RV, LLC

Pursuant to § 10-12-11 of the Code of Alabama, the undersigned, being the sole member of SunRay Acquisition, LLC, an Alabama limited liability company (the "Company") does hereby adopt this Amendment to the Articles of Organization of the Company and does hereby set forth the following:

1.      The name of this limited liability company is: SunRay Acquisition, LLC.

2.      The Articles of Organization of the Company were filed on February 8, 2006 in the Probate Office of Jefferson County, Alabama.

3.      The following amendment to the Articles of Organization was adopted in the manner provided for by the Alabama Limited Liability Company Act::

        Resolved, that Article I of the Company's Articles of Organization shall be amended so that Section 1.1 shall read as follows:

        1.1  The name of the Company shall be SunRay RV, LLC.

4.      The amendment, consistent with the Limited Liability Company Act, was approved by the sole member of the Company and in accordance with the requirements set forth in the Company's Articles of Organization and Operating Agreement as in effect on the date hereof.

IN WITNESS WHEREOF the sole member of SunRay Acquisition, LLC, acting by and through its duly authorized officer, does hereby adopt this Amendment to the Company's Articles of Organization.

Dated this the 21st day of March, 2006.

20060322000160400   1/1
Bk: LR200605 Pg:19950
03/23/2006 03:05:16 PM PREND
Fee - $11.00

Total of Fees and Taxes-$11.00
LINDA

Sole Member:
GILES ACQUISITION CORP.

By: _____
    Dan E. Batchelor
    Its Executive Vice President

This instrument prepared by
Carolyn L. Duncan
Cabaniss, Johnston, Gardner, Dumas & O'Neal LLP
2001 Park Place North, Suite 700
Birmingham, Alabama 35203

## ARTICLES OF ORGANIZATION

### OF

### SUNRAY ACQUISITION, LLC

2 0 0 6 0 2 / 7 3 1 7

For the purpose of forming a limited liability company under the Alabama Limited Liability Company Act, ALA. CODE §§ 10-12-1 et seq. (1999 Repl.), and any act amendatory thereof, supplementary thereto or substituted therefor (the "Act"), the undersigned does hereby sign and adopt these Articles of Organization (the "Articles"), and, upon the filing for record of these Articles of Organization in the office of the Judge of Probate of the county in which the initial registered office is established under Article IV hereof, the existence of a limited liability company (the "Company"), under the name set forth in Article I hereof, shall commence.

### ARTICLE I

### NAME

1.1     The name of the Company shall be SunRay Acquisition, LLC.

### ARTICLE II

### DURATION OF COMPANY

2.1     The period of duration of the Company shall be perpetual; provided, however, that the Company may be sooner dissolved (a) upon the written consent of two-thirds (2/3) of the members of the Company; (b) as provided in the Operating Agreement between the members of the Company and the Company; or (c) as otherwise provided in the Act.

### ARTICLE III

### PURPOSES, OBJECTS AND POWERS

3.1     The purposes, objects and powers of the Company are:

(a)     To engage in any lawful business, act or activity for which a limited liability company may be organized under the laws of the state of Alabama.

(b)     Without limiting the scope and generality of the foregoing, to engage in the business of the manufacture and sales of travel trailers and similar products, and such other business as the member shall from time to time determine, and in any other business directly or indirectly related thereto.

(c)     To have and to exercise any and all of the powers specifically granted in the Act, none of which shall be deemed to be inconsistent with the nature, character or the object of the Company and none of which are denied to it by these Articles of Organization.

## ARTICLE IV

### REGISTERED OFFICE AND REGISTERED AGENT

**4.1**    The location and mailing address of the initial registered office of the Company shall be 3284 Morgan Drive, Birmingham, Alabama 35216.

**4.2**    The name of the initial registered agent of the Company at such address shall be Dan E. Batchelor.

## ARTICLE V

### INITIAL MEMBERSHIP OF THE COMPANY

**5.1**    The name and address of the initial member of the Company is as follows:

| MEMBER | ADDRESS |
|---|---|
| Giles Acquisition Corp., an Alabama corporation | 144 Corporate Way P.O. Box 390 Addison, AL 35540 |

## ARTICLE VI

### ADMISSION OF ADDITIONAL MEMBERS

**6.1**    The member or members of the Company shall have the right to admit additional members to the Company upon the written consent of all the members of the Company.

## ARTICLE VII

### ELECTION TO CONTINUE IN BUSINESS
### WHEN THERE IS NO REMAINING MEMBER

**7.1**    The Company shall be dissolved and its affairs shall be wound up when there is no remaining member unless either:

(a)    The holders of all the financial rights in the Company agree in writing, within ninety (90) days after the cessation of membership of the last member, to continue the legal existence and business of the Company and to appoint one or more new members; or

(b)    The legal existence and business of the Company is continued and one or more new members are appointed.

2

## ARTICLE VIII

### MANAGEMENT OF THE COMPANY

8.1     The Company shall be managed by not less than three (3) managers who shall serve until the first meeting of member of the Company, or until their successors are duly elected and qualified.  The name, office and mailing address of the managers are as follows:

| Manager | ADDRESS |
|---|---|
| Keith O. Holdbrooks, President | 144 Corporate Way<br>Addison, AL 35540 |
| Dan E. Batchelor, Executive Vice President and Secretary | 3284 Morgan Drive<br>Birmingham, AL 35216 |
| James L. Stariha, Treasurer and Assistant Secretary | 144 Corporate Way<br>Addison, AL 35540 |

### ARTICLE IX

### AMENDMENT OF THE ARTICLES OF ORGANIZATION

9.1     Any amendment to these Articles of Organization shall be approved by a vote of two-thirds (2/3) of the members of the Company entitled to vote thereon.

### ARTICLE X

### ORGANIZATION OF THE COMPANY

10.1    The name and address of the organizer of the Company are as follows:

| ORGANIZER | ADDRESS |
|---|---|
| Dan E. Batchelor | 3284 Morgan Drive<br>Birmingham, Alabama 35216 |

3

**IN TESTIMONY WHEREOF,** the undersigned has affixed his hand and seal as the organizer of the Company on this the _____ day of February, 2006.

_____

Dan E. Batchelor, Organizer.

This instrument prepared by:
Carolyn L. Duncan
Cabaniss, Johnston, Gardner,
  Dumas & O'Neal
2001 Park Place Tower, Suite 700
Birmingham, Alabama 35203
(205) 716-5200

State of Alabama - Jefferson County
I certify this instrument filed on:
2006 FEB 09 10:20:36:31AM
Recorded and $                    Mtg. Tax
and $                         Deed Tax and Fee Amt.
$      36.00    Total $      36.00
MARK GAINES, Judge of Probate

200602/7317

4

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION**

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | ) ) ) ) ) ) | MDL NO. 07-1873<br><br>SECTION "N-4"<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT IS RELATED TO *Johnson v. United State*, No. 3602 | ) ) ) ) | MAG. JUDGE ROBY |

**NEWLY ADDED DEFENDANT GILES INDUSTRIES, INC.'S
NARRATIVE STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Newly Added Defendant Giles Industries, Inc., by and through their undersigned counsel, hereby submits this Narrative Statement of Undisputed Facts in support of its Motion for Summary Judgment. In support of this Narrative Statement of Undisputed Facts, New Defendants Giles Industries and SunRay RV have previously filed an Evidentiary Submission providing the evidentiary basis for the facts set forth herein.

**Narrative Statement of Undisputed Facts**

1.      Purporting to represent a class of similarly-situated individuals, Plaintiffs filed a complaint (the "Johnson Complaint") against the Federal Government and various manufacturers and suppliers of travel trailers, park models, and mobile homes. See Johnson v. United States, No. 3082.

2.      Plaintiffs allege that the travel trailers, park models, and mobile homes (collectively the "housing units") provided by the Defendants contained harmful levels of formaldehyde due to defects in the manufacture of the housing units. Id.

1

01661485.1

3.    Based on alleged personal injuries purportedly resulting from exposure to this formaldehyde, Plaintiffs assert various claims against the Defendants, including Giles Industries, Inc.

### 1)    Source of the Housing Units At Issue.

4.    All housing units that were sold to FEMA under the name "Giles Industries" were manufactured and sold on or before March 4, 2006.  <u>See</u> Exhibit 1 to Evidentiary Submission, ¶¶ 7-8.

5.    Manufactured homes manufactured and sold under the name "Giles Industries" before February 8, 2006 were manufactured and sold by a company named Giles Industries of Tazewell, Incorporated. <u>See</u> Exhibit 1 to Evidentiary Submission, ¶¶ 7-8 and Exhibit 2 to Evidentiary Submission.[1]

6.    Giles Industries of Tazewell, Incorporated was a Tennessee corporation incorporated June 6, 1968.  <u>See</u> Exhibit 2 to Evidentiary Submission.

### 2)    Sale of Assets.

7.    The assets of Giles Industries of Tazewell, Incorporated, a Tennessee corporation, were purchased on March 20, 2006 by Giles Acquisition Corp., an Alabama corporation (this transaction is hereinafter referred to as the "Acquisition").  <u>See</u> Exhibit 4 to Evidentiary Submission.

8.    Under the terms of the Asset Purchase Agreement, Giles Acquisition Corp. acquired substantially all the assets of Giles Industries of Tazewell, Incorporated, specifically including "[a]ll of the inventory . . . including raw materials, work-in-process, finished goods

---

[1] The entity Giles Industries of Tazewell, Incorporated no longer exits under that name. <u>See</u> Exhibit 5 to Evidentiary Submission.

2

and inventory", and both companies' names and all of their respective patents, trademarks, service marks and trade names. See Exhibit 4 to Evidentiary Submission, §§ 1.2A(ii), (vii).

9.      Under this same agreement, Giles Acquisition Corp. specifically and expressly did not assume any product liability and warranty claims:

> **1.4    Liabilities Not Assumed.**  Other than the Assumed Liabilities, Purchasers shall not accept, assume, become or be liable for or subject to any liability, indebtedness, obligation or responsibility of Sellers or of any other person or entity in any way related to the ownership or operation, or both, of the Purchased Assets or the Business prior to the Closing Date [March 20, 2006], whether said liability, indebtedness, obligation or responsibility arises before or after the Closing.... **It is expressly agreed, without limiting the effect of the preceding sentence, that Purchasers shall not be obligated to assume or become liable for,** without Purchasers' express written consent, any of Sellers' liabilities, debts or commitments of any kind whatsoever, known or unknown, fixed or contingent, or, without limitation, . . . **liabilities which relate to any product liability or warranty claim with respect to products sold by Industries or SunRay or sold after the Closing Date but produced prior to the Closing Date ....**

See Exhibit 4 to Evidentiary Submission, §§ 1.3, 1.4 (emphasis added).

### 3)      Change of Corporate Names.

10.      Immediately following the Acquisition, both Giles Acquisition Corp. and Giles Industries of Tazewell, Incorporated changed their names to effectuate the transfer of the trade names and associated rights from the selling/predecessor Tennessee entity (Giles Industries of Tazewell, Incorporated) to the purchasing/successor Alabama entity (Giles Acquisition Corp.). See Exhibit 4 to Evidentiary Submission, § 9.5.

11.      On March 21, 2006, the name of Giles Industries of Tazewell, Incorporated was changed to Giles Family Holdings, Inc. See Exhibit 5 to Evidentiary Submission.

12.      Likewise, on March 23, 2006, the name of Giles Acquisition Corp. was changed to Giles Industries, Inc. See Exhibits 7 to Evidentiary Submission.

01661485.1

Wherefore, New Defendant Giles Industries, Inc. hereby respectfully submits this

Narrative Statement of Undisputed Facts in support of its Motion for Summary Judgment.

Respectfully submitted,

*/s/ Stephanie Skinner*
Stephanie Skinner
One of the Attorneys for Giles Industries, Inc.

**OF COUNSEL:**

FOWLER RODRIGUEZ & CHALOS
400 Poydras Street, 30th Floor
New Orleans, Louisiana 70130
Telephone: 504-523-2600
Fax: 504-523-2705

Lee E. Bains, Jr.
Thomas W. Thagard, III
Edward A. "Ted" Hosp
Edward S. Sledge IV
MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2616
(205) 254-1000

4

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document by first-class mail to all counsel of record who are non-CM/ECF participants.

*/s/ Stephanie Skinner*
Of Counsel

01661485.1