UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: FEMA TRAILER | \* | MDL NO. 1873 | |
| FORMALDEHYDE | \* | | |
| PRODUCTS LIABILITY | \* | | |
| LITIGATION | \* | | |
| | \* | JUDGE: ENGELHARDT | |
| This Document Relates to:  All Cases | \* | | |
| | \* | | |
| | \* | MAG: ROBY | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EXPERT TESTIMONY OF PATRICIA M. WILLIAMS, PH.D., DABT**

**MAY IT PLEASE THE COURT:**

On November 10, 2008, the Manufacturing Defendants filed a Motion *in Limine* to exclude the testimony of Plaintiffs' expert Patricia Williams. Rec. Doc. No. 860. At the Court's December 2, 2008, hearing on Plaintiffs' Motion to Certify this proceeding as a class action, Dr. Williams offered live testimony in support of her reported findings and opinions. In this Reply Memorandum, the Manufacturing Defendants wish to call the Court's attention to inaccurate testimony offered by Dr. Williams at the hearing.

First, during Dr. Williams' cross-examination, counsel questioned Dr. Williams on whether formaldehyde can cause nasopharyngeal cancer. See Ex. A, TRANSCRIPT OF MOTION TO CERTIFY CLASS PROCEEDINGS HEARD BEFORE THE HON. KURT D. ENGLEHARDT, UNITED STATES DISTRICT JUDGE, p. 69-70. The following discussion centered on information in Dr. Williams' report:

> Q. So if I'm understanding you correctly, you've cited the Hauptmann reports but you have not reviewed the Hauptmann reports?
> A. IARC cited the Hauptmann report.
>
> \* \* \*

> Q. Okay. There we go. Next sentence. "Based on eight cases, a significant excess mortality from nasopharyngeal cancer was observed among formaldehyde-exposed workers in comparison with the national population (standard mortality ratio 2.10; 95 percent confidence interval, 1.05 – 4.21)." Correct?
> A. That is what IARC (International Agency for Research on Cancer) says.
> Q. But there is a footnote to that page, is there not?
> A. Well, not in IARC. . . .

*Id*.

During the hearing, Dr. Williams said that she relied on IARC's citation of the Hauptmann study to conclude that the study achieved an acceptable confidence interval. *See id*. She flatly denied that IARC contained any footnotes from the Hauptmann study. *Id*. However, that is not the case. The IARC manual contains a comment noting that the Hauptmann authors admitted that the real confidence interval for their study was 0.91 – 4.14. Ex. B, IARC MONOGRAPHS ON THE EVALUATION OF CARCINOGENIC RISKS TO HUMANS, Vol. 88, *Formaldehyde, 2-Butoxyethanol and 1-tert-Butoxypropan-2-ol*, p. 95 (June 2—9, 2004). So, regardless of whether Dr. Williams relied upon the study itself or the IARC manual, she had access to the footnote describing the study's actual confidence interval. Her testimony to the contrary is incorrect.

> Second, her testimony is likewise incorrect as to another study.
>
> Q. If we can turn to the Stellman study. Did you cite portions of the Stellman study in your opinion?
> A. IARC has included in their monographs the lymphohematopoietic SRM of 3.44 and the leukemia of SMR of 5.79 with confidence levels for both exposures to formaldehyde and wood dust.
>
> * * *
>
> Q. There was – you cited the column with formaldehyde plus wood dust, correct?
> A. I did, right.
> Q. There was a column right next to it – keep going, it's there – there was a column right next to it with formaldehyde exposure only, correct?
> A. No. . . .

Ex. A, p. 73.

Dr. Williams again stated that IARC did not include information about a given study, in this case, the Stellman study. Yet, the IARC manual <u>does</u> include the information from the Stellman study about formaldehyde exposure without concomitant exposure to wood dust. Ex. B, p. 98. Regardless of whether Dr. Williams relied upon the Stellman study or the IARC manual, she had access to the information about exposure to formaldehyde alone. She yet again misstated this information during her testimony.

Third, Dr. Williams offered testimony as to the meaning, or lack thereof, of negative studies in the field of epidemiology.

> Q. Am I correct that you consider negative studies to be meaningless?
> A. IARC makes a statement in the front of their – negative epi (sic) studies cannot prove the no. You cannot take a negative result, that's a cardinal rule of epidemiology, and prove that something isn't. You can't prove a negative. And that is the standard. So that is correct. You cannot make that conclusion.
>
> * * *
>
> Q. If we can continue. Next slide. Same page. "I chose were articles that would prove and showed an association. Since epidemiology is by design, negative studies are meaningless."
> A. Correct.
>
> * * *
>
> Q. If we had ten studies and one was positive and nine showed no association, you would opine, got to go with the positive, the negative is meaningless. Correct?
> A. Correct. . . .

Ex. A, p. 78-80.

According to Dr. Williams, negative studies are meaningless in making an epidemiologic determination. Various sources completely contradict that opinion. Renowned epidemiologist Richard Doll stated at an IARC symposium over 20 years ago,

> If, however, [negative evidence] does and is consistent in a variety of studies (correlation studies over time, cohort studies of exposed individuals, and case-control studies of affected patients) whereas the laboratory evidence is limited in

scope to, for instance, a particular type of tumour (sic) in a few species, *negative human evidence may justify the conclusion that for practical purposes the agent not be treated as a human carcinogen*.

EX. C, INTERNATIONAL AGENCY FOR RESEARCH ON CANCER, INTERPRETATION OF NEGATIVE EPIDEMIOLOGICAL EVIDENCE FOR CARCINOGENICITY 7 (N.J. Wald & R. Doll eds., Oxford Univ. Press 1985) (emphasis added). Additionally, the same IARC manual that Dr. Williams relied upon in drafting her report and testifying at the Certification hearing, states, "When several epidemiologic studies show little or no indication of an association between an exposure and cancer, *the judgment may be made that*, in the aggregate, they show evidence of lack of carcinogenicity." Ex. B, p. 17 (emphasis added). IARC also cites studies that show no association – the so-called negative studies – between an agent and cancer as evidence that the agent lacks carcinogenicity. *Id*. at 24.

In addition to IARC, epidemiology textbooks indicate the importance of negative studies. In Occupational Epidemiology, the author includes an entire section on "Interpretation of Data With No Association Between Exposure and Disease." Ex. D, RICHARD R. MONSON, OCCUPATIONAL EPIDEMIOLOGY 89 (2ND ED. 1990). These various sources show that negative studies surely play some role in determining whether a given agent causes a given symptom. Nevertheless, Dr. Williams testified otherwise, and in doing so misrepresented the true nature of epidemiology to this Court.

Finally, Dr. Williams' hearing testimony has created a great deal of ambiguity as to whether she is rendering an opinion on formaldehyde's ability to cause cancer. In Dr. Williams' affidavit, she rendered an opinion that because of a documented association between formaldehyde and cancer, the plaintiffs in this case have a legitimate fear of cancer. Ex. D, Affidavit of Patricia M. Williams, Ph.D. DABT, p. 34. Also, during her hearing testimony, she

stated that she concurred with IARC's designation of formaldehyde as a Group 1 carcinogen. Ex. A, p. 71. However, just a few moments after making that statement, she said, "I have not rendered any opinions on cancer." *Id*. at 72. "If I were," she continued, "then I would be going beyond what IARC [said] and [would look] at individual articles." *Id*.

Dr. Williams' testimony has left open an important question – is she rendering an opinion as to an association between formaldehyde and cancer? If she is, then any statement that she is not is confusing and incongruous. Also, that opinion is unreliable for the reasons laid out above (e.g., the misquotation of IARC information, the importance of negative studies, etc.). If, on the other hand, she is not rendering any cancer opinion, then she evidently chose to withdraw her previous opinions under cross-examination. The Manufacturing Defendants believe this ambiguity is yet another confusing misstatement offered by Dr. Williams at the Certification Hearing.

Therefore, based on the reasons set forth in the original Motion in Limine and in this Reply Memorandum, the Manufacturing Defendants respectfully request that this Court issue an Order precluding Dr. Williams from offering any and all opinions in this litigation.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/ Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Fax: (504) 837-3119
andreww@duplass.com
*DEFENSE LIAISON COUNSEL*

## **C E R T I F I C A T E**

      I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )    Hand Delivery                        ( )    Prepaid U.S. Mail

( )    Facsimile                                ( )    Federal Express

(X)    CM/ECF

      New Orleans, Louisiana this 10th day of December, 2008.

                                      s/Andrew D. Weinstock
                               _____
                               ANDREW D. WEINSTOCK #18495