UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                              MDL NO. 07-1873
        FORMALDEHYDE PRODUCTS
        LIABILITY LITIGATION
                                                 SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES

## ORDER AND REASONS

Before the Court is the Master Response of Manufacturing Defendants to the Second
Amended and Master Complaint of Plaintiffs Adopting Previously Filed 12(B) Motions [Rec. Doc.
210] (Rec. Doc. 780). The "Manufacturing Defendants" or "Defendants," by way of the instant
Master Response to the Plaintiffs' Second Supplemental and Amended Master Complaint, adopt and
re-allege certain arguments made in their previously filed and partially disposed of Rule 12(b)(6)
motion to dismiss (Rec. Doc. 210). After reviewing the Administrative Master Complaint ("AMC")
(Rec. Doc. 109), the Second Supplemental and Amended Complaint ("the amended AMC") (Rec.
Doc. 722), the memoranda of the parties, and the applicable law, the Court rules as set forth herein.

I.      BACKGROUND

The Manufacturing Defendants filed a Joint Rule 12(b)(6) Motion to Dismiss (Rec.
Doc. No. 210) on May 19, 2008, which Plaintiffs opposed (Rec. Doc. 348). On August 1, 2008,
the Court issued an Order and Reasons on the "Motion to Dismiss Administrative Master

Complaint on Behalf of Newly Added Defendants CMH Manufacturing Inc., Southern Energy Homes, Inc., Giles Industries, Inc., Sunray RV, LLC, Palm Harbor MFG., LP, and Palm Harbor Albemarle, LLC" (See Rec. Doc. 599). In that Order and Reasons, the Court ruled that sufficient facts had not been alleged by Plaintiffs to show that standing currently existed as to the Newly-Added Defendants. Thus, the Court granted the motion to dismiss based on lack of standing, without prejudice to the right of Plaintiffs to seek leave to amend within 15 days of entry of its Order.  In that Order and Reasons the Court also noted that, by separate order, the undersigned would grant other pending motions to dismiss based on standing. Thereafter, the Court issued an Order (Rec. Doc. 604) which sought to accomplish that objective. In that August 1, 2008 Order, the Court granted the Manufacturing Defendants' Joint Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 210), based on lack of standing, without prejudice to the right of Plaintiffs to seek leave to amend to establish the existence of standing. Notably, the Court did not address several arguments raised in Defendants' motion; it only addressed the threshold issue of standing.

In response to the August 1, 2008 Order and Reasons, Plaintiffs filed motions seeking leave to amend the AMC (Rec. Docs. 656 and 657), which the Court granted, over the objections of certain Defendants.  (Rec. Doc. 720). Now, these Manufacturing Defendants seek to re-allege arguments not addressed by the Court in its adjudication of their previously filed motion to dismiss (Rec. Doc. 210).[1]  The Manufacturing Defendants recognize that, on its face, the Motion

---

[1]      According to the Specific Manufacturing Defendants' Supplemental Memorandum in Support of Their Joint Rule 12(b)(6) Motion to Dismiss (Doc. 210) (Rec. Doc. 922), the Manufacturing Defendants only seek to re-urge and adopt Sections I through V of Rec. Doc. 210.  Thus, the standing and matching arguments asserted in Rec. Doc. 210 are not re-urged and will not be addressed herein.

applies only to Plaintiffs' AMC (Rec. Doc. 109).  However, the Manufacturing Defendants essentially respond to the amended AMC (Rec. Doc. 722) by reasserting the arguments made in their earlier-filed motion to dismiss (Rec. Doc. 210).[2]

Accordingly, the Manufacturing Defendants assert that the allegations made in the AMC (rec. Doc. 109) and amended AMC (Rec. Doc. 722) fail to state a claim upon which relief can be granted on the following grounds:

(1) Plaintiffs' claims sounding in breach of express warranty for property damage and personal injury fail under Alabama, Mississippi, Texas, and Louisiana law;

(2) Plaintiffs' claims sounding in breach of implied warranty of merchantability for property damage fail under Alabama, Mississippi, and Texas law;

(3) Plaintiffs' claims sounding in breach of implied warranty for fitness for a particular purpose for property damage and personal injury fail under Alabama, Mississippi, and Texas law;

(4) Plaintiffs' claims are barred by the economic loss doctrine under Alabama, Mississippi, Texas, and Louisiana law; and

(5) Plaintiffs' claims for medical monitoring are precluded by Alabama, Mississippi, Texas, and Louisiana law.

## II.  DISCUSSION

### A.  Legal Standard - Motion to Dismiss under Rule 12(b)(6)

As recently discussed by the undersigned in *Bishop v. Shell Oil Co.*, No. 07-2832, 2008

---

[2]      Because the amended AMC does not re-allege all allegations from the AMC in total (and only adds supplemental allegations), the Court, in this opinion, often makes reference to allegations made in the AMC (Rec. Doc. 109) and not the amended AMC (Rec. Doc. 722).

WL 2079944, * 1-2 (E.D. La.5/16/08) and in *Yount v. Research Specialists, Inc.*, No. 07-1218,

2008 WL 4470189, *1-2 (E.D. La. 9/30/08), compliance with Rule 8 of the Federal Rules of

Civil Procedure requires that the Complaint provide the defendant with "fair notice of what the

plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema*, 534 U.S. 506,

511, 122 S.Ct. 992, 998 (2002) (internal citations omitted); see also *Christopher v. Harbury*, 536

U.S. 403, 416, 122 S.Ct. 2179, 2187 (2002) (the elements of the plaintiff's claim(s) "must be

addressed by allegations in the complaint sufficient to give fair notice to a defendant").

Although a complaint does not need "detailed factual allegations, ... more than labels and

conclusions, are necessary, and a formulaic recitation of the elements of a cause of action will

not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929

(2007) (internal citations and quotations omitted); see also *Papasan v. Allain*, 478 U.S. 265, 286,

106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept

as true a legal conclusion couched as a factual allegation"). Thus, "the plaintiff must plead

'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal

Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (quoting *Twombly*, 127 S.Ct. at 1974)). In

other words, the "[f]actual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all of the allegations in the complaint are true (even if

doubtful in fact)." *Twombly*, 127 S.Ct. at 1965.[3]  The degree of required specificity, however,

depends on context, i.e., the type of claim at issue. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247

---

[3]       The Third Circuit Court of Appeals recently described *Twombly* as "seek[ing] to find a middle
ground between 'heightened fact pleading,' which is expressly rejected [relative to Rule 8] ... and allowing
complaints that are not more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of
action,' which the Court stated 'will not do.'" *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 127 S.Ct. at 1965,
1974).

(10th Cir.2008).

In evaluating motions to dismiss filed under Rule 12(b)(6), the Court "must accept all well-pleaded facts as true, and ... view them in the light most favorable to the plaintiff." *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir.), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279 (1986). If sufficient notice of the basis of the plaintiff's claim is provided, "dismissal will not be affirmed if the allegations [made] support relief on any possible theory" of recovery. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir.1999) (internal citations omitted). Moreover, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir.2001). Finally, to the extent that the complaint's allegations are simply vague or ambiguous, a motion for more definite statement, pursuant to Rule 12(e), is appropriate. *Swierkiewicz*, 534 U.S. at 514, 122 S.Ct. 998.

### B.    Analysis

The Court will now separately address Plaintiffs' claims which the Manufacturing Defendants now argue should be dismissed.  Notably, these claims will be analyzed under the applicable law of each state in question.[4]

### 1.    Plaintiff's Claims Sounding in Breach of Warranty

Plaintiffs are seeking to recover for alleged personal injury and economic loss as a result of several purported breaches of warranty. Specifically, Plaintiffs raise the following claims sounding in breach of warranty: (a) breach of express warranty for property damage and personal

---

[4]    While Defendants specifically address choice of law analysis and Plaintiffs do not, both parties agree that these claims should be analyzed under the applicable law of each state in question.  This Court agrees for the reasons stated in the Defendants' memorandum in support of the instant motion to dismiss. (Rec. Doc. 210-2, p. 5).

injury (under Alabama, Mississippi, Texas, and Louisiana law); (b) breach of implied warranty of merchantability for property damage (under Alabama, Mississippi, and Texas law); and (c) breach of implied warranty for fitness for a particular purpose for property damage and personal injury (under Alabama, Mississippi, and Texas law).

At the threshold, the Court turns to a few issues that apply generally to all of Plaintiffs' breach of warranty claims.  First, as for the Alabama plaintiffs, the Manufacturing Defendants assert that as a matter of law, Plaintiffs' claims for breach of warranty, whether express or implied, fail to state a claim upon which relief may be granted for property damage because Plaintiffs lack standing, which is required under Alabama law.  In support of this assertion, the Manufacturing Defendants note that Alabama law limits recovery for economic damages under breach of warranty to those who are "buyers"[5] or "purchasers."  Essentially, the Manufacturing Defendants argue that Plaintiffs cannot recover for damages resulting from any alleged breach of warranty because Plaintiffs were not "buyers."

The Manufacturing Defendants cite *Barre v. Gulf Shores Turf Supply, Inc.*, 547 So.2d 503, 504 (Ala. 1989), for the proposition that the Alabama Plaintiffs cannot recover for breach of warranty, whether express or implied, because the Manufacturing Defendants did not sell the subject homes directly to Plaintiffs who, therefore, lack privity of contract with the them. Instead, Defendants note that the Federal Emergency Management Agency ("FEMA") provided the emergency housing units ("EHUs") to Plaintiffs. In other words, the Manufacturing Defendants and Plaintiffs did not enter into a contractual relationship pertaining to the EHUs.  If Plaintiffs had any "contractual relationship," it was with FEMA. (Rec. Doc. 109, ¶ 100).

---

[5]     A "buyer" is defined as a person who "buys or contracts to buy goods." Ala. Code § 7-2-103

In response to the arguments that Plaintiffs lack standing and are not in privity of contract with Defendants, Plaintiffs note that Alabama Code Section § 7-2-318 states:

> A sellers' warranty, whether express or implied, extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Plaintiffs admit that in cases of pure economic loss, a plaintiff cannot recover on a breach of warranty theory where there is no privity of contract, but claim that, here, recovery is possible because personal injury is also alleged.[6]  See *Rampey v. Novartis Consumer Health, Inc.*, 867 So.2d 1079 (Ala. 2003); *Land v. Huffman Mfg. Co.*, 420 F.Supp. 459 (M.D.Ala.1976).  Indeed, Plaintiffs note that they have alleged more than mere economic injury.  Because Plaintiffs have not yet had a chance to prove such injuries, they claim that it would be premature to dismiss on this basis.

In response to this argument, the Manufacturing Defendants assert that Plaintiffs have not met the *Twombly* standard for pleading personal injury. By relying on the allegation that "plaintiffs have suffered and will continue to suffer damages . . . for past and future physical pain and mental suffering . . . medical expenses . . . physical impairments and disability," Defendants argue that Plaintiffs have asserted just the sort of "bare averment" of labels and conclusions rejected by the Supreme Court in *Twombly*.  Defendants note that the AMC fails to allege a single actual injury caused to any named plaintiff.

This Court concludes that, under the *Twombly* standard and in consideration of all facts pled in the AMC and amended AMC, Plaintiffs have indeed pled sufficient allegations regarding

---

[6]      "Plaintiffs have suffered and will continue to suffer damages… for past and future physical pain and mental suffering…medical expenses…physical impairments and disability..." (Rec. Doc. 109, ¶ 153).

personal injury[7] to survive a motion to dismiss alleging lack of privity of contract.  In other words, the factual allegations pled regarding personal injury or injuries are enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the AMC and amended AMC are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965.

It should also be noted that the degree of required specificity depends on the type of claim at issue.  Here, the Court is faced with this MDL, which involves many named plaintiffs and proposed class members.  Plaintiffs have alleged that they have suffered physical injuries - albeit in general terms.  Plaintiffs admit that, at this stage, they have not set forth the full extent of the injuries that each of them has suffered individually as a result of their exposure to formaldehyde. However, the Court notes that the Manufacturing Defendants will be allowed to conduct discovery to gain more knowledge in this area. Indeed, Plaintiffs have already begun the process of completing a Court-approved Plaintiff Fact Sheet ("PFS") for each plaintiff to provide further specific information as to the alleged injuries and symptoms suffered by each individual, among other things.

Second, as for the Mississippi Plaintiffs (and similar to the Alabama Plaintiffs), the

---

[7]        For instance, the following references to personal injury can be found throughout the entire AMC: Paragraph 143 of the AMC references "damages and injuries sustained by plaintiffs"; paragraph 153 references "the damages plaintiffs suffered from exposure to formaldehyde"; paragraph 154 provides that "Plaintiffs... have experienced and continue to experience severe mental pain, anguish and suffering directly attributable to the occurrence made the basis of this lawsuit and directly attributable to their injuries and the harm they have sustained"; paragraph 164 references "damages and injuries sustained by plaintiffs"; paragraph 175 provides that "plaintiffs have suffered and will continue to suffer damages  ... for past and future physical pain and mental suffering, past and future reasonable and necessary medical expenses, past and future physical impairments and disability, past and future loss of earning capacity, and past and future loss of enjoyment and quality of life and other damages and injuries as set forth above, including the damages plaintiffs suffered from exposure to formaldehyde, a carcinogenic material"; paragraph 176 states, "Plaintiffs ... have experienced and continue to experience severe mental pain, anguish and suffering directly attributable to the occurrence made the basis of this lawsuit and directly attributable to their injuries and the harm they have sustained"; paragraph 197(h) states that "such fumes caused health problems." (Rec. Doc. 109). Further, the AMC also states that Defendants are responsible for "past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability..."  (Rec. Doc. 109, p.74).

8

Manufacturing Defendants claim that Plaintiffs lack standing to recover for breach of warranty for property damage because Plaintiffs are not "purchasers" or "buyers."  The Uniform Commercial Code ("UCC"), as adopted in Mississippi, requires a "buyer" or "purchaser" and assumes a "contract for sale" and "sale" for breach of warranty claims. See Miss. Code Ann. §§ 75-2-101, et seq.  The Manufacturing Defendants argue that only a "buyer" may sue to recover economic damages for breach of warranty, based on the UCC's definitions of express and implied warranties (to be discussed further herein), which include numerous references to the "buyer," the "bargain," and the "contract for sale." See Miss. Code Ann. §§ 75-2-313, 314, and 315. Defendants further note that Plaintiffs did not purchase their EHUs from the Manufacturing Defendants and, thus, have no standing to sue the Manufacturing Defendants for breach of warranty for property damage. They note that it was FEMA that provided the subject EHUs to Plaintiffs. (Rec. Doc. 109, ¶22).  Thus, the Manufacturing Defendants contend that Plaintiffs have no property right in the allegedly damaged property and, therefore, have no valid claim for property damage.

In response to the argument that Plaintiffs are not "buyers" under Mississippi Code Section 75-2-103[8] and that there is no contractual privity between Defendants and them, Plaintiffs argue that Mississippi warranty law does not limit recovery to persons in privity or to direct "buyers."  Indeed, Plaintiffs note that Mississippi law has eliminated the necessity of contractual privity in all actions, including actions for breach of warranty actions.  Plaintiffs assert that this principle applies both to cases wherein the end-user actually purchased the

---

[8] "'Buyer' means a person who buys or contracts to buy goods." Miss Code Ann. § 75-2-103.

product at issue, and to cases wherein the end-user has not made any purchase at all. See *Hargett*

*v. Midas Intern. Corp.*, 508 So.2d 663 (Miss. 1987); *Hicks v. Thomas*, 516 So.2d 1344

(Miss.1987). Similar to the Alabama Code, the Mississippi Code provides:

> A seller's warranty whether express or implied extends to any natural
> person who is in the family or household of his buyer or who is a guest in
> his home if it is reasonable to expect that such person may use, consume
> or be affected by the goods and who is injured in person by breach of the
> warranty. A seller may not exclude or limit the operation of this section.

Miss. Code Ann. § 75-2-318.  Further, the Mississippi Code also provides:

> In all causes of action for personal injury or property damage or economic
> loss brought on account of negligence, strict liability or breach of
> warranty, including actions brought under the provisions of the Uniform
> Commercial Code, privity shall not be a requirement to maintain said
> action.

Miss. Code Ann. § 11-7-20.  The Mississippi Supreme Court has indeed confirmed that the

above statute removes the privity requirement in all cases.  *Keyes v. Guy Bailey Homes, Inc.*, 439

So.2d 670  (Miss. 1983).  Thus, Plaintiffs survive any motion to dismiss alleging lack of privity

of contract as a basis for dismissal.

Third, similar to both Alabama and Mississippi law, Texas has adopted the UCC's

definitions for breach of warranty. See Tex. Bus. & Com. Code § 2.101, et seq.  For example, an

implied warranty of merchantability is a warranty that goods are merchantable that is implied in

a "contract for sale." Tex. Bus. & Com. Code § 2.314.  A party breaches an implied warranty for

fitness where the seller knows that the "buyer" is relying on the seller's skill or judgment. Tex.

Bus. & Com. Code § 2.315. In fact, Texas courts have held that "the UCC does not confer

blanket authority to sue for breach of warranty . . . only a 'buyer' may sue to recover economic

damages for non-conformities of tender, including breaches of warranties." *DaimlerChrysler*

*Corp. v. Inman*, 121 S.W.3d 862, 882 (Tex. Ct. App. 2003), *rev'd on other grounds*, 51 Tex. Sup.

Ct. J. 422 (Tex. 2008). Thus, the Manufacturing Defendants argue that Plaintiffs cannot recover

damages for alleged breach of warranties of EHUs when Plaintiffs have never had a recognized

property interest in them.

Plaintiffs respond by noting that Texas' UCC § 2-318 is neutral on the question of

third-party beneficiaries of warranties and the need for contractual privity in order to recover.

See Tex. Bus. & Com. Code § 2.318.  That section specifically provides:

> This chapter does not provide whether anyone other than a buyer may take
> advantage of an express or implied warranty of quality made to the buyer
> or whether the buyer or anyone entitled to take advantage of a warranty
> made to the buyer may sue a third party other than the immediate seller for
> deficiencies in the quality of the goods. These matters are left to the courts
> for their determination.

Tex. Bus. & Com. Code § 2.318.[9]  Plaintiffs further state that Texas law recognizes the right of a

non-buyer third party to sue under breach of warranty claims. See *Garcia v. Texas Instruments,*

*Inc.*, 610 S.W.2d 456 (Tex. 1980).

In reference to who may sue for breach of warranty, the Texas Supreme Court recently

explained:

> Unlike most other states, Texas adopted the UCC without choosing any
> of its three options concerning who may sue on warranties; instead, the
> Legislature expressly delegated that choice to the courts. Pursuant to that
> mandate, in [*Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77
> (Tex. 1977)], we held a downstream purchaser of a mobile home could
> bring implied warranty claims directly against a remote manufacturer,
> even though there was no privity of contract between them. While it
> appears we have never addressed the same issue regarding express
> warranties, several lower courts have applied the same rule in that
> context-express warranties pass with the goods.

---

[9]      Notably, this statute differs from similar laws in Mississippi and Alabama law relating to third
party beneficiaries of warranties and the need for privity of contract.

*PPG Industries, Inc. V. JMB/Houston Centers Partners*, 146 S.W.3d 79, 88 (Tex. 2004). Thus, at least with regard to implied warranties, the Texas Supreme Court has confirmed that privity of contract is not required.

Next, the Court will address Plaintiffs specific claims for breach of warranty.

> **(a)     Plaintiffs' Claims Sounding in Breach of Express Warranty for Property Damage and Personal Injury:**

> **(i)     Under Alabama Law**

The Alabama Code explains how express warranties by a seller are created:

> (1) Express warranties by the seller are created as follows:

>> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

>> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

>> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

>> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Ala. Code § 7-2-313. Pertinent to this specific claim, the Manufacturing Defendants allege that the Alabama Plaintiffs cannot recover for breach of express warranty, whether for personal

injury or property damage, because there is no allegation that they made any affirmation or promise to Plaintiffs. Under Alabama law, a plaintiff cannot recover for an alleged breach of express warranty unless the plaintiff can demonstrate that there was an affirmation or promise made by the defendant upon which the plaintiff relied in purchasing the product. See *Ex Parte Gen. Motors Corp.*, 769 So. 2d 903, 907-10 (Ala. 1999).  Defendants note that there is no allegation in the AMC that Plaintiffs ever had any choice in determining the manufactured home in which they temporarily resided. Instead, Plaintiffs utilized  whatever temporary housing that was afforded to them by FEMA. Accordingly, the Manufacturing Defendants argue that Plaintiffs cannot recover for any damage arising from a breach of express warranty as a matter of Alabama law.

In response, Plaintiffs allege that Defendants' reliance on *Ex Parte General Motors Corp.* ("*General Motors*") is misplaced. First, Plaintiffs note that *General Motors* involved a summary judgment motion, not a motion to dismiss at the pleadings stage for failure to state a claim. Indeed, in granting the summary judgment motion, the Court observed that nothing in the discovery record supported evidence of a warranty. Thus, Plaintiffs' assert that the current lack of evidence of reliance is premature for 12(b)(6) motion practice.  Plaintiffs admit that there was no "sale" between FEMA and the Plaintiffs. Plaintiffs also note that according to Alabama Code Section § 7-2-318, statements that form the basis of an express warranty do not have to be communicated directly from the seller to the injured end-user. See *Bishop v. Faroy Sales*, 336 So.2d 1340, 1343 (Ala.1976)**.**

Contrary to the assertions of the Manufacturing Defendants, Plaintiffs have alleged that

there was no conformity with "express factual representations."  (See Rec. Doc. 109, ¶ 173).

Regardless of whether Plaintiffs are considered the end-users of the EHUs or third party

beneficiaries, this Court concludes that, under the *Twombly* standard and in consideration of all

facts pled in the AMC and amended AMC, Plaintiffs have indeed pled sufficient allegations

regarding express factual representations to survive a motion to dismiss.  This Court finds that

Plaintiffs should be afforded an opportunity to prove the existence of such express factual

representations.  If discovery reveals no evidence of such representations, then this issue might

be revisited via a properly supported dispositive motion.  However, dismissal at this juncture is

inappropriate.

### (ii)    Under Mississippi Law

Section 303 of the UCC, as adopted in Mississippi, states that an express warranty is an

affirmation made by the seller to the "buyer." Miss. Code Ann. § 75-2-313.[10]  The

---

[10]    The Mississippi Code explains how express warranties by a seller are created:

> 1) Express warranties by the seller are created as follows:
>
> > (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> >
> > (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> >
> > (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods

14

Manufacturing Defendants allege that the Mississippi Plaintiffs cannot recover for breach of express warranty because Defendants did not make any affirmations upon which Plaintiffs relied. The Manufacturing Defendants assert that Mississippi courts have routinely dismissed claims for breach of express warranty where the plaintiffs could not prove that they relied on the alleged express affirmation or promise when purchasing the subject product. *Austin v. Will-Burt Co.*, 232 F.Supp.2d 682 (N.D.Miss. 2002). Even though the Manufacturing Defendants acknowledge that Plaintiffs allege that there were "express factual representations upon which the claimant[s] justifiably relied," (Rec. Doc. 109, ¶ 151), they claim that this bare recitation of the elements fails the plausibility standard for showing that a plaintiff is entitled to relief as laid out in *Twombly.*

In response, Plaintiffs claim that Defendants' reliance on the *Austin* case for the proposition that Mississippi courts dismiss claims for breach of express warranty "where the plaintiffs could not prove that the plaintiffs relied on the alleged express affirmation or promise" of the seller in purchasing the goods, is misguided. Plaintiffs note that in *Austin*, the Court determined that no express warranty existed between the manufacturer of a telescoping mast and a television news van worker who was killed when the mast came into contact with power lines. However, here, Plaintiffs contend that summary judgment standards do not apply as they have

---

or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Miss. Code Ann. § 75-2-313.

not yet had the opportunity through discovery to "prove" anything.  In other words, Plaintiffs claim that this argument is premature.

Further, Plaintiffs complain that, under Mississippi case law, it is unnecessary for affirmations to be communicated directly to the buyer by the seller to induce a purchase. See *Forbes v. General Motors Corp.*, 935 So.2d 869, 875 (Miss. 2006).  In response, the Manufacturing Defendants assert that the *Forbes* case is inapplicable.  The *Forbes* case involved an allegation of breach of an express warranty in an owner's manual, which was relayed to the purchaser of a vehicle by the salesman. *Forbes*, 935 So. 2d at 875.  Here, Plaintiffs allege, with much less specification, that there were "express factual representations upon which the claimant justifiably relied," (Rec. Doc. 109, ¶ 151).  Defendants claim this is merely a "bare, formulaic recitation" that  fails the plausibility standard for showing that a plaintiff is entitled to relief as set forth in *Twombly*.

The Court disagrees with the Manufacturing Defendants. Plaintiffs have alleged that there was nonconformity with certain "express factual representations."  (See Rec. Doc. 109, ¶ 151).  Regardless of whether Plaintiffs are considered third party beneficiaries, this Court concludes that, under the *Twombly* standard and in consideration of all facts pled in the AMC and amended AMC, Plaintiffs have indeed pled sufficient allegations regarding express factual representations to survive a motion to dismiss.  In other words, this Court finds that the factual allegations pled regarding the alleged express factual representations are enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the AMC and amended AMC  are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965.  The Court

16

further finds that Plaintiffs should be afforded an opportunity to demonstrate not only the existence of such express factual representations, but reliance on such representations.  If discovery reveals no evidence of such representations, then this issue could be raised in a dispositive motion.  However, the Court finds that, at this juncture, dismissal of the Mississippi Plaintiffs' claims for breach of express warranty is unfounded.

### (iii)    Under Texas Law

While the Manufacturing Defendants note that Plaintiffs did not specifically claim breach of express warranty under Texas law in the AMC, they argue that if it was Plaintiffs' intent to make such a claim, they cannot recover. Texas defines an express warranty as "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes a basis for the bargain." Tex. Bus. & Com. Code Ann. § 2.313.[11] Texas courts have held that the "basis

---

[11]    Similar to the Mississippi and Alabama Codes, the Texas Business and Commercial Code states the following regarding express warranties:

> (a) Express warranties by the seller are created as follows:
>
> > (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> >
> > (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> >
> > (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (b) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

for the bargain" injects a requirement of reliance into express warranty claims. *PPG Indus. Inc.*, 146 S.W.3d at 99 (Tex. 2004). Here, Plaintiffs do not allege that any statements made by the Manufacturing Defendants became a "basis for the bargain" because there was never any contract for the sale of the EHUs from the Manufacturing Defendants to Plaintiffs. Thus, Plaintiffs cannot and do not allege that the Manufacturing Defendants made any representations to them upon which they relied in the course of contracting for the sale of the EHUs. Thus, the Manufacturing Defendants contend that Plaintiffs' claims for breach of express warranty must be dismissed as a matter of Texas law.

In opposition, Plaintiffs note that Texas' UCC § 2-318 is neutral on the question of third-party beneficiaries of warranties as well as the need for contractual privity in order to recover, pointing instead to case law for a determination. See Tex. Bus. & Com.Code § 2.318. Texas case law, in turn, provides that with regard to express warranties, the affirmation of fact or promise made by the seller to the "buyer" that serves as the "basis of the bargain" does not necessarily have to be made directly from the seller. See *PPG Industries*,146 S.W.3d at 88.

Here, most importantly, the Texas Plaintiffs do not allege in the AMC or amended AMC a claim for breach of an express warranty.  Further, Plaintiffs do not allege that any statements made by the Manufacturing Defendants were a "basis for the bargain." As Defendants point out, this is likely because there was never any contract for the sale of the EHUs from the Manufacturing Defendants to Plaintiffs. Last, the AMC and amended AMC fail to allege that the

Tex. Bus. & Com. Code 2.313.

Manufacturing Defendants made any affirmations or promises to Plaintiffs in the course of contracting for the sale of the EHUs. The Court notes that Plaintiffs had ample opportunity to amend the AMC and amended AMC, even after reviewing the original motion to dismiss filed by Defendants.  Yet, they failed to sufficiently plead such a claim.  Thus, the Texas Plaintiffs' claims for breach of express warranty, assuming Plaintiffs intended to make such claims, are hereby dismissed.

**(iv)     Under Louisiana Law**

The Manufacturing Defendants note that Plaintiffs assert claims under the Louisiana Products Liability Act ("LPLA") for breach of express warranty (Rec. Doc. 109, ¶138(i)), but do not state that they relied upon that warranty in deciding to use the EHUs. To present a claim for a breach of an express warranty under the LPLA, a plaintiff must show that "the plaintiff was induced to use the product because of [the express] warranty. *Caboni v. General Motors Corp.*, 278 F.3d 448, 453-55 (5th Cir. 2002); see also La.Rev.Stat. Ann. § 9:2800.58 (manufacturer is potentially liable only "if the express warranty has induced the claimant or another person or entity to use the product"). The Manufacturing Defendants contend that without allegations that Plaintiffs were induced to use the trailers because they relied upon the express warranty, Plaintiffs have failed to state a claim for breach of this warranty under Louisiana law.

In opposition, Plaintiffs contend that they have alleged sufficient facts in their AMC to support a claim under the LPLA. Under the LPLA, Plaintiffs must prove: (1) that the

product possesses an "unreasonably dangerous"[12] characteristic; (2) that this unreasonably

dangerous characteristic proximately caused Plaintiffs' damages; and (3) that injury arose from a

"reasonably anticipated use" of the product.  In that respect, Plaintiffs assert that the AMC

alleges that Defendants manufactured unreasonably dangerous EHUs that emit unlawful and

harmful levels of formaldehyde; that these dangerous levels of formaldehyde have caused or are

causing them to suffer injuries; and that they are using the EHUs as their residences. While

Defendants assert that because Plaintiffs have not shown that they were induced to use the

product because of the express warranty, their claim should be dismissed, Plaintiffs point to the

*Caboni* case wherein the Court determined that whether Plaintiff relied on statements that could

constitute an express warranty was a genuine issue of material fact that went beyond the

pleadings and was inappropriate for summary judgment disposal. Explaining that neither

Plaintiffs nor Defendants have yet had the opportunity to prove anything, Plaintiffs assert that

dismissal at this stage of the proceedings would be premature.

Further, Plaintiffs note that Louisiana law does not require that an end-user have directly

relied on the affirmations as it allows those not in privity to recover under warranty claims.  See

*Aucoin v. Southern Quality Homes*, LLC, 984 So.2d 685,  (La. 2008).  Plaintiffs note that the

AMC alleges that the EHUs did not conform to the express warranties made by the

Manufacturing Defendants. (Rec. Doc. 109, ¶ 138(d)).  Thus, Plaintiffs contend that the

---

[12]        A product is unreasonably dangerous if: (1) the product is unreasonably dangerous in construction
or composition; (2) the product is unreasonably dangerous in design; (3) the product is unreasonably dangerous
because an adequate warning about the product has not been provided; or (4) the product is unreasonably dangerous
because it does not conform to an express warranty of the manufacturer about the product. La. Rev. Stat. Ann. §
9:2800.54.

allegations in the AMC are sufficient to meet the liberal pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure.

In response, Defendants assert that Plaintiffs' mere averment that there were "express factual representations upon which the claimant justifiably relied" (Rec. Doc. 109, ¶151) fails the *Twombly* standard.  This Court agrees with Defendants.

A plaintiff must show that he was induced to use a product because of an express warranty to present a claim for a breach of an express warranty under the LPLA.  *Caboni*, 278 F.3d at 453-55.  Further La.Rev.Stat. Ann. § 9:2800.58 provides that a manufacturer is potentially liable only "if the express warranty has induced the claimant or another person or entity to use the product."   While Plaintiffs do assert claims under the LPLA for breach of express warranty (Rec. Doc. 109, ¶138(i)), the AMC and amended AMC fail to state that Plaintiffs relied upon that warranty in deciding to use the EHUs.  The Court notes that Plaintiffs had ample opportunity to amend the AMC and amended AMC, even after reviewing the original motion to dismiss filed by Defendants.  Yet, they failed to sufficiently plead this claim.  Thus, the Louisiana Plaintiffs' claims for breach of express warranty under the LPLA are hereby dismissed.

> **(b)** **Plaintiffs' Claims Sounding in Breach of Implied Warranty of Merchantability for Property Damage:**

> **(i)** **Under Alabama Law**

The Alabama Code explains the following regarding the implied warranty of merchantability:

> Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

Ala. Code § 7-2-314. The Manufacturing Defendants assert that as a matter of law, Alabama Plaintiffs' claims for breach of implied warranty fail to state a claim upon which relief may be granted for property damage because Plaintiffs lack standing, as required under Alabama law. Specifically, the Manufacturing Defendants argue that Alabama law limits recovery for economic damages under breach of warranty to those who are "buyers" or "purchasers," and Plaintiffs were not "buyers."   Also, the Manufacturing Defendants assert that Alabama Plaintiffs cannot recover for breach of implied warranty because the Manufacturing Defendants did not sell the subject homes directly to Plaintiffs, and, therefore, the Alabama Plaintiffs are not in privity of contract with Manufacturing Defendants.

However, as noted earlier, while in cases of purely economic loss, a plaintiff cannot recover on a breach of warranty theory where there is no privity of contract, such is not the case when, as here, recovery is possible because personal injury is also alleged.[13]  See *Rampey*, 867 So.2d 1079; *Land*, 420 F.Supp. 459.  This Court will afford Plaintiffs the opportunity to disclose their proof of such injuries.  If discovery reveals no evidence of such injuries, then this issue may be raised in a dispositive motion based upon such discovery materials.  Defendants' motion to dismiss these claims is denied.

### (ii)   Under Mississippi Law

---

[13]      "Plaintiffs have suffered and will continue to suffer damages… for past and future physical pain and mental suffering…medical expenses…physical impairments and disability..." (Rec. Doc. 109, ¶ 153).

Section 314 of the UCC, as adopted in Mississippi, states that an implied warranty of merchantability is a warranty that goods are merchantable as implied in a contract for "sale." Miss. Code Ann. § 75-2-314.[14]   Again, the Manufacturing Defendants assert that Plaintiffs lack standing to recover for breach of warranty for property damage because Plaintiffs are not "purchasers" or "buyers."   Specifically, Section 314 states that an implied warranty of merchantability is a warranty that goods are merchantable as implied in a contract for "sale." Miss. Code Ann. § 75-2-314.   Thus, it follows that Plaintiffs who did not participate in a "sale" have no cause of action for breach of warranty of merchantability.

Also, as noted earlier, in response to these arguments, Plaintiffs assert that Mississippi warranty law does not limit recovery to persons in privity or to direct "buyers."  Indeed, Plaintiffs note that Mississippi Code Section 11-7-20 has eliminated the necessity of contractual privity in all actions, including actions for breach of warranty actions.  Plaintiffs also assert that this principle applies to cases wherein the end-user has not made any purchase at all. See *Hargett*, 508 So.2d 663 (Miss. 1987); *Hicks*, 516 So.2d 1344 (Miss.1987).

While the Manufacturing Defendants concede that privity is not a necessary element of a warranty claim, pursuant to Mississippi Code Section 11-7-20, they assert that this does not mean that a plaintiff can bring a claim if she is not a purchaser. The Manufacturing Defendants

---

[14]     The Mississippi Code explains that following regarding the implied warranty of merchantability:

> Except as provided in subsection (5), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

Miss. Code Ann § 75-2-314.

note that while the abolishment of privity gives the end purchaser greater leeway to pursue the

proper manufacturer, the plaintiff must still be a purchaser. See Miss. Code Ann. § 75-2-314. As

stated in Defendants' original motion, an implied warranty of merchantability is only implied in

"a contract of sale." *Id.*

However, the Mississippi Supreme Court has confirmed and the parties concede that

Mississippi law (specifically, Miss. Code. Ann. § 11-7-20) provides a right to recovery for a

plaintiff  on a breach of warranty theory even where there is no privity of contract.  *Keyes*, 439

So.2d 670.  However, according to Mississippi Code article 75-2-314, a contract of sale is

required. Unlike Alabama Code Section § 7-2-318 which states that "[a] sellers' warranty,

whether express or implied, extends to *any natural person if it is reasonable to expect that such*

*person may use, consume or be affected by the goods and who is injured in person by breach of*

*the warranty*" (See Ala. Code. § 7-2-318, emphasis added), Mississippi Code Section § 75-2-318

is more specific as to who third party beneficiaries may be.  The Mississippi Code states that "[a]

seller's warranty whether express or implied extends to *any natural person who is in the family*

*or household of his buyer or who is a guest in his home if it is reasonable to expect that such*

*person may use, consume or be affected by the goods and who is injured in person by breach of*

*the warranty*." (Miss. Code Ann. § 75-2-318, emphasis added). While it is somewhat easier to

find that EHU recipients could be considered people who "may use, consume or be affected by

the goods and who [are] injured in person by breach of the warranty" (consistent with the

Alabama Code), this Court is unwilling, at this juncture, to find that EHU recipients could not be

considered people who are "guests" in the EHUs who "may use, consume or be affected by the

24

goods and who [are] injured in person by breach of the warranty" (consistent with the Mississippi Code).  The government contracted with the Manufacturing Defendants to procure housing for Plaintiffs.  Whether Plaintiffs can be considered the beneficiaries of any implied warranty of merchantability as "guest" in the subject EHUs is at least arguable at this point. Thus, the Court denies Defendants' motion to dismiss these claims.

### (iii)    Under Texas Law

An implied warranty of merchantability is a warranty that goods are merchantable that is implied in a "contract for sale." Tex. Bus. & Com. Code § 2.314.[15] Thus, the Manufacturing Defendants assert that Plaintiffs cannot recover damages for alleged breach of warranty of merchantability of the EHUs when Plaintiffs have never had a recognized property interest in them.

Plaintiffs argue that Texas' UCC § 2-318 is neutral on the question of third-party beneficiaries of warranties as well as the need for contractual privity in order to recover, pointing instead to case law for a determination. See Tex. Bus. & Com.Code § 2.318. In *Nobility Homes*, the manufacturer of mobile home was responsible, without regard to privity, for economic loss which resulted to remote purchaser of mobile home from manufacturer's breach of implied warranty of merchantability under § 2.314.  557 S.W.2d 77.

---

[15]     The Texas Business and Commercial Code states:

> Unless excluded or modified (Section 2.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

Tex. Bus. & Com. Code § 2.314.

As Plaintiffs note and as the undersigned previously explained, the Texas Supreme Court, in the *Nobility Homes* decision, concluded that a downstream purchaser of a mobile home could bring implied warranty claims directly against a remote manufacturer, even though there was no privity of contract between them. Thus, in response to the Texas legislature's mandate that jurisprudence determine whether anyone other than a buyer may take advantage of an implied warranty made to a buyer (see Tex. Bus. & Com. Code § 2.318), the Texas Supreme Court has ruled that, in regard to implied warranties, no privity of contract is required.

Further, Plaintiffs note that in the *Garcia* case, an employee of a buyer of sulfuric acid brought suit to recover against the seller for acid burns sustained by him when the container of acid broke. *Garcia*, 610 S.W.2d at 457. The *Garcia* Court held that the absence of contractual privity did not preclude the employee from maintaining a cause of action against the seller for personal injuries resulting from the breach of implied warranty.

The Manufacturing Defendants assert that Plaintiffs have not met the applicable pleading standard under *Twombly* in alleging personal injuries. However, for the reasons set forth previously in this opinion, this Court finds that Plaintiffs have made sufficient allegations regarding personal injuries. Defendants' motion to dismiss the Texas Plaintiffs' claims for breach of the implied warranty is denied.

      **(c)**     **Plaintiffs' Claims Sounding in Breach of Implied Warranty for Fitness for a Particular Purpose for Property Damage and Personal Injury:**

            **(i)**     **Under Alabama Law**

Noting that Plaintiffs have not specifically pled a cause of action for breach of implied

warranty of fitness, the Manufacturing Defendants state that Plaintiffs nonetheless allege strict

product liability on the basis of breach of any implied or express warranties. (Rec. Doc. 109, ¶¶

161, 173). To the extent Plaintiffs allege or intend to allege breach of the implied warranty of

fitness, the Manufacturing Defendants contend that this claim is barred. Alabama law provides:

> Where the seller at the time of contracting has reason to know any
> particular purpose for which the goods are required and that the buyer is
> relying on the seller's skill or judgment to select or furnish suitable goods,
> there is . . . an implied warranty that the goods shall be fit for such
> purpose.

Ala. Code § 7-2-315.  According to this statement of law, the Manufacturing Defendants allege

that a claim for warranty for fitness for a particular purpose does not apply where a plaintiff does

not know he is purchasing the defendant's product because, under such a circumstance, the

plaintiff could not have relied on the skill or knowledge of the defendant in selecting the product.

*General Motors*, 769 So.2d at 911. Here, Plaintiffs do not allege that they relied on the

Manufacturing Defendants' skill or knowledge in selecting their EHUs. Further, they do not

claim that they were involved in the selection of their EHUs. Accordingly, the Manufacturing

Defendants argue that Plaintiffs cannot recover for breach of implied warranty for fitness as a

matter of Alabama law.

　　　　In response, Plaintiffs argue that to contend that Plaintiffs' failure to plead reliance on

Defendants' skill or judgment is fatal to their claims ignores the liberal notice pleading

requirements set forth in the Rule 8(a) of the Federal Rules of Civil Procedure. Plaintiffs also

note that Alabama case law holds that third party beneficiaries can satisfy the reliance element of

the implied warranty of fitness vicariously through the actual buyer of the goods at issue. See

*Chase v. Kawasaki Motors Corp.*, 140 F.Supp.2d 1280 (M.D.Ala.2001).

This Court notes that the implied warranty of fitness for a particular purpose is narrower, more specific, and more precise than the implied warranty of merchantability. *Id.* at 1289, citing James J. White & Robert S. Summers, Uniform Commercial Code: Practitioner Treatise Series § 9-10 (4th ed.1995). While Alabama case law allows third party beneficiaries (such as Plaintiffs claim to be) to satisfy the reliance element of the implied warranty of fitness vicariously through the actual buyer of the goods at issue,[16] the AMC and Amended AMC fail to allege that either the Plaintiffs or the government actually relied on the Manufacturing Defendants" particular skill or knowledge in selecting the EHUs. Such is a requirement for a breach of implied warranty of fitness claim under Alabama law. See Ala. Code § 7-2-315. The Court notes that Plaintiffs have had ample opportunity to amend the AMC and amended AMC to allege sufficient facts in this regard (even after having the opportunity to review Defendants' previously-filed motion to dismiss), but have not done so. Thus, Plaintiffs' breach of implied warranty of fitness claims are dismissed as to the Alabama plaintiffs.

### (ii)   Under Mississippi Law

According to Mississippi law, an implied warranty of fitness exists only where "the buyer is relying on the seller's skill or judgment to select or furnish suitable goods..." Miss Code Ann.

---

[16]   The Court also notes that, according to Alabama law, an injured third party beneficiary can have no more interest than the principle parties. Thus, because Plaintiffs have alleged that, at least in some instances, the Government set the specifications for the EHUs (See Rec. Doc. 109, ¶¶ 27, 28, and 29), then it could not have relied on the Manufacturing Defendants' skill or knowledge to select them. See *Shell v. Union Oil Co.*, 489 So.2d 569, 572 (Ala. 1986). In those instances, Plaintiffs, as the third party beneficiaries to the implied contract between the government and the Manufacturing Defendants, could not be successful in maintaining a claim for breach of an implied warranty of fitness under Alabama law.

§ 75-2-315.  Further, in Mississippi, the warranty of fitness for a particular purpose does not apply where a plaintiff does not have contact with the defendant when purchasing the product as, under those circumstances, the plaintiff could not have relied on the skill or knowledge of the defendant in picking the product. *Albritton v. Coleman Co.*, 813 F. Supp. 450, 455 (S.D. Miss. 1992).  Here, there is no allegation that any Plaintiff had contact with the Manufacturing Defendants during the "conveyance" by FEMA of the EHUs to Plaintiffs. Thus, the Manufacturing Defendants assert that Plaintiffs could not have relied on their representations, skill, or knowledge and, accordingly, cannot recover for breach of implied warranty of fitness under Mississippi law.

In response, Plaintiffs assert that as shown in *Cochran v. Rockwell Intern. Corp*., 564 F.Supp. 237 (D.C. Miss.1983), the reliance element for purposes of a breach of implied warranty can be implicit. Plaintiffs note that, here, it is clear that the federal government relied on the manufacturers' skill and judgment to provide a safe product in purchasing the EHUs to be used by plaintiffs. Thus, Plaintiffs claim that it is unnecessary to show that Defendants made any express affirmation, description, promise, or sample directly to Plaintiffs because, under Mississippi law, third-party beneficiaries who are not privy to the underlying contract still may recover under a warranty claim.

In further support of their motion to dismiss this claim, the Manufacturing Defendants note that while Plaintiffs claim that the reliance element required to state a claim for breach of implied warranty may be implicit, Plaintiffs do not cite to any allegation or any portion of the record that could be construed as an implicit allegation.

Similar to the situation with the Alabama plaintiffs, the AMC and amended AMC fail to allege that either the Plaintiffs (as the alleged third party beneficiaries[17]) or the government actually relied on the Manufacturing Defendants' skill or knowledge in selecting the EHUs. Such is a requirement for a breach of implied warranty of fitness claim under Mississippi law. See Miss. Code § 75-2-315.  The Court notes that Plaintiffs have had ample opportunity to amend the AMC and amended AMC to allege sufficient facts in this regard (even after having the opportunity to review Defendants' previously-filed motion to dismiss), but have not done so. Thus, Plaintiffs' breach of implied warranty of fitness claims are dismissed as to the Mississippi plaintiffs.

### (iii)   Under Texas Law

Texas law provides that a party breaches an implied warranty for fitness where the seller knows that the "buyer" is relying on the seller's skill or judgment. Tex. Bus. & Com. Code §

---

[17]    The Court also notes, as it did on reference to Alabama law in footnote 16, that according to comment 2 of Mississippi Code section § 75-2-315:

> The provisions of this Article on the cumulation and conflict of express and implied warranties must be considered on the question of inconsistency between or among warranties. In such a case any question of fact as to which warranty was intended by the parties to apply must be resolved in favor of the warranty of fitness for particular purpose as against all other warranties *except where the buyer has taken upon himself the responsibility of furnishing the technical specifications.*

Because Plaintiffs have alleged that, at least in some instances, the Government set the specifications for the EHUs (See Rec. Doc. 109, ¶¶ 27, 28, and 29), then, in those instances, the Government could not have relied on the Manufacturing Defendants' skill or knowledge to select them.  Thus, Plaintiffs, as the third party beneficiaries to such an implied contract between the government and the Manufacturing Defendants, could not be successful in maintaining a claim for breach of an implied warranty of fitness under Mississippi law.

2.315.[18]  Thus, the Manufacturing Defendants again allege that Plaintiffs cannot recover damages

for alleged breach of warranties for fitness of the EHUs when Plaintiffs have never had a

recognized property interest in them.  The Manufacturing Defendants further note that it is not

enough that a plaintiff claims to have relied on an intermediary rather than the named

defendants. *Harris Packaging Corp. v. Baker Concrete Constr.*, 982 S.W.2d 62, 67 (Tex. Ct.

App. 1998), overruled in part on other grounds by *Med. City Dallas, Ltd. v. Carlisle Corp.*, 51

Tex. Sup. Ct. J. 753 (Tex. 2008). They note that Texas courts have held that a plaintiff cannot

recover for breach of implied warranty for fitness, whether for property damage or personal

injury, unless the plaintiff can demonstrate that he relied on a representation or recommendation

by the defendant for selecting the subject product. See *Cook-Pizzi v. Van Waters & Rogers, Inc.*,

94 S.W.3d 636, 647-48 (Tex. App. 2002). The Manufacturing Defendants note that Plaintiffs do

not allege that they were even aware that the Manufacturing Defendants manufactured their units

at the time FEMA distributed the EHUs to them. Accordingly, the Manufacturing Defendants

argue that Plaintiffs' claims for breach of implied warranty for fitness must be dismissed under

Texas law.

In opposition, Plaintiffs assert, as noted earlier, that Texas' UCC § 2-318 is neutral on the

question of third-party beneficiaries of warranties as well as the need for contractual privity in

---

[18]     In Texas, the law on the implied warranty of fitness for a particular purpose provides:

Where the seller at the time of contracting has reason to know any particular
purpose for which the goods are required and that the buyer is relying on the
seller's skill or judgment to select or furnish suitable goods, there is unless
excluded or modified under the next section an implied warranty that the goods
shall be fit for such purpose.

Tex. Bus. & Com. Code § 2.315.

order to recover.  See Tex. Bus. & Com. Code § 2.318.[19]  Plaintiffs further note that Texas law

recognizes the right of a non-buyer third party to sue under breach of warranty claims. In *Garcia*,

the Texas Supreme Court determined that the absence of contractual privity did not preclude an

employee of the buyer of sulfuric acid from maintaining a cause of action against the seller for

personal injuries[20] resulting from the breach of implied warranty.

      While it is true that the Texas Supreme Court has ruled that, with regard to implied

warranties, no privity of contract is required (as explained, *supra*), the AMC and amended AMC

in this case fail to allege that either the Plaintiffs (as possible third party beneficiaries) or the

government actually relied on the Manufacturing Defendants' skill or knowledge in selecting the

EHUs.  Such is a requirement for a breach of implied warranty of fitness claim under Texas law.

See Tex. Bus. & Com. Code § 2.315.  The Court again notes that Plaintiffs have had ample

opportunity to amend the AMC and amended AMC to allege sufficient facts in this regard (even

after being afforded the benefit of seeing and reviewing the original motion to dismiss filed by

the Manufacturing Defendants), but have not done so.  Thus, Plaintiffs' breach of implied

warranty of fitness claims are dismissed as to the Texas plaintiffs.

---

[19]       Texas law provides:

> This chapter does not provide whether anyone other than a buyer may take
> advantage of an express or implied warranty of quality made to the buyer or
> whether the buyer or anyone entitled to take advantage of a warranty made to the
> buyer may sue a third party other than the immediate seller for deficiencies in
> the quality of the goods. These matters are left to the courts for their
> determination.

Tex. Bus. And Com. Code § 2.318.

[20]       The injuries were acid burns sustained by the employee when the container of acid broke.

2.      **The Effect of the Economic Loss Doctrine on Plaintiffs' claims**

As for all four states (Alabama, Mississippi, Texas, and Louisiana), the Manufacturing

Defendants argue that Plaintiffs lack standing to recover for economic losses for their alleged

property damage because Plaintiffs are not property owners.  Indeed, in most cases, the actual

owner of the EHU is the U.S. government, although some Plaintiffs or proposed class members

did buy their EHUs from the government.  However, the Manufacturing Defendants assert that

even if Plaintiffs could claim property damage to EHUs they did not own, they are barred from

recovery by the Economic Loss Doctrine.

The Economic Loss Doctrine first came into being in a California case, *Seely v. White*

*Motor Co.*, 63 Cal.2d 9, 403 P.2d 145 (Cal. 1965), wherein the California Supreme Court

explained:

> The law of sales has been carefully articulated to govern the economic
> relations between suppliers and consumers of goods. The history of the
> doctrine of strict liability and tort indicates that it was designed, not to
> undermine the warranty provisions of the Sales Act or the Uniform
> Commercial Code but, rather, to govern the distinct problem of physical
> injuries.

*Seely*, 403 P.2d at 149.  Later, the United States Supreme Court unanimously adopted *Seely*'s

holding in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct.

2295, 2302, 90 L.Ed.2d 865 (1986). In *East River*, the Supreme Court held that "a manufacturer

in a commercial relationship has no duty under either a negligence or strict products-liability

theory to prevent a product from injuring itself," and thus, no products-liability claim for

negligence or strict liability lies when the only injury claimed is economic loss.  *Id.* at 871. The

*East River* Court further reasoned, "[w]hen a product injures only itself the reasons for imposing

a tort duty are weak and those for leaving the party to its contractual remedies are strong." *Id.*  In other words, damage to a product sounds in a warranty claim; damage to a person based, for instance, on a product malfunctioning sounds in a products liability claim.

In opposition, Plaintiffs argue that both *Seely* and *East River* are distinguishable because neither case involved physical injuries or injuries to other property. Here, however, Plaintiffs are not seeking recovery merely for damages to the EHUs. Instead, Plaintiffs note that, in addition to the loss of adequate and safe housing, they suffered physical injuries from exposure to formaldehyde. Thus, Plaintiffs assert that their claims are not barred by the economic loss doctrine as the claims are not purely economical damages.

The Manufacturing Defendants further note that Plaintiffs' pleadings suggest they are seeking economic losses, such as the loss of a housing subsidy and, for any Plaintiffs who allegedly bought their units, Plaintiffs seek "return of the purchase price with interest from the time it was paid, the reimbursement of the reasonable expenses occasioned by the sale and those incurred by the preservation of the housing units, [and] expenses incurred through mitigation of damages[.]" (Rec. Doc. 109, p. 75).  The Manufacturing Defendants further claim that it is not only damages for injury to the product itself that are barred by the economic loss rule; it is *any* type of economic loss. Therefore, to the extent Plaintiffs seek to recover for any purported loss of a housing subsidy under negligence or strict liability tort law, such claims should be dismissed.

The Court will now address these claims as for the four states sub judice.

**(a)      Under Alabama Law**

The Alabama Supreme Court has adopted the Economic Loss Doctrine. *Lloyd Wood Coal Co. v. Clark Equipment Co.*, 543 So. 2d 671 (Ala. 1989) (affirming grant of summary judgment to defendant on plaintiff's negligence claim where the only damage was to the product itself). Further, the Alabama Supreme Court has recently noted that one cannot recover in tort for the negligent manufacture of a product where the only injury is to the product itself. *Bay Lines, Inc. v. Stoughton Trailers, Inc.*, 838 So. 2d 1013, 1019 (Ala. 2002).

The Manufacturing Defendants argue that because Plaintiffs fail to identify any present injury in the AMC, the only damages that Plaintiffs are claiming are economic damages incurred as a result of alleged damage to the EHUs themselves. Plaintiffs, in opposition, argue that the cases cited by the defense, *Lloyd Wood* and *Bay Lines*, are inapplicable because, unlike the instant case, the only damage claimed in those cases was to the product itself. Here, Plaintiffs do not allege damages only to the EHUs. They also assert that the high levels of formaldehyde also caused physical injuries. Thus, Plaintiffs contend that Alabama's economic loss doctrine does not bar their claims under negligence and strict liability.

As the Alabama Supreme Court has explained,

> "'The tort concern with safety is reduced when an injury is only to the product itself. When a person is injured, the "cost of an injury and the loss of time or health may be an overwhelming misfortune," and one the person is not prepared to meet. In contrast, when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service. Losses like these can be insured.

*Lloyd Wood,* 543 So.2d at 673 (internal citations omitted). In the *Bay Lines* case, the plaintiff claimed that defects in panels caused it to suffer a loss of its investment in the trailers and an

35

additional loss that resulted from the loss of the trailers, including having to purchase

replacement trailers and having to pay its customers for delayed shipping and damaged freight.

The Alabama Supreme Court explained:

> Those increased costs of doing business and customer displeasure are
> precisely the sorts of risks that can be considered before entering into a
> contract and that can be allocated in the contract. We should refrain from
> permitting tort actions when the basis for the claims should properly be
> dealt with between the parties under the law of contracts.

838 So.2d at 1020.  Thus, the Court determined that the trial court's dismissal of all the tort

claims asserted against Defendants for the economic losses claimed by the plaintiff was proper.

Here, as Plaintiffs point out, the AMC and amended AMC contain allegations that relate

to damages other than to the EHU products themselves.[21]  Thus, to the extent that Plaintiffs seek

damages in strict liability and negligence for economic losses, such claims are dismissed as they

are precluded by Alabama's application of the economic loss doctrine.  However, Plaintiffs may

proceed with their claims under negligence and strict liability that relate to injuries and damages

sustained by the plaintiffs themselves.

### (b)      Under Mississippi Law

The Economic Loss Doctrine has been discussed and applied by both Mississippi federal

courts and Mississippi state courts. In Mississippi, a plaintiff who suffers only economic loss as

a result of an allegedly defective product may not recover in strict liability or negligence, though

such damages may be pursued under a breach of warranty theory. *Progressive Ins. Co. v.*

*Monaco Coach Corp.*, 2006 WL 839520, at *8 (S.D. Miss. March 29, 2006)*; Lee v. General*

---

[21]       See notes 6 and 7, *supra*.

*Motors Corp.*, 950 F. Supp. 170, 172-73 (S.D. Miss. 1996); *State Farm Mutual Auto Ins. Co. v. Ford Motor Co.*, 736 So.2d 384, 387 (Miss. Ct. App. 1999).  The Manufacturing Defendants assert that no plaintiff named in the AMC has specifically identified any present injury and are claiming economic damages only.  For the same reasons explained in sub-section (a) of this section, this Court disagrees with Defendants' assessment.  Plaintiffs have, indeed, made allegations regarding injuries that have been sustained.  Accordingly, this Court finds to the extent that Plaintiffs seek damages in strict liability and negligence for economic losses, such claims are dismissed as they are precluded by Mississippi's application of the economic loss doctrine.  However, Plaintiffs may go forward with their claims under negligence and strict liability that relate to injuries and damages sustained by the plaintiffs themselves.

(c)      <b>Under Texas Law</b>

Similar to the states of Alabama and Mississippi, Texas has adopted the Economic Loss Doctrine. The doctrine applies when losses from an occurrence arise from the failure of a product and the damage or loss is limited to the product itself. The Texas Supreme Court established that pure economic losses, even if suffered as a result of negligence, are not recoverable. *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991). Similarly, for the reasons stated above, the Court finds the Manufacturing Defendants' argument that Plaintiffs have failed to identify any present injury in the AMC without merit. Again, Plaintiffs have made allegations regarding injuries that have been sustained.  Accordingly, this Court finds that, to the extent that Plaintiffs seek damages in strict liability and negligence for economic losses, such claims are dismissed as they are precluded by Texas's application of the

economic loss doctrine.  However, Plaintiffs may proceed with their claims under negligence and strict liability that relate to injuries and damages sustained by the plaintiffs themselves.

### (d)      Under Louisiana Law

The Manufacturing Defendants also assert that the Economic Loss Doctrine is applicable in Louisiana.  Defendants argue that because the Plaintiffs fail to identify any present injury in the AMC or amended AMC, the only damages that Plaintiffs are claiming are economic damages incurred as a result of alleged damage to the EHUs themselves, and this recovery is barred under Louisiana law.  In response, Plaintiffs note that because they did not enter into sales contracts with Defendants for EHUs, in most cases, any recovery for economic loss under Louisiana law would be provided under the LPLA, not under the laws regarding redhibition.  Plaintiffs argue that Defendants have no legal basis on which to suggest that claims under the LPLA are limited to either economic or non-economic damages. Instead, they assert that, according to the LPLA, both categories of recovery are available.

This Court agrees with Defendants that Louisiana products liability actions do not provide recovery for damage to the product itself. Comment (a) to Louisiana Civil Code article 3545 clearly explains:

> This Article applies to any injury caused by a product, *rather than to the product itself. The latter type of damage is likely to be characterized as contractual in nature and thus would be governed by the Title on conventional obligations...* This Article applies to any injury directly sustained by a person or his property, whether or not that person is the owner of the product, and whether or not he was using the product at the time of the injury.

See La C. C. Art. 3545 cmt (a). Further, Louisiana Revised Statute 2800.53(5) provides:

"Damage" means all damage caused by a product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1 and 2315.2 allow recovery. *"Damage" includes damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that Chapter 9 of Title VII of Book III of the Civil Code, entitled "Redhibition," does not allow recovery for such damage or economic loss.* Attorneys' fees are not recoverable under this Chapter.

La. R.S. § 9:2800.53(5).  Thus, the Court concludes that Plaintiffs are not entitled to economic damages under the LPLA if Louisiana's redhibition laws do not allow recovery for the claimed economic loss.  However, because it is presently unclear whether and to what extent redhibition would provide recovery for Plaintiffs' claims, the Court is unwilling to conclude that Plaintiffs have no remedy for economic loss damages in Louisiana. Defendants' request for dismissal is denied.

### 3.       Plaintiffs' Claims for Medical Monitoring

The Manufacturing Defendants argue that the laws of Louisiana, Alabama, Mississippi, and Texas dictate that a claim for medical monitoring cannot be sustained without a present manifestation of injury.  Here, Plaintiffs allege that their damages include "past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, [and] past and future reasonable and necessary medical expenses." (Rec. Doc. 109, p. 74). Plaintiffs also allege that the formaldehyde levels "have" caused the Plaintiffs to suffer damages; however, they do not state what injuries the formaldehyde allegedly caused any of the named plaintiffs. (Rec. Doc. 109,  ¶¶ 95, 153, 175).  While Defendants claim that these allegations are not sufficient to satisfy the pleading standard set forth in *Twombly*, Plaintiffs contest.  Plaintiffs note that Rule 12(b)(6) mandates that all of Plaintiffs' allegations

are to be taken as true, and all reasonable inferences are to be drawn in their favor. Plaintiffs

point out that the AMC charges Defendants with responsibility for:

> all damages which plaintiffs herein have suffered and continue to suffer,
> proximately caused by the defendants' acts or omissions as pled, which
> damages include, but are not limited to, past and future physical injuries,
> past and future mental and physical pain and suffering, past and future
> physical impairments and disability...

(Rec. Doc. 109, p. 74).  Plaintiffs assert that whether they can establish such present manifest

injuries, and what constitutes a manifest injury under the laws of the four states at issue, are

questions that cannot be resolved now in a motion to dismiss as these questions are highly

fact-sensitive.  For now, Plaintiffs argue that it is enough that they have alleged to "have

suffered... physical injury." (See Rec. Doc. 109, p. 74).

The Court will now analyze the viability of these claims under the laws of the four

applicable states.

### (a)      Under Alabama Law and Mississippi Law

The Supreme Courts in both Alabama and Mississippi have held that there is no claim for

medical monitoring in the absence of physical injury.  *Hinton v. Monsanto Co.*, 813 So.2d 827,

829 (Ala. 2001); *Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1, 5-6 (Miss. 2007). While

Plaintiffs have not alleged any *specific* present injury or physical manifestation of harm from the

alleged formaldehyde exposure, they have alleged that they have suffered *some* injury. (Rec.

Doc. 109, ¶¶ 95, 153, 175).  The Manufacturing Defendants nonetheless assert that these general

allegations are insufficient to satisfy the pleading standard set forth in *Twombly*.

This Court finds that under the *Twombly* standard and in consideration of all facts pled in

40

the AMC and amended AMC, Plaintiffs have set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974.  In other words, this Court finds that the factual allegations pled regarding the existence of a current injury or injuries is enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965.  Plaintiffs have satisfied the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, as the AMC and amended AMC (See Rec. Doc. 109, ¶IV) (1) provides notice of circumstances which give rise to the claim, or (2) sets forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist. See *Beanal v. Freeport-McMoran, Inc*., 197 F.3d 161, 164 (5th Cir.1999). The Court finds that the medical monitoring claims for Mississippi and Alabama plaintiffs in the AMC and amended AMC in this case should not be dismissed at this juncture.

It should be noted that the degree of required specificity depends on the type of claim at issue.  Here, the Court is faced with an MDL involving many named plaintiffs and proposed class members.  Plaintiffs have alleged a current injury - albeit in general terms.  Plaintiffs admit that, at this stage, they have not set forth the full extent of the injuries that each has suffered as a result of his/her exposure to formaldehyde. However, the Court notes that the Manufacturing Defendants will be allowed to conduct discovery to determine whether an actual current injury exists, which will bear significant weight on the viability of Plaintiffs' medical monitoring claims.  Indeed, Plaintiffs have already begun the process of completing Plaintiff Fact sheets for each plaintiff to provide further information as to the alleged injuries and symptoms of each

individual.  Thus, Defendants' request to dismiss such claims is denied.

**(b)      Under Texas Law**

In *Norwood v. Raytheon Co.*, 414 F. Supp. 2d 659, 668-69 (W.D. Tex. 2006), the United

States District Court for the Western District of Texas recently analyzed and applied existing

Texas law to determine whether the Texas Supreme Court, if faced with the same issue, would

refuse to recognize a cause of action for medical monitoring.  While the *Norwood* Court

ultimately determined that Texas would not recognize a claim for medical monitoring, its

decision seems to infer that such would be the case only in the absence of a current physical

injury.  The *Norwood* Court reasoned:

> Based on the [*Temple-Inland Forest Products Corp. v. Carter*, 993
> S.W.2d 88 (Tex.1999)] decision, the Texas Supreme Court appears likely
> to reject medical monitoring claims. Like the [*Metro-North Commuter
> R.R. Co. v. Buckley*, 521 U.S. 424, 439, 117 S.Ct. 2113, 138 L.Ed.2d 560
> (1997)] Court, the Texas Supreme Court appears disposed to rely on the
> same policy considerations in rejecting medical monitoring claims that it
> relied on in rejecting mental anguish claims *in the absence of a present
> physical injury*. In fact, it is likely that the Texas Supreme Court would
> again cite the *Metro-North* decision itself to reject medical monitoring as a
> cause of action, in the same way it relied on *Metro-North* to reject mental
> anguish claims.

*Norwood*, 414 S. Supp.2d at 665-666. Seemingly, if faced with this same issue, based on the

*Norwood* Court's analysis, the Texas Supreme Court would only allow medical monitoring

claims when such are accompanied with the existence of or the allegation of the existence of a

present physical injury.

With this reasoning in mind, and for the same reasons stated in sub-section (a) of this

section (relative to Alabama and Mississippi medical monitoring claims), this Court concludes

that the medical monitoring claims relative to the Texas plaintiffs should not be dismissed at this time.

**(c)**      **Under Louisiana Law**

Louisiana law excludes as an element of damages "costs for future medical treatment, services, surveillance, or procedures of any kind *unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury of disease*." La. Civ. Code art. 2315(B) (emphasis added). As noted in sub-sections (a) and (b) of this section, this Court concludes that Plaintiffs have sufficiently alleged a current physical injury.  Thus, Defendants' request to dismiss these claims is likewise denied.

## III.     CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the **Master Response of Manufacturing Defendants to the Second Amended and Master Complaint of Plaintiffs Adopting Previously Filed 12(B) Motions [Rec. Doc. 210] (Rec. Doc. 780)** is **GRANTED IN PART and DENIED IN PART**, as set forth herein.[22]

New Orleans, Louisiana, this 12th day of December, 2008.

_____

**KURT D. ENGELHARDT**

**UNITED STATES DISTRICT JUDGE**

---

[22]     Play' Mor Trailers, Inc. requested that it be allowed to join in to this motion to dismiss. (See Rec. Doc. 896).  Thus, this ruling shall apply to the Play'Mor Trailers, Inc. as well as to any other Defendants with applicable claims.