UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br>SECTION "N-5" |
| This Document Related to All Cases | JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PLAINTIFFS' RESPONSE TO REPLY MEMORANDUM
IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT
TESTIMONY OF PATRICIA M. WILLIAMS, PH.D.,DABT

**MAY IT PLEASE THE COURT:**

The Manufacturing Defendants have filed a Reply Memorandum in Support of their Motion *in Limine* to Exclude Testimony of Patricia Williams, Ph.D. (the "Reply Memorandum"), in which they seek to exclude Dr. Williams' testimony related to whether formaldehyde is a known human carcinogen. Defendants' challenge not only is contrary to the well-established views of the medical and scientific community, but also is inappropriate at this phase of the litigation, since it raises arguments on the merits on an issue not before the Court at this class certification stage.

At the December 2, 2008 hearing, Plaintiffs proposed a medical intervention sub-class for children intended to treat the **non-cancer** health effects of formaldehyde exposure. Participation in the sub-class would be predicated on symptoms manifest in connection with exposure to the Minimum Risk Levels ("MRLs") designated by the Agency for Toxic Substances and Disease Registry ("ATSDR") for the periods of time these children resided in the trailers. It was stressed repeatedly by counsel at the hearing that Dr. Williams' testimony in support of this sub-class

1

related to the **non-cancer** health effects of formaldehyde in children, as to which she opined there was a common mechanism of injury.[1] It should be emphasized that in presenting this narrowly-focused subclass proposal, Plaintiffs have not recanted any argument that formaldehyde is causally linked to cancer, a proposition supported by multiple well-respected sources in the medical and scientific community. Plaintiffs consider the carcinogenic risks for formaldehyde to relate to merits-based arguments regarding damages, and not relevant to the subclass certification issues at hand.

Nonetheless, Defendants' Reply Memorandum addresses the merits of the "cancer link" question in this case, and purports to impeach Dr. Williams without ever having directly presented her at the hearing with conflicting evidence on the question now briefed. Cancer and fear of cancer are very real effects of formaldehyde exposure, and Dr. Williams (as well as other experts) will address this on Plaintiffs' behalf as the litigation proceeds to the merits phase. Any attempt to argue this issue now should be deferred until that phase.

The second issue which Plaintiffs wish to clarify relates to so-called "null hypothesis".[2] The "null hypothesis" is explained in the treatise *Modern Epidemiology*, 2nd Edition, as follows:

> Biologic knowledge about epidemiologic hypotheses is often scant, making the hypotheses themselves at times little more than vague statements of causal association between exposure and disease, such as "smoking causes cardiovascular disease." To cope with this vagueness, epidemiologists usually focus on testing the negation of the causal hypothesis, that is, the null hypothesis that the exposure does not have a causal relation to disease. Then, any observed association can potentially refute the hypothesis, subject to the assumption

---

[1] While Dr. Williams stated repeatedly at hearing that she was not talking about specific causation or about cancer and formaldehyde, it is most succinctly stated at p. 76 of the transcript when counsel for Defendants stated: "You are not rendering an opinion today about cancer, correct?" Dr. Williams responded, "That is correct." For the Defendants to continue to argue that Dr. Williams was giving general causation expert testimony about the link between cancer and formaldehyde is absurd.

[2] In their Reply Memorandum, Defendants again argue about Dr. Williams' position on a causal link between cancer and formaldehyde, and their presentation of differing positions on formaldehyde's carcinogenicity. Again, Plaintiffs aver that the appropriate time for resolution of this issue is the merits phase, and not the narrowly tailored sub-class certification hearing on a proposed intervention and treatment program for **non-cancerous** health effects of formaldehyde.

(auxiliary hypothesis) that biases are absent.[3]

It is important to understand that a "null hypothesis" does not mean there is no causal link…it simply means that it has not been proven otherwise.  In the article *Why We Don't "Accept" the Null Hypothesis*, Keith Bower and James Colton discuss this very issue in a succinct and understandable manner.  When discussing the impossibility of proving the "null hypothesis" they quote Ronald A. Fisher and state:

> In relation to any experiment we may speak of… the "null hypothesis," and it should be noted that the null hypothesis is never proved or established, but is possibly disproved, in the course of experimentation.  Every experiment may be said to exist only in order to give the facts a chance of disproving the null hypothesis.[4]

The article proceeds to draw a helpful analogy with the criminal justice system, in which a person is innocent until proven guilty.  The prosecution bears the burden of building a case to prove guilt beyond a reasonable doubt.  A jury will never find a defendant "innocent".  Rather, that person would be either "guilty" or "not guilty".  A finding of "not guilty" means the jury failed to reject the null hypothesis.

At the certification hearing, Dr. Williams gave the example of one positive causal finding refuting a million negative findings with AIDS in blood to show that it was transferrable through blood transfusions.  Another example of the important distinction of the inability to prove the "null hypothesis" would be the use of thalidomide in the 1950's and 1960's.  This was a commonly-used drug that caused severe deformities and birth defects in the children of the women who took it during pregnancy.  Fortunately, a conscientious FDA scientist, Frances Oldham Kelsey, raised serious concerns about the drug despite numerous studies showing

---

[3] See, Rothman & Greenland, *Modern Epidemiology* (2nd Ed., 1998), p. 23.
[4] See, Bower & Colton, Why We Don't "Accept" the Null Hypothesis,
[http://www.minitab.com/resources/articles/WhyWeDontAccept.pdf] quoting Ronald A. Fisher, *The Design of Experiments*, (8th Ed. 1966), p. 17.

negative results, and thalidomide was never approved for use in the United States. However, over 10,000 children in 46 countries suffered severe and debilitating defects and deformities as a result of using this drug, and in spite of the negative trial results.[5]

Defendants inappropriately raise arguments over the issue of negative results and the "null hypothesis" at this class certification stage, as well as the carcinogenic effects of formaldehyde. Plaintiffs assert that the Defense's arguments are inaccurate, misleading and improperly raised, and should be considered and refuted at greater length at the merits phase of this litigation. However, because of the inaccurate arguments raised by the Defendants, Plaintiffs feel obliged to clarify these two issues for this Honorable Court. Plaintiffs reiterate their request that this Court deny the Manufacturing Defendants' Motion *in Limine* to Exclude the Expert Testimony of Patricia M. Williams, Ph.D., DABT.

Respectfully submitted,

**FORMALDEHYDE TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:   504/522-2304
       Facsimile:    504/528-9973
       gmeunier@gainsben.com

       s/Justin I. Woods
       JUSTIN I. WOODS, #24713
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street

---

[5] See *Frances Oldham Kelsey: FDA Medical Reviewer Leaves Her Mark on History*, Linda Bren, U.S. Food and Drug Administration, FDA Consumer Magazine, March-April 2001.

4

New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:     504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
RONNIE PENTON, #10462

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing was filed electronically through the CM/ECF system in the United States District Court for the Eastern District of Louisiana and all Counsel of Record were notified via electronic mail through the CM/ECF Filing System this 18th day of December, 2008.

/s/ GERALD E. MEUNIER
GERALD E. MEUNIER (#9471)