xiii.　　After moving out of her EHU, she moved back into her townhome, which had been completely gutted and refinished—including new wooden cabinets. *Id.* at 38:16-40:15.

xiv.　　She had problems with mold in her EHU. *Id.* at 76:23-77:1.

xv.　　FEMA or a FEMA contractor placed plywood on the EHU floors in response to her complaints about the floor sinking in. *Id.* at 78:3-20.

xvi.　　She wanted to purchase her EHU. *Id.* at 81:8-11.

xvii.　　She only found out that she was a class representative about a week before her deposition. *Id.* at 96:19-23.

xviii.　　She has no knowledge of the other class representatives or the putative members she purports to represent. *Id.* at 94:13-95:20.

xix.　　She complains of several symptoms that have never been associated with formaldehyde exposure, including vomiting, dizziness, and stillbirth. Ex. D-167; Plaintiff Fact Sheet at 3-4; Affidavit of Dr. Golden, pp. 25-26.

**Green, Trichonda**

    i.      Trichonda Green is a putative class representative for Gulf Stream Coach, Inc. Ex. D-168.

    ii.     Ms. Green lived in a travel trailer manufactured by Gulf Stream. *Id.*

    iii.    The travel trailer was located in Louisiana. *Id.*

    iv.    She reports residing in the trailer unit for 20 months, spending about 14 hours per day in the trailer unit. *See* Ex. D-168; Plaintiff Fact Sheet, p. 9.

    v.    She reports an onset of the reported symptoms as soon as she moved into the trailer. *Id.* at 4. Her symptoms included irritation, burning, and tearing of her eyes, irritation, burning, and bleeding to her nasal membranes, irritation or itching of skin, burning of skin, rashes on skin, drying or scaling of skin, irritation or swelling or eyelids or eye area, tingling or swelling of lips or face, headaches, nausea, vomiting, bloody vomiting, abdominal pain, difficulty in breathing, wheezing, shortness of breath, persistent cough, tightness of chest, throat irritation, upper respiratory tract infections, allergies for the first time in her life, dizziness, abnormal liver enzymes, sleep apnea, heavy breathing, loosening of teeth, bad circulation in

feet swelling in feet, muscle pain, low back pain, hair falling out, nasal congestion, stuffiness of nose that has not gotten better and has worsened, and abnormal laboratory tests on her blood.

vi.   Prior to living in the trailer, Ms. Green suffered from asthma. Ex. D-168; Plaintiff Fact Sheet, pp. 3-4; Deposition of Trichonda Green, taken October 10, 2008, p. 36-37.

vii.   Several of her symptoms, including sinuses, asthma, miscarriage, and allergies, are inconsistent with known effects of exposure to formaldehyde at the levels alleged by plaintiffs. Ex. D-168; Plaintiff Fact Sheet, pp. 3-4; Deposition of Trichonda Green, taken October 8, 2008, at 36-37; Affidavit of Dr. Golden, pp. 23-28; Affidavit of Dr. Wedner, pp. 12-13.

viii.   She has no idea of the claims of other class members. *See* Ex. D-168; Deposition of Trichonda Green, taken October 8, 2008, at 58.

ix.   She does not know who the defendants are in the litigation. *Id.* at 58.

x.   She has not read nor is he familiar with the Complaint. *Id.* at 58-61.

xi.     She is unaware of the allegations in the Complaint.
        *Id.*

xii.    She never gave permission for anyone to file suit on

        her behalf. *Id.* at 62.

**Griffin, Rommel, Jr.:**

i.      Rommel Griffin, Jr. is a putative class representative

        for Skyline Corporation. Ex. D-169.

ii.     Mr. Griffin lived in a travel trailer manufactured by Gulf

        Stream. *Id.*

iii.    The travel trailer was located in Louisiana. *Id.*

iv.     The trailer was manufactured in July 2005. *Id.*

v.      The trailer was not manufactured for sale to FEMA or

        any FEMA contractors. *Id.*

vi.     Mr. Griffin lived in the trailer for thirty-four months,

        except for three months between February 2006 and

        April 2006, spending about twelve hours per day

        inside the trailer. *Id.*

vii.    Six other people lived in the trailer during the same

        period as Mr. Griffin. *Id.*

viii.   Four of Mr. Griffin's reported symptoms, including

        abdominal pain, vomiting, dizziness, and diarrhea, are

        inconsistent with known effects of exposure to

        formaldehyde at the levels alleged by plaintiffs. *Id.*

ix.   Mr. Griffin is a former smoker. *Id.*

**Guesnon, Trinity**

i.   Trinity Guesnon is a putative class representative for Gulf Stream Coach, Inc. Ex. D-150.

ii.   Ms. Guesnon was not born at the time her mother lived in a travel trailer. Her exposure is reported as taking place while in-utero. Ex. D-150; Plaintiff Fact Sheet, p. 6; Deposition of Dione Davis, taken September 15, 2008, at 73-75, 106.

iii.   The travel trailer was located in Louisiana. Ex. D-150.

iv.   His symptoms included irritation of nasal membranes, difficulty in breathing, wheezing, persistent cough, tightness of chest, and allergies for the first time in her life. *Id.*

v.   It is reported that she suffered allergies for the first time in her life once she was 5 months old and continues to suffer from these allergies. Ex. D-150; Plaintiff Fact Sheet, pp. 3-4; Deposition of Dione Davis, taken September 15, 2008, at 71-72, 77.

vi.   Ms. Guesnon is represented by Dione Davis. Ex. D-150.

vii.    Ms. Davis is unaware of the how many class

members exist.  Ex. D-150; Deposition of Dione

Davis, taken September 15, 2008, at 64-65.

viii.    Ms. Davis does not feel she has any obligations as a

class representative.  *Id.* at 49.

ix.    Ms. Davis does not know where the lawsuit was filed.

*Id.* at 43.

x.    Ms. Davis has not read the Administrative Master

Complaint.  *Id.* at 44.

xi.    Ms. Davis has taken no steps to become aware of the

status of the suit.  *Id.* at 54.

**Gumm, Crystal**

i.    Crystal Cumm ("Gumm") allegedly is a putative class

representative for CMH Manufacturing, Inc. Ex. D-

170.

ii.    Despite CMH Manufacturing, Inc.'s attempts, Gumm

has not yet been put up for deposition by the PSC.

As a result, CMH Manufacturing, Inc. can only rely on

a deficient Plaintiff Fact Sheet ("PFS"), which has yet

to be cured despite CMH Manufacturing, Inc.'s

attempts, for the information provided below. *Id.*

iii.    Gumm allegedly lived in a CMH Manufacturing, Inc.

manufactured home, although the Second

Supplemental and Amended Complaint alleges that Gumm lived in a housing unit manufactured by Patriot Homes of Texas, L.P. and/or Patriot Manufacturing, Inc. *Id.*

iv.   Gumm's PFS does not state where the manufactured home was located. *Id.*

v.   Gumm was approximately twenty-seven (27) years old at the time she lived in the manufactured home. *Id.*

vi.   Gumm's PFS does not stay how long he lived in the manufactured home or how many hours she spent in the manufactured home per day. *Id.*

vii.   Gumm reports suffering from symptoms as a result living in a housing unit provided by FEMA, including bleeding of nasal membranes, rashes on the skin, headaches, nausea, wheezing, shortness of breath, persistent cough, upper respiratory tract infections, dizziness, and blurred vision. *Id.*

viii.   One of Gumm's symptoms, dizziness, is inconsistent with known effect of exposure to formaldehyde at the levels alleged by plaintiffs. *Id.*

ix.  Gumm's PFS states "unknown at this time" for all questions regarding her pre-existing illnesses and prior medical history. *Id.*

x.  Gumm has not provided any of the standard releases requested in the PFS. *Id.*

xi.  Gumm's PFS does not state whether she smoked cigarettes. *Id.*

xii.  The level of formaldehyde to which this putative class representative would have been exposed is vastly different than other putative class representatives and can only be determined by individualized inquiry. *Id.*

**Hargrove, Damien, Jr.**

i.  Damien Hargrove, Jr., is a putative class representative for Gulf Stream Coach, Inc. Ex. D-171.

ii.  Mr. Hargrove lived in a travel trailer manufactured by Gulf Stream. *Id.*

iii.  The travel trailer was located in Louisiana. *Id.*

iv.  Mr. Hargrove is currently 4 years old and was only one year old during the period of residence in the trailer unit. Ex. D-171; Plaintiff Fact Sheet, p. 6.

v.  He lived in the trailer unit for about 16 months, spending about 10-18 hours per day in the trailer unit.

vi.  He reports suffering from symptoms within one month of moving into the trailer unit.  Those symptoms included irritation or itching of skin, drying or scaling of skin, nausea, vomiting, diarrhea, difficulty in breathing, wheezing, persistent cough, eczema, and asthma attacks that are the recurrence of childhood asthma. *Id.* at 4, 9.

vii.  Prior to living in the trailer, Mr. Hargrove suffered from asthma and eczema.  *Id.* at 4-5; Deposition of Damian Hargrove, taken September 30, 2008, at 23, 122.  It is reported that his asthma and eczema (i.e., drying and itching of skin) were about the same before Hurricane Katrina. *Id.* at 50, 56-59. Additionally, he suffered from breathing and severe coughing before moving into the trailer. Ex. D-171; PFS at 5.

viii.  One of Mr. Hargrove's reported symptoms, diarrhea, is inconsistent with known effects of exposure to formaldehyde at the levels alleged by plaintiffs. *Id.* at 3-4; Affidavit of Dr. Golden, pp. 23-38.

ix.  Mr. Hargrove is represented by his father, Damien Hargrove. Ex. D-171.

x.    The representing Damien Hargrove is unaware of the how many plaintiffs would comprise the class. *Id.* p. 67.

xi.    He has not spoken to any plaintiffs. *Id.*

xii.    He is unaware of any pleadings filed or any Orders issued to date. *Id.* pp. 67-68, 70, 102-103.

xiii.    He is unaware of the current status of this litigation. *Id.* p. 104.

xiv.    He believes he has no responsibilities to plaintiffs who are not class representatives. *Id.* p. 84.

### Hargrove, Leroy, Jr.

i.    Leroy Hargrove, Jr., is a putative class representative for Gulf Stream Coach, Inc. Ex. D-172.

ii.    Mr. Hargrove lived in a travel trailer manufactured by Gulf Stream. *Id.*

iii.    The travel trailer was located in Louisiana. *Id.*

iv.    He reports residing in the trailer unit for about two and one-half years, spending about 20 hours per day in the trailer unit. *Id.*

v.    He reports the onset of symptoms immediately upon moving into the trailer unit. Those symptoms include irritation, burning, and tearing of his eyes, irritation and burning to his nasal membranes, irritation or

itching of skin, rashes on skin, drying or scaling of skin, headaches, abdominal pain, difficulty in breathing, wheezing, shortness of breath, persistent cough, tightness of chest, throat irritation, dizziness, aggravation of high blood pressure, and dry eyes. Ex. D-172; Plaintiff Fact Sheet, pp. 3-4, 9; Deposition of Leroy Hargrove, Jr., taken August 7, 2008, at 21, 27, 48.

vi.    Prior to living in the travel trailer, Mr. Hargrove suffered from high blood pressure. Ex. D-172.

vii.   Several of Mr. Hargrove's symptoms, including dizziness, abdominal pain and aggravation of high blood pressure, are inconsistent with known effects of exposure to formaldehyde at the levels alleged by plaintiffs. Ex. D-172; Plaintiff Fact Sheet, pp. 3-4; Affidavit of Dr. Golden, pp. 23-28; Affidavit of Patricia M. Williams, Ph.D. DABT, pp. 11, 25-29 (no mention of high blood pressure aggravation as a symptom related to formaldehyde).

viii.  He has not spoken with any other plaintiffs.  Ex. D-172; Deposition of Leroy Hargrove, Jr., 8/7/08, p. 40.

ix.    He is not familiar with any of the Court's orders in this litigation.  *Id.* p. 41.

x.    He is unaware of the number of persons in the class.

*Id.* pp. 67-68.

xi.    He first learned he was going to be a class

representative just two weeks prior to his deposition.

*Id.* p. 133.

**Harris, Mary**

i.    Mary Harris ("Harris") is a putative class

representative for SunRay Investments, LLC. Ex. D-

173.

ii.    Harris lived in a SunRay Investments, LLC travel

trailer. *Id.*

iii.    Harris's travel trailer was located in Louisiana. *Id.*

iv.    Harris was approximately fifty-six (56) years old at the

time she lived in the travel trailer. *Id.*

v.    Harris lived in the travel trailer for approximately

sixteen (16) months, spending approximately sixteen

(15) hours in the travel trailer per day. *Id.*

vi.    Harris reports suffering from symptoms immediately

upon moving into the housing units provided by

FEMA, including irritation, burning, and tearing of the

eyes, burning of nasal membranes, irritation or itching

of the skin, drying or scaling of the skin, irritation or

swelling of eyelids or eye area, headaches, nausea,

diarrhea, difficulty in breathing, wheezing, shortness of breath, persistent cough, tightness of chest, bronchitis, throat irritation, hoarseness, upper respiratory tract infections, allergies, and dizziness. *Id.*

vii. One of Harris's symptoms, dizziness, is inconsistent with known effect of exposure to formaldehyde at the levels alleged by plaintiffs. *Id.*

viii. Prior to living in the travel trailer provided by FEMA, Harris suffered from several pre-existing medical conditions related to his presently claimed symptoms including migraine headaches, sinus headaches, bronchitis, shortness of breath, and breathing difficulties. *Id.*

ix. Prior to living the travel trailer provided by FEMA, Harris suffered from depression and experienced symptoms related to post-traumatic stress disorder. *Id.*

x. Prior to living the travel trailer provided by FEMA, Harris was diagnosed with tuberculosis. *Id.*

xi. Harris has smoked cigarettes, a pack per day, for approximately the last twenty (20) years. *Id.*

xii.    Harris did not know she was a class representative until the week before her deposition (November 3, 2008), did not read of the pleadings, and has not had any communications with any class members regarding the litigation. *Id.*

xiii.    The level of formaldehyde to which this putative class representative would have been exposed is vastly different than other putative class representatives and can only be determined by individualized inquiry. *Id.*

**Heechung, Hazel**

i.    Hazel Heechung, is a putative class representative for Forest River. Ex. D-174.

ii.    Ms. Heechung claims she lived in a travel trailer manufactured by Forest River. Ex. D-174; Plaintiff Fact Sheet, p. 8.

iii.    The travel trailer was located in Louisiana. *Id.* at 9.

iv.    Ms. Heechung makes no claim for lost earnings or loss of earning capacity. Ex. D-174; Deposition of Hazel Heechung, taken October 23, 2008, 41:13-24.

v.    She makes no claim for emotional distress or mental anguish. *Id.*, 59:13-15.

vi.    She did not reside in a temporary housing unit until March, 2006 and failed to develop any symptoms she

associates with exposure to formaldehyde until January, 2007. *Id.,* 21:13-19; 32:3-22.

vii.    She claims she lived in the travel trailer for 1 year 3 months and spent approximately 20 hours a day inside the trailer. Ex. D-174; Plaintiff Fact Sheet, p. 9.

viii.   She made ongoing complaints of mold in the unit. *Id.,* 49:17-50:3.

ix.     Ms. Heechung made complaints to FEMA in late 2007 regarding exposure to formaldehyde and was offered the opportunity to transfer to a hotel. Rather than accepting the transfer and removing herself from the unit, she refused transfer and continued to live in a unit she believed to be causing her health problems for an additional six months. *Id.,* 97:23-98:11.

x.      She reports suffering from irritation to the eyes, burning of the eyes, tearing of the eyes, bleeding of nasal membranes, rashes on skin, drying or scaling of skin, headaches, difficulty in breathing, wheezing, shortness of breath, persistent cough, tightness of the chest, throat irritation, hoarseness, upper respiratory tract infections, allergies for the first time in her life, and leg cramps. Ex. D-174; Plaintiff Fact Sheet, pp. 3-4.

xi.    She complains of several symptoms, including muscle cramps that have never been associated with formaldehyde exposure.  Ex. D-174; Deposition of Hazel Heechung, taken October 23, 2008, 34:8-17.

xii.    She has no knowledge of the defendants named in this action, no knowledge of the other class representatives or the putative class members she purports to represent, or even an idea as to how many putative class members there may be.  *Id.*, 60:12-15; 62:7-9; 63:7-13.

xiii.    She has had no communication with any other member of the putative class besides those in her immediate family and has taken no steps to investigate the claims of anyone other than the individuals with whom she resided.  *Id.*, 64:8-15; 68:9-12; 96:9-15.

xiv.    Heechung has taken no steps to investigate what formaldehyde is or how it is utilized in relation to the building products to which she claims exposure.  *Id.*, 68:13-69:21; 93:15-19.

xv.    Heechung could not even identify the geographic locations of the putative class she claims to represent.  *Id.*, 63:14-64:2; 100:11-14.

xvi.   Heechung had no knowledge of her responsibilities as class representative.  *Id.*, 65:3-9.

**Hill, Douglas J., III**

i.   Douglas J. Hill, III is a putative class representative who is a newly added plaintiff in the Amended Administrative Master Complaint, ¶7(d)(102), "matched" to Recreation by Design, LLC.  He occupied a unit manufactured by Recreation Park/Oak Tree, according to his Plaintiff Fact Sheet (PFS), certification dated August 14, 2008.  The VIN is for a manufactured home (ADA Park Model) manufactured by Oak Creek Homes, LP under a subcontract to Silver Creek Homes, which Silver Creek sold to FEMA.  Ex. D-175.

ii.   Mr. Hill lived in a unit with the VIN of a manufactured home (ADA park model) manufactured by Oak Creek Homes, LP. *Id.*

iii.   The manufactured home was located in Louisiana. *Id.*

iv.   Mr. Hill was 38 (date of birth 9/19/98) at the time he moved into the manufactured home. *Id.*

v.   He lived in the manufactured home for less than two years (no earlier than August 2006 and no later than June 2008). *Id.*

vi.  He reports suffering from symptoms, immediately upon moving into the manufactured home. These symptoms included irritation to eyes, burning of eyes, tearing of eyes, irritation or itching of skin, headaches, nausea, abdominal pain, difficulty in breathing, shortness of breath, tightness of chest, dizziness, and convulsions or seizures. *Id.*

vii. Dizziness and seizures are inconsistent with known effects of exposure to formaldehyde at the levels alleged by plaintiffs. *Id.*

viii. Prior to living in the manufactured home, Mr. Hill was disabled and confined to a wheelchair; hence the assignment of an ADA (Americans with Disabilities Act) park model manufactured home. Also prior to living in the manufactured home, he had stomach pains and seizures. The seizures were diagnosed in 1978. He asserts that the stomach pains became much worse and the seizures became more frequent after moving into the manufactured home. *Id.*

    ix.     He has made claims previously in chemical exposure

            cases, *i. e.*, Gentilly Tank Car Litigation and

            Agriculture Street Landfill cases. *Id.*

**Howard, Thelma H.**

    i.     Thelma Howard is a putative class representative for

            Timberland RV Company d/b/a Adventure

            Manufacturing. Ex. D-176.

    ii.    Thelma Howard lived in a travel trailer manufactured

            by Timberland RV Company d/b/a Adventure

            Manufacturing.  Ex. D-176; *Plaintiff Fact Sheet* p. 8.

    iii.   The travel trailer was located in the State of

            Louisiana.  *Id.* at p. 9.

    iv.   Thelma Howard was approximately fifty-three to fifty-

            five years of age while living in the travel trailer.  *Id.* at

            p. 6, 9.

    v.     Thelma Howard lived in the travel trailer for

            approximately two and one-half years, spending

            approximately twenty-four hours per day in the travel

            trailer.  *Id.* at Page 9.

    vi.   Thelma Howard did not work outside of the home

            during the period she lived in the travel trailer.  *Id.* at

            Page 10.

vii.   Thelma Howard reports symptoms during the time she lived in the travel trailer including burning of eyes, tearing of eyes, irritation or itching skin, drying or scaling of skin, headaches, nausea, vomiting, abdominal pain, difficulty breathing, wheezing, shortness of breath, persistent cough, tightness of the chest, throat irritation, upper respiratory tract infection, asthma attacks for the first time in her life, allergic contact dermatitis, dizziness, low blood pressure, abnormal laboratory tests on urine. *Id.* at Page 3-4. Thelma Howard also claims symptoms of out of control blood pressure and skin boils.

viii.  Five of the symptoms claimed by Thelma Howard, dizziness, vomiting, upper respiratory tract infection, low blood pressure and abnormal laboratory tests on urine are inconsistent with known effects of formaldehyde exposure at the levels alleged by Plaintiffs. *Affidavit of Dr. Robert Golden*, p. 24-26; *Plaintiff Fact Sheet*, p. 3-4.

ix.    Thelma Howard claims she suffered blood pressure problems prior to moving into the trailer and living in the trailer worsened the condition. Ex. D-176; *Plaintiff Fact Sheet*, p. 4-5.

x.     Thelma Howard currently smokes up to three cigarettes per day and has smoked for 20 years. *Id.* at Page 12.

**Jack, Jr., Joseph**

i.     Joseph Jack, Jr. ("Jack") allegedly is a putative class representative for CMH Manufacturing, Inc. Ex. D-177.

ii.    Despite CMH Manufacturing, Inc.'s attempts, Jack has not yet been put up for deposition by the PSC. As a result, CMH Manufacturing, Inc. can only rely on a deficient Plaintiff Fact Sheet ("PFS"), which has yet to be cured despite CMH Manufacturing, Inc.'s attempts, for the information provided below. *Id.*

iii.   Jack allegedly lived in a CMH Manufacturing, Inc. manufactured home, although the Second Supplemental and Amended Complaint alleges that Jack lived in a housing unit manufactured by Patriot Homes of Texas, L.P. and/or Patriot Manufacturing, Inc. Further, Jack's PFS states that he lived in a travel trailer while CMH Manufacturing, Inc. only manufactured manufactured homes. *Id.*

iv.    Jack's PFS does not state where the manufactured home was located. *Id.*

v.      Jack was approximately thirty (35) years old at the time he allegedly lived in the manufactured home. *Id.*

vi.      Jacks's PFS does not stay how long he lived in the manufactured home or how many hours he spent in the manufactured home per day. *Id.*

vii.      Jack reports suffering from symptoms as a result living in a housing unit provided by FEMA, including rashes on the skin, headaches, nausea, wheezing, shortness of breath, persistent cough, asthma attacks, dizziness, blurred vision, nose bleeds, and sinus infections. *Id.*

viii.      One of Jack's symptoms, dizziness, is inconsistent with known effect of exposure to formaldehyde at the levels alleged by plaintiffs. *Id.*

ix.      Jack's PFS states "unknown at this time" for all questions regarding his pre-existing illnesses and prior medical history. *Id.*

x.      Jack has not provided any of the standard releases requested in the PFS. *Id.*

xi.      Jack smokes cigarettes but his PFS does not say how often. *Id.*

xii.      The level of formaldehyde to which this putative class representative would have been exposed is vastly

different than other putative class representatives and can only be determined by individualized inquiry. *Id.*

## Jordan, Brunica rep by Constance Jordan

i.     Brunica Jordan is a putative class representative for Vanguard. Ex. D-178.

ii.     Constance Jordan has taken inadequate steps to prosecute this action and failed to appear for her properly noticed deposition scheduled to take place on October 14, 2008. Ex. D-178; Process Verbal of Constance Jordan, taken October 14, 2008, 4:1-18.

iii.     Brunica Jordan claims she lived in a travel trailer manufactured by Vanguard. Ex. D-178; Plaintiff Fact Sheet, p. 8.

iv.     The travel trailer was located in Louisiana. *Id.* at 9.

v.     Brunica Jordan claims she lived in the travel trailer for 2 years and 2 months and spent 24 hours a day inside the trailer. *Id.*

vi.     Brunica Jordan reports suffering from irritation to eyes, burning of eyes, irritation to nasal membranes, burning of nasal membranes, bleeding of nasal membranes, irritation or itching of the skin, rashes on the skin, drying or scaling of the skin, headaches, vomiting, abdominal pain, diarrhea, difficulty in

breathing, wheezing, shortness of breath, persistent

cough, tightness of the chest, bronchitis, throat

irritation, hoarseness, asthma attacks that are

recurrence of childhood asthma, allergies for the first

time in her life and dizziness.  *Id.* at 3-4.

### Keyes, Sylvia

i.      Sylvia Keyes is a putative class representative for

Fleetwood, in the proposed Alabama subclass.  Ex.

D-179; Plaintiff Fact Sheet, p. 8.

ii.     Ms. Keyes alleges to have lived in a travel trailer

manufactured by Fleetwood.  *Id.*

iii.     The travel trailer was purportedly located in Alabama.

*Id.* at 9.

iv.     Ms. Keyes was 55 years old at the time she lived in

the unit.  *Id.* at 6.

v.      Ms. Keyes allegedly lived in the unit for approximately

eight months.  *Id.* at 9.

vi.     She claims to have spent approximately 24 hours per

day in the unit.  *Id.*

vii.    She claims the following symptoms:  asthma, irritation

to eyes and nose, burning and bleeding nose,

difficulty breathing, wheezing, shortness of breath,

tightness of chest, bronchitis,

hoarseness.  *Id.* at 3-4.

viii.  In 2000, she had surgery to repair a stab wound to her chest.  Ex. D-179; Deposition of Sylvia Keyes, taken on September 18, 2008, at 31:1-21.

ix.  She lived in a mobile home for over twenty years prior to living in her THU.  *Id.* at 10:17-21.

x.  She returned to that mobile home after vacating her THU in 2006 and later requested another mobile home from Volunteers of America in 2007.  *Id.* at 13:10-17.

xi.  She had problems with recurring mold and mildew in her mobile home residence.  *Id.* at 70:21-71:4.

xii.  Between 2003 and 2007, she worked on the inside of a ship as a painter.  While inside the ship, she worked near people doing insulation work, cutting paneling, pipefitters, sandblasting, and welding.  *Id.* at 25:6-27:15; 54:9-16.

xiii.  Her working conditions on the ship were "very dusty".  *Id.* at 53:20-25.

xiv.  She had pre-existing sinus conditions before living in her THU.  *Id.* at 90:15-18.

xv.    She did not even realize she was a class representative until the week of her deposition. *Id.* at 74:4-7.

xvi.    She has not spoken with anybody who may be a putative class member. *Id.* at 76:11-13.

**LeBeau, Carrie**

i.    Carrie LeBeau is proposed as a class representative for Keystone RV Company ("Keystone"). Ex. D-180.

ii.    Carrie LeBeau lived in a travel trailer from October, 2005 through May, 2008. The travel trailer was located in Louisiana. *Id.*

iii.    Carrie LeBeau was 55 years old when she lived in a Keystone travel trailer. *Id.*

iv.    Carrie LeBeau reports suffering from symptoms including eye irritation, skin irritation, upper respiratory tract infections she developed while living in a FEMA unit. *Id.*

v.    No health care provider has advised Carrie LeBeau that her symptoms are linked to formaldehyde exposure. *Id.*

vi.    Carrie LeBeau has a medical history of blood pressure problems, stress and anxiety issues. These

are pre-existing conditions that the plaintiffs do not

attribute to formaldehyde exposure. *Id.*

vii.    Carrie LeBeau has not attended any hearings, does

not know what motions have been filed, and does not

know what rulings have issued. *Id.*

viii.    Carrie LeBeau has not met with any experts,

reviewed any expert reports, reviewed discovery

responses, or conducted any research regarding the

lawsuit, FEMA, or formaldehyde. *Id.*

### Darrell Madison, Darrren Madison, and Derrell Madison rep by Latonya London

i.    Latonya London o/b/o Darrell Madison, Darren

Madison, and Derrell Madison ("the Madisons") is a

putative class representative for Coachmen

Industries, Inc. and/or Coachmen Recreational

Vehicle Company LLC. Ex. D-184-186.  (Plaintiffs

assert in the PTO that Edbony London is also a minor

child represented as a class representative by

Latonya London; however, Edbony London was not

listed as a class representative on plaintiffs' August

22, 2008 listing of class representatives (Doct. # 666-

2).

ii.     Latonya London and her children, the Madisons, lived in a Coachmen Recreational Vehicle Company, L.L.C. travel trailer *Id*.

iii.     The travel trailer was located in Louisiana. *Id*.

iv.     Darrrel Madison, Darren Madison, and Derrell Madison were approximately 5-6 years old, 0-1 years old and 3-4 years old respectively at the time they lived in the travel trailer. *Id*.

v.     All, with the exception of Darren Madison who was born in the trailer sometime after the familiy moved in, lived in the travel trailer for approximately nineteen (19) months, allegedly spending approximately nineteen to twenty (19-20) hours in the travel trailer per day. *Id*.

vi.     The Madisons report suffering from numerous symptoms, including irritation, burning, and tearing of the eyes, bleeding of nasal membranes, irritation or itching of the skin, rashes on the skin, stomach aches , diarrhea, headaches, difficulty in breathing, wheezing, shortness of breath, cough, bronchitis, throat irritation, and allergies for the first time. *Id*.

vii.    Many of the symptoms are inconsistent with known

effect of exposure to formaldehyde at the levels

alleged by plaintiffs. *Id.*

viii.   The Madison did not experience symptoms until after

living in the travel trailer for a number of months. *Id.*

ix.     Darren Madison was actually  born in the travel trailer

prematurely and suffered numerous complications

while in the hospital and prior to living in the trailer. *Id.*

x.      The level of formaldehyde to which this putative class

representative would have been exposed is vastly

different than other putative class representatives and

can only be determined by individualized inquiry. *Id.*

**McConnell, Erin rep by Betty White**

i.      Erin McConnell is a putative class representative for

Forest River. Ex. D-215.

ii.     Betty White is neither the custodian nor Court

appointed guardian of the proposed class

representative she purports to represent.  *Id.*

iii.    Due to the fact that she has not undertaken

appropriate steps to be appointed the personal

representative of Erin McConnell, defendants were

unable to obtain medical records and other

documentation requiring representative authorization. *Id.*

iv.  As Betty White was never appointed as an appropriate guardian of Erin McConnell, she can take no step in the prosecution of this action on behalf of the minor, Erin McConnell. *Id.*

v.  Erin McConnell claims she lived in a travel trailer manufactured by Forest River. Ex. D-215; Plaintiff Fact Sheet, p. 8.

vi.  The travel trailer was located in Alabama.  *Id.* at 9.

vii.  Ms. McConnell claims she lived in the travel trailer for 2 years and spent approximately 15 hours a day inside the trailer. *Id.*

viii.  Ms. McConnell reports suffering from irritation to eyes, burning of the eyes, irritation or itching of the skin, irritation or swelling of eyelids or eye area, tingling or swelling of lips or face area, headache, nausea, vomiting, abdominal pain, diarrhea, difficulty in breathing, wheezing, shortness of breath, persistent cough, tightness of the chest, throat irritation, hoarseness, upper respiratory tract infections, asthma attacks that are recurrence of childhood asthma, worsening of allergies that you had

previous to living in FEMA trailer and dizziness.  *Id.* at 3-4

### McCray, Adrina

i.      Adrina McCray is proposed as a class representative for KZ RV, LP ("KZ"). Ex. D-189.

ii.     Ms. McCray lived in a KZ travel trailer for only two months—from June 2007 through August 2007.  The travel trailer was located in Louisiana. *Id.*

iii.    Ms. McCray was 35 years old when she lived in the KZ travel trailer. *Id.*

iv.     Ms. McCray was in the travel trailer for approximately 15-20 hours per day, on average. *Id.*

v.      Ms. McCray reports suffering from symptoms including vomiting and hypothermia developed while living in the KZ FEMA unit. *Id.*

vi.     No health care provider has advised Ms. McCray that her symptoms are linked to formaldehyde exposure. *Id.*

vii.    Ms. McCray cancelled her deposition that was noticed for September 16, 2008.  She has not rescheduled the deposition. *Id.*

**McGallion, Amaris**

    i.      Amaris McGallion ("McGallion") is a putative class representative for Southern Energy Homes, Inc. Ex. D-191.

    ii.     McGallion lived in a Southern Energy Homes, Inc. manufactured home. *Id.*

    iii.    McGallion's manufactured home was located in Louisiana. *Id.*

    iv.    McGallion was approximately twenty-one (21) to twenty-three (23) years old at the time she lived in the manufactured home. *Id.*

    v.     McGallion lived in the manufactured home for approximately twenty-two (22) months, spending approximately twenty-four (24) hours in the manufactured home per day. *Id.*

    vi.    Prior to living in the manufactured home, McGallion lived in a travel trailer provided by FEMA manufactured by a defendant other than CMH Manufacturing, Inc. for over one (1) month. *Id.*

    vii.   Prior to Hurricane Rita, McGallion lived in at least three other manufactured homes, including a manufactured home that had a mold problem as a result of damages sustained from Hurricane Rita. *Id.*

viii.    McGallion reports suffering from symptoms immediately upon moving into the housing units provided by FEMA, including irritation, burning, and tearing of the eyes, burning and bleeding of the nasal membranes, irritation or itching of the skin, burning of the skin, rashes on the skin, drying or scaling of the skin, headaches, nausea, vomiting, abdominal pain, diarrhea, difficulty in breathing, wheezing, shortness of breath, persistent cough, tightness of the chest, throat irritation, allergies, and dizziness. *Id.*

ix.    Two of McGallion's symptoms, vomiting and dizziness, are inconsistent with known effect of exposure to formaldehyde at the levels alleged by plaintiffs. *Id.*

x.    Prior to living the housing units provided by FEMA, Davis was diagnosed with psoriasis. *Id.*

xi.    McGallion's husband smoked cigarettes at the time of living in the units provided by FEMA. *Id.*

xii.    McGallion did not know she was a class representative until two (2) days before her deposition (November 14, 2008), had not seen any pleadings until two (2) days before her deposition, and has not

had any communications with any class members or putative class members regarding the litigation. *Id.*

xiii. The level of formaldehyde to which this putative class representative would have been exposed is vastly different than other putative class representatives and can only be determined by individualized inquiry. *Id.*

**Miller, Brittney Stephens**

i. Ms. Miller is proposed as a class representative for Dutchmen Manufacturing. Ex. D-192.

ii. Ms. Miller lived in a Dutchmen travel trailer for a total of ten months, in the period from February 2006 to October 2007. The travel trailer was located in Texas. *Id.*

iii. Ms. Miller was 19 years old when she lived in the Dutchmen travel trailer. *Id.*

iv. Ms. Miller was in the travel trailer for approximately 10-12 hours per day, on average. *Id.*

v. Ms. Miller reports suffering from symptoms including kidney stones and kidney problems she developed while living in the Dutchmen FEMA unit. *Id.*

vi. No health care provider has advised Ms. Miller that her symptoms are linked to formaldehyde exposure. *Id.*

vii.    Ms. Miller is not asserting a claim for mental or emotional damages. *Id.*

viii.    Ms. Miller's sister, Susette Stephens, lived in the Dutchmen travel trailer with her, but did not suffer any of the same symptoms that Miller suffered. *Id.*

ix.    Ms. Miller has not suffered any damages and is "not really looking for anything" in the lawsuit. *Id.*

x.    Someone other than Ms. Miller inserted information into her Plaintiff Fact Sheet after Ms. Miller signed it. *Id.*

xi.    Ms. Miller has never seen the Master Complaint filed in this lawsuit. *Id.*

xii.    The only task Ms. Miller has performed as a class representative was to appear for her deposition on October 24, 2008. *Id.*

### Mitchell, Natley

i.    Natley Mitchell is a putative class representative for Destiny Industries, LLC. Ex. D-193.

ii.    Natley Mitchell lived in a mobile home manufactured by Destiny from approximately September 2006 to November 2007. Ex. D-193; *Plaintiff Cured Fact Sheet* p. 8-9.

iii.   The mobile home was located in the State of Mississippi.  *Id.* at p. 9.

iv.   Natley Mitchell was approximately twenty-nine to thirty years of age while living in the mobile home.  *Id.* at p. 6, 9.

v.   Natley Mitchell lived in the mobile home for fourteen months, spending approximately sixteen hours per day in the mobile home.  *Id.* at Page 9.

vi.   Natley Mitchell worked outside of the home approximately two days per week during the period she lived in the mobile home.  *Id.* at Page 10.

vii.   Natley Mitchell reports symptoms during the time she lived in the mobile home including irritation to eyes, burning of eyes, tearing of eyes, burning of nasal membranes, (inside of nose) irritation or itching skin, rashes on skin, drying or scaling of skin, irritation or swelling of eyelids or eye area, headaches, nausea, vomiting, diarrhea, difficulty breathing, wheezing, shortness of breath, persistent cough, tightness of the chest, bronchitis, throat irritation, hoarseness, worsening of allergies that she had previous to living in the FEMA trailer, dizziness, low and blood

pressure. *Id.* at Page 3-4. Mitchell also claims symptoms of a swollen throat.

viii.    Four of the symptoms claimed by Natley Mitchell, dizziness, vomiting, diarrhea and low blood pressure are inconsistent with known effects of formaldehyde exposure at the levels alleged by Plaintiffs. *Affidavit of Dr. Robert Golden*, p. 24-26; *Plaintiff Fact Sheet*, p. 3-4.

ix.    Natley Mitchell claims she suffered from allergies prior to moving into the mobile home. Ex. D-193; *Plaintiff Fact Sheet*, p. 4-5.

x.    Natley Mitchell claims she lived in another unknown FEMA-supplied trailer from January 2006 to August 2006 in Pascagoula, Mississippi. *Id.* at Page 30-31 (Appendix 3 to Fact Sheet).

xi.    Natley Mitchell claims she lived in another unknown FEMA-supplied trailer from August 2006 to September 2006 in Gauthier, Mississippi. *Id.* at Page 27 (Appendix 3 to Fact Sheet).

**Moreland, Glenda**

i.    Glenda Moreland is a putative class representative for Frontier, RV, Inc. Ex. D-194.

ii.    Moreland lived in a travel trailer manufactured by Frontier, RV, Inc. *Id.*

iii.    The travel trailer was located in Louisiana. *See* Ex. D-194; Plaintiff Fact Sheet, pg. 9.

iv.    Moreland was sixty-four to sixty-six years old at the time she lived in the travel trailer. *Id. at 6, 9.*

v.    The length of time Moreland resided in the Frontier unit is unknown due to her Plaintiff Fact Sheet stating she lived in multiple units. *Id.* at 8.

vi.    She reports suffering from several symptoms upon moving into the trailer. Those symptoms included irritation, burning, and tearing of eyes, irritation, burning, and bleeding of nasal membranes, irritation/itching of skin, burning of skin, rashes of skin, drying or scaling of skin, scaling or itching of eyelids, irritation or swelling of eyelids or eye area, tingling or swelling of lips or face area, headaches, nausea, vomiting, abdominal pain, diarrhea, difficulty in breathing, wheezing, shortness of breath, persistent cough, tightness of the chest, bronchitis, throat irritation, hoarseness, upper respiratory tract infections, asthma attacks that are a recurrence of childhood asthma, worsening of allergies that plaintiff

had previous to living in FEMA trailer, dizziness, and unconsciousness. *Id.* at 3-4.

vii.    She reported symptoms, namely, abdominal pain, diarrhea, dizziness, hypothermia and abnormal laboratory test in urine, that are inconsistent with known effects of exposure to formaldehyde at the levels alleged by plaintiffs. *See* Affidavit of Dr. Golden, pgs. 25-28.

viii.    She indicated on her plaintiff fact sheet that she resided in multiple THUs without identifying the manufacturer of all THUs. *See* Ex. D-194; Plaintiff Fact Sheet, pg. 8.

### Posey, George

i.    George Posey is proposed as a class representative for Dutchmen Manufacturing, Inc. ("Dutchmen"). Ex. D-197.

ii.    Mr. Posey lived in his Dutchmen travel trailer for less than one month. The travel trailer was located in Mississippi. *Id.*

iii.    Mr. Posey was 78 years old when he lived in the Dutchmen travel trailer. *Id.*

iv.    Mr. Posey was in the travel trailer for more than half of the day per day, on average. *Id.*

v.      The Dutchmen travel trailer Mr. Posey lived in was used when he moved in. *Id.*

vi.     Mr. Posey reports suffering from symptoms including headaches, and burning eyes, while living in the Dutchmen FEMA unit. *Id.*

vii.    Mr. Posey had a stroke after he moved out of the Dutchmen FEMA unit that he personally believes was the result of living in the unit. *Id.*

viii.   No health care provider has advised Mr. Posey that his stroke was linked to formaldehyde exposure. *Id.*

ix.     Mr. Posey does not want to be a class representative. *Id.*

x.      Prior to his deposition, Mr. Posey did not know that he was a class representative. *Id.*

xi.     Mr. Posey does not know the duties or responsibilities of a class representative. *Id.*

xii.    Mr. Posey is not prepared to sit through a trial in this case.  Because he is in poor health and in a wheel chair, he could not sit for more than four or five hours. *Id.*

xiii.   Mr. Posey has not ever reviewed any pleadings and the only reason he filed the suit was because he had a stroke. *Id.*

    xiv.    Mr. Posey thinks he is only suing the people that own his trailer. *Id.*

    xv.    Mr. Posey does not know how to get in touch with other representatives or what class certification means. *Id.*

**Pujol, Stephanie**

    i.    Stephanie Pujol is proposed as a class representative for Pilgrim International, Inc. ("Pilgrim"). Ex. D-198.

    ii.    Stephanie Pujol lived in a travel trailer from November, 2005 through April, 2007.  The travel trailer was located in Louisiana. *Id.*

    iii.    Stephanie Pujol was 48 years old when she lived in a Pilgrim travel trailer.  *Id.*

    iv.    Stephanie Pujol reports suffering from symptoms including eye irritation, headaches and breathing problems she developed while living in a FEMA unit. *Id.*

    v.    Stephanie Pujol is asserting a claim for mental or emotional damages.  *Id.*

    vi.    Stephanie Pujol has a medical history of Hepatitis C. This is a pre-existing condition that the plaintiffs do not attribute to formaldehyde exposure.  *Id.*

vii.    Stephanie Pujol has not attended any hearings, does not know what motions have been filed, and does not know what rulings have issued. *Id.*

viii.    Stephanie Pujol has not met with any experts, reviewed any expert reports, reviewed discovery responses, or conducted any research regarding the lawsuit, FEMA, or formaldehyde. *Id.*

### Robertson, Mercedez

i.    Mercedez Robertson, a 9-year-old minor, is proposed as a class representative for Monaco Coach Corporation ("Monaco"). Ex. D-200.

ii.    Mercedez Robertson is being represented in this litigation by her mother, Penny M. Robertson. *Id.*

iii.    Mercedez Robertson lived in a Monaco travel trailer from September, 2006, through the present.  The Monaco travel trailer was located in Louisiana. *Id.*

iv.    Mercedez Robertson was 7 years old when she lived in the Monaco travel trailer.  *Id.*

v.    Mercedez Robertson was in the Monaco travel trailer for approximately 10 hours per day, on average.  *Id.*

vi.    Mercedez Robertson reports suffering from symptoms including vomiting, dizziness, abdominal pain and

diarrhea she developed while living in a FEMA unit. *Id.*

vii.    No health care provider has advised Mercedez Robertson that her symptoms are linked to formaldehyde exposure. *Id.*

viii.    Mercedez Robertson is not asserting a claim for mental or emotional damages. *Id.*

**Robertson, Penny M.**

i.    Penny M. Robertson is proposed as a class representative for Monaco Coach Corporation ("Monaco"). Ex. D-201.

ii.    Penny M. Robertson lived in a Monaco travel trailer from September, 2006 through the present.  The Monaco travel trailer was located in Louisiana. *Id.*

iii.    Penny M. Robertson was 28 years old when she began living in the Monaco travel trailer.  *Id.*

iv.    Penny M. Robertson previously occupied the Monaco travel trailer for approximately 20 - 24 hours per day, on average.  Currently, Penny M. Robertson occupies the Monaco travel trailer approximately 10 – 12 hours a day, on average.  *Id.*

v.       Penny M. Robertson reports suffering from symptoms including dizziness and diarrhea she developed while living in a FEMA unit. *Id.*

vi.      No health care provider has advised Penny M. Robertson that her symptoms are linked to formaldehyde exposure. *Id.*

## Robinson, Rayfield

i.      Rayfield Robinson is a putative class representative for Gulf Stream Coach, Inc. Ex. D-202.

ii.     Mr. Robinson lived in a travel trailer manufactured by Gulf Stream. *Id.*

iii.    The travel trailer was located in Louisiana. *Id.*

iv.    Mr. Robinson resided in the trailer unit for 25 months, spending 24 hours per day in the trailer unit. Ex. D-202; Plaintiff Fact Sheet, p. 9.

v.      He reports that the onset of identified symptoms was as soon as he moved into the trailer unit. *Id.* at 4. These symptoms included irritation, burning, and tearing of his eyes, irritation and burning to his nasal membranes, irritation or itching of skin, burning of skin, rashes on skin, drying or scaling of skin, scaling or itching of eyelids, irritation or swelling or eyelids or eye area, headaches, nausea, vomiting, abdominal

pain, diarrhea, difficulty in breathing, wheezing, shortness of breath, persistent cough, tightness of chest, throat irritation, hoarseness, dizziness, unconsciousness, pneumonia, allergies for the first time in his life, asthma attacks for the first time in his life, asthma attacks that are the recurrence of childhood asthma, and allergic contact dermatitis.

vi.   Several of his symptoms, including dizziness, pneumonia, unconsciousness, and diarrhea, are inconsistent with known effects of exposure to formaldehyde at the levels alleged by plaintiffs. *Id.* at 3-4; Deposition of Rayfield Robinson, taken October 2, 2008, at 32, 36. Affidavit of Dr. Golden, pp. 25-26.

vii.   He has never seen the complaint. Ex. D-202; Deposition of Rayfield Robinson, taken October 2, 2008, at 75.

viii.   He has not taken an active role informing the other claimants and is relying on the attorneys to do so. *Id.* at 86-87.

## Simien, Danielle

i.   Danielle Simien is a putative class representative for AmeriCorps Homes. Ex. D-203.

ii.    Ms. Simien lived in a travel trailer manufactured by AmeriCorps Homes. *Id.*

iii.    The travel trailer was located in Louisiana. *Id.*

iv.    She resided in the trailer unit for seven months, spending about 16 hours per day in the trailer unit. Ex. D-203; Plaintiff Fact Sheet p. 9.

v.    She had an onset of the reported symptoms about two months after moving into the trailer. *Id.* at 4. Her symptoms included irritation and tearing of her eyes, irritation, burning, and bleeding to her nasal membranes, irritation or itching of skin, headaches, difficulty in breathing, throat irritation, and allergies for the first time in her life. *Id.* at 3-4.

vi.    Allergies, a symptom reported by Ms. Simien, is inconsistent with known effects of exposure to formaldehyde at the levels alleged by plaintiffs. *Id.*; Affidavit of Dr. Wedner, pp. 12-13.

vii.    Ms. Simien's trailer was damaged and had to be repaired due to air conditioning problems and because it was raining inside the trailer. *Id.* at 10.

### Simien, David, Jr.

i.    David Simien, Jr., is a putative class representative for AmeriCorps Homes. Ex. D-204.

ii.     Ms. Simien lived in a travel trailer manufactured by
AmeriCorps Homes. *Id.*

iii.    The travel trailer was located in Louisiana. *Id.*

iv.     He resided in the trailer unit for seven months,
spending about 16 hours per day in the trailer unit.
Ex. D-204; Plaintiff Fact Sheet p. 9.

v.      He had an onset of the reported symptoms about five
months after moving into the trailer.  *Id.* at 4. His
symptoms included irritation, burning, and tearing of
his eyes, irritation, burning, and bleeding to his nasal
membranes, irritation or itching of skin, scaling or
itching of eyelids, headaches, difficulty in breathing,
wheezing, shortness of breath, persistent cough,
tightness of chest, bronchitis, upper respiratory tract
infections, sinus infections, lung profusion, asthma
attacks that are recurrence of childhood asthma, and
worsening of previous allergies. *Id.* at 3-4.

vi.     Prior to living in the trailer, he had a prior history of
asthma. *Id.* at 4.

vii.    Several of his symptoms, including sinuses, asthma,
and upper respiratory tract infections, are inconsistent
with known effects of exposure to formaldehyde at the

levels alleged by plaintiffs. *Id.* at 3-4; Affidavit of Dr. Golden, pp. 23-28.

viii.   Mr. Simien's trailer was damaged and had to be repaired due to air conditioning problems and because it was raining inside the trailer. *Id.* at 10.

**Simien, David, Sr.**

i.   David Simien, Sr., is a putative class representative for AmeriCorps Homes. Ex. D-205.

ii.   Ms. Simien lived in a travel trailer manufactured by AmeriCorps Homes. *Id.*

iii.   The travel trailer was located in Louisiana. *Id.*

iv.   He resided in the trailer unit for seven months, spending about 16 hours per day in the trailer unit. Ex. D-205; Plaintiff Fact Sheet p. 9.

v.   He only lived in his travel trailer for approximately 6 months, and during that 6 months he lived in another location approximately 3-4 days each week. *Id.* at pp. 9-10.

vi.   He had an onset of the reported symptoms about five months after moving into the trailer. *Id.* at 4. His symptoms included irritation, burning, and tearing of his eyes, burning in his nasal membranes, irritation or itching of skin, drying or scaling of skin, scaling or

itching of eyelids, tingling or swelling of lips or face, headaches, abdominal pain, difficulty in breathing, wheezing, shortness of breath, persistent cough, tightness of chest, bronchitis, throat irritation, hoarseness, laryngitis, upper respiratory tract infections, asthma attacks for first time in his life, dizziness, convulsions or seizures, sinus infection, and worsening of previous allergies. *Id.* at 3-4.

vii.     Prior to living in the trailer, he had a prior history of allergies, asthma, and bronchitis. *Id.* at 4.

viii.    Several of his symptoms, including dizziness, sinuses, abdominal pain, seizures/convulsions, and asthma, are inconsistent with known effects of exposure to formaldehyde at the levels alleged by plaintiffs. *Id.* at 3-4; Affidavit of Dr. Golden, pp. 23-28.

### Sinclair, Shirley

i.       Ms. Sinclair is proposed as a class representative for Keystone RV Company ("Keystone"). Ex. D-206.

ii.      Ms. Sinclair lived in a Keystone travel trailer from May 2006 through December 2007.  The Keystone travel trailer was located in Louisiana. *Id.*

iii.     Ms. Sinclair was 59 years old when she lived in the Keystone travel trailer. *Id.*

iv.    Ms. Sinclair was in the travel trailer for approximately 20 hours per day, on average. *Id.*

v.    Ms. Sinclair's boyfriend smoked around her Keystone travel trailer. *Id.*

vi.    Ms. Sinclair had medical symptoms of anxiety before she moved into her Keystone travel trailer. *Id.*

vii.    Ms. Sinclair reports suffering from symptoms including nausea, vomiting, dizziness, problems she developed while living in the Keystone FEMA unit. *Id.*

viii.    No health care provider has advised Ms. Sinclair that her symptoms are linked to formaldehyde exposure. *Id.*

ix.    Ms. Sinclair canceled her deposition that was noticed for September 16, 2008 and has not rescheduled it. *Id.*

**Smith, Dakyre**

i.    Dakyre Smith, a 4-year-old minor, is proposed as a class representative for Keystone RV Company ("Keystone"). Ex. D-124.

ii.    Dakyre Smith is being represented in this litigation by his mother, Letecheia Acker. *Id.*

iii.  Dakyre Smith lived in a Keystone travel trailer from November, 2005 through April, 2008.  The Keystone travel trailer was located in Mississippi. *Id.*

iv.  Dakyre Smith was 2 years old when he lived in the Keystone travel trailer. *Id.*

v.  Dakyre Smith was in the Keystone travel trailer for approximately 24 hours per day on average.  *Id.*

vi.  Dakyre Smith reports suffering from symptoms including vomiting, bloody vomiting, abdominal pain, diarrhea, and bronchitis he developed while living in a FEMA unit. *Id.*

vii.  Dakyre Smith is not asserting a claim for mental or emotional damages.  *Id.*

viii.  The deposition of Letecheia Acker on behalf of Dakyre Smith was noticed for October 15, 2008, but Ms. Acker did not appear for the deposition.  *Id.*

**Solis, Maragrita**

i.  Maragrita Solis-Ayala is a putative class representative for Silver Creek Homes, Inc.

ii.  She and her husband, Marcelio Ayala who is also a putative class representative, lived in two different FEMA units, the details of which are broken down below.

iii.  She lived in the first unit which was located in Louisiana from November of 2006 through May of 2007; however, she has provided no information as to the manufacturer of that unit.

iv.  Although she does not indicate whether it was a travel trailer or a mobile home, the dimensions of the unit indicate that it was 480 square feet and measured 40X12. Her reason for leaving was "FEMA told us to leave."

v.  She spent 24 hours per day in the unit.

vi.  She lived in the second unit which was also located in Louisiana from May of 2007 to April of 2008. That unit was manufactured by Silver Creek Homes, Inc. Although she indicated that this unit was a travel trailer, it was, in fact, a park model as Silver Creek Homes, Inc. manufactured no travel trailers. Her reason for leaving was again "FEMA told us to leave." She spent 22 hours per day in the unit.

vii.  Her understanding of the illness or disease she has developed or may develop is "formaldehyde exposure."

viii.  She reports that her symptoms began in September of 2007. Those symptoms included irritation to eyes,

burning of eyes, tearing of eyes, irritation to nasal membranes (inside of nose), burning of nasal membranes (inside of nose), bleeding of nasal membranes (inside of nose), irritation or itching of skin, burning of skin, rashes on skin, drying or scaling of skin, scaling or itching of eyelids, irritation or swelling of eyelids or eye area, headaches, nausea, vomiting, abdominal pain, diarrhea, difficulty in breathing, wheezing, shortness of breath, persistent cough, tightness of the chest, bronchitis, throat irritation, laryngitis, upper respiratory tract infections, asthma attacks for the first time in her life, allergies for the first time in her life, dizziness, convulsions or seizures, body aches, memory loss, high blood pressure.

ix.    She indicates her use of a FEMA trailer has NOT worsened a condition she already had in the past.

x.     She reports that she was treated in November of 2007 for high blood pressure, chest and heart pains, and heart surgery.

xi.    No healthcare professional has told her that her alleged illness, disease, or injury is related to living in a FEMA trailer or mobile home.

- 252 -

xii.  She had a chest x-ray in July of 2008 at University Hospital and a chest x-ray in September of 2008 at Ochsner Hospital due to high blood pressure, and she had a CT scan but cannot recall when.

xiii.  She was 63 years old at the time she began residing in the first FEMA unit.

xiv.  She was born in Honduras and is Spanish speaking.

xv.  She reports her weight prior to living in the FEMA as 165 pounds and her current weight is 200 pounds. She is 5'4" in height.

She is not making a claim for lost wages and is reportedly retired.

**Stephens, Cherish**

i.  Cherish Stephens is proposed as a class representative for Dutchmen Manufacturing, Inc. ("Dutchmen"). Ex. D-209.

ii.  Ms. Stephens lived in a Dutchmen travel trailer from February 2006 through October 2007.   The Dutchmen travel trailer was located in Texas.  *Id.*

iii.  Ms. Stephens was 18 years old when she lived in the Dutchmen travel trailer.  *Id.*

iv.  Ms. Stephens was in the travel trailer for approximately 12-16 hours per day, on average.  *Id.*

v.    No health care provider has advised Ms. Stephens that her symptoms are linked to formaldehyde exposure. *Id.*

vi.   Ms. Stephens had a pre-existing condition of skin rashes that pre-dated the time she moved into her Dutchmen travel trailer. *Id.*

vii.  Ms. Stephens is not making a claim for mental distress or emotional damages. *Id.*

viii. Ms. Stephens canceled her deposition that was noticed for October 20, 2008 and has not rescheduled it. *Id.*

**Thomas, Betty**

i.    Betty Thomas is a putative class member for Redman Homes, Inc. Ex. D-212.

ii.   In the pleadings filed with this Court, Ms. Thomas alleges that she lived in a EHU manufactured by "Phillips Products, Inc."; in her first Plaintiff Fact Sheet she states that she lived in a EHU manufactured by "Phillips Production Plant"; in her most recent Plaintiff Fact Sheet she states she lived in a EHU manufactured by "Horton"; in emails authored by plaintiffs' counsel and filed in support of the motion for summary judgment filed by Phillips Products, Inc., she

is said to have lived in a EHU manufactured by Redman. *Id.*

iii.    The EHU occupied by Ms. Thomas was located in Louisiana. *Id.*

iv.    Ms. Thomas was 39 years old when she moved into the EHU and lived in the EHU for two (2) years, from May 2006 to May 2008. *Id.*

v.    Ms. Thomas experienced the following symptoms beginning five (5) months after she moved into the EHU, in October 2006: burning of the eyes, irritation, burning, and bleeding of the nasal membranes, irritation, burning and drying of the skin, irritation of the eye area, tingling or swelling of the lips or face area, headaches, nausea, vomiting, abdominal pain, diarrhea, wheezing, shortness of breath, persistent cough, tightness of the chest, throat irritation, hoarseness, worsening of allergies that she had previous to living in the EHU, dizziness and high blood pressure. *Id.*

vi.    Ms. Thomas resided with a smoker, a nephew who smoked for two years. *Id.*

vii.    Ms. Thomas suffered a stroke in November 2008. *Id.*

viii.   The circumstances of Ms. Thomas' occupancy of the EHU, her living with a smoker, her alleged symptoms while living in the EHU, and post-occupancy stroke are unique, individualized and dissimilar from other putative class members. *Id*.

**Thomas, Christopher rep by Courtney Alfred**

i.   Courtney Alfred is a putative class member in her capacity as the representative of her minor son, Christopher Thomas, for Redman Homes, Inc. Ex. D-127.

ii.   In the pleadings filed with this Court, Ms. Alfred alleges that her minor son, Christopher Thomas lived in a EHU manufactured by "Phillips Products, Inc."; in her first Plaintiff Fact Sheet she states that he lived in a EHU manufactured by "Phillips Production Plant"; in her most recent Plaintiff Fact Sheet she states he lived in a EHU manufactured by "Horton"; in emails authored by plaintiffs' counsel and filed in support of the motion for summary judgment filed by Phillips Products, Inc., his co-occupant, Betty Thomas, is said to have lived in a EHU manufactured by Redman. *Id*.

iii.   The EHU occupied by Christopher Thomas was located in Louisiana. *Id*.

iv.   Christopher Thomas is an infant born March 1, 2006. *Id.*

v.   Christopher Thomas moved into the EHU when he was approximately two (2) months old, in May 2006, and lived the first two (2) years of his life in the EHU, moving out of the EHU in May 2008. *Id.*

vi.   Courtney Alfred claims that Christopher Thomas experienced the following symptoms in 2006: irritation and burning of the eyes, irritation and burning of the nasal membranes, irritation and rashes of the skin, irritation of the eyelids, tingling or swelling of the lips or face area, headaches, nausea, vomiting, abdominal pain, diarrhea, difficulty breathing, wheezing, shortness of breath, persistent cough, tightness of the chest, throat irritation, upper respiratory tract infections, asthma attacks for the first time in his life, worsening of allergies that he had previous to living in the EHU, allergic contact dermatitis, abnormal laboratory test on blood, and ear infections. *Id.*

vii.   Courtney Alfred claims that no one who resided in the EHU with she and Christopher Thomas was a smoker, but putative class representative, Betty

- 257 -

Thomas, who occupied the EHU with Ms. Alfred and Christopher Thomas states that her nephew lived in the same EHU and smoked for two years. *Id.*

viii.   In his co-occupant's Plaintiff Fact Sheet, that of Ms. Betty Thomas, Christopher Thomas is not identified as an occupant of the EHU. *Id.*

ix.   The circumstances of the infant Christopher Thomas's occupancy of the EHU, including his occupancy during the first two (2) years of his life, his living with a smoker and his alleged symptoms while living in the EHU are unique, individualized and dissimilar from other putative class members. *Id.*

x.   Christopher Thomas lived in the same EHU, as did Frank Alfred. (see Courtney Alfred Thomas obo Christopher Thomas PFS and Frank Alfred PFS). *Id.*

xi.   The VIN # for the EHU in which Frank Alfred and Christopher Thomas lived is GE01440372 (see Frank Alfred PFS). *Id.*

**Tracy, Michael rep by Sheila Smith**

i.   Sheila Smith is a putative class member in her capacity as the representative of her father, Michael Tracy, for Homes of Merit, Inc., and Waverlee Homes, Inc. Ex. D-207.

ii.    Michael Tracy lived in two (2) EHUs – a Homes of Merit manufactured home for 7-8 months (from February 2007 until September 2007) and a Waverlee manufactured home for 14-plus months (from September 2007 to the present). *Id.*

iii.    Mr. Tracy lived in both EHUs in Mississippi. *Id.*

iv.    Mr. Tracy was 75 years old when he began living in the EHUs. *Id.*

v.    Mr. Tracy is bedridden and spent nearly all of his time in the EHUs. *Id.*

vi.    Mr. Tracy smoked two (2) packs of cigarettes a day for fifty (50) years before and during his initial occupancy of the Homes of Merit EHU, but stopped smoking before moving into the Waverlee EHU. *Id.*

vii.    Mr. Tracy reports that he suffered the following symptoms while living in the EHUs: irritation, burning and tearing of the eyes, irritation and bleeding of the nasal membranes, skin irritations and rashes, eyelid irritation and itching, headaches, nausea, bloody vomiting, abdominal pain, diarrhea, difficulty breathing, wheezing, shortness of breath, persistent cough, tightness in the chest, throat irritation, hoarseness, pneumonia, upper respiratory tract

infections, pulmonary edema, asthma attacks and allergies for the first time in his life, dizziness, unconsciousness, blood in his urine, low blood pressure, feeling tired and weak, sore muscles, pain in his bones, low back pain, memory loss and fevers. *Id.*

viii.   Mr. Tracy reports that these symptoms first occurred in February 2007, after moving into his first EHU. *Id.*

ix.   Mr. Tracy suffered from preexisting chronic obstructive pulmonary disease, hypertension, congestive heart failure, two heart valve leaks, and possible angina before moving into the EHUs. *Id.*

x.   Mr. Tracy gained weight after moving into the EHUs, increasing his weight from 78 lbs. to 100 lbs. *Id.*

xi.   Sheila Smith states that before her father, Mr. Tracy, moved into the Homes of Merit EHU she warned him about the problems she and her children were having living in the EHU, and his response was that he was "coughing already." *Id.*

xii.   The circumstances of Mr. Tracy's occupancy of EHUs manufactured by Homes of Merit and Waverlee, his long and severe smoking habit, his significant preexisting disease and conditions and his alleged

symptoms experienced while living in the EHUs are unique, individualized and dissimilar from other putative class members. *Id.*

**Maldonado-West, Linda**

    i.    Linda Maldonado-West ("West") is a putative class representative for Palm Harbor Homes, Inc. Ex. D-188.

    ii.    West lived in a Palm Harbor Homes, Inc. manufactured home. *Id.*

    iii.    West's manufactured home was located in Mississippi. *Id.*

    iv.    West was approximately forty-four (44) years old at the time she lived in the manufactured home. *Id.*

    v.    West lived in the manufactured home for approximately fifteen (15) months, spending approximately ten (10) hours in the manufactured home per day. *Id.*

    vi.    Prior to living in the manufactured home, West lived in three (3) different travel trailers provided by FEMA, all manufactured by defendants other than CMH Manufacturing, Inc. West lived in these travel trailers for a combined period of approximately (18) months. *Id.*

vii.    One of the travel trailers provided by FEMA in which West lived prior to living in the manufactured home had a severe mold problem rendering the travel trailer unlivable. *Id.*

viii.   West reports suffering from symptoms immediately upon moving into the housing units provided by FEMA, including irritation of the eyes, irritation and burning of the nasal membranes, irritation or itching of the skin, rashes on the skin, scaling or itching of the eyelids, tingling or swelling of lips or face area, headaches, nausea, abdominal pain, diarrhea, difficulty in breathing, shortness of breath, persistent cough, throat irritation, worsening of allergies, and dizziness. *Id.*

ix.     Two of West's symptoms, worsening of allergies and dizziness, are inconsistent with known effect of exposure to formaldehyde at the levels alleged by plaintiffs. *Id.*

x.      Prior to living in the housing units provided by FEMA, West suffered from several pre-existing medical conditions related to her presently claimed symptoms including allergies, sinus problems, depression, and headaches. *Id.*

xi.  Prior to living in the housing units provided by FEMA, West was diagnosed with bi-polar disorder. *Id.*

xii.  West did not know she was a class representative until a week or two before her deposition (November 4, 2008), is not familiar with the most fundamental pleadings as she had not seen any pleadings until the morning of her deposition, has not had any communications with any class members or putative class members regarding the litigation, and is not aware the specific she is naming as a defendant in the lawsuit. *Id.*

xiii.  The level of formaldehyde to which this putative class representative would have been exposed is vastly different than other putative class representatives and can only be determined by individualized inquiry. *Id.*

## White, Johnny

i.  Johnny White is a putative class representative for Recreation By Design, LLC. Ex. D-216.

ii.  White lived in a travel trailer manufactured by Recreation By Design, LLC. *Id.*

iii.  The travel trailer was located in Louisiana. *See* Plaintiff Fact Sheet, pg. 9. *Id.*

iii.    White was fifty to fifty-one years old at the time he

lived in the travel trailer. *See* Ex. D-216; Plaintiff Fact

Sheet, pgs. 6 and 9.

iv.    White lived in the trailer for approximately one year,

spending about 12 hours inside the trailer per day. *Id.*

at 9.

v.    He reports suffering from several symptoms upon

moving into the trailer.  Those symptoms included

irritation, burning, and tearing of eyes, irritation of

nasal membranes, irritation or itching of skin, rashes

on skin, drying or scaling of skin, irritation or swelling

of eyelids or eye area, tingling or swelling of lips or

face area, headaches, nausea, abdominal pain,

diarrhea, difficulty in breathing, shortness of breath,

persistent cough, throat irritation, hoarseness,

allergies for the first time in his life, and dizziness. *Id.*

at 3-4.

vi.    One of White's reported symptoms, dizziness, is

inconsistent with known effects of exposure to

formaldehyde at the levels alleged by plaintiffs. *Id.* at

3; Affidavit of Dr. Golden, pgs. 25-28.

vii.    White has a history of smoking. *Id.* at 11.

### Williams, George L.

i.     George Williams, a 17-year-old minor, is proposed as a class representative for Monaco Coach Corporation ("Monaco"). Ex. D-219.

ii.    George Williams is being represented in this litigation by Joanette L. Williams. *Id.*

iii.    George Williams lived in a Monaco travel trailer from October, 2005 through September, 2007.  The Monaco travel trailer was located in Louisiana. *Id.*

iv.    George Williams was 14 years old when he lived in the Monaco travel trailer.  *Id.*

v.    George Williams was in the Monaco travel trailer for approximately 10-12 hours per day on average.  *Id.*

vi.    No health care provider has advised George Williams that his symptoms are linked to formaldehyde exposure. *Id.*

vii.    George Williams is not asserting a claim for mental or emotional damages.  *Id.*

viii.    George Williams has a medical history of asthma. This is a pre-existing condition that the plaintiffs do not attribute to formaldehyde exposure. *Id.*

## Williby, Sandra

i.   Sandra Williby is a putative class representative for Gulf Stream Coach, Inc. Ex. D-220.

ii.   Mrs. Williby lived in a travel trailer manufactured by Gulf Stream. *Id.*

iii.   The travel trailer was located in Louisiana. *Id.*

iv.   She resided in the trailer unit for two and one-half years, spending about 20-24 hours per day in the trailer unit.  *See* Ex. D-220; Plaintiff Fact Sheet of Alvin Williby o/b/o Sandra Williby, p. 9.

v.   Her symptoms included irritation, burning, and tearing of her eyes, irritation and burning to her nasal membranes, drying or scaling of skin, headaches, diarrhea, difficulty in breathing, wheezing, shortness of breath, persistent cough, bronchitis, throat irritation, hoarseness, upper respiratory tract infections, pulmonary edema, asthma attacks that are the recurrence of childhood asthma, dizziness, unconsciousness, high blood pressure, lungs full of fluid, loss of oxygen to the brain, and sinus infections.

vi.   Prior to living in the trailer, Mrs. Williby suffered from asthma and high blood pressure. *Id.* at 4; Deposition of Alvin Williby, taken October 9, 2008, at 45.

vii.   Several of her symptoms, including upper respiratory tract infections, pulmonary edema, dizziness, unconsciousness and diarrhea, are inconsistent with known effects of exposure to formaldehyde at the levels alleged by plaintiffs. Ex. D-220; Plaintiff Fact Sheet, pp. 3-4; Affidavit of Dr. Golden, pp. 23-28.

viii.  Mrs. Williby smoked three-fourths of a pack of cigarettes per day for the past 20 years, and she smoked while inside the trailer unit. Ex. D-220; Plaintiff Fact Sheet, pp. 11-12; Deposition of Alvin Williby, taken October 9, 2008, at 46-48.

ix.   Mrs. Williby is deceased and is represented by her former husband, Alvin Williby. Ex. D-220.

xi.   Mr. Williby has no idea of the claims of other class members. Ex. D-220; Deposition of Alvin Williby, taken October 9, 2008, at 93.

xii.   He does not know who the defendants are in the litigation. *Id.* at 95.

xiii.  He is unaware of any litigation deadlines. *Id.* at 7.

xiv.  He has not read nor is he familiar with the Complaint. *Id.* at 100.

xv.   He is unaware of the allegations in the Complaint. *Id.*

## Wilson, Kierra rep by Keena Magee

i. Kierra Wilson is a putative class representative for Forest River. Ex. D-187.

ii. Ms. Wilson claims she lived in a travel trailer manufactured by Forest River. Ex. D-187; Plaintiff Fact Sheet, p. 8.

iii. The travel trailer was located in Mississippi. *Id.* at 9.

iv. She claims she lived in the travel trailer for 1 year 9 months and spent approximately 12-14 hours a day inside the trailer. *Id.*

v. Kierra Wilson is making no claim for past loss of economic support or future lost earnings. *Id.* at 7.

vi. Kierra Wilson, is presently healthy, active and in good health. Ex. D-187; Deposition of Keena Magee, taken October 20, 2008, 46:19-23.

vii. Kierra Wilson only lived sporadically in a temporary housing unit but at all times during her occupancy of the THU had access to, and could have resided in, a site built home on the same property which she was living. *Id.*, 39:1-40:21.

viii. Ms. Wilson reports suffering from irritation to nasal membranes, burning of nasal membranes, bleeding of nasal membranes, irritation or itching of skin, rashes

on skin, drying or scaling of the skin, headaches, abdominal pain, persistent cough, hoarseness, allergies for the first time in her life and sinus infections. Ex. D-187; Plaintiff Fact Sheet, p. 3-4.

ix.    Kierra Wilson has significant pre-existing medical symptoms consistent with her complaints that have subsequently been attributed to exposure to formaldehyde. Ex. D-187; Deposition of Keena Magee, taken October 20, 2008, 47:9-49:5; 63:6-64:15.

x.     Keena Magee has relinquished her parental rights and custodial obligations to her child, Kierra Wilson, and, consequently, cannot stand as her representative.  *Id.*, 55:11-56:16; 93:15-94:5.

xi.    Due to her ongoing disabilities, Keena Magee is not familiar with the pre-existing medical conditions of her daughter and proposed class representative, Kierra Wilson.  *Id.*, 63:6-64:18.

xii.   Keena Magee is not familiar with the most fundamental pleadings in the case and has taken no steps to examine either the *Master Complaint* or any underlying *Complaint* involved in the MDL actions. *Id.*, 11:19-12:10.

xiii.    Other than completing her fact sheet, Keena Magee agrees she has taken no steps towards the prosecution of this action.  *Id.*, 12:3-10.

xiv.    Magee has no knowledge of the defendants named in this action, no knowledge of the other class representatives or the other putative members she purports to represent or even an idea as to how many putative members there may be.  *Id.*, 90:21-25.

xv.    Other than speaking with her immediate family, Magee has had no communications with any other members of the putative class.  *Id.*, 12:11-23.

xvi.    Counsel for Keena Magee indicated that she is unable to travel to New Orleans due to financial hardship and the fact that she does not own a vehicle.  *See* e-mail from Linda Nelson dated September 16, 2008.

### Wood, Kody

i.    Mr. Wood, a minor, is proposed as a class representative for Dutchmen Manufacturing ("Dutchmen"). Ex. D-190.

ii.    Mr. Wood is represented in this litigation by his mother, Adrina McCray. *Id.*

iii.    Mr. Wood only lived in his Dutchmen travel trailer for two months, from June 2007 through August 2007. *Id.*

iv.    Mr. Wood was 5 years old when he lived in the Dutchmen travel trailer. The travel trailer was located in Louisiana. *Id.*

v.    Mr. Wood was in the travel trailer for approximately 15-20 hours per day, on average. *Id.*

vi.    Mr. Wood reports suffering from symptoms including headaches, vomiting, allergies, and asthma he developed while living in the Dutchmen FEMA unit. *Id.*

vii.    Adrina McCray, Mr. Wood's mother, did not appear for her deposition, which was noticed for September 16, 2008. *Id.*

k.    Varied and Numerous Defendants

i.    Plaintiffs name 64 different EHU manufacturers.

ii.    Among the 64 different EHU manufacturers, there exist hundreds of models of trailers and/or mobile homes.

iii.    There exist differences between the various units manufactured by the various defendants, even between units manufactured by the same manufacturer. These differences include unit design

and specifications, unit size, quantity of materials containing formaldehyde, quantity of formaldehyde in those materials, age of unit, storage conditions of construction material used, suppliers used, distribution of products, quality of construction and workmanship, types and quantities of furniture, drapery and carpet, whether residents installed their own furnishings, transportation of EHU, duration of storage of EHU, geographic placement of EHU and manufacturing processes for materials used in the EHU.  *See* Ex. D-229, Zieman Aff., paras. 16-30; Ex. D-223, Fribley Aff., paras. 7, 13; Ex. D-235, Mullet Deposition, p. 75; Ex. D-238, Dr. Smulski Deposition, pp. 70-71, 86-87, 155.

iv.    Gulf Stream Coach, Inc.

(a)    Gulf Stream manufactured travel trailers that FEMA purchased directly from a number of independent dealers who were located throughout the United States.  (Sarvari deposition, pp. 47-8.)

(b)    In addition, FEMA ordered and purchased travel trailers directly from Gulf Stream that were

manufactured specifically for FEMA after Hurricane Katrina.

(c)   The travel trailers manufactured specifically for FEMA were different from travel trailers that FEMA purchased directly from independent dealer's inventory on dealer lots. One difference was that travel trailers FEMA ordered and purchased directly from Gulf Stream were built with a specially designed and constructed frame suitable for railroad transport. (Sarvari deposition, p. 28; pp. 30-31.)

(d)   Gulf Stream purchased wood products, used in the production of its travel trailers, from numerous vendors, and there was regular variation in sourcing and plant destination of such products. (Jim Shea deposition, pp. 26-7.)

(e)   The travel trailers that Gulf Stream manufactured specifically for FEMA were not all alike, among other things, Gulf Stream built and supplied two different floor plan configurations. (Jim Shea deposition, pp. 29-30.)

(f)     Some of the Gulf Stream travel trailers were installed with carpeted living areas then other units had vinyl flooring. (Jim Shea deposition, p. 46.)

(g)     Gulf Stream travel trailers had two types of floor decking supplied by various vendors, some units had a floor of particleboard, and some were of oriented strand board.  (Jim Shea deposition, pp. 46-7.)

(h)     The Gulf Stream travel trailers were manufactured in various plant facilities and in a variety of towns and were produced and shipped throughout the manufacturing year. (Gulf Doc. 0003121-3122.)

(i)     The materials used to manufacture a particular travel trailer depend upon the day and time that the travel trailer was manufactured.  There are numerous combinations of various wood products and other raw materials that could be used and applied to manufacture a travel trailer. (Jim Shea Deposition, pp. 26-8).

(j)     As a result of the extended production period, materials were purchased from numerous

vendors, and some of the same materials were supplied by more than one vendor. The origin of materials differed depending upon the vendor and the date materials were supplied to Gulf Stream. (Jim Shea Deposition, pp. 26-28).

vi.  Forest River

(a)  **There is no purported class representative for each proposed subclass for Forest River.**

(b)  Plaintiffs have identified four proposed class representatives who allegedly occupied Forest River units. Three of the four lived in travel trailers, as opposed to manufactured housing, with one living in both a travel trailer and manufactured home. *See* Plaintiff Fact Sheet of Marcie Beverly, pp. 8, 27.[2] Two are Louisiana plaintiffs, while the remaining two claim occupancy in Alabama and Mississippi, respectively. *See* Plaintiff Fact Sheet of Marcie Beverly, p. 9, Plaintiff Fact Sheet of Hazel Heechung, p. 9, Plaintiff Fact Sheet of Kierra

---

[2] The manufactured home was constructed by an entity unrelated to Forest River. Interestingly, Beverly claims that she experienced different and more severe symptoms while residing in the manufactured housing unit as opposed to the travel trailer. *See* Deposition of Marcie Beverly, taken October 14, 2008, 94:11-19.

Wilson, p. 9 and Plaintiff Fact Sheet of Erin McConnell, p. 9.  There is no class representative claiming occupancy of a Forest River unit in Texas.

(c)     With respect to the claimants from Mississippi and Alabama, neither have representative capacity to prosecute the action on behalf of the minor they purport to represent.  *See* Plaintiff Fact Sheet of Erin McConnell, pp. 2-3 and Deposition of Keena Magee, taken October 20, 2008, 55:11-56:16; 93:15-94:5.  As they have been unable to prove their legal authority to bring a claim on behalf of these purported class representatives, it is defendants' understanding that plaintiffs' steering committee will withdraw them as class representatives.  To date, however, no formal steps have been taken to withdraw these individuals. Accordingly, the manufacturing defendants have included these representatives in the recently filed *Motion to Strike Certain Class Representatives*. Accordingly, should this Court find the *Motion*

*to Strike* well taken, there will be no class representative claiming occupancy of a Forest River unit anywhere other than Louisiana.

(d)     Plaintiffs have also identified a single individual claiming occupancy of a Vanguard unit.  This individual resided in Louisiana.  *See* Plaintiff Fact Sheet of Brunica Jordan, pp. 8-9. Constance Jordan, the purported representative of Brunica Jordan, failed to appear for her properly noticed deposition.  It is defendants' understanding that plaintiffs' steering committee intends to withdraw Ms. Jordan as class representatives.  To date, however, no formal steps have been taken effectuate this withdrawal. Accordingly, the manufacturing defendants have included Ms. Jordan in the recently filed *Motion to Strike Certain Class Representatives*.  Accordingly, should this Court find the *Motion to Strike* well taken, there will be no class representative claiming occupancy of a Vanguard unit whatsoever.

(e)  **Forest River provided formaldehyde warnings in its units**.

(f)  Every Forest River unit produced is accompanied with an owner's manual. See Deposition of Doug Gaeddert p. 104:21-25. The owner's manual for both the FEMA specification units as well as the commercially available units contained a warning with respect to the potential presence for formaldehyde within Forest River's units. *See* Excerpt from Forest River's Owners Manual attached as Exhibit "HH" to Manufacturing Defendants' *Memorandum in Opposition to Class Certification*.

(g)  **Each travel trailer was occupied individually and there are differences in how the units were used, even amongst the purported Forest River class representatives.**

(h)  Each of the purported class representatives claiming occupancy of a Forest River unit resided in such unit for a different period of time:

- 278 -

- Betty White:  2 years.  See Plaintiff Fact Sheet, p. 9.

- Keena Magee:  1 year 9 months.  Plaintiff Fact Sheet, p. 9.

- Constance Jordan:  2 years and 2 months. Plaintiff Fact Sheet, p. 9.

- Hazel Heechung:  1 year and 3 months. Plaintiff Fact Sheet, p. 9.

- Marcie Beverly:  6 months.  Plaintiff Fact Sheet, p. 9.

(i)   The purported class representatives additionally spent varying amounts of time in the temporary housing units in which they claim occupancy:

- Betty White:  15 hours per day.  See Plaintiff Fact Sheet, p. 9.

- Keena Magee:  12-14 hours per day. Plaintiff Fact Sheet, p. 9.

- Constance Jordan:  24 hours per day. Plaintiff Fact Sheet, p. 9.

- Hazel Heechung:  20 hours per day. Plaintiff Fact Sheet, p. 9.

- Marcie Beverly: 22 hours per day.

    Plaintiff Fact Sheet, p. 9.

    (j)    Moreover, data compiled by CDC indicates that the levels of formaldehyde, to the extent any existed, varied from unit to unit, regardless of manufacturer. See CDC Test Data attached as Exhibits "V" & "T" to Manufacturing Defendants' *Memorandum in Opposition to Class Certification*.

vii.    Oak Creek Homes, LP

    (a)    Oak Creek Homes, LP manufactured only manufactured homes. One hundred twenty-five were standard models that were manufactured and sold to FEMA under contract. (Approximately 80 of those units were never occupied and are at FEMA's staging area in Hope, AR.) Oak Creek also manufactured 250 smaller park model manufactured homes under a subcontract with Silver Creek Homes, which Silver Creek sold to FEMA under contract.

    (b)    There is no putative class representative that occupied an Oak Creek Homes manufactured

- 280 -

home in Alabama, Mississippi or Texas. The only putative class representative that occupied an Oak Creek Homes manufactured home (ADA park model) resided in Louisiana.

(c)     The manufactured homes manufactured by Oak Creek Homes' and sold to FEMA were all manufactured in accordance with the HUD Code (24 CFR part 3280), including the Formaldehyde Standard, at one facility in Lancaster, Texas.     As required by the Formaldehyde Standard, only particleboard and plywood certified by the manufacturer meeting the formaldehyde emission controls of 24 CFR 3280.308 were used; the "Important Health Notice" on Formaldehyde Emissions specified in 24 CFR 3280.309 was placed in each home and in the owner's manual for each home; and ventilation improvement options required by 24 CFR 3280.710 were provided.

(d)     For all manufactured homes, a continuous sheet of vinyl flooring was placed over the floor decking before the walls were installed.     All interior walls were sheet rock; no composite

wood paneling was used.  The only composite wood products used in the interior were cabinet doors, MDF finished face frames and Luan paneling for the end panels of cabinets; and wood and MDF moldings used as trim parts such as ceiling cover, baseboards and door casings.

(e)     There were differences in the Heating and Air Conditioning systems between the 125 "standard" model and the 250 smaller "park models."  The heating and air conditioning system used in the park models was similar to the equipment used to heat and cool air in newer hotels; it was self-contained and needed no site installation.  There is a 75 cfm switch-controlled exhaust fan near the furnace, and bathroom and kitchen range area exhaust fans, all of which exhausted outside.  Outside air is drawn into the furnace and air conditioning equipment and mixed with return air and then dispersed through the living area.

viii.     Fleetwood

- 282 -

    (a)    **There is not a purported class representative for each proposed subclass for Fleetwood.**

    (b)    Plaintiffs have identified seven proposed class representatives who allege to have lived in EHUs manufactured by Fleetwood.  All seven lived in travel trailers, as opposed to manufactured housing.  *See* Plaintiff Fact Sheets for Stephen Alfonso, Sylvia Keyes, Sheila Gordon, Nicole Esposito, Sherry Trollinger o/b/o Michael Davis, Elisha Dubuclet o/b/o Timia Dubuclet, and Barbara Dillon at p. 9.   Four of the proposed class representatives are Louisiana plaintiffs.  *See* Plaintiff Fact Sheets for Stephen Alfonso, Nicole Esposito, Elisha Dubuclet o/b/o Timia Dubuclet, and Sheila Gordon at p. 9.  One representative is an Alabama plaintiff.  *See* Plaintiff Fact Sheet for Sylvia Keyes at p. 9.  One representative is a Mississippi plaintiff.  *See* Plaintiff Fact Sheet for Barbara Dillon at p. 9.  And one representative is a Texas plaintiff.  *See* Plaintiff Fact Sheet for Sherry Trollinger o/b/o Michael

Davis at p. 9. However, because Sherry Trollinger has been unable to prove her legal authority to bring a claim on behalf of Michael Davis, an adult, Plaintiffs Steering Committee has indicated its intent to withdraw this class representative. Because no formal steps have been taken to date, the Manufacturing Defendants have included this representative in their recently filed Motion to Strike Certain Class Representatives, Rec. Doc. 920.

(c)    Therefore, there is no legally sufficient class representative for any proposed Texas subclass. There are no identified class representatives for Fleetwood manufactured housing in any state.

(d)    **Fleetwood used HUD compliant wood product in its units.**

(e)    In the late 1970s and early 1980s, prior to the time of the passage of the HUD regulations, and as the wood product manufacturers began to manufacture lower formaldehyde emitting board, it became Fleetwood's policy and practice to purchase the lower formaldehyde

emitting board for use in its units. *See* Ex. 10 to USA's Mem. Resp. to Pls.' Mtn. for Class Certification (Rec. Doc. 914-14), at 13.

(f)     In the early 1980s, even prior to the effect date of the HUD formaldehyde regulations in February 1985, it became Fleetwood's policy and practice to use HUD compliant wood products not only in its manufactured housing, but in its recreational vehicles as well. *See* Ex. 10 to USA's Mem. Resp. to Pls.' Mtn. for Class Certification (Rec. Doc. 914-14), at 14.

(g)     Every EHU manufactured by Fleetwood for sale to Morgan Buildings & Spa, Inc. for resale to FEMA in connections with hurricanes Katrina and Rita complied in every respect with the prescriptive HUD urea formaldehyde wood product regulations. *See* Ex. 10 to USA's Mem. Resp. to Pls.' Mtn. for Class Certification (Rec. Doc. 914-14), at 14.

**(h)     Fleetwood provided formaldehyde warnings in the units.**

(i)     Fleetwood provided formaldehyde warnings by placing them on both the bathroom mirror and

- 285 -

including them in the owner's manual. *See* Exs. CC (Fleetwood Travel Trailer Mirror Warning Label), DD (Fleetwood Travel Trailer Manual Warning), and FF (30(b)(6) Deposition of Fleetwood Enterprises, Inc. by William Farish taken July 16, 2008 at 109:16-110:8) to Mfr'g Defs.' Opp'n to Class Certification.

(j)   **Each unit, even when manufactured by Fleetwood, was occupied individually and there are differences in how the units were used, even among the purported Fleetwood class representatives.**

(k)   The purported class representatives lived in the EHUs for different amounts of times:

- Alfonso:  10 months.  *See* Plaintiff Fact Sheet at 9.

- Dillon:  7 months.  *See* Plaintiff Fact Sheet at 9.

- Dubuclet: 15 months. *See* Plaintiff Fact Sheet at 9.

- Esposito:  17 months.  *See* Plaintiff Fact Sheet at 9.

- Gordon: 27 months. *See* Plaintiff Fact Sheet at 9.

- Keyes:  8 months.  *See* Plaintiff Fact Sheet at 9.

- Trollinger:  20 months.  *See* Plaintiff Fact Sheet at 9.

(l)    The purported class representatives spent varying amounts of time in the EHUs:

- Alfonso:  12-16 hours per day.  *See* Plaintiff Fact Sheet at 9.

- Dillon:  24 hours per day. *See* Plaintiff Fact Sheet at 9.

- Dubuclet: 16-20 hours per day. *See* Plaintiff Fact Sheet at 9.

- Esposito:  24 hours per day.  *See* Plaintiff Fact Sheet at 9.

- Gordon: 16-20 hours per day. *See* Plaintiff Fact Sheet at 9.

- Keyes:  24 hours per day.  *See* Plaintiff Fact Sheet at 9.

- Trollinger:  24 hours per day.  *See* Plaintiff Fact Sheet at 9.

(m)   **Each purported class representative's symptoms, preexisting conditions, medical history, employment history, and lifestyles vary.**

(n)   The purported class representatives for Fleetwood complain of varying symptoms:

- Alfonso:  irritation to eyes, burning of eyes, tearing of eyes, irritation to nasal membranes, burning of nasal membranes, bleeding of nasal membranes, irritation or itching of skin, burning of skin, rashes on skin, drying or scaling of skin, scaling or itching of eyelids, irritation or swelling of eyelids or eye area, tingling or swelling of lips or face area, headaches, nausea, vomiting, difficulty in breathing, wheezing, shortness of breath, persistent cough, throat irritation, upper respiratory tract infections, worsening of allergies that he had previous to living in FEMA trailer, dizziness,

unconsciousness.  Plaintiff Fact Sheet at 3-4.

- Dillon:  irritation to eyes, burning of eyes, tearing of eyes, irritation to nasal membranes, burning of nasal membranes, bleeding of nasal membranes, irritation or itching of skin, burning of skin, rashes on skin, drying or scaling of skin, scaling or itching of eyelids, irritation or swelling of eyelids or eye area, headaches, nausea, abdominal pain, diarrhea, difficulty in breathing, wheezing, shortness of breath, persistent cough, tightness of the chest, bronchitis, throat irritation, hoarseness, laryngitis, upper respiratory tract infections, worsening of allergies and asthma attacks that are recurrent of childhood asthma.  *See* Plaintiff Fact Sheet at 3-4.

- Dubuclet: irritation/burning/tearing eyes, irritation/burning/bleeding nose, irritation or itching of skin, rashes on skin, dry or

scaling of skin, scaling or itching of eyelids, irritation/swelling of eyelids, tingling/swelling lips or face, difficulty in breathing, wheezing, persistent cough, throat irritation, and worsening of allergies. *See* Plaintiff Fact Sheet at 3-4.

- Esposito:  irritation/burning/tearing eyes, irritation/burning/bleeding nose, headaches, nausea, vomiting, abdominal pain, wheezing, shortness of breath, persistent cough, tightness of the chest, bronchitis, throat irritation, hoarseness, laryngitis,  allergies for the first time and dizziness.  *See* Plaintiff Fact Sheet at 3-4.

- Gordon: headaches, dizziness, nausea, stillbirth, nose irritation/burning, irritation/itching of skin, rashes/drying/scaling of skin, scaling/itching of eyelids, shortness of breath, vomiting, persistent cough, and throat irritation. *See* Plaintiff Fact Sheet at 3-4.

- Keyes:  asthma, irritation to eyes and
  nose, burning and bleeding nose,
  difficulty breathing, wheezing, shortness
  of breath, tightness of chest, bronchitis,
  hoarseness.  Plaintiff Fact Sheet at 3-4.

- Trollinger:  irritation to eyes, burning of
  eyes, irritation to nasal membranes,
  rashes on skin, scaling or itching of
  eyelids, irritation or swelling of eyelids or
  eye area, headaches,

- throat irritation, upper respiratory tract
  infections, worsening of allergies,
  Allergic contact dermatitis, blood in urine
  and kidney infection.  Plaintiff Fact
  Sheet at 3-4.

(o)    They also have different preexisting conditions,
medical histories, employment histories, and
lifestyles:

- Alfonso:

- He smoked cigarettes, up to two packs
  per day, for approximately thirty years.
  Deposition of Stephen Alfonso, taken

September 16, 2008, at 61:3-13; 67:21-23.

- He had numerous pre-existing medical conditions related to his presently claimed symptoms, including extreme allergies, facial swelling, rashes, bronchitis, acute sinusitis, trouble breathing and sore throat. *Id.* at 58:20-59:1; 51:8-54:23; 54:24-55:21.

- He complains of several symptoms that have never been associated with formaldehyde exposure, including vomiting, dizziness, and unconsciousness. *See* Plaintiff Fact Sheet, pp. 3-4; Affidavit of Dr. Golden, p. 25.

- Dillon:

- In addition to living in a temporary housing unit provided by FEMA, she lived in a manufactured mobile home post-Katrina. See Deposition of Barbara Dillon, taken on October 7, 2008, at 29:18-30:12.

- She was provided two different temporary housing units by FEMA. She claims both units were manufactured by Fleetwood; however, her FEMA IA file indicates one unit was manufactured by Fleetwood and the other unit was manufactured by Thor. *Id.* at 36:14-25; 39:7-40:18; FEMA 33-000186 – 000187.

- She has pre-existing medical conditions related to her presently claimed symptoms. *See* Deposition of Barbara Dillon, taken on October 7, 2008, at 46:19-22, 61:2-12.

- She is claiming diabetes was caused by residing in a temporary housing unit. *Id.* at 46:11-16.

- She is claiming high blood pressure was caused by residing in a temporary housing unit. *Id.* at 49:15-18.

- Dubuclet: She had severe mildew and rodent/bug problems in her EHU that were treated using various sprays. Deposition of Elisha Dubuclet o/b/o

Timia Dubuclet, taken September 17, 2008, at 38:14-40:18.

- Esposito:

- She had her children tested for "formaldehyde" and attributes her symptoms to their test results.  Notably, she is not making a claim on behalf of her children.  See deposition of Nicole Esposito, taken October 17, 2008, 75:21-76:20; 77:20 – 78:12; 78:22-23; 86:2-10; 117: 9-24.  See also Second Supplemental and Amending Complaint and all underlying Complaints.

- She sought to purchase her temporary housing unit from FEMA.  *Id.* at 71:19-72:2; FEMA  <u>34</u> – <u>000027</u>.

- She had pre-existing medical conditions related to the symptoms she attributes to living in a temporary housing unit, including a persistent cough, dizziness, bronchitis and headaches.  Deposition of Nicole Esposito, taken October 17,

2008, at 53:5-11; 53:17 – 54:3; 54:6-14; 54:21-55:1.

- She is making a claim for mental and/or emotional damages, but was diagnosed with depression prior to residing in a temporary housing unit. *Id.* at 55:10-56:1.

- The symptoms she attributes to living in a temporary housing unit did not surface until weeks after moving into the trailer. *See e.g., id.* at 26:6-27:1; 29:23-30:1; 30:7-13; 30:17-20; 30:25 – 31:3; 32:16-18; 33:17-19.

- She continues to suffer from symptoms she attributes to residing in the temporary housing unit, which are also pre-existing, even though she vacated the unit over a year ago. *Id.* at 9:9-16; 122:15-123:6.

- She complained of mold in her temporary housing unit. *Id.* at 69:25-70:4; 70:22-71:11; FEMA 34-000027.

- Gordon:

- She did not begin to experience symptoms until she had lived in the EHU for a year. Deposition of Shelia Gordon, taken October 14, 2008, at 26:13-18.

- She claims nausea and vomiting as symptoms, but states that they did not occur until she became pregnant. *Id.* at 28:19-29:9.

- She had pre-existing allergies for which she was prescribed an inhaled spray shortly before moving into the EHU. *Id.* at 30:24-31:13.

- She was diagnosed with a persistent cough, which she claims still persists today, before moving into the EHU. *Id.* at 36:9-12.

- After moving out of her EHU, she moved back into her townhome, which had been completely gutted and refinished—including new wooden cabinets. *Id.* at 38:16-40:15.

- She had problems with mold in her EHU. *Id.* at 76:23-77:1.

- FEMA or a FEMA contractor placed plywood on the EHU floors in response to her complaints about the floor sinking in. *Id.* at 78:3-20.

- Keyes:

- In 2000, she had surgery to repair a stab wound to her chest.  Deposition of Sylvia Keyes, taken on September 18, 2008, at 31:1-21.

- She lived in a mobile home for over twenty years prior to living in her THU. *Id.* at 10:17-21.

- She returned to that mobile home after vacating her THU in 2006 and later requested another mobile home from Volunteers of America in 2007.  *Id.* at 13:10-17.

- She had problems with recurring mold and mildew in her mobile home residence.  *Id.* at 70:21-71:4.

- Between 2003 and 2007, she worked on the inside of a ship as a painter.  While inside the ship, she worked near people

doing insulation work, cutting paneling, pipefitters, sandblasting, and welding. *Id.* at 25:6-27:15; 54:9-16.

- Her working conditions on the ship were "very dusty". *Id.* at 53:20-25.

- She had pre-existing sinus conditions before living in her THU. *Id.* at 90:15-18.

- Trollinger:

- As the next of friend or on behalf of Michael Davis, Sherry Trollinger has failed to provide legally sufficient verification that she is either the legal continuing tutor or Court-appointed representative of the mentally incapacitated major, Michael Davis. Furthermore, if Michael Davis has been interdicted, plaintiff has failed to provide legally sufficient verification of the interdiction and curatorship.

- Furthermore, plaintiffs' Steering Committee has informed counsel that they are withdrawing Sherry Trollinger,

as next of friend or on behalf of, Michael

Davis as a class representative.

ix.     Jayco, Inc.

(a)     There are two proposed Plaintiff class

representatives who alleged to have lived in

EHU's manufactured by Jayco, Inc.  Both of

these individuals resided in travel trailers only,

as opposed to manufactured homes or park

models.  See the *Plaintiff Fact Sheets* for

Joycelyn Beasley O/B/O Heavenly Beasley

and Kendra Battie O/B/O D'Asia Battie.  Both

of these plaintiffs are Louisiana residents who

lived in their EHU in Louisiana.  *Id.*  No

proposed Plaintiff class representatives from

Texas, Mississippi or Alabama are alleged to

have lived in an EHU manufactured by Jayco,

Inc.

(b)     Jayco, Inc. did not have any contracts with

FEMA or its contractors for the design,

production or sale of travel trailers in response

to hurricanes Katrina or Rita.