UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                               MDL NO. 07-1873
       FORMALDEHYDE PRODUCTS
       LIABILITY LITIGATION
                                     SECTION "N"  (5)

THIS DOCUMENT RELATES TO
ALL CASES

## ORDER AND REASONS

Before the Court is the Motion for Class Certification (Rec. Doc. 764), filed by all plaintiffs named in any Complaint or Petition whose suits have been consolidated or cumulated herein.  In their memorandum in support of their Motion for Class Certification, Plaintiffs specifically seek certification of the following subclasses:

> a.      Louisiana Subclass:
> All individuals who resided for any length of time in emergency housing units provided by FEMA within the state of Louisiana after Hurricanes Katrina and/or Rita, and who sustained damages recoverable under Louisiana law as a result of exposure to formaldehyde in these units.

> b.      Texas Subclass:
> All individuals who resided for any length of time in emergency housing units provided by FEMA within the state of Texas after Hurricanes Katrina and/or Rita, and who sustained damages recoverable under Texas law as a result of exposure to formaldehyde in these units.

> c.      Mississippi Subclass:
> All individuals who resided for any length of time in emergency housing units provided by FEMA within the state of Mississippi after Hurricanes Katrina and/or Rita, and who sustained damages recoverable under Mississippi law as a result of exposure to formaldehyde in these units.

> d.      Alabama Subclass:
> All individuals who resided for any length of time in emergency housing units provided by FEMA within the state of Alabama after Hurricanes

Katrina and/or Rita, and who sustained damages recoverable under Alabama law as a result of exposure to formaldehyde in these units.

e.    Future Medical Services Subclass:[1]
All individuals who resided for any length of time in emergency housing units provided by FEMA within the states of Louisiana, Texas, Mississippi, and/or Alabama after Hurricanes Katrina and/or Rita, and who are found eligible to participate in a medical services program designed to monitor the physical condition(s) of each such individual for the purpose of ascertaining and responding to diseases caused by, contributed to, or exacerbated by the individual's exposure to formaldehyde while residing in any of the aforementioned units.

f.    Economic Loss Subclass:
All individuals to whom FEMA provided an emergency housing unit within the states of Louisiana, Texas, Mississippi, and Alabama after Hurricanes Katrina and Rita and who sustained economic loss recoverable under each state's law as a result of being provided housing not fit for its ordinary purpose.

---

[1]    In the event that this Court does not certify a class based on all individuals who resided in emergency housing units ("EHUs") in the four states after Hurricanes Katrina and Rita, Plaintiffs request that, pursuant to Rule 23(c)(4), this Court certify a class based upon the future medical services that they claim are needed by all plaintiffs, especially children.  Indeed, in the December 2, 2008 class certification hearing, Plaintiffs proposed the following sub-class definition, which differs from the above:

> Any child who lived in a travel trailer which exceeded the ATSDR minimum risk levels for the correspondent period in which they resided in the trailer, and who manifested any symptom of formaldehyde exposure during the time in which they resided in the trailers.

(See Transcript, December 2, 2008 class certification hearing, p. 146). Still another sub-class definition was provided in Plaintiff's Class Certification Post-Hearing Brief:

> Any minor on whose behalf administrative FTCA remedies have been exhausted, who lived in a travel trailer which exceeded the ATSDR minimum risk level for the correspondent period of residence in the trailer, and who manifested symptoms of formaldehyde exposure during the residency period.

(Rec. Doc. 978, pp. 1-2).  All of the sub-class definitions shall be analyzed the same herein.  The request to certify this sub-class (under any of these three definitions) is properly denied for the general reasons expressed herein.  However, when appropriate, the Court notes additional reasons as to why a specifically-defined sub-class should not be certified.  This Court also reasons that this sub-class should be denied strictly because it is not adequately defined (i.e., one specific definition has not been provided to this Court for consideration; three very different definitions have been provided).

(Rec. Doc. 764-2, pp. 4-5).

An evidentiary hearing was conducted on December 2, 2008. Having considered Plaintiffs' Complaints and Petitions, Plaintiff's motion for class certification, the submissions of the parties, the evidence adduced at the oral hearing, the post-hearing briefs, the record, and the applicable law, the Court is confident that the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3) are not met. For the following reasons, the Plaintiffs' motion for class certification is denied in its entirety.

## I.    BACKGROUND

In this multi-district litigation ("the MDL"), referred to as "In Re: FEMA Trailer Formldehyde Products Liability Litigation," certain named plaintiffs have filed suit against the United States and several Defendant manufacturers, claiming that they either lived or resided along the Gulf Coast of the United States in travel trailers, park models, and manufactured homes provided to them by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita made landfall in August and September of 2005, respectively.   Plaintiffs claim to have been exposed to purportedly high levels of formaldehyde contained in these EHUs, and to have suffered damages as a result. Specifically, the named class representatives have pled the following causes of action against the Manufacturing Defendants: (1) liability under the Louisiana Products Liability Act ("LPLA") for the negligent design, manufacture, and distribution of their products; (2) strict liability under the Mississippi Code Annotated § 11-1-63 for the negligent design, manufacture, and distribution of their products; (3) liability under Alabama's Extended Manufacturer's Doctrine for

the negligent design, manufacture, and distribution of their products; (3) liability under Texas law for the negligent design, manufacture, and distribution of their products; (4) liability for their failure to warn; and (5) liability for their breach of express or implied warranty and/or failure to conform to other express factual representations on which the plaintiffs justifiably relied. (Rec. Doc. 764-2, p. 14).[2] Further, the named class representatives have, on behalf of the putative class, also asserted the following causes of action against the United States/FEMA: liability under Louisiana Civil Code Articles 2316 and 2317.

The Court is presently faced with the issue of whether or not this litigation should be certified and managed as a class action, or, more specifically, as six separate sub-classes.[3] If the Court chooses not to certify a class, then this matter will proceed as a mass joinder in the MDL.

## II. CLASS CERTIFICATION STANDARDS

Rule 23 of the Federal Rules of Civil Procedure governs class actions. The rule requires that the court determine, "at an early practicable time after a person sues or is sued as a class representative," whether the suit meets the class certification requirements such that the case should proceed as a class. See Fed.R.Civ.P. 23(c)(1). A class action is not maintainable as such simply

---

[2]    The Court notes that Plaintiffs do not specify whether causes of action 4 and 5 (relating to alleged failure to warn and alleged breach of express or implied warranty) relate to a specific state. Thus, the Court is left to assume that Plaintiffs intend for these causes of action to apply to all four states.

[3]    Federal Rule of Civil Procedure 23(c)(5) enables district courts to break a class into subclasses "[w]hen appropriate." Each subclass is treated as an individual class, and must independently meet the requirements of Rule 23. Fed.R.Civ.P. 23(c)(5). If each subclass meets Rule 23's requirements, the matter may proceed in a consolidated action even if the matter could not have been certified as a single, all-inclusive class under the rule. See *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (discussing division into subclasses under Rule 23(c)(4)(B), the predecessor to Rule 23(c)(5)).

The Court further notes that in this MDL case, separate sub-classes essentially create separate MDL actions. Whether and to what extent that effects the manageability of this action will be further discussed herein.

because the lawsuit designates the cause as a class action. It is not disputed that the class action proposed in this case must satisfy the requirements for certification outlined in Rule 23(a) and (b).

In ruling upon a motion for class certification, courts treat the substantive allegations contained in the plaintiffs' complaint as true. The issue is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2153 (1974); see also *Burrell v. Crown Central Petroleum, Inc.*, 197 F.R.D. 284, 286 (E.D.Tex.2000); and *In re Lease Oil Antitrust Litigation*, 186 F.R.D. 403, 418 (S.D.Tex.1999). The court may look past the pleadings to the record and any other completed discovery to make a determination as to the class certification issue. See *General Telephone Company v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2371-72 (1982)(noting the district court's duty to conduct a "rigorous analysis" before granting class certification and holding that a decision on class certification remains a fact-specific determination); *Spence v. Glock*, 227 F.3d 308, 310 (5th Cir.2000); and *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996).

At the outset, Rule 23(a) sets forth four threshold requirements which must be met in every type of class action case. See *James v. City of Dallas*, 254 F.3d 551, 569 (5th Cir. 2001). Rule 23(a) requires that a class: (1) be so numerous that joinder of all members is impracticable [numerosity]; (2) have common questions of fact or law [commonality]; (3) have representative parties with typical claims or defenses [typicality]; and (4) have representative parties that will fairly and adequately protect the interests of the proposed class [adequacy]. See Fed.R.Civ.P. 23(a); *Spence v. Glock*, 227 F.3d at 310 n. 4; *James v. City of Dallas*, 254 F.3d at 569. The first two requirements focus on the

characteristics of the class; the second two focus instead on the desired characteristics of the class representatives. The rule is designed "to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *In re Lease Oil Antitrust Litigation*, 186 F.R.D. at 419 (citing *In re General Motors Corp. Pick-Up Truck Fuel Tank Litigation*, 55 F.3d 768, 799 (3rd Cir.1995)).

If the Rule 23(a) criteria are satisfied, the plaintiffs must show that class treatment is appropriate under one of three alternative class categories prescribed by Rule 23(b). See Fed.R.Civ.P. 23(b); *James v. City of Dallas*, 254 F.3d at 568. Plaintiffs explicitly seek certification pursuant to Rule 23(b)(3), which sets out two requirements: predominance and superiority. See Fed.R.Civ.P. 23(b)(3). Subsection (b) provides that:

> (b) A class action may be maintained if Rule 23(a) is satisfied, and if:
> ...
> (3) the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3)(emphasis added).

To succeed under Rule 23(b)(3), Plaintiffs must sufficiently demonstrate both predominance of common class issues and that the class action mechanism is the superior method of adjudicating the case. See *Mullen v. Treasure Chest Casino*, LLC, 186 F.3d 620, 623-24 (5th Cir.1999)(citing

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Together, subsection (a) and (b) requirements insure that a proposed class has "sufficient unity so that absent class members can fairly be bound by decisions of the class representatives." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2246 (1997).

In *Allison v. Citgo Petroleum*, the Fifth Circuit explained the different categories of class actions detailed in Rule 23(b), as follows:

> Under Rule 23, the different categories of class actions, with their different requirements, represent a balance struck in each case between the need and efficiency of a class action and the interests of class members to pursue their claims separately or not at all. The different types of class actions are categorized according to the nature or effect of the relief being sought. The (b)(1) class action encompasses cases in which the defendant is obliged to treat class members alike or where class members are making claims against a fund insufficient to satisfy all claims. The (b)(2) class action, on the other hand, was intended to focus on cases where broad, class-wide injunctive or declaratory relief is necessary. Finally, the (b)(3) class action was intended to dispose of all other cases in which a class action would be "convenient and desirable," including those involving large-scale, complex litigation for money damages. Limiting the different categories of class actions to specific kinds of relief clearly reflects a concern for how the interests of the class member will vary, depending on the nature of the class injury alleged and the nature of the relief sought.

151 F.3d 402, 411-12 (5th Cir.1998).

A class seeking substantial money damages will more likely consist of members with divergent interests. *Id.* at 412. Recognizing that monetary damages are more often related directly to the disparate merits of individual claims, the drafters of the rule saw fit to provide prospective (b)(3) class members the absolute right to notice, to opt out and not be bound by membership in a class. *Id.* Rule 23(b)(3) applies to cases for which a class action would achieve economies of time,

effort, and expense, promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. See *Amchem*, 521 U.S. at 615, 117 S.Ct. at 2246. Whether common issues predominate and the class action is superior requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case. See *Berger v. Compaq Computer Corporation*, 257 F.3d 475, 483 (5th Cir.2001)(" '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." ' *Castano*, 84 F.3d at 744.).

In the instant case, Plaintiffs bear the burden of proving that: (1) the proposed class satisfies all of the elements of Rule 23(a); and (2) the proposed class also satisfies both requirements of Rule 23(b)(3). See *Spence v. Glock*, 227 F.3d at 310; *Berger*, 257 F.3d at 479-80; *Mullen*, 186 F.3d at 623; *Castano*, 84 F.3d at 743-44 (holding that a court cannot rely on assurances of counsel that any problem with predominance or superiority can be overcome). Within the confines of Rule 23, a district court maintains substantial discretion in determining whether to certify a class.[4] See *Smith v. Texaco*, 263 F.3d 394, 403 (5th Cir.2001)(recognizing that the certification inquiry is essentially fact-based and thus the Fifth Circuit defers to the district court's inherent power to manage and control pending litigation, reviewing certification decisions only for abuse of discretion). In the absence of proof of all required elements, the court may not certify a class. See *Berger*, 257 F.3d at 479-80. The Court addresses Plaintiffs' proof as to requisite elements of a Rule 23(b)(3) class action herein.

---

[4]     It should also be noted that the certification of mass tort litigation, such as is the case here, is disfavored in the Fifth Circuit. *Castano*, 84 F.3d at 746.

III. **CLASS CERTIFICATION AS TO CLAIMS AGAINST DEFENDANT MANUFACTURERS - APPLYING, GENERALLY, TO THE PROPOSED CLASS AND ALL SIX PROPOSED SUB-CLASSES**

A. **Rule 23(a) Requirements**

1. **Rule 23(a)(1): Numerosity**

As to numerosity, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members. See *James*, 254 F.3d at 570. Numerically speaking, a class of over one hundred members is sufficient for purposes of numerosity and actual numbers are not determinative of the inquiry. See *Street v. Diamond Offshore Drilling*, 2001 WL 568111, at 4 (E.D.La. May 25, 2001)(Duval, J.)("Although the number of members in a proposed class is not determinative of whether joinder is impracticable, it has been noted that any class consisting of more than forty members 'should raise a presumption that joinder is impracticable.'"). In addition to numbers, factors relevant to the numerosity inquiry include the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. See *Mullen*, 186 F.3d at 624.

Plaintiffs assert that numerosity is easily established as the class of persons that the named Plaintiffs and putative class representatives seek to represent encompasses thousands of individuals. Plaintiffs further argue that there are practical difficulties with joining and managing all of the proposed class member claims in this case as individual, consolidated claims. Plaintiffs note that they are geographically dispersed as a result of Hurricanes Katrina and Rita. In opposition, the Manufacturing Defendants first note that each proposed subclass must independently meet all of the requirements of Rule 23. Fed. R. Civ. Pro. 23(c)(5). Defendants argue that because Plaintiffs have

defined their proposed subclasses so broadly (i.e. all persons who lived in FEMA-provided housing – regardless of manufacturer), the numerosity requirements may not be satisfied. Defendants request that the Court recognize that, at the very least, the Plaintiffs should have proposed a subclass for each manufacturer, thus demonstrating numerosity for each subclass of putative class members as to each manufacturer.

While Plaintiffs have alleged that numerosity exists in general terms (as to the proposed class as a whole[5]), they fail to demonstrate or offer any evidence as to whether numerosity exists as to each proposed sub-class. "The creation of subclasses can compromise the ability to satisfy numerosity ..." Manual for Complex Litigation (Fourth) § 21.23. Because Plaintiffs bear the burden of proving that the requirements of Rule 23 are met, this Court finds that, by not analyzing this requirement by proposed sub-class, Plaintiffs have not met this burden. Based on Plaintiffs' lack of analysis and briefing on this subject, it is unclear whether the numerosity requirement is met for some or all of the proposed sub-classes. Thus, this prerequisite to class certification is not met. However, even if this Court concluded that the numerosity requirement was or could be met, class certification of a general class and the proposed sub-classes would still fail for additional reasons.

## 2. Rule 23(a)(2): Commonality

The test of commonality is not demanding. See *Mullen*, 186 F.3d at 625. The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there

---

[5] The Court notes that numerosity requirement is likely satisfied as to the proposed class, as a whole, as the named Plaintiffs and putative class representatives seek to represent thousands of individuals. However, Plaintiffs have elected to request certification of several sub-classes, each of which has to satisfy the Rule 23 requirements.

is at least one issue whose resolution will affect all or a significant number of the putative class members. *James*, 254 F.3d at 570 (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir.1993) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982)). The fact that some of the plaintiffs may have different claims, or claims that may require individualized analysis, will not defeat commonality. *Id.*

Plaintiffs assert that all of the claims in this MDL "proceed from one of two hurricane disasters, and the resulting displacement and relocation of citizens which resulted in formaldehyde exposure." (Rec. Doc. 764-2, p. 12). Plaintiffs allege that common questions exist relating to why and how formaldehyde exposure occurred, what level of formaldehyde exposure was experienced, and who was exposed to the formaldehyde. Plaintiffs claim that Defendants' conduct or fault in the failure to exercise reasonable care to prevent the exposure of formaldehyde is a central and common issue. Plaintiffs argue that common issues of fact also relate to the scientific nature and behavior of formaldehyde. On the other hand, Defendants argue that there is no commonality because Plaintiffs lived in different EHUs.

The Court agrees with Defendants. While it is true that the test of commonality is not demanding, and the interests and claims of the various plaintiffs need not be identical, this Court finds that this requirement is not satisfied. As Defendants note, this case does not involve one single product that is alleged to have caused Plaintiffs damage. Instead, Plaintiffs have alleged that dozens of different manufacturing defendants have manufactured products or EHUs that have caused them harm. Further, some defendants have manufactured multiple models of EHUs that Plaintiffs claim to have caused them harm.

There are numerous factual issues relating to the EHUs at issue in this case that destroy Plaintiffs' ability to satisfy the commonality requirement for class certification purposes. As Defendants point out:

> Even in two EHUs side by side and of the same model and manufacturer, the chemicals present (i.e. possible presence of formaldehyde and other potential chemical sources of irritation) will be different depending upon the habits of the residents.

(Rec. Doc. 902, p. 71). The question of Defendants' conduct or fault in the failure to exercise reasonable care is clearly not a common issue because there are dozens of defendants who have manufactured numerous different products that have allegedly caused harm to Plaintiffs. In that regard, a determination of fault as to one defendant will not answer the question as to any other defendant. Last, a determination relating to the scientific nature and behavior of formaldehyde is not common as to all class members as the true issue relates to the specific level of formaldehyde that each plaintiff experienced in his/her EHU unit and the resulting symptoms allegedly suffered by that particular plaintiff. Thus, Plaintiffs have not met their burden of showing that the commonality requirement is satisfied. However, similar to the Court's note regarding the numerosity requirement, even if this Court concluded that the commonality requirement was satisfied, class certification of a general class and the proposed sub-classes would still fail for reasons expressed hereinafter.

### 3.     Rule 23(a)(3): Typicality

Rule 23(a)'s "typicality" requirement does not require a complete identity of claims. It focuses on the similarities between the named plaintiffs' legal and remedial theories and the

theories of those whom they purport to represent. *James*, 254 F.3d at 571. The pertinent inquiry is whether the class representatives' claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality. *Id.*

Like commonality, the test of typicality is not demanding. *Id.*; see also *Mullen*, 186 F.3d at 625 (typicality satisfied when plaintiff employees alleged theories of liability for defective air ventilation aboard casino boat under Jones Act and doctrine of unseaworthiness, despite the defendant's argument that each class member's alleged resulting "respiratory illness" may differ). However, to satisfy Rule 23(a)'s typicality requirement, a class representative must be a part of the class and possess the same interest and suffer the same injury as class members. See *General Telephone Co. of Southwest v Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2370 (1982). Courts consider the elements of the cause(s) of action that the class representatives must prove in order to establish the defendants' liability. If those elements are substantially similar to those needed to be proven by other class members, the representative's claims are deemed typical. See Herbert B. Newberg, *Newberg on Class Actions* §3:15, 359-60 (4th ed. 2002).

Plaintiffs acknowledge that the named plaintiffs, individually and on behalf of the putative class and sub-classes, are asserting various legal theories of liability directed at the Manufacturing Defendants' design, manufacture, and distribution of EHUs, which they allege were unreasonably dangerous in normal use and/or foreseeable misuse. The named class representatives specifically have pled the following causes of action against the Manufacturing Defendants: (1) liability under the Louisiana Products Liability Act for the negligent design,

manufacture, and distribution of their products; (2) strict liability under the Mississippi Code Annotated § 11-1-63 for the negligent design, manufacture, and distribution of their products; (3) liability under Alabama's Extended Manufacturer's Doctrine for the negligent design, manufacture, and distribution of their products; (3) liability under Texas law for the negligent design, manufacture, and distribution of their products; (4) liability for their failure to warn; (5) liability for their breach of express or implied warranty and/or failure to conform to other express factual representations on which the plaintiffs justifiably relied.[6] Plaintiffs argue that, as for each of these causes of action, the claims asserted by the class representatives are typical of other class member claims under these theories of liability.

For example, Plaintiffs explain that Corey Davis ("Davis"), a class representative, claims to have suffered shortness of breath, irritation of the eyes, headaches, dizziness, coughing, nosebleeds every other night and vomiting once or twice a week, from his nearly two-year residency in an EHU. (Exhibit A to Rec. Doc. 764, pp. 20, 57-59). Rayfield Robinson ("Robinson"), a class representative, claims to have suffered watery eyes, breathing problems, vomiting problems and pains in his stomach during his 25-month residency in an EHU. (Exhibit B to Rec. Doc. 764, p. 31). Robinson asserts that he continues to suffer vomiting, watery eyes, and diarrhea, despite having left the EHU nearly seven months ago. (Exhibit B to Rec. Doc. 764, p. 36). Shane Lee Baker ("Baker"), a minor who resided in an EHU for seven months, allegedly suffered irritation of nasal membranes, nausea, vomiting, skin rashes, abdominal pain, and

_____

[6]   Some of these legal issues were the subject of a motion to dismiss that was adjudicated by the undersigned on December 12, 2008 (Rec. Doc. 984).

breathing difficulty. (Exhibit C to Rec. Doc. 764, pp. 89-91, 98). Heavenly Beasley ("Beasley"), a minor who resided in an EHU from October 2005 to April 2008, allegedly suffered troubled breathing, ear infections, and stomach problems. (Exhibit D to Rec. Doc. 764, p. 47, 57). Beasley has been diagnosed with and continues to be treated for bronchitis and upper respiratory infection. (Exhibit D to Rec. Doc. 764, p. 51). Plaintiffs argue that the claims asserted by Davis, Robinson, Baker, and Beasley are typical and representative of the claims asserted by the class as a whole, arise from the same course of conduct, and share the same legal theory as do the claims of the putative class. Plaintiffs allege that the class representatives carry no burden of proof unique to their liability cases, and will continue to advance the interests of all the class members.

In opposition, Defendants argue that the class representatives' claims are not typical with regard to either their theories of liability or the injuries claimed. First, as for the causes of action pled against the Manufacturing Defendants, Defendants note that varying state laws governing manufacturers' liability preclude a finding of typicality - at least in regards to the claims for breach of express or implied warranty and/or failure to conform to other express factual representations on which the plaintiffs justifiably relied.[7] As a result, class members in one state cannot obtain the same result and adequately represent the interests of class members in another state.

Further, Defendants assert that Plaintiffs fail to demonstrate typicality in terms of class

---

[7]   This is evident in the Court's Order and Reasons, dated December 12, 2008 (Rec. Doc. 984), wherein the Court analyzed these claims in considerable detail according to the laws of the applicable states.

injuries. While Plaintiffs' memorandum in support of their motion for class certification

mentions only four of the numerous proposed class representatives and discusses several

symptoms which some or all of them claim to have experienced based on their exposure to

formaldehyde, Defendants note that the remaining proposed class representatives claim a myriad

of other symptoms and conditions, including unconsciousness, convulsions, nephritis, and

hypothermia. Indeed, the Plaintiff Fact Sheet ("PFS"),which was approved by this Court,

designates a total of 47 alleged formaldehyde-related symptoms, ranging from low blood

pressure to miscarriage and stillbirth. (Exhibit A to Rec. Doc. 902). Defendants essentially argue

that the Plaintiffs will have diverse medical histories, symptoms, and alleged exposures. On that

note, Defendants add that typicality is "not satisfied where plaintiffs' claims and defenses will be

dominated by individual evidence." *Welch v. Atlas Roofing Corp.*, 2007 WL 3245444 at *3-4

(E.D. La. Nov. 2, 2007) (citing *Martin v. Home Depot U.S.A. Inc.*, 225 F.R.D. 198, 201 (W.D.

Tex. 2004)). Defendants further contend that Plaintiffs' varying medical histories, symptoms,

and exposures will all affect the damages sought and allegedly owed to each, and the only

meaningful evaluation of liability and damages would necessarily depend on an individualized

inquiry as for each Plaintiff.[8]

For similar reasons to those espoused by Judge Fallon in *In re Vioxx Products Liability*

*Litigation,* 239 F.R.D. 450, 459-60 (MDL No. 1657 2006), this Court finds that because the

---

[8]     Because the Court ultimately determines that the numerous and varying fact issues applicable to each Plaintiff and proposed class representative preclude class certification, it does not address the individualized damages issues. However, because the varying entitlement to and extent of damages sought by each Plaintiff and proposed class representative differs significantly depending on a plethora of different circumstances, such analysis would only strengthen and confirm the Court's decision to deny class certification in this litigation. See *Kuhn v. Skyline Corp.*, 1984 WL 62775 (M.D. Pa. 1984).

instant MDL involves factual variations as to each Plaintiff and proposed class representative

which spawn individual issues relating to injury and causation as to each individual, the class

representatives' claims are not typical of the class. Each Plaintiffs' claims and alleged injuries

will require an examination of individual evidence, precluding the satisfaction of the typicality

requirement for class certification. As mentioned briefly above, each individual has and is

affected by his/her own discrete medical history[9], has experienced different symptoms and

varying degrees of manifestation of those symptoms, and has experienced varying environmental

exposures.[10] Even Plaintiffs admit that a child's lungs react differently to formaldehyde

exposure than an adult's lungs. Plaintiffs' counsel also admits that temperature, humidity, and

ventilation affect and contribute to differences in formaldehyde levels in EHUs. (See Transcript,

December 2, 2008 class certification hearing, p. 148-150). Further, class representatives did not

all reside in one type of EHU, manufactured by one specific manufacturer, manufactured at the

same time, and made up of the same component parts. Indeed, class representatives resided in

EHUs of varying configurations, manufactured by distinct entities, at different times.[11]

---

[9]      For instance, some individuals have pre-existing medical conditions, like allergies or asthma. Others are or were cigarette users, for varying lengths of time, both before and/or during the time they occupied the EHU. These issues render an individualized causation analysis necessary.

[10]      By environmental exposures, the Court refers to when each Plaintiff lived in an EHU, the weather and temperature conditions while each Plaintiff lived in an EHU, the length of time each Plaintiff lived in an EHU, etc. Other individuals claim to have been exposed to other potentially-harmful chemicals and substances, in addition to formaldehyde. For instance, some plaintiffs complained of exposure to mold while residing in EHUs, while others had been exposed to mold and suffered breathing problems prior to moving into the EHUs. All such factors render a determination of this on a class-wide basis inappropriate.

[11]      Defendants point out that one purported class representative lived in *multiple* EHUs and complained of *differing symptoms in each EHU*. (Exhibit A-15 to Rec. Doc. 902).

Thus, for all of these reasons, the Court concludes that numerous variables, relating to both legal and factual distinctions, create a myriad of considerations in each individual's case. Plaintiffs have therefore failed to demonstrate that their designated representatives are typical of the overall putative class. Similar to the Court's note regarding the numerosity and commonality requirements, even if this Court concluded that the typicality requirement was satisfied, class certification of a general class and the proposed sub-classes would still fail for reasons expressed hereinafter.

### 4. Rule 23(a)(4): Adequacy

The fourth and final requirement of Rule 23(a) is that the district court must find that the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). Rule 23(a)'s adequacy requirement encompasses consideration of the class representatives, their counsel, and the relationship between the two. Adequacy of the representation of the class cannot be presumed. See *Berger*, 257 F.3d at 479-80. The adequacy requirement contemplates the absence of antagonistic or conflicting interests, and a sharing of interests between class representatives and absentees. As it should, this Court has assumed for the purposes of this motion for class certification that the injuries alleged by putative class plaintiffs could have and did indeed occur.

The Fifth Circuit in *Berger* emphasized that the party seeking certification bears the burden of establishing that all requirements of Rule 23(a) have been satisfied, and it is error to presume the adequacy of the putative representatives in the absence of specific proof otherwise. *Id.* at 479. The *Berger* Court observed:

> To the contrary, we have described "[t]he adequacy requirement [as one that] mandates an inquiry into ... the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of the absentees." Likewise, ... "it must appear that the representative[s] will vigorously prosecute the interests of the class through qualified counsel." Both understandings-even accepting the variance between them-require the class representatives to possess a sufficient level of knowledge and understanding to be capable of "controlling" or "prosecuting" the litigation.

*Id.* at 482-83 (citations omitted).  Class action lawsuits are intended to serve as a vehicle for capable and committed advocates to pursue the goals of the class members through counsel, not for capable, committed counsel to pursue their own goals through those class members.  *Berger*, 257 F.3d at 484.

Plaintiffs note that absence of conflict and assurance of vigorous prosecution are two factors that are recognized as the basic guidelines for this prerequisite to class certification. See Newberg, § 3:22, at 409.  In support of their assertion that the adequacy requirement is met, Plaintiffs allege that the interests of their representatives do not conflict with the interests of the members of the class they seek to represent, as all seek similar relief. In that regard, Plaintiffs explain that all are individuals who were injured as a result of exposure to formaldehyde from EHUs made by the Manufacturing Defendants, and all present claims for personal injury and property damage. They also assert that the proposed class representatives have a strong interest in prosecuting this action and will diligently prosecute it on behalf of themselves and all other class members.

In opposition, Defendants contend that the putative class representatives do not adequately represent the interests of the class members. For instance, Defendants claim that

several putative representatives have expressed an unwillingness to take an active role in the litigation.[12] Some have failed to appear at their noticed class depositions. (Exhibits A-65 and A-66 to Rec. Doc. 902). Other proposed class representatives believe that they have no responsibility to other class members. (Exhibits A-3, A-26, and A-47 to Rec. Doc. 902). Still other proposed representatives lack knowledge of how many members there are and have delegated the task of informing potential members about the litigation to their attorneys. (Exhibits A-16 and A-17 to Rec. Doc. 902). One representative has stated that he does not want to be a representative. (Exhibit A-73 to Rec. Doc. 902). Defendants claim that these examples depict a group that is uninformed, disinterested, and lackadaisical when it comes to participating in this case and protecting the interests of absent class members. This evidence is indeed a concern of the undersigned.

As for adequacy as to counsel, Defendants argue that class counsel has sought to achieve its own goals, all the while leaving by the wayside the actual representatives, who are, thus, unable to represent adequately the interests of the class members. However, as for the adequacy *of counsel* requirement, this Court finds that it is satisfied. Notably, the undersigned has personally appointed counsel to serve on the Plaintiffs' Steering Committee ("PSC"), which is charged with coordinating the representation of all plaintiffs. The Court went through great lengths to appoint only experienced, capable, and worthy attorneys and firms to the PSC. The

---

[12]     Some of the individuals referenced by Defendants in support of these arguments have, since, been stricken by the Court from serving as class representatives in this matter. (See Rec. Doc. 948). To this extent, the Court only references those individuals mentioned by Defendants who have not been stricken from serving as class representatives.

Court's selection of them demonstrates its confidence in the adequacy of these attorneys. Further, the Court finds that Plaintiffs' counsel, working in conjunction with the PSC, include experienced attorneys who have pursued, and will continue to pursue, the interests of all potential claimants.[13] It is also worth noting that the PSC consists of counsel who regularly engage in major complex litigation and have had extensive experience in class action suits involving complex litigation similar in size, scope and complexity to the present case.

However, despite having adequacy of counsel, the Court finds that Plaintiffs have failed in demonstrating the adequacy *of the proposed class representatives*. As Defendants point out, the varying nature of the class members' claims can act as a bar to adequacy. When the claims of class members raise significantly different factual and legal issues, Plaintiffs have difficulty demonstrating that the proposed representatives fulfill the adequacy requirement. See *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 618 (3rd Cir. 1996). The adequacy requirement to class certification is closely tied to the typicality prerequisite. Because the Court finds that the proposed class representatives do not have claims typical of class members' claims, the representatives cannot be said to adequately represent those same members. See *In re Vioxx*, 239 F.R.D. at 460 ("the adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members"). Here, for the same reasons the typicality

---

[13] Thus far, they have worked together to prepare pleadings and motions, propound and respond to discovery, retain experts, conduct extensive testing of EHUs, evaluate the claims presented, conduct an extensive written claims process, interact with the Defendants and their counsel to insure the protection and preservation of evidence, participate in court appearances, and conduct legal research into the numerous claims and defenses presented in this action.

requirement fails, the adequacy requirement is left unsatisfied.

Because the Court has concluded that the Rule 23(a) criteria are not satisfied for the proposed class and sub-classes, generally, the inquiry could legitimately end here and class certification could be denied on that basis alone. However, the Court will continue with its analysis under Rule 23(b)(3) to show that, even if Plaintiffs had demonstrated that all the Rule 23(a) criteria were satisfied, class certification would still be appropriately denied.

### B.    Rule 23(b)(3) Requirements

In *Castano v. American Tobacco Company*, 84 F.3d 734 (5th Cir.1996), the Fifth Circuit made it clear that deciding whether common issues predominate and whether the class action is the superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case. *Castano*, 84 F.3d at 744. Rule 23(b)(3)'s express language indicates that for a class or sub-classes to be certified under 23(b)(3), there must not simply be some commonality of issues among claims. Rather the issues that are common must predominate over individual issues.

### 1.    Predominance

Plaintiffs allege that certain common issues of fact and law[14] predominate over individual issues such as causation and quantum. Plaintiffs claim to "plead the same legal and remedial theories under their respective subclass' state law with respect to the Defendants' conduct"

---

[14]    Plaintiffs argue that all of the common questions listed by them (and summarized herein) constitute a "significant part" of each individual case, and form the common predicate for each claimant's proof of individual harm and recovery. Plaintiffs contend that class action management of these issues will assure fairness and uniformity, whereas individual proceedings would invite inconsistent results, unnecessary repetition, and the waste of judicial and litigant resources.

which they claim will assure "class-wide proof and resolution of all significant, common elements of compensatory damage recovery, save for individual causation." (Rec. Doc. 764-2, p. 17).

As for the proposed class and all six of the proposed sub-classes, Plaintiffs seek recovery from all manufacturers on behalf of any individual who resided for any length of time in an EHU provided by FEMA. Defendants complain that this definition is improper as each plaintiff could only reside in one manufacturer's EHU at a time, and no manufacturer can or should be held liable for a product it did not manufacture. Defendants also note that significant differences[15] exist in these EHUs, from manufacturer to manufacturer and even from unit to unit (even if manufactured by the same company).

In addition to the differences existing as to the EHUs themselves, Defendants assert that there are significant and notable variations among the Plaintiffs that affect whether, and the extent to which, any plaintiff was exposed to formaldehyde and experienced health effects resulting from that exposure. (See Rec. Doc. 902, pp. 14-26). Plaintiffs vary by gender, age, personal medical history, family medical history, school, work environments, social environments, and personal lifestyle patterns (for example, whether they are pet owners, smokers, or both). Defendants argue that the extent to which Plaintiffs were exposed to formaldehyde and developed any health effects from that exposure varies according to which

---

[15] Such significant differences include, for example, the specifications for the EHUs, the quantities of any materials containing formaldehyde that make up the component parts of those EHUs, and how and when such EHUs were manufactured. (See Rec. Doc. 902, pp. 26-29).

EHU the plaintiff lived in; the particular type of EHU, the manufacturer of the EHU, how the EHU was assembled, where the EHU was fabricated, as well as where and how each EHU was installed for residency. Great variability also exists in the amount of time each plaintiff occupied his or her EHU and the number of hours per day each Plaintiff occupied the EHU.

This Court concludes that the predominance requirement is not satisfied for the proposed class or any of the proposed sub-classes. Indeed, the predominance test is "far more demanding" than the commonality test (which this Court has previously concluded is also not satisfied). *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir.2005), citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 2249-50, 138 L.Ed.2d 689 (1997). "To predominate, common issues must form a significant part of individual cases." *In re Vioxx 2006*, 239 F.R.D. at 460, citing *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 626 (5th Cir.1999).

Judge Fallon denied class certification in the *In re Vioxx* MDL, determining that the issues among the proposed class members were so distinct and different, even though that case involved a single product from a single drug-maker, manufactured under controlled laboratory conditions, with a known prescribed dosage for each plaintiff, and with alleged damages essentially limited to heart attack and stroke. 239 F.R.D. at 463. This case provides far more reasons to deny class certification. The instant MDL involves hundreds of models of trailers, produced by dozens of different manufacturers. Moreover, even EHUs of the same make and model, made by the same manufacturer, can differ in regards to what components parts were

used and when the EHU was manufactured.[16]  Further complicating this aspect of these claims, and illustrating the difficulty of finding predominant common legal and factual issues, is that exposure to formaldehyde (in certain levels) is fairly common in today's society and is produced by the human body itself.  (See Exhibit S-1 to Rec. Doc. 902, section 3; Exhibit S-2 to Rec. Doc. 902, p. 76). Indeed, the Fifth Circuit has previously explained:

> Formaldehyde is a colorless gas composed of carbon, hydrogen and oxygen. It is present in every cell in the human body and in the atmosphere. Formaldehyde has been in widespread commercial use for almost a century … according to the industry, formaldehyde is a component of products aggregating 8% of this country's Gross National Product .... Such products as shampoo, toothpaste, cosmetics, and paper towels also contain formaldehyde.

*Gulf South Insulation v. U.S. Consumer Products Safety Commission*, 701 F.2d 1137, 1140 (5th Cir. 1983).

As noted previously on page 24 of this opinion, there are many material factual distinctions (relating to age, gender, etc.) that make each Plaintiff unique.  Also explained previously on page 24, each Plaintiffs' potential formaldehyde exposure and any resulting health effects vary according to several different factors.  Each Plaintiff's habits vary greatly, resulting in the necessity for individualized inquiries delving into the use of heating and air conditioning, and also window or door use (important to how ventilated a particular EHU was). Some Plaintiffs are exposed to sources of formaldehyde and eye/nose/throat irritants unrelated to that

---

[16]     Even Plaintiffs' own wood-products expert, Dr. Stephen Smulski, admitted, "[C]ommon sense tells me that each manufacturer produces a different product by a different method using different workers in different plants, different raw materials, different models, different brands, et cetera." (Exhibit Q to Rec. Doc. 902, p. 70). Also, another of Plaintiffs' experts, Dr. Judd Shellito, recognized that every individual reacts differently to formaldehyde and must be examined to determine which symptoms result from exposure to formaldehyde as opposed to one of the many other potential causes.  (Exhibit P to Rec. Doc. 902, p. 33).

said to be found in the EHUs (resulting from contact with air pollution, pesticides, pet dander, cleaning agents, mold, bacteria, and viruses). Many Plaintiffs are current and/or past smokers, or lived in EHUs with smokers. All of the above are individual issues that render analysis on a class-wide basis utterly impossible.

Further, as for the injuries to the Plaintiffs themselves, each one has suffered an individual physical injury that is specific to that particular individual, precluding the predominance of issues relating to the Plaintiffs themselves. Also, the personal injury claims among Plaintiffs vary greatly.[17] Considering the foregoing, this Court concludes that Plaintiffs' claims will, to a significant degree, be individualized with respect to causation and will include individual issues of exposure, susceptibility to illness, and types of physical injuries. See *Steering Committee v. Exxon Mobil Corp.,* 461 F.3d 598, 602 (5th Cir. 2006). As the district court properly noted in the *Steering Committee* case, "one set of operative facts would not establish liability and … the end result would be a series of individual mini-trials which the predominance requirement is intended to prevent." *Id.*

As already noted herein, the EHUs provided by FEMA and manufactured by the numerous individual Manufacturing Defendants involved in this case vary greatly. Specifically, they vary in manufacturer, make, and model. Significant differences exist from manufacturer to manufacturer and from unit to unit (even with regard to the same manufacturer) in the design,

---

[17]    Personal injury claims among Plaintiffs vary from alleged present injury to fear of future injury, from chronic disease to irritation, from new injury to exacerbation of a preexisting condition or injury, from physical injury to emotional distress. Others are also seeking purely economic damages in the form of medical expenses, lost wages, and under a theory of entitlement to lost housing subsidy.

manufacture, and production of these EHUs. Such differences include but are not limited to the types, quantities, age, and storage conditions of construction materials used to make up the EHU,[18] the methods used to construct the EHU,[19] the quality of construction of the EHU,[20] the types and quantities of components containing formaldehyde, whether the EHU residents added or installed their own formaldehyde-emitting materials (i.e., furniture, carpets, drapery or fabrics),[21] the transportation of the EHU from the plant to the resident,[22] the installation of the EHU,[23] and the geographic placement of the EHU.[24] Because of the above variables, formaldehyde levels vary greatly from EHU to EHU, resulting in the need for individualized inquiries on a trailer-by-trailer basis. Further, the individual variables affecting each Plaintiff (discussed above) make every plaintiff's exposure to formaldehyde in his or her particular EHU unique.

Thus, for all the reason explained above, this Court concludes that Plaintiffs have failed to show that the predominance requirement is met for Rule 23(b)(3) purposes for the proposed class and sub-classes, generally.

## 2. Superiority

---

[18] Exhibit D to Rec. Doc. 902, ¶ 13; Exhibit Q to Rec. Doc. 902, , pp. 51-51, 58.

[19] Exhibit I to Rec. Doc. 902, ¶¶ 16-20.

[20] *Id.* at ¶21.

[21] *Id.* at ¶23.

[22] *Id.* at ¶25.

[23] Exhibit I to Rec. Doc. 902, ¶26

[24] Id. at ¶¶ 27- 29; see also Exhibit Q to Rec. Doc. 902, pp. 86-87.

Rule 23(b)(3) requires that a district court find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This rule explains that matters pertinent to these findings include: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation in the particular forum; and (4) the likely difficulties in managing a class action. *Id*. Plaintiffs claim that the above factors weigh in favor of class certification. Plaintiffs assert that, here, there is no foreseeable "interest" on behalf of a significant number of class members to individually prosecute their claims. Next, Plaintiffs contend that all cases filed with respect to this case have been filed in Louisiana or neighboring states and have been consolidated before this Court in the instant MDL, eliminating the need to consider both the extent and nature of the litigation already commenced and the desirability of concentrating Plaintiffs' claims in this forum. Finally, Plaintiffs argue that any "management" difficulties that this Court should encounter in the handling of this litigation as a class action will be minimal. In that regard, Plaintiffs assert that the class and subclasses "are easily discernible, and common issues of law and fact predominate with respect to this common disaster." (Rec. Doc. 764-2, p. 21).

Defendants contend that litigating an individual case would be simple and could be narrowly focused on a specific model made by a specific manufacturer, resulting in a specific exposure, and concentrating on the unique symptoms allegedly experienced by the particular plaintiff. Defendants also note that determinations of specific causation and damages for any

plaintiff would require a trial specific to only that plaintiff. Further, they claim that the question

of causation would need to be answered for determination of the class definition. In other words,

these determinations could not be made simply by trying the claims of the class representatives.

Next, Defendants assert that the class action Plaintiffs propose cannot be manageably

tried. Defendants note that there are numerous class representatives (a few of whom were

stricken after Defendants filed their opposition (See Rec. Doc. 948)), with each of them expected

to testify and offer evidence on their own behalf. Currently, there are dozens of Manufacturing

Defendants (some of which were dismissed without prejudice after Defendants filed their

opposition). Defendants reason that each of those Manufacturing Defendants has the right to

defend itself and, in that regard, to offer its own witnesses to refute Plaintiffs' claims.

Defendants specifically note that ambient formaldehyde levels vary greatly from manufacturer to

manufacturer. (Exhibit I to Rec. Doc. 902,¶¶ 11, 14-22). When considered together, Defendants

argue that jurors may attribute damaging evidence as to one manufacturer against another

manufacturer.

Also, Defendants argue that another problem with superiority, and specifically a problem

with managing this action, is the fact that federal law will govern several of Plaintiffs' claims

while state law will govern the others.[25] Defendants claim serious management problems will

result when federal law standards will have to be used for some Plaintiffs while and state law

will have to be analyzed for others.

---

[25] This Court has already recognized that HUD's standards govern the manufacture of mobile homes, while travel trailers and park models are exempt from HUD construction standards. (Rec. Doc. 717, p. 4).

Last, Defendants assert that the Seventh Amendment[26] presents major obstacles to the manageability of this MDL as a class action. Defendants note that the Fifth Circuit has recognized the limitations that arise in the handling of a class action because of the Seventh Amendment "right of a litigant to have only one jury pass on a common issue of fact." *State of Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309, 318 (5th Cir. 1978). Regarding the Seventh Amendment, the Fifth Circuit has explained:

> Another factor weighing heavily in favor of individual trials is the risk that in order to make this class action manageable, the court will be forced to bifurcate issues in violation of the Seventh Amendment. This class action is permeated with individual issues, such as proximate causation, comparative negligence, reliance, and compensatory damages. In order to manage so many individual issues, the district court proposed to empanel a class jury to adjudicate common issues. A second jury, or a number of 'second' juries, will pass on the individual issues, either on a case-by-case basis or through group trials of individual plaintiffs. The Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues.

*Castano*, 84 F.3d at 750.

Considering these arguments, this Court concludes that Plaintiffs have failed in their burden of demonstrating that the superiority requirement is met. Here, the predominance of the individual issues present and sufficiently explained herein detract from the superiority of the class action device in this MDL. As Judge Fallon determined in the *Vioxx* MDL, "the difficulties

---

[26] The Seventh Amendment states:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

in class management overwhelm any efficiencies that could be secured through classwide adjudication. *In re Vioxx*, 239 F.R.D. at 463. As argued by Defendants, the variations in law (state versus federal and state-to-state), the dozens of class representatives who would likely testify and offer evidence on their own behalf, the dozens of Manufacturing Defendants who would likely want to defend themselves at trial by offering their own witnesses to refute Plaintiffs' claims, and the resulting potential for juror confusion based on all of the above prevent this Court from concluding that a class action approach would be superior to individual litigation this MDL.

While these general reasons are sufficient to defeat class certification of the proposed class and all six sub-classes, the Court, in an effort to be completely inclusive, will briefly address the separate sub-classes in an attempt to provide additional reasons why class certification is inappropriate as to each sub-class.

## IV. CLASS CERTIFICATION AS TO CLAIMS AGAINST DEFENDANT MANUFACTURERS - APPLYING SPECIFICALLY TO STATE-SPECIFIC SUB-CLASSES

In addition to all the general reasons set forth herein for why class certification is inappropriate, the Court offers the following additional analysis as to why certification of the state-specific sub-classes is inappropriate. First, the predominance requirement is not met. While Plaintiffs attempt to present significant class-wide issues of fact and law for each of the four applicable states (i.e., Louisiana, Mississippi, Texas, and Alabama),[27] Defendants note that

---

[27] As for the Louisiana sub-class, Plaintiffs assert that most significant class-wide issues of fact and law include (1) whether the Manufacturing Defendants designed and made EHUs that emitted dangerous levels of formaldehyde; (2) whether the Manufacturing Defendants' EHUs were unreasonably dangerous in normal use and/or

Plaintiffs are seeking damages for alleged personal injuries, and the very nature of a personal injury case is that it is *personal* (i.e., the alleged injury varies from person to person, as well as what caused or contributed to the alleged injury). This Court agrees with Defendants and concludes that any member of a proposed class is an inadequate representative of any other member because individualized issues (discussed previously herein on pp. 23-27) predominate over common issues.[28]

---

reasonably anticipated misuse; (3) whether the Manufacturing Defendants failed to conform to the express warranties made regarding the fitness of their respective products; (4) whether the Manufacturing Defendants failed to properly test the EHUs to properly evaluate the level of emissions of formaldehyde; and (5) whether the Manufacturing Defendants failed to warn the plaintiffs of the unreasonably dangerous nature of the EHUs or of the presence of excessive levels of emissions of formaldehyde and the hazards associated with the excess levels of emissions of formaldehyde.

In addition to those common issues, Plaintiffs claim, as for the Texas sub-class, that other class-wide issues of fact and law include: (1) whether the Manufacturing Defendants breached their duty to Plaintiffs in failing to act reasonably in the design, marketing, distribution and sale of the EHUs; (2) whether the Manufacturing Defendants failed to properly inspect the EHUs; and (3) whether the Manufacturing Defendants failed to sufficiently test the effects and/or the risks of formaldehyde fumes on the Plaintiffs.

As for the Mississippi sub-class, in addition the above, Plaintiffs assert that the following additional class-wide issues of fact and law include: (1) whether the Manufacturing Defendants knew or should have known that their products were defective; (2) whether the defective and unreasonably dangerous condition of the product proximately caused the damages and injuries sustained by Plaintiffs; (3) whether the Manufacturing Defendants properly selected and installed their respective products' component parts; and (4) whether an alternative design would have to a reasonable probability prevented the toxic exposure of the Plaintiffs.

As for the last state-specific sub-class (i.e., the Alabama sub-class), Plaintiffs reassert all the class-wide issues of fact and law listed above.

[28]     This finding was not reached based on Defendants' assertion that the variations in the laws of the four applicable states (i.e., Louisiana, Alabama, Mississippi, and Texas) preclude class certification. In that regard, Defendants argue that because Plaintiffs have brought claims under the laws of four different states, this Court should consider the differing state laws relating to Plaintiffs' claims when analyzing whether class certification is appropriate. It is, indeed, true that variations in state law impact whether there are common issues of fact or law that predominate among the class members. See *Cole v. GMC*, 484 F.3d 717, 724 (5th Cir. 2007). Defendants also argue that because Plaintiff's motion for class certification does not analyze choice of law issues, they have failed to meet their burden of showing that all the elements of class certification are met.  It is true that when faced with a multi-state class action, a court must analyze how choice of law questions impact Rule 23's requirements before certifying a class. As the Fifth Circuit explained, differences in states' laws "may swamp any common issues and defeat predominance." *Castano*, 84 F.3d at 741.   A court must "know which law it will apply before it makes its predominance determination." *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 313 (5th Cir. 2000), *citing Castano*, 84

## V. CLASS CERTIFICATION SPECIFICALLY AS TO FUTURE MEDICAL SERVICES SUB-CLASS

In addition to all the general reasons set forth herein for why class certification is inappropriate, the Court offers the following additional analysis as to why certification of the future medical services sub-class (as defined in Plaintiffs' memorandum in support of their Motion for Class Certification, the December 2, 2008 class certification hearing, and in the Plaintiffs' post-hearing brief) is inappropriate.

As for the future medical services subclass, Plaintiffs contend that class-wide issues of law and fact include: (1) whether certain plaintiffs were significantly exposed to formaldehyde, a hazardous substance; (2) whether certain plaintiffs now suffer a significantly increased risk of contracting a serious latent disease, associated with formaldehyde exposure; (3) whether certain plaintiffs' risk of contracting such a disease is greater than (a) the risk of contracting the same disease had there been no exposure, and (b) the chances of members of the public at large of developing the disease; (4) whether a medical procedure exists that makes the early detection of any such diseases possible; (5) whether the future medical services regime for such detection is different from medical services recommended in the absence of exposure; and (6) whether there is some demonstrated clinical value in the early detection and diagnosis of any such diseases.

F.3d at 741. While Defendants argue that Plaintiffs have failed in their burden, this Court notes that Plaintiffs have seemingly attempted to avoid the need for choice of law analysis by requesting the certification of state-specific sub-classes. Because each proposed subclass must independently meet all of the requirements of Rule 23 (Fed. R. Civ. Pro. 23(c)(5)), separating the sub-classes by state alleviates the issue with variations in state law affecting the Court's class certification analysis; the law of the state of the particular proposed sub-class would apply. Thus, while many, many other reasons exist to deny class certification (as explained herein), Plaintiffs' failure to engage in choice of law analysis for the state specific sub-classes is not one of them.

The Court agrees with Defendants, however, that the first two allegedly class-wide issues, exposure and increased risk, are actually individual issues. Both require an individualized analysis into which Plaintiffs should be included.[29] Further, whether an individual has been "significantly exposed" to formaldehyde will differ depending on several variables already discussed herein (i.e, past and present cigarette use, formaldehyde-containing cosmetics use, etc.). Indeed, an accurate exposure level for a class representative has no bearing on an accurate exposure level for any other member of the class because of these differing variables. Also, determining an individual's risk of developing a particular formaldehyde-related disease or injury is keyed to several individual factors, including level of exposure, duration of exposure, and other individual characteristics such as whether the person has other risk factors for contracting a particular injury or disease. Thus, the Court finds that an individual's risk cannot be determined on a class-wide basis, but instead, would have to be analyzed on an individual basis. This is true for all definitions of this proposed sub-class.

Defendants also point out that Plaintiffs fail to conduct choice of law analysis, which precludes a finding that they have satisfied their burden of demonstrating the predominance requirement. The medical monitoring sub-class[30] requires the application of laws of four different states as it purports to include residents of Texas, Louisiana, Alabama, and Mississippi.

---

[29]    As Defendants note, Plaintiffs' use of the words "*certain* Plaintiffs" is telling. Plaintiffs essentially admit that this analysis will not include *all* Plaintiffs.

[30]    In this part of its discussion, the Court is referring to the proposed sub-class in the Plaintiffs' original motion for class certification. Defendants assert that the newly-proposed, but related, sub-class definition, first introduced during the December 2, 2008 class certification hearing, is far narrower and no longer seeks medical monitoring. (See Rec. Doc. 976, p. 1).

(See for example, Rec. Doc. 984, pp. 39-43). While Plaintiffs do make an attempt to demonstrate that such claims are available in all of these four states (See Rec. Doc. 764-2, pp. 22-24), they have failed to make any attempt to explain whether any individual variations in those states' laws are manageable here, or whether they would "swamp common issues of law and fact"; they have, thus, failed to satisfy this burden. See *Castano*, 84 F.3d at 741.

Referring specifically to the proposed sub-class definition introduced during the December 2, 2008 class certification hearing, the Court finds that that definition requires a determination of the level of formaldehyde in every EHU before a plaintiff even qualifies for class membership. That determination would require individualized analysis, essentially requiring perhaps a mini-trial to sort out each EHU. Thus, the Court finds that the predominance requirement is left unsatisfied for that defined sub-class as well.

As for the superiority requirement, Plaintiffs offer additional reasons why certifying this sub-class is allegedly the superior procedure. Plaintiffs allege that without a sub-class for future medical services, they could not bring an action designed to monitor the medical conditions of each subclass member for the purpose of ascertaining and responding to diseases caused by, contributed to, or exacerbated by the exposure of formaldehyde. Specifically, Plaintiffs claim that a future medical services subclass encompassing all individuals (or at a minimum, all children) who were exposed to formaldehyde while residing in an EHU in Louisiana, Texas, Mississippi, and Alabama provided by FEMA after Hurricanes Katrina and Rita is essential in order to monitor and treat the injuries that have resulted from that exposure. In that regard, Plaintiffs claim that damages in the form of future medical services are allowable under the state

laws of Louisiana, Texas, Mississippi, and Alabama. (See Rec. Doc. 764-2, pp. 22-24). Here, Plaintiffs assert that each of them was exposed to formaldehyde as a result of residency in an EHU provided after Hurricanes Katrina and Rita. They further assert that because their experts (Dr. Judd Shellito, Dr. Ken Paris, and Dr. Patricia Williams) have identified an apparent, manifest injury to them (and especially to children), a future medical services subclass should be certified to set up and maintain a program by which Plaintiffs' injuries may be treated.

Plaintiffs analyze the medical effects of formaldehyde exposure to the general population in the memorandum in support of their motion for class certification. (See Rec. Doc. 764-2, pp. 25-30). Plaintiffs highlight that children are an especially susceptible population to the adverse medical effects of formaldehyde exposure. (See Rec. Doc. 764-2, pp. 30-32). Last, Plaintiffs analyze whether medical diagnosis, treatment, intervention, and management can positively reduce the quality of life impact that the alleged adverse health effects related to formaldehyde exposure can cause. (See Rec. Doc. 764-2, pp. 32-34). Plaintiffs essentially call for the development of a program[31] aimed to provide help to individuals (especially children) who have been adversely affected by hazardous levels of formaldehyde in the EHUs. They note that the

---

[31] While Defendants spend considerable time summarizing the medical services program of Plaintiffs' expert, Dr. William Stein, an internist and oncologist (See Rec. Doc. 902, pp. 86-88), they acknowledge that Plaintiffs do not discuss this program in their memorandum in support of their motion for class certification. Instead, Plaintiffs make reference to a program focused on treating and educating children who already have asthma, explained by their expert Dr. Kenneth Paris, a pediatrician who specializes in the treatment of children with asthma. (Rec. Doc. 764-2, pp. 32-33). Defendants claim that it is unclear how the program discussed in Plaintiffs' memorandum relates to the program proposed in the subclass definition. Specifically, Defendants assert that the program discussed in Plaintiffs' memorandum is far narrower that the sub-class definition and would only apply to children who have asthma. On that note, Defendants contend that even for children who already have asthma, a subclass cannot be used as an excuse to skip Plaintiffs' required proof that any particular class member's asthma was caused or exacerbated by formaldehyde exposure resulting from a defect in an EHU. Thus, Defendants assert that there is no advantage to using a subclass for this program instead of individual treatment and management of children diagnosed with asthma.

majority of these children have no health insurance, and their families use the emergency rooms of hospitals as their primary care treatment. Plaintiffs reason that these affected children will lack the necessary resources to effectively manage formaldehyde-related problems, and the cost of this void in medical service will be borne in large part by the government, through Medicaid, rather than by those who created and/or contributed to the hazardous exposure in the first place (i.e, the Manufacturing Defendants).   (See Transcript, December 2, 2008 class certification hearing, p. 150).

Defendants argue that, before such a medical monitoring sub-class can be certified, it must be shown by Plaintiffs that (1) they have a manifest physical injury caused by formaldehyde; (2) they had significant exposure to formaldehyde which significantly increased their risk of contracting a latent disease caused by formaldehyde, and (3) that medical monitoring is appropriate when an accurate screening test exists that can detect disease in its latent phase and the disease is more successfully treated when screen-detected.  As for the first factor, Plaintiffs lack a *single common* injury caused by formaldehyde,[32] so this sub-class is not suitable for class certification.  Second, Plaintiffs' individual exposures vary.  Thus, exposure cannot be tried representatively.  For these reasons alone, the Court finds that this sub-class does not meet the predominance or superiority requirements necessary for class certification.

Defendants also note that by requesting that a future medical services sub-class be certified, Plaintiffs are essentially attempting to gain the benefit of medical monitoring without

---

[32]        As explained herein, there are over 45 symptoms that are or were experienced by EHU residents that are said to be formaldehyde-related.  Arguably, each of these symptoms manifests in different ways and in different degrees in each individual.

treatment or injury.[33] The Court agrees with Defendants' argument in this regard, and finds that

Plaintiffs are indeed attempting to skip over the process of obtaining the requisite liability

finding against the Manufacturing Defendants, by holding them responsible for funding a

monitoring and treatment service that a jury may later deem was never their responsibility. In

other words, the monitoring program requested by Plaintiffs seems to bypass a liability finding

in favor of immediate medical monitoring and treatment. Even Plaintiffs' own expert

pulmonologist, Dr. Shellito, acknowledged expressing "words of caution" to Plaintiffs regarding

medical monitoring:

> And referring to my words of caution, my words of caution would be
> that medical monitoring for any adverse health effect due to
> exposure – due to a toxic exposure should be carefully thought out
> and well justified.

(Exhibit P to Rec. Doc. 902, p. 20). While it is true that most individuals in today's society

might benefit from some sort of "medical monitoring," Plaintiffs have failed to demonstrate to

this Court why Defendant Manufacturers should be asked to pay for such a program without,

first, a finding of liability against them. Ordering the creation of such a program, without first

having a finding of liability on which to base it, is shaky ground on which to tread, and this

---

[33] Defendants claim that the definition of this sub-class provides for members to be examined periodically by a doctor to determine whether they have developed a disease caused by formaldehyde and, if so, the receipt of treatment therefor. Thus, at least in their memorandum in support of their motion for class certification, Plaintiffs are essentially requesting monitoring *and* treatment. In an individual action (as opposed to a class action), in addition to proving an injury that was caused by formaldehyde (for treatment purposes), an individual who requested treatment and monitoring would also need to prove all the elements of a medical monitoring claim under applicable state law. Defendants argue that if the Court were to certify this sub-class, it would allow sub-class members to receive the monitoring part of the program regardless of whether they have a current injury or disease and regardless of whether they will suffer from a formaldehyde-caused injury or disease in the future. Defendants assert that some sub-class members would be monitored and never treated as some would never develop a current injury. Thus, according to Defendants, subclass members would be relieved of the burden that they would bear in an individual suit, relative to proving a current manifest injury or disease.

Court declines to do so in this instance.

Another reason why this sub-class should not be certified is because this Court finds that the sub-class definition is imprecise, making it legally insufficient. As in *Snow v. Atofina Chemicals, Inc.*, 2006 WL 1008002 (E.D. Mich. March 31, 2006), there is no objective means here for either the Court or potential claimants to discern who qualifies for this subclass. As explained by the district court in *Snow*:

> The problem with this proposed class definition is that the court could not determine whether any individual was a member of the class without hearing evidence on what would amount to the merits of each person's claim. Where that type of inquiry is needed to determine whether a person is a member of a class, the proposed class action is unmanageable virtually by definition.

*Id.* at 9. Similarly here, Plaintiffs have failed to explain what criteria would be used to identify those who would be included in this sub-class without an individual assessment of every person who thinks that he or she should qualify. Also, because the Court has been presented with three different definitions of this sub-class (see footnote 1, *supra*), the Court concludes that this sub-class is defined imprecisely and is, thus, legally insufficient.

Next, Defendants contend that Plaintiffs, as a group, do not meet the "manifest physical injury" requirement, which is a prerequisite for medical monitoring in Texas, Louisiana, Mississippi, and Alabama. Plaintiffs, on the other hand, assert that they meet this requirement because the physical injury they claim to have suffered is in the form of "cellular and molecular"

damage.  (Rec. Doc. 764-2, p. 22).[34]

Even without addressing the issue of damages and assuming that some injury has indeed been manifested for the proposed sub-class, as a whole, the Court would still be faced with the individualized inquiry of whether formaldehyde exposure resulting from EHUs *caused* those injuries.  This is not an issue that can be determined on a class-wide basis, based on the numerous variables (discussed in detail herein) that affect this finding.   (See Transcript, December 2, 2008 class certification hearing, p. 155). Other requirements of medical monitoring also require individual determinations, especially ascertaining whether a person has had a "significant" level of exposure to formaldehyde from an EHU, and whether a person's risk of contracting a serious latent disease has been significantly increased. For all of the above reasons, certification of this sub-class is hereby denied.

## VI.   CLASS CERTIFICATION AS TO CLAIMS AGAINST DEFENDANT MANUFACTURERS - APPLYING SPECIFICALLY TO ECONOMIC LOSS SUB-CLASS

In addition to all the general reasons set forth herein for why class certification is inappropriate, the Court offers the following additional analysis as to why certification of the economic loss sub-class is appropriately denied.

---

[34]    Plaintiffs' expert, Dr. Patricia Williams, espoused the theory that cellular and molecular changes involving formaldehyde constitute "manifest physical injury." Defendants argue that Dr. Williams is not qualified to give an opinion on this subject. They also assert and that her testimony is unreliable and irrelevant under *Daubert* standards, and there is a pending *Daubert* motion (Rec. Doc. 860) relative to Dr. Williams. However, for all the reasons set forth in this opinion and because the Court finds that the numerous factual differences amongst proposed class and sub-class members preclude class certification, the Court does not even consider the opinions from Dr. Williams or any other experts regarding "manifest physical injury."  In other words, this Court does not reach the issue of damages as the numerous factual distinctions present in this MDL preclude class certification.  Thus, the Motion in Limine to Exclude Expert Testimony of Patricia M. Williams, PH.D., DABT (Rec. Doc. 860) is denied as moot, without prejudice to Defendants' right to re-urge it in connection with trial on the merits.

40

Plaintiffs seek economic loss damages based upon breaches of implied warranties and redhibitory defects. (Rec. Doc. 109, pp. 55-56, 66, 73). Here, Plaintiffs assert that while the Manufacturing Defendants represented their EHUs as fit for their ordinary purpose, the Defendants violated that implied warranty. Thus, Plaintiffs claim to have not received the benefit of their bargain as the EHUs were not fit for residential use.

First, this Court finds that the predominance requirement to certification of this sub-class is not met. While Plaintiffs contend that common, class-wide issues of law[35] predominate in the economic sub-class as each state has implied warranty legal theories available to Plaintiffs, Defendants assert that Plaintiffs' economic loss claims require an analysis of facts particular to every proposed sub-class member. However, citing this Court's acknowledgment in its October 3, 2008 Order and Reasons (Rec. Doc. 717), Plaintiffs claim they should have been provided alternative housing that was habitable (i.e., safe). (See Transcript, December 2, 2008 class certification hearing, p. 141). Thus, they assert that the failure to provide safe housing violates the implied warranties of the Manufacturing Defendants. Plaintiffs further claim that because "safe housing" is not an issue that varies from state-to-state or person-to-person, this is a common issue that would predominate in this sub-class.

Defendants, on the other hand, argue that the laws of Mississippi, Louisiana, and Texas require a determination as to whether every sub-class member was a "purchaser" of an EHU.

---

[35] Such class-wide issues of law identified by Plaintiffs include: (1) whether the EHUs are defective with respect to their ordinary purpose; (2) whether the EHUs were defective at the time they left the manufacturer's possession; and (3) whether the failure to provide safe housing for the use of plaintiffs violated the implied warranties of the Manufacturing Defendants.

(See Rec. Doc. 902, pp. 111-115). As for the laws of Alabama, Defendants further note that they require a determination of whether each sub-class member was a "purchaser" and whether privity of contract existed between the Plaintiff and a Manufacturing Defendant. (See Rec. Doc. 902, pp. 115-116). It is true that Plaintiffs have not limited the proposed economic damage subclass to actual purchasers of EHUs. Instead, Plaintiffs' proposed sub-class encompasses "[a]ll individuals to whom FEMA provided an emergency housing unit." (Rec. Doc. 764-2, p.5). Thus, it appears to Defendants that the Court's determination of the claims of the economic loss subclass would depend on facts that are particular to each class member such that they cannot be resolved by class-wide basis.

Plaintiffs counter that damages can be easily determined on a class wide basis for such economic loss claims. In setting rental assistance payments, Plaintiffs claim that FEMA determined $786.00 per month was the average national fair market rent.[36] Where EHUs were provided, the homeowner or renters were ineligible for this financial assistance. (See Transcript, December 2, 2008 class certification hearing, p. 143). Thus, according to Plaintiffs, damages would be a simple mathematical calculation of $786.00, multiplied by the number of months each Plaintiff inhabited an EHU. In this regard, Plaintiffs claim that individual damages would not defeat class certification, because they would be susceptible to a formulaic determination.

As explained previously herein, because of the numerous factual distinctions present in this MDL that make class certification inappropriate, this Court need not address how damages

---

[36] This amount was the basis for FEMA's payments to qualified homeowners and renters whose housing was destroyed.

inquiries cannot be determined on a class-wide basis.  However, Defendants' standing argument

has, at least some, indirect affect on this issue.  Defendants contend that Plaintiffs have failed to

establish that the proposed economic subclass members have standing to assert claims against

them as Plaintiffs have failed to suffered an injury in fact, which is a requirement for standing.

While Defendants acknowledge that Plaintiffs claim to have not received the benefit of their

bargain, Defendants highlight the fact that Plaintiffs' failure to claim that the proposed subclass

members entered into an agreement with any Defendant. Plaintiffs also fail to argue that the

economic loss subclass members actually purchased EHUs. Defendants claim that Plaintiffs'

attempt to focus on a measure of damages in this case (i.e, the monthly rental value of a safe

habitable trailer) does not establish that they have suffered an actual economic injury.

Indeed, in *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002), the Fifth

Circuit reversed a district court's certification of a class where the plaintiffs, purchasers of an

allegedly defective drug, argued that they were entitled to economic damages based on breach of

implied warranty, but failed to articulate what economic injury was actually suffered by the

proposed class members**.**  The Fifth Circuit reasoned:

> The plaintiffs never define this "economic injury," but, instead, spend
> most of their brief listing helpful suggestions on how a court could
> calculate damages. These arguments are relevant (if at all) to
> redressability, not injury. Merely asking for money does not establish an
> injury in fact.

*Id*. at 319. Defendants claim that the same is true with Plaintiffs' proposed economic damages

subclass. This Court agrees.  While Plaintiffs have suggested what an appropriate award of

damages might be, they have failed to articulate what economic injury, if any, was actually

suffered by the proposed class members. Because of this, Plaintiffs have failed to establish that the proposed economic subclass members have standing to bring suit against them. Thus, this sub-class cannot be certified.

Last, the Court notes that Plaintiffs have failed to conduct choice of law analysis for the economic loss sub-class (which again requires the application of laws of four different states as it purports to include residents of Texas, Louisiana, Alabama, and Mississippi). Plaintiffs have the burden of explaining whether any individual variations in the laws are workable or whether they would "swamp common issues of law and fact." *Castano*, 84 F.3d at 741. Plaintiffs have not made any attempt to do so, and thus, have failed to satisfy this burden. For all the above reasons, certification of this sub-class is inappropriate.

## VII. CLAIMS AGAINST THE GOVERNMENT

The named class representatives, on behalf of the putative class and sub-classes, have asserted the following causes of action against the United States/FEMA: liability under Louisiana Civil Code Articles 2316 and 2317. (See Rec. Doc. 764-2, p. 15).[37] Plaintiffs contend that these claims all arise out of the government's improper response to disclosures that the EHUs furnished to them were found to have unsafe levels of formaldehyde, claims which were discussed by the Court in its Order and Reasons filed October 3, 2008 (Rec. Doc. 717). Plaintiffs assert that the class representatives' claims are typical of class claims in this regard, because class members were improperly allowed to remain in EHUs known to be unsafe, without proper

---

[37] The stated delictual causes of action against the government appear to be asserted only under Louisiana law. (See Rec. Doc. 109, ¶¶ 98-131).

warnings from FEMA prior to exposure.  Thus, in this case, Plaintiffs argue that the representatives' claims satisfy the typicality requirement because they arise from the exact same course of conduct and share the same legal theory as do claims of the putative class, and that the class representatives will continue to advance the interests of all the class members.

This Court disagrees.  Plaintiffs' interactions with FEMA also vary greatly on an individual basis.[38] As the government contends in its response to Plaintiffs' motion for class certification, the required individualized assessment of putative class members renders class certification inappropriate. (Rec. Doc. 904, pp. 35-43 of 53).  While some plaintiffs complained to FEMA on numerous occasions and had significant contact with FEMA to discuss issues with their EHUs, others reported no complaints to FEMA. Some plaintiffs requested and were allowed to purchase EHUs; others made no such request. Some representatives were offered the opportunity to relocate from their EHU after complaining about potential formaldehyde

---

[38]    As this Court previously noted in its October 3, 2008 Order and Reasons:

> ...each plaintiff will have different relevant facts that may or may not afford him/her such a claim. Some plaintiffs may not have a claim against FEMA in this litigation if they were neither supplied nor did they occupy such a travel trailer of park model after the starting date of such time period. As for each plaintiff involved in this litigation, the evidence will undoubtedly differ, just as the individual claims will differ. For instance, some plaintiffs will not have suffered any symptoms from the alleged formaldehyde exposure. Furthermore, those who do claim to have suffered side effects will surely differ as to which side effects each suffered and as to what extent those side effects manifested. Some plaintiffs may have complained about the alleged formaldehyde exposure while still in their EHUs; others will not have complained or voiced any concerns until after relocating from their EHUs. The evidence will also differ as to when FEMA selected an EHU for each plaintiff, when each plaintiff moved in to that EHU, and when each plaintiff moved out of that EHU... Thus, whether and to what extent FEMA knew of the alleged formaldehyde concerns when these events occurred will likely need to be considered on a case by case basis.

(Rec. Doc. 717, pp. 42-43; Transcript, December 2, 2008 class certification hearing, p. 160).

exposure; some were not. Some Plaintiffs who were offered the opportunity to relocate chose

not to. (Exhibit A-50 to Rec. Doc. 902). All of these factual distinctions preclude a finding that

the typicality requirement is met. Thus, class certification as to the government could be denied

on this basis alone. However, in an effort to be completely inclusive, this Court will address

several different reasons, which each render class certification of Plaintiffs' claims against the

government inappropriate.

Plaintiffs have failed to show that the numerosity requirement is met. As the government

discusses at length in its response to Plaintiffs' motion for class certification, the majority of

putative class claimants who have made claims against the government have not exhausted the

administrative process, thereby preventing the court from exercising jurisdiction over their

potential tort claims. (See Rec. Doc. 904, pp. 26-35 of 53). Indeed, the government notes that

there are only nineteen persons whose claims against the United States may be subject to the

Court's jurisdiction at this time. (These nineteen individuals have already exercised their option

to individually file an FTCA action against the United States). Thus, the government contends

that it cannot be said that the joinder of these nineteen persons is "impracticable," and the Court

agrees.[39]

As for the adequacy requirement, Plaintiffs allege that the interests of the plaintiff

representatives do not conflict with the interests of the members of the class they seek to

represent, as all seek similar relief. Plaintiffs explain that all are individuals who were injured as

_____

[39]     Though it is expected that other plaintiffs will complete the process of perfecting their claims such
that the Court will have jurisdiction under the FTCA, the Court is unwilling, indeed unable, to consider jurisdiction
of claims prospectively and in an anticipatory fashion.

a result of exposure to formaldehyde from EHUs provided to them by the government, and all present claims for personal injury and property damage.

The Court concludes that because Plaintiffs' interactions with FEMA vary greatly on an individual basis and require an individualized assessment of putative class members (as explained exhaustively, *supra*), no class representative can be said to adequately represent the interests of *all* of putative class members. Thus, the adequacy requirement is not met.

As for the predominance requirement, Plaintiffs contend that the following common issues exist in regard to the defendant United States/FEMA as to the proposed sub-classes: (1) whether FEMA knew or should have known at some point in time that the EHUs produced excessive formaldehyde emissions, which posed a health risk to plaintiffs; (2) whether FEMA was negligent in failing to ensure that the EHUs purchased and provided to them were habitable, functional, and suitable for their intended use; (3) whether FEMA, on first becoming aware of legitimate concerns regarding formaldehyde exposure in the EHUs, should have (a) ceased and desisted in furnishing additional EHUs to Plaintiffs, and (b) issued appropriate and effective health warnings to those already residing in the EHUs.

For the reasons stated above, this Court concludes that, when considering the claims of putative class members against the government, individual issues predominate over any common questions of law or fact. A determination as to the merits of claims asserted against the government in this litigation will hinge on numerous individualized factual showings. Further, in examining those class members whose claims against the government are, at this time, potentially subject to the jurisdiction of this Court (i.e., those who have exhausted their

administrative remedies by individually filing suit against the government), all such persons are already parties to this MDL. Thus, any common issues among this limited pool of persons can and will be effectively adjudicated through mass joinder.

Specific to Plaintiffs' request to certify an economic sub-class against the government, they re-define their sub-class definition in their post-hearing brief as follows:

> All heads of households who have exhausted their administrative FTCA remedies and resided in FEMA EHU's from the date FEMA should have warned occupants of potentially dangerous formaldehyde levels and taken other appropriate measures through the date FEMA's actions would fall within the discretionary function exception.

(Rec. Doc. 978, p. 11). Plaintiffs assert that, for predominance purposes, the following class-wide issues of law and fact include: (1) whether FEMA failed to provide safe and habitable EHUs; and (2) whether FEMA's failure to provide safe and habitable EHUs violated Plaintiffs' property interest. In this regard, Plaintiffs point the Court to the Eastern District case of *McWaters, et al. v. Federal Emergency Management Agency, et al.*, 436 F. Supp.2d 802 (E.D. La. 2006), wherein Judge Duval determined that hurricane victims had a property interest in FEMA assistance that was created by the Stafford Act and protected by the Due Process Clause of the U.S. Constitution. Similarly, Plaintiffs contend that the property rights of members of the proposed economic loss sub-class were denied when FEMA failed to provide safe and habitable trailers or other EHUs.

This Court concludes that Plaintiffs have failed in their burden of demonstrating that the predominance requirement is met. First, as for the applicability of the *McWaters* case to the scenario before this Court, it should be noted that the Fifth Circuit recently held that the Stafford Act, and its

accompanying regulations governing the Individual Assistance housing program, even for persons who qualify for housing assistance, does not, in and of itself, create an entitlement to housing assistance. *See Ridgely v. FEMA*, 512 F.3d 727, 634-45 (5th Cir. 2008). Further, to the extent that any putative class member has suffered a recoverable injury[40], the Court will need to determine on a individual basis whether the putative class member suffered any recoverable economic loss, such as lost income or damage to a leasehold interest. Such inquiries require individualized analysis and render certification of this sub-class against the government inappropriate.

Again, Plaintiffs note that damages can be easily determined for claims such as this on a class wide basis. In *McWaters*, the Court approved FEMA's use of $786.00 per month as a "fair market rent figure" for the majority of the victims. 463 F. Supp.2d at 827. Here, Plaintiffs assert that damages would be a simple mathematical calculation of $786.00 times the time period each Plaintiff inhabited the EHU. However, as described in reference to Plaintiffs' claims against the Manufacturing Defendants, because of the numerous factual distinctions that render class certification inappropriate on several grounds, this Court need not reach the issue of whether the damages issues could be decided on a class-wide basis.

## VIII. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that **Motion for Class Certification (Rec. Doc. 764)** is **DENIED**.

---

[40] Such a finding would require an individualized assessment of class members regarding whether he/she was entitled to housing assistance; whether he/she received an EHU; and whether he/she had his/her use of the EHU impaired, and then to what extent.

**IT IS FURTHER ORDERED** that, for the reasons expressed in footnote 34, *supra*, the

**Motion in Limine to Exclude Expert Testimony of Patricia M. Williams, PH.D., DABT**

**(Rec. Doc. 860)** is **DENIED AS MOOT**, without prejudice to Defendants' right to re-urge it in

connection with trial on the merits.

New Orleans, Louisiana, this 29th day of December, 2008.


**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**