UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER § MDL NO. 07-1873
FORMALDEHYDE PRODUCTS §
LIABILITY LITIGATION §
§
§ SECTION "N" (5)

## BUREAU VERITAS NORTH AMERICA, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Bureau Veritas North America, Inc. ("Bureau Veritas"), a non-party to this litigation, asks the Court to protect it from Plaintiffs' Subpoena requesting documents because (1) the subpoena requests documents that would be duplicative of documents in the parties' possession, (2) the burden of producing the documents outweighs the likely benefit of the discovery, and (3) the requested documents contain information and personal data that Bureau Veritas is contractually bound not to disclose.

### Introduction

1. Plaintiffs are individuals who allege that they have been exposed to high levels of formaldehyde contained in emergency housing units ("EHUs") provided by the Federal Emergency Management Agency ("FEMA") in response to hurricanes Rita and Katrina.

2. Plaintiffs attempted to bring a class action against the United States and several manufacturers of the EHUs, asserting causes of action for products liability, strict liability, negligence, failure to warn, and warranty claims under the laws of various states. The Court denied certification of the class on December 29, 2008.

3. The United States entered into contracts with Bureau Veritas, pursuant to which Bureau Veritas performed investigations and tests on over 2,500 EHUs to determine the levels of formaldehyde in them. Bureau Veritas has provided the data it has collected and the results of the testing to the United States—specifically, to FEMA and the Center for Disease Control

1

("CDC"). In fact, Bureau Veritas has provided every shred of data that resulted from the investigations and tests conducted under its contract with the United States. Pursuant to its contracts with the government, Bureau Veritas cannot disclose this information to anyone but the government, absent a court order.

4. Plaintiffs, whose identities have not been disclosed to Bureau Veritas, have subpoenaed Bureau Veritas, requesting, essentially, any and all documents related to the testing of the EHUs. The subpoena is attached as Exhibit A.

5. Although Plaintiffs have been made aware that the United States has all of these documents, Plaintiffs have nonetheless insisted that Bureau Veritas produce what amounts to duplicates of the information maintained by the United States so that Plaintiffs can verify that the government is turning over all of the information in its possession. Bureau Veritas objects to turning over its copies of the voluminous documents requested because Plaintiffs can and will obtain these exact documents from the government, the cost of producing these undisputedly identical documents to Plaintiffs would outweigh the likely benefit of producing them, and the requested documents contain information that Bureau Veritas is contractually bound not to disclose. Bureau Veritas also objects to producing its documents and responding to the subpoena before the United States is required to turn over its documents – which is apparently one of the topics set for discussion during the Court's status conference of January 15, 2009. The subpoena served on Bureau Veritas is premature in that Plaintiffs should be required to serve this subpoena only after receiving documents from the government. If Plaintiffs then determine that they need to obtain documents from outside parties, they should issue the subpoena at that time.

6. After conferring with counsel for Plaintiffs, counsel for Bureau Veritas has been unable to resolve its dispute over document production without seeking this Court's intervention.

**Argument**

7.  The Court has broad discretion to issue a protective order upon a showing of good cause. Fed. R. Civ. P. 26 (c). Bureau Veritas's privacy interest in the information requested and the burden of producing the information far outweigh Plaintiffs' rights to receive all of the information requested. The documents requested include survey data, test results, and information regarding testing of the EHUs that have all been turned over to the government, who – as a party to this litigation – is the appropriate party to produce these documents to Plaintiffs. The subpoena also seeks emails between Bureau Veritas and the government, which the government could also provide from its own files. According to Plaintiffs' counsel, the reason Plaintiffs seek this information from Bureau Veritas is to ensure that the government has in fact turned over all of its documents. That argument assumes that parties can require anyone to produce voluminous and duplicative private information any time they merely suspect one another of possibly hiding information. If, after reviewing discovery from the government, Plaintiffs have reason to believe that the government's production is not complete, Plaintiffs could issue a more specific subpoena. In the event that Plaintiffs have reason to believe that the government has not produced all relevant documents, all documents pertaining to a random sample of EHUs could be produced by Bureau Veritas to Plaintiffs after the government's responses have been made, and a determination could then be made as to the completeness of such responses.

8.  In order to produce all of the information sought by Plaintiffs, Bureau Veritas would have to incur substantial costs for retrieving, reviewing, and redacting the documents requested. The electronic databases maintained for each of the EHUs tested would have to be printed, and the personal identifying information for each individual would have to be removed before these documents could be turned over to Plaintiffs. Pursuant to its contract, only upper-level, security-

3

cleared personnel at Bureau Veritas may access these databases. In addition, the personnel that are used for this work will also have to have the appropriate technical expertise to perform the retrieval and redactions. In order to accomplish this burdensome task, Bureau Veritas employees, whose normal billing rate is $150 per hour, would be required to review and redact the documents Plaintiffs seek. Bureau Veritas estimates that it would take a minimum of 40 hours to complete the retrieval, review, and redaction set forth above, which would result in a cost of at least $6,000 for labor alone, exclusive of other costs such as printing and transferring documents. Bureau Veritas has contacted its employees with the requisite expertise to review documents, and each of them is bound by contractual obligations which would prevent them from completing the task of reviewing and redacting documents throughout the month of January.

9. In addition to the fact that the government has all of the documents sought by the subpoena, individual plaintiffs have received some of the documents directly. The government provided test results directly to individuals whose EHUs were tested.

10. Further, because this suit is not proceeding as a class action, the each individual Plaintiff should be entitled receive information relevant only to his, her, or their individual cases, not information regarding test results for other Plaintiffs or for non-parties to this litigation. Counsel for Plaintiffs is entitled to seek information related only to Plaintiffs it represents, and Bureau Veritas has not been informed as to who those named Plaintiffs are. As such, the subpoena seeks information that would be irrelevant to, and outside the scope of, the individual claims.

## Conclusion

Bureau Veritas asks this Court to grant a protective order disallowing Plaintiffs from enforcing their subpoena and seeking discovery of documents that are identical to those which could be obtained from the United States, a party to this litigation. The possible benefit of

4

receiving exact copies—which Plaintiffs' counsel has stated is to allow Plaintiffs to make sure that the government has produced everything—is outweighed by the burdens this discovery would place on Bureau Veritas in the form of costs, time, and interfering with Bureau Veritas's normal operation of business. In the alternative, if the Court so orders, any materials the Court orders to be produced may be produced on or after the date on which the government is asked to produce its files, and in no instance prior to February 1, 2009, so that Bureau Veritas may be able to work with Plaintiffs to limit the volume of documents to those which Plaintiffs have not already obtained from a party. Lastly, Bureau Veritas would request that to the extent discovery is permitted that Plaintiffs be ordered to reimburse Bureau Veritas at its normal billing rate for its costs for retrieving, reviewing, and redacting the production documents.

Respectfully submitted,

**ALLENSWORTH AND PORTER, L.L.P.**
620 Congress Avenue, Suite 100
Austin, Texas 78701
(512) 708-1250 Telephone
(512) 708-0519 Facsimile
Matthew B. Cano – Texas State Bar No. 03757050
Shalla Santos – Texas State Bar No. 24056267

By: _____
    Matthew B. Cano

and

**CRAWFORD LEWIS, PLLC**
450 Laurel St., Ste. 1600
Baton Rouge, Louisiana 70801
(225) 343-5290 Telephone
(225) 383-5508 Facsimile
Keely Y. Scott - Bar No. 23932
Leigh F. Groves - Bar No. 23737

By: _____
    Leigh F. Groves

**ATTORNEYS FOR BUREAU VERITAS NORTH AMERICA, INC.**

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Plaintiffs' counsel Linda Nelson on November 3, November 20, December 4, December 17 and December 18, and she opposes the Motion for Protective Order.

*Shalla Santos*
Shalla Santos