# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

IN RE: FEMA TRAILER     MDL NO. 1873
FORMALDEHYDE PRODUCT LIABILITY
LITIGATION         SECTION "N-4"

THIS DOCUMENT RELATES   JUDGE ENGELHARDT
TO ALL CASES        MAG. JUDGE ROBY

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## HEARTLAND RECREATIONAL VEHICLES, LLC
## AND TIMBERLAND RV COMPANY'S MEMORANDUM
## IN SUPPORT OF THEIR JOINT MOTION TO DISMISS THE
## SECOND SUPPLEMENTAL AND AMENDED MASTER COMPLAINT

In accordance with Pretrial Order No. 23 (Document 917), Defendants Heartland Recreational Vehicles, LLC ("Heartland") and Timberland RV Company ("Timberland") respectfully submit this Memorandum in Support of Their Joint Motion to Dismiss the Second Supplemental and Amended Master Complaint (Document 722)[1].

## INTRODUCTION

This Multi-District Litigation is comprised of consolidated lawsuits brought by individuals who claim that they were allegedly exposed to harmful levels of formaldehyde while residing in FEMA-provided housing units – travel trailers, park models, and mobile homes – in the aftermath of Hurricanes Katrina and Rita. Plaintiffs have alleged claims against FEMA and the companies – collectively called Manufacturing Defendants – who manufactured the housing units which were supplied to FEMA.

---

[1] Heartland and Timberland also respectfully submit this memorandum in support of the dismissal of the substantively identical Plaintiffs' Second Supplemental and Amended Complaint (Document 721) in *Pujol v. The United States of America, et al.,* No. 08-3217.

As this Court is well aware, this Multi-District Litigation has been pending since November 6, 2007.  Now, almost a year later, Plaintiffs in this Multi-District Litigation seek, in part, to add Heartland and Timberland as Manufacturing Defendants by way of their Second Supplemental and Amended Master Complaint, filed October 6, 2008.

This Court should reject Plaintiffs' attempt to add Heartland and Timberland and dismiss Heartland and Timberland pursuant to Federal Rules of Civil Procedure 20 and 21 because they are improperly joined as defendants.  Plaintiffs' alleged claims against Heartland and Timberland and the other Manufacturing Defendants do not arise out of the same transaction or occurrence, and Plaintiffs' class allegations add nothing and have been rejected by this Court. Further, Plaintiffs' Second Supplemental and Amended Master Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) in the following respects:

(1)    Plaintiffs' claims sounding in Breach of Express Warranty for Property Damage and Personal Injury fail under Alabama, Mississippi, Texas, and Louisiana law;

(2)    Plaintiffs' claims sounding in Breach of Implied Warranty of Merchantability for Property Damage fail under Alabama, Mississippi, and Texas law;

(3)    Plaintiffs' claims sounding in Breach of Implied Warranty for Fitness for a Particular Purpose for Property Damage and Personal Injury fail under Alabama, Mississippi, and Texas law;

(4)    Plaintiffs' claims are barred by the Economic Loss Doctrine under Alabama, Mississippi, Texas, and Louisiana law; and

(5)    Plaintiffs' claims for Medical Monitoring are precluded by Alabama, Mississippi, Texas, and Louisiana law.

## STATEMENT OF FACTS
## AND PROCEDURAL BACKGROUND

On October 24, 2007, several related suits were transferred to this Court by the Judicial Panel on Multi-District Litigation.  These cases were all filed in the aftermath of Hurricanes Katrina and Rita by and on behalf of individuals in Louisiana, Mississippi, Alabama, and Texas who claim:  (1) to have resided in travel trailers, park models, or mobile homes provided by FEMA along the US Gulf Coast, and (2) to have been subjected to exposure to unlawful and harmful levels of formaldehyde while residing in such FEMA-provided temporary housing units.  *See* Admin. Master Compl. ¶¶ 17, 32.  On November 6, 2007, this Court entered its Pretrial Order No. 1, which consolidated these actions under the style "In Re: FEMA FORMALDEHYDE PRODUCTS LIABILITY LITIGATION" and the identification "MDL No. 1873."  Pursuant to the Court's Pretrial Order No. 2, Plaintiffs filed an Administrative Master Complaint on March 18, 2008.

Plaintiffs have amended their original Administrative Master Complaint twice.  They filed their First Supplemental and Amended Master Complaint on June 23, 2008 and their Second Supplemental and Amended Master Complaint ("Second AMC") on October 6, 2008.  In filing their Second AMC, Plaintiffs seek, in part, to add one hundred forty (140) new named plaintiffs, and Heartland and Timberland and eleven (11) other entities as Manufacturing Defendants in this Multi-District Litigation.[2]

---

[2]   In its October 6, 2008 Order (Document 720) granting the PCS's Motion for Leave to File Second Supplemental and Amended Master Complaint and Plaintiffs' Motion for Leave to File Second Supplemental and Amended Complaint, the Court explained that "[t]he arguments made in opposition to these motions may be presented in responsive pleadings to the amended complaints."  October 6, 2008 Order, p. 2.

The Manufacturing Defendants consist of various manufacturers who allegedly sold manufactured housing or travel trailers ("Subject Units") to FEMA, either directly or through government contractors who then sold the Subject Units to FEMA. FEMA provided the Subject Units to various individuals who had been displaced by Hurricanes Katrina and Rita, including Plaintiffs. *See* Admin. Master Compl. ¶ 17. At all times, the Federal Government, through FEMA, directly provided Plaintiffs with the temporary housing. *Id.* ¶ 22. Dissatisfied with their temporary housing, Plaintiffs allege that the Subject Units contain formaldehyde emissions in violation of federal regulations. *Id.* ¶¶ 29, 39. Plaintiffs allege causes of action against Manufacturing Defendants under the state laws of Louisiana, Alabama, Mississippi, and Texas purportedly growing out of the alleged exposure to improper formaldehyde levels. Plaintiffs' allegations include (1) negligence, (2) strict liability, (3) failure to warn, and (4) breach of express and implied warranty claims against Manufacturing Defendants. *Id.* ¶¶ 132-204.

The alleged jurisdictional basis of Plaintiffs' claims against Manufacturing Defendants is diversity of citizenship and the Class Action Fairness Act of 2005. *Id.* ¶¶ 12, 13. Plaintiffs seek injunctive relief as well as unspecified actual, consequential and punitive damages from all Defendants. *Id.* at p.76.

In seeking relief, Plaintiffs allege that the formaldehyde levels "have" caused the Plaintiffs to suffer damages, but do not state what injuries the formaldehyde actually caused any of the named plaintiffs. *Id.* ¶¶ 95, 153, 175. In praying for compensatory damages, Plaintiffs provide only a generic list of types of past and *future* damages for which Plaintiffs claim the Defendants are jointly and/or individually responsible. *Id.* at p.74. Plaintiffs have further demanded "the reasonable costs of medical monitoring." *Id.* at p.75.

## ARGUMENT

It is well settled that under Federal Rules of Civil Procedure 20 and 21 parties misjoined in an action may be dropped or dismissed from a lawsuit. Although misjoinder alone is not grounds for dismissal of an action, Rule 21 clearly provides that if a party is improperly joined in an action, the court, on motion or on its own, may at any time drop the party. FED.R.CIV.P. 21.

While Rule 21 provides for the dismissal of parties, Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of claims. Rule 12(b)(6) is designed to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989), *superseded by statute on other grounds as stated in Brown v. Citicorp*, No. 97-C-6337, 1997 U.S. Dist. LEXIS 16496 (N.D. Ill. Oct. 16, 1997); *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Rule 12(b)(6) motions directly challenge the legal theory of the complaint, not the sufficiency of any evidence that might be adduced or presented. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

Dismissal is appropriate under Rule 12(b)(6) where the alleged claim(s) fails to assert a legally cognizable theory as a matter of law *or* the claim(s) fail to allege sufficient facts to support a cognizable legal claim. *Smile Care Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996), *cert denied*, 519 U.S. 1028 (1996). "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A Rule 12(b)(6) dismissal is proper "if the complaint

lacks an allegation regarding a required element necessary to obtain relief." *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006).

Furthermore, the allegations in the pleading must *plausibly* suggest that the plaintiff is entitled to relief in order to meet "the threshold requirement of [Federal Rule of Civil Procedure] 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" *Twombly*, 127 S. Ct. at 1966 (granting the defendants' 12(b)(6) motion for dismissal where the plaintiffs' complaint, which cited lawful parallel conduct in support of its antitrust allegations, failed to present plausible grounds to infer an agreement in violation of § 1 of the Sherman Act). A complaint that "stops short of the line between possibility and plausibility of 'entitlement to relief'" is insufficient. *Id.* at 1966.

As demonstrated below, Heartland and Timberland should be dismissed as parties to this action pursuant to Rule 21 because they are improperly joined. Further, Plaintiffs' legal claims against Heartland and Timberland (as well as against all other Manufacturing Defendants) suffer from various fatal deficiencies and should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

I.   **PLAINTIFFS' CLAIMS AGAINST NEWLY ADDED DEFENDANTS HEARTLAND AND TIMBERLAND ARE IMPROPERLY JOINED WITH THE CLAIMS MADE AGAINST THE ORIGINAL DEFENDANTS AND HEARTLAND AND TIMBERLAND SHOULD BE DISMISSED AS PARTIES**

The Second AMC is fatally flawed because Plaintiffs have improperly joined any claims that one Plaintiff might have against one Defendant with the claims that other unrelated Plaintiffs may have against other unrelated Defendants, a defect that is underscored by the Plaintiffs' following actions: (1) the improper filing of an action against Heartland and Timberland in the MDL directly; (2) the failure to file individual complaints on behalf of individual plaintiffs against individual manufacturers against which they have actual claims; and

- 6 -

(3) the failure to file complaints in appropriate jurisdictions and venues, the effect of which has been to completely circumvent MDL transfer procedures provided for in the MDL enabling statute and the rules promulgated thereto.

As a threshold matter, "Rule 20 requires that a right to relief be asserted against each defendant in order to allow their joinder." Fed. R. Civ. P. 20(a); *see also* 7 CHARLES ALAN WRIGHT & ARTHUR MILLER ET AL, FEDERAL PRACTICE AND PROCEDURE § 1657 (3d ed. 2008). Assuming this threshold inquiry is met, Rule 20 allows for the joinder of multiple plaintiffs or defendants only when there are claims "arising out of the same transaction, occurrence, or series of transactions or occurrences . . . ."[3] Here, the Second AMC fails to satisfy the basic requirement that the claims by Plaintiffs against Heartland and Timberland as well as against other Manufacturing Defendants arise from the same transaction or occurrence.[4]

A.    **Plaintiffs' claims do not arise from the same transaction or occurrence.**

Courts often rule that plaintiffs, who join together to file suit, fail to satisfy Rule 20 when their claims do not arise out of a single transaction or occurrence. For example, in *Campo v. State Farm and Cas. Co.*, No. 06-2611, 2007 WL 2155792 (E.D. La., July 26, 2007), several plaintiffs, who held homeowner's policies for their residences with defendant State Farm,

---

[3]    Additionally, there must be "questions of law or fact common to all these persons" in the action. FED.R. CIV.P. 20(a). Because the same transaction or occurrence requirement is not met here, this Court need not decide whether Plaintiffs have also met this second requirement.

[4]    Plaintiffs' Second AMC is a pleading "shortcut," and in addition to misjoinder, Plaintiffs' improper amalgamation of parties and claims creates innumerable other procedural problems. For instance, venue based on the convenience of the parties and witnesses is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." For each Plaintiff's claim, there is but one manufacturing defendant – the defendant that manufactured the housing unit that allegedly harmed the particular Plaintiff. As a result, in every instance there may be two districts in which venue would be proper: (1) the district in which the Plaintiff occupied the housing unit and his alleged harm occurred, 28 U.S.C. § 1391(a)(2); and (2) the district in which the housing unit the Plaintiff occupied was manufactured, 28 U.S.C. § 1391(a)(1)-(2). Thus, for every Plaintiff who occupied a housing unit outside this Court's district, both the district in which the Plaintiff occupied the housing unit and the district in which the housing unit was manufactured would be more convenient for the parties and witnesses and would better serve the interest of

BDDB01 5493180v2

joined together in a single complaint to allege that State Farm improperly adjusted and processed their claims for insurance proceeds following Hurricane Katrina.  Recognizing the plaintiffs' claims involved different properties, different insurance adjusters, different witnesses, different combinations of wind and flood, different injuries, different policies and different defenses, the court severed the claims of the improperly joined plaintiffs.  *Id.* at *3; *see also, Rohr v. Metropolitan Ins. & Cas. Co.*, No. 06-10511, 2007 WL 163037, at *3 (E.D. La., Jan. 17, 2007) (quoting *Comer v. Nationwide Mut. Ins. Co.*, No. 1:05CV436-LTD-RHW, 2006 WL 1066645, at *2 (S.D. Miss., Feb. 23, 2006) ("in another case involving 'hundreds of Plaintiffs [who were] joined in a single lawsuit, each asserting claims that ar[ose] out of damage to [different] property caused by Hurricane Katrina,' the court concluded that the Plaintiffs should be required to file separate complaints."))

Similarly, Plaintiffs in the instant case allegedly:

- Lived in different housing units in different places – *i.e.*, all Plaintiffs did not reside in a single housing unit in a single location;

- Lived in different housing unit categories – *i.e.*, Plaintiffs resided in either a travel trailer, a park model, or a mobile home;

- Lived in different housing units manufactured by different companies at different plants at different times – *i.e.*, Plaintiffs claim that over sixty (60) different companies built one or more housing unit types that are at issue in this case;

---

justice as opposed to the Eastern District of Louisiana.  Plaintiffs' Second AMC appears to intentionally ignore these very important issues in an attempt to avoid having to properly plead and file their claims.

- Have experienced a variety of unspecified injuries and will presumably present different witnesses to prove their purported injuries and the remaining elements of their claims.

As demonstrated above, because Plaintiffs' claims are artificially levied against an entire industry, and not against a single company defendant (as was the case in *Vioxx*[5]), they cannot satisfy Rule 20 scrutiny and are improperly joined in this action.

### B.      Heartland and Timberland are also improperly joined with the other defendants and with each other.

Courts apply the very same "transaction or occurrence" analysis to the joinder of party defendants.  *Compare* FED.R.CIV. P. 20(a)(1)(A) and 20(a)(2)(A).  For example, in *Pergo, Inc. v. Alloc., Inc.,* 262 F.Supp. 2d 122 (S.D.N.Y. 2003), the owner of certain patents sued competitor-defendants for infringement, which prompted defendants' motion to sever.  In granting the defendants' motion, the court held, "the fact that two parties may manufacture or sell similar products, and that the sales or production may have infringed the identical patent owned by the plaintiffs is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)." *Id.* at 128.  Regardless of the manner in which any other defendant purportedly designed, manufactured, tested, marketed, distributed, licensed and sold housing units to FEMA, that has nothing to do with what Heartland and Timberland did or did not do with respect to the housing units they allegedly manufactured and which were allegedly sold to FEMA.  Consequently, Plaintiffs' efforts to attack an entire industry through selected individuals, who have alleged claims against certain Defendants but not others, should fail – any alleged mistakes made by one company, if any, have no bearing on whether other companies did or did not make their own mistakes.

---

[5]   *In re Vioxx Products Liability Litigation*, 239 F.R.D. 450 (E.D. La. 2006).

BDDB01 5493180v2

**C.   Joinder is improper regardless of Plaintiffs' class allegations which already have been rejected by this Court.**

The fact that Plaintiffs attempted to bring this case as a class action[6] is of no consequence. For example, in *Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151 (2d Cir. 1974) ("*Nassau County*"), four associations of insurance agents filed a class action on behalf of their agents against one hundred and sixty-four (164) insurance companies alleging the termination of agency contracts in violation of securities laws through the imposition of requirements such as selling new lines of insurance, meeting higher volume requirements, etc. The court held that "by joining the 164 defendant companies in one action they have failed to comply with Rule 20(a) of the Federal Rules of Civil Procedure relating to joinder of defendants." *Id.* at 1154. The court recognized:

> Here there has been no showing of a right to relief arising from the same transaction or series of transactions. No allegation of conspiracy or concert of action has been asserted. No connection at all between the practices engaged in by each of the 164 defendants has been alleged. Their actions as charged were separate and unrelated, with terminations at different times for different reasons with regard to different agents.

*Id.* The same is true with respect to the over sixty (60) named Defendants in the present case, and thus Heartland and Timberland are improperly joined in this matter.

Parties that are misjoined may be dropped from the lawsuit. *See* FED.R.CIV.P. 21. Here, the court should dismiss Heartland and Timberland from this action pursuant to Rule 21 and allow this civil action to continue only as to properly named Defendants. *Nassau County*, 497 F.2d at 1154-55 (proper remedy for misjoinder of thousands of claims is dismissal).

---

[6]   On December 29, 2008, this Court entered its order denying Plaintiffs' Motion for Class Certification.

BDDB01 5493180v2

II.   **EVEN IF HEARTLAND AND TIMBERLAND WERE PROPERLY JOINED AS PARTIES, VARIOUS CLAIMS BY PLAINTIFFS AGAINST HEARTLAND AND TIMBERLAND FAIL AS A MATTER OF LAW**

Although for purposes of this motion subject matter jurisdiction is not at issue, it appears that this Court may exercise jurisdiction over the instant litigation based on diversity of citizenship grounds.[7]  Accordingly, as in other diversity cases, federal courts are obligated to apply the choice of law rules of the forum state.  *Spence v. Glock*, 227 F.3d 308, 311 (5th Cir. 2000).  Thus, the choice of law rules of Louisiana apply here.  Plaintiffs have brought claims under the laws of four different states – Louisiana, Alabama, Mississippi, and Texas.  Where Plaintiffs allege that injuries have occurred in multiple states, courts applying Louisiana choice of law rules have separately applied the laws of each state to the injuries that allegedly occurred in it.  *Brookshire Bros. Holding, Inc. v. Total Containment, Inc.*, No. 04-1150, 2006 U.S. Dist. LEXIS 69072 (W.D. La. Sept. 26, 2006) (in a product liability case, applying Texas law to those injuries that occurred in Texas and Louisiana law to those injuries that occurred in Louisiana).  In the instant matter, the laws of Louisiana, Alabama, Mississippi, and Texas will apply respectively to the claims of the residents of each state.

A.   **Plaintiffs are precluded from recovering for breach of warranty as a matter of law.**

Plaintiffs are seeking recovery for alleged personal injury and alleged economic loss as a result of a purported breach of warranty.  In articulating their causes of action for Mississippi and Alabama Plaintiffs, Plaintiffs include a provision that they are seeking all "general, special, incidental and consequential damages as shall be proven at time of trial[.]"  *See* Admin. Master Compl. ¶¶ 155 (under Mississippi law), 177 (under Alabama law). In articulating

---

[7]   Plaintiffs also alleged subject matter jurisdiction based on the Class Action Fairness Act of 2005, but this Court denied Plaintiffs' Motion for Class Certification on December 29, 2008.

the compensatory damages sought by Plaintiffs in all four states, Plaintiffs include that same statement, then go on to articulate that they are also seeking:

> [F]or those who purchased housing units from FEMA, those certain plaintiffs are entitled to the return of the purchase price with interest from the time it was paid, the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the housing units, expenses incurred through mitigation of damages, attorneys' fees, and all damages allowed under [applicable Louisiana law regarding contracts, sales, and redhibition] including all damages occasioned by the Federal Government's failure to perform its contractual obligations and all other damages, whether foreseeable or not, that are a direct consequence of its failure to perform.

See *id.* at p.75.  Plaintiffs' claims for breach of warranty are precluded by Mississippi, Alabama, and Texas law regardless of whether Plaintiffs seek recovery for economic loss or for personal injury.

### 1.   Mississippi:  As a matter of law, Plaintiffs are precluded from recovery for any purported breach of any purported warranty, express or implied.

Plaintiffs cannot recover for any breach of warranty claim under Mississippi law. While Plaintiffs only specifically articulate a cause of action for breach of *express* warranty under Mississippi law, see Admin. Master Compl. ¶ 151, to the extent the Administrative Master Complaint may be deemed to allege breach of implied warranties, these too are barred by applicable Mississippi law.  Plaintiffs cannot recover for any breach of warranty claim for property damage because Plaintiffs are not "buyers" as required under Mississippi law.[8] Furthermore, Mississippi law precludes recovery for breach of express warranty and implied

---

[8]   Plaintiffs have pled that FEMA purchased the Subject Units from the Manufacturing Defendants. *See* Admin. Master Compl. ¶¶ 24, 25, 29, 30, 31, 52.  Plaintiffs further allege that FEMA provided the Subject Units to certain plaintiffs subject to a "lease agreement and/or contract". *See id.* ¶¶ 100-105.  To the extent certain Plaintiffs allege to have purchased a Subject Unit from FEMA or any Manufacturing Defendant, or any other entity, see, *e.g.*, Admin. Master Compl. ¶ 121 (alleging that the federal government sold certain Subject Units to certain unidentified plaintiffs), the warranty claims of those particular purchasing Plaintiffs may be barred for the reasons set forth *infra*.

- 12 -

warranty for fitness in cases in which a plaintiff does not rely upon an affirmation or skill of the defendant.  Plaintiffs have not alleged any such reliance.  Accordingly, Plaintiffs fail to state a breach of warranty claim against Manufacturing Defendants under applicable Mississippi law.

### a.    Claims for breach of warranty seeking property damage are barred because Plaintiffs lack standing.

Plaintiffs lack standing to recovery for breach of warranty for property damage because Plaintiffs are not "purchasers" or "buyers" as required under fundamental contract and warranty principles.  The Uniform Commercial Code ("UCC"), as adopted by Mississippi, requires a "buyer"[9] or "purchaser" and assumes a "contract for sale" and "sale"[10] for breach of warranty claims.  *See generally*, Miss. Code Ann. §§ 75-2-101, *et seq.* (adopting nearly verbatim the UCC).  For example, Section 303 of the UCC, as adopted in Mississippi, states that an express warranty is an affirmation made by the seller to the "buyer."  Miss. Code Ann. § 75-2-313.[11]  Section 314 states that an implied warranty of merchantability is a warranty that goods are merchantable as implied in a contract for "sale."  Miss. Code Ann. § 75-2-314.[12]  Section 315 provides that a party breaches an implied warranty where the seller has reason to know of any particular purpose that the goods are required, and that the "buyer" is relying on the seller's skill or judgment. Miss. Code Ann. § 75-2-315.[13]

---

[9]    Miss. Code Ann. § 75-2-103 defines a "buyer" as "a person who buys or contracts to buy goods."

[10]    Miss. Code Ann. § 75-2-106 states in relevant part that:  a "'Contract for sale' includes both a present sale of goods and a contract to sell goods at a future time.  A 'sale' consists in the passing of title from the seller to the buyer for a price (Section 75-2-401)."

[11]    Miss. Code Ann. § 75-2-313 states in relevant part that an express warranty is:  "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain…that the goods shall conform to the affirmation or promise."

[12]    Miss. Code Ann. § 75-2-314 states in relevant part:  "…a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

[13]    Miss. Code Ann. § 75-2-315 states in relevant part:  "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish goods, there is … an implied warranty that the goods shall be fit for such purpose."

Thus, it is axiomatic – indeed, it is ingrained in basic UCC warranty law – that only a "buyer" may sue to recover economic damages for breach of warranty. The UCC's definition of express and implied warranties is laden with references to the "buyer," the "bargain," and the "contract for sale." *See* Miss. Code Ann. §§ 75-2-313, 314, and 315. Only one who buys or contracts to buy the subject good may sue for breach of warranty. *Id.; c.f. Hicks v. Thomas*, 516 So.2d 1344 (Miss. 1987).

From the definitions of "buyer," "sale," and "contract for sale," found in Mississippi's UCC, *see* footnotes 9 and 10 *supra*, it is clear that Plaintiffs who did not purchase their Subject Unit have no standing to sue for breach of warranty for property damage. It is undisputed that many Plaintiffs did not purchase the subject homes from Heartland and Timberland and the other Manufacturing Defendants. As stated in the Administrative Master Complaint, "the United States of America, through FEMA, began *providing* temporary housing to plaintiffs . . . ." Admin. Master Compl. ¶ 22 (emphasis added). Plaintiffs' use of the word "providing" is fatal to their claim. Plaintiffs further allege that the Subject Units were provided "subject to the terms of a lease agreement and/or contract."[14] Admin. Master Compl. ¶ 100. To the extent Plaintiffs did not purchase a Subject Unit, they are not "buyers" under Mississippi's UCC.

The proposition that a plaintiff cannot recover for property damage under theories of breach of warranty for property they have not bought is consistent with the well-settled legal principle that a party must have a property right in the allegedly damaged property in order to claim property damage. Plaintiffs who did not purchase a Subject Unit do not have any

---

[14] Plaintiffs do not allege, as indeed they cannot, that the units were provided subject to a contract *of sale*.

recognizable property interest in the Subject Units.  Accordingly, Plaintiffs cannot recover for property damage under claims for breach of warranty.

> **b.    Mississippi Plaintiffs cannot recover for breach of express warranty because Manufacturing Defendants Heartland and Timberland did not make any affirmations upon which Plaintiffs relied.**

Mississippi law dictates that an express warranty is only created by an affirmation, description, promise, or sample by the seller that becomes a basis for the bargain.[15]  Miss. Code Ann. § 75-2-313;[16] *Austin v. Will-Burt Co.*, 232 F. Supp. 2d 682, 687 (N.D. Miss. 2002).  Thus, an express warranty is not created unless the purchaser relies upon the seller's affirmation or promise.  *See id.*  Mississippi courts have consistently dismissed claims for breach of express warranty where the plaintiffs could not prove that they relied on the alleged express affirmation or promise when purchasing the subject product.  *See Austin v. Will-Burt Co.*, 232 F. Supp. 2d at 687 ("[a]n express warranty is any affirmation of fact or promise which concerns the product and becomes part of the basis for the purchase of such a product").  Again, Plaintiffs cannot recover for breach of an express warranty under Mississippi law because Heartland and Timberland did not make, and Plaintiffs have not pled, any affirmations or promises upon which Plaintiffs relied in purportedly selecting their Subject Units.

---

[15]  Plaintiffs do not allege that Manufacturing Defendants made an express affirmation regarding the Subject Units manufactured by Manufacturing Defendants.  Although Plaintiffs make the imprecise allegation that there were "express factual representations upon which the claimant justifiably relied," see Admin. Master Compl. ¶ 151, this bare recitation of the elements fails the plausibility standard for showing that a plaintiff is entitled to relief as laid out in *Twombly, supra*.

[16]  Miss. Code Ann. § 75-2-313 states in relevant part:
  (1) Express warranties by the seller are created as follows:
    (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
    (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
    (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

- 15 -

     **c.**    **Mississippi Plaintiffs cannot recover for breach of warranty for fitness because Plaintiffs do not allege that Manufacturing Defendants Heartland and Timberland were aware that Plaintiffs were relying on them.**

Similarly, Miss. Code Ann. § 75-2-315 states that an implied warranty exists only where "the buyer is *relying* on the seller's skill or judgment to select or furnish suitable goods[.]" Miss. Code Ann. § 75-2-315 (emphasis added).[17]   Under Mississippi law, the warranty of fitness for a particular purpose does not apply where a plaintiff does not have contact with the defendant when purchasing the product because under such circumstance the plaintiff could not have relied on the skill or knowledge of the defendant in picking the product. *Albritton v. Coleman Co.*, 813 F. Supp. 450, 455 (S.D. Miss. 1992) (breach of an implied warranty of fitness arises when "the buyer in turn relies on the seller's skill and judgment in selecting the individual product"); *Austin v. Will-Burt Co.*, 232 F. Supp. 2d at 688.

In *Austin*, the plaintiffs' alleged breach of implied warranty of fitness after the plaintiff-decedent was electrocuted by the defendant's product. *Austin v. Will-Burt Co.*, 232 F. Supp. 2d at 684-85.   The decedent was an employee of a TV station that utilized the defendant's telescoping mast for use on an electronic news-gathering van. *Id.*   The defendant had sold the particular product to a third-party who had later sold the product to the decedent's employer. *Id.* The court held that plaintiffs were precluded from recovering for breach of implied warranty "where plaintiffs did not purchase the product from the defendant as the plaintiffs never relied on the skill or knowledge of the defendant's representative in picking the product, but rather,

---

[17]   Miss. Code Ann. § 75-2-315 states in pertinent part:
    . . . where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose.

BDDB01 5493180v2

purchased the product from a third-party." *Id.* at 688. Accordingly, the court held the decedent could not have relied on the defendant in selecting the product and the plaintiffs were precluded from recovery. *Id.* As previously noted, there is no allegation that any Plaintiff had any contact with Manufacturing Defendants Heartland and Timberland during the "conveyance" by FEMA of the Subject Units to Plaintiffs. Plaintiffs therefore could not have relied on the representations, skill, or knowledge of Manufacturing Defendants Heartland and Timberland. Thus, Plaintiffs cannot recover for breach of implied warranty of fitness under Mississippi law.

2.  **Alabama: As a matter of law, Plaintiffs are precluded from recovery for any purported breach of any purported warranty.**

Similarly, Plaintiffs cannot recover for breach of express or implied warranty under Alabama law, *see* Admin. Master Compl. ¶¶ 161, 173 (pleading both types of breach of warranty), for property damage because Plaintiffs are not "buyers" as defined and required under Alabama law. Furthermore, Plaintiffs cannot recover for breach of express or implied warranty of fitness for either property damage or personal injury because Plaintiffs did not rely on any express or implied representation by Manufacturing Defendants Heartland and Timberland.

a.  **Claims for breach of warranty for property damage are barred as a matter of law.**

As a matter of law, Plaintiffs' claims for breach of warranty, whether express or implied, fail to state a claim upon which relief can be granted for property damage because Plaintiffs lack standing as required under Alabama law.

(1)  **Alabama Plaintiffs lack standing because they are not "Purchasers" or "Buyers."**

Similar to the law of Mississippi, Alabama law limits recovery for economic damages under breach of warranty to those who are "buyers" or "purchasers." Alabama defines a "buyer" as a person who "buys or contracts to buy goods." Ala. Code § 7-2-103 (setting forth

- 17 -

definitions to terms used in recognizing claims under Alabama's commercial code).

Accordingly, Plaintiffs cannot recover for economic loss resulting from any alleged breach of

warranty because Plaintiffs were not "buyers" as required under Alabama's commercial code,

which sets forth a party's right to recover for breach of warranties.[18]

      **(2)**      **Alabama Plaintiffs are precluded for recovering for property damage because no privity exists between Plaintiffs and Manufacturing Defendants Heartland and Timberland.**

Alabama Plaintiffs cannot recover for breach of express or implied warranties

against Manufacturing Defendants Heartland and Timberland because Heartland and Timberland

did not sell the subject homes directly to Plaintiffs, and, therefore, the Alabama Plaintiffs are not

in privity of contract with Heartland and Timberland.  It is well-established under Alabama law

that in order to recover for property damage, a plaintiff must prove privity of contract for

warranty actions involving property damage.  *Barre v. Gulf Shores Turf Supply, Inc.*, 547 So.2d

503, 504 (Ala. 1989) ("[T]he plaintiff must prove privity of contract in an action on an express

warranty where no injuries to natural persons are involved.").  Alabama courts have consistently

held that a manufacturer cannot be held liable for breach of implied warranty in cases of

economic injury unless the plaintiff can prove privity exists between the plaintiff and the

manufacturer.  *Rampey v. Novartis Consumer Health, Inc.*, 867 So.2d 1079, 1087 (Ala. 2003)

("[T]here is no right of action on an implied warranty theory against a manufacturer for property

damage without privity of contract.").

In *Rampey*, plaintiff-consumers filed a class action suit for breach of warranties

against the defendant-manufacturer of an over-the-counter drug after learning that the subject

---

[18]   To the extent certain Plaintiffs purportedly purchased a Subject Unit from FEMA, such purchasing Plaintiffs' claims may be barred for the reasons set forth *infra*.

product contained an ingredient believed to cause pre-cancerous and cancerous conditions. *Id.* at

1081. The plaintiffs sought injunctive relief and damages for economic loss. *Id.* The court

dismissed the plaintiffs' claims for implied warranties because the plaintiffs had never purchased

the subject product directly from the defendant-manufacturer. Instead, the defendant-

manufacturer had sold the subject product exclusively to distributors and wholesalers who, in

turn, sold the subject product to the plaintiff-consumers. *Id.* at 1083. Accordingly, the court

held that the plaintiffs' breach of warranty claims did not extend to the defendant-manufacturer.

*Id.* at 1092; *Bryant v. Southern Energy Homes, Inc.*, 682 So.2d 3, 5 (Ala. 1996) (holding implied

warranty of fitness for a particular purpose did not apply to a manufacturer of mobile homes

because the defendant-manufacturer sold the subject product to a third-party and not the

plaintiff).

       Plaintiffs cannot recover for breach of express or implied warranty for property

damage or any alleged loss flowing therefrom under Alabama law because Plaintiffs have no

privity of contract with Manufacturing Defendants Heartland and Timberland. Rather, FEMA

"provided" the Subject Units to Plaintiffs. At no point did Manufacturing Defendants and

Plaintiffs enter into a contractual relationship pertaining to the Subject Units; Plaintiffs'

"contractual relationship," if any, was with FEMA. *See* Admin. Master Compl. ¶ 100. Like the

defendant-manufacturer in *Rampey*, Manufacturing Defendants Heartland and Timberland never

distributed or sold the Subject Units directly to Plaintiffs. Without having alleged any

contractual relationship for the sale of the Subject Units with Manufacturing Defendants

Heartland and Timberland, Plaintiffs' claims for breach of express and implied warranties must

be dismissed as a matter of Alabama law.

     **b.**     **Alabama Plaintiffs are precluded from recovering for express warranty because Manufacturing Defendants Heartland and Timberland did not make an affirmation or promise that became a basis of the bargain.**

Alabama Plaintiffs cannot recover for breach of express warranty, whether for personal injury or property damage, because there is no allegation that Manufacturing Defendants Heartland and Timberland made any affirmation or promise to Plaintiffs.  Under Alabama law, a plaintiff cannot recover for an alleged breach of express warranty unless the plaintiff can demonstrate that there was an affirmation or promise made by the defendant upon which the plaintiff relied in purchasing the product.  *See Ex Parte Gen. Motors Corp.*, 769 So. 2d 903, 907-10 (Ala. 1999).  In *General Motors*, the plaintiff sued the defendant-car manufacturer after the plaintiff suffered injuries resulting from an automobile accident that occurred after the subject vehicle had continuously stalled.  *Id.* at 905-6.  The plaintiff sued in tort and for breach of warranties, including breach of express warranty.  *Id.*  The plaintiff merely alleged a breach of express warranty and generally pointed to an extended warranty in which the defendant-manufacturer promised it would cover the cost of towing.  In dismissing the plaintiff's claim for breach of express warranty against the defendant-manufacturer, the court held that the plaintiff could not recover for express warranty because there was no evidence of any affirmation or promise made by the defendant-manufacturer to the plaintiff with respect to the alleged defect upon which the plaintiff relied in purchasing the subject vehicle.  *Id.*

The present case is nearly identical to *General Motors*.  Here, Plaintiffs have done nothing more than merely allege a breach of express warranty.  Further, in contrast to the plaintiff in *General Motors*, Plaintiffs have not even alleged any warranty by Manufacturing Defendants Heartland and Timberland.  Here, no warranty could have existed between Manufacturing Defendants Heartland and Timberland and Plaintiffs because no representation

- 20 -

was ever made by Heartland and Timberland to Plaintiffs.  Put simply, Plaintiffs never relied

upon any affirmation or promise made by any Manufacturing Defendant.  In fact, there is no

allegation in the Administrative Master Complaint that Plaintiffs ever had any choice in

determining the manufactured home in which Plaintiffs would temporarily reside.  Instead,

Plaintiffs have been utilizing whatever temporary housing was afforded to them by FEMA.

Accordingly, Plaintiffs cannot recover for any damage arising from a breach of express warranty

as a matter of Alabama law.

> **c.     Alabama Plaintiffs are precluded from recovering for breach of an implied warranty of fitness because Plaintiffs do not allege that Manufacturing Defendants Heartland and Timberland were aware that Plaintiffs were relying on Manufacturing Defendants Heartland and Timberland.**

While Plaintiffs do not specifically enumerate a cause of action for breach of

implied warranty of fitness, Plaintiffs do allege strict product liability on the basis of breach of

any implied or express warranties.  Admin. Master Compl. ¶¶ 161, 173.  To the extent Plaintiffs

allege breach of the implied warranty of fitness, such claim is barred.  Alabama's implied

warranty for fitness rule is codified at Ala. Code § 7-2-315:

> Where the seller at the time of contracting has reason to know any
> particular purpose for which the goods are required and that the
> buyer is relying on the seller's skill or judgment to select or furnish
> suitable goods, there is . . . an implied warranty that the goods shall
> be fit for such purpose.

Thus, a claim for warranty for fitness for a particular purpose does not apply where a plaintiff

does not know he is purchasing the defendant's product because under such circumstance the

plaintiff could not have relied on the skill or knowledge of the defendant in selecting the product.

*Ex Parte Gen. Motors Corp.*, 769 So.2d at 911.  In *General Motors*, in addition to suing the

manufacturer, as has been discussed above, the plaintiff sued the car dealership from which he

purchased the allegedly defective automobile for breach of implied warranty of fitness.  *Id*.  The

- 21 -

court held that the plaintiff could not recover for an alleged breach of implied warranty of fitness because the plaintiff had failed to demonstrate that the defendant-dealership knew that the plaintiff was relying on the dealership's expertise and that the plaintiff did, in fact, rely on the dealership's skill or knowledge in selecting the subject vehicle. *Id.*

Plaintiffs do not allege that they relied on Manufacturing Defendants' skill or knowledge in selecting their respective Subject Units. Again, Plaintiffs do not allege that they were even involved in selecting their Subject Unit. According to the Complaint, FEMA provided Plaintiffs with the Subject Units. Plaintiffs have merely been occupying, on a temporary basis, whatever Subject Unit was provided to them by FEMA. Plaintiffs have not even alleged that they knew they were occupying a Subject Unit produced by Manufacturing Defendants. Accordingly, Plaintiffs cannot recover for breach of implied warranty for fitness as a matter of Alabama law.

        **3.**       **Texas:  As a matter of law, Plaintiffs are precluded from recovery for any purported breach of any purported warranty.**

Texas' commercial code mirrors Alabama and Mississippi law. Therefore, Plaintiffs are precluded from recovering for all warranties for property damage because Plaintiffs do not meet the definition of "buyer" under Texas law. Further, Plaintiffs have failed to establish that they relied upon a promise or upon the skill and knowledge of Manufacturing Defendants Heartland and Timberland as required to demonstrate breach of express warranty and implied warranty for fitness. Thus, like the Alabama and Mississippi Plaintiffs, the Texas Plaintiffs fail to state a breach of warranty claim against Manufacturing Defendants Heartland and Timberland upon which relief may be granted.

### a.    Claims for breach of warranty seeking property damage are barred because plaintiffs lack standing.

Like Alabama and Mississippi, Texas has adopted the UCC's definitions for breach of warranty. *See generally* Tex. Bus. & Com. Code § 2.101, *et seq.* (adopting the UCC nearly verbatim). An implied warranty of merchantability is a warranty that goods are merchantable that is implied in a "contract for their sale." *Id.* § 2.314. Again, nearly identically to Alabama and Mississippi law, Texas law provides that a party breaches an implied warranty for fitness where the seller knows that the "buyer" is relying on the seller's skill or judgment. *Id.* § 2.315. In fact, Texas courts have held that "the UCC does not confer blanket authority to sue for breach of warranty . . . only a 'buyer' may sue to recover economic damages for non-conformities of tender, including breaches of warranties." *DaimlerChrysler Corp. v. Inman*, 121 S.W.3d 862, 882 (Tex. Ct. App. 2003), *rev'd on other grounds*, 51 Tex. Sup. Ct. J. 422 (Tex. 2008). Thus, only one who buys or contracts to buy the subject good may sue for breach of warranty. Here, Plaintiffs cannot recover damages for alleged breach of warranties of the Subject Units when Plaintiffs have never had a recognized property interest in the Subject Units.[19]

### b.    Texas Plaintiffs cannot recover for breach of warranty for fitness because Plaintiffs do not allege that Manufacturing Defendants Heartland and Timberland were aware that Plaintiffs were relying on Manufacturing Defendants.

Texas law, like that of Alabama and Mississippi, also requires that a plaintiff must have relied on the defendant's skill or knowledge in selecting the product in order to set forth a justiciable cause of action. It is not enough that the plaintiff relied on an intermediary rather than the named defendants. *Harris Packaging Corp. v. Baker Concrete Constr.*, 982 S.W.2d 62, 67

---

[19]   To the extent certain Plaintiffs purportedly purchased a Subject Unit from FEMA, such purchasing Plaintiffs' claims may be barred for the reasons set forth *infra*.

(Tex. Ct. App. 1998), *overruled in part on other grounds by Med. City Dallas, Ltd. v. Carlisle Corp.,* 51 Tex. Sup. Ct. J. 753 (Tex. 2008).  Thus, Texas courts have held that a plaintiff cannot recover for breach of implied warranty for fitness, whether for property damage or personal injury, unless the plaintiff can demonstrate that the he relied on a representation or recommendation by the defendant for selecting the subject product.  *See Cook-Pizzi v. Van Waters & Rogers, Inc.*, 94 S.W.3d 636, 647-48 (Tex. App. 2002).  Again, Plaintiffs cannot prove this critical element.  There is no allegation that Plaintiffs were even aware that Manufacturing Defendants Heartland and Timberland manufactured their units at the time FEMA distributed the Subject Units to Plaintiffs.  Accordingly, Plaintiffs' claims for breach of implied warranty for fitness must be dismissed under Texas law.

<div style="margin-left: 2em;">

**c.**     **Texas Plaintiffs cannot recover for breach of express warranty because Manufacturing Defendants Heartland and Timberland did not make any affirmations or promises upon which Plaintiffs relied.**

</div>

Plaintiffs have not explicitly enumerated a count for breach of express warranty under Texas law in the Administrative Master Complaint.  However, to the extent Plaintiffs' allegations may be read to state a claim for breach of express warranty, they cannot recover.  Texas has defined an express warranty as "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes a basis *for the bargain*."  Tex. Bus. & Com. Code Ann. § 2.313 (emphasis added).  Texas courts have held that the "basis for the bargain" injects a requirement of reliance into express warranty claims.  *PPG Indus. Inc. v. JMB/Houston Centers Partners LP,* 146 S.W.3d 79, 99 (Tex. 2004).  In *Harris, supra,* a Texas court clarified this concept by explaining that not only must the defendant have made an affirmation *to the plaintiff,* but also the affirmation must have been made in connection with contracting for the sale of the goods.  *Harris,* 982 S.W.2d at 66-7.  The court held that purported statements made

- 24 -

by the defendant to the plaintiff could not have been a "basis of the bargain" because there was never any contract between the plaintiff and the defendant. *Id.* at 67.

Similarly here, Plaintiffs cannot – and do not – allege that any statements made by Manufacturing Defendants Heartland and Timberland became a "basis for the bargain" because there was never any contract for the sale of the Subject Units from the Manufacturing Defendants to Plaintiffs. Correspondingly, Plaintiffs cannot – and do not – allege that the Manufacturing Defendants Heartland and Timberland made any representations to Plaintiffs in the course of contracting for sale of the Subject Units. Thus, Plaintiffs' claims for breach of express warranty must be dismissed as a matter of Texas law.

### 4. Louisiana: As a matter of law, Plaintiffs are precluded from recovery for any purported breach of express warranty.

Plaintiffs assert claims under the Louisiana Products Liability Act for breach of express warranty (Admin. Master Compl. ¶ 138(i)), but have not stated that they relied upon the warranty in deciding to use the trailers. To present a claim for a breach of an express warranty under the LPLA, a plaintiff must show that "the plaintiff was induced to use the product because of [the express] warranty." *Caboni v. General Motors Corp.,* 278 F.3d 448, 453-55 (5th Cir.2002); *see also* La.Rev.Stat. Ann. § 9:2800.58 (manufacturer is potentially liable only "if the express warranty has induced the claimant or another person or entity to use the product"). In the absence of allegations that Plaintiffs were induced to use the trailers because they relied upon the express warranty, and particularly where Plaintiffs have not alleged any specifics regarding the terms of the express warranty that were allegedly breached, Plaintiffs have not stated a claim for breach of express warranty under Louisiana law. *See Id.*

**B.     Plaintiffs' claims for economic loss should be dismissed because they have no ownership interest in the subject units and because they are barred by the Economic Loss Doctrine.**

Plaintiffs lack standing to recover for economic losses for their alleged property damage because Plaintiffs are not property owners.  The actual owner of the Subject Units is the U.S. government.  Even assuming, *arguendo*, that Plaintiffs may claim property damage to some abstract ownership interest in the Subject Units or that they may assert a property damage claim for the purported loss of a housing subsidy because they chose to live in a Subject Unit – which is denied – they would be barred from recovery under principles of both negligence and strict liability by the Economic Loss Doctrine.

The genesis of the Economic Loss Doctrine is found in a California case, *Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145 (Cal. 1965), in which the Court explained:

> The law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods. The history of the doctrine of strict liability and tort indicates that it was designed, not to undermine the warranty provisions of the Sales Act or the Uniform Commercial Code but, rather, to govern the distinct problem of **physical injuries**.

*Seely*, 403 P.2d at 159-61 (emphasis added).

Thereafter, in a 1986 decision the United States Supreme Court unanimously embraced and adopted the majority rule of *Seely*.  The Court held that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself, and thus, no products-liability claim for negligence or strict liability lies "when the only injury claimed is economic loss." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986).

1.   **Mississippi:  Plaintiffs' claims for negligence and strict liability are barred by the Economic Loss Doctrine.**

The principles set forth in *Seely* and *East River* have been embraced and adopted by both Mississippi federal courts and Mississippi state courts.  In Mississippi, a plaintiff who suffers only economic loss as a result of an allegedly defective product may not recover in strict liability or negligence, though such damages may be pursued under a breach of warranty theory. *Progressive Ins. Co. v. Monaco Coach Corp.*, 2006 U.S. Dist. LEXIS 21251, at *8 (S.D. Miss. March 29, 2006); *Lee v. General Motors Corp.*, 950 F. Supp. 170, 172-73 (S.D. Miss. 1996); *State Farm Mutual Auto Ins. Co. v. Ford Motor Co.*, 736 So.2d 384, 387 (Miss. Ct. App. 1999).

No plaintiff named in the Administrative Master Complaint has specifically identified any present injury.  It is patently obvious that, aside from their attempt to recover for *future* injury without proving *present* injury, the only damages that Plaintiffs are claiming and for which they seek recovery are economic damages they claim to have incurred as a result of damage to the Subject Units themselves.  However, as shown above, such recovery is barred under Mississippi law by the Economic Loss Doctrine.

2.   **Texas:  Plaintiffs' claims for negligence and strict liability are barred by the Economic Loss Doctrine.**

Texas has also adopted the Economic Loss Doctrine.  The doctrine applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself.  The Texas Supreme Court established that purely economic losses, even if suffered as a result of negligence, are not recoverable. *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991).  The Court reasoned that when the only loss or damages is to the subject matter of the contract, the plaintiff's actions are ordinarily on the contract. *Id.* at 494 (citations omitted).  Acknowledging that, although the plaintiff pleaded his action as one in negligence, the Court held that the economic loss caused by the defendant's

- 27 -

actions sounded in contract and therefore the plaintiff's negligence claim was barred. *Id.*; *see also Medical City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 61-62 (Tex. 2008).

Because the Plaintiffs fail to identify any present injury in the Administrative Master Complaint, the only damages that Plaintiffs are claiming and for which they seek recovery are economic damages incurred as a result of alleged damage to the Subject Units themselves. However, as shown above, such recovery is barred under Texas law by the Economic Loss Doctrine.

### 3.   Alabama:  Plaintiffs' claims for negligence and strict liability are barred by the Economic Loss Doctrine.

Persuaded by the reasoning of the United States Supreme Court, in 1989 the Alabama Supreme Court adopted the Economic Loss Doctrine. *Lloyd Wood Coal Co. v. Clark Equipment Co.*, 543 So. 2d 671 (Ala. 1989) (affirming grant of summary judgment to defendant on plaintiff's negligence claim where the only damage was to the product itself). More recently, the Alabama Supreme Court reaffirmed that one cannot recover in tort for the negligence manufacture of a product where the only injury is to the product itself. *Bay Lines, Inc. v. Stoughton Trailers, Inc.*, 838 So. 2d 1013, 1019 (Ala. 2002).

Again, because the Plaintiffs fail to identify any present injury in the Administrative Master Complaint, the only damages that Plaintiffs are claiming and for which they seek recovery are economic damages incurred as a result of alleged damage to the Subject Units themselves. As explained above, such recovery is barred under Alabama law by the Economic Loss Doctrine.

### 4.   Louisiana:  Plaintiffs' claims for negligence and strict liability are barred by the Economic Loss Doctrine.

There is clear support for the Economic Loss Doctrine in Louisiana's statutory scheme. The Louisiana Civil Code contains several provisions governing choice of law

- 28 -

scenarios.  One, article 3545, sets forth the rule for conflicts that occur in products liability cases.
*See* LA. CIV. CODE. art. 3545 (2006).  The comments to that article state:

> This Article applies to any injury caused by a product, rather than
> to the product itself.  *The latter type of damage is likely to be
> characterized as contractual in nature* and thus would be governed
> by the Title on conventional obligations.

*Id*. cmt. (a).

The comments envision a form of redress for property damage that is limited solely to those found in contract.  *See id.*  That is the exact rationale of the economic loss doctrine – there is no tort recovery for purely economic loss.  When the thing itself is allegedly defective, then the remedy is governed by the rules of contract.  Only under those rules can recovery for economic loss be considered.

In addition to those comments, the Louisiana Products Liability Act (LPLA) tacitly applies the economic loss doctrine.  The LPLA defines damage in a products liability context as "including damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that [the Civil Code Articles on redhibition] do not allow recovery for such damage or economic loss."  LA. REV. STAT. ANN. § 9:2800.53(5).  Since Louisiana's redhibition statutes allow for the recovery of economic damages, the LPLA does not.  The statutory scheme does not change simply because these particular plaintiffs do not have a redhibition claim.

As the Plaintiffs fail to identify any present injury in the Administrative Master Complaint, the only damages that Plaintiffs are claiming are economic damages incurred as a result of alleged damage to the Subject Units themselves.  As explained above, such recovery is barred under Louisiana law.

C.  **Plaintiffs' claims for medical monitoring must be dismissed under Louisiana, Mississippi, Alabama, and Texas law.**

Louisiana, Mississippi, Alabama, and Texas law dictate that a claim for medical monitoring cannot be sustained without a present manifestation of injury.  All four states follow the modern trend and precedent set by other jurisdictions in refusing to recognize medical monitoring without a showing of injury.  *See* La. Civil Code Article 2315; *see also Henry v. Dow*, 701 N.W.2d 684, 691-92 (Mich. 2005) (reasoning it was for the Michigan Legislature, not the court, to decide whether to allow a cause of action for medical monitoring absent physical injury; a cause of action based on exposure would create a potentially limitless pool of plaintiffs; and there would be a huge burden on court finance and employees that would stem from administering a medical monitoring trust fund); *Badillo v. Am. Brands*, 16 P.3d 435, 441 (Nev. 2001) (holding that Nevada common law does not recognize a cause of action for medical monitoring); *Wood v. Weyth-Ayerst Labs*, 82 S.W.3d 849, 856-57 (Ky. 2002) (holding that without a showing of present physical injury, cause of action for negligence has yet to accrue); *Hinton v. Monsato*, 813 So. 2d 827, 831 (Ala. 2001), discussed *infra*.

Here, Plaintiffs allege generally that their damages include "past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, [and] past and future reasonable and necessary medical expenses." Admin. Master Compl. at p. 74.  Plaintiffs allege that the formaldehyde levels "have" caused the Plaintiffs to suffer damages, but do not state what injuries the formaldehyde actually caused any of the named plaintiffs.  *Id.* ¶¶ 95, 153, 175.  These allegations are broad enough that Plaintiffs could be seeking medical monitoring costs for only alleged *future* injuries.  Critically, in alleging that class certification is appropriate, Plaintiffs allege that there is a need for medical monitoring because of an "increased risk of contracting a . . . disease" because of the alleged exposure to

- 30 -

formaldehyde.[20]  *Id.* ¶ 91.  What is missing from this allegation is an assertion that medical monitoring is necessary because of a *present* disease or condition of the class members.  No plaintiff named in the Administrative Master Complaint has identified specifically any present injury.

       1.       **Louisiana:  From the facts alleged in Plaintiffs' Complaint, medical monitoring claims are not permitted as a matter of law.**

Plaintiffs' ability to obtain medical testing and monitoring under Louisiana law is governed by Louisiana Civil Code article 2315.  Plaintiffs' ability to recover medical monitoring costs as an element of damages was severely limited as part of the sweeping reform to Louisiana's civil legal tradition beginning in 1996.  Civil Code article 2315 was amended effective July 9, 1999 to overrule Louisiana Supreme Court precedent and exclude as an element of damages "costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a *manifest physical or mental injury of disease.*"  La. Civ. Code art. 2315(B) (emphasis added); *see also Abney v. Exxon Corp.*, 755 So.2d 283 (La. App. 1 Cir. 1999).

---

[20]  Paragraph 91 of the Administrative Master Complaint states:

    Class certification is also appropriate for the reasonable costs of medical monitoring for all class members under a court-supervised medical monitoring fund. This action may be properly maintained as a class action for all necessary and appropriate final injunctive relief and/or corresponding declaratory relief for the following, non-exclusive reasons:

      a.  The class members have had significant exposure to a known and proven hazardous substance;
      b.  As a result of this exposure, members suffer a significantly increased risk of contracting a serious latent disease(s);
      c.  Class members' risk of contracting a serious latent disease(s) is great than (1) the risk of contracting the same disease had they not been exposed and (2) the chances of members of the general non-exposed public of developing a disease(s);
      d.  A monitoring procedure exists that can make the early detection of any serious latent disease(s) if possible;
      e.  The monitoring procedures are prescribed by medical professionals and such monitoring is reasonably necessary for early detection and treatment;
      f.  The increased risk of disease(s) from exposure warrants medical monitoring beyond that which an individual would normally pursue;
      g.  Medical benefits are gained through early detection of disease(s); and
      h.  But for all defendants' action or inaction, the members would not have incurred the additional cost of medical monitoring and treatment resulting from exposure to formaldehyde.

- 31 -

2.      **Mississippi:  From the facts alleged in Plaintiffs' Complaint, medical monitoring claims are not permitted as a matter of law.**

Mississippi has never recognized a cause of action for medical monitoring as sought by Plaintiffs here.  Indeed, recently, the Fifth Circuit was faced with the exact issue of whether Mississippi recognizes a claim for medical monitoring without the manifestation of a specific present physical injury.  *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809 (5th Cir. 2006).  The Supreme Court of Mississippi responded to a certified question from the Fifth Circuit, stating that "it would be contrary to current Mississippi law to recognize a claim for medical monitoring allowing a plaintiff to recover medical monitoring costs for mere exposure to a harmful substance without proof of current physical or emotional injury from that exposure." *Paz v. Brush Engineered Materials, Inc.,* 949 So. 2d 1, 5-6 (Miss. 2007).

Accordingly, since there has been only a bare assertion that Plaintiffs have suffered some unidentified damage, including possibly only alleged future damages, related to exposure to formaldehyde in the trailers manufactured by Manufacturing Defendants, the motion to dismiss should be granted as a matter of law.

3.      **Alabama:  From the facts alleged in Plaintiffs' Complaint, medical monitoring claims are not permitted as a matter of law.**

In recognition of Alabama's long-standing tort principles requiring a physical injury, Alabama has refused to recognize medical monitoring as a remedy without evidence of a present physical injury.  Under Alabama law, Plaintiffs cannot recover in tort without a present manifestation of a physical injury.  *Hinton v. Monsanto Co.*, 813 So.2d 827, 829 (Ala. 2001).  In *Hinton*, the putative class members sought costs for medical monitoring after alleging that class members had been exposed to harmful chemicals that had been released into the environment by the defendant. *Id.* at 828.  However, the proposed class members did not allege that they sustained a physical injury or illness as a result of their exposure to the harmful chemicals.  *Id.*

Instead, the plaintiff-class members claimed that their injury consisted of the potential for later harmful health effects. *See id*. The court held that Alabama tort public policy dictates that mere concern that a product may potentially later cause physical harm does not constitute an "injury." *Id.* at 829. Thus, the *Hinton* court held that without evidence of actual injury, the plaintiffs could not recover damages for health monitoring to detect whether the plaintiffs develop an injury in the future. *Id.*

Like the plaintiffs in *Hinton*, Plaintiffs have not alleged any specific present injury or physical manifestations of harm from the alleged formaldehyde exposure. At best, Plaintiffs have presented nothing more than a bare assertion that they have suffered some injury. *See* Admin. Master Compl. ¶¶ 95, 153, 175. Without an allegation of a specific physical injury, Plaintiffs are precluded from recovering for medical monitoring under Alabama tort law. *See Twombly*, 127 S.Ct. at 1965 ("A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do."). As a result, the Alabama Plaintiffs fail to state a claim for medical monitoring upon which relief can be granted.

### 4.    Texas:  From the facts alleged in Plaintiffs' Complaint, medical monitoring claims are not permitted as a matter of law.

Although exhaustive research has failed to find a single reported Texas appellate decision addressing the issue of whether a plaintiff can recover for medical monitoring in the absence of a present manifestation of injury, the United States District Court for the Western District of Texas, applying existing Texas law, has recently refused to recognize recovery for medical monitoring without injury. *Norwood v. Raytheon Co.*, 414 F. Supp. 2d 659, 668-69 (W.D. Tex. 2006). Notably, the *Norwood* court enumerated several reasons why Texas law precludes recovery for medical monitoring:  (1) Texas public policy precludes a plaintiff from

- 33 -

seeking recovery for the mere fear of future injury without actual manifestation of an illness;
(2) Texas courts would likely follow the modern trend, as well as nearby jurisdictions in
rejecting such claims for medical monitoring; (3) a federal court cannot create a new state cause
of action. *Id.*

In *Norwood*, the plaintiffs sought class certification on behalf of radar operators
who allegedly had been exposed to radiation but had not yet been affected with an illness
resulting from such exposure. *Id.* at 661. The plaintiffs sought relief in the form of a fund to
finance medical monitoring and surveillance necessary to protect the plaintiffs from an increased
risk of harm and disease. *Id.* at 661-62. In granting the defendants' motion to dismiss the
plaintiffs' medical monitoring claim, the court looked to a Texas Supreme Court case in which
the court had rejected a claim for mental anguish for increased likelihood of injury resulting from
asbestos exposure. *Id.* at 664 (citing *Temple-Inland Forest Prods. Corp. v. Carter*, 993 S.W.2d
88, 93 (Tex. 1999)). Texas courts have held that a plaintiff cannot recover for fear of future
illness without demonstrating a present injury as a matter of public policy. *Temple-Inland*, 993
S.W.2d at 93. Specifically, the absence of a present physical injury "make[s] it very difficult for
judges and juries to evaluate which exposure claims are serious and which are not." *Id.* Also,
the absence of physical injury leads to unpredictable liability. Finally, allowing recovery absent
physical injury would result in an influx of claims that would burden the legal system's limited
resources. *Id.*

Moreover, the *Norwood* court noted the trend in other jurisdictions in rejecting
medical monitoring claims absent the manifestation of an injury. *Norwood,* 414 F. Supp. 2d at
666-67. The rejection of claims for medical monitoring without evidence of a physical injury by
other jurisdictions further bolsters the position that the Texas Supreme Court would follow the

BDDB01 5493180v2

trend of rejecting such claims.  Lastly, the *Norwood* court held that recognizing a cause of action for medical monitoring – an action that has not been recognized by a Texas court – would constitute an improper innovation of state law.  *Id*.  The court held that Fifth Circuit law precludes a court from creating a new cause of action.  *Id*.  Accordingly, the court dismissed the plaintiffs' claims for medical monitoring and held that a Texas Supreme Court would not likely adopt a claim for medical monitoring.  *Id*. at 668.  Likewise, this Court should not permit this claim to go forward and should grant the motion to dismiss.

In summary, Plaintiffs cannot recover for medical monitoring under the laws of Louisiana, Alabama, Mississippi, or Texas.  Plaintiffs' Administrative Master Complaint lacks sufficient factual allegations to support an absolutely essential element to a claim for medical monitoring:  a manifest physical or mental injury or disease resulting from formaldehyde exposure.  Plaintiffs' bare assertion that they have suffered an unspecified injury does not meet the pleading requirements to survive a motion to dismiss.  Rather, Plaintiffs have provided merely the "formulaic recitation of the elements" that the Supreme Court has found insufficient.  *Twombly*, 127 S. Ct. at 1965.  Thus, Plaintiffs' claims for medical monitoring should be dismissed.

## CONCLUSION

As demonstrated above, Heartland and Timberland should be dismissed pursuant to Rules 20 and 21 because they are improperly joined as defendants.  Simply stated, Plaintiffs' alleged claims against Heartland, Timberland, and the other Manufacturing Defendants do not arise out of the same transaction or occurrence, and Plaintiffs' class allegations, which have been rejected by this Court, are of no consequence.  Further, the following causes of action should be dismissed as a matter of law pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted:

(1)   Breach of Express Warranty for Property Damage and Personal Injury (Alabama, Mississippi, Texas, and Louisiana);

(2)   Breach of Implied Warranty of Merchantability for Property Damage (Alabama, Mississippi, and Texas);

(3)   Breach of Implied Warranty for Fitness for a Particular Purpose for Property Damage and Personal Injury (Alabama, Mississippi, and Texas);

(4)   All claims barred by the Economic Loss Doctrine (Alabama, Mississippi, Texas, and Louisiana); and

(5)   Medical Monitoring (Louisiana, Mississippi, Alabama, and Texas).

BDDB01 5493180v2

Respectfully submitted,

**ADAMS AND REESE LLP**


By:  /s/ Scott E. Delacroix
     Scott E. Delacroix, T.A. (#4823)
     701 Poydras Street, Suite 4500
     New Orleans, Louisiana 70139
     (504) 581-3234
     (504) 566-0210 (fax)

     J. Joseph Tanner (*Pro Hac Vice to be filed*)
     Baker & Daniels LLP
     300 North Meridian Street, Suite 2700
     Indianapolis, Indiana  46204
     (317) 237-1000
     (317) 237-0300 (fax)

     Thomas C. Kus (*Pro Hac Vice to be filed*)
     Baker & Daniels LLP
     111 East Wayne Street, Suite 800
     Fort Wayne, Indiana  46802
     (260) 424-8000
     (260) 460-1700 (fax)

ATTORNEYS FOR DEFENDANT
TIMBERLAND RV COMPANY


**ALLEN & GOOCH**


By:  /s/ Brent M. Maggio
     Brent M. Maggio, T.A. (#19959)
     3900 North Causeway Boulevard, Suite 1450
     Metairie, Louisiana 70002
     (504) 836-5200
     (504) 836-5205 (fax)

ATTORNEYS FOR DEFENDANT HEARTLAND
RECREATIONAL VEHICLES, LLC

- 37 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all known counsel of record.

By: /s/ Scott E. Delacroix