UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION "N" (5)<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

**THIS DOCUMENT RELATES TO ALL CASES**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT UNITED STATES' MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' "MOTION FOR DIRECT FILING INTO THE
EASTERN DISTRICT OF LOUISIANA" [Doc. No. 1076]**

**INTRODUCTION**

Pursuant to Pretrial Order No. 28 [Doc. No. 1096], defendant United States of America hereby submits this memorandum in opposition to Plaintiffs' "Motion for Direct Filing into the Eastern District of Louisiana" [Doc. No. 1076]. Plaintiffs have failed to provide adequate legal authority to justify their requested remedy. Their direct filing proposal contravenes the venue provision of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1402(b), and ignores the multidistrict litigation procedures set forth in 28 U.S.C. § 1407. As the Supreme Court made clear in *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35-36 (1998), a transferee court presiding over a multidistrict litigation ("MDL Court"), is a court of limited authority – particularly as it relates to matters of venue. *See id*. at 40 (limiting an MDL Court's ability to transfer cases because remand by the United States Judicial Panel on Multidistrict Litigation ("MDL Panel") is imperative); *see also* 28 U.S.C. § 1407 (enabling the multidistrict litigation process and defining the role of the MDL Panel and an MDL Court).

As described in their motion [Doc. No. 1076], Plaintiffs seek to have this Court enter an

order allowing all persons to file their actions in the Eastern District of Louisiana, regardless of proper venue.  According to Plaintiffs, this process would allow all actions which would "otherwise be transferable to this MDL" to be directly filed in this MDL Court.  *See* PSC Mot. [Doc. No. 1076] at 1.  Plaintiffs assert that this remedy will eliminate delays and promote judicial economy.  *See* PSC Mem. [Doc. No. 1076-2] at 1.

As discussed below, the United States specifically disputes the practical utility of direct filing because it would inevitably result in a large number of change-of-venue motions under 28 U.S.C. § 1404(a).  Nevertheless, even accepting Plaintiffs' notions of convenience and efficiency as true, such considerations cannot override the explicit will of Congress.  Since Plaintiffs will purportedly file a number of additional tort actions against the United States in this multidistrict litigation, these actions are required to be filed in accordance with the FTCA's venue provision.  *See* 28 U.S.C. § 1402(b) (specifying the exclusive judicial districts where a plaintiff may sue the United States in tort).  It is the United States' statutory right to enforce compliance with this venue provision.  Plaintiffs' general citations to the Federal Rules of Civil Procedure are unpersuasive.  *See* Fed. R. Civ. P. 82 (stating that the Federal Rules of Civil Procedure cannot be used to extend or limit the venue of actions); *id*. 83(b) (stating that practice must be regulated in a manner consistent with federal law).

In addition, an MDL Court may not override the mandatory multidistrict litigation procedures set forth in 28 U.S.C. § 1407.  *See Lexecon*, 523 U.S. at 40.  This framework is not optional.  In the words of another Court that has addressed direct filing:

> This direct filing strategy not only bypasses the multidistrict litigation statute providing transfer and later remand, but also threatens to burden this court with unnecessary transfer decisions under 28 U.S.C. § 1404(a).

*In re Norplant Contraceptive Prod. Liab. Litig.*, 946 F. Supp. 3, 3-4 (E.D. Tex. 1996). The multidistrict enabling statute already provides the process by which MDL Courts are to preside over coordinated cases that arise in other judicial districts. It also provides that it is the MDL Panel, not the MDL Court, that is to decide when actions should be sent to their proper judicial districts for trial. For all of these reasons, Plaintiffs' motion requesting a different system must be denied. Their proposed remedy would impermissibly supplant the relevant portions of the FTCA's venue provision and the multidistrict enabling statute.

## LEGAL BACKGROUND

Upon motion, the MDL Panel entered a Transfer Order regarding the instant case on October 24, 2007.[1] *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 528 F. Supp. 2d 1350 (J.P.M.L. 2007). Through this order, the MDL Panel ruled that multiple civil actions pending in different federal districts involved one or more common questions of fact (*i.e.*, shared allegations that trailers provided by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita contained materials which emitted excessive levels of formaldehyde). *Id*. at 1351. As a result, the MDL Panel exercised its authority under 28 U.S.C. § 1407, and chose to centralize this litigation for coordinated or consolidated pretrial proceedings in the Eastern District of Louisiana. *Id*. By so ruling, the MDL Panel determined that the system established by the multidistrict litigation enabling statute would best serve the convenience of the parties, promote the just and efficient conduct of the litigation, and conserve judicial resources. The new multidistrict litigation was numbered MDL 1873 and assigned to the

---

[1] The MDL Panel, made up of seven sitting federal judges appointed by the Chief Justice of the United States, was created by Congress in 1968. *See* 28 U.S.C. § 1407.

Honorable Kurt D. Engelhardt. *Id*.

The multidistrict litigation enabling statute provides that the MDL Court selected by the MDL Panel is authorized to preside over coordinated or consolidated pretrial proceedings. *See* 28 U.S.C. § 1407(a). All transferred actions not terminated during pretrial proceedings by the transferee MDL Court <u>must</u> be remanded to their originating transferor districts – at or before the conclusion of the centralized pretrial proceedings – by the MDL Panel.[2] *Id*.; *Lexecon*, 523 U.S. at 35-36. This imperative remand directly hinges on the existence of an initial transfer. The MDL Panel initially transfers actions arising in a judicial district other than the judicial district of the MDL Court to the transferee MDL Court. It is only by and through this process, pursuant to 28 U.S.C. § 1407, that the MDL Court may conduct centralized pretrial multidistrict litigation proceedings and shed the typical encumbrances of *in personam* jurisdiction and venue (absent a specific waiver and stipulation to the contrary). *See In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976). The MDL Panel, not the MDL Court, possesses the sole authority to manage its docket by transferring new cases to existing MDLs and remanding cases to proper judicial districts for trial once a transferee MDL Court has finished its work.

New cases originating in other judicial districts that must be transferred to an already

---

[2] Though the words are often used interchangeably, a technical distinction should be drawn between actions that are *transferred* to the MDL Court and actions that are *centralized* in the MDL Court. Actions *centralized* in the MDL Court include actions with proper venue in the MDL Court's judicial district (in this case, actions with proper venue in the Eastern District of Louisiana). Actions *transferred* into the MDL Court refer only to those actions that originated in a transferor court outside the MDL Court's judicial district. *See* Hon. John G. Heyburn II, *A View from the Panel: Part of the Solution*, 82 Tul. L. Rev. 2225, 2227, n. 12 (2008).

existing MDL Court are referred to by the MDL Panel as "tag-along" actions.[3]  As these new actions are filed in various judicial districts, it is the MDL Panel that is charged with deciding whether to issue a Conditional Transfer Order ("CTO") to transfer that particular action from the judicial district where it was filed to the transferee MDL Court.  *See* Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("R.P.J.P.M.L.") 7.4-7.5, 199 F.R.D. 425, 435-36. Assuming the MDL Panel decides to transfer an action for the same reasons expressed in the initial MDL Transfer Order, affected parties are then provided with an opportunity to oppose the MDL Panels' CTO.  *See id.* at 7.4(c), 199 F.R.D. at 435 (stating that an opposition to a CTO must be filed within fifteen (15) days of the CTO's entry).  It is the MDL Panel that decides whether to transfer, and it is the MDL Panel that actually transfers the new case to the transferee MDL Court.[4]  *See id*. at 7.4(a), 199 F.R.D. at 435.  This procedure has been specifically established to ensure that "tag-along" actions may be processed and transferred as efficiently as possible.[5]

Because the multidistrict litigation enabling statute only authorizes the MDL Court to

---

[3] A "tag-along" action refers to "a civil action pending in a district court involving common questions of fact with actions previously transferred under Section 1407."  *See* R.P.J.P.M.L. 1.1, 199 F.R.D. at 427.  Because the *FEMA Formaldehyde* multidistrict litigation was created on October 24, 2007, all subsequently filed cases, and all cases that may be filed in the future, should be considered potential "tag-along" actions.  *See id*.; *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 528 F. Supp. 2d at 1351.

[4] Where a potential "tag-along" action has proper venue in the transferee judicial district, no action is required on the part of the MDL Panel.  *See* R.P.J.P.M.L., 7.5(a), 199 F.R.D. at 436.  These cases are *centralized* rather than *transferred*.  *See supra* at n. 2.

[5] As described by its current Chairman, the MDL Panel "efficiently processes and transfers literally thousands of tag-along actions (over 6000 in 2007 alone) each year from their respective courts to the involved MDLs."  Hon. John G. Heyburn II, *A View from the Panel: Part of the Solution*, 82 Tul. L. Rev. 2225, 2233 (2008).

preside over cases for pretrial and discovery proceedings, remand to the originating judicial districts for trial is imperative.[6] 28 U.S.C. § 1407(a) ("Each action so transferred <u>shall</u> be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred . . .") (emphasis added); *Lexecon*, 523 U.S. at 35-36 (holding that the remand procedure described by § 1407(a) is "unconditional"). The remand procedure is similar to, but the reverse of, the initial "tag-along" transfer procedure for new actions. The MDL Panel issues a Conditional Remand Order ("CRO") upon a suggestion of remand from the transferee MDL Court, a motion by a party, or at the MDL Panel's own initiative. *See* R.P.J.P.M.L. 7.6(c), 199 F.R.D. at 438. Parties are then allowed an opportunity to file a notice of opposition within an established time period. *See id.* at 7.6(f), 199 F.R.D. at 438. The authority to remand actions from the transferee MDL Court to the transferor judicial district at the conclusion of pretrial proceedings is vested <u>solely</u> with the MDL Panel – not with the transferee MDL Court. *See In re Patenaude*, 210 F.3d 135 (3d Cir. 2000); *In re Roberts*, 178 F.3d 181, 183 (3d Cir. 1999). As the enabling statute provides, both the initial transfer and the

---

[6] The *Lexecon* imperative would not bar a transferee MDL Court from trying a "bellwether" case that was originally and properly filed in the transferee MDL Court's judicial district (a *centralized* case, rather than a *transferred* case). *See* Hon. John G. Heyburn II, *A View from the Panel: Part of the Solution*, 82 Tul. L. Rev. 2225, 2234, n. 47 (2008). This is the kind of plan proposed in the instant MDL action. *See* Pretrial Order No. 28 [Doc. No. 1096] at 2. Under *Lexecon*, any cases selected to be the subjects for bellwether trials that are to be tried by the transferee MDL Court must have proper venue in the Eastern District of Louisiana. 523 U.S. at 36. At this time, the United States has not consented that this MDL Court may try any actions that are without proper venue in the Eastern District of Louisiana. *See In re Carbon Dioxide Indus. Antitrust Litig.*, 229 F.3d 1321 (11th Cir. 2000) (holding that § 1407(a)'s automatic remand was waived based on the actions of the parties – where plaintiffs failed to timely raise the issue and stipulated that venue was proper in the MDL Court). If the United States were to agree to a direct filing arrangement, it is possible that it could potentially be held to have waived its right to automatic remand, under 28 U.S.C. § 1407(a), for trial in judicial districts of proper venue – thereby allowing the MDL Court to try all actions in the MDL.

eventual remand of all actions associated with an MDL (except for those arising in the MDL Court's judicial district) must pass through the MDL Panel.[7]  *See* 28 U.S.C. § 1407(a).

## ARGUMENT

**I.      Congress Has Explicitly Provided The Proper Venue For Filing FTCA Claims.**

The proper venue for claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, is set forth in 28 U.S.C. § 1402(b).  This section must serve as the starting point for any discussion regarding where a plaintiff may file his or her tort claims against the United States.  Congress has provided:

> Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title [the FTCA] may be prosecuted <u>only</u> in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.

28 U.S.C. § 1402(b) (emphasis added).  These two judicial districts – (1) where the plaintiff resides and (2) where the act or omission at issue occurred – are the only two places where a plaintiff may file a tort suit against the United States.  *Id.*  In the instant case, the latter venue is presumed to be the judicial district where the plaintiff resided in a FEMA housing unit (*e.g.*, travel trailer), because that is where Plaintiffs' surviving allegations regarding negligent acts or omissions on the part of FEMA are likely to have taken place (*i.e.*, where FEMA allegedly failed to respond to formaldehyde concerns surrounding the particular occupant's FEMA housing unit). *See* October 3, 2008, Order and Reasons [Doc. No. 717] at 42-43; December 29, 2008, Order and Reasons [Doc. No. 1014] at 45-46.  Regardless, pursuant to the FTCA's venue provision, it

---

[7] As discussed *infra*, Plaintiffs' direct filing proposal would replace the automatic remand provided for by 28 U.S.C. § 1407(a), with a series of transfers under 28 U.S.C. § 1404(a).  Even if the MDL Court had the authority to transfer cases under § 1404(a), this procedure cannot substitute for the MDL Panel remand provided for by the multidistrict enabling statute – this is precisely the kind of practice barred by the Supreme Court in *Lexecon*. 523 U.S. at 35-36.

is clear that the Eastern District of Louisiana will not be a judicial district of proper venue for a number of potential plaintiffs in this action. Courts are not free to alter the explicit will of Congress. This is particularly true in this instance, where the venue provision is a part of the FTCA – a limited waiver of sovereign immunity.[8]  *See generally United States v. Idaho*, 508 U.S. 1, 7 (1993). It matters not that the MDL Panel may eventually transfer the case to this Court for coordinated pretrial proceedings.[9]  That is for the MDL Panel to decide. Any asserted equities that may follow from allowing Plaintiffs to file their tort claims against the United States

---

[8] The FTCA's venue provision is usually not read to alter the jurisdictional bounds of the FTCA's limited waiver of sovereign immunity. As a result, courts have ruled that the United States may waive the requirements of 28 U.S.C. § 1402(b) if it fails to assert a timely objection. *See* 28 U.S.C. 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not impose timely and sufficient objection to venue."); *Upchurch v. Piper Aircraft Corp.*, 736 F.2d 439 (8th Cir. 1984) (discussing the nature of the FTCA's venue provision); *see generally Panhandle E. Pipe Line Co. v. FPC*, 324 U.S. 635 (1945) (stating that lack of proper venue may be waived, even by the government). No such waiver has occurred in this case. A minority of cases suggest that the FTCA's venue provision is jurisdictional in nature. *See, e.g., Reuber v. United States*, 750 F.2d 1039, 1048-49, n. 11 (D.C. Cir. 1984), *overruled on other grounds by Kauffman v. Anglo-American Sch. of Sofia*, 28 F.3d 1223 (D.C. Cir. 1994); *Kimberlin v. Quinlan*, 774 F. Supp. 1, 10 (D.D.C. 1991). These cases present an even more extreme example as to why direct filing cannot be allowed. Under this line of authority, the venue statute in 28 U.S.C. § 1402(b) is treated as an explicit condition on the United States' waiver of sovereign immunity under the FTCA. *See Reuber*, 750 F.2d at 1048-49, n. 11. Based on this interpretation of the statute, if plaintiffs were allowed to file actions against the United States in a judicial district other than the two specified in 28 U.S.C. § 1402(b), it would be dubious whether any court could properly exercise jurisdiction over their claims. *See id.*; *Kimberlin*, 774 F. Supp. at 10 (stating that 28 U.S.C. § 1402(b), as a part of the FTCA's limited waiver of sovereign immunity, specifies precisely where FTCA actions may be filed; therefore, the venue provision should be strictly construed).

[9] Unlike transfers pursuant to 28 U.S.C. § 1404(a), transfers made by the MDL Panel under 28 U.S.C. § 1407(a) are not limited by venue statutes. This flexibility is solely afforded to the MDL Panel so that it may carry out its mission of transferring actions for the purpose of coordinated pretrial proceedings. The section cannot be read to alter a venue provision, such as that contained in the FTCA, that defines where an action is to be filed at its inception (prior to any potential transfer under 28 U.S.C. § 1407(a)). *See* 28 U.S.C. 1402(b).

in a judicial forum other than the two forums allowed by the FTCA cannot override the FTCA's explicit restrictions.

The ability to waive filing in a judicial district of proper venue rests solely in the hands of the United States. It has chosen not to do so in this case.[10] Thus, the United States holds the privilege to insist that all plaintiffs file their FTCA claims in one of the two forums announced in the FTCA. Plaintiffs offer no authority in support of their position that an MDL Court may unilaterally override the FTCA's requirement that all plaintiffs must institute suit in one of the two judicial districts specified in 28 U.S.C. § 1402(b). Although Plaintiffs reference the general principles espoused in Fed. R. Civ. P. 16, 42, and 83, in support of their proposal, Fed. R. Civ. P. 82 makes clear that "[t]hese rules do not extend or limit . . . the venue of actions." *See also* Fed. R. Civ. P. 83 (stating that a judge's regulation of practice must be "consistent with federal law"). In this instance, federal law controls where FTCA actions may be filed, and its mandate may not be subverted. *See id*; *see also* 28 U.S.C. § 1402(b).

## II.     Direct Filing Would Impermissibly Bypass The Multidistrict Litigation Process For Transfer And Remand.

### A.     By Circumventing MDL Panel Transfer, Direct Filing Would Bypass The Means By Which The MDL Court Acquires Its Authority.

Plaintiffs' direct filing proposal would have this Court adopt an entirely new procedure –

---

[10] The United States has chosen not to stipulate to Plaintiffs' direct filing proposal, and thus has elected not to waive the specific venue privilege afforded by 28 U.S.C. § 1402(b). Although this decision must be considered within the United States' exclusive province, the United States did not make this decision without careful consideration. The decision is the product of a number of both legal and practical concerns. *See infra* at Section II; *see also supra* at n. 6. Among these concerns is that if the United States were to waive venue, even for the limited purpose of direct filing, it is possible that this waiver could affect the United States' right to insist that all cases be tried in a judicial district of proper venue. *See In re Carbon Dioxide*, 229 F.3d at 1321.

one that directly contravenes the processes set forth by the multidistrict enabling statute and the rules of the MDL Panel.  *See* 28 U.S.C. § 1407.  As set forth in Plaintiffs' motion, they seek relief such that all plaintiffs would be allowed to file their actions in the Eastern District of Louisiana, regardless of whether this judicial district is a proper venue for their tort action against the United States (as required by the FTCA's venue provision).  *See* PSC Mot. at 1.  The proposal would then allow for these actions to be centralized before the MDL Court as a part of this multidistrict litigation, as long as the actions "would otherwise be transferable to this MDL had they been filed in another venue."  *Id.*

On its face, Plaintiffs' proposal presents a substantial problem.  Who is to decide whether an action "would otherwise be transferable to this MDL"?  *See id.*  Under 28 U.S.C. § 1407(a), all transfers "shall be made by the judicial panel on multidistrict litigation."  This is the same kind of imperative language that the Supreme Court has already held cannot be overridden by a transferee MDL Court.  *See Lexecon*, 523 U.S. at 35 (holding that the language in § 1407(a) stating "each action so transferred shall be remanded . . ." is mandatory).  It is within the sole discretion of the MDL Panel to decide whether an action without proper venue in the transferee MDL Court should be handled as a part of a multidistrict litigation.  *See id.*; R.P.J.M.L 7.4-7.5, 199 F.R.D. at 435-36.

As additional "tag-along" actions are filed, it is only by and through a transfer from the MDL Panel that the authority presented in 28 U.S.C. § 1407(a) may be invoked, and that the MDL Court may shed the typical encumbrances of *in personam* jurisdiction and venue.  *See In re FMC Corp.*, 422 F. Supp. at 1165.  Plaintiffs' proposal strips the MDL Panel of its right to assess whether a case should be transferred to a multidistrict litigation, and does not afford any of the

protections set forth in MDL Panel Rule 7.4, which allows affected parties to oppose the transfer of an action to an MDL Court. R.P.J.M.L 7.4, 199 F.R.D. at 435. Under Plaintiffs' plan, this Court, as transferee MDL Court, would be forced to carry the burden of assessing whether all new actions should be handled as a part of this multidistrict litigation; otherwise, Plaintiffs would have unfettered control over the decision as to whether a case has enough common questions of fact to be handled as a part of this multidistrict litigation. Neither option serves as an acceptable substitute for the multidistrict litigation procedures already set forth by Congress, and the rules promulgated thereto by the MDL Panel.[11] *See* 28 U.S.C. 1407(a); R.P.J.M.L 7.4-7.5, 199 F.R.D. at 435-36. In this case, there simply is no reason to re-invent the wheel.[12]

---

[11] While Plaintiffs suggest that a number of practical concerns may be avoided through "appropriate communication as needed between this Court and transferee courts (to assure, for example, that a docketing and a case number are made available for matters first filed in the MDL but designating venue in the transferee court)" (PSC Mem. at 2-3), this simply shifts the administrative burden from a formal and transparent process handled by the transferor courts and the MDL Panel, to an informal and opaque process handled by the MDL Court. The efficiency of such an improvised system versus the well-established process that is already in place is certainly questionable.

[12] Although Plaintiffs argue that "hundreds of [ ] future complaints now may be filed," and that requiring transfer of each of these cases through the MDL Panel "will entail a considerable expenditure of time and resources" (PSC Mem. at 3), the MDL Panel transfer process was set up to handle these very circumstances. *See supra* at n. 2. A review of recent docket information contained on the MDL Panel's website attests to the volume of actions transferred on a regular basis without the need for an improvised process. *See* United States Judicial Panel on Multidistrict Litigation, *Docket Information*, at http://www.jpml.uscourts.gov/index.html (*e.g.*, MDL 1507, *In re Prempro Prod. Liab. Litig.*, containing 8,075 total actions; MDL 1699, *In re Bextra and Celebrex Mktg. Litig.*, containing 2,093 total actions; MDL 1769, *In re Seroquel Prod. Liab. Litig.*, containing 7,641 actions; MDL 1708, *In re Guidant Corp. Prod. Liab. Litig*, containing 2,107 actions; MDL 1742, *In re Ortho Evra Prod. Liab. Litig*, containing 1,339 actions).

### B. A Direct Filing Order Would Contravene The Holding In *Lexecon* And Bypass The MDL Panel's Duty To Remand.

By offering a proposal that bypasses the authority of the MDL Panel and its established procedures, Plaintiffs ask this Court to discount the very principles announced in *Lexecon*. *See* 523 U.S. at 35. As discussed *supra*, an MDL Court must inevitably remand all cases to their proper originating judicial district for trial at or before the conclusion of all pretrial and discovery proceedings. *See* 28 U.S.C. § 1407(a); *Lexecon*, 523 U.S. at 35. For this "unconditional" remand to take place, cases must be initially filed in a judicial district of proper venue. Otherwise, there is no judicial district for the inevitable remand of such actions. Again, it is the MDL Panel who is solely responsible for ordering the remand of cases that are before the MDL Court. *See In re Patenaude*, 210 F.3d at 135. The MDL Panel has been assigned to make the final call regarding whether or not cases should be removed from coordinated pretrial proceedings and remanded for trial.

Although the MDL Panel is reluctant to order remand absent a suggestion of remand from the transferee MDL Court, remand can be granted based upon the motion of any party or upon the MDL Panel's own initiative. *See* R.P.J.P.M.L. 7.6(c)-(d), 199 F.R.D. at 438. Plaintiffs' direct filing plan vests the MDL Court with a power that it simply does not have under 28 U.S.C. § 1407(a). Rather than allowing the MDL Panel to make the final decision regarding whether a case or cases should be sent to their proper judicial districts, Plaintiffs' proposal allows "this Court" – the MDL Court – to make this important decision. *See* Proposed Order at 2. In addition, Plaintiffs proposal provides none of the procedural safeguards that the MDL Panel put in place regarding potential remand. *See* R.P.J.M.L. 7.6(f), 199 F.R.D. at 438 (allowing for any party opposing potential remand to file a notice of opposition with the MDL

Panel). Direct filing fundamentally alters the structure of multidistrict litigation by consolidating all of the authority that would otherwise rest with the MDL Panel in the hands of the MDL Court, thereby divesting the MDL panel of its power to remand.

By bypassing the need for the MDL Panel to transfer cases in the first instance, direct filing does not allow for a process by which the MDL Panel can remand cases back to their appropriate judicial districts. The system created by 28 U.S.C. § 1407 is built in such a way that cases arising in other judicial districts must first pass through the MDL Panel to the MDL Court, and then pass from the MDL Court back through the MDL Panel to the proper judicial district for trial. It is only by passing through the MDL Panel that the MDL Court garners authority under 28 U.S.C. § 1407 to preside over cases that it would otherwise be unable to handle.

### C. Direct Filing Threatens To Burden This Court With Numerous Change-Of-Venue Decisions.

By circumventing the statutory procedure for the MDL Panel to initially transfer and then remand cases, Plaintiffs' proposal threatens to burden this Court with a wave of unnecessary transfer decisions under 28 U.S.C. § 1404(a). In their Proposed Order [Doc. No. 1076-4], Plaintiffs suggest that:

> Upon the completion of all pretrial proceedings applicable to any case before this Court pursuant to this order, this Court, pursuant to 28 U.S.C. § 1404(a), will transfer that case to the federal district court of proper venue, as defined in 28 U.S.C. § 1391, based on the recommendations of the parties to that case.

*Id*. at 2 (emphasis added). Aside from its refusal to account for the requirements of the FTCA's venue provision, 28 U.S.C. § 1402(b), this language exhibits the fatal flaw with Plaintiffs' direct filing proposal. It substantially alters the automatic remand provision set forth in 28 U.S.C. § 1407(a), and ignores the difference between remand and transfer. *See Lexecon*, 523 U.S. at 35-

13

36. As discussed above, it is the MDL Panel that has the authority to remand cases to their judicial district of proper venue. *See* 28 U.S.C. § 1407(a). Instead, Plaintiffs would have the MDL Court carry the burden of making a series of individual determinations under 28 U.S.C. § 1404(a) as to where the actions should be transferred.[13] *See* Proposed Order at 2. Such a process would potentially require hundreds of transfers to be individually litigated based on the criteria set forth in 28 U.S.C. § 1404(a). Thus Plaintiffs' proposal would increase, rather than decrease the potential burdens on this Court.

More importantly, the Supreme Court's holding in *Lexecon* rejects the proposition that an MDL Court has the authority to invoke the change-of-venue statute, 28 U.S.C. § 1404(a). *See Lexecon*, 523 U.S. at 35 (stating that the <u>MDL Panel</u> is obligated to remand cases to their originating courts – this obligation is "impervious to judicial discretion"); *id.* at 39 ("if an order may be made under § 1404(a), it may be made <u>after</u> <u>remand</u> of the case to the originating district court") (emphasis added). Only the MDL Panel has the authority to decide when and where cases should be sent for trial. "[T]he statutory language of § 1407 precludes a transferee court [MDL Court] from granting <u>any</u> § 1404(a) motion." *Lexecon*, 523 U.S. at 41, n. 4 (emphasis added); *see In re PPA Prod. Liab. Litig.*, 2005 WL 1528946, at *1 (June 24, 2005 W.D. Wash.)

---

[13] 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

*Id.* Since the FTCA's venue provision allows for two potential judicial districts where a plaintiff may pursue his or her claim, the parties may be forced to litigate which of the two districts is more appropriate in light of the principles stressed in 28 U.S.C. § 1404(a). *See* 28 U.S.C. § 1402(b). At the conclusion of coordinated pretrial proceedings, this would likely create a large volume of change-of-venue litigation.

("The court concludes that given the language of 28 U.S.C. § 1407(a) and the Supreme Court's *Lexecon* opinion, it does not have the authority to rule on any motion to transfer a case under 28 U.S.C. § 1404(a)"); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 190 F. Supp. 2d 1125, 1146, n. 31 (S.D. Ind. 2002).

Aside from Plaintiffs' guarantees that their direct filing proposal will not substantively alter the rights of the parties, the potential consequences of replacing automatic remand under 28 U.S.C. § 1407(a) (by the MDL Panel) with individual transfer under 28 U.S.C. § 1404(a) (by the MDL Court) are obvious. The United States could potentially lose its right to have cases sent back to their proper judicial districts for trial at the conclusion of all coordinated pretrial proceedings.[14] The notion of even a limited partial waiver of proper venue for filing is unsettling given the willingness of some courts to use waiver as means to get around *Lexecon* and justify the MDL Court's authority to try cases arising from other judicial districts. *See Armstrong v. LaSalle Bank Nat. Ass'n*, 552 F.3d 613, 616 (7th Cir. 2009) (holding that a party to an MDL action may waive § 1407(a) right to remand); *In re Carbon Dioxide*, 229 F.3d at 1321 (same); *Solis v. Lincoln Electric Co.*, 2006 WL 266530, at *4 (Feb. 1, 2006 N.D. Ohio) (same).

At best, Plaintiffs' direct filing procedure shifts an administrative burden from the filing

---

[14] MDL Panel Rule 7.6(b) suggests that through direct filing, the United States could lose its right to have cases sent back to their judicial districts of proper venue:

> Actions that were <u>originally filed in the transferee district</u> require no action by the Panel to be reassigned to another judge in the transferee district at the conclusion of the coordinated or consolidated pretrial proceedings affecting those actions.

R.P.J.P.M.L., 7.6(b), 199 F.R.D. at 438 (emphasis added). This would amount to an infringement of the United States' rights under the multidistrict litigation enabling statute. *See* 28 U.S.C. § 1407(a).

stage of the litigation to the eventual remand/transfer stage. It is dubious whether any net-benefit actually accrues. Any delays avoided by eliminating the need for transfer (PSC Mem. at 1), will be replaced with delays caused by the need to litigate scores of transfers under 28 U.S.C. § 1404(a) at the close of coordinated pretrial proceedings. This potential burden should not be overlooked.[15] The parties would potentially be forced to unnecessarily litigate a countless number of change-of-venue transfer decisions for actions that would otherwise simply be remanded by the MDL Panel to the judicial district where they were properly filed. *See* 28 U.S.C. § 1407(a); *In re Norplant*, 946 F. Supp. at 3-4. As aptly stated in *In re Norplant*:

> If a party avoids the need for an MDL transfer order by filing directly in this court, the court is unable to rely on § 1407 for the efficient remand of such case to the proper venue after pretrial proceedings are concluded. Instead, the court is forced to engage in the more burdensome task of relying on 28 U.S.C. § 1404(a) in evaluating the need for a change of venue.

946 F. Supp. at 4.

### D. Experimentation With Direct Filing Is Not Appropriate In This Case.

The lone case cited by Plaintiffs in support of their direct filing proposal is inapposite to this action. In *In re Vioxx Prod. Liab. Litig.*, another multidistrict litigation consolidated in the Eastern District of Louisiana, the Court "experimented with direct filing" to "eliminate some administrative inefficiencies of multidistrict litigation." 478 F. Supp. 2d 897, 903 (E.D. La. 2007); *see also In re Vioxx*, 522 F. Supp. 2d 799, 812 (E.D. La. 2007) (describing the direct

---

[15] The reality of eventual remand should not be taken lightly. Since the Supreme Court's decision in *Lexecon*, several thousands of actions, as opposed to hundreds, are remanded from MDL transferee courts on a yearly basis for trial. *See In re MTBE Prod. Liab. Litig.*, 2005 WL 106936, at *4 (Jan. 18, 2005 S.D.N.Y. 2005) (describing *Lexecon* as changing "the practical realities of multi-district litigation"). As a result, this Court must seriously consider the possibility that, under Plaintiffs' proposal, it would potentially be required to litigate hundreds of individual transfers under 28 U.S.C. § 1404(a). *See* Proposed Order at 2.

filing procedure as "experimentation"). Significantly, this experimentation was the product of a stipulation and agreement by the parties. *Id.* at 903-904 (discussing Pretrial Order No. 11 in *Vioxx)*. Unlike here, the parties voluntarily waived certain rights. The Court in *Vioxx* remarked that direct filing allowed it to treat all directly filed actions as if they were actions that could have been filed with proper venue in the Eastern District of New Orleans. *See id*. at 904. This constitutes a fairly significant change in the scope of an MDL Court's power. All actions would then be treated as *centralized* rather than *transferred* actions. *See supra* at n. 2; *see also supra* at n. 6 (discussing how these two different types of MDL actions may be treated differently in terms of the authority of the MDL Court to try such actions). The MDL Court in *Vioxx* stated that the "MDL Court technically has complete authority over every aspect" of directly filed cases. 478 F. Supp. 2d at 904. In the absence of a waiver through stipulation, this arrangement cannot be said to be in line with the principles discussed in *Lexecon* or 28 U.S.C. § 1407(a).

The improvisation in *Vioxx* was not without consequences, as it affected which state's choice-of-law rules would be applied. *See id.* at 903 (stating that in the context of a diversity suit, the judicial district where the actions were directly filed should be considered the forum state, and thus the MDL Court should apply the choice-of-law rules for the state where the actions were directly filed into the MDL). As the MDL Court in *Vioxx* warned, "this potential implication of direct filing is one that should be considered by other MDL courts." *Id*. at 904; *see also id.* at 904, n. 2 (discussing how direct filing creates an oddity by reversing the traditional "transferor"/"transferee" roles and altering the choice-of-law exercise); *id*. at 904 (noting that "the Judiciary could benefit from further thought on the direct filing concept . . . ."). Plaintiffs simply cannot argue that experimenting with direct filing in this case will not

potentially alter the substantive rights of the parties. While the experiment was conducted in *Vioxx* with the consent and agreement of the parties, the United States specifically objects to such an arrangement in this case. Thus, here, it would be an experiment in which the United States is an unwilling participant. Plaintiffs cite no authority to support the proposition that a Court may unilaterally allow direct filing over the objection of a defendant.

## CONCLUSION

Although Plaintiffs refer to this Court's "broad discretionary authority" (PSC Mem. at 3), a "special-procedure" should not be crafted where a mandatory procedure already exists. *See* 28 U.S.C. § 1407(a). It is important to remember that the very MDL procedures Plaintiffs wish to circumvent were specifically enacted to reduce costs and promote judicial economy. *See In re Norplant*, 946 F. Supp. at 3. An order allowing direct filing would be inconsistent with the clear statutory mandate of the FTCA's venue provision, 28 U.S.C. § 1402(b), the multidistrict litigation enabling statute, 28 U.S.C. § 1407(a), and the Supreme Court's holding in *Lexecon*. While the need to promote efficiency in litigation is real, it cannot be accomplished by overriding the applicable provisions set forth by Congress.

Dated: February 18, 2009  Respectfully Submitted,

MICHAEL F. HERTZ
Acting Assistant Attorney General

J. PATRICK GLYNN
Director, Torts Branch

HENRY T. MILLER
Senior Trial Counsel

s/ Adam M. Dinnell
ADAM M. DINNELL (TX Bar No. 24055405)
Trial Attorney

United States Department of Justice
Civil Division, Torts Branch
Environmental Torts
P.O. Box 340, Ben Franklin Station
Washington, DC 20004
Phone: (202) 616-4211
E-mail: Adam.Dinnell@usdoj.gov

Attorneys for Defendant
United States of America

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served through the Court's CM/ECF system on February 18, 2009, upon Liaison Counsel.

s/ Adam M. Dinnell<br>
ADAM M. DINNELL