UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                       MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION        SECTION "N-5"

                                                                     JUDGE ENGELHARDT
                                                                     MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

-------------------------------------------------------------------------------

**PSC MEMORANDUM IN OPPOSITION TO MANUFACTURED HOUSING
DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

**MAY IT PLEASE THE COURT**

The Plaintiffs' Steering Committee ("PSC") respectfully submits this opposition to Manufactured Housing Defendants' Joint Rule 12(b)(6) Motion to Dismiss Based on Federal Preemption. These Defendants allege that dismissal of plaintiffs' claims against them is proper on the ground that the National Manufactured Housing Construction and Safety Standards Act preempts plaintiffs' claims. However, the Act neither expressly nor implicitly preempts the state tort law-based claims of the plaintiffs against the Defendants-movants. For the reasons more fully set forth herein, the motion should be denied.

**I. Factual Background**

The "Manufactured Housing Defendants" initially were made defendants in the current action by the filing of the Amended Administrative Master Complaint which matched named plaintiffs to each defendant. (Rec. Doc. 722, filed on 10/06/2008). These defendants manufactured mobile housing units as defined by the National Manufactured Housing

Construction and Safety Standards Act [hereinafter referred to as the "Manufactured Housing Act" or the "Act"]. The units then were sold to FEMA after Hurricanes Katrina and Rita for the purpose of providing temporary housing to plaintiffs. Plaintiffs in the original and Amended Administrative Master Complaints allege that the Manufacturing Housing Defendants, along with all other Manufacturing Defendants, manufactured products (housing units) which were defective based on unsafe levels of formaldehyde and/or the absence of adequate warnings about same, giving rise to liability for the resulting injuries of plaintiffs pursuant to the tort laws of Alabama, Mississippi, Louisiana and Texas, as applied to those plaintiffs who were exposed in these states respectively.

**II. Law and Analysis**

Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. *See Southern Christian Leadership Conference v. Supreme Court*, 252 F.3d 781, 786 (5th Cir. 2001). In considering a Rule 12(b)(6) motion to dismiss, the Court must take the well-pleaded factual allegations of the complaint as true. *See Jaufre v. Taylor*, No. Civ. A. 03-0028, 04 WL 1444945, at *1 (E.D.La. 6/25/04) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In addition, "[a]ll questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 257 (5th Cir. 2001); *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 310 (5th Cir. 2002). The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claim. *See Scheuer v. Rhodes*, 416 U.S. 232 (1974). Accordingly, the Court may dismiss a complaint "only if it appears certain that the plaintiffs[s] cannot prove any set of facts in support of [their] claim that would entitle[them] to relief." *Jaufre*, at *1.

    a.  <u>Federal Statutory Provisions</u>

The stated purposes of the Manufactured Housing Act are: (1) to protect the quality, durability, safety, and affordability of manufactured homes; (2) to facilitate the availability of affordable manufactured homes and to increase homeownership; (3) to provide for the establishment of practical, uniform, and, to the extent possible, performance-based Federal construction standards for manufactured homes; (4) to encourage innovative and cost-effective construction techniques for manufactured homes; (5) to protect residents of manufactured homes with respect to personal injuries and property damage in manufactured housing, consistent with the other purposes of this Act; (6) to establish a balanced consensus of process for the development, revision and interpretation of Federal construction and safety standards for manufactured homes, as well as related regulations for the enforcement of such standards; (7) to ensure uniform and effective enforcement of Federal construction and safety standards for manufactured homes; and (8) to ensure that the public interest in, and need for, affordable manufactured housing is duly considered in all determinations relating to the Federal standards and their enforcement. 42 U.S.C. § 5401. To accomplish these purposes, the Act grants the Secretary of HUD authority to establish appropriate federal construction and safety standards for manufactured homes, which standards are to be "performance based" and "reasonable and practical", while also meeting "high standards of protection." 42 U.S.C. §§ 5403(a) and 5402(11). These standards are published at 24 C.F.R. §§3280 et seq.

The Act provides that these federal standards established by the Secretary of HUD shall preempt "with respect to any manufactured home covered, any standard regarding construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard." 42 U.S.C.

§5403(d). The latter provision was amended in December 2000 by enactment of the American Homeownership and Economic Opportunity Act, specifically to include the following paragraph:

> Federal preemption under this subsection shall be broadly and liberally construed to ensure that disparate State or local requirements or standards do not affect the uniformity and comprehensiveness of the standards promulgated under this section nor the Federal superintendence of the manufactured housing industry as established by this chapter. Subject to section 5404 of this title, there is reserved to each State the right to establish standards for the stabilizing and support systems of manufactured homes sited within that State, and for the foundations on which manufactured homes sited within the State are installed, and the right to enforce compliance with such standards, except that such standards shall be consistent with the purposes of this title and shall be consistent with the design of the manufacturer.

42 U.S.C. §5403(d).

The legislative history of this amendment makes it clear that its purpose was to address the 1998 Eleventh Circuit decision in *Georgia Manufactured Housing Ass'n, Inc., v. Spalding County, Ga.*, 148 F.3d 1304, 1309 fn. 8 (11th Cir. 1998). That case, addressing preemptive language in the HUD regulations themselves, and specifically in 24 C.F.R. §3282.11, raised concern as to whether the regulation was valid because it "seem[ed] to expand the scope of the unambiguous preemption provision enacted by Congress." *Georgia Manufactured Housing Ass'n, Inc.,* 148 F.3d at 1309 fn. 8. The Court concluded that "[t]he amendment did not modify the basic substance of the statutory preemption provision." 68 Fed. Reg. 42327, 42328 (July 17, 2003); s*ee also* 146 Cong. Rec. H11960, H11987 (Dec. 27, 2000)(Rep. Leach) (noting that the revision to § 5403 would "clarify" the scope of federal preemption).

Accordingly, the language of 42 U.S.C. §5403(d) serves to set the preemptive reach of the HUD regulations, and , in particular the provisions set forth at 24 C.F.R. §3282.11:

> (a) No State manufactured home standard regarding manufactured home construction and safety which covers aspects of the manufactured home

4

>
> governed by Federal standards shall be established or continue in effect with respect to manufactured homes subject to the Federal standards an these regulations unless it is identical to the Federal standards.
> …
> (d) No State or locality may establish or enforce any rule or regulation or take any action that stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. The test of whether a State rule or action is valid or must give way is whether the State rule can be enforced to the action take without impairing the Federal superintendence of the manufactured home industry as established by the Act.

24 C.F.R. §3282.11(a), (d).

Equally important for present purposes, however, the amendment to §5403(d) contains a "savings clause" which provides that "[c]ompliance with any Federal manufactured home construction or safety standard…does not exempt any person from liability under common law." 42 U.S.C. § 5409(c).

      b. <u>Federal Preemption Law</u>

Congress has the power to preempt state law under Article VI (the Supremacy Clause) of the U.S. Constitution. *See Meyer v. Conlon*, 162 F.3d 1264, 1268 (10th Cir. 1998). The exercise of this constitutional authority is inherently limited, and is predicated on the "supremacy" of federal laws when state law conflicts with it. It is only when a state law conflicts with, or frustrates, federal law, that the former must give way under the preemption doctrine. *Maryland v. Louisiana*, 451 U.S. 725 (1981).

On the other hand, given the interest of avoiding unintended encroachment on the sovereign law-making authority of the States, a court interpreting federal law pertaining to a subject traditionally governed by state law should be reluctant to find preemption. The Supreme Court recognizes a presumption against finding preemption. *Geier v. American Honda Motor Co.*, 529 U.S. 861, 894, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (Stevens, J., dissenting). "Our

presumption against preemption is rooted in the concept of federalism. It recognizes that when Congress legislates, [']in a field which the States have traditionally occupied… we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.[']" *Geier*, 529 U.S. at 907, 120 S.Ct. at 1939 [*citing Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)]. Evidence of preemptive purpose is sought in the text and structure of the statute at issue. *See CSX Transportation v. Easterwood*, 507 U.S. 658, 661, 113 S.Ct. 1732 (1993). The mere existence of federal statutes and federal regulations is not enough to preempt state law causes of action. *See Whittington v. Patriot Homes*, 2008 WL 1736824 (W.D.La. 2008).

The Supreme Court recognizes the preemptive effect of federal law in three circumstances: (1) where Congress has defined expressly and explicitly the extent to which its enactment preempts state law; (2) where, in the absence of explicit preemptive language, state law is preempted because it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively; and (3) where a state law is preempted to the extent that it actually conflicts with federal law. *See English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990); *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 384 (5th Cir. 2004). The first category is considered "express preemption," while the second and third categories both fall under the rubric of "implied preemption." *See English,* 496 U.S. at 79. The third category of preemption is broadly referred to as "conflict preemption." *See id.* Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-143, 83 S.Ct. 1210 (1963).

In the case at bar, the plaintiffs' state law claims are neither expressly nor impliedly preempted by the Manufactured Housing Act. Defendant-movants have failed to demonstrate

6

that, based on the plaintiffs' allegations and the present record, any of the recognized grounds for preemption exist herein.

        c. <u>Plaintiffs' State Law Claims Are Not Expressly Preempted by the Act.</u>

While the Manufactured Housing Act includes a preemption provision, it does not expressly preempt the plaintiffs' state law claims. The Act provides that no State or political subdivision shall have authority to establish any standard regarding construction or safety whenever a Federal manufactured home construction and safety standard is established under the Act. 42 U.S.C. §5403(d). However, it also contains an important and express savings provision, which provides that "[c]ompliance with any Federal manufactured home construction or safety standard issued under this chapter does not exempt any person from any liability under common law." 42 U.S.C. §5409(c). This is language clear enough on its face, but, additionally, it also must be construed strictly in deference to the presumption against the federal preemption of sovereign state police powers. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

The Manufactured Housing Defendants nonetheless argue that the general preemption clause or §5403(d), even read in conjunction with the "savings clause" of §5422(a), leads to the conclusion that plaintiff's claims are expressly preempted. Their argument is precluded by authoritative jurisprudence. In *Geier v. American Honda Motor Co.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), a case cited by defendants themselves, the Supreme Court considered the effect on a state law claim of an almost identical preemption and savings clause contained in the National Traffic and Motor Vehicle Safety Act. The Court, citing the savings clause, concluded that the state tort law claim was not expressly preempted. *See Geier*, 529 U.S. at 868. It found that "the savings clause assumed that there are some significant number of

common-law liability cases to save." *Id.*  Hence, if an express preemption clause were read to apply broadly to common law actions and standards imposed by such actions, there would be little, if any, common law liability remaining. *See id.* This would produce an absurd result; if Congress had intended little or no common law liability to remain, the inclusion of an explicit savings clause by Congress would have virtually no meaning. *See id.*

The Court in *Geier* therefore reasoned that a broad reading of the express preemption clause urged by the defendants could not be correct; and, in order to harmonize the two clauses (one preempting, the other saving that which would be preempted), the Court concluded that the presence of the savings clause mandated that the express preemption clause be read narrowly, so as to preempt only state <u>statutes and regulations</u>, not state common law <u>private actions</u>. *Id.* (emphasis added). On this basis, the plaintiffs' state tort law action was found to be not expressly preempted. *Accord also Sprietsma v. Mercury Marine*, 537 U.S. 51, 63-64, 123 S.Ct. 518 (2002) (interpreting the Federal Boat Safety Act, containing both a preemption and savings clause, as expressly preempting only "positive enactments" imposed by statute or regulation, not common law tort actions).

Faced with such authority from the High Court, Defendants here propose – as they must – that the reasoning and consequent narrow construction of the express preemption clause at issue in *Geier* somehow are inapplicable to the present case. The problem with this approach is that the amendment to §5403(d) which added the "broad and liberal" construction language to the preemption clause of the Act, has been found intended <u>not</u> to modify or expand the basic substance or reach of the statutory preemption provision, but rather to address the Eleventh Circuit decision of *Georgia Manufactured Housing Ass'n, Inc., v. Spalding County, Ga.,* 148 F.3d 1304, 1309 fn. 8 (11th Cir. 1998), by providing explicit statutory support for the previously-

issued HUD regulation found at 24 C.F.R. §3282.11. *See* discussion, supra, at pp. 4-5. Accordingly, the defendants have failed to distinguish *Geier* from the instant case. Here, as in *Geier*, your Honor is presented with both express preemptive language and an express "savings" clause in the Act relied upon by Defendants; and here, as in *Geier*, the appropriate interpretation is that the expressly preemptive language of the Act addresses conflicting state regulatory law, not common law or state law remedies available in tort through private actions. *Accord Shorter v. Champion Home Builders Co.*, 776 F.Supp. 333, 337 (N.D. Ohio 1991) and cases cited therein.

It thus is clear from both the language of the Manufactured Housing Act itself and authoritative jurisprudence, that state tort law actions in the case at hand are exempt from the preemption provision of the Act, and thus are not expressly preempted by federal law.

Moreover, several courts have held specifically that the preemption provision and the savings clause contained in the Manufacturing Housing Act do not expressly preempt state tort law claims, including products liability claims. *See e.g., Choate v. Champion Builders Co.*, 222 F.3d 788, 793-94 (10th Cir. 2000); *Whittington v. Patriot Homes*, 2008 WL 1736824 (W.D.La. 2008); *Shorter v. Champion Home Builders Co.*, *supra.*; Perry *v. Fleetwood Enterprises, Inc.*, 2007 WL 2893410 (M.D. Ala. 2007); *Richard v. Fleetwood Enterprises, Inc.*, 4 F.Supp. 650, 657 (E.D.Tex. 1998) ("The Manufacturing Housing Act does not expressly preempt state causes of actions.");. As the Court will note, some of the defendant manufacturers in this case were defendants in these other cases as well.

    d.  <u>Plaintiffs' State Law Claims Are Not Impliedly Preempted by the Act.</u>

The plaintiffs' state tort law claims are not impliedly preempted by the Manufactured Housing Act because the Act does not "occupy the field" of the manufactured housing industry, and because the plaintiffs' claims do not conflict with, or affect, the superintendence of the Act.

i. *Field Preemption is Inapplicable to the Case at Bar.*

The Manufactured Housing Act has not been shown by movants to "occupy the field" of manufactured housing in such a way that plaintiffs' state law claims are impliedly preempted on this basis. There is no clear or manifest Congressional intent for the type of federal regulation of the safety and sale of manufactured housing which completely occupies the field. *See Richard v. Fleetwood Enterprises, Inc.*, 4 F.Supp.2d 650, 657 (E.D.Tex. 1998). "Field preemption" occurs only when federal regulation in a legislative field is so pervasive that it is reasonable to infer that Congress left no room for the state to supplement it. *See Perry v. Fleetwood*, 2007 WL 2893410, *5, (M.D.Ala. 2007). Here, the very existence of the savings clause in the Manufactured Housing Act indicates that Congress did not intend to preemptively occupy the field of manufactured housing safety. To the contrary, Congress has expressly excluded state law claims from the preemption provision of the Act. Courts faced with issue of preemption by the Manufactured Housing Act thus have concluded that federal regulation under the Act is not sufficiently pervasive to occupy the field. *See Choate*, 222 F.3d at 795 ("[T]he Manufactured Housing Act does not support [the] assertion that "Congress intended for the Federal Government to occupy the field of construction and safety of manufactured homes exclusively…"); *Richard*, 4 F.Supp. at 657 ("[T]here is no clear or manifest congressional intent for the federal regulation of the safety and sale of manufactured housing to completely occupy the field."); *Perry*, 2007 WL 2893410, *5.

ii. *Conflict Preemption*

"Conflict preemption" occurs "when it is impossible for a private party to comply with both state and federal requirements." *English*, 496 U.S. at 79, 110 S.Ct. 2770) (*citing Florida Lime*, 373 U.S. at 142-143, 83 S.Ct. 1210); *see also Rice v. Normand Williams Co.*, 458 U.S. 654, 659, 102 S.Ct. 3294 (1982) (requiring an irreconcilable conflict as a condition precedent for preemption, not just a hypothetical or potential conflict). As the Supreme Court in *Florida Lime* explained, a situation of impossible dual compliance would be presented if, for example, a federal law "forbade the picking and marketing of any avocado testing more than 7% oil" while a state law "excluded from the state any avocado measuring less than 8% oil content." *Florida Lime*, 373 U.S. at 142-143, 83 S.Ct. 1210.

Though the categories of preemption are not rigidly distinct, the question whether it is impossible to comply with two conflicting provisions is conceptually different from the question whether state law stands as an obstacle to the accomplishment of Congressional purpose. *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation MDL*, 457 F.Supp.2d 324, 331 (S.D.N.Y. 2006). Impossibility does not depend on whether events in the physical world would have made it difficult to comply with both standards, but on whether the two standards are expressly incompatible. *See Florida Lime*, 373 U.S. at 142-143, 83 S.Ct. 1210.

It logically follows that, when the federal statute at issue is a minimum safety standard, the federal standard will rarely, if ever, impliedly preempt more rigorous common law safety obligations. This is particularly so when, as here, the governing federal statute contains a common law remedial savings clause. *See Harris v. Great Dane Trailers, Inc.*, 234 F.3d 398, 401 (8th Cir. 2000). Justice Breyer's majority opinion in *Geier* noted that a savings clause "leave[es]…state tort law to operate…where federal law created only a floor, i.e., a minimum safety standard. *Geier*, 120 S.Ct. at 1918; *see also O'Hara v. General Motors Corp.*, 508 F.3d

11

753-759 (5th Cir. 2007). "Common sense and sound policy suggest that federal minimum safety standards should not preempt a state tort action…" *Norfolk So. Ry. v. Shanklin*, 529 U.S. 344, 120 S.Ct. 1467, 1477 (2000) (Breyer, J., concurring). Since the Manufactured Housing Act invoked by the defendants provides only minimum federal standards for the manufacturers, it therefore cannot impliedly preempt the plaintiffs' common law claims because of an irreconcilable incompatibility between federal and state standards of conduct. The defendants here, in other words, may be held accountable in tort for failing to provide greater safety protection than the minimum standard required under the HUD regulations.

The defendants choose to ignore this fundamental flaw in their argument for implied preemption, and aver that federal HUD standards regarding formaldehyde in plywood and particleboard are sufficient to preempt plaintiffs' tort law claims of product liability. In doing so, they do not even attempt to demonstrate to this Court the impossibility of a manufacturer both complying with these minimum standards and, at the same time, avoiding liability based upon claims of an ambient air level of formaldehyde constituting a product defect. The required incompatibility between compliance with the federal standards and responsibility under product liability law, moreover, simply cannot be demonstrated.

The Manufactured Housing Act states that when plywood or particleboard made of formaldehyde resin is used in the construction of a mobile home, the product must comply with certain emission standards established by HUD. 24 C.F.R. §3280.308. As movants concede, however, HUD merely considered and did not adopt any ambient air standard for mobile homes. It instead identified merely a "target ambient level" or 0.4 ppm in manufactured housing. Hence, the only standards at issue in this case which are mandatory are those which require that formaldehyde emission not exceed 0.2 ppm from plywood and 0.03 ppm from particleboard. No

mandatory ambient air standard has been established federally, and the defendants have made no showing that a finding in plaintiffs' favor in any given tort case prosecuted under the laws of Louisiana, Texas, Mississippi or Alabama, would conflict with the levels of emissions dictated by the Act. Most importantly, the .2 and .03 ppm requirements for plywood and particleboard emissions are minimum standards, and not specific levels of exposure which the federal government characterizes as sufficient in every case to represent safe levels as a matter of state product liability law.

The point may be illustrated hypothetically: A plaintiff proceeding under the product liability laws of any of the four states in question, may argue that the unit was defective because, over the period of occupancy, ambient air levels of formaldehyde (variable with conditions such as temperature, humidity, and ventilation) rendered the unit unreasonably dangerous in foreseeable use as a long-term residence; and yet plaintiff's proof of this defect need not be subsumed under the question whether particleboard or plywood emissions in the unit met minimum mandatory emission standards at the time the unit left the manufacturer. In order words, whether the <u>ambient air level during occupancy</u> constitutes the proof of defect for the end user remains the ultimate determinant of the manufacturer's tort liability, and again, both Congress and HUD deliberately chose not to mandate federal ambient air levels for manufactured housing. As the district court noted in denying preemption under the Manufactured Housing Act in *Shorter v. Champion Home Builders Co.*, *supra*: "…plaintiffs' state law tort claim is not preempted by federal law. Compliance with the [Act's] standard [on plywood/particleboard emissions] will be treated as one piece of evidence going toward the issue of design defect." *Shorter*, 776 F.Supp. at 338. This precise reasoning applies herein.

Hence, there is no demonstrable or necessary incompatibility between a manufacturer's compliance with minimum particleboard and plywood emissions, and the same manufacturer's ability to avoid potential liability for unsafe ambient air in the unit. Federal regulatory requirements for certain components of the housing unit are not incompatible with independent tort law standards for product liability which depend upon the ambient levels of formaldehyde as the reference for the alleged defect.

The same is true when the plaintiffs' cases are viewed as warnings cases. HUD requires that the manufacturer post a warning in each manufactured home informing the occupant of health risks associated with formaldehyde emissions. 24 C.F.R. § 3280.309(a). Defendants, however, make no showing whatsoever that the adequacy of such required warnings cannot be adjudicated under state law, independent of the question whether the manufacturer satisfied the federal requirement that there be a warning of some type. Since it is possible to comply with the federal requirement that a warning exist, and also satisfy state product liability requirements for adequate product warnings, implied preemption based on an unavoidable conflict is not shown with respect to warnings cases brought under the product liability and tort laws of Louisiana, Mississippi, Alabama, and Texas.

In the absence of impossibility, a finding of conflict preemption may be appropriate if the state law interferes directly with the federal purpose. *In re MTBE Products Liability Litigation MDL*, 457 F.Supp.2d at 331 (*citing Free v. Bland*, 369 U.S. 663, 664, 82 S.Ct. 1089 (1962)). The mere fact of "tension" between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional state power. *See Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 256, 104 S.Ct. 615 (holding that state award of punitive damages to person injured in nuclear incident did not

conflict with federal remedial scheme regulating safety aspects of nuclear energy). "Even where plaintiffs assert a tort duty that creates a substantial obstacle, preemption should not ordinarily be implied absent an 'actual conflict'". *English*, 496 U.S. at 90, 110 S.Ct. 2270. Rather, "[t]he principle is thoroughly established that the exercise by the state of its police power, which would be valid if not superseded by federal action, is superseded only where the repugnance or conflict is so 'direct and positive' that the two acts cannot 'be reconciled or consistent together.'" *Jones v. Rath Packing Co.*, 430 U.S. 519, 544, 97 S.Ct. 1305 (1977) (Rehnquist, J., dissenting in part and concurring in part) (*quoting Kelly v. Washington*, 302 U.S. 1, 10, 58 S.Ct. 87 (1937).

Defendants suggest that plaintiffs' state tort claims would "threaten" the Manufactured Housing Act's purpose by conflicting with the federal statutes at issue. Stating this to be the case, however, is not the same as proving it based on the record at hand. In fact, based on the present record, the compensatory damages sought by the plaintiffs do not stand as a direct and positive obstacle to the Act's objectives. Permitting the plaintiffs' claims to go forward instead would be consistent with the stated purposes of Congress in passing the Manufactured Housing Act, which, as stated supra, include the object to "protect residents of manufactures housing with respect to personal injuries and the amount of insurance costs and property damages in manufactured housing." 42 U.S.C. §5401. To put the issue conversely, there likewise is nothing in §5401 to suggest the legislative aim of providing manufactures of mobile homes with immunity from state products liability laws. *See Choate*, 222 F.3d at 796. The state law claims pursued by the plaintiffs in this case clearly would operate to increase safety and reduce the number of personal injuries resulting from manufactured homes. The prosecution of such claims would not impair the policy or substance of the Manufactured Housing Act, but instead would be

15

consonant with the stated purpose of the Act to enhance and protect the safety of mobile home occupants.

In the final analysis, movants cannot legitimately invoke the underlying justification for preemption, which is the Constitutional preservation of federal law supremacy. The federal superintendency of the Manufactured Housing Act remains intact under the plaintiffs' tort claims because the federal standards imposed under the Act remain undisturbed. Accordingly, as plaintiffs have asserted no state law claims that pose an obstacle to the superintendency of component part minimum standards under the Manufactured Housing Act, their claims are not impliedly preempted by the Act. It bears re-emphasis that (a) no federal ambient air quality standard for formaldehyde is mandated by the Act or regulations thereunder, and that (b) defendants cannot prove the impossibility of a manufacturer complying with federally-mandated plywood/particleboard emissions standards and/or the federal "existence of warning" requirements, and likewise absolving itself of claims brought under Louisiana, Texas, Mississippi, or Alabama laws for product defects due to ambient formaldehyde exposure and/or warnings that are inadequate in nature.

### III. Conclusion

Plaintiffs' claims herein, proceeding under the various product liability laws of four different states, are neither expressly nor impliedly preempted by the Manufactured Housing Act or the regulations promulgated under it. The Manufactured Housing Act's preemption provision and saving clause unambiguously exempt state tort law claims from express preemption by the Act. Further, since the state tort law claims brought by the plaintiffs have not been shown by defendants to either conflict with or affect the Act's superintendence of the manufactured

housing industry, these claims are neither expressly nor impliedly preempted by the Manufactured Housing Act.

It finally should be mentioned that no merits discovery has been conducted in this MDL pertinent to the state tort law theories of liability urged by plaintiffs as to these Defendants-movants. In this sense, the instant motion seeks a global <u>in limine</u> exclusion of numerous claims brought under the laws of no less than four sovereign states, without so much as one concrete example of the needed, irreconcilable conflict between federal regulations and state tort law. The PSC submits, therefore, that the request for preemption presented herein not only is without merit, but also is premature to the point of being incapable of informed MDL adjudication. Immunity this sweeping simply cannot be granted in a factual vacuum, especially where it must be demonstrated by the motion as presented that unavoidable conflict exists between all claims asserted in pleadings herein under all applicable product liability laws of four different states, and the Act/regulations cited in the motion. Without a single claim against Defendants "fleshed out" in discovery, for example, the relationship between minimum component part standards and cases based on air quality remains merely theoretical at best.

For all of the forgoing reasons, the instant motion should be denied.

        Respectfully submitted:

        **FEMA TRAILER FORMALDEHYDE**
        **PRODUCT LIABILITY LITIGATION**

        BY:    s/Gerald E. Meunier
                  GERALD E. MEUNIER, #9471
                  **PLAINTIFFS' CO-LIAISON COUNSEL**
                  Gainsburgh, Benjamin, David, Meunier &
                  Warshauer, L.L.C.
                  2800 Energy Centre, 1100 Poydras Street
                  New Orleans, Louisiana 70163

Telephone: 504/522-2304
Facsimile: 504/528-9973
gmeunier@gainsben.com


s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
jwoods@gainsben.com


**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, TEXAS #24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, JR., #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
RONNIE PENTON, #10462

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-call mail to all counsel of record who are non-CM/ECF participants.


s/Gerald E. Meunier
GERALD E. MEUNIER, #9471