UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N(5)<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO:<br>*Aldridge, et al. v. Gulf Stream Coach, Inc., et al.*<br>*No. 07-9228* | MAGISTRATE CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

**MAY IT PLEASE THE COURT:**

Shaw Environmental, Inc. ("Shaw") and CH2M HILL Constructors, Inc. ("CH2M HILL") (collectively, the Individual Assistance/Technical Assistance Contractors or the "IA/TACs") hereby move this Court for a dismissal pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because: (a) the plaintiffs' claims against them have prescribed; (b) the plaintiffs have no Article III standing – and thus this Court lacks subject matter jurisdiction – inasmuch as plaintiffs have failed to "match" their individual claims against particular IA/TACs, as explicitly required by this Court's previous orders; and (c) the plaintiffs have not pled claims that are cognizable under the Louisiana Products Liability Act.

## BACKGROUND

Although an extensive recitation of the facts is beyond the scope of this initial pleading, some background is necessary to place the IA/TACs' motion in proper context. Following Hurricane Katrina, the IA/TACs entered into separate contracts with the Federal Emergency Management Agency ("FEMA") commonly known as "Individual Assistance / Technical Assistance" contracts.[1] Among the services provided to FEMA under these contracts was the management of the hauling and installation of the emergency housing units ("EHUs") at issue in this litigation. These contracts did not, and are not alleged to have, required the IA/TACs to build or manufacture any EHUs. Nor did the contracts provide (and the plaintiffs do not allege) that the IA/TACs ever took title to any of the EHUs.

On November 30, 2007, the 112 individually named plaintiffs[2] in the instant *Aldridge* lawsuit filed their Original Complaint against five (5) different EHU manufacturers for injuries that the plaintiffs allegedly suffered as a result of exposure to formaldehyde while occupying the EHUs. On January 21, 2009, plaintiffs amended their Complaint to assert claims against all the IA/TACs for the first time.[3] This addition of the IA/TACs – after years of litigation and less than

---

[1] FEMA also entered into IA/TAC contracts with two other companies, Fluor Enterprises, Inc. ("Fluor") and Bechtel National, Inc. ("Bechtel").

[2] The true total number of *Aldridge* plaintiffs is somewhat higher inasmuch as some of the named plaintiffs are suing as individuals and on behalf of minor children

[3] Plaintiffs' First Supplemental and Amending Complaint included all four IA/TACs: Shaw, CH2M HILL, Fluor and Bechtel. Plaintiffs have since dismissed Bechtel from this action (R. Doc. 1181). Plaintiffs also added the United States/FEMA and two procurement contractors as defendants. Plaintiffs had previously sought leave to amend their complaint to add the IA/TACs as defendants; however, they did so in the form of a putative class action. (R. Doc. 758.) Because the MDL plaintiffs had at that time moved for class certification, and because that motion was denied, the Court denied leave to amend but advised that plaintiffs could re-file their amendment if they did so without the class allegations. (R. Doc. 1015.) This ultimately led to the January 21, 2009 filing of the First Supplemental and Amending Complaint.

eight months before the first scheduled trial, and long after plaintiffs knew or should have known about their claims – comes too late.   Plaintiffs' claims against the IA/TACs have simply prescribed.

Additionally, this Court has made clear through numerous orders that to satisfy Article III standing requirements, a complaint must "match" individual plaintiffs with individual defendants. *See* Order and Reasons (Aug. 1, 2008) (R. Doc 599); Order (Aug. 1, 2008) (R. Doc. 604); Order and Reasons (Nov. 6, 2008) (R. Doc. 842).   The plaintiffs have conspicuously failed to do so in their First Supplemental and Amending Complaint.   Instead, plaintiffs' shotgun amending complaint is a blur of undistinguishable allegations against all of the IA/TACs.   A straightforward reading of the amended complaint simply reveals no claim made by an identifiable plaintiff against a specific IA/TAC.   In other words, the complaint fails to allege that any particular plaintiff was harmed as the proximate result of any action taken by a specific IA/TAC defendant.   As this Court has already ruled, such failure to connect individual plaintiffs with individual defendants means that plaintiffs have no Article III standing and this Court lacks subject matter jurisdiction.   Without the "irrudicible constitutional minimum of standing", plaintiffs' claims must be dismissed pursuant to Rule 12(b)(1).

Finally, plaintiffs' complaint fails to state a claim under the Louisiana Products Liability Act.   Plaintiffs' creative attempts notwithstanding, the IA/TACs do not constitute "manufacturers" under the Louisiana Products Liability Act.

Ultimately, these deficiencies prove fatal to plaintiffs' claims, and as set forth below, the IA/TACs urge the Court to grant their motion and to dismiss all claims against them pursuant to Rule 12(b)(1) and 12(b)(6).

3

## LEGAL ARGUMENT

### I.  RULE 12(b)(6) AND RULE 12(b)(1) STANDARDS FOR GRANTING MOTION TO DISMISS

Certain affirmative defenses that clearly appear on the face of a plaintiff's complaint – commonly that the statute of limitations has run – are properly asserted in a Rule 12(b)(6) motion.[4]

Rule 12(b)(6) provides that in response "to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim" the pleader may raise by motion the defense of "failure to state a claim upon which relief may be granted."[5]  In considering a motion to dismiss pursuant to Rule 12(b)(6), a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[6]  The court must then determine whether the complaint pleads "enough facts to state a claim to relief that it is plausible on its face."[7]  A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[8]

As this Court has recognized, Rule 12(b)(1) of the Federal Rules of Civil Procedure governs challenges to a court's subject matter jurisdiction.  Order and Reasons, at 3 (Aug. 1,

---

[4]  *See Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas*, 20 F.3d, 1362, 1366 (5th Cir. 1994); *Federal Practice & Procedure* § 1357, at 352 (1990).

[5]  Fed. R. Civ. P. 12(b)(6).

[6]  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) (quoting *Jones v. Greginer*, 188 F.3d 322, 324 (5th Cir. 1999).

[7]  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

[8]  *Id.* at 1964-65.

2008) (R. Doc. 599).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[9]  In addressing such motions, "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[10]  As the parties invoking federal subject matter jurisdiction, plaintiffs bear the burden of demonstrating that subject matter jurisdiction exists and establishing all of the elements of Article III standing.[11]

## II.    PLAINTIFFS' CLAIMS AGAINST THE IA/TACs ARE PRESCRIBED.

### A.    Plaintiffs' Claims Have Prescribed on the Face of the Complaint.

The fundamental purpose of prescription statutes is to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from the loss of relevant proof.[12]  Prescriptive statutes seek to prevent prejudice to a defendant either by delay in notification of the claim (prejudice usually being the deprivation of an opportunity to perform a timely investigation of the claim) or by the loss of documents or witnesses which the defendants would have gathered or preserved if timely notified.[13]

---

[9]    *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006,1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).

[10]    *Clark v Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

[11]    *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); Order and Reasons, at 3-4 (Aug. 1, 2008) (R. Doc. 599).

[12]    *Giroir v. South La. Medical Center*, 475 So. 2d 1040, 1045 (La. 1985).

[13]    *Findlev v. City of Baton Rouge*, 570 So. 2d 1168, 1170 (La. 1991); Tate, *Amendment of Pleadings in*

The character of an action disclosed in the pleadings determines the prescriptive period applicable to that action.[14]   Plaintiffs' Complaint sounds in tort.[15]   Under the Louisiana Civil Code,[16] delictual actions are subject to a one-year prescriptive period.[17]   As a general rule, prescription begins to run "when plaintiff has actual or constructive notice of the alleged tortuous act."[18]   Stated another way, prescription begins to run when it can be objectively determined that the exercise of reasonable diligence would have alerted a reasonably minded plaintiff of the reasonable possibility that it was a victim of tortious conduct.[19]

This case is part of a multi-district litigation involving residents displaced by hurricanes Katrina and Rita who were allegedly exposed to dangerous levels of formaldehyde while living in EHUs.   The first of these consolidated cases, *Hillard*, was filed on May 18, 2006.[20]   Even though the general public most likely became aware of the presence of formaldehyde in the FEMA trailers months before the *Hillard* case was filed, any potential claimants (including those

---

*Louisiana*, 43 Tul. L. Rev. 211 (1969).

[14]  *Kendall Co. v. Southern Medical Supplies, Inc.*, 913 F. Supp. 483 (E.D. La. 1996).

[15]  For purposes of prescription, plaintiffs' LPLA claim is also considered delictual in nature.  *See Guidry v. Aventis Pharmaceuticals, Inc.*, 418 F. Supp. 2d 835, 839 (M.D. La. 2006).

[16]  In diversity cases, where state law provides the rules of decision, a federal court should apply not only state statutes of limitation but also any accompanying tolling statutes.  *In re Vioxx Products Liability Litigation*, 478 F. Supp. 2d. 897 (E.D. La. 2007).

[17]  See La. Civ. Code. art 3492 ("Delictual actions are subject to a liberative prescription of one year.  This prescription commences to run from the day injury or damage is sustained. . . .").

[18]  *Mistich v. Cordis Manufacturing Co.*, 607 So. 2d 955, 956 (La. App. 4th Cir. 1992).

[19]  *Griffin v. Minberger*, 507 So. 2d 821, 823 (La. 1987).

[20]  *Hillard, et al. v. United States of America, et al.*, No. 06-2576 (E.D. La.).  *Hillard* was subsequently consolidated into the MDL.  *See* R. Doc. 3.

who have appeared as plaintiffs in this lawsuit) should have been aware of their claims against the IA/TACs by this date.[21]   Thus, prescription of the formaldehyde claims against the IA/TACs, who were <u>not</u> named in the *Hillard* lawsuit, expired on May 18, 2007.  This date was more than a year before the instant mater was originally filed (November 30, 2007), and well before any of the IA/TACs were named as defendants on January 13, 2009 (the date plaintiffs filed their Second Motion for Leave to Amend).

Here, it is clear on the face of plaintiffs' Complaint that the alleged injury-causing event was or should have been discovered, at the latest, on May 18, 2006.  It is equally clear from the court record that both plaintiffs' original Complaint and First Supplemental and Amending Complaint were filed more than a year after this date.  Accordingly, the claims asserted against the IA/TACs in plaintiffs' Amended Complaint are time-barred and subject to dismissal, with prejudice, under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**B.     Plaintiffs Cannot Prove That Prescription Was Suspended or Interrupted.**

"Where on the face of the petition it appears that prescription has run, the burden shifts to the plaintiff to prove a suspension or interruption of prescription."[22]   Because the Complaint is prescribed on its face, the burden shifts to plaintiffs to prove that it was filed timely.

---

[21]  Put another way, the filing of the *Hillard* action serves as a good proxy for the date by which any given plaintiff knew or should have known of his or her formaldehyde claim.  With regard to any individual plaintiff, however, the facts may bear out that the plaintiff knew, or should have known, about the claim much earlier.  The IA/TACs use the *Hillard* date here strictly because that date is a part of the record (and thus is a usable date for the purposes of a Rule 12(b)(6) motion), and the IA/TACs reserve their right to argue that individual plaintiffs' claims prescribed on other, earlier dates.

[22]  *Vincent v. Tusch*, 681 So. 2d 385, 385 (La. 1993).

### 1.     Plaintiffs Claims Do Not "Relate Back."

Plaintiffs may attempt to meet their burden by arguing that the claims asserted against the IA/TACs in the Amended Complaint somehow "relate back" to the filing of the original Complaint within the meaning of Rule 15(c). This effort, however, will fail. At the outset, it must be noted that the original Complaint is itself untimely.[23] Thus, even if the claims asserted against the IA/TACs in the Amended Complaint were to "relate back" to the original Complaint, such claims have prescribed in any event.

Putting that issue aside, the United States Supreme Court has interpreted Rule 15(c) to authorize an amended complaint to relate back to the time of the original complaint only if all of the following four factors are satisfied:

1.   The basic claim in the subsequent complaint must have arisen out of the conduct set forth in the original complaint;

2.   The party sought to be added must have received notice of the action such that it will not be prejudiced in maintaining its defense;

3.   That party must know or should have known that but for a mistake concerning identity, the action would have been brought against it; and,

4.   The second and third requirements must have been fulfilled within the applicable limitations period.[24]

Plaintiffs' claims do not relate back because not all of the above elements have been satisfied.

Specifically, in order for an amendment adding new defendants to relate back to the original complaint, the third element requires there be a mistake concerning the identity of the

---

[23]   Application of the relation-back doctrine could not even conceivably relate the January 13, 2009 Second Motion for Leave to Amend all the way back to the filing of the *Hillard* Complaint, for the simple reason that *Hillard* and *Aldridge* are separate actions.

[24]   *Richard v. Reed*, 1996 WL 556813, *3 (5th Cir. 1996) (citing *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986)).

proper party. That is, relation back of a newly-added defendant should be allowed *only* if there is a mistake concerning the identity of the correct defendant; not because the plaintiff did not know of his identity.[25]

In *Jacobsen v. Osborne*, the Fifth Circuit addressed a § 1983 suit wherein the plaintiff attempted to amend his complaint to add/substitute named defendants for a "John Doe" defendant. Although these individuals apparently were the correct parties, the plaintiff only discovered their proper identification when he deposed the sheriff's office after the statute of limitations had expired.[26] The Fifth Circuit did not permit relation back of the amendment adding the new defendants because it was due to a lack of knowledge of those parties, and "not necessitated by the 'mistake' or 'misidentification' at which Rule 15(c)(3) is aimed."[27] The *Jacobsen* court further explained that Rule 15(c) is designed to permit an amendment where a misnomer, mistake or misidentification has occurred, not where an entirely new defendant is being added who was not included in the original complaint.[28]

Like the plaintiff in *Jacobsen*, plaintiffs here did not make a mistake concerning the identity of the proper party as required by Rule 15(c). Rather, plaintiffs simply did not name the IA/TACs. Therefore, considering the controlling jurisprudence interpreting Rule 15(c),

---

[25] *Jacobsen v. Osborne*, 133 F.3d 315, 317 (5th Cir. 1998); *see also In Re Katrina Canal Breaches Consolidated Litigation*, 2008 WL 390670 (E.D. La. 2008).

[26] *Id.* at 318.

[27] *Id.* at 321.

[28] *Id.* at 321-22.

plaintiffs' claims against the IA/TACs do not relate back to filing of plaintiffs' original Complaint.

### 2. Prescription of Plaintiffs' Claims Has Not Been Suspended.

The IA/TACs anticipate that plaintiffs may argue that prescription was suspended by the commencement of the *Hillard* class action pursuant to Article 596 of the Louisiana Code of Civil Procedure (or, equivalently, by the doctrine of *American Pipe* tolling).[29]  Article 596 provides that the filing of a class action suspends prescription as to all putative class members' claims until the propriety of the class action or the member's participation in the action is determined.[30]

Plaintiffs presumably would argue that they were putative class members of the *Hillard* class and thus, should benefit from the suspension of prescription provided in Article 596. However, this argument fails to recognize that the putative *Hillard* class <u>did not</u> purport to assert

---

[29]  Because this case is based on diversity jurisdiction, the Louisiana Code of Civil Procedure controls the issue of the effect of the filing of a class action and the subsequent filing of an individual lawsuit on the timeliness of that individual lawsuit.  However, the application of the rule set forth by the Supreme Court in *American Pipe* would nonetheless produce the same result as La. Code Civ. Proc. art. 596. *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action").

[30]  La. Code Civ. Proc. art. 596.  This article provides:

Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein. Prescription which has been suspended as provided herein, begins to run again:

(1) As to any person electing to be excluded from the class, from the submission of that person's election form;

(2) As to any person excluded from the class pursuant to Article 592, thirty days after mailing or other delivery or publication of a notice to such person that the class has been restricted or otherwise redefined so as to exclude him; or

(3) As to all members, thirty days after mailing or other delivery or publication of a notice to the class that the action has been dismissed, that the demand for class relief has been stricken pursuant to Article 592, or that the court has denied a motion to certify the class or has vacated a previous order certifying the class.

any claims against the IA/TACs.  Article 596 only refers to the claims actually brought by the putative class members and not every claim that might have been added against potential, unnamed defendants.  The article is not designed to apply to every conceivable defendant who might be added to the action at a later date.[31]  Rather, the article is designed to protect the putative class members' claims against those individuals or entities actually named as defendants.[32]  No case has ever extended Article 596 to a defendant who was not named in the original putative class action, and this court should not be the first.  Because the IA/TACs were not named as defendants in *Hillard*, plaintiffs may not benefit from the effect of Article 596.

### 3.   Prescription of Plaintiffs' Claims Has Not Been Interrupted.

Finally, the IA/TACs anticipate that plaintiffs may try to avoid prescription by arguing that they should benefit from Article 2324 of the Louisiana Civil Code, which provides that interruption of prescription as to one joint tortfeasor is effective against all joint tortfeasors.  First, plaintiffs presumably would argue that the IA/TACs are joint tortfeasors with the manufacturer defendants who were named in the *Hillard* action.  Plaintiffs would then argue that because prescription against the *Hillard* defendants was interrupted by the filing of that lawsuit,[33] interruption of prescription is also effective against the claims asserted against joint tortfeasors, the IA/TACs, in the instant matter.  Leaving aside the question of whether the IA/TACs really

---

[31]   The addition of new party defendants, and the question of whether claims against such new defendants have prescribed, is addressed by the relation-back doctrine.  As shown above, that doctrine does not resurrect plaintiffs' claims.

[32]   *See* 5 Newberg on Class Actions § 17:19 (4th ed.), William B. Rubenstein, Alba Conte and Herbert B. Newberg Chapter 17 Mass Torts ("[I]t is clear that the filing of a class action in a mass tort context will generally toll similar claims against the defendants *named* in the class complaint.") (emphasis added).

[33]   La. Civ. Code art. 3462 provides for the interruption of prescription upon the commencement of a lawsuit.

11

are joint tortfeasors, the anticipated argument will fail for two reasons. First, unlike Article 596, Article 2324 does not apply to the claims of every putative class member and/or every conceivable plaintiff. Only the named plaintiffs in *Hillard* can avail themselves of the joint tortfeasor doctrine under this article. Because the *Aldridge* plaintiffs did not purport to bring claims in their own names in *Hillard*, Article 2324 does not apply.

Second, the fact that plaintiffs were presumably part of the putative *Hillard* class does not mean that they get the benefit of the joint tortfeasor doctrine for the simple reason that the Legislature placed into Article 596 the effect that the filing of a putative class has on the prescription of the putative class members' claims. To accept plaintiffs' anticipated reading of Article 2324 would place it in conflict with Article 596. "Where two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail."[34] Thus, because Article 596 is more specifically directed to the matter at issue than Article 2324, Article 596 should govern the effect the commencement of a class action has on prescription of putative class members' claims.[35] However, as established above, Article 596 does not save the plaintiffs' claims.

---

[34] *Guitreau v. Hucharachuk*, 763 So. 2d 575, 579 (La. 2000).

[35] This rule of specific legislation prevailing over the general has been applied by Louisiana courts to the effect that other prescriptive provisions prevail over Article 2324. *See Bell v. Kreider*, 858 So. 2d 58 (La. App. 5th Cir. 2003) (On an issue of first impression, the Louisiana fifth circuit held that a statute providing that when action not filed in correct venue, interruption only occurs as to defendants served within prescriptive period, controls over a statute stating interruption of prescription against one joint tortfeasor is effective against all tortfeasors.); *see also Borel v. Young*, 989 So. 2d 42 (La. 2007) (the specific provisions of the Medical Malpractice Act regarding the suspension of prescription against joint tortfeasors apply to the exclusion of the general code article on interruption of prescription against joint tortfeasors).

In sum, because many of the plaintiffs' anticipated arguments would seek to benefit from the earlier filing of the *Hillard* action, it is useful to see the effects of its filing on the prescription of claims, as well as the interplay between La. Code Civ. Proc. art. 596 and La. Civ. Code art. 2324, which can be summarized in the following chart:

|  | Named Defendant in *Hillard* | Not a Named Defendant in *Hillard* |
|---|---|---|
| Named Plaintiff in *Hillard* | Prescription interrupted by filing of suit. *See* La. Code Civ. Proc. art. 3462. | Prescription interrupted by joint tortfeasor doctrine. *See* La. Civ. Code art. 2324. |
| Not a Named Plaintiff in *Hillard*, but Member of Putative Class | Prescription suspended as to putative class members. *See* La. Code Civ. Proc. art. 596. | No effect on prescription. |

Because the *Aldridge* plaintiffs were not named plaintiffs in *Hillard*, and because the *Hillard* plaintiffs did not name the IA/TACs as defendants, the plaintiffs now before the Court gain no benefit from the *Hillard* action and, thus, their claims have prescribed.

## II.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE THE *ALDRIDGE* PLAINTIFFS HAVE NO ARTICLE III STANDING.

This Court has already ruled on this identical issue and has explicitly required plaintiffs to match specific plaintiffs with specific defendants or risk dismissal of their claims under Rule 12(b)(1).  *See* Order and Reasons (Aug. 1, 2008) (R. Doc. 599); Order (Aug. 1, 2008) (R. Doc. 604); Order and Reasons (Nov. 6, 2008) (R. Doc. 842).  Because the *Aldridge* plaintiffs have simply failed to comply with this Court's directive, their claims against the IA/TACs must be dismissed for lack of subject matter jurisdiction and Article III standing.

In its previous orders, this Court first summarized the law regarding subject matter jurisdiction and Article III standing as follows:

### Law Regarding Standing

> The standing doctrine is a threshold inquiry to adjudication, which defines and limits the role of the judiciary. *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003) (citing *Warth*, 422 U.S. at 517-18). It is well settled that unless a plaintiff has standing, a federal district court lacks subject matter jurisdiction to address the merits of the case. In the absence of standing, there is no "case or controversy" between the plaintiff and defendant which serves as the basis for the exercise of judicial power under Article III of the constitution. *Warth*, 422 U.S. at 498-499. The key question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant federal court jurisdiction. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

> The "irreducible constitutional minimum of standing contains three elements": "[T]he plaintiff must have suffered an injury in fact," "there must be a causal connection between the injury and the conduct complained of," and "it must be likely … that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61. The plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing these elements. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d. 210 (1998). Failure to establish any one deprives the federal courts of jurisdiction to hear the suit.

Order and Reasons, at 4 (Aug. 1, 2008) (R. Doc. 599).

Applying this law on subject matter jurisdiction and standing, this Court has dismissed other plaintiffs' claims against manufacturer defendants where the complaint "fails to include allegations that any particular plaintiff lived in any particular housing unit or was harmed by a specific manufacturer of any housing unit." *Id.* at 9; *see also* Order (Aug. 1, 2008) (R. Doc. 604); Order and Reasons (Nov. 6, 2008) (R. Doc. 842). This Court has unambiguously held that plaintiffs fail to meet their burden to establish Article III standing when "no plaintiff is matched to any specific Newly-Added Defendant," and are thus subject to a motion to dismiss under Rule 12(b)(1). Order and Reasons, at 11 (R. Doc. 599); *see also* Order (Aug. 1, 2008) (R. Doc. 604);

Order and Reasons (Nov. 6, 2008) (R. Doc. 842). The IA/TACs, who are among the latest "Newly-Added Defendants," are entitled to the same ruling.

At the time of the Court's Orders of August 1, 2008, the IA/TACs were not defendants in any of the MDL constituent cases, nor named as defendants in the Amended Master Complaint. On January 21, 2009, the plaintiffs in the instant *Aldridge* case amended their Complaint to add the IA/TACs as defendants. In doing so, however, the 112 *Aldridge* plaintiffs fail to allege any specific link between a particular plaintiff and a particular IA/TAC defendant, despite the fact that this Court previously dismissed defendants based on the plaintiffs' failure to match. Not one of the *Aldridge* plaintiffs has claimed that he or she resided in an EHU hauled or installed by a specific IA/TAC. Rather than asserting particularized claims against specific defendants, the 112 *Aldridge* plaintiffs improperly bunch all the IA/TACs together in one mass of indiscernible claims. For all the reasons previously announced by this Court, the consequence of that failure is the dismissal of all claims against the IA/TACs. *See* Order and Reasons, at 11 (R. Doc. 599); Order (Aug. 1, 2008) (R. Doc. 604); Order and Reasons (Nov. 6, 2008) (R. Doc. 842).[36]

The plaintiffs' failure to match plaintiffs to particular IA/TACs is not excusable for want of information. The plaintiffs have had the ability to match plaintiffs to IA/TACs since at least February 22, 2008, when the Government began providing CDs containing its entire inventory of mobile homes and travel trailers in both portable document format ("pdf") and searchable Excel spreadsheets.[37] The first attempt to obtain IA/TAC information was made by requests to the

---

[36] The Court's Order and Reasons of August 1, 2008 (R. Doc. 599) dealt extensively with the standing requirement when presented in connection with a pending class certification. In light of the Court's Order denying class certification, the Court need not address those issues, and this motion is rendered all the more compelling.

[37] *See* United States of America's Memorandum in Opposition to Plaintiffs' Steering Committee Motion to

United States dated January 12, 2009, nearly a year later, to which the Government promptly responded on January 31, 2009, with another CD containing documents in pdf format and Excel spreadsheets. Those documents link each FEMA installed housing unit to a particular IA/TAC defendant by VIN and bar code number. Indeed, as required by this Court, plaintiffs in many other newly filed cases – including plaintiffs represented by the same counsel representing the *Aldridge* plaintiffs – have complied with the Court's orders and Article III standing requirements by filing separate lawsuits connecting individual plaintiffs with individual manufacturer defendants and IA/TACs. Nevertheless, to date the *Aldridge* plaintiffs have failed to amend their Complaint to link particular plaintiffs to particular IA/TACs. Because the information has been available to the plaintiffs for a significant period of time, their failure to meet the standing requirement is inexcusable, and all claims against the IA/TACs should be dismissed.

## III. PLAINTIFFS CANNOT ASSERT A CAUSE OF ACTION AGAINST THE IA/TACs UNDER THE LPLA BECAUSE THE IA/TACs ARE NOT MANUFACTURERS.

The Louisiana Products Liability Act ("LPLA") is the exclusive remedy in Louisiana against a manufacturer for damages caused by its product. La. R.S. 9:2800.52 (2008). A "manufacturer" is defined as a person or entity in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. La. R.S. 9:2800.53(1). By definition, the LPLA does not apply to providers of professional services, even if the service results in a product. La. R.S. 9:2800.52(1).

Compel Defendant United States/FEMA to Respond to Subpoena (R. Doc. 124), and Exhibit 2 thereto.

16

In order for the plaintiffs to maintain a cause of action against the IA/TACs under the LPLA, therefore, the plaintiffs are required to plead a set of facts under which the IA/TACs can be considered "manufacturers." Plaintiffs have failed to do so.

The IA/TACs obviously are not manufacturers. None of them is in "the business of manufacturing a product for placement into trade or commerce." There is no allegation that either the plaintiffs or FEMA purchased EHUs from any IA/TAC defendant. Likewise, there is no allegation that any of the IA/TACs produced, made, fabricated, constructed, or designed the EHUs at issue. In fact, the real manufacturers of the EHUs are already named defendants in this case. Their identities are known. Every unit has a manufacturer that is not an IA/TAC. The IA/TACs merely installed the EHUs at locations specified by FEMA. Even the common parlance used by all parties to this case separates the manufacturers from the IA/TACs. If the IA/TACs were really manufacturers as defined in the LPLA, there would be no need for the distinction.

It is only because the IA/TACs do not meet the ordinary definition of a manufacturer under the LPLA that the plaintiffs are compelled to, and do, stretch that term beyond recognition. According to the plaintiffs, the IA/TACs qualify as manufacturers because, in accordance with FEMA's specific instructions, they placed the EHUs on concrete blocks. *See* Plaintiffs' First Supplemental and Amending Complaint, ¶¶ 23-26, 52, 54. In particular, the plaintiffs allege that the IA/TACs' "reconditioning and refurbishment" of the housing units created stress and distortion that allowed for increased moisture intrusion and formaldehyde exposure due to cracks and openings in the shell. *See id.* ¶¶ 24-25, 57

17

The plaintiffs' factual assertions simply do not meet the definitional requirements of a manufacturer under the LPLA. A remanufacturing, reconditioning, or refurbishing requires one to do something to the product that influences it in a meaningful and creative way. *Slaid v. Evergreen Indem., Ltd.*, 745 So. 2d 793 (La. App. 2d Cir. 1999). The IA/TACs never had such an influence on the EHUs.

In *Slaid*, Commercial National Bank acquired title several times to a manufactured home through a series of loan defaults. After one such default, CNB sold the manufactured home to the plaintiffs. The plaintiffs alleged that CNB was a manufacturer because of repairs it had made to the manufactured home. The court disagreed, saying that, "although the record shows that CNB did authorize repairs to a number of the homes it repossessed and subsequently resold, the act of repair itself, intended to increase the homes' resale value *and not to alter their basic design*, does not rise to the level of control over the manufacturing process or product quality contemplated by the Act to justify the imposition of manufacturer's strict liability. In fact, plaintiff has failed to demonstrate that these authorized repairs were of such a substantial nature as to be considered 'remanufacturing, reconditioning, or refurbishing a product' as opposed to merely cosmetic repairs." *Id.* (emphasis added)*, citing* John N. Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La. L. Rev. 565, 572 (1989).

Even assuming that the Plaintiffs' allegations in this case are true, there was nothing substantial, meaningful, or creative about the IA/TACs' actions here, and there was no alteration to the EHUs' basic design. The EHUs occupied by the plaintiffs were, in every material respect, identical to the units that left the manufacturers' facilities. The only alleged alteration is that the EHUs once rested on wheels and, while occupied, rested on concrete blocks. In other words,

18

they had a tendency to roll at one time, and then that tendency was removed for obvious reasons. The "basic design," however, remained intact.  The EHUs were still equipped with doors, windows, beds, bathrooms, kitchens, appliances, etc.  They were designed for human habitation, and the IA/TACs did nothing to alter that design.  The EHUs functioned in exactly the same manner as they were intended when they left the manufacturers' facilities.

Another fundamental consideration for Rule 12(b) analysis is that there is no allegation that the IA/TACs added a single molecule of formaldehyde to the EHUs by virtue of removing the units' wheels and placing the units on blocks.  The plaintiffs allege harm only as a result of the presence of formaldehyde, and since the IA/TACs' actions did not create that danger, that is a further indication that their limited actions do not constitute a remanufacture.  *See id.*   In *Slaid*, for example, the plaintiffs could not demonstrate that the repairs CNB authorized included the addition of the unbreakable plexiglass window at issue there.  *Id.* at 798.

By way of contrast with *Slaid*, the Court should consider *Jenkins v. International Paper Co.*, 945 So. 2d 144 (La. App. 2d Cir. 2006).   The plaintiff in *Jenkins* was injured when his foot became trapped in a small gap between a conveyor belt and a metal platform.  He sued the equipment manufacturer (Brinkley), seller (Voith), and his employer (IP).  The manufacturer and seller moved for summary judgment on all claims against them, which included LPLA claims based on construction, design, and warnings.  The court found that the evidence demonstrated the dangerous "nip point" on the conveyor belt was created when the plaintiff's employer added a metal platform after initial installation.  The court said, "the unreasonably dangerous condition … did not exist when the guillotine conveyor left Brinkley's control or even when Voith's representatives were present at IP for the start-up … [The gap] was the result of IP's layout and

later installation of a metal plate." As a result, the court granted summary judgment for Brinkley and Voith.

This case is the antithesis of *Jenkins*. In *Jenkins*, something significant happened after the equipment left the manufacturer that created the dangerous condition. There was a substantial alteration of the product that caused the injury. That alteration could, therefore, be considered a remanufacture. That is not the case here. The IA/TACs did not create the dangerous condition, to the extent one existed at all. Their limited actions did not materially alter the units, nor the units' formaldehyde content. They cannot, by any stretch of the LPLA, be properly considered manufacturers. Therefore, all LPLA claims against the IA/TACs should be dismissed.

## CONCLUSION

For the foregoing reasons, the *Aldridge* plaintiffs' claims against the IA/TACs should be dismissed with prejudice pursuant to Rule 12(b)(6) and Rule 12(b)(1), because: (a) their claims have prescribed; (b) this Court lacks subject matter jurisdiction and the plaintiffs have no Article III standing inasmuch as the plaintiffs have failed to "match" their individual claims against particular IA/TACs, as explicitly required by this Court's previous orders; and (c) the plaintiffs have not pled claims that are cognizable under the Louisiana Products Liability Act. Accordingly, Shaw Environmental, Inc. and CH2M HILL Constructors, Inc. respectfully request that their motion to dismiss be granted, dismissing with prejudice the *Aldridge* plaintiffs' claims against them.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**


_____s/M. David Kurtz_____
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

*And*

DANNY G. SHAW (#11977)
GERARDO R. BARRIOS (#21223)
WADE M. BASS (#29081)
#3 Sanctuary Blvd., Suite 201
Mandeville, Louisiana 70471
Telephone: (985) 819-8400
Facsimile: (985) 819-8484

**ATTORNEYS FOR DEFENDANTS,
SHAW ENVIRONMENTAL, INC. and
CH2M HILL CONSTRUCTORS, INC.**


## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of April, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.


_____s/M. David Kurtz_____
M. DAVID KURTZ