UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | : | MDL NO. 2:07-MD-1873 |
| | : | SECTION "N" (5) |
| THIS DOCUMENT IS RELATED TO: | : | JUDGE ENGELHARDT |
| *All Cases* | : | MAGISTRATE JUDGE CHASEZ |

REPLY MEMORANDUM IN SUPPORT OF
RULE 12(b)(6) MOTION TO DISMISS
BASED ON FEDERAL PREEMPTION
FILED BY THE
MANUFACTURED HOUSING DEFENDANTS

MAY IT PLEASE THE COURT:

I.   **Plaintiffs' Claims Present an Obstacle to the Accomplishment and Execution of the Full Purposes and Objectives of Congress.**

This case is, first and foremost, a case of "obstacle" preemption. Yet, Plaintiffs barely mention "obstacle" preemption in their opposition. This omission is telling, as Plaintiffs cannot persuasively argue that this Court should ignore HUD's controlling formaldehyde product standards, specifically devised for manufactured housing through formal rulemaking, in favor of a state-specific ambient air standard specifically rejected by HUD. Plaintiffs understate HUD's rejection of an ambient standard, stating that "HUD merely considered and did not adopt any ambient air standard for mobile homes."[1] HUD did much more than that. HUD *specifically rejected* the ambient air standard, and *instead*, chose the product standard. See HUD's Final Rule, at 49 Fed. Reg. 31996

---

[1] PSC Memorandum in Opposition to Manufactured Housing Defendants' Rule 12(b)(6) Motion to Dismiss Based on Preemption (Doc. 1304) (hereinafter "PSC Opposition"), at p. 12.

(August 9, 1984)[2], which is comprehensively reviewed by the Manufactured Housing Defendants in the original supporting memorandum.[3]

Plaintiffs virtually ignore obstacle preemption because they cannot show that their ambient air standard passes muster under obstacle preemption standards. "The test of whether a State rule or action is valid or must give way is whether the State rule can be enforced or the action taken without impairing the Federal superintendence of the manufactured home industry as established by the Act." 24 C.F.R. § 3282.11(d). As shown below, the application of Plaintiffs' ambient air standard would impair HUD's oversight of the industry.[4]

*First*, HUD regulates formaldehyde emissions comprehensively, from the time plywood and particleboard is manufactured, to the installation process, to the point of sale, when consumers are given warnings about the possible effects of formaldehyde. 24 C.F.R. § 3280.308 - 309. HUD even mandates the testing procedures to be used in certifying wood products, through the adoption of scientifically proven methodologies.

---

[2] It is significant that HUD's express rejection of the ambient air standard that Plaintiffs here advocate is found in its commentary to its Final Rule on formaldehyde standards. The Fifth Circuit recognized, in a case cited by Plaintiffs, that "[f]ederal agency statements interpreting specific agency regulations are given substantial deference." *O'Hara v. General Motors Corp.*, 508 F. 3d 753, 760 (5th Cir. 2007) (citation omitted). Indeed, the lack of such statements in the Final Rule at issue in *O'Hara* helped the Fifth Circuit distinguish that case from *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 120 S.Ct. 1913 (2000) and hold that the plaintiffs' claims therein were not preempted. 508 F.3d at 761. This case, unlike *O'Hara*, has all that *Geier* had and more. In its Final Rule announcing the formaldehyde regulations, HUD both expressly rejected Plaintiff's ambient air standard in favor of the product standard AND included an express preemption statement that the formaldehyde regulations preempted any state and local standards, 49 Fed. Reg. 31997, something missing in *Geier*. The *Geier* dissent wanted to see a "formal agency statement of preemptive intent," 529 U.S. at 884, 120 S. Ct. at 1927, which is precisely what HUD did in this case.

[3] *See* Memorandum in Support of Manufactured Housing Defendants Rule (12)(b)(6) Motion to Dismiss Based on Preemption (Doc. 1192-2) (hereinafter "Original Memorandum"), at Section III(C).

[4] Plaintiffs ambient air standard is a challenge through the back door what they cannot challenge through the front door. Plaintiffs challenge the sufficiency of the HUD standards. Pujol Complaint, ¶ 187(c). However, binding United States Supreme Court precedent mandates that considerable deference be given to HUD's regulations at issue in this case and HUD's interpretation of them. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782-2783, 81 L.Ed.2d 694, 703-704 (U.S. 1984).

24 C.F.R. § 3280.406 (adopting A.S.T.M. E 1333-96 as the standard test method for wood products). These rules are directed totally to a product-based standard. If Plaintiffs prevail in advocating an ambient air standard, these rules would be completely displaced. The plywood and particleboard industries would have no guidance for proper testing and certification. The manufactured housing industry would lose the only reliable method for purchasing safe and certified products. In short, HUD would lose all control over formaldehyde emissions in manufactured homes. Worse yet, juries in 50 states would be free to impose their own judgment over what is safe, economic and proper for the entire manufactured housing industry. In the end, a 50-state chaotic patchwork of rules would emerge to the detriment of an entire industry.

*Second*, Plaintiffs would have this Court do what HUD is forbidden to do by Congressional mandate: impose an uncertain and constantly changing, jury-derived ambient air standard at the cost of every other important policy concern. When HUD engages in formal rulemaking, it must balance several competing factors, including safety, affordability and the need for a uniform building code applicable in all 50 states. 42 U.S.C. § 5401(b). HUD did precisely that when it carefully considered hundreds of public comments, including all the available science concerning formaldehyde. 49 F.R. 31,996 (August 9, 1984). At the end of the rulemaking process, HUD adopted a uniform standard that balanced safety with all other regulatory factors, including cost. If Plaintiffs' ambient air standard prevails, the net effect of such a scheme would be to substitute the Congressional purposes of the Manufactured Housing Act[5] for whatever

---

[5] The Manufactured Home Construction and Safety Standards Act, 42 U.S.C. § 5401, et seq, at §5401(b).

purposes individual juries find proper on any given day. Permitting juries to make policy and regulatory decisions subverts HUD's superintendence over the industry.[6]

Plaintiffs' ambient air standard totally undermines HUD's authority and the reasonableness of its formaldehyde regulations implemented pursuant to explicit congressional authority to achieve the *full purposes and objectives* of Congress (nationwide uniformity, affordability and safety). As a result, Plaintiffs' standard is preempted as an undeniable obstacle to HUD's accomplishment and execution of those objectives and purposes.

In addition to advocating an ambient air standard, Plaintiffs admit in their brief that they are challenging the adequacy of the formaldehyde warnings given by the manufactured housing defendants pursuant to the HUD regulations.[7] In arguing that such warnings claims present an obstacle to the Manufactured Housing Act and the formaldehyde regulations, Defendants cited *Witty v. Delta Airlines, Inc.*, 366 F. 3d 380, 383-85 (5th Cir. 2004) ("*Witty*"), a case directly on this point, in which the court held that claims that additional warnings beyond those required by the extensive regulations in issue "conflict[ed] with the federal regulations" and were preempted. 366 F. 2d at 383-85. The Fifth Circuit further expressly held that "any such [warning] claim must be based on a violation of federally mandated warnings." *Id.* at 385. Plaintiffs ignore the *Witty* case. Their only response to this warnings argument is, erroneously, that Defendants have not shown an "unavoidable conflict" with the warnings they advocate and the

---

[6] Contrary to Plaintiffs argument, we do not argue that Plaintiffs' claims are completely preempted. Instead, we submit that Plaintiffs' standard of care is displaced by HUD Code standards. Manufactured housing companies can be held liable for violating HUD standards, but not for violating the *ad hoc* standards proposed by Plaintiffs, which HUD flatly rejected 25 years ago.

[7] PSC Opposition, p. 14.

warnings that HUD requires.[8] Yet Defendants need not show an unavoidable conflict to make a case for obstacle preemption, but instead need only show that the warnings are not identical.[9]

## II. Plaintiffs' "Minimum Standards" Argument Does Not Save Their Claims From Obstacle Preemption.

Plaintiffs' only response to the obstacle preemption argument is that the formaldehyde standards are "minimum standards," and thus obstacle preemption does not apply.[10] Noticeably absent from Plaintiffs' brief discussion of obstacle preemption is any mention of the *Geier* decision. And for good reason -- the *Geier* decision clearly defeats Plaintiffs' "minimum standard" argument. In *Geier,* the plaintiffs, as here, argued that the federal safety standard in issue -- the Department of Transportation's ("DOT") airbag standard -- set a minimum safety standard and thus their claims could not be barred by obstacle preemption. 529 U.S. at 874, 120 S. Ct. at 1922. The United States Supreme Court disagreed, holding that the DOT made a deliberate and carefully considered decision to "provide the manufacturer with a range of choices among different passive restraint devices," which would "lower costs." *Id.* at 874-75, 120 S. Ct. 1922. The *Geier* decision noted that the DOT, like HUD's rejection of an ambient air standard in this case, had specifically rejected the plaintiffs' "all airbag" standard. *Id.* at 879, 120 S. Ct. at 1924. The Court held:

> In effect, petitioners' tort action depends upon its claim that manufacturers had a duty to install an airbag when they manufactured [the car in issue]. Such a state law—i.e., a rule of state tort law imposing such a duty – by its

---

[8] PSC Memorandum, p. 14.

[9] *See* Original Memorandum, at, pps. 22-23.

[10] PSC Memorandum, pps. 11-14.

>  terms would have required manufacturers of all similar cars to install airbags rather than other passive restraint systems, such as automatic belts or passive interiors. . . . It thereby . . . would have stood as an obstacle to the gradual passive restraint phase-in that the federal regulation deliberately imposed.

*Id.* at 881, 120 S. Ct. at 1925.

In this case, as with the DOT in *Geier*, HUD carefully considered and flatly rejected the ambient air standard that Plaintiffs' advocate in this case. 49 Fed. Reg. at 31997. Instead, HUD made the deliberate and carefully considered decision to impose a *different* standard – the product standard. To allow Plaintiffs' claims asserting the very standard that HUD rejected to go forward would, as in *Geier*, impose an obstacle to the product standard that HUD affirmatively chose and would directly threaten the Manufactured Housing Act's purpose of providing safe, *yet affordable* homes.

This application of *Geier* is also supported by the decision in *Choate v. Champion Home Builders Co.*, 222 F. 3d 788 (10th Cir. 2000), a case cited by Plaintiffs several times. In *Choate*, formaldehyde regulations were not in issue. Plaintiff, who had been injured during a home fire in his manufactured home, brought product liability claims against the home's manufacturer alleging that the absence of a battery-powered smoke detector rendered his home unreasonably dangerous. HUD's regulation, promulgated pursuant to the Manufactured Housing Act, required a hard-wired smoke detector in each home. Plaintiff argued that HUD's requirement was a "minimum standard," and thus obstacle preemption did not apply. The Tenth Circuit agreed. *Choate*, 222 F. 3d at 795-97. In so holding, however, the Tenth Circuit distinguished the *Choate* case from the situation in *Geier,* and indeed from the very situation present in

*this case*, which the Tenth Circuit recognized *would be appropriate* for obstacle preemption:

> Choate and Madewell do not argue that manufacturers are required to install battery-powered smoke detectors *instead of* hard-wired ones; rather, they argue that Champion may be liable under state tort law for not adding a battery backup . . . .
>
> * * *
>
> The rule of law sought by Choate and Madewell . . . would not eliminate the chosen federal method of providing smoke detection in manufactured homes. It would simply increase the effectiveness of that method.

*Id.* at 795-96.

In the case at hand, unlike in *Choate*, the ambient air standard that Plaintiffs advocate *would* effectively replace the product standard. Plaintiffs are arguing that the ambient air standard should apply *instead of* the product standard. They are two *different* standards; unlike *Choate*, Plaintiffs here are not simply arguing a safer version of the *same standard* (two smoke detectors instead of one). HUD specifically accepted the product standard and specifically rejected Plaintiffs' ambient air standard. This case is like *Geier,* and this Court should reject Plaintiffs' minimum standard argument, for Plaintiffs' ambient air standard presents an obstacle to the achievement of the Manufactured Housing Act's purposes and objectives of a balance between safety, uniformity and affordability.[11]

---

[11] Plaintiffs also cite *O'Hara v. General Motors Corp.,* 508 F. 3d 753 (5th Cir. 2007) in support of their minimum standards argument. In *O'Hara,* the parents of a minor child who had been injured in a rollover accident alleged product liability claims regarding the vehicle's side windows, claiming they should have had advanced glazing. Defendants claimed preemption based on the DOT's safety standards for glass. The Court held that the standards, which approved *both* glass with and without advanced glazing in side windows, were minimum standards and thus the plaintiffs' claims were not preempted. *O'Hara* thus was not a situation where the administrative agency specifically considered two standards, and expressly rejected the one advocated by the plaintiffs in favor of another, as is the case here. Further, the *O'Hara* court found it very persuasive that the administrative agency's statements regarding the safety glass rule did not clearly articulate a policy which would be frustrated by the plaintiffs' suit, and distinguished *Geier*

Because Plaintiffs are advocating a standard that HUD has specifically rejected and that directly conflicts with the standard that HUD promulgated, Plaintiffs' "minimum standard" argument does not save their claims from obstacle preemption.

### III. The Saving Clause Does Not Protect Plaintiffs' Claims From Obstacle Preemption.

While Plaintiffs argue that the saving clause protects their claims from *express* preemption, they do NOT argue that the saving clause protects their claims from obstacle preemption. The reason is obvious - - the saving clause does not protect their claims from obstacle preemption. The Supreme Court's instructions in *Geier* were clear: "this Court has repeatedly 'declined to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law[,]'" 529 U.S. at 870, 120 S. Ct. at 1919 (citations omitted), and "[n]othing in the language of the savings clause suggests an intent to save state-law tort actions that conflict with federal regulations." *Geier,* 529 U.S. at 869, 120 S. Ct. at 1919. Plaintiffs' state law claims advocating a standard expressly rejected by HUD "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress", 24 C.F.R. § 3282.11, and are not saved by the savings clause because they conflict with the formaldehyde standards carefully crafted by HUD.

---

on that basis. 508 F. 3d at 760-63 ("The manufacturers in *Geier* and *Hurley* identified specific statements in NHUSA's official commentary on FMVSS 208 which supported their position that the plaintiffs' safety enhancements would actually frustrate NHUSA's safety goals"). In the case at hand, as in *Geier,* there are significant HUD statements that support defendant's obstacle argument. HUD specifically rejected the ambient air standard and chose the product standard *instead*, and determined that the cost of a mobile home would be several hundred dollars more if standards were set to achieve an indoor ambient air level of less than 0.4 ppm. 49 Fed. Reg. 31,996-97, 32002-03 (1984). These statements clearly present a policy that would be frustrated by plaintiffs bringing a lawsuit based on the very standard that HUD rejected.

## IV.     Conclusion

This Court should dismiss Plaintiffs' Complaints pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs' make clear that they are claiming that the Manufactured Housing Defendants should be held liable under an "ambient air" formaldehyde standard of care and a duty to warn beyond that set forth in the HUD regulations. Both such theories are preempted under federal law because they seek to impose standards of care that are not identical to those required by federal law and stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Plaintiffs do not allege liability against the manufactured housing defendants for violations of the HUD formaldehyde regulations, so their claims should be dismissed.

Respectfully submitted:

VOORHIES & LABBÉ
(A Professional Law Corporation)

*/s/ Lamont P. Domingue*
Lamont P. Domingue - #20787
700 St. John Street, 5th Floor
Post Office Box 3527
Lafayette, Louisiana 70502-3527
Telephone: (337) 232-9700
Fax: (337) 235-4943

ATTORNEYS FOR Cavalier Home Builders, LLC., Cavalier Homes, Inc., Champion Home Builders, Co., Homes of Merit, Inc., Liberty Homes, Inc., Redman Homes, Inc., (for itself and in its capacity as the acquiring entity by merger of the corporation formerly known as Dutch Housign, Inc.), River Birch Homes, Inc., ScotBilt Homes, Inc. and Waverlee Homes, Inc.
E-Mail: LPD@volalaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of March, 2009, a copy of the Reply Memorandum in Support of Manufactured Housing Defendants' Joint Rule 12(b)(6) Moton to Dismiss Based on Federal Preemption was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system. I also certify that I have mailed by United States Postal Service this filing to the following non-CM/ECF participants:

Jeffery N. Luthi
One Columbus Circle, NE
Federal Judiciary Bldg., Room G-255
Washington, DC 20002.

                                                      /s/ Lamont P. Domingue
                                                      Lamont P. Domingue - #20787
                                                      Post Office Box 3527
                                                      700 St. John Street
                                                      Lafayette, Louisiana 70502-3527
                                                      Telephone: (337) 232-9700

                                                      ATTORNEYS FOR Cavalier Home Builders, LLC., Cavalier Homes, Inc., Champion Home Builders, Co., Homes of Merit, Inc., Liberty Homes, Inc., Redman Homes, Inc., (for itself and in its capacity as the acquiring entity by merger of the corporation formerly known as Dutch Housing, Inc.), River Birch Homes, Inc., ScotBilt Homes, Inc. and Waverlee Homes, Inc.
                                                      E-Mail: LPD@volalaw.com