UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER         * | | MDL NO. 1873 |
|     FORMALDEHYDE         * | | |
|     PRODUCTS LIABILITY     * | | |
|     LITIGATION              * | | SECTION:  N(5) |
|                * | | |
| This Document Relates to:  *Charlie Age, et al. v.*   * | | JUDGE: ENGELHARDT |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892  * | | |
|                * | | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER
REGARDING RE-TESTING OF PLAINTIFFS' EMERGENCY HOUSING UNIT**

**MAY IT PLEASE THE COURT:**

Through undersigned counsel, defendant, Gulf Stream Coach, Inc. ("Gulf Stream"), submits this Memorandum in Support of its Motion for Protective Order. While Gulf Stream objects to the subsequent testing proposed by Plaintiffs, Gulf Stream submits that the proposed testing should not be delayed pending the Court's ruling.  Gulf Stream respectfully reserves its right to supplement this Motion or file additional Motions concerning the subsequent testing if allowed, as warranted.

**I.  NATURE OF THE CASE**

This Multi-District Litigation is the consolidation of several state and federal toxic tort suits in which an estimated thirty thousand named plaintiffs claimed to have inhabited emergency housing units ("EHUs") that were provided to them by the Federal Emergency Management Agency ("FEMA") as a result of the alleged uninhabitability of their residences due to Hurricanes Katrina and Rita. (Doc. No. 109, at ¶ 96). Plaintiffs claimed injuries resulting from their alleged exposure to the release of formaldehyde and/or formaldehyde vapors in those

1

EHUs. (Doc. No. 109, at ¶ 30).  Following denial of class certification, several plaintiffs filed suit against Gulf Stream Coach, Inc., alleging that it manufactured the EHUs used by the specific plaintiffs.  (*Age, et al v. Gulf Stream Coach, Inc., et al*, 09-2892, Doc. No. 1). Moreover, plaintiffs have named as defendants the United States Government through FEMA and Fluor Enterprises, Inc. (*Age,* Doc. No. 1), and plaintiffs seek recovery for alleged physical and mental pain and suffering, physical impairments and disability, medical expenses, loss of earnings capacity, loss of enjoyment and quality of life, loss of consortium, travel expenses, out-of-pocket expenses, and the loss of use and/or opportunity to use safe and adequate shelter allegedly resulting from the purported exposure to formaldehyde. (*Age*, Doc. No. 1, ¶ 117).

During the course of this litigation, the parties completed the class certification phase, conducted substantial discovery, and now have moved into the trial phase. On April 6, 2009, the Court rendered Pre-Trial Order No. 34, in which it adjudged that certain named plaintiffs would act as bellwether plaintiffs against four of the manufacturing defendants. (Doc. No. 1299). Specifically, the Court ordered that plaintiffs Alana Alexander and Christopher Cooper would serve as bellwether plaintiffs against Gulf Stream in a trial scheduled for Sept. 14, 2009. *Id*. Immediately thereafter, the Plaintiffs' Steering Committee submitted a request to inspect, photograph, video, and test the EHU occupied by the Gulf Stream trial plaintiffs Alana Alexander and Christopher Cooper, as well as the other units occupied by the other bellwether plaintiffs. *See* Plaintiffs' Request for Inspection of Temporary Housing Units, dated April 8, 2009, attached hereto as Exhibit "A." However, as set forth more fully below, the plaintiffs have already conducted testing of the unit, and the plaintiffs' own expert has verified that the results were accurate. Thus, Gulf Stream asks for a protective order prohibiting the plaintiffs from conducting this second round of testing.

## II. LAW AND ARGUMENT

Federal Rule of Civil Procedure 26 provides that parties may obtain discovery regarding any matter, not privileged, that is relevant to the issues raised by the claims or defenses of any party. Fed. R. Civ. P. 26(b)(1). However, that right is not without limit. The court must limit the frequency or extent of discovery if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). Furthermore, Rule 26 provides that a court may, for good cause, issue a protective order that shields a party from whom discovery is sought from annoyance, embarrassment, oppression, or undue burden or expense, including forbidding the disclosure or discovery entirely. Fed. R. Civ. P. 26(c)(1).

In various contexts, courts throughout the United States have blocked parties from conducting discovery that is duplicative. For example, requests for access to a company's entire computer database were struck in part because they were duplicative of prior requests. *Cummings v. General Motors Corp.*, 365 F.3d 944, 954 (10th Cir. 2004) (rev'd on other grounds). Likewise, requests to take duplicative depositions have been denied. *See Baine v. Gen. Motors*, 141 F.R.D. 332, 336 (M.D. Ala. 1991).

In this case, the Plaintiffs' Steering Committee has asked to inspect, photograph, video, and test the EHU occupied by the Gulf Stream trial plaintiffs Alana Alexander and Christopher Cooper. <u>However, the PSC has already tested and inspected this unit, thereby making any additional testing duplicative by definition</u>. As evidenced by the Plaintiff Fact Sheets completed for both plaintiff Alexander and plaintiff Cooper, machine tests were administered on the EHU to test the air quality inside the trailer. *See* Plaintiff Fact Sheet of Alana Alexander, p. 10; and Plaintiff Fact Sheet of Alana Alexander on behalf of Christopher J. Cooper, p. 10, attached *in*

3

*globo* as Exhibit "B." The tests were performed on January 28, 2008. *See* DeVany spreadsheet, III, attached hereto as Exhibit "C." Additionally, the plaintiffs conducted a "walk-through" inspection of the plaintiffs' unit on April 17, 2009. The newly requested testing would mark the third time the PSC has investigated the unit in search of discoverable information.

With respect to the testing itself, the PSC seeks to conduct a second air quality test and inspection despite having already conducted an air quality investigation and obtained the results. Yet, it has provided no explanation why a second test is needed and has presented no evidence that the first test was inaccurate or faulty. Simply put, the plaintiffs have offered no reason why such duplication is warranted. On the contrary, the plaintiffs' own occupational health and safety engineer has validated the results of the original test. *See* Deposition Transcript of Mary DeVany, taken on Oct. 7, 2008, p. 70, attached hereto as Exhibit "D." Plaintiffs' expert Mary DeVany has stated that she believes that the occupants of the units did the original air quality testing in good faith. *See id*. at p. 62. Choosing to "trust, but verify," she performed her own tests to confirm the results of the occupants' tests and found that <u>her results were statistically similar to the original tests</u>. *Id*. at p. 62, 69. Thus, the plaintiff's own expert believes the original tests were done properly, and her own sampling verified that the tests were accurate. Accordingly, Gulf Stream believes that any testing would be duplicative and unnecessary.

Additionally, a new test presents the real threat that Gulf Stream will suffer serious harm in the form of jury confusion and an unnecessary burden to defend against new test results. One, if not the, critical issue in this case is the level at which the plaintiffs were exposed to formaldehyde. As it stands now, the parties have the results of a reliable air quality test that show the accurate levels of formaldehyde in the plaintiffs' EHU <u>during the time they lived in the unit.</u> The newly proposed test would be of an unoccupied unit. As such, the results would yield no

4

relevant or useful information. If those results were then put before the jury, the jurors would be confused as to their importance and relevance. Also, a second test would likely provide conflicting test results, which were obtained at different times and under different circumstances. Jurors would have difficulty knowing which test is authoritative or accurate. Furthermore, Gulf Stream would suffer the inequity of having to defend against two potentially different results despite the fact that there is no reason to doubt the reliability of the first. Gulf Stream would need to conduct further expert investigation to determine why the levels changed, if they did so. Gulf Stream would experience the burden of having to investigate and analyze the new results, which came under circumstances that are completely different from those in effect at the time of plaintiffs' occupancy. None of this is necessary or efficient because a perfectly acceptable test has already been performed.

Another problem with this new test is the PSC's proposed scope and timeframe to complete this testing. First of all, Gulf Stream again points out that the test will not be taken under the same conditions that existed during the time of the plaintiffs' residency in the EHU. This makes the results of any newly acquired testing unreliable and potentially confusing.

Second, the deadline for the plaintiffs to submit their expert reports is May 19, 2009. (Doc. No. 1305). Under this deadline, the experts could utilize the information from the test scheduled for May 2009. In this case, expert opinions are the only reliable manner in which the parties can understand the impact of the formaldehyde in this EHU and the effect any exposure to that level would have had on the unit's residents. The dilatory nature of plaintiffs' request raises the threat of a motion for trial continuance by plaintiffs or threatens the established deadlines in some fashion. Actions designed to postpone trial of this matter will generate additional expense and a needless burden to all parties involved.  Virtually all of the other

plaintiff experts will offer causation opinions based on the tested level. Plaintiffs' proposed program suggests they intend to offer incomplete opinions to be supplemented once their testing is complete and there has been time to assimilate the data. This approach will destroy the Court's Scheduling Order and require the defense experts to supplement their reports on the eve of trial. Alternatively, the experts will offer suggested possible causation opinions based on the levels they may find, rather than specific causation opinions based on the actual levels. In other words, Plaintiffs' experts will have to prophesize regarding Plaintiffs' claimed injuries and any alleged causal relationship to a theoretical level of formaldehyde exposure.

As a final point, Gulf Stream asserts that a second test will force all parties to incur an additional expense in relation to this testing. Each will want its own representatives, attorneys and experts at the new investigation. The plaintiffs ask everyone to expend this additional time, effort and expense – but to what end? The plaintiffs have had in their possession for over a year the very information they now seek to discovery. This type of duplication and unnecessary expense is precisely the type of excess that Rule 26 and the federal courts seek to prevent. This discovery is even less warranted in light of expert DeVany's testimony that she has verified the original results and believes the original tests were administered properly.

### III.   CONCLUSION

**WHEREFORE,** considering the foregoing, Gulf Stream respectfully requests that this Honorable Court issue an Order preventing the plaintiffs and/or their representatives from re-

testing the THUs occupied by the bellwether plaintiffs. The plaintiffs have already tested the unit, and their own expert has verified the accuracy of the tests.

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS, PFISTER & WEINSTOCK**

s/Andrew D. Weinstock

_____

**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
(504) 837-3119 (FAX)
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON
Timothy D. Scandurro #18424
Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
(504) 529-6199 (FAX)
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

## **C E R T I F I C A T E**

I hereby certify that on the 27th day of April, 2009, a copy of the foregoing Memorandum in Support of Motion for Protective Order Regarding Re-Testing of Plaintiffs' Emergency Housing Unit was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

<span>                </span>s/Andrew D. Weinstock
<span>             </span>_____
<span>          </span>ANDREW D. WEINSTOCK #18495
<span>               </span>andreww@duplass.com