UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N(5)<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO:<br>*Aldridge, et al. v. Gulf Stream Coach, Inc., et al.*<br>No. 07-9228 | MAGISTRATE CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### REPLY MEMORANDUM IN FURTHER SUPPORT OF SHAW ENVIRONMENTAL INC.'S AND CH2M HILL CONSTRUCTORS, INC.'S MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

**I.     Introduction**

Defendants Shaw Environmental, Inc. ("Shaw") and CH2M HILL Constructors, Inc. ("CH2M HILL") (collectively referred to as the Individual Assistance/Technical Assistance Contractors or "IA/TACs") submit this Reply Memorandum in Support of their Motion to Dismiss in order to point out certain errors in Plaintiffs' Opposition Memorandum (R. Doc. 1361). Most importantly, plaintiffs have utterly failed to meet their burden to show that their claims have not prescribed – a showing that could only be made if they can show that the

plaintiffs in this matter did not actually know, nor should they have known, about their claims before either November 29, 2006 (a year before *Aldridge* was instituted) or January 12, 2008 – one year prior to the date when the IA/TACs were added as defendants.  With respect to Article III standing and this Court's subject matter jurisdiction, plaintiffs conspicuously avoid this Court's prior unambiguous orders that the complaint must match every individual plaintiff with an individual defendant or otherwise risk dismissal for lack of standing.  Plaintiffs' attempt to belatedly cure these deficiencies through their Second Supplemental and Amending Complaint fails inasmuch as plaintiffs have still not matched each individual plaintiff with an individual IA/TAC defendant.[1]

**II.     Plaintiffs' Claims Against the IA/TACs Are Prescribed.**

   **A.     Plaintiffs' Opposition Misconstrues the IA/TACs' Reliance on *Hillard*.**

In their opposition memorandum, plaintiffs, incorrectly assert that the IA/TAC defendants point to the filing of the *Hillard* lawsuit as the trigger date for when prescription began to run against plaintiffs' formaldehyde claims.  This simply is not the case.  The IA/TAC defendants do not contend that the commencement of the *Hillard* lawsuit itself started the prescription clock.  In fact, prescription most likely commenced much earlier due to the fact that public reports of formaldehyde in trailers began to surface as early as November 2005, and had increased considerably by the time the *Hillard* lawsuit was filed on May 18, 2006.[2]  As explained

---

[1] Plaintiffs' argument that the IA/TACs somehow qualify as "manufacturers" under the Louisiana Products Liability Act is unpersuasive and does not merit a reply.  The IA/TACs thus stand on their original supporting memorandum (R. Doc. 1324-2).

[2] Plaintiffs accuse the IA/TACs of failing to provide a "factual demonstration" that *Hillard* put the public on notice.  (R. Doc. 1361, at 7.)  Of course, a factual demonstration would not be appropriate in the context of a Rule 12 motion.  Nevertheless, lest the plaintiffs' assertion go unchallenged, the IA/TACs note that concerns about formaldehyde in FEMA trailers were common knowledge long before January 12, 2008.  For example – and leaving aside the numerous press reports from the same time period, which are outside the record – plaintiffs' own Amended

in their Memorandum in Support, the IA/TAC defendants aver that the filing of the *Hillard* suit is simply a good proxy (for purposes of prescription) to determine when any given plaintiff knew or should have known of his or her formaldehyde claim against the IA/TAC defendants. The IA/TAC defendants use the *Hillard* filing strictly because that date is part of the record (and thus is a usable date for purposes of a Rule 12(b)(6) motion to dismiss).

Plaintiffs, in attacking *Hillard* as a proxy date, overzealously equate defendants' arguments with "imputing" knowledge to every single plaintiff of the claim on May 18, 2006, the date that *Hillard* was filed. They then proceed to knock down this straw man. What plaintiffs fail to mention, however, is that *Aldridge* was not filed until November 30, 2007 (over eighteen months after *Hillard*), and the IA/TAC defendants were not named as defendants until January 13, 2009.[3] Thus, the IA/TAC defendants need not show that each *Aldridge* plaintiff knew or should have known of his or her claim on May 18, 2006; the motion must be granted even if the date when plaintiffs knew or should have known of their claims is November 29, 2006, and arguably as late as January 12, 2008.

Contrary to plaintiffs' suggestion, the IA/TACs do not maintain that the *Aldridge* plaintiffs knew or should have known that the *Hillard* case had been filed. Rather, the IA/TACs contend that given that the *Hillard* plaintiffs knew about their claims on or before May 18, 2006, then it is unreasonable to conclude that the *Aldridge* plaintiffs neither knew, nor should they have known, about their claims over six months thereafter on November 29, 2006, much less that they

---

Complaint refers to an April 2006 Sierra Club report regarding formaldehyde in FEMA trailers. Amended Complaint, ¶ 42 (R. Doc. 1064). Indeed, plaintiffs allege further that "Following release of the Sierra Club study, there was ongoing and intense scrutiny of the FEMA temporary housing units by the local and national media as well as the United States Congress through its relevant committees." *Id.* ¶ 44.

[3] As set forth in the IA/TACs' original memorandum in support, this filing does not relate back to the original filing of *Hillard*. Plaintiffs concede as much; they did not argue to the contrary.

should not have known until January 12, 2008. In light of the fact that the *Hillard* plaintiffs' claims are identical in substance to those asserted by the *Aldridge* plaintiffs, and given the immediate nature of these claims (eye irritation, nose bleeds, headaches, etc. - not the sort of thing it takes anyone months to notice), it is plain on the facts asserted on the face of the Complaint that the *Aldridge* plaintiffs knew or should have found out about their claims before or quite soon after the *Hillard* plaintiffs' figured out the same thing. Notably, despite the burden-shifting that occurs once it is clear that a claim has prescribed on its face, plaintiffs presented no facts in their opposition memorandum to suggest that they could not have known about their claims within months after the *Hillard* plaintiffs did.

In sum, to sustain the IA/TACs' motion, this Court need not "impute" knowledge of claims to all potential plaintiffs simply because an identical case was filed. The facts of this case simply are not that close. In the absence of a factual presentation to the contrary, this Court may conclude that the *Aldridge* plaintiffs knew or should have known about their claims prior to January 12, 2008, over a year and a half after the first formaldehyde case was filed.[4]

Plaintiffs likely knew or should have known of their claims against the IA/TAC defendants when the *Hillard* case was filed on May 18, 2006. But the filing of *Hillard* is not in and of itself the point. The relevant point here is that the *Aldridge* plaintiffs did not file their claims against the IA/TACs until January 13, 2009 -- over two and a half years after *Hillard* was filed. This date is far too late to permit a reasonable conclusion that the filing was timely.

---

[4] The fact that this is not a close case also responds to plaintiffs' arguments about analyzing prescription on a case-by-case basis. The IA/TACs do not contend that prescription should be determined "class-wide" (especially since no class exists). Rather, for any individual plaintiff, and in the absence of a factual demonstration to the contrary, there is simply no way to conclude that that plaintiff did not know, nor should he have known, about his or her claim prior to November 29, 2006 or January 12, 2008.

### B.     Plaintiffs' Argument Regarding Continuing Tort is Misplaced.

Next, plaintiffs seek to avoid the consequences of their late filing by invoking the doctrine of continuing tort. "Continuing tort," however, refers only to a tort "where the operating cause of injury is a continuous one and gives rise to successive damages."[5] Stated another way, "a continuing tort is occasioned by unlawful acts, not the continuation of ill effects of an original, wrongful act."[6] The continuing tort doctrine only applies when continuous conduct causes continuing damages.[7]

When a plaintiff attempts to avail himself of the continuing tort theory, the plaintiff bears the burden of establishing its applicability.[8] For prescriptive purposes, to allege a continuing tort, plaintiff must allege both continuous actions and continuous damage.[9] However, plaintiffs conspicuously do not allege a continuing tort theory in their Amended Complaint; indeed, plaintiffs fail to assert any factual support for their continuing tort theory even in their opposition memorandum.[10] Thus, plaintiffs have failed to meet their burden regarding the applicability of the continuing tort doctrine.

---

[5]  *Miller v. Conagra, Inc.*, 2008-0021 (La. 09/08/08), 991 So.2d 445, 456, *citing Crump v. Sabine River Authority,* 1998-2326, p. 7 (La. 06/29/99), 737 So.2d 720, 726.

[6]  *Id.*

[7]  *Risin v. D.N.C. Investments, LLC*, 2005-0415, p. 4 (La. App. 4 Cir. 120/7/05), 921 So.2d 133, 136.

[8]  *James v. New Century Mortgage Corp.*, 2006 WL 2989242 (E.D. La. 2006), *citing In re Med. Review Panel for Maria Moses*, 2000-2643, p. 6 (La. 05/25/01), 788 So. 2d 1173, 1177.

[9]  *Stanford v. Administrators of Tulane Educational Fund*, 2007-0678, pp. 8-9 (La. 4 Cir. 01/09/08), 975 So.2d 104, 109-110.

[10]  Plaintiffs seem to suggest that merely living in the trailers at the time suit was filed is sufficient to invoke the continuing tort doctrine. R. Doc. 1361, at 10. The IA/TACs, however, are not alleged to have been doing anything wrong throughout the plaintiffs' occupancy of the trailers at issue. Instead, the IA/TACs are alleged to have installed the trailers incorrectly – a point that will be hotly debated but certainly occurred only once, and not

In *Crump v. Sabine River Authority*, the Louisiana Supreme Court rejected the contention that a continuing tort could consist of a defendant's failure to remedy the harm caused by the initial tortious conduct, stating that "the breach of the duty to right the wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor."[11]  Here, a majority of the claims asserted by plaintiffs involve the IA/TAC defendants' alleged failure to remedy a harm caused by their initial conduct.  Based on the reasoning in *Crump*, such conduct does not constitute a continuing tort.

Plaintiffs also complain of the IA/TAC defendants' alleged failure to warn "of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde."[12]  In *GHR Energy Corp. v. Carboline Co.*, this Court specifically noted that "the continuing tort theory of prescription cannot apply to a failure to warn since a failure to warn is not capable of abatement, especially if there is no disclosure. . . .  Were courts to find otherwise, prescription would for all practical purposes cease to exist in failure to warn cases – regardless of whether the plaintiff had learned of the danger of the occurrence of the injury."[13]

Finally, even assuming that the IA/TAC defendants committed a continuing tort, their last act occurred well before January 2008.  Even where the cause of injury is a continuous one

---

continuously.  Nor does plaintiffs' "maintenance" allegation help them – plaintiffs do not allege that the IA/TACs breached some maintenance obligation within a year of January 2009.  Indeed, the reason that they have made no such allegation is that they would have no good faith basis for doing so; the IA/TACs' maintenance obligations ended much earlier than January 2008.

[11] *Crump v. Sabine River Authority,* 1998-2326, (La. 06/29/99), 737 So.2d 720, 726.

[12]  Amended Complaint, ¶ 33 (R. Doc. 1064).

[13]  744 F. Supp. 1405, 1407 (E.D. La. 1990).

6

giving rise to successive damages, prescription begins to run when the conduct stops.[14]  As discussed above, there is no allegation that the installation and maintenance work performed by the IA/TACs for FEMA was within a year of when the *Aldridge* lawsuit was filed, much less within a year of when the IA/TACs were added to the suit in January 2009.  In the absence of such an allegation, the continuing tort doctrine cannot save the plaintiffs' claims in this case.  Because plaintiffs have not shown, nor have they even alleged, that the IA/TAC defendants took any actions or engaged in any wrongful conduct during the year prior to the filing of the Complaint, the continuing tort theory does not save the plaintiffs' claims from prescribing.

      **C.**      **The Joint Tortfeasor Doctrine Does Not Save Plaintiffs' Claims.**

In claiming that the "joint tortfeasor" doctrine would save their otherwise prescribed claims, plaintiffs resort to the somewhat tautological proposition that if they are right, and we are wrong, about the effect of *Hillard*, then their claims have not prescribed.  Plaintiffs' argument misses the point.  *Hillard* raises two questions about the prescription of the claims asserted in *Aldridge*: (1) can it serve as a useful proxy for the date when the *Aldridge* plaintiffs knew or should have known about their claims?; and (2) does its filing actually affect the running of prescription as to the *Aldridge* plaintiffs' claims?  With regard to the first question, as established above, the answer is yes – *Hillard* itself does not "start the clock," but it is a good proxy.  And, as further discussed above, it does not have to be very precise for purposes of the instant motion, because plaintiffs did not add the IA/TACs until much later in January 2009.  (Even using the best case scenario for plaintiffs – the original filing of *Aldridge* in November 2007 – *Hillard* does not have to be an exact proxy for the prescription trigger date.  If an *Aldridge* plaintiff knew

---

[14] *South Central Bell Telephone Co. v. Texaco, Inc*. 418 So.2d 531, 533 (La. 1982).

or should have known about his or her claim by November 29, 2006, over six (6) months after the *Hillard* case was filed, then his or her claim has prescribed.)

The point of the chart in the IA/TACs original brief was to show that the answer to the second question posed by *Hillard* is no; it does not interrupt or suspend prescription of the *Aldridge* plaintiffs' claims. But even under the plaintiffs' hypothetical in which one were to substitute "*Aldridge*" for "*Hillard*" in the chart, it would not change the outcome. Plaintiffs' hypothetical fails because its hidden premise – that the claims against the IA/TACs had not already prescribed when the original Complaint was filed – is wrong. The IA/TACs did not do anything wrong, and are not alleged to have done so, within a year prior to November 30, 2007. Thus, even if the IA/TACs were found to be joint tortfeasors with the manufacturer defendants named in the original Complaint (which is denied), Article 2324 would have no effect because all of the claims asserted in the *Aldridge* lawsuit had already prescribed as to the IA/TACs.

**III.  The Second Supplemental and Amending Complaint Recently Filed by the *Aldridge* Plaintiffs Does Not Cure Plaintiffs' Lack of Article III Standing and This Court's Lack of Subject Matter Jurisdiction, and Does Not Comply with This Court's Prior Orders.**

Recognizing the obvious Article III standing defects in their First Supplemental and Amending Complaint and their demonstrable failure to comply with this Court's prior orders requiring that each individual plaintiff must be matched with an individual IA/TAC defendant, plaintiffs now attempt to partially cure their deficiencies by submitting a Second Supplemental and Amending Complaint (R. Doc. 1346). However, plaintiffs' efforts are simply too little, too late.

As plaintiffs concede, their Second Supplemental and Amending Complaint provides only a partial matching of certain individual plaintiffs – about half of all the named plaintiffs – to

8

specific IA/TAC defendants.[15] Far from purportedly mooting the IA/TACs argument, as plaintiffs suggest, the Second Supplemental and Amending Complaint is insufficient inasmuch as plaintiffs have failed to adequately allege Article III standing and this Court's subject matter jurisdiction with respect to all of the named individual plaintiffs.

The requirements of Article III and this Court's previous orders are unambiguous and straightforward: the complaint must match every individual plaintiff with an individual defendant or otherwise risk dismissal for lack of standing.[16] Article III standing goes to the heart of this Court's subject matter jurisdiction. Because failure to establish Article III standing deprives this Court of jurisdiction to hear the suit and to address the merits of this case,[17] this Court clearly mandated that plaintiffs connect each of the named plaintiffs with a specific defendant.[18] In response, plaintiffs in numerous other newly filed cases have complied with this Court's orders by filing separate lawsuits connecting individual plaintiffs with individual manufacturer defendants and IA/TACs. However, the *Aldridge* plaintiffs in the instant case apparently believe they are exempt from the Court's orders. Indeed, the *Aldridge* plaintiffs now put the cart before the horse and insist that they are entitled to conduct discovery before adequately pleading Article III standing. This Court's prior orders certainly did not offer such

---

[15] The Original Complaint contains 112 individually named plaintiffs, although the total number of plaintiffs is higher inasmuch as some of the named plaintiffs are suing as individuals and on behalf of minor children. The Second Supplemental and Amending Complaint purports to match only 55 of the named plaintiffs with an IA/TAC defendant.

[16] *See* IA/TACs Memorandum in Support of Motion to Dismiss (R. Doc. 1324-2), at 13-16; Order and Reasons (Aug. 1, 2008) (R. Doc 599); Order (Aug. 1, 2008) (R. Doc. 604); Order and Reasons (Nov. 6, 2008) (R. Doc. 842).

[17] *See* Order and Reasons, at 4 (Aug. 1, 2008) (R. Doc. 599).

[18] *See* Order and Reasons (Aug. 1, 2008) (R. Doc 599); Order (Aug. 1, 2008) (R. Doc. 604); Order and Reasons (Nov. 6, 2008) (R. Doc. 842).

discovery as an alternative to properly alleging Article III standing and subject matter jurisdiction in the first instance.

Accordingly, the IA/TACs respectfully urge that the First and Second Supplemental and Amending Complaints should be dismissed for lack of Article III standing and subject matter jurisdiction pursuant to Rule 12(b)(1) and this Court's prior orders.  Plaintiffs' Second Supplemental and Amending Complaint does not cure the deficiency because it fails to connect all named plaintiffs with a specific IA/TAC defendant as required by Article III and this Court's orders.  Alternatively, if this Court chooses to accept the partial matching of some named plaintiffs with specific IA/TAC defendants in the Second Supplemental and Amending Complaint, the IA/TACs respectfully submit that Article III standing is not properly asserted with respect to the remaining individual plaintiffs who are not matched to a specific IA/TAC defendant.  As such, this Court lacks subject matter jurisdiction over the remaining unmatched plaintiffs' claims and these claims must be dismissed under Rule 12(b)(1) and this Court's prior orders.[19]

## CONCLUSION

For the reasons set forth herein and in the original Memorandum in Support of the IA/TACs Motion to Dismiss, Defendants Shaw Environmental, Inc. and CH2M HILL Constructors, Inc. submit that the Aldridge plaintiffs' claims against them should be dismissed with prejudice pursuant to Rule 12(b)(6) and Rule 12(b)(1).

---

[19] *See* IA/TACs Memorandum in Support of Motion to Dismiss (R. Doc. 1324-2), at 13-16; Order and Reasons (Aug. 1, 2008) (R. Doc 599); Order (Aug. 1, 2008) (R. Doc. 604); Order and Reasons (Nov. 6, 2008) (R. Doc. 842).

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

_____s/M. David Kurtz_____
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

*And*

DANNY G. SHAW (#11977)
GERARDO R. BARRIOS (#21223)
WADE M. BASS (#29081)
#3 Sanctuary Blvd., Suite 201
Mandeville, Louisiana 70471
Telephone: (985) 819-8400
Facsimile: (985) 819-8484

**ATTORNEYS FOR DEFENDANTS,
SHAW ENVIRONMENTAL, INC. and
CH2M HILL CONSTRUCTORS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of April, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.

_____s/M. David Kurtz_____
M. DAVID KURTZ