UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 |
| | | SECTION: N(5) |
| This Document Relates to: *Crawford v. Fleetwood Enterprises, Inc.*, *Docket No. 09-2893* | * * * | JUDGE: ENGELHARDT |
| | * | MAG: CHASEZ |

**************************************************************************

### Fleetwood Enterprises, Inc.'s Memorandum of Law in Support of its Motion for Protective Order Regarding Re-Testing of Plaintiffs' Temporary Housing Unit

**May It Please The Court:**

Fleetwood Enterprises, Inc. ("Fleetwood") has moved this Court for an order, pursuant to Federal Rule of Civil Procedure 26(c), to prevent Plaintiffs from re-testing the Fleetwood bellwether plaintiffs' unoccupied unit (the "Jenkins unit") for three reasons:

- Further testing is duplicative: Plaintiffs have already tested the Jenkins unit twice.

- Further testing is unwarranted: Both of Plaintiffs' previous tests were conducted while the Jenkins family resided in the unit, therefore testing under actual living conditions.

- Further testing is unduly burdensome: it creates additional expense and the possibility for jury confusion.

Fleetwood adopts and incorporates Gulf Stream Coach's motion for protective order and its memorandum of law in support [Rec. Doc. 1373], and details its additional reasons to seek a protective order below.

## I.   Factual Background

### A.   Plaintiffs' Intention To Re-Test The Fleetwood Bellwether Plaintiffs' Unit.

Without setting out the entire dispute between the parties—Gulf Stream has explained the background to the Court[1]—Fleetwood states that, during the period that its filing for reorganization resulted in a stay of this case, Plaintiffs issued a Rule 34 Request for Inspection, including testing, of certain temporary housing units. The Request included the Jenkins unit in which Shalahn and Craig Jenkins, the bellwether plaintiffs for Fleetwood, resided.[2] On April 23, 2009, Plaintiffs provided the protocol that would be used to test the Gulf Stream unit, indicating that the PSC anticipated using the same protocol to test each bellwether unit.[3] After the bankruptcy court stay was lifted in the Jenkins case, Fleetwood contacted Plaintiffs' counsel to determine whether they intended to re-test the Jenkins unit. Plaintiffs counsel have informed counsel for Fleetwood that they intend to retest the Jenkins unit, stating that the PSC wants to "show a more complete representation of actual living conditions and therefore it is important to test the unit during warmer months."[4]

### B.   The Fleetwood Bellwether Plaintiffs' Unit Has Already Been Tested.

Plaintiffs have produced two lists showing that they have already tested the Jenkins unit. Indeed, Plaintiffs tested it *twice*: once on February 28, 2008 and once on March 11, 2008. These tests were conducted by W.D. Scott, a professional testing vendor working under the direction of Plaintiffs' primary testing expert Mary DeVany. One list from Plaintiffs identifies two different "data providers" for the two Jenkins tests —indicating that each test was sent to a different lab

---

[1] *See* Rec. Doc. 1373-2 at 1-2.
[2] *See* Rule 34 Request, dated April 8, 2009, attached as Ex. A.
[3] *See* email from Justin Woods to Andrew Weinstock, dated April 23, 2009, attaching proposed protocol, attached together as Ex. B.
[4] *See* email from Justin Woods to Rebecca Phalen, dated April 29, 2009, attached as Ex. C.

for processing.[5] The second list provides the actual test results.[6] As counsel for Gulf Stream has pointed out, Plaintiffs' expert Mary DeVany wanted to "verify" the results, so she chose a random 100 units to sample again and sent those samples to a different lab for validation.[7] Presumably, the Jenkins unit was one of those units that DeVany verified, based on the fact that it was tested twice, with the results processed by two different labs. The Jenkins family was living in this unit at the time that both tests were conducted.[8]

## II.   Argument and Citation of Authority

Fleetwood is requesting protection under Federal Rule of Civil Procedure 26(c)(1). Plaintiffs are seeking duplicative discovery. Plaintiffs have already tested the unit twice, and their own expert has verified the tests.[9] Plaintiffs have not alleged that their expert's testing was improper. Not only have Plaintiffs tested the units twice, they also tested the unit under actual living conditions. Plaintiffs have not shown why they need to re-test the now-unoccupied Jenkins unit. To the extent that Plaintiffs now want to test during warmer months in an attempt to replicate actual living conditions, the time to do that has passed. Their unit has been returned to FEMA and is sitting, vacant, on a lot with multiple units. The condition of the Jenkins unit is not now remotely the same as when it was occupied by the Jenkins family. Plaintiffs now seek to test the unit during the summer of 2009 presumably to show "actual living conditions" during warmer months. Plaintiffs' counsel, at a minimum, should provide an *expert* affidavit to support their claim that testing in 2009, on a unit that has been vacant since July 2008, is necessary, and that the proposed additional testing is more likely to show actual living conditions than the

---

[5] *See* List of Occupied Testing, attached to e-mail from Linda Nelson to Andrew Weinstock, dated June 11, 2008, attached together as Ex. D (the Jenkins unit is highlighted); *see also* DeVany Dep. at 68 (explaining that she used two different laboratories when validating the test results), excerpts attached as Ex. E.
[6] *See* List of Results, attached as Ex. F (the Jenkins unit is highlighted).
[7] DeVany Dep. at 62-63, 70, excerpts attached as Ex. E.
[8] *See* Shalahn Jenkins' Fact Sheet at 9, attached as Ex.G.
[9] DeVany Dep. at 68-70, excerpts attached as Ex. E.

previous tests. Fleetwood should not now be put to the expense of defending against further test results. Plaintiffs have two test results performed by expert testers performed while the Jenkins family was residing in the unit. Moreover, Plaintiffs' expert verified those test results by processing them at two separate laboratories. Further testing will only result in greater expense and increased possibility of jury confusion.

## III.   Conclusion

Further testing of the vacant Jenkins unit is duplicative and unnecessary. It cannot fairly replicate conditions that existed at the time the Jenkins family occupied the unit. Plaintiffs have two test results of the occupied unit, performed and verified by their own expert testing team. Fleetwood respectfully requests that this Court enter an order preventing Plaintiffs from further testing of the Jenkins unit.

Respectfully submitted:

**LEAKE & ANDERSSON, L.L.P.**

s/Amanda W. Vonderhaar

Jerry L. Saporito (#11717)
Amanda W. Vonderhaar (#31350)
1700 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-1701
(504) 585-7500 (phone)
(504) 585- 7775 (fax)
jsaporito@leakeandersson.com
avonderhaar@leakeandersson.com

-AND-

**NELSON MULLINS RILEY &
SCARBOROUGH, LLP**
Richard K. Hines, V (GA #356300)

Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)
richard.hines@nelsonmullins.com

Counsel for Fleetwood Enterprises, Inc.

## C E R T I F I C A T E OF SERVICE

I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )    Hand Delivery                    ( )    Prepaid U.S. Mail

( )    Facsimile                         ( )    Federal Express

(X)    CM/ECF

New Orleans, Louisiana, this 1st day of May, 2009.

s/Amanda W. Vonderhaar

**AMANDA W. VONDERHAAR**