**Via E-mail and Fax**
Henry Miller
Adam Dinnell
US Dept. of Justice, Civil Division
1331 Penn. Ave., NW, Rm. 8220-N
Washington, D.C. 20004

      Re:   *In re FEMA Trailer Formaldehyde Products Liability Litigation*, MD-1873, in the Eastern District of Louisiana.
            *Age, et al v. Gulfstream Coach, Inc., et al*, 2:2009-CV-02892, in the Eastern District of Louisiana.
            Alana Alexander and Christopher Cooper

Henry and Adam:

Per your request, this clarifies the testing protocol for the bellwether Gulf Stream trailer, VIN 1NL1GTR2551021783, FEMA Bar Code Number 1041407 (the "Trailer"), as set forth in our April 23, 2009, which is attached for reference.

After the Plaintiffs Steering Committee ("PSC") provided you with its proposed testing protocol on April 23, 2009 **(copy attached as Exhibit A)**, you did not lodge any objections to the protocol and agreed to present the trailer for inspection on May 6 and 7, 2009.

On April 30, 2009--after you had provided the date for testing and after the PSC had begun marshalling resources to do the testing--you asked for clarifications on the protocol and asked that it be certified in some manner by one of the PSC's experts, by close of business on Monday, May 4, 2009. You advised that, if the PSC failed to meet your deadline, you would not allow testing to go forward, as you had previously agreed.

Although you did not specify what additional information you needed, the PSC has attempted to clarify its protocol, as follows.

### I. Background

The Court has selected Alana Alexander, individually and on behalf of her son, Christopher Cooper ("Alexander"), as the first Gulf Stream "bellwether" plaintiff. The United States Government ("U.S.") has advised that Alexander resided in the Trailer and that the Trailer is currently located at a FEMA storage area in Lottie, Louisiana.

### II. Testing Participants

Experts:

Marco Kaltofen, P.E.

William D. Scott, P.E.
Stephen J. Smulski, Ph.D.
Alexis Mallet, Jr.
Charles Moore
Ervin Ritter
Gary Bunzer

Others:

Reagan Johnson (Animator)
Henry McCoy (Photographer)
Dalton Toups (Generator Operator)

Attorneys:

Hugh P. Lambert, Esq.
Chris Pinedo, Esq.
Frank J. D'Amico, Jr., Esq.
Peter Taaffe, Esq.

### III. Testing Procedures and Methods

**Air Sampling**

Air sampling will be conducted according set forth in Mary Devaney's "Procedures for Evaluating Formaldehyde Levels in FEMA Temporary Housing Units", dated March 2008, for unoccupied trailers (passive and active sampling)(**attached as Exhibit B**).

**Environmental Walkthrough Study**

The Environmental Walkthrough Survey will note:

- Any modification to ventilation and exhausts;
- Presence any cleaning chemicals;
- Presence of dirt/dust or other residue;
- Any modification or replacement to filters to record their current condition;
- Any defects or damage to windows/doors/openings;
- Examination of the trailer's ventilation systems;
- Photograph and video recording of:
    - the interior and exterior of the Trailer;
    - any areas of damage;
    - excessive dirt;
    - change in surface colors;
    - mold;
    - mildew;
    - water infiltration;

- - o all exhaust and ventilation controls/equipment; and
  - o all materials and material conditions.
- Operation the HVAC system in the Trailer.[1]

**Measurements of the Trailer/Material Audit**

This will involve measurements and identification of materials contained in the following:
- Each window opening, door frame, or other opening in the Trailer;
- Trailer ceiling;
- Trailer floor;
- Carpet;
- Cabinet walls;
- Cabinet ends;
- Cabinet doors;
- Countertops;
- Benches;
- Seat cushions;
- Curtains;
- Interior door;
- Exterior door;
- Trimboard;
- Fabric;
- Fabric divider;
- Bed platforms;
- Tubsurround;
- Vinyl seat; and
- Trailer undercarriage.[2]

We will also record:
- Sheet Goods (HWPW, MDF, unfinished Cabinets, PB);
- Finishes (Adhesives, Carpet Cushion, Paint, Seal Tape, Sheet Vinyl, Wall Paper);
- Laminated Goods (MDF Cabinet Doors, Paper Lam PB, MH PB Decking, Melamine Laminate PB, Vinyl Rigid PB, Acrylic/ Vinyl PB); and
- Cabinet/Passages (Interior Doors, Window Trim).

**Ventilation Testing**

---

[1] The April 23rd protocol assumed that there would be a power source. As we have not received confirmation that there will be a power source, the PSC's technicians will bring a generator.

[2] Because high grass may be present under the Trailer, the PSC's technician's will bring a weedeater or similar device to clear excess grass or foliage from under the Trailer so that the technicians can safety access the undercarriage for inspection.

Ventilation testing will be done according to ASTM E1827 - 96(2007), Standard Test Methods for Determining Airtightness of Buildings Using an Orifice Blower Door. Alternatively, ventilation testing may be conducted as follows[3]:

> Ventilation rates will be determined after collection of air samples using a tracer gas decay method. Externally controlled circulation fans will be switched on in the Trailer and pure carbon dioxide ($CO_2$) will be injected from a Tedlar bag into the Trailer to achieve an initial concentration that is significantly elevated over ambient conditions. The concentration of $CO_2$ will be measured continuously using Q-Trac Indoor Air Quality monitors through the sample ports in the trailer doors. Mixing fans will be run for 15 -20 minutes after dumping $CO_2$ into the Trailer allowing the air concentrations and decay curves to stabilize then the fans will be shut off while the decay of the concentration of tracer gas is measured. The ventilation rate will be determined from the decay of the tracer gas concentration in the Trailer.

If you refuse to allow the PSC to test the Trailer, please advise immediately, and please advise as to the basis of this refusal. Otherwise, we will continue to make arrangements for the May 6th testing as set forth in Adam's email.

Yours very truly,

Mikal C. Watts, for the
Plaintiffs' Steering Committee

Encl.
cc:  PSC
     Andrew Weinstock, Esq.
     Charles Penot, Esq.
     David Kurtz, Esq.

The foregoing testing protocol has been reviewed and adopted by the following:

_____
MARCO KALTOFEN, P.E.

---

[3] *See* "Aldehyde And Other Volatile Organic Chemical Emissions In Four FEMA Temporary Housing Units – Final Report," by LBNL's Randy Maddalena, Marion Russell, Douglas P. Sullivan, and Michael G. Apte, Environmental Energy Technologies Division, November 2008 available at http://www.cdc.gov/nceh/ehhe/trailerstudy/pdfs/LBNL-254E.pdf, at p. 7, "Measurement of Steady-State Ventilation Rates".

_____
WILLIAM D. SCOTT, P.E.

Ventilation testing will be done according to ASTM E1827 - 96(2007), Standard Test Methods for Determining Airtightness of Buildings Using an Orifice Blower Door. Alternatively, ventilation testing may be conducted as follows[3]:

> Ventilation rates will be determined after collection of air samples using a tracer gas decay method. Externally controlled circulation fans will be switched on in the Trailer and pure carbon dioxide ($CO_2$) will be injected from a Tedlar bag into the Trailer to achieve an initial concentration that is significantly elevated over ambient conditions. The concentration of $CO_2$ will be measured continuously using Q-Trac Indoor Air Quality monitors through the sample ports in the trailer doors. Mixing fans will be run for 15-20 minutes after dumping $CO_2$ into the Trailer allowing the air concentrations and decay curves to stabilize then the fans will be shut off while the decay of the concentration of tracer gas is measured. The ventilation rate will be determined from the decay of the tracer gas concentration in the Trailer.

If you refuse to allow the PSC to test the Trailer, please advise immediately, and please advise as to the basis of this refusal. Otherwise, we will continue to make arrangements for the May 6th testing as set forth in Adam's email.

Yours very truly,

Mikal C. Watts, for the
Plaintiffs' Steering Committee

Encl.
cc:   PSC
      Andrew Weinstock, Esq.
      Charles Penot, Esq.
      David Kurtz, Esq.

The foregoing testing protocol has been reviewed and adopted by the following:

MARCO KALTOFEN, P.E.

WILLIAM D. SCOTT, P.E.

---

[3] *See* "Aldehyde And Other Volatile Organic Chemical Emissions In Four FEMA Temporary Housing Units – Final Report," by LBNL's Randy Maddalena, Marion Russell, Douglas P. Sullivan, and Michael G. Apte, Environmental Energy Technologies Division, November 2008 available at http://www.cdc.gov/nceh/ehhe/trailerstudy/pdfs/LBNL-254E.pdf, at p. 7, "Measurement of Steady-State Ventilation Rates".