UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                          MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                 SECTION "N-5"
                                             JUDGE ENGELHARDT
                                             MAG. JUDGE CHASEZ

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEFENDANT UNITED STATES OF AMERICA'S MOTION
TO DISMISS PLAINTIFFS' REMAINING FTCA CLAIMS
FOR LACK OF SUBJECT MATTER JURISDICTION

U.S. EXHIBIT NO. 2

```
0001
 1            UNITED STATES DISTRICT COURT
 2            EASTERN DISTRICT OF LOUISIANA
 3
 4   IN RE:  FEMA TRAILER        MDL NO. 1873
 5   FORMALDEHYDE PRODUCTS       SECTION "N"(4)
 6   LIABILITY LITIGATION        JUDGE ENGELHARDT
 7
 8                     *   *   *
 9
10       Videotaped Deposition of PATRICIA M.
11   WILLIAMS, Ph.D., DABT, 234 West William
12   David Parkway, Metairie, Louisiana 70005,
13   taken at the Law Offices of Frank J.
14   D'Amico, Jr., 622 Baronne Street, New
15   Orleans, Louisiana 70113, on Thursday, the
16   16th day of October, 2008.
17
18   REPORTED BY:
19       JAMES T. BRADLE, CCR
         PROFESSIONAL SHORTHAND REPORTERS
20       (504)529-5255
21   VIDEOGRAPHER:
22       MICHAEL BERGERON
         PROFESSIONAL SHORTHAND REPORTERS
23       (504)529-5255
24
25
0002
 1   APPEARANCES:
 2       THE LAW OFFICES OF FRANK
           J. D'AMICO, JR.
 3       (BY: FRANK J. D'AMICO, JR., ESQUIRE
           AND AARON Z. AHLQUIST, ESQUIRE)
 4       622 BARONNE STREET
         NEW ORLEANS, LOUISIANA 70113
 5
               ATTORNEYS FOR THE PLAINTIFFS
 6
         SCANDURRO & LAYRISSON, L.L.C.
 7       (BY: DEWEY M. SCANDURRO, ESQUIRE)
         607 ST. CHARLES AVENUE
 8       NEW ORLEANS, LOUISIANA 70130
 9           ATTORNEYS FOR DEFENDANT,
             GULF STREAM COACH, INC.
10
         U.S. DEPARTMENT OF JUSTICE
11       (BY: HENRY MILLER, ESQUIRE)
         CIVIL DIVISION
12       1331 PENN AVENUE, N.W.
         ROOM 8220-N
13       WASHINGTON, D.C. 20004
14           ATTORNEYS FOR DEFENDANT, UNITED
             STATES OF AMERICA
15
         GIEGER, LABORDE & LAPEROUSE
16       (BY: CARSON W. STRICKLAND, ESQUIRE -
```

```
            VIA TELEPHONE)
17     701 POYDRAS STREET
       SUITE 4800
18     NEW ORLEANS, LOUISIANA  70139
19          ATTORNEYS FOR DEFENDANT, FOREST
            RIVER
20

       NELSON MULLINS
21     (BY: TAYLOR TAPLEY DALY, ESQUIRE)
       201 17TH STREET NW, SUITE 1700
22     ATLANTA, GEORGIA 30363
23          ATTORNEYS FOR DEFENDANTS,
            FLEETWOOD ENTERPRISES, INC.,
24          FLEETWOOD CANADA, LTD. AND
            FLEETWOOD HOMES OF NORTH
25          CAROLINA, INC.
0003
 1  APPEARANCES CONTINUED:
 2       HAILEY, McNAMARA, HALL, LARMANN
         & PAPALE, L.L.P.
 3       (BY: DAVID C. BACH, ESQUIRE -
          VIA TELEPHONE)
 4     10725 PERKINS ROAD, 2ND FLOOR
       BATON ROUGE, LOUISIANA 70810
 5          ATTORNEYS FOR DEFENDANTS,
            AMERICAN HOMESTAR CORPORATION
 6          AND OAK CREEK HOMES
 7       VOORHIES & LABBE
         (BY: LAMONT P. DOMINGUE, ESQUIRE -
 8          VIA TELEPHONE)
       700 ST. JOHN STREET
 9     P.O. BOX 3527
       LAFAYETTE, LOUISIANA 70502-3527
10
            ATTORNEYS FOR DEFENDANTS, CAVALIER
11          HOME BUILDERS, WAVERLEE HOMES,
            REDMAN HOMES, DUTCH HOUSING,
12          PATRIOT HOMES AND RIVER BIRCH
13       DEUTSCH, KERRIGAN & STILES
         (BY: JOSHUA G. KELLER, ESQUIRE -
14          VIA TELEPHONE)
       755 MAGAZINE STREET
15     NEW ORLEANS, LOUISIANA 70130
16          ATTORNEYS FOR DEFENDANTS,
            DESTINY INDUSTRIES, LLC
17          AND RIVER BIRCH HOMES
18       JONES, WALKER, WAECHTER, POITEVENT,
          CARRERE & DENEGRE, LLP
19       (BY: MADELEINE FISCHER, ESQUIRE)
       PLACE ST. CHARLES
20     201 ST. CHARLES AVENUE
       NEW ORLEANS, LOUISIANA 70170
21
            ATTORNEYS FOR DEFENDANTS, PILGRIM,
22          KEYSTONE, MONACO, R-VISION, THOR
            CALIFORNIA, KZRV, DS/CROSSROADS
23          AND DUTCHMEN
```

```
24
25
0004
 1   APPEARANCES CONTINUED:
 2        WILLINGHAM, FULTZ & COUGILL, LLP
             (BY: THOMAS L. COUGHILL, ESQUIRE -
 3             VIA TELEPHONE)
           NIELS ESPERSON BUILDING
 4         808 TRAVIS, SUITE 1608
           HOUSTON, TEXAS  77002
 5
               ATTORNEYS FOR DEFENDANT,
 6             JAYCO AND STARCRAFT
 7        DAIGLE, JAMISON & RAYBURN
             (BY: WALTER K. JAMISON, III, ESQUIRE -
 8             VIA TELEPHONE)
           303 WEST VERMILION STREET
 9         SUITE 210
           LAFAYETTE, LOUISIANA   70502
10
               ATTORNEYS FOR DEFENDANT,
11             SILVER CREEK HOMES
12        GARRISON, YOUNT, LORMAND, FORTE &
             MULCAHY, L.L.C.
13           (BY: KELLY M. MORTON, ESQUIRE -
               VIA TELEPHONE)
14         909 POYDRAS STREET
           SUITE 1800
15         NEW ORLEANS, LOUISIANA  70112
16             ATTORNEYS FOR DEFENDANTS,
               RECREATION BY DESIGN, LLC, TL
17             INDUSTRIES, INC., AND FRONTIER
               RV, INC.
18
19
20
21
22
23
24
25
0005
 1                   *   *   *
 2              EXAMINATION INDEX
 3                                     Page
 4   EXAMINATION BY MR. SCANDURRO .........10
     EXAMINATION BY MS. DALY .............138
 5   EXAMINATION BY MS. FISCHER ..........174
     EXAMINATION BY MR. MILLER ...........179
 6   EXAMINATION BY MR. D'AMICO ..........252
     EXAMINATION BY MR. MILLER ...........280
 7   EXAMINATION BY MR. SCANDURRO ........281
     EXAMINATION BY MR. D'AMICO ..........291
 8   EXAMINATION BY MR. SCANDURRO ........294
 9
10                   *   *   *
11              INDEX OF EXHIBITS
```

```
12                                        Page
13   Exhibit No. 1  .......................11
14   Second Re-Notice of Videotaped Deposition of
15   Patricia Williams
16   Exhibit No. 2  .......................13
17   Affidavit of Patricia M. Williams, Ph.D.,
18   DABT
19   Exhibit No. 3  .......................14
20   Curriculum Vitae of Patricia M. Williams,
21   Ph.D., DABT
22   Exhibit No. 4  .......................17
23   Patricia Williams - Litigation with
24   deposition or trial testimony in 2002 to
25   8-22-08
0006
 1   Exhibit No. 5  .......................19
 2   Professional Services Fee Schedule,
 3   Environmental Toxicology Experts, L.L.C.,
 4   Patricia M. Williams, Ph.D., DABT, President
 5   Exhibit No. 6  .......................19
 6   Worksheets and other documents used by Dr.
 7   Williams
 8   Exhibit No. 7  .......................25
 9   Blank Plaintiff Fact Sheet with note by Dr.
10   Williams
11   Exhibit No. 8  .......................26
12   Affidavit of Michael E. Ginevan with marks
13   made by Dr. Williams
14   Exhibit No. 9  .......................63
15   Invoice from Patricia M. Williams, Ph.D. to
16   Frank J. D'Amico dated August 26, 2008
17   Exhibit No. 10 ......................266
18   Article entitled "Histological Changes in
19   the Nasal Mucosa in Rats after Long-term
20   Exposure to Formaldehyde and Wood Dust" by
21   M. Holmstrom, et al
22   Exhibit No. 11 ......................267
23   Article entitled "Histological Changes in
24   the Nasal Mucosa in Persons Occupationally
25   Exposed to Formaldehyde Alone and in
0007
 1   Combination with Wood Dust" by M. Holmstrom,
 2   et al
 3   Exhibit No. 12 ......................267
 4   Article entitled "Nasal mucosa in workers
 5   exposed to formaldehyde:  a pilot study" by
 6   M. Boysen, et al
 7   Exhibit No. 13 ......................267
 8   Article entitled "Occupational exposure to
 9   formaldehyde and histopathological changes
10   in the nasal mucosa" by C. Edling, et al
11
12
13
14
15
16
```

```
17
18
19
20
21
22
23
24
25
0008
 1                 S T I P U L A T I O N
 2
 3         It is stipulated and agreed by and
 4    between counsel for the parties hereto that
 5    the deposition of the aforementioned witness
 6    is hereby being taken for all purposes
 7    allowed under the Federal Rules of Civil
 8    Procedure, in accordance with law, pursuant
 9    to notice;
10         That the formalities of reading and
11    signing are specifically not waived;
12         That the formalities of filing,
13    sealing, and certification are specifically
14    waived;
15         That all objections, save those as to
16    the form of the question and the
17    responsiveness of the answer, are hereby
18    reserved until such time as this deposition,
19    or any part thereof, may be used or sought
20    to be used in evidence.
21
22                    *   *   *
23         JAMES T. BRADLE, CCR, Certified Court
24    Reporter, officiated in administering the
25    oath to the witness.
0009
 1         THE VIDEOGRAPHER:
 2              Today is the 16th day of October,
 3    2008.  The time is approximately 1:45.  This
 4    is the videotaped deposition of Dr. Patricia
 5    Williams taken at the offices of Frank
 6    D'Amico for the case entitled "FEMA Trailer
 7    Formaldehyde Products Liability Litigation."
 8              Would counsel please identify
 9    themselves and which party they represent.
10         MR. SCANDURRO:
11              Dewey Scandurro for Gulf Stream
12    Coach.
13         MR. MILLER:
14              Henry Miller for the defendant,
15    United States of America.
16         MS. DALY:
17              Taylor Daly for the Fleetwood
18    defendants.
19         MR. AHLQUIST:
20              Aaron Ahlquist for the plaintiffs.
21         MR. D'AMICO:
```

```
 3    NOAEL?
 4         A    Right.
 5         Q    And they say "this study indicates
 6    this is the lowest observed adverse effect
 7    level and we think this is the applicable
 8    study that shows the LOAEL" or "reviewing
 9    the literature, this is the NOAEL."
10              We then take that study, which we
11    believe is the appropriate one, and then to
12    derive an MRL, we apply safety factors
13    because of the uncertainty that those
14    studies may not be sufficiently protective
15    of sensitive human beings, children,
16    elderly, anyone, because of the fact that
17    they may be applying animal to human studies
18    or this may be a healthy population that we
19    studied and there might be a more sensitive
20    unhealthy population?
21         A    No, they're not using the word
22    "protective" and they're not referring to
23    the unobservable damage by the compound.
24    So, no.  I mean, the way you phrased that,
25    certainly that's not correct.
0219
 1              What they're saying, the key is
 2    "observable."  They're saying that below
 3    this amount, based on this chosen study,
 4    based on the calculations from the
 5    uncertainty factors, we generate a number
 6    that we feel is appropriate for the similar
 7    type of an acute, lowest observed effects
 8    level that you might observe effects, but
 9    that has no bearing on damage that is
10    occurring.  That has no assurance of safety
11    under that level.
12         Q    Do you know what the OSHA standard
13    is?
14         A    For the workplace, the PEL?
15    MR. D'AMICO:
16              For formaldehyde?
17    EXAMINATION BY MR. MILLER:
18         Q    For formaldehyde.
19         A    Oh, yeah.  The permissible
20    exposure level for formaldehyde is 750 parts
21    per billion.
22         Q    Now, I want to ask you to pull out
23    your report, which is marked as Exhibit
24    No. 2.  Someone can probably grab it.
25         A    I have it.
0220
 1         Q    Okay.  Great.  I want you to go to
 2    Page 19, and I want to tell you I appreciate
 3    that your report is paginated.  Almost
 4    everyone else's report is not.
 5              The third paragraph there, do you
 6    see that, it starts with "the word
 7    'trailers'"?
```

```
 8        A    Yes.
 9        Q    If you go down about four
10   sentences, where it starts with "mobile
11   homes," "Mobile homes are defined and
12   regulated."
13        A    Oh, the second time it says
14   "mobile homes"?
15        Q    Yes, exactly.
16        A    Yes.
17        Q    And it says, "Mobile homes are
18   defined and regulated by the U.S. Department
19   of Housing and Urban Development."
20             What is your understanding of what
21   those regulations are as they relate to
22   formaldehyde?
23        A    Well, a regulation of HUD for
24   these is -- A regulation is a mixture of --
25        Q    Well, my question isn't
0221
 1   regulation.  What --
 2        A    Well, I'm telling you.  Well, they
 3   put levels that are standards or regulated
 4   that the formaldehyde has to be less
 5   concentration, has less than that.  That
 6   would be the highest levels of emissions
 7   that could be found from the HUD standards.
 8        Q    What is the HUD regulation?
 9        A    You know, it's either 300 or 400,
10   somewhere in there, parts per billion, but
11   it's really not of interest to me, and the
12   reason it is not of interest to me is it is
13   a manufacturing regulation and it has no
14   correlation with safety standards.  It is
15   all regulatory.  It is a mixture of
16   politics, economics and science, and so
17   there is no protective value under that.
18             So it really wasn't of any
19   particular interest to me, as what HUD has
20   decided they would allow manufacturers to
21   have for emissions of formaldehyde, because
22   it's a very political and economically
23   derived number.
24        Q    You're aware, from what I gather,
25   that HUD has issued regulations relating to
0222
 1   formaldehyde?
 2        A    Yes, they do, for the
 3   manufacturers.
 4        Q    And that applies to the mobile
 5   homes or manufactured housing?
 6        A    That's correct.
 7        Q    And from what I gather, I would
 8   represent to you that the ambient indoor
 9   target level for HUD is 400 parts per
10   billion.
11        A    That's what I said.
12        Q    Okay.
```

13      A    I have seen a contradictory
14 document somewhere, and I really didn't know
15 if it was accurate or not.
16      Q    I understand that, and I don't
17 want to seem like I'm misrepresenting or
18 anything like that, but it's your
19 understanding then that HUD has issued an
20 ambient indoor -- an indoor ambient target
21 level for formaldehyde in manufactured homes
22 of between 300 or 400 parts per billion?
23      A    Correct.
24      Q    And it's your opinion that that
25 does not have any applicability to you as a
0223
1 toxicologist, because there were a lot of
2 other factors that went into that
3 determination besides toxicology?
4      A    It doesn't have any applicability
5 to safety levels for prevention of adverse
6 health effects.
7      Q    And then my question is, why not?
8      A    Because it is well above where we
9 know we have adverse health effects.
10 Formaldehyde is a DNA-reactive carcinogen,
11 and when you theoretically consider the
12 DNA-reactive carcinogens, we know that there
13 is no threshold on a molecular level.
14          One DNA adduct with formaldehyde
15 can alter the genetic composition and
16 integrity of the DNA in a cell, and
17 depending upon when it attaches and if it is
18 not repaired, when in the cell cycle it
19 attaches --
20      Q    Ma'am, rather than going into the
21 whole -- What I understand you to say is
22 that you don't agree with it because it's
23 not based upon toxicology and safety?
24      A    It's not based upon scientific
25 fact of safety.
0224
1      Q    You indicated, I think, that you
2 thought there were a lot of other factors
3 that went into the determination of that
4 ambient indoor air target level; is that
5 right?
6      A    There are always other factors
7 with regulatory standards.  There have
8 always been lawsuits when the companies feel
9 it will cost too much to implement the
10 standard.  Benzene is a perfect history of
11 that.  It is always politics.
12      Q    Let me ask you, what is your
13 understanding of what factors would go into
14 something like that?
15      A    I just said, in regulatory
16 standards, it's no secret, its published in
17 scientific books, you know, that, you know,

18  standards and regulatory purposes are a
19  combination of politics, economics and
20  science.
21          I mean, I have seen that written
22  in so many different textbooks, you know, I
23  don't think anyone can deny it.  Look at the
24  history of the benzene regulatory standard.
25  It's a perfect example of all three.
0225
1          So, you know, anybody that would
2  try to say it's different would be hard
3  pressed to prove that.
4      Q    And is that the same -- Is that
5  the result of the Government having to make
6  the determination of what the regulatory
7  standard is?  They consider all of these
8  factors?
9      A    The Government, you know -- The
10  Government does not just look at science.
11      Q    Why not, to your understanding?
12      A    I just think I said.  You have the
13  economics, for instance, with the benzene
14  saga of trying to get the PEL's down to the
15  one part per million time-weighted average.
16          The industry sued, because it said
17  it would cost too much, and the Federal
18  Government retracted its standards, until
19  more deaths occurred, to where they could no
20  longer hold off lowering that standard to
21  the one parts per million.
22          So there's a long history.  Anyone
23  who has been in the field can pick many
24  different compounds and see the history of a
25  battle to how far can -- how much can we
0226
1  impose upon industry where it's economically
2  feasible for them to put out the product or
3  whatever it is that they are trying to use
4  or produce, how much safety can we impose
5  before they just lose too much money that
6  they can't afford to make it.
7      Q    From what I gather, what you're
8  saying is that the Government has to weigh
9  and balance these various factors and come
10  up with a decision on what it thinks is
11  appropriate?
12      A    The Government is the regulatory
13  body, and it has certainly been known that
14  whoever is above that regulatory body will
15  have a say, and so, yes, they come down
16  with -- They are the regulatory body.
17          Whoever the regulatory body is for
18  whatever you're talking about, they have the
19  say.  They do usually take public comment,
20  you know, and have a committee, et cetera,
21  but it's their decision.  It's where they
22  come to with their decision.