UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-5"
JUDGE ENGELHARDT
MAG. JUDGE CHASEZ

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEFENDANT UNITED STATES OF AMERICA'S MOTION
TO DISMISS PLAINTIFFS' REMAINING FTCA CLAIMS
FOR LACK OF SUBJECT MATTER JURISDICTION

U.S. EXHIBIT NO. 41

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: FEMA TRAILER | * | CIVIL ACTION 2:07-MD-1873 |
| FORMALDEHYDE PRODUCTS | | |
| LIABILITY LITIGATION | * | |
| | | JUDGE ENGLEHARDT –DIV.  N |
| | * | |
| | | MAG. JUDGE CHASEZ – MAG. 5 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DECLARATION OF MARTIN MCNEESE

I, Martin McNeese state and declare as follows:

1.      I am employed by the Federal Emergency Management Agency (FEMA), a component agency of the Department of Homeland Security (DHS).  I am currently the Region 8 Individual Assistance Branch Chief and am based in Denver, Colorado.  In Summer of 2006 I was assigned and was Chief, Individual Assistance in the Louisiana Transitional Recovery Office, New Orleans, Louisiana.

2.      On or about July 2006, Mr. Kevin Souza requested that I serve as FEMA's primary Point of Contact ("POC") for purposes of interacting with the United States Environmental Protection Agency ("EPA") and Center for Disease Control, Agency for Toxic Substances and Disease Registry ("ATSDR"), for purposes of facilitating their testing of temporary emergency housing units (EHU) for formaldehyde.  That testing was conducted by the EPA in late September through mid-October 2006, and ATSDR issued a Health Consultation Report detailing the results of that testing and providing an

Παγε 1 οφ  4

analysis of the test results in February 2007. Based upon my review of that report I informed Mr. Souza on or about February/March 2007, that travel trailers in combination with ventilation remained a viable temporary emergency housing option. My duties relating to this testing ended on or about mid-March 2007.

3.      From July 2006, through October/November 2006, EPA, ATSDR and FEMA held bi-weekly telephone conference calls to address issues relating to EPA's testing. FEMA had requested that EPA test both occupied and unoccupied units for formaldehyde. In July 2006, the determination was made to limit the initial testing to new unused travel trailers. EPA and ATSDR advised, and a consensus was reached, that initial testing would focus on new unused travel trailers because this would provide baseline formaldehyde levels in units and allow them to determine whether formaldehyde was a problem in the units and whether venting was an effective response. Test results of occupied units would not provide that information because formaldehyde levels can be significantly affected by the occupants use of the unit, and without a baseline number, those test results would not allow the government to determine whether EHUs remained a viable housing option.

4.      In July and August, EPA prepared and circulated for comment a testing protocol. ATSDR and FEMA participants were provided an opportunity to review that protocol and provide comments and suggestions regarding EPA's proposal. EPA finalized the protocol in August 2006.

5.      FEMA was responsible for setting up the test area and providing new EHUs for testing. A portion of the FEMA Baton Rouge staging facility was set aside as a test area, and ninety-six new travel trailers built by eight different trailer manufacturers

(12 from each manufacturer) were obtained from FEMA staging and storage facilities. Commencement of testing was delayed because of problems associated with extending electricity to the testing area. As previously noted, EPA commenced the testing of the units in mid-September and testing was completed by mid-October.

6.     EPA completed its processing of the test data in November and that data was provided to FEMA's Counsel Rick Preston who sent it on to the ATSDR for analysis.

7.     In February 2007 I received a copy of the ATSDR's Health Consultation Report from FEMA's Counsel Rick Preston.  I reviewed that report and based on ATSDR's analysis, I concluded that the travel trailers if vented remained a viable housing option and I shared my opinion and the ATSDR report with Mr. Souza.

8.     In April 2007 and May 2007 I worked with FEMA's Public Affairs Office and Safety Office to prepare a Press Release regarding formaldehyde concerns in EHUs and why FEMA believed that EHUs remained a viable temporary emergency housing option.  One of the issues that we addressed internally was whether to disclose that the ATSDR's had concluded that 0.3 ppm constituted an appropriate formaldehyde level of concern and that ventilation reduced formaldehyde in the trailers to below that level of concern.  After much debate, including concerns that FEMA may not want to disclose that information because 0.3 ppm was higher than levels recommended by some other government agencies for guidelines other than housing, a consensus was reached that this information should be disclosed and it was included in FEMA's May 2007 press release.

9.     FEMA's Counsel Rick Preston always participated in the bi-weekly conference calls.  Mr. Preston was not an active participant in those calls, and did not issue instructions limiting or imposing any restrictions on EPA's testing of units or ATSDR's interpretation of the test results.

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 8th day of May, 2007.

**MARTIN McNEESE**
Individual Assistance Branch Chief
FEMA Region VIII
Denver, Colorado

Παγε 4 οφ  4