UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER         MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION        SECTION "N-5"
       JUDGE ENGELHARDT
       MAG. JUDGE CHASEZ

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DEFENDANT UNITED STATES OF AMERICA'S MOTION
TO DISMISS PLAINTIFFS' REMAINING FTCA CLAIMS
FOR LACK OF SUBJECT MATTER JURISDICTION

U.S. EXHIBIT NO. 44

## Allen, Jotham

**From:** Rave, Joan
**Sent:** Thursday, June 15, 2006 3:07 PM
**To:** Souza, Kevin; Rucker, Lesli; Igert, Jill
**Cc:** Miller, Stephen; Misczak, Mark; Haynes, Tracy; Dibenedetto, Margarita; Warner, Jeannie; Springgate, Ann; Gilliam, Robert; Bonomo, Guy
**Subject:** FW: Formaldehyde

Kevin, please see e:mail chain below re: testing of the units.
Sounds like MS may have done some testing – Steve Miller may have more info.

As you pointed out, this is a national issue, not just a Louisiana issue. This operation will happily initiate and fund a formal testing (we have an open MA with OSHA and they are still here at the TRO), but wouldn't it make more sense if the HQ LOG Housing guys took immediate ownership of the problem, contracted an official safety assessment, then issued guidance? They may already have addressed this, but we are not aware of the results. If I read your message correctly, I think we all agree tht HQ needs to advise all current field OPS on official messaging and process for applicants, rather than risk a variety of interpretations.

Thanks
rave

---

**From:** Bonomo, Guy
**Sent:** Thursday, June 01, 2006 9:51 AM
**To:** Rave, Joan
**Subject:** FW: Formaldehyde



Guy Bonomo
DHOPS Chief
AFO-NOLA
(832) 588-0089 (cell)
(504) 762-2069 (desk)

---

**From:** Sessa, Kenneth
**Sent:** Thursday, June 01, 2006 9:39 AM
**To:** Cox, Geraldine ; Wittum, David
**Cc:** Howell, Cindy; Melton, Sidney; Hart, David; Suchodolski, Stacy; Paul, Brent; Weinhouse, Amy; Miller, Stephen; Bonomo, Guy; Dipofi, David; Fairley, Donald
**Subject:** RE: Formaldehyde

Lets look at some issues here:

> 1) The Occupational Safety and Health Act (OSHA) or the Occupational Safety and Health Administration (OSHA, arm of the U.S. Department of Labor) regulates exposure to formaldehyde through regulations at 29 CFR Part 1910.1048. These regulations have established a Permissible Exposure Limit (PEL) for formaldehyde exposure over an 8-hour time weighted average interval of 0.75 parts per million (ppm) of air. The have also established a short-term exposure limit (STEL) based on a single 15-minute interval of 2 ppm of air. The employer cannot expose workers to levels exceeding these levels or timeframes because to do so would subject the employee to adverse health conditions. OSHA has also established

an Action Level meaning the employer has to take action to monitor and reduce employee exposure to formaldehyde if the level exceeds 0.5 ppm PEL.

2) OSHA does not apply to residential structures. OSHA Mission is to "Assure the Safety and Health of America's Workers by setting and enforcing standards; providing training, outreach, and education; establishing partnerships; and encouraging continual improvement in workplace safety and health. So, exactly how might the OSHA regulations apply to residential housing – short answer is that **they don't**. The formaldehyde PEL and STEL clearly do not apply.

3) The temporary trailers provided for schools present a different challenge. Schools have employees, employees are protected by OSHA standards, OSHA applies. The formaldehyde PEL and STEL clearly do apply.

4) Sierra Club alleges that they have performed sampling of trailers at levels which exceed the Formaldehyde standard by over double – so what? Should we take Sierra Club data and consider it substantiated fact – no. We do not know Sierra Club quality control or sampling and analysis plans, we do not know conditions which the samples were taken, we do not know chain of custody procedures, we do not know the training of the personnel performing the samples, we do not know the testing lab or procedures, we do not know if there was a referee lab to verify results, in short there is not enough information in these allegations to accept this as fact. However, there is enough information in these allegations to make a very nice front page story on the Times-Picayune about how FEMA is knowingly exposing poor citizens of New Orleans just trying to get back to rebuild their city to unhealthy levels of formaldehyde (a potential carcinogen), levels which will over time present health conditions including cancer. Given these allegations, it would be prudent for FEMA to have data to be able to accurately answer some hard questions.

5) FEMA should take a two-pronged approach to handling the formaldehyde issue. In new temporary trailers under the Public Assistance (PA) program (school or other temporary facility use involving employees) would formaldehyde be expected to be present – the answer is clearly yes. For schools and temporary facilities, FEMA PA should work with the receiving agencies to establish a formaldehyde monitoring program to ensure the employees of these agencies are not exposed to levels of formaldehyde exceeding the PEL. Please note that OSHA applies to employees and employers, FEMA is not the employer and FEMA employees are not expected to be working in these facilities. However as FEMA is providing the facilities to the employer, and the facilities themselves are expected to have formaldehyde, the employers need to establish a formaldehyde monitoring program because of a FEMA-provided structure, this should be part of the eligible expense under PA.

6) The second prong should apply to the temporary residential housing provided under the Individual Assistance (IA) Program. Please note again that OSHA does not apply to residential structures, however there are no other places I could find that set "safe" levels for formaldehyde exposure. Lets again note that OSHA limits for formaldehyde are based on an 8-hour, 5 day/week exposure timeframe, if they would be based on a longer timeframe it is quite likely that the exposure limits for formaldehyde would be lower to account for longer timeframes than a normal work shift and a normal work week. Most people spend more time in their residential structures than 8 hours/day or 40 hours/week, so arguably the OSHA limit for formaldehyde exposure is too high to prevent adverse health conditions in these conditions. However absent a long-term health study the 0.75 ppm is the best available data we have to work with. However the conservative would say that FEMA trailers should be blow 0.5 ppm as the target action level OSHA has established.

7) OSHA requires a representative sampling strategy (29 CFR Part 1910.1048(d)(2)(i)) for each worksift to correctly characterize and not underestimate the exposure of any employee. For travel trailers used as residential structures, I recommend starting with a worst-case scenario. The worst-case scenario is ventilation off, no HVAC, windows closed. If in these worst-case conditions formaldehyde levels do not exceed 0.75 ppm, it is reasonable to assume that any conditions with windows open, HVAC on, or other ventilation fans running that formaldehyde exposure would be less. Sidney Melton identifies below that testing using a worst-case scenario was conducted, however Sidney does not provide any analytical data and simply dismisses the testing as inaccurate. From a third party perspective, a third party might ask why were these results summarily dismissed as inaccurate? The results are not inaccurate (I imagine the sampling and testing laboratory would show sufficient quality control to demonstrate accuracy). Instead the third party would conclude that FEMA summarily dismissed the results and is attempting to discredit the results because the results exceed the OSHA established levels and FEMA is potentially exposing

residents of these structures to unhealthy levels of formaldehyde (and unless you provide data otherwise, this is the conclusion a third party will draw). Where might we have a third party such as this, perhaps a court room? If you cannot defend your actions from a third party reasonable perspective, you are setting yourself up for problems.

8) If the workplace airborne exposure to formaldehyde exceeds the 0.75 ppm PEL, the first step is engineering controls to reduce this level. Engineering controls may include ventilation or HVAC, this is quite acceptable. If the worst-case scenario identified in 7) above exceeds PEL (and as a third party given FEMA's summarily discrediting the results I have already concluded that it does), then FEMA needs to establish a minimum of engineering controls to maintain a safe exposure level. If engineering controls are for the stove vent to remain continuously operational (I don't know who Cavalier is that Sidney Melton refers to below), wouldn't it be prudent for the stove vent to be hardwired to remain in the "on" position and not controllable by the resident? Or at a minimum if the HVAC is turned off the ventilation fan would come on? Shouldn't these minimum of engineering controls, if they require action by the resident be provided to the resident? Its all nice to say, leave the A/C on and formaldehyde levels will not present health hazards, but unless this information is actually provided to the person living in the structure how can we ensure they understand the risks and importance of keeping the A/C on? Short answer -- we can't!

---

**From:** Cox, Geraldine
**Sent:** Thursday, June 01, 2006 7:53 AM
**To:** Sessa, Kenneth
**Subject:** FW: Formaldehyde

This really doesn't answer the question. Will residents turn the air conditioning off when they are not at home, and will they fail to air the trailer out before they turn on the air conditioner when they return after a hot day? Should we give guidance to the residents? Should we try a test with the air conditioner running? This did not answer the real question of what the values were, and I wonder if we should push the issue further. Your guidance would be appreciated.

Gerry

---

**From:** Howell, Cindy
**Sent:** Thursday, June 01, 2006 7:46 AM
**To:** 'Melton, Sidney'
**Cc:** Cox, Geraldine ; Miller, Stephen; Howell, Cindy; Igert, Jill
**Subject:** RE: Formaldehyde

Thanks for the info.

*Cindy*
504.762.2082

---

**From:** Melton, Sidney [mailto:Sidney.Melton@dhs.gov]
**Sent:** Thursday, June 01, 2006 7:26 AM
**To:** Miller, Stephen; Howell, Cindy; Igert, Jill
**Cc:** Gil, Juan
**Subject:** RE: Formaldehyde

CH2 had a test done by bonner analytical testing company, but I don't believe the standards used really gave an accurate results. Basically they turned off all air and put the test tubes throughout the TT. Of course as the TT heated up thru the day the reading became higher.

So until a standard is set on exactly how to test, then its guess work but I'm sure testing with no AC or windows open is not the standard.

Cavalier did let us know that if an individual is leaving and cutting their AC off, for them to leave the stove fan on with some windows and vents open to keep circulation going.

We are still in pursuit of a contract to do testing.

---

**From:** Miller, Stephen
**Sent:** Thursday, June 01, 2006 6:56 AM
**To:** 'Howell, Cindy'; Hart, David; Bonomo, Guy; Blake, Martin; Dipofi, David; Boyle, Brian ; Igert, Jill; Ringo, William; Carrigan, William
**Cc:** Gil, Juan; Misczak, Mark; Melton, Sidney
**Subject:** RE: Formaldehyde

Not that I am aware of. Perhaps Sid Melton can shed some light on this, they have been involved from the beginning.

---

**From:** Howell, Cindy [mailto:Cindy.Howell@dhs.gov]
**Sent:** Wednesday, May 31, 2006 5:53 PM
**To:** Hart, David; Bonomo, Guy; Blake, Martin; Dipofi, David; Boyle, Brian ; Igert, Jill; Miller, Stephen; Ringo, William; Carrigan, William
**Cc:** Gil, Juan; Misczak, Mark
**Subject:** FW: Formaldehyde

Has FEMA or an authorized representative conducted any tests to measure the formaldehyde levels in the travel trailers or mobile homes we are using?

*Cindy*
504.762.2082

---

**From:** Hart, David
**Sent:** Tuesday, May 30, 2006 10:02 AM
**To:** Suchodolski, Stacy; Bonomo, Guy; Howell, Cindy
**Subject:** RE: Formaldehyde

HQ made the determination, airing these units out would be the only steps we take. However, if an applicant comes to us with air quality testing in hand, perhaps we should take those to OGC for a determination before we act or do not act.

---

**From:** Suchodolski, Stacy
**Sent:** Tuesday, May 30, 2006 8:49 AM
**To:** Bonomo, Guy; Howell, Cindy; Hart, David
**Subject:** FW: Formaldehyde

Hi

Would anyone have this information?

Thanks,
Stac

---

**From:** Cox, Geraldine
**Sent:** Monday, May 29, 2006 3:11 PM
**To:** Suchodolski, Stacy

**Cc:** Dipofi, David; Howell, Cindy
**Subject:** RE: Formaldehyde

Dear Stacy:

From my discussions with the Sierra Club, they measured formaldehyde at twice the PEL for 8 hour exposure. The formaldehyde problem has also been mentioned in the school trailers by others as causing tearing eyes and other allergic problems. Do you have actual measurements from the trailers that show the trailers, especially the ones installed by Bechtel (the ones the Sierra Club reported as being the highest levels), are at a safe level? Do we have measurements in the classroom trailers? What are the values?


Geraldine (Gerry) V. Cox, Ph.D.
Environmental Specialist
FEMA
U.S. Department of Homeland Security
New Orleans Area Field Office
One Seine Court
New Orleans, LA 70114
New Cell Phone: 337-281-4251 (can take messages)
Blackberry: 504-220-1502
Office: 504-762-2358
Fax: 504-762-2876
email: geraldine.cox@dhs.gov

---

**From:** Suchodolski, Stacy
**Sent:** Saturday, May 27, 2006 9:28 AM
**To:** Cox, Geraldine
**Cc:** Dipofi, David; Howell, Cindy
**Subject:** Formaldehyde

Geraldine,

Hi

I received guidance from our IA Policy group at HQ. According to HQ there are no health concerns associated with the formaldehyde inside our FEMA MH/TT. We were given instructions to turn on the heater for an hour, then turn off the air and open all the windows and turn on the air for 48 hours. This will eliminate the smell. If you have any questions/concerns, please feel free to contact me.

Thank you,
Stacy

**Allen, Jotham**

**From:** Miller, MichaelL
**Sent:** Friday, June 02, 2006 1:43 PM
**To:** Melton, Sidney; Hart, David; Miller, Stephen
**Subject:** RE: Formaldehyde

David is exactly right. This is getting blown **WAY** out of proportion, and the further it goes the worse is gets. Who are all these folks on the email epistle below, and what are they doing? Bottom line is **VENTILATION.** That is the **ONLY** fix. We can't be sure that an applicant will ventilate the unit, keep the air conditioner on, keep vent fans on, etc., etc., etc..... we can't be sure that applicants don't drink gas, sniff glue, shoot dope, nor can we keep them from consuming too much alcohol, chain smoking, or overeating. All of that will definitely kill them. The only things we can do is, take the unit away from them, that'll protect them, ask them to ventilate the unit, that's a novel idea, build them a new formaldehyde free home, that's not going to happen because most new homes have a higher content of formaldehyde than the "FEMA" trailers do . So what do we really do? Just what we've done, informed the occupants to **ventilate** the unit, and keep it **ventilated**. A brochure is provided in every travel trailer that is issued, and it's glued on the wall, in the owner's manual which is provided in each unit there is a section on FORMALDEHYDE and VENTILATION of the unit. Over time the formaldehyde "cooks off", or dissipates, and by that time the occupant is out of it, and it's safe anyway for next year. These units are for **TEMPORARY** housing not for long term occupancy. All manufactured homes, trailers, "stick built" houses, offices, vehicles, etc., etc, have high levels of formaldehyde in them. The materials used in these "FEMA" travel trailers, mobile homes, office trailers, schools trailers, and other temp buildings are built by the same folks, with the same materials that are used for all the other like facilities and trailers that are built every day. Why is it that everybody whines about everything nowadays??

Mike Miller
Logistics Management
FEMA
404-909-1782

**From:** Melton, Sidney
**Sent:** Thursday, June 01, 2006 11:19 AM
**To:** Miller, MichaelL
**Subject:** FW: Formaldehyde


**From:** Hart, David
**Sent:** Thursday, June 01, 2006 10:22 AM
**To:** Howell, Cindy; Melton, Sidney; Miller, Stephen; Bonomo, Guy; Dipofi, David
**Subject:** RE: Formaldehyde

As you know, numbers 3 and 5 are generally mobile homes and not travel trailers and we have no reported problems with these as far as I know. Before this gets any further out of hand, perhaps someone should ask HQ about their research into this as they have instructed to only air them out. Why are we kicking this all over the place?


**From:** Sessa, Kenneth

8/14/2007

**Sent:** Thursday, June 01, 2006 9:39 AM
**To:** Cox, Geraldine ; Wittum, David
**Cc:** Howell, Cindy; Melton, Sidney; Hart, David; Suchodolski, Stacy; Paul, Brent; Weinhouse, Amy; Miller, Stephen; Bonomo, Guy; Dipofi, David; Fairley, Donald
**Subject:** RE: Formaldehyde

Lets look at some issues here:

1) The Occupational Safety and Health Act (OSHA) or the Occupational Safety and Health Administration (OSHA, arm of the U.S. Department of Labor) regulates exposure to formaldehyde through regulations at 29 CFR Part 1910.1048. These regulations have established a Permissible Exposure Limit (PEL) for formaldehyde exposure over an 8-hour time weighted average interval of 0.75 parts per million (ppm) of air. The have also established a short-term exposure limit (STEL) based on a single 15-minute interval of 2 ppm of air. The employer cannot expose workers to levels exceeding these levels or timeframes because to do so would subject the employee to adverse health conditions. OSHA has also established an Action Level meaning the employer has to take action to monitor and reduce employee exposure to formaldehyde if the level exceeds 0.5 ppm PEL.

2) OSHA does not apply to residential structures. OSHA Mission is to "Assure the Safety and Health of America's Workers by setting and enforcing standards; providing training, outreach, and education; establishing partnerships; and encouraging continual improvement in workplace safety and health. So, exactly how might the OSHA regulations apply to residential housing – short answer is that **they don't**. The formaldehyde PEL and STEL clearly do not apply.

3) The temporary trailers provided for schools present a different challenge. Schools have employees, employees are protected by OSHA standards, OSHA applies. The formaldehyde PEL and STEL clearly do apply.

4) Sierra Club alleges that they have performed sampling of trailers at levels which exceed the Formaldehyde standard by over double – so what? Should we take Sierra Club data and consider it substantiated fact – no. We do not know Sierra Club quality control or sampling and analysis plans, we do not know conditions which the samples were taken, we do not know chain of custody procedures, we do not know the training of the personnel performing the samples, we do not know the testing lab or procedures, we do not know if there was a referee lab to verify results, in short there is not enough information in these allegations to accept this as fact. However, there is enough information in these allegations to make a very nice front page story on the Times-Picayune about how FEMA is knowingly exposing poor citizens of New Orleans just trying to get back to rebuild their city to unhealthy levels of formaldehyde (a potential carcinogen), levels which will over time present health conditions including cancer. Given these allegations, it would be prudent for FEMA to have data to be able to accurately answer some hard questions.

5) FEMA should take a two-pronged approach to handling the formaldehyde issue. In new temporary trailers under the Public Assistance (PA) program (school or other temporary facility use involving employees) would formaldehyde be expected to be present – the answer is clearly yes. For schools and temporary facilities, FEMA PA should work with the receiving agencies to establish a formaldehyde monitoring program to ensure the employees of these agencies are not exposed to levels of formaldehyde exceeding the PEL. Please note that OSHA applies to employees and employers, FEMA is not the employer and FEMA employees are not expected to be working in these facilities. However as FEMA is providing the facilities to the employer, and the facilities themselves are expected to have formaldehyde, the employers need to establish a formaldehyde monitoring program because of a FEMA-provided structure, this should be part of the eligible expense under PA.

6) The second prong should apply to the temporary residential housing provided under the Individual Assistance (IA) Program. Please note again that OSHA does not apply to residential structures, however there are no other places I could find that set "safe" levels for formaldehyde exposure. Lets again note that OSHA limits for formaldehyde are based on an 8-hour, 5 day/week exposure timeframe, if they would be based on a longer timeframe it is quite likely that the exposure limits for formaldehyde would be lower to account for longer timeframes than a normal work shift and a normal work week. Most people spend more time in their residential structures than 8 hours/day or 40 hours/week, so arguably the OSHA limit for formaldehyde exposure is too high to prevent adverse health conditions in these conditions. However

8/14/2007

absent a long-term health study the 0.75 ppm is the best available data we have to work with. However the conservative would say that FEMA trailers should be blow 0.5 ppm as the target action level OSHA has established.

7) OSHA requires a representative sampling strategy (29 CFR Part 1910.1048(d)(2)(i)) for each workshift to correctly characterize and not underestimate the exposure of any employee. For travel trailers used as residential structures, I recommend starting with a worst-case scenario. The worst-case scenario is ventilation off, no HVAC, windows closed. If in these worst-case conditions formaldehyde levels do not exceed 0.75 ppm, it is reasonable to assume that any conditions with windows open, HVAC on, or other ventilation fans running that formaldehyde exposure would be less. Sidney Melton identifies below that testing using a worst-case scenario was conducted, however Sidney does not provide any analytical data and simply dismisses the testing as inaccurate. From a third party perspective, a third party might ask why were these results summarily dismissed as inaccurate? The results are not inaccurate (I imagine the sampling and testing laboratory would show sufficient quality control to demonstrate accuracy). Instead the third party would conclude that FEMA summarily dismissed the results and is attempting to discredit the results because the results exceed the OSHA established levels and FEMA is potentially exposing residents of these structures to unhealthy levels of formaldehyde (and unless you provide data otherwise, this is the conclusion a third party will draw). Where might we have a third party such as this, perhaps a court room? If you cannot defend your actions from a third party reasonable perspective, you are setting yourself up for problems.

8) If the workplace airborne exposure to formaldehyde exceeds the 0.75 ppm PEL, the first step is engineering controls to reduce this level. Engineering controls may include ventilation or HVAC, this is quite acceptable. If the worst-case scenario identified in 7) above exceeds PEL (and as a third party given FEMA's summarily discrediting the results I have already concluded that it does), then FEMA needs to establish a minimum of engineering controls to maintain a safe exposure level. If engineering controls are for the stove vent to remain continuously operational (I don't know who Cavalier is that Sidney Melton refers to below), wouldn't it be prudent for the stove vent to be hardwired to remain in the "on" position and not controllable by the resident? Or at a minimum if the HVAC is turned off the ventilation fan would come on? Shouldn't these minimum of engineering controls, if they require action by the resident be provided to the resident? Its all nice to say, leave the A/C on and formaldehyde levels will not present health hazards, but unless this information is actually provided to the person living in the structure how can we ensure they understand the risks and importance of keeping the A/C on? Short answer – we can't!

---

**From:** Cox, Geraldine
**Sent:** Thursday, June 01, 2006 7:53 AM
**To:** Sessa, Kenneth
**Subject:** FW: Formaldehyde

This really doesn't answer the question. Will residents turn the air conditioning off when they are not at home, and will they fail to air the trailer out before they turn on the air conditioner when they return after a hot day? Should we give guidance to the residents? Should we try a test with the air conditioner running? This did not answer the real question of what the values were, and I wonder if we should push the issue further. Your guidance would be appreciated.

Gerry

---

**From:** Howell, Cindy
**Sent:** Thursday, June 01, 2006 7:46 AM
**To:** 'Melton, Sidney'
**Cc:** Cox, Geraldine ; Miller, Stephen; Howell, Cindy; Igert, Jill
**Subject:** RE: Formaldehyde

Thanks for the info.

8/14/2007

*Cindy*
504.762.2082

**From:** Melton, Sidney [mailto:Sidney.Melton@dhs.gov]
**Sent:** Thursday, June 01, 2006 7:26 AM
**To:** Miller, Stephen; Howell, Cindy; Igert, Jill
**Cc:** Gil, Juan
**Subject:** RE: Formaldehyde

CH2 had a test done by bonner analytical testing company, but I don't believe the standards used really gave an accurate results. Basically they turned off all air and put the test tubes throughout the TT. Of course as the TT heated up thru the day the reading became higher.

So until a standard is set on exactly how to test, then its guess work but I'm sure testing with no AC or windows open is not the standard.

Cavalier did let us know that if an individual is leaving and cutting their AC off, for them to leave the stove fan on with some windows and vents open to keep circulation going.

We are still in pursuit of a contract to do testing.

---

**From:** Miller, Stephen
**Sent:** Thursday, June 01, 2006 6:56 AM
**To:** 'Howell, Cindy'; Hart, David; Bonomo, Guy; Blake, Martin; Dipofi, David; Boyle, Brian ; Igert, Jill; Ringo, William; Carrigan, William
**Cc:** Gil, Juan; Misczak, Mark; Melton, Sidney
**Subject:** RE: Formaldehyde

Not that I am aware of. Perhaps Sid Melton can shed some light on this, they have been involved from the beginning.

---

**From:** Howell, Cindy [mailto:Cindy.Howell@dhs.gov]
**Sent:** Wednesday, May 31, 2006 5:53 PM
**To:** Hart, David; Bonomo, Guy; Blake, Martin; Dipofi, David; Boyle, Brian ; Igert, Jill; Miller, Stephen; Ringo, William; Carrigan, William
**Cc:** Gil, Juan; Misczak, Mark
**Subject:** FW: Formaldehyde

Has FEMA or an authorized representative conducted any tests to measure the formaldehyde levels in the travel trailers or mobile homes we are using?

*Cindy*
504.762.2082

---

**From:** Hart, David
**Sent:** Tuesday, May 30, 2006 10:02 AM
**To:** Suchodolski, Stacy; Bonomo, Guy; Howell, Cindy
**Subject:** RE: Formaldehyde

HQ made the determination, airing these units out would be the only steps we take. However, if an applicant comes to us with air quality testing in hand, perhaps we should take those to OGC for a determination before we act or do not act.

---

8/14/2007

FEMA-Waxman -8/27/07 Production - 337
FEMA17-022665
FCP038-000337

**From:** Suchodolski, Stacy
**Sent:** Tuesday, May 30, 2006 8:49 AM
**To:** Bonomo, Guy; Howell, Cindy; Hart, David
**Subject:** FW: Formaldehyde

Hi

Would anyone have this information?

Thanks,
Stacy

---

**From:** Cox, Geraldine
**Sent:** Monday, May 29, 2006 3:11 PM
**To:** Suchodolski, Stacy
**Cc:** Dipofi, David; Howell, Cindy
**Subject:** RE: Formaldehyde

Dear Stacy:

From my discussions with the Sierra Club, they measured formaldehyde at twice the PEL for 8 hour exposure. The formaldehyde problem has also been mentioned in the school trailers by others as causing tearing eyes and other allergic problems. Do you have actual measurements from the trailers that show the trailers, especially the ones installed by Bechtel (the ones the Sierra Club reported as being the highest levels), are at a safe level? Do we have measurements in the classroom trailers? What are the values?


Geraldine (Gerry) V. Cox, Ph.D.
Environmental Specialist
FEMA
U.S. Department of Homeland Security
New Orleans Area Field Office
One Seine Court
New Orleans, LA 70114
New Cell Phone: 337-281-4251 (can take messages)
Blackberry: 504-220-1502
Office: 504-762-2358
Fax: 504-762-2876
email: geraldine.cox@dhs.gov

---

**From:** Suchodolski, Stacy
**Sent:** Saturday, May 27, 2006 9:28 AM
**To:** Cox, Geraldine
**Cc:** Dipofi, David; Howell, Cindy
**Subject:** Formaldehyde

Geraldine,

Hi

8/14/2007

I received guidance from our IA Policy group at HQ. According to HQ there are no health concerns associated with the formaldehyde inside our FEMA MH/TT. We were given instructions to turn on the heater for an hour, then turn off the air and open all the windows and turn on the air for 48 hours. This will eliminate the smell. If you have any questions/concerns, please feel free to contact me.

Thank you,
Stacy