UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                                    MDL NO. 07-1873
        FORMALDEHYDE PRODUCTS
        LIABILITY LITIGATION
                                                       SECTION "N" (5)

THIS DOCUMENT RELATES TO
Member Case no. 09-2892

## ORDER AND REASONS

Before the Court is the Motion for Protective Order Regarding Re-Testing of Plaintiffs'

Emergency Housing Unit (Rec. Doc. 1373), filed by Defendant Gulf Stream Coach, Inc. ("Gulf

Stream"). In this motion, Gulf Stream requests that this Court issue an Order preventing Plaintiffs

and/or their representatives from performing new air quality tests on the FEMA-issued emergency

housing unit ("EHU") occupied by the bellwether plaintiffs, Alana Alexander and Christopher

Cooper.[1] Plaintiffs oppose this motion, asserting that a protective order is not appropriate now as

the testing has already concluded and was neither duplicative nor economically burdensome to Gulf

Stream as any additional costs were incurred voluntarily.

_____

[1]      It should be noted that this motion was filed before these tests took place. In this Court's April 28,
2009 Order (Rec. Doc. 1378), the Court expressly allowed the re-testing of this EHU to occur, given the immediacy
of the pending expert report deadline, but noted that Defendants' planned to file a motion for protective order or
other appropriate motion relating to the same. Because this re-testing has already occurred, this Court now views this
motion as a motion in limine as opposed to a motion for protective order.

        The Government joins in and adopts Gulf Stream's motion. (Rec. Doc. 1384).

After reviewing the memoranda of the parties and the applicable law, the Court grants this motion to the extent that Plaintiffs will not be allowed to use the results of this test . First, Plaintiffs have already conducted testing of the EHU at issue in this motion, and furthermore, Plaintiffs' own expert has validated the results of that test.[2] (Exhibit D to Rec. Doc. 1373). Reviewing the memoranda, it is unclear as to whether these tests were conducted while the bellwether plaintiffs actually resided in the EHU. However, Plaintiffs have failed to demonstrate how this third, much later test better depicts the air quality of the EHU as experienced by the bellwether plaintiffs while they resided therein.

Second, the testing protocol included, in addition to air sampling, an environmental walkthrough study, measurements of the trailer, a material audit, and ventilation testing. (Exhibit B to Rec. Doc. 1463). Plaintiffs offer no reason as to why these tests could not have been done before now, and especially before the testing deadlines[3] had run.

Last, this Court has been more than indulgent throughout this entire process in extending testing deadlines. In the numerous conferences held wherein the testing of EHUs was discussed in detail, the Court does not recall any instance wherein Plaintiffs suggested that additional, more

---

[2]        As evidenced by the Plaintiff Fact Sheets completed for both bellwether plaintiffs, machine tests were administered on the EHU to test the air quality inside the trailer. (Exhibit B to Rec. Doc. 1373). The tests were performed on January 28, 2008. (Exhibit C to Rec. Doc. 1373). Additionally, Plaintiffs conducted a "walk-through" inspection of the EHU on April 17, 2009. At issue in this motion is the newest testing, which occurred on May 6-7, 2009, marking the third time Plaintiffs have focused their experts on this particular EHU.

[3]        In Pretrial Order No. 3, this Court initially set EHU testing deadlines. (Rec. Doc. 123). Pretrial Order No. 4 extended some of those same deadlines. (Rec. Doc. 130). In its June 10, 2008 Order and Reasons, the Court denied several motions to stay and/or extend discovery, testing, and procedural deadlines , but noted that it would entertain motions filed by newly-added defendants to extend *specific deadlines* for a *specific number of days* for good cause shown. ((Rec. Doc. 328). In a June 26, 2008 Order, the Court continued the deadline for testing of new and unused units in Hope, Arkansas. (Rec. Doc. 399). In Pretrial Order No. 21, the Court issued an order relative to the possible transfer of EHUs. (Rec. Doc. 862). In a December 22, 2008 telephone conference, the Court and the parties discussed the destructive testing of EHUs. (Rec. Doc. 1011). In Pretrial Order No. 26, the Court issued an order relative to the destructive testing of EHUs. (Rec. Doc. 1022).

specific testing would need to be conducted after bellwether plaintiffs were selected, or even just to get a more complete and comprehensive expert opinion on any EHU.[4] Plaintiffs never attempted to reserve any right to re-test EHUs to obtain more thorough, informative and detailed test results once bellwether plaintiffs were selected, or for any other reason.

As noted previously be the Court in its May 15, 2009 Order and Reasons relating to Fleetwood's Motion for Protective Order (Rec. Doc. 1493), not once during this ongoing discussion over several months did Plaintiffs state that their expert reports could not be completed without this third test, or that their experts' protocol required an additional round of different testing. The Court sees no reason, and Plaintiffs offer none, to simply re-open testing; to do so would only invite yet another round in the future, if Plaintiffs so desire. Gauging the levels of formaldehyde in this unit is not a "moving target". To get even more results from testing long after these bellwether plaintiffs vacated the EHU only serves to create confusion as to the relevant time period, as well as the ultimate issue to be decided.

Lastly, Plaintiffs claim that obtaining more testing and allowing those test results would demonstrate with more scientific accuracy the estimate of the levels of formaldehyde in the Gulf Stream EHU throughout Plaintiffs' residency therein, despite the passage of time since such residency. However, Plaintiffs could and should have tested this EHU and other EHUs before testing deadlines had run, if multiple test results were considered necessary. The time for conducting such testing has long passed; thus, the results from this duplicative, untimely testing will not be allowed.

---

[4]     In Plaintiffs' Opposition, they assert that the May 2009 testing was more thorough than previous testing, and as such is more informative to counsel and will ultimately be more informative to the fact finder at trial. In addition to air sampling, which had previously occurred, the May 2009 testing was purportedly more detailed and comprehensive. (Rec. Doc. 1463, p. 2).

Considering the foregoing, **IT IS ORDERED** that **the Motion for Protective Order Regarding Re-Testing of Plaintiffs' Emergency Housing Unit (Rec. Doc. 1373)** is **GRANTED** to the extent that Plaintiffs will not be allowed to use the results of the test at issue in this motion.

**IT IS FURTHER ORDERED** that the **Motion for Expedited Hearing (Rec. Doc. 1374)** is **DENIED as moot**.

New Orleans, Louisiana, this 18th day of May, 2009.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**