UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER              *          MDL NO. 1873
      FORMALDEHYDE          *
      PRODUCTS LIABILITY      *
      LITIGATION              *
                             *

This Document Relates to: *Charlie Age,*    *          JUDGE: ENGELHARDT
*et al. v. Gulf Stream Coach Inc., et al*,   *
Docket No. 09-2892              *          MAG: CHASEZ
**************************************************************************

## MEMORANDUM IN SUPPORT OF
## MOTION TO STRIKE CERTAIN EXPERT WITNESSES

**MAY IT PLEASE THE COURT:**

Gulf Stream Coach, Inc. ("Gulf Stream") and Fluor Enterprises, Inc. ("Fluor") submit the

following Memorandum in Support of its Motion to Strike certain expert witnesses in this case.

### I.      NATURE OF THE CASE

Various Plaintiffs initiated the "FEMA Trailer Litigation" on or about May 1, 2006.[1]

Subsequently, Plaintiffs in one pending action moved, pursuant to 28 U.S.C. Section 1407, to

centralize the litigation for consolidated pretrial proceedings in the Eastern District of Louisiana.

The United States Judicial Panel on Multidistrict Litigation granted the Plaintiffs' motion and

issued a Transfer Order in three pending matters in the Eastern District of Louisiana, and a fourth

action pending in the Western District of Louisiana. To date, at least 124 separate actions have

either been directly filed or transferred into this MDL.

In these toxic tort suits, plaintiffs, estimated to be in the tens of thousands, claim to have

inhabited emergency housing units ("EHUs") that were provided to them by the Federal

Emergency Management Agency ("FEMA") as a result of the alleged uninhabitability of their

---

[1] See *Hilliard, et al. vs. United States of America, et al.*, 2:06-CV-02576, previously pending in the United States District Court for the Eastern District of Louisiana, and transferred to MDL 1873.

residences due to Hurricanes Katrina and Rita. (Doc. No. 109, at ¶ 96).   Plaintiffs claimed injuries resulting from their alleged exposure to the release of formaldehyde and/or formaldehyde vapors in those EHUs. (Doc. No. 109, at ¶ 30).   Following denial of class certification, several plaintiffs filed suit against Gulf Stream Coach, Inc., alleging that it manufactured the EHUs used by the specific plaintiffs.  (*Age, et al v. Gulf Stream Coach, Inc., et al*, 09-2892, Doc. No. 1). Moreover, plaintiffs have named as defendants the United States Government through FEMA and Fluor Enterprises, Inc. (*Age,* Doc. No. 1), and plaintiffs seek recovery for alleged physical and mental pain and suffering, physical impairments and disability, medical expenses, loss of earnings capacity, loss of enjoyment and quality of life, loss of consortium, travel expenses, out-of-pocket expenses, and the loss of use and/or opportunity to use safe and adequate shelter allegedly resulting from the purported exposure to formaldehyde. (*Age*, Doc. No. 1, ¶ 117).

During the course of this litigation, the parties completed the class certification phase, conducted substantial discovery, and now have moved into the trial phase. With trial of this matter on the horizon, this Honorable Court set forth a Trial I Scheduling Order, dated April 8, 2009, in which the Court established several deadlines for motions, pre-trial orders, and other issues. (Doc. No. 1305.) Specifically, the Court set May 19, 2009, as the date by which the plaintiffs were required to submit the written reports of their experts to the defendants. *Id*. In compliance with that order, the plaintiffs submitted their designation of several expert witnesses that would address various issues involved with this case.  *See* Plaintiffs' Designation of Expert Witnesses, attached hereto as Exhibit "A".   After reviewing the plaintiffs' designation, Gulf Stream respectfully suggests that some of the plaintiffs' experts:  1) will speak to topics that are inadmissible under this Court's prior rulings, 2) are inadmissible because the testimony would be

2

cumulative, and 3) are inadmissible because the experts will opine on subjects not pleaded by these plaintiffs. Those experts offering such testimony should be excluded.

## II.     LAW AND ARGUMENT

### A. Some of the experts plan to offer testimony on evidence this Court has excluded.

On May 18, 2009, this Court granted Gulf Stream's Motion for Protective Order, which prohibited the plaintiffs from using the results of any tests they performed on the subject EHU on May 6—7, 2009. (Doc. No. 1547) During the May inspection, the plaintiffs performed a second round of testing on the EHU and obtained results from those tests. *Id*. However, the Court firmly prohibited the use of the data the plaintiffs obtained. One reason for the Court's denial was the fact that the plaintiffs performed several types of testing during the May examination – an environmental walkthrough study, measurements of the trailer, a material audit, and ventilation testing – without explaining why these tests could not have been done before the May examination <u>and</u> before the Court's testing deadlines had expired. *Id*. For that and other reasons, the Court ruled that the plaintiffs could not use the results of the test going forward. *Id*.

One day after the Court set forth its ruling, the plaintiffs filed their designation of expert witnesses in compliance with the Trial I Scheduling Order. *See* Exhibit "A." In that pleading, the plaintiffs identified five experts – Gary Bunzer, Paul Lagrange, Alexis Mallet, Jr., Charles Moore, and Ervin Ritter – who address the results they found from an inspection of the Alexander unit. *Id*. <u>However, the reports of those five individuals and the opinions contained therein are based almost entirely on the information the experts obtained at the May 6—7, 2009, inspection, and the Court has already ruled that such evidence is inadmissible</u>. The plaintiffs propose to introduce expert testimony based on the very information the Court has previously excluded. That is a clear violation of the Court's May 18, 2009, ruling – if the opinions of these

experts are based upon inadmissible factual evidence, the opinions themselves are likewise inadmissible. Accordingly, Gulf Stream asks this Court to strike experts Bunzer, Lagrange, Mallet, Moore, and Ritter because the reports of those experts and the opinions contained therein are based on factual evidence that this Court has already excluded.

**B. Some of the experts plan to offer testimony that is duplicative and redundant.**

Generally speaking, all relevant evidence – that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence – is admissible. FED. R. EVID. 401—402 (2008). However, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. FED. R. EVID. 403 (2008).

Several courts have excluded experts who offered or planned to offer cumulative testimony. In *Miley v. Delta Marine Drilling Co.*, the plaintiff appealed the district court's exclusion of an expert witness who planned to address the loading and unloading of anchor chains. 473 F.2d 856, 858 (5th Cir. 1973). The U.S. Fifth Circuit Court of Appeals rejected the appeal, holding that the plaintiff had qualified two other experts who testified to the proper on-loading procedure. *Id*. Though the plaintiff may very well have qualified the third expert, the exclusion of cumulative testimony was permissible. *Id*. Similarly, an Eastern District of Louisiana case would not allow one of the plaintiff's two retained experts to discuss common truck driving practices because the other was already speaking to that issue. *See Young v. Am. Reliable Ins. Co.*, 1999 WL 600393, *3 (E.D.La. Aug. 9, 1999). And, a Western District of Louisiana decision blocked two products liability experts from discussing the warnings included

in the owners' manual of a rifle that malfunctioned and caused injury, as well as the cause of that injury. *Matthews v. Remington Arms Co.*, 2009 WL 1220541, *2 (May 4, 2009). The court felt that testimony would be needlessly cumulative if they both offered it, so the court allowed only one of the experts to address those topics. *Id.*

*Miley* and the other decisions are directly applicable to this case. The plaintiffs in this case have listed four different experts who will address air sampling testing protocol and air sampling testing results – Mary DeVany, Paul Hewett, Marco Kaltofen, and William Scott. *See* Exhibit "A**."** In fact, only William Scott actually performed the sampling and testing of the Alexander Gulf Stream unit at issue in this case. While Mary DeVany apparently developed the air sampling protocol employed by William Scott, her report focuses rather on the statistical analysis used to approximate a particular unit's formaldehyde concentration. In particular, Ms. DeVany opines regarding the statistical effect of temperature, humidity and age of a unit on declining formaldehyde rates in a particular unit over time. The reports of Marco Kaltofen and Paul Hewett (neither of whom actually sampled or tested the Alexander unit) also address the same statistical analysis – i.e. the estimated relative change in formaldehyde levels in various units over time and as a result of seasonal issues such as temperature and humidity. The reports of DeVany, Kaltofen and Hewett are therefore entirely cumulative and redundant. This is a textbook example of cumulative testimony that should be excluded under Rule 403 of the Federal Rules of Evidence. Just like the plaintiffs in the above referenced cases, the plaintiffs here seek to use four experts to discuss the same issue and offer the same testimony. Only one of these witnesses is needed to provide the expert testimony that the Court may rely upon. The other testimony will be needlessly cumulative and duplicative, and it will extend the deposition and trial time by many days.

Additionally, any testimony or opinion regarding statistical analysis of test results from any units other than the Alexander unit is irrelevant and prejudicial. The plaintiffs have tested the Alexander unit. Thus, the actual formaldehyde concentration in that unit is known. Any other results from any other units have no bearing on this case, and any expert witness or report addressing such results must be stricken. Accordingly, Gulf Stream asks this Court to strike all experts in this case who would offer cumulative and redundant testimony, or in the alternative, to strike all but one expert as to a given issue.

**C. Some of the experts will opine on topics and issues not plead by these plaintiffs.**

As previously noted, the Gulf Stream bellwether plaintiffs derive from the *Age v. Gulf Stream Coach, Inc.* Complaint filed in the United States District Court for the Eastern District of Louisiana. (*Age*, Doc. No. 1). In the *Age* Complaint, the bellwether plaintiffs' allegations against Gulf Stream focus on its alleged liability from "using plywood, press board, other composite wood products and other products that contain formaldehyde" in the design and construction of the Alexander EHU. (*Age*, Doc. No. 1, ¶ 99). In all of the eleven itemized alleged defects in the Gulf Stream units that specify the alleged unreasonably dangerous condition, only formaldehyde emissions in the unit is identified. (*Age*, Doc No. 1, ¶ 102). In one hundred seventeen paragraphs spanning thirty-four pages, the *Age* Complaint liberally refers to "dangerous" and excess" levels of formaldehyde that plaintiffs claim exists in the EHUs at issue. Contrarily, there is not a single reference to mold contained within the *Age* Complaint. Notwithstanding the foregoing, a review of plaintiffs' expert reports establishes that plaintiffs have injected theories entirely novel to this litigation less than four months before trial.

For example, among the several experts listed by the plaintiffs, one is Ervin Ritter, P.E. Although Gulf Stream suggests that he should be precluded as an expert for the reasons cited in

6

section A, *supra*, his opinions are also vulnerable for another reason.  The plaintiffs have offered

Mr. Ervin as an expert in ventilation, air infiltration, role with moisture and mold, and moisture's

role in elevating formaldehyde exposures. Based on testing conducted in May 2009, Mr. Ritter

opines that air leakage into the trailer allows for interior cavity condensation in the unit, which in

turn, contributes to elevated moisture levels.  *See* May 15, 2009 Ritter Report, attached hereto as

Exhibit "B," at p. 4.  From this conclusion, plaintiffs intend to offer Mr. Ritter as an expert in

"[v]entilation, air infiltration, role with moisture and mold, and moisture's role in elevating

formaldehyde exposures," among other things.  *See* Exhibit "A," at p.9.  While the role of

exterior temperature and humidity on the amount of formaldehyde off gassed from wood

products has been previously plead by plaintiffs, mold and construction practices that allegedly

foster moisture and mold has not.  Moreover, Mr. Ritter's opinions rely on the May 2009 testing

that have already been found irrelevant by the Court.  Not only are the test results irrelevant, but

also they are unreliable, as the trailer has been sitting in an open field for a year, with no utilities

and unknown effects on the unit of the "deactivation," transport and delivery of the unit to Lottie

storage site.

Unfortunately, Ritter's conclusions from the May 2009 testing previously excluded by

the Court (Doc. No. 1547) results in a bountiful harvest of tainted fruit.  Plaintiffs' other

proffered experts, in rendering their own conclusions, also inject the "mold" and air ventilation

issue for the first time.  Plaintiffs' human factors/warnings expert, Lila Laux, relies on the "fact"

that "heat and humidity…increase the rate of formaldehyde off-gassing, as does mold, which

also thrives in heat and humidity."  *See* May 16, 2009 Laux Report, attached hereto as Exhibit

"C," at p. 5.  Further, she opines regarding the alleged potential for water damage to the trailer,

and the alleged potential increase in formaldehyde, as a consequence.  *See* Exhibit "C," at p. 9.

These opinions are being raised for the first time, and are outside the allegations of the *Age*
Complaint.  Furthermore, the opinions clearly flow from the excluded May 2009 testing.

Lila Laux is not alone.  Dr. Barnes, Christopher Cooper's treating physician, refers to the
trailers as "small with poor ventilation and substandard insulation, often allowing increased
moisture, with subsequent overgrowth of mould [sic], mildew, and dust mites."  *See* May 15,
2009 Barnes Report, attached hereto as Exhibit "D".  Dr. Karen Pacheco, plaintiffs' expert
pulmonologist, discusses mold in relation to plaintiffs' prior living quarters, and regarding the
EHU, notes "Mold began to grow around the windows and the trailer smelled moldy.  A wall
panel came loose and mold was visible behind the panel."  *See* May 18, 2009 Pacheco Report,
attached hereto as Exhibit "E," at p. 2.  She further incorporated tainted testing results, noting
"On inspection, the bedroom closest [sic] had visible mold on the walls."  (See Exhibit "E," at p.
6.  As an aside, ironically, Dr. Pacheco confirms that Chris Coopers' skin test established that he
is not allergic to molds.  *Id.*  Paul Lagrange, another expert from the excluded May 2009 testing,
reports extensively on the need for airtight duct work because of the potential for "mold spores,
dust mites, insulation particles, pollen and other contaminants."  *See* May 7, 2009 Lagrange
Report, attached hereto as Exhibit "F," at p. 4.  According to Lagrange, these contaminants
increase "allergy and asthma problems and promotes mold growth in the home and in the duct
work."  *Id.*  Plaintiff's expert, Gary Brunzer, opines that "Any evidence of water intrusion should
be rectified immediately to minimize structural damage, deterioration and the proliferation of
mold."  *See* May 15, 2009 Bunzer Report, attached hereto as Exhibit "G," at p. 6.  Finally, Alexis
Mallet, yet another plaintiff expert inspecting the trailer in May 2009, opines concerning the
ventilation system and alleged water intrusion from "hot, humid, contaminated air."  *See* May 19,
2009 Mallet Report, attached hereto as Exhibit "H," at p. 97.

All of these expert opinions should be excluded as new theories outside the allegations of the *Age* Complaint.  Plaintiffs have not pleaded exposure to mold as a cause of action, nor have they alleged anything with respect to ventilation and infiltration's role with causing moisture and mold in the EHU. Without any basis in the plaintiffs' complaint for this information, any evidence is completely irrelevant and prejudicial.  Furthermore, the inclusion of these new theories will certainly extend the necessary discovery and trial time.  To incorporate these new theories into what is already a taxed time frame is dubious. Accordingly, Gulf Stream asks this Court to strike the foregoing experts in this case who would offer information related to facts or claims that the plaintiffs have not pleaded in this case.

### III.    CONCLUSION

**WHEREFORE,** considering the foregoing, Gulf Stream and Fluor Enterprises, Inc. respectfully request that this Honorable Court issue an Order striking the aforementioned experts because some of them will speak to topics that are inadmissible according to this Court's prior rulings, some will offer duplicative and redundant testimony, and some will opine on subjects not plead by the plaintiffs.

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/Andrew D. Weinstock

_____
**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
(504) 837-3119 (FAX)
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON**
**Timothy D. Scandurro #18424**
**Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
(504) 529-6199 (FAX)
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**


and


s/ Charles R. Penot, Jr._____

**MIDDLEBERG, RIDDLE & GIANA**
**Charles R. Penot, Jr. #1530**
717 North Harwood, Suite 2400
Dallas, Texas 75201
(214) 220-6334
(214) 220-6807 (FAX)
cpenot@midrid.com

**Dominic J. Gianna #6063**
201 St. Charles Avenue
New Orleans, Louisiana 70170-3100
(504) 525-7200
(504) 581-5983 (FAX)
dgianna@midrid.com
**Counsel for Defendant, Fluor Enterprises, Inc.**

## **C E R T I F I C A T E**

I hereby certify that on the 21st day of May, 2009, a copy of the foregoing Memorandum in Support of Motion for to Strike Certain Expert Witnesses was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com

11