UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                         MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                SECTION N-5
                                            JUDGE ENGELHARDT
                                            MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT UNITED STATES
OF AMERICA'S MOTION FOR A PROTECTIVE ORDER TO PREVENT PSC'S
DEPOSITIONS OF PATRICK PRESTON AND MARY MARTINET [Docket No. 1631]

In their Memorandum in Opposition to the United States' Motion for a Protective Order
[Docket No. 1659], Plaintiffs' Steering Committee ("PSC") does not dispute that Mr. Patrick
Preston and Ms. Mary Martinet are attorneys for an opposing party or that federal courts disfavor
depositions of an opposing party's counsel.  Instead, PSC argues that they have met the
requirements of *Shelton v. American Motors Corp.* 805 F.2d 1323, 1327 (8th Cir. 1986), for
deposing an opposing party's attorneys.  PSC, however, has failed to demonstrate that "(1) no
other means exists to obtain the information than to depose opposing counsel, (2) the information
sought is relevant and nonprivileged; and (3) the information is crucial to preparation of the
case." 805 F.2d at 1327.

    I.       PSC Has Failed To Show That The Information It Seeks From These
               Attorneys Is Relevant And That No Other Means Exist To Obtain The
               Information Than Through The Depositions.

PSC claims that the involvement of the Federal Emergency Management Agency
("FEMA") lawyers in responding to formaldehyde concerns is relevant given this Court's prior
Order in the case.  PSC contends that e-mails composed by Preston and Martinet "are key to the

determination whether FEMA delayed its response to the concerns and complaints about the formaldehyde emissions in the emergency housing units pursuant to concerns of litigation exposure," and "since Patrick Preston and Mary Martinet composed the e-mails, no one else fairly and reasonably should be looked to in order to discover the context surrounding and/or the motivation behind these e-mails.  Nor is it appropriate to authenticate the e-mails other than through the persons who offered them."  (Pl. Opp. at 4-5).

As an initial matter, as the United States has argued in the recent Motion to Dismiss the Remaining FTCA claims [Docket No. 1545], the conduct of Preston and Martinet is irrelevant to the discretionary function exception inquiry because the second part of the analysis – the only part that remains at issue – is an objective inquiry into whether the challenged conduct is "susceptible to policy analysis."  In any event, even applying a subjective standard, FEMA's consideration through their Office of Chief Counsel ("OCC") of the legal implications of FEMA's conduct upon a class action lawsuit seeking $1 billion in damages and injunctive relief is part of a policy analysis protected from judicial second-guessing under the discretionary function exception.  [Docket No. 1545].

The United States acknowledges that the Court, in its Order on the United States' initial jurisdictional motion, considered OCC e-mails, released by Congress and relating to this litigation, as relevant to the discretionary function exception.  *See* Oct. 3, 2008, Order at 30-39 [Docket No. 717].[1]  Even conceding the relevance of the information contained in those e-mails to the discretionary function exception analysis, the question of the government's negligence is analytically distinct – the issue simply becomes whether the FEMA's acts or omissions were reasonable at the time, given all of the surrounding circumstances.  Depositions of OCC counsel

---

[1]  For materials released by Congress, see http://oversight.house.gov/story.asp?ID=1420.

would develop little information relevant to this inquiry, and PSC could readily obtain relevant information from other sources.  *See Indus. Maritime Carriers v. Barwil Agencies A.S.*, Nos. 03-1668, 03-1908, 2005 WL 2060925, at *4-5 (E.D. La. Aug. 23, 2005) (granting protective order with respect to deposition of counsel and finding that party could obtain information regarding reasonableness of a settlement from other sources).

Indeed, PSC has failed to meet its burden of demonstrating that no other means exist to obtain information regarding "context" and "motivation" than through the depositions of OCC counsel; this is crucial to the *Shelton* analysis.  The United States would stipulate to the authenticity of the e-mails, so the need to authenticate the e-mails through these witnesses cannot establish a basis for necessity.  Moreover, as the United States demonstrated in the Statement of Facts in Support of its Motion to Dismiss the Remaining FTCA Claims, there were many other individuals involved in determining FEMA's response to the formaldehyde concerns at the relevant time.  [Docket No. 1545, Statement of Contested/ Uncontested Facts].  For example, non-lawyers such as Kevin Souza and David Porter received the OCC e-mails referenced in this Court's October 3, 2008, Order [Docket No. 717], and, notably, PSC has already requested depositions of these individuals (their depositions have been tentatively set to take place during the weeks of July 6, 2009 and July 15, 2009).  Further, PSC's own Memorandum in Opposition identifies several additional individuals, including David Garratt, Joseph Little and Martin McNeese, who possess information regarding the extent of OCC's involvement in the decision-making process.  (Pl. Opp. at 7-8).  Until PSC takes the depositions of these persons, it cannot meet its burden of establishing that depositions of Preston and Martinet are "the only practical means available for obtaining the information."  *Dunkin' Donuts, Inc. v. Mandorico, Inc.*, 181 F.R.D. 208, 211 (D. P.R. 1998).

II.   **PSC Has Failed To Show That There Has Been A Waiver Of The Attorney-Client Privilege For Information That It Would Seek Through These Depositions.**

Additionally, PSC cannot meet the second part of the *Shelton* test because it has not established that the information that it would seek through the depositions is non-privileged. PSC argues that there has been a subject matter waiver of the attorney-client privilege through Congress' release of the OCC "witnesses' emails and related testimony."  (Pl. Opp. at 6).  The federal law that PSC cites regarding subject matter waiver, however, is outside of the context of a release of information to Congress and Congress' subsequent publication of that information. The release of information to Congress is a unique situation that is not covered by the typical rules regarding subject-matter waiver, given the important policies promoting the release of information by the Executive Branch to the Legislative Branch.  For example, in *Rockwell Int'l Corp. v. U.S. Dept. of Justice*, 235 F.3d 598, 604-05 (D.C. Cir. 2001), the District of Columbia Circuit held that the Executive Branch's production and disclosure of documents to Congress , as well as Congress' subsequent disclosure of those documents to the public, could not constitute a subject matter waiver of privilege.  The Court reasoned that as a "policy matter . . . 'since under such an interpretation every disclosure to Congress would be tantamount to a waiver of all privileges and exemptions, executive agencies would inevitably become more cautious in furnishing sensitive information to the legislative branch -- a development at odds with public policy which encourages broad congressional access to governmental information.'"  *Id.* at 604 (quoting *Murphy v. Dep't of the Army,* 613 F.2d 1151, 1156 (D.C.Cir.1979)).  PSC dismisses the cases that the United States cited as involving inapplicable Freedom of Information Act ("FOIA") exemptions, (Pl. Opp. at 8); yet, as the quote above shows, the reasoning applicable to

- 4 -

the FOIA exemption is equally applicable to waiver of common law privileges.  While PSC acknowledges the underlying context regarding the release of information to Congress (Pl. Opp. at 9), PSC fails to confront the reasoning of those cases supporting the decision that FEMA's production of documents to Congress, and Congress' subsequent disclosure of such materials, does not effect a subject matter waiver of privilege or confidentiality.

In addition to the e-mails that were disclosed to Congress that the Court relied upon in its Order denying in part the United States' motion, PSC makes vague allegations that the United States has waived privileges with respect to other "related, undisclosed communications and/or information."  (Pl. Opp at 6).  While PSC generally identifies declarations of non-lawyers regarding the extent of OCC involvement in addressing formaldehyde concerns, PSC fails to specify any attorney-client privileged information or any attorney work-product information that the United States has disclosed to effect a waiver of the privileges.  For example, PSC states that the United States has voluntarily disclosed "information and facts" as to Preston and "his involvement with the review of EPA's data and ATSDR's analysis of formaldehyde emissions." (Pl. Opp. at 8).  The cited declarations from Joseph Little and Martin McNeese merely show that Preston was a conduit of data between EPA and ATSDR, and that FEMA was requesting an ATSDR analysis of the data.  *See* U.S. Motion to Dismiss, Exh. 40 ¶ 7 [Docket No. 1545-48]; Exh. 41 ¶¶ 6-7 [Docket No. 1545-49].  Moreover, Preston was an attorney for FEMA, not for the EPA or the ATSDR.  Consequently, the declarations do not disclose privileged or confidential information and, therefore, cannot waive any privilege.

Indeed, these declarations regarding the facts of OCC involvement demonstrate that PSC can obtain this factual information from other sources without deposing Preston or Martinet.  On the other hand, PSC has not demonstrated, and cannot show, that the information sought through

depositions of Preston and Martinet is nonprivileged, either because (1) the privileged has been waived or (2) the questions will not seek information regarding the judgment and mental processes of these attorneys.  *See Koch Refining Co. v. M/V Jennifer L. Boudreaux*,  Nos. 87-5661, 87-5712, 88-1607, 1989 WL 159341, at *2 (E.D. La. Dec. 18, 1989) (stating that courts are "averse to permit the deposition of attorneys because such will inevitably involve 'forays into the area most protected by the work product doctrine – that involving an attorney's mental impressions or opinions'") (quoting *See N.F.A. Corp. v. Riverview Narrow Fabrics*, 117 F.R.D. 83, 85 (M.D. N.C. 1987)).

### III.   PSC Has Failed To Show That The Discovery Sought Is Necessary For Their Preparation Of The Case.

Finally, PSC has not demonstrated that depositions of Preston and Martinet are crucial to the preparation of its case.  PSC's own motion reveals that there are several other witnesses who can provide information "of the facts underlying, and context of, the United States' response to public health and safety concerns of formaldehyde exposure in housing units furnished by FEMA to the victims of Hurricanes Katrina and Rita."  (Pl. Opp. at 10).  To the extent that discovery is needed to determine whether FEMA's conduct was grounded in policy or "simply strategizing by attorneys in anticipation of litigation" (Pl. Opp. at 10), the depositions of FEMA's decision-makers – in other words the "client" of Preston and Martinet – will be most crucial to that determination.

In sum, PSC has not made a showing of necessity to depose the FEMA attorneys.  PSC has not shown that it has exhausted alternative sources of the information; PSC has not shown that the depositions will seek nonprivileged information; and PSC has not shown that the depositions are crucial to the case.

## **CONCLUSION**

For the foregoing reasons, the Court should grant a Protective Order to prohibit PSC from

deposing Patrick Preston or Mary Martinet

Dated:   June 5, 2009                                Respectfully Submitted,

TONY WEST
Assistant Attorney General, Civil Division

J. PATRICK GLYNN
Director, Torts Branch, Civil Division

HENRY T. MILLER
Senior Trial Counsel

ADAM DINNELL
MICHELLE BOYLE
JONATHAN WALDRON
Trial Attorneys


//S// Adam Bain

ADAM BAIN (IN Bar No.11134-49)
Senior Trial Counsel
United States Department of Justice
Civil Division – Torts Branch
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
Telephone No:  (202) 616-4209
E-mail:  adam.bain@usdoj.gov

Attorneys for the United States of America

OF COUNSEL:


JORDAN FRIED
Associate Chief Counsel
JANICE WILLIAM-JONES
Trial Attorney
FEMA/DHS

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2009, the foregoing Reply Memorandum In Support of the Motion for Protective Order were filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereby was served upon Liaison Counsel.

<u>//S// Adam Bain</u>
Adam Bain (IN Bar No. 11134-49)