UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                          MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                 SECTION "N-5"

                                             JUDGE ENGELHARDT
                                             MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*Age, et al v. Gulf Stream Coach, Inc., No. 09-2892*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PLAINTIFF'S RESPONSE TO DEFENDANTS GULF
STREAM COACH, INC. AND FLUOR ENTERPRISES, INC.'S
<u>MOTION TO STRIKE CERTAIN EXPERT WITNESSES</u>

       Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper ("plaintiff"

or "Ms. Alexander"), responds to defendants Gulf Stream Coach, Inc. and Fluor Enterprises,

Inc.'s (collectively, "defendants") Motion to Strike Certain Experts and, in support, would show

the following:

<u>SUMMARY OF RESPONSE</u>

       Defendant's motion is overbroad.  Defendants would have the Court strike experts' entire

testimony because they relied on allegedly inadmissible testimony (although the Rules of

Evidence specifically say that they can), because a few experts' opinions appear to slightly

overlap, and because a few experts mention the word "mold" when a mold claim has not been

pled.  Defendants' motion, in fact, over-reaches to the point of being frivolous, and it is notable

that the Government has not joined the motion.

Defendant's motion is also premature.  Pursuant to the Court's order, plaintiffs recently designated their experts and provided reports.  Defendants filed this motion two days later, before a single expert deposition had been taken.  Defendants should first depose the experts, test their opinions, and examine what they relied upon in reaching their opinions.  It is well-settled that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," *Gustings v. Travelers and Standard Fire Ins. Co.*, 2008 WL 4948837, *6 (E.D. La. 2008) (Engelhardt, J.) (citing *Daubert v. Merrell Down Pharms., Inc.*, 509 U.S. 579, 586 (1993)). If defendants believe there are problems with the expert opinions, they should file *Daubert* motions or motions *in limine* within the deadlines set forth by this Court, after an appropriate record has been made in reference to such motion practice.

Defendants' motion is legally and factually unfounded.  First, this case is about a specific travel trailer.  Yet, without any legal authority, defendants would have the Court exclude experts because they rely on information — photographs, measurements, etc. — gathered in a recent inspection of that very trailer.  Defendants thereby seek to remove from the case any expert opinion based on information specific to the trailer that is the subject of the case, and further would justify this extraordinary outcome in contradiction to the established rule of evidence allowing experts to rely on information not itself admissible in evidence, provided it is the type of information "reasonably relied upon" by such experts.

Defendants attempt to strike certain expert opinions *in toto*, on the ground that portions of the opinions set forth in different expert reports arguably overlap.  Plaintiff submits that the opinions in question do not overlap; but, even if they do, only the portions that overlap should be

excluded, not the entirety of the expert's report.

Finally, defendants seek to exclude any evidence relating to mold because plaintiff has not pled damage as a result of mold exposure. The complained-of portions of the reports contain very brief and passing references to mold, which have relevance to the extent that moisture intrusion (evidenced by mold) is known to increase formaldehyde off-gassing. Some reports do not mention mold at all. This complaint made by movants simply cannot be a reasonable basis for the draconian request to strike every expert report which makes reference to mold.

## BACKGROUND

This case is one of thousands filed in this Multi-District Litigation as a result of allegedly-harmful exposure to formaldehyde in the trailer trailers provided to victims of Hurricanes Katrina and Rita. In her particular lawsuit, filed on February 27, 2009, Ms. Alexander asserts product liability claims against Gulf Stream (which manufactured the trailer in which her family resided), product liability or, alternatively, negligence claims against Fluor (which installed the trailer as a unit to live in), and negligence claims against the Federal Emergency Management Agency ("FEMA").

On April 6, 2009, the Court selected Ms. Alexander as the first "bellwether" trial plaintiff, and, on April 8, 2009, issued a Scheduling Order for this case, setting trial to begin on September 14, 2009. Notably, the Court also set a deadline for the parties to provide written reports of experts (plaintiff - May 19, 2009; defendant - June 19, 2009) and for the parties to file *Daubert* motions and motions *in limine* by August 29, 2009.

The Alexander family moved into their trailer on or about May 27, 2006. During their occupancy of the unit, family members suffered symptoms such as irritation of the eyes and nasal

membranes, headaches, and breathing difficulties.  Christopher Cooper, who previously had been diagnosed with asthma, suffered increased problems with his asthma, as well as eczema.[1]

Ms. Alexander initially did not know the cause of her and her family's ailments.  Once she learned that the ailments may be attributable to formaldehyde exposure in the trailer, however, she began preparations to move out of the unit.  The family ultimately did so on or about December 30, 2007.  The trailer was removed from the family's home site on February 11, 2008.  *See* Exhibit A, excerpts from Ms. Alexander's Disaster File.

Ms. Alexander retained the law firm of Gainsburgh Benjamin, David, Meunier & Warshauer, L.L.C. as counsel in this matter.  This firm then engaged a service to test the trailer for formaldehyde emissions.[2]  Clearly, it would have been cost-prohibitive at this time to have numerous experts examine the trailer, test it in more detail, conduct ventilation testing, take extensive measurements, or do a materials audit on the trailer.  The admissibility or use of such individualized information certainly remained questionable, as long as class action allegations were pending (the Court denied class certification in 12/08).  Additionally, such extensive testing would have required coordination with FEMA as well as defense counsel at a time merits discovery was prohibited.  As noted, the trailer was deactivated and removed from the site on

---

[1]His treating doctor, Dr. Janet Barnes, opines that, as a result of exposure to formaldehyde in the trailer, Christopher has suffered epithelial damage, with subsequent exacerbations of asthma, recurrent rhinosinusitis and chronic atopic dermatitis, and will continue to suffer from these for the rest of his life.  Numerous studies have found formaldehyde to be a probable or known carcinogen.

[2]There has been some confusion about the number of times this trailer has been tested for formaldehyde.  To be clear, it has been tested for formaldehyde twice — once in January 2008 and once in May 2009.  There was another, very brief viewing of the trailer by plaintiffs' counsel in April 2009.  FEMA place significant limitations on this viewing (which lasted approximately 30 minutes) and it involved only attorneys.  No type of testing was performed at that time.

February 11, 2008.  Whatever access Ms. Alexander and her counsel had to the trailer ended on that day.

 Once the Court selected Ms. Alexander as a bellwether trial plaintiff, her counsel immediately requested that FEMA permit them to examine the trailer.  <u>FEMA did not object to this request and, indeed, was very cooperative in agreeing to make the trailer available</u>.  FEMA and plaintiff's counsel agreed on a date, ultimately agreed on a testing and examination protocol (which was provided to the other defendants), and the testing and examination occurred on May 6 and 7, 2009.  Counsel for plaintiff incurred significant expense in conducting this testing and examination and, as will be shown below, the information learned in that examination will be critical to help the jury and the Court resolve this case at trial.

 On May 19, 2009, plaintiff tendered her expert reports in accordance with the Court's Scheduling Order.  Two days after receiving the reports, before a single expert had been deposed, defendants filed the instant motion.

## ARGUMENT AND AUTHORITIES

 Defendants' Motion to Strike is one to exclude evidence, specifically expert testimony. Therefore, the Federal Rules of Evidence should govern the Court's analysis of the motion.

 Fed.R.Evid. 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

 Fed.R.Evid. 402 provides:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority, Evidence

which is not relevant is not admissible.

Fed.R.Evid. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact
to understand the evidence or to determine a fact in issue, a witness qualified as an
expert by knowledge, skill, experience, training, or education, may testify thereto
in the form of an opinion or otherwise, if (1) the testimony is based upon
sufficient facts or data, (2) the testimony is the product of reliable principles and
methods, and (3) the witness has applied the principles and methods reliably to the
facts of the case.

Fed.R.Evid. 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or
inference may be those perceived by or made known to the expert at or before the
hearing.  If of a type reasonably relied upon by experts in the particular field in
forming opinions or inferences upon the subject, the facts or data need not be
admissible in evidence in order for the opinion or inference to be admitted.  Facts
or data that are otherwise inadmissible shall not be disclosed to the jury by the
proponent of the opinion or inference unless the court determines that their
probative value in assisting the jury to evaluate the expert's opinion substantially
outweighs their prejudicial effect.

    **Standard of Review.**  Evidentiary rulings, and decisions on whether to exclude an

expert's testimony, are reviewed for an abuse of discretion.  *McIntosh v. Partridge*, 540 F.3d

315, 320 (5th Cir. 2008);

**I.  PLAINTIFF'S EXPERTS DO NOT REPLY ON INADMISSIBLE EVIDENCE
(BUT, EVEN IF THEY DO, THE RULES ALLOW THEM TO DO SO.)**

    Defendants' first line of attack is premised on a belief that, in a May 18, 2009 Order, the

Court has excluded any evidence relating to the subject trailer (or at least any such information

that was learned during the May 2009 inspection and testing of the trailer); that certain experts

(Bunzer, Lagrange, Mallet, Moore, and Ritter) relied "exclusively" on their May 2009 inspection

of the trailer in reaching their opinions; and therefore, since these experts' opinions "are based

almost entirely on the information the experts obtained during this inspection," they and their

opinions should be excluded from evidence.  **Defendants have cited to no authority for**

**support of their position for striking these experts at this early stage.**

The referenced experts and their areas of expertise are as follows:

**Gary Bunzer:** Conduct of Contractor/Maintenance Company; Inspection of the
Alexander/Gulf Stream Coach, Inc.  Unit with regard to Conduct of
Contractor/Maintenance Company;

**Paul Lagrange:** Blower Door Testing for Air Leakage of the Thermal Envelope,
Duct Blaster Testing for Air Leakage of Supply and Return Duct Work, and
calculations related to BTU gain (air infiltration), and R-value of the wall and
ceiling assemblies; Ventilation; Inspection of the Alexander/Gulf Stream Coach,
Inc. Unit;

**Alexis Mallet, Jr.:** Design Defects; Construction Issues with regard to
Alexander/Gulf Stream Coach, Inc. Unit; Inspection of Alexander/Gulf Stream
Coach, Inc. Unit; Failure to Warn of HVAC installation;

**Charles Moore:** Civil Engineering; Trailer Frame Issues; Structural Issues with
Alexander/Gulf Stream Coach, Inc. unit; Inspection of Alexander/Gulf Stream
Coach, Inc. Unit; and

**Ervin Ritter:** HVAC/heating system mechanical engineering; Ventilation, air
infiltration, role with moisture and mold, and moisture's role in elevating
formaldehyde exposures; indoor air quality; related Trailer Construction and
Design Issues; Inspection of Alexander/Gulf Stream Coach, Inc. Unit.[3]

When evaluating expert testimony, the overarching concern is whether or not it is

"relevant and reliable."  *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007).

Defendants do not attack these expert's opinions as irrelevant.  At best, and although they do not

say as much, defendants attack the opinions as unreliable, presumably because they are based on

---

[3]The reports/affidavits of all of these referenced experts are attached to defendants'
motion, except for the report of Charles Moore.  The latter's report therefore is attached hereto as
Exhibit B.

excluded evidence.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky [i.e., unreliable] but admissible evidence," *Gustings v. Travelers and Standard Fire Ins. Co.*, 2008 WL 4948837, *6 (E.D. La. 2008) (Engelhardt, J.) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 586 (1993)).  It should go without saying that motions to exclude experts filed two days after receipt of their report, and before they have even been deposed, do not represent the "traditional and appropriate" means of attacking expert testimony.

To address the premise of defendants' argument — that, in its May 18, 2009 Order, the Court has already excluded any evidence gleaned during the May 2009 inspection — it is important to first review the circumstances leading up to that Order.

Ms. Alexander moved into the trailer in May 2006.  Until December 2007, she had no idea that the trailer was dangerous.  When she learned that it posed a health risk to her and her children, she began the process of moving out of the trailer, which she completed at the end of December 2007.

At that time, she also retained counsel.  Her counsel (Gainsburgh Benjamin) had her trailer tested for formaldehyde in January 2008.  FEMA removed the trailer from Ms. Alexander's property on February 11, 2008.  Neither plaintiff, nor her counsel had any access to the trailer until FEMA agreed to make it available in May 2009, after she was selected as a bellwether plaintiff.

The PSC did conduct formaldehyde testing of other units in the summer and fall of 2008. The purpose of the testing was to conduct statistical sampling of formaldehyde levels in trailers,

-8-

for the purposes of showing that this litigation was appropriate for class consideration.  It is well-settled that this testing was done in the context of a discovery plan that was limited to class certification issues, with the defendants[4] loudly objecting to any "merits" discovery prior to the class certification decision.  Moreover, this testing was undertaken specifically to establish statistical proof of ambient formaldehyde levels in the cases (particularly those of absent class members), which prospectively would be tried at a time when a given unit no longer was available for testing.

Meanwhile, FEMA, which exclusively holds all of the matching data that links a plaintiff to a particular unit, never made this particular trailer available to the PSC to test.  This trailer was only identified in April 2009, after Ms. Alexander was chosen as a bellwether plaintiff.

In sum, after Ms. Alexander retained counsel, the trailer she and her family occupied was removed from her property.  Her counsel did arrange to conduct testing for ambient formaldehyde levels in the unit before it was removed.  However, under the circumstances it did not make — and would not have made — economic sense for counsel to have a litigation team of experts do extensive measurements, ventilation testing, and materials audits on this particular trailer at that time; and it goes without saying that, after FEMA took away the trailer, the PSC had no ability to test or examine it.  Indeed, FEMA did not even identify this trailer as one still being held in inventory until <u>after</u> Ms. Alexander was selected as a bellwether plaintiff.  Prior to the selection of Ms. Alexander and her son as bellwether plaintiffs, neither individual counsel for the Alexander family nor the PSC had any reason to expect that they would be obliged by some

--------------------------------------------------

[4]At the time of these events, in fact, one of the defendants, Fluor, was not even a party to the litigation.

undetermined and unpublished deadline to perform any and all testing and have all necessary experts inspect this unit for the purpose of a merits trial.  Rather , this unit was one of <u>thousands</u> of units which <u>might</u> be the subject of bellwether trials.[5]

Regardless of this background, the reality is that in April 2009 FEMA voluntarily located this trailer and made it available for inspection and testing.  There is no dispute that the PSC asked to examine and test the trailer within the two days of the Court's selection of Ms. Alexander as a bellwether plaintiff.[6]  While Gulf Stream stated its objection to additional "re-testing" of the trailer, it did not file any motion on the issue until Gulf Stream filed its Motion for Protective Order Regarding Re-Testing of Plaintiff's Emergency Housing Unit on April 27, 2009 (Rec. Doc. 1373).  In that motion, Gulf Stream specifically said that the scheduled "testing" should not be delayed pending the resolution of the motion,[7] only that the testing result should be excluded.  *Id.* at p. 1.  Thus, while couched as a Motion for Protective Order (which protects parties from burdensome discovery), it was more properly a Motion *In Limine*[8] — specifically, to exclude the test results from the May 2009 formaldehyde testing.

At the time it filed this Motion for Protection, Gulf Stream had been provided with a testing and inspection protocol which set forth that, in addition to formaldehyde testing, the

---

[5]Even if there had been such a deadline, FEMA never made this trailer available.  So, plaintiff could not have tested or inspected the trailer.

[6]*See* Defendant's Motion for Protective Order (Rec. Dc. 1373) at p. 2.

[7]In an April 28, 2009 Order, the Court allowed testing to move forward, but noted that defendants may file motions regarding the test results.  (Rec. Doc. 1378).

[8]In its May 18, 2009 Order, the Court noted the same.  *See* Order, at fn.1 (Rec. Doc. 1547).

PSC's experts intended to conduct a detailed visual inspection of the trailer, ventilation testing and a materials audit.[9]  However, the thrust of Gulf Stream's Motion for Protection was a request to exclude the formaldehyde test result on the ground it was somehow unfair for it to have to address a second, allegedly unreliable formaldehyde test result.[10]  Defendants lodged no complaint with the other areas of testing and inspection.

In its May 18, 2009 Order, the Court also focused almost exclusively on the results of formaldehyde testing and concluded that these should be excluded.  The Court referenced the fact that the PSC had also conducted an environmental walk-through study, measurements of the trailer, a materials audit and ventilation testing.  The Court observed that there was no reason why these things could not have been done before now.  However, the PSC respectfully submits there was a good reason, as explained *supra*, why these particular activities would not have occurred.  Prior to May 2009, Ms. Alexander's counsel had access to the trailer for only a limited time and, more importantly, the parties by Court order were addressing during this time only class certification issues in discovery.  It would not have made financial sense to have a team of experts perform a thorough analysis of this particular trailer (among thousands) for merits litigation purposes.  Undoubtedly, had Ms. Alexander's counsel attempted to do so — for this trailer and the thousands of others at issue in this MDL — it would have met with strong objections from FEMA and defense counsel as improper, considering their consistent position (adopted by the Court) to limit all discovery to class issues during that time.  After the trailer had

_____

[9]*See* May 18, 2009 Order (Rec. Doc. 1547) at p. 2.

[10]*See* Motion for Protection, at pp. 4-5 (discussing previous formaldehyde tests, potential jury confusion regarding accurate levels of formaldehyde, need for additional experts on formaldehyde issue).

been removed by FEMA, that agency never advised Ms. Alexander's counsel as to its

whereabouts and never made it available for any type of testing or inspection — until now.

        In ruling on the motion, the Court granted it "to the extent that plaintiffs will not be

allowed to use the results of the test at issue in this motion."  May 18, 2009 Order, at p. 4.

Considering that the language of the ruling refers to a "test" instead of "tests" and does not

reference materials audits, measurements, the environmental walkthrough study, or ventilation

testing, and because the sole focus on defendants' motion was on the formaldehyde tests,

plaintiff respectfully submits that the Order only served to exclude the formaldehyde test

results.[11]  The subject experts did not rely on those test results in reaching their conclusions.

Therefore, the motion should be denied.

        Indeed, it would be incredibly unfair to these bellwether plaintiffs to exclude evidence

relating to the very trailer at issue in this case.  The information learned in the May 2009

inspection is essential to any fair presentation of a product liability case involving this trailer.

The experts' reports set out why this information is critical to their opinions.  To exclude all of

this evidence (about the very trailer at issue int his case), which has already been collected, could

prove fatal to Ms. Alexander's ability to prosecute her and Christopher's case to a truly

---

[11]Plaintiffs respectfully disagree with that ruling and hope that, after expert depositions
are taken, the Court can be persuaded to reconsider this decision and admit this formaldehyde
test into evidence.  Defendants' own expert, Dr. Ginevan, gave deposition testimony during class
certification discovery that repeat testing of single units was the most valid means of estimating
exposure levels in that unit.  Plaintiffs respectfully submit that the issue should not be decided on
a motion *in limine* at the beginning of the case.  This MDL litigation would be if the issues raised
in this motion were addressed when the parties file *Daubert* motions, or through "[v]igorous
cross-examination, presentation of contrary evidence, and careful instruction on the burden of
proof" which "are the traditional and appropriate means of attacking shaky but admissible
evidence."  *Gustings*, 2008 WL 4948837 at *6.

instructive outcome.

Lastly, even if the Court excludes from the evidence any information relating to the May 2009 inspection, "[i]f of a type reasonably relied upon by experts in this particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." Fed.R.Evid. 703. The type of information learned at the May 2009 inspection is the type of information relied upon by plaintiff's experts in their particular fields, as confirmed in the expert declarations of Messrs. Bunzer, Lagrange, Mallet, Ritter and Moore, attached as Exhibit C. Thus, even construing the Court's May 18, 2009 Order as excluding from evidence any information obtained through the May 6-7 testing and inspection, there is no basis under FRE 703 for excluding expert opinion testimony which relies on such information.

In sum, defendants have offered no legal basis to exclude these experts. In this product liability case, how can it be reasonably suggested that relevant pictures and measurements of an available defendant product ought be withheld from the jury? The information learned at the May 2009 inspection has to do with the very trailer at issue in this case; and there is no justification, legal or otherwise, to exclude such crucial evidence. At a minimum, there is no basis to exclude the opinions of these experts, who can render their opinions based even on inadmissible evidence under FRE 703, as long as the evidence is the type of information that they would reasonably and customarily consider in forming their opinions.

## II.    THE EXPERT TESTIMONY IS NOT DUPLICATIVE

Next, defendants move to strike certain plaintiffs' expert witnesses (DeVany, Hewitt, Kaltofen and Scott) as offering duplicative testimony. In articulating their challenge on this

-13-

basis, defendants relied exclusively on the summaries provided in plaintiffs' designation of expert witnesses.  The expert designation is, in fact, the only document cited by defendants.

Of course, the proper way to analyze this is to look at the reports themselves, not the designation.  In contrast to the expert designation's summaries, the reports provide an in-depth and complete account of the testimony each expert will offer at trial.  An examination of the reports reveals that each expert will address very different issues, all of which are necessary for the jury's understanding of the litigation.

First, this motion is premature.  It is well-settled that the Court possess broad discretion to control this trial.  *U.S. v. Colomb*, 419 F.3d 292, 300 (5th Cir. 2005).  Plaintiff's counsel recognizes that the Court will place time limits on each side's presentation of evidence.  Counsel has no interest in wasting its time presenting evidence on duplicative testimony.  If counsel veers into duplicative testimony at trial, the Court can exclude it then.  Because the Court can eliminate cumulative evidence by a much less draconian method than the wholesale striking of experts, defendants' motion to strike is unfounded.

Second, each of plaintiffs' expert witnesses will testify on issues not covered by any other expert.  A discussion of each of the complained-of experts follows.

**Mary DeVany.**  Dr. DeVany is plaintiffs' only witness testifying on industrial hygiene. Her report is attached as Exhibit D.  She provides a basic overview of the health effects of formaldehyde, an in-depth discussion of the formaldehyde exposure standards promulgated by various governmental agencies, and a discussion about the different sampling methods used to measure formaldehyde concentrations.  She describes the history of the Alexander family, their medical conditions before, during and after their residency in the trailer.  She opines on

-14-

defendants' negligence in dealing with the formaldehyde issue.

**Paul Hewett.**  Dr. Hewett is a statistician as well as an industrial hygienist.  He performed a statistical analysis of the Dataset of sampling results from the Gulf Stream trailers.  His report is attached as Exhibit E.  Dr. Hewett presents the statistics obtained, explains how the analysis was done, and what it means.

**Marco Kaltofen.**  Mr. Kaltofen is a registered professional civil engineer.  His report is attached as Exhibit F.  His testimony will cover such issues as the sources of formaldehyde emissions in the trailers, and the effect of temperature and humidity on the rate of the emissions.  He presents a chart and a detailed discussion of the various formaldehyde testing results obtained by eleven different entities.  He will also discuss the results of the various tests performed on the Alexander trailer, and explain why testing of the same unit at different times would be expected to yield different results.

**William Scott.**  Mr. Scott is a professional engineer and a certified hazardous materials manager.  His report is attached as Exhibit G.  His firm tested the trailer in January 2008.  Using diagrams and photographs of the trailer, he will explain in detail the methodology and results of the various rounds of testing performed on the Alexander trailer.  He will conclude by identifying the formaldehyde standards that the Alexander trailer exceeded.

Each of the four witnesses targeted by defendants will testify on very different areas.  Therefore, the motion should be denied.

Lastly, assuming that these four experts' opinions contain some overlap, the solution should not be to strike all four experts' testimony entirely.  The solution is to compel plaintiff to eliminate the overlap and offer only on expert on the overlapping issue.  Again, this decision is

premature at this point.  Defendants will have an opportunity to depose each of these witnesses and, after those depositions are completed, can challenge these experts in *Daubert* motions, or seek to limit the scope of their testimony through motions *in limine*.

**III.    PLAINTIFF IT NO MAKING A MOLD CLAIM (NEITHER ARE PLAINTIFF'S EXPERTS)**

Defendants ask the Court to strike certain experts because their opinions touch on issues not pled.  Remarkably, defendants go so far as to allege that "plaintiffs have injected theories entirely novel to this litigation less than four months before trial."  Plaintiff, however, is not introducing through experts anything new as a liability theory of this case (which was filed three and a half months ago).  More specifically, plaintiff is <u>not</u> asserting a mold exposure claim herein.  A mold exposure claim, in fact, is found nowhere in the pleadings, and simply because a few expert reports mention the word "mold" (which, as noted, may be relevant to formaldehyde off-gassing) does not constitute an expansion of the plaintiff case.  Again, this is something easily addressed by the Court at the *Daubert*/motion *in limine* stage or at trial; as such, the motion is premature.

Federal law is well-settled that pleadings must be sufficient to give the opposing party fair notice of the claim being asserted.  *See EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA,* 467 F.3d 466, 470 (5th Cir. 2006).  The unavoidable corollary to this principle is that a party's pleadings need *not* give notice of a claim the party is *not* asserting.  *Id.*  Because defendants' motion is based on the completely erroneous assumption that plaintiffs' experts are being offered to support a cause of action for mold-related injuries, the motion should be denied.  Further, even if plaintiff was trying to "sneak in" a mold claim through cleverly disguised expert

-16-

reports, the remedy would not be to strike the entire expert report, but to strike only those portions expressly dealing with mold.

A discussion of each of the complained-of experts follows:

**Ervin Ritter.**  Defendants ask to strike Mr. Ritter although they do not even allege that his report mentions mold.  Indeed, the word "mold" appears nowhere in his report.  Defendants accuse him only of opining that air leakage into the trailers contributes to elevated moisture levels.  Mr. Ritter's statement is relevant to the design and manufacturing defects that allowed dangerous levels of formaldehyde to be emitted, which is undoubtedly pled.

In a completely separate argument, defendants allege that (presumably all of) Mr. Ritter's opinions are unreliable because the trailer had been sitting in a field for a year when he inspected it.  Again, that issue is best addressed at the *Daubert* stage, or more appropriately through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," not at this stage.

**Lila Laux.**  Defendants next accuse Dr. Lila Laux of using the word "mold," which she used only once in her twelve-page, single-spaced report.  Mold was mentioned in the background section of her report, but importantly, not at all in any of her eighteen "Opinions."  Her statement merely mentions that certain conditions that foster mold also contribute to increased emission rates of formaldehyde.  This is not a sneaky "injection" of a mold claim into this lawsuit.  All of her opinions relate to the presence of formaldehyde in the Alexander trailer.

**Janet Barnes, M.D.**  Dr. Barnes is Christopher Cooper's treating physician.  Dr. Barnes' report was clearly based on the medical records in her possession and information she obtained from Christopher and his mother.  The word "mould" [*sic*] appears only once in the narrative, in

-17-

a prepositional phrase of a sentence describing Christopher's living conditions.[12]  From both the title and the text of her report, there can be no question that formaldehyde exposure, not exposure to mold, was the only focus of Dr. Barnes' report.

**Karin Pacheco, M.D.**  Defendants erroneously claimed that Dr. Karin Pacheco's report discusses mold.  It does not.  Dr. Pacheco is a pulmonologist who examined Christopher.  Her report includes Christopher's medical history, noting, as does any good medical history, the presence or absence of risk factors potentially related to the patient's condition.  Since Christopher has been diagnosed with asthma, mold is one of the risk factors for his condition.[13] The discussion section of her report, however, evaluates only formaldehyde off-gassing as a medically plausible cause of the exacerbation of Christopher's asthma, an issue defendants ahve clearly been given notice of.

**Paul Lagrange.**  Defendants complain that Mr. Lagrange is guilty of including two sentences (in a seventeen-page report) that mention mold.  Mr. Lagrange conducted air duct testing of the Alexander trailer to determine whether there was air duct leakage.  His sentences concerning mold were part of his explanation of why air duct leakage can be harmful to the health of the inhabitants of a structure.  This topic relates directly to the issues of design and manufacturing defect, and to physical injuries, both of which have been pled with specificity.

**Gary Bunzer.**  Mr. Bunzer's testimony is regarding the proper set-up, preventative maintenance, and consequential repairs of recreational vehicles such as that occupied by plaintiff.

---

[12]The phrase also included the terms "mildew" and "dust mites," neither of which drew an objection from defendants, despite the fact that they do not appear in plaintiffs' Complaint.

[13]In addition to mold, the report notes the presence or absence of other risk factors, including pets, living with smokers, mildew, and family history.

The paragraph in which the word "mold" is mentioned identifies water intrusion as a maintenance problem that should be identified and fixed.  One reason Mr. Bunzer gives for rectifying this problem is to "minimize structural damage, deterioration and the proliferation of mold."  The other reason given is because water intrusion also "exasperates [*sic*] the off-gassing of formaldehyde...".

**Alexis Mallet, Jr.**  The word "mold' does not appear anywhere in the one hundred and one (101) pages of Mr. Mallet's report.  Rather than accusing him of using the word "mold," defendants fault Mr. Mallet for including the phrase "hot, humid and contaminated air."  Of course, it should be noted that the sentence immediately following the one containing this phrase says, "the hot, moist air contributed to the release of formaldehyde from the unsealed backs and edges of the materials containing formaldehyde."

In sum, plaintiffs' experts have, at most, mentioned mold in the context of describing the living conditions in plaintiff's trailer, and because some of the same factors which promote mold also increase the rate of formaldehyde off-gassing.  Plaintiff intends to prosecute a formaldehyde exposure case, not one dealing with mold exposure.  Plaintiff's experts have evidenced no intent to testify to anything other than formaldehyde-related issues.  Defendants' disingenuous argument simply cannot be taken seriously.

Even assuming for argument's sake that these experts uttered the word "mold" or used terms that defense counsel may think means "mold," the appropriate relief would be to exclude any expert opinions to the effect that mold caused plaintiff's injuries, rather than to exclude all expert opinions in instances where a report makes reference to mold.

## CONCLUSION AND PRAYER

Defendants' motion is premature, overbroad and, by and large, devoid of any legal

authority or factual support.  For those reasons and the reasons stated in this response, plaintiff

respectfully requests that the motion be denied.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:   504/522-2304
       Facsimile:    504/528-9973
       gmeunier@gainsben.com

       s/Justin I. Woods
       JUSTIN I. WOODS, #24713
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:   504/522-2304
       Facsimile:    504/528-9973
       jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
       ANTHONY BUZBEE, Texas # 24001820
       RAUL BENCOMO, #2932
       FRANK D'AMICO, JR., #17519
       MATT MORELAND, #24567
       LINDA NELSON, #9938
       MIKAL C. WATTS, Texas #20981820

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
