# Structural Condition Assessment

## For

## FEMA Travel Trailer
## Lottie, Louisiana

Prepared for

**First General Services of the South**

Prepared by:


Freyou, Moore and Associates, Inc.
*Civil Engineering & Land Surveying*

**Charles David Moore, PE, PLS**
1833 East Main Street
New Iberia, LA 70560

Phone: (337) 365-9535
FAX: (337) 367-8131

*[Seal: STATE OF LOUISIANA, CHARLES D. MOORE, License No. 24627, PROFESSIONAL ENGINEER; signed 5/18/09]*

ALX-EXP-52-000001

EXHIBIT B

1. INTRODUCTION

A visual inspection of a FEMA travel trailer in Lottie, Louisiana, was performed on May 7, 2009. This inspection was conducted to provide a structural condition assessment of the trailer for First General Services of the South as part of litigation procedings. This report provides the details of the inspection and the conclusions and recommendations resulting from the visit.

1.1. PURPOSE – The purpose of this structural condition assessment is to form a portion of litigation proceedings regarding the trailer.

1.2. SCOPE OF INVESTIGATION AND ASSESSMENT – The scope of work was to provide visual observations of the structural systems present and their current condition. Basic floor plans and elevations were prepared by others involved in the assessment of the trailer. Conditions at the time of the investigation were documented with the use of digital photography by others.

No testing of the structural materials present has been performed to date.

This investigation does not cover issues related to either electrical or mechanical systems in the building. These systems are being reviewed by qualified personnel as part of the overall assessment of the trailer.

2. DESCRIPTION OF STRUCTURE

2.1. GENERAL – The trailer is a recreational vehicle manufactured by Gulf Stream Coach, Inc. on December 13, 2004. It is approximately 8'x28'4" in plan dimension. The manufacturer's tag on the trailer identifies it as serial number 57-5-T-CVDH-21783 and vehicle ID number 1NL1GTR2551021783. The unit also has a FEMA ID Number of 1041407.

The trailer is constructed with two longitudinal steel beams. These beams are connected with cross members of light gage steel "C" and "Z" sections. The two beams are also connected to two rectangular steel tubes in a vee configuration to form the tongue of the trailer. These beams are mounted on two axles to carry the load during transport.

The shell of the trailer is constructed with wall studs of nominal 2"x2" members at 16" on center. The studs are infilled with batt insulation. The interior faces of the walls are covered with paneling and the exterior is covered with metal sheeting. This differs from typical manufactured homes and other normal residential units in that the walls would be nominal 2"x4" members at either 16" or 24" on center. The additional depth of these members increases the capability of the walls to resist wind loading. The ceiling/roof structure and the floor structure was concealed and could not be observed for the actual construction members used.

2.2. HISTORY – This travel trailer was manufactured for FEMA to be utilized as temporary housing after a natural disaster. As noted above, it was manufactured on December 13, 2004 and was put into service in May 2006 in the New Orleans area for people who needed housing after hurricane damage. This unit was subsequently temporarily moved to allow for demolition of the damaged permanent housing and reinstalled in July 2007. The unit is now in storage at a FEMA site located in Lottie, Louisiana.

3. COLLECTED DATA

   3.1. AVAILABLE DRAWINGS – Drawings utilized to formulate this assessment report included roof framing drawings from Gulf Stream Coach, Inc. Also, basic floor plans, elevations, mechanical and electrical plans were produced from dimensions measured during the on-site investigation by others.

   3.2. PHOTOGRAPHS – Digital photography was used to document existing conditions. These photographs were taken by others during the on-site investigation. Other photographs used included FEMA documentation taken after the unit was re-installed in July 2007 and also the current condition of the site where the unit was in service.

   3.3. TECHNICAL DOCUMENTS – Several documents were used in the preparation of this assessment. A copy of the Gulf Stream Coach, Inc. Owner's Manual for travel trailers and fifth wheels was obtained from the occupant of the trailer, Alana Alexander. Also, a document entitled "Exhibit 7 – Travel Trailer Installation" that was reported to be a portion of the Fluor contract, was reviewed.

   Other technical documents utilized included general engineering reference manuals. These were "The Manual of Steel Construction" from the American Institute of Steel Construction, "The Timber Construction Manual" from the American Institute of Timber Construction, and "ASCE 7-05 – Minimum Design Loads for Buildings and Other Structures". Excerpts from a HUD document concerning specifications for manufactured housing (Part 3280) were also consulted.

4. DISCUSSION OF SITE VISIT

   4.1. OVERVIEW – The on-site investigation of this travel trailer occurred on May 7, 2009. This assessment focuses on the structural aspects of the travel trailer. Other personnel also were on-site on May 6, 2009 as part of the overall investigation of the unit to observe the existing condition of the mechanical and electrical features of the unit.

   4.2. OBSERVATIONS AND THEIR SIGNIFICANCE

      4.2.1. General, Exterior – This unit is currently in a FEMA storage lot located in Lottie, Louisiana, along with other similar travel trailer units. It is sitting on its wheels with an attached jack stand supporting the unit at the tongue of the trailer.

It is not leveled and blocked in its current position. The unit appears to be intact with no major structural damage visible.

4.2.2. General, Interior – The interior of the unit is also basically intact, though significantly a couple of areas have the interior wall paneling separated from the wall. These areas appear to have been repaired by utilizing duct tape at the seam in the paneling. One of these pieces of paneling in the front bedroom could be pulled away to reveal the underlying structure. This structure appears to be nominal 2"x2" studs at 16" on center. The cavity of the wall was filled with batt insulation. The top and bottom of the wall could not be clearly viewed to note the elements of construction used. A similar separation of the paneling was noted in the bathroom of the unit.

4.2.3. Trailer Frame – The frame of the trailer is constructed with steel elements. The main load carrying members are 6" deep steel "I" beams. These beams have 17/8" flanges that are approximately 1/8" thick. There are two of these beams running the total length of the trailer. They are positioned approximately 5'9" apart. The longitudinal beams have lateral bracing consisting of 5" "Z" shaped light gage steel members. The lateral braces were placed at approximately 4'2" spacing.

The tongue of the trailer consisted of rectangular steel tube sections that were connected to the longitudinal beams. The trailer was supported on 2 axles for transporting the unit.

The trailer was fitted with four scissor jacks located on the longitudinal beams a few feet from each corner of the unit. The front jacks were located approximately 4' from the front edge of the trailer. The rear jacks were mounted approximately 2'6" from the rear of the unit. Some damage was noted to the jacks in the form of the jack being bent. This damage could have occurred during improper jacking processes or in transit of the unit. A warning sticker was observed on each of the jacks that said do not lift tires off of the ground with these jacks. The sticker warned that vehicle frame damage and door jamb damage could occur.

5. ANALYSIS

5.1. LOAD COMPUTATION ANALYSIS – The manufacturer's tag for the trailer indicated a GVWR of 6200 lb and a GAWR of 3500 lb for each axle. GVWR is defined as the maximum permissible weight of the vehicle, including cargo, all options and water. GAWR is defined as the allowable weight, including cargo and passengers, which can be safely supported by a specified axle.

The HUD document consulted indicated that the design floor load for a trailer is a minimum of 3 pounds per square foot. This differs from standard residential loads specified in current codes. ASCE 7 provides for minimum floor live loads in residential

units of 30 pounds per square foot in sleeping areas and 40 pounds per square foot in other areas.

The load carrying capacity of the trailer frame beams was analyzed using steel properties of standard carbon steel complying with ASTM A-36. This steel is common for most structural steel shapes readily available throughout the country. Analysis of the beams also assumed that the trailer was leveled and blocked in accordance with the Fluor contract documents, including the use of six (6) concrete block piers with three piers evenly spaced along each side. Photographs available from the site after the re-installation in July 2007 appear to meet this type of configuration. However, the front left pier appears to be leaning slightly and not vertically installed. The leaning pier could have occurred either in the initial installation, by shifting of the load from the trailer, or settlement of the foundation pad. In any case, the leaning pier would create unbalanced loading of the supporting frame and shell framing. This unbalanced load could show up in damages to the interior and/or exterior finishes (paneling, sheeting, etc.). The piers appear to be installed over a concrete driveway.

Assuming that the GAWR of 7000 pounds total weight is uniformly distributed to each of the two frame beams, and that they are supported on piers as outlined in the installation guidelines, the beams are capable of supporting the published weight of the unit. The beams should be capable of carrying 51 pounds per square foot and the published GAWR is approximately 31 pounds per square foot.

However, if you substitute the GVWR (representing the dead loads of the trailer) and add a normal residential loading of 30 – 40 pounds per square foot for the occupant live load, the beams would be overloaded by approximately 112% - 132%. This overloading condition could probably be met by these beams, but would be utilizing the normal factor of safety provided for in steel design. These loads would be the level of loading required by typical residential construction in accordance with ASCE 7 that is referenced by the majority of common building codes in effect in the United States.

The beams would have a maximum deflection of approximately 0.32" under full allowable load. The GAWR would be expected to deflect a total of approximately 0.19". Both of these deflection calculations are below the normal allowable deflection of 0.46" (defined as 1/360 of the beam length). Using the normal residential loading produces a maximum deflection of approximately 0.42", which still meets the deflection limits, but could produce an overloaded condition as noted above.

If the unit were not blocked in accordance with the Fluor installation guidelines, the above loading discussion would be significantly changed. For example, if the unit was only supported at the corners with no middle support pier or tires, the beam carrying capacity would be reduced to approximately 13 pounds per square foot. Using the published GAWR, these beams would then be overloaded by approximately 238% and would probably exhibit severe permanent distortions. Since these type of severe

permanent distortions of the structural beams were not evident, there were probably more supports than just the four corners.

The consequences would be somewhat less if the middle pier were to be moved forward or backward creating uneven spaces between the piers. If the piers were placed with uneven spacing, the loading would be unbalanced and may cause one section of the supporting structure to become overloaded and deflect more than other sections of the trailer. This unbalanced loading of the supporting structure could cause damage to the interior finishes of the unit, such as separations in the paneling that occurred in the bedroom and bathroom. The differential deflections in the supporting structure could also cause the shell construction to warp and deflect causing air and/or water leaks through the deformations.

The blocking and anchoring procedures also present other problems with the trailer. These procedures only address the stability of the base trailer frame. In other words, the base trailer frame (steel under carriage of the unit) may be structurally sound, but the connections of the shell of the living unit also must be structurally sound to hold it to the steel frame. We have not been able to ascertain the exact configuration of these connections, because they are covered with the finishes of the unit. Since the structure that is visible in the wall is composed of smaller, lighter construction than typical residential construction, it can be extrapolated that the connections of these elements would be smaller and lighter also.

5.2. JACKING – Jacking of the trailer would probably occur without the unit fully loaded (no passengers or other long term cargo). However, the jacks would cause a large differential in the loads applied to the beams if the process were done improperly. This danger is prominently noted on the warning stickers on each jack as discussed above. In addition to frame damage and door jamb damage, other damage could also occur, including damage to the interior finishes (wall paneling, cabinet doors, etc). The separation of the paneling noted in the bathroom and bedroom areas are consistent with the effects of uneven movement of the trailer that would occur with improper jacking techniques.

6. CONCLUSIONS – Based upon my observations at the site, photographs submitted, and technical documents, this trailer appears to be constructed in accordance with accepted standards and practices for travel trailers. However, considering the use of this trailer for long term occupancy, the trailer appears to be inadequate in construction.

First, the structural frame supporting the unit is not designed for the full load of a residence as provided for in ASCE 7. This standard is used for normal load requirements for buildings and other structures, including residential occupancies. Normally, travel trailers are designed for a short term occupancy, which is due to smaller number of people, less cargo, and overall less load requirements for weekend and/or overnight use. Longer term occupancy results in every day use that includes more people (family and friends), more cargo (furniture, clothing, etc.). Emergency use, such as hurricane disaster, can be considered a hybrid of short and

long term occupancies. The initial occupancy will probably be lightly loaded due to the extreme need that the family has lost most of their possessions due to the disaster. However, as time proceeds, they will move into a more normal every day pattern of living.

There is also concern due to deflections in the trailer framing. As stated in the body of this report, the deflections were calculated to be within normal allowable limits, even for normal residential loading. However, the primary structure of a normal residential building is composed of elements that can withstand these deflections of the supporting structure. As noted above, the walls (and presumably ceilings and floor structures) are constructed with wood elements much smaller than those normally found in residential construction. Therefore, these deflections in the supporting structure can lead to problems with connections between elements, which will affect the performance of air and water resistant joints.

In addition, the lighter structural members of the walls, ceiling/roof, and floor will not withstand normal wind loading requirements for residential structures. While this unit did not need to withstand a large hurricane event while occupied, it did have to withstand smaller storms that consist of high winds and rain. The lighter structure, while strong enough to stand up to the winds experienced, cannot perform like normal residential construction by providing a rigid envelope of protection from the wind and rain. The lighter structure will deflect on it's on under normal storm events, which will cause additional problems with the performance of air and water resistant joints.

The blocking of the unit also leads to several questions regarding the performance of the trailer. As noted, the photos provided after the unit was re-installed in July 2007 indicate that the unit was blocked up in accordance with the Fluor installation document. However, nothing is known as to the original installation. Any deviations from the blocking requirements would cause problems with the load carrying capacity of the trailer. Also, even though we were unable to analyze the structural capacity of the entire shell of the living unit, it is a concern that blocking and anchoring of the trailer frame would cause problems in structure of the shell.

Due to these issues, the use of travel trailers for long term residential occupancy cannot be expected to perform adequately. The structure cannot perform to normal air and water resistance requirements under these types of loading.