UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION:  N(5) |
| | * | |
| This Document Relates to: | * | |
| *Charlie Age, et al. v.* | * | JUDGE: ENGELHARDT |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | |
| | * | MAG: CHASEZ |

*************************************************************************

**MEMORANDUM IN SUPPORT OF GULF STREAM COACH, INC.'S
MOTION *IN LIMINE* TO EXCLUDE
EXPERT TESTIMONY OF LILA F. LAUX, PH.D.**

**MAY IT PLEASE THE COURT:**

Gulf Stream Coach, Inc. respectfully submits the following Memorandum in Support of

its Motion *in Limine* to Exclude Expert Testimony of Lila F. Laux, Ph.D.

**I.      BACKGROUND**

**A.      Nature of Case**

This Multi-District Litigation is the consolidation of over one hundred-twenty state and

federal toxic tort suits in which thousands of named plaintiffs claim to have inhabited emergency

housing units ("EHUs") that were provided to them by the Federal Emergency Management

Agency ("FEMA") as a result of the alleged uninhabitability of their residences due to

Hurricanes Katrina and Rita.  Following denial of class certification, several plaintiffs, including

bellwether plaintiffs Alana Alexander and Christopher Cooper (hereinafter collectively referred

to as "Alexander"), filed suit against Gulf Stream Coach, Inc., alleging that it manufactured the

EHUs used by the specific plaintiffs.  (*Age, et al v. Gulf Stream Coach, Inc., et al*, 09-2892, Doc.

No. 1).  Moreover, plaintiffs have named as defendants the United States Government through

FEMA and Fluor Enterprises, Inc. (*Age,* Doc. No. 1), and plaintiffs seek recovery for alleged physical and mental pain and suffering, physical impairments and disability, medical expenses, loss of earnings capacity, loss of enjoyment and quality of life, loss of consortium, travel expenses, out-of-pocket expenses, and the loss of use and/or opportunity to use safe and adequate shelter allegedly resulting from the purported exposure to formaldehyde. (*Age*, Doc. No. 1, ¶ 117).   Specifically, the *Age* plaintiffs claim exposure to the allegedly dangerous levels of formaldehyde (or threat thereof) in those EHUs. (*Age*, Doc. No. 1, at ¶ 23).   Alexander itemized the theories of recovery against Gulf Stream Coach, Inc., in part, as follows:

1.      Failing to design the EHU so as to not emit allegedly dangerous levels of formaldehyde;

2.      Manufacturing an allegedly unreasonably dangerous EHU;

3.      Providing an EHU that did not conform to express warranties allegedly made by Gulf Stream Coach, Inc.; and

4.      Failing to warn of the allegedly excessive levels of emissions of formaldehyde and hazards associated with the allegedly excessive levels of formaldehyde emissions in the EHU.

(*Age*, Doc. No. 1, at ¶ 102).

### B.      Alexander's Human Factors/Warnings Expert – Lila Laux, Ph.D.

Recently, Alexander provided twenty (20) written expert reports, including the report of Lila Laux, Ph.D. ("Laux") as a human factors/warnings expert in this case.  Exhibit "A," Laux's May 11, 2009 Report.[1]  Laux is the sole principal in Human Factors Consulting, a private legal consulting firm.    Exhibit "B," Laux *curriculum vitae* and Exhibit "C,"

---

[1]      Laux defines the specialization of Human [Factors] Engineering as "focused on creating and maintaining a safe and efficient environment for people in that environment and assuring that people can safely and effectively interact with any hazards in that environment."  Exhibit "A", at p. 3.

Deposition of Laux dated 5/28/09, pp. 14-15.[2]   Laux was retained in this matter to "…evaluate the warnings and other kinds of hazard information that were provided by Gulf Stream to Ms. Alexander." *Id*. at p. 297.

This case is Laux's first professional consultation regarding travel trailers as a system, although Laux testified that she has consulted on warnings for a component of travel trailers (a stove). *Id*. at pp. 27-28.  Laux has no formal education in the area of travel trailer design or manufacture.  *Id*. at pp. 83-84.  Laux has never designed a warning for a travel trailer (with the exception of possibly a warning for the aforementioned stove, which has not been provided to Gulf Stream Coach, Inc.).  *Id*. at p. 84.  Laux has never drafted an Owner's Manual for a travel trailer.  *Id*.  Indeed, Laux has never even created an owner's manual warning that is in commercial use.  *Id*. at pp. 24-25.  Moreover, Laux has never tested the effectiveness of any warnings that are contained in travel trailers or the effectiveness of any information provided in any travel trailer manufacturer's owner's manual.  *Id*. at p. 30.

Laux is offering not sound expertise but, rather, pure advocacy.  Gulf Stream Coach, Inc. moves herein to exclude many, if not all, of Laux's opinions as they are of no assistance or relevance to the trier of fact, are well beyond her qualifications and/or field of expertise and/or are not based upon sound and reliable methodology.  A brief overview of her numerous opinions is set forth in the following section and discussion of the grounds for exclusion of them follows.

---

[2]     The final transcript of Laux's deposition has not yet been completed; accordingly, this Memorandum will be supplemented by leave of Court to furnish the final transcript upon receipt of same.

### C.      Laux's Opinions

Laux sets forth **twenty-two (22) opinions** in her report for this case.  Exhibit "A." Laux offers the opinion that the 2004 Gulf Stream Coach, Inc. EHU used by Alexander following Hurricane Katrina is unreasonably dangerous for its occupants because it "could reasonably be expected to create elevated levels of formaldehyde gas in the interior of the trailer".  Exhibit "A", at p. 9.  Further, she offers the opinion that the EHU lacked appropriate information about the "hazard of formaldehyde and its dangers, especially the danger to children and people with respiratory problems such as asthma." *Id*. at p. 11.  Laux's opinions frequently incorporate medical conclusions beyond her expertise.  For example, she opines:

> Ms[.] Alexander was not informed that exposure to the fumes she could smell could cause serious, potentially life-threatening and long-term health problems for those who breathed the fumes, especially to children and in particular children with asthma and other respiratory problems.

> *Id*. at p. 9.

Additionally, implicit in most of Laux's opinions is unwavering acceptance of her conclusion that the level of formaldehyde emissions in Alexander's EHU could ***possibly***, rather than did, cause a health hazard.  For example, she opines:

> Ms[.] Alexander was not informed that even low levels of formaldehyde exposure, if chronic, could cause serious health problems in children and adults with respiratory problems and/or who were sensitive to formaldehyde.

> *Id*. at p. 9.

Extrapolating from her conclusion that the Alexander travel trailer, as designed, allegedly created an unreasonably dangerous condition by having the potential to emit purportedly excessive levels of formaldehyde, Laux opines "The lack of appropriate information on the trailer rendered the trailer unreasonably dangerous."  *Id*. at p. 11.

4

A summary of Laux's opinions in this case, based on both her written report and her deposition testimony, is that every living quarter in the world with the ***potential*** to expose sensitive individuals to formaldehyde levels in excess of .003 part per million (regardless of whether a site built home, apartment, condominium, manufactured house or travel trailer) requires that the occupant be informed of the alleged hazard through the use of an undefined "adequate" warning.  Exhibit "C", at pp. 181-82.

**D.      Basis of Laux's Opinions**

In formulating her conclusions, Laux testified that she undertook a review of materials and conducted a search for materials relevant to formaldehyde and travel trailers.  Exhibit "C", at pp. 297-299. Laux testified that the documents that she reviewed were identified in her May 11, 2009 Report.  *Id*. at p. 45.

Gulf Stream Coach, Inc. respectfully suggests that the Court's *Daubert* inquiry be motivated more by examining the methods Laux failed to employ as opposed to the methods she did employ. Laux testified that she reviewed the literature regarding formaldehyde and then offered the unqualified opinion that chronic exposure to doses as low as .003 ppm were hazardous to sensitive individuals, thereby requiring a warning.  *Id*. at pp. 179-82.  This notwithstanding, Laux (a) did not conduct any testing of the travel trailer, (b) did not conduct any testing of any proposed warnings or instructions relevant to her opinions rendered in this case, (c) failed to offer any evaluation of media coverage concerning alleged formaldehyde emissions in EHUs following Hurricane Katrina despite acknowledging the relevance of testing whether some other alternative system would have effectively communicated information on hazards, (d) did not conduct or review any studies regarding the efficacy of formaldehyde information provided to Alexander by any other source, including the

United States Government, (e) did not ever inspect the Alexander EHU, (f) has no education or training regarding EHU design or wood composite products, (g) has not conducted a comparative analysis of EHUs across model lines and (h) has not conducted any tests regarding formaldehyde levels in the Alexander EHU.   *Id.* at pp. 30, 83-84, 88-91, 202-204, 241-42, 244.

Lila F. Laux's, Ph.D.'s opinions and testimony should be excluded under Federal Rule of Evidence 702 (and its interpretative jurisprudence) because the opinions are not relevant and do not assist the trier-of-fact, she lacks the qualification necessary to render such opinions and the opinions are not based upon reliable methodology.

## II.      ADMISSIBILITY OF EXPERT OPINIONS

### A.      Lila F. Laux's Opinions Offer No Assistance To The Trier-of-Fact

The most fundamental inquiry regarding the admissibility of an expert's opinion is whether it will provide assistance to the trier-of-fact.  Besides examining a proffered expert's qualifications, the trial judge has a gate keeping responsibility to ensure that expert evidence is *relevant* before admitting it.  *Daubert v. Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-91, 113 S. Ct. 2786, 2795, 125 L. Ed. 469 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999).   The United States Supreme Court instructs:

> Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." This condition goes primarily to relevance. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." 3 Weinstein & Berger ¶ 702[02], p. 702-18. See also *United States v. Downing*, 753 F.2d 1224, 1242 (CA3 1985)("An additional consideration under Rule 702-and another aspect of relevancy-is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute"). The consideration has been aptly described by Judge Becker as one of "fit." *Ibid.* "Fit" is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. See Starrs, *Frye v. United States* Restructured and Revitalized: A Proposal to Amend Federal Rules of Evidence Rule 702, 26 Jurimetrics J. 249, 258 (1986).

*Daubert*, 509 U.S. at 591.

Here, by Lila Laux's own admission, her testimony will not assist the trier-of-fact and, therefore, is inadmissible as irrelevant.  Exhibit "C", at pp. 129-31.  Laux was deposed on May 29, 2009 and the basis of her opinions was explored.  Regarding her conclusions she testified:

> A.      …As I said, you know, I'm making this assumption.  **If I'm wrong, that there was no off-gassing in these travel trailers or that the level of off-gassing was insignificant, then so be it.**

> Q.      …So you've come to the conclusion that this is a hazard based upon the information that was provided to you by some additional experts, and what you've reviewed.   But as you've just indicated, if, through these proceedings it's determined that the level that existed in this specific unit wasn't a hazard, then your opinions are wrong?

> MR. PINEDO:  Objection, form.

> A.      It would be irrelevant if there's -- if it turns out that there was no formaldehyde exposure that caused Chris Cooper to develop additional symptoms or that posed any threat to anybody in these -- in any of these travel trailers, **then my opinion would be irrelevant.**

> Q.      (By Mr. Glass)  Well, I want you to focus just on the specific trailer at issue here, which is the unit that was used by Ms. Alexander and her son Chris.   If it's determined that the level of formaldehyde that was in this trailer is such that it didn't constitute a hazard, then, as you said, your opinions regarding warning irrelevant.  Is that accurate?

> A.      I suppose that if you -- I mean, the weight of the evidence, he was ill, his doctors believe that it was caused by formaldehyde exposure.  So, you know, I have a logical reason for making that assumption.

> Q.      Okay.

> A.      It's not like I plucked it out of thin air.

*Id*. at pp. 129-31. (emphasis added).

When addressing Gulf Stream Coach, Inc.'s duty to warn, Laux further confirmed:

> Q.     And, of course, that presupposes that there's a determination that the levels of formaldehyde that can be present in these trailers reaches a level that would be considered unreasonably dangerous under the Louisiana law?
>
> A.     Over an -- over an extended period of time.  mean, that --
>
> Q.     I understand.
>
> A.     -- this is the issue that we're talking about here.

*Id*. at p. 208.

By Laux's own admission, for the trier-of-fact to even get to her opinions there must be a determination that the EHU used by Alexander contained an unreasonably dangerous condition (i.e. excessive formaldehyde emissions).  If the trier-of-fact reaches this conclusion, then Laux opinions are unnecessary, as the Plaintiffs will have established that someone created the unreasonably dangerous condition in the EHU.  If the trier-of-fact concludes that the Alexander EHU did not contain an unreasonably dangerous condition, then Laux's opinions are irrelevant.  Either way, her opinions will not assist the trier-of-fact.  At best, her testimony will be cumulative of other experts, and it will simply prolong the trial of this matter.  To quote Laux, her opinions are "irrelevant" and must be excluded under Rule 702.

Fundamentally, her opinions regarding failure to warn are so inextricably intertwined with the alleged design/construction defect theories so as to render her testimony unnecessarily cumulative.  In other words, for her opinions to have any usefulness, it must be established that the formaldehyde emissions in Alexander's EHU constituted an unreasonably dangerous condition.  If that is established, Alexander necessarily establishes that someone created the unreasonably dangerous condition.  If Plaintiffs fail to prove that the levels of formaldehyde contained in the Alexander EHU constitute an unreasonably dangerous condition, then Gulf Stream Coach, Inc. has no duty to warn Alexander.  Laux's opinions are

**entirely** dependent on the blind acceptance of the unproved presupposition that an unreasonably dangerous condition exists, and if such a condition does not exist, her opinions are erroneous (by her own admission).  Her opinions amount to no more than a moving target, the relevancy and usefulness of which is rendered moot, or even non-existent, based upon findings of liability that must be made by the trier of fact.

### B.     Lila F. Laux, Ph.D. Lacks Qualifications to Support Her Opinions

(1).    Qualification of the expert is required for each opinion proffered.

A district court is to allow the submission of expert testimony only if the expert is qualified to testify by virtue of his "knowledge, skill, experience, training, or education."  Fed. Rule of Evid. 702.  A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.  *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1998).  The qualification of a witness as an expert, separate and apart from the witness' opinion, is a determination that is a discreet, independent and important requirement in considering the admissibility of an expert's testimony.  *See U.S. v. Frazier*, 387 F.3d 1244 (11th Cir. 2004).

This analysis, as well as that pertaining to the reliability of an expert's opinion, is especially sensitive in cases "where the plaintiff claims that exposure to a toxic substance caused his injury, [because a] jury may blindly accept an expert's opinion that conforms with their underlying fears of toxic substances without carefully understanding or examining the basis for that opinion".  *See O'Conner The Commonwealth Edison Co.*, 807 F.Supp. 1376, 1391(C.D.Ill. 1992).  *See also Whiting v. Boston Edison Co.*, 891 F.Supp. 12, 24 (D. Mass. 1995) (excluding proffered medical expert's opinion based on lack of knowledge and experience in analyzing causation of injury by radiation).  Indeed, it has been held that even a toxicologist is not qualified

to offer an expert opinion regarding a chemical's ability to cause alleged damages where the toxicologist is not a licensed medical doctor and lacks experience in the study of exposures to the subject chemical. *See Wintz by and through Wintz v. Northrop Corp.*, 110 F.3d 508, 514 (7th Cir. 1997) (excluding expert's opinion based upon lack of qualification where the proffered toxicologist was not a physician and, despite acquiring generalized knowledge of the chemical at issue [bromide], the expert did not have experience in analyzing causation of injury by way of exposure to the chemical).

Courts have routinely refused to admit a proffered expert's testimony where the proffered expert, even despite a generalized or professed knowledge of issues arguably relevant to the subject matter, nevertheless lacked experience with the specific nature of the claims being litigated. *See e.g. Kassim v. City of Schenectady*, 415 F.3d 246 (2nd Cir. 2005) (lack of knowledge of Arabic translation); *Adams v. Teck Cominco Alaska, Inc.*, 399 F.Supp.2d 1031 (D. Alaska 2005) (expert lacked experience with total dissolved solids technology at issue); *Morales v. E.D. Etnyre & Co.*, 382 F.Supp.2d 1252 (D.N.M. 2005) (lack of experience in distribution, sales and marketing practices); *In Re: Rezulin Products Liability Litigation*, 309 F.Supp.2d 531 (S.D.N.Y. 2004) (expert's opinion not based on qualification or experience but on subjective views of ethical standards at issue); *Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003) (expert's opinion on business valuation excluded where expert had never performed a business valuation); *Montefiore Medical Center v. American Protection Ins. Co.*, 2003 WL 2110 8232 (S.D.N.Y. 2003) (expert lacked specific experience with building deterioration issues despite generalized expertise in field of construction) (attached hereto as Exhibit "D"); and *Teska v. Potlatch Corp.*, 184 F.Supp.2d 913 (D.Minn. 2002) (lack of current knowledge and experience with respect to crane operation).

(2).   Laux lacks qualifications to render numerous opinions proferred.

Laux is not qualified to render expert opinions regarding the design of the 2004 Gulf Stream Coach, Inc. trailer or the claimants' alleged exposure to formaldehyde and resultant damages therefrom.  Laux is an Industrial Psychologist.  Exhibit "A."  She is not a medical doctor, toxicologist, industrial hygienist, engineer or an epidemiologist. Exhibit "C," at pp. 80-81.  Rather, Laux affirmatively states that she routinely relies on information from these specialists to design and/or evaluate systems that include humans as an element.  Exhibit "A", at p. 3; Exhibit "C", at p. 79.

As such, any opinion of Laux that the design of the 2004 EHU results in excessive (i.e. "unreasonably dangerous") formaldehyde emissions should be excluded.  Likewise, any opinions held by Laux that the alleged excessive formaldehyde emissions in the 2004 EHU cause a significant safety hazard for occupants, especially children and people with respiratory problems, should also be excluded.  Laux should be barred from proffering any opinion testimony that the 2004 EHU is defectively designed because some component parts may emit formaldehyde.  Laux is simply not qualified, as an industrial psychologist, to render opinions regarding EHU construction and design.

In addition, Laux does not provide citations for any of the twenty-two opinions in her report and those opinions beyond her expertise must be excluded.[3]  Laux was specifically asked to identify the source of many of her opinions incorporating conclusions beyond her expertise. She frequently responded that it was in her reliance material and that she would locate the source.  In light of the seven-hour time limit imposed on the deposition, Gulf Stream Coach, Inc. was unwilling to allow the unprepared witness to exhaust deposition time in an attempt to locate

---

[3]   The opinions that Gulf Stream Coach, Inc. contends are beyond Laux's expertise are the background information regarding formaldehyde on pages 4-5 of her report and her opinions contained in numbers 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 16, 17, 21 and 22 of her report.

the sources for her opinions.  Rather, an agreement was memorialized on the record that the

witness would provide the citations following a written request after the deposition:

> Q.      (By Mr. Glass)  Before we get started back up, I want to -- I'm going to lose track
> of the things that I've requested here, and I may have some additional things I
> want to request.  You're telling me, on any request for documentation that -- that I
> brought up, I need to shoot that to Chris, and then we'll work on getting that?
>
> A.      That's my understanding, that that's the appropriate way to do things.
>
> Q.      Okay.  Things -- just to make sure it's on the record and keeping track --
>
>   MR. GLASS:  And if you want to take note of it, Chris, because it'll be coming as soon
>                      as I can get it to you.
>
> Q.      (By Mr. Glass) -- I would like to see the article that you wrote on the MSDS that
> you provided to the ATS.
>
> A.      If I can get it.
>
> Q.      I understand.  The course material that you use up at University of Wisconsin,
> Madison.
>
> A.      Which year?  I've been doing it for 15 years, so there's 30.
>
> Q.      Your most recent --
>
> A.      Okay.
>
> Q.      -- course material.  The -- see, I've already forgotten some of it.
>
> A.      I'll have to check with them to make sure, because it's copyrighted by them, but I
> don't think there'll be any problem.
>
> Q.      Well, if you need me to do it in the form of subpoenas, so we can avoid any
> copyright issues, I'll do that, but --
>
> A.      I don't think that'll be necessary, but if so, I'll let you know.
>
> Q.      And then I think you mentioned that you drafted a prototype warning for a travel
> trailer, and I understand it involved the stove for --
>
> A.      It was for the stove.  I think I did.  I know I wrote a report, and I think I used it.

Q.      Well, I would -- if you've written a warning specific for that, I would like to see that as well.  Gosh, there was something else too.  It'll come back to me.  Oh, I know, it was -- it'll be the source materials for some of the medical opinions that I was asking you about.

MR. PINEDO:  If you could be specific on that, which medical opinions?[4]

MR. GLASS:  I -- I will -- I will point it out specifically to you.  But she indicated, I believe, that she didn't know, off the top of her head, but she could go back and look and see where they came from.  And I'll tell you exactly which opinions.

MR. PINEDO:  Okay.

Exhibit "C", at pp. 192-94.

Despite a subsequent written request for the source citations, Plaintiffs, trying to play a game of "gotcha" **denied** that they made the agreement memorialized above.  Plaintiffs refused to provide the sources of Laux's opinions that are admittedly outside of her expertise, arguing that Gulf Stream Coach, Inc. should have explored these opinions during the deposition.  Exhibit "E," e-mail.  Presumably, Laux is unable to supply the sources of her opinions, resulting in the Plaintiffs' breach of the agreement.[5]  Gulf Stream Coach, Inc. respectfully suggests that if an expert witness is unprepared or unable to cite to the sources of her opinions outside of her expertise that lack citations in the expert's written report, then the opinions are inherently unreliable and unable to be tested and should be excluded for that reason alone.  Moreover, if Laux refuses to indentify the sources of her medical opinions as agreed during the deposition, those opinions certainly should be excluded.

---

[4]      Even counsel for Plaintiffs appears to acknowledge that Laux is professing medical opinions.

[5]      The failure of an expert to provide authority upon which an opinion is based amounts to no more than an opinion devoid of scientific or other corroborative support and, thusly, is nothing more than unsupported speculation.

### C.      Laux's Opinions Are Not Based Upon Reliable Methodology

(1).      Expert's must apply reliable and accepted methodology.

Federal Rule of Evidence 702 provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Fed. R. Evid. 702.

In considering the admissibility of expert opinion and testimony, the trial judge must act as a gate-keeper to determine whether the expert's reasoning and methodology underlying the testimony is scientifically valid and whether that reasoning and methodology has been properly applied to the present case. *See Daubert*, 509 U.S. at 589, 593-595.  The general considerations guiding this role are: (a) whether the theory or technique can or has been tested; (b) whether the theory or technique has been subjected to peer review or publication; (c) the known or potential rate of error; (d) the existence and maintenance of standards and controls; and (e) whether the theory or technique is generally accepted by those who work in the field of expertise at issue. *Id. See also Moore v. Ashland Chemical, Inc.*, 151 F.3rd 269, 275-276 (5th Cir. 1998) (*en banc*).  The focus of the trial judge is to determine whether the testimony and opinions are not only relevant, but reliable. *See Daubert*, 509 U.S. at p. 589.

In addition to the guiding principles set forth in *Daubert*, other factors relevant to the consideration of whether an expert's testimony and opinions are sufficiently reliable so as to allow their admission are as follows: (1) whether the expert is proposing to testify about matters growing naturally and directly out of the expert's research conducted independent of the litigation or whether the expert has developed the opinion expressly for the purpose of testifying

in the litigation; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (3) whether the expert has adequately accounted for obvious alternative explanations; (4) whether the expert is being as careful as she would be in her regular professional work outside of her paid litigation consulting; and (5) whether the field of expertise claimed by the expert is known to reach reliable results consistent with the type of opinion the expert is giving. *See e.g. Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999); *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998) (*en banc)*; *Sheehan v. Daily Racing Form, Inc.*, 104 F. 3d 940, 942 (7th Cir. 1997); *Daubert v. Merrill Dow Pharmaceuticals, Inc.* 43 F.3d 1311, 1317 (9th Cir. 1995) (*Daubert II*); and *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994).

In *Daubert,* the Supreme Court instructed district courts to act as evidentiary "gatekeepers" to insure that only relevant and reliable expert testimony is submitted to the jury. *Id.* at 590-93. The court is charged with the responsibility of determining whether the evidence is relevant and reliable. To determine whether these twin benchmarks are met, the court is expected to make a preliminary assessment of whether the reasoning and methodology employed by the expert witness can be applied to the facts at issue in the case. *Daubert,* 509 U.S. at 592-93, *see also Black v. Food Lion,* 171 F.3d 308, 311 (5th Cir. 1999). Four non-exclusive "guideposts" are pertinent in assessing the reliability and validity of an expert's methodology: (1) whether the expert's testimony can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the known or potential rate of error has been explored; and (4) whether their exists a general acceptance of the theory or technique within the relevant scientific community. *See Daubert,* 509 U.S. at 592.

The court's "gatekeeping" obligation applies to all types of expert testimony, including the human factors engineering testimony specific to this case. *Kumho Tire,* 526 U.S. at 147, 119 S. Ct. at 1174 .  In *Kumho Tire,* the Court concluded that a district court, when faced with a proffer of technical expert testimony, may consider one or more of the enumerated factors listed in *Daubert,* if such an analysis will help determine that testimony's reliability. *Id.* at 152.  The focus of a trial court's gatekeeping function "must be solely on principles and methodology, not on the conclusions that they generate."  *Daubert,* 509 U.S. at 595.  The burden lies with the proponent of the expert to prove by a preponderance of the evidence that the testimony is reliable.  *Moore v. Ashland Pharmaceuticals,* 151 F.3d 269, 276 (5th Cir. 1998). The trial court's assessment is governed by Rule 104(a).  *See* Fed. R. Evid. 104(a).

    (2).    <u>Laux's opinions on product defect and warnings are not reliable.</u>

    (a).  <u>Laux's opinons are pure advocacy and not sound expertise.</u>

Laux's opinions in this case are that the 2004 Alexander EHU contains an unreasonably dangerous condition.  Specifically, Laux opines that the EHU is defective because the manufacturer did not warn of the alleged dangers of the 2004 EHU's potential to emit formaldehyde, and did not warn about the alleged hazards associated from the potentially dangerous levels of formaldehyde exposure.  Exhibit "A", p. 10-11.  Laux concludes that the provision of appropriate information would have resulted in Alexander declining to use the EHU and preventing her son from being exposed to allegedly harmful levels of formaldehyde. Exhibit "A", at p. 11.

As previously noted, Laux (a) did not conduct any testing of the travel trailer, (b) did not conduct any testing of any proposed warnings or instructions relevant to her opinions rendered in this case, (c) failed to offer any evaluation of media coverage concerning alleged

formaldehyde emissions in EHUs following Hurricane Katrina despite acknowledging the relevance of testing whether some other alternative system would have effectively communicated information on hazards, (d) did not conduct or review any studies regarding the efficacy of formaldehyde information provided to Alexander by any other source, including the United States Government, (e) did not ever inspect the Alexander EHU, (f) has no education or training specific regarding EHU design or wood composite products, (g) has not conducted a comparative analysis of EHUs across model lines and (h) has not conducted any tests regarding formaldehyde levels in the Alexander EHU.   *Id*. at pp. 30, 83-84, 88-91, 202-04, 241-42, 244.

Laux states that Gulf Stream Coach, Inc. is culpable for failing to have an adequate warning - most important to this Court's *Daubert* inquiry is the fact that Laux has not drafted a proposed warning to satisfy her own opinions in this case.   *Id*. at p. 234.[6]   While Laux acknowledged the propriety of testing a warning to assess its efficacy, one cannot test a warning that has not yet been created.  Failing to propose and subsequently test her alternative design, *i.e.* a suitable product warning, renders Laux's opinions unreliable.   *Id.* at 234. Without adequate testing, an expert's proposed design cannot be subjected to peer review, cannot be evaluated for general acceptance, and cannot be evaluated for potential rates of error.  *Id.* at 990, *see also Black v. Food Lion* (supra)*, 171 F.3d at 313.

Further indicative of Laux's advocacy are her opinions concerning the HUD health notice on formaldehyde emissions (HUD Notice) and its relation to the Alexander claim.  In her report, Laux opines that "at a minimum" Gulf Stream Coach, Inc. should have provided instructions and warnings such as the HUD Notice.  Exhibit "A", at pp. 10-11.  Interestingly, Laux unequivocally testified that the HUD Notice is not an adequate warning for the general

---

[6]     Application of the *Daubert* factors is germane to "evaluating whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers."  *See Watkins v. Telsmith,* 121 F.3d 984 (5th Cir. 1997).

public, but that it was adequate for Alexander.  Exhibit "C", at p. 209-10.  Contradicting herself

moments later, Laux opined that if Alexander received that very HUD Notice and did not move

out of the EHU, then it was an *inadequate* warning.  Exhibit "C", at p. 210.  She testified:

Q.    That [HUD Notice], in your opinion, is not an adequate warning?

A.    Not for the general public that can be expected to be living in these trailers.  I think it would have been adequate for Ms. Alexander.  But would I advise that a manufacturer of travel trailers who were putting information into these trailers, would use just that?  No, I wouldn't.

Q.    Okay.  But if Ms. Alexander was provided this warning that you've laid out in 18, that would have been sufficient for her to make a decision and make -- and modify her behavior to potentially move out of this trailer?

A.    I think so.  Although, you know, it's important health notice, I think, since she had a child that she knew had asthma.  And if it had been displayed, I mean, it's supposed to be big print, a quarter of an inch size.  And an important health notice is three-quarters of an inch in size, and it has to be on the kitchen cabinets where you can't miss it.

Q.    In a temporary manner, so it's not meant to be permanently affixed.

A.    Well, no, of course it's not permanently affixed.  It's there so that when you move it, you see it.

Q.    So if it's established that Mrs. -- Ms. Alexander received this notice within a month of moving into the trailer and she still didn't move out, then your opinions regarding the adequacy of this warning [HUD Notice] would be entirely inaccurate; is that correct?

A.    So you're saying she received this within a month of moving in and --

Q.    Yes, ma'am.

A.    She did?  Well, if she did, then this is inadequate.

Exhibit "C", at pp. 210-12.

Laux further revealed her advocacy when she testified:

A.    But this [HUD Notice] is definitely not an adequate warning.

Q.    Okay.  But you said it was adequate for Ms. Alexander.

A.      I said it would have been adequate for her, if she'd read it, yes, then it would.

Q.      And you just said that if it's shown that she has that, then it was inadequate.

A.      It was inadequate for her, obviously.

Q.      Good.  I really appreciate that.

A.      It clearly didn't inform her what she needed to know.

*Id*. at p. 212-13.

In other words, regardless of the warning or information provided by Gulf Stream Coach, Inc., Laux would conclude that it was inadequate because Alexander did not forego the use of the EHU.  The foregoing testimony establishes that Laux is nothing more than a "hired gun" who fails to provide any assistance to the Court or the Jury.  Essentially, in her opinion, whenever an accident occurs, then there was a failure to adequately warn since the accident would not have happened otherwise.  **More germane, Laux has revealed that her opinion is that so long as Alexander used the EHU, there is no adequate warning or instruction that Gulf Stream Coach could have provided.**

(b).    Judicial criticism of Laux's "expert opinions" has been reported.

Indeed, several courts within the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") have excluded similar opinions previously offered by Laux.  The Fifth Circuit has even gone so far as to label Laux's opinions as "truly bizarre."  *Thottakkara v. HCA Health Services of Texas, Inc.*, 81 F.3d 155, at *1 (5 Cir. 1996) (attached hereto as Exhibit "F").  In a Title VII action wherein Laux offered an expert opinion on behalf of plaintiff, the appellate court affirmed the District Court's exclusion of Laux.  The Court reasoned:

The district court did not abuse its discretion in refusing to recognize Thottakkarra's proffered expert witness, Lila Laux (Laux).  Laux had no training in nursing or medicine, and had not performed or reviewed studies of how hospital nurses were disciplined.

Laux would offer, *inter alia*, the truly bizarre opinion that Fischl was likely motivated by bias against dark-skinned people because Fischl's *parents* were born and reared in Austria – though Fischl herself was born and reared in Canada (and was not shown to have ever been to Austria or Germany) – and Laux, who had lived in Germany for approximately eight years (just where or at what age is not reflected), thought Germans tended to be prejudiced against dark-skinned people.

*Id.* (emphasis in original).

A more applicable example of Laux's inappropriate opinions arises from a tragic automobile fatality in Texas. *Wright v. Ford Motor Co.*, 04-011 (E.D. Tex. 3/3/05), 2005 WL 5977651 (attached hereto as Exhibit "G"). In that case, a child was accidentally killed when a SUV backed over the child. The defendant filed a Motion to Exclude Laux's testimony. Laux apparently offered opinions that the SUV should have contained a reverse sensor system and that doing so would have prevented the accident. *Id.* However, the district court concluded that the opinion was not sufficiently reliable, instructing:

…Laux does not have adequate knowledge, expertise, or experience regarding such systems, is not familiar with their design or how they function, and did not perform any tests to permit her to render such an opinion. She is not a professional engineer and has never been involved in the technical design of products.

*Id.*

Like the excluded opinions in *Wright* concerning the alleged design defect (lack of rear sensors), Laux's opinions here concerning the alleged design defect (alleged excessive formaldehyde emissions) must be excluded. Laux does not have adequate knowledge, expertise, or experience regarding construction of EHUs, is not familiar with their design, and did not perform any tests to permit her to render such an opinion. She is not a professional engineer and has never been involved in the technical design of products. At best, she is merely cumulatively testifying about other experts' opinions, which fails to assist the Court or Jury.

Continuing with the *Wright* case, the Court further excluded Laux's "gratuitous expressions" similar to opinions expressed in this case. *Id.* As reasoned by the *Wright* Court:

> In addition the following comments made by Laux in her expert report are gratuitous expressions of subjective belief, not based on specialized knowledge and lack any indicia of reliability; as such, they are an improper subject for expert testimony:
>
>> 9.      "Failing to do so [provide a reverse sensor system] shows a callous disregard for the safety of children and adults and for the driver of an Expedition who causes a child's injury or death."
>>
>> 11.     Failing to provide a reverse sensor system and failing to educate the purchasers of the Expedition about the availability and need for such a system shows a callous disregard for the safety of both children and adults."

*Id.*

Here, Laux has offers predictably similar gratuitous expressions of subjective belief lacking any indicia of reliability.  Laux opines:

> 17.  Gulf Stream had a duty to alert and provide adequate warning to travel trailer users about the hazards associated with formaldehyde off-gassing.  They (sic) knowingly failed to provide this information to people who would be using their (sic) trailers.  Failure to provide adequate warnings and instructions was unconscionable and showed a disregard for the health of the people who used their (sic) trailers after Katrina.

Exhibit "A", at p. 10.

This opinion is not based on specialized knowledge and lacks any indicia of reliability.  Like the opinions in *Wright*, it is an improper subject for expert testimony.

3.      Laux's Methodology Is Not Adequately Linked to the Facts of this Case.

In a part of the opinion that is often overlooked, *Daubert* also cautions against admitting expert testimony in a case when the application of the expert's methodology to the facts of the case involves an impermissible leap of faith. The Supreme Court in *General Electric v. Joiner* acknowledged, "[t]rained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit

opinion evidence which is connected to the existing data only by the *ipse dixit* of the expert." *General Electric v. Joiner,* 522 U.S. 136, 146, 139 L. Ed. 508, 519 (1997). If there exists too great an analytical gap between the data and the opinion offered the testimony is not reliable. *Id.   Joiner* reminds district courts that they must review the reasoning used by an expert in applying a given methodology to the expert's ultimate opinion. It is imperative that an expert explains the "how" and the "why" behind her conclusions. See *Id.* at 144; see also *Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989) (stressing that the expert must state both the foundation for his opinions and the reasoning from that foundation). Ultimately, when the evidence does not "fit" with the conclusion, the testimonial evidence is not reliable.  *Cavallo v. Star Enterprises*, 892 F. Supp. 756, 761-63 (E.D. Va. 1995), *aff'd in part and rev'd in part*, 100 F.3d 1150 (4[th]Cir. 1996).

As of the date of Laux's report, Plaintiffs had not been deposed.  No witness can testify as to the formaldehyde levels that existed when Alexander occupied the EHU.    Regarding the circumstances of Alexander's EHU use, Laux was woefully uninformed.  Exhibit "C", at pp. 154-59.  Indeed, she does not possess any admissible evidence regarding the formaldehyde levels in the Alexander unit, at any time.  *Id*. at pp. 228-29.  Notwithstanding the fact that here are countless scenarios that could explain Chris Cooper's asthma symptoms, Laux chooses to base her opinions on the fact that Alexander lived in the 2004 Gulf Stream Coach, Inc. EHU, despite the fact that she does not have any admissible information concerning formaldehyde levels in the EHU.  *Id.* at pp. 311-13.  Laux relies on this assumption when she concludes that the EHU is unreasonably dangerous because according to her, chronic exposure to levels as low as .003 ppm are a health hazard.  *Id*. at p. 179-80.  Laux reached this conclusion despite

the fact that she acknowledged other plausible sources of Chris Cooper's complaints.  Laux testified:

> Q.      What is the background level of formaldehyde in some of the larger cities in the United States?
>
> A.      It's pretty high, but I don't know what it is.
>
> Q.      Would you -- would you consider that people living in those cities are chronically exposed to those levels?
>
> A.      Yes.
>
> Q.      As its background?
>
> A.      Yes.
>
> Q.      Should those cities warn people that they shouldn't live there?
>
> A.      Well, maybe they should warn people that they should take some kind of precautions.  Look at the incidence of asthma and how it's going up.  I mean, we know that it's part of the pollution in -- in city environments.  And we know, from hospitals, that there's a lot more people coming in with respiratory problems.

*Id.*  at pp. 226-27.

Indeed, a Tulane University study has reported that the airborne concentration in the majority of the rural southern Louisiana site built homes included in the study exceeded .1 ppm, roughly 33 times the level Laux states requires a warning.  R. Lemus, *Potential Health Risks from Exposure to Indoor Formaldehyde*, Reviews on Environmental Health, (Vol. 13, Nos. 1-2, pp. 91-98, 1987), attached hereto as Exhibit "H."   Assuming the Lemus study is accurate, Laux's opinion that the **potential** for chronic exposure to formaldehyde in excess of .003 ppm requires a warning on every residence in the Louisiana, and potentially, the entire United States of America.  Laux does not test for or otherwise account for any alternative explanation of Chris Cooper's conditions.  Based on the fact that numerous other possible

causes of Chris Cooper's asthma symptoms exist, Laux's opinions concerning the unreasonably dangerous condition of the Alexander EHU are nothing more than speculation.

## IV. CONCLUSION

Lila Laux, Plaintiffs' designated human factors/warnings expert, has opined that the 2004 Gulf Stream Coach, Inc. EHU used by Alexander was defectively designed.  The basis for Laux's opinions resides in the assumed fact that the EHU allegedly emits excessive levels of formaldehyde, and that Gulf Stream Coach, Inc. breached its duty to warn the consumers of the alleged health hazards associated with formaldehyde exposure.  Laux also maintains the EHU is defective because the 2004 EHU lacks a warning concerning the formaldehyde emissions. Laux, however, testified that she has not formulated a warning relevant to her opinions in this case. Plaintiffs' expert testimony in this case proffered by Lila Laux is not relevant or reliable and should be excluded as part of the Court's "gatekeeping" function under *Daubert*.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER, & WEINSTOCK**

s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Fax: (504) 837-3119
andreww@duplass.com
jglass@duplass.com
***Counsel for Defendant, Gulf Stream Coach, Inc.***

and

**SCANDURRO & LAYRISSON**
**Timothy D. Scandurro #18424**
**Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
Telephone: (504) 522-7100
tim@scanlayr.com
dewey@scanlayr.com

### C E R T I F I C A T E

I hereby certify that on the 12th day of June, 2009, a copy of the foregoing Memorandum in Support of Gulf Stream Coach, Inc.'s Motion in Limine to Exclude Expert Testimony of Lila F. Laux, Ph.D. was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to all known counsel of record by operation of the court's electronic filing system.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com