UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER             MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION    SECTION N-5
                                                        JUDGE ENGELHARDT
                                                        MAG. JUDGE CHASEZ

**THIS DOCUMENT IS RELATED TO ALL CASES**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF DEFENDANT UNITED STATES
OF AMERICA'S MOTION FOR A PROTECTIVE ORDER TO PREVENT
PLAINTIFFS' DEPOSITION OF HARVEY E. JOHNSON, JR., FORMER
FEMA DEPUTY ADMINISTRATOR AND CHIEF OPERATING OFFICER**

The United States of America ("United States") hereby submits this memorandum in support of its motion for a protective order pursuant to Fed. R. Civ. P. 26(c) to prevent Plaintiffs' deposition of Admiral Harvey E. Johnson, Jr., former Deputy Administrator and Chief Operating Officer for the Federal Emergency Management Agency ("FEMA"). A protective order is appropriate because Plaintiffs cannot show that the deposition of Admiral Johnson is necessary under the appropriate legal standard for deposing a high-ranking government official. Plaintiffs have other means available to obtain the information that they seek through this deposition.

       **I.**      **High-Ranking Government Officials Are Not Subject To Deposition Absent
               A Showing Of Exceptional Need.**

As a general proposition, high-ranking government officials are not subject to depositions. *See Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586-87 (D.C. Cir. 1985); *Church of Scientology v. I.R.S.*, 138 F.R.D. 9, 12 (D. Mass. 1990). The Fifth Circuit Court of Appeals has stated that "exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted." *In re Office of Inspector General*, 933 F.2d

276, 278 (5th Cir. 1991) (per curiam) (citing *EEOC v. K-Mart*, 694 F.2d 1055, 1067-68 (6th Cir.1982)).  The court elaborated that "'top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions.'"  933 F.2d. at 278 (quoting *Simplex*, 766 F.2d at 586).

The protection from deposition for high-ranking government officials has evolved from the Supreme Court's decision in *United States v. Morgan*, 313 U.S. 409, 422 (1941).  In that case, the Secretary of Agriculture had been subject to deposition and trial testimony.  Though not directly germane to the issue for decision, the Court found that the examination of the Secretary "require[d] consideration."  *Id* at 421.  The Court noted that the Secretary was questioned about the deliberative process by which he reached his conclusions, including his consultation with subordinates and his failure to consider a particular memorandum.  *Id.* at 422.  The Court concluded that "the Secretary should never have been subjected to this examination."  *Id.*  The Court reasoned that the administrative process is a "collaborative instrumentalit[y] of justice, whose independence should be respected by the courts.  *Id.*  Accordingly, "'it was not the function of the court to probe the mental processes of the Secretary.'"  *Id.* (quoting *Morgan v. United States*, 304 U.S. 1, 18 (1938)).

Pursuant to *Morgan*, courts have sought to preclude unwarranted inquiries into the "mental processes" of high-level decision-makers.  *See*, *e.g.*, *In re FDIC*, 58 F.3d 1055, 1060-62 (5th Cir. 1995) (citing *Morgan* and finding that a Magistrate abused his discretion in declining to quash the deposition notices issued to three FDIC directors); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211(4th Cir. 1991) (citations omitted) (stating that absent extraordinary circumstances, a government decision-maker should not be compelled to testify about the official's mental

2

processes in reaching a decision, including the manner and extent of his study of the record and consultation with subordinates).

Consequently, most courts, including the Fifth Circuit, have required a showing of great necessity to take the deposition of a high-ranking government official. *In re FDIC*, 58 F.3d at 1060 (stating "[i]t is a settled rule in this circuit that 'exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted'") (quoting *In re Office of Inspector General*, 933 F.2d at 278).  See also *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (stating that "[t]he need for limited access to high government officials through the discovery process is well established")*; In re United States*, 197 F.3d 310, 313-14 (8th Cir. 1999) (stating that to depose the Attorney General or the Deputy Attorney General, the plaintiffs must show that they "possess information essential to his case which is not obtainable from another source"); *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (noting that courts have required that a party "show a special need or situation compelling" testimony from a high government official); *Buono v. City of Newark*, 249 F.R.D. 469, 470 n.2 (D. N.J. 2008) (stating that "top executive department officials should not be required to appear for depositions or testify at trial absent extraordinary circumstances").[1]

---

[1] While the burden to justify a protective order is ordinarily on the moving party, when a party seeks the deposition of a high-ranking government official, the party seeking the deposition must establish its necessity. *See United States v. Sensient Colors, Inc.*, No. 07-1275, 2009 WL 303689 at *6 n.11 (D. N.J. Jan. 28, 2009) (citing *Buono v. City of Newark*, 249 F.R.D. 469, 470 n.2 (D. N.J. 2008) (stating "[t]he Court must, therefore, ... determine if the plaintiff has met its burden to obtain the deposition"); *United States v. Wal-Mart Stores*, No. 01-152, 2002 WL 562301, at *3 (D. Md. March 29, 2002) (stating "the party seeking to depose a former high-ranking official must still demonstrate the existence of extraordinary circumstances or the personal involvement of the former official in a material way"); *Coleman v. Schwarzenegger*, No. 90-0520, 2008 WL 4300437, at *4 (E.D. Cal. Sept.15, 2008) (denying depositions of the Governor and his Chief of Staff and stating "plaintiffs have not carried their burden of establishing that no other person

### II. Plaintiffs Must Show Exceptional Need To Take Admiral Johnson's Deposition Even Though He No Longer Works For FEMA.

Even though Admiral Johnson no longer works for FEMA, Plaintiffs must show an exceptional need to take his deposition pursuant to *Morgan*.  A district court recently addressed whether the heightened need standard applied to former government officials in deciding a motion for a protective order to prevent the deposition of former Environmental Protection Agency Administrator Christine Todd Whitman.  *See United States v. Sensient Colors, Inc.*, No. 07-1275, 2009 WL 303689 at *2-3 (D. N.J. Jan. 28, 2009).  In a detailed analysis, the court found that the *Morgan* doctrine justified application of the heightened need requirement to Ms. Whitman, even though she no longer worked for the government.  The court reasoned:

> It is true that the deposition of a former official may not interfere with her governmental duties to the same extent as if she were a current employee. However, the possibility that a current employee may be deposed after she leaves government service is likely to impact how the employee performs her duties.  It is not far fetched to conclude that a government employee's work performance may be "chilled" if she may be deposed on her thought process after she leaves government service.  Thus, the rationale behind the *Morgan* doctrine applies to former employees.  Furthermore, the goal of limiting inquiries into a decision maker's thought process is as equally applicable to a former employee as it is to a current employee.

*Id.* at *3.

The court also noted "other important reasons justifying the application of the *Morgan* doctrine to former officials."  *Id.*  "[U]nchecked depositions of former high ranking government employees would be unduly burdensome on them and likely discourage individuals from public service positions."  *Id.  See also United States v. Wal-Mart Stores*, No. 01-152, 2002 WL 562301, at *3 (D. Md. March 29, 2002) (stating that "[s]ubjecting former officials['] decision-

---

possesses the information in question . . . or that such information may not be obtained by other means").

making processes to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office would serve as a significant deterrent to qualified candidates for public service"). Additionally, the court found no significant public policy or interest served by allowing unchecked depositions of former high-ranking government employees, while "the public interest is furthered by applying a heightened scrutiny to these depositions." 2009 WL 303689 at *3.

Other courts have likewise found that the heightened scrutiny requirement of *Morgan* should apply to former high-ranking government officials. In *United States v. Wal-Mart Stores*, a federal district court in Maryland conducted an in-depth analysis and found that the considerations underlying the *Morgan* doctrine applied with equal force to situations in which depositions of former high government officials were sought. 2002 WL 562301, at *1-4. The court reasoned that pursuant to *Morgan*, most courts only allow depositions of high-ranking government officials when either there are extraordinary circumstances justifying the deposition or the official was personally involved "in a material way" in the dispute. *Id.* at *3. Depositions are not allowed without scrutiny, the court noted, because "courts are cognizant of the fact that high-ranking officials will be privy to a wide range of information due solely to their positions." *Id.* The court found no reason to draw a distinction between current and former high-ranking government officials with respect to *Morgan's* immunity from deposition; otherwise, "public servants should very well expect a mailbag full of deposition subpoenas on the day they depart office." *Id.* The court concluded, "If the immunity *Morgan* affords is to have any meaning, the protections must continue upon the official's departure from public service. Accordingly, the party seeking to depose a former high-ranking official must still demonstrate the existence of

extraordinary circumstances or the personal involvement of the former official in a material way." *Id.  See also Energy Capital Corp. v. United States*, 60 Fed. Cl. 315, 318 (Fed. Cl. 2004) (citing cases that "have persuasively argued for the application of the *Morgan* doctrine to former high-ranking government officials").

### III.     Admiral Johnson's Position Was A High-Ranking Government Position.

Admiral Johnson served as Deputy Administrator and Chief Operating Officer of FEMA from May 2006 to January 2009.  Exh. 1 ¶ 1 (Admiral Johnson Declaration).  This position is Presidentially appointed and Senate Confirmed.  Exh. 1 ¶ 1.  During that time, Admiral Johnson was the primary advisor to FEMA's Administrator, David Paulison, and was responsible for overall daily operations and management of the agency.  Exh. 1 ¶ 1.  At the time of his confirmation, Paulison, stated that "Admiral Johnson has been my right-hand in shaping the new FEMA."  Exh. 2 (FEMA Press Release).  During his time at FEMA, Johnson was responsible for implementing policies and procedures on behalf of the Administrator and overseeing all response, recovery, mitigation and preparedness activities.  Exh. 1 ¶ 1.[2]  Of course, FEMA's jurisdiction is wide-ranging.  It is responsible for coordinating the federal government's role in preparing for, preventing, mitigating the effects of, responding to, and recovering from all domestic disasters, whether natural or man-made, including acts of terror.  Exh. 1 ¶ 1.  Clearly, Admiral Johnson's duties with FEMA are sufficient to qualify him for the protection from

---

[2]  At the time of his appointment, Admiral Johnson had been the Commander of the U.S. Coast Guard's Pacific Area since June 2004.  Exh. 1 ¶ 2.  In his role as commander, among other responsibilities, Admiral Johnson developed operational and contingency plans that integrated Coast Guard forces with those of the Department of Defense as well as other federal, state and local agencies.  Exh. 1 ¶ 2. In years prior to 2004, Admiral Johnson had also served as the executive director of the Coast Guard's transition into the Department of Homeland Security. Exh. 1 ¶ 2.  At the time of his appointment, Admiral Johnson had more than 30 years of experience as a Coast Guard officer.  Exh. 1 ¶ 2.

6

deposition due a high-ranking government official. *See Simplex*, 766 F.2d at 586-87 (recognizing that OSHA's Regional Administrator and Area Director were high-ranking government officials); *Sensient Colors*, 2009 WL 303689, at *6 (finding that EPA Regional Administrator was a high-ranking government official).

### IV.   Plaintiffs Cannot Show Exceptional Need For Johnson's Deposition

Plaintiffs cannot show that Admiral Johnson was personally involved "in a material way" in the issues in this case or that extraordinary circumstances exist for his deposition. Ordinarily, the requirement that the deposition of a high-ranking official "be necessary to obtain relevant information not available from other sources, is strictly imposed." *Marisol A. v. Giuliani*, No. 95-10533, 1998 WL 132810, at *3 (S.D. N.Y. March 23, 1998). Before permitting the involuntary deposition of a high-ranking government official, courts will require that the party seeking the deposition demonstrate that the official's testimony will "likely lead to the discovery of admissible evidence ***and is essential to that party's case***." *Warzon v. Drew*, 155 F.R.D. 183, 185 (E.D.Wis.1994) (emphasis added) (citing *Sweeney v. Bond*, 669 F.2d 542, 546 (8th Cir. 1982)). Consequently, courts will permit the deposition of a high-ranking government official only if the official has unique personal knowledge that cannot be obtained elsewhere. If the information is available through alternative sources or less burdensome means, courts will usually prohibit the deposition. *See Warzon*, 155 F.R.D. at 185.

For example, in *L.D. Leasing Corp., Inc. v. Crimaldi,* No. 91-2430, 1992 WL 373732 (E.D. N.Y. Dec. 1, 1992), a court granted a protective order prohibiting the deposition of New York City Mayor David Dinkins. In quashing the notice of deposition of Mayor Dinkins, the court stated, "[i]n general, a party may only obtain the deposition of a high-level government

7

official by showing that official has particularized first-hand knowledge that cannot be obtained from any other source." *Id.* at *1 (citations omitted). The court found that Mayor Dinkins had no first-hand knowledge of the information being sought and that several key individuals had already been deposed regarding the matter. *Id.* Significantly, the Court stated that "the examination of Mayor Dinkins with respect to the [issues] is exactly the 'prob[ing] of mental processes'" that the Supreme Court prohibited in *United States v. Morgan*. 1992 WL 373732, at *1 (quoting *Morgan* 313 U.S. at 422).

Moreover, a mere showing that the official was involved in a decision that adversely affected a party's right is not a sufficient circumstance to justify the deposition. In *In re FDIC*, the plaintiff claimed that it was entitled to depose high-ranking FDIC officials who were invovled in a decision that directly affected the plaintiff's property rights. 58 F.3d at 1061. The Fifth Circuit found this was not a sufficient showing of necessity, because "this rationale would justify deposing high-level government officers in a plethora of cases in order to probe their decision-making processes and the reasons for their decisions . . . Their official conduct frequently affects – sometimes adversely – the property rights of private parties. This does not of itself subject them to the burdens of litigation discovery." *Id.*

Here, Admiral Johnson was not personally involved in a material way in the issues related to the case, and information regarding FEMA's response to formaldehyde concerns is readily available from other sources. From his appointment in May 2006 through mid-May 2007, Admiral Johnson had very limited personal involvement in FEMA's response to formaldehyde concerns. Exh. 1 ¶ 3. Kevin Souza and David Garratt were the FEMA employees primarily responsible for responding to concerns regarding formaldehyde in the Emergency

Housing Units ("EHUs") during this period.  Exh 1 ¶ 3; Exh. 3 ¶¶ 4-5 (David Garratt Declaration); Exh. 4 ¶¶ 1-2, 9-21 (Kevin Souza Declaration).  In mid-May 2007, with increasing awareness and sensitivity to issues regarding formaldehyde by the Administration, state representatives, Congress and the media, Admiral Johnson became more involved with the issues.  Exh 1 ¶ 3.  He appointed Michael Lapinski as FEMA official responsible for coordinating FEMA's assessment, response and communications with regard to formaldehyde concerns.  Exh. 1 ¶ 3; Exh. 5 ¶ 1 (Michael Lapinski Declaration).  In this capacity, Mr. Lapiniski reported to Admiral Johnson, whereupon Admiral Johnson commented upon and endorsed Mr. Lapinski's recommendations based upon information that he made available to the Admiral.  Exh. 1 ¶ 3.  Admiral Johnson did not develop FEMA's response.

Certainly, by virtue of his position, Johnson was privy to much of the information regarding FEMA's response to formaldehyde concerns during his tenure.  But he was not involved in a "material way" in directing that response.  Any and all information that Johnson may possess regarding FEMA's response to formaldehyde concerns would be in the possession of either Garratt, Souza or Lapiniski.[3]  Moreover, any examination of Johnson would involve "prob[ing] the mental processes" of a high-ranking government official, which is precisely what

---

[3] This request for a protective order is distinguishable from the situation in *Bolden v. FEMA*, No. 06-4171, 2008 WL 145098 (E.D. La. Jan. 14, 2008), in which this Court denied a motion for a protective order when a witness had identified the proposed deponent, a FEMA Assistant Administrator, as the person "with knowledge" concerning certain FEMA adjustment practices. *Id.* at *2-4.  Here, Garratt, Souza, or Lapinski would have knowledge regarding any matters that Admiral Johnson could address.  Additionally, in *Bolden*, the Court remarked that FEMA "presented no ***evidence*** to support its conclusory statements concerning [the proposed deponent's] knowledge, responsibilities and status as a supposed high ranking official." *Id.* (emphasis original).  Here, in contrast, this motion is supported by Admiral Johnson's declaration regarding his knowledge, responsibilities and status.

the Supreme Court sought to prohibit in *Morgan*. Thus, Plaintiffs cannot show extraordinary circumstances for deposing Johnson and this Court should issue a protective order.

## CONCLUSION

For the foregoing reasons, the Court should grant a Protective Order to prohibit Plaintiffs from deposing Harvey E. Johnson, Jr.

Dated:  June 13, 2009                                        Respectfully Submitted,

TONY WEST
Assistant Attorney General, Civil Division

J. PATRICK GLYNN
Director, Torts Branch, Civil Division

HENRY T. MILLER
Senior Trial Counsel

ADAM DINNELL
MICHELLE BOYLE
JONATHAN WALDRON
Trial Attorneys

//S// Adam Bain

ADAM BAIN (IN Bar No.11134-49)
Senior Trial Counsel
United States Department of Justice
Civil Division – Torts Branch
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
Telephone No:  (202) 616-4209
E-mail:  adam.bain@usdoj.gov

Attorneys for the United States of America

OF COUNSEL:

JORDAN FRIED
Associate Chief Counsel
JANICE WILLIAM-JONES
Trial Attorney
FEMA/DHS