UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 |
| This Document Relates to: *Charlie Age, et al. v. Gulf Stream Coach Inc., et al.*, Docket No. 09-2892 | * * * | JUDGE: ENGELHARDT<br><br>MAG: CHASEZ |

*******************************************************************************

**REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM COACH, INC., AND FLUOR ENTERPRISES, INC.'S <u>MOTION TO STRIKE CERTAIN EXPERT WITNESSES</u>**

On May 21, 2009, Defendant, Gulf Stream Coach, Inc. ("Gulf Stream"), filed a Motion to Strike Certain Experts the Plaintiff has retained for this lawsuit. On June 9, 2009, Plaintiff filed a Response. Gulf Stream now appears, through undersigned counsel, to reply to that Response in an effort to clarify its argument and point out certain inconsistencies in the Response. As stated in the Motion and Response, Gulf Stream set forth three bases for striking the experts – some relied on excluded evidence, some will present cumulative and duplicative testimony, and some will opine on issues that the Plaintiff has not pleaded.

The first argument was, and still is, very basic – the opinions of experts Bunzer, Lagrange, Mallet, Moore, and Ritter are irrelevant and unreliable because they are based on facts and information that this Honorable Court has already excluded. Under Federal Rule of Evidence 702, an expert may testify only if her specialized knowledge will assist the trier of fact to understand a fact <u>at issue</u>. Here, the experts posited opinions based on information and data they obtained at the Plaintiff's testing of her Emergency Housing Unit ("EHU") on May 6—7, 2009. However, this Court has previously ruled that those results are inadmissible. The clear effect of

that ruling meant that the information and data collected during the testing were no longer at issue. Consequently, these expert opinions are irrelevant for the simple reason that they cannot aid the trier of fact in determining a fact at issue or understanding the evidence. Furthermore, Gulf Stream asserts that the opinions are unreliable. Rule 702 states that an expert may offer testimony only if the testimony is based on sufficient facts or data. By excluding the results of the May 6—7 testing, this Court has already ruled. Any expert opinions based on those facts are unreliable. Combined with the irrelevance of such opinions, their unreliability means that the Court should strike the expert opinions that are based on the excluded test results.

In response to Gulf Stream's argument, the Plaintiff makes two arguments of her own – she rehashes her opposition to the exclusion of the May test results, and she states that the opinions of her experts are admissible even if the facts upon which the experts rely are themselves inadmissible. With respect to the first argument, the Plaintiff states in her Response that at the time Gulf Stream filed its Motion for Protective Order, "Gulf Stream had been provided with a testing and inspection protocol which set forth that, in addition to formaldehyde testing, the PSC's experts intended to conduct a detailed visual inspection of the trailer, ventilation testing and a materials audit." Plaintiff's Response to Defendants' Motion to Strike Certain Expert Witnesses, p. 10—11. Gulf Stream asserts, without equivocation, that this statement is not true. Gulf Stream was <u>not</u> provided with such a protocol prior to its filing. The Motion was filed on April 27, 2009. (Doc. No. 1373). Through the Plaintiff's representatives sent Gulf Stream a letter on April 23, 2009, discussing a protocol, ventilation testing was included without any detail whatsoever. *Correspondence from Gerald Meunier, Plaintiff's Steering Committee, to Henry Miller, U.S. Dept. of Justice*, dated April 23, 2009, attached as Exhibit "A." However, no agreement was reached on the scope of that testing. In fact, the Court

2

will recall that during a telephone status conference on April 27, 2009, regarding what constitutes "destructive" testing of the trailer, the Manufacturing Defendants and FEMA objected to drilling holes in the unit for ventilation testing. All agreed that this would be destructive and the Plaintiffs' Steering Committee dropped that request in favor of pulling back carpets and removing one of the cabinet doors. Only on May 4, 2009, when the Committee submitted a new protocol, did Gulf Stream and the other defendants learn that ventilation testing was still proposed. *Correspondence from Mikal Watts, Plaintiff's Steering Committee, to Henry Miller, U.S. Dept. of Justice*, attached as Exhibit "B." Correspondence from the same date showed that the Committee still planned to perform destructive testing and to make any repairs that would be necessary. *Correspondence from Justin Woods, Plaintiff's Steering Committee, to Henry Miller, U.S. Dept. of Justice*, dated May 4, 2009, attached as Exhibit "C." However, at that point, Gulf Stream had already lodged its Motion for Protective Order. (Doc. No. 1373). To suggest that Gulf Stream had notice of this protocol before it filed the Motion for Protection is disingenuous – Gulf Stream did not know of the plaintiff's plans until well after its Motion was filed.

Regardless, the question of the admissibility of the test results is no longer in dispute after this Court's ruling. The Plaintiff admits as much when she argues that even if the results of the May testing are inadmissible, the expert opinions are still admissible because they are of the type reasonably relied upon by other experts in their fields in forming opinions or inferences upon the subject. *See* FED. R. EVID. 703 (2008). However, if the expert relies on data that has no probative value or reliability, then the expert opinion itself is likewise inadmissible. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 748 (3d Cir. 1994). Moreover, the rule was never intended to allow this kind of end run around the Court's ruling. If that were the case, every unreliable, stricken expert conclusion could always resurface in another expert's report. The Court's ruling never

contemplated that the excluded test results could be repackaged and presented anyway. The issue is not whether an expert can in certain circumstances rely on otherwise inadmissible evidence; the issue is whether an expert in this case can rely on late-obtained data that the Court has already stricken. The answer must be an emphatic no, as any other result would completely eviscerate the Court's ruling and the reasons it was entered. Thus, the expert opinions based on such information and data are inadmissible.

The second argument Gulf Stream made in its Motion to Strike was that the opinions of the Plaintiff's experts DeVany, Hewett, Kaltofen and Scott would be cumulative on the topic of air sampling. Despite the Plaintiff's characterization of Gulf Stream's argument as one that asks the Court to strike all the experts, a reading of the original Motion shows that Gulf Stream asked the Court to limit the expert testimony on air sampling to one expert witness. Gulf Stream believes that is a reasonable limitation in order to prevent the cumulative and duplicative testimony the Court would otherwise hear from these experts. In fact, the Plaintiff implicitly recognizes that some of the material in her experts' reports is duplicative. She argues that each of the four will testify on issues not covered by any other expert – each has his or her own specified knowledge. But the four experts' reports total well over 100 pages worth of information. These pages are full of information that goes beyond each expert's individualized expertise as identified by the Plaintiff in her Response. In carving out a niche for each expert, the Plaintiff essentially concedes that the other information contained in the reports is duplicative.

Furthermore, Gulf Stream asserts that a Motion to Strike on this issue is timely at this stage. The Plaintiff argues that the motion is premature because Gulf Stream will have a chance to depose these experts and the ability thereafter to file *Daubert* or other motions accordingly. But these exclusions will undoubtedly happen at some point, and Gulf Stream believes the

parties would be better served if the Court made these exclusions now rather than later. Gulf Stream believes that the Plaintiff has no intention of bringing all twenty of her identified experts to trial. At some point, the Plaintiff will eliminate one or more of them, voluntarily or involuntarily, because they are cumulative and duplicative. Presumably, this will come after the parties have spent countless hours and dollars deposing these experts and examining their opinions. Gulf Stream simply requests that the Court apply the rules now so that the parties can avoid the needless expense of time and money.

In regards to Gulf Stream's third argument, Gulf Stream has argued that the Court should strike any expert opinions to the extent they discuss issues not pleaded by the Plaintiff, namely mold. In her response, the Plaintiff goes to great lengths to argue that the experts have been retained only for purposes of offering opinions related to formaldehyde exposure. However, this is simply not true. For example, plaintiff's expert Dr. Lila Laux stated in her Opinions section, "Ms Alexander was not informed that high ambient temperature and high humidity as well as the presence of mold would increase the rate at which formaldehyde would off-gas from the materials in the interior of the travel trailer." Final Report of Dr. Lila Laux, dated May 11, 2009, p. 9 (emphasis added). Dr. Laux's statement is an illustration of how the mold issue has infiltrated the reports of the Plaintiff's experts. Because she has not pleaded the issues of mold, the Plaintiff should not be allowed to have her experts opine on its effects. Thus, Gulf Stream believes its Motion to Strike based on this issue is justified.

For these reasons and those set forth in the original Memorandum in Support of the Motion to Strike Certain Expert Witnesses, Gulf Stream respectfully asks this Court to exclude the Plaintiff's experts who would testify about facts that have been excluded, who would provide

duplicative and cumulative testimony, and who would testify as to matters not pleaded by the plaintiffs.

    Respectfully Submitted:

    **DUPLASS, ZWAIN, BOURGEOIS,**
    **PFISTER & WEINSTOCK**

    s/Andrew D. Weinstock
    _____
    **ANDREW D. WEINSTOCK #18495**
    **JOSEPH G. GLASS #25397**
    3838 N. Causeway Boulevard, Suite 2900
    Metairie, Louisiana 70002
    (504) 832-3700
    (504) 837-3119 (FAX)
    andreww@duplass.com
    jglass@duplass.com

    and

    **SCANDURRO & LAYRISSON**
    **Timothy D. Scandurro #18424**
    **Dewey M. Scandurro #23291**
    607 St. Charles Avenue
    New Orleans, LA 70130
    (504) 522-7100
    (504) 529-6199 (FAX)
    tim@scanlayr.com
    dewey@scanlayr.com
    **Counsel for Defendant, Gulf Stream Coach, Inc.**

    and

    s/ Charles R. Penot, Jr.
    **MIDDLEBERG, RIDDLE & GIANA**
    **Charles R. Penot, Jr. #1530**
    717 North Harwood, Suite 2400
    Dallas, Texas 75201
    (214) 220-6334
    (214) 220-6807 (FAX)
    cpenot@midrid.com

>**Dominic J. Gianna #6063**
>201 St. Charles Avenue
>New Orleans, Louisiana 70170-3100
>(504) 525-7200
>(504) 581-5983 (FAX)
>dgianna@midrid.com
>**Counsel for Defendant, Fluor Enterprises, Inc.**

## C E R T I F I C A T E

I hereby certify that on the 15th day of June, 2009, a copy of the foregoing Reply to Plaintiff's Response to Defendants Gulf Stream Coach, Inc., and Fluor Enterprises, Inc.'s Motion to Strike Certain Expert Witnesses was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

>s/Andrew D. Weinstock
>_____
>ANDREW D. WEINSTOCK #18495
>andreww@duplass.com