UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER           * | MDL NO. 1873 |
| FORMALDEHYDE            * | |
| PRODUCTS LIABILITY      * | |
| LITIGATION                          * | SECTION: N(5) |
|                                                  * | |
| This Document Relates to:        * | |
| *Dubuclet v. Fleetwood Enterprises, Inc. and*  * | |
| *Fluor Enterprises, Inc.*     *       * | JUDGE: ENGELHARDT |
| *Case No. 07-9228*                * | |
|                                                  * | |
|                                                  * | MAG: CHASEZ |

*********************************************************************************

**FLEETWOOD ENTERPRISES, INC. AND FLUOR ENTERPRISES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFFS' NEW TESTING PROTOCOL**

**May It Please The Court:**

Fleetwood Enterprises, Inc. ("Fleetwood") and Fluor Enterprises, Inc. ("Fluor") have moved this Court pursuant to Federal Rule of Civil Procedure 26 for a protective order to prevent the unduly burdensome testing of Plaintiff's emergency housing unit ("EHU").[1] To Fleetwood and Fluor's knowledge, Plaintiffs have not tested this EHU. Any testing of this unit, particularly given the deadlines in this case, should be limited only to formaldehyde air sampling and a walkthrough. Plaintiffs should not be permitted to impose their expansive protocol; the proposed destructive testing and the ventilation and air pressure testing should be prevented. Expanding

---

[1] By filing this objection and motion, Fleetwood and Fluor in no way waive—but rather reserve—all of their arguments addressing the scientific validity and acceptability of the testing protocol and the opinions and conclusions purportedly derived from such requested testing. With the exception of Forest River's objection to the air monitoring—to which Fleetwood and Fluor do not object to in the bellwether unit because this unit, to the best of Fleetwood and Fluor's knowledge, has not been previously tested by plaintiffs or by the government— Fleetwood and Fluor adopt and incorporate the Forest River motion and supporting arguments as though set forth herein. *See* Rec. Doc. 1805.

the proposed protocol beyond formaldehyde air sampling not only increases the cost and time of such testing, but it will not approach approximating the actual living conditions of the plaintiff. In addition, if past is indeed prologue and the Gulf Stream experience can be used as a guide, the proposed air pressure testing and jacking protocol alone have added six "experts" and multiple new opinions to this case, none of which directly address the central issue here which is whether, at the time the trailer left the hands of Fleetwood, it was defective, i.e., it contained unreasonably dangerous levels of formaldehyde—it was not and did not—about which Fleetwood failed to warn—it did not—which caused some alleged formaldehyde related injury in plaintiff—it did not.[2]  To the extent that Plaintiffs claim they are prejudiced if this Court limits their proposed protocol, it is a prejudice of their own making.  Plaintiffs could have tested this unit during the testing period last summer, and Fleetwood and Fluor are not objecting to formaldehyde air sampling testing or a walkthrough.

**Factual Background**

This Court has recently selected Elisha Dubuclet on behalf of Timia Dubuclet as the new bellwether plaintiff against Fleetwood and Fluor.[3]  To Fleetwood and Fluor's knowledge, the Plaintiffs have not tested the Dubuclet EHU.  The Dubuclets claim to have lived in this unit from June 2006 until September 2007,[4] so it has been vacant and closed up for nearly two years. Plaintiffs submitted a revised testing protocol on June 11, 2009, before a plaintiff had been

---

[2] Plaintiffs experts Bunzer, Larange, Mallet, Moore, Ritter, and Smulski render multiple opinions flowing from the air pressure and jacking testing/proposed testing.
[3] Order dated June 15, 2009 [Rec. Doc. 1760].
[4] *See* Fact Sheet excerpt, attached as Ex. A.

selected.[5] While the Court may have contemplated that the Plaintiffs would want to test this unit,[6] the broad scope of the proposed testing had not been brought to the Court's attention. Moreover, Plaintiffs must produce their expert reports by July 10, 2009.[7]

**Argument and Citation of Authority**

Fleetwood and Fluor are requesting, under Federal Rule of Civil Procedure 26(c), that this Court prevent the broad testing and destruction of the Dubuclet EHU. Movants have highlighted the specific portions of the Inspection and Testing Protocol that it objects to,[8] and set for the reasons for the objections here.

**1.    Destructive testing should be prevented.**

Much of the proposed protocol seeks to alter and destroy the EHU. Any testing should be done to focus on the critical issue in this case—whether a level of formaldehyde in the unit posed a health threat to the occupants. Air sampling is the simplest and most economical method by which to reach this answer.[9] The following parts of the proposed protocol seek to alter the unit:

- Section 1(a)(iv) of the protocol references the "disassembly and reassembly of the Trailer;"[10]

---

[5] FEMA-Fleetwood Trailer Inspection and Testing Protocol, Ex. B.
[6] In the Court's Order extending certain deadlines, the Court stated, "any EHU testing shall be completed in sufficient time to allow for compliance with the deadlines included in this Order." Order dated Jane 15, 2009 at 2 [Rec. Doc. 1761].
[7] Order dated June 15, 2009 [Rec. Doc. 1761].
[8] FEMA-Fleetwood Trailer Inspection and Testing Protocol with highlighted objectionable portions, Ex. C.
[9] Of course, this proposed testing would be conducted over 21 months after the Dubuclets left the unit, leaving doubt as to the ability of any testing to approximate the level of formaldehyde in the unit at the time the plaintiff lived in the unit. *See* Ex. A.
[10] Ex. C at 1.

3

- Section 1(c)(ii) of the protocol references Materials Audit and Measurement which incorporates the LBNL Report, which includes the removal of certain material;[11]
- Ventilation testing involves drilling a series of small holes in the entrance door;[12]
- Jacking and blocking of the unit, noting that "[t]hese elements have been shown to elevate the emission of formaldehyde and provide needed sources of moisture for the proliferation of mold."[13]

Altering the unit artificially creates an exposure that did not exist when the occupants were in the unit. Any air sampling would take into account all sources of formaldehyde emissions. This protocol, however, seeks to create an increased level of formaldehyde.

Not only does the proposed protocol seek to artificially increase the formaldehyde levels, this broad testing increases the time and cost for conducting any tests and inspections. Plaintiffs have received an extension of their deadline to submit their experts' reports, but those reports are still due in less than a month. The proposed testing will take days, and likely weeks. Fleetwood and Fluor may need to conduct their own testing at the same time, and before any destructive testing by Plaintiffs irreversibly alters the EHU. This additional time also imposes a greater expense. This additional cost is not justified when the proposed protocol seeks to irreversibly alter the unit and increase formaldehyde levels. Moreover, Plaintiffs have a less expensive

---

[11] Ex. C at 7, 9. The proposed protocol fails to point to the specific section of the LBNL Report with which Plaintiffs proposed to conduct the cataloging of the components. To the extent that Plaintiffs seek to do this cataloging with destructive testing or removal of materials, then Fleetwood and Fluor object.

[12] Ex. C at 9. The LBNL Study, found at http://www.dcd.gov/nceh/ehhe/trailerstudy/pdfs/LBNL-254E.pdf, states that the Measurements of Steady-State Ventilation Rates is tested using the "sample ports in the trailer doors." LBNL Rep. at 7. The LBNL Report states "a series of small holes (~6 mm) were drilled in the entrance door of each trailer . . . to allow insertion of rigid stainless steel sampling tubes for sample collection." *Id.* at 4.

[13] Ex. C at 8.

4

method of determining the formaldehyde level—air sampling. Therefore, the proposed protocol is not justified.

**2.      Ventilation and air pressure testing should be prevented.**

In addition to proposing a protocol that seeks to increase the formaldehyde levels, the proposed protocol adds ventilation and air pressure testing, including looking for mold—an allegation that has not been made in this case. The following portions of the proposed protocol involve ventilation and air pressure testing:

- Installation of a logging velometer to examine air flow in the unit;[14]

- Infrared thermographic survey to identify "potential air leakage, moisture intrusion and water intrusion;"[15]

- Taking of mold samples;[16]

- Examination of the electrical system "to identify any issues regarding the system as a result of exposure to high levels of moisture and or water."[17]

- Ventilation testing;[18] and

- Air conditioning return air and supply air duct testing and furnace return air duct and supply air duct testing[19]

Again, any air sampling test would take into account the ventilation and air exchange already present in the unit. Any results of ventilation or air pressure testing would not affect what the

---

[14] Ex. C at 6.
[15] Ex. C at 7.
[16] Ex. C at 7.
[17] Ex. C at 7.
[18] Ex. C at 9.
[19] Ex. C at 10.

5

formaldehyde level is.  Neither would ventilation and air pressure testing approach approximating the condition of the EHU nearly two years ago, when the plaintiff lived in it.  The EHU has moved to the FEMA Staging Yard in Lottie, Louisiana and has sat unoccupied, closed up, and likely in conditions ripe for mold to grow.  Further testing for mold and ventilation offers no gauge of the occupied condition.  Fleetwood and Fluor understand that this argument is perhaps more appropriately made with a motion in limine, but the likelihood that any evidence generated with such tests is inadmissible only underscores why undertaking this testing in the first instance is unduly burdensome.  Moreover, Plaintiffs have not made any allegations regarding mold, and by now seeking to test for mold, they are injecting new issues into this litigation.  It is unduly burdensome for Fleetwood and Fluor to defend against this expanded protocol that is not tailored to approximate living conditions.

**3.    Fleetwood and Fluor should be permitted to observe all testing and inspection of the Dubuclet unit.**

Fleetwood and Fluor request that this Court allow them to observe any testing and inspection of the unit.  Section 1(a)(xxx) of the Inspection and Testing Protocol limits the persons that can enter the unit "to only those experts or consultants qualified to perform these tests."[20]  But to provide sufficient information to Fleetwood's and Fluor's representatives, Fleetwood and Fluor should be represented at any testing and inspection, with full access to observing all tests and inspections.

---

[20] Ex. C at 4.

6

**Conclusion**

Fleetwood and Fluor have not objected to air sampling or an environmental walkthrough study. But the remaining portions of the proposed protocol simply impose too great a burden, both in meeting the deadlines set forth by this Court and in expenditures for a protocol that increases formaldehyde levels and injects new issues into this litigation. Therefore, Fleetwood and Fluor request that this Court grant its motion for protective order.

This 19th day of June, 2009.

Respectfully submitted:

 /s/ Richard K. Hines, V
Richard K. Hines, V
GA Bar No. 356300
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)

Jerry L. Saporito
LA Bar No. 11717
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-1701
(504) 585-7500 (phone)
(504) 585- 7775 (fax)

Counsel for Fleetwood Enterprises, Inc.

MIDDLEBERG, RIDDLE & GIANNA

 /s/ Charles R. Penot, Jr.\_
Charles R. Penot, Jr. (LA Bar No. 1530 &
TX Bar No. 24062455)
717 North Harwood, Suite 2400
Dallas, Texas 75201
(214) 220-6334
(214) 220-6807 Fax
cpenot@midrid.com

Dominic J. Gianna (LA Bar No. 6063)
201 St. Charles Avenue
New Orleans, LA 70170-3100
(504) 525-7200
(504) 581-5983 (Fax)
dgianna@midrid.com

Richard A. Sherburne
450 Laurel Street, Suite 1101
Baton Rouge, LA 70801
(225) 381-7700
(225) 381-7730 (Fax)
rsherburne@midrid.com

Counsel for Fluor Enterprises, Inc.

## **C E R T I F I C A T E OF SERVICE**

      I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )    Hand Delivery                          ( )    Prepaid U.S. Mail

( )    Facsimile                                 ( )    Federal Express

(X)    CM/ECF

      New Orleans, Louisiana, this 19th day of June, 2009.

                                      */s/ Richard K. Hines, V*
                                      Richard K. Hines, V
                                      Georgia Bar No. 356300
                                      richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)