UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER　　　　　　　　　　　　MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION　　　　　　SECTION N-5
　　　　　　　　　　　　　　　　　　　　　　　　JUDGE ENGELHARDT
　　　　　　　　　　　　　　　　　　　　　　　　MAG. JUDGE CHASEZ

**This Document Relates to:**
*Lyndon T. Wright. v. Forest River, Inc., et al, Docket No. 09-2977*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT UNITED STATES OF AMERICA'S RESPONSE
TO "MOTION FOR PROTECTIVE ORDER REGARDING RE-TESTING OF
PLAINTIFFS' TEMPORARY HOUSING UNIT" [Docket No. 1805]**

　　　　Defendant United States of America hereby adopts and joins in Defendants Forest River, Inc. and Shaw Environmental, Inc.'s "Motion for Protective Order Regarding Re-Testing of Plaintiffs' Temporary Housing Unit," [Docket No. 1805]. The United States for the reasons set forth herein, further objects and for these additional reasons requests that the Court grant the Defendants' Motion and enter a Protective Order that restrict Plaintiffs' Steering Committee ("PSC") and their experts/consultants to a single three-hour walk-through inspection of the Forest River, Inc., Bellwether trailer.

　　　　In addition to the reasons set forth by Defendants Forest River, Inc., and Shaw Environmental, Inc., the Court should impose such a Protective Order because there exists absolutely no "good cause" justifying PSC's failure to issued and attempt to implement this Revised and Expanded Test Protocol over nine-months after expiration of the Court's September 2, 2008, deadline for completion of EHU inspection and testing, and six-months after their representation to the Court that they had completed all testing of unoccupied EHUs. *See* Pretrial

Order No. 3 [Docket No. 123]; Joint Report No. 8, §IX(A) at 9 [Docket No. 1075]; June 9, 2009, PSC's Proposed Revised/Expanded Testing Protocol [Docket No. 1805-3]. Moreover, allowing PSC to implement this Revised/Expanded Testing Protocol will be disruptive to the current Bellwether Scheduling Orders and more likely than not will require the United States to seek and request that the Court to modify the Bellwether Trial Scheduling deadlines and reset the Bellwether Trial dates for later dates. *See* PSC June 9, 2009, Testing Protocol [Docket No. 1805-3].

## FACTS

1.     On April 3, 2008, the Court entered Pretrial Order No. 3 requiring parties to complete all inspection and testing of temporary emergency housing units ("EHU") on or before September 2, 2008. Pretrial Order No. 3 [Docket No. 123].[1]

---

[1] The Court in its recent Orders granting Fleetwood Enterprises, Inc. and Gulf Stream Coach, Inc.'s Motions for Protective Order, the Court succinctly summarized Orders it had issued relating to testing of EHUs.

> In Pretrial Order No. 3, this Court initially set EHU testing deadlines. (Rec. Doc. 123). Pretrial Order No. 4 extended some of those same deadlines. (Rec. Doc. 130). In its June 10, 2008 Order and Reasons, the Court denied several motions to stay and/or extend discovery, testing, and procedural deadlines, but noted that it would entertain motions filed by newly-added defendants to extend specific deadlines for a specific number of days for good cause shown. (Rec. Doc. 328). In a June 26, 2008 Order, the Court continued the deadline for testing of new and unused units in Hope, Arkansas. (Rec. Doc. 399). In Pretrial Order No. 21, the Court issued an order relative to the possible transfer of EHUs. (Rec. Doc. 862). In a December 22, 2008 telephone conference, the Court and the parties discussed the destructive testing of EHUs. (Rec. Doc. 1011). In Pretrial Order No. 26, the Court issued an order relative to the destructive testing of EHUs. (Rec. Doc. 1022).

Order and Reasons at 2 fn.2 [Docket No. 1493]; Order and Reasons at 2, fn. 3 [Docket No. 1547].

2. On January 30, 2009, PSC reported to the Court that it had completed testing of unoccupied EHUs in possession and control of the United States. *See* Joint Report No. 8§IV(B)(2) at p. 5 [Docket No. 1075]. Although, PSC reserved the right to possibly conduct further testing, since January 2009, other than testing of the Gulf Stream Coach, Inc., bellwether unit, PSC has not sought to test any EHUs.

3. Since expiration of the September 2, 2008, testing deadline it has been the United States' position that the Federal Emergency Management Agency ("FEMA") is under no obligation or duty to retain or maintain any EHUs. However, in the event that PSC has not had an opportunity to inspect or test any specific unit(s), and FEMA still had possession and control of the unit, FEMA agreed to allow PSC, at a mutually convenient date and time subject to appropriate restrictions, to inspect and test the unit(s) in accordance with PSC's expert consultant Ms. Mary DeVany's Test Protocol.

4. Prior to the Court's selection of the Bellwether Plaintiffs in April 2009, the only Testing Protocol PSC had issued or implemented was the Testing Protocol prepared by their PSC's expert/consultant Ms. Mary DeVany.

5. In Summer/Fall of 2008, PSC requested that the Government make available an unspecified number of EHUs for component part/destructive testing. In November 2008, the United States put in place a mechanism to transfer twenty-five (25) unoccupied EHUs to PSC so that they could conduct destructive/component part testing. *See* Exhibit 1, 11/26/2008 Letter to Court/Liaison Counsel; Joint Report No. 7, §VIII (C & D) [Docket No. 851]; Joint Report No. 8, §IX(A) at 9 [Docket No. 1075].

6. Since November 2008, PSC has not sought to purchase unoccupied EHUs from

the United States for purposes of conducting destructive/component part testing.

7.      In late April 2009, PSC at a Chambers Conference suggested to the Court that they may wish to conduct destructive/component part testing of the four Bellwether units.

8.      On June 9, 2009, PSC issued a Revised and Expanded Test Protocol.  *See* PSC's June 9, 2009, Test Protocol [Docket No. 1805-3].  That Test Protocol provides for a substantially expanded inspection and testing of the Forest River, Inc. Bellwether unit (it incorporates Ms. DeVany's Test Protocol and then sets forth further inspections and testing), and also provides for destructive/component part testing.  *Id*.

## STANDARD OF REVIEW

The relevant section of Fed. R. Civ. P. 16(b) provides that:

> [A] scheduling order that limits the time … to complete discovery . . . and the extent of discovery permitted . . . may be modified only for good cause.

Fed. R. Civ. P. 16(b).  Rule 16(b) authorizes district courts to control and expedite pretrial discovery through a scheduling order.  *See* Fed. R. Civ. P. 16(b).  Consistent with the authority vested in the trial court by Fed. R. Civ. P. 16, the Fifth Circuit gives the district court "'broad discretion to preserve the integrity and purpose of the pretrial order." *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208 (5th Cir.1992) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir.1990)).

Rule 16(b) requires that a party demonstrate good cause to modify a scheduling order deadline.  *See Tunica-Biloxi Indians of Louisiana v. Pecot*, 227 F.R.D. 271, 276-77 (W.D. La. 2005).  The "good cause" standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Southwestern*

*Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir.2003) (quoting 6A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 1522.1 (2d ed.1990)).  "[T]he good cause showing unambiguously centers on [the mover's] diligence.*"  STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F.Supp.2d 845, 851 (E.D. Tex.2004); *see also Verhoeven v. Balboa Ins. Co.*, No. 06-4891, 2007 WL 4374222, at *7 (E.D. La. 2007) (absence of prejudice to the non-moving party is irrelevant to whether there exists good cause); *Porter v. Milliken & Michaels, Inc*, 2001 WL 378687 *1 (E.D. La. 2001) (same).  "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  *Smith v. United Parcel Svc., Inc.*, 902 F.Supp. 719, 721 (S.D. W.Va.1995); *see also Porter*, 2001 WL 378687 *1 (mere inadvertence by the movant does not satisfy the "good cause" requirement).  In *Dilmar Oil Co, Inc. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D. S.C.1997), the court explained:

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a).  Rule 16(b) does not focus on the bad faith of the movant, or prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.  Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.  In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of a party seeking the extension."  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Id*. at 980 (citations omitted).  *See also Ordemann v. Unidentified Party*, 2008 WL 695253 *2 (E.D. La. 2008) (inexplicable delay and failure to timely move to alter scheduling deadline "is tantamount to no explanation at all").

**ARGUMENT**

The initial lawsuit that is the subject of this Multi-District Litigation was filed in May

5

2006.  *See Hillard v. United States, et. al.*, Civ. Action No. 06-2576 (E.D. La. May 2006).  The Multi-District Litigation Panel determined in November 2007, to invest this Court with responsibility for the management of all actions involving claims of alleged exposure to formaldehyde in Hurricanes Katrina and Rita temporary emergency housing.  *See* Order [Docket No. 1].  This Court thereafter entered an Order requiring all parties to complete inspection and testing of temporary emergency housing units on or before September 2, 2008.  *See* Pretrial Order No. 3 [Docket No. 123].  The Court should deny PSC's request to conduct any further testing of the Forest River Bellwether trailer because they have failed to show that they exercised due diligence but were nevertheless unable to comply with this Court's Scheduling Order.  The Court imposed a September 2, 2008, deadline for completion of all inspections and testing.  Ms. Mary DeVany in Winter 2008 issued a Testing Protocol and from approximately February 2008 through January 2009 PSC used that protocol to test EHUs.  In January 2009, PSC reported to the Court that it had completed its testing and inspection of unoccupied EHUs.  *See* Joint Report No. 8, §IV(B)(2) at p. 5 [Docket No. 1075].

     PSC on June 9, 2009, more than nine months after expiration of the Court's September 2, 2008, testing deadline, issued the Forest River Bellwether Trailer Testing Protocol.  *See* Revised/Expanded Testing Protocol [Docket No. 1805-3].  That Testing Protocol calls for expanded inspection and testing of the Forest River Bellwether unit, as well as destructive/component part testing.  *Id*.  There exists absolutely no "good cause" justifying PSC's failure to issued this Test Protocol prior to September 2, 2008.  If the expanded inspection and testing that PSC now posits is in fact necessary to prove their claims, that protocol should have been issue and implemented by PSC well before the September 2, 2008, inspection and testing

6

deadline.  Simply put, if PSC had acted with due diligence the Court would have addressed any dispute regarding nature and scope of inspection and testing well before September 2, 2008, and the United States and other Defendants would then have been in a position to determine what potential rebuttal experts were required, and what factual evidence it was required to identify to respond and potentially rebut additional evidence PSC would present at trial.  As it now stands, the United States is faced with a moving target, and extremely tight Scheduling Order deadlines that never contemplated such further inspections and testing of the Bellwether units.  That allowing PSC to conduct such testing is disruptive and will more likely than not prevent the parties from maintaining the current Bellwether Scheduling Order deadlines and trial dates is evidenced by the current status of preparation for the Gulf Stream Coach, Inc., Bellwether Trial.  The Bellwether Scheduling Orders envision that each of the Bellwether trials will last two-week.  However, as a result of PSC using a lesser version of the Revised and Expanded Forest River Testing Protocol – one that does not call for destructive/component part testing or blocking of the EHU, more likely than not the trial will a minium of four weeks given that PSC using that expanded Test Protocol resulted in PSC designating twenty (20) expert witnesses, Defendants Gulf Stream Coach, Inc. designating nine (9) 26 expert witness, the United States designating six (6) expert witnesses, and Fluor expected to identify an additional two expert witnesses.  The addition of experts resulting from expanded testing has interfered with the United States' properly prepare its defenses because the tight scheduling deadlines that the Court issued for the first four bellwether trials never contemplated PSC engaging in such further discover.  Allowing PSC to conduct such further inspections and testing while attempt to maintain the current Bellwether Scheduling deadlines raises substantial issues regarding the fundamental fairness and

7

whether these initial trials will satisfy and provide the United States with due process.

Finally, the United States further requests that in the event the Court were inclined to allow PSC to implement the expanded testing and inspection portion of the new Test Protocol, which it should not, the Court should nevertheless prohibit PSC from conducting any destructive/component part testing.  As an initial matter, PSC has failed to demonstrate any actual need to conduct such testing in the instant case.  Further, PSC has failed to demonstrate that it acted with due diligence and that "good cause" exists to extend the September 2, 2008, Scheduling Order deadline to allow such testing.  That such is the case is evident by the fact that PSC since November 2008, had the opportunity to purchase twenty-five (25) unoccupied EHUs so that they could conduct any destructive/component part testing they considered necessary or appropriate.  Exhibit 1, 11/26/08, Letter; Joint Report No. 8 §IX(B) at 9 [Docket No. 1075]. Although this option was available to PSC since November 2008, PSC voluntarily chose not purchase units and conduct destructive/component part testing.  Rather, PSC waited until nine months after the Scheduling Order deadline for completion of testing, and after the Court entered Scheduling Orders for the Bellwether Trials, to raise there desire or alleged need to conduct such testing.  The Court should grant the Motion for Protective Order because PSC failed to act diligently to pursue such discovery and to allow PSC to engage in such discovery at this late date is unfair and will substantially prejudice the United States' ability to prepare its defenses given the current Bellwether Trial Scheduling deadlines and trial dates.

Moreover, given the nature of the destructive/component part testing that PSC seeks to conduct, there remain alternate avenues available to PSC to obtain the data and information that they allegedly seek to discover through such testing.  As PSC recently noted to the Court, the

Government has been selling Hurricane Katrina units as scrap and over a 1,000 units have been sold as scrap. If as PSC suggests, the purpose of the testing is to determine whether a certain manufacturer's units were in fact constructed with low formaldehyde emission materials or to test materials used in the construction of the trailer to determine the rate of formaldehyde off-gassing from such materials, such testing can just as easily be accomplished from testing materials taken from units being offered for sale as scrap as it could be by taking such materials from the Bellwether unit.[2] Nevertheless, to date, PSC has apparently taken no action to acquire those units or conduct such testing. Simply stated, PSC has failed to exercise due diligence to comply with this Court's Scheduling Order and as such the Court should deny their belated untimely request to conduct destructive/component part testing of this Forest River unit.

---

[2] The United States recognizes that the evidence collect from the unit at issue may be more persuasive then evidence collected from randomly selected units offered for sale as scrap. However, unless PSC intends to conduct destructive/component part testing of each and every unit, to extend that this is a Bellwether trial and is intended assist parties in determining the merits of the claims, all parties would be better served by PSC relying upon component part testing of scrap or other units purchased from the Government, then testing of the actual Bellwether unit since they have no intent to conduct such testing of each and every unit.

Government has been selling Hurricane Katrina units as scrap and over a 1,000 units have been sold as scrap. If as PSC suggests, the purpose of the testing is to determine whether a certain manufacturer's units were in fact constructed with low formaldehyde emission materials or to test materials used in the construction of the trailer to determine the rate of formaldehyde off-gassing from such materials, such testing can just as easily be accomplished from testing materials taken from units being offered for sale as scrap as it could be by taking such materials from the Bellwether unit.[2]  Nevertheless, to date, PSC has apparently taken no action to acquire those units or conduct such testing. Simply stated, PSC has failed to exercise due diligence to comply with this Court's Scheduling Order and as such the Court should deny their belated untimely request to conduct destructive/component part testing of this Forest River unit.

---

[2] The United States recognizes that the evidence collect from the unit at issue may be more persuasive then evidence collected from randomly selected units offered for sale as scrap. However, unless PSC intends to conduct destructive/component part testing of each and every unit, to extend that this is a Bellwether trial and is intended assist parties in determining the merits of the claims, all parties would be better served by PSC relying upon component part testing of scrap or other units purchased from the Government, then testing of the actual Bellwether unit since they have no intent to conduct such testing of each and every unit.

## CONCLUSION

As such, for all the reasons asserted by Forest River, Inc. and Shaw Environmental, Inc., as well as these additional reasons, the Court should grant the Motion for Protective Order and restrict PSC and their experts/consultants to a single three (3) hour walk-through inspection of the unit at a mutually agreeable date and time.

Dated:  June 20, 2009

| | |
|---|---|
| TONY WEST<br>Assistant Attorney General, Civil Division | Respectfully Submitted,<br><br>ADAM BAIN<br>Senior Trial Counsel |
| J. PATRICK GLYNN<br>Director, Torts Branch, Civil Division | ADAM DINNELL<br>MICHELE GRIEF<br>JONATHAN WALDRON |
| DAVID S. FISHBACK<br>Assistant Director | Trial Attorneys |
| | //S// *Henry T. Miller*<br>HENRY T. MILLER (D.C. Bar No. 411885) |
| OF COUNSEL:<br>JORDAN FRIED<br>Associate Chief Counsel | Senior Trial Counsel<br>United States Department of Justice<br>Civil Division – Torts Branch<br>P.O. Box 340, Ben Franklin Station |
| JANICE WILLIAM-JONES<br>Trial Attorney<br>FEMA/DHS<br>Department of Homeland Security<br>Washington, D.C. 20472 | Washington, D.C. 20004<br>Telephone No:  (202) 616-4223<br>E-mail:  Henry.Miller@USDOJ.Gov<br><br>Attorneys for the United States of America |

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2009, this document and any attachments and exhibits were filed via the U.S. District Court's CM/ECF electronic filing system a copy thereof was served upon Liaison Counsel.

//S// *Henry T. Miller*
HENRY T. MILLER (D.C. Bar No. 411885)