UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE<br>PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-5"<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT UNITED STATES OF AMERICA'S MEMORANDUM
IN RESPONSE AND OPPOSITION TO "PSC'S MOTION FOR PROTECTIVE
ORDER REGARDING FEMA'S SALE OF UNITS" [Docket No. 1759]**

INTRODUCTION

Defendant United States of America ("United States") files this Memorandum in response and opposition to Plaintiffs' Steering Committee's ("PSC") "Motion for Protective Order Regarding FEMA's Sale of Units" [Docket No. 1759]. PSC requests that "a protective order be entered which will prohibit FEMA's sale, donation or disposition of *any* housing unit which either is or presently can be matched to an identified plaintiff in this litigation, pending proper notification to counsel for that plaintiff which will afford counsel access to the unit for appropriate, non-destructive testing and the preservation of evidence." PSC Memorandum in Support of Motion for Protective Order Regarding FEMA Sale of Units at 4 [Docket No. 1759-1]. PSC requests that this hold on disposal or transfer of temporary emergency housing units ("EHU") should remain in place until early January 2010. *Id*. The Court should reject PSC's Motion because they have failed to demonstrate that they acted with due diligence to comply with the Court's deadline for completing inspection and testing of EHUs, and prohibiting FEMA's transfer of 1,073 park model and mobile homes to their current occupants will cause

undue hardship because if that transfer is prohibited, FEMA will be required to evict them and leave them with no alternate housing. *See* Exhibit 1, Declaration of James Walke.

## FACTS

1.      On February 22, 2008, the United States produced to Liaison Counsel a searchable list identifying all temporary EHU – including to the extent possible, the manufacturer, model, vehicle identification number and FEMA barcode of each unit – in FEMA's inventory. The purpose of that document was to allow Liaison Counsel to identify EHUs that they wanted to inspect and test. *See* Exh. 2, 2/22/08, Letter DOJ to Liaison Counsel. Since February 22, 2008, the United States has issued to Liaison Counsel updated FEMA EHU inventory lists. *See* Exh. 3, 1/31/09, Letter DOJ to Liaison Counsel; Exh. 4, 3/20/08, E-Mail, DOJ to Liaison Counsel.

2.      On April 2, 2008, the United States reported to PSC matching information for approximately 3,500 of the 18,000 claimants whose names were searched in the FEMA Recovery and Response Action Tracking System ("FRRATS") database. *See* Exh. 5, 4/2/08, Letter DOJ to Liaison Counsel. The United States advised PSC that to match a higher percentage of claimants, FEMA required the claimants' FEMA identification number, and any additional information that could be provided such as social security number and address where the EHU was installed and occupied. *See Id.*; Exh. 6, 5/7/08, Letter DOJ to Liaison Counsel. Since April 2008, the Government has offered to search the FRRATS database to locate "matching" information for any claimant if PSC produced the additional information for each claimant. *See* Exh. 5, 4/2/08, Letter DOJ to Liaison Counsel; Exh. 6, 5/7/08, Letter DOJ to Liaison Counsel PSC; Exh. 7, 6/06, E-Mails Gov't to Liaison Counsel PSC; Exh. 8, 7/1/08, E-Mail from DOJ to Liaison Counsel; Exh. 9, 7/2/08 E-Mail from DOJ to PLC; Joint Report No. 7 §VIII(G) at 13 [Docket

No. 851].

3.      On April 9, 2008, the Court entered Pretrial Order No. 3 and instructed the parties that "[u]nless otherwise ordered, all testing of housing units shall be completed by Tuesday, September 2, 2008." Pretrial Order No. 3 [Docket No. 123].[1] Consistent with the Court's Order, until September 2, 2008, the Government had in place a litigation hold preventing FEMA from disposing of EHUs.[2] During this time, Liaison Counsel and their experts/consultants, and any

---

[1] In its recent Orders granting Fleetwood Enterprises, Inc. and Gulf Stream Coach, Inc.'s Motions for Protective Order, the Court succinctly summarized the Orders it had issued relating to testing of EHUs.

> In Pretrial Order No. 3, this Court initially set EHU testing deadlines. (Rec. Doc. 123). Pretrial Order No. 4 extended some of those same deadlines. (Rec. Doc. 130). In its June 10, 2008 Order and Reasons, the Court denied several motions to stay and/or extend discovery, testing, and procedural deadlines, but noted that it would entertain motions filed by newly-added defendants to extend specific deadlines for a specific number of days for good cause shown. (Rec. Doc. 328). In a June 26, 2008 Order, the Court continued the deadline for testing of new and unused units in Hope, Arkansas. (Rec. Doc. 399). In Pretrial Order No. 21, the Court issued an order relative to the possible transfer of EHUs. (Rec. Doc. 862). In a December 22, 2008 telephone conference, the Court and the parties discussed the destructive testing of EHUs. (Rec. Doc. 1011). In Pretrial Order No. 26, the Court issued an order relative to the destructive testing of EHUs. (Rec. Doc. 1022).

Order and Reasons at 2 fn.2 [Docket No. 1493]; Order and Reasons at 2, fn. 3 [Docket No. 1547].

[2] This litigation hold placed a substantial burden on the taxpayers. Prior to imposition of that litigation hold FEMA had in principle an agreement with the Bureau of Prison Industries to dispose of the EHUs. Once it became evident that the disposal of any units would be subject to oversight by Department of Justice, the Court, and other parties involved in this litigation, the Bureau of Prison Industries refused to move forward with the agreement and dispose of any units. That the cost of retaining these units has been substantial has already been acknowledged by the Court and parties, but Congress has also evidenced that it has significant concerns regarding those costs. Exh. 10, March 26, 2009, Senate Bill 713; Exh. 11, Declaration of Gordon Hacket; Exh. 12, 6/24/08, FEMA Report Provided Congress.

were allowed access to FEMA's facilities to inspect and/or test EHUs that they considered necessary to prove their claims or defenses.  *See* Joint Report No. 5, §III – Testing of Trailers at pp. 2-5 [Docket No. 653].

    4.    On September 3, 2008, the United States lifted the litigation hold on FEMA's disposal of EHUs.  Nevertheless, since September 2, 2008, the United States has continued to allow Liaison Counsel and their experts/consultants to access FEMA's storage facilities for purposes of conducting any inspection or testing of EHU that they considered necessary or appropriate to prove their claims and defenses.  *See* Joint Report No.6, §III – Testing of Trailers at pp. 6-8 [Docket No. 712].

    5.    In November 2008, PLC represented that they expected to complete all testing of formerly occupied units at all FEMA storage facilities, except the Hope, Arkansas facility, by the end of November 2008.  *See* Joint Report No. 7, §III at pp. 3-7 [Docket No.851].

    6.    In January 30, 2009, PSC reported that it had completed all testing of EHUs in FEMA's possession and custody, and reported to the Court that it "is in the process of developing its statistical sample model and [sic] have not foregone the possibility that opportunity to perform additional testing of units at FEMA facility will be requested."  *See* Joint Report 8, §IV(B)(2) at 5 [Docket No. 1075].

    7.    On May 4, 2009, PSC issued a Testing Protocol for the Gulf Stream Coach, Inc. Bellwether EHU.  Exh. 13, May 4, 2009, Revised And Expanded Gulf Stream Coach, Inc. Bellwether Testing Protocol.  On May 6, 2009, the Court issued an Order and allowed PSC to reinspect and retest the Gulf Stream Coach, Inc. Bellwether EHU.  *See* Order [Docket No. 1411].

    8.    On May 18, 2009, the Court granted Gulf Stream Coach, Inc., Motion for

Protective Order (converted by the Court to a Motion in *Limine*) because "Plaintiffs offer no reason as to why these tests could not have been done." Order and Reasons at 2 [Docket No. 1547]. The Court further explained that:

> [T]his Court has been more than indulgent throughout this entire process in extending testing deadlines. In the numerous conferences held wherein the testing of EHUs was discussed in detail, the Court does not recall any instance wherein Plaintiffs suggested that additional, more specific testing would need to be conducted after bellwether plaintiffs were selected, or even just to get a more complete and comprehensive expert opinion on any EHU. Plaintiffs never attempted to reserve any right to re-test EHUs to obtain more thorough, informative and detailed test results once bellwether plaintiffs were selected, or for any other reason.
>
> As noted previously be the Court in its May 15, 2009 Order and Reasons relating to Fleetwood's Motion for Protective Order (Rec. Doc. 1493), not once during this ongoing discussion over several months did Plaintiffs state that their expert reports could not be completed without this third test, or that their experts' protocol required an additional round of different testing. . . . Plaintiffs could and should have tested this EHU and other EHUs before testing deadlines had run, if multiple test results were considered necessary. The time for conducting such testing has long passed; thus, the results from this duplicative, untimely testing will not be allowed.

Order and Reasons at 2-3 [Docket No. 1547].

9. In May 2009, FEMA's authority to continue to provide temporary emergency housing to Hurricane Katrina and Rita disaster victims expired. Exh. 14, 6/3/09, FEMA Press Release. One-thousand and seventy-three (1,073) disaster victims still reside in park model trailers and mobile homes. *See* Exh. 1, Declaration of James Walke ¶¶5-6. Because FEMA can no longer provide temporary emergency housing, if ownership of the units is not transferred to the occupants, FEMA must evict them and this may potentially leave these disaster victims with no alternate housing. *Id*. ¶¶1-6. On June 3, 2009, FEMA announced that it would sell up to

5

1,073 park model trailers and mobile homes to their occupants for a nominal amount, and to protect families against formaldehyde risk all those units must pass state tests prior to transfer. *See* Exh. 14, June 3, 2009, FEMA Press Release.

     10.     On June 3, 2009, the Court E-Mailed Liaison and Government Counsel with the following request:

> Counsel - Having read the attached Washington Post article, Judge Engelhardt is curious as to whether any of you would like to comment on this "humane and secure transition", and how, if at all, it relates to this litigation - particularly based on our recent discussion about the acquisition of EHUs for destructive testing purposes.

*See* Exh. 15.

     11.     On June 3, 2009, the United States responded to the Court's question and stated that:

> I suspect that this request is directed primarily towards PSC and non-Government Defendants since the article appears to be reporting a Government decision and as well as comments made by Government officials responsible for making that decision.  As the Government lawyer for this case, however, I do believe that if accurate, this action by the Government simply constitutes further evidence that decisions regarding the continued use of temporary Emergency Housing Units -- even after the Government had concerns about formaldehyde in the units and in the absence of any specific and mandatory statue or regulation -- is protected by the discretionary function decision because such decisions in context of a Stafford Act emergency response are susceptible to policy analysis.
>
> As for component part/destructive test -- if this report is accurate and ownership of EHUs are actually transferred to private parties, this may provide an alternate method for parties to obtain EHUs (without Court oversight) for purposes of conducting component part/destructive testing.

*Id*.

     12.     On June 4, 2009, PLC in response informed the Court that:

> We think that the article raises serious concerns that should be discussed with Judge Engelhardt particularly in light of the recent preemption ruling. Understanding that the Judge will be out Monday through Wednesday, could we schedule a phone conference for Thursday?

Exh. 16. In response to the Court request for a more detailed explanation, PSC issued a second email noting its concern that the transfer of these units may make these units unavailable to PSC for future inspection and testing. *Id*.

      13.     On June 12, 2009, the Court held a telephone status conference with Liaison and Government counsel to discuss PSC's concern. *See* Minute Entry [Docket No. 1754]. PLC noted that the EHUs that FEMA proposed to transfer to disaster victims may have been previously occupied by claimants in this litigation, and that FEMA's disposal of the units will prevent the United States from being able to make those units available to PLC for inspection and/or testing.[3] The Court advised PLC that it should file a motion seeking from the Court a narrowly tailored Protective Order addressing its concerns.

## STANDARD OF REVIEW

The relevant section of Fed. R. Civ. P. 16(b) provides that:

> [A] scheduling order that limits the time … to complete discovery . . . and the extent of discovery permitted . . . may be modified only for good cause.

Fed. R. Civ. P. 16(b). Rule 16(b) authorizes district courts to control and expedite pretrial discovery through a scheduling order. *See* Fed. R. Civ. P. 16(b). Consistent with the authority

---

[3] PLC is not concern about transfers of units that are currently occupied by Plaintiffs since that would improve PSC's ability to test or inspect the unit. Rather PSC is apparently concerned that some unspecified number of the units are occupied by persons who are not Plaintiffs and that the units were formerly occupied by Plaintiffs. PSC believes transfer of the unit to the current occupant may prevent or restrict PSC's ability to access and inspect such any such units.

vested in the trial court by Fed. R. Civ. P. 16, the Fifth Circuit gives the district court "'broad discretion to preserve the integrity and purpose of the pretrial order." *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208 (5th Cir.1992) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir.1990)).

   Rule 16(b) requires that a party demonstrate good cause to modify a scheduling order deadline. *See Tunica-Biloxi Indians of Louisiana v. Pecot*, 227 F.R.D. 271, 276-77 (W.D. La. 2005). The "good cause" standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir.2003) (quoting 6A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 1522.1 (2d ed.1990)). "[T]he good cause showing unambiguously centers on [the mover's] diligence.*" STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F.Supp.2d 845, 851 (E.D. Tex.2004); *see also Verhoeven v. Balboa Ins. Co.*, No. 06-4891, 2007 WL 4374222, at *7 (E.D. La. 2007) (absence of prejudice to the non-moving party is irrelevant to whether there exists good cause); *Porter v. Milliken & Michaels, Inc*, 2001 WL 378687 *1 (E.D. La. 2001) (same). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Smith v. United Parcel Svc., Inc.*, 902 F.Supp. 719, 721 (S.D. W.Va.1995); *see also Porter*, 2001 WL 378687 *1 (mere inadvertence by the movant does not satisfy the "good cause" requirement). In *Dilmar Oil Co, Inc. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D. S.C.1997), the court explained:

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause"

> means that scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of a party seeking the extension." Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Id*. at 980 (citations omitted). *See also Ordemann v. Unidentified Party*, 2008 WL 695253 *2 (E.D. La. 2008) (inexplicable delay and failure to timely move to alter scheduling deadline "is tantamount to no explanation at all").

**ARGUMENT**

The Court should deny PSC's Motion for Protective Order because they have failed to establish "good cause," to extend the Court's September 2, 2009, deadline for completion of all inspections and testing of EHUs that are the subject of this multi-district litigation. *See* Pretrial Order No. 3 [Docket No. 123]. Furthermore, because FEMA's authority to provide temporary emergency housing assistance for Hurricane Katrina and Rita disaster victims expired in May 2009, entry of the requested Protective Order will cause undue hardship because it will require FEMA to evict the 1,073 occupants of the park model trailers and mobile homes leaving these persons with no alternate housing. *See* Exhibit 1, Declaration of James Walke.

Pretrial Order No.3 required all parties, including PSC, to complete inspections and testing of EHUs by September 2, 2008. *See* Pretrial Order No. 3 [Docket No. 123]. PSC has understood from the get go that this Order required them to complete any inspections and all testing necessary to prove their claims by September 2, 2009. Thus, PSC in their May 2009, Memorandum filed in opposition to various newly added Defendant Manufacturer's Motion to Stay Testing, *see* Motions [Docket Nos. 232, 249, 262, 271, 273, 275, 277, 279 and 281], argued that PSC has:

9

> gone to great lengths in order to meet the deadlines for testing set out in Pre-Trial Order Number 3 (DOC 123), the PSC accepts as a priority the directive that all parties complete testing so that the U.S. Government may begin the process of destroying /dismantling travel trailers and thereby lessen the tax-payer burden of paying to store these units. The Court's deadlines also reflect the importance of testing mobile housing units so that they become available to the victims of future natural and man-made disasters. . . . All parties in this litigation have worked diligently to honor the wishes of this Court to complete testing and free the litigation hold on housing units in the Government's inventory. The PSC will make every effort to work with the newly-added defendants to accomplish this task.

PSC Memorandum In Response to Motions To Stay or Extend Discovery, Testing and Procedural Deadlines at 2 [Docket No. 300].

Moreover, PSC acknowledged in September 2008, that FEMA has the authority to dispose of any EHU used or occupied by a Hurricane Katrina or Rita disaster victim, and it has always known that it is FEMA's intention to dispose of EHUs as soon as a mechanism is put in pace to accomplish that task. Thus, in the September 30, 2008, Joint Report No. 6, PSC acknowledged that "[a]lthough testing is still ongoing, FEMA is not precluded from the destruction of units beginning approximately 11,000 damaged units." Joint Report No. 6, §III at 6 [Docket No. 712]. In the November 10, 2008, Joint Report No. 7, PSC acknowledged that "[a]lthough testing is ongoing, FEMA is not precluded from disposing of units." Joint Report 7, §IV at 3 [Docket No. 851]. Finally, in the January 30, 2009, Joint Report No. 8, PLC acknowledged that it had completed testing of formerly occupied units and that it "is in the process of developing its statistical model and have not foregone the possibility that opportunity to perform additional testing of units at FEMA facilities will be requested." Joint Report 8, §IV(B)(2) at 5 [Docket No. 1075]. In the March 26, 2009, Joint Report No. 9, the parties reported to the Court that perhaps one or more of the Bellwether EHUs may need to be inspected

and tested in the event that the Court selects as a Bellwether claimant a person whose EHU had not previously been inspected and tested. *See* Joint Report 9, §XI at 12 [Docket No. 1220].

From January 2009 to June 2009, the only efforts PSC expended to inspect and test is their requests to reinspect, conduct expanded inspections, retest, and conducted expanded testing of the Bellwether Trial EHUs. *See* Exh. 13, May 4, 2009, Revised and Expanded Testing Protocol for to Gulf Stream Coach, Inc.; Exh. 17, June, 11, 2009, Revised and Expanded Testing Protocol for Fleetwood Enterprises, Inc.; Exhibit 18, June 9, 2009, Revised and Expanded Testing Protocol for Forrest River, Inc. PSC now suggests that the notwithstanding their January 2009 representation that they had completed all necessary inspections and testing of EHUs in FEMA's possession and custody, and their failure to inspect or test any EHUs in FEMA's possession and custody during the last six months, that they exercised due diligence and that there exists "good cause" for entry of a Protective Order prohibiting disposal of any EHU that may have been occupied by a claimant until January 2010. Simply put, PSC's failure to make any efforts to inspect or test unoccupied EHUs over the past six-months demonstrates that they failed to exercise due diligence to comply with this Court's deadline, and their request for a litigation hold prohibiting FEMA from disposing of any EHUs should be denied.[4]

Further, any suggestion that PSC's ability to inspect and test was unavoidable because

---

[4] PSC's failure to act with due diligence and comply with this Court's inspection and testing deadline is also reflected by their failure to pursue component part/destructive testing. In November 2008, in response to PSC's request, the United States agreed to sell and transfer EHUs available to PSC so that they could conduct component part/destructive testing. *See* Exh. 19, 11/26/08, Letter DOJ to Liaison Counsel; *see also* Joint Report No. 8, §IX(A) at 9 [Docket No. 1075]. PSC never pursued the United States offer any further and did not revisit the issue of destructive/component part testing until issuing their June 9, 2009, Revised and Expended Forest River, Inc., Bellwether Test Protocol. *See* Exhibit 18, June 9, 2009, Revised and Expanded Test Protocol.

11

PSC lacked the ability to "match" claimants with a particular unit or locate a particular unit is specious.  Since February 2008, PSC has had the ability to identifying the location of unoccupied EHUs in FEMA's possession and custody, *see* Exh. 1, 2/22/08, Letter DOJ to PLC, and since April 2, 2008, the Government has offered to run database searches to match claimants if PSC provide claimant specific information.  *See* Exh. 3, 4/2/08 Letter DOJ to PSC; Exh. 4, 5/7/08, Letter DOJ to PLC; Exh. 5, 6/06, E-Mails between PLC and Gov't; Exh. 6, 7/1/08, E-Mail from DOJ to PLC; Exh. 7, 7/2/08, E-Mail from DOJ to PLC; Joint Report No. 7 §VIII(G) at 13 [Docket No. 851].  Nevertheless, from April 2008 to January 12, 2009, notwithstanding the Government's offer to run further database searches, the only request received by the United States to run such a search was for claimants represented by Gainsburg, Benjamin, Meunier, & Warshauer, L.L.C.  *See* Exh. 9, 7/2/08, E-Mail, DOJ to Liaison Counsel.

      On January 12, 2009, more than nine-months after PSC was made aware of what actions they had to take to obtain matching information, PSC issued a request that the United States match information for claimants represented by four law firms.  *See* Joint Report No. 8, §IX(B) at 10 [Docket No. 1075].  PSC since that date has issued supplemental requests for matching information for other counsel, and as of March 26, 2009, the United States had only received matching request from ten plaintiffs' counsel.  *See* 3/26/2009, Joint Report No. 9, §V at 9 [Docket No. 1220].  As of May 8, 2009, the United States had completed and provided responses to all of PSC's matching requests.  *See* Joint Report 10, §V at 5-6 [Docket No. 1458].  Notwithstanding the fact that since February 2009, PSC had received matching information in response to their requests, PSC nevertheless made absolutely no attempt to access FEMA facilities to inspect or test any of those claimant's EHUs.

12

PSC has failed to demonstrate good cause for the requested litigation hold.  Moreover, to the extent FEMA still has possession and custody of an EHU that PSC has not inspected and testedt, the United States will accommodate Liaison Counsel, and make any such unit available for inspection and testing at a mutually convenient date and time.  However, imposing any restrictions on FEMA's disposal of units is unjustified given PSC's failure to exercise due diligence.  Moreover, a litigation hold is fundamentally unfair to the United States and the taxpayers who will be forced to bear the substantial administrative costs associated with complying with that Order.

The Court should also deny PSC's Protective Order because it will require FEMA to evict 1,073 Hurricane Katrina and Rita disaster victims from the Park Model Trailers and Mobil Homes and leave them with no alternate housing.  *See* Exh. 1, Dec. James Walke ¶¶1-6; *see also* Exh. 14, 6/3/09, FEMA Press Release.  FEMA's authority to provide temporary emergency housing for Katrina and Rita disaster victims expired in May 2009.  One-thousand seventy-three (1,073) families continue to reside in Park Model Trailers and Mobil Homes.  *See* Exh. 1, Dec. James Walke ¶¶1-6; *see also* Exh. 14, 6/3/09, FEMA Press Release.  FEMA must either sell and transfer ownership of the units to the occupants or evict them and leave them with no alternate housing.  *See* Exh. 1, Dec. James Walke ¶¶1-6; *see* also Exh. 14, 6/3/09, FEMA Press Release.  If the Court grants PSC Motion for Protective Order, FEMA will be required to retain ownership of the EHUs and be law will be required to evict the occupants leaving them with no alternate housing.  PSC has failed to demonstrate that they exercised good cause and made a timely effort to identify whether these occupied units were formerly occupied by any Plaintiff, and/or test make attempt to test these unit.  The Court should not reward PSC for their failure to exercise

13

due diligence or punish the disaster victims for having no alternate available housing. The Court should deny PSC's motion.

## CONCLUSION

For all of these reasons, the Court should deny PSC's Motion for entry of a Protective Order.

Dated:  June 20, 2009                                    Respectfully Submitted,

| | |
|---|---|
| TONY WEST | ADAM BAIN |
| Assistant Attorney General, Civil Division | Senior Trial Counsel |
| | |
| J. PATRICK GLYNN | ADAM DINNELL |
| Director, Torts Branch, Civil Division | MICHELLE BOYLE |
| | JONATHAN WALDRON |
| DAVID S. FISHBACK | Trial Attorneys |
| Assistant Director | |
| | //S// *Henry T. Miller* |
| | HENRY T. MILLER (D.C. Bar No. 411885) |
| OF COUNSEL: | Senior Trial Counsel |
| JORDAN FRIED | United States Department of Justice |
| Associate Chief Counsel | Civil Division – Torts Branch |
| | P.O. Box 340, Ben Franklin Station |
| JANICE WILLIAM-JONES | Washington, D.C. 20004 |
| Trial Attorney | Telephone No:  (202) 616-4223 |
| FEMA/DHS | E-mail:  Henry.Miller@USDOJ.Gov |
| Department of Homeland Security | |
| Washington, D.C. 20472 | Attorneys for the United States of America |

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2009, that this Memorandum in Response and Opposition to PSC's Motion and all Exhibits referenced therein were filed via the U.S. District Court's CM/ECF electronic filing system a copy thereof was served upon Liaison Counsel.

> //S// *Henry T. Miller*
> HENRY T. MILLER (D.C. Bar No. 411885)

14