

**U.S. Department of Justice**

Civil Division, Torts Branch
Environmental Torts

---

*Adam M. Dinnell*  *1331 Pennsylvania Ave., NW, 8004S*
*Trial Attorney*  *Washington, DC 20004*

November 26, 2008

<u>**Via Electronic Mail**</u>

The Honorable Kurt D. Engelhardt
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room C367
New Orleans, LA 70130

Gerald E. Meunier
Justin I. Woods
Gainsburgh, Benjamin, David,
 Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163

Andrew D. Weinstock
Duplass, Zwain, Bourgeois,
 Pfister & Weinstock
Three Lakeway Center, 29th Floor
3838 N. Causeway Blvd.
Metairie, LA 70002

     Re:    **In Re: FEMA Trailer Formaldehyde Product Liability Litigation,**
              **Case No. 2:07-md-01873-KDE-ALC**

Dear Judge Engelhardt and Liaison Counsel:

     This letter is written in response to the Court's Pretrial Order No. 21 [Docket No. 862], which ordered the United States to "report to the Court and opposing counsel its position on (1) whether it is possible for the transfer of emergency housing units ("EHUs") to occur, and (2) if it is possible, how such transfer of units shall occur." It is the United States' understanding that Plaintiffs' Liaison Counsel and Manufacturing Defendants' Liaison Counsel ("PLC" and "MDLC") are interested in obtaining a number of Federal Emergency Management Agency ("FEMA") travel trailer units ("units") for the sole purpose of expert testing. Sale or transfer of the units is made necessary by the fact that Liaison Counsel wish to conduct a type of testing that will require the destruction of the housing units being tested.

EXHIBIT 19

In response to this request, the United States and FEMA have examined several regulatory mechanisms in an attempt to determine whether a direct sale or transfer to Liaison Counsel can be completed. Based on its research, FEMA has determined that section 408(d)(2)(B)(i) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5174(d)(2)(B)(i), provides FEMA with the legal authority to effectuate a direct sale to Liaison Counsel.

FEMA will directly sell Liaison Counsel a certain number of units for the sole purpose of destructive testing as a part of this litigation. This decision has been made in the spirit of cooperation and in an attempt to accommodate the requests of the Court and the parties. However, FEMA's agreement to sell units to PLC and MDLC is subject to certain conditions, some of which have not yet been fully developed. FEMA will continue working to solidify the necessary details. At this point, FEMA will agree to directly sell travel trailer units to PLC and MDLC on the following terms:

1. FEMA will enter into an agreement to sell 25 travel trailer units to PLC, and 25 units to MDLC;

2. The units are being sold for the sole purpose of destructive testing as a part of this litigation;

3. The units will be sold directly to the law firm(s) of Liaison Counsel, and not to private individual attorneys;

4. The units will be sold at a fair market value (*yet to be determined by FEMA*);

5. FEMA will prepare the required sales documents;

6. Only vacant units and those units which are able to be located at FEMA's staging areas will be available for sale;

7. Units that are currently occupied cannot be sold (caveat: if an attorney asks his or her client to move from a travel trailer unit into other housing, and the client subsequently moves and vacates the unit, the unit could then potentially be sold once the resident has relocated);

8. If necessary, the representatives of the law firm(s) may go to the following FEMA staging site(s) _____ (*to be worked out later*) to identify the specific units that they would like to purchase;

9. FEMA must receive five (5) days notice of any testing that is to be performed on the purchased units and be given the opportunity to send representatives to observe any such testing;

10. FEMA must receive the testing protocols for, and the test results/data from, any and all testing that is conducted on purchased units within five (5) days from the date when such testing protocols and test results/data are received by opposing counsel;

11. The law firm(s) signing the sales agreements with FEMA must agree, in writing, to the following terms:

   a. These units are being sold solely for the purpose of destructive/component part testing and will not be used for habitation or recreational purposes;

   b. These units will not be transferred, sold, donated, or otherwise provided to any entity or party for habitation or recreational purposes subsequent to this sale;

   c. These units are sold subject to an indemnity and/or hold harmless agreement between FEMA and the law firm(s), acknowledging that the law firm(s) will be responsible for any and all injuries associated with the units after the law firm(s) take possession of said units;

   d. The units are sold as is, where is;

   e. The law firm(s) are responsible for picking up the units within _____ (*to be worked out later*) days after the sales agreement is signed;

   f. The law firm(s) are responsible for the final disposal of all purchased units in compliance with all state and federal laws.

At this time, FEMA has not yet made a decision regarding how much individual units will cost, but is working to resolve this issue. As the United States and FEMA continue to work towards the completion of this sale, Government Counsel will continue to update the Court and opposing counsel as additional developments occur.

Although FEMA has agreed to directly sell units to Liaison Counsel, it is currently unable to provide a specific time frame for the delivery of the units. To expedite this process, FEMA requests that PLC and MDLC each provide a spreadsheet listing the VIN and FEMA bar code for the units they would like to purchase. As stated above, FEMA intends to sell a maximum of 25 units to PLC and 25 units to MDLC. The spreadsheet should list the units PLC/MDLC would like to purchase (given the terms and conditions described above), only contain currently unoccupied units, and rank the units in order of preference (including alternates beyond the number of units requested, in the event that certain units cannot be readily located). Using the information contained in these spreadsheets, FEMA will attempt to locate the requested units, set them aside, and assign a value to them as quickly as possible.

If you require any additional information, please do not hesitate to contact me.

Regards,

s/ Adam M. Dinnell
ADAM M. DINNELL
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Environmental Torts
Adam.Dinnell@usdoj.gov
202-616-4211

cc:  JORDAN FRIED
Associate Chief Counsel
JANICE WILLIAMS-JONES
Trial Attorney
DHS/FEMA