UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                         MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                SECTION N-5
                                            JUDGE ENGELHARDT
                                            MAG. JUDGE CHASEZ

**This Document Relates to:**
***Dubuclet v. Fleetwood Enterprises, Inc., et. al. Case No. 07-9228***

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT UNITED STATES OF AMERICA'S RESPONSE TO
FLEETWOOD ENTERPRISES, INC. AND FLUOR ENTERPRISES, INC.'S
"MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFFS' NEW
TESTING PROTOCOL" [Docket No. 1814]**

Defendant United States of America hereby adopts and joins in Defendants Fleetwood

Enterprises, Inc. ("Fleetwood") and Fluor Enterprises, Inc.'s ("Fluor") "Motion for Protective

Order Regarding Plaintiffs' New Testing Protocol," [Docket No. 1814].  The United States for

the additional reasons set forth herein, further objects and requests that the Court grant the

Defendants' Motion and enter a Protective Order that restrict Plaintiffs' Steering Committee

("PSC") and their experts/consultants to a single three-hour walk-through inspection, and testing

of the temporary emergency housing unit ("EHU") using PSC's March 2008, Test Protocol.

In addition to the reasons set forth by Fleetwood and Fluor, the Court should impose such

a Protective Order because PSC has failed to exercise due diligence and issue the June 11, 2009,

Test Protocol in a timely manner.  PSC issued the revised Test Protocol nine-months after the

Court's deadline for completion of inspection and testing, *see* Pretrial Order No. 3 [Docket No.

123], and less than a week before their expert witness reports were due.  *See* Trial II Scheduling

Order at 2 (June 17, 2009, PSC Expert Report Deadline and August 25, 2009, Discovery

Deadline) [Docket No. 1306].   Moreover, PSC represented to the Court in January 2009, that it had completed all required testing of unoccupied EHUs.  *See* Joint Report No. 8, §IX(A) at 9 [Docket No. 1075].  Finally, allowing PSC to implement and inject results from this proposed Revised Testing Protocol into the Fleetwood Bellwether trial at this late date, approximately two months before the August 25, 2009, discovery deadline, will be disruptive to the Bellwether Trial Scheduling Orders because fundamental fairness and due process will require the Court to modify existing discovery deadlines and reset the trial for a later date.

## FACTS

1.      On November 30, 2007, Ms. Dubuclet filed suit on behalf of herself and her child on November 30, 2007.  *See* 11/30/07, *Aldridge, et. al. v. Gulf Stream Coach, Inc., et. al.*, Civ. No. 2:07-cv-09228-KDE-ALC, Complaint, Attachment A at p.1 [Docket No. 1].

2.      In March 2008, PSC's issued their Testing Protocol.  *See* Exh. 3, March 2008, DeVany, Test Protocol.

3.      On April 3, 2008, the Court entered Pretrial Order No. 3 requiring parties to complete all inspection and testing of temporary emergency housing units ("EHU") on or before September 2, 2008.  *See* Pretrial Order No. 3 [Docket No. 123].[1]

---

[1]  The Court in its recent Orders granting Fleetwood Enterprises, Inc. and Gulf Stream Coach, Inc.'s Motions for Protective Order, the Court succinctly summarized Orders it had issued relating to testing of EHUs.

In Pretrial Order No. 3, this Court initially set EHU testing deadlines. (Rec. Doc. 123).  Pretrial Order No. 4 extended some of those same deadlines. (Rec. Doc. 130).  In its June 10, 2008 Order and Reasons, the Court denied several motions to stay and/or extend discovery, testing, and procedural deadlines, but noted that it would entertain motions filed by newly-added defendants to extend specific deadlines for a specific number of days for good cause shown.  (Rec. Doc. 328).  In a June 26, 2008 Order, the Court continued the deadline for testing of new and

4.      On August 22, 2008, PSC appointed Ms Dubuclet and her child as Class Representatives.  *See* 8/22/08, Notice of Class Representatives, Attachment 1 at p. 1 [Docket No. 666].

5.      The United States as part of Class Action Status discovery produced to Liaison Counsel Ms. Dubuclet's FEMA Individual Assistance File.  *See* 9/30/08, Joint Report No. 6, §II(B) at 3 [Docket No. 712].  That Individual Assistance File contained trailer "matching" information.  *See* Exh. 1, FEMA Dubuclet FEMA Individual Assistance File at FEMA20-000012.

6.      On August 26, 2008, the United States produced to Liaison Counsel a searchable Excel Spreadsheet identifying EHUs that FEMA considered unrepairable and that it intended to dispose of after September 2, 2008.  Exh. 2, 8/26/08, E-Mail DOJ to Liaison Counsel w/Attachments.  The United States also produced a second Excel Spreadsheet identifying EHUs on the disposal list that PSC had indicated that they wanted to test.  *Id*.  Ms. Dubuclet's EHU was identified as an unrepairable unit that FEMA intended to dispose of after September 2, 2008.  *Id*.; *see also* 9/30/08, Joint Report No. 6, §III (PSC acknowledged that FEMA was "not precluded from the destruction of the approximate 11,000 unrepairable damaged units).

7.      Since expiration of the September 2, 2008, testing deadline the Federal

_____

unused units in Hope, Arkansas. (Rec. Doc. 399). In Pretrial Order No. 21, the Court issued an order relative to the possible transfer of EHUs. (Rec. Doc. 862). In a December 22, 2008 telephone conference, the Court and the parties discussed the destructive testing of EHUs. (Rec. Doc. 1011)  In Pretrial Order No. 26, the Court issued an order relative to the destructive testing of EHUs. (Rec. Doc. 1022).

Order and Reasons at 2 fn.2 [Docket No. 1493]; Order and Reasons at 2, fn. 3 [Docket No. 1547].

Emergency Management Agency ("FEMA") has had no duty or obligation to retain any EHUs, and PSC acknowledged in September 2008 that FEMA may dispose of EHUs which have been designated "unrepairable." *See* 9/30/08, Joint Report No. 6, §III (PSC acknowledged that FEMA was "not precluded from the destruction of the approximate 11,000 unrepairable damaged units).

       8.      On June 11, 2009, PSC issued the Fleetwood Bellwether Trial Testing Protocol and requested permission to inspect the Dubuclet EHU using that protocol. *See* Exh. 4, 6/11/09, PSC Fleetwood Bellwether Trial Testing Protocol.

       9.      PSC's Fleetwood Bellwether Trial Testing Protocol substantially expands and modifies PSC's March 2008 Test Protocol. *Id*. The differences between the two Test Protocols is explained in detail by Forest River and Shaw in their Memorandum in Support of the Motion. In addition, the new Test Protocol also imposes substantial administrative duties and restrictions upon the Department of Justice and FEMA, including, but not limited to requiring the Government: (1) to prepare the unit for testing and move the EHU to a separate location at the FEMA facility, *see* Exh. 4, 6/11/09, PSC Fleetwood Bellwether Trial Testing Protocol, §1(a)(iii-iv) at p. 1; (2) document whether doors and window are open and if open close them, *Id.,* §1(a)(ii, xi) at p.1, 2; (3) allow PSC to conduct a walk-through inspection one-week before commencement of testing, *Id.,* §1(a)(v) at p.2; (4) make a power source available for PSC's testing of the unit, *Id.,* §1(a)(vii) at p.2; (5) lock and secure the trailer, *Id.,* §1(a)(xii) at p.2; (6) maintain an entry/exit log, *Id.,* §1(a)(xiv) at p.2; (7) verify that trailer has remained closed at least 72 hours prior to start of inspection and testing, *Id.,* §1(a)(xv) at p.3; (8) keep the Storage Facility open after normal operating hours; *Id.,* §1(a)(xxi) at p.3; (9) to alter and modify it the requirement that PSC will provide the names of all persons seeking access to facility and a

4

signed and dated indemnity/contribution and hold harmless agreement from those persons at least

24 hours in advance of the person being allowed entry to the facility, *Id.,* §1(a)(xxiii) at p.3; (10)

allow an unlimited number of PSC attorneys and other persons to be present at any walk-through

inspection or testing, *Id.,* §1(a)(xxiv) at p.4; (11) to forego having any legal counsel or FEMA

employees present in the EHU during testing of the unit, *Id.,* §1(a)(xxx) at p.4.

## STANDARD OF REVIEW

The relevant section of Fed. R. Civ. P. 16(b) provides that:

> [A] scheduling order that limits the time … to complete discovery . . . and
> the extent of discovery permitted . . . may be modified only for good
> cause.

Fed. R. Civ. P. 16(b).  Rule 16(b) authorizes district courts to control and expedite pretrial

discovery through a scheduling order.  *See* Fed. R. Civ. P. 16(b).  Consistent with the authority

vested in the trial court by Fed. R. Civ. P. 16, the Fifth Circuit gives the district court "'broad

discretion to preserve the integrity and purpose of the pretrial order." *Turnage v. Gen. Elec. Co.*,

953 F.2d 206, 208 (5th Cir.1992) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th

Cir.1990)).

Rule 16(b) requires that a party demonstrate good cause to modify a scheduling order

deadline.  *See Tunica-Biloxi Indians of Louisiana v. Pecot*, 227 F.R.D. 271, 276-77 (W.D. La.

2005).  The "good cause" standard requires the "party seeking relief to show that the deadlines

cannot reasonably be met despite the diligence of the party needing the extension." *Southwestern

Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir.2003) (quoting 6A Charles Alan

Wright, *et al.*, Federal Practice and Procedure § 1522.1 (2d ed.1990)).  "[T]he good cause

showing unambiguously centers on [the mover's] diligence.*"  STMicroelectronics, Inc. v.*

5

*Motorola, Inc.*, 307 F.Supp.2d 845, 851 (E.D. Tex.2004); *see also Verhoeven v. Balboa Ins. Co.*,

No. 06-4891, 2007 WL 4374222, at *7 (E.D. La. 2007) (absence of prejudice to the non-moving

party is irrelevant to whether there exists good cause); *Porter v. Milliken & Michaels, Inc*, 2001

WL 378687 *1 (E.D. La. 2001) (same). "[C]arelessness is not compatible with a finding of

diligence and offers no reason for a grant of relief." *Smith v. United Parcel Svc., Inc.*, 902

F.Supp. 719, 721 (S.D. W.Va.1995); *see also Porter*, 2001 WL 378687 *1 (mere inadvertence by

the movant does not satisfy the "good cause" requirement). In *Dilmar Oil Co, Inc. v. Federated

Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D. S.C.1997), the court explained:

> Rule 16(b)'s "good cause" standard is much different than the more lenient
> standard contained in Rule 15(a). Rule 16(b) does not focus on the bad
> faith of the movant, or prejudice to the opposing party. Rather, it focuses
> on the diligence of the party seeking leave to modify the scheduling order
> to permit the proposed amendment. Properly construed, "good cause"
> means that scheduling deadlines cannot be met despite a party's diligent
> efforts. In other words, this court may "modify the schedule on a showing
> of good cause if [the deadline] cannot be met despite the diligence of a
> party seeking the extension." Carelessness is not compatible with a
> finding of diligence and offers no reason for a grant of relief.

*Id*. at 980 (citations omitted). *See also Ordemann v. Unidentified Party*, 2008 WL 695253 *2

(E.D. La. 2008) (inexplicable delay and failure to timely move to alter scheduling deadline "is

tantamount to no explanation at all").

**ARGUMENT**

The initial lawsuit that is the subject of this Multi-District Litigation was filed in May

2006. *See Hillard v. United States, et. al.*, Civ. Action No. 06-2576 (E.D. La. May 2006).

Bellwether Plaintiff Ms. Dubuclet filed suit against Fleetwood in November 2007, and the Multi-

District Litigation Panel determined in November 2007 to invest this Court with responsibility

for the management of all actions involving claims of alleged exposure to formaldehyde in

Hurricanes Katrina and Rita temporary emergency housing.  *See* Order [Docket No. 1]; 11/30/07,

*Aldridge, et. al. v. Gulf Stream Coach, Inc., et. al.*, Civ. No. 2:07-cv-09228-KDE-ALC,

Complaint, Attachment A at p.1 [Docket No. 1].

In March 2008, PSC issued its EHU Test Protocol.  *See* Exhibit 3, 3/08, DeVany Test

Protocol.  This Court thereafter entered an Order requiring all parties to complete inspection and

testing of EHUs on or before September 2, 2008.  *See* Pretrial Order No. 3 [Docket No. 123].

PSC recognized that this Order required them to complete any inspections and all testing

required to prove their claims by September 2, 2009.  Thus, PSC in their May 2009,

Memorandum filed in opposition to various newly added Defendant Manufacturer's Motion to

Stay Testing,  *see* Motions [Docket Nos. 232, 249, 262, 271, 273, 275, 277, 279 and 281],

explained that it has:

> gone to great lengths in order to meet the deadlines for testing set out in
> Pre-Trial Order Number 3 (DOC 123), the PSC accepts as a priority the
> directive that all parties complete testing so that the U.S. Government may
> begin the process of destroying /dismantling travel trailers and thereby
> lessen the tax-payer burden of paying to store these units.  The Court's
> deadlines also reflect the importance of testing mobile housing units so
> that they become available to the victims of future natural and man-made
> disasters. . . . All parties in this litigation have worked diligently to honor
> the wishes of this Court to complete testing and free the litigation hold on
> housing units in the Government's inventory.  The PSC will make every
> effort to work with the newly-added defendants to accomplish this task.

PSC Memorandum In Response to Motions To Stay or Extend Discovery, Testing and

Procedural Deadlines at 2 [Docket No. 300].

The Court should enter a Protective Order that restrict PSC to a single three-hour walk-

through inspection and testing of the unit using their March 2008, Test Protocol.  The Court

should enter such an Oder because PSC has failed to show that they exercised due diligence to inspect and test this unit in a timely manner, and allowing PSC to proceed with their June 11, 2009, revised Testing Protocol without altering and modifying the Scheduling Order Deadlines and modifying the trial date will substantially prejudice the United States' ability to prepare its defenses in this matter.

There exists absolutely no "good cause" justifying PSC's failure to issued this revised Test Protocol prior to September 2, 2008.  If this expanded inspection and testing were in fact necessary to prove Plaintiffs claims, the PSC was required to issue and implement that protocol prior to September 2, 2009, and at the very least, prior to January 2009, when PSC it reported to the Court that it had completed all inspections and testing of unoccupied units.  *See* Joint Report No. 8, §IV(B)(2) at p.5 [Docket No. 1075].  Simply put, PSC has failed to act with due diligence and now a little more than two months before the close of discovery seeks to interject into this trial test data that was never contemplated by the United States or the Court when the Scheduling Order was entered.  *See* Order and Reasons [Docket No. 1493]; Order and Reasons [Docket No. 1547]; *see also* Trial II Scheduling Order at 2 [Docket No. 1306].

Further, PSC's failure to proffer this revised Test Protocol in a more timely manner unfairly interferes with the United States preparation for trial, and places the United States in the position of being unable to determine a little less than two months before the close of discovery, and approximately one and a half-months before its expert reports are due what evidence it will require to rebut PSC's claims.  PSC through the issuance of this revised Test Protocol has created a last minute moving target that was never contemplated by the Scheduling Order deadlines and allowing PSC to conduct such testing without modifying the Scheduling Order deadlines and

altering the Trial Date will prevent the United States from have sufficient time to properly prepare its defense.

Finally, in the event the Court is inclined to allow PSC to conduct the additional testing, the United States requests that the Court relieve the United States and FEMA of all responsibility relating to preparing the unit for inspection and testing, or restrictions relating to disposal of the unit after the parties complete any Court sanctioned inspection or testing.  PSC through this Testing Protocol impermissibly seeks to impose upon FEMA the costs and expenses associated with their inspection and testing of the unit.  FEMA agrees to do for this unit what it has done for all units that PSC has requested to test – if the unit can be located it will be made available at a mutually convenient date and time to PSC "as is, where is," and PSC access the unit and conduct any inspection or testing sanctioned by the Court.

## CONCLUSION

As such, for all the reasons asserted by Fleetwood and Fluor, as well as these additional reasons, the Court should grant the Motion for Protective Order and restrict PSC and their experts/consultants to a single three (3) hour walk-through inspection of the unit at a mutually agreeable date and time and testing of the unit using PSC's March 2008 Test Protocol.

Dated:  June 21, 2009                                     Respectfully Submitted,

TONY WEST                                                      ADAM BAIN
Assistant Attorney General, Civil Division       Senior Trial Counsel

J. PATRICK GLYNN                                         ADAM DINNELL
Director, Torts Branch, Civil Division             MICHELE GRIEF
                                                                        JONATHAN WALDRON
DAVID S. FISHBACK                                      Trial Attorneys
Assistant Director

                                                                        //S// *Henry T. Miller*
                                                                        HENRY T. MILLER (D.C. Bar No. 411885)
OF COUNSEL:                                               Senior Trial Counsel
JORDAN FRIED                                             United States Department of Justice
Associate Chief Counsel                                 Civil Division – Torts Branch
                                                                        P.O. Box 340, Ben Franklin Station
JANICE WILLIAM-JONES                            Washington, D.C. 20004
Trial Attorney                                               Telephone No:  (202) 616-4223
FEMA/DHS                                                   E-mail:  Henry.Miller@USDOJ.Gov
Department of Homeland Security
Washington, D.C. 20472                               Attorneys for the United States of America

### CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2009, this document and any attachments and exhibits were filed via the U.S. District Court's CM/ECF electronic filing system a copy thereof was served upon Liaison Counsel.

                                                                        //S// *Henry T. Miller*
                                                                        HENRY T. MILLER (D.C. Bar No. 411885)