**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

IN RE: FEMA TRAILER                                        MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                  SECTION "N-5"

                                                                       JUDGE ENGELHARDT
                                                                       MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*Charlie Age, et al v. Gulf Stream Coach, Inc., No. 09-2892*
*Alana Alexander, individually and on behalf of*
*Christopher Cooper*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF MOTION TO COMPEL DISCOVERY**

MAY IT PLEASE THE COURT:

        Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper, respectfully

requests this Court to issue an order compelling discovery sought from Gulf Stream Coach, Inc.

With the discovery deadline approximately one month away and trial only three months away,

Gulf Stream has refused to commit to produce electronic data, documents, or witnesses for

deposition.

**BACKGROUND**

        The case of *Age, et al v. Gulf Stream Coach, Inc., et al* (of which Ms. Alexander is a

named plaintiff) was filed on February 27, 2009.  On April 6, 2009, the Court selected Ms.

Alexander as the first trial plaintiff.  On April 8, 2009, the Court issued a scheduling order for

this case, setting trial to begin on September 14, 2009.  Notably, the order imposes a discovery

-1-

deadline of July 23, 2009.

In her lawsuit, Ms. Alexander asserts product liability claims relating to her and her family's occupancy of a trailer manufactured by Gulf Stream Coach, Inc. ("Gulf Stream").  Ms. Alexander also asserts claims against Fluor Enterprises, Inc. and the Federal Emergency Management Agency.

On April 10, 2009, the Plaintiffs' Steering Committee ("PSC") propounded upon Gulf Stream a Master Set of Requests for Production of Documents.  These requests sought documents which are generally applicable to all Gulf Stream cases in the MDL.  On May 18, 2009, Gulf Stream responded.[1]

On May 5, 2009, plaintiff sent Gulf Stream a First Request for Production of Documents, relating specifically to Ms. Alexander's and her minor son's claims.  On May 27, 2009, Gulf Stream responded.[2]

Between mid to late May 2009, Gulf Stream produced a few thousand pages of documents, in hard copy only (documents were scanned and produced in .pdf format on CDs).  The production included only a limited number of emails.  Gulf Stream failed to produce any other electronically stored information.

On May 29, 2009, plaintiff's counsel requested that Gulf Stream produce "all purchase orders, invoices and packing slips exchanged between Gulf Stream and their vendors of wood products — decorative plywood, luan and wood products used for roof sheathing, subflooring,

---

[1] *See* Gulf Stream's responses to Master Set of Requests for Production, attached as Exhibit A.

[2] *See* Gulf Stream's responses to the First Request for Production of Documents, attached as Exhibit B.

and cabinetry — from July 1, 2004 to December 31, 2004." While Gulf Stream's counsel has agreed to provide these documents, to date, those documents have not been produced and Gulf Stream's counsel has given no firm date for the production of those documents.

On June 1, 2009, Gulf Stream's in-house counsel testified that, while she had searched for documents, Gulf Stream was still in the process of collecting documents (including electronic data) from its employees, she was taking notes on follow-up items and that document collection was an ongoing process.[3]  However, Gulf Stream has not produced any new documents and refuses to provide the date as to when they will produce these documents.

Gulf Stream has advised that it is able to search its electronic files for responsive electronic documents, however, Gulf Stream contends that Ms. Alexander should bear the costs of this search, attorney review and production of such documents.[4]  In the spirit of compromise, plaintiff's counsel has been amendable to working with Gulf Stream on search terms (which Gulf Stream had originally proposed) and has specifically advised that the plaintiff's do not request Gulf Stream to search back up tapes or to recreate destroyed data.[5]  Further, plaintiff has offered to enter into an e-discovery agreement, like the one entered into by counsel, and adopted by the Court, in the *Digitek MDL*, No. 1968.[6]  Gulf Stream has refused to enter into such a production agreement.

---

[3]*See* Deposition of Elizabeth Ganiere, at p. 12, line 2-7, p. 12, line 21 to p. 13, line 1 attached as Exhibit C.

[4]*See* May 19, 2009, correspondence Gulf Stream counsel, attached as Exhibit D.

[5]*See* June 9, 2009, correspondence from plaintiff's counsel, at p. 2, attached as Exhibit E.

[6]*See* Exhibit F.

As for depositions, aside from the 30(b)(6) depositions, plaintiff deposed two other Gulf Stream employees on June 2, 2009.  While plaintiff's counsel has asked for additional depositions, Gulf Stream refused to schedule any, advising that no depositions will go forward until it has produced documents.  Of course, since Gulf Stream refuses to produce electronic data, unless plaintiff agrees to pay, and will not provide a firm date of when it will produce other documents, effectively Gulf Steam is refusing to produce witnesses for deposition.

**ARGUMENT AND AUTHORITIES**

**I.      E-DISCOVERY AND OTHER DISCOVERY**

Defendant takes the position that Ms. Alexander should pay all costs associated with Defendant's search and production of e-discovery.  The Feral Rules of Civil Procedure and appropriate case law simply do not support that position, and in fact, demonstrate that costs should be born by the defendants alone.

With respect to electronic discovery, the Federal Rules provide:

**FED. R. CIV. P. 34(a):**

A party may serve on any other party a request within the scope of Rule 26(b):

(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

(A) any designated documents or electronically stored information — including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations — stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form…

**FED. R. CIV. P. 34(e):**

Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

-4-

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

**FED. R. CIV. P. 26(b)(2)(B):**

A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

There is a presumption that a responding party must bear the costs of complying with a discovery request. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358 (1978).  Any principled approach to electronic evidence must respect this presumption. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y 2003).

In electronic discovery cases, the responding party must meet its burden by showing that the information sought is not reasonably accessible because of undue burden or cost in order for the court to engage in a cost-shifting analysis. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322-24 (S.D.N.Y 2003). If the responding party fails to meet its burden, the court should not engage in a cost-shifting analysis. *See Mikron Industries, Inc. v. Hurd Windows & Doors, Inc.,* 2008 WL 1805727 *2 (W.D.Wash.)(citing *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322-24 (S.D.N.Y 2003)).

Courts only consider information "inaccessible" when it is a back-up tape or needs to be restored. *See Zubulake*, 217 F.R.D. at 324.  However, even if information needs to be converted to a different format, courts require more than conclusory statements that the request creates an undue burden and cost; courts expect to see detailed documentation of the time and money involved in producing the information. *See Proctor & Gamble Co., v. S.C. Johnson & Son, Inc.,* 2009 WL 440543 (E.D. Tex.); *See Mikron Industries, Inc. v. Hurd Windows & Doors, Inc.,* 2008 WL 1805727 *2 (W.D.Wash.).

Here, the information sought is readily accessible without creating any undue burden on the responding party. Gulf Stream's counsel has testified that Gulf Stream has preserved electronic data.[7]  Plaintiff made it clear that she did not expect Gulf Stream to search back-up tapes or to restore data—which are the only types of data deemed "not reasonably accessible." Because the data is "accessible", the analysis ends here.

Indeed, no Court has ever required a requesting plaintiff to pay the costs of the responding party for accessible electronic data.[8]

---

[7] *See* Exhibit C at p. 13, line 24 to p. 14, line 3.

[8] Indeed, some courts have refused to cost shift even when the requesting party sought inaccessible data. *Quinby v. West AG,* 245 F.R.D. 94 (S.D.N.Y. 2006)(responding party will not be able to shift the conversion costs to the requesting party); *Peskoff v. Faber,* 251 F.R.D. 59 (D.D.C. 2008) (responding party should bear the costs of expensive forensic discovery because data sought should have already been produced); *Semsroth v. City of Wichita,* 239 F.R.D. 630, 634 (D. Kan. 2006)(responding party should bear the costs because it voluntarily chose format to store data at time when they should reasonably have anticipated litigation); *Cason-Merenda v. Detroit Medical Center,* 2008 WL 2714239 (E.D. Mich.)(Court ordered cost shifting is inappropriate for where information produced is accessible); *OpenTV v. Liberate Techs.,* 219 F.R.D. 474, 476 (N.D. Cal. 2003) (shifting costs from the producing party should be considered only when inaccessible data is sought).

Plaintiff respectfully requests that the Court compel Gulf Stream to produce all accessible electronic data immediately and that costs of such production be borne solely by Gulf Stream.

## II.     OTHER DOCUMENTS

The Federal Rules of Civil Procedure provide for a thirty-day deadline to respond to a request for production. FED. R. CIV. P. 34(b)(2)(A). Yet, plaintiff's counsel propounded discovery on April 10, 2009 and May 5, 2009 respectively. This MDL has been pending for a year and a half. Gulf Stream claims that it first "anticipated litigation" in March 2006 — more than three years ago.[9] There is simply no logical explanation as to why Gulf Stream has not produced all responsive documents. Plaintiff requests that the Court order Defendant to produce all documents responsive to the PSC and plaintiff's Request for Production.

## III.    PURCHASE ORDERS, INVOICES, PACKING SLIPS

While Gulf Stream has agreed to produce the requested purchase orders, invoices, and packing slips, but refuses to commit to a date to produce them. Plaintiff requests that the Court issue an order compelling Gulf Stream to produce all purchase orders, invoices and packing slips, exchanged between Gulf Stream and their vendors of wood products--decorative plywood, luan and wood products used for roof sheathing, sub-flooring, and cabinetry--for July 1, 2004 to December 31, 2004 immediately.

## IV.     DEPOSITIONS

While Gulf Stream initially agreed to produce witnesses for deposition, Gulf Stream now contends that it will only produce witnesses for deposition once documents and data are

---

[9] *See* Excerpts from Deposition of James Shea, at p. 261, line 8 to p. 262, line 7, attached as **Exhibit F**.

produced.   Plaintiff asks that the Court order Gulf Stream to produce the following Gulf Stream

employees for deposition immediately:

1.    Todd Lentych - Director Supplier Relations

2.    Eddie Abbott - Engineering Manager, involved in design and materials of trailer

3.    Steven Lidy - Marketing person, responded to residents and press regarding

       formaldehyde involved in Gulf Stream's press releases regarding formaldehyde

       issue

4.    Rick Jones - Director of HR, knowledge of any complaints or claims regarding

       symptoms associated with formaldehyde exposure

5.    John Bruhn - fielded complaint calls from FEMA residents

6.    Mike Ward - fielded complaint calls from FEMA residents

7.    Jeff Zumbrum - Purchasing Manager for towable division and Plant 57, the plant

       where the subject travel trailer was manufactured

8.    Joseph Cleland - Superintendent for Plant 57 in December 2004, the month in

       which the subject trailer was manufactured

9.    Quality Control Manager for Plant 57 in December 2004

10.   Final Inspector for Plant 57 in December 2004

11.   Receiver at Plant 57 in December 2004

12.   The Gulf Stream employee who was main point of contact with FEMA with

       respect to provision of trailers in Fall 2004 to Spring 2005 (for Florida hurricanes)

       (time frame in which subject trailer was provided to FEMA *via* a FEMA

       subcontractor)

However, plaintiff reserves the right to re-depose these witnesses if Gulf Stream's

delayed production of documents indicates that the witnesses should be re-questioned.

### CONCLUSION AND PRAYER

Plaintiff respectfully requests that the Court grant her Motion to Compel, ordering the

production of electronic data and other documents responsive to the PSC's and Ms. Alexander's

Request for Production, and compel Gulf Stream to produce witnesses for deposition.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:   504/522-2304
       Facsimile:   504/528-9973
       gmeunier@gainsben.com

       s/Justin I. Woods
       JUSTIN I. WOODS, #24713
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:   504/522-2304
       Facsimile:   504/528-9973
       jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
       ANTHONY BUZBEE, Texas # 24001820
       ROBERT M. BECNEL, #14072

-9-

RAUL BENCOMO, #2932
FRANK D'AMICO, JR., #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL C. WATTS, Texas #20981820

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2009, I electronically filed the foregoing with the Clerk

of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel

of record who are CM/ECF participants.  I further certify that I mailed the foregoing document

and the notice of electronic filing by first-class mail to all counsel of record who are non-

CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471