IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: DIGITEK PRODUCTS LIABILITY LITIGATION

MDL NO. 1968

THIS DOCUMENT RELATES TO ALL CASES

**PRETRIAL ORDER #20**
(Agreement Concerning Electronic Discovery)

The court has been advised by counsel for the parties that they have reached an agreement respecting electronic discovery reflected in the attached document as "Exhibit 1." For reasons appearing to the Court, the attached agreement is **ADOPTED** effective today and it is **ORDERED** that the attached agreement be treated as the sanctioned means by which electronic discovery will be conducted. The parties have withheld filing of "Exhibit A" referenced by name in Exhibit 1 since it contains personal information. The court will not require submission of "Exhibit A" but **DIRECTS** that a copy of it may be obtained by any attorney in MDL 1968 from Plaintiffs' Liaison Counsel, Harry F. Bell, Jr., Esquire.

The court **DIRECTS** the Clerk to file a copy of this order in 2-08-md-1968 which shall apply to each member Digitek-related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2-09-cv-0350. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the



complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at www.wvsd.uscourts.gov.

ENTER: April 13, 2009

Joseph R. Goodwin, Chief Judge

## Agreement Concerning Electronic Discovery

The following sets forth the general agreement between the Plaintiffs' Steering Committee (the "PSC") and the Actavis Defendants and Mylan Defendants regarding the general parameters of e-discovery in the MDL No. 1968 – In re Digitek Product Liability Litigation.

1. **Communication.**

In order to facilitate open communication between the Parties, the PSC and Defendants resolve to meet and confer as necessary and to negotiate in good faith mutually acceptable resolutions to e-discovery disputes. When there is an issue on which the Parties cannot reach a mutually acceptable resolution, the PSC and Defendants agree to declare an impasse. In the event of such an impasse, either party may file a motion requesting the Court's guidance on the issue. The responding party shall have 14 days to respond to the moving party's motion, and the moving party may reply to such response within 7 days.

2. **Search methodology.**

The Parties have agreed to a search methodology to cull down the universe of documents to be reviewed in this litigation. The terms and logic of the Parties' search methodology are attached as "Exhibit A" as if fully set forth herein.

a. If, after the PSC's review of documents produced as a result of the Parties' search methodology, the PSC becomes aware of certain terms of art, idiomatic expressions, or particular linguistic styles which are unique to the Defendants and (a) such words or phrases are relevant to the claims or defenses raised in this litigation, and (b) a search for such words and phrases would likely include relevant documents which were excluded from the principal search, then the PSC may propose a search of the Defendants' document collection using these additional, unique search terms. Otherwise, additional document requests will be the subject of specific Requests

for Production, rather than the addition of terms to the principal search term list. As with any Request for Production or for implementation of search methodologies, any such requests may be the subject of objection, conferring and, if necessary, Court direction.

b. Additionally, the Parties agree that if, as a result of running the attached search methodology, an email or a document attached to an email is deemed to be relevant, then all documents attached to the parent email shall be produced, subject to relevance and privilege objections, with the parent email as a message attachment group regardless of whether or not the documents were positive hits during the search. Exceptions to this requirement are signature block logos, email theme backgrounds, the sender's v-card, and exact duplicates as described in section 4.

3. Format of Production.

Subject to certain exceptions set forth herein, or as may later be mutually agreed upon by the Parties, documents that exist either in an electronic form or in paper that are produced in the Digitek MDL shall be produced in the manner provided herein. Documents that present imaging or formatting problems shall be promptly identified, and the Parties shall meet and confer to resolve any problems these may pose.

a. Electronically Stored Information (stored within locations other than databases or enterprise document repository systems, e.g., Documentum): The Parties agree to produce documents existing in an electronic form in a Group IV compression single-page TIFF format that reflects how the source document would have appeared if printed out to a printer attached to a computer viewing the file. The producing party shall produce a "load file" to accompany the images, which load file shall facilitate the use of the produced images by document management software such as Concordance, or other similar programs. The producing party shall produce text files for produced documents reflecting the full text that has been electronically extracted

2

from the original, native electronic files ("Extracted Text"). The Extracted Text shall be provided in ASCII text format. However, a producing party shall not be obligated to produce Extracted Text for the portions of documents that have been redacted; for such documents, only OCR text of the redacted production image shall be provided.

(1) <u>Information to be provided with documents</u>. To the extent the information is available for a document, the producing party shall produce with each production of documents an ASCII text file, appropriately delimited, setting forth the following information for each document:

(a) For electronically stored e-documents:

| Coding Field | Description |
| --- | --- |
| BegBates; EndBates | The beginning and ending Bates numbers for the document; |
| BegAttach; EndAttach | The beginning and ending Bates numbers of the collection to which the parent document and any attachments thereto are associated (i.e., for an email that is bates stamped DIG0001-DIG0002, with two attachments bates stamped DIG0003-DIG0004 and DIG0005-DIG0008, the BegAttach and EndAttach for the document set would be DIG0001-DIG0008); |
| DocDate | The last modified date of the document, formatted as follows: YYYYMMDD; |
| DocType | The type of document (e.g., Word, Excel, etc.); |
| FileName | The electronic document's file name, including extension, if any; |
| Path | The UNC path for the original location of the ESI |
| AuthorName | The author(s) of the document; |
| FullText | The full extracted and searchable text of the electronic document (in an associated, but separate .txt file); |
| To | The recipient(s) of the document; |
| CC | The person(s) to whom copies of the document were sent; |
| Custodian | The name of the individual whose electronic or hardcopy custodial file contained the document; |
| Marginalia | "Yes" or "No" indication of whether the ESI contains electronic notations, notes, or marginalia; |
| Redacted | "Yes" or "No" indication of whether the document at issue is redacted; |

3

(b) For e-mail:

| Coding Field | Description |
|---|---|
| BegBates; EndBates | The beginning and ending Bates numbers for the email at issue; |
| BegAttach; EndAttach | The beginning and ending Bates numbers of the collection to which the parent email and any attachments thereto are associated (i.e., for an email that is bates stamped DIG0001-DIG0002, with two attachments bates stamped DIG0003-DIG0004 and DIG0005-DIG0008, the BegAttach and EndAttach for this email group would be DIG0001-DIG0008); |
| SentDate | The date the email was sent, formatted as follows: YYYYMMDD; |
| SentTime | The time the email was sent, formatted as follows: HH:MM:SS; |
| DocType | The document type is "Email"; |
| AuthorName | The sender of the email; |
| FullText | The full extracted and searchable text of the email (in an associated, but separate .txt file); |
| To | The recipient(s) of the email; |
| CC | The person(s) to whom copies of the email were sent; |
| BCC | The person(s) to whom blind copies of a document were sent; |
| Custodian | The name of the individual whose electronic custodial file contained the email; |
| Importance | For Outlook emails, "High," "Low," or "Normal"; |
| Sensitivity | For Outlook emails, "Normal," "Private," "Personal," or "Confidential;" |
| Redacted | "Yes" or "No" indication of whether the email is redacted; |

b. <u>Hard copy documents</u>: If documents existing in a paper format are to be produced in an electronic format, they shall be scanned as black and white images at 300 d.p.i. resolution and shall be saved and produced in a Group IV compression single-page TIFF format.

(1) <u>Information to be provided with documents</u>. To the extent the information is available for a paper document, a producing party shall produce with each production of documents an ASCII text file, appropriately delimited, setting forth the following information for each document:

| Coding Field | Description |
|---|---|
| BegBates; EndBates | The beginning and ending Bates numbers for the document; |
| FullText | The searchable OCR text of the imaged paper document (in an associated, but separate .txt file); |
| Custodian | The name of the individual whose hardcopy custodial file contained the document; |

4

| Redacted | "Yes" or "No" indication of whether the document at issue is redacted; |

    c.    <u>Native format</u>. The producing party shall make reasonable efforts to retain electronic source documents produced in this litigation in its native format or in a manner that preserves the metadata associated with these electronic materials. ESI that cannot reasonably be evaluated in TIFF plus extracted text format (e.g., MS Excel spreadsheets with embedded formulae and MS PowerPoint documents with embedded speaker notes) may be produced in a native format with the file renamed to the unique BATES number upon the requesting party's demonstration of a particularized need to review any document produced in this litigation in its native format. The Parties will meet and confer in good faith regarding such native file format requests. If the Parties cannot reach a mutually acceptable resolution regarding a request to review a document in its native format, either party may request the Court's guidance by filing a motion pursuant to the procedures set forth in Section 1 above.

    d.    <u>Production media</u>. The parties agree that CD, DVD, and external USB or SATA spindle drives are acceptable media for the production of e-discovery materials.

    e.    <u>Exceptions</u>. The provisions of subsections 3(a) through 3(c) above shall not apply to the production of information that is produced from any database or other data sources from which information cannot be produced in the format specified in subsections 3(a) through 3(c) above. The parties agree to meet and confer regarding the production of information from databases and other data sources from which information cannot be produced in the format specified herein.

4.    **De-Duplication.**

The Parties agree to the vertical de-duplication of exact duplicate ESI within the same custodial file. Only a single copy of exact duplicate ESI within a custodial file need be

5

produced. Exact de-duplication determinations should be made based on a MD5 or SHA hash of ESI. There will be no horizontal de-duplication across custodial files.

5.   Privilege/Inadvertent Disclosures.

Inadvertent production of documents or ESI (hereinafter "Inadvertently Produced Documents") subject to work-product immunity, the attorney-client privilege, or other legal privilege protecting information from discovery shall not constitute a waiver of the immunity or privilege, provided that the Producing Party shall notify the Receiving Party in writing as set forth. In the event that a Party inadvertently produces documents or ESI subject to a claim of privilege, the Producing Party shall, within 30 days of the discovery of the inadvertent disclosure, notify the other party in writing of the inadvertent disclosure. The Producing Party may, in the notice, request a "clawback" of the inadvertently disclosed material. The party receiving such clawback notice shall immediately and diligently act to retrieve the Inadvertently-Produced Documents, and all copies, including any loaded to databases and return them to the Producing Party or destroy them as agreed between the parties. All notes or other work product of the Receiving Party, reflecting the contents of such materials, shall be destroyed and not used. If the Receiving Party elects to file a motion as set forth below, the Receiving Party, subject to the requirements below, may retain possession of the Inadvertently Produced Documents as well as any notes or other work product of the receiving party reflecting the contents of such materials pending the resolution by the Court of the motion below, but shall segregate and not use them pending resolution of the motion. If the Receiving Party's motion is denied, the Receiving Party shall promptly comply with the immediately preceding provisions of this paragraph. No use shall be made of such Inadvertently Produced Documents during depositions or at trial, nor shall they be disclosed to anyone who was not given access to them prior to the request to return or destroy them unless otherwise ordered by the Court.

6

The party receiving such Inadvertently Produced Documents may, after receipt of the Producing Party's notice of inadvertent production, move the Court to dispute the claim of privilege or immunity, but the motion shall not assert the fact or circumstances of the inadvertent production to challenge whether the material is, in fact, privileged. The facts and circumstances of the inadvertent production may be used, however, to argue that the Producing Party waived the privilege because the Producing Party did not take reasonable steps to prevent disclosure and did not promptly take reasonable steps to rectify the error as required by Rule 502(b).

Pursuant to Fed. R. of Evid. 502, there is no waiver of privilege or work product protection in this matter or any other matter in any other jurisdiction for any document clawed-back under this clause, or for the subject matter of any such document, whether the privileged document was inadvertently provided following review or as part of a "Quick Peek" production. In the event that either party receives information produced in discovery from the other party that reasonably appears to be Inadvertently Produced Documents, the Receiving Party shall promptly notify the Producing Party in writing of the apparently inadvertent production.

Following execution of this Agreement, the PSC, the Activis Defendants, and the Mylan Defendants shall jointly move the Court presiding over the Digitek® MDL – S.D. W.Va. (MDL No. 1968) – to enter their agreement under Fed. R. Evid. 502 concerning inadvertent disclosure of protected or privileged information as an order of the Court.

The formatting and other requirements for any privilege or redaction log required in this litigation are outside the scope of this agreement.

6.   Additional Searches/Document Requests.

With respect to documents concerning non-Digitek product lines at the Little Falls Facility, Plaintiffs reserve the right to request these documents at a later time, and may request such documents subject to Court approval.

7

STIPULATED AND AGREED TO BY:

FOR DEFENDANTS:

*[signature]*

RICHARD A. DEAN
MATTHEW P. MORIARTY (WVSB 4571)
TUCKER ELLIS & WEST LLP
925 Euclid Avenue, Suite 1150
Cleveland, Ohio 44115
Tel: (216) 696-2137
Fax: (216) 592-5009
Richard.Dean@TuckerEllis.com
Matthew.Moriarty@TuckerEllis.com
Co-Lead Counsel for Actavis Defendants

*[signature]*

HARVEY L. KAPLAN
MADELEINE M. McDONOUGH
SHOOK HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Tel: (816) 559-2214
Fax: (816) 421-5547
hkaplan@shb.com
mmcdonough@shb.com
Co-Lead Counsel for Mylan Defendants

*[signature]*

REBECCA A. BETTS (WVSB #329)
ALLEN GUTHRIE & THOMAS, PLLC
500 Lee Street, East, Suite 800
P.O. Box 3394
Charleston, West Virginia 25333-3394
Tel: (304) 345-7250
Fax: (304) 345-9941
rabetts@agmtlaw.com
Liaison Counsel for Defendants

FOR PLAINTIFFS:

*[signature]*

CARL N. FRANKOVITCH (WVSB # 4746)
FRANKOVITCH, ANETAKIS, COLANTONIO &
SIMON
337 Penco Road
Weirton, West Virginia 26062
Tel: (304) 723-4400
Fax: (304) 723-5892
carln@facslaw.com
Co-Lead Counsel for Plaintiffs

*[signature]*

HARRY F. BELL, JR. (WVSB #297)
BELL & BANDS PLLC
300 Capitol Street
P.O. Box 1723
Charleston, West Virginia 25326-1723
Tel: (304) 345-1700
Fax: (304) 345-1715
hfbell@belllaw.com
Co-Lead and Liaison Counsel for Plaintiffs

*[signature]*

FRED THOMPSON, III
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, South Carolina 29465
Tel: (843) 216-9000
Fax: (843) 216-9450
fthompson@motleyrice.com
Co-Lead Counsel for Plaintiffs

073021.000031.1040949.1