UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | * | |
| *Inc., et al*, Docket No. 09-2892; | * | |
| Alana Alexander, individually and on behalf of | * | |
| Christopher Cooper | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM COACH, INC.'S
MOTION *IN LIMINE* TO EXCLUDE
EXPERT TESTIMONY OF LILA F. LAUX, PH.D.**

Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper, files this response to Defendant Gulf Stream Coach, Inc.'s Motion *in Limine* to Exclude Expert Testimony of Lila F. Laux, Ph.D.

**I.
BACKGROUND**

On May 27, 2006, Plaintiff Alana Alexander and her two children moved into the travel trailer at issue which was provided by FEMA, manufactured by Gulf Stream, and installed as a finished product by Fluor. While residing in the trailer, the Alexander family suffered symptoms such as eye and nasal irritation, headaches, and breathing difficulties. Ms. Alexander's son, Christopher Cooper, who had previously been diagnosed with asthma, suffered

1

increased problems with his asthma, and developed eczema.  Because Ms. Alexander was never warned of the potential that her trailer could be off-gassing toxic formaldehyde, she did not realize that her family's ailments were attributable to their formaldehyde exposure.   Once she learned from a friend of the hazard presented by the trailer, she immediately moved her family out, and had the trailer removed from her property.

Much of Defendant's argument turns on the twenty-three statements Dr. Laux listed in her report under the heading "Opinions."  Contrary to the tile, the substance obviates the fact that most of the statements are not actually opinions, but rather Dr. Laux's interpretation of the source material listed in over three pages of her report.  These statements provide the rational basis for her ultimate opinions regarding the sufficiency of the formaldehyde warnings. Although she did not initially cite to the specific source from which each statement was derived, when asked to do so in her deposition, she was entirely willing and able.  At Defendant's suggestion, however, an agreement was reached that after her deposition, she would provide the sources for particular statements to be identified by Defendant.  Plaintiff's counsel timely facilitated the production of sources and citations for the specified statements.  In the spirit of complete cooperation, Dr. Laux has now provided a complete list of citations as a Supplement to her report, which is attached as Exhibit 1 to this response.  The Supplement moots every argument Defendant has made based on Dr. Laux's lack of qualification related to her source material (which Defendant insists are Opinions) and totally eviscerates the argument that Dr. Laux's opinions are nothing but advocacy.

## II.
## EXHIBITS

| | |
|---|---|
| Exhibit 1 | Supplement to Report of Dr. Lila Laux |
| Exhibit 2.[1] | Final Transcript of the Deposition of Lila Laux, Ph.D. |
| Exhibit "A" to Defendant's Motion | Report of Lila F. Laux, Ph.D. |
| Exhibit "B" to Defendant's Motion | CV of Lila F. Laux, Ph.D. |

## III.
## ARGUMENT AND AUTHORITIES

### Dr. Laux's Qualifications

1. <u>Dr. Lila Laux is qualified as a warnings expert.</u>

Dr. Lila Laux is Plaintiff's human factors expert witness. Her role in this litigation is to evaluate the hazard communications, *i.e.* the warnings and information concerning formaldehyde, Defendant Gulf Stream provided to Ms. Alexander. *See* Exhibit 2, pp. 247-48, 297.

Dr. Laux holds a doctorate in industrial psychology with a specialization in human factors engineering from Rice University in Houston, Texas, and a master of science degree in applied psychology from the University of Louisiana, Lafayette. *See* Exhibit "A" to Defendant's Motion, p. 1. She has been working in the field of human factors since 1978. *See* Exhibit "B" to

---

[1] Exhibit 2 is the final transcript of Dr. Laux's deposition. Page numbers in the final transcript differ from those in the draft transcript, the version cited to by Defendant in its motion.

3

Defendant's Motion. She has held faculty appointments at Baylor College of Medicine and Rice University, and has taught a seminar for industry professionals at the University of Wisconsin for the last sixteen years. *See* Exhibit "A" to Defendant's Motion, p. 1; Exhibit 2, p. 292. She has applied her expertise in many different arenas, including the automobile, nuclear, and aerospace industries; educational testing; the U.S. military; medicine and medical devices; and projects involving the aging and disabled populations. *See* Exhibit "A" to Defendant's Motion. p.2; Exhibit "B" to Defendant's Motion. There can be no doubt that Dr. Laux is qualified by virtue of her knowledge, skill, training and education to render opinions on this issue. *See* Fed.R.Evid.702.

   2.  <u>Defendant's criticisms of Dr. Laux's qualification are groundless</u>

Defendant comes dangerously close to deliberately misleading the Court concerning Dr. Laux's qualifications. *See* Gulf Stream's Motion, pp. 11- 13. Dr. Laux's work as a human factors professional requires her to research fields other than her own to fully understand the many different kinds of hazards she confronts. *See* Exhibit "A" to Defendant's motion, p. 3; Exhibit 2, p. 304. Contrary to Defendant's arguments, Dr. Laux doesn't have to be a physicist to understand the physical characteristics of formaldehyde, an engineer to understand which products may emit it, or a physician to understand its biological effects. *See* Exhibit "A" to Defendant's Motion, p. 3; Exhibit 2, pp. 79-80, 151, 299, 304-05. She is fully capable of reviewing the scientific and technical literature, from which she gleans the information she needs to do her job. *See* Exhibit "A" to Defendant's Motion, p. 3; Exhibit 2, pp. 79-80, 151.

4

Defendant disingenuously accuses Dr. Laux of being unqualified to offer all of the "Opinions" she lists in her report." *See* Defendant's Motion, p. 11. To come to this conclusion, Defendant necessarily ignored the fact that most of her "Opinions" are actually background facts, her interpretation of the source materials that made up her research. *See* Exhibit 2, pp. 80, 90, 111, 137, 304 321. Had Defendant doubted that she had researched her statements prior to the deposition, Dr. Laux certainly dispelled the misunderstanding during the deposition. *See* Exhibit 2, pp. 90, 131, 135, 189. Additionally, pursuant to the agreement on the record, Defendant anticipated receiving reference citations to every statement it requested, and had actually received some prior to filing its motion.[2] *See* Exhibit 2, 192-94. Now that Dr. Laux has provided the Supplement to her report containing citations to her source material, the inapplicability of Defendant's argument is apparent. Dr. Laux is certainly qualified to research the necessary background facts, and to draw reasonable conclusions from them.[3] *See* Exhibit 1; Exhibit "A" to Defendant's Motion, p, 3; Exhibit "B" to Defendant's Motion. more cite

**Dr. Laux's Methodology**

1. <u>Dr. Laux's methodology is reliable.</u>

In her evaluation of the hazards communications provided to Ms. Alexander, Dr. Laux applied the same procedures recognized and accepted by all human factors experts regardless of

---

[2] Plaintiff's counsel has been providing the citations to Defendant as they are agreed upon.

[3] Although Dr. Laux was willing to provide the source for each of her statements during her deposition, Defendant refused to allow her enough time to respond. *See* Defendant's Motion, p. 11. Plaintiff's counsel agreed to provide sources for some of the statements. Dr. Laux, in the spirit of full cooperation, has provided her Supplement, which provides the sources for her all of the statements she listed as "Opinions."

5

the origin of specific hazard to be addressed. *See* Exhibit 2, p. 29, 291, 299.  The field of human factors represents fifty years of scientific and technical research and experimentation. *See* Exhibit "A" to Defendant's Motion, p. 3.  The focus of human factors engineering is people – how they gather information and make decisions in the presence of hazards. *See* Exhibit "A" to Defendant's Motion, p. 2.  Human factors engineering seeks to determine the information that needs to be communicated and the best format for communicating it, so that people can safely interact with the hazards in their environment. *See* Exhibit "A" to Defendant's Motion, p. 3.  Since the principles, analytical methods, and procedures of human factors engineering apply to creating and evaluating warnings, the methodology is the same, regardless of the context giving rise to the hazard. *See* Exhibit "A" to Defendant's motion, p. 2; Exhibit 2, p. 29.  Although the details may differ, the methodology for creating and evaluating warnings is the same, whether the hazard originates in the military, nuclear power plants, the aerospace or automotive industries, or, as in this case, trailers that off-gas formaldehyde. *See* Exhibit "A" to Defendant's Motion, p. 2; *See* Exhibit 2, p. 29, 291, 299.

    A human factors analysis generally consists of three steps – (1) identifying and researching the hazard, (2) characterizing the target population, and (3) crafting and evaluating the warning. *See* Exhibit 2, p. 301.  The hazard and its characteristics are identified by researching the scientific literature and publications from government and other authoritative agencies,[4] as well as consultations with professionals in other fields, such as civil engineers,

---

[4] Sources typically consulted by Dr. Laux and other human factors professional include the American National Standards Institute (ANSI), the National Safety Council, the Occupational Safety and Health Administration (OSHA), the National Institute for Occupational Safety and Health (NIIOSH), the Environmental Protection Agency (EPA), and the Center for Disease Control (CDC), as well as publications from relevant industry organizations. *See*

chemists, toxicologists, and physicians. *See* Exhibit "A" to Defendant's motion, p. 3. The target population, the group expected to be exposed to the hazard, is identified, and its educational level, language skills, and appreciation of the relevant types of hazards is assessed. *See* Exhibit 2, pp. 300-01. The probability that the hazard will materialize and the severity of the potential harm are both quantified to determine whether a warning would be sufficient, or whether a design change is needed. *See* Exhibit "A" to Defendant's Motion, p. 3; Exhibit 2, pp. 96, 179, 301-02. If a warning is appropriate, recognized human factors rules, standards, and guidelines are applied, in addition to government regulations such as ANSI Z.535, to determine how the warning should look. *See* Exhibit 2, pp. 104-05, 108-09. The guidelines address such details as the substance of the warning, the size and color of the warning, appropriate locations for the warning, size and style of the font, and the use of signal words such as danger, warning, and caution. *See* Exhibit 2, pp. 108-09, 292-93. This methodology is utilized regardless of the specific hazard addressed. *See* Exhibit 2, p. 29; *See* Exhibit "A" to Defendant's motion, p. 2

   Dr. Laux applied this methodology to form her opinions in this case no differently than it is applied in any other context. *See* Exhibit 2, p. 303. She first researched the hazard to understand its nature and the danger it presents. *See* Exhibit 2, p. 90, 297-99. She interviewed Ms. Alexander, the target population, to assess her ability to comprehend the hazard and communications concerning it. *See* Exhibit 2, pp. 111-12. Finally, she was able to evaluate the appropriateness of the information Ms. Alexander received according to recognized human factors rules and guidelines. *See* Exhibit "A" to Defendant's motion, p. 3. Certainly, Dr. Laux's

---

Exhibit "A" to Defendant's Motion, p. 3; Exhibit 2, pp. 297-99.

application of the generally accepted human factors methodology to the facts of this case satisfy the *Daubert* flexible inquiry into reliability. *See* Daubert v. Dow Pharmaceutical, Inc., 509 US 579, 5594 (1993).

   2. Defendant fails to negate reliability

Defendant's arguments as to the reliability of Dr. Laux's opinions can only be attributed to its total disregard of Dr. Laux's testimony and its specious misunderstanding of the human factors methodology. *See* Defendant's Motion, pp. 16-19.  Significantly, Dr. Laux testified that Ms. Alexander was provided ***no*** warnings or instructions regarding formaldehyde. *See* Exhibit 2, pp. 18, 163, 199, 238, 306, 309.  Because of human limitations in perceiving low level chronic exposure formaldehyde,[5] warnings about the hazard and instructions for appropriate actions are critical. *See* Exhibit "A" to Defendant's Motion, p.3.  It is axiomatic that in the context of a hazard that is undetectable by the senses, the total absence of a warning is inadequate and unacceptable. *See* Exhibit 2, p. 106, 326, 232, 293.

Defendant's specific criticisms of Dr. Laux's methodology are equally as transparent. *See* Defendant's Motion, pp. 16-19.  Defendant faults Dr. Laux for not testing the formaldehyde levels in the trailer. *See* Defendant's Motion, p. 16.  It is clear, however, that Dr. Laux reviewed and relied on the May 6, 2009, testing results. *See* Exhibit 2, p. 45.  She also reviewed the reports of Marco Kaltofen, PE, William Scott, PE, CHMM, Paul Hewett, Ph.D., and Mary Devany, MS, CSP, CHMM, all of which provided and discussed the numerous sets of testing results from the

---

[5] Formaldehyde is colorless.  When formaldehyde is present at low levels over long periods of time, people become habituated to the odor, and no longer notice it. *See* Exhibit 2, p. 114

Alexander trailer. *See* Exhibit "A" to Defendant's Motion, p. 6; Exhibit 2, pp. 45-48, 51.

Defendant next accuses Dr. Laux of failing to test the warning given to Ms. Alexander. *See* Defendant's Motion, p. 16.  Since Ms. Alexander received no warning, however, there was no warning for Dr. Laux to evaluate. *See* Exhibit 2, pp. 18 163, 199, 238, 306, 309, 326.  As Defendant itself admits, "one cannot test a warning that has not yet been created." *See* Defendant's Motion, p. 17.

Defendant's argument concerning the media coverage surrounding the trailers is irrelevant. *See* Defendant's Motion, pp.16-17.  Media coverage is not a warning. *See* Exhibit 2, pp. 247-48.  The only issue germane to Dr. Laux's testimony is whether or not Defendant provided adequate formaldehyde information to Ms. Alexander. *See* Exhibit 2, pp. 85, 247-48. Dr. Laux is a warnings expert, not a media consultant.

Defendant deceptively mischaracterizes the design defect on which Dr. Laux opines. *See* Defendant's Motion, p. 17.  Dr. Laux addresses only the design defect founded on the inadequacy of a formaldehyde warning. *See* Exhibit "A" to Defendant's motion, p. 11; Exhibit 2, pp. 85, 123, 247-48.  She needs no training or experience with trailers because her testimony does not address the physical design of the trailer.  She focuses only on the warnings that were or should have been given, a subject that transcends the specific embodiment of the hazard. See Exhibit 2, p. 29.

Contrary to Defendant's false allegation that she did not propose a warning, Dr. Laux in fact identified a communication that would have been minimally acceptable. *See* Defendant's Motion, p. 17.  She offered as a minimum the HUD warning set forth by Title 24, CFR §

9

3280.309 Health Notice on Formaldehyde Emissions. *See* Exhibit "A" to Defendant's Motion, pp. 10-11; Exhibit 2, pp. 213-14. Testing of this warning was not warranted because it had been in effect since 1984, and testing had already resulted in amendments. See Exhibit 2, pp. 213-14. As far as the efficacy of that warning, Dr. Laux's testimony is clear. The HUD warning contains the exact information that when finally communicated to Ms. Alexander, prompted her to move her family out of the trailer. *See* Exhibit "A" to Defendant's Motion, p. 10-11; Exhibit 2, p. 238.

Defendant's reference to other cases in which Dr. Laux has testified is totally inappropriate. Certainly, Defendant should be aware that the question of whether an expert's testimony is reliable is a fact-specific inquiry, which must necessarily be conducted on a case-by-case basis. *See* Dart v. Kitchens Bros. Mfg. Co., 253 Fed.Appx. 395, 397-98 (5th Cir. 2007). A ruling on an expert's performance in one case has no bearing whatsoever on any other case. *See* Chan v. Coggins, 294 Fed.Appx. 934, 938 (5th Cir. 2008).

3. Dr. Laux's testimony is reliably linked to the facts of the case.

Defendant's criticism that Dr. Laux's methodology is not linked to the facts of the case borders on defamatory. Dr. Laux's testimony belies every statement Defendant makes to buttress its baseless assertions.

Dr. Laux's research was exhaustive, as obviated by her testimony, her report, and the attached Supplement to her report. *See* Exhibit 1, Exhibit "A" to Defendant's Motion, pp. 5-8, Exhibit 2, p.45-48, 51. She derived her opinions concerning formaldehyde levels in the Alexander trailer from actual test results of the trailer, and from expert reports explaining the results. *See* Exhibit 45-48, 51. Her opinion that the trailer was unreasonably dangerous was

never tied to any specific formaldehyde level, but only to the trailer's lack of appropriate warnings. *See* Exhibit "A" to Defendant's motion, p. 11. Further, Dr. Laux never attempted to diagnose Chris Cooper's medical condition. Her report contains no opinions as to the cause of his symptoms. *See* Exhibit "A" to Defendant's motion, pp. 8-11. When asked about his condition in her deposition, she deferred to his treating physician. *See* Exhibit 2, p. 312. Defendant has thus completely failed to support its allegations that Dr. Laux's opinions are not related to the facts of the case.

## IV.
## CONCLUSION

Dr. Laux is exceedingly qualified to render opinions on the warnings and hazard communications in this case. She utilized the accepted methodology used by human factors experts universally in creating and evaluating warnings, regardless of the origin of the hazard. Her opinions arose logically from her extensive background research of formaldehyde and the facts of the case. The Supplement to her report meticulously documents the sources she consulted. Defendant's desperate attempts to discredit her fail totally to negate either her qualifications or the rational basis for her opinions. Defendant's motion *in limine* should therefore be denied. *See* Fed.R.Evid.702; Daubert, 509 US at 589-91.

## V.
## PRAYER

For the reasons stated in this Response, Plaintiff respectfully requests that the Court deny Defendant's Motion *in limine*.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    <u>s/Dennis C. Reich</u>
       DENNIS C. REICH, Texas #16739600
       **PLAINTIFFS' STEERING COMMITTEE**
       Reich and Binstock, LLC
       4265 San Felipe, Suite 1000
       Houston, TX 77027
       Telephone:    713/622-7271
       Facsimile:     713/623/8724
       dreich@reichandbinstock.com

       **COURT-APPOINTED PLAINTIFFS'
       STEERING COMMITTEE**
       GERALD E. MEUNIER, #9471
       JUSTIN I. WOODS, #24713
       ANTHONY BUZBEE, Texas # 24001820
       RAUL BENCOMO, #2932
       FRANK D'AMICO, #17519
       MATT MORELAND, #24567
       LINDA NELSON, #9938
       MIKAL WATTS, Texas # 20981820
       ROBERT M. BECNEL, #14072

## CERTIFICATE OF SERVICE

     I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission on <u>   June 23             </u>, 2009.

                                            <u>s/Dennis C. Reich                        </u>
                                            Dennis C. Reich