UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Charlie Age, et al v. Gulf Stream Coach Inc., et al*, Docket No. 09-2892; | * | |
| | * | |
| Alana Alexander, individually and on behalf of Christopher Cooper | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF OPPOSED MOTION TO COMPEL WITH RESPECT TO GULF STREAM COACH, INC.**

Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper ("Plaintiff" or "Ms. Alexander") submits this reply brief in support of her Motion to Compel with respect to Gulf Stream Coach, Inc. ("Defendant" or "Gulf Stream") and, in support, would show the following:

**I.  PURCHASE ORDERS, INVOICES, PACKING SLIPS.**

As Gulf Stream stated in its Response, it has produced those documents, so that issue is now moot.

**II.  DISCOVERY RESPONSES AND E-DISCOVERY**

   A.  <u>Documents Not Produced</u>.

First, although Gulf Stream's counsel testified that she was continuing to collect documents, Gulf Stream's Response indicates a position that it is done with responding to

discovery and will do no more, absent a court order. The Court should compel Gulf Stream to fully respond to the PSC and Plaintiff's discovery requests.

   B.  <u>E-Discovery Background</u>

Second, as for e-discovery, based on Gulf Stream's Response, and more importantly, the deposition and affidavit of its Assistant General Counsel, this is what we know:

- Gulf Stream has no document destruction policy, and preserves all of its data.

- At some point, Gulf Stream hired a contractor to preserve a copy of all of its electronic data. Apparently, this cost Gulf Stream $45,000.00.

- On October 24, 2006, the U.S. Department of Homeland Security sent "inquiries" to Gulf Stream. **Gulf Stream does not identify what type of documents or information these "inquiries" focused on.** In response, Gulf Stream did some type of search of its data and documents.

- In February 2008, the U.S. House Oversight Committee sent Gulf Stream a request for documents. We do know what that request entailed:

  1.  Documents showing how many trailers Gulf Stream sold in past eight years, revenue from such sales, sales to FEMA following 2005 Hurricanes, and revenue from FEMA sales.

  2.  Documents showing compensation to Gulf Stream CEO and President.[1]

  3.  Documents relating to complaints or concerns about formaldehyde from Gulf Stream employees in 2005 and 2006, and Gulf Stream's response.

  4.  Documents relating to displaced residents' complaints about formaldehyde or odors, after 2005 Hurricanes.

  5.  Documents relating to when Gulf Stream first learned about formaldehyde concerns from displaced residents following 2005 hurricanes.

---

[1] Neither Plaintiff nor the PSC has requested this information.

*See* Letter from Congressman Henry Waxman to Gulf Stream's James Shea, attached as **Exhibit A**.

- Gulf Stream alleges that, in response to this letter, Gulf Stream searched its electronic data for documents including the words, "FEMA", "Katrina", "THUs", "FEMA Trailer", "formaldehyde", "LFE" and "LE", **for the period of August 2005 to June 2008**.[2]

- Gulf Stream's inside counsel also personally searched **five** (among hundreds) employees computers for responsive documents.

- On April 10, 2009, the Plaintiffs' Steering Committee ("PSC") sent Gulf Stream a Master Set of Requests for Production of Documents. On May 5, 2009, Plaintiff sent Gulf Stream a First Request for Production of Documents, relating to Ms. Alexander's case only.

- In response to these discovery requests, Gulf Stream apparently only reviewed documents it had collected in response to the two governmental inquiries in 2006 and early 2008. Gulf Stream does not allege that it has searched its hard copy or the preserved electronic files for documents responsive to Plaintiff and the PSC's discovery requests.

- Gulf Stream initially agreed to do a much more thorough key word search of its electronic documents, but has since withdrawn that offer.

Now, Gulf Stream's position is that it should not have to search for documents and data responsive to Plaintiff and the PSC's discovery requests because it already did a search in response to government inquiries two and a half years (DHS) and sixteen months ago (House Oversight), even though those inquiries were made long ago and are much narrower than Plaintiff's discovery requests. Alternatively, Gulf Stream contends that Plaintiff must pay the cost of this search. This position flies in the face of the Rules and well-settled case law.

---

[2] Plaintiff and the PSC's discovery requests, in part, seek documents beyond this range. Indeed, Plaintiff's trailer was manufactured before this period, in December 2004.

C.   Gulf Stream Admits it has not Abided by Discovery Rules

First, it should go without saying that Gulf Stream's admission that it has only searched hard copy and electronic documents and data that it located in response to two old, and much narrower, inquiries demonstrates that Gulf Stream has completely failed to meet its burden under the Rules of Civil Procedure.  Gulf Stream should be ordered to comply with the Rules and produce responsive documents and data.  If Gulf Stream planned to refuse to abide by the Rules, it should have filed a motion for protective order long ago.

D.   Fact that Gulf Stream did Old, Narrower Searches Does Not Excuse It.

Second, the fact that Gulf Stream responded to two dated and much narrower governmental inquiries does not excuse Gulf Stream from fully responding to the Plaintiff and PSC's discovery requests, as the Rules require.

E.   Cost Shifting Not Permitted for Accessible Documents

Third, as for cost-shifting on the discovery responses that Gulf Stream should have done long ago, **FED. R. CIV. P. 26(b)(2)(B)** provides:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. **On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.**  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Again, there is a presumption that a responding party must bear the costs of complying with a discovery request. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340,

358 (1978).

        1.      <u>Gulf Stream's Burden</u>

In electronic discovery cases, the responding party (here, Gulf Stream) must meet its burden of showing that the information sought is not reasonably accessible because of undue burden or cost in order for the court to engage in a cost-shifting analysis. *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y 2003). If the responding party fails to meet its burden, the court should not engage in a cost-shifting analysis. *Mikron Industries, Inc. v. Hurd Windows & Doors, Inc.,* 2008 WL 1805727 *2 (W.D.Wash.)(citing *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322-24 (S.D.N.Y 2003)).

Although Gulf Stream has made no formal motion for protective order, in essence, that is what it seeks here. A party moving for protective order must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102, n. 16 (1981). In the e-discovery context, courts require more than conclusory statements that the request creates an undue burden and cost; courts expect to see detailed documentation of the time and money involved in producing the information. *Proctor & Gamble Co., v. S.C. Johnson & Son, Inc.,* 2009 WL 440543 (E.D. Tex. 2009).

        2.      *<u>Zubulake</u>*

A thorough analysis of *Zubulake* is instructive. The *Zubulake* court noted:

> The first question, however, is whether cost-shifting must be considered in every case involving the discovery of electronic data, which-in today's world-includes virtually all cases. In light of the accepted principle, stated above, that electronic evidence is no less discoverable than paper evidence, the answer is, "No." The

Supreme Court has instructed that "the presumption is that the responding party must bear the expense of complying with discovery requests...." Any principled approach to electronic evidence must respect this presumption.

Courts must remember that cost-shifting may effectively end discovery, especially when private parties are engaged in litigation with large corporations. As large companies increasingly move to entirely paper-free environments, the frequent use of cost-shifting will have the effect of crippling discovery in discrimination and retaliation cases. This will both undermine the "strong public policy favor[ing] re-solving disputes on their merits," and may ultimately deter the filing of potentially meritorious claims.

Thus, cost-shifting should be considered only when electronic discovery imposes an "undue burden or expense" on the responding party.  The burden or expense of discovery is, in turn, "undue" when it "outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the par-ties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

Many courts have automatically assumed that an un-due burden or expense may arise simply because electronic evidence is involved. This makes no sense. Electronic evidence is frequently cheaper and easier to produce than paper evidence because it can be searched automatically, key words can be run for privilege checks, and the production can be made in electronic form obviating the need for mass photo-copying.

In fact, whether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format (a distinction that corresponds closely to the expense of production)…But in the world of electronic data, thanks to search engines, any data that is retained in a machine readable format is typically accessible

Whether electronic data is accessible or inaccessible turns largely on the media on which it is stored. Five categories of data, listed in order from most accessible to least accessible, are described in the literature on electronic data storage:

1. Active, online data…
2. Near-line data…
3. Offline storage/archives…
4. Backup tapes…
5. Erased, fragmented or damaged data…

>**Of these, the first three categories are typically identified as accessible, and the latter two as inaccessible.**

*Zubulake*, 217 F.R.D. 309, 317-319 (internal citations omitted)(emphasis added).[3]

### 3. Documents "Readily Accessible"—No Need to Entertain Cost Shift

As set forth in Plaintiff's motion, Plaintiff has not sought documents on backup tapes or erased, fragmented or damaged data. Therefore, there should be no dispute that the subject documents are "reasonable accessible" and should be searched and responsive documents produced. Gulf Stream has failed to meet its burden, and cannot meet its burden, to show that the documents are not "reasonably accessible."

### 4. Even if "Inaccessible", There Would be No Cause to Cost Shift

Gulf Stream claims that, despite the clear instructions in *Zubulake*, data and documents can be construed as "inaccessible"—regardless of the format that they are in—if it will cause undue burden or cost to review and produce them.[4] A finding for Gulf Stream here would fundamentally and dramatically change the rules of discovery—in the face of Supreme Court precedent that says parties are to bear the cost of responding to discovery.

---

[3] A copy of the *Zubulake* opinion is attached as **Exhibit B**.

[4] In *Zubulake*, that court only entertained the idea of cost-shifting with respect to documents that were not reasonably accessible. The case cited by Gulf Stream (in which the court actually <u>refused</u> to cost-shift) makes this clear, "*Zubulake I* established a two part test for determining when cost-shifting is appropriate for electronic discovery requests. The first inquiry is whether the requested discovery is unduly burdensome. The court determined that 'whether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in accessible or inaccessible format.' **After finding that some of the information was contained on inaccessible back-up tapes and, therefore, unduly burdensome to produce, the court applied a multi-factor test to determine whether cost-shifting was appropriate.**" *Semsroth v. City of Wichita*, 239 F.R.D. 630, 637 (D. Kan. 2006)**.**

Assuming for argument sake that the subject documents were "inaccessible", one can turn to the multi-factor *Zubulake* test.

The *Zubulake* court established seven factors to be considered in descending order of importance:

1. the extent to which the request is specifically tailored to discover relevant information;
2. the availability of such in-formation from other sources;
3. the total cost of production compared to the amount in controversy;
4. the total cost of production compared to the re-sources available to each party;
5. the relative ability of each party to control costs and its incentive to do so;
6. the importance of the issues at stake in the litigation; and
7. the relative benefits to the parties of obtaining the information.

Later, Advisory Committee's comments to the 2006 revision Federal Rule 26 set out virtually identical factors:

1. the pecificity of the discovery request;
2. the quantity of information available from other and more easily accessed sources;
3. the failure to produce relevant information that seems likely to have existed but is no longer avail-able on more easily accessed sources;
4. the likelihood of finding relevant, responsive in-formation that cannot be obtained from other, more easily accessed sources;
5. predictions as to the importance and usefulness of the further information;
6. the importance of the issues at stake in the litigation; and
7. the parties' resources.

     5.    <u>Gulf Stream Fails to Meet its Burden</u>

Gulf Stream bears the burden of showing that cost-shifting should be employed. Its only argument is that review of the already-preserved and accessible data would be expensive. In support, it offers only the affidavit of its in-house counsel, which states that work done evaluating and collecting its electronic data by a vendor cost Gulf Stream

$45,000.00. Gulf Stream offers no evidence as to the costs involved in reviewing this data and producing it. Gulf Stream has wholly failed to meet its burden.

As for the other factors, Gulf Stream does not claim that the requests are not specific to the issues raised in this case, or are important to the issues in this case. Indeed, it cannot reasonably make that argument. It cannot contend that the data is available from another source. It cannot seriously argue that Ms. Alexander is more able to pay these costs.

In sum, this data is reasonably accessible. There is no basis to cost-shift and Gulf Stream has failed to meet its burden to show that it should. Plaintiff respectfully requests that the Court compel Gulf Stream to produce all accessible electronic data immediately and that costs of such production be borne solely by Gulf Stream.

## III.  DEPOSITIONS

Gulf Stream complains that Plaintiff is trying to make an end-around Judge Engelhardt's order. First, this motion is exactly what Judge Engelhardt advised the parties to do—to seek court relief.

The Rules allow for ten depositions without leave of court. Gulf Stream is refusing to produce any witnesses. At minimum, the Court should compel Gulf Stream to produce an additional six employees now, and Plaintiffs will file a separate motion to take additional depositions.

## CONCLUSION AND PRAYER

Plaintiff respectfully requests that the Court grant her Motion, order production of

electronic data and other documents responsive to the PSC's and Ms. Alexander's Request for Production and compel Gulf Stream to produce witnesses for deposition.

    Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
    GERALD E. MEUNIER, #9471
    **PLAINTIFFS' CO-LIAISON COUNSEL**
    Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
    2800 Energy Centre, 1100 Poydras Street
    New Orleans, Louisiana 70163
    Telephone:    504/522-2304
    Facsimile:    504/528-9973
    gmeunier@gainsben.com

    s/Justin I. Woods
    JUSTIN I. WOODS, #24713
    **PLAINTIFFS' CO-LIAISON COUNSEL**
    Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
    2800 Energy Centre, 1100 Poydras Street
    New Orleans, Louisiana 70163
    Telephone:    504/522-2304
    Facsimile:    504/528-9973
    jwoods@gainsben.com

    **COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
    ANTHONY BUZBEE, Texas # 24001820
    RAUL BENCOMO, #2932
    FRANK D'AMICO, #17519
    MATT MORELAND, #24567
    LINDA NELSON, #9938
    MIKAL WATTS, Texas # 20981820
    ROBERT BECNEL
    DENNIS REICH, Texas # 16739600

## CERTIFICATE OF SERVICE

      I hereby certify that on June 30, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                          s/Gerald E. Meunier
                                          GERALD E. MEUNIER, #9471