**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | |
|---|---|
| **IN RE: FEMA TRAILER** | **MDL NO. 1873** |
| **FORMALDEHYDE** | |
| **PRODUCT LIABILITY LITIGATION** | **SECTION "N-5"** |
| | **JUDGE ENGELHARDT** |
| | **MAG. JUDGE CHASEZ** |

**THIS DOCUMENT IS RELATED TO:**
***Lyndon Wright v. Forest River, Inc., et al.***
***Case No. 09-2977 (E.D. La.)***

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR RECONSIDERATION**

NOW INTO COURT, through undersigned counsel, comes plaintiff, Lyndon T. Wright (hereinafter "Lyndon", or "Plaintiff"), who respectfully offers this memorandum in support of his Motion for Reconsideration that this honorable Court reconsider its ruling of, June 29, 2009 disallowing for mold testing in his Travel Trailer.

1.

The destructive testing of Lyndon's trailer will take place later this month. Because of the June 29, 2009 ruling, the Plaintiff Steering Committee ("PSC") is unable to do any mold testing in the Travel Trailer occupied by Lyndon Wright. It is expected that the Plaintiff will testify that mold was present during his occupancy. The evidence may reveal that when Lyndon lived in his trailer, the door would not close properly because the frame of his Trailer was warped and bent during the "blocking" of the unit on concrete piers by defendant, Shaw Environmental, Inc.

1

("Shaw"). Because of this warping and bending, his front door and bedroom window were not properly sealed which led to leaking and moisture intrusion and, eventually, the growth of mold.

2.

Repeated complaints were made to Shaw about the mold growing in his Trailer, to which Plaintiff received no response. Pursuant to its contract with FEMA, Shaw had a duty to maintain and repair the Travel Trailer and was negligent in its duty to maintain and repair with regard to the mold problem in Lyndon's trailer caused by the leaky door and bedroom window.

3.

When Lyndon lived in his Trailer, he developed Asthma, a condition he never had at any other point in his life previously. In order to accurately pinpoint the cause of his Asthma, the PSC needs to be able to test every condition that is apparent in the Trailer in which Lyndon resided. In order to more completely understand the reasons why Lyndon developed this condition, his doctor needs to know every substance and allergen Lyndon was exposed to. When Lyndon filled out his Plaintiff Fact Sheet, he answered extensive questions regarding his activities in the Trailer. For example, if someone smoked in their Trailer, it would absolutely be a contributing factor to any condition the occupant may have developed. The presence of a significant amount of mold, which he repeatedly complained about, is no different and there is no way to know the extent of the exposure, including speciation of the mold, or the effect it had on Lyndon unless further testing is allowed.

4.

Further, the Centers for Disease Control in their Final Report on Formaldehyde Levels in FEMA-Supplied Travel Trailers, Park Models and Mobile Homes, (CDC, July 2008) found that "Respondents reported roof leaks in 17% of trailers, pipe leaks in 15% and mold in 21%". They

further explain that "The presence of $\geq$ 1 ft² of mold was associated with a significant increase in GM Formaldehyde levels (adjusted means 86 ppb versus 63 ppb)."  In this report, the CDC made a significant and telling correlation between the presence of mold and higher concentrations of formaldehyde in the air. This study clearly indicates that those Travel Trailers with the highest levels of mold also had the highest concentration of Formaldehyde in the air. It would be negligent for the PSC not to conduct mold testing in Lyndon's trailer.  The particleboard decays when moisture is introduced into the Trailer.  As part of this decay process, the adhesive that is used to seal the particleboard breaks down and leads to a higher concentration of off-gassing of formaldehyde. The CDC report makes a direct correlation between the presence of mold and higher levels of formaldehyde concentration in the air. To prevent the PSC from investigating the mold problem in Lyndon's Trailer significantly affects its ability to understand completely the factors that contributed to Lyndon's development of Asthma, as well as the factors that contributed to the concentration of formaldehyde in the air.

5.

When the PSC does its destructive testing of Lyndon's trailer, it needs to be able to investigate and examine every possible factor that may have led to Lyndon's development of asthma and other medical conditions. To disallow the testing of the mold problem repeatedly reported to Shaw, severely restricts the Plaintiff's ability to show the jury exactly what kind of living conditions he was subjected to. Further, it provides grounds for a possible mistrial as the Plaintiff's physicians won't be able to do a differential diagnosis. The prohibition of mold testing will exclude a very large and important piece of evidence essential to Plaintiff's case. If the PSC cannot do a thorough investigation of Lyndon's trailer, it will severely hamper their efforts in providing the most accurate and truthful presentation of their case. Further, the defendants will

3

be representing the presence of mold as a confounding factor just as they would if the Plaintiff was a smoker and they most certainly will raise this issue at trial.

6.

The PSC must be able to address all possible causes of the Lyndon's asthma. Further, the mold problem was something Lyndon reported and complained about to Shaw on several different occasions and evidences Shaw's negligence in their duty to repair any problems Lyndon may have had with the Trailer. It would be remiss for this Court to deny the PSC's ability to investigate further.

WHEREFORE, Plaintiff Lyndon Wright prays that this honorable Court grant his Motion for Reconsideration and set this hearing on an expedited basis as the PSC believes it is imperative this be resolved in advance of testing commencing.

RESPECTFULLY SUBMITTED:

**FRANK J. D'AMICO, JR.,
APLC**

BY:s/Frank J. D'Amico
        FRANK J. D'AMICO, JR., T.A. (#17519)
        AARON Z. AHLQUIST (#29063)
        **FRANK J. D'AMICO, JR., APLC**
        622 Baronne Street
        New Orleans, LA 70113
        Telephone:    (504) 525-7272
        Fax:              (504) 525-9522
        ***Counsel for Plaintiff***

4

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Frank J. D'Amico
FRANK J. D'AMICO, #17519