UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | * | |
| *Inc., et al*, Docket No. 09-2892; | * | |
| Alana Alexander, individually and on behalf of | * | |
| Christopher Cooper | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PSC'S MOTION FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS

Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper ("Plaintiff" or "Ms. Alexander") respectfully requests that the Court grant her leave to take additional depositions, and to compel Defendant Gulf Stream Coach, Inc. ("Defendant" or "Gulf Stream") to produce certain witnesses for deposition for the reasons set forth in the accompanying memorandum.

        Respectfully submitted:

        **FEMA TRAILER FORMALDEHYDE**
        **PRODUCT LIABILITY LITIGATION**

    BY:    <u>s/Gerald E. Meunier</u>
            GERALD E. MEUNIER, #9471
            **PLAINTIFFS' CO-LIAISON COUNSEL**
            Gainsburgh, Benjamin, David, Meunier &
            Warshauer, L.L.C.
            2800 Energy Centre, 1100 Poydras Street
            New Orleans, Louisiana 70163

Telephone: 504/522-2304
Facsimile: 504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
ROBERT BECNEL
DENNIS REICH, Texas # 16739600

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471

and, in support, would show the following:

## BACKGROUND

This case is one of thousands of cases filed in this Multi District Litigation involving travel trailers provided to victims of Hurricanes Katrina and Rita.

The case of *Age, et al v. Gulf Stream Coach, Inc., et al* (of which Ms. Alexander is a Plaintiff) was filed on February 27, 2009. In her lawsuit, Ms. Alexander asserts product liability claims against Gulf Stream relating to her and her family's residency in a trailer manufactured by Gulf Stream. Ms. Alexander also asserts claims against Fluor Enterprises, Inc. and the Federal Emergency Management Agency.

On April 6, 2009, the Court selected Ms. Alexander as the first trial plaintiff. On April 8, 2009, the Court issued a scheduling order for this case, setting trial to begin on September 14, 2009. Notably, the order imposes a discovery period deadline on July 23, 2009.

It is well-settled that Gulf Stream provided 50,000 travel trailers to FEMA after Hurricanes Katrina and Rita, and was paid $522 million to do so. This is above and beyond that thousands of trailers that Gulf Stream provided to FEMA after previous hurricanes[1] and the Gulf Stream trailers that FEMA "bought off the lot" from dealers, after Katrina and Rita. Gulf Stream has, by far, the largest volume of trailers at issue in this MDL.

The amount of plaintiffs asserting claims in this MDL numbers approximately 70,000, some filed, some to be filed. The PSC believes that at least 15,000 of these plaintiffs assert

---

[1] Ms. Alexander's trailer was one of those that Gulf Stream had provided to FEMA previously, in December 2004, but which was used in Katrina relief efforts.

claims against Gulf Stream.

Since the Court chose Ms. Alexander's case as the first trial case, the parties have exchanged written discovery and designated experts. Gulf Stream has deposed Ms. Alexander, her son Christopher Cooper, and her daughter Erika Alexander. Gulf Stream has noticed Christopher Cooper's father and Fluor is in the process of noticing Ms. Alexander's mother. Plaintiff has taken a Gulf Stream corporate deposition and four individual depositions. Gulf Stream and the other defendants have conducted nine depositions of Plaintiff's experts and have scheduled several more to take place in the near future. Plaintiff is in the process of scheduling and noticing Defendants' experts. Plaintiff has noticed approximately seven depositions of FEMA employees and nine depositions of Fluor employees. On Plaintiff's motion[2], Magistrate Judge Chasez has allowed for five additional Gulf Stream current and former employee depositions.[3] Those depositions will take place in South Bend, Indiana or very close to South Bend.

Thus, as it stands today, Plaintiff has conducted five depositions. Defendants have conducted twelve depositions. There are approximately thirty expert depositions, five Gulf Stream depositions and sixteen FEMA/Fluor depositions to be taken in the next month.

Plaintiff has requested that Gulf Stream produce a total of twelve current employees for

---

[2] Plaintiff filed a Motion to Compel Gulf Stream to produce documents and witnesses. Gulf Stream objected to producing all of the witnesses for deposition, and contended that the Motion was an attempt at an "end run" around Rule 30(A)(2). While Plaintiff believes that the motion served as an effective request for leave, because Plaintiff wanted to put this issue in separate briefing, Plaintiff agreed to only the ten deposition limit that Gulf Stream was imposing and to file a separate motion for leave, which she does now.

[3] Although Gulf Stream agreed to produce three of these witnesses, it has indicated that it will appeal the ruling as to the other two witnesses. It is unclear how or why, on the one hand Gulf Stream agrees that it should produce at least ten witnesses, but on the other hand it objects to doing so.

deposition, five of which Magistrate Chasez ordered Gulf Stream to produce. Further, Plaintiff has identified more than ten former Gulf Stream employees and contractors who have crucial information about the claims and defenses in this case. These witnesses are all located near South Bend, Indiana.

Although Gulf Stream and the other defendants have already taken twelve depositions and have noticed many more, and although Gulf Stream has no objection to the sixteen Fluor/FEMA depositions, Gulf Stream takes the position that Plaintiff may take more than ten Gulf Stream-related depositions (i.e., current or former employees or contractors) without leave of Court. As set forth below, there is no basis in the Rules for this position.

## ARGUMENT AND AUTHORITIES

I.  **MOTION FOR LEAVE**

**FED. R. CIV. P. 30(A)(2)** provides:

A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(2):

(A)    if the parties have not stipulated to the deposition and:

   (i)   the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants.

Gulf Stream takes the position that Rule 30(A)(2) limits the amount of witnesses affiliated with Gulf Stream which may be deposed. Obviously, this is not what the Rule says. The Rule looks to the identity of the person taking the deposition, not the identity of the deponent. Specifically, it limits plaintiffs and defendants from taking more than ten depositions

without leave of court or agreement of the parties.

In the past, and within the next few weeks, Plaintiff will have taken more than ten depositions. Defendants have already taken more than ten depositions and will take many more in the near future. If Gulf Stream intends to stand by the ten deposition limit in Rule 30(A)(2), the position must be applied across the board, meaning depositions stop. In this first trial of a multi-thousand Plaintiff MDL, involving the defendant manufacturer with the most market share, this position is neither reasonable nor tenable.

Plaintiff believes that FEMA and Fluor share Plaintiff's position that Rule 30(A)(2) should not apply here, but rather the parties should use common sense and good judgment to depose witnesses with knowledge of relevant facts. The parties should not have to seek leave for every deposition when it is obvious that a witness has key information. None of the parties has any interest in deposing extraneous witnesses, but all of the parties have an interest in deposing people who have critical information for trial of this case. It would be unfair to deny Plaintiff to marshal evidence to support her claims. Further, the vast majority, if not all, of these depositions will be used in future trials as well.

Therefore, Plaintiff requests that the Court grant her leave to take additional depositions, as requested below.

## II. **MOTION TO COMPEL**

In this case, Plaintiff asserts that Gulf Stream knew that formaldehyde emissions were dangerous, that it was building and selling a product with a high level of formaldehyde emissions, and otherwise unsafe, that the product was to be used for long term housing, that it

provided no warnings to end users regarding formaldehyde, that it provided no use instructions with respect to jacking or blocking trailers by FEMA, its contractors or other end users, that, even if it did not know of the risks of formaldehyde when it produced and sold Ms. Alexander's trailer and others after Katrina, it learned of complaints in March 2006, but did not warn residents of the dangers of formaldehyde, and that it learned that its suppliers were not providing "LFE" or low formaldehyde wood to Gulf Stream.

Based on the public statements, pleadings[4], and discovery conducted to date, it appears that Gulf Stream takes the position that it did not know of the dangers of formaldehyde prior to producing Ms. Alexander's trailer or the trailers produced after Katrina, that it made a safe trailer, that it had no complaints of formaldehyde-associated symptoms from its employees, that it had a "well-known" policy of only procuring LFE wood products for use in trailers, that it used proper care to ensure that it received the LFE wood products that it ordered, that it properly responded the formaldehyde issue, that it tried to work with FEMA to deal with the issue, and that it was open and honest in dealing with the public and, by extension, the press.

A.   Current Gulf Stream Employees

Through the five Gulf Stream depositions taken to date, Plaintiffs have identified the following current Gulf Stream employee witnesses that have crucial evidence as to the claims and defenses asserted in this case:

| Name | Area of Expected Testimony and Basis |
|---|---|
| Todd Lentych | Director of Supplier Relations. Considerable interaction with Gulf Stream suppliers, including those that provided wood products to Gulf Stream.  *See* Documents attached at **Exhibit A.** |

---

[4] Gulf Stream has yet to file an answer in this case.

|  |  |
|---|---|
| Eddie Abbott[5] | Engineering Manager, involved in design, specifications, and materials of FEMA model trailer, headed up effort to revise FEMA model to be transported by rail.  *See* Dan Shea Deposition Excerpts, at pp. 128-29, 285, 287, attached as **Exhibit B**; Scott Pullin Deposition Excerpts at pp. 70-71; 224-25, attached as **Exhibit C**. |
| Steven Lidy | Marketing person, responded to residents and press regarding formaldehyde, involved in Gulf Stream's press releases and press interaction regarding formaldehyde issue.  *See* Dan Shea Deposition Excerpts, at p. 304, emails and press release, attached as **Exhibit D**. |
| Rick Jones | Director of HR, knowledge of any complaints or claims regarding symptoms associated with formaldehyde exposure.  *See* Jim Shea Deposition Excerpts, at pp. 205-207, attached as **Exhibit E**. |
| John Bruhn | Fielded all complaint calls from FEMA residents.  *See* Scott Pullin Depositions Excerpts, at p. 183 and customer complaint notes, attached as **Exhibit F**. |
| Mike Ward | Fielded all complaint calls from FEMA residents.  See Scott Pullin Depositions Excerpts, at p. 183 and customer complaint notes, attached as **Exhibit G**. |
| Jeff Zumbrum [6] | Purchasing manager for towable division and Plant 57, the plant where the subject travel trailer was manufactured.   Conferred with wood supplier Adorn about non-LFE wood, knowledge of materials ordering, involved in design and specifications of trailers, best person to discuss frame suppliers, knowledge of purchasing policies and procedures.  *See* Jim Shea Deposition Excerpts, at pp. 58-60, 172-74, attached as **Exhibit H**; Dan Shea Deposition Excerpts, at pp. 47, 50-55, 68-71, 128-29, 288-89, 290-94, attached as **Exhibit I**. |
| Joseph Cleland | Superintendant for Plant 57 in December 2004, the month in which the subject trailer was manufactured.   Responsible for making sure trailers conformed to FEMA specifications; knowledge of the functions of various departments and personnel |

---

[5] Gulf Stream has agreed to produce this person for deposition.
[6] Gulf Stream has agreed to produce this person for deposition.

|  | at Plant 57.  *See* Jim Shea Deposition Excerpts, at pp. 116-17, attached as **Exhibit J**; Phil Savari Deposition Excerpts, at pp. 17-18, attached as **Exhibit K**. |
|---|---|
| Quality Control manager for Plant 57 in December 2004. | Person responsible for making sure trailers met FEMA specifications, signed off on units upon completion.  *See* Jim Shea Deposition Excerpts, at pp. 116-17, attached as **Exhibit L**; Dan Shea Deposition Excerpts at pp. 25-26, attached as **Exhibit M.** |
| Final inspector for Plant 57 in December 2004. | Responsible for making sure that a particular trailer conformed to FEMA specifications.  See Jim Shea Deposition Excerpts, at pp. 116-17, attached as **Exhibit N**. |
| Receiver at Plant 57 in December 2004.[7] | Responsible to review and compare shipping documents, confirm material ordered is what is received; knowledge of training provided.  *See* Jim Shea Deposition Excerpts, at pp. 42, 45, attached as **Exhibit O**; Dan Shea Deposition Excerpts, at pp. 29-33, 42, attached as **Exhibit P**. |
| The Gulf Stream employee who was main point of contact with FEMA with respect to provision of trailers in Fall 2004 to Spring 2005 (for Florida hurricanes)(time frame in which subject trailer was provided to FEMA via a FEMA subcontractor). | Self-explanatory. |

As noted, Gulf Stream has agreed to produce two (maybe three) of these witnesses and Judge Chasez has ordered Gulf Stream to produce a total of five witnesses.   Plaintiff requests that the Court grant Plaintiff leave to take all of these depositions and compel Gulf Stream to produce these people for deposition.

---

[7] Gulf Stream apparently agreed to produce this person for deposition (*see* Response to Motion to Compel, at pp. 5-6, Docket Entry No. 2002), and advised Judge Chasez that they would produce this person, but now apparently refuses to produce this person.

B.      Former Gulf Stream Employees and Contractors

Plaintiff has contacted numerous former Gulf Stream employees and Gulf Stream contractors who tell a very different story than the one told under oath by Gulf Stream's senior executives. Specifically, these witnesses state that they had a litany of problems associated with formaldehyde exposure, that warning labels were removed from wood products at the Gulf Stream gate, that formaldehyde risks were well known to Gulf Stream and its senior management years before, that they were ordered to work quickly—too quickly—to construct trailers, and that they feared for their jobs if they complained. Obviously, this testimony would be critical to the claims and defenses asserted in this case.

Plaintiff has subpoenaed one of these witnesses, William Dudeck, a former senior Quality Control manager at Gulf Stream who is expected to know extensive details about Gulf Stream's knowledge of formaldehyde risks. The deposition is currently scheduled for July 17, 2009. There are at least nine other witnesses who expect to have equally relevant information. All of these people are in the Northern Indiana area, Gulf Stream's headquarters, or thereabouts.

Since, by agreement or Judge Chasez's order, Gulf Stream will be producing five additional witnesses for deposition, all in South Bend, Indiana or thereabouts, it would make sense for these depositions to take place at the same time. Plaintiff does not anticipate that the depositions will take long and agrees to abide by a reasonable time limit on these depositions. It is likely that all of these depositions can be completed in two days.

These witnesses will be critical witnesses for trial, are beyond this Court's subpoena power, and are not within any of the parties' control. The only way to obtain their testimony is through deposition in or near their residences.

## **CONCLUSION AND PRAYER**

Plaintiff respectfully requests that the Court grant her Motion, grant her leave to take additional depositions and compel Gulf Stream to produce the current employees identified herein for deposition.