UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                          MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                 SECTION N-5
                                             JUDGE ENGELHARDT
                                             MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEFENDANT UNITED STATES OF AMERICA'S REPLY
MEMORANDUM IN SUPPORT OF ITS "MOTION TO DISMISS
PLAINTIFFS' REMAINING  FTCA CLAIMS FOR LACK
OF SUBJECT MATTER JURISDICTION" [Dkt. 1545]

Defendant United States of America ("United States") submits this reply memorandum in

support of its "Motion to Dismiss Plaintiffs' Remaining FTCA Claims for Lack of Subject

Matter Jurisdiction" [Dkt. 1545].  In its opening memorandum, the United States explained that

the law with respect to the Federal Tort Claims Act's ("FTCA") discretionary function exception,

28 U.S.C. §2680(a), as set forth by the Supreme Court and the Fifth Circuit, unambiguously

provides that if the challenged activity did not involve the violation of a self-imposed specific

and mandatory obligation (Prong One) and was "susceptible to policy analysis" (Prong Two),

then the exception bars the tort suit against the United States.  *See Gaubert v. United States*, 499

U.S. 315, 325 (1991); *Andrade v. Chojnacki*, 338 F.3d 448, 457 (5th Cir. 2003); *Baldassaro v.*

*United States*, 64 F.3d 206, 211-12 (5th Cir. 1995); *Freeman v. United States*, 556 F.3d 326, 341

(5th Cir. 2009).

The relevant precedent is clear that factors that actually go into a decision under Prong

Two are irrelevant.  As the Fifth Circuit stated in *Andrade*, "the applicability of the discretionary

function exception does not turn on evidence of the actual decisions made by the defendants, but,

rather, on whether the decision is or is not 'susceptible to policy analysis.'"  338 F.3d at 457.

Indeed, earlier this year, in another FTCA suit brought by people dissatisfied with the federal

response to the Katrina Disaster, the Fifth Circuit affirmed a discretionary function exception

dismissal, explaining that the United States' "decisions about when, where, and how to allocate

limited resources within the exigencies of an emergency are the types of decisions that the

discretionary function exception was designed to shelter from suit."  *Freeman*, 556 F.3d at 340.

The Fifth Circuit further explained that "decisions regarding the feasibility, safety, and benefit of

mobilizing federal resources in the aftermath of a national disaster are grounded in social,

economic, and public policy," and made it clear that "these decisions are clearly 'susceptible to

policy analysis,' even if specific decisions were not the result of such a reasoned analysis." *Id.* at

341.[1]/

Plaintiff Steering Committee ("PSC") does not contest the United States' showing or the

---

[1]/   While Plaintiff Steering Committee ("PSC") argues that *Freeman* and the companion case of *St. Tammany Parish v. FEMA*, 556 F.3d 307 (5th Cir. 2009), are factually distinguishable, *see* PSC Response/Memo. at 13-16 [Dkt. 2001], they are unable to show that the legal framework recited in those cases is not applicable here.  The discretionary function framework set forth in those decisions applies regardless of whether the decisions are made at the beginning of the crisis or during the later periods when the aftermath of the crisis was being handled.  *See St. Tammany Parish*, 556 F.3d at 325 (discretionary function exception bars claims because the "Stafford Act, its regulations, and related agency guidance do not give rise to a mandatory duty. They instead ***permit*** discretionary, policy-oriented choices . . .").

Similarly unavailing is PSC's reliance on *Macharia v. United States*, 334 F.3d 61, 67 (D.C. Cir. 2003).  *See* PSC Response/Memo. at 16-17 [Dkt. 2001].  The language quoted by PSC supports the United States' position: "[A]pplicability of the [discretionary function exception] does not turn on whether the challenged decision [actually] involved such [policy] judgments."  The key, *Macharia* explained, is "whether the 'nature' of the decision implicated policy judgments."  *Id*.  Here, questions as to how to respond to concerns about formaldehyde certainly "implicated policy judgments."  Even if attorney concerns about litigation arising from concerns about formaldehyde were part of the mix, the fact remains that the decisions "implicated policy judgments" and therefore are insulated from suit by the discretionary function exception.

Court's prior determination that the Government satisfies Prong One of the discretionary

function exception test: The Government did not violate any self-imposed specific and

mandatory obligations.  Yet, at the outset of their discussion of Prong Two, PSC sets forth a

nonexistent dichotomy of, on the one hand, cases "where established policy allows a Government

agent to exercise full-blown discretion regarding the relevant conduct," and, on the other hand,

cases "where prior established policy, which has elevated certain considerations over others with

respect to the relevant conduct, restricts agents['] discretion in the implementation of policy."

PSC Response/Memo. at 11 [Dkt. 2001].

PSC's problem, however, is that there is nothing in the holdings of either the Supreme

Court or the Fifth Circuit (post-*Gaubert*) to support such a dichotomy within Prong Two.  First,

PSC's newly-minted framework is akin to what the Supreme Court in *Gaubert*, reversing the

Fifth Circuit, referred to "a nonexistent dichotomy between discretionary functions and

operational activities."  499 U.S. at 326.  The mere fact that an agency has stated overarching

goals does not open it to suit under the FTCA in the face of allegations that it may have taken

into consideration factors that a court might assess as contrary to those goals in its discretionary

implementation of the policy.  For example, in a Mississippi district court decision recently

affirmed by the Fifth Circuit, the court ruled, in a case involving allegations that the United

States negligently failed to warn residents of a military base of dangers from contaminated water,

"that the policy choices surrounding the warnings given (or the delayed issuance thereof) are . . .

shielded by the discretionary function exception."  *Snyder v. United States*, 504 F.Supp.2d 136,

142-43 (S.D. MS 2007) (quoting *Ross v. United States*, 129 Fed.Appx. 449, 451 (10th Cir.

2005)), *aff'd*, 296 Fed.Appx. 399 (5th Cir. 2008), *cert. denied*, 2009 WL 101845 (U.S. June 8,

2009).  As *Snyder* explained, "the timing of any disclosures regarding . . . contamination at Camp

Lejeune would . . . implicate policy concerns that are "grounded in policy discretion and, as such,

are shielded by the discretionary function exception."  504 F.Supp.2d at 143 (quoting *Ross,* 129

Fed.Appx. at 452, and citing *OSI, Inc. v. United States*, 285 F.3d 947, 952 (11th Cir. 2002), and

*Aragon v. United States*, 146 F.3d 819, 827 (10th Cir. 1998)).[2]/  Thus, even though the

_____

[2]/      To the extent that decisions of other circuits, notably the Ninth, could be construed to fit into
PSC's schema, they are inconsistent with the law of this Circuit (and, in fact, the Supreme Court) and
thus must be disregarded by this Court.  In any event, those decisions are distinguishable, as we explain
at United States' Memo. in Support of Motion at 23-30 [Dkt. 1543-2].  With respect to the treatment of
*Indian Towing v. United States*, 350 U.S. 61 (1955), *Whisnant v. United States*, 400 F.3d 1177 (9th Cir.
2005), and *Marlys Bear Medicine v. United States*, 241 F.3d 1208 (9th Cir. 2001), as well as by this
Court in its October 2008 decision, we would simply refer the Court to the Supreme Court's discussion
in *Gaubert*, 499 U.S. at 326, quoting *Berkovitz*, 486 U.S. 538 n.3, explaining why *Indian Towing* is not
germane to discretionary function exception analysis.  PSC's reliance on the discussion of *Indian Towing*
in *Wiggins v. United States*, 799 F.2d 962, 966 (5th Cir. 1986), is utterly misplaced, in light of the
Supreme Court's subsequent rejection of *Indian Towing* as a discretionary function exception case.

     We did not address *Bear Medicine* in our opening memorandum, but do so now.  There, the
Ninth Circuit concluded that the exception did not apply in the context of a case involving the
responsibilities of the Bureau of Indian Affairs ("BIA"), with respect to a suit by a tribal member who
was injured on an Indian Reservation due to the negligence of a contractor, explaining that the BIA was
"the only organization on the reservation with the appropriate safety expertise and has virtually complete
control of the timbering operations on Indian lands." 241 F.3d at 1215.  On remand, the district court
concluded that the exception did not apply, noting that "[d]espite both the power to direct and supervise
[the contractor's] operations and knowledge that proper safety precautions were not being taken, the
[government] failed to take ***any*** action to protect [plaintiff]."  *Marlys Bear Medicine v. United States*,
192 F. Supp.2d 1053, 1057 (D. MT 2002) (emphasis added).  Here, unlike in *Bear Medicine* (and unlike
in *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005)) the United States did not simply
ignore the problem, but, rather, acted to address the concerns.  *See* U.S. Memo. in Support of Motion at
26-30 [Dkt. 1543-2].  While Plaintiffs assert that the United States should have acted less conservatively,
the governmental action in such contexts may not be the subject of tort suits, since the actions are
susceptible to policy analysis.  *See* discussion in *Snyder*, *supra*.

     PSC's reliance on *ARA Leisure Services v. United States*, 831 F.2d 193, 195 (9th Cir. 1987) – a
pre-*Berkovitz*, pre-*Gaubert* case – also is unavailing because in that case, which involved alleged
negligent failure to provide a safe road, the "Park Service standards explicitly required that park roads
'conform to the original grades and alignments' and that graded roads be 'firm, [and] of uniform cross
section." Thus, under the *Berkovitz/Gaubert* two-pronged test, the United States would have failed the
Prong One test.  Moreover, facts in ARA demonstrated that the Park Service had simply ignored the
problem, wherein the road "eroded from an original width of twenty-eight feet to a width of 14.6 feet at
the accident site and which had edges so soft as to be dangerous."  *Id*. There were no policy implications

government has an overarching policy of protecting the public from contaminated drinking water, as reflected in public health statutes, decisions regarding warnings to consumers on a military base could involve several competing policy considerations.

Second, PSC's formulation sounds like a what could be called a Prong One-A analysis: In other words, even if there is no violation of a self-imposed specific and mandatory obligation, if there is an alleged violation of a general goal, then the exception would not apply if the policy considerations actually employed were not, in a court's view, consistent with that general goal. But that formulation is directly in conflict with what the Supreme Court set forth in *Gaubert*. The Supreme Court set forth a ***two*** pronged test, and, as to the second prong, it expressly stated that there is no waiver of sovereign immunity if the challenged activity is "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. The Supreme Court said nothing to even remotely suggest that the courts should apply the Prong Two instruction differently depending on some assessment of the degree to which a court might think that a policy factor was not consistent with the overall goal. Indeed, PSC's Prong One-A would open the door to precisely the sort of "'judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort" that Congress, through the discretionary function exception, "wished to prevent." *United States v. S.A. Empresa De Viacao Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984); *see also Gaubert*, 499 U.S. at 323; October 3, 2008, Order at 13 [Dkt. 717].

As shown in *Snyder*, questions about the timing and aggressiveness of actions taken in

---

in simply ignoring such a problem. Here, in contrast, FEMA responded to the concerns – just not in a manner and speed that PSC now would have preferred.

response to potential health hazards are inherently discretionary.  The gravamen of PSC's argument is that if FEMA's decisions were impacted in any way by the litigation concerns of its lawyers, then its decisions were impermissible, beyond the pale, and thus not insulated from suit by the discretionary function exception.  But concerns about potential litigation strategy involve the public fisc and thus inherently implicate policy: The more resources spent on litigation or spent complying with Court Orders issued as a result of the United States being a defendant in this litigation – actual costs associated with any such litigation as well as potential interference that the litigation may have upon FEMA's ability to perform future disaster response activities – the fewer resources available to do the work of the agency.  Unless a statute or regulation specifically mandates that such concerns should not enter into the mix (and thus would be a Prong One issue), or unless there is an open and obvious acute problem that the government simply ignores and as to which there could be no policy implicated in the non-decision, then Prong Two bars the suit.[3]/  That is why the Supreme Court in *Gaubert* said that Prong Two is satisfied if the actions being challenged were "susceptible to policy analysis."  If the Court meant something else, then it would have said something else.

      Similarly, if the Supreme Court had believed that the Prong One framework should only

---

[3]/      This would be in contrast to the sort of matter, not insulated by the discretionary function exception, which involves, in the words of the Supreme Court in *Dalehite v. United States*, 346 U.S. 15, 28 n. 19 (1953), a case involving "the run-of-the-mine accidents" as distinguished from injuries resulting from discretionary governmental activities. "Uppermost in the collective mind of Congress [when it enacted the FTCA] were the ordinary common-law torts."  *Id.* at 28.  The example that was stated most frequently in the legislative history was "negligence in the operation of vehicles."  *Id.*  *Accord Gaubert*, 499 U.S. at 325 n.7.  As the Court in *Gaubert* further explained, "[i]t may be that certain decisions resting on mathematical calculations, for example, involve no choice or judgment in carrying out the calculations," but the alleged negligence in the case at bar is not of that nature.  Decisions here as to how to respond, and when, implicated policy considerations.  (We also note that this language in *Gaubert* severely calls into question the *Whisnant* discussion, relied upon by PSC.  PSC Response/Memo. at 36 [Docket 2001]).

mean that failure to satisfy a general mandate (for example, statements of FEMA officials quoted at PSC Response/Memo. at 4-5 [Dkt. 2001], that FEMA's policy was to provide trailers only "as a last resort to provide safe, secure, and sanitary housing" and that "FEMA's first priority is the health and welfare of disaster victims we serve") would permit an FTCA suit to proceed, it would have said so.  But, as we explained at our Memorandum in Support of Motion at 8 [Dkt. 1543-2], the Supreme Court has conclusively ruled that discretion is only removed by  "a 'federal statute, regulation, or policy [that] *specifically* prescribes a course of action for an employee to follow,'" because in that circumstance the employee must follow the prescribed course.  *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)) (emphasis added). *Accord  Freeman*, 556 F.2d at 337 ("If a statute, regulation, or policy leaves it to a federal agency or employee to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary.").  Indeed, the Fifth Circuit itself has recently recognized that a general policy cannot be sufficient to defeat the discretionary function exception, noting that allegations fell outside the exception only where a "specific policy . . . constrained the decision-making ability" of the government officials.  *See Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007) (holding that discretionary function exception did not apply because prison policy required specific action, namely, to put a prisoner who raised safety concerns into solitary confinement).

Here, the general policy that PSC cites did not require any specific conduct.  It certainly did not specifically prohibit FEMA from considering legal implications of various courses of action.  To the contrary,  as we have shown in our opening memorandum, *see* U.S. Memo. in Support of Motion at 6, 22 [Dkt. 1543-2], Congress, in the Stafford Act, explicitly delegated to

FEMA the discretion to consider the "appropriate types of housing assistance . . . based on considerations of ***cost effectiveness***, convenience to the individuals and households, ***and such other factors as . . . [it] may consider appropriate***."  42 U.S.C. §5174(b)(2)(A).  Thus, Congress was careful ***not to limit the factors*** that FEMA could consider in assessing what steps to take in addressing housing crises in the wake of disasters.  FEMA was free to take into account factors such as potential litigation if FEMA officials considered such factors appropriate; and, as noted *supra*, litigation factors could impact on the cost effectiveness of the broader mission of providing emergency housing.  Consequently, it matters not whether FEMA took litigation concerns into account.  Of course, as we show in our opening memorandum, *see* U.S. Memo. in Support of Motion at 19-22 [Dkt. 1543-2], while FEMA lawyers did express concerns related to potential litigation, FEMA officials proceeded without regard to those concerns.  FEMA essentially set aside the lawyers' warnings about potential litigation impacts of proceeding with testing.  Indeed, the record is clear that, whether the FEMA Office of Chief Counsel's ("OCC") advice regarding testing was motivated by litigation concerns or other non-litigation related legal concerns, that advice did not prevent FEMA officials from moving forward and tasking the Environmental Protection Agency with testing for formaldehyde.[4]/  Nevertheless, we do wish to

---

[4]/       PSC also suggests that because FEMA had Contract Officer Technical Inspectors ("TI") on site at the Gulf Stream Coach, Inc. ("Gulf Stream"), manufacturing facility that the discretionary function exception does not apply.  *See* Dec. S. Miller ¶5 [Dkt. 196-21].  PSC is confusing the issue, the presence of TIs at the Gulf Stream facility and knowledge or information that those TIs may have acquired regarding formaldehyde in travel trailers may be relevant to whether the United States owed and/or violated a duty under applicable state tort law, however, any such allegations are irrelevant to whether FEMA's conduct was susceptible to policy analysis.  As the United States demonstrated in it initial May 2008, Motion to Dismiss, there existed no mandatory or specific statute or regulation that required the TI's to inspect or check units for formaldehyde.  *See* Dec. S. Miller ¶5 [Dkt. 196-21].  The TIs primary responsibility at the facility was to facilitate transportation of trailers to the Gulf Coast region and to monitor the production schedule.  *See* Dec. S. Miller ¶5 [Dkt. 196-21].  The TIs inspected approximately one out of every five of the units that came off the production line.  *Id.*  That inspection consisted of a

make it clear that even if FEMA OCC's advice had been motivated by litigation concerns and it had been followed, in whole or in part, there would have been policy implications (indeed, such policy implications were inherent in the process), and, as such, Prong Two would apply, regardless of what any discovery might show.

We recognize that the Court, in its October 2008 Order, took the view that if agency lawyers effectively vetoed recommendations by other FEMA officials to act more quickly in the March - June 2006 time period to test for formaldehyde, then

> it seems Plaintiffs can assert at least a colorable claim against FEMA, which arguably was not acting based on considerations of public policy. Instead, it seems, based on this evidence, to have been acting on concerns of potential litigation, liability exposure, and self-interest, well outside the policy parameters that had been previously established.

Order at 39 [Dkt. 717].[5]/  The problem with this analysis, as we show above, is that litigation

---

walk-through to ensure that the units contained contracted-for amenities, *i.e.*, basic appliances, furniture, and that the unit had not been physically damaged during production. *Id.*; *see also* Standard Form 90-13 [Dkt. 196-22].  The TIs relied upon the vendor and manufacturer to provide a safe and habitable product, and were not assigned responsibility to determine or assess whether the units had any hidden problems or defects such as excessive formaldehyde off-gassing.  *See* Dec. S. Miller ¶5 [Dkt. 196-21].

Similarly, PSC point to FEMA alleged failure to modify its Formaldehyde Brochure or warning based upon concerns voiced by Dr. DeRosa's that FEMA's failed to disclose to trailer occupants that formaldehyde is considered by the Center for Disease Control/Agency for Toxic Substances and Disease Registry ("CDC/ATSDR") to be a potential carcinogen and that it is CDC/ATSDR's policy that there is no safe level for exposure to a carcinogen.  However, any such evidence is relevant to the discretionary function exception only if there existed a mandatory and specific requirement that FEMA disclosure such information to trailer occupants.  PSC has identified no such requirement and, therefore, Dr. DeRosa's concern regarding the sufficiency of FEMA's warning is irrelevant to whether the discretionary function exception bars plaintiffs' FTCA claims.

[5]/      PSC points to the United States submission of over forty (40) exhibits in support of its motion demonstrates that the Government employees *mens rea* in determining whether the decision were motivated by appropriate and judicially determined acceptable policy considerations is a question of fact that cannot be resolve on motion.  Again, PSC misstates the standard – which is whether the challenged conduct is "susceptible" to policy analysis, and the exhibits submitted by the United States demonstrate that even if the facts play a role in assessing Prong 2, they show that the challenged conduct – FEMA's response to formaldehyde concerns in temporary emergency housing – is susceptible to policy analysis.

concerns are part of public policy and that the Stafford Act itself delegated to FEMA the authority and responsibility to make such assessments.  While an FTCA suit may proceed if the negligence alleged "did not involve any permissible exercise of policy judgment,"[6]/ here there were no specific and mandatory statutes, rules, or regulations which would make it impermissible to consider legal liability in making these policy decisions.  For a court to "second guess" the decisions of the elected branches of government in such a context would be, as we note above, judicial interference in the actions of those branches – interference that the discretionary function exception was designed to prevent.  *See Varig Airlines*, 467 U.S. at 814; *Gaubert*, 499 U.S. at 323.

Finally, PSC's argument, that the scope of the discretionary function exception in cases falling within the Stafford Act is not the same as the discretionary function exception under the FTCA, *see* PSC Response/Memo. at 41-46 [Docket 2001], makes no difference in this case, which only involves claims for damages under the FTCA.  As the Fifth Circuit recognized in *St. Tammany Parish*, 556 F.3d 307, "the Stafford Act does not contain a waiver of sovereign immunity."  *Id*. at 318; *accord Hillard v. United States*, 2007 WL 647292 (E.D. La. 2007). Indeed, 28 U.S.C. §1346(b)(1) provides that "[s]ubject to the provisions of chapter 171 of [Title 28, 28 U.S.C. §§ 2671-80, popularly known as the FTCA], the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act

---

[6]/      *Gaubert*, 499 U.S. at 326 (quoting *Berkovitz*, 486 U.S. 538 n. 3)(explaining why *Indian Towing*, 350 U.S. 61, is not germane to discretionary function exception analysis).

or omission" of employees of the United States.[7]/  In other words, the sole waiver of federal

sovereign immunity in tort is the FTCA.  *See United States v. Smith*, 499 U.S. 160, 166 (1991);

*Taylor v. Administrator of Small Business Admin*., 722 F.2d 105, 109 (5th Cir. 1983) ("claims for

monetary damages . . . which sound in tort are cognizable exclusively under the FTCA").

Consequently, it simply would not matter if the Stafford Act's discretionary function exception

were less expansive than the exception under the FTCA for purposes of the FTCA.  While any

distinction in the language of the discretionary function exception provisions might have

significance for suits brought under the Administrative Procedures Act ("APA"), 5 U.S.C. §702,

for "'relief other than money damages' related to an agency's regulatory authority," such a

distinction would be irrelevant to tort claims.  *See St. Tammany Parish*, 556 F.3d at 317 (plaintiff

brought both APA and FTCA claims).

---

[7]/     The FTCA does not waive sovereign immunity and authorize imposition of liability simply based
upon the Government's violation of a federal statute or regulation.  *See Johnson v. Sawyer*, 47 F.3d 716,
728 (5th Cir.1995) (en banc) ("[T]he violation of a federal statute or regulation does not give rise to
FTCA liability").  A violation of a ***specific and mandatory*** statute or regulation is relevant to the issue of
whether a claim is barred by the discretionary function exception, and is only relevant to the issue of
liability if the United States owed an independent duty under applicable state tort law in a non-federal
context.  *St. Tammany Parish*, 556 F.3d at 317.  If the requisite relationship and duty exist under state
law, then the violation of a mandatory statute or regulation may constitute or be evidence of negligence
in the performance of that state law duty.  *Id.*

     In the instant case, the Government's liability must be assessed in the context of applicable
Louisiana tort negligence law by reference to the duty owed by analogous private individual, i.e., the
duty owed by an individual who purchased temporary emergency housing from a commercial vendor and
donated the use of those units to a disaster victim for use as temporary housing.  In other words, for
purposes of the initial Bellwether trials, the duty owed under Louisiana tort negligence law by a good
Samaritan who voluntarily provides temporary housing to a disaster victim.  Because the Stafford Act
imposes no duties upon private individuals – in fact the government does not even owe a duty to provide
emergency housing under the Act, *see Ridgely v. FEMA*, 512 F.3d 727, 634-45 (5th Cir. 2008) (Stafford
Act and accompanying regulations does not create an entitlement to housing assistance); Court Order at
48-49 [Dkt. 1014] – the Stafford Act provisions relating to emergency housing are irrelevant to
determining whether FEMA violated a duty under Louisiana tort law that is equally applicable to private
individuals.

## CONCLUSION

For all the reasons set forth herein and in the United States' opening memorandum, the Court should grant the United States' motion and dismiss Plaintiffs' claims for lack of subject matter jurisdiction. Alternatively, the Court should grant summary judgment to the United States on all claims.

Dated: July 4, 2009                                    Respectfully Submitted,

TONY WEST                                              ADAM BAIN
Assistant Attorney General, Civil Division             Senior Trial Counsel

J. PATRICK GLYNN                                       ADAM DINNELL
Director, Torts Branch, Civil Division                 MICHELLE BOYLE
                                                       JONATHAN WALDRON
DAVID S. FISHBACK                                      Trial Attorneys
Assistant Director
                                                       *//S// Henry T. Miller* _____
                                                       HENRY T. MILLER (D.C. Bar No. 411885)
OF COUNSEL:                                            Senior Trial Counsel
JORDAN FRIED                                           United States Department of Justice
Associate Chief Counsel                                Civil Division – Torts Branch
                                                       P.O. Box 340, Ben Franklin Station
JANICE WILLIAM-JONES                                   Washington, D.C. 20004
Trial Attorney                                         Telephone No: (202) 616-4223
FEMA/DHS                                               E-mail: Henry.Miller@USDOJ.Gov
Department of Homeland Security
Washington, D.C. 20472                                 Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on July 4, 2009, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

                                                       *//S// Henry T. Miller* _____
                                                       HENRY T. MILLER (D.C. Bar No. 411885)