UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION:  N(5) |
| | * | |
| This Document Relates to:  *Charlie Age, et al. v.* | * | JUDGE: ENGELHARDT |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | |
| | * | MAG: CHASEZ |

*******************************************************************************

## OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE
## TO TAKE ADDITIONAL DEPOSITIONS

On July 2, 2009, the Plaintiff, Alana Alexander, filed a Motion for Leave to Take Additional Depositions. (Doc. No. 2047). Specifically, the Plaintiff asked this Honorable Court to grant her leave to take a multitude of depositions in addition to those she has already taken, and to compel Defendant, Gulf Stream Coach, Inc. ("Gulf Stream") to produce certain witnesses at these depositions. Gulf Stream opposes the Plaintiff's Motion on the basis that the Plaintiff has not shown good cause to obtain these additional depositions.

As this Court is well aware, this Multi-District Litigation ("MDL") is the consolidation of several state and federal toxic tort suits in which an estimated thirty thousand named plaintiffs claimed to have inhabited emergency housing units ("EHUs") that were provided to them by the Federal Emergency Management Agency ("FEMA") as a result of the alleged uninhabitability of their residences due to Hurricanes Katrina and Rita. (Doc. No. 109, at ¶ 96). Plaintiff Alexander joined the MDL on February 27, 2009. (*Age, et al. v. Gulf Stream Coach, Inc., et al.*, 09-2892, Doc. No. 1). Thereafter, she and her minor child were selected as the bellwether plaintiffs in a trial against Gulf Stream and other defendants. Since that selection, the parties have exchanged written discovery, designated experts, and taken multiple depositions, as the Plaintiff correctly

stated in her brief. (Doc. No. 2047, p. 4). The quantity of the depositions taken and noticed by the Plaintiff has now become a contested issue.

Under Federal Rule of Civil Procedure 30, a party may depose any person, including a party to the litigation. Fed. R. Civ. P. 30(a)(1). However, a party cannot take more than ten depositions without leave of court. Fed. R. Civ. P. 30(a)(2)(A)(i). If taking a deposition would result in more than ten being taken, then the party seeking to take that deposition needs the court's permission to exceed the ten-person limit. *Id*. This Honorable Court acknowledged Rule 30's limitation when it stated at the Court's status conference of May 8, 2009, that it would not unilaterally allow for more than ten depositions and would only allow additional depositions for good cause shown. Despite Rule 30 and despite the Court's statement at the May 8 status conference, the Plaintiff in her motion for leave takes the curious position that Rule 30 should not apply to this case, and the parties should use their own sense and good judgment to guide the scope of additional depositions in this matter. (Doc. No. 2047, p. 6). This position is contrary to the Federal Rules and to this Court's own statements, and accordingly it should be rejected. If the Plaintiff in this case wants to take additional depositions over the ten-person limit, then she must show good cause why she is entitled to do so. The Plaintiff, however, has not shown good cause to depose additional witnesses, and in fact, there are several factors that militate against taking the requested depositions.

 **I. DISCOVERY CUTOFF**

As the Court is well aware, trial of this matter is set for September 14, 2009. With trial only two months away, a crucial pre-trial deadline is close on the horizon – the July 23, 2009, discovery deadline. (Doc. No. 1305). The parties have been working at a frantic pace to meet this deadline and the others necessary for the September trial. However, at this late date, the Plaintiff

now requests leave to take a substantial amount of depositions over the ten-person limit established in Federal Rule of Civil Procedure 30. Alone, the Plaintiff has taken, noticed or requested over <u>40</u> depositions to date. In addition to the five Gulf Stream depositions already taken, the Plaintiff has requested twelve more. (Doc. No. 2047, p. 7—9).[1] Further, the Plaintiff has noticed and/or requested nine depositions of Fluor employees, seven depositions of FEMA representatives, and 16 expert witness depositions. With little more than two weeks left before the discovery cutoff, the Plaintiff seeks leave to depose about four times as many witnesses as are allowed under the default provisions of the Federal Rules. Moreover, these depositions are proposed as part of the *Alexander* trial only. The depositions are not part of the entire MDL or inclusive of the depositions that will occur in other bellwether trials. For a case involving one plaintiff and her minor child, this is a completely unreasonable request.

Gulf Stream suggests that the Plaintiff is not justified in requesting leave to take these additional depositions. With the discovery deadline looming, the parties have scarcely enough resources and time to facilitate these unnecessary depositions, which not only require attendance but also at least one day's worth of preparation. The parties cannot participate in these depositions in a meaningful way if they do not have adequate time to organize and prepare for these depositions, and such preparation would be impossible if the Plaintiff is granted leave to take so many additional depositions.

Furthermore, the parties must keep in mind that this is one case and the discovery phase is limited to the *Alexander* trial. The September trial of the Plaintiff's claims is not dispositive of all the claimants in this MDL – this is, in fact, just a single case. When this Honorable Court set the bellwether trial, Gulf Stream understood that the Court was not contemplating that all MDL

---

[1]    Gulf Stream has specifically agreed to produce for deposition two of the requested witnesses, Eddie Abbott and Jeff Zumbrum.

discovery would be completed prior to the discovery deadline for this one trial. Yet, the Plaintiff in this case suggests deposing several witnesses who will speak to issues outside the scope of this trial. For instance, the Plaintiff requests leave to depose Gulf Stream employees Rick Jones, John Bruhn, and Mike Ward, who will testify about the alleged complaints of various EHU residents. (Doc. No. 2047, p. 8). However, the only relevant complaints in the *Alexander* trial are those of the Plaintiff and her minor child; whatever complaints other residents may have had are completely irrelevant to the Plaintiff's claim. These issues have no bearing on the Plaintiff's claim, so the Plaintiff should not be granted leave to explore them. While these depositions may have some relevance in future trials, it is unreasonable to take them in relation to this one case. The parties should not be forced at this stage to engage in discovery for the whole of the MDL.

## II.    THE IRRELEVANCE OF KNOWLEDGE

In addition to the timing concerns, Gulf Stream asserts that the Plaintiff seeks to depose individuals who have no relevant information for purposes of the *Alexander* trial. The Plaintiff spends a significant portion of her Motion for Leave discussing how the depositions of the individuals listed therein will elicit testimony about a single issue – Gulf Stream's knowledge. By seeking to depose additional individuals on the issue of knowledge, the Plaintiff wants to rehash an issue she has explored with several of the prior Gulf Stream depositions she has taken.[2]

Putting aside for argument's sake the fact that the Plaintiff seeks duplicative testimony, Gulf Stream submits that the Plaintiff's focus on the topic of knowledge is misplaced and is not sufficient to show good cause. This is so because under the Louisiana Products Liability Act ("LPLA"), **knowledge is an irrelevant consideration**. The only way in which a plaintiff can

---

[2]    *See* Deposition Transcript of Dan Shea, taken June 1, 2009, p. 92, 163, 248—250; Deposition Transcript of Scott Pullin, taken June 2, 2009, p. 33, 87, 130, 151; Deposition Transcript of Burl Keel, taken June 2, 2009, p. 84, 86, attached *in globo* as Exhibit "A."

recover against a manufacturer under the LPLA is if the plaintiff shows that her damage was caused by a characteristic of the manufacturer's product that renders the product "unreasonably dangerous." La. Rev. Stat. § 9:2800.54(A) (2009). A product can be unreasonably dangerous in one of four ways – construction/composition, design, the manufacturer's failure to provide an adequate warning about the product, or the failure of the product to conform to an express warranty that the manufacturer has given about the product. § 9:2800.54(B).

Under each of the four theories of liability, knowledge is irrelevant. The focus of the first theory, construction/composition, is whether the product deviated in a material way from the manufacturer's specifications, performance standards or products it made that were otherwise identical to the product involved in the litigation. § 9:2800.55. The focus of the second theory is whether an alternative design for the product existed that would have prevented the claimant's damage <u>and</u> whether the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and any adverse effect the alternative design would have had on the utility of the product. § 9:2800.56. The focus of the third theory is whether the product possessed a characteristic that could cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of that characteristic to the product's users and handlers. § 9:2800.56. And the focus of the fourth theory is whether the product does not conform to an express warranty made by the manufacturer about the product, provided the warranty has induced the use of the product <u>and</u> the untruthfulness of the warranty caused the claimant's damage. § 9:2800.58. Nowhere in the LPLA is knowledge made an essential element of this

Plaintiff's claim. Unlike in other aspects of Louisiana law,[3] knowledge is not a relevant part of the LPLA's framework.

Admittedly, knowledge is implicated in the LPLA's provisions on inadequate warning. The LPLA states:

> A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product <u>that may cause damage and the danger of such characteristic</u>, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

§ 9:2800.57 (emphasis added).

Though knowledge is a part of this section, it is triggered only when the manufacturer has an awareness about a characteristic of the product that is capable of causing damage. In the *Alexander* case, however, Gulf Stream acquired <u>no</u> knowledge of a damage-causing characteristic in the product after it left Gulf Stream's control. The parties have established that the Plaintiff's unit was manufactured in 2004, well before Katrina and Rita. Gulf Stream has produced GULF0005688 to GULF0006670, various purchase orders and invoices showing that Gulf Stream purchased HUD-compliant wood for all of the pre-2005 units it manufactured. Furthermore, Gulf Stream received a total of seven occupant complaints – out of 50,000 units manufactured – all of which regarded 2006 model units that were manufactured after the 2005 hurricanes. *See* Affidavit of Elizabeth Ganiere, dated July 9, 2009, attached as Exhibit "B." Thus,

---

[3]      *See, e.g.*, LA. CIV. CODE art. 2317.1 (2009) (allowing recovery against the owner or custodian of a defective thing only upon a showing that the owner/custodian knew or should have known of the ruin, vice, or defect which caused the damage); LA. REV. STAT. § 9:2800.6 (2009) (requiring a claimant who brings suit because of a fall due to a condition existing in or on a merchant's premises to show that the merchant either created or had actual or constructive notice of the condition that caused the damage prior to the occurrence).

Gulf Stream never acquired knowledge of any damage-causing elements in the pre-2005 units.[4] Whatever Gulf Stream may have learned about the wood products contained in the Katrina and Rita units is completely irrelevant as to this Plaintiff because she and her minor child occupied a unit with LFE products.

Despite those facts, the Plaintiff wishes to obtain further information about this irrelevant issue. In her Motion for Leave, the Plaintiff stated that she wants to depose certain Gulf Stream employees, who will discuss the complaints they had about units being constructed too quickly to meet demand. (Doc. No. 2047, p. 10). However, Gulf Stream asserts that even if there were complaints voiced by Gulf Stream's employees, such evidence does not go to an unreasonably dangerous condition in the Plaintiff's unit, specifically. The only purpose for establishing those alleged complaints would be to establish Gulf Stream's knowledge. But, that has no bearing to the claims of the Plaintiff – the fact that there might have been some complaints from line workers is not relevant to whether there was an unreasonably dangerous condition in the Plaintiff's unit because her unit was constructed with LFE. Thus, as it pertains to this Plaintiff and her minor child, Gulf Stream has no knowledge that would give rise to liability under the LPLA, so deposing individuals about Gulf Stream's knowledge is absolutely unnecessary.

Furthermore, Gulf Stream asserts that even if the Court believes that knowledge is a relevant consideration in this case, the Plaintiff still has no good cause to depose additional Gulf Stream employees on this topic. At the same time Gulf Stream produced the invoices and purchase orders discussed above, the Plaintiff subpoenaed the records of ten of Gulf Stream's wood suppliers. *See* Waiver of Notice filed by Blue Ribbon Legal, L.L.C., on behalf of plaintiffs' counsel Anthony G. Buzbee, attached as Exhibit "C." These records will allow the

---

[4]     Gulf Stream will produce a qualified witness to testify as to the quality and type of wood products that were included in the EHU occupied by Plaintiff Alexander and her minor child. *See infra*, p. 7.

Plaintiff to confirm whether Gulf Stream's suppliers actually gave Gulf Stream the HUD-compliant wood that it ordered. Additionally, Gulf Stream has agreed to produce a qualified representative, Jeff Zumbrum, who will testify regarding purchasing and suppliers. Gulf Stream suggests that this information is more then enough to provide the Plaintiff with the information she seeks. To develop what Gulf Stream maintains is an irrelevant issue, the Plaintiff has deposed several Gulf Stream employees regarding the knowledge issue, has been provided with purchase orders and invoices showing what wood products Gulf Stream purchased, has subpoenaed the records of the suppliers to verify the type of wood they provided to Gulf Stream, and will depose Gulf Stream employee Zumbrum who will answer questions related to the suppliers and purchasing issues. The Plaintiff has no good reason to depose anyone else about this topic.

### III.     MANY OF THE REQUESTED DEPOSITIONS ARE NEEDLESS

Because Gulf Stream maintains that the parties have no need to discover and litigate the knowledge issue, it therefore asserts that the depositions the Plaintiff requested in her Motion for Leave and completely superfluous and needless. Many of the requested depositions go to Gulf Stream's knowledge about residents' complaints and knowledge of what materials were in the units. (Doc. No. 2047, p. 7—9). As explained above, that information has no bearing on this bellwether trial. The parties have a whole host of issues that will require significant time and attention; there is no need to add to that workload with issues that have no relevance to this Plaintiff's claims.

Also, several of the proposed depositions are needlessly duplicative. For instance, the Plaintiff requests leave to depose both Todd Lentych and Jeff Zumbrum regarding supplier relations. *Id*. at 7, 8. The Plaintiff also proposes the deposition of three individuals who will

discuss the complaints of EHU residents. With the short amount of time left before the discovery deadline, taking multiple depositions to discuss the same issue is duplicative and wasteful.

Finally, Gulf Stream acknowledges that in this type of litigation, the parties are justified in taking more than ten depositions. However, Gulf Stream believes that the depositions should be reasonable in numbers <u>and</u> should be geared toward the discovery of important, relevant issues to the *Alexander* trial. Additionally, it is important to remember that the Plaintiff had a right to depose any individuals she wanted up to the ten-person limit. If the knowledge issue was deemed to be critical to the September trial for some reason, then the Plaintiff should have given priority to a witness who could speak to that issue. Moreover, the Plaintiff knew after the Court's comments at the May 8, 2009, status conference that the ten-person limit would not be extended without good cause. Yet, the Plaintiff exhausted the ten-person limit and now asks the Court to give her leave to depose individuals who will give testimony on an immaterial and unimportant topic. In doing so, the Plaintiff has not shown the requisite good cause to depose these individuals. Accordingly, the Plaintiff should not be permitted to depose individuals who cannot speak to the relevant issues in this case.

Therefore, Gulf Stream respectfully requests that this Honorable Court deny the Plaintiff's Motion for Leave to Take Additional Depositions. Despite the requirement that she

show good cause as to why she is entitled to depose the individuals listed in her Motion, the

Plaintiff has failed to provide that good cause. Thus, the Plaintiff's motion should be denied.

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON
Timothy D. Scandurro #18424
Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

## **C E R T I F I C A T E**

I hereby certify that on the 9th day of July, 2009, a copy of the foregoing Opposition to Plaintiff's Motion for Leave to Take Additional Depositions was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com