UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                               MDL NO. 07-1873
       FORMALDEHYDE PRODUCTS
       LIABILITY LITIGATION
                                                                SECTION "N" (5)

THIS DOCUMENT RELATES TO
Member case no. 09-2892

## ORDER AND REASONS

Before the Court is Gulf Stream Coach, Inc.'s Motion to Exclude the Testimony of Lila Laux (Rec. Doc. 1753). In this motion, Defendant Gulf Stream Coach, Inc. ("Gulf Stream") seeks to have this Court exclude the testimony of Lila Laux, Ph.D ("Dr. Laux"), arguing that her opinions are not based on reliable scientific methodology, are outside of her area of expertise, are not relevant, and would not assist a trier of fact in rendering a decision on the merits. After considering the memoranda of the parties and the applicable law, the Court rules as set forth herein.

**I.    BACKGROUND**

Dr. Laux, Plaintiffs' designated human factors/warnings expert, would be called to testify regarding her evaluation of the warnings and information concerning formaldehyde in the 2004 Gulf Stream emergency housing unit ("EHU") used by the bellwether plaintiff. Dr. Laux lists twenty-two "opinions" in her report. (See Exhibit A to Rec. Doc. 1753). Specifically, Dr. Laux

opines that the EHU used by the bellwether plaintiff was unreasonably dangerous because it "could reasonably be expected to create elevated levels of formaldehyde gas in the interior of the trailer" (Exhibit A to Rec. Doc. 1753, p. 9). Dr Laux also states that the EHU lacked appropriate information about the "hazard of formaldehyde and its dangers, especially the danger to children and people with respiratory problems such as asthma." (Exhibit A to Rec. Doc. 1753, p. 11). Dr. Laux also seems to offer the medical conclusion that exposure to formaldehyde fumes that the bellwether plaintiff could smell "could cause serious, potentially life-threatening and long-term health problems for those who breathed the fumes, especially to children and in particular children with asthma and other respiratory problems." (Exhibit A to Rec. Doc. 1753, p. 9). After summarily reaching the conclusion that this EHU, as designed, allegedly created an unreasonably dangerous condition by having the potential to emit purportedly excessive levels of formaldehyde, Dr. Laux opined that "[t]he lack of appropriate information on the [EHU] rendered the [EHU] unreasonably dangerous for its occupants" (Exhibit A to Rec. Doc. 1753, p. 11). Thus, in Dr. Laux's opinion, the subject EHU was defectively designed.

      Gulf Stream argues that Dr. Laux is not qualified to render an expert opinion on the design of this EHU or on the bellwether plaintiff's alleged exposure to formaldehyde and resultant damages therefrom. In support of this assertion, Gulf Stream notes that Dr. Laux is an Industrial Psychologist. (Exhibit A to Rec. Doc. 1753, p. 1). She is not a medical doctor, toxicologist, industrial hygienist, engineer or an epidemiologist. (Exhibit C to Rec. Doc. 1753, pp. 80-81). To form her opinions in such areas, Dr. Laux admits that she routinely relies on information from actual specialists in these fields to evaluate systems that include humans as an element. (Exhibit A to Rec. Doc. 1753, p. 3; Exhibit C to Rec. Doc. 1753, p. 79). Thus, Gulf

2

Stream contends that Dr. Laux's testimony should be excluded as she is not qualified to render the opinions expressed in her report.

Plaintiffs, on the other hand, assert that Dr. Laux is exceedingly qualified to render opinions on the warnings in this case. They argue that she utilized the accepted methodology used by human factors experts universally in creating and evaluating warnings. Plaintiffs contend that Dr. Laux's opinions arose logically from her extensive background research of formaldehyde and the facts of the case.

## II. LAW AND ANALYSIS

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir.2004); see *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir.2004); see *Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed.Appx. 377, 381 (5th Cir.2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (citing *Kumho Tire*, 526 U.S. at 152)). With respect to the determination of relevancy pursuant to Rule 702 and *Daubert*, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir.2003).

Here, just as Judge Feldman noted in *McNabb v. Graham Gulf, Inc.*, 2005 WL 1038024 (E.D. La. 2005), this Court is confronted with determining whether the fact finder's informed evaluation of certain factors depend on expert assistance or simply implicate a common sense assessment "within the realm of the average juror's knowledge and experience." See *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990); see also *Bouton v. Kim Susan, Inc.*, No. 96-902, 1997 WL 61450, at *3 (E.D. La. Feb.6, 1997). Rule 702 requires the Court to determine whether an expert is needed to "assist the trier of fact." Fed. R. Evid. 702. However, if

the Court concludes that a "jury could adeptly assess [the] situation using only their common experience and knowledge," *Peters*, 898 F.2d at 450, there is no need for a full *Daubert* analysis. On the other hand, if the Court concludes that expert testimony would be helpful to assist the trier of fact, then *Daubert*'s impact must be considered. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275 n. 6 (5th Cir.1998) (en banc); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 990 (5th Cir.1996).

Dr. Laux would be called to testify as a human factors expert regarding her evaluation of the warnings and information concerning formaldehyde in the subject EHU. Through her consideration of other scientific experts' reports, and her own appreciation of the warnings provided (or omitted), Dr. Laux opined that this EHU is unreasonably dangerous for its occupants because it "could reasonably be expected to create elevated levels of formaldehyde gas in the interior of the trailer" (Exhibit A to Rec. Doc. 1753, p. 9). Indeed, this Court concludes that all of Dr. Laux's opinions fail to assist the Court or Jury. She seems to play the role of an "über-juror" rather than as an expert, offering opinions that invade the province of the jury, which can reasonably be expected to consider and evaluate testimony from actual experts who have specialized, technical knowledge on the subject matter pertinent to this litigation, such as travel trailer design and manufacture, and alleged health hazards associated with formaldehyde exposure.

As the Fifth Circuit noted in *In re Air Crash Disaster at New Orleans, Louisiana*, 795 F.2d 1230, 1233 (5th Cir.1986), "trial courts must be wary lest the expert become nothing more than an advocate of policy before the jury. Stated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." The

undersigned finds that the matters on which Dr. Laux offers opinions are within the common understanding of the average juror; therefore, her testimony would not assist the jury in determining the facts, but rather consists of a cumulative appreciation of other experts' testimony - something the jury can and will do, with the benefit of counsel's arguments to such extent. The Court also concludes that the adequacy of any warning involved in this litigation is a factual issue. Fact issues are not beyond the common understanding of the average juror, thus, the jury can handle such issues without expert help.

In *Calvit v. Procter & Gamble Manufacturing Company*, 207 F. Supp. 2d 527 (M.D. La. 2002), Judge Parker noted, "'Human factors' experts appear to this court to resemble the old time 'jack of all trades;' 'he is master of none.' The undersigned does not disagree with this statement. The Court concludes that a jury will not benefit from Dr. Laux's conclusory testimony as a "human factors" expert. To be clear, the Court notes that no party will be permitted to introduce a human factors expert; no expert will be allowed to directly instruct the jury how it should dispose of a factual issue in this case.

### III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that Gulf Stream Coach, Inc.'s Motion to Exclude the Testimony of Lila Laux (Rec. Doc. 1753) is **GRANTED**.

New Orleans, Louisiana, this 15th day of July, 2009.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**