UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873<br><br>SECTION: N(5) |
| This Document Relates to: *Lyndon T. Wright. v. Forest River, Inc., et al*, Docket No. 09-2977 | * * * | JUDGE: ENGELHARDT<br><br>MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE
TO FILE FIRST SUPPLEMENTAL AND AMENDING COMPLAINT**

**MAY IT PLEASE THE COURT:**

Defendant, Forest River, Inc. ("Forest River"), submits this Opposition to the Motion for Leave to File First Supplemental and Amended Complaint filed by plaintiff, Lyndon Wright ("Wright"). Forest River hereby incorporates and adopts the Opposition to Plaintiff's Motion for Leave to File First Supplemental and Amended Complaint filed by Shaw Environmental, Inc. ("Shaw"). *See* Rec. Doc. 2163. In addition, Forest River submits this Opposition to address concerns recently raised by this Court regarding Wright's alleged exposure to mold and the potential for a new bellwether plaintiff.

**I. BACKGROUND**

The parameters for selecting bellwether plaintiffs were clear and straightforward. In lieu of complex, overlapping sets of Interrogatories and Requests for Production to each plaintiff, the

1

Court and parties worked diligently to produce a streamlined discovery device, the Plaintiff Fact Sheet (PFS). The PFS was to serve as a truncated, though complete, compilation of personal information, alleged medical complaints, alleged problems with the unit, and testing data. Because it contained a wide variety of pertinent information, the Court and parties agreed to utilize the PFS as the principal tool for selecting meaningful bellwether trial candidates.

While other manufacturing defendants were unable to reach accord regarding their bellwether candidates, PSC and Forest River worked together to reach an agreement nominating Lyndon Wright. Wright's first PFS, submitted in February of 2009, listed his alleged medical problems, contained air sampling results[1], and detailed problems with his trailer. *See* Wright's original Plaintiff Fact Sheet, dated February 19, 2009, attached as Exhibit "A." Armed with this seemingly detailed PFS, Forest River felt comfortable in consenting to PSC's request to have Wright serve as a bellwether plaintiff. Of course, Forest River assumed that the information in the PFS was not only accurate but, more importantly, complete. On April 6, 2009, the Court rendered Pre-Trial Order No. 34, confirming Wright as Forest River's first trial plaintiff. (Rec. Doc. No. 1299).

On June 24, 2009, Wright filed a Motion for Leave to File First Supplemental and Amended Complaint, seeking to add new claims of mold exposure. (Rec. Doc. 1862). As discussed more fully below, this amendment should be denied, as it is untimely and the result of undue delay. The trial should go forward as planned, with plaintiff's references to mold limited pursuant to this Court's recent Order and Reasons. (Rec. Doc. 2149). In the alternative, should a new bellwether candidate be necessary, Forest River requests that the Court (1) order PSC to pay for costs and expenses incurred thus far in pursuing the Wright suit; (2) allow the defendants to select the new bellwether candidate; and (3) establish a new trial date.

---

[1] These test results were obtained while the trailer was still located at Wright's residence in New Orleans.

2

## II.   LAW AND ARGUMENT

### A.   PLAINTIFF'S MOTION TO AMEND TO ADD MOLD EXPOSURE CLAIMS SHOULD BE DENIED

As Shaw correctly points out in its Opposition (Rec. Doc. 2163), plaintiff has failed to carry his burden to amend his original pleading. Leave to amend is not automatic. *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991). In deciding whether to grant leave to amend, courts consider such facts as (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failures to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981). Moreover, under FRCP 16(b), plaintiff must show "good cause" to modify the Court's Scheduling Order, which in this case required that all amendments to pleadings be submitted by March 23, 2009. *See* Rec. Doc. 1307. *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990).

A cursory review of the timeline of Wright's suit demonstrates repeated delays by PSC in raising allegations of mold exposure. Wright's first PFS, submitted in February of 2009, contains no mention of mold or water leaks in the trailer, nor any illness specifically linked with mold. *See* Exhibit "A." Six weeks after being selected as a bellwether plaintiff by this Court, Wright submitted a supplemental PFS. *See* Exhibit "B," Supplemental PFS, dated April 14, 2009. Again, there is no mention of mold or water leaks, and, in fact, the word "mold" never appears in either of these PFS.

These omissions are even more glaring given Wright's recent deposition testimony.[2] Wright testified that he smelled a "stale" and "musty" odor inside the trailer in the winter of 2006. By early 2007, he had noticed a gap in the trailer's door which allowed water to leak

---

[2] A transcript of the 7/10/09 Wright deposition has been requested, but, in order to provide this Opposition to the Court as soon as possible, Forest River was unable to attach a copy of that deposition to this pleading.

3

inside the unit. Wright thus had personal knowledge of the alleged mold problems in his trailer throughout 2007 and 2008.[3] Yet, in the course of both filing his lawsuit and completing <u>two</u> PFS in 2009, he made no mention of mold exposure whatsoever.[4]

Further, PSC sent its own air sampling expert, the Scott Group, to Wright's trailer when the unit was still located at Wright's New Orleans residence. *See* Ex. "B." Scott inspected the unit in November of 2008, within ninety days after Wright allegedly vacated the unit. However, Scott made no comment on the presence or odor of mold inside the unit and simply tested for formaldehyde levels.

In the end, both Wright and the PSC's own experts had opportunities to raise the mold issue months ago. Instead, the first whisper of mold allegations came last month via plaintiff's proposed First Supplemental and Amending Complaint. *See* Rec. Doc. 1862.

Plaintiff's repeated failure to inform the parties and the Court of the mold issue, either though PFS or formal pleadings, is inexcusable. The request to amend Wright's complaint should be denied, and the trial should go forward. Indeed, this Court has already provided a means to deal with the mold issue in the larger context of the formaldehyde litigation. Specifically, in its Order and Reasons regarding plaintiff's Motion for Reconsideration on testing for mold, this Court stated:

> [E]vidence of the presence of mold may be indicative of moisture intrusion, which may be important to formaldehyde levels in the EHU. Thus, any references to mold would be admissible if they are offered to show an alleged impact on formaldehyde levels.

(Rec. Doc. 2149).

---

[3] Any argument that Wright did not know about the dangers of mold exposure is disingenuous. As a maintenance engineer at the Hyatt Hotel and other buildings, Wright regularly inspects water leaks and mold problems and wears a protective mask.

[4] Forest River notes that Wright did list other concerns about his trailer, specifically an electrical breaker which did not function properly. *See* Exs. A & B. Although Wright testified that he made complaints about the odor and water leaks to FEMA and/or Shaw personnel throughout his residency in the trailer, Wright nevertheless failed to mention any of these problems on either PFS.

This solution allows plaintiff to keep the focus of his case on formaldehyde exposure and fold in any theories about the effects of mold and moisture so long as they relate to formaldehyde. It is only in this manner that the parties trial preparation can continue uninterrupted, as the issues of mold, smoking, and other confounding factors may still be addressed in relation to Wright's alleged formaldehyde exposure. As Shaw noted, this matter is entitled *In re: FEMA Trailer Formaldehyde Products Liability Litigation*, and the Court's current Order would allow for formaldehyde to remain the focus of the case.

### B. THE SELECTION OF A NEW BELLWETHER CANDIDATE WILL UNFAIRLY PREJUDICE THE DEFENDANTS

In recent email communications, this Court has suggested that, should Wright be allowed to amend his suit, his status as a bellwether candidate may be inappropriate, and a new bellwether plaintiff should be substituted immediately. For the reasons articulated below, the selection of a new bellwether candidate will severely restrict the defendants' ability to develop their defenses. In doing so, the Court will unduly prejudice the defendants, and the resulting trial will not yield meaningful results for the formaldehyde litigation as a whole. Accordingly, the amendment should be denied, and the Wright trial should go forward as planned.

If, at this late hour, a new plaintiff selection is required, the current scheduling order is unworkable. In order to provide a list of recommended replacement bellwether candidates to the Court, Forest River would need at least two weeks to examine the list of eligible plaintiffs. This list has been growing daily for the last three months, and each candidate's PFS, medical and employment records, and testing data would need to be analyzed to determine which plaintiffs would be appropriate. If this process is rushed, there is a significant risk of a flawed selection, e.g., someone who later refuses to attend trial or presents an exposure pattern or illness too unique for bellwether purposes, thereby thwarting the purpose of the bellwether trial. As the

5

Court noted during the class certification process, these claims are highly specific, each with individual medical histories and environmental exposures, and the parties must all put forth considerable time, effort, and attention to select a bellwether plaintiff with instructive value to the myriad of other cases. *See* Rec. Doc. 1014.

Even if a new bellwether candidate were selected today, the logistics of conducting discovery and trying a case in December of 2009 are challenging, if not impossible. The new plaintiff's unit must be located to determine what testing has been done. The Court has also allowed additional testing on the Wright unit, and, should the same be the case for a new bellwether, this new round of air sampling and destructive testing would conservatively take four to six weeks to complete. Medical and employment record production, which, in the case of Wright, took more than three months to obtain, would delay the completion of discovery until late fall, only a few weeks before trial. With plaintiff's expert reports currently due July 22nd and defendants' due August 21st, the current scheduling order would be need to be completely overhauled in order to accommodate a new plaintiff. If the Court wishes to maintain a December trial date, Forest River respectfully requests that the Court proceed with the Wright case, as a trial with any other plaintiff in December would be not only unduly burdensome but likely untenable.[5]

### C. IN THE ALTERNATIVE, SHOULD A NEW CANDIDATE BE SELECTED, THE COURT SHOULD (1) SANCTION PSC AND ORDER PAYMENT OF COSTS AND EXPENSES INCURRED IN PURSUING WRIGHT'S CLAIM; (2) ALLOW DEFENDANTS TO SELECT A NEW BELLWETHER CANDIDATE; AND (3) SET A NEW TRIAL DATE

If the Court believes a new bellwether candidate is necessary, Forest River requests several forms of relief. First, a brief review of the events that led to this juncture is instructive.

---

[5] Gulf Stream had seven months to prepare for trial after the Court's scheduling order was issued in February 2009. Should the Forest River trial go forward in December with a new plaintiff, defendants will have approximately four months or less to prepare, depending on when the new plaintiff is selected.

By filing suits and submitting PFS on behalf of a limited sample of available plaintiffs, PSC has been able to dictate the pool of eligible bellwether plaintiffs thus far. In the first round of bellwether selection in February, PSC limited that pool even further by refusing to allow any "less desirable" candidates serve as plaintiffs in the Forest River trial.[6] In an effort to move the bellwether process forward, counsel for Forest River raised no formal objections at that time and cooperated with PSC in selecting Lyndon Wright.

Since that time, Forest River and the other defendants have expended significant resources preparing this case for trial. Defendants obtained an independent medical examination of Wright, located and obtained a myriad of medical and employment records from numerous third parties, and retained experts not only to analyze prior air sampling results but also to attend the upcoming re-inspection of the Wright unit. Just last week, the defendants deposed Mr. Wright, and counsel for Forest River spent numerous hours preparing for and taking that deposition. These costs, fees, and other expenses were incurred directly in preparation of Wright's case and not the formaldehyde litigation in general. If the Court substitutes another plaintiff for Wright, that time and money will have been wasted, and the entire process will have to begin anew.

Forest River submits that, had PSC performed a diligent investigation of Wright's claims before his selection, the instant situation could have been avoided entirely. Recall that Wright has known of the mold problem since early 2007. PSC assisted Wright with completing not one but two plaintiff fact sheets, one before his selection as a bellwether and one after. PSC also sent its testing expert to Wright's trailer while it was still located in New Orleans in October of 2008. PSC could and should have raised the mold issue long before June of 2009. Whether caused

---

[6] For instance, in the initial round of bellwether plaintiff discussions for the Forest River trial, PSC objected to the selection of any plaintiff who smoked solely on the grounds that another bellwether trial already involved a smoker.

7

intentionally or by mere inadvertence, PSC's delay is inexcusable and has cost Shaw, Forest River, and the government tens, if not hundreds, of thousands of dollars.

Accordingly, Forest River requests that, as a sanction for these actions, the Court order PSC to pay the costs and expenses incurred thus far in preparing for the trial of Lyndon Wright.[7] Forest River also requests that the Court allow the defendants to choose the substitute bellwether plaintiff. As discussed above, PSC has been able to cherry pick the pool of applicants to this point, and, given its failure to select appropriate plaintiffs in the past, the defendants should be provided with an opportunity to select the new candidate. Finally, because of the scheduling concerns discussed above, Forest River requests a new trial date for any substitute bellwether plaintiff.

### III. CONCLUSION

**In light of the above and foregoing,** Forest River requests this Honorable Court deny plaintiff's Motion for Leave to File First Supplemental and Amended Complaint. Should a new bellwether candidate be necessary, River requests that the Court (1) order PSC to pay for costs and expenses incurred thus far in pursuing the Wright suit; (2) allow the defendants to select the new bellwether candidate; and (3) establish a new trial date.

---

[7] Due to the time constraints involved in filing this pleading, Forest River has not filed a separate motion for sanctions pursuant to FRCP 11(c)(2). FRCP 11(b)(1) allows for the imposition of sanctions when a party has presented a pleading for an improper purpose, including to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Although it has not filed the requisite pleading, Forest River notes that, under FRCP 11(c)(3), a court may, on its own initiative, order a party to show cause why conduct has not violated Rule 11(b).

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (La. State Bar No. 6154)
JASON D. BONE (La. State Bar No.28315)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

## CERTIFICATE

I hereby certify that on the 16th day of July, 2009, a copy of the foregoing Notice of Hearing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone
_____
JASON D. BONE