UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-5"

JUDGE ENGELHARDT
MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*Lyndon T. Wright v. Forest River, Inc., et al.*
*No. 09-2977* (E.D. La.)

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST SUPPLEMENTAL AND AMENDED COMPLAINT

**MAY IT PLEASE THE COURT:**

Plaintiff, Lyndon T. Wright ("Lyndon"), respectfully submits this Reply to the Opposition to Plaintiff's Motion for Leave to File First and Supplemental and Amended Complaint filed by Defendant, Shaw Environmental, Inc. ("Shaw"). Plaintiff wishes to further reiterate his reasons for supplementing and amending his complaint and also to refute several of the Defendant's arguments which are incorrect and inaccurate.

First, Shaw contends Lyndon's complaint is a bellwether case and he should not amend any information about anything except formaldehyde because it will undermine future bellwether cases that do not involve mold. However, the Plaintiff's case is not a true bellwether case and the

1

hope for the Plaintiff's trial is that it has instructive value. The concept of a bellwether is defined in *In re Chevron*, 109 F.3d 1016, 1020 (5th Cir. 1997), which held that bellwether selection is:

> [B]ased on competent, scientific, statistical evidence that indentifies the variables involved and that provides a sample of sufficient size so as to permit a finding that there is a sufficient level of confidence that the results obtained reflect results that would be obtained from trials of the whole.

In the instant litigation, there was no scientific or statistical calculation used to determine a representative bellwether population. Rather, Lyndon's complaint was selected based upon certain non-scientific, non-statistically relevant criteria. As such, Plaintiff's complaint and anticipated trial are not, by definition, "bellwethers".

Further, the Defendant alleges that this litigation is about formaldehyde and not mold, when in fact, Lyndon's case is also about Shaw's negligence in their duty to maintain his Trailer. Lyndon complained to Shaw repeatedly about the mold in his Trailer, (as well as other problems such as the heater not working) and Shaw never took appropriate action to remedy it, though part of their duty pursuant to their contract with FEMA was to maintain and repair the travel trailers they provided to victims of Hurricane Katrina.

Shaw urges that formaldehyde is the critical issue, not mold. While it is certainly true that formaldehyde is the primary focus of the MDL, the Center for Disease Control, in their Final Report on Formaldehyde Levels in FEMA-Supplied Trailers, Park Models and Mobile Homes, (CDC, July 2008) stated: "Respondents reported roof leaks in 17% of trailers, pipe leaks in 15% and mold in 21%." This suggests that mold is not a separate issue from formaldehyde, but an issue found in a significant number of trailers. It would be remiss not to further examine this issue because it will be an issue in other cases. In fact, Lyndon is one of five currently scheduled trials, which is proportionately accurate to the number reporting significant mold problems. The CDC study also states that: "The presence of $\geq 1$ ft² of mold was associated with a significant

increase in GM Formaldehyde levels (adjusted means 86 ppb versus 63 ppb)." The study concludes that "The presence of mold ($\geq 1\text{ft}^2$) (6% of trailers) was associated with higher formaldehyde levels. Mold also can contribute to decreased indoor air quality and cause respiratory symptoms." Mold is not a separate problem but a contemporaneous component under the umbrella of the issue of formaldehyde. Since the CDC documented that mold is present in 21% of the trailers they tested it would logically follow that one of the five selected trial plaintiff's would have mold in their trailer.

Further, on May 15, 2008, FEMA issued a statement entitled "Important Formaldehyde Information for FEMA Housing Occupants" (Attachment 1), which warned residents of temporary housing about some of the negative side effects from formaldehyde exposure. In this statement, they warn the residents some of the symptoms they may experience (watery eyes, runny nose), could be attributed to "indoor pollutants that may include formaldehyde or other indoor pollutants, such as dust, mold or smoke." Lyndon had a large volume of mold in his trailer, and it is highly likely it contributed to many of the symptoms he experienced.

Next, Shaw alleges that Lyndon's Motion to Supplement and Amend his Original Complaint is untimely because it was filed past the March 23, 2009 deadline given in the Trial Scheduling Order. However, the Trial Scheduling Order was not signed and distributed until April 8, 2009 making it impossible to meet the March 23, 2009 deadline. Shaw offers as one of their reasons that Lyndon should not be allowed to amend and supplement his complaint is that he did not meet this deadline. However, the deadline is non-applicable in that it was impossible to meet this deadline because Lyndon was not selected as the trial plaintiff until two weeks after this filing deadline had passed.

The crux of Shaw's Opposition to Lyndon Amending and Supplementing his Complaint is that the filing is untimely and "would dramatically expand the nature of the case against Shaw." Shaw would like to unjustly hold Lyndon to a deadline that was literally impossible to meet because counsel was not supplied with this deadline until two weeks after it had passed. Also, exploring the issue of mold would flesh out a problem that, according to the CDC's study is apparent in a significant number of trailers (21%). The inclusion of mold to this case more fully explains Lyndon's injuries and the combination of these factors contributed to his overall health problems and is necessary in making a differential diagnosis of the causes for Lyndon's respiratory ailments. Lyndon is not seeking to add a new cause of action, but is requesting that all evidence be admitted in order to provide a more complete and accurate case that illustrates all the relevant facts and injuries. If the Plaintiff is not allowed to speciate the mold, the defense for Forest River will claim that it was the mold and not the formaldehyde that caused Lyndon's breathing problems. How will the Plaintiff respond?

Finally, though Shaw offers several legal justifications for not allowing Lyndon to amend, they admit that "the decision of whether to grant leave to amend lies within the trial court's discretion". Lyndon urges this Court to allow him to amend his complaint because he wants to present a fully articulated and accurate description of his damages and to be able to address an issue that compounded and contributed to his injuries.

4

Respectfully submitted,

_____
FRANK J. D'AMICO, JR., T.A. (#17519)
AARON Z. AHLQUIST (#29063)
**FRANK J. D'AMICO, JR., APLC**
622 Baronne Street
New Orleans, LA 70113
Telephone:     (504) 525-7272
Fax:               (504) 525-9522

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Frank J. D'Amico Jr.
FRANK J. D'AMICO JR. #17519

5