UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-5"<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |
| This document relates to<br>Bell v. Keystone RV Company, et al,<br>No. 09-2967 | |

_____

**DEFENDANT KEYSTONE RV COMPANY'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant Keystone RV Company ("Keystone") submits this memorandum in support of its Rule 12(b)(6) motion to dismiss some of the claims asserted by the plaintiffs in the *Bell v. Keystone RV Company*, *et al.*, lawsuit.[1]

**SUMMARY OF ARGUMENT**

The plaintiffs have asserted claims against Keystone under the Louisiana Products Liability Act (LPLA) based on allegedly unhealthy levels of formaldehyde in their FEMA travel trailer. Other than redhibition claims, which plaintiffs have not asserted, the LPLA provides the exclusive remedy in Louisiana for claims against a manufacturer for damages caused by a product.

The Court should grant Keystone's motion to dismiss for the following reasons:

---

[1] The Court has set the claims of Diana Bell, one of the plaintiffs in this

- The LPLA does not recognize a claim for improper testing, marketing, licensing and distributing of products;

- The LPLA does not recognize a claim for failing to ensure that a product was "suitable" for its intended use and plaintiffs are not entitled to assert this claim under Louisiana's sales law because they did not purchase their Keystone travel trailer;

- Plaintiffs have not alleged any factual or legal support for their breach of express warranty claim;

- Plaintiffs have not alleged any factual or legal support for their "loss of use" claim against Keystone; and

- Under Louisiana law, Keystone cannot be held jointly liable with the other defendants for the damages sought by plaintiffs.

## LAW AND ARGUMENT

**1.  Rule 12(b)(6) Standard.**

For purposes of a Rule 12(b)(6) motion, the Court should accept plaintiffs' allegations as true.[2] But, to avoid dismissal, the plaintiffs "…must plead specific facts, not mere conclusory allegations" to support their claims.[3]

At a minimum, the plaintiffs' complaint must "allege every element essential

---

lawsuit, for trial on January 10, 2010.

[2] *Kraft v. Lee*, 2006 U.S. Dist. LEXIS 84827 at *6 (E.D. La. 11/22/06); 2006 WL 3395592 at *2 (citations omitted); *see also, Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986) (In reviewing motion to dismiss, court must accept all facts pleaded in the complaint as true).

[3] *Kraft*, at *6.

{B0594532.1}                                     2

to a right of recovery in order to be deemed sufficient under a Rule 12(b)(6) analysis."[4]  Stated another way, their factual allegations must "be enough to raise a right to relief above the speculative level, on the assumption that all the complaint's allegations are true."[5]  Moreover, the Court is not required to "conjure up unpled allegations to save a complaint."[6]

According to the Fifth Circuit, dismissal is proper when the lawsuit lacks allegations regarding elements of plaintiffs' claims, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[7]  And, while a complaint does not need "detailed factual allegations...more than labels and conclusions, are necessary, and a formulaic recitation of the elements of a cause of action will not do."[8]  Thus, the plaintiffs here "must plead enough facts to state a claim to relief that is plausible on its face."[9]

---

[4] *Taylor v. Crye-Leike, Inc.*, 2000 U.S. Dist. LEXIS 9876 at *5 (N.D. Miss. 6/29/00); 2000 WL 991652 at *2.

[5] *Rios v. The City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006)(citations omitted).

[6] *Systems Contractors Corp. v. Orleans Parish Sch. Bd.*, Nos. 94-2276, 95-3310, 1996 WL 547414, at *1 (E.D. La. Sept. 24, 1996).

[7] *Rios*, 444 F. 3d at 421.

[8] *Bell Atl. Corp. v. Twombly*, 550 US. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929(2007) (internal citations and quotations omitted); *see also Papasan v. Allain*, 478 US. 265, 286,106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

[9] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (quoting *Twombly*, 127 S.Ct. at 1974)).

2.  **The Court should dismiss plaintiffs' claims for improper testing, marketing, licensing, and distributing of travel trailers.**

Other than redhibition claims, which plaintiffs have not alleged here, the LPLA is the plaintiffs' only available theory for recovery against Keystone as the manufacturer of their travel trailer. The LPLA confirms this and provides that it "establishes the exclusive theories of liability for manufacturers for damage caused by their products."[10] More important for purposes of this motion, the LPLA also provides that a plaintiff "…may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]."[11] Courts in Louisiana, including this court, have routinely enforced the exclusivity provisions of the LPLA.[12]

In paragraph 102 (vi) of their complaint, plaintiffs allege that Keystone is liable for "…manufacturing, testing, marketing, distributing, licensing, and selling of unreasonably dangerous housing units." They also allege that Keystone is liable because it failed to "properly test the housing units to property (sic) evaluate the level of emissions of formaldehyde under foreseeable conditions for extended periods of time." [13] Through these allegations, plaintiffs seek damages from Keystone.

---

[10] La. R.S. 9:2800.52.

[11] *Id*.

[12] *Stroderd v. Yamaha Motor Corporation, U.S.A.*, 2005 WL 2037419, *1 (E.D. La. 8/4/05); *see also Jefferson v. Lead Industries Associates, Inc.*, 930 F. Supp. 241 (E.D. La. 1996), and *In re Ford Motor Company Vehicle Paint Litigation*, 1996 WL 426548, *15 (E.D. La. 1996).

[13] Complaint, ¶102(vi).

Plaintiffs cannot state a claim for improper testing, marketing, distributing or licensing of products because the LPLA does not recognize those claims against a manufacturer. None of these claims fall within the four "exclusive" theories for liability provided in La. R.S. 9:2800.54.[14]

Specific to their claims for improper testing, Louisiana federal courts have rejected this theory of liability under the LPLA. For example, in *Theriot v. Danek Medical, Inc.*, the Fifth Circuit recognized that the LPLA does not provide a claim for failure to test a product.[15] Similarly, courts in the Western District of Louisiana have ruled that claims for failure to test fall outside the scope of the LPLA and should be dismissed.[16]

Plaintiffs may attempt to shoe-horn their failure to test allegation into one of the LPLA's exclusive theories of liability. This attempt would miss the critical point under the LPLA. A manufacturer may <u>only</u> be held liable under one of those four theories. In *Theriot*, the Fifth Circuit rejected this approach, ruling that plaintiffs could not survive summary judgment by characterizing their failure to test

---

[14] The LPLA only allows recovery for damages caused by an unreasonably dangerous product. That term is defined in La. R.S. 9:2800.5 (B) and there are only four ways a product can be unreasonably dangerous: unreasonably dangerous in construction or composition, unreasonably dangerous in design, unreasonably dangerous for failure to provide an adequate warning, and unreasonably dangerous for failure to comply with an express warranty. The statute does not provide any other ways that a product may be a basis for liability under the LPLA.

[15] 168 F.3d 253, 254 (5th Cir. 1999)(Court affirmed summary judgment finding plaintiffs' claims were essentially for failure to test, which are not available under the LPLA).

[16] *Weaver v. CCA Indus*tries, 2009 WL 1322290, at *12 n. 9 (W.D.La. May 12, 2009); *see also Cantu v. CB. Holding Co.*, 2007 WL 689566, at *3 (W.D.La. March 1,

allegation as a failure to warn.[17]  In that case, the court saw the plaintiffs' allegations for what they really were—a claim that the manufacturer failed to test.

For these reasons, the Court should dismiss plaintiffs' claims against Keystone based on allegedly improper testing, marketing, licensing and distributing because none of these claims fall within the theories of liability allowed by the LPLA.

**3.      The Court should dismiss plaintiffs' claims for Keystone's alleged failure to ensure its travel trailers were "suitable for their intended use."**

In paragraph 102 (vii), plaintiffs attempt to assert another theory for liability against Keystone that is not recognized under the LPLA.  This paragraph states that Keystone is liable for "…failing to ensure that the housing units it manufactured and provided to the Named Plaintiff (*sic*) were suitable for their intended use…."  The LPLA does not recognize liability for failing to ensure the product is fit for its intended use.

In making this allegation, the plaintiffs may be confusing their product liability claims with the warranty for intended use provided in Louisiana Civil Code Article 2475, an article found in Book III of the Civil Code relating to sales and lease.  This article provides that a seller of a thing warrants that "...the thing sold is fit for its intended use."

In considering this implied warranty theory, the Fifth Circuit has noted that "[t]he essence of warranty is a consensual agreement - express or implied - arising

---

2007).

from contract."[18]  Without a sale and a contract, there is no consensual connection between the parties and no sales warranties arise.[19]  While the Louisiana Supreme Court has ruled that direct privity is not required to assert a claim under Article 2475, it has found that, at a minimum, a sale is required.[20]

Article 2475 cannot apply here because FEMA gave plaintiffs their travel trailer to use—for no consideration.  Plaintiffs' allegations confirm that they were "provided" their housing unit, and that they did not purchase it from FEMA or anyone else.[21]  Quite simply, without a sale, plaintiffs are not entitled to assert a claim for breach of an implied warranty of fitness of intended use under Article 2475.[22]

Even if they could legally assert an "intended use" claim, plaintiffs haven't alleged any facts to support that claim against Keystone.  Although the complaint refers to FEMA's alleged knowledge that travel trailers might be used as residences

---

[17] 168 F.3d at 254.

[18] *Fruge's Heirs v. Blood Serv.*, 506 F.2d 841, 846 (5th Cir. 1975).

[19] *Id.*

[20] *See Media Product Consultants, Inc. v. Mercedes Benz of America, Inc.*, 262 So.2d 377, 381 (La. 1972).

[21] Complaint, ¶12.

[22] In response to motions to dismiss filed in other cases, plaintiffs have also argued that they can assert implied warranty claims because they are third-party beneficiaries of contracts between the defendant manufacturers and FEMA and/or dealers.  *See* Rec. Doc. No. 2054, p. 4 (Plaintiffs' Memorandum in Opposition to Gulf Stream Coach Motion to Dismiss).  The Bell plaintiffs have not plead any facts to support the *stipulation pour autrui,* and consequently, the Court should not consider it for purposes of this motion to dismiss.

for up to 18 months (See Paragraph 21-22), plaintiffs do not allege that Keystone was aware of this information or how that information provides a basis for their claims. Without any factual support, plaintiffs' conclusory allegations cannot survive a motion to dismiss.[23]

4.  **The Court should dismiss plaintiffs' claims for breach of express warranty.**

In Paragraph 102 (iv) of their complaint, plaintiffs allege that Keystone provided travel trailers that "did not conform to the express warranties made by the Keystone (sic) regarding their fitness for use as reasonably anticipated." In Paragraph 102(ix), plaintiffs make a similar allegation that Keystone failed to "adhere to any and all express warranties of fitness and safety for the housing units they manufactured and provided."

The LPLA defines an express warranty as:

> [A] representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. Express warranty does not mean a general opinion about or general praise of a product. A sample or model of a product is an express warranty.[24]

Other than the two conclusory statements in Paragraph 102, plaintiffs have not identified any representations or statements of fact that fit the definition for an express warranty under the LPLA. Thus, without even basic allegations to meet

---

[23] *See Rios*, 444 F. 3d at 421.

[24] La. R.S. 9:2800.53 (6).

the definition of an express warranty, the plaintiffs have failed to state a claim against Keystone.

Plaintiffs' express warranty claim also fails because their complaint doesn't allege any of the required elements under La. R.S. 9:2800.58.[25] Under this section of the LPLA, to make a breach of express warranty claim, plaintiffs must allege that (a) they were induced to use their Keystone travel trailer by an express warranty; and (b) that their damages were proximately caused because the express warranty was not true.[26] They have not made the required allegations, and, consequently, the Court should dismiss plaintiffs' claim.

**5.    The Court should dismiss the plaintiffs' claims for "loss of use."**

In their litany of damages, plaintiffs seek recovery for "loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster…."[27] The complaint is not clear as to whether plaintiffs assert this claim against Keystone under the LPLA or some other basis of recovery. Regardless of the plaintiffs' theory, the Court should dismiss this claim because plaintiffs do not have an economic interest in their Keystone travel trailer sufficient to support this claim.

Plaintiffs are not entitled to assert a claim in redhibition and have not even

---

[25] This section of the LPLA provides a claim for a product that is unreasonably dangerous because of "nonconformity to express warranty."

[26] *Id.*

[27] Complaint, p. 31.

attempted to do so. This is because they did not purchase their Keystone travel trailer from FEMA or any other party. Instead, they were provided the trailer for their use, at no cost to them.

Presumably, plaintiffs' "loss of use" claim is based on the definition of "damage" provided in the LPLA, which permits a party to recover certain economic damages caused by the product, if recovery is not otherwise available in redhibition. Plaintiffs' have not alleged any facts to explain what economic losses they seek to recover or how Keystone is liable for those losses. Nor have they pled any facts to show how they fall within the definition of an "economic loss" as that concept is used in the LPLA.

The Court has already confronted the plaintiffs' lack of an economic interest in the plaintiffs' class certification motion. Plaintiffs sought certification of an economic interest subclass for all those individuals who "sustained economic loss recoverable under each state's law as a result of being provided housing not fit for its ordinary purpose."[28] In denying class certification, the Court noted that "while plaintiffs have suggested what an appropriate award of damages might be, they have failed to articulate what economic injury, if any, was actually suffered by the proposed class."[29] Like the master complaint at issue during class certification, plaintiffs' allegations in the *Bell* complaint lack any specific allegations about their economic injuries.

---

[28] Rec. Doc. No. 764-2, p. 4-5.

[29] Rec. Doc. No. 1014, p. 43-44.

Plaintiffs cannot allege any facts to support their "loss of use" claim because they lack a sufficient economic interest to support this claim. As discussed above, plaintiffs have not alleged they purchased or owned their FEMA travel trailer.[30] Even if they attempt to assert their claim under the LPLA and its definition of "damage," at a minimum, the plaintiffs should have to demonstrate some economic interest in the travel trailers at issue, which they cannot do. As the U.S. Fifth Circuit has recently recognized, plaintiffs do not have a property interest in receiving disaster assistance from the federal government.[31] Without a property interest in their federal disaster assistance, which the government provided in the form of travel trailers, plaintiffs lack a sufficient economic interest to support a claim for "loss of use" and the Court should dismiss this claim.

**6.   The Court should dismiss plaintiffs' claims for "joint" liability between the defendants.**

Plaintiffs also allege that Keystone and the other defendants are "individually and/or jointly" responsible for all their damages.[32] By using this terminology, the plaintiffs may be attempting to hold Keystone liable for damages it caused, along with those caused by other parties. If this is the intent of the plaintiffs, they have not alleged any facts to hold Keystone liable for the acts of the

---

[30] Plaintiffs have not asserted redhibition claims and cannot do so based on the lack of a purchase and sale.

[31] *See Ridgely v. FEMA*, 512 F.3d 727, 736 (5th Cir. 2008) (Plaintiffs lack property interest in rental assistance from FEMA sufficient to trigger due process protection).

[32] Bell Complaint, p. 31.

other defendants under Louisiana law.

The Fifth Circuit, Louisiana state courts, and commentators have noted that Louisiana's comparative fault rules apply to LPLA claims.[33] Under Louisiana Civil Code Article 2324, other than solidarity between tortfeasors who conspire together, all liability under Louisiana law is joint and several. This means that when the acts of multiple defendants combine to damage the plaintiff, each defendant is only responsible for the damages he or she causes. The article specifically provides that individual defendants "shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person…."[34]

Here, because plaintiffs have not alleged a conspiracy, any liability as between the defendants can only be joint and several. Consequently, Keystone can only be held liable for its actions and not those of other defendants. The Court should, therefore dismiss plaintiffs' claims for "joint liability" to the extent that plaintiffs attempt to hold Keystone liable for fault and/or damages caused by other parties.[35]

---

[33] *Kampen*, 157 F3d 306, 316 (5th Cir. 1998)("This view does not, however, write comparative fault out of Louisiana products liability law. A plaintiff's negligent conduct which does not remove his use of the product from the realm of reasonably anticipated uses may nevertheless contribute to cause his injuries."); See also Thomas C. Galligan, The Louisiana Products Liability Act: Making Sense of It All, 49 LA. L. REV . 629, 685 (1989) (stating "the obvious": "that the [LPLA] makes no change in Louisiana's comparative fault law").

[34] La. Civ. Code Article 2324(B).

[35] If plaintiffs' claims are not intended to hold Keystone responsible for the actions of other parties, then, at a minimum, the Court's ruling should clarify this

## CONCLUSION

For the reasons explained in its motion and this memorandum, defendant Keystone RV Company requests that the Court grant its motion and dismiss those claims and allegations set out above.

Respectfully submitted,

*s/Ryan E. Johnson*

_____
James C. Percy (La. Bar No. 10413)
Ryan E. Johnson (La. Bar No. 26352)
**JONES, WALKER, WAECHTER, POITEVENT, CARRERE & DENEGRE, LLP**
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, LA  70809
(225) 248-2130

-and-

Madeleine Fischer (La. Bar No. 5575)
Nan Roberts Eitel (La. Bar No. 19910)
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th floor
New Orleans, LA   70170
Telephone:  (504) 582-8000
Facsimile:  (504) 589-8208

*Counsel for Keystone RV Company*

point.

## CERTIFICATE OF SERVICE

  I hereby certify that on this 20th day of July, 2009, a true and correct copy of the foregoing pleading was filed electronically using the CM/ECF system. Notice of this filing will be sent to all known counsel by operation of the court's electronic filing system. I also certify that I have mailed a copy of this filing to any non-CM/ECF participants by U.S. Mail, postage prepaid and properly addressed.

       *s/Ryan E. Johnson*
      _____
       Ryan E. Johnson