UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-5"<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

This document relates to
Bell V. Keystone RV Company, Et Al,
No. 09-2967
_____

**DEFENDANT KEYSTONE RV COMPANY'S**
**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE**

Defendant Keystone RV Company ("Keystone") submits this memorandum in support of its motion to strike certain allegations from the plaintiffs' complaint.

**SUMMARY OF ARGUMENT**

The plaintiff's complaint—a cookie cutter version of other complaints filed in this MDL litigation—contains a number of immaterial, impertinent, irrelevant and prejudicial allegations that should be stricken. They include:

- Confusing, irrelevant and legally unsupported allegations that HUD mobile regulations apply to Keystone and the plaintiffs' travel trailer;

- Confusing and inconsistent allegations that the plaintiffs lived in mobile homes, park model trailers and travel trailers;

- Confusing allegations about Fluor Enterprises, Inc., a FEMA contractor who plaintiffs did not name as a defendant in their

> complaint; and

- Inconsistent allegations that refer to a singular plaintiff in certain instances and multiple plaintiffs in other instances, leaving Keystone unable to determine which plaintiffs are making allegations.

Pursuant to Rule 12(f), the Court should strike these allegations to minimize the chance of jury confusion and to streamline the discovery and trial process.

## LAW AND ARGUMENT

### A.  The Standard under Federal Rule of Civil Procedure 12(f)

Rule 12(f) authorizes the Court to strike any "redundant, immaterial, impertinent, or scandalous matter" from any pleadings filed by the parties. The rule is designed to "reinforce the requirement in Rule 8(e) that pleadings be simple, concise and direct."[1]  The motion can be used to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters...."[2]  Granting a motion to strike is within the sound discretion of the trial court.[3]

For purposes of Rule 12(f), "immaterial" allegations are ones that have "no essential or important relationship to the claim for relief or the defenses being

---

[1] Wright and Miller, *Federal Practice and Procedure*, 3d Ed., §1380, p. 391.

[2] *NN&R v. One Beacon Ins. Group*, 362 F Supp 2d 514, 525 (D. N.J. 2005), citing *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F. Supp.2d 393, 402 (E.D.Pa.2002).

[3] *F.D.I.C. v. Niblo*, 821 F. Supp 441, 449 (N.D. Tex 1993), *citing Augustus v. Board of Public Instruction of Escambia County, Florida*, 306 F.2d 862, 868 (5th Cir. 1962).

{B0593385.1}                                2

pleaded."[4] Similarly, "impertinent" allegations are those that do not "pertain, and are not necessary, to the issues in question."[5] Some federal courts have described the test for an impertinent and immaterial allegation as "whether proof concerning [the allegation] could be received at trial."[6] If the party could not offer evidence to support the allegation, then the Court may strike it under Rule 12(f).

Some federal courts use Rule 12(f) to strike "irrelevant" allegations that are not germane to the issues in the litigation.[7] This concept is similar to striking impertinent and immaterial allegations, although relevancy is not mentioned in Rule 12(f).

## B. The Court should strike certain allegations from the plaintiffs' complaint.

### 1. Paragraph 12, 13 and 15

In Paragraph 12, plaintiffs allege that "the Named Plaintiffs residing or living in travel trailers, park models and mobile homes (hereinafter referred to as "housing units") in the State of Louisiana was (sic) provided these housing units by FEMA after the landfalls of Katrina and/or Rita in September 2005." As worded,

---

[4] Wright and Miller, at §1382, p. 458; *see also Pena v. Guzman*, 2004 WL 253331 (D.C. N.Y. 2004)(allegations of criminal conduct unrelated and therefore "immaterial" to civil allegations).

[5] Wright and Miller, at §1382, p. 463.

[6] *Commonwealth Edison Co. v. Allis-Chalmers Manufacturing Co.*, 245 F. Supp 889 (D.C. Ill. 1965), reversed in part on other grounds, 323 F. 2d 412 (7th Cir. 1963), *cert denied*, 84 S. Ct 794, 376 U.S. 939.

[7] *Estate of Ungar v. Palestinian Authority*, *1, 2003 WL 21076981 (D.C.R.I. 2003), affirmed by district court, 2003 WL 22012475.

this paragraph does not identify what type of housing units the plaintiffs allegedly lived in, and appears to be a "one size fits all" statement that should not be in the complaint.

Plaintiffs also use the confusing reference to "housing units" in Paragraphs 13, 14, and 15 of their Complaint. Taken together, these allegations create uncertainty about which unit the plaintiffs actually lived in. The allegations could also lead the jury to believe that the plaintiffs lived in all three types of housing units, when in fact, they did not.[8]

Paragraph 13 and 15 should also be stricken because they make allegations about mobile homes and park model trailers--housing units that are not at issue here. The allegations in Paragraph 13 about mobile homes are particularly problematic because mobile homes, unlike travel trailers, are subject to certain HUD regulations. This paragraph alleges the following:

> 13.  Of the housing units at issue, "mobile homes" are generally wider than 8 feet and/or longer than 40 feet, for an average area greater than 320 square feet. They are designed to be used as permanent homes and are defined and regulated by the U.S. Department of Urban Development ("HUD"). *See* Center for Disease Control and Prevention, INTERIM FINDINGS ON FORMALDEHYDE LEVELS IN FEMA-SUPPLIED TRAVEL TRAILERS, PARK MODELS AND MOBILE HOMES, Feb. 29, 2008, at p. 4, available at http://www.cdc.gov/Features/FEMAtrailersFindings/pdf/in terim_findings.pdf

As discussed more fully below, the legal requirements for mobile homes do not apply

---

[8] Plaintiffs' fact sheets indicate that they lived in a Keystone travel trailer and did not live in a mobile home or park model trailer.

{B0593385.1}                                    4

here, and any allegations concerning them are irrelevant and prejudicial to Keystone. Based on this allegation, the jury could be confused and believe that the HUD regulations apply to the plaintiffs' Keystone travel trailer.

For these reasons, the Court should strike the allegations in Paragraphs 12, 13 and 15, to clarify the type of housing unit lived in by plaintiffs.[9]

### 2. Paragraphs 24 and 27

One of the copy-cal allegations contained in most of the MDL complaints is that *all* defendants were required to display HUD warning labels in their units.[10] Diana and Raymond Bell, III make this allegation about Keystone in Paragraph 24 of their complaint:

> 24. Formaldehyde is found in construction materials such as particle board, fiberboard and plywood, as well as glues and adhesives used in the manufacture of housing units. Pursuant to federal law, the defendants are required to display a "Health Notice" about exposure to formaldehyde which reads:
>
> **IMPORTANT HEALTH NOTICE**
>
> Some of the building materials used in thus home emit formaldehyde. Eye, nose and throat irritation, headache, nausea, and a variety of asthma-like symptoms, including shortness of breath, have been reported as a result of formaldehyde exposure. Elderly persons and young children, as well as anyone with a history of asthma, allergies, or lung problems, may be at greater risk.

---

[9] Alternatively, if the Court chooses not to strike Paragraph 12, it should order the plaintiffs to replead this paragraph to make clear which type of housing unit they lived in after Katrina.

[10] Most, if not all, of the plaintiffs' complaints filed after the Court's December 2008 class certification ruling appear to be virtually identical, except that plaintiffs changed the names of the parties listed.

{B0593385.1} 5

> Research is continuing on the possible long-term effects of exposure to formaldehyde.
>
> Reduced ventilation resulting from energy efficiency standards may allow formaldehyde and other containments to accumulate in the indoor air.  Additional ventilation to dilute the indoor air may be obtained from a passive or mechanical ventilation system offered by the manufacturer.  Consult your dealer for information about the ventilation options offered with this home.
>
> High indoor temperatures and humidity raise formaldehyde levels.  When a home is to be located in areas subject to extreme summer temperatures, an air conditioning system can be used to control indoor temperature levels.  Check the comfort cooling certificate to determine if this home has been equipped or designed for the installation of an air-conditioning system.
>
> If you have any questions regarding the health effects of formaldehyde, consult your doctor or local health department.
> *See* 24 C.F.R. §3280.309.

Then, in Paragraph 27, the plaintiffs refer to HUD's formaldehyde emission limits, suggesting those limits apply to their Keystone travel trailer:

> 27.     HUD regulates formaldehyde levels in certain construction materials to include the pressed wood products used in manufactured housing (such as prefabricated mobile homes).  HUD has far stricter exposure limits for residential formaldehyde emissions.  By regulation "All plywood and particle board materials bonded with a resin system or coated with a surface finish containing formaldehyde shall not exceed the following formaldehyde emission levels when installed in manufactured homes:  (1) Plywood materials shall not emit formaldehyde in excess of .2 parts per million (ppm)….[and] (2) Particle board materials shall not emit formaldehyde in excess of 0.3 ppm…"  *See* 24 C.F.R. §3280.308.

{B0593385.1}                                6

The Court should strike the plaintiffs' allegations in Paragraphs 24 and 27 because:

- The HUD mobile home regulations specifically exempt travel trailers, and, consequently, the allegations in these paragraphs are not germane to the plaintiffs' claims against Keystone.[11]

- The Court has specifically ruled that "travel trailers and park model trailers are exempt from HUD construction standards, including those relating to acceptable formaldehyde levels," confirming that the allegations have no bearing on the claims against Keystone.[12]

- Plaintiffs have not alleged that Keystone was a mobile manufacturer (which arguably could bring the HUD regulations into play) and plaintiffs have not asserted any claims against Keystone for violating HUD regulations.

- The plaintiffs are not entitled to put on evidence at trial to support their allegation in Paragraph 24 that Keystone was required to display a "Health Notice" because the notice wasn't legally required for their Keystone travel trailer.

- The allegations in Paragraph 27 about formaldehyde emission levels are both irrelevant and prejudicial to Keystone. As worded, this paragraph does not make clear that the HUD emission levels (i.e., .2 and .3 ppm) are product standards, not ambient air standards and that these standards do not apply to travel trailers.[13] If left in the complaint, the jury will be confused and may conclude that: (a) the levels apply to the Keystone unit; (b) that plaintiffs' evidence of ambient air formaldehyde levels should be compared to the HUD product

---

[11] See also 24 C.F.R. §3282.8(g), which specifically exempts recreational vehicles from the HUD regulations, including §3280.

[12] Rec. Doc. No. 717, p. 5 (October 3, 2008 Ruling on Government's Motion to Dismiss).

[13] See 24 C.F.R. 3208(a)(1) & (2). The HUD regulations provide another level (.4 ppm) as a target ambient air level, although plaintiffs do not allege or refer to this higher level in their complaint.

emissions levels. Those conclusions would be improper and extremely prejudicial to Keystone.

**3. References to "Fluor" in the complaint.**

The Plaintiffs named Shaw Environmental, Inc. as the contractor-defendant in their lawsuit.[14] Yet, in Paragraphs 10, 32, 33, 34, 35, 36, 37, 38, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 108, 109, 111, 112, 113, 114, 115, 116 and the Prayer, plaintiffs refer to "Fluor" as the contractor defendant. This is apparently a reference to Fluor Enterprises, Inc., a contractor defendant named in other lawsuits in the MDL.

The plaintiffs' references to Fluor may simply be a typographical error. As worded, however, the complaint is confusing and Keystone cannot determine which defendants the plaintiffs are making claims against. If plaintiffs are attempting to assert claims against Shaw Environmental, then the Court should strike the plaintiffs' references to Fluor as irrelevant to the plaintiffs' claims.[15]

**4.     References to the "Named Plaintiff" and "Named Plaintiffs."**

The complaint lists Diana Bell and Raymond Bell III as plaintiffs. In several instances (*e.g.*, Paragraphs 1, 12, 45, 55, 61, 76, 78-83) the complaint refers to the "Named Plaintiffs" or makes a plural reference to the plaintiffs. In other instances (*e.g.*, Paragraphs 16, 19, 20, 21, 22, 23, 40, 42, 44, 49, 98, 99, 100, 101, 102, 107, 112,

---

[14] *See* Complaint, ¶4.

[15] If, on the other hand, plaintiffs are actually attempting to assert claims against Fluor, the Court should require plaintiffs to clearly allege those claims and properly name Fluor as a defendant. Under Federal Rule 12(e), the Court could order the plaintiffs to restate their claims more clearly.

114, 115), the complaint refers to the "Named Plaintiff" or makes a singular reference to one of the plaintiffs. This inconsistency leaves Keystone unable to determine which of the two plaintiffs are making the allegations contained in the listed paragraphs. Therefore, the Court should strike the confusing references to the "Named Plaintiff" and/or order the plaintiffs to replead their claims to eliminate the confusion.

## CONCLUSION

For the reasons set forth in this memorandum, Keystone requests that the Court strike the following from the plaintiffs' complaint:

- Paragraphs 12,13 and 15;
- Paragraphs 24 and 27;
- All references to "Fluor"; and
- All references to the "Named Plaintiff" and "Named Plaintiffs," to be replaced with a proper reference to both plaintiffs.

Respectfully submitted,

*s/Ryan E. Johnson*
_____
James C. Percy (La. Bar No. 10413)
Ryan E. Johnson (La. Bar No. 26352)
**JONES, WALKER, WAECHTER, POITEVENT, CARRERE & DENEGRE, LLP**
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, LA  70809
(225) 248-2130

          -and-

          Madeleine Fischer (La. Bar No. 5575)
          Nan Roberts Eitel (La. Bar No. 19910)
          Jones, Walker, Waechter, Poitevent,
          Carrère & Denègre, L.L.P.
          201 St. Charles Avenue, 49th floor
          New Orleans, LA   70170
          Telephone:  (504) 582-8000
          Facsimile:  (504) 589-8208

          ***Counsel for Keystone RV Company***

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 20th day of July, 2009, a true and correct copy of the foregoing pleading was filed electronically using the CM/ECF system.  Notice of this filing will be sent to all known counsel by operation of the court's electronic filing system.  I also certify that I have mailed a copy of this filing to any non-CM/ECF participants by U.S. Mail, postage prepaid and properly addressed.

                *s/Ryan E. Johnson*
           _____
                Ryan E. Johnson