UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER * | | MDL NO. 1873 |
|     FORMALDEHYDE * | | |
|     PRODUCTS LIABILITY * | | |
|     LITIGATION * | | SECTION: N(5) |
| * | | |
| This Document Relates to: * | | |
| *Charlie Age, et al. v.* * | | JUDGE: ENGELHARDT |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 * | | |
| * | | MAG: CHASEZ |

*************************************************************************

### GULF STREAM COACH, INC.'S OPPOSITION TO MOTION FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS

**MAY IT PLEASE THE COURT:**

Plaintiff has requested leave to depose Scott Bailey, a former sales representative for ADORN, a wood supplier to Gulf Stream Coach. Gulf Stream objects to taking yet another unnecessary deposition in the *Age/Alexander* matter. The issue of Mr. Bailey's deposition is simple, for this matter, it is irrelevant. Plaintiffs claim that late produced recording necessitates this late requested deposition. The recording in question is a discussion regarding ADORN's supply of wood products to Gulf Stream in 2005-2006. The Alexander unit was completed in December 2004. While this court may someday allow the requested deposition, it has nothing to do with units built in 2004 such as Ms. Alexander's.

First, it is necessary to put this recording and the timing of its production into the context of the timeline of this case. The recording was made in 2007. The content is insignificant as Mr. Buzbee commented during Jeff Zumbrum's deposition. The recording was an afterthought to Gulf Stream's discovery responses some two years later in 2009. Essentially, the PSC accused

Gulf Stream of having a series of statements that it improperly refused to turn over.[1] Apparently, Mr. Buzbee had an investigator who spoke with Mr. William Dudek, a former Gulf Stream employee. Based on this conversation, Mr. Buzbee believed that Gulf Stream or their lawyers had a statement from Mr. Dudek and many more current and former employees on the formaldehyde issue. Last week at his deposition, Mr. Dudek testified that he was unaware of any such statements. Interestingly, he also testified that someone representing plaintiffs offered him compensation for his testimony (he specifically exonerated Mr. Buzbee from that offer).

As a result of Mr. Buzbee's request for statements, Gulf Stream and their counsel spent a great deal of man hours looking for the phantom Dudek statements. At that point, the Zumbrum-Bailey recording was recalled. Gulf Stream had the tape shipped to counsel, who then had it copied onto disc.[2] On June 26, counsel for Gulf Stream responded to Mr. Buzbee and Mr. Taffee's repeated requests for the phantom statements and made reference to a document that might be responsive once the privilege issue was researched.[3] The item in question was the Zumbrum-Bailey recording.

Thereafter, having to deal with the depositions of 20 plaintiff experts and coordinate and defend depositions of the 10 Gulf Stream experts, comply with the plaintiffs' additional discovery requests, their motion to compel, the Amended petition and the corresponding 12(B) motions, and the plaintiff's motion for additional depositions, undersigned counsel recognized that the recording needed to be turned over prior to the Zumbrum deposition. Counsel completed the research, listened to the tape and sent a copy to the PSC before the Zumbrum deposition.

---

[1]     Emails dated June 23, 2009, June 26, 2009 and June 29, 2009, attached hereto as Exhibit "1, in globo."

[2]     See Choice invoice dated June 24, 2009, attached hereto as Exhibit "2."

[3]     See June 26, 2009 email from Andy Weinstock to Peter Taaffe, attached hereto as Exhibit "3."

The fact that Jeff Zumbrum discussed with an ADORN representative, the type of wood ADORN delivered to Gulf Stream in 2005/2006, was already known to plaintiffs. Indeed the conversation was the subject of plaintiff's deposition of Gulf Stream.[4] The plaintiffs did not know the conversation was recorded, but they did know that it took place. Further, during the depositions of Gulf Stream, plaintiff's counsel indicated that he was well versed with ADORN, that he had spoken with them, and knew what their testimony would be.[5] Clearly, Mr. Buzbee had spoken with ADORN, and asked Mr. Shea if he agreed with what they told him. If that were not the case, then Mr. Buzbee would be making up a conversation with ADORN and asking the witness about that fictitious conversation. Gulf Stream does not believe Mr. Buzbee would take such action, but rather, that he actually spoke with ADORN.

Thus, the plaintiffs knew of the importance of ADORN's position to the cases involving 2005/2006 trailers, and they inquired at length about ADORN's practices, their procedures and the conversation between someone at ADORN (Scott Bailey).[6] All they did not know is that the conversation had been recorded. That simple fact is irrelevant and does not create a need for an additional deposition regarding information only relevant to trailers manufactured in 2005/2006.

Instead, it appears that the plaintiff's real goal is a mistaken belief that additional depositions ordered by the Magistrate will somehow force settlement in this matter.[7] Whether this is correct or not, harassment thought excessive depositions to force settlement is not an appropriate use of Federal Rule 26 depositions. Perhaps this is why parties are typically limited

---

[4] See deposition of Dan Shea, at p. 53, attached hereto as Exhibit "4."

[5] See Exhibit "4," at p. 172.

[6] See Exhibit "4" and excerpts from the deposition of Jim Shea, attached hereto as Exhibit "5." All questions regarding ADORN are from the depositions of Jim Shea and Daniel Shea, taken on May 28 and June 2, 2009.

[7] See email from Buzbee to Weinstock, dated July 12, 2009, attached hereto as Exhibit "6."

to 10 for an entire case. The 40+ noticed by the Alexander plaintiffs should be sufficient. Indeed as this court will recall, on Thursday July 9th, the plaintiffs requested leave to modify their request for additional depositions and added in several former employees. Gulf Stream did not have time to research the employment dates of those former employees before the July 10 telephone conference. When the magistrate instructed that Plaintiffs pick two to depose, they selected Linda Ezparza and Jerry Sloan. The plaintiffs had already interviewed both Sloan and Esparza and knew full well that neither worked at Gulf Stream in 2004. Both started work in the fall of 2005 and thus, have no relevant testimony to offer for the Alexander case. These two depositions were a colossal waste of time needed to deal with discovery of the real issues in the bellwether trial before the court. For the foregoing reasons, Gulf Stream requests the Court deny Plaintiffs' request to depose Mr. Bailey at this time.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS, PFISTER & WEINSTOCK**

s/Andrew D. Weinstock

_____
**ANDREW D. WEINSTOCK (#18495)**
**JOSEPH G. GLASS (#25397)**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
andreww@duplass.com
jglass@duplass.com

and

Timothy D. Scandurro #18424
Dewey M. Scandurro #23291
**SCANDURRO & LAYRISSON**
607 St. Charles Avenue
New Orleans, LA 70130
Telephone: (504) 522-7100
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2009, a copy of the foregoing Opposition to Motion for Leave to Take Additional Depositions on Behalf of Gulf Stream Coach, Inc. was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to all known counsel of record by operation of the court's electronic filing system.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com