UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                                MDL NO. 07-1873
      FORMALDEHYDE PRODUCTS
      LIABILITY LITIGATION
                                                                                SECTION "N" (5)

THIS DOCUMENT RELATES TO
Member Case No. 09-2892

## ORDER AND REASONS

Before the Court is the Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 1811), filed by Defendant Gulf Stream Coach, Inc. ("Gulf Stream"). After considering the memoranda of the parties and the applicable law, the Court rules as set forth herein.

**I.     BACKGROUND**

In this multi-district litigation ("the MDL"), referred to as "In Re: FEMA Trailer Formldehyde Products Liability Litigation," Plaintiffs are individuals who resided in emergency housing units ("EHUs") provided by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita. In general, Plaintiffs claim injuries resulting from alleged exposure to the release of formaldehyde and/or formaldehyde vapors in these EHUs. (Rec. Doc. 109,¶ 30). The parties have now completed the class certification phase, conducted substantial discovery, and have moved into the bellwether trial phase. This particular motion to dismiss relates to the first bellwether trial.

Bellwether plaintiffs, Alana Alexander and her minor child Christopher Cooper (collectively, "the bellwether plaintiffs"), first filed suit on February 27, 2009. (*Age, et al. v. Gulf Stream Coach, Inc., et al.*, Member Case No. 09-2892, Rec. Doc. 1). In that Complaint, the bellwether plaintiffs (along with several other plaintiffs) alleged in part that the cause of the "defects" in the EHUs

manufactured by Gulf Stream was Gulf Stream's failure to test the units properly in order to evaluate the level of formaldehyde emissions under foreseeable conditions for extended periods of time, and its failure to ensure that the EHUs it manufactured and provided to each named plaintiff were suitable for their intended use. (Member Case No. 09-2892, Rec. Doc. 1, ¶ 102(vi), (viii)). Furthermore, the bellwether plaintiffs alleged that Gulf Stream, FEMA, and Fluor Enterprises, Inc. are liable for their alleged loss of use and/or opportunity to use safe and adequate shelter during the period of displacement during the natural disaster. (Member Case No. 09-2892, Rec. Doc. 1, ¶ 117). Gulf Stream asserts, in the instant motion to dismiss, that these are not viable causes of action against a manufacturer. Thus, Gulf Stream argues that these allegations fail to state a claim upon which relief may be granted.

## II.  LAW AND ANALYSIS

### A.  Standard of Review

In considering a motion to dismiss under Rule 12(b)(6), a court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). To avoid dismissal, however, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965 (quotation marks, citations, and footnote omitted).

### B.  Analysis

In the instant motion to dismiss, Gulf Stream makes three separate arguments: (1) that

Plaintiffs' "failure to test" claim is not a recognizable claim under the Louisiana Products Liability Act ("LPLA") and should, thus, be dismissed; (2) that Plaintiffs have no right to recover under the warranty of fitness for intended use; and (3) that Plaintiffs are not entitled to damages for loss of use.

### (1) Claim for Failing to Test Properly Under the LPLA

The LPLA expressly states that the Act establishes the exclusive theories of liability for manufacturers for damage caused by their products. La. R.S. 9:2800.52. Thus, in order to recover under the LPLA, a plaintiff is limited to the distinct theories of recovery enumerated in the Act.[1] Gulf Stream notes that Plaintiffs allege that Gulf Stream caused defects in the EHUs it manufactured through its failure "to properly test the [EHU]s property [SIC] evaluate the level of emissions of formaldehyde under foreseeable conditions for extended periods of time." (Member Case No. 09-2892, Rec. Doc. 1, ¶ 102(vi)). Gulf Stream maintains that such a claim against a manufacturer falls outside of the LPLA's exclusive theories of liability. Thus, Gulf Stream argues that Plaintiffs' claims against it for its failure to adequately test the EHUs fails to state a claim upon which relief can be granted.

Plaintiffs, on the other hand, explain that the introductory language in paragraph 102 alleges that the defects in the EHUs are said to be "the result of and/or include....", among other things, the failure to properly test the EHU. (Member Case No. 09-2892. Rec. Doc. 1, ¶ 102). In other words, the bellwether plaintiffs allege that the EHU is defective, or unreasonably dangerous in normal or foreseeable use, because, among other things, it was not properly tested while in Gulf Stream's

---

[1] Under the LPLA, in order to maintain an action against a manufacturer for damages resulting from an unreasonably dangerous product, a plaintiff must show that either (1) the product is unreasonably dangerous in construction or composition; (2) the product is unreasonably dangerous in design; (3) the product is unreasonably dangerous due to inadequate warnings; (4) the product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer. La. R.S. 9:2800.54.

3

control.

Plaintiffs concede that for a product to be defective under the LPLA, it must be proven to be unreasonably dangerous in construction or composition, design, based on the lack of a proper warning, or based on non-conformity with an express warranty. Plaintiffs further agree that this product liability action against Gulf Stream must be based on proof of defectiveness under one or more of these statutory theories of product defect. (Rec. Doc. 2054, p.2), and that absent an allegation under one of those theories of defect, a claim based merely on the negligent failure to test an EHU for formaldehyde levels would not constitute a valid claim under the LPLA. Here, Plaintiffs state that they do not solely allege the "failure to test" claim under the LPLA; instead, they allege that as a consequence of Gulf Stream's failure to test, the EHU was rendered defective in composition and design, and left Gulf Stream's custody with an unsafe level of formaldehyde.

The Court agrees with Plaintiffs. In *MacDonald v. Monsanto Company*, 1995 WL 581942 (5th Cir. 1995), the Fifth Circuit addressed this very issue. Among other claims, the *MacDonald* plaintiffs alleged that the defendant had failed to test the product properly. The defendant argued that the plaintiffs' products liability claim regarding the failure to test was not cognizable under the LPLA. The Fifth Circuit aptly noted, "[t]he LPLA does not recognize a cause of action for failure to test . . ., except insofar as the failure to test . . . renders the product unreasonably dangerous." *Id*. at *1. The Fifth Circuit further explained that the above was true even under pre-LPLA law:

> *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110, 115 (La.1986),
> the leading pre-LPLA products liability case, limited its consideration of
> the duty to test to theories based upon design defect and a manufacturer's
> duty to warn. Thus, even under pre-Act law, the failure to properly test

4

> must result in either a defect or a failure to warn, and a plaintiff must
> proceed under one of these theories. Accordingly, the failure to test per se
> does not give rise to a cause of action except insofar as it renders the
> product unreasonably dangerous.

*Id*. at *2, n. 3.

Here, as Plaintiffs note in the opposition, paragraph 102 of the Complaint alleges that the defects in the EHUs are said to be "the result of and/or include....", among other things, the failure to properly test the EHU. (Member Case No. 09-2892. Rec. Doc. 1, ¶ 102). It is clear that the bellwether plaintiffs are not relying on the "failure to test" claim as the sole claim under the LPLA. Rather, they allege that as a consequence of Gulf Stream's failure to test, the EHU was rendered defective in composition and design, leaving Gulf Stream with an unsafe level of formaldehyde. This allegation is sufficient to save Plaintiffs' "failure to test" claim from dismissal at this time.

### (2) Plaintiffs' Warranty of Fitness for Intended Use Claim

Louisiana law[2] provides:

> The seller is bound to deliver the thing sold and to warrant to the buyer
> ownership and peaceful possession of, and the absence of hidden defects
> in, that thing. The seller also warrants that the thing sold is fit for its
> intended use.

La. C. C. art. 2475. While it is clear that Plaintiffs were not the "buyers" of the instant EHU, both Gulf Stream and Plaintiffs agree that no privity is needed to assert the warranty of fitness for intended use. However, as previously mentioned herein, a plaintiff who brings a lawsuit against a manufacturer is limited by the exclusive theories of liability set forth in the LPLA. See La. R.S. § 9:2800.52. The only theory of warranty included in the LPLA is the breach of an

---

[2] Both Gulf Stream and Plaintiffs agree that Louisiana law dictates in this instance.

5

*express* warranty. La. R.S. § 9:2800.58. Both Gulf Stream and Plaintiffs agree that the LPLA expressly reserves a claim for damages caused by a manufacturer's products under the Louisiana redhibition law. La. R.S. § 9:2800.53(5). While Gulf Stream argues that an action in redhibition can only be between a buyer and a seller, *Ahrens v. TPLC, Inc.*, 955 F. Supp. 54, 56 (E.D.La. 1997), Plaintiffs assert that Louisiana case law recognizes that redhibition claims are available to third-party beneficiaries of the contract for the purchase of a thing. See *Stelly v. Gerber Products Company*, 299 So.2d 529, 532 (La. App. 4 Cir. 1974). Specifically, Plaintiff Alexander asserts that she was a third party beneficiary of the purchase agreement whereby the Gulf Stream EHU she and her son occupied was acquired by FEMA from the manufacturer, and ultimately made available to them.

Indeed, the Louisiana Civil Code recognizes third party beneficiary contracts[3], providing: "A contracting party may stipulate a benefit for a third person called a third person beneficiary." La. C. C. art.1978. "Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement." *Id*. In order to prevail on a claim to be a third party beneficiary, the party making the claim, in this case the plaintiffs, bears the burden of proving the stipulation pour autrui. La. C. C. art. 1831.

There are three criteria for determining whether contracting parties have provided such a benefit for a third party: (1) the stipulation for the third party is manifestly clear; (2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promisee. *Joseph*, 939 So.2d at 1212. Along these

---

[3] These third party benefit contracts are commonly referred to in Louisiana as a "stipulation pour autrui." *Joseph v. Hosp. Serv. Dist. No.2 of Parish of St. Mary*, 939 So.2d 1206, 1211 (La.2006).

lines, Plaintiffs note that to qualify as third party beneficiaries to the housing sale contract between Gulf Stream and FEMA, they would have to demonstrate: (1) that the contract between Gulf Stream and FEMA for the sale of the EHU was clearly intended to benefit Plaintiffs; (2) that there was certainty as to the benefit provided to Plaintiffs; and (3) that the benefit to Plaintiffs was not merely incidental to the contract between Gulf Stream and FEMA. While Gulf Stream argues that the intended benefit for Plaintiffs must be stipulated expressly in writing, Plaintiffs assert that it is unnecessary for the intended benefit to be stipulated anywhere in writing. While there is no general requirement that third party beneficiary status or a stipulation pour autrui be in writing, if a particular contract that includes a stipulation pour autrui must be in writing, then the included stipulation pour autrui must also be in writing. *Joseph*, 939 So.2d 1206, n. 13 (citing La. C.C. arts. 1536, 1832, and 2440).

In this instance, nowhere in the original Complaint for Damages (Member Case No. 09-2892. Rec. Doc. 1) or in any of the amended complaints (See Rec. Docs. 1143, 1313, and 1686) do Plaintiffs allege the third party beneficiary theory or, specifically, that the contract between Gulf Stream and FEMA for the sale of the EHU was clearly intended to benefit Plaintiffs. Further, if this lately-raised claim was allowed to proceed, it seems clear to the Court, even at this juncture, that Gulf Stream and FEMA did not engage in a contract or agreement that expressly made Plaintiffs the third party beneficiaries of that contract. At most, the benefit to Plaintiffs was incidental to the contract between Gulf Stream and FEMA. Thus, the Court concludes that Plaintiffs are not entitled to third party beneficiary status. As neither third party beneficiaries nor buyers of the EHU, Plaintiffs may not pursue a claim in redhibition against Gulf Stream. Gulf Stream's motion to dismiss is granted in this regard. Thus, the LPLA is

Plaintiffs' only vehicle of recovery against Gulf Stream.

### (3) Plaintiffs' Claim for Loss of Use

Plaintiffs have alleged that Gulf Stream, the United States, and Fluor are liable for the "loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster. . ." (Member Case No. 09-2892, Rec. Doc. 1, ¶ 117). In other words, this claim is one for economic damages arising out of Plaintiffs' alleged inability to use a safe EHU or shelter of some kind. Gulf Stream notes that the Court has already ruled that the plaintiffs do not have a claim for economic damages under the LPLA if they do not have the same claim under the law of redhibition. (See Rec. Doc. 984, p. 39). As this Court has ruled herein, Plaintiffs have no redhibition claim. Therefore, Plaintiffs' economic damages claim for the loss of use, or opportunity to use, a safe and adequate shelter fails to state a claim upon which relief may be granted, and is thus dismissed.

## III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 1811) is **GRANTED IN PART AND DENIED IN PART,** as set forth herein.

New Orleans, Louisiana, this 23rd day of July, 2009.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**