UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION: N(5) |
| | * | |
| This Document Relates to: | * | |
| *Aldridge v. Fleetwood Enterprises, Inc. and* | * | |
| *Fluor Enterprises, Inc.* | * | JUDGE: ENGELHARDT |
| Case No. 07-9228 | * | |
| | * | |
| | * | MAG: CHASEZ |

*****************************************************************************

# FLEETWOOD ENTERPRISES, INC. MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE PLAINTIFFS' TESTING RESULTS

**May It Please The Court:**

Fleetwood Enterprises, Inc. ("Fleetwood") has moved this Court in limine to exclude the Plaintiffs' testing results of the purported formaldehyde levels in the Dubuclet's unit. The condition of the Dubuclet unit at time of testing, which was conducted 39 months after Fleetwood constructed the Plaintiff's emergency housing unit ("EHU") and 22 months after the Dubuclets moved out of the unit, is so far removed from actual conditions under which the Dubuclets lived in the unit, that such testing is not relevant in this case.

**Factual Background**

**A.    Plaintiffs' Testing**

On July 8 and 9, 2009, for the first time, Plaintiffs, through the W.D. Scott Group, Inc., tested the Dubuclet's EHU. The air sampling testing took place in Lottie, Louisiana, where the

EHU has been stored.[1] Scott noted that this testing took place 39 months after Fleetwood constructed the unit.[2] The unit was built in Fleetwood's Longview, Texas plant on March 26, 2006 and was transported by truck from Longview to a FEMA site at 2695 N. Sherwood Forrest, Baton Rouge, Louisiana. The unit was then installed on private property at 6046 Dorothea Street in New Orleans, Louisiana.[3] The Dubuclets lived in the unit from June 2006 to September 2007.[4] When the Dubuclets moved out of the unit, it was picked and transported to FEMA's Lottie, Louisiana storage site. The unit has been on that site since that time. It is unknown at this time whether, or how frequently, the unit was moved while at that site. However, it was moved by FEMA to an open area, at the Lottie facility, shortly before the July 2009 testing, to facilitate access for that testing.

Six days prior to the July 8 and 9, 2009 testing, on July 2, 2009, Plaintiff's testing expert Scott traveled to the FEMA storage site at Lottie and insured that all windows, doors and vents on the Dubuclet unit were securely closed:

> The door, all windows, and ventilation openings were closed. Security tape was installed on the door and windows to validate the closure of these openings until the date of the Sampling and Inspection event.[5]

Plaintiff's testing of the Dubuclet unit, which included both passive and active sampling, was performed without the HVAC operating in the EHU.[6] For the active sampling, the ambient outdoor temperature during the sampling was 88°, while the EHU interior temperature was 84.1°

---

[1] Scott Aff. at 2 (DUB000646), attached as Ex. A.
[2] *Id*. at 9 (DUB000653), Ex. A.
[3] Dubuclet Fact Sheet, excerpt attached as Ex. B (providing address where the unit was installed).
[4] Dubuclet Fact Sheet, excerpt attached as Ex. B (stating the move-in and move-out dates).
[5] Scott Aff. at 2 (DUB000646) (Scott's notes regarding his preliminary site visit on July 2, 2009).
[6] *Id*. at 10 (DUB000654), Ex. A.

F.[7] The interior relative humidity of the unit during the active sampling was 74.4%[8]. Indeed, the interior temperature rose to 97°F on July 9, 2009, the same day as the conclusion of the passive sampling--albeit after that sampling was completed.[9] Plaintiffs did not conduct the air sampling with the slide-out feature in this handicapped unit extended, despite the fact that the unit was installed and the Dubuclets lived in the unit with the slide-out fully extended..[10] With the slide-out extended, the size of the unit, which is 224 square feet before extending the slide-out, increases by 50 square feet of living space.[11] This additional living space also necessarily increases the cubic feet of air space within the EHU.[12] This EHU has been unoccupied since September 2007,[13] and is currently in a FEMA storage facility.[14] Indeed, on the date of Plaintiff's testing, this unit was only occupied by a wasp's nest inside the duct work.[15]

**B.   Dubuclets' Living Conditions**

When the Dubuclets lived in the unit, they tried to keep at least two windows open at all times.[16] They also ran the air conditioning unit "[a]ll day every day" unless it was cold or there were problems with the air conditioning unit.[17] In addition to that ventilation, they also kept the bathroom vents "open all the time."[18]

---

[7] *Id.*, Ex. A.
[8] *Id.*, Ex. A.
[9] Mallet Rep. at 18 (DUB000700), attached as C.
[10] Although the deposition of Elisha Dubuclet was taken for class certification purposes, she was not asked about the slide-out extension. But Fleetwood counsel has received information from Plaintiffs counsel that the unit was set up, and occupied with, the slide out extended.
[11] *See* Floor Plan Dimensioned, from Scott's Affidavit (DUB000658), Ex. D.
[12] *Id.*
[13] Dubuclet Fact Sheet, excerpt attached as Ex. B (stating the move-in and move-out dates).
[14] Scott Aff. at 2 (DUB 000646), Ex. A.
[15] Mallett report at 21 (DUB000703), Ex. C.
[16] Elisha Dubuclet Dep. at 77-78, excerpts attached as Ex. E.
[17] *Id.* at 101-102, excerpts attached as Ex. E.
[18] *Id.* at 126-27, excerpts attached as Ex. E.

**Argument and Citation of Authority**

Only relevant evidence is admissible, and "relevant evidence" is defined as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[19] The Fifth Circuit Court has recognized that out-of-court experiments, to be admissible, must be conducted under substantially similar conditions.[20] Indeed, it is the plaintiff's burden to "lay a proper foundation demonstrating a similarity of circumstances and conditions."[21] While the Fifth Circuit Court does not require perfection in replicating the issue that is being tested, it does require the conditions to "be so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed."[22] In *Barnes v. General Motors Corp.*, the Court found that it was highly prejudicial and reversible error to admit evidence of the plaintiff's expert's experiment that was conducted under significantly different circumstances than those at the time of the accident.[23] The Court also found that the jury was likely to misunderstand the evidence and give it an exaggerated weight when the evidence was of no probative value.[24]

Plaintiffs' allegations in this case center on their alleged exposure to formaldehyde. Scott did the testing to determine the formaldehyde concentration in the Dubuclet EHU, presumably in an effort to determine the purported exposure level that the Dubuclets experienced. But Plaintiff's testing of this unoccupied, closed up, non-air-conditioned or ventilated unit is so far removed from the condition of the unit during the time that the Dubuclets lived in it, that these

---

[19] Fed. R. Evid. 401.
[20] *Barnes v. Gen. Motors Corp.*, 547 F.2d 275, 277 (1977).
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*

4

testing results have no bearing on the facts in this case. The testing in no way replicates actual living conditions—there was no ventilation in the despite the indoor temperature being nearly 90° and the slide-out was not extended. The EHU had also been closed up for at least 6 days, with no one entering or exiting. This sealed unit does not reflect how the Dubuclets used the unit, as Ms. Dubuclet herself testified to her deposition. The Dubuclets ventilated the unit—using the air conditioning, opening windows, and using the bathroom vent.[25] None of these methods were used by Scott in testing the unit. Consequently, the testing does not bear on exposure in this case. These tests results are therefore irrelevant and inadmissible.

Not only is Plaintiffs' testing irrelevant, allowing this testing to be presented to the jury would have the possibility of misleading the jury who may attach exaggerated significance to the test.[26] This unrealistic testing sheds no light on the level of formaldehyde that the plaintiff was exposed to two years ago. Permitting the jury to hear evidence about this testing, when no foundation can be laid for it, would be unduly prejudicial.

**Conclusion**

Fleetwood requests that this Court rule, in advance of the trial, that the testing done by Plaintiffs is irrelevant and inadmissible.

This 28th day of July, 2009.

Respectfully submitted:

*/s/ Richard K. Hines, V*
Richard K. Hines, V
GA Bar No. 356300

---

[25] Elisha Dubuclet Dep. at 77-78, 101-02, 126-27, excerpts attached as Ex. E.
[26] Barnes, 547 F.2d at 277.

NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)

Jerry L. Saporito
LA Bar No. 11717
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-1701
(504) 585-7500 (phone)
(504) 585- 7775 (fax)

Counsel for Fleetwood Enterprises, Inc.

## C E R T I F I C A T E OF SERVICE

I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )   Hand Delivery                    ( )   Prepaid U.S. Mail

( )   Facsimile                        ( )   Federal Express

(X)   CM/ECF

New Orleans, Louisiana, this 28th day of July, 2009.

                          /s/ Richard K. Hines, V
                          Richard K. Hines, V
                          Georgia Bar No. 356300
                          richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)

7