CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 09-5965   DIVISION: " I "   SECTION 14   DOCKET NO.:_____

JURY DEMAND

BRIDGET SCOTT O/B/O NALA SCOTT AND BRIDGET SCOTT O/B/O JEFFERY WASHINGTON, JR.

versus

LAKESIDE PARK HOMES, INC., CH2M HILL CONSTRUCTORS, INC. AND RAZZ ELECTRICAL SERVICES, LLC

FILED: _____   _____
                                DEPUTY CLERK

**PETITION FOR DAMAGES**

THIS PETITION of Bridget Scott on behalf of her minor children, Nala Scott and Jeffery Washington, Jr., (hereinafter, "Plaintiffs"), through undersigned counsel, respectfully represent that:

I.

Plaintiffs are residents of and domiciled in the parishes below:

A. Nala Scott is a resident of and domiciled in the Parish of Orleans, State of Louisiana.

B. Jeffery Washington, Jr. is a resident of and domiciled in the Parish of Orleans, State of Louisiana.

II.

Made Defendants are:

A. Lakeside Park Homes, Inc. (hereinafter, "Lakeside"), is a corporation organized under the laws of the State of Georgia, which conducts business in the State of Louisiana and within the jurisdiction of this Honorable Court.

B. CH2M HILL Constructors, Inc. (hereinafter, "CH2M"), is a corporation organized under the laws of the State of Delaware with its principle place of

1

business in the State of Colorado, and is authorized to do and doing business in the State of Louisiana and within the jurisdiction of this Honorable Court; and

C. Razz Electrical Services, LLC, (hereinafter, "Razz"), is a corporation organized under the laws of the State of Louisiana with its principle place of business in the State of Louisiana, and is authorized to do and doing business in the State of Louisiana and within the jurisdiction of this Honorable Court.

### III.

Venue is proper in Orleans Parish as it is the parish where the Plaintiffs' injuries occur.

### IV.

At all pertinent times hereto, Lakeside was engaged by the Federal Emergency Management Agency,( hereinafter "FEMA"), to sell temporary housing units for provision to the Plaintiffs and other Gulf Coast residents as temporary housing following Hurricane Katrina.

### V.

On information and belief, Lakeside expedited production of these housing units, and, on information and belief, resorted to using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing unit occupied by the Plaintiffs containing higher than normal levels of formaldehyde.

### VI.

On information and belief, the Plaintiffs' housing unit, whether manufactured prior to the hurricanes or later manufactured and purchased by FEMA, deviated from Government specifications pertaining to the safety of the unit as a residence.

### VII.

Plaintiffs submit that the housing unit at issue herein, whether manufactured prior to the hurricanes or later manufactured and purchased by FEMA, did not conform to any Government-

imposed specifications which addressed the design and/or construction of the housing unit pertinent to formaldehyde levels.

### VIII.

Plaintiffs submit that the housing unit at issue, whether manufactured prior to the hurricanes or later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to Lakeside's use of certain materials in its construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing unit as a temporary residence for at least 18 months, but that Lakeside failed to warn the Federal Government about these dangers.

### IX.

Plaintiffs submit that Lakeside ignored, or concealed and/or condoned the concealment of, the fact that the housing unit at issue contained dangerous levels of formaldehyde due to Lakeside's use of certain materials in its construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing unit as a temporary residence for at least 18 months, all in order to sell Lakeside's products, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions.

### X.

Each of the Plaintiffs spent significant time in the FEMA-provided housing unit manufactured by Lakeside and provided to Plaintiffs by the Federal Government. As a result, the Plaintiffs unwittingly were exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing unit.

### XI.

Lakeside knew or should have known of the health hazards inherent in the products it constructed, by familiarity with industry standards and published medical studies.

### XII.

At all pertinent times hereto, CH2M and/or Razz, was engaged by FEMA through contracts, with the transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units.

### XIII.

Under the terms of their contracts, CH2M and Razz were obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and indicated by the manufacturers of same. Further, under their contracts with FEMA, CH2M and Razz were obligated to advise and instruct FEMA regarding the implementation of those contracts. Upon information and belief CH2M and Razz failed to properly fulfill either of these tasks.

### XIV.

CH2M and/or Razz contracted with FEMA to pick-up and transport the temporary housing units from FEMA-controlled staging areas and deliver them to areas which CH2M and/or Razz were tasked with operating. These new areas included staging areas to be managed and maintained as assigned to CH2M and/or Razz or individual locations and addresses where CH2M and/or Razz assigned that temporary housing unit would have obligations to manage and maintain it.

### XV.

To accomplish its contractual obligation with FEMA, in addition to the use of subsidiary companies, CH2M and/or Razz entered into numerous sub-contracts, but at all times retained supervisory capacity and responsibility under its individual contract with FEMA.

### XVI.

CH2M and/or Razz was tasked under its contract with FEMA to identify and prepare the infrastructure for the various group site locations. This included, amongst other things, ensuring there would be adequate water, sewage, electricity, etc. CH2M and/or Razz knew or should have known that these preparations were for long-term occupancy of the temporary housing units.

4

XVII.

Once the temporary housing unit occupied by the Plaintiffs was transported and delivered to its particular location, CH2M and/or Razz had the responsibility for installing that temporary housing unit. CH2M and/or Razz installed the temporary housing unit by "blocking" the unit. This meant raising the Plaintiffs' unit several feet into the air and off of its wheel base, and setting it on concrete blocks.

XVIII.

By blocking the Plaintiffs' temporary housing unit, CH2M and/or Razz created stress and flexing on the frame of the unit as it was not designed to be lifted off of its wheel base. In fact, the manufacturers of the temporary housing units warned in the various owners' manuals provided with the units, that units should not be jacked so that the vehicle's weight is no longer supported by the wheels.

XIX.

The stress and flexing of the temporary housing unit's frame caused by CH2M and/or Razz "blocking" it with weight off of its wheels created distortion in the park model's shell allowing increased moisture intrusion which contributed to increased formaldehyde exposures.

XX.

The temporary housing unit occupied by the Plaintiffs which was provided by FEMA was a park model. "Park models" are larger versions of travel trailers (up to 400 square feet in area) and thus by definition are mobile. They are designed for temporary living quarters and, although they are manufactured housing, they are exempted from HUD construction standards, typically regulated by transportation authorities and by manufacturer acceptance of a Voluntary American National Standards Institute ("ANSI") standard applying to their construction. By installing the park model on concrete blocks for extended occupancy, CH2M and/or Razz knowingly and intentionally modified the design and the actual use of the unit occupied by the Plaintiffs by converting it into a temporary housing unit to be used as a residence for long-term occupancy, exceeding 18 months.

### XXI.

CH2M and/or Razz failed to consult with the manufacturers of the temporary housing units, including Lakeside, with regard to the installation, warnings, warranty issues or advisability of using park models for long-term residence and occupation. CH2M and/or Razz took actions which voided the warranties of the manufacturers and directly created or contributed to unsafe and hazardous living conditions in the temporary housing unit.

### XXII.

Once CH2M and/or Razz completed the transportation, delivery and installation of the temporary housing unit occupied by the Plaintiffs CH2M and/or Razz was tasked with inspecting the unit to ensure that it was safe and habitable, prior to occupancy by the Plaintiffs. Upon information and belief, CH2M and/or Razz failed to adequately inspect the temporary housing unit occupied by the Plaintiffs to ensure that the unit was safe and suitable for its intended use – the long-term occupancy by individuals and families displaced by hurricanes Katrina and Rita. This failure to properly inspect the unit for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by the Plaintiffs.

### XXIII.

In addition to transportation, site identification, installation and inspection, the temporary housing unit occupied by the Plaintiffs provided in response to hurricanes Katrina and Rita was also managed, maintained and repaired by CH2M and/or Razz, or their various subcontractors over whom they maintained direct oversight and responsibility. Upon information and belief, CH2M and/or Razz failed to adequately manage, maintain and repair the temporary housing unit which enabled and contributed to the unsafe and hazardous conditions that led to adverse health effects suffered by the Plaintiffs.

### XXIV.

Parallel to their duty to manage, maintain and repair each temporary housing unit, CH2M and/or Razz failed to undertake appropriate action, maintenance or repair in response to numerous

complaints made by the Plaintiff-occupants of the temporary housing units to various adverse health effects caused by exposure to elevated levels of formaldehyde.

### XXV.

Following the Plaintiffs' occupancy of the temporary housing unit, CH2M and/or Razz was tasked with its de-installation. Upon discovering the deteriorated condition of the temporary housing unit at the time of de-installation and removal, CH2M and/or Razz failed to identify the unsuitability of the temporary housing unit for long-term occupancy.

### XXVI.

In addition to de-installation of the temporary housing units, CH2M and/or Razz was tasked with refurbishment and restoration of the temporary housing units for use, either in direct response to hurricanes Katrina and Rita or for use in the future. By restoring and refurbishing these temporary housing units, CH2M and/or Razz warranted that the units were fit for their intended use, long-term occupancy in response to disaster related displacement. By restoring and refurbishing these temporary housing units, CH2M and/or Razz created and perpetuated existing hazardous conditions which would foreseeably lead to adverse health effects caused by the elevated levels of formaldehyde in the temporary housing units. Further, in thousands of cases, following the restoration and refurbishment, these temporary housing units were immediately occupied by new individuals or families displaced by hurricanes Katrina and Rita, who were then directly exposed to hazardous levels of formaldehyde.

### XXVII.

CH2M and/or Razz, at every stage of their involvement, failed to warn the Plaintiffs of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde – a known human carcinogen – which led directly to adverse health effects, including but not limited to the advent and/or reoccurrence of childhood asthma in some of the Plaintiffs.

### XXVIII.

Through their actions and omissions, CH2M and/or Razz created and perpetuated a situation wherein occupants of the temporary housing units were exposed to elevated levels of formaldehyde

and, as a result, suffered adverse health effects. CH2M and/or Razz negligently failed to adhere to the manufacturers' instructions and warnings related to: (1) the manufacturers' intended (short-term) use of the temporary housing units; (2) the installation and set-up of the temporary housing units; and (3) the warning that the temporary housing units contained urea formaldehyde resin which would release formaldehyde gas directly into the intended living space.

### XXIX.

CH2M and/or Razz failed to warn the Plaintiffs of the hazardous conditions created by the elevated levels of formaldehyde in the temporary housing unit.

### XXX.

By restoring and refurbishing the trailer for future habitation, CH2M and/or Razz improperly and negligently warranted that the unit was fit for the intended use of long-term occupancy.

### XXXI.

As a result of the foregoing, Plaintiffs were caused to sustain injuries including, but not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven.

### XXXII.

Plaintiffs' injuries and resulting damages were proximately caused by the fault of Defendants and their officers, agents, employees, and those for whom they are legally responsible.

### XXXIII.

Lakeside, under all applicable laws, including but not limited to, the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, *et seq.*, is strictly liable unto Plaintiffs for all injuries and damages for designing, manufacturing, distributing and/or selling of the temporary housing unit described above, that was defective, unsafe, and unreasonably dangerous in design, composition,

manufacture, and/or construction and/or due to its lack of and/or inadequate warnings and due to its non-conformity to the express warranties of fitness of said product.

### XXXIV.

Furthermore, CH2M and/or Razz, under all applicable laws, including but not limited to, the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, *et seq.*, is strictly liable unto Plaintiffs for all injuries and damages for designing, manufacturing, constructing, assembling, distributing, and/or refurbishing of the residential housing as described above, that was defective, unsafe, and unreasonably dangerous in design, composition, manufacture, and/or construction and/or due to its lack of and/or inadequate warnings and due to its non-conformity to the express warranties of fitness of said product.

### XXXV.

Plaintiffs assert their claims against Lakeside, CH2M and Razz under the laws of the State of Louisiana and under any other state and federal statutes which may be applicable.

### XXXVI.

Plaintiffs are entitled to a trial by jury.

WHEREFORE, Plaintiffs pray that Lakeside, CH2M and Razz be served with a copy of this Petition for Damages and that after due proceedings are had, Plaintiffs pray for judgment in their favor and against Defendants, Lakeside, CH2M and Razz, in an amount reasonable under the premises, together with legal interest thereon from the date of judicial demand, and for all costs of these proceedings, and for all appropriate legal and equitable relief, and for trial by jury.

Respectfully submitted:

BY: _____
HUGH P. LAMBERT, ESQ. (#7933)
LINDA J. NELSON, ESQ. (#9938)
LAMBERT & NELSON, PLC
701 Magazine Street
New Orleans, LA 70130

Telephone: (504)581-1750
Facsimile: (504)529-2931
Counsel for Plaintiffs

**PLEASE SERVE**

1. Lakeside Park Homes, Inc.
   **through its registered agent for service of process:**
   Ben C. Jarvis
   70 Peachstate Drive
   Adel, GA 31620

2. CH2M HILL Constructors, Inc.
   **through its registered agent for service of process:**
   C T Corporation System
   5615 Corporate Blvd., Ste 400B
   Baton Rouge, LA 70808

3. Razz Electrical Services, LLC
   **through its registered agent for service of process:**
   Tamela R. Rasberry
   84 H. Strange Road
   Lacompte, LA 71346

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing pleadings were served on all counsel of record by facsimile, electronic mail, hand delivery, and/or by placing a copy of same in the United States Mail, postage prepaid on this 10th day of June, 2009.

Hugh P. Lambert, Esq. (#7933)