UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 07-1873 |
| FORMALDEHYDE  PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION N(5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO: | * | |
| *Lyndon Wright v. Forest River, Inc., et al.* | * | MAGISTRATE JUDGE CHASEZ |
| No. 09-2977 (E.D. La.) | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF
<u>MOTION FOR RECONSIDERATION</u>**

**MAY IT PLEASE THE COURT:**

  Defendant, Shaw Environmental, Inc. (hereinafter "Shaw"), through undersigned counsel, respectfully offers this Memorandum in Support of its motion requesting that this Honorable Court reconsider its ruling of July 17, 2009 (Rec. Doc. 2201) allowing the third bellwether plaintiff, Lyndon Wright, to amend his complaint to add mold exposure claims and further allowing mold testing to be conducted on Mr. Wright's emergency housing unit without amending the trial schedule.

## FACTS

Since the outset of this litigation, the Court has adhered to a process that it designed to ensure, to the greatest extent possible, the inferential value of results reached in trials of the various bellwether plaintiffs. Great care was taken by the Court and the parties who participated in that process in choosing bellwether plaintiffs whose claims appeared representative of the greater whole. After careful consideration of information submitted by plaintiff Lyndon Wright, certain parties (the contractor defendants did not participate in that process) and the Court agreed that the facts of Mr. Wright's case were sufficiently representative. Thus, on April 6, 2009, the Court issued Pre-Trial Order No. 34, confirming Mr. Wright as the plaintiff for the third bellwether trial in this multi-district litigation ("MDL"). (Rec. Doc. 1299).

On June 24, 2009, however, Mr. Wright filed a Motion for Leave to File First Supplemental and Amended Complaint, seeking to add new claims of injury due to mold exposure.[1] (Rec. Doc. 1862). Thereafter, following a series of motions and oppositions related to a proposed trailer testing protocol, the Court made it abundantly clear that "No mold testing shall be permitted." (Rec. Doc. 2009). Plaintiff nevertheless sought reconsideration, and, on July 13, 2009 (Rec. Doc. 2149), the Court rejected Mr. Wright's motion, reiterating its Order of July 6, 2009 (Rec. Doc. 2062): "Plaintiffs do not allege and cannot recover for the impact of the presence of mold on their health. It should be noted that the substance of this guidance shall also apply to the Court's June 30, 2009 Order and Reasons (Rec. Doc. 2009), wherein it stated that '[n]o mold testing shall be permitted.'"

---

[1] Notably, nowhere in either of his Plaintiff Fact Sheets (the documents on which he was selected as a bellwether plaintiff) does Mr. Wright mention mold as an alleged cause of injury.

As recently as July 15, 2009, mold clearly was not an issue in this litigation.[2] The Court had plainly articulated its view, and the defendants had not considered the possibility of seeking experts to address this topic. Two days later, however, with the Court's July 17, 2009 Order (the "Order") (Rec. Doc. 2201), mold was unexpectedly given a central role in this case. By the Order, the Court allowed amendment of the Wright complaint to state a claim for the alleged health impact of the presence of mold; ordered that mold testing be conducted on the Wright emergency housing unit; and effectively required that defendants locate, hire, and consult with mold experts, and prepare a protocol governing mold testing on or before August 3, 2009.

## **LAW**

As noted in this Court's July 13, 2009 Order and Reasons (Rec. Doc. 2149), "[a] district court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration under Rule 59(e)," and one of the grounds upon which a Rule 59(e) motion can be granted is "the need to prevent manifest injustice." (citations omitted). The word "manifest," as in "manifest injustice," is defined as "clearly apparent or obvious." *Englewood Terrace Ltd. Partnership v. U.S.*, 86 Fed.Cl. 720, 725 (2009). Waste of money and judicial resources has been held to be "manifest injustice." *See, e.g.*, *National Medical Enterprises, Inc. v. U.S.*, 28 Fed.Cl. 540, 549 (1993).

---

[2] On July 15, 2009, the parties received an e-mail message from the Court instructing that, having reviewed the Plaintiff's Opposed Second Motion For Leave to File First Supplemental and Amended Complaint (Rec. Doc. 2128), Judge Engelhardt was "quite troubled by the request to add allegations of mold-related injury and exposure by bellwether plaintiff Wright, when such allegation has not heretofore been made and is not common to all plaintiffs in this MDL." The court further instructed that "the MDL committee has charged Judge Engelhardt with overseeing this MDL based on the common allegation of formaldehyde exposure - not mold exposure" and warned that if plaintiff Wright insisted on presenting mold-related evidence, the court "is strongly considering … the option of selecting a new bellwether plaintiff (who does not allege mold exposure) to replace Mr. Wright in the Forest River bellwether trial." (Email dated July 15, 2009, attached hereto as Exhibit "A.")

**ARGUMENT**

As noted by the U.S. Fifth Circuit in *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997), "[t]he term bellwether is derived from the ancient practice of belling a wether (a male sheep) selected to lead his flock. The ultimate success of the wether selected to wear the bell was determined by whether the flock had confidence that the wether would not lead them astray, and so it is in the mass tort context." Further, a "bellwether trial designed to achieve its value ascertainment function for settlement purposes or to answer troubling causation or liability issues common to the universe of claimants has as a core element representativeness …." *Id.*

With the addition of mold to his case, plaintiff Lyndon Wright no longer fits this definition. Indeed, he has said as much, claiming when trying to justify the addition of mold that his case "is not a bellwether case" (*See* Rec. Doc. 2138-2 at p. 1. *See also* Rec. Doc. 2196 at p.1). Shaw can only agree. This case is no longer representative of the mass of consolidated litigations within this MDL because of its unique focus on mold. Any result reached can readily be dismissed—whether by plaintiffs or defendants—as being driven by mold and not formaldehyde.

Mr. Wright claimed that there are many plaintiffs in this MDL with mold-caused injuries, and that he is representative of them. But to Shaw's knowledge, the Wright amended complaint is the only complaint in which a plaintiff specifically alleges injury caused by mold.[3] The CDC report cited by Mr. Wright may well claim that 21% of some small subset of all trailers happened to contain mold, but this claim cannot logically be stretched into a conclusion that any meaningful fraction of plaintiffs in this MDL can claim, in good faith, that they (a) suffered a

---

[3] Tellingly, even those complaints served after entry of the Order do not specifically allege mold-related injury.

mold-caused injury; and (b) that the mold that caused that injury can be attributed to the fault of any defendant.[4]  As a practical matter, everyone along the Gulf Coast lives with mold in their environment and in their homes.  Most people are not injured by mold, and most mold is not anyone's fault.  There simply is no reason to conclude that now, three years into this litigation, there will be common factual questions about alleged mold-caused injuries sufficient to support MDL treatment of such questions.  Certainly, such questions are not prevalent in the pleadings.  Mold exposure claims have no place in this formaldehyde MDL, and they do not belong in a bellwether trial.

Indeed, this Court had correctly provided a means to deal with the mold issue in the larger context of the formaldehyde litigation.  Specifically, in its Order and Reasons dated July 13, 2009, the Court stated:

> [E]vidence of the presence of mold may be indicative of moisture intrusion, which may be important to formaldehyde levels in the EHU.  Thus, any references to mold would be admissible if they are offered to show an alleged impact on formaldehyde levels.

(Rec. Doc. 2149).  This proper solution allows plaintiff to keep the focus of his case on formaldehyde exposure and fold in any theories about the effects of mold and moisture so long as they relate to formaldehyde.  It is only in this manner that the bellwether trial will be meaningful, allowing formaldehyde to remain the focus of the case.

---

[4] One must question whether alleged injury caused by "mold," even if present in *every* complaint, would pose questions that are common enough to trigger collective treatment via an MDL.  Unlike formaldehyde, a single substance, "mold" comprises millions of unique species.  The medical, toxicological, and related testimony that is so central to the formaldehyde cases would be different in every single mold case, depending on what combinations of species of mold the plaintiff claims were in his trailer.  Any bellwether result in a "mold" case could easily be disregarded by other parties who might claim that the particular species of mold in their trailer were more or less serious than those found in the bellwether trailer.

5

A Rule 59(e) motion can be granted to prevent manifest injustice. Defendants are expending significant resources preparing this matter for trial in hopes of gaining information useful in bringing resolution to the larger set of cases within this MDL. The trial itself will consume additional time and resources, not the least of which are those of the Court. Yet, the outcome of this case as presently confected will yield no information useful to the other cases in the MDL. Shaw, therefore, respectfully suggests that, in order to prevent the wholesale waste of resources, the Order be rescinded and replaced with an order reinstating the Court's June 30, 2009 (Rec. Doc. 2009) and July 13, 2009 (Rec. Doc. 2149) Orders and denying Mr. Wright leave to amend his Complaint.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**


  /s/ M. David Kurtz
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**ATTORNEYS FOR DEFENDANT,
SHAW ENVIRONMENTAL, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of July, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.

    /s/ M. David Kurtz