UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE | * | MDL NO. 07-1873 |
|       PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION "N" (5) |
| THIS DOCUMENTS IS RELATED TO: | * | |
| CIVIL ACTION NO. 07-9228 | * | JUDGE: ENGELHARDT |
| *Aldridge, et al. vs. Gulf Stream Coach, Inc., et al.* | * | |
| *(Elisha Dubuclet obo Timia Dubuclet vs. Fleetwood,* | * | |
| *Fluor Enterprises, Inc. and FEMA)* | * | |
| Case No. 07-9228 | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S OPPOSITION TO FLEETWOOD ENTERPRISES, INC.'S
MOTION TO STRIKE PLAINTIFF'S
<u>DESIGNATION OF KENNETH R. LAUGHERY, PH.D</u>**

**MAY IT PLEASE THE COURT:**

Plaintiff, Elisha Dubuclet obo her minor child Timia Dubuclet, opposes Defendant Fleetwood Enterprises, Inc.'s Motion to Strike the Plaintiff's designation of Kenneth R. Laughery, Ph.D as an expert witness (Rec. Doc. 2348).

The sole basis for Fleetwood's motion is this Court's July 15, 2009 *Order and Reasons* (Rec. Doc. 2181), which excluded the testimony of a different expert witness, Lila Laux, Ph.D. In its prior order, this Court never addressed the specific qualifications and expertise of Dr. Laughery and never considered whether his specific opinions would assist the jury.  Although Fleetwood argues that Dr. Laughery is unqualified to testify as an expert--it does not even

1

mention his qualifications. Nor does Fleetwood address whether Dr. Laughery's *specific* testimony is admissible under Federal Rule of Evidence 702 or *Daubert*.[1]

Plaintiff is mindful and respectful of this Honorable Court's ruling excluding the testimony of Lila F. Laux. However, Plaintiff respectfully represents that the testimony of Dr. Laughery is distinguishable from that of Dr. Laux for a number of reasons, and Defendant's motion should be denied.

## STATEMENT OF LAW

This Court set out the law concerning the admissibility of expert testimony under Rule 702 and *Daubert* in its July 15, 2009 *Order and Reasons*.[2] As noted by this Court, Rule 702 requires the Court to determine whether an expert will "assist the trier of fact."[3] If the "jury could adeptly assess [the situation] using only their common experience and knowledge," there is no need for a full *Daubert* analysis.[4] On the other hand, if the expert's testimony will be helpful to assist the trier of fact, then *Daubert's* impact must be considered."[5]

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

[2] *See Order and Reasons*, Rec. Doc. 2181 at 3-5.

[3] *See Order and Reasons*, Rec. Doc. 2181 at 4 (quoting Fed. R. Evid. 702).

[4] *See Order and Reasons*, Rec. Doc. 2181 at 4-5 (quoting *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990)).

[5] *See Order and Reasons*, Rec. Doc. 2181 at 5.

Here, Defendant's motion should be denied because Dr. Laughery's testimony is not within the ordinary knowledge of the jurors and will greatly assist the jury in determining the relevant issues.

## ARGUMENT

Fleetwood's motion should be denied for several reasons.

### I.     Dr. Laughery is well-qualified to testify within the fields of his expertise, and is qualified in areas other than "human factors," including warnings.

As mentioned, Defendant has not attacked Dr. Laughery's qualifications. As shown on the attached curriculum vitae, Dr. Laughery is highly qualified to provide expert testimony to the jury in the areas of both human factors and **warnings** (emphasis added). (*See* Exhibit 1, Curriculum Vitae of Dr. Kenneth Laughery).

Dr. Laughery holds a Ph.D. in Psychology and has published articles and lectured extensively on consumer warnings since 1983. He is qualified to testify that the warnings were, and are, an integral part of the product. Dr. Laughery has authored several books dealing specifically with **warnings**. *(See* Exhibit 1, *supra*). He is a co-author of the 365-page sourcebook entitled, *Warning & Risk Communication*, by Michael S. Wogalter, David M. DeJoy, and Kenneth R. Laughery, and published by CRC (Taylor & Francis) in 1999. (*See* Exhibit 1, *supra*). Dr. Laughery has obtained numerous research grants and contracts funded by both

3

industry and non-profit groups. (*See* Exhibit 1, Curriculum Vitae of Dr. Kenneth Laughery, Research Grants and Contracts, No. 17, No. 20, pg. 5).

### II.   This Court's ruling regarding Dr. Laux should not automatically preclude Dr. Laughery from testifying.

This Court's prior Order was made in response to a motion by Defendant Gulf Stream Coach, Inc. to exclude the testimony of Dr. Lila Laux regarding the bellwether plaintiff in another case, No. 09-2892 (Rec. Doc. 1753). Gulf Stream's motion was limited to Dr. Laux, and was based on her particular testimony.[6] More particularly, in the prior motion, Gulf Stream argued that Dr. Laux, an industrial psychologist, was "not qualified" to render expert opinions on the design of the EHU, or whether the bellwether plaintiff's alleged exposure to formaldehyde caused resultant damages.[7]

The Dubuclets were not given the opportunity to argue the admissibility of *Dr. Laughery's* testimony before this Court entered its prior order concerning *Dr. Laux*. There was no mention of Dr. Laughery in the prior motion, and his qualifications and opinions were neither briefed by the parties nor considered by this Court before the July 15 Order was rendered.

This Court excluded Dr. Laux's conclusory opinions that the EHU in that case was unreasonably dangerous for its occupants because it "could reasonably be expected to create

---

[6] *See Order and Reasons*, Rec. Doc. 2181 at 1.

[7] *See Order and Reasons*, Rec. Doc. 2181 at 2.

4

elevated levels of formaldehyde gas in the interior of the trailer."[8]  By contrast, Dr. Laughery's opinions are not conclusory in nature and are based on methodology used and accepted by experts in the field of both human factors and warnings.  (*See* Exhibit 1, Report of Dr. Kenneth Laughery, at 2).  Dr. Laughery, unlike Dr. Laux, does *not* opine on the "science" of formaldehyde.  His opinions are not conclusory, and are clearly distinguishable from those expressed by Dr. Laux.

Furthermore, as discussed below, Dr. Laughery's opinions go beyond the "human factors" testimony excluded in this Court's prior order and encompass expert testimony concerning the adequacy and effect of the warnings.

In short, Dr. Laughery's opinions are distinguishable from the inadmissible opinions of Dr. Laux, and should not be precluded solely because of this Court's prior ruling concerning a completely different expert.  At a minimum, it is respectfully submitted that this Court should conduct the inquiry which every litigant is entitled to, under Rule 702 and *Daubert*, before excluding expert testimony.  Here, since Defendant has *not* briefed either Rule 702 or *Daubert*, the motion should be denied.

### III.    Dr. Laughery's opinions will assist the jury.

Dr. Laughery's opinions will assist the jury in understanding the warnings issues before the Court.

---

[8] *See Order and Reasons*, Rec. Doc. 2181 at 5.

Under the Louisiana Product Liability Act, a product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left the manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.[9]  A manufacturer has the duty to appropriately label and provide adequate warnings of dangers inherent in the product.[10]  Under the LPLA, "[a]dequate warning" means

> a warning or instruction that would lead **an ordinary reasonable user or handler of a product** to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made.[11]

The Louisiana Supreme Court has noted that a manufacturer must "**anticipate the environment** in which the product will be used . . . ."[12]  Whether a warning is adequate depends upon a balancing of considerations including, among other factors, "the severity of the danger . . .; **the likelihood that the warning will catch the attention** of those who will foreseeably use

---

[9] La. R.S. 9:2800.57(A).

[10] *Hawkins v. Evans Cooperage Co.*, 766 F.2d 904 (5th Cir.1985).

[11] La. R.S. 9:2800.53 (9) ("The following terms have the following meanings for the purpose of this Chapter: ....  (9) 'Adequate warning' means a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made.").

[12] *Bloxom v. Bloxom*, 512 So. 2d 839, 843 (La. 1987) (emphasis added).

6

the product and convey the nature of the danger to them . . .; **the intensity and form of the warning** . . .; and **the cost of improving the strength or mode of the warning**."[13]  (emphasis added).

Dr. Laughery's testimony will greatly assist the jury in determining these requirements under Louisiana law, and will provide information not known to the average juror concerning the adequacy of the warnings.

For example, one of Dr. Laughery's opinions deals with the adequacy of a warning system (Opinion No. 1). *(See* Exhibit **2**, Affidavit of Dr. Kenneth Laughery, at pg. 5).  Another opinion concerns the adequacy and availability vel non of a warning system for the Dubuclets' trailer (Opinion No. 2). *(See* Exhibit 2, Affidavit of Dr. Kenneth Laughery, at pg. 5).   It also concerns the warning label posted in the trailer by Fleetwood (Opinion No. 2). (*See* Exhibit 2, Affidavit of Dr. Kenneth Laughery, at pg. 6).  Fleetwood has testified that they knew about the formaldehyde issue since the early 80's.  They have also testified that as the result of that and the HUD standards that they spec'd the same type of HUD compliant components as those used in their manufactured housing.  Armed with that knowledge, the question becomes was it feasible for them to have language similar to that contained in the CFR § 280.309 Health Notice on Formaldehyde, as it pertained to their travel trailers.  Dr. Laughery addresses the feasibility of language similar to that contained in the CFR in his report.  (Exhibit 2, Dr. Laughery Affidavit,

---

[13] *Bloxom v. Bloxom*, 512 So.2d at 844 (emphasis added).

7

pg. 7). This would be particularly true when the trailers were used as permanent housing.

Fleetwood's deponent testified what he considers permanent housing to be

> Q. . . . Can you just briefly explain what the difference is as far as Fleetwood sees it between temporary housing and permanent housing as it relates to this industry.
>
> Permanent housing, and I think I used the term before, is like a permanent residence where something is set up, and it's there year-round, and people are living in it full-time year-round. That would be permanent in our minds.
>
> Temporary would be temporary use for shorter periods of time, not used every day 24/7, 365 times 5. (See Exhibit 3, Fleetwood 30(b)(6), Dep. Pg. 155, lines 8-17).

Elisha and Timia Dubuclet clearly fit Fleetwood's definition of permanent residents. They resided in the subject trailer from June 2006 to September 2007. (Exhibit 4, Plaintiff's PFS, pg. 1).

Dr. Laughery's opinions also address the conflict between the representations in Fleetwood's Owner's Manual, which state: **"Your trailer is not designed to be used as permanent housing"** (*see* Exhibit 5, Owner's Manual, Note 5-4) (emphasis added) and the label on the trailer which states:**"Emergency Living Unit/Not Intended for Recreational Purposes."** *See* Exhibit 6, Photograph.

When asked why there is a concern with regard to longer term use of the trailers as Fleetwood represents in its Owner's Manual, Fleetwood's corporate representative stated:

8

> A. . . . [W]e're trying to **warn** the consumer that we've
> developed it for temporary use, not full-time use. (Exhibit
> 3, Fleetwood 30(b)(6) deposition at 157, lines 10-12

(emphasis added).

Furthermore, Fleetwood's Owner's Manual addresses the issue of warnings several times. *See* Exhibit 5, Owner's Manual, at pg. 01-1 (PSC021472); pg. 03-1 (PSC021478); pg. 03-2 (PSC021479), and others.  At trial, Defendants are expected to ask Plaintiff a number of questions about: (1) warnings inside the trailer; and (2) warnings in the Owner's Manual and (3) knowledge and familiarity with warnings.  Plaintiff will be unfairly penalized in the presentation of her case if she is not permitted to counter Defendants' arguments with expert testimony.  If Defendants are permitted to question her about the warnings, and then argue to the jury what she knew or should have known about the warnings, Plaintiff should be permitted to present expert testimony that the warnings were not adequate, and did not comply with the requirements of the LPLA.

**IV.    Numerous other courts have allowed human factors and warnings experts in general, and Dr. Laughery specifically, to testify.**

Numerous other federal and state courts have affirmed the admission of testimony by human factors experts in general, and Dr. Laughery in particular.  As just one example, in *Smith*, the United States Tenth Circuit Court of Appeals affirmed the admission of testimony by

Plaintiff's human factors engineering expert.[14]  The human factors engineering expert in *Smith* was permitted to testify that: (1) Defendant failed to conduct an adequate human factors analysis of the product before marketing it;  (2) from the standpoint of human factors analysis, the lack of adequate visibility around the product and the noise, which prevented adequate communication among workers, made the machine unreasonably dangerous and defective;  (3) the product should have had mirrors to enable the operator to improve visibility; and (4) Defendants' claim that mirrors would create a false sense of security leading to more accidents, testifying the claim was a rationalization which had been tested and disproven in human factors literature.[15]  Noting that the expert lacked firsthand knowledge of the particular machine at issue, the court noted that "firsthand knowledge is not requisite to the admissibility of an expert opinion."[16]  To the extent that firsthand knowledge is relevant, "it goes, as the district court ruled, to the weight and not the admissibility of the testimony."[17]

In *Gean*, the United States Eleventh Circuit Court of Appeals cited Dr. Laughery's testimony concerning warnings with approval, in reinstating a jury verdict for the plaintiff.[18]

---

[14] *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235 (10th Cir. 2000).

[15] *Smith*, 214 F.3d at 1243.

[16] *Smith*, 214 F.3d at 1244; *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786 ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.").

[17] *Smith*, 214 F.3d at 1244.

[18] *Gean v. Cling Surface Co.*, 971 F.2d 642, 645 (11th Cir. Sept. 3, 1992) ("Dr. Kenneth Laughery gave expert testimony that the activity that Gean was performing at the time of the accident was

In *Freitas*, the Connecticut federal district court considered, and rejected, defendants' contention that Dr. Laughery's testimony about warnings was not "relevant" and would not assist the jury.[19] In finding that Dr. Laughery's testimony would assist the jury, the court permitted testimony concerning the adequacy of a warning on a tire that: (1) an adequate on-sidewall warning located between the tire size and inflation information would more likely than not be noticed and read, and would therefore more likely than not have averted the accident at issue in this case; (2) an adequate warning on the defendant's tire alone would more likely than not have averted the accident in this case.[20]

In *Meneely*, the Florida federal district court denied defendants' motion in limine to exclude the warnings testimony of Dr. Laughery, stating that:

> Indeed, a review of Dr. Laughery's curriculum vitae, deposition, and report of his analysis ... demonstrates that he is qualified as an expert and will be able to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.[21]

---

extremely hazardous. Further, the instructions that FMC sent with the pulley stated that maintenance on moving conveyors could cause injury, and a publication by the American National Standards Institute (ANSI) stated that maintenance generally should not be performed on moving conveyors.").

[19] *Freitas*. *Freitas v. Michelin Tire Corp.*, No. 3:94CV1812, 2000 WL 424187 (D. Conn. Mar. 2, 2000) (Squatrito, J.).

[20] *Id.*

[21] *Meneely v. Denman Tire Corp.*, No. GCA 93-10151-MMP, 1995 WL 902213 (N.D. Fla. July 20, 1995) (Paul, C.J.).

11

Dr. Laughery's warnings and human factors testimony has also been accepted in numerous other courts across the country, including:

- *Orellana v. Boro-Wide Recycling Corp.*, 18 Misc.3d 1105, 856 N.Y.S.2d 25 (N.Y. Sup. Dec. 19, 2007) (testimony that the failure to have an adequate warning was a substantial factor in causing the plaintiff's accident since if the cans had such a warning, they would not have been disposed of in the manner which led to the accident);

- *Reichner ex rel. Swinehart v. K-mart Corp.*, No. 3:00CV1392, 2005 WL 5988681 (M.D. Pa. Dec. 15, 2005) (Munley, J.) (denying motion to exclude testimony of Dr. Laughery);

- *Deleon v. Northrop Grumman Systems Corp.*, No. CIV-02-1379JC/RLP, 2004 WL 5524091 (D.N.M. July 14, 2004) (Conway, J.) (denying motion to exclude testimony of Dr. Laughery);

- *Dziewiecki v. Bakula*, 361 N.J.Super. 90, 824 A.2d 241 (N.J. Super. A.D. June 5, 2003) (discussing testimony of Dr. Laughery with approval), affirmed, 180 N.J. 528, 853 A.2d 234 (N.J. 2004);

- *Gibson v. Nissan Motor Co Ltd*, No. 00CV01282, 2002 WL 34382904 (D. Colo. Oct.23, 2002) (Kane, J.) (denying Daubert motion to exclude expert warnings opinions by Dr. Laughery).

Here, as in *Smith*, the jury should be permitted to consider and evaluate the expert testimony of Dr. Laughery. Defendant can vigorously cross-examine Dr. Laughery about his credentials, his report, the basis for his opinions, and any discrepancies between the report and other evidence in the case. As explained by the U.S. Supreme Court in *Daubert*, the traditional and appropriate means for Defendant to attack Plaintiff's expert's testing is through "[v]igorous

cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."[22] Dr. Laughery's testimony should not be stricken.

## CONCLUSION

Defendant's motion to strike Dr. Laughery's testimony should be denied.

---

[22] *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."), *cited by Gustings v. Travelers & Standard Fire Ins. Co.*, No. Civ. A 07-4443, 2008 WL 4948837 at *6 (E.D. La. Nov. 18, 2008) (Engelhardt, J.).

Respectfully submitted,

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:     */s/ Raúl R. Bencomo*
         RAUL R. BENCOMO (LA Bar #2932)
**PLAINTIFF'S STEERING COMMITTEE**

**COURT-APPOINTED PLAINTIFF'S
STEERING COMMITTEE**
GERALD E. MEUNIER (LA Bar #9471)
JUSTIN I. WOODS (LA Bar #24713)
LINDA J. NELSON (LA Bar #9938)
ANTHONY BUZBEE, TX (#24001820)
FRANK D'AMICO (LA Bar #17519)
MATT MORELAND (LA Bar #24567)
MIKAL WATTS, TX (#20981820)
ROBERT M. BECNEL (#14072)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon counsel for all parties by electronic mail (CM/ECF) addressed this 4th day of August, 2009.

         */s/ Raúl R. Bencomo*
         **RAÚL R. BENCOMO**

**EXHIBITS TO
PLAINTIFFS' OPPOSITION TO FLEETWOOD ENTERPRISES, INC.'S
MOTION TO EXCLUDE PLAINTIFFS' TESTING RESULTS**

Exhibit 1     Curriculum Vitae of Dr. Kenneth Laughery

Exhibit 2     Affidavit and Report of Dr. Kenneth Laughery

Exhibit 3     Fleetwood 30(b)(6) deposition - pages 155,157

Exhibit 4     Plaintiff's PFS, page 1

Exhibit 5     Owner's Manual, pg. 01-1 (PSC021472); pg. 03-1 (PSC021478);
              pg. 03-2 (PSC021479), and others

Exhibit 6     Photograph