UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-5"
JUDGE ENGELHARDT
MAG. JUDGE CHASEZ

THIS DOCUMENT RELATES TO:
*Bell v. Keystone RV Company, et al,*
No. 09-2967

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT KEYSTONE'S RULE 12(b)(6)
<u>MOTION TO DISMISS</u>**

**MAY IT PLEASE THE COURT:**

In its Motion to Dismiss under FRCP 12(b)(6), the defendant Keystone RV Company ("Keystone") asserts that plaintiff has failed to state a claim as a matter of law in several respects herein, mandating a dismissal as to the claim asserted in each instance. Plaintiff respectfully submits, however, that in nearly all respects the instant motion is without merit.

**1. Plaintiff does not offer Keystone's improper testing, marketing, distribution and licensing of travel trailers as stand-alone claims.**

Citing paragraph 102 at pp. 25-27 of the original Complaint in which Diana Bell is a named plaintiff (*Bell, et al v. Keystone RV Company, Inc., et al*, Case No. 09-cv-02967-KDE-ALC, Doc. 1, filed 3/02/09), defendant argues that the alleged failure to properly test, market, distribute and license Ms. Bell's housing unit does not state a cognizable claim under the Louisiana Product Liability Act ("LPLA"). What defendant fails to note, however, is that the introductory language in paragraph 102 alleges that the defects in the housing units which are

made the subject of the complaint are said to be "*the result of* and/or include...." the failure to properly test, market, distribute and license the unit. *See* Complaint, ¶102 (emphasis added).  In other words, plaintiff's unit is alleged to be defective, or unreasonably dangerous in normal or foreseeable use, because, among other things, it was not properly tested while in Keystone's control. Further, defendants did not properly warn the plaintiffs of any defects because, among other things, defendants did not properly marketed, distribute, or license the units.

Plaintiff agrees that for a product to be defective under the LPLA it must be proven to be unreasonably dangerous in construction or composition, design, based on the lack of a proper warning, or based on non-conformity with an express warranty. Plaintiff further agrees that this product liability action against Keystone must be based on proof of defectiveness under one or more of these statutory theories of product defect.  Without reference to one of these theories of defect, therefore, a mere allegation or theory based on the negligent failure to test the unit for formaldehyde levels, would not, standing alone, constitute a claim cognizable under the LPLA. But the complaint of Diana Bell does not allege that the failure to test or to properly market the product, for example, are stand-alone theories of negligence, separate and apart from the LPLA. The complaint alleges, rather, that one of the ways in which the defectiveness of her unit came about or resulted was from the manufacturer's failure to properly test, market, distribute and license the unit.  This is a factual allegation which plaintiff believes will be supported by the evidence.  The evidence is relevant to the theory of a product defect and improper warning under the LPLA.

This court already has denied a defendant manufacturer's motion to dismiss a "failure to test" claim in another bellwether case on the same basis urged in opposition to the instant motion (i.e., that the "failure to test" contention is no more than a factual aspect of a plaintiff's LPLA

case.) *See In Re: FEMA Trailer Formaldehyde Products Litigation*, No. 07-1873, Rec. Doc. 2322 at pp. 4-5 (E.D.La. 12/12/08). Moreover, several courts have recognized that testimony and evidence about a defendant manufacturer's failure to test a product *is* a proper part of a theory of product defect (in that particular case, because of the lack of warning). *See MacDonald v. Monsanto Company,* 1995 WL 581942 (5th Cir. 1995); *Linsley v. C.R. Bard, Inc.*, Case No. 98-207, 2001 WL 343358, at p. 6 (EDLA 3/30/2000). In *Macdonald*, the Fifth Circuit noted that the "LPLA does not recognize a cause of action for failure to test…, except insofar as the failure to test… renders the product unreasonably dangerous." *MacDonald*, *supra,* 1995 WL 581942 at *1. Further, while the district judge in *Linsley* granted summary judgment for the defendant because of the lack of evidence to support the inadequate warnings theory in that case, the Court nevertheless agreed to hear evidence about the defendant's failure to test the unit in considering whether the warning was inadequate. The evidence of the failure to test, in other words, was relevant to determine whether there was a product defect.

     Similarly, the plaintiff in this case will ask the jury to consider evidence that Keystone failed to properly test Ms. Bell's housing unit for formaldehyde levels before the unit left the manufacturer, and further, that the defendant improperly marketed, distributed and licensed Ms. Bell housing unit. Evidence about the failure to properly test the unit is relevant because plaintiff alleges that, as a consequence, the unit was rendered defective in composition and design, leaving the unit with an unsafe level of formaldehyde. Evidence about the improper marketing, distribution and licensing of the unit is relevant because plaintiff alleges that, as a consequence, Keystone did not adequately warn the plaintiff about potentially dangerous characteristics of the housing unit. Defects in construction and composition and inadequate warnings are explicitly listed as viable theories of recovery under the LPLA. *See* La. R.S.

9:2800.55-57.

Plaintiff therefore asks the Court to deny the instant motion to dismiss, in that it fails to focus on the claim of product defect under the LPLA as reflected in the complaint, and instead is addressed to an evidentiary aspect of that claim.  Even to this extent, the motion to dismiss is without merit, since evidence of the manufacturer's failure to test or properly market, distribute, and license the unit is relevant.

### 2. Plaintiff was a third-party beneficiary of the contract between FEMA and Keystone and can therefore state a claim for breach of implied warranty.

Keystone further alleges that the plaintiff cannot recover for a breach of the implied warranty of fitness in this matter, because (1) the LPLA only recognizes a breach of express warranties in cases against the manufacturer and (2) Ms. Bell was not the buyer or owner of the unit and therefore lacks privity to bring an implied warranty claim. However, Diana Bell may state a claim in redhibition if the court finds her to be a third-party beneficiary of the contract between FEMA and Keystone.

First, plaintiffs agree that the LPLA only provides for a breach of express warranty theory of liability, not a breach of implied warranty of fitness.  However, the LPLA reserves claims for damages under the Louisiana redhibition codes.  *See* LSA R.S. 9:2800.53(5).  *See also Morris v. United Servs. Auto. Ass'n.*, 756 So.2d 549, 561 (La. App. 2000). Under Article 2524, found in Book III of the Civil Code's chapter on redhibition, a product sold "must be reasonably fit for its ordinary use."[1]  Further,

---

[1] Plaintiffs recognize that the implied warranty provided under Article 2524 that a product must be fit for the buyer's intended use should not be confused or conflated with the warranty under Article 2520 against redhibitory vices. Nonetheless, LSA R.S. 9:2800.53(5) holds that the LPLA provides exclusive damages only to the extent that they are not covered by Chapter 9 of Title VII of Book III of the Civil Code entitled "Redhibition." Article 2524 falls within Chapter 9, and therefore, the LPLA's reservation of redhibitory claims should also apply to intended use claims under Article 2524.

4

> When the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose.

La. C.C. Art. 2524.

Here, Diana Bell has alleged that the Federal Government intended to use and purposely purchased the travel trailers to serve as temporary housing for the displaced victims of Hurricanes Katrina and Rita. (Complaint, ¶21-22). When the Federal *Emergency Management Association* sought to secure numerous trailers after the hurricanes, Keystone had *reason to know* that the Government's intended use would be to provide these trailers to homeless Gulf Coast residents as provisional shelters.

Second, Louisiana jurisprudence is clear – and Keystone admits – that no privity is required for a product user or consumer to assert a claim for the breach of a warranty of fitness for intended use in an action against the seller of the product. *See Media Prod. Consultants, Inc. v. Mercedes-Benz of America, Inc.*, 262 So.2d 377, 381 (La. 1972). In that matter, the Louisiana Supreme Court expressly held that the recovery of pecuniary damages resulting from the sale of a vehicle with latent defects, was available to the vehicle owner in an action against the seller/distributor under either an express warranty or implied warranty theory, notwithstanding the lack of privity to the sales agreement.

While Article 2524 and redhibitory actions typically involve only a buyer and seller of a thing having privity to the sales contract, there is Louisiana jurisprudence recognizing that redhibition is a remedy also available to third-party beneficiaries of the contract for the purchase of the thing at issue. In *Stelly v. Gerber Products Co.*, for example, it was expressly held that

> [c]onsumers might, as purchasers (<u>or third-party beneficiaries of a purchase</u>, c.c. art. 1890), bring an action in contract for breach of

5

the seller's warrant against redhibitory defects, art. 2476.

299 So.2d 529, 532 (La. App. 1974) [emphasis added].[2]

This court has previously held that a plaintiff in another bellwether case was not entitled to third-party beneficiary status in a contract between FEMA and a manufacturer. *See In Re: FEMA Trailer Formaldehyde Products Litigation*, No. 07-1873, Rec. Doc. 2322 at pp. 6-7 (E.D.La. 12/12/08). This court denied third-party beneficiary status to that plaintiff because 1) the *stipulation pour autrui* theory had not been alleged in the original Complaint for Damages or in any of the amended complaints, and 2) the court found that the benefit to the plaintiff was incidental to the contract between the manufacturer and FEMA. Plaintiffs respectfully request that the court reconsider for Diana Bell in the present motion.

First, Ms. Bell specifically pled in her original Complaint for Damages that "*FEMA contracted with... Keystone to purchase thousands of the housing units, primarily travel trailers, for provision to [Diana Bell] as temporary housing.*" Bell, et al v. Keystone RV Company, Inc., et al, Case No. 09-cv-02967-KDE-ALC, Doc. 1, ¶17, filed 3/02/09 (emphasis added). Here, plaintiffs pled that Diana Bell was the intended beneficiary of a contract between FEMA and Keystone – the very definition of a *stipulation pour autrui.* This allegation satisfies the minimal "notice pleading" requirement for Federal court under FRCP 8(a). That the defendants were notified of the plaintiff's intentions to claim third-party beneficiary status and pursue redhibition claims is self-evident in that Keystone specifically responded to such claims throughout its Memorandum in Support of its Motion to Dismiss. *See In Re: FEMA Trailer Formaldehyde*

---

[2] Although the Court in *Stelly* cited Louisiana Civil Code Article 1890 for the proposition that a third-party beneficiary of a purchase has the same standing as the actual purchaser in his redhibition case, perhaps a more accurate citation would have been to Civil Code Article 1981, which states that "[t]he stipulation gives the third-party beneficiary the right to demand performance from the promissor."

*Products Litigation*, No. 07-1873, Rec. Doc. 2221-2 at pp. 7, 9-11. (E.D.La. 12/12/08).

Second, as pled, Keystone and FEMA contracted for the purchase of thousands of trailers specifically to provide shelter to the displaced victims of Hurricanes Katrina and Rita. Plaintiffs submit that the benefit to Diana Bell, a homeless Gulf Coast resident, was much more than "incidental" – it was actually the chief reason that FEMA negotiated for the acquisition of travel trailers. The thousands of travel trailers were not intended to benefit FEMA as much as they were intended to benefit the Gulf Coast population that desperately needed shelter in the wake of a natural disaster. Therefore, plaintiffs respectfully request the court to reconsider its prior ruling on the third-party beneficiary status of plaintiffs with regards to the contracts between FEMA and the manufacturers. The instant motion under Rule 12(b)(6) cannot serve as a vehicle to make this determination, given the factual issues inherent in it.  On the present record, therefore, this aspect of defendant's motion is without merit and must be denied.

### 3. Plaintiff has sufficiently demonstrated an economic interest to support a loss of use claim.

Keystone asserts that Diana Bell cannot claim damages based on the loss of use of safe housing because she lacks an economic interest in such a claim.  In a prior ruling, this Court held as follows:

> ...[T]he Court concludes that Plaintiffs are not entitled to economic damages under the LPLA if Louisiana's redhibition laws do not allow recovery for the claimed economic loss.  However, because it is presently unclear whether and to what extent redhibition would provide recovery for Plaintiff's claims, the Court is unwilling to conclude that Plaintiffs have no remedy for economic loss damages in Louisiana.  Defendants' request for dismissal is denied.

*In Re: FEMA Trailer Formaldehyde Products Liability Litigation*, *supra*, 2008 WL 5217594, at p. 18.  Again, the instant motion is without merit, because this Court simply does not have a

7

sufficient record on which to determine whether the plaintiff Diana Bell was a third-party beneficiary of the purchase agreement between FEMA and Keystone, and in turn whether plaintiff may pursue a redhibition claim (to include a claim for economic damages) against the defendant Keystone as seller of a thing containing a redhibitory vice or defect.

Further, defendants mistakenly contend that the United States Fifth Circuit held that disaster victims do not have any property interests in receiving disaster assistance from the federal government. To the contrary, the court held that it "[could not] yet conclude that a property interest is entirely foreclosed…" as FEMA "may have sufficiently narrowed its discretion in the distribution of benefits to create a legitimate claim of entitlement in applicants." *Ridgely v. FEMA*, 512 F.3d 727, 739 (5th Cir. 2008). Accordingly, Diana Bell has potentially viable property interests in her travel trailer as a third-party beneficiary of the contract between FEMA and Keystone *and* as a disaster victim entitled to aid from the Federal Government. These sufficient economic interests support Ms. Bell's claim for loss of use and opportunity to use safe and adequate shelter during a period of displacement from a natural disaster.

**4. Plaintiffs did not intend to hold Keystone liable for damages caused by other parties.**

Plaintiffs agree that Louisiana Civil Code Article 2324(B)'s comparative negligence doctrine applies to LPLA claims. Regarding these claims, plaintiffs do not intend to hold Keystone jointly liable for the fault or damages caused by FEMA or any other defendant, but rather only for the harm for which Keystone is responsible. However, a Rule 12(b)(6) motion is still without merit in this instance, as Ms. Bell's pursuit of compensatory damages merely requires a clarification, not a dismissal for failure to state a claim.

**5. Breach of Express Warranty**

Plaintiffs agree with the defendants and concede that Diana Bell did not provide the proper allegations to state a claim for breach of express warranty under La. R.S. 9:2800.58.

For the foregoing reasons, plaintiff respectfully submits that the defendant's 12(b)(6) motion should be denied, except with regards to Ms. Bell's claims for breach of express warranty.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:      504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:      504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
ROBERT M. BECNEL, #14072

RAUL BENCOMO, #2932
FRANK D'AMICO, JR., #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL C. WATTS, Texas #20981820

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 4, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                          s/Gerald E. Meunier  
                                          GERALD E. MEUNIER, #9471