**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | 07-md-1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION: N(5) |
| | | * | |
| | | * | JUDGE: ENGELHARDT |
| | | * | |
| | | * | MAG: CHASEZ |

This document is related to:
   *Charlie Age, et al. v. Gulf Stream Coach, Inc., et al., No. 09-2892*
   *Aldridge, et al. v. Gulf Stream Coach, Inc., et al., No. 07-9228*
   *Lyndon T. Wright v. Forest River, Inc., et al., No. 09-2977*
   *Diana Bell et al. v. Keystone RV Company, et al., No. 09-2967*
   *Carrie Smith v. Recreation by Design, LLC, et al., No. 09-3957*
**************************************************************************

**FLUOR ENTERPRISES, INC.'S MEMORANDUM IN SUPPORT OF**
**MOTION TO CONTINUE FIRST TWO BELLWETHER TRIALS**
**AND REVISE REMAINING BELLWETHER TRIAL SCHEDULE**

Defendant, Fluor Enterprises, Inc. (Fluor), respectfully moves to continue the first two bellwether trials and all corresponding deadlines to give Fluor a fair and adequate opportunity to prepare for trial and conduct reasonable discovery, a right that has been accorded every other party in these matters, but under the present schedule will be effectively denied to Fluor. Additionally, the spacing of the bellwether trials is causing overlapping deadlines that are making it extremely difficult for those parties that have back-to-back trials (the Government, Fluor, and Shaw) to prepare adequately. Finally, recent procedural developments in the second bellwether trial concerning the plaintiffs' need to refile against the Government, make moving the second bellwether trial advisable.

The bellwether trials in which Fluor is joined as a defendant are (1) *Alana Alexander and Christopher Cooper v. Gulf Stream Coach, Inc., Fluor Enterprises, Inc. and the United States of America* (BW1), scheduled to commence on September 14, 2009, and (2) *Elisha Dubuclet o/b/o Timia Dubuclet v. Fleetwood Enterprises, Inc., Fluor Enterprises, Inc. and the United States* (BW2), scheduled to commence on October 26, 2009.  The court has mandated that these trials will last no longer than two weeks, although the latest witness lists filed by the parties, after the Court ordered the parties to pare down their witness lists—the plaintiffs and the Government filed a total of three witnesses lists—contain a total of 423 witnesses.  That is less an indictment of any party, but of a process that is forcing counsel to prepare for trial when discovery is not complete.

Fluor was only recently added as a defendant (January 21, 2009 in *Aldridge et al. v. Gulf Stream Coach, Inc., et al., No. 09-2892*) in this long-standing FEMA trailer formaldehyde product liability litigation in which some constituent cases have been pending for over two—the oldest over three[1]—years.  Fluor will suffer severe prejudice if forced to go to trial as early as September and October 2009, without adequate time to conduct discovery and prepare its defense, particularly due to the large volume of paper and electronic documents that were created during this massive project in which Fluor mobilized over 4,000 personnel and subcontractors and installed over 54,000 emergency housing units.  Ex. 1, Declaration of Charles R. Penot, Jr., at ¶¶ 2-3.  Fluor should have the opportunity to review and consider significant elements of its project file before being forced to prepare a defense literally "on the fly."

Fluor believes it would be well within its rights, and therefore reasonable to request, that these trials be continued until March or April 2010, to allow Fluor sufficient opportunity to prepare its case and adequately defend itself.  But Fluor is not doing so.  Fluor asks only that the

---

[1] The case of *Hilliard, et al. v. United States of America, et al.,* No. 06-2576, was filed on May 18, 2006.

BW1 trial be moved to the October 26, 2009 slot presently set for the BW2 trial; that the BW2 trial be continued until December 7, 2009, the present date on which the third bellwether trial is scheduled to begin; that the Forest River and Keystone trials both slide back one slot; and that one new slot be created in the time presently dormant between the fourth and fifth bellwether trials. Additionally, Fluor is requesting that all corresponding deadlines be extended consistent with their present proximity to the present trial settings. Alternatively, Fluor proposes that the BW1 trial move to the BW2 time slot, October 26, 2009, and all other bellwether trials remain as scheduled, with the exception of the BW2 trial, which would be continued until March or April, of 2010. The schedule proposed[2] is as follows:

|                | Current:  | Proposed: |
|----------------|-----------|-----------|
| Gulf Stream:   | 9/14/09   | 10/26/09  |
| Fleetwood:     | 10/26/09  | 12/07/09  |
| Forest River:  | 12/07/09  | 01/11/10  |
| Keystone:      | 1/11/10   | 03/22/10  |
| Rec. By Design:| 05/17/10  | 5/17/10   |

**PROCEDURAL HISTORY AND STATUS OF PRIOR DISCOVERY**

The FEMA trailer formaldehyde product liability litigation has been pending since 2006 – 2007. The MDL for these cases was created on October 24, 2007. Although these cases were filed as putative class actions, the Court denied class certification on December 29, 2008 (R. doc. 1014). Although merits discovery in these matters ostensibly began only in December 2008, significant discovery on class certification issues was previously conducted, including the conduct of over 100 depositions. The volume of documents exchanged in class discovery, much

---

[2] At a minimum, Fluor requests that the present August 10, 2009 deadline in BW1 for filing dispositive motions be extended to August 17, 2009.

of it significant and relevant to merits issues, include no less than 166 CDs and DVDs of data and 44,418 pages of hard copy documents.  Ex. 1, Declaration of Charles R. Penot, Jr., at ¶ 4.  No party, plaintiff or defendant, was able to provide Fluor with an index or listing of the entire class discovery.  Fluor's counsel personally had to confer with manufacturers' liaison counsel's staff, PSC member, Ms. Linda Nelson, Choice copy service, numerous court reporting services and other parties to the litigation to piece together and collect the class discovery, much of which was not obtained until some time in May 2009.  *Id.*  The bottom line is that during discovery regarding class certification issues, a significant amount of factual information pertaining to the merits of these cases was revealed when neither Fluor, nor any of the other contractor defendants, was a party to these proceedings.

Subsequent to this massive discovery effort among the original parties, the Court allowed joinder of Fluor, and three other IA-TAC contractors of FEMA, on January 21, 2009.  Fluor was not even served with the *Age* suit (from which the Bellwether I/Gulf Stream plaintiffs were drawn) until April 29, 2009 and was served with the *Aldridge* suit on January 28, 2009, although that suit has been amended 3 times, the latest on July 17, 2009.  More importantly, Fluor—as well as the other parties—did not even learn which *Aldridge* plaintiff would serve as the BW2 trial plaintiff until June 15, 2009, after the plaintiffs dismissed the first party that was to serve as the plaintiff in the BW2 trial.  On May 11, 2009, Fluor made its *first formal appearance* in any of the MDL constituent case, filing its Preservation of Federal Rule of Civil Procedure 12(b) Defenses, although the Court had directed that Fluor and the other contractor defendants begin appearing at status conferences and taking positions on various proposed case management orders before they were even properly brought before the Court by service.  *See* Penot Declaration, at ¶ 5; [R. Doc. 1452].

On April 8, 2009, this court entered trial scheduling orders for the two initial bellwether trials, and Fluor learned for the first time that it is going to trial in just a few months, first on September 14, 2009 (a mere 5 months and 6 days from notice) and again, right on the heels of that trial, on October 26, 2009 (a mere 6 ½ months, but with intervening discovery and trial), in what can only be described the fastest of fast-track, "rocket docket" litigation.[3] While this schedule can at best be described as challenging for those parties who had spent the past two to three years in the litigation, it can only be described as unfair and virtually impossible for parties only just joined in litigation of this vintage.

Also, on April 8, 2009, the date this court entered the scheduling orders for these trials, the deadline for adding third parties was already past (March 23, 2009).[4] The initial scheduling order for the BW1 trial has required almost constant amendment due to its incredibly ambitious nature.

The challenge of the BW1 schedule is compounded when one considers the overlap of BW2 schedule. These compressed and overlapping deadlines are creating an overwhelming burden, not only for Fluor and its counsel to participate in this avalanche of discovery and trial preparation, but for all parties and counsel. For example, from May 23, 2009 through August 3, 2009, Fluor—and most other parties in the five bellwether trials—have participated in 65 depositions. Another 12 depositions are presently scheduled between August 4 and August 12,

---

[3] *See* Ex. 2. 2007 Annual Report of the Director of the Administrative Office of the United States Courts, James C. Duff, Table C-10, Median Time Intervals from Filing to Trial of Civil Cases in which Trials Were Completed, by District, *available at* http://www.uscourts.gov/judbus2007/contents.html (last visited 4 August 2009)(copy attached as Ex. 3). Fluor is being required to prepare and try its case in less time than the median time from filing to trial in the Eastern District of Virginia, a Court known for its "rocket docket." Median time from "filing to trial" during the 12 month period ending 9-30-07, for Eastern District of Virginia was 8.2 months (in 17 jury trials). The Charlie Age suit (BW1) was filed on 2-27-09; the time from filing to trial on 9-14-09 is less than 7 months. But Fluor did not even know it was going to trial in September until the first week of April 2009, barely 5 months before trial. For all federal courts, the median time is 25.2 months for jury trials; for the district courts in the U.S. Fifth Circuit, the median time is 20.6 months, and for the Eastern District of Louisiana it is 19.5 months. *Id.*

[4] See Trial 1 Scheduling Order, R. Doc. 1305 and Trial II Scheduling Order, R. Doc. 1306.

2009, for a total of 77 depositions. This does not include another approximately 8-10 depositions that are being planned at any one time, but have not made it to the stage of being noticed. The parties have triple and quadruple-tracked depositions at times. *See* Ex. 1, Penot Declaration, at ¶ 6.

The compact nature of the trial schedules is causing innumerable disputes and scheduling conundrums, when for example during the week of August 10, 2009, both the Forest River and Fleetwood testing, much of which is to be done by the same experts, are scheduled to commence.

Plaintiffs have served a total of 34 expert reports between the first two bellwether trials, and defendants have served another 17 in the first bellwether trial only, their deadline to disclose such reports in the second bellwether trail, constantly moving, having not yet arrived.

Moreover, in its scheduling orders, the Court has recognized that the two bellwether cases "**d[o] involve extensive documentary evidence, depositions or other discovery.**"[5] The court could neither be more correct, nor understated. At the height of Fluor's response to Hurricanes Katrina and Rita, it had a total of almost 4,000 people either employed by it or its subcontractors working on the response effort. Ex. 1, Penot Delcaration, at ¶ 2. As the project came to a close and long before Fluor was sued in this MDL, Fluor, due to other then-existing or reasonably anticipated litigation, completed and placed a legal hold on paper and electronic documents and data that amount to approximately 1,300 boxes of paper documents and 1.5 terabytes[6] of electronic data. In responding to discovery requests, which Fluor has yet to complete, Fluor has already produced 25,284 pages of documents consisting almost entirely of paper document discovery. Ex. 1, Penot Declaration, at ¶ 7.

---

[5] BW1 and BW2 Scheduling Orders, R. Docs. 1305 and 1306.
[6] A terabyte is approximately 1,024 gigabytes of data. Translating file size measurements to pages of text is not an exact science, but by one measure Fluor potentially has about 1,500 truck loads of printed text in electronic form that was generated in connection with the Katrina/Rita response. *See* RALPH C. LOSEY, E-DISCOVERY, CURRENT TRENDS AND CASES (ABA 2008) at 291 (copy attached as Ex. 4).

1.      No meaningful electronic discovery has taken place.  Given the volume of electronic data and the cost of preparing and reviewing the same for production, Fluor like other parties to this litigation, refused to undertake electronic discovery without agreement on search terms, a search protocol and an agreement on cost shifting.  Ex. 1, Penot Declaration, at ¶ 8.  Undersigned counsel personally conferred with plaintiff trial team member, Robert Hilliard, in an effort to decide how to address electronic discovery.  On June 3, 2009, Mr. Hilliard provided Fluor for the first time with a list of search terms that plaintiffs wanted Fluor to use as part of an electronic discovery search protocol.  *Id.*

The PSC refused to agree to cost shifting.  Ex. 1, Penot Declaration, at ¶ 9.  As much of a stumbling block as that might be, in this case it was not even an issue that produced serious negotiations, as Fluor and the plaintiffs never came up with search terms and a search protocol that would yield a reasonable amount of electronic data that could be digested by either party before the discovery cutoff.  For example, using the plaintiffs' proposed search terms, Fluor ran a test on the email boxes of just one custodian that plaintiffs anticipated deposing.  Ex. 1, Penot Declaration, at ¶ 10. The search terms only reduced the volume of emails roughly in half, from 2,515 to 1,257 messages.  Although seemingly promising, given the volume of email traffic on a project of this magnitude, half of a very big number is still a very big number.  Additionally, that was a sample of one email custodian.  When a larger sample was taken (7 custodians), it appears that the search terms are yielding only about a 19-20% reduction in emails to be reviewed (from 22,836, to 18,560).  Ex. 2, Affidavit at Robert Lief, at ¶ 5.  However, Fluor is certainly entitled to review in some fashion its electronic files that it created and produced while working for the federal government in order to explain its actions in the face of the accusations made against it.

As a further example of how these scheduling orders are placing an unreasonable burden on the litigants, particularly the late-joined contractors, Fluor has asked for an estimate from an ESI vendor to utilize some of the most current document "de-duping" and culling software. Assuming Fluor limited its electronic discovery efforts to only 50 email custodians and would not run searches on the electronic portions of the project file (a potential source of significant file materials), and assuming Fluor committed 5 persons, fully knowledgeable about the case to do nothing but review documents 8 hours a day.  Further assuming that those people could make 50 document decisions an hour (a very ambitious pace), it would take $466,000 of vendor costs (not including any cost for review time by lawyers and paralegals) and 101 days **just to get to the point of producing Fluor's electronic data.** Ex. 2, Affidavit of Robert Lief, at ¶ 6.

As further indication that this schedule has pressed everyone beyond the limits of a reasonable work pace, the Court granted an expedited hearing on discovery matters without providing Fluor or contractors' Liaison Counsel notice of the hearing *until after the hearing was conducted*.  Ex. 1, Penot Declaration, at ¶ 12 and [R. Docs. 1821 and 2035].  While the motions involved disputes, most directly between co-defendant Gulf Stream and plaintiffs, as a party to the litigation that can undoubtedly be affected by such discovery rulings, Fluor was of course entitled to the most fundamental elements of procedural fairness, notice and an opportunity to be heard.  This problem has now been remedied, but the point is that the Court's admirable desire to keep things moving, has caused the Court itself to inadvertently overlook something as basic to the system as notice and the right to be heard.

Further logic for reshuffling the trial schedule can be found in the Court's ruling of Friday, July 24, 2009 (R. Doc. 2323), which makes it clear that the Bellwether II plaintiff's claim against the Government is not ripe and as such the Court does not have jurisdiction over the

Government in that case. Is that case to be tried once without the Government, and another time with it as a defendant?

On June 8, 2009, the Plaintiff's Steering Committee (PSC) filed a motion to continue the Fleetwood bellwether trial scheduled to commence on October 26, 2009, requesting a continuance of that trial until March or April of 2010[7]. The Court denied the motion. Fluor respectfully submits that an adjusted trial schedule is the only way to come close to offering Fluor a reasonable time within which to mount a defense to litigation to which it was belatedly joined.

### FLUOR WILL BE SEVERELY PREJUDICED IF IT IS REQUIRED TO GO TO TRIAL ON SEPTEMBER 14, 2009 AND OCTOBER 26, 2009

The Gulf Stream case is presently set for trial in a little over a month. It is unreasonable to expect Fluor to be in a position to present a meaningful defense to the claims in this matter at a trial set as soon as September 14, 2009. This is especially true given the extensive discovery required days before the Bellwether II trial discovery cutoff. Given the volume of past pleadings and discovery in these cases, the number of technical and medical issues, and the ongoing and incomplete discovery at this stage of the proceedings, Fluor should not be made to stand ready for two trials in September or October 2009.

Unlike the Government, the manufacturer defendants and the plaintiffs, Fluor and the other contractor defendants are novices to this litigation. While plaintiffs and the other defendants had the benefit of many experts retained during the class certification stage, Fluor was required to retain experts on virtually a moment's notice, when its knowledge of the facts was extremely limited.

---

[7] R. Doc. 1694.

Further, based on the current September and October 2009 trial dates, Fluor is effectively precluded from filing motions for summary judgment that would provide it any type of meaningful relief, given the imminent trial dates. For these reasons, Fluor will be severely prejudiced by the present trial settings.

The PSC recognized these and other concerns in its motion to continue the Fleetwood bellwether trial.[8] As the PSC advocates, continuance of the Fleetwood trial (BW2) would facilitate a practical scheduling order, would not unduly complicate the remaining bellwether trial tracks, and would promote a more thorough and better prepared trial for all parties involved in deference to both the individual claims and defenses at issue and the overall goal of truly instructive outcomes.[9] With a rescheduling of the Fleetwood trial, the same problems could be mitigated with only a slight delay in the BW1 trial.

### A.    Good Cause Exists For a Continuance of These Trials

Good cause exists for continuing the Gulf Stream and Fleetwood trials and related deadlines. Fluor's late entry into this litigation is the result of delay on the part of the PSC. Fluor did nothing to conceal its involvement with the FEMA trailer projects or to prevent the parties from moving forward with discovery in a timely manner. Indeed, Fluor's alleged role with the FEMA trailer placements has been long known by plaintiffs' counsel since the inception of this MDL litigation. Since first being joined in these cases, counsel for Fluor has diligently communicated with opposing counsel in an effort to ascertain the allegations against it in these suits and to participate in ongoing discovery. Fluor has participated in 77 depositions since March 28, 2009, responded to numerous inquiries from the court and liaison counsel, requiring participation on substantive issues and produced over 25,000 pages of documents. Fluor has

---

[8] R. Doc. 1694.
[9] R. Doc. 1694, p. 3.

seven experienced lawyers assigned to this matter, and Fluor has devoted approximately 757 hours of personnel time to assisting the efforts of Fluor's counsel.  Yet, despite Fluor's diligent efforts, there is simply not enough time to participate in meaningful discovery and prepare its defense for September and October 2009 trials. Ex. 1, Penot Declaration, at ¶ 13.

The aggressive discovery schedule currently set for the Gulf Stream and Fleetwood cases, combined with the massive discovery already conducted in the MDL, precludes Fluor from meaningfully participating in the discovery process and adequately preparing its defense for trial. The depositions of many of the experts and fact witnesses for the multiple parties involved in the Gulf Stream and Fleetwood trials have not yet been taken or completed.  Most significantly, Fluor still needs at least the following discovery in the BW1 case:  1. Documents and a corporate deposition of Union Carbide/Dow Chemical (at whose plant the Alexander trailer was first installed); 2.  Depositions of the installers of the Alexander trailer on the initial install (3 witnesses); 3. Possibly depositions of the FEMA contracting officer's technical representative in March of 2006 (Tom Nadsady) and Fluor's liaison with the COTR at that time, no longer employed by Fluor and beyond the subpoena power of this Court (Jim Rammell). 4.  Possibly depositions of other former Fluor employees who either inspected the Alexander trailer or "leased-in" Ms. Alexander. 5. Preservation of the testimony of a Fluor employee (safety director on the Hurricanes Katrina and Rita response) now located in Perth, Australia.  6.  Most importantly, time to try to located targeted electronic data and equally as important time to consider it. Ex. 1, Penot Declaration, at ¶ 14.

**B.	A Late-Joined Party Is Entitled To A Continuance Of The Trial Date To Prepare A Summary Judgment Motion.**

When a party, such as Fluor, is brought into litigation well into the case, that party should be given at least enough time to reasonably complete discovery and prepare a summary judgment motion.  See Polibrid Coatings, Inc. v. Superior Court, 112 Cal. App. 4th 1920, 1923-24 (2003). Fluor has not had sufficient opportunity to conduct discovery, and there is minimal time left to prepare for trial or to craft a summary judgment motion by the July 27, 2009 deadline in Gulf Stream or the August 25, 2009 deadline in Fleetwood.

In Polibrid Coatings, Inc., a defendant sought a continuance of the trial to give it adequate time to perform sufficient discovery to prepare and schedule a timely motion for summary judgment.  The California state appellate court granted the defendant's petition for writ of mandate, finding that the fast track rules had to give way to the defendant's statutory right to bring a summary judgment motion.  The California fast track rules put an outside limit of two years from the filing date to the trial.  The court instructed that the courts retain the power to exempt a civil case from timed disposition goals if it involves exceptional circumstances that prevent the court and parties from meeting those goals.  Id. at 923.  The court emphasized that in a case where the litigant is brought into the litigation after 14/24ths of the time to litigate has passed, certain factors dictate at least enough time for that party to reasonably complete discovery and bring a summary judgment motion.  Id.

Similarly, here, Fluor will suffer actual and substantial prejudice if required to litigate the Gulf Stream case on September 14, 2009.  The other parties have had substantially more time to prepare for this case and Fluor should be afforded the same amount of time.  Fluor has had insufficient time to synthesize all of the discovery depositions, documents produced and pleadings to prepare and file a substantive motion for summary judgment by the deadlines set

forth in the scheduling orders for the first two bellwether trials. Ex. 1, Penot Declaration, at ¶ 15. Further, Fluor was belatedly brought into this litigation and it is the lone defendant in the first two bellwether trials without the intrinsic knowledge or advantages of other parties who have participated in this litigation long before Fluor. Failure to continue the first two bellwether trials involving Fluor, and corresponding deadlines, will cause irreparable harm to the rights of Fluor.

While it is within the wide discretion of the court to grant or deny a continuance of a trial date and to control its docket,[10] it is respectfully submitted that the facts, issues and fairness dictate that a continuance of the Bellwether I/Gulf Stream trial to October 26, 2009 and the Bellwether II/Fleetwood trial until March or April of 2010 would be in the best interest and justice of all parties. See e.g. In re: Bank of Louisiana/Kenwin Shops, Inc., Contract Litigation, 1999 U.S. Dist. Lexis 8043 (E.D. La. 1999) (motion to continue trial granted where it was grossly unfair to force defendants to trial in five weeks when plaintiff failed to produce materials that it was previously ordered to produce, and defendants would be required to prepare for trial while preparing opposing responses to the substantive motions filed by plaintiff and continue with outstanding discovery).

This request for continuance will not prejudice the other parties or unduly inconvenience the court, since continuing the first bellwether trial to October 26, 2009 and the second to December 7, 2009 (or March 22, 2010) would facilitate a practical scheduling order, and would not delay the overall bellwether trial schedule. Such a continuance would still have the trials beginning within 42 days of the Court's initial plan, while providing Fluor at least a modicum of time to prepare its case and defend itself adequately as well as allow all the parties appropriate time to place these cases in a proper posture for trial.

---

[10] See C. S. vs. Waldman, 579 F.2d 649, 654 (1st Cir. 1978); Brooks v. U.S., 64 F.3d 251, 256 (7th Cir. 1995).

Fluor fully appreciates that an expedited and efficient process is desirable for resolution of this MDL litigation, but Fluor should not be compelled to prepare its case on such an expedited basis at lightening speed which can only operate to substantially compromise its defense, particularly when the Court desires that the outcome of these bellwether cases provide meaningful guidelines for a global resolution of what the PSC asserts is 70,000 claims. Justice delayed may be justice denied; but expediency without regard to fairness can only result in a fundamental injustice.

Respectfully submitted,

**MIDDLEBERG, RIDDLE & GIANNA**

        /s/ *Charles R. Penot, Jr.*

Charles R. Penot, Jr. (La. Bar No. 1530 &
Tx. Bar No. 24062455)  **T.A.**
717 North Harwood, Suite 2400
Dallas, Texas 75201
Telephone: (214) 220-6334
Facsimile:  (214) 220-6807

        -*and*-

Dominic J. Gianna, La. Bar No. 6063
Sarah A. Lowman, La. Bar No. 18311
201 St. Charles Avenue, Suite 3100
New Orleans, Louisiana 70170
Telephone: (504) 525-7200
Facsimile: (504) 581-5983

        -*and*-

Richard A. Sherburne, Jr., La. Bar No. 2106
450 Laurel Street, Suite 1101
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7700
Facsimile: (225) 381-7730

**Attorneys for Fluor Enterprises, Inc.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sends notice of electronic filing to all counsel to be noticed in the MDL proceedings, including primarily court-appointed liaison counsel, who are CM/ECF participants. Copies of this pleading were sent by email and U.S. mail to:

Justin Woods
Gerald Edward Meunier
Gainsburgh, Benjamin, David,
Meunier & Warshauer
Energy Centre 1100 Poydras Street
Suite 2800
New Orleans, LA 70164-2800

Henry T. Miller
Adam T. Dinnell
Senior Trial Attorney
U.S. Department of Justice
Civil Division
1331 Pennsylvania Ave., NW
Room 8220-N
Washington, DC 20004

Andrew D. Weinstock
Duplass, Zwain, Bourgeois, Morton
Pfister & Weinstock
Three Lakeway Center
3838 N. Causeway Blvd.
Suite 2900
Metairie, LA 70002

M. David Kurtz
Baker Donelson Bearman Caldwell
& Berkowitz
201 St. Charles Avenue
Suite 3600
New Orleans, LA 70170

Robert C. Hilliard
Hilliard Munoz Guerra l.l.p.
719 S. Shoreline Blvd.
Suite 500
Corpus Christi, TX 78401

Mikal C. Watts
Watts Guerra Craft
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257

Anthony G. Buzbee
The Buzbee Law Firm
600 Travis, Suite 7300
Houston, Texas 77002

                                          */s/  Charles R. Penot, Jr..*

ND: 4827-2538-7011, v. 3