UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE<br>PRODUCTS LIABILITY<br>LITIGATION | * * * * * | MDL NO. 1873<br><br>SECTION: N(5) |
| This Document Relates to: *Lyndon T. Wright. v.*<br>*Forest River, Inc., et al*, Docket No. 09-2977 | * * * | JUDGE ENGELHARDT:<br><br>MAG: CHASEZ |

*******************************************************************

## DEFENDANT FOREST RIVER, INC.'S MEMORANDUM IN SUPPORT OF FLUOR ENTERPRISES, INC.'S MOTION TO CONTINUE FIRST TWO BELLWETHER TRIALS AND TO REVISE REMAINING BELLWETHER SCHEDULE

**MAY IT PLEASE THE COURT:**

Defendant Forest River, Inc. ("Forest River") joins in the Motion to Continue filed by Fluor Enterprises, Inc. (Fluor) [Rec. Doc. 2507] to the extent that it recommends pushing back the current deadlines and trial date for the Forest River bellwether trial. Given the Court's recent decision to allow plaintiff Lyndon Wright to proceed with mold exposure claims, Forest River respectfully requests that the bellwether trial be continued until May of 2010, with all associated deadlines moved as well.

By way of review, on April 6, 2009, the Court rendered Pre-Trial Order No. 34, which confirmed Wright as Forest River's first trial plaintiff. [Rec. Doc. No. 1299]. Wright's initial plaintiff fact sheet ("PFS"), submitted in February of 2009, contained no reference to mold

exposure inside the trailer, and his supplemental PFS, dated April 14, 2009, was similarly silent on that issue. On June 24, 2009 -- more than two months after filing suit -- Wright filed a Motion for Leave to File First Supplemental and Amended Complaint, seeking to add new claims of mold exposure. [Rec. Doc. 1862].

As this Court is well aware, because the focus had been on alleged formaldehyde exposure to that point, the mold claims threw quite a wrinkle into the trial plans of all parties. Although ultimately allowing Wright to amend his Complaint to add mold exposure allegations, the Court set forth two significant alterations of the schedule. [Rec. Doc. 2201]. First, contrary to a prior Order, the Court allowed mold testing to be included with the previously approved air sampling, ventilation, and destructive testing. *Id.* Further, plaintiff's expert report deadline, which had been originally set for July 22, 2009, was revised; the new Order required that preliminary expert reports be provided by July 29, 2009, with complete reports to be submitted by September 1, 2009. *Id.* Defendants' expert reports are due less than one month later, on September 25, 2009. *Id.*

Unfortunately, this one month extension of the expert report deadlines is simply not sufficient to allow for the parties to complete testing and perform a full analysis of both the formaldehyde and mold issues. For the reasons described more fully below, Forest River requests that the trial be continued until May of 2010.[1]

Even before the interjection of the mold issue, the *Wright* bellwether was destined to be the most complex bellwether trial of the five scheduled thus far. Unlike in the Gulf Stream and Fleetwood trials, the Court allowed for complete retesting, including additional air sampling,

---

[1] Forest River recently learned from liaison counsel that the Court was considering rescheduling the *Wright* bellwether trial for May of 2010. With the complexity of testing and addition of mold allegations, Forest River submits that a May trial date will allow all parties to prepare properly for trial. Forest River's only request is that, due to undersigned counsel's prior commitment to attend his son's graduation from Wharton & University of Penn., the trial not begin until May 18th or 19th.

2

ventilation testing, jacking, and destructive testing of the Forest River unit. These tests are underway and will continue for the next four to five weeks. This additional round of testing and expert analysis will create scheduling hardships, as Forest River must provide its expert reports only 24 days after receipt of plaintiff's final reports on September 1, 2009. Deposing these experts, many of whom will be participating in the Gulf Stream trial in September, will likely present significant difficulties. Forest River's trial preparation will be negatively impacted as a result, and the *Wright* trial date should be moved accordingly.

However, even if one were to ignore the obstacles associated with testing, the recent addition of Wright's mold claim alone justifies a continuance of the trial until May 2010. These mold allegations have fundamentally altered the nature of this case and the manner in which all parties will prepare for trial. This is no longer a formaldehyde case, *i.e.*, one which the parties have been preparing and dissecting for months, but a formaldehyde and mold case. As such, all the complexities and variables that normally accompany the myriad of mold exposure cases are potentially at play here, but with the added formaldehyde exposure component.

Additional mold experts will now need to be retained to determine the speciation, extent, and cause of mold growth inside the unit. Medical experts will then need to evaluate the impact of mold on Wright's health. Those experts who were previously preparing for the formaldehyde side of the case may now need to re-evaluate their analyses in light of the alleged mold exposure. As the Court implied on the conference call on July 17, 2009, there may be significant motion practice arising out of the mold allegations; since the trailer has been stored in the middle of a FEMA storage lot for months on end, one might expect challenges to expert testimony on mold exposure. Forest River will have little time to digest the September expert reports and engage in meaningful motion practice with the compressed expert deadlines, and one can only assume that

all other parties would be in a similar position. Since the Court has ordered that *Wright* be the only bellwether to involve mold allegations, it is imperative that the parties in this case be allowed time to flesh out their arguments in full top address these topics. A May trial date would provide that much needed time.

Further, on a logistical level, a continuation of the *Wright* bellwether trial will help to prevent delays that are, frankly, inevitable if the current schedule remains in place. Testing began on Monday, August 3, 2009, and the multitude of tests to be performed – air sampling, ventilation testing, jacking, mold testing, and destructive testing – will continue through the month of August and conclude during the first week of September. After obtaining samples from the trailer, plaintiff has then reserved the right to conduct more extensive mold and/or chamber testing of the samples; this testing would necessarily occur in mid or late September. *See* plaintiff's protocol, attached as Exhibit "A." The Court's Order requires that plaintiff's expert reports be provided on September 1, 2009. Not surprisingly, plaintiff's counsel has already made some preliminary indications that the September 1st expert report deadline may need to be pushed back. Any such delay would cause an already tight schedule to become unworkable.[2] Further, the current testing schedule assumes that the weather will cooperate everyday. With the most active period of the hurricane season fast approaching and the potential for numerous rain delays during the month of August, it is difficult for Forest River to be optimistic that the testing will remain on schedule.

Aside from testing at the FEMA site, additional medical examinations of Wright will undoubtedly be necessary. At the time of Wright's prior June 1, 2009 IME, the defendants were unaware of the existence or extent of Wright's alleged mold exposure. A supplemental IME will

---

[2] For instance, if plaintiff's expert reports are not provided until mid or late September, Forest River questions how the depositions of plaintiff's fifteen experts can be completed in a timely manner, or how Forest River's expert reports could be completed by September 25.

likely be needed to examine Wright's mold-related illnesses. Moreover, Wright's own medical causation experts have admitted that, without results from the current round of testing, they cannot render any final conclusions. Dr. Farber, a dermatologist retained by plaintiff, notes in his preliminary report that:

> The Ige Testing that ws [sic] done on Mr. Wright indicates there is a sensitization/allergy to certain types of mold/fungus. . . . In order to be specific, whichever mold is detected in the trailer by a testing company that specializes in mold evaluation and detection, would have to be tested specifically to Mr. Wright. . . . An evaluation of the specific trailer in which Mr. Wright lived will be provided in the coming weeks and I will supplement my report based upon the information contained therein.

*See* Farber report, attached as Exhibit "B."

Dr. Lawrence Miller, a toxicologist and pulmonologist retained by plaintiff, examined Wright in late July. His report notes that Wright claimed "extensive mold in his FEMA trailer" and reserved the right to supplement his report pending the mold speciation testing. *See* Miller report, attached as Exhibit "C."

Perhaps even more significant to Wright's current health is the preliminary expert report of Dr. Spector, an otolaryngologist (ENT) retained by plaintiff. Dr. Spector examined Wright on July 20, 2009; he found a 1.5 cm smooth, rounded soft mass in the left tongue base. His report states:

> <u>At the conclusion of this office visit, I am most concerned about the mass at the base of Mr. Wright's tongue. Based upon his history, the bloody mucous may arise from this mass . . . . To evaluate possibilities, I ordered a series of tests.</u>

*See* Spector report, attached as Exhibit "D" (emphasis in original). Spector ordered a CT of the paranasal sinuses as well as the soft tissue of the neck; a surgical biopsy was scheduled for July 29, 2009, but plaintiff has never provided any results from this test. *Id.* Spector admitted in his report that, "At this time, I cannot establish diagnoses or underlying cause(s) for Mr. Wright's complaints." It is clear that neither Dr. Spector nor, by

5

extension, plaintiff's counsel, has a firm grasp of Wright's injuries, let alone the cause of those injuries. Forest River questions how the defendants can prepare for a December 2009 trial date when the plaintiff has been unable to identify the extent and cause of his injuries as late as August of 2009.

## CONCLUSION

The Court's July 2009 Order allowing Wright's mold claim to go forward compounded an already rushed schedule. Already mired in the preparation for retesting the unit, the parties have now been forced to hit the "restart" button for many of the medical causation analyses in the case. Compared to the other bellwethers, *Wright* will undoubtedly be the most complex and nuanced case due to the additional testing of the unit and recent mold exposure allegations. Forest River therefore requests that the Court continue the trial until May of 2010 to allow additional time for proper discovery and trial preparation.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (La. State Bar No. 6154)
JASON D. BONE (La. State Bar No.28315)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

## CERTIFICATE

I hereby certify that on the 10th day of August, 2009, a copy of the foregoing Notice of Hearing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone

JASON D. BONE