UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE | * | MDL NO. 07-1873 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION "N" (5) |
| THIS DOCUMENTS IS RELATED TO: | * | |
| CIVIL ACTION NO. 07-9228 | * | JUDGE ENGELHARDT |
| *Aldridge, et al. vs. Gulf Stream Coach, Inc., et al.* | * | |
| *(Elisha Dubuclet obo Timia Dubuclet vs. Fleetwood* | * | |
| *Fluor Enterprises, Inc. and FEMA)* | * | MAG: CHASEZ |

**************************************************************************

### NOTICE OF CONTINUATION OF VIDEOTAPED FEDERAL RULE 30(B)(6) DEPOSITION OF FLEETWOOD ENTERPRISES, INC., ET AL.

TO:  Fleetwood Enterprises, inc., et al
     Through its respective counsel,
     Jerry L. Saparito
     Leake & Andersson, L.L.P.
     1700 Energy Centre
     1100 Poydras Centre
     New Orleans, LA 70163-1701

TO:  United States Government
     Through its respective counsel
     Henry T. Miller, Esq.
     Senior Trial Attorney
     U.S. Department of Justice,
     Civil Division
     1331 Pennsylvania Ave., N.W.
     Room 8220-N
     Washington, D.C.  20004

TO:  Fluor Enterprises, Inc.
     Through its respective counsel
     Charles R. Penot, Jr., Esq.
     Middle Riddle & Gianna
     717 North Harwood, Ste. 2400
     Dallas, TX 75201

**PLEASE TAKE NOTICE** that Plaintiff, Elisha Dubuclet on behalf of Timia Dubuclet, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, will take the continuation video-taped deposition of one or more officers, directors, managing agents or other persons designated by

**FLEETWOOD ENTERPRISES, INC.**, to testify on its behalf concerning the matters as set forth on Exhibit A attached hereto.

This deposition will take place on **Tuesday, August 18, 2009**, at **9:00 a.m., PST at The Mission Inn Hotel, 3649 Mission Inn Avenue, Riverside, California 92501;** (951) 784-0300, or as otherwise agreed upon. The deposition will continue from day to day thereafter, weekends and holidays excluded, until complete. The depositions will be taken before a Notary Public or some other officer authorized to administer oaths under the law. You are invited to attend and examine the witnesses if you so desire. Defendant is requested to designate and identify each officer, director, or managing agent, or other persons who will testify on its behalf, and to set forth, for each person designated, the matters on which the person will testify.

Plaintiffs reserve the right to record the deposition stenographically, as well as by videotape, audiotape, and live note, and it will be transcribed. The deposition is being taken for the purposes of discovery, for use at trial, or for all other purposes as are permitted under the Federal Rules of Civil Procedure.

## INSTRUCTIONS AND DEFINITIONS

1. If a question requests information and/or documents previously provided during class certification discovery please refer to the specific bates number and range in the prior document production.

2. "You" and its various forms, such as "your" and "yourself", shall mean the person subject to this notice and/or subpoena and/or request for production and all present and former agents, employees, representatives, attorneys, custodian of records, and all other persons acting on behalf of such person, including, but not limited to, deponent, its divisions, parents,

subsidiaries, related companies or corporations, predecessors, successors, and all present and former officers, directors, agents, employees, representatives, and attorneys, and all other persons acting or purporting to act on behalf of deponent.

3.  "Documents" shall mean or refer to all written or graphic matter of every kind of description, however, produced or reproduced, whether draft or final, original or reproduction, and all tangible things within the scope of Federal Rule of Civil Procedure 30(b)(6), specifically including, but not limited to: writings, graphs, charts, photographs, satellite and/or radar imagery, telephone records, data compilations (from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form), letters, correspondence, e-mail communications, memoranda, minutes, notes, contracts, agreements, books, diaries, time sheets, laboratory books, logs, bulletins, circular, notices, rules, regulations, prospects, directions, teletype messages, inter-office communications, intra-office communications, reports, company worksheets, credit files, evidence of indebtedness, negotiable instruments, telegrams, mailgrams, books, news releases, newspapers, magazines, advertisements, periodicals, pamphlets, sketches, drawings, statements, reports, articles of incorporation, by-laws, directives, minutes of meetings, balance sheets, income and loss statements, profit and loss statements, inventories, operating budgets, accounting worksheets, financial accounts, bills, vouchers, bank checks, proposals, offers, orders, acknowledgments, receipts, invoices, checks, working papers, telephone messages (whether written or recorded), notebooks, post cards, evaluations, recommendations, annual reports, confirmations, leases, analyses, feasibility or market studies, disbursement requests or orders, charts, graphs indices, projections, forms, data sheets, data processing discs, or readable computer-produced interpretations thereof, booklets, articles, manuals, speeches, stenographic notes, maps, studies, tests, surveys, cables, tape and disc recordings (both audio and video) blueprints, containers, cartons, package labels, slides, audit reports, tender offers or invitations, personal interviews, and summaries, abstracts, compilations or paraphrases of any of the foregoing, or material similar to any of the foregoing, however denominated, which are in the possession, custody or control of the party upon whom this subpoena and/or request for production of documents is served or to which said party can obtain access. The subpoena and/or request for production of documents calls for originals, unless otherwise specified, and for all copies when originals are not available. If a document has been prepared in several copies, or additional copies have been made and the copies are not identified (or by reason of subsequent modification of the copy by additions or notations, or other modifications, are no longer identical), each non-identical copy is a separate "document."

4.  With respect to the production of any documents which are claimed to be privileged, a statement shall be provided by the attorneys for the respondent setting forth as to each such documents (and, where applicable, each attachment thereto):

    a.  the name of the sender, if any, of the documents;
    b.  the name of the author of the document;
    c.  the name of the person, if any, to whom the document and copies were sent;
    d.  the date of the document;
    e.  the date on which the document was received by those having possession of the document;
    f.  a description of the nature and the subject matter of the document;
    g.  the statute, rule or decision which is claimed to give rise to the privilege;
    h.  the last-known custodian of the document and the present location of the document;
    I.  attachments to the document;
    j.  the number of pages comprising the document;
    k.  whether the document is handwritten, typewritten or otherwise prepared; and
    l.  any other information which is useful in identifying or is necessary to identify the document.

5.  Whenever appropriate, the singular form of the word shall be interpreted in the plural and vice versa.

6.  All words and phrases shall be construed as masculine, feminine, or neutral gender according to the context.

7.  "And" as well as "or" shall be construed either disjunctively as necessary to bring within the scope of the subpoena and/or request for production of documents any matters which might otherwise be construed to be outside of the scope of the subpoena and/or request for production of documents.

8.  "Identify" with regard to a natural person, means to provide the name, last known address, last known telephone number; whether ever employed by you, and if so, dates of employment, descriptions and/or title of each position held, and the reasons for termination; and, current employer and/or last known employer and position held.

    "Identify," *with regard to a corporation*, means to provide the name of the entity along with its primary business address and telephone number.

"Identify," *with regard to documents or other inanimate objects*, means to provide the date, author, address, number of pages, subject matter, custodian of the document and location of the document.

9. Describe or Specify means the following:

    a. to offer a detailed description of the thing sought including where appropriate, to identify the thing;

    b. to set forth the matter which you are asked to "describe" or "specify", and do so fully in detail, by reference to underlying facts rather than reference to ultimate facts or conclusion of fact and law;

    c. to state particulars as to (1) time and (ii) place;

    d. "Identify" the "person" participating, present or involved at any time; and

    e. to set forth all facts necessary to a complete understanding of the "fact", process, or thing in questions.

10. "FEMA" means the Federal Emergency Management Agency and includes the Department of Homeland Security and any governmental or other related agency.

11. "Governmental Agency" means any local, state, or federal governmental agency, members of the U.S. Congress or state legislates or their staff, congressional or legislative committee members or their staff, and/or members of the Executive Branch of government.

12. "THU" means Temporary Housing Units and is defined as travel trailers, mobile homes, park model homes or any similar type of housing provided by FEMA.

13. "Formaldehyde" means formaldehyde and/or all formaldehyde based resins.

14. "LFE" means low formaldehyde emitting products.

15. "Database" means a digital file or systematically arranged collection of computer data, structured so that it can be automatically retrieved, searched and sorted, such as an Excel spreadsheet, CSV spreadsheet, a comma delimited file or any other digital document that is in an electronic searchable format. Database does not include picture files, image files.

16. "CDC" means Center for Disease Control or any related entity.

17. "ATSDR" means Agency for Toxic Substances and Disease Registry or any related entity.

18. "NIOSH" means the National Institute of Occupational Safety and Health or any related entity.

19. "EPA" means the United States Environmental Protection Agency or any related entity.

20. The term "installer" means any entity that delivered temporary housing units to individuals displaced by all hurricanes that occurred from January 1, 2004 to present and integrated into the unit electrical, water and/or sewage systems that serve the property on which the temporary housing unit was delivered. The term "installer" also encompasses any entity that placed the temporary housing unit on the property for use.

21. "Trailer" or "the trailer" means the travel trailer with the Vehicle Identification Number of 4CJ1F322764015272 and the FEMA Bar Code of 1373963.

22. "Plaintiffs' means Elisha Dubuclet on behalf of Timia Dubuclet.

23. "Morgan" means Morgan Buildings & Spas, Inc. and/or Morgan Building Systems, Inc.

24. If for any reason a different plaintiff or plaintiffs is substituted for Elisha Dubuclet on behalf of Timia Dubuclet, these requests are directed at that new or additional plaintiff or plaintiffs.

**THIS DEPOSITION IS <u>NOT</u> FOR RECORDS ONLY**.

Respectfully submitted,

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**


     **/s/ Raúl Bencomo**
RAÚL R. BENCOMO #2932
**PLAINTIFFS' CO-LIAISON COUNSEL**
BENCOMO & ASSOCIATES
639 Loyola Avenue Suite 2110
New Orleans, LA 70113
(504) 529-2929 - telephone
(504) 52902918 - fax
**ben_law@bellsouth.net**

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
GERALD E. MEUNIER (LA Bar #9471)
JUSTIN I. WOODS (LA Bar #24713)
LINDA J. NELSON (LA Bar #9938)
FRANK D'AMICO (LA Bar #17519)
MATT MORELAND (LA Bar #24567)
ROBERT M. BECNEL (LA #14072)
ANTHONY BUZBEE (TX #24001820)
MIKAL WATTS (TX #20981820)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon opposing counsel by facsimile, by depositing a copy of same in the U. S. Mail, or other electronic transmission, this 10th day of August, 2009.

     **/s/ Raúl R. Bencomo**
     **RAÚL R. BENCOMO**

## EXHIBIT A

1. Contracts, subcontracts, agreements, purchase orders, invoices, or any other documents by and between you and any raw material supplier/manufacturer, component part supplier/manufacturer, and finished materials supplier/manufacturer whose materials contained formaldehyde used in the production of the trailer.

2. The identify and location of the facility where the trailer was manufactured.

3. By name and job title, identify each manager/supervisor employed by you who participated in any aspect of the design, manufacture, and/or the development of the installation protocol for the trailer including, but not limited to, those persons in quality control, engineering, design, research and development for these units.

4. Quality control and/or quality assurance processes and/or procedures concerning materials containing formaldehyde att he facility which manufactured the trailer.

5. Design, specifications, assembly of units, and installation, documents for the trailer. This includes, but is not limited to, drawings, schematics, material lists, list of component part manufacturers/vendors, quality control inspections, shop documents and assembly line documents.

6. All actions taken to cure materials and products containing formaldehyde or formaldehyde-based resins used to manufacture the trailer and all communications you had with FEMA, DHS, any other governmental agency and/or any other manufacturer or supplier concerning THUs provided, directly or indirectly, to FEMA from January 1, 2004 to present.

7. The chemical composition of any materials which contain formaldehyde or formaldehyde-based resins, including, but not limited to, particle board, press board, pressed wood, engineered wood, composite wood, plywood, fiberboard, and/or adhesives or any other component in the trailer.

8. The entities who supplied you with materials containing formaldehyde or formaldehyde-based resins used by you to manufacture the trailer.

9. The standard, codes, regulations, guidelines, recommendations, industry practices, rules, policies, and/or procedures concerning the use of materials containing formaldehyde or formaldehyde-based resins in THUs manufactured by you from January 1, 2004 to the present.

10. All documents and communications between you and Morgan regarding the specifications for the subject trailer, including but not limited to, any changes to the specifications, production deadlines, availability of materials and/or shortages of materials.

11. Any indoor and/or outdoor air quality monitoring and/or testing performed by you, or on your behalf, on the Trailer or any THUs (including any component parts and/or materials used therein) and/or THU storage areas, from January 1, 2004 to the present.

12. Safety procedures for your employees who worked with, or in close proximity to, materials containing formaldehyde or formaldehyde-based resins from January 1, 2004 to the present.

13. The identity of all documents including, but not limited to, owner's manuals, warnings, pamphlets, safety use guidelines, instructions, and writings, concerning formaldehyde with regard to the Trailer or any THUs manufactured by you from January 1, 2000 to present.

14. All documents, warnings, notices, manuals, stickers, brochures and/or literature provided with the subject trailer informing Plaintiffs of any concerns or issues regarding formaldehyde in the subject trailer or the effects of long-term occupancy, more than six months.

15. Any health, medical, or scientific research, literature, publications, or material in your possession, custody, or control, whether or not such documents were authored by you, with respect to any potential health effect associated with formaldehyde or formaldehyde-based resins and identify the date(s) and how you discovered, or were informed, that exposure to formaldehyde and/or formaldehyde-based resins may cause any adverse health effect.

16. All trade and/or industry organizations in which you are a member and the length of your affiliation therewith from January 1, 2004 to the present.

17. Communications (internal or otherwise) between you and FEMA, DHS and/or any other governmental agency or employee, and/or any other manufacturer or supplier of THUs regarding your provision of THUs, directly or indirectly, to FEMA from January 1, 2004 to present.

18. Any insurance policies, including excess and umbrella insurance, that may cover the claims made in this lawsuit.

19. All documents and communications regarding the maximum length of use of THUs by occupants and any recommendations concerning the length of use of the THUs with respect to any THUs manufactured by you from January 1, 2004 to the present, including warnings related to long-term and/or permanent use of the subject trailer in the Gulf Coast climate zone.

20. Contracts for supplying, manufacturing and/or acquiring or procuring THUs entered into between you and FEMA for FEMA's response to natural disaster events from August 2002 to the present.

21. Location and identity of documents discussing levels of formaldehyde in THUs manufactured by you and any discussion of possible adverse health effects or concerns.

22. Any workers compensation or disability claim made by any Fleetwood employee, agent, servant, representative or contractor related to formaldehyde.

23. Any joint defense agreements entered into between you and any other party to this lawsuit, including DHS, FEMA or any governmental agencies.

24. Identify any individual hired by Fleetwood or anyone on Fleetwood's behalf that has or will investigate and/or conduct surveillance of the Plaintiff or Plaintiff's family members or the subject trailer and all communications between you and the identified person, including but not limited to, documents, photos and/or surveillance videos.

25. Any and all communications between you and any other party, including DHS, FEMA, Plaintiffs, or any governmental agencies, including between attorneys, relating to the Trailer.

26. Any and all communications between you and Plaintiffs.

27. The total amount of compensation you received from the contract under which the Trailer was sold to the United States Government.

28. The total amount of compensation you received from the contract under which the Trailer was sold to Morgan.

-3-

29. Your creation of, use of, and codes and documents, including any checklists, forms, master lists, part lists, engineering drawings, certificates of technical achievement, procedures, videos, visual tools, supplier lists, FEMA pre-delivery inspection forms, RVIA standards or work instructions for the plant that manufactured the subject trailer.

30. The location of any process documentation manuals which applied to, or were used in conjunction with, the production of the subject Trailer.

31. The "Order Book" or any other similar documentation which applied to the subject Trailer.

32. All documents and communication whether it is permissible or appropriate (by Fleetwood's standards) to "jack" the subject trailer or place the subject trailer on blocks, or install the subject trailer for permanent use and, if so, whether Fleetwood has created any specifications or suggested or recommendation procedures for doing so.

33. All instructions or communications with or to Morgan and/or Fluor Enterprises, Inc. Regarding the staging, installing, jacking, blocking or other preparation of the subject trailer for Plaintiff's occupancy, including any instructions or communications from Morgan to Fluor.

34. All documents, contracts and communications pertaining to Fleetwood's relationship with Morgan, including but not limited to, the acquisition of THUs following hurricanes Katrina and Rita.

35. All documents and communications regarding Morgan placing any sticker, label or other identifying marks on THUs manufactured by Fleetwood following Hurricanes Katrina and Rita.

36. All documents and communication between Fleetwood and Morgan regarding formaldehyde in THUs from August 29, 2005 to the present.

37. All hold harmless and/or indemnity agreements between Fleetwood and Morgan from August 29, 20009 to the present.

38. The efforts you took to identify, preserve and produce documents (hard copy and electronic), in response to any discovery requests propounded to you in this Litigation, including the timing and nature of any litigation holds put in place.

-4-

39. The efforts you took to identify, preserve and produce the subject trailer.

40. All documentation, photos and/or videos pertaining to the subject trailer.

41. All documents pertaining to any lawsuits filed against Fleetwood in the past where a claim was made that an individual was affected and/or injured as the result of formaldehyde contained in ay product manufactured by Fleetwood, including all subsidiaries. (This request specifically contemplates that you will produce the name of the claimant, any pertinent civil action, civil action number, location where said action was filed and the name of the counsel representing the claimant).

42. All remedial measures taken after formaldehyde complaints were brought to your attention in the 1980s.

43. The history of this trailer from the date of manufacture to the present, including but not limited to, the chain of custody, ownership, location, testing, alterations, activations and deactivations.