UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
|     FORMALDEHYDE | * | |
|     PRODUCTS LIABILITY | * | SECTION: N(5) |
|     LITIGATION | * | |
| | * | JUDGE: ENGELHARDT |
| This Document Relates to: *Charlie Age, et al. v.* | * | |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendant, Gulf Stream Coach, Inc. ("Gulf Stream"), respectfully submits this memorandum in support of its partial motion for summary judgment regarding the Plaintiff and her minor child's mental anguish claim based on their fear that they are at an increased risk to develop cancer because of their alleged exposure to formaldehyde.

**I.    BACKGROUND**

As this Court is well aware, this Multi-District Litigation is the consolidation of several state and federal toxic tort suits in which an estimated thirty thousand named plaintiffs claimed to have inhabited emergency housing units ("EHUs") that were provided to them by the Federal Emergency Management Agency ("FEMA") as a result of the alleged uninhabitability of their residences due to Hurricanes Katrina and Rita and were allegedly contaminated with formaldehyde. (Doc. No. 109, at ¶ 96). One of those plaintiffs was Alana Alexander, who was selected as the bellwether plaintiff in a trial against Gulf Stream. (Doc. No. 1299). After Katrina, the Plaintiff and her minor children resided in an EHU that was built in 2004. The Plaintiff's own formaldehyde test of the unit – which was taken shortly after it was vacated, in the same location where it was used, and without ventilation or any attempt to engage the HVAC system to

simulate actual living conditions – yielded a result of 0.05 parts per million. *See* Deposition Transcript of William D. Scott, taken on June 11, 2009, p. 113, 117, 205, attached as Exhibit "A." This is within the range of outdoor air formaldehyde levels in an American urban area like New Orleans;[1] below the levels measured during both the wintertime and summertime in HUD-regulated mobile homes;[2] over seven times lower than the average indoor air level found in a study of South Louisiana residences;[3] and within the range emitted in exhaled human breath.[4]

Notwithstanding the test results, the Plaintiff filed suit against Gulf Stream and the other defendants on February 27, 2009. (*Age, et al. v. Gulf Stream Coach, Inc., et al.*, 09-2892, Doc. No. 1). On June 1, 2009, the Plaintiff filed a First Supplemental and Amended Complaint. (Doc. No. 1636). Within the amended complaint, she sought compensatory damages for mental anguish and emotional distress due to her fear of an increased risk of future serious disease. (*Id.* ¶ 15(c)). She also made a claim on behalf of her minor child for the same damages, the mental anguish and emotional distress due to his fear of an increased risk of future serious disease. (*Id.* ¶ 15(d)). By making these claims, the Plaintiff has asserted a claim commonly referred to as "cancerphobia," or fear of contracting cancer or other disease. In response to these allegations, Gulf Stream has filed this Motion and asserts that neither the Plaintiff nor her minor child has a reasonable fear that either is at an increased risk to develop any form of cancer because of their exposure to formaldehyde.

---

[1] Doc. No. 196-34, p. 9.

[2] *Id.*

[3] R. Lemus et al., *Potential Health Risks from Exposure to Indoor Formaldehyde*, 13 REVIEWS ON ENVIRONMENTAL HEALTH (Nos. 1—2) 91, 91—98 (1998), attached as Exhibit "B."

[4] Berthold Moser et al., *Mass Spectrometric Profile of Exhaled Breath – Field Study by PTR-MS*, 145 RESPIRATORY PHYSIOLOGY & NEUROLOGY 295, 295—300 (2005), attached as Exhibit "C."

## II. LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be rendered if the pleadings, discovery, disclosure materials and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* Further, "It is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tx. Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.,* 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must go beyond the pleadings and through affidavits, depositions, answers to interrogatories, and admissions on file must designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F .3d 400, 402 (5th Cir.2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare*

*System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir.2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.1994), *cert. denied,* 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir.2002).

**III.    LAW AND ARGUMENT**

As stated above, the Plaintiff has made a claim individually and on behalf of her minor child for mental anguish based on the fear that both are at an increased risk to contract cancer

and/or other diseases because of their alleged exposure to formaldehyde. Under Louisiana law, a plaintiff can assert a fear of cancer claim to recover emotional damages. *Maurer v. Heyer-Schulte Corp.*, 2002 WL 31819160, *3 (E.D.La. Dec. 13, 2002). "The plaintiff's fear of developing cancer **must be reasonable** and causally related to the defendant's negligence." *Id*. (emphasis added). To qualify as a reasonable fear, the plaintiff must show that it is actually possible to contract a disease, though the plaintiff has no obligation to show that the likelihood is probable. *See id*. Despite having no burden to show the development of disease is probably, the plaintiff must present "at least some reliable scientific evidence" to show that the disease could be caused by the defendant's actions. *See id*. "Mere speculation concerning an event cannot provide the basis for an award for anxiety." *Id*.

According to the U.S. Court of Appeals for the Fifth Circuit, reliable scientific evidence comes in the form of epidemiologic studies. *See Brock v. Merrell Dow Pharmaceuticals, Inc.*, 874 F.2d 307, 311 (5th Cir. 1989), *cert. denied*, 494 U.S. 1046 (1990). Courts consider epidemiologic studies to be crucial in establishing causation.[5] For example, in *Maurer v. Heyer-Schulte Corp.*, this Honorable Court encountered a case in which the plaintiff sued a breast implant manufacturer for complications associated with her implants. 2002 WL 31819160 at *1. The plaintiff asserted various forms of damages, including mental anguish due to her fear of contracting cancer from the implants. *Id*. The defendant-manufacturer filed for summary judgment, arguing that there was no causal link between breast implants and cancer. *Id*. at *2. The defendant produced several epidemiologic studies, scientific reports, and documents from

---

[5]   *See id*.; *Thomas v. Hoffman-La Roche, Inc.*, 731 F. Supp. 224 (N.D. Miss. 1989) (holding that without some epidemiological study or statistical basis, an expert's opinion as to causation amounts to little more than speculation), *aff'd*, 949 f.2d 806 (5th Cir. 1992), *cert. denied*, 504 U.S. 956 (1992); *see also Maiorana v. U.S. Mineral Prod. Co.*, 52 F.3d 1124 (2d Cir. 1995) ("[E]pidemiological evidence is indispensable in toxic and carcinogenic tort actions where direct proof of causation is lacking."); *Elkins v. Richardson-Merrell*, 8 F.3d 108, 1073 (6th Cir. 1993) (affirming summary judgment where plaintiff failed to raise a genuine issue of fact regarding causation in light of epidemiological evidence).

various agencies and associations that showed there was no causal link between the implants and the disease. *Id.* at *3. In contrast, the plaintiff could not produce reliable scientific articles or human studies that supported her claim for fear of cancer. *Id.* at *4. Furthermore, the plaintiff failed to even attempt to discredit any of the defendant's scientific evidence. *Id.* Thus, this Court granted the defendant's motion. *Id.* at *5.

Applying these decisions to the instant matter, Gulf Stream submits that all evidence submitted to this point establishes that there is no epidemiologic link between formaldehyde at the level the Plaintiff and her minor child were exposed to and cancer of any kind. In fact, **the Plaintiff's own epidemiologist and statistician has confirmed that there is no such association**. Dr. Gerald McGwin testified that while formaldehyde plays an etiologic role with respect to leukemia, lung cancer, pancreatic cancer, and brain cancer, the only cancer definitively caused by formaldehyde is nasopharyngeal cancer (NPC).[6] However, Dr. McGwin <u>could not associate</u> NPC to formaldehyde at the level present in the Plaintiff's EHU. *Id.* at pp. 131-32 (stating that he could not associate nasopharyngeal cancer to the formaldehyde levels identified in the EHUs by the Center for Disease Control (from three parts per billion to 590 parts per billion)). Dr. McGwin agreed that at those levels, the epidemiology does not provide for an association with this form of cancer. *Id.*

Furthermore, the evidence shows that International Association for Research on Cancer has not set forth an association between formaldehyde and NPC at the level the Plaintiff and her minor child were exposed to. Both Dr. McGwin and Dr. Christopher DeRosa, an environmental health scientist retained in this case, have testified that the IARC classification of formaldehyde

---

[6] *See* Deposition Transcript of Dr. Gerald McGwin, taken on July 27, 2009, at pp. 15—18, attached as Exhibit "D." This is precisely the same conclusion reached by another expert physician and epidemiologist in this litigation, Dr. Philip Cole. See Affidavit of Philip Cole, M.D., P.H., dated Sept. 16, 2008, p. 16, attached as Exhibit "E." Dr. Cole opined that there was no link between formaldehyde and any other type of cancer other than nasopharyngeal. *Id.*

as a known carcinogen is based primarily on a scientific study from the American Journal of Epidemiology entitled "Mortality from Solid Cancers among Workers in Formaldehyde Industries." *See* Exhibit "D," at pp. 223—24; Deposition testimony of Christopher DeRosa, taken on July 6, 2009, at pp. 256—57, attached as Exhibit "F." That study concluded that there was no association between formaldehyde and NPC below a peak exposure of four thousand parts per billion. *See* Michael Hauptmann et al., *Mortality from Solid Cancers among Workers in Formaldehyde Industries*, 159 AM. JOURNAL OF EPIDEMIOLOGY 1117 (2004), attached as Exhibit "G"; Exhibit "D," at p. 21; Exhibit "F," at pp. 257—58. Furthermore, the median duration of exposure in the study was 35 years. *Id.* at 1119. This dose and duration of exposure far exceed the dose and duration that the Plaintiff in this case was exposed to.[7] Thus, although the study – and therefore, IARC – concludes that there is an association between this cancer and this substance, there is no basis to conclude the association would exist at the levels n the Plaintiff's EHU. *See id.*

Additionally, further scientific analysis has undermined the conclusions of the study that formed the primary basis for IARC's classification of formaldehyde as a known carcinogen. A reanalysis of the data compiled during the original study showed that six of the 10 NPC deaths observed in the study occurred in one plant where the peak exposure of formaldehyde exceeded four parts per million. *See* Report of Gary Marsh, Ph.D., dated June 15, 2009, p. 6, attached as Exhibit "H." The reanalysis showed that in the other nine plants observed in the original study, there was no evidence of an exposure–response relationship. *Id.* Furthermore, five of the seven NPC cases noted in the original study were formerly employed in silver-smithing or metal work.

---

[7] The levels noted in the scientific study even exceed the formaldehyde monitoring results obtained in May, 2009, which the Court has struck. See Affidavit of William D. Scott, dated May 18, 2009, attached as Exhibit "I." The highest test result obtained at that time was 1100 ppb when the indoor temperature of the EHU was just shy of 92 degrees Fahrenheit. *See id.* at 7.

*Id.* at 8—9. The reanalysis showed that NPC risks were not elevated in subjects exposed only to formaldehyde. *Id.* at 9. Thus, the reanalysis provided little support for the conclusion that there is a causal relationship between NPC and formaldehyde exposure. *Id.* at 7. The additional analysis seriously undermines the original study's association of NPC and formaldehyde, and thus calls into question IARC's conclusion that formaldehyde is a known human carcinogen.

Considering the scientific studies cited and relied upon by IARC, and the testimony of the expert witnesses in this matter, Gulf Stream respectfully asserts that there is no scientific basis to conclude that there is a link between formaldehyde at the levels present in the Plaintiff's EHU and cancer of any type. The epidemiologic and scientific studies show that formaldehyde has the capability to cause only one form of cancer – nasopharyngeal. However, the scientific link between nasopharyngeal cancer and formaldehyde is nonexistent at the formaldehyde level the Plaintiff and her minor child were exposed to. Gulf Stream's argument is akin to the argument that smoking cigarettes could cause lung cancer, but smoking very few cigarettes for a relatively limited amount of time could not cause the same effect. Here, exposure to formaldehyde at a certain level has been causally linked to nasopharyngeal cancer, but not at the levels that the Plaintiff and her minor child were exposed to. This Honorable Court has previously ruled that without such a link, a plaintiff's fear of cancer is <u>not</u> reasonable. *See Maurer v. Heyer-Schulte Corp.*, 2002 WL 31819160, *3 (E.D.La. Dec. 13, 2002). In this case, the Plaintiff has no reasonable fear of cancer, and therefore is not entitled to an award based on her or her minor child's alleged mental anguish.

As a final point, Gulf Stream contends that personal testimony is not sufficient to establish a bona fide fear of cancer. First of all, such testimony is extremely prejudicial and inappropriate, and it would substantially outweigh the probative value of such testimony. *See*

Fed. R. Evid. 403 (2009). The nature of this evidence has great potential to inflame the sensibilities of the fact-finder and to stigmatize Gulf Stream. As the Fifth Circuit has noted:

> In sum, cancer evidence is highly inflammatory and understandably incites the passions and fears of most reasonable individuals. Recognizing the emotional impact of this type of evidence, it is critical that evidence of cancer only be admitted in those situations where the proper evidentiary guidelines are followed.

*Smith v. A.C. & S., Inc.*, 843 F.2d 854, 859 (5th Cir. 1988) (excluding plaintiff's fear of developing cancer due to exposure of asbestos). The Rule 403 balancing test is, therefore, useful to ensure that this Court excludes any evidence with "an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *Gross v. Black & Decker (U.S.), Inc.*, 695 F.2d 858, 863 (5th Cir. 1983). In this case, the Plaintiff has presented this type of testimony at her deposition. *See* Deposition Testimony of Alana Alexander, taken on June 29, 2009, p. 322, attached as Exhibit "J." The Court should not allow that testimony to defeat summary judgment in light of the absence of epidemiological evidence establishing a link between cancer and formaldehyde at the levels to which the Plaintiff was exposed. This testimony is precisely the reason courts seek out objective scientific evidence to prove medical causation. As the Fifth Circuit has said, speculation alone will not suffice to jump the gap to causation. Because this testimony is prejudicial and has little probative value in light of the scientific evidence (or lack thereof), the Court should not consider such testimony presented to defeat Gulf Stream's motion.

## IV.  CONCLUSION

Accordingly, Gulf Stream asks this Court to grant summary judgment in its favor, thereby dismissing the Plaintiff and her minor child's mental anguish claim for fear that they are at an increased risk to develop cancer in the future.

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
(504) 837-3119 (FAX)
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON
Timothy D. Scandurro #18424
Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
(504) 529-6199 (FAX)
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

## **C E R T I F I C A T E**

I hereby certify that on the 11th day of August, 2009, a copy of the foregoing Memorandum in Support of Motion for Partial Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

                                                            s/Andrew D. Weinstock
                                           _____
                                    ANDREW D. WEINSTOCK #18495
                                            andreww@duplass.com