UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | SECTION:  N(5) |
| LITIGATION | * | |
| | * | JUDGE: ENGELHARDT |
| This Document Relates to:  *Charlie Age, et al. v.* | * | |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | MAG: CHASEZ |

**************************************************************************

## MEMORANDUM IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendant, Gulf Stream Coach, Inc. ("Gulf Stream"), respectfully submits this memorandum in support of its partial motion for summary judgment regarding the Plaintiff's claims for physical injury.

## I.      BACKGROUND

As this Court is well aware, this Multi-District Litigation is the consolidation of several state and federal toxic tort suits in which an estimated thirty thousand named plaintiffs claimed to have inhabited emergency housing units ("EHUs") that were provided to them by the Federal Emergency Management Agency ("FEMA") as a result of the alleged uninhabitability of their residences due to Hurricanes Katrina and Rita and were allegedly contaminated with formaldehyde. (Doc. No. 109, at ¶ 96). One of those plaintiffs was Alana Alexander, who was selected as the bellwether plaintiff in a trial against Gulf Stream. (Doc. No. 1299). She and her minor children resided in an EHU that was built in 2004. The Plaintiff's own formaldehyde test of the unit – which was taken shortly after it was vacated, in the same location where it was used, and without ventilation or any attempt to engage the HVAC system to simulate actual living

conditions – yielded a result of 0.05 parts per million (ppm). *See* Deposition Transcript of William D. Scott, taken on June 11, 2009, p. 113, 117, 205, attached as Exhibit "A."

After initially joining the MDL on February 27, 2009 (*Age, et al. v. Gulf Stream Coach, Inc., et al.*, 09-2892, Doc. No. 1), the Plaintiff filed a First Supplemental and Amended Complaint on June 1, 2009. (Doc. No. 1636). Within the amended complaint, the Plaintiff claimed compensatory damages for her physical pain and suffering. *Id*. ¶ 15(a). In response to these allegations, Gulf Stream has filed this Motion and asserts that the Plaintiff cannot establish that her alleged physical injuries were caused by exposure to the level of formaldehyde that has been identified in the subject EHU.

## II.   LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be rendered if the pleadings, discovery, disclosure materials and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* Further, "It is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tx. Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also*

*Lavespere v. Liberty Mut. Ins. Co.,* 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must go beyond the pleadings and through affidavits, depositions, answers to interrogatories, and admissions on file must designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F .3d 400, 402 (5th Cir.2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir.2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.1994), *cert. denied,* 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir.2002).

## III.   LAW AND ARGUMENT

In this case, the Plaintiff has made a claim against Gulf Stream under the Louisiana Products Liability Act (LPLA) for physical pain and suffering. In a claim made under the LPLA, the plaintiff has the burden to prove that the defendant is a manufacturer of the product, the plaintiff's damage was proximately caused by a characteristic of the product, that characteristic made the product unreasonably dangerous, and the plaintiff's damages occurred from a reasonably anticipated use of the product. *Stahl v. Norvatis Pharmaceuticals Corp*., 283 F.3d 254, 260—61 (5th Cir. 2002). Accordingly, the Plaintiff in this case must show that a characteristic of the Gulf Stream EHU in which she resided caused her alleged physical pain and suffering – a burden that she cannot carry.

First of all, no medical doctor has linked the Plaintiff's physical complaints to her formaldehyde exposure. According to the Fifth Circuit, specific causation is established when a medical expert isolates an external factor as the cause of internal disease. *Knight v. Kirby Inland Marine Inc*., 482 F.3d 347, 351-52 (5th Cir. 2007). Admittedly, medical experts can prove specific causation through differential diagnosis – a process of elimination that physicians routinely use to identify the "most likely" cause of a particular individual's illness. *Henricksen v. ConocoPhillips Co*., 605 F.Supp.2d 1142, 1157-58 (E.D. Wash. 2009). But, the ability to

diagnose medical conditions (internal cause) is different than the ability to identify the causes of those conditions (external cause). *Wynacht v. Beckman Instruments, Inc.,* 113 F.Supp. 2d 1205, 1209 (E.D. Tenn. 2000). External causation is generally determined by a methodology referred to as differential etiology, whereby experts conduct tests to eliminate other external causes of plaintiff's disease. *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269, 280 n. 1 (5th Cir. 1998). While internal causation reveals what disease caused the symptoms, external causation reveals the crucial fact of what external factor or factors caused the disease.

In this case, the Plaintiff does not have a medical expert to establish that the external cause of her alleged conditions is formaldehyde exposure at the levels present in her EHU. In fact, no one has isolated the external factor that caused her physical symptoms. Dr. Judd Shellito, a pulmonologist and internist retained by the Plaintiff, opined that there are hundreds of respiratory irritants. See Deposition Transcript of Judd Shellito, taken September 15, 2008, p. 33, attached as Exhibit "B." Dr. Shellito was sure that there are hundreds of airborne irritants, as well. *Id.* at 70—71. Without identifying which of those (if any) caused her alleged symptoms, the Plaintiff cannot just assume that it was formaldehyde. Simply put, she cannot act as her own medical causation expert in this case.

Second, the epidemiological evidence has established that there is no association between the Plaintiff's alleged symptoms and exposure to formaldehyde at the levels to which the Plaintiff was exposed. According to the U.S. Court of Appeals for the Fifth Circuit, epidemiological studies are the most effective and conclusive type of evidence in cases involving a chemical substance's ability to cause a physical condition. *See Allen v. Pa. Engineering Corp.*, 102 F.3d 194, 197 (5th Cir. 1996) (citing *Brock v. Merrell Dow Pharmaceuticals, Inc.*, 874 F.2d 307, 311 (5th Cir. 1989)); *Maurer v. Heyer-Schulte Corp.*, 2002 WL 31819160, *3 (E.D.La. Dec.

13, 2002). In other words, courts consider epidemiologic studies to be critical in establishing causation.[1] As the Fifth Circuit has said, "speculation unconfirmed by epidemiological proof cannot form the basis for causation in a court of law." *Brock*, 874 F.2d at 315; *Chambers v. Exxon Corp.*, 81 F. Supp. 2d 661, 665 (M.D.La. 2000).

In *Moore v. Ashland Chemical, Inc.*, a case decided by the Fifth Circuit, the plaintiff developed a respiratory disorder shortly after being exposed to toluene fumes at work. *Id.* at 272. Almost immediately, the plaintiff began experiencing dizziness, watery eyes, and difficulty breathing. *Id.* The plaintiff was ultimately diagnosed with reactive airways dysfunction syndrome (RADS), a condition his doctors attributed to his exposure to toluene fumes. *Id.* The plaintiff's causation expert examined the plaintiff on three separate occasions, performed a series of tests, and reviewed plaintiff's medical records. *Id.* at 273. Based on his examination, the expert opined that the plaintiff's RADS had been caused by his exposure to the toluene vapors at work. *Id.* However, the court excluded that opinion because the expert offered no information regarding the necessary level of exposure required to cause specific injuries, he had no reliable evidence of the dose to which the plaintiff was actually exposed, and he failed to offer any scientific support for the general theory that exposure to toluene at any level would cause RADS. *Id.* at 278-79.

In this case, Gulf Stream asserts that the Plaintiff has no epidemiological evidence to prove that her alleged physical conditions were caused by a characteristic of the EHU. Admittedly, the Plaintiff has testified that she experienced various physical symptoms after

---

[1]     *See id.*; *Thomas v. Hoffman-La Roche, Inc.*, 731 F. Supp. 224 (N.D. Miss. 1989) (holding that without some epidemiological study or statistical basis, an expert's opinion as to causation amounts to little more than speculation), *aff'd*, 949 f.2d 806 (5th Cir. 1992), *cert. denied*, 504 U.S. 956 (1992); *see also Maiorana v. U.S. Mineral Prod. Co.*, 52 F.3d 1124 (2d Cir. 1995) ("[E]pidemiological evidence is indispensable in toxic and carcinogenic tort actions where direct proof of causation is lacking."); *Elkins v. Richardson-Merrell*, 8 F.3d 108, 1073 (6th Cir. 1993) (affirming summary judgment where plaintiff failed to raise a genuine issue of fact regarding causation in light of epidemiological evidence).

moving into the unit. After initially moving in, she felt as though she developed a breathing problem that she had not experienced before. *See* Deposition Testimony of Alana Alexander, taken on June 29, 2009, p. 111—12, attached as Exhibit "C." Her alleged difficulties also included a slight amount of coughing, a tingle in the back of her throat, a "little" burning sensation in her nose, some sneezing, "a bit" of itchy and watery eyes, and headaches. *Id*. at 112, 167, 388. Despite having these conditions, the Plaintiff did not visit a physician or communicate to any physician that she experienced irritation while living in the unit. *Id*. at 333—34. Within a couple of months after the Plaintiff moved into the trailer, her symptoms dissipated and she returned to the level of health she had before Katrina. *Id.* at 168, 181—82, 389—91.

The testimony, however, is immaterial because the Plaintiff has not provided the type of epidemiological evidence that is crucial to show that a characteristic of the EHU caused her alleged physical problems. In fact, the epidemiology shows that formaldehyde at the level the Plaintiff was exposed to <u>cannot</u> cause the physical illnesses she has alleged. Dr. Richard Monson, an epidemiologist that has been retained in this litigation, has performed an epidemiologic evaluation of the possible association between exposure to formaldehyde and the occurrence of non-malignant conditions. *See* Report of Dr. Richard R. Monson, dated June 18, 2009, attached as Exhibit "D." Dr. Monson surveyed various scientific publications that examined the health risks associated with indoor formaldehyde exposure. *Id*. at 7—23. After reviewing the studies and data, Dr. Monson concluded that although low levels of formaldehyde can cause irritation to the eyes, upper respiratory tract, and mucous membranes, the lowest of those levels is <u>0.1 ppm</u>. *Id*. at 30. Furthermore, even at the 0.1 ppm level, the effects of irritation are temporary and do not lead to any chronic effects. Exhibit D, p. 30.

Likewise, Dr. James Wedner, an allergist and immunologist, has opined that formaldehyde does not become a primary irritant until it reaches the level of 0.1 ppm. *See* Report of James Wedner, p.2, attached as Exhibit "E." Only at that level could it potentially cause irritation, itching and pain. *Id*. As discussed above, this is twice the level that was present in the Plaintiff's own EHU. Furthermore, Dr. Wedner has stated that an individual experiencing transient irritation at 0.1 ppm and above would ultimately adapt to the substance such that her symptoms would dissipate over time. *Id*. at 3. Based on these facts and his personal examination of the Plaintiff, Dr. Wedner concluded that "to a reasonable degree of medical and scientific certainty, Alana Alexander suffered no adverse health effects from any formaldehyde that might have been present in [t]his travel trailer." *Id*. at 10. Thus, much like the *Moore* case, there is no evidence in this case that the dose the Plaintiff received could actually cause her alleged symptoms.

Third, others have offered opinions on whether formaldehyde played a role in the Plaintiff's alleged physical problems. Dr. Robert James, a pharmacologist and toxicologist, has discussed the role epidemiology plays in determining causation. *See* Report of Robert James, p. 4, attached as Exhibit "F." Dr. James performed an evaluation of various experiments that have examined the impact of formaldehyde on subjective symptoms, irritant effects and pulmonary problems of asthmatic and healthy individuals. *Id*. at 21—45. Those experiments revealed that an individual would experience no observable adverse eye irritation at a formaldehyde level of 0.5 ppm. *Id*. at 46. Because the eye is the most sensitive endpoint for irritation, Dr. James concluded that higher levels would be needed to induce nose and throat irritation. *Id*. at 47. In the Plaintiff's case, the level in her EHU was ten times lower than the minimum threshold level for eye irritation identified in experimental epidemiologic studies. *Id*. at 54. Thus, at this level of

formaldehyde in indoor air, "individuals would not experience any irritation of the eyes, nose or throat and likely would not perceive an identifiable odor as the measured value." *Id*.

Finally, environmental health specialist Joseph Little performed an evaluation of the toxicological literature regarding formaldehyde in light of the EHU sampling data collected by the Environmental Protection Agency. *See* Deposition Testimony of Joseph Little, taken on June 23, 2009, p. 120, attached as Exhibit "G." In his opinion, irritant effects would not begin until the level of formaldehyde in an EHU reached 0.4 ppm. *Id*. This applied to irritation, runny nose, and headache. *Id*. at 120—21. Further, Mr. Little noted that, according to both the toxicological literature and the American Conference of Government Industrial Hygienists, the lowest level at which formaldehyde can cause a real effect is 0.3 ppm. *See id*. at 123—24, 127. This is six times the level observed in the Plaintiff's EHU.

The impact on the Plaintiff's case of the evaluations, opinions, and information is clear – the Plaintiff has no medical doctor that has established a link between the Plaintiff's alleged symptoms and her exposure to formaldehyde at 0.05 ppm, the level to which she was exposed. Further, the epidemiologic evidence shows that formaldehyde cannot cause irritant effects at that level. Both the literature and the experts on the issue have provided that irritant effects would not begin until **<u>at least</u>** twice that level. This evidence, which is the type of verifiable scientific data required by the Fifth Circuit and this Honorable Court to establish causation, shows that formaldehyde at the level to which the Plaintiff was exposed would <u>not</u> cause her alleged physical symptoms.

IV.     **CONCLUSION**

Accordingly, Gulf Stream asks this Court to grant summary judgment in its favor, thereby dismissing the Plaintiff claims for physical pain and suffering.

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
(504) 837-3119 (FAX)
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON
Timothy D. Scandurro #18424
Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
(504) 529-6199 (FAX)
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

## **C E R T I F I C A T E**

I hereby certify that on the 12th day of August, 2009, a copy of the foregoing Memorandum in Support of Motion for Partial Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com