UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER  　　　　　　　　　MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION 　　　　　SECTION N-5
　　　　　　　　　　　　　　　　　　　　JUDGE ENGELHARDT
　　　　　　　　　　　　　　　　　　　　MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA'S SUPPLEMENTAL MEMORANDUM IN SUPPORT
OF ITS MOTION FOR A PROTECTIVE ORDER TO PREVENT PLAINTIFFS'
DEPOSITION OF HARVEY E. JOHNSON, JR., FORMER
FEMA DEPUTY ADMINISTRATOR AND CHIEF OPERATING OFFICER

**INTRODUCTION**

The United States of America ("United States") hereby submits this supplemental memorandum in support of its motion for a protective order pursuant to Fed. R. Civ. P. 26(c) to prevent the deposition of Admiral Harvey E. Johnson, Jr., former Deputy Administrator and Chief Operating Officer for the Federal Emergency Management Agency ("FEMA").

Having taken the deposition of several FEMA employees, Plaintiffs Steering Committee ("PSC") now asserts in a Supplemental Memorandum that the deposition of Admiral Johnson is "critical" to the determination of whether their claims against the United States should be dismissed pursuant to the discretionary function exception of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a). Pl. Supp. at 1-2. PSC contends that Admiral Johnson is "uniquely positioned to provide critical facts and information as to FEMA's actions and their motivations in response to the formaldehyde crisis, the very subject of the United States' pending motion to dismiss." Pl. Supp. at 2. PSC, however, has failed to demonstrate that any

information can be obtained from Admiral Johnson (1) that involved matters occurring during the relevant time period identified by the Court, (2) that was not available from one or more of the several FEMA witnesses that PSC deposed, or could have deposed, ***and*** (3) that is relevant to the pending United States' motion to dismiss.

In its Order deferring its ruling on the motion for a protective order, the Court stated that there "may be a relevant time period (perhaps mid-May 2007 - August 2007) in which Admiral Johnson's testimony would be critical to issues raised in the Government's pending motion to dismiss (See Rec. Doc. 1545)." [Rec. Doc. 1939 at 2]. The Court deferred ruling on the motion for a protective order at the time, because the PSC had not taken the depositions of Kevin Souza, David Garrett, and Michael Lapinski – persons who likely possessed the same discoverable information that Admiral Johnson had – and, therefore, the PSC could not demonstrate the "exceptional need" required to depose a high government official. Now, having taken the depositions of Souza, Garrett, and Lapinski, PSC still cannot show exceptional need to take Admiral Johnson's deposition through the instances it has identified in its Supplemental Memorandum.

**I.   PSC Has Not Shown Exceptional Need To Take Admiral Johnson's Deposition Regarding A June 1, 2007, E-Mail In Which Admiral Johnson Recommended That FEMA "Slow Roll" The Sale Of Travel Trailers And Requested A Meeting Regarding The Formaldehyde Issue.**

Initially, PSC identifies a June 1, 2007, e-mail in which Admiral Johnson recommended that FEMA "slow roll" the sale of travel trailers and requested a meeting to consider FEMA's "public position" as it related to the formaldehyde issue. While this e-mail occurred during the relevant time period under the Court's Order, the PSC has not demonstrated an exceptional need to take Admiral Johnson's deposition based upon the e-mail and deposition testimony because

-2-

(1) they have not demonstrated that the e-mail and deposition testimony show that Admiral Johnson has information regarding a relevant matter; and (2) they have not demonstrated that any information that they seek could not have been provided by other witnesses.

Initially, this Court has already dismissed all claims arising out of FEMA's sale of the travel trailers, [Docket 717 at 46], so any evidence regarding FEMA's actions in selling the trailers cannot be relevant. The development of a "public position" referenced in the e-mail is clearly in relation to the suspension of the sale of the trailers. Pl. Exh. A. Further, with respect to the meeting that Admiral Johnson requested to discuss the "formaldehyde issue," the purpose of meeting with various FEMA components was to permit Admiral Johnson "and the Chief [Paulison] to come up to speed on the issues." Pl. Exh. A. There is no indication in this e-mail or in referenced deposition testimony that Admiral Johnson was involved in any decisions at this time beyond those dealing with the sale of the trailers.

Additionally, PSC has made no showing that other witnesses did not, or could not, provide information regarding these matters. PSC did not depose William Lang, Eric Heighberger or Kathleen Andrews, who were involved in this meeting. Pl. Exh. A. PSC merely cites deposition testimony of Kevin Souza that Mr. Souza could not testify as to "the reasoning behind Admiral Johnson's request" or why Admiral Johnson would want "Legal to participate in a discussion." Pl. Supp. at 3. Of course, any testimony from Mr. Souza regarding Admrial Johnson's reasoning or thinking would be speculation. So, the fact that Mr. Souza could not testify regarding Admiral Johnson's thought process does not demonstrate exceptional need to depose Admiral Johnson. In fact, Mr. Souza did testify that high level officials at FEMA naturally wanted briefing on the formaldehyde issue in June 2007 because of the greater visibility of the issue at that time. Pl. Exh. B at 110:16 to 112:15. Mr. Souza also testified that

-3-

he "thought the purpose of the meeting was to get the Office of Health Affairs to brief the Chief and the Admiral on their scientific understanding of formaldehyde, the medical practitioner [sic], and answer any questions he may have about formaldehyde and things like that." Pl. Exh. B at 111:3 to 112:14.  Mr. Souza also testified why Admiral Johnson would want a representative from "Legal Affairs" at the meeting.  Mr. Souza stated that "when issues this big came up at the agency . . . it wasn't uncommon for senior leadership to call senior leadership meetings, all of the senior executives in the administrator's office, counsel being one of them, to discuss kind [sic] of courses of action, public positions, and things like that." Pl. Exh. B at 117:9 to 118:9.

Thus, with respect to the circumstances of the June 1, 2007, e-mail, PSC has failed to show an exceptional need to take Admiral Johnson's deposition, and the request should be denied.

**II.   PSC Has Not Shown Exceptional Need To Take Admiral Johnson's Deposition Based Upon A July 22, 2007, E-Mail Reminding Kevin Souza And Others That Discussions Regarding The Formaldehyde Plan Are Pre-Decisional, And That Information Must Remain Within The Group Unless Otherwise Authorized.**

Next, PSC identifies a July 22, 2007, e-mail from Admiral Johnson to numerous individuals regarding a preliminary formaldehyde action plan. Pl. Supp. at 4.  After describing some general guidance for discussion and development of the plan, Admiral Johnson reminds the group that the discussions are "pre-decisional" and must remain within the group unless specifically authorized otherwise.  Pl. Exh. C.  PSC contends it should be allowed to take Admiral Johnson's deposition regarding this matter because Kevin Souza could not testify why Admiral Johnson would want this information "contained," or whether Admiral Johnson had received advice from the Office of General Counsel ("OGC") to protect the information.  Pl. Supp. at 4.

The rationale for keeping pre-decisional discussions within the group at this time is not relevant to any issue in this litigation.  As long as PSC has access to the various alternatives that FEMA was considering at the time and other pre-decisional information, PSC cannot claim that the decision to contain that information within the group in July 2007 is somehow relevant to this litigation.  To the extent that PSC claims the decision to keep the information contained may show influence of the OGC, PSC cannot show how any advice to contain pre-decisional discussions (as opposed to, for example, advice not to perform testing) would be relevant to any issues.  Other than showing that it does not have access to ***the reason*** why Admiral Johnson asked the group members to keep this information contained, PSC has failed to assert or show that it could not access information regarding FEMA's response to formaldehyde issues at this time.

Again, PSC cites Kevin Souza's deposition testimony, and Mr. Souza naturally stated that he did not specifically know why Admiral Johnson wanted the discussion contained.  Pl. Supp. at 3.  Mr. Souza did testify, however, that he suspected that "it was because some of the decisions that we were talking about making sounds like [sic] would have some fairly large implications for a bunch of folks, and he just wanted to make sure that there wasn't any misinformation that got out there before – that was pre-decisional before an actual decision had been made."  Pl. Exh. B at 123:5 to 124:16.

Thus, with respect to the circumstances of the July 22, 2007, e-mail, the PSC has failed to show an exceptional need to take Admiral Johnson's deposition, and the request should be denied.

### III. PSC Has Not Shown Exceptional Need To Take Admiral Johnson's Deposition Regarding The Delay In Testing Occupied Units From October 2007 to December 2007.

Finally, PSC contends that there is an exceptional need to take the Admiral Johnson's deposition regarding FEMA's decision to delay the testing of occupied units from October 2007 to December 2007. This period of time falls outside of the relevant time period of mid-May 2007 to August 2007 identified in the Court's Order. Nevertheless, PSC contends that it should be allowed to depose Admiral Johnson because Admiral Johnson made the ultimate decision to delay the testing, and Michael Lapinski stated at one point in his deposition that he would be speculating on "what Admiral Johnson was thinking." Pl. Supp. at 4-5. PSC, however, fails to reference the extensive testimony in Michael Lapinski's deposition regarding FEMA's rationale for delaying the testing.

> Q.  You were asked a question by Mr. Woods regarding what the concerns of Admiral Johnson were in delaying testing from October 2000 [sic] to December 2000 [sic]; do you recall that?
>
> A.  Yes, sir.
>
> Q.  And of course Admiral Johnson would be the only one who would know all the concerns that were in his mind at that time; is that right?
>
> A.  That's right.
>
> Q.  But were you aware from talking with Admiral Johnson and others what the reasons were for the delay in testing from October to December?
>
> A.  The biggest concern, when we launched the multifaceted program that was the [Inter Agency Agreement ("IAA")] that I referred to between CDC and FEMA, is that the expert panel would provide us with some public health guidance.
>
> We would do occupied unit testing, simultaneous to some mitigation testing, so that when we came up with the occupied unit results, we could characterize them in a meaningful way to the people.
>
> That would have to come in from the expert panel.

Case 2:07-md-01873-KDE-MBN   Document 2600   Filed 08/12/09   Page 7 of 11

And in the event that people still didn't have housing solutions, the mitigation study was going to bring in hopefully some sort of an instrument that we could satisfy people that if they wanted to stay, or had to stay, or the situation forced them to stay in a temporary housing unit, we could do everything within our ability to improve the indoor air quality to help reduce their risk.  Whatever the risk is derived from, whether it is air quality or proximity or dislocation or – you know – just too many people on top of each other.

So the IAA was intentionally multifaceted; and the fact that one piece was moving ahead without being informed by the other two was the greatest concern that Admiral Johnson had.  That I heard him specifically say.

The other concern that I know he had, because we talked about this in selecting courses of action and timing for courses of action, is that in the absence of the expert panel guidance, we were positioning FEMA as public health experts, and we would get these test results, and then FEMA would have to convey to individual unit occupants the number; to which the logical question from the occupant is, am I safe or am I not safe?

And all the guidance that we had up to that point is that it's a very – as I said before – a very personal decision that only really can be made between an individual and their physician, because how the number relates to what preexisting conditions they might have, there's nobody in FEMA that can advise them on that.

And so what we did get back from the expert panel is that it's not an empirical result to occupational testing that is going to help somebody determine stay or go; and that it was going to be a relative risk determination; and Admiral Johnson – smart guy – knew that risk is one of the hardest things to convey to somebody because you can't give – you can't show them a chart and have them report to where they are.  And you can't show them an instrument and a dial and have them make any sense of that.

It is far too personal, and it involves understanding of science and biology that – you know – some people would have gathered but not everybody would have gathered and it would not have been uniform.

And so we knew that we really needed a strong partner that was going to convey the results in terms of risk, and we didn't have that in – you know – by the middle of October when we hoped to have that, we didn't have that assurance from anybody in the interagency, whether it was from the state level, department of health, and we worked with the two state directors of health in both Louisiana and Mississippi.  We didn't have that at the federal level.

-7-

|   |   |
|---|---|
|   | And you know, finding out that the results were going to come out not in a parts per million number but in a relative risk number, we just didn't have any way to convey that to help people make good decisions and not put themselves at greater risk by just thinking that the only solution was to get out of – was to leave the travel trailer. |
| Q. | So is it fair to say that you were expecting this expert panel to come up with some type of benchmark which could be used; but instead, what you got was a recommendation that the risks needed to be explained to the occupants? |
| A. | The expert panel, when this group got together, did make the determination as I've said now, and I benefitted from them, that there is no empirical number that you can read off a dial that tells you stay or go.<br><br>They said there's far too many variables and if you just react to the formaldehyde issue, which is what we were measuring, you're missing a whole host of other risks and you're not providing people with the best possible information to make a decision. |
| Q. | And because you didn't get what you might have been expecting from the panel, then at that point, FEMA had to have a strategy as far as how to communicate risk to the people; is that correct? |
| A. | That's correct. And we knew that that was not – that could not be a FEMA strategy developed in a vacuum. That had to be developed in an interagency setting with consultation with the states and with academics. |
| Q. | And from your point of view, that was the reason, need for this risk communication strategy, for the delay in the testing from October to December; is that right? |
| A. | Yes. |
| Q. | And you were involved in that decision-making process as far as whether to go forward or whether to delay it for some time; is that right? |
| A. | Yes, sir. I personally didn't want FEMA to get a bloody nose over what appeared like foot dragging or bureaucracy, but fully appreciated all of the challenges to housing on the Gulf Coast, wanted to make an informed decision, but knew – like I said -- that we had to rely on a lot of partners to come to the table with their area of expertise in order to develop a national position on this, not a FEMA position or even a federal position. |

U.S. Exh. 1 at 186:12 to 192:9.

Given this extensive testimony from Michael Lapinski, PSC cannot claim that it was unable to obtain information regarding why FEMA delayed the testing of occupied trailers from October 2007 to December 2007. Thus, PSC has failed to show an exceptional need to take Admiral Johnson's deposition regarding this matter, and the request should be denied.

### IV.     PSC Has Not Shown Extraordinary Circumstances To Pierce The Protection From Deposition For High Government Officials, Which Is Intended To Protect The Mental Processes Of Those Officials.

The Fifth Circuit Court of Appeals has stated that "exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted." *In re Office of Inspector General*, 933 F.2d 276, 278 (5th Cir.1991) (per curiam) (citing *EEOC v. K-Mart*, 694 F.2d 1055, 1067-68 (6th Cir.1982)). The court elaborated that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." 933 F.2d. at 278 (quoting *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985)). The protection from deposition for high-ranking government officials has evolved from the Supreme Court's decision in *United States v. Morgan*, 313 U.S. 409 (1941), which specifically sought to preclude unwarranted inquiries into the "mental processes" of high-level decision-makers. *Id.* at 422. *See also In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (citing *Morgan* and finding that a Magistrate abused his discretion in declining to quash the deposition notices issued to three FDIC directors).

Significantly, here, PSC seeks to justify the deposition of Admiral Johnson based upon the very "mental processes" that *Morgan* and Fifth Circuit precedent sought to protect. Of course, only the high level decision-maker can testify as to his or her own mental processes, but that cannot supply the "exceptional circumstances" necessary to allow the deposition. Such reasoning would defeat the very purpose of the protection.

If this Court were to allow any deposition of Admiral Johnson, it would have to exclude inquiry into his mental processes and limit the deposition to the areas specifically identified in PSC's Supplemental Memorandum. Because PSC's request primarily focuses on Admiral Johnson's thinking and reasoning, such a deposition would likely be fruitless.[1]

## CONCLUSION

For the foregoing reasons, the Court should grant a Protective Order to prohibit Plaintiffs from deposing Harvey E. Johnson, Jr.

Dated: August 12, 2009                                      Respectfully Submitted,

| | |
|---|---|
| TONY WEST | HENRY T. MILLER |
| Assistant Attorney General, Civil Division | Senior Trial Counsel |
| | |
| J. PATRICK GLYNN | ADAM DINNELL |
| Director, Torts Branch, Civil Division | MICHELLE BOYLE |
| | JONATHAN WALDRON |
| DAVID S. FISHBACK | Trial Attorneys |
| Assistant Director | |

                                                            //S// *Adam Bain*
                                                            ADAM BAIN (IN Bar No. 11134-49)
OF COUNSEL:                                                 Senior Trial Counsel
JORDAN FRIED                                                United States Department of Justice
Associate Chief Counsel                                     Civil Division – Torts Branch
                                                            P.O. Box 340, Ben Franklin Station
JANICE WILLIAMS-JONES                                       Washington, D.C. 20004
Trial Attorney                                              Telephone No: (202) 616-4209
FEMA/DHS                                                    E-mail: adam.bain@usdoj.gov
Department of Homeland Security
Washington, D.C. 20472                                      Attorneys for the United States of America

---

[1] The United States requests, that if any deposition be allowed – and the United States in no way concedes that such a deposition is justified given PSC's failure to show "exceptional circumstances" – it should be strictly limited in time to one hour and the subject matter should be restricted to only any of the three issues that PSC identifies in its Supplemental Memorandum that the Court concludes constitutes exceptional circumstances.

## CERTIFICATE OF SERVICE

     I hereby certify that on August 11, 2009, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

                                                       //S// *Adam Bain*
                                                       ADAM BAIN (IN Bar No. 11134-49)