UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                                     MDL NO. 07-1873
       FORMALDEHYDE PRODUCTS
       LIABILITY LITIGATION

                                                                        SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES

## **ORDER AND REASONS**

Before the Court is the Defendant United States of America's Motion to Dismiss Plaintiffs' Remaining FTCA Claims for Lack of Subject Matter Jurisdiction (Rec. Doc. 1545). After considering the memoranda of the parties and the applicable law, the Court denies this motion.

As stated in the October 3, 2008 Order and Reasons (Rec. Doc. 717), the Court has previously determined that the discretionary function exception applies to shield FEMA ("the Government") from liability as to Plaintiffs' claims relating to the selection of and provision of EHUs. In its October 3, 2008 Order and Reasons, this Court also concluded that the discretionary function exception *may* not apply to some or all of Plaintiffs' claims regarding FEMA's alleged negligent conduct in responding to complaints and concerns of formaldehyde in EHUs. Specifically, based on the evidence before it at that time, the Court found that FEMA's discretionary decisions made in response to formaldehyde complaints seemed unsusceptible to policy analysis within the broad boundaries of the general policy pronouncements set by FEMA

to provide safe and habitable housing. Particularly, the Court concluded that the Government's potential liability might exist for a period beginning in late 2005 until the time when FEMA's actions begin to fall within the discretionary function exception (i.e., when FEMA began acting, not out of litigation strategy, but with discretion in accordance with and within the bounds of its general policy pronouncements of providing safe and habitable housing in the event of a disaster):

> There may be actionable conduct committed by FEMA for a window of time starting no later than March 2006 until some time thereafter (when FEMA's actions begin to fall within the discretionary function exception). Further discovery is needed to determine whether FEMA's conduct during that time period truly amounts to "acts grounded in policy," or instead, simply strategizing by attorneys in anticipation of litigation. If the latter applies, as evidenced on the showing offered, then the window of time that such conduct occurred can be established by further discovery as to its start and end.

(Rec. Doc. 717, p. 42).[1] However, the Court went on to explain that the Government's conduct would have to be evaluated on a case-by-case basis:

> Moreover, even if such a window of time can be established, each plaintiff will have different relevant facts that may or may not afford him/her such a claim. Some plaintiffs may not have a claim against FEMA in this litigation if they were neither supplied nor did they occupy such a travel trailer of park model after the starting date of such time period. As for each plaintiff involved in this litigation, the evidence will undoubtedly

---

[1] The Court notes that the Government's Supplemental Memorandum in Support of its "Motion to Dismiss Plaintiffs' Remaining FTCA Claims for Lack of Subject Matter Jurisdiction" [Dkt. 1545] (Rec. Doc. 2505) establishes that, at least generally, the Government seemingly was exercising its discretionary function in June 2006 by responding to the various complaints of formaldehyde in emergency housing units (EHUs") in a manner that complied with the general policy pronouncements set by FEMA to provide safe and habitable housing. Notwithstanding recommendations made by FEMA's Office of Chief Counsel ("OCC") against initiating testing of EHUs, Kevin Souza, who was, at that time, the Supervisory Program Manager for the Individual Assistance Program Management Branch at FEMA, made the decision then for such testing to go forward. (Rec. Doc. 2505, Exhibit 4, pp. 59-64). Thus, based on the evidence presently before the Court, June 2006 appears to be the general cutoff date for most, if not all, of Plaintiffs' claims against the Government, as the newly-filed supporting materials indicate that it was at this time that the Government began, using its discretion, to respond to complaints of formaldehyde in a way that was reasonably consistent with its general policy of providing safe and habitable housing.

differ, just as the individual claims will differ. For instance, some
plaintiffs will not have suffered any symptoms from the alleged
formaldehyde exposure. Furthermore, those who do claim to have
suffered side effects will surely differ as to which side effects each
suffered and as to what extent those side effects manifested. Some
plaintiffs may have complained about the alleged formaldehyde exposure
while still in their EHUs; others will not have complained or voiced any
concerns until after relocating from their EHUs. The evidence will also
differ as to when FEMA selected an EHU for each plaintiff, when each
plaintiff moved in to that EHU, and when each plaintiff moved out of that
EHU. ... Thus, whether and to what extent FEMA knew of the alleged
formaldehyde concerns when these events occurred will likely need to be
considered on a case-by case basis. In any event, it is clear that, at some
point, FEMA became aware that the EHUs that had been distributed, and
those that were still being distributed, to disaster victims contained
potentially unsafe levels of formaldehyde. It may also be established that,
at some point in time thereafter, FEMA's conduct conformed to policy
considerations such that it would fall into the discretionary function
exception as to any given plaintiff.

(Rec. Doc. 717, pp. 42-43).[2] Thus, as this motion relates broadly to *all* cases filed against FEMA, it is denied. Because the evidence will undoubtedly differ for each plaintiff involved in this litigation, each plaintiff is likely to have different relevant facts that may or may not afford him/her such a claim against the Government. The Court notes that the Government's decision to likewise react[3] to formaldehyde complaints on a case-by-case basis would be discretionary - as long as it could be demonstrated that the Government's case-by-case reactions were consistent

---

[2] The Court notes that any particular bellwether plaintiff will have a difficult burden of recovering from the Government for its actions/inactions taken/not taken *after* June 2006. In other words, Plaintiffs will have a difficult burden of demonstrating that, after June 2006, the discretionary function exception would not apply to the Government's actions.

[3] It is worth noting that FEMA's OCC recognized that the Government does indeed have a duty to respond/react to such issues, as evidenced by the following quote from Patrick Preston:

> Do not initiate any testing until we give the OK. While I agree that we should conduct testing, we should not do so until we are fully prepared to respond to the results. Once you get the results and should they indicate some problem, the clock is running on *our duty to respond to them*.

(Exhibit 5 to Rec. Doc. 348, emphasis added).

with and in furtherance of its general policy pronouncement of providing disaster victims with safe and habitable housing.

Aside from the above stated reason why the Government's motion is denied, the Court agrees with Plaintiffs that the Government's reasoning, if adopted, would effectively moot the second prong of the *Berkovitz* test (discussed in detail in the Court's October 3, 2008 Order and Reasons (Rec. Doc. 717)). The Government's memoranda infer that its actions are always discretionary and would always fall within the discretionary function exception (i.e., would always be susceptible to policy analysis). However, the fact that there is a discretionary function *exception* means that, at least sometimes (as indicated in numerous cases from across the country), the Government cannot be considered immune from liability simply by asserting generally that it acted within its discretion. In this regard, this Court is wary of the possibility of the discretionary function exception swallowing up the rule to which it applies. As Plaintiffs note in footnote 26 of their opposition memorandum, the Sixth Circuit has recognized this potential pitfall. In *Rosebush v. U.S.*, the Court stated:

> If we are not careful in our application of the second prong of the test, the discretionary function exception to the Tort Claims Act could potentially swallow the entire Act. As a result of the *Gaubert*[4] decision, courts have given considerable deference to government assertions of policy discretion. "The Court ought not to use one phrase in one sub-section of the FTCA [Federal Tort Claims Act] to emasculate the rest of the statute." In fact, the Supreme Court did not intend for the *Gaubert* decision to free the government from all liability under the Federal Tort Claims Act. As part of its discussion, the Court specifically stated that there are discretionary acts that are within the scope of a government agent's employment "but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish."

---

[4] *U.S. v. Gaubert*, 499 U.S. 315, 111 S. Ct. 1267, 113 L.Ed.2d 335 (1991).

4

119 F.3d 438, 445 (6th Cir. 1997) (internal citations omitted).

Also, there is evidence to suggest that, at least for some time before the Government began reacting/responding to formaldehyde complaints lodged by EHU residents, it was warning *its own employees* of such issues. As noted in the October 2, 2008 Order and Reasons, "in March 2006, apparently out of concern for government employees, FEMA's Bronson Brown directed in an e-mail that FEMA staff personnel entering trailers be instructed to allow for a period of "off-gassing." (Ex.19 to Rec. Doc. 196, FEMA09-000090)." (Rec. Doc. 717, pp. 28-29). Because the Government appears to have had information in March of 2006 that led it to warn its own employees of the possible harmful effects of formaldehyde in these EHUs, but may have waited until some time thereafter to warn Plaintiffs of this same potential makes it difficult for the Government to justify its, albeit temporary, inaction. As the First Circuit has noted, "the government's invocation of a policy justification may be so far-fetched as to defy any plausible nexus between the challenged conduct and the asserted justification." *Shansky v. U.S.*, 164 F.3d 688, 695 (1st Cir. 1999) (citing *Duke v. Department of Agric.*, 131 F.3d 1407, 1412 (10th Cir.1997). The instant situation might fit into this category - at least for the period of time in which the Government knew of the potential harmful effects of formaldehyde but did nothing to warn inhabitants that their EHUs may not have been "safe" or "habitable." Here, the Government's actions, at least for a short period of time, "implicate none of the public policies that ordinarily inform an agency's decisionmaking." *Elder v. U.S.*, 312 F.3d 1172, 1182 (10th Cir. 2002).

Considering the foregoing, such a motion to dismiss/motion for summary judgment filed by the Government should relate specifically to each bellwether plaintiff and should reference

the relevant facts applicable to each, to be considered by this Court. Accordingly, **IT IS ORDERED** that the **Defendant United States of America's Motion to Dismiss Plaintiffs' Remaining FTCA Claims for Lack of Subject Matter Jurisdiction (Rec. Doc. 1545)** is **DENIED**.

New Orleans, Louisiana, this 13th day of August, 2009.

_____
**KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE**