UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | * | |
| *Inc., et al*, Docket No. 09-2892; | * | |
| Alana Alexander, individually and on behalf of | * | |
| Christopher Cooper | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DFENDANT GULF STREAM
COACH, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
EXPRESS WARRANTY CLAIMS

Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper ("Plaintiff"

or "Ms. Alexander"), submits this Sur-Reply in Opposition to Gulf Stream Coach, Inc.'s Motion

for Partial Summary Judgment with respect to Plaintiff's express warranty claims (Docket Entry

No. 2260).   Plaintiff's Sur-Reply is limited to issues raised in Gulf Stream's Reply Brief, filed

on August 11, 2009 (Docket Entry No. 2591-3).

I.      PLAINTIFF'S   DECLARATION   IS   ENTIRELY   CONSISTENT   WITH   HER
        DEPOSITION.

First, Gulf Stream unequivocally misleads the Court by claiming that Plaintiff's

Declaration is inconsistent with her deposition testimony, with respect to Plaintiff's encounter

with a person she believed to be a Gulf Stream employee, representative or agent.   The best, and

most obvious, way to completely rebut Gulf Stream's claim is to compare the declaration with

the deposition testimony:

| Declaration | Deposition Testimony[1] |
|---|---|
| 2. Shortly after we moved into the Gulf Stream travel trailer, a person who I believe to be a Gulf Stream Coach employee, agent or representative came to the trailer.  This person said she was "with the trailer manufacturer", who I know to be Gulf Stream Coach.  This person explained how to operate the trailer and its equipment--hook up the propane tanks, how to use the stove, how to use the microwave, and the like. | 163<br>22  Were you provided any instructions<br>23  concerning the trailer?<br>24  A.  After we got in the trailer.<br>25  Q.  Somebody came out to see you?<br>164<br>1  A.  Yes.<br>2  Q.  Who came out to see you?<br>3  A.  I'm not sure.  I don't remember<br>4  what the lady's name was.<br>5  Q.  Who was she with?<br>6  A.  I think she was with Gulf Stream.<br>7  She said she was with the trailer people.<br>8  Q.  Okay.  What did she tell you?<br>9  A.  She explained how to hook up the<br>10  propane tanks and everything.  She told us<br>11  how to use the stove, how to use the<br>12  microwave and everything, and she showed us<br>13  around.  She said the smell that we were<br>14  smelling was because the trailer was new and<br>15  had been closed up and to just air the<br>16  trailer out.<br><br>165<br>25  Were you provided any<br>166<br>1  documentation when this lady gave you this<br>2  orientation?<br>3  A.  Yes, she gave us the book.<br>4  Q.  Okay.  What book are you referring<br>5  to?<br>6  A.  It was like an owner's manual book<br>7  and it had --<br>8  Q.  One owner's manual for the |

---

[1] Relevant portions of Ms. Alexander's Deposition are attached at **Exhibit A**.

|  | 9  trailer?<br>10 A.  Yes, it was the owner's manual for<br>11 the trailer, and how to use the stove and<br>12 the refrigerator.<br><br>_____<br>                                                          187<br>10  Do you remember who those trailer<br>11  people were?<br>12  A.  I'm assuming the Gulf Stream<br>13  people.<br><br>_____<br>                                                          385<br>22  Q.  And you have no basis other than<br>23  just your assumption that the first person<br>24  was a Gulf Stream Coach employee?<br>25      A.  Yes. |
|---|---|

It is obvious that Plaintiff's declaration is entirely consistent with her deposition testimony with respect to her belief that the person she spoke with was a Gulf Stream employee, agent or representative.  This person's actions were consistent with someone with detailed knowledge of the trailer, and this person also provided Gulf Stream's owner's manual to Plaintiff.

Later, Gulf Stream claims that the portion of Plaintiff's declaration regarding Plaintiff's reliance on the warranty is in conflict with her deposition testimony.  However, the deposition testimony is entirely consistent.  Plaintiff is not an attorney so does not know how the law defines an "express warranty."  However, as set forth above, she described the representation made to her in her deposition.  Most telling is the fact that Gulf Stream's **own lawyer** knew full well what she was talking about:

Q.  Under subparagraph 4 of 102 [of the Complaint], it says, "In providing housing units which do not conform to the express warranties made by Gulf Stream regarding their

fitness for use as reasonably anticipated."
You testified that the only person you spoke to that you thought was with Gulf Stream
was the original person who walked you through the trailer.

A.  Correct.

Alana Alexander Depo., at page 384, line 18 to page 385, line 2.

## II.    FACT QUESTIONS REMAIN ON WHETHER THIS PERSON WAS GULF STREAM'S EMPLOYEE, AGENT, OR REPRESENTATIVE.

Gulf Stream offers only a blurb from a FEMA employee deposition as the definitive

proof that this person could not have been a Gulf Stream employee, agent or representative.

Notably absent in Gulf Stream's reply is any evidence saying, without qualification, that Gulf

Stream did not have employees, representatives or agents in Louisiana in the Spring of 2006.

Indeed, Gulf Stream's own employees admit that they were in Louisiana in the Spring of 2006,

interacting with trailer residents and FEMA contractors:

> Q  Okay.  Have you had any contact with any of the other FEMA customers?  Let me make clear, the folks living in FEMA trailers in Louisiana or Mississippi, have you went to other trailers?
>
> A  Yes, sir, I have.
>
> Q  Tell me about that.  I mean, is that what you did for all those months that you were down there?
>
> A  No, that is not what I did.  But when I was called and asked to help out our contractor -- or FEMA's contractor in assisting in repairs or teaching them how to fix ACs and that kind of stuff, then, yes, I did go to customers' houses to show them how to do it.

Deposition of Gulf Stream's Burl Keel, at page 23, lines 4-16, attached as **Exhibit B**.

> Q  Okay.  When did this formaldehyde issue, in your experience, first arise?  And what I mean by that is people that were living in your trailers started complaining about air quality issues.

A  The first I learned was from Dan in the March [2006] timeline.

Q  That was the genesis or the reason, that and the press report, for you to go do your testing?

A  We just wanted to see what was going on and how the trailers were being used and what was the situation, try to get a feel for what was happening.

Q  And what was your feel for what was happening once you did your testing?

A  Well, I saw a lot of variety of people obviously. Some people used it for temporary housing.  Some people used it permanently as they reconstructed their lives and tried to put their houses back together.  The folks that I spoke with were extremely happy with the trailers.  I would get an occasional complaint about them being too small or a cabinet door coming off or a water heater that wouldn't light or possibly an air conditioner that didn't work. We had people in Louisiana at that time as a support group, and I would make arrangements to get one of our technicians out to take care of those issues instead of going back through a contractor.

Deposition of Gulf Stream's Scott Pullin, page 29, line 9 to page 30, line 12, attached as **Exhibit**

**C**.

## III.  GULF   STREAM   MIS-STATES   THE   LAW   WITH   RESPECT   TO DECLARATIONS.

Second, Gulf Stream cites an unreported Fifth Circuit case which, according to Gulf Stream, says that a Section 1746 declaration must be sworn **and** notarized.  *See Massay v. Fed. Correctional Institution-Texarkana*, 243 Fed. Appx. 871, 874 (5th Cir. 2007).   That case, involving a *pro se* federal inmate, involved an alleged "affidavit".  *Id.* The Court found that "[a]lthough entitled 'SIGNED AND SEALED AFFIDAVIT' and indicating his fellow inmate gave the statement under oath, it is not notarized and does not indicate it was made "under penalty of perjury" or that the statements contained therein were "true and correct."  *Id.*   The Fifth Circuit cited another Fifth Circuit case involving an "affidavit" that was "**neither** sworn

**nor** its contents stated to be true and correct **nor** stated under penalty of perjury." *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-06 (5th Cir.1988)(emphasis added). That is not the case here.

Notably, the *Massay* opinion also cited 28 U.S.C. § 1746[2] which provides:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

**(1)** If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

**(2)** If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

Plaintiff's declaration tracks Section 1746 and says, "I declare under penalty of perjury under that the foregoing is true and correct." Suffice it to say that Gulf Stream grossly misstates the law on this issue. Applying Gulf Stream's argument, Section 1746 would be rendered a nullity. If the Court deems that the declaration is insufficient in some way, Plaintiff respectfully requests leave to offer a notarized declaration.

---

[2] See also *Nissho-Iwai Am. Corp.*, 845 F.2d at 1306. ("It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment. A statutory exception to this rule exists under 28 U.S.C. § 1746, which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'")

## IV.    WHETHER THE GULF STREAM PERSON'S REPRESENTATION IS AN EXPRESS WARRANTY IS A FACT QUESTION.

Next, Gulf Stream contends that the representation by its agent, representative, or employee was not really an express warranty, as a matter of law.

The Louisiana Products Liability Act defines an "express warranty" as:

A representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. "Express warranty" does not mean a general opinion about or general praise of a product. A sample or model of a product is an express warranty.

LA.REV.STAT. ANN. § 9:2800.53(6).

Turning again to *Caboni v. General Motors Corp.*, 278 F.3d 448, 455 (5th Cir.2002)(cited in Gulf Stream's Motion and Plaintiff's Response Brief), in that case, the Fifth Circuit reversed a trial court's grant of summary judgment on an express warranty claim.  The Fifth Circuit noted that the question of whether a representation constituted an "express warranty" under the LPLA was a question for the fact finder and, in that case, that the trial court had improperly decided the matter at the summary judgment stage because the question was for the jury. *Id.* The same analysis applies here.  Whether or not the Gulf Stream employee, agent or representative's statement to Plaintiff is an "express warranty" is up to the fact finder.[3]

---

[3] Incidentally, the facts here are much different from *Hopkins v. Am. Cyanamid*, 674 So.2d 1042, 1043 (La. App. 2 Cir. 1996).   Contrary to what Gulf Stream says, in that case, the buyer did not ask if the product was safe and the seller did not respond that it was—as is the case here.  The seller just said that a company that he partially owned used the same fertilizer. *Id.*

**V.      CABONI IS ON POINT.**

Finally, to conclude its reply brief, Gulf Stream says that *Caboni v. General Motors Corp*, 278 F.3d 448 (5th Cir. 2002) is inapplicable.  Of course, Gulf Stream cited *Caboni* in its Motion, so it is odd that Gulf Stream now says that it does not apply.  In any event, *Caboni* is on point and, following the Fifth Circuit precedent, Gulf Stream's motion should be denied.

<u>**CONCLUSION AND PRAYER**</u>

Plaintiff respectfully requests that the Court deny Gulf Stream's Motion for Partial Summary Judgment.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE**
**PRODUCT LIABILITY LITIGATION**

BY:      <u>s/Gerald E. Meunier</u>
          GERALD E. MEUNIER, #9471
          **PLAINTIFFS' CO-LIAISON COUNSEL**
          Gainsburgh, Benjamin, David, Meunier &
          Warshauer, L.L.C.
          2800 Energy Centre, 1100 Poydras Street
          New Orleans, Louisiana 70163
          Telephone:     504/522-2304
          Facsimile:      504/528-9973
          gmeunier@gainsben.com

          <u>s/Justin I. Woods</u>
          JUSTIN I. WOODS, #24713
          **PLAINTIFFS' CO-LIAISON COUNSEL**
          Gainsburgh, Benjamin, David, Meunier &
          Warshauer, L.L.C.
          2800 Energy Centre, 1100 Poydras Street
          New Orleans, Louisiana 70163
          Telephone:     504/522-2304
          Facsimile:      504/528-9973

jwoods@gainsben.com
**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
ROBERT BECNEL
DENNIS REICH, Texas # 16739600

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
