UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION: N(5) |
| | * | |
| This Document Relates to: | * | |
| *Charlie Age, et al. v.* | * | JUDGE: ENGELHARDT |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | |
| | * | MAG: CHASEZ |

*****************************************************************************

**REPLY MEMORANDUM TO PLAINTIFFS' OPPOSITION TO
GULF STREAM COACH, INC.'S
MOTION *IN LIMINE* TO EXCLUDE
EXPERT TESTIMONY OF MARCO KALTOFEN, PE**

**MAY IT PLEASE THE COURT:**

Kaltofen lacks sufficient knowledge and qualification in the field of statistics to "describe how statistical sampling overcomes the problem of constantly changing variables in an EHU." (Rec. Doc. 2482 at 3).  Kaltofen is not qualified as a statistician.  Kaltofen is a civil engineer retained in this case to "find a way to test FEMA housing units for formaldehyde in the air; to agree … on a protocol that would allow this testing to be done in a reproducible, comparable manner; [and to] … look at the data that applied to [a] particular trailer, in light of the entire data set that had been put together on the other emergency housing units." (Rec. Doc. 2271-2 at Exhibit "B," pp. 36-37).  Kaltofen was not retained, nor is he qualified, to "estimate the average ranges of formaldehyde to which the Alexander family was exposed" based on a "statistically reliable profile of the units as a whole."  (Rec. Doc. 2482 at 3).  This is a job for a qualified statistician, which Plaintiffs have designated as Paul Hewett, Ph.D.

Kaltofen's statistical analysis is flawed because the 10,499 data points reported in Kaltofen's database are not representative of the overall population of the EHUs tested. DeVany, for instance, tested 5,031 of the EHU's considered by Kaltofen. (Rec. Doc. 2271-2 at Exhibit "B," pp. 117-18). Yet, Kaltofen is not even aware whether DeVany performed her tests with the HVAC systems running. *Id.* A valid statistical analysis offers methods to estimate and correct for any random trending within the sample and data collection procedures. There are also methods for designing experiments that can lessen these issues at the outset of a study, strengthening its capability to discern truths about the population. Kaltofen's methodology, however, did not factor in these confounding factors. Kaltofen had no control over the data collection process that took pace over several years by a variety of different groups. He admits that he is unaware of the conditions under which a majority of the data was collected. Kaltofen's "statistical analysis" is an after-the-fact attempt to establish a profile of the EHU's as a whole.

Plaintiffs argue in their opposition to motion in limine that Kaltofen's testimony is admissible because his methodology is reliable to "estimate the average range of formaldehyde to which the Alexander family was exposed." (Rec. Doc. 2482 at 3). In his report, Kaltofen offers a rudimentary explanation of statistical sampling, ultimately concluding that it is a "superior" method to the uncontrolled testing of the entire set of trailers. (Rec. Doc. 2271-2 at Exhibit "A," pp. 12-14). Kaltofen, however, does not actually use the method of statistical sampling to offer any opinions about the estimated average range of formaldehyde exposure experienced by Alexander. Kaltofen only explains how CDC used statistical sampling in preparation of its report. *Id.* Kaltofen's opinion about the average range of exposure experienced by Alexander is not based on statistical sampling, but rather on Kaltofen's own

May 6-7, 2009 testing.[1] Kaltofen specifically states that "the May 2009 data is more likely to be representative of what Ms. Alexander and Christopher Cooper actually experienced while residing in their trailer unit." This is Kaltofen's estimate of "average exposure." By his own admission, Kaltofen's opinions rely upon the May 2009 test results which this Court expressly excluded.

Kaltofen also uses the ASTM correction equations to support his opinion. Plaintiffs claim that the defendants went into detail *ad nauseum* about Kaltofen's use of temperature and humidity correction equations. (Rec. Doc. 2482 at 7). Plaintiffs referred to the defendant's argument as a "misplaced attempt" to discredit Kaltofen because Kaltofen was merely "illustrating" the extent of the effect temperature and humidity has on formaldehyde concentration. *Id.* But an entire section of Kaltofen's report is dedicated to "correcting" the January 2008 data collected by plaintiff's own expert, W.D. Scott. (Rec. Doc. 2271-2 at Exhibit "A," pp. 10; 14-15). Nowhere in Kaltofen's report is this methodology described as an illustration or demonstration. Kaltofen's use of correction equations was not intended as an illustration because he refers to the actual data collected by W.D. Scott as the "uncorrected January 2008" data. *Id.* at 10. Nonetheless, the ASTM correction equations have no probative value, regardless of whether the calculations lead to actual opinions or just unsupported illustrations. The reasons why ASTM correction equations are unreliable are *methodically* explained in Defendant's original motion - nausea was an unfortunate side-effect. (Rec. Doc. 2271-2).

---

[1] Kaltofen was part of Plaintiffs' third wave of experts to inspect the Alexander EHU on May 6-7, 2009. This Court ordered that the results of those tests would not be allowed, noting that, "Plaintiff's have failed to demonstrate how this third, much later test better depicts the air quality of the EHU as experienced by the bellwether plaintiffs while they resided therein." (Doc. Nos. 1547 and 2062). Yet, Kaltofen still opines about **probable** formaldehyde concentrations in the Alexander EHU.

Kaltofen has not performed a valid statistical analysis to describe how statistical sampling overcomes the problem of constantly changing variables in an EHU, nor is he qualified to do so. Kaltofen purportedly estimates, based on a statistical profile of the units as a whole, the "average range" of formaldehyde to which Alexander was exposed. But, an "average range" based on a reliable statistical analysis is nowhere to be found in Kaltofen's report. The only estimates of exposure offered by Kaltofen' are (1) that the May 2009 data is more likely to be representative of Alexander's exposure, and (2) the estimates Kaltofen calculated using the ASTM correction equations. Kaltofen's methodologies are unreliable and should be excluded.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER, & WEINSTOCK**

s/Andrew D. Weinstock

_____
**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Fax: (504) 837-3119
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON**
Timothy D. Scandurro #18424
Dewey M. Scandurro #23291
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
(504) 529-6199 (FAX)
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**


## **C E R T I F I C A T E**

I hereby certify that on the 12th day of August, 2009, a copy of the foregoing Reply Memorandum to Plaintiffs' Opposition to Gulf Stream Coach, Inc.'s Motion *in Limine* to Exclude Expert Testimony of Marco Kaltofen, PE was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

                                        s/Andrew D. Weinstock
                                    _____
                                    ANDREW D. WEINSTOCK #18495
                                        andreww@duplass.com