UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION N-5<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT RELATES:
*Age, et. al. v. Gulf Stream Coach, Inc., et al.* No. 09-2892
*Alana Alexander, individually and OBO minor Christopher Cooper*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS ALANA ALEXANDER AND
CHRIS COOPER'S REMAINING FTCA CLAIMS FOR LACK
OF SUBJECT MATTER JURISDICTION

Defendant United States of America submits this Memorandum in support of its Motion to dismiss Alana Alexander's remaining individual Federal Tort Claims Act ("FTCA"), 28 U.S.C. §1346(b)(1), 2671-80, claims and the remaining FTCA claims that she has brought on behalf of minor Chris Cooper for lack of subject matter jurisdiction because they are barred by the discretionary function exception. The Court, in its October 3, 2008, Order and Reasons (Rec. Doc. 717) and its August 13, 2009, Order and Reasons (Rec. Doc. 2621) held that the Federal Emergency Management Agency's ("FEMA") decision to respond to formaldehyde concerns and complaints on a case-by-case basis is protected by the discretionary function exception and that individuals claims are barred by the discretionary function exception if "the Government's case-by-case reactions [in that particular case] were consistent with and in furtherance of its general policy pronouncement of providing disaster victims with safe and habitable housing." August

13, 2009, Order and Reasons at 3-4 (Rec. Doc. 2671).[1]/

As the Government now demonstrates the Court lacks subject matter jurisdiction over Ms. Alexander's remaining FTCA claims. Specifically, dismissal is required because Ms. Alexander never voiced any concern or made any complaint to FEMA about formaldehyde or odors in her temporary emergency housing unit ("EHU" or "trailer"). *See* Exh. 3, Alexander Depo. pp. 310-12/22-19. Moreover, even if she had voiced any such concern or made a complaint to FEMA, dismissal would nevertheless be appropriate because:

> \*\*\*   On May 27, 2006, the day Ms. Alexander moved into the trailer, she noticed an odor and was instructed by the person providing orientation on operation of the unit to run the air conditioner and vent the unit if there were any odors or she had any concerns about indoor air quality. *See* Third Supplemental And Amended Complaint ("Complaint") ¶9 (Ms. Alexander moved into the unit on May 27, 2006) (Rec. Dec. 1686); Exh. 3, Alexander Depo. pp. 163-64/22-16; pp.166-67/25-12 (Ms. Alexander was instructed to open windows and door, and run the air conditioner to vent out the unit).
>
> \*\*\*   The trailer issued to Ms. Alexander was an older pre-Katrina unit and by virtue of its age (approximately 18 months old when issued to her), it constituted the type of unit that FEMA would have provided as a replacement if she had made a complaint and venting failed to resolve the complaint, *see* Complaint ¶6 (trailer was constructed on or about December 13, 2004) (Rec. Dec. 1686); Exh. 1, FEMA Inspection Report at FEMA154-0000051 (FEMA trailer inspection report dated December 15, 2004).
>
> \*\*\*   FEMA took action to distribute in August 2006 and July 2007 formaldehyde flyers to occupied trailers which warned occupants that units

---

[1]/   The United States respectfully believes that the Court's two prior rulings read the scope of the second prong of the discretionary functions exception too narrowly, and re therefore inconsistent with the Supreme Court's decision in *Gaubert v. United States*, 499 U.S. 315, 325 (1991), and the Fifth Circuit's decisions applying *Gaubert*. *See Andrade v. Chojnacki*, 338 F.3d 448, 457 (5th Cir. 2003); *Baldassaro v. United States*, 64 F.3d 206, 211-12 (5th Cir. 1995); *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *St. Tammany Parish v. FEMA*, 556 F.3d 307, 325 (5th Cir. 2009). Nevertheless, even under the Court's overly narrow interpretation of the second prong of the discretionary exception, the undisputed facts in this case demonstrate that the claims of Ms. Alexander are beyond this Court's subject matter jurisdiction for the reasons set forth herein.

>contained formaldehyde, notified occupants that they should talk with their doctor if they had any concerns, and explained to occupants what actions should be taken to reduce exposure to formaldehyde in the trailer. *See* Exh. 6, Bonomo Dec. ¶¶2-6; Exh. 7, Larson Dec. ¶¶2-8;. Exh. 8, Harder Dec. ¶¶2-5; Exh. 9, 2006 Formaldehyde Brochure; Exh. 10, 2007 Formaldehyde Flyer.

Accordingly, because Ms. Alexander never voiced any concern or complained to FEMA about formaldehyde or odors in her trailer, the Court should grant the United States' motion and dismiss Ms. Alexander's remaining FTCA claims for lack of subject matter jurisdiction.

## STANDARD OF REVIEW

The United States moves to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3). In the alternative, the United States moves under Rule 56 for a summary judgment dismissing this action for lack .

The Court, in its October 2008 Order and Ruling, addressed the applicable standards of review under Rule 12(b)(1) and Rule 56, and decided the United States' motion under Rule 56 because the facts relevant to the discretionary function exception appeared to be intertwined with the merits. October 3, 2008, Order and Reasons at 6-9 (Doc. Rec. 717). Notwithstanding the Court's October 2008 Order (Doc .Rec.717), the Court should resolve this motion under Rule 12(b)(1), not Rule 56. The only remaining issue with regard to application of the discretionary function exception issue is whether FEMA's interaction with Ms. Alexander from May 27, 2006, until she vacated the trailer in December 2007, were consistent with and in furtherance of the Court's finding that FEMA had a general policy to provide safe and habitable housing. August 13, 2009, Order and Ruling at 2 n. 1, 3 n. 2, & 3-4 (Doc. Rec. 2621). In deciding a Fed. R. Civ. P. 12(b)(1) motion, the Court may consider exhibits outside the pleadings; indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."

*Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3rd Cir. 1977). *See also Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Rule 12(b)(1) motions are treated differently from Rule 56 summary judgment motions because the jurisdictional issue presented in Rule 12(b)(1) motion, whether it involves questions of law or fact, must be resolved by the court as a preliminary matter. *See Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). The only issue that the Court must address is whether Ms. Alexander complained to FEMA about formaldehyde or odors in the trailer, and if she did, whether FEMA responded in a manner consistent with its general policy pronouncement. This issue is a discrete and distinct matter that should be resolved pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3), rather then Rule 56. Alternatively, in the event that the Court believes that this matter is more appropriately addressed under Rule 56, based upon the undisputed facts, the Court should grant summary judgement and dismiss Ms. Alexander's FTCA claims.

**ARGUMENT**

Ms. Alexander's remaining FTCA claims must be dismissed because the undisputed evidence shows that she moved into the trailer on May 27, 2006, that the trailer she was issued was an older pre-Katrina unit, and that she never complained to FEMA about formaldehyde or odors in the trailer. Thus, as this Court recognized, consistent with FEMA's June 2006 policy determination regarding the appropriate response actions, FEMA's failure to affirmatively take any specific actions to reduce Ms. Alexander's alleged exposure to formaldehyde is protected by the discretionary function exception. *See* August 13, 2006, Order and Ruling at 2 n.1 (Dec. Rec. 2621); *see also* Souza Dec. ¶¶13-14 (Doc. Rec. 196-11); June 18, 2006, E-Mail, FEMA (Doc. Rec. 196-32).

The undisputed evidence shows that Ms. Alexander never voiced any concerns or complaints to FEMA about formaldehyde or odors in the trailer. Ms. Alexander testified:

> Q. Now, you said earlier that when entering the unit, there were some odors and smells in the unit, right?
>
> A. Yes.
>
> Q. And you said that you talked about those odors and smells with a person who was here with you in the unit; is that correct?
>
> A. Yes.
>
> Q. And that was somebody who was walking you through the unit for the first time?
>
> A. Yes.[2]
>
> Q. After that conversation, did you ever call anyone about the odors or smells?
>
> A. No.
>
> Q. Do you remember there being a telephone number listed inside of the unit?
>
> A. Not in the unit, I think it was in the book.
>
> Q. There was a number you understood to be a number for maintenance calls?
>
> A. Yes.
>
> Q. Okay. And you never called that maintenance number about odors or smells?
>
> A. No.

---

[2] There exists a dispute between Ms. Alexander and Defendant Gulf Stream Coach, Inc., regarding whether the person who provided the orientation instructions to Ms. Alexander was employed by Gulf Stream Coach, Inc., or by a Government contractor or a Government contractor's sub-contractor. *Compare* Gulf Stream's Reply Brief In Support Of Its Motion to Dismiss Plaintiff's Express Warranty Claims (Doc. Rec. 2591), *with*, Plaintiff's Sur-Reply In Opposition To Gulf Stream Coach, Inc.'s Motion for Partial Summary Judgment (Doc. Rec. 2702). This dispute is of no consequence to the instant Motion because it is undisputed that the person who provided the orientation to Ms. Alexander was not a FEMA employee, *id*., and the undisputed evidence shows that Ms. Alexander's venting of the unit resolved any concerns regarding the odor in the unit that she reported to the person providing her with instructions that first day regarding operation of the trailer. *See supra* at 7-9.

> Q. In addition, there's a separate FEMA phone number that you knew about to call about getting assistance from FEMA, right?
>
> A. Yes.
>
> Q. Did you ever call FEMA about any odors or smells in the unit?
>
> A. No.
>
> Q. I will ask a slightly different question now, and I think I know your answer because you said you first heard about formaldehyde in December of 2007. That's what you said?
>
> A. Yes.
>
> Q. So you would have never made any complaints specifically about formaldehyde to anyone on that maintenance phone number, right?
>
> A. Correct.
>
> Q. And you've never made any formaldehyde complaints to FEMA using the FEMA telephone number?
>
> A. That's correct.

Exh. 3, Alexander Depo. at 310-12/22-19.

Moreover, even if Ms. Alexander had complained to FEMA about odors or formaldehyde, dismissal of her FTCA claims is nevertheless required. FEMA made the policy determination that if an trailer occupant expressed concerns or complained about formaldehyde fumes, they would be instructed to vent the trailer and if that failed to resolve their concern, an offer would be made to switch out the unit and replace it with an older unit. *See* Souza Dec. ¶¶13-14 (Doc. Rec. 196-11); June 18, 2006, E-Mail, FEMA (Doc. Rec. 196-32). FEMA believed that replacement using older units was an appropriate response because it believed that the older units would have lower formaldehyde levels as a result of their age and past use. *See* Souza Dec. ¶¶13-14 (Doc. Rec. 196-11); June 18, 2006, E-Mail, FEMA (Doc. Rec. 196-32). On the day that

Ms. Alexander moved into the trailer she apparently noticed an odor in the unit and was instructed by the person who provided orientation instructions to run the air conditioner and air out the unit.

> Q. Were you provided any instructions concerning the trailer?
>
> A. After we got in the trailer.
>
> Q. Somebody came out to see you?
>
> A. Yes.
>
> Q. Who came out to see you?
>
> A. I'm not sure. I don't remember what the lady's name was.
>
> Q. Who was she with?
>
> A. I think she was with Gulf Stream. She said she was with the trailer people.
>
> Q. Okay. What did she tell you?
>
> A. She explained how to hook up the propane tanks and everything. She told us how to use the stove, how to use the microwave and everything, and she showed us around. She said the smell that we were smelling was because the trailer was new and had been closed up and to just air the trailer out . . .

Exh. 3, Alexander Depo. pp. 163-64/22-16. Ms. Alexander further explained:

> Q. What did she tell you about airing the trailer out?
>
> A. She said just open the windows and the door, because there was a screen door on it. You open the windows and the door and you could turn the air conditioner on and let it blow out. Especially if we was gone for the day and was coming back in, to let that happen for a few minutes.
>
> Q. So she said if you were out and the trailer had been closed up, to make sure that you opened the door and windows and turned on the AC for a little while?
>
> A. Yes.

Exh. 3, Alexander Depo. pp. 166-67/25-12. As Ms. Alexander explained, she diligently followed

7

those instructions.

> Q. Once the lady left, did you follow the instructions to open the windows and door and to use the AC?
>
> A. Yes.
>
> Q. Okay. And what happened at that point, did it clear out the smell?
>
> A. Yeah, it started to like dissipate after about an hour of airing it out.
>
> Q. Did you continue to have sneezing and itchy eyes after it had been aired out?
>
> A. No, not after it aired out.

Exh. 3, Alexander Depo. pp. 168/8-17. Ms. Alexander further explained:

> Q. Is it correct that from the first day that you moved into the trailer that you tried to air it out and ventilate it?
>
> A. Yes.
>
> Q. You opened the door and windows to ventilate the trailer?
>
> A. Yes.
>
> Q. And you did that from day one when you arrived until day whatever when you moved out of the unit; is that right?
>
> A. No.
>
> Q. No? When did you stop venting out the trailer?
>
> A. When we would walk in and you wouldn't smell it.
>
> Q. Okay. So for the first couple of months you lived in the unit, you tried to ventilate it as much as possible?
>
> A. No, I did ventilate it every day.
>
> Q. Okay. And that included opening doors and opening windows?
>
> A. Yes.

> Q. Would you also use the AC to keep temperatures low inside the unit?
>
> A. Yes.
>
> Q. Did that occur from day one through the end of your time in the unit?
>
> A. Yes. During the summer months.
>
> Q. Right. You would always try to maintain a comfortable temperature in the unit when you lived in it, correct?
>
> A. Yes.

Exh. 3, Alexander Depo. 286-87/8-14. *See also* Exh. 3, Alexander Depo. pp. 175-76/11-23 (unit had four windows and the first thing that Ms. Alexander did when she returned to her closed-up unit was to open all the windows and turn on the air conditioner); p. 379/2-12 (Ms. Alexander vented the unit whenever cooking, and kept the windows open on nice days); p. 414-15/14-2 (Ms. Alexander always left the bathroom vent open except when it rained).

Second, dismissal of Ms. Alexander's FTCA claims is required, because if she had complained to FEMA – which she did not – and venting and airing had not resolve her concerns – FEMA's policy would have simply resulted in her being issued a similar older pre-Katrina built travel trailer. *See generally* Souza Dec. ¶¶13-14 (Doc. Rec. 196-11); June 18, 2006, E-Mail, FEMA (Doc. Rec. 196-32). Accordingly, even if Ms. Alexander had complained to FEMA and airing out and venting the unit had not resolved the complaint, the only further response action that FEMA allowed was to swap out her unit for a similar "older" trailer because there was no other alternative housing available in New Orleans. *See* Exh. 1, FEMA Inspection Report at FEMA154-0000051 (trailer received by FEMA on December 15, 2004); Exh. 3, Alexander Depo. pp. 297-300/21-25; 302-03/14-2 (but for the trailer Ms. Alexander had no place to live in New Orleans); *see also* Souza Depo. pp. 145-47/22-10 (the only alternative available if the

9

trailers were uninhabitable was to relocate aid recipients to remote out of State locations) (Doc. Rec. 2505-5); McNeese Depo. pp. 116-21/14-19; pp. 118-19/22-16 (Doc. Rec. 2505-3) (same). Accordingly, even had Ms. Alexander complained and requested that the unit be swapped out, no further response action was available, other then potentially relocating her to a remote location in some other part of the State or in a different State. *See generally* Souza Depo. pp. 145-47/22-10 (Doc. Rec. 2505-5); McNeese Depo. pp. 116-21/14-19; pp. 118-19/22-16 (Doc. Rec. 2505-3).

Finally, Ms. Alexander's claim is barred because FEMA issued formaldehyde warnings that were distributed to occupied trailers in August 2006 and July 2006. Ms. Alexander recalled receiving a flyer addressing formaldehyde and believed that it is possible that she received the August 2006 flyer, thinks that a formaldehyde flyer was taped to her trailer door, and that the August 2006 flyer looked familiar. Exh. 3, Alexander Depo. pp. 291-95/22-18; *see also* Exhibit 3, Alexander Depo. p. 234/15-18; pp. 195-96/10-19; Exh. 9, August 2006 Formaldehyde Brochure. FEMA made efforts to deliver that flyer to all occupied trailers located on private sites in New Orleans and the surrounding Parishes. Exh. 6, Bonomo Dec. ¶2-6. That flyer told trailer occupants that:

> Formaldehyde can affect people differently, some people are very sensitive to formaldehyde while others may not have any noticeable reaction to the same level. People with eye, skin, respiratory, or allergic conditions, and those with asthma are potentially more susceptible to the effects of formaldehyde. Children and the elderly may be more sensitive as well. ***People who suspect that they are sensitive to formaldehyde should work closely with a doctor to see if formaldehyde is causing there symptoms.***

Exh. 9, August 9, 2006, Formaldehyde Brochure at FEMA08-000014 (emphasis added). The Formaldehyde Flyer further explained that to reduce formaldehyde levels occupants should: (1) increase ventilation; (2) keep indoor temperatures moderate; (3) lower humidity; and (4) refrain

from smoking inside the trailer. Exh. 9, August 2006, Formaldehyde Brochure at FEMA08-000014. Significantly these are the same actions that Ms. Alexander was instructed to take on the day that she moved in the unit, and that she diligently practiced during her occupancy of the trailer. Exh. 3, Alexander Depo. pp. 163-64/22-16; pp. 166-67/25-12.

The undisputed evidence demonstrates that FEMA's conduct towards Ms. Alexander fell well within the bounds of the Court's instruction and interpretation of the second prong of the discretionary function exception. Ms. Alexander never complained or voiced any concers to FEMA about formaldehyde or odors in her trial. Any alleged negligent conduct of FEMA with respect to Ms. Alexander, is susceptible to policy analysis, and FEMA's conduct toward Ms. Alexander during the relevant time was consistent with FEMA's general policy to provide safe and habitable housing. Accordingly, consistent with the Court's October 3, 2008, Order and Reasons, and its August 13, 2009, Order and Reasons, the Court should grant the United States's motion and dismiss the claims against FEMA in this particular case.

## CONCLUSION

For all the reasons set forth herein, the Court should grant the United States' motion and dismiss Plaintiffs Alexander and Cooper's remaining FTCA claims for lack of subject matter jurisdiction. Alternatively, the Court should grant summary judgment to the United States and dismiss Plaintiffs' Alexander and Cooper's remaining FTCA claims.

Dated: August 17, 2007.                                   Respectfully Submitted,

TONY WEST                                                 ADAM BAIN
Assistant Attorney General, Civil Division                Senior Trial Counsel

J. PATRICK GLYNN                                          ADAM DINNELL
Director, Torts Branch, Civil Division                    MICHELE GREIF
                                                          JONATHAN WALDRON
DAVID S. FISHBACK                                         Trial Attorneys
Assistant Director

                                                          //S// *Henry T. Miller*
                                                          HENRY T. MILLER (D.C. Bar No. 411885)
OF COUNSEL:                                               Senior Trial Counsel
JORDAN FRIED                                              United States Department of Justice
Associate Chief Counsel                                   Civil Division – Torts Branch
                                                          P.O. Box 340, Ben Franklin Station
JANICE WILLIAM-JONES                                      Washington, D.C. 20004
Trial Attorney                                            Telephone No: (202) 616-4223
FEMA/DHS                                                  E-mail: Henry.Miller@USDOJ.Gov
Department of Homeland Security
Washington, D.C. 20472                                    Attorneys for the United States of America


## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2009, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

                                                          //S// Henry T. Miller
                                                          HENRY T. MILLER (D.C. Bar No. 411885)