Page 1

1                UNITED STATES DISTRICT COURT
2                EASTERN DISTRICT OF LOUISIANA
3
4    IN RE:    FEMA TRAILER            * MDL NO. 1873
5              FORMALDEHYDE PRODUCTS   *
6              LIABILITY LITIGATION    * SECTION "N" (5)
7                                      *
8                                      * JUDGE ENGELHARDT
9    THIS DOCUMENT IS RELATED TO       * MAGISTRATE CHASEZ
10                                     *
11   Charlie Age, et al v. Gulf        *
12   Stream Coach, Inc., et al,        *
13   Docket No. 09-2892; Alana         *
14   Alexander, individually and on    *
15   behalf of Christopher Cooper      *
16                       - - - - -
17     Videotaped telephone deposition of CHARLES
18   A. WHITAKER, JR., P.E., taken by the
19   Plaintiffs, pursuant to notice and/or
20   agreement, before Phyllis Butler, Court
21   Reporter and Notary Public, at the Hilton,
22   45 West Orchard Park Drive, Greenville,
23   South Carolina, on the 5th day of August,
24   2009, commencing at the hour of 9:39
25   o'clock, a.m.

Page 131

1   had stickers on them that indicated
2   that. So since the fact that we
3   actually delivered the unit, we did.
4   Some owners manuals have information in
5   it, and we provided the owner manuals
6   that were provided to us. So some of
7   that. So if that's what you mean, yes.
8   Q.   Well, for the units that didn't have an
9   owner's manual saying anything about
10  formaldehyde or didn't have a label or
11  a notice in it with regard to
12  formaldehyde, Fluor didn't take any
13  steps to inform the residents who were
14  living in those travel trailers of
15  formaldehyde, did they?
16    MR. PENOT:  Object to the form.
17  A.   Well, that's almost a proof of a
18  negative. Well, we identified that we
19  weren't aware of any hazard in the unit
20  in the stage one, so there's no need to
21  warn somebody of something that is not
22  an issue. The ones we are aware of in
23  Stage II, as you labeled it, that there
24  was a potential hazard, we informed the
25  client, FEMA, and asked for further

1  direction and asked what we should do,
2  and we were basically told that it's
3  not our issue, no further action on
4  your part is required.  So FEMA was
5  developing a communications plan, a
6  mitigation plan, and so forth, and they
7  didn't even --- did not need our
8  assistance.
9  Q.   Sir, are you saying that Fluor brought
10  it to FEMA's attention there was a
11  problem with formaldehyde, and FEMA
12  says, "We're going to take care of it"?
13    MR. MILLER:  Objection.
14  Mischaracterizes the witness'
15  testimony.
16    MR. PINEDO:  I'm trying to
17  summarize the testimony.
18  A.   I wouldn't say that we informed them of
19  the problem.  They informed us of the
20  problem and asked what we were doing
21  about it.  We told them this is the
22  first we know of the problem.  We asked
23  --- we --- we did some investigation,
24  did some analysis like we talked about
25  in Stage II, and we reported those

1  A.    Yes, sir.  The analysis report that was
2  given to FEMA.
3  Q.    And do you know approximately when that
4  analysis report on formaldehyde was
5  given to FEMA?
6  A.    I don't know the exact date, but very
7  shortly after that first E-mail came we
8  --- we responded quickly.
9  Q.    Within a matter of a week or two?
10 A.    I would say "yes."  I --- I don't
11 remember the exact date, but I mean, we
12 had to purchase sampling media and get
13 that.  We, you know, expedited
14 shipments, that kind of stuff.  So we
15 did it, did the thing, did the report,
16 and issued it as quickly as we could.
17 Q.    And the report back --- let me start
18 over.  After FEMA got that report they
19 came back and told you what?  Told
20 Fluor what?
21 A.    We asked them if any further action was
22 required on our part, and we were
23 instructed no further action was
24 required on our part.
25 Q.    And that analysis report just examined