UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION:  N(5) |
| | * | |
| This Document Relates to:  *Charlie Age, et al. v.* | * | JUDGE: ENGELHARDT |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | |
| | * | MAG: CHASEZ |

**************************************************************************

<u>**MEMORANDUM IN SUPPORT OF PARTIAL MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, MOTION IN LIMINE**</u>

**MAY IT PLEASE THE COURT:**

Defendant, Gulf Stream Coach, Inc. ("Gulf Stream"), respectfully submits this memorandum in support of its partial motion for summary judgment regarding the Plaintiff's claim that the alleged defects in Gulf Stream's EHU were the result of Gulf Stream's failure to test the units properly in order to evaluate the level of formaldehyde emissions under foreseeable conditions for extended periods of time. Alternatively, Gulf Stream requests that the Court exclude all evidence of Gulf Stream's alleged failure to test as it is irrelevant and highly prejudicial.

**I.      BACKGROUND**

As this Court is well aware, this Multi-District Litigation is the consolidation of several state and federal toxic tort suits in which an estimated thirty thousand named plaintiffs claimed to have inhabited emergency housing units ("EHUs") that were provided to them by the Federal Emergency Management Agency ("FEMA") as a result of the alleged uninhabitability of their residences due to Hurricanes Katrina and Rita. (Doc. No. 109, at ¶ 96). One of those plaintiffs was Alana Alexander, who resided in a Gulf Stream-manufactured EHU that was built in 2004.

The Plaintiff first filed suit on February 27, 2009. (*Age, et al. v. Gulf Stream Coach, Inc., et al.*, 09-2892, Doc. No. 1). In April, she and her minor child were selected as the bellwether plaintiffs in a trial against Gulf Stream. (Doc. No. 1299).

In her original Complaint for Damages, the Plaintiff made various allegations related to this litigation. Namely, the Plaintiff alleged in part that EHUs manufactured by Gulf Stream were in a defective condition, and the defects in those units were the result of and/or included Gulf Stream's failure to test the units properly in order to evaluate the level of formaldehyde emissions under foreseeable conditions for extended periods of time. (Doc. No. 1 at ¶ 101, 102(vi)). This Honorable Court understands this allegation to mean "that as a consequence of Gulf Stream's failure to test, the EHU was rendered defective in composition and design, leaving Gulf Stream with an unsafe level of formaldehyde." (Doc. No. 2322, p. 5). Gulf Stream respectfully submits that the Plaintiff cannot carry her burden of proving that the Plaintiff's EHU was defective <u>because</u> Gulf Stream failed to test the unit to evaluate the level of formaldehyde emissions therein.

## II.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be rendered if the pleadings, discovery, disclosure materials and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* Further, "It is axiomatic that where questions of law alone are

involved in a case, summary judgment is appropriate." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tx. Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976).

 If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.,* 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must go beyond the pleadings and through affidavits, depositions, answers to interrogatories, and admissions on file must designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F .3d 400, 402 (5th Cir.2001).

 When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

 Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to

summary judgment. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir.2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.1994), *cert. denied,* 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir.2002).

## III.   LAW AND ARGUMENT

### A. Gulf Stream is entitled to summary judgment on the Plaintiff's allegation of failure to test

Under Louisiana law, a claimant has only two viable vehicles for asserting liability against a manufacturer for damages allegedly caused by the manufacturer's product – the LPLA and redhibition law. The LPLA explicitly provides that the Act "establishes the exclusive theories of liability for manufacturers for damage caused by their products," and "a claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]." LA. REV. STAT. ANN. § 9:2800.52 (2009). An analysis of the exclusivity provision in the LPLA has led this Court to comment, "The plain language in the legislative history of the LPLA demonstrates the legislature's intent to make the

[LPLA] and Louisiana redhibition law the sole vehicles for a suit against a manufacturer for damages arising from a defective product." *Stroderd v. Yamaha Motor Corporation, U.S.A.*, 2005 WL 2037419, *1 (E.D. La. 8/4/05); s*ee Jefferson v. Lead Industries Associates, Inc.*, 930 F. Supp. 241 (E.D. La. 1996); *In re Ford Motor Company Vehicle Paint Litigation*, 1996 WL 426548, *15 (E.D. La. 1996).

Various decisions from the Louisiana federal court jurisprudence show that there is no basis in the LPLA for a claim that the manufacturer failed to test a product adequately. *Theriot v. Danek Medical, Inc.*, 168 F.3d 253, 256 (5th Cir. 1999); *Weaver v. CCA Indus.*, 2009 WL 1322290, at *12 n. 9 (W.D.La. May 12, 2009); *Cantu v. C.B. Holding Co.*, 2007 WL 689566, at *3 (W.D.La. March 1, 2007). Accordingly, this Court has already held in this very case that the LPLA does not recognize, standing alone, a claim for a manufacturer's failure to test its product. (Doc. No. 2322, p. 4). The LPLA does, however, recognize a claim that a product can potentially be unreasonably dangerous in composition, design, inadequate warning, or breach of express warranty because of the manufacturer's failure to test. *See MacDonald v. Monsanto*, 1995 WL 581942, *1 (5th Cir. 1995). Thus, the Plaintiff in this case can only introduce evidence of Gulf Stream's alleged failure to test her EHU to the extent that she can show "that as a consequence of [the] failure to test, the EHU was rendered defective in composition and design, and left Gulf Stream's custody with an unsafe level of formaldehyde." (Doc. No. 2322, p. 4).

In this case, Gulf Stream respectfully submits that the Plaintiff cannot carry that burden. As the Court has said, the failure to test is only cognizable as part of the broader question of whether the EHU was unreasonably dangerous because it contained an unsafe level of formaldehyde. However, that issue is straightforward – either the Plaintiff's unit was built with an unsafe level, or it was not. What Gulf Stream did or failed to do in testing the unit cannot

change that fact. The level is what it is, and the parties must litigate whether the level is appropriate or excessive.

Nevertheless, the Plaintiff wants to try the issue of Gulf Stream's knowledge of complaints in March 2006 and its subsequent investigation of the formaldehyde issue. However, as Gulf Stream has asserted on several occasions, any knowledge Gulf Stream acquired in 2006 is an irrelevant consideration under the Louisiana Products Liability Act ("LPLA") with respect to this 2004-built trailer. There are only four ways in which a product can be unreasonably dangerous under the LPLA – construction/composition, design, the manufacturer's failure to provide an adequate warning about the product, or the failure of the product to conform to an express warranty that the manufacturer has given about the product. LA. REV. STAT. § 9:2800.54(B) (2009). Under each of the four theories of liability, knowledge is irrelevant. The focus of the first theory, construction/composition, is whether the product deviated in a material way from the manufacturer's specifications, performance standards or products it made that were otherwise identical to the product involved in the litigation. § 9:2800.55. The focus of the second theory is whether an alternative design for the product existed that would have prevented the claimant's damage and whether the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and any adverse effect the alternative design would have had on the utility of the product. § 9:2800.56. The focus of the third theory is whether the product possessed a characteristic that could cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of that characteristic to the product's users and handlers. § 9:2800.56. And the focus of the fourth theory is whether the product does not conform to an express warranty made by the manufacturer about the product, provided the warranty has

induced the use of the product <u>and</u> the untruthfulness of the warranty caused the claimant's damage. § 9:2800.58. Nowhere in the LPLA is knowledge made an essential element of this Plaintiff's claim.

Here, the Plaintiff must try to show that Gulf Stream knew or should have known what levels of formaldehyde were in the units at the time they left Gulf Stream's control. Yet, under the LPLA, Gulf Stream's knowledge has no relevance to the question of whether the Plaintiff suffered damage from an unreasonably dangerous product. As stated above, either the unit had an unsafe level of formaldehyde that caused the Plaintiff's alleged injuries, or the unit was safe and adequate. The knowledge component of the alleged "continuing duty to warn," which is the subject of other motions, has no relationship to the testing of a trailer that was built and delivered well before the formaldehyde complaints reached Gulf Stream in March 2006.

Regardless, , Gulf Stream asserts that although it has no impact on the issue of whether the unit was defective, the federal government performed testing on the EHUs well before the plaintiffs moved into theirs. OSHA performed approximately 177 formaldehyde tests on newly constructed travel trailers between October 2005 and January 2006, concluded that ventilating the trailers lowered formaldehyde concentrations to acceptable levels and was a sufficient response action, and that recipients of units should be encouraged to continue ventilation after set-up of the units. (Rec. Doc. 1545-10, ¶¶ 5—7). Later, approximately two months before the Plaintiff moved into her unit, FEMA conducted its own formaldehyde tests on unoccupied units and reached essentially the same conclusion. (Rec. Doc. 1545-12, ¶¶ 3, 8—9). This testing involved unoccupied units, including Gulf Stream units. *Id*. at ¶ 9. Thus, the failure to test in 2004 that the Plaintiff has alleged is, in fact, a red herring. The government tested a significant quantity of unoccupied units in 2005 and 2006, and cleared the units for occupancy. The

evidence shows that if Gulf Stream had tested the plaintiff's unit in 2004, the results would have been exactly the same: FEMA would have cleared the unit for occupancy in May 2006. There is no genuine issue regarding Gulf Stream's alleged "failure to test" because the alleged failure had no causal effect on this Plaintiff, who moved in well after the government testing took place.

Moreover, there must be some threshold showing of a factual basis for imposing a "duty to test" as a part of a design protocol. Thousands of 2004 trailers (including the Plaintiff's unit) were deployed to Florida in 2004, and there were no issues with formaldehyde.[1] In fact, the 2004 and older trailers were used as replacements when FEMA decided to swap out newer units on which they received complaints, and there were zero reported problems from the residents who occupied these replacement units. Exhibit B, at 106—07. Given this track record, the Plaintiff's allegation of "failure to test" is hollow. Accordingly, she cannot establish any "duty to test" her unit, or carry her burden that the failure to test led to construction or design defects.

**B. Alternatively, the Court should strike all evidence of the alleged failure to test**

Gulf Stream also asserts that, in the alternative, any evidence of Gulf Stream's alleged failure to test is irrelevant, and even if it were, is inadmissible because it is extremely prejudicial. Under the Federal Rules of Evidence, only relevant evidence is admissible. FED. R. EVID. 402 (2009). However, the Court may still exclude such evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. FED. R. EVID. 403 (2009).

---

[1]    *See* Deposition of David Garratt, taken on July 7, 2009, p. 178—81, 204—06, attached as Exhibit "A"; Deposition of Martin McNeese, taken on July 14, 2009, p. 100—01, attached as Exhibit "B"; Deposition of Stephen Miller, taken on July 9, 2009, p. 184, attached as Exhibit "C"; Deposition of David Porter, taken on July 8, 2009, p. 76—78, attached as Exhibit "D."

As to relevance, the evidence regarding Gulf Stream's lack of testing applies to a single issue – Gulf Stream's knowledge of how much formaldehyde was in the EHUs it manufactured. As stated above, knowledge is immaterial in determining whether a manufacturer is liable under the LPLA. The only instance in which knowledge plays a role under the LPLA is the so-called continuing duty to warn, but that has no application to the testing of a 2004 unit that was manufactured and delivered well before Gulf Stream received complaints about formaldehyde. Thus, such evidence is irrelevant because it has no tendency to make the existence of a consequential fact more probable or less probable in this case. FED. R. EVID. 401 (2009).

If the Court were to find such evidence relevant, however, Gulf Stream further submits that such evidence should be excluded because it is highly prejudicial. Considering that the failure to test is not an independent cause of action under the LPLA, it is only probative to show that a product could be unreasonably dangerous through composition or design. (Doc. No. 2322, p. 4). Yet, its probative value in that instance is minuscule because the unit was either built with an unsafe level of formaldehyde or it was not. Further, there were no reported complaints of formaldehyde in the 2004 EHUs, and testing done prior to the Plaintiff's occupation of an EHU showed that the units were fit for occupancy as far as the government was concerned.. *Supra*, at 7—8. Thus, the failure to test in 2004 has no bearing on the question of whether Gulf Stream's trailer was unreasonably dangerous in 2006 and 2007. On the other hand, the information could be extremely prejudicial because it could improperly force Gulf Stream to prove why testing for formaldehyde was unnecessary or inappropriate in 2004. Absent any factual basis for a specific, genuine belief that a 2004 trailer might be unreasonably dangerous due to formaldehyde, it is prejudicial, irrelevant and a waste of time to make Gulf Stream prove that testing was

unnecessary.   Thus, even if the evidence regarding Gulf Stream's failure to test is relevant, it should be excluded because its probative value is outweighed by the danger of unfair prejudice.

## IV.      CONCLUSION

Any "failure to test" theory is inapplicable to the facts of this case. The court might be faced with a different analysis if the plaintiff's trailer was built in April 2006, after complaints regarding formaldehyde surfaced. Here, however, such evidence has no place and would be extremely prejudicial, confusing and misleading. Accordingly, Gulf Stream asks this Court to grant summary judgment in its favor, thereby dismissing the Plaintiff's claim that the alleged defects in Gulf Stream's EHU were the result of Gulf Stream's failure to test the units properly in order to evaluate the level of formaldehyde emissions under foreseeable conditions for extended periods of time. Alternatively, Gulf Stream requests that the Court exclude all evidence of Gulf Stream's alleged failure to test as it is irrelevant and highly prejudicial.

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS,**
**PFISTER & WEINSTOCK**

s/Andrew D. Weinstock

_____
**ANDREW D. WEINSTOCK #18495**
**JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
(504) 837-3119 (FAX)
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON**
**Timothy D. Scandurro #18424**
**Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
(504) 529-6199 (FAX)
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

**C E R T I F I C A T E**

I hereby certify that on the 17th day of August, 2009, a copy of the foregoing Memorandum in Support of Partial Motion for Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER              *          MDL NO. 1873
        FORMALDEHYDE         *
        PRODUCTS LIABILITY     *          SECTION: N(5)
        LITIGATION           *
                             *          JUDGE: ENGELHARDT
This Document Relates to: *Charlie Age, et al. v.*  *
*Gulf Stream Coach Inc., et al*, Docket No. 09-2892 *      MAG: CHASEZ
******************************************************************************

## GULF STREAM'S STATEMENT OF UNCONTESTED MATERIAL FACTS

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Gulf Stream

Coach, Inc. ("Gulf Stream"), who, in support of its Motion for Summary Judgment states the

following uncontested material facts solely for the purpose of this Motion.

1. This Multi-District Litigation is the consolidation of several state and federal toxic

tort suits in which an estimated thirty thousand named plaintiffs claimed to have

inhabited emergency housing units that were provided to them by the Federal Emergency

Management Agency as a result of the alleged uninhabitability of their residences due to

Hurricanes Katrina and Rita.

2. The Plaintiff, Alana Alexander, resided in a travel trailer, VIN No.

1NL1GTR2551021783, after Hurricane Katrina.

3. That unit, VIN No. 1NL1GTR2551021783, was built in 2004.

4. While occupied by the Plaintiff, the unit contained a given level of formaldehyde.

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495**

**JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
(504) 837-3119 (FAX)
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON**
**Timothy D. Scandurro #18424**
**Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
(504) 529-6199 (FAX)
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

## C E R T I F I C A T E

I hereby certify that on the _____ day of ____, 2009, a copy of the foregoing Statement of Uncontested Material Facts was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com