UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | 07-md-1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION: N(5) |
| | | * | |
| | | * | JUDGE: ENGELHARDT |
| | | * | |
| | | * | MAG: CHASEZ |

This document is related to:
   *Charlie Age, et al. v. Gulf Stream Coach, Inc., et al., No. 09-2892*

*****************************************************************************

**MEMORANDUM IN SUPPORT OF
FLUOR ENTERPRISES, INC.'S MOTION FOR SUMMARY JUDGMENT
BASED ON PRESCRIPTION**

This memorandum is submitted on behalf of Fluor Enterprises, Inc. (**FEI**) in support of its motion for summary judgment on the grounds that Plaintiffs' claims against FEI have prescribed by the operation of liberative prescription of one year pursuant to Louisiana Civil Code article 3492.

**PRELIMINARY STATEMENT**

Plaintiffs' lawsuit is time barred by operation of liberative prescription as a matter of law. Plaintiffs' claims have prescribed on the face of their complaint because they allege that they vacated their travel trailer "on December 30, 2007," "within a month after plaintiff first became aware of the potential dangers of formaldehyde exposure in the trailer,"[1] but they did not file suit until February 27, 2009, more than one year later. Moreover, the undisputed evidence, including plaintiffs' own deposition testimony and medical records, shows that Plaintiff, Alana Alexander,

---

[1] Rec. Doc. 1686, par. 9 & 10.

had not just constructive, but actual knowledge of the potential danger of formaldehyde exposure in her trailer and its perceived aggravation of her son's asthma by December 4, 2007, at the latest. Plaintiffs' own undisputed knowledge means that their delay in filing suit until February 27, 2009 was simply unreasonable. They knew too much to wait, and their lawsuit against FEI has prescribed.

Further, Plaintiffs cannot prove that prescription was suspended or interrupted because (1) Plaintiffs were not named plaintiffs in the class action suit, and/or (2) FEI was not named as a defendant in the Hillard class action suit, precluding application of the doctrine of American Pipe tolling. As a matter of law, Plaintiffs' claims against FEI have prescribed, entitling FEI to summary judgment dismissing those claims.

## STATEMENT OF FACTS

The essential facts are set forth in the attached Statement of Uncontested Material Facts and may be summarized as follows.

The Alexander Plaintiffs (Plaintiffs) allege that, following Hurricane Katrina, they received emergency housing assistance from FEMA, pursuant to the Stafford Act and applicable federal regulations. FEMA provided Plaintiffs with a travel trailer manufactured by Gulf Stream. Plaintiffs allege that the travel trailer was installed at their location and hooked to utilities for residential purposes by FEI, pursuant to a contract between FEI and FEMA.[2]

**1.      Plaintiffs' Claims Have Prescribed on the Face of Their Complaint**

The original complaint in the Age case was filed on February 27, 2009.[3] Plaintiff, Alana Alexander, individually and on behalf of her minor son, Christopher Cooper, filed their first

---

[2] Rec. Doc. 168 6, par. 8.
[3] Civil Action No. 09-2892, Rec. Doc. 1.

supplemental and amending complaint in the Age suit on June 1, 2009.[4]  Plaintiffs allege that they began living in the travel trailer on May 27, 2006 and stopped living in it on December 30, 2007.[5]  Plaintiffs further allege that "[t]he travel trailer was vacated by them within a month after Plaintiffs first became aware of the potential dangers of formaldehyde exposure in the trailer."[6]  Thus, Plaintiffs' allegations on the face of the complaint show they had actual knowledge about the potential dangers of formaldehyde exposure in the trailer by November 30, 2007.  Because the original Age complaint was not filed until February 27, 2009 — more than one year later — Plaintiffs' claims have prescribed on the face of the complaint.

2. **Plaintiffs Had Actual Knowledge of the Potential Danger of Formaldehyde More Than One Year Before Filing Suit**

Alana Alexander's deposition testimony confirms that she had actual knowledge of the potential dangers of formaldehyde exposure in her trailer by late November 2007/early December 2007, at the latest.  Alana Alexander's deposition testimony is unequivocal that she moved out of her trailer in December 2007 after she became aware of her formaldehyde claims:

> Q. When did you move out?
> A. **We moved out in December of 2007.**
> Q. **Why did you move out?**
> A. **Because I had started hearing about the effects that -- I found out that the odor we were initially smelling was formaldehyde and how it affected people with respiratory and asthma problems.  And like, it was time for us to go.**
> Q.  Did you tell anybody that's why you were moving out?
> A. Yeah, I told my family that's why we were moving out.
> Q. Did you tell anybody else who wasn't a family member?
> A. Donna, uh-huh.
> Q. Did you tell anyone a different reason for moving out?
> A. No.
> Q. And the reason that you said you moved out -- did you start thinking about
> the reason to move out in December?

---

[4] Rec. Doc. 1686.
[5] Rec. Doc. 1686, par. 9.
[6] Rec. Doc. 1686, par. 10.

> A. Yes, in December, but -- yeah. In December. Yeah.
> Q. **So sometime in December is when you first heard about potentially a problem with the FEMA trailers regarding formaldehyde?**
> A. **Yes. Around December. Late November, early December.**[7]

(emphasis added).

Alana Alexander explained that she first heard of potential formaldehyde dangers on the news:

> Q. Okay. Had you heard anything about that topic prior to Justin Woods's mom telling you?
> A. **The only time I heard any mention about the trailers and formaldehyde was in December. December -- that would have been in '07**.
> Q. What did you hear about trailers in December of '07?
> A. **The news was reporting that they had found that the trailers had possible formaldehyde in them.**[8]

Further, Alana Alexander stated that she signed up her formaldehyde claim with attorney Justin Woods in early 2008, <u>after</u> she attended his presentation at her church about the formaldehyde class action litigation. She believes that Mr. Woods gave his litigation church presentation "some months" <u>before</u> she signed up with him as a plaintiff.[9]

Thus, Alana Alexander knew about the formaldehyde odor in her trailer and claimed that it was aggravating her son's asthma by early December 2007 at the latest, forcing them to move out of the trailer. Plaintiffs' claims prescribed one year thereafter. In addition to Alana Alexander's deposition testimony, her son's medical history corroborates plaintiff's actual knowledge of the potential danger of formaldehyde and its perceived aggravation of her son's

---

[7] A copy of the pertinent deposition transcript excerpts of Alana Alexander are attached as Ex. 1, <u>see</u> p. 190 L. 20-25, p. 191. L. 1-24.
[8] Ex. 1, deposition of Alana Alexander, p. 115 L. 10-21 (emphasis added).
[9] Ex. 1, deposition of Alana Alexander, p. 114-15, 123.

asthma, by December 2007 at the latest.[10]  Chris Cooper's treating physician's medical narrative confirms that on <u>December 4, 2007,</u> <u>Chris Cooper was treated</u> in Children's Hospital Emergency Room <u>for an asthma attack,</u> <u>which Alana Alexander attributed to "FEMA formaldehyde toxic exposure</u>:"

> On December 4, 2007, Chris was seen in Children's Hospital Emergency Room for an uncontrolled Asthma attack ... Ms. Alexander became aware of the possibility of FEMA trailer formaldehyde toxin exposure and moved the family out of their trailer within a month.[11]

Thus, Plaintiffs experienced an appreciable injury allegedly caused by FEI by December 4, 2007, and their claims against FEI prescribed one year thereafter.  By December 4, 2007, at the latest, Plaintiffs were keenly aware of their potential claim against defendants for FEMA formaldehyde toxin exposure, rendering their delay in filing suit unreasonable and causing their suit to prescribe.

3. **<u>Plaintiffs Had Constructive Knowledge of the Potential Danger of Formaldehyde Even Before December 4, 2007</u>**

Plaintiffs had constructive knowledge of their formaldehyde claims even before November or December 2007.  Examples of FEMA notices provided to trailer occupants and public knowledge of potential formaldehyde concerns are:

- **July – August, 2006**
  FEMA distributed a brochure to occupants of temporary housing units across the Gulf Coast informing them of the symptoms associated with formaldehyde exposure. Actions to reduce formaldehyde levels (e.g., ventilation) were also recommended.

---

[10] Copies of the pertinent deposition transcript excerpts of Dr. Megan Ciota (p. 71, L. 15-25, p. 72, L. 9-18, p. 88, L. 18-23, p. 89 L. 1-5 & p. 105 L. 17-23) and Dr. Janet Barnes (p. 48-49) are attached respectively as exhibits 2 and 3.
[11] A copy of the pertinent portions of Chris Cooper's treating physician's medical narrative (Dr. Janet Barnes) is attached as Ex. 4, Bates Nos. ALX-EXP-4-000001 and 000003.

- **August 8, 2006**
  FEMA issued a press release on the plan to test methods to reduce formaldehyde in travel trailers.

- **February 22, 2007**
  FEMA issued a press release with updated information on FEMA's plan of action to respond to formaldehyde complaints.

- **May 4, 2007**
  FEMA issued a press statement indicating that the study of air samples from travel trailers in the Gulf Coast shows that formaldehyde emission levels can be significantly reduced through adequate ventilation.

- **May 16, 2007**
  Press reported that a Mississippi pediatrician has noted formaldehyde exposure-type similarities in the symptoms of children living in travel trailers provided by FEMA.

- **July 18, 2007**
  FEMA issued a press release regarding its request to CDC for its assistance in conducting a public health assessment of indoor air quality in its temporary housing units.

- **July 21, 2007**
  FEMA set up a toll-free telephone line to serve residents of its travel trailers and mobile homes in the Gulf States. Operators from CDC and FEMA are available to answer questions about the formaldehyde-related issues and associated FEMA housing concerns.

- **July 21-24, 2007**
  FEMA distributed a formaldehyde and housing fact sheet to the occupants of every FEMA trailer across the Gulf Coast (70,000 flyers were distributed across the Gulf), as well as others living in FEMA-provided travel trailers throughout the rest of the country.

- **August 1, 2007**
  FEMA issued a press release and answers to frequently asked questions regarding the temporary suspension of installation, sale, transfer or donation of travel trailers.[12]

Alana Alexander testified that she watched TV news broadcasts regularly, every evening since she returned to New Orleans in May 2006.[13] Thus, Alana Alexander reasonably should have known about her formaldehyde claims even before November or December 2007.

## ARGUMENT/ LAW

Summary judgment is warranted because the undisputed material facts show that Plaintiffs had not just constructive, but actual, knowledge of their potential formaldehyde claim over one year before filing their lawsuit. Their delay in filing suit is therefore time barred as a matter of law. The allegations in Plaintiffs' complaint, Plaintiffs' deposition testimony and medical records negate the existence of factual issues for trial. Where, as here, the undisputed evidence shows that Plaintiffs had sufficient knowledge to commence the running of prescription more than one year prior to filing their lawsuit, the issue of prescription is ripe for pre-trial determination.

### 1. Summary Judgments are Favored

Summary judgment is appropriate under Fed. R. Civ. Proc. 56 if the record discloses that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. There is no genuine issue of fact if the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. <u>Matsushita Electric Industrial Corp. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or

---

[12] These examples and evidence of FEMA's prior communications with travel trailer occupants and FEMA's press releases are derived from the United States of America's motion to dismiss, formaldehyde timeline, ex. A, Rec. Doc. 1545-6.

[13] Ex. 1, deposition of Alana Alexander, p. 115-117.

whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).  The mere existence of factual disputes will not defeat an otherwise properly supported motion.  Anderson, 477 U.S. at 248.  Further, the court's finding that a rational jury could not find for the nonmoving party may be supported by the absence of evidence needed to establish an essential element of the nonmoving party's case.  Id.

**2.   Plaintiffs' Claims have Prescribed**

The fundamental purpose of prescription statutes is to afford a defendant economic and psychological security if no claim is made timely and to protect him from stale claims and from the loss of relevant proof.  Giroid v. South La. Medical Ctr., 475 So.2d 1040, 1045 (La. 1985).  Under Louisiana law, plaintiffs' delictual action is subject to a liberative prescription of one year pursuant to La. Civ. Code art. 3492.  "This prescription commences to run from the day injury or damage is sustained ... ."  Art. 3492.  This period is equally applicable to claims brought under the Louisiana Products Liability Act.[14]  As a general rule, prescription begins to run "when plaintiff has actual or constructive notice of the alleged tortious act."  Mistich v. Cordis Manufacturing Co., 607 So.2d 955, 956 (La. App. 4th Cir. 1992).  Stated differently, prescription begins to run when it can be objectively determined that the exercise of reasonable diligence would have alerted a reasonably minded plaintiff of the reasonable possibility that it was a victim of tortious conduct.  Griffin v. Kinberger, 507 So.2d 821, 823 (La. 1987).  Constructive notice "is information sufficient to incite curiosity, excite attention, or to put a reasonable person on guard to call for inquiry." Richardson v. Avondale Shipyards, Inc., 600 So.2d 801, 804 (La. App. 5th Cir. 1992) (citing Clofer v. Celotex Corp., 528 So.2d 1074 (La. App. 5th Cir. 1988)).

---

[14]  Denoux v. Vessel Management Services, Inc., 964 So.2d 1081 (La. App. 4 Cir. 2007) (Louisiana's one year prescriptive period applies to all delictual actions, including those brought pursuant to the LPLA); see also Bultman v. Danek Medical, Inc., 1991 WL 33537321 (E.D. La. 1999).

Indeed, the first case relating to formaldehyde in EHUs was <u>Hillard v. U.S</u>., 06-2576, filed on May 18, 2006.  Potential claimants should likely have been aware of their related claims by the date <u>Hillard</u> was filed.  Moreover, Plaintiffs have had constructive knowledge of their formaldehyde claims even before November or December of 2007, from FEMA's brochure to trailer occupants and press releases in the summer of 2006 through the summer of 2007, and FEMA's formaldehyde fact sheet distributed to all trailer occupants in July 2007, along with persistent news coverage from local stations.  And, Ms. Alexander testified that she watched TV news broadcasts regularly, every evening since she returned to New Orleans in May 2006.[15]  Even the PSC admits that published warnings were distributed generally to the occupants of EHUs by FEMA in the summer of 2007, referring to the material previously in the record as evidence of FEMA's prior communications with trailer occupants.[16]

In any event, Plaintiffs had not only constructive knowledge, but actual knowledge of their formaldehyde claims by late November 2007 or December 4, 2007.  Plaintiffs' formaldehyde claims against FEI prescribed one year later, or by December 4, 2008, at the latest.[17]  Yet, the instant case was not filed until February 27, 2009, rendering Plaintiffs' suit too late.

### 3. <u>Plaintiffs Cannot Prove That Prescription Was Suspended Or Interrupted.</u>

"Where on the face of the petition it appears that prescription has run, the burden shifts to the plaintiff to prove a suspension or interruption of prescription."[18]  Because the Plaintiffs' complaint is prescribed on its face, the burden shifts to plaintiffs to prove an exception to

---

[15] Ex. 1, deposition of Alana Alexander, p. 115-117.
[16] Rec. Doc. 1361, p. 7 n.7.
[17] <u>See</u> Ex. 4 (Dr. Barnes' narrative).
[18] <u>Vincent v. Tusch</u>, 681 So. 2d 385, 385 (La. 1993); <u>Terrebonne Parish School Bd. V. Mobil Oil Corp</u>., 310 F.3d 870, 877 (5th Cir. 2002) (<u>citing</u> In re <u>Moses</u>, 788 So.2d 1173, 1177-78 (La. 2001)).

prescription.[19]  Plaintiffs cannot prove that prescription was suspended or interrupted because (1) the Plaintiffs were not named plaintiffs in the class action suit, and/or (2) FEI was not named as a defendant in the Hillard class action.

### A. Prescription of Plaintiffs' Claims has not been Suspended.

FEI anticipates that Plaintiffs may argue that prescription was suspended by the commencement of the Hillard class action pursuant to the doctrine of American Pipe tolling (or, equivalently, La. Code Civ. Proc. art. 596).[20]  In general, when a putative class action is filed, American Pipe tolling suspends the prescription of certain claims: "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.[21]

Plaintiffs may argue that they were putative class members of the Hillard class and therefore should benefit from American Pipe tolling.  However, this argument fails to recognize that the putative Hillard class did not assert any claims against FEI (or any of the IA/TACs).  American Pipe speaks only of claims actually brought by the putative class members and not every claim that might have been added against **potential, unnamed defendants**.  Indeed the whole premise of American Pipe tolling is that the tolling is consistent with the function of a prescriptive period (or, equivalently, a statute of limitations) because the defendants **named** in the putative class action had been made aware of the claims against them:

> The policies of ensuring essential fairness to defendants and of barring a plaintiff who 'has slept on his rights,' are satisfied when,

---

[19] See this Court's Order denying Shaw Environmental, Inc.'s 12(b)(6) motion to dismiss, on general prescription grounds, in the Aldridge suit, p. 10 n.3, Rec. Doc. 1762.
[20] Because this case is based on diversity jurisdiction an analysis of the doctrine of American Pipe tolling is appropriate regarding the effect of the filing of a class action and the subsequent filing of an individual lawsuit on the timeliness of that individual lawsuit.  However, the application of La. Code Civ. Proc. art. 596 would produce roughly the same result as American Pipe (the filing of a class action suspends prescription as to all putative class members' claims until the propriety of the class action or the member's participation in the action is determined).
[21] American Pipe & Const. Co. v. Utah, 414 U.S. 538, 554 (1974).

> as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies **the defendants** not only of the substantive claims being brought against **them**, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, **the defendants** have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.[22]

The logic of the United States Supreme Court is compelling. When a defendant is actually named in a putative class action, it is on notice of the action against it and can take steps to defend itself, thereby satisfying the fundamental public policy of the applicable limitations period. Conversely, when a defendant is not named in the putative class action, there is absolutely no reason to assume that the unnamed, potential defendant knows about the possibility of a later lawsuit and is taking steps to preserve essential information. American Pipe has no application to claims against parties who are not defendants in the putative class action.

To extend American Pipe tolling to defendants who were not named in the original putative class action would run contrary to the Supreme Court's logic and contrary to the public policy behind prescriptive/limitations periods. No reported case has ever extended American Pipe to a defendant who was **not** named in the original putative class action, and this court should not be the first. Because **FEI was not named as a defendant in Hillard**, Plaintiffs may not benefit from American Pipe tolling.

B.   **Prescription of Plaintiffs' Claims has not been Interrupted.**

Finally, FEI anticipates that Plaintiffs may try to avoid prescription by arguing that they should benefit from La. Code Civ. Proc. art. 2324, which provides that interruption of

---

[22] Id. at 554-555 (emphasis added; internal citation omitted).

prescription as to one joint tortfeasor is effective against all joint tortfeasors.  First, Plaintiffs may argue that the IA/TACs are joint tortfeasors with the manufacturer defendants who were named in the Hillard action.  Plaintiffs might then argue that because prescription against the Hillard defendants was interrupted by the filing of that lawsuit,[23] interruption of prescription is also effective against alleged joint tortfeasors, like FEI, in the instant matter.

Leaving aside the question of whether the IA/TACs (including FEI) really are joint tortfeasors, the anticipated argument fails for two reasons.  First, unlike American Pipe tolling, Article 2324 does not apply to the claims of every putative class member and/or every conceivable plaintiff.  Only the "named plaintiffs" in Hillard can avail themselves of the joint tortfeasor doctrine under this article.  Because Plaintiffs did not bring claims in their own names in Hillard, Article 2324 does not apply.

Second, American Pipe tolling is clearly a suspension of prescription, and not an interruption.[24]  Article 2324 of the Civil Code applies only when prescription is interrupted, not when it is merely suspended:  "Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors."

The distinction between interruption and suspension is both clear and well-known to the redactors of the Civil Code.  The prescription of Plaintiffs' claims against the manufacturers and FEMA was merely suspended by American Pipe, and therefore, Article 2324 simply has no application to their claims against FEI, even if FEI were shown to be a joint tortfeasor.  To

---

[23] La. Civ. Code art. 3462 provides for the interruption of prescription upon the commencement of a lawsuit.

[24] American Pipe referred to the days remaining in the applicable limitations period at the time when the putative class action was filed.  Eleven days remained in the period at the time when the putative class was filed; because the intervenors sought to join the case eight days after the denial of class certification, the Court held that the intervention was timely and should have been allowed.  414 U.S. at 561.  Though expressed in common law terms, clearly this is an application of suspension rather than interruption.  Compare La. Civ. Code art. 3466 (interruption) with La. Civ. Code art. 3472 (suspension).

conclude otherwise would be to write "suspension" into article 2324.  FEI respectfully submits that this is the province of the Louisiana Legislature alone, and not the courts.

Plaintiffs may argue that they should benefit from the earlier filing of the Hillard action.  Therefore, it is useful to see the effects of the Hillard filing on the prescription of claims, as well as the interplay between the American Pipe doctrine and La. Civ. Code art. 2324:

|  | **Named Defendant in Hillard** | **Not a Named Defendant in Hillard** |
|---|---|---|
| **Named Plaintiff in Hillard** | Prescription interrupted by filing of suit.  See La. Code Civ. Proc. art. 3462. | Prescription interrupted by joint tortfeasor doctrine.  See La. Civ. Code art. 2324. |
| **Not a Named Plaintiff in Hillard, but Member of Putative Class** | Prescription suspended as to putative class members.  See American Pipe. | No effect on prescription. |

Because Plaintiffs were not named plaintiffs in Hillard, and because the Hillard plaintiffs did not name FEI as a defendant, Plaintiffs gain no benefit from the Hillard action vis–à–vis FEI, and, thus, their claims against FEI have prescribed.

## CONCLUSION

Based on the foregoing, there are no genuine issues of material fact regarding prescription of Plaintiffs' claims against FEI, compelling summary judgment as a matter of law.  Accordingly, FEI respectfully requests that this Honorable Court enter judgment dismissing Plaintiffs' claims against it.

    Respectfully submitted,

    **MIDDLEBERG, RIDDLE & GIANNA**
    BY:    */s/ Sarah A. Lowman.*
        Dominic J. Gianna, La. Bar No. 6063
        Sarah A. Lowman, La. Bar No. 18311
        201 St. Charles Avenue, Suite 3100
        New Orleans, Louisiana 70170

Telephone: (504) 525-7200
Facsimile: (504) 581-5983
dgianna@midrid.com
slowman@midrid.com

-and-

Charles R. Penot, Jr. (La. Bar No. 1530 &
Tx. Bar No. 24062455)
717 North Harwood, Suite 2400
Dallas, Texas 75201
Tel: (214) 220-6334; Fax: (214) 220-6807
cpenot@midrid.com

-and-

Richard A. Sherburne, Jr., La. Bar No. 2106
450 Laurel Street, Suite 1101
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7700
Facsimile: (225) 381-7730
rsherburne@midrid.com

**ATTORNEYS FOR FLUOR ENTERPRISES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record, including court-appointed liaison counsel, who are CM/ECF participants.

_/s/Sarah A. Lowman._
**SARAH A. LOWMAN**

ND: 4830-2045-8500, v. 1