UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                        MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION               SECTION "N-5"

                                           JUDGE ENGELHARDT
                                           MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

---

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF MICHAEL E. GINEVAN, PH.D.

---

**MAY IT PLEASE THE COURT:**

Plaintiffs, Alana Alexander, individually and on behalf of her minor child, Christopher Cooper respectfully submit the following Memorandum in Support of its Motion *in Limine* to Exclude Expert Testimony of Michael E. Ginevan, Ph.D.

#### INTRODUCTION

Defendant Gulf Stream Coach Inc. has designated Michael Ginevan, Ph.D. to provide testimony concerning the statistical basis of Plaintiff's expert reports regarding sampling for and estimates of formaldehyde contamination in FEMA trailers and the quantitative modeling of formaldehyde levels in the indoor environments of such trailers.[1]  Ginevan further describes his focus as "[e]nvironmental sampling and exposure assessment."  Exhibit B, Deposition of Michael E. Ginevan, Ph.D dated July 28, 2009 p. 47.  As will be discussed *infra*, Ginevan's

testimony should be excluded as Ginevan is unable to provide support for conclusions regarding environmental sampling or exposure assessment.   Furthermore, Ginevan is neither qualified to offer such opinions.   While Ginevan is an experienced bio-statistician, Ginevan, by his own admission, does not possess the education, training nor expertise relating to the toxicity of formaldehyde for which many of his opinions are based.

## I.   GINEVAN'S TESTIMONY IS NOT RELIABLE UNDER RULE 702 AND SHOULD BE EXCLUDED.

Under the Federal Rules of Evidence, the party offering the expert witness bears the burden of establishing that the expert is qualified to give the opinion, and that such opinion is both reliable and relevant to the case at bar.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).  Prior to accepting the testimony of an expert witness, trial courts are charged with a "gatekeeper" function requiring a determination of whether an opinion is based upon sound, reliable theory. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 589-91 (1993).  As such, "[p]roposed testimony must be supported by appropriate validation–*i.e.*, good grounds." *Id*. at 590 (internal quotations omitted).   The concept of "good grounds" is codified under Federal Rule of Evidence 702, which provides that expert testimony is deemed reliable so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.   Ginevan's testimony fails to meet any of the reliability requirements set forth under Rule 702, and thus should be excluded.

### A.   Ginevan's Testimony Lacks Factual and Statistical Support.

Ginevan's primary purpose in this matter is to "review the statistical basis of the plaintiffs' experts."  Exhibit A, p. 2; *see also* Exhibit B.   Specifically, Ginevan's has been

---

[1]   A copy of Ginevan's report and curriculum vitae are attached as Exhibit A hereto.

sought to review the reports and affidavits of four select Plaintiffs' experts:  Paul Hewett, Mary DeVany, William Scott, and Marco Kaltofen.   *Id*.  In drawing his conclusions, Ginevan has failed to provide necessary support for major contradictions, and any additional support that Ginevan provides is either irrelevant for the purposes of his opinion or is biased as litigation-driven.

### 1.      *Hewett Contradictions Regarding Environmental Sampling.*

Ginevan attempts to refute Hewett's findings regarding the average formaldehyde level in trailers samples stating "the level varies from .0023ppm to 3.2ppm, which is a 1,390 fold difference."  Exhibit C, Supplement to Report of Michael E. Ginevan, Ph.D., re: Air Exchanges, et seq.   While Ginevan is correct in the disparity, he provides no support that such disparity results in inconclusive findings.  *Id*.  On the other hand, Ginevan admits that "we use average levels in exposure assessment in epidemiology studies," explaining that "[b]ecause a person moves through the environment they're . . . assumed to contact the environment or breathe the air in an area . . . they're moving around, so they're averaging their environment."   Exhibit B, p. 158.  Thus, Ginevan not only fails to provide data to support his conclusion, Ginevan essentially provides testimony that contradicts his initial statement.

### 2.      *DeVany Contradictions Regarding Air Exposure.*

Next, Ginevan attempts to contradict DeVany's findings regarding heightened risk for high formaldehyde levels in travel trailers caused by low interior volume and relatively high surface area.  Exhibit A, p. 6; *see also* Exhibit C, p. 1 (providing an example without a citation of support).   Again, without providing necessary support, Ginevan contradicts DeVany's findings stating that the findings "ignore[] the fact that because of the relatively low air volume in such a trailer, occasionally opening windows and the door and perhaps running a fan for ventilation will

have an inordinately large effect on air exchange rates."  Exhibit B, p. 6.  Ginevan's inability to

support his position is further affirmed when asked for the basis of his opinion, "I'm relying on

the idea that if you put people into an environment, there is a lot more ventilation than if you

don't have people in the environment."  Exhibit B, p 169.  Pressed for further support, Ginevan

failed to provide any direct reference to a published source to support his conclusion.  Exhibit B,

p. 171.

### 3.    Scott Contradictions Regarding Air Exposure.

With regard to Scott's report, Ginevan focuses on Scott's alleged failure "to account for

the fact that water and sewerage lines had been disconnected for months and provided . . . an

open pathway for air exchange."  Exhibit A, p. 6.   Ginevan provides no factual basis that open

water and sewage lines increases air exchange nor does such a conclusion support his position.

*Id*.  Instead, Ginevan admits that such open airways existing during the time of sampling do not

increase air exchange "very much."  Exhibit B, p. 155.   As such, any basis of Ginevan's

contradiction to Scott's analysis is essentially inconsequential.

### 4.    Litigation Driven Support Regarding Environmental Sampling.

Prior to concluding his analysis, Ginevan states that the .08ppm standard employed by

Plaintiffs' Experts and ATSDR are "highly conservative in the sense that the levels are below

any that might cause harm."  Exhibit A, p. 7.  Support for Ginevan's conclusion originated from

a blog post sponsored by the Formaldehyde Council, Inc.   Exhibit D, Formaldehyde Facts,

Formaldehyde in Breath: The Untold Story and Why It Matters, Oct. 8, 2008.  The blog post

serves to address "the FEMA trailer issue with the implication that people have been exposed to

formaldehyde levels that might pose health risks."   *Id*. at 1.  More specifically, the primary

purpose of the blog post is to draw parallels between formaldehyde levels in exhaled breath and

the seemingly over "conservative" risk level of formaldehyde.  *Id.* at 3.  The support proffered by the Formaldehyde Council, Inc. vis-a-vie Ginevan should not be accepted by this Court as it is research conducted due to litigation.  Courts often exclude expert opinions based on research done solely for litigation.  *See Braun v. Lorillard*, 84 F.3d 230, 235 (7th Cir. 1996) (citing *Daubert*, 509 U.S. at 591-95).

Furthermore, this Court should disregard the blog post because Ginevan's inability to explain the blog post's use of certain data.  When questioned regarding a study relied upon by the blog post, Ginevan was not aware of the study's findings:

> Q.   Tell you what, let's see if we can go about it this way: Did you check to see whether [the Moser study] says that there were significant difference in a formaldehyde level of smokers versus nonsmokers?  Before you cited the Formaldehyde Council for us to consider?
>
> A.   No, I did not.

Exhibit B, p. 126.  Nor was Ginevan able to explain basic factual elements regarding the effects and numbers of those who smoked cigarettes in the study:

> Q.   Do you know how these 344 people were called up?  Do you think they were put in a laboratory setting and excluded from smoking for several hours?
>
> A.   Well, I think that the people were brought into the laboratory because I'm pretty sure that proton transfer reaction mass spectrometry is not a very portable technology.
>
> Q.   Let's talk about that.  What if they were at a public health fair and they signed a written consent and all they had to do was rest for five minutes before samples were obtained by them blowing into a bag?  Do you see the methods on page 296?
>
> A.   I do.
>
> Q.   All right.  So they were at a public health fair.  They get 344 people to signed consents.  Right?
>
> A.   Yes.
>
> Q.   Test persons were asked to exhale in a sample bag, right?

A.    Uh-huh.

Q.    And at least under the methods all they say is a minimum of five minutes of rest before samples were obtained was mandatory, right?

A.    Yes.

Q.    So you have no basis to say that they quarantined these people away from their cigarettes these 48 people that we know were smokers for any more than five minutes, right?

A.    Well, I cannot say with absolute certainty, no. . .

Exhibit B, p. 125-26.  Ultimately, Ginevan's inability to account for his sources renders the blog post useless as it factual basis cannot be conclusively aligned.  *See Hypertherm, Inc. v. Am. Torch Tip Co.*, 2009 WL 53004, *3-4 (D.N.H. Feb 27, 2009) ("The court, in its role as gatekeeper, must exclude expert testimony that is not reliable and not specialized…").

While testifying, Ginevan admits multiple times that he took no measurements, gathered no data, conducted no studies.  Exhibit B, p. 13, 146. While not solely consequential, Ginevan's lack of action combined with in his inability to support his conclusions with any data or statistical analysis results in testimony that fails to meet the bar set forth under Federal Rule of Evidence 702.

B.    Ginevan's Testimony Is Not Supported by Reliable Principles or Methods.

In addition to having no supportive data, Ginevan's testimony is likewise unsupportable by reliable principles or methods.     Federal Rule of Evidence 702 requires that "the testimony [be] the product of reliable principles and methods."  Fed. R. Evid. 702.  Ginevan draws hefty conclusions that form a large portion of his report regarding air exchange and emission rates that he is unable to provide reliable methodology.  As the United States Supreme Court noted in *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997), "nothing in either *Daubert* or the Federal

Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 146.

1.   *No Reliable Principles Supporting Ginevan's Air Exchange Rate Conclusions.*

As noted *supra*, Ginevan contests DeVany's findings stating "[w]hat Ms. DeVany fails to point out is that even modest amounts of air exchange will result in such a high number of air exchanges per hour, that high formaldehyde levels would be highly unlikely."   Exhibit C, p. 1. Ginevan contends that formaldehyde levels recorded in January 2008 could be reduced by a magnitude, or tenfold, to represent the increased air exchange.  Exhibit A, p. 5; Exhibit B, 165-66.  However, when questioned regarding the methodology for his findings, Ginevan is unable to assert a valid principle:

> Q.   Okay.  What are you relying upon as a basis for your statement that if there'd only been people in there when we did our testing, the result would have been tenfold lower?
>
> . . .
>
> A.   I'm relying on the idea that if you put people into an environment, there is a lot more ventilation than if you don't have people in the environment. . .

Exhibit B, p. 169.   Ginevan's inability to account for a sound principle or reliable methodology to support his conclusion renders the point unreliable under Federal Rule of Evidence 702, and this Court should conclude "that there is simply too great an analytical gap between the data and the opinion proffered."  *General Electric Co.*, 522 U.S. at 146.

2.   *No Reliable Methodology To Support Hypothetical Emission Rates From Two Compartment System.*

Next, Ginevan opines that because a travel trailer is a mixture of materials that will likely emit formaldehyde at different rates, the formaldehyde levels in the travel trailers will drop very rapidly at first and then slower thereafter.   Exhibit A, p. 4.   Again, Ginevan provides no

methodology nor principles to sustain his conclusion.  *Id*.  Instead, Ginevan attempts to introduce

a hypothetical to illustrate his point.   However, when questioned regarding his conclusion,

Ginevan cannot provide support:

> Q.    You say about six lines down [of Exhibit A, p. 4 ¶ 5], the compartment with the 10 percent emission rate is initially responsible for almost all emissions but by period 40, most emissions is form the 1 percent compartment?
>
> A.    Yes.
>
> Q.    Note also that the drop in emissions is very rapid for the first 25 periods or so.  I note this example of a hypothetical is hardly unrealistic.  Did I read this correctly?
>
> A.    Yes.
>
> Q.    What published research do you rely upon to make that statement?
>
> A.    Well —
>
> Q.    Any?
>
> A.    I think — okay.  I think it is not unrealistic in the sense that you certainly have multiple compartments that can differ that much in the rate at which they lose material; and I think the one thing I would emphasize is that none of these are calibrated in an absolute sense; but the point here is that over a period of time, it's very easy to show situations where the rate of emission drops markedly. And it drops even more than you would think from a simple exponential process.
>
> Q.    What published research do your rely upon to make that statement?
>
> A.    There is no — no.
>
> Q.    What testing do you rely upon to make that statement, if any?
>
> A.    I'm not relying on any testing at all.

Exhibit B, p. 150-51.  As noted by the Ninth Circuit, "the party proffering the evidence must

explain the expert's methodology and demonstrate in some objectively verifiable way that the

expert has both chosen a reliable scientific method and followed it faithfully."  *Daubert II v.*

*Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1319 n. 11 (9th Cir. 1994).  As a result, Ginevan's

inability to produce reliable, verifiable principles or methodologies renders his conclusions unreliable.

      C.     <u>Ginevan Failed to Apply Any Principles or Methods Reliably the Facts of this Case.</u>

The final prong of Federal Rule of Evidence 702 requires that the testifying expert "has applied the principles and methods reliably to the facts of the case."  In drawing his conclusions regarding air exposure rates, Ginevan relies on a statement by DeVany, "New Orleans is well known for being hot and humid.  However, with their limited income, air condition was a luxury that the Alexanders would not allow themselves, except during very high temperature conditions."  Exhibit A, p. 5 (internal quotations omitted).  Ginevan uses this statement to suggest that "air exchange rates were very high because windows (and possible doors as well) would be open to facilitate cooling."  *Id*. at 6.  However, as noted by his testimony, Ginevan fails to consider the full scope of the facts:

    Q.    Would you agree that the attempt to ventilate the trailer would have been made only they were home?

    A.    Excuse me?

    Q.    The attempt would be made only when they were home? Not when the kids were at school and Mrs. Alexander was at work?

    A.    I would probable be most acute at those times.  Yes.  I would imagine. Yes.  And I believe she said in her deposition that she made every effort to ventilate the trailer pretty thoroughly when they came home.

    Q.    Do you have an opinion as to what percentage of each day the trailer was ventilated with windows open?

    A.    Well, I'm assuming it coincided with occupancy pretty well.

    Q.    In fact, it was closed when she was working for security purposes, right?  You know that from her deposition, right?

    A.    Yes.

Q.      The trailer was closed mostly at night for security reasons, right?

A.      Okay. Yes.

Q.      It was closed during the winter months when they lived there, October, November, December, in order to keep the heat in, right?

A.      Okay. Yes.

Exhibit B, p. 153-54.    The conclusory statements of Ginevan's report fail to accurately apply the facts to the theory regarding air exchange rates.   Rendering an expert opinion based on incomplete evidence warrants exclusion on the grounds of unreliability.   The Fifth Circuit in *Viterbo v. Dow Chemical Co.*, 826 F.2d 420 (5th Cir. 1987) affirmed a trial court's decision to exclude proffered testimony that failed to consider complete family history of depression in determining causation.   *Id.* at 423.   Although factual dissimilar, the legal analysis of *Viterbo* is instructive and should be applied in the instant case as Ginevan's failure to fully analyze the factual elements of this matters renders his opinion unreliable.

## II.    GINEVAN'S TESTIMONY SHOULD BE EXCLUDED BECAUSE GINEVAN IS NOT QUALIFIED TO OFFER AN EXPERT OPINION ON THE EXPOSURE ASSESSMENT OF FORMALDEHYDE OR MATTERS RELATING THEREOF.

"In performing its gatekeeping function, a court must consider whether the putative expert is qualified by knowledge, skill, experience, training or education." *Prado Alvarez v. R.J. Reynolds Tobacco Co.*, 405 F.3d 36, 40 (1st Cir. 2005).   Such a strict standard is employed because "relaxation of the usual requirements of first-hand knowledge" are inherently "premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592.

In addition, "an expert must have specific knowledge, not [a] mere capacity to acquire knowledge." *Silva v. Amer. Airlines*, 960 F. Supp. 528, 531 (D.P.R. 1997).   Although "a witness qualifies as an expert with respect to certain matters or areas of knowledge" that witness may not

be "qualified to express expert opinions as to other fields. *Levin v. Dalva Bros.*, 459 F.3d 68, 78 (1st Cir. 2006) (citing *Nimely v. City of New York*, 414 F.3d 381, 399 n.14 (2d Cir. 2005)).

Here, while Ginevan is knowledgeable within the field epidemiology, his testimony seeks to go beyond his scope in order to analyze data pertaining to formaldehyde exposure.  Such data of which he has no knowledge of nor has he attempted to gain knowledge thereof.   As testified by Ginevan, in the approximately eighty-seven papers Ginevan has published, zero deal with exposure to formaldehyde.  Exhibit B, p. 44.  Similarly, of the "great many" speeches Ginevan has given, Exhibit B, p. 15, he has never given a speech or presentation on issues of formaldehyde.  Exhibit B, p. 137.  The only formal education Ginevan has in regards to the physiological effects of formaldehyde are found in the physiology course Ginevan attended where he "happen[ed] to know that formaldehyde is produced in the body." *Id*.  Given that the primary focus of this report involves formaldehyde and Ginevan's purpose is to evaluate and comment on the "likely conservatism of regulatory limits for human exposure to toxic material like formaldehyde," Ginevan's apparent lack of "specific knowledge" of formaldehyde prevents him from qualifying as an expert under *Daubert*.

## CONCLUSION

Ultimately, this Court should exclude Ginevan's testimony because it cannot be deemed reliable under Federal Rule of Evidence 702 and *Daubert* analysis.  Ginevan fails to establish any the prerequisite under Rule 702.  Ginevan's inability to rely on facts and/or data, use reliable methods or principles, and apply facts to those methods and principles should preclude the usage of his testimony.  Furthermore, Ginevan lacks the requisite knowledge, skill, and expertise to testify with regard to formaldehyde issues.  As noted in *Prado Alvarez*, "to grant the status of expert to one . . . with such variegated and unfocused record of scholarly efforts and minimal

attention to analysis, would threaten the effective functioning of the gatekeeper process." *Prado*

*Alvarez*, 405 F.3d at 40.

Respectfully submitted,

**FEMA TRAILER FORMALDEHYDE**
**PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
      GERALD E. MEUNIER, #9471
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &
      Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:     504/522-2304
      Facsimile:      504/528-9973
      gmeunier@gainsben.com

      s/Justin I. Woods
      JUSTIN I. WOODS, #24713
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &
      Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:     504/522-2304
      Facsimile:      504/528-9973
      jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'**
**STEERING COMMITTEE**
      ANTHONY BUZBEE, Texas # 24001820
      ROBERT M. BECNEL, #14072
      RAUL BENCOMO, #2932
      FRANK D'AMICO, JR., #17519
      MATT MORELAND, #24567
      LINDA NELSON, #9938
      DENNIS REICH, Texas #16739600
      MIKAL C. WATTS, Texas #20981820

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of August, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
