Attorney Work Product – Privileged and Confidential

**Air Exchange Rates in the Plaintiff Trailer and Their Effect on Plaintiff Formaldehyde Exposure Levels.**

According to the affidavit of William D. Scott the plaintiff's trailer dimensions in length and width are 28' by 8'. If we additionally assume a ceiling height of 8' (which is probably somewhat higher than the actual ceiling height) we get a total volume for the trailer of 8 x 8 x 28 = 1,792 cubic feet. As plaintiff's expert Mary DeVany points out, in section V-E of her affidavit, the small volume of the trailer results in a high surface area of potentially formaldehyde emitting surfaces per unit of trailer volume and this could in turn result in elevated formaldehyde levels. What Ms. DeVany fails to point out is that even modest amounts of air exchange will result in such a high number of air exchanges per hour, that high formaldehyde levels would be highly unlikely. As an example, assume a 2 square foot opening through which is blowing a 2 mph breeze. Two miles per hour can also be expressed as 10,560 feet per hour, and if this is through a 2 square foot opening, the total volume of air is 21,120 cubic feet. This is 11.78 times the volume of the trailer, or put another way it gives us 11.78 air exchanges per hour. I note that I recently reviewed the deposition transcript of Ms. Alana Alexander who was one of the occupants of the trailer in question. Ms Alexander noted that she aired the trailer out by opening 4 windows and the door while running the air conditioning. I would suggest that my scenario of a 2 square foot window with a 2 mph breeze is on the low side of the ventilation rates Ms Alexander achieved while "airing" her trailer. I note also that Ms Alexander started that she opened the door while frying foods which should also result in high ventilation scenarios.

The formaldehyde measurements made by the plaintiffs are all in sealed trailers where the air exchange rate is less than one air exchange per hour. If we take 0.5 air exchanges per hour as a reasonable estimate for a sealed trailer, we see that our modest ventilation scenario increases air exchange rates relative to a sealed trailer by about 23 fold. As another plaintiff expert, Marco Kaltofen, has pointed out, measured formaldehyde concentrations are inversely proportional to air exchange rate. Thus, if we double the air exchange rate we halve the formaldehyde concentration. It follows that is we up air exchange by 23 fold, we reduce formaldehyde levels 23 fold. Given these facts and the reported formaldehyde levels, it is hard to see how the plaintiffs would have experienced exposure to significant formaldehyde levels given even a modest ventilation scenario.

