UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | 07-md-1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION: N(5) |
| | | * | |
| | | * | JUDGE: ENGELHARDT |
| | | * | |
| | | * | MAG: CHASEZ |

This document is related to:
*Charlie Age, et al. v. Gulf Stream Coach, Inc., et al.*, No. 09-2892

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**FLUOR ENTERPRISES, INC.'S MOTION FOR SUMMARY JUDGMENT
BASED ON THE GOVERNMENT CONTRACTOR DEFENSE**

# DECLARATION OF CHARLES A. WHITAKER

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * * * * | 07-md-1873  SECTION: N(5)  JUDGE: ENGELHARDT  MAG: CHASEZ |

This document is related to:
*Charlie Age, et al. v. Gulf Stream Coach, Inc., et al., No. 09-2892*
*************************************************************

## DECLARATION OF CHARLES A. WHITAKER

I, Charles A. Whitaker, state and declare as follows:

1. I am above the age of majority, and I make this Declaration based on facts that are within my own personal knowledge. I am not under any disability. I am competent to testify concerning the subject matter set forth in this Declaration, and would do so in open court, under oath, if called upon to do so.

2. I am a licensed professional engineer and am currently employed as the Program Manager with respect to Fluor Enterprises, Inc.'s ("FEI") Individual Assistance—Technical Assistance Contract, HSFEHQ-05-D-0471, ("IA-TAC Contract"), with FEMA. I have held that position continuously from approximately July 12, 2005, when FEMA awarded the IA-TAC Contract to FEI, until the present date. I was personally in the field during FEI's Hurricanes Katrina and Rita response efforts, with offices in FEI's Gonzalez Operations Center and in the Baton Rouge Joint Field Office, a facility that housed FEMA personnel, FEMA contractors including FEI, state and local officials, and other responders.

3. Under the IA-TAC Contract, FEI provided services to FEMA when specifically requested to do so by FEMA-issued task orders in connection with FEMA's provision of assistance to individuals following natural and man-made disasters.

4. The IA-TAC Contract required FEI to be prepared to mobilize personnel and material to sites anywhere in the United States on 48 hours notice in support of FEMA's individual assistance mission in response to disasters.

5. By Task Order 05-J-0020 ("Task Order 20") issued under the IA-TAC Contract, FEMA required FEI to haul, install and, until approximately June 30, 2006, maintain mobile homes, travel trailers and park models that FEMA issued to residents of Louisiana following Hurricane's Katrina and Rita. FEI was permitted to and did perform these functions through subcontractors.

6. Exhibit 1 to FEI's Memorandum in Support of Motion for Summary Judgment based on the Government Contractor Defense is a true and correct copy of portions of the IA-TAC Contract and Exhibit 1-A in its the entirety is a true and correct copy of Task Order 20, as modified and amended.

7. Part III, Section "J" of the IA-TAC Contract, is a list of Attachments to the IA-TAC Contract (See Ex. 1 at FL-FCA-000060). Attachment "A" addresses FEI's "Scope of Work" under the IA-TAC Contract, and is known as a "Performance Work Statement" ("PWS") (See Ex. 1, IA-TAC Contract, at FL-FCA-000060-74). The PWS describes the various types of work FEMA may require FEI to execute under the IA-TAC when requested to do so by a specific task order issued by FEMA. Section 2.9 of the PWS (See Ex. 1, IA-TAC Contract, at FL-FCA-000066) addresses installation of temporary or mobile structures, and specifically

incorporates Exhibit 7 to the PWS (See Ex. 1, IA-TAC Contract, at FL-FCA-000113-122), which specifies how FEI shall install travel trailers, of the type in which Alana Alexander and Christopher Cooper resided for a time following Hurricane Katrina, when required to do so by a FEMA-issued task order. Section 2.10 of the PWS (See Ex. 1, IA-TAC Contract, at FL-FCA-000066-67) addresses FEI's maintenance obligations when given a task order for maintenance, and specifically incorporates Exhibit 10 to the PWS (See Ex. 1, IA-TAC Contract, at FL-FCA-000135-149) to further define those maintenance obligations.

8. FEI did not manufacture the travel trailer in which plaintiffs Alana Alexander and Christopher Cooper lived for a time, nor did FEI select the types of structures, such as travel trailers, park models and mobile homes, that FEMA chose to use to house disaster victims following Hurricane's Katrina and Rita. FEI played no role in selecting the manufacturers from whom FEMA purchased travel trailers or any other structures FEMA utilized as temporary housing following Hurricanes Katrina and Rita. FEI never took title to the travel trailers, park models and mobile homes that FEMA utilized as temporary housing following Hurricanes Katrina and Rita. Under Task Order 20, FEI's obligations with respect to the mobile homes, park models and travel trailers was, when issued a work order by FEMA, to pick up a specific emergency housing unit (EHU) (like a travel trailer) identified by vehicle identification number and bar code from a FEMA staging yard and then FEI's subcontractor hauled and installed that unit at the designated location.

9. Exhibit 7 to the PWS of the IA-TAC Contract (Ex. 1, IA-TAC Contract, at FL-FCA-000113-122), contains the detailed specifications concerning how travel trailers in general, and the Alexander/Cooper travel trailer in particular, were to be delivered, installed, blocked, leveled, anchored, attached to utilities (sewer, water and electrical), outfitted with steps or handicap ramps/platform steps, winterized and otherwise be made ready for occupancy. Exhibit 7 was provided as part of the IA-TAC Contract specifications by FEMA and FEI had no role in developing, testing or engineering any aspect of Exhibit 7, or any other aspect of FEMA's specifications for installation of EHUs, other than the specific anchors used to attach the straps holding the units down into the ground, because that connection is site specific, *i.e.*, because soil and surface conditions vary from location to location, professional engineering calculations were required to determine the type of anchors needed to hold the unit in place under various wind load conditions.

10. Initially, when FEMA gave FEI authorization to proceed with installation of travel trailers, the FEMA Contracting Officer, Nancy Costello, advised FEI *not* to install the trailers on blocks consistent with Exhibit 7 to IA-TAC Contract, but rather to install them simply using the tongue jack and stabilizer jacks. (See Exh. 3 to Fluor's MSJ based on the government contractor defense at FL-FCA-007184-185).

11. Subsequently, on October 18, 2005, FEMA, through its then-action Contract Officer's Technical Representative ("COTR"), Kevin McCarthy, directed that Fluor was now to commence installing travel trailers in strict accordance with the

FEMA specifications included in Ex. 7 to the IA-TAC Contract and even required Fluor to go back and retrofit all prior travel trailers that had not been installed in accordance with those specifications pursuant to Ms. Costello's earlier directive. Ex. 3 to Fluor's Motion for Summary Judgment, at FL-FCA-007180. Mr. McCarthy's directive was confirmed by the FEMA Contracting Officer in place at that time.

12. Additionally, when Fluor sought clarification of the specifications of Ex. 7 to the IA-TAC Contract, Fluor was provided with an engineered drawing prepared by Terry R. Zien of the U.S. Army Corps of Engineers. (See Ex. 3 to Fluor's MSJ, FL-FCA-009521.) Fluor was never directed or asked to, and therefore never undertook, to perform engineering services concerning this blocking diagram.

13. In connection with ensuring that Fluor's subcontractors, who performed the actual haul and install functions with respect to all travel trailers, including the travel trailer in which Alana Alexander and Christopher Cooper resided, complied strictly with the FEMA specifications, Fluor created a quality control (QC) form that tracked the requirements of Ex. 7 to the IA-TAC Contract precisely. That form is Ex. 5 to Fluor's MSJ on the contractor defense at FL-FCA-004615-16. Ex. 5 is the particular form used to inspect the Alexander/Cooper travel trailer following its installation in February of 2006 on Ms. Alexander's property.

14. In addition to Fluor's own 100% QC checks of the installations of its subcontractors to ensure strict compliance with Ex. 7 to the IA/TAC Contract, the Government had at least three methods of insuring that FEI and all IA/TAC contractors complied with the Ex. 7 requirements.

15. First, FEMA had Army Corps of Engineer inspectors in the field on a regular basis that would bring to the attention of all IA-TAC Contractors, including FEI from time to time, issues that they saw in the field that they felt did not comply with the EHU installation or any other IA-TAC Contract specifications.

16. Second, the COTR had personnel known as a Technical Monitors who were also in the field on a regular basis checking to insure that all IA-TAC contractors, including FEI, complied strictly with the IA-TAC Contract specifications for travel trailer installations.

17. Third, at some point in the fall of 2005, FEMA retained a QA/QC contractor who inspected EHU installations of all IA/TAC Contractors to ensure compliance with contract specifications. Due to the large number of travel trailers being installed, FEMA's QA/QC subcontractor did not inspect 100% of all installed units, but apparently applied some type of sampling or auditing principles in connection with unannounced inspections of EHU installations to insure IA-TAC Contract compliance.

18. To ensure that Fluor and its subcontractors were strictly complying with the IA-TAC Contract specifications for EHU installations, including travel trailer installations, FEI requested from FEMA the manual that they were using when inspecting EHU installations. Attached as Ex. 4 to Fluor's MSJ on the Government Contractor Defense is a copy of that FEMA inspector's guide that was provided to FEI by FEMA for the sole purpose of ensuring that FEI and its subcontractors complied precisely with the IA-TAC Contract specifications issued by FEMA.

19. Finally, when Fluor's work in the field was complete, it issued a formal acceptance of all of its Task Order 20 services and deliverables. At that point in time, FEMA issued a signed acceptance of the work. (See Ex. 8 to Fluor's MSJ on the government contractor defense, FL-FCA 019669-670).

Pursuant to 28 U.S.C. §17.46, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of August, 2009.

_____
CHARLES A. WHITAKER

ND: 4821-8265-4468, v.  1ND: 4821-8265-4468, v.  1ND: 4821-8265-4468, v.  1