## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                                    MDL NO. 07-1873
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION                                   SECTION "N" (5)

                                                       JUDGE ENGELHARDT
                                                       MAG. JUDGE CHASEZ

**THIS DOCUMENT RELATES TO:**
*Age, et al. v. Gulf Stream Coach, Inc., et al.*, No. 09-2892
*Alana Alexander, individually and OBO minor Christopher Cooper*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT UNITED STATES' MEMORANDUM IN SUPPORT OF ITS
## MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION
## BASED UPON NO ANALOGOUS PRIVATE LIABILITY

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 4

STANDARD OF REVIEW ................................................................................. 6

ARGUMENT ...................................................................................................... 7

I.    The FTCA Waives The United States' Sovereign Immunity And Provides Subject Matter-Jurisdiction Only Where A Private Individual In Like Circumstances Would Be Liable To Plaintiffs.......................................................................................... 7

II.   There Is No Analogous Private Liability In This Case Because A Private Party In Like Circumstances Would Be Shielded From Tort Liability Under State Law.................... 10

      A.    LHSEADA § 733.1 Represents A Policy Choice On The Part Of The Louisiana Legislature To Limit Liability In Order To Encourage The Provision Of Free Shelter Following A Disaster.................................................................. 10

      B.    Because The State Of Louisiana Has Chosen To Protect Providers Of Free Emergency Shelter From Negligence Claims, Plaintiffs' FTCA Claims Must Be Dismissed..................................................................................... 14

            1.    FEMA Owned Or Operated "Immovable Property Or Other Premises.".......................................................................... 15

            2.    FEMA Acted "Voluntarily And Without Compensation.".................. 18

            3.    FEMA Granted The "Use Of The Whole Or Part Of The Immovable Property Or Premises".................................................... 19

            4.    FEMA Did So "For The Purpose Of Sheltering Persons During An Actual . . . Emergency.".................................................... 20

      C.    Under The LHSEADA, FEMA Cannot "Be Liable For The Death Of, Or Injury To, Any Person . . . Solely By Reason Or As A Result Of The . . . Use.".............. 23

      D.    Plaintiffs Cannot Show That "The Gross Negligence Or The Willful And Wanton Misconduct" Of FEMA Was "The Proximate Cause Of The Death, Injury, Loss, Or Damage Occurring During The Sheltering Period," Thus This Sole Exception To § 733.1 Does Not Apply........................................... 23

CONCLUSION.................................................................................................. 25

CERTIFICATE OF SERVICE ........................................................................... 26

## INTRODUCTION

Defendant, the United States of America, submits this memorandum in support of its motion to dismiss Plaintiffs' claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, based upon lack of subject-matter jurisdiction. The Court lacks jurisdiction because, under Louisiana law, there would be no tort liability against a "private individual under like circumstances." *See* 28 U.S.C. § 2674. The FTCA's limited waiver of sovereign immunity – and thus, its limited grant of subject-matter jurisdiction – is expressly limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[1] 28 U.S.C. § 1346(b). Based upon compelling public policy considerations, the State of Louisiana has abrogated the potential tort liability of all private persons and entities that voluntarily, without compensation, allow their property or premises to be used as shelter in response to an emergency. The will of the Louisiana Legislature is clear – individuals and entities should be encouraged, rather than discouraged by potential liability, to gratuitously provide shelter to homeless disaster victims. Because Alexander/Cooper's FTCA claims hinge on the very acts and omissions harbored from liability under Louisiana law, their claims must fail for lack of subject-matter jurisdiction.

---

[1] As discussed *infra*, the "law of the place" is defined as the law promulgated by the state. Thus, the FTCA requires the potential liability of the United States to be assessed in accordance with the law of the state where the act or omission occurred. *See* 28 U.S.C. § 1346(b); *Alexander v. United States*, 605 F.2d 828, 832 (5th Cir. 1979) ("[L]iability under the FTCA is governed by state law."). *See also Brown v. United States*, 653 F.2d 196, 201 (5th Cir. 1981). This necessarily includes any defenses, exceptions to liability, and limitations on recovery, contained in state law. *See Owen v. United States*, 935 F.2d 734, 737 (5th Cir. 1991), *cert. denied*, 502 U.S. 1031 (1992); *Bunting v. United States*, 884 F.2d 1143, 1145, 1147-48 (9th Cir. 1989) (in an FTCA case, holding applicable an Alaska law barring liability except upon a showing of gross negligence); *Ortiz v. United States Border Patrol*, 39 F. Supp. 2d 1321, 1322-23 (D. N.M. 1999) (same – applying New Mexico law), *aff'd*, 210 F.3d 390 (10th Cir. 2000); *Priah v. United States*, 590 F. Supp. 2d 920, 930 (N.D. Ohio 2008) (same – applying Ohio law). In this case, because Plaintiffs, Alana Alexander and her minor son Christopher Cooper ("Alexander/Cooper"), allege that the United States committed negligent acts and/or omissions involving their FEMA-owned emergency housing unit, the FTCA looks to the law of Louisiana – the state where Alexander/Cooper claim to have inhabited a FEMA-owned emergency housing unit and allegedly suffered injuries therefrom. *See Richards v. United States*, 369 U.S. 1, 9 (1962).

Chapter 6 of the "Louisiana Homeland Security and Emergency Assistance and Disaster Act" ("LHSEADA"), La. R.S. 29:721-738, provides in pertinent part:

### § 733.1. Limitation of liability of owner or operator of facilities

Any person or organization, public or private, owning or operating immovable property or other premises who voluntarily and without compensation grants a license or privilege or otherwise permits the designation by the state or local homeland security and emergency preparedness agency or use of the whole or any part of the immovable property or premises for the purpose of sheltering persons or household pets or service animals during an actual, impending, mock, or practice emergency, together with his successor in interest, if any, shall not be liable for the death of, or injury to, any person or household pets or service animals on or about such immovable property or premises during the actual, impending, mock, or practice emergency, or for loss of, or damage to, the property of such person, solely by reason or as a result of the license, privilege, designation, or use, unless the gross negligence or the willful and wanton misconduct of the person owning or operating the immovable property or premises or his successor in interest is the proximate cause of the death, injury, loss, or damage occurring during the sheltering period.

La. R.S. 29:733.1.  Under the FTCA, the crucial question is whether this state provision would act as a limitation on the potential liability of a private individual, had the private individual performed acts/omissions similar to those alleged in this case under similar circumstances.[2]  The Court must judge the United States' conduct through the prism of private analogous liability and consider whether this limitation on liability would apply to a private individual or entity who owned or operated premises and gratuitously provided these premises as shelter for victims in the wake of a disaster. *See* 28 U.S.C. § 1346(b)(1).

As shown below, § 733.1 of the LHSEADA squarely applies to the circumstances of this case. The undisputed facts show that the United States, through FEMA, (1) owned or operated "immovable property or other premises"; (2) acted "voluntarily and without compensation"; (3) granted "use of the whole or part of the immovable property or premises"; and (4) did so "for the purpose of sheltering

---

[2] Whether the language of this state provision directly applies to the United States of America, the Federal Emergency Management Agency ("FEMA"), or any other federal agency or entity plays no role in this inquiry. *See* 28 U.S.C. § 2674; *see also supra*, at 1, n. 1 (citing cases).

2

persons during an actual . . . emergency." *See* La. R.S. 29:733.1.  Because its prerequisites are met, §

733.1 limits the United States' potential liability (as it would for a private analogue) in this action,

unless Alexander/Cooper can (which they cannot) create a genuine issue that FEMA's conduct

amounted to gross negligence or willful and wanton misconduct.  The LHSEADA categorically limits

an owner/operator's potential liability for any death or injury, or loss of damage to property, that

results from a person's "use" of an emergency  shelter.  Alexander/Cooper claim that it was their very

"use" of a FEMA-owned shelter that led to alleged exposure to formaldehyde and resulting

injuries/damages.

Whether Alexander/Cooper choose to cast their claims against the United States as an alleged

failure to warn, a failure to mitigate, a failure to respond appropriately, or even a failure to remove

and relocate, all of their allegations converge on a singular factual nexus – FEMA's ownership and

provision of the emergency housing unit they occupied – and certain duties that allegedly arose

therefrom.  The limitation on liability contained within § 733.1 does not discriminate between such

claims.  Once its requirements are satisfied, its serves to bar all negligence claims against an owner

regarding an emergency shelter.  As articulated through Alexander/Cooper's own allegations and the

undisputed facts, their FTCA claims directly stem from FEMA's ownership and provision of a free

shelter during the course of an emergency.  Under the "law of the place where the act or omission

occurred," there exists no analogous private liability.  Louisiana has chosen to shield private

individuals and entities under these circumstances. *See* La. R.S. 29:733.1.  It follows that the United

States cannot be subject to FTCA liability.[3] *See* 28 U.S.C. § 2674. To hold otherwise would

_____

[3] The United States could have exercised its discretion not to provide free emergency housing units to
hurricane victims (including Alexander/Cooper) – but it chose to provide such units – and now faces a large number
of claims that these units, provided as shelter for the displaced and homeless, were unsafe and that, in retrospect, the
United States should have handled alleged safety concerns surrounding these premises in a different and more
preferred manner. *See, e.g., Bunting*, 884 F.2d at 1145-48.

contravene the policy balance struck by the Louisiana Legislature.

## BACKGROUND

Plaintiffs in this MDL are "individuals who resided in emergency housing units ("EHUs")

provided by . . . [FEMA] . . . after Hurricanes Katrina and Rita." *See, e.g.*, Order and Reasons, July

23, 2009 [Doc. No. 2322].  "In general, Plaintiffs claim injuries resulting from alleged exposure to the

release of formaldehyde and/or formaldehyde vapors in these EHUs." *Id.* (citing Doc. No. 109 ¶ 30).

All actions currently pending before this MDL Court necessarily "share factual questions relating to

allegations that trailers – provided by . . . [FEMA] . . . in the wake of Hurricanes Rita and Katrina –

contain materials which emit dangerous, excessive levels of formaldehyde." *See* Transfer Order,

October 24, 2007 [Doc. No. 1].

Bellwether plaintiffs Alexander/Cooper filed suit against Gulf Stream Coach, Inc., Fluor

Enterprises, Inc., and the United States of America on February 27, 2009.[4] Compl. (Case No. 09-

2892) [Doc. No. 1].  Alexander/Cooper purport that the FTCA provides this Court with subject-matter

jurisdiction over the United States. Third Supp. and Am. Compl. [Doc. No. 1686] ¶ 2 (incorporating

Compl. ¶ 6 (citing 28 U.S.C. §§ 1346, 2671, *et seq*)).[5]  They allege that the United States was

negligent in: (1) "failing to warn . . . of the unreasonably dangerous nature of the housing unit"; (2)

"failing to promptly remedy the dangerous nature of each such housing unit"; (3) and "failing to

timely implement adequate safety measures and procedures to address the defects in the housing unit."

---

[4] The Complaint of every named bellwether plaintiff contains allegations that are similar, if not identical, to those described in this section (pled by Alexander/Cooper). *Compare* Compl. (Case No. 09-2892) [Doc. No. 1], *with Wright* Compl. (Case No. 09-2977) [Doc. No. 1], *and Bell* First Supp. and Am. Compl. [Doc. No. 2588], *and Smith* Compl. (Case No. 09-3957) [Doc. No. 1].  Because this motion establishes that dismissal is required for lack of subject-matter jurisdiction considering Plaintiffs' allegations and the undisputed general facts of this case, it should be read to similarly affect the FTCA claims of all bellwether plaintiffs, as well as other plaintiffs in this MDL whose FTCA claims are based upon similar acts and omissions that occurred within the State of Louisiana.

[5] Because the Third Supp. and Am. Compl. was drafted in such a way that it wholly incorporates by reference numbered paragraphs from the original Compl., future citations to these paragraphs will simply consist of the numbered paragraphs from the original Compl.

Compl. ¶ 85; *see also* Third Supp. and Am. Compl. ¶ 11 (specifically averring that the United States was negligent in the manner in which it responded to complaints/concerns regarding alleged formaldehyde in these housing units and in the manner in which it communicated with plaintiffs regarding claimed health risks and concerns surrounding the same).  As a result, Alexander/Cooper claim to have been "exposed to unsafe and potentially dangerous levels of formaldehyde" in their FEMA-owned emergency housing. *See, e.g.*, *id.* ¶ 11.

Alexander/Cooper plead that they "were displaced from their permanent home" and that their home "was rendered uninhabitable as a result of Hurricane Katrina." Third Supp. and Am. Compl. ¶ 4.  As a result of the disaster, they allege they were left "homeless." *Id.* ¶¶ 13, 17.  They specifically allege that in response to the hurricane, FEMA provided them with an emergency housing unit within the State of Louisiana. *Id.* ¶¶ 12, 13.  They claim to have lived in this unit from May 2006, until 2007. Third Supp. and Am. Compl. ¶ 4. Alexander/Cooper state that while residing in this FEMA-owned emergency housing unit, they were "exposed to dangerously high concentrations of the formaldehyde . . ." Compl. ¶ 24.  According to Alexander/Cooper, their FEMA-provided housing unit was "defective and dangerous" and they suffered certain physical injuries and other damages as a result of their time in the unit. *Id.* ¶¶ 57, 117 (as amended).

Alexander/Cooper also allege that under the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. § 4121, *et seq.*, the Executive Branch of the United States, "through FEMA, may provide 'direct assistance' in the form of temporary housing units." *Id.* ¶ 31.  They state that their FEMA-provided housing unit was converted from a "mobile travel trailer[ ]" into a "temporary housing unit[ ]" for "long-term occupancy." *Id.* ¶¶ 32, 37.  This was allegedly done by "installing" the housing unit by raising the unit "several feet into the air and off of its wheel base, and setting it on concrete blocks." *Id.* ¶ 38.  Alexander/Cooper aver that this immobilization process, in anticipation of long-term habitation, "modified the design and the actual

use of the[ ] unit[ ]." *Id.* ¶¶ 41, 113 (alleging that "mobile" units were "modif[ied]" and "convert[ed]" into "residential installations"); *see also Age* Third Supp. and Am. Compl. ¶ 8 (alleging that the Alexander/Cooper housing unit was "installed" and "hooked to utilities, etc. for residential purposes").  This was also allegedly accomplished through the installation of "residential appliances and heating and air conditioning units."[6] Compl. ¶ 108.

## STANDARD OF REVIEW

The United States moves to dismiss Alexander/Cooper's FTCA claims for lack of subject-matter jurisdiction, pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure.[7] Alternatively, the United States moves for summary judgment under Rule 56.  Because federal courts are inherently courts of limited jurisdiction, the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Moreover, jurisdiction is a threshold issue – the separation of powers doctrine requires a federal court to determine whether it has jurisdiction as soon as possible, rather than deferring the issue until trial. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception.'") (citation omitted); *see id.* (instructing lower courts to "resolve jurisdictional issues before reaching the merits of a case"). The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *See Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction.").

In deciding a Rule 12(b)(1) motion, courts are not limited to the allegations of the Complaint,

---

[6] As discussed *infra*, Alexander/Cooper also facially allege that the United States was "negligent, grossly negligent, reckless, willful and/or wanton." Compl. ¶¶ 80-82.

[7] Rule 12(b)(1) explicitly provides for motions to dismiss based upon lack of subject-matter jurisdiction. Rule 12(h)(3) allows for subject-matter jurisdiction to be challenged at any time.

but may consider materials outside of the pleadings.[8] *See Land v. Dollar*, 330 U.S. 731, 735, n. 4

(1947) (stating that on a motion to dismiss for lack of jurisdiction, a court "may inquire by affidavits

or otherwise, into the facts as they exist"); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511

(5th Cir. 1980) (stating that with a factual challenge to the court's subject matter jurisdiction, the court

may look outside the pleadings without converting the motion into one for summary judgment); *see

also Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir. 1977) ("[T]he trial court

is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.").

## **ARGUMENT**

I.    **The FTCA Waives The United States' Sovereign Immunity And Provides Subject
      Matter-Jurisdiction Only Where A Private Individual In Like Circumstances Would Be
      Liable To Plaintiffs.**

"Absent a waiver, sovereign immunity shields the Federal Government . . . from suit."

*F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (stating that as sovereign, the United States may not be

sued unless it consents); *Owen v. United States*, 935 F.2d 734, 736 (5th Cir. 1991).  The United

States' consent to suit cannot be implied, but must be unequivocally expressed and strictly construed.

*See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34-35 (1992); *United States v. Williams*, 514

U.S. 527, 531 (1995) ("The court must construe any ambiguities in favor of immunity"). *See also

Guile v. United States*, 422 F.3d 221, 229 (5th Cir. 2005).  It is the existence of this consent that

---

[8] In some circumstances, courts have converted Rule 12(b)(1) motions into Rule 56 motions for summary judgment when resolution of the jurisdictional question would purportedly be intertwined with the merits of the case and materials outside the pleadings have been submitted. *See United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004). *See, e.g.,* Order and Reasons, October 3, 2008 [Doc. No. 717]. Here, however, the jurisdictional question – whether § 733.1 of the LHSEADA would limit the potential tort liability of an analogous private individual under similar circumstances – is not intertwined with, and in fact, bears no relation to, a substantive determination of whether the United States was negligent.  The only issue for the Court to decide is whether this particular provision of Louisiana law would apply to limit analogous private liability given the Plaintiffs' allegations and the undisputed facts.  Regardless, even if the Court were to apply the summary judgment standard, the United States moves for summary judgment because there are no remaining genuine issues of material fact regarding whether § 733.1 applies to Alexander/Cooper's FTCA claims.  "It is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. TX. Steel Co.*, 538 F.2d 1116 (5th Cir. 1976)

defines the scope of a court's jurisdiction. *See United States v. Mitchell*, 445 U.S. 535, 538 (1990).

Through the FTCA, Congress has chosen to waive the United States' sovereign immunity for certain

torts committed by federal employees while acting within the scope of their employment. 28 U.S.C.

§§ 1346(b)(1), 2671.  As a result, the FTCA and its provisions must be "construed strictly in favor of

the [United States]." *Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992); *see United States v. Idaho*,

508 U.S. 1, 7 (1993) (describing the FTCA as a limited waiver); *Atorie Air Inc. v. FAA*, 942 F.2d 954,

958 (5th Cir. 1991); *Paul v. Igyarto*, 2002 WL 1610962, at *1 (E.D. La. July 18, 2002) (Engelhardt,

J.).  The terms and provisions of the FTCA are what define a court's jurisdiction over tort suits against

the government. *See United States v. Mottaz*, 476 U.S. 834, 841 (1986).

The FTCA only waives sovereign immunity from suit where a private individual in like

circumstances would be subject to liability. *See United States v. Olson*, 546 U.S. 43, 44 (2005).  At 28

U.S.C. § 1346(b)(1), the FTCA provides that courts may only exercise jurisdiction over:

> claims against the United States, for money damages . . . for injury or loss of property, or
> personal injury or death caused by the negligent or wrongful act or omission . . . ***under
> circumstances where the United States, if a private person, would be liable to the claimant
> in accordance with the law of the place where the act or omission occurred***.

(emphasis added).  Similarly, at 28 U.S.C. § 2674, the FTCA provides:

> The United States shall be liable, respecting the provisions of this title relating to tort claims,
> ***in the same manner and to the same extent as a private individual under like circumstances***

(emphasis added).  Thus, if a private individual in like circumstances could not be liable to the

plaintiff under the applicable "law of the place," then the United States has not waived is sovereign

immunity and the court does not have jurisdiction to adjudicate the FTCA claim. *See Johnson v.*

*Sawyer*, 4 F.3d 369 (5th Cir. 1993) ("To recover under the FTCA, [plaintiff] must have been able to

succeed . . . in a ***state*** law tort cause of action." (emphasis in original)).

The "law of the place where the act or omission occurred," referenced in 28 U.S.C. §

1346(b)(1), "refers exclusively to state law." *Brown*, 653 F.2d at 201; *Leleux v. United States*, 178

F.3d 750, 759 (5th Cir. 1999) ("[T]he relevant question under the FTCA is whether a state-law duty exists, not whether a court can create or 'recognize' one.").  "[T]he liability of the United States under the [FTCA] arises only when the law of the state would impose it." *Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir. 1995) (quoting *Brown*, 653 F.2d at 201).  The FTCA simply cannot be read to create or enlarge substantive causes of action that do not already exist under state law.[9] *See Richards v. United States*, 369 U.S. 1, 13-14 (1962); *see also Goldstar (Panama) v. United States*, 967 F.2d 965, 969-70 (4th Cir. 1992) ("The FTCA serves to convey jurisdiction when the alleged breach of duty is tortious under state law . . . [plaintiffs] must show that the duty breached by the United States was analogous to a duty imposed by the law of the forum state"); *Winchell v. Dep't of Agriculture*, 961 F.2d 1442, 1443 (9th Cir. 1992) (holding that in order to state a viable claim under the FTCA, a plaintiff must show that the wrongs allegedly committed "would be actionable in tort if committed by a private party under analogous circumstances, under the law of the state where the act or omission occurred").

    In *United States v. Olson*, the Supreme Court interpreted the words of the FTCA "to mean what they say, namely, that the United States waives sovereign immunity 'under circumstances' where local law would make a '*private person*' liable in tort" (emphasis in *Olson*). 546 U.S. at 44 (quoting 28 U.S.C. § 1346(b)).  The Court also found that even though there may exist state or municipal liability for allegedly negligent conduct, if there is no ***analogous private liability***, then the United States has not waived its sovereign immunity.[10] *See* 546 U.S. at 45-46.  The FTCA "requires a

---

[9] The FTCA's limited waiver of sovereign immunity "cannot apply where the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own affairs." *See United States v. Smith*, 324 F.2d 622, 624-25 (5th Cir. 1963).  Internal policies or statutes governing federal action – though potentially relevant to a 28 U.S.C. § 2680(a) discretionary function exception analysis – cannot serve to create a substantive cause of action under the FTCA unless the conduct at issue is "independently tortious under applicable state law." *See, e.g., Johnson v. Sawyer*, 47 F.3d 716,727 (5th Cir. 1995); *Dalrymple v. United States*, 460 F.3d 1318, 1327 (11th Cir. 2006).  A federal statute or regulation that speaks only to the government's conduct simply cannot be read to impose state tort law duties upon private individuals.

[10] Likewise, state rules of sovereign or official immunity expressly limited to state or municipal actors may not prove helpful in analyzing the scope of FTCA liability.  Such provisions may conflict with Congress's analogy to

court to look to the state-law liability of private entities, not that of public entities, when assessing the Government's liability under the FTCA." *Id.* at 46 (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)); *see Owen*, 935 F.2d at 737 (defining the "relevant question [as] whether the federal defendants [are] in 'like circumstances'"). "Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy." See *LaBarge v. County of Mariposa*, 798 F.2d 364, 367 (9th Cir. 1986); *see C.P. Chemical v. United States*, 810 F.2d 34, 37 (2d Cir. 1987) (holding that a plaintiff's cause of action must be "comparable" to a cause of action against a private citizen).

## II. There Is No Analogous Private Liability In This Case Because A Private Party In Like Circumstances Would Be Shielded From Tort Liability Under State Law.

### A. LHSEADA § 733.1 Represents A Policy Choice On The Part Of The Louisiana Legislature To Limit Liability In Order To Encourage The Provision Of Free Shelter Following A Disaster.

The Louisiana Legislature, through the LHSEADA, La. R.S. 29:721-738, has categorically chosen to limit the civil liability of those who, voluntarily and without compensation, choose to provide shelter in response to an emergency or disaster.[11] *See* La. R.S. 29:733.1.  The Legislature's

---

"private person" liability as stated within the FTCA. *See, e.g., Muniz*, 374 U.S. at 164

[11] Through the LHSEADA, the State of Louisiana has taken a number of steps to aid disaster response activities within the state. *See* La. R.S. 29:721.  The Louisiana Legislature found the Act necessary:

> Because of the existing possibility of the occurrence of emergencies and disasters of unprecedented size and destructiveness resulting from . . . fire, flood, earthquake or other natural or manmade causes, and in order to ensure that preparations of this state will be adequate to deal with such emergencies or disasters, and in order to detect, prevent, prepare for, investigate, respond to, or recover from these events, and generally to preserve the lives and property of the people of the state of Louisiana.

La. R.S. 29:722(A).  The LHSEADA provides for state and local civil defense and emergency preparedness agencies; addresses the organization of powers, duties, functions, responsibilities, and funding thereof; and provides for other matters relative to emergencies and disasters. *See* La. R.S. 29:721-722.  Among the goals enunciated by the Act are the "prompt and efficient . . . care, and treatment of persons victimized . . . by disasters or emergency" as well as the provision of "a setting conducive to the rapid and orderly start of restoration and rehabilitation of persons and property affected by emergencies or disasters." La. R.S. 29:722.  LHSEADA § 723 specifically includes hurricanes as one of the disasters contemplated by the Act. La. R.S. 29:723; *see Castille v. Lafayette*, 896 So.2d 1261, 1263 (La. App. 3 Cir. 2005) (assessing whether the immunity provision of § 735 applied to a municipal actor).

10

will is clear.  Under Louisiana law, if a private individual or entity provides shelter, purchased from a commercial vendor, to house displaced hurricane victims at no cost (as FEMA did in this case), and the owner of the shelter is later alleged to have caused injury by negligently responding to health and/or safety concerns regarding the usage of these shelters, § 733.1 of the LHSEADA provides shields the individual or entity from all negligence claims.[12] *See* La. R.S. 29:733.1.  In spite of any duties potentially owed by the owner/operator of the premises to occupants, and the potential for liability in the face of breach, the owners/operators of such premises have been protected as a matter of public policy – to encourage the provision of free shelter in the context of an emergency.[13] *See* La.

_____

[12] It is important to note that the Louisiana Legislature has abrogated the potential tort liability of a number of specific private organizations under these very same facts.  For example, La. R.S. 9:2793.3 broadly limits the liability of the United Way or its licensed organizations where they have "gratuitously render[ed] any disaster relief or recovery services following a declared state of emergency . . . as a result of any act or omission in rendering assistance, relief, or recovery services . . ." Another provision, La. R.S. 9:2793.9 also limits the potential liability of certain nonprofit tax-exempt organizations, "or any officer, employee, or volunteer thereof, who . . . gratuitously renders any disaster relief or recovery services during a declared state of emergency."  This further supports the absence of any analogous private liability in this context.

[13] The important public policy issues at play here are further illustrated by the fact that the "Louisiana Health Emergency Powers Act" ("LHEPA"), La. R.S. 29:760-772, would also apply to limit liability under the circumstances presented in this case.  Under LHEPA § 771, titled "Miscellaneous," subsection (B) "Liability," the Louisiana Legislature has clarified the distinction between provisions that focus on "state immunity" and those that apply to "private liability." *Compare* La. R.S. 29:771(B)(1) (referencing La. R.S. 29:735), *with* La. R.S. 29:733.1, *and* La. R.S. 29:771(B)(2)(a).  This portion of the LHEPA provides in pertinent part:

> B.  Liability
> (1) State immunity.  State immunity shall be determined in accordance with R.S. 29:735, which shall be applicable to this Chapter.
> (2) Private liability.
> (a) During a state of public health emergency, any person owning or controlling real estate or other premises who voluntarily and without compensation grants a license or privilege, or otherwise permits the designation or use of the whole or any part or parts of such real estate or premises for the purpose of sheltering persons, together with that person's successors in interest, if any, shall not be civilly liable for negligently causing the death of, or injury to, any person on or about such real estate or premises under such license, privilege, or other permission, or for negligently causing loss of, or damage to, the property of such person.

La.. R.S. 29:2771(B).  The private liability provision contained in § 771(B)(2)(a) tracks the language of LHSEADA § 733.1, while at the same time clarifying the difference between "private liability" statutes such as § 733.1 and § 771(B)(2)(a) versus "state immunity" statutes such as § 735(A).  Similar to LHSEADA § 733.1, the conditions of LHEPA § 771(B)(2)(a) are met in this case as set forth *infra*.  In examining the specific language of the LHEPA provision, the response to Hurricane Katrina specifically qualifies as a "state of public emergency" as defined by the statute.  LHEPA § 762 defines a "public health emergency" as "an occurrence or imminent threat of an illness or

R.S. 29:733.1.  FEMA's conduct in providing shelter to persons displaced by Hurricane Katrina is clearly analogous to the type of conduct shielded from liability by this provision. *See infra*. *See also Owen,* 935 F.2d at 737; *Bunting*, 884 F.2d at 1145.

LHSEADA § 733.1, providing for the "[l]imitation of liability of owner or operator of facilities," was added to the Act in 1999. *See* 1999 La. Acts No. 598 ("Emergency Preparedness - Limitation of Liability of Owners or Operators of Facilities Used For Emergency Shelters"); U.S. Ex. 12 (Enrolled 733.1/HB 1838).  On its face, the signed version of the bill adding § 733.1 to the LHSEADA, states that this enactment, along with a separate amendment to a different section of the LHSEADA,[14] together are meant "to provide for limitation of liability of emergency personnel and owners and operators of facilities used for shelter in emergencies" as well as "to provide for related matters.[15] *Id.*; *see* 1999 La. Acts No. 598.

As summarized by one court, "[t]here is a marked paucity of caselaw interpreting state emergency management statutes" such as the LHSEADA.[16] *See Castille*, 896 So.2d at 1264

---

health condition that . . . [i]s believed to be caused by any one of the following: . . . (iii) A disaster, including but not limited to natural disasters such as hurricane, tornado, storm, flood, high winds . . ." La. R.S. 29:762.  As stated in LHEPA § 761, part of the purpose of the Act is to meet "the immediate emergency needs of the people of Louisiana, specifically . . . shelter" and to restore "services essential to the health, safety, and welfare of the people of Louisiana."  La. R.S. 29:761.  In the months and years following Hurricane Katrina, a real health condition existed in the form of mass-homelessness, displacement, and potential exposure to the elements due to the widespread destruction of homes and other facilities.

[14] 1999 La. Acts No. 598 also served to amend and reenact La. R.S. 29:733(C)(art. 5), by adding an additional provision to the "Interstate Emergency Preparedness and Disaster Compact," limiting the liability of emergency personnel working pursuant to the compact.

[15] Following the terrorist attacks of September 11, 2001, the language of § 733.1 was amended in 2003 to add the term "homeland security."  *See* 2003 La. Acts No. 40.  An additional amendment was added in 2006 to twice insert the phrase "or household pets or service animals" into the provision. *See* 2006 La. Acts No. 615.

[16] The few Louisiana cases interpreting the LHSEADA have dealt with the immunity provision contained within La. R.S. 29:735(A)(1), which broadly provides for the immunity of agencies and personnel who engage "in any homeland security and emergency preparedness activities."  Unlike § 733.1, § 735 qualifies that its limitation on liability may only be conferred on agencies or personnel for activities conducted "while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter." La. R.S. 29:735(A)(1).  It also significantly departs from § 733.1, in that the section only applies to "the state . . . any political subdivision thereof . . . other agencies . . . the agents' employees or representatives," whereas

12

(discussing § 735 of the LHSEADA); *see also Robin v. United States*, 2006 WL 2038169, at *2 (E.D.

La. July 17, 2006) (same).  To date, no case appears to have dealt with the language of LHSEADA §

733.1.[17]  Nonetheless, at least one court has remarked that in its "review of emergency preparedness

statutes in other states" it has found that courts generally provide protection from suit to the fullest

extent permitted by the state's statute. *Robin*, 2006 WL 2038169, at *3 (Lemelle, J.) (citations

omitted).  This is in keeping with the notion that such statutes reflect fundamental policy choices that

have been struck by the legislature (balancing a compelling desire to encourage people to provide

assistance against a general policy of allowing people to seek redress through actions in tort).

### B.   Because The State Of Louisiana Has Chosen To Protect Providers Of Free Emergency Shelter From Negligence Claims, Plaintiffs' FTCA Claims Must Be Dismissed.

In assessing whether § 733.1 of the LHSEADA would preclude the state tort liability of a

private individual or entity who had committed acts and omissions similar to those allegedly

committed by the United States in this case under comparable circumstances, it is important to

---

§ 733.1 applies to "[a]ny person or organization, public or private." *Compare* La. R.S. 29:735(A)(1), *with* La. R.S. 29:733.1.

[17] A 2008 opinion from the Office of the Attorney General of the State of Louisiana purports to discuss La. R.S. 29:733.1 (among other LHSEADA provisions), but focuses almost entirely on La. R.S. 29:735 and the discretionary immunity provision of La. R.S. 9:2798. *See* La. Atty. Gen. Op. No. 08-0093 (2008).  Nonetheless, the opinion stresses that the apparent legislative intent behind the LHSEADA was to "immunize anyone performing emergency activity who is acting in good faith." *Id.* at *8.  The opinion also recognizes that "[t]here are no cases directly on point regarding the other three sections [of the LHSEADA, including 29:733.1]." *Id.* at *24.  In briefly discussing § 733.1, the opinion notes that the provision was amended in 2006 to add "or household pets or service animals." *Id.*  More importantly, during its discussion of this minor amendment, the Attorney General characterizes the section as granting immunity/non-liability to "*any person or entity* that gratuitously allows their property or facility to be utilized . . . in an emergency" (emphasis added). *Id.* at 25-26.  Unlike a number of other sections in the LHSEADA, § 733.1 does not require that there be a "declared state of emergency" for its limitation on liability to take effect. *See* La. R.S. 29:735.1-735.2.  The Attorney General's opinion also stresses that:

> [T]he immunity provisions contained in the Act *must be broadly interpreted to afford immunity to anyone* who is engaged in any homeland security and emergency preparedness activity, except in cases of willful misconduct . . . [and that] . . . it is the opinion of this office that the relative immunity provisions contained in the law *will apply to anyone* who is engaged in any homeland security or emergency preparedness activity.

La. Atty. Gen. Op. No. 08-0093, at *28-29 (emphasis added).

13

remember the Supreme Court's instruction that the starting point in every case involving the construction of a statute must be the language itself. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975); *see also* La. C.C. art. 2 ("Legislation is a solemn expression of legislative will.").  The Court must assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards*, 369 U.S. at 9; *Burlington N. & Santa Fe Ry. Co. v. Skinner Tank Co.*, 419 F.3d 355, 362 (5th Cir. 2005) (stating that a court must begin with the plain language of the statute); *see also* La. C.C. art. 11 ("The words of law must be given their generally prevailing meaning."). Thus, "[absent] a clearly expressed legislative intention to the contrary, the language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) ("[W]e assume that the legislative purpose is expressed by the ordinary meaning of the words used."); *see Mocklin v. Orleans Levee Dist.*, 877 F.2d 427, 428-29 (5th Cir. 1989) (recognizing that "where the terms of the statute [are] unambiguous, judicial inquiry is complete, except in 'rare and unusual circumstances'"); *see also* La. C.C. Art. 9 ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made.").

Examining the plain language of La. R.S. 29:733.1, the Court does not have subject-matter jurisdiction over Alexander/Cooper's FTCA claims because a private individual in like circumstances would not be liable to Alexander/Cooper in a similar context. *See Olson*, 546 U.S. at 44.  In assessing whether the United States' conduct, through the prism of analogous private liability, would meet the prerequisites required by LHSEADA § 733.1, the United States must be considered a "person or organization, public or private" as described in the provision. *See* La. R.S. 29:733.1; *Olson*, 546 U.S. at 44 (stating if there is no analogous private liability, the United States has not waived its sovereign immunity).

14

1.     **FEMA Owned Or Operated "Immovable Property Or Other Premises."**

By providing emergency housing units to Alexander/Cooper, as well as thousands of other persons throughout the Gulf Coast following Hurricanes Katrina and Rita, FEMA was acting as the owner of "other premises" or "immovable property."  This is consistent with the broad intent of the LHSEADA and the nature of the emergency housing units provided by FEMA as shelters for disaster victims.  In the case of Alexander/Cooper, FEMA allegedly provided a FEMA-owned travel trailer (VIN No. 1NL1GTR2551021783) to the family following Hurricane Katrina. Third Supp. Am. Compl. ¶ 5.  The unit was "installed" and "hooked to utilities, etc. for residential purposes." *Id.* ¶ 8; *see* U.S. Ex. 13-15.  According to Alexander/Cooper, the FEMA-owned unit was "convert[ed]" from a mobile travel trailer "into a temporary housing unit," by raising the unit "several feet into the air and off of its wheel base, and setting it on concrete blocks." Compl. ¶¶ 38, 41; *see* U.S. Ex. 13-15 (describing the installation process).

As such, the Alexander/Cooper emergency housing unit constituted "other premises."  As used in LHSEADA § 733.1, "other premises" describes a much broader category of property than what would be considered "immovable property."  As a "temporary housing unit" intended for habitation, the Alexander/Cooper unit certainly qualifies.  Although the LHSEADA does not define the term "other premises," the term "premises" has been defined by the Louisiana Legislature on other occasions. *See* La. C.C. Art. 12 ("When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.").  In La. R.S. 9:2791 (dealing with the liability of an owner or occupant of property not used primarily for commercial recreational purposes), "premises" is defined to include "lands, roads . . . private ways and buildings, structures, machinery or equipment thereon." *See Keelen v. State, Dep't of Culture, Recreation & Tourism*, 463 So. 2d 1287, 1290 (La. 1985) (noting that premises under the statute includes "buildings, structures and machinery").  Also, in La. R.S. 13:4711(A)(6) (dealing with public

15

nuisances), "premises" is broadly defined as "any building, structure, land, watercraft, or movable." *See City of Denham Springs v. Perkins*, 10 So. 3d 311 (La. App. 1 Cir. 2009). Various sections of the Louisiana Administrative Code have defined a "premises" in a very broad sense as any "physical site." *See* LAC 48:I.80 (describing health care "premises"); LAC 48:1.82 (describing hospice "premises"). Given the broad meaning that has been applied to "premises" on other occasions, the FEMA-owned emergency housing unit that was provided to Alexander/Cooper meets this initial requirement of LHSEADA § 733.1, as the unit was a physical location that was installed through a connection to the land and was occupied by an individual for full-time habitation like a house.

Even assuming *arguendo*, that the Alexander/Cooper emergency housing unit did not qualify as "other premises," given the method in which it was installed for use it would constitute separate "immovable property" under Louisiana law. Based upon the civil law tradition, Louisiana law classifies things into a number of different categories based upon a variety of criteria. *See* La. C.C. Art. 448 ("Things are divided into common, public, and private; corporeals and incorporeals; and movables and immovables."). A travel trailer would be considered a private corporeal thing subject to appropriation. Whether it is to be considered a movable or immovable (particularly given Alexander/Cooper's allegations regarding the installation of the unit) depends on the degree of integration.[18] Tracts of land are a quintessential immovables, but buildings and other structures (*e.g.*, individual condominiums) can also be considered separate immovables when they are owned by someone other than the owner of the ground on which they rest.[19] *See* La. C.C. Art. 464 ("Buildings . . . are separate immovables when they belong to a person other than the owner of the ground."). Given

---

[18] In a strict sense, the distinction between a movable and immovable can be considered a legal fiction, as large quantities of earth, buildings, etc. can all be moved with the aid of modern technology.

[19] A building is not required to have its foundation in the soil to be considered a separate immovable under La. C.C. Art 464. *See P.H.A.C. Services, Inc. v. Seaways Intl., Inc.*, 393 So. 2d 117 (La. App. 1 Cir. 1980), *affirmed*, 403 So. 2d 1199 (La. 1981) (applying various criteria, including whether the structure was integrated or attached to the soil in some way).

the state it was in while occupied by Alexander/Cooper – connected to the city electrical grid and sewage system, and set up on block pilings – their FEMA-owned travel trailer should be treated as equivalent to a building, and thus an immovable, under La. C.C. Art. 464 and Louisiana law.[20]

Fact witnesses who have installed FEMA emergency housing units have described how the units were anchored to the ground using straps and bolts. *See* U.S. Ex. 13-16.  Plumbing and water lines were permanently attached to the municipal systems, and after installation, the units were no longer mobile. *Id.*  In addition, Plaintiffs own experts (including a "building scientist) have testified that the Alexander/Cooper travel trailer unit is a "building," that all travel trailers are necessarily buildings, and that building codes apply to the FEMA emergency housing shelters at issue in this case. U.S. Ex. 17-19; *see* U.S. Ex. 19, Mallet Depo. 95/5-12 ("A travel trailer is just another building . . . It's a building.").  While the Code does not define the term building, it is important to consider that this travel trailer was set up for habitation at a static location.  The travel trailer was integrated into permanent utility systems, incorporated into the ground, and was both installed and uninstalled through the work of specialized contractors using mechanical means.  As installed, the Alexander/Cooper travel trailer could not be "moved from one place to another" as is required of a true "movable." *See* La. CC. Art. 471.

---

[20] Although mobile homes and house trailers are generally considered movables under the Louisiana Civil Code and special legislation, such items can be classified as separate immovables under La. C.C. Art. 464 (particularly given the circumstances of this case where the unit was immobilized as installed). *See also* La. C.C. Art. 475, La. R.S. 32:710, La. R.S. 9:1149.3 (recognizing that a manufactured home can be installed in a manner which would make it an immovable, but treating manufactured homes as movables under a specific statute for the purpose of mortgage or sale), La. R.S. 9:1149.4 (describing a manufactured home placed upon a lot or tract of land as an immovable under the statute if certain conveyance or mortgage records are recorded and it is "permanently attached to the lot or tract of land").  One Louisiana court has specifically held that a mobile home was a "building or other construction[ ]" within the meaning of La. C.C. Art. 464, and thus an immovable by its very nature. *Ellis v. Dillon*, 345 So.2d 1241 (La. App. 1 Cir. 1977).  In this case, it is important to look at how the emergency housing units were installed (taking the affirmative steps of attaching the unit to the permanent electrical and plumbing systems in order to alter the nature of the unit) and their purpose as a sheltering facility in assessing whether they qualify as separate immovables under La. C.C. Art. 464.

## 2.    FEMA Acted "Voluntarily And Without Compensation."

FEMA provided rent-free emergency housing to disaster victims, including

Alexander/Cooper, following Hurricane Katrina. *See* U.S. Ex. 11; U.S. Ex. 16.  Although

Alexander/Cooper only lived in a FEMA-owned shelter from approximately May 2006, until

December 2007, FEMA provided this gratuitous assistance to victims of Hurricane Katrina for over

44 months. *See* U.S. Ex. 11.  Plaintiff Alana Alexander has testified that she never was required to pay

any form of rent in order to live in her emergency housing unit. U.S. Ex. 16, Alexander Depo. 298/22-

24.  For approximately 20 months, her family was able to live rent-free while they attempted to

recover from the continuing effects of Hurricane Katrina.  Alexander/Cooper did not compensate

FEMA in any way for its provision of shelter, nor did FEMA ever request that they do so. *Id.*

It is also readily apparent, based upon the face of Alexander/Cooper's Complaint and the

incontrovertible facts, that FEMA provided emergency shelter to Alexander/Cooper and other disaster

victims on its own volition. *See* Compl. at 3 ¶ 13.  FEMA made a conscious choice to provide this

emergency shelter to Alexander/Cooper – and was not required to do so by any outside force, such as

a contractual requirement, statutory directive, commandeering order, or regulation.  FEMA knowingly

provided its own property to be used as emergency shelter by disaster victims without any form of

consideration being exchanged in return.  Because the FTCA requires that the United States' liability

be considered through the use of a private analogue, it is dubious whether government regulations

could have any effect on whether the "voluntarily" requirement of LHSEADA § 733.1 is satisfied

under these "like circumstances." *See Olson*, 546 U.S. at 44.  Nevertheless, there is no law that

requires a private individual or entity to provide free shelter to disaster victims – there is no duty to do

so.  Even considering the Stafford Act – which could never apply to a private individual or entity –

FEMA's actions fall within the "voluntarily" language of § 733.1.

While FEMA's authority is set forth in the Stafford Act and related implementing regulations,

18

these provisions only contain permissive grants to provide assistance – they do not constitute affirmative requirements.  This was recently confirmed in a similar context by the Fifth Circuit in *Ridgley v. FEMA*. 512 F.3d 727, 737 (5th Cir. 2008) ("The regulations state only that 'FEMA *may* provide assistance to individuals and households who qualify for such assistance'" (emphasis in original)).  In other words, a disaster victim does not have a right to receive assistance from FEMA, even if assistance if being offered and he or she meets certain eligibility criteria. *See id.* ("[T]he regulations nowhere provide that an individual has a right to receive assistance . . . [t]here is simply no indication that the regulations constrain FEMA's discretion . . . no 'specific directives' limit FEMA's discretion by compelling it to provide assistance . . .").  Permissive language regarding what FEMA "may" do is found throughout the Stafford Act provisions cited *supra* in Alexander/Cooper's Allegations and in the Statement of Facts. *See, e.g.,*Statement of Facts ¶ 6 (FEMA "may provide temporary housing units, acquired by purchase or lease, directly to individuals or households" (quoting 42 U.S.C. § 5174(c)(1)(B)(i)).[21]  Accordingly, FEMA retained discretion at all times to provide (or not to provide) housing assistance to Alexander/Cooper and other disaster victims following Hurricane Katrina.

> **3.    FEMA Granted The "Use Of The Whole Or Part Of The Immovable Property Or Premises."**

As distinguished from § 735, LHSEADA § 733.1 focuses on "private liability" rather than "state immunity." *See supra* at 17, n. 13 (discussing a similar, and equally applicable, limitation on liability contained in the LHEPA).  For its shield against liability to apply, the "owner or operator of the immovable property or premises" must "voluntarily and without compensation" either: (1) grant "a license or privilege"; (2) permit "the designation by the state or local homeland security and

---

[21] Similarly, the Court identified the permissive, rather than mandatory, nature of the Stafford Act and its provisions in its October 3, 2008, Order and Reasons regarding application of the FTCA's discretionary function exception. *See* Order and Reasons, October 3, 2008 [Doc. No. 717], at 18.

19

emergency preparedness agency"; or (3) grant the "use of the whole or part of the immovable property or premises." *See* La. R.S. 29:733.1.  Under the circumstances presented in this case, FEMA allowed the use of its property (an emergency housing unit in the form of a travel trailer) to be used as an emergency shelter by Alexander/Cooper.  It is their usage of this shelter that Alexander/Cooper now allege caused certain injuries.  Alexander/Cooper plead that after they were "displaced from their permanent home as a result of Hurricane Katrina," they were "provided" with a travel trailer. *See* Third Supp. Am. Compl. ¶¶ 4,5. *See also* U.S. Ex. 16.  They claim to have "resided continuously" in this travel trailer, thus using the trailer, for approximately 20 months. *Id.* ¶ 9.  Since FEMA gratuitously provided its property to Alexander/Cooper, as well as to other disaster victims following Hurricane Katrina, for use as emergency housing shelters, this provision of LHSEADA § 733.1 is plainly met.

> **4.     FEMA Did So "For The Purpose Of Sheltering Persons During An Actual . . . Emergency."**

Alexander/Cooper allege that they were provided a FEMA-owned shelter after they were displaced by "the greatest natural disaster in the history of the United States." Compl. ¶¶ 43, 52; *see id.* ¶¶ 13, 17 (stating that they were left "homeless" due to Hurricane Katrina).  It was in direct response to the emergency conditions created by Hurricane Katrina that Alexander/Cooper were provided a free housing unit by FEMA. *See id.* ¶ 12.  The LHSEADA specifically defines an "emergency" as "the actual or threatened condition which has been or may be created by a disaster." La. R.S. 29:735.  The Louisiana Legislature has not imposed a requirement that a declaration be issued by a governmental body or agency for this condition to be met.  Nor does the statute require a specified temporal relationship.  "Disaster" is defined in the section as "the result of a natural or manmade event which causes loss of life, injury, and property damage, including but not limited to natural disasters such as hurricane . . . storm, flood, . . ." *Id.*

To date, FEMA continues to consider Hurricane Katrina (FEMA-1603-DR) to be an "active" major disaster. U.S. Ex. 10.  In the months and years since the landfall of Katrina, FEMA has provided free shelter to disaster victims as long as it has been considered essential to meeting immediate threats to life and property resulting from the major disaster.  Even after the initial effects of the storm had passed, the looming threat of mass-homelessness, displacement, and lack of shelter from Hurricane Katrina persisted for years.  At the time Alana Alexander signed an "Emergency Shelter - Agreement to Rules of Occupancy," allowing her to obtain a free FEMA-owned emergency shelter, it was made clear that "FEMA is providing this unit as a temporary shelter . . . and I am not able to live in my residence due to this event." U.S. Ex. 9.  By requiring emergency housing occupants (through this agreement) to "accept other housing options, when they become available," *id.*, FEMA ensured that only those disaster victims still reeling from the actual exigencies created by Hurricane Katrina would be allowed to remain in the units over time.  Thus, as soon as the effects of the emergency were over for a particular housing occupant and he or she had some other form of shelter to return to, FEMA's agreement required that the occupant move out of the free FEMA-owned unit.  Ms. Alexander has testified that she only remained in the trailer during the period of time she could not find other housing due to the sweeping effects of the disaster. U.S. Ex. 16, Alexander Depo. 298-300.

In this context, and in the further context of the State of Louisiana's declarations of the continuing emergency, it would be unwarranted to argue that, at some point, FEMA's provision of emergency housing units became for "general purposes" rather than as part of a specific "emergency." *See generally Banks v. Parish of Jefferson*, 990 So. 2d 26, 34 (La. Ap.. 5 Cir.  2008) (assessing whether state immunity under LHSEADA § 735 applies and finding that the section was intended to address actions taken pursuant to a "particular emergency" rather than general construction activity), *compare Clement v. Reeves*, 935 So. 2d 279, 285 (La. App. 3 Cir. June 28, 2006) (finding that state

immunity under the LHSEADA did not apply in an automobile accident case where a state of emergency had ended and the connection between the conduct at issue – inspecting a warning sign – and the emergency was tenuous at best).  FEMA's provision of an emergency shelter to Alexander/Cooper was done in response to a "specific disaster" (Hurricane Katrina).  As Alana Alexander testified, she only lived in the emergency housing unit for as long as she had nowhere else to go to avoid being left homeless or displaced. U.S. Ex. 16, Alexander Depo. 298-300.  This case ranges far afield from cases where the activity in question might only be tangentially related to the emergency in question (*e.g.*, inspecting a warning sign or performing a pre-disaster construction project).  Throughout their entire occupancy period, Alexander/Cooper's use of the FEMA-owned shelter was in direct response to the discrete and actual unavailability of housing caused by Hurricane Katrina's destruction.

In addition, even though Alexander/Cooper allege to have vacated their emergency housing unit in December 2007, it is important to note that the Governor's proclamation declaring a state of emergency in Louisiana as a result of Katrina was recently extended, on limited grounds, through September 5, 2009. U.S. Ex. 1; U.S. Ex. 4; U.S. Ex. 5.  Just weeks before the time of filing (this motion), this extension was granted "to further extend the state of emergency due to the continuation of emergency/disaster conditions" from Hurricane Katrina. *See* U.S. Ex. 5.  Similarly, the State of Louisiana Department of Environmental Quality issued a declaration finding that an emergency existed as a result of Hurricane Katrina. U.S. Ex. 6.  This declaration was amended and extended numerous times.  As recently as this year, the State of Louisiana determined in "The Matter of Hurricane Katrina and its Aftermath," that "the emergency conditions [as amended and limited] . . . will continue to exist until at least March 31, 2009, in [certain parishes]." U.S. Ex. 8.  The effects of Hurricane Katrina still exist to the present day and in certain circumstances, still constitute an emergency as defined by the LHSEADA.

**C.     Under The LHSEADA, FEMA Cannot "Be Liable For The Death Of, Or Injury To, Any Person . . . Solely By Reason Or As A Result Of The . . . Use."**

As described above, FEMA's conduct, as seen through analogous private liability,  satisfies

the four requirements set forth in LHSEADA § 733.1.  Thus, the Act's limitation on liability

categorically applies.  Alexander/Cooper's FTCA claims center on alleged injuries that occurred as a

result of their "use" and occupancy of the FEMA-owned emergency shelter.  Regardless of whether

they focus their claims on the initial provision of their emergency housing unit or an alleged negligent

response to safety concerns/complaints regarding their unit, § 733.1 mandates that liability cannot be

maintained against a private individual under these circumstances unless the exception described

below applies.

**D.     Plaintiffs Cannot Show That "The Gross Negligence Or The Willful And Wanton Misconduct" Of FEMA Was "The Proximate Cause Of The Death, Injury, Loss, Or Damage Occurring During The Sheltering Period," Thus This Sole Exception To § 733.1 Does Not Apply.**

Because LHSEADA § 733.1 applies to the circumstances of this case and would shield a

private individual from Alexander/Cooper's negligence claims, the FTCA has not waived sovereign

immunity for Alexander/Cooper's FTCA claims against the United States.  The lone exception to the

non-liability provision found at § 733.1 is if the owner or operator of the sheltering premises

committed "gross negligence" or "willful and wanton misconduct"[22] (which is legally distinct from

ordinary negligence) and if this conduct proximately caused the plaintiff's injury or damages. *See* La.

R.S. 29:733.1.  Alexander/Cooper cannot come forward with any indication that FEMA, in its

ownership and operation of Alexander/Cooper's emergency shelter, committed gross negligence or

willful and wanton misconduct.  Thus, dismissal is required.

---

[22] *See Ambrose v. New Orleans Police*, 639 So. 216, 220 (La. 1994) ("There is often no clear distinction between such [willful, wanton, or reckless] conduct and 'gross' negligence, and the two have tended to merge and take on the same meaning.").

Although Alexander/Cooper included a boilerplate statement in their initial Complaint that the United States was "negligent, grossly negligent, reckless, willful and/or wanton," they have utterly failed to associate these conclusory allegations with any specific facts. *See* Compl. ¶¶ 80-82; *Jefferson v. Lead Indust., Inc.*, 106 F.3d 1245 (5th Cir.1997) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true . . ."). Further, whether this motion is considered under Rule 12(b)(1) or Rule 56, Alexander/Cooper cannot come forward with any indication that FEMA committed willful and wanton misconduct under the circumstances.

Proof of gross negligence or willful and wanton misconduct requires a showing of conduct which is beyond ordinary negligence or carelessness, and consists of premeditated, obstinate, intentional acts demonstrating utter disregard of ordinary prudence, and amounting to a complete neglect of the rights of others.[23] *See* Oliveaux v. St. Francis Medical Center, 889 So.2d 1264, 1272-73, n. 2  (La. App. 2004). *See also Solow v. Heard McElroy & Vestal, L.L.P.*, 7 So.3d 1269, 1276-77 (La. App. 2009); *Roton v. Vernon E. Faulconer, Inc.*, 966 So.2d 790, 795 (La. App. 2007), *writ denied*, 973 So.2d 724 (La. 2008); *Surgan v. Parker*, 181 So. 86, 89 (La. App. 1938).  Alexander/Cooper cannot create a genuine issue as to whether FEMA, as owner of their emergency shelter, proximately caused them injury through the kind of conscious indifference or premeditated conduct that is required for a finding of gross negligence or willful and wanton misconduct. *See, e.g., Hontex Enterprises, Inc. v. City of Westwego*, 833 So. 2d 1234, 1240 (La. App. 5 Cir. December 11, 2002) (affirming summary judgment under § 735(A) by agreeing there was no indication of willful misconduct on the part of

---

[23] Under the FTCA, the United States has not waived sovereign immunity for suits involving the intentional torts of its employees. *See* 28 U.S.C. § 2680(h).

defendants).  The record cannot sustain such an argument.  As a result, the lone exception to the non-

liability provision of LHSEADA § 733.1 does not apply, and Alexander/Cooper's FTCA claims must

fail for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Plaintiffs' FTCA claims against the United States should be

dismissed for lack of subject-matter jurisdiction, pursuant to 28 U.S.C. §§ 1346(b) and 2674.

Dated:  August 17, 2009

Respectfully Submitted,

TONY WEST
Assistant Attorney General, Civil Division

J. PATRICK GLYNN
Director, Torts Branch, Civil Division

DAVID S. FISHBACK
Assistant Director

HENRY T. MILLER
ADAM BAIN
Senior Trial Counsel

*s/ Adam M. Dinnell*
ADAM M. DINNELL (TX No. 24055405)
MICHELE GREIF
JONATHAN WALDRON
Trial Attorneys
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20004
Telephone:  (202) 616-4211

Attorneys for Defendant United States

25

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2009, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

*s/ Adam M. Dinnell*
ADAM M. DINNELL (TX No. 24055405)

26