UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER FORMALDEHYDE § | | MDL No. 1873 |
| PRODUCTS LIABILITY LITIGATION § | | |
| § | | SECTION N(5) |
| § | | |
| THIS DOCUMENT IS RELATED TO: § | | JUDGE ENGELHARDT |
| *Charlie Age, et al. v.* § | | |
| *Gulf Stream Coach, Inc., et al.* § | | MAGISTRATE CHASEZ |
| *Civil Action No. 09-2892* § | | |

_____

**MEMORANDUM IN SUPPORT OF
FLUOR ENTERPRISES, INC.'S PARTIAL MOTION FOR
SUMMARY JUDGMENT REGARDING CLAIMS AGAINST IT
UNDER THE LOUISIANA PRODUCTS LIABILITY ACT**

This memorandum is submitted on behalf of Fluor Enterprises, Inc. (FEI) in support of its partial motion for summary judgment with respect to the Alexander Plaintiffs' (Plaintiffs) cause of action against FEI under the Louisiana Products Liability Act (LPLA).

**PRELIMINARY STATEMENT**

The Federal Emergency Management Agency (FEMA) owned and/or purchased travel trailers, park models and manufactured homes for use as emergency housing units (EHUs) for persons displaced from their residences after Hurricanes Katrina and Rita struck the Louisiana Gulf Coast.  FEMA had an Individual Assistance—Technical Assistance Contract (IA-TAC Contract) with FEI to deliver, set up, and ready these EHUs for use.  In order to perform their

obligations under the IA-TAC Contract, FEI would or would have one of its subcontractors transport and deliver an EHU, place the EHU upon concrete blocks, stabilize the unit and ready the unit for use by the displaced occupant(s).  Plaintiffs claim that these simple steps render FEI liable as a manufacturer of the EHU under the LPLA.  The process by which FEI conducted its tasks and performed its contractual obligations in general, and particularly with respect to the Alexander EHU, did not create a "product" such that FEI could be liable as a "manufacturer" under the LPLA.[1]

## BACKGROUND

This multi-district litigation (MDL) is the consolidation of several state and federal toxic tort suits in which Plaintiffs claim to have inhabited EHUs that were provided to them by FEMA, because their residences were rendered uninhabitable by Hurricanes Katrina and Rita.[2]  After selecting and purchasing these EHUs, FEMA provided them to Plaintiffs by contracting with certain companies, like FEI,  to deliver the EHUs, set them up, and make them ready for residential use.[3]  Plaintiffs generally claim to have been exposed to formaldehyde contained in these EHUs and to have suffered damages as a result.  Plaintiffs sued the manufacturers of the EHUs, the United States Government and the government contractors, like FEI, who delivered and set up these EHUs.  These EHUs consist of travel trailers, park models or manufactured homes.[4]

---

[1] In Rec. Doc. 1762, the Court denied Shaw and CH2M Hill's Fed. R. Civ. P. 12(b)(6) motion to dismiss the LPLA claims against them.  However, in doing so, the Court was ruling on a 12(b)(6) motion and expressly said  "To be clear, while the Court is not now making a determination as to whether the IA/TACs are indeed manufacturers under the LPLA, the undersigned is denying the instant motion to dismiss on the ground that the IA/TACs cannot as a matter of law be considered manufacturers under the LPLA." Rec. Doc. No. 1762 at p. 14.  Now, however, the facts are undisputed concerning the nature of the work done by FEI with respect to the Alexander trailer, and the question presented is purely one of law.
[2] Rec. Doc. 109, par. 96.
[3] Court's Order, Rec. Doc. 717, p. 22.
[4] Rec. Doc. 1629, n. 1.

Plaintiffs joined the MDL on February 27, 2009.[5]  Thereafter, Alexander and her minor child were selected as the bellwether plaintiffs in a trial scheduled to commence on September 14, 2009, against the USA, Gulf Stream (the manufacturer of the travel trailer in which Plaintiffs resided) and FEI, the government contractor who was responsible for having the travel trailer delivered and installed.[6]  Plaintiffs generally assert LPLA and, alternatively, negligence claims against FEI, contending that FEI somehow qualifies as a "manufacturer" simply because FEI installed or had a subcontractor install the travel traveler on concrete blocks, and attached the unit to utilities, including water, sewer and electricity.[7]  FEI is not a manufacturer of any product, and the process by which FEI conducted its tasks and performed its contractual obligations with respect to the FEMA travel trailer assigned to and ultimately occupied by the Plaintiffs did not result in the creation of a "product" whereby FEI could be liable as a "manufacturer" under the LPLA.

## STATEMENT OF FACTS

The essential facts are set forth in the attached Statement of Uncontested Material Facts and may be summarized as follows.

Plaintiffs admit in their complaints that following Hurricane Katrina they received emergency housing assistance from FEMA, pursuant to the Stafford Act and applicable federal regulations. FEMA provided Plaintiffs with a travel trailer manufactured by Gulf Stream. It is undisputed that FEMA selected and ordered the travel trailer, through an intermediary, from the trailer manufacturer, Gulf Stream. Plaintiffs admit that they began living in the travel trailer on

---

[5] In Age, et al v. Gulf Stream Coach, Inc., et al, 09-2892; Rec. Doc. 1.
[6] Declaration of Charles Al Whitaker at ¶¶ 11-17.
[7] Rec. Doc. 1 (Age's original complaint, count 3); Rec. Doc. 1636 (Alexander's first supplemental and amended complaint, par. 13) ); Rec. Doc 1686 (Alexander's third supplemental and amended complaint par. 13).

May 27, 2006 and stopped living in it on December 20, 2007.[8] Plaintiffs also acknowledge that their travel trailer was installed at their location and hooked to utilities for residential purpose by FEI, pursuant to a contract between FEI and FEMA.[9]

### FEI Is a Government Contract Provider of Professional And/or Nonprofessional Services For FEMA

A.  **The IA-TAC CONTRACT**

On July 12, 2005, FEMA awarded the IA-TAC Contract, No. HSFEHQ-05-D-0471, to FEI; the IA-TAC Contract required FEI to be prepared to mobilize to provide general contractor services for disaster relief anywhere in the United States, pursuant to individual task orders to be issued by FEMA.[10] This umbrella contract provided the general requirements for all of FEI's anticipated work "at [v]arious disaster sites to be determined" by FEMA anywhere in the United States, with the condition that FEMA would prepare a specific Statement of Work (SOW) for each individual task order it later issued.[11] The contract terms generally provided for FEI to perform contractor services in the event of a disaster on a project by project basis, as assigned by FEMA including, but not limited to: "supporting staging areas for units, installation of units, maintenance and upkeep, site inspections ... restorations, group site designs, ... construction, site assessment, property and facility management, and unit deactivation and removal."[12]

The IA-TAC Contract sets forth precise specifications dictating the exact manner for FEI to install the travel trailers, including detailed requirements for delivery, blocking and leveling, anchoring and straps, utilities hook-ups (i.e., sewer line, water line, electrical wiring) steps,

---

[8] Rec. Doc. 1636, par. 9.
[9] Rec. Doc. 1636, par. 8.
[10] A copy of relevant portions of the IA-TAC Contract between FEMA and FEI is attached as Exhibit 1; see FL-FCA-1, 10, (section F, F.3 (principal place of performance), part III, section J, attachment A. (scope of work) FL-FCA-60, 74.
[11] The IA-TAC is like an umbrella contract or a master services contract containing general conditions for all work performed under the contract, whereas each task order is like a work order specific to the disaster and work required by FEMA of the contractor for that disaster. See the Contract, attachment A (scope of work) FL-FCA-60-74.
[12] The Contract, Exhibit 1, attachment A. § 2.1.7, FL-FCA-62.

winterization, handicapped ramps/platform steps, and numerous minor tasks to make the travel trailers ready for occupancy (RFO).[13] Specifically, in Exhibit 7 to the Contract, FEMA directed FEI to install the travel trailers on six piers constructed in a precise fashion.

### B. Task Order 20 Under The IA-TAC

In response to Hurricane Katrina, FEMA issued Task Order 20 to FEI in the Fall of 2005 to provide staging support, haul/install and installation construction activities, maintenance and deactivation to further FEMA's operational objective of providing temporary housing solutions for people displaced because of hurricane Katrina. Task Order 20 directed "[FEI] shall execute these tasks to the requirements and specifications identified in this task order, in accordance with the Performance Work Statements and applicable Exhibits."[14] The Alexander trailer was installed pursuant to a work order issued under Task Order 20.

FEI was assigned the task of delivering, installing and making ready for use the EHU assigned to Plaintiffs.[15] According to the FEMA installation packet maintained by FEI, Plaintiffs were assigned a FEMA owned travel trailer manufactured by Gulf Stream bearing VIN No. 1NL1GTR2531021783.[16] The travel trailer was picked up at FEI's Six Flags staging area on February 17, 2006 and installed at 4415 Dale Street, New Orleans, Louisiana on the same day.[17]

The travel trailer Unit Inspection Report, dated January 14, 2006, indicates that the condition of the travel trailer and its contents was like new and that it included a water heater, range, refrigerator and microwave.[18]

---

[13] Exhibit 7, is attached to the Declaration of Charles A. Whitaker, Ex. 2 § 2 (basic travel trailers set-up) FL-FCA-113-122.
[14] The Contract, Exhibit 1, General Provisions (3), FL-FCA-219.
[15] Declaration of Charles A. Whitaker at ¶ 11.
[16] Declaration of Charles A. Whitaker at ¶¶ 12-14.
[17] Declaration of Charles A. Whitaker at ¶ 16.
[18] Declaration of Charles A. Whitaker at ¶ 15.

The Ready For Occupancy (RFO) QC/QA Acceptance Checklist indicates that the travel trailer assigned to Plaintiffs was blocked on at least 6 concrete piers, anchored with the required straps, and utilities installed (ie. sewer, water, and electricity) as well as propane tanks, battery and metal steps.[19]  Plaintiffs took occupancy of the EHU at 4415 Dale Street, New Orleans, LA on March 20, 2006.[20]

## ARGUMENT AND APPLICABLE LAW

FEI is a contract provider of professional and/or nonprofessional services that performed its work according to and in compliance with specifications provided and mandated by FEMA. The process by which FEI conducted its tasks and performed it contractual obligations did not create a "product" whereby FEI could be liable as a "manufacturer" under the LPLA, thereby entitling FEI to a partial summary judgment insofar as the LPLA claims alleged by Plaintiffs are concerned.

### A.  Summary Judgments Are Favored

Summary Judgment is appropriate under FRCP 56 if the record discloses that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  There is no genuine issue of material fact if the record, taken as a whole, cannot lead a rationale trier of fact to find for the non-moving party.  Matsushita Electric Industrial Corp. v. Zenith Radio Co., 475. U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed. 2d 538 (1986).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The mere existence of

---

[19] Declaration of Charles A. Whitaker at ¶ 17.
[20] Declaration of Charles A. Whitaker at ¶ 18.

factual disputes will not defeat an otherwise properly supported motion.  Anderson, 477 U.S. at 248.  Further, the court's finding that a rational jury could not find for the non-moving party may be supported by the absence of evidence needed to establish an essential element of the non-moving party's case.  Id.  Fed.R.Civ.P. 56 would be thwarted if a defendant had "to bear the costs of trying all of the issues in a case when some can and should be resolved on summary judgment."  Little v. Liquid Air Co., 37 F.3d 1069, 1076 (5th Cir. 1994).

After the moving party meets its burden of demonstrating the absence of a genuine issue of material fact, the non-moving party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Id. at 1075.  This burden cannot be met merely by pointing to "some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' [or] by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Id. (citing Matsushita, 475 U.S. at 586; Lujan v. Nat'l. Wildlife Fed., 497 U.S. 871-73 (1990); Hopper v. Frank, 16 F.3d 92 (5th Cir. 1994); Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir. 1994)).

Courts have granted summary judgment and held that the procedure by which a process is performed does not create a product whereby the contractor would be liable as a manufacturer under the LPLA.  See e.g., Hughes v. Pogo Producing Co., 2009 U.S. Dist. LEXIS 16736; Parks v. Baby Fair Imports, Inc., 726 So. 2d 62 (La. App. 5 Cir. 1998); Slaid v. Evergreen Indemnity, 745 So. 2d 793 (La. App. 2 Cir. 1999.

**B.    FEI is not a "Manufacturer" under the LPLA**

FEI seeks partial summary judgment as to Plaintiffs' claims under the LPLA on the grounds it cannot be liable under the LPLA because it is not the "manufacturer" of a "product" under the LPLA.

The LPLA is the exclusive remedy in Louisiana against a "manufacturer" for damages caused by their products. La. R.S. 9:2800.53(1). The LPLA expressly does not apply to actions against providers of professional and/or nonprofessional services, even if the service results in a product, unless they meet the definition of "manufacturer" under the LPLA. La. R.S. 9:2800.52.

La. R.S. 9:2800.53 defines a "manufacturer" and "manufacturing a product" under the LPLA as follows:

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
>
> (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
>
> (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
>
> (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.

La. R.S. 9:2800.53(1)(a)-(c).

La. R.S. 9:2800.53 defines a "product" under the LPLA as follows

> (3) "Product" means a corporeal movable that is manufactured for placement into trade or commerce, including a product that forms a component part of or that is subsequently incorporated into another product or an immovable.

La. R.S. 9:2800.53(3).

Plaintiffs contend that FEI qualifies as a manufacturer under the LPLA as they performed work pursuant to their contracts with FEMA which altered the character, design, construction, and/or quality of the product and that the housing units constitute products under the LPLA.[21]

---

[21] Rec. Doc. 1, par. 104.

Furthermore, Plaintiffs contend that FEI, by installing the temporary housing units on concrete blocks for extended occupancy and, further, by installing residential appliances and heating and air conditioning units, knowingly and intentionally modified the design and the actual use of the units.[22]

In order for Plaintiffs to maintain a cause of action against FEI under the LPLA, Plaintiffs must first prove that FEI "manufactured" the temporary housing units provided by FEMA to Plaintiffs. In support of this allegation, Plaintiffs assert that FEI altered the character, design, construction, and/or quality of the housing units by placing them on concrete blocks for extended occupancy. In particular, Plaintiffs allege that FEI's "reconditioning and refurbishment" of the housing units created stress and distortion that allowed for increased moisture intrusion and formaldehyde exposure due to cracks and openings in the shell.

Clearly, subsections (a), (b) and (c) of LA. R.S. 9:2800.53(1) have no application to the facts of this case. FEI did not label the Alexander trailer as its own, did not exercise control over the design, construction or quality of the EHU, and did not incorporate a component part into the EHU. (The EHU was for all intents and purposes the entire product of Gulf Stream, not FEI.) Therefore, the key issue is whether FEI's activities rose to the level of a "reconditioning" or "refurbishment" required by LA. R.S. 9:2800.53. Generally, remanufacturing, reconditioning, or refurbishing requires one to do something to the product that influences it in a meaningful and creative way. *Slaid v. Evergreen Indem., Ltd.*, La. App. 32363, 745 So. 2d 793 (La. App. 2 Cir. Oct. 27, 1999), citing John N. Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 LA.L.Rev. 565, 572 (1989).

FEI does not meet the definition of "manufacturer" found in the LPLA. FEI, in this instance, is a government contractor tasked with making the EHUs ready for occupancy pursuant

---

[22] Rec. Doc. 1, par. 108.

to the government's specifications. FEI is not in the business of manufacturing these housing units "for placement into trade or commerce." La. R.S. 9:2800.53(1). FEI did not label the EHUs as its own product and it never held itself out as the manufacturer of the EHUs. R.S. 9:2800.53(1)(a). FEI did not sell the housing units, therefore, subsection (b) is inapplicable. Likewise, FEI did not incorporate component parts by another manufacturer into the housing units. R.S. 9:2900.53(1)(c). There is no evidence that FEI engaged in any of the above activities defining a manufacturer.

Plaintiffs assert that FEI's actions in blocking the unit off its wheel base and hooking the unit to the utilities somehow altered the trailer and modified its design.[23] FEI did not make, produce, fabricate, construct or design the housing units.

Charles A. Whitaker, P.E., FEI's FEMA IA-TAC Program Manager has reviewed the records that FEI kept as a part of its normal business operation as they related to the EHU assigned to Alana Alexander and his review reveal that:

1. FEI was assigned the task of delivering, installing and making ready for use the EHU assigned to Alana Alexander.[24]

2. FEI maintains a FEMA installation packet in regards to the EHU assigned to Alana Alexander.[25]

3. The EHU installation packet indicates that Alana Alexander's EHU was to be located at 4415 Dale Street, New Orleans, Louisiana and designated Site Control number SC-03-

---

[23] Rec. Doc. 1, par. 106.
[24] Declaration of Charles A. Whitaker at ¶ 11.
[25] Declaration of Charles A. Whitaker at ¶ 12.

077802 and assigned Private Site Installation Work Order number 1603-001-061241-INP.[26]

4. The EHU assigned to Alana Alexander was a travel trailer owned by FEMA and manufactured by Gulf Stream bearing VIN No. 1NL1GTR2531021783.[27]

5. The travel trailer Unit Inspection Report is dated January 14, 2006 and indicates that the condition of the travel trailer and its contents was like new. The travel trailer included a water heater, range, refrigerator and microwave.[28]

6. The travel trailer was picked up at FEI's Six Flags staging area on February 17, 2006 and installed at 4415 Dale Street, New Orleans, Louisiana on the same day.[29]

7. The Ready For Occupancy (RFO) QC/QA Acceptance Checklist indicates that the travel trailer assigned to Alana Alexander was blocked on at least 6 concrete piers, anchored with the required straps, and utilities installed (ie. sewer, water, and electricity) as well as propane tanks, battery and metal steps.[30]

8. Alana Alexander took occupancy of the EHU at 4415 Dale Street, New Orleans, LA on March 20, 2006.[31]

9. The Maximo Work Order tracking system is a data system that maintains information and data related to maintenance performed by FEI on the EHUs once the EHU is installed and occupied.[32]

---

[26] Declaration of Charles A. Whitaker at ¶ 13.
[27] Declaration of Charles A. Whitaker at ¶ 14.
[28] Declaration of Charles A. Whitaker at ¶ 15.
[29] Declaration of Charles A. Whitaker at ¶ 16.
[30] Declaration of Charles A. Whitaker at ¶ 17.
[31] Declaration of Charles A. Whitaker at ¶ 18.
[32] Declaration of Charles A. Whitaker at ¶ 19.

10. The Maximo Work Order tracking system indicates that FEI did not perform any maintenance on the EHU assigned to Alana Alexander once it was installed and prior to March 20, 2006.[33]

11. The Maximo Work Order tracking system would have indicated if FEI had performed any routine maintenance or any major material item replacement on an EHU that exceeded $250.00.[34]

12. FEMA's Contracting Officer's Technical Representative (COTR) approval is required for any major material item replacement on an EHU that exceeds $250.00 whether the EHU is in a staging yard or installed and COTR approval is tracked on the Technical Direction Log.[35]

13. The records do not indicate that COTR approval was sought by FEI and/or received by FEI regarding the EHU assigned to Alana Alexander.[36]

FEI's records and the declaration of Charles A. Whitaker, P.E. attached as "Exhibit 2" to this motion for summary judgment support the proposition that FEI was a contract service provider and that FEI provided the services of delivering, setting up and readying for use the EHU assigned to Alana Alexander and further that FEI did not maintain or replace any major material item.

In a recent ruling on a Motion for Summary Judgment out of the United Stated District Court for the Western District of Louisiana in the matter <u>Hughes v. Pogo Producing Co</u>., 2009 WestLaw 536047, 2009 U.S. Dist. Lexis 16736, the Court found the builder of a platform (Atlantia Corp.) was not the manufacturer under the LPLA by virtue of incorporating a living

---

[33] Declaration of Charles A. Whitaker at ¶ 20.
[34] Declaration of Charles A. Whitaker at ¶ 21.
[35] Declaration of Charles A. Whitaker at ¶ 22.
[36] Declaration of Charles A. Whitaker at ¶ 23.

quarters package containing allegedly defective bunk beds and a ladder into the platform. The Court determined this in spite of the fact that the builder purchased a living quarters package, which included the bunk bed and ladder, from a company (TBS) that manufactured the living quarters package. The builder then welded the entire living quarters package (containing the bunk bed and ladder) onto the platform, and thereafter, sold the entire platform to another company (British Borneo/ENI). The Court went on to say that:

> Atlantia did not *manufacture* either the bunk beds or ladder or the living quarters package itself. Rather, Atlantia was engaged in constructing a platform much as a building contractor engages in the construction of a house, and in so doing incorporated certain component parts which had been manufactured by a third party, much as a building contractor does. (emphasis in original)

Hughes, 2009 U.S. Dist. Lexis 16736 at *25.

This case is similar to the Hughes case in that FEI, like Atlantia, simply took what was already manufactured by others and hooked (like in Hughes, welded) them to the travel trailer to make it operational.

The Court, in Hughes, in deciding that the builder was not a "manufacturer," relied upon the Louisiana Fifth Circuit Court of Appeal case, Parks v. Baby Fair Imports, Inc., La. App. 98626, 726 So. 2d 62 (La. App. 5 Cir. December 16, 1998).

In Parks, the issue before the court was whether a defendant retailer of a children's shirt that was allegedly unreasonably flammable was a manufacturer of the shirt. The plaintiffs bought the shirt from K-Mart, which ordered the shirt from the manufacturer, Baby Fair. Apparently, K-Mart was able to choose certain features of the shirt when ordering, and K-Mart requested a non-specific 55% cotton/45% polyester jersey fabric in a certain color. Beyond specifying the fiber content and color of the fabric, K-Mart had nothing else to do with the fabric

selection of the shirt; the specific selection of the particular type of and nature of 55% cotton/45% polyester jersey was left to the manufacturer.  Hughes at *18, 19.

The trial court granted summary judgment in favor of K-Mart, and the Louisiana Fifth Circuit Court of Appeals affirmed observing:

> We agree with the trial court that K-Mart's placement of this order with Baby Fair does not rise to the level of exercising control over or influencing a characteristic of the design, construction or quality of the product.  It appears that K-Mart made a selection from goods available from Baby Fair. Plaintiffs' interpretation would turn all sellers who made specific selections of goods offered from manufacturers into manufacturers themselves.  We believe that the legislature intended more direct and specific conduct on the part of the seller than that exhibited by K-Mart in this case.  Thus, we conclude that K-Mart was not a manufacturer/seller of the shirt.

Hughes at *20, quoting Parks, 726 So.2d at 64.

Like the above cases, FEI did not manufacture the alleged product.  FEI did not purchase the travel trailer that was used as the EHU assigned to Plaintiffs, nor did FEI create a new product by setting up the travel trailer in accordance with the FEMA specifications.  Rather, FEI used standalone products, such as cinder blocks, PVC pipe, anchors and steps that were used and assembled to block, stabilize and make ready the EHU for occupancy.  Use of these standalone products does not create a new product.

Even considering the Louisiana First Circuit's opinion in Coulon v. Wal-Mart Stores, Inc., 734 So. 2d 916 (La. App. 1 Cir. 1999), which this Court relied on in denying Shaw's and CH2M Hill's earlier motions to dismiss, FEI still does not qualify as a "manufacturer" under the statute.  The case can be distinquished.

In Coulon, Wal-Mart received an unassembled bicycle in a box sent by Roadmaster/Brunswick, the manufacturer of the bicycle parts. Wal-Mart then assembled, or contracted with a third party to assemble, the bicycle. Wal-Mart placed the assembled bicycle on the bicycle sales rack for sale to the consuming public. Coulon v Wal-Mart, 734 So. 2d 916 at 917. In Coulon, the Court construed provisions (a) and (b) of La. R.S. 9:2800.53(1) together when it espoused that,

> a 'manufacturer' is an entity which labels a product as its own or otherwise holds itself out as an entity in the business of constructing a product, as well as a seller who exercises control over or influences a characteristic of construction of a product which causes damage.

Coulon v Wal-Mart, 734 So. 2d 916 at 920.

While the court in Coulon concluded that "the term 'manufacturing a product' indirectly refers to assembling; thus, one who assembles a product for sale is properly deemed a manufacturer of the assembled product under the LPLA," the court's ruling is fact specific. Coulon v Wal-Mart, 734 So. 2d 916 at 920. Insofar as the unassembled bicycle is concerned, each individual piece of the bicycle cannot be used by itself. The assembly of the parts is necessary for the creation of the product, a bicycle. Coulon v Wal-Mart, 734 So. 2d 916 at 919.

In Coulon, Wal-Mart owned the unassembled parts of the bicycle that were ultimately assembled into a bicycle which Wal-Mart then sold to the consuming public. The court found that if a defect occurred in the assembly process, then the owner, Wal-Mart, is answerable for that defect as a manufacturer.

In the case before this Court, FEI is not the owner of the Gulf Stream travel trailer in which Plaintiffs resided, and FEI did not alter the Gulf Stream travel trailer and then place it in commerce for the consuming public as a seller.

In the case before this Court, the parts that FEI installed, or caused to be installed, pursuant to the terms of the contract it had with FEMA, did not create a new product. The travel trailer was a travel trailer before being placed on cinder blocks and hooking up utilities, and was still a travel trailer after being placed on cinder blocks and being hooked up to utilities. Nothing new was created by the process that FEI used to set up the travel trailers. What you have here is a travel trailer before and a travel trailer after. By contrast, a bike is not a bike until assembled. In order to succeed on the LPLA claim, Plaintiffs need to show that FEI is a "manufacturer." Plaintiffs cannot show that FEI is a manufacturer because FEI does not fit any of the subparts of the LPLA's definition of a manufacturer. Plaintiffs have tried to show that FEI altered the travel trailer and thereby "remanufactured," "reconditioned" or "refurbished" the travel trailer. Simply making minor adjustments to the travel trailer and hooking it up to the utilities does not make FEI a "manufacturer" for purposes of the LPLA.

## **CONCLUSION**

Plaintiffs have made claims against FEI based on the Louisiana Products Liability Act. They cannot meet their burden of proof as mandated under the act, therefore summary judgment is proper. The act specifies that Plaintiffs must prove four elements, 1) that FEI manufactured the trailer, 2) that the trailer's characteristics proximately caused Plaintiffs' damage, 3) that the characteristics made the trailer unreasonably dangerous, and 4) that Plaintiffs' damage arose from a reasonably anticipated use of the trailer. Because Plaintiffs are unable to prove the first element, that FEI "manufactured" the trailer, their claim under the LPLA fails.

Under its contract with FEMA, FEI was obligated to transport the trailer to its designated location, install it on blocks, anchor it to the ground pursuant to FEMA specifications, and connect the trailer to the local utilities (sewer and electricity). Plaintiffs allege that these actions,

in particular lifting the trailer from its wheel base, somehow altered the trailer's character, design and construction. None of these activities, which readied the trailer for occupancy, makes FEI the trailer's manufacturer under the statute's definition. FEI's actions do not constitute an overhaul or a "refurbishment" of the trailer. FEI did not "recondition" the inside or outside of the trailer, nor did it "remanufacture" the trailer or any of its parts. FEI took a new trailer manufactured by another entity, placed it on blocks securing it to the ground, and connected local utilities to the trailer. These actions are not "producing," "making," "fabricating," "constructing," or designing" as explained in the statute's definition. FEI is not a seller nor did FEI label the trailer as its own product. The term "manufacturer" as defined in the LPLA simply does not include FEI.

Failure to prove the first element in the LPLA's four part analysis determining liability is fatal to Plaintiffs' claims. Therefore, summary judgment should be granted and Plaintiffs' claims against FEI under the LPLA should be dismissed as a matter of law.

        Respectfully submitted,

        **MIDDLEBERG, RIDDLE & GIANNA**

BY:      s/ Richard A. Sherburne, Jr.
      Dominic J. Gianna, La. Bar No. 6063
      Sarah A. Lowman, La. Bar No. 18311
      201 St. Charles Avenue, Suite 3100
      New Orleans, Louisiana 70170
      Telephone: (504) 525-7200
      Facsimile: (504) 581-5983
      dgianna@midrid.com
      slowman@midrid.com

      Charles R. Penot, Jr. (La. Bar No. 1530 &
      Tx. Bar No. 24062455)
      717 North Harwood, Suite 2400
      Dallas, Texas 75201
      Tel: (214) 220-6334; Fax: (214) 220-6807
      cpenot@midrid.com

>
> *-and-*
>
> Richard A. Sherburne, Jr., La. Bar No. 2106
> 450 Laurel Street, Suite 1101
> Baton Rouge, Louisiana 70801
> Telephone: (225) 381-7700
> Facsimile: (225) 381-7730
> rsherburne@midrid.com
>
> **ATTORNEYS FOR FLUOR ENTERPRISES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record, including court-appointed liaison counsel, who are CM/ECF participants.

>       s/ Richard A. Sherburne, Jr.

ND: 4852-5582-9764, v. 1