UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER<br>    FORMALDEHYDE PRODUCTS<br>    LIABILITY LITIGATION<br><br><br><br><br>THIS DOCUMENT IS RELATED TO<br><br>*Charlie Age, et al v. Gulf Stream Coach*<br>*Inc., et al*, Docket No. 09-2892;<br>Alana Alexander, individually and on behalf of<br>Christopher Cooper | * MDL NO. 1873<br>*<br>* SECTION "N" (5)<br>*<br>* JUDGE ENGELHARDT<br>* MAGISTRATE CHASEZ<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM'S MOTION TO STRIKE
CERTAIN LAY WITNESSES**

Plaintiff Alana Alexander, individually and on behalf of her son, Christopher Cooper ("Ms. Alexander" or "Plaintiff"), responds to Defendant Gulf Stream Coach, Inc.'s ("Gulf Stream") Motion to Strike Lay Witnesses and, in support, would show the following:

**SUMMARY OF RESPONSE**

Gulf Stream's motion is the pinnacle of "gotcha" litigation gamesmanship. Gulf Stream moves to strike three former employees and one former contractor--Don Freiberger, Karen Freiberger, Don Shaffer and Ron Dhaeze (the "Four Witnesses")--all individuals who reside in Indiana. (Docket Entry No. 2628) From reading Gulf Stream's motion, one would think that Gulf Stream had not even heard of these witnesses until just recently. But, that is not the case.

Plaintiff identified the Four Witnesses to Gulf Stream on July 8, 2009, in discovery responses and specifically identified them as trial witnesses. Plaintiff sought leave to take these depositions—pleaded to take these depositions—so they could be used at trial, because of their location and the time savings it would provide the Court, jury and parties at trial. Gulf Stream

objected.

At the hearing on the motion for leave to take the depositions, Plaintiff's counsel made it clear (again) that Plaintiff would bring these witnesses to trial. Gulf Stream's counsel acknowledged that and accepted the fact that he had the opportunity to depose them but chose not to. The following quote from Gulf Stream's counsel is most instructive:

> Judge, I'll respond like this: They're [a list which includes the subject Four Witnesses] on their witness list. They've been disclosed to me, so I have the chance to depose them if I want to depose them…On the other hand, **I think if somebody's on a witness list that I choose not to depose, I think I have a hard time saying I'm prejudiced and they can't testify.**

---Gulf Stream Counsel, July 10, 2009 Hearing

## FACTUAL BACKGROUND

This case is one of thousands of cases filed in this Multi District Litigation involving travel trailers provided to victims of Hurricanes Katrina and Rita.

The case of *Age, et al v. Gulf Stream Coach, Inc., et al* (of which Ms. Alexander is a Plaintiff) was filed on February 27, 2009. On April 6, 2009, the Court selected Ms. Alexander as the first trial plaintiff.

On April 8, 2009, the Court issued a scheduling order for this case. (Docket Entry No. 1305). Among other things, the order provides that "[a]ll parties have stipulated that initial disclosures pursuant to Fed. R.Civ. P. 26(a)(1) will not be conducted in this case." Id. at p. 2. The order set a deadline to designate witnesses of June 19, 2009, which was extended to July 1, 2009, and then July 17, 2009.

Plaintiff's counsel came into contact with certain former Gulf Stream employees and

2

contractors with critical information about the claims and defenses in this case, particularly with respect to Gulf Stream's manufacturing of trailers and worker complaints of symptoms consistent with formaldehyde exposure. As these witnesses were located in Indiana or neighboring states, Plaintiff needed to take their depositions to be used at trial. Gulf Stream, however, had taken the position that no more than ten depositions could be taken of non-experts. Thus, on July 2, 2009, Plaintiff filed a motion for leave to depose these former Gulf Stream employees and contractors. (Docket Entry No. 2047).

In that motion, Plaintiffs noted that the former employees/contractors were expected to testify that they had a litany of problems associated with formaldehyde exposure, that warning labels were removed from wood products at the Gulf Stream gate, that formaldehyde risks were well known to Gulf Stream senior management, that they were ordered to work too quickly to construct trailers and that they feared for their jobs. *Id.* at p. 10.

On July 8, 2009, Plaintiff supplemented her discovery responses to respond to certain of Gulf Stream's interrogatories which inquired about 1) witness statements that Plaintiff had taken; 2) communications with persons associated with Gulf Stream and, most importantly, 3) **witnesses who Plaintiff intended to call to testify at trial**. *See* Plaintiff's Second Supplemental Response to Gulf Stream's First Set of Interrogatories, attached as **Exhibit A.** Plaintiff identified the subject Four Witnesses, along with several others.

At the July 10, 2009 hearing on Plaintiff's Motion for Leave to takes these depositions, Plaintiff's counsel noted that they had provided a list of former employees to Gulf Stream counsel, indicated that Plaintiff wanted to depose these people because they were from out of

3

state and it would conserve trial time to present them by video rather than live, and that the witnesses or Plaintiff would incur substantial expense to bring these witnesses live at trial. Plaintiff's counsel reiterated that these people (including the subject Four Witnesses) would be offered as witnesses at trial, whether it be by video or live.  The Court was not inclined to allow the depositions, and Plaintiff asked if Gulf Stream would later claim prejudice if the witnesses came live.  Gulf Stream's response is on point here:

> Plaintiff's Counsel:  Right.  Well, let me just ask a rhetorical question: What happens if I try to bring these people to trial, let's say we arrange it and they come down, are they going to be excluded because Mr. Weinstock didn't have a chance to depose them and one of the other defendants did?
>
> Gulf Stream Counsel: Judge, I'll respond like this: They're on their witness list.  They've been disclosed to me, so I have the chance to depose them if I want to depose the.  And I will argue, for the same reasons we've argued today, except by this point in time I will have filed my motions on the very issue that they're completely irrelevant for the same reasons articulated today, but the briefing will be a little more substantial.
> On the other hand**, I think if somebody's on a witness list that choose not to depose, I think I have a hard time saying I'm prejudiced and they can't testify.**

Hearing on Plaintiff's Motion for Leave to take Additional Depositions (including the subject Four Witnesses), July 10, 2009, page 26, line 1 to 17 (emphasis added), relevant portions attached as **Exhibit B.**

The hearing continued:

The Court: Are all these people on your witness list?

Gulf Stream's Counsel:  Well they are but, Your Honor, as you may recall, the judge asked the Plaintiffs to redraw—well, all of us, but the plaintiffs as well, to redraw their 500-person witness list.

Plaintiff's Counsel:  But these will be on there when we revise it.  They were on there originally and they will remain on thereafter—

> Gulf Stream Counsel: Right. **They've been identified.** You know, whether the judge wants 100 witnesses from the plaintiffs instead of 500 and whether that's satisfactory for him, he'll make that decision.

*Id.*, at page 26, line 18 to page 27, line 5 (emphasis added).

It is obvious from the hearing that everyone thought that the Four Witnesses were on Plaintiff's witness list, since they had been identified in response to Gulf Stream's discovery request asking about trial witnesses.

On July 24, 2009. Plaintiff filed her witness list. Due to an inadvertent omission, the subject Four Witnesses were not on this witness list.

However, on August 7, 2009, Plaintiff provided the Court and opposing counsel a copy of their trial plan. The Four Witnesses appeared on that trial plan and Plaintiff's counsel discussed each witness in detail with the Court and opposing counsel. *See* Trial Plan, attached as **Exhibit C.**

On August 13, 2009, Plaintiff filed a motion for leave to amend their witness list. Among other changes, the Four Witnesses appeared on this list.

Now, Gulf Stream moves to strike the Four Witnesses.

## ARGUMENT AND AUTHORITIES

### I.  RULE 37 AND RULE 26

Gulf Stream asks the Court to strike the Four Witnesses under Fed. R. Civ. P. 37(c)(1). That rule provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

5

Rule 37 is obviously derivative of Rule 26(a) and (e).  Rule 26(a)(1)(A)(i) provides:

> A party must, without awaiting a discovery request, provide to the other parties … the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Rule 26(e)(1)(A) provides:

> A party who has made a disclosure under Rule 26(a) — or who has responded to an interrogatory, request for production, or request for admission — must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

In other words, Rule 26 deals with initial disclosures and supplementation of same.  In this case, the Court's Scheduling Order dispensed with Initial Disclosures.  Therefore, since Rule 26 disclosures are not required, Rule 37, which covers situations where one does not supplement disclosures, does not apply.

Here, the parties sent discovery that covered the same topics as covered in initial disclosures.  As it relates to this motion, Gulf Stream sent an interrogatory asking Plaintiff to identify its trial witnesses.  On July 8, 2009, Plaintiff supplemented her discovery responses to include the Four Witnesses on her trial witness list.  If there is any doubt—Gulf Stream's own lawyer acknowledged in open court that he knew the Four Witnesses were trial witnesses.

Rule 37 does not apply here, and the spirit of the rule—to keep out witnesses who were not disclosed to opposing parties—does not apply here either.

6

Despite Gulf Stream's claim that courts don't look at all to whether the opposing party suffers any prejudice, and despite the clear language of Rule 37(c)(1) ("unless the failure was substantially justified or is harmless") review of the litany of cases applying Rule 37 show that the overriding factor that Courts look at is "harm" or "prejudice":

> Plaintiff's failure to provide a written report regarding the testimony of its attorney fees expert was harmless. Plaintiff notified defendant almost six months before trial of the intention to call this witness and revealed the nature of the testimony to be given. Defendant received copies of all invoices upon which the witness would rely, and the witness's ultimate calculations merely involved dividing the total fees charged by the hours worked. *Primrose Operation Co. v. National American Ins. Co.,* 382 F.3d 546 (5th Cir. 2004).

> Admission of previously undisclosed invoices at trial in support of a witness's affidavit was warranted because, even though the proffering party did not explain its failure to disclose them before, the admission of the evidence did not prejudice the adverse party significantly. The witness had been designated as a witness before trial, and any prejudice was cured by the one-month period during which the opposing party could have responded to the invoices. *Texas A&M Research Foundation v. Magna Transportation, Inc.*, 338 F.3d 394 (5th Cir. 2003).

> Plaintiff employee was not prejudiced by defendant employer's nondisclosure of the first name of a police officer witness prior to trial. Accordingly, testimony of the officer did not have to be excluded on grounds of unfair surprise. The last name and initial of the first name, and the nature of the officer's work, had been disclosed six months before trial. In addition, the plaintiff had been in possession of the witness's written report which formed the basis for her testimony. *Ammons-Lewis v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 488 F.3d 739 (7th Cir. 2007).

> It was proper of the trial court to refuse to exclude defendant's expert testimony. Plaintiffs were not prejudiced by the allegedly inadequate disclosure since defendant provided resumes for each expert and made each available for deposition. Plaintiff's expert revealed in deposition his familiarity with the theories of defendant's experts, and had clearly reviewed before trial the reports and depositions of defendant's experts. *Crump v. Versa Products, Inc.*, 400 F.3d 1104 (8th Cir. 2005).

> A title insurer's failure to disclose the interview notes taken by its forensic accountant did not warrant exclusion of the accountant's expert testimony. Any prejudice was minimal, and any slight harm could have been fully compensated by granting a continuance to

permit discovery. *Fidelity Nat. Title Ins. Co. v. Intercounty Nat. Title Ins. Co.,* 412 F.3d 745 (7th Cir. 2005).

District court's decision not to strike an affidavit provided by one of the officers of an underwriter for a loan even though defendant did not include the witness's name as likely to have discoverable information was not an abuse of discretion. The plaintiff knew of the underwriter's role in processing her loan, and the defendant only belatedly learned of this potential witness. Plaintiff did not show how an earlier disclosure would have enabled her to avoid entry of summary judgment. *Davis v. U.S. Bancorp*, 383 F.3d 761 (8th Cir. 2004).

District court did not abuse its discretion in refusing to strike the affidavit of defendant's collections manager when it was offered in support of defendant's summary judgment motion. Plaintiffs were on notice prior to the close of discovery that the affiant had information pertinent to the case and was a potential witness. They had a fair opportunity to seek discovery from her prior to the deadline for filing summary-judgment motions. *Gutierrez v. AT & T Broadband, LLC,* 382 F.3d 725 (7th Cir. 2004).

The trial court's refusal to sanction defendant for failure to properly disclose that it would rely on an opinion of plaintiff's expert was not an abuse of discretion. It was harmless given that the adverse party had participated in the expert's deposition and had adequate notice of the intent to rely on this opinion due to responses to interrogatories. *Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879 (7th Cir. 2004).

The district court did not abuse its discretion in finding it nonprejudicial to permit testimony from a coworker called by plaintiff in a Title VII action even though discovery disclosures had not been supplemented to identify the alleged remarks made by a manager to this witness. The employer knew that the coworker was a potential witness for 18 months before trial. It interviewed the coworker and learned the subject of his testimony prior to trial but did not seek a continuance, and it was able to rebut the coworker directly through testimony of the manager. *David v. Caterpillar, Inc.,* 324 F.3d 851 (7th Cir. 2003).

Delayed disclosure of information submitted in support of summary judgment was not prejudicial. The opposing party did not claim that he was unfairly surprised by the material and unable to oppose summary judgment as a result. Moreover, the opposing party's action failed apart from any evidence submitted by the movant, since he had not submitted sufficient evidence to make out a prima facie case. *Pfingston v. Ronan Engineering Co.,* 284 F.3d 999 (9th Cir. 2002).

The district court is not obligated to exclude evidence based on a violation of the duty of disclosure, and may take account of the likelihood that it can be corrected without much

8

harm to the opposing party. *Samos Imex Corp. v. Nextel Commun., Inc.,* 194 F.3d 301 (1st Cir. 1999).

Defendant employer's failure to separately identify its executive as a potential witness in its initial or supplemental disclosures did not require excluding the witness. The employer disclosed in a deposition what would have been disclosed in the initial disclosure, by making the plaintiff aware of the executive, his position, and his involvement in the decision to place plaintiff on an indefinite leave of absence. *Rooney v. Sprague Energy Corp.*, 519 F. Supp. 2d 110 (D. Me. 2007).

Although defendant failed to disclose existence of employee of its corporate parent, the court would not preclude the employee's testimony at trial, but would instead grant plaintiff leave to depose him. Plaintiff received sufficient discovery to permit vigorous cross-examination of the defendant's witnesses. *Merisant Co. v. McNeil Nutritionals, LLC*, 242 F.R.D. 303 (E.D. Pa. 2007).

Summary judgment affidavit of TV company's president would not be stricken in technician's discrimination suit, as he had not been prejudiced or unfairly surprised by the affidavit. *Young v. Time Warner Cable Capital, L.P.*, 443 F.Supp.2d 1109 (W.D. Mo. 2006).

Plaintiff would not be precluded from presenting expert damages evidence in damages phase of action despite its delay in designating its expert. Defendant would not be prejudiced by the late designation since damages issues were bifurcated for separate trial. *Doctor John's, Inc. v. City of Sioux Falls*, 438 F.Supp.2d 1005 (N.D. Iowa 2006).

Failure of party to disclose expert witness was harmless and did not warrant striking expert's affidavit. The other side had approximately three weeks to depose the expert and to solicit expert opinions after the affidavit was submitted. *Spray-Tek, Inc. v. Robbins Motor Transp., Inc.,* 426 F.Supp.2d 875 (W.D. Wis. 2006).

Defendant's disclosure on the eve of trial of the identity of a former executive of plaintiff who would be a witness was not sanctionable by preclusion. There was no basis to assume undue prejudice, since the executive was someone with whom the company had familiarity. *Design Strategies, Inc. v. Davis*, 228 F.R.D. 210 (S.D. N.Y. 2005).

Plaintiff's failure to supplement her initial responses to discovery requests to include another former employee as a witness did not warrant exclusion of the witness. The witness was hesitant to testify while employed by defendants, and was disclosed less than one week after plaintiff identified him as a potential witness. Defendants did not seek a continuance to depose the additional witness. *Krause v. Buffalo and Erie County Workforce*, 426 F.Supp.2d 68 (W.D. N.Y. 2005).

The court would not strike affidavits submitted by plaintiff as a sanction for nondisclosure. One witness was sufficiently disclosed to defendant, and the other was being proffered for impeachment purposes only. *Salami v. North Carolina Agr. & Tech. State Univ.*, 394 F.Supp.2d 696 (M.D. N.C. 2005).

Plaintiff's failure to disclose a witness was harmless, where deposition testimony identified the witness as the employee's daughter who attended doctors's appointments with her. That placed the employer on notice that the daughter might have information relevant to the case. *Stolarczyk v. Senator Intern. Freight Forwarding*, 376 F.Supp.2d 834 (N.D. Ill. 2005).

Plaintiff's failure to designate an investment manager as an expert did not provide a basis for excluding testimony of this witness. Defendant plainly knew of plaintiffs' intention to call this witness, both parties had the opportunity to review his report and to depose him concerning his opinions, and defendant had ample time to prepare its response to the expert's testimony. *Williams v. Security Nat. Bank of Sioux City*, 358 F.Supp.2d 782 (N.D. Iowa 2005).

Plaintiff's failure to disclose certain allegations of discrimination in response to discovery was harmless where the evidence was produced in time for the employers to properly respond to it. *Russell v. Bronson Heating and Cooling*, 345 F.Supp.2d 761 (E.D. Mich. 2004).

Witnesses and documentary evidence not formally disclosed previously could nevertheless be introduced at trial. The opposing party was sufficiently aware of their existence so as not to be subjected to trial by ambush. *EMI Music Marketing, Inc. v. Avatar Records, Inc.*, 334 F.Supp.2d 442 (S.D. N.Y. 2004).

Defendants had sufficient notice of plaintiff's intent to call a witness at trial even though plaintiffs did not give notice before discovery had closed. The defendants knew of the witness as early as the filing of plaintiff's opposition to their summary judgment motion, but they did not attempt to depose him. *Rodriguez-Garcia v. Municipality of Caguas*, 225 F.R.D. 67 (D. P.R. 2004).

Defendant's failure to disclose an arbitration agreement and the identity of a person with knowledge of the agreement was substantially justified and harmless. The failure resulted from inadvertence, the employer addressed the arbitration agreement in its answer and the report of the planning conference, and plaintiff could have alleviated any prejudice by contacting defendant's counsel. *Umbenhower v. Copart, Inc.,* 222 F.R.D. 672 (D. Kan. 2004).

Plaintiff was not prejudiced by the fact that defendant designated its expert one day late,

and exclusion of the expert's testimony was therefore not warranted. Defendant identified the expert and provided a copy of the report six months before the deadline for expert designation. *Paulissen v. U.S. Life Ins. Co.*, 205 F.Supp.2d 1120 (C.D. Cal. 2002).

The fact that plaintiffs never disclosed during discovery that a witness possessed information, such as racial epithets made by some of the defendants did not warrant preclusion of the witness's affidavit. Two other witnesses gave deposition testimony that the witness had knowledge relevant to plaintiffs' claims, and defendants were given the opportunity to cure any prejudice by deposing the witness. *Sunkett v. Misci*, 183 F.Supp.2d 691 (D. N.J. 2002).

Further, when looking to the reasons for the omission, courts have observed that even when an omission is in "bad faith", witnesses should still be allowed to testify unless some harm will come to the opposing party.

Exclusion of defendant's expert was not an appropriate sanction for failure to disclose expert report. The failure was not in bad faith, but resulted from disorganization. *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*, 204 F.R.D. 309 (W.D. La. 2001).

The use of an undisclosed witness should seldom be barred unless bad faith is involved. *Bergfeld v. Unimin Corp.,* 319 F.3d 350 (8th Cir. 2003).

District court did not abuse its discretion in refusing to preclude calling of two defense witnesses. Although Rule 37(c)(1) is written in mandatory terms, it also provides that exclusion should not occur if there is a substantial justification for the failure to disclose. Here there was ambiguity on whether a list of witnesses was supplied, and the district court properly concluded that harsh penalties should be avoided. Plaintiff knew the names of the witnesses and the scope of their testimony before trial, and there was no reason to believe that omission was in bad faith. *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3rd Cir. 1995).

Although the government's omission of the identity of an FBI agent was not substantially justified, it was harmless. Accordingly, the affidavit of the witness would not be stricken. U.S. ex rel. *Purcell v. MWI Corp.*, 520 F. Supp. 2d 158 (D. D.C. 2007).

A careless failure to disclose two witnesses during the discovery period was harmless, and exclusion of their testimony at trial would not be warranted. They were not surprise witnesses, but rather main actors in the events giving rise to the suit, and the remedy was to permit the opposing party to take their depositions. *El Ranchito, Inc. v. City of Harvey*, 207 F.Supp.2d 814 (N.D. Ill. 2002).

The rule does not require sanctions against a party if that party's violation was harmless. To the contrary, it precludes the trial judge from excluding evidence unless it finds that the party's failure was both unjustified and harmful. *Spearman Industries, Inc. v. St. Paul Fire & Marine Ins. Co.,* 138 F.Supp.2d 1088 (N.D. Ill. 2001).

Refusal to admit evidence that was not disclosed is a drastic remedy which will apply only in situations where failure to disclose represents flagrant bad faith and callous disregard of the rules. *Johnson Elec. North America, Inc. v. Mabuchi Motor America Corp.,* 77 F.Supp.2d 446 (S.D. N.Y. 1999).

Plaintiff's failure to disclose affidavits of two former employees until after discovery was closed did not warrant striking the affidavits. There was no evidence of dilatoriness on plaintiff's part, and the sanction would be extremely serious. *Stearns & Foster Bedding v. Franklin Holding Corp.,* 947 F.Supp. 790 (D. N.J. 1996).

Plaintiffs provided substantial justification for failure to disclose a particular witness and the nature of her testimony before the discovery deadline. Accordingly, the witness's affidavit could be used in response to a summary judgment motion. Plaintiffs had arranged to take the affidavit as soon as they learned of the witness' existence, and had faxed a copy to defendant the same day they obtained it. Defendant did not seek to depose the witness. *Silchia v. MCI Telecommunications Corp.*, 942 F.Supp. 1369 (D. Colo. 1996).

Plaintiff identified these Four Witnesses more than a month ago and asked to depose them (which Gulf Stream opposed). Gulf Stream's counsel has acknowledged to the Court that he knew about these witnesses, considered them to be on Plaintiff's witness list and could not claim any prejudice when he was objecting to their depositions. Under the circumstances, there is no reason to strike these four witnesses.

## II. RELEVANCE OF THE FOUR WITNESSES' TESTIMONY

Although not explicitly raised in Gulf Stream's motion, Gulf Stream has made it clear that they will challenge any former employee testimony on relevance grounds. While Plaintiff disagrees, that is the playing field in which this discussion should be held—not the "gotcha" argument that Gulf Stream has disingenuously made so far.

12

### A. Witness Testimony

These Four Witnesses (and other former Gulf Stream employee witnesses) have relevant testimony and should be permitted to testify for the following reasons. First, as for the Four Witnesses, they are believed to possess the following information:

**Don Freiberger**, Mr. Freiberger worked for Gulf Stream from 2003 to 2005, building partition and end walls for travel trailers. He will testify that the wood he used had an odor which created irritation in his eyes and nasal passages. He worked during the production of FEMA trailers in 2004 (when Plaintiff's trailer was made) and 2005. He will describe that the FEMA trailers that Gulf Stream made were substandard and utilized badly maintained materials. He will testify that when he entered completed trailers, the interior of the trailer had odors that would take his breath away and burned his eyes. He and other workers complained and were told to air the trailer out. He worked for a time as a supervisor and received worker complaints about these odors. He now suffers from repeated bouts of bloody nose, sinus infections, respiratory infections and shortness of breath.

**Karen Freiberger**, Mrs. Freiberger worked for Gulf Stream from 1998 to 2009 in a variety of jobs related to the construction of travel trailers. When entering a completed trailer, she would encounter a strong odor that would burn her eyes. When she complained, she was to air out the trailer. During her time at Gulf Stream, she encountered repeated headaches and sinus infections.

**Don Shaffer**. Mr. Shaffer worked for Gulf Stream from 2001 to 2005 in the "FEMA area" on FEMA trailers and has knowledge of the manufacturing processes and material used to make FEMA trailers. When using wood products to manufacture the trailers, he encountered a strong formaldehyde smell. When he entered completed trailers, the interior had on odor that would take his breath away and had an effect similar to tear gas. When he complained, he was told to air out units. This mitigated the smell and its effects but not completely. He now suffers from repeated bouts of blurry vision and sinus problems.

**Ron Dhaeze**. Mr. Dhaeze worked as a delivery driver for Patrick Industries from 2006 to 2008. He delivered wood products to Gulf Stream. The wood products he delivered to Gulf Stream had a strong smell of formaldehyde that caused him nasal irritation and burning eyes.

### B. The LPLA.

Plaintiff makes a claim under the Louisiana Products Liability Act ("LPLA") against Gulf Stream. The LPLA imposes liability on a manufacturer "for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product." LA.REV.STAT. ANN. § 9:2800.54(A). The LPLA states that a product may be unreasonably dangerous in one of four ways: (1) construction or composition, (2) design, (3) inadequate warning, and (4) nonconformity to an express warranty. *See id.,* at § 9:2800.54(B).

With respect to factor (3), warning, the LPLA and case law provide:

In the context of a manufacturer's duty to warn of dangers inherent in the use of a product, a manufacturer is obligated to anticipate the environment in which the product will be used and give notice of potential risks arising from foreseeable uses or misuses in the foreseeable environment. *Johnston v. Hartford Insurance Co.*, 623 So.2d 35, 36-37 (La. App. 1st Cir 1993), *writ denied*, 626 So.2d 1170 (La. 1993); *Johnson v. Chicago Pneumatic Tool Co.*, 607 So.2d 615, 617 (La. App. 1st Cir. 1992), *writ denied*, 608 So.2d 1009 (La. 1992).

A manufacturer has a duty to warn of any danger inherent in the normal use of its product which is not within the knowledge of an ordinary user. *Winterrowd v. The Travelers Indemnity Co., et al.*, 462 So.2d 639, 642 (La. 1985).

The duty of a manufacturer to warn is continuing. Even after a product has left the control of the manufacturer, there is a duty to warn owners and operators of any dangers of which the manufacturer subsequently learns. La. R.S. 9:2800.57(C).

A manufacturer of a product who, after the product has left its control, acquired knowledge of a characteristic of the product that may cause damage must act reasonably to provide an adequate warning of such characteristic and its danger to users. La. R.S. 9:2800.57(C); *Our Lady of the Lake Hosp., Inc. v. Carboline Co.*, 632 So.2d 339, 343 (La. App. 1 Cir. 1993), *writ denied*, 635 So.2d 228 (La. 1994), *writ denied*, 637 So.2d 1052 (La. 1994).

Testimony about Gulf Stream's construction practices and materials-use are relevant to whether the product is defective, by the express terms of the LPLA.

14

Further, Gulf Stream's knowledge as to its anticipated use of the trailer, when it learned of problems associated with its trailers and how it responded are relevant. Gulf Stream's employees' exposure to formaldehyde, and health problems, factors into its duty to warn, both before and after the subject trailer was delivered, along with its intended use of the product. If formaldehyde was causing such dramatic effects on workers who were only temporarily exposed to the interior of the trailers for a short period of time, Gulf Stream should have considered that trailers, like Plaintiff's, would be used for long period of time on a full-time basis by disaster victims.

Further, even though Gulf Stream has continuously opposed depositions based on an argument that its and its employees' knowledge of formaldehyde dangers is irrelevant to this dispute, Gulf Stream has recently filed a litany of motions for summary judgment in which that issue is relevant. (Docket Entry Nos. 2410, 2719).

The testimony of the Four Witnesses is extremely relevant to the claims made and defenses asserted in this suit. Plaintiff will be prejudiced if she is not allowed to present these Four Witnesses at trial. Also, the Four Witnesses were employed in different areas, in different plants over different periods of time. While some of the testimony may overlap, it is important to show the jury that this was not just one employee who encountered formaldehyde at high levels, but was a systemic problem at Gulf Stream.

## PRAYER

WHEREFORE, Plaintiff Alana Alexander respectfully requests that the Court deny Gulf Stream's Motion and grant her leave to amend her witness list to include these four witnesses.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        jwoods@gainsben.com

        **COURT-APPOINTED PLAINTIFFS'
        STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON, #9938
        MIKAL WATTS, Texas # 20981820
        ROBERT BECNEL
        DENNIS REICH, Texas # 16739600

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 18, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                        s/Gerald E. Meunier
                                        GERALD E. MEUNIER, #9471