## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER      *    MDL NO. 1873
     FORMALDEHYDE PRODUCTS    *
     LIABILITY LITIGATION      *    SECTION "N" (5)
                     *
                     *    JUDGE ENGELHARDT
                     *    MAGISTRATE CHASEZ
                     *

THIS DOCUMENT IS RELATED TO    *
                     *

*Charlie Age, et al v. Gulf Stream Coach*    *
*Inc., et al*, Docket No. 09-2892;    *
Alana Alexander, individually and on behalf of    *
Christopher Cooper    *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM'S "PARTIAL MOTION FOR SUMMARY JUDGMENT"

Plaintiff Alana Alexander ("Ms. Alexander" or "Plaintiff") responds to Defendant Gulf Stream Coach, Inc.'s ("Gulf Stream") "Partial Motion for Summary Judgment" regarding Plaintiff's physical injury claims (Docket Entry No. 2596) and, in support, would show:

### GENERAL BACKGROUND

This case is one of thousands of cases filed in this Multi District Litigation involving travel trailers provided to victims of Hurricanes Katrina and Rita.

The case of *Age, et al v. Gulf Stream Coach, Inc., et al* (of which Ms. Alexander is a Plaintiff) was filed on February 27, 2009. On April 6, 2009, the Court selected Ms. Alexander as the first trial plaintiff. On April 8, 2009, the Court issued a scheduling order for this case, setting trial to begin on September 14, 2009.

### I. UNDISPUTED ISSUES

While there is a significant disagreement on many of the facts at issue, some of the background facts do not appear to be disputed:

The subject trailer was manufactured by Gulf Stream in December 2004.

Plaintiff and her family moved into the trailer in May 2006.

Upon moving into the trailer, Plaintiff personally experienced symptoms consistent with formaldehyde exposure—a breathing problem that she had not experienced before, coughing, a tingle in the back of her throat, a burning sensation in her nose, some sneezing, itchy and watery eyes, and headaches.  *See* Deposition Testimony of Alana Alexander, taken on June 29, 2009, at pp. 111—12, 167, 388, attached to Gulf Stream's Motion, as Exhibit "C."

Prior to taking residence in the trailer, Ms. Alexander had no previous health problems. *See* Deposition of  Alana Alexander, at page 140, lines 21 to 23, page 150, lines 3 to 7 and page 258, lines 3 to 10, relevant portions attached as **Exhibit A**.

This Gulf Stream travel trailer was tested on January 24, 2008, in the winter, which showed formaldehyde emissions at .05 ppm.  *See* Gulf Stream's Motion, at pp. 1-2.

## II.    DISPUTED ISSUES

With respect to the "rest of the story", the evidence diverges.

### A.  <u>Emission Levels</u>

The test yielding a .05 ppm result was completed in the month of January, when the temperature and humidity were considerably lower than average.   There are recognized ways to factor in what the exposure would have been during average temperatures and humidity:

> The fact that formaldehyde off gassing rates from materials (and resulting formaldehyde concentrations in air in enclosed spaces) vary directly with both temperature and relative humidity is well documented.

For example, ASTM Standard E 1333-96 indicates that a 5 degrees F increase in temperature from 72 degrees F to 77 degrees F results in a 36% correction factor (increase) to provide an accurate estimate for actual airborne formaldehyde concentrations.  Thus an increase to 77 degrees F from the average of 72 degrees F encountered in the [trailer] in the Initial Sampling Event results in **a temperature adjusted airborne formaldehyde concentration of 0.068 ppm** from the measured 0.05 ppm.

Affidavit of William D. Scott, P.E., at p. 8 attached as **Exhibit B** (emphasis added); *see also*

Affidavit of Marco Kaltofen, P.E., at p. 10, attached as **Exhibit C**. (same).

Other experts have opined on the likely range of exposure during the time of Ms. Alexander's residency in the trailer, taking into account that formaldehyde emissions dissipate over time and the .05 ppm test result was taken more than three years after the date of manufacture:

As [phenol formaldehyde containing] resins, glues and adhesives set and cure, formaldehyde is given off.  Because of this, newly made materials emit the highest quantity of formaldehyde at the highest emission rates.  This is because as the materials age, the formaldehyde concentration becomes lower and lower.  This results in lower and lower emission rates and the total quantities of formaldehyde off-gassed.

Stated another way, the rate of off-gassing decreases over time and so does the amount of formaldehyde emitted.   Many attempts have been made to approximate this emission rate and total quantity—formulas and extrapolations for determining these values have been submitted by a number of sources.  Mathematical regression analysis and logarithm functions are usually used to get the "best fit" curve or line through the data.  From these formulas and curves, we can approximate, for example, what the total quantity of airborne formaldehyde will be in a given travel trailer two years after manufacturer if the level was tested at 4 months and the measured level was "X"…

Variables such as ventilation, humidity, temperature, total indoor air volume, the quantity of formaldehyde in the resin/glue/adhesive in the materials, the ratio of the total indoor air volume to wood products surface area, occupancy times, and the manufacturing process itself are just some of the factors/variables to consider.

Accordingly, for the purposes of this report, several methods have been used to approximate the formaldehyde concentration in the indoor air of the Alexander's trailer when they first moved in.  These estimations are conservatively based upon the 0.05 ppm concentration measured in January of 2008, or approximately 37

months after its manufacture in December of 2004.

Summary: Derived concentrations at 17 months after manufacturer, which represent the approximate date when the Alexander family moved into the TT, were calculated using each of the five above-summarized methods. **The concentration ranged from 1.6 ppm to 0.1 ppm.**

Affidavit of Mary DeVany, MS, CSP, CHMM, at p. 20-22 attached as **Exhibit D** (emphasis added); *see also* Affidavit of Paul Hewett, Ph.D. at p. 6, attached as **Exhibit E.** ("Therefore, it is highly likely that exposures closer to the date of manufacture were greater than exposures some years afterwards.")

### B. Health Effects

At these levels, humans encounter eye irritation, throat irritation, headaches, throat and nose irritation, shortness of breath and cough, just as Plaintiff did.

The eye irritation threshold [for formaldehyde] is between 0.01 mg/m$^3$ (0.008 ppm; 8 ppb) and 1.9 mg/m$^3$ (1.55 ppm) and for throat irritation is between 0.1 (0.081 ppm; 81 ppb) and 3.1 (2.52 ppm (Patty's Toxicology).
…
In acute toxicity studies, human subjects experienced eye irritation at 0.5 ppm in an experimental chamber. Irritating effects in the upper respiratory tract begin at 0.1 ppm and become more common at 0.2 ppm. Symptoms in the lower airways such as cough, chest tightness, and wheeze are observed at higher levels (>0.5 ppm).
…
Headache, nausea, vomiting and diarrhea have been reported by people exposed to concentrations that range from 0.02 ppm to 4.15 ppm in residential environments.
…

4

Values for inhalation levels as published by Sittig (1991) are as follows: Irritation of the nose and throat can occur after an exposure of 0.25 ppm to 0.45 ppm. Levels between 0.4 ppm and 0.8 ppm can give rise to coughing and wheezing, tightness of the chest and shortness of breath…Exposure to airborne levels of formaldehyde of 0.4 ppm have brought on tearing and irritation.  (Sittig, 1991).

Affidavit of Patricia Williams, Ph.D, at p. 11, attached as **Exhibit F**.[1]

Another expert found that Plaintiff's symptoms were consistent with those in the studies conducted in the range of exposures found in the subject trailer.

Alana's physical symptoms were less debilitating than Christopher's, as would be anticipated in an otherwise healthy adult with no pre-existing respiratory, eye or skin disorders.  Her symptoms are consistent with and typical of those found in many studies conducted in the range of the exposure levels found in the Cavalier [the subject trailer].

Affidavit of M. DeVany, at p. 23.

Plaintiff submits that there is ample evidence to preclude summary judgment on this issue.

## ARGUMENT AND AUTHORITIES

### I.    SUMMARY JUDGMENT STANDARD.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall

---

[1] See also *Formaldehyde Exposures in a FEMA Supplied Gulf Stream Coach, Inc., Cavalier Travel Trailer in Louisiana in Relation to the Development of Christopher Cooper's Symptoms and Medical Conditions: A Review of Germane Scientific Literature*, by Stephen Kind, Ph.D., Attachment D of Expert Report of James Kornberg, at page 3, attached as Exhibit  (discussing Olsen JC and Dossing M (1982), in which humans exposed for three months to a mean formaldehyde concentration of 0.29 ppm found to have an increased incidence in eye, nose and throat irritation, unnatural thirst, headaches, abnormal tiredness, menstrual disorders, and an increased use of analgesics among the daycare workers compared to the control group of workers; and Broder I et al. (1988) which assessed subjective measures of formaldehyde-related symptoms among 1,726 occupants of houses insulated with urea-formaldehyde foam insulation and compared them with a control group of 720 formaldehyde-exposed individuals. The mean length of time to exposure to UFFI was 4.6 years, and the mean concentration of formaldehyde among the UFFI-exposed group was 0.043 ppm.  The 720 members of the control group were exposed to a formaldehyde level of 0.035 ppm.   The report found a significant increase in symptoms, such as eye, nose, and throat irritation was observed in individuals from UFFI homes compared with the control group.

be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); see also *Lavespere v. Liberty Mut. Ins. Co*., 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd*., 249 F .3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C*., 277 F.3d 757, 764 (5th Cir. 2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both

parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)(citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir.2002).

## II.     PLAINTIFF'S CLAIMS AND BASIS FOR GULF STREAM'S MOTION.

The LPLA imposes liability on a manufacturer "for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product." LA.REV.STAT. ANN. § 9:2800.54(A).

In her complaint, Plaintiff alleges that Gulf Stream manufactured a product (the trailer) which was defective in various respects and, as a proximate result of these defects (including Gulf Stream's failure to warn), she suffered, among other things, physical pain and suffering. (Docket Entry No. 1686, at ¶¶ 12, 15.)

At the summary judgment stage, it is Gulf Stream's burden is to point out "that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Gulf Stream's present motion only addresses whether there is sufficient evidence to survive summary judgment as to whether the level of formaldehyde proximately caused her pain and suffering. Gulf Stream's Motion (Docket Entry No. 2596), p. 4. To defeat the motion, Plaintiff must show that there is a genuine issue of material fact on this one issue.

## III.    FACT QUESTION REMAINS ON CAUSATION

In Louisiana, issues concerning fault in a civil action are decided based on a preponderance of the evidence, which requires a fact-finder to consider all evidence, direct or circumstantial, to determine whether a fact is more probable than not. *Hanks v. Entergy Corp.*, 06-477 (La.12/18/06), 944 So.2d 564, 578. Proof is sufficient to constitute a preponderance of the evidence when the entirety of the evidence, both direct and circumstantial, establishes that the fact or causation sought to be proved is more probable than not. *Cay v. State Dep't. of Trans.*

*and Dev.* 93-0887 (La.1/14/94), 631 So.2d 393, 395; *Riley v. Salley*, 03-1601, p. 2 (La. App. 4 Cir. 4/21/04), 874 So.2d 874, 876.

Use of circumstantial evidence and the deductions and inferences arising therefrom is a common process for establishing liability in negligence cases. *Cangelosi v. Our Lady of the Lake Regional Medical Center*, 564 So.2d 654 (La.1989). It is well established that circumstantial evidence can be used to defeat a motion for summary judgment. *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226.

Causation is a factual question to be determined by the factfinder.    *Benjamin ex rel. Benjamin v. Housing Authority of New Orleans*, 04-10585 (La.12/1/04), 893 So.2d 1, 7. *Wallace v. State Farm Mutual Automobile Insurance Co.*, 36,099 (La.App. 2d Cir.6/14/02), 821 So.2d 704; *Maryland Cas. Co. v. Advance Transformer Co.* (La. App. 3d Cir. 4/6/94), 635 So.2d 565, 567.

Further, Louisiana utilizes a legal presumption of causation established in *Housley v. Cerise*, 579 So.2d 973 (La.1991). The presumption provides three factors that must be shown in order to apply the presumption: (1) The plaintiff must demonstrate that he was in good health prior to the accident at issue; (2) He must demonstrate that subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested themselves afterwards; (3) He must demonstrate that through evidence, medical, circumstantial, or common knowledge, a reasonable possibility of causation between the accident and the injury claimed.    *See id.*    Whether that presumption applies is a question of fact. *Viviano v. Progressive Sec. Ins. Co.*, 05-125 (La.App. 3 Cir. 1/11/06), 920 So.2d 313, writ denied, 06-359 (La.4/28/06), 927 So.2d 290.

As set forth above and in the attached evidence, there is ample evidence in the record that:

- Plaintiff was exposed to formaldehyde emissions, from the trailer, at a range of .1 ppm to 1.6 ppm.

- At these levels, humans encounter eye irritation, throat irritation, headaches, throat and nose irritation, shortness of breath and cough.

- Plaintiff suffered from such symptoms.

- Prior to entering the trailer, Plaintiff had no health problems.

Viewing the evidence in the light most favorable to the Plaintiff and drawing all reasonable inferences in favor of the Plaintiff, the Court should deny Gulf Stream's Motion.  *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir.2002); *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (5th Cir. 2001)

## **PRAYER**

WHEREFORE, Plaintiff Alana Alexander respectfully requests that the Court deny Gulf Stream's "Partial Motion for Summary Judgment" and for such other relief to which she is entitled.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:     s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:     504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:     504/528-9973
        jwoods@gainsben.com

        **COURT-APPOINTED PLAINTIFFS'
        STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON, #9938
        MIKAL WATTS, Texas # 20981820
        ROBERT BECNEL
        DENNIS REICH, Texas # 16739600

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471