UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION "N" (5) |

THIS DOCUMENT RELATES TO
Member Case No. 09-2892

# ORDER AND REASONS

Before the Court is the Motion for Partial Summary Judgment (Rec. Doc. 2260), filed by Gulf Stream Coach, Inc. ("Gulf Stream"). In this motion, Gulf Stream asserts that Plaintiffs cannot carry the burden of proving Gulf Stream breached any express warranty it provided to them. After considering the memoranda of the parties and the applicable law, the Court grants this motion.

## I.    BACKGROUND

In this multi-district litigation ("the MDL"), referred to as "In Re: FEMA Trailer Formldehyde Products Liability Litigation," Plaintiffs are individuals who resided in emergency housing units ("EHUs") provided by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita. In general, Plaintiffs claim injuries resulting from alleged exposure to the release of formaldehyde and/or formaldehyde vapors in these EHUs. (Rec. Doc. 109,¶ 30). The parties have now completed the class certification phase, conducted substantial discovery, and have moved into the bellwether trial phase. This particular motion for partial summary judgment relates to the first bellwether trial.

Bellwether plaintiffs, Alana Alexander and her minor child Christopher Cooper (collectively, "the bellwether plaintiffs"), first filed suit on February 27, 2009. (*Age, et al. v. Gulf*

*Stream Coach, Inc., et al.*, Member Case No. 09-2892, Rec. Doc. 1). In that Complaint, the bellwether plaintiffs (along with several other plaintiffs) made various allegations against Gulf Stream, including the allegation that Gulf Stream's products were defective. (Member Case No. 09-2892, Rec. Doc. 1, ¶ 101). They also claimed that the defects in Gulf Stream's EHUs were the result of "providing housing units which did not conform to the express warranties made by Gulf Stream regarding their fitness for use as reasonably anticipated." (Member Case No. 09-2892, Rec. Doc. 1, ¶ 102(iv)). It is in response to this particular allegation that Gulf Stream has filed the instant motion for partial summary judgment, asserting that Plaintiffs cannot carry their burden of proving Gulf Stream's breach of any express warranty.

## II.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law ." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the

nonmoving party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir.2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id*. (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").

Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir.2002).

> **B.** **Law Pertinent to Express Warranty Claim under the Louisiana Product Liability Act ("LPLA")**

The LPLA sets forth "exclusive theories of liability for manufacturers for damage caused by their products." La.Rev.Stat. Ann. § 9:2800.52. It imposes liability on a manufacturer "for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product. . . " La.Rev.Stat. Ann. § 9:2800.54(A). As provided by the LPLA, a product is unreasonably dangerous if and only if:

> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
>
> (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
>
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in

4

R.S. 9:2800.58.

See id. § 9:2800.54(B).

Relevant to this motion is the LPLA's fourth provision that provides for a claim against a manufacturer for damages arising from a product that is unreasonably dangerous because of its nonconformity to an express warranty made by the manufacturer. The LPLA provides:

> A product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue.

La. R.S. § 9:2800.58. The LPLA defines "express warranty" as:

> a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. "Express warranty" does not mean a general opinion about or general praise of a product. A sample or model of a product is an express warranty.

La. R.S. § 2800.53(6).

To survive summary judgment, a plaintiff is required to demonstrate, or provide evidence to create a genuine issue of material fact regarding the following: (1) the manufacturer made an express warranty regarding the product, (2) the plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) the plaintiff's damage was proximately caused because the express warranty was untrue. La. R.S. § 9:2800.58; *Caboni v. General Motors Corp.*, 278 F.3d 448, 455 (5th Cir.2002). Gulf Stream's motion focuses on prongs one and two; Gulf Stream argues that Plaintiff has not shown that Gulf Stream made an express warranty about the emergency housing unit ("EHU") and that she used the EHU

5

based on that warranty.

**C.     Analysis**

In response to this motion, Plaintiffs cite to deposition testimony and to a Declaration[1] (See Exhibit A to Rec. Doc. 2493), which they claim demonstrate that a Gulf Stream employee made a representation that was an express warranty upon which Plaintiff Alana Alexander relied in using the EHU. What is abundantly clear to the Court, based on the summary judgment evidence, is that Plaintiffs have no idea, to any degree of likelihood, who purportedly made this alleged representation. For instance, Plaintiff Alexander testified:

> Q.     Who came out to see you?
>
> A.     *I'm not sure*. I don't remember what the lady's name was.
>
> Q.     Who was she with?
>
> A.     I *think* she was with Gulf Stream. She said she was with the trailer people.
>
> Q.     Okay. What did she tell you?
>
> A.     She explained how to hook up the propane tanks and everything. She told us how to use the stove, how to use the microwave and everything, and she showed us around. *She said the smell that we were smelling was because the trailer was new and had been closed up and to just air the trailer out*.

(Exhibit A to Rec. Doc. 2260, p. 164).   She further testified:

> Q.     And you have *no basis other than just your assumption* that the first person was a Gulf Stream Coach employee?
>
> A.     Yes.

---

[1] While Gulf Stream claims that this declaration is insufficient to defeat a summary judgment motion because it is not notarized, the Court is not persuaded by this argument. This "Declaration Under Penalty of Perjury" is consistent with 28. U.S.C. § 1746, and is valid based on the same.

> Q. You have no idea whether that person could have been with the contractor who set up the trailer?
>
> A. *I have no idea.*
>
> Q. Or that — I'm mean sorry. Were you finished?
>
> A. I was just saying I have no idea if they were.
>
> Q. That person could have been somebody with FEMA?
>
> A. I *guess in all probability*, yes.
>
> Q. Do you have any recollection of specifically calling a number where somebody said that - - or identified themselves as a Gulf Stream Coach employee and provided information to you?
>
> A. *I don't have any recollection of that.*

(Exhibit A to Rec. Doc. 2260, pp. 385-86, emphasis added).

In her Declaration, prepared in response to Gulf Stream's motion, Plaintiff Alexander seems to be a bit more sure than she was in her deposition that this individual was a Gulf Stream employee. She states that a person whom she "believe[d] to be a Gulf Stream Coach employee" came to the trailer. (Exhibit A to Rec. Doc. 2493). She states specifically in her Declaration that "[t]his person said she was 'with the trailer manufacturer', who I know to be Gulf Stream Coach." (*Id.*) Later in the Declaration she refers to this person as a "Gulf Stream Coach person." (*Id.*)

Tellingly, Plaintiff Alexander's lack of certainty as to the identity of the individual who allegedly made this express warranty to her is clearly demonstrated further in her opposition to a motion filed by the Government. In that opposition, she states, "having been assured by a *representative of either the United States or one of its contractors* that the 'chemical smell' was

'nothing to worry about.'" (Rec. Doc. 2559, p. 3). This lack of certainty on this point indicates that Plaintiff is unsure of the identity of the individual making this alleged express warranty to her, and on whose behalf that person was acting.

First, Plaintiff Alexander's declaration states with a great deal more certainty the identity of the individual who she claims made an express warranty to her. Whereas Plaintiff failed to make these specific allegations in her Complaint or amended complaints and whereas she was ultimately unsure of the individual's identity in her deposition, she was more sure that the individual was a Gulf Stream employee in her later Declaration, which was attached to the opposition to this motion for partial summary judgment. This information, therefore, is not weighted heavily by the Court in evaluating this motion because mere allegations in the form of patently self-serving affidavits or declarations do not create an issue of fact precluding summary judgment. See *Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790, 798 (5th Cir.1992). On the showing made, Plaintiffs have failed to demonstrate with any degree of certainty or likelihood that a "Gulf Stream" employee made any representation to them.

Further and most importantly, even if the Court determined that Plaintiffs had made a showing that it indeed was a Gulf Stream employee who made a representation to them, the Court concludes that the alleged representation cannot be considered an "express warranty" within the meaning of the LPLA. Again, adding to her less clear testimony from her deposition (See Exhibit A to Rec. Doc. 2260, p. 164), Plaintiff Alexander states in her Declaration:

> I asked the Gulf Stream person about a chemical smell in the trailer. This person advised that it was nothing to worry about and that it was because the trailer was new and had been closed up. She advised me to air the trailer out and this would remove the smell. By "airing out", this person explained that I should open the windows and doors and turn on the air conditioner. She advised that this would serve to remove this chemical

> smell.
>
> . . . .
>
> I relied on this person's representations as to the safety of the trailer, the source of the chemical smell, the fact that the chemical smell was nothing to be concerned about and that the trailer was safe for me and my family to reside in. Had this person advised that the chemical smell was from formaldehyde emissions or emissions of other toxic chemicals, that formaldehyde emissions were dangerous, or that the formaldehyde emissions were from products in manufacturing the trailer (and thus would not just "go away" after a set period of time, even if the smell was no longer so bad), I would not have taken residence in the trailer and would not have allowed my children to reside in, or even go in to, the trailer at all. This person's representations induced me to take residence in the trailer with my children.

(Exhibit A to Rec. Doc. 2493). Even if this alleged Gulf Stream representative told Plaintiff Alexander that the "chemical smell" in the trailer was "nothing to worry about" and that airing out the trailer would remove the smell, the Court concludes that this is not an "express warranty." As stated herein, an "express warranty" is "a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance." It does not mean "a general opinion about or general praise of a product." La. R.S. § 2800.53(6). The alleged representations that "chemical smell" in the trailer was "nothing to worry about" does not affirm or promise that the trailer possessed specified characteristics or qualities or that it would meet a specified level of performance. If anything, these representations merely constitute a general opinion about the trailer and cannot be construed as an express warranty. Further, this Court notes that the allegation regarding the representation that the smell "was nothing to worry about" was made not in the complaint or amended complaint and not in the deposition, but in the

Declaration, drafted in response to this motion. As noted herein, this information is not weighted heavily by the Court in evaluating this motion. See *Lechuga*, 949 F.2d at 798.

Therefore, this motion is granted, and Plaintiff Alexander's claims for breach of express warranty are hereby dismissed as are the claims for breach of express warranty made by Plaintiff Alexander's minor child, Christopher Cooper.[2]

### III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the Motion for Partial Summary Judgment (Rec. Doc. 2260) is **GRANTED**. Thus, Plaintiffs' LPLA claims for breach of express warranty are hereby dismissed.

New Orleans, Louisiana, this 19th day of August, 2009.

                                  **KURT D. ENGELHARDT**
                                  **UNITED STATES DISTRICT JUDGE**

---

[2] Cooper testified that he never relied on any express warranties made by Gulf Stream. He never read the owner's manual, and he never called the maintenance hotline about problems with the trailer. (Exhibit C to Rec. Doc. 2260, pp. 111). The only person Cooper spoke with directly was an individual who came out to inspect the trailer, but the individual left when he realized Cooper, a minor, was the only person present inside the trailer. (*Id.*). The individual never came inside to look at the trailer or perform an inspection. (*Id.* at pp. 111—12).