UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
|     FORMALDEHYDE | * | |
|     PRODUCTS LIABILITY | * | SECTION: N(5) |
|     LITIGATION | * | |
| | * | JUDGE: ENGELHARDT |
| This Document Relates to: *Charlie Age, et al. v.* | * | |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | MAG: CHASEZ |

**************************************************************************

### OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRIVILEGED DOCUMENTS

On August 15, 2009, the Plaintiff, Alana Alexander, filed a Motion to Compel Defendant, Gulf Stream Coach, Inc. ("Gulf Stream"), to produce documents the Plaintiff believes were improperly withheld under claims of privilege and work product. (Rec. Doc. 2707). The Plaintiff seeks two categories of information – test results and various email correspondence. Gulf Stream files this Opposition to show that the documents are not discoverable.

**I.  TEST RESULTS**

The first issue is the production of test results that Gulf Stream has withheld because they were prepared in anticipation of litigation. Generally speaking, a party may not discover documents and tangible things that are prepared in anticipation of litigation. FED. R. CIV. P. 26(b)(3) (2009). As the Plaintiff points out, all that is required to utilize the anticipation of litigation protection is **impending litigation** at the time the materials were prepared. (Rec. Doc. 2702-2, p. 3). There is no requirement that an actual lawsuit exists prior to the preparation of these materials. *See id*.

Applied to this case, Gulf Stream did initiate screening of some Emergency Housing Units ("EHU") and produce some documentation related to the screening. However, it has

withheld the documents related to the screening of unoccupied[1] trailers because the screening was performed <u>in light of coming lawsuits</u>. As discussed in the Plaintiff's own memorandum in support of its Motion to Compel, James Shea, Gulf Stream's Chairman, first anticipated litigation in early March of 2006 after formaldehyde complaints arose for the first time. *See id.* at 9. Mr. Shea's anticipation arose from his prior experience in the 1980s with litigation involving manufactured homes, and he immediately addressed the issue with Gulf Stream's counsel. *Id.* Gulf Stream's anticipation also arose as a result of a news story that appeared on a Bay St. Louis, Miss., television station on March 16, 2006. *See* 30(b)(6) Deposition Transcript of Gulf Stream Coach, Inc., taken on May 28, 2009, p. 151, attached as Exhibit "B." The story, which was picked up by national media outlets and published on the Internet, involved a formaldehyde complaint from a man named Paul Stewart who resided in a Gulf Stream EHU. *See id.* Thus, Gulf Stream's anticipation of litigation was entirely reasonable at that point not only because of the formaldehyde complaints but also because media outlets had identified an individual resident who lived in Gulf Stream EHUs and who had a specific complaint of formaldehyde.

Thereafter, Mr. Shea asked Gulf Stream employee Scott Pullin in late March to early April of 2006 – <u>about a month after Gulf Stream anticipated litigation</u> – to screen some of the Emergency Housing Units ("EHU") to determine what level of formaldehyde the units contained and how various factors might affect those levels. (Rec. Doc. 2702-2, p. 5). Although Mr. Pullin was not an expert and used a handheld device without properly calibrating it, the screening and all documents related to that screening were nevertheless performed and prepared in anticipation of litigation.

---

[1] Gulf Stream has produced the occupied trailer screening results. Gulf Stream testified at its corporate deposition during the class certification phase that the screening of occupied trailers was not performed solely in anticipation of litigation. See 30(b)(6) Deposition Transcript of Gulf Stream Coach, Inc., taken on July 24, 2008, p. 9—21, attached as Exhibit "A."

Further, Gulf Stream voluntarily produced, and the Plaintiff has long had, the occupied trailer screening that Mr. Pullin obtained. The only thing at issue here are unoccupied trailers at a storage site in Baton Rouge. What the Plaintiff fails to tell the Court is that both OSHA and FEMA performed hundreds of unoccupied trailer formaldehyde tests – OSHA in the fall and winter of 2005, and FEMA in March 2006 – <u>and the Plaintiff already has those results.</u> To suggest that there is some insurmountable need for these unscientific "screenings" is completely disingenuous because the Plaintiff already has that data from the government testing done at or before the time that Gulf Stream screened these units.

## II.   WOOD PRODUCT TESTING

The next issue involves a chamber test of pieces of an Adorn wood panel, which was delivered to Gulf Stream but not used. This occurred after the Paul Stewart media publicity, and after counsel had been engaged. The Plaintiff admits in her motion that counsel retained the consultant and conducted the investigation. This Court has already recognized that certain indicia of attorney involvement with the preparation of materials can establish that the materials were prepared in anticipation of litigation. *See Poseidon Oil Pipeline Co. v. Transocean Sedco Forex, Inc.*, 2001 WL 1360434, * 5—6 (E.D.La. Oct. 30, 2001). In *Poseidon Oil*, the Court noted that an affidavit from counsel indicating that an investigation was done at counsel's direction in anticipation of litigation can aid a party in establishing that the information is privileged under Federal Rule of Civil Procedure 26(b)(3). *Id.* at *5 (citing *Pacamor Bearings, Inc. v. Minebea Co., Ltd.,* 918 F.Supp. 491, 513 (D.N.H.1996)).

Here, the testimony cited by the Plaintiff <u>and</u> her own motion reveal that this was a counsel-conducted project performed at the behest of the law firm Kindig & Sloat, as shown on

the privilege log.[2] This evidence shows that the Adorn wood product issue was identified and reviewed by Gulf Stream's attorneys, who selected and retained the company that performed the evaluation of the wood. Thus, the investigation was done at counsel's direction in anticipation of litigation. Accordingly, the investigation and all associated documentation are privileged. *See* FED. R. CIV. P. 26(b)(3). In addition, the relevance of a single piece of wood, not itself used in any trailer and part of an unused bundle of wood received in 2006 – two years after the Plaintiff's trailer was built using a different company's wood – is preposterously remote.

### III.  WITHHELD DOCUMENTS

In support of her Motion to Compel, the Plaintiff also asserts several justifications for the production of these documents. She asserts that the trailer screening results were not done at the instruction or guidance of counsel, Gulf Stream waived any privilege argument by producing the documents to Congress, and the Plaintiff has a "substantial need" for these documents. With respect to the first argument, Gulf Stream asserts that while counsel's involvement is strong evidence that materials were prepared in anticipation of litigation, there is no requirement that counsel be involved. *See Poseidon Oil Pipeline Co. v. Transocean Sedco Forex, Inc.*, 2001 WL 1360434, * 5—6 (E.D.La. Oct. 30, 2001). All that is required is impending litigation. (Rec. Doc. 2702-2, p. 3). As discussed above, Gulf Stream did anticipate litigation in mid-March of 2006 and initiated screening in late March or early April of the same year. Therefore, the screening and its associated documentation are privileged.

Second, Gulf Stream has not waived its privilege by producing some of these documents to Congress. As one court has said, "[W]ith respect to plaintiff's claim that the production to

---

[2] *See* Exhibit "B," at pp. 154—55; Rec. Doc. 2702-2, p. 8. Gulf Stream also points out that counsel for Gulf Stream's initial letter to Progressive has been designated as privileged and is included in Gulf Stream's privilege log. Gulf Stream has no objection to allowing the Court to review the letter *in camera* if it would aid the Court's resolution of this issue.

4

Congress resulted in a waiver, this Court disagrees. As an initial matter, the involuntary or compelled production of privileged or protected documents does not waive otherwise applicable claims of privilege or protection so long as the privilege holder objects and take reasonable steps to protect its claims of privilege and protection." *Int'l Union of Operating Engineers, Local No. 132, Health and Welfare Fund v. Philip Morris, Inc.*, 1999 WL 33659387, *2 (S.D. W.Va. June 28, 1999). While not in the congressional production context, the United States Court of Appeals for the Fifth Circuit has ruled that when a district court compels a party to release information, that does not necessarily constitute a waiver of attorney-client privilege. *See Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988). This dovetails with the holding in *Local No. 132*, which preserves the privilege when the party is compelled to produce the information. Applied to this case, Gulf Stream did produce certain documents to the government in response to subpoenas from the Dept. of Homeland Security and the Oversight and Government Reform Committee of the U.S. House of Representatives. However, the effect of the above-cited law is clear – a person does not waive his privilege simply because he is compelled to produce those documents in another context. Importantly, the Congress does not recognize privilege claims in the way that a district court must.

Third, the Plaintiff has not demonstrated her substantial need for these documents. As Gulf Stream has stated many times before, the only relevant formaldehyde level is the one in the Plaintiff's EHU. It has been well established that the Plaintiff resided in an EHU that was built in 2004, prior to the Katrina and Rita hurricanes. Further, the evidence shows that EHU residents experienced and reported no problems with the 2004 Gulf Stream units. *See* Deposition of David Porter, taken on July 8, 2009, at 76—78, attached as Exhibit "C"; Deposition of Martin McNeese, taken on July 14, 2009, at 100—01, attached as Exhibit "D"; Deposition of Stephen

Miller, taken on July 9, 2009, p. 184, attached as Exhibit "E." Yet the Plaintiff argues that she has a substantial need to obtain the test results of units that were constructed **after** Hurricanes Katrina and Rita. While the Plaintiff believes that a review of these investigation results is the only way to determine what the results show, she completely bypasses the important issue – the test results are utterly immaterial to the Plaintiff's injuries. The central question in this case is whether formaldehyde exposure in her own EHU caused her alleged damages. The levels in other, unoccupied units are irrelevant, especially in light of the fact that the Plaintiff occupied a 2004 unit of which there were no complaints. Any investigation of the 2005 and 2006 units has no bearing on the Plaintiff's case.

### IV.    OTHER DOCUMENTS

The Plaintiff cites other documents that it believes are not privileged, (Rec. Doc. 2702-2, p. 12), many of which she mischaracterizes:

Log No. 10: This draft letter to FEMA was prepared four days after Paul Stewart went on television complaining about his trailer. Gulf Stream's Washington counsel, who had been consulted on the formaldehyde issue, was working with one of Gulf Stream's executives on a planned letter to FEMA, which was transmitted by a secretary to another executive for review. The draft letter remained internal and was never sent. The secretary's forwarding of the draft, inside the company and between management, does not destroy or negate the privilege.

Log No. 12: Although no lawyers are directly involved in this communication, the "anticipation of litigation" privilege does not require that. The email references recommended toxicological consultants for consultation on anticipated formaldehyde litigation. None are retained experts in this litigation, and the relevance of this is beyond remote, even if the anticipation of litigation privilege were inapplicable.

Log No. 13: This document is analogous to Log No. 10 above. It was a draft letter and draft press release that Gulf Stream was developing with counsel. The transmission of the letter to an executive by his secretary, via email, does not negate the privilege.

Log No. 16: These are a few scribbled notes of a conversation between an executive and a toxicological consultant who is not a retained expert in this litigation, and the conversation occurred as a part of the company's research in anticipation of litigation on the formaldehyde issue. Again, the relevance is remote, in addition to the privileged status of the document.

Log No. 17: See discussion of Log Nos. 10 and 13 above. This transmission of a draft press release is in the same category.

Log No. 19: The Plaintiff does not challenge Log No. 18, which is a transmittal of draft documents to counsel and a specific request that counsel review them and discuss in a planned call. Log No. 19 is the same documents, which were forwarded by one executive to another one so that he could participate in the call where they were discussed. Again, this forwarding of information that is clearly prepared for an attorney, when between two managing executives, does not destroy the privilege. The corporation, through its management, has the privilege. Accordingly, while the privilege may attach to communications between managers of the corporations and the corporation's attorneys, the privilege belongs to the company, not just the individual corporate representative. *Long v. Howmedica Osteonics Corp.*, 2007 WL 4532215, *4 (E.D.La. Dec. 19, 2007). Because the privilege belongs to the company, and the company did not publish the communication to a third party, the privilege is preserved.

Log No. 20: This is another communication with a toxicological consultant specially retained for consultation purposes in anticipation of litigation; he is not a retained testifying

7

expert. The Plaintiff presents a work product argument but fails to address the claimed privilege of anticipation of litigation.

Log No. 37: Notes taken by an executive in a phone conference with counsel are not automatically non-privileged. These notes involve conversations about a letter that was being formulated with counsel's assistance and input. If writing notes during a discussion with counsel waives the privilege, the Plaintiff should at least cite a case saying that.

Log No. 51: This document is similar to Log No. 16 above, except that the consultant was later retained for purposes of testifying if needed. It merely transmits published papers, and Gulf Stream does not object to producing it, provided that it can do so without any broader waiver of the consulting expert/anticipation of litigation privilege discussed above.

V.     CONCLUSION

For all these reasons, the Plaintiff's Motion to Compel should be denied.

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/Andrew D. Weinstock

_____
**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
andreww@duplass.com
jglass@duplass.com

        and

        **SCANDURRO & LAYRISSON**
        **Timothy D. Scandurro #18424**
        **Dewey M. Scandurro #23291**
        607 St. Charles Avenue
        New Orleans, LA 70130
        (504) 522-7100
        tim@scanlayr.com
        dewey@scanlayr.com
        **Counsel for Defendant, Gulf Stream Coach, Inc.**

## **C E R T I F I C A T E**

I hereby certify that on the 21st day of August, 2009, a copy of the foregoing Opposition to Plaintiff's Motion to Compel Privileged Documents was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

        s/Andrew D. Weinstock
        _____
        ANDREW D. WEINSTOCK #18495
        andreww@duplass.com