UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
|        FORMALDEHYDE PRODUCTS | * | |
|        LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | * | |
| *Inc., et al*, Docket No. 09-2892; | * | |
| Alana Alexander, individually and on behalf | * | |
|  Of Christopher Cooper | * | |

**PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM COACH, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

     Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper, files this response to Defendant Gulf Stream Coach, Inc.'s Motion for Partial Summary Judgment regarding Plaintiff Alana Alexander's individual claim for her minor child's fear of contracting illness or disease because of formaldehyde. (Doc. 2582). Defendant, Gulf Stream Coach, Inc. ("Gulf Stream"), claims that Plaintiff, Alana Alexander, may not recover mental anguish and emotional distress damages based on her fear that her minor child, Christopher Cooper, will contract illness and/or disease due to his exposure to formaldehyde.  As discussed below, Louisiana law provides that a plaintiff may recover emotional distress damages for fear of illness or disease if the circumstances surrounding his or her exposure would result in a particular likelihood of genuine and serious mental distress.  Whether or not circumstances exist which would result in a particular likelihood of genuine and serious mental distress is a question for a jury to determine.   In this case, Plaintiff, Alana Alexander, can show that she reasonably fears that her son, Christopher Cooper, may develop illness or disease due to his exposure to

formaldehyde, especially in light of evidence showing that certain illnesses or disease are linked to exposure to formaldehyde. At a minimum, there exist genuine issues of material facts for a jury to determine. Therefore, Defendant Gulf Stream is not entitled to judgment as a matter of law and the motion should be denied.

At the outset of this response, Plaintiff concedes that she cannot sustain her claim for negligent infliction of emotional distress against Gulf Stream as a manufacturer under the LPLA (Louisiana Products Liability Act). For this reason, Plaintiff does not oppose the dismissal of her claim of negligent infliction of emotional distress against Defendant manufacturer Gulf Stream, only.

## I.
## EXHIBITS

| | |
|---|---|
| Exhibit 1. | Excerpts from Deposition of Alana Alexander dated June 29, 2009 (hereinafter "Alana Alexander Depo.") |
| Exhibit 2. | Psychological Report of Alana Alexander by Edward Halie Shwery, Ph.D., report dated May 18, 2009 (hereinafter "Shwery Psychological Report of Alana Alexander") |
| Exhibit 3. | Excerpts from the World Health Organization, IARC Monographs on the Evaluation of Carcinogenic Risks to Humans, Volume 88, dated June 2004 (hereinafter "IARC Monographs Volume 88") |
| Exhibit 4. | Excerpts from the Department of Homeland Security, Office of Inspector General's report dated June 26, 2009: *FEMA Response to Formaldehyde in Trailers* (hereinafter "FEMA Response to Formaldehyde in Trailers") |
| Exhibit 5. | Excerpts from Deposition of Patricia Williams, Ph.D., DABT, dated October 16, 2008 (hereinafter "Williams Depo.") |
| Exhibit 6. | Affidavit of Patricia Williams, Ph.D., DABT and Report in the Trial of Alana Alexander and Christopher Cooper dated May 18, 2009 (hereinafter "Williams Affidavit and Report as to Alana Alexander and Christopher Cooper") |

| | |
|---|---|
| Exhibit 7. | Affidavit of pediatric allergist/immunologist Ken Paris, M.D. dated August 20, 2008 (hereinafter "Paris Affidavit") |
| Exhibit 8. | Excerpts from ATSDR Toxicological Profile for Formaldehyde dated July 1999. |
| Exhibit 9. | Gerald McGwin, Jr., M.S., Ph.D.'s report dated May 18, 2009, "Formaldehyde Exposure and Asthma in Children: A Systematic Review" (hereinafter "McGwin Report") |
| Exhibit 10. | Narrative Report: Formaldehyde Exposure to Christopher J. Cooper by Janet Duncan Barnes, MD, MBA dated May 15, 2009 (hereinafter "Barnes Report") |
| Exhibit 11. | Psychological Report of Christopher Cooper by Edward Halie Shwery, Ph.D., report dated May 4, 2009 (hereinafter "Shwery Psychological Report of Christopher Cooper") |

## II.
## BACKGROUND

Plaintiff Alana Alexander and her children were displaced in 2004 as a result of the devastation caused Hurricane Katrina in Louisiana. In 2006, the Federal Emergency Management Agency (FEMA) provided a Cavalier travel trailer manufactured by Gulf Stream to Ms. Alexander and her children to live in for over 18 months. From May 2006 through late December 2007, Ms. Alexander and her children lived in the FEMA trailer in Louisiana. During this period of time, Ms. Alexander's son, Christopher Cooper, experienced and/or was diagnosed with several symptoms and medical conditions. Ms. Alexander brought claims both individually and on behalf of her son against Gulf Stream pursuant to the Louisiana Products Liability Act. (*See* First Supplemental and Amended Complaint, Doc. No. 1636, ¶ 12). Among other damages sought, Ms. Alexander seeks compensatory damages for her own mental anguish and emotional distress, including the fear of an increased risk of future serious disease both in her case and in the case of her minor son. (*Id.* ¶ 15). In its motion, Defendant Gulf Stream seeks summary judgment with respect to Ms. Alexander's individual claim for damages for her minor child's

3

fear of contracting disease, only.  Gulf Stream claims that Ms. Alexander is not entitled to such damages under the circumstances of this case.  Gulf Stream does ***not*** seek summary judgment with regard to Christopher Cooper's mental anguish and emotional distress claims.   In response to Defendant Gulf Stream's motion, Plaintiffs respond that based on the evidence presented below, Ms. Alexander has genuine and serious mental distress caused by the fear that her child may develop illnesses and diseases in the future due to his exposure to formaldehyde.

### III.
### STANDARD OF REVIEW

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).  A fact is "material" if it may affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. 242.  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little*, 37 F.3d at 1075. When considering a motion for summary judgment, the Court views the evidence in the light **most favorable to the nonmoving party**, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir.2002)(emphasis added).  Further, the Court should draw all reasonable inferences **in favor of the nonmoving party**. *Hunt v. Rapides Healthcare  System, L.L.C.,* 277 F.3d 757, 764 (2001)(emphasis added).

4

## IV.
## PLAINTIFF'S RESPONSETO DEFENDANT GULF STREAM'S UNCONTESTED STATEMENT OF MATERIAL FACTS

Plaintiffs submit this response to Defendant's Uncontested Statement of Material Facts (Doc. 2582-4):

1.  It is undisputed that this Multi-District Litigation is the consolidation of several state and federal toxic tort suits in which an estimated thirty thousand named plaintiffs claimed to have inhabited emergency housing units that were provided to them by the Federal Emergency Management Agency as a result of the alleged uninhabitability of their residences due to Hurricanes Katrina and Rita.

2.  It is undisputed that Plaintiff, Alana Alexander, resided in a travel trailer, VIN No. 1NL1GTR2551021783, after Hurricane Katrina.

3.  It is undisputed that Alana Alexander never sought psychological treatment for her alleged mental anguish until she was instructed to do so by her attorneys, well over a year after moving out of the trailer. Plaintiff notes, however, that although she did not seek professional treatment before April of 2007, she spoke to her sister, a social worker, and her best friend about her mental health concerns and emotional distress. (See Exhibit 1, Alana Alexander Depo, pp. 393-395; 403-405).

4.  It **is disputed** that Alana Alexander never indicated that she wanted to see a psychologist or psychiatrist before she was told to see one by her attorneys. While Ms. Alexander did not seek professional treatment before April of 2007, that does not mean she did not want to see a psychologist or psychiatrist. Ms. Alexander was never asked by Defendant during deposition whether she wanted to see a psychologist or psychiatrist before April of 2007.

5

5. It **is disputed** that the *only* impact the that Alana Alexander's alleged mental anguish had on her daily life was private moments in which she would become emotional and an increased frequency of cleaning her belongings. This is an unsupported, subjective conclusion drawn by the Defendant. Ms. Alexander testified that she often worries about whether her children's exposure to formaldehyde will have long-term effects and what those effects may be. (*See* Exhibit 1, Alana Alexander Depo, p. 403). Ms. Alexander also worries that she was a bad mother because she was not able to protect her children from being exposed to formaldehyde and feels guilty for unknowingly placing her children in a harmful situation. (*See Id.* at pp. 395-96; *see also* Exhibit 2, Shwery Psychological Report of Alana Alexander, p. 2).

6. It **is disputed** that Alana Alexander has no mental disorder of any kind and has, in fact, no diagnosable condition whatsoever. Dr. Edward Halie Shwery evaluated Ms. Alexander on two occasions and, as of May 18, 2009, diagnosed her as having Axis IV "worry distress, developing mental anguish." (*See* Exhibit 2, Shwery Psychological Report of Alana Alexander, p. 2). Dr. Shwery recommended that Ms. Alexander seek "counseling to help her improve her coping skills for anxiety and worry about her children's future." *Id.* at p. 3.

7. It **is disputed** that Alana Alexander has no type of ingrained emotional problem. Plaintiff references and incorporates her response number 6 above.

8. It **is disputed** that Alana Alexander's daughter has referred to the Plaintiff's emotional wellbeing as "too jolly." Alana Alexander's 14-year-old daughter, Erika Alexander, testified that in her opinion Ms. Alexander's "mood" was jolly. (*See* Excerpts of Deposition of Erika Alexander attached to Defendant's motion at Doc. 2682-3, p. 24) Ms. Alexander, however, testified that she did not cry or get emotional in front of her children. (*See* Exhibit 1, Alana Alexander Depo, p. 395). This testimony raises an issue of fact for the jury to determine.

## V.
## ARGUMENT AND AUTHORITIES

**A. To Recover For Mental Anguish Without a Physical Injury Under Louisiana Law A Plaintiff's Must Show that Special Circumstances Exist to Create A Likelihood Of Genuine And Serious Mental Distress.**

Louisiana recognizes mental anguish as a compensable component of personal injury damages. *See Oden v. Gales*, 960 So.2d 114, 122 (La.App. 1 Cir. 2007). Under Louisiana law, the standards for evaluating mental anguish claims differ depending on the existence of a manifest physical injury. When coupled with a physical injury, the plaintiff need only credibly establish that he does, in fact, suffer the specific emotional injury he alleges, and that it is reasonable and causally related to the defendant's negligence. *See Smith v. A.C. & S, Inc.,* 843 F.2d 854, 858 (5th Cir. 1988). In the absence of manifest physical injury, however, the plaintiff's burden is greater. *See Molden v. Georgia Gulf Corp*, 465 F.Supp.2d . 606, 615 (M.D. La. 2006); *Bonnette v. Conoco, Inc.,* 837 So. 2d 1219, 1235 (La. 2003).

Without a manifest physical injury, Louisiana does not generally recognize a cause of action for negligent infliction of emotional distress. *Lann v. Davis*, 793 So. 2d 463, 466 (La.App. 2 Cir. 2001). An exception to this general rule, however, has been recognized in special circumstances. *Moresi v. State Through Dept. of Wildlife and Fisheries,* 567 So.2d 1081, 1096 (La. 1990). The circumstances must be such that their very nature gives rise to the likelihood of genuine and serious mental distress. *Id.* Such circumstances serve to guarantee the genuineness of the emotional injury claimed. *Id.* Examples of circumstances found sufficient to justify mental anguish damages without manifest injury include the negligent transmission of a message announcing a death; failure to install, maintain or repair consumer products; failure to take or develop photographs; negligent damage to property within sight of the plaintiff; and situations where the plaintiff is actually in great fear for his personal safety. *Id.* In the absence of physical

7

injury, the plaintiff thus carries the burden to show that the circumstances giving rise to his mental anguish were of a special character such as to create a likelihood of genuine and serious mental distress. *Molden*, 465 F.Supp.2d at 615. By Defendant's own admission, there is no case barring an emotional distress claim based on a third party's emotional distress. (*See* Defendants' Memorandum at Doc. 2582-2, p. 5). In the absence of case law stating otherwise, Ms. Alexander may make a claim for mental anguish based her child's emotional distress and potential physical injury. As discussed below, Ms. Alexander can show that she has genuine and serious mental anguish and emotional distress caused by the fear that her child may develop illnesses and diseases in the future due to his exposure to formaldehyde.

**B. Exposure To Formaldehyde Can Cause Illnesses and Diseases, Especially in Children.**

Formaldehyde is a toxic gas and irritant which caused a number of physiological responses. Further, it is a known human carcinogen according to the International Agency for Researching Cancer (IARC) and their 2004 monograph on formaldehyde. (*See* Exhibit 3, FEMA Response to Formaldehyde in Trailers, p. 9; *see also* Exhibit 4, IARC Monographs Volume 88, pp. 274-280). Specifically, IARC found that formaldehyde can cause nasopharyngeal cancer. (*See* Exhibit 3, FEMA Response to Formaldehyde in Trailers, p. 9). While the most visible effects of formaldehyde exposure are eye, nose, throat and lung irritation, it is extremely important to note that formaldehyde exposure causes damage on a molecular/cellular level which is not readily apparent. (*See* Exhibit 5, Williams Depo at pp. 71-74, 133, 235-236; *see also* Exhibit 6, Williams Affidavit and Report as to Alana Alexander and Christopher Cooper, pp. 7-9).

The molecular and cellular damage caused by formaldehyde exposure was discussed at length during Dr. Patricia Williams' deposition and is further discussed in her report. Molecular

and cellular damage is due in large part to formaldehyde's properties as an electrophile, meaning it is a molecule with a deficiency of electrons and which aggressively attacks or bonds with other molecules to acquire them. (*See* Exhibit 6, Williams Affidavit, pp. 8-9). As a result of this nature, formaldehyde creates protein-protein crosslinks, DNA-protein crosslinks, or it incorporates itself into larger molecules, destroying the integrity of these molecules. (*See* Exhibit 5, Williams Depo at pp. 71-74; *see also* Exhibit 6, Williams Affidavit and Report as to Alana Alexander and Christopher Cooper, pp. 8-9). These crosslinks formed by formaldehyde can cause significant, **tangible injury.** In addition to the health effects caused by formaldehyde on the molecular/cellular level and as a respiratory irritant, formaldehyde has been shown to be a sensitizer[1] causing allergic reactions and is linked with asthma. (*See* Exhibit 6, Williams Affidavit and Report as to Alana Alexander and Christopher Cooper, pp. 16-18). As a sensitizer, formaldehyde can stimulate the immune system to develop a reaction to the chemical. *Id.* Not only can sensitization to formaldehyde itself occur, but formaldehyde can cause sensitization to other allergens which are present at the time of exposure to the formaldehyde (i.e., dust mites, mold, etc.). *Id.* at 18. Once, sensitized, a person remains so for long periods of time, if not permanently, and sensitization can lead to various reactions such as contact dermatitis, asthma-like symptoms, swelling, etc. *Id.* 18-20. For those sensitized, their quality of life is significantly impacted.

      The ATSDR (Agency for Toxic Substances and Disease Registry) is the branch of the CDC (Center for Disease Control) tasked by the Federal Government with developing reports available to the public on various toxic substances and their health effects. The ATSDR report

---

[1] Formaldehyde is a recognized sensitizer, which means that that it may be associated with responses at increasingly lower levels of exposure over time. Individuals become sensitized to the effects of formaldehyde, and upon subsequent exposures may exhibit symptoms at increasingly lower exposure levels.

on formaldehyde is a 1999 report and is over 450 pages long.  The 1999 ATSDR report concluded that not only were the Plaintiffs exposed to hazardous levels of formaldehyde which injured them and caused damage, they lived in the hazardous exposure and had no real way to remove themselves permanently from the toxic environment.  While the exposure to hazardous levels of formaldehyde injured all occupants of the FEMA trailers at issue in this litigation, it is the children who were most severely affected.  (*See generally* Exhibit 7, Paris Affidavit; *see also* Exhibit 6, Williams Affidavit and Report as to Alana Alexander and Christopher Cooper, pp. 31-33).

       The ATSDR considers children to categorically be a susceptible and highly sensitive population. Vulnerability to the effects of formaldehyde often depends on developmental stage and damage may not be evident until a later stage of development. (*See* Exhibit 8, ATSDR Toxicological Profile at p. 226).  Two studies provide suggestive evidence that children may be more sensitive than adults to the irritant properties of airborne formaldehyde.[2]  Additionally, Dr. Gerald McGwin, an epidemiologist and statistician retained by the Plaintiff, reviewed seven studies suggesting that even modest exposure levels are associated with a significant increased risk of asthma in children. (See Exhibit 9, McGwin Report, pp. 1-3).   The ATSDR recommended exposure limits may not even be relevant for the pediatric population. (*See* Exhibit 7, Paris Affidavit, p. 3).  Physiologically, children are more vulnerable to formaldehyde and may have increased severity of symptoms. *Id.*  Quite simply stated, children are not finished and are undergoing continual development and physiological growth.  Their airways are smaller in diameter and any broncho-constriction or other inflammation will be more acutely felt by

---

[2] *See* Exhibit 8, ATSDR Toxicological Profile at p. 228-29, describing the findings of two studies performed of school-aged children (*citing* Krzyzanowski M, Quackenboss JJ, Lebowitz MD. 1990. Chronic respiratory effects of indoor formaldehyde exposure. Environ Res 52:117-125; Wantke F, Demmer CM, Tappler P, et al. 1996a. Exposure to gaseous formaldehyde induces IgEmediated sensitization to formaldehyde in school-children. Clin Exp Allergy 26:276-280).

children than by adults. Most importantly for children is that their lungs have not finished developing.

Formaldehyde has been linked with increased risk for the development of asthma in children by the National Asthma Education and Prevention Program in its 2007 guidelines. *Id.* p. 4. There are very few studies which examine reactions of children to formaldehyde exposure, either in a home setting or elsewhere. *Id.* This is for good reason – our society does not knowingly expose children to hazardous and toxic substances simply to study them. However, those studies which have been conducted have found significant correlation with allergy, allergic disease, respiratory symptoms, and asthma and sensitization amongst children exposed to formaldehyde. *Id.* Dr. Paris opined in his Affidavit that the levels of formaldehyde which the children were exposed to in the temporary housing units increased the risk of developing allergic disease and asthma. *Id.*

In addition to asthma and sensitization in children, which are themselves chronic and potentially permanent, children were at increased risk for chronic or long-lasting injury at a molecular/cellular level. Children's lungs and immuno-response system are not fully developed, and any damage sustained during this development can be irreversible and affect quality-of-life issues permanently. Damage at the cellular level to sensitive lung development can create abnormal development and lead to life-long problems with asthma and other health conditions.

It is thus evident that acute exposure to formaldehyde is associated with ocular, skin and respiratory irritation whereas chronic exposure has been associated with lung and nasopharyngeal cancer. Regardless of the level of exposure, formaldehyde exposure can be a health threat. *See* Exhibit 4, FEMA Response to Formaldehyde in Trailers, pp. 9-10. Symptoms from acute exposure to formaldehyde commonly manifest as irritation of the throat, nose, eyes,

skin, and upper respiratory tract. *Id.* at p. 9. Upper respiratory tract irritation can exacerbate symptoms of asthma and other respiratory illnesses. Another possible health threat is the risk of cancer. As the CDC reported in its July 2, 2008 study of FEMA trailers:

> The carcinogenicity of formaldehyde has been extensively studied during the last 30 years. In June 2004, the International Agency for Research on Cancer (IARC) reclassified formaldehyde from "probably carcinogenic to humans" to "carcinogenic to humans." IARC has concluded that formaldehyde exposure causes nasopharyngeal cancer. However, the National Institutes of Health Toxicology Program has not adopted IARC's classification change and continues to classify formaldehyde as "reasonably anticipated to be a carcinogen in human"' and states that "[h]ow to quantitatively relate measured air levels of formaldehyde to cancer risk is uncertain."

*Id.* One CDC official has been quoted as saying that there is **no safe level of exposure** to formaldehyde in trailers: "*Any level* of exposure to formaldehyde may pose a cancer risk, regardless of duration." *Id.* (emphasis added).

Since there is ample evidence that exposure to formaldehyde can cause illnesses and disease, especially in children, it is reasonable that Alana Alexander has genuine and serious mental distress caused by the fear that her 12-year-old child may develop illnesses and diseases in the future due to his exposure to formaldehyde. Further, the molecular and cellular damage caused by exposure to formaldehyde can cause significant, tangible injury. (*See* Exhibit 5, Williams Depo at pp. 233-235). Hence, if it is determined that Ms. Alexander has a physical injury, she need only credibly establish that she does, in fact, suffer the specific emotional injury she alleges, and that it is reasonable and causally related to the defendant's negligence. In the absence of a tangible injury, Ms. Alexander must show that special circumstances exist such that their very nature gives rise to the likelihood of genuine and serious mental distress.

**C. The Evidence Shows that Alana Alexander Has Genuine And Serious Mental Distress Caused By The Fear That Her Child May Develop Illnesses And Diseases In The Future Due To His Exposure To Formaldehyde.**

As discussed above, there is an exception to the general rule in Louisiana that a defendant is generally not liable for negligent acts which cause only mental disturbances. *Touchard v. Slemco Elec. Foundation*, 769 So.2d 1200, 1205 (La. 2000)(*citing Moresi v. State* ex rel. *Dept. of Wildlife & Fisheries*, 567 So.2d 1081, 1096 (La.1990)). A plaintiff may recover for mental injuries when the situation creates the "especial likelihood of genuine and serious distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious." *Moresi,* 567 So.2d. at 1096. Whether the facts and circumstances constitute special circumstances, however, is a determination to be made by the fact-finder. Defendants rely on the Louisiana Supreme Court's holding in *Bonnette v. Conoco, Inc.*, in which the Court determined that, although the plaintiffs expressed a generalized fear of disease, they had not proved that their distress was genuine and serious. *Bonnette*, however, can be distinguished from the issue currently before the court in that *Bonnette* was not decided at summary judgment – rather, the plaintiffs were permitted to present their evidence at trial. The Louisiana Supreme Court reached its decision after reviewing *de novo* the record presented **at trial.** Hence, *Bonnette* cannot be likened to this case insofar as Plaintiff Alana Alexander has not yet presented her evidence to a fact-finder for evaluation. In this case, Ms. Alexander's one and a half-year residence in a contaminated home constitutes special circumstances giving rise to a genuine and serious mental distress caused by the fear that her child may develop illnesses and diseases in the future due to his exposure to formaldehyde.

Gulf Stream asserts that the Plaintiff has not experienced the type of genuine and serious mental anguish needed to recover for her minor child's fear of cancer. There is evidence,

however, that Ms. Alexander **does** have genuine and serious emotional problems as a result of her constant worrying and feelings of guilt.  Furthermore, the fact that Ms. Alexander and her family unknowingly lived in a home contaminated with formaldehyde for over a year and a half constitutes special circumstances that would cause any reasonable person to develop anxiety and emotional distress.  Defendants claim that Ms. Alexander cannot have mental anguish simply because she did not seek psychological treatment until over a year after moving out of the trailer.  Although she did not seek professional treatment before April of 2007, Ms. Alexander spoke to her sister, a social worker, and her best friend about her mental health concerns and emotional distress.  (*See* Exhibit 1, Alana Alexander Depo, pp. 393-395; 403-405).  While Ms. Alexander did not seek professional treatment before April of 2007, that does not mean she did not **want** to see a psychologist or psychiatrist.  Ms. Alexander was never asked by Defendant during deposition whether she wanted to see a psychologist or psychiatrist before April of 2007.  Defendant merely assumes that since Ms. Alexander did not and/or was unable to seek professional mental health treatment for herself and her children, that she did not want treatment.

Ms. Alexander testified that she often worries about whether her children's exposure to formaldehyde will have long-term effects and what those effects may be.  *Id.* at p. 403.  She testified that she learned from the news that formaldehyde exposure may have long-term health effects.  *Id.* at p. 400, lines 8-18.  Ms. Alexander also worries that she was a bad mother because she was not able to protect her children from being exposed to formaldehyde and feels guilty for unknowingly placing her children in a harmful situation. (*Id.* at pp. 395-96; *see also* Exhibit 2, Dr. Shwery Psychological Report of Alana Alexander, p. 2).   Additionally, Ms. Alexander testified that her son, Christopher Cooper, told her that he fears the formaldehyde may have made his asthma worse.  (*See* Exhibit 1, Alana Alexander Depo, p. 402, lines 9-17).

Dr. Janet Barnes, Christopher's family doctor, opines within a reasonable degree of medical probability that Christopher's exposure to formaldehyde in the FEMA trailer, will cause permanent epithelial damage, with subsequent acute exacerbations of Asthma, recurrent rhinosinusitis, and chronic atopic dermatitis for the rest of his life. (*See* Exhibit 10, Barnes Report, p. 4). Dr. Edward Halie Shwery diagnosed Christopher with (1) an anxiety order due to asthma and allergies, (2) a history of pulmonary and otolaryngological problems and (3) a phobia of death due to asthma. (*See* Exhibit 11, Shwery Psychological Report of Christopher Cooper, p. 5). Based on these significant findings by Drs. Barnes and Dr. Shwery in conjunction with , it is certainly reasonable that Ms. Alexander has genuine and serious mental distress caused by the fear that her child may develop illnesses and diseases in the future due to his exposure to formaldehyde.

Dr. Shwery evaluated Ms. Alexander on two occasions and, as of May 18, 2009, diagnosed her as having Axis IV "worry distress, developing mental anguish." (*See* Exhibit 2, Dr. Shwery Psychological Report of Alana Alexander, p. 2). Ms. Alexander's emotional distress is in contrast to *Walker v. Allen Parish Unit*, 711 So.2d 734, 735 (La. App. 3 Cir. 1998), cited by Defendants, in which the parents of an injured child only felt nervous and upset about the incident, and the mother developed stomach problems for just a few months. In Ms. Alexander's case, she is constantly worrying that her son may develop life-long illnesses and diseases in the future due to his exposure to formaldehyde. Dr. Shwery recommended that Ms. Alexander seek "counseling to help her improve her coping skills for anxiety and worry about her children's future." (*See* Exhibit 2, Dr. Shwery Psychological Report of Alana Alexander, p. 3). Defendant attempts to undermine Dr. Shwery's evaluation and recommendations by relying on Dr. Megan Ciota's conclusion that Ms. Alexander did not have any anxiety. (*See* Defendant's

15

Memorandum, Doc. 2582-2, p. 7). Ms. Alexander testified, however, that she only saw Dr. Ciota for approximately 20 minutes, which raises questions about the thoroughness of Ms. Alexander's examination and evaluation. (*See* Exhibit 1, Alana Alexander Depo, at p. 396, lines 1-8). Furthermore, Alana testified that she disagreed with Dr. Ciota's opinion that her feelings were "normal." *Id.* at p. 396, lines 9-18. Defendant's also point to testimony by Alana Alexander's 14-year-old daughter, Erika Alexander, in an attempt to undermine Ms. Alexander's emotional state. Erika Alexander testified that, in her opinion, Ms. Alexander's "mood" was jolly. (*See* Excerpts of Deposition of Erika Alexander attached to Defendant's motion at Doc. 2682-3, p. 24) Ms. Alexander, however, testified that she did not cry or get emotional in front of her children. (*See* Exhibit 1, Alana Alexander Depo, p. 395). If anything, Erika and Alana's testimony raises issues of fact for a jury to determine. Since there is ample evidence that exposure to formaldehyde can lead to serious illnesses and diseases and there is evidence that Alana Alexander suffers from genuine and serious mental distress, Defendant's motion should be denied. Defendant asks this Court to invade the province of the jury by deciding as a matter of law that Plaintiff Alana Alexander may not recover for her own mental anguish and emotional distress damages based on her minor child's fear of contracting a disease because of his exposure to formaldehyde. The evidence taken in the light most favorable to Plaintiff, however, does not unambiguously show that Defendant is entitled to judgment as a matter of law. As such, Plaintiff requests that the Court Deny Defendant Gulf Stream's motion.

## VII.
## PRAYER

In conclusion, Plaintiff, Alana Alexander, can show that she reasonably fears that her son, Christopher Cooper, may develop illness or disease due to his exposure to formaldehyde, especially in light of evidence showing that certain illnesses or disease are linked to exposure to

16

formaldehyde. At a minimum, there exist genuine issues of material facts for a jury to determine. Therefore, Defendant Gulf Stream is not entitled to judgment as a matter of law. For the reasons stated in this Response, Plaintiff respectfully requests that the Court DENY Defendant's Motion for Partial Summary Judgment.

        Respectfully submitted:

        **FEMA TRAILER FORMALDEHYDE**
        **PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        jwoods@gainsben.com

        **COURT-APPOINTED PLAINTIFFS'**
        **STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        ROBERT BECNEL, #14072
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON, #9938
        DENNIS REICH, Texas #16739600
        MIKAL WATTS, Texas # 20981820

**CERTIFICATE OF SERVICE**

     I hereby certify that on the 24th day of August, 2009, a copy of the foregoing Response to Defendant Gulf Stream Coach Inc.'s Motion for Partial Summary Judgment and Memorandum in Support was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

                                        s/Gerald E. Meunier_____
                                        Gerald E. Meunier, #9471