UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  FEMA TRAILER FORMALDEHYDE          MDL NO. 1873
PRODUCTS LIABILITY LITIGATION

                                            SECTION N(5)

                                            JUDGE ENGELHARDT

                                            MAGISTRATE CHASEZ

THIS DOCUMENT RELATES TO:
Anthony Bartel v. Gulf Stream Coach, Inc, et al,
and
Leslie Kujawa, et al v. Keystone RV Company and Bechtel National, Inc.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## BECHTEL NATIONAL, INC.'S
## RULE 12(b)(6) MOTION TO DISMISS


### EXHIBIT 14


**DECLARATION OF BRONSON BROWN, ATTACHED AS EXHIBIT 6 TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
PLAINTIFFS' REMAINING FTCA CLAIMS FOR LACK OF
SUBJECT MATTER JURISDICTION (REC. DOC. 1545-12)**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                    MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION           SECTION "N-5"
                                       JUDGE ENGELHARDT
                                       MAG. JUDGE CHASEZ

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEFENDANT UNITED STATES OF AMERICA'S MOTION
TO DISMISS PLAINTIFFS' REMAINING FTCA CLAIMS
FOR LACK OF SUBJECT MATTER JURISDICTION

U.S. EXHIBIT NO. 6

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * | CIVIL ACTION 2:07-MD-1873 |
| | * | JUDGE ENGLEHARDT –DIV.  N |
| | * | MAG. JUDGE CHASEZ – MAG. 5 |

**************************************************************************************************

**DECLARATION OF BRONSON BROWN**

I, Bronson Brown state and declare as follows:

1.       I am employed by the Department of Homeland Security, Federal Emergency Management Agency ("FEMA").  On December 18, 2005, I was appointed as the Section Chief of the Occupational Safety, Health and Security Branch under the Facilities Management Division at FEMA.  My primary duty and responsibility under the Agency's Designated Agency Safety Health Official ("DASHO") is to establish a program to protect the health and safety of FEMA employees, and this includes ensuring that all FEMA work operations are in compliance with applicable OSHA and EPA regulations and standards.

2.       OSHA has promulgated a permissible exposure limit ("PEL") and a Short-Term Exposure Limit ("STEL") that govern occupational exposure to formaldehyde.  The OSHA PEL 8-hour time-weighted average ("TWA") for formaldehyde is 0.75 ppm and the 15-minute STEL is 2 ppm.  The TWA is the amount of a substance to which workers can be exposed over an 8-hour period and the STEL is the concentration to which workers can be exposed continuously for short periods of time.

3. On or about mid-March 2006, I learned that a disaster victim had complained about formaldehyde emission in their temporary emergency housing unit. At that time, I requested that FEMA staff begin an independent occupational sampling to determine the potential for FEMA workers' exposure to formaldehyde. Prior to this I had not received any information that there was a concern related to formaldehyde emissions, thus resulting in me having no knowledge of the situation, nor was I aware that FEMA had purchased trailers for use as emergency housing units. I also learned shortly thereafter that commencing in fall 2005, representatives from the United States Department of Labor, Occupational Safety and Health Administration ("OSHA") office assigned to the Mississippi Joint Field Office had been conducting periodic testing for formaldehyde in new, unoccupied emergency housing units at FEMA storage facilities and FEMA contractor's staging areas. In response to this information, I instructed Mr. Richard Seeds, a FEMA Disaster Assistance Employee ("DAE") employee to investigate and report any information he discovered regarding the OSHA testing. I took this action, in part, because of concerns that FEMA employees interacting with new, unoccupied emergency housing units may have been exposed to formaldehyde in excess of OSHA regulatory standards.

4. In response to my instructions, on or about March 22, 2006, Mr. Seeds informed me that he had not been aware of the OSHA testing, and that he did not recall any OSHA representatives discussing formaldehyde at Individual Assistance Safety Committee Meetings.

5.      Mr. Seeds obtained and provided to members of my staff, OSHA formaldehyde test results.  Mr. Seeds reported that the data report was poor, inconclusive, and of little or no help.

6.      On or about March 23, 2006, I contacted Mrs. Ruth McCully, OSHA, who contacted Mr. Clyde Payne, OSHA, to gain a better understanding of OSHA's activities related to formaldehyde testing.  I also requested an answer as to whether OSHA had kept FEMA apprised of its safety related activities with formaldehyde testing, and, if not, why not.  Mr. Payne informed me that OSHA initiated testing of new, unused trailers at staging and storage facilities in October 2005.  The testing was initiated in response to a request received from a FEMA contractor.  The results of the initial test showed the new, unoccupied units, had high levels of formaldehyde, however, the levels were relatively low once they were handed over to the public.  Mr. Payne also advised me that OSHA's testing confirmed that venting and airing out new, unused units for a short period reduced formaldehyde concentration in the unit to below the OSHA PELs.

7.      On that same day, in response to my concern that OSHA had failed to disclose its testing to FEMA, Mrs. Ruth McCully, OSHA representative forwarded to me a copy of what appeared to be a SITREP 41/FEMA-1604-DR-MS.  This document was identified as the weekly Situation Report via OSHA for Hurricane Katrina disaster response activities during the week of October 5, 2005 to October 11, 2005.  The purpose of the weekly Situation Report is to provide emergency responders with information regarding significant events that took place during the week.  That Situation Report reflects

that information regarding OSHA's initial formaldehyde testing was reported on or about October 11, 2005, under ESF 13. Mr. Payne informed me that further testing conducted by OSHA was not reported in the weekly Situation Reports because that testing simply confirmed OSHA's report that airing out and venting new, unoccupied units for a short period of time prior to entry, reduced formaldehyde to acceptable levels. The copy of the report we (FEMA) received from OSHA was only a spread sheet of numbers with no explanation of the results and there were no recommendations provided.

      8.     In response to these reports, I issued instructions that prior to a FEMA employee entering a new, unoccupied trailer, there should be a period of time for off-gassing. In addition, we continued to take action to test trailers to confirm the accuracy of OSHA's findings. Testing of 13 newly received and 15 refurbished trailers was conducted on March 28 and 29, 2006. Based on those sampling results, there was no indication that FEMA employees have the potential to be exposed above OSHA PELs based on the current 2-hour employee entry procedures while performing job activities involving trailer staging operations at that time. I have reviewed the document assigned identification numbers FEMA10-000163 to FEMA10-000164. This document is a true and accurate copy of the two page memorandum I issued on May 31, 2006, reflecting the results of this testing.

      9.     Mr. Seeds also examined several new, unoccupied trailers at a FEMA staging area. He reported that he had verified that all the trailers he reviewed at the staging area had formaldehyde "warning" instructions. Again, I

was not aware of the staging operations or any procedures/practices in-place for employees. Mr. Seeds faxed a copy of that instruction to FEMA Headquarters and the document assigned identification number FEMA09-000363 is a true and accurate copy of the document received from Mr. Seeds. On May 31, 2006, as part of my report on testing, I recommended that FEMA implement a practice to ensure that any trailer manufacturer's occupancy instructions relating to formaldehyde be posted in trailers prior to public receipt.

10.      I have reviewed the document FEMA09-000360 to FEMA09-000361. That document is an e-mail authored by Mr. Richard Seeds, DAE, forwarded to me a March 24, 2006 e-mail that was sent to him by a Bechtel, Inc. employee and states what actions Bechtel, Inc., would take in response to receipt of a formaldehyde complaint from an EHU occupant.

11.      On or about June or July 2006, I learned that the FEMA Office of General Counsel ("OGC") and the FEMA Individual Assistance ("IA") had engaged the United States Environmental Protection Agency ("EPA") to test for formaldehyde in temporary emergency housing units. In response, I informed OGC and IA that the Safety Office had the ability to test for formaldehyde and I recommended that the Safety Office be tasked with responsibility for conducting additional occupational testing. My recommendation was not accepted at that time. I recommended that all results and analyses, whether occupational or residential were publically perceived as objective and accurate. The decision had been made prior to the participation or knowledge of OSH to place EPA and/or the Center for Disease Control/Agency for Toxic Substances and Disease

Registry in charge of the testing and analysis of the test results. Commencing on or about June or July 2006, either myself or Mr. David Chawaga, a member of my staff, would participate in bi-weekly telephone conference calls conducted for the purposes of facility EPA's testing of the units. However, the process was already in motion prior to our participation.

12.     On or about Summer 2007, FEMA requested that the Department of Health and Human Services (HHS) and Federal Occupational Health Service (FOHS), develop "Employee Procedures for Unoccupied Travel Trailer Entry." On or about December 19, 2007, FOHS issued procedures. Those procedures require an employee prior to entering an unoccupied travel trailer to either test the unit to determine that the level is below the established guidelines, or actively vent the unit using a blower for approximately 40 minutes because, as testing showed, such venting would reduce formaldehyde exposure to levels below the occupational exposure limits. On January 10, 2008, Administrator Paulison instructed that compliance with these procedures is mandatory for all FEMA employees whose work operations require entry into unoccupied stored travel trailers. The documents FEMA01-00735 to FEMA01-00746 constitutes a true and accurate copy of FOHS's Employee Procedures for Unoccupied Travel Trailer Entry and Administrator Paulison's January 10, 2008, Memorandum instructing that FEMA employees must comply with the FOHS's procedures.

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this _14th_ day of _May_ .

BRONSON BROWN
Director
Occupational Safety, Health and
Environment Division
Federal Emergency Management
Agency
Department of Homeland Security
Washington, D.C.