**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:  FEMA TRAILER       *    MDL NO. 1873
       FORMALDEHYDE PRODUCTS    *
       LIABILITY LITIGATION      *    SECTION "N" (5)
                                       *
                                       *    JUDGE ENGELHARDT
                                       *    MAGISTRATE CHASEZ
                                       *
THIS DOCUMENT IS RELATED TO    *
                                       *
*Charlie Age, et al v. Gulf Stream Coach*    *
*Inc., et al*, Docket No. 09-2892;    *
Alana Alexander, individually and on behalf    *
 Of Christopher Cooper             *

## <u>PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM COACH, INC.'S</u> <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

      Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper, files this

response to Defendant Gulf Stream Coach, Inc.'s Motion for Partial Summary Judgment. (Doc.

2583). Defendant, Gulf Stream Coach, Inc. ("Gulf Stream"), claims that Plaintiff, Alana

Alexander, and her minor child, may not recover mental anguish and emotional distress damages

based on their fear that they are at an increased risk to develop cancer because of their exposure

to formaldehyde.  Defendant argues that scientific studies show that there is no causal link

between exposure to formaldehyde and cancer. On the contrary, however, reliable scientific

evidence shows that certain types of cancer are in fact linked to exposure to formaldehyde, in

addition to the fact that International Agency for Research on Carcinogens ("IARC") has

classified formaldehyde as a **known human carcinogen that can cause nasopharyngeal**

**cancer.**  As discussed below, Louisiana law provides that a plaintiff may recover emotional

distress damages for fear of cancer if the circumstances surrounding her exposure would result in

a particular likelihood of genuine and serious mental distress.  Further, In this case, that Plaintiff,

Alana Alexander and her minor child, can show that they have a reasonable fear of developing cancer due to their exposure to formaldehyde. At a minimum, there exist genuine issues of material facts for a jury to determine. Thus, Defendant is not entitled to judgment as a matter of law and Defendant's motion should be denied.

## I.
## BACKGROUND

Plaintiff Alana Alexander and her children were displaced in 2004 as a result of the devastation caused Hurricane Katrina in Louisiana. In 2006, the Federal Emergency Management Agency (FEMA) provided a Cavalier travel trailer manufactured by Gulf Stream to Ms. Alexander and her children to live in for several months. From May 2006 through late December 2007, Ms. Alexander and her children lived in the Gulf Stream Cavalier trailer in Louisiana. During this period of time, Ms. Alexander's son, Christopher Cooper, experienced and/or was diagnosed with several symptoms and medical conditions. Ms. Alexander brought claims both individually and on behalf of her son against Gulf Stream pursuant to the Louisiana Products Liability Act. (*See* First Supplemental and Amended Complaint, Doc. No. 1636, ¶ 12). Among other damages, Ms. Alexander seeks compensatory damages for her own mental anguish and emotional distress, including damages for mental anguish and emotional distress due to her fear of an increased risk of future serious disease. (*Id.* ¶ 15(c)). She also made a claim on behalf of her son, Christopher, for the same damages, mental anguish and emotional distress due to his fear of an increased risk of future serious disease. (*Id.* ¶ 15(d)). In its motion, Defendant Gulf Stream contends there is no epidemiologic link between formaldehyde at the level the Plaintiff and her minor child were exposed to and cancer of any kind. Defendant further contends that neither Ms. Alexander nor her son, Christopher Cooper, has a reasonable fear of being at an increased risk to develop any form of cancer or other disease because of their exposure to

formaldehyde.  In response to Defendant Gulf Stream's motion, Plaintiffs submit evidence of the epidemiologic link between formaldehyde and cancer as well as evidence that Ms. Alexander and her son, Christopher Cooper, have a reasonable fear that they are at an increased risk to develop cancer because of their exposure to formaldehyde.

## II.
## STANDARD OF REVIEW

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).  A fact is "material" if it may affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. 242.  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When considering a motion for summary judgment, the Court views the evidence in the light **most favorable to the nonmoving party**, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir.2002)(emphasis added). Further, the Court should draw all reasonable inferences **in favor of the nonmoving party**. *Hunt v. Rapides Healthcare  System, L.L.C.,* 277 F.3d 757, 764 (2001)(emphasis added).

**III.**
**PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM'S UNCONTESTED**
**STATEMENT OF MATERIAL FACTS**

Plaintiffs submit this response to Defendant's Uncontested Statement of Material Facts (Doc. 2583-7):

1.      It is undisputed that this Multi-District Litigation is the consolidation of several state and federal toxic tort suits in which an estimated thirty thousand named plaintiffs claimed to have inhabited emergency housing units that were provided to them by the Federal Emergency Management Agency as a result of the alleged uninhabitability of their residences due to Hurricanes Katrina and Rita.

2.      It is undisputed that Plaintiff, Alana Alexander, resided in a travel trailer, VIN No. 1NL1GTR2551021783, after Hurricane Katrina.

3.      It is undisputed that the travel trailer with VIN No. 1NL1GTR2551021783 was built in 2004.

4.      It is undisputed that the level of formaldehyde that has been observed in that unit is 0.05 parts per million.  It **is disputed**, however, that this measurement is reflective of the range of formaldehyde exposures experienced by Alana Alexander and Christopher Cooper during their period of occupancy of the Gulf Stream Cavalier trailer. In further response, Plaintiffs incorporate by reference Section B(2) of this response.

5.      It **is disputed** that Dr. Gerald McGwin, an epidemiologist and statistician retained by the Plaintiff, has opined that he cannot associate formaldehyde at the levels present in Plaintiff's Gulf Stream Cavalier trailer and cancer of any kind.    Gulf Stream misconstrues the essence of Dr. Gerald McGwin's testimony regarding a study titled "Mortality from Solid Cancers among Workers in Formaldehyde Industries," by Hauptmann, Lubin, Stewart, Hayes,

and Blair Gulf.  (hereinafter "Hauptmann Study").  The Hauptmann Study is attached as Exhibit

D to Defendant's motion at Doc. 2583-6, pp.5-18.   Defendant contends that Dr. McGwin

"cannot associate formaldehyde at the levels present in the travel trailer and cancer of any kind."

A more nuance discussion of the exposure issue appears in pages 20-25 of Dr. McGwin's

deposition transcript where he indicates that the Hauptmann Study made a positive association

between peak exposure to formaldehyde at greater than 4,000 parts per billion ("4,000 ppb") and

nasopharyngeal cancer.  (*See* Exhibit 1, McGwin Depo., pp. 20-25).  However, the interpretation

is complicated by the fact that it was used as a continuous variable.  *Id.* at p. 20, lines 15-24.  A

continuous variable suggests that concentration alone was not a threshold for the induction of

nasopharyngeal cancer.

Dr. McGwin, who offered cancer causation opinions only in his class certification expert

Affidavit and not specifically for the Gulf Stream trial, offered an opinion that only relied in part

on the Hauptmann Study and only the part which addressed peak exposures greater than 4,000

ppb.  Dr. McGwin's testimony was consistent with the IARC evaluation of formaldehyde which

examined multiple studies.  (*See*, Exhibit 2, *infra,* Section 5.2, p. 274 of IARC Monographs

Volume 88).  Since 2004, when IARC reclassified formaldehyde as carcinogenic to humans, no

re-analysis of any study has caused IARC to change its position.

6.     It **is disputed** that Dr. McGwin and Dr. Christopher De Rosa have opined that

International Association for Research on Cancer's classification of formaldehyde as a known

carcinogen is based primarily on the Hauptmann Study.  The Hauptmann Study is but one study

addressing whether formaldehyde is a known carcinogen.  IARC classified formaldehyde as a

**known human carcinogen** in its 2004 monographs which explicitly references and relies upon

**multiple studies** in determining that formaldehyde is carcinogenic to humans:

5

> Since the last monograph on formaldehyde (in 1995), the follow-up of three major cohort studies has been extended and three new case-control studies have been published….The most recent meta-analysis, which was published in 1997, included some but not all of the above studies and found an increased overall meta-relative risk for nasopharyngeal cancer.

(*See* Exhibit 2, *infra,* Section 5.2, p. 274 of IARC Monographs Volume 88; *see also* Section 6, pp. 280-325 of IARC Monographs Volume 88).   Although IARC relied in part on an industrial cohort study where statistically significant exposure, response relationships were found for both peak and cumulative exposure.  In addition to the cohort of industrial workers, 5 of 7 case control studies that were reviewed by IARC found elevated cancer risks for exposure to formaldehyde.  Additionally, a meta analysis published in 1977, which included some of the case control studies, found an overall risk for nasopharyngeal cancer.   Furthermore, the Working Group concluded that it was unlikely that all of the positive findings from the epidemiological studies, especially the large US industrial study could be explained by bias or confounding.  (*See* Exhibit 2, *infra,* Section 5.2, p. 274 of IARC Monographs Volume 88).

In a self-serving fashion, Gulf Stream takes a statement out-of-context from Dr. McGwin's deposition in the Alexander case in an attempt to establish that, of the 519 randomly tested trailers involved in the CDC study with an exposure range of 3 ppb to 590 ppb, an association between formaldehyde and nasopharyngeal cancer risk does not exist.  In short, Dr. McGwin's statement merely reflects that he was not aware of an analysis linking cancer cases of trailer residents in CDC study with formaldehyde. (*See* Exhibit 1, McGwin Depo., pp. 31-32). He **did not** say that an association does not exist, he simply opined that a study has not been done to test the hypothesis. *Id.*  However, Dr. James Kornberg, an occupational and environmental medicine physician retained by Plaintiffs, did in fact offer an opinion and an analysis where he found that Christopher Cooper was at 17 times above the background risk for developing cancer

because of exposure to formaldehyde. (*See* Exhibit 3, Kornberg Affidavit and report, p. 27-30). Clearly, Dr. Kornberg's statements create a fact issue as to whether there is a possible association between formaldehyde at the levels that existed in the trailers and cancer risk to a young child such as Christopher Cooper.  Additionally Dr. Christopher De Rosa, a toxicologist who formally served as the Director of Toxicology and Environmental Medicine at the Agency for Toxic Substances and Disease Registry, offered insights into cancer risks from formaldehyde exposure. Dr. De Rosa testified that there is, by way of policy, **no safe level of exposure to a carcinogen irrespective of the time or duration of exposure**. (*See* Exhibit 4, De Rosa Depo., p. 70).  Based on his insights regarding the mechanism of toxic action of formaldehyde in the environmental health community, Dr. De Rosa believes it is quite conceivable that even a short-term exposure of elevated levels of formaldehyde may result in a carcinogenic effect.  *Id.*

7.      It **is disputed** that there is no association between formaldehyde and nasopharyngeal cancer below a peak exposure of 4,000 ppb. While this may be one method of assessing whether there exists an association between formaldehyde and nasopharyngeal cancer, Dr. McGwin opines that another method is to consider the association between formaldehyde and nasopharyngeal cancer on a continuous variable.  In further response, Plaintiffs incorporate by reference paragraph number 6 above.

## IV.
## ARGUMENT AND AUTHORITIES

### A.  To Recover For Mental Anguish For Fear of Cancer Without a Physical Injury Under Louisiana Law A Plaintiff's Must Show that Special Circumstances Exist to Create A Likelihood Of Genuine And Serious Mental Distress.

A fear of cancer claim is essentially a specific type of mental anguish claim. *Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315, 318 (C.A.5 [La.]1986) .  Louisiana recognizes mental anguish as a compensable component of personal injury damages.  *See Oden v. Gales*, 960 So.2d

114, 122 (La.App. 1 Cir. 2007).  Under Louisiana law, the standards for evaluating mental anguish claims differ depending on the existence of a manifest physical injury.  When coupled with a physical injury, the plaintiff need only credibly establish that he does, in fact, suffer the specific emotional injury he alleges, and that it is reasonable and causally related to the defendant's negligence. *See Smith v. A.C. & S, Inc.,* 843 F.2d 854, 858 (5th Cir. 1988).  In the absence of manifest physical injury, however, the plaintiff's burden is much greater. *See Molden v. Georgia Gulf Corp*, 465 F.Supp.2d . 606, 615 (M.D. La. 2006); *Bonnette v. Conoco, Inc.,* 837 So. 2d  1219, 1235 (La.,2003).

Without a manifest physical injury, Louisiana does not generally recognize a cause of action for negligent infliction of emotional distress. *Lann v. Davis*, 793 So. 2d 463, 466 (La.App. 2 Cir. 2001).  An exception to this general rule, however, has been recognized in special circumstances. *Moresi v. State Through Dept. of Wildlife and Fisheries,* 567 So.2d 1081, 1096 (La.,1990).   The circumstances must be such that their very nature gives rise to the likelihood of genuine and serious mental distress. *Id.*  Such circumstances serve to guarantee the genuineness of the emotional injury claimed. *Id.*   Examples of circumstances found sufficient to justify mental anguish damages without manifest injury include the negligent transmission of a message announcing a death; failure to install, maintain or repair consumer products; failure to take or develop photographs; negligent damage to property within sight of the plaintiff; and situations where the plaintiff is actually in great fear for his personal safety. *Id.*  In the absence of physical injury, the plaintiff thus carries the burden to show that the circumstances giving rise to his mental anguish were of a special character such as to create a likelihood of genuine and serious mental distress. *Molden*, 465 F.Supp.2d at 615.

Recovery of damages for fear of cancer arising from exposure to a carcinogen was

examined in *Bonnette v. Conoco, Inc.,* 837 So.2d at 1234.   After exposure to asbestos, the

*Bonnette* plaintiffs claimed to have developed a fear that their risk of contracting cancer had

increased. *Id.* at 1224.   The trial court found that the plaintiffs' fear was reasonable, made no

finding that any of the plaintiffs had manifested a physical injury, and awarded damages for

mental anguish. *Id*. at 1222, 1224.   In reversing the mental anguish award, the *Bonnette* Court

held that the trial court, by evaluating only the reasonableness of the plaintiffs' fear, had applied

the wrong standard. *Id.*  Despite expert testimony that "there is no level of cumulative exposure

below which there is no increased risk for asbestos-related diseases," and "there is no 'safe' level

of exposure to any carcinogen," the *Bonnette* Court determined that the plaintiffs had manifested

no physical injury. *See generally Id.* at 1234-35.   In view of the absence of manifest physical

injury, the correct standard was whether the plaintiffs had proved a particular likelihood of

genuine and serious mental distress arising from special circumstances. *Id.* at 1235.

Whether subcellular injuries alone satisfy Louisiana's manifest injury requirement in

exposure cases claiming fear of cancer was examined by *In re Rezulin Products Liability

Litigation,* 361 F. Supp 2d 268, 277 (S.D.N.Y. 2005) (*interpreting Louisiana law)*.  In *Rezulin,*

none of the plaintiffs had manifested any clinically observable detriment. *Id.* at 278.   Expert

evidence was presented, however, that resulin poisons the mitochondria of cells and caused toxic

cellular injury to every plaintiff. *Id.* at 272, 278.   Analogizing to *Bonnette*, the *Rezulin* Court

concluded that plaintiffs' subcellular injuries did not qualify as manifest physical injury for the

purpose of awarding fear of cancer damages. *Id.* at 278.   The *Rezulin* Court, however, noted that

no evidence had been presented that the mitochondrial damage was either permanent or

irreversible, or that it would cause any future consequences. *Id.* at 272, 278.   These comments

suggest the possibility of a different result where reliable evidence of permanence and/or future

consequences is presented. *See Id.* at 278.  In summary, Louisiana recognizes fear of cancer as an element of emotional distress damages.  The standard for awarding such damages differs depending on the presence or absence of manifest physical injury.   A plaintiff who manifests a physical injury need show only that he actually suffers from a fear of developing cancer as a result of his exposure, and that his fear is reasonable.  In the absence of a manifest physical injury, however, the plaintiff must show that the circumstances surrounding her exposure would result in a particular likelihood of genuine and serious mental distress.  As discussed below,

Alana Alexander and her son, Christopher Cooper, can show that they have a reasonable fear of developing cancer due to their exposure to formaldehyde.

**B.  The Evidence Shows That Exposure To Formaldehyde Can Cause Cancer.**

Defendant is mistaken that there is no epidemiologic link between formaldehyde at the level the Plaintiff and her minor child were exposed to and cancer of any kind.  As Plaintiffs will show, there is reliable scientific evidence, including epidemiology, that formaldehyde can cause cancer.  Furthermore, Plaintiffs retained cancer risk experts who will offer opinions on cancer risk from exposures occurring in the Gulf Stream Cavalier trailer in which Plaintiff Alana Alexander and her children resided.  These cancer risk experts are Dr. Patricia Williams, a toxicologist, and Dr. James Kornberg an occupational and environmental medicine physician.

    1.  <u>Plaintiff need only show that there is a *possibility* of acquiring cancer by way of reliable scientific evidence.</u>

The Defendant correctly states that in order to qualify as a reasonable fear of contracting a disease, the plaintiff must show that it ***possible*** to contract a disease. *Maurer v. Heyer-Schulte Corp.*, 2002 WL 31819160, *3 (E.D.La. Dec. 13, 2002)(emphasis added).  The plaintiff has no obligation, however, to show that the likelihood is probable. *Id.*  In order to show that it is

actually possible to contract a disease, the plaintiff must present "at least some reliable scientific evidence" to show that the disease could be caused by the defendant's actions.  *See Id*.  A Plaintiff need only show that that is "***any*** possibility of acquiring a disease, no matter how remote." *Id.* (citations omitted)(emphasis added).

The Defendant misrepresents to this Court that reliable scientific evidence must come in the form of epidemiological studies according to the U.S. Court of Appeals for the Fifth Circuit. Defendant cites to the 1989 Supreme Court Case of *Brock v. Merrell Dow Pharmaceuticals, Inc.* in support of its position. *Brock*, 874 F.2d 307, 311 (5th Cir. 1989), *cert. denied*, 494 U.S. 1046 (1990).   In *Brock*, the Fifth Circuit only stated that epidemiological studies can be effective and conclusive type of evidence in cases where a court addresses causation of a disease, but it **did not require** that reliable scientific evidence must come in the form of epidemiologic studies. *Id.* (emphasis added).  More recently, in *Knight v. Kirby Inland Marine Inc.*, the Fifth Circuit stated that since epidemiology is hardly ever conclusive, an expert is not required to back his or her opinion with epidemiological studies that unequivocally support his or her conclusions.  *Knight,* 482 F.3d 347, 354 (5th Cir. 2007)(emphasis added).

> We are mindful that under Daubert and FED. R. EVID. 702, a district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion. **We also understand that in epidemiology hardly any study is ever conclusive, and we do not suggest that an expert must back his or her opinion with published studies that unequivocally support his or her conclusions**. *See Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (observing that "there is no requirement 'that a medical expert must always cite published studies on general causation in order to reliably conclude that a particular object caused a particular illness'")

*Knight*, 482 F.3d at 354 (emphasis added).

Contrary to Defendant's assertion, however, there is reliable scientific evidence,

including epidemiology that cancer can be caused by exposure to formaldehyde.  In 2004, the

International Agency for Research on Carcinogens ("IARC"), which is part of the World Health

Organization ("WHO"), upgraded the classification of Formaldehyde to a problem carcinogen to

a **known human carcinogen** (Group1).  (*See* Exhibit 2; *see also* Exhibit 4, De Rosa Depo., p.

70).   Specifically, IARC found that formaldehyde can cause nasopharyngeal cancer.  (*See*

Exhibit 2, Section 5.5, p. 280 of IARC Monographs Volume 88).   After reviewing additional

major cohort studies and case control studies introduced since the 1995 monograph on

formaldehyde, IRAC determined that "**[t]here is sufficient evidence in humans for the

carcinogenicity of formaldehyde.**"  *Id.* (emphasis added).   "Overall, the working group

concluded that the results of the study of industrial workers in the USA, supported by the largely

positive findings from other studies, provided sufficient epidemiological evidence that

formaldehyde causes nasopharyngeal cancer in humans."  Exhibit 2, Section 5.2, p. 274 of IARC

Monographs Volume 88.

It is evident that chronic exposure to formaldehyde has been associated with

nasopharyngeal and other cancers.  As the Center for Disease Control ("CDC") reported in its

July 2, 2008 study of FEMA trailers:

> The carcinogenicity of formaldehyde has been extensively studied
> during the last 30 years. In June 2004, the International Agency for
> Research on Cancer (IARC) reclassified formaldehyde from
> "probably carcinogenic to humans" to "carcinogenic to humans."
> **IARC has concluded that formaldehyde exposure causes
> nasopharyngeal cancer.** However, the National Institutes of Health
> Toxicology Program has not adopted IARC's classification change
> and continues to classify formaldehyde as "reasonably anticipated to
> be a carcinogen in human"' and states that "**[h]ow to quantitatively
> relate measured air levels of formaldehyde to cancer risk is
> uncertain**."

*See* Exhibit 5, FEMA Response to Formaldehyde in Trailers, p. 9 (emphasis added).  One CDC official has been quoted as saying that there is no safe level of exposure to formaldehyde in trailers:  "***Any*** level of exposure to formaldehyde may pose a cancer risk, regardless of duration." *Id.* (emphasis added).    This is corroborated by testimony from Dr. De Rosa.  (*See* Exhibit 4, De Rosa Depo, p. 33-34).

Formaldehyde is classified as a *Group I* Human Carcinogen by the International Agency for Research on Cancer (IARC) for good reason. While the most visible effects of formaldehyde exposure are eye, nose, throat and lung irritation, it is extremely important to note that formaldehyde exposure causes damage on a molecular/cellular level which is not readily apparent. (*See* Exhibit 6, Williams Depo., pp. 71-74, 133, 235-236; *see also* Exhibit 7, Williams Affidavit and Report and Report, pp. 7-9).  This molecular and cellular damage caused by formaldehyde exposure was discussed at length during the deposition of toxicologist, Dr. Patricia Williams.   Molecular and cellular damage is due in large part to formaldehyde's properties as an electrophile, meaning it is a molecule with a deficiency of electrons and which aggressively attacks or bonds with other molecules to acquire them.  (*See* Exhibit 7, Williams Affidavit and Report and Report, pp. 8-9).  As a result of this characteristic, formaldehyde creates protein-protein crosslinks, DNA-protein crosslinks, or it incorporates itself into larger molecules, destroying the integrity of these molecules. (*See* Exhibit 6,Williams Depo., pp. 71-74; *see also* Exhibit 7, Williams Affidavit and Report, pp. 8-9).   In its evaluation of the carcinogenic risks of formaldehyde to humans IARC specifically states:  "The current data indicate that both genotoxicity and cytoxicity play important roles in the carcinogenesis of formaldehyde in nasal tissues.  DNA-protein cross-links provide a potentially useful marker of genotoxicity."   Exhibit 2, Section 5.24 p. 279 of IARC Monographs Volume 88.

One of Plaintiffs' cancer risk experts, Dr. Patricia Williams, analyzed various studies regarding the carcinogenic effects of formaldehyde and human response to formaldehyde exposure at various levels.  (*See* Exhibit 7, Williams Affidavit and Report, pp. 21-28).  A study by Shaham, Bomstein, Gurvich, Rashkovsky, and Kaufman (2009) proves that DNA protein crosslinks ("DPC") and loss of inhibitory function of the p53 tumour suppressor gene products is involved in carcinogenesis. (*See* Exhibit 8, Shaham Study; *See also* Exhibit 7 Williams Affidavit and Report, p. 23).  The study involved a group of workers who were exposed to formaldehyde concentrations beginning at 0.04 ppm (equivalent to 40 parts per billion or "40 ppb") and greater. Comparing the group of exposed workers to an unexposed group of workers, the study revealed that the adjusted mean amount of DPC was significantly higher ($p < 0.01$) in the total exposed group compared to that in the total unexposed group.

Another study also analyzed by Dr. Williams states that formaldehyde has long been known to be a mutagenic compound resulting in DNA damage (genotoxicity) in various forms, including increased sister-chromatid exchange, chromosome aberrations, and micronuclei formation.  (*See* Exhibit 9, Ballarin Study; *see also* Exhibit 7, Williams Affidavit and Report, p. 23).  In this 1992 study, the frequency of micronuclei (MN) and cytology of respiratory nasal mucosa cells were evaluated in workers exposed to formaldehyde at concentrations beginning at 0.065 ppm (65 ppb) with a mean of 0.081 ppm (81 ppb).  A higher frequency of micronucleated cells was observed in the exposed group than in the control group ($p < 0.01$).

A third study by Costa, Coelho, Costa, Silva, Mayan, et al. (2008) studied genotoxic (DNA) damage in formaldehyde-exposed workers.  (*See* Exhibit 10, Costa Study).   In this study, researchers evaluated the genetic effects of long-term occupational exposure to formaldehyde in a group of 30 pathological anatomy laboratory workers.  (*See* Exhibit 10; *see also* Exhibit 7,

Williams Affidavit and Report, p. 22).  A variety of endpoints for DNA damage were analyzed (micronuclei, Sister Chromatid Exchange, Comet tail length).  The range of exposure to formaldehyde was 0.040 ppm (40 ppb) to 1.58 ppm (1,580 ppb).  The researchers found that the Micronuclei (MN) frequency was significantly higher (p=0.003) in the exposed subjects when compared with controls.  Additionally, the Sister Chromatid Exchange (SCE) mean value was significantly higher (p < 0.05) among the exposed group compared with the control group.  The Comet assay data showed a significant increase (p < 0.05) of TL (comet tail length) in formaldehyde-exposed workers with respect to the control group.

Finally, Dr. Williams points to a study involving patients with primary malignancies of the nasal cavity in which their occupational exposures to formaldehyde ranged from less than 0.10 ppm (100 ppb) to 1 ppm (1,000 ppb).  *See* Exhibit 11, Luce Study; *see also* Exhibit 7, Williams Affidavit and Report, p. 27).  The researchers determine that exposures of less than 0.10 ppm (100 ppb) were considered low levels of exposure. The Odds Ratios for exposure to probable or definite, low level of formaldehyde were 12.6 (95% CI = 4.5-34.9) for adenocarcinomas of the nasal cavity and paranasal sinuses.

The studies referenced by Dr. Williams demonstrate that exposure to low levels of formaldehyde can induce cancer.  As discussed in further detail below, the levels in these studies fall within the range of exposures that Alana Alexander and her son, Christopher Cooper, experienced while residing in the Gulf Stream Cavalier trailer.  No epidemiologic studies are perfect. They all contain flaws or potential sources of bias that must be critically examined. However, Federal Courts do consider scientific principles, such as the Bradford-Hill factors for evaluating whether general causation has been established between potential exposures to exogenous chemicals and disease.  *See generally*, Exhibit 12, Reference Manual on Scientific

Evidence, pp. 374-376; *also see e.g., Wells v. SmithKline Beecham Corp.*, 2009 WL 564303, *6

(W.D.Tex. 2009)(stating that if a plaintiff's expert bases his opinion on scientifically reliable

epidemiological studies, he should then consider other factors, such as application of the

Bradford-Hill criteria); *Beck v. Koppers, Inc.*, 2006 WL 270260, *4 (N.D. 2006 Miss.) (Stating

that with regard to epidemiological evidence, there are additional factors, known as the

Bradford-Hill factors, that the court should consider in opening the gate to epidemiological

opinions on the ultimate question of whether a given agent generally can and specifically did

cause a given disease); *Cano v. Everest Minerals Corp.*, 362 F. Supp. 2d 814, 820 (W.D. Tex.

2005)(noting that when analyzing epidemiological studies regarding causation, other

considerations such as an analysis of the Bradford-Hill factors should be addressed).

     Because the burden under Louisiana substantive law is so low ("any possibility, no matter

how remote") in establishing a reasonable basis for proving mental anguish or fear of cancer

from exposure to a carcinogenic substance, there is no need to cover in depth the application and

weighting of the Bradford-Hill factors to this case at hand.  Conversely, the state of the record

**does not show** that it would be ***impossible*** for Plaintiff and her son to develop cancer due their

exposure to formaldehyde at the levels projected by Mary Devany and Dr. Kornberg (discussed

below) – levels which are consistent with certain epidemiologic studies and causally associated

with cancer.

    2.   It is *possible* that Plaintiffs Alana Alexander and Christopher Cooper may develop
        cancer due to their exposure to formaldehyde, regardless of level.

     Overlooking for a moment the fact that any level of exposure to formaldehyde may pose

a cancer risk, Plaintiffs dispute Defendant's contention that the 0.05 parts per million

measurement ("0.05 ppm") is reflective of the range of formaldehyde exposures experienced by

Alana Alexander and Christopher Cooper during their period of occupancy of the Gulf Stream

16

Cavalier trailer.  The 0.05 ppm (50 ppb) level of formaldehyde references a measurement taken during the winter months of 2008.  This detected level is merely a snapshot in time and does not account for the range of levels over time. (*See* Exhibit 13, Devany Affidavit, pp. 18-22).   It is undisputed that formaldehyde concentrations vary with temperature, relative humidity, and the age of the off gassing component materials.  (*Id.* at pp. 18-29).  Plaintiffs Alana Alexander and Christopher Cooper live in Louisiana, a region that is well known for being hot and humid, especially during summer months.  Since the increase of temperature and humidity can create higher levels of formaldehyde, it follows that Plaintiffs' Gulf Stream Cavalier trailer likely had higher levels of formaldehyde during the hot and humid months than during the winter months of 2008 (i.e. when the measurement was taken).  Therefore, the levels of formaldehyde present in the Gulf Stream Cavalier trailer during Plaintiffs' relevant period of occupancy of the trailer (May 2006 through December of 2007) were likely to vary over time.   In fact, Mary Devany, a Certified Safety Professional and Certified Hazardous Materials Manager at the Master Level, opined that the concentration level of formaldehyde in Plaintiffs' trailer may have ranged from 0.1 ppm (100 ppb) to 1.6 ppm (1,600 ppb).    Similarly, Dr. James P. Kornberg, an Occupational and Environmental medicine physician and Environmental Health Scientist and Engineer, opined that "Christopher Cooper probably sustained airborne exposure to formaldehyde at levels of between 50 and 100 ppb or more while living in the Gulf Stream Cavalier travel trailer over 19 months."  (*See* Exhibit 3, Kornberg Affidavit and Report, p. 20).  Dr. Kornberg further opined that Christopher Cooper sustained "probable formaldehyde excursions of up to 250-300 ppb (0.25-0.30 ppm) **or more** for short periods of time when he entered the trailer after it had been closed or while living in the trailer without adequate ventilation under various weather and

temperature conditions." *Id.*  Accordingly, Plaintiffs submit that there is no **fixed** level of exposure that can be used to assess their cancer risk. *Id.* at p. 21.

Dr.  De Rosa, former Director of Toxicology and Environmental Medicine at the Agency for Toxic Substances and Disease Registry and former member of the National Toxicology Program ("NTP") Review Committee,[1] testified that a person's brief exposure to high levels of formaldehyde may lead to cancer development.   "Based on insights regarding the mechanism of toxic action of formaldehyde in the environmental health community, it's quite conceivable that even a short term exposure to elevated levels of formaldehyde may result in carcinogenic effect." (Exhibit 4, De Rosa Depo., p. 71).   When asked in deposition whether it was well-recognized by the year 2007 that formaldehyde, a recognized sensitizer, presented a carcinogenic risk, Dr. De Rosa agreed.[2]   *Id.* at p. 301.  Dr.  De Rosa dismissed the notion that non-sensitized people are unlikely to experience anything other than transient irritation even where formaldehyde levels in new trailers may remain above a proposed threshold level.   Dr. De Rosa testified that people who are previously non-sensitized can become sensitized by repeated exposure to gases such as formaldehyde. *Id*. p. 80, lines 1-11.  He further testified that it is not clear that transient irritation would be the only effect of exposure to formaldehyde, since long term health effects such as reproductive problems, developmental effects and cancer may result.   *Id*. p. 80, lines 12-15. Lastly and most notably, Dr. De Rosa testified that, according to prevailing national science

---

[1] As a former Director of Toxicology and Environmental Medicine at the ATSDR and member of the NTP Review Committee, Dr. De Rosa was involved in the IARC discussions regarding the re-classification of formaldehyde as known human carcinogen.

[2] It is undisputed that formaldehyde is a recognized sensitizer, which means that that it may be associated with responses at increasingly lower levels of exposure over time.  (*See* Exhibit 4, De Rosa Depo., p. 34, lines 9-14). Individuals become sensitized to the effects of formaldehyde, and upon subsequent exposures may exhibit symptoms at increasingly lower exposure levels.  *Id.*

policy, there is **no safe level of exposure to a carcinogen irrespective of the time or duration of exposure**. (*See* De Rosa Depo., pp. 70, 94-95).

> [T]he **Federal Science Policy of the Federal Government is that there is no safe level of exposure to a carcinogen, irrespective of the duration of exposure**. This is based on the premise of a study done with ionizing radiation in the late Seventies and early Eighties where they exposed large numbers of rodents to doses of radiation and were unable to find a dose at which a carcinogenic response was not elicited. It's called the Mega-Mouse Study, for those who are interested. But at any rate, that has formed the **backbone of science policy** within the U. S. Federal Government since that time. And it's the premise of all cancer risk assessments done by the Federal Government.

*Id.* at 94-95 (emphasis added); *see also Id*. at pp. 301-304.

With regard to Christopher Cooper's exposure to formaldehyde, Dr. Kornberg calculated a risk quotation of 17.0 by comparing Christopher's 19 month formaldehyde inhalation dose to the dose based upon EPA cancer risk concentration.  (*See* Exhibit 3, Kornberg Affidavit and Report, p. 27-30).  This 17.0 risk quotation means that over the 19-month period that Christopher was exposed to formaldehyde, he endured an exposure that was 17 times the 30-year residential inhalation dose of formaldehyde that the EPA recognizes is associated with an increased lifetime cancer risk of IE-6.  *Id.*

In its June 26, 2009 report titled *FEMA Response to Formaldehyde in Trailers* the Office of Inspector General of the Department of Homeland Security discusses an information sheet from the Environmental Health Center of the National Safety Council wherein it was recommended that exposure to formaldehyde should not exceed 0.05 ppm (50 ppb):

> [F]ormaldehyde in excess of 100 ppb can cause watery eyes; burning sensations in the eyes, nose and throat; nausea; coughing; chest tightness, wheezing; skin rashes; and other irritating effects. It further noted that **sensitive people can experience effects below 100 ppb** and that the World Health Organization recommends that **exposure should not exceed 50 ppb…** Formaldehyde has caused

19

> cancer in laboratory animals and may cause cancer in humans;
> there is **no known threshold level below which there is no threat
> of cancer.** The risk depends upon amount and the duration of
> exposure.

Exhibit 5, FEMA Response to Formaldehyde in Trailers, p. 18 (internal quotations

omitted)(emphasis added).  The Office of Inspector General further notes a letter written by the

Associate Director Office of National Center for Environmental Health/ATSDR regarding

concerns with the initial CDC/ATSDR Health Consultation report released in February of 2007

and lack of disclosure to the public regarding the possible carcinogenic effects of formaldehyde

exposure:

> Formaldehyde is classified as "reasonably anticipated to be a
> human carcinogen." As such, there is no recognized "safe level" of
> exposure. Thus, any level of exposure to formaldehyde may pose a
> cancer risk, regardless of duration... **Failure to speak to the long-
> term cancer risk regarding formaldehyde exposure
> irrespective of duration is of particular concern.**

*Id.* at p. 31. (internal quotations omitted).  Ultimately, the CDC/ATSDR Health Consultation

report was updated and revised in October of 2007 to a great amount of additional information

regarding the potential health effects and cancer risks associated with exposure to formaldehyde.

   The Agency for Toxic Substances and Disease Registry ("ATSDR") is the branch of the

CDC tasked by the Federal Government with developing reports available to the public on

various toxic substances and their health effects.  The ATSDR considers children to categorically

be a susceptible and highly sensitive population. Vulnerability to the effects of formaldehyde

often depends on developmental stage and damage may not be evident until a later stage of

development. (*See* Exhibit 14, ATSDR Toxicological Profile at p. 226).  "Children…have a

longer lifetime in which to express damage from chemicals; **this potential is particularly

relevant to cancer**." *Id.* at p. 227 (emphasis added).   The ATSDR points to two studies which

provide suggestive evidence that children may be more sensitive than adults to the irritant properties of airborne formaldehyde.[3]   Additionally, Dr. Williams and Dr. De Rosa both state that children, generally, may be particularly sensitive to formaldehyde and susceptible to adverse reactions as a result of formaldehyde exposure.  (*See*, *eg,* Exhibit 7, Williams Affidavit and Report, Section 13.1 Children and Collected References at pp. 31-33; *see also* Exhibit 4, De Rosa Depo., pp. 82-83).   The ATSDR recommended exposure limits may not be relevant for the pediatric population. (*See* Exhibit 15, Paris Affidavit, p. 3).  Physiologically, children are more vulnerable to formaldehyde and may have increased severity of symptoms. *Id.*  Quite simply stated, children are not finished and are undergoing continual development and physiological growth.  *Id.*  Their airways are smaller in diameter and any broncho-constriction or other inflammation will be more acutely felt by children than by adults.  Most importantly for children is that their lungs have not finished developing. *Id.*  While the exposure to hazardous levels of formaldehyde injured all occupants of the FEMA trailers at issue in this litigation, it is the children who were most severely affected.  (*See generally* Exhibit 15, Paris Affidavit; *see also* Exhibit 7, Williams Affidavit and Report, pp. 31-33).

Clearly, the evidence by Ms. Devany, Dr. Kornberg, Dr. De Rosa, and Dr. Williams creates factual issues with respect to whether there is a possible association between formaldehyde at the levels that existed in the trailers and cancer risk to a young child such as Christopher Cooper.  As such, this Court should deny Defendant's motion for summary judgment and allow the fact-finder to make the determination as to Plaintiffs' reasonable fear of cancer.

---

[3]  *See* Exhibit 14, ATSDR Toxicological Profile at p. 228-29, describing the findings of two studies performed of school-aged children (*citing* Krzyzanowski M, Quackenboss JJ, Lebowitz MD. 1990.  Chronic respiratory effects of indoor formaldehyde exposure. Environ Res 52:117-125; Wantke F, Demmer CM, Tappler P, et al. 1996a. Exposure to gaseous formaldehyde induces IgEmediated sensitization to formaldehyde in school-children. Clin Exp Allergy 26:276-280).

**C.   The Evidence Shows that Alana Alexander And Her Minor Child Have A Reasonable Fear Of Developing Cancer Due To Their Exposure To Formaldehyde.**

As stated above, in order to qualify as a reasonable fear, the plaintiff must show that it is actually possible to contract a disease, though the plaintiff has no obligation to show that the likelihood is probable. *Maurer*, 2002 WL 31819160, *3.  An alternative way of framing the burden of proof is that Plaintiff need only show that that is "any possibility of acquiring a disease, no matter how remote." *Id.* (citations omitted).  As discussed above in section B of this response, there is reliable scientific evidence that cancer can be caused by formaldehyde.  In her deposition, Alana Alexander acknowledged the risk of developing cancer due to formaldehyde exposure and the fears she has developed as a result of this knowledge.  (*See* Exhibit 16, Alana Alexander Depo, p. 322, lines1-21; p. 400, lines 8-18; p. 403).

Ms. Alexander testified that she often worries about whether her children's exposure to formaldehyde will have long-term effects and what those effects may be, including the risk of developing cancer.  (*Id.* at  p. 403).  She also testified that she received a notice posted to the outside of her Gulf Stream Cavalier trailer which informed her that formaldehyde exposure may have long-term health effects, including cancer.  *Id.* at p. 322, lines1-21; p. 400, lines 8-18.  Ms. Alexander worries that she was a bad mother because she was not able to protect her children from being exposed to formaldehyde and feels guilty for unknowingly placing her children in a harmful situation. (*Id.* at pp. 395-96; *see also* Exhibit 17, Dr. Shwery Psychological Report of Alana Alexander, p. 2).   Additionally, Ms. Alexander testified that her son, Christopher Cooper, told her that he fears the formaldehyde may have made his asthma worse and because scared when he is unable to breath.  (*See* Exhibit 16, Alana Alexander Depo, p. 62, lines 17-22; p. 402, lines 9-17).   Dr. Janet Barnes, Christopher's family doctor, opines within a reasonable degree of medical probability that Christopher's exposure to formaldehyde in the Gulf Stream Cavalier

trailer, will cause permanent epithelial damage, with subsequent acute exacerbations of Astha, recurrent rhinosinusitis, and chronic atopic dermatitis for the rest of his life.  (*See* Exhibit 18, Barnes Narrative Report, p. 4).   Dr. Edward Halie Shwery diagnosed Christopher with (1) an anxiety order due to asthma and allergies, (2) a history of pulmonary and otolaryngological problems and (3) a phobia of death due to asthma.  (*See* Exhibit 19, Dr. Shwery Psychological Report of Christopher Cooper, p. 5).   As to Alana Alexander's fear, Shwery evaluated Ms. Alexander on two occasions and, as of May 18, 2009, diagnosed her as having Axis IV "worry distress, developing mental anguish." (*See* Exhibit 17, Dr. Shwery Psychological Report of Alana Alexander, p. 2).  Based on these significant findings by Drs. Barnes and Dr. Shwery in conjunction with the scientific evidence linking formaldehyde exposure to cancer, it is certainly reasonable that Ms. Alexander has genuine and serious mental distress caused by the fear that she and her child may develop cancer as a result of inhaling formaldehyde over a period of 19 months.

**D.  Plaintiff Alana Alexander's Testimony Is Probative And Valuable To The Issue Of Whether She And Her Minor Child Have A Reasonable Fear Of Developing Cancer Due To Their Exposure To Formaldehyde.**

Contrary to Defendant's assertion that Alana Alexander's testimony is prejudicial and has little probative value, the Court should consider such testimony as it raises genuine issues of material facts that are important to consider along with the epidemiological evidence establishing a link between cancer and formaldehyde discussed above.  Defendant asks this Court to invade the province of the jury by deciding as a matter of law that Plaintiff Alana Alexander and her son do not have a reasonable fear of developing cancer due to their exposure to formaldehyde.  Plaintiff's testimony is clearly probative as to the reasonableness of her fears and related mental anguish.  Accordingly, the Court should consider **all evidence** in the light most favorable to

Plaintiff in order to determine whether Defendant is entitled to judgment as a matter of law.

## V.
## CONCLUSION

Since the burden of showing a reasonable fear of cancer is based on showing the *possibility* of a causal association between exposure to formaldehyde and cancer, the burden is extraordinarily low and has been necessarily satisfied by Plaintiff.  In sum, there is scientific evidence that certain types of cancer are linked to exposure to formaldehyde.  In this case, that Plaintiff, Alana Alexander and her minor child, can show that they have a reasonable fear of developing cancer due to their exposure to formaldehyde given the .  At a minimum, there exist genuine issues of material facts for a jury to determine.  Thus, Defendant is not entitled to judgment as a matter of law. For the reasons stated in this Response, Plaintiff respectfully requests that the Court DENY Defendant's Motion for Partial Summary Judgment.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:   504/522-2304
       Facsimile:   504/528-9973
       gmeunier@gainsben.com

       s/Justin I. Woods
       JUSTIN I. WOODS, #24713
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163

Telephone:     504/522-2304
Facsimile:      504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'**
**STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
ROBERT BECNEL, #14072
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL WATTS, Texas # 20981820

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record as indicated below in accordance with the Federal Rules of Civil Procedure on August 24, 2009.

/s/Gerald E. Meunier
GERALD E. MEUNIER, #9471

25