# Exhibit 12

# Reference Manual on Scientific Evidence

*Second Edition*

Federal Judicial Center 2000

This Federal Judicial Center publication was undertaken in furtherance of the Center's statutory mission to develop and conduct education programs for judicial branch employees. The views expressed are those of the authors and not necessarily those of the Federal Judicial Center.

An electronic version of the *Reference Manual* can be downloaded from the
Federal Judicial Center's site on the World Wide Web. Go to

**http://air.fjc.gov/public/fjcweb.nsf/pages/16**

For the Center's overall homepage on the Web, go to

**http://www.fjc.gov**

# V. General Causation: Is an Exposure a Cause of the Disease?

Once an association has been found between exposure to an agent and development of a disease, researchers consider whether the association reflects a true cause–effect relationship. When epidemiologists evaluate whether a cause–effect relationship exists between an agent and disease, they are using the term causation in a way similar to, but not identical with, the way the familiar "but for," or sine qua non, test is used in law for cause in fact. "An act or an omission is not regarded as a cause of an event if the particular event would have occurred without it."[107] This is equivalent to describing the act or occurrence as a necessary link in a chain of events that results in the particular event.[108] Epidemiologists use causation to mean that an increase in the incidence of disease among the exposed subjects would not have occurred had they not been exposed to the agent. Thus, exposure is a necessary condition for the increase in the incidence of disease among those exposed.[109] The relationship between the epidemiologic concept of cause and the legal question of whether exposure to an agent caused an individual's disease is addressed in section VII.

As mentioned in section I, epidemiology cannot objectively prove causation; rather, causation is a judgment for epidemiologists and others interpreting the epidemiologic data. Moreover, scientific determinations of causation are inherently tentative. The scientific enterprise must always remain open to reassessing the validity of past judgments as new evidence develops.

In assessing causation, researchers first look for alternative explanations for the association, such as bias or confounding factors, which were discussed in section IV. Once this process is completed, researchers consider how guidelines

---

107. W. Page Keeton et al., Prosser and Keeton on the Law of Torts 265 (5th ed. 1984); *see also* Restatement (Second) of Torts § 432(1) (1965).

When multiple causes are each operating and capable of causing an event, the but-for, or necessary-condition, concept for causation is problematic. This is the familiar "two-fires" scenario in which two independent fires simultaneously burn down a house and is sometimes referred to as overdetermined cause. Neither fire is a but-for, or necessary condition, for the destruction of the house, because either fire would have destroyed the house. *See id.* § 432(2). This two-fires situation is analogous to an individual being exposed to two agents, each of which is capable of causing the disease contracted by the individual. A difference between the disease scenario and the fire scenario is that, in the former, one will have no more than a probabilistic assessment of whether each of the exposures would have caused the disease in the individual.

108. *See supra* note 8.

109. *See* Rothman & Greenland, *supra* note 49, at 8 ("We can define a cause of a specific disease event as an antecedent event, condition, or characteristic that was necessary for the occurrence of the disease at the moment it occurred, given that other conditions are fixed."); Allen v. United States, 588 F. Supp. 247, 405 (D. Utah 1984) (quoting a physician on the meaning of the statement that radiation causes cancer), *rev'd on other grounds*, 816 F.2d 1417 (10th Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988).

374

*Reference Guide on Epidemiology*

for inferring causation from an association apply to the available evidence. These guidelines consist of several key inquiries that assist researchers in making a judgment about causation.[110] Most researchers are conservative when it comes to assessing causal relationships, often calling for stronger evidence and more research before a conclusion of causation is drawn.[111]

The factors that guide epidemiologists in making judgments about causation are

1. temporal relationship;
2. strength of the association;
3. dose–response relationship;
4. replication of the findings;
5. biological plausibility (coherence with existing knowledge);
6. consideration of alternative explanations;
7. cessation of exposure;
8. specificity of the association; and
9. consistency with other knowledge.

There is no formula or algorithm that can be used to assess whether a causal inference is appropriate based on these guidelines. One or more factors may be absent even when a true causal relationship exists. Similarly, the existence of some factors does not ensure that a causal relationship exists. Drawing causal inferences after finding an association and considering these factors requires judgment and searching analysis, based on biology, of why a factor or factors may be absent despite a causal relationship, and vice-versa. While the drawing of causal inferences is informed by scientific expertise, it is not a determination that is made by using scientific methodology.

---

110. *See* Mervyn Susser, Causal Thinking in the Health Sciences: Concepts and Strategies in Epidemiology (1973); *In re* Joint E. & S. Dist. Asbestos Litig., 52 F.3d 1124, 1128–30 (2d Cir. 1995) (discussing lower courts' use of factors to decide whether an inference of causation is justified when an association exists).

111. Berry v. CSX Transp., Inc., 709 So. 2d 552, 568 n.12 (Fla. Dist. Ct. App. 1998) ("Almost all genres of research articles in the medical and behavioral sciences conclude their discussion with qualifying statements such as 'there is still much to be learned.' This is not, as might be assumed, an expression of ignorance, but rather an expression that all scientific fields are open-ended and can progress from their present state . . . ."); Hall v. Baxter Healthcare Corp., 947 F. Supp. 1387 App. B. at 1446–51 (D. Or. 1996) (report of Mervyn R. Greenlick, court-appointed epidemiologist). In *Cadarian v. Merrell Dow Pharmaceuticals, Inc.*, 745 F. Supp. 409 (E.D. Mich. 1989), the court refused to permit an expert to rely on a study that the authors had concluded should not be used to support an inference of causation in the absence of independent confirmatory studies. The court did not address the question whether the degree of certainty used by epidemiologists before making a conclusion of cause was consistent with the legal standard. *See* DeLuca v. Merrell Dow Pharms., Inc., 911 F.2d 941, 957 (3d Cir. 1990) (standard of proof for scientific community is not necessarily appropriate standard for expert opinion in civil litigation); Wells v. Ortho Pharm. Corp., 788 F.2d 741, 745 (11th Cir.), *cert. denied*, 479 U.S. 950 (1986).

These guidelines reflect criteria proposed by the U.S. Surgeon General in 1964[112] in assessing the relationship between smoking and lung cancer and expanded upon by A. Bradford Hill in 1965.[113]

## A. Is There a Temporal Relationship?

A temporal, or chronological, relationship must exist for causation. If an exposure causes disease, the exposure must occur before the disease develops.[114] If the exposure occurs after the disease develops, it cannot cause the disease. Although temporal relationship is often listed as one of many factors in assessing whether an inference of causation is justified, it is a necessary factor: Without exposure before disease, causation cannot exist.

## B. How Strong Is the Association Between the Exposure and Disease?[115]

The relative risk is one of the cornerstones for causal inferences.[116] Relative risk measures the strength of the association. The higher the relative risk, the greater the likelihood that the relationship is causal.[117] For cigarette smoking, for example, the estimated relative risk for lung cancer is very high, about 10.[118] That is, the risk of lung cancer in smokers is approximately ten times the risk in nonsmokers.

A relative risk of 10, as seen with smoking and lung cancer, is so high that it is extremely difficult to imagine any bias or confounding factor that might account for it. The higher the relative risk, the stronger the association and the lower the chance that the effect is spurious. Although lower relative risks can

---

112. U.S. Dep't of Health, Educ., and Welfare, Public Health Serv., Smoking and Health: Report of the Advisory Committee to the Surgeon General (1964).

113. A. Bradford Hill, *The Environment and Disease: Association or Causation?*, 58 Proc. Royal Soc'y Med. 295 (1965) (Hill acknowledged that his factors could only serve to assist in the inferential process: "None of my nine viewpoints can bring indisputable evidence for or against the cause-and-effect hypothesis and none can be required as a *sine qua non*.").

114. *See* Carroll v. Litton Sys., Inc., No. B-C-88-253, 1990 U.S. Dist. LEXIS 16833, at *29 (W.D.N.C. Oct. 29, 1990) ("[I]t is essential for . . . [the plaintiffs' medical experts opining on causation] to know that exposure preceded plaintiffs' alleged symptoms in order for the exposure to be considered as a possible cause of those symptoms . . . .").

115. Assuming that an association is determined to be causal, the strength of the association plays an important role legally in determining the specific causation question—whether the agent caused an individual plaintiff's injury. *See infra* § VII.

116. *See supra* § III.A.

117. *See* Cook v. United States, 545 F. Supp. 306, 316 n.4 (N.D. Cal. 1982); Landrigan v. Celotex Corp., 605 A.2d 1079, 1085 (N.J. 1992). The use of the strength of the association as a factor does not reflect a belief that weaker effects occur less frequently than stronger effects. *See* Green, *supra* note 39, at 652–53 n.39. Indeed, the apparent strength of a given agent is dependent on the prevalence of the other necessary elements that must occur with the agent to produce the disease, rather than on some inherent characteristic of the agent itself. *See* Rothman & Greenland, *supra* note 49, at 9–11.

118. *See* Doll & Hill, *supra* note 7.