UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | 07-md-1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION: N(5) |
| | | * | |
| | | * | JUDGE: ENGELHARDT |
| | | * | |
| | | * | MAG: CHASEZ |

This document is related to:
*Charlie Age, et al. v. Gulf Stream Coach, Inc., et al.*, No. 09-2892

************************************************************************

## FLUOR ENTERPRISES, INC.'S MOTION FOR SUMMARY JUDGMENT BASED ON THE GOVERNMENT CONTRACTOR DEFENSE

# FLUOR EXHIBIT 6

Page 1

1                UNITED STATES DISTRICT COURT

2                   DISTRICT OF LOUISIANA

3                    NEW ORLEANS DIVISION

4  In Re:   FEMA Trailer      )

5  Formaldehyde Products   ) MDL No. 1873

6  Liability Litigation    )

7

8                              Washington, D.C.

9                              Thursday, July 9, 2009

10 Videotape Deposition of STEPHEN CARL MILLER, called

11 for examination by counsel for Plaintiffs in the

12 above-entitled matter, the witness being duly sworn

13 by CHERYL A. LORD, a Notary Public in and for the

14 District of Columbia, taken at the offices of NELSON

15 MULLINS RILEY & SCARBOROUGH LLP, 101 Constitution

16 Avenue N.W., Suite 900, Washington, D.C., at

17 9:18 a.m., and the proceedings being taken down by

18 Stenotype by CHERYL A. LORD, RPR, CRR.

19

20

21                                          EXHIBIT 6

22

Page 198

1  of formaldehyde becomes quite strong. I made a few
2  phone calls to verify our process, and this is the
3  same process that has been done in other disasters.
4      Do you know -- do you have personal
5  knowledge sitting here today as to whom Kurtis
6  Melnick called?
7      A. No, sir.
8      Q. Okay. The person responsible for making
9  the unit RFO, ready for occupancy, is the one who has
10 been responsible for the remover -- removal of
11 formaldehyde odor.
12     Do you know what Mr. Miller -- Mr. Melnick
13 is referring to there?
14     A. I -- I can assume from this is that --
15     Q. You know, I don't want you to assume.
16     A. Yeah.
17     Q. I want you to tell me what you have
18 personal knowledge of --
19     A. Okay.
20     Q. -- in this instance.
21     Are you aware of task orders or work
22 orders that directed particular contrac- -- IA/TAC

Page 199

1  contractors like Fluor Enterprises Inc. that they had
2  a work order that said, thou shall remove the
3  formaldehyde odor?
4      A. No, I do not.
5      Q. Now, you were deployed in Florida for the
6  2004 hurricane season.
7      A. Yes, sir.
8      Q. Okay. And you are familiar with the
9  blocking requirements, are you not --
10     A. Yes, sir.
11     Q. -- for the travel trailers in hurricanes
12 Katrina and Rita, that the travel trailers were
13 placed on 6 piers or blocks per contractual
14 requirements; is that correct?
15     Are you familiar with that?
16     MR. WOODS: Objection, lack of foundation.
17     A. I am familiar with the processes that --
18 for blocking of the units.
19     BY MR. PENOT:
20     Q. Okay. And were those processes used by
21 FEMA in -- in prior disasters to your knowledge?
22     MR. WOODS: Objection, lack of foundation.

Page 200

1      MR. MILLER: Objection, vague.
2      Go ahead.
3      A. To my knowledge, they were the same
4  requirements used in Katrina that were used in prior
5  disasters.
6      BY MR. PENOT:
7      Q. Okay. And in particular were they used in
8  the 2004 hurricane season in Florida to which you
9  responded?
10     A. To my knowledge, yes, sir.
11     Q. Okay. Were you aware during or following
12 the 2004 hurricane response in Florida of any
13 problems, complaints that made their way to FEMA
14 concerning that process or that blocking of trailers?
15     MR. WOODS: Objection, lack of foundation,
16 vague.
17     A. I -- I am not aware of any other
18 complaints from Florida.
19     BY MR. PENOT:
20     Q. Just briefly, could you explain to me the
21 nature of the interactions you would have had or
22 opportunities you would have had to observe Fluor

Page 201

1  Enterprises Inc.'s performance in the Hurricane
2  Katrina, Rita response?
3      MR. MILLER: Objection, vague, narrative.
4      Go ahead.
5      MR. WOODS: Join in the objection.
6      A. I worked very closely with individuals
7  from Fluor. I made visits to -- to Fluor's staging
8  areas, and I made visits to sites where units were
9  already -- or units were installed or being
10 constructed for installation.
11     BY MR. PENOT:
12     Q. And did you during the course of your work
13 in responding to Hurricane Katrina and as a result of
14 those observations form any opinion concerning the
15 quality of Fluor's work?
16     MR. MILLER: Objection, foundation --
17     MR. WOODS: Same objection.
18     MR. MILLER: -- calls for expert
19 testimony.
20     Go ahead.
21     A. I did -- you know, I looked at the work
22 and -- and -- as well as participating with other

Page 202

1  individuals, and I did not receive any complaints of
2  their performance.
3      BY MR. PENOT:
4   Q.  Did you have any complaints concerning
5  their performance?
6   A.  I did not.
7   Q.  Were you satisfied with their performance?
8   A.  Yeah, I was myself personally.
9   Q.  Okay.  What -- do you remember an issue
10 with -- is it the department of -- the Louisiana
11 department of -- is it health and hospitals?
12     I may have the -- the name of the agen- --
13 the state agency wrong, but do you remember the issue
14 of P-traps arising at some point following Hurricane
15 Katrina in connection with the installation of travel
16 trailers in Louisiana?
17  A.  I do recall the incident.  I did not have
18 intimate knowledge or intimate involvement in that
19 issue, but I do recall it.
20  Q.  Just very, very briefly, do -- do you
21 recall what the issue is?
22     What is a P-trap, or do you know?

Page 203

1   A.  I do know what a P-trap is.
2   Q.  Okay.
3   A.  And the issue was whether a P-trap had to
4  be installed above ground prior to going into the --
5  or an external to the unit P-trap --
6   Q.  And --
7   A.  -- being installed.
8   Q.  And correct me if I'm -- I'm wrong, but it
9  refers simply to the shape of piping used in a
10 plumbing insert system?
11  A.  Yes, sir.
12  Q.  Okay.
13  A.  To reduce odors.
14  Q.  Pardon?
15  A.  To reduce odors.
16  Q.  And is it a health issue to -- at least to
17 the Louisiana department of health and hospitals, was
18 it?
19  A.  I don't -- I don't recall.
20  Q.  Okay.  Are you familiar with Fluor's
21 response when that issue was raised?
22  A.  Very vaguely.

Page 204

1   Q.  Tell me what you know, then.
2   A.  I know that they went out and any -- any
3  request to change or upgrade or fix an issue, Fluor
4  responded to it.
5   Q.  And -- and that's how they responded to
6  the P-trap issue; is that right?
7   A.  Yes, sir.
8   Q.  Okay.  And they had to go back and
9  retrofit a number of installations to do that, did
10 they not?
11  A.  That is my understanding, yes, sir.
12  Q.  What -- do you recall the LP gas
13 commission issues concerning inspection?
14  A.  I do recall that as well.
15  Q.  Okay.  And "LP" gas is liquefied petroleum
16 gas?
17  A.  Yes, sir.
18  Q.  And that was the source for cooking --
19 what was it used for in these travel trailers?
20  A.  Cooking, heating, and heating of water.
21  Q.  And just very generally, what was the --
22 what was the issue with respect to LP gas?

Page 205

1   A.  The issue was, is that Louisiana wanted to
2  inspect and approve every single gas hookup.
3   Q.  And did Fluor -- was Fluor called upon to
4  respond to those issues raised by the Louisiana gas
5  commission?
6   A.  Yes, sir --
7   Q.  And --
8   A.  -- to my knowledge.
9   Q.  And was that a safety issue according to
10 the Loui- -- at least according to the -- the
11 Louisiana LP gas commission?
12  A.  That is my understanding, is that that was
13 a safety issue and that individuals who hooked up the
14 units had to be certified.
15  Q.  Okay.  And was Fluor Enterprises called
16 upon to respond?
17  A.  Fluor Enterprises was called upon to
18 respond to that, yes, sir.
19  Q.  And what did they do and --
20  A.  They -- FEMA could not certify -- pay to
21 certify the inspectors.  We -- we weren't a company.
22 And Fluor certified -- they had individuals who they