UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-5"<br><br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |
| THIS DOCUMENT IS RELATED TO:<br>*Charlie Age, et al v. Gulf Stream Coach, Inc., et al, No. 09-2892* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION BASED UPON
<u>NO ANALOGOUS PRIVATE LIABILITY</u>**

**MAY IT PLEASE THE COURT:**

The defendant United States/FEMA has moved to dismiss the FTCA claims of plaintiff Alana Alexander, individually and on behalf of her son Christopher Cooper, once again. Couched as relief available under FRCP 12(b)(1) and 12(h)(3), or, alternatively, 56, defendant argues that the Court lacks subject matter jurisdiction over these claims because a Louisiana statute, LSA-R.S. 29:733.1, precludes the analogous private liability under Louisiana law which must be shown in order for plaintiff to prevail on her FTCA claims. The course of reasoning taken by the United States in this regard is a strained and tortured one, given the nature, scope and applicability of the Louisiana statute in question. The arguments presented in support of the motion, in fact, depend upon an interpretation of the statute which invites absurd consequences, and therefore cannot be an interpretation adopted as a matter of law. For the reasons that follow,

no subject matter jurisdiction or summary judgment dismissal can be justified by the United States in connection with this latest motion practice on its behalf.

I.      AS A LIMITATION OF LIABILITY STATUTE, LSA-R.S. 29:733.1 SHOULD BE STRICTLY CONSTRUED AND NARROWLY APPLIED

It is well-established Louisiana law that statutory provisions invoked by a party to operate in derogation of substantive tort rights and remedies, must be strictly construed and narrowly applied. *See Martin Robin, III v. United States of America*, No. 04-2230, 2006 WL 2547984, 7/17/06 (EDLA) [copy of decision attached as Exhibit 1].

This is important to recognize at the outset in addressing the Government's motion. More specifically, the issue at hand is not the scope of sovereign immunity or the extent of the Government's waiver of same. The United States has waived sovereign immunity to the extent plaintiffs' claims proceed under the FTCA. It also has been established through two separate rulings on repeat motions brought by the United States under the discretionary function doctrine, that there remain viable plaintiff claims herein notwithstanding discretionary function immunity. The question now presented, then, is not immunity, but whether there is a specific limitation on liability as to those actions and inaction for which the United States is not immune. The Louisiana statute (LSA-R.S. 29:733.1) invoked by the United States would limit such liability by making gross fault a prerequisite for plaintiff's recovery of damages, as an exception to and in derogation of the general tort standard of negligent conduct.

An apt analogy is found in the case law dealing with Louisiana's recreational land use statutes, which, like 29:733.1, were enacted to induce private land owners to make their property available for societal good without fear of being sued. The case law under these statutes

confirms that, being in derogation of a natural or common right, the statutes are subject to strict interpretation and should not be extended beyond their obvious meaning. *See, e.g., Ramos v. State, ex rel. Dept. of Transp. and Development*, Case No. 2007-851 (La. App. 3rd Cir., 2/6/08), 977 So.2d 1066, *reh. p. den'd*, *writ den'd*, 2008-1074 (La. 9/26/08), 992 So.2d 986.

II. **AS THE UNITED STATES ITSELF EMPHASIZES, THE QUESTION PRESENTED IS WHETHER A "PRIVATE PERSON" WOULD BENEFIT FROM THE PROVISIONS OF LSA-R.S. 9:733.1, IF THAT PRIVATE PERSON ENGAGED IN THE CONDUCT AND ACTIVITIES OF FEMA WHICH ARE THE SUBJECT OF PLAINTIFF'S CLAIMS HEREIN**

The limitation of liability statute upon which the defendant relies has a companion immunity statute which more logically would apply to the conduct of FEMA which is at issue herein. Under LSA-R.S. 29:735, no state or governmental agency engaged in emergency preparedness and response activities may be held liable as a result of same, except in cases of willful misconduct. *See* LSA-R.S. 29:735A(1). The United States, however, has not invoked these statutory provisions which are applicable to <u>governmental</u> activity, because of jurisprudence holding that the provisions of LSA-R.S. 29:735 do not apply to or limit the liability of <u>federal</u> agencies. *See Robin v. Untied States of America, supra*.

Directing the Court's attention to 29:733.1, a less obviously-applicable companion statute limiting the liability of <u>non-governmental</u> entities, the United States reasons that doing so is consistent with the rule that its liability under the FTCA must be analogous to the liability of a "private individual" or "private person acting under similar circumstances." *See* Defendant Memorandum in Support of Motion (Doc. 2733-2), at pp. 8-10. Plaintiff completely agrees, and respectfully submits that, in pursuing this stratagem to avoid adverse case law under the more obvious statute and seek the protection of a statute dealing with non-governmental activities, the

United States requires that there be an interpretation of LSA-R.S. 29:733.1 which is patently absurd in consequence. If it is the defendant's position that LSA-R.S. 29:733.1 applies to FEMA in that FEMA's FTCA liability must be analogous to the actions of the kind of private person or individual for whose benefit this statute is written, it quickly becomes clear that no actions or conduct by a private individual analogous to FEMA's actions herein could ever justify limiting that person's liability pursuant to the provisions of 29:733.1.

**III.     FEMA DID NOT PROVIDE EMERGENCY HOUSING TO PLAINTIFFS ON A PURELY VOLUNTARY BASIS AND WITHOUT COMPENSATION**

As applied to a private person (or even private corporate entity), the provisions of LSA-R.S. 29:733.1 limit the liability of any such person or entity who "<u>voluntarily</u> and <u>without compensation</u>" provides property for shelter during an emergency. FEMA did no such thing with respect to the provision of Stafford Act housing after Hurricane Katrina. First, although the United States emphasizes that recipients of the housing assistance paid no money for receiving the assistance, this is only true in the direct, payment-to-FEMA sense. It is <u>not</u> true in the broader sense, because the housing provided by FEMA under the Stafford Act obviously was paid for through tax revenue. Hence, for example, in the July 7, 2009 deposition of David Garratt, Acting Deputy Administrative of FEMA (and the highest-ranking FEMA official deposed to date in this litigation), Mr. Garratt conceded that the disaster victims who received emergency housing after Hurricane Katrina, being taxpayers themselves, obviously made some monetary contribution through their taxes to the funding of their own housing assistance. *See* Depo. of Garratt at p. 37 [excerpt attached as Exhibit 2]. A private individual enjoying the protection of LSA-R.S. 29:733.1 would be someone who received absolutely no compensation

for furnishing housing to a disaster victim. If analogized to FEMA in this case, however, such a private person could not be seen as uncompensated for making property available if in doing so he relied on taxpayer-contributed funds, including the taxes paid by disaster victims themselves.

Neither can it be said that FEMA acted "voluntarily" within the meaning of the statute as it would be applied to a private individual. The purpose of the statute is to protect a "Good Samaritan" who, on a clearly voluntary and altruistic basis, steps forward in an emergency to help shelter a disaster victim by making his own property available. But the source and motivation of FEMA's conduct in this case was not pure altruism. Rather, FEMA is the agency of our federal government which is legally charged with responding to designated emergencies pursuant to the provisions of the Stafford Act.

In the same way, while a private person or entity voluntarily providing housing within the meaning of 733.1 would not be expected to adhere to any particular regulatory or legislative guideline in doing so, it already has been established in this case that FEMA officials consciously and deliberately undertook to provide "safe and habitable" housing as emergency assistance under the Stafford Act. This Court has not characterized this mandate as specific enough to overcome plaintiff's argument that the discretionary function immunity would not apply to the act of choosing travel trailers as emergency housing. Nevertheless, plaintiff respectfully incorporates all of the prior cited testimony and documentary evidence in connection with the discretionary function motion practice, which establish that FEMA officials themselves considered "safe and habitable housing" to be the agency's regulatory and policy objective in this case. Nothing like this would be remotely true in the case of a private individual choosing to furnish shelter to disaster victims on a voluntary, uncompensated basis during an emergency.

Indeed, the "gross fault" limitation of liability extended by the statute is indicative of an intent to largely relieve the owner of safety or habitability standards.

Anticipating such an argument, and straining to characterize FEMA's legislatively-guided and public policy-driven actions under the Stafford Act as the kind of purely "voluntary" altruism contemplated by 733.1, the United States cites the Fifth Circuit case of *Ridgley v. FEMA*, 512 F.3d 727 (5th Cir. 2008). It suggests that this decision demonstrates that FEMA did act "voluntarily" herein, because FEMA was found to have no affirmative mandate or duty to provide housing under the Stafford Act or pertinent regulations.

In the first place, *Ridgley* is factually distinct in an important way. In that case, plaintiffs were arguing that they had a property right vested by way of FEMA's rental assistance program, as opposed to FEMA's provision of housing as shelter to disaster victims. Moreover, what the United States fails to disclose about *Ridgley*, is that the Fifth Circuit in that case did not feel it had sufficient information or a sufficient record to resolve the question whether plaintiff's property interest/entitlement to rental assistance from FEMA indeed

> might arise from "rules or understandings" created by an agency's policies or practices, even in the absence of explicitly mandatory statutory or regulatory language.

512 F.3d at 739 (citations omitted). In fact, an ultimate holding in *Ridgley* was that

> [w]hether FEMA, by its policies or practices, has created a property interest in continued rent assistance is a fact-intensive question, and, given the limited factual development below, one we cannot answer.

*Id.* at 740.

Plaintiff would go further than this in regard to FEMA's housing (vs. rent payment)

assistance. This Court can conclude from the present record that FEMA's policies and practices in furnishing travel trailers as emergency housing were guided and directed by an acknowledged policy objective to provide "safe and habitable" housing to disaster victims. That the Court did not find this "safe and habitable" mandate specific enough for purposes of ruling on discretionary function immunity, is not to say that the Court should overlook the logical distinction between the voluntary acts of a private person offering housing within the meaning of 29:733.1, and the conduct of FEMA in providing safe and habitable emergency housing pursuant to the Stafford Act.

The Court's attention also is directed to the case of *McWaters v. FEMA*, 436 F.Supp. 802 (E.D. La. 2006). In this lengthy and thorough discussion of FEMA's role and responsibility under the Stafford Act, Judge Stanwood Duval aptly observed that:

> FEMA's discretion in providing assistance under the Stafford Act is tempered in many important ways. Firstly, by FEMA's own admission, the agency has no discretion regarding provision of Temporary Housing Assistance to eligible persons and families.... Additionally, while the ultimate resources allocated to FEMA from the federal government and Congress may be finite in monetary amount, its provision of those resources must be done...equitably under the law and in accordance with regulations [as] to 'insure that the distribution of supplies, the processing of applications, and other relief and assistance activities shall be accomplished in an equitable and partial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, or economic status....'

436 F.Supp. at 817. Judge Duval in other places of his analysis returns to this same basic point, i.e., that once a person is determined to be eligible for emergency housing under the Stafford Act, FEMA must (not may) provide housing assistance to the individual, and also must do so according to certain guidelines, rules, and regulations, importantly including the requirement to

provide and allocate housing assistance in a non-arbitrary and non-discriminatory manner. Such regulatory guidance would, of course, be non-sensical in the attempted analogy to a private "Good Samaritan" who has stepped forward to voluntarily and without remuneration make his property available to shelter a storm victim during an emergency.

IV.     **FEMA DID NOT PROVIDE EMERGENCY HOUSING TO PLAINTIFFS "DURING [AN] ACTUAL...EMERGENCY"**

The strictly-construed durational scope of the activity covered under 733.1 is important, because it again demonstrates the inapplicability of the statute to the action of FEMA which is at issue in this litigation. The statute unambiguously limits liability for injury occurring on or about the furnished property or premises "during the actual, impending, mock, or practice emergency...." The United States' argument that extending the officially-declared "state of emergency" in Louisiana after Hurricane Katrina under various directives and decrees of State officials, necessarily means that 29:733.1 applies to, for example, a person like Alana Alexander who first received her travel trailer in May 2006, <u>eight to nine months</u> after the storm. The argument is a specious one. The provisions of 29:733.1 clearly protect as to harm not commensurate with an officially-designated "state of emergency," but <u>during</u> an "<u>actual</u>...emergency." This is an appropriate durational limitation in derogation of the legal rights and remedies of injured persons.

As a funded government agency, FEMA undertook the formal process of determining eligibility and then allocating travel trailers to numerous recipients of housing assistance over an extended period of time. There is no logical parallel to a private person entitled to limited liability under 733.1 only as to injuries which occur "during" an "actual" emergency.

V.  **THE STATUTE DOES NOT APPLY TO FEMA BECAUSE THE CLAIMS AGAINST FEMA HEREIN ARE NOT PREDICATED ON FEMA'S STATUS AS A PROPERTY OWNER**

It is plaintiffs' contention that FEMA failed to properly respond to an emerging public health crisis and, relying on legal counsel, chose not to disclose important information to actual and prospective trailer occupants about the dangers of formaldehyde exposure in their travel trailers. In some (perhaps many or most) cases, FEMA may not have even purchased or owned a given travel trailer at the time of this alleged misconduct as to the plaintiff. But, regardless of that possibility, plaintiffs' theory of fault is not based on FEMA's status as owner, but on FEMA's role in withholding information it had obtained about the dangers of formaldehyde in travel trailers.

This again illustrates the strained analogy attempted through this motion, which ultimately invites the Court to conclude that all of the claims and theories of fault urged against FEMA herein can be limited in such a way as to be analogous to claims against a private person or entity making property he or it owns, available to disaster victims. The provisions of 29:733.1 are intended to protect persons or entities <u>as owners</u> of property. FEMA, however, only became an owner of travel trailers by virtue of using them to provide assistance under the Stafford Act, and it is not that provision of trailers as an owner for which FEMA now remains liable. The statute seeks to limit the liability of an altruistic owner who has made his property available for emergency use. That intended scenario simply does not fit the facts of a tort case against FEMA which is based on FEMA's misconduct is independent of its status as an owner of the trailers.

VI.  **EVEN PROCEEDING AS A CASE OF GROSS FAULT, PLAINTIFFS' FTCA CASE IS NOT SUBJECT TO DISMISSAL**

Given the nature of plaintiffs' contention that FEMA chose to rely on legal strategies rather than prioritize public health concerns, the question whether this amounts to "gross fault" under 29:733.1 cannot be resolved by motion practice or as a matter of law.  As fact-finder in the FTCA case, this Court should resist the United States' invitation to prejudge the evidence of FEMA's fault.

Even if 29:7331 applied, therefore, the United States cannot prevail on the motions presented.

## CONCLUSION

As the United States itself acknowledges in the memorandum in support of its motion, Article 9 of the Louisiana Civil Code only requires a Court to limit its interpretative analysis to the "four corners" of a statute, when doing so would "not lead to absurd consequences...." Art. 9, La. Civ. Code.  Strictly and narrowly interpreting this limitation-of-liability statute in consideration of the United States effort to apply its protective language to FEMA under the "private person analogy" of the FTCA, the Court would indeed arrive at an absurd outcome.  No private person doing or failing to do what FEMA did or failed to do in connection with this litigation, could ever be said to fall within the meaning and scope of this statute.  The private person to which the statute applies would have to act voluntarily and without compensation, would be protected only as to personal injury claims occurring during an actual emergency, and would be suable in his capacity as a property owner.  Here, in contrast, FEMA did not act "voluntarily," did not proceed "without compensation," is not sued for personal injuries occurring during the actual emergency of Hurricane Katrina, and is not sought to be held liable for conduct predicated upon the ownership of travel trailers.

The Court therefore must consider the intent and underlying exposure of 733.1 in addressing this motion.  When it does so, the obvious objective of the statute is in no way furthered by limiting the liability of FEMA to gross fault.  Such a limitation will not encourage "Good Samaritan" behavior, because FEMA's further involvement in emergency response is a matter of law, not voluntary altruism.  Indeed, imposing a "gross fault" limitation of liability on plaintiffs' FTCA case, especially in light of the nature and scope of the discretionary function immunity already conferred upon FEMA in this matter, would be inconsistent with the requirement of the FTCA that FEMA be held accountable in tort just as a private citizen would be held accountable under similar circumstances.

For these reasons, the United States' motion should be denied.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:  s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:     504/522-2304
Facsimile:     504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163

        Telephone:   504/522-2304
        Facsimile:   504/528-9973
        jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'**
**STEERING COMMITTEE**
    ANTHONY BUZBEE, Texas # 24001820
    ROBERT M. BECNEL, #14072
    RAUL BENCOMO, #2932
    FRANK D'AMICO, JR., #17519
    MATT MORELAND, #24567
    LINDA NELSON, #9938
    DENNIS REICH, Texas #16739600
    MIKAL C. WATTS, Texas #20981820

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

        s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471