David Edward Garratt
Washington, DC
July 7, 2009

Page 1

```
 1                UNITED STATES DISTRICT COURT

 2                   DISTRICT OF LOUISIANA

 3                     NEW ORLEANS DIVISION

 4    In Re:  FEMA Trailer    )

 5    Formaldehyde Products   ) MDL No. 1873

 6    Liability Litigation    )

 7

 8                                 Washington, D.C.

 9                                 Tuesday, July 7, 2009

10    Videotape Deposition of DAVID EDWARD GARRATT, called

11    for examination by counsel for Plaintiffs in the

12    above-entitled matter, the witness being duly sworn

13    by CHERYL A. LORD, a Notary Public in and for the

14    District of Columbia, taken at the offices of NELSON

15    MULLINS RILEY & SCARBOROUGH LLP, 101 Constitution

16    Avenue N.W., Suite 900, Washington, D.C., at 9:07

17    a.m., and the proceedings being taken down by

18    Stenotype by CHERYL A. LORD, RPR, CRR.

19

20

21

22
```

Page 34

1  A. (Nodding head.)
2  Q. Was this statement a part of the document
3  when you originally --
4  A. I don't remember.
5  Q. -- received --
6     You go on to state after that: Disaster
7  victims have not been charged for their use of the
8  EHUs, nor have they been required to pay any cost
9  associated with the installation, maintenance, or
10 removal of the units.
11    What is the significance of that statement
12 in this declaration?
13 A. Other than, again, painting the picture of
14 how we provide these units and the conditions under
15 which they're provided to disaster victims.
16 Q. So in your mind, it's important to note
17 that the victims have received something at cost --
18 at no cost to them, and they've not been required to
19 pay any costs associated with the installation,
20 maintenance, or removal of the units.
21    Does that mean that they should have no
22 right to complain about what they've received?

Page 35

1  A. No.
2     What it means is, these units are our
3  responsibility.
4  Q. So this statement basically means -- what
5  you're trying to convey is that this is FEMA's
6  responsibility.
7     It has no other -- no other meaning
8  besides that?
9  A. That's correct.
10 Q. And this is just again to reiterate that
11 the Stafford Act enables FEMA to provide at direct
12 request of the state whatever emergency assistance is
13 necessary for victims?
14 A. I'm sorry.
15    Say that again.
16 Q. I'm trying to get to -- this -- this
17 particular statement, and you've just testified, is
18 this to say that FEMA has the authority due to
19 Stafford Act to provide and to -- to respond to
20 disasters, in this particular instance to provide
21 temporary emergency housing assistance to victims?
22    MR. MILLER: Objection, mischaracterizes

Page 36

1  the witness's testimony.
2  A. I'm still not sure I understand exactly
3  what you're asking. Let me try this.
4     As part of this declaration, it seems like
5  it's important to try to essentially lay the -- the
6  background for the operation that took place in the
7  Gulf Coast. And so this paragraph just briefly
8  summarizes what the disaster housing mission is in
9  terms of -- or -- or how it's provided, that
10 assistance is provided under the authority of the
11 Stafford Act, and it essentially says that these --
12 these units are provided at absolutely no cost to the
13 disaster victims and that we, the federal government,
14 are responsible for those units. That's our
15 responsibility.
16    BY MR. WOODS:
17 Q. You say, absolutely no cost, so -- but the
18 unit is actually paid for by -- by taxpayer money,
19 isn't it -- aren't they?
20 A. Right, as disaster victims.
21 Q. So the disaster victims as taxpayers,
22 they -- they ultimately do pay for the units.

Page 37

1  Correct?
2  A. I would say that's probably correct, that
3  they -- their taxes go to pay for those units, that's
4  correct, as does the rest of the United States
5  population.
6  Q. Absolutely, but you're not excluding the
7  disaster victims from -- they didn't get anything per
8  se absolutely free or at no cost to them?
9     MR. WOODS: Objection, calls for --
10 assumes facts not in evidence.
11 A. Nothing came out of their pockets in terms
12 of the requirements for this. They paid no
13 out-of-pocket costs for this.
14    BY MR. WOODS:
15 Q. At the time that the units were provided,
16 but again, it being funded by taxpayer money,
17 assuming that an individual is a taxpayer that
18 received an EHU, that there is some portion --
19 A. I'll concede the point.
20 Q. Okay. Let's get into talking specifically
21 about the reason we're here, and that's the
22 formaldehyde concerns in the EHUs.

**Page 54**

1  with that particular statement.
2      You only took issue with the statement
3  that FEMA believes this problem is not widespread; is
4  that correct?
5      A.  That certainly appears to be the case.
6      Q.  Okay.
7      THE VIDEOGRAPHER: Sir, we need to change
8  the tape.
9      MR. WOODS: Okay. We're going to go off
10 the record for a second.
11     THE VIDEOGRAPHER: We're going off the
12 record. The time on the video is 10:03 AM.
13     (Discussion off the record.)
14     THE VIDEOGRAPHER: This begins tape number
15 2 in the video deposition of David Garratt. The time
16 on the video is 10:09 AM. We are on the record.
17     BY MR. WOODS:
18     Q.  Mr. Garratt, back to the document we were
19 discussing. I want to bring you forward again to an
20 email from Price Roe.
21     It's on the first page, beginning on the
22 first page. And it's to David Garratt, John Philbin,

**Page 55**

1  Harvey Johnson, William Knocke, Robert Paulison, and
2  it's sent on Tuesday, July 25th, 2028, 2006, and it's
3  the revised info memo, dash, FEMA toxic trailers.
4      And this is in response to your email,
5  Price Roe writes back, and he begins by saying, would
6  it be more accurate to say?
7      Do you see that?
8      A.  Yep.
9      Q.  Okay. You go back down to his section on
10 media exposure. And again, if you look at the
11 sentence -- I believe it's the fourth sentence that
12 begins, following.
13     Do you see that?
14     A.  Yes.
15     Q.  Okay. It says: Following the MSNBC, dot,
16 com story that ran the weekend of July 22, media
17 attention in this story has increased though not
18 dramatically. While FEMA has not directly briefed
19 the secretary on this issue, believing it was being
20 appropriately handled by FEMA legal counsel and
21 FEMA's complaint resolution process.
22     Did I read that accurately?

**Page 56**

1      A.  You did.
2      Q.  Okay.
3      MR. MILLER: I'm going to object to that
4  document, incomplete. It goes on.
5      BY MR. WOODS:
6      Q.  If you go up, Mr. Garratt, to your email
7  in response to Price Roe's email you sent to him on
8  July 25th, 2006, at 9:10 PM. It's to Price Roe,
9  David Garratt, John Philbin, cc'ing Harvey Johnson,
10 William Knocke, Robert Paulison, John Daraujo, and
11 Kevin Souza, and it's regarding revised info memo,
12 dash, FEMA toxic trailers.
13     You say, yes, much better price; is that
14 correct?
15     A.  I did.
16     Q.  Okay. Again, you made no change or
17 comment to Mr. Roe's suggested language under, media
18 exposure.
19     Correct?
20     A.  I don't think I was reacting to that. I
21 was -- in fact, I can't even say I read that.
22     I was reading the paragraph that was

**Page 57**

1  immediately under, would it be more accurate to say.
2      BY MR. WOODS:
3      Q.  Okay. But you did see that sentence
4  under -- or that's media exposure?
5      A.  I can't say that I did.
6      Q.  But you did receive this email?
7      A.  Yes.
8      Q.  And you were asked to advise whether or
9  not he was capturing this correctly.
10     Correct?
11     A.  Right.
12     Q.  Okay.
13     A.  What I was responding to, however, was, I
14 don't believe I ever re-read that media exposure
15 bullet, because I think I thought that was just a
16 repeat from a previous message, and I was responding
17 when I said, yes, much better price, only to the
18 paragraph that begins, while the number of complaints
19 recorded by FEMA.
20     Q.  That's fine.
21     But you -- you didn't make any changes the
22 first time around to this media exposure bullet --