

**Kaltofen Challenge**

ANDREW WEINSTOCK to Amanda_Ballay@laed.uscourts.gov    08/19/2009 05:26 PM

Cc: "Gerald E. Meunier", Justin Woods, "Miller, Henry (CIV)", "Dinnell, Adam (CIV)", Tim Scandurro, "CPenot@midrid.com", "dkurtz@bakerdonelson.com", "RSherburne@midrid.com"

History:    This message has been replied to and forwarded.

Amanda,

We had the same difficulty outlining exactly what Kaltofen was opining about. The best explanation is that Kaltofen has one main opinion that is supported by several different "illustrations."

His main opinion seems to be that: Indoor formaldehyde is related to temperature and humidity. As interior temperatures and humidity increase, the amount of formaldehyde released into indoor air likewise increases. (Affidavit; page 4, paragraph 2).

This is the underlying theme throughout Kaltofen's Affidavit and it is what Kaltofen described in his deposition as an axiomatic principle. This is common knowledge and we do not need an expert to demonstrate this point. The remainder of Kaltofen's Affidavit, however, offers several different explanations/illustrations of this theory.

First, he cites certain studies that discuss the temperature and humidity dependence of formaldehyde. Those studies include: CDC's July 2008 report (Affidavit; page 4; paragraph 4), Rischolm-Sundman study (Affidavit; page 4; paragraph 3), and Zhang study (Affidavit; page 4; paragraph 2). Also cited was the standard reference by the AIHA Exposure Assessment Committee (Affidavit; page 4; paragraph 5 - top of page 5).

Second, Kaltofen demonstrates the temperature and humidity dependence of formaldehyde through the use of his database. He took the results of 10,499 test results collected by a variety of people and calculated the mean, median, and the variance. He plotted these data points on a series of graphs to demonstrate that (as expected) samples collected in the winter months showed lower concentrations than those collected in the summer months. (Affidavit; pages 6; paragraphs 3-6). The graphs are included on page 7 of Kaltofen's affidavit.

Third, Kaltofen specifically refers to the samples collected by BCD and CDC (these were also included in the database) to further demonstrate the same theory that hotter weather equals higher concentrations and colder weather equals lower concentrations. (Affidavit; page 9). He returns to an analysis of the CDC data in section 4 of his Affidavit - Statistical Sampling. The focus of this section appears to have two purposes: (1) to support the size of his database as being sufficient to establish a 95% confidence interval and, (2) that statistical sampling is superior to testing an entire dataset because it can encompass the increase in formaldehyde release as temperatures rise. (Affidavit; pages 12 - 14).

Finally, he focuses specifically on the Alexander EHU to demonstrate the same principle: temperature and humidity dependence of formaldehyde. Kaltofen

begins by discussing the data collected by W.D. Scott, which he refers to as the "uncorrected January 2008 data" in section 2.b of his Affidavit. (Affidavit; pages 9 - 11). His point is no different than before - samples collected in the winter equal lower concentrations that samples collected in the summer months. He attempts to "illustrate" this point in two ways: (1) by introducing the May 2009 data which has already been excluded by this Court (Affidavit; page 9, paragraph 1 and page 10, paragraph 3-4) and, (2) performing ASTM correction equations purporting to correct actual temperature and humidity conditions for standardized conditions designed for a large chamber test. (Affidavit; pages 10; 14-15).

-----Original Message-----
From: Amanda_Ballay@laed.uscourts.gov [mailto:Amanda_Ballay@laed.uscourts.gov]
Sent: Monday, August 17, 2009 9:15 AM
To: jwoods@gainsben.com; gmeunier@gainsben.com; henry.miller@usdoj.gov; ANDREW WEINSTOCK; dkurtz@bakerdonelson.com; tbuzbee@txattorneys.com; ptaaffe@txattorneys.com; mcwatts@wgclawfirm.com; bobh@hmglawfirm.com; JOSEPH G. GLASS; tim@scanlayr.com; CPenot@midrid.com; Rsherburne@midrid.com; dgianna@midrid.com; Adam.Dinnell@USDOJ.Gov; jonathan.waldron@usdoj.gov
Subject: FEMA MDL

Counsel,

Regarding the Gulf Stream Motion in Limine to Exclude Expert Testimony of Marco Kaltofen, PE (Rec. Doc. 2271), Judge Engelhardt has requested that the actual opinions in Kaltophen's expert report (Exhibit A to Rec. Doc. 2271) be highlighted.

Can one of you please segregate out the opinions contained in the report for Judge Engelhardt's review? This can be done any number of ways, including reference to the page and paragraph number.

Thanks.
Amanda

Amanda J. Ballay
Law Clerk to the Hon. Kurt D. Engelhardt United States District Court, Eastern District of Louisiana 500 Poydras Street, Room C-367
Telephone: (504) 589-7645
Facsimile: (504) 589-4457



**RE: Kaltofen Challenge**

Justin Woods to: 'Amanda_Ballay@laed.uscourts.gov', ANDREW WEINSTOCK, Dinnell, Adam (CIV), CPenot@midrid.com, dkurtz@bakerdonelson.com, Gerald E. Meunier, Miller, Henry (CIV), RSherburne@midrid.com, Tim Scandurro

08/20/2009 11:48 AM

Cc: Denise Martin

History: This message has been forwarded.

Amanda,

Below are excerpts from the Kaltofen report that represent his opinion:

1  p.3 par. 3

Although formaldehyde can come from sources unrelated to EHUs, these units have higher levels of formaldehyde than outdoor air or air in site-built homes. Outdoor air in unpopulated areas can be expected to have 0.2 parts per billion, (ppb), of formaldehyde.  Suburban areas may have 2 to 6 ppb.  Heavily populated or industrial areas may have 10 to 20 ppb.   (Reference: ATSDR 1999)

2  p.4 par. 2

Indoor formaldehyde concentration is related to temperature and humidity.  As interior temperatures increase within these housing units, the amount of formaldehyde released into indoor air likewise increases. Researchers found that formaldehyde loss from particle boards increased by a factor of 2.3 times with a 10 degree Celsius rise in temperature.  The increase was a factor of 3.5 times for medium density fiber board.  (Zhang 2007, page 3209, starting at 30 deg. C or 86 deg. F.)

3  p.5 par. 1

steady state formaldehyde concentration is proportional to formaldehyde generation divided by volumetric airflow of ventilation. ($C_{air} = G/Q$)

4  p.6 par.5

Of the 10,499 records fully reviewed at the time of this affidavit, the median result was 0.205 parts per million, (ppm), of formaldehyde in indoor air.  The mean was 0.368 and the variance was 0.197.

5 p.9 par.2

CDC produced a table, (Table 2. Formaldehyde Levels by Brand), in the report which noted that the geometric mean of formaldehyde in all 121 sampled Gulfstream travel trailers was 0.103 parts per million (PPM), and a range of 0.003 to 0.58 PPM.  CDC qualified its results saying, "Our study was done in the winter months of December 2007 through January 2008, when people had already lived in the trailers and mobile homes for two years. The formaldehyde level was probably higher in newer trailers and mobile homes and when the

weather was warmer."

6 p.11, par. 3

The trailer bedroom nightstand result, 0.074 PPM formaldehyde, is a conservative value of her actual exposure.

-----Original Message-----
From: Amanda_Ballay@laed.uscourts.gov [mailto:Amanda_Ballay@laed.uscourts.gov]
Sent: Thursday, August 20, 2009 9:42 AM
To: ANDREW WEINSTOCK; Dinnell, Adam (CIV); CPenot@midrid.com; dkurtz@bakerdonelson.com; Gerald E. Meunier; Miller, Henry (CIV); Justin Woods; RSherburne@midrid.com; Tim Scandurro
Subject: Re: Kaltofen Challenge

Would Plaintiffs care to weigh in on this? If so, such response must be emailed to me by 5:00 p.m. today. Thanks. Amanda

| | | |
|---|---|---|
| ANDREW WEINSTOCK <andreww@duplass.com> | | To "Amanda_Ballay@laed.uscourts.gov" <Amanda_Ballay@laed.uscourts.gov> |
| 08/19/2009 05:26 PM | | cc "Gerald E. Meunier" <gmeunier@gainsben.com>, Justin Woods <jwoods@gainsben.com>, "Miller, Henry (CIV)" <Henry.Miller@usdoj.gov>, "Dinnell, Adam (CIV)" <Adam.Dinnell@usdoj.gov>, Tim Scandurro <Tim@scanlayr.com>, "CPenot@midrid.com" <CPenot@midrid.com>, "dkurtz@bakerdonelson.com" <dkurtz@bakerdonelson.com>, "RSherburne@midrid.com" <RSherburne@midrid.com> |
| | | Subject Kaltofen Challenge |

Amanda,

We had the same difficulty outlining exactly what Kaltofen was opining about. The best explanation is that Kaltofen has one main opinion that is supported by several different "illustrations."

His main opinion seems to be that: Indoor formaldehyde is related to temperature and humidity. As interior temperatures and humidity increase, the amount of formaldehyde released into indoor air likewise increases. (Affidavit; page 4, paragraph 2).

This is the underlying theme throughout Kaltofen's Affidavit and it is what Kaltofen described in his deposition as an axiomatic principle. This is common knowledge and we do not need an expert to demonstrate this point. The remainder of Kaltofen's Affidavit, however, offers several different explanations/illustrations of this theory.

First, he cites certain studies that discuss the temperature and humidity dependence of formaldehyde. Those studies include: CDC's July 2008 report (Affidavit; page 4; paragraph 4), Rischolm-Sundman study (Affidavit; page 4; paragraph 3), and Zhang study (Affidavit; page 4; paragraph 2). Also cited was the standard reference by the AIHA Exposure Assessment Committee (Affidavit; page 4; paragraph 5 - top of page 5).

Second, Kaltofen demonstrates the temperature and humidity dependence of formaldehyde through the use of his database. He took the results of 10,499 test results collected by a variety of people and calculated the mean, median, and the variance. He plotted these data points on a series of graphs to demonstrate that (as expected) samples collected in the winter months showed lower concentrations than those collected in the summer months. (Affidavit; pages 6; paragraphs 3-6). The graphs are included on page 7 of Kaltofen's affidavit.

Third, Kaltofen specifically refers to the samples collected by BCD and CDC (these were also included in the database) to further demonstrate the same theory that hotter weather equals higher concentrations and colder weather equals lower concentrations. (Affidavit; page 9). He returns to an analysis of the CDC data in section 4 of his Affidavit - Statistical Sampling. The focus of this section appears to have two purposes: (1) to support the size of his database as being sufficient to establish a 95% confidence interval and, (2) that statistical sampling is superior to testing an entire dataset because it can encompass the increase in formaldehyde release as temperatures rise. (Affidavit; pages 12 - 14).

Finally, he focuses specifically on the Alexander EHU to demonstrate the same principle: temperature and humidity dependence of formaldehyde. Kaltofen begins by discussing the data collected by W.D. Scott, which he refers to as the "uncorrected January 2008 data" in section 2.b of his Affidavit. (Affidavit; pages 9 - 11). His point is no different than before - samples collected in the winter equal lower concentrations that samples collected in the summer months. He attempts to "illustrate" this point in two ways: (1) by introducing the May 2009 data which has already been excluded by this Court (Affidavit; page 9, paragraph 1 and page 10, paragraph 3-4) and, (2) performing ASTM correction equations purporting to correct actual temperature and humidity conditions for standardized conditions designed for a large chamber test. (Affidavit; pages 10; 14-15).

-----Original Message-----
From: Amanda_Ballay@laed.uscourts.gov
[mailto:Amanda_Ballay@laed.uscourts.gov]
Sent: Monday, August 17, 2009 9:15 AM
To: jwoods@gainsben.com; gmeunier@gainsben.com; henry.miller@usdoj.gov; ANDREW WEINSTOCK; dkurtz@bakerdonelson.com; tbuzbee@txattorneys.com; ptaaffe@txattorneys.com; mcwatts@wgclawfirm.com; bobh@hmglawfirm.com; JOSEPH G. GLASS; tim@scanlayr.com; CPenot@midrid.com; Rsherburne@midrid.com; dgianna@midrid.com; Adam.Dinnell@USDOJ.Gov; jonathan.waldron@usdoj.gov
Subject: FEMA MDL

Counsel,

Regarding the Gulf Stream Motion in Limine to Exclude Expert Testimony of Marco Kaltofen, PE (Rec. Doc. 2271), Judge Engelhardt has requested that the actual opinions in Kaltophen's expert report (Exhibit A to Rec. Doc. 2271) be highlighted.

Can one of you please segregate out the opinions contained in the report for Judge Engelhardt's review? This can be done any number of ways, including reference to the page and paragraph number.

Thanks.
Amanda

Amanda J. Ballay
Law Clerk to the Hon. Kurt D. Engelhardt United States District Court, Eastern District of Louisiana 500 Poydras Street, Room C-367
Telephone: (504) 589-7645
Facsimile: (504) 589-4457



**Kaltofen Challenge**

ANDREW WEINSTOCK to Amanda_Ballay@laed.uscourts.gov          08/21/2009 09:07 AM

Cc: Justin Woods, "Gerald E. Meunier", "Miller, Henry (CIV)", "Dinnell, Adam (CIV)", "dkurtz@bakerdonelson.com", "CPenot@midrid.com"

History:     This message has been forwarded.

Amanda,

This is in response to Justin's e-mail regarding Kaltofen's opinions. I am sure the court did not wish to promote an entire series of e-mails on the issue. You are welcome to either delete or ignore this e-mail.

This is why we requested that plaintiffs first identify exactly what Kaltofen's opinions were in his report. Kaltofen has basically cited a bunch of different studies and references and adopted them as his own. He does not have the qualifications to arrive at his own opinions.

1   p.3 par. 3

Kaltofen does not offer any expert opinions about outdoor air in unpopulated areas, suburban areas, or heavily populated or industrial areas. He just references ATSDR's position.

2   p.4 par. 2

Kaltofen opines about the indoor formaldehyde concentration and its relationship to temperature and humidity - a principle which he describes as axiomatic. In other words, there is no need for Kaltofen's expert opinion. He is relying on the work of others: (Zhang 2007, page 3209, starting at 30 deg. C or 86 deg. F.)

3   p.5 par. 1

It is the position of the American Industrial Hygiene Association, not Kaltofen (Kaltofen is not an industrial hygienist), that steady state formaldehyde concentration is proportional to formaldehyde generation divided by volumetric airflow of ventilation. ($C_{air} = G/Q$). Again, Kaltofen just adopted this formula and it is not even clear how he used it in this case. This is certainly not Kaltofen's opinion.

4   p.6 par.5

Kaltofen did a statistical analysis of a database of 10,499 records. He determined that median result was 0.205 parts per million, (ppm), the mean was 0.368, and the variance was 0.197. Gulf Stream thought Hewett was designated as plaintiff's statistical analyst Kaltofen is a civil engineer. Kaltofen's methodologies are expectedly flawed and are addressed in depth in Gulf Stream's motion in limine.

5 p.9 par.2

This is not Kaltofen's opinion.  It is the CDC study.

6 p.11, par. 3

Kaltofen is using the May 2009 data - excluded by the court.

Andy