UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER            * | | MDL NO. 1873 |
|     FORMALDEHYDE         * | | |
|     PRODUCTS LIABILITY    * | | SECTION: N(5) |
|     LITIGATION                  * | | |
|                                             * | | JUDGE: ENGELHARDT |
| This Document Relates to: *Charlie Age, et al. v.*  * | | |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892  * | | MAG: CHASEZ |
|     **Relates to Plaintiffs, Alana Alexander**   * | | |
|     **and Christopher Cooper Only**          * | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF GULF STREAM COACH, INC'S
MOTION IN LIMINE TO EXCLUDE TESTIMONY OF MCGWIN,
TO EXCLUDE EVIDENCE OF IRRELEVANT MEDICAL CONDITIONS
AND TO EXCLUDE ANY REFERENCE TO CANCER**

Defendant, Gulf Stream Coach, Inc. ("Gulf Stream"), respectfully submits this memorandum in support of its Motion *in Limine* to Exclude Testimony of Dr. McGwin, to Exclude Evidence of Irrelevant Medical Conditions and to Exclude any Reference to Cancer.

### I.  FACTUAL BACKGROUND

This Multi-District Litigation is the consolidation of over five hundred state and federal toxic tort suits in which an estimated seventy thousand Plaintiffs claim to have inhabited emergency housing units ("EHUs") that were provided to them by the Federal Emergency Management Agency ("FEMA") as a result of the alleged uninhabitability of their residences due to Hurricanes Katrina and Rita. (Rec. Doc. 109, at ¶ 96).  On April 6, 2009, the Court ordered that plaintiffs Alana Alexander and her son, Christopher Cooper, would serve as bellwether plaintiffs against Gulf Stream in a trial scheduled for Sept. 14, 2009. (Rec. Doc. 1299).

Alana Alexander and Christopher Cooper (collectively, "Plaintiff") are named plaintiffs in the *Age* case (*Age, et al. v. Gulf Stream Coach, Inc. et al.*, Member Case No. 09-2892, Rec. Doc. 1). In part, Plaintiffs seek recovery for alleged physical and mental pain and suffering,

1

physical impairments and disability, medical expenses. (*Age*, Rec. Doc. 1, ¶ 117). Specifically, the *Age* plaintiffs claim exposure to the allegedly dangerous levels of formaldehyde (or threat thereof) in those EHUs. (*Age*, Rec. Doc. 1, at ¶ 23). On June 5, 2009, Plaintiff filed her Third Supplemental and Amended Complaint. (Rec. Doc. 1686). Within the amended Complaint, the Plaintiff re-stated her Prayer for Relief, asserting:

> Plaintiff respectfully amends the allegations with respect to damages in Paragraph 117 of the Original Complaint, as well as the allegations in Subparagraph 2 under the caption "Prayer for Relief" in the Original Complaint, in order to specify that she seeks compensatory damages herein for the following:
>
> a. plaintiff's physical pain and suffering;
>
> b. the physical pain and suffering of her minor son Christopher Cooper;
>
> c. plaintiff's mental anguish and emotional distress, including the fear of an increased risk of future serious disease both in her case and in the case of her minor son;
>
> d. the mental anguish and emotional distress of her minor son Christopher Cooper, including with respect to the fear of an increased risk of future serious disease;
>
> e. the past, continuing and future medical expenses of plaintiff and her minor son which have been necessitated by the injuries sustained herein, including costs for future medical treatment, services, surveillance, medical monitoring costs, and/or procedures to address physical and/or mental injuries from formaldehyde exposure which currently are manifest;
>
> f. the aggravation of plaintiff's minor son Christopher Cooper's preexisting respiratory condition;
>
> g. the impairment of future wage-earning capacity and/or daily life activities suffered, and to be suffered, by plaintiff's minor son Christopher Cooper; and
>
> h. plaintiff's loss of consortium based upon the injuries suffered by her minor son Christopher Cooper.

(*Id.* ¶ 17).

Throughout extensive discovery, Plaintiff's alleged physical and mental injuries from the purported excessive formaldehyde exposure in the EHU provided to her have been explored. Gulf Stream respectfully suggests that based on the discovery, the scope of the admissible evidence concerning alleged injuries must be limited to only relevant evidence. Specifically, Gulf Stream submits that the following evidence is irrelevant and more prejudicial than probative, and, therefore, must be excluded from presentation to the Jury: 1) the testimony of Plaintiff's Epidemiology/Causation expert, Dr. Gerald McGwin; 2) evidence regarding alleged potential physical injuries (and alleged potential mental anguish attendant thereto) purportedly related to excessive formaldehyde exposure, except eye/nose/throat irritation, headaches and aggravation of asthma; and 3) evidence concerning "cancer" and any alleged association between formaldehyde and cancer.

## II.  LEGAL STANDARD

Evidence is irrelevant, and therefore inadmissible, unless it has a tendency to make the "existence of any *fact that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence."  FED. R. EVID. 401 (emphasis added); *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 275 (5th Cir. 1998); *Jackson v. Johns-Manville Sales Corp.,* 750 F.2d 1314, 1318 (5th Cir. 1985).  Proposed evidence must give rise to more than a surmise or suspicion and must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *United States v. Tucker,* 345 F.3d 320, 327 (5th Cir. 2003) (quoting *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir. 1985)); *Moore,* 126 F.3d at 687.  "Evidence which is not relevant is inadmissible."  FED. R. EVID. 402; *United States v. Hays,* 872 F.2d 582, 586 (5th Cir. 1989).

**A.    MCGWIN'S TESTIMONY CONCERNS MEDICAL CAUSATION NOT AT ISSUE IN THE ALEXANDER CASE, RENDERING THE TESTIMONY IRRELEVANT[1]**

In part, Plaintiff asserts that she has been damaged because of the alleged increased risk of future disease (cancer) and because of the alleged the aggravation of Christopher Cooper's pre-existing asthma.  (Rec. Doc. 1686, ¶ 17).  In support of her damages claims, Plaintiff provided the reports of Gerald McGwin, Jr., Ph.D. ("McGwin") as an epidemiology expert in this case.  Exhibits "A" and "B," McGwin's August 20, 2008 and May 18, 2009 Reports, respectively.  In relation to this litigation, McGwin was initially retained by Plaintiff to examine the relationship between formaldehyde exposure and cancer, as well as non-cancer effects.  Exhibit "C," Deposition of McGwin dated 7/27/09, pp. 141-42.  Thereafter, McGwin was asked to perform a meta analysis of the relationship between formaldehyde exposure in children and asthma.  Exhibit "C," pp. 142-43.  However, Gulf Stream submits that McGwin's opinions on both of these topics are irrelevant to Plaintiff's claims.  First, McGwin's meta analysis concerned the relationship between formaldehyde exposure and the inducement of asthma, rather than aggravation of pre-existing asthma.  Thus, the analysis is simply irrelevant to the facts of this case.  Second, McGwin's cancer opinions admittedly relate to formaldehyde exposure levels exponentially larger than the exposure levels established in this case.  Thus, the prejudice that would result from the admission of his cancer opinions outweighs the irrelevant testimony's probative value.

    a.  McGwin's Asthma Opinions

As previously noted, Plaintiff claims, in part, that her son, Christopher Cooper, developed

---

[1]     Gulf Stream reserves its right to challenge the scientific basis for, and methodology underlying, McGwin's opinions.  However, Gulf Stream submits that the present Motion sufficiently establishes the irrelevance of McGwin's testimony, pretermitting the need for additional analysis.

an aggravation of a pre-existing respiratory condition.   (Rec. Doc. 1686, ¶ 17).  In support of Plaintiff's pre-existing asthma claim, McGwin opined:

> The objective of this systematic review was to quantify the association between formaldehyde exposure and children in asthma.  The pooled results from seven studies provided evidence of such an association and suggest that even modest exposure levels are associated with a significant increased risk of asthma in children.

Exhibit "B," at p. 3.

Importantly, McGwin's asthma opinions concern the relationship between formaldehyde exposure and the inception of asthma, rather than aggravation of pre-existing asthma.  Exhibit "C," at p. 55.  Consequently, the opinions are not relevant to Plaintiff's claims.

When deposed, McGwin clarified his opinions contained in his report.  McGwin testified:

> Q.   Okay.  Is -- so let me -- so you were looking at the question of does -- is formaldehyde exposure associated with onset of asthma?
>
> A.   Yes, sir.
>
> Q.   Not is formaldehyde exposure associated with aggravation of asthma?
>
> A.   That's correct.  I believe the studies are much more consistent with looking at the presence of asthma as opposed to the aggravation of symptoms.  Now, there have been studies that have done that.

Exhibit "C," at p. 55.

When discussing some of the studies on which he based his opinions, McGwin further testified:

> Q.   You did not evaluate whether asthma exacerbates -- I'm sorry, formaldehyde exposure exacerbates asthma.  That's not what you were charged with doing. Otherwise you mite [sic] have pulled this study, correct?
>
> A.   That's correct.

Exhibit "C, at p. 115.

Given that Plaintiff admittedly suffered from pre-existing asthma, McGwin's opinions concerning the relationship between formaldehyde and the onset of asthma is not relevant.  The

5

testimony is simply of no consequence to the determination of the action and is not sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. As such, it is inadmissible.

      b.  <u>McGwin's Cancer Opinions</u>

As previously noted, Plaintiff claims, in part, that she has an increased risk of future disease from her alleged formaldehyde exposure. (Rec. Doc. 1686, ¶ 17). In relation to her claims, Gulf Stream has filed several Motions for Summary Judgment. Specifically, Gulf Stream has filed Motions for Summary Judgment on Plaintiff's claims for her own mental anguish associated with Chris Cooper's fear of contracting illness or disease (Rec. Doc. 2582) and Plaintiff's own fear of developing cancer (both Alana and Christopher) (Rec. Doc. 2583). To the extent that these claims are allowed at the trial of this matter, Gulf Stream respectfully submits that portions of McGwin's testimony may be offered by it as evidence. Likewise, to the extent that Plaintiff's cancer experts', Patricia Williams' and James Kornberg's, unscientific opinions survive Gulf Stream's *Daubert* challenges, Gulf Stream reserves its right to use some of his testimony as trial evidence. However, to the extent that the cancer claims are excluded, McGwin's testimony concerning cancer is irrelevant.

In support of Plaintiff's cancer claim, Dr. McGwin opined:

> Formaldehyde is classified as a "known carcinogen" by the International Agency for Research on cancer (IARC) with specific reference to nasopharyngeal cancer. Based on published epidemiological research to date, it is my expert opinion that such a classification is warranted and that formaldehyde can cause nasopharyngeal cancer. With respect to other cancers, specifically leukemia and lung, pancreatic and brain cancer, there is evidence to suggest that formaldehyde plays an etiologic role in these diseases.

Exhibit "A," at p. 6.

When deposed, McGwin clarified these opinions. He confirmed that his cancer opinions only encompass leukemia, lung cancer, pancreatic cancer, brain cancer and

6

nasopharyngeal/sinonasal cancer. Exhibit "C," at p. 18. Regarding these cancers, other than nasopharyngeal, McGwin specifically testified that he cannot opinion that they are more probably than not caused by formaldehyde exposure. Exhibit "C," at p. 17-18. Even concerning nasopharyngeal cancer, McGwin, ***could not associate*** nasopharyngeal cancer to formaldehyde at the level present in Cooper's EHU. *Id.* at p. 131-32. McGwin agreed that at those levels, the epidemiology does not provide for an association with this form of cancer. *Id.* McGwin agreed:

> Q.   As we sit here today, at the levels people were exposed from the FEMA trailer, from three parts per billion to 590 parts per billion, you cannot say more probably than not there's an association to nasopharyngeal cancer to those levels. My statement is correct?
>
> A.   Your statement is correct, yes, sir.

Exhibit "C," at 132-33.

Recall that the only tested level in the Alexander EHU was 50 parts per billion, over ten times *lower* than the upper boundary of the range identified in the CDC report.

The evidence further shows that International Association for Research on Cancer (IARC) has not set forth an association between formaldehyde and nasopharyngeal cancer at the level Cooper was exposed. McGwin testified that the IARC classification of formaldehyde as a known carcinogen is based primarily on a scientific study from the American Journal of Epidemiology entitled "Mortality from Solid Cancers among Workers in Formaldehyde Industries." Exhibit C, p. 223-24. That study concluded that there was no association between formaldehyde and nasopharyngeal cancer below a peak exposure of four *thousand* parts per billion. Exhibit "D," Michael Hauptmann, *et al.*, *Mortality from Solid Cancers among Workers in Formaldehyde Industries*, 159 AM. JOURNAL OF EPIDEMIOLOGY 1117 (2004); Exhibit C, p. 21. Furthermore, the median duration of exposure in the study was 35 years. Exhibit "D," at 1119.

This dose and duration of exposure far exceed the dose and duration experienced by Cooper.[2] Thus, although the study – and therefore, IARC – concludes that there is an association between this cancer and this substance, there is no basis to conclude the association would exist at the levels observed in Cooper's EHU.  *Id*.

In light of McGwin's own testimony, his opinions concerning cancer are not relevant to the Plaintiff's claims.  The only association between formaldehyde exposure and nasopharyngeal cancer (the exclusive cancer that more probably than not can be related to formaldehyde exposure, according to McGwin) occurs when formaldehyde exposure reaches over 4,000 parts per billion, levels far greater than the 50 parts per billion measured in Plaintiff's EHU.  Thus, the testimony is simply of no consequence to the determination of the action and is not sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute.  As such, it is inadmissible.

**B.    EVIDENCE REGARDING AN ALLEGED ASSOCIATION BETWEEN FORMALDEHYDE EXPOSURE AND CANCER IS INADMISSIBLE AS INFLAMMATORY AND PREJUDICIAL**

In light of the foregoing, to allow Plaintiff to present any cancer causation evidence is too prejudicial and would be inappropriate.  Indeed, Gulf Stream suggests that Plaintiff must be precluded from referencing cancer for these very reasons.  To admit cancer evidence, the Court must determine that the probative value of such evidence substantially outweighs "the danger of unfair prejudice, confusion of the issues," its potential to mislead the jury, and considerations of undue delay, waste of time or presentation of cumulative

---

[2]     The levels noted in the scientific study even exceed the formaldehyde monitoring results obtained in May 2009, which the Court has struck. See Affidavit of William D. Scott, dated May 18, 2009, attached as Exhibit "E." The highest test result obtained at that time was 1100 ppb when the indoor temperature of the EHU was just shy of 92 degrees Fahrenheit. *Id*. at 7.

evidence. Gulf Stream submits that on the cancer evidence before the Court such a determination cannot be made.

The proposed admission of "cancer" testimony poses a special risk because of the stigma, and seriousness, associated with cancer. As the United States Court of Appeals for the Fifth Circuit has instructed:

> In sum, cancer evidence is highly inflammatory and understandably incites the passions and fears of most reasonable individuals. Recognizing the emotional impact of this type of evidence, it is critical that evidence of cancer only be admitted in those types of situations where the proper evidentiary guidelines are followed.

*Smith v. A.C. & S, Inc.*, 843 F.2d 854, 859 (5th Cir. 1988) (excluding plaintiff's fear of developing cancer due to exposure to asbestos).

It is especially appropriate that a Rule 403 analysis be applied to the admission of such allegedly relevant evidence, because its principle objective is to avoid admission of evidence that would have an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one. *Gross v. Black & Decker (U.S.), Inc.*, 695 F.2d 858, 863 (5th Cir. 1983).

Here, the admission of "cancer" testimony or reference to cancer poses exactly that risk. In this setting, the admission of cancer testimony and evidence can only serve to induce emotional considerations that are not germane to whether any actions of the Gulf Stream caused any of the illnesses and conditions claimed by Plaintiff.

**C. EVIDENCE AND ARGUMENT CONCERNING MEDICAL CONDITIONS NOT SUFFERED BY PLAINTIFF ARE IRRELEVANT AND INADMISSIBLE**

Medical conditions allegedly caused by excessive formaldehyde exposure but not suffered by Plaintiff are plainly irrelevant to this case and should thus be excluded. Courts have applied this common-sense rule in product liability cases, citing FED. R. EVID. 401-403.

9

*See, e.g., Coursen v. A.H. Robins Co., Inc.,* 764 F.2d 1329, 1331 (9th Cir. 1985) ("In an early evidentiary ruling, the district court held that where plaintiffs' claims were limited to injuries associated with pregnancy, any testimony regarding other possible injuries to, or other side effects suffered by, users of the Dalkon Shield would be inadmissible as irrelevant, prejudicial, collateral, and potentially confusing.").

Concerning Alana Alexander, Gulf Stream has filed a Motion for Summary Judgment on all of her claims for physical injury (Rec. Doc. 2596). Specifically, Gulf Stream contests that there is insufficient evidence to allow the jury to hear Alana Alexander's physical injury claims. However, to the extent that her claims are allowed to proceed, Plaintiff must be limited to referencing those injuries she and her son allegedly experienced.

In this regard, as to her own alleged injuries, Plaintiff testified:

> Q. Okay. The first subparagraph A says, "Plaintiff's physical pain and suffering," which "plaintiff" being you.
>
> A. Okay.
>
> Q. What pain and suffering did you have as a result of living in the trailer?
> A. I had headaches, I had the itching, watery eyes, the burning nose, the burning in the back of the throat, the coughing and -- yeah. That's the physical pain and everything.
>
> Q. You said that when you first came into the trailer, that's when you had the watery eyes, and then after a couple of months, that went away?
>
> A. Yes.
>
> Q. Was that also true for the headaches, the itching and the other items you just mentioned?
>
> A. The itching; the headaches stayed a little longer.

Exhibit "F," deposition of Alana Alexander, June 29, 2009, at pp. 388-89.

Plaintiff continued:

> Q. At any time in those first couple of months, did you see a doctor about your complaints?
>
> A. No.
>
> Q. After those couple of months, did you return to your pre-Katrina health?
>
> A. Me?
>
> Q. Yes.
>
> A. Yeah, pretty much.
>
> Q. As we sit here today, do you have any physical complaints or issues that you relate to the -- and I am talking about physically -- that relate to your time in the trailer?
>
> A. I would say no.

Exhibit "F," at pp. 390-91.

Concerning the injuries to her son, Plaintiff has alleged exacerbation of pre-existing asthma and alleged irritation/allergies from formaldehyde exposure. She testified:

> Q. The second subparagraph B is "Regarding the physical pain and suffering of her minor son, Christopher Cooper." What physical pain and suffering did Chris go through?
>
> A. Well, in the trailer, his eyes were worse because his eyes constantly stayed watery through the time that we were in there. Even after the odor dissipated, he always had the watery eyes.
>
> Q. How did you treat those watery eyes?
>
> A. That's when he was on the Claritin, and like I said, I thought it had to do with mostly allergies.
>
> Q. What other manifestations of physical symptoms did Chris have in those first couple months?
>
> A. Like I say, he felt the burning in the throat and the nose; say again watery eyes, the itchy eyes and the nose, the burning in the nose. And the frequency of the inhaler started to increase.

Exhibit F," at pp. 391-92.

11

Given Plaintiff's testimony, the alleged injuries from excessive formaldehyde exposure on which Plaintiff is allowed to present evidence must be limited to irritation of the eyes/nose/throat, headaches and exacerbation of pre-existing asthma.  There is no evidence that Plaintiff suffered from any of the myriad other medical conditions identified on the Plaintiff Fact Sheet; therefore, any testimony or argument concerning these irrelevant conditions should be inadmissible.

Because medical conditions not suffered by Plaintiff have no probative value whatsoever in this case, *a fortiori* exclusion of this evidence is also warranted under Federal Rule of Evidence 403.  Evidence that explicitly or implicitly invites the jury to determine liability on some basis other than the facts and the law must be excluded.  *Corkern v. Outback Steakhouse of Florida, Inc.,* No. 05-5487, 2007 WL 1772031 (E.D. La. 6/18/07), at *2.  ("…this Court may exclude relevant evidence 'if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."); *United States v. Zabaneh,* 837 F.2d 1249, 1265 n.23 (5th Cir. 1988) ("Unfair prejudice within [the context of Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

Evidence of irrelevant medical conditions is both highly inflammatory and unfairly prejudicial.  It invites the jury to speculate and draw improper conclusions that formaldehyde causes many potentially lethal medical conditions, and could easily lead a jury to impose liability for those conditions rather than the condition at issue in this case.  Such evidence can incite jurors to base liability on allegations that are of no issue or consequence to this particular case. *See Carter v. Hewitt,* 617 F.2d 961, 972 (3rd Cir. 1980) (Evidence is deemed unfairly prejudicial if it "'appeals to the jury's sympathies, arouses its sense of horror, provokes

its instinct to punish,' or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.").

If this evidence were admitted at trial, Gulf Stream would need to mount a defense against each irrelevant medical condition, engaging in a "trial within a trial" over the truth of those assertions. *See, e.g., Kelly v. Boeing Petro. Servs., Inc.,* 61 F.3d 350, 356 (5th Cir. 1995) (upholding trial court's exclusion of evidence based in part because "the mini-trial which would necessarily follow evidence of each and every 'other act' would amount to needless taste of judicial resources"); *Ostler v. Codman Research Group, Inc.,* 241 F.3d 91, 96 (1st Cir. 2001) (evidence properly excluded given potential to delay and mislead jury and to create mini-trials within trial); *White v. United States,* 148 F.3d 787, 792 (7th Cir. 1998) (evidence properly excluded under Rule 403 because, *inter alia,* of the "clear potential to develop into a trial within a trial"). Furthermore, introducing medical conditions allegedly caused by formaldehyde that have nothing to do with this case would divert the jury's focus from the real issues in the case and constitute a time-consuming distraction. All such evidence should be excluded pursuant to Federal Rule of Evidence 403.

### III. CONCLUSION.

For the reasons stated above, Gulf Stream respectfully requests that the Court exclude the testimony of McGwin, exclude evidence of irrelevant medical conditions and exclude any reference to cancer.

Respectfully submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
(504) 837-3119 (FAX)
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON
Timothy D. Scandurro #18424
Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
(504) 529-6199 (FAX)
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

## **C E R T I F I C A T E**

I hereby certify that on the 25th day of August, 2009, a copy of the foregoing Motion in *Limine* to Exclude Testimony of McGwin, to Exclude Evidence of Irrelevant Medical Conditions and to Exclude any Reference to Cancer was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com