UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                          MDL NO. 1873
FORMALDEHYDE
PRODUCTS LIABILITY LITIGATION                SECTION N-5
                                             JUDGE ENGELHARDT
                                             MAG. JUDGE CHASEZ


THIS DOCUMENT RELATES TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ** * * * * * * * * * * * * * * * * * * *

DEFENDANT UNITED STATES OF AMERICA'S MEMORANDUM IN
RESPONSE TO PLAINTIFFS' "MOTION TO COMPEL UNITED STATES
TO PRODUCE 'DISASTER' AND/OR INDIVIDUAL ASSISTANCE FILES
MAINTAINED BY FEMA" (Rec. Doc. 2554)

Defendant United States of America ("United States") submits this response to the

Plaintiffs Steering Committee ("PSC") "Motion to Compel United States to Produce 'Disaster'

and/or Individual Assistance Files Maintained by FEMA." (Rec. Doc. 2554.)   The PSC's

Motion to Compel fails to address the United States' objections to the PSC's request requiring

the Federal Emergency Management Agency ("FEMA") to produce 4,791 Individual Assistance

files ("IA files").[1]   The PSC argues that it is entitled to this information to aid its selection of

future bellwether plaintiffs and to identify the manufacturers of plaintiffs' temporary emergency

housing units ("EHUs").  The PSC asserts that "the Government is required by the Freedom of

Information Act ("FOIA") to disclose those records" because the 4,791 named individuals listed

in Exhibit "A" of its Request for Production have completed a Plaintiff Fact Sheet and attached a

Privacy Act Waiver.  (Rec. Doc. 2554-2 at 2.)

As an initial matter, the PSC's Motion to Compel is governed by Fed. R. Civ. P.

_____

[1]      The PSC's Request for Production of Documents is attached as "Exhibit 1" and the United States'
Response is attached as "Exhibit 2."

26(b)(2)(C) and 34, not FOIA.  Furthermore, pursuant to Fed. R. Civ. P. 26(b)(2)(C), the Court

should deny the PSC's Request for Production of the 4,791 IA files because: (1) the request is

premature since it is directed to files for non-bellwether claimants whose cases are not subject to

any scheduling order allowing discovery; (2) the request is unduly burdensome and is not likely

to lead to the discovery of relevant information required at this stage of the litigation, and (3) the

request does not provide sufficient information to allow the United States to identify and produce

the alleged claimants' FEMA IA files.

## FACTUAL BACKGROUND

1.       Requests for IA files are processed by FEMA at the National Processing Service

Center in Hyattsville, Maryland. Exh. 3, Declaration of Bellance Green ¶ 1.

2.       Each applicant's IA file does not simply exist in the way that a "paper file"

would, but must be created through a process to collect information and documents related to an

individual applicant that are contained in tabs and subfolders within FEMA's National

Emergency Management Information System ("NEMIS") database. *Id.* ¶ 2.

3.       NEMIS is an integrated system that provides FEMA with automation to perform

disaster response and recovery operations and serves as FEMA's central repository of

information relating to each individual who applies for or receives disaster-related assistance. *Id.*

¶ 1.  Due to the way NEMIS is structured, information relating to a particular applicant cannot be

easily transferred from NEMIS into a producible format because information relating to an

applicant is contained in multiple formats that must be accessed separately in order to view all

information relating to an applicant. *Id.* ¶ 4.  Obtaining documents from NEMIS to generate an

IA file requires use of software programs to locate and extract documents, such as the inspection

report and call contact log. *Id.* ¶ 4.  An individual's "IA file" does not exist in a format that it can be produced prior to this action being taken.

4.      The information contained in an individual's IA file is generated almost entirely from interactions or communications between the applicant and FEMA. *Id.* ¶ 3.  This includes written correspondence, contact logs memorializing verbal communications, a Comments Report listing any actions taken based upon contacts between the applicant and FEMA, and database screens reflecting insurance and financial information received by FEMA from the applicant. *Id.* ¶ 3. Each applicant should already be aware of most, if not all, of the information contained in the FEMA IA File as a party to the communication or as the provider of information to FEMA. *Id.* ¶ 3.

5.      The process to locate and extract documents from NEMIS and create an IA file is time-intensive. *Id.* ¶ 4.  Based on prior productions of IA files in this litigation, FEMA estimates that it takes approximately one (1) hour to produce each IA file.[2] *Id.* ¶ 5.  Thus, to respond to the PSC's Request for Production will take approximately 4,791 hours. *Id.* ¶ 6.

6.      FEMA currently has five (5) persons who are assigned responsibility for responding to requests for information contained in NEMIS. *Id.* ¶ 6.  Given FEMA's budget, staffing, and current workload – FEMA simply does not have the resources in-house to produce the requested 4,791 IA files without significantly and adversely affecting its ongoing disaster response and preparedness operations. *Id.* ¶ 7-8.

7.      FEMA has investigated the feasibility and costs associated with contracting out

---

[2]      The United States has, to date, produced more than one-hundred (100) IA files for designated class representatives and for all of the bellwether plaintiffs. Exh. 3 ¶ 5.  Each of these IA files took, on average, fifty (50) minutes  to compile and another ten (10) minutes to scan and process to get production-ready.  Exh. 3 ¶ 5.

the production of 4,791 IA files and estimates it would cost at least $285,550 to respond to the

PSC's discovery request; and, in all likelihood, a contract could not be put into place prior to

November 2009. Exh. 4, Declaration of Clay Hale, at Exhibit "A".

## STANDARD OF REVIEW

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged

matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  The discovery

rules are generally interpreted to achieve their purpose of adequately informing litigants in civil

trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979).  Discovery does, however, have "ultimate

and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)

(quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  And "[t]he scope of discovery to be

conducted in each case rests within the sound discretion of the district court." *Newby v. Enron

Corp.*, 394 F.3d 296, 305 (5th Cir. 2004). *See also Seiferth v. Helicopteros Atuneros, Inc.*, 472

F.3d 266, 270 (5th Cir. 2006) ("District courts have broad discretion in all discovery matters")

(internal citations omitted).  The standard of review for a court's denial of a discovery request is

for abuse of discretion. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 347

(5th Cir. 2004).

Under Rule 26(b)(2)(C), a Court must limit discovery otherwise permitted if: (1) the

discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more

convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had

ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed

discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C).  In assessing whether the

burden of the discovery outweighs the benefit, a court must account for: (1) the needs of the

case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(iii).  Further, if a court denies a motion to compel, it "may issue any protective order authorized under Rule 26(c)." Fed. R. Civ. P. 37(a)(5)(B).  This would include "forbidding the disclosure or discovery," "specifying the terms, including the time and place, for the disclosure or discovery," and "any order which justice requires to protect a party or person from . . . undue burden or expense." Fed. R. Civ. P. 26(c).

## ARGUMENT

### A.    The PSC's Request for 4,791 IA Files Is Premature Because The Court Has Not Entered A Scheduling Order Allowing For Individualized Discovery of These Persons.

The Court should deny the PSC's motion because the PSC is submitting discovery requests on behalf of persons who have not filed suit against the United States.  The PSC has failed to match the 4,791 claimants with a specific Complaint; and as of the date it was served with this discovery request, the United States had only been served with complaints asserting claims on behalf no more than 3,000 persons.  Accordingly, the PSC's Request for Production is premature because it seeks discovery on behalf of persons who have had filed or commenced an action against the United States.

Additionally, even if many of the 4,791 individuals listed in the PSC's discovery request are plaintiffs in this MDL and have properly served the United States, the Court should still prohibit discovery on facts specific to non-bellwether trials since that discovery is for all essential purposes stayed pending resolution of the bellwether claims.  The Court has scheduled six bellwether trials through the Summer of 2010.  No other cases have been set for trial and the

Court has not entered a scheduling order authorizing discovery in actions other than those set for trial.  The Court should not allow discovery regarding any of these 4,791 individual claims prior to the Court setting one of their cases for an individual bellwether trial and entering a Scheduling Order allowing discovery to proceed in the individual action.  To do otherwise would open the flood gates to allow full blown discovery on a massive scale.  Indeed, the PSC's discovery request directed to facts specific to non-bellwether plaintiffs is analogous to the United States propounding its own interrogatories or requests for production on all of the plaintiffs who have sued the United States in this MDL, thereby requiring the PSC to produce thousands of individualized discovery responses.

As a party in five of the six bellwether trials, the United States should not be burdened with such individualized discovery that is unrelated to the cases currently set for trial.  The United States does not object to providing IA files for any future bellwethers once they are selected, but it opposes any individualized discovery of non-bellwether plaintiffs in the interim.[3]

---

[3]      The PSC's Motion to Compel raises the FOIA as a basis for why the United States should be compelled to produce IA files on these 4,791 individuals.  This argument is specious for several reasons.  First, this is not a FOIA case, and the Federal Rules apply exclusive of the FOIA. *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 153 (1989) (stating "a court must be mindful of this Court's observations that the FOIA was not intended to supplement or displace rules of discovery") (citations omitted); *Baldrige v. Shapiro*, 455 U.S. 345, 360, n. 14 (1982) (stating "[t]he primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil discovery.") (citations omitted); *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (finding that a basic purpose of the FOIA is to ensure an informed citizenry, and it was not intended to function as a private discovery tool).  The FOIA has its own independent enforcement mechanism for an agency's improper refusal to honor a valid FOIA request, which is to file a lawsuit under the statute.  *See* 5 U.S.C. § 552a(g)(1) (authorizing individual to bring a civil action against the agency for violations of the Act).  Here, the Court is not bound to apply the rules of the FOIA because this case was not filed as a FOIA action; it is, however, bound to apply the Federal Rules of Civil Procedure, including the limitation on the frequency and extent of discovery. *Cooper Cameron Corp. v. U.S. Dept. of Labor, Occupational Safety and Health Admin.*, 280 F.3d 539, 548, n. 39 (5th Cir. 2002) (citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) (stating that the FOIA's primary purpose was not to benefit private litigants or to substitute for civil discovery)).

Second, the PSC has not made any FOIA request for these individuals.  The PSC erroneously

6

**B.      FEMA's Burden And Expense Associated With Production Of The 4,791 IA Files Outweigh Any Likely Benefit At This Stage Of The Litigation.**

The PSC's motion must also be denied because the burden and expense associated with production of the 4,791 IA files outweigh the likely benefit of production at this stage of the litigation.  The Federal Rules of Civil Procedure require limitations on the frequency and extent of discovery:

> [T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

Fed. R. Civ. P. 26(b)(2)(C)(iii).

The burden on the United States of producing all 4,791 IA files would be substantial because the process of creating an IA file is time intensive and expensive.  Each individual IA file takes on average, one (1) hour to produce. Exh. 3 ¶ 8.  Thus, production of the 4,791 IA files would require 4,791 hours and FEMA has only five (5) staff members who are trained and assigned responsibility for responding to IA file requests.  FEMA simply does not have the resources to produce the requested 4,791 IA files in a short amount of time without significantly and adversely affecting its primary mission – ongoing disaster response and preparedness operations. *Id.* ¶ 8.

---

argues that Privacy Act waivers attached to Plaintiff Fact Sheets "serve as written requests for access to records" under the FOIA.  (Rec. Doc. 2254-2 at 2.)  The documents attached to the individual Plaintiff Fact Sheets are merely authorizations for release of information and plainly do not request that any documents be produced under the FOIA.  *See, e.g.,* Exh. 5, Privacy Act Waivers of Alana Alexander. These waivers or authorizations are understood to allow the United States to produce Privacy Act protected material during the course of discovery, but they do not constitute a FOIA request.

Furthermore, the cost to employ a contractor to assemble and produce the 4,791 IA files is significant. Exh. 4, at Exhibit "A".  According to FEMA it would cost in excess of $285,000 to produce the files even with the use of a contractor, and would still require significant involvement and oversight by FEMA employees. Exh. 4 ¶ 3, Exhibit "A".

The PSC asserts that it requires the 4,791 IA files at this stage of the litigation because: (1) the files will allow the PSC "to determine [future bellwether] representatives using all available information," and (2) the files may contain information that is "not known" to their clients, such as "the place of manufacture or the contractor of their EHU." (Rec. Doc. 2554-2 at pp. 3-4.)

The PSC's argument that the IA Files are required to facilitate their selection of future bellwether plaintiffs lacks merit. (Rec. Doc. 2554-2 at pp. 3-4.)  The PSC prepared a Plaintiff Fact Sheet ("PFS") for each and every claimant.  These PFSs were designed by the PSC and the DSC to provide the parties with the core information regarding an individual plaintiff's claim; the PFSs were intended to provide sufficient information to determine an individual's suitability to be a bellwether plaintiff.  Moreover, given that the vast majority of the information contained in an IA file merely reproduces correspondence between the applicant and FEMA, information contained in the file is readily available to the PSC either in the PFS or simply by contacting the individual claimant and requesting that information.  In any event, such a limited benefit (particularly, in light of the information currently available from the PFS and the claimant) does not justify the enormous burden and costs that the United States would be required to bear if the PSC's Motion to Compel were granted.

In reality, the PSC's desire to have "all available information" would not be satisfied by production of these IA files; this would actually require full blown discovery.  If the PSC's argument that it needs "all available information" to assist in selecting a future bellwether were to justify the burden on the United States of producing these 4,791 IA files, it would also justify the United States' issuance of a written discovery requests directed to all plaintiffs in this MDL requiring the PSC to seek out information and produce documents from each of them in a separate response.

The PSC next argues that it requires the IA file to determine the identity of manufacturer of each plaintiffs' EHU.  This argument lacks credence because the PSC already has access to this information through the FEMA Response & Recovery Applicant Tracking System ("FRRATS")  matching process that has been in place since April 2008. Exh. 6, Waldron Declaration ¶ 2.  FRRATS is a disaster specific database that typically contains information relating to an applicant's individual EHU, such as the vehicle identification number ("VIN"), manufacturer, barcode, and the identity of the contractor who installed the EHU. *Id.* ¶ 1. Through PSC's submission of client matching lists containing certain required information, FEMA "matches" an applicant to a specific trailer by providing the VIN for each EHU provided to the applicant.  Based upon previously produced installer lists and a VIN key, the PSC has the ability to then determine the manufacturer of a unit and the installing contractor based upon the VIN. *Id.* ¶ 4.  To date the PSC has submitted more than seventy-five (75) spreadsheets listing claimants names and other required information, and FEMA has produced information that has allowed the PSC to match more than 25,000 individuals with the manufacturer of the EHU that they occupied and the installation contractor of that EHU. *Id.* ¶ 2.  The PSC simply does not

need the IA file to determine the manufacturer or installer of their EHU, but need only submit these names for FRRATS matching to determine this information. *Id.* ¶ 5.

At this stage of the litigation, the burden to FEMA associated with production of the IA files substantially outweighs any benefit to the PSC.  The cost to the Government and taxpayers to produce that information is in excess of $285,000, and the PSC's primary (and only real) justification for production of that information is to provide some unspecified assistance in selecting bellwether plaintiffs for trials in the fall of 2010 or winter of 2011.  Given the marginal relevance of the IA files at this stage of the litigation, the Court should deny the PSC Motion to Compel.[4]

Previously in this litigation, where the need for IA files justified the burden of production, the United States timely supplied them; for example, although no formal discovery request had been propounded, the United States in a timely and prompt manner provided IA files for the PSC's proposed class action representatives and bellwether plaintiffs [5]  The United States believes that at this stage of the litigation, the balance between need and burden has not tipped in favor of production given that: (1) many of the 4,791 individuals had not sued and served the United States with complaints when PSC served its discovery request; (2) none of the 4,791

_____

[4]    None of the other Rule 26(b)(2)(C)(iii) factors justify granting the PSC's Motion to Compel. Regarding the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues – it is impossible for the Court to weigh these factors when it is unclear which, and how many, of these persons have sued the United States.  Since the PSC's list of 4,791 individuals only contains a first and last name, and no other identifiable information (not even middle initials), it is extremely difficult for the United States to determine which of the listed individuals have actually sued the government.

[5]    This is why the United States, in responding to the PSC's initial request, asserted that "the United States will continue to produce Individual Assistance files for any Plaintiff upon entry of a scheduling order setting that person's suit for trial."  Exh. 2 at 6.

individuals have been selected for trial; (3) there are no scheduling orders in place that would allow for individualized discovery as to any of the 4,791 cases; (4) the PSC already has PFSs which provide a substantial amount of information regarding each claimant; and (5) the Court has indicated that if the scheduled six bellwether trials fail to produce a settlement the cases may be returned next fall to the various districts for individual discovery and trial without any further bellwether trials.

Alternatively, given that the information sought by the PSC is of minimal relevance at this stage of the litigation, in the event that the Court were inclined to require production, the Court should shift the costs associated with the production to Plaintiffs and require them to pay the United States any costs incurred as part of the production.

**C.     The PSC Has Failed To Proffer Sufficient Information To Allow The United States To Identify And Produce The Alleged Claimants' FEMA IA Files.**

Finally, the Court should deny the PSC's motion to compel because the PSC has failed to provide sufficient information to allow the United States to produce the requested IA files.  The PSC's request seeks IA files for 4,791 persons appearing on a list that provided no identifying information other than the individuals' first and last names.  The PSC has failed to demonstrate that any of the listed individuals completed Privacy Act waivers and the PSC has also failed to proffer sufficient information to the United States to allow FEMA to produce the requested IA files.  The PSC's request simply stated, in its entirety:  "Produce the 'disaster' and/or Individual Assistance file maintained by FEMA for each individual listed on the attached exhibit 'A'."  Exh. 1 at 3.  In order for FEMA to conduct searches and produce an IA File, the PSC, at a minimum, must produce for each individual the following information: (1) the claimant's full name; (2) the claimant's FEMA ID number, (3) the state where the EHU was installed; (4) the

11

claimant's social security number and date of birth, and (5) the address, city, and zip code where the EHU was installed. Exh. 3 ¶ 2.  Significantly, the information that FEMA requires to search for an IA file is the same information it requires to conduct a FRRATS search associated with that particular individual.  Further, FEMA requires that the PSC submit a Privacy Act release issued by the claimant. *Id.* ¶ 2. Without that release, production of the information would constitute a violation of the Privacy Act.  Accordingly, in the event that the Court were inclined to grant the PSC's request, any order to produce IA files should include a requirement that the PSC produce the requested information from each claimant and a corresponding Privacy Act Release.

## CONCLUSION

For all the reasons set forth herein, the United States requests that the PSC's "Motion to Compel United States To Produce 'Disaster' and/or Individual Assistance Files Maintained by FEMA" (Rec. Doc. 2554) be denied in its entirety.

Dated: August 25, 2009

Respectfully Submitted,

TONY WEST
Assistant Attorney General,
Civil Division

J PATRICK GLYNN
Director, Torts Branch, Civil Division

DAVID S. FISHBACK
Assistant Director

OF COUNSEL:
JORDAN FRIED
Associate Chief Counsel

HENRY MILLER
ADAM BAIN
Senior Trial Counsel

ADAM DINNELL
MICHELE GREIF

Trial Attorneys

*//S// Jonathan R. Waldron*
JONATHAN R. WALDRON
(IL. Bar No. 6292058)
Trial Attorney
United States Department of Justice

JANICE WILLIAM-JONES
FEMA/DHS
Department of Homeland Security
Washington, D.C. 20472

Civil Division – Torts Branch
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20004
Attorney Telephone: (202) 307-2091
Jonathan.Waldron@USDOJ.Gov

Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2009, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.