UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 | |
| FORMALDEHYDE | * | | |
| PRODUCTS LIABILITY | * | SECTION:  N(5) | |
| LITIGATION | * | | |
| | * | JUDGE: ENGELHARDT | |
| This Document Relates to:  *Charlie Age, et al. v.* | * | | |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | MAG: CHASEZ | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

On August 11, 2009, Defendants, Gulf Stream Coach, Inc. ("Gulf Stream") filed a Motion for Partial Summary Judgment asserting that the Plaintiff and her minor child are not entitled to recover mental anguish damages based on their fear that they are at an increased risk to develop cancer because of their alleged exposure to formaldehyde. (Doc. No. 2583). On August 24, 2009, the Plaintiff filed an Opposition arguing that it is possible that formaldehyde could cause cancer in the Plaintiff and her minor child, and thus summary judgment should be denied. (Doc. No. 2797). Gulf Stream now appears before this Honorable Court to reply to the Plaintiff's Opposition.

As stated in Gulf Stream's original memorandum in support of its Motion for Partial Summary Judgment, a plaintiff can assert a fear of cancer claim to recover emotional damages. *Maurer v. Heyer-Schulte Corp.*, 2002 WL 31819160, \*3 (E.D.La. Dec. 13, 2002). However, "The plaintiff's fear of developing cancer **must be reasonable** and causally related to the defendant's negligence." *Id*. (emphasis added). "Mere speculation concerning an event cannot provide the basis for an award for anxiety." *Id*. Therefore, while the plaintiff need only show that

contracting cancer is possible, she must present "at least some reliable scientific evidence" to show that the disease could be caused by the defendant's actions.[1] In this case, however, the Plaintiff has not provided any reliable scientific evidence to show that formaldehyde could cause her and/or her minor child to develop cancer. She merely speculates that it is possible, and she asks the Court to deny Gulf Stream's Motion on that basis. The Court should not do so.

### A. The Plaintiff Does Not Recognize the Importance of Levels

#### *1. The Evidence Shows No Cancer Risk at Certain Levels of Formaldehyde*

The Plaintiff spends a great deal of her Opposition arguing that formaldehyde poses some risk as a carcinogen. She cites the International Agency for Research on Carcinogens' ("IARC") classification of formaldehyde as a known human carcinogen. (Rec. Doc. 2797, p. 1, 12, 13). She also cites other sources to support her claim, including several studies analyzed by her own expert, Dr. Patricia Williams, and testimony from various witnesses in this case that formaldehyde presents a carcinogenic risk. *Id*. at 14—15, 18. Yet, these arguments do not go to the central issue of Gulf Stream's motion – while formaldehyde may carry a carcinogenic risk, <u>it does not carry that risk at every possible level of formaldehyde</u>.

Several sources support that fact. First, the Hauptmann study – which is, according to the Plaintiff's own expert witness and another witness the Plaintiff has tried to qualify as an expert, the primary basis for IARC's conclusion that formaldehyde is a known human carcinogen – concluded that there was no association between formaldehyde and nasopharyngeal cancer (NPC) below a peak exposure of four <u>thousand</u> parts per billion. (Rec. Doc. 2583-6, p. 5—18).

---

[1] *See id*. Contrary to the Plaintiff's statement in her Opposition (Rec. Doc. 2797, p. 11), Gulf Stream did not argue that epidemiological studies are the only type of scientific evidence that the Plaintiff can submit. Gulf Stream simply argued that reliable scientific evidence can take the form of epidemiological studies because, as the U.S. Fifth Circuit Court of Appeals has stated, epidemiological studies are the most effective and conclusive type of evidence in cases involving a chemical substance's ability to cause a physical condition. (Rec. Doc. 2583-2, p. 5); *see Allen v. Pa. Engineering Corp.*, 102 F.3d 194, 197 (5th Cir. 1996) (citing *Brock v. Merrell Dow Pharmaceuticals, Inc.*, 874 F.2d 307, 311 (5th Cir. 1989)).

Second, the Plaintiff's own epidemiologist and statistician Dr. McGwin testified that he could not associate NPC[2] to formaldehyde at the level present in the Plaintiff's EHU. (Rec. Doc. 2583-3, p. 27—28). The Plaintiff attempts to spin Dr. McGwin's testimony by arguing that Dr. McGwin did not say that an association does not exist. This argument is unavailing  – the Plaintiff cannot use a double negative to prove that such an association actually exists. (Rec. Doc. 2797, p. 6). She must provide reliable scientific evidence to do so. *Maurer v. Heyer-Schulte Corp.*, 2002 WL 31819160, *3 (E.D.La. Dec. 13, 2002). Despite the Plaintiff's efforts to reshape Dr. McGwin's testimony, the fact remains that her own expert could not relate cancer to formaldehyde exposure at the levels observed in the Plaintiff's trailer.

Finally, the National Toxicology Program has clearly recognized that levels are relevant in determining cancer risk. (Rec. Doc. 2797, p. 12). As the Plaintiff cited in her own brief, the Program concluded that there is uncertainty as to how the levels of formaldehyde in the air relate to the risk of developing cancer. *Id*. Inherent in this statement is the fact that the levels play some role in the ultimate determination of whether formaldehyde poses a cancer risk. *See id*.

### 2. The No-Safe-Level Theory Has Been Rejected.

In contrast, the Plaintiff argues that formaldehyde is a carcinogen, and there is no safe level of exposure to a carcinogen. (Rec. Doc. 2797, p. 7, 13, 18—20). In support of this argument, the Plaintiff cites the testimony of Dr. Christopher DeRosa, a toxicologist formerly employed by the Agency for Toxic Substances and Disease Registry, and an unnamed CDC official's letter to FEMA in March of 2007. *See id*.

---

[2]     Dr. Gerald McGwin testified that while formaldehyde plays an etiologic role with respect to leukemia, lung cancer, pancreatic cancer, and brain cancer, the only cancer definitively caused by formaldehyde is nasopharyngeal cancer (NPC). (Rec. Doc. 2583-3, p. 22—25). This is precisely the same conclusion reached by another expert physician and epidemiologist in this litigation, Dr. Philip Cole. (Rec. Doc. 2583-4 and 2583-5). Dr. Cole opined that there was no link between formaldehyde and any other type of cancer other than nasopharyngeal. *Id*.

This argument, however, is unpersuasive and meritless. The "no safe level" methodology has been soundly rejected by various federal courts. In fact, it has been held that it "fails all of the *Daubert* reliability factors." *See Whiting v. Boston Edison Co.,* 891 F.Supp. 12, 25 (D.Mass. 1995). In *Whiting*, the plaintiff's experts espoused opinions that low-dose exposure to radiation could trigger events leading to the development of acute lymphocytic leukemia (ALL) and the court, in excluding such opinions, held as follows:

> I find that the opinion…that low doses of nuclear radiation…can cause ALL is not based on scientific knowledge, but is grounded on speculation shaped by result-oriented biases. The linear non-threshold model cannot be falsified nor can it be validated. To the extent it has been subjected to peer review and publication, it has been rejected by the overwhelming majority of the scientific community. It has no known or potential rate of error. It is merely an hypothesis. In sum, it has no capacity to be of assistance to a jury in resolving the ultimate issues in this case.

*Id*.

Other courts have also precluded such opinions based upon this theory, providing that opinions based upon it are "flatly rejected as mere hypothesis." *See, e.g.*, *Parker v. Mobil Oil Corp.,* 793 N.Y.S. 2d 434, 438 (2d Dep't 2005); *Willis v. Amerada Hess Corp.,* 2002 WL 140542, *14 (S.D.N.Y. 2002); *Sutera v. Perrier Group*, 986 F.Supp. 655, 666 (D.Mass. 1997). All that a "no safe level" opinion implies is that any increase in exposure increases the risk of injury – it says nothing at all about how great the increase is nor does it imply that the exposure-related increase is significant when compared to the background risk of injury or injury due to other factors.

Applied to this case, the Plaintiff's theory is insufficient. Courts from around the country have rejected the "no safe level" theory as unreliable. Further, the theory is implicitly rejected by the Plaintiff's expert, Dr. McGwin, who stated that he could not relate NPC to the levels of formaldehyde in the Plaintiff's EHU. If Dr. McGwin agreed with the "no safe level" theory, he

would have simply opined that it could cause cancer at any level. But, he did not do so, and thus the Plaintiff's own expert has defeated her argument in this respect. Thus, the Court should reject the Plaintiff's "no-safe-level" argument.

**B.    Even the Evidence that Recognizes the Significance of Levels is Inapplicable in this Case.**

Despite devoting substantial time to the argument that there is no safe level of formaldehyde exposure in terms of cancer risk, the Plaintiff betrays her own argument by asserting that the levels of formaldehyde observed in her EHU are not an accurate reflection of the formaldehyde levels to which the Plaintiff was exposed during her occupancy in the unit. The Plaintiff takes issue with the formaldehyde reading of the Plaintiff's EHU in 2008 – a reading was taken shortly after the EHU was vacated, in the same location where it was used, and without ventilation or any attempt to engage the HVAC system to simulate actual living conditions – and its result of 0.05 parts per million.

Despite the Plaintiff's arguments, she provides no reliable evidence that the levels were actually higher. She cites her own expert's report for the fact that formaldehyde concentrations vary over time, and thus the unit "likely" had higher levels of formaldehyde at various times. (Rec. Doc. 2797, p. 16—17). Her expert, Mary Devany, stated that the trailer "may" have ranged from 0.1 ppm to 1.6 ppm, a whopping 1500% margin of speculation and still well below the effect level in Hauptmann. *See id*. at 17. Also, her expert Dr. James Kornberg stated that the exposure "probably" ranged from 0.05 ppm to 0.1 ppm and higher. *Id*. at 17. However, not a single expert has actually identified the specific level to which the Plaintiff and her minor child were exposed. They use regression analyses to identify the possible *range* of formaldehyde to which the plaintiffs were exposed,[3] but they cannot definitively state that the plaintiffs were

---

[3]    The U.S. Supreme Court has noted that some regression analyses, which the Plaintiff has used in this case

actually exposed at those levels. Thus, the experts' statements are nothing more than speculation as to the levels present in the EHU. Mere speculation is not a sufficient basis for stating that the levels were higher; the Plaintiff must provide reliable scientific data in order to support her claims. It is no answer to pile statistical speculation on top of causation speculation. Accordingly, the parties can only rely on the level of formaldehyde that was actually identified in the Plaintiff's EHU – 0.05 ppm. This is a far cry from 4.0 ppm, and notably, no expert opines that the level in the Plaintiff's unit ever approached 4.0 ppm.

Even when the Plaintiff cites studies that evaluate a range of formaldehyde exposure inclusive of 0.05 ppm, the studies are inapplicable in this case. In her Opposition, the Plaintiff discussed several studies that according to her regard the carcinogenic effects of formaldehyde at various levels. (Rec. Doc. 2797, p. 14—15). At the outset, it is important to note that only two of the studies included an exposure range inclusive of 0.05 ppm. These two studies, authored by Shaham and Costa, respectively, included levels of exposure that began at 0.04 ppm. However, the studies were not cohort studies that studied the prospective effects of formaldehyde; they simply examined the mechanism of injury when a cell is exposed to formaldehyde. *See* Deposition Transcript of Patricia Williams, taken on July 7, 2009, p. 73—74, 109—11, attached as Exhibit "A." Dr. Williams stated in her deposition that in the Shaham study, 0.04 ppm was the formaldehyde level at which there occurred a mechanistic transformation of the cell to an abnormal cell. *Id.* at 109—11. Importantly, <u>Dr. Williams could not determine whether the</u> <u>authors of the studies followed up with the patients who were studied to determine whether they</u> <u>developed NPC</u>. *Id.* at 111.

---

to "derive" the concentration of formaldehyde in her EHU, are so incomplete that they are irrelevant and inadmissible. *Bazemore v. Friday*, 478 U.S. 385, 400 n. 10 (1986).

Further, when asked to identify a cohort study that established a statistically significant strength of association between formaldehyde and NPC, Dr. Williams only cited studies that are inapplicable to these plaintiffs. First, the only cohort Dr. Williams identified was the Hauptmann study discussed above. *Id*. at 111—14. However, quite contrary to Dr. Williams' claims that Hauptmann found a connection between formaldehyde and cancer at 0.01 ppm, Hauptmann only studied individuals who were exposed from 0.01 ppm to 4.25 ppm. (Rec. Doc. 2583-6, p. 5—18). The study only found the connection at 4.0 ppm and above. *See id*. Second, Dr. Williams cited the Blair study, which analyzed formaldehyde's effects in terms of "parts per million years." *Id*. at 114—15. Blair found no cancer effects below 5.5 ppm-years. *Id*. Dr. Williams explained that this would require cumulative exposure to 5.5 ppm for one year (e.g., 5.5 ppm for one year, 1.1 ppm for five years, etc.). *See id*. at 86. However, it is undisputed that the Plaintiff and her minor child came nowhere near such a high level. Thus, the Blair study does not apply to the Plaintiff's exposure. Finally,[4] Dr. Williams cited the Vaughn study. Exhibit A, at 115—16. But, the Vaughn study concluded that there was no association between formaldehyde and NPC with less than 10 years of exposure. *See* ALX-EXP-77-001297—1301, attached as Exhibit "B."

The impact of this evidence is clear – the Plaintiff has provided no reliable scientific information to establish a link between cancer and formaldehyde exposure at the levels to which she was exposed in her EHU. Such evidence may very well be the reason why Dr. Williams – the very expert who examined these studies – was not willing to state that a relationship existed between formaldehyde and cancer at 0.04 ppm:

> Q.   Based on everything you have reviewed, at what level of exposure to formaldehyde is it more likely than not that nasopharyngeal cancer can develop?

---

[4]   Dr. Williams cited one other study, but it contained no quantitative data as to the measure of exposure in terms of levels. Exhibit A, at 66, 116—17. As such, it is unreliable and inapplicable for purposes of this discussion.

A.  **Well, I haven't given that in my opinion**.  What I have given in my opinion that it can cause upper respiratory tract cancers. I will say that based upon the review of the literature we see as low as 40 parts per billion, we see associations with the formation of the cancer or of the damage, the DNA-protein complexes or the micronuclei which -- all of the components that can cause the mutation -- do cause the mutation in the cell. That is my opinion. I'm not giving a specific opinion.

Q.  You are not giving a specific level in your opinion?

A.   I'm not giving -- in specific causation the person who's going to make specific causation will have to go back to literature and use some of these parameters with what he knows that particular claimant is exposed to. I am not into the business of specific causation for this. I'm into the business of can this cause upper respiratory tract cancer. Yes, I want to know the concentrations because I want to know, and -- but I made -- my opinion is general causation.

Q.  If you were exposed to 40 parts per billion of formaldehyde, is it more likely than not that you will develop any of these cancers?

MR. D'AMICO: Object to the form.

THE WITNESS: Yeah, that's risk assessment. And I'm not here to testify on probabilities and risk assessment. This is hard science. Risk assessment is based on assumptions and that's what you are asking and I don't do risk assessment, for that reason. It's not hard science.

*See* Deposition Transcript of Patricia Williams, taken on July 7, 2009, p. 129—31, attached as

Exhibit "A" (emphasis added).

This testimony shows that even the expert who reviewed the studies would not opine that

formaldehyde could cause cancer at these levels. This undermines the Plaintiff's scientific

evidence. It is her burden to provide reliable scientific evidence to prove that her and her minor

child's fear of cancer is reasonable. *See Maurer v. Heyer-Schulte Corp.*, 2002 WL 31819160, *3

(E.D.La. Dec. 13, 2002). She has failed to carry that burden in this case. Thus, neither she nor

her minor child is entitled to mental anguish damages for her alleged fear of cancer.

    **C.**    **The Plaintiff's Testimony Should Not Be Allowed in Considering the Merits of this Motion**

Finally, Gulf Stream reiterates its position that personal testimony is not sufficient to establish a bona fide fear of cancer. In her Opposition, the Plaintiff states without any support whatsoever that her testimony regarding her fear of cancer is clearly probative. However, the prejudice inherent in such testimony would substantially outweigh any probative value the testimony may have. *See* Fed. R. Evid. 403 (2009). The nature of this evidence has great potential to inflame the sensibilities of the fact-finder and to stigmatize Gulf Stream. *See Smith v. A.C. & S., Inc.*, 843 F.2d 854, 859 (5th Cir. 1988); *Gross v. Black & Decker (U.S.), Inc.*, 695 F.2d 858, 863 (5th Cir. 1983). Accordingly, such testimony should not be admitted to defeat Gulf Stream's summary judgment motion.

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**


s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
(504) 837-3119 (FAX)
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON**
**Timothy D. Scandurro #18424**
**Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
(504) 529-6199 (FAX)
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

### C E R T I F I C A T E

I hereby certify that on the 26th day of August, 2009, a copy of the foregoing Reply to Plaintiff's Response to Defendant Gulf Stream's Motion for Partial Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com