Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION


IN RE:  FEMA TRAILER
FORMALDEHYDE PRODUCT
LIABILITY LITIGATION

                MDL NO. 1873

                SECTION "N-5"

                JUDGE ENGELHARDT

                MAG. JUDGE CHASEZ


ORAL AND VIDEOTAPED DEPOSITION OF

CHRISTOPHER T. DE ROSA M.S., Ph.D.

July 6, 2009

9:25 a.m.

201 17th Street

Suite 1700

Atlanta, Georgia


Maureen S. Kreimer, RPR, CCR-B-1379

1  toxicological profiles since I became director in
2  1991, it's a delegated authority from the department
3  to the administrator to the assistant administrator,
4  and then that was delegated to me.
5           So it was my responsibility to provide the
6  final approval of all the conclusions both
7  qualitatively and quantitatively presented in the
8  documents generated by the Division of Toxicology and
9  Environmental Medicine.
10          MR. WEINSTOCK: Object to responsiveness.
11 BY MR. MEUNIER:
12     Q.    Have you served, Dr. De Rosa, as an expert
13 witness on behalf of the Federal Government?
14     A.    Yes, I have.
15     Q.    How many times?
16     A.    Well, I believe formally, depending on
17 what one considers to be an expert witness, at least
18 three times, four times.
19     Q.    And on those occasions, did you testify as
20 an expert in the field of environmental health
21 science?
22     A.    I did.
23          MR. MEUNIER: On Plaintiff's behalf and
24 for purposes of potentially presenting this witness's
25 testimony at trial, we will ask the Court to

Page 26

1  recognize Dr. Christopher De Rosa as an expert in the
2  field of environmental health science with specific
3  expertise as to the human health effects, exposure
4  risks associated with formaldehyde.
5           MR. MILLER:  United States would note its
6  objection in the sense that we believe that
7  Dr. De Rosa has qualifications in the field of
8  toxicology, but he is not being offered as an expert
9  witness in this case by any party.  He is a fact
10 witness, I think more than anything, and any use of
11 that witness for any purposes beyond that, United
12 States objects to it.
13          MR. WEINSTOCK:  Additionally, manufacturer
14 -- well, Andy Weinstock for Gulf Stream Coach.  We
15 join in that objection.  Further, we would point out
16 to the Court that you've known about this witness's
17 involvement for quite some time, and we received no
18 expert report from him by the cutoff date of
19 February 19th.  I don't believe he was asked to
20 produce one, and I don't believe he has consistent
21 with the Court guidelines.  With that, you can go
22 ahead.
23          MR. MEUNIER:  And we just, to respond to
24 that, we believe that it's clear in this case there
25 will be retained experts, and there will be

In Re: FEMA                     Christopher De Rosa, Ph.D.                     7/6/2009

```
                                                    Page 232
 1      A.   What do you take issue with in my earlier
 2 testimony?
 3      Q.   I think you said -- well, let me --
 4      A.   You said you were going to take issue with
 5 my earlier testimony --
 6      Q.   Fair enough.
 7      A.   -- so take issue with my earlier
 8 testimony.
 9      Q.   Fair enough.  As I understood it, you
10 disagreed earlier with .05 to 2.0 ppm as the level
11 for eye irritation; is that correct?
12      A.   Yes.
13      Q.   And you said it was based on studies?
14      A.   I don't know what it was based on.
15      Q.   Okay.
16      A.   I didn't say whether it was based on
17 studies.
18      Q.   Why do you take issue with it?
19      A.   Because I know that eye irritation occurs
20 at levels below that.
21      Q.   What have you read to support that?
22      A.   The reference in the toxicological profile
23 as the basis for the MRLs.
24      Q.   As you sit here today, what can you tell
25 me, other than the tox profile, suggests a number
```

1  below .05 to 2.0 ppm, what study can you tell me
2  about?
3       A.    There are the studies cited in the tox
4  profile.  There have been a number of more recent
5  studies linked to multiple chemical sensitivity, and
6  also to exposure to mixtures of solvents in
7  occupational settings in which it is difficult
8  sometimes to rule out exposure to other solvents, but
9  it's quite clear to me that levels within that range
10 could be problematic.
11      Q.    Solvents because of their content of
12 formaldehyde, or some other VOC?
13      A.    Formaldehyde is a solvent.  It's found in
14 combination with other solvents; in fact, the report
15 by Berkeley Laboratories showed that there were
16 approximately 30 to 40 VOCs for which formaldehyde
17 was a marker that were elevated in manufactured
18 housing that would be of concern.
19      Q.    What paper can you cite me to that says
20 formaldehyde at levels below .05 cause eye
21 irritation?
22      A.    I didn't say below .05.  I said within
23 that range.
24      Q.    Okay.  So you accept .05 as the low end?
25      A.    I told you what I said.  I don't accept

1    necessarily .05 as the low end, no.
2         Q.    Can you cite me to any paper --
3         A.    Sensitized individuals, and there are an
4    abundance of references to that effect.
5         Q.    Name one?
6         A.    Meryl Karol.
7         Q.    Meryl Karol, who testified before
8    Congress?
9         A.    Yes.
10        Q.    Can you cite me, and I appreciate you've
11   read her testimony, and you might have even been
12   there when she testified?
13        A.    I was.  I sat next to her.
14        Q.    There you go.  Can you tell me the name of
15   a paper she cited?
16        A.    She cited her own work.
17        Q.    Have you read her paper?
18        A.    I read the synopsis of her work.
19        Q.    Did you read --
20        A.    I didn't know Meryl Karol before the
21   testimony.  She's an emeritus professor.
22        Q.    At the University of Pittsburgh?
23        A.    That's correct.
24        Q.    Any other paper you can tell me that shows
25   eye irritation below .05, other than a synopsis of

In Re: FEMA                    Christopher De Rosa, Ph.D.                    7/6/2009

Page 235

1  Meryl Karol's paper?
2       A.    There are others.
3       Q.    Name them.
4       A.    I don't have those available to me.
5       Q.    That's fine. Okay. Now, upper airway
6  irritation in the same chart, do you have it before
7  you, sir? Again Page 79. Point 1 --
8       A.    79?
9       Q.    Bates label 79. You were there. 0079.
10      A.    I'm going to ask for a break. I'd like to
11 confer with my attorney.
12            MR. WEINSTOCK: Sure.
13            THE VIDEOGRAPHER: 4:12 p.m., off video
14 record.
15            (Recess 4:12-4:24 p.m.)
16            THE VIDEOGRAPHER: Stand by. Tape 4.
17 4:24 p.m. Back on video record.
18 BY MR. WEINSTOCK:
19      Q.    The same page, I just want to make sure
20 I'm not misunderstanding you. But this -- these
21 levels, this level .05 to 2.0 for eye irritation, you
22 believe is too high based on an article written by
23 Meryl Karol; correct?
24      A.    Based on my review of any number of
25 studies. And quite frankly, we have profiles on

1  health guidance values.  And I would say that's true
2  for sensitization, it's true for metaplasia,
3  hyperplasia, leading up to cancer and so on.
4           And the most recent robust -- most robust
5  study released by NCI showed that high exposed
6  workers versus low exposed workers were a threefold
7  higher increase of risk for three -- the several
8  forms of cancers of the blood, leukemias and others.
9  So you know, that's what I can share with you on
10 that.
11      Q.   I appreciate it, Doctor.
12      A.   And I really do not want to get into an
13 attachment to -- that I had not seen that's attached
14 to a letter that went to Mr. Taylor.  I made
15 objections to the content of the letter, that's
16 noted, it's in the materials I shared with you, the
17 reason I objected to the document.  And that's what I
18 can offer you by way of response.
19      Q.   Okay.  Doctor --
20      A.   And I'm trying be cooperative, but I'm not
21 going to go out on any limbs.
22      Q.   I appreciate that, and I haven't asked you
23 a single thing about cancer.  And you're telling me
24 about all the NCI and all this other stuff.
25           I just want to know very simply whether

1  it's a level for eye irritation attached to the May
2  letter, or in the October report that you take issue
3  with?  Can you cite me to any single study that takes
4  issue -- that finds a lower level?
5          MR. REICH:  Objection.  Asked and
6  answered.
7       A.    Yeah, I did answer the question.  And I
8  told you the answer:  That I'd be happy to go back
9  and dig out those references for you if they exist.
10 I have read many references.  I have read, you know,
11 10 references last night that I discovered in another
12 file.  Again, I am limited in the degree to which I'm
13 going to be able to provide you with specifics on
14 these questions.
15      Q.    Just to be clear, I'm not asking you to go
16 back and look up anything.  I'm just asking if you
17 can tell me as we sit here today the name of these
18 articles?
19      A.    I understand what you're asking.
20      Q.    And the answer is you cannot as we sit
21 here today; correct?
22      A.    I'm not going to attempt to do that as I
23 sit here today.
24      Q.    That's all I'm asking.  Okay.  If we can
25 go to Page 9 of the October report.

1      A.     Those may all be involved.

2      Q.     All right.  Assume, then, you're speaking

3   of an IgE, IgG, or an IgM mediated response to a

4   gaseous formaldehyde, are you aware of a single study

5   that had ever found an antibody specific to such

6   exposure?

7      A.     I am not.

8             MR. REICH:  Are you waiving your objection

9   as defense counsel to calling Dr. De Rosa as an

10  expert witness based on his qualifications now?

11            MR. HINES:  Absolutely not.

12            MR. WEINSTOCK:  For the record, we're not

13  waiving it, but on the chance that the Court agrees

14  with your position, we're certainly going to ask our

15  questions.

16            MR. REICH:  Otherwise, you're not going to

17  ask these questions?

18            MR. WEINSTOCK:  If he is withdrawn as an

19  expert witness, then we won't ask expert questions.

20            THE WITNESS:  I was told I was not an

21  expert witness.

22            MR. WEINSTOCK:  They've tried to qualify

23  you, Doc.

24            MR. REICH:  You are not a retained expert

25  witness.  We recognize that you have expertise in

1      A.    The number has been climbing
2   astronomically, but I would say it's probably between
3   5 and 10 percent as --
4             MR. REICH:  I have to make some telephone
5   calls to my office because it closes down.
6             MR. HINES:  Go ahead.
7             MR. REICH:  If you don't mind.  I
8   apologize.
9             MR. HINES:  Sure.
10     A.    It depends on the study, the survey...
11            MR. MILLER:  Are we off the record?
12            THE VIDEOGRAPHER:  5:07 p.m., off video
13  record.
14            (Recess from 5:07-5:25 p.m.)
15            THE VIDEOGRAPHER:  5:25, p.m., back on
16  video record.
17  BY MR. HINES:
18     Q.    Dr. De Rosa, earlier today you threw out
19  the general principle, as I understood it, that it is
20  generally recognized in toxicology in general that
21  children and the elderly are more likely to respond
22  to a toxin or to an irritant.
23            I'm certainly not quarreling with that
24  general principle of toxicology at all.  I just want
25  to ask this question:  Are you aware of any study of

1   formaldehyde in exposure of the elderly that shows

2   that with respect to the airborne formaldehyde that

3   the elderly are more susceptible to gaseous

4   concentrations of formaldehyde?

5       A.    I don't have a specific reference, if

6   that's what you're asking for, but -- I don't have

7   that specific reference, but it's --

8       Q.    Same with respect to children?

9       A.    No.   I think there are specific references

10  that -- but I don't have those available to me at

11  this time.

12      Q.    As I understand what you've told us today

13  that -- with respect to health guidance values that

14  neither you nor the ATSDR consider health guidance

15  values to be cause and effect levels; is that

16  correct?

17            MR. REICH:   Objection, form.

18      A.    Again, that would be dependent upon the

19  individuals that are involved.   There may be an

20  effect at or below the minimal risk level.   One

21  cannot say, but generally speaking, it's anticipated

22  that for a given population ruling out the other

23  variables of, quote, exposure to other contaminants,

24  prior exposure, sensitization, that those values

25  should be at a level that is without an appreciable