UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER         * | | MDL NO. 1873 |
|     FORMALDEHYDE         * | | |
|     PRODUCTS LIABILITY         * | | |
|     LITIGATION         * | | SECTION: N(5) |
|     * | | |
| This Document Relates to: *Charlie Age, et al. v.* * | | JUDGE: ENGELHARDT |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892   * | | |
| * | | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF CERTAIN FORMALDEHYDE SCREENING DEVICES**

**MAY IT PLEASE THE COURT:**

Defendant, Gulf Stream Coach, Inc. ("Gulf Stream"), respectfully submits this memorandum in support of its motion to exclude all evidence of test results obtained through the use of a "Formaldemeter."

**I.   BACKGROUND**

As this Court is well aware, this Multi-District Litigation is the consolidation of several state and federal toxic tort suits in which an estimated thirty thousand named plaintiffs claimed to have inhabited emergency housing units ("EHUs") that were provided to them by the Federal Emergency Management Agency ("FEMA") as a result of the alleged uninhabitability of their residences due to Hurricanes Katrina and Rita. (Doc. No. 109, at ¶ 96). Plaintiffs claimed injuries resulting from their alleged exposure to the release of formaldehyde and/or formaldehyde vapors in those EHUs. (Doc. No. 109, at ¶ 30).  Following denial of class certification, several plaintiffs filed suit against Gulf Stream Coach, Inc., alleging that it manufactured the EHUs used by the specific plaintiffs. (*Age, et al. v. Gulf Stream Coach, Inc., et al.*, 09-2892, Doc. No. 1). Furthermore, plaintiffs named the United States Government through FEMA and Fluor

Enterprises, Inc., as defendants (*Id.* ¶ 4—5), and plaintiffs seek recovery for alleged physical and mental pain and suffering, physical impairments and disability, medical expenses, loss of earnings capacity, loss of enjoyment and quality of life, loss of consortium, travel expenses, out-of-pocket expenses, and the loss of use and/or opportunity to use safe and adequate shelter allegedly resulting from the purported exposure to formaldehyde. (*Id.* ¶ 117).

During the course of this litigation, the parties completed the class certification phase, conducted substantial discovery, and now have moved into the trial phase. Since the beginning, perhaps the most crucial issue in this case has been what level of formaldehyde is in the ambient air of the EHUs. In 2006 – <u>over a year after Gulf Stream constructed and sold the Plaintiff's EHU</u> – Gulf Stream examined a number of EHUs using an instant-reading device called a Formaldemeter. Gulf Stream now asks this Court to exclude all of the Formaldemeter results that have been or will be offered into evidence because such results are irrelevant, unreliable and prejudicial.

## II.     LEGAL STANDARD

Generally speaking, all relevant evidence – that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence – is admissible. FED. R. EVID. 401—402 (2008). Of course, irrelevant evidence is thus inadmissible. *U.S. v. E.I. DuPont de Nemours & Co.*, 2004 WL 2347556, *2 (E.D.La. Oct. 18, 2004). Also, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. FED. R. EVID. 403 (2008).

A polygraph is a good example of a test sometimes held to yield prejudicial results. The U.S. Court of Appeals for the Fifth Circuit has held that Rule 403 plays a role in determining the possible prejudicial effect of polygraph evidence in comparison to its probative value. *See U.S. v. Pettigrew*, 77 F.3d 1500, 1515 (5th Cir. 1996). Additionally, this Court has touched on the issue of the prejudice associated with polygraph results before. In *Martin v. Nabors Offshore Corp.*, the Court denied the addition of a polygraph expert brought in to counteract the testimony of a witness. 2002 WL 34360292, *4 (E.D.La. April 2, 2002). The case was close, and each party had presented conflicting statements and testimony. *Id*. at *4, 5. The Court ruled that the polygraph results would prejudice the fact-finding mission of the court, especially in a case where both parties have called into question the opposing party's version of events. *See id*. at *4. The Court held that the prejudice outweighed the evidence's probative value, so the Court struck the polygraph results as unduly prejudicial. *Id*. at 5.

## III.     LAW AND ARGUMENT

As stated above, Gulf Stream believes that any results from a Formaldemeter are not only irrelevant but also inadmissible on the basis that the results are unreliable and unfairly prejudicial. The formaldemeter is an instant-reading screening tool that acts as an indicator of airflows and ventilation. *Hearing on Formaldehyde in FEMA Trailers Before the H. Comm. on Oversight and Government Reform*, 110th Cong. 86, 92 (2008) (testimony of Jim Shea, Chairman, Gulf Stream Coach, Inc.). However, it is not a scientifically accurate tool and is unable to test with any reliability the levels of formaldehyde in the ambient air. *Id*. at 86.

Dr. William Dyson, an industrial hygienist with extensive prior experience in dealing with formaldehyde, has discussed the flaws inherent in the Formaldemeter. *See* Deposition Transcript of William Dyson, taken on July 22, 2009, p. 59—61, attached as Exhibit "A." Dr.

Dyson used the device in the past but said that it does not work properly because it is not sensitive enough at low concentrations, is unstable, and is difficult to calibrate properly. *Id*. at 59. Simply put, "It's not a useful technique except to compare one situation with another situation using the same meter." *Id*. Dr. Dyson also stated that although the Formaldemeter manufacturers claim that the devices have improved over the years, "no one in the industrial hygiene community, at least that I'm aware of, believes that they have." *Id*. In Dr. Dyson's opinion, <u>Formaldemeters have no use whatsoever and are poor pieces of equipment for their intended purpose</u>. *Id*. at 61—62, 192.

This evidence shows that the Formaldemeter is unreliable as a testing method to determine the level of formaldehyde in the ambient air, and any results obtained from the mechanism are inadmissible. Indeed, the evidence indicates that not a single expert retained by the Plaintiff used such a device in measuring formaldehyde and opining on its effects at certain levels. This is further indication that Formaldemeter results are irrelevant because they cannot be relied upon to show what level of formaldehyde was contained in the Plaintiff's EHU, so they have no tendency to make any consequential issue in this case more or less probable.

Further, any probative value of the Formaldemeter results is vastly outweighed by the prejudice the results could bring upon Gulf Stream. First, the results have no probative value with respect to the Plaintiff's EHU because that unit was not screened with the device. Thus, the Formaldemeter results from other unrelated EHUs – which were obtained over a year after the Plaintiff's EHU was constructed and delivered – have no bearing on the level in the Plaintiff's unit. Additionally, while the results have no probative value, they are suggestive of a great deal because the levels shown by the formaldemeter can be elevated through the presence of various substances, as well as heat and humidity. As such, the results could create undue prejudice

toward Gulf Stream, much like unreliable polygraph results can create in some situations. Finally, the results could confuse the jury if the jurors were shown these results as indicative of the formaldehyde levels in the Plaintiff's EHU. Therefore, the prejudice and confusion associated with these results far outweigh their probative value. Because they are irrelevant and prejudicial, the results must be excluded.

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS, PFISTER & WEINSTOCK**

s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495**
**JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
(504) 837-3119 (FAX)
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON**
**Timothy D. Scandurro #18424**
**Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
(504) 529-6199 (FAX)
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

## **C E R T I F I C A T E**

I hereby certify that on the 26th day of August, 2009, a copy of the foregoing Memorandum in Support of Motion in *Limine* to Exclude Evidence of Certain Formaldehyde Screening Devices was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

                                     s/Andrew D. Weinstock
                                 _____
                             ANDREW D. WEINSTOCK #18495
                                   andreww@duplass.com