UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER * | | MDL NO. 1873 |
|         FORMALDEHYDE * | | |
|         PRODUCTS LIABILITY * | | |
|         LITIGATION * | | SECTION: N(5) |
| * | | |
| This Document Relates to: *Charlie Age, et al. v.* * | | JUDGE: ENGELHARDT |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 * | | |
| * | | MAG: CHASEZ |

**************************************************************************

## OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE
## TO EXPERT TESTIMONY OF MICHAEL E. GINEVAN, PH.D

On August 17, 2009, the Plaintiff, Alana Alexander, filed a Motion In Limine to Exclude Expert Testimony of Michael E. Ginevan, Ph.D. (Rec. Doc. 2730). Plaintiff asserts that Ginevan's environmental sampling and exposure assessment opinions are not unsupported, and therefore, unreliable. (Rec. Doc. 2730-2, at p.2). Further, Plaintiff asserts that Ginevan is not qualified to opine concerning the toxicity of formaldehyde, undermining many of his opinions. *Id.*

Gulf Stream Coach, Inc. submits that Plaintiff's Motion is unfounded, as many of the "opinions" Plaintiff challenges are not being offered by Gulf Stream at the trial of this matter. These "opinions" were either offered by Ginevan at his deposition in response to specific questioning (but not contained in his report), or are specifically withdrawn herein. Dr. Ginevan is being offered solely to address Plaintiff's attempts to estimate the historical levels of formaldehyde in the Alexander emergency housing unit ("EHU") based on statistical analysis of other EHU test results. Gulf Stream submits that Dr. Ginevan is qualified to offer such opinions based on his education, training and expertise.

### 1. Dr. Ginevan's Opinions are Limited to His Review of Plaintiff's Statistical Analysis Regarding Formaldehyde Testing in Other EHUs.

As noted by Plaintiff, Dr. Ginevan is offered by Gulf Stream to review the statistical basis of Plaintiff's expert reports regarding sampling for and estimates of formaldehyde contamination in FEMA trailers; more specifically, the EHU occupied by Plaintiff. (Rec. Doc. 2730-2, at p.2). Plaintiff correctly notes that Dr. Ginevan further opines concerning "qualitative modeling of formaldehyde levels in indoor environments and on the likely conservatism of regulatory limits for human exposure to toxic materials like formaldehyde." (Rec. Doc. 2730-3, at p. 2).

Mindful of the Court's instructions concerning the impending trial of this matter, Gulf Stream respectfully suggests that Dr. Ginevan will be offered solely to address the statistical basis of Plaintiff's expert reports regarding sampling for and estimates of formaldehyde contamination in FEMA trailers, including the EHU occupied by Plaintiff. While Gulf Stream does not agree that Dr. Ginevan's other opinions should be excluded for any reason asserted by Plaintiff, Gulf Stream has determined that the other opinions are duplicative of other experts' testimonies, which will be offered at the trial of this matter. Thus, in the interest of efficiency and to conserve the Court's limited resources, Dr. Ginevan's opinions relating to qualitative modeling of formaldehyde levels in indoor environments and opinions regarding indoor air exchange rates are withdrawn.[1] Therefore, Plaintiff's Motion in Limine concerning these opinions is moot, and need not be ruled upon.

---

[1] Gulf Stream asserts that Damian Serauskas (expert mechanical engineer/HVAC engineering) addresses air exchange rates, Dr. Graham Allen (expert chemist) addresses the release of formaldehyde over time, and Dr. William Dyson. Should the Court desire to address Plaintiff's Motion on these areas of testimony, Gulf Stream will brief the areas upon notification by the Court.

### 2. Dr. Ginevan's Remaining Opinions are Supported, and Are Within His Expertise

As is clearly established by his Report and Curriculum Vitae (Rec. Doc. 2730-3), Dr. Ginevan has over thirty years experience in the application of statistics to public health and environmental problems. He has authored *Statistical Tools for Environmental Quality Measurement*, and over 50 other publications in the area of statistics. (Rec. Doc. 2730-3, at p. 2). He previously served as a principle expert in biostatistics at the U.S. Nuclear Regulatory Commission, and he developed and managed the Occupational Health Surveillance System for the 300,000 member Department of Energy workforce. *Id.*

Based upon his experience and training, Dr. Ginevan examined the statistical sampling analysis offered by Plaintiff's experts, Paul Hewett, Mary DeVany, William Scott and Marco Kaltofen.[2] Thereafter, Dr. Ginevan notes that Hewett largely focuses on estimating the average formaldehyde level in sample trailers, which is repeated by the other experts. *Id.* at p. 6. Dr. Ginevan points out the significant difference in the actual measurements due to the varied sampling, and concludes that the diverse sampling is irrelevant to the actual exposure in the Plaintiff's unit. *Id.* at pp. 6-7. Thus, Dr. Ginevan concludes that Hewett makes "no connection between the group levels and the levels of formaldehyde present in the plaintiffs' trailer when they were in residence. Indeed, such a connection cannot be made because the only way to ascertain the formaldehyde exposure levels in a given trailer is to measure levels in that trailer under conditions that mimic, as close as possible, the trailer as occupied." *Id.* at p. 7.

The only criticism offered by Plaintiff concerning the foregoing area of testimony is that "While Ginevan is correct in the disparity, he provides no support that such disparity results in

---

[2] Gulf Stream notes that Motions in Limine have been filed on Kaltofen (Rec. Doc. 2271) and Hewett (Rec. Doc. 2792) and will be filed on DeVany. To the extent that these Motions are granted, Ginevan's testimony may be unnecessary.

3

inconclusive findings." (Rec. Doc. 2730-2, at p. 3). Notably, Dr. Ginevan was not asked the basis of this opinion in his deposition. Indeed, Dr. Given's specific opinion was addressed and passed over without a discussion as to the basis.

> Q. Let's go to the second paragraph for a second, Dr. Hewett's analysis, and we'll get into this in more detail.
>
> What is the best way to attempt to calculate what the exposure levels were in a trailer if you don't have a test result at the time that the people were in the trailer?
>
> A. It would be very difficult bordering to impossible to predict the level in a given travel trailer by trying to do an exposure reconstruction.
>
> Now, what you could do is to try to set up a trailer as much like the trailer that you had and then do an experiment like an exposure reconstruction study to see what the levels were.
>
> But that's not what Dr. Hewett got his data. He was sort of opportunistically saying here's some formaldehyde measurements, here's some other formaldehyde measurements, here's the average and that's not very helpful in terms of assessing individual exposure.

Exhibit "A," Deposition of Dr. Ginevan, July 28, 2009, at pp. 130-31.

Thereafter, Dr. Ginevan was questioned about Hewett's data set, but he was never asked for the basis of his conclusion that the enormous variability makes a connection between the group levels and the Plaintiff's trailer impossible. Had he been asked, Dr. Ginevan could have supplied ample support for this conclusion, including references to Dr. Ginevan's own text. These citations include: Chapter 1, pages 1 – 17, *Statistical Tools for Environmental Quality Measurement*, CRC Press, 2004. Plaintiff's failure to explore Dr. Ginevan's opinions, clearly stated in Dr. Ginevan's Affidavit, during discovery in this case cannot form the basis of excluding the opinions at trial.

Plaintiff further attacks Dr. Ginevan's criticism of Plaintiff's experts' averaging by suggesting that Dr. Ginevan contradicts his own testimony. (Rec. Doc. 2730-2, at p. 3).

However, an examination of the testimony establishes that Dr. Ginevan is consistent throughout his testimony. The precise testimony cited by Plaintiff developed, as follows:

> Q. Go to paragraph 4 on Hewett's report?
>
> A. I'm there.
>
> Q. You talk about the 1390 fold difference between .0023 parts per million and 3.2 parts per million.
>
> You see that?
>
> A. Yes.
>
> Q. What is an outlier as it relates to a statistical study?
>
> A. That's a complicated question.
>
> I like extreme values rather than outliers. Outlier implies that in some sense large values are incorrect; and, in fact, a lot of environmental measurements, you can have some fairly large values and a lot of smaller values.
>
> To the extent that you have a distribution, you expect large values, a few large values, then it is really not correct to say they're an outlier. You can say they are extreme values but they're the biggest thing you saw, but that doesn't necessarily mean they're a bad measurement.
>
> Q. Okay. What is an outlier?
>
> A. What?
>
> Q. What is an outlier?
>
> A. An outlier in a statistical sense would be a number which is larger than you would expect to see on the basis of some known statistical distribution.
>
> Q. Now, at the end of your paragraph 4 on Dr. Hewett's report, the last sentence beginning with page 7, it says, "Moreover, the extreme variability shown across the trailer suggests that an average level for a group of trailers is not helpful in assessing exposure to a specific individual."
>
> A. Yes.
>
> Q. Isn't that kind of statistical method done in every toxicology or epidemiology report?

5

> A. Excuse me?
>
> Q. Isn't that kind of statistical method calculated in every toxicology or epidemiology study?
>
> A. Yes.
>
> Q. Why do you all in an epidemiology study go ahead and do this statistical method?
>
> **A. Here's the problem.**
>
> **Q. Answer my question. Answer my question first and then tell me what the problem is, if you would.**
>
> Why is it done in epidemiology studies?
>
> A. We routinely use average levels in exposure assessment in epidemiology studies.
>
> Q. Why?
>
> A. Why? Okay.
>
> Because as a person moves through the environment, they are -- they're assumed to contact the environment or breathe the air in an area in kind of -- around -- they're moving around, so they're averaging their environment.
>
> So at the end of the day, if I have a set of measurements for an area or workplace, I can say, well, people who are moving through that workplace over time experience the average level in that -- in that workplace or in that field that we believe is contaminated.
>
> So it is basically -- it is a good measure of a person averaging their environment by moving around. That's the idea.

Exhibit "A," at pp. 156-58 (emphasis added).

Notice, once again, Dr. Ginevan is not examined about his opinion that disparity in measured formaldehyde levels renders averaging ineffective in assessing exposure to specific individuals in a single unit. Were he asked, Dr. Ginevan readily could have responded, with exactly what he stated in his Affidavit in this case, page 6, that: "The problem here is that when one looks at actual formaldehyde measurements from individual Cavalier trailers the level varies

6

from .0023ppm to 3.2ppm, which is a 1,390 fold difference.  So if one lived in a Cavalier travel trailer we can say with assurance that their exposure was somewhere between almost nothing and a whole lot.  Of course, some of this extreme variability is that sampling circumstances, such as whether or not the trailer was sealed or sampled as occupied, how formaldehyde measurements were made, and who collected and analyzed the data (6 different groups were involved) varied across measurements.  The larger question is why would one offer an analysis of such a diverse group of trailers when the question at hand is what was the likely level of formaldehyde in the plaintiffs' trailer at the time they occupied it.  My view is that the number of trailers that need to be sampled to estimate exposure for a given individual is *one*; the trailer that they lived in.  Moreover the extreme variability shown across trailers suggests that an average level for a group of trailers is not helpful in assessing exposure to a specific individual.

Just as important, the above testimony shows that Dr. Ginevan attempted to explain the difference between averaging in epidemiological studies and Hewett's attempted averaging, but he was directed **not** explain the problem.  Thereafter, Dr. Ginevan was never asked to go back and explain the problem.  Rather, he was directed to a new area of testimony.  If allowed to explain the difference, Dr. Ginevan would have explained that the averaging the exposure of a worker moving throughout a single work environment is intuitively different from averaging exposures in *different* environments and attempting to use that data to identify the conditions in a specific environment.

Therefore, Gulf Stream respectfully requests that this Honorable Court deny the Plaintiff's Motion in Limine concerning the single area of testimony for which Dr. Ginevan is

offered. Plaintiff has failed to establish that his opinions are not reliable and that such testimony is beyond his area of expertise. Thus, the Plaintiff's motion should be denied.

        Respectfully Submitted:

        **DUPLASS, ZWAIN, BOURGEOIS,**
        **PFISTER & WEINSTOCK**

        s/Andrew D. Weinstock
        _____
        **ANDREW D. WEINSTOCK #18495**
        **JOSEPH G. GLASS #25397**
        3838 N. Causeway Boulevard, Suite 2900
        Metairie, Louisiana 70002
        (504) 832-3700
        andreww@duplass.com
        jglass@duplass.com

        and

        **SCANDURRO & LAYRISSON**
        **Timothy D. Scandurro #18424**
        **Dewey M. Scandurro #23291**
        607 St. Charles Avenue
        New Orleans, LA 70130
        (504) 522-7100
        tim@scanlayr.com
        dewey@scanlayr.com
        **Counsel for Defendant, Gulf Stream Coach, Inc.**

## C E R T I F I C A T E

  I hereby certify that on the 26th day of August, 2009, a copy of the foregoing Opposition to Plaintiff's Motion In Limine to Exclude Expert Testimony of Michael E. Ginevan, Ph.D. was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

        s/Andrew D. Weinstock
        ANDREW D. WEINSTOCK #18495
        andreww@duplass.com