**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE PRODUCTS | * | |
| | LIABILITY LITIGATION | * | SECTION "N" (5) |
| | | * | |
| | | * | JUDGE ENGELHARDT |
| | | * | MAGISTRATE CHASEZ |
| | | * | |
| THIS DOCUMENT IS RELATED TO | | * | |
| | | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | | * | |
| *Inc., et al*, Docket No. 09-2892; | | * | |
| Alana Alexander, individually and on behalf | | * | |
| of Christopher Cooper | | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO DEFENDANT FLUOR ENTERPRISES, INC.'S MOTION**
**FOR SUMMARY JUDGMENT REGARDING CLAIMS AGAINST IT UNDER THE**
**LOUISIANA PRODUCTS LIABILITY ACT**

Plaintiff Alana Alexander ("Ms. Alexander" or "Plaintiff") responds to Defendant

Fluor Enterprises, Inc.'s ("FEI") "Motion for Summary Judgment Regarding Claims

Against It Under the Louisiana Products Liability Act" (Docket Entry No. 2743) and in

support, would show:

**GENERAL BACKGROUND**

Plaintiff is a part of thousands of people displaced by the Hurricanes Katrina and

Rita.  As part of the process of assisting those displaced individuals, FEMA contracted

with several major corporations without a bidding process, to transport and prepare

travel trailers as temporary substitute housing for the Katrina/Rita victims.  In FEI's

motion, it claims that they are not liable under the LLPA because they are not qualified

as a "manufacturer".   However, the testimony of FEI representatives, such as Charles

Whitaker, Jr., confirms that they constructed the final product and modified and

1

materially altered the mobile trailers.  FEI's construction and/or modification of such product, contributed to the damages complained of by the Plaintiff.  Further, since this is a requirement contract, FEMA represents and confirms that any decisions as to the jack up procedure were solely at the discretion of Fluor Enterprises, Inc.  Therefore, Fluor Enterprises, Inc.'s summary judgment motion should be denied.

## ARGUMENT AND AUTHORITIES

### I.    SUMMARY JUDGMENT STANDARD.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" show no genuine issue as to any material fact.   FED. R. CIV. P. 56(c).  "[T]he substantive law will identify which facts are material [and] [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted."); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### A.    Summary Judgment Is Not Proper Where Material Fact Issues Exist.

Ultimately, this Court's concern is to ascertain "whether there is a need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only be a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.   As such, "[a] District Court must resolve any factual issues of controversy in favor of the non-moving party," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), and draw all justifiable inferences in favor of the non-

movant. *Anderson*, 477 U.S. at 255; *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002).

In evaluating evidence to determine whether a factual controversy exists, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255. Instead, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe and should give credence to the evidence favoring the non-moving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

Ultimately, factual issues of controversy exist only where "there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). This Court will not, "in the absence of any proof, assume that the non-moving party could or would prove the necessary facts." *See id.* (citing *Lujan*, 497 U.S. at 888). Moreover, where "evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Thus, under Rule 56, this Court is not required to search for evidence that is not properly raised by the non-movant. *Id.* Instead, the non-moving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994), *cert. denied*, 513 U.S. 871 (1994). A factual controversy precludes summary judgment if the

3

"record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002) (citing *Geoscan, Inc. of Tx. V. Geotrace Techs., Inc.*, 226 F.3d. 387, 390 (5th Cir. 2000)).

**B.    Summary Judgments Are Not Favored.**

FEI incorrectly states that summary judgments are favored.  Rec. Doc. 3743-2, p.6.  Summary judgments are never favored amongst federal or state courts and are only proper if "there is no issue for trial."   *Anderson*, 477 U.S. at 249.   The purpose of summary judgment is to determine what issues need to be tried versus those that can be disposed of in summary fashion.  *See Matsushita Elec. Ind. Co.,* 475 U.S. at 587.

Because summary judgments deprive a party of the right to trial, certain presumptions arise regarding the burden of persuasion.  When defendants move for summary judgment, based on an affirmative defense, the defendant must show the absence of a genuine issue of fact and establish each element of its defense as a matter of law.  *See Crescent Towing & Salvage Co. v. M/V Anax* 40, F.3d. 741, 744 (5th Cir. 1994).

**II.    FEI IS PROPERLY WITHIN THE SCOPE OF THE LPLA.**

FEI's partial motion for summary judgment regarding claims against it under the LPLA must be denied as the Plaintiff has factually alleged beyond mere speculation that LEI qualifies as a "manufacturer."    The LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products."  LA. RS § 9:2800.52. Pursuant to LA. R.S. § 9:2800.53(1), a manufacturer is defined under the LPLA as:

> (1) "Manufacturer" means a person or entity who is in the
> business of manufacturing a product for placement into trade
> or commerce. "Manufacturing a product" means producing,

4

> making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
>
> (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
>
> (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
>
> (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.

LA. R.S. § 9:2800.53(1). "[F]or purposes of products liability, [the manufacturer of a product] includes not only the original manufacturer, but also any entity that substantially modifies or materially alters the product after its original manufacture through the use of different components or methods of assembly." *Marshall v. Beno Truck Equip., Inc.* 481 So.2d 1022, 1031 (La. App. 1st Cir. 1985) (citing *Spillers v. Montgomery Ward & Co., Inc.*, 294 So.2d 803 (La. 1974); *LeBouef v. Goodyear Tire & Rubber Co.*, 623 F.2d 985 (La. App. 5th Cir. 1980)) ("Thus a corporation or other entity may be cast in product liability for product modifications that engender injury-causing defects."). In the matter before this Court, FEI qualifies as a manufacturer and is within the scope of the LPLA for two primary reasons: (1) FEI constructed the final defective product used by the plaintiffs and (2) FEI's actions have significantly modified and materially altered the mobile trailers.

### A.     FEI Constructed the Final Defective Product.

FEI's actions render FEI a manufacturer and within the scope of the LPLA because FEI "constructed" the final product: an immobile, residential home.

Specifically, FEI prepared each mobile trailer for long-term occupancy by transporting the mobile trailer to its final destination, "jacking up" the units, and transferring the mobile trailers to concrete piers, thus "blocking" the trailers off their wheels and making the trailers immobile. **Exhibit A**, Deposition of Charles A. Whitaker, Jr., Aug. 5, 2009, p. 147-48.    FEI then finalized the transformation of the mobile trailers into EHUs by installing residential appliances, water, electricity and other utilities.  *Id*.  In performing these tasks, the methodology employed to "jack up" and "block" the trailers was left to the discretion of FEI.  **Exhibit A**, p. 40-41, 87.  These two tasks, the "jacking up" and "blocking," resulted in damages to the EHUs.  **Exhibit B**, Alexis Mallet, Jr.'s Expert Report, p. 98.  See also, **Exhibit C**, Deposition of Alexis Mallet, Jr., taken on July 17, 2009, p. 310–312.  Thus, through some of its own discretion, FEI constructed a long-term residential product in which the mobile trailer was simply a component part.  It was FEI who constructed, and thus manufactured, the EHU used by the plaintiffs.

## 1.    *FEI's Assembly of the EHUs Qualifies as Construction Under the LPLA.*

FEI's "construction" of the EHU is analogous to the type of "construction" recognized in *Coulon v. Wal-mart*, 734 So.2d 916 (La. App. 1 Cir. 1999).  In *Coulon*, Wal-mart was held to be a manufacturer under the LPLA after assembling a bicycle unit that proved to be defective.  *Id*.  Relying on the definition of "construction" as set out in *Black's Law Dictionary*, the court found that "the term 'manufacturing a product' indirectly refers to assembling; thus, one who assembles a product for sale is properly deemed a manufacturer of the assembled product under the LPLA."[1]  *Id*. at 919.   The

---

[1]     In Rec. Doc. 1346, this Court denied Shaw Environmental, Inc. and CH2M Hill Constructors, Inc.'s Federal Rule of Civil Procedure 12(b)(6) motion to dismiss LPLA

definition of manufacturer as applied to Wal-mart also applies to FEI as FEI's actions with respect to the EHUs are an invariable assembly of mobile trailers, cinder blocks, utility connections, etcetera.   **Exhibit A**, p. 147-48.  This assemblage resulted in stress to the EHU allowing increased moisture intrusion and formaldehyde exposure of which FEI is responsible.  *See generally Spillers v. Montgomery Ward & Co., Inc.*, 294 So.2d 803 (La. 1974) (finding that an entity may be liable for modifications that create injury-causing defects).

FEI attempts to distinguish *Coulon* on the grounds that *Coulon* is limited to its facts, and "insofar as the unassembled bicycle is concerned, each individual piece of the bicycle cannot be used by itself."  Rec. Doc. 2743, p. 15.  This argument is untenable as the Supreme Court of Louisiana recognized in *Spiller*s, "[a] manufacturer is no less a manufacturer because his product is composed in part of units manufactured by another."  *Spillers*, 294 So.2d at 807.  Thus, "while a bike is not a bike until assembled," Rec. Doc. 3743, p. 16, simply because FEI assembled a product composed of previously manufactured components does not preclude FEI from

---

claims against them.  Recognizing the similarity between Plaintiffs allegations of defective assembly/construction and those determined in *Coulon*, this Court quoted *Coulon*:

> [a]lthough LSA-R.S. 9:2800.53 does not include the word "assembly" or assemble" in the definition of "manufacturer" or "manufacturing a product," it does include the term "constructing."   Construct is not defined in the LPLA; however, *Black's Law Dictionary,* sixth edition, defines construct as follows: "To build; erect; put together; make ready for use; to adjust and join materials, or parts of, so as to form a permanent whole; to put together constituent parts of something in their proper place and order.

Rec. Doc. No. 1364 at p. 7.

attaining manufacturer status under the LPLA.    *Spillers*, 294 So.2d at 807. Furthermore, *Coulon* is not limited to its facts.  This Court, the Fifth Circuit and other Louisiana state courts have relied on *Coulon* for the assertion that a "manufacturer includes one 'who assembles a product for sale.'"  *Mcauslin v. Grinnell Corp.*, 2000 WL 1655242, *5 (E.D. La. 2000) (citing *Coulon*, 734 So.2d at 919); *see also Haley v. Wellington Specialty Ins. Co.*, 4 So.3d 307, 312 (La. App. 2 Cir. 2009); *Thibodeaux v. Krouse*, 991 So.2d 1126, 1134 (La. App. 1 Cir. 2008); *Ellis v. Weasler Engineering Inc.*, 258 F.3d 326 (5th Cir. 2001).   Thus, *Coulon* is persuasive in defining FEI as a manufacturer under the LPLA.

## 2. *FEI's Manufacturer Status Extends Through Subcontractor Assemblies*.

In addition, FEI cannot deny liability based on subcontractor assembly.   A manufacturer does not have to be the party that "assembles" or "constructs" the product. *Coulon*, 734 So.2d at 920.  In *Coulon*, Wal-mart contested manufacturer status because a subcontractor had physically assembled the bicycle.  *Id*.  Rejecting Wal-mart's argument, the court held that  "a 'manufacturer' is an entity which labels a product as its own or otherwise holds itself out as an entity in the business of constructing a product."   *Id*. (harmonizing La. R.S. § 9:2800.53(1)(a) and (b) as to sellers and manufacturers).  Even if FEI subcontracted the assembly of the EHUs to a third-party, FEI is still considered the manufacturer as FEI "h[eld] itself out as an entity in the business of constructing a product" as did Wal-mart in *Coulon*.  *Id*.  Ultimately, FEI's or their subcontractors' actions — the "blocking", the addition of ramps, connection of utilities, the "jacking up" of the mobile trailer — resulted in a product that was no longer mobile, but a stationary, residential EHU. **Exhibit A**, p. 147-48.  Thus,

under the LPLA, FEI is liable as a manufacturer for the harm caused by the "assembly" of this residential product.

### B.      FEI Materially Modified and Altered the Mobile Trailers.

FEI also qualifies as a manufacturer under the LPLA because of its substantial modifications to the travel trailers.  As recognized in *Marshall*, a manufacturer "includes not only the original manufacturer, but also any entity that substantially modifies or materially alters the product after its original manufacture through the use of different components or methods of assembly." *Marshall*, 481 So.2d at 1031.  Here, FEI converted and transformed the mobile trailers into stationary, residential housing.  FEI added residential appliances, plumbing, electricity, and other utilities that created a semi-permanent housing structure intended for long-term use.  **Exhibit A**, p. 147-48.

FEI attempts to deny manufacturer status by relying *Hughes v. Pogo Producing Co.*, 2009 WL 536047 (W.D. La. Mar. 3, 2009) and *Parks v. Baby Fair Imports, Inc.*, 726 So.2d 62 (La. App.  5th Cir. 1998).  However, both cases are factually and legally dissimilar from the case at bar.  In *Hughes*, the issue was whether a defendant oil-rig platform builder/seller was considered a manufacturer of bunk beds based on the welding of the beds to the platform.  *Hughes*, 2009 WL 536047 at *1.   In granting summary judgment, the court focused on the fact that the builder did not design nor modify the bunk beds, and the welding did not alter the beds nor create the alleged defective condition.  *Id.*

Similarly, in *Parks*, the issue was whether a defendant retailer of a children's shirt was considered a manufacturer based on the retailer's ability to choose certain features of the shirt when ordering.  *Parks*, 726 So.2d 62 at 63.  Because the defendant retailer

had nothing to with the shirt beyond selecting fiber content and color, the court granted summary judgment.

Both *Hughes and Parks* provide the outer bounds of manufacturer liability and more appropriately apply to non-manufacturer seller liability. *See Hughes*, 2009 WL 536047 at *2 ("We believe the legislature required more direct and specific conduct on part of the <u>seller</u>.") (quoting *Parks*, 726 So.2d at 64) (emphasis added). However, the actions of FEI fall square within manufacturer liability due to the direct and specific actions to modify and materially change the mobile trailer. As previously established, FEI engaged in systemic and substantial modifications to convert the mobile trailers into long-term, residential units, and thus are within the scope of the LPLA as manufacturers.

## CONCLUSION

While FEI wishes to characterize their actions as making "minor" adjustments, to do so would ignore the clear scope and depth of their actions. FEI served as the bridge that converted a temporary mobile unit to one intended to house occupants for the long-term. FEI's motion for summary judgment regarding claims against it under the LPLA must fail as the LPLA clearly provides that an entity who engages in construction or substantial modification of product is a "manufacturer." The summary judgment evidence establishes that FEI caused or contributed to the release of formaldehyde. *See Coulon*, 734 So.2d at 918; *see also generally* Rec. Doc. 1346. Clearly, FEI and its subcontractors' actions, at a minimum, altered the characteristics of the trailer through improper assembly. By converting the mobile trailers to EHUs, FEI is within the scope

of LPLA manufacturer status, and consequently, under the *Coulon* reasoning, FEI's motion for summary judgment as to its liability under the LPLA should be denied.

## PRAYER

WHEREFORE, Plaintiff Alana Alexander respectfully requests that the Court deny Fluor Enterprises, Inc.'s Motion for Summary Judgment Regarding Claims Against It Under the Louisiana Products Liability Act and for such other relief to which she is entitled.

Respectfully submitted,

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
      GERALD E. MEUNIER, #9471
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &
      Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:   504/522-2304
      Facsimile:    504/528-9973
      gmeunier@gainsben.com

      s/Justin I. Woods
      JUSTIN I. WOODS, #24713
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &
      Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:   504/522-2304
      Facsimile:    504/528-9973
      jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'**
**STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
Dennis Reich, Texas #16739600

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing on August 26, 2009.

 s/Gerald E. Meunier
GERALD E. MEUNIER, #9471