UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER * | | MDL NO. 1873 |
|     FORMALDEHYDE * | | |
|     PRODUCTS LIABILITY * | | |
|     LITIGATION * | | SECTION: N(5) |
| * | | |
| This Document Relates to: *Charlie Age, et al. v.* * | | JUDGE: ENGELHARDT |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 * | | |
| * | | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**GULF STREAM COACH, INC.'S MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO PROHIBIT PLAINTIFFS' RFERENCE TO OR INTRODUCTION OF EVIDENCE REGARDING UNREASONABLE AND SUBSEQUENTLY PASSED AMBIENT AIR STANDARDS**

**MAY IT PLEASE THE COURT:**

Defendant, Gulf Stream Coach, Inc., respectfully submits this Memorandum In Support of its Motion *In Limine* To Prohibit Plaintiffs' Reference To or Introduction of Evidence Regarding Unreasonable and Subsequently Passed Ambient Air Standards during the trial of this matter.

**I.     BACKGROUND**

The Court and parties are well aware of the nature and background of this litigation so reference is made to prior pleadings filed by Gulf Stream Coach, Inc. setting forth same.

Plaintiffs' claims in this case center around alleged exposure to formaldehyde in the travel trailer used by plaintiffs as an emergency housing unit ("EHU") following Hurricane Katrina. Gulf Stream Coach, Inc. anticipates that plaintiffs will attempt at the trial of this matter to introduce evidence of various ambient air standards that are irrelevant, highly prejudicial and/or unreasonable. Accordingly, Gulf Stream Coach, Inc. asks this Court to enter and Order prohibiting plaintiffs from referencing or introducing any evidence regarding pre-existing and

irrelevant, unreliable and/or prejudicial air standards, guidelines or exposure levels. These would include but not be limited to standards or guidelines promulgated by or on behalf of various bodies including minimum risk levels ("MRL") promulgated by the Agency for Toxic Substances and Disease Registry ("ATSDR"), permissible exposure limits ("PEL") promulgated by the Occupational Safety and Health Administration ("OSHA"), recommended exposure limits ("REL") promulgated by the National Institute for Occupational Safety and Health ("NIOSH"), threshold limit values ("TLV") promulgated by the American Conference of Governmental Industrial Hygienists ("ACGIH") and/or reference concentrations ("RfCs") promulgated by the United States Environmental Protection Agency ("USEPA").

Gulf Stream Coach, Inc. also asks that this Court enter an Order prohibiting plaintiffs from referencing or introducing any evidence regarding subsequently passed or promulgated ambient air standards, guidelines or exposure levels by the above entities as well as by the Federal Emergency Management Agency ("FEMA") (i.e. passed or promulgated after the manufacture of the Alexander plaintiffs' EHU in December 2004) as they are irrelevant, unreliable and highly prejudicial.

## II.    LEGAL STANDARD

Generally, evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence is admissible. Fed. Rule Evid. 401—402 (2009). Irrelevant evidence is thus inadmissible. *U.S. v. E.I. DuPont de Nemours & Co.*, 2004 WL 2347556, *2 (E.D.La. Oct. 18, 2004). Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or

by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. Rule Evid. 403 (2009).

Polygraph examinations are a good example of tests often held to yield prejudicial results. The Fifth Circuit Court of Appeals has held that Rule 403 of the Federal Rules of Evidence plays an important role in determining the prejudicial effect of polygraph evidence in comparison to its probative value. *See U.S. v. Pettigrew*, 77 F.3d 1500, 1515 (5th Cir. 1996). This Honorable Court has likewise touched on the issue of the prejudice associated with polygraph results. In *Martin v. Nabors Offshore Corp.*, this Honorable Court denied the addition of a polygraph expert sought to be admitted to counteract the testimony of a witness. 2002 WL 34360292, *4 (E.D.La. April 2, 2002). This Honorable Court ruled that the polygraph results would prejudice the fact-finding mission of the court, especially in a case where both parties have called into question the opposing party's version of events. *See Id*. at *4. The Court held that the prejudicial nature outweighed the evidence's probative value, necessitating the Court to strike the polygraph results as unduly prejudicial. *Id*. at 5.

Analogous to the inadmissibility of the polygraph exams in the above-cited jurisprudence, evidence of unreasonable and subsequently passed ambient air standards are irrelevant and highly prejudicial, therefore, inadmissible.

**III.    LAW AND ARGUMENT**

    **A.     Evidence of Pre-Existing Air Standards That Set Forth Unreasonable Threshold Limits is Irrelevant and Highly Prejudicial**

As previously discussed above, Gulf Stream Coach, Inc. anticipates that plaintiffs may attempt at the trial of the matter to introduce evidence of various ambient air standards, levels and/or valuse that set forth minimum threshold levels that do not result in adverse health effects in humans. It should be noted that ATSDR environmental health scientist, a witness identified

by plaintiffs in this matter, Christopher DeRosa, has written on behalf of the ATSDR that "**these values actually represent levels of a potential toxicant that are highly unlikely to represent any threat to human health over a particular/specified duration of daily exposures.** . . The guidance/reference values are most definitely not threshold values for the onset of toxicity in any exposed population . . .they serve as a tool for assisting in the determination of whether further evaluation of a given potential exposure scenario is warranted." Ex. "A," Risher, J. and DeRosa, C., <u>The Precision, Uses, and Limitations of Public Health Guidance Values</u>, Human and Ecological Risk Assessment, Vol, 3, No. 5, pp. 681-700, 681 (1997) (emphasis added)..

For example, minimal risk levels ("MRL") generated by ATSDR are derived from hazardous substances using the no-observed-adverse-effect level/uncertainty factor approach. *See* Ex. "B," ATSDR Minimal Risk Levels and Worksheet (Appendix "A" to the ATSDR 1999 Toxicological Profile).[1] These measures are not based on scientific findings or principles but are based solely on the lowest levels that could be detected by available instrumentation at the time. *Id*. Indeed, the ATSDR states that "It is important to note that MRLs are not intended to define clean-up or action levels" and that "Exposure to a level above the MRL does not mean that adverse health effects will occur." *Id*. p. A-1. These MRLs are below levels that might cause adverse health effects in people most sensitive to such chemical-induced effects. *Id*. Specifically, the .008 ppm MRL is explained as being derived from the lowest observable health effect ("LOAEL") of .240 ppm (found in the Holstrom paper cited therein) divided by an "uncertainty factor" of 30. *Id*. p. 7. This not only would require a very long discussion of the inadequacies and conditions of the paper it is based upon, but would require a "mini-trial" on each of these (i.e. all the various levels promulgated by the entities cited in the prior section)

---

[1] ASTDR minimal risk levels state 0.04 ppm for acute exposure, 0.03 ppm of intermediate duration, and .008 ppm for chronic duration exposure. *Id*. Only referenced pages are attached hereto as the profile is approximately 500 pages in volume.

"health safety values."  Note that the "lowest observed adverse effect" of .240 ppm is **nearly five times higher** than the level actually measured in the Alexander's trailer by plaintiffs.

Likewise, the OSHA guidelines, which cite NIOSH levels (i.e. a recommended level of .016 ppm over a 10-hour, time weighted average with 14 hours of non-exposure recovery time), define the levels not as a "safety standard" but, rather, as the "lowest reliably quantifiable concentration at the present time."  Ex. "C," OSHA Guideline, pp. 1-2.  Interestingly, this OSHA level (adopting the NIOSH level), is twice the level set forth above by the ATSDR (.008 ppm).  Based on the OSHA definition cited above of what these levels represent, this would suggest that any measurement below .016 ppm would be unreliable (thus pitting the OSHA and NIOSH level against the ATSDR level in terms of reliability.

In *Moore v. Ashland Chemical, Inc.*, 95-20492 (5 Cir. 8/14/98), 151 F.3d 269, 279, the United States Fifth Circuit Court of Appeals recognized that without evidence regarding the necessary levels of exposure required to cause specific injuries, testimony concerning those levels would be excluded. *Id*. at 278-279.  Plaintiffs herein, however, will likely attempt to introduce evidence regarding ambient air levels that set forth threshold levels without any support that such levels cause adverse health effects in humans.  Referencing or introducing such evidence of these standards that set forth unreasonable threshold levels that do not result in adverse health effects, is both irrelevant to the facts at hand and inadmissible on the basis of being unfairly prejudicial.  Any such evidence would be unreliable for the reasons identified by the Fifth Circuit in *Moore*.

In *Allen v. Pennsylvania Eng'g. Corp.*, 102 F.3d 194, 198 (5th Cir. 1996), the Fifth Circuit distinguished between regulatory risk assessments and causation.  The Court noted that "regulatory and advisory bodies such as IARC, OSHA, and EPA utilize a 'weight of the

evidence' method to assess the carcinogenicity of various substances in human beings and suggest or make prophylactic rules governing human exposures." *Id*. at 198. "This methodology results from the preventative perspective that the agencies adopt in order to reduce public exposure to harmful substances." *Id*. "The agencies' threshold of proof is reasonably lower than that appropriate in tort law, which traditionally make[s] more particularized inquiries into cause and effect, and requires a plaintiff to prove that it is more likely than not that another individual has caused him or her harm." *Id*. at 198 (quoting *Wright v. Willamette Indus,, Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996)).

The Fifth Circuit's reasoning in *Moore* and *Allen* prevents the offering of evidence that is not based on reliable proof of the level of formaldehyde necessary to cause adverse health effects. As specified in *Allen*, any such minimal risk levels adopted by agencies set threshold levels that are reasonably lower than that appropriate in tort law. Similarly, the Fifth Circuit also requires medical experts offering general causation opinions to identify the level of exposure necessary to cause a particular disease.

In the case at hand, Gulf Stream Coach, Inc. anticipates that plaintiffs may attempt at the trial of the matter to introduce evidence of various ambient air standards that set forth minimum threshold levels that do not result in adverse health effects in humans. These ambient air standards are irrelevant since plaintiffs have produced no evidence that exposure at the threshold limits of these ambient air standards cause adverse health effects – plaintiffs' own witness, Dr. DeRosa, even agrees. Furthermore, plaintiffs have produced no evidence that defendant herein had a duty at the time of plaintiffs' alleged exposure to abide by these standards. Indeed, FEMA's deputy administrator, David Garratt, confirmed that there were no applicable federal (i.e. HUD) standards that applied to trailer construction nor were there any applicable

formaldehyde specifications applicable to trailers at the time. Ex. "D," Depo. David Garratt, . pp. 158, 183-184.

If OSHA, NIOSH and ATSDR can't even come to a consensus, it is unreasonable to expect a lay jury to.  Presentation of this evidence is not only unwarranted by the statements contained (and cited above) in the very publications of the promulgating entities' themselves, it would require a series of "mini-trials" to explain and discuss each entities' promulgated levels, how they were derived, what they mean, etc... Unless plaintiff submits admissible, relevant evidence from the scientific community that formaldehyde does causes adverse health effects at a specific threshold level of exposure, plaintiffs should be excluding from making any reference to or introducing evidence concerning that threshold level, including Minimal Risk Levels adopted by agencies.  Admittance of such evidence would be highly prejudicial to the defense of this matter.   As comparable to the U.S. Court of Appeals for the Fifth Circuit's holding in *U.S. v. Pettigrew* and this Court's reasoning in *Martin v. Nabors Offshore Corp.*, introduction of such inadmissible evidence is high prejudicial.

Although discovery in this matter is substantially complete, plaintiffs have not produced any evidence that exposure to formaldehyde at the threshold limits of the above-referenced ambient air standards, such as certain agency adopted MRLs, results in the alleged adverse health effects. Without an expert or evidence to establish that these base limits do not cause adverse health effects, plaintiffs should be precluded from making any reference or introducing any evidence regarding these ambient air standards.  Plaintiff has not offered any information regarding the necessary level of formaldehyde exposure required to cause a particular disease. Undue prejudice would result if plaintiffs were allowed to reference selected agency recommended levels, such as NIOSH and ATSDR, without any evidence that such levels were

even applicable to trailer construction or, moreover, result in adverse health effects. The threshold standards set forth by these agency recommended levels are not indicative of whether an individual sustains adverse health effects, and therefore, are inadmissible.[2]

Evidence regarding ambient air standards that set forth minimal threshold limits, without evidence or support that exposure results in adverse health effects, is irrelevant since they cannot be relied upon by the trier of fact while considering causation. Any probative value of such threshold limits being introduced into evidence is vastly outweighed by the prejudice that would be brought upon defendant, Gulf Stream. Introduction of such evidence would result in undue prejudice toward Gulf Stream that is analogous to the manner in which polygraph results can be highly prejudicial in certain situations. Such evidence would confuse and mislead the trier of fact if they were introduced as being indicative of a defendant violating standards that do not result in adverse health effects. The prejudice and confusion associated with allowing such evidence to be introduced far outweighs any probative value.

Accordingly, referencing or introducing evidence of these standards, guidelines or levels, particularly without any evidence these levels are (a) applicable or (b) result in adverse health effects, is not only irrelevant but also inadmissible since it is unfairly prejudicial to defendant herein and would require an exorbitant amount of time and waste of resources to explain, likely also to hopelessly confuse the jury.

**B.   Evidence of Subsequently Passed Ambient Air Standards Is Irrelevant and Highly Prejudicial**

Plaintiffs herein have specifically alleged injuries resulting from their alleged exposure to the release of formaldehyde and/or formaldehyde vapors in emergency housing units following

---

[2] If plaintiffs do offer such evidence, it should necessarily be by way of basis in scientific studies, not the agency levels – i.e. plaintiffs should not be permitted to simply bolster studies with evidence of these levels.

Hurricanes Katrina and Rita (Doc. No. 109, at ¶ 30). Gulf Stream Coach, Inc. anticipates that plaintiffs may attempt at the trial of this matter to introduce evidence of ambient air standards passed into regulation or adopted by the above agencies after the time periods of (a) the manufacture of the trailer in December 2004 and/or (b) after plaintiffs' alleged exposures to formaldehyde.

Federal Rules of Evidence 401 to 402, establishes evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence is admissible. FED. R. EVID. 401—402 (2008). Of course, irrelevant evidence is thus inadmissible. *U.S. v. E.I. DuPont de Nemours & Co.*, 2004 WL 2347556, *2 (E.D.La. Oct. 18, 2004).

In *Robertson v. Cal Dive Intern., Inc.*, 2006 WL 1968917 (E.D.La. 2006), the Court for the Eastern District of Louisiana granted defendant's Motion in Limine as the United States Coast Guard regulations referenced by plaintiff's expert in his report did not apply to the offshore vessel at issue. Specifically, the regulations applied to passenger vessels whereas the vessel at issue was an offshore service vessel that was not authorized to carry any passengers. The Court concluded that any opinions formed by plaintiff's expert based upon the Coast Guard regulations cited were irrelevant and, therefore, should not be admitted at the trial of this matter.

Similar to the facts in *Robertson v. Cal Dive Intern., Inc.*, ambient air standards that were not in effect and enforceable at the time of plaintiffs' alleged exposure are irrelevant. Any attempt by plaintiffs to introduce into evidence such ambient air standards should not be admitted during the trial of this matter. Any standards set in place or adopted after the alleged exposures have no bearing on this matter, as the defendants herein were not subject to these

regulations. This would apply in this case to standards promulgated by any of the entities cited in this Memorandum (or any others) and would include the standard promulgated by FEMA in 2008 of .016 ppm formaldehyde as an exposure limit in travel trailers (no formaldehyde exposure levels had existed for travel trailers prior to that time) or any standards adopted by the recreational vehicle industry, since December 2004. Further proof of this point, similar to that set forth in the prior section, was David Garrat's testimony (the acting deputy administrator of FEMA) that the new FEMA specification of .016 ppm for formaldehyde emissions after 2007 was for "brand-new units that were at levels that are far below any living environment any place." Ex. "D," p. 192.

Any evidence or testimony regarding the standards not in effect at the relevant time periods is inaccurate, inappropriate and highly misleading. In light of this fact, Defendants respectfully submit that this Honorable Court should issue an Order prohibiting plaintiffs from offering into evidence or referring to subsequently passed ambient air standards that are irrelevant and highly prejudicial.

## IV.   CONCLUSION

Gulf Stream Coach, Inc. respectfully asks that this Court enter an Order prohibiting plaintiffs from offering any testimony, reference to or evidence of pre-existing air standards, levels or guidelines regarding formaldehyde as set forth in Sections I, III (A).

Gulf Stream Coach, Inc. also respectfully asks that this Court enter an Order prohibiting plaintiffs from offering any testimony, reference to or evidence of any standards, levels or

guidelines promulgated, adopted or set in place after December 2004 and/or after the alleged exposures in this case could have occurred (i.e. May 2006) as set forth in Section III (B).

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/Andrew D. Weinstock

_____
**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
(504) 837-3119 (FAX)
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON**
Timothy D. Scandurro #18424
Dewey M. Scandurro #23291
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
(504) 529-6199 (FAX)
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

## C E R T I F I C A T E

I hereby certify that on the 26th day of August, 2009, a copy of the foregoing Gulf Stream Coach, Inc.'s Memorandum in Support of Motion *in Limine* to Prohibit Plaintiffs' Reference To or Introduction of Evidence Regarding Unreasonable and Subsequently Passed Ambient Air

Standards was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

        s/Andrew D. Weinstock
        _____
        ANDREW D. WEINSTOCK #18495
        andreww@duplass.com