```
                                                              Page 1
 1                UNITED STATES DISTRICT COURT

 2                   DISTRICT OF LOUISIANA

 3                    NEW ORLEANS DIVISION

 4   In Re:   FEMA Trailer       )

 5   Formaldehyde Products       ) MDL No. 1873

 6   Liability Litigation        )

 7

 8                                    Washington, D.C.

 9                                    Tuesday, July 7, 2009

10   Videotape Deposition of DAVID EDWARD GARRATT, called

11   for examination by counsel for Plaintiffs in the

12   above-entitled matter, the witness being duly sworn

13   by CHERYL A. LORD, a Notary Public in and for the

14   District of Columbia, taken at the offices of NELSON

15   MULLINS RILEY & SCARBOROUGH LLP, 101 Constitution

16   Avenue N.W., Suite 900, Washington, D.C., at 9:07

17   a.m., and the proceedings being taken down by

18   Stenotype by CHERYL A. LORD, RPR, CRR.

19

20

21

22
```

David Edward Garratt                                           July 7, 2009
                        Washington, DC

                                                              Page 158

1   were no federal standards that applied -- there were

2   no HUD standards that applied to their construction

3   at the time that those units were purchased for

4   Hurricane Katrina.

5        Q.   Well, how did the new specifications for

6   travel trailer manufacturing change what you refer to

7   as the industry standards?

8        A.   Well, our new specifications for park

9   models and mobile homes require that the units test

10  at point- -- what they ended up requiring is that

11  below .016 PPM.

12            Now, how the manufacturers and what the

13  manufacturers did to achieve that level in terms of

14  reducing components, materials, glues, et cetera,

15  that emit formaldehyde was up to them.  We were

16  interested in the outcome, which was a unit that

17  emitted no more than this amount of formaldehyde.

18            For travel trailers, we faced a different

19  or additional concern, and that was, they don't have

20  the ventilation systems that a park model or a mobile

21  home has.

22            So even if they use reduced formaldehyde,

David Edward Garratt　　　　　　　　　　　　　　　July 7, 2009
　　　　　　　　Washington, DC

Page 183

1    responsibility for the construction of the units and
2    whatever guidance they provide regarding its use, but
3    it's our responsibility as the purchasers and
4    subsequent providers of those units to the disaster
5    population to be -- to own up to and be responsible
6    for those units from that point on, at least in terms
7    of dealing with the needs and concerns of the
8    occupants of units that we own and have provided to
9    them, so I'd say it's a shared responsibility.
10         Q.    And you certainly wanted to -- you
11   would -- you would rely on the manufacturer of a
12   travel trailer for example to furnish a product that
13   would be safe for long-term residents knowing that
14   these trailer travels, which as you say are
15   recreational vehicles, were going to be used for
16   long-term residents?
17             MS. DALY:  Object to the form to the
18   extent it's calling upon him to give a legal
19   conclusion.
20             MR. SCANDURRO:  I also object to the form
21   of the question.
22         A.    I would suggest that the responsibility of

```
                                                              Page 184
 1   the manufacturers would be to meet the terms of
 2   whatever performance specifications that we ask them
 3   to meet with contracts that we awarded to them.
 4             BY MR. MEUNIER:
 5        Q.   Did you specify anything in those
 6   contracts that was directed to long-term residents or
 7   occupancy of a unit containing formaldehyde-emitting
 8   products?
 9             MR. MILLER:  Objection, assumes facts not
10   in evidence.
11        A.   Don't know.
12             BY MR. MEUNIER:
13        Q.   Would it be in the contract if it was
14   there?
15        A.   Well, yes.
16        Q.   Okay.  I mean, it wouldn't have been done
17   verbally.
18             If you specified it, it would be written
19   in the contract?
20        A.   I can't imagine a verbal --
21        Q.   Right.
22        A.   -- of that nature that would -- would not
```