UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE PRODUCTS | * | |
| | LIABILITY LITIGATION | * | SECTION "N" (5) |
| | | * | |
| | | * | JUDGE ENGELHARDT |
| | | * | MAGISTRATE CHASEZ |
| | | * | |
| THIS DOCUMENT IS RELATED TO | | * | |
| | | * | |
| *Charlie Age, et al v. Gulf Stream Coach Inc., et al*, Docket No. 09-2892; | | * | |
| | | * | |
| Alana Alexander, individually and on behalf of Christopher Cooper | | * | |
| | | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO DEFENDANT FLUOR ENTERPRISES, INC.'S
MOTION FOR SUMMARY JUDGMENT BASED ON THE
GOVERNMENT CONTRACTOR DEFENSE**

Plaintiff Alana Alexander ("Ms. Alexander" or "Plaintiff") responds to Defendant Fluor Enterprises, Inc.'s ("FEI") "Motion for Summary Judgment Based on the Government Contractor Defense" (Docket Entry No. 2802) and in support, would show:

**GENERAL BACKGROUND**

Plaintiff is a part of thousands of people displaced by the Hurricanes Katrina and Rita. As part of the process of assisting those displaced individuals, FEMA contracted with several major corporations without a bidding process, to transport and prepare travel trailers as temporary substitute housing for the Katrina/Rita victims. Apparently, one of the reasons the no bid process was used was because the "no bid" contractors purported to have the ability to transport and set up the travel trailers in a good and workmanlike manner. Although in its motions, Fluor Enterprises, Inc. claims to not have

1

any discretion as to what it had to do to transport and set up the travel trailers, the testimony of FEI representatives, such as Charles Whitaker, Jr., states just the opposite in that FEI had the discretion on how to jack up the trailers. FEI's negligence in that discretionary procedure, either directly or through its subcontractors, contributed to the damages complained of by the Plaintiff. Further, since this is a requirement contract, FEMA represents and confirms that any decisions as to the jack up procedure were solely at the discretion of FEI. Since these facts preclude the application of the government contractor defense to Fluor Enterprises, Inc. under the facts of this case, FEI's summary judgment motion should be denied.

## ARGUMENT AND AUTHORITIES

### I.   SUMMARY JUDGMENT STANDARD.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" show no genuine issue as to any material fact. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material [and] [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted."); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Additionally, per Rule 56(c), in order to defeat summary judgment based on an affirmative defense, FEI must make a showing, as a matter of law, that establishes each element of the affirmative defense. *Celotex Corp.*, 477 U.S. 317, 322 (1986); *see also Tillet v. J.I. Case Co.*, 756 F.2d 591, 595 (7th Cir. 1985).

Ultimately, this Court's concern is to ascertain "whether there is a need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only be a finder of fact because they may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. As such, "[a] District Court must resolve any factual issues of controversy in favor of the non-moving party," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), and draw all justifiable inferences in favor of the non-movant. *Anderson*, 477 U.S. at 255; *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002).

In evaluating evidence to determine whether a factual controversy exists, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255. Instead, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe and should give credence to the evidence favoring the non-moving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

Essentially, factual issues of controversy exist only where "there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). This Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (citing *Lujan*, 497 U.S. at 888). However, because the moving party has the burden of persuasion on the affirmative defense at trial, the moving party must satisfy this burden before any burden falls on the

nonmoving party to come forward with evidence demonstrating the existence of factual controversy. *See Noramco Shipping Corp. v. Bunkers Intern. Corp.*, 2003 WL 22594419 (M.D. Fla. 2003). To meet this burden, the moving party is required to make a showing sufficient to establish the existence of every element essential to the moving party's case. *Helman v. Murry's Steaks, Inc.*, 742 F. Supp. 860 (D. Del. 1990). Thus, summary judgment based on an affirmative defense is available only by producing credible evidence that would entitle the moving party to a directed verdict if that evidence remained uncontroverted at trial. *See Celotex*, 477 U.S. at 323. Ultimately, a denial of summary judgment is appropriate when the moving party fails to make a showing sufficient to establish the existence of an element essential to his, and on which the moving party will bear the burden of proof at trial. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999).

## II.   THE GOVERNMENT CONTRACTOR DEFENSE DOES NOT APPLY TO FEI.

As enunciated by the United States Supreme Court in the seminal case *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), "state law which holds Government contractors liable for design defect in military equipment does in some circumstances present a 'significant conflict' with federal policy and must be displaced." *Id.* at 512. The basic purpose of the government contractor defense is to "prevent the contractor from being held liable when the government is actually at fault," *Trevino v. General Dynamics Corp.*, 865 F.2d 1474 (5th Cir.), *cert. denied*, 493 U.S. 935 (1989), as "tort liability principles properly seek to impose liability on the wrongdoer whose act or omission caused the injury, not the otherwise innocent contractor whose only role in causing the injury was the proper performance of a plan supplied by the government."

4

*In re Agent Orange Products Liability Litigation*, 506 F.Supp. 762, 793-94 (E.D.N.Y), *rev'd on other grounds*, 635 F.2d 987 (2d Cir. 1980), *cert. denied sub nom; Diamond Shamrock Chemical Co. v. Ryan*, 465 U.S. 1067 (1984). However, as noted by the Fifth Circuit Court of Appeals:

> The protective shield in favor of the contractor collapses when the actions of the government contractor — and not those of the Government — produce the damaging defect. In such a situation, fairness dictates that a government contractor should not be permitted to escape liability by asserting the sovereign immunity of the Government.

*Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 245-46 (5th Cir. 2000). To determine whether this protective shield is impenetrable, the United States Supreme Court in *Boyle* articulated three elements:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States.

*Boyle*, 487 U.S. at 513. Thus, if the contractor cannot prove <u>all</u> of the elements, the protective shield no longer stands and the contractor remains liable. *Smith v. Xerox Corp.*, 866 F.3d 135, 136-37 (5th Cir. 1989) (emphasis added). Here, FEI should not be permitted to escape liability for its discretionary, independent, negligent acts, and FEI's motion for summary judgment based on the government contractor defense must be denied for three distinct reasons: (1) the IA/TAC lacked specificity and left much discretion to FEI with regard to the "jacking up" of the mobile trailers; (2) FEI failed to comply with the remaining specifications enunciated in the IA/TAC; and finally (3) FEI knew of the hazards of formaldehyde and failed to inform FEMA.

5

### A.     FEI Retained Discretion Over Key Portions of the EHU Implementation.

The first element of the government contractor defense requires the government to provide precise specifications leaving no discretion to the contractor. *Boyle*, 487 U.S. at 513; *Wisner v. Unisys Corp.*, 917 F. Supp. 1501, 1510 (DC Kan 1996) (noting that "virtually microscopic precision" meets the first element). The specifications need not address the specific defect alleged, but address the design feature in question. *Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000). Here, as noted by FEI itself, because "FEMA did not explicitly tell FEI how to get the trailer from the ground on two axles and a tongue jack up onto the piers," Rec. Doc. 2783-2, p. 22, FEI retained complete discretion over the "jacking up" of the mobile trailers, thus precluding satisfaction of the first element of the government contractor defense.

In *Trevino v. General Dynamics Corp.*, 865 F.2d 1474 (5th Cir. 1989), the Fifth Circuit provided a lengthy analysis of the first element noting that governmental approval of imprecise or general guidelines implicitly gave contractors discretion. *Id.* at 1480-81 ("If the government approved imprecise or general guidelines, then discretion over important design choices would be left to the government contractor."). Additionally, *Trevino* notes the minimal degree of discretion required before a contractor is ineligible for the government contractor defense:

> The government exercises its discretion over the design when it actually chooses a design feature. The government delegates the design discretion when it buys a product designed by a private manufacturer; when it contracts for the design of a product or a feature of a product, leaving the critical design decisions to the private contractor; or when it contracts out the design of a concept generated by the government, requiring only that the final design satisfy

> minimal or general standards established by the government. If the government delegates the design discretion to the contractor, the exercise of that discretion does not revert to the government by the mere retention of a right of "final approval" of a design nor by the mere "approval" of the design without any substantive review or evaluation of the relevant design features or with a review to determine only that the design complies with the general requirements initially established by the government. The mere signature of a government employee on the "approval line" of a contractor's working drawings, without more, does not establish the government contractor defense.

*Id.* at 1480. More importantly, however, is the Fifth Circuit's clear pronouncement that the question of discretion is properly based before the trier of fact as "the trier of fact should not evaluate the wisdom or quality of any government decision, but must locate the actual exercise of the discretionary function." *Id.*

In arguing that FEMA provided precise specifications with regard to the EHUs, FEI begins by detailing the extent of the IA/TAC. While the cited portions of the IA/TAC are seemingly specific, such portions do not paint a complete picture of the tasks to be completed by FEI nor do they articulate what truly occurred during implementation. For instance, the IA/TAC does not provide any specifics as to "jacking up" the trailers, and FEI admits that the means and methods for "jacking up" the trailers was to be determined by Fluor.

> Q: Let me ask a different question. To your knowledge were there anything in the technical directions issued by the United State Government that governed the means or method by which Fluor and/or their contractor should use to elevate the travel trailers such that they could be put on blocks?
>
> A: Means and methods to elevate to put on locks. No, I don't think that would be included there, no, sir.

7

> Q:   And if the manner in which to elevate the travel trailers, put them on blocks, was not covered in the technical directions, or in the task orders, or in the performance work statement, then it was up to the discretion of Fluor and their subcontractors how to elevate the travel trailers, wasn't it?
>
> A:   You've asked two questions there in one when you said it was up to Fluor and its subcontractors. FEMA didn't say specifically how to jack, if that's what you're asking. We instructed our subcontractors and our employees on the proper jacking methods mainly from a safety standpoint.
>
> Q:   Let me ask a different question just so we're clear. The United States Government did not dictate to Fluor on the means and methods to be used to jack up travel trailers, did they?
>
> A:   From what you're saying about means and method, no, I don't --- I don't think so.  I mean, just like if you're saying would they tell a carpenter how to hold a hammer and how to drive a nail, no, they didn't tell us how to do that.
>
> Q:   So the means and methods to elevate these travel trailers to put them on blocks was left up to the discretion of Fluor, wasn't it?
>
> A:   Done to the discretion.  Yeah, I would  guess you could call it that.

**Exhibit A**, Deposition of Charles A. Whitaker, Jr., taken on Aug. 5, 2009, p. 85-87.

More recently, another FEI representative acknowledged that FEMA provided no specifications regarding the "jacking up" of the mobile trailers.

> Q:   Mr. Methot you now have read through Exhibit 7 to the prime contract, which governs installing travel trailers, is that right?
>
> A:   Yes.

8

> Q: There is no where in there that the United States dictates to Fluor the means and methods as to how to elevate the travel trailers such that they can be put on blocks is there?
>
> A: I saw no reference to -- to jacking up the trailer itself.
>
> . . .
>
> Q: Your understanding, is that the FEMA wished Fluor to put these travel trailers on blocks, is that right?
>
> A: Yes.
>
> Q: However, FEMA did not dictate to Fluor as
>
> A: Not to my knowledge.
>
> Q: And you were in the position with regard to communicating information by the United States Government to Fluor on execution of their contract responsibilities, weren't you?
>
> A: Yes.
>
> Q: So it would have been up to the discretion of Fluor if the United States issued no direction to them on how to elevate or jack up these travel trailers, it would have been to the discretion of Fluor and there subcontractors, the way and manner in which to elevate these travel trailers, is that right?
>
> A: Yes, generally that's probably true.

**Exhibit B**, Deposition of David Methot, Aug. 25, 2009, p. 132-34.  This is of particular significance because the means and methods of "jacking up" the trailers utilized by FEI installers was a major cause in increasing formaldehyde exposure to Plaintiff.

9

> The temporary housing unit was placed on blocks during its installation on the Alexander's property. The instructions found on the scissor jacks of the trailer states that the weight of the unit should not be taken off the wheels. In jacking the unit and not sufficiently supporting the frame, the installation contractor created a condition conducive to the interior panels warping in the bedroom on the front and rear walls and in the bathroom.
>
> Fluor, the installation contractor, failed to give adequate directions to its employees of how to jack all of the corners and centers of the temporary housing unit.... It appears the units were jacked up on those corners one or two at a time and then the blocking was placed to support those areas.
>
> This caused the warping of the wall panels and the roof leak, increasing formaldehyde emissions.

**Exhibit C**, Expert Report of Alexis Mallet, Jr., Bates No. ALX-EXP-44-000098-000099. *See also*, Exhibit D, Deposition of Alexis Mallet, Jr., taken on July 17, 2009, p. 310-12. It is clear that FEI exercised its discretion with respect to "jacking up" Plaintiff's trailer, and that their poor use of discretion with respect to "jacking up" the trailer at issue damaged Plaintiff.

The matter at hand is similar to the Ninth Circuit decision in *Snell v. Bell Helicopter Textron*, 107 F.3d 744 (9th Cir. 1997), where the court held that a fact question as to whether the government provided reasonably precise specifications for the helicopter's drive shaft precluded summary judgment under the government contractor defense. *Id.* at 746-47. Specifically, the Ninth Circuit determined that even though the summary judgment record established that the government was significantly involved in and approved the of the entire design of the helicopter, the evidence did not establish as a matter of law that the government exercised its discretion with respect to the drive shaft and its components. *Id.* at 748-49. On the contrary, the Ninth Circuit noted that the

10

testimony of the manufacturer's official in charge of government dealings confirmed that it essentially retained discretion over the drive shaft.  *Id.*

While the government is not required to issue standards that remove absolutely all discretion from the contractor, the government must provide "reasonably precise specifications" as to the design of the defective component.  *Carley v. Wheeled Coach*, 991 F.2d 1117, 1125 (3d Cir. 1993) (finding that specifying the maximum height of forty-three inches for the design feature in question was reasonably specific).  While FEMA did provide guidance with regard to some aspects of setting up the mobile trailer and continuous maintenance, FEMA did not provide procedures regarding the "jacking up" of the mobile trailers.  *See* **Exhibit 1** of Memorandum in Support of Fluor Enterprises, Inc.'s Motion for Summary Judgment Based on the Government Contractor Defense (the IA/TAC) (Docket Entry No. 2802-2).  Nowhere in the text of the IA/TAC does FEMA provide "reasonably precise specifications" with regard to "jacking up" the mobile trailer.  As with *Snell*, FEI's representative, Charles Whitaker, recognized that FEI had discretion over "the means and methods to elevate these travel trailers to put them on blocks." **Exhibit A**, p. 87.

Ultimately, FEI is unable to provide precise specifications provided or approved by the government regarding the "jacking up" and portions of the "blocking" procedure because there are none.  For the government contractor defense to apply, the specifications must apply to the "particular feature allegedly defective."  *Strickland v. Royal Lubricant Co., Inc.*, 911 F. Supp. 1460, 1467 (M.D. Ala. 1995) (finding that although evidence provides many pages of specification, including detailed drawings, such evidence does not provide specificity as to the dispute at issue).  The lack of such

11

specifications and the admissions of FEI's representative regarding FEI's discretionary power over "blocking" and "jacking up" the mobile trailers certainly raises a genuine issue of material fact that precludes summary judgment under the government contractor defense.

## B. FEI Failed to Comply With the Specifications Provided by FEMA.

The second of three elements FEI is required to meet in order to raise the affirmative government contractor defense deals with FEI's compliance with the specifications provided by FEMA. *See generally Boyle*, 487 U.S. at 512. While Plaintiff argues that FEI acted within its own discretion in "jacking up" the mobile trailers, Plaintiff contends that FEI also negligently failed to follow the existing specifications provided by FEMA; thereby exacerbating the dangerous conditions existing in the EHUs. *See, e.g.*, **Exhibit C**, Expert Report of Alexis Mallet, Jr., Bates No. ALX-EXP-44-000099. See also, **Exhibit D**, Deposition of Alexis Mallet, Jr., taken on July 17, 2009, p.310-12. As noted by the Fifth Circuit in *Kerstetter*, "nonconformance with a specification means more than the ultimate design feature does not achieve its intended goal. The alleged defect must exist independently of the design itself, and must result from a deviation from the required military specifications." *Kerstetter*, 210 F.3d at 435. FEI's departure from specifications resulted in, *inter alia,* the warping and loosening of wall panels in the trailer at issue, increased moisture intrusion into the trailer at issue, all circumstances which increased the level of off-gassing formaldehyde within the trailer while Plaintiff resided within it. These damages were in part due to FEI's negligence in installing the trailer at issue.

Although acceptance and use of an item following its production can establish

that the item conformed to its specifications, *Kerstetter*, 210 F.3d at 435, such establishment is rare and is typically limited to particular circumstances. *See, e.g., Tate v. Boeing Helicopters*, 921 F.Supp. 1562, 1567 (W.D. Ky. 1996), affirmed 140 F.3d 654 (6th Cir. 1998). For example, as noted by the Eleventh Circuit, the government's issuance of a DD Form 250, Material Inspection Receiving Report, signifies the government's acceptance and the "conformance of the goods." *United States v. Cannon*, 41 F.3d 1462, 1468 (11th Cir. 1995); *see also Tate v. Boeing Helicopters*, 921 F.Supp. 1562, 1567 (W.D. Ky. 1996)*, affirmed* 140 F.3d 654 (6th Cir. 1998) (finding that Defendants were entitled to summary judgment on the second prong of the government contractor defense because the Army executed a "DD250" documenting an operating manual's conformance to its specifications); *Hendrix v. Bell Helicopter Textron, Inc.,* 634 F.Supp. 1551, 1557 (N.D. Tex. 1986) (holding that absent proof that the government's acceptance of a helicopter was not correct, the "DD250 acceptance conclusively established that [the] helicopter . . . conformed to the contract specifications").

To prove FEMA's acceptance, FEI relies upon a letter drafted by FEI to FEMA acknowledging services rendered under the task order. **Exhibit E**, FEI Acknowledgement of Services Letter to FEMA, FL-FCA 019669. In addition, FEI states that FEMA found no non-compliance by FEI. Rec. Doc. 2783-2, p. 21. Based on this statement and the letter drafted by FEI, FEI asserts that "no testimony or evidence which can possibly contest that FEI's work was accepted by FEMA." Rec. Doc. 2783-2, p. 22. Respectfully, such assertions cannot draw such a conclusion.

Although a FEMA representative signed FEI's acknowledgment, such a signature hardly brings the letter to the level of the DD250. The DD250 is a standard form issued

13

by the military and has been specifically found to be conclusory of compliance. *See In re Air Disaster at Ramstein Air Base*, 81 F.3d 570, 575 (5th Cir. 1996). Moreover, *Miller v. United Technologies Corp.*, 660 A.2d 810 (Conn. 1995), which FEI relies heavily upon, provides the precise reasoning why such documentation cannot serve to support findings of acceptance as "preliminary acceptance cannot foreclose the possibility that the aircraft, in fact, was nonconforming. Especially in a highly complex product such as a military aircraft, slight deviations from required specifications may pass an initial inspection unnoticed, only to become apparent later after further examination." *Id*. at 833-34. While EHUs are not military aircrafts, the reasoning is the same. Total governmental acceptance of FEI's actions, thereby removing all liability, should not be extracted from a FEI's acknowledgment of services letter nor by a statement that FEMA found no non-compliance by FEI. It cannot be assumed the deviations from specifications are immediately recognizable. *Id.*

Additionally, as noted by the Fifth Circuit in *Trevino*, if a simple signature of a government employee could eliminate liability, "government contractors would make sure that they would never face liability . . . merely by bargaining for a guarantee that some federal employee would place his signature at the bottom of every sheet of paper involved in the design of a product and thus confer the government's 'approval.'" *Trevino*, 865 F.2d 1474 at 1480, n. 5 (noting, in connection to the first Boyle element, that the signature of government employee must not be enough by itself to establish approval).

Ultimately, FEI's deviation from FEMA's reasonably precise specifications — including but not limited to improper "jacking" techniques — resulted in the greater rise

14

of formaldehyde exposure. Such actions fits squarely within the definition of noncompliance provided by the Fifth Circuit in *Kerstetter*: "[t]he alleged defect must exist independently of the design itself, and must result from a deviation from the required military specifications." *Kerstetter*, 210 F.3d at 436. FEI's negligence cannot and should not be exonerated simply because a government employee signed a letter acknowledging receipt of services and FEMA did not discover FEI's non-compliance.

### C. FEI Failed to Warn FEMA of the Hazards of Formaldehyde.

Finally, to sustain summary judgment, FEI must establish that it did not know of the dangers surrounding formaldehyde and the EHUs. "The third part of the *Boyle* test requires the contractor to warn the government about those equipment dangers that were known to the contractor, but not to the government." *Kerstetter*, 210 F.3d at 436. This element is necessary because "in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability." *Boyle*, 487 U.S. at 512. Here, FEI knew the dangers surrounding formaldehyde and failed to inform FEMA of such hazards.

> Q: Don't you think that some of these construction managers, or engineering managers, environmental engineers, or other engineers knew about the existence of formaldehyde used in mobile homes prior to 2005?
>
> A: Yes, I would say that people were aware that formaldehyde was in mobile homes before 2005.
>
> Q: People within Fluor?
>
> A: Yes. I would say people within Fluor because they're part of the general community, and some of our employees live in mobile homes.

15

**Exhibit A**, p. 105.  Although FEMA may have had prior knowledge of the formaldehyde problems, FEI was in a better position to understand the significant problems associates with manipulating the mobile trailers.  As held in *Strickland v. Royal Lubricant Co.*, 911 F.Supp. 1460, (M.D. Ala. 1995), where a government contractor, by virtue of being engaged in the business, should have known as much as, if not more than, the government regarding toxicity, the government contract defense is weakened.  *Id.* at 1468.  Therefore, because of FEI's failure to warn FEMA of the formaldehyde dangers, FEI has failed to meet the final element of the government contractor defense.

## **CONCLUSION**

Because the government contractor defense is an affirmative defense and FEI carries the burden of persuasion, this Court must evaluate each element of the defense to determine whether FEI has met its burden.  *Tillet*, 756 F.2d at 595.  The defense is intended to be a limited defense "asserted by defendants who perform government contracts to the specifications called by the federal government when those specifications caused the defendants to be unable to comply with state law."  *Anderson v. Hackett*, 2009 WL 2371832, * 9 (S.D. Ill. July 30, 2009).  "If a defect is one inherent in the product or system that the government has approved, it will be covered by the defense.  Where a defect is merely an instance of shoddy workmanship, it implicates no federal interest."  *Harduvel v. General Dynamics Corp.*, 878 F.2d 1311, 1317 (11th Cir. 1989).

The availability of the government contractor defense is limited to those contractors who can meet all of the elements of the defense.  FEI cannot.  By its own

16

admission, FEI used its own discretion to "jack up" the mobile trailers, which consequently resulted in increased moisture and air capacity, thereby increasing formaldehyde exposure. Further, even when following contract specifications, FEI was negligent in "blocking" the trailers causing additional exposure to formaldehyde. Finally, although FEI was in a better position to understand the formaldehyde dangers surrounding the mobile trailers, FEI failed to warn FEMA. Thus, FEI's essential "shoddy workmanship" and failure to meet all of the elements pronounced in *Boyle* precludes the assertion of the government contractor defense.

## PRAYER

WHEREFORE, Plaintiff Alana Alexander respectfully requests that the Court deny Fluor Enterprises, Inc.'s Motion for Summary Judgment Based on the Government Contractor Defense and for such other relief to which she is entitled.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
    GERALD E. MEUNIER, #9471
    **PLAINTIFFS' CO-LIAISON COUNSEL**
    Gainsburgh, Benjamin, David, Meunier &
    Warshauer, L.L.C.
    2800 Energy Centre, 1100 Poydras Street
    New Orleans, Louisiana 70163
    Telephone:   504/522-2304
    Facsimile:   504/528-9973
    gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
Dennis Reich, Texas #16739600

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on August 26, 2009.

                                                         s/Gerald E. Meunier
                                                         GERALD E. MEUNIER, #9471