UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * * * | MDL NO. 1873 SECTION "N" (5) JUDGE ENGELHARDT MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO | * | | |
| *Charlie Age, et al v. Gulf Stream Coach Inc., et al*, Docket No. 09-2892; Alana Alexander, individually and on behalf of Christopher Cooper | * * * * | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# EXHIBIT A

1

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF LOUISIANA
 3
 4    IN RE:    FEMA TRAILER              * MDL NO. 1873
 5              FORMALDEHYDE PRODUCTS     *
 6              LIABILITY LITIGATION      * SECTION "N" (5)
 7                                        *
 8                                        * JUDGE ENGELHARDT
 9    THIS DOCUMENT IS RELATED TO         * MAGISTRATE CHASEZ
10                                        *
11    Charlie Age, et al v. Gulf          *
12    Stream Coach, Inc., et al,          *
13    Docket No. 09-2892; Alana           *
14    Alexander, individually and on      *
15    behalf of Christopher Cooper        *
16                       - - - - -
17      Videotaped telephone deposition of CHARLES
18    A. WHITAKER, JR., P.E., taken by the
19    Plaintiffs, pursuant to notice and/or
20    agreement, before Phyllis Butler, Court
21    Reporter and Notary Public, at the Hilton,
22    45 West Orchard Park Drive, Greenville,
23    South Carolina, on the 5th day of August,
24    2009, commencing at the hour of 9:39
25    o'clock, a.m.
```

Case 2:07-md-01873-KDE-MBN   Document 2889-2   Filed 08/26/09   Page 3 of 6

85

1    was shared with FEMA on a regular

2    basis.

3    Q.   But who at Fluor would have been

4    responsible for that?

5    A.   The person that actually created the

6    document and was the primary keeper of

7    it was Dave Methot.

8    Q.   To your understanding did anything in

9    that technical directions that were

10   issued by FEMA relate to the manner in

11   which Fluor or their subcontractors

12   should elevate the travel trailers to

13   put them on blocks?

14   A.   To elevate?

15     MR. PENOT:  Object to the form.

16   You can answer.

17   Q.   I don't recall that anything actually

18   said elevate or how to elevate.  I

19   mean, there was the direction on how to

20   block it.  So from that it's implied

21   that it needs to be elevated.

22   A.   Let me ask a different question.  To

23   your knowledge were there anything in

24   the technical directions issued by the

25   United State Government that governed

1   the means or method by which Fluor
2   and/or their contractor should use to
3   elevate the travel trailers such that
4   they could be put on blocks?
5   A.   Means and methods to elevate to put on
6   blocks.  No, I don't think that would
7   be included there, no, sir.
8   Q.   And if the manner in which to elevate
9   the travel trailers, put them on
10  blocks, was not covered in the
11  technical directions, or in the task
12  orders, or in the performance work
13  statement, then it was up to the
14  discretion of Fluor and their
15  subcontractors how to elevate the
16  travel trailers, wasn't it?
17     MR. PENOT:   Object to the form.
18  A.   You've asked two questions there in one
19  when you said it was up to Fluor and
20  its subcontractors. FEMA didn't say
21  specifically how to jack, if that's
22  what you're asking.  We instructed our
23  subcontractors and our employees on the
24  proper jacking methods mainly from a
25  safety standpoint.

1    Q.   Let me ask a different question just so

2    we're clear.  The united States

3    Government did not dictate to Fluor on

4    the means and methods to be used to

5    jack up travel trailers, did they?

6       MR. PENOT:  Object to the form.

7    A.   From what you're saying about means and

8    method, no, I don't --- I don't think

9    so.  I mean, just like if you're saying

10   would they tell a carpenter how to hold

11   a hammer and how to drive a nail, no,

12   they didn't tell us how to do that.

13   Q.   So the means and methods to elevate

14   these travel trailers to put them on

15   blocks was left up to the discretion of

16   Fluor, wasn't it?

17      MR. PENOT:  Object to the form.

18   A.   Done to the discretion.  Yeah, I would

19   guess you could call it that.

20   Q.   Well, I mean, Fluor has engineers on

21   staff, don't they?

22   A.   Yes, sir.

23   Q.   If you turn to Exhibit-Number-Three on

24   page 90, do you see that?

25   A.   Exhibit-Three, page 90.  Yes, sir.

1   or did not, but to my personal
2   knowledge, they didn't. I'm sorry. I
3   --- I didn't want to violate the rules.
4   Q.  Don't you think that some of these
5   construction managers, or engineering
6   managers, environmental engineers, or
7   other engineers knew about the
8   existence of formaldehyde used in
9   mobile homes prior to 2005?
10     MR. PENOT:  Object to the form.
11  A.  Yes, I would say that people were aware
12  that formaldehyde was in mobile homes
13  before 2005.
14  Q.  People within Fluor?
15  A.  Yes. I would say people within Fluor
16  because they're part of the general
17  community, and some of our employees
18  live in mobile homes.
19  Q.  But some of them also had that
20  knowledge based upon their professional
21  experience and background whether
22  they're environmental engineers, or
23  safety engineers, or construction
24  managers. They would have been aware
25  of that, wouldn't they?