**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | * | |
| *Inc., et al*, Docket No. 09-2892; | * | |
| Alana Alexander, individually and on behalf | * | |
|  Of Christopher Cooper | * | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT GULF STREAM COACH, INC.'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**


Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper, files this

opposition to Defendant Gulf Stream Coach, Inc.'s Motion for Partial Summary Judgment, or in

the Alternative, Motion in Limine. Gulf Stream alleges without factual basis that Ms. Alexander

cannot carry her burden of proof at the trial of this matter as to whether as a consequence of Gulf

Stream's failure to test the Emergency Housing Unit that the EHU was rendered defective, and in

the alternative that it is irrelevant. The plaintiff opposes Gulf Stream's Motion on the basis that

there are genuine issues of material fact and such evidence is relevant and, indeed, highly

probative, as to Gulf Stream's affirmative defenses under the LPLA.


**I.   BACKGROUND**

Plaintiff Alana Alexander and her children were displaced in 2004 as a result of the

devastation caused by Hurricane Katrina in Louisiana.   In 2006, the Federal Emergency

Management Agency (FEMA) provided a Cavalier travel trailer manufactured by Gulf Stream to

Ms. Alexander and her children to live in for over 18 months.  From May 2006 through late December 2007, Ms. Alexander and her children lived in the FEMA trailer in Louisiana.  During this period of time, Ms. Alexander and her son, Christopher Cooper, experienced and/or were diagnosed with several symptoms and medical conditions.  Ms. Alexander brought claims both individually and on behalf of her son against Gulf Stream pursuant to the Louisiana Products Liability Act. (*See* First Supplemental and Amended Complaint, Doc. No. 1636, ¶ 12).

## II.  STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); see also *Lavespere v. Liberty Mut. Ins. Co*., 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587

(1986); *Auguster v. Vermillion Parish School Bd.*, 249 F .3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (5th Cir. 2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)(citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys,* 298 F.3d

434, 440 (5th Cir.2002).

### III. LAW AND ARGUMENT

**A.  Genuine Issues of Material Fact Exist As to Gulf Stream's Failure to Test**

Under the LPLA liability is imposed on a manufacturer "for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product. La. Rev. Stat § 9.2800.54(A). The LPLA states that a product may be unreasonably dangerous in one of four ways: (1) construction or composition, (2) design, (3) inadequate warning, and (4) nonconformity to an express warranty.  *See id.* at 9:2800.54(B).

Gulf Stream previously filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on a variety of grounds, including the Plaintiff's failure to test claim. In relevant portions of the Court's Order, the Court stated that Plaintiff's failure to warn claim survived, in that "as a consequence of Gulf Stream's failure to test, the EHU was rendered defective in composition and design, leaving Gulf Stream with an unsafe level of formaldehyde."  (Doc. 2322, at p. 5). The Court based its decision largely on the Fifth Circuit case, *MacDonald v. Monsanto Company*.  1995 WL 581942, at *1 ("[t]he LPLA does not recognize a cause of action for failure to test …except insofar as the failure to test … renders the product unreasonably dangerous"). Here, again, Gulf Stream's Motion must fail as there exists genuine issues of material fact  as to whether its failure to test rendered the EHU at issue in this litigation unreasonably dangerous.

Gulf Stream was well aware of the dangers of formaldehyde when it manufactured Alana Alexander's unit as it first knew about the "formaldehyde issue" in the 1980's. Jim Shea, Gulf Stream's founder, and Brian Shea, testified in deposition that they were very familiar with the

issue of formaldehyde in the 1980s.[1] In fact, James Shea drafted a "White Paper" in which he stated, "[l]itigation and settlements based on formaldehyde have adversely affected the manufactured housing and recreational vehicle industry in Indiana since early in 1981."[2] The paper also recognized that formaldehyde is introduced into its products through the use of plywoods, fibreboard and furnishings such as carpeting, furniture, and draperies.[3] Also included, and perhaps most telling, the White Paper provides various arguments on how to defend formaldehyde exposure cases and how to influence legislation relating to formaldehyde.[4]

Further confirming Gulf Stream's knowledge of the formaldehyde issue, Gulf Stream claims that it had an unwritten policy to only order and use low formaldehyde emitting ("LFE") wood products from vendors in the production of travel trailers.[5] However, no such policy was communicated to its managers and/or wood product vendors.[6]

Finally, in March of 2006, Gulf Stream did complete some testing of occupied and unoccupied trailers in Louisiana, as well as tested wood product in April 2006 to determine whether the wood products it had received were actually LFE.[7] However, by this time, the EHU at issue had already left the manufacturer's custody and control.

It is abundantly clear from the facts of the case that Gulf Stream, prior to the manufacture and distribution of the EHU, knew of the "formaldehyde issue," issued an unwritten policy

---

[1] *See* Deposition of James Shea, Sr., p. 94-95, attached as Exhibit A; s*ee also* Deposition of Brian Shea, p. 18, 68-69, attached as Exhibit B.
[2] *See* White Paper, p. 1, attached as Exhibit C.
[3] *See Id.*, p. 2.
[4] *Id.*, at 5-15.
[5] *See* Exhibit A, p. 23-24, 33-34.
[6] *See* Deposition of Burl Keel*,* p. 84-85, attached as Exhibit D, and Deposition of Scott Bailey, p. 6-7, attached as Exhibit E.
[7] *See* Exhibit Deposition of Scott Pullen, p. 8 – 9, attached as Exhibit F.; *see also* Exhibit A, p. 98.

requiring the use of LFE wood products, and failed to test the travel trailer to determine whether that policy was met.  Gulf Stream failed to test its own product to determine and confirm that the product conformed to its unwritten LFE policy. This failure caused the defendant to distribute and sell the EHU at issue in an unreasonably dangerous condition, one which they knew could occur. Gulf Stream's failure to test Alana Alexander's unit rendered it defective. Accordingly, genuine issues of material fact clearly exist to defeat summary judgment.

**B.  Evidence of Gulf Stream's Failure to Test is Relevant and Properly Admissible**

In the alternative to its Motion for Partial Summary Judgment Gulf Stream also alleges that its failure to test the plaintiff's EHU is irrelevant to the case at hand. However, Gulf Stream conveniently disregards that it in its own Answer to Complaint for Damages it pled all affirmative defenses available under the LPLA.  (Doc. 2532, at p. 26). Section 2800.59 of the LPLA specifically provides a manufacturer a defense if he did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the design characteristic that caused the damage or the danger of such characteristic. La. Rev. Stat. §2800.59. It is the defendant's knowledge, what they did know and what they could have known, that determines whether they are provided this defense under the LPLA.

Despite Gulf Stream's contentions to the contrary, its knowledge or failure to obtain knowledge of the unreasonably dangerous high levels of formaldehyde is clearly relevant to one of the very defenses it pled in its Answer to Complaint for Damages. What Gulf Stream knew, or could have known, had it performed testing on the EHU goes right to the heart of whether they are capable of asserting such a defense raised in their Answer. Clearly, evidence of this importance is not only relevant, but significantly probative as to outweigh any amount of

prejudice that it may present. Accordingly, Gulf Stream's alternative motion in limine should be denied.

**IV. Conclusion**

Gulf Stream's Motion for Partial Summary Judgment, or in the Alternative, Motion in Limine, should be denied as clear genuine issues of material fact exist as to whether Gulf Stream's failure to test the EHU rendered the unit unreasonably dangerous. Gulf Stream's motion must also be denied because its failure to test is relevant not only to whether it is unreasonably dangerous, but also to whether Gulf Stream may plead an affirmative defense under the LPLA. Accordingly, plaintiff respectfully requests that Gulf Stream's motion be denied.

Respectfully submitted:
**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:     s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:     504/522-2304
       Facsimile:      504/528-9973
       gmeunier@gainsben.com

       s/Justin I. Woods
       JUSTIN I. WOODS, #24713
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.

2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:     504/522-2304
Facsimile:      504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'**
**STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
ROBERT BECNEL
DENNIS REICH, Texas # 16739600

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier

GERALD E. MEUNIER, #9471

8