UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | 07-md-1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION: N(5) |
| | | * | |
| | | * | JUDGE: ENGELHARDT |
| | | * | |
| | | * | MAG: CHASEZ |

This document is related to:
   *Charlie Age, et al. v. Gulf Stream Coach, Inc., et al.*, No. 09-2892
   Alana Alexander, Individually and on behalf of Christopher Cooper

*****************************************************************************
**MEMORANDUM IN SUPPORT OF MOTIONS IN LIMINE
OF FLUOR ENTERPRISES, INC.**

Fluor Enterprises, Inc. (FEI), submits this memorandum in support of its Motions in Limine and for the following reasons urges the Court to grant its motions.

**1.   Preclude reference to FEI's financial condition or money paid to FEI under the IA/TAC**

FEI moves to preclude any reference to FEI's financial condition or status, worth, amount(s) paid to FEI by the Government under the IA/TAC, profits, or any other aspect of its financial condition. Plaintiffs' case is a toxic tort suit, asserting claims against FEI under the Louisiana Products Liability Act (LPLA), contending that FEI somehow qualifies as a "manufacturer," which improperly installed plaintiffs' travel trailer on concrete blocks in

1

accordance with FEMA's specifications. Alternatively, plaintiffs allege state law negligence claims against FEI in the event FEI is not found to be a "manufacturer" under the LPLA. How much FEI was paid has no relevance to the issues of whether FEI properly installed the trailer pursuant to FEMA's specifications or whether FEI had a duty to warn plaintiffs regarding formaldehyde. The amount(s) FEI was paid under the IA/TAC has no bearing on these issues or any fact of consequence in this case. Under Fed. R. Evid. 401, such evidence is irrelevant. Even were there some probative value to evidence of the amounts paid to FEI, the evidence should be excluded pursuant to Fed. R. Evid. 403, because any marginal probative value is substantially outweighed by its unduly prejudicial impact.

      **a.**     **Evidence of FEI's financial condition or payments received under the IA/TAC is irrelevant to any fact of consequence in plaintiffs' case**

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. This case is not about corporate motive or levels of profitability. Such evidence has no logical connection with any fact of consequence that is at issue in this case and is irrelevant and inadmissible. Courts exclude evidence for lack of relevance when the proffered evidence has no probative value regarding the issues in the case. See Curtis Mfg. Co. v. Plastic-Clips Corp., 933 F.Supp. 94, 101(D.N.H. 1995) (finding evidence of defendants' "current financial condition or wealth" irrelevant under Rule 401 to patent infringement, misappropriation and unfair trade practices claims). In Ake v. General Motors Corp., 942 F.Supp. 869, 875-76 (W.D.N.Y. 1996), the court granted defendant's motion in limine, in part, precluding evidence of an automobile manufacturer's profits, regarding a specific model pickup truck, in a personal injury design defect case. "Although the *costs* of using a certain design

should be considered in the context of the cost of manufacturing the entire product, GM's *profits* are much less relevant and much more prejudicial." Id. at 876. "Defendant's profits would add little of probative value and could unduly prejudice defendant." Id.

Moreover, in a personal injury suit, neither the wealth nor the poverty of any party is a proper consideration. It is immaterial and wholly irrelevant. Each litigant is to stand equal and be adjudged regardless of financial standing. Rodriguez v. Traylor, 468 So.2d 1186 (La. 1985), judgment set aside in part on other grounds, 481 So.2d 1017 (La. 1986); Mack v. Transport Ins. Co., 577 So.2d 112 (La. App. 1st Cir. 1991); Moffett v. Lumpkin, 382 So.2d 278 (La. App. 4th Cir. 1980).

Further, plaintiffs should be prohibited from referring to FEI's willingness or ability to pay (i.e., its "deep pockets") because such comments are irrelevant and would be highly prejudicial. Louisiana law is clear that the financial status of a defendant is irrelevant unless it is placed at issue by claiming the inability to pay a judgment. Suhor v. Gusse, 388 So. 2d 755 (La. 1980); Moffette v. Lumpkin, 382 So. 2d 278 (La. App. 4th Cir. 1980); Ahsley v Nisson Corp. in USA, 321 So. 2d 869 (La. App. 1st Cir. 1975); Ponder v. Groendyke Transport Inc., 454 So. 2d 831 (La. App. 3d Cir. 1984). FEI has not claimed that it could not satisfy judgment if one were rendered against it. Therefore, any comments by plaintiffs regarding FEI's willingness or ability to pay (i.e., its "deep pockets") are irrelevant and should be excluded.

Further, evidence of profits is not admissible "because the evidence is not relevant to any failure to warn issue." See In Re Norplant Contraceptive Prods. Liab. Litig., No. MDL 1038, 1997 WL 80526, at *1 (E.D. Tex. 1997) (citing FRE 402). "[N]either motive nor intent are material in a negligence action." Kunz v. Utah Power & Lights Co., 913 F.2d 599, 605 (9th Cir. 1990) (excluding evidence of power company's revenues in an action by land owners against the

company to recover damages caused by a release of water from a lake used by the company as a water storage system; evidence tending to prove a business motive for Utah Power's conduct was excludable as irrelevant pursuant to Fed. R. Evid. 402." See also La Plante v. Am. Honda Motor Co., 27 F.3d 731, 739 (1st Cir. 1994) ("a defendant's motive for its action or inaction is, generally speaking, immaterial to the question of whether the defendant acted negligently").  Plaintiffs should therefore be put to the test on the real issues raised, and not be allowed to divert the jury's attention to matters which have nothing to do with the claims.

    **b. Any conceivable probative value to money paid to FEI under the IA/TAC is substantially outweighed by its danger of unfair prejudice.**

If the court were to find that the money paid to FEI under the IA/TAC or the financial status of FEI was somehow relevant, such evidence would still be inadmissible pursuant to Fed. R. Evid. 403.  Rule 403 states that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time, or needless presentation of cumulative evidence.  Any references by plaintiffs to FEI's ability to pay a judgment, its financial condition, or amount(s) paid to FEI under the IA/TAC would be highly prejudicial to FEI and would likely do nothing more than to allow the jury to take a punitive approach toward FEI.  In La Plante, 27 F.3d at 739-740, plaintiffs sued Honda, the manufacturer of an ATV for negligent failure to warn and strict liability design defect, when he was injured riding an ATV.  Plaintiffs sought to introduce Honda's profits from ATV sales to show that Honda's failure to warn was motivated by greed and was a business decision.  Id. at 739.  The First Circuit ruled that the district court's decision to admit this evidence was error:

> **The evidence was, at best, marginally relevant and of scant probative value to plaintiff's failure to warn claim.**  On the other hand, the risk that the jury would be prejudiced by this

4

> reference to the enormous profitability of Honda's ATVs was almost inescapable ... while the court did give a limiting instruction to the jury warning against equalizing wealth between rich and poor, it did not alert the jury to the impropriety of punishing Honda for an unsavory motive. The inadequacy of the limiting instruction, coupled with the highly attenuated relevance of the evidence leads us to believe that the district court miscalibrated its Rule 403 scales.

Id. at 739.

The court ruled Honda was entitled to a new trial and that the evidence concerning Honda's profits should not be admitted during retrial. Similarly, in Estate of Le Baron v. Rohm & Haas, 506 F.2d 1261 (9th Cir. 1974), the court upheld exclusion of profit margin evidence even though "slight[ly] probative since the case involved anti-trust conspiracy charges for alleged price-fixing, the probative value was substantially outweighed by the complexities and confusions its introduction would cause." Id. at 1263. "The admissibility [of the profit margin evidence] at a jury trial would have resulted in extensive cross-examination and substantial countering evidence to obliteration of the basic issues of the case and confusion of the jury." Id.

Here, evidence of money paid to FEI under the IA/TAC would be more distracting because this is a toxic tort products liability, or negligence case. Significantly, news reports and the Dept. of Homeland Security Office of Inspector General's report[1] (the Report) state incorrect facts as to how much FEI was paid. The Report incorrectly suggests FEI was paid "1.3 billion" alone for its Hurricane Katrina services.[2] Permitting plaintiffs to present this enormous figure to the jury would severely prejudice FEI. The real purpose of offering such evidence is not to instruct jurors that public companies have a profit motive, for jurors know that well enough; the purpose is to shock or outrage jurors with a particular number. Admitting evidence with the

---

[1] Discussed and sought to be excluded below, in section 3.
[2] The Rept., p. 3, http://www.dhs.gov/xoig/assets/mgmtrpts/OIG_08-88_Aug08.pd.

intent to inflame the prejudices of the jury in this manner would be improper, particularly where doing so will predictably direct the jurors' attention away from the facts of the case and toward unrelated, collateral matters. That is exactly the type of evidence that Fed. R. Evid. 403 was designed to prevent and that federal circuits and district courts have excluded.

Further, FEMA's IA/TAC with FEI was a cost reimbursable contract. Most of the payments made to FEI were reimbursable costs, and that was for the whole IA/TAC contract, not just FEI's work in the Katrina and Rita efforts. FEI responded to other disasters under that IA/TAC. Consequently, introduction of such evidence would entitle FEI to explain its payments under the IA/TAC for its work in various disasters and accounting itemizations of all costs reimbursable and profits generated on these major projects. That explanation would be subject to cross-examination and the cross-examination to rebuttal. None of this evidence would go to the merits or real issues in this case. Allowing plaintiffs to introduce evidence of this nature risks evoking any latent antipathy jurors might have toward large corporations. A factual consideration of these vast cost items would lead to a lengthy and speculative distraction from what is already a complicated case. Allowing plaintiffs to introduce evidence of this nature would only infuse the trial with unfair prejudice and unnecessarily prolong it.

For these reasons, FEI respectfully requests that this Court exclude, in advance of trial, any evidence, testimony or comments referencing any amount(s) paid to FEI under the IA/TAC, FEI's financial condition or status, willingness or ability to pay (i.e., "its deep pockets").

**2.     Exclude reference to FEI as a "no bid" contractor, or the IA/TAC as a "no bid" contract**

Plaintiffs should be excluded from making any reference to FEI as a "no bid" contractor, or FEI's IA/TAC contract with the Government as a "no bid" contract, because it is false and irrelevant to this toxic tort case. Even if there was some probative value to referencing FEI as a

6

no bid contractor, such evidence should be excluded pursuant to Fed. R. Evid. 403, because any marginal probative value is substantially outweighed by its unduly prejudicial effect.

FEI <u>bid</u> on the Contract with FEMA. As described by Robert Funkhouser of FEI:

> Fluor had a contract with FEMA prior to the hurricane coming ashore. I believe it was several months that was competitively bid, and Fluor won a prime contract.
> This contract is an IDIQ contract, which is an indefinite delivery, indefinite quantity contract which provides the basis for FEMA to then issue a Task Order request to Fluor for specific scope items.[3]

On July 12, 2005, after <u>bidding</u> and submitting a proposal for the contract, FEMA awarded an individual assistance- technical assistance (IA/TAC) contract, No. HSFEHQ-05-0471, to FEI to be prepared to mobilize to provide general contractor services for disaster relief anywhere in the United States, pursuant to individual task orders to be issued by FEMA.[4] Under the IA/TAC, FEI responded to other disasters including, but not limited to, Hurricane Dennis in July 2005, tornados in Wyoming, and Hurricane Wilma in Florida.[5] Subsequent to the prime contract, FEMA issued individualized task orders in response to Hurricane Katrina, including the hauling and installing of trailers. On October 9, 2005, FEMA issued a <u>Request For Proposal</u> and Statement Of Work Revision 1, requiring FEI to submit a written technical and business proposal, or Work Plan. The Work Plan was subject approval by FEMA's COTR.[6] This contract lasted until January 20, 2006. The next IA-TAC contract was publicly <u>bid</u> and awarded to FEI, as well as other contractors.[7]

Plaintiffs' reference to FEI as a "no bid" contractor is a misnomer and incorrectly implies FEI was given the Contract without qualification, constraints or cost limitations. Use of the term

---

[3] <u>See</u> depo testimony of Robert Funkhouser (Ex. 1, p.25).
[4] The Contract, FL-FCA-1, 10, Section F, F.3 (principal place of performance), part III, section J, attachment A (scope of work), FL-FCA-60, 74, attached to FEI's MSJ on gov't. contractor defense as Ex. 1.
[5] <u>See</u> Depo. Excerpts of Charles Whitaker of FEI, attached as Ex. 2, p. 60-61, 68.
[6] The contract, Ex. 1 (att. to FEI's MSJ on government contractor defense), RFP, FL-FCA-228, 236-240.
[7] <u>See</u> Depo. of Charles Whitaker, Ex. 2, p. 61.

"no bid" will create unfair prejudice and mislead the jury. The no bid reference may cause the jury to unfairly and suspiciously view FEI as a contractor who was so closely connected with the Government that it did not need to bid on contracts. Local news stories reporting on the contracts issued by FEMA to FEI should also be excluded for the same reasons. Calling FEI a no-bid contractor will unfairly prejudice the jurors and instill immediate and irrevocable bias against FEI. See United States v. Cabrera, 222 F.3d 590, 595-96 (9th Cir. 2000) (investigating officer's repeated racially inflammatory references to defendants' Cuban origin and generalizations about his Cuban community was properly excluded). Similarly, FEI's false classification as a "no bid" contractor will likely create jury prejudice, unfairly portraying FEI as a corporation with "deep pockets" and government "connections," instead of its real role as a reliable partner providing urgently needed disaster relief to the Government.

Finally, FEI's contract with FEMA will be introduced and is the best evidence of its contents, and FEI's status thereunder. Thus, any mention of FEI as a no bid contractor is improper.

At the heart of this case is plaintiffs' alleged exposure to formaldehyde and whether FEI was a manufacturer or negligent. Whether FEI competitively bid on its various contracts with FEMA is not relevant to plaintiffs' allegations against FEI. Accordingly, FEI seeks to exclude any testimony, references by plaintiffs' counsel or evidence that FEI is a no bid contractor or that the Contract is a no bid contract.

**3.    Exclude the Department of Homeland Security, Office of Inspector's Report: "Hurricane Katrina Temporary Housing Technical Assistance Contracts" dated August, 2008.**

FEI moves to preclude any reference to, introduction of, or publishing to the jury of the Department of Homeland Security Office of Inspector General Report "Hurricane Katrina

Temporary Housing Technical Assistance Contracts," dated August, 2008 (the Report).[8] This document is hearsay under Fed. R. Evid. 802. Further, it does not fall within any of the hearsay exceptions found in Fed. R. Evid. 803.

Specifically, this Report does not fall within the exception to 803(8) (c) regarding Public Records and Reports. The Supreme Court cautions that public "evaluative reports are admissible **'unless the sources of information or other circumstances indicate lack of trustworthiness**.'" Beech Aircraft Corp. v. Rainey, 488 U.S. 153,167, 109 S. Ct. 4389, 448-449 (1988)(emphasis added). The Supreme Court notes the advisory committee suggested a four pronged analysis to assess the trustworthiness of a public report: (1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation. See also Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1305 (5th Cir. 1991)(noting the 4 pronged analysis suggested by advisory committee to evaluate trustworthiness of public reports for purposes of admissibility).

This Report is overtly untrustworthy under the four pronged analysis: (1) it was not timely done, (2) the skill or experience of the investigator cannot be evaluated from the information provided in the report, (3) no hearing was held *and* (4) this Report was not issued until August, 2008, after this MDL was established. It is inconceivable that the investigator was ignorant of the massive amount of formaldehyde trailer litigation pending at the time the Report was issued. Consequently, the investigator was aware this Report would impact this litigation.

Further, the Report is replete with misleading and incorrect information which is inherently unreliable and will mislead the jury. For example, the Report's inference that the

---

[8] See the Rept. at http://www.dhs.gov/xoig/assets/mgmtrpts/OIG_08-88_Aug08.pd.

Government paid FEI $1.3 billion is incorrect, and the Report does not explain that most of the amounts paid to FEI were costs reimbursements (and that was for the whole IA/TAC contract, not just FEI's Katrina and Rita efforts, but also FEI's responses to other disasters under the IA/TAC). Moreover, the Report is tentative and not final and states that no financial audit was performed in connection with the Report. In Ake v. General Motors, 942 F.Supp. 869, 779-80 (W.D. NY 1996), the court excluded conclusions (some labeled as "findings") and any references to the closed investigation of the National Highway Traffic Safety Administration and its report concerning a truck fuel system designed by the NHTSA. The report did not fall within the hearsay exception to Rule 803(8). The court noted the findings of the report that the fuel system was defective were tentative and might have been revised or withdrawn after a hearing. The court instructed:

> Regarding investigative reports, 'even if the opinion seems to offer valuable information to the jury, it must be excluded if it is unreliable.'

Ake, 942 F.Supp at 880 (citing 4 Weinstein's Evidence at 803-286) (citing City of New York v. Pullman, Inc., 662 F.2d 910, 914 (2d Cir. 1991)) (upholding the exclusion of investigative report by federal agency in part because it was interim report subject to revision, and was not a final finding), cert. denied, 454 U.S. 1164-1982). "In making that determination, the court may consider whether a hearing was held in connection with investigation." Id. (citing Weinstein at 803-287) (other citations omitted). The Inspector General's Report should be excluded on these and other grounds.

In Beach Aircraft, the Supreme Court held that the "trustworthiness" standard creates "the obligation [on the part of the trial court], to exclude an entire report or portions thereof" that

10

are determined to be untrustworthy.  Beech Aircraft Corp. 488 U.S. at 167.  This Report should be excluded in its entirety because it is overtly untrustworthy.

       Respectfully submitted,

       **MIDDLEBERG, RIDDLE & GIANNA**

BY: */ Sarah A. Lowman*
   Dominic J. Gianna, La. Bar No. 6063
   Sarah A. Lowman, La. Bar No. 18311
   201 St. Charles Avenue, Suite 3100
   New Orleans, Louisiana 70170
   Telephone: (504) 525-7200
   Facsimile: (504) 581-5983
   dgianna@midrid.com
   slowman@midrid.com

    -and-

   Charles R. Penot, Jr. (La. Bar No. 1530 &
   Tx. Bar No. 24062455)
   717 North Harwood, Suite 2400
   Dallas, Texas 75201
   Tel: (214) 220-6334; Fax: (214) 220-6807
   cpenot@midrid.com

    -and-

   Richard A. Sherburne, Jr., La. Bar No. 2106
   450 Laurel Street, Suite 1101
   Baton Rouge, Louisiana 70801
   Telephone: (225) 381-7700
   Facsimile: (225) 381-7730
   rsherburne@midrid.com

      **ATTORNEYS FOR FLUOR ENTERPRISES, INC.**

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 26, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record, including court-appointed liaison counsel, who are CM/ECF participants.

       */ Sarah A. Lowman*
       SARAH A. LOWMAN

ND: 4824-8903-7572, v.  1

11