**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | **MDL NO. 1873** |
|     **FORMALDEHYDE PRODUCTS** | * | |
|     **LIABILITY LITIGATION** | * | **SECTION "N" (5)** |
| | * | |
| | * | **JUDGE ENGELHARDT** |
| | * | |
| | * | **MAGISTRATE CHASEZ** |
| **THIS DOCUMENT RELATES TO** | * | |
| | * | |
| *Anthony Bartel and Sherry Bartel v. Gulf* | * | |
| *Stream Coach, Inc., et al.,* | * | |
| *(Civil Action No. 09-3943),and* | * | |
| *Leslie Kujawa, et al. v. Keystone, RV Co, et al.* | * | |
| *(Civil Action No. 09-3944)* | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFFS' OPPOSITION TO DEFENDANT BECHTEL NATIONAL, INC.'S RULE 12(b)(6) MOTION TO DISMISS

Plaintiffs, Anthony and Sherry Bartel and Leslie and Richard Kujawa, individually and on behalf of their minor children, Devin and Blake Kujawa, (hereinafter "Plaintiffs") file this Opposition to Defendant Bechtel National Inc.'s Rule 12(b)(6) Motion to Dismiss and responds as follows:

### I. BACKGROUND

Plaintiffs, whose homes along the Mississippi Gulf Coast were destroyed during Hurricane Katrina, were exposed to excessive levels of formaldehyde while residing in FEMA-provided emergency housing units, (hereinafter, "units"), installed by Defendant Bechtel National, Inc., (hereinafter, "Bechtel") in Mississippi. Bechtel was one of four contractors who received "no-bid" contracts from the Federal Government through the Federal Emergency Management Agency, (hereinafter, "FEMA") to haul, install, maintain

1

and deactivate units following hurricanes Katrina and Rita. Bechtel was the only contractor whose geographical area was limited to the state of Mississippi. Bechtel was granted a "no-bid" contract presumably because of its professed ability to transport and install housing units in a safe and efficient manner.

Plaintiffs filed the above referenced complaints in the Southern District of Mississippi on April 2, 2009, after class certification was denied. These cases against Bechtel were only recently transferred to this Court by the Multi-District Litigation Panel, (hereinafter, "MDL") on June 26, 2009. The Plaintiffs' claims are the first claims against Bechtel to be transferred to this MDL and, since these claims against Bechtel have only been a part of the MDL proceedings for two months, no merits discovery with regard to Bechtel has been undertaken.

Bechtel's Motion to Dismiss based upon the Government Contractor Defense addresses the same defense as those put forth by Fluor Enterprises, Inc., (hereinafter, "Fluor"), in its motion for summary judgment in the Alexander/Gulf Stream Coach, Inc. bellwether case before this Court. Bechtel asserts that it did not have any discretion with regard to hauling and installing travel trailers. Since there has been no merits discovery in the Bartel and Kujawa matters as to Bechtel, Plaintiffs adopt the facts and arguments set forth by the Alexander Plaintiffs in their opposition to the government contractor defenses raised by Fluor in its Motion for Summary Judgment.

Plaintiffs asserted their claims against Bechtel through notice pleadings in accordance with Rule 8 of the Federal Rules of Civil Procedure. Plaintiffs assert that Bechtel raised or "jacked up" these units in a negligent manner and in doing so damaged

2

the units thereby increasing the amount of formaldehyde off gassing into the units. Bechtel in its Rule 12(b)(6) Motion to Dismiss under the Government Contractor Defense addresses Plaintiffs' failure to warn claims and Plaintiffs' claims of negligence with regard to the blocking the units. However, Bechtel's motion does not address the total silence of the government contract with regard to any specifications for the "raising" or "jacking up" process undertaken by Bechtel. That discretionary procedure performed by Bechtel in a negligent manner contributed to Plaintiffs' damages. Further, this fact precludes that application of the government contractor defense as to Bechtel in this case such that Defendant's Motion to Dismiss should be denied.

## II.  <u>STANDARD OF REVIEW FOR RULE 12(b)(6) MOTION TO DISMISS</u>

Defendant Bechtel seeks to have Plaintiffs' claims in the above captioned matters dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) 'is viewed with disfavor and is rarely granted.' *Benal v. Freeport- McMoran, Inc.,* 197 F.3d 161 at 164 (5th Cir. 1999) *citing Kaiser Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir.1982). When reviewing a Rule 12(b)(6) motion to dismiss "the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Id. citing Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir.1986).  The standard for a Rule 12(b)(6) motion to dismiss is only met if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Banks v. Toys R US, et al,* 2003 WL 21977174 at 1 (E.D.La. 2003). The question before this Court is whether in the light most favorable to the Plaintiffs and with

3

every doubt resolved in their favor, their complaints state any valid claim for relief. *Beanal* at 164 *(internal citations omitted).*

Rule 8(a) of the Federal Rules of Civil Procedure requires a claim for relief to state "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint may be deemed inadequate "only if it fails to (1) provide notice of circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist. *Beanal at* 164.

Plaintiffs' complaints provide notice of the circumstances that give rise to their claims and set forth sufficient information to outline the elements of their claims. (*See* Rec. Doc. Nos. 2721-4 and 2721-5). Bechtel received a no-bid contract from FEMA to haul, install, maintain and deactivate Plaintiffs' Units. *Id.* FEMA relied upon the expertise and knowledge of Defendant Bechtel to properly <u>raise or jack up</u> these units prior to blocking and leveling these units in order to convert travel trailers into long-term residents for the displaced Plaintiffs. (*See* Rec. Doc. Nos. 2721-4 and 2721-5). Plaintiffs assert that Defendant Bechtel was negligent in failing to use its engineering expertise and knowledge to properly raise or jack up these units, a part of the installation process which is not addressed in Bechtel's contract with FEMA. *Id.* Plaintiffs assert that Defendant Bechtel had a duty to Plaintiffs to undertake this process in a safe fashion but Bechtel breached its duty to Plaintiffs in this regard.

Bechtel asserts that Plaintiffs' claims of failure to warn and negligence in blocking the units are barred by the Government Contractor Defense. What Bechtel totally fails to address is that <u>FEMA did not instruct Bechtel as to how to jack up these units prior to</u>

4

blocking and leveling. Bechtel, not FEMA, decided how many jacks to use, which side or sides to raise first, and the manner in which to jack these units up off of their wheels so that they could be blocked and leveled. Even if this Court were to find that Plaintiffs' claims of negligence in blocking the units was not a claim upon which relief could be granted due to the Government Contractor Defense, Plaintiffs claim of negligence from raising or jacking the units must remain viable since the specifications or instructions as to how to raise or jack up these units came from Bechtel and not from FEMA.

Plaintiffs' complaints provide notice of the circumstances giving rise to their claims against Defendant Bechtel and provide sufficient information to outline the elements of their claims or permit inferences to be drawn that these elements exist. The facts of the Plaintiffs' complaints must be taken as true. When the limited facts before this Court are viewed in the light most favorable to the Plaintiffs and every doubt resolved in their favor, both the Bartel's and Kujawa's complaints state valid claims for relief against Defendant Bechtel. Therefore, Defendant Bechtel's motion to dismiss for failure to state a claim upon which relief can be granted should be denied.

### III. <u>RULE 12(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE - RESULT OF PRESENTING MATTERS OUTSIDE THE PLEADINGS</u>

If, on a Rule 12(b)(6) motion to dismiss, matters outside the pleadings are presented to and not excluded by the court, the motion to dismiss must be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(d). There is a narrow exception to this rule which would allow a defendant to attach exhibits to a motion to dismiss without converting that motion to one for summary judgment. *Harris v. City of Hammond, et al.* 2008 WL 4469112 at 1 (E.D.La. 2008) citing

*Sheppard v. Texas Dept. of Transp.*, 158 F.R.D. 592, 595-96 (E.D.Tex. 1994).  For this exception to apply, the plaintiff must refer to the document in the complaint and the defendant's exhibit must be integral and central to the plaintiff's claim.  *Sheppard* at 596. When the court considers exhibits and evidence outside the pleadings, a motion to dismiss should be treated as a motion for summary judgment.  *Id.* (internal citations omitted).

Defendant Bechtel attached sixteen exhibits to their Rule 12(b)(6) motion to dismiss.  The first two exhibits are the Plaintiff's complaints.  However, the remaining fourteen exhibits are excerpts of Bechtel's contract with FEMA, emails from Bechtel employees to FEMA, the newly produced inspection paperwork for both the Bartel and Kujawa units , and affidavits of Bechtel employees, among other documents.  The majority of Defendant Bechtel's sixteen exhibits are not referred to in the Plaintiffs' complaints and are not integral to Plaintiffs' claims. Further, Plaintiffs have never seen some of the exhibits Defendant attaches to this motion because discovery has not been initiated in the these cases against Bechtel.  Therefore, if this Court goes beyond the pleadings and considers the extrinsic evidence attached to Defendant's Motion to Dismiss, then Plaintiffs contend that Defendant's Motion to Dismiss should be converted to a motion for summary judgment and the stricter standards of Rule 56 of the Federal Rules of Civil Procedure should apply.

## IV. <u>SUMMARY JUDGMENT STANDARD OF REVIEW</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" show no genuine issue as to any material fact.  FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material [and] [o]nly disputes

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted."); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Additionally, per Rule 56(c), in order to have a matter dismissed in summary judgment based on its affirmative defense, Defendant Bechtel must make a showing, as a matter of law, that establishes each element of the affirmative defense. *Celotex Corp.*, 477 U.S. 317, 322 (1986).

Ultimately, this Court's concern is to ascertain "whether there is a need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. As such, "[a] District Court must resolve any factual issues of controversy in favor of the non-moving party," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), and draw all justifiable inferences in favor of the non-movant. *Anderson*, 477 U.S. at 255; *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002).

In evaluating evidence to determine whether a factual controversy exists, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255. Instead, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe and should give credence to the evidence favoring the non-moving party, as well as that evidence

7

supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

Essentially, factual issues of controversy exist where "there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). This Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan*, 497 U.S. at 888). However, because the moving party has the burden of persuasion on the affirmative defense at trial, the moving party must satisfy this burden before any burden falls on the nonmoving party to come forward with evidence demonstrating the existence of factual controversy. *See Noramco Shipping Corp. v. Bunkers Intern. Corp.*, 2003 WL 22594419 (M.D. Fla. 2003). To meet this burden, the moving party is required to make a showing sufficient to establish the existence of every element essential to the moving party's case. *Helman v. Murry's Steaks, Inc.*, 742 F. Supp. 860 (D. Del. 1990).

Thus, summary judgment based on an affirmative defense is available only by producing credible evidence that would entitle the moving party to a directed verdict if that evidence remained uncontroverted at trial. *See Celotex*, 477 U.S. at 323. Ultimately, a denial of summary judgment is appropriate when the moving party fails to make a showing sufficient to establish the existence of an element essential to his claim, and on which the moving party will bear the burden of proof at trial. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999).

In the present cases, there have been no "merits" depositions, no interrogatories, no request for admissions and no affidavits other than the one attached to Defendant's Motion to Dismiss. During class certification discovery, there was a single, very limited, Rule 30(b)(6) deposition taken of Bechtel. Bechtel produced Jack Hume, a project manager, for a deposition with regard to class certification issues only. *See* Transcript of Videotaped Deposition of Bechtel National, Inc. 30(b)(6) Deponent Jack Hume, Thursday, August 21, 2008, attached hereto as Plaintiffs' Exhibit A. Mr. Hume testified that he is not a travel trailer expert and that he had no knowledge regarding how the units were jacked up. *See* Plaintiffs' Exhibit A at p. 100. He was completely unaware that the improper raising or jacking up of these units could cause distortion in the shells of the unit.

Further, FEMA's contract with Bechtel does not address and does not provide any instruction regarding how to raise or jack up these units. The FEMA contract with Bechtel discusses in section 2.1.1 the "Delivery of Travel Trailer" and "Blocking and Leveling" of the unit. (*See* Rec. Doc. No. 2721-7 at p.58). The contract completely omits one very important step, that is, the raising or jacking up of the unit. FEMA relied on Bechtel and its experience and expertise to determine the manner in which these units would be raised. Improper jacking causes a large differential in the loads applied to the beams of these units and causes frame damage and door jamb damage, as well as damage to the interior finishes, such as wall paneling and cabinet doors. This damage causes increased formaldehyde off gassing and greater exposure for residents in these distorted units.

This issue of improper jacking was not addressed during the very limited class certification discovery and has not been addressed with regard to Bechtel since the transfer of Plaintiffs' cases to this MDL on June 26, 2009. Thus, there are genuine issues as to material facts which have not yet been addressed in discovery. Thus, Bechtel's motion to dismiss and/or motion for summary judgment is premature and must be dismissed.

Bechtel has not established each element of their affirmative defense of immunity through the government contractor defense. Bechtel's Rule 12(b)(6) Motion to Dismiss only addresses Plaintiffs' failure to warn and negligence in blocking claims. Plaintiffs contend that additional discovery is needed on these two issues, however, it is clear that Bechtel cannot establish that it is immune from liability for negligently raising or jacking the Plaintiffs' units based on a government contractor defense. At the core of Plaintiffs' claims against Bechtel is the installation of the units, which involved raising the units prior to placing them on blocks or piers. Jacking of the units, blocking the units and failure to warn Plaintiffs of the damages Bechtel caused to these units and the results of the warping of the frame and its component parts are all genuine issues of material fact that are in controversy and require additional discovery.

In these cases against Bechtel, discovery to date is limited to one brief deposition obtained during class certification when merits discovery was specifically not allowed. It would be inappropriate and premature to grant a motion to dismiss or a motion for summary judgment when Plaintiffs have not yet had the opportunity to engage in

10

discovery, such as merits depositions, interrogatories, requests for admissions and third party affidavits, when there are genuine issues of material fact.

## V. **THE GOVERNMENT CONTRACTOR DEFENSE IS NOT APPLICABLE TO BECHTEL**

The "government contractor defense" is an affirmative defense, as to which Bechtel bears the burden of proof. *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 802 (5th Cir. 1993). Thus, Bechtel must show the absence of a genuine issue of material fact and establish **each element** of the defense as a matter of law. *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002); *Smith v. Xerox Corp.*, 866 F.3d 135, 136-37 (5th Cir. 1989) *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If Bechtel's motion and evidence fails to meet its "initial burden, the motion must be denied, regardless of the nonmovant's response." *Little* v. *Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The basic purpose of the government contractor defense is to "prevent the contractor from being held liable when the government is actually at fault," *Trevino v. General Dynamics Corp.*, 865 F.2d 1474 (5th Cir.), *cert. denied*, 493 U.S. 935 (1989), as "tort liability principles properly seek to impose liability on the wrongdoer whose act or omission caused the injury, not the otherwise innocent contractor whose only role in causing the injury was the proper performance of a plan supplied by the government." *In re Agent Orange Products Liability Litigation*, 506 F. Supp. 762, 793-94 (E.D.N.Y), *rev'd on other grounds*, 635 F.2d 987 (2d Cir. 1980), *cert. denied sub nom; Diamond Shamrock Chemical Co. v. Ryan*, 465 U.S. 1067 (1984). However, as noted by the Fifth Circuit:

> The protective shield in favor of the contractor collapses when the actions of the government contractor — and not those of

11

> the Government — <u>produce the damaging defect</u>. In such a situation, fairness dictates that a government contractor should not be permitted to escape liability by asserting the sovereign immunity of the Government.

*Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 245-46 (5th Cir. 2000).

In the cases before this Court, FEMA's installation instructions in the Statement of Work were to install the units safely and as expeditiously as possible and in accordance with the manufacturer's installation specifications and other appropriate requirements. (*See* Rec. Doc. No. 2721-7 at p.10). "Exhibit 7 Travel Trailer Installation" attached to Bechtel's Contract with FEMA provides information as to "Basic Travel Trailer Set-Up." (*See* Rec. Doc. No. 2721-7 at p.58). These FEMA specifications generally address blocking and leveling of the unit, however the contract does not address or specify the procedure for raising or jacking up the unit or how the weight of the unit is to be lifted off of the wheels. The Government contract specified the purpose and goal of the contract, i.e., converting the Plaintiffs' units into housing units, but not the precise manner of converting the units. To comply with FEMA's general instructions for blocking and leveling, Bechtel first had to lift the weight off the wheels of the units by raising or jacking the trailer up. There are many different methods and types of equipment that can be used to raise a travel trailer. Plaintiffs contend that Defendant Bechtel did not properly jack up the units and caused damage to the units. Plaintiffs contend that the protective shield of the contractor (Bechtel) collapses here because it was the action of the contractor (Bechtel) in determining how to raise these units that produced the damaging defect.

12

To fully address Bechtel's claim of immunity under the government contractor's defense Plaintiffs must address the three factors articulated by the United States Supreme Court in *Boyle v. United Technologies Corp.,* 487 US 500 (1988).

The Supreme Court in *Boyle* said that state law, which would ordinarily render the contractor liable in tort to third parties, will be displaced when: 1) the subject matter involves "uniquely federal interests" and 2) a "<u>significant</u> conflict" exists between an identifiable federal policy of interest and the operation of state law or the application of state law would frustrate specific objectives of federal legislation. *Id.* at 507-08. The facts here are closely analogous to the example given in *Boyle* of what does <u>not</u> pose a significant conflict between federal and state interests. Bechtel could comply with both its contractual obligations to the government and the state-prescribed duty of care. *Boyle,* 487 U.S. at 509.

If a court does find that a conflict with a "uniquely federal interest", then the Supreme Court provided three factors to determine whether there was a significant conflict and thus where preemption should apply, and to what extent:

(1)   whether the United States approved reasonably precise specifications;

(2)   whether the equipment conformed to those specifications; and

(3)   whether the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle,* 487 U.S. at 513. If the contractor cannot prove *all* three of these elements, the protective shield no longer stands and the contractor remains liable for the damages it caused. *Smith v. Xerox Corp.,* 866 F.2d 135, 136-37 (5th Cir. 1989) (emphasis added). The Fifth Circuit has noted that the basic purpose of the government contractor defense is to

13

"prevent the contractor from being held liable when the government is actually at fault."
*Trevino v. General Dynamics Corp.*, 865 F.2d 1474 (5th Cir.), *cert. denied*, 493 U.S. 935
(1989). Here, Bechtel should not be permitted to escape liability for its discretionary,
independent, negligent acts, and Bechtel's motion to dismiss or in the alternative motion
for summary judgment based on the government contractor defense must be denied for
three distinct reasons:

(1) Bechtel's contract with FEMA is silent in regard to raising and jacking up these units
and therefore left total discretion to Bechtel with regard to the"jacking up" of the
travel trailers (an activity that had to occur before FEMA's specifications for
blocking and leveling could be complied with). Thus, FEMA did not provide
"reasonably precise specifications" with regard to at least this element of
installation.

(2) Because there was no jacking specification in FEMA's contract, Bechtel could not
have "conformed" to those specifications. Further, Bechtel failed to properly comply
with the remaining specifications with regard to blocking and leveling enunciated in
the contract; and finally

(3) Bechtel and its engineers knew about the damage to the units it was causing by
improper jacking, but did not warn the Government of the damages and dangers
associated therewith being caused by Bechtel's negligence .

14

These three elements are detailed below:

**A.    FEMA Did Not Provide Reasonably Precise Specifications With Regard To Jacking Up Travel Trailers - Bechtel Retained Discretion Over This Portion Of The Installation**

The first element of the government contractor defense requires the government to provide precise specifications leaving no discretion to the contractor. *Boyle*, 487 U.S. at 513; *Wisner v. Unisys Corp.*, 917 F. Supp. 1501, 1510 (DC Kan 1996) (noting that "virtually microscopic precision" meets the first element). Here, the fact that Bechtel had total discretion over the design of the process for raising or "jacking up" of the travel trailers precludes satisfaction of the first element. Fluor also confirmed that: "FEMA did not specifically tell FEI (Fluor) how to get the trailer from the ground on two axles and a tongue jack up onto the piers." (*See* Rec. Doc. No. 2783-2 at p.22). As did Fluor, Bechtel retained complete discretion over the raising of the trailers thus precluding satisfaction of the first element of the government contractor defense.

In *Trevino v. General Dynamics Corp.*, 865 F.2d 1474 (5th Cir. 1989), the Fifth Circuit provided a lengthy analysis of the first element noting that governmental approval of imprecise or general guidelines implicitly gave contractors discretion. *Id.* at 1480-81 ("If the government approved imprecise or general guidelines, then discretion over important design choices would be left to the government contractor."). Additionally, *Trevino* notes the **minimal degree of discretion** required before a contractor is ineligible for the government contractor defense:

> The government exercises its discretion over the design when it actually chooses a design feature. The government delegates

15

the design discretion when it buys a product designed by a private manufacturer; when it contracts for the design of a product or a feature of a product, leaving the critical design decisions to the private contractor; or when it contracts out the design of a concept generated by the government, requiring only that the final design satisfy minimal or general standards established by the government. **If the government delegates the design discretion to the contractor, the exercise of that discretion does not revert to the government by the mere retention of a right of "final approval" of a design nor by the mere "approval" of the design without any substantive review or evaluation of the relevant design features or with a review to determine only that the design complies with the general requirements initially established by the government. The mere signature of a government employee on the "approval line" of a contractor's working drawings, without more, does not establish the government contractor defense.**

*Id.* at 1480. More importantly, however, is the Fifth Circuits clear pronouncement that the question of discretion is properly based before the trier of fact as "the trier of fact should not evaluate the wisdom or quality of any government decision, but must locate the actual exercise of the discretionary function." *Id.*

In arguing that FEMA provided precise specifications with regard to the units, Bechtel details the extent of the contract specifications with regard to blocking and leveling of these units. While the cited portions of the contract may appear at first glance to be specific, these portions do not paint a complete picture of the installation tasks to be completed by Bechtel nor do they articulate what truly occurred during implementation of these specifications.

Before the units could be blocked and leveled on piers, the units had to be raised

with the weight off of their wheels using jacks. The contract is totally silent with regard to how the unit is to be raised or jacked up. Without the benefit of merits discovery as to Bechtel, Plaintiffs can only refer to the discovery with regard to other "no-bid" contractors acting under almost identical government contracts and specifications. Plaintiffs will show at trial that these four "no-bid" contractors did not properly raise these units and, further, that the FEMA specifications are silent on this issue.

The cases before the Court are similar to the Ninth Circuit decision in *Snell v. Bell Helicopter Textron*, 107 F.3d 744 (9th Cir. 1997), where the court held that a question of fact as to whether or not the government provided reasonably precise specifications for the helicopter's drive shaft precluded summary judgment under the government contractor defense. *Id.* at 746-47. Specifically, the Ninth Circuit determined that even though the summary judgment record established that the government was significantly involved in and approved of the entire design of the helicopter, the evidence did not establish, as a matter of law, that the government exercised its discretion with respect to the helicopter's drive shaft and its components. *Id.* at 748-49. On the contrary, the Ninth Circuit noted that the testimony of the manufacturer's official in charge of government dealings confirmed that the manufacturer essentially retained discretion over the drive shaft. *Id.* While the government is not required to issue standards that remove absolutely all discretion from the contractor, the government must provide "reasonably precise specifications" as to the design of the defective component. *Carley v. Wheeled Coach*, 991 F.2d 1117, 1125 (3d Cir. 1993) (finding that specifying the maximum height of forty-three inches for the design feature in question was reasonably specific).

17

While FEMA did provide some general guidance with regard to blocking and leveling the units and continuous maintenance, FEMA provided absolutely no procedures for raising or "jacking up" of the units. (*See* Rec. Doc. No. 2721-7 at pp.58-67). Other than the general instructions for blocking and leveling the unit, FEMA's instructions for installation are to "install travel trailers, mobile homes, modular homes or other temporary residential structures as expeditiously as possible" and "in accordance with the manufacturer's installation specifications." *Id* at pp.10-11. Since the manufacturer did not provide specifications for raising or jacking up these travel trailers off of the wheels for long-term residency, Bechtel itself determined how to jack up the units and elevate them off of their wheels and onto blocks in light of the fact that the government contract and the manufacturers' installation specifications are totally silent on that process.

Ultimately, Bechtel is unable to provide the precise specifications provided or approved by the government regarding the raising or "jacking up" of the units. For the government contractor defense to apply, the specifications must apply to the "particular feature allegedly defective." *Strickland v. Royal Lubricant Co., Inc.*, 911 F. Supp. 1460, 1467 (MD AL 1995) (finding that although evidence provides many pages of specification, including detailed drawings, such evidence does not provide specificity as to the dispute at issue). Plaintiffs contend that it would be inappropriate to grant Bechtel's Motion to Dismiss or motion for summary judgment in light of the lack of any such specifications by FEMA and the inability of the one Bechtel employee who was deposed prior to class certification to describe how Bechtel raised or jacked up these units.

18

**B.      Because There Are No Specifications For Raising or Jacking Up The Units, The Second Boyle Requirement as to Whether Bechtel "Conformed" to Those Specifications With Regard to These Units is Moot.**

There are absolutely no FEMA specifications for raising or jacking up these units before they are blocked and leveled. In fact, there are no instructions whatsoever as to how Bechtel should proceed to raise the units up in order to block and level the units. Since there are no relevant provisions in the FEMA contract for jacking, it is impossible for Bechtel to comply with non-existent government specifications. Therefore, Bechtel cannot demonstrate that it "conformed" to jacking specifications provided by FEMA since there are none and, thus, Bechtel cannot avail themselves of the government contractor defense since how to raise the units was within Bechtel's own discretion.

However, if this Court finds that FEMA provided reasonably precise specifications for the raising or jacking of the units, Bechtel still has not met the second element of the Boyle test. Although acceptance and use of an item following its production can in some limited circumstances establish that the item "conformed" to its specifications, *Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431, 435(5th Cir. 2000), such establishment is rare and is typically limited to particular circumstances.

FEMA personnel were not present to watch, supervise or accept Bechtel's process for raising or jacking up of each and every unit prior to blocking and leveling. FEMA's "Ready for Occupancy Certification" form, does not inspect for defects caused by improper jacking. (*See* Rec. Doc. No. 2721-11 and 2721-12). FEMA's "Temporary Housing Unit Inspection Report" also does not address the jacking up of the units. *Id.* When inspecting the units after they were installed by Bechtel, FEMA personnel simply checked to ensure

that the units were up on blocks and they noted any missing items or damage to the exterior of the unit caused by transporting the unit. Bechtel fails to show how the inspection packets for the Plaintiffs' units amount to knowledge or acceptance of their improper raising or jacking of the units which FEMA did not observe. Further, much of the damage caused by the improper raising of these units is not observable until after the unit is lived in. Thus, FEMA could not have "accepted" the unit or product since the damage caused by Bechtel may not have been evident at the time of FEMA's cursory inspection of the unit.

C.    **Alleged Warnings To The Government About OSHA Standards With Regard To Formaldehyde Is Not The Equivalent Of Warning The Government About The Dangers Of Improper Jacking Which Lead To Increased Formaldehyde Off Gassing.**

The third *Boyle* element requires proof that the contractor (Bechtel) warned FEMA about possible dangers in the use of the product known to the contractor but not to FEMA. *Boyle*, 487 U.S. at 512. The contractor satisfies this element by proving (1) that it lacks knowledge of any alleged danger relating to the product, or (2) that the government already knew of the alleged danger or hazard. *Agent Orange*, 517 F.3d at 99, 101; *Oliver*, 96 F.3d at 1003-04.

Bechtel asserts that they have met this element by warning OSHA, not FEMA, of potential violations of OSHA Standards for formaldehyde emissions applicable to workers in October of 2005. In October 2005, Bechtel was concerned about formaldehyde emissions in unused trailers at Bechtel's facilities. According to FEMA, Bechtel did not notify FEMA of these concerns in October of 2005 since FEMA contends that FEMA did not know of issues concerning formaldehyde in trailers until March of 2006. (*See* Rec. Doc. No.

20

2721-8 at p.9 and 34). Warning OSHA of concerns about formaldehyde levels in excess of OSHA standards for healthy workers while the units were in Bechtel's facility is not the equivalent of warning FEMA that trailer residents, including children and elderly individuals, are being exposed to excessive levels of formaldehyde because of warping and structural damage to the unit and its component parts caused by Bechtel's negligence.

When Bechtel informed OSHA of formaldehyde off gassing the units were not in the same condition as when Plaintiffs' resided in them. The units were at Bechtel's facility and were resting with all of the weight still on their wheels. They had not yet been raised. Bechtel failed to subsequently warn FEMA that their improper raising or jacking of the units had damaged the units and thus further increased the emission of formaldehyde into these housing units. Bechtel also failed to warn FEMA that its improper jacking process would damage the structure and frame making it vulnerable to further damage by the additional weight added by a family residing in the unit. When Bechtel warned OSHA of the dangerous formaldehyde off-gassing, Bechtel did not warn FEMA of their concerns.

Additionally, Bechtel alleges that FEMA's knowledge of the risks equaled or exceeded Bechtel's knowledge. However, FEMA was not present when the units were raised and damaged by Bechtel, therefore, in this regard, Bechtel's knowledge is superior to that of FEMA. Further, while FEMA may have learned that component parts were off gassing formaldehyde, Bechtel's knowledge of the structural damage done to the units by raising them (thereby increasing formaldehyde levels) was greater than that of FEMA's.

## VI. CONCLUSION

The case between Plaintiffs and Bechtel is simply a suit between two private parties for the negligence of Bechtel which caused damage to Plaintiffs. The historical narrowness of the federal government contractor immunity is hardly accidental. The extension of immunity to government contractors skews the balance we have historically struck in our judicial system to protect injured parties.

FEMA's contract did not specify how Bechtel was to raise these trailers off the ground and FEMA was not present to supervise or inspect the jacking up of these thousands of units. FEMA left this part of the installation process up to Bechtel. The manner in which Bechtel chose to negligently perform this function damaged these housing units which ultimately increased the levels of formaldehyde to which residents were exposed. As a result, Bechtel should not be allowed to hide behind the government contractor defense to escape liability for its negligent actions.

The government contractor's defense is a limited defense "asserted by defendants who perform government contracts to the specifications called by the federal government when those specifications caused the defendants to be unable to comply with state law." *Anderson v. Hackett,* 2009 WL 2371832, *9 (S.D. Ill. July 30, 2009). "If a defect is one inherent in the product or system that the government has approved, it will be covered by the defense. Where a defect is merely an instance of shoddy workmanship, it implicates no federal interest." *Harduvel v. General Dynamics Corp.*, 878 F.2d 1311, 1317 (11th Cir. 1989). The availability of the government contractor defense is limited to those contractors who can meet all of the elements of the defense. Bechtel cannot. Finally, although Bechtel was

in a better position to understand the formaldehyde dangers introduced by jacking up these units, Bechtel failed to warn FEMA. Thus, Bechtel's poor workmanship and failure to meet all of the elements pronounced in *Boyle* precludes the assertion of the government contractor defense.

## VII. **PRAYER**

WHEREFORE, Plaintiffs respectfully requests that the Court deny Bechtel's Rule 12(b)(6) Motion to Dismiss.

Respectfully submitted:

**FORMALDEHYDE TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:   504/522-2304
       Facsimile:    504/528-9973
       gmeunier@gainsben.com

       s/Justin I. Woods
       JUSTIN I. WOODS, #24713
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:   504/522-2304
       Facsimile:    504/528-9973
       jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'**
**STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
DENNIS REICH, Texas # 16739600
ROBERT BECNEL, #14072

## CERTIFICATE OF SERVICE

I hereby certify that on __August 26__, 2009, I electronically filed the foregoing

with the Clerk of Court by using the CM/ECF system which will send a notice of electronic

filing to all counsel of record who are CM/ECF participants.  I further certify that I

electronically mailed the foregoing document to all counsel of record who are non-CM/ECF

participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471