UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  FEMA TRAILER            )
FORMALDEHYDE PRODUCTS           )
LIABILITY LITIGATION,           )  MDL NO. 1873
                                )
                                )  SECTION "N"(5)
THIS DOCUMENT IS RELATED TO     )
                                )  JUDGE ENGELHARDT
Charlie Age, et al. v. Gulf     )  MAGISTRATE CHASEZ
Stream Coach, Inc., et al.,     )
Docket No. 09-2892; Alana       )
Alexander, individually and on  )
behalf of Christopher Cooper.   )
--------------------------------)

The Deposition of SCOTT BAILEY

Date:     Friday, July 31, 2009

Time:     2:02 p.m.

Place:    Warrick & Boyn, LLP
          121 West Franklin Street, Suite 400
          Elkhart, Indiana 46516


Called as a witness by the Plaintiffs in

accordance with the Federal Rules of Civil

Procedure for the United States District

Court, Eastern District of Louisiana, pursuant

to Notice.


Reported by
Angela J. Galipeau, RPR, CSR
Notary Public, State of Indiana
        MIDWEST REPORTING, INC.
          1448 Lincolnway East
        South Bend, Indiana 46613

            (574) 288-4242



1   Q.  All right.
2   A.  So sometimes they would just write, for instance, 2.7, 8
3       foot and then specify what color they wanted.  And then
4       other times somebody may just put a part number with no
5       description.
6   Q.  And is it true that -- and, again, I'm referring you to
7       the timeframe when you did business with Gulf Stream when
8       you worked at Adorn.  Okay?
9   A.  Sure.
10  Q.  During that timeframe, did Gulf Stream that you recall
11      ever specify that they wanted LFE wood?
12  A.  Is there a timeframe that you're asking about?
13  Q.  Yeah, I'm talking about before you learned of this policy
14      with RVIA.
15  A.  What I remember, no.  They were happy to get whatever they
16      can get.
17  Q.  So you can't remember anybody, any purchasing agent or
18      purchasing manager ever saying, hey, make sure this
19      particular wood is LFE?
20  A.  Correct.
21  Q.  They simply either would order by part number or they
22      would just order by description?
23  A.  Yes.
24  Q.  They were happy with whatever they could get?
25  A.  Yes.

1   Q.   And until you learned that the RVIA had adopted the LFE
2        policy, you sent them whatever they ordered?
3   A.   Yes.
4   Q.   If they didn't specify LFE, you didn't give them LFE?
5   A.   Correct.
6   Q.   If they just said -- what was the description you gave, 8
7        foot and 2.7 millimeter?
8   A.   Correct.
9   Q.   They said 8 foot, 2.7 millimeter and I want this color and
10       they didn't specify LFE, you gave them reg?
11  A.   Most likely, yes.
12  Q.   And on the invoices and the purchase orders, if LFE
13       doesn't appear, then we can assume that the product you
14       sent to them was reg?
15  A.   That's correct.
16  Q.   Do you ever recall a time when you admitted to Mr. Zumbrun
17       or anyone from Gulf Stream that you had made a mistake and
18       sent them the wrong kind of wood?
19  A.   I don't recall, no.
20  Q.   Do you ever recall a time when you kind of fell on the
21       sword and said, yes, I knew that Gulf Stream, you guys
22       wanted LFE wood, but we just made a mistake on our end and
23       we're sorry?
24  A.   I don't, no.
25  Q.   Now, when you listened to that tape, and I know it's

1   Q.  Gulf Stream was a customer of Adorn for at least ten
2       years; is that true?
3   A.  Yes.
4   Q.  Gulf Stream purchased a lot of different wood products; is
5       that right?
6   A.  Correct.
7   Q.  Do you ever recall a year where Gulf Stream didn't
8       purchase any wood products?
9   A.  No.
10  Q.  As far as you recall, they purchased wood products every
11      single year; is that right?
12  A.  That's correct.
13  Q.  They were one of your big customers; were they not?
14  A.  Yes.
15  Q.  Would you agree with me that if someone were to say if
16      Gulf Stream didn't buy any wood from Adorn in 2004, that
17      you would disagree with that?
18  A.  I'd be surprised, yes.
19  Q.  Because to your recollection that they absolutely
20      purchased wood from Adorn in 2004; is that right?
21  A.  Seems likely.  I hate to -- most likely, yes.
22  Q.  Now, just so I'm clear, if the invoice or the packing slip
23      doesn't reference formaldehyde at all, that is if it
24      doesn't say LFE, you would take that to mean that it was
25      regular and not LFE; is that right?

| | | |
|---|---|---|
| 1 | A. | Absolutely. It has to specify LFE or they get regular. |
| 2 | Q. | And is it possible that there were times when Gulf Stream |
| 3 | | on their purchase order may have had some language about |
| 4 | | HUD certified products, but you would still send them reg |
| 5 | | wood? |
| 6 | A. | Only if they would approve it. |
| 7 | Q. | Okay. So just because something is stamped on their |
| 8 | | purchase order, that doesn't necessarily mean that you did |
| 9 | | not send them reg wood, does it? |
| 10 | A. | Right, that we would communicate that. We would back |
| 11 | | order them. And if they said we have to have some |
| 12 | | material, we would tell them what we had available and |
| 13 | | they would have to approve it. |
| 14 | Q. | If I were to tell you that in the fall of 2007 the RVIA -- |
| 15 | | and what does RVIA mean? |
| 16 | A. | Recreational Vehicle Association, something like that. |
| 17 | Q. | If I were to tell you in the fall of 2007 the RVIA adopted |
| 18 | | a policy whereby their membership should use LFE woods, |
| 19 | | would that be the timeframe in which you learned that Gulf |
| 20 | | Stream had such a policy? |
| 21 | A. | I don't recall. |
| 22 | Q. | Previously you told me that you thought it was when the |
| 23 | | RVIA adopted that policy, right? |
| 24 | A. | Right. |
| 25 | Q. | I just looked that up and I found out that that was in the |

```
 1        fall of 2007.
 2   A.   Okay.  That would be about right then.
 3             MR. BUZBEE:  Sir, I want to thank you for your
 4        time and I'm going to pass the witness.
 5             MR. DINNELL:  Andy, Tony, this is Adam.  I have
 6        one question, if you don't mind.
 7                         CROSS-EXAMINATION
 8   BY MR. DINNELL:
 9   Q.   Mr. Bailey, my name is Adam Dinnell.  I represent the
10        United States in this case.  You said earlier today that
11        while you were working for Adorn, you would have some
12        communications with the Gulf Stream purchasing agent; is
13        that right?
14   A.   Yes.
15   Q.   When you worked for Adorn during that same time period,
16        did you ever have any communications with any FEMA
17        employees regarding wood products or travel-trailers?
18   A.   No.
19             MR. DINNELL:  Pass the witness.
20             MR. BUZBEE:  Andy, you got anything else because
21        I got one more question?
22             MR. WEINSTOCK:  Go ahead and ask it, but then I
23        do have some more stuff.
24
25
```