UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 | |
|     FORMALDEHYDE | * | | |
|     PRODUCTS LIABILITY | * | SECTION:  N(5) | |
|     LITIGATION | * | | |
| | * | JUDGE: ENGELHARDT | |
| This Document Relates to:  *Charlie Age, et al. v.* | * | | |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | MAG: CHASEZ | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DUTY TO TEST)

**MAY IT PLEASE THE COURT:**

On August 17, 2009, Defendants, Gulf Stream Coach, Inc. ("Gulf Stream") filed a Motion for Partial Summary Judgment regarding the Plaintiff's claim that the alleged defects in Gulf Stream's EHU were the result of Gulf Stream's failure to test the units properly in order to evaluate the level of formaldehyde emissions under foreseeable conditions for extended periods of time. (Rec. Doc. 2720). On August 26, 2009, the Plaintiff filed an Opposition to that motion. (Rec. Doc. 2892). Gulf Stream now appears before this Honorable Court to offer this reply.

At the core of Gulf Stream's original motion was a discussion of whether, as a consequence of Gulf Stream's failure to test, the Plaintiff's EHU was rendered defective <u>in composition and design</u>, and left Gulf Stream's custody with an unsafe level of formaldehyde. This was the critical determination because, as the Court has already held, the Louisiana Products Liability Act (LPLA) does not recognize a stand-alone claim for a manufacturer's failure to test its product. (Doc. No. 2322, p. 4). Thus, the Plaintiff misunderstands the true argument when she states in her Opposition, "Gulf Stream's failure to test Alana Alexander's unit rendered it defective."

The only other argument asserted by the Plaintiff in her Opposition is that Gulf Stream had knowledge of formaldehyde in the EHUs it built and did not test to ensure that the formaldehyde levels were adequate. She also argues that Gulf Stream failed to test to determine whether each unit conformed to Gulf Stream's policy of using LFE products in its travel trailers. In response, Gulf Stream respectfully points out that its knowledge of formaldehyde – and its knowledge of whether the units conformed to its own internal policy – is immaterial with respect to the duty to test. As stated in the original motion, Gulf Stream has the obligation to provide a travel trailer that was not unreasonably dangerous. Therefore, the important question is whether the Plaintiff's EHU had an unsafe level of formaldehyde, or whether the unit was safe and adequate. What Gulf Stream knew or did not know is a reasonableness determination that has no place under the LPLA.

The unimportance and irrelevance of knowledge is not the only consideration with respect to the duty to test. The federal government, through the Dept. of Housing and Urban Development, has recognized the unreliability of testing the ambient air for formaldehyde concentrations. In 1984, when HUD passed its final rule regarding Manufactured Home Construction and Safety Standards, it noted that the choice was either an ambient air standard that would limit the level of formaldehyde in the home, or a product standard that would regulate the formaldehyde-containing products themselves. 24 C.F.R. § 3280 (1984), at 3—4. HUD rejected the ambient standard on the basis that it contained too many variations in home temperature and humidity levels. *Id.* at 4—5. Also, HUD could not reliably test the ambient standard until the manufactured home had been completely assembled. *Id*. Therefore, it chose the product standard over the ambient standard. See id. HUD did state that the product standards

would result in an ambient standard of 0.4 ppm. *Id*. at 7—8. Importantly, this is eight times higher than the level measured in the Plaintiff's EHU.

Additionally, Gulf Stream notes that the Plaintiff offered no rebuttal to several arguments Gulf Stream presented in its original motion. First, there were zero reported problems from the residents who occupied 2004 travel trailers. In fact, the 2004 and older trailers were used as replacements when FEMA decided to swap out newer units on which they received complaints. Given this track record, the Plaintiff's allegation of "failure to test" is hollow. Second, the Plaintiff failed to respond to Gulf Stream's argument that, for all intents and purposes, any testing would have cleared the unit for occupancy no differently than the Plaintiff's unit was cleared when she moved in. The federal government tested over one hundred newly constructed units between October 2005 and January 2006, concluded that ventilation lowered formaldehyde concentrations to acceptable levels, and cleared the units for occupancy. If Gulf Stream had tested the plaintiff's unit in 2004, the results would have been exactly the same – FEMA would have cleared the unit for occupancy in May 2006.

As a final point, Gulf Stream asks the Court to consider what the Plaintiff is arguing – that Gulf Stream should have tested these units in order to ensure that they were not defective. This argument is completely unreasonable. If Gulf Stream were forced to test every EHU before it goes into service, the costs would end the industry. Further, since the company is based in Indiana, Gulf Stream cannot test its units at the same climate conditions that exist in south Louisiana. To test at 95 degrees and 90% humidity, Gulf Stream would have to artificially create such conditions in order to simulate a similar environment. If the Plaintiff's argument is taken to its next logical step, manufacturers would be required to test every product that contains formaldehyde, another irritant, or any carcinogen. Thus, every automobile manufacturer would

have to test each car it builds to ensure the exhaust is not unreasonable. Such an argument has no basis in the LPLA, or the products law of any other state for that matter. The Plaintiff's argument goes well beyond the bounds of the applicable duties and obligations Gulf Stream has in this case. As such, it would be dismissed.

        Respectfully Submitted:

        **DUPLASS, ZWAIN, BOURGEOIS,**
        **PFISTER & WEINSTOCK**

        s/Andrew D. Weinstock
        _____
        **ANDREW D. WEINSTOCK #18495**
        **JOSEPH G. GLASS #25397**
        3838 N. Causeway Boulevard, Suite 2900
        Metairie, Louisiana 70002
        (504) 832-3700
        (504) 837-3119 (FAX)
        andreww@duplass.com
        jglass@duplass.com

        and

        **SCANDURRO & LAYRISSON**
        **Timothy D. Scandurro #18424**
        **Dewey M. Scandurro #23291**
        607 St. Charles Avenue
        New Orleans, LA 70130
        (504) 522-7100
        (504) 529-6199 (FAX)
        tim@scanlayr.com
        dewey@scanlayr.com
        **Counsel for Defendant, Gulf Stream Coach, Inc.**

## **C E R T I F I C A T E**

I hereby certify that on the 27th day of August, 2009, a copy of the foregoing Reply to Plaintiff's Response to Defendant Gulf Stream's Motion for Partial Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

                                    s/Andrew D. Weinstock
                                 _____
                                 ANDREW D. WEINSTOCK #18495
                                 andreww@duplass.com