**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

IN RE: FEMA TRAILER                    MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION           SECTION "N-5"

                                       JUDGE ENGELHARDT
                                       MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF THE**
**PSC'S MOTION TO CERTIFY FOR INTERLOCUTORY**
**REVIEW PURSUANT TO 28 U.S.C. §1292(b) THE COURT'S**
**AUGUST 21, 2009 ORDER DISMISSING THE FTCA CLAIMS**
**OF CHRISTOPHER COOPER FOR LACK OF**
**SUBJECT MATTER JURISDICTION**

**MAY IT PLEASE THE COURT:**

Immediate appellate review is justified in this matter with respect to the Court's recent ruling of August 21, 2009, granting the motion of the defendant United States to dismiss the FTCA claims of plaintiff Alana Alexander on behalf of her minor son Christopher Cooper for the lack of subject matter jurisdiction (Doc. 2789). The PSC accordingly requests that the Court certify this ruling for interlocutory appeal and review pursuant to 28 U.S.C. §1292(b).

**I.      THE CRITERIA FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

By enacting 28 U.S.C. §1292(b), Congress intended to authorize interlocutory appeals "for the purpose of minimizing the total burden of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." 16 Charles Alan Wright, Authur R. Miller & Edward H. Cooper, "Federal Practice and Procedure," §3930 (2007). This procedural

device for interlocutory appeal is especially useful in the orderly and efficient administration of complex cases such as this one.  *See In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1263 (7th Cir. 1980).

In order for this Court to certify for interlocutory appeal its Order of August 21, 2009, Your Honor must be of the opinion that (1) your Order "involves a controlling question of law as to which there is substantial ground for difference of opinion....," and (2) that "an immediate appeal from the Order may materially advance the ultimate termination of the litigation...."  28 U.S.C. §1292(b).  It is respectfully submitted that both of these prerequisites are satisfied as to the Order of August 21, 2009.  More particularly, there are at least two important and controlling questions of law resolved in this Court's analysis and ruling.  Both relate to the questions of  the commencement or "accrual" date of an FTCA cause of action, and as to both it can be said that there are substantial grounds for a difference of opinion.  Secondly, given the thousands of FTCA cases "in the queue"and awaiting disposition in this multi-district litigation, early clarification and finalization as to these legal issues will assuredly advance in a material way the ultimate conclusion of these claims, whether that occurs while the MDL is pending or in the subsequent determination of FTCA cause of action accrual dates which will be necessary, post-remand, in the course of motion practice and merits trials in these cases.

**II.     THE QUESTION WHETHER DELAY IN THE ACCRUAL OF AN FTCA CAUSE OF ACTION MAY RESULT FROM A DEFENDANT REPRESENTATIVE'S STATEMENT TO A PLAINTIFF WHICH HAS THE EFFECT OF DOWNPLAYING THE RELATIONSHIP BETWEEN HARM AND A LEGAL REMEDY, IS A CONTROLLING QUESTION OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION**

Plaintiff submits that the question which goes to the heart of the "due diligence/discovery

rule of accrual" in FTCA cases such as the one at hand, is when — and how — a factual

representation by a defendant representative affects the application of the rule.

      A claim under the FTCA normally accrues on the date upon which the plaintiff was

injured.  However, there is an important exception to this rule which applies herein.  That

exception arises under "the diligence-discovery rule," and is triggered in those situations where

the plaintiff has not been able through normal diligence to discover the basis for his injury.  *See*

*Valdez ex rel Donely v. United States*, 518 F.3d 173, 177 (2nd Cir. 2008); *Kronisch v. United*

*States*, 150 F.3d 112 (2nd Cir. 1998); *Barrett v. United States*, 689 F.2d 324 (2nd Cir. 1982), *cert*

*den'd* 462 U.S. 1131, 103 So.2d 3111, 77 L.Ed.2d 1366 (1983).  The diligence-discovery rule has

been applied routinely in cases where the defendant federal government, through an agent, has

acted in a way which conceals important material facts going to the plaintiff's awareness of a

legal remedy, as well as in cases where a plaintiff can demonstrate that the injury which is the

subject of the potential legal claim was inherently unknowable at the time it occurred.  *See*

*Wehrman v. United States*, 830 F.2d 1480, 1483 (8th Cir. 1987); *Peck v. United States*, 470

F.Supp. 1003, 1018 (S.D. NY 1979); *Quinton v. United States*, 304 F.2d 234 (5th Cir. 1962).

Here, the facts do indicate that Alana Alexander and her son were initially injured by

formaldehyde exposure at a time when that exposure injury was inherently unknowable to them.

Perhaps more importantly, Ms. Alexander was specifically and directly induced to <u>be</u> unaware of

the existence of her legal remedy for exposure, given what she was told on moving into the trailer

by an individual representing defendants' interest.

      When Alana Alexander and her family arrived on the site of their property to take

occupancy of their FEMA travel trailer on May 27, 2006, they were met by an individual who

provided the keys and oriented them to features of the trailer.  It hardly can be disputed that this individual who met them with the trailer keys and "introduced" them to the trailer, did so on behalf of the defendant FEMA, either directly as a FEMA employee, or indirectly as an employee of a FEMA contractor/subcontractor responsible for the installation and set-up of the unit.  It would be curious, if not specious, to suggest that this individual was <u>not</u> representing the interest of defendant United States, and FEMA in particular, since the plaintiff had applied to FEMA for, and was receiving, housing assistance from FEMA.

When Ms. Alexander commented upon a chemical smell detected on the opening up of a trailer that obviously had been sealed for some time prior to this moment, the individual in question told her to simply ventilate or "air out" the unit and the chemical smell would go away.

The importance of these facts lies not in the identity of the individual by name, but in his position *vis-a-vis* plaintiff when he said what he said; and the importance of <u>what</u> he said is obvious, since it minimized the possibility that the chemical smell was a problem or would cause injury to Ms. Alexander or her family.  The mere fact that she and her son also experienced minor physical sensations, <u>even if they could be associated with the chemical smell</u>, does not change the fact that this defendant representative <u>simultaneously</u> encouraged them to take occupancy without worry or fear concerning the smell, and explicitly suggested that the smell (and, indirectly, any "harm" from the smell) could be safely avoided by ventilating the unit.

In a footnote of its August 21 Order, this Court has reasoned that, as a diligent and reasonable person, Ms. Alexander should "at the very least" have discovered the identity of the person communicating to her about the chemical smell "in order to discern whether that person's answer could be relied upon with any degree of confidence."  Order and Reasons of 8/21/09

(Doc. 2789) at pp. 5-6, *fn.* 4.  Respectfully, this imposes a duty of further inquiry upon a plaintiff under these circumstances which defeats the very *raison d'etre* of the "diligence-discovery rule of accrual" in cases of a concealment or misrepresentation by defendant.  One fundamental policy served by the rule is to avoid legally penalizing a plaintiff who reasonably relies upon communication from a person or entity having apparent authority on defendant's behalf, when that communication has the effect of inducing the plaintiff to believe she has no basis for pursuing legal action.  An additional policy objective of the rule is to deter potential defendants from avoiding legal exposure through miscommunications to injured parties.  The common thread in these policies is the same: equity and fairness.  Thus, in addressing the diligence-discovery rule's application in this context, courts have noted that "read into every federal statute of limitations... is the equitable doctrine that in case of defendant's...deliberate concealment of material facts relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of a lawsuit."  *Fitzgerald v. Seamans*, 553 F.2d 220, 228 (DC. Cir. 1977).  As further noted in a medical malpractice case brought under the FTCA, "the Government is precluded from raising a statute of limitations offense because the VA concealed material facts.  Such concealment...prevents the running of the statutory period."  *Wehrman v. United States, supra*; *See also Ryan v. United States*, 534 F.3d 828, 832 (8th Cir. 2008).

In this case, if the basis for finding accrual on May 27, 2006 is plaintiff's awareness of a relationship between harm and the chemical smell, how could she not be reasonably dissuaded by the advice of the defendant agent handing the trailer over to her to simply ventilate the trailer?

The PSC acknowledges the distinction made in the Court's Order and Reasons that

traditional equitable tolling doctrines such as *contra non valentum* do not apply to interrupt the two-year limitations period that runs in regard to the jurisdictional prerequisite of presenting an administrative claim in FTCA cases.  At the same time, the FTCA jurisprudence cited above makes clear that equity still plays a role in regard to the jurisdictional inquiry at hand.  As a matter of law, determination of the commencement of the two-year limitations period for an FTCA cause of action will depend upon whether plaintiff can demonstrate that, through concealment or insufficient knowledge, her FTCA claim did not accrue at a given time.  The important, jurisdictional meaning of the "due diligence-discovery rule" in FTCA accrual inquiries would be vitiated entirely if, as the Court suggests, a plaintiff is expected to challenge or further question a defendant representative in a position of apparent authority who induces her to discount the chemical smell she has detected (and, by inference, the minor sensations she may be experiencing).  Instead of defeating accrual, such communications on behalf of a defendant would have the opposite effect: they would merely trigger a duty on plaintiff's part to verify what the representative has said.  Plaintiff respectfully submits that this cannot, and should not, be how the diligence-discovery rule is intended to operate under the facts at hand, and that the Court's application of the rule effectively alters the legal standard of accrual embedded in the rule..

If and as Ms. Alexander's and her son's physical sensations continued over time, and if and as the chemical smell continued despite ventilation practices, the United States may argue that, despite what was said to the plaintiff on move-in day, her and her son's FTCA cause of action thereafter accrued, and the two-year limitations period commenced.  But the effect of the Court's present ruling is to establish accrual <u>the very first time</u> a chemical smell was detected and minor sensations were experienced, despite the offsetting influence of the defendant

representative's statements about the chemical smell <u>at that time</u>.

The interpretation and application of the "due diligence-discovery rule" in FTCA cases, in particular when the rule is applied contemporaneously with an arguable concealment of important material facts, thus are core legal issues to be resolved in this matter.  To the extent the Court has imposed a duty of further inquiry upon the very plaintiffs from whom such facts have been withheld (by downplaying the chemical smell, etc.), this matter of law is of extreme and precedential importance herein.

**III.    THE QUESTION WHETHER MINOR PHYSICAL SENSATIONS, EVEN WHEN EXPERIENCED CONTEMPORANEOUSLY WITH THE DETECTION OF A CHEMICAL ODOR, SHOULD FORM THE BASIS FOR A SUFFICIENT LEVEL OF KNOWLEDGE ABOUT LEGALLY COMPENSABLE HARM IN ORDER TO CAUSE ACCRUAL OF AN FTCA CAUSE OF ACTION, IS A CONTROLLING QUESTION OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION**

This Court has cited the fact that, based on Alana Alexander's deposition testimony in this case, both she and her minor son Christopher Cooper "both noticed an irritating chemical smell in the EHU and experienced physical symptoms such as burning sensation in the nose, sneezing and itchy eyes from the very first day they moved into the EHU."  *See* Order and Reasons of 8/21/09 (Doc. 2789 at p. 5).  Continuing to characterize the sensations as "symptoms," the Court proceeded to note that they recurred at later points in time as Ms. Alexander and Christopher lived in a unit.

It is important to emphasize that, while the move-in date of Alana Alexander and Christopher Cooper is not specified in the Court's Order and Reasons, the discovery and evidence in this matter confirm that they moved into their travel trailer on **May 27, 2006**.  It is a matter of record, as the Court notes, that Alana Alexander did not file her son's Form 95

administrative claim against the United States/FEMA until July 10, 2008, which would have been two years and approximately <u>six weeks</u> after the move-in date.  In other words, based on the Court's finding that the accrual of Christopher Cooper's FTCA cause of action occurred on the move-in date when the chemical odor was detected and the initial sensations were experienced, this is a case in which his FTCA claim was filed only six weeks after the Court's perceived deadline for doing so.  It thus becomes clear that, because Christopher Cooper and/or his mother did continue to experience these physical sensations and the odor of a chemical, their FTCA cause of action accrual date must be determined with reasonable precision and accuracy.  For example, if sufficient knowledge of legal harm did not arise until <u>July 11, 2006</u> (only 46 days after they moved in), then the filing of Christopher Cooper's FTCA administration claim form on July 10, 2008 would be deemed timely.

Citing the U.S. Supreme Court decision in *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Court has stated that the test for accrual is when a plaintiff has been "armed with the facts about the harm done to him" in a way that constitutes sufficient knowledge to be aware of at least the possibility of a legal claim.  *See* Order and Reasons of 8/21/09 (Doc. 2789) at p. 4.  But what legal standard applies to determine the meaning of "harm" in this context?  This mother and son sneezed, felt itchy eyes, and noticed some burning sensation in their noses on moving into the trailer.  They also smelled a chemical (as to which they were encouraged to believe there was no problem, *supra*).  To suggest that this "armed" them with sufficient facts about "harm" for which these might be a legal remedy, requires that the sensations in question both be associated with a downplayed chemical smell and, as of May 27, 2006, also be assessed as rising to the level of "harm," either in a medical or legal sense.  Is a

minor physical sensation, in other words, sufficient to constitute the kind of awareness of "harm" contemplated under the case law, when the sensations at best can be related to a reportedly transient and dispensable odor?

While it is true that, as the Court has noted, it is not unnecessary for a plaintiff to be aware of "the full extent" of her injuries for the limitations period to commence,(Order and Reasons of 8/21/09 at p. 6), it is respectfully submitted that the facts here would not have suggested to a reasonable person that any real injury or harm was even a possibility on May 27, 2006, much less associated with a chemical smell.  The inquiry, admittedly, is a factual one. However, different courts addressing different facts in such matters should be guided by a definable standard of harm.  The issue is whether sneezing and experiencing itchy eyes or a burning nose truly rise to the level of notification of what medicine would refer to, or what the law would compensate as, "harm,"particularly if accrual required the plaintiff to associate that "harm" with an odor she was being told would go away on airing out the unit.

## IV. THE IMMEDIATE REVIEW AND APPEAL OF THESE IMPORTANT AND CONTROLLING ISSUES OF LAW ALMOST CERTAINLY WILL ACCELERATE THE CONCLUSION OF FTCA LITIGATION IN THESE PROCEEDINGS

It already has been recognized both by the Court and the parties that state tort law statute of limitations issues, as well as FTCA accrual/limitations issues, must be addressed in these proceedings on a case-by-case basis.  The facts and circumstances of each case obviously will have to be developed in order to inform the Court and the parties as to the availability of all defendants' limitations/jurisdictional defenses.

Nevertheless, there can be no question about the importance of properly defining the legal

2923-1

standard that is to be applied to these variable facts and circumstances.  The above questions whether minor sensations and their possible association with a chemical smell constitute facts indicative of "harm," and/or whether a defendant agent's arguable concealment of the potential risk associated with the smell prevents the accrual of an FTCA cause of action without any obligation on the part of the plaintiff to inquire further into the matter at that moment, must be resolved with clarity and finality for the correct legal standard to be applied, going forward. Since literally thousands of FTCA claims await disposition through motions and on the merits, either in this MDL or in separate proceedings post-remand, these are controlling legal questions in the truest sense.  Depending upon the views of the Fifth Circuit and, through appeal, confirmation of the appropriate legal standard as applied to what may be recurrent facts, literally thousands of FTCA claims in this matter may either be considered timely or not, and either Your Honor and other presiding district judges will either have subject matter jurisdiction or not, per the standard for "accrual" in these actions against the United States/FEMA.  An immediate appeal of these questions, therefore, will promote an accelerated and expedited resolution of this MDL and the consolidated FTCA cases herein.

          For these reasons, the PSC respectfully moves the Court for an Order certifying the above issues for appeal under 28 U.S.C. §1292(b).

                                        Respectfully submitted:

                                        **FEMA TRAILER FORMALDEHYDE**
                                        **PRODUCT LIABILITY LITIGATION**

                              BY:     s/Gerald E. Meunier
                                        GERALD E. MEUNIER, #9471

**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:     504/522-2304
Facsimile:      504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:     504/522-2304
Facsimile:      504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
    ANTHONY BUZBEE, Texas # 24001820
    ROBERT M. BECNEL, #14072
    RAUL BENCOMO, #2932
    FRANK D'AMICO, JR., #17519
    MATT MORELAND, #24567
    LINDA NELSON, #9938
    DENNIS REICH, Texas #16739600
    MIKAL C. WATTS, Texas #20981820

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2009, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all

counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing

document and the notice of electronic filing by first-class mail to all counsel of record who are

non-CM/ECF participants.

-11-

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471