UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 | |
|     FORMALDEHYDE | * | | |
|     PRODUCTS LIABILITY | * | SECTION: N(5) | |
|     LITIGATION | * | | |
| | * | JUDGE: ENGELHARDT | |
| This Document Relates to: *Charlie Age, et al. v.* | * | | |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | MAG: CHASEZ | |

*************************************************************************

### REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DUTY TO WARN)

**MAY IT PLEASE THE COURT:**

On August 17, 2009, Defendants, Gulf Stream Coach, Inc. ("Gulf Stream") filed a Motion for Partial Summary Judgment regarding the plaintiffs' inadequate warning claims under the Louisiana Products Liability Act ("LPLA") and asserting that Gulf Stream has satisfied its duty to warn under the LPLA in all respects. (Rec. Doc. 2719). On August 26, 2009, the Plaintiff filed an Opposition that presented several arguments, including that Gulf Stream knew about formaldehyde in its travel trailers but did not warn occupants, FEMA is not a sophisticated purchaser, and that Gulf Stream made no attempt to warn the end users of its products. (Rec. Doc. 2901). Gulf Stream now appears before this Honorable Court to offer this reply.

Putting aside the inflammatory, unprofessional, and irrelevant commentary that pervades the Plaintiff's Opposition, Gulf Stream asserts that its Motion is about very basic, straightforward concepts. First of all, this bellwether trial is about Alana Alexander and Christopher Cooper. Gulf Stream's duties, obligations and responsibilities must be examined in light of these plaintiffs, and these plaintiffs only. Accordingly, this Honorable Court must evaluate one of those obligations – Gulf Stream's duty to warn – in the same light.

Second, a critical fact in the case of these plaintiffs is the fact that they resided in a 2004 Gulf Stream travel trailer. While several thousand plaintiffs in this MDL did not live in 2004 units, plaintiffs Alexander and Cooper did. Thus, the 2004 unit and its component parts are the only relevant players in this game. The Plaintiff even argues that point herself, stating, "Gulf Stream should have had enough common sense to know that 2004 trailers were at issue here." (Rec. Doc. 2901, p. 16). Indeed, Gulf Stream is keenly aware of that fact.

Thus, the issue becomes whether formaldehyde in the 2004 units was a potentially damage-causing characteristic that created an obligation on Gulf Stream's part to warn end users of the chemical. At the outset, it is crucial to note that under the LPLA, a manufacturer only has a duty to warn about a characteristic of the product that may cause damage. *See* La. Rev. Stat. § 9:2800.57(A). Applied to this case, Gulf Stream's duty to warn is not applicable to the mere presence of formaldehyde; it is applicable to formaldehyde's capability to cause damage to these plaintiffs. To that end, Gulf Stream reiterates a point from its original motion – it learned of no characteristic in the 2004 EHUs that had the potential to cause damage to the users of this product, plaintiffs Alexander and Coopers. This is established by the fact that during the timeframe in which the Plaintiff's trailer was constructed, **Gulf Stream only ordered and specified LFE for its travel trailers**. *See* Affidavit of Jeff Zumbrun, dated August 7, 2009, ¶ 4, attached as Exhibit "A." Gulf Stream has reviewed every single purchase order during that time period and has confirmed that each specifies LFE. *Id*. at ¶ 5. The evidence also shows that EHU residents experienced zero problems with the 2004 Gulf Stream units, and this specifically included the experience with the thousands of travel trailers sold to FEMA in the wake of the 2004 Florida hurricanes. (Rec. Doc. 2719-2, p. 12—13). This evidence completely undoes the Plaintiff's Opposition to this point.

Additionally, though the Plaintiff she argues that Adorn's salesman Scott Bailey does not recall Gulf Stream's orders for LFE and Gulf Stream was "happy to get whatever they can get," the objective evidence undermines this argument. Mr. Bailey himself acknowledged that not a single purchase order he reviewed from 2004 had anything to do with wood products. *See* Deposition Transcript of Scott Bailey, taken on July 31, 2009, at 13—18, attached as Exhibit "B." Accordingly, Mr. Bailey admitted that there was not a single purchase order or invoice for regular wood product in 2004. *Id*. at 18. Thus, while Mr. Bailey may have had a certain recollection about Gulf Stream's buying patterns, he could not identify a single instance in which Gulf Stream ordered non-LFE products during the time period in which the Plaintiff's EHU was built. Not simply relying on the lack of knowledge, Gulf Stream has proactively verified that it <u>did</u> order LFE during the time in which the Plaintiff's unit was constructed. Exhibit A, ¶ 5.

Further, though the Plaintiff tries to argue that Gulf Stream's Chairman, James Shea, knew of formaldehyde in the 1980s, <u>she conveniently leaves out the fact that Mr. Shea mentioned the problems in the 1980s to provide context for the ultimate decision to utilize LFE in Gulf Stream's travel trailers</u>. *See* 30(b)(6) Deposition of Gulf Stream Coach, Inc., taken on May 28, 2009, at 91—92, attached as Exhibit "C." Thus, Gulf Stream submits that it no knowledge of any potentially damage-causing characteristic in its units, and thus had no duty to warn of any "unreasonably dangerous" condition.

Third, there is no question that the federal government was a sophisticated purchaser. Through FEMA, it knew that formaldehyde was contained in the EHUs and made the conscious decision to purchase them anyway. (Rec. Doc. 2719-2, p. 7). Interestingly, the Plaintiff seems to forget that FEMA is not the defendant here – the United States is. Much like the *Morgan* case cited in Gulf Stream's original motion, with respect to formaldehyde the federal government is

perhaps the most sophisticated user/purchaser of all. It regulates the type of formaldehyde containing component parts that can go into Manufactured Housing through the Department of Housing and Urban Development, and it decides how much formaldehyde a worker can be exposed to through the Occupational Safety and Health Administration. When the formaldehyde issue came up regarding FEMA trailers, the government turned to its own agencies, OSHA and the Environmental Protection Agency, to test the units. It also looked to the Center for Disease Control to evaluate any potential health effects. The United States, which is the actual defendant, knew about the health effects of formaldehyde, knew that it was contained in the Gulf Stream EHUs it purchased, and purchased the trailers anyway. It is undoubtedly, and as a matter of law, the ultimate sophisticated user/purchaser.

Fourth and finally, Gulf Stream has shown that FEMA took sole responsibility for the formaldehyde complaints after they arose in early 2006. The Plaintiff seems to ignore completely the letter Gulf Stream attached to its original motion. (Rec. Doc. 2719-6). This letter shows that Gulf Stream advised FEMA that it was "ready, willing, and able to work with FEMA with regard to any complaint," but Gulf Stream was expressly instructed to address any such complaints to FEMA and <u>not</u> to make any future contact with travel trailer occupants. *Id*.

The Plaintiff argues that Gulf Stream has no evidence that it asked FEMA if it could forward a warning to residents or if FEMA would do so on Gulf Stream's behalf. (Rec. Doc. 2901, p. 9). She also argues that Gulf Stream withheld information from FEMA, Gulf Stream knew that FEMA would deny Gulf Stream access to trailer occupants so it "folded up its tent and [went] home," and Gulf Stream has no proof that it even tried to warn the residents. *Id*. at 13, 15—16. Evidently, she simply ignores the evidence Gulf Stream presented with its original motion. As stated in that motion and as is evident by looking at the letter, Gulf Stream showed its

willingness to work with FEMA regarding any complaint, but was told to leave the problem to FEMA. For the Plaintiff to suggest that Gulf Stream was happy to pass the buck is absurd.

        Respectfully Submitted:

        **DUPLASS, ZWAIN, BOURGEOIS,**
        **PFISTER & WEINSTOCK**


        s/Andrew D. Weinstock
        _____
        **ANDREW D. WEINSTOCK #18495**
        **JOSEPH G. GLASS #25397**
        3838 N. Causeway Boulevard, Suite 2900
        Metairie, Louisiana 70002
        (504) 832-3700
        (504) 837-3119 (FAX)
        andreww@duplass.com
        jglass@duplass.com

        and

        **SCANDURRO & LAYRISSON**
        **Timothy D. Scandurro #18424**
        **Dewey M. Scandurro #23291**
        607 St. Charles Avenue
        New Orleans, LA 70130
        (504) 522-7100
        (504) 529-6199 (FAX)
        tim@scanlayr.com
        dewey@scanlayr.com
        **Counsel for Defendant, Gulf Stream Coach, Inc.**

**C E R T I F I C A T E**

I hereby certify that on the 27th day of August, 2009, a copy of the foregoing Reply to Plaintiff's Response to Defendant Gulf Stream's Motion for Partial Summary Judgment (Duty to Warn) was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

                         s/Andrew D. Weinstock
                         _____
                         ANDREW D. WEINSTOCK #18495
                              andreww@duplass.com