**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:  FEMA TRAILER        *     MDL NO. 1873
       FORMALDEHYDE PRODUCTS     *
       LIABILITY LITIGATION       *     SECTION "N" (5)
                                       *
                                       *     JUDGE ENGELHARDT
                                       *     MAGISTRATE CHASEZ
                                       *
THIS DOCUMENT IS RELATED TO     *
                                       *
*Charlie Age, et al v. Gulf Stream Coach*     *
*Inc., et al*, Docket No. 09-2892;     *
Alana Alexander, individually and on behalf of     *
Christopher Cooper     *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S RESPONSE TO DEFENDANTS GULF STREAM COACH, INC.
MOTION TO STRIKE OPINIONS AND TESTIMONY OF PAUL LAGRANGE**

Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper ("Plaintiff" or "Ms. Alexander"), responds to Defendant Gulf Stream Coach, Inc.'s ("Defendant" or "Gulf Stream") Motion to Strike Opinions and Testimony of Paul LaGrange (Docket Entry No. 2879) and, in support, would show the following:

Gulf Stream moves to strike the entire testimony of Paul LaGrange because, it claims, 1) the Court excluded the results of a blower door test and a duct blaster test, along with infrared thermography image readings, which Mr. LaGrange obtained on May 6/7, 2009, and 2) all of Mr. LaGrange's opinions are based on those tests.[1]   Neither point is true, and the Motion should be denied.

----

[1] Gulf Stream does not object on any other grounds.

**I.**      **Blower Door, Duct Blast Tests and Infrared Thermography Image Readings.**

Gulf Stream's first argument is that all of Mr. LaGrange's opinions are based on results

from a blower door test, a duct blaster test, and infrared thermography image readings that were

done on May 6 and 7, 2009.   Gulf Stream contends that the Court has excluded all such

evidence.   Plaintiff disagrees.  A full examination of the history is warranted.

**December 2007**      Plaintiff hires counsel.

**January 28/29, 2008** Plaintiff's counsel hires testing firm to do formaldehyde air tests

on trailer.  To be clear, no other tests were done.

**February 11, 2008**   FEMA removes trailer from home site.   At this point, neither

Plaintiff nor her counsel have any access to trailer.  Although the PSC's experts were permitted

to do formaldehyde air testing of some FEMA trailers in the summer of 2008, FEMA never

identified this particular trailer as one that could be tested.

**April 6, 2009**      Court names Plaintiff as first trial plaintiff (Docket Entry No.

1299).

**April 8, 2009**      Plaintiff's counsel asks FEMA to permit Plaintiff's experts to do

comprehensive testing (including formaldehyde air testing) of the trailer.    FEMA agrees.

Plaintiff submits protocol to FEMA, which calls for air testing, ventilation testing, materials

audit and measurements.

**April 17, 2009**      Plaintiff's counsel (not accompanied by any experts) do a thirty

minute walkthrough of trailer.  FEMA will allow no testing to be done, and thus, no testing is

done.

**April 27, 2009**          Defendants file Motion for Protection. (Docket Entry No. 1373)

The Motion seeks an order "that prevents the plaintiffs and/or their representatives from

performing new air quality tests."[2]  (Docket Entry No. 1373-2, at p. 2)(emphasis added).    The

Motion cited several cases that prohibit "duplicative discovery."   Defendants complained that

Plaintiff "seeks to conduct a second air quality test and inspection despite having already

conducted an air quality investigation and obtained the results. Yet, it has provided no

explanation why a second test is needed and has presented no evidence that the first test was

inaccurate or faulty. Simply put, the plaintiffs have offered no reason why such duplication is

warranted." *Id*. at p. 4.   At that point, the only testing of this trailer was a formaldehyde air test.

No blower door or duct blaster tests had been done, and no infrared thermography readings had

been taken. Further, the expert to which Defendants referred was Mary DeVany, who opined

only on formaldehyde air testing.

Defendants then explained how a second air quality (formaldehyde) test would be

confusing to the jury and prejudicial to Defendants.   Again, Defendants made no request to

exclude blower door, duct blaster test results or thermography readings.  Defendants concluded

by arguing that, "[t]he plaintiffs have already tested the unit, and their own expert has verified

the accuracy of the tests." *Id*. at p. 7.

**April 28, 2009**          In light of the immediacy of the expert report deadline, the Court

allowed testing to move forward, but noted that Defendants could file motions regarding the test

---

[2] The blower door test and the duct blaster test are not air quality tests. The blower door test measures "air leakage rates through the building envelope." *See* ASTM 1827, Section 1.1, attached to Gulf Stream Motion as Exhibit B. The duct blaster test measures air leakage from the ducts.  The thermal imaging measures temperatures at various parts of the trailer.

results.   Defendants never filed (and have never filed) any motion to exclude the blower door,

duct blaster, or infrared thermography readings.

**May 6/7, 2009**        Plaintiff's experts conduct testing of trailer.  All defendants have

representatives (counsel and experts) present to observe the testing.  All results are provided to

Defendants.

**May 18, 2009**        The Court grants Defendant's Motion for Protection "to the extent

that Plaintiffs will not be allowed to use the results of the test at issue in this motion." (Docket

Entry No. 1847, p. 4)(emphasis added).  The Order focuses almost exclusively on the results of

formaldehyde testing and said that only those results were excluded.[3]   *Id*.  Considering that the

sole focus of Defendant's motion was on the formaldehyde air sampling tests, the language of

the ruling refers to a "test" instead of "tests", and the ruling does not reference materials audits,

measurements, the environmental walkthrough study, photographs/video or ventilation testing,

Plaintiff respectfully submits that the Order only served to exclude the formaldehyde test results.

**May 21, 2009**        Gulf Stream and Fluor filed motions to exclude all of Plaintiff's

experts for a variety of reasons, including their reliance on all of the information learned at the

May 6/7, 2009 inspection and testing. (Docket Entry No. 1557)

---

[3]  The Court did say that the PSC had also conducted an environmental walkthrough study, measurements of the trailer, a materials audit and ventilation testing in the May 6/7 2009 testing.   The Court observed that there was no reason why these things could not have been done before now.  However, there was a good reason—as set forth above, prior to May 2009, Ms. Alexander's counsel had access to the trailer for only a short time and, during this time, the parties and Court were still grappling with the issue of class certification.  It would not have made financial sense to have a team of experts perform a thorough analysis of this trailer (among literally tens of thousands of trailers) at that time.   Undoubtedly, had Plaintiff's counsel attempted to do so—for this trailer and the tens of thousands of others at issue in this MDL—**it would have been met with strong objections from FEMA and defense counsel, considering their consistent position (adopted by the Court) to limit all discovery to class issues during that time.**   Within a month of Plaintiff retaining counsel, the trailer had been removed by FEMA.

**July 6, 2009**          The Court denied the Motion, stating that, "Plaintiffs cannot, now,

attempt to offer expert opinions on that testing, which the Court has excluded.  Moreover, any

data collected as a result of this testing, and opinions based solely on such testing, shall also be

excluded.  However, the Court considers measurements as facts, not testing results; thus these

facts might even be subject to stipulation by the parties." (Docket Entry No. 2062, at p. 2). In a

footnote, the Court added, "For example, measurements of the subject EHU taken during this

testing would not be considered by the Court to be expert opinion or a product of expert testing.

Accordingly, such information would likely be admissible." *Id.* at p. 2, fn. 1.

In sum, Plaintiff submits that there has never been a motion to exclude anything other

than the May 6/7, 209 air quality (formaldehyde) test results and, as such, the Court has only

excluded those results.  Plaintiff respectfully contends that the Court has never excluded the

blower door or duct blaster tests or infrared thermography readings.  Further, Plaintiff contends

that those are more akin to measurements (particularly the infrared thermography readings).  As

those results and readings have not been excluded, there is no basis to exclude Mr. LaGrange's

testimony on such basis.

At most, only the May 6/7, 2009 formaldehyde test results have been excluded, and Mr.

LaGrange did not rely on those results.  The remaining information learned at the May 2009

inspection has to do with the very trailer at issue in this case—it is relevant and admissible.

## II.     **Even if These Results are Excluded, LaGrange Can Discuss Other Topics.**

Mr. LaGrange is expected to testify on other topics as well, as set forth in his report.   He

will discuss general issues about heating, cooling, insulation and ventilation systems and how

they work.  *See* LaGrange Report, p. 2, attached to Gulf Stream's Motion, at Exhibit A.  He will discuss size, location and installation of duct work and the importance of same.  *Id.*  He will discuss the importance of reduction of air and duct leakage in homes.  *Id*. at p. 3-4.  He will discuss insulation issues (R-values and U-values).  *Id*. at p. 5.  He will also discuss his findings regarding thermal and air infiltration calculations (based on his measurements of the trailer).  *Id*. at p. 11.[4]

In sum, Mr. LaGrange offers other opinions that have nothing to do with the blower door test results, duct blaster test results and infrared thermography readings.    Even if those results/readings are excluded, Mr. LaGrange can still testify on these other topics.

## CONCLUSION AND PRAYER

Wherefore, Plaintiff respectfully requests that the Court deny Gulf Stream's Motion.

---

[4] Plaintiff has designated Ervin Ritter on many of these topics as well, but will not offer any duplicative opinions. Most likely, Mr. Ritter and other experts will rely on Mr. LaGrange's report rather than have Mr. LaGrange testify live at trial.  Much of this is dependent on how the Court rules on Defendant's many motions to exclude expert testimony.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        jwoods@gainsben.com

        **COURT-APPOINTED PLAINTIFFS'
        STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON, #9938
        MIKAL WATTS, Texas # 20981820
        ROBERT BECNEL
        DENNIS REICH, Texas # 16739600

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471