UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | * | |
| *Inc., et al*, Docket No. 09-2892; | * | |
| Alana Alexander, individually and on behalf of | * | |
| Christopher Cooper | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO DEFENDANTS GULF STREAM COACH, INC.
MOTION TO STRIKE OPINIONS AND TESTIMONY OF ERVIN RITTER**

Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper ("Plaintiff" or "Ms. Alexander"), responds to Defendant Gulf Stream Coach, Inc.'s ("Defendant" or "Gulf Stream") Motion to Strike Opinions and Testimony of Ervin Ritter (Docket Entry No. 2777) and, in support, would show the following:

Gulf Stream moves to strike the entire testimony of Ervin Ritter because, it claims, 1) the Court excluded the results of a blower door test and a duct blaster test, along with infrared thermography image readings, which Paul LaGrange[1] obtained on May 6/7, 2009, and 2) all of Mr. Ritter's opinions are wholly based on the information collected by Mr. LaGrange.[2]  Neither point is true, and the Motion should be denied.

---

[1] Gulf Stream has filed a separate motion to strike the opinions and testimony of Paul LaGrange.  (Docket Entry No. 2879.)
[2] Gulf Stream does not move on any other grounds.

I.      **Blower Door, Duct Blast Tests and Infrared Thermography Image Readings.**

Gulf Stream's first argument is that all of Mr. LaGrange's opinions are based on results from a blower door test, a duct blaster test, and infrared thermography image readings that were done on May 6 and 7, 2009. Gulf Stream contends that the Court has excluded all such evidence. Plaintiff disagrees. A full examination of the history is warranted.

**December 2007**     Plaintiff hires counsel.

**January 28/29, 2008** Plaintiff's counsel hires testing firm to do formaldehyde air tests on trailer. To be clear, no other tests were done.

**February 11, 2008**  FEMA removes trailer from home site. At this point, neither Plaintiff nor her counsel have any access to trailer. Although the PSC's experts were permitted to do formaldehyde air testing of some FEMA trailers in the summer of 2008, FEMA never identified this particular trailer as one that could be tested.

**April 6, 2009**     Court names Plaintiff as first trial plaintiff (Docket Entry No. 1299).

**April 8, 2009**     Plaintiff's counsel asks FEMA to permit Plaintiff's experts to do comprehensive testing (including formaldehyde air testing) of the trailer. FEMA agrees. Plaintiff submits protocol to FEMA, which calls for air testing, ventilation testing, materials audit and measurements.

**April 17, 2009**    Plaintiff's counsel (not accompanied by any experts) do a thirty minute walkthrough of trailer. FEMA will allow no testing to be done, and thus, no testing is done.

**April 27, 2009**    Defendants file Motion for Protection. (Docket Entry No. 1373)

The Motion seeks an order "that prevents the plaintiffs and/or their representatives from performing new air quality tests."[3] (Docket Entry No. 1373-2, at p. 2)(emphasis added). The Motion cited several cases that prohibit "duplicative discovery." Defendants complained that Plaintiff "seeks to conduct a second air quality test and inspection despite having already conducted an air quality investigation and obtained the results. Yet, it has provided no explanation why a second test is needed and has presented no evidence that the first test was inaccurate or faulty. Simply put, the plaintiffs have offered no reason why such duplication is warranted." *Id*. at p. 4. At that point, the only testing of this trailer was a formaldehyde air test. No blower door or duct blaster tests had been done, and no infrared thermography readings had been taken. Further, the expert to which Defendants referred was Mary DeVany, who opined only on formaldehyde air testing.

Defendants then explained how a second air quality (formaldehyde) test would be confusing to the jury and prejudicial to Defendants. Again, Defendants made no request to exclude blower door, duct blaster test results or thermography readings. Defendants concluded by arguing that, "[t]he plaintiffs have already tested the unit, and their own expert has verified the accuracy of the tests." *Id*. at p. 7.

**April 28, 2009**   In light of the immediacy of the expert report deadline, the Court allowed testing to move forward, but noted that Defendants could file motions regarding the test results. Defendants never filed (and have never filed) any motion to exclude the blower door,

---

[3] The blower door test and the duct blaster test are not air quality tests. The blower door test measures "air leakage rates through the building envelope." *See* ASTM 1827, Section 1.1, attached to Gulf Stream Motion as Exhibit B. The duct blaster test measures air leakage from the ducts. The thermal imaging measures temperatures at various parts of the trailer.

duct blaster, or infrared thermography readings.

**May 6/7, 2009**       Plaintiff's experts conduct testing of trailer.  All defendants have representatives (counsel and experts) present to observe the testing.  All results are provided to Defendants.

**May 18, 2009**       The Court grants Defendant's Motion for Protection "to the extent that Plaintiffs will not be allowed to use the <u>results of the test at issue in this motion</u>." (Docket Entry No. 1847, p. 4)(emphasis added).  The Order focuses almost exclusively on the results of formaldehyde testing and said that only those results were excluded.[4]  *Id*.  Considering that the sole focus of Defendant's motion was on the formaldehyde air sampling tests, the language of the ruling refers to a "test" instead of "tests", and the <u>ruling</u> does not reference materials audits, measurements, the environmental walkthrough study, photographs/video or ventilation testing, Plaintiff respectfully submits that the Order only served to exclude the formaldehyde test results.

**May 21, 2009**       Gulf Stream and Fluor filed motions to exclude all of Plaintiff's experts for a variety of reasons, including their reliance on all of the information learned at the May 6/7, 2009 inspection and testing. (Docket Entry No. 1557)

**July 6, 2009**       The Court denied the Motion, stating that, "Plaintiffs cannot, now, attempt to offer expert opinions on <u>that testing</u>, which the Court has excluded.  Moreover, any

---

[4] The Court did say that the PSC had also conducted an environmental walkthrough study, measurements of the trailer, a materials audit and ventilation testing in the May 6/7 2009 testing.  The Court observed that there was no reason why these things could not have been done before now.  However, there was a good reason—as set forth above, prior to May 2009, Ms. Alexander's counsel had access to the trailer for only a short time and, during this time, the parties and Court were still grappling with the issue of class certification.  It would not have made financial sense to have a team of experts perform a thorough analysis of this trailer (among literally tens of thousands of trailers) at that time.  Undoubtedly, had Plaintiff's counsel attempted to do so—for this trailer and the tens of thousands of others at issue in this MDL—**it would have been met with strong objections from FEMA and defense counsel, considering their consistent position (adopted by the Court) to limit all discovery to class issues during that time.**   Within a month of Plaintiff retaining counsel, the trailer had been removed by FEMA.

data collected as a result of this testing, and opinions based solely on such testing, shall also be excluded. However, the Court considers measurements as facts, not testing results; thus these facts might even be subject to stipulation by the parties." (Docket Entry No. 2062, at p. 2). In a footnote, the Court added, "For example, measurements of the subject EHU taken during this testing would not be considered by the Court to be expert opinion or a product of expert testing. Accordingly, such information would likely be admissible." *Id.* at p. 2, fn. 1.

In sum, Plaintiff submits that there has never been a motion to exclude anything other than the May 6/7, 209 air quality (formaldehyde) test results and, as such, the Court has only excluded those results. Plaintiff respectfully contends that the Court has never excluded the blower door or duct blaster tests or infrared thermography readings. Further, Plaintiff contends that those are more akin to measurements (particularly the infrared thermography readings). As those results and readings have not been excluded, there is no basis to exclude Mr. LaGrange's testimony on such basis.

At most, only the May 6/7, 2009 formaldehyde test results have been excluded, and Mr. LaGrange did not rely on those results. The remaining information learned at the May 2009 inspection has to do with the very trailer at issue in this case—it is relevant and admissible.

II. **Even if These Results are Excluded, Ritter Conducted an Independent Inspection of the Trailer**

Even if the data collected by Mr. LaGrange is deemed to be inadmissible, the testimony and opinions of Mr. Ritter should not be struck in their entirety. As stated in his deposition, Mr. Ritter also performed an independent inspection of the trailer:

Q. What did you do at the trailer on May 6?

>A. On May 6, it was basically a static inspection because nothing was operating. We were late in the day, so that part of the inspection was photographing and documentation of the visual inspection.

Deposition of Ervin Ritter, at p. 45, relevant portions attached as **Exhibit A**. Mr. Ritter performed additional measurements the following day. *Id*. at pp. 45-46; *see also* Handwritten Notes of Ervin Ritter, attached as **Exhibit B**. Therefore, any testimony and opinions not based on Mr. LaGrange's data should be admissible.

Gulf Stream's assertion that Mr. Ritter's opinions and testimony are purely limited to the HVAC system is wrong. During the May 6/7 inspection, Mr. Ritter made the following observations:

- The construction materials used in the trailer (including, but not limited to, insulation and the membrane used to enclose the trailer). *See* Expert Report of Ervin Ritter, at p. 5, attached to Gulf Stream's Motion as Exhibit A (Docket Entry No. 2777-3).

- The air conditioning (A/C) unit, include cold spots and leaks detected without the use of equipment and the accumulation of condensation. *Id*.; see also Ritter Depo., at p. 67.

- The poor quality of workmanship, including holes in the unit and the Tyvek membrane (and the poor placement of the vapor barrier). *See* Ritter Expert Report, at pp. 5-7.

Mr. Ritter also determined through observation that the A/C unit and/or ducts were not installed as intended by the A/C manufacturer. *Id*. at p. 8; *see also* Ritter Depo, at pp. 136-39. Based on these and other observations, even if the duct blaster test and blower door test results and infrared thermography readings are excluded, Mr. Ritter can still opine about the following topics, all covered in his report:

- The very low R-Value of the insulation;

- How the dew point and temperature will lead to moisture build-up in the walls due to this low R-Value;

- That the A/C ducts leaked; and

- How poor workmanship allowed hot, humid air to enter the interior of the trailer and the cavity space between the walls.

Finally, Gulf Stream's contends that Mr. Ritter should be struck because he relies on raw data of various sorts. Suffice it to say that this is data that experts in Mr. Ritter's field rely on and he has relied on this data. *See* FED. R. EVID. 703. There is not even a remote possibility that the Court has excluded data that can be obtained from a variety of independent sources (e.g. temperature, wind speed, dew points) and measurement and observation (e.g. quality of workmanship, water stains, amount of insulation). Gulf Stream's point on this issue makes little sense and provides further reason why its motion should be denied.

## **CONCLUSION AND PRAYER**

Wherefore, Plaintiff respectfully requests that the Court deny Gulf Stream's Motion.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:    504/522-2304
       Facsimile:    504/528-9973
       gmeunier@gainsben.com

       s/Justin I. Woods
       JUSTIN I. WOODS, #24713
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:    504/522-2304
       Facsimile:    504/528-9973
       jwoods@gainsben.com

       **COURT-APPOINTED PLAINTIFFS'
       STEERING COMMITTEE**
       ANTHONY BUZBEE, Texas # 24001820
       RAUL BENCOMO, #2932
       FRANK D'AMICO, #17519
       MATT MORELAND, #24567
       LINDA NELSON, #9938
       MIKAL WATTS, Texas # 20981820
       ROBERT BECNEL
       DENNIS REICH, Texas # 167396

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                            s/Gerald E. Meunier
                                            GERALD E. MEUNIER, #9471