UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | SECTION: N(5) |
| LITIGATION | * | |
| | * | JUDGE: ENGELHARDT |
| This Document Relates to: *Charlie Age, et al. v.* | * | |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

On July 31, 2009, Defendant, Gulf Stream Coach, Inc. ("Gulf Stream") filed a Motion for Summary Judgment regarding its status as a government contractor. (Rec. Doc. 1410). On August 26, 2009, the Plaintiff filed an Opposition arguing that Gulf Stream was not entitled to government contractor status. (Rec. Doc. 2890). Gulf Stream now appears before this Honorable Court to offer this reply.

The government contractor defense and the corresponding immunity from tort liability are predicated on the satisfaction of a three-part test – the federal government must have approved reasonably precise specifications for a given piece of equipment, the equipment conformed to those specifications, and the supplier of the equipment must warn the federal government about dangers in the use of the equipment that were known to the supplier but not to the government. *See Boyle v. United Tech Corp.*, 487 U.S. 500, 512 (1988). In this case, the Plaintiff seems not to accept this straightforward test. She directs this Honorable Court to other considerations that have no bearing on the government contractor analysis, including the allegation that Gulf Stream presents no evidence that it provided input into the formulation of

trailer specifications; that Gulf Stream had no contract with the United States (through FEMA); and that the government never "accepted" the trailer.[1] Though the Plaintiff wishes to make fact issues out of all these considerations, they simply have no relationship to the government contractor test, and the Court should ignore them in ruling on this Motion.

Additionally, when the Plaintiff does touch upon the relevant concepts, she does not adequately refute Gulf Stream's evidence regarding its status as a government contractor. The first question is whether the government – not the contractor – reasonably approved specifications for a given piece of equipment. The Plaintiff cites the *Kersetter* case from the Fifth Circuit to show that this prong requires proof of a continuous back and forth collaboration between the contractor and the government. *Id.* at 14. However, the Fifth Circuit instituted this rule not to force the contractor to get involved in the development of specifications, but to ensure that **the government** has input on the specifications and reasonably approves them. *See Kersetter v. Pac. Scientific Co.,* 210 F.3d 431, 435 (5th Cir. 2000). As *Kersetter* said, the government has to perform a "substantive review" of the specifications in order to approve them, and a "continuous back and forth between the government and the contractor" is one factor the court must consider in evaluating whether the government engaged in substantive review. *Id.* Thus, the focus in this case on Gulf Stream's input is misplaced; the real focus is FEMA's input. The fact that FEMA actually drafted the specifications conclusively establishes that FEMA approved them. Indeed, one struggles to think of a more conclusive instance of "approval" than actually drafting the specifications. Furthermore, Gulf Stream responds to the Plaintiff's insinuation that the specifications attached to Gulf Stream's Motion are not the applicable

---

[1] (Rec. Doc. 2890, p. 2, 13, 16). Gulf Stream does acknowledge that the specifications call for a FEMA representative to "accept" the units as FEMA property. (Rec. Doc. 2410-4, p. 4). However, the acceptance occurs when FEMA inspects and signs for the unit. *Id.* That is precisely what FEMA did on the Alexanders' trailer, as evidenced by the FEMA Unit Inspection Report. (Rec. Doc. 2410-6).

specification by directing the Court to the very title of the document: "FEMA Model Travel Trailer Procurement Specifications, Dated: August 12, 2004." (Rec. Doc. 2410-4).

With respect to the first prong, the Plaintiff also tries to make an issue out of the fact that the specifications do not address the particular feature of the product claimed to be defective. Again, the Fifth Circuit has held that the specifications need not address the specific defect alleged; the government need only evaluate the design feature in question. *Kersetter*, 210 F.3d at 435. The specifications meet that qualification because they specify that the units must meet the industry standards in all respects. (Rec. Doc. 2410-4, p. 1). The industry standard has always been the installation of a pressed wood product, which of course is the design feature in question. Furthermore, the specifications explicitly preclude the use of optional accessories, so Gulf Stream had no leeway with respect to how these trailers were built. Because these specifications touch upon industry-standard pressed wood products and state that the supplier cannot deviate from that directive, the trailer specifications clearly evaluate the design feature in question.

The second question under the government contractor defense is whether the contractor built the equipment in accordance with the government's specifications. The Plaintiff argues that Gulf Stream has provided no evidence that it built its 2004 travel trailers in conformance with the FEMA specifications. *Id*. at 2, 18—19. Admittedly, Gulf Stream did not cite evidence that explicitly said, "Gulf Stream built each 2004 unit in conformance with the FEMA specifications." However, as the Plaintiff points out, Gulf Stream's responsibility is to show the **absence** of a genuine issue of material fact. *Id*. at 6. That is precisely what Gulf Stream has done in this case. As Gulf Stream noted in its original motion, there is simply no evidence of any problems with the 2004 Gulf Stream travel trailers. (Rec. Doc. 2410-2, p. 10—12). FEMA's own personnel testified that prior to Katrina, there was not a shred of written evidence or

3

documentation that showed problems with formaldehyde. *Id*. In fact, FEMA used 2004 units as replacement units for some EHU occupants who complained about formaldehyde, and those replacement units resolved the complaints. *Id*. Finally, Gulf Stream reviewed nearly 20 years worth of records related to the production of EHUs for FEMA and found zero complaints. *Id*. And perhaps most importantly, the Plaintiff does not rebut this fact with evidence of her own in her Opposition. Therefore, there is no genuine issue of fact with respect to conformance to the specifications.

Finally, the last question is whether the supplier of the equipment adequately warned the federal government about dangers in the use of the equipment that were known to the supplier but not to the government. The contractor satisfies this prong by proving that it knew of no "reasons not known to the Government why the application" of the approved plans and specifications were "unsafe or unreasonable." *In re Katrina Canal Breaches Consol. Litig.*, 2007 WL 4219351, at *5 (E.D. La. Nov. 27, 2007). In this case, the Plaintiff attempts to argue that Gulf Stream knew of formaldehyde for many years, but the government did not know of any problems until 2006. But, as Gulf Stream has said many times before in this motion and in others, it was not aware of any problems <u>in the 2004 units</u>, the type of unit that the Plaintiff occupied. There is no record of any complaint regarding those units. The Plaintiff does nothing to rebut this fact, instead focusing on complaints regarding units that were constructed post-Katrina. The Plaintiff has tried to set up this straw man on several occasions, but it has no application to this motion or to any other issue in this case.

Thus, the evidence shows that Gulf Stream is entitled to the government contractor defense. FEMA reasonably approved specifications for the construction of travel trailers, Gulf Stream complied with these specifications, and Gulf Stream knew of no danger with the 2004

4

units that it failed to communicate to FEMA. Thus, Gulf Stream has immunity from tort liability in this case.

                Respectfully Submitted:

                **DUPLASS, ZWAIN, BOURGEOIS,**
                **PFISTER & WEINSTOCK**

                s/Andrew D. Weinstock
                _____
                **ANDREW D. WEINSTOCK #18495**
                **JOSEPH G. GLASS #25397**
                3838 N. Causeway Boulevard, Suite 2900
                Metairie, Louisiana 70002
                (504) 832-3700
                (504) 837-3119 (FAX)
                andreww@duplass.com
                jglass@duplass.com

                and

                **SCANDURRO & LAYRISSON**
                **Timothy D. Scandurro #18424**
                **Dewey M. Scandurro #23291**
                607 St. Charles Avenue
                New Orleans, LA 70130
                (504) 522-7100
                (504) 529-6199 (FAX)
                tim@scanlayr.com
                dewey@scanlayr.com
                **Counsel for Defendant, Gulf Stream Coach, Inc.**

## **C E R T I F I C A T E**

I hereby certify that on the 28th day of August, 2009, a copy of the foregoing Reply to Plaintiff's Response to Defendant Gulf Stream's Motion for Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

                         s/Andrew D. Weinstock
                         _____
                         ANDREW D. WEINSTOCK #18495
                         andreww@duplass.com