UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N(5)<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO:<br>*Lyndon Wright v. Forest River, Inc., et al.*<br>No. 09-2977 | MAGISTRATE CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM IN FURTHER SUPPORT
OF SHAW ENVIRONMENTAL, INC.'S MOTION FOR
<u>SUMMARY JUDGMENT REGARDING PRESCRIPTION</u>**

**MAY IT PLEASE THE COURT:**

Defendant, Shaw Environmental, Inc. ("Shaw"), submits this Reply Memorandum in Support of its Motion for Summary Judgment Regarding Prescription in order to point out certain errors in Plaintiff's Opposition Memorandum (R. Doc. 2803). It is undisputed that Mr. Wright filed the instant action on March 2, 2009. It is also undisputed that Mr. Wright testified under oath that he began to experience symptoms that he associates with formaldehyde exposure in March/April 2006. The record thus establishes that Plaintiff's claims have prescribed and, although it is his burden to do so, he has failed to come forward with any evidence, or even applicable case law, to show that the prescriptive period was interrupted or suspended.

I.   **Plaintiff's Claims Are Not Saved By *American Pipe* Tolling.**

In his Opposition, Plaintiff asserts a number of theories as to why prescription was interrupted or suspended. Plaintiff first contends that under the doctrine of *American Pipe* tolling, prescription of his claims against Shaw was suspended by the filing of *Hillard, et al. v. United States of America, et al*, 06-cv-2576 on May 18, 2006. Plaintiff's argument, however, fails to recognize that Shaw was **not** named as a defendant in the *Hillard* action. As pointed out in Shaw's Motion for Summary Judgment, there are no reported cases that have extended *American Pipe* to unnamed defendants.

To try to avoid this conclusion, Plaintiff relies solely on the case *Appleton Electric Co. v. Graves Truck Line*.[1] However, the *Appleton* case is completely distinguishable from the instant matter and is strictly limited to its context – a class action suit against a **"defendant class**," pursuant to Fed. R. Civ. P. 23. The *Appleton* Court held that where a class action suit is instituted against "a class of unnamed defendants," pursuant to Rule 23(b)(3), the statute of limitations is tolled as to all putative members of the defendant class.[2] However, the Court recognized that "*American Pipe* ... is **not** dispositive of this case, for the application of the tolling doctrine to a defendant class was not an issue there."[3]

By contrast, the *Hillard* class action did not name a defendant class. Plaintiff incorrectly suggests that adding "Unnamed Mobile Home Vendors to the Federal Emergency Management Agency" as defendants in the second amended complaint in the *Hillard* action somehow equates

---

[1] 635 F.2d 603 (7th Cir. 1980).

[2] *Id.* at 609.

[3] *Id.*

to naming a defendant class. It does not. Even if it did, Shaw, who was responsible for installation and maintenance of some of the travel trailers, would not have fit into the category of "Unnamed Mobile Home Vendors to the Federal Emergency Management Agency."

Plaintiff's sole reliance on this factually inapposite case is telling as it provides further support that there are no reported decisions that have extended *American Pipe's* application to defendants not originally named in the class action. In fact, there are a number of cases that have specifically held that nothing in *American Pipe* suggests that it should be extended to unnamed defendants.[4] Because Shaw was not named as a defendant in the *Hillard* action, Plaintiff cannot benefit from the suspensive effect of *American Pipe*.

### II.    Louisiana Civil Code Article 2324 Does Not Interrupt Prescription of Plaintiff's Claims Against Shaw.

#### A.    Shaw's Status as a Joint Tortfeasor Is Irrelevant for Prescription Purposes.

Plaintiff next attempts to mesh unrelated and disparate federal and state law legal principles to support his argument that the filing of the *Hillard* lawsuit interrupted prescription of his claims against Shaw in the instant matter under the joint tortfeasor doctrine found in La. Civ. Code art. 2324. Specifically, Plaintiff argues that because he was a putative class member of the

---

[4] *See Arneil v. Ramsey,* 550 F.2d 774, 782 n. 10 (2d Cir.1977) (reversed on other grounds) (declining to extend the rule and noting that "nothing in *American Pipe* suggests that the statute be suspended from running in favor of a person not named as a defendant in the class suit.... A different conclusion would not comport with reason."); *Anderson v. Cornejo,* 1999 WL 258501, at *4 (N.D.Ill. Apr. 21, 1999) (concluding that the ***American Pipe* rule does not apply** to parties who were not previously named as defendants in a plaintiff class action unless it is a case involving a class of defendants); *Mott v. R.G. Dickinson & Co.,* 1993 WL 63445, at *5 (D.Kan. Feb. 24, 1993) ("[t]he *American Pipe* case, however, only applies to tolling the complaint for putative class members as to the same defendants. If this legal tolling applied to claims against defendants other than those named in the initial class complaint, it would violate the purpose of the limitations period. The Court has stressed that a class complaint notifies the defendants of substantive claims being brought against them, and therefore, tolling the statute produces no unfair surprise.").

*Hillard* class action and because Shaw is a joint tortfeasor with named defendants in the class action, then Article 2324 serves to interrupt prescription as to his claims against Shaw in the instant matter. Leaving aside the question of whether Shaw really is a joint tortfeasor, this argument fails. Unlike *American Pipe*, Article 2324 does not apply to the claims of every putative class member and/or every conceivable plaintiff. Only the named plaintiffs in *Hillard* can avail themselves of the joint tortfeasor doctrine under this article. Because Mr. Wright did not purport to bring claims in his own name in *Hillard* — or in any other lawsuit prior to the one filed on March 2, 2009 — Article 2324 does not apply. Mr. Wright simply has no way to avoid the effects of his decision to wait until March 2, 2009, to sue Shaw about an emergency housing unit that he occupied in 2006 and for which Shaw's responsibilities ended on June 1, 2006.

### B. Interruption and Suspension <u>Are</u> Different in the Context of *American Pipe*

Plaintiff's argument that there is no distinction between interruption and suspension in the context of *American Pipe* is illogical. The Civil Code makes a clear distinction between them. When prescription is <u>interrupted</u>, the prescriptive period starts over in its entirety upon cessation of the interruption.[5] On the other hand, if a one-year prescriptive period is <u>suspended</u> for any reason, the "clock" merely stops during the suspension and starts again at the cessation of the suspension, so that the obligee has only so much of the one year as was remaining when the suspension began. Only the period of suspension is not counted toward the accrual of prescription.[6]

---

[5] See La. Civ. Code art. 3466.

[6] See La. Civ. Code art. 3472.

Even if *American Pipe* tolled the prescription of claims against Forest River or the United States, that tolling is clearly a <u>suspension</u> of prescription, and not an interruption. Article 2324 of the Civil Code applies only when prescription is interrupted, not when it is merely suspended: "Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors." The distinction between interruption and suspension is both clear and well-known to the redactors of the Civil Code. The prescription of Mr. Wright's claims against Forest River and the United States was not <u>interrupted</u> until March 2, 2009, and by that date his claims against Shaw had already prescribed. Therefore, Article 2324 simply has no application to Plaintiff's claims against Shaw, even if Shaw were shown to be a joint tortfeasor. Plaintiff has provided no authority to suggest otherwise.

      **C.**    **Plaintiff's Argument Regarding Shaw's Status as a Manufacturer Under the LPLA is a Red Herring and Irrelevant to the Issue of Prescription.**

A determination of Shaw's status as a manufacturer is not germane to the prescription issue. Even assuming Shaw would be considered a manufacturer under the LPLA, it is well settled under Louisiana law that a cause of action based under the LPLA is subject to a one year prescriptive period commencing on the "day the injury or damage is sustained.[7] As discussed above, every cause of action asserted against Shaw has prescribed, and neither suspension nor interruption can save these claims.

    **III.**   *Contra Non Valentem* **Does Not Apply.**

Plaintiff argues that the Court should apply *contra non valentem* to excuse his inaction because (1) Mr. Wright's doctor "misdiagnosed" him in 2006 as having "seasonal allergies" and

---

[7] *Bultman v. Danek Medical, Inc.*, 1999 WL 33537321, at *1 (E.D. La. 1999).

5

(2) Mr. Wright did not have information relating to Shaw's alleged role in the manufacturing process. This argument is similarly without merit.

*Contra non valentem* is a jurisprudential exception to the statutory rule of prescription.[8] The doctrine suspends the running of prescription during the period in which the cause of action was not known by or reasonably knowable by the plaintiff.[9] Louisiana courts strictly construe this doctrine and only extend its benefits up to "the time that the plaintiff has actual or constructive knowledge of the tortious act,"[10] which is defined as "the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry."[11] "This sort of knowledge or inquiry which ought to reasonably put plaintiff on notice is sufficient to start the running of prescription."[12]

Even assuming Mr. Wright was misdiagnosed with "seasonal allergies," this does not change the undisputed fact that he associated his alleged symptoms to living in the Trailer when he told his mother in 2006, "I think this trailer is making me sick."[13] This information was not,

---

[8] The doctrine applies in four limited situations: (1) when courts are legally closed; (2) when administrative or contractual restraints delay the plaintiff's actions; (3) when the defendant prevents plaintiff from bringing suit; and (4) when the plaintiff does not know nor reasonably should know of the cause of action. *In re Medical Review Panel Proceeding Vaidyanathan*, 719 So. 2d 604, 607 (La. App. 4th Cir.), *writ denied*, 732 So. 2d 1238 (La. 1998). Here, Plaintiff appears to invoke the fourth factor to excuse his delay in filing suit against Shaw.

[9] *Louisiana Plaque Corp. v. Chevron*, 638 So. 2d 354, 356 (La. App. 4th Cir.), *writ denied*, 644 So.2d 395 (La. 1994).

[10] *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000) (*citing Bergeron v. Pan American Assurance Co.*, 731 So. 2d 1037, 1042 (La. App. 4th Cir. 1999)).

[11] *Id.* (quoting *National Council on Compensation Ins. v. Quixx Temporary Servs., Inc.*, 665 So. 2d 120, 124 (La. App. 4th Cir. 1995)).

[12] *Mistich v. Cordis Manufacturing, Co.*, 607 So. 2d 955 (La. App. 4th Cir. 1992) (citation omitted).

[13] *See* Lyndon Wright Deposition Transcript (attached hereto as Exhibit "A"), pp. 169-71.

as Plaintiff suggests, "mere apprehension that something is wrong," but, rather, was "sufficient to excite attention and prompt further inquiry."[14] Moreover, even if a diagnosis of "seasonal allergies" would, for purposes of prescription, somehow erase Plaintiff's own belief that the Trailer was making him sick in April 2006, it simply is not true that, as Plaintiff argues, he "did not again think that it was the trailer making him sick until much later."[15] To the contrary, Plaintiff admitted to having another conversation with a doctor in 2007, in which he again raised his continuing fear that the Trailer was making him sick, and this time the doctor purportedly confirmed the possibility:

> Q: As we sit here today, have any of the doctors at Uptown Nephrology ever told you that any medical condition that you suffer from is due to exposure to formaldehyde?
>
> A: Due from exposure of formaldehyde? No.
>
> Q: Has any doctor –
>
> A: But I did ask my doctor if it was possible that the trailer was making me sick like I was, and he said it was very possible.
>
> Q: Which doctor did you have that conversation with?
>
> A: I think Crews, Jr.
>
> Q: When did that conversation take place?
>
> A: I can't relate that. That's one of my follow-up visits. I can't pinpoint when it was.
>
> Q: Do you know if it happened in 2006, 2007 or 2008?
>
> A: In '07.
>
> **MR. ALHQUIST**
>
> Q: Is that a guess or to the best of your recollection?

---

[14] *See National Council on Compensation Ins. v. Quixx Temporary Servs., Inc.*, 665 So. 2d 120, 124 (La. App. 4th Cir.1995).

[15] *See* Plaintiff's Opposition, p. 4.

**THE WITNESS**:

A:   To the best of my recollection, it was '07, yes.[16]

Additionally, Plaintiff's neglect or failure to ascertain Shaw's identity does not toll the running of prescription.[17] Plaintiff must exercise reasonable diligence to ascertain the identity of a party injuring him.[18] Once Mr. Wright believed in 2006 that his Trailer was making him sick, he could have begun to identify Shaw as a potential defendant through reasonable diligence. It is unreasonable to suggest that it took him three years to do so. Plaintiff has failed to provide any evidence that he exercised reasonable diligence to ascertain Shaw's identity and thus, the doctrine of *contra non valentum* does not apply in this case. To allow Plaintiff's failure to use reasonable diligence to identify Shaw to toll the running of prescription would be tantamount to allowing Plaintiff to choose when to file suit without regard to the laws of prescription.

### IV.   Plaintiff's Failure To Warn Claim Under the LPLA Has Prescribed.

Lastly, Plaintiff argues that his failure to warn claim has not prescribed because Shaw, as a manufacturer under the LPLA, has a continuing duty to warn of danger. Plaintiff appears to confuse the concept of a continuing duty to warn and a continuing tort capable of interrupting prescription. It is true that a manufacturer has a continuing duty to warn should he later learn or should he have reasonably learned of a dangerous characteristic in his product.[19] However, a

---

[16] *See* Exhibit "A," pp. 224-25. Despite Plaintiff's arguments to the contrary, the 2006 diagnosis did not alter his belief that the Trailer was making him sick. In any event, the 2007 conversation with a doctor still was more than a year before Plaintiff filed suit on March 2, 2009. *Contra non valentem* does not save Mr. Wright's claim from having prescribed.

[17] *Bennett v. General Motors Corp.*, 420 So. 2d 531, 537 (La. App. 2d Cir. 1982).

[18] *Id.* at 538.

[19] La. R.S. 9:2800:57(C).

manufacturer's continuing failure to warn will not interrupt prescription unless it is considered a "continuing tort."

The "continuing tort" doctrine refers only to a tort "where the operating cause of injury is a continuous one and gives rise to successive damages."[20] The court in *GHR Energy Corp. v. Carboline Co.* has already held that "the continuing tort theory of prescription cannot apply to a failure to warn since a failure to warn is not capable of abatement, especially if there is no disclosure. . . .Were courts to find otherwise, prescription would for all practical purposes cease to exist in failure to warn cases – regardless of whether the plaintiff had learned of the danger of the occurrence of the injury."[21] As discussed above, all of Plaintiff's claims (including ones under the LPLA) have prescribed. Even assuming Shaw would be considered a manufacturer under the LPLA with a continuing duty to warn, such an omission would not be considered a "continuing tort" capable of saving Plaintiff's claims from prescribing.

## CONCLUSION

There are no genuine issues of material fact regarding the prescription of Lyndon Wright's claims against Shaw. Accordingly, Shaw respectfully urges the Court to enter summary judgment dismissing those claims.

---

[20] *Miller v. Conagra, Inc.*, 991 So. 2d 445, 456 (La. 2008), citing *Crump v. Sabine River Authority*, 737 So. 2d 720, 726 (La. 1999).

[21] 744 F. Supp. 1405, 1407 (E.D. La. 1990).

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

_____s/M. David Kurtz_____
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**ATTORNEYS FOR DEFENDANT,
SHAW ENVIRONMENTAL, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.

_____s/M. David Kurtz_____
M. DAVID KURTZ