UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL NO. 1873 |
| | SECTION N(5) |
| | JUDGE ENGELHARDT |
| | MAGISTRATE CHASEZ |

THIS DOCUMENT RELATES TO:
Anthony Bartel v. Gulf Stream Coach, Inc, et al, and
Leslie Kujawa, et al v. Keystone RV Company and Bechtel National, Inc.

............................................................

### REPLY TO PLAINTIFFS' OPPOSITION TO BECHTEL NATIONAL, INC.'S RULE 12(b)(6) MOTION TO DISMISS

In their Opposition to Bechtel National Inc.'s Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 2894) to which this Reply applies, Plaintiffs have now abandoned their prior conclusory allegations and assert a new theory that their damages resulted from Bechtel negligently deciding how to raise or jack up onto blocks the Government-provided emergency housing. Plaintiffs, however, plead facts that show less then a sheer possibility of merit to their claims. As such, Plaintiffs' claims must be dismissed. Moreover, the government contractor defense applies to bar any claim based on Bechtel's installation work. Plaintiffs' arguments to the contrary confuse the case law and misapply it to the facts and public record. Thus, the Court should grant Bechtel's motion under Rule 12(b)(6) (Rec. Doc. 2796) and hold that the government contractor defense bars Plaintiffs' claims entirely.

**I.      PLAINTIFFS' CLAIMS CANNOT SURVIVE THIS RULE 12(b)(6) MOTION.**

Bechtel satisfied its burden for showing Plaintiffs cannot "state a claim upon which relief can be granted" by establishing the government contractor defense. *In re Katrina Canal Breaches Consol. Litig.*, 2007 WL 763742 (E.D. La. Mar. 9, 2007). To avoid dismissal, Plaintiffs had to plead facts that state a plausible claim for relief, *Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1949-50 (2009), meaning facts that controvert Bechtel's affirmative showing of the government contractor defense. *Id.*; *Jones v. Bock*, 549 U.S. 199, 215 (2007). Showing a "sheer possibility" of merit falls "short of the line" for surviving a Rule 12(b)(6) motion. *Iqbal*, 129 S. Ct. at 1949-50. Plaintiffs fail to meet that test because they have not plead any facts to support their prior allegations. *Iqbal*, 129 S. Ct. at 1950. Plaintiffs repeat their prior legal conclusions but "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1949-50. As such, Plaintiffs' claims must be dismissed.

Likewise, although Plaintiffs adopt the facts from their other pleadings, *see* Plaintiffs' Opposition to Bechtel National Inc.'s Rule 12(b)(6) Motion To Dismiss, Rec. Doc. 2894, at 2 ("Pls.' Opp."), those facts show less than a sheer possibility that Bechtel's work "could have caused" Plaintiffs' damages. When pressed to explain Plaintiffs' new theory, *see* Ex. D to Pls.' Resp., Rec. Doc. 2889-6, at 5, lines 1-9, Plaintiffs' affiant admitted that "*based on what I was told* about how [a travel trailer] was jacked up," meaning based on hearsay, "the weight of the building was taken off of the wheels, and *that certainly could have caused that condition*," *id*. at 312:1-9. Public documents, however, expose Plaintiffs' new theory as utterly implausible.

The record, for example, shows "OSHA initiated testing of new, unused trailers at staging and storage facilities in October 2005 . . ." at Bechtel's request and that "*[t]he results of that test showed the new, unoccupied units, had high levels of formaldehyde.*" Ex. 5 to Bechtel's Mot., Rec. Doc. 2796-8, at p.26 (citing Rec. Doc. 2796-9, at ¶¶ 9-12) (emphasis added) ("Ex. 5"). That means formaldehyde existed in the emergency housing well before any installation work ever began (including "jacking") and Plaintiffs' facts still fail to connect Bechtel's work with Plaintiffs' damages. As such, each Plaintiffs' "complaint has alleged – but it has not shown – that" Plaintiffs are entitled to relief. *Iqbal*, 129 S. Ct. at 1949-50 (citing Fed. R. Civ. P. Rule 8).

## II.  PLAINTIFFS MISAPPREHEND THE DEFENSE'S FIRST CONDITION.

Plaintiffs concede the Government approved "blocking" specifications and that the Government inspected Bechtel's work "to ensure that the units were up on blocks," Pls.' Opp. at 18-20, but Plaintiffs claim the government contractor "defense requires the government to provide *precise specifications leaving no discretion to the contractor.*" *Id*. at 15 (emphasis added). Plaintiffs allege that Bechtel decided how to raise or jack up the emergency housing onto blocks. *Id*. at 15. Plaintiffs contend that since "different methods" could have been used to raise travel trailers in the course of blocking those trailers, and because the Government approved specifications never prospectively limited Bechtel's use of those methods, "Bechtel could comply with both its contractual obligations to the government and the state-prescribed duty of care." *Id*. at 12-13. The Court must reject Plaintiffs' invitation to reinterpret *Boyle*.

*Boyle's* defense requires *reasonably precise* rather than *absolutely precise* specifications. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 511-12 (1988). Courts soundly reject Plaintiffs' flawed reinterpretation. In *Stout v. Borg-Warner Corp.*, for example, the plaintiff argued that since the approved specifications would not have prevented the contractor from taking an extra step that might have been safer, the defense could not apply. 933 F.2d 331, 334 (5th Cir. 1991). The Fifth Circuit rejected that argument. *Id*. at 336. The court held the Government approved reasonably precise specifications even though the plans did not preclude the contractor from taking the additional steps the plaintiff claimed the specifications should have included. *Id*.

Similarly, in *Kerstetter v. Pac. Sci. Co.*, the plaintiffs argued that the defense should not apply because the contractor could have developed a safer way to perform the challenged work "without violating any specification." 210 F.3d 431, 437 (5th Cir. 2000). The Fifth Circuit rejected that outright, holding plaintiffs' "argument focuses on an incorrect standard which is whether the government approved a specification that did not contain a safer design." *Id*. Even

3

if the specifications do "not address the specific defect," the court held the specifications must be regarded as reasonably precise if they address the "feature in question." *Id*. at 438.

Thus, the Court must reject Plaintiffs' invitation to hold that *Boyle* requires *precise* rather than *reasonably precise* specifications. The contractor satisfies the defense's first condition if the approved specifications address the challenged feature.[1] *Kerstetter*, 210 F.3d at 438; *Tate v. Boeing Helicopters*, 140 F.3d 654, 658 (6th Cir. 1998) ("when the government has reviewed and approved a design, we presume that it has weighed and accepted all the risks associated with that design choice"); *Kerstetter v. Pac. Sci. Co.*, 1999 U.S. Dist. LEXIS 22536, *50 (S.D. Tex., May 26, 1999) ("The fact that the Navy did not fully appreciate the risks latent in the designs of the features it approved does not mean that the Navy did not approve the designs.").

Since Plaintiffs now question only Bechtel's installation work, Bechtel meets its burden by showing the defense's conditions for that feature of work. *Kerstetter*, 210 F.2d at 435-36.

### III. BECHTEL ESTABLISHED THE DEFENSE'S FIRST CONDITION.

As Bechtel showed in its Memorandum, the Government approved reasonably precise specifications for Bechtel's installation work. Memorandum in Support of Bechtel National, Inc.'s Rule 12(b)(6) Motion to Dismiss, Rec. Doc. 2796-3, at 9-13, 16-18 ("Mem."). Those specifications, any adjustments that resulted from the Government inspections that Plaintiffs concede took place, and the Government's decision to continue using Bechtel's work shows the Government approved reasonably precise specifications for Bechtel's installation work. *Kerstetter*, 210 F.3d at 435-36, 438 n.8; *In re Air Disaster*, 81 F.3d at 575; *see also In re Agent*

---

[1] The authority Plaintiffs quote at length, *Trevino v. General Dynamics Corp.*, applies only "[i]f the government delegates the design discretion to the contractor." 865 F.2d 1474, 1480 (5th Cir. 1989). *Trevino* does not apply here. Although the Government could have changed Bechtel's scope of work, Mem. at 6, 8-9, and the Government controlled Bechtel's work with inspections that Plaintiffs concede took place, Pls.' Opp. at 19-20, the Government never tasked Bechtel with *designing* anything. Plaintiffs plead no facts nor point to any Task Order that even remotely suggests otherwise. *Iqbal*, 129 S. Ct. at 1950. Regardless, unlike *Trevino's* "rubber stamp" and minimal governmental involvement, here the Government actively inspected and supervised Bechtel's work. Mem. at 11-12.

4

*Orange*, 517 F.3d 76, 96 (2d Cir. 2008) (holding that use of the contractor's work with knowledge of any potential risks associated with that work establishes the first condition).

Plaintiffs' own pleadings, however, make that point indisputable. Plaintiffs concede that Exhibit Seven contained the Government approved instructions for "blocking" emergency housing. Pls.' Opp. at 18. Plaintiffs concede further that: "'blocking' . . . meant raising the Plaintiffs' travel trailer several feet into the air and off of its wheel base, and setting it on concrete blocks." Ex. 1 to Bechtel's Mot., Rec. Doc. 2796-4, at ¶ 39 ("Ex. 1"); Ex. 2 to Bechtel's Mot., Rec. Doc. 2796-5, at ¶ 33 ("Ex. 2"). Plaintiffs' definition for blocking must be read in conjunction with Plaintiffs' admission that the Government approved blocking specifications. *C.f. Hall v. GE Plastic Pac. PTE, Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (plaintiffs may not assert conflicting positions for their own advantage). Thus, from Plaintiffs' own pleadings the Court must conclude that the Government approved reasonably precise specifications for the very same work that Plaintiffs complain of, namely raising travel trailers several feet into the air, off of the wheel base, and onto concrete blocks.

Moreover, Exhibit Seven's text shows the Government approved specifications that addressed, in reasonable detail, the task of raising the emergency housing onto blocks. Exhibit Seven instructed that: "Travel trailers shall be set-up on concrete piers"; "the weigh [sic] of the travel trailer is transferred to the piers"; "[a]fter the weight of the travel trailer is transferred to the concrete piers, the piers must be vertically aligned." Ex. 4 to Bechtel's Mot., Rec. Doc. 2796-7, at 58-59 (BNIF 00000383-384). Plaintiffs claim vehemently that the Government should have approved different specifications with more detail or additional steps. Pls.' Opp. at 12. Plaintiffs, however, cannot claim that the approved specifications did not address blocking, i.e., raising Plaintiffs' travel trailer into the air, shifting its weight off of its wheel base, and

setting it on concrete blocks. Since blocking is the very same work that Plaintiffs complain of, and because the Government inspected Bechtel's work "to ensure that the units were up on blocks," Pls.' Opp. at 18-20, the Court must regard the approved specifications as reasonably precise. *Kerstetter*, 210 F.3d at 438; *Stout*, 933 F.2d at 336.

The Court must reject Plaintiffs' fundamental contention that the defense may apply only if the Government provided more detailed or precise specifications. Plaintiffs' argument "*is contrary to the case law.*" *Kerstetter*, 210 F.3d at 436-37 (emphasis in original). Carried to its logical end, Plaintiffs' argument invites the Court to subject every federal contracting decision to judicial review. The Court must decline that invitation.[2] Plaintiffs simply may not thwart the defense by citing additional steps that they say the Government should have made its contractor perform. *See Kerstetter*, 210 F.3d at 436 (rejecting the plaintiff's "should have" argument); *Stout*, 933 F.2d at 334-36 (same); *see also Boyle*, 487 U.S. at 511 (holding "permitting 'second-guessing' of" contract specifications "through state tort suits against contractors would produce the same effect sought to be avoided by the FTCA exemption").

Here, although the specifications do not use the word "jacking" – "the specific defect" Plaintiffs allege – the specifications do address (and the Government inspected) the blocking and leveling of emergency housing – the "feature in question." Thus, the approved specifications addressed the conduct Plaintiffs complain of and Bechtel satisfies the defense's first condition.

## IV. <u>BECHTEL ESTABLISHED THE SECOND CONDITION.</u>

Plaintiffs tempt the Court into launching a phantom inquiry into whether Bechtel's work could have conformed to "jacking" specifications the Government never approved. Pls.' Opp. at

---

[2] *See, e.g.*, *Baldasarro v. United States*, 64 F.3d 206, 211 (5th Cir. 1995) ("We venture that almost any exercise of governmental discretion could be overly parsed so as to focus on minute details of sub-decisions to the point that any relationship to policy would appear too attenuated. But doing that obscures the very purpose of the discretionary function exception. Clearly, that purpose is to prevent judicial 'second guessing' of decisions arising from and grounded in policy." (citing *United States v. Gaubert*, 499 U.S. 315, 323 (1991)).

6

19.  Plaintiffs claim Bechtel may not establish the defense's second condition if "how to raise the units was within Bechtel's own discretion." Pls.' Opp. at 19.  The court should not be led astray.  When evaluating the second condition, the Court must determine whether Plaintiffs' claims arise from alleged "nonconformity with government specifications" or instead attack an alleged "defect in the government specifications" themselves.  *See Kerrstetter*, 210 F.3d at 435-36.

Here, Plaintiffs attack a perceived defect in the approved specifications, namely that "[t]he contract is totally silent with regard to how the unit is to be raised or jacked up." Pls.' Opp. at 17.  Plaintiffs' basic argument, that the approved specifications did not limit Bechtel enough, "*is contrary to the case law.*"  *Kerstetter*, 210 F.3d at 436 (emphasis in original).  Plaintiffs may not refute Bechtel's evidence for the defense's second condition by alleging that Bechtel failed to take steps the Government never tasked Bechtel with performing.  *See id*. at 435-36.  The defense offers the strongest protection when the claims against the contractor stem from "defects in the government specifications," *In re Katrina Canal Breaches Litig.*, 2008 WL 5234369, *18, since that would mean "the government has directed a contractor to do the very thing that is the subject of the claim," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 n.6 (2001).

Plaintiffs' remaining arguments for the second condition also fail.  To survive Bechtel's motion to dismiss, Plaintiffs had to do more than plead "Bechtel failed to properly comply with the remaining specifications with regard to blocking and leveling." Pls.' Opp. at 14; *Iqbal*, 129 S. Ct. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Plaintiffs' burden became particularly acute after Bechtel showed its work conformed to the approved specifications because the Government inspected, accepted, and used that work extensively.  *See* Mem. at 20-22.  Plaintiffs had to plead enough facts to let the Court infer that what Plaintiffs now allege caused their injuries—the

7

raising of the emergency housing onto blocks—"resulted from" Bechtel's *departure from* rather than *adherence to* the Government approved specifications. *Kerstetter*, 210 F.3d at 435-36.

Plaintiffs failed to make any such showing. Instead, Plaintiffs attacked the capacity of the Government's inspectors to find defects latent in the approved specifications. Pls.' Opp. at 19-20. Plaintiffs' alleged fact, that the Government inspectors failed to detect a defect latent in the approved specifications, cannot "permit the court to infer" any liability on Bechtel's part. *Iqbal*, 129 S. Ct. at 1949-50. At best, that shows Plaintiffs' suit rests on "defects in the government specifications." *See In re Katrina Canal Breaches Litig.*, 2008 WL 5234369, *18 (E.D. La. Dec. 15, 2008). Thus, Bechtel satisfied the defense's second condition.

## V.    BECHTEL ESTABLISHED THE THIRD CONDITION

Bechtel satisfied the defense's third condition because Bechtel showed it warned the Government of dangers associated with Bechtel's work about which Bechtel had actual knowledge, *see* Mem. at 23, and because Bechtel showed that the Government's knowledge of the risks associated with Bechtel's work equaled or exceeded Bechtel's knowledge, *see id*. Plaintiffs cannot rightly contest this showing since they actually alleged in their complaints that the Government knew of the potential formaldehyde risk. Ex. 1 at ¶¶ 57-66; Ex. 2 at ¶¶ 48-57.

Plaintiffs, however, concede only that Bechtel warned part of the Government, OSHA, while pretending the rest of the Government, FEMA, never knew. Pls.' Opp. at 20. Plaintiffs cite no authority for their novel distinction. Indeed, the Fifth Circuit rejected a similar argument in a government contractor defense case. *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 423 (5th Cir. 2001) (in spite "of the complex nature of the United States Government, knowledge on the part of employees within various agencies, particularly at the lower echelons . . . can be attributed to the Executive"). The public record also rebuts Plaintiffs' contention. "On October 11, 2005, in response to a request from Bechtel, Inc., OSHA tested . . . for formaldehyde . . .

8

*These results were reported to local FEMA personnel and other emergency responders at regularly held meetings*." Ex. 5 at 26 (citing Rec. Doc. 2796-9, at ¶¶ 9-12) (emphasis added). Thus, just as Plaintiffs alleged in their complaints, the Government knew of the potential formaldehyde risk.

Plaintiffs' remaining argument for the third condition – that "FEMA was not present when the units were raised" or that Bechtel had "knowledge of the structure damage done to the units by raising them" – is wholly conclusory. Plaintiffs offer no facts to support their allegation. Plaintiffs cannot refute Bechtel's affirmative showing for the third condition "armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950. Regardless, "the defense applies even when the contractor did not warn the government of latent defects—in other words, defects that neither the contractor nor the government considered at all." *Kerstetter*, 210 F.3d at 436.

## VI.  THE ATTACHED EXHIBITS FALL WITHIN THE PLEADINGS.

This Court may properly consider the exhibits attached to Bechtel's motion under Rule 12(b) rather than Rule 56. The Court may regard exhibits attached to a motion to dismiss as part of the pleadings when plaintiffs refer to and make those items central to plaintiffs' claims. *In re Katrina Canal Breaches Lit.*, 495 F.3d 191, 205 (5th Cir. 2007); *Harrison v. Safeco Ins. Co. of America*, 2007 WL 1244268, at *4 (E.D. La. Jan. 26, 2007). Since Plaintiffs' complaints cited the Umbrella Contract to level a host of allegations, Ex. 1 at ¶¶ 32, 35-36; Ex. 2 at ¶¶ 27, 29-30, 32, Plaintiffs cannot keep the Umbrella Contract from the Court, *Harrison*, 2007 WL 1244268, at *4. Plaintiffs' Inspection Packages may also be considered part of the pleadings since Plaintiffs alleged that Bechtel "failed to adequately inspect" the emergency housing. Ex. 1 at ¶ 45; Ex. 2 at ¶ 38. Plaintiffs' Inspection Packages directly contradict Plaintiffs' allegations. *See* Mem. at 11-12, 20-22. These documents merely assist Plaintiffs "in establishing the basis of the

9

suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

Finally, orders from and pleadings to this court, Bechtel's remaining exhibits, cannot fall outside the pleadings. *Nix v. Fulton Lodge No. 2*, 452 F.2d 794, 797-98 (5th Cir. 1971) ("By no stretch of the imagination" will opinions "constitute matters outside the pleadings."); *Xavier v. Belfor USA Group, Inc.*, 2007 WL 4224320, *2 (E.D. La. Nov. 26, 2007) (court pleadings are matters of public record and may be judicially noticed); *Nabors Drilling U.S.A. L.P. v. Twister Exploration, L.L.C.*, 2002 WL 287728, *1 (E.D. La. Feb. 26, 2002) ("[T]he court may take into account matters of public record, orders, [and] items appearing on the record in the case.").

## VII.   CONCLUSION

Plaintiffs failed to meet their burden under *Iqbal* or refute Bechtel's showing that the government contractor defense bars entirely all of Plaintiffs' claims. The Court should grant Bechtel's motion and dismiss all of Plaintiffs' claims with prejudice.

> Respectfully submitted,
> **FRILOT, L.L.C.**
>
> /s/      John J. Hainkel, III
> JOHN J. HAINKEL, III - La. Bar No. 18246
> A. J. KROUSE - La. Bar No. 14426
> DAVID P. CURTIS - La. Bar No. 30880 (Ms. Bar - 102092) CAROLYN B. HENNESY - La. Bar No. 25089
> PETER R. TAFARO - La. Bar No. 28776;
> 3700 Energy Centre, 1100 Poydras Street
> New Orleans, Louisiana 70163
> Tel: 504-599-8000; Fax: 504-599-8100
> Attorneys for Bechtel National, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was filed electronically using the CM/ECF system. Notice of this filing will be forwarded to all known counsel by operation of the court's electronic filing system. I also certify that I have emailed a copy of this filing to any non-CM/ECF participants on this the 31st day of August, 2009.

/s/      John J. Hainkel, III
JOHN J. HAINKEL, III