UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | * | |
| *Inc., et al*, Docket No. 09-2892; | * | |
| Alana Alexander, individually and on behalf | * | |
| Of Christopher Cooper | * | |

**PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM COACH, INC.'S
MOTION *IN LIMINE* TO EXCLUDE
EXPERT TESTIMONY OF PAUL HEWETT, PH.D.**

Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper, files this response to Defendant Gulf Stream Coach, Inc.'s Motion *in Limine* to Exclude Expert Testimony of Paul Hewett, Ph.D. (Doc. No. 2792).

**I.
EXHIBITS**

Exhibit A.           CV of Paul Hewett, Ph.D.

Exhibit B.           Affidavit of Paul Hewett, Ph.D.

Exhibit C.           Excerpts from the deposition of Paul Hewett, Ph.D.

1

## II.
## **BACKGROUND**

Paul Hewett Ph.D. holds a doctorate degree in industrial hygiene. *See* Exhibit A, p. 1. He worked for NIOSH for twenty-five years. *See* Exhibit A, p. 1; Exhibit C, pp. 139-40. He is currently CEO of Exposure Assessment Solutions, Inc., a firm engaging in consulting, training, software design and sales, and publications related to industrial hygiene. *See* Exhibit A, p. 1. He has published extensively in peer-reviewed journals. *See* Exhibit A, p. 2-4.

Dr. Hewett performed a statistical analysis of the dataset of formaldehyde measurements from the Gulf Stream Coach FEMA trailers. *See* Exhibit A, p. 1. The data, consisting of 1,191 separate exposure measurements, was the results of formaldehyde testing conducted on FEMA trailers by various entities. The testing entities for which the data is publicly available include the Sierra Club, the Centers for Disease Control (CDC), and the Texas Parks & Wildlife Department. The remainder of data came from the testing performed by four different firms hired by the Plaintiff Steering Committee, and has been produced in full to Defendants. *See* Exhibit B, p. 1. Dr. Hewett analyzed the data to demonstrate the following:

- How the exposure levels in the trailers compared to the ATSDR and NIOSH exposure standards;

- The relationship between exposure levels and seasonal temperature changes;

- The relationship between exposure levels and the age of the trailers; and

- The most likely exposure level in the Plaintiffs' trailer on the date they moved in.

*See* Exhibit B, p. 1.

Dr. Hewett's assignment was to make sense for the jury of over one thousand data entries by importing them into a computer program capable of sorting them in response to queries, and depicting the results graphically. His report explains the graphic results obtained.

## III.
## ARGUMENT AND AUTHORITIES

1. <u>The standard for admission of expert testimony is a liberal one.</u>

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise." F.R.C.P. 702. Expert testimony need only be based on a reliable and scientifically valid methodology that fits the facts of a case. *See* <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 592-93 (1993). The inquiry into the expert's testimony must be flexible. *See* <u>Id.</u> at 594 & n. 12. The factors listed by *Daubert* and its progeny serve as useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted. <u>Heller v. Shaw</u>, 167 F.3d 146, 152 (3d Cir. 1999). The court's role as gatekeeper, however, should not replace the adversary system. <u>Pipitone v. Biomatrix, Inc.</u>, 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 595.

2. <u>Since validation of the data was outside the scope of Dr. Hewett's assignment, the lack of validation does not render his report unreliable.</u>

Defendant is not challenging the validity of the data Dr. Hewett loaded into his computer software. The only challenge raised is that he did not verify the 1,191 separate entries before running his computer analysis. Validation of the data, however, was not warranted considering

3

Dr. Hewett's role in the litigation. The methodology which Dr. Hewett actually employed, which was appropriate to accomplish his goals, was therefore entirely valid, reliable, and admissible. His report therefore, is admissible. *See* Daubert, 509 U.S. at 592-93. (Finding reliability where the expert's methodology is scientifically valid and can properly be applied to the facts of the case.)

Dr. Hewett's assignment was to perform a statistical analysis on the dataset of formaldehyde measurements from the Gulf Stream Coach FEMA trailers. *See* Exhibit A, p. 1. The dataset represented the totality of the testing performed on the trailers. *See* Exhibit B, p.1. By importing the data from the Excel spreadsheet containing the dataset of test results into another software program with advanced capabilities, Dr. Hewett was able to design queries to answer specific questions and to depict the results in the form of graphs. *See* Exhibit C, pp. 164-65.

Defendant cites several cases, none of which support its innuendo of unreliability due to his use of data given him by the Plaintiff Steering Committee ("PSC"). The expert testimony in *Munoz v. Orr* exhibited numerous obvious instances of unreliability other than the use of data collected by the plaintiff. *See* 200 F.3d 291, 301-02 (5th Cir. 2000). The *Munoz* expert had rounded off numbers, committed calculation errors to the extent that totals did not add up to 100%, failed to consider alternate explanatory variables, and used a methodology not recognized by experts in his field, in addition to using plaintiff's own data. *See* Id. Defendant fails to identify any such obvious errors in Dr. Hewett's report. Additionally, although Dr. Hewett's data was physically given to him by the PSC, it had been collected by seven different entities, three of which were either governmental or non-profit, thus insuring lack of bias. *Munoz* thus presents no impediment to Dr. Hewett's admissibility. *See* Id.

4

In *Christophersen v. Allied-Signal Corp.,* the doctor testifying on causation had relied on the affidavit of the plaintiff's co-worker for virtually all of his exposure data. *See* 939 F.2d 1106, 1113 (5th Cir. 1991) *overruled on other grounds.* The district court had found the affidavit to be factually defective, and the co-worker had testified in deposition that he had no knowledge of the chemical composition of the fumes to which the plaintiff had been exposed. *See* Id. The *Christophersen* Court mentioned common-sense skepticism only in relation to subjective information obtained from counsel in preparation for trial. Id. at 1111. Dr. Hewett's data, however, represented actual test results, which in no way could be considered subjective information. Additionally, the data collected by the Sierra Club, the CDC, and the Texas Wildlife Department was not collected in anticipation of litigation. *Christophersen,* therefore is completely distinguishable from the facts concerning Dr. Hewett's testimony.

Defendant totally misconstrued Sheats v. Bowen, 318 F.Supp. 640 D.Del. 1970). The plaintiff's expert in this pre-*Daubert* case had testified at a trial that resulted in a plaintiff's verdict. The defendant challenged the reliability of the expert's testimony in a motion for new trial and remitter. After thoroughly reviewing the expert's testimony, the court denied the defendant's motion, noting that the defendants had failed to produce their own expert witnesses to attempt to refute, contradict, or clarity the plaintiff's expert's testimony. Id. at 645. *Sheats*, therefore, can only support the admission of Dr. Hewett's testimony. *See* Pipitone v. Biomatrix, Inc., 288 F.3d 239, 250 (5th Cir. 2002).

Dr. Hewett was asked to analyze the specific data he was given. All of the data given to Dr. Hewett has been made available to Defendants. Defendant's could have contested the data itself in its motion *in limine*, but did not. Instead, Defendant would require a step for Dr. Hewett's methodology that was clearly outside the scope of his assigned project. None of the

5

case Defendant cited cast doubt on Dr. Hewett's testimony.  Because Dr. Hewett's methodology was scientifically valid and was able to accomplish the goals of his assignment, his report is admissible. *See* Daubert, 509 U.S. at 592-93.

3. <u>Dr. Hewett's testimony should be admitted because his basic methodology is uncontested, and his testimony would aid the trier of fact.</u>

During his long career as an industrial hygienist with NIOSH, Dr. Hewett has performed many analyses on exposure data. *See* Exhibit C, pp. 109-110.  The company of which he is CEO, in fact, is named Exposure Assessment Solutions, Inc. *See* Exhibit A, p. 1.  Dr. Hewett has published numerous articles on analyzing and assessing exposure data. *See* Exhibit A., pp. 3-4. He is entirely familiar with evaluations of retrospective exposure such as is presented in this case. *See* Exhibit C. pp. 115-16.  His use of software programs included not only one available in the public domain, but also one he himself developed, is experienced in using, and offers for sale. *See* Exhibit C, pp. 164-69.  He has thus used the same methodology in the same manner as he does in his own practice as an expert industrial hygienist.  His testimony is therefore reliable. *See* Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999) (Founding reliability where the expert employs the same methodology with the same intellectual rigor as an expert in the relevant field.)

Defendant spends the bulk of its motion contesting four highly technical details of Dr. Hewett's methodology with which it disagrees.  Defendant, however, does not contest the methodology itself; there is no contention that graphically depicting the exposure data is inherently inappropriate, that the computer programs Dr. Hewett selected could not adequately do the job, or that Dr. Hewett ran the program incorrectly.  "The grounds for the expert's opinion merely have to be good, they do not have to be perfect." In re Paoli R.R. Yard PCB Litigation,

6

35 F.3d 717, 744 (3rd Cir. 1994).  Because the hallmark of admissibility of expert testimony is helpfulness to the jury, an expert's testimony should be admitted even where the court finds his technique has flaws sufficient to render the conclusions inaccurate. *See* <u>Id.</u> at 744-45.  Whether Defendant is correct or not concerning its perceived flaws in Dr. Hewett's technique can should be addressed by cross-examination or the testimony of a rebuttal expert. *See* <u>Daubert</u>, 509 U.S. at 595.  Defendant's motion *in limine* should therefore be denied. *See* <u>Id.</u>

## IV.
## CONCLUSION

Dr. Hewett is a well-credentialed and experienced industrial hygienist with a long history of performing exposure analyses.  He ran a computer program to graphically depict over one thousand individual formaldehyde testing results from the Gulf Stream Coach units.  The testing was performed by three governmental or non-profit organizations, as well as several of Plaintiffs' experts.  Dr. Hewett utilized two computer programs:  one was available in the public domain, and the second had been authored by Dr. Hewett himself and is available for sale.  Defendant has raised no valid objections to Dr. Hewett's methodology.  Certainly, the value to the jury of graphs summarizing over a thousand test results is clearly apparent.  Dr. Hewett's testimony should therefore be admitted in full.

## V.
## PRAYER

For the reasons stated in this Response, Plaintiff respectfully requests that the Court deny Defendant's Motion *in limine*.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY: s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
ROBERT BECNEL
DENNIS REICH, Texas # 16739600

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471