UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE<br>PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-5"<br><br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO:
*Charlie Age, et al v. Gulf Stream Coach,*
*Inc., et al, No. 09-2892*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
GULF STREAM'S MOTION IN LIMINE TO PROHIBIT
REFERENCE TO, OR INTRODUCTION OF, SUBSEQUENTLY
PASSED AMBIENT AIR STANDARDS (DOC. 2887)**

**MAY IT PLEASE THE COURT:**

Despite the title of this motion, which appears to limit itself to only "subsequently passed" standards, the memorandum in support sets forth a broader request, namely, that the Court prohibit reference to certain "pre-existing air standards, levels or guidelines regarding formaldehyde," as well as reference to guidelines in place "after December 2004 and/or after the alleged exposures in this case...."

Whether stated narrowly or more broadly, however, the order sought by this defendant manufacturer in advance of a bellwether trial is nothing short of remarkable, given that the plaintiff Alana Alexander's burden of proof is to establish that defendant's product was unreasonably dangerous based on a harmful level or amount of ambient, off-gassed formaldehyde. In order to carry such a burden, plaintiff must refer the jury to what science has discovered about the ambient levels of formaldehyde gas which may prove injurious to those

who inhale it.  This scientific knowledge typically is reflected in maximum, safe or permissible levels of ambient formaldehyde published as standards by different agencies, expressed in parts per million (ppm).  Gulf Stream's motion would prevent the jury from knowing such values, and thus relegate all expert testimony at trial to opinions about formaldehyde safety which would have no reference points in standards which have been established through independent, scientific sources.  There is simply no justification for such an outright ban on potentially-helpful information.

At its heart, this is a motion that addresses not admissibility, but rather the weight of evidence.  Gulf Stream and plaintiff are entitled to submit, and will submit, competing expert testimony at trial about what does, and does not, constitute a "safe" level of formaldehyde exposure in this case.  The jury should hear and weigh this competing testimony.  In this endeavor, attention may be drawn to well-established ambient air levels of formaldehyde, because a given expert may consider the reference either supportive or not supportive of the claims of harm in this matter.  The reference to a given standard is relevant either way; and the credibility of these comparisons and references to published health and risk values, must remain the province of the jury.

As an example, Dr. De Rosa's deposition (trial) testimony addresses at some length why and how the MRLs (minimum risk levels) published by the ATSDR regarding formaldehyde <u>are</u> a meaningful health guidance value in assessing the risk of formaldehyde exposure for FEMA trailer occupants.  Other plaintiff expert testimony will be in accord with this view.  Defendant experts, on the other hand, will suggest that these MRL's are not valid references to determine the health effects of formaldehyde exposure.  But Dr. De Rosa also testifies in his deposition that

sole reliance on a given standard is problematic, given that reference to multiple and different standards can lead to a "tyranny of numbers." He suggests that various standards and levels be considered in the context of the <u>duration</u> of one's exposure, before any conclusion is based on just a single ppm number or value associated with ambient air level standards. *See* Trial excerpts from depo. of Dr. De Rosa, at 182-83. This provides appropriate context for any references that might be made to different standards as being applicable to the plaintiff's exposure. No one level or standard is dispositive, but those that are relevant should be considered.

Gulf Stream's reliance on this Court's decision concerning the admissibility of a polygraph test (*Martin v. Nabors Offshore*) is hardly on point. The results of tests from a controversial technology (the polygraph) cannot be compared in terms of evidentiary value to promulgated government standards of formaldehyde levels and associated exposure risks. On the one hand, a debatable technique or technology results in a specific test result, which then is offered as uniquely applicable to the case that plaintiff; in the other instance, reference to published standards is offered in the context of an overall discussion as to when and under what circumstances formaldehyde may be considered injurious. The standards, in other words, are not "pass-fail" test results, but values for the jury to consider in determining whether the level of exposure in the travel trailer occupied by plaintiff and her son was injurious. The purposes of these evidentiary offers, a plaintiff-specific test result versus published values as reference, are fundamentally different.

Defendant-movant's reliance on the Fifth Circuit decision in *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998) also is misplaced. This was, it is true, an important post-

*Daubert* decision in the Fifth Circuit.[1] But the issue in *Moore* involved a plaintiff expert (Dr. Jenkins) who sought to offer specific causation testimony without any reference to or reliance upon quantified levels or standards of exposure. The defendant challenged any such attempt to casually relate a toxic chemical to an injury without at least some information or consideration of the level or dose of the chemical involved. The Court agreed, and held that the expert testimony failed to pass *Daubert* muster.

But the methodology of dispensing with dose quantification in a toxic tort case is decidedly <u>not</u> the approach being taken herein, as evidenced by plaintiff's very effort to discuss both the ppm level that has been measured in her unit, <u>and</u> ppm standards promulgated by agencies which arguably give meaning to that measured level. In a case such as this, therefore, where no actual level readings were taken prior to the time plaintiff left the unit, the holding in *Moore* would suggest that plaintiff ought do what she can — through experts — to address specific ppm dose levels. This precisely is what plaintiff intends to do, and it will be done in the context of standards expressed in ppm levels which provide points of reference for the jury. Again, the worth ultimately given to that reference or comparison goes to the weight, not admissibility, of the evidence.

For the jury to decide whether or not plaintiff and her family were exposed to an unsafe level of ambient formaldehyde, it therefore should hear testimony from retained experts as well as Dr. De Rosa (a non-retained expert) regarding what these experts consider to be comparable (or not comparable) government standards for safe exposure to formaldehyde. These standards

---

[1] Undersigned counsel is all-too-familiar with the case, which was decided against plaintiff, since he was counsel on appeal representing the Louisiana Trial Lawyers' Association (LTLA) as an *amicus curiae*.

are simply that, i.e., published levels which the jury may consider in its assessment. They can hardly be seen as inherently prejudicial, given their source (federal agencies which have no stake in this litigation). To the extent a defendant expert takes the position that the standards should not be in any considered, the jury may agree with that position. However, it would be ludicrous for there to be total silence in the courtroom about published levels and standards of formaldehyde safety in a case which greatly depends for its instructive verdict on the jury's understanding of what may or may not constitute a safe level of formaldehyde in the ambient air.

Specifically as to standards which pre-existed plaintiff's exposure, it would appear self-evident that these standards, being in existence at the time of exposure, are relevant and should be referenced in expert opinion testimony. As to standards published after December 2004, and/or after plaintiff's exposure from May 2006 through December 2007, the Court should not dismiss this evidence as inadmissible because it is characterized as "subsequent." In the first place, these later-published standards are not "subsequent remedial measures" taken by a defendant wrongdoer, and inadmissible for the policy reason that wrongdoers should be encouraged to improve safety after an injury. These would be standards published by the federal government, not by Gulf Stream or Fluor. Beyond this, however, it may be the case that even standards coming into existence after the date of manufacture in this case, or after the dates of exposure, reflect a state of knowledge about formaldehyde safety which pre-existed the announcement of the standard. This will be up to experts to explain or justify to the Court and jury. A ruling as to the relevance and applicability of such standards should await the time of the trial appearance of an expert or other witness who intends to refer to any such standards. The Court respectfully is urged not to decide such an important evidentiary question in a vacuum.

For the foregoing reasons, defendant's motion should be denied.

      Respectfully submitted:

      **FEMA TRAILER FORMALDEHYDE**
      **PRODUCT LIABILITY LITIGATION**

BY: s/Gerald E. Meunier
    GERALD E. MEUNIER, #9471
    **PLAINTIFFS' CO-LIAISON COUNSEL**
    Gainsburgh, Benjamin, David, Meunier &
    Warshauer, L.L.C.
    2800 Energy Centre, 1100 Poydras Street
    New Orleans, Louisiana 70163
    Telephone: 504/522-2304
    Facsimile: 504/528-9973
    gmeunier@gainsben.com

    s/Justin I. Woods
    JUSTIN I. WOODS, #24713
    **PLAINTIFFS' CO-LIAISON COUNSEL**
    Gainsburgh, Benjamin, David, Meunier &
    Warshauer, L.L.C.
    2800 Energy Centre, 1100 Poydras Street
    New Orleans, Louisiana 70163
    Telephone: 504/522-2304
    Facsimile: 504/528-9973
    jwoods@gainsben.com

    **COURT-APPOINTED PLAINTIFFS'**
    **STEERING COMMITTEE**
     ANTHONY BUZBEE, Texas # 24001820
     ROBERT M. BECNEL, #14072
     RAUL BENCOMO, #2932
     FRANK D'AMICO, JR., #17519
     MATT MORELAND, #24567
     LINDA NELSON, #9938
     DENNIS REICH, Texas #16739600
     MIKAL C. WATTS, Texas #20981820

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 31, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                  s/Gerald E. Meunier  
                                  GERALD E. MEUNIER, #9471