**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE PRODUCTS | * | |
| | LIABILITY LITIGATION | * | SECTION "N" (5) |
| | | * | |
| | | * | JUDGE ENGELHARDT |
| | | * | MAGISTRATE CHASEZ |
| | | * | |
| **THIS DOCUMENT IS RELATED TO** | | * | |
| | | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | | * | |
| *Inc., et al*, Docket No. 09-2892; | | * | |
| Alana Alexander, individually and on behalf | | * | |
| of Christopher Cooper | | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

<u>**PLAINTIFF'S RESPONSE TO DEFENDANT FLUOR ENTERPRISES, INC.'S MOTION TO EXCLUDE EXPERT TESTIMONY OF CHARLES DAVID MOORE, PE, PLS**</u>

**MAY IT PLEASE THE COURT:**

Plaintiff Alana Alexander ("Ms. Alexander" or "Plaintiff") respectfully submits the following Response to Defendant Fluor Enterprises, Inc.'s ("FEI") Motion to Exclude Expert Testimony of Charles David Moore, PE, PLS. (Docket Entry No. 2899).

1

**OBJECTION TO RESPONSE DEADLINE AND
REQUEST FOR CONTINUANCE OF RESPONSE**

Plaintiff objects to the extremely brief response date and seeks a continuance of time to respond in more detail, but has endeavored to provide the most comprehensive response possible in this short deadline. The subject motion was filed on August 26, 2009. It was set for a hearing on August 28, 2009. However, the Court ordered Plaintiff to respond by August 31, 2009. The subject motion raises significant issues. It is unfair and prejudicial to compel Plaintiff to respond to this substantial motion within 4 business days. Further, such a short response date violates Local Rule 7.2.

Local Rule 7.2 provides that:

> Counsel filing a motion shall, at the time of filing, notice it for hearing within a reasonable time thereafter. Unless otherwise ordered by a judge in a particular case, motions must be filed not later than the fifteenth day preceding the notice hearing date and at least fifteen days actual notice of hearing must be given to opposing counsel whether notice is served by mail or delivery under FRCvP 5(b). Copies of the motion and memorandum in support thereof shall also be served with such notice of hearing.

Plaintiff objects to the extremely brief response date and seeks a continuance of time to respond in more detail, but has endeavored to provide the most comprehensive response possible in this short deadline.

### I.  STANDARD OF ADMISSIBILITY FOR EXPERT TESTIMONY.

FEI seeks to exclude the expert testimony of Charles David Moore ("Moore"). As will be discussed *infra*, Moore is more than qualified to render the opinions he has offered, the science supporting his opinions is sound, and his opinions are reliable.

The admission of expert testimony in federal court is government by Federal Rule of Evidence 702, which provides:

> "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

FED. R. EVID. 702. Pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), a Rule 702 determination is a question of law for the district court that imposes a special obligation on the trial judge. *Id.* at 579, 592. This special obligation requires that the trial judge act as a gatekeeper to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 583-84.

Under a Rule 702 inquiry, the first step is to determine whether the expert is qualified to testify. *Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 741 (3d Cir. 1994). The United States Supreme Court in *Daubert* emphasized that the Rule 702 inquiry was "a flexible one" where the individual factors are neither exclusive nor dispositive. *Daubert*, 509 U.S. at 594-595. As such, this Court essentially considers whether the expert retains a broad range of knowledge, skills and training. *Id*.

The second step of the Rule 702 inquiry requires the expert testimony to be reliably based upon scientific methods. *Paoli*, 35 F.3d at 742. "*Daubert* explains that the language of Rule 702 requiring the expert to testify to scientific knowledge means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Id.* (citing *Daubert*, 509 U.S. at 590). Although not

3

inclusive, these following concepts have been articulated as factors to guide the Court's assessment of reliability: (1) whether the theory or technique can be tested, (2) whether the theory or technique has been subjected to peer review, (3) whether there is a high rate of known or potential error, (4) whether there are standards controlling the technique's operation, and (5) whether the theory enjoys "general acceptance". *Daubert*, 509 U.S. at 593-94; *see also Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998). Moreover, expert testimony should be admitted "if there are 'good grounds' for the expert's conclusion." *Heller v. Shaw*, 167 F.3d 146, 152-53 (3d Cir. 1999).

Moore is not only qualified to provide his opinions, but his opinions are indeed reliable — not result oriented — and provide information that will undoubtedly assist the trier of fact in developing a reasoned decision. In a faulty attempt to exclude Moore's testimony, FEI embarks on a crusade to misconstrue Moore's representations and twist his and other's statements to support their illogical conclusions.

**II.   MOORE IS QUALIFIED TO TESTIFY.**

The first step in a Rule 702 inquiry is determine whether the expert is qualified. As discussed below, Moore is clearly qualified by knowledge skill, experience, training and education to offer the testimony he presents in this case. Furthermore, FEI does not even attempt to refute Moore's qualifications.

Moore holds a degree in civil engineering from the University of Kentucky, he is a professional licensed engineer in the State of Louisiana, and he is the owner of the civil engineering firm Freyou Moore and Associates in New Iberia, Louisiana. *See* **Exhibit A**, Deposition of Charles David Moore at 283-84; *see also* Motion to Exclude Expert

4

Testimony of Charles David Moore, PE, PLS at 2; *see also* **Exhibit D**, CV of Charles David Moore.  Moore is extremely experienced in different aspects of civil engineering, and has even designed travel trailer parks. *See* **Exhibit A**, Deposition of Charles David Moore at 284-287.

Thus, Moore is unquestionably qualified by knowledge, skill, experience, training, and education to offer the testimony he presents in this case. *See* FED. R. EVID. 702. Again, FEI does not contest the fact that Moore is qualified to render the expert opinions he has put forth in this case anywhere in its Motion to Exclude Expert Testimony of Charles David Moore, PE, PLS, and is not at issue.

### III.     MOORE'S TESTIMONY IS RELIABLE.

Under *Daubert* and its progeny, Moore's methodology is reliable and bears numerous hallmarks of reliability. *See Ancar v. Murphy Oil, U.S.A., Inc.*, 2007 WL 3270763, *2 (E.D. La. Nov. 2, 2007); *In re Katrina Canal Breaches Consol. Litigation*, 2007 WL 3245438, *12 (E.D. La. Nov. 2, 2007).  Moore used roof framing plans, basic floor plans, elevations, mechanical and electrical plans, photographs of the unit, including photos taken by FEMA, the Gulf Stream Coach. Inc. owner's manual for travel trailers, Exhibit 7 of the IA/TAC which was supposed to be used by FEI to install the trailer, engineering reference manuals including "The Manual of Steel Construction: from the American Institute of Steel Construction, "The Timber Construction Manual" from the American Institute of Timber Construction, "ASCE 7-05 – Minimum Design Loads for Buildings and Other Structures, HUD documents, and eyewitness testimony from Shirley Alexander as to how the Plaintiff's trailer was installed.  *See* **Exhibit B**, Expert Report of Charles David Moore at 3, *see also*  **Exhibit A**, Deposition of Charles

5

David Moore at 40-41, 50-54, *see also* **Exhibit C**, Deposition of Shirley Alexander at 56, 62-63, 65-66, 91-93, 189-193. These indicia of reliability are sufficient to satisfy the standards set forth in both *Daubert* and *Ancar. See Daubert*, 509 U.S. at 589, 593-95; *Ancar*, 2007 WL 3270763 at *2. Furthermore, FEI does not contest the methodology used by Moore anywhere in its Motion to Exclude Expert Testimony of Charles David Moore, PE, PLS, and so the methodology used is not at issue.

Furthermore, Moore's opinions have developed naturally and directly from his previous research and projects. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150-51 (1999). Moore has participated in engineering trailer parks, and has professional engineering experience regarding jacking procedures that render his expert opinions in this case reliable. *See* **Exhibit A**, Deposition of Charles David Moore at 49-54, 178- 180, 241- 42, 286. The opinions Moore provides relating to the general causation of structure damage as a result of improper jacking are based naturally and directly from his years and years of experience as a civil engineer, and Moore's adequate experience from which he derives his opinions are also not in dispute, as FEI does not contest this issue in its Motion to Exclude Expert Testimony of Charles David Moore, PE, PLS.

### A.  Moore's Opinions Have Evidentiary Support.

FEI's sole argument in its Motion to Exclude Expert Testimony of Charles David Moore, PE, PLS is that the three opinions[1] FEI seeks to exclude are based on

---

[1] The three opinions FEI seeks to exclude are listed on page 13 of its motion, which states the following:

1. In his written opinion that "The separation of the paneling noted in the

bathroom and bedroom areas are consistent with the effects of uneven movement
of the trailer that would occur with improper jacking techniques";

2. In his written opinion that "Also, even though we were unable to analyze the

unsubstantiated facts.  *See* Motion to Exclude Expert Testimony of Charles David Moore, PE, PLS at 8-13 (Docket Entry No. 2899).

FEI self-selects portions of testimony to support its faulty conclusion that Moore had no factual bases for rendering the expert opinions they seek to exclude.  FEI argues that (1) Shirley Alexander, an eye-witness to at least part of the initial trailer installation, *never* saw the travel trailer being jacked, and (2) never spoke to attorneys on the phone.  The record clearly shows that these assertions to this Honorable Court are not only incorrect, but are also misleading.

First, with respect to the assertion that Shirley Alexander never saw the trailer being jacked, this is simply not the case.  Shirley Alexander repeatedly testifies that the installers lifted and lowered the trailer, and even testified that "[e]vidently they had some kind of jacks, but I didn't really pay attention to everything they did with them. *See* **Exhibit C**, Deposition of Shirley Alexander at 56-57, 61-63, 91-93, 189-193, 199-200. Shirley Alexander, who was 79 years old at the time of her deposition, was put through a long, grueling series of confusing and repetitive questions, and was visibly shaking and frustrated with the marathon questioning propounded to her that day.  *See* **Exhibit C**, Deposition of Shirley Alexander at 10, 88-89.  She never claimed to be an expert on construction techniques, either.  She simply testified to the best of her ability and recollection in common terms about what she saw when the trailer was installed, and clearly testified as to how the trailer was "jacked up" whether by using the word "jack" or

---

structural capacity of the entire shell of the living unit, it is a concern that blocking and anchoring of the trailer frame would cause problems in structure of the shell."; and

3. In his deposition that "the damage that we see with the popping of the panels on the walls, both in the bedroom and in the bathroom at the other end of the trailer, was probably caused by improper jacking techniques."

"lift." For FEI to claim that she never saw the travel trailer being jacked is incorrect at best, if not disingenuous. *See, e.g.*, **Exhibit C,** Deposition of Shirley Alexander at 127-130.

Second, with respect to the assertion that Shirley Alexander never talked to one of the Plaintiff's attorneys, this is simply a bold misrepresentation. While Shirley Alexander initially did not remember talking with an attorney on the phone, she *clearly* acknowledged later on in her deposition that she was mistaken.

Q: Okay. And the second time you met with Ray, is that when you all talked about the trailer?

A: Yeah. I'm trying to -- Excuse me.

Q: Sure.

A: I'm trying to think about a telephone call. I think I did get a telephone call rom a lawyer about the trailer. I think I did talk to – Somebody did call me over the phone. I'm not messing it up, huh, by going back on something?

Q: No, no.

A: I just remembered. But I did talk to somebody over the phone about the trailer.

Q: Okay. Do you just not know who it was?

A: I don't know if it was Ray or – I can't think right now. But I did. I did get a telephone call.

Q: And do you remember the phone call being at night?

A: It was in the evening. It wasn't dark.

Q: Okay. And do you remember how many people were on the phone?

A: I only spoke to one. I don't know who was listening in somewhere, but I only spoke to one.

A: Uh-huh (affirmative response).

Q: Was it a man?

A: It was a male, yeah.

Q: Did he talk a lot?

A: Not too much. He just asked me questions about the trailer. I told him the same thing I told you, and that's it.

**Exhibit C**, Deposition of Shirley Alexander at 91-92; *see also Id.* at 192-93.  Shirley Alexander clearly explained on her own without being asked that she did recall speaking with one of Plaintiff's lawyers about the installation of the trailer, and that others may have been listening.  This is certainly the conversation that Moore references with respect to Shirley Alexander's description of how the trailer was installed.  For FEI to not even bring this testimony to the Court's attention, and claim that Shirley Alexander never spoke with one of Plaintiff's attorneys is, once again, disingenuous.

In addition to the testimony of Alexander[2] which is detailed in this response, Moore relied on the following factual information which FEI omitted in its motion.  First, Moore conducted an on-site investigation of the travel trailer on May 7, 2009 where he inspected the structural, mechanical and electrical aspects of the trailer.  *See* **Exhibit B**, Expert Report of Charles David Moore at 3-4.  Moore observed in a few areas interior wall paneling separated from the wall that was repaired using duct tape.  *Id.* at 4.  Moore also inspected the frame of the trailer taking note of their positioning, spacing and where the frame was braced.  *Id.*  Damage to the jacks mounted on the trailer was also noted.  *Id.*

Moore performed Load Computation Analysis whereby he used the manufacturer listed maximum permissible weight of the vehicle, the allowable weight which can be safely supported by an axle, the design floor load for a trailer, analysis of the load carrying capacity of the trailer frame beams, and photographs including after the 2007

---

[2] Moore testified that the way Shirley Alexander described the installation of the travel trailer, jacking one side to the other, was the worst way it could have been done. **Exhibit A**, Deposition of Charles David Moore at 239.

re-installation. *Id.* at 5-6; *see also* **Exhibit A**, Deposition of Charles David Moore at 187-88. Moore also reviewed documents in order to render his expert opinions, including a FEMA Unit Inspection Report and Ready for Occupancy Acceptance Checklist on the Plaintiff's trailer, and even other expert reports and conversations with other experts. *See* **Exhibit A**, Deposition of Charles David Moore at 117-123, 155-56, 162-64. Moore utilized "The Manual of Steel Construction," "The Timber Construction Manual," the "ASCE 7-05 Minimum Design Loads for Buildings and Other Structures," and HUD references. *See Id.* at 189-90. Although the list of factual bases used by Moore to render his opinion stated *supra* is not an exhaustive list, they were all used by Moore and support his expert opinions and conclusions factually. *See, e.g.*, **Exhibits E, F, G, H, I, J, K, L, M, N, and O**, Exhibits from the Deposition of Charles David Moore. For FEI to state in its Motion to Exclude the Expert Testimony of Charles David Moore, PE, PLS at page 4 that "[t]he bases for Moore's opinions are two-fold: from a visual inspection on May 7, 2009 of the FEMA travel trailer assigned to Plaintiffs' and from an alleged conversation with Shirley Alexander" is in itself a mischaracterization of the facts in this case.

## **CONCLUSION**

Moore is a qualified expert. His many years of experience, training, skill and knowledge warrant that he be allowed to provide an opinion in this matter, and his qualifications are not even contested by FEI. His opinions are reliable as based on sound methodology. FEI's <u>sole reason</u> for seeking to exclude Moore, that there is no factual basis for him to provide the three opinions sought to be excluded, is unpersuasive, invalid, and quite transparently disingenuous. Moore has provided ample

support and material in which to rely upon, and FEI has failed to present any cogent argument to say otherwise. Thus, under *Daubert*, this Court, acting as gatekeeper, should allow the testimony of Moore to proceed.

## **PRAYER**

WHEREFORE, Plaintiff Alana Alexander respectfully requests that the Court deny Defendant Fluor Enterprises, Inc.'s Motion to Exclude Expert Testimony of Charles David Moore, PE, PLS and for such other relief to which she is entitled.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:  s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:     504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:     504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
DENNIS REICH, Texas #16739600

### CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on August 31, 2009.

 s/Gerald E. Meunier
GERALD E. MEUNIER, #9471