**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE PRODUCTS | * | |
| | LIABILITY LITIGATION | * | SECTION "N" (5) |
| | | * | |
| | | * | JUDGE ENGELHARDT |
| | | * | MAGISTRATE CHASEZ |
| | | * | |
| **THIS DOCUMENT IS RELATED TO** | | * | |
| | | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | | * | |
| *Inc., et al*, Docket No. 09-2892; | | * | |
| Alana Alexander, individually and on behalf | | * | |
| of Christopher Cooper | | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM COACH, INC.'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF GERALD MCGWIN, JR. PH.D., TO EXCLUDE EVIDENCE OF IRRELEVANT MEDICAL CONDITIONS AND TO EXCLUDE ANY REFERENCE TO CANCER**

Plaintiff Alana Alexander ("Ms. Alexander" or "Plaintiff") responds to Defendant Gulf Stream Coach, Inc.'s ("Gulf Stream") "Motion *in Limine* to Exclude Testimony of Gerald McGwin, Jr., Ph.D., to Exclude Evidence of Irrelevant Medical Conditions and to Exclude any Reference to Cancer":

1

## OBJECTION TO DEADLINE AND REQUEST FOR CONTINUANCE OF RESPONSE

The motion at bar was filed on August 25, 2009, and was not set for hearing. However, the Court ordered Plaintiff to respond by August 31, 2009.[1] The motion raises significant issues, and it is unfair and prejudicial to compel Plaintiff to respond to this substantial motion within four business days. Further, such a short response date violates Local Rule 7.2, which provides:

> Counsel filing a motion shall, at the time of filing, notice it for hearing within a reasonable time thereafter. Unless otherwise ordered by a judge in a particular case, motions must be filed not later than the fifteenth day preceding the notice hearing date and at least fifteen days actual notice of hearing must be given to opposing counsel whether notice is served by mail or delivery under FRCvP 5(b). Copies of the motion and memorandum in support thereof shall also be served with such notice of hearing.

Plaintiff objects to the extremely brief response date and seeks a continuance of time to respond in more detail, but has endeavored to provide the most comprehensive response possible in this short deadline.

## ARGUMENT AND AUTHORITIES

**I.   STANDARD OF ADMISSIBILITY.**

Under Rule 403 of the Federal Rules of Evidence, a district judge is permitted to exclude relevant evidence if he finds that its probative value is substantially outweighed by the danger of "unfair prejudice, confusion of the issues, or misleading the jury". F<small>ED</small>. R. E<small>VID</small>. 403. Rule 401 provides that relevant evidence is "evidence, having any

---

[1] Defendants filed a total of 25 motions between August 19 and 26, 2009, with the vast majority being filed between August 24 and 26, 2009. The Court has allowed Plaintiff to pick ten to respond to by August 28, 2009 and the remainder must be responded to by August 31, 2009.

tendency to make the existence of any fact that is of consequence the determination of the action more probable or less probable than it would be without the evidence."  In making a relevancy determination, a district judge is given broad discretion: "[t]his is a question of legal relevance, a matter on which the trial judge has wide discretion, and which the appellate court will not reverse unless the trial judge has clearly abused his discretion."  *Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1351, 1356 (5th Cir. 1983) (citing *Wright v. Hartford Accident & Indem. Co.*, 580 F.2d 809, 810 (5th Cir. 1978)).

Gulf Stream contends that Dr. McGwin's testimony regarding asthma is irrelevant, and that all testimony regarding cancer, or any medical conditions not currently suffered by Plaintiff, should not be admitted because such testimony would be unfairly prejudicial.  As will be discussed *infra*, Dr. McGwin's testimony is relevant and more probative than prejudicial as to the associations of formaldehyde, asthma and cancer.  Furthermore, testimony regarding cancer and medical conditions not currently suffered by Plaintiff are admissible.

## II.     DR. MCGWIN'S TESTIMONY IS RELEVANT.

In its attempt to exclude the testimony of Dr. McGwin, Gulf Stream argues two primary points: (1) Dr. McGwin's testimony regarding asthma relates only to the inducement of asthma and (2) Dr. McGwin's testimony regarding formaldehyde is prejudicial as it relates to levels larger than exposure levels established in this case.  Gulf Stream fails to adequately support its points; thereby rendering them inconclusive.

### A.     Dr. McGwin's Opinion Is Not Limited to the Inducement of Asthma.

Gulf Steam parses portions of Dr. McGwin's deposition testimony to paint an

3

incorrect portrait of Dr. McGwin's opinion regarding asthma.  While one study focuses on formaldehyde and the inducement of asthma, Dr. McGwin's opinion is not specific to inducement, but to the presence of asthma subsequent formaldehyde exposure.  *See* **Exhibit A**, Deposition Testimony of Gerald McGwin, Jr., Ph.D., taken July 27, 2009, p. 55.  While testifying, Dr. McGwin clarifies Gulf Stream's misconception between "onset" of asthma and the "presence" of asthma.  **Exhibit A**, p. 52, 72, 90, 111.  Oftentimes, studies do not look to whether asthma was initiated by formaldehyde, but instead focus on whether asthma was present in the subject after formaldehyde exposure.  **Exhibit A**, p. 55.  This does not mean the studies are classified as "onset of asthma" studies; more simply, the studies are not defined by initiation or exacerbation.  **Exhibit A**, p. 55 ("I think presence or absence is the best we can do for most of these studies.").

> Q. And was there an interpretation regarding the aggravation of asthma symptoms?
>
> A. Again, that sentence refers specifically to the initiation phase of asthma.
>
> Q. Do you have your own interpretation as to whether this paper represents an exacerbation of asthma conditions?
>
> A. I wouldn't have an opinion in that regard because I don't believe the authors defined it in such a way.

**Exhibit A**, p. 54.  Furthermore, Gulf Stream incorrectly asserts that Dr. McGwin's opinion is solely based on onset of asthma studies:

> Q. In the study -- in the seven studies, exposed formaldehyde is associated with the presence of asthma, correct?
>
> A. I think all but one.  We discussed the one that looked at incidence.

4

Exhibit A, p. 112.

Finally, terminology with respect to "initiation" or "exacerbation" of asthma is commonly used interchangeably because if a biological component can "cause" asthma, it can typically "exacerbate" asthma.  *See, e.g.,* Adgate, J., *Allergen levels in inner city homes: baseline concentrations and evaluation of intervention effectiveness*, 18 J. EXP. SCI. & ENV. EPI. 430 (2008).  Thus explaining why many studies often only look to the presence of asthma and not specifically whether asthma has been initiated or exacerbated by formaldehyde.  Therefore, because Dr. McGwin's testimony is not specific to the initiation of asthma, Dr. McGwin's testimony regarding asthma should not be excluded.

### B.     Dr. McGwin's Cancer Testimony Is Relevant.

Next, Gulf Stream argues that Dr. McGwin's testimony regarding cancer should be precluded.  Gulf Stream "spins" the testimony of Dr. McGwin to create the impression that there is no association between nasopharyngeal cancer and formaldehyde levels present in the EHUs. Rec. Doc. 2824-2, p. 7.  Dr. McGwin testified that because epidemiologic studies are looking at people who are generally exposed to formaldehyde by their work, etc and are not provided with an exact formaldehyde exposure level, Dr. McGwin could not provide a conclusive opinion that such levels certainly cause nasopharyngeal cancer.  **Exhibit A**, p. 131-32 ("I just want to get some context here, my answer was because the epidemiologic studies generally don't provide us the formaldehyde levels.  Most of them are occupational studies where it was you work in an embalmers lab, you work in a carpet, factory, et cetera.").

5

Further, Gulf Stream misrepresents Dr. McGwin testimony as seeking to establish specific causation by questioning Dr. McGwin on an issue he has not been charged. *See* **Exhibit B**, Affidavit of Gerald McGwin, Jr., Ph.D., May 18, 2009, p. 3; *see also* **Exhibit A**, p. 166-67. The basis of Gulf Stream's questioning originates from Dr. McGwin's Affidavit issued for the class certification hearing, which provided an opinion that formaldehyde generally caused cancer. **Exhibit C**, Affidavit of Gerald McGwin Jr., Ph.D, Aug. 20, 2008, p. 4-6. Dr. McGwin's class certification Affidavit does not provide analysis as to the exacting levels to which formaldehyde causes cancer, and instead, the Affidavit is one pertaining to general causation. Thus, Gulf Stream's questions regarding the association of formaldehyde levels present in tested EHUs and nasopharyngeal cancer are beyond the scope of the opinions represented in either of Dr. McGwin's Affidavits, and as such misrepresent the extent of Dr. McGwin's testimony. *See* **Exhibit B**, p. 3; **Exhibit C**, p. 4-6. With regard to cancer, Dr. McGwin intends to testify only as to general causation.

Additionally, Gulf Stream asserts that because Dr. McGwin cannot conclusively establish that formaldehyde is the cause of leukemia, lung cancer, pancreatic cancer and brain cancer, Dr. McGwin should be precluded from mentioning any such association. However, as noted by the Supreme Court of Louisiana, even if the potential for injury is remote, the fear of such injury is compensable, "[w]hile to a scientist in his ivory tower the possibility of cancerous growth may be so minimal as to the untroubling, we are not prepared to hold that the trier of fact erred in finding compensable this real possibility to this worry workman." *Anderson v. Welding Testing Laboratory, Inc.*, 304 So.2d 351, 353-54 (La. 1974). Thus, Dr. McGwin's conclusions

that formaldehyde may play an etiologic role, "meaning the ultimate cause of the disease," should not be deemed irrelevant to Plaintiff's claims of mental anguish and emotional distress for the fear of an increased risk of future serious disease. **Exhibit A**, p. 185; *see also* Rec. Doc. 1686.  Further, "[i]t is important to note that a plaintiff, to recover for fear of cancer, need not prove that his toxic exposure will more probably than not lead to cancer."  *Smith v. A.C.& S, Inc.*, 843 F.2d 854, 859 n. 3 (5th Cir. 1988). Thus, Gulf Stream's argument that simply because Dr. McGwin cannot state "more probably than not" that formaldehyde leads to a variety of cancers is irrelevant for the purposes of establishing the fear of such potential.  Rec. Doc. 2824-2, p. 7.  As such, Dr. McGwin's testimony regarding cancer should not be excluded.

**II.     Testimony Regarding the Association of Cancer and Formaldehyde is Admissible as More Probative Than Prejudicial.**

Gulf Stream, argues that any testimony regarding the association of formaldehyde to cancer is too prejudicial and must be excluded.  However, where fear of an increased risk of future serious disease has been pled and such fear includes cancer, it is necessary that testimony regarding its be heard.  The Fifth Circuit has recognized that a plaintiff may recover for "cancerphobia".  *A.C. & S., Inc.*, 843 F.2d at 859.  In the primary case relied upon by Gulf Stream, *A.C. & S, Inc.*, the plaintiff who alleged a fear of cancer was denied relief because the plaintiff failed to raise any evidence of the issue.  *Id.*  While the Fifth Circuit noted the potential inflammatory nature of cancer, the Fifth Circuit limited its classification to those situations where a plaintiff had not alleged any such fear of cancer.  *Id.* ("[A] plaintiff's fear of cancer is serious and reasonable may not be predicated on a general statement that he is concerned about his health.").  Here, Plaintiffs have asserted their fears in their Original

7

Complaint, Rec. Doc. 1, p. 7, and in their Third Supplemental and Amended Complaint, Rec. Doc. 1686. *See also* **Exhibit D**, Deposition Testimony of Alana Alexander, taken on June 29, 2009, p. 393. Furthermore, as testified by Dr. Kornberg, the potential for cancer is certainly a distinct and relevant possibility. **Exhibit E**, Deposition Testimony of James Philip Kornberg, M.D., Sc.D., taken on July 9, 2009, p. 154. Thus, because carcerphobia is a recognized claim in Louisiana and is one of which Plaintiff is subjected, evidence of such is more probative than prejudicial.

It should be noted that there is little to no explanation or analysis in Gulf Stream's reasoning to exclude evidence regarding an association between formaldehyde and cancer. Gulf Stream merely provides a brief, inadequate recitation of case law that had Gulf Stream fully read, Gulf Stream would have perhaps realized its true applicability.

**III. Evidence and Arguments Regarding Medical Conditions Not Suffered by Plaintiff Are Admissible.**

As noted above, broad discretion is vested in the district court for the determination of whether evidence should be admitted based on relevancy and materiality. *Young v. Ill. Cent. Gulf R. Co.*, 618 F.2d 332, 337 (5th Cir. 1980). "Trial courts must not lose sight, however, of the liberal nature of the Federal Rules of Evidence. It must be remembered that '[t]he federal rules and practice favor the admission of evidence rather than its exclusion if it has any probative value at all.'" *Id.* (citing *United States v. Carranco*, 551 F.2d 1197 (10th Cir. 1977)). Here, Gulf Stream seeks to exclude evidence of any symptoms except those related to the "eyes/nose/throat, headaches and exacerbation of pre-existing asthma." *See* Rec. Doc. 2824-2, p. 12. Gulf Stream's reasoning for such exclusions are based on the testimony of Plaintiff. Rec. Doc. 2824-2, p. 10-11. However, Gulf Stream fails to accurately

8

analyze Plaintiff Alana Alexander's testimony and include symptoms raised Christopher Cooper's testimony; thereby not including pertinent symptoms. *See, e.g.,* **Exhibit D**, p. 126 (testifying that that Christopher Cooper suffered from "drying and scaling of the skin."). Furthermore, Plaintiff seeks not to specifically introduce all medical conditions on the Plaintiff Fact Sheet, but seeks to introduce all of the medical conditions that are associated with exposure to formaldehyde. Such evidence is probative for two reasons: (1) to show that Gulf Stream had notice of formaldehyde issues and (2) to show the basis for formaldehyde regulation.

To prove Gulf Stream's knowledge of the problems associated with formaldehyde, it is necessary that Plaintiff be allowed to present testimony of EHU installers that suffered medical conditions associated with formaldehyde, but not necessarily suffered by Plaintiff. **Exhibit F**, Deposition Testimony of Travis Allen, taken on Aug. 5, 2009, p. 42, 45, 72-72, 101-03; *see also* **Exhibit G**, Deposition Testimony of Heath Allen, taken on Aug. 5, 2009, p. 38-41, 45-46; *see also* **Exhibit H**, Deposition Testimony of Gerald Paul Blanchard, taken on Aug. 6, 2009, p. 30-31, 143. Thus, the installers, like Plaintiff, knew that some kind of chemical was affecting them, but did not know it was formaldehyde until long after exposure. Such testimony serves as evidence that Gulf Stream had notice of the formaldehyde problems, and legally mimics the decision in *Corkern v. Outback Steakhouse of Fl., Inc.*, 2007 WL 1772031 (E.D. La. June 18, 2007), where evidence of prior health inspection reports noting conditions not alleged by plaintiff where admitted as evidence of notice. *Id.* at *2. In addition to installers, there exists testimony of former Gulf Stream employees who suffered various symptoms further establishing Gulf Stream's notice of formaldehyde problems. *See*

Rec. Doc. 2836, Plaintiff's Response to Defendant Gulf Stream's Motion *in Limine* to Exclude Certain Witness Testimony. Thus, evidence regarding medical conditions not suffered by Plaintiff is relevant to establish Gulf Stream's knowledge of pertinent facts. Such evidence will not evolve into a "mini-trial", but instead will serve to establish significant questions regarding Gulf Stream's notice of formaldehyde issues.

Similarly, because there exist various national standards regulating exposure to formaldehyde, in order to explain the basis and need for such standards, it is necessary to understand the effects of formaldehyde. For example, it would be extremely difficult to explain the government's decision to impose various standards without the ability to explain the necessity of such standards. Testimony regarding medical conditions will not affect the jury in such a way that will unduly suggest a decision on an improper basis. Because Plaintiff's allegations are clear, the jury is unlikely to confuse the symptoms suffered. *See Carter v. Hewitt*, 17 F.2d 961, 972 (3d Cir. 1980). As such, testimony of medical conditions outside of those suffered is relevant and admissible.

## CONCLUSION

In its Motion *in Limine* to Exclude Testimony of Gerald McGwin, Jr., Ph.D., to Exclude Evidence of Irrelevant Medical Conditions and to Exclude any Reference to Cancer, Gulf Stream fails to provide any substantive reasoning to sustain its motion. Dr. McGwin should not be precluded from testifying because Gulf Stream incorrectly asserts that Dr. McGwin's testimony is based solely on the initiation of asthma. Furthermore, Gulf Stream misrepresents that Dr. McGwin is providing testimony as to the specific causation of cancer when Dr. McGwin has not been charged with such an opinion. Furthermore, the association of formaldehyde and cancer is relevant as

Plaintiff seeks to recover damages for fear of future serious disease.  Finally, medical conditions not suffered by Plaintiff are relevant and more probative than prejudicial as evidence of such will establish Gulf Stream's knowledge of pertinent factual issues and the basis for the national regulation of formaldehyde.

## PRAYER

WHEREFORE, Plaintiffs respectfully requests that the Court deny Gulf Stream's Motion *in Limine* to Exclude Testimony of Gerald McGwin, Jr., Ph.D., to Exclude Evidence of Irrelevant Medical Conditions and to Exclude any Reference to Cancer, and for such other relief to which they are entitled.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:    504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
Dennis Reich, Texas #16739600

### CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on August 31, 2009.

    s/Gerald E. Meunier
GERALD E. MEUNIER, #9471