UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                                     MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                  SECTION "N-5"

JUDGE ENGELHARDT
MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*Charlie Age, et al v. Gulf Stream Coach,*
*Inc., et al, No. 09-2892*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
GULF STREAM'S MOTION IN LIMINE TO EXCLUDE
TESTIMONY OF CHRISTOPHER DE ROSA, PH.D. (DOC. 2872)

MAY IT PLEASE THE COURT:

The nature and extent of the exposure risks associated with formaldehyde are among the

most fundamental questions to be decided in this litigation.  Certainly these are among the most

important questions to be presented to and assessed by the jury in the bellwether trial of Alana

Alexander's case.  It would, in fact, be difficult to imagine how there could be any "instructive"

verdict in this litigation without the jury being given an opportunity to understand and compare

the views of competent scientists about the known health effects of off-gassed formaldehyde

inhalation.  Whether or not the defendant product/travel trailer was unreasonably dangerous

depends on evidence which allows the jury to appreciate the hazards and risks of formaldehyde

exposure.  Whether or not there was negligent conduct in relationship to a meaningful risk of

harm, and whether or not testimony as to specific causation for a given plaintiff is credible,

likewise are questions dependent upon the nature of formaldehyde, the mechanism for

formaldehyde injury, and what science knows about the health risks associated with

formaldehyde exposure.

The instant motion seeks to strike the expert testimony of Dr. Christopher De Rosa, a

non-retained expert in this case who has long served as a renowned, career scientist with the

federal government.  For sixteen years, Dr. De Rosa was the Director of the Division of

Toxicological and Environmental Medicine of the Agency for Toxic Substances and Disease

Registry (ATSDR).  This federal agency, and Dr. De Rosa's division of that agency, employ a

number of scientists whose task is to review study data, participate in studies, publish and review

scientific literature, and consult with public and private health professionals, in order to discern

the health hazards associated with exposure to various toxic substances.  This work is carried out

not for private profit or corporate gain, but, by definition, for the good and welfare of all citizens

in this country; and the result of this effort is reflected, among other things, in "toxicological

profiles" as to specific chemicals and toxic materials.  These profiles are published and

maintained by the ASTDR.

Dr. Christopher De Rosa is the government scientist who oversaw and was responsible

for the ASTDR toxicological profile on formaldehyde at all times pertinent herein.

At the outset, the Court should understand exactly what trial testimony and opinions of

this witness are intended to be offered by plaintiff.  The duly-noticed and video-taped deposition

of Dr. De Rosa was taken on July 6, 2009 for all purposes, specifically including the purpose of

perpetuating the witness' testimony for trial.[1]  A summary table of the page and line excerpts of

---

[1]Certain testimony in Dr. De Rosa's deposition will not be necessary to present in the
case of Alana Alexander due to the fact that, since Dr. De Rosa was deposed, all FTCA claims in
the Alexander case against the United States/FEMA for its delay or failure in responding to the

that deposition sets forth what plaintiff proposes to present at the Alexander trial, and is attached

as Exhibit I.  In this summary, the general subject matter of the testimony corresponding to

specific page and line excerpts is provided for reference.  The actual transcript of these

deposition excerpts also is attached, as Exhibit II.  By reference to these attachments, the Court

will note the following with respect to the nature and extent of the testimony by this witness

which plaintiff proposes to offer at trial:

Dr. De Rosa is an Environmental and Health Scientist, with a Ph.D. in post-doctoral work

in molecular biology.  He has extensive education, background, training, and experience in

dealing with the human health effects of exposure risks to toxic substances, specifically including

formaldehyde.  For sixteen years, he was the Director of the Division of Toxicological and

Environmental Medicine at ATSDR, overseeing approximately 70 individuals and an annual

budget of $10 million.  He has consulted with federal agencies and foreign governments,

published numerous articles in his field, and testified as an expert witness for the United States.

He is tendered by plaintiff, on the record, as an expert in "environmental health science, with

specific expertise as to the human health effects [and] exposure risks associated with

formaldehyde."  *See* Exhibit II at p. 26, ll. 2-4.

In February 2007 (less than half-way through the 5/06-1/08 occupancy period of Alana

Alexander and her family in the Gulf Stream unit), Dr. De Rosa was called upon to review a

letter, with attachments, that was sent by the federal government's Center for Disease Control

(CDC) to Congress, in response to a request from Congress that CDC investigate whether a

_____

formaldehyde crisis have been dismissed.  Therefore, the excerpts from the De Rosa deposition
to be presented at this first bellwether trial are more limited than will be the excerpts presented at
later trials, where the United States/FEMA is a defendant.

respiratory illness outbreak had occurred or was occurring due to formaldehyde in the FEMA-provided travel trailers.  Dr. De Rosa discussed the specific portions of this response and its attachments which he reviewed, particularly those dealing with: the health risks of formaldehyde, the mechanism for formaldehyde injury, the specific cancer risks of formaldehyde, and the known reasons why formaldehyde in mobile housing environments is more of a health issue than formaldehyde in normal residential structures.

Dr. De Rosa also addresses in his testimony the susceptibility of children and the elderly to formaldehyde, and he explains why certain "minimum risk levels" or MRL's published and utilized by the ATSDR are relevant health guidance values in discussing and addressing the risks of formaldehyde exposure.  In this regard, it is important to note that defendants' (paid) experts will opine that the MRL's of the ASTDR have little or nothing to do with the human health effects of formaldehyde and should not be used as values in addressing or assessing the risks to which individuals such as Alana Alexander and her family were exposed during this occupancy in a travel trailer.  Dr. De Rosa, like other experts who are retained by plaintiff, takes serious issue with this position, and he explains in his testimony why the MRL's are useful health guidance values.

The evidence in this case will establish that FEMA called upon CDC and ATSDR (both agencies are part of the U.S. Department of Health and Human Services), as well as the Environmental Protection Agency (EPA), to assist FEMA in assessing the risk of formaldehyde in the trailers once it became known that people were complaining about symptoms related to formaldehyde exposure.  It was decided that the EPA would test and gather data from 96 unoccupied units, which data then would be analyzed by the ATSDR before advising FEMA as

to what it should say publicly in a "Health Consultation Report" which it intended to publish about formaldehyde in the trailers (the report ultimately was published in February 2007, but then amended to include more discussion about long-term exposure risks and re-issued in October 2007).

A key aspect of this effort was the selection of the ppm level of formaldehyde which should be considered a safe level for reference in analyzing the EPA data from the 96 units. Without obtaining Dr. De Rosa's input, certain individuals at ATSDR, in consultation with FEMA (and, plaintiff contends, FEMA attorneys), selected .3 ppm as the lowest level at which human health effects from formaldehyde would be experienced. This level is far above other published formaldehyde standards, including the MRLs of the ATSDR. Hence, in his testimony Dr. De Rosa is called upon to express his opinion whether .3 ppm truly is an appropriate "safe level" to use for purposes of the analysis conducted for FEMA. He sets forth and explains his position in this regard, referring not only to the importance of the ATSDR MRL's, but also to the fact that he perceived there to be an impending public health disaster as the FEMA trailer formaldehyde crisis emerged. This testimony is critically relevant. The nature and degree of formaldehyde exposure risks as perceived by this government scientist, both inform and assist the jury as to the most important issues to be resolved both in this trial and in those to follow.[2]

There is extensive discussion in Dr. DeRosa's testimony about the value, bases and uses of the different standards of formaldehyde exposure published by different agencies. These standards and values will be extensively discussed by other experts in the trial. The explanation

---

[2]It must be emphasized that defendant experts are expected to consistently downplay the health risks of exposure to formaldehyde. They will contend that the chemical is ubiquitous, and harmless, in much higher levels than those found in travel trailers.

from a government scientist in a leadership position as to the uses and purposes of these standards is critical to what the jury will hear at trial about published formaldehyde standards and health guidance values.

Dr. De Rosa discusses in his testimony the mechanism for formaldehyde injury once it enters the body. His explanation of why formaldehyde may cause harm to an individual despite its relatively short "half life" of existence in the body, also is important background information for the jury, since defendants' and plaintiff's retained experts will offer their own opinions about this issue, and about what the short "half-life" of the substance actually means in cases of alleged harm due to formaldehyde exposure.

Finally, Dr. De Rosa's testimony sets forth his views as to the carcinogenic characteristics of formaldehyde, and, importantly, his explanation of why the federal government's official science policy for years has been that there is no such thing as a "safe level" of exposure to a known or probable carcinogen. Since the issue of cancer, cancer risks and fear of cancer are relevant issues in this trial, the testimony of a distinguished and independent government scientist about formaldehyde's carcinogenic characteristics is both relevant and extremely important.

The defendant Gulf Stream can offer no credible refutation of Dr. De Rosa's qualifications as an expert to discuss the science of formaldehyde, the risks associated with formaldehyde exposure, and the justifications of published standards and government policy regarding exposure to formaldehyde. Not only did this individual lead the government agency chiefly responsible for publishing information about toxic and chemical substances such as formaldehyde, but he is someone who has consulted with foreign countries and government

agencies, and even has testified as an expert witness on behalf of the Government, in the field of environmental health science. There is no expert on formaldehyde in this case with more objectivity and credibility than Dr. De Rosa.

It likewise is specious to suggest that Dr. De Rosa is not qualified or competent pursuant to the provisions of Rule 702 of the Federal Rules of Evidence (FRE). Just as his qualifications are irrefutable, Dr. De Rosa's methodology for purposes of expressing his opinions is sound and reliable by virtue of the fact that not only is he someone who has authored or co-authored roughly 200 peer-reviewed publications, but, specifically as to formaldehyde, is the government official who approved the methodology by which the federal government's "official" profile of formaldehyde was adopted and announced. If the qualifications or methodology of this witness do not pass muster under FRE 702, then it would follow that basis for the ATSDR's pronouncements about the nature and risks of formaldehyde must be scientifically suspect. Clearly this is not so; and, as indicated by the attached summary, deposition excerpts, and discussion above, Dr. De Rosa's testimony as to a general and background scientific matters pertinent to formaldehyde is beyond admissibility challenge. There need not be any inquiry into, or challenge of, his expert witness methodology for purposes of specific causation, of course, because his testimony does not address the issues of specific or medical causation in this case.

When Dr. De Rosa was tendered in the trial deposition as a non-retained expert in the field of environmental health science, etc., counsel for the Government (Henry Miller) and counsel for the Gulf Stream (Andy Weinstock) both objected. Because this was a trial deposition, they were obliged to fully state their objections at that time, and they purported to do so. Mr. Miller acknowledged that Dr. De Rosa was qualified "in the field of toxicology," but

objected because he was "not being offered as an expert witness in this case by any party," and therefore should be considered a fact witness. *See* Exhibit II at p. 26. Of course, Dr. De Rosa <u>was</u> being offered as an expert witness by a party, i.e., the plaintiff. The fact that he had not been specifically hired or retained by the plaintiff does not change this fact. Plaintiff would agree with Mr. Miller that Dr. De Rosa is qualified in the field of toxicology; but the tender in this case is broader because it is more tailored to the nature and extent of the testimony being offered and to the issues herein.

Mr. Weinstock joined in Mr. Miller's objection, and further observed that, although plaintiff had known about Dr. De Rosa's "involvement" for some time, plaintiff had obtained no expert report from him, failing which he should not be recognized as an expert. *See* Exhibit II at p. 26. It is true that counsel for plaintiff have known for some time about the "involvement" of Dr. De Rosa in this litigation, just as every other party has known this for some time. Dr. De Rosa was a prominent witness, for example, in the Congressional hearings and investigation into the formaldehyde crisis. However, Mr. Weinstock too overlooks the clear distinction between a retained and non-retained expert. Dr. DeRosa does not work for the plaintiff, was not hired by the plaintiff, and is not being paid by the plaintiff to render an expert opinion or report. If he were a retained expert, it would be true that he would fall under the Court's requirements for such a report. On the contrary, Dr. De Rosa is an expert in his field who could have been subpoenaed and subjected to deposition questioning by <u>any</u> party. Because of the nature of his testimony, it perhaps is understandable why the defendants did not wish to depose him and elicit this expert testimony. Plaintiff, however, had the right to do so, and his clear qualifications under FRE 702 allow him to offer expert opinion testimony in this matter, testimony which in

fact is more helpful to the jury <u>because</u> of his independent status.  Nowhere in FRE 702, or in any of the Orders of this Court, is there a requirement that only paid and retained experts are allowed to testify in litigation, and the Court should be careful in this MDL not to adopt the "hired gun only" rule apparently urged by defendants.

The appearance of non-retained experts in litigation, and specifically in complex MDL proceedings such as this, in fact is more the rule than the exception.  For example, in the series of Vioxx MDL trials, Dr. Eric Topol, a renowned cardiologist at the Cleveland Clinic, was issued a subpoena by plaintiffs to appear in a video-taped deposition testimony for trial purposes, and his expert views about the risks and science of Vioxx were elicited in that deposition.  Excerpts from the deposition were played, and replayed, at the series of bellwether trials in the Vioxx MDL, even though Dr. Topol was not a retained expert, not hired by any party, and not paid by any party to be that party's trial expert.  When the defendant Merck sought to exclude Dr. Topol's testimony, Judge Fallon agreed with plaintiffs that his FRE 702 qualifications and methodology were not subject to serious challenge, and that his opinion testimony as a non-retained expert clearly was helpful to assist the jurors in addressing the science and risk issues in that litigation. Dr. De Rosa, very much like Dr. Topol in the Vioxx case, is an important expert witness in this MDL.  His non-retained status is supportive of his appearance, not detrimental to it.  He is qualified to offer opinion testimony which will be helpful to every jury and every bellwether trial in this matter.

The three discrete objections to Dr. De Rosa set forth in the instant motion are thus without merit:

The first objection, that Dr. De Rosa has not been asked to offer opinions specific to the

facts of this case, is without merit for all the reasons discussed.  It is not necessary that every

expert in the case be offering an opinion specific to the facts and circumstances of the plaintiff's

claim of causation.  The underlying and fundamental issues of formaldehyde science and risks

are important to develop in these bellwether trials, and Dr. De Rosa is perhaps the most

independent and reliable source of that information for the jury.

The second objection, that Dr. De Rosa has not undertaken any formal studies to

determine the circumstances under which formaldehyde causes specific injury (such as eye

irritation) or the circumstances under which it is more dangerous for children, likewise is without

merit.[3]  Again, defendant would set up the "straw man" of a specific causation expert, when none

exists in this particular instance.  There is no offered testimony by Dr. De Rosa as to whether or

not Alana Alexander or Christopher Cooper themselves were more likely than not injured by

formaldehyde because they lived in this Gulf Stream trailer from May 2006 to January 2008.

Other plaintiff experts will address this question of specific causation.  Dr. De Rosa, drawing on

---

[3]In fact, the transcript reveals that the defendant Gulf Stream is not being entirely fair in suggesting to the Court that Dr. De Rosa was offering opinion testimony utterly without support in the published study literature.  In asking the witness about the level of formaldehyde exposure required to cause eye-irritation, Mr. Weinstock was told by Dr. De Rosa that the support for this relation is found "in the toxicological profile as the basis for the MRLs."  Depo. Excerpt attached to Defendant Memo, at p. 232.  Mr. Weinstock then asked about specific studies to support this view, "other than the tox profile..." *Id.*  The witness had already indicated that there is ample support for the relationship between formaldehyde exposure and eye-irritation in the body of science underlying the ATSDR toxicological; the follow-up question asking the witness to utterly disregard all of this science, hardly leads to a meaningful argument that Dr. DeRosa's statements could not be supported by reference to specific studies.

Likewise, with respect to citing studies in support of the fact that children are more susceptible to formaldehyde exposure than adults (a general principle which almost every expert in this case will acknowledge as true), the transcript reveals that Dr. De Rosa knew that such studies existed, but simply was not able to cite them by name on the spot, and really was not given much of a chance by counsel to elaborate as to those studies. *See id.* at p. 266, l. 23 - p. 267, l. 11.

a wealth of experience and education, and specifically upon his work in developing and

overseeing the ATSDR's toxicological profile on formaldehyde, is qualified and competent to

offer testimony that will help the jury understand the nature and extent of the human health

effects and risks of exposure to formaldehyde.  He likewise is competent to talk about the

usefulness of certain standards (such as the ATSDR MRL's) as health guidance values in a case

such as this.

      Finally, citing a decision by Judge Fallon in the Vioxx case, Gulf Stream asserts that Dr.

De Rosa should be barred as an expert witness because he indicated he had no advance (pre-

deposition) expectation of being offered as an expert witness.  The so-called support given for

such a proposition, however, is inapposite to the point of being misleading.  The Vioxx decision

cited by Gulf Stream is one in which Judge Fallon struck a specific causation expert witness in a

Vioxx bellwether trial because the witness (a cardiologist) stated in his deposition that he had

only done research on Vioxx in the months leading up to the trial (as requested by plaintiff's

counsel), and that, but for this, he did not really consider himself a "Vioxx expert."  There is

simply no fair comparison between that situation and the one at hand.  Nowhere, either explicitly

or implicitly, does Dr. De Rosa state in his testimony that he does not consider himself an expert

on formaldehyde.  In fact, he says the opposite.  The deposition testimony cited by defendant

simply indicates that, prior to his deposition, Dr. De Rosa had not been made aware that he

would be presented as an expert witness.  This is true.  Plaintiff's counsel deliberately did not

contact or meet with Dr. De Rosa in advance of the deposition, other than to make arrangements

for the time, place, etc., and to serve a subpoena for the production of documents.  Appearing at

the deposition, however, Dr. DeRosa freely and voluntarily answered the questions posed to him,

and did offer sworn opinion testimony that is helpful in this case.  It is abundantly clear that Dr.

De Rosa is, and holds himself out as, an expert in the field in which he was tendered, particularly

as to formaldehyde exposure.  Whether he personally knew prior to his deposition that he would

be tendered as an expert witness, is totally irrelevant under FRE 702.

For these reasons, plaintiff respectfully submits that the instant motion is without merit,

and should be denied.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE**
**PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'**
**STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
ROBERT M. BECNEL, #14072
RAUL BENCOMO, #2932
FRANK D'AMICO, JR., #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL C. WATTS, Texas #20981820

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2009, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all

counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing

document and the notice of electronic filing by first-class mail to all counsel of record who are

non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471