UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER  
FORMALDEHYDE  
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-5"

JUDGE ENGELHARDT  
MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEPOSITION EXCERPTS FROM 7/6/09 VIDEO-TAPED DEPOSITION OF CHRISTOPHER DE ROSA M.S., PH.D.

| PAGE/LINE DESIGNATION | STATEMENT |
|---|---|
| p. 11, ll. 11-25; p. 12, ll. 10-13 | Witness appears with documents pursuant to subpoena, and is represented by own counsel |
| p. 13, l. 24 - p. 14, l. 21 | Environmental heath scientist with Ph.D. and post-doctoral work in molecular biology |
| p. 15, l. 16 - p. 18, l. 8 | Center for Disease Control (CDC) an Agency for Toxic Substances and Disease Registry (ATSDR) are both federal agencies within the U.S. Department of Health and Human Services<br><br>Until 10/07, witness was Director of Division of Toxicological and Environmental Medicine at ATSDR (served for 16 years in this capacity), and oversaw approximately 70 individuals with an annual budget of approximately $10 million |



| p. 20, l. 12 - p. 26, l. 4 | Official mission of the ATSDR Division he directed is to follow where the science leads and get information to the public so informed decisions can be made about health issues |
| --- | --- |
| | Witness has specific expertise regarding the health and exposure risks associated with toxic chemicals, and more particularly has expertise concerning the potential health effects of formaldehyde exposure |
| | Plaintiff tenders witness as non-retained expert in environmental health science, with specific expertise as to the human health effects and exposure risks associated with formaldehyde |
| p. 66, l. 22 - p. 73, l. 23; p. 76, l. 23 - p. 78, l. 20; p. 80, ll. 1-15 | In 2/07 Congress asked CDC to investigate whether a respiratory illness outbreak was due to formaldehyde exposure in FEMA trailers |
| | Dr. Geberding of CDC wrote a letter in response to this request for investigation; and the witness reviewed that letter (he did not review in advance the attachments to the letter, but has done so since the letter was sent) |
| | Witness agrees with a table attached to the letter which refers to the fact that formaldehyde is now considered a "known," and not just a "probable," carcinogen |
| | Witness agrees that there is no safe level of exposure to a known carcinogen |
| | There is a growing body of science regarding reproductive, developmental problems associated with formaldehyde exposure; this science is based on cross-links with DNA strands, which changes become permanent in stem cells transported to the fetus |
| | The same mechanism of injury is found in leukemia cases |
| | Witness agrees with the statement in the table attached to Dr. Geberding's letter that mobile homes are known to be a source of formaldehyde because of (a) the closed space condition of the manufacturing process, and (b) the diminished head space/air volume exchange |
| | Witness disagrees that non-sensitized individuals exposed to formaldehyde are not likely to experience anything other than transient irritation |

| p. 82, l. 10 - p. 83, l. 17; p. 84, ll. 2-14 | The health effects of inhaled formaldehyde vary with the individual<br><br>Children and the elderly generally are more susceptible to formaldehyde exposure<br><br>ATSDR health guidance values for formaldehyde exposure are appropriate; these values for short-term and long-term exposure are specified |
|---|---|
| p. 86, l. 9 - p. 87, l. 8; p. 88, l. 10 - p. 89, l. 18; p. 91, l. 1 - p. 93, l. 19; p. 94, l. 7 - p. 95, l. 16 | Disagrees with the decision to use .3 ppm as the lowest health effect level in the analysis of the EPA testing data from 96 unoccupied units, which data and health guidance reference were requested by FEMA from the ATSDR/CDC<br><br>Contrary to the position taken in support of using .3 ppm as an appropriate reference, he feels that the minimum risk levels established by the ATSDR are important relevant references in this analysis<br><br>He believes that in using .3 ppm as the reference, the carcinogenic risks of formaldehyde were overlooked, particularly given the actual duration of exposure involved in long-term exposure cases |
| p. 107, l. 3 - p. 111, l. 11 | In 7/07 he sent an e-mail to other federal health officials asking what was being done to inform occupants regarding the health effects of formaldehyde exposure, at the time the EPA test results were being reported<br><br>He expressed concern in this e-mail that the FEMA flyers being used to distribute information to trailer residents did not say all that needed to be said<br><br>In another e-mail of 7/07 he expressed concern about an "impending public health disaster," and he explains why he said this<br><br>He feels that the EPA test data greatly exceeded the MRL guidance values of the ATSDR |

| | |
|---|---|
| p. 181, l. 9 - p. 184, l. 1; <br> p. 196, l. 14 - p. 197, l. 10; <br> p. 245, l. 11 - p. 247, l. 11 | Defends the ATSDR's MRL's as health guidance values, despite the HUD target level for formalehyde in ambient air, and despite the OSHA permissible exposure limit <br><br> NIOSHA recommends a .16 ppm level of formaldehyde exposure as a maximum <br><br> Feels these various references constitute a "tyranny of numbers," and therefore all should be considered together with none being dispositive <br><br> Selecting a single .3 ppm level for health effects was criticized and questioned by FEMA staff <br><br> Explains the relationship between the ATSDR and MRLs regarding formaldehyde and the health effects of formaldehyde exposure, particularly in sensitized individuals <br><br> Feels that there is need for an inherently flexible assessment of formaldehyde exposure effects in the review of test data |
| p. 249, l. 13 - p. 251, l. 7; <br> p. 252, ll. 4-16 | Agrees that there is a short "half-life" of formaldehyde once inhaled into the anatomy <br><br> However, damage from formaldehyde to the anatomy is not solely dependent on the amount of time spent in the body, but also takes into account the "intense reactivity" of formaldehyde with biological tissues, including the impact on DNA |
| p. 253, ll. 1-18 | Explains how a person can become sensitized to formaldehyde through an immunogenic response |
| p. 255, ll. 8-17 | Discusses and explains various Government agency classifications of formaldehyde as a carcinogen |
| p. 262, l. 15 - p. 264, l. 10 | Explains why he feels children were presenting with formaldehyde symptoms and why this was the basis fo his concern about a possible "health disaster" <br><br> Regarding asthma, challenges the structure of a CDC study in Mississippi concluding that FEMA trailer children had no higher incidents of asthma than other children <br><br> He complained about the structure of this study at the time |
| p. 281, l. 20 - p. 282, l. 3 | Agrees that ventilation of a trailer reduces the levels of formaldehyde; however, the problem is that in hot weather the off-gassing of formaldehyde increases |

| | |
|---|---|
| p. 283, l. 1 - p. 293, l. 20; p. 303, l. 24 - p. 304, l. 20 | Simply ventilating a trailer does not necessarily or automatically reduce formaldehyde to a safe level<br><br>Explains how MRLs are used by working scientists<br><br>Discusses and explains the classification of formaldehyde as a carcinogen<br><br>Explains the scientific basis for considering there to be "no safe level" for exposure to a carcinogen, which has been federal science policy since approximately 1980 |