UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | * | |
| *Inc., et al*, Docket No. 09-2892; | * | |
| Alana Alexander, individually and on behalf of | * | |
| Christopher Cooper | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO DEFENDANTS GULF STREAM COACH, INC.'S
MOTION *IN LIMINE* TO EXCLUDE THE OPINIONS OF MARY DEVANY**

Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper ("Plaintiff" or "Ms. Alexander"), responds to Defendant Gulf Stream Coach, Inc.'s ("Defendant" of "Gulf Stream") Motion *in Limine* to Exclude the Opinions of Mary DeVany (Docket Entry No. 2895) and, in support, would show the following:

In an unprofessional and petty motion, Gulf Stream moves to strike the entire testimony of Mary DeVany for a variety of reasons. The Motion should be denied.

**I.     Objection to Response Deadline and Request for Continuance of Response**

The subject motion was filed on August 26, 2009. It was not set for hearing. However, the Court ordered Plaintiff to respond by August 31, 2009.[1] The subject motion raises significant issues. It is unfair and prejudicial to compel Plaintiff to respond to this substantial

---

[1] Defendants filed a total of approximately 25 motions between August 19 and 26, 2009, with the vast majority being filed between August 24 and 26, 2009. The Court allowed Plaintiff to pick ten to respond to by August 28, 2009, and required that the remainder be responded to by August 31, 2009.

motion within three business days. Further, such a short response date violates Local Rule 7.2. Accordingly, Plaintiff objects to the extremely brief response date and seeks a continuance of time to respond in more detail. However, Plaintiff has endeavored to provide the most comprehensive response possible in this short deadline and respectfully contends that her response shows in detail why Gulf Stream's Motion should be denied.

**II.     Expert Testimony, Legal Background**

Gulf Stream's Motion to Strike is one to exclude evidence, specifically expert testimony. Therefore, the Federal Rules of Evidence should govern the Court's analysis of the motion.

FED. R. EVID. 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

FED. R. EVID. 402 provides:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

FED. R. EVID. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the

> hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Expert testimony need only be based on a reliable and scientifically valid methodology that fits the facts of a case. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). The inquiry into the expert's testimony is "a flexible one" where the individual factors are neither exclusive nor dispostive. *See Id.* at 594-95. As such, this Court essentially considers whether the expert retains a broad range of knowledge, skills and training. *Id*.

The court's role as gatekeeper, however, should not replace the adversary system. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. It is certainly not the trial Court's role to determine whether the expert's conclusions are actually correct. *Id.,* at 595. So long as the testimony rests upon "good grounds" it should be tested by the adversary process -- competing expert testimony and active cross-examination – rather than excluded from juror's scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. *See Ruiz-Trioche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998)(citing *Daubert*, at 596).

**III.    Ms. DeVany's Opinions**

Plaintiff concedes that Ms. DeVany's opinions are not segregated out in her report. *See*

Gulf Stream's brief, Exhibit A. Plaintiff submits that the following represent her opinions, identified by page number:

1) That the formaldehyde emissions levels in the trailer were at an unsafe level (which includes a discussion and analysis of relevant formaldehyde emission standards, guidelines and action level) (pp.5-9);

2) Plaintiff's and Christopher Cooper's symptoms are consistent with chronic formaldehyde exposure (p. 23);

3) Mechanisms to reduce formaldehyde emissions (pp. 8-9);

4) Her sampling results of occupied and unoccupied Gulf Stream trailers, including the protocol/sampling methodology used to sample such trailers (pp.12-13);

5) The range of formaldehyde emission levels in the trailer at the time that Plaintiff and her family moved into the trailer (pp. 20-22);

6) Factors contributing to higher/lower formaldehyde emissions (e.g., temperature and humidity) (pp. 18-20); and,

7) The use of a Formaldemeter (Docket Entry No. 2953, Exhibit F).

The following areas constitute background information considered in the course of forming her opinions:

1) General background of formaldehyde (p. 4);

2) Plaintiff and her son's medical background (pp. 14-15);

3) Plaintiff and her son's residential history (99. 14-15); and,

4) General symptoms/health effects from formaldehyde exposure (pp. 9-11).

The following constitute areas of discussion in Ms. DeVany's report, which could constitute opinions, but that are on subjects for which Plaintiff will not offer Ms. DeVany as an expert:

1) Plaintiff suffered from emotional stress because of the financial burden of a sick child and the difficulty in finding sick child care (p.23);

2) The link between family stress and a lack of workplace productivity (p.23);

3) The defective design of the trailer (interior air volume relative to surface area of wood products very low) caused formaldehyde to build up to high levels (p.23);

4) Plaintiff and Christopher Cooper's symptoms are consistent with formaldehyde exposure (p.23);

5) FEMA's liability and knowledge (pp.23-24); and,

6) Gulf Stream's negligence (p.24).

As the Court has recognized that experts can provide the facts upon which their opinions are based[2], Plaintiff will not respond to Gulf Stream's attacks on the background facts set out in Ms. DeVany's report. *See* Gulf Stream Brief, at pp. 8-9. Plaintiff will not respond to Gulf Stream's attacks on opinions contained in Ms. DeVany's report, of which Plaintiff will not offer at trial. This leaves the actual opinions that Ms. DeVany will offer at trial.

**IV.   DeVany is Qualified as Expert in Industrial Hygiene.**

---

[2] *See* Docket Entry No. 2800, pp. 1-2.

First, Gulf Stream contends that Ms. DeVany is not qualified to render her opinions, which are in the field of industrial hygiene. She is qualified as an expert in this field.

First and foremost, in 2008, Ms. DeVany was named a Fellow in the American Industrial Hygiene Association ("AIHA"). According the AIHA, "[t]he Fellow Award has become a mark of excellence and achievement for AIHA members," and "[m]embers chosen to be Fellows have been nominated by colleagues in the profession for their significant contributions to the practice of industrial hygiene or related disciplines. The Fellow classification is limited to no more than 5 percent of the AIHA membership." *See* AIHA Press Release, AIHA Announces 2008 Fellow Award Winners, March 25, 2008, attached as **Exhibit A**. She was also asked to testify before Congress on issues related to industrial hygiene and formaldehyde in particular, in July 2007.[3] *See* Deposition of Mary DeVany, at pp. 338-340, relevant portions attached as **Exhibit B.**

Ms. DeVany's extensive CV is attached as **Exhibit A-1**. She has an undergraduate degree in biology and a master's of science with a concentration in Biochemistry and human physiology.[4] *Id.* Ms. DeVany is Certified Safety Professional in Comprehensive Practice, and has been since 1987. *Id.* She is also a Certified Hazardous Materials Manager at the Master level and has been since 1990. *Id.* She has also qualified as an instructor for OSHA compliance by the Federal OSHA training institute. *Id.*

---

[3] Despite what Gulf Stream says in its brief, Ms. DeVany's testimony to Congress specifically noted her involvement with the Sierra Club. *See* Congressional Testimony, attached as **Exhibit C.** Also, contrary to what Gulf Stream says, this invitation was extended before she was retained as an expert in this case.

[4] Despite what Gulf Stream says in her brief, Ms. DeVany has never testified that she has more than one master's degree, or a master's degree in anything other than biology with a concentration in biochemistry and human physiology. The deposition "transcript" that Gulf Stream's attorney referred to (which they do not attach) was never reviewed by Ms. DeVany, as she explained to Gulf Stream's attorneys in her deposition. *See* Depo at p. 292.

She has completed numerous post-graduate courses in chemical toxicology, occupational and community environmental safety and health, chemical exposure assessment, indoor air quality, air contaminant sampling methodology, statistical analysis, risk assessment, and methods of exposure recognition, evaluation and control.  *See* DeVany Report, at p. 3.  She is president of the community and occupational environmental health and safety firm of DeVany Industrial Consultants, which she founded twenty-three years ago.  *Id.* at p. 3.  She provides consulting services to the public and private sectors, including exposure assessments, technical training, written compliance programs, site hazard evaluations, and exposure elimination/control in the areas of community and occupational health, safety, and environment.  *Id.* at p. 3.  Further, although Gulf Stream casts this as a failure of some kind[5], Ms. DeVany attended two years of medical school before determining that she wanted to go into her present field.  *See* Deposition of Mary DeVany at p. 31**.**  This additional education can only help in her current field.  Ms. DeVany and her small company have sampled literally thousands of travel trailers, mobile homes, and park model homes.[6]

---

[5] Consistent with the tone of its entire brief, Gulf Stream refers to it as "dropping out."  Gulf Stream Brief, at p. 18.

[6] To contrast, Gulf Stream and FEMA's experts, while very experienced in giving asbestos depositions for various defendants, have virtually no experience with formaldehyde.  *See* Deposition of W. Dyson at p.74, lines 15 to 24, relevant portions attached as **Exhibit D**.; Deposition of C. Robbins, at page 86 to 87, relevant portions attached as **Exhibit E**.

She was previously designated as an expert in this case during the class certification phase. Defendants did not challenge her at that time, on any grounds.[7] The Court recognized her background in industrial hygiene, her background, her Congressional testimony, and the fact that she had become involved in this particular issue through her service as a technical adviser to the Sierra Club. In *re FEMA Trailer Formaldehyde Products Liability Litigation*. 583 F.Supp. 758, 779-80, fn. 16. (E.D. LA. October 3, 2008).

In sum, Ms. DeVany is qualified to serve as an expert in industrial hygiene in this case.

**III.   Specific Opinions**

    A. Overview/analysis of relevant formaldehyde emission standards, guidelines and action levels.

Ms. DeVany first provides an overview of all relevant standards/levels/guidelines for formaldehyde emission. *See* DeVany Report, at pp. 5-9. Those in the industrial hygiene field routinely review and rely on such information in determining what are unsafe and safe levels of exposure for a particular substance, for the target population. *See* Devany Declaration at ¶5 attached as **Exhibit F**. It is similarly important to consider the context of each standard/level (i.e., occupational vs. non-occupational) in doing this review. *Id.* In order to reach her opinion that the formaldehyde levels in the trailer render it unsafe, Ms. DeVany much consider this background material, but must also analyze it. *Id.*

She is qualified to render opinions based on this analysis. Further, this analysis is relevant to the claims and defenses in this case. Gulf Stream cannot (and does not) seriously

---

[7] Plaintiff hopes that the Court will forgive Ms. DeVany for her inartful explanation of her role at the class certification stage, which Gulf Stream gleefully discusses in its brief. Gulf Stream Brief, at pp. 3-4. Ms. DeVany is not a lawyer so does not understand that intricacies of federal court procedure, or at least not does not understand it as well as Gulf Stream's legal team. *See* DeVany Depo at pp. 332-334. This is Plaintiff's counsel's fault for not explaining it to her as well as we could have.

refute that the standards/levels that she discusses are not reliable. Likewise, it cannot (and does not) contend that Ms. DeVany does not discuss them accurately or apply them incorrectly. Gulf Stream simply contends that she not be able to discuss them generally because she did not personally come up with these standards. If that were the case, no expert could testify on any subject unless they authored every study on that subject. That is not the law.

B. Plaintiff's Symptoms

Ms. DeVany is expected to testify that Plaintiff's and Christopher Cooper's symptoms are consistent with chronic formaldehyde exposure. This is exactly the type of analysis that Ms. DeVany, and those in the field of industrial hygiene, does in her practice. She will of course make it clear to the jury that she is not a medical practitioner or Plaintiff's doctor, but that Ms. DeVany does, in her practice, ascertain what symptoms the subject population is experiencing, compare it to symptoms associated with a toxic substance, in the course of determining whether a toxic substance is a potential source of the symptoms. *See Id.* There is no reason to prevent her from doing so here.

C. Mechanisms to reduce formaldehyde emissions.

Ms. DeVany also discusses mechanisms to reduce formaldehyde emissions; specifically the "baking off" procedure. Gulf Stream's only complaint with this point is that Ms. DeVany did not identify her clients who utilize this procedure because of confidentiality concerns. Gulf Stream offers no authority that would serve to exclude an area of testimony simply because they witness does not name names.[8] Ms. DeVany's report and deposition show that she provided

---

[8] Further, the simple fact that some random person solicited her out of the blue does not render obsolete her years of

ample description to Gulf Stream as to the procedure.   There is no reason to strike this opinion.

> D.  Her sampling results of occupied and unoccupied Gulf Stream trailers, including the protocol/sampling methodology used to sample such trailers.

This area is a primary focus of Gulf Stream's motion.  Additionally, Gulf Stream and FEMA secured expert testimony to discuss this issue. Gulf Stream contends that Ms. DeVany's testing is not reliable because included sampling of unoccupied trailers and, for occupied trailers, it did not account for the variable of ventilation rates.  Gulf Stream feels so strongly about his argument that it repeats it over and over again.  But, all the Court needs to know about this is that Ms. DeVany's sampling of occupied trailers was virtually identical to that used by the CDC when it tested occupied travel trailers.[9]  Further, it is identical to protocols used by other state (Massachusetts and Minnesota) and educational system (Texas A&M) air sampling protocols. *See* DeVany Dec., at p.1-2; *see also Indoor Air Sampling and Evaluation Guide*, attached as **Exhibit H**; *MDH Review of Formaldehyde Levels in FEMA-Issued Manufactured Homes in Southeastern Minnesota*, attached as **Exhibit I**; *Industrial Hygiene: Monitoring and Evaluation of Occupational/Environmental Exposure,* attached as **Exhibit J**.

Also, even if DeVany removes data from sampling of unoccupied trailers, her opinions remain the same.  DeVany Dec., at p.1 ¶3.

No one will dispute that, obviously, it would be best if Plaintiff had sampled her trailer every single day that she was in the trailer.  But, considering that 1) Gulf Stream or a FEMA

---

experience with this process.
[9] The CDC study involved sampling of 519 occupied travel trailers, park models and mobile homes.  Upon completing that sampling, the CDC advised FEMA, among other things, to move residents out of trailers as soon as possible, with vulnerable populations (like asthmatics) being the first to be evacuated.  *See Final Report on Formaldehyde Levels in FEMA Supplied Travel Trailers, Park Models, and Mobile Ho*mes, attached as **Exhibit G**.

representative advised her that the chemical smell she encountered was "nothing to be worried about" and 2) that she did not know that formaldehyde was a problem until right before moving out, this was not possible.  The fact that we do not have the results from each day does not render Ms. DeVany's test results unreliable.  Neither does the fact that an orthopedic surgeon's review of an MRI is reliable simply because the doctor *could* actually open up a patient's back and look at the discs.  Nor would an MRI taken weeks after an incident be unreliable simply because an MRI *could* have been taken on the day of the incident.  But, no one would suggest that the fact that there is some more reliable evidence possible, therefore any other evidence must be unreliable, *per se*.

Gulf Stream has hired competent counsel and well-credentialed experts (albeit with little experience with formaldehyde) to make these points to the jury.   According to *Daubert,* this is the proper means to attack this evidence.

> E. The range of formaldehyde emission levels in the trailer at the time that Plaintiff and her family moved into the trailer.

Again, Gulf Stream claims, without basis, that Ms. DeVany's opinions on the range of emissions at the time of Plaintiff's move-in date are unreliable.  However, Gulf Stream noticeable omits that Ms. DeVany calculated this range based on Gulf Stream Cavalier test results, and the following:

- Hardwood Plywood and Veneer Association and the Kitchen Cabinet Manufacturers Association. (2005). *Decay or the Decrease in Formaldehyde Concentrations or Emissions over Time and UF-boned Wood Panel Products*. Reston, VA: Groah,

- W. Zinn, T., Cline, D., Lehmann, W.F., (1990). Long-term Study of Formaldehyde Emission Decay from Particleboard, *Forest Products Journal, 40, No. 6*, 15-18

- Centers for Disease Control and Prevention. (2008). *Final Report on Formaldehyde Levels in FEMA-Supplied Travel Trailers, Park Models, and Mobile Homes*.

- Ernest Orlando Lawrence Berkeley National Laboratory, Environmental Energy Technologies Division, (2008), *Aldehyde and Other Volatile Organic Chemical Emissions in Four FEMA Temporary Housing Units – Final Report*, Richmond, CA.: Maddalena. R. Russell, M. Sullivan, D. Apte, M.

DeVany Report, at pp.21-22; *see also* DeVany Depo at pp. 329-331. These are all reliable studies/organizations and Gulf Stream offers no authority that they are not. Gulf Stream only offers unreported opinions of very different circumstances that did not involve any of these studies or organizations.[10] In sum, this opinion is reliable, relevant and Ms. DeVany is qualified to render it.

    F. Factors contributing to higher/lower formaldehyde emissions (e.g., temperature and humidity)

Gulf Stream does not appear to challenge this opinion.

    G. Uses of Formaldemeter

Very recently, Gulf Stream moved to exclude any evidence of testing of trailers that Gulf Stream did in April 2006 involving a formaldemeter. This is the first time Gulf Stream had raised the issue. Ms. DeVany has provided a declaration discussing the use of a formaldemeter. Plaintiff requests that the Court permit Ms. DeVany to talk very briefly about the situations in which she will use a formaldemeter and for what purpose.

---

[10] For instance, in *Wallace v. Meadow Acres Manuf. Housing,* the opinion which they discuss at length, the expert had devised his own formula, but the Court found that he did not even follow it, and thus found the conclusions not reliable. That is not anywhere close to the case here.

## CONCLUSION AND PRAYER

Ms. DeVany is qualified to give opinions in industrial hygiene and is qualified to opine on the subjects set forth above. Her opinions are relevant to this dispute and are reliable. Gulf Stream's brief reads as a nice outline for a cross-examination, and that is the proper way for Gulf Stream to attack Ms. DeVany's opinions.

Wherefore, Plaintiff respectfully requests that the Court deny Gulf Stream's Motion.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        jwoods@gainsben.com

                                   **COURT-APPOINTED PLAINTIFFS'**
                                   **STEERING COMMITTEE**
                                   ANTHONY BUZBEE, Texas # 24001820
                                   RAUL BENCOMO, #2932
                                   FRANK D'AMICO, #17519
                                   MATT MORELAND, #24567
                                   LINDA NELSON, #9938
                                   MIKAL WATTS, Texas # 20981820
                                   ROBERT BECNEL
                                   DENNIS REICH, Texas # 167396

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that on August 31, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                                      <u>s/Gerald E. Meunier</u>
                                                      GERALD E. MEUNIER, #9471