UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | * | MDL NO. 1873 |
| | * | SECTION "N" (5) |
| | * | JUDGE ENGELHARDT<br>MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO | * | |
| *Charlie Age, et al v. Gulf Stream Coach Inc., et al*, Docket No. 09-2892;<br>Alana Alexander, individually and on behalf of Christopher Cooper | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DECLARATION UNDER PENALTY OF PERJURY

I, Mary C. DeVany, make this declaration under penalty of perjury and state the following:

1. I am over eighteen (18) years of age, am fully competent to make this declaration, I have personal knowledge of all statements contained herein, and all statements contained herein are true and correct.

2. The following relates to my expert report, dated May 19, 2009, and deposition testimony of July 31, 2009.

3. While test results from unoccupied Gulf Stream Cavalier trailers is information on which I relied, and which experts in the field of industrial hygiene would rely, the opinions in my report and deposition regarding the unsafe levels of formaldehyde emissions in the subject Alexander trailer remain in place, and do not change, if I remove any reference to formaldehyde air sampling results for any unoccupied Gulf Stream Cavalier travel trailers. In other words, if I only consider sampling results for Gulf Stream Cavalier travel trailers conducted pursuant to Plaintiff's sampling protocol and sampling results from the Center for Disease Control (CDC)(as set out in "Final Report on Formaldehyde Levels in FEMA-Supplied Travel Trailers, Park Models, and Mobile Homes", July 2, 2008, and "Interim Findings on Formaldehyde Levels in FEMA-Supplied Travel Trailers, Park Models, and Mobile Homes", February 14, 2008), my opinions and conclusions about the subject trailer remain the same.

4. Further, the sampling of formaldehyde done by Plaintiff's experts was done in virtually identical fashion, and to a virtually identical protocol, as the sampling conducted by CDC (as set forth in the above referenced CDC reports). Plaintiff's protocol is also virtually identical to other standard formaldehyde sampling protocols (used by those in the



Exhibit F

industrial hygiene field), such as those set forth by NIOSH (The National Institute of Occupational Safety and Health) Manual of Analytical Methods (NMAM), Fourth Edition, Method Numbers 2016, 2539, and 2541), the Commonwealth of Massachusetts (Indoor Air Sampling and Evaluation Guide, WSC Policy #02-430, April 2002); Minnesota Department of Health, (MDH Review of Formaldehyde Levels in FEMA-Issued Manufactured Homes in Southeastern Minnesota, December 2007); Texas A&M Office of Risk Management and Safety (Industrial Hygiene: Monitoring and Evaluation of Occupational/Environmental Exposure, September 17, 1999).

5. All of the information and data I relied on to reach my opinions is the type of information and data that those in my field of industrial hygiene rely on to form opinions or inferences on the subject of the opinion. In particular, it is important for me to discuss in detail the various governmental and other standards and levels, how they are derived, and what situations they are used in, in order to opine on what is an appropriate level for this trailer. Also, it is important to determine what symptoms a subject is suffering from (and what medical diagnoses the subject's medical providers have provided) and what medical symptoms a particular toxic substance causes, to determine what is causing the symptoms and what recommendations to make to limit/minimize or eliminate the exposure of the toxic substance to the subject individual. This type of review is a standard practice for those in the field of industrial hygiene.

6. Attached hereto is a true and correct copy of my Resume/CV.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 31, 2009

Mary C. DeVany