UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
|     FORMALDEHYDE | * | |
|     PRODUCTS LIABILITY | * | |
|     LITIGATION | * | SECTION: N(5) |
| | * | |
| This Document Relates to: | * | |
| *Charlie Age, et al. v.* | * | JUDGE: ENGELHARDT |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | |
| | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REPLY MEMORANDUM TO PLAINTIFFS RESPONSE TO
GULF STREAM COACH, INC.'S
MOTION *IN LIMINE* TO EXCLUDE
EXPERT TESTIMONY OF JAMES P. KORNBERG, M.D., SC.D.**

**MAY IT PLEASE THE COURT:**

Gulf Stream Coach, Inc. respectfully submits the following Reply Memorandum to Plaintiffs' response to Gulf Stream Coach, Inc.'s Motion *in Limine* to Exclude Expert Testimony of James P. Kornberg, M.D., SC.D.

**I.
ARGUMENT**

1. <u>Kornberg's general causation opinions are contested by Gulf Stream because Kornberg's opinions relating to a new asthmatic illness are not reliably based on an acceptable scientific basis.</u>

Plaintiffs argue that "Dr. Kornberg's basic general causation opinions are uncontested" because Gulf Stream did not raise "criticism of Dr. Kornberg's references, his reasoning from the references, or [his] two [general causation] opinions." (Rec. Doc. 2984, p. 4). Gulf Stream disagrees. Gulf Stream's motion specifically addresses the fact that Kornberg's "reasoning" was not based on *any* valid scientific study. Plaintiffs

correctly point out reliability is dependent upon whether the reasoning or methodology underlying an expert's testimony is *scientifically valid*. (Rec. Doc. 2984, p. 4). Kornberg testified that there isn't ***any*** scientific study that supports his diagnostic end result. (Rec. Doc. 2769-2, p. 6). His diagnosis was a "composite of many different factors ***customized to this specific case.***" *Id.* This is Gulf Stream's criticism of Dr. Kornberg's references and his reasoning.

Plaintiff's response to Gulf Stream's criticism is that published scientific studies are not always mandatory or necessarily fatal to general causation opinions. (Rec. Doc. 2984, p. 5). Rather, Kornberg looked to the "weight of the scientific evidence" in developing his opinions. *Id.* at 6. Gulf Stream challenges this approach because Kornberg failed to explain his "weight of the evidence" methodology. As plaintiffs point out, the majority of Kornberg's opinions rely on unpublished, non-peer reviewed reports, prepared by other experts as part of this litigation.[1] Even so, Kornberg fails to explain how he valued each piece of evidence, his methodological basis for relying heavily on certain pieces of evidence, and his methodological basis for discounting others. This is where a true application of the *Hill Criteria* would have been useful. Kornberg simply fails to provide this Court with good grounds for how he relied on this "weight of the evidence" methodology when, by his own admission, his diagnostic end result is not supported by valid scientific studies.

2. <u>Kornberg's specific causation opinions unreliable because Kornberg did not physically examine Cooper, he did not conduct any tests of Cooper's condition, he relied on incomplete medical records, and his opinions are not reliably based on acceptable scientific methods.</u>

---

[1] (1) The report of Dr. McGwin, (2) a literature review by Dr. Stephen King, (3) ATSDR's Toxicology Profile for formaldehyde, (4) CDC's Final Report on Formaldehyde levels in FEMA-Supplied Travel trailers, Park Models, and Mobile Homes, and (5) Dr. Scott Needle's testimony on behalf of the American Academy of Pediatrics to the Committee on Oversight and Government Reform. (Rec. Doc. 2984, p. 4).

Plaintiffs argue that Kornberg's specific causation opinions are reliable *without* a physical examination of Cooper because Kornberg relied on medical records from other physicians and that Gulf Stream does "not question the validity of the differential diagnosis performed by either Dr. Barnes or Dr. Pacheco." (Rec. Doc. 2984, pp. 8-9). First of all, Gulf Stream does question the validity of Dr. Barnes' differential diagnosis as evidenced by Gulf Stream's motion *in limine* to exclude the opinions of Dr. Barnes. Second, Dr. Pacheco never diagnosed substantive and permanent aggravation of Cooper's pre-existing childhood asthma. (Rec. Doc. 2769-2, p. 6). Pacheco, in fact, was "very concerned the Dr. Kornberg was heavily vested in the plaintiff," and because of that, Dr. Pacheco did not even want to hear Kornberg's point of view. *Id.* at 12. Although plaintiffs argue that Kornberg is capable of understanding the medical records and diagnosis of other physicians, Kornberg clearly disregards the actual diagnosis of plaintiffs' own expert, Dr. Pacheco. Kornberg purports to have reviewed "voluminous" medical records, yet Kornberg admits that he did not review Cooper's CT scan films or his pulmonary function tests performed by Dr. Pacheco. *Id.* at 14. Kornberg only "selectively" read Dr. Pacheco's report - he adopted those factors that favored his "diagnostic end result," and blatantly disregarded anything that did not fit his diagnosis. This questionable practice did not go unnoticed by Dr. Pacheco, and it should not go unnoticed by this Court.

Plaintiffs then argue that Kornberg's specific causation opinions are actually supported by the Fifth Circuit decision in *Moore v. Ashland,* 151 F.3d 269 (5th Cir. 1998). (Rec. Doc. 2984, pp. 10-11). Plaintiffs attempt to distinguish Kornberg's methodology from the methods of Dr. Jenkins (the expert in *Moore*). Recall that Dr. Jenkins actually

examined the plaintiff on three separate occasions, performed a series of tests, and reviewed plaintiff's medical records. He also relied on material safety data sheets, the temporal relationship between exposure and symptoms, an applicable case study, and his training and expertise.

Plaintiffs claim that, unlike Dr. Jenkins, Kornberg relied on published scientific studies. (Rec. Doc. 2984, p. 11). Kornberg may or may not have relied on published studies, but as he testified, they were not studies that supported his diagnostic end result. Plaintiffs also urge that Kornberg relied on voluminous medical records. *Id.* So did Dr. Jenkins. In fact, Dr. Jenkins actually examined the plaintiff on three separate occasions and personally performed testing on the plaintiff. Kornberg, on the other hand, did not ever examine Cooper nor did he perform any tests on Cooper. Even Kornberg's supposed review of Cooper's medical records is suspect because Dr. Barnes medical records did not include pre-Katrina records, which would allow Kornberg to compare Cooper's condition prior to moving into the EHU to Cooper's alleged new illness after he moved out. (Rec. Doc. 2769-2, p. 13). And, as mentioned earlier, Dr. Pacheco did not diagnose substantive and permanent aggravation of Cooper's pre-existing childhood asthma. Kornberg's diagnosis based on "voluminous medical records" is unreliable because Dr. Barnes records are incomplete and Dr. Pacheco's records were selectively reviewed and then misinterpreted. Kornberg did not examine Cooper and did not perform any tests on Cooper to make his own independent diagnosis.

The other documentation that plaintiffs claim Kornberg relied upon, such as formaldehyde testing results, regulatory risk assessment levels, and the toxicological profile of formaldehyde, do not provide scientific evidence that formaldehyde causes

substantive and permanent epithelial damage.  (Rec. Doc. 2984, p. 11).  Dr. Barnes' even testified that permanent epithelial damage has to be looked at on a microscope[2] – a method that Kornberg did not use.   Similarly, Dr. Pacheco testified that the only way to diagnose permanent epithelial damage is with a biopsy[3] – another method that Kornberg did not use.

3. <u>Plaintiffs offer little opposition to Gulf Stream's arguments that Kornberg's medical monitoring opinions are entirely unreliable and, in fact, potentially harmful to Cooper.</u>

Plaintiffs do not even attempt to contradict the fact that the American Cancer Society explicitly states that "because cancer of the nasal cavity and paranasal sinuses occur so rarely, routine testing of people without any symptoms **is not recommended.**" (Rec. Doc. 2769-2, p. 21).  Plaintiffs instead argue that Kornberg's medical monitoring opinion should be admissible because of Kornberg's "qualifications and intellectual rigor with which he approached the issue."  (Rec. Doc. 2984, p. 14).  Gulf Stream is not quite certain what this means or how it proves that Kornberg employed a reliable methodology. Plaintiffs do not provide any explanation for its argument that "there is no reason to question the reliability of [Kornberg's] prescription."  *Id.*

Plaintiffs also claim that Gulf Stream has presented no valid reason for negating Kornberg's "clinical judgment concerning the proposed medical monitoring program." *Id.* at 15.  Gulf Stream, however, provided multiple reasons for negating Kornberg's "clinical judgment." (Rec. Doc. 2769-2, pp. 16-23).  These reasons were described in detail in Gulf Stream's memorandum in support of motion *in limine* to exclude the expert testimony of Kornberg.  Those reasons can be summarized as follows:

---

[2] Exhibit "A," Deposition of Dr. Janet Barnes (6/4/09) p. 94.
[3] (Rec. Doc. 2769-2, p. 14).

1.  Plaintiffs' own epidemiologist, Dr. Gerald McGwin, could not associate nasopharyngeal cancer to formaldehyde at the level present in Cooper's EHU;

2.  Kornberg admits that he has not done the necessary studies to draw the conclusion that there is an association between nasopharyngeal cancer and formaldehyde at the level present in Cooper's EHU;

3.  The American Cancer Society does not recommend medical monitoring for cancer of the nasal cavity and paranasal sinuses;

4.  Regulatory risk assessments, utilized by Kornberg, cannot provide the requisite reasonable certainty required to show a medical monitoring injury;

5.  Kornberg's calculations are admittedly based on the linear non-threshold model – a method courts describe as "failing all of the Daubert reliability factors;"

6.  Kornberg's medical monitoring opinion exposes Cooper to unnecessary and unwarranted levels of radiation because of his recommended x-rays and CT scans – putting Cooper at a risk 48.7 times greater than his alleged risk from formaldehyde exposure;

7.  The background risk (incidence) of nasal cancer is 1/1000 lifetime in men. If Kornberg's scientific bases for medical monitoring were correct, all men should be in a medical monitoring program for nasal cancer.

(Rec. Doc. 2769-2, p. 16-23).

Plaintiffs offer little opposition to Gulf Stream's arguments that Kornberg's medical monitoring opinions are not supported by the relevant scientific community, are not based on reliable scientific methodology, and lack any suggestion of objectivity.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS, PFISTER, & WEINSTOCK**

s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495**
**JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002

Telephone: (504) 832-3700
Fax: (504) 837-3119
andreww@duplass.com
jglass@duplass.com
***DEFENSE LIASON COUNSEL***

## **C E R T I F I C A T E**

I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )   Hand Delivery                ( )   Prepaid U.S. Mail

( )   Facsimile                    ( )   Federal Express

(X)   CM/ECF

New Orleans, Louisiana this 3rd day of September, 2009.

                                          s/Andrew D. Weinstock
                             _____
                             ANDREW D. WEINSTOCK #18495
                             andreww@duplass.com