UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | 07-md-1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | SECTION: N(5) |
| | LITIGATION | * | |
| | | * | JUDGE: ENGELHARDT |
| | | * | |
| | | * | MAG: CHASEZ |

This document is related to:
*Charlie Age, et al. v. Gulf Stream Coach, Inc., et al., No. 09-2892*
Alana Alexander, Individually and on behalf of Christopher Cooper
*************************************************************************

**REPLY TO PLAINTIFF'S RESPONSE TO FLUOR ENTERPRISES, INC.'S MOTION FOR SUMMARY JUDGMENT BASED ON THE GOVERNMENT CONTRACTOR DEFENSE**

Defendant, Fluor Enterprises, Inc. (**FEI**), replies to the Alexander plaintiffs' opposition (Rec. Doc. 2889) to FEI's motion for summary judgment based on the government contractor defense (Rec. Doc. 2802).

The government contractor defense and corresponding tort liability immunity are predicated on the satisfaction of a simple three part test.[1] FEI easily meets the three conditions for dismissal under the government contractor defense. FEI produced "credible evidence" in support of the defense. Plaintiffs have failed to present specific facts showing there is any genuine issue for trial. Plaintiffs controvert FEI's Statement of Uncontested Material Facts, but fail to present or cite to *any* evidence to rebut those facts.[2] Summary judgment is appropriate because no reasonable jury could find for plaintiffs on the facts presented. See Boyle v. United

---

[1] See FEI's MSJ, Rec. Doc. 2802-2, p. 16 (setting forth the test).
[2] Plaintiff's Statement of Material Facts, Rec. Doc. 2889-2.

Technologies, 487 U.S. 500, 514 (1988); Szigedi v. The Ensign-Bickford Co., 2002 U.S. Dist. Lexis 26239, *16 (M.D. N.C. 2002).  Accordingly, the court should hold that the government contractor defense bars plaintiffs' claims entirely.

**1.     The Government Provided Reasonably Precise Specifications For FEI's Installation Work**

Plaintiffs now question only FEI's installation work.  Boyle's defense requires reasonably precise rather than absolutely precise specifications.[3]  It is undisputed that FEMA exercised its discretion and specifically chose the installation design for the trailers.  FEMA's design was based on its prior experience with emergency housing and procedures that FEMA employed after prior disasters in Florida and elsewhere.  FEMA mandated that FEI "block the trailers to preserve their useful life span *and* ensure the safety of the occupants."  (See Ex. 3 to FEI's MSJ, Rec. Doc. 2802-9, FEMA's email)(emph. added).  "Blocking" was FEMA's design safety feature.

Plaintiffs concede that the Government provided FEI with reasonably precise specifications directing FEI to install the trailers by "blocking" – placing them on concrete blocks in a precise manner.  Exhibit Seven to the IA/TAC contained the Government's specifications for "blocking" the trailers.[4]  The plaintiffs further concede that: "'blocking' ... meant raising the plaintiffs' travel trailer several feet into the air and off of its wheel base, and setting it on concrete blocks."[5]  Plaintiffs' definition for blocking must be read in conjunction with plaintiffs' admission that the Government provided blocking specifications.  Thus, from plaintiffs' own pleadings, the Court must conclude that the Government approved reasonably precise specifications for the very same work that plaintiffs complain of – raising travel trailers several feet into the air, off of their wheel base, and onto concrete blocks.  The Government's

---

[3] 487 U.S. at 511-12.
[4] See FEI's MSJ, Rec. Doc. 2802-2, p. 4; Ex. 1, the Contract, Ex. 7.
[5] Rec. Doc. 1, par. 38.

mandatory requirement for FEI to "block" the trailers *is* the precise installation "feature" plaintiffs complain about.

Moreover, Exhibit Seven shows the Government provided specifications that addressed in reasonable detail, the task of raising the trailers onto blocks: "travel trailers shall be set-up on concrete piers and after the weigh [sic] of the travel trailer is transferred to the piers," "the piers must be vertically aligned ... ."[6]  Plaintiffs claim that the Government should have approved different specifications with more detail or additional steps.  Plaintiffs, however, cannot claim that the Government's specifications did not address blocking, which included and necessarily entailed jacking up the trailers.  The Court must reject plaintiffs' fundamental contention that the defense may apply only if the government provided more precise specifications, which is contrary to the case law.  Kerstetter, 210 F.3d at 436-37 (rejecting plaintiffs' "should have" argument); Stout, 933 F.2d at 433-36 (same).[7]

Plaintiffs' attempt to separate out of the entire blocking process one discreet function, myopically fixating on how FEI raised the trailers from the ground onto the piers, is too narrow a focus under the government contractor defense. Plaintiffs' view would render the defense illusory.  That FEMA did not explicitly tell FEI how to get the trailers off of the ground and onto the piers is irrelevant for application of the defense.  Plaintiffs' argument misconceives the nature of what the contract was about and defines the alleged defective design too narrowly.  The courts do not take so restrictive a view of what constitutes "reasonably" precise specifications, employing a much broader application, focusing instead on government approval of "**the overall**

---

[6] Id.
[7] See, e.g., Baldasarro v. United States, 64 F.3d 206, 211 (5th Cir. 1995) "almost any exercise of governmental discretion could be overly parsed so as to focus on minute details of sub-decisions to the point that any relationship to policy would appear too attenuated.  But doing that obscures the very purpose of the discretionary function exception.  That purpose is to prevent judicial 'second guessing' of decisions arising from and grounded in policy." (citing United States v. Gaubert, 499 U.S. 315, 323 (1991)).

**design**."  Lambert v. B.P. Prods. N. Am., Inc., 2006 U.S. Dist. Lexis 16756 (S.D. Ill. 2006)(quoting Stout, 933 F.3d at 331).[8]  The Fifth Circuit has held that the specifications need not address the specific defect alleged; the Government need only evaluate the design feature in question.  Kerstetter, 210 F.3d at 435.  The design feature in question is the Government's own blocking specifications.  Thus, the requirement of "reasonably precise specifications" does not, as plaintiffs contend, mean that the Government must exercise discretion with regard to the *specific* feature alleged to be defective.  See Hill v. Raytheon, 470 F.Supp. 1214, 1224 (D.Kan. 2006)(citing Stout, 933 F.3d at 334-36).

Plaintiffs' statement that the first element of the defense requires the government to provide "precise" specifications "leaving no discretion to the contractor," is a misstatement of the law and Boyle, 487 U.S. at 513.  In fact, Boyle states just the opposite.  The Court rejected the "alternative formulation" of the defense adopted by the Eleventh Circuit "[t]hat would preclude suit only if (1) the contractor did not participate, or participated only minimally, in the design of the defective equipment ... ."  Id. at 513.  Plaintiffs' restrictive interpretation that the defense is precluded where the contractor has *any* or minimal discretion is contrary to the case law and common sense.  Even if FEMA's blocking specifications gave FEI any discretion as to how to get the trailer off the ground and onto the piers, FEI is insulated from liability by the defense.  **Boyle does not require that the government issue standards which remove all compliance discretion from the contractor.**  Carley v. Wheeled Coach, 991 F.2d 1117, 1125 (3d. Cir. 1993); Hill v. Raytheon Aircraft Co., 470 F.Supp. 2d 1214, 1224 (D. Kan. 2006).  The Carley court instructed:

> [T]he government need not deprive the manufacturer of all discretion pertaining to a **particular design** in order for the government contractor defense to apply.

---

[8] See case law and FEI's argument on this point, MSJ Rec. Doc. 2802-2, p. 17-19.

4

991 F.2d at 1125.

The design feature is the Government's requirement to block the trailers. FEI had no discretion as to whether or not to block the trailers. Any discretion regarding how to lift up the trailers onto the blocks comprised a necessary part of the overall blocking design. Further, common sense dictates that the Government did not need to tell FEI something so basic as to how to raise the trailers, just like a carpenter does not need to be told whether to drive a nail using a hammer or a nail gun. (See depo. of Charles Whitaker, quoted by plaintiffs on p. 8 of their opposition)("what you're saying about means and methods ... just like if you're saying would they tell a carpenter how to hold a hammer and how to drive a nail, no, they didn't tell us how to do that").

Additionally, numerous courts have held that the first element under Boyle may be established if long-term governmental use of a product is shown. Lambert, 2006 U.S. Dist. Lexis 16756, *22-23 (S.D. Ill. 2006); Ramey v. Martin-Baker Aircrafts Co., 874 F.2d 946, 950 (4th Cir. 1989)(long-term government **experience** with a product is one of the ways in which to establish approval of reasonably precise specifications); Haltiwanger v. Unisys Corp., 949 F.Supp. 898, 904 (D.D.C. 1996)(long-term use of a given design often indicates de facto acceptance of the design and thus constitutes approval for purposes of the Boyle test)(emph. added).[9] It is undisputed that FEMA had long-term experience with providing travel trailers to disaster victims prior to Hurricane Katrina, including blocking trailers, and FEMA made the discretionary decision to continue using blocked trailers for the Hurricane Katrina response.[10]

Plaintiffs cite Trevino v. Gen. Dynamics, 865 F.2d 1474 (5th Cir. 1989) at length. Trevino applies only "[i]f the government delegates the design discretion to the contractor." Id.

---

[9] See also Dowd v. Textron, 792 F.2d 409, 412 (4th Cir. 1986) cert. denied, 487 U.S. 1233 (1988).
[10] See generally Decl. of David Garrett (FEMA, Rec. Doc. 1545-32, art. 13).

5

at 1480.  Trevino does not apply here.  The Government never tasked FEI with *designing* anything.  Regardless, unlike Trevino's "rubber stamp" and minimal governmental involvement, the Government actively inspected and supervised FEI's work.[11]  Here, FEMA, a sophisticated entity with a full complement of engineers, chose to be responsible for the specifications of the design feature.  Even in Trevino, the court recognized that the government exercises its discretion over the design when it actually chooses a design feature.  The proper focus is on the Government's overall design for trailer installation, not on one discreet component of the overall design.

### 2.     FEI's Work Conformed To FEMA's Trailer Installation Specifications

Plaintiffs' argument on nonconformity fails as a matter of law.  Plaintiffs argue that FEI's work failed to comply with "FEMA's reasonably precise specifications."  To establish that FEI has not met the second prong of Boyle, plaintiff must identify a "specification" that FEI deviated from in installing the trailers.  Plaintiffs have not and they cannot.  Even under plaintiffs' argument, there is no evidence that FEI deviated from a required "design" specification.  Plaintiffs' argument that FEI failed to comply with FEMA's reasonably precise specifications is contradictory and illogical.  One the one hand, plaintiffs argue how FEI jacked up the trailers "deviat[ed] from FEMA's reasonably precise specifications:"

> FEI's deviation from FEMA's reasonably precise specifications – including ... improper 'jacking' techniques – resulted in greater rise of formaldehyde ... .[12]

Conversely, on the other hand, plaintiffs argue that "FEMA provided no specifications regarding the 'jacking up' of the mobile trailers."[13]  Plaintiffs cannot have it both ways.  Cf. Hall v. GE Plastic, 327 F.3d 391, 396 (5th Cir. 2003)(plaintiffs may not assert conflicting positions for

---

[11] FEI's MSJ, Rec. Doc. 2802-2, p. 8-12.
[12] Plaintiffs' opposition, p. 14-15, p. 12 ("FEI's departure from specifications resulted in**,** inter alia, the warping and loosening of wall panels in the trailer ... increas[ing] the level of ... formaldehyde ... .") (emph. added).
[13] Plaintiffs' opposition, p. 8 (emph. added).

6

their own advantage).  Plaintiffs' arguments regarding the first two conditions of the defense are inconsistent and should be rejected.

Plaintiffs' expert (Alex Mallet) only addresses FEI's alleged "jacking up" technique; he does not contend or provide any evidence that FEI failed to follow any specifications actually provided by FEMA.  In any event, FEI satisfied this condition with evidence that the Government inspected, expressly accepted as complete and used FEI's work.[14]  Contrary to plaintiffs' contention that such establishment is "rare," compliance shown by use of work is common under the case law.  And, there was a "back and forth" between the Government and FEI to ensure that FEI's work conformed to the Government's specifications on trailer blocking.[15] Moreover, "[a] finding of nonconformity requires more than evidence that the ultimate design feature did not achieve its intended goal": "[a] product conforms to reasonably precise specifications if it satisfies an intended configuration even if it may produce unintended and unwanted results."  Szigedi, 2002 U.S. Dist. Lexis at *23-24 (quoting Kleemann, 890 F.2d at 703)(emph. added)(quoting Harduvel, 878 F.2d at 1317)(it is not enough simply to argue that the ultimate design failed to produce a product that performed properly).  Id.  FEI's trailer installations conformed to FEMA's blocking configuration diagrams.

Finally, FEI proved FEMA evaluated and expressly accepted as complete all of FEI's work.[16]  Plaintiff does not rebut this fact with any evidence.  Plaintiffs' argument that FEMA could only accept FEI's work with a military form DD250, strictly pertaining to military procurement contracts is misplaced.  EHU's are not military aircrafts and the reasoning is not the same.  Plaintiffs' citation of Trevino, for the proposition that the Government's signature formally

---

[14] See FEI's discussion and case law cited in FEI's MSJ, Rec. Doc. 2802-2, p. 6-11 & 19-23.
[15] See FEI's MSJ, Rec. Doc. 2802-2, p. 7-8.
[16] See Ex. 8, **FEMA's Acceptance of Task Order Services**, to FEI's MSJ, Rec. Doc. 2802-14; **Decl. of Charles Whitaker**, art. 19.

7

accepting FEI's work was insufficient, misstates Trevino. Plaintiffs' reliance on Trevino is out of context and applies strictly to what constitutes "approval" of a product design under the first element of the defense – not what constitutes conformance of the work under the second element. This is starkly distinguishable from the Government's signature formally accepting all of FEI's work under the contract.[17] Therefore, there is no genuine issue of fact with respect to conformance to the government specifications.

3. **FEI Had No Actual Knowledge Not Otherwise Known To The Government About Alleged Formaldehyde Dangers**

Plaintiffs did not submit any evidence to rebut FEI's lack of "actual knowledge" of any "danger" regarding potential formaldehyde claims that was not known to the Government. Plaintiffs assert that FEI "should have known" of formaldehyde dangers because of its status as a contractor. But, "should have known" is not the test; "actual knowledge" is the requirement. "The government contractor defense does not require a contractor to warn the government of defects about which he only should have known." Kerstetter, 210 F.3d at 436; Miller, 275 F.3d at 422.[18] Knowledge about the mere "existence" of formaldehyde used in "mobile homes" does not show awareness of any problem with formaldehyde in travel trailers. Further, FEMA was well aware of the presence of formaldehyde: "It was no surprise that the travel trailers contained formaldehyde." It was known to FEMA that not only an industry standard travel trailer, but also a conventional home, would contain formaldehyde.[19] It is undisputed the Government's knowledge about formaldehyde claims preceded and exceeded any actual knowledge FEI had of formaldehyde claims. It is well documented FEMA knew about formaldehyde concerns in

---

[17] See also Decl. of Charles Whitaker, Rec. Doc. 2802-4, art. 19 (also stating FEMA accepted FEI's work).
[18] See FEI's MSJ Rec. Doc. 2802-2, p. 11-12, 23-25.
[19] See Gulf Stream's Ex. E to its MSJ, Depo. of Martin McNeese (FEMA), p. 35, 107-8 & memo p. 12-14.

EHUs (in Oct. 2005)[20] long before FEI ever had any actual knowledge of such concerns. It is undisputed that prior to March 2006, FEI had not received any complaints about formaldehyde concerns in travel trailers. If anyone was an expert regarding the use and installation of travel trailers to house disaster victims, it was FEMA, which had used travel trailers in prior disasters. FEI had no knowledge that there was any formaldehyde danger allegedly caused by its installation of the travel trailers in accordance with FEMA's specifications.

## Conclusion

Thus, the evidence shows that FEI is entitled to the government contractor defense. The Government provided reasonably precise specifications for FEI's installation work, FEI complied with those specifications, and FEI had no actual knowledge not otherwise known to the Government about alleged formaldehyde dangers. Plaintiffs' allegations that FEI was "negligent in 'blocking' the trailers," is displaced by the government contractor defense. Plaintiffs failed to present specific facts showing there is a genuine issue for trial. FEI has met its burden on summary judgment and, consequently, the defense bars all of plaintiffs' products liability and negligence claims, including alleged failure to warn. See Szigedi, 2002 U.S. Dist. Lexis at *16 (citing Tozer v. LTV Corp., 792 F.2d 403, 408 (4th Cir. 1986)). This Court should grant summary judgment dismissing all of plaintiffs' claims against FEI with prejudice.

    Respectfully submitted,

    **MIDDLEBERG, RIDDLE & GIANNA**

    BY:    */s/ Sarah A. Lowman.*
        Dominic J. Gianna, La. Bar No. 6063
        Sarah A. Lowman, La. Bar No. 18311
        201 St. Charles Avenue, Suite 3100
        New Orleans, Louisiana 70170
        Phone: (504) 525-7200, Fax: (504) 581-5983
        *-and-*

---

[20] See the evidence cited in FEI's MSJ, Rec. Doc. 2802, p. 11-12.

             Charles R. Penot, Jr. (La. Bar No. 1530 &
             Tx. Bar No. 24062455)
             717 North Harwood, Suite 2400
             Dallas, Texas 75201
             Phone: (214) 220-6334; Fax: (214) 220-6807
               *-and-*
             Richard A. Sherburne, Jr., La. Bar No. 2106
             450 Laurel Street, Suite 1101
             Baton Rouge, Louisiana 70801
             Phone: (225) 381-7700, Fax: (225) 381-7730
             **ATTORNEYS FOR FLUOR ENTERPRISES, INC.**

## CERTIFICATE OF SERVICE

   I hereby certify that on September 1, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record, including court-appointed liaison counsel, who are CM/ECF participants.

             */s/ Sarah A. Lowman*
             **SARAH A. LOWMAN**

ND: 4819-2575-6676, v. 1