UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | * | |
| *Inc., et al*, Docket No. 09-2892; | * | |
| Alana Alexander, individually and on behalf | * | |
| Of Christopher Cooper | * | |

**PLAINTIFF'S SUR-REPLY TO DEFENDANT GULF STREAM
COACH, INC.'S REPLY MEMORANDUM TO PLAINTIFF'S
RESPONSE TO THE MOTION *IN LIMINE* TO EXCLUDE
EXPERT TESTIMONY OF JAMES P. KORNBERG., M.D., SC.D.**

Plaintiff Alana Alexander, individually and on behalf of Christopher Cooper, files this Sur-Reply to Defendant Gulf Stream Coach, Inc.'s Reply Memorandum to Plaintiff's Reply to Defendant's Motion *in Limine* to Exclude Expert Testimony of James P. Kornberg, M.D., SC.D.

**I.
ARGUMENT**

1. <u>Dr. Kornberg's opinions relating to a new asthmatic illness arose from a sound scientific basis.</u>

Dr. Kornberg explained that at levels comparable to those to which Christopher Cooper was exposed for nineteen months in his Gulf Stream trailer, formaldehyde is capable of causing a new asthmatic illness. This opinion is well-founded in the scientific literature. The new illness stems from tissue damage at the cellular level, and is manifest by an alteration in response to

1

irritants – the effected individual responds to irritants with a lower level of physiological function than would be expected, with or without pre-existing asthma. Proof of this new formaldehyde-induced illness, therefore requires demonstration in the scientific literature of the following: (1) formaldehyde's capability to damages cells at relevant exposure levels; and (2) formaldehyde's capability to cause lowered physiological functioning at relevant levels. The studies Dr. Kornberg reviewed demonstrated both.

Using the numerous testing results provided him, Dr. Kornberg determined that Christopher was chronically exposed to formaldehyde at levels between 50 and 100 ppb; and for short periods, experienced levels up to 200-300 ppb.[1] These are thus the relevant exposure levels.

The published, peer-reviewed studies Dr. Kornberg relied on to show the capability of formaldehyde at relevant levels to damage cells included the following:

- Edling[2] assessed the difference in cytogenetic effects between a control group of non-exposed workers and a group of workers exposed to formaldehyde at levels of 81.3 - 894.3 ppm for a mean duration of 10.5 years. The exposed group demonstrated cellular damage as increased loss of ciliated cells, goblet cell hyperplasia (cell proliferation), squamous metaplasia (cell type conversion) and mild dysplasia (cell maturation abnormalities). *See* Exhibit 1.

- Holmstrom[3] examined the histological changes in the nasal mucosa of workers exposed to formaldehyde at 41 - 407 ppm. As compared to a control group of non-exposed workers, the exposed group exhibited cellular damage as significantly increased loss of ciliated cells, goblet cell hyperplasia, and cuboidal and squamous cell metaplasia that replaced normal epithelium. *See* Exhibit 2.

---

[1] *See* Kornberg Affidavit B, p. 20.
[2] Edling,(Occupational exposure to formaldehyde and histopathological changes in nasal mucosa," Br. J Indus Medicine, 45, 761-765, 1988.
[3] Holmstrom, "Histological changes in the nasal mucosa in persons occupationally exposed to formaldehyde alone or in combination with wood dust," Acta Otolaryngol (Stockh) 107, 120-129, 1989.

These two studies prove that formaldehyde exposure in concentrations in the same range as Christopher's exposure does, in fact, damage cells.

Among the studies Dr. Kornberg relied on for the fact that formaldehyde can cause lowered physiological functioning at the relevant exposure levels are the following:

- Wantke[4] evaluated the association between children's symptoms and formaldehyde exposure at school at concentrations of 43 - 75 ppm. The study indicated that aside from the irritant action of formaldehyde, the exposure caused atopy (an allergic hypersensitivity affecting parts of the body not in direct contact with the allergen.) *See* Exhibit 3.

- Krzyzanowski[5] assessed children, ages 6-15 years, whose homes measured 26 - 140 ppm formaldehyde. The study reported an increased rate of physician-diagnosed chronic bronchitis and asthma. *See* Exhibit 4.

- Garrett[6] investigated the relation between formaldehyde exposure at a median level of 12.6 ppm, and an initial asthma diagnosis in a group of 148 children ages 7-14. The study confirmed a relationship between the exposure and a diagnosis of asthma in homes with parents who had no history of asthma. *See* Exhibit 5.

- Smedje[7] demonstrated an increased incidence of initial diagnoses of asthma in children exposed to formaldehyde at school at levels of <4.1 - 58.5 ppm. *See* Exhibit 6.

- Franklin[8] used exhaled nitric oxide levels as an indicator of respiratory inflammation. The group of 224 healthy children ages 6-13 years who had been chronically exposed to formaldehyde levels averaging 50 ppm in their homes exhibited significantly elevated exhaled nitric oxide levels. *See* Exhibit 7.

---

[4] Wantke F, Demmer CM, Trappler P, et al. Exposure to gaseous formaldehyde induces IgE-mediated sensitization to formaldehyde in school-children. Clin Exp Allergy, 36:276-280, 1996. (Attached as Exhibit 10 to Dr. Barnes's affidavit)

[5] Krzyzanowski M, Quackenboss JJ, Lebowitz MD. Chronic respiratory effects of indoor formaldehyde exposure. Environ Res, 52:117-125, 1990. (Attached as Exhibit 3 to Dr. Barnes's affidavit)

[6] Garrett MH, Hooper MA, Hooper BM, et al. Increased risk of allergy in children due to formaldehyde exposure in homes. Allergy, 54:330-337, 1999. (Attached as Exhibit 2 to Dr. Barnes's affidavit)

[7] Smedje G, Norback D. Incidence of asthma diagnosis and self-reported allergy in relation to the school environment-a four-year follow-up study in schoolchildren. Int J Tuberc Lung Dis, 27:1059-1066, 2001. (Exhibit 4 to Kornberg deposition)

[8] Franklin P, Dingle P, Stick S. Raised exhaled nitric oxide in healthy children is associated with domestic formaldehyde levels. Am J Respir Crit Care Med, 161:1757-1759, 2000. (Exhibit 2 to Kornberg deposition)

These studies, taken together, form a solid scientific basis for demonstrating that formaldehyde exposure at levels similar to Christopher's exposure levels has a detrimental physiological effect resulting in symptoms not otherwise explained.

Dr. Kornberg relied on published, peer-reviewed scientific studies to reach his general causation conclusion that formaldehyde exposure is capable of causing an illness that is different from pre-existing asthma. The studies illustrate that formaldehyde exposure alone is capable of injuring tissue at the cellular level, and that formaldehyde exposure alone is capable of causing asthma-like symptoms in healthy individuals. In a person with pre-existing asthma, formaldehyde-induced injury would be superimposed on the pre-existing condition, and would be expected to produce symptoms over and above those resulting from the pre-existing asthma. Dr. Kornberg's general causation opinion is thus rationally founded on the scientific literature, and is therefore admissible.

2. Dr. Kornberg's specific causation opinions are reliable.

Dr. Kornberg's specific causation opinion is reliable even though he did not himself examine Christopher. Dr. Kornberg's role in this litigation was not to perform a medical differential diagnosis. That was done by Christopher's pediatrician. Dr. Kornberg's directive was instead to perform a comprehensive environmental analysis to determine the cause of Christopher's symptoms. Dr. Kornberg not only reviewed all of Christopher's medical records not destroyed as a result of Hurricane Katrina, but interviewed Christopher's mother and treating pediatrician, and referred Christopher for testing to Dr. Pacheco at the National Jewish Hospital in Denver. He then evaluated all of the available information from a medical, environmental,

and toxicological viewpoint to arrive at his specific causation conclusion. His methodology comports with that promulgated by the Reference Manual on Scientific Evidence:

> Many conditions resulting from toxic exposures are similar or identical in clinical manifestations to conditions arising from nontoxic causes. Physicians rely on their training and expertise as clinicians and scientists when considering the medical and scientific literature as well as information about a patient's condition to best determine causality in a particular patient. Definitive tests for causality are actually rare, and physicians must almost always use an element of judgment in determining the relationship between exposure and disease in a particular patient.

*See* REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, pp. 470-71 (2nd ed. Federal Judicial Center (2000).

As Dr. Kornberg coherently explained, his conclusion that Christopher is suffering from formaldehyde-induced, non-specific mucosal hyper-reactivity rests on two elements: (1) Christopher's medical, social and environmental history, and (2) the objective findings of Drs. Pacheco and Barnes.

Christopher's history revealed that prior to his occupation of the Gulf Stream trailer, his asthma had been improving. He had not required hospitalization in over four years. This improvement is consistent with the natural course of the disease, which is to lessen in severity as a child ages.

After moving into the Gulf Stream trailer, however, Christopher's symptoms gradually worsened, until after sixteen months of occupancy, he had to be treated in the Children's Hospital emergency room. Epithelial cell changes, described by Dr. Barnes as "boggy nasal turbinates," became apparent. Neither the natural course of asthma, nor Christopher's actual experience with the illness is consistent with such an extreme decompensation. As Dr. Kornberg rationally concluded, the demonstrable formaldehyde levels in his Gulf Stream trailer, which

have been shown to independently cause asthma-like symptoms and cellular damage, fits Christopher's clinical profile as the probable causative factor. This conclusion is based on reliable science, reliable medical records, and a rational analysis with no evidence of gaps.

Dr. Kornberg's opinion as to permanency is based on Christopher's clinical signs and symptoms of non-specific mucosal hyper-reactivity 16 ½ months after his formaldehyde exposure ended. In May of 2009, Christopher demonstrated a positive result to Dr. Pacheco's methacholine challenge, which established "severe bronchial hyper-responsiveness." Following the methacholine challenge, a laryngoscopy revealed both inspiratory and expiratory vocal cord dysfunction, another significant finding in the diagnosis of mucosal hyper-reactivity. At that time, Dr. Pacheco determined that chronic irritants which could represent possible confounders, such as second-hand smoke, were absent from his environment. Also absent were demonstrated allergies to molds, cats, and dogs. Dr. Kornberg's conclusion, based on objective test results, the elimination of possible alternate causative factors, and Christopher's medical and environmental history bears the hallmarks of scientific reliability.

3.      Dr. Kornberg's opinions on medical monitoring are reliable.

Dr. Kornberg designed a medical monitoring protocol specifically for Christopher. The protocol consisted of examinations by his treating physician, during which his asthma-like symptoms would be addressed and a visual cancer screening of his nose and throat would be conducted. Radiographic studies would be ordered by his treating physician only on an as-needed basis. Despite Defendant's argument to the contrary, Christopher would suffer no unwarranted exposure to radiation.

Defendant seriously misleads the court in claiming that Dr. Kornberg based his calculations on a linear non-threshold model. That term was not mentioned at all in Dr. Kornberg's affidavit, and was discussed in his deposition only to the extent that it related to the EPA's risk assessment.

Defendant's arguments concerning background risks of nasal cancer and the American Cancer Society's recommendations for medical monitoring in the general population are equally erroneous. During his 19 months in the trailer, Christopher Cooper was exposed to 17 times the amount of formaldehyde that the EPA has associated with an increased lifetime risk of cancer. This exposure, added to his clinical findings of epithelial cell damage, place him apart from the general population. Dr. Kornberg's clinical judgment that Christopher's condition requires monitoring on a regular basis is not only reliable, but entirely reasonable and should, therefore, be admitted.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
      GERALD E. MEUNIER, #9471
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:   504/522-2304
      Facsimile:   504/528-9973
      gmeunier@gainsben.com

>s/Justin I. Woods
>JUSTIN I. WOODS, #24713
>**PLAINTIFFS' CO-LIAISON COUNSEL**
>Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
>2800 Energy Centre, 1100 Poydras Street
>New Orleans, Louisiana 70163
>Telephone:   504/522-2304
>Facsimile:    504/528-9973
>jwoods@gainsben.com
>
>**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
>ANTHONY BUZBEE, Texas # 24001820
>RAUL BENCOMO, #2932
>FRANK D'AMICO, #17519
>MATT MORELAND, #24567
>LINDA NELSON, #9938
>MIKAL WATTS, Texas # 20981820
>Dennis Reich, Texas #16739600

## CERTIFICATE OF SERVICE

 I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission on September 8, 2009.

>/s/ Gerald E. Meunier
>Gerald E. Meunier, #9471