UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER FORMALDEHYDE
PRODUCTS LIABILITY LITIGATION

MDL NO: 1873

SECTION N(5)

JUDGE ENGELHARDT

THIS DOCUMENT IS RELATED TO:
*North American Catastrophe Service, Inc. v. Northfield Ins. Co.
No. 09-3818*

MAGISTRATE CHASEZ

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## NORTHFIELD INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE FOR CONVENIENCE TO MIDDLE DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1404(A)

**MAY IT PLEASE THE COURT:**

Defendant, Northfield Insurance Company ("Northfield"), respectfully submits this memorandum in support of its Motion to Transfer Venue to Middle District of Florida Pursuant to 28 U.S.C. § 1404(a) upon showing that venue is more convenient in Florida for the reasons discussed below.

### INTRODUCTION

On June 10, 2009, North American Catastrophe Service, Inc. ("NACS") filed the instant Declaratory Judgment Action against Northfield, seeking a determination that Northfield is obliged to defend and indemnify NACS against two underlying suits presently pending in the Eastern District of Louisiana. Specifically, NACS alleges that Northfield issued that certain policy of insurance bearing policy number CP494600 and covering the period August 25, 2004

1

through August 25, 2006 (the "Policy"), which obliges Northfield to defend and indemnify NACS against *Aldridge, et al., v. Gulf Stream Coach, Inc., et al.*, No. 07-9228 ("*Aldridge* Lawsuit") and *Montrell Sinegar, et al., v. Forest River, Inc., et al.*, No. 09-2926 ("*Sinegar* Lawsuit").

In sum and substance, both the *Aldridge* and *Sinegar* plaintiffs allege that they were exposed to elevated formaldehyde levels after Hurricance Katrina and Rita while occupying temporary housing units furnished by FEMA and procured by NACS. *See, generally, Aldridge* Lawsuit, Civ. Action No. 07-9228, Rec. Doc. 1, ¶¶ I, II, and IV and Civ. Action No. 07-1873, Rec. Doc. 1064, ¶¶ 10-11 and 65-74; *Sinegar* Lawsuit, Civ. Action No. 09-1926, Rec. Doc. 1 ¶¶ 15, 33-34, 59, and 112-121. According to the underlying plaintiffs, NACS identified, selected and procured the temporary housing units for FEMA but failed to consult with manufacturers about the use of the temporary housing units for extended occupancy or to research health concerns related to formaldehyde exposure to occupants of the temporary housing units. Civ. Action No. 07-1873, Rec. Doc. 1064 at ¶¶ 10-11 and 65-74; Civ Action No. 09-1926, Rec. Doc. 1 at ¶¶ 33-34, 59, 112-121. Plaintiffs seek to recover, among other things, the removal of all formaldehyde materials from the temporary housing units, testing of formaldehyde levels and emissions in the temporary housing units, medical monitoring, actual damages for bodily injuries, and punitive damages. Civ. Action No. 07-9228, Rec. Doc. 1 at Prayer; Civ. Action No. 09-1926, Rec. Doc. 1 at ¶122 and Prayer.

Importantly, the underlying plaintiffs' alleged injuries from formaldehyde exposure are among the type the injuries excluded by the Total Pollution Exclusion contained in the Policy. *See,* Policy, attached as Ex. A. Here, the Policy was negotiated, issued and delivered to NACS— a Florida resident—in Florida through a Florida insurance agent. *See,* Declarations Page listing

2

All Risks, Ltd. as agent in Jupiter, FL, attached as Ex. A. Putting aside the presence of the insurance agent, other witnesses, and documentary evidence concerning the issuance of the Policy and the parties' intent to the insurance contract, Florida law governs the Policy's interpretation. Under Florida law, the Total Pollution Exclusion has been declared unambiguous and is enforced as written to bar coverage for precisely these situations. Thus, the public and private interest factors governing §1404(a) motions warrant transferring venue to the Middle District of Florida for both convenience and the interests of the justice.

## LAW AND ARGUMENT

### I. Standard For Evaluating Motions To Transfer Under 28 U.S.C. §1404(a)

28 U.S.C. 1404(a) permits a federal district court to transfer a civil action to another venue upon a showing that the alternative venue is more convenient for the parties and benefits the interest of justice. Section 1404(a) provides in relevant part:

> (a) For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

A motion to transfer venue under 28 U.S.C. § 1404(a) should be granted upon a showing that the destination venue is more convenient. *In re Tech USA Corp.*, 551 F.3d 1315, 1319 ("Under Fifth Circuit law, a motion to transfer venue should be granted upon a showing that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff.") *citing to In re Volkswagon*, 545 F.3d 304, 315 (5th Cir. 2008); *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (5th Cir. 2009) (same); *Allen v. Erfon Marine & Industrial Supply, Inc.*, 2008 WL 4809476 *3 (E.D. La. Oct. 31, 2008) ("'When the movant demonstrates that the transferee venue is clearly more convenient...it has shown good cause and the district court should therefore grant the transfer,' even though the plaintiff has chosen the present venue.").

In the Fifth Circuit, the initial question under §1404(a) is whether a civil action could have been brought in the alternative venue. In considering whether an alternative venue exists, courts look to whether jurisdictional and venue requirements would have been satisfied in the alternative venue had the suit originally been filed there. *See, Cowan v. Ford Motor Co.*, 713 F.2d 100, 103 n.4 (5th Cir. 1983) *citing to Dusen v. Barrack*, 376 U.S. 612, 621-22, 84 S. Ct 805, 810-11 (1964); *Allen v. Erfon Marine & Industrial Supply, Inc.*, 2008 WL 4809476 *2 n.1 (E.D. La. Oct. 31, 2008) *citing to Hoffman v. Blaski*, 363 U.S. 335, 80 S. Ct. 1084 (1960).

Once it has been established that an alternative venue exists, the Fifth Circuit weighs certain "public" and "private" factors adapted from the *forum-non-conveniens*-analysis to ascertain whether transfer is appropriate. *In re Genentech*, 566 F.3d at 1342; *In re Volkswagon.*, 545 F.3d at 315 (adopting the private and public factors enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839, a *forum non conveniens* case). Those "private" and "public" interest factors can be summarized as follows:

**Private Interest Factors**
(1) The relative ease of access to sources of proof;
(2) The availability of compulsory process to secure the attendance of witnesses;
(3) The cost of attendance for willing witnesses; and
(4) All other practical problems that make trial of a case easy, expeditious and inexpensive.

**Public Interest Factors**
(1) The administrative difficulties flowing from court congestion;
(2) The local interest in having localized interests decided at home;
(3) The familiarity of the forum with the law that will govern the case; and
(4) The avoidance of unnecessary problems of conflict of law [or in] the application of foreign law.

*In re Volkswagon*, 545 F.3d at 315; *In re Genentech*, 566 F.3d at 1341; *In re TS Tech*, 551 F.3d at 1319.

In cases concerning transfers for convenience pursuant to 28 U.S.C. § 1404(a), while the *Gilbert* factors should still be considered, the moving party's burden will be less demanding than that of a moving party for a *forum non conveniens* dismissal and the federal courts can grant transfers upon a lesser showing of inconvenience. *Roulston v. Yazoo River Towing, Inc.*, 2004 WL 1687232 (E.D. La. 2004); *Mortensen v. Maxwell House Coffee Company*, 879 F. Supp 54 (E.D. Tx. 1995); *In Re Volkswagen*, 2008 WL 4531718. (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S. Ct. 544 (1955)). Specifically, in a section 1404(a) motion to transfer, the moving party is not required to show that the public and private interest factors as set forth in *Gilbert* "substantially outweigh the plaintiff's choice of venue," as he would be required to do for a *forum non conveniens* dismissal. *Roulston* 2004 WL 1687232.

Moreover, less deference will be accorded to a plaintiff's forum selection "when the operative facts of the dispute occur outside the plaintiff's chosen forum" and when the plaintiff does not reside in his chosen forum. *Day v. Burlington N. Santa Fe Ry. Co.*, 196 F. Supp. 2d 435, 436 (E.D. Tex. 2001) (according less deference to plaintiff's choice of forum when none of the other factors weighed in favor of retaining the case); *Sonic Drive In of Alexandria v. Dronet*, 968 F.Supp. 303, 305 (E.D. La. 1997).

## II. Plaintiff's Declaratory Judgment Action Could Have Originally Been Filed In The Middle District of Florida

As an initial matter, the Middle District of Florida as an alternative, more convenient forum has appropriate diversity jurisdiction over the instant matter and NACS could have originally filed suit there. First, the value of NACS's claim exceeds $75,000. Second, NACS and Northfield are completely diverse. Having been incorporated in Florida, NACS is a Florida

5

corporation. Moreover, NACS has its principal place of business in Melbourne, Florida. *See,* NACS' Complaint, Matter No. 09-3818, Rec. Doc. 1, ¶ III. Conversely, Northfield is incorporated in the State of Iowa with its principal place of business in Minnesota. Thus, the Middle District of Florida would appropriately exercise diversity jurisdiction.

Secondarily, venue is appropriate under 28 U.S.C. § 1391(a) and (c), which provide that venue is appropriate in any judicial district where a defendant resides and defendant corporations are deemed to reside in any judicial district in which the defendant is subject to personal jurisdiction. Here, Northfield has issued a policy of insurance to a Florida corporation in Florida and is subject to personal jurisdiction in Florida. Thus, NACS could have originally filed suit in the Middle District of Florida.

### III.    The Public and Private Interest Factors Weigh In Favor Of Transferring Venue to the Middle District of Florida

Because the Middle District of Florida is a valid, alternative venue, the next inquiry is whether the Middle of District of Florida is a more convenient venue. The balance of the "public" and "private" interest factors confirm that the Middle District of Florida is in fact more convenient, better serves the interest of justice, and may ultimately result in quicker resolution of the coverage dispute under the Policy.

#### A. The Public Interest Factors Establish That The Middle District of Florida Is A More Convenient Forum

The public interest factors concerning choice of law and the avoidance of unnecessary problems with the application of a foreign state's law mitigate in favor of transfer. This is so because the Policy—negotiated, brokered, and delivered to a Florida insured through a Florida agent in Florida—is governed by Florida law. *See, generally, Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S. Ct. 1020 (court sitting in diversity must apply forum's choice of

law principles); *Roberts v. Energy Development Corp.*, 104 F.3d 782, 786 (5th Cir. 1997) (same); La. C.C. art. 3537 (setting forth the choice-of-law analysis specific to contracts based upon certain factors, including "the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties"); *Levy v. Jackson*, 612 So. 2d 894, 897 (La. App. 4 Cir. 1993) (holding that insurance coverage disputes are contract issues governed by the choice-of-law articles specific to contracts).

Here, because Florida has the most contacts with the disputed insurance contract issued to NACS, Florida law governs the interpretation of that contract. *See*, La. C.C. arts. 3515 and 3537; *The Travelers Ins. Group Inc. v. O.C.S., Inc.*, 914 F. Supp. 126 (E.D. La. 1996) (interpreting policy under Texas law even though underlying tort occurred in Louisiana); *Harrison v. Morrison*, 37,992 (La. App. 2 Cir. 12/10/03); 862 So. 2d 1065, *writ denied*, 2004-0101 (La. 3/19/04), 869 So. 2d 857 (applying Mississippi law even though alleged pollution-related injuries occurred in Louisiana). Certainly, Florida courts are in the best position to apply Florida law.

In addition, the State of Florida has a vested interest in handling and regulating insurance disputes involving its citizens. For the sake of consistency and promoting the availability of insurance, the State of Florida is best charged with protecting the justified expectations of parties to the insurance contract. Indeed, interpretation of the Policy under any law other than Florida law would potentially result in inconsistent coverage under the same Policy for similar events occurring in two different states, frustrating the justified expectations of the parties. This is so because, under Florida law, total pollution exclusions such as that in the Northfield Policy are deemed unambiguous and applied as written to bar coverage. *Deni Assoc. of Florida, Inc. v. State*

*Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135 (Fla. 1998) (determining that pollution exclusion is unambiguous and finding no coverage for injuries resulting from indoor contamination); *cf. Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 3/16/01), 782 So. 2d 573; *Palm v. Stewart*, 2003-0594 (La. App. 3 Cir. 11/5/03); 858 So. 2d 790 (where a conflict exists between the law of two states, a detailed choice of law analysis becomes critical).

Finally, because NACS's Declaratory Judgment Action has been consolidated into the massive Formaldehyde Multi-District Litigation, there is a risk that resolution of the coverage dispute between Northfield and NACS will be delayed because of the sheer volume of other issues presently before the Court and looming trials. Moreover, the consolidation of the Declaratory Judgment Action into the Multi-District Litigation poses a daunting expense for Northfield, who is not involved in the MDL in any other capacity, but is nevertheless tasked with receiving, monitoring and staying abreast of all MDL-related filings and communications, which are both numerous and voluminous. Continuation of NACS's Declaratory Judgment Action as part of the MDL presents an undue and unnecessary expense when the coverage issues teed up in NACS's Declaratory Judgment Action could be resolved quickly by the Middle District of Florida.

### B. The Private Interest Factors Establish That The Middle District of Florida Is A More Convenient Forum

While the Total Pollution Exclusion in the Policy is unambiguous and will be applied as written under Florida law to bar coverage for the types of injuries alleged in the *Aldridge* and *Sinegar* Lawsuits, to the extent a question arises regarding the contract formation or content of the contracts, all of the key witnesses reside in Florida. This is so because resolution of the coverage dispute between NACS and Northfield will not require the Court to decide the merits of

8

the underlying Lawsuits. Rather, the duty to defend is based solely upon the allegations in the *Aldridge* and *Sinegar* Lawsuits measured against the Policy language. *See, Biltmore Const. Co., Inc. v. Owners Ins. Co.*, 842 So. 2d 947 (Fl. App. 2 Dist. 2003). Thus, no testimony is required from the underlying plaintiffs to ascertain whether Northfield is obliged to defend NACS.

Rather, the declaratory judgment action concerns only the contractual relationship between NACS and Northfield—a relationship that is exclusive to the state to Florida. Toward that end, NACS resides in Florida and, to the extent the Policy was negotiated, brokered and delivered in Florida, witnesses for NACS are located there as well. Moreover, the insurance agent who procured the Policy, along with his files, is in Florida.

Under the Fifth Circuit's 100-mile rule, the location of the insurance agent and NACS witnesses confirms that Florida is more convenient. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established…a '100-mile' rule," which holds that the inconvenience to witnesses increases in direct relation to the additional distance to be traveled between a proposed venue and the existing venue. *In re TS Tech*, 551 F.3d at 1320. Here, the agent and NACS witnesses are all located more than 100 miles from the Eastern District of Louisiana. Moreover, the insurance agent, along with its file and other documentary evidence, is located outside of the subpoena power of this Court, making it difficult to obtain witness and documents should they become necessary. Based on these factors alone, the Middle District of Florida proves to be a more convenient forum.

## CONCLUSION

The Middle District of Florida is a more convenient forum not only because potential witnesses and documentary evidence are located there, but also because Florida has a vested

9

interest in regulating and applying insurance policies under Florida law vis-à-vis Florida citizens. For that reason, Northfield respectfully requests that this matter be transferred to the Middle District of Florida for further handling.

Respectfully submitted,

*/s/ Ralph S. Hubbard III*

**RALPH S. HUBBARD III, T.A., La. Bar # 7040**
**TINA L. KAPPEN, La. Bar #29579**
**LUGENBUHL, WHEATON, PECK,**
**RANKIN & HUBBARD**
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
**Attorneys for Northfield Insurance Company**

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of September, 2009, a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system and notice of this filing was sent to all know counsel of record by operation of the court's electronic filing system.

*/s/ Ralph S. Hubbard III*