UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
|     FORMALDEHYDE | * | |
|     PRODUCTS LIABILITY | * | |
|     LITIGATION | * | SECTION: N(5) |
| | * | |
| This Document Relates to: | * | |
| *Charlie Age, et al. v.* | * | JUDGE: ENGELHARDT |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | |
| | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF GULF STREAM COACH, INC.'S
MOTION *IN LIMINE* TO LIMIT OPINIONS AND TESTIMONY
OF ALEXIS MALLET BASED UPON THERMOGRAPHIC IMAGING[1]**

**MAY IT PLEASE THE COURT:**

Gulf Stream Coach, Inc. respectfully submits the following Memorandum in Support of its Motion in Limine to Limit Opinions and Testimony of Alexis Mallet Based Upon Thermographic Imaging:

### I. Thermographic Imaging Tests by Alexis Mallet

Plaintiffs intend to offer expert testimony through plaintiffs' expert "building scientist," Alexis Mallet, that the trailer's building envelope and/or HVAC system ductwork exhibited excessive leakage (i.e. air allowed to infiltrate into the unit and/or escape out of the air conditioning ductwork allegedly resulting in a negatively pressurized environment in the trailer).

---

[1] Gulf Stream Coach, Inc. is mindful of the Court's 9/4/09 Order (Doc. 3054) on this issue regarding the various testing of the trailer on May 6-7, 2009 and that the Court held therein that while blower door and duct blaster testing (and opinions based thereon) were excluded, thermographic image results (and opinions based upon same) would be admissible. However, follow-up work in preparing this matter for trial after the September 4, 2009 conference call with the Court on this issue, its subsequent Order above and the Order of 9/11/09 granting and denying in part Gulf Stream Coach, Inc.'s Motion in Limine to Exclude Expert Testimony of Alexis Mallet (Doc. 3218), has revealed that **the thermographic image tests performed by Alexis Mallet (and upon which he bases his opinions on duct/building leakage) took place during and as a part of and are based entirely upon the excluded blower door and/or duct blaster testing.** As such, the thermographic imaging constitutes "results of" and falls within the "changed and manipulated" conditions induced in the trailer during and as a result of the excluded blower door and duct blaster tests.

1

Ex. "A," Depo. Mallet, pp. 91-93, 432-443. Aside from reliance upon duct blaster testing and blower door testing performed by a technician hired by Mallet (Paul LaGrange) on May 7, 2009 (which tests and opinions based thereon have been excluded per Docs. 2062, 3054), the only other basis for this opinion by Mallet is his interpretation of **thermographic imaging he performed in the trailer while the trailer was undergoing the excluded testing and that is based entirely upon said testing** on May 7, 2009. Id.; Ex. "B," Aff. of Mallet, pp. 66-67.[2] As explained below, Mallet's thermographic imaging depicts intentionally manipulated temperature differentials in the interior building materials created by the blower door test pulling outside air of a different temperature into the structure (i.e. Mallet's thermographic imaging does not depict the structure in it non-manipulated condition sitting in FEMA's storage lot).[3]

As the thermographic image testing done by Mallet was based entirely upon and took place during and as a result of excluded testing, it is nothing more than "data collected as a result of this testing" and should therefore also be excluded. Gulf Stream Coach, Inc. respectfully submits that all thermographic image testing and results/images thereof as well as all opinions and/or testimony based upon same and being offered by Mallet (or others) should be excluded at the trial of this matter. Doc. 2062, p. 2; Doc. 3054, p. 2.

## II. Mallet's Thermographic Images Are Excluded

A. Court Orders Excluding May 6-7, 2009 "Testing" and Opinions Based Thereon

By Order dated July 6, 2009, all "expert opinions based on plaintiffs' re-testing of the Emergency Housing Unit ("EHU") [on May 6-7, 2009] in this case will not be admitted." Doc.

---

[2] The Court has recently granted in part and denied in part Gulf Stream Coach, Inc.'s Motion in Limine to Exclude Expert Testimony of Alexis Mallet. Doc. 3218 (Order dated 9/11/09). This important fact was recently discovered in preparing for the trial examination of Mallet upon closer scrutiny of Mallet's 101-page affidavit and 500-page deposition in light of the Court's Order regarding Mallet's testimony and was not realized at the time of the parties' conference call on these "testing issues" held with the Court on 9/4/09.

[3] See section (B) (*infra*) for a discussion of Mallet's testimony, affidavit and standard protocols regarding the methodology and uses of thermographic imaging.

2062, p. 2 (Order and Reasons dated 7/6/09).  Moreover, this Court held therein that **"...any data collected as a result of this testing, and opinions based solely on such testing, shall also be excluded."** Id. (emphasis added).  This Court further ordered on September 4, 2009 that any opinions based upon duct blaster testing and/or blower door testing of the trailer on May 7, 2009 would be excluded under the 7/6/09 Order as that testing "involved changing and manipulating existing circumstances in the trailer to obtain a reading, make further calculations, and reach a result."  Doc. 3054, p. 2.  However, the Court in that Order concluded that "thermographic image testing produced a 'measurement,' which is admissible, while the blower door and duct blaster testing were in fact 'tests,' which the Court has previously ruled are inadmissible." Id.  The thermographic image testing, held the Court at the time based upon a conference call with all counsel, "measured existing and observable conditions in the trailer" and were not thereby subject to the July 6, 2009 Order's exclusion.

      B.  <u>Mallet's Thermographic Image Testing Is Within the Court's Exclusion Orders</u>

In reviewing the Court's Order of September 11, 2009 granting and denying in part Gulf Stream Coach, Inc.'s Motion *in Limine* to Exclude Expert Testimony of Alexis Mallet (Doc. 3218), Mallet is still permitted to offer Opinion 7 ("...wall-to-floor intersection, wall-to-ceiling intersection and other openings in the walls, floor, and ceiling systems were not sealed to prevent unfiltered air filtration or movement to the Alexander's housing unit..."); Opinion 8 ("...air conditioning system is not properly sealed to prevent uncontrolled air leakage into the ceiling cavity and the exterior of the housing unit....this has created a negative air pressure in the Alexander's unit..."); and Opinion 14 ("...manufacturer failed to comply with the required NFPA and ANSI codes regarding construction of recreational vehicles and the manufacturer's guidelines regarding duct leakage..."). Ex. "B," pp. 96-97, 99 (Conclusions 7, 8 and 14).  Based

upon the Court's earlier rulings, Mallet cannot cite as a source for these opinions the excluded duct blaster and blower door tests.  The remaining basis for these opinions by Mallet regarding "air/duct or building envelope leakage" are the thermographic image testing that he performed.  Ex. "A," pp. 91-93, 432-443; Ex. "B," p. 66 (para. (S)(i)).

Mallet admitted as follows:

> Q. Okay.  But, correct, you didn't do any of your own testing of any kind?
>
> A. Well, **I did test for air leakage, the thermographic imaging.**
>
>     \*   \*   \*   \*   \*   \*   \*
>
> Q. Okay.  Where in each room did you do the testing?
>
> A. At the wall/ceiling – the walls and ceilings.
>
> Ex. "A," pp. 92-93 (emphasis added).

In addition, Mallet's report (at page 66 of 101), plainly explains as follows:

> To the extent possible, an **infrared thermographic survey was performed on the interior of the building <u>during the envelope air leakage tests and the furnace and air-conditioning duct leakage testing</u>. . . The survey was performed for the purposes of identifying anomalies in the walls, ceilings and floors of the Alexander temporary housing unit.**  Air and moisture leaks or condensation would show as temperature differentials noted by the variations of color during the survey.
>
> Ex. "B," p. 66 (the results are discussed at pp. 66-69) (emphasis added).

Evidence that thermographic imaging is in fact a testing procedure as opposed to purely observational of as-existing conditions is the fact that it is governed by extensive testing protocols, such as those promulgated by ASTM and ISO (International Organization for Standardization).  ASTM E 1186-03 (the protocol governing Standard Practices for Air Leakage Site Detection in Building Envelopes and Air Barrier Systems) specifies the conditions under

4

which infrared imaging can be used to detect air leakage. Ex. "C," ASTM E 1186-03, p. 2 (sec. 4.2.1). To utilize this technique, the protocol states that:

> Outdoor air is moved through the building envelope by depressurizing the building interior with a fan . . . or using the mechanical system in the building. Because infiltrating air is at a different temperature than the interior surfaces of the building envelope, local interior surface temperature changes take place which can be detected by infrared scanning equipment. Id.

The ISO Standard 6781 ("Thermal Insulation – Qualitative detection of thermal irregularities in building envelopes – Infrared Method") (a 15 page protocol governing the use and interpretation of thermographic imaging) states at Appendix D that:

> The method requires **test conditions** that must be defined in accordance with the building system under examination . . .
>
> The concept in interpretation of the thermal irregularities requires personnel with special knowledge and experience in the fields of building technology, building physics, heating and ventilation techniques and measurement techniques. . .
>
> The **results of the test** can be checked by disassembling the part of the building envelope suspected to be defective, and by subjecting it to visual examination. Other supplementary investigations may include heat flow measurements and pressurization tests.[4]
>
> Ex. "D," ISO Standard 6781, Appdx. D (p. 12).

The opinions offered by Mallet identified above (namely, Opinion numbers 7, 8 and 14) all are based upon his conclusion that the building and/or HVAC system ductwork suffered from excessive air leakage. Aside from the excluded duct blaster and blower door testing, we know, from the above citations, that these conclusions of Mallet are based upon thermographic image tests he performed – **now understood to have been based entirely upon and taken during the excluded blower door and/or duct blaster testing.** If the thermographic image tests he

---

[4] As cited herein, Mallet actually performed his thermographic imaging tests while the blower door pressurization tests were underway and the results of his thermographic imaging are entirely dependent upon conditions created by the blower door and/or duct blaster tests.

5

performed are not admissible as "testing" per the Court's 7/6/09 and 9/4/09 Orders (Docs. 2062, 3054), then Mallet should not be permitted to offer any opinions regarding duct leakage, building envelope leakage and/or compliance with codes allegedly pertaining to same.  Each of the above Opinions of Mallet (Opinions 7, 8 and 14) are based upon this very premise.

The thermographic images were not simply imaging of the trailer done absent manipulation of the trailer's conditions, as may have been represented to the Court in the conference call of 9/4/09 discussing this issue and/or as may have been the Court's understanding as a result of that conference call.  By Mallet's testimony, Mallet's Affidavit and the ASTM Protocol, the thermographic image testing performed by Mallet (and upon which he bases his "duct/building leakage" opinions) required, are based upon and are the results of the "changing and manipulating of existing circumstances in the trailer to obtain a reading." Doc. 3054, p. 2.  This Court held that "any data collected as a result of this testing . . . shall be excluded." Doc. 2062, p. 2.  Indeed, that is exactly what these thermographic images are – they are not merely "measurements" that just "measured existing and observable conditions in the trailer;" rather, they are "data collected as a result of" excluded testing.  **The images themselves are data, subject to interpretation of temperature differentials, not of "existing and observable conditions" but are in fact actually images of the trailer conditions generated by and as a result of those conditions having been "changed and manipulated."**  They cannot be extracted from the excluded blower door and duct blaster tests but are in truth a very part and parcel thereof – being premised and entirely dependent upon them.

### III. Conclusion

Based on the foregoing, Gulf Stream Coach, Inc. respectfully asks that this Court enter an Order precluding any and all evidence of, testimony regarding, reference to, reliance upon and/or

opinions based upon the thermographic image testing performed by Alexis Mallet. Specifically, Gulf Stream Coach, Inc. submits that Opinions 7, 8 and 14 of Mallet's Affidavit be stricken.

        Respectfully submitted,

        **DUPLASS, ZWAIN, BOURGEOIS, PFISTER, & WEINSTOCK**

        s/Andrew D. Weinstock
        _____
        **ANDREW D. WEINSTOCK #18495**
        **JOSEPH G. GLASS #25397**
        **KEVIN R. DERHAM #27163**
        3838 N. Causeway Boulevard, Suite 2900
        Metairie, Louisiana 70002
        Telephone: (504) 832-3700
        Fax: (504) 837-3119
        andreww@duplass.com
        jglass@duplass.com
        kderham@duplass.com

        and

        **SCANDURRO & LAYRISSON**
        **Timothy D. Scandurro #18424**
        **Dewey M. Scandurro #23291**
        607 St. Charles Avenue
        New Orleans, LA 70130
        Telephone: (504) 522-7100
        tim@scanlayr.com
        dewey@scanlayr.com
        **Counsel for Defendant, Gulf Stream Coach, Inc.**

## **C E R T I F I C A T E**

I hereby certify that on the 11th day of September, 2009, a copy of the foregoing Memorandum in Support of Gulf Stream Coach, Inc.'s Motion in Limine to Limit Opinions and Testimony of Alexis Mallet Based Upon Thermographic Imaging was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to all known counsel of record by operation of the court's electronic filing system.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com