UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | * | |
| *Inc., et al*, Docket No. 09-2892; | * | |
| Alana Alexander, individually and on behalf of | * | |
| Christopher Cooper | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF OBJECTIONS TO, AND MOTION IN LIMINE REGARDING, GULF STREAM'S PROPOSED DEMONSTRATIVE EXHIBITS**

Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper ("Plaintiff" or "Ms. Alexander") objects to the certain portions of Gulf Stream's proposed demonstrative exhibits, and requests that the Court preclude Gulf Stream from showing certain demonstrative exhibits to the jury and, in support, would show the following:

### I. Background.

On the afternoon of September 9, 2009, the parties exchanged proposed demonstrative exhibits. Plaintiff received two power point presentations (one is general and one relates to a particular expert's testimony) and one chart from Gulf Stream, and a picture of a model trailer and a timeline-chart from Fluor. Plaintiff objects to certain portions of Gulf Stream's general powerpoint.[1]

From the context of this powerpoint, it appears to be used in opening statement. The purpose of an opening statement is to state what evidence will be presented, to make it easier for

---

[1] If either defendant submits new demonstrative exhibits, Plaintiff reserves the right to assert objections to those.

1

the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole. *See Testa v. Village of Mundelein, Ill.*, 89 F.3d 443, 446 (7th Cir. 1996). In an opening statement, the attorney cannot discuss inadmissible or nonexistent evidence. *See id.* Further, demonstrative evidence is covered by Fed. R. Evid. 403. *U.S. v. Buck*, 324 F.3d 786, 790 (5th Cir. 2003).

II.     **Sources of Formaldehyde.**

The first portions are attached as **Exhibit A**. These portions discuss alleged levels of formaldehyde in a "normal diet" of certain food and in interior spaces. First, as to the food, there is no claim in this case that Plaintiff or her son became sick from eating or drinking formaldehyde or products/food containing formaldehyde. Further, there is no claim that the injuries they assert were a result of ingesting formaldehyde in liquid or in material form. Further, as food, there is no evidence supporting the asserted levels of formaldehyde in the subject foods.

As to formaldehyde in interior spaces, there is no evidence of the alleged levels set forth in Gulf Stream's exhibit. If there were any such evidence (for example health studies or the like) of generalized levels of formaldehyde in different places or from different activities, there is no evidence as to how these studies were conducted or the conditions that were tested. Further, if there were any such studies, they would be obviously unreliable because formaldehyde levels in an office, clothing store or an office are much different than those in a very small travel trailer.

As to formaldehyde in food or formaldehyde in large, open areas, there is no evidence that Plaintiff or her son were exposed to formaldehyde from any of these sources. While Plaintiff and her son have been in an office, a library and a clothing store, there is no evidence as to what the levels of formaldehyde levels were in those particular structures, or how long

Plaintiff and her son were in those structures. While Plaintiff did cook fish on occasion, there is no evidence as to what the emissions were from that particular fish. Allowing Gulf Stream to show this to the jury would be akin to allowing Plaintiff to quote the highest formaldehyde readings from any travel trailer (from any time period, made by any company, tested in any number of ways), and imply that Gulf Stream's were the same. The Court has precluded that and should preclude it here.

Gulf Stream may argue that this information comes from certain "studies." Again, even if it does come from certain studies, there is no evidence that Plaintiff or her son were exposed in the manner set forth in those studies. Further, Gulf Stream has objected to the admission of any studies into evidence. Further, the Court has limined out "reading of any excerpts from any text, article, treatise, or manual in connection with the examination of any witness or to exhibit same to the jury, without first obtaining leave of court of having laid a proper evidentiary predicate." (Docket Entry No. 2900-2, Docket Entry No. 3030). Gulf Stream's proposed demonstrative exhibit violates the Court's order.

In sum, this demonstrative exhibit is unreliable, not based on any evidence, and highly prejudicial and confusing to the jury. The Court should exclude this portion of Gulf Stream's demonstrative evidence pursuant to this Court's own order and FED. R. EVID. 403.

### III. Alleged Levels of Formaldehyde in 11 year old Site Built Homes.

Plaintiff objects to other portions of Gulf Stream's demonstrative exhibits, as set out in **Exhibit B**. This constitutes two charts that purport to discuss "Average Formaldehyde Levels in 53 Southern Louisiana Homes." It is believed that this comes from a 1998 study of site built homes. Of course, Plaintiff cannot be certain where this information originates because Gulf Stream's demonstrative exhibit does not provide a citation. Thus, Plaintiff, and the Court, must

guess what this data is based on.

If so, first, it violates the Court's limine order regarding reading from studies. Also, that study is also not relevant because it involves site built homes and is eleven years old. It does not involve travel trailers. This case is about levels in a travel trailer, not a site built home.

Further, there is no evidence that this study examined homes like the one Plaintiff or her son lived in before or after the trailer. There is no evidence as to the age or the size of the homes or the materials in the site built homes that were studied.

In sum, this demonstrative exhibit is unreliable, not based on any evidence, and highly prejudicial and confusing to the jury. The Court should exclude this portion of Gulf Stream's demonstrative evidence pursuant to this Court's own order and FED. R. EVID. 403.

IV.     **Alleged Effects of Ventilation on Formaldehyde Levels.**

Plaintiff objects to other portions of Gulf Stream's demonstrative exhibits, as set out in **Exhibit C**. This is a chart that purports to show "effects of air conditioning and ventilation on formaldehyde levels." Again, there is no evidence to back up the claim. Again, Plaintiff cannot be certain where this information originates because Gulf Stream's demonstrative exhibit does not provide a citation. Thus, Plaintiff, and the Court, must guess what this data is based on.

If there is any such evidence, it would presumably be contained in a study of some kind, and, again, the Court has precluded the parties from reading from studies. Further, if there is such a study, there is no evidence that the study was conducted with a similar air conditioning unit as was in this trailer, or the length of time or other particulars of the ventilation, the size of the structure ventilated or the mechanism of ventilation. The study would be unreliable and irrelevant to the claims in this lawsuit.

In sum, this demonstrative exhibit is unreliable, not based on any evidence, and highly

prejudicial and confusing to the jury. The Court should exclude this portion of Gulf Stream's demonstrative evidence pursuant to this Court's own order and FED. R. EVID. 403.

## V. Excerpts from Plaintiff, Chris Cooper and Dr. Pacheco Depositions.

Plaintiff objects to other portions of Gulf Stream's demonstrative exhibits, as set out in **Exhibit D**. These are excerpts from the depositions of Plaintiff, Chris Cooper and Dr. Karin Pacheco. As for Plaintiff and Chris Cooper, they will appear live at trial. Showing their deposition transcript to the jury would be improper unless the proper impeachment foundation is laid. Obviously, whether they can even be impeached will not be known until they testify. Therefore, it would be improper to show their deposition testimony to the jury during opening statement (or during any part of the trial, except for during impeachment, if the foundation is laid.)

## VI. Wrong Date of Initiation of Litigation.

Plaintiff objects to other portions of Gulf Stream's demonstrative exhibits, as set out in **Exhibit E**. This portion is a time line that purports to show "Chris Cooper in Litigation" beginning in February 2008. The record is clear that Plaintiff, on behalf of herself and her son Chris, did not file suit until February 27, 2009. (*Age, et al v. Gulf Stream, et al*, C.A. No. 09-2982, Docket Entry No. 1). Therefore, the exhibit is wrong and should be excluded pursuant to FED. R. EVID. 403.

## CONCLUSION AND PRAYER

Plaintiff obviously takes issue with some of the "spin" that Gulf Stream and Fluor appear to take on evidence that will be admitted. However, that is the nature of trial and advocacy, and therefore, Plaintiff cannot in good faith, and does not, object to such demonstrative exhibits. Unlike Gulf Stream and Fluor, Plaintiff recognizes that lawyers use opening to explain what they

think the evidence will show.  Simply explaining what the evidence will show is not objectionable; in fact, that is exactly what opening statement is supposed to be.  However, it is clear that discussing inadmissible, unfounded, inapplicable and misleading information is not appropriate—particularly, information and argument that the Court has limined out.

Therefore, Plaintiff respectfully requests that the Court grant her Motion and prohibit Gulf Stream from using the referenced demonstrative exhibits.

                            Respectfully submitted:

                            **FEMA TRAILER FORMALDEHYDE**
                            **PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
           GERALD E. MEUNIER, #9471
           **PLAINTIFFS' CO-LIAISON COUNSEL**
           Gainsburgh, Benjamin, David, Meunier &
           Warshauer, L.L.C.
           2800 Energy Centre, 1100 Poydras Street
           New Orleans, Louisiana 70163
           Telephone:    504/522-2304
           Facsimile:     504/528-9973
           gmeunier@gainsben.com

           s/Justin I. Woods
           JUSTIN I. WOODS, #24713
           **PLAINTIFFS' CO-LIAISON COUNSEL**
           Gainsburgh, Benjamin, David, Meunier &
           Warshauer, L.L.C.
           2800 Energy Centre, 1100 Poydras Street
           New Orleans, Louisiana 70163
           Telephone:    504/522-2304
           Facsimile:     504/528-9973
           jwoods@gainsben.com

        **COURT-APPOINTED PLAINTIFFS'**
        **STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON, #9938
        MIKAL WATTS, Texas # 20981820
        ROBERT BECNEL
        DENNIS REICH, Texas # 16739600

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

        s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471