**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | 07-md-1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | SECTION: N(5) |
| | LITIGATION | * | |
| | | *` | JUDGE: ENGELHARDT |
| | | * | |
| | | * | MAG: CHASEZ |

This document is related to:
   *Charlie Age, et al. v. Gulf Stream Coach, Inc., et al., No. 09-2892*
   Alana Alexander, Individually and on behalf of Christopher Cooper

---

## FLUOR ENTERPRISES, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant, Fluor Enterprises, Inc. (**FEI**), submits this memorandum in support of its Motion for Judgment as a Matter of Law to dismiss Plaintiffs' negligence claims against FEI, on the grounds that there is insufficient evidence to establish (1) causation; (2) any duty of FEI to warn plaintiffs of alleged dangers associated with formaldehyde in their trailer; (3) vicarious liability of FEI for any alleged negligent installment in connection with the Alexander travel trailer by FEI's independent subcontractor, MLU Services, Inc. (MLU), or MLU's subcontractor, Dan's Mobile Home Services (the "Lemieuxs"); or (4) negligence by any party in the trailer installation process.  Each of these separate grounds warrants dismissal as a matter of law.

## PRELIMINARY STATEMENT

A motion for judgment as a matter of law allows the court to remove cases or issues from the jury's consideration when the facts make sufficiently clear that the law requires a particular result.[1]  Based on the absence of evidence presented during plaintiffs' case, the law requires dismissal of plaintiffs' negligence claims against FEI.  Plaintiffs have not met their burden to prove their negligence claim under Louisiana's duty-risk analysis.  FEI's duties to set up the travel trailers carefully is a contractual duty owed to FEMA.

Even assuming that FEI's duties under its contract with FEMA extended to the plaintiffs, (which is denied) the harm claimed by the plaintiffs is outside the scope of the duty owed.  The contract creates a duty to ensure that the trailer was properly set up and ready for occupancy.  This was achieved in compliance with FEMA's specifications.  The risk that the trailer's occupants would fall ill from exposure to formaldehyde contained in the products used in the trailer's construction is not encompassed within that duty.  These crucial elements of the duty-risk analysis are not met and, therefore, the plaintiffs' negligence claim must fail as a matter of law.

Additionally, plaintiffs' LPLA claim against FEI was dismissed.  There is no affirmative duty under Louisiana law requiring FEI to warn the plaintiffs of any alleged danger involving formaldehyde.  Further, FEI cannot be vicariously liable for any alleged negligent installation of the Alexander's trailer by FEI's independent subcontractor, MLU, or even more remotely, MLU's subcontractor, the Lemieuxs.  Finally, there is no evidence of negligence by any party in the trailer installation process.

Simply put, liability is broken down into fault and causation.  There is zero evidence of any fault in the procedure used to jack up the trailer.  There is also zero evidence that Lemieux's

---

[1]  Weisgram v. Marley Co., 120 S.Ct. 1011, 1017 (2000); see Fed. R. Civ. P. 50(a).

installation of the trailer caused any damage and, therefore, there is no evidence of causation. Therefore, a reasonable jury would not have a legally sufficient evidentiary basis to find for the plaintiffs on their negligence claim against FEI.  If plaintiffs' claim against FEI is allowed to be determined by the jury, there is a real risk in this case with multiple parties that the jury may assign some fault to FEI because of the temptation to assign fault even where there is none, as here.

## BACKGROUND

FEI had a contract with the Government to install travel trailers after Hurricane Katrina, including the trailer occupied by the Alexander plaintiffs.[2]  In February 2006, the Gulf Stream trailer was set up at plaintiffs' location by a subcontractor of one of FEI's subcontractors.[3]  FEI's direct subcontractor, MLU was assigned to haul and install the Alexander's trailer.[4]  MLU independently hired the Lemieuxs to haul and install the Alexander's trailer.[5]  FEI did <u>not</u> have any contractual relationship with the Lemieuxs.[6]

## JUDGMENT AS A MATTER OF LAW STANDARD

A judgment as a matter of law is appropriate if a party has been fully heard by the jury on an issue and there is no "legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a).  "A court should grant a motion for judgment as a matter of law only when 'the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.'"  <u>SMI Owen Steel Co., Inc. v. Marsh USA, Inc.</u>, 520 F.3d 432, 437 (5th Cir. 2008) (quoting <u>Pineda v. United Parcel Service, Inc.</u>, 360 F.3d 483, 486 (5th Cir. 2004)).

---

[2]  Stipulated fact 7; citations to the original trial transcript are referenced as "T," followed by the page number and date (<u>see</u> T. 139 9/14/09).
[3]  Stipulated Fact 8, T. 139, 9/14/09.
[4]  Trial Ex. 412, FL-FCA-004623; T. 16, 9/17/09.
[5]  T. 154-55, 9/16/09.
[6]  T. 156-5, 9/16/09.

Said another way, if the facts and inferences point so strongly in favor of one party that reasonable minds could not disagree, the motion should be granted.  Rutherford v. Harris County, Texas, 197 F.3d 173, 179 (5th Cir. 1999), (citing Boeing Co. v. Shipman, 411 F.2d 365, 374).

Conversely, if there is substantial evidence opposed to the motion such that reasonable jurors might reach different conclusions, the motion should be denied.  Rutherford, 197 F.3d at 179 (citing Boeing).  The evidence must be substantial.  Id.  A mere scintilla is insufficient to present a question for the jury.  Id.  "'There must be a conflict in substantial evidence to create a jury question.'"  Rutherford, 197 F.3d at 179 (quoting Boeing, 411 F.2d at 374-375).

When deciding a Rule 50 motion for judgment as a matter of law, the court must review all of the evidence in the record, not just the evidence supporting the non-mover's case.  Information Communication Corp. v. Unisys Corp., 181 F.3d 629, 633 (5th Cir. 1999) (quoting Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969)(en banc)).  This evidence must be viewed in the light and with all reasonable inferences drawn in favor if the non-moving party.  Id.  Additionally, when making a rule 50 determination, the court may not make credibility determinations or weigh the evidence.  Ellis v. Weasler Engineering, Inc., 258 F.3d 326, 337 (5th Cir. 2001).  Therefore the court must give credence to the evidence favoring the non-movant as well as the uncontradicted and unimpeached evidence supporting the moving party.  Ellis, 258 F.3d at 337 (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

## LAW AND ARGUMENT

**I.**     **FEI'S CONDUCT WAS NOT THE CAUSE OF PLAINTIFFS' ALLEGED INJURIES**

There is no evidence that FEI caused any injuries to plaintiffs.  Plaintiffs have failed to prove an essential element of their claim for negligence on the part of FEI.  The plaintiffs claim injuries due to formaldehyde exposure emitted from products used in construction of the travel trailer provided to them by the Government following Hurricane Katrina.  Plaintiffs claim that FEI's negligence in installing the travel trailer in which they resided after Hurricane Katrina caused their injuries by accelerating or exacerbating the plaintiffs' exposure to formaldehyde put in the travel trailer by others.  Because the plaintiffs cannot prove the necessary elements of a state law negligence claim, the claim fails as a matter of law.

FEI was a contractor working for FEMA and in that capacity had a ***contractual obligation to FEMA*** to haul and install travel trailers that FEMA was providing to persons displaced due to Hurricanes Katrina and Rita.  In performing those contractual duties owed ***to FEMA***, FEI had a subcontractor haul, install and make ready for occupancy the travel trailer in which plaintiffs resided.  Plaintiffs claim that by virtue of that act (hauling and installing a travel trailer manufactured by another and selected by the federal government to serve as emergency housing for a U.S. citizen after the largest civil engineering disaster in the history of the United States), FEI had a duty to provide plaintiffs with a travel trailer that was free of a volatile organic compound known as formaldehyde.  Assuming <u>arguendo</u> that FEI owed a duty ***to plaintiffs*** to exercise due care in the hauling and installation of the travel trailer provided to them by the federal government, that duty, whatever its scope, did not extend so far as to oblige FEI to ensure that a travel trailer manufactured and selected as shelter by others was free from formaldehyde.

Failure to prove a duty on FEI's part, the first element in a negligence claim, warrants a dismissal of the plaintiffs' claim.  Although judgment as a matter of law is appropriate based on this fact alone, dismissal is *also* warranted because the plaintiffs failed to prove a second essential element in the duty-risk analysis of Louisiana tort law.  Even assuming that FEI owed a duty ***to the plaintiffs*** as a result of the actions it took to fulfill its contractual obligations to the Government, and assuming <u>arguendo</u> that FEI breached that duty, the plaintiffs' injuries are outside the scope of any duty that FEI may have owed to the plaintiffs.  This element is also necessary to succeed on plaintiffs' negligence claim; without a sound basis in law or fact for supporting this element of their claim, the negligence claim must fail.

### A.    FEI did not owe a duty to the plaintiffs

Under Louisiana law, a tortfeasor is generally liable for any damage caused by his or her fault.  La. Civ. Code, art. 2315.  Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under a particular set of facts.  For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements:  (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4)  the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element).  <u>Pinsonneault v. Merchants & Farmers Bank</u>, 816 So.2d 270, 276 (La. 2003); <u>Barasich v. Columbia Gulf Transmission Co</u>., 467 F.Supp.2d 676, 691, (E.D. La. 2006).  These elements take into consideration each party's conduct and the particular circumstances of each case. <u>Joseph v. Dickerson</u>, 754 So.2d 912, 916 (La. 2000).  Under this analysis, the plaintiffs must

affirmatively prove the first four elements of the duty risk approach.  Sciacca, supra, at * 10.  A negative answer to any one of these inquiries results in a determination of no liability.  Hanks v. Entergy Corp., 944 So.2d 564, 579. (La. 2006); Joseph v. Dickerson, 754 So.2d 912, 916 (La. 2000).

Plaintiffs claim that FEI owed them a duty to "provide, transport, install, inspect … temporary housing units that did not emit hazardous levels of formaldehyde."[7] The plaintiffs assert that FEI breached this duty by not warning the plaintiffs of the formaldehyde emissions and by blocking the housing units rather than leaving them on their wheel base.  The deficiency in the plaintiffs' negligence claims is that the plaintiffs have presupposed, without any basis in law, fact or reason, that FEI, simply because it contracted to haul and install trailers, somehow thereby became responsible for providing a trailer free from hazardous levels of formaldehyde. The threshold question in any duty-risk analysis is whether the defendant owed a duty to the plaintiff.  Pinsonneault, 816 So.2d at 276.  See also Lazard, 859 So.2d at 659. Whether a duty is owed is a question of law.  Pinsonneault, 816 So.2d at 276.  Because there is no legal basis for imposing a duty on FEI to provide the plaintiffs with a formaldehyde-free housing unit, the negligence claim should be dismissed as a matter of law.

FEI contracted with FEMA to provide certain services relating to the housing units FEMA supplied to those needing assistance after the hurricanes.  Basically, FEI was only to perform contractor services, including hauling and installation of units, and site inspections.  No provision in the contract charged FEI with the duty to ensure that the trailer was free from excessive levels of formaldehyde.

---

[7] Rec. Doc. 1, Count 4, paragraph 112.  While FEI may have had a duty *to FEMA* to perform certain obligations, FEI did not owe a duty to either FEMA or the plaintiffs to ensure that the housing units did not emit formaldehyde.

To establish that a duty exists, the inquiry is whether the plaintiffs have any law, statutory or jurisprudential, to support their claim.  Lazard, 859 So.2d at 659; Roberts v. Benoit, 605 So.2d 1032, 1043 (La. 1991).  For instance, in Lazard, the duty the defendant owed the plaintiff was imposed by statute. (Pursuant to article 822 of the Children's Code, the sheriff had a duty to house the minor in a juvenile detention facility, not the adult prison.)  In Joseph, supra, the duty was established by the Restatement Second of Torts. (§ 390 of the Restatement imposed a duty on a lending car owner not to entrust the car to one who the owner knew would present an unreasonable risk of harm due to the borrower's youth, inexperience, intoxication, or incompetence.)  In Roberts, the duty was jurisprudentially created. (Governmental employer had a duty to exercise reasonable care in hiring and training police officers.)

In the complaint, the plaintiffs state that FEI owed them a duty to "provide, transport, install, inspect … temporary housing units that did not emit hazardous levels of formaldehyde." The plaintiffs have not articulated any statutory or jurisprudential basis for claiming that FEI owed them this duty.  The plaintiffs theorize that FEI's subcontractor's actions in jacking and "blocking" the trailer accelerated the release of formaldehyde causing them injuries.[8]  They then make a quantum leap to imposing a duty on FEI to ensure that the trailer did not contain excessive levels of formaldehyde.  Even assuming for the sake of argument that jacking the trailer accelerated the formaldehyde release, Louisiana law does not impose upon FEI the duty to provide the plaintiffs with a trailer free from formaldehyde.[9]

Because the plaintiffs did not contract directly with FEI, plaintiffs contend that the duty that FEI owed the plaintiffs necessarily had its origin in FEI's contract with FEMA. (Presumably, not even plaintiffs are arguing that complete strangers owe them a duty to ensure

---

[8] There was no evidence at trial to support plaintiffs' fantastic theory.
[9] If such a duty was owed to the plaintiffs, it may have been owed by others, but not by the hauler and installer of the units.

that their post-Katrina emergency housing was free of formaldehyde).  While it could possibly be argued that FEI had a responsibility ***to plaintiffs*** to ensure that the electricity was properly connected, that the plumbing was in working order and that the trailer was level and safely secured to the ground, there is no reasonable interpretation of the contract that could extend to obligating FEI to provide a housing unit free from excessive levels of formaldehyde.  There was simply no duty ***on FEI's part*** to ensure that the plaintiffs would not be exposed to hazardous levels of formaldehyde.  While FEI may have had a duty to perform certain services for FEMA under the contract, the duty claimed by the plaintiffs, to provide a formaldehyde-free housing unit, was not one of them.  Under the contract, FEI owed no such duty to FEMA or to the plaintiffs, and plaintiffs are unable to prove that FEI owed this duty to them.  Without evidence that FEI owed a duty, the negligence claim fails and judgment as a matter of law should be granted.

### B.       The injuries were outside the scope of any duty that FEI might have had

FEI owed a duty <u>to FEMA</u> to exercise ordinary care in performing its obligations as specified in the contract.  Those duties did not extend to plaintiffs.  But, even assuming <u>arguendo</u> that these duties extended to the plaintiffs, the injuries plaintiffs claim to have incurred (exposure to excessive levels of formaldehyde) are not within the ambit of FEI's duties.  In other words, the risk of the plaintiffs' harm was not within the scope of protection afforded by the duty owed to the plaintiffs.  As the Louisiana Supreme Court notes, rules of conduct are designed to protect *some* persons under *some* circumstances against *some* risks.  <u>Roberts</u>, <u>supra</u>, 605 So.2d at 1044 (citation omitted).  Seldom does a rule protect all persons against every risk encountered simply because the rule's violation played a part in producing the injury.  <u>Id</u>. (citation omitted).  Simply put, a violation of a duty does not impose liability in every situation.

The essence of a scope of duty inquiry is whether the risk of harm encountered by the plaintiff falls within the scope of protection of the statute (or jurisprudential rule) creating the duty. <u>Lazard</u>, 859 So.2d at 660.[10]  A risk may be found outside the scope of a duty where the circumstances of that injury to the plaintiff could not reasonably be foreseen or anticipated. Stated differently, a risk is outside the duty's scope when there is no ease of association between the risk of that injury and the legal duty.  <u>Id</u>. at 661.

The plaintiffs did not contract with FEI, therefore, any duty that the plaintiffs claim FEI owed to them arguably arises at least in some sense out of FEI's contract with FEMA. (Again, plaintiffs cannot be claiming that every stranger owes them the duties that they claim FEI owes to them.) If FEI owed the plaintiffs a duty at all, FEI's duty was to use ordinary care in delivering the trailer and making it operational and ready for occupancy.  If, in fact, FEI owed any duty to the plaintiffs, it might be to ensure that the plumbing and electricity worked properly, that the trailer was level and properly anchored to the ground, that the steps were in place and that the appliances were properly functioning.  Assuming for purposes of argument that these duties were owed and breached, the injuries of which the plaintiffs complain (injuries caused by exposure to excessive levels of formaldehyde), are beyond the scope of these duties.  For example, had injuries been sustained due to FEI's electrical wiring (i.e., the trailer burned down) or due to substandard anchoring to the ground (i.e., trailer blown over), these injuries may have been within the scope of the duty owed.  The plaintiffs claim that their injuries resulted from FEI's action in placing the units on concrete blocks as the contract provided, rather than leaving the units on their wheel base.  Plaintiffs failed to establish that FEI knew that this procedure would accelerate the release of excessive levels of formaldehyde and thereby injure the plaintiffs.

---

[10] This element (the scope of protection element), like the duty element, is a question of law.  <u>Barasich</u>, 467 F.Supp.2d at 691.

As previously stated, a risk is outside the duty's scope when the circumstances surrounding the injury cannot be anticipated.  See Lazard, supra.  The inquiry is how easily can the plaintiffs' risk of injury be associated with the duty imposed.  Roberts, 605 So.2d at 1045.   Considering the duties that FEI may have owed the plaintiffs, the risk that an individual may be injured when exposed to excessive levels of formaldehyde fumes, could not be foreseen or anticipated.

The risk that an individual would be exposed to excessive levels of formaldehyde when FEI placed the trailer on blocks as FEMA required in its contract is clearly outside the protection contemplated by a duty to exercise reasonable care in delivering the trailer and making it operational and ready for occupancy.   There is no ease of association between breathing formaldehyde emissions and the duties created by FEI's contract with FEMA.  Without evidence to establish this element of the duty-risk analysis, the plaintiffs' negligence claim against FEI necessarily fails.

## II. FEI HAD NO DUTY TO WARN PLAINTIFFS OF ANY ALLEGED FORMALDEHYDE DANGER IN THEIR TRAILER

This court dismissed plaintiffs' LPLA claim against FEI.  Under Louisiana law, FEI had no duty to warn the plaintiffs of the alleged dangers associated with formaldehyde found in their trailer.  Under general tort law principles, there is no duty to warn strangers of dangers, no matter how grave or imminent.  Miles v. Melrose, 882 F.2d 976 (5th Cir. 1989) (citing the Restatement Second of Torts).   Under Louisiana law, a cause of action for failure to warn does not exist unless there is an affirmative duty to provide a warning.  Audler v. CBC Innovis Inc., 519 F.3d 239 (5th Cir. 2008).  Louisiana law imposes a specific duty to warn only in limited situations, none of which is present in the instant case with the dismissal of the LPLA claim.

First and foremost, the plaintiffs' claims under the Louisiana Products Liability Act (LPLA), which includes a duty to warn, have been dismissed.  Thus, FEI has no duty imposed by

the LPLA to notify the plaintiffs of formaldehyde in the trailers.  The LPLA of 1988 provides the exclusive remedy for recovery of damages from manufactures in Louisiana.  R.S. 9:2800.52.  Under the Act, a manufacturer's liability is based in part on whether the product has a characteristic rendering it unreasonably dangerous.  R.S. 9:2800.54(A).   A product can be unreasonably dangerous when it lacks an adequate warning.  R.S. 9:2800.54(B)(3).  Therefore, under the LPLA, a "manufacturer" can be found liable to a plaintiff injured by a product when the manufacturer failed to supply an adequate warning as provided in R.S. 9:2800.57.  Because FEI did not manufacture the housing units and the plaintiffs' claims under the LPLA have been dismissed (including any claims that FEI failed to warn them of the dangerous condition presented by the formaldehyde), any possible LPLA responsibility FEI may have had to warn the plaintiffs is non-existent.

Louisiana law also imposes a duty on landowners or one having custody or *garde* over a thing to disclose any unreasonably dangerous conditions and to either correct the condition or warn others of the condition's existence.  Dauzat v. Curnest Guillot Logging, Inc., 995 So.2d 1184 (La. 2008); Jamison v. United States, 491 F.Supp.2d 608 (W.D. La. 2007).  That type of situation is clearly not present here, where FEI did not own the trailers, nor did FEI have custody or *garde* of the plaintiffs' trailers.  Additionally, the duty to warn arises with ownership or guard of *immovable* property and is applicable to claims under a theory of premises liability.  The plaintiffs have not made these types of claims.  The complaints and amended complaints in Age contain no such allegations, and plaintiffs cannot amend to assert such claims during trial.  Additionally, the facts support no such claim in any event.

Finally, the plaintiffs in this case share no special relationship with FEI such that a duty to warn might be imposed.  For instance, in cases involving actions committed by a third party, it

is well-settled law in Louisiana that absent a special relationship between the plaintiff and the defendant, the defendant has no duty to warn the plaintiff.  Johnson v. Orleans Parish School Board, 938 So.2d 219 (La. App. 4 Cir. 8/9/06).   Although the plaintiffs have not alleged injuries due to third party activity, there is nevertheless no special relationship between the parties under which a duty to warn of a dangerous condition might arise.  The court in Hollander v. Days Inn Motel, 739 So.2d 238 (La. App. 3 Cir. 1999), listed examples of special relationships that might create such a duty.  These include parent and child, employer and employee, innkeeper and guest, jailer and prisoner, shopkeeper and visitor, and teacher and pupil.  The plaintiffs and FEI do not share such a relationship creating a responsibility on FEI's part to warn the plaintiffs of possible exposure to formaldehyde.

There is simply no affirmative duty under Louisiana law requiring FEI to warn individuals of this hazard.  While the LPLA imposes a duty on manufacturers to warn users of unreasonably dangerous characteristics in their products, these claims against FEI were dismissed.  Likewise, Louisiana's jurisprudence indicates that a responsibility to warn others exists under a theory of premises liability, but the plaintiffs did not make this type of claim, and could not do so in any event on the undisputed facts.  Under the circumstances in this case, there is no legal basis for asserting that FEI had a duty to warn the plaintiffs of a danger involving formaldehyde.

### III.   FEI   IS   NOT   LEGALLY   RESPONSIBLE   FOR   AN   INDEPENDENT CONTRACTOR'S CONDUCT

MLU was an independent contractor. To facilitate FEI's contract with FEMA, on September 2, 2005, FEI entered into a contract with MLU (the Contract) to haul and install travel

trailers, park models and mobile homes, pursuant to certain FEMA specifications.[11]   The

Contract explicitly designated MLU as "an independent contractor:"[12]

### 14.0   CONTRACTUAL RELATIONSHIP

> Contractor agrees that Contractor is an independent contractor ... .[13]

For travel trailer installation, the Contract specifically provided that MLU was required "to

provide all labor, material, equipment [&] tools" "to transport and install" travel trailers in

accordance with FEMA's travel trailer installation specifications:

### 3.5   Travel Trailer Installation:

> Contractor to provided all labor, material, equipment, tools, miscellaneous supplies, consumables and each and every item of expense required to transport and install, and commission travel trailers in accordance with specification ... Exhibit 7 Titled Installation Task, Travel Trailer Installation.[14]

Regarding individual task orders issued, the Contract also provided that MLU must provide its

own "labor, material [&] equipment" to haul and install the travel trailers:

> 4.1   The Contractor shall provide all resources, labor, material, equipment and management necessary to complete the Scope of Work identified in the task orders issued under this Contract.[15]

In support of FEMA's disaster operations, the Contract specified that "[o]nly those

contractors whose primary business is hauling TT [travel trailers], PM, and MH will be allowed

to transport temporary housing."[16]   The Contract also required MLU to "supply at all times an

---

[11]  Trial Ex. 503; FL-FCA-002869-2986.
[12]  Trial Ex. 503; FL-FCA-002896, Art. 14 Contractual Relationship.
[13]  Trial Ex. 503; FL-FCA-002896 (emphasis added).
[14]  Trial Ex. 503; FL-FCA-002872, art. 3.0 Description of Work, 3.5 Travel Trailer Installation.
[15]  Trial Ex. 503; Art. 4.0 Contract Definition, 4.1; FL-FCA-002874.
[16]  Trial Ex. 503; FL-FCA-002871.

adequate number of well-qualified supervisory and craft personnel to perform the Work and an experienced supervisor at the jobsite ... ."[17]

Significantly, FEI's contract with MLU does <u>not</u> create *any* contractual relationship with Lemieux:

> ### 14.0   CONTRACTUAL RELATIONSHIP
>
> ... Nothing contained in this Contract or any subcontract awarded by Contractor shall create any contractual relationship between any subcontractor and Company  [FEI]or Owner.[18]

As Al Whitaker (FEI) testified, "Daryl Lemieux was not under contract to Fluor.  He was a subcontractor to one of our subcontractors ... ."[19]

MLU's subcontractor provided his own material, equipment and tools to haul and install the Alexanders' travel trailer.  He had no actual memory of installing the Alexander trailer, but acknowledged his name on the RFO form.[20]  He used his own truck to haul the trailers and his own jacks to jack up trailers onto the blocks.[21]  He took a training course from FEI where he was shown "a basic model setup showing the way they wanted it blocked," but they did not show how to jack up the trailers.[22]  He testified that he used his own equipment and methods to jack up trailers.[23]  Thus, FEI did not control MLU's, or MLU's subcontractor Lemieux's, methods for jacking up trailers, which was dependent upon certain variables.  Although FEI provided FEMA's mandatory blocking and leveling specifications to MLU and its subcontractor Lemieux was shown a model unit properly set up pursuant to those specifications, FEI did not control the physical details of the way MLU or its subcontractor Lemieux carried out the work.  MLU was

---

[17] Trial Ex. 503, Art. 16.0 Contractor Personnel, Tools and Requirement, FL-FCA-002897.
[18] Trial Ex. 503; FL-FCA-002896;
[19] Trial Transcript, 9-16-09, (T. 156 L. 25 – T. 157 L.1, 9/16/09.
[20] T. 282, 9/16/09.
[21] Trial ex. 503; FL-FCA-002872, Art. 3.0 Description of Work, 3.5 Travel Trailer Inspection; T. 275-277, 282, 284, 9/16/09.
[22] T. 264 9/16/09.
[23] T. 264-66; 278, 280-281, 9/16/09.

clearly an independent contractor responsible for its own conduct and FEI is not responsible for MLU's conduct or Lemieux's conduct.

During the trial, the crux of plaintiffs' negligence theory against FEI was their contention that a subcontractor (Lemieux) of FEI's direct subcontractor (MLU) improperly jacked and blocked the trailer, creating stress and distortion on the trailer frame that allowed for increased moisture intrusion and formaldehyde exposure due to cracks and openings in the shell, and that FEI is somehow legally responsible.[24]   Plaintiffs contend that FEMA, and in turn, FEI, failed to provide sufficient direction to its subcontractors on how to jack up the trailers, and the subcontractors were free to employ their own means and methods.   Plaintiffs' theory fits the precise definition of "an independent contractor relationship" between FEI and its subcontractor, MLU.   Consequently, there can be no vicarious liability of FEI for the *alleged* negligent acts of MLU and, even more remotely, Lemieux.   Therefore, plaintiffs' negligent installation claims against FEI should be dismissed as a matter of law.

There is insufficient evidence to establish any vicarious liability of FEI for the alleged negligent acts of its independent contractor MLU or MLU's subcontractor, Lemieux.   MLU was an experienced and qualified haul and install contractor.   Plaintiffs contend that FEI did not exercise control over MLU's means and methods used to jack up the trailer.   Although FEI provided safety instructions to its subcontractors on the proper way to jack up trailers to prevent injury to the workers, jacking up the trailers from side to side was an acceptable method which would not effect the structural integrity of the unit when done evenly.[25]   FEI provided MLU with FEMA's precise blocking and leveling specifications which ensured that the end result – the trailer installation -- would conform to those specifications.   Indeed, FEI inspected the

---

[24]  Mr. Buzbee's opening statement, 9/14/09 T. 148 - 49, 152 -53.
[25]  (Whitaker) 9/16/09 T. 149-153.

Alexanders' final trailer installation, confirming that it was properly blocked and leveled.[26]   The evidence preponderates that MLU was an independent contractor.

Under Louisiana law, "a principal is not liable for the offenses an independent contractor commits in the course of performing his contractual duties."  Alexander v. Lowes Co., 701 So.2d 239, 242 (La. App. 1st Cir. 1997).  This rule is subject to an exception when the principal reserves the right to supervise or control the work of the independent contractor, or gives express or implied authorization to an unsafe practice.  Id.  In Crews v. Blalock, 746 So.2d 761 (La. 3d Cir. 1999), the court affirmed summary judgment on the basis of independent contractor status. The court determined that "an independent contractor relationship" existed between the two parties.  "Consequently, there can be no vicarious liability" for the alleged acts of the independent contractor.  Id. at 764.  The court explained the prevailing legal principles establishing the independent contractor relationship:

> The legal relationship between Boise and Kim Johnson Trucking is determined from the contract creating the relationship and from their intentions in establishing and maintaining that relationship, as exhibited in its performance and surrounding circumstances. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So. 2d 385 (La.1972).  To attain the status of an independent contractor, it must be established that a valid contract exists between the parties and that the contract calls for specific piece work as a unit which can be accomplished by non-exclusive means.  Id.   In carrying out the contractual obligation, the independent contractor must be able to employ its own methods free from the control and direction of the principal, except as to the desired results.  Id.  Furthermore, the contract must set a specific price for the overall undertaking, provide a specific time or duration in which the undertaking must be completed, and not be subject to termination at the will of either party without that party being subject to liability for breach.  Id.  Of primary concern, however, is whether the principal retained the right to control the work.  In ascertaining the level of control retained by the principal, the actual control exercised is not as important as the right to

---

[26]  T. 143-145, 9/16/09 (Whitaker).

control.  Smith v. Crown Zellerbach Corp., 486 So. 2d 798
(La.App. 3 Cir.), writ denied, 489 So. 2d 246 (La.1986).

Id. at 763.[27]   In Crews, in determining that Maxum Property was not vicariously liable for the

acts of Blalock (whom plaintiff alleged was in the course and scope of his employment at the

time of an automobile accident) the court noted Blalock was paid a set fee for the job and could

reject those assignments which he did not wish to perform; there was no written contract and

either party could terminate their relationship.  "No one supervised or directed his work, but he

had no discretion to determine what work was necessary."  Id. at 763.  Blalock used his own

vehicle to get to the property, purchased his own supplies and scheduled the work himself within

certain time limits.  "Maxum did not direct the manner in which Blalock worked, but was

interested solely in the end result, i.e., that new locks were in fact installed and that the property

was winterized."  Thus, the court determined that an independent contractor relationship between

Blalock and Maxum existed and, consequently, there was no vicarious liability on the part of

Maxum for the alleged negligent acts of Blalock.  Id. at 764.

In Hickman v. Southern Pacific Transport Co., 262 So.2d 385 (La. 1992), the court

explained, "it should appear that the contract calls for specific piecework as a unit to be done

according to the independent contractors' own methods, without being subject to the control and

direction in the performance of the service, of his employer, except as to the result of the services

to be rendered."  Id. at 390.

Based on these parameters, the evidence at trial establishes that an independent contractor

relationship existed between FEI and MLU.

---

[27]  Quoting Perkins v. Gregory Mfg. Co., 761 So.2d 1036 (La. App. 3d Cir. 1996), writ denied, 673 So.2d 1029 (La.
1996).

IV.    **THERE IS NO EVIDENCE ANY PARTY NEGLIGENTLY INSTALLED THE
PLAINTIFFS' TRAILER**

Plaintiffs' purported evidence of negligent installation (jacking and blocking) of the trailer is woefully insufficient as their only expert, Charles Moore, contends it was negligent to jack the trailer with one jack near the axles, even if not lifting the tires off of the ground, while the plaintiffs' construction expert, Al Mallett, himself a trailer owner, said he jacked his trailer the very same way.[28]

Finally, there was absolutely <u>no</u> evidence that Lemieux's jacking up of the trailer caused any damage to the trailer that could somehow lead to increased formaldehyde off-gassing.  The comment on the FEMA inspection form "wall in bedroom" existed *before* Lemieux hauled the trailer from the FEMA staging yard to plaintiffs' location.[29]  Plaintiffs' expert, Charles Moore's opinion that Lemieux's jacking up of the trailer caused structural damage is based on nothing more than rank speculation, not the evidence at trial.  Moore never saw the trailer on Dale Street.[30]  The <u>first</u> <u>time</u> Moore ever saw the Alexander trailer was May 2009[31] – <u>after</u> the trailer had traveled 1,300 miles[32], been set-up at Union Carbide, hauled to the FEMA staging yard, set up by Lemieux in February 2006[33], moved off of blocks for two days and then reinstalled by another contractor (with no relation to FEI)[34]; and then hauled to the trailer graveyard in Lottie, Louisiana in February 2008 where it sat unmaintained, in an agricultural field[35], until his inspection in May 2009.  Moore also admitted that the alleged damage he noted to the trailer in May 2009 was consistent with numerous other possible causes that had nothing to do with how

---

[28]  T. 278, 9/17/09.
[29]  T. 266-269, 9/16/09.
[30]  T. 106, 9/17/09.
[31]  T. 101. 9/17/09.
[32]  T. 101, 9/17/09.
[33]  T. 106, 9/17/09.
[34]  T. 106, 9/17/09.
[35]  T. 108-09, 9/17/09.

Lemieux may have jacked up the trailer.[36]   Moore's opinion was also based upon Shirley Alexander's confused testimony where in her deposition she said the trailer was jacked from one side to another[37], but at trial she said that the trailer was jacked from one corner to the other corner, diagonally.  Furthermore, Moore did not perform any finite element analysis to determine how high one would have to jack a trailer on the I-beam for damage to occur.[38]  There has been no evidence at trial that Lemieux's jacking up of the trailer caused any damage which could somehow have increased formaldehyde off-gassing in the unit.

## CONCLUSION

Based on the foregoing, judgment as a matter of law should be granted in this case dismissing the plaintiffs' negligence claims against FEI.

Respectfully submitted,

**MIDDLEBERG, RIDDLE & GIANNA**

BY:  _____s/ Sarah A. Lowman_____
Dominic J. Gianna, La. Bar No. 6063
Sarah A. Lowman, La. Bar No. 18311
201 St. Charles Avenue, Suite 3100
New Orleáns, Louisiana 70170
Telephone: (504) 525-7200
Facsímile:  (504) 581-5983
dgianna@midrid.com
slowman@midrid.com

Charles R. Penot, Jr., La. Bar No. 1530 &
Texas Bar No. 24062455
717 North Harwood, Suite 2400
Dallas, Texas 75201
Telephone: (214) 220-6334
Facsimile:  (214) 220-6807
cpenot@midrid.com

*-and-*

---

[36]  T. 115-117, 9/17/09.
[37]  T. 327, 9/16/09; 120, 9/17/09.
[38]  T. 121, 9/17/09.

Richard A. Sherburne, Jr., La. Bar No. 2106
450 Laurel Street, Suite 1101
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7700
Facsimile:  (225) 381-7730
rsherburne@midrid.com
smallett@midrid.com

**ATTORNEYS FOR FLUOR ENTERPRISES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record, including court-appointed liaison counsel, who are CM/ECF participants.

s/ *Sarah A. Lowman*
Sarah A. Lowman

ND: 4811-6502-3492, v.  2