# CHEHARDY, SHERMAN, ELLIS, MURRAY, RECILE, GRIFFITH, STAKELUM & HAYES, L.L.P.

ATTORNEYS AT LAW

LAWRENCE E. CHEHARDY*
DAVID R. SHERMAN*°
MICHAEL H. ELLIS†
JULIAN R. MURRAY, JR.*
GEORGE B. RECILE*
JACQUELINE G. GRIFFITH*
P. J. STAKELUM III†
STEVEN L. HAYES†
ROBERT G. STASSI
ALVIN A. LEBLANC, JR.*
STEPHEN D. MARX
MICHAEL G. RASCH†
JAMES M. FANTACI*
JACQUELINE H. BLANKENSHIP*
DON M. RICHARD

SUITE 1100
ONE GALLERIA BOULEVARD
METAIRIE, LOUISIANA 70001
TELEPHONE: (504) 833-5600
FAX: (504) 833-8080

MAILING ADDRESS: POST OFFICE BOX 931
METAIRIE, LOUISIANA 70004-0931

September 21, 2009

ELLEN S. FANTACI*
CHARLES O. TAYLOR
CARL L. ASPELUND
PAOLA PAOLI CORRADA
PRESTON L. HAYES
REBECCA J. BECK
LOUIS J. LUPIN*†

OF COUNSEL:
PATRICIA E. PANNELL†
PAULA PERRONE

*PROFESSIONAL CORPORATION
†BOARD CERTIFIED TAX ATTORNEY
‡LL.M. IN TAXATION
§LL.M. IN HEALTH LAW
±ALSO ADMITTED IN SOUTH CAROLINA
°ALSO ADMITTED IN VIRGINIA
^ALSO ADMITTED IN FLORIDA

*Via Facsimile (504) 832-1799*

Jim S. Hall, Esquire
800 N. Causeway Boulevard
Suite 100
Metairie, Louisiana 70001

Re:  *Albert Robert Lucidi*
     *v. Jefferson Parish Hospital Service District No. 2,*
     *d/b/a East Jefferson General Hospital*
     24th JDC No. 634-373 "I"

Dear Mr. Hall:

Enclosed is a copy of the Motion to Strike Expert Testimony and Expedited Hearing and Memorandum in Support that we have filed in this matter. Please note that this matter is scheduled to be heard on **September 25, 2009 at 9:00 a.m.** and thus there is no time for formal service of this pleading. **Therefore this will be the only notice you receive. Please mark your calendar accordingly.** Should you have any questions regarding the enclosed, please contact our office.

With kindest regards, I am,

Sincerely yours,

Rebecca Beck

RJB/mr

24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 634-373  DIVISION "I"

ALBERT ROBERT LUCIDI

VERSUS

JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO. 2
D/B/A EAST JEFFERSON GENERAL HOSPITAL

FILED:_____   _____
                                DEPUTY CLERK

### DEFENDANT'S MOTION TO STRIKE THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS AND EXPEDITED HEARING ON THE MOTION

NOW INTO COURT, through undersigned counsel, comes defendant, East Jefferson General Hospital, who hereby moves this Court to exclude from evidence the testimony of plaintiff's medical expert Crystal Keller R.N. for reasons more fully set forth in the accompanying memorandum.

Defendant also moves this court for an expedited hearing in this matter, since the trial is set for September 28, 2009. Deposition of plaintiff's expert did not occur until September 16, 2009 when Nurse Keller presented defendants with her curriculum vitae indicating her professional nursing experience as more fully outlined in the memorandum below.

WHEREFORE, defendant, East Jefferson General Hospital prays that the medical testimony of Crystal Keller R.N. be excluded from evidence and Ms. Keller not be allowed to give testimony at trial.

Defendant further prays that this matter be set on an expedited basis.

Respectfully submitted,

Chehardy, Sherman, Ellis, Murray, Recile,
Griffith, Stakelum & Hayes L.L.P.

*/s/ Rebecca Beck*

JACQUELINE BLANKENSHIP (20455)
REBECCA BECK (31619)
One Galleria Boulevard, Suite 1100
Metairie, Louisiana 70001
Telephone (504) 833-5600
Facsimile (504) 833-8080
Counsel for East Jefferson General Hospital

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on counsel of record by placing the same in the United States Mail, postage prepaid and properly addressed, this 21st day of September, 2009.

*/s/ Rebecca Beck*

REBECCA BECK

24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 634-373                                              DIVISION "I"

ALBERT ROBERT LUCIDI

VERSUS

JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO. 2
D/B/A EAST JEFFERSON GENERAL HOSPITAL

FILED:_____                    _____
                                            DEPUTY CLERK

## MEMORANDUM IN SUPPORT OF MOTION TO STRIKE EXPERT WITNESS

MAY IT PLEASE THE COURT:

This matter is set for trial on September 28, 2009. In preparation for trial, plaintiffs have identified nursing expert Crystal Keller to testify that East Jefferson General Hospital's nursing staff breached the standard of care. Nurse Keller was deposed on September 16, 2009. At that time it was revealed that Nurse Keller had not actively practiced clinical nursing for over twelve (12) years. (See Exhibit "A") As such Nurse Keller does not meet the statutory requirements of 9:2794 (D) which explicitly require an expert to be practicing in the area in which they are to testify.

### I. MEDICAL BACKGROUND

On December 18, 2003, Mr. Albert Lucidi, 74 years old, presented to the Emergency Department at East Jefferson General Hospital (EJGH). He complained of a ten-day history of productive cough with weakness but denied shortness of breath, chest pain or nausea and vomiting. He had intermittent dizziness. Dr. John Wales (ED physician) examined Mr. Lucidi and noted a history of CVA three years earlier, hypertension and atrial fibrillation. The patient also had recently been unable to urinate and had an indwelling catheter placed in his bladder at Ochsner a few days earlier. Dr. Wales's impression was: bronchitis, hypercoagulable state, dehydration and atrial fibrillation. Dr. Wales spoke with the patient's personal care physician (Dr. Madrigal)

1

and it was decided that Mr. Lucidi would be admitted for further evaluation and treatment.

Dr. Madrigal examined Mr. Lucidi and his diagnosis was pneumonia, increased bleeding time and atrial fibrillation.

On December 19th, Dr. Madrigal noted, when he saw Mr. Lucidi that the patient had difficulty expressing himself. Dr. Adams (Neurology) was consulted because of the patient's slurred speech. Dr. Adams saw the patient on December 20th and noted that Mr. Lucidi's neurological exam was unremarkable and his history did not suggest that a TIA had occurred. Dr. Adams ordered a CT of the brain to rule out any intracranial event or changes suggestive of a neurological problem. The CT performed on December 20th showed moderate atrophy but no acute intracranial abnormality.

CT of the chest revealed multifocal pneumonia. On December 21st, an MRI of the lumbar spine was performed because Mr. Lucidi complained of low back pain. The MRI showed multilevel spinal stenosis and neural foramina narrowing that was most significant at L4-5 and a chronic appearing end plate compression deformity at L1. Mr. Lucidi occasionally received Codeine for this pain.

Throughout the first four days of his admission Mr. Lucidi was compliant with his regimen of care. He did not demand to get out of bed to use the bathroom, because he had an indwelling foley catheter which drained his urine. On December 19, 2003 Mr. Lucidi did demand that his foley catheter be removed or he would pull it out and nursing obtained an order for the removal. After the catheter was removed, Mr. Lucidi was given a bedside urinal for his use.

On December 22nd at 0645, the patient was found "on the floor by the bathroom" in his room. He told the nursing staff that he was returning to bed when his "left leg gave out." Mr. Lucidi admits that he was never told he could get up to go to the bathroom. He complained of left hip pain. He was assisted back in bed by the nursing staff using a bed sheet. Nursing described the patient as awake, alert and oriented to person and place. After the patient's fall was reported to Dr. Madrigal, an x-ray was

2

ordered of the left hip. The hip x-ray revealed an intertrochanteric fracture of the left femur.

On December 23rd Mr. Lucidi underwent an ORIF of the left femur. He continued to receive medical treatment for his pneumonia, as well as rehabilitation for his hip.

## II. PROCEDURAL BACKGROUND

In December of 2004, Plaintiff filed a Petition for Medical Review Panel. In his Petition plaintiff alleged East Jefferson General Hospital breached the standard of care for failing to implement a proper falls management and/or fall prevention protocol. Specific allegations were:

- failing to implement proper fall protocol upon admit and prior to his first fall on 12/21
- failing to implement proper fall protocol upon admit and prior to his second fall on 12/22
- failure to follow its own fall protocol
- failure to adequately supervise and/or restrain Plaintiff
- failure to properly use, implement, or ensure the use of available bed rails and guardrails for Plaintiff
- failure to properly supervise a patient at high risk for falls
- failing to provide adequate warnings in Plaintiff's room that Plaintiff was a high risk for falls

The Medical Review Panel convened on May 23, 2006. The panel was composed of three practicing physicians. After reviewing all the evidence submitted by the parties, the panel rendered a unanimous decision that the evidence did not support the conclusion that East Jefferson General Hospital failed to comply with the standard of care. The panel found that the hospital took the appropriate preventive measures, the plaintiff was given appropriate instruction regarding activity limitations and the plaintiff was competent enough to understand the instructions given. (See Exhibit "B")

On August 14, 2006, Plaintiff filed a Petition for Damages. The allegations in the Petition were the same as raised in the Petition for Medical Review.

Plaintiffs have named Crystal Keller, R.N. as their expert witness to testify as to the applicable nursing standard of care in this matter. East Jefferson General Hospital moves to exclude the testimony of Nurse Crystal Keller because she was not practicing nursing at the time of the alleged malpractice in this case, nor is she currently practicing clinical nursing. As such, Nurse Keller does not meet the requirements for expert

3

testimony under La. Rev. Stat. 9:2794(D).

III. Law and Argument

    A. *Nurse Keller does not meet the requirements of La. Rev. Stat. § 9:2794*

La. Rev. Stat. § 9:2794 (D) provides in pertinent part:

D. (1) In a medical malpractice action against a physician, licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq., for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care **only if the person is a physician** who meets all of the following criteria:

(a) He is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose.

(b) He has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim.

(c) He is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care.

(d) He is licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq., is licensed to practice medicine by any other jurisdiction in the United States, or is a graduate of a medical school accredited by the American Medical Association's Liaison Committee on Medical Education or the American Osteopathic Association.

(2) For the purposes of this Subsection, "practicing medicine" or "medical practice" includes but is not limited to training residents or students at an accredited school of medicine or osteopathy or serving as a consulting physician to other physicians who provide direct patient care, upon the request of such other physicians.

(3) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness is board certified or has other substantial training or experience in an area of medical practice relevant to the claim and **is actively practicing in that area.**

(4) The court shall apply the criteria specified in Paragraphs (1), (2), and (3) of this Subsection in determining whether a person is qualified to offer expert testimony on the issue of whether the physician departed from accepted standards of medical care.

La. Rev. Stat. § 9:2794 (D) emphasis added.

    Clearly, Ms. Keller does not meet the statutory requirements. She is a legal nurse consultant retained by plaintiff in 2004 when the alleged malpractice action began. Ms. Keller last practiced active hands on nursing in 1997. At that time she became a full time legal nurse consultant and has not worked as a practicing clinical nurse since that time. At the time of the alleged malpractice (2003) Ms. Keller had not been in a hospital or

4

practiced hands on nursing for six (6) years. At the time of trial she has not practiced nursing for twelve (12) years. Ms. Keller is the exact type of expert the statute is designed to exclude.

### B. *Legal Nurse Consulting does not meet the definition of nursing practice.*

Registered nursing practice is defined in the Louisiana Nursing Practice Act, R.S. 37: 913 (13) and (14), and in the Administrative Code, LAC 46:XLVII.3703.

1.a. R.S. 37:913 (13) and (14) provide the statutory definition for the RN's scope of practice and defines the practice of nursing as follows:

> (13) "Practice of nursing" means the performance, with or without compensation, by an individual licensed by the board as a registered nurse, of functions requiring specialized knowledge and skills derived from the biological, physical and behavioral sciences. The practice of nursing or registered nursing shall not be deemed to include acts of medical diagnosis or medical prescriptions of therapeutic or corrective nature.
>
> (14) "Registered nursing" means the practice of the scope of nursing which is appropriate to the individual's educational level, knowledge, skills, and abilities, including:
>
> (a) Assessing the health status of an individual or group of individuals.
>
> (b) Establishing a nursing diagnosis and identifying health care needs, or both.
>
> (c) Establishing goals to meet identified health care needs.
>
> (d) Planning nursing care measures.
>
> (e) Implementing nursing care through such services as case finding, health instruction, health counseling, providing care supportive to or restorative of life and well-being and executing health care regimens as prescribed by licensed physicians, dentists, optometrists, or other authorized prescribers.
>
> (f) Delegating nursing interventions to qualified nursing personnel in accordance with criteria established by the board.
>
> (g) Maintaining nursing care rendered directly or indirectly.
>
> (h) Evaluating human responses to interventions.
>
> (i) Teaching the theory and practice of nursing.
>
> (j) Managing and supervising the practice of nursing.
>
> (k) Collaborating with licensed physicians, dentists, optometrists, and other health care providers in the management of health care.
>
> (l) Performing additional acts which are recognized within standards of nursing practice and which are authorized by the board.

*La. R.S. § 37:913 (13) (14).*

The Louisiana Administrative Code further defines nursing practice in LAC 46:XLVII § 3901(A) as follows:

### §3901. Legal Standards

A. The Louisiana State Board of Nursing recognizes that assessment, planning, intervention, evaluation, teaching, and supervision are the major responsibilities of the registered nurse in the practice of nursing.

A nurse/patient relationship is at the center of defining nursing practice. Plaintiff will likely argue that legal nurse consulting is the <u>practice</u> of nursing. According to the American Association of Legal Nurse Consultants, legal nurse consulting is a specialty practice of the nursing profession. Typical duties for a legal nurse consultant include: evaluating, reviewing and summarizing relevant medical records and other documents; composing deposition summaries; preparing discovery for trials; and creating reports. Consultants like Ms. Keller also provide expert opinions and testimony regarding the standard of care.[1]

The American Nurses Association (ANA) in their Statement on the Scope of Nursing Practice defined and characterized the clinical practice of nursing. The ANA recognizes one scope of clinical nursing practice with the core or essence of the practice of nursing being the nursing diagnosis and treatment of human responses to health and to illness.[2]

The Louisiana State Board of Nursing does recognize legal nurse consults as registered nurses for purposes of license renewal and continuing education requirements, but to date the nursing board has never promulgated rules that define or regulate the practice of legal nurse consulting.

Clearly, legal nurse consulting is not what was contemplated by the Louisiana State Board of Nursing, and the American Nurses Association in their definition of nursing practice.

---

[1] American Association of Legal Nurse Consultants. (1995) Standards of Legal Nurse Consulting Practice and Professional Performance. Glenview, IL: Author
[2] American Nurses Association. (2004) Nursing: Scope and Standards of Practice. Silver Springs, Maryland: Author.

6

### C  *La. Rev. Stat. § 9:2794(D) applies to nurses.*

If La. Rev. Stat. §9:2794(D) applies then Nurse Keller does not meet the statutes requirements and as such must not be allowed to give expert testimony. The original house bill that introduced this part of the statute allowed the judge to depart from the above reference criteria; however, the level of discretion was deleted in committee. Digest on House Bill 520 & Act No. 581. According, the requirements laid out in section (D) are mandatory.

Even though the statute refers to "physician," it clearly applies to allegations against nurses of the type alleged in this case. Plaintiff is alleging fault of East Jefferson General Hospital through its nursing staff. In such a case, the liability imputed upon the hospital must be viewed in light of the nurse's actions. Under this theory, the same standard of care and burden of proof requirements of a physician apply to the actions of a nurse. *Norton v. Argonaut Insurance Company*, 144 So.2d 249, 260 (La. App. 1st Cir. 1962); *Miques v. Sagrera*, 620 So.2d 463, 465 (La. App. 3d Cir. 1993). The Louisiana Supreme Court made this abundantly clear in *Cangelosi v. Our Lady of the Lake Regional Medical Center*, 564 So.2d 654 (La. 1989). Citing specifically to La. Rev. Stat. §9:2794(C), the court stated the "nurses who perform medical services are subject to the same standards of care and liability as are physicians." *Id.* at 661. Those standards of care and liability are spelled out in the subject statute which requires a showing that the medical treatment fell below the ordinary standard of care expected of health care providers, including nurses. The standard of care and the breach thereof is typically established by expert testimony. *Miques* at 465. It goes without saying that if the general rules of section 9:2794 apply, including the jurisprudential extension of the rule that expert testimony is usually required, then the mandatory expert requirements in subsection (D) also apply in the context of alleged nurse liability.

The cited cases do more than merely recognize that the old jurisprudential rule governing the plaintiff's burden of proof in nursing negligence case is identical to the burden of proof required by the statute. They specifically rely on La. Rev. Stat. §9:2794

7

leaving no doubt that it equally applies to nurses and doctors even though the statute refers to physicians alone. In *Triss v. Davis*, 2001-1921 (La. App. 4th Cir. 6/5/02), 820 So.2d 1204, the issue was whether nurses breached the standard of care in adequately monitoring the blood flow of a patient who developed a blood clot following surgery. The court cited *Miques* which, as noted above, stands for the proposition that nurses and other health care providers are subject to the same standard of care analysis as physicians. The *Triss* court then stated: It follows then that under La. R.S. §9:2794, the plaintiff must satisfy three requirements to prove a nurse's negligence." *Triss*, then quoted subsection (A) of the statute and directly applied it to the facts of the case. *Id.* at 1212.

The forgoing cases make it plain that subsection A of the statute, which sets forth the burden of proof, applies to nurses. Further, while no court has specifically addressed whether subsection (D), enacted in 2003, and subsection (B) apply to nurses, cases have so applied subsection (C), which specifically provides how the jury should be instructed in cases involving the negligence of physicians, dentists, optometrists, or chiropractors. *See Ball v. Charter Forest Behavioral Health System, Inc.*, 41,329 (La. App. 2d 8/23/06); 938 So.2d 1092 (applying La. Rev. Stat. §9:2794(C) to a nurse negligence case). It would be illogical to apply only parts of the statute to both nurses and doctors and other parts to physicians alone.

In extending the statute to nurse/hospital medical malpractice cases, the courts have acted consistently with the general principles of law found in Louisiana's Civil Code. La. Civil Code Article 4 provides: When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason and prevailing usages." *La. Civ. Code Art. 4*. In *Clarke v. Solvoy*, 2 La. 987, 1847 WL 3282 (La. 1847), a case wherein a plaintiff attempted to deposit funds into the registry of the court, which were claimed by various subcontractors who had done work on her property, to avoid conflicting claims by her creditors. At the time of the decision, there were no laws expressly providing for this remedy. One of the defendants appealed the judgment which allowed

8

the deposit and absolved the plaintiff of personal liability. The Court rejected the appeal stating:

> If any provision of law could be cited forbidding such an action, we should be bound to obey it, however questionable its policy; but in the absence of such a prohibition, the true test is, whether the ends of justice, for the administration of which courts are established, will be promoted and accomplished by the maintenance of this action. In answering this enquiry it is necessary to consider the situation of the parties; we may also take into view, a case where the legislator is silent, such analogies as are presented by our legislation, and may gather assistance from the practice of courts of justice in other civilized countries.

*Id.* at 2. The Court then went on to apply analogous Spanish law. In this case, like in *Clarke* there is no law that forbids application of the expert requirements of section 9:2794 to nurses. Unlike Clarke, no resort to foreign jurisprudence is necessary to find analogy. By analogy to non-nurses, who are addressed in the statute, section 9:2794 should and has been applied to nurses. As noted above, courts have not hesitated to draw this analogy in the context of alleged nurse malpractice. Reason dictates such a result. The obvious aim of subsection (D) is to prevent "professional experts" from testifying as to the standard of care when they lack the requisite knowledge, having not practiced either at the time of the alleged malpractice or at the time of their testimony. If nurses are held to the same standards of care and liability of physicians, the level of expertise offered to establish those standards should likewise be the same.

### III. CONCLUSION

Defendant East Jefferson General Hospital has shown that Nurse Crystal Keller does not meet the recognized definitions of nursing practice. Nurse Keller has not been in the hospital setting or provided patient care for over twelve years. Clearly, she does not meet the requirements of a practicing expert under the provisions of statute 9:2794(D).

For the foregoing reasons we ask this court to grant our motion and strike Nurse Keller as an expert witness.

9

Respectfully submitted:

Chehardy, Sherman, Ellis, Murray, Recile,
Griffith, Stakelum & Hayes L.L.P.

*Rebecca Beck*

JACQUELINE BLANKENSHIP (20455)
REBECCA BECK (31619)
One Galleria Boulevard, Suite 1100
Metairie, Louisiana 70001
Telephone (504) 833-5600
Facsimile (504) 833-8080
Counsel for East Jefferson General Hospital

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on counsel of record by placing same in the United States Mail, postage pre-paid and properly addressed this 21st day of September, 2009.

*Rebecca Beck*

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE.

DEPUTY CLERK
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, LA

10



## MEDICAL REVIEW PANEL PROCEEDING
### PCF NO. 2004-01971

### ALBERT R. LUCIDI V. EAST JEFFERSON GENERAL HOSPITAL

Panel
Edwin W. Dennard, M.D.
Mack R. Holdiness, M.D.
Dawn M. Puente, M.D.

Attorney Chairman
Thomas Keasler Foutz

### EXPERT OPINION

This medical review panel convened on May 23, 2006. The members of the panel, having reviewed the evidence submitted to them by the parties, having deliberated among themselves and having been questioned by counsel, did thereafter render the following expert opinions:

The evidence does *not* support the conclusion that East Jefferson General Hospital failed to comply with the appropriate standard of care.

We find that the hospital met the appropriate standard of care. The hospital was aware that the patient was at risk for falling and took appropriate preventive measures. For example, the patient was given a green armband. Additionally, on 12/19/03 and 12/20/03, the patient was given appropriate instructions (*e.g.*, do not get out of bed without assistance). The hospital records indicate that the patient was competent enough to understand these instructions (see 12/20/03 neurological exam). Lastly, we find that putting up all four handrails and/or using a posey restraint would not have been appropriate for this patient.

_____
Edwin W. Dennard, M.D.

_____
Dawn M. Puente, M.D.

_____
Mack R. Holdiness, M.D.

**EXHIBIT B**



## CURRICULUM VITAE

**NAME:** Crystal Bear Keller, R.N., C.L.N.C.

**BUSINESS ADDRESS:** 2124 Crenshaw Road
Lucedale, Mississippi 39452

**BUSINESS PHONE:** (601) 766-9600

**BIRTHDATE:** October 26, 1962

**EDUCATION:** University of New Orleans
New Orleans, Louisiana 1983

Charity Hospital School of Nursing
New Orleans, Louisiana 1986

**LICENSURE:** Louisiana Registered Nurse 1986

Virginia Registered Nurse 1987

Mississippi Registered Nurse 1999

**CERTIFICATIONS:** Legal Nurse Consulting Certification 1995

**EXPERIENCE:** Alton Ochsner Medical Foundation 1986 - 1987
Staff / Charge nurse on a high acuity medical-surgical floor. Responsible for directing team members in patient care, scheduling, making staff assignments as well as caring for a variety of medical-surgical patients including neurosurgical, general surgery, gastrointestinal, pulmonary and infectious disease.

University of Virginia Hospital 1987 - 1988
Staff nurse in the Surgical Intensive Care Unit for a Level One Trauma Center. Responsible for the care of thoracic / cardiovascular, neurosurgical, major trauma and general surgery patients.

EXHIBIT A

Regional Medical Affiliates 1988 – 1991
Agency nurse employed as supplemental staff for a variety of hospitals. Involved rotating to Intensive Care, Coronary Care and Emergency Rooms.

Universal Nursing Services 1988-1991
Agency nurse employed as supplemental staff for a variety of hospitals. Involved rotating to Intensive Care, Coronary Care, and Emergency Room.

Continental Rehabilitation Resources 1991-1993
Registered Nurse working as a Rehabilitation Coordinator performing medical case management along with Legal Nurse Consulting.

Alton Ochsner Medical Foundation 1993-1995
Registered nurse employed as supplemental staff for critical care. Involved rotating to Intensive Care, Coronary Care and Emergency Room.

Quality Relief Staffing 1993-1997
Agency nurse employed as supplemental staff for a variety of hospitals. Involved rotating to Intensive Care, Coronary Care and Emergency Room.

Medical-Legal Consulting Services 1993-present
Founder and Director. Legal Nurse Consultant assisting plaintiff and defense attorneys with all aspects of medical malpractice, wrongful death, worker's compensation, personal injury, products liability, criminal and negligence cases.

**HONORS/AWARDS:** Certification of Distinction for Outstanding Clinical Performance – Charity Hospital School of Nursing.

Who's Who Society of American Nursing

Strathmore's Who's Who

**ACCOMPLISHMENTS:** Completed extensive critical care course.

Involved in Neurosurgical Study for Vasospasms.

Involved in pilot program for patient classification system.

**SOCIETY MEMBERSHIPS:** American Nursing Association
American Association of Legal Nurse Consultants
American Association of Critical Care Nurses

**PROFESSIONAL APPOINTMENTS:**

Membership Chairperson for the Louisiana Chapter
Of the American Association of Legal Nurse Consultants
1996-1997.

**PUBLICATIONS:** Keller, C.B. *The Role of the Legal Nurse Consultant.*
The Louisiana Docket; January – March, 1999.

Keller, C.B. *Current Issues in Nursing Liability.*
Nursing Law in Mississippi; July, 1999.

Keller, C.B. *Liability Insurance and Nursing.*
Nursing Law in Mississippi; July, 1999.

24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 634-373                                                         DIVISION " I "

ALBERT ROBERT LUCIDI

VERSUS

JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO. 2
D/B/A EAST JEFFERSON GENERAL HOSPITAL

FILED:_____

DEPUTY CLERK

## RULE TO SHOW CAUSE

**CONSIDERING THE FOREGOING MOTION;**

IT IS ORDERED, that plaintiff, Albert Lucidi, appear and show cause on the 25 day of September, 2009 at 9 o'clock A.m., why the expert testimony of Crystal Keller R.N. should not be excluded from evidence.

Gretna, Louisiana this 21 day of September, 2009.

S/ NANCY A. MILLER

_____
JUDGE

PLEASE SERVE:

Albert Robert Lucidi
Through his attorney of record,
Jim S. Hall, Esquire
800 N. Causeway Blvd.
Suite 100
Metairie, La. 70001

East Jefferson General Hospital
Through their attorney of record
Rebecca Beck, Esquire
One Galleria Boulevard, Suite 1100
Metairie, Louisiana 70001

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE.

_____
DEPUTY CLERK
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, LA.