UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE PRODUCTS | * | |
| | LIABILITY LITIGATION | * | SECTION "N" (5) |
| | | * | |
| | | * | JUDGE ENGELHARDT |
| | | * | MAGISTRATE CHASEZ |
| | | * | |
| THIS DOCUMENT IS RELATED TO | | * | |
| | | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | | * | |
| *Inc., et al*, Docket No. 09-2892; | | * | |
| Alana Alexander, individually and on behalf | | * | |
| of Christopher Cooper | | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFF'S RESPONSE TO FLUOR ENTERPISES, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiff Alana Alexander ("Ms. Alexander" or "Plaintiff") replies to Fluor's ("FEI") "Motion for Judgment as a Matter of Law to dismiss Plaintiffs' negligence claims against FEI on the grounds that there is insufficient evidence to establish (1) causation; (2) any duty of FEI to warn plaintiffs of alleged dangers associated with formaldehyde in their trailer; (3) vicarious liability of FEI for any alleged negligent installment in connection with the Alexander travel trailer by FEI's independent subcontractor, MLU Services, Inc. (MLU), or MLU's subcontractor, Dan's Mobile Home Services (the "Lemieuxs"); or (4) negligence by any party in the trailer installation process," Rec. Doc. 3572-2, and shows hereto:

## I. STANDARD OF REVIEW.

Under Federal Rule of Civil Procedure 50, judgment as a matter of law is appropriate "only if the facts and inferences point so strongly in favor of one party that reasonable minds could not disagree." *Info. Commc'n Corp. v. Unisys Corp.*, 181 F.3d 629, 633 (5th Cir.1999) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc)) (additional citations omitted). In reaching such a determination, the Court must consider all of the evidence in the light most favorable to the non-movant. *Thompson v. Connick*, 2009 WL 2424566 (5th Cir. 2009) (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (overruled on other grounds by *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997)). Importantly, in evaluating a motion for judgment as a matter of law, this Court should not assess the credibility of witnesses or weigh the evidence, *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 150 (2000), and judgment as a matter of law is only appropriate where the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable men could not arrive at a contrary verdict. *Munoz v. State Farm Lloyds of Tex.*, 522 F.3d 568, 574 (5th Cir. 2008) (citing *Boeing,* 411 F.2d 365).

Although FEI cites four reasons to support its motion for judgment as a matter of law, FEI essentially relies on three circuitous arguments: (1) FEI had no duty to the Plaintiff nor did FEI cause Plaintiff's damages;[1] (2) FEI had no duty to warn Plaintiff of formaldehyde dangers and (3) FEI is not vicariously liable for the

---

[1] For the ease and convenience of this Court, Plaintiff has logically combined FEI's first and second arguments.

damages caused by independent contractors.  FEI fails to show that "there is no legally sufficient evidentiary basis for a reasonable jury to find."  FED. R. CIV. P. 50(a)(1).  Instead, because there exists sufficient evidence for a reasonable juror to reach differing conclusions, FEI has not established, as a matter of law, that it is entitled to judgment.  See *Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 179 (5th Cir. 2006).  Therefore, this Court should deny FEI's motion for judgment as a matter of law.

## II.    THERE EXISTS SUFFICIENT EVIDENCE REGARDING DUTY, CAUSATION & DAMAGES.

As accepted by FEI, a motion for judgment as a matter of law is only appropriate where the facts are so clear as to require only one particular result. *SMI Owen Stell Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008). In an attempt to prove factual insufficiency, FEI embarks on a legal analysis arguing that it entertained no duty to Plaintiff, and that its duty, if any, was solely limited to FEMA per a contractual obligation.  Rec. Doc. 3572-2, p. 5.  However, FEI fails to recognize that its lack of a contractual obligation to Plaintiff does not absolve it of all liability.  Instead, as recognized as *Griffin v. Shelter Ins. Co.,* 857 So.2d 603, 605 (La. App. 1st Cir. 2003), "there is an almost universal legal duty on the part of a defendant in a negligence case to conform to the standard of conduct of a reasonable person in like circumstances.  But whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case, and the relationship of the parties."  *Id.*    As such, for a duty to be

imposed, a contractual relationship is not necessary. *Bowman v. City of Baton Rouge/Parish of East Baton Rouge*, 849 So.2d 622, 627 (La. App. 1st Cir. 2003).

In determining whether to impose liability under a duty/risk analysis, Louisiana law proscribes a four-prong test:

> (1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred? (2) Did the defendant(s) owe a duty to the plaintiff? (3) Was the duty breached? (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?"

LA. CIV. CODE ART. 2315; *see also Davis v. Witt*, 851 So.2d 1119, 1127 (La. 2003); *see also Mathieu v.Imperial Toy Corp.*, 646 So.2d 318, 321-22 (La. 1994). In addition, "[w]hether a duty is owed is a question of law. In deciding whether to impose a duty in a particular case, the court must make a policy decision <u>in light of the unique facts and circumstances presented</u>. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So.2d 627, 632-33 (La. 2006) (emphasis added).

While FEI is correct in its assertion that "Louisiana law does not impose upon FEI the duty to provide the plaintiffs with a trailer free from formaldehyde," the "unique facts and circumstances presented" impose a duty upon FEI. Here, Plaintiff was not an invitee, tenant, or any classification explicitly useful in determining duty; instead, after a horrific experience suffered by thousands, Plaintiff was provided an EHU that was installed by FEI for Plaintiff's benefit. By contract and through its quasi-beneficiary relationship to the Plaintiff, FEI

retained a duty to act with reasonable care in installing Plaintiff's EHU. Without FEI's actions, Plaintiff's trailer would not have been installed or damaged.

Furthermore, Louisiana law does impose "an almost universal duty on the part of the defendant in a negligence action to use reasonable care to avoid injury to another." *Boykin v. La. Transit Co.*, 707 So.2d 1225, 1231 (La. 1998). Here, because FEI engaged in providing EHUs to Plaintiff, FEI had the duty to act reasonably with respect to its installation. In "jacking up" the trailer, FEI failed to act reasonably and consequently caused damages to Plaintiff. For example, FEI provided explicit instructions on installing and "jacking up" the EHUs. *See, e.g.,* Trial Exhibit 411.[2]

Furthermore, under Louisiana jurisprudence, parties who voluntarily assume a duty must perform that duty in a reasonable and prudent manner. *Bujol v. Entergy Serv., Inc.*, 922 So.2d 1113, 1129 (La. 2004). Negligent breach of a duty which has been voluntarily assumed may create civil liability under Louisiana's duty/risk analysis. *Moore v. Safeway, Inc.*, 700 So.2d 831, 846 (La. App. 1st Cir. 1996). The Louisiana Supreme Court has decided numerous cases

---

[2] TOOL BOX TRAINING METHODS:

OVERVIEW: Jacking operations while blocking or unblocking mobile home, park models or travel trailers, when done incorrectly, have the potential to cause property damage, injury or even death. The purpose of this topic is to reinforce proper techniques and procedures you are required to use when participating in these operations.

Work from end to end. Never side to side.

Never allow more than 1" clearance between the beam and the pier or cribbing during raising or lowering operations. When lowering come down slowly maintaining 1" clearance until the weight is fully on the tires and tongue.

Exhibit 411.

by applying the doctrine of voluntary assumption as a basis for the existence of a duty of reasonable care. *See, e.g. LeBlanc v. Stevenson*, 770 So.2d 766 (La. 2000); *Rick v. State Dep't of Transportation and Development*, 630 So.2d 1271 (La. 1994) (overruled on other grounds); *Blair v. Tynes,* 621 So.2d 591 (La. 1993); *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364 (La. 1984).

Additionally, §324A of Restatement (Second) of Torts provides for this "Good Samaritan Doctrine" as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise reasonable care increases the risk of harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

§324A of Restatement (Second) of Torts.

Here, when FEI assumed the responsibility to "train" its subcontractors on how to install the travel trailers, it also assumed the responsibility to accept any risks that may be involved; therefore, FEI had a duty to act in a reasonable manner. This duty was clearly breached when FEI failed to properly instruct its subcontractors on the proper jacking process or in its failure to instruct the subcontractors on how not to perform the jacking process.[3]  For example, Daryl

---

[3]  Q. Travis, did Fluor ever require or offer your crew any formal training or instruction on how to safely hoist and install a travel trailer?

  A. No, sir, not me personally.

Lemieux, the installer of Plaintiff's trailer, provided that he had never received the "Toolbox Training Methods," Trial Exhibit 411, which are the guidelines for safely installing an EHU:

> Q. Have you ever seen this document in your training of how to jack trailers by Fluor? And you took a – let me start over. When you started to haul trailers for Fluor, were you ever shown this document?
>
> A. We went over several things. I mean, I don't remember it.
>
> Q. It's called proper jacking techniques, toolbox training?
>
> A. Right.
>
> Q. And do you see where it says No. 7?

---

> Q. To your knowledge to anyone, did anyone else in your crew receive formal training or instruction?
>
> A. Not to my knowledge.
>
> Q. Did you or anyone in this Gator crew ever attend, or were any of you required to attend, a single class or instructional session with FLUOR on how to properly hoist, block, or install a travel trailer?
>
> A. No, sir.
>
> Q. Did Fluor ever provide a written procedure, protocol, or set of steps to follow in installing or hoisting a travel trailer?
>
> A. If they did, I didn't see it.
> Q. Did Fluor ever provide any engineering guidelines or Drawings for the proper hoisting of a travel trailer?
>
> A. No, sir.

Trial Testimony of Travis Allen, Sept. 16, 2009, P. 228 L. 4-P. 229 L. 3; *see also*

> A. Uh-huh.
>
> Q. "Work from end-to-end, never side-to-side." To your recollection, Mr. Lemieux, did anyone from Fluor ever show you this document or tell you that's how you should do it?
>
> A. No….

Trial Testimony of Daryl Lemieux, Sept. 16, 2009, P. 280 L. 5-19.

It is clear under the Good Samaritan Doctrine, that FEI assumed the duty to properly train its subcontractors,[4] and therefore it is now responsible for the negligent manner in which they performed. As opined by Charles David Moore, a civil engineering expert, the methods utilized to install Plaintiff's trailer caused structural damage.

> Q. My question to you is, based on your report and specific to your opinions that you had when you came in here today and when you wrote that report, how did the testimony of Darryl Lemieux confirm that there was improper jacking and uneven jacking that affected the structural integrity of that trailer? Please demonstrate.
>
> A. Okay. First off, like I say, my report indicates that I do think that improper jacking would cause – probably

---

[4] *See* Exhibit 501, IA/TAC.

2.2.8 TRAINING

2.2.8.1 Contractor shall be responsible for providing training to its staff.

2.2.8.2 Training shall entail guidance on policies and procedures related to FEMA's programs. The trained Contractor staff members shall provide subsequent training to Contractor personnel based on a Training Plan for its staff, *including temporary and subcontract employees*, that will ensure that all deployed contractor personnel are adequately trained in their field of expertise and relevant FEMA programs, policies, and procedures. *Emphasis added*.

> cause damage to this unit. The testimony of Mr. Lemieux yesterday really just further confirmed that.

Trial Testimony of Charles David Moore, Sept. 17, 2009, P. 85 L. 21-P. 86 L. 5.

In addition, Mr. Moore provides specificity as to the type of damage resulting from the negligent installation of Plaintiff's EHU.

> Q. I need to stop you for a minute and ask you, during the drooping phenomenon, we'll call it, while its jacked up, structurally, was, in your opinion, based on a reasonable engineering probability, was there damage done to this trailer?
>
> A. Yes. I do believe it is. Because when this steel then droops, it causes everything that's attached to it to droop.
>
> Well, everything that's attached to it is also very lightweight structure. Its very small wood members…. so the structure of this upper frame is much lighter than you would expect so that as this droops, it's also going to droop. Now, this side is supported by blocks already so that when this side droops, this side is not, and so the whole thing is distorting and warping.

*Id.* at P. 89 L. 7-25.

> Q. ….Is that water intrusion, in your opinion, consistent with your view that improper jacking on February 17, 2006, by the Fluor sub caused structural damage that allowed the water to intrude?
>
> A. Yes sir, it is.

*Id.* at P. 91 L. 2-6. The water intrusion described by Mr. Moore contributed to increased off-gassing of formaldehyde in the Plaintiff's trailer.[5] Thus, because

---

[5] *See, e.g.*, Trial Testimony of Marco Kaltofen, Sept. 18, 2009, P. 124 L. 16-25.

> When it's warmer, more formaldehyde is released. When it's more *humid*, more formaldehyde is released. If you increase ventilation, the formaldehyde concentration goes down. As the trailer gets older, you're weighing how much formaldehyde

9

FEI failed to perform its duty to act with reasonable care in installing Plaintiff's EHU, it is liable for Plaintiff's damages.

Here, Plaintiff has suffered permanent damage that is directly attributable to the formaldehyde found and exacerbated by FEI's actions. As noted by Dr. Kornberg, Christopher Cooper has sustained injuries that are permanent:

> Q. Is ciliated columnar epithelial damage permanent?
>
> A. It usually is. It can recover, but, in this particular case, I don't think that that's going to be the case.
>
> Q. "So the loss of ciliated columnar epithelium should perhaps explain different discomfort symptoms reported by a formaldehyde-exposed worker, such as increased secretion, formation of crusts and nasal blockage."
>
> What does this sentence have in terms of importance to you in terms of what we saw from Dr. Barnes and Dr. Pacheco's clinical evaluations of Chris Cooper?
>
> A. It's not only consistent with what we're seeing, but the more important word is it's persistent. So it's a combination of congruency along with extended duration, which is important.

Trial Testimony of Dr. James P. Kornberg, Sept. 21, 2009, P. 67, L. 10-12. Thus, because it is "[Dr. Kornberg's] medical opinion to a reasonable degree of medical probability that [Christopher Cooper's] asthma has been worsened," Plaintiff has suffered damages as result of FEI's breach of duty. *Id.* at 71, L. 12-14.

---

> you're losing from the materials it's made of. On the other hand, the trailer does get progressively more damaged on average as it gets older, and you might actually be releasing more formaldehyde because of that damage, *water intrusion* or breakage, or exposing components that weren't exposed before.

*Id.* (Emphasis Added).

## II. **FEI HAD A DUTY TO WARN PLAINTIFF OF FORMALDEHYDE DANGERS.**

FEI essentially claims that the dismissal of the LPLA claims rendered any duty to warn Plaintiff null and void. However, FEI misstates its relationship with Plaintiff; thus drastically effecting the application of Louisiana law. FEI claims that its relationship with Plaintiff was that akin to "strangers." However, in dictating policy to its employees, FEI referred to EHU inhabitants as "customers." *See* Trial Exhibit # 437 at Bates No. FL-FCA 019988, FEI's Travel Trailer Training Syllabus. As such, with respect to customers, Louisiana law imposes a duty to warn customers of hazards. *See Sutherland, v. Hibernia Corp.*, 746 So.2d 294, 296 (1st La. App. 1999). In addition, Louisiana law imposes a duty to protect customers. *Gonzales v. Winn Dixie*; 326 So.2d 486 (La.1976); *Borne v. Bourg*, 327 So.2d 607, 610 (4th Cir. 1976).

Here, because FEI knew about formaldehyde problems and resulting medical issues as early as March 2006, FEI breached its duty to warn Plaintiff. *See, e.g.,* Exhibit 492. Noteworthy, FEI was aware as of March 2006 that formaldehyde (1) is classified as a carcinogen with the strongest possible involvement with cancer being nasal and nasopharyngeal cancer and (2) causes irritation to the eyes, lungs, and throat, build-up of fluid in the lungs, severe eye and skin burns, asthma-like allergy, asthma attacks, and bronchitis. *Id.* at Bates no. 026636. FEI's early knowledge of such serious medical conditions illustrates its glaring failure and breach of its duty to warn Plaintiff.

### III. **FEI IS RESPONSIBLE FOR THE NEGLIGENT ACTS OF ITS INDEPENDENT CONTRACTORS.**

Lastly, FEI argues that it is entitled to judgment as a matter of law because it is not responsible for the acts of its independent contractors. FEI's argument fails for two reasons. First, FEI specifically contracted with FEMA and agreed that it would be responsible for the training and essentially all installation acts performed by independent contractors. Second, because FEI authorized its independent contractor's to install, or "jack up" the EHUs in a negligent manner, FEI is thereby liable.

In FEI's contract with FEMA, FEI provided that it was responsible for the subcontractors hired to perform the installation of EHUs. Richard Sober, FEI's subcontractor manager, explained FEI's duties under the contract:

> Q. But regardless, all the travel trailers that are installed in the IA-TAC contract between FEMA and Fluor, Fluor is ultimately responsible for the proper installation of those travel trailers, isn't that right?
>
> A. I would say yes, they are the ultimate responsible individual, yes.
>
> Q. Ultimately, Fluor was responsible for seeing that their subcontractors who installed these travel trailers, and if those subcontractors, in turn, had any lower-tier subcontractors, Fluor was responsible for ensuring that all those subcontractors did the work in installing the travel trailers in conformance with the contract between Fluor and FEMA; isn't that right?
>
> A. They were-yes, because they had to flow down all of the Requirements from the prime contractor.

Trial Testimony of Richard Sober, Sept. 17, 2009, P. 18 L. 5-18.

Second, FEI is liable for its independent contractors because FEI instructed its contractors to "jack up" the EHUs and approved their methods through routine inspection. "As a general rule, neither the owner nor the general contractor is liable for the negligence of an independent contractor who performs work for the owner or general contractor." *Hartman v. Carco, Inc.,* 942 So.2d1140, 1143 (La. App. 5th Cir. 2006). Two exceptions to this rule are that the principal is liable to third parties if "(1) the work performed by the contractor is ultra hazardous; or (2) <u>the principal has expressly or impliedly authorized the performance of work in a particular manner which rendered the work unsafe.</u>" *Parker v. Boise Southern Co.*, 570 So.2d 6, 11 (La. App. 3rdCir. 1990) (emphasis added). FEI's actions fall within the scope of implicit authorization. FEI inspected the work of its subcontractors after installation as noted by Heath Allen.

> Q. Here's my question: after you-all would install a trailer, were there inspectors that came out there?
>
> A. Yes, sir.
>
> Q. And did they work for Fluor?
>
> A. Yes, sir.

Trial Testimony of Heath Allen, Sept. 16, 2009, P. 245, L. 2-6. Similarly, Daryl Lemieux confirmed FEI involvement, "[t]his is showing that its ready for occupancy, the RFO, from where I went in and inspected the unit, and the inspector also signed off." Trial Testimony of Daryl Lemieux, Sept. 17, 2009, P. 267, L. 7-9. Mr. Lemieux further testified as follows:

> Q. And as far as you're personally concerned, you're simply taking the trailer that they give you?
>
> A. Correct.
>
> Q. Do you have the authority to say that, We're rejecting this trailer?
>
> A. Do not.

*Id.* at P. 272, L. 3-8.

> Q. So did the wall in the bedroom that was busted out when you all picked it up get fixed before you set it up?
>
> A. Apparently so. If it hadn't have been fixed, it would've never been signed off. I mean, it went through several different hands. I mean, a lot of paperwork. If there was a problem with the wall, it would have been noted on the paperwork.

*Id.* at P. 275, L. 8-14. Here, FEI inspected its subcontractors work, thereby implicitly approving their actions and falling within the exception to independent contractor liability.

## **CONCLUSION**

FEI attempts to obtain judgment as a matter of law through its assertions that (1) FEI had no duty to the Plaintiff nor did FEI cause Plaintiff's damages; (2) FEI had no duty to warn Plaintiff of formaldehyde dangers and (3) FEI is not liable for the damages caused by independent contractors. Because FEI fails to prove that there exists any issue in which the jury could not reasonably disagree, this Court should deny FEI's "Motion for Judgment as a Matter of Law to dismiss Plaintiff's negligence claims against Fluor.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier
& Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras St.
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:    504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier
& Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras St.
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas #24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
Dennis Reich, Texas #16739600

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

 s/Gerald E. Meunier
GERALD E. MEUNIER, #9471