**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  FEMA TRAILER            * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS  * | |
| LIABILITY LITIGATION            * | SECTION "N" (5) |
| * | |
| * | JUDGE ENGELHARDT |
| * | MAGISTRATE CHASEZ |
| * | |
| THIS DOCUMENT IS RELATED TO  * | |
| * | |
| *Charlie Age, et al v. Gulf Stream Coach*  * | |
| *Inc., et al*, Docket No. 09-2892;  * | |
| Alana Alexander, individually and on behalf of  * | |
| Christopher Cooper  * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR
<u>JUDGMENT AS A MATTER OF LAW AGAINST FLUOR ENTERPRISES, INC.</u>**

Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper ("Plaintiff" or "Ms. Alexander"), submits this memorandum in support of her Motion for Judgment as a Matter of Law Against Fluor Enterprises, Inc. and, in support, would show the following:

**<u>BACKGROUND</u>**

This case is one of thousands of cases filed in this Multi District Litigation involving travel trailers provided to victims of Hurricanes Katrina and Rita.

The case of *Age, et al v. Gulf Stream Coach, Inc., et al* (of which Ms. Alexander is a Plaintiff) was filed on February 27, 2009. On April 6, 2009, the Court selected Ms. Alexander as the first trial plaintiff.

On August 19, 2009, Fluor Enterprises, Inc. ("FEI") filed its Answer, in which it asserted various affirmative defenses. (Docket Entry No. 2765). Plaintiff now moves for judgment as a matter of law on some of those affirmative defenses.

## ARGUMENT AND AUTHORITIES

### I.   JUDGMENT AS A MATTER OF LAW STANDARD

Judgment as a matter of law is only appropriate where the Court finds that a reasonable jury could not have a legally sufficient evidentiary basis to find for the plaintiffs on an issue. FED. R. CIV. P. 50(a); see *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The Court must consider all of the evidence in light and with all reasonable inferences most favorable to the party opposed to the motion. *Thompson v. Connick*, 2009 WL 2424566 (5th Cir. 2009) (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (*overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997)). It is only if the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, then a granting of the motion is proper. *Munoz v. State Farm Lloyds of Texas*, 522 F.3d 568, 574 (5th Cir. 2008) (citing *Boeing,* 411 F.2d at 374-75)).

This motion is submitted at the close of all evidence.  Plaintiff contends that FEI has not introduced legally sufficient evidence to submit the below issues to the jury.

### II.   FEI'S AFFIRMATIVE DEFENSES

    A.   Second Defense: Limitations.

FEI's second affirmative defense provides:

> The claims against FEI are, or may be, barred in whole or in part by Plaintiffs' failure to institute suit within the period of time required by the applicable statutes of limitation and/or any applicable limitation of actions, or be preemption or prescription, or failure to initiate suit within the period of time required by the applicable prescriptive periods and/or any limitation of actions contained in any applicable contracts.  Plaintiffs' claims are

barred by prescription on the face of the Third Supplemental and Amended Complaint.

It is clear that Plaintiff has filed her claims within the applicable statute of limitations. Under Louisiana law, actions sounding in tort "are subject to a liberative prescription of one year." *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 2009 WL 1683289 *4 (E.D. La. June 15, 2009) (citing LA. CIV. CODE ANN. art. 3492). "Courts should resolve doubts about a prescription question in favor of giving the litigant his day in court." *Id.* at *5 (citing *Orthopaedic Clinic of Monroe v. Ruhl*, 786 So.2d 323, 328 (La.App.2d Cir.), *writ denied,* 798 So.2d 970 (La.2001)). "Prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished." *Id.* (citing *Landry v. Blaise, Inc.*, 774 So.2d 187, 190 (La. App. 4th Cir.), *writ denied*, 776 So.2d (La. 2000)). "Accordingly if a petition does not show that it has prescribed on its face, the burden is on the party raising the objection of prescription to prove the facts to support prescription." *Id.* (citing *Landry*, 774 So.2d at 190). Gulf Stream cannot meet this burden.

The first putative class action was filed on May 18, 2006. *Hilliard, et a.l v. Gulf Stream, et al*, Cause No. 2:06-cv-02576-KDE-ALC (Docket Entry No. 1.). Plaintiff moved in to a Gulf Stream travel trailer installed by FEI in May 2006. *See* Stipulation of Fact No. 8.

The Court denied the Plaintiff's Motion for Class Certification on December 29, 2008 (Docket Entry No. 1014). The statute of limitations was tolled during this time period. *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been

permitted to continue as a class action.")

Plaintiff filed her lawsuit against FEI on February 27, 2009.  *See Age, et al v. Gulf Stream, et al*, Cause No. 2:09-cv-02892 (Docket Entry No. 1).  Therefore, she filed her claims within two months of when the statute began to run and FEI has failed to produce any evidence that statute of limitation had already expired

B. <u>Third Defense: Government Contractor.</u>

FEI alleges in its third affirmative defense that:

> FEI, through subcontractors, hauled and installed all travel trailers, including plaintiffs' travel trailer, according to the specifications of the United States Government, which had specific requirements regarding the installation of the travel trailers, with specifications FEI strictly complied. Further, FEI had no knowledge superior to that of FEMA that was not shared with FEMA.  Any alleged defect claimed herein, which is specifically denied, is the result of the standards mandated by the United States government over which FEI had no control.  Accordingly, FEI is immunized from liability by the government contractor defense.

As enunciated by the United States Supreme Court in the seminal case *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), "state law which holds Government contractors liable for design defect in military equipment does in some circumstances present a 'significant conflict' with federal policy and must be displaced."  *Id.* at 512. The basic purpose of the government contractor defense is to "prevent the contractor from being held liable when the government is actually at fault," *Trevino v. General Dynamics Corp.*, 865 F.2d 1474 (5th Cir.), *cert. denied*, 493 U.S. 935 (1989), as "tort liability principles properly seek to impose liability on the wrongdoer whose act or omission caused the injury, not the otherwise innocent contractor whose only role in causing the injury was the proper performance of a plan supplied by the government." *In re Agent Orange Products Liability Litigation*, 506 F.Supp. 762, 793-94 (E.D.N.Y),

*rev'd on other grounds*, 635 F.2d 987 (2d Cir. 1980), *cert. denied sub nom; Diamond Shamrock Chemical Co. v. Ryan*, 465 U.S. 1067 (1984). However, as noted by the Fifth Circuit Court of Appeals:

> The protective shield in favor of the contractor collapses when the actions of the government contractor — and not those of the Government — produce the damaging defect. In such a situation, fairness dictates that a government contractor should not be permitted to escape liability by asserting the sovereign immunity of the Government.

*Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 245-46 (5th Cir. 2000). To determine whether this protective shield is impenetrable, the United States Supreme Court in *Boyle* articulated three elements:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States.

*Boyle*, 487 U.S. at 513. Thus, if the contractor cannot prove all of the elements, the protective shield no longer stands and the contractor remains liable. *Smith v. Xerox Corp.*, 866 F.3d 135, 136-37 (5th Cir. 1989) (emphasis added). Here, FEI should not be permitted to escape liability for its discretionary, independent, negligent acts, and FEI's motion for summary judgment based on the government contractor defense must be denied for three distinct reasons: (1) the IA/TAC lacked specificity and left much discretion to FEI with regard to the "jacking up" of the mobile trailers; (2) FEI failed to comply with the remaining specifications enunciated in the IA/TAC; and finally (3) FEI knew of the hazards of formaldehyde and failed to inform FEMA.

1. FEI Retained Discretion Over Key Portions of the EHU Implementation.

The first element of the government contractor defense requires the government to provide precise specifications leaving no discretion to the contractor. *Boyle*, 487 U.S. at 513; *Wisner v. Unisys Corp.*, 917 F. Supp. 1501, 1510 (DC Kan 1996) (noting that "virtually microscopic precision" meets the first element). The specifications need not address the specific defect alleged, but address the design feature in question. *Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000). Here, as noted by FEI itself, because "FEMA did not explicitly tell FEI how to get the trailer from the ground on two axles and a tongue jack up onto the piers," Rec. Doc. 2783-2, p. 22, FEI retained complete discretion over the "jacking up" of the mobile trailers, thus precluding satisfaction of the first element of the government contractor defense.

In *Trevino v. General Dynamics Corp.*, 865 F.2d 1474 (5th Cir. 1989), the Fifth Circuit provided a lengthy analysis of the first element noting that governmental approval of imprecise or general guidelines implicitly gave contractors discretion. *Id*. at 1480-81 ("If the government approved imprecise or general guidelines, then discretion over important design choices would be left to the government contractor."). Additionally, *Trevino* notes the minimal degree of discretion required before a contractor is ineligible for the government contractor defense:

> The government exercises its discretion over the design when it actually chooses a design feature. The government delegates the design discretion when it buys a product designed by a private manufacturer; when it contracts for the design of a product or a feature of a product, leaving the critical design decisions to the private contractor; or when it contracts out the design of a concept generated by the government, requiring only that the final design satisfy minimal or general standards established by the government. If the government delegates the design discretion to the contractor, the exercise of that discretion

> does not revert to the government by the mere retention of a right of "final approval" of a design nor by the mere "approval" of the design without any substantive review or evaluation of the relevant design features or with a review to determine only that the design complies with the general requirements initially established by the government. The mere signature of a government employee on the "approval line" of a contractor's working drawings, without more, does not establish the government contractor defense.

*Id.* at 1480.

In arguing that FEMA provided precise specifications with regard to the EHUs, FEI begins by detailing the extent of the IA/TAC.  While the cited portions of the IA/TAC are seemingly specific, such portions do not paint a complete picture of the tasks to be completed by FEI nor do they articulate what truly occurred during implementation.  For instance, the IA/TAC does not provide any specifics as to "jacking up" the trailers.  *See* Exhibit 501, Bates nos. 000113-000114.  This is of particular significance because the means and methods of "jacking up" the trailers utilized by FEI installers was a major cause in increasing formaldehyde exposure to Plaintiff.

> Q.  My question to you is, based on your report and specific to your opinions that you had when you came in here today and when you wrote that report, how did the testimony of Darryl Lemieux confirm that there was improper jacking and uneven jacking that affected the structural integrity of that trailer?  Please demonstrate.
>
> A.  Okay.  First off, like I say, my report indicates that I do think that improper jacking would cause – probably cause damage to this unit.  The testimony of Mr. Lemieux yesterday really just further confirmed that.

Trial Testimony of Charles David Moore, Sept. 21, 2009, P. 85 L. 21-P. 86 L. 5.  It is clear that FEI exercised its discretion with respect to "jacking up" Plaintiff's trailer, and that their poor use of discretion with respect to "jacking up" the trailer at issue damaged

Plaintiff.

While the government is not required to issue standards that remove absolutely all discretion from the contractor, the government must provide "reasonably precise specifications" as to the design of the defective component. *Carley v. Wheeled Coach*, 991 F.2d 1117, 1125 (3d Cir. 1993) (finding that specifying the maximum height of forty-three inches for the design feature in question was reasonably specific). While FEMA did provide guidance with regard to some aspects of setting up the mobile trailer and continuous maintenance, FEMA did not provide procedures regarding the "jacking up" of the mobile trailers. Nowhere in the text of the IA/TAC does FEMA provide "reasonably precise specifications" with regard to "jacking up" the mobile trailer.

Ultimately, FEI is unable to provide precise specifications provided or approved by the government regarding the "jacking up" and portions of the "blocking" procedure because there are none. For the government contractor defense to apply, the specifications must apply to the "particular feature allegedly defective." *Strickland v. Royal Lubricant Co., Inc.*, 911 F. Supp. 1460, 1467 (M.D. Ala. 1995) (finding that although evidence provides many pages of specification, including detailed drawings, such evidence does not provide specificity as to the dispute at issue).

2. FEI Failed to Comply With the Specifications Provided by FEMA.

The second of three elements FEI is required to meet in order to raise the affirmative government contractor defense deals with FEI's compliance with the specifications provided by FEMA. *See generally Boyle*, 487 U.S. at 512. While Plaintiff argues that FEI acted within its own discretion in "jacking up" the mobile trailers, Plaintiff contends that FEI also negligently failed to follow the existing specifications provided by

FEMA; thereby exacerbating the dangerous conditions existing in the EHUs.  *See* Trial Testimony of Charles David Moore, Sept. 17, 2009, P. 85 L. 21-P. 86 L. 5.  As noted by the Fifth Circuit in *Kerstetter*, "nonconformance with a specification means more than the ultimate design feature does not achieve its intended goal.  The alleged defect must exist independently of the design itself, and must result from a deviation from the required military specifications."  *Kerstetter*, 210 F.3d at 435.  FEI's departure from specifications by improperly jacking Plaintiff's trailer increased moisture intrusion into the trailer at issue, a circumstance which increased the level of off-gassing formaldehyde within the trailer while Plaintiff resided within it.  *See* Trial Testimony of Charles David Moore, Sept. 17, 2009, P. 91 L. 2-6.  These damages were in part due to FEI's negligence in installing the trailer at issue.

3.  FEI Failed to Warn FEMA of the Hazards of Formaldehyde.

Finally, to sustain summary judgment, FEI must establish that it did not know of the dangers surrounding formaldehyde and the EHUs.  "The third part of the *Boyle* test requires the contractor to warn the government about those equipment dangers that were known to the contractor, but not to the government."  *Kerstetter*, 210 F.3d at 436.  This element is necessary because "in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability."  *Boyle*, 487 U.S. at 512.  Here, FEI knew the dangers surrounding formaldehyde and failed to inform FEMA of such hazards.  *See* Exhibit 492.  Although FEMA may have had prior knowledge of the formaldehyde problems, FEI was in a better position to understand the significant problems associates with manipulating the

mobile trailers. As held in *Strickland v. Royal Lubricant Co.*, 911 F.Supp. 1460, (M.D. Ala. 1995), where a government contractor, by virtue of being engaged in the business, should have known as much as, if not more than, the government regarding toxicity, the government contract defense is weakened. *Id.* at 1468. Therefore, because of FEI's failure to warn FEMA of the formaldehyde dangers, FEI has failed to meet the final element of the government contractor defense.

  C. <u>Seventh Defense: Plaintiff's Alleged Misuse of Trailer.</u>

FEI's Seventh Affirmative Defense provides:

> Solely in the alternative, in the event the Court finds the plaintiffs have suffered any damages whatsoever, which is denied, the damages complained of resulted solely or substantially from the negligence, fault or comparative fault of the Plaintiffs through misuse and/or abuse and/or lack of maintenance of the travel trailers, failure to follow instructions for use, failure to heed applicable warnings, and/or through other acts or omissions which will be shown more fully at the trial of this matter and which preclude recovery by Plaintiffs or reduce any recovery by her respective percentage of fault.

Plaintiff would show that FEI has produced no evidence that Plaintiff misused her trailer.

  D. <u>Tenth Defense: Federal Preemption.</u>

In its tenth affirmative defense, FEI asserts that all claims against it

> are preempted or otherwise precluded by the statutes, standards, regulations, and rules propagated by the Federal Government and/or HUD, and/or FEMA, and/or the Plaintiffs' lease agreement with FEMA.

The Supreme Court recognizes the preemptive effect of federal law in three circumstances: (1) where Congress has defined expressly and explicitly the extent to which its enactment preempts state law; (2) where, in the absence of explicit preemptive language, state law is preempted because it regulates conduct in a field that Congress

intended the Federal Government to occupy exclusively; and (3) where a state law is preempted to the extent that it actually conflicts with federal law. *See English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990); *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 384 (5th Cir. 2004). However, FEI has produced no evidence that its liability is preempted by Federal law.

### E. Fifteenth Defense: Failure to Mitigate Damages

FEI's Fifteenth Affirmative Defense provides, "[u]pon information and belief, Plaintiffs have failed to mitigate their damages."

FEI has failed to produce any evidence that plaintiff failed to mitigate her damages.

### F. Twenty-Sixth Defense: No Capacity to Sue

In its twenty-sixth affirmative defense, FEI asserts that:

> Pursuant to Federal Rule of Civil Procedure Rule 9, FEI specifically asserts that Alana Alexander lacks procedural capacity to sue on behalf of the minor, Christopher Cooper. upon information and believe, Christopher Cooper's father, believed to be Darren Cooper, is alive and residing in Atlanta, Georgia. Moreover, it is FEI's understanding that no Court has established b Alana Alexander's authority to act in a representative capacity on behalf of Christopher, rather than Darren Cooper.

FEI has failed to produce any evidence that plaintiff Alana Alexander does not have the procedural capacity to sue on behalf of her son Christopher Cooper. The undisputed evidence proves that Alana Alexander does in fact have the capacity to sue on behalf of her son Christopher Cooper. *See* Tutorship, Trial Exhibit 354 and Docket Entry No. 3322.

## CONCLUSION AND PRAYER

Plaintiff respectfully requests that the Court grant her motion and enter of order of summary judgment on FEI's Second, Third, Seventh, Tenth, Fifteenth and Twenty-Sixth affirmative defenses.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:  s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:   504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:   504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
ROBERT BECNEL
DENNIS REICH, Texas # 16739600

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
