UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
|     FORMALDEHYDE PRODUCTS | * | |
|     LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | * | |
| *Inc., et al*, Docket No. 09-2892; | * | |
| Alana Alexander, individually and on behalf of | * | |
| Christopher Cooper | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR
JUDGMENT AS A MATTER OF LAW**

Plaintiff, Alana Alexander, individually and on behalf of Christopher Cooper ("Plaintiff" or "Ms. Alexander"), submits this memorandum in support of her Motion for Judgment as a Matter of Law and, in support, would show the following:

**BACKGROUND**

The case of *Age, et al v. Gulf Stream Coach, Inc., et al* (of which Ms. Alexander is a Plaintiff) was filed on February 27, 2009. On April 6, 2009, the Court selected Ms. Alexander as the first trial plaintiff. On June 5, 2009, Plaintiff filed her Third Supplemental and Amended Complaint. (Docket Entry No. 1686).

On August 5, 2009, Gulf Stream filed its Answer, in which it asserted various affirmative defenses. (Docket Entry No. 2532). On August 17, 2009, Plaintiff filed a partial motion for summary judgment in regard to six of Gulf Stream's affirmative defenses. (Docket Entry No. 2727). On August 20, 2009, Gulf Stream responded and withdrew three (#10: open and obvious nature of the defect, #13: estoppel and #26: procedural capacity) of the six affirmative defenses

at issue. (Docket Entry No. 2773). On August 20, 2009, the Court granted Plaintiff's motion for partial summary judgment on the affirmative defenses which Gulf Stream had withdrawn but denied the motion on the remaining affirmative defenses. (Docket Entry No. 2817).

## ARGUMENT AND AUTHORITIES

**I.     JUDGMENT AS A MATTER OF LAW STANDARD**

Judgment as a matter of law is only appropriate where the Court finds that a reasonable jury could not have a legally sufficient evidentiary basis to find for the plaintiffs on an issue. FED. R. CIV. P. 50(a); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The Court must consider "all of the evidence 'in the light and with all reasonable inferences most favorable to the party opposed to the motion.'" *Thompson v. Connick*, __ F.3d __, 2009 WL 2424566, at p. *5 (5th Cir. Aug. 10, 2009) (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (*overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997))). It is only "'[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable persons could not arrive at a contrary verdict, then granting of the motion[] is proper.'" *Munoz v. State Farm Lloyds of Texas*, 522 F.3d 568, 574 (5th Cir. 2008) (citing *Boeing,* 411 F.2d at 374-75)).

This motion is submitted at the close of all evidence. Plaintiff contends that Gulf Stream has not introduced legally sufficient evidence to prove the following affirmative defenses.

**II.    GULF STREAM'S AFFIRMATIVE DEFENSES**

A.     <u>Second Defense: Limitations.</u>

Gulf Stream's second affirmative defense provides:

The claims against Gulf Stream Coach, Inc. are, or may be, barred in whole or in part by Plaintiffs' failure to institute suit within the period of time required by the applicable statutes of limitation and/or any applicable limitation of actions, or be preemption or prescription, or failure to initiate suit within the period of time

>   required by the applicable prescriptive periods and/or any limitation of actions
>   contained in any applicable contracts.

(Docket Entry No. 2532, at p. 25).

It is clear that Plaintiff has filed her claims within the applicable statute of limitations. Under Louisiana law, actions sounding in tort "are subject to a liberative prescription of one year." *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 2009 WL 1683289, at *4 (E.D. La. June 15, 2009) (citing LA. CIV. CODE ANN. art. 3492). "Courts should resolve doubts about a prescription question in favor of giving the litigant his day in court." *Id.* at *5 (citing *Orthopaedic Clinic of Monroe v. Ruhl*, 786 So.2d 323, 328 (La.App.2d Cir.), *writ denied*, 798 So.2d 970 (La.2001)). "Prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished." *Id*. (citing *Landry v. Blaise, Inc.*, 774 So.2d 187, 190 (La. App. 4th Cir.), *writ denied*, 776 So.2d (La. 2000)). "Accordingly if a petition does not show that it has prescribed on its face, the burden is on the party raising the objection of prescription to prove the facts to support prescription." *Id.* (citing *Landry*, 774 So.2d at 190). Gulf Stream cannot meet this burden.

The first putative class action against Gulf Stream and others was filed on May 18, 2006. *Hilliard, et al. v. Gulf Stream, et al*, Cause No. 2:06-cv-02576-KDE-ALC (Docket Entry No. 1.). Plaintiff moved in to a Gulf Stream travel trailer on May 26, 2006. *See* Stipulation #8, Trial Transcript, September 14, 2009, at p. 139. The proposed class definition in *Hilliard* was:

>   persons residing in manufactured mobile homes, mobile homes or travel trailers (hereinafter all referred to as "FEMA Housing"), along the Gulf Coast of the United States which, in turn, were provided by FEMA after the landfalls of Hurricane Katrina on August 25, 2005 through August 29, 2005, and who are being subjected to exposure to unlawful and harmful levels of formaldehyde while residing in FEMA Housing.

Complaint, *Hilliard, et al. v. Gulf Stream, et al*, Cause No. 2:06-cv-02576-KDE-ALC (Docket

Entry No. 1, at ¶ 2). Plaintiff was a member of this putative class.

The Court denied the PCS's Motion for Class Certification on December 29, 2008 (Docket Entry No. 1014). The statute of limitations was tolled during this time period. *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.")

Plaintiff filed her lawsuit against Gulf Stream on February 27, 2009. *See Age, et al v. Gulf Stream, et al*, Cause No. 2:09-cv-02892 (Docket Entry No. 1). Therefore, she filed her claims within two months of when the statute began to run and Gulf Stream has failed to produce any evidence that statute of limitation had already expired.[1]

  B.  <u>Third and Fourth Defenses: Government Contractor.</u>

Gulf Stream alleges in its third affirmative defense:

> that it has supplied FEMA travel trailers since at least 1992, and that its travel trailers were designed, constructed and manufactured in conformity with industry standards and in compliance with FEMA specifications.

(Docket Entry No. 2532, at p. 25). Similarly, its fourth affirmative defense provides:

> Gulf Stream Coach, Inc.'s travel trailers were manufactured according to the specifications of the United States government, which had specific requirements regarding he design and construction of the travel trailers. Any alleged defect claimed herein, which is specifically denied, is the result of the standards mandated by the United States government over which Gulf Stream Coach, Inc. had no control. Accordingly, Gulf Stream Coach, Inc. is immunized from liability by the government contractor defense.

*Id*. The Supreme Court held that a contractor would be immune from state tort law when 1) the subject matter involves "uniquely federal interests"[2] and 2) a "significant conflict exists between

---

[1] In previous filings, Gulf Stream has failed to address the precedential authority of *American Pipe*.
[2] *Boyle* identified three areas where "uniquely federal interests arise: 1) the obligations to, and rights of, the United States under its contracts; 2) the liability of federal officers for official acts; and 3) civil liabilities arising out of procurement contracts relating to national defense. *Boyle*, 487 U.S. at 504-05.

an identifiable federal policy of interest and the operation of state law or the application of state law would frustrate specific objective of federal legislation. *Boyle v. United Technologies Corp.*, 487 U.S. 500, 507-08 (1998). If there is a "uniquely federal interest," then the Supreme Court provided three factors to determine if there was a significant conflict and thus where preemption should apply and to what extent:

> (1) whether the United States approved reasonably precise specifications;
> (2) whether the equipment conformed to those specifications; and
> (3) whether the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id*. at 512. The Fifth Circuit has held that

> The protective shield in favor of the contractor collapses when the actions of the government contractor – and not those of the Government – produce the damaging defect. In such a situation, fairness dictates that a government contractor should not be permitted to escape liability by asserting the sovereign immunity of the Government.

*Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 245-46 (5th Cir. 2000).

      1.  <u>There Were No Reasonably Precise Specifications.</u>

The first element requires the government provide precise specifications leaving no discretion to the contractor. *Boyle*, 487 U.S. at 513; *Wisner v. Unisys Corp.*, 917 F. Supp. 1501, 1510 (D.C. Kan. 1996)(noting that "virtually microscopic precision" meets the first element). Courts have interpreted this to require "continuous back and forth" collaboration between the contractor and the government with respect to the design of the product supplied to the government. *See Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000)(the government continuously interacted with the contractor over eight years and the government addressed the design issues specific to this case during the process); *Stout v. Bourgh-Warner Corp.*, 933 F.2d 331, 336 (5th Cir. 1991)(government contractor defense is available where "review [of the project] involved, inter alia, [the contractor's] submission of detailed drawings at

various progressive stages of the design, critical design reviews where [government] engineers critiqued [the contractor's] work, and finally, the production of prototype model tested and evaluated for months by the [government] for its actual performance."); *Smith v. Xerox Corp.*, 866 F.2d 135, 137-38 (5th Cir. 1989)(first element established by government's initial supply of relevant specifications for shoulder-mounted weapon which were incorporated into production contract, and government's subsequent review and approval of contractor's final drawings and specifications); *see also Harduvel v. General Dynamics Corp.*, 878 F.2d 1311, 1320 (11th Cir. 1989)(extensive analysis and review by government of fighter aircraft's electrical system established government approval); *Kleeman v. McDonnell Douglas Corp.*, 890 F.2d 698, 702-03 (4th Cir. 1989)((1) regular discussions between Navy officials and the contractor's employees as to the design, testing and production of the aircraft, (2) the Navy's large staff presence at the contractor's facility; (3) the Navy's retention and exercise of the power to approve and reject design modifications; (4) the contractor's use of the Navy specifications for the landing gear design; and (5) the Navy's testing of the prototype).

In contrast, when the government passively accepts the contractor's independently developed design choices and, accordingly, does not exercise sufficient discretion over the design features in question, the contractor will not be allowed to assert the government contractor defense. *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1486-87 (5th Cir. 1989). "'[A]pproval' under the *Boyle* defense requires more than a rubber stamp" from the government. *Id.* at 1480.

Additionally, the Fifth Circuit has held that reasonably precise specifications and conformity with those specifications refer to the particular feature of the product claimed to be defective. *Id.* at 1486; *see also Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 799 (5th Cir.

1993)(a court's analysis must focus upon the "particular feature" allegedly defective); *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746-47 (9th Cir. 1997); *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1371, 1377-79 (11th Cir. 1997); *Shurr v. A.R. Siegler, Inc.*, 70 F. Supp.2d 900, 900 (E.D. Wis. 1999); *Strickland v. Royal Lubricant Co.*, 911 F. Supp. 1460, 1467-68 (M.D. Ala. 1995).

Indeed, the set of facts in the present case is closely analogous to the example given in *Boyle* of what does not pose a significant conflict between federal and state interests:

> The United States contracts for the purchase … of [a travel trailer], specifying the [basic requirements] but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include certain safety features would not be a duty identical to anything promised by the Government, but neither would it be contrary. [Gulf Stream] could comply with both its contractual obligations and the state-prescribed duty of care.

*Boyle*, 487 U.S. at 509. In such a case, "No one suggests that state law would generally be pre-empted in this context." *Id*.

Here is there no evidence that the subject specifications were reasonably precise. There is also no evidence that the specifications at issue referred to the feature of the product claimed to be defective. Further, there is no evidence that the government had any role in the design, review or production of the trailer; if fact, there is evidence that the government did not have any involvement in the design of the trailer.

> 2. <u>As There Are No Specifications, Moot Point on Whether The Trailer "Conformed" to Those Specifications.</u>

As the four page specifications are not reasonably precise and contain no references to the design and warning defect claims in this lawsuit and there are no relevant provisions in the specifications, it is impossible for Gulf Stream to prove that it complied with these non-existent "reasonably precise specifications."

3. Gulf Stream Knew of Formaldehyde and Failed to Warn the United States.

The third factor for "significant conflict" requires proof that the contractor warned the government about possible dangers in the use of the product known to the contractor but not to the government. *Boyle*, 487 U.S. at 512. The contractor satisfies this element by proving (1) that it lacks knowledge of any alleged danger relating to the product, or (2) the government already knew of the alleged danger or hazard. *See Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996). However, where a government contractor, by virtue of being engaged in the business, should have known as much, if not more than, the government regarding toxicity, the government contract defense is weakened. *Strickland*, 911 F. Supp. at 1468. There is no evidence that the Government was aware of the danger of formaldehyde exposure in travel trailers; in contrast, there is ample evidence that Gulf Stream was well aware of the hazard.

C. Fifth Defense: State Law Immunity.

In its fifth affirmative defense, Gulf Stream "pleads to the extent applicable all defenses allowed under the La. Health Emergency Powers Act, LSA—R.S. 29:771, and/or other Louisiana Law." (Docket Entry No. 2532, at pp. 25-26). While Gulf Stream does not specifically state what subsections of § 29:771 it is asserting, these appear to be the most relevant:

> (b) During a state of public health emergency, any private person, firm or corporation and employees and agents of such person, firm or corporation in the performance of a **contract with, and under the direction of the state or its political subdivisions** under the provisions of this Chapter shall not be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct. …
>
> (d) During a state of public health emergency, any private person, firm or corporation and employees and agents of such person, firm or corporation, who renders assistance or advice **at the request of the state or its political subdivisions** under the provisions of this Chapter shall not be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or

willful misconduct.

LA. REV. STAT. ANN § 29:771(2)(b) & (d) (emphasis added). Gulf Stream has produced no evidence that it supplied travel trailer in the wake of Hurricanes Katrina and Rita pursuant to a contract and/or at the request of the State of Louisiana or any of its subdivisions.

D.  Eighth Defense: Plaintiff's Alleged Misuse of Trailer.

Gulf Stream's Eighth Affirmative Defense provides:

> Solely in the alternative, in the event the Court finds the plaintiff has suffered any damages whatsoever, the damages complained of resulted solely or substantially from the negligence, fault or comparative fault of the plaintiff through misuse and/or abuse and/or lack of maintenance of the travel trailers, failure to follow instructions for use, failure to heed applicable warnings, and/or through other acts or omissions which will be shown more fully at the trial of this matter and which preclude recovery by plaintiff or reduce any recovery by her respective percentage of fault.

(Docket Entry No. 2532, at p. 26).

Plaintiff would show that Gulf Stream has produced no evidence that Plaintiff misused the trailer.

E.  Eleventh Defense: Federal Preemption.

In its eleventh affirmative defense, Gulf Stream asserts that all claims against it

> are preempted or otherwise precluded by the statutes, standards, regulations, and rules propagated by the Federal Government and/or HUD, and/or FEMA, and/or the plaintiff's lease agreement with FEMA.

*Id.* at p. 27. The Supreme Court recognizes the preemptive effect of federal law in three circumstances: (1) where Congress has defined expressly and explicitly the extent to which its enactment preempts state law; (2) where, in the absence of explicit preemptive language, state law is preempted because it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively; and (3) where a state law is preempted to the extent that it actually conflicts with federal law. *See English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990);

*Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 384 (5th Cir. 2004).

Gulf Stream has produced no evidence that Plaintiff's claims are preempted by federal law or by the Emergency Shelter – Agreement to Rules of Occupancy or any other any document she signed with FEMA.

### F. Fifteenth Defense: Failure to Mitigate Damages

Gulf Stream's Fifteenth Affirmative Defense provides, "[u]pon information and belief, plaintiff has failed to mitigate her damages." (Docket Entry No. 2532, at pp. 27-28).

Gulf Stream has failed to produce any evidence that Plaintiff failed to mitigate her damages.

### G. Sophisticated User/Purchaser

While Gulf Stream has not explicitly pled a "sophisticated user/purchaser" affirmative defense, its Seventeenth Defense did plead "to the extent applicable, all defenses allowed under the Louisiana Products Liability Act … and/or other Louisiana law." *Id*. at p. 28. The Louisiana Products Liability Act ("LPLA") provides an exception to the manufacturer's duty to warn if:

> The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.

LA. REV. STAT. ANN § 9:2800.57(B)(2). "A sophisticated user possesses more than a general knowledge of the product and how it is used." *Asbestos v. Bordelon, Inc.*, 726 So.2d 926, 955 (La.App. 4 Cir 1998).

Gulf Stream has failed to produce any evidence that either Plaintiff, the Federal Emergency Management Agency ("FEMA") and the United State Government was a sophisticated user of trailers. In fact, the evidence shows that FEMA and the United States Government have only a generally knowledge of the product and how it is used.

## CONCLUSION AND PRAYER

Plaintiff respectfully requests that the Court grant her motion and enter of order of judgment as a matter of law on Gulf Stream's Second, Third, Fourth, Fifth, Eighth, Thirteenth, and Fifteenth affirmative defenses and the "sophisticated user/purchaser" affirmative defense.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        gmeunier@gainsben.com


        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        jwoods@gainsben.com

        **COURT-APPOINTED PLAINTIFFS'
        STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON, #9938
        MIKAL WATTS, Texas # 20981820
        ROBERT BECNEL
        DENNIS REICH, Texas # 16739600

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 23, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                            s/Gerald E. Meunier
                                            GERALD E. MEUNIER, #9471