FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2009 SEP 24  PM 2: 11

LORETTA G. WHYTE
        CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                           MDL NO. 07-1873
       FORMALDEHYDE PRODUCTS
       LIABILITY LITIGATION

                                                       SECTION "N" (5)

THIS DOCUMENT RELATES TO
Member Case No. 09-2892

## ORDER AND RULE TO SHOW CAUSE

      In connection with the first bellwether trial in this matter, *Alexander, et al v. Gulf Stream, et al*, various motions in limine, directed to the testimony of proposed expert witnesses, were filed. One such motion (Rec. Doc. No. 2895) was filed by defendant Gulf Stream Coach, Inc. ("Gulf Stream") with regard to one of plaintiffs' expert witnesses, Mary C. DeVany. In the memorandum in support of that motion, it was brought to the attention of the Court that Ms. DeVany had previously offered certain relevant testimony on Tuesday, July 29, 2008 (after she had been retained in this matter). DeVany's testimony, before the Board of Industrial Insurance Appeals for the State of Washington, in the matter entitled "*In Re Steven R. Vaughn*, Docket No. 07 13382, Claim No. Y-965493, (hereafter, "the *Vaughn* matter"), Industrial Appeals Judge Nancy E. Curington Presiding, is the subject of this Order.

1

___Fee _____
___Process _____
_x_ Dktd _____
___CtRmDep _____
___Doc. No. _____

During her examination by counsel in the *Vaughn* matter, DeVany was asked about her qualifications by way of her previous consultations and retentions as an expert in the field of industrial hygienics. Referring to this case, she responded, in part, as follows:

Q. Okay. And, what litigation are you involved in?

A. I'm currently involved in, umm, a large federal case - - series of federal cases - - actually, approximately thirty thousand federal cases, involving, umm, individual exposures to people that were given FEMA trailers and portable housing units in response to Katrina - - hurricanes Katrina and Rita. And, I'm the expert witness coordinating all the expert work for all the litigation in the entire gulf coast for the plaintiffs.

Q. And, how did - - how did you get that appointment, for lack of a better term?

A. Well, I - - how can I say this? I am - - I am the workplace advisor - - exposure - - chemical exposure advisor to the Sierra Club. People, within weeks after the hurricanes, came to the Sierra Club with complaints of headaches, nausea, nosebleeds, respiratory irritation. And, the Sierra Club came to me to see if I could help them figure out what the problem was, if there was one, and evaluate what the - - what these exposures might involve. And, I identified formaldehyde as the exposure that was occurring as a result of living in those trailers.

And then, umm, we - - I prepared procedures to actually, physically test those trailers and portable housing units for formaldehyde. And, once we had objective data showing that formaldehyde levels were truly excessive, umm, the Sierra Club went out - - came out with a press release, they got the Federal government involved and, umm, I was - - I was the expert on formaldehyde toxicity and use in manufacturing that testified before Congress about how formaldehyde got into these trailers, what the health effects are, and what the Federal government should do to help reduce these exposures and control the health effects to people living in these units.

Q. So, in terms of the multi-party litigation you just mentioned, did all the attorneys for the parties involved in that litigation have to agree upon you as an expert, did the Judge appoint you, how did that work?

> A.  Judge Englehart (Phonetic) had - - he's the Federal Judge, umm, in that whole jurisdiction, umm - - I don't want to say complained severely, but what - - it was actually, he complained to all the - - the, uhh, parties involved saying since it wasn't a - - it's not a class action, all these different lawsuits are clogging up his Federal court system. There are truly an excess of thirty thousand of them.
>
> And - - and so, he told these - - all these law firms along the whole gulf coast to get together and to form one central committee, and to present to him, since the cases are so similar - - present to him one Complaint, one Request for Interrogatories and Discoveries, you know, one Motion every time something comes up. And, to agree upon one expert witness that he could work with to help him evaluate the science behind formaldehyde, how formaldehyde's measured, its toxic effect, how it got into the trailers in the first place, and someone he could rely upon to produce Affidavits to, umm, evidentiary hearings before him and explain the chemistry, physiology and toxicology of formaldehyde.
>
> And, these law firms along the gulf coast got together and decided I should be the one.

Transcript of DeVany testimony, Page 52, Line 4 - Page 54, Line 7.[1] The actual transcript of this testimony was not attached to Gulf Stream's Memorandum, but a brief description of it was provided.

The Court issued an Order and Reasons (Rec. Doc. No. 3083) on the motion in limine directed toward DeVany's testimony, indicating its strong displeasure over such statements if, in fact, made by DeVany, further indicating that she would be admonished at trial, and urging counsel to reconsider whether DeVany should be called as a witness in the first bellwether trial. The undersigned also ordered counsel to produce the entire transcript of DeVany's testimony after reading the memorandum in support of the motion in limine regarding DeVany's testimony in this

---

[1] The relevant pages are attached to this Order as Exhibit A.

trial. Thus, the Court has now had the benefit of the entirety of DeVany's July 29, 2008 testimony by way of that transcript in the *Vaughn* matter in Washington.

At the bellwether trial, plaintiffs elected not to call DeVany as a witness.[2] Hence, the Court takes up the issue of DeVany's prior testimony in the State of Washington herein.

By way of background, DeVany has been involved in pursuit of the underlying inquiry in this litigation since April 2006 (if not earlier)[3], when she and/or her associates began testing the formaldehyde levels in certain of the temporary housing units (THU's) in which displaced residents of the Gulf Coast region were residing following Hurricanes Katrina and Rita. In that regard, she testified before a committee in Congress. Of further importance, for purposes of this Order, is the fact that DeVany is a plaintiff-selected, retained and compensated expert witness, with pages of academic credentials and experience[4] which suggest a sophisticated intellect and clear ability to understand not only her field of expertise, but the various complexities involved in litigation of the type in which she has been involved. In short, DeVany is hardly an unknowing innocent newcomer to serving as an expert in litigation.

---

[2]On September 17, 2009, during the course of the first bellwether trial, DeVany met with the undersigned and his law clerk, apologized for what she considered an error, and pledged her cooperation to rectify the situation.

[3]In her report, DeVany states that the Sierra Club, whom she advised, began investigating "within weeks of initial notification and began sampling trailers for formaldehyde shortly thereafter. Sampling continued into the Spring of 2006." DeVany Affidavit and Report, p. 16.

[4]See attached curriculum vitae attached as Exhibit B.

Although there might well be other statements on the transcript of DeVany's *Vaughn* testimony which are in need of correction or clarification, the Court focuses on five particular statements (from the above-quoted passage) that relate to this Court, the undersigned, and these proceedings:

(1) DeVany affirmatively asserts that "I'm the expert witness coordinating all the expert work for all the litigation in the entire Gulf Coast for the plaintiffs." (Page 52, Lines 9-11) This comes as news to the undersigned. Indeed, there are many experts on the plaintiffs' side of the case alone, many of whom have no relationship whatsoever to the field of "industrial hygienics." Neither DeVany nor any counsel in this case has ever represented her status as "the expert witness coordinating all the expert work for all the litigation in the entire Gulf Coast for the plaintiffs." Indeed, nowhere in her report in this case does she make such a representation or suggest such exalted status. Such a breathtakingly broad and sweeping representation made to others would be quite impressive, were it not so unfounded.

(2) DeVany states that the undersigned is "the Federal judge, umm, in that whole jurisdiction." (Page 53, Lines 13-14). Of course, it is well known, and easily confirmable, that there are twelve active judges in the Eastern District of Louisiana, of which the undersigned is only one – and then is not even the Chief Judge in this jurisdiction. Thus, it appears that, in order to further enhance her later testimony that she had been exclusively selected to "work with and help" the undersigned, DeVany improperly (and quite incorrectly) elevated the undersigned to being "the Federal judge in that *whole* jurisdiction." (emphasis added)

(3) DeVany also stated that the undersigned "- - I don't want to say complained severely, but what - - it was actually, he complained to all the - - the, uhh, parties involved ..." (Page 53, Lines 14-16) In making this comment, DeVany was presumably referencing the number of lawsuits/claimants in this multi-district litigation (MDL). To be clear: the undersigned has not "complained severely", and has not "complained" at all, to the parties or anyone else, ever, about the assignment of any case or group of cases on his docket. To the contrary, the undersigned has served as an Article III federal judge for seven years and ten months, embracing each and every case assigned to him (subject to appropriate recusal), attempting to understand each and every detail, in consideration of the arguments and respective positions taken by the parties to each piece of litigation. Moreover, except as set forth in Footnote 2, the undersigned has never met nor had a single conversation with DeVany, and thus it is unknown how she would be in a position to characterize any comment by the undersigned as a "complaint", much less one made "severely."

(4) Regarding this alleged "complaint", DeVany asserts that the undersigned said "since it wasn't a - - it's not a class action[5], all these different lawsuits are clogging up his Federal court system. There are truly an excess of thirty thousand of them." (Page 53, Lines 17-19) Having disposed of her characterization of the Court's "complaint", the Court makes equally clear that "all these different lawsuits" related to alleged formaldehyde exposure in FEMA trailers are *not*

---

[5]DeVany's representation that this MDL was "not a class action" is rather puzzling: her testimony in the *Vaughn* matter occurred on July 29, 2008; the Court held its class certification hearing in this MDL on December 2, 2008; and the Court issued a ruling denying class certification in this MDL on December 29, 2008. Were she the "expert witness coordinating all the expert work for all the litigation in the entire Gulf Coast for the plaintiffs", she would surely have known such an important ruling in this case had not yet been made.

"clogging up his Federal court system."[6] When an MDL is assigned, it is the Court's understanding that consideration is given with regard to the status of the docket for potential venues and assigned judges. As was the case when the initial assignment of this MDL was made, and is the case today, the docket in Section N in the Eastern District of Louisiana is not "clogged up", but accommodates MDL 1873 quite comfortably.

(5)  Lastly, after her string of misstatements regarding the role and thought process of the undersigned, DeVany then places herself in the best light: "And, to agree upon *one expert witness that he could work with to help him* evaluate the science behind formaldehyde, how formaldehyde's measured, its toxic effect, how it got into the trailers in the first place, and *someone he could rely upon* to produce Affidavits to, umm, evidentiary hearings before him and explain the chemistry, physiology and toxicology of formaldehyde. And, these law firms along the gulf coast got together and decided I should be the one." (Page 53, Line 25 - Page 54, Line 7, emphasis added) Again, to be clear, and this was certainly known to DeVany at the time she made the statement: never has the Court in this MDL sought "one expert witness that [the judge] could work with to help him evaluate the science ... ." There are many experts for each of the parties in this case, and the issues on which DeVany claims some expertise are very much disputed by other experts. Thus, the Court has not suggested nor selected a single expert, but has rather determined that the presentation of competing experts of differing opinion should be presented to the juries which will hear the bellwether cases.

---

[6] Perhaps use of the possessive "his" was merely an innocent but unfortunate word selection. Of course it should go without saying that the undersigned has never referred to this Court or its docket as "*his* Federal court system", as the Federal court system belongs to the people of the United States pursuant to Article III of the United States Constitution.

The Court has never requested or relied upon DeVany "to produce Affidavits" of any sort; has never relied on her to serve in any capacity at all; and has never asked DeVany to work with the Court or to explain any issue in this case, other than what plaintiffs' counsel has sought to elicit from her as part of their presentation. This self-aggrandizing statement, too, is not just inaccurate, it is patently false.

When first brought to the Court's attention in Gulf Stream's memorandum in support of its motion in limine, it was hoped that perhaps DeVany's statements were taken out of context, or were merely the result of an innocent, mistaken, or unintentional but cavalier description of her role in this litigation offered by her while testifying in the State of Washington. Thus, that is the reason the Court ordered the production of the entirety of the transcript from the *Vaughn* matter. Review of the transcript, and particularly the relevant passage above, leaves no doubt in the mind of the Court, however, that DeVany was more than reckless with the facts. Each of the above-quoted passages which the Court has refuted is far out of the boundaries of simple mistake. In coming to this conclusion, the Court again is mindful that DeVany has submitted an extensive list of qualifications, accomplishments, educational degrees earned, and professional association memberships, all of which discount the notion that her testimony was an unintentional departure from the reality of her role in this litigation.

Given her intellectual sophistication, as well as her prior knowledge of the actual facts set forth herein, the Court concludes that DeVany's statements in the *Vaughn* matter served to grossly overstate her importance in this litigation, and to incorrectly portray herself as the single expert exclusively advising this Court, and upon whom this Court would rely. Without a doubt, DeVany

knew that she had not been granted such status, and that she did not work with the undersigned in any way regarding the science behind formaldehyde, etc. Moreover, given her unfounded statement regarding the undersigned's status as the federal judge "in that *whole* jurisdiction", it is clear that DeVany sought to exaggerate the role of the undersigned, and then attach herself to that exaggerated position by claiming to be the appointed expert upon whom this Court would rely. In order to facilitate this image, DeVany created the fiction of an overwhelming court docket in order to further support a motivation for the Court to crown her as that handpicked expert in this case. She wrongly presented herself to have the imprimatur of this Court in asserting her credentials.

The Court carefully guards it authority, and is compelled to correct misstatements attributed to the undersigned as to what the Court has ordered (and what it has not ordered). The improper invocation of the Court's authority (and the name of the undersigned) is taken very seriously. Of course, the gravity of statements made under oath that are not only inaccurate or erroneous, but are flat out untrue, cannot be overstated.

Accordingly, **IT IS ORDERED** that:

(1) DeVany shall send a copy of this Order, along with a written statement setting forth accurate facts, to the judge and attorneys involved in the *Vaughn* matter, specifically Industrial Appeals Judge Nancy E. Curington, Attorney Bruce R. Colven, and Assistant Attorney General Steve Vinyard, at their current addresses, within fifteen (15) days of this Order, certified mail, return receipt requested.[7] DeVany shall provide to this Court a sworn certification that she has complied

---

[7] The Court is indeed concerned that such statements may have been made elsewhere.

with this Order, to which certification shall be attached copies of the correspondence she has sent to each of these individuals.

(2) If DeVany has not complied with the provisions set forth in Paragraph No. 1 hereinabove, she shall show cause, in writing, within fifteen (15) days of this Order, why she should not be sanctioned in the amount of Five Thousand and No/100 ($5,000.00) Dollars for her failure to comply with the provisions of Paragraph No. 1.

New Orleans, Louisiana, this 24th day of September, 2009.

KURT D. ENGELHARDT
United States District Court