UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER<br>    FORMALDEHYDE PRODUCTS<br>    LIABILITY LITIGATION<br><br>    This applies to Bell,<br>        No. 09-2976 (E.D. La.) | MDL NO. 1873<br><br>SECTION "N" (5)<br><br>JUDGE ENGELHARDT<br><br>MAGISTRATE CHASEZ |

### KEYSTONE'S MEMORANDUM IN OPPOSITION TO MOTION TO SUBSTITUTE BELLWETHER PLAINTIFF

Defendant Keystone RV Company submits this memorandum in opposition to the plaintiff's Motion to Substitute Bellwether Plaintiff, or, in the Alternative, to Continue Trial.[1]  The purpose of plaintiff's motion is to substitute Valena Byrd in place of Raymond Bell, III as the bellwether plaintiff, or, alternatively, to seek a continuance of the January 11, 2010 trial date.  For the reasons explained more fully below, Keystone opposes this motion, and his effort to substitute Valena Byrd as the bellwether plaintiff.

### IMPORTANT FACTUAL AND PROCEDURAL BACKGROUND

To understand why Raymond Bell, III should be not be replaced as the bellwether candidate, it is important to recall the difficult history relating to the bellwether process for this matter.

---

[1] Rec. Doc. No. 4164.  The Court instructed the parties to file a response to this motion by 5:00 p.m. on September 30, 2009.

{B0613126.1}                                1

On March 27, 2009, Keystone submitted its proposed bellwether candidates to the Court: Diana Bell and Raymond Bell, III.[2] The same day, plaintiffs' liaison counsel (PLC) objected to these two individuals and suggested Valena Byrd as their proposed candidate.[3] The PLC's objection was that Mrs. Bell and her son were both exposed to smoking—Mrs. Bell through second-hand smoke and Raymond III through second-hand smoke and as a former smoker.[4] They did not raise any other objections or concerns about either of the Bell's ability to serve as a bellwether for the January 2010 trial.

On April 6, 2009, the Court entered Pretrial Order No. 34 in which it named Diana Bell as a bellwether plaintiff for claims against Keystone.[5] Two days later, the Court entered a scheduling order for the Bell/Keystone bellwether trial.[6]

From the beginning, Mrs. Bell failed to cooperate with the bellwether process. Shortly after being named, she refused to show up for her independent medical exam scheduled with Keystone's consultants. Through her lawyers, Mrs. Bell stated that she was "unavailable" on the proposed dates and that she had to care for

---

[2] Rec. Doc. No. 1224.

[3] Rec. Doc. No. 1225 and Rec. Doc. No. 1225-3.

[4] Rec. Doc. 1225-3, p. 1 of 2.

[5] Rec. Doc. No. 1299.

[6] Rec. Doc. No. 1308. This order was entitled "Trial IV Scheduling Order." Since that time, the Court has reordered the schedule of the bellwether trials, such that Keystone/Shaw is now the third bellwether trial.

{B0613126.1}                                           2

an elderly family member.  Keystone eventually filed a motion to compel the exam and the Court granted the motion.[7]

Later, Mrs. Bell failed to submit her expert reports by the August 19, 2009, deadline set out in the Court's scheduling order.  Mrs. Bell was aware of that deadline for over four months.  But, Mrs. Bell's attorneys offered no explanation as to why she missed the deadline, nor did they seek from the Court an extension of time to comply with this deadline.

Then, on September 10, 2009, several weeks after her expert deadline passed, Mrs. Bell notified the Court through an email that she was not willing to serve as a bellwether plaintiff for reasons of "personal and financial hardship."[8]  Her counsel explained that she was not able to take time off from work.  Other than a simple filing with the Court, Mrs. Bell did not provide any affidavits or other documentation to support her request to be relieved of her obligation as a bellwether plaintiff.  Then, on September 23, 2009, faced with the prospect of having to appear for trial, she dismissed her claims with prejudice.[9]

As a result of Mrs. Bell's withdrawal, the Court held three conferences with the parties to discuss the bellwether situation:  September 17, 2009, September 22, 2009 and September 23, 2009.  In the September 17th conference, the Court

---

[7] *See* Rec. Doc. No. 1560 (Motion) and 1603 (Minute Entry reflecting order). Because Mrs. Bell ultimately dismissed her claims, Keystone incurred uncessary expense for her IME.  Keystone reserves the right to seek reimbursement for the costs of the IME

[8] *See* Exhibit "1" (September 10, 2009 email from Gerald Meunier).

[9] Rec. Doc. No. 3688.

expressed grave concern regarding the explanation provided by Mrs. Bell in her email and questioned whether she had a legitimate basis for not serving as a bellwether plaintiff. The Court instructed plaintiff's counsel to discuss the matter with Mrs. Bell and to impress upon her the importance of her serving as a bellwether plaintiff.

At the September 22nd conference, the plaintiff's counsel informed the Court and parties that Mrs. Bell was unwilling to attend her trial, and that she would dismiss her claims with prejudice. She did so the following day.[10] Plaintiffs suggested another bellwether candidate, Mary Santa-Marina. Plaintiffs also suggested selecting Valena Byrd (their original choice) as a replacement bellwether. The defendants suggested that the Court select Raymond Bell, III or his father, Raymond Bell, Jr. as replacement candidates. The Court indicated its desire to stay with the same Keystone trailer at issue (i.e., to select Raymond Bell, III or Raymond Bell, Jr.) and instructed the plaintiffs to discuss this with both of the Bell plaintiffs.

The following day, on September 23, 2009, the Court again met with the parties. Plaintiff's counsel informed the Court that Raymond Bell, Jr., who seemed to Keystone to be *one of* the logical replacement candidates, refused to serve as a bellwether plaintiff.[11] In addition, the plaintiffs' counsel indicated that Raymond

---

[10] *Id.*

[11] Plaintiffs' counsel explained that Mr. Bell refused to serve as a plaintiff because he was actively looking for a job and believed he would find a job in the near future. If he found a new job, they reported that he would not be able to take off work and attend a trial. This statement was at odds with Mrs. Bell's explanation of why she couldn't serve as a bellwether candidate. She asserted that her husband had been out of work for some time and had no idea when he might

{B0613126.1}   4

Bell, III was unwilling to serve as a bellwether plaintiff if the trial lasted two weeks (the allotted time by court). They explained that he was only available for a one-week trial because of his school schedule at Delgado Community College and because his work schedule was not flexible. Plaintiffs' counsel said that Mr. Bell could attend a one-week long trial, however. Through his counsel, Mr. Bell did not raise any additional reasons why he was unwilling to serve as a bellwether plaintiff. After considering these issues, the Court informed the parties that Raymond Bell, III would be the bellwether plaintiff.

Plaintiffs have now filed a motion to substitute Ms. Valena Byrd, their original choice, in place of Raymond Bell, III.[12] As discussed below, Keystone strongly objects to the plaintiffs' motion to substitute and to the removal of Raymond Bell, III as the bellwether plaintiff for the January 11, 2010 trial.

## ARGUMENT

As the Court has observed on numerous occasions, the selection of Raymond Bell, III has been discussed repeatedly, and the Court has been very clear in the direction given to the parties: either Raymond Bell, III proceeds to trial in January, or his claims will be dismissed. Nevertheless, Mr. Bell persists in trying to wiggle free from the inconvenient trial of the inconvenient lawsuit that HE filed.

---

find a new job. As the sole bread winner for the family, Mrs. Bell said that she couldn't miss work for her trial.

[12] Rec. Doc. No. 4164.

{B0613126.1}     5

**1. RESPONSE TO WHAT THE COURT HAS BEEN TOLD BY MR. BELL**

The first stated reason for substitution or continuance is that Mr. Bell "will be unable to take the amount of leave necessary to participate in a trial."[13] Mr. Bell fails to provide the name of his employer, the leave policy of such employer or any other information sufficient for the Court and Keystone to ascertain the truth of such an assertion. In fact, Mr. Bell then suggests in his memorandum that he does not have the necessary "tenure that could afford him the ability to schedule a two week absence on such short notice."[14] So, apparently, it is not the lack of leave availability that causes the problem, it is the short notice. The Court will recall that it is Mr. Bell's mother who has placed him in this situation and, further, the Court can easily determine that Mr. Bell has more than three months to make appropriate arrangements with his unidentified employer. Finally, Mr. Bell fails to explain why or how this work situation would be any different if he were given additional time before the trial of the lawsuit that HE filed.

Next, Mr. Bell suggests that he cannot "forego income for at least one week" because he supports a two-year old daughter.[15] Again, he fails to explain how this issue would be resolved by a delay in the trial date. Further, the Court will recall that this is the first time that this issue has ever been raised. In fact, as previously

---

[13] Rec. Doc. No. 4164-2, p. 2.

[14] *Id.* at p. 2-3.

[15] *Id.* at p. 2.

discussed, in March when the selection process for a Keystone bellwether plaintiff occurred, Mr. Bell was proposed by Keystone as a bellwether plaintiff and the only opposition offered by the PSC was that Mr. Bell was a smoker.[16]  Mr. Bell's work and support of his daughter were surely factors then, and the PSC failed to mention them.

Finally, Mr. Bell mentions that he is a student and argues that his school term begins on January 18, 2010.  The Court will have observed that January 18, 2010 is Martin Luther King Day and the school certainly will be closed.  Further, at best Mr. Bell would miss four days of class (something that is not terribly unusual or impossible to remedy).  Mr. Bell has more than three months to meet with school officials and make appropriate arrangements with his teachers.  He certainly need not deny himself this educational opportunity.  But Mr. Bell also does not explain how going to school does not apparently adversely affect the support of his daughter while attending a two-week trial does have such an affect.

The bottom line is that Mr. Bell's complaints are typical of the inconvenience that *any* trial will cause at *any time*.  The Court can rest assured that the mind-staggering expense and business disruption of this matter has caused significant inconvenience to Keystone and the other defendants as well.  Mr. Bell chose to file suit and a trial is the natural and expected result.  If it is sufficiently inconvenient that he simply refuses to go to trial, then he can certainly dismiss his suit.

---

[16] *See* Rec. Doc. No. 1225-3, p. 1.

## 2. WHAT THE COURT HAS NOT BEEN TOLD BY MR. BELL

Keystone's counsel has been advised by counsel for Mr. Bell that Mr. Bell *will not* participate in a January bellwether trial and *will not* dismiss his suit. Therefore, because the PSC has not advised the Court of Mr. Bell's intentions[17], Keystone cannot at this time move for dismissal of Mr. Bell's claims under Rule 41(b). At this stage of the proceeding, Mr. Bell has not yet failed to prosecute his action or failed to comply with the federal rules or a court order.

However, when the PSC formally advises the Court that Mr. Bell adamantly refuses to go to trial as ordered and refuses to dismiss his suit (as his mother did), then the Court can, at that time, determine that he has failed to prosecute his action and his claims can be dismissed with prejudice. Otherwise, this exercise will become necessary each time on the eve of trial a plaintiff suddenly determines that the trial of their suit is a tad inconvenient.

Mr. Bell should "come clean" with the Court, own up to what his true intentions are and either proceed to trial as ordered or suffer dismissal of his claim. There is precious little time for further delay.

---

[17] Keystone does not suggest that counsel for Mr. Bell is hiding anything from the Court. Indeed, counsel for Mr. Bell has been forthright with the defendants about Mr. Bell's intentions. They, however, have not stated his intentions in their motion or supporting memorandum, apparently relying only on Mr. Bell's claims of inconvenience.

### 3. MS. BYRD IS NOT QUALIFIED TO BE A BELLWETHER PLAINTIFF.

The Court will recall that Keystone has argued that Ms. Valena Byrd is not qualified to serve as a bellwether plaintiff because she has not sued the correct defendants.[18]  Despite ample opportunity, this defect has not been cured.

### 4. MR. BELL HAS NOT PRESENTED THE COURT WITH GROUNDS FOR A CONTINUANCE.

As an alternative request, Mr. Bell asks the Court to continue his trial date to an unspecified date "later in the year."[19]   Just as his explanation does not justify substituting bellwethers, Mr. Bell has not provided the Court with a sufficient explanation or justification to show why a continuance is necessary.  If the Court is inclined to grant a continuance based on Mr. Bell's unsupported and unverified representations, Keystone requests an opportunity to conduct a deposition and/or examine Mr. Bell under oath regarding these representations.

---

[18] *See* Rec. Doc. No. 1224, p. 3 ("Second, Ms. Byrd has not sued the proper defendant, and therefore is not an eligible candidate under Pretrial Orders 28 and 29.  Keystone explained this situation in an attachment to Joint Report 9.  *See* Rec. Doc. No. 1220.  As discussed in that report, Ms. Byrd and other *Aldridge* plaintiffs improperly named Keystone Industries, Inc., as a defendant…Keystone Industries, Inc. is a defunct Indiana corporation that is not connected to Keystone RV Company….")(internal quotations omitted).

[19] Rec. Doc. No. 4164-2, p. 3.

5.  **KEYSTONE ADOPTS THE ARGUMENTS AND LEGAL AUTHORITY CITED IN THE GOVERNMENT'S BRIEF.**

The United States has filed a well-written opposition memorandum to the plaintiff's motion.[20] Rather than restate the arguments and legal authorities cited by the government, Keystone adopts by reference that memorandum in support of its position herein.

## CONCLUSION

Raymond Bell, III offers only vague and unverified claims of inconvenience. In short, and as the Court has previously instructed on several occasions, Mr. Bell should proceed to trial in January. Alternatively, if he steadfastly refuses to do so, he should advise the Court immediately of his intentions and his claims should be dismissed with prejudice.

> Respectfully submitted,
>
> *s/Ryan E. Johnson*
> _____
> James C. Percy (La. Bar No. 10413)
> Ryan E. Johnson (La. Bar No. 26352)
> **JONES, WALKER, WAECHTER, POITEVENT, CARRERE & DENEGRE, LLP**
> Four United Plaza
> 8555 United Plaza Boulevard
> Baton Rouge, LA 70809
> Telephone: (225) 248-2080
> Facsimile: (225) 248-3080
>
> -and-
>
> Madeleine Fischer (La. Bar No. 5575)
> Nan Roberts Eitel (La. Bar No. 19910)

---

[20] Rec. Doc. No. 4266.

        Jones, Walker, Waechter, Poitevent,
        Carrère & Denègre, L.L.P.
        201 St. Charles Avenue, 49th floor
        New Orleans, LA   70170
        Telephone:  (504) 582-8000
        Facsimile:  (504) 589-8208

***Counsel for Keystone RV Company***

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of September, 2009, a true and correct copy of the foregoing pleading was filed electronically using the CM/ECF system. Notice of this filing will be sent to all known counsel by operation of the court's electronic filing system.  I also certify that I have mailed a copy of this filing to any non-CM/ECF participants by U.S. Mail, postage prepaid and properly addressed.

        *s/Ryan E. Johnson*
        _____
        Ryan E. Johnson