UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION

MDL NO. 1873

SECTION N (5)

JUDGE ENGELHARDT

THIS DOCUMENT RELATES TO:
*All cases filed by Hurricane Legal Center, LLC*

## MEMORANDUM IN SUPPORT OF MOTION FOR ORDER COMPELLING UNITED STATES TO RE-CONDUCT TRAILER MATCHING PROCESS AND TO ALLOW PLAINTIFFS LEAVE TO AMEND THE COMPLAINTS OR, IN THE ALTERNATIVE, FASHIONING SUCH OTHER RELIEF AS THE COURT DEEMS APPROPRIATE

## I. INTRODUCTION

It has been a fundamental requirement in this MDL litigation that all plaintiffs match their claim to a specific trailer manufacturer and contractor/installer. This Court has repeatedly emphasized the desirability of plaintiffs obtaining the necessary matching information before filling a lawsuit. In Pretrial Order ("PTO") 40 the Court issued an order requiring all plaintiffs in a non-matching complaint to file an amended matching complaint within 45 days after filing the original complaint. The Court's emphasis on matching is quite understandable inasmuch as chaos and disorganization likely would reign if most, or even a significant percentage, of complaints in this matter were of a non-matching variety.

For some period now[1] United States has responded to discovery requests from the Plaintiffs' Steering Committee ("PSC") for matching of client names with their emergency housing units ("EHUs") by searching the FEMA Response and Response Action Tracking System ("FRRATS") database. The FRRATS database is a disaster specific database that typically contains information relating to an applicant's individual EHU, such as the VIN number. Upon PSC's submission of client matching lists containing certain required information, FEMA "matches" a listed client name to a specific trailer issued to that person. (See Declaration of Jonathan R. Waldron in opposition to PSC's motion to compel United States to produce "disaster" and/or individual assistance files maintained by FEMA ("Waldron Decl."), ¶ 1. (Document 2832-7.)) As explained by Mr. Waldron, "In order to expeditiously run searches in the FRRATS database and match client names, a set process is followed. The PSC submits matching client lists in the form of spreadsheets that must contain certain information to allow FEMA to **accurately** match the client name with the information contained in the FRRATS database. This required information includes, at a minimum, the individual's full name, their FEMA ID number, and the state where their EHU was installed. The PSC must also provide other identifying information, such as a social security number and date of birth as well as the city, zip code, and address where the EHU was installed in order to confirm the identity of the listed client name." (Emphasis added; Waldron Decl., ¶3.) "Through the PSC's submission of client matching lists containing the required information, FEMA 'matches' an individual applicant to a specific trailer by providing

---

[1] United States is fond of pointing out that it has been willing and able to engage in the FRRATS matching processes since April 12, 2008. United States claims that PSC did not submit its first matching request until January 2009.

the VIN for each EHU provided to the applicant. Based upon previously produced installer lists and a VIN key, the PSC has the ability to then determine the manufacturer of a unit and the installing contractor based upon the VIN. Beside the VIN, FEMA usually also lists the barcode, the type of EHU, the name of the manufacturer of the EHU, and the instillation contractor of the EHU, when that information is readily available." (*Id.*, ¶ 4.)

Although United States is to be commended for its willingness to engage in this extensive matching process, the process will only be effective and useful if it is carried out in an accurate and reliable manner. HLC has uncovered evidence that raises fundamental questions as to the accuracy and reliability of a **significant** percentage of matching information provided to HLC by the United States. As explained below, it appears that this lack of reliability and accuracy can be attributed at least in part to the United States' failure to follow its own protocol for carrying out the matching process, particularly the protocol that requires United States to utilize "multiple filtering" to identify matches.

We will now detail the facts which lead HLC to question the accuracy and reliability of the matching information provided by the United States. On or about May 5, 2009, HLC served on the United States, through PSC, an Excel spreadsheet requesting matching information for approximately 1,300 trailer applicants (Group 1 request). (Group 1 request was labeled Exhibit BB by the PSC.) United States responded to the Group 1 request on June 9, 2009. Approximately 100 of the HLC's clients on this list came back unmatched and approximately 30 came back partially matched. On May 21, 2009, HLC served a Group 2 request containing 690 trailer applicants. (Group 2 request

was labeled Exhibit CC by the PSC.) United States responded on June 24, 2009. In regard to Group 2, there were at least 45 clients who were not matched by the United States even though HLC had provided the FEMA ID numbers as well as the other pertinent information requested by the United States.

On or about June 25, 2009, HLC submitted another matching request (Group 3) consisting entirely of new clients. (Group 3 request was labeled Exhibit LL by the PSC.) On the same date, HLC submitted a fourth request (Group 4) consisting of 2229 trailer applicants. (Group 4 request was labeled Exhibit KK.) Group 4 list of trailer applicants included approximately 239 trailer applicants on behalf of whom matching requests had never previously been submitted. However, this group of requests also included a resubmission of the entirety of Group 1 and Group 2 requests which the United States had previously responded to. HLC decided to resubmit entire Group 1 and Group 2 names because some of the clients in these groups had come back unmatched or partially matched notwithstanding the fact that HLC had provided FEMA ID numbers and the other requested data to the United States. This decision to resubmit the Group 1 and Group 2 names was made based on time constraints and technical difficulties separating out the names in Group 1 and Group 2 who had come back unmatched or partially matched.

On or about July 28, 2009, HLC received United States' response to Group 3 and Group 4 submissions. In regard to Group 4, HLC meticulously compared the matching information in that Group with the data for the same names in Groups 1 and 2 previously received from the United States. What HLC discovered was eye opening: **Full 25% of the matching information provided by the United States in the second round (Group**

**4) conflicted with the information provided in the first round (Groups 1 and 2) even though the data provided to United States in the two submissions were identical.**[2] In an effort to analyze the extent of the discrepancies, HLC combined all the data it received from the United States (Groups 1 through 4[3]) in order to identify those with conflicting matching information. Of 4545 total names (this number includes the duplicate names that were sent a second time), there were 1031 names as to whom the United States provided matching information that conflicted with the matching information previously provided by the United States.[4] (See Declaration of Paul Lee (Exh. A to this Motion) and Exh. D.) The following table, containing fictitious names and personal data, illustrates the conflicting information received by HLC[5]:

---

[2] The vast majority of the conflicting matching information involves conflicting contractor information rather than the manufacturer. Nevertheless, there are conflicting matches involving a fair number of manufacturers as well. Moreover, it is HLC's position that proper matching of the contractors/installers is just as critical as the proper matching of the manufacturers. This is because, in HLC's view, the contractors, like the manufactures, bear significant responsibility for the damages sustained by plaintiffs. Moreover, several major manufacturers have filed for bankruptcy protection under Chapter 7 or Chapter 11, making the proper identification of the contractors that much more critical.

[3] On or about July 3, 2009, HLC sent another matching request, Group 5, consisting of 81 trailer applicants. FEMA responded to that request on August 6, 2009. Group 5 data is not included in this motion.

[4] In analyzing the data, HLC, as noted, combined the data from its multiple submissions to the United States. Hence, 1031 names translate to approximately 516 instances of conflicting matching information provided by the United States.

[5] This motion contains fictitious names and personal data in order to protect the privacy of HLC clients, as well as avoiding disclosing to manufacturer and contractor defendants the identities of plaintiffs whose matching information may be suspect. HLC will gladly make its entire Excel spread sheets and other electronic data (which demonstrate the nature and extent of the problem) available to the Court, plaintiffs, and the United States.

| Request # | Name | FEMA ID# | Trailer Addr. | DOB | VIN | Mfg. | Contr. |
|---|---|---|---|---|---|---|---|
| Gp. 1 or 2 | John Doe | 12345678 | 1234 Johns St. | 10/07/40 | 4XNVTR4762 | Gulf Stream | Fluor |
| Gp. 4 | John Doe | 12345678 | 1234 Johns St. | 10/07/40 | 4XNVTR4762 | Gulf Stream | Shaw |
| Gp. 1 or 2 | James Roe | 12345679 | 7 Hideaway | 5/7/58 | 5NTD57871 | Monaco | Fluor |
| Gp. 4 | James Roe | 12345679 | 7 Hideaway | 5/7/58 | 5NTD57871 | Monaco | Shaw |
| Gp. 1 or 2 | T. Smith | 12345680 | 7754 Holloway | 3/21/59 | 4JCSMHT178 | Fleetwood | Shaw |
| Gp. 4 | T. Smith | 12345680 | 7754 Holloway | 3/21/59 | 4JCSMHT178 | Recreation by Design | CH2M |
| Gp. 1 or 2 | J. McMillen | 12345681 | 581 Franklin | 11/7/57 | 7ZXP1R526 | Homestead | Fluor |
| Group 4 | J. McMillen | 12345681 | 581 Franklin | 11/7/57 | 7ZXP1R526 | Starcraft | Shaw |
| Gp.1 or 2 | S. Bailey | 12345682 | 5792 First St. | 4/7/62 | 5NTZ57821 | Gulf Stream | Shaw |
| Group 4 | S. Bailey | 12345682 | 5792 First St. | 4/7/62 | 5NTZ57821 | Gulf Stream | Fluor |
| Gp. 1 or 2 | Ed Jones | 12345683 | 1629 Edwards | 9/2/38 | INLIGTR576 | Fleetwood | Fluor |
| Gp.4 | Ed Jones | 12345683 | 1629 Edwards | 9/2/38 | INLIGTR576 | Recreation by Design | Shaw |

The illustration above attempts to simulate a portion of actual data in HLC's possession. As is evident from above, United States provided a different manufacturer and/or contractor the second time around, even though the FEMA ID number, as well as the applicant name, trailer address, date of birth and VIN number stayed the same. In both submissions, as noted, this did not happen sporadically or in isolation but full 1031 times out of 4545. (Again, this actually translates to 516 names out of 2273.) The extent of the conflicting matches is particularly noteworthy because United States appears not to have followed its own protocol for compiling the matching information. In Jonathan Waldron's letter accompanying productions KK and LL (see Exhibit C to this motion), United States describes its protocol for matching the information as follows:

> The United States' ability to produce information in response to Plaintiffs' discovery request is contingent on Plaintiff's ability to provide the requested information describing each client. This includes, at a minimum, the first and last names, the states the EHU was located, the FEMA ID number, and the date of birth of the individual. Further, Plaintiffs should also provide, to the extent the information is available,

<u>the claimant's social security number, address where the unit was installed, and the FEMA bar code number for the EHU.</u> . . .

FEMA searched the FRRATS database using the information provided to produce the matches. Each exhibit provided a list of names and addresses (labeled with the prefix "Client" or similar designation atop each appropriate column). FEMA matched the data against leased applicants and corresponding household member information contained within FRRATS. The results are reflected in a series of tabs. Exhibit KK and LL contain three tabs: an "Original" tab is the matching request data sent to FEMA, the "LA Matches" and "MS Matches" tabs contain the matches located for these respective states.

<u>Records were first matched for using the State ID and FEMA registration number, and then additional filtering to identify matches was made using the last and first name.</u> Only records with a reported lease date (either past or present) were matched; no records were provided for applicants that either withdrew or had infeasible sites. If an applicant had multiple units, FEMA added columns to include this information." (Emphasis added; Jonathan Waldron's letter dated July 27, 2009 accompanying Exhibits KK and LL.)

It is implausible that the United States strictly followed its own protocol and examined the multiple pieces of information submitted by HLC (including the applicant name, DOB, trailer address, etc.)[6] rather than relying merely on FEMA ID number. How else can we explain the different matching information provided by the United States even where the applicant name, trailer address, DOB and related information are the same? United States should be required to perform the matching tasks again, and should be ordered to faithfully follow the protocol outlined in Mr. Waldron's letters, including "additional filtering to identify matches."

Although the conflicting matches provided by United States (as illustrated above) emphatically confirm HLC's suspicion that not all of the data provided by the United States are accurate, there have been other signs pointing to this conclusion. At the

---

[6] United States describes this process as involving "additional filtering to identify matches...." (See Jonathan Waldron's July 27, 2009 letter, p. 2.)

beginning of the matching process involving HLC, United States appeared to conduct a more thorough research in furtherance of its quest to obtain the matching information. For example, in connection with the Group 1 and Group 2 submissions, there were one or more instances wherein HLC listed an erroneous FEMA ID number in connection with a trailer applicant. When responding to HLC's matching request, United States corrected the wrong FEMA ID number after apparently utilizing the other pieces of information provided by HLC, including trailer address, applicant date of birth, social security number, etc. However, in responding to the Group 4 submission (Exhibit KK), United States appears to have become less thorough and appears not to have followed its own protocol for obtaining the matching information. For example, HLC erroneously submitted an identical FEMA ID number regarding two different trailer applicants. Based on United States' search criteria as outlined in Jonathan R. Waldron's July 27, 2009 letter (i.e. additional filtering), United States should have detected that the FEMA ID number for one of the applicants was wrong. However, both applicants came back with the exact same matching trailer and contractor information. This was the case even though the second applicant had a different applicant number, different trailer address, and different date of birth.[7]

In other instances, United States provided same VIN numbers (as well as matching information) regarding two different individuals with completely different FEMA ID numbers, different applicant names, and different trailer addresses. United

---

[7] This seemingly indicates that the United States utilized only FEMA ID numbers and not "additional filtering to identify matches."

States has not explained how it is possible for two individuals with different FEMA ID numbers, applicant names, and trailer addresses to end up with the same VIN number.

In at least one instance, United States in response to a Group 1 request matched six different trailers to a claimant, but later in response to an identical Group 4 request identified only a single trailer. HLC followed up with this claimant and confirmed that she resided in multiply trailers. In another instance, HLC provided United States with three different trailer addresses for a claimant but United States responded with only a single manufacturer and contractor. HLC has confirmed with this claimant that she resided in three different trailers.[8]

## II. THE COURT SHOULD ORDER THE UNITED STATES TO RE-CONDUCT THE MATCHING PROCESS AND ALLOW PLAINTIFFS AN OPPORTUNITY TO AMEND THE COMPLAINT TO NAME THE CORRECT MANUFACTURER AND/OR CONTRACTOR OR, IN THE ALTERNATIVE, FASHION SUCH OTHER RELIEF AS THE COURT DEEMS APPROPRIATE

Due to the United States' failure to conduct proper matching, a large number of plaintiffs face the very real prospect of having a major manufacturer or contractor defendant dismissed. Inasmuch as the United States possesses the only practical means of matching claimants with trailer manufacturers and contractors, and since plaintiffs do not possess such means, it would be fundamentally unfair to allow such dismissals to take place because the United States failed to properly carry out its own protocol for carrying out the matching process.

---

[8] United States' failure to list multiple trailer information, and its failure to response to HLC's letter, is inconsistent with Mr. Waldron's representation that "if an applicant had multiple units, FEMA added columns to include this information." (Jonathan Waldron's letter dated June 8, 2009 (Exhibit E to this motion).)

Moreover, United States has a duty to supplement its initial disclosures upon determining that such initial disclosures were materially incomplete or inaccurate. Fed. R Civ. Proc. 26(e)(1). This duty to supplement or correct applies both to early disclosures mandated under Rule 26(a) and responses to formal discovery requests under other sections of Federal Rules of Civil Procedure. Jonathan Waldron's letters accompanying United States' responses indicates that the United States is treating these matching requests as a request for production of documents under Rule 34. Under Rule 34, as under Rule 26, the United States has a duty to supplement any incomplete or inaccurate information it has previously provided.

### III. <u>CONCLUSION</u>

For the forgoing reasons, it is respectfully submitted that good cause exists for the Court to order the United States to re-conduct the trailer matching process (using multiple filters and not just FEMA ID number) regarding Hurricane Legal Center's clients, and to allow Plaintiffs leave to amend the complaints to name correct manufacturers and/or contractors upon completion of such supplemental matching process. In the alternative, the Court is requested to fashion such other relief as it deems appropriate and/or will serve the ends of justice.

DATED: September 30, 2009          Respectfully submitted,

                                   HURRICANE LEGAL CENTER, LLC


                                   BY _____/s/ Paul Y. Lee_____
                                          Paul Y. Lee, #CA118981

                                   600 Carondelet Street
                                   Suite 602
                                   New Orleans, LA 70170
                                   (504) 525-1944 (telephone)
                                   (504) 525-1279 (facsimile)
                                   lee@kaplanleeoc.com

                                   **Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2009 I electronically filed the forgoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed a forgoing documents and a notice of electronic filing by first class mail to all counsel on record who are non-CM/ECF participants.

                                                _/s/ Paul Y. Lee_
                                                  Paul Y. Lee