**C**Federal Rules Decisions
January, 1984

**\*461** THE SUMMARY JURY TRIAL AND OTHER ALTERNATIVE METHODS OF DISPUTE
RESOLUTION

Judge Thomas D. Lambros

United States District Court

Northern District of Ohio

Copyright © 1984, 1985 West Group

**A REPORT TO THE JUDICIAL CONFERENCE OF THE UNITED STATES**

**COMMITTEE ON THE OPERATION OF THE JURY SYSTEM**

TABLE OF CONTENTS

| | |
|---|---|
| Preface | 463 |
| Introduction | 465 |
| Alternative Dispute Resolution Techniques | 465 |
| Summary Jury Trial | 468 |
| Foundation For SJT | 469 |
| The SJT Process | 470 |
| Selection Of Cases For Summary Jury Trial | 471 |
| Results In The Northern District Of Ohio | 472 |
| SJT Use In Other Jurisdictions | 474 |

ATTACHMENT 2

Conclusion                                        476

Selected References

Appendix A: General Order No. 62, Northern District of
Ohio, Eastern Division

Appendix B: Summary Jury Trial Handbook

Appendix C: Juror Profile Form

Appendix D: Jury Advisory Opinion Forms

Appendix E: Standing Order No. 6A, District of Montana

Appendix F: Letter of Judge Lee R. West

Appendix G: Case Memoranda of Judge Douglas W.
Hillman and Chief Judge Wendell A. Miles

Appendix H: Letters of Judge Stewart A. Newblatt

Appendix I: Letter/Order of Judge S. Arthur Spiegel

Appendix J: Letter/Enclosure of Judge Richard A. Enslen

**\*462** This report was especially prepared for the Judicial Conference Committee on the Operation of the Jury System.

THE COMMITTEE ON THE OPERATION OF THE JURY SYSTEM

Honorable T. Emmet Clarie

United States District Court

Hartford, Connecticut Washington, D.C.

Chairman

Honorable J. Waldo Ackerman

Chief Judge,

United States District Court

Springfield, Illinois

Honorable Howard C. Bratton

Chief Judge

United States District Court

Albuquerque, New Mexico

Honorable William B. Enright

United States District Court

San Diego, California

Honorable John Feikens

Chief Judge,

United States District Court

Detroit, Michigan

Honorable Clifford S. Green

United States District Court

Philadelphia, Pennsylvania

William R. Burchill, Jr.

Deputy General Counsel

Administrative Office of the United States Courts

Washington, D.C.

Honorable June L. Green

United States District Court

Washington D.C.

Honorable Wm. Terrell Hodges

Chief Judge

United States District Court

Tampa, Florida

Honorable James R. Miller, Jr.

United States District Court

Baltimore, Maryland

Honorable John F. Nangle

Chief Judge

United States District Court

St. Louis, Missouri

Honorable Charles Schwartz, Jr.

United States District Court

New Orleans, Louisiana

Honorable Joseph L. Tauro

United States District Court

Boston, Massachusetts

Robert K. Loesche

Assistant General Counsel

Administrative Office of the United States Courts

Washington, D.C.

## *463 PREFACE

The use of alternative dispute resolution techniques has received considerable attention in recent years. The need for effective alternatives, and their positive results on our judicial system, cannot be disregarded. This is the message delivered by the Chief Justice of the United States Supreme Court in his 1983 Year-End Report on the Judiciary, wherein it was stated that "[t]he 'minitrial' and the summary jury verdict are being used in various jurisdictions in the United States and are proving effective."

The genesis of the Summary Jury Trial took place in 1980, when I was trying two personal injury suits before full juries. It struck me that both of these cases, one an FELA and the other a diversity auto accident, should have settled prior to trial. The reason that they didn't was that counsel and their clients felt that they

could obtain a better resolution from a jury than from their pretrial settlement negotiations. It occurred to me that if only the parties could gaze into a crystal ball and be able to predict, with a reasonable amount of certainty, what a jury *would* do in their respective cases, the parties and counsel would be more willing to reach a settlement rather than going through the expense and aggravation of a full jury trial.

While hearing the second of the two cases, I conceived the idea of a summarized trial to a jury, and what is now known as the Summary Jury Trial was born. The first Summary Jury Trial concerned a products liability claim of a defective football helmet. After exhausting all possible pretrial attempts to reach settlement, a Summary Jury Trial was held, after which the case settled. Since that time, the process has blossomed into a viable alternative dispute resolution technique.

Summary Jury Trial is but one of a variety of alternative dispute resolution processes in use today. Each has its own particular merit, and compliment each other. The processes are not in competition with each other. They simply serve varying needs based on particular circumstances and the particular place any one case finds itself on the time line toward resolution. Summary Jury Trial is the final alternative before full trial.

This report will discuss the use of alternative methods of dispute resolution and, in particular, the Summary Jury Trial. Discussions held between myself and the members of the Judicial Conference Committee on the Operation of the Jury System on July 28 and 29, 1983, in Lake Tahoe, Nevada, indicated the Committee's deep and increasing concern in the reduction of juror costs while maintaining the effectiveness of our legal system. The use of the Summary Jury Trial was discussed as one method toward achieving that end. Experience in the Northern District of Ohio and in a number of other jurisdictions demonstrates that the Summary Jury Trial can be an effective tool in overcoming the burden of *464 an ever increasing docket and in reducing juror costs, while not sacrificing the rights of individuals who seek justice through our jurisprudential process.

I would like to thank the members of the Committee for permitting me to participate in their discussions and hope that this report will serve useful in accomplishing their goals.

## *465 THE SUMMARY JURY TRIAL AND OTHER ALTERNATIVE METHODS OF DISPUTE RESOLUTION

This country has experienced, in recent years, an explosion of litigation and regulatory disputes. This trend has overloaded the courts and increased the costs of our traditional methods of resolving disputes. Devoting his 1982 Year-End Report on the Judiciary exclusively to the problem of overload on the courts, Chief Justice Warren Burger called for the creation of new dispute resolution tools by using "the inventiveness, the ingenuity and the resourcefulness that have long characterized the American business and legal community." In his 1983 Year-End Report on the Judiciary, the Chief Justice called upon the bar and the bench to actively seek alternatives to the high cost of litigation and the ever increasing case overload problem, saying in part:

> Experimentation with new methods in the judicial system is imperative given growing case loads, delays, and increasing costs. Federal and state judges throughout the country are trying new approaches to discovery, settlement negotiations, trial and alternatives to trial that deserve commendation and support. The bar should work with judges who are attempting to make practical improvements in the judicial system. Greater efficiency and cost-effectiveness serve both clients and the public. Legal educators and. scholars can provide a valuable service by studying new approaches and reporting on successful innovations that can serve as models for other jurisdictions, and on experiments that do not survive the scrutiny of careful testing.

The great demand on our adversary system can be best relieved by diverting cases to a less cumbersome and costly process, which in turn can preserve the trial process for those cases which are absolutely hard-core, durable, trial-bound cases. The Summary Jury Trial, among other alternative dispute resolution techniques, is a proven process through which this result can be accomplished.

## ALTERNATIVE DISPUTE RESOLUTION TECHNIQUES

The purpose of any dispute resolution technique, including Summary Jury Trial, is the settlement of disputes. The judicial system has come to rely on a steady flow of case settlements in order to achieve a measure of docket control. While lawyers are trained in the techniques of conflict rather than in dispute management, they nonetheless settle a large number of cases. Were they trained to think in terms of techniques which facilitate the likelihood of voluntary resolution, fewer cases would be filed and a greater portion of those which are filed would be settled.

**\*466** Given the very nature of the adversary system, however, it is difficult for a lawyer to play the role of creative negotiator, and the judge is often the only one who can effectively initiate serious settlement discussions. Failure to achieve an agreeable compromise at a settlement conference, however, does not mean that a case cannot be settled. The use of so-called "alternative dispute resolution techniques" can be effectively used to reach settlements in a great number of civil disputes. There are a number of alternative methods in use today, many of which have proven effective in settling cases prior to trial and, thereby, reducing the docket and the expense of litigation. One alternative is *private or contractual arbitration*. This is the submission of a disagreement to one or more impartial persons with the understanding that the parties will abide by the arbitrator's decision. Implementation of this procedure in the federal system is by virtue of The Federal Arbitration Act, <u>9 U.S.C. §§ 1</u>-<u>14</u>, which was designed to ease congestion in the court system, to speed up resolution of disputes, and to afford a more economical means of disposing of cases. The use of arbitration extends beyond the federal system as evidenced by the fact that the American Arbitration Association alone administers more than 40,000 cases a year.

*Court-annexed arbitration* has been utilized in several district and state courts. Often a local rule requires that certain classes of cases *shall* be referred to arbitration. The arbitrator's judgment on the merits is entered as the judgment of the court unless, within prescribed time limits, a party rejects the award by filing a demand for a trial *de novo*.

*Mediation* and *conciliation* mechanisms bring the parties together to discuss settlement under the auspices of a neutral third party. These methods have received considerable attention and have been in active use in the Detroit area, the birthplace of our present pretrial system, where they have been shown to be very effective. A number of courts, particularly at the state level, have a local rule providing for mediation panels for certain categories of cases.

*Private judging* is used with increasing frequency to resolve corporate litigation. In this procedure the parties present an abbreviated version of their case to a privately retained third party. In California, the Code of Civil Procedure § 638 authorizes a procedure commonly known as "rent-a-judge" that permits the parties to petition the court for appointment of a mutually selected referee who is paid by the parties.

*Neutral experts* and *special masters,* who can be appointed pursuant to Fed.R.Evid. 706, Fed.R.Civ.P. 53 or the inherent power of the court, can have a mediational effect and foster settlement. Judge Robert C. Zampano, of the District of Connecticut, has utilized such experts in hundreds of cases, finding them particularly effective in construction cases. I have appointed a neutral economic expert in a major price-fixing class action against grocery retailers in northern Ohio. The expert was able to effectively penetrate the mass of data presented for calculation of damages, and was instrumental in effectuating the $20 million settlement.

**\*467** Related to the use of neutral experts are special masters, appointed to facilitate the just, speedy, and inexpensive determination of cases which involve complex issues or multiple parties. Recently, I have employed special masters to assist in establishing an effective case management plan in the approximately 100 asbestos-related actions in the Northern District of Ohio, which have been consolidated on my docket. The use of special masters in complex matters can greatly improve the efficiency, and thereby the cost savings, of litigation.

The *mini-trial,* developed by Professor Eric D. Green, of Boston University Law School, is a hybrid

that merges certain characteristics of adjudicative, arbitral, mediational and negotiational processes into a unique creation. The purpose of the mini-trial is to reveal the theories, strengths, and weaknesses of opposing positions to the two parties as an aid to the resolution of the dispute. The goal of the mini-trial is to effect speedy cost-effective resolution of the dispute by narrowing the dispute, promoting a dialogue on the merits of the case rather than just the dollars, and reconverting what has become a typical lawyers' dispute back into a businessman's problem by removing many of the legalistic, collateral issues in the case. The mini-trial, used primarily by corporate litigants involved in commercial disputes, is a private trial, usually conducted before a neutral advisor, and voluntarily undertaken by the parties outside of court. It is a flexible proceeding which may be applied to a case in a variety of forms, including utilization of a privately paid jury.

The mini-trial and the Summary Jury Trial have frequently been confused. In fact they are two separate and distinct processes. The Summary Jury Trial is a court-annexed, court run process. The mini-trial is a voluntary, highly private and nonbinding procedure, consisting of informal, summary presentations by the lawyers and experts for each party to the dispute of its best case, followed by rebuttal and questions concerning those presentations. The mini-trial is conducted before top management representatives (with settling authority) of each party. It is presided over by a jointly selected neutral advisor or moderator who may have specialized subject expertise. If necessary, after the mini-trial the neutral advisor will apprise the parties as to the strengths and weaknesses of their respective cases.

*Telecredit, Inc. v. TRW, Inc.*, was the first widely publicized application of the mini-trial concept. It involved a legally and technically complex patent infringement case between Telecredit, Inc., the owner of a number of patents relating to computerized check verification and charge authorization systems, and TRW Inc., the manufacturer of a number of such systems for banks and retail outlets. In nearly three years of litigation the case had consumed several hundred thousand dollars in legal fees on both sides and still no trial date had been set. Using former United States Court of Claims Judge James Davis as a privately hired neutral advisor, the parties reached a settlement after only two days of presentation time of what had been a long and bitterly fought lawsuit.

**\*468** *Automatic Radio v. TRW, Inc.* involved the merchantability of high-technology electronic equipment supplied as a component part to a manufacturer for inclusion in a retail product. Because of the possibility of insurance coverage, representatives of the defendant's casualty insurer participated at the mini-trial as observers. Former judge, Professor Irving Younger, presided as the neutral advisor and assisted participating management in settling the case the same day the mini-trial concluded. This was after five years and over one million dollars in litigation time and expense (with the prospect of at least this much additional cost if the case went to trial).

Each of these alternative methods offer the prospect of settlement of disputes, thereby avoiding actual trial and related costs.

## SUMMARY JURY TRIAL

It is clear that settlement of cases prior to trial provides a cost savings in terms of litigation. One aspect of this savings is the elimination of the need to empanel a jury. Some cases, however, are not amenable to settlement through the usual pretrial methods of dispute resolution, or the alternative methods mentioned above. There may be a variety of reasons for this inability to settle. Litigants may refuse to accept a compromise because emotionally they need a "day in court" to tell their story. Absent the opportunity to hear both sides of the case presented to the finders of fact, a lawyer and his client may be unable to objectively recognize the weaknesses in their position. The lawyer and his client may believe they can "pull off" a weak case if only they can get it in front of a jury. These reasons, among others, act as barriers to settlement; barriers which often result in protracted litigation and expense.

The Summary Jury Trial (SJT) provides a means by which to decimate these barriers to settlement. Alternatively, SJT can aid in streamlining jury trials so that the trial process undergoes a more efficient use of time.

While each of the above-mentioned alternative dispute resolution devices offer the prospect of resolution of cases prior to full trial, and can prove useful in the particular circumstances for which they have been fashioned, the SJT is inherently different. This difference initially manifests itself in the fact that SJT is the only alternative dispute resolution technique which utilizes the age old jurisprudential concept of trial by jury. It is this concept, the expression of opinion by a jury of peers, which has molded our judicial system and which permits the parties to believe that their story has been told, and a decision reached. No other alternative allows for the use of this basic foundation of our present system.

Initiated in 1980, SJT is counsels' presentation to a jury of their respective views of the case and the jury's advisory decision based on such presentations. It is a flexible pretrial procedure that aids appreciably in the settlement of trial-bound cases.

**\*469** The SJT can be an effective predictive process for ascertaining probability of results. It is my perception that the sole bar to settlement in many cases is the uncertainty of how a jury might perceive liability and damages. Such uncertainty often arises, for example, in cases involving a "reasonableness" standard of liability, such as in negligence litigation. No amount of jurisprudential refinement of the standard of liability can aid the resolution of such cases. Parties' positions during settlement negotiations in cases of this type are based on an analysis of similar cases within the experience of counsel as to juries' determinations of liability and findings of damages. Such comparison is usually of little value, however, as parties tend to aimlessly grope toward some notion of a likely damages award figure upon which to base their negotiating positions. The parties and the court may become frustrated in cases, especially where neither party wants to fully try the case on the merits and the only roadblock to a meaningful settlement is the uncertainty of how a jury might perceive liability and damages.

The half-day proceeding is designed to provide a "no-risk" method by which the parties may obtain the perception of six jurors on the merits of their case without a large investment of time or money. The proceeding is not binding and in no way affects the parties' rights to a full trial on the merits. SJT is a predictive tool that counsel may use to achieve a just result for their clients at minimum expense.

After preparation and presentation of the case at an SJT, the possibility of a settlement becomes much more real to both sides. Unreasonable demands and offers are reevaluated, and mutually agreeable compromises are worked out in light of the jury's findings.

## FOUNDATION FOR SJT

The Summary Jury Trial is firmly rooted in the Federal Rules of Civil Procedure. In light of Fed.R.Civ.P. 1, SJT is within the court's pretrial powers pursuant to Fed.R.Civ.P. 16(a)(1), (5), (c)(11), and the court's inherent power to manage and control its docket.

Rule 1 of the Federal Rules of Civil Procedure states that the Rules, "shall be construed to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. Rule 16(a), concerning pretrial activities, states, "In any action, the court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference or conferences before trial for such purposes as (1) expediting the disposition of the action ... and (5) facilitating the settlement of the case." Fed.R.Civ.P. 16(a)(1) and (5).

Furthermore, the Rules recommend that settlement be discussed, as well as potential alternatives to trial. Newly adopted Fed.R.Civ.P. 16(c)(7) and (11) provide that "[t]he participants at any conference under this rule may consider and take action with respect to ... (7) the possibility of settlement or the use of extrajudicial procedures to resolve the dispute ... and (11) such other matters as may aid in the disposition of the action." Fed.R.Civ.P. 16(c)(7) and (11).

**\*470** The SJT process recognizes the importance our judicial system places on decisions rendered by lay jurors. This is consistent with Fed.R.Civ.P. 39(c), which provides for an advisory jury in cases not

triable to a jury as of right. Additionally, use of the SJT is consistent with <u>Fed.R.Civ.P. 83</u>, which provides in pertinent part, "[i]n all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules." <u>Fed.R.Civ.P. 83</u>.

In the Northern District of Ohio, the SJT has been specifically provided for by Local Rule 17.02, a copy of which appears as Appendix A to this Report, and which states:

> The Judge may, in his or her discretion, set any appropriate civil case for Summary Jury Trial or other alternative method of dispute resolution, as he or she may choose.

<u>THE SJT PROCESS</u>

The SJT may be conducted by a judge or by a magistrate upon assignment from the court. It is essential that a person of authority conduct the proceeding, in a courtroom, in order to maintain the aura of actual trial.

For SJT to be truly beneficial, the case must substantially be in a posture for trial. Discovery must be complete and there must be no motions pending. A pretrial conference held shortly before the case is assigned to SJT is most helpful in determining the posture of the case. Here, the Court hears any motions *in limine*, and explores areas of possible objections and rules on them. The SJT Handbook [Appendix B] is distributed at the conference.

Experience has shown that if the judge penetrates the "guts" of the case at this conference, counsel can be given appropriate guidance for an SJT proceeding that will flow without formal objections being interposed. In the event that the case is not in proper posture for SJT, the parties and the Court can establish a schedule to prepare the case for SJT.

No later than three (3) working days before SJT, counsel must submit a trial brief on issues of law and a set of proposed jury instructions. It is for the effect on the litigants that SJT is performed, thus, clients are expected to attend SJT. Leave of Court must be sought to excuse attendance of a party. It must be remembered that clients' awareness of the jury's perception is as important as that of counsels'.

Ten potential jurors are obtained for *voir dire*. Prior to that process, the potential jurors are given a brief description of the case, the parties and attorneys involved. This is done by a law clerk or deputy clerk, who then distributes a short juror profile questionnaire [Appendix C] which each potential juror fills out and returns. Basic information is revealed on these forms, thus relieving counsel and the court from having to obtain the information from each potential juror during *voir dire*. A copy of each completed questionnaire is given to the attorneys and to the presiding judicial officer.

**\*471** A brief *voir dire* examination by the court then follows. Counsel are usually permitted two challenges to the venire, and the case is ready to be heard by a six-member jury.

The proceedings are not open to the public. Unless specifically ordered by the Court, the proceedings are not recorded. Counsel may, if so desired, arrange for a court reporter to be in attendance.

All evidence is presented through the attorneys, who may incorporate arguments on such evidence in their presentations. Opening and closing arguments are amalgamated with a narrative overview of the trial proofs. Generally, one hour of time is allotted to each side in the litigation, in which to present their case to the jury. This time period may be broken up so that rebuttal time is available if desired.

No testimony is taken from sworn witnesses. Counsel simply summarize the anticipated testimony of trial witnesses and are free to present exhibits to the jury.

While counsel may employ any effective and persuasive advocacy techniques, counsel are limited to

presenting representations of evidence that would be admissible at trial. Representations of facts must be supportable by reference to discovery materials, including depositions, stipulations, documents, and formal admissions, or by a professional representation that counsel has spoken with the witness and is repeating that which the witness stated. Additionally, statements, reports, and depositions may be read from, but not at undue length.

Formal objections are not encouraged. It is hoped that most objections would have been dealt with at the pre-SJT conference. Nevertheless, in the event counsel overstep the bounds of propriety on a relevant aspect of the case, an objection will be entertained. If such an objection is well-taken, the jury will be admonished.

Following counsels' presentation, the jury is given an abbreviated charge and then retires to deliberate. The jury may return a consensus verdict or separate, individual verdicts that list each juror's opinion of liability and damages [Appendix D]. While consensus verdicts are encouraged, separate, individual verdicts do afford counsel substantial insight into the individual juror's perceptions and may suggest an equitable basis for settlement.

Again, it should be noted that counsel may stipulate that a consensus verdict will be deemed a final determination on the merits and that judgment may be entered by the Court. This, however, is optional. Additionally, counsel may stipulate to any other use of the verdict that will aid in resolution of the case. It is this flexibility in process which increases the potential of the SJT.

<u>SELECTION OF CASES FOR SUMMARY JURY TRIAL</u>

Flexibility is also the key in selecting cases for SJT. Generally, it is used in cases where settlement cannot be achieved because of differing *472 perceptions of how a jury will evaluate the evidence. As illustrated above, the process can provide an insight into the decision of a jury.

The use of the SJT is not limited to negligence actions, nor to actions which have only two parties. While it has proven effective in these kinds of cases, it has also been successfully utilized in litigation involving multiple parties, and in such substantive areas as products liability; personal injury; contract; age, gender, and race discrimination; and antitrust.

The amount of relief for which plaintiff prays is not a limiting factor. In one personal injury action, a settlement in excess of $400,000 was achieved, and an antitrust case settled for $2.5 million after another SJT. In two minor personal injury cases, plaintiffs decided to dismiss after unfavorable results in SJT rather than pursue a futile and expensive venture.

All jury cases, whether simple or complex, may be amenable to SJT. Effective pretrial conferencing is the best method for determining precise suitability for SJT.

<u>RESULTS IN THE NORTHERN DISTRICT OF OHIO</u>

As a result of using the SJT process in the Northern District of Ohio, cases have shown movement on the docket and full and expensive jury trials have been avoided. Recent statistics indicate that over 90% of the 88 cases selected for SJT thus far, have settled prior to full trial [Table I].

SUMMARY JURY TRIAL STATISTICS

January, 1984

| | | |
|---|---|---|
| Number of cases selected and assigned for SJT | 88 | |
| Number of SJT's held: | 49 | (55.7%) |
| Number of cases set for SJT, but settled before SJT held: | 39 | (44.3%) |
| | 88 | (100%) |
| Of those cases for which a SJT was held: | | |
| Number of cases settled after SJT: | 45 | (92%) |
| Number of cases going to full trial after SJT: | 1 | (2%) |
| Number of cases settled during full trial after SJT: | 1 | 2% |
| Number of cases still in settlement negotiations after SJT: | 2 | (4%) |
| | 49 | (100%) |

**TABLE I**

**\*473** Of those cases initially selected and set for the process, 44.3% have settled before going through the actual SJT. I attribute a good portion of this figure to those cases which require that extra "push" toward settlement, which setting definite dates sometimes provides. Still, 55.7% did go on to SJT, indicating that a majority of the cases selected for the process *are* durable, trial-bound cases. It is these cases which the SJT hopes to "short-circuit" prior to actual trial.

In fact, this has been the case. Of 49 SJT's held thus far, 45, or 92%, have resulted in settlements. One case did proceed to a trial *de novo*, and another settled during its jury trial. Two cases, which were processed through SJT, are still in settlement negotiations.

In addition to the savings generated to individual litigants by avoiding a protracted jury trial, the success rate of the SJT has had a significant effect on the use of the jury, and related costs.

According to the *1983 Grand and Petit Juror Service*, prepared by the Administrative Office of the United States Courts, the 12-month period ending June 30, 1983, saw 640,577 prospective petit jurors called for jury duty, with only 30.1% actually chosen to serve. In the federal system, each juror is paid $30 a day plus 20 cents a mile for transportation, resulting in an average daily cost of $44.00. In 1983, the federal court system had 21,060 civil jury trial days at an approximate cost to the government of $16 million. The average cost per jury trial day in 1983 was $758 and the average civil jury trial lasted a little over four days.

When we consider that an SJT usually takes one half to one day to complete, the savings aspect of the SJT becomes clear. First, jurors are only used for one day, as compared with the 4 plus day average noted above. Further, only ten prospective jurors are called, thereby eliminating a long line of unused, challenged, but compensated, jurors.

In the Northern District of Ohio, where the SJT has been in use since 1980, the average cost of a petit juror has been $43.00 per day, and the average jury trial lasts 5 plus days. A look at the figures involved [Tables II-III] shows that the savings associated with the processing of 49 Summary Jury Trials is $73,702.00, or roughly $1,504.12 per case. This savings is based on not requiring jurors to serve the total average number of days for a full jury trial *plus* the reduced number of potential jurors initially required for *voir dire.*

Additionally, SJT offers the prospect of an additional savings, and increased juror utilization, by "recycling" jurors who have been challenged, or have not been selected, in other venire in the courthouse. As these jurors are going to be paid whether they are utilized or not, it makes sense to attempt to have them serve whenever possible. The SJT permits this utilization to occur, particularly where unused jurors are available from morning trial proceedings and the SJT is set for the afternoon. While it is difficult to implement the coordination of events **\*474** required to proceed in this manner, the potential savings and juror utilization which would result may commend itself to deeper investigation of such coordination.

## SUMMARY JURY TRIAL COST ANALYSIS

The 1983 Grand and Petit Juror Service, issued by the Administrative Office, states that the average cost per day for a petit juror in the Northern District of Ohio totals $43.00.

49 Summary Jury Trials have been held to date. Based on a pool of 10 potential jurors, the costs and savings have been as follows:

| | |
|---|---|
| 490 jurors called at $43.00 per juror: | $21,070.00 |
| Jury pools (requiring 18 potential jurors) were subsequently called for 2 cases, with those jurors serving one and three days respectively. These costs totaled: | $ 2,150.00 |
| Actual jury cost of achieving settlement in 49 SJT cases: | $23,220.00 |

**TABLE II**

COMPARISON OF COST-SAVINGS-SJT AND FULL JURY TRIAL

| | Each Case | 49 Cases |
|---|---|---|
| First day costs of regular jury, based on a pool of 18 jurors at $43.00 per day: | $774.00 | $37,926.00 |
| One day cost of a summary jury, based on a pool of 10 jurors at $43.00 per day: | $430.00 | $21,070.00 |
| Savings in first day costs alone, if each full trial lasted one day, and no SJT proceeded to full trial: | $344.00 | $16,856.00 |
| + | | |
| Based on the 1983 average of how long each case would have taken in a full jury trial, 196 subsequent jury days were saved, giving an additional estimated savings of (196 x 7 jurors x $43.00): | | $58,996.00 |
| | | $75,852.00 |
| Less costs of 2 SJT cases requiring full jury panels: | | $ 2,150.00 |
| ACTUAL JUROR COST SAVINGS FOR 49 SUMMARY JURY TRIALS: | | $73,702.00 |

**TABLE III**

SJT USE IN OTHER JURISDICTIONS

Although only in existence for four years, the SJT has seen steady growth in jurisdictions outside of the Northern District of Ohio. This *475 growth may be attributed, in addition to the cost savings and positive effect on the docket, to the inherent flexibility of the process. The rules which have been adopted in the Northern District of Ohio are not absolute rules to be followed in every case, or in every court. Variations of the process should be, and have been, encouraged, so as to adapt the SJT to particular circumstances. I believe that this fact has played a significant role in the acceptance of the SJT as a final step in the pretrial mechanism.

For example, Chief Judge James Battin, United States District Judge for the District of Montana, has adopted a Standing Order providing for the use of SJT [Appendix E]. Based on the rules adopted in the Northern District of Ohio, Judge Battin has made two slight modifications to the process, which he feels provides for a more effective SJT in his court. First, each side's time is to be divided into opening statements, case-in-chief, and closing arguments. The parties may divide "their allotted time among the three trial segments as they see fit." Plaintiff is permitted a final rebuttal if he has any remaining time. Second, at the conclusion of counsels' presentations, the jurors are asked if they have any questions they would like to direct to the attorneys.

Other jurisdictions which have been using the SJT process include the District of Massachusetts, where Judge John McNaught adopted the procedure in 1981. Thus far, he has held over 50 SJT's, with promising results.

In the Eastern District of Pennsylvania, Judge Norma L. Shapiro has found the SJT particularly amenable to complex cases, reporting that one potentially complicated and protracted case settled only as the result of an SJT.

Judge Lee R. West, United States District Judge for the Western District of Oklahoma, invited me to jointly preside over a major price-fixing case in the chemical industry, in which settlement had proven elusive. Together, we were able to achieve settlement in one day of a case that would have consumed an estimated 2 1/2 months of trial time. The federal judges in Oklahoma City have now adopted a local rule providing for SJT, and Judge West anticipates frequent use of the process [Appendix F].

In Michigan, SJT has met with great success. Judge Richard A. Enslen, United States District Judge in Kalamazoo, has effectively used the SJT in his court. Judge Douglas W. Hillman, United States District Judge in Grand Rapids, heard of the procedure from Judge Enslen. He invited Judge Enslen to conduct an SJT with him in a case involving the breach of an airplane brokerage agreement. That case settled [Appendix G].

Chief Judge Wendell A. Miles, United States District Court in Grand Rapids, also reports success with the SJT [Appendix G]. He writes,

> I believe in the [Summary Jury Trial] under the right conditions. It can and will reduce the number of trials and, quite obviously, the number of appeals.
> *476 The presentation of the *** concept by Judge Enslen on March 11, 1983 to upwards of 200 trial lawyers in the Western District of Michigan (local chapter of Federal Bar Association) was so well received that attorneys are welcoming it, rather than resisting it, as a worthwhile "tool" in resolving disputes.

Judge Stewart A. Newblatt, United States District Judge in Flint, Michigan, has met with success in the use of the SJT in a case in which physicians and county officials were involved [Appendix H]. Judge Newblatt has effectively utilized the procedure in other cases as well.

In Cincinnati, Judge S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, is currently using SJT's to bring about settlements in complex asbestos litigation [Appendix I]. He reports that the process has been effective in one, and possibly two, of three cases, which were set for SJT. The third case settled upon the "threat of a Summary Jury Trial."

Judge James Carrigin, United States District Judge in Denver, Colorado, has implemented the SJT in his courtroom, as has Judge Jose A. Gonzalez, Jr., United States District Judge in Ft. Lauderdale, Florida, and Judge Richard P. Conaboy, United States District Judge in Scranton, Pennsylvania.

Interest in the process has increased, and I continue to receive requests for information from judges around the country and members of the bar. For example, Chief Judge Samuel P. King, of the United States District Court for Hawaii, has expressed interest in instituting the SJT in Honolulu. Further, the interest cuts across the federal-state judicial line, as interest in the process has been expressed by state court judges from Florida to California.

CONCLUSION

Creative utilization of alternative dispute resolution techniques will provide the American people with cost-efficient, time-saving methods to resolve disputes. Effective implementation of these methods will leave the adjudicative process available for the quality processing of high impact cases and provide resolution by means other than full trial, without compromising an individual's rights and dignity.

The Summary Jury Trial, unique among the alternatives presently available, provides a great impetus to settlement of "durable" cases. This capsulized trial procedure places parties in a favorable psychological posture for settlement by eliminating traditional obstacles to settlement. The parties sense the strengths and weaknesses of their respective cases, observe juror reactions to conflicting evidence, and derive the satisfaction of having their story heard.

Because it is effective, the cost savings associated with the SJT cannot be dismissed or ignored. Clearly, where the process is implemented, potential full jury trials do not take place. This results in a savings in terms of cost to the litigants and juror costs to the judicial system. **477** Additionally, fewer potential jurors are required for the SJT, than in an ordinary jury trial, resulting in an immediate savings in juror costs, as well as more efficient utilization of available jurors.

The SJT process forces the parties to take a hard look at their respective cases, and to evaluate their positions with respect to going through the process. Frequently, parties settle or voluntarily dismiss their suits upon their being set for an SJT.

Additionally, the SJT process allows for the effective use of the magistrate, who may preside over the SJT upon assignment. This provides direct relief from scheduling problems, which have arisen due to the current influx of litigation upon the courts.

In sum, the Summary Jury Trial serves to enhance the dispositional power of a judge. It is a noncoercive, "no-lose" alternative, which provides needed enlightenment that assists the parties in resolving their disputes without full trial. The process promotes savings and efficiency throughout our judicial system. It is the ideal no-risk approach to precisely those items of concern that presently confront the members of the Committee, the courts, the bar, and our society as a whole as they endeavor to deal with the judicial system. It is my hope that our explorations in this rapidly developing field of alternative methods will serve to enhance the quality of the administration of justice. [FNa1]

Respectfully submitted,

Thomas D. Lambros

United States District Judge

Northern District of Ohio

Cleveland, Ohio

January, 1984

**\*478 ALTERNATIVE METHODS OF DISPUTE RESOLUTION SELECTED REFERENCES**

1. Brink, David. "Improving Our Justice System Through Alternatives," 68 Am. Bar Assn. Journal 384 (April 1982).

2. Cooke, Hon. Lawrence H. "The Highways and Byways of Dispute Resolution," Kentucky Bench and Bar, October 1981 (reprinted with the permission of St. John's Law Review, Volume 55, Book 4).

3. Coulson, Robert. *Business Arbitration-What You Need To Know*, Second Edition (1982); American Arbitration Association, 140 West 51st Street, New York, New York 10020.

4. Coulson, Robert. "Construction Arbitration Around the World," *New York Law Journal*, August 19, 1982.

5. Coulson, Robert. "Rent-A-Judge: Private Settlement for the Public Good," Vol. 66, No. 1 Judicature 7 (June-July 1982).

6. Goldberg, Stephen B. and Brett, Jeanne M. "An Experiment in the Mediation of Grievances" (October 1982) Northwestern University School of Law, 357 E. Chicago Ave., Chicago, Illinois 60611 and Graduate School of Management, Evanston, Illinois 60201.

7. Green, Eric D., Ed. *The CPR Legal Program Mini-Trial Handbook* (1982); Matthew Bender, New York, New York.

8. Hoellering, M.F. "The Mini-Trial," Vol. 37, No. 4 Arbitration Journal 48 (December 1982).

9. Jackson, Neal A., Assoc. Ed. "Alternative Dispute Resolution: Non-Binding Summary Jury Trials," Vol. 6, No. 3 Litigation News 5 (April 1981).

10. Jacoubovitch, M. Daniel and Moore, Carl M. *Summary Jury Trials in the Northern District of Ohio*, Federal Judicial Center (May 1982).

11. Lambros, Judge Thomas D. *Handbook and Rules of the Court for Summary Jury Trial Proceedings*, Third Edition (1983).

12. Lambros, Judge Thomas D. and Shunk, Thomas H. "The Summary Jury Trial," Vol. 29, No. 1 Cleveland State Law Review 43 (1980).

13. Lind, E. Allan and Shapard, John E. *Evaluation of Court-Annexed Arbitration in Three Federal District Courts*, Federal Judicial Center (March 1981).

14. Parker, D.M. and Radoff, P.L. "The Mini-Hearing: An Alternative to Protracted Litigation of Factually Complex Disputes," Vol. 38, No. 1 Business Lawyer 35 (November 1982).

15. Ryan, J.P.; Lipetz, M.J.; Luskin, M.L.; and Neubauer, D.W. "Analyzing Court Delay-Reduction Programs: Why Do Some Succeed?" Vol. 65, No. 2 Judicature 58 (August 1981).

16. Slonim, Scott. "One Judge's Invention: Summary Jury Trials," January 1981 Am. Bar Assn. Journal 24.

**\*479** 17. "Chief Justice Burger Calls on Bar to Pursue Alternatives to Litigation," Vol. 14, No. 2 The Third Branch 1 (February 1982).

18. *Corporate Dispute Resolution Institution: Alternative Means for Cost-Effective Settlement of Litigation* (November 1982); Northwestern University School of Law, 357 E. Chicago Avenue, Chicago, Illinois 60611.

19. *Dispute Management-A Manual of Innovative Corporate Strategies for the Avoidance and Resolution of Legal Disputes* (1980); The Center for Public Resources, Inc., 680 Fifth Avenue, New York, New York 10019.

20. "Inside: The Judiciary," *The Washington Post*, October 14, 1983.

21. "Judges Experiment with Witnessless Trials to Cut Into Case Backlog," *The Grand Rapids Press*, January 27, 1983, Page 4C.

22. "Jury Trials That Can Save Time and Money," *Business Week*, July 20, 1981.

23. "Make-believe jury trials," California Lawyer, January, 1984, Pages 21-23.

24. "Mock-Trial System Cuts Caseload in Federal Court; Idea Spreads," *The Knoxville News Sentinel*, February 22, 1981, Page B-9.

25. "Nonbinding Minitrials," *The Wall Street Journal*, June 24, 1983, Page 1.

26. "Summary Jury Trials," Text of speech delivered by Joan M. Hall, Chairman of the American Bar Association Section of Litigation and Partner, Jenner & Block, Chicago, Illinois, to the Spring Conference of Florida Circuit Court Judges at Orlando, Florida on March 22, 1983.

27. "Summary Jury Trial Innovation," Vol. 12, No. 11 The Third Branch 1 (November 1980).

28. "Summary Trials tested here as way to save time and money," *The Cleveland Plain Dealer*, April 6, 1980, page 30A.

[FNa1]. The Judicial Conference of the United States responded to this Report at its 1984 annual meeting by adopting the following resolution:
> Resolved, that the Judical Conference endorses the experimental use of summary jury trials as a potential effective means of promoting the fair and equitable settlement lengthy civil jury cases.

*Report of the Proceedings of the Judicial Conference of the United States*, 88 (1984). *See also Burger, Year-End Report on the Judiciary*, 15-16 (1984) (discussing summary jury trials).**\*480 APPENDIX A**

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO EASTERN DIVISION

IN THE MATTER OF AMENDMENT TO LOCAL CIVIL RULE 17

GENERAL ORDER

No. 62

Local Civil Rule 17 is hereby amended to read as follows:

<u>CHAPTER SEVENTEEN PRETRIAL PROCEDURE</u>

Rule 17.01 Pretrial Conferences
...
Rule 17.02 Alternative Methods of Dispute Resolution
The Judge may, in his or her discretion, set any appropriate civil case for Summary Jury Trial or other alternative method of dispute resolution, as he or she may choose.
*****
Amended as filed

**FILED**

**1983 JAN. 12 AM 8:42**

**CLERK U.S. DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

## *481 APPENDIX B

**HANDBOOK AND RULES OF THE COURT FOR SUMMARY JURY TRIAL PROCEEDINGS**

**BY THOMAS D. LAMBROS UNITED STATES DISTRICT JUDGE**

**\*482 HANDBOOK AND RULES OF THE COURT FOR SUMMARY JURY TRIAL PROCEEDINGS**

## I. <u>INTRODUCTION</u>

The third important element of pretrial hearings is arriving at settlements. This possibility should be explored in every instance. While the pretrial judge may not, and should not, exert pressure to induce litigants to settle their cases, he can properly perform the function of a mediator or conciliator, and thereby in many instances assist in leading the parties to an agreement. [Report of the Committee on Pretrial Procedure to the Judicial Conference for the District of Columbia. 4 F.R.Serv., L.R. 47, p. 1015.]

There is a certain class of cases in which the only bar to settlement among parties is the difference in opinion of how a jury will perceive evidence adduced at trial. These cases involve issues, like that of "the reasonable man" in negligence litigation, where no amount of jurisprudential refinement and clarification of the applicable law can aid in resolution of the case. In these cases, settlement negotiations must often involve an analysis of similar jury trials within the experience of counsel and the trial judge as to the findings of liability and damage. In this way, parties grope toward some notion of a likely award figure upon which to base and begin their negotiations.
More often than not, however, this comparison of past trial experience is in vain, and even an agreement on the facts and summary judgment on the issue of liability results only in a slightly shorter trial on the issue of damages. For many years I felt frustration over the need for trial in such cases where both sides wished to avoid litigation, were willing to consider reasonable settlement, and would negotiate in good faith if only some sense of the lay perception of the case could be attained. I suspected in this regard, counsels' legal training was a disadvantage because knowledge of the law precluded an ability to see a case as would a jury.
In this type of case, I afford counsel the opportunity to sound a lay jury on its perception of liability and damage without affecting the parties' rights to a full trial on the merits and without a large investment of time or money. The Summary Jury Trial provides a "no-risk" method by which counsel obtain the perception of six jurors on the merits of their case in the course of a half-day proceeding, thereby giving parties a reliable basis upon which to build a just and acceptable

settlement.

This proceeding does not affect the parties' rights to a full trial *de novo* on the merits. If one or both parties feel the result of the jurors' deliberations is grossly inequitable, the right to proceed to a full trial is in no way prejudiced. Numerous attorneys have readily recognized the **483** value of the proceeding as a predictive tool and have utilized it to obtain just results for their clients at minimum expense.

## II. BRIEF DESCRIPTION OF THE PROCEEDING

Stated most simply, a Summary Jury Trial consists of counsels' presentations of their views of the case to a jury and the jury's subsequent decision based on the presentations. It is an amalgam of opening and closing arguments with an overview of the expected trial proofs. No testimony is taken from sworn witnesses. Counsel may restate the anticipated testimony of trial witnesses and are free to adduce exhibits for the jury. Because of the nonbinding nature of the proceedings, evidentiary and procedural rules are few and flexible. Tactical maneuvering is kept to a minimum.

The Summary Jury Trial proceeding itself is normally concluded in a half day, and will rarely last longer than a full day. The proceeding is presided over by either the judge or a magistrate upon assignment by the judge.

In order for any real benefit to be derived from the procedure, it is essential that counsel have their case in a state of trial readiness when called for Summary Jury Trial. Therefore, a pretrial conference is normally held shortly beforehand, particularly in those cases assigned to a magistrate. In all cases, unless excused by order of court, counsel are expected to submit requests for jury instructions and a memorandum of law on any novel issues presented by the case no later than three working days before the trial date.

At the Summary Jury Trial attendance by the client or a client representative is expected. If appearance will work a hardship, leave must be sought by way of motion to excuse such attendance.

A jury venire of a sufficient number to provide a jury of six is called. Counsel are provided with a short profile of each juror that states

1. juror's name and occupation.

2. juror's marital status.

3. juror's spouse's name and occupation.

4. names and ages of juror's children.

5. previous knowledge of the juror of any parties, counsel or the nature of the case.

6. any prejudicial attitudes of the juror to the nature of the action.

The judge or magistrate interrogates the full panel. Counsel are permitted to exercise challenges-in a two-party action two apiece, with adjustment in case of multiple plaintiffs or defendants. The first six jurors seated after the challenges constitutes the panel, alternates being unnecessary.

Counsel are usually given one hour each for their presentations, although adjustments that may extend the total beyond two hours are made in multiple-party cases. Plaintiffs are permitted to reserve a limited time for rebuttal, and it is expected that such time will be used for true rebuttal. If a plaintiff "sandbags" the defendant by holding **484** back on a critical element of the case, the defendant can be granted response time.

In making their statements to the jury, counsel are limited to representations as to evidence that would be admissible at trial. While counsel are permitted to mingle representations of fact with legal argument, considerations of responsibility and restraint must be observed. Counsel may only present factual representations supportable by reference to discovery materials, including depositions, stipulations, signed statements of witnesses, or other documents, or by a professional representation that counsel personally spoke with the witness and is repeating what the witness stated. Statements,

reports, and depositions may be read from, but not at undue length.

Physical evidence, including documents, may be exhibited during a presentation and submitted for the jury's consideration during deliberations. Such exhibits are not marked, and at the end of the hearing are returned to the party tendering them.

By virtue of the nature of Summary Jury Trial, objections are not encouraged. However, in the event counsel overstep the bounds of propriety as to a material aspect of the case, an objection will be received and, if well-taken, the jury admonished.

At the conclusion of the presentations the jury is given an abbreviated charge, and retires for its deliberations. The jury is encouraged to return a unanimous verdict, and given ample time to reach such an agreement. If, however, the jurors are unable to reach a consensus, they are asked to return a special verdict, anonymously listing individual perceptions of liability and damages. The special verdict has proved invaluable in affording counsel insights as to lay perceptions of the case and in suggesting an equitable basis for settlement.

A Summary Jury Trial is generally not recorded. Counsel may arrange for the attendance of a court reporter if they wish.

If the action is not resolved by counsel at or immediately following the proceeding, a pretrial is held shortly thereafter to discuss settlement. It is anticipated that cases not disposed of through Summary Jury Trial will be called for trial on the merits within 30 to 60 days of the summary hearing.

This outline of procedures is reflected in an order transmitted herewith, which controls this action for purposes of all Summary Jury Trial proceedings.

### III. BASIS OF THE PROCEDURE

Remembering that the Federal Rules of Civil Procedure are to be construed "to secure the just, speedy, and inexpensive determination of every action," Fed.R.Civ.P. 1, this procedure is within a district court's pretrial powers under Rule 16(6) and inherent power to control its docket. Furthermore, the proposed amendments to Rule 16 focus on the widespread feeling that modification of the existing rule is necessary to encourage pretrial management that meets the needs of modern litigation. Proposed Rule 16(c)(7) provides that "the participants at any *485 pretrial conference under this rule may consider and take action with respect to ... (7) the possibility of settlement or the use of extrajudicial procedures to resolve the dispute." The Advisory Committee Notes, which elaborate on this concept, state in pertinent part:

Since it obviously eases crowded court dockets and results in savings to the litigants and the judicial system, settlement should be facilitated at as early a stage of the litigation as possible. Although it is not the purpose of Rule 16[c](7) to impose settlement negotiations on unwilling litigants, it is believed that providing a neutral forum for discussing the subject might foster it See Moore's *Federal Practice* ¶ 16.17; 6 Wright & Miller, *Federal Practice and Procedure: Civil* ¶ 1522 (1969). For instance, a judge to whom a case has been assigned may arrange, on his own motion or at a party's request, to have settlement conferences handled by another member of the court or by a magistrate.

The concept of the Summary Jury Trial is also analogous to Rule 39(c)-the advisory jury. Admittedly, that Rule provides for an advisory jury only in cases not triable as of right by jury. The clear purpose behind the Rule, however, is to give the court and the parties the opportunity to utilize a jury's particular expertise and perceptions when a case demands those special abilities. In the summary trial, the court is similarly calling upon jurors to provide their peculiar expertise in a situation where that expertise is vital but not provided for by present civil procedure practice.

In this District, specific provision has been made for the Summary Jury Trial in Local Civil Rule 17.02, adopted January 12, 1983. That rule provides:

The Judge may, in his or her discretion, set any appropriate civil cases for Summary Jury Trial or other alternative method of dispute resolution, as he or she may choose.

Such a rule is consistent with Rule 83, Fed.R.Civ.P., which provides in pertinent part, "In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules."

As now embodied in Rule 16 of the Federal Rules of Civil Procedure, the pretrial device remains an open-ended tool for processing cases that gives the Court wide discretion. As the Seventh Circuit explained

in *O'Malley v. Chrysler Corp.*, 160 F.2d 35, at 36:
    The Federal Rules of Civil Procedure, Rules 34-36, 28 U.S.C.A. following section 723c, provide not only for discovery but for pretrial conference. (Rule 16.) Under these rules we think the Court has the wide discretion and power to advance the cause and simplify the procedure before the cause is presented to the jury. The District Court had the power to issue such orders as in the exercise of its sound discretion would advance and simplify the cause before trial.... [T]he order made in the instant case was such an order. It was only a step in the orderly procedure of the case. The District Court was *486 exercising its pretrial powers. It would, in our opinion, have had the *power* to make the order it made irrespective of the Federal Rules of Civil Procedure.

    *O'Malley* has been repeatedly confirmed by later courts, *see, e.g., Tracor, Inc. v. Premco Instruments, Inc.*, 395 F.2d 849 (5th Cir.1968); *Buffington v. Wood*, 351 F.2d 292 (3rd Cir.1965), and the only real limitation placed on a court's power under Rule 16 appears to be when the court's action would adversely prejudice a party's position or would compel counsel to adopt one line of trial strategy over another. *See, Identiseal Corporation of Wisconsin v. Positive Identification Systems, Inc.*, 560 F.2d 298 (7th Cir.1977). Neither of these two latter considerations is present in the Summary Jury Trial procedure.

    Use of the Summary Jury Trial Procedure is vitally important in certain cases because it provides one bit of information vital to a proper "sifting of issues and evidence wln []..... with the view of simplifying, shortening and possibly avoiding a trial," 3 *Moore's Federal Practice* ¶ 16.02,-a lay perception of the value of the claimed damages. Time and again, amicable settlement discussions have been frustrated merely because counsel and the judge had no way of determining a proper figure upon which to build discussions. Often in such a case, a plaintiff will recover in settlement agreement an amount based on the ability of his counsel at forceful and cunning horse-trading; more often, parties are forced to expend thousands of dollars toward a lengthy trial that might have been avoided by a simple three-hour Summary Jury Trial procedure. I have found that the Summary Jury Trial has aided in achieving more just settlements and in easing the docket load of the federal courts.

## IV. CONCLUSION
    As with every innovative procedure, the Summary Jury Trial's success and acceptance or failure and rejection depend largely upon the cooperation of the Bar. If counsel use this new tool to expedite cases and aid in settlement, it can be an important step in the jurisprudential evolution of the courts. If the procedure is manipulated by unscrupulous counsel to delay justice and frustrate the court, it will not achieve its purpose. I ask your help in implementing and refining this procedure.
    Thomas D. Lambros

    United States District Judge

    DATED: March, 1983

**\*487** UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO EASTERN DIVISION

    IN RE:

    RULES OF PROCEDURE FOR SUMMARY JURY TRIAL PRETRIAL PROCEDURE

    (As Amended January 1983)

## ORDER
        LAMBROS, DISTRICT JUDGE
    1. This order is entered pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Civil Rule 17.02.
    2. This action is designated as one for summary jury trial proceedings to be conducted by the Court or a Magistrate of this District upon assignment from the Court. If assigned to a Magistrate, the Magistrate is authorized to exercise the same authority which the Court may exercise.

3. The action shall be in trial readiness when called for summary jury trial, with an expectation of trial on the merits within 30-60 days thereafter if not otherwise disposed of.

4. This action shall be heard before a six-member jury. Counsel will be permitted two challenges apiece to the venire, and will be assisted in the exercise of such challenges by a brief voir dire examination to be conducted by the presiding judicial officer and by juror profile forms. There will be no alternate jurors.

5. Unless excused by order of court, no later than three working days before the date set for hearing counsel shall submit proposed jury instructions and briefs on any novel issues of law presented.

6. Unless excused by order of court, clients or client representatives shall be in attendance at the summary jury trial.

7. All evidence shall be presented through the attorneys for the parties. The attorneys may summarize and comment on the evidence and may summarize or quote directly from depositions, interrogatories, requests for admissions, documentary evidence and sworn statements of potential witnesses. However, no witness' testimony may be referred to unless the reference is based upon one of the products of the various discovery procedures, or upon a written, sworn statement of the witness, or upon sworn affidavit of counsel that the witness would be called at trial and will not sign an affidavit, and that counsel has been told the substance of the witness' proposed testimony by the witness.

**\*488** 8. Prior to trial counsel shall confer with regard to physical exhibits, including documents and reports, and reach such agreement as is possible as to the use of such exhibits.

9. Objections will be received if in the course of a presentation counsel goes beyond the limits of propriety in presenting statements as to evidence or argument thereon.

10. After counsels' presentations the jury will be given an abbreviated charge on the applicable law.

11. The jury may return either a consensus verdict or a special verdict consisting of an anonymous statement of each juror's findings on liability and/or damages (each known as the jury's advisory opinion). The jury will be encouraged to return a consensus verdict.

12. Unless specifically ordered by the Court, the proceedings will not be recorded. Counsel may, if so desired, arrange for a court reporter.

13. Counsel may stipulate that a consensus verdict by the jury will be deemed a final determination on the merits and that judgment be entered thereon by the Court, or may stipulate to any other use of the verdict that will aid in the resolution of the case.

14. These rules shall be construed to secure the just, speedy and inexpensive conclusion of the summary jury trial procedure.

IT IS SO ORDERED.

–

Thomas D. Lambros

United States District Judge

DATED: _

**\*489** UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO EASTERN DIVISION

IN THE MATTER OF AMENDMENT TO LOCAL CIVIL RULE 17

GENERAL ORDER
No. 62

Local Civil Rule 17 is hereby amended to read as follows:

CHAPTER SEVENTEEN PRETRIAL PROCEDURE

Rule 17.01 Pretrial Conferences
...
Rule 17.02 Alternative Methods of Dispute Resolution

The Judge may, in his or her discretion, set any appropriate civil case for Summary Jury Trial or other alternative method of dispute resolution, as he or she may choose.
*****
Amended as filed

**FILED**

**1983 JAN 12 AM 8:42**

**CLERK U.S. DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

### *490 APPENDIX C

JUROR PROFILE FORM

TO THE JUROR

You have been selected to take part in a "summary jury trial." Briefly, it is a summarized presentation of a case upon which you will be expected to decide the issues within one day.

To assist the Court in empaneling a summary jury, you are requested to answer the following questions. Your responses to these questions and such additional questions which may be asked of you by the Court will be helpful in the selection of an impartial summary jury.

QUESTIONS: (Please Print)
1. Name. _
2. Occupation and place of employment. (If retired, add your former occupation and place of employment.) _
3. Are you married or single? _
4. Your spouse's name? _
5. Spouse's occupation and place of employment. (If retired, add the former occupation and place of employment.) _
6. Your children's names and ages? _
This case involves:
    The parties in this case are:


    _ _

    Plaintiff(s) Defendant(s)

    The attorneys appearing today will be:


    _ _

    For Plaintiff(s) For Defendant(s)

7. Do you know any of the parties or their counsel? If so, specifically state who. _
*491 8. Are you in any way personally connected with the facts of this case or do you have personal knowledge of this case? If so, state how. _
9. Is there anything you can think of that would bias your opinion so that you would be unable to give a fair and just consideration to the merits of this case? If so, state what. _

_

Your signature

## *492 APPENDIX D

## JURORS' ADVISORY OPINION

Case No. _

WE, THE JURY, HAVE REACHED THE FOLLOWING CONSENSUS:
We, the Jury, find defendant

\_\_\_\_\_ not liable.

\_\_\_\_\_ liable, in the amount of _____.

_____ liable, but not able to reach a unanimous decision as to the amount.

We, the Jury, being unable to reach a unanimous decision, submit our anonymous, individual findings as follows:
1._____ not liable.
_____ liable, in the amount of _____.
2. _____ not liable.
_____ liable, in the amount of _____.
3. _____ not liable.
_____ liable, in the amount of _____.
4. _____ not liable.
_____ liable, in the amount of _____.
5. _____ not liable.
_____ liable, in the amount of _____.
6. _____ not liable.
_____ liable, in the amount of _____.

Foreperson

## JURORS' ADVISORY OPINION

WE, THE JURY, HAVE REACHED THE FOLLOWING CONSENSUS:
The issue of liability having already been determined in favor of plaintiff(s) against defendant (s), we, the Jury, find that defendant(s) is/are liable in the amount of $_____.
We, the Jury, being unable to arrive at a unanimous decision on the amount of liability, make the following anonymous, individual finding:
1. Defendant is liable in the amount of $_____.
*493 2. Defendant is liable in the amount of $_____.
3. Defendant is liable in the amount of $_____.
4. Defendant is liable in the amount of $_____.
5. Defendant is liable in the amount of $_____.
6. Defendant is liable in the amount of $_____.

Foreperson

## *494 JUROR'S ADVISORY OPINION

Case No. C 76-102 Y

Do you the jury find that plaintiff Elmer Morris' age made a difference in the defendant's decision to terminate him? _

If you have answered "Yes" to the above question, was the defendant's decision made in willful violation of the Age Discrimination in Employment Act ? _

If you have answered "Yes" to either of the above questions, what is the amount of compensation due plaintiff Elmer Morris? _

IF YOU HAVE BEEN UNABLE TO REACH A UNANIMOUS DECISION, PLEASE SUBMIT YOUR INDIVIDUAL FINDINGS BELOW:

Juror 1. Do you find that plaintiff Elmer Morris' age made a difference in the defendant's decision to terminate him? _

If you have answered "Yes" to the above question, was the defendant's decision made in willful violation of the Age Discrimination in Employment Act? _

If you answered "Yes" to either of the above questions, what is the amount of compensation due plaintiff Elmer Morris? _

Juror 2. Do you find that plaintiff Elmer Morris' age made a difference in the defendant's decision to terminate him? _

If you have answered "Yes" to the above question, was the defendant's decision made in willful violation of the Age Discrimination in Employment Act? _

If you answered "Yes" to either of the above questions, what is the amount of compensation due plaintiff Elmer Morris? _

Juror 3. Do you find that plaintiff Elmer Morris' age made a difference in the defendant's decision to terminate him? _

If you have answered "Yes" to the above question, was the defendant's decision made in willful violation of the Age Discrimination in Employment Act? _

If you answered "Yes" to either of the above questions, what is the amount of compensation due plaintiff Elmer Morris? _

Juror 4. Do you find that plaintiff Elmer Morris' age made a difference in the defendant's decision to terminate him? _

If you have answered "Yes" to the above question, was the defendant's decision made in willful violation of the Age Discrimination in Employment Act? _

If you answered "Yes" to either of the above questions, what is the amount of compensation due plaintiff Elmer Morris? _

Juror 5. Do you find that plaintiff Elmer Morris' age made a difference in the defendant's decision to terminate him? _

**495** If you have answered "Yes" to the above question, was the defendant's decision made in willful violation of the Age Discrimination in Employment Act? _

If you answered "Yes" to either of the above questions, what is the amount of compensation due plaintiff Elmer Morris? _

Juror 6. Do you find that plaintiff Elmer Morris' age made a difference in the defendant's decision to terminate him? _

If you have answered "Yes" to the above question, was the defendant's decision made in willful violation of the Age Discrimination in Employment Act? _

If you answered "Yes" to either of the above questions, what is the amount of compensation due plaintiff Elmer Morris? _

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

DAIFLON, INC., Plaintiff,

vs.

ALLIED CHEMICAL CORPORATION, et al., Defendants

CIV-72-483-W

## ADVISORY OPINION

Do you find the following defendants liable on the plaintiff's claim of conspiracy under Section 1 of the Sherman Act?

|  | YES | NO |
|---|---|---|
| Allied Chemical Corporation | ( ) | ( ) |
| E.I. Du Pont de Nemours & Company | ( ) | ( ) |
| Union Carbide Corporation | ( ) | ( ) |
| Pennwalt Corporation | ( ) | ( ) |
| Racon Incorporated | ( ) | ( ) |
| Kaiser Aluminum & Chemical Corporation | ( ) | ( ) |

Do you find the defendant, Du Pont, liable on the plaintiff's claims of actual monopolization and/or attempt to monopolize under Section 2 of the Sherman Act? YES ( ) NO ( )

In the event you find two or more defendants liable on the plaintiff's claim of conspiracy under Section 1 or in the event you find the defendant, Du Pont, liable on one or both of the plaintiff's claims under Section 2, damages are fixed in the amount of $ _____.

_

Date

Foreman/Forewoman

## *496 APPENDIX E

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA

STANDING ORDER NO. 6A

SUMMARY TRIAL

Summary Trial is a new pre-trial procedure to be used occasionally in cases assigned to the Court's docket. Although new to the American judicial process, this procedural undertaking has as its essential foundation Rule 1 of the Federal Rules, "to secure the just, speedy and inexpensive determination of every action."

IT IS ORDERED that, pursuant to Rule 16 of the Federal Rules of Civil Procedure and the inherent power of the Court to control the docket, the following rules are adopted for the orderly presentation of Summary Trials:

1. When there are only two parties to a proceeding, each party is granted one hour to present its case to the jurors. When there are more than two parties, the Court shall establish a scheme of time allotment such that total presentation by counsel shall not exceed 2 1/2 hours.

2. The parties as well as their counsel must be present during the summary trial. Because the major purpose of the summary trial is to encourage settlement of the lawsuit, it is essential that each party be represented at trial by an individual with full settlement authority and a thorough knowledge of the case. This individual, preferably the named party, must be present throughout the summary trial. This requirement can be waived only by order of the Court for good cause shown.

3. The attorney presentations shall be organized in the manner of a typical trial, except that no witness testimony will be allowed. First, plaintiff shall present an opening statement, followed immediately by defendant's opening statement. Next, plaintiff and defendant shall present their cases-in-chief by informing the jury in more detail than the opening statement who the witnesses are and what their testimony would be. Finally, plaintiff and then defendant will make closing arguments to the jury. Plaintiff may present a final rebuttal if his or her presentation time limit has not expired. The parties are free to divide their allotted time among the three trial segments as they see fit.

4. All evidence shall be presented through the attorneys for the parties. The attorneys may summarize and comment on the evidence and may summarize or quote directly from depositions, interrogatories, requests for admissions, documentary evidence and *497 sworn statements of potential witnesses; however, no witness' testimony may be referred to unless the reference is based upon one of the products of the various discovery procedures, or upon a written, sworn statement of the witness, or upon sworn affidavit of counsel that the witness would be called at trial and will not sign an affidavit, and that counsel has been told the substance of the witness' proposed testimony by the witness.

5. All evidence presented or described by counsel shall be admissible if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, except that counsel may not introduce evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay or waste of time.

6. Counsel may stipulate as to all facts in agreement prior to the proceeding and the stipulation will be read by the Court.

7. Each counsel may exercise a maximum of two challenges to the 10-member jury panel to arrive at a jury of six members. There will be no other exclusions of jurors. There will be no alternate jurors. Counsel will be assisted in the exercise of challenges by a brief voir dire examination to be conducted by the Court and the juror profile forms.

8. Jurors will be instructed to return either a consensus verdict, or a special verdict consisting of an anonymous statement of each juror's findings on the merits and award of damages. Jurors will be asked to return a consensus verdict if possible.

9. Counsel may request that the proceedings be recorded by a court reporter.

10. Counsel may stipulate among themselves that a consensus verdict by the jury will be a final determination on the merits of the case and judgment may be entered thereon by the Court, or may stipulate to any other use of the verdict that will aid in the resolution of the pending case.

11. Counsel for each party shall present to the Court a two-page summary of proposed instructions before the summary trial begins. This summary of the law should be in a form easily understood by the jury if and when the Court chooses to read the summary. Authorities may be indicated by footnote and written out on a third sheet of paper. Counsel are encouraged to agree on the law summary before the summary trial, in which case only one two-page summary need be provided to the Court. At the conclusion of the summary trial, the law of the case may be extemporaneously summarized by the Court or read from the summary provided by the attorneys.

12. After the Court has summarized the law applicable to the case, the jurors will be allowed to ask questions of either party or counsel.

**\*498** 13. The proceedings may not be continued or delayed other than for short recesses in the discretion of the Court.

14. These rules shall be construed to secure the just, speedy and inexpensive conclusion of the summary trial procedure.

15. Either or both parties may move the Court to order a summary trial; however, a summary trial will be held only on order of the Court.

Done and dated this _____ day of November, 1983.

—

James F. Battin

Chief Judge

—

Paul G. Hatfield

United States District Judge

**\*499 APPENDIX F**

UNITED STATES DISTRICT COURT

Western District of Oklahoma

Federal Courthouse

March 1, 1983

Chambers of LEE R. WEST

Judge

Oklahoma City 73102

Honorable Thomas D. Lambros

United States District Judge

106 U.S. Courthouse

Cleveland, Ohio 44114

Dear Tom:
I was sorry to learn you have been "ailing". Hope the trip to Florida corrects all problems.
I am enclosing copies of correspondence for your information.
I conducted a Summary Jury Trial in Comavi v. Rockwell, International on February 22nd.
Thereafter, the case settled on February 28th. So as of now, the procedure has worked perfectly.
I do not have any Summary Jury Trials scheduled at this time, but I anticipate frequent use of
the procedure. I will keep you advised on the results.
Sincerely,

LEE R. WEST

U.S. District Judge

LRW:jp

**\*500 APPENDIX G**

**DATE:** March 14, 1983

**REPLY TO ATTN OF:** Catherine M. Kennedy, Secretary to Judge Hillman

**SUBJECT:** Summary Trial

**TO:** Judge Lambros

Attached is a summary of the experience Judge Hillman had with use of the summary jury trial
procedure.

**OPTIONAL FORM NO. 10**

**(REV. 1-50)**

GSA FPMR (41 CFR) 101-11

5010-113

### *501 MEMORANDUM REGARDING SUMMARY JURY TRIAL

San Francisco Computer Group, Inc., plaintiff v. Wingspan Leasing Corp., and Prince Corp., defendants, G 80-579.

At the pretrial conference held in this case, the court and counsel for plaintiff and defendants agreed to utilize the summary jury trial procedure to promote a settlement. The following is a general description of the case and other information concerning the court's use of the summary jury trial procedure.

STATEMENT OF CASE:

Plaintiff, a California corporation in the business of buying, selling and leasing corporate jets, brought this action against defendant Prince Corporation and defendant Wingspan Leasing, a wholly-owned subsidiary of Prince. This lawsuit arose out of an alleged breach of a contract in which defendant Wingspan was claimed to have promised to sell to plaintiff a Cessna aircraft worth approximately two million dollars. Wingspan denied that a contract of sale ever came into existence.

In 1978, Wingspan Leasing entered into a purchase agreement with Cessna Aircraft Company. Under this agreement Wingspan acquired the right to receive a Cessna Citation II jet aircraft, delivery anticipated at the end of 1979 or by 1980. Because of the demand for these aircraft, the market value of the airplane was increasing even as it was being built, and thus, the right to receive the plane was a substantial economic asset.

Plaintiff alleged that on February 4, 1980 defendant offered to sell to plaintiff the Cessna Citation II for a total purchase of $2,230,000.00. This offer was purportedly made through defendants' alleged agent, Cox & Vogel, Inc., and accepted by plaintiff. Cox & Vogel is an aviation consulting firm, located in Grand Rapids, Michigan, which offers various services related to corporate aircraft. In early 1980, Cox learned that defendant Wingspan had a Cessna Citation II it might be interested in selling. Cox then contacted Bruce Wickman, Wingspan's chief pilot, and the two men subsequently met to discuss their mutual interests in the plane.

At this meeting, Wickman allegedly confirmed that Wingspan was interested in selling the plane and later that day, Cox called Wickman telling him that a buyer had been located who was willing to pay $2,200,000. Wickman, on behalf of defendant, expressed satisfaction with the price. The precise nature and extent of Cox & Vogel's authority, if any, to act as Wingspan's agent was a major issue in the case. It was clear, however, that Cox sent to plaintiff, at plaintiff's request, the following telegram:

"This telegram confirms Wingspan Leasing Incorporated's offer to sell and San Francisco Computer Group's offer to purchase *502 Cessna Citation 2 Serial Number 134 for a total price of two million two hundred thirty thousand dollars sale subject only to final documentation to be completed in Holland Michigan no later than five o'clock p.m. eastern standard time February 6, 1980. San Francisco computer group agrees to deliver a non-refundable $50,000 deposit in the form of a cashier's check to Wingspan Leasing at the time of final documentation. Balance of $2,180,000 payable upon delivery. Delivery to take place approximately February 24, 1980

Cox and Vogel inc agents for Wingspan leasing inc.
Kent County International Airport Grand Rapids MI 49503"

This telegram was requested by Michael Rubenstein, founder and President of the plaintiff corporation, who wanted "absolute confirmation" that a contract had been made. Upon receiving the telegram, Rubenstein flew to Holland, Michigan, defendants' corporate headquarters, with a $50,000 deposit that Wingspan had requested. Additionally, Rubenstein intended to complete the execution of formal documentation of the alleged contract of sale, which documents he had signed and sent to Wingspan by Federal Express the day before he went to Holland.

When he arrived in Holland he was unable to meet with the President of the defendant corporation, Edgar Prince, until late in the day. When the two men met, Prince informed Rubenstein

that "we were not going to close any airplane deal" that day. The next day, Prince informed
Rubenstein that defendant would not sell the airplane to plaintiff.

Plaintiff brought this lawsuit claiming breach of a contract which arose from the terms contained
in the telegram sent by Cox & Vogel in Grand Rapids to plaintiff in San Francisco. Wingspan denied
that Cox & Vogel had authority to act as its agent or that a contract had arisen from the terms
contained in the telegram.

A summary jury trial was held on January 26, 1983 and resulted in a verdict of "no cause of
action" against the plaintiff and in favor of defendants. Several days later, the parties settled the case.

## SETTLEMENT NEGOTIATIONS:

Plaintiff's complaint sought damages in the amount of $180,000, or the difference between the
alleged contract price and what plaintiff claimed to be the market price. Defendants denied that
plaintiff was entitled to any damages. Defendants contended, however, that if the jury found that
Wingspan *had* breached a contract, plaintiff could recover only $20,000, or the difference between
the contract price and the amount for which the airplane was actually sold by defendants at a later
date.

At the pretrial conference held approximately two months prior to trial, plaintiff stated that it
would accept $60,000 in complete settlement of its claim. Defendants replied that this figure was out
of the question and made no counter-offer. No further settlement demands or offers were made until
after the summary jury trial.

*503 Immediately following the summary jury trial, plaintiff reduced its demand to $5,000.
After further negotiations, plaintiff actually accepted $3,000 in complete settlement of the case.

## DESCRIPTION OF PROCEEDINGS:

Prior to jury selection, the judge told the jury panel that the jurors actually selected would be
involved in an "experiment" which was intended to promote a more rapid disposition of the cases
pending on the court's docket. Prior to reaching their verdict, however, the permanent jurors were
never told that their decision would not be binding on the parties in the case.

A six person jury was chosen from a thirteen person jury panel using standard jury selection
procedures, (e.g., court conducted voire dire and allowed counsel to question jurors; two peremptory
challenges were actually exercised; permanent jury, however, was not sworn).

The trial lasted three hours. (It was estimated by counsel to be a 5-7 day jury trial). Brief
opening statements were made and plaintiff's counsel proceeded to "describe" what plaintiff would
attempt to prove at trial, occasionally reading from depositions, and at other times detailing the
evidence to be offered or the content of various witnesses' testimony.

Counsel for defendants used a different approach. Two lawyers from the firm representing
defendants participated in the trial. One lawyer actually took the witness stand and played the role of
each witness who would testify at trial. The other lawyer gave the opening and closing statements
and described the evidence which defendants would offer at trial. Instead of describing the testimony
of witnesses, he directed questions to the lawyer who had taken the witness stand, who then
responded as though he were actually testifying. This method seemed to hold the jury's attention
longer than did the plaintiff's approach, which consisted of merely reading portions of deposition
testimony himself and then explaining its significance.

Following the "proofs," some relatively short (20 mins.) instructions were read to the jury,
outlining their duty as jurors, and describing the basic legal theories of contract, agency and
damages. The jury deliberated for one hour before reaching a verdict in favor of the defendant. (See
attached form).

Judge Richard Enslen presided along with Judge Hillman over the summary jury trial. The two
judges as well as three law clerks, the court reporter and the lawyers for the parties voted by secret
ballot on the question of liability while the jury was deliberating. With the exception of plaintiff's
counsel, the vote was unanimously in favor of the defendants.

## GENERAL COMMENTS:

From the filing of the complaint, plaintiff and its counsel were extremely confident in the
strength of the plaintiff's case. Defendants did not share this view and, accordingly, made no
substantial settlement offers.

**\*504** In view of the jury's unanimous verdict against the plaintiff and the outcome of the "secret ballot," it can probably be concluded that plaintiff was being somewhat unrealistic in its evaluation of the strength of its case. The summary jury trial served to make the plaintiff "see the light," as became evident later when plaintiff accepted $3,000 in settlement.

Douglas W. Hillman

U.S. District Judge

3/12/83

**\*505 DATE:** April 7, 1983

**REPLY TO ATTN OF:** Wendell A. Miles, Chief Judge

**SUBJECT:** Summary Jury Trial in Austin v. Refrigerated Transport Co., et al., No. G81-834 CA1

**TO:** All Judges

<u>Introduction</u>

Three weeks before trial of this case the defense attorney called to request a summary jury trial. The court had counsel arrange a conference call the next day during which the merits of such a procedure were discussed. Plaintiff's counsel was reluctant; however, he persuaded his client that it would be a worthwhile procedure. Our best guess is that the plaintiff was asking $600,000 and the defendants were offering $150,000. The plaintiff, however, indicated more flexibility in his position than the defendants.

The facts are as follows. In February 1980, at approximately 1:30 p.m., the defendant truck driver was proceeding north on U.S. 31 in Oceana County. Plaintiff was driving a 1980 automobile south on U.S. 31. The defendant's truck jack-knifed and crossed the center line of the highway causing the plaintiff to run into the truck. The clear evidence was that the plaintiff had no opportunity to avoid the collision. Defense counsel attempted to establish some negligence on the part of the plaintiff, that he had taken his eyes off the road and crossed the center line. All credible evidence indicated that the truck driver was completely at fault. He was following a car too closely which caused him to brake suddenly and jack knife.

<u>Discussion</u>

<u>Before Trial.</u> The court met with counsel in chambers to discuss briefly the procedure. In particular, a motion in limine required a ruling. The plaintiff had moved to exclude all evidence relating to his relationship with the woman whom he was with at the time of the accident. He was married, and she was not his wife. They had been having an affair for two months. The defense argued that the evidence went to the issue of damages. The plaintiff was claiming emotional and mental injuries which could be related to guilt associated with his affair, not the accident. The court was not persuaded that the defense could actually tie up the evidence with the damages testimony. Nevertheless, the defense was allowed to mention the fact of an affair, and the court cautioned counsel not to push it too hard. In so ruling, it was implied that if the defendants' evidence came in differently than they claimed, they could expect a different ruling at trial. At the conclusion of trial, **\* 506** the court was not convinced that the defendants met their burden on this issue.

OPTIONAL FORM NO. 10

(REV. 1-80)

GSA FPMR (41 CFR) 101-11.5

5010-114

Voir Dire. The panel of fourteen was seated in the jury box, and counsel were given criminal seating charts to identify panel members. After the court's brief remarks and general voir dire questions, counsel conducted their own voir dire. Two jurors were excused for cause, and no peremptory challenges were exercised. Selection took 30 minutes. On the jury were five white men and one black woman. There were three high school graduates, two with some college, and one college graduate. The youngest was 34 and the oldest was 70. Their average age was 54.

Opening Statements. The plaintiff's counsel was brief in his remarks and used a chalkboard to diagram the scene of the accident. Defense counsel, however, extended his remarks well beyond the allotted time and argued extensively. The total time was 50 minutes.

Plaintiff's Case. In a narrative form, counsel presented his case. He quoted from depositions and had summaries of other testimony from which he read. He covered a lot of ground in his presentation and took the full hour and fifteen minutes.

Defendants' Case. The defendants presented their case in a different manner. One attorney took the witness stand and played the role of various witnesses through examination by the other attorney. They took 55 minutes of their hour and fifteen minutes. It appeared as though they did not cover as much material as the plaintiff's attorney. After the trial, all jurors commented that the defendants' approach was more enjoyable and understandable.

Closing Arguments. Each side was given 20 minutes and, in light of the problems with opening statements, the time limits were strictly enforced. The clerk passed a note to counsel with five minutes remaining.

Instructions. An abbreviated charge was prepared from standard jury instructions. Counsel had made no requests; however, the court had copies to give them when they arrived the morning of trial. No objections were made before the court gave the instructions. After they were given the defense objected to a general one concerning no-fault insurance. The primary complaint was that it was not detailed enough. Counsel was correct; as a statement of law the instruction was too general. Its intent, however, was merely to introduce the jury to the no-fault concept. Both counsel had argued the details of the statute in their cases without disagreement. The need for an exhaustive instruction seemed superfluous. This problem illustrates the danger of not requiring submissions from counsel, despite their assurances that they have no special requests, and the danger of stressing brevity. After *507 consulting with the jury, it was clear that the instruction did not influence their decision. The instructions took 25 minutes to read which included a lengthy explanation of the general and special verdict forms. The special one was for comparative negligence.

Deliberations. The jury deliberated for almost two and a half hours. Their only request was for three photographs and a diagram.

Verdict. The jury returned a verdict of $300,000 finding the plaintiff 25% at fault. (The Judge had guessed $300,000). After the verdict was returned, the court invited the jurors to stay for ten minutes to discuss the case with counsel. The Judge left the bench while counsel remained in the courtroom to pose questions to the jurors.

The jury explained that they broke the award down into $225,000 for lost wages and $75,000 for pain and suffering. They agreed that had there been more evidence of the plaintiff's efforts to find a job, the $225,000 would have been higher. As stated above, they believed the defense method of presenting the case to be preferable. The jury also expressed concern over having so little evidence on which to base a decision. As to the issue of comparative negligence, it appeared as though they gave the plaintiff's and defendants' evidence of what happened equal weight and found it plausible that the plaintiff could have taken his eyes off the road. At trial, it is doubtful that comparative negligence would have been an issue. With live witnesses and more time to argue the point, plaintiff's counsel could have eliminated the issue.

Settlement. Defense counsel had arranged to have the insurance carrier's representative at trial; therefore, counsel immediately discussed settlement. After an hour of negotiating, the case was settled for $250,000.

Time.                                    Below is a schedule of the day:

| | |
|---|---|
| 10:00-10:30 | Voir Dire |
| 10:30-11:20 | Opening Statements |
| 11:20-11:30 | Break |
| 11:30-12:50 | Plaintiff's Case |
| 12:50-2:10 | Lunch |
| 2:10-3:05 | Defendants' Case |
| 3:05-3:15 | Break |
| 3:15-3:30 | Plaintiff's Closing |
| 3:30-3:45 | Defendants' Closing |
| 3:45-3:50 | Plaintiff's Rebuttal |
| 3:50-4:10 | Jury Instructions |
| 4:10-6:15 | Deliberations |
| 7:30 | Settlement |

**\*508 APPENDIX H**

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF MICHIGAN**

**600 CHURCH STREET**

**FLINT, MICHIGAN 48502**

**CHAMBERS OF STEWART A. NEWBLATT**

**DISTRICT JUDGE**

May 27, 1983

Honorable Richard A. Enslen

Honorable Thomas A. Lambros

Honorable John Feikens, Chief Judge

Gentlemen:

RE: Summary Jury Trials

     Because of Dick and Tom's fine presentation in Cincinnati on the summary jury trial procedure, I've tried it twice this week; once in a sex discrimination case by a physician against a hospital, doctors and two board members (in which a verdict was rendered of $650,000 in compensatory and $200,000 in punitive damages), and secondly in a products liability case where plaintiff lost one foot and lower part of his leg and part of the other foot in a corn picker (a verdict for defendant was rendered).

     Whether these will help settlement is yet to be seen. Together the trial time with juries was estimated for both at 16 to 20 weeks.

     One point not stressed in your presentation was how much trial time would be shortened by the preparation for the summary jury trial and the information imparted during the same.

     Aside from reporting to you this experience, I want to suggest that some place common-(such as at Dick's home station)-we keep a file of summary jury instructions for use by others. I find that trying to boil the instruction down to the gut issue gives me a short, direct and clear instruction that may be better for real jury trials than the ones we traditionally give. At any rate, here are copies of the instructions in both cases and the verdict forms.

Kindest personal regards,

Stewart A. Newblatt

cjl

Attachments

**\*509 UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF MICHIGAN**

**600 CHURCH STREET**

**FLINT, MICHIGAN 48502**

**CHAMBERS OF STEWART A. NEWBLATT**

**DISTRICT JUDGE**

July 5, 1983

Honorable Richard A. Enslen

Honorable Thomas A. Lambros

Honorable John Feikens, Chief Judge

Gentlemen:

RE: Summary Jury Trials

    This is to update my earlier report to you concerning the Summary Jury Trial. I remind you that the first case was a sexual discrimination claim by a plaintiff female physician against a public hospital, nine male physicians, the hospital administrator and two members of the County Board of Commissioners (the hospital was a County hospital). The pretrial proceeding was marked with bitterness and rancor between and among the attorneys. Defendants engaged in obstruction of discovery to such an extent that they were advised that the next such obstruction would result in the entry of a default judgment against them on liability.

    Defendants even sought an interlocutory appeal on a discovery matter.

    I point this out to demonstrate that all parties were adamant against the possibility of settlement. In addition, the plaintiff doctor was emotionally involved as were the defendant doctors.

    In a trial, we would be dealing with approximately twelve or fifteen cases of improper conduct of male physicians to compare with the cases which were asserted as a basis for plaintiff's termination. In effect the claim was that of disparate treatment of plaintiff from that accorded to male doctors. It would be like trying fifteen malpractice cases in addition to the usual issues.

Honorable Richard A. Enslen

Honorable Thomas A. Lambros

Honorable John Feikens, Chief Judge

July, 1983

Page -2-

    *510 The summary jury awarded $650,000 in compensatory damages and $200,000 in punitive damages.

    Immediately following the summary jury verdict, defendants' counsel disparaged the significance of the verdict and remained as intransigent as before.

    The upshot of this is to report that I am now advised the parties have settled.

    IT WORKED!

    Since my last report to you which reported on the verdict above and a "no cause" verdict in a loss of limb in a corn picker, I have tried a civil rights action ( § 1983 and negligence) wherein an intoxicated person died in the Flint City Jail for lack of medical attention. It was estimated the trial would take six to eight weeks. The verdict was $600,000 (plus $5,000 in punitive damages against one of eight defendants). Both counsel praised the process, and I shall wait to see whether they settle.

Kindest personal regards,

Stewart A. Newblatt

cjl

**\*511 APPENDIX I**

**Judge's Chambers**

**United States District Court For the Southern District of Ohio**

**838 Post Office Building**

**Cincinnati, Ohio 45202**

**S. Arthur Spiegel**

**Judge**

January 17, 1984

Dear Tom:

Thank you for sending me the order establishing a Case Management Plan and Case Evaluation and Apportionment Process on the asbestos litigation you are handling in the Northern District. We have reviewed it carefully, and it is obvious that a tremendous amount of effort went into its preparation.

I have approximately a dozen asbestos cases. I am not sure how many at any one point in time. We have worked out a pretrial order since the defense counsel in them seem to be the same individuals in each case, coming from Dayton and Columbus, as well as Cincinnati. I think they are cooperating with the plaintiffs' counsel to move the cases along.

I am enclosing a sample of one of our pretrial orders which, when you examine it, tracks your timetable in your Case Management Plan.

We plan to use every innovative device we can think of to keep the cases moving. In two of the cases I have already used a summary jury trial, and it looks like that process has been effective, at least in one case and possibly two. The threat of a summary jury trial in a third case resulted in settlement. I schedule these summary jury trials after the final pretrial conference, and before the regular trial date, so that the parties are aware that if the summary process does not work, they will be moving right into trial without much delay. Our method of conducting a summary jury trial is probably a bit different from yours, and if you would like, I would be glad to review it with you. Each one presents different problems, and we learn as we go.

-2-

If you have some additional copies of the Case Management Plan, I would appreciate receiving three or four so I can distribute them to the liaison counsel for defendants' and plaintiffs' counsel in the litigation cases here in Cincinnati.

*512 Best wishes for a happy, healthy, and prosperous year.

Sincerely,

S. Arthur Spiegel

The Honorable Thomas D. Lambros

United States District Judge

106 U.S. Courthouse

Cleveland, Ohio 44114

**\*513 UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO WESTERN DIVISION**

MARY ANN BURKE, et al., Plaintiffs,

vs.

JOHNS-MANVILLE SALES CORP., et al., Defendants.

NO: C-1-81-289

<u>ORDER</u>

1) This Order is entered pursuant to <u>Rule 16 of the Federal Rules of Civil Procedure</u> and Local Rule 5.

2) This action is designated as one for summary judgment trial proceedings to be conducted by the Court on November 7, 1983.

3) The action shall be in trial readiness when called for summary jury trial, with an expectation of trial on the merits beginning January 23, 1984, if not otherwise disposed of. The case is set on an on-deck basis.

4) A final pretrial conference is set for October 20, 1983, at 1:00 P.M. The parties shall submit their final pretrial order to the Court at least three days prior to the conference.

5) Defendants have suggested that a detailed jury questionnaire be sent to prospective jurors and the results made available to counsel prior to the summary jury trial. If the parties agree to the use of such a questionnaire, they shall submit to the Court for its review and approval at the final pretrial conference on October 20, 1983 an agreed-upon proposed jury questionnaire.

6) Unless excused by the Court, the parties shall submit proposed jury instructions, special interrogatories, and briefs on any novel issues of law presented by October 31, 1983.

7) A conference to review jury instructions and resolve evidentiary matters is scheduled for November 3, 1983, at 1:00 P.M.

8) Prior to trial, counsel shall confer concerning physical exhibits, including documents and reports, and reach such agreement as is possible as to the use of such exhibits.

9) This action shall be heard before a six-member jury Counsel for plaintiff and counsel for defendants will be permitted two challenges each to the venire (two for plaintiff and two for all defendants), and will be assisted in the exercise of such challenges by a brief <u>voir dire</u> examination to be conducted by counsel and by juror profile forms. There will be no alternate jurors.

10) Unless excused by Order of Court, individual clients shall be in attendance at the summary jury trial and corporate clients shall be *514 represented by a top echelon officer or by someone with immediate access to the corporate decision-making mechanism at the summary jury trial.

11) Counsel will make conventional opening statements indicating what they intend to prove.

12) Following opening statements, all evidence shall be presented through the attorneys for the parties. The attorneys may summarize and comment on the evidence and may summarize or quote directly from depositions, interrogatories, requests for admissions, documentary evidence and sworn statements of potential witnesses. However, no witness' testimony may be referred to unless the reference is based upon one of the products of the various discovery procedures, or upon a written, sworn statement of the witness, or upon sworn affidavit of counsel that the witness would be called at trial and will not sign an affidavit, and that counsel has been told the substance of the witness' proposed testimony by the witness.

13) Objections will be received if in the course of a presentation counsel goes beyond the limits of propriety in presenting statements as to evidence or argument thereon.

14) After counsel's presentations, which will include their closing arguments, the jury will be given an abbreviated charge on the applicable law.

15) The jury may return either a consensus verdict or a special verdict consisting of an anonymous statement of each juror's findings on liability and/or damages (each known as the jury's advisory opinion). The jury will be encouraged to return a consensus verdict. The jury's findings will not be admissible as evidence should this case proceed to trial.

16) No statements of counsel or of any party during the course of the summary jury trial will be construed as judicial admissions.

17) Unless specifically ordered by the Court, the proceedings will not be recorded. Counsel may, if so desired, arrange for a court reporter.

18) Counsel may stipulate that a consensus verdict by the jury will be deemed a final determination on the merits and that judgment be entered thereon by the Court, or may stipulate to any other use of the verdict that will aid in the resolution of the case.

19) These rules shall be construed to secure the just, speedy, and inexpensive conclusion of the summary jury trial procedure.

Previously set final pretrial conference and trial dates are hereby vacated.
SO ORDERED.

### *515 APPENDIX J

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

110 MICHIGAN N.W.

GRAND RAPIDS, MICHIGAN 48503

CHAMBERS OF RICHARD A. ENSLEN

DISTRICT JUDGE

REPLY TO:

410 W. MICHIGAN AVENUE

KALAMAZOO, MICHIGAN 49005

March 12, 1984

Hon. Thomas D. Lambros

US District Judge

106 US Courthouse

Cleveland, OH 44114

Dear Tom:
I think you will delighted with the enclosed letter which comes from a lawyer in the small town of Cadillac. The case he refers to was tried by Magistrate Brenneman and was a lawsuit by a homeowner against his insurer who refused to pay for a house fire on the grounds that plaintiff had "torched" his own house. The case settled at the conclusion of the trial for about $40,000. I think this letter might be useful to you, as well as to all of us, with regard to promoting summary jury trials.
I look forward to seeing you in Williamsburg.
Yours,

RICHARD A. ENSLEN

US District Judge

RAE:am

Enclosure

*516 HERRINTON, HERRINTON AND TACOMA, P.C.

ATTORNEYS AT LAW

1200 South Mitchell Street

CADILLAC, MICHIGAN 49601

James C. Herrinton

Lois H. Herrinton

Kenneth L. Tacoma

Carol R. Audreen

Legal Secretary

Denise K. Zakrajsek

Legal Secretrary

Telephone 775-0147

Area Code 616

Our File No: 6575

March 8, 1984

The Honorable Richard A. Enslen

Judge of the United States

District Court

410 West Michigan

Kalamazoo, Michigan 49005

The Honorable Hugh W. Brenneman, Jr.

Magistrate of the United States

District Court

262 Federal Building

Grand Rapids, Michigan 49503

Re: McDonald v USF & G; Case No. G-83-24

Dear Judge Enslen and Judge Brenneman:
On February 28, summary jury trial was held in the above-entitled case.

Several months ago, I attended a one-day institute at Grand Rapids, at which all of the District Judges spoke, and at which Judge Enslen in particular encouraged the use of the summary jury trial as a settlement device.

I write this letter, hoping to provide some feed-back.

In this case, the benefits to the plaintiffs Mr. and Mrs. McDonald provided by the use of the summary jury trial are:

1. the summary trial caused the plaintiffs and their attorney to be prepared for trial;

2. the summary trial caused the plaintiffs to re-examine realistically their count for defamation and, finding no proof of publication, to provide for voluntary dismissal of the defamation count;

3. the summary trial provided the plaintiffs with an opportunity to see and hear the evidence submitted by the other party to the lawsuit; **\*517** i.e., it provided the plaintiffs with an orderly discovery of the other party's evidence and of the other party's theory of the case;

The Honorable Richard A. Enslen

The Honorable Hugh W. Brenneman

Page Two

March 8, 1984

4. the summary trial provided the plaintiffs with the opportunity to discuss the case with the jurors after the verdict was announced, which provided the plaintiffs with the opportunity to use the insight and reflection of six responsible persons, in preparing for a trial;

5. the summary trial provided an opportunity for the plaintiffs to release alot of their emotions as litigants-the summary trial jury verdict has had the effect of validating the plaintiffs' emotions;

6. the summary trial in this particular case resulted in a settlement for almost all of the plaintiffs' demand; that (1) has saved the plaintiffs the very large expenses in continuing further in this case, (2) has saved the plaintiffs additional emotional investment in the trial process, that being very important in this case because the plaintiff Ronald McDonald suffered a myocardial infarct just several days ago; (3) has allowed the plaintiffs to use the proceeds from the settlement now, without any further delay.

Some of the aspects of the summary trial which I believe are important to the summary trial device are:

1. The judicial temperament of the presiding judge is very important, where time is limited. In this case, I believe that Judge Brenneman provided a very structured and formal setting, which benefitted both of the parties. Judge Brenneman and Mr. Gary Kuipers appeared to make a conscious effort to emphasize the formality and importance of the proceedings, and of each court officer's duties. I believe that that emphasis is essential to the summary trial procedure.

2. The strict adherence to time and procedure limits allows that attorneys to rely on those limits in preparation for the summary trial, and is beneficial.

3. An important aspect of the summary trial is allowing the <u>parties and</u> their attorneys to discuss the case with the jury, after the verdict is given. That allows the parties to listen to the factfinders, and provides the parties with an objective description of the case.

I mentioned to Mr. Kuipers that if I were a retired attorney living in Grand Rapids, I would attend summary trials, make written notes of what the jurors perceived to be the important elements of the case, and sell the notes to the trial bar. I know of no other opportunity where parties and attorneys have the chance to listen to six jurors tell them

The Honorable Richard A. Enslen

The Honorable Hugh W. Brenneman

**\*518** Page Three

March 8, 1984

about the strengths and weaknesses of their case and the presentation of their case. In this particular case, if this case had proceeded to trial, I would have made fairly substantial changes in which facts of the case I would emphasize to the jury.

Thank you for making this dispute-resolving tool available to Mr. and Mrs. McDonald.

Very truly yours,

HERRINTON, HERRINTON & TACOMA, P.C.

By:

James C. Herrinton

JCH:dkz

cc: The Honorable Wendell A. Miles,

Chief Judge of the United States District Court

Mr. Ronald Musto

Mr. William A. Harper

Mr. and Mrs. Ronald McDonald

103 F.R.D. 461

END OF DOCUMENT