**KENNETH R. LAUGHERY, Ph.D.**
**3050 CLAIRE COURT**
**JANESVILLE, WI 53548**

Telephone:  (608) 754-0849                              email: laugher@ruf.rice.edu
Facsimile:   (608) 754-1082

October 1, 2009

Mr. Aaron Z. Ahlquist
622 Baronne Street
New Orleans, LA 70113

    RE:    Wright vs. Forest River, Inc., Shaw Environmental, Inc. and FEMA

Dear Mr. Ahlquist:

    You requested a report of my analysis and opinions regarding the human factors and warnings issues in the Wright vs. Forest River, Shaw and FEMA case. This letter is my report. I reserve the right to amend this report as additional relevant information becomes available.

**Qualifications and Bases For Opinions**

    My analyses and opinions are based on my education, training and experience, my review of relevant materials in the case, and a substantial body of scientific, peer-reviewed, published empirical research.

    Following is a summary of some of my relevant background and qualifications.

    Regarding my education, I received a Bachelor of Science degree in Metallurgical Engineering in 1957, a Masters of Science in Psychology in 1959, and a Ph.D. in Psychology in 1961. All three degrees are from Carnegie-Mellon University.

    Regarding employment, while on active military duty during 1962-1963, I worked as a Research Psychologist at the US Army Human Engineering Laboratories at Aberdeen Proving Ground, Maryland. From 1963 through 1972 I was on the faculty at the State University of New York at Buffalo where I held a joint appointment in the Departments of Psychology and Industrial Engineering. While on sabbatical leave from Buffalo, I was a Visiting Professor at the University of Sussex in England during 1969-1970. Also while at Buffalo, I was Chair of the Industrial Engineering Department in 1967-1969. In 1972 I became Professor and Chair of the Psychology Department at the University of Houston, where I remained until 1984. In 1984 I joined the faculty at Rice University as an Endowed Chair Professor of Psychology. I was Chair



LWFR-EXP 6-000007

of the Psychology Department at Rice from 1987 through 1990. I retired from Rice in 2002, and I currently have the title of Emeritus Professor. In recent years my teaching responsibilities included graduate and undergraduate courses in human factors and ergonomics, human factors methodology, human reliability and safety.

    I am a certified Human Factors Professional. I have been President of the national Human Factors and Ergonomics Society. Over the years I have participated in research funded through an assortment of grants and contracts, including contracts funded by a major automobile manufacturer and other large industrial corporations. I have evaluated and published research on topics including the design and effectiveness of product instructions, warnings and labels as well as research involving industrial accident analysis.

    I have edited/authored three books on warnings and a book on information technology. My research has been published in peer-reviewed journals, and I have authored or co-authored over 140 articles. Some of the relevant peer-reviewed publications include:

- Wogalter, M.S., DeJoy, D.M. and Laughery, K.R. (Eds.) <u>Warnings and Risk Communication</u>. London, Taylor & Francis, 1999.

- Wogalter, M.S. and Laughery, K.R. Warnings and hazard communications. In Salvendy (Ed.), <u>Handbook of Human Factors and Ergonomics, Third Edition</u>. New York, Wiley, 2006, 889-911.

\*     Laughery, K.R. Safety communications: Warnings. <u>Applied Ergonomics</u>. 2006, *37*, 467-478.

- Laughery, K.R. and Paige-Smith, D. Explicit information in warnings. In Wogalter, M.S. (Ed.) <u>Handbook of Warnings</u>, Mahwah, New Jersey, Erlbaum, 2006, 419-428.

- Laughery, K.R. and Wogalter, M.S. Designing Effective Warnings. In Williges (Ed.), Reviews of Human Factors and Ergonomics, Volume 2. Santa Monica, Human Factors and Ergonomics Society, 2006, 241-271.

A list of other articles and technical reports is in my Curriculum Vitae. I have offered expert testimony in various state and federal courts throughout the country on issues within my field of expertise.

My fee for work as an expert is $400.00 per hour.

Aaron Z. Ahlquist
Wright vs. Forest River, et al.
Page 3

My analysis has included a review of the following materials:

Complaint for Damages
First Supplemental and Amended Complaint
Plaintiff Fact Sheet
Forest River Recreational Vehicle Owner's Manual Travel Trailers & Fifth Wheels
Deposition of Lyndon Wright with summary
United States District Court Eastern District of Louisiana Order dated 7/17/09
Indemnification and Hold Harmless Agreement for Inspection and/or Testing of
    Temporary Emergency Housing Units at FEMA Staging and/or Storage Facilities
Affidavit of Mary C. Devany Concerning in Re: FEMA Trailer Formaldehyde Products
    Liability Litigation
Department of Homeland Security Federal Emergency Management Agency
    Application/Registration for Disaster Assistance documents
Wildcat FEMA Specs for 32BH Travel Trailer
Department of Homeland Security FEMA Contract Number HSFEHQ-05-0573
Subcommittee on Investigations and Oversight Committee on Science and Technology
    United States House of Representatives Hearing on: "Toxic Trailers: Have the
    Centers for Disease Control Failed to Protect the Public?", De Rosa, 4/1/08
U.S. New and World Report Article "House Panel Defends FEMA Trailer Whistle-
    blower", 2/7/08
Articles relating to trailers provided by FEMA
Defendant Forest River Inc.'s Objections and Responses to Plaintiffs' Second Revised
    Master Set Of Interrogatories and Request for Production of Documents

The methodology employed in my analysis and formulation of opinions involves methods that are based on my education, training and experience and that are generally accepted by experts in the field of human factors and warnings.

**Understanding and Assumptions**

Based on the above review and analysis, I have the following understanding and/or assumptions regarding the incident:

1. In March, 2006, Lyndon T. Wright, age 35, moved into a travel trailer manufactured by Forest River, Inc. and provided by the Federal Emergency Management Agency

(FEMA). The trailer was located at 2315 Seminole Lane in New Orleans, LA. He lived in the trailer until July, 2008. He occupied the trailer an average of 12 hours per day.

2. FEMA contracted for the trailer to be provided to people who were homeless as a result of the Katrina and Rita hurricanes. Mr. Wright and his mother Bobbie Wright qualified for the emergency housing assistance. The trailer was picked up, delivered and installed by Shaw Environmental, Inc. (Shaw). Ms. Wright moved to Houston and did not live in the trailer.

3. The travel trailer was designed for use as a recreational vehicle, not as long-term residential housing. However, it was provided by FEMA to serve as long-term residential housing for victims of the Katrina hurricane.

4. Formaldehyde vapors were released into the travel trailers provided by FEMA, including the trailer occupied by Lyndon Wright. In circumstances of permanent occupancy, such formaldehyde concentrations can cause health hazards.

5. A representative of Shaw met with Mr. Wright at the trailer site for an orientation and to provide the keys for occupancy. An envelope containing documents was given to Mr. Wright that he stored in the trailer but did not open. No verbal information or warnings was provided by the Shaw representative during the orientation nor were there any instructions as to what was contained in the envelope.

6. An owner's manual for the trailer was not provided to Mr. Wright.

7. Mr. Wright was not knowledgeable about or aware of the formaldehyde hazards associated with the trailer.

8. There were no labels posted in the trailer warning about the formaldehyde hazards.

9. During the time Mr. Wright occupied the trailer he was exposed to and aware of unpleasant odors inside the trailer. He did not associate the odors with the formaldehyde hazards.

10. Mr. Wright experienced health problems as a result of exposure to the formaldehyde vapors in the trailer.

Aaron Z. Ahlquist
Wright vs. Forest River, et al.
Page 5

11. Mr. Wright testified that given the health effects he was experiencing while living in the trailer, had he been warned about the formaldehyde hazards he would not have continued living in the trailer.

12. The following information was on page 77 of the trailer Owner's Manual (an 82 page document):

### STATEMENT OF FORMALDEHYDE FROM BUILDING MATERIALS

Certain building products such as particleboard, fiberboard, and hardwood plywood are manufactured with an adhesive containing urea-formaldehyde. These products emit a small quantity of formaldehyde into the air.

Other products contain formaldehyde or urea-formaldehyde resins, such as carpets, draperies, upholstery, fabrics, deodorizers, cosmetics, and permanent-press fabrics. Formaldehyde is also a byproduct of combustion and is produced by cigarettes and gas appliances.

The concentration of formaldehyde in the indoor air depends on the quantity and emission rates of all emission rates of all emitting products in the structure compared to the volume of indoor air and the fresh air ventilation rate. As with other indoor pollutants, ventilation should reduce formaldehyde levels.

**WARNING: FORMALDEHYDE LEVELS IN THE INDOOR AIR CAN CAUSE TEMPORARY EYE AND RESPIRATORY IRRITATION AND MAY AGGRAVATE RESPIRATORY CONDITIONS OR ALLERGIES.**

13. Pursuant to federal law, the following "Health Notice" was required to be displayed in the trailer:

**3280.309 Health Notice on formaldehyde emissions**
(a) Each manufactured home shall have a Health Notice on formaldehyde emissions prominently displayed in a temporary manner in the kitchen (i.e., countertop or exposed cabinet face). The Notice shall read as follows:

Aaron Z. Ahlquist
Wright vs. Forest River, et al.
Page 6

IMPORTANT HEALTH NOTICE

>Some of the building materials used in this home emit formaldehyde. Eye, nose, and throat irritation, headache, nausea, and a variety of asthma-like symptoms, including shortness of breath, have been reported as a result of formaldehyde exposure. Elderly persons and young children, as well as anyone with a history of asthma, allergies, or lung problems, may be at greater risk. Research is continuing on the possible long-term effects of exposure to formaldehyde.
>
>Reduced ventilation resulting from energy efficiency standards may allow formaldehyde and other contaminants to accumulate in the indoor air. Additional ventilation to dilute the indoor air may be obtained from a passive or mechanical ventilation system offered by the manufacturer. Consult your dealer for information about the ventilation options offered with this home.
>
>High indoor temperatures and humidity raise formaldehyde levels. When a home is to be located in areas subject to extreme summer temperatures, an air-conditioning system can be used to control indoor temperature levels. Check the comfort-cooling certificate to determine if this home has been equipped or designed for the installation of an air-conditioning system. If you have any questions regarding the health effects of formaldehyde, consult your doctor or local health department.

The Notice shall be legible and typed using letters at least ¼ inch in size. The title shall be typed using letters at least ¾ inch in size.

14. Based upon a review of documents, it is possible that Lyndon Wright's unit was manufactured in a Forest River facility in California. If so, it would require that its manufacture comply with California's labeling/warning requirements under Proposition 65.

**Opinions**

Based on the above understanding and/or assumptions and my review of the materials listed above, I have the following opinions:

Aaron Z. Ahlquist
Wright vs. Forest River, et al.
Page 7

1. The formaldehyde health hazards and consequences associated with permanent occupancy of the Forest River trailer are not open or obvious. Indeed, the hazards are technical in nature, and concern issues of chemical vapors, toxicology, and biological/medical reactions. Thus, it is imperative that an adequate warning system be provided to potential occupants in order for informed decisions to be made regarding the manner in which the trailer is used or if it is used at all.

2. The warning system associated with the trailer regarding formaldehyde hazards was inadequate.

    a. The distribution of the warning information clearly failed in the case of the Wright trailer. The Forest River Owner's Manual was not made available, the formaldehyde warning label was not posted in the trailer, and no verbal information regarding the formaldehyde hazards was presented during the Shaw orientation at the beginning of occupancy.

    b. The information in the Owner's Manual was buried on page 77, where the likelihood of it being encountered and read was less than if it had been presented at or near the front of the manual. Indeed, it was contained in a section of the manual labeled "Care and Maintenance" instead of in the first section of the manual labeled "Identification and Safety." Further, the WARNING statement at the end of the formaldehyde information on page 77 tended to minimize the consequences of formaldehyde exposure by using phrases such as "cause temporary eye and respiratory irritation and may aggravate respiratory conditions or allergies." Also, the information in the Owner's Manual failed to address the human carcinogen consequence of exposure.

    c. The **3280.309 Health Notice on formaldehyde emissions** was not posted in the trailer. One of the important criteria for warning design is that the warning should be conspicuous; that is, it should attract attention and be noticed. Location is a critical factor on whether warnings are noticed, and the label should have been located in a prominent place, such as on the inside of the trailer entry door or prominently displayed in the kitchen.

Sincerely,

*Kenneth R. Laughery*

Kenneth R. Laughery, Ph.D.