Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


*****************************************************************

IN RE:  FEMA TRAILER
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION

                              DOCKET MDL NO. 1873 "N"
                              NEW ORLEANS, LOUISIANA
                              MONDAY, SEPTEMBER 14, 2009, 8:30 A.M.

THIS DOCUMENT IS RELATED TO

CHARLIE AGE, ET AL V
GULF STREAM COACH, INC.,
ET AL, DOCKET NO. 09-2892;
ALANA ALEXANDER,
INDIVIDUALLY AND ON BEHALF
OF CHRISTOPHER COOPER


*****************************************************************


                    MORNING SESSION
            TRANSCRIPT OF JURY TRIAL PROCEEDINGS
        HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
                UNITED STATES DISTRICT JUDGE


APPEARANCES:


FOR THE PLAINTIFFS:

                    GAINSBURGH BENJAMIN DAVID MEUNIER AND
                    WARSHAUER
                    BY:  GERALD E. MEUNIER, ESQUIRE
                    2800 ENERGY CENTRE
                    1100 POYDRAS STREET, SUITE 2800
                    NEW ORLEANS LA  70163


                    THE BUZBEE LAW FIRM
                    BY:  ANTHONY G. BUZBEE, ESQUIRE
                    600 TRAVIS, SUITE 7300
                    HOUSTON TX  77002

IN RE:  FEMA TRAILER        MORNING SESSION            CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 2

     1    APPEARANCES CONTINUED:

     2

     3                              WATTS GUERRA CRAFT
                                    BY:  MIKAL C. WATTS, ESQUIRE
     4                              FOUR DOMINION DRIVE
                                    BUILDING THREE, SUITE 100
     5                              SAN ANTONIO TX 78257

     6

                                    HILLIARD MUNOZ GUERRA
     7                              BY:  ROBERT C. HILLIARD, ESQUIRE
                                    719 S. SHORELINE BOULEVARD #500
     8                              CORPUS CHRISTI TX 78401

     9

                                    CHRIS PINEDO
    10                              ATTORNEY AT LAW
                                    802 N. CARANCAHUA, SUITE 2250
    11                              CORPUS CHRISTI TX  78470

    12
          FOR GULF STREAM COACH, INC.:
    13
                                    DUPLASS ZWAIN BOURGEOIS MORTON
    14                              PFISTER & WEINSTOCK
                                    BY:  JOSEPH G. GLASS, ESQUIRE
    15                              THREE LAKEWAY CENTER
                                    3838 N. CAUSEWAY BOULEVARD
    16                              SUITE 2900
                                    METAIRIE LA  70002
    17

    18                              SCANDURRO & LAYRISSON
                                    BY:  TIMOTHY D. SCANDURRO, ESQUIRE
    19                              607 ST. CHARLES AVENUE
                                    NEW ORLEANS LA  70130
    20

    21
          FOR FLUOR ENTERPRISES, INC.:
    22
                                    MIDDLEBERG RIDDLE & GIANNA
    23                              BY:  CHARLES R. PENOT, JR., ESQUIRE
                                        RICHARD A. SHERBURNE, ESQUIRE
    24                              717 N. HARDWOOD
                                    DALLAS TX  75201
    25

IN RE:  FEMA TRAILER        MORNING SESSION              CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 3

1    ALSO PRESENT:                SONIA MALLETT, ESQUIRE

2

3    OFFICIAL COURT REPORTER:     CATHY PEPPER, CCR, RMR, CRR
                                  500 POYDRAS STREET, ROOM B406
4                                 NEW ORLEANS LA  70130
                                  (504) 589-7779
5
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
6    PRODUCED BY COMPUTER.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IN RE:  FEMA TRAILER      MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 85

1    WORK BECAUSE I LIVE LIKE TWO MILES.  BUT LIKE IF A CAR COMES

2    TOWARDS ME, IT BLINDS ME.  I CAN'T SEE.  AND LIKE THE GLARE IN

3    HERE IS BOTHERING ME RIGHT NOW.

4              MR. MEUNIER:  WHEN YOU DRIVE, YOU CAN READ THE ROAD

5    SIGNS?

6              PROSPECTIVE JUROR 13:  YEAH, IF THEY ARE BIG ENOUGH.

7    LIKE IF IT WAS SOMETHING SMALL, I CAN'T SEE IT.

8              MR. MEUNIER:  SO IF THERE IS A SCREEN WHICH HAS PRINT ON

9    IT THAT'S BIG ENOUGH, YOU WOULD BE ABLE TO READ THAT?

10             PROSPECTIVE JUROR 13:  YEAH, IF IT'S BIG ENOUGH.

11             THE COURT:  OKAY.  COUNSEL, ANYTHING?  THANK YOU.

12             MR. MEUNIER:  THANK YOU, SIR.

13             THE COURT:  DOES ANYBODY WANT TO COMMENT?

14             MR. SHERBURNE:  JUDGE, I HATE TO SAY IT.  THE MAN SAID

15   HE COULDN'T READ WHAT'S ON YOUR SCREEN.

16             MR. MEUNIER:  WELL, BUT I COULDN'T READ IT.

17             THE COURT:  HE CAN READ STREET SIGNS, IF HE CAN DRIVE.

18             MR. SHERBURNE:  HE'S DRIVING TWO MILES TO HIS JOB THAT

19   HE'S HAD FOR 30 YEARS, JUDGE.

20             THE COURT:  I'M GOING TO LEAVE HIM IN.  I'M GOING TO

21   LEAVE HIM IN.  I THINK HE GOT HERE, HE CAN SERVE, IF HE'S PICKED.

22                  WHO ELSE?  MS. HOOFKIN.  WHAT'S THE PROBLEM WITH

23   MS. HOOFKIN?

24             MR. GLASS:  SHE HAS FAMILY IN TRAILERS, THREE PEOPLE.

25   SHE CAN'T UNDERSTAND HOW THEY WOULD LET PEOPLE HAVE TRAVEL

IN RE:  FEMA TRAILER        MORNING SESSION           CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 86

1    TRAILERS WHEN THERE'S FORMALDEHYDE IN IT.  WHY WOULD THEY LET

2    THEM LIVE THERE.  HEARD THAT PEOPLE ARE SUFFERING FROM ILLNESS

3    BECAUSE OF TRAVEL TRAILERS.

4         THE COURT:  THIS IS FROM THE QUESTIONNAIRE.

5         MR. GLASS:  BUT SHE SAYS SHE CAN'T BE OPEN MINDED, WHY

6    WOULD THEY THEN -- HER SPECIFIC COMMENTS ARE WHY WOULD THEY ALLOW

7    PEOPLE TO LIVE WHERE THERE IS FORMALDEHYDE.  WHY WOULD THEY PUT

8    THAT IN THE TRAILER WHEN IT CAUSES ALL OF THIS HARM.

9         THE COURT:  NUMBER 16, MS. HOOFKIN, IF YOU WOULD COME

10   FORWARD, PLEASE.

11             WHAT'S THE PROBLEM WITH ELLIS WHILE 16 IS?

12        MR. GLASS:  SAME THING.  HER FAMILY MEMBER INSPECTED

13   TRAILERS.

14        THE COURT:  MS. HOOFKIN, YOU ANSWERED SOME QUESTIONS ON

15   THE QUESTIONNAIRE.  DO YOU THINK THAT IF YOU'RE CHOSEN AS A JUROR

16   IN THIS CASE YOU COULD BE FAIR AND LISTEN TO ALL OF THE EVIDENCE

17   AND COME TO A CONCLUSION IN THIS CASE, IF YOU'RE PICKED AS A

18   JUROR, BASED ON ONLY THE EVIDENCE IN THIS COURTROOM?

19             PROSPECTIVE JUROR 16:  YEAH.

20        THE COURT:  MR. GLASS, DID YOU WANT TO ASK QUESTIONS?

21        MR. GLASS:  YES, MA'AM.  YOU INDICATED IN YOUR

22   QUESTIONNAIRE THAT YOU HAD SOME FAMILY MEMBERS WHO WERE IN

23   TRAILERS?

24             PROSPECTIVE JUROR 16:  NO.  I DIDN'T HAVE ANY FAMILY

25   MEMBERS.  I KNOW SOME FRIENDS THAT WAS IN TRAILERS.

IN RE:  FEMA TRAILER        MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 87

 1          MR. GLASS:  ARE THEY PLAINTIFFS IN THE CASE?

 2          PROSPECTIVE JUROR 16:  NO.

 3          MR. GLASS:  YOU TALKED TO PEOPLE ABOUT YOUR CONCERNS IN

 4   THE TRAILER AND DID YOU, WELL, FIRST OF ALL, IS THIS YOUR

 5   HANDWRITING?

 6          PROSPECTIVE JUROR 16:  UH-HUH (AFFIRMATIVE RESPONSE).

 7          MR. GLASS:  YOU TALKED TO SOME PEOPLE, AND YOU HAD

 8   CONCERNS, YOU'VE MADE UP YOUR MIND ABOUT FORMALDEHYDE AND WHY

 9   WOULD THEY LET PEOPLE LIVE IN THESE TRAILERS BECAUSE THEY HAVE

10   FORMALDEHYDE IN THEM?

11          PROSPECTIVE JUROR 16:  YEAH.  IT WAS LIKE MAYBE ME AND

12   SOME FAMILY, WE TALKED ABOUT IT WHEN WE SEEN IT ON THE NEWS, THAT

13   THEY WERE HAVING THE PEOPLE SUING THEM.  MY CONCERN WAS IF THE

14   COMPANY KNEW THAT THE FORMALDEHYDE WOULD, YOU KNOW, CAUSE

15   SOMEBODY INJURY, WHY WOULD THEY PUT THEM IN THERE?

16          MR. GLASS:  AND THAT'S WHAT YOU'RE INDICATING IN NUMBER

17   120, THAT IT'S YOUR OPINION THAT FORMALDEHYDE, YOU'VE ALREADY

18   FORMED AN OPINION THAT IT SHOULDN'T BE USED IN A PLACE WHERE

19   PEOPLE HAVE TO RESIDE SO THEY WOULDN'T, WOULD GET HURT?

20          PROSPECTIVE JUROR 16:  YEAH.

21          MR. MEUNIER:  YOUR HONOR, THE QUESTION THAT MR. GLASS

22   REFERRED TO IS OVERCOME BY THE FACT THAT THE WITNESS HAS JUST

23   TOLD YOU THAT IF SHE IS CALLED ON TO LISTEN TO THE EVIDENCE IN

24   THIS CASE AND DECIDE THE EVIDENCE AS SHE HEARS IT, SHE CAN BE

25   FAIR.

IN RE:  FEMA TRAILER        MORNING SESSION            CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 88

 1          THE COURT:  MS. HOOFKIN, YOU UNDERSTAND THAT NO MATTER

 2   WHAT QUESTIONS YOU MAY HAVE HAD OR DISCUSSIONS YOU'VE HAD WITH

 3   FAMILY MEMBERS OR FRIENDS THAT THIS CASE WILL BE DECIDED ONLY BY

 4   THE EVIDENCE IN THIS COURTROOM AND NOT BY ANYTHING ELSE OR WHAT

 5   SOMEBODY TOLD YOU OR WHAT YOU MAY THINK BY SEEING A NEWS PROGRAM.

 6   YOU HAVE TO DECIDE THIS CASE BASED ON THE EVIDENCE.  DO YOU THINK

 7   YOU COULD DO THAT IF YOU'RE PICKED AS A JUROR?

 8          PROSPECTIVE JUROR 16:  YES, I CAN.

 9          THE COURT:  THANK YOU, MS. HOOFKIN.

10          PROSPECTIVE JUROR 16:  OKAY.

11          THE COURT:  SHE'S A PEREMPTORY.

12          ELLIS.  ELLIS IS THE SAME THING?  DO YOU WANT --

13          MR. GLASS:  SHE ACTUALLY HAD RELATIVES IN THE TRAILER.

14   I HAD THAT BACKWARDS.

15          THE COURT:  SHE HAD RELATIVES IN THE TRAILER?  SHE

16   ANSWERED THAT TODAY?  DID SHE PUT THAT IN THE QUESTIONNAIRE?

17          MR. WEINSTOCK:  ANDY WEINSTOCK.  WE WANT TO KNOW IF ANY

18   OF THOSE FAMILY MEMBERS HAVE MADE A CLAIM AND FILED A SUIT.

19          THE COURT:  MS. ELLIS, NUMBER 20.

20          WHO ELSE?  THAT'S IT OUT OF THE TOP 30?

21          MS. ELLIS, HOW ARE YOU?  GO AHEAD, MR. GLASS.

22          MR. GLASS:  MA'AM, YOU INDICATE IN YOUR QUESTIONNAIRE

23   THAT YOU HAVE SEVERAL RELATIVES IN TRAILERS?  YOUR GRANDMOTHER,

24   YOUR UNCLE, YOUR AUNTS AND SOME FRIENDS?

25          PROSPECTIVE JUROR 20:  UH-HUH.

IN RE:  FEMA TRAILER          MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 89

1            MR. GLASS:  ARE ANY OF THEM PLAINTIFFS IN A LAWSUIT?

2            PROSPECTIVE JUROR 20:  NO.

3            MR. GLASS:  ARE ANY OF THEM CONTEMPLATING FILING A

4    LAWSUIT?

5            PROSPECTIVE JUROR 20:  NO.

6            MR. GLASS:  YOU ALSO INDICATED THAT THERE WERE SOME

7    THINGS THAT WOULD GIVE YOU TROUBLE BEING OPEN MINDED IN THE CASE

8    AND ONE OF THOSE BEING THAT THERE'S A LOT OF NEGATIVE COMMENTS

9    AND THAT'S POSSIBLE THAT THAT WON'T ALLOW YOU TO BE OPEN MINDED.

10   WHAT WERE YOU INDICATING IN THAT QUESTION?

11           PROSPECTIVE JUROR 20:  JUST IN THE SENSE OF SEEING A LOT

12   OF THINGS ON TELEVISION ASKING PEOPLE TO COME FORWARD, AND THAT

13   THERE IS A POSSIBILITY THAT YOU CAN WHETHER OR NOT THERE IS AN

14   PROBLEM.

15           MR. GLASS:  SO YOU THINK YOU'VE MADE UP -- YOU'VE

16   ALREADY GOT AN OPINION IF THERE'S A PROBLEM WITH FORMALDEHYDE IN

17   THE TRAILERS?

18           PROSPECTIVE JUROR 20:  THAT THERE IS A POSSIBLE PROBLEM.

19   I DON'T KNOW WHAT BECAUSE I DON'T HAVE ANY SPECIFIC PROBLEMS WITH

20   THAT MYSELF.

21           MR. GLASS:  DO YOU HAVE A FAMILY MEMBER WHO WORKED FOR

22   FEMA FOR THE TRAILER INSPECTIONS?

23           PROSPECTIVE JUROR 20:  MY AUNT.

24           MR. GLASS:  WHO WAS THAT, YOUR AUNT?

25           PROSPECTIVE JUROR 20:  MY AUNT.

Page 90

 1             MR. GLASS:  WHICH INSPECTOR DID SHE WORK FOR?

 2             PROSPECTIVE JUROR 20:  I DON'T KNOW THAT MUCH.  I GUESS

 3   IT PROBABLY WAS, SHE WENT TO THE FEMA TO -- I THINK WAS SOMETHING

 4   SHE NEEDED TO CHECK FOR, JUST REGULAR CHECK ON THINGS AND CHECK

 5   ON IF EVERYTHING IS OPERATING.

 6             MR. GLASS:  HAVE YOU TALKED TO HER ABOUT ANYTHING ABOUT

 7   FORMALDEHYDE OR TRAILERS INSPECTION?

 8             PROSPECTIVE JUROR 20:  NO, I HAVEN'T.

 9             MR. GLASS:  YOU'VE INDICATED THAT IT MIGHT BE, I'M

10   SORRY, WOULD THAT CAUSE YOU ANY PROBLEMS FINDING A PARTY LIABLE

11   IF THEY WERE INVOLVED IN INSPECTING TRAILERS?

12             PROSPECTIVE JUROR 20:  NO.

13             MR. GLASS:  THAT'S IT.

14             THE COURT:  MS. ELLIS, YOU UNDERSTAND THAT THIS CASE IS

15   GOING TO BE DECIDED ONLY ON THE EVIDENCE THAT'S PRESENTED IN THIS

16   COURTROOM, AND THAT YOU, IF YOU'RE CHOSEN AS A JUROR, YOU HAVE TO

17   HEAR ALL OF THAT EVIDENCE AND THEN COME TO A CONCLUSION AS TO

18   WHAT YOU THINK IS A JUST RESULT BASED ON THE INSTRUCTIONS THAT I

19   GIVE THE JURY, YOU UNDERSTAND THAT?

20             PROSPECTIVE JUROR 20:  I DO.

21             THE COURT:  DO YOU THINK YOU CAN DO THAT AND BE FAIR IN

22   THIS CASE BASED ON WHAT YOU'VE TOLD MR. GLASS JUST NOW AND WHAT

23   YOU'VE WRITTEN IN THE QUESTIONNAIRE?

24             PROSPECTIVE JUROR 20:  I WOULD THINK THAT I CAN, JUST,

25   OF COURSE, REMINDING MYSELF TO TAKE WHAT IS ON THE TABLE AND NOT,

IN RE:  FEMA TRAILER        MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 91

1    I GUESS, WHAT'S AT THE BUFFET, I GUESS YOU COULD SAY.

2           THE COURT:  OKAY.  ANYBODY ELSE?  THANK YOU.

3              LET'S DO THIS:  LET ME ASK YOU ONE FINAL QUESTION.

4    ARE THERE ANY OTHER QUESTIONS YOU WOULD LIKE ME TO ASK THE GROUP

5    BEFORE YOU RETURN TO YOUR TABLES?

6           MR. WATTS:  IF YOU'RE NOT GETTING TO JUROR NUMBER 30 --

7           THE COURT:  IF WE GET PAST 30, I DON'T THINK WE WILL,

8    I'LL BRING SOMEBODY UP HERE, THAT'S WHY I DIDN'T WANT TO

9    CONCENTRATE ON ANYBODY AFTER 30.  BUT WE HAVE ENOUGH NOW THAT YOU

10   CAN USE ONE, ONE, ONE, ONE.  WE'RE GOING TO DO FIVE ROUNDS OF ONE

11   APIECE AND THAT'S IT.  THEN WE'RE GOING TO GET GOING.  OKAY,

12   LET'S DO IT, QUICKLY.

13              LADIES AND GENTLEMEN OF THE JURY POOL, WE'RE NOW

14   GOING TO ENGAGE IN A PROCESS THAT THE ATTORNEYS ARE GOING TO

15   PARTICIPATE IN.  AGAIN, I'LL ASK YOUR PATIENCE IN THE MEANTIME.

16   THE ATTORNEYS ARE GOING TO EXERCISE WHAT ARE CALL PEREMPTORY

17   CHALLENGES, I MADE REFERENCE TO THOSE BEFORE, AND MY COURTROOM

18   DEPUTY IS GOING TO GO FROM ONE SIDE TO THE OTHER HERE, PLAINTIFFS

19   TO DEFENDANTS, SO THEY CAN EXERCISE PEREMPTORY CHALLENGES.  THAT

20   SHOULD NOT TAKE VERY LONG.

21              AND ONCE THEY HAVE DONE THAT, WE WILL HAVE OUR

22   NINE-PERSON JURY, WE'LL GO AHEAD AND SEAT THAT JURY, AND THEN

23   WE'LL BE JUST ABOUT READY TO TAKE A BREAK FOR THOSE OF YOU WHO

24   ARE GOING TO BE THE NINE WHO HEAR THIS CASE.

25              AFTER WE TAKE THE BREAK, WE WILL COME BACK AND HEAR

IN RE:  FEMA TRAILER          MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 92

1   THE OPENING STATEMENTS OF THE ATTORNEYS AND PROBABLY AT THAT

2   POINT TAKE A LUNCH BREAK, AND THEN WE'LL PICK UP WITH THE

3   TESTIMONY AND THE EVIDENCE IN THIS CASE.

4            LET'S GO AHEAD AND EXERCISE THE PEREMPTORY

5   CHALLENGES VERY PROMPTLY.  COUNSEL, YOU ALREADY HAVE INFORMATION

6   SO THIS SHOULD NOT TAKE VERY LONG.

7            MR. WATTS:  MAY WE APPROACH?

8            MR. MEUNIER:  MAY WE APPROACH, JUDGE?

9            THE COURT:  ALL RIGHT, COUNSEL IF YOU WOULD COME

10  FORWARD, PLEASE.  ONE SECOND.  WHO DO WE HAVE?

11     (WHEREUPON, AT THIS POINT IN THE PROCEEDINGS, THERE WAS A

12  CONFERENCE HELD AT THE BENCH.)

13           MR. WATTS:  WE NEED TO MAKE A MOTION BEFORE --

14           THE COURT:  OKAY, I UNDERSTAND.  IT'S NUMBER ONE, NUMBER

15  TWO, NUMBER THREE, NUMBER FOUR, NUMBER FIVE, I'M SORRY, NUMBER

16  FOUR, NUMBER SEVEN, NUMBER EIGHT, NUMBER 13, NUMBER 15, AND

17  NUMBER 21 ARE THE NINE PEOPLE WHO ARE CHOSEN AS A RESULT OF THE

18  PROCESS.  WOULD ANYONE LIKE TO MAKE A MOTION?

19           MR. WATTS:  WE WOULD.  COMING OUT OF THE PLAINTIFFS,

20  MICHAEL WATTS, PRACTICING LAW FOR 20 YEARS, THIS IS THE FIRST

21  BATSON MOTION I'VE EVER MADE.  THERE WERE 22 ELIGIBLE PERSONS OR

22  21 ELIGIBLE PERSONS.  THERE WERE FIVE AFRICAN-AMERICANS.  LET THE

23  RECORD REFLECT BOTH THE PLAINTIFF ALEXANDER AND COOPER ARE

24  AFRICAN-AMERICANS.  THE AFRICAN-AMERICANS AVAILABLE ON THE VENIRE

25  PANEL WERE JUROR NUMBER 9, JUROR NUMBER 11, JUROR NUMBER 16,

IN RE: FEMA TRAILER          MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 93

1   JUROR NUMBER 19, AND JUROR NUMBER 20.  AMONG THE AVAILABLE PANEL

2   MEMBERS AFRICAN-AMERICANS MADE UP 20 PERCENT.

3              STATISTICALLY, THE DEFENDANTS EMPLOYED FIVE

4   PEREMPTORY CHALLENGES.  ALL FIVE WERE USED ON AFRICAN-AMERICANS,

5   AND WE MAKE A MOTION IN BATSON THAT, NUMBER ONE, WE'D BE

6   PERMITTED AFTER COUNSEL SPEAKS NOT TO PUT THEM ON THE STAND;

7   NUMBER TWO, TO INVESTIGATE WHETHER THERE IS RACE-NEUTRAL REASONS

8   THAT COULD POSSIBLY EXPLAIN THIS KIND OF STATISTICAL DISPARITY;

9   NUMBER TWO, AFTER THAT WE MAKE A MOTION THAT THOSE FIVE

10  AFRICAN-AMERICANS BE PLACED BACK ON THE PANEL AND THAT COUNSEL BE

11  DIRECTED TO EMPLOY HIS PEREMPTORY CHALLENGES ON OTHER JURORS NOT

12  IN VIOLATION OF BATSON.

13             THE COURT:  COUNSEL, YOU WANT TO RESPOND?

14             MR. WEINSTOCK:  YOUR HONOR, WE'RE HAVE 129 QUESTIONS ON

15  EACH AND EVERY JUROR.  WE ASKED MANY OF THEM TO COME UP HERE.

16  SEVERAL OF THEM WERE STRUCK FOR CAUSE.  FOR EXAMPLE, MR. FRANKLIN

17  JUST LOST HIS WIFE.  THERE'S A VALID REASON FOR EVERY SINGLE

18  PERSON WE ASKED TO BE EXCUSED, AND IT'S NOT BASED ON RACE.

19             THE COURT:  TELL ME WHAT, OUT OF THE NINE PEOPLE WE HAVE

20  CHOSEN, ARE THERE ANY AFRICAN-AMERICANS ON THE JURY AMONGST THOSE

21  NINE?

22             MR. WATTS:  I DON'T KNOW.  THEY STRUCK ALL FIVE OF

23  THE --

24             MR. WEINSTOCK:  NO, YOUR HONOR.

25             THE COURT:  DO YOU WANT TO TELL ME THE REASONS ON EACH

IN RE:  FEMA TRAILER        MORNING SESSION            CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 94

1    ONE AND SEE IF YOU CAN ESTABLISH A RACE NEUTRAL?

2          MR. WEINSTOCK:  I WOULD BE HAPPY TO HAVE SOMEBODY ON MY

3    TEAM TELL YOU THE REASONS FOR EACH ONE.  I WILL CERTAINLY.  TWO I

4    CAN TELL YOU IS, THE TWO WE ASKED TO COME UP, I BELIEVE MS., I

5    JUST TOLD YOU ABOUT MR. FRANK.  MS. HOOFKIN, MS. ELLIS, I BELIEVE

6    IT WAS.

7          THE COURT:  RIGHT, BOTH OF THEM CAME UP.

8          MR. WEINSTOCK:  BOTH OF THEM CAME UP AND BOTH OF THEM

9    HAVE FRIENDS AND RELATIVES THAT HAVE LIVED IN TRAILERS, AND THEY

10   HAVE ABSOLUTE, IN OUR MINDS AND THEY SAID IT IN THEIR

11   QUESTIONNAIRES, PRECONCEIVED NOTIONS ON BOTH.

12         THE COURT:  NUMBER NINE WAS THE FIFTH CHALLENGE YOU

13   USED.  THAT'S MS. MORRIS.

14         MR. GLASS:  SHE INDICATED THAT SHE WOULD ALSO FIND THE

15   COMPANY LIABLE IF THEY EXPOSED THE CONSUMER TO ANY KIND OF TOXIC

16   SUBSTANCE, ALWAYS.

17         THE COURT:  ALL RIGHT.  WHO ELSE?  BUT THAT WAS THE

18   QUESTION THAT I'VE HAD HAD A PROBLEM WITH THE WAY IT WAS WORDED

19   AND WE COMMENTED ON THIS WHEN WE HAD OUR CONFERENCE.  THAT

20   QUESTION IN AND OF ITSELF IS WORDED TO BEG THE ANSWER THAT

21   SOMEONE WOULD HAVE A PROBLEM WITH IT.

22         MR. GLASS:  A COUPLE OTHERS, YOUR HONOR.  TESTING WAS

23   VERY INADEQUATE.  MOST COMPANIES TRY AND INCREASE WITHOUT REGARD

24   FOR ETHICS.  AND INCREASED PROFITS WITHOUT REGARD TO ETHICS.  AND

25   HOW THEY -- PROFITS FOR COMPANIES.

IN RE:  FEMA TRAILER        MORNING SESSION              CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

```
 1          THE COURT:  WHO ELSE?  WHAT ABOUT MR. FRANKLIN WAS YOUR

 2   FOURTH.

 3          MR. SHERBURNE:  YOUR HONOR, WE REMOVED MR. FRANKLIN

 4   BECAUSE HE JUST LOST HIS WIFE.  THAT'S THE SOLE REASON.

 5          MR. WEINSTOCK:  THAT'S THE SOLE REASON BECAUSE HIS WIFE

 6   JUST PASSED AWAY.

 7          MR. WATTS:  HOLD ON.

 8          THE COURT:  WAIT.  I'M NOT UNDERSTANDING.  WHY WAS

 9   MR. FRANKLIN SUBJECT OF A PEREMPTORY CHALLENGE?

10          MR. WEINSTOCK:  BECAUSE HE JUST LOST HIS WIFE, WHICH WE

11   BELIEVE MAKES HIM INCREDIBLY SYMPATHETIC.

12          MR. GLASS:  THAT AND THAT IN HIS QUESTIONNAIRE HE SAID

13   MOST COMPANIES WANT PROFITS OVER ETHICS, SAFETY TESTING IS VERY

14   INADEQUATE.  THE GOVERNMENT SHOULD PAY FOR INJURY EVEN IF THERE'S

15   NO PROOF.  HE HAD CHEMICAL EXPOSURE IN HIS OWN HOME, SO IF HE

16   THINKS HIS WIFE'S DEATH WAS A PROBLEM WITH THAT --

17          THE COURT:  WHEN I ASKED YOU FOR CAUSE, NOBODY CALLED

18   HIM UP HERE TO QUESTION HIM ABOUT THOSE ANSWERS.

19          MR. WEINSTOCK:  THAT'S TRUE, YOUR HONOR, BUT YOU DID NOT

20   ASK US TO KEEP CALLING THE SAME PEOPLE UP TO DISCUSS THAT

21   QUESTION OVER AND OVER.  WE MADE PRECONCEIVED NOTIONS BASED ON

22   WHAT THEY HAD WRITTEN.

23          MR. GLASS:  WE TRIED TO LIMIT IT TO A FEW PEOPLE.

24          THE COURT:  WHAT ABOUT MS. BROWN, YOUR THIRD CHALLENGE?

25          MR. WEINSTOCK:  MR. BROWN PUT IN BOLD, PUT VERY
```

IN RE:  FEMA TRAILER        MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 96

1    EMPHATICALLY IN THE QUESTIONNAIRE, JUSTICE DOES NOT LIMIT WHAT'S

2    WRONG OR AMOUNT.  HER HUSBAND HAD A STROKE.  COMPANIES WILL DO

3    WHATEVER FOR PROFITS.  TESTING INADEQUATE BEFORE MARKETING.

4             MR.  WEINSTOCK:  SHE'S ALSO BEEN A PERSONAL PLAINTIFF

5    BEFORE.  CAN WE CAUCUS FOR ABOUT 30 SECONDS?

6             THE COURT:  ARE THERE ANY AFRICAN-AMERICANS ON 23

7    THROUGH 30 THAT WE ASKED ABOUT?

8             MR. WATTS:  WE'VE GOT EMILE BACCHUS.

9             THE COURT:  EMILE BACCHUS.

10            MR. HILLIARD:  THE CARPENTER.

11            THE COURT:  DO YOU HAVE A PROBLEM WITH ONE OF THEM?

12   BACCHUS OR, WHAT WAS THE OTHER ONE?

13            MR. WATTS:  29, RIGHT?

14            THE COURT:  WHO WAS THE OTHER ONE?

15            MR. WEINSTOCK:  YOUR HONOR, IF YOU HAVE A MOTION, I'LL

16   JUST USE MY LAST STRIKE ON SOMEBODY ELSE BECAUSE OF THE FIVE,

17   MR. FRANKLIN WAS CLEARLY, I MEAN -- THAT WAS THE ONE CLEARLY

18   CLOSEST TO THE LINE.  THAT'S WHY SHE WAS NUMBER FIVE.

19            THE COURT:  WHO WAS THAT?

20            MR. WEINSTOCK:  MS. MORRIS.  I'LL WITHDRAW IT AND STRIKE

21   SOMEBODY ELSE.

22            THE COURT:  MS. MORRIS?

23            MR. WEINSTOCK:  YES.

24            THE COURT:  LET MISS MORRIS IN?  AND THAT WOULD TAKE OUT

25   MR. SMALLWOOD?

IN RE:  FEMA TRAILER        MORNING SESSION        CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

1           MR. WEINSTOCK:  OR I WOULD HAVE TO STRIKE SOMEBODY ELSE

2   OR I WOULD TAKE OUT MR. SMALLWOOD.

3           THE COURT:  I SAID THAT HE COULD USE A PEREMPTORY ON

4   HOOFKIN AND ELLIS WHEN WE REVIEWED THEM.  THAT'S THE GROUNDS FOR

5   A PEREMPTORY CHALLENGE.  YOU'RE SAYING THAT MR. FRANKLIN, YOU

6   WOULD HAVE MR. FRANKLIN, I'M SORRY, MS. MORRIS ON THE JURY?

7           MR. WEINSTOCK:  SURE.

8           THE COURT:  SO YOU WOULD WITHDRAW THE PEREMPTORY

9   CHALLENGE NUMBER FIVE?  SO MS. MORRIS WOULD BE ON THE JURY?

10           MR. WEINSTOCK:  CORRECT.

11           THE COURT:  AND WHAT WAS THE GROUNDS ON MR. FRANKLIN,

12   SIMPLY BECAUSE HIS WIFE PASSED AWAY?

13           MR. WEINSTOCK:  HIS WIFE PASSED WAY.

14           THE COURT:  DO WE KNOW HOW LONG IT'S BEEN SINCE HIS WIFE

15   PASSED AWAY?

16           MR. WEINSTOCK:  SHE JUST PASSED AWAY.

17           THE COURT:  MR. FRANKLIN, NUMBER 11, IF YOU COULD COME

18   FORWARD, PLEASE.

19             YOU INDICATED WHEN WE QUESTIONED THE GROUP THAT

20   YOUR WIFE HAD RECENTLY PASSED AWAY.

21           PROSPECTIVE JUROR 11:  YES.

22           THE COURT:  HOW LONG AGO WAS THAT?

23           PROSPECTIVE JUROR 11:  THIRTEEN MONTHS.

24           THE COURT:  THIRTEEN MONTHS AGO?

25           PROSPECTIVE JUROR 11:  YES.

Page 98

1           THE COURT:  IF YOU DON'T MIND ME ASKING, AND I KNOW IT'S

2    A PAINFUL THING FOR YOU PERHAPS STILL TO TALK ABOUT, DID SHE PASS

3    BECAUSE OF NATURAL CAUSES?

4           PROSPECTIVE JUROR 11:  SHE WAS SICK.

5           THE COURT:  SHE HAD AN ILLNESS?

6           PROSPECTIVE JUROR 11:  SCLERODERMA.

7           THE COURT:  SCLERODERMA?  IS THAT A TYPE OF CANCER?  I'M

8    NOT FAMILIAR WITH IT.

9           PROSPECTIVE JUROR 11:  IT'S NOT A CANCER, IT'S A RARE

10   DISEASE.

11          THE COURT:  A RARE DISEASE?

12          PROSPECTIVE JUROR 11:  YES.

13          THE COURT:  IF YOU WERE CHOSEN AS A JUROR IN THIS CASE,

14   DO YOU THINK THAT YOU COULD BE FAIR TO THE PARTIES AND HEAR THE

15   EVIDENCE IN THIS CASE, NOTWITHSTANDING THE CIRCUMSTANCES OF YOUR

16   WIFE'S PASSING?

17          PROSPECTIVE JUROR 11:  OF COURSE.

18          THE COURT:  YOU THINK THAT YOU COULD?

19          PROSPECTIVE JUROR 11:  YES.

20          THE COURT:  AND YOU UNDERSTAND THE CASE IS GOING TO BE

21   DECIDED ONLY ON THE EVIDENCE HERE, NOT OUT OF ANY KIND OF

22   SYMPATHY OR ANY OTHER TYPE OF FEELING TOWARDS THE PLAINTIFFS OR

23   THE DEFENDANTS IN THE CASE?

24          PROSPECTIVE JUROR 11:  JUROR YES, SIR.

25          THE COURT:  AND IF THE EVIDENCE ISN'T THERE, YOU HAVE TO

IN RE:  FEMA TRAILER         MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 99

 1    RULE FOR THE DEFENDANTS IF YOU ARE ON THE JURY.  AND IF, OF

 2    COURSE, THE EVIDENCE IS THERE, THEN OF COURSE YOU CAN FACTOR THAT

 3    EVIDENCE AND BASE A DECISION IN FAVOR OF THE PLAINTIFF BASED ONLY

 4    ON THE EVIDENCE.  DO YOU UNDERSTAND THAT?

 5            PROSPECTIVE JUROR 11:  YES, SIR.

 6            THE COURT:  COUNSEL, DO YOU HAVE ANY OTHER QUESTIONS FOR

 7    MR. FRANKLIN?

 8            MR. GLASS:  WAS SHE -- YOU SAID SHE WAS EXPOSED TO

 9    CHEMICALS IN YOUR HOUSE?

10            PROSPECTIVE JUROR 11:  NO, NO CHEMICALS.

11            MR. GLASS:  ON THE QUESTIONNAIRE, YOU SPOKE OF

12    CHEMICALS.

13            PROSPECTIVE JUROR 11:  EXCUSE ME?

14            THE COURT:  THE QUESTIONNAIRE.

15            MR. GLASS:  ON THE QUESTIONNAIRE, ON THE FORM YOU SAID

16    THAT YOU WERE EXPOSED TO CHEMICALS IN YOUR HOME?  WERE YOU

17    EXPOSED TO CHEMICALS IN YOUR HOME?

18            PROSPECTIVE JUROR 11:  NO, NO CHEMICALS.

19            THE COURT:  DO YOU HAVE ANY OTHER QUESTIONS WHILE WE'RE

20    GETTING THAT?  WHAT WAS ON THE QUESTIONNAIRE?  THERE WAS A

21    QUESTION ABOUT HIM INDICATING.

22            MR. GLASS:  BEING EXPOSED TO CHEMICALS.

23            THE COURT:  IN YOUR JOB WERE YOU EXPOSED TO ANY KIND OF

24    CHEMICALS OR ANY KIND OF INHALANTS?

25            PROSPECTIVE JUROR 11:  NO, I'M A CARPENTER, I WORK AT

IN RE:  FEMA TRAILER        MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 100

1    THE NEW ORLEANS FAIRGROUNDS.

2         THE COURT:  LET'S SEE WHAT THEY ARE REFERRING TO ON THE

3    QUESTIONNAIRE.

4         MR. GLASS:  HE ALSO INDICATED THAT HE HAS CONCERNS ABOUT

5    COMPANIES PUTTING PROFITS OVERT ETHICS AND TAKE SAFETY TESTING IN

6    THEIR PRODUCTS.  WHAT ARE THOSE CONCERNS?

7         THE COURT:  SHOW HIM THE QUESTIONS SO HE CAN REFRESH HIS

8    MEMORY.  THAT'S WHAT YOU'RE TALKING ABOUT.

9         MR. GLASS:  HAVE YOU EVER EXPERIENCED ANY OF THE

10   FOLLOWING PROBLEMS IN YOUR HOME?  CHEMICAL EXPOSURE.

11        PROSPECTIVE JUROR 11:  WELL, WHAT WE WERE STAYING FOR,

12   WE WERE STAYING ACROSS FROM CHALMETTE FERRY, AND THEY HAD

13   CHEMICALS, YOU KNOW, LIKE YOU SMELL IT.  YOU KNOW, COMING FROM ON

14   THE OTHER SIDE OF THE RIVER WHERE I WAS STAYING AT, WE WOULD

15   SMELL THAT ALL THE TIME.

16        MR. GLASS:  DO YOU THINK THAT HURT YOUR HEALTH OR YOUR

17   WIFE'S HEALTH?

18        PROSPECTIVE JUROR 11:  PROBABLY BECAUSE BEEN EXPOSED,

19   SIR, BECAUSE CERTAIN KIND OF WAY THE WIND BLOW, YOU CAN SMELL IT

20   COMING FROM CHALMETTE.

21        THE COURT:  OTHER THAN THE ODOR, HAVE YOU ANY REASON TO

22   BELIEVE THAT THAT SMELL HAD ANY IMPACT ON YOUR HEALTH OR THE

23   HEALTH OF YOUR WIFE?

24        PROSPECTIVE JUROR 11:  I DON'T THINK SO.

25        THE COURT:  NO ONE HAS EVER TOLD YOU THAT, A DOCTOR OR

IN RE:  FEMA TRAILER        MORNING SESSION              CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 101

1    ANYTHING?

2              PROSPECTIVE JUROR 11:  NO.

3              THE COURT:  WHAT WAS THE OTHER QUESTION?

4              MR. GLASS:  THE OTHER QUESTION WAS, PUTTING ETHICS ASIDE

5    SO COMPANIES CAN MAKE A PROFIT.  YOU SAY THAT SAFE TESTING OF

6    PRODUCTS WAS VERY INADEQUATE FOR COMPANIES IN AMERICA.  DO YOU,

7    IS IT YOUR BELIEF THAT MANUFACTURERS PUT PRODUCTS ON THE MARKET

8    WITHOUT TESTING THEM SAFELY OR ADEQUATELY?

9              PROSPECTIVE JUROR 11:  YEAH.

10             MR. GLASS:  THAT'S A PREFORMED OPINION THAT YOU HAVE,

11   THAT THESE PRODUCTS ARE NOT SAFE WHEN THEY GO ON THE MARKETPLACE?

12             PROSPECTIVE JUROR 11:  RIGHT.

13             MR. GLASS BECAUSE THE COMPANIES DON'T ADEQUATELY TEST

14   THEM?

15             PROSPECTIVE JUROR 11:  RIGHT.

16             MR. GLASS:  AND YOU'VE INDICATED TO THE JUDGE THAT YOU

17   CAN PUT THAT ASIDE WHEN YOU'VE ALREADY GOT THIS FORMED OPINION.

18   I'M TRYING TO RECONCILE THOSE TWO QUESTIONS.

19             PROSPECTIVE JUROR 11:  IT COULD GO EITHER WAY.  I COULD

20   LOOK AT IT EITHER WAY.

21             THE COURT:  MR. MEUNIER, DO YOU WANT TO ASK, I DON'T

22   KNOW IF YOU'RE FINISHED YET, MR. GLASS.  MR. MEUNIER.

23             MR. MEUNIER:  NO.

24             THE COURT:  DO YOU, MR. FRANKLIN, DO YOU UNDERSTAND, AND

25   I SAID THIS ALREADY SO I SOUND LIKE A BROKEN RECORD, BUT THERE IS

IN RE:  FEMA TRAILER        MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 102

1   GOING TO BE EVIDENCE IN THIS CASE AND WITNESSES AND TESTIMONY,

2   AND EVEN IF YOU GENERALLY THINK THAT COMPANIES ARE CONCERNED

3   ABOUT PROFITS, IF THEY HAVEN'T DONE ANYTHING WRONG IN THIS CASE,

4   AND I'M GOING TO READ THE LAW TO YOU, IF YOU FIND THAT THE FACTS

5   DON'T ESTABLISH THEY'VE DONE ANYTHING WRONG, THEY CANNOT BE HELD

6   LIABLE.  DO YOU UNDERSTAND THAT?

7           PROSPECTIVE JUROR 11:  YES, SIR.

8           THE COURT:  AND A COMPANY, JUST LIKE A PRIVATE

9   INDIVIDUAL, IF IT WASN'T GULF STREAM, IF IT WAS JOE BLOW OR A

10  PRIVATE INDIVIDUAL OR MS. ALEXANDER WASN'T A DEFENDANT IN THIS

11  CASE, THEY WOULD BE ENTITLED TO A FAIR TRIAL JUST LIKE THE

12  COMPANY.  DO YOU UNDERSTAND THAT?

13          PROSPECTIVE JUROR 11:  YES.

14          THE COURT:  DO YOU THINK YOU CAN TREAT THE DEFENDANTS IN

15  THIS CASE LIKE THAT?

16          PROSPECTIVE JUROR 11:  YES.

17          THE COURT:  YOU'RE NOT COMING INTO THIS CASE WITH THE

18  IDEA THAT THESE DEFENDANTS, BECAUSE THEY ARE COMPANIES, SOMEHOW

19  ARE GOING TO BE LIABLE IN THIS CASE?  DO YOU UNDERSTAND, DO YOU

20  THINK THAT?

21          PROSPECTIVE JUROR 11:  YES.

22          THE COURT:  YOU THINK YOU CAN BE FAIR TO THEM AND PUT

23  ASIDE ANY KIND OF FEELINGS TOWARDS THEM, THAT THEY ARE

24  RESPONSIBLE BEFORE THEY EVEN GET A CHANCE TO PUT ON ANY EVIDENCE?

25          PROSPECTIVE JUROR 11:  YES, SIR.

IN RE:  FEMA TRAILER        MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 103

1            THE COURT:  COUNSEL, ANYTHING FURTHER?

2            MR. WEINSTOCK:  NO.

3            MR. WATTS:  NOT WITH HIM, BUT I HAVE SOMETHING I NEED TO

4      PUT ON THE RECORD.

5            THE COURT:  THANK YOU, MR. FRANKLIN, YOU CAN RETURN TO

6      YOUR SEAT.

7                  ALL RIGHT, MR. WATTS.

8            MR. WATTS:  FIRST OF ALL, BEFORE I PUT THIS ON THE

9      RECORD, I NEED TO KNOW WHETHER OR NOT THEY ARE GOING TO REINSTATE

10     VOLUNTARILY THAT JUROR.

11           MR. WEINSTOCK:  YES.

12           MR. WATTS:  OKAY.  THEN I HAVE NO STATEMENT.

13           THE COURT:  SO WE WOULD HAVE, ON THE JURY, THEN, WE

14     WOULD HAVE MR. FRANKLIN?

15           MR. WEINSTOCK:  YES.  NOW, CAN I STILL USE MY PEREMPTORY

16     CHALLENGE THEN?

17           THE COURT:  YEAH.  WE WOULD HAVE MR. FRANKLIN AND WHAT

18     ABOUT --

19           MR. WEINSTOCK:  I'M SORRY, NOT MR. FRANKLIN.  NO.

20     MS. MORRIS.

21           MR. WATTS:  I DO HAVE AN OBJECTION TO BE MADE.

22           THE COURT:  MS. MORRIS ON THE JURY?

23           MR. WATTS:  MAY I MAKE THIS OBJECTION?  IF COUNSEL IS

24     NOT GOING TO VOLUNTARILY AGREE TO REINSTATE MR. FRANKLIN, WE

25     OBJECT TO THE ENTIRE LINE OF QUESTIONS AND ANSWERS THAT WERE JUST

IN RE:  FEMA TRAILER        MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 104

1    CONDUCTED.  THE BATSON CASE LAW DOES NOT ALLOW A POSTHOC

2    EXAMINATION AFTER STRIKES ARE BEING MADE TO TRY TO REHABILITATE A

3    BATSON CHALLENGE, AND WE OBJECT TO THAT.

4              WE REAFFIRM OUR BATSON OBJECTION AS TO MR. DAVIS,

5    AS TO ALL FIVE, AND I'VE GOT OTHER STATEMENTS TO MAKE, BUT I NEED

6    TO MAKE THIS SPECIFIC PROCEDURAL OBJECTION, THAT THE QUESTION AND

7    ANSWER TO TRY TO REHABILITATE A BATSON STRIKE TO COME UP WITH

8    OTHER RACE-NEUTRAL REASONS THAT WERE NOT STATED BY COUNSEL IS NOT

9    PERMITTED.

10              THE COURT:  I'M PUTTING MR. FRANKLIN ON.  I'M GOING TO

11   YOU TWO PEREMPTORIES, AND WE'RE GOING TO PUT MR. FRANKLIN AND

12   MS., WHO IS THE OTHER ONE, MS. MORRIS AND MR. FRANKLIN.

13              MR. GLASS:  JUST IN RESPONSE, I JUST WANT TO MAKE SURE

14   IT'S ON THE RECORD, WE STATED THE RACE-NEUTRAL REASON, THAT HE

15   WAS EXPOSED TO CHEMICALS BEFORE HE CAME UP HERE AND WAS

16   QUESTIONED.  WE STATED SEVERAL OTHER REASONS ABOUT HIS ETHICS AND

17   THE COMPANIES, WE CITED SPECIFICALLY TO HIS PLAINTIFF FACTS SHEET

18   BEFORE HE WAS QUESTIONED.  SO THERE WAS A RACE-NEUTRAL REASON.

19              MR. WATTS:  THE COURT HAS ALREADY RULED.

20              MR. WEINSTOCK:  LAST BUT NOT LEAST, I UNDERSTAND WHAT

21   YOU'RE SAYING.  I'M GLAD HE CAME UP HERE AND TOLD US MY WIFE

22   RECENTLY DIED 13 MONTHS AGO.  IT OBVIOUSLY STILL RESONATES WITH

23   HIM TO HAVE SAID IT THAT WAY.

24              MR. WATTS:  IN ANSWER TO A QUESTION OF WHEN DID YOUR

25   WIFE DIE, HE TOLD YOU WHEN.

IN RE:  FEMA TRAILER        MORNING SESSION            CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 105

1            MR. WEINSTOCK:  RECENTLY.

2            THE COURT:  HE SAID 13 MONTHS.

3            MR. WEINSTOCK:  HE SAID THAT UP HERE.  WHEN WE

4    CHALLENGED HIM, HE SAID MY WIFE RECENTLY DIED.  IT OBVIOUSLY

5    RESONATES VERY SERIOUSLY --

6            THE COURT:  LET ME ASK YOU THIS:  OTHER THAN MS. MORRIS,

7    IS THAT THE ONLY DEFENSE OFFERING WITH REGARD TO THE BATSON

8    CHALLENGE?

9            MR. WEINSTOCK:  YES, YOUR HONOR.

10           THE COURT:  IF WE CAN CURE THE CHALLENGE, THEN LET'S

11   CURE IT.  IF WE CAN'T, THEN I'LL GO AHEAD AND RULE ON IT AND DO

12   WHAT WE HAVE TO DO.  SO YOU WOULD PROPOSE THAT YOU WOULD TAKE,

13   YOU WOULD PUT MS. MORRIS ON THE JURY.

14           MR. WEINSTOCK:  CORRECT.

15           THE COURT:  AND THAT YOU WOULD EXERCISE A CHALLENGE ON

16   SOMEBODY ELSE.

17           MR. WEINSTOCK:  CORRECT.

18           THE COURT:  SOMEBODY OUT OF THE NINE THAT HAVE ALREADY

19   BEEN CHOSEN.

20           MR. WEINSTOCK:  CORRECT.

21           MR. WATTS:  I THINK I HEARD THE COURT SAY THAT NUMBER

22   NINE WAS GOING TO BE REINSTATED AND DESPITE HIS --

23           THE COURT:  THAT'S WHAT HE'S OFFERED.

24           MR. WATTS:  OKAY, SO HE'S OFFERED NUMBER NINE, WHICH

25   MAKES IT MOOT.

IN RE:  FEMA TRAILER        MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 106

1                AS TO NUMBER 11, WE REITERATE THE BATSON CHALLENGE.

2     WE DON'T THINK THAT THE HAPPENSTANCE OF SOMEBODY LOSING A WIFE

3     13 MONTHS AGO EXCUSES THE STATISTICAL DISPARITY.

4          THE COURT:  NO, IT WASN'T, IT WAS THE QUESTION TO THEIR

5     ANSWERS, WHICH I ASKED HIM ABOUT UP HERE.  I UNDERSTAND YOUR

6     ARGUMENT ABOUT REHABILITATING.  I WANTED TO KNOW --

7          MR. WATTS:  NO, I UNDERSTAND.  AND AS I UNDERSTAND THE

8     COURT'S RULING, YOU'RE GOING TO REINSTATE JUROR NUMBER 11.

9          THE COURT:  WELL, THAT'S WHAT WE'RE TALKING ABOUT RIGHT

10    NOW.  RIGHT NOW ALL I HAVE ON YOU IS THE MOTION, AND I'M TRYING

11    TO WORK WITH DEFENSE COUNSEL BECAUSE THEY SAID THAT THEY WOULD

12    LIFT THEIR PEREMPTORY CHALLENGE ON MS. MORRIS.

13         MR. WATTS:  CORRECT.

14         THE COURT:  SO I HAVEN'T RULED ON YOUR MOTION YET, AND I

15    HAVEN'T FASHIONED A REMEDY.  I WAS SUGGESTING THAT MR. FRANKLIN

16    COULD BE ADDED, AND IF THEY AGREED TO DO THAT, THEN THE MOTION

17    MIGHT BE MOOTED.  IF IT'S NOT MOOT, IT'S BEING PURSUED.

18         MR. GLASS:  AND, YOUR HONOR, I WOULD POINT OUT THAT MR.

19    WATTS HAS INDICATED THAT THE POTENTIAL JURORS THAT ARE OF ONE

20    RACE ARE 22 PERCENT.  BY CURING THIS, WE NOW HAVE 20 PERCENT,

21    WHICH IS THE EXACT MAKEUP IT SEEMS TO ME.

22         MR. WEINSTOCK:  NO.  YOU'VE GOT THE NUMBERS WRONG, BUT I

23    WANT TO ADDRESS THAT IN A DIFFERENT WAY.  I DON'T KNOW HOW HE

24    KNEW THAT 20 PERCENT OF THE POOL WAS AFRICAN-AMERICAN BECAUSE

25    IT'S NOT LISTED ANYWHERE HERE.

IN RE:  FEMA TRAILER        MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 107

 1            MR. WATTS:  NO, THE WAY I KNOW IS, I LOOKED AT THE 20

 2    JURORS THAT ARE AVAILABLE IN THE STRIKE POOL AND THERE ARE FIVE

 3    AFRICAN-AMERICANS.  AND SO CALL THAT 20.

 4            MR. WEINSTOCK:  OF THE ENTIRE POOL.  I JUST WAS SHOCKED

 5    HOW YOU KNEW THAT.

 6            MR. WATTS:  JUDGE, LET ME JUST GET THIS ON THE RECORD,

 7    BECAUSE, I MEAN, I'VE GOT A JOB TO DO AND YOU'VE GOT A JOB TO DO.

 8    THERE IS A U.S. SUPREME COURT CASE AFTER BATSON, IT'S THE

 9    MILLER-EL II CASE.  IT'S MILLER-EL V DRETKE, 545 U.S. 231.  IT'S

10    AT 125 S.CT. 2317.  IT'S KNOWN AS THE MILLER-EL II CASE, WHERE

11    THE U.S. SUPREME COURT IN APPLYING BATSON SAID IT'S NOT GOOD

12    ENOUGH FOR SOMEBODY TO STRIKE.  IN THAT CASE IT WAS 92 PERCENT OF

13    THE AVAILABLE AFRICAN-AMERICANS, AND SAY, I'M COMING UP WITH A

14    RACE-NEUTRAL REASON.  THAT'S WHAT HAPPENED IN BATSON FOR

15    20 YEARS.

16            IN 2005, THE SUPREME COURT OF THE UNITED STATES

17    SAID YOU HAVE TO USE AT LEAST A FIVE-STEP ANALYSIS.  NUMBER ONE,

18    IN MILLER-EL II IS A STATISTICAL ANALYSIS OF THE JURORS STRUCK.

19    IN MILLER-EL II, THE U.S. SUPREME COURT NOTED THAT THE

20    PROSECUTORS USE PEREMPTORY CHALLENGES TO EXCLUDE 91 PERCENT OF

21    THE ELIGIBLE AFRICAN-AMERICAN VENIRE MEMBERS, AND THEY CALL THAT

22    PERCENTAGE TOO GREAT TO ATTRIBUTE MERELY TO, QUOTE, HAPPENSTANCE.

23    HERE, THESE GENTLEMEN STRUCK 100 PERCENT.

24            THE SECOND STANDARD IS A COMPARATIVE JUROR

25    ANALYSIS.  AND WHAT THEY SAY IS THAT IN ADDITION TO LOOKING AT

IN RE:  FEMA TRAILER        MORNING SESSION           CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 108

1    STATISTICS ARE SIDE-BY-SIDE COMPARISONS WITH BLACK VENIRE PANEL

2    MEMBERS VERSUS WHITE VENIRE PANEL MEMBERS WHO ARE ALLOWED TO

3    SERVE IN THAT SITUATION.

4              WE OFFER, AS PART OF THIS BATSON RECORD, THE

5    QUESTIONNAIRES OF ALL 30 OF THE JURORS WHO ARE IN THE STRIKE

6    RANGE, AND WE WOULD ASK THAT THAT BE ADMITTED AT THIS TIME FOR

7    PURPOSE OF THE RECORD.

8              MR. WEINSTOCK:  YOUR HONOR, I HOPE --

9              MR. WATTS:  HOLD ON.  IS THAT ADMITTED, JUDGE?

10             THE COURT:  YES.

11             MR. WATTS:  THIRD, IN THAT CASE, UNDER TEXAS PROCEDURE

12   THEY USED THE JURY SHUFFLE, I DON'T THINK THAT'S APPLICABLE HERE.

13             NUMBER FOUR, THEY NOTED IN THE FOURTH FACTOR THAT

14   THE, THAT THERE WERE CONTRASTING VOIR DIRE QUESTIONS FOR

15   SPECIFICALLY THE BLACK AND NONBLACK PANEL MEMBERS, AND ALTHOUGH

16   THE COURT DID THE VOIR DIRE, AND WE'RE NOT OBJECTING TO THE WAY

17   YOU CONDUCTED THE VOIR DIRE, I DO NOTE THAT WITH RESPECT TO

18   PEOPLE THAT WERE CALLED UP HERE, WHILE AFRICAN-AMERICANS WERE

19   ONLY FIVE OF THE 21 AVAILABLE, THEY CALLED HALF OF THE

20   AFRICAN-AMERICANS UP HERE IN ORDER TO CREATE A RACE-NEUTRAL

21   REASON THAT THEY COULD PUT ON THE RECORD.  AND WE THINK THAT THAT

22   RELATES TO THAT.

23             FINALLY, YOUR HONOR, IF THE COURT, AND I WILL GRANT

24   THAT AS PART OF THEIR EFFORT TO CALL TWO AFRICAN-AMERICANS UP

25   HERE AMONG THE PEOPLE THAT THEY CALLED UP, AND THIS IS IN THE

IN RE:  FEMA TRAILER          MORNING SESSION          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 109

1   RECORD, THAT THEY ATTEMPTED TO CREATE RACE NEUTRAL REASONS WITH

2   RESPECT TO JUROR NUMBER 16 AND JUROR NUMBER 20.  NOW, I DON'T

3   THINK THAT GETS THEM AROUND MILLER-EL II.  I THINK THAT THERE ARE

4   RACE NEUTRAL REASONS THAT THEY STATED IN THE RECORD, BUT I DON'T

5   THINK THAT GETS AROUND THE ANALYSIS OF MILLER-EL II.

6           WITH RESPECT TO JUROR NUMBER 19, SHE WAS NOT CALLED

7   UP.  THERE WERE NO RACE NEUTRAL REASONS CREATED, AND SO WE'RE

8   BACK TO WHAT THE SUPREME COURT OF THE UNITED STATES SAID IN

9   MILLER-EL II, THAT YOU HAVE LAWYERS WHO STATISTICALLY STRUCK AN

10  OVERWHELMINGLY LARGE PERCENTAGE OF AFRICAN-AMERICANS AND THEN

11  THEY COME UP AND PUT INTO THE RECORD A SUPPOSED RACE-NEUTRAL

12  REASON, AND I THINK THAT'S THE STATE OF THE RECORD HERE.

13          SO WE OBJECT ON THE GROUNDS OF BATSON AND MILLER-EL

14  II TO THE ENTIRE STRIKE OF 16, 20, 19, 11 AND 9.  WE GRANT FOR

15  THE PURPOSES OF THE RECORD THAT IN THE COURSE OF THEIR PORTION OF

16  THE VOIR DIRE WHEN THEY WERE ABLE TO CALL PEOPLE UP, THAT THEY,

17  YOU KNOW, AT LEAST TALKED THE COURT INTO THE EXISTENCE OF A

18  RACE-NEUTRAL REASON WITH RESPECT TO 16 AND 20.  NO SUCH RACE

19  NEUTRAL REASONS WERE STATED WITH RESPECT TO 19, 11 AND 9, AND WE

20  WOULD MOVE THE COURT TO REINSTATE 19, 11 AND 9 AT THE VERY LEAST

21  WITHOUT WITHDRAWING OUR MOTION TO REINSTATE ALL FIVE OF THEM

22  BECAUSE I DON'T THINK THAT A LAWYER CALLING UP TWO

23  AFRICAN-AMERICANS IN A PANEL LIKE THIS IN A CASE WITH

24  AFRICAN-AMERICAN PLAINTIFFS AND ACHIEVING (SPELLED PHONETICALLY)

25  A SINGLE RACE-NEUTRAL REASON THAT YOU CAN QUOTE VERBATIM ON THE

IN RE:  FEMA TRAILER       MORNING SESSION         CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 110

1    RECORD GETS THEM THERE.

2           THE COURT:  WHO ELSE?

3           MR. WEINSTOCK:  YOUR HONOR, IF I COULD ADDRESS A COUPLE

4    THINGS.  FIRST OF ALL, WHEN I PUT MY WIRELESS CARD IN AND DO SOME

5    RESEARCH, YOUR HONOR, I JUST WANT TO POINT OUT THAT THESE ARE MY

6    NOTES LONG BEFORE ANYBODY WALKED INTO THIS COURTROOM.

7           NUMBER 19, I HAD ENOUGH AND THE JURY CONSULTANT HAD

8    ENOUGH AND FLUOR HAD ENOUGH.  I DIDN'T SEE A REASON TO ASK YOU TO

9    BRING HER UP HERE FOR CAUSE LONG BEFORE I LAID EYES ON HER AND

10   KNEW WHAT COLOR HER SKIN WAS.  WE HAD MADE A DECISION THAT SHE

11   WAS NOT THE JUROR FOR US.  AND THAT'S THE POINT HERE.

12          THERE WERE A COUPLE OF JURORS THAT WE WERE

13   REQUESTING ABOUT, TWO OF THEM SPECIFICALLY THAT WE ASKED YOU TO

14   BRING UP BECAUSE THEY SAID THINGS IN THEIR QUESTIONNAIRE WE

15   WANTED TO KNOW MORE ABOUT, THINGS LIKE FRIENDS AND RELATIVES IN

16   TRAILERS.  I DID NOT BRING UP EVERY AFRICAN-AMERICAN JUROR TO

17   FIND A RACE NEUTRAL OPINION FOR THEM.  THAT WAS NOT EVEN REMOTELY

18   PART OF OUR QUESTION.

19          THE COURT:  WHO ELSE OUT OF THE TOP 30?  WE HAVE

20   MR. BACCHUS, AND ARE THERE ANY OTHER AFRICAN-AMERICANS IN THE

21   TOP --

22          MR. WATTS:  29.

23          THE COURT:  29.  MS. HAMILTON.  MR. BACCHUS AND

24   MS. HAMILTON.  HERE IS WHAT I WOULD PROPOSE TO DO:  NUMBER ONE,

25   RETURN A CHALLENGE TO THE DEFENDANTS AND PUT MS. MORRIS ON THE

IN RE:  FEMA TRAILER        MORNING SESSION              CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 111

1    JURY AS DEFENDANTS HAVE OFFERED.  NUMBER TWO WOULD BE TO RETURN A

2    SECOND CHALLENGE TO THE DEFENDANTS AND PUT ON EITHER MR. BACCHUS

3    OR MS. HAMILTON ONTO THE JURY.

4          MR. WEINSTOCK:  AND IF I CAN CONSULT WITH MY GROUP,

5    BEFORE MR. FRANKLIN.

6          THE COURT:  WHY DON'T YOU PICK BETWEEN ONE OF THOSE TWO

7    SINCE YOU'RE ALREADY --

8          MR. WEINSTOCK:  WHAT ABOUT --

9          THE COURT:  OR MR. FRANKLIN.

10         MR. WEINSTOCK:  OR MR. FRANKLIN.

11         THE COURT:  OR MR. FRANKLIN.  YOU HAVE THREE CHOICES.

12   AND I WILL RETURN TWO CHALLENGES TO YOU.  THAT'S WHAT I PROPOSED

13   TO DO THE REMEDY.

14         MR. WATTS:  JUST FOR THE RECORD, WHAT ARE THOSE THREE

15   OPTIONS THAT YOU GAVE HIM?  I'M SORRY, JUDGE.  THE JUROR NUMBERS,

16   I'M SORRY.

17         THE COURT:  NO, I TOLD HIM THAT THEY CAN CHOOSE BETWEEN

18   MS. MORRIS IS GOING TO BE ON THE JURY, AND THEY WILL GET A

19   CHALLENGE BACK.  THEY WILL GET ANOTHER CHALLENGE BACK, BUT THEY

20   WILL CHOOSE BETWEEN MR. FRANKLIN, MR. BACCHUS AND MS. HAMILTON.

21         MR. WATTS:  AND JUROR NUMBER 11 IS MR. FRANKLIN.

22         THE COURT:  YES.

23         MR. WATTS:  MR. ABOUT BACCHUS IS.

24         THE COURT:  BACCHUS IS 26 AND HAMILTON IS 29.

25         MR. MEUNIER:  SO WE MUST EXERCISE THAT PEREMPTORY WITH

IN RE:  FEMA TRAILER          MORNING SESSION              CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

Page 112

1    ONE OF THOSE THREE?

2           THE COURT:  NO, ONE OF THOSE THREE WILL BE ON THE JURY,

3    AND THEY WILL ONLY HAVE TWO PEREMPTORIES TO EXERCISE AS TO ALL

4    OTHERS ON THE JURY.

5           MR. WEINSTOCK:  WE WILL SEAT MR. BACCHUS.

6           THE COURT:  MR. BACCHUS.

7           MR. WEINSTOCK:  AND IF YOU'LL GIVE ME ONE MORE MINUTE,

8    I'LL TELL YOU WHO WE WANT --

9           THE COURT:  EXERCISE TWO.

10          MR. WEINSTOCK:  4 AND 13.

11          THE COURT:  4 IS OFF.  AND 13 IS OFF.

12          THE DEPUTY CLERK:  THOSE ARE DEFENDANTS' CHALLENGES,

13   JUDGE.

14          THE COURT:  YES.

15          THE DEPUTY CLERK:  WHICH NUMBERS?

16          THE COURT:  THAT'S NUMBER 4 AND NUMBER 13.  WHICH MEANS

17   THAT MR. NAQUIN, HERE IS THE JURY, HERE'S THE JURY, ALL RIGHT.

18   EVERYBODY LISTEN UP.  LISTEN UP.  1, 2, 3, 7, 8, 9, 15, 21, AND

19   26.

20          MR. GLASS:  MR. WATTS, I'D JUST LIKE TO SAY FOR NEVER

21   HAVING DONE A BATSON CHALLENGE, THAT WAS REALLY WELL DONE THE ON

22   THE FLY.

23          MR. WATTS:  WELL, ACTUALLY I WROTE A PAPER ABOUT IT LAST

24   YEAR WHEN THE MILLER-EL DECISION CAME OUT AND WAS REAFFIRMED BY

25   THE TEXAS SUPREME COURT.

IN RE:  FEMA TRAILER        MORNING SESSION         CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

                                                                Page 113

 1              MR. GLASS:  I JUST THINK IT WAS VERY WELL DONE.

 2              THE COURT:  IT'S VERY IMPORTANT.

 3                   AND LET'S GO AHEAD AND RETURN TO YOUR TABLES, AND

 4       I'M GOING TO SEAT THIS JURY.  GO AHEAD, MR. WATTS.

 5              MR. WATTS:  JUST VERY BRIEFLY.  YOUR HONOR,

 6       RESPECTFULLY, WE UNDERSTAND THE COURT'S RULING.  WE, AGAIN, FOR

 7       THE RECORD OBJECT TO THE EXCLUSION OF JUROR NUMBER 16, JUROR

 8       NUMBER 20, JUROR NUMBER 19 AND JUROR NUMBER 11 UNDER THE BATSON

 9       AND THE MILLER-EL II DECISIONS.  WE UNDERSTAND THAT THE COURT HAS

10       ATTEMPTED TO FASHION A REMEDY, BUT WE OBJECT TO THAT REMEDY AS

11       BEING INSUFFICIENT AND NOT UNDOING THE DAMAGE CAUSED BY THE

12       DEFENDANTS WHOLESALE EXCLUSION OF FIVE OUT OF FIVE

13       AFRICAN-AMERICANS, AND WE DON'T THINK THAT GIVING US BACK ONE OR

14       TWO FIXES IT, BUT THAT'S MY OBJECTION, BUT THANK YOU, YOUR HONOR.

15              MR. WEINSTOCK:  AND, YOUR HONOR, AT THIS TIME, I'D LIKE

16       TO MAKE OUR BATSON CHALLENGE.

17              THE COURT:  LET ME ALSO MAKE A RECORD STATING THAT THERE

18       WERE RACE NEUTRAL REASONS CITED FOR ALL FIVE OF THE INDIVIDUALS,

19       AND WHILE THE COURT CAN CERTAINLY SECOND GUESS THOSE RACE NEUTRAL

20       REASONS THAT WERE OFFERED, CERTAINLY THE FIRST THREE AT A MINIMUM

21       WERE EXCUSED FOR RACE NEUTRAL REASONS.

22                   PRETTY CLEARLY TO ME, THE OTHERS IN AN ATTEMPT TO

23       CURE A DEFECT TO THE EXTENT AND I'M NOT BE FINDING ANY BAD FAITH

24       USE OF A PEREMPTORY CHALLENGE IN THIS CASE, BUT IN ORDER TO

25       FASHION A REMEDY IN THIS CASE, THE DEFENDANTS THEMSELVES OFFERED

IN RE:  FEMA TRAILER          MORNING SESSION            CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION

                                                              Page 114

 1    WITH REGARD TO MS. MORRIS, THE COURT HAS ACCEPTED THAT.  SHE WILL

 2    BE RETURNED TO THE JURY, AND THEN I THINK THAT THE REMEDY THAT

 3    I'LL FASHION TO THE EXTENT THAT THE JURY SELECTION PROCESS HAS

 4    BEEN ALLEGED BY PLAINTIFFS TO HAVE BEEN RACE MOTIVATED IN TERMS

 5    OF CHALLENGES, I THINK THE INCLUSION OF THE NINTH JUROR REMEDIES

 6    THAT AND THAT THE OTHER JURORS WHO HAVE BEEN EXCUSED HAVE BEEN

 7    EXCUSED FOR RACE NEUTRAL REASONS, SO I NOTE YOUR OBJECTION.

 8            MR. WATTS:  THANK YOU, YOUR HONOR.

 9            THE COURT:  IF I CALL YOUR NAME, PLEASE RISE AND I'LL

10    FIND A PLACE FOR YOU TO SIT HERE SOMEPLACE ELSE BESIDES THE JURY

11    BOX.  IF YOU WOULD, PLEASE RISE AND MAYBE YOU CAN STAND IN THE

12    AISLE I'LL OR SLIDE OVER A LITTLE BIT.  I NEED YOU TO REMOVE

13    YOURSELF FROM THE JURY BOX.  NUMBER FOUR, MR. ST. ROMAIN, THANK

14    YOU.  NUMBER FIVE, MR. HYMEL, THANK YOU.  NUMBER SIX,

15    MS. CHARBONNET.  I'M SORRY, NUMBER SIX IS NOT HERE.  NUMBER

16    SEVEN, I'M SORRY, MR. NAQUIN, STAY THERE.  MR. DEMPSEY, NUMBER

17    10.  MR. FRANKLIN, NUMBER 11.  MS. AUCOIN, NUMBER 12,

18    MR. VICKNAIR, NUMBER 13, AND MR. STRICKER, NUMBER 14,

19    MS. HOOFKIN, NUMBER 16, MR. DUPRE, NUMBER 17, NO, MR. DUPRE,

20    THAT'S ALL RIGHT, MR. DUPRE, YOU'RE FINE.  STAY WHERE YOU ARE.  I

21    OVERSHOT THE NUMBERS.

22            WHAT I WOULD LIKE TO DO, THEN, ON THE FRONT ROW

23    THEN, MR. NAQUIN AND MS. BOURG, IF YOU ALL WOULD SLIDE OVER TWO

24    SEATS, PLEASE, SO THAT YOU'RE SITTING NEXT TO MR. WETZEL.  ALL

25    RIGHT.  THANK YOU.