**DIV. K**
JUDGE
ELLEN S. KOVACH

RECEIVED SEP 25 2009

TWENTY-FOURTH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO.: 677847 

DIVISION

Yvette Tumminello

versus

Gulfstream Coach, Inc. and Shaw Environmental, Inc.

FILED: _____    _____
                                   DEPUTY CLERK

### PETITION FOR DAMAGES

THE PETITION of Yvette Tumminello, a person of full age of majority and a resident of and domiciled in Harris County, Texas, (hereinafter, "Plaintiff"), through undersigned counsel, respectfully represents that:

I.

Made Defendants are:

A. Gulfstream Coach, Inc., a corporation organized under the laws of the State of Indiana, which conducts business in the State of Louisiana and within the jurisdiction of this Honorable Court;

B. Shaw Environmental, Inc., hereinafter, "Shaw", is a corporation organized under the laws of the State of Louisiana with its principle place of business in the State of Louisiana, and is authorized to do and doing business in the State of Louisiana and within the jurisdiction of this Honorable Court;

II.

Venue is proper in Jefferson Parish as it is the parish because it is the parish where the plaintiff's injuries occurred.

III.

At all pertinent times hereto, Gulfstream Coach, Inc. was engaged by the Federal Emergency Management Agency, hereinafter "FEMA", to sell temporary housing units for provision to the Plaintiffs as temporary housing following Hurricane Katrina.

1

IV.

On information and belief, Gulfstream Coach, Inc. expedited production of these housing units, and, on information and belief, resorted to using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing units occupied by Plaintiff containing higher than normal levels of formaldehyde.

V.

On information and belief, the housing unit of Plaintiff, including those units which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, deviated from Government specifications pertaining to the safety of the unit as a residence.

VI.

Plaintiff submits that each and all of the housing units which are at issue herein, both those which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, did not conform to any Government-imposed specifications which addressed the design and/or construction of the housing units pertinent to formaldehyde levels.

VII.

Plaintiff submits that each of the housing units at issue, both those which were manufactured prior to the hurricanes and those later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to Gulfstream Coach, Inc.'s use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, but that Gulfstream Coach, Inc. failed to warn the Federal Government about these dangers, which initially were not known to the Federal Government.

VIII.

Plaintiff submits that Gulfstream Coach, Inc. ignored, or concealed and/or condoned the concealment of, the fact that each and all of the housing units at issue contained dangerous levels of formaldehyde due to Gulfstream Coach, Inc.'s use of certain materials in their construction,

and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, all in order to sell Gulfstream Coach, Inc.'s products, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions.

IX.

Plaintiff spent significant time in the FEMA-provided housing unit manufactured by Gulfstream Coach, Inc. and provided to Plaintiff by the Federal Government. As a result, the Plaintiff unwittingly was exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing units.

X.

Gulfstream Coach, Inc. knew or should have known of the health hazards inherent in the products it constructed, by familiarity with industry standards and published medical studies.

XI.

At all pertinent times hereto, Shaw, was engaged by FEMA through a no-bid contract, with the transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units.

XII.

Under the terms of its contract, Shaw was obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and indicated by the manufacturers of same. Further, under their no-bid contracts with FEMA, Shaw was obligated to advise and instruct FEMA regarding the implementation of those contracts. Upon information and belief Shaw failed to properly fulfill either of these tasks.

XIII.

Shaw contracted with FEMA to pick-up and transport the temporary housing units from FEMA-controlled staging areas and deliver them to areas which Shaw was tasked with operating. These new areas included staging areas to be managed and maintained as assigned to one of

3

Shaw or individual locations and addresses where Shaw assigned that temporary housing unit would have obligations to manage and maintain it.

XIV.

To accomplish tits contractual obligation with FEMA, in addition to the use of subsidiary companies, Shaw entered into numerous sub-contracts, but at all times retained supervisory capacity and responsibility under its individual contract with FEMA.

XV.

Shaw was tasked under its contract with FEMA to identify and prepare the infrastructure for the various group site locations. This included, amongst other things, ensuring there would be adequate water, sewage, electricity, etc. Shaw knew or should have known that these preparations were for long-term occupancy of the temporary housing units.

XVI.

Once the temporary housing units occupied by the plaintiff was transported and delivered to a particular location, Shaw had the responsibility for installing that temporary housing unit. Shaw installed the temporary housing units by "blocking" the unit. This meant raising the plaintiffs' units several feet into the air and off of its wheel base, and setting it on concrete blocks.

XVII.

By blocking the temporary housing unit of plaintiff, Shaw created stress and flexing on the frames of the unit as it were not designed to be lifted off of the wheel base. In fact, the manufacturers of the temporary housing units warned in the various owners' manuals provided with the units, that units should not be jacked so that the vehicle's weight is no longer supported by the wheels.

XVIII.

The stress and flexing of temporary housing units' frames caused by Shaw "blocking" them with weight off of the wheels created distortion in the travel trailer's shell allowing increased moisture intrusion which contributed to increased formaldehyde exposures.

XIX.

The temporary housing unit occupied by the plaintiff which was provided by FEMA was for the most part a travel trailer. The travel trailers are, by definition, mobile. They are designed for and intended for periodic, recreational use and not for long-term habitation. By installing the

4

travel trailers on concrete blocks for extended occupancy, Shaw knowingly and intentionally modified the design and the actual use of these units occupied by the plaintiffs by converting them into a temporary housing unit to be used as a residence for long term occupancy in some instances exceeding 18 months.

XX.

Shaw failed to consult with the manufacturers of the temporary housing units, including Gulfstream Coach, Inc., with regard to the installation, warnings, warranty issues or advisability of using travel trailers for long term residence and occupation. Shaw took actions which voided the warranties of the manufacturers and directly created or contributed to unsafe and hazardous living conditions in the temporary housing units.

XXI.

Once Shaw had completed the transportation, delivery and installation of the temporary housing unit occupied by the plaintiff, Shaw was tasked with inspecting the unit to ensure that it was safe and habitable, prior to occupancy by the plaintiff. Upon information and belief, Shaw failed to adequately inspect the temporary housing unit occupied by the plaintiff to ensure that the unit was safe and suitable for its intended use – the long-term occupancy by individuals and families displaced by hurricanes Karina and Rita. This failure to properly inspect the unit for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by hurricane victims.

XXII.

In addition to transportation, site identification, installation and inspection, the temporary housing unit occupied by the plaintiff provided in response to hurricanes Katrina and Rita was also managed, maintained and repaired by Shaw, or their various subcontractors over whom they maintained direct oversight and responsibility. Upon information and belief, Shaw failed to adequately manage, maintain and repair the temporary housing unit which enabled and contributed to the unsafe and hazardous conditions that led to adverse health effects to the plaintiff.

XXIII.

Parallel to their duty to manage, maintain and repair each temporary housing unit, Shaw failed to undertake appropriate action, maintenance or repair in response to numerous complaints

5

made by the plaintiff-occupant(s) of the temporary housing units to various adverse health effects caused by exposure to elevated levels of formaldehyde.

XXIV.

Following the plaintiff's occupancy of the temporary housing unit, Shaw was tasked with its de-installation. Upon discovering the deteriorated condition of the temporary housing unit at the time of de-installation and removal, Shaw failed to identify the unsuitability of the temporary housing units for long-term occupancy.

XXV.

In addition to de-installation of the temporary housing units, Shaw was tasked with refurbishment and restoration of the temporary housing units for use, either in direct response to hurricanes Katrina and Rita or for use in the future. By restoring and refurbishing these temporary housing units, Shaw warranted that the units were fit for their intended use, long term occupancy in response to disaster related displacement. By restoring and refurbishing these temporary housing units, Shaw created and perpetuated existing hazardous conditions which would foreseeably lead to adverse health effects caused by the elevated levels of formaldehyde in the temporary housing units. Further, in thousands of cases, following the restoration and refurbishment, these temporary housing units were immediately occupied by new individuals or families displaced by hurricanes Katrina and Rita, and who were then directly exposed to hazardous levels of formaldehyde.

XXVI.

Shaw, at every stage of their involvement, failed to warn the plaintiff of each temporary housing unit of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde – a known human carcinogen – which led directly to adverse health effects, including but not limited to the advent of childhood asthma and the onset of adult asthma in some of the plaintiffs.

XXVII.

Through their actions and omissions, Shaw created and perpetuated a situation wherein occupants of the temporary housing units were exposed to elevated levels of formaldehyde and, as a result, suffered adverse health effects. Shaw negligently failed to adhere to the manufacturer instructions and warnings related to: (1) the manufacturers' intended (short-term) use of the temporary housing units; (2) the installation and set-up of the temporary housing units; and (3)

the warning that the temporary housing units contained urea formaldehyde resin which would release formaldehyde gas directly into the intended living space.

XXVIII.

Shaw failed to warn the occupants of temporary housing units of the hazardous conditions created by the elevated levels of formaldehyde in the temporary housing units.

XXIX.

By restoring and refurbishing the trailer for future habitation, Shaw improperly and negligently warranted that the units were fit for the intended use of long-term occupancy.

XXX.

As a result of the foregoing, Plaintiff was caused to sustain injuries including, but not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven.

XXXI.

Plaintiff's injuries and resulting damages were proximately caused by the fault of Defendants and their officers, agents, employees, and those for whom they are legally responsible.

XXXII.

Gulfstream Coach, Inc., under all applicable laws, including but not limited to, the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, *et seq.*, is strictly liable unto Plaintiff for all injuries and damages for designing, manufacturing, distributing and/or selling of temporary housing units described above, that were defective, unsafe, and unreasonably dangerous in design, composition, manufacture, and/or construction and/or due to its lack of and/or inadequate warnings and due to its non-conformity to the express warranties of fitness of said product.

XXXIII.

Furthermore, Shaw, under all applicable laws, including but not limited to, the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, *et seq.*, is strictly liable unto Plaintiff for all injuries and damages for designing, manufacturing, constructing, assembling, distributing, and/or

refurbishing of the residential housing as described above, that were defective, unsafe, and unreasonably dangerous in design, composition, manufacture, and/or construction and/or due to its lack of and/or inadequate warnings and due to its non-conformity to the express warranties of fitness of said product.

### XXXIV.

Plaintiff asserts her claims against both Gulfstream Coach, Inc. and Shaw under the laws of the State of Louisiana and under any other state and federal statutes which may be applicable.

### XXXV.

Plaintiff is entitled to a trial by jury.

WHEREFORE, Plaintiff, Yvette Tumminello, prays that Gulfstream Coach, Inc., and Shaw Environmental, Inc., be served with a copy of this Petition for Damages and that after due proceedings are had, Plaintiff prays for judgment in her favor and against Defendants, Gulfstream Coach, Inc., and Shaw, in an amount reasonable under the premises, together with legal interest thereon from the date of judicial demand, and for all costs of these proceedings, and for all appropriate legal and equitable relief, and for trial by jury.

Respectfully submitted,

The Andry Law Firm, LLC

By: _____
Jonathan B. Andry (#20081)
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: 504-586-8899
Facsimile: 504-586-8933
ATTORNEYS FOR PLAINTIFFS

**PLEASE SERVE:**

GULF STREAM COACH, INC.
Through its Agent for Service of Process:
KENNETH C BRINKER
503 South Oakland
NAPPANEE, IN 46550

PREPARE FOR SERVICE VIA
LOUISIANA LONG ARM STATUTE

Shaw Environmental, Inc.
Through its Agent for Service of Process
CT Corporation
5616 Corporate Blvd.
Suite 400B
Baton Rouge, LA 70808

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE

_____
DEPUTY CLERK
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, LA.