UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE<br>PRODUCTS LIABILITY LITIGATION | MDL NO. 1873 |
| | SECTION N(5) |
| | JUDGE ENGELHARDT |
| | MAGISTRATE CHASEZ |

THIS DOCUMENT RELATES TO:
Anthony Bartel v. Gulf Stream Coach, Inc, et al, No.: 09-03943
and
Leslie Kujawa, et al v. Keystone RV Company and Bechtel National, Inc., No.: 09-03944

........................................................................

## MEMORANDUM IN SUPPORT OF BECHTEL NATIONAL, INC'S MOTION TO CERTIFY THE COURT'S OCT. 1, 2009 ORDER FOR INTERLOCUTORY REVIEW

Bechtel National, Inc. ("Bechtel"), pursuant to 28 U.S.C. § 1292(b), hereby moves the Court to certify the Court's October 1, 2009 Order and Reasons ("Order") (Rec. Doc. 4366) for interlocutory review. The Order involved two controlling legal issues: (1) the interpretation of the Government contract's specifications and the application of the government contractor defense to those specifications; and (2) the implicit determination that Plaintiffs' allegations satisfied the test set forth in *Iqbal v. Ashcroft* for a motion to dismiss. Respectfully, Bechtel contends that at a minimum there exists substantial ground for a difference of opinion as to how to resolve these two controlling legal issues. Because each could be dispositive, immediate appellate review would materially advance the ultimate termination of the litigation.

### I. PROCEDURAL HISTORY

On August 24, 2009, Bechtel filed a motion to dismiss under Rule 12(b)(6), asserting that the government contractor defense barred Plaintiffs' claims and that Plaintiffs had not met the *Iqbal* test. (Rec. Doc. 2796-3). The Court resolved Bechtel's Rule 12(b)(6) motion in a concise Order and Reasons issued on October 1, 2009. ("the Order") (Rec. Doc. 4366). The Order

dismissed Plaintiffs' claims related to Bechtel's inspection and maintenance of emergency housing units, but denied the motion to dismiss in all other respects. *Id.* at 3.

Although the Order found "the Government gave Bechtel (and the other IA-TAC contractors) detailed specifications on the EHU 'blocking' procedure," the Order held Bechtel could not satisfy the defense's first condition. *Id.* at 2. The Order noted that "there are likely many different ways to go about lifting the EHU from the ground to the concrete blocks and many different tools, machines and mechanisms that can be utilized to accomplish this – some likely better than others." *Id.* Although the Order acknowledged that "reasonably precise specifications" does not mean "exactly precise specifications," the Order held that "a crucial part of the blocking process was left entirely to the discretion of Bechtel (i.e., how to raise the EHU off the ground onto the concrete blocks)." *Id.* Because Plaintiffs alleged, "this specific process . . . caused or substantially contributed to" their damages, the Order held "the government contractor defense seemingly is unavailable to Bechtel with regard to Plaintiffs' claims of improper installation." *Id.*

## II.     LAW AND ARGUMENT

The Court should certify its October 1, 2009 Order (Rec. Doc. 4366) for immediate interlocutory review. Section 1292(b) provides for certification of an interlocutory order when three conditions are satisfied: (i) the order involves a "controlling question of law," (ii) as to which there is "substantial ground for difference of opinion," and (iii) an "immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also In re: FEMA Trailer Formaldehyde Prods. Liab. Litig.*, MDL No. 07-1873, Rec. Doc. 2122 (July 13, 2009) (certifying for immediate appeal the granting of a motion to dismiss); *Hartz v. Adm'rs of Tulane Educ. Fund*, Civ. A. No. 06-2977, 2007 WL 1232211, at *2 (E.D. La. April 25, 2007) (certifying for immediate appeal the denial of a motion to dismiss).

Orders that resolve motions to dismiss based on purely legal questions, such as the interpretation of a contract or an affirmative defense, are particularly well suited for an appellate court to review on interlocutory appeal. *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 900 (5th Cir. 2005) (reviewing on interlocutory appeal the denial of a motion to dismiss based on purely legal question arising from an arbitration clause in a contract); *United States, ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 652 (5th Cir. 2004) (reviewing on interlocutory appeal whether the facts alleged by the *qui tam* relator stated a claim under the False Claims Act); *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004) (reviewing on interlocutory appeal the denial of a motion to dismiss based on the purely legal question of whether the debtors were judicially estopped from making claims).

Bechtel submits that the Order (1) involved controlling questions of law; (2) for which substantial ground for difference of opinion exist; and (3) for which an immediate appeal would materially advance the ultimate termination of the litigation.

### III.   THE COURT SHOULD CERTIFY FOR REVIEW THE ISSUE OF WHETHER THE GOVERNMENT SPECIFICATIONS ARE REASONABLY PRECISE.

Whether the Government issued specifications for Bechtel's work should be regarded as *reasonably precise* is a controlling legal question for which substantial ground for a difference of opinion exists and for which immediate appellate review would materially advance the ultimate termination of the litigation. This question has three parts. *First*, to what feature of Bechtel's work should the Court apply the government contractor defense's three conditions. Put another way, may Plaintiffs plead around the defense by artfully challenging some narrow aspect of Bechtel's work which the Government specifications may not have addressed, rather than challenging the real feature of work that the Government intended its contractor to accomplish. *Second*, should the Court regard as reasonably precise the Government approved specifications

even if the specifications are, as Plaintiffs contend here, totally silent as to the specific defect that Plaintiffs complain of. *Third*, apart from any written specifications, has the Government approved reasonably precise specifications through post-performance inspections, Government acceptance, and use of Bechtel's work upon completion. Because each of these three parts could resolve entirely this controlling legal question, immediate appellate review of the Order would materially advance the ultimate termination of the litigation.

### A. TO WHAT FEATURE OF BECHTEL'S WORK SHOULD THE COURT APPLY THE DEFENSE'S THREE CONDITIONS.

Bechtel submits that Plaintiffs may not plead around the government contractor defense by artfully challenging one step in the course of Bechtel's work that the Government specifications may not have addressed in exhaustive detail. Although the outcome of the Order implies otherwise, the issue should be regarded as a controlling legal question about which substantial ground for a difference of opinion exists. Certifying this purely legal issue would further the ultimate termination of this litigation. *See Lim*, 404 F.3d at 900; *Georgia Gulf Corp.*, 386 F.3d at 652; *In re Superior Crewboats, Inc.*, 374 F.3d at 334.

The Second Circuit took up the same question and held that plaintiffs may not evade the government contractor defense by mischaracterizing the contract's requirements. *See In re Agent Orange*, 517 F.3d 76, 89 (2d Cir. 2008). Plaintiffs sued for injuries related to exposure to Agent Orange. *Id*. at 82. The contractor moved for summary judgment on the government contractor defense. *Id*. at 85. Plaintiffs opposed on the grounds that, *inter ali*, the defense could not apply. *Id*. Plaintiffs claimed "the government exercised no discretionary authority over that which is the subject of their state tort litigations," *id*. at 89, because the "Agent Orange procurement contracts contained no specifications regarding the defective feature, dioxin," *id*. at 88. The district court rejected that argument and entered judgment for the contractor. *Id*. at 87.

4

On appeal the Second Circuit affirmed, holding that plaintiffs' "argument misconceives the nature of what the contracts in question were about and defines the alleged defective design too narrowly." *Id*. at 89. The Government hired the contractor to furnish an Agent Orange component (referred to as "2, 4, 5-T") rather than dioxin. *Id.* Although the contractor's work contained dioxin as a byproduct of the manufacturing process, the Second Circuit held the contractor could establish the defense's first condition without proving that the United States asked for the inclusion of dioxin. *See id.* at n.13. The contractor had to show only that the United States "made a discretionary determination about the [work] it obtained that relates to the defective design feature at issue." *Id*. at 89-90. Since dioxin existed in the contracted for Agent Orange component, the contractor had to show that, in its discretion, the United States approved specifications for the Agent Orange component rather than for dioxin. *Id*.

Here, the Government's contract with Bechtel tasked Bechtel with installing temporary emergency housing. Like the component of Agent Orange, blocking and leveling temporary emergency housing constituted a defined "feature" of work under the contract. Just as dioxin resulted solely from the contractor's performance of the contractual requirement to produce an Agent Orange component, what the Order describes as a "specific process" for jacking resulted only from Bechtel's performance of the contracted for blocking and leveling feature of work. *See id.*; *see also* Rec. Doc. 4366, at 2. Thus, as a matter of law, Bechtel submits that the "feature" of work to which the Court must apply the defense is Bechtel's blocking and leveling work. Bechtel may establish the defense by showing that the United States, in its discretion, approved specifications for Bechtel's blocking and leveling work. *Id*.

Plaintiffs cannot deny that the Government approved reasonably precise specifications for Bechtel's blocking and leveling work. In Exhibit Seven, the Government provided

5

reasonably precise specifications that addressed "raising the Plaintiffs' travel trailer several feet into the air and off of its wheel base, and setting it on concrete blocks." (Rec. Doc. 2796-4, at ¶¶ 39, 41; Rec. Doc. 2796-5, at ¶¶ 33, 35). Exhibit Seven instructed that "[t]ravel trailers shall be set-up on concrete piers"; "the weigh [sic] of the travel trailer is transferred to the piers"; "[a]fter the weight of the travel trailer is transferred to the concrete piers, the piers must be vertically aligned." (Rec. Doc. 2796-7, at 58-59). The Order affirmed as much when, as noted above, the Order held that "the Government gave Bechtel (and the other IA-TAC contractors) detailed specifications on the EHU 'blocking' procedure." (Rec. Doc. 4366, at 2).

Instead of arguing whether the Government approved reasonably precise specifications for Bechtel's blocking and leveling work, Plaintiffs defined the challenged feature of work as the "specific process" of jacking the temporary emergency housing onto blocks. (Rec. Doc. 2894, at 9). Bechtel submits that the case law plainly shows that Plaintiffs cannot avoid application of the government contractor defense by mischaracterizing the Government's contract or defining the alleged defective aspect of the work too narrowly. *See In re Agent Orange*, 517 F.3d at 89. In the alternative, the Court should certify its Order because interpreting "the nature of what the contracts in question were about" and what the correct scope of the challenged feature should be are controlling legal questions about which substantial ground for a difference of opinion exists.

### B. ARE THE GOVERNMENT APPROVED SPECIFICATIONS REASONABLY PRECISE IN SPITE OF SILENCE AS TO JACKING.

Even if Bechtel must establish the defense for the feature Plaintiffs have so artfully selected, unlike perhaps other circuits, *see, e.g.*, *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 748 (9th Cir. 1997), the Fifth Circuit has never regarded mere "silence" in the specifications as sufficient grounds for defeating the defense. The Fifth Circuit acknowledges that "it is possible to have an allegedly defective feature about which the government's specifications are

6

silent." *See Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 799, 801 n.15 (5th Cir. 1993). For precisely that reason, contractors may assert the defense even when a plaintiff's suit rests on "defects that neither the contractor nor the government considered at all." *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 436 (5th Cir. 2000). The fact that the Government "did not fully appreciate the risks latent in" the specifications it issued to its contractor does not mean that, as a matter of law, the Government did not approve reasonably precise specifications. *Kerstetter v. Pac. Sci. Co.*, Civ. A. No. C-96-512, 1999 U.S. Dist. LEXIS 22536, *50 (S.D. Tex. May 26, 1999). In such cases, when the specifications issued by the Government are silent with respect to the challenged feature, the controlling legal issue becomes whether the specifications that the Government issued should be regarded as "*reasonably precise.*" *See Bailey*, 989 F.2d at 801 n.15 (emphasis in original).

The *Boyle* Court's admonition against second guessing the exercise of federal discretion favors reading the "reasonably precise" requirement broadly. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 511 (1988). The *Boyle* Court warned that "permitting 'second-guessing' of" the Government's discretion by way of "tort suits against contractors would produce the same effect sought to be avoided by the FTCA exemption." *Id*. First, the underlying policy rationale for the defense, 28 U.S.C. § 2680(a), protects both the exercise and the failure to exercise the Government's discretion. The defense could not safeguard § 2680(a)'s exception if it subjected government contractors to liability for the Government's failure to exercise or delegate its discretion. *Boyle*, 487 U.S. at 511 (affirming the defense because otherwise "the increased cost of the contractor's tort liability would be added to the price of the contract, and '[s]uch pass through costs would . . . defeat the purpose of the immunity'"). That means that even here, where the Government issued the specifications, inspected its contractor's work, and never

7

tasked its contractor with developing the specific process that Plaintiffs complain of, the Government's discretion should be protected.  *See id*.

Second, requiring that the Government specify every step required for getting the Government's work done would render the defense a nullity.  *See In re Agent Orange*, 517 F.3d at 93 (holding contractor may assert the defense even though the specifications were silent as the method of manufacturing the Agent Orange component and the United States had no preference for how the work should be done); *cf. Kleemann v. McDonnell Douglas Corp.*, 890 F.2d 698, 704 (1989) (applying the defense in spite of silence in the specifications about the alleged defect since doing otherwise "would render the government contractor defense illusory").  Simply put, for the defense to protect the discretionary function, courts cannot require that the Government specify every step.  If courts required that much, then "almost any exercise of governmental discretion could be overly parsed so as to focus on minute details of sub-decisions to the point that any relationship to policy would appear too attenuated."  *See Baldassaro v. United States*, 64 F.3d 206, 211 (5th Cir. 1995) (citing *United States v. Gaubert*, 499 U.S. 315, 323 (1991)).

Accordingly, so long as the Government has not "rubber stamped" specifications that the Government tasked its contractor with developing at Government's expense, courts hold that the government approved specifications must be regarded as reasonably precise.  For example, in *Gauthreaux v. United States*, the plaintiff sued both the United States and the contractor that furnished an allegedly dangerous forklift.  2009 WL 3366931, *1 (E.D. Va. Oct. 16, 2009).  The plaintiff challenged several features of the forklift, including its lack of mirrors, and argued that since the contract was silent as to those mirrors, the contractor could not establish the defense's first condition.  *Id*. at *5.  The contractor argued that it satisfied the defense's first condition because the contractor worked in concert with and under the control of the United States when

8

developing the forklift. *Id.* The district court acknowledged the possibility of silence in the contract as to the feature that plaintiff challenged. *See id.* (citing *Bailey*, 989 F.2d at 799).

The district court held, however, that "for the government's specifications to be 'reasonably precise' under the defense, the government need not detail every single detail." *Id.* The requirement to show "'reasonably precise specifications' does not, as Plaintiffs contend, mean that the government must exercise discretion with regard to the *specific* feature alleged to be defective, but rather, a contractor need only show governmental approval of the *overall* design." *Id.* (quoting *Yeroshefsky v. Unisis Corp.*, 962 F.Supp. 710, 718-19 (D.Md. 1991)) (notations omitted) (emphasis in original). The district court rejected soundly any assertion that silence as to an allegedly defective feature "mean[t] that the United States approved imprecise or general guidelines" and granted the contractor's motion for summary judgment. *Id.*

The Fifth Circuit adopts a similarly broad interpretation of reasonably precise. In *Smith v. Xerox Corp.*, for example, the Fifth Circuit held the defense's first condition satisfied when the contractor provided the *overall* specifications for the contractor's work. 866 F.2d 135, 138-39 (5th Cir. 1989). In *Skyline Air Serv., Inc. v. G.L. Capps Co.*, the Fifth Circuit upheld summary judgment based on the defense even though the contractor produced only general information about the approved specifications. 916 F.2d 977, 979 (5th Cir. 1990) (per curiam). In *Stout v. Borg-Warner Corp.*, the Fifth Circuit upheld the entry of summary judgment in spite of silence in the specifications as to the alleged defect, the lack of a specific safety device, because the United States thoroughly reviewed the work's overall design. 933 F.2d 331, 336 (5th Cir. 1991).

Similarly, in *Kerstetter v. Pac. Sci. Co.*, the Fifth Circuit rejected plaintiffs' interpretation of the *reasonably precise* requirement as "an incorrect standard which is whether the government approved a specification that did not contain a safer design." 210 F.3d at 437. Instead, the Fifth

Circuit held that the United States' specifications will be *reasonably precise* when they address the feature in question even if the specifications are silent as to "the specific defect." *Id*. at 436-38 (holding specifications may be reasonably precise even if the United States never "prospectively limited the discretion of the contractor to include a safer alternative design"). Lastly, in *Winters v. Diamond Shamrock Chem. Co.*, the Fifth Circuit upheld removal based in part of the government contractor defense. 149 F.3d 387, 400-01 (5th Cir. 1998). The Fifth Circuit held the contractor showed that the United States approved reasonably precise specifications for the component parts of Agent Orange, not dioxin, because the "government supplied the relevant specifications." *Id.* (quoting *Smith*, 866 F.2d at 138).

Although the specifications make no mention of a specific process for jacking, under the circumstances, the Government issued specifications should be regarded as reasonably precise. The specifications provided for Government control and supervision as well as addressed the transfer of weight "to the concrete piers." (Rec. Doc. 2796-7, at 58-59). Moreover, if the specifications appear abbreviated it is only because the Government, in its discretion, after consulting at length with local authorities, elected to meet the urgent need for sheltering "hundreds of thousands of people who were left homeless or displaced" after the Hurricane by setting up emergency housing as quickly and as economically as possible. (Rec. Doc. 196-12, at ¶¶ 6-9; Rec. Doc. 717, p.3-6). "Without [the emergency housing], many, if not most, disaster victims who returned to the devastated communities to rebuild would have had no place to live." (Rec. Doc. 196-12, at ¶ 9). In the midst of the worst natural disaster in United States' history, any Governmental delay could have put the lives of countless displaced residents at risk.

Under such circumstances, the Government would have balked at its contractor developing at Government expense under the cost-reimbursable ID/IQ contract a tort-suit-proof

10

specific process for jacking. Likewise, the Government would have never tolerated the delay associated with requisitioning or distributing any of the "many different tools, machines and mechanisms that can be utilized to" elevate emergency housing. Instead, the Government directed its contractor to install the emergency housing on blocks in accordance with Exhibit Seven's specifications and "as expeditiously as possible." (Rec. Doc. 2796-7, at 10).

Bechtel contends that in spite of their silence as to jacking treating the Government issued specifications as anything other than reasonably precise under the circumstances runs counter to *Boyle's* intent. *See Boyle*, 487 U.S. at 511-12. It would allow Plaintiffs to second-guess the Government's exercise, failure to exercise, or abuse of discretion as to how best to shelter the thousands displaced by the storm. *Id*. The *Boyle* Court warned against precisely that. In the alternative, however, Bechtel contends that substantial ground for a difference of opinion exist as to whether the Government issued specifications are reasonably precise.

### C. WHETHER POST-PERFORMANCE INSPECTIONS, GOVERNMENT ACCEPTANCE, AND USE ESTABLISH THAT THE GOVERNMENT APPROVED REASONABLY PRECISE SPECIFICATIONS.

No aspect of Bechtel's installation work was left entirely to Bechtel's discretion. Nothing in the Government's cost-reimbursable contract with Bechtel either authorized or assigned to Bechtel the task of developing a process for jacking.[1] That is significant. Bechtel could not perform any work that the Government had not authorized Bechtel to perform. (Rec.

---

[1] Bechtel included an excerpt of the contract as Exhibit 4 to its Motion to Dismiss (Rec. Doc. 2796-7). Bechtel will file the entire 443 page contract upon request. Plaintiffs received a full copy of the United States' contract with Bechtel before Plaintiffs' August 21, 2008 Rule 30(b)(6) deposition of Bechtel. Although Plaintiffs had the full contract, Plaintiffs never alleged specific facts to show that the Government tasked Bechtel with designing a specific process for jacking. Instead, Plaintiffs offered the generic allegations in their complaints that "Bechtel failed to properly raise or jack up these units" and that "Bechtel was negligent in failing to use its engineering expertise and knowledge to raise or jack up these units." (Rec. Doc. 2894, at 4) (emphasis in original). Apart from mischaracterizing the tasks assigned to Bechtel by the Government, as explained in Part II.A. *supra*, the Court should reject those conclusory allegations as insufficient under *Iqbal* for surviving a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *see also In re Agent Orange*, 517 F.3d at 89 (holding plaintiffs may not evade the government contractor defense by mischaracterizing the contract's requirements).

11

Doc. 2796-7, at 7-8, 29-30). Bechtel submits that under the Fifth Circuit's authorities, any silence that might have existed in the specifications would have been accounted for or otherwise erased by the Government's inspections, acceptance, and use of Bechtel's work. *See Kerstetter*, 210 F.3d at 435-36, 438 n.8; *In re Air Disaster*, 81 F.3d 570, 575 (5th Cir. 1996); *see also In re Agent Orange*, 517 F.3d at 96 (holding that use of the contractor's work with knowledge of any potential risks associated with that work establishes the first condition).

Before Plaintiffs could move in, the Government inspected Bechtel's work using a Standard Form 90-13, Temporary Housing Inspection Report ("SF90-13"). (Rec. Doc. 196-21, at ¶ 4; Rec. Doc. 196-22, at 2-3). The Government used the SF90-13 "to document the condition of the mobile home and contents during . . . RFO (Ready for Occupancy) [or] Move – in" inspections. (Rec. Doc. 196-22, at 3). The Government inspected, approved and accepted Bechtel's work for plaintiffs Kujawa and Bartel. *See* Kujawa Inspection, Block 3, Type of Inspection; Block 11 Ready for Occupancy approval (Rec. Doc. 2796-11, at 4); Bartel Inspection, Block 3, Block 11 (Rec. Doc. 2796-12, at 2).

Moreover, during the entire course of Bechtel's performance, through its ID/IQ task order contract vehicle, the Government retained control over Bechtel's work and had ample power to correct both defects in the specifications and any deficiencies found during the Government's pre-occupancy inspections. The Government, for example, could require that Bechtel re-perform any work for no additional fee, 48 C.F.R. § 52.246-5(c), (d), and could change unilaterally the scope of Bechtel's work "at any time, by written order." 48 C.F.R. § 52.243-2; *see also* Rec. Doc. 2796-7, at 31-34, 33 (incorporating § 52.243-2). Notwithstanding that the Government could make changes to the contract's specifications or compel Bechtel to re-perform any feature of work at any time, the Government continued using Bechtel's work even after learning of the

12

formaldehyde risk. (Rec. Doc. 2796-9, at ¶¶ 13-18; Rec. Doc. 2796-4, at ¶¶ 61-63, 61 ("The Federal Government also continued to supply the defective and dangerous housing units to Plaintiffs after March of 2006."); Rec. Doc. 2796-5, at ¶¶ 52-54, 54 ("The Federal Government continued to supply the defective and dangerous housing units to the Plaintiffs even" even after testing showed "the presence of formaldehyde at twelve times the EPA's value.")).

Bechtel submits that the Government's pre-occupancy inspections, post-performance acceptance, and use upon completion satisfy the defense's first condition as a matter of law. In the alternative, the Court should certify its Order because this issue presents controlling legal questions about which substantial ground for a difference of opinion exists.

### D. IMMEDIATE REVIEW OF THESE CONTROLLING LEGAL ISSUES WOULD MATERIALLY ADVANCE THIS LITIGATION AND COULD SUBSTANTIALLY ACCELERATE THE LITIGATION'S DISPOSITION.

Whether the Government issued specifications for Bechtel's work should be regarded as *reasonably precise* is a controlling legal question for which substantial ground for a difference of opinion exists. The three parts of that question – to what feature should the Court apply the defense; are the specifications for that feature reasonably precise; and has the Government approved reasonably precise specifications by its inspections, acceptance, and use – may be resolved quickly and cleanly by the Fifth Circuit. Because any one of the three parts of the controlling legal question presented here could be dispositive on its own, immediate appellate would substantially advance the ultimate termination of the litigation. "For the sake of judicial economy and the interests of the parties in obtaining an overall conclusion of the proceedings," the Court should certify its Order for immediate appellate review under 28 U.S.C. § 2992(b). *In re: FEMA Trailer Formaldehyde Prods. Liab. Litig.*, MDL No. 07-1873, Rec. Doc. 2122 (July 13, 2009) (certifying for immediate appeal the granting of a motion to dismiss); *Hartz*, 2007 WL 1232211, at *2 (E.D. La. April 25, 2007) (certifying for immediate appeal the denial of a motion

13

to dismiss); *Philibert v. Ethicon, Inc.*, No. Civ. A. 04-220, 2004 WL 1922032, at *5 (E.D. La. Aug. 25, 2004) (same).

## IV.   THE COURT SHOULD CERTIFY FOR REVIEW THE ISSUE OF WHETHER PLAINTIFFS STATE A *PLAUSIBLE* CLAIM FOR RELIEF.

The question of whether Plaintiffs have met their burden to survive a motion to dismiss is both a controlling legal issue and one as to which substantial ground for a difference of opinion exists. To avoid dismissal, Plaintiffs had to show that the facts they plead stated a plausible claim for relief, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009), meaning the facts plausibly refuted Bechtel's affirmative showing of the government contractor defense, *id.*; *Jones v. Bock*, 549 U.S. 199, 215 (2007). Pleading nothing more than conclusory allegations falls well short of the test for stating a *plausible* claim for relief. *Iqbal*, 129 S. Ct. at 1949-50. As the Supreme Court held emphatically, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950.

Instead, a plaintiff's allegations must advance a plaintiff's claims "across the line from conceivable to *plausible*" such that they "*plausibly* suggest an entitlement to relief." *Id.* at 1951 (emphasis added). Even if a plaintiff's factual allegations, if taken as true, appear "consistent with" a plaintiff's claims, plaintiff's facts will not establish any entitlement to relief when "more likely explanations" account for the same facts. *Id.* Such is the case here where Plaintiffs own facts provide a more likely explanations for their alleged damages. Plaintiffs alleged that:

> the Federal Government was conducting initial formaldehyde air sampling of the subject housing units at FEMA staging facilities in Mississippi as early as October 11, 2005 and as late as Jan. 17, 2006. The sampling results showed that the levels detected in **nearly every trailer exceeded the ATDSR minimum** risk levels associated with exposures up to and exceeding 14 days, that most levels exceeded the EPA recognized level at which acute health effects can manifest, and that several exceeded the OSHA workplace maximum levels.

14

(Rec. Doc. 2796-4, at ¶ 59 (emphasis added); Rec. Doc. 2796-5, at ¶ 50 (same); *see also* Rec. Doc. 2796-17, at ¶ 6 ("OSHA initiated testing of *new, unused trailers* . . . in October 2005 . . . [and] the initial test showed the *new, unoccupied units, had high levels of formaldehyde*.") (emphasis added)). Plaintiffs make an unadorned, naked assertion that Bechtel made the pre-existing situation worse while in the Government's employ by creating "stress and flexing" that "contributed to increased formaldehyde." (Rec. Doc. 2894, at 9; Rec. Doc. 2796-4, at ¶¶ 41-42; Rec. Doc. 2796-5, at ¶¶ 34-35). However, Plaintiffs later concede that even if Bechtel had never performed any work, "trailer building materials continue to emit formaldehyde for four to five years." (Rec. Doc. 2796-4, at ¶ 70 (citing "Union of Concerned Scientist" report, at p.5); Rec. Doc. 2796-5, at ¶ 60 (same)).

If accepted as true, at best, Plaintiffs have offered facts "not only compatible with, but indeed more likely explained by" a plethora of things for which Bechtel has no responsibility. The Government selected this particular type of emergency housing. The emergency housing provided by the Government for Bechtel to install contained formaldehyde *well before* Bechtel began any installation work. Even if Bechtel had performed no work whatsoever, the emergency housing would have continued to emit formaldehyde for four to five years. Plaintiffs' conclusory suppositions categorically fail the test for stating a *plausible* claim for relief. As compared to the "obvious alternative explanation for" Plaintiffs' alleged damages and the entirely unconnected installation work upon which Plaintiffs base the entirety of their suit, Plaintiffs simply cannot show any *plausible* entitlement to relief. *Iqbal*, 129 S. Ct. at 1951-52.

As Judge Weinstein noted recently, when a service contractor had no responsibility for creating allegedly dangerous government property but merely cared for it, the "[c]laims against non-manufacturers are not 'plausible'" and additional "litigation with costly discovery . . . is not

15

warranted." *In re Agent Orange*, MDL No. 381, 2009 WL 3242305, *2 (E.D.N.Y. Oct. 9, 2009). In that case, since the harm existed well before the contractor's work ever began, conclusory allegations that might have unlocked the doors to discovery prior to *Iqbal* no longer sufficed. *Id.* at *1; *see also Iqbal*, 129 S. Ct. at 1949-50. The same holds true here. Given the presence of formaldehyde before Bechtel's work began, and the fact that formaldehyde would have lingered for four to five years even without Bechtel's work, Plaintiffs own facts show the Government had its contractor install emergency housing with previously existing high levels of formaldehyde and from which formaldehyde would have emitted no matter what work Bechtel had performed. Since this pre-existing formaldehyde problem constitutes a far more likely explanation for Plaintiffs' alleged damages, Plaintiffs' facts fail to state a *plausible* claim for relief. *Id.* at 1949-50.

In any case, whether Plaintiffs' conclusory allegations show more than a sheer possibility of merit is a purely legal question, for which substantial ground for a difference of opinion exists. "For the sake of 'judicial economy and the interests of the parties in obtaining an overall conclusion of the proceedings,'" immediate appellate review would materially advance this litigation and have the potential for substantially accelerating the disposition of the litigation. *Philibert*, 2004 WL 1922032, at *5; *see also Lim*, 404 F.3d at 900; *Georgia Gulf Corp.*, 386 F.3d at 652; *In re Superior Crewboats, Inc.*, 374 F.3d at 334.

## V. CONCLUSION

The Court should certify its Order for interlocutory review under 28 U.S.C. § 1292(b). The interpretation of the Government issued specifications and determining whether Plaintiffs' conclusory allegations show more than a sheer possibility of merit involve purely legal questions. There exists substantial ground for a difference of opinion as to how to resolve these two controlling legal issues. Immediate appellate review of these issues would materially advance the ultimate termination of the litigation.

Respectfully submitted,

**FRILOT L.L.C.**

/s/     John J. Hainkel, III
JOHN J. HAINKEL, III – La. Bar No. 18246
A. J. KROUSE - La. Bar No. 14426
DAVID P. CURTIS – La. Bar No. 30880 (Ms. Bar - 102092)
CAROLYN B. HENNESY - La. Bar No. 25089
PETER R. TAFARO – La. Bar No. 28776
3700 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:     (504) 599-8000
Facsimile:      (504) 599-8100
Attorneys for Bechtel National, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was filed electronically using the CM/ECF system. Notice of this filing will be forwarded to all known counsel by operation of the court's electronic filing system. I also certify that I have emailed a copy of this filing to any non-CM/ECF participants on this the 30th day of October 2009.

/s/     John J. Hainkel, III
JOHN J. HAINKEL, III