UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * | MDL NO. 1873<br>SECTION "N" (5)<br>JUDGE ENGELHARDT<br>MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO | * | |
| *Aldridge, et al v. Gulf Stream Coach Inc., et al*, Docket No. 07-9228;<br>Elisha Dubuclet, individually and on behalf of Timia Dubuclet | * * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY**

MAY IT PLEASE THE COURT:

Plaintiff Elisha Dubuclet, individually and on behalf of Timia Dubuclet, ("Ms. Dubuclet" or "Plaintiff") submit the following Memorandum in Support of its Motion to Compel Production of Documents and Testimony:

**INTRODUCTION**

Philip Cole, M.D. is a retained expert hired by defendant Fleetwood Enterprises, Inc. ("Defendant") to opine on matters relating to formaldehyde. On October 28, 2009, Plaintiff deposed Defense Expert Philip Cole, M.D. During Cole's deposition, Chris Pinedo, counsel for Plaintiff, questioned Cole regarding a document[1] ("Task List")

---
[1] Said document was produced on June 15, 2009 in the *Alexander v. Gulf Stream, Inc.*, Case No. 09-2892, as an update to an earlier report.

1

produced by Cole.[2] That same day, Cole mailed Chris Pinedo a letter stating that the Task List constituted his property and contained proprietary information. Exhibit B, Letter from Philip Cole, M.D. to Chris Pinedo, Esq., October 29, 2009, p. 1. Cole further requested all copies of the Task List be returned. Exhibit B, p. 1. The next day, by email, Defendant requested that Plaintiff's counsel return the Task List alleging such document to be confidential. To resolve whether the document and related testimony could be considered protected, a telephonic hearing on this matter was held on November 2, 2009, before the Honorable Judge Englehardt. As a result of this hearing, the Court suggested that Plaintiff file a motion to compel production of the Task List.[3]

As will be established *infra*, the Task List is not confidential nor is it covered by any privilege. Therefore, Plaintiff files this motion to compel production of the same, and the additional manuscript submitted to the Formaldehyde Council, Inc., which was referenced in the Task List and during Cole's deposition.[4] Moreover, Plaintiff would further show that when Cole was deposed and questioned about matters noted on said document, including publications relating to formaldehyde, Cole refused to answer. See Exhibit A, p. 76, l. 24-p.103, l.12. As noted above, Philip Cole is a retained defense expert, and to the extent that the matters referenced in the Task List constitute work done as an expert, such matters are fair game for discovery. Plaintiff hereby files this

---
[2] It should be noted that Cole and some counsel members have incorrectly referred to this document as "Exhibit 7," but such is identified in the draft transcript as Exhibit 6 and is attached hereto as Exhibit A under seal. Exhibit A, Draft Deposition Transcript of Philip Cole, M.D., p. 76, l. 24-p.103, l.12.
[3] Pursuant to this Court's order, the document is not attached to this Motion as it has now been returned to Defendant. Rec. Doc. 6197.
[4] During Cole's deposition, Cole stated that document referenced in the Task List pertained to formaldehyde and is being submitted to the Formaldehyde Council, Inc. Exhibit A, p. 109, l. 3-9. Because of the nature of the document, it is within the scope of the documents subpoenaed prior to deposition. Cole understood the nature of the request, acknowledged the document to be covered by the deposition notice, and that he had possession of the subject document, yet he did not bring a copy of the document to the deposition. See Exhibit C, Deposition Notice and Subpoena of Philip Cole, M.D. Plaintiff hereby additionally brings this motion to compel the production of said document and requests an order from the Court compelling the witness to answer questions relative to the same.

2

Motion to Compel the witness to answer the questions asked in the deposition and all matters related to the Task List.

**I.   STANDARD OF REVIEW**

A party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). Further, federal rules of discovery are subject to "broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). If a party refuses to respond to requests for discovery, a motion to compel may be filed pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, and the party opposing the motion bears the burden of showing why it should not be granted. *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); *Rogers v. Tri-State Materials Corp.*, 51 F.R.D. 234, 247 (N.D. W. Va. 1970).

**II.   THE TASK LIST IS DISCOVERABLE AND NOT SUBJECT TO CONFIDENTIALITY OR PRIVILEGE.**

On October 1, 2008, a Protective Order was entered establishing the procedures for handling confidential documents. Important to the issue at bar, paragraphs eleven and thirteen of the Protective Order explain the handling of a document whose 'Confidential' marker is omitted or where a privileged document is inadvertently produced and requires return/destruction.[5]

Here, Defendant seeks to avoid production of the Task List because it contains references to ongoing research of the National Toxicology Program, other cases in which Cole is involved, and a manuscript submitted to the Formaldehyde Council, Inc..

---
[5] Paragraph eleven provides, in pertinent part, that the "inadvertent failure to designate Discovery Materials as Confidential at the time of production may be remedied by supplemental written notice . . . [and i]f such notice is given, then identified material shall thereafter be fully subject to this Order." Rec. Doc. 714, p. 8. Paragraph thirteen relates to documents that are not discoverable: "[i]nadvertent production of information or documents subject to work-product immunity, the attorney-client privilege, or other legal privilege protecting information from discovery shall not constitute a waiver of the immunity or privilege." Rec. Doc. 714, p. 9.

3

Regarding his research on the National Toxicology Program, Cole wholly refused to answer substantive questions stating that the research regarding the National Toxicology Program was "ongoing research." With respect to cases referenced on the Task List, Cole, who is not an attorney, refused to answer questions citing the legal conclusion that such cases "ha[ve] nothing to do with the present case." Exhibit A, p. 87, l. 3-p. 93, l. 16. Finally, Cole refused to answer any questions regarding a completed manuscript provided to the Formaldehyde Council, Inc. because he is only a contributor and such manuscript is proprietary. Exhibit A, p. 95, l. 12-p. 101, l. 1.

Respectfully, nothing under the Protective Order prevents the production of the Task List and questions related thereof, and as such, Plaintiff requests that this Court order Defendant to produce said document and answer questions regarding such.

**A.   The Task List Is Not Privileged.**

The common law principles underlying privileges has been well established by the United States Supreme Court.

> For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.

*United States v. Bryan*, 339 U.S. 323, 331 (1950) (internal citations and quotations omitted); *see also United States v. Nixon*, 418 U.S. 683, 709 (1974). Here, there exists no privilege that is applicable to the Task List.

The Task List is not work product nor is it within the realm of the attorney-client privilege, and thus, pursuant to the Protective Order, the only relevant inquiry is

4

whether there exists some other legal privilege precluding production. Rec. Doc. 714, p. 9. The only privilege remotely applicable is the trade secret privilege.[6]

The trade secret privilege is limited to those situations where it is established that the information sought is a trade secret and that its disclosure might be harmful. *In re Marriage of Kuntz*, 929 So.2d 75 (La. App. 4 Cir. 2006); *see also Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Resource, Inc.*, 2004 WL 764174 (E.D.La. 2004). However, given that a trade secret is defined as "something (as a formula) which has economic value to a business because it is not generally known or easily discoverable by observation and for which efforts have been made to maintain secrecy," none of the references in the Task List constitute a trade secret.[7] Webster's Dictionary, *available at* http://www.merriam-webster.com/dictionary/trade%20secret (last visited Nov. 2, 2009). Similarly, even if the document were to relate to trade secrets, the privilege is typically limited to actions between competitors, not a lone expert seeking to exclude a document that may establish potential bias. *United States v. United Fruit Co.*, 410 F.2d 553 (5th Cir. 1969). Thus, simply because the Task List references items that are particular

---

[6] Because privileges are disfavored, "other privileges" are limited in number and scope. *Bryan*, 339 U.S. at 331. For example, the privilege of right to privacy exists only when the burden to the public is overcome. *United States. v. Greenleaf*, 546 F.2d 123 (5th Cir. 1977) (finding right to privacy privilege only exists where such privilege is more significant than the rights of others and society's right to be informed about legitimate subjects of public interest); *see also Copeland v. Copeland*, 966 So.2d 1040 (La. 2007) (holding right to privacy must be qualified by the rights of the public). There also exists a qualified First Amendment privilege for journalists. *In re Selcraig*, 705 F.2d 789 (5th Cir. 1983) (limiting the journalist privilege to protecting one's sources to specific, qualified situations). Next, a privilege exists between accountant and client if provided by state law. *United States v. El Paso*, 682 F.2d 530 (5th Cir. 1982) (finding no accountant/client privilege under federal common law). Similarly, a privilege exists with regard to one's financial/bank transactions. *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 86 F.3d 464 (5th Cir. 1996) (holding a privacy privilege to financial information). *United States v. Carter*, 568 F.2d 453 (5th Cir. 1978). Further, there exits the well-known privilege for settlement documents. *New Orleans Public Service, Inc. v. Federal Energy Reg. Comm'n*, 659 F.2d 509 (5th Cir. 1981). In addition, documents related to "self review" or "peer review" are not privileged. *In re U.S.*, 864 F.2d 1153 (5th Cir. 1989).
[7] Notably, Louisiana has defined a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique or process, that: (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." LA. REV. STAT. ANN. § 51:1431.

5

---

to his occupation, the Task List is not, nor is any testimony derived thereof, within the scope of any privilege available.

B. **The Task List Is Not a Confidential Discovery Material.**

Under the Protective Order, confidential materials are defined as those contemplated by Rule 26(c)(1)(G), which provides "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." FED. R. CIV. P. 26(c)(1)(G). The Task List, or any implications thereof, do not warrant the 'Confidential' label. First, production of the Task List will not in and of itself incur any "annoyance, embarrassment, oppression or undue burden or expense." Further, as noted above, the Task List and related testimony do not implicate a trade secret. *See generally Freeport-McMoran Sulphur, LLC*, 2004 WL 764174 at *5. Similarly, the Task List and related testimony do not constitute 'confidential research information.' The concept of confidential research information is intended to apply to confidential person information — e.g., results from a study involving human subjects — and should not extended to cover basic research used in formulating peer-reviewed articles. *See, e.g., Burka v. U.S. Dep't of Health and Human Services*, 87 F.3d 508, 517 (D.C. Cir. 1996). Next, the Task List does not relate to the development of confidential information nor cannot it be considered 'commercial information,' because, as stated by Cole, it is simply a document that "lists tasks that are outstanding at the time." Exhibit A, p. 77, l. 5-6.

It should also be noted that the Protective Order lists the type of documents that should be classified 'Confidential' as primarily those dealing with the manufacture of EHUs and testing of individuals/EHUs thereof. The Protective Order does not

6

---

contemplate nor was it intended to cover the Task List, and even though the Task List is highly relative to Cole's potential biases, Defendant seeks to manipulate the Protective Order's language to include such document.

It should be noted, though, that simply because something is deemed 'confidential' does not mean it is privileged. *Federal Open Mkt. Comm. V. Merrill*, 443 U.S. 340, 362 (1979). "As such, information is not shielded from discovery on the sole basis that such information is confidential." *Williams v. Board of Cty Com'rs*, 2000 WL 823909 *6 (D. Kan. June 21, 2000) (internal citations omitted). Thus, even if the Task List is deemed confidential, which Plaintiff contends it is not, the Task List is still subject to production with the additional caveats disclosed in the Protective Order.

III. **COMMENTARY SUBMITTED TO THE FORMALDEHYDE COUNCIL IS NOT PRIVILEGED.**

Although ordered by subpoena to bring all documents relating to formaldehyde and the Formaldehyde Council, Inc.,[8] Cole refused to bring a manuscript that is being submitted to the Formaldehyde Council, Inc. and refused to answer any substantive questions regarding the manuscript. Exhibit A, p. 109, l. 3-9. Cole's reasoning for failing to provide or discuss the manuscript is that he is one of but not the primary author, and thus does not have the authority to discuss it.[9] However, this reason has

---

[8] It should be noted that "[t]he Formaldehyde Council, Inc. (FCI) was formed by the producers and users of formaldehyde and includes various corporations including manufacturers of wood and chemical products. Formaldehyde Council, Inc. Website, http://www.formaldehyde.org (last visited Nov. 3, 2009). Notably, the Formaldehyde Council, Inc. has consistently denied any links between formaldehyde and cancer, and refutes any studies establishing such. *See generally* Formaldehyde Council, Inc. Blogspot, *available at* http://formaldehydefacts.blogspot.com (last visited Nov. 3, 2009).
[9] On May 12, 2009, the Formaldehyde Council, Inc. responded to a study from the Journal of the National Cancer Institute that reported a link between formaldehyde and cancer. Formaldehyde Industry Disputes Findings of JNCI Report, May 12, 2009, *available at* http://formaldehydefacts.blogspot.com/2009_05_01_archive.html (last visited Nov. 3, 2009). Specifically, the Formaldehyde Council, Inc., called for a "full scientific review of Formaldehyde" because "[a]n independent panel of medical and disease experts, including Dr. Phillip Cole of the University of Alabama-Birmingham, has expressed concerns about both the report's method of data analysis and interpretations of the data made by the authors." Given the high esteem the Formaldehyde Council, Inc. holds for Cole, the manuscripts submitted to the Formaldehyde Council, Inc. of which Cole is a

7

---

never been recognized as a basis in which to preclude the production, or at the very least, discussion of documents related to the issues at hand.[10] Thus, given that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ," this Court should order that Cole produce the manuscript referenced during his deposition pursuant to the subpoena issued prior to Cole's deposition. FED. R. CIV. P. 26(b)(1).

**CONCLUSION**

Defendant attempts to avoid production of documents relevant to bias by seeking shelter behind the Protective Order in this case. As established above, the Protective Order does not apply to the Task List as it is not a document subject to privilege nor is a document subject to confidentiality constraints. Furthermore, as divulged by Cole during his deposition and pursuant to the subpoena issued before Cole's deposition, Plaintiff seeks to compel Defendant to produce the manuscript to which Cole contributed and has been subsequently submitted to the Formaldehyde Council.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:   504/522-2304

---

collaborator are highly relevant to potential bias. Furthermore, because the Formaldehyde Council, Inc. *publically* recognizes Cole as its authority for formaldehyde and cancer, Cole's refusal to answer any questions regarding his Formaldehyde Council, Inc. work is highly inappropriate and deprives the public of all relevant information.
[10] *See supra* Note 6.

8

Facsimile: 504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
DENNIS REICH, Texas #16739600
ROBERT M. BECNEL, #14072

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on November 3, 2009.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471

9