Exhibit I

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE:   FEMA TRAILER
FORMALDEHYDE PRODUCT
LIABILITY LITIGATION

           MDL NO. 1873

           SECTION "N-5"

           JUDGE ENGELHARDT

           MAG. JUDGE CHASEZ


ORAL AND VIDEOTAPED DEPOSITION OF

CHRISTOPHER T. DE ROSA M.S., Ph.D.

July 6, 2009

9:25 a.m.

201 17th Street

Suite 1700

Atlanta, Georgia


Maureen S. Kreimer, RPR, CCR-B-1379

1  Q. Correct. And that's only with respect to
2  one form of cancer, which is nasopharyngeal cancer;
3  is that correct?
4  A. That's primarily based on nasopharyngeal
5  cancers, but it also references leukemias as well.
6  Q. With respect to leukemia, and I can quote
7  you the language, it does not declare leukemia as a
8  known human carcinogen, does it?
9  A. Leukemia is a disease, not a carcinogen.
10 Q. Excuse me. Formaldehyde is not declared
11 in that 2004 press release as a known human
12 carcinogen causing leukemia; correct?
13 A. The classification of known human
14 carcinogen is based primarily on nasopharyngeal
15 cancer; however, the weight of evidence is always
16 considered in those designations.
17    And in fact, I was as I recall, at the
18 consultation in Lyons when that was discussed, and it
19 was reclassified, if I'm not mistaken, I was at that
20 particular consultation.
21 Q. With respect to the classification of
22 formaldehyde, insofar as nasopharyngeal cancer is
23 concerned, that IARC report is predicated primarily
24 on what paper, do you know?
25 A. There were a number of studies,

Page 257

1   occupational studies, that were conducted.

2       Q.   The NCI occupational study authored
3   primarily in 2003 by Hauptmann; correct?

4       A.   I believe that's correct, yes.

5       Q.   Have you read that paper?

6       A.   I believe I have.

7       Q.   Do you know the threshold where there was
8   an excess of the standard -- or for the standard
9   mortality ratio, an excess of deaths on which the
10  Hauptmann report concludes that it is a human
11  carcinogen?

12      A.   I believe there was a high exposure group
13  versus a low exposure group in the cohorts that were
14  studied.  I do not recall what the exposure ranges
15  were in that study.

16      Q.   Would it surprise you to know that that
17  exposure range was in excess of four parts per
18  million?

19      A.   No.  It's typically the case that because
20  of difficulty in identifying toxic effects in
21  chemicals, that high dose levels are used.  It's a
22  maximum tolerated dose.  It's a longstanding protocol
23  based on the National Toxicology Bioassay Program,
24  and also on the Bioassay Program of the Ramazzini
25  Institute in Italy that you scale back from the

1  maximum tolerated dose on a logarithmic basis so that
2  you have a dose stand that is more likely to
3  illustrate the shape of the dose-response function.
4      Q.   Are you aware of any exposure, chronic
5  exposure, in these FEMA trailers in excess of four
6  parts per million?
7      A.   I would have to go back and check.
8      Q.   As you sit here today, are you aware of
9  any exposure, chronic exposure, of any occupant of
10 any trailer in excess of four parts per million?
11     A.   Again, I would have to go back and check.
12     Q.   Do you remember what the arithmetic mean
13 of exposure within the travel trailers and
14 manufactured houses was in the July 2008 CDC report
15 of the 519 trailers?
16     A.   I believe it was on the order of 150 --
17 well, I'm not going to speculate. I'm sorry.
18     Q.   If it were 0.078 ppm, would that be far
19 below four parts per million?
20          MR. REICH: Objection.
21     A.   Yes.
22          MR. REICH: Assumes facts not in evidence.
23 Incomplete hypothetical.
24     A.   I see values in excess of four parts per
25 million.