UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  FEMA TRAILER FORMALDEHYDE § <br> PRODUCTS LIABILITY LITIGATION § <br> § <br> § <br> THIS DOCUMENT IS RELATED TO: § <br> *Civil Action No. 07-9228* § <br> *Aldridge, et al v. Gulf Stream Coach, Inc., et al* § <br> *(Elisha Dubuclet o/b/o Timia Dubuclet)* § | MDL No. 1873 <br><br> SECTION N(5) <br><br> JUDGE ENGELHARDT <br><br> MAGISTRATE CHASEZ |

### FLUOR ENTERPRISES, INC.'S STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON THE GOVERNMENT CONTRACTOR DEFENSE

Defendant, Fluor Enterprises, Inc. (**FEI**), submits the following statement of uncontested material facts in connection with its motion for summary judgment.

**Plaintiffs' Allegations**

1.      Following Hurricane Katrina, plaintiff admits she received emergency housing assistance from FEMA, pursuant to the Stafford Act and applicable federal regulations.[1]

2.      FEMA selected and ordered a travel trailer from the trailer manufacturer, Fleetwood, which FEMA provided to plaintiff as temporary housing.[2]

3.      Plaintiff contends that she began living in the travel trailer on or about June 2006 and stopped living in it on or about September 2007.[3]

---

[1] Rec. Doc. 1064, par. 7; Rec. Doc. 5394-3, par. 5.
[2] Rec. Doc. 5394-3, par. 6.
[3] Rec. Doc. 5394-3, par. 6.

4.     Plaintiff alleges that her travel trailer was installed at her location and hooked to utilities for residential purposes by Fluor Enterprises, Inc. (FEI), pursuant to a contract between FEI and FEMA.[4]

5.     Plaintiff asserts claims against FEI under the Louisiana Products Liability Act (LPLA) as a "manufacturer" based on FEI's installation of the travel trailer in accordance with FEMA's mandatory specifications.[5]

6.     Plaintiff alternatively alleges state law negligence claims against FEI in the event FEI is not found to be a "manufacturer" under LPLA.[6]

7.     Plaintiff alleges that FEMA became aware of the safety and health risks and concerns related to formaldehyde exposure in their travel trailer, as early as October 2005.[7]

**The Individual Assistance – Technical Assistance Contract (IA/TAC)**

8.     On July 12, 2005, FEMA awarded an individual assistance – technical assistance (IA/TAC) contract no. HSFEHQ-05-D-0471 to FEI to be prepared to mobilize to provide general contractor services for disaster relief anywhere in the United States, pursuant to individual task orders to be issued by FEMA.[8]

9.     The original term of the IA/TAC contract between FEMA and FEI extended through January 15, 2006.[9]

10.    The IA/TAC contract provided the general requirements for all of FEI's anticipated work "at [v]arious disaster sites to be determined" by FEMA anywhere in the United

---

[4] Rec. Doc. 5394-3, par. 8.
[5] Rec. Doc. 1064, fifth cause of action.
[6] Rec. Doc. 1064, sixth cause of action.
[7] Rec. Doc. 1064, pars. 39-49.
[8] The Contract, Ex. 1; FL-FCA-1, 10, Section F, F.3 (principal place of performance), part III, section J, attachment A (scope of work), FL-FCA-60, 74.
[9] The Contract, Ex. 1, section F, F-2 (term of contract) FL-FCA-10.

States with the condition that FEMA would prepare a specific statement of Work (SOW) for each individual task order it later issued.[10]

11.     The IA/TAC contract award generally required FEI to "provide the necessary personnel, materials, services, equipment, and facilities, and otherwise do all things necessary to provide temporary shelters and related services as described in the Scope of Work Attachment A."[11]

12.     The IA/TAC contract terms generally provided for FEI to perform contractor services in the event of a disaster on a project by project basis, as assigned by FEMA including, but not limited to: "supporting staging areas for units, installation of units, maintenance and upkeep, site inspections ... restorations, group site designs ... construction, site assessment, property and facility management, and unit deactivation and removal."[12]

13.     The IA/TAC contract generally provided that FEI personnel shall perform professional, technical, clerical and field work as assigned by the task order."[13]

14.     FEI had to deliver the trailers that FEMA had designated and purchased and to do otherwise or to choose some other form of housing would have been a breach of FEI's contract with FEMA.[14]

15.     Pursuant to the terms of the IA/TAC, FEI could not change or modify FEMA's plans and specifications.[15]

---

[10] The Contract, attachment A (scope of work) FL-FCA-60-74.
[11] The Contract, Ex. 1, FL-FCA-1.
[12] The Contract Ex. 1, attachment A, § 2.1.7, FL-FCA 62.
[13] The Contract, Ex. 1, attachment A, § 2.2.6, FL-FCA-63.
[14] Garratt depo transcript, Ex. 6, p. 218-221.
[15] Decl. of Charles A. Whitaker.

**Exhibit 7 To The IA/TAC**

16. The IA/TAC contract set forth precise specifications directing the exact manner for FEI to install the travel trailers, including detailed requirements for delivery, blocking and leveling, anchoring and straps, utilities hook-ups (including sewer line, water line, electrical wiring), steps, winterization, handicap ramps/platform steps, and numerous other minor tasks to make the trailer trailers ready for occupancy (RFO).[16]

17. In Exhibit 7 to the IA/TAC contract, FEMA directed FEI to install the travel trailers on six piers constructed in a precise fashion.[17]

18. FEMA's specification for "Blocking and Leveling" the travel trailer was completely formulated, designed and drafted by the Government and provided to FEI by the Government.[18]

**Task Order 20 Under the IA/TAC**

19. In response to Hurricane Katrina, FEMA issued Task Order 20 to FEI to provide staging support, haul-install, and installation construction activities, maintenance and deactivation to further FEMA's operational objective of providing temporary housing solutions for people displaced because of Hurricane Katrina.[19]

20. Task Order 20 directed "[FEI] shall execute these tasks to the requirements and specifications identified in this task order in accordance with the Performance Work Statements and applicable Exhibits."[20]

21. The period of performance for Task Order 20 was 18 months.[21]

---

[16] The Contract, Ex. 1, § 2 (basic travel trailers set-ups) FL-FCA-113-122.
[17] [Ex. 1] the Contract, Ex. 7, FL-FCA-113-114.
[18] [Ex. 1] the Contract, Ex. 7, FL-FCA-113-114; Ex. 2 (emails and diagram); Decl. of Charles Whitaker, arts. 9 and 12.
[19] The Contract, Ex. 1, Task Order HSFEHQ-05-J-0020, Statement of Work, for disaster no. 1603 in Louisiana, FL-FCA 219-222.
[20] The Contract, Ex. 1, General Provisions (3), FL-FCA-219.

22. Prior to the actual award of Task Order 20, FEI operated under FEMA's pre-authorization notices (PAN), which authorized FEI "to begin work based on urgency".[22]

23. FEMA issued task order modifications and SOW revisions to FEI in conjunction with this project.[23]

24. The first task order PAN was issued by FEMA to FEI on September 10, 2005.[24]

25. On September 26, 2005, FEMA issued a Statement of Work (SOW) to FEI to haul and install travel trailers (MH units).[25]

26. On October 9, 2005, FEMA issued a Request for Proposal (RFP) and SOW revision No. 1 to FEI, requiring FEI to submit a written technical and business proposal for services required in the revised SOW. The RFP required FEI's technical proposal to be in the form of a Work Plan, specifying the contractor's proposed technical approach for performing the specific task required within the time frame specified, identifying key personnel, deliverables and due dates.[26]

27. FEI's Work Plan was approved by FEMA and the Task Order thereafter issued.[27]

28. On November 10, 2005, FEMA officially awarded Task Order 20 to FEI, which was an undefinitized task order award for haul and install, minor installation and construction activities, maintenance, deactivation and removal of travel trailers and mobile homes.[28]

29. Task Order 20 and its modifications included FEMA's SOW's, FEI's proposal that FEMA accepted and the applicable terms of the IA/TAC.[29]

---

[21] The Contract, Ex. 1, FL-FCA-222.
[22] The Contract, Ex. 1, FL-FCA-16.
[23] The Contract, Ex. 1, FL-FCA-207-212.
[24] The Contract, Ex. 1, FL-FCA 215.
[25] The Contract, Ex. 1, FL-FCA-218-222.
[26] The Contract, Ex. 1, RFP, FL-FCA-228.
[27] The Contract, Exhibit 1, FL-FCA 235-240; and FL-FCA 16.
[28] FL-FCA-236-240.
[29] See generally, Exhibit 1 and Exhibit 1(A)

**FEMA's Technical Directive To FEI To Block The Trailers**

30. On October 17, 2005, Kevin McCarthy (the Government's COTR for FEI in Louisiana) provided FEI with a blocking diagram that conformed to FEMA's Performance Work Statement on trailer blocking set forth in the base IA/TAC. The Government's diagram for "Typical Travel Trailer Pier Construction" was drafted by Terry R. Zien (U.S. Army Corps of Engineers) dated October 11, 2005.[30]

31. On October 18, 2005, Kevin McCarthy (the Government's COTR for FEI in Louisiana) issued a mandatory technical directive to FEI that all trailers installed by FEI in Louisiana shall be blocked in strict accordance with the FEMA specifications in Exhibit 7 to the IA/TAC and the diagram previously supplied to FEI by the Government.[31]

32. FEI was never directed or asked to, and therefore, never undertook, to perform engineering services concerning this blocking diagram.[32]

33. The Government never requested any engineering support/expertise from FEI relating to the Government's method for blocking the trailers.[33]

**Performance of FEI's Work Pursuant To FEMA's Specifications**

34. FEI hired subcontractors to install the majority of the travel trailers, including the Dubuclet plaintiff's travel trailer. Subcontractor P2S installed Dubuclet's trailer.[34]

35. FEI's work under the IA/TAC conformed to the Government's precise specifications, particularly the mandatory specifications for installation of the travel trailers, including the Dubuclet's travel trailer.[35]

---

[30] Exhibit 2 (emails & diagram), FL-FCA 9634, 9521, 7180-85.
[31] Exhibit 2, (emails & diagrams) FL-FCA 9634, 9521, 7180-85, Decl. of Charles A. Whitaker, arts. 11 and 12.
[32] Decl. of Charles A. Whitaker, art. 12.
[33] Decl. of Charles A. Whitaker, arts. 9 and 12.
[34] FEI 20, attached as Ex. 4.
[35] See Decl. of Charles A. Whitaker; Exhibit 7, FEMA's final acceptance of FEI's work; FL-FCA 19669-70.

36. There was a "back and forth" between the Government and FEI to ensure that FEI's work conformed to the Government's specifications on trailer blocking.[36]

37. FEMA mandated that the performance of FEI's work under the IA/TAC would be subject to the Quality Assurance Surveillance Plan and the technical work plan as submitted by FEI and the COTR (FEMA) representative.[37]

38. The Government inspected FEI's final trailer installations to ensure compliance with Exhibit 7 of the IA/TAC. [38]

39. FEMA inspected FEI's work, including its subcontractor's work, and determined that it was in conformance with FEMA's specifications for trailer installation, including blocking the trailers.[39]

40. FEMA did not make any notification in FEMA's quality assurance reports that FEI failed to comply with any FEMA specifications.

41. FEMA found no deficiencies in FEI's performance of the contract and accepted FEI's work.[40]

42. If FEI did not put the travel trailers on blocks present to FEMA's specifications, FEI would have been in violation of its contract with FEMA.[41]

43. FEI's work conformed to the scope of work that it was directed to do by the Government.

44. FEI's work under the IA/TAC was accepted and finally approved by FEMA..[42]

---

[36] See Ex. 2, (emails and blocking diagram); Decl. of Charles A. Whitaker.
[37] Contract, Ex. 1, FL-FCA-15, G.7 (technical direction and surveillance).
[38] Decl. of Charles A. Whitaker, arts. 14-18; Exhibits 7 and 4.
[39] Decl. of Charles A. Whitaker, arts. 14-18; Exhibits 7 and 4.
[40] Stephen Miller, depo testimony, Ex. 5, p. 200-202.
[41] David Garratt, depo. testimony, Ex. 6, p. 218-221.
[42] Ex. 7, FEMA's Acceptance of Task Order Services, FL-FCA 19669-19670.

**The Government's Prior and Superior Knowledge Of Formaldehyde Claims**

45.  OSHA tested certain trailers in Mississippi on October 11, 2005.[43]

46.  That OSHA testing, conducted in newly constructed travel trailers, not yet ready for occupancy, not connected to electrical or other utilities, and all vents, windows, and doors in the units closed, detected formaldehyde levels upon entry up to 5 parts per million.[44]

47.  Further testing on that same day revealed that after the door had been opened and the unit allowed to vent and air out for approximately 15-20 minutes, formaldehyde levels were reduced to at or near OSHA formaldehyde permissible exposure limits (.75 ppm).[45]

48.  This testing was disclosed to FEMA in the Mississippi Joint Field Office Situation Report S/TREP 41/FEMA-1604-DR-M5.[46]

49.  FEMA admits that as early as March 2006, FEMA reportedly received the first reported concerns of formaldehyde fumes by a Gulf Coast trailer occupant.[47]

50.  The Government's knowledge about formaldehyde claims preceded and exceeded any actual knowledge FEI had of formaldehyde claims involving EHUs.[48]

51.  There is no evidence that FEI had actual knowledge about formaldehyde concerns in travel trailers not known to the Government during the relevant time period.

---

[43] Declaration of Clyde Payne, Rec. Doc. 1545-10, par. 5.
[44] Declaration. of Clyde Payne, Rec. Doc. 1545-10, par. 5-6.
[45] Declaration of Clyde Payne, Rec. Doc. 1545-10, par. 6 and 3.
[46] Declaration of Clyde Payne, Rec. Doc. 1545-10, par. 8-10.
[47] See Court's Order, Rec. Doc. 717, timeline of relevant facts/events, p. 27-36, see specifically p 28.
[48] See generally Exhibit 8 and Rec. Doc. 717, timeline, p. 27-36.

Case 2:07-md-01873-KDE-MBN   Document 6643-2   Filed 11/09/09   Page 9 of 9


Respectfully submitted,

**MIDDLEBERG, RIDDLE & GIANNA**

BY:  */s/Sarah A. Lowman*
Dominic J. Gianna, La. Bar No. 6063
Sarah A. Lowman, La. Bar No. 18311
201 St. Charles Avenue, Suite 3100
New Orleans, Louisiana 70170
Telephone: (504) 525-7200
Facsimile: (504) 581-5983
dgianna@midrid.com
slowman@midrid.com

Charles R. Penot, Jr. (La. Bar No. 1530 &
Tx. Bar No. 24062455)
717 North Harwood, Suite 2400
Dallas, Texas 75201
Tel: (214) 220-6334; Fax: (214) 220-6807
cpenot@midrid.com

*-and-*

Richard A. Sherburne, Jr., La. Bar No. 2106
450 Laurel Street, Suite 1101
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7700
Facsimile: (225) 381-7730
rsherburne@midrid.com

**ATTORNEYS FOR FLUOR ENTERPRISES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record, including court-appointed liaison counsel, who are CM/ECF participants.

*/s/ Sarah A. Lowman* .
SARAH A. LOWMAN

ND: 4821-2674-1509, v.  1