**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:   FEMA TRAILER FORMALDEHYDE | § | MDL No. 1873 |
| PRODUCTS LIABILITY LITIGATION | § | |
| | § | SECTION N(5) |
| | § | |
| THIS DOCUMENT IS RELATED TO: | § | JUDGE ENGELHARDT |
| Civil Action No. 07-9228 | § | |
| Aldridge, et al v. Gulf Stream Coach, Inc., et al | § | MAGISTRATE CHASEZ |
| (Elisha Dubuclet o/b/o Timia Dubuclet) | § | |

_____

**<u>FLUOR ENTERPRISES, INC.'S MOTION FOR SUMMARY JUDGMENT</u>**
**<u>BASED ON THE GOVERNMENT CONTRACTOR DEFENSE</u>**

# FLUOR EXHIBIT 6

1     UNITED STATES DISTRICT COURT

2      DISTRICT OF LOUISIANA

3      NEW ORLEANS DIVISION

4 In Re:  FEMA Trailer )

5 Formaldehyde Products ) MDL No. 1873

6 Liability Litigation )

7

8        Washington, D.C.

9        Tuesday, July 7, 2009

10 Videotape Deposition of DAVID EDWARD GARRATT, called

11 for examination by counsel for Plaintiffs in the

12 above-entitled matter, the witness being duly sworn

13 by CHERYL A. LORD, a Notary Public in and for the

14 District of Columbia, taken at the offices of NELSON

15 MULLINS RILEY & SCARBOROUGH LLP, 101 Constitution

16 Avenue N.W., Suite 900, Washington, D.C., at 9:07

17 a.m., and the proceedings being taken down by

18 Stenotype by CHERYL A. LORD, RPR, CRR.

19

20

21

22

EXHIBIT
6

Page 218

1    Q.   But the point is, from the beginning of

2  the Hurricane Katrina response to the end, FEMA was

3  willing to give people the opportunity to move out of

4  a unit if they expressed any formaldehyde concern

5  that you couldn't resolve?

6        MR. MILLER:  Objection, vague, time.

7    A.   I believe that was the general practice in

8  play, and it was my understanding that that was how

9  these issues were being resolved in the field by the

10  transitional recovery offices through their MDCs,

11  yes.

12        MR. SCANDURRO:  I tender the witness.

13

14    EXAMINATION BY COUNSEL FOR BECHTEL NATIONAL INC.

15        BY MR. HAINKEL:

16    Q.   Good afternoon, Mr. Garratt.

17        My name is John Hainkel, and I represent

18  Bechtel National Inc. in the formaldehyde litigation.

19        I read your declaration a couple of times,

20  and I've tried to listen closely today, so hopefully

21  I won't plow any new ground.

22        Am I correct that FEMA's authority to

Page 219

1  provide and install housing, in this case the travel

2  trailers and under these circumstances, ultimately

3  derived from the Stafford Act?

4    A.   Correct.

5    Q.   And the post-Katrina housing effort, would

6  it be fair to say that this was probably the largest

7  housing effort in the history of FEMA?

8    A.   Is the largest housing effort in the

9  history of FEMA.

10    Q.   Even to this day.

11        And would it be fair to say that FEMA,

12  that federal agency, didn't have the manpower or even

13  the capacity in any sense to actually deliver and

14  install the travel trailers that we've been

15  discussing today?

16    A.   The agency certainly did not.  Prior to

17  the use of the IA/TACS, we relied on the Corps of

18  Engineers for this particular mission.  The Corps

19  would not have had the capacity to do -- to handle

20  the scale of this mission, so, yes, we lack the

21  organic capacity to do this mission.

22    Q.   So in order to fulfill FEMA's federal

Page 220

1  mandate to provide this housing in the wake of this

2  natural disaster, is it fair to say that FEMA

3  contracted with Fluor, Shaw, CH2M Hill, and Bechtel

4  National to help it haul and install the travel

5  trailers we've been discussing?

6    A.   Yes.

7    Q.   And the contractors -- and I'll call them

8  contractors rather than saying all 4 names every

9  time -- the contractors had to deliver the trailers

10  that FEMA had designated and purchased.

11        Isn't that true?

12        They couldn't pick up any trailer

13  willy-nilly and go buy their own trailers.  They

14  were -- they were delivering the trailers you guys

15  told them to deliver.

16        Is that fair?

17    A.   Correct.

18    Q.   To do otherwise or to choose some other

19  form of housing would have been a breach of their

20  contract.

21        Is that fair?

22    A.   That's correct.

Page 221

1    Q.   And tell me if I'm getting too specific

2  here, but did you know that FEMA also directed the

3  contractors to put these travel trailers on blocks?

4    A.   Yes.

5    Q.   And you understand that that was a FEMA

6  directive?

7    A.   Yes.

8    Q.   And would it be fair to say that if the

9  contractors did not do that, they would have been

10  violating their contract?

11    A.   Yes.

12    Q.   And I would assume that you're also aware

13  that FEMA required that these travel trailers have

14  electricity, plumbing, hot and cold running water,

15  sewerage?

16    A.   Correct.

17    Q.   And again, if the contractors didn't set

18  them on blocks, hook up the electricity, hook up the

19  hot and cold running water, hook up the sewerage,

20  they would have been violating their contract with

21  the federal government through FEMA.

22        Correct?