UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER FORMALDEHYDE § | | MDL No. 1873 |
| PRODUCTS LIABILITY LITIGATION § | | |
| § | | SECTION N(5) |
| § | | |
| **THIS DOCUMENT IS RELATED TO:** § | | JUDGE ENGELHARDT |
| *Civil Action No. 07-9228* § | | |
| *Aldridge, et al v. Gulf Stream Coach, Inc., et al* § | | MAGISTRATE CHASEZ |
| *(Elisha Dubuclet o/b/o Timia Dubuclet)* § | | |

### MEMORANDUM IN SUPPORT OF FLUOR ENTERPRISES, INC.'S PARTIAL MOTION FOR SUMMARY JUDGMENT TO DISMISS LOUISIANA PRODUCTS LIABILITY CLAIMS

This memorandum is submitted on behalf of Fluor Enterprises, Inc. (**FEI**) in support of its partial motion for summary judgment to dismiss plaintiff, Elisha Dubuclet o/b/o Timia Dubuclet's (Dubuclet), cause of action against FEI under the Louisiana Products Liability Act (LPLA).

### SYNOPSIS OF COURT'S PRIOR DISMISAL OF LPLA CLAIMS

This Court has already ruled on this precise legal issue, granting FEI's identical motion for summary judgment and dismissing the Alexander plaintiffs' LPLA claims against FEI as a matter of law.  (Rec. Doc. 3217).  FEI's role as a government contractor and substantially the same undisputed facts concerning the nature of FEI's work with respect to the Dubuclet trailer compel the same result – dismissal of Dubuclet's LPLA claims against FEI.

Plaintiff Alexander and her minor son, Christopher Cooper, were bellwether plaintiffs in the first trial held in September 2009.[1] In dismissing the Alexander plaintiffs' LPLA claims against FEI, "[t]his Court conclude[d] that Fluor simply does not meet the definition of 'manufacturer' found in the LPLA:"

> [Fluor] was merely a contract service provider, which provided the services of delivering, setting up and readying for use the EHU assigned to the bellwether plaintiffs. It did not manufacturer Plaintiffs' EHU, nor did it assemble it or use it as component part. Moreover, Fluor did not purchase the EHU that was assigned to Plaintiffs, nor did it create a new product by setting up the EHU. It readied the EHU for use; it did not create a new product.[2]

Like Alexander, this is purely a legal issue for the Court to decide. There is nothing unique to the Dubuclet suit that would warrant this Court's departure from its well reasoned decision in Alexander, dismissing plaintiffs' LPLA claims against FEI. The undisputed evidence supporting this motion is substantially the same as the Rule 56 evidence in support of FEI's identical motion in Alexander. Accordingly, summary judgment is appropriate dismissing the Dubuclet plaintiffs' LPLA claims against FEI in conformity with this Court's ruling in Alexander.

## PRELIMINARY STATEMENT

The Federal Emergency Management Agency (FEMA) owned and/or purchased travel trailers, park models and manufactured homes for use as emergency housing units (EHUs) for persons displaced from their residences after Hurricanes Katrina and Rita struck the Louisiana Gulf Coast. FEMA had an Individual Assistance—Technical Assistance Contract (IA-TAC) with FEI to deliver, set up, and ready these EHUs for use. In order to perform their obligations

---

[1] The Alexander plaintiffs joined the MDL in Age, et al v. Gulf Stream Coach, Inc., et al., 09-2892, Rec. Doc. 1, and their claims were later severed for trial. On October 6, 2009, judgment was entered in favor of FEI in accordance with the jury's verdict dismissing all of the Alexander plaintiffs' claims against FEI (Rec. Doc. 5441).
[2] Court's Order and Reasons in Alexander, Rec. Doc. 3217, p. 5.

under the IA-TAC, FEI or one of its subcontractors would transport and deliver an EHU, place the EHU upon concrete blocks, stabilize the unit and ready the unit for use by the displaced occupant(s).  Plaintiffs claim that these simple steps render FEI liable as a manufacturer of the EHU under the LPLA.  The process by which FEI conducted its tasks and performed its contractual obligations in general, and particularly with respect to the Dubuclet EHU, did not create a "product" such that FEI could be liable as a "manufacturer" under the LPLA.

## BACKGROUND

This multi-district litigation (MDL) is the consolidation of several state and federal toxic tort suits in which plaintiffs claim to have inhabited EHUs that were provided to them by FEMA, because their residences were rendered uninhabitable by Hurricanes Katrina and Rita.[3]  After selecting and purchasing these EHUs, FEMA provided them to Plaintiffs by contracting with certain companies, like FEI, to deliver the EHUs, set them up, and make them ready for residential use.[4]  Plaintiffs generally claim to have been exposed to formaldehyde contained in these EHUs and to have suffered damages as a result.  Plaintiffs sued the manufacturers of the EHUs, the United States Government and the government contractors, like FEI, who delivered and set up these EHUs.  These EHUs consist of travel trailers, park models or manufactured homes.[5]

Dubuclet joined the MDL on November 30, 2007.[6]  Thereafter, Timia Dubuclet, a minor represented by her mother, Elisha Dubuclet, was selected as the bellwether plaintiff in a trial scheduled to commence on December 7, 2009, against the USA, Fleetwood (the manufacturer of the travel trailer in which plaintiff resided) and FEI, the government contractor who was

---

[3] Member Case 07-9228 (Aldridge), Rec. Docs. 1, art. I.; 109, par. 96.
[4] Court's Order, Rec. Doc. 717, p. 22.
[5] Rec. Doc. 1629, n. 1.
[6] In Aldridge, et al. v. Fleetwood, et al., 07-9228; Rec. Doc. 1, art. II.

responsible for having the travel trailer delivered and installed.[7]  Dubuclet generally asserts LPLA and, alternatively, negligence claims against FEI, contending that FEI somehow qualifies as a "manufacturer" simply because FEI installed or had a subcontractor install the travel traveler on concrete blocks, and attach the unit to utilities, including water, sewer and electricity.[8]  As this Court previously held, FEI is not a manufacturer of any product, and the process by which FEI conducted its tasks and performed its contractual obligations with respect to the FEMA travel trailer assigned to and ultimately occupied by the plaintiff did not result in the creation of a "product" whereby FEI could be liable as a "manufacturer" under the LPLA.

## STATEMENT OF FACTS

The essential facts are set forth in the attached Statement of Uncontested Material Facts and may be summarized as follows.[9]

Plaintiff admits in her complaints that following Hurricane Katrina she received emergency housing assistance from FEMA, pursuant to the Stafford Act and applicable federal regulations.  FEMA provided Plaintiff with a travel trailer manufactured by Fleetwood.  It is undisputed that FEMA selected and ordered the travel trailer, through an intermediary, from the trailer manufacturer, Fleetwood.  It is uncontested that the travel trailer was manufactured by Fleetwood on March 27, 2006[10] and installed by FEI's subcontractor four days later on March 31, 2006.[11] The travel trailer was leased-in to plaintiff on May 11, 2006.[12]  Plaintiff alleges she

---

[7] The Declaration of Charles Al Whitaker is attached as Exhibit 2; see pars. 11-17.
[8] Rec. Doc. 1 (Aldridge's first supplemental and amending complaint, fifth and sixth causes of action); Rec. Doc. 1064.  These are the identical claims asserted by the Alexander plaintiffs against FEI.
[9] Although some of the facts in section of the memorandum are not material or relevant to this motion, this information is provided to give the Court the background of FEI's contract with FEMA for this project and the context of plaintiff's claim.
[10] Plaintiff's proposed fourth supplemental and amended complaint, Rec. Doc. 5394-3, par. 6; see also Fleetwood documents FLE-00010739 to FLE-00010747.
[11] FEMA installation packet, attached as Ex. C to Declaration of Whitaker, FEI-00042-43.
[12] FEMA installation packet, attached as Ex. C to Declaration of Whitaker, FEI-00039, 000049-51.

moved into the trailer in June 2006 and they stopped living in it some time in September 2007.[13] Plaintiff also acknowledges that her travel trailer was installed at her location and hooked to utilities for residential purposes by FEI, pursuant to a contract between FEI and FEMA.[14]

### FEI Is a Government Contract Provider of Professional And/or Nonprofessional Services For FEMA

    A.       The IA-TAC Contract

On July 12, 2005, FEMA awarded the IA-TAC, No. HSFEHQ-05-D-0471, to FEI. The IA-TAC required FEI to be prepared to mobilize to provide general contractor services for disaster relief anywhere in the United States, pursuant to individual task orders to be issued by FEMA.[15] This umbrella contract provided the general requirements for all of FEI's anticipated work "at [v]arious disaster sites to be determined" by FEMA anywhere in the United States, with the condition that FEMA would prepare a specific Statement of Work (SOW) for each individual task order it later issued.[16] The contract terms generally provided for FEI to perform contractor services in the event of a disaster on a project by project basis, as assigned by FEMA including, but not limited to: "supporting staging areas for units, installation of units, maintenance and upkeep, site inspections ... restorations, group site designs, ... construction, site assessment, property and facility management, and unit deactivation and removal."[17]

The IA-TAC sets forth precise specifications dictating the exact manner for FEI to install the travel trailers, including detailed requirements for delivery, blocking and leveling, anchoring and straps, utilities hook-ups (i.e., sewer line, water line, electrical wiring) steps, winterization,

---

[13] Rec. Doc. 5394-3, par. 9; FEMA installation packet, attached as Ex. C to Declaration of Whitaker, FEI-00039, 000049-51.
[14] Rec. Doc. 1064, par. 14-23, 56, 59 (generally); Rec. Doc. 5394-3, par. 8.
[15] A copy of relevant portions of the IA-TAC between FEMA and FEI is attached as Exhibit 1; see FL-FCA-1, 10, section F, F.3 (principal place of performance), part III, section J, attachment A (scope of work) FL-FCA-60, 74.
[16] The IA-TAC is like an umbrella contract or a master services contract containing general conditions for all work performed under the contract, whereas each task order is like a work order specific to the disaster and work required by FEMA of the contractor for that disaster. See the Contract, attachment A (scope of work) FL-FCA-60-74.
[17] The Contract, Exhibit 1, attachment A. § 2.1.7, FL-FCA-62.

handicapped ramps/platform steps, and numerous minor tasks to make the travel trailers ready for occupancy (RFO).[18] Specifically, in Exhibit 7 to the Contract, FEMA directed FEI to install the travel trailers on six piers constructed in a precise fashion.

### B.     Task Order 20 Under The IA-TAC

In response to Hurricane Katrina, FEMA issued Task Order 20 to FEI in the Fall of 2005 to provide staging support, haul/install and installation construction activities, maintenance and deactivation to further FEMA's operational objective of providing temporary housing solutions for people displaced because of hurricane Katrina. Task Order 20 directed "[FEI] shall execute these tasks to the requirements and specifications identified in this task order, in accordance with the Performance Work Statements and applicable Exhibits."[19] The Dubuclet trailer was installed pursuant to a work order issued under Task Order 20.

FEI was assigned the task of delivering, installing and making ready for use the EHU assigned to Plaintiff.[20] According to the FEMA installation packet maintained by FEI, Plaintiff was assigned a FEMA owned travel trailer manufactured by Fleetwood bearing VIN No. 4CJ1F322764015272.[21] The travel trailer was picked up at FEI's Six Flags staging area on March 30, 2006 and installed at 6046 Dorothea Street, New Orleans, Louisiana on March 31, 2006.[22]

The travel trailer Unit Inspection Report, dated March 30, 2006, indicates that the condition of the travel trailer and its contents were <u>new</u> and that it included a water heater, range, refrigerator and microwave.[23]

---

[18] Exhibit 7 to the Contract is attached to the Declaration of Charles A. Whitaker (Ex. 2), <u>see</u> § 2 (basic travel trailer set-up) FL-FCA-113-122.
[19] The Contract, Exhibit 1, General Provisions (3), FL-FCA-219.
[20] Declaration of Charles A. Whitaker at par. 11.
[21] Declaration of Charles A. Whitaker at pars. 12-14.
[22] Declaration of Charles A. Whitaker at par. 16.
[23] Declaration of Charles A. Whitaker at par. 15.

The Ready For Occupancy (RFO) QC/QA Acceptance Checklist indicates that the travel trailer assigned to Plaintiff was blocked on at least 6 concrete piers, anchored with the required straps, and utilities installed (ie. sewer, water, and electricity) as well as propane tanks and battery.[24] Plaintiff was leased-in the EHU at 6046 Dorothea Street, New Orleans, LA on May 11, 2006.[25]

## ARGUMENT AND APPLICABLE LAW

FEI is a contract provider of professional and/or nonprofessional services that performed its work according to and in compliance with specifications provided and mandated by FEMA. The process by which FEI conducted its tasks and performed it contractual obligations did not create a "product" whereby FEI could be liable as a "manufacturer" under the LPLA, entitling FEI to a partial summary judgment dismissing the plaintiffs' LPLA claims against it.

**A.    Summary Judgments Are Favored**

Summary judgment is appropriate under Fed.R.Civ.P. 56 if the record discloses that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. There is no genuine issue of material fact if the record, taken as a whole, cannot lead a rationale trier of fact to find for the non-moving party. Matsushita Electric Industrial Corp. v. Zenith Radio Co., 475. U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed. 2d 538 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The mere existence of factual disputes will not defeat an otherwise properly supported motion. Anderson,

---

[24] Declaration of Charles A. Whitaker at par. 17.
[25] Declaration of Charles A. Whitaker at par. 18.

477 U.S. at 248. Further, the court's finding that a rational jury could not find for the non-moving party may be supported by the absence of evidence needed to establish an essential element of the non-moving party's case. Id. Fed.R.Civ.P. 56 would be thwarted if a defendant had "to bear the costs of trying all of the issues in a case when some can and should be resolved on summary judgment." Little v. Liquid Air Co., 37 F.3d 1069, 1076 (5th Cir. 1994).

After the moving party meets its burden of demonstrating the absence of a genuine issue of material fact, the non-moving party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Id. at 1075. This burden cannot be met merely by pointing to "some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' [or] by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Id. (citing Matsushita, 475 U.S. at 586; Lujan v. Nat'l. Wildlife Fed., 497 U.S. 871-73 (1990); Hopper v. Frank, 16 F.3d 92 (5th Cir. 1994); Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir. 1994)).

Courts have granted summary judgment and held that the procedure by which a process is performed does not create a product whereby the contractor would be liable as a manufacturer under the LPLA. See e.g., Hughes v. Pogo Producing Co., 2009 U.S. Dist. LEXIS 16736; Parks v. Baby Fair Imports, Inc., 726 So. 2d 62 (La. App. 5th Cir. 1998); Slaid v. Evergreen Indemnity, 745 So. 2d 793 (La. App. 2d Cir. 1999).

**B.     FEI Is Not A "Manufacturer" Under The LPLA**

FEI seeks partial summary judgment as to Plaintiff's claims under the LPLA on the ground it cannot be liable under the LPLA because it is not the "manufacturer" of a "product" under the LPLA.

The LPLA is the exclusive remedy in Louisiana against a "manufacturer" for damages caused by their products. La. R.S. 9:2800.53(1). The LPLA expressly does not apply to actions

against providers of professional and/or nonprofessional services, even if the service results in a product, unless they meet the definition of "manufacturer" under the LPLA. La. R.S. 9:2800.52.

La. R.S. 9:2800.53 defines a "manufacturer" and "manufacturing a product" under the LPLA as follows:

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
>
> (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
>
> (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
>
> (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.

La. R.S. 9:2800.53(1)(a)-(c).

La. R.S. 9:2800.53 defines a "product" under the LPLA as follows

> (3) "Product" means a corporeal movable that is manufactured for placement into trade or commerce, including a product that forms a component part of or that is subsequently incorporated into another product or an immovable.

La. R.S. 9:2800.53(3).

Plaintiff contends that FEI qualifies as a manufacturer under the LPLA as they performed work pursuant to their contracts with FEMA which altered the character, design, construction, and/or quality of the product and that the housing units constitute products under the LPLA.[26]

Furthermore, Plaintiff contends that FEI, by installing the temporary housing units on concrete blocks for extended occupancy and, further, by installing residential appliances and

---

[26] Rec. Doc. 1064, par. 52.

heating and air conditioning units, knowingly and intentionally modified the design and the actual use of the units.[27]

In order for Plaintiff to maintain a cause of action against FEI under the LPLA, Plaintiff must first prove that FEI "manufactured" the temporary housing units provided by FEMA to Plaintiffs. In support of this allegation, Plaintiff asserts that FEI altered the character, design, construction, and/or quality of the housing units by placing them on concrete blocks for extended occupancy. Essentially, Plaintiff alleges that FEI's "reconditioning and refurbishment" of the housing units created stress and distortion that allowed for increased moisture intrusion and formaldehyde exposure due to cracks and openings in the shell.[28] In Alexander, this court flatly rejected these same contentions, finding:

> Fluor did not 'refurnish', 'recondition' or 'remanufacture' the EHU or any of its parts. It merely placed an EHU, which was manufactured by another entity (which is a party to this lawsuit), placed it on blocks and connected local utilities to it. Based on the Rule 56 evidence before the Court, Fluor simply is not a 'manufacturer' of this EHU within the meaning of the LPLA.[29]

Clearly, subsections (a), (b) and (c) of La. R.S. 9:2800.53(1) have no application to the facts of this case. FEI did not label the Dubuclet trailer as its own, did not exercise control over the design, construction or quality of the EHU, and did not incorporate a component part into the EHU. (The EHU was for all intents and purposes the entire product of Fleetwood, not FEI). Therefore, the key issue is whether FEI's activities rose to the level of a "reconditioning" or "refurbishment" required by La. R.S. 9:2800.53. Generally, remanufacturing, reconditioning, or refurbishing requires one to do something to the product that influences it in a meaningful and creative way. Slaid v. Evergreen Indem., Ltd., La. App. 32363, 745 So. 2d 793 (La. App. 2d Cir.

---

[27] Rec. Doc. 1, pars. 54 & 56; these are precisely the same LPLA allegations made by the Alexander plaintiffs against FEI.
[28] Rec. Doc. 1064, pars. 14-36; fifth cause of action, pars. 52-57.
[29] Court's Order and Reasons, Rec. Doc. 3217, p. 6.

1999) (citing John N. Kennedy, A Primer on the Louisiana Products Liability Act, 49 La.L.Rev. 565, 572 (1989)). This Court held "Fluor did not 'refurbish,' 'recondition,' or 'remanufacture' the EHU or any of its parts."[30]

FEI does not meet the definition of "manufacturer" found in the LPLA. FEI is a government contractor tasked with making the EHUs ready for occupancy pursuant to the government's specifications. FEI is not in the business of manufacturing these housing units "for placement into trade or commerce." La. R.S. 9:2800.53(1). FEI did not label the EHUs as its own product and it never held itself out as the manufacturer of the EHUs. R.S. 9:2800.53(1)(a). FEI did not sell the housing units, therefore, subsection (b) is inapplicable. Likewise, FEI did not incorporate component parts by another manufacturer into the housing units. R.S. 9:2900.53(1)(c). There is no evidence that FEI engaged in any of the above activities defining a manufacturer, and this Court agreed.[31]

Plaintiff asserts that FEI's actions in blocking the unit off its wheel base and hooking the unit to the utilities somehow altered the trailer and modified its design.[32] As already determined by this Court, FEI did not make, produce, fabricate, construct or design the EHUs.[33]

Charles A. Whitaker, P.E., FEI's FEMA IA-TAC Program Manager reviewed the records that FEI kept as a part of its normal business operation as they related to the EHU assigned to Elisha Dubuclet and his review confirms:

1. FEI was assigned the task of delivering, installing and making ready for use the EHU assigned to Elisha Dubuclet.[34]

---

[30] Rec. Doc. 3217, p. 6 (emphasis added).
[31] Rec. Doc. 3217, p. 5-6.
[32] Rec. Doc. 1064, pars. 26, 54, 56, 57.
[33] Court's Order and Reasons, Rec. Doc. 3217, p. 5-6.
[34] Declaration of Charles A. Whitaker at par. 11.

2. FEI maintains a FEMA installation packet in regards to the EHU assigned to Elisha Dubuclet.[35]

3. The EHU installation packet indicates that Elisha Dubuclet's EHU was to be located at 6046 Dorothea Street, New Orleans, Louisiana and designated Site Control number SC-03-076826 and assigned Private Site Installation Work Order number 1603-001-063188-INP.[36]

4. The EHU assigned to Elisha Dubuclet was a travel trailer owned by FEMA and manufactured by Fleetwood on March 27, 2006, bearing VIN No. 4CJ1F322764015272.[37]

5. The travel trailer Unit Inspection Report is dated March 30, 2006 and indicates that the condition of the travel trailer and its contents were new. The travel trailer included a water heater, range, refrigerator and microwave.[38]

6. The travel trailer was picked up at FEI's Six Flags staging area on March 30, 2006 and installed by FEI's subcontractor at 6046 Dorothea Street, New Orleans, Louisiana on March 31, 2006.[39]

7. The Ready For Occupancy (RFO) QC/QA Acceptance Checklist indicates that the travel trailer assigned to Elisha Dubuclet was blocked on at least 6 concrete piers, anchored with the required straps, and utilities installed (ie. sewer, water, and electricity) as well as propane tanks and battery.[40]

---

[35] Declaration of Charles A. Whitaker at par. 12.
[36] Declaration of Charles A. Whitaker at par. 13.
[37] Declaration of Charles A. Whitaker at par. 14.
[38] Declaration of Charles A. Whitaker at par. 15.
[39] Declaration of Charles A. Whitaker at par. 16.
[40] Declaration of Charles A. Whitaker at par. 17.

8. Elisha Dubuclet was leased-in the EHU at 6046 Dorothea Street, New Orleans, LA on May 11, 2006.[41]

9. The Maximo Work Order tracking system is a data system that maintains information and data related to maintenance performed by FEI on the EHUs once the EHU is installed and occupied.[42]

10. The Maximo Work Order tracking system indicates that the only maintenance performed by FEI on the EHU assigned to Elisha Dubuclet after it was installed was replacement of the microwave on May 17, 2006.[43]

11. The Maximo Work Order tracking system would have indicated if FEI had performed any routine maintenance or any major material item replacement on an EHU that exceeded $250.00.[44]

FEI's records and the declaration of Charles A. Whitaker, P.E., attached as Exhibit "2" to this motion, support that FEI was a contract service provider and that FEI provided the services of delivering, setting up and readying for use the EHU assigned to Elisha Dubuclet and, further, that the only maintenance performed by FEI on the Dubuclet trailer was replacement of the microwave.

In a recent ruling on a motion for summary judgment from the United Stated District Court for the Western District of Louisiana in <u>Hughes v. Pogo Producing Co</u>., 2009 WL 536047, 2009 U.S. Dist. Lexis 16736, the Court found the builder of a platform (Atlantia Corp.) was <u>not</u> the manufacturer under the LPLA by virtue of incorporating a living quarters package containing allegedly defective bunk beds and a ladder into the platform. The Court determined this in spite

---

[41] Declaration of Charles A. Whitaker at par. 18.
[42] Declaration of Charles A. Whitaker at par. 19.
[43] Declaration of Charles A. Whitaker at par. 20.
[44] Declaration of Charles A. Whitaker at par. 21.

of the fact that the builder purchased a living quarters package, which included the bunk bed and ladder, from a company (TBS) that manufactured the living quarters package. The builder then welded the entire living quarters package (containing the bunk bed and ladder) onto the platform, and thereafter, sold the entire platform to another company (British Borneo/ENI). The Court instructed:

> Atlantia did not *manufacture* either the bunk beds or ladder or the living quarters package itself. Rather, Atlantia was engaged in constructing a platform much as a building contractor engages in the construction of a house, and in so doing incorporated certain component parts which had been manufactured by a third party, much as a building contractor does. (emphasis in original)

Hughes, 2009 U.S. Dist. Lexis 16736 at *25.

This case is similar to Hughes as FEI, like Atlantia, simply took what was already manufactured by others and hooked (like in Hughes, welded) them to the travel trailer to make it operational.

The Hughes court, in deciding that the builder was not a "manufacturer," relied upon the Louisiana Fifth Circuit Court of Appeal's decision in Parks v. Baby Fair Imports, Inc., La. App. 98626, 726 So. 2d 62 (La. App. 5th Cir. 1998).

In Parks, the issue was whether a defendant retailer of a children's shirt that was allegedly unreasonably flammable was a manufacturer of the shirt. The plaintiffs bought the shirt from K-Mart, which ordered the shirt from the manufacturer, Baby Fair. Apparently, K-Mart was able to choose certain features of the shirt when ordering, and K-Mart requested a non-specific 55% cotton/45% polyester jersey fabric in a certain color. Beyond specifying the fiber content and color of the fabric, K-Mart had nothing else to do with the fabric selection of the shirt; the specific selection of the particular type of and nature of 55% cotton/45% polyester jersey was left to the manufacturer. Hughes at *18, 19.

The trial court granted summary judgment in favor of K-Mart, and the Louisiana Fifth Circuit Court of Appeals affirmed observing:

> We agree with the trial court that K-Mart's placement of this order with Baby Fair does not rise to the level of exercising control over or influencing a characteristic of the design, construction or quality of the product. It appears that K-Mart made a selection from goods available from Baby Fair. Plaintiffs' interpretation would turn all sellers who made specific selections of goods offered from manufacturers into manufacturers themselves. We believe that the legislature intended more direct and specific conduct on the part of the seller than that exhibited by K-Mart in this case. Thus, we conclude that K-Mart was not a manufacturer/seller of the shirt.

Hughes at *20 (quoting Parks, 726 So.2d at 64).

Like the above cases, FEI did not manufacture the alleged product. FEI did not purchase the travel trailer that was used as the EHU assigned to Plaintiff, nor did FEI create a new product by setting up the travel trailer in accordance with the FEMA specifications. Rather, FEI used stand alone products, such as cinder blocks, PVC pipe, anchors and steps that were used and assembled to block, stabilize and make ready the EHU for occupancy. Use of these stand alone products does not create a new product.

As this Court recognized in Alexander, Coulon v. Wal-Mart Stores, Inc., 734 So. 2d 916 (La. App. 1st Cir. 1999), "is distinguishable." (Court's Order and Reasons, Rec. Doc. 3217, p. 5-6).

In Coulon, Wal-Mart received an unassembled bicycle in a box sent by Roadmaster/Brunswick, the manufacturer of the bicycle parts. Wal-Mart then assembled, or contracted with a third party to assemble, the bicycle. Wal-Mart placed the assembled bicycle on the bicycle sales rack for sale to the consuming public. Coulon, 734 So. 2d at 917. In Coulon, the court construed provisions (a) and (b) of La. R.S. 9:2800.53(1) together when it espoused:

> a 'manufacturer' is an entity which labels a product as its own or otherwise holds itself out as an entity in the business of constructing a product, as well as a seller who exercises control over or influences a characteristic of construction of a product which causes damage.

Id. at 920.

While the court in Coulon concluded that "the term 'manufacturing a product' indirectly refers to assembling; thus, one who assembles a product for sale is properly deemed a manufacturer of the assembled product under the LPLA," the court's ruling is fact specific. Id. Insofar as the unassembled bicycle is concerned, each individual piece of the bicycle cannot be used by itself. The assembly of the parts is necessary for the creation of the product, a bicycle. Coulon, 734 So. 2d at 919.

In Coulon, Wal-Mart owned the unassembled parts of the bicycle that were ultimately assembled into a bicycle, which Wal-Mart then sold to the consuming public. The court found that if a defect occurred in the assembly process, then the owner, Wal-Mart, is answerable for that defect as a manufacturer.

Just like the Alexander trailer, FEI is not the owner of the Fleetwood travel trailer in which the Dubuclet Plaintiff resided, and FEI did not alter the Fleetwood travel trailer and then place it in commerce for the consuming public as a seller.

Distinguishing Coulon, this Court "conclude[d] that what Fluor installed, or had a third party install, pursuant to the terms of its contract with FEMA did not create a new product – as was created in Coulon when the parts of the bicycle were assembled by Wal-Mart to create a bicycle:"

> [T]he EHU was an EHU before being placed on blocks and hooking up to utilities, and was still an EHU after being placed on

>blocks and being hooked up to utilities. No new product was created by the process that Fluor utilized to set up the EHU.[45]

Like Alexander, what you have here is a travel trailer before and a travel trailer after. By contrast, a bike is not a bike until assembled. In order to succeed on the LPLA claim, Plaintiff must show that FEI is a "manufacturer." Plaintiff cannot show that FEI is a manufacturer because FEI does not fit any of the subparts of the LPLA's definition of a manufacturer. Plaintiff has failed to show that FEI altered the travel trailer and thereby "remanufactured," "reconditioned" or "refurbished" the travel trailer. Simply making minor adjustments to the travel trailer and hooking it up to the utilities does not make FEI a "manufacturer" – "[t]his Court concludes that Fluor simply does not meet the definition of 'manufacturer' found in the LPLA."[46]

## CONCLUSION

Plaintiff has made claims against FEI based on the Louisiana Products Liability Act. She cannot meet her burden of proof as mandated under the act, therefore summary judgment is proper. The act specifies that Plaintiff must prove four elements: (1) that FEI manufactured the trailer, (2) the trailer's characteristics proximately caused Plaintiff's damage, (3) the characteristics made the trailer unreasonably dangerous, and (4) Plaintiff's damage arose from a reasonably anticipated use of the trailer. Because Plaintiff is unable to prove the first element, that FEI "manufactured" the trailer, her claim under the LPLA fails, as in Alexander.

Under its contract with FEMA, FEI was obligated to transport the trailer to its designated location, install it on blocks, anchor it to the ground pursuant to FEMA specifications, and connect the trailer to the local utilities (sewer and electricity). Plaintiff alleges that these actions, in particular lifting the trailer from its wheel base, somehow altered the trailer's character, design and construction. None of these activities, which readied the trailer for occupancy, makes FEI

---

[45] Rec. Doc. 3217, p. 5-6.
[46] Rec. Doc. 3217, p. 5.

the trailer's manufacturer under the statute's definition. FEI's actions do not constitute an overhaul or a "refurbishment" of the trailer. FEI did not "recondition" the inside or outside of the trailer, nor did it "remanufacture" the trailer or any of its parts. FEI took a new trailer manufactured by another entity, placed it on blocks securing it to the ground, and connected local utilities to the trailer. These actions are not "producing," "making," "fabricating," "constructing," or designing" as explained in the statute's definition. FEI is not a seller nor did FEI label the trailer as its own product. "Fluor simply does not meet the definition of 'manufacturer' in the LPLA." (Court's Order and Reasons, Rec. Doc. 3217, p. 5-6).

Failure to prove the first element in the LPLA's four part analysis determining liability is fatal to Plaintiffs' claims. For purposes of the LPLA claim, FEI's role is the same regarding the Dubuclet trailer as the Alexander trailer. As in Alexander, this is a pure question of law and the same result is appropriate, dismissing Dubuclet's LPLA claims against FEI. This Court should render consistent rulings dismissing Plaintiff's LPLA claims against FEI. Therefore, summary judgment should be granted and Plaintiff's claims against FEI under the LPLA should be dismissed as a matter of law.

Respectfully submitted,

**MIDDLEBERG, RIDDLE & GIANNA**

BY:  *s/Sarah A. Lowman.*
Dominic J. Gianna, La. Bar No. 6063
Sarah A. Lowman, La. Bar No. 18311
201 St. Charles Avenue, Suite 3100
New Orleans, Louisiana 70170
Telephone: (504) 525-7200
Facsimile: (504) 581-5983
dgianna@midrid.com
slowman@midrid.com

        Charles R. Penot, Jr. (La. Bar No. 1530 &
        Tx. Bar No. 24062455)
        717 North Harwood, Suite 2400
        Dallas, Texas 75201
        Tel: (214) 220-6334; Fax: (214) 220-6807
        cpenot@midrid.com

    *-and-*

        Richard A. Sherburne, Jr., La. Bar No. 2106
        450 Laurel Street, Suite 1101
        Baton Rouge, Louisiana 70801
        Telephone: (225) 381-7700
        Facsimile: (225) 381-7730
        rsherburne@midrid.com

        **ATTORNEYS FOR FLUOR ENTERPRISES, INC.**

## CERTIFICATE OF SERVICE

    I hereby certify that on November 9, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record, including court-appointed liaison counsel, who are CM/ECF participants.

        *s/Sarah A. Lowman*

ND: 4850-5002-1124, v. 1