UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
|     FORMALDEHYDE | * | |
|     PRODUCTS LIABILITY | * | |
|     LITIGATION | * | SECTION: N(5) |
| | * | |
| This Document Relates to: | * | |
| *Dubuclet v. Fleetwood Enterprises, Inc.* | * | |
| *Case No. 07-9228* | * | JUDGE: ENGELHARDT |
| | * | |
| | * | |
| | * | MAG: CHASEZ |

************************************************************************

## REPORT OF HOWARD I. MAIBACH

1.

I am Howard Maibach, a physician (dermatologist) at the University of California San Francisco Medical Center. My special interest in medicine is dermatology, and my sub specialty are the exogenous dermatoses that include allergic contact dermatitis. My interest in formaldehyde allergic contact dermatitis started with the inauguration of the UCSF Patch Test Clinic in the early 1960's. This clinic, modeled on a clinic supervised by the late Dr. Alexander Fisher at New York University Medical School, serves as a referral unit to add science to the diagnosis and management of exogenous dermatoses such as allergic contact dermatitis. I have worked clinically and experimentally with the art and science of formaldehyde dermatitis since starting this patch test clinic. This experience has improved our knowledge of the diagnostic criteria for demonstrating clinical relevance of a patch test for allergic contact dermatitis for formaldehyde. My curriculum vitae and bibliography are attached as Appendix A. Several text books from our group deal with allergic contact dermatitis in man.

Miller
DEPOSITION
EXHIBIT
20
PENGAD 800-631-6989

2.

I was asked by Fleetwood counsel in late July 2009 to review the information on Timia Dubuclet in terms of a possible relationship between her recurrent rash and a possible relationship of the rash to gaseous formaldehyde exposure.

3.

I have received from Fleetwood's counsel, and reviewed, the documents listed in Appendix B.

4.

Timia Dubuclet presently is 10 years of age, date of birth September 23, 1998. Her medical history is attached as Appendix C1 through C4. These appendices include the following:

(C1)    The transcribed medical records from Louisiana and Texas treating physicians and facilities that relate to her rash;

(C2)    The physical examination and medical history provided from the medical examination performed by Dr. H. James Wedner on August 3, 2009;

(C3)    The physical examination and medical history obtained by Dr. Lawrence Miller as provided in his expert report;

(C4)    The physical examination and medical history provided in the affidavit of Dr. George Farber.

5.

This series of documents indicates that Timia has had rash since approximately age six weeks, that the rash has been treated intermittently, and that it persists to the present time

(James Wedner examination, August 3, 2009, Appendix C2; Lawrence Miller report of examination Appendix C3; George Farber report of examination, Appendix C4.).

6.

There is no causal exposure relationship between Timia's rash or its severity and her occupancy in the FEMA Fleetwood travel trailer. The issue of temporal exposure as related to rash is a critical point in ascribing significance to a chemical allergen (allergic contact dermatitis) (See below).

7.

The medical treatment of Timia appears to have been relatively minimal in that the lowest potency topical corticosteroid-hydrocortisone (presumably either .5 or 1%) were most frequently utilized, rather than the more potent topical corticosteroids.

8.

Dr. Farber patch tested Timia with the T.R.U.E. Test®, developed in our laboratory and commercialized in the United States by Allerderm (Smart Practice Incorporated, Phoenix, Arizona). (Appendix D).

9.

This test provides a pre-packaged series of allergens that were believed to be of clinical significance in the United States at the time of the test's approval by the Food & Drug Administration. I am personally familiar with why the allergens being utilized for the T.R.U.E. Test® were selected, and although those reasons are not necessary for purposes of this report, I am prepared to discuss those reasons if asked to do so. I also note in passing that Dr. Farber did not test her to her own skin care products.

10.

Diagnostic patch testing with the above kit (Appendix D) demonstrated three positives, as noted in Dr. Farber's affidavit. These include: 1. p-tert butylphenol resin; 2. imidazolidinyl urea; and 3. expoxy resin.

11.

The putative allergen listed in this litigation – formaldehyde – was patch test negative on the test of Timia. Two chemicals that may have, or release formaldehyde (p-tert Butylphenol resin and imidazolidinyl urea) were positive, but formaldehyde (see above) was negative. The fact that she tested positive to these two substances but negative to formaldehyde is entirely consistent with the medical literature and is to be expected. The fact is that there are other non-formaldehyde sensitizers in these chemical compounds that trigger the reaction in those people who test positive to the substances but negative to formaldehyde. With respect to the positive reaction to epoxy resin, this resin is one half of the widely utilized adhesive (glue) employed by hobbyists and in occupations in which it is a preferred adhesive. It is not related to formaldehyde and is of no known clinical relevance to Timia.

12.

Thus, patch testing, an important diagnostic technique, does not support the diagnosis of allergic contact dermatitis to gaseous formaldehyde. (Appendices C1 to C4).

13.

The T.R.U.E. patch test kit contains formaldehyde. The parts per million of gaseous formaldehyde to which one can likely be exposed is far different from exposure to formaldehyde in a non-gaseous state (solution or solid). I understand that testing has been done on Timia's travel trailer and that test results all reveal exposures well below one part per

4

million by volumetric measure in air. The formaldehyde material in the T.R.U.E. Test® represents approximately 1% formaldehyde by weight in solution. This one percent formaldehyde applied to her skin is the equivalent of 10,000 parts per million formaldehyde by weight in solution. Formalin is an aqueous solution containing between 30% and 40% formaldehyde. Thus, one exposed to formalin (formaldehyde in aqueous state) would be exposed to between 300,000 and 400,000 parts per million formaldehyde by weight in solution. As noted above, Timia did not react to 10,000 parts per million of formaldehyde when patch tested with the T.R.U.E. Test®. The likelihood that exposure to 1 ppm formaldehyde or less in air could produce a concentration of formaldehyde on the skin equal to or greater than 10,000 ppm formaldehyde by weight in solution is inconceivable.

14.

Eczema describes a clinical appearance consisting of redness, often swelling, and scaling – and often accompanied by itch. It is a generic description and not a specific diagnosis nor indicative of causation. The term dermatitis is used synonymously.

15.

Causes of eczema (dermatitis) are numerous, but in Timia's case the specific diagnosis of formaldehyde allergic contact dermatitis has been suggested by Dr. Farber (Appendix C4) and named and listed as a major part of this litigation.

16.

Numerous types of contact dermatitis exist. Specifically for formaldehyde, the most likely would be irritant and/or allergic contact dermatitis. The former is non allergic and the latter – allergic. (See below for characterization of each). I use here the term formaldehyde specifically to mean non-gaseous (non-aerosolized) formaldehyde. In my years of practice and

research, I have seen no adequately controlled paper that draws a causal connection between gaseous formaldehyde and allergic contact dermatitis or irritant contact dermatitis. I have specifically reviewed the medical articles relied upon by Dr. Lawrence Miller in support of his opinions, and do not read those articles to support the conclusion that gaseous formaldehyde at levels experienced or conceivably experienced by Timia Dubuclet (using an arbitrary cut-off of 2 ppm) are causally associated in the world's medical literature to irritant or allergic contact dermatitis.

17.

In reviewing the records, Appendices C1 – C4, the more likely diagnosis in terms of frequency in a population of 10 year olds would be a form of intrinsic eczema such as atopic eczema (dermatitis).

18.

This clinical entity has been known under other names in the 19th Century but was separated out as a clinical entity by Sulzberger and Hill (in approximately 1932).

19.

In the days before corticoidsteroid therapy, they noticed that children frequently had rash, as described above, in infancy and childhood, gradually improved but that these children then developed allergic rhinitis (hayfever) and/or asthma. This is the most common form of eczema (dermatitis) in children. Other diagnostic possibilities include seborrheic dermatitis (eczema), and xerotic eczema.

6

20.

In recent years, we have learned through the techniques of evidenced based medicine, that many positive patch tests cannot be found, within medical probability, to be clinically relevant to the eczema (dermatitis).

21.

Appendices E1 through E4 provide simple descriptions of how a diagnostic patch test is evaluated in order to ascertain possible or likely clinical relevance (medical probability).

22.

Based on my education, experience, and research over the years in the field of dermatology and the data provided in the records, it is my opinion that Timia does not have formaldehyde allergic contact dermatitis.  It is my opinion that although her dermatitis may have been excited from time to time during her occupancy of the trailer, such condition was not caused by exposure to gaseous formaldehyde in the air within the trailer.  It is my opinion that since she was an infant, she has had an idiopathic intrinsic dermatitis which she tolerates well and which has been managed with minimal treatment by her attending physicians.

23.

The reasons follow:

(a)     Timia is patch test negative to formaldehyde in the T.R.U.E. Test®;

(b)     The exposure relevant to the litigation -- gaseous formaldehyde -- has not been demonstrated by the literature or my experience to induce primary sensitization or to elicit bringing out sensitization in a previously sensitized individual.

(c)     The positive result for imidazolidinyl urea would appear to be most clinically relevant to Timia as it is a widely used preservative in typical moisturizers and medicaments.

7

24.

Taken together, the evidence summarized above supports my opinion that Timia suffers from atopic dermatitis and that condition was neither caused by nor aggravated by her exposure to gaseous formaldehyde while living in the Fleetwood trailer.

Howard I. Maibach, M.D.

Date: 8-26-2009