UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE PRODUCTS | * | |
| | LIABILITY LITIGATION | * | SECTION "N" (5) |
| | | * | |
| | | * | JUDGE ENGELHARDT |
| | | * | MAGISTRATE CHASEZ |
| | | * | |
| THIS DOCUMENT IS RELATED TO | | * | |
| | | * | |
| *Aldridge, et al v. Gulf Stream Coach* | | * | |
| *Inc., et al*, Docket No. 07-9228; | | * | |
| Elisha Dubuclet, individually and on behalf | | * | |
| of Timia Dubuclet | | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *DAUBERT* MOTION TO LIMIT THE TESTIMONY OF H. JAMES WEDNER, M.D.**

Plaintiff Elisha Dubuclet, individually and on behalf of Timia Dubuclet, ("Ms. Dubuclet" or "Plaintiff") respectfully submits the following memorandum in support of Plaintiff's *Daubert* Motion to Limit the Testimony of H. James Wedner, M.D.,[1] and hereto states:

**INTRODUCTION**

The matter before this Court involves injuries caused by formaldehyde. In addition to other injuries, Plaintiff specifically asserts that the formaldehyde exposure while in the Fleetwood travel trailer exacerbated Timia Dubuclet's eczema. Defendant Fleetwood, Inc. designates Dr. H. James Wedner as an expert qualified to provide testimony concerning the specific causation of Timia Dubuclet's ezecma. Wedner has

---

[1] Because Plaintiff believes that Wedner should not be allowed to testify for reasons cited earlier, this motion is filed out of an abundance of caution and does not serve to waive Plaintiff's previously stated objections to Wedner.

1

applied the Gell and Coombs classification, a widely used system of hypersensitivity classifications. Accordingly, Wedner has determined that Timia Dubuclet suffers from a Type I Gell and Coomb Classification hypersensitivity known as intrinsic atopic dermatitis, which is non-IgE mediated. In addition, based on his reading of Timia Dubuclet's T.R.U.E. Test, Wedner has also determined that she suffers from Type IV contact sensitivity to epoxy resin, p-tert butylpheno resin and imidazolidinyl urea; all of which are made from formaldehyde. Notably, p-tert butylphenol resin is used in the manufacture of plywood, insulation and fiberglass. Exhibit B, p. 186, l. 10-p. 188, l. 2. Yet, Wedner has refused to find that Timia Dubuclet's eczema and other injuries were exacerbated by her exposure to formaldehyde while living in the emergency housing unit ("EHU"). Further, Wedner opines that there is no evidence to support that children and the elderly are more sensitized to formaldehyde, and further states that nosebleeds are not an effect of formaldehyde exposure, but likely caused by picking one's nose. As will be discussed *infra*, Wedner's opinions should be limited as Wedner could not provide the necessary support for his conclusion or such support simply does not exist.

## I.      STANDARD OF ADMISSIBILITY

Under the Federal Rules of Evidence, the party offering the expert witness bears the burden of establishing that the expert is qualified to give the opinion, and that such opinion is both reliable and relevant to the case at bar. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). Prior to accepting the testimony of an expert witness, trial courts are charged with a "gatekeeper" function requiring a determination of whether an opinion is based upon sound, reliable theory. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 589-91 (1993). As such, "[p]roposed testimony must be supported by appropriate validation–*i.e.*, good grounds." *Id*. at 590 (internal quotations omitted). The

concept of "good grounds" is codified under Federal Rule of Evidence 702, which provides that expert testimony is deemed reliable so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.  Wedner's testimony fails to meet any of the reliability requirements set forth under Rule 702, and thus should be excluded.

## II.     WEDNER'S OPINION IS NOT RELIABLE UNDER RULE 702 AND SHOULD BE EXCLUDED.

After one session with Plaintiff and a review of medical records, pictures and documents, Wedner concludes that "[a]ny exacerbation that Timia may have suffered in either [intrinsic atopic dermatitis and type I herpes labialis] was not the result of HCHO exposure in her travel trailer" and "[a]ny allergy rhinitis and related symptomatology from which she may have suffered or now suffers was no[t] the result of or exacerbated by HCHO exposure in her travel trailer."  Exhibit A, Affidavit of H. James Wedner, M.D., August 28, 2009, p. 17.  Further, during his deposition, Wedner asserts that children and the elderly do not have a greater sensitization to formaldehyde, and that if a nose bleed does result from formaldehyde exposure, it is likely the result of picking one's nose.  All of these conclusions are based on unreliable presumptions insupportable by Wedner, and Wedner should be precluded from opining such.

### A.     Wedner's Opinion Regarding the Effects of Gaseous Formaldehyde on Type I Gell and Coombs Classification Is Unsubstantiated.

As noted above, Wedner concludes that Timia Dubuclet suffers from Type I intrinsic atopic dermatitis.  Based on this belief, Wedner states that "[f]ormaldehyde neither causes atopic dermatitis nor does it affect this condition in any way."  Exhibit A, p. 17. Oddly, though, prior to stating such, Wedner cited a study regarding the gaseous

3

effects of formaldehyde that concluded that gaseous formaldehyde causes an increase in transdermal water loss." Exhibit A, p. 16 (citing Eberlin-Konig, B. et al., *Environmental Pollution and Atopic Eczema*, 87 ANNALS OF ALLERGY, ASTHMA AND IMMUNO. p. 2-6 (2001). Now, as noted by Defendants' own expert, Dr. Patricia Farris, this transdermal water loss is precisely one of many the problems associated with formaldehyde exposure:

> A. Children with atopic dermatitis have lower levels of ceramides, or lipids, so they have less mortar. They also have dysfunctional bricks. They lack a protein called filaggrin that causes the bricks to mature in a normal way. So, in other words, their epidermal barrier is compromised.
>
> Q. And that, in turn, allows for increased water loss resulting in a skin that becomes dry and cracked. Correct?
>
> A. Correct.
>
> Q. And do you not agree then that, additionally, when barrier function is compromised, such as someone with atopic dermatitis, that this allows for easier penetration of microorganisms, irritants and potential allergens into the skin?
>
> A. Correct.
>
> Q. Now, is formaldehyde a microorganism, irritant or a potential allergen?
>
> A. Formaldehyde, topically, would be both a potential allergen and an irritant.
>
> Q. And would you not agree that a child whose epidermal barrier is compromised is at greater risk of easier penetration of microorganisms, irritants and potential allergens into the skin, correct?
>
> A. Correct.
>
> Q. I'm sorry?
>
> A. Correct.

>	Q.	And what happens when the barrier function is compromised?
>
>	A.	Well, like I said previously, the skin barrier is to hold water in, so water escapes the skin when the barrier is compromised; and it is also to keep potential allergens and microorganisms out, so those may more easily penetrate the skin.
>
>	Q.	And does it not trigger an immune response then that causes skin inflammation and eczema?
>
>	A.	The allergens can cause skin inflammation and eczema.  Correct.

Exhibit C, Deposition Testimony of Patricia M. Farris, M.D., F.A.A.D., October 14, 2009, p. 55, l. 10-p. 57, l. 4.  Thus, essentially Dr. Farris, Defendant's own expert, reinforces the dangerous effects that gaseous formaldehyde may have on those suffering from atopic eczema.

In attempting to support his position, Wedner states that formaldehyde does not exacerbate eczema because no studies exist that unequivocally establish a causative relationship, "[m]edical literature says something causes — A causes B, pneumococci causes pnemococcal pneumonia, I mean, absolute, no questions asked."  Exhibit B, Deposition Transcript of H. James Wedner, M.D., October 12, 2009, p. 98, l. 15-18.  However, Wedner, in previous testimony, has not applied such a stringent, unequivocal standard.  In fact, in an unrelated case, Wedner testified that "there's no doubt about the VOCs aggravated [plaintiff's injuries]."  Deposition of H. James Wedner, M.D. *Crowder v. Morgan Financial Corp.*, 2004 WL 4950962 (20th Ill. Cir. October 27, 2004).  However, there is no medical literature that expressly states that VOCs aggravates asthma — or A causes B.  Notably, scientific data supports the finding that VOCs and formaldehyde  — which is a specific VOC typically found in gaseous form — are both irritants as noted in *Volatile Organic Compounds [VOCs] and Formaldehyde as Explaining*

*Factors for Sensory Irritation in Office Environments*,[2] and are emitted from composite wood as noted in *Chamber Assessment of Formaldehyde and VOC Emissions from Wood-Based Panels*.[3]

Moreover, courts leave questions of whether "A causes B" to the jury, and epidemiological studies that show an association are admissible to show causation. *See, e.g.*, *Tyler By & Through Tyler v. Sterling Drug, Inc.*, 19 F.Supp.2d 123 (N.D.Okla. 1998) (finding epidemiological studies showing only association were sufficiently reliable to be admissible on issue of causation). As such, Wedner's broad conclusion that "formaldehyde neither causes atopic dermatitis nor does it affect this condition in any way" is based upon a standard that (1) Wedner has not applied consistently and seems fit for these circumstances and (2) is higher than the burden imposed by courts. Furthermore, as noted by Defendants' own expert, Dr. Farris, an increase in transdermal water loss, which is caused by gaseous formaldehyde, increases the chance of skin irritation; thus disproving Wedner's insupportable conclusion regarding atopic dermatitis.

### B. Wedner's Opinion Refuting the Differing Effect of Gaseous Formaldehyde on Children and Elderly Persons.

During his deposition, Wedner opines that there is no evidence to suggest that children and the elderly are more sensitive to formaldehyde. However, when asked to cite support for his proposition, Wedner refuses stating that Plaintiff's counsel should show him the articles.

> Q.     Here is my question. I'm going to ask you a different question. Are you generally aware of any literature to the effect that the irritant levels for formaldehyde on children

---

[2] Solonen, H., et al., *Volatile Organic Compounds and Formaldehyde as Explaining Factors for Sensory Irritation in Office Environments*, 6:4 J. OCCUP. & ENVIRON. HYGIENE 239 (2009).
[3] Brown, S.K., *Chamber Assessment of Formaldehyde and VOC Emissions from Wood-Based Panels*, 9:3 INDOOR AIR 209 (2004).

6

and the elderly is lower than for adults?
. . .
A.   Define literature.

Q.   Medical literature, scientific articles.

A.   Not review articles, an article where they actually studied the irritant effects on children and adults?

Q.   Let's put them all together.

A.   No, no, you have to define it.  If that's what you are talking about, I disagree with you.  I don't know that there is that article in the literature where they actually study children and  adults and show that they were more sensitive.  It's been written about, but it's not based on  well-founded scientific literature.

Q.   Okay.  What articles --

A.   I'm not going to give you the articles.  We've been through that before.  If you want to show me articles, I would be delighted to discuss them with you.

Q.   Let me finish my question, sir.  Can you name an article that states or refers to that children and the elderly experience the irritant effects of formaldehyde at lower levels than adults that you disagree with?

A.   No.

Q.   But you are aware that certain articles have been written, whether they are review articles, peer review literature, scientific literature, medical literature that include that statement or that proposition that children and the elderly are more susceptible to the irritant of effects of formaldehyde?

A.   That particular statement?  No.
. . .
Q.   Now, you said that particular statement.  I'm not talking about that particular statement.  I'm talking about a proposition or a reference to that type of finding or that type of --

A.   I am sure that somewhere in the East African Journal of Epidemiology there may be a statement that says that, but there is no well-founded scientific literature that documents it.  And if you've got one, I would be delighted to go over it

7

>with you.
>
>Q.      Suffice it to say, if any paper says that, you disagree with that; is that right?
>
>A.      No, I did not say that.  I said, if you've got one, let's go over it.  If you don't, let's move on.

Exhibit B, p. 218, l. 8-p. 220, l. 18.  Respectfully, Plaintiff is not the designated expert nor is Plaintiff charged with providing the support for Wedner's conclusions.  Regardless, there exists research indicating an increase of formaldehyde sensitization in children and the elderly. CASSARETT & DOULL'S TOXICOLOGY: THE BASIC SCIENCE OF POISONS, 6th Ed. (D. Klassen ed.), McGraw-Hill (2001).   As such, because Wedner failed to provide any support for his opinion, Wedner should be precluded from offering such.

### C.     Wedner's Opinion that 'Picking One's Nose,' Not Formaldehyde, Is Likely the Cause of Nosebleeds.

Wedner also offers the opinion that nosebleeds are never caused by formaldehyde and that if a nosebleed exists, it is due to nose picking.  Again, Wedner fails to offer support for such opinion.

>Q.      You would agree with me that chronic exposure to formaldehyde has been shown to cause changes in the nasal epithelial?
>
>A.      It has been shown to cause changes in the nasal epithelial which may be a stratification or changes in the stratified corneum, yes. We talked about that before.
>
>Q.      Have you read the Franklin paper?
>
>A.      Yes, I have.
>
>Q.      And Franklin found that school children exposed to formaldehyde had headaches, nose bleeds, and rhinitis; is that right?
>
>A.      Again, I don't recall the exact data in the paper.  If you have it, let's go over it.
>
>Q.      Do you disagree with that statement?

> A. I didn't agree or disagree. I don't remember the study. If you've got it, let's talk about it. If not, let's move on. I'm not going to agree on something based on the memory of a paper I read sometime ago. If you want to discuss papers, I would be delighted to do so, but not based on my memory. If you've got the paper, let's talk about it.
>
> Q. You can't talk about the Franklin paper from memory, can you, Doctor?
>
> A. No. Can you?
>
> Q. I can, but I'm here to ask you questions and find out what your knowledge is in this case and what your opinions are. Do you understand that, Doctor?
>
> A. I do.
>
> Q. I had questions about that based upon your last statement.
>
> A. Well, let's get it out and talk about it.
>
> Q. What level of formaldehyde is necessary to cause a nose bleed?
>
> A. Are we back to nose bleeds? To my knowledge, there is no level of formaldehyde that has ever been shown to cause a nose bleed.
>
> Q. Now, you testified in the Alexander case that statistically speaking, the cause of nose bleeds is picking the nose; is that right?
>
> A. Absolutely.
>
> Q. What studies do you have to show statistically speaking the cause of nose bleeds is picking the nose?
>
> A. I have no studies whatsoever.

Exhibit B, p. 220, l. 24-p. 222, l. 20. Again, Wedner has no basis to support the opinion that nose bleeds, following a long term exposure to formaldehyde are caused by simply picking one's nose. Notably, there is evidence that formaldehyde exposure can cause nosebleeds. *See generally* Zhang, L. et al., *Formaldehyde exposure and leukemia: A new*

9

*meta-analysis and potential mechanisms*, 681:2-3 MUTATION RES. 150 (2009). Therefore, because Wedner in unable to cite support for his proffered opinion, he should be precluded from testifying as such.

## CONCLUSION

Wedner's broad, unsupported opinions are inadmissible. First, Wedner concludes that gaseous formaldehyde has absolutely no effect on atopic eczema. Wedner has proffered this conclusion using a scientific standard that is higher than what is typically required and contradicts the testimony of Defendants' own expert, Dr. Farris. Further, Wedner, without providing support, offers an opinion refuting evidence that children and the elderly have increased sensitization to formaldehyde. Wedner also states that nosebleeds cannot be caused by formaldehyde and it must be a result of picking one's nose. Again, Wedner offers no support for this conclusion. As such, Wedner's opinion do not meet the Rule 702 standards and should be accordingly limited.

Respectfully submitts:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
      GERALD E. MEUNIER, #9471
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &
      Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:   504/522-2304
      Facsimile:   504/528-9973
      gmeunier@gainsben.com


      s/Justin I. Woods
      JUSTIN I. WOODS, #24713

10

**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
DENNIS REICH, Texas #16739600
ROBERT M. BECNEL, #14072

## CERTIFICATE OF SERVICE

     I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing on November 9, 2009.

      s/Gerald E. Meunier
     GERALD E. MEUNIER, #9471