**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | |
|---|---|
| **IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION** | **MDL NO. 1873** |
| | **SECTION "N" (5)** |
| | **JUDGE ENGELHARDT** **MAGISTRATE CHASEZ** |
| **THIS DOCUMENT IS RELATED TO** | |
| *Aldridge, et al v. Gulf Stream Coach Inc., et al*, Docket No. 07-9228; Elisha Dubuclet, individually and on behalf of Timia Dubuclet | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *DAUBERT* MOTION TO LIMIT THE TESTIMONY OF THOMAS W. FRIBLEY**

Plaintiff Elisha Dubuclet, individually and on behalf of Timia Dubuclet, ("Ms. Dubuclet" or "Plaintiff") respectfully submits the following memorandum in support of Plaintiff's *Daubert* Motion to Limit the Testimony of Thomas W. Fribley and hereto states:

**INTRODUCTION**

The matter before this Court involves injuries caused by formaldehyde the Emergency Housing Unit ("EHU") provided to Plaintiff, Timia Dubuclet, subsequent to Hurricane Katrina. Fleetwood Enterprises, Inc. manufactured this EHU, and Fluor Enterprises, Inc. installed it. Defendant Fleetwood, Inc., has designated Thomas W. Fribley as an expert qualified to provide testimony concerning EHU industry standards. As will be discussed *infra*, Fribley's testimony should be limited to the standards promulgated by the National Fire Protection Agency (NFPA), specifically those

referenced in NFPA 1192. As such, Fribley should be prohibited from testifying as to which parties were at fault for various water leaks and maintenance issues. Further, Fribley should be precluded from offering an opinion regarding the need for and/or the adequacy of formaldehyde warnings.

## I. STANDARD OF ADMISSIBILITY.

Under the Federal Rules of Evidence, the party offering the expert witness bears the burden of establishing that the expert is qualified to give the opinion. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). Prior to accepting the testimony of an expert witness, trial courts are charged with a "gatekeeper" function requiring a determination of whether an expert is sufficiently qualified and whether their opinion is based upon sound, reliable theory. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-91 (1993). As such, "[p]roposed testimony must be supported by appropriate validation– *i.e.*, good grounds." *Id*. at 590 (internal quotations omitted). The concept of "good grounds" is codified under Federal Rule of Evidence 702, which provides that expert testimony is deemed reliable so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

Although Fribley possibly "can fix anything anybody can build," such powers do not equate to expertise with regard to all EHU industry standards under Rule 702. Exhibit A, Deposition Transcript of Thomas W. Fribley, p. 168, l. 10-11. The conclusions drawn by Fribley in his Affidavit and testimony go beyond his expertise in order to render opinions, or give the effect of rendering opinions, regarding all industry standards applicable to the EHU. Further, Fribley draws broad conclusions regarding who is responsible for water leaks and maintenance issues that are, as admitted by

Fribley, insupportable, and thus should be excluded. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). Similarly, Fribley's opinions regarding formaldehyde warnings are without basis and inflammatory.

## II. FRIBLEY IS NOT QUALIFED TO RENDER OPINIONS REGARDING HVAC STANDARDS, AND HIS TESTIMONY SHOULD BE LIMITED TO NFPA 1192 STANDARDS.

In Fribley's affidavit, Fribley conclusively states that "[t]he trailer met all applicable industry standards in effect at the time of its manufacture." Exhibit B, Affidavit of Thomas W. Fribley, August 20, 2009, p. 3. However, even though Fribley testified that the EHU met *all* industry standards, in fact, Fribley only applied the standards found in the NFPA 1192.

> Q. What industry standards existed for emergency living units in March of 2006?
>
> A. The requirements were that it be built to travel trailer standards, and it did meet all travel trailer standards regarding fire/life safety issues, fire extinguishers, wire securement, LP line securement, tire sizes, axles, all of those things.
>
> Q. And when you say "the requirements," what requirements are you talking about?
>
> A. Industry requirements.
>
> Q. What industry requirements?
>
> A. The NFPA 1192 standard.
>
> Q. National Fire Protection Act?
>
> A. Yes, sir. Fire/life safety codes.

Exhibit A, p. 103, l. 4-20. Fribley's consideration of only the fire/life standards does not constitute "all" industry standards and should not be referred to as such. As recognized by Fribley, there exist standards for safe levels of exposure to formaldehyde. Exhibit A, p. 157, l. 14-19 ("I'm not an air quality guy, so at that point, you're asking the wrong man. I don't know what constitutes a low versus high. I can't recall what the standards say, but I'm not an air quality guy."); *see also* U.S. Consumer Product Safety Commission, *An Update on Formaldehyde: 1997 Revision*, CPSC Doc #725; U.S. Dep't of Housing and Urban Development, *Mobile Home Research: An Evaluation of Formaldehyde Problems in Residential Mobile Homes. Final Task Report*, 1980.

Further, although Fribley initially claims to be an HVAC expert.

> Q. You're not an expert in heating and air-conditioning systems, are you?
>
> A. I have installed furnaces in recreational vehicles, I worked for Suburban for almost five years and taught manufacturers how to install furnaces, conducting systems. At that point, I had been in the manufacturing end for 20-plus years, and at that point, am very familiar with the ducting systems utilized in recreational vehicles.
>
> Q. So you're not an expert in heating and air-conditioning systems, are you?
>
> A. That's not what I said.
>
> Q. You do consider yourself an expert --
>
> A. I can fix anything anybody can build.
>
> Q. Do you consider yourself an expert in heating and air-conditioning systems?
>
> A. Yes, sir. I teach people how to repair them and how to install them at times.

Exhibit A, p. 167, l. 18-p. 168, l. 16. It is evident that Fribley does not retain the knowledge nor education to analyze crucial HVAC concepts.

Q. Do you know what the ventilation rate is in this travel trailer?
. . .
A. Okay. No.

Q. Do you know what the air exchange rate is for this travel trailer?

A. No.
. . .
Q. Do you know what a negative pascal is?

A. A Pascal is a unit of measurement at that point, that's all it is.

Q. Do you think that this unit with the air-conditioning running should have a positive Pascal or a negative Pascal?

A. At that point, it depends where you're taking the reading from.

Q. If you are taking it inside the unit?

A. If you are taking it inside the unit? I would expect it to -- well, depending on where inside the unit you're taking it. If you're on the return side of the air, then you could get a negative Pascal. If you're on the discharge side of the air, you could have a positive Pascal.

Q. How about if I'm away from the air ducts?

A. I don't understand the positive --the positive versus negative Pascal.

Exhibit A, p. 168, l. 17-p. 170, l.9. As a result, Fribley eventually acknowledges that he is not aware of HVAC standards that affect the composition of EHUs. For example, Fribley is not familiar with SMACNA or ASHRAE standards, which are standards guiding the implementation of HVAC systems. As such, Fribley's discussion of industry standards should be limited to NFPA 1192 standards, and Fribley should be precluded from stating that the EHU met *all* industry standards.

## III. FRIBLEY'S OPINIONS REGARDING MAINTENANCE AND WATER DAMAGES ARE UNSUPPORTED

In addition to concluding that Plaintiff's EHU met *all* industry standards, Fribley also draws broad conclusions that "[w]ater leakage was caused after the trailer was transferred in to FEMA's care and responsibility" and "[t]he trailer showed a lack of maintenance and care, both by the end user and by the company which set the trailer and ran screws through the exterior metal." Exhibit B, p. 3. These conclusions, however, are insupportable, and as noted by the Ninth Circuit, "the party proffering the evidence must explain the expert's methodology and demonstrate in some objectively verifiable way that the expert has both chosen a reliable scientific method and followed it faithfully." *Daubert II v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1319 n. 11 (9th Cir. 1994). Thus, these conclusions should be precluded.

Regarding Fribley's first unsupportable conclusion that water leakage was not the fault of the manufacturer, such is based on his opinion that a ramp was added to the trailer by a third-party and "[t]he screw holes in the lower side metal where water intrusion was occurring was caused when the exterior deck/ramp was added to the trailer." Exhibit B, p. 3. However, Fribley admits during his deposition that such screws did not penetrate into the living quarters, Exhibit A, p. 186, l. 2-8, and were likely not used for the ramp.

> Q. Well, would you even say that it's very likely that a ramp of that size and weight and magnitude would be attached to the trailer with two screws of the size that would make the holes in -- pictured in photographs 18, 19, and 20?
>
> A. No, sir, I cannot say that.

Exhibit A, p. 194, l. 25-p. 195, l. 6. Thus, the very basis of Fribley's opinion is inherently unhelpful and questionable.

Next, Fribley concludes that the EHU lacked maintenance and such was

attributable to the end user and the entity charged with the EHU's installation. Exhibit B, p. 3. However, once again, Fribley has no basis to render such a conclusion as Fribley essentially admits such.

> Q. When you say, "showed a lack of maintenance and care by the company which set the trailer," again, you didn't view the trailer until some two years after it was deactivated. Is that correct, sir?
>
> A. That is correct.
>
> Q. And you really have no basis to know what sort of maintenance and care the company who set the trailer exercised in connection with the trailer at the time the Dubuclets lived in it. Is that a fair statement, sir?
>
> A. That's a fair statement.

Exhibit A, p. 195, l. 13-25. Fribley similarly states with that the lack of maintenance could not attributed to Plaintiffs.

> Q. You're not able to offer sworn testimony that the Dubuclets were negligent in any regard with maintenance for the travel trailer they were living in because you don't know the condition that it existed in after they moved out, do you?
>
> A. That's correct.

Exhibit A, p. 137, l. 15-21. Therefore, Fribley does not have the basis to render an opinion regarding who is responsible for the deterioration of the EHU and any such conclusion should be precluded.

## IV. FRIBLEY IS NOT QUALIFIED TO RENDER OPINIONS REGARDING FORMALDEHYDE WARNINGS

During his deposition, Fribley acknowledged that travel trailer manual he co-authored contained an "advisory" regarding formaldehyde exposure and provided instructions to ventilate the trailer.

Q. You've never written any owner's manual that contained any type of warning about formaldehyde, have you?

A. Yes, sir, in the latest owner's manuals that Coachmen put out just before I left, we had information regarding it then, regarding formaldehyde.

Q. And you said just before you left, you left in 2004?

A. Yes, sir.

Exhibit A, p. 148, l. 21-p. 149, l. 5. However, when asked the reasoning for such an advisory, Fribley states that it is likely because of "attorneys" thereby implying frivolous litigation.

Q. If [small amounts of formaldehyde is] something you can live with, is there any reason to put people on notice of it?

A. Yes.

Q. Why is that?

A. You guys. Attorneys.

Q. No, I'm being --

A. I'm being honest. That's why many warnings are put in vehicles on a multitude of different things.

Q. Is just because of attorneys?

A. And potential litigation, yes,sir.

Q. And don't you think that that has something to do with safety?

A. I have never had an issue with it before in my 30 years.

Q. You never had an issue with formaldehyde --

A. <u>No, sir. Other than walking into a brand-new coach and having some burning of the eyes.</u> As soon as I would ventilate that coach, I had no problems. My family has never had any problems.

Exhibit A, p. 162, l. 1-24 (emphasis added). Fribley's belief regarding formaldehyde warnings are not based on the knowledge, experience, nor education necessary to render an opinion as to why entities have chosen to include such warnings on their products. Any opinion is inherently subjective nature, and as such, is fary beyond any expertise of Fribley and inflammatory.

## CONCLUSION

Fribley's testimony should be limited to only the standards promulgated in NEPA 1192. Fribley has admitted that he limited his analysis to NEPA 1192 and that he is unfamiliar with other standards effecting HVAC that may be utilized in the construction of EHUs. Further, Fribley's opinions regarding the parties responsible for water leaks and maintenance of the EHU are insupportable as Fribley is without the requisite knowledge to draw such conclusions. Finally, Fribley's opinion regarding the purpose of formaldehyde warnings is similarly insupportable and inherently inflammatory. Thus, this Court should grant Plaintiff's motion finding limiting Fribley's testimony to NFPA 1192 standards.

Respectfully submits:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY: s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
DENNIS REICH, Texas #16739600
ROBERT M. BECNEL, #14072

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on November 9, 2009.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471