UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION:  N(5) |
| | | * | |
| This Document Relates to: | | * | |
| *Dubuclet v. Fleetwood Enterprises, Inc., et al.* | | * | |
| | | * | JUDGE: ENGELHARDT |
| Case No. 07-9228 | | * | |
| | | * | |
| | | * | MAG: CHASEZ |

*************************************************************************

**FLEETWOOD ENTERPRISES, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO EXCLUDE
THE TESTIMONY OF PLAINTIFF'S EXPERT, ALEXIS MALLET, JR.**

**MAY IT PLEASE THE COURT:**

Defendant, Fleetwood Enterprises, Inc. (hereinafter "Fleetwood"), respectfully submits

this memorandum of law in support of its motion to exclude the testimony of Plaintiff's expert,

Alexis Mallet, Jr., and respectfully shows this Court as follows.

## I.     BACKGROUND

In support of her claims, Plaintiff Elisha Dubuclet, on behalf of her minor daughter,

Timia Dubuclet ("Plaintiff"), provided fourteen (14) written expert reports, including the 59 page

"Affidavit" of Alexis Mallet, Jr. ("Mallet") which includes fifteen (15) separate opinions.[1]

Mallet has claimed the following areas of expertise: general construction, estimating,

construction defects and failures, remediation, building science and thermography.[2]  Mallet's

---

[1] *See* Affidavit of Alexis Mallet, dated July 17, 2009, attached hereto as Exhibit A.

[2] Deposition of Alexis Mallet, taken on the *Alexander* case,  July 17, 2009, attached hereto as Exhibit B, p. 35.

opinions cover areas including medical opinions, toxicology, design, HVAC, materials, formaldehyde, manufacturing practices, warnings, warranties, emergency response, installation and alternative construction.  To the extent that Mallet offers opinions that he is not qualified to give, such opinions must be excluded.  In addition, many of Mallet's opinions are purely duplicative of opinions offered by others and, as such, should be excluded.  Finally, there exist opinions offered by Mallet that either do not require expert opinion testimony or suffer from unreliable methodology and, as such, are of no assistance to the trier of fact.

This Court has previously issued an Order regarding the admissibility of Mallet's expert opinions in the *Alexander* bellwether case.  (Rec. Doc. 3218).  Although this Court excluded a number of Mallet's opinions in that case, this Court did find that Mallet had relevant expertise to support certain of the opinions he offered.  *Id.* at p. 2.  However, because Mallet offers his opinions in a different context in the Dubuclet case -- one in which he concedes that Fleetwood's travel trailer itself is not defective (and merely FEMA's application of the travel trailer makes it defective) -- Fleetwood reasserts below Mallet's lack of expertise to render his proffered opinions prior to addressing each of his opinions in turn.

## II.     FACTS

### A.     Timia Dubuclet's allegations

Timia Dubuclet has brought a product liability action against Fleetwood under the Louisiana Products Liability Act.  The alleged defects in the Emergency Housing Unit ("EHU") that Timia resided include:

- Defective designs calling for the inclusion of materials which included formaldehyde, when equally suitable materials which did not contain formaldehyde were available.[3]

- Failure to ensure that the products at issue, the Housing Units, met or exceeded industry and government standards.[4]

- Inherent characteristics, known to Defendants, which gave the products such a potential for causing health problems as to render the products unreasonable per se.[5]

**B.     Dubuclet's "Building Science" Expert – Alexis Mallet, Jr.**

Mallet proclaims himself an expert "building scientist."[6]  Mallet's only degree is in pre-law political science.  Exhibit B, p. 22.  While he maintains licenses in the fields of general contracting, residential construction and real estate (dormant), and certifications in mold remediation and manufactured housing installation, the main focus of his work is as an insurance repair specialist for First General Services of the South, Inc. handling insurance claims.  Exhibit B, pp. 25, 30.[7]

The field of "building science" has no national or state board, licensing committee, accreditation process or certification standards.  Exhibit B, pp. 36-37.  There are no continuing education requirements for one to be a "building scientist."  *Id.* at p. 38.  In essence, one is a "building scientist" whenever one says he or she is.  This makes it somewhat difficult to question one's professed expertise as a "building scientist" given that there exist no standards or qualifications by which to measure or define such expertise.  Thus, the nature of the opinions

---

[3] *Aldridge* Nov. 30, 2007 Compl. at p. 26 (paragraphs are unnumbered).
[4] *Id.* at p. 22.
[5] *Id.* at p. 25.
[6] Mallet defines "building science" as the study of the relationship between buildings, air, moisture and temperature. Exhibit B, p. 36.  Mallet has no idea where this definition came from. *Id.*
[7] Mallet also has a construction business (Royal Construction Co.) but admits that all of the work is farmed out to subcontractors and none is done by himself.  *Id.* at pp. 27-29.

proffered by a tendered "building scientist" must be examined to determine whether the "building scientist" has the requisite qualification to render such opinion(s).

Mallet has no expertise in the design and construction of travel trailers, design and installation of HVAC systems, warnings, formaldehyde issues, materials, and mass production of products.  Exhibit B, pp. 39-40, 44-45, 46, 47, 49-50, 159, 217.  Also, Mallet admittedly lacks expertise, specialized knowledge and qualification in the following areas: medical issues, chemistry, toxicology, architecture, engineering, industrial hygiene, indoor air quality and psychology.  *Id.* at pp. 33-34.  Mallet has never had any involvement with a claim of formaldehyde in a travel trailer.  Deposition of Alexis Mallet, taken October 28, 2009, attached hereto as Exhibit C, p. 89.  Mallet similarly concedes having absolutely no expertise whatsoever regarding "any kind of formaldehyde issues," including no expertise in materials containing formaldehyde or factors that promote off-gassing of formaldehyde (in fact, he expressly defers to other experts regarding mechanisms that may cause off-gassing of formaldehyde).  Exhibit B, pp. 46, 61-64, 125, 163-68, 171-73, 185.

### III.    ARGUMENT AND CITATION OF AUTHORITY

**A.    This Court's Gatekeeping Role Regarding Mallet's Opinions**

Federal Rule of Evidence 702 permits a witness who, through his expertise, has the knowledge, skill, experience, training, or education to offer scientific, technical, or other specialized knowledge may testify regarding that knowledge if it will assist the trier of fact to understand the evidence or to determine a fact in issue.  A proposed expert witness must first be qualified to testify regarding the issues for which he is offered.  *See U.S. v. Frazier*, 387 F.3d 1244, 1260-1261 (11th Cir. 2004).  Courts have routinely refused to admit a proffered expert's

testimony where the proffered expert, despite a generalized or professed knowledge of issues arguably relevant to the subject matter, nevertheless lacked expertise with the specific nature of the claims being litigated.  *See*, *e.g,. Kassim v. City of Schenectady,* 415 F.3d 246, 251 (2nd Cir. 2005) (expert lacked knowledge regarding Arabic translation); *In Re: Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 543-544 (S.D.N.Y. 2004) (expert's opinion not based on qualification or experience but on subjective views of ethical standards at issue).

Even if an expert is qualified, his opinion can be excluded if not reliable.  *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).  A qualified expert's testimony is only admissible if it is based upon sufficient facts or data, it is the product of reliable principles and methods, *and* the witness has applied the principles and methods reliably to the facts of the case.  Fed. R. Evid. 702.  The reliability inquiry is flexible, and several nonexclusive factors may be considered, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, and (4) whether the technique is generally accepted in the relevant scientific community.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993) (discussing the four nonexclusive factors); Order dated July 15, 2009, p. 4 (Rec. Doc. 2181) (citing *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)).  The expert testimony must also be relevant -- not only in the way that all testimony must be relevant under Federal Rule of Evidence 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue.  Order dated July 15, 2009, p. 4 (Rec. Doc. 2181) (citing *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir.2003)).

In this case, it is important to note the Louisiana requirements to show an alternative design in a products liability case.  In *Seither v. Winnebago Industries, Inc.*, the court found that the trial judge abused his discretion in failing to grant a directed verdict as to the alternative design issue.  853 So. 2d 37, 41 (La. Ct. App. 2003).  In that case, there was no valid alternative design presented.  The expert "presented merely a concept that was untested, unengineered, and not presented to the jury in any fashion more than mere speculation."  *Id.*  The court also noted that the plaintiffs failed to present a risk/utility analysis of the proposed alternative design.  *Id.*  In that case, the expert presented an economic feasibility analysis, but it did not have a material quote or manufacturing labor factor.  Although *Seither* does not address the admissibility of an expert's opinion directly, it certainly shows the factors that an expert must present in order to have relevant and helpful information for the jury.

*Daubert* also cautions against admitting expert testimony in a case when the application of the expert's methodology to the facts of the case involves an impermissible leap of faith.  The Supreme Court in *General Electric v. Joiner* acknowledged, "[t]rained experts commonly extrapolate from existing data.  But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to the existing data only by the *ipse dixit* of the expert."  522 U.S. 136, 146 (1997).  If the analytical gap between the data and the opinion offered is too great, the testimony is not reliable.  *Id.*

**B.    Mallet's Opinions are Duplicative**

Before responding to the individual deficiencies in Mallet's opinions, it must be noted that one overarching limitation of many of Mallet's opinions is illustrated by Mallet's

6

explanation in his deposition in the *Alexander* case of how he approached his role in this

litigation:

> **Q.**     Okay.  And what was it that you were ultimately asked to do in this case?
>
> **A.**     To assist them with the litigation in helping to identify the issues with the travel trailer that would, I guess, be in conjunction with the formaldehyde issues that were being posed or that were raised.
>
> **Q.**     And since you didn't have any expertise in formaldehyde, how did you feel you were qualified to help them out in that regard?
>
> * * *
>
> **A.**     My involvement is not necessarily in the formaldehyde issue itself, but taking from the assumption that formaldehyde existed, what were the factors with the travel trailer that would have compounded issues regarding the presence of formaldehyde.
>
> **Q.**     And what experience did you have in addressing factors that could compound issues if you assumed the presence of formaldehyde in a structure?
>
> **A.**     Well, the other experts identified the presence of formaldehyde and what elements would affect the activity of off-gases, off-gassing of formaldehyde.  My job was to see what elements regarding the construction or function of the travel trailer that would contribute to the activation of formaldehyde based on what they said activates it and how did that work in conjunction with the building and how the various components with the building come into play with that, of what they said was occurring.
>
> **Q.**     Well, what experience do you have in evaluating or determining what could contribute to the activation of formaldehyde?
>
> **A.**     Well, again, the other experts identified what could activate the formaldehyde. What I did was to identify how those elements could come in contact with or interact with those products with formaldehyde and how that interacted with the travel trailer itself.

Exhibit B, pp. 59-61.  In the Dubuclet case, he similarly testified that "I basically lead the team,

disseminate who is going to look at what, and have them to either -- if there are calculations

involved, perform the calculations that will back up or that will tell me whether a position that

7

we have taken is accurate or inaccurate.  They're the more technical end of the team, but , in general, I see and understand how the whole package fits together, how the parts and system works or doesn't work together, and how – if it doesn't function, why it doesn't function properly."  Exhibit C, pp. 105-06.

Ultimately, Mallet admitted that, in reference to plaintiffs' other experts relative to his scope of work, he was "**. . . just repeating their and taking their position in how the building affected it.**"  Exhibit B, p. 126 (emphasis added).[8]  Mallet has simply taken the opinions of plaintiffs' other experts on issues involving formaldehyde, materials and engineering (none of which he has expertise in) and given his "cumulative appreciation of other experts' testimony" -- a tact disfavored by this Court.  (Rec. Doc. 2181, p. 3).  For example, Mallet admits no expertise in formaldehyde issues; nevertheless, his 59-page Affidavit is replete with liberal usage of phrases such as "excessive formaldehyde," "elevated formaldehyde" and "unsafe levels of formaldehyde."  *See, e.g.,* Exhibit A, pp. 1, 2, 6, 16, 39, 41, 45, 51, 53.[9]  If the "presence" or "quantity" of formaldehyde were not within the intended scope of Mallet's work, as defined by him, the word "formaldehyde" or any of its qualifiers should not have even appeared in his report, opinions or testimony.

Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

---

[8] This Court has already ruled that "No duplicative testimony will be allowed.  Multiple opinions on the same subject will generally not be admitted, absent prior consent of the Court based on a showing of compelling reasons." (Rec. Doc. 2062, p. 1).
[9] This also proves Mallet's advocacy despite his Affidavit's recitation that "It is not the purpose of our investigation, inspection or observation to render opinions regarding the presence or the quantity of formaldehyde in the Dubuclet temporary housing unit." Exhibit A, p. 6.

Fed. R. Evid. 403 (2008).  Several courts have excluded experts who planned to offer cumulative testimony.  In *Miley v. Delta Marine Drilling Co.*, the plaintiff appealed the district court's exclusion of an expert witness who planned to address the loading and unloading of anchor chains.  473 F.2d 856, 858 (5th Cir. 1973).  The U.S. Fifth Circuit Court of Appeals rejected the appeal, holding that the plaintiff had qualified two other experts who testified to the proper on-loading procedure.  *Id.*  Similarly, an Eastern District of Louisiana case would not allow one of the plaintiff's two retained experts to discuss common truck driving practices because the other was already speaking to that issue.  *See Young v. Am. Reliable Ins. Co.*, 1999 WL 600393, *3 (E.D. La. Aug. 9, 1999).  A Western District of Louisiana decision blocked, as cumulative, two products liability experts from discussing the warnings included in the owners' manual of a rifle that malfunctioned and caused injury, as well as the cause of that injury.  *Matthews v. Remington Arms Co.*, 2009 WL 1220541, *2 (May 4, 2009).

Generally speaking, based upon Mallet's testimony that all he has done is repeat and cumulatively summarize plaintiffs' other experts' work and opinions regarding possible interactions of the unit's building dynamics with formaldehyde, he has, by his own admission, rendered his opinions purely duplicative of other experts.  *See* Exhibit C, p. 106 ("my overall function is to put the whole package together").  In fact, the preamble to his conclusions states, "The formaldehyde emissions in the Dubuclet family's temporary housing unit were elevated above a reasonable level of safety according to the opinions of other experts in this matter." Exhibit A, p. 51.  The specific opinions of Mallet that are purely duplicative of other experts, as further described below, are Opinions 1, 6-11 and 14-15.

9

**C.     Mallet is Not Qualified to Render His Proffered Expert Opinions**

The qualification of a witness as an expert, separate and apart from the witness' opinion, is a determination that is a discreet, independent and important requirement in considering the admissibility of an expert's testimony.  *See U.S. v. Frazier*, 387 F.3d 1244 (11th Cir. 2004). Courts have routinely refused to admit a proffered expert's testimony where the proffered expert, despite a generalized or professed knowledge of issues arguably relevant to the subject matter, nevertheless lacked expertise with the specific nature of the claims being litigated, as is the case with Mallet here.  *See e.g. Kassim v. City of Schenectady,* 415 F.3d 246 (2nd Cir. 2005) (lack of knowledge of Arabic translation); *Adams v. Teck Cominco Alaska, Inc.,* 399 F.Supp.2d 1031 (D. Alaska 2005) (expert lacked experience with total dissolved solids technology at issue); *Morales v. E.D. Etnyre & Co.,* 382 F.Supp.2d 1252 (D.N.M. 2005) (lack of experience in distribution, sales and marketing practices); *In Re: Rezulin Products Liability Litigation*, 309 F.Supp.2d 531 (S.D.N.Y. 2004) (expert's opinion not based on qualification or experience but on subjective views of ethical standards at issue); *Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003) (expert's opinion on business valuation excluded where expert had never performed a business valuation); *Montefiore Medical Center v. American Protection Ins. Co.,* 2003 WL 2110 8232 (S.D.N.Y. 2003) (expert lacked specific experience with building deterioration issues despite generalized expertise in field of construction); and *Teska v. Potlatch Corp.*, 184 F.Supp.2d 913 (D.Minn. 2002) (lack of current knowledge and experience with respect to crane operation).

**D.**     **Mallet's Specific Opinions to be Excluded**

<u>**Opinion No. 1**</u>

Mallet opines that the "designer is responsible for the manifestation of the condensation in the wall and roof cavities."  Exhibit A, p. 51.  First, this opinion is duplicative of those offered by Plaintiff's expert Ervin Ritter.  This opinion is based upon alleged dynamics in the trailer causing alleged condensation in the roof and wall cavities from an analysis of dew points in the cavities, use of fiberglass insulation and R-values.  Exhibit A, pp. 51-52.  Ritter, Plaintiff's expert HVAC/ mechanical engineer, devoted his opinions and testimony to these exact topics -- *i.e.*, condensation, insulation and R-value, and dew points.  *See* Report of Ervin Ritter, dated July 16, 2009, attached hereto as Exhibit D, pp. 9-12 (including drawings and diagrams depicting wall/roof cavities, insulation, condensation and dew point processes); Deposition of Ervin Ritter, taken on October 13, 2009, attached hereto as Exhibit E, pp. 127, 162-163, 172-175, 177-79, 187-88, 202-03, 207-08, 227-28 (discussion of Ritter's opinions regarding thermodynamics, insulation, wall and roof cavities, condensation, dew points and R-values).  If Plaintiff's HVAC/mechanical engineering expert is offering and discussing, at length, these very opinions, it is duplicative and cumulative for Mallet also to do so.  Mallet is **". . . just repeating their and taking their position in how the building affected it."**  Exhibit B, p. 126 (emphasis added); Exhibit C, p. 106 ("my overall function is to put the whole package together").

Furthermore, there is no basis for this opinion.  Mallet testified that he did not observe any condensation in the wall or roof cavities of the Dubuclet unit during his inspection.  Exhibit C, p. 111.  He saw no water stains on the ceiling or the furniture of the Dubuclet trailer.  Exhibit C., p. 113.  This is confounded by the fact that Mallet testified that it is not the actual design of

11

the Fleetwood travel trailer that is defective, but rather FEMA's application of the travel trailer

that somehow transformed the unit into a defective product.  Exhibit C, p. 126.

Finally, insofar as his opinion is tied to the design of the trailer, such is impermissible.

Mallet has no expertise in the fields of architecture or engineering.  Exhibit B, pp. 33-34.  He

further admitted that he has no expertise in the design of travel trailers, construction of travel

trailers, materials used or design and installation of HVAC systems (either in general or in travel

trailers specifically).  Exhibit B, pp. 39-40, 44, 47, 49-50.  Lacking even one of these areas of

expertise would seriously call into question any opinion Mallet has to offer regarding the design

of the trailer and its effects, if any, on levels of formaldehyde within the trailer.  Lacking all of

these areas of expertise shows that Mallet is acting only as an advocate.[10]  Therefore, this opinion

should be excluded.

### Opinion No. 2

In his report, Mallet states that the trailer was defective due to the presence of vinyl wall-

covering on the interior (living space) side of the unit's exterior walls.  Exhibit A, p. 52.  This is

simply a recitation by Mallet of his longstanding belief that vinyl wall-covering is never

acceptable in this application in a south Louisiana climate.  *Id.*  This opinion suffers not so much

from lack of qualification but from the methodology upon which the opinion is based. Mallet

states that this application is a problem because it allows for the formation of condensation of

water vapor in the wall space behind the wall-covering.  Exhibit B, p. 126.  Yet, again, Mallet

testified that he did not observe any condensation in the wall or roof cavities of the Dubuclet unit

---

[10] Further revealing his true role of advocate here, Mallet has boldly asserted that although he is certainly not an engineer in any field whatsoever, he can nevertheless offer engineering opinions.  Exhibit B, pp. 198-99.

during his inspection or see any water stains on the ceiling or the furniture of the Dubuclet trailer.  Exhibit C., pp. 111, 113.  Importantly, Mallet admitted that he had no idea what the PERM rating was of the wall-covering.  Exhibit A, p. 27.[11]  Not knowing the PERM rating of the wall-covering, combined with no evidence of condensation in the wall cavity, means only one thing -- Mallet is simply speculating.  Mallet admitted that he knew of no literature or studies supporting his opinion that the use of vinyl wall-covering (regardless of its PERM rating) is contraindicated in travel trailers (in any location).  Exhibit B, p. 131.

Any opinion by Mallet regarding the use of vinyl wall-covering in the trailer unit as a cause of any condition affecting formaldehyde levels must be excluded as not based upon sound methodology and as pure conjecture.

### Opinion No. 3

Mallet next opines that an effective vapor barrier was not placed in the exterior space of the interior wall.  Exhibit A, p. 52.  This is an extension of Opinion 2 and, for the same reasons that Opinion 2 should be excluded, so too should Opinion 3.  The proper vapor barrier that Mallet envisions is a Tyvek air/moisture barrier.  Exhibit B, p. 148.  Nevertheless, Mallet cannot cite to any literature or standard that requires, specifies or recommends the use of such a barrier as he suggests for travel trailers.  Exhibit B, p. 152.

Any opinion by Mallet as to the need or propriety of a vapor barrier on the exterior side of the interior wall (or the interior side of the exterior skin of the trailer) should be excluded as pure speculation rather than a scientifically derived opinion of a well-qualified expert..

---

[11] High PERM ratings allow more moisture and air to pass through the wall covering (thus producing the potential for condensation) whereas low PERM ratings prevent moisture and air from passing through the wall covering.

**Opinions Nos. 4 and 5**

Through these two conclusions, Mallet opines that the designer of the trailer failed to take into account the intended use of its product.  Exhibit A, p. 52.  The opinion then discusses previous natural disasters in other areas of the country.  The opinion concludes stating that "it should not have come as any surprise to anyone . . . that the temporary housing needs . . . would last for years.  *Id.*  This opinion, to the extent that it is an opinion, is subject to exclusion for several reasons.

First, expert testimony is not required for these statements by Mallet --  he says so himself.  When asked why this is something that requires the opinion of a "building science" expert, Mallet responded that ". . . it would be something that someone who was not blind or deaf could contemplate . . . " and that ". . . it doesn't take an expert to know that it wasn't going to happen in a week or months."  Exhibit B, pp. 154, 158.  Finally, Mallet is not an expert in the fields of emergency response, mass production or manufacturing of products, or design or construction of travel trailers.  *Id.* at pp. 33-35, 39-40, 44, 159, 218.  As such, a travel trailer manufacturer's intention is far beyond any expertise of Mallet.[12]  The only reliable source for the manufacturer's intent is from the manufacturer itself --  not from another party's expert's interpretation of same.

Any opinions by Mallet regarding Fleetwood's intended use of the travel trailers, devastation and housing needs following Hurricanes Katrina and Rita and Fleetwood's failing to

---

[12] *See also* this Court's Order dated September 11, 2009, explaining that such observations made by Mallet that are "facts" about which there will undoubtedly be testimony from other witnesses with firsthand knowledge, need not be recited by an expert.  (Rec. Doc. 3218, p. 2) (also finding that "given his lack of specific expertise in the design of travel trailers to be used for emergency response purposes, this opinions is unsupported, and therefore impermissible").

meet FEMA specifications must be excluded as being of no assistance to the trier of fact

(devastation and housing needs spawned by Hurricanes Katrina and Rita) and outside of Mallet's

expertise (manufacturer's intended use).

**Opinion No. 6**

Mallet states that the manufacturer knew or should have known that the use of

formaldehyde-emitting materials would be a problem for occupants.  Exhibit A, pp. 52-53.  For

several reasons, Mallet should be precluded from offering this opinion.

First, Mallet has no expertise in the design or construction of travel trailers.  Exhibit B,

pp. 39-40, 44, 218.  Second, Mallet has no knowledge or expertise regarding any formaldehyde

issues, including what factors cause off-gassing of formaldehyde or at what levels formaldehyde

can cause health concerns.  Exhibit B, pp. 46, 61-64, 126, 164, 195.  Third, Mallet has no

knowledge as to what, if any, products used in the trailer contained formaldehyde and, if so, what

quantities of formaldehyde they contained.  Exhibit B, p. 125.  Fourth, Mallet has no expertise in

the fields of toxicology, industrial hygiene or indoor air quality.  Exhibit B, pp. 33-34.  Lacking

these areas of expertise and any scientific testing, Mallet cannot be permitted to offer opinions

regarding the use of formaldehyde-containing materials and the effects of same, if any, on air

concentrations in the trailer or on the health of occupants in the trailer.  In fact, Mallet stated that

he is simply, again, reciting what the other experts have said.  Exhibit B, pp. 164-65.[13]

Any opinion by Mallet that the manufacturer knew or should have known that the use of

formaldehyde-emitting materials would create a problem for occupants should be excluded as

---

[13] *See also* this Court's Order dated September 11, 2009, excluding this opinion due to Mallet's candid admission that he lacks expertise in the design and construction of travel trailers, his lack of knowledge of issues involving formaldehyde, and his encroachment into the field of medical experts (which Mallet clearly does not belong).  (Rec. Doc. 3218, p. 3).

such opinions are beyond his qualifications, are duplicative of other experts and/or are based upon unsound methodology.

**Opinion No. 7**

Mallet states that many of the trailer's wood components were constructed with materials emitting formaldehyde and that some of the materials used were not manufactured to reduce formaldehyde-emitting levels.  Exhibit A, p. 53.  Mallet is not only not qualified to give this opinion but he is also simply repeating opinions of other experts.

First, Mallet admits that he is simply reciting what other experts, namely Dr. Smulski, have already offered.  Exhibit B, pp. 165-67, Exhibit A, p. 53.  Second, Mallet admitted that he had no idea which products in the trailer contained formaldehyde and, if any, what quantities of formaldehyde such products contained.  Exhibit B, p. 125.  Finally, Mallet admitted that he has no expertise in the fields of material science or formaldehyde issues (including factors that may cause off-gassing of formaldehyde).  Exhibit B, pp. 46-47, 61-64, 164, 185.

Any opinions by Mallet regarding the materials used in the Dubuclet trailer should be excluded as they are purely duplicative and cumulative of other experts offered by plaintiffs and, moreover, are not based upon requisite expertise.

**Opinion No. 8**

Mallet states that the construction means, methods and materials utilized in the Dubuclet trailer contributed to elevated formaldehyde levels and that the wall/floor intersection, wall/ceiling intersection and other wall, floor and ceiling systems "did not appear to be sealed" to prevent air infiltration or movement into the unit.  Exhibit A, pp. 53-54.  For several reasons Mallet should be precluded from offering this opinion.

16

First, Mallet has no expertise in the design or construction of travel trailers, materials used or formaldehyde issues (including factors that may cause off-gassing of formaldehyde). Exhibit B, pp. 39-40, 44, 46-47, 61-64, 125, 185.  Second, Mallet admitted that he is not qualified, nor was it within his scope of work, to offer opinions or comment on levels of formaldehyde in the trailer.  Exhibit B, pp. 46, 61-64, 108, 164; Exhibit A, p. 6.  Third, Mallet is not an engineer and cannot perform the calculations necessary to determine formaldehyde concentrations nor does he have expertise in how formaldehyde is off-gassed from building products, how off-gassed formaldehyde moves or concentrates in the air.  Exhibit B, pp. 170-73.

Furthermore, to the extent this opinion is based on his inspection of the Dubuclet unit and his use of thermographic imaging, it is not based on good methodology and was not rendered under circumstances sufficiently similar to the conditions under which the Dubuclet's occupied the unit such as to be of assistance to the trier of fact.  Mallet testified that when FEMA personnel pulled out the slide-out on the Ducublet unit on the day of inspection, it was not properly leveled.  Exhibit C, pp. 265-66.  Due to the failure to level the slide-out, it would not have sealed properly.  *Id.* at p. 266.  As such this unleveled component necessarily affected Mallet's thermographic imaging on the date of inspection yet, Mallet makes no attempt to account for this lack of seal, a potential entry and egress for air, in his calculations or opinions and he makes no effort to show that this lack of leveling was a condition that existed in the Dubuclet unit when they occupied it as opposed to it having occurred in deactivation and transportation of the unit after the Dubuclets moved out.  Finally, this opinion is purely duplicative of those offered by Plaintiff's experts Ritter.  Exhibit D, pp. 9-12.

Lacking expertise in several fundamental core areas that would be required to support this opinion, Mallet should be precluded from offering any opinions that the "construction means, methods and materials utilized" in the Dubuclet trailer "contributed to elevated formaldehyde levels."

**<u>Opinion No. 9</u>**

In conclusion number 9, Mallet opines that the air conditioning duct system is not properly sealed and creates a negative pressure system in the trailer that acts to bring in warm, humid outside air, thus contributing to the release of formaldehyde in the trailer. Exhibit A, p. 54. Again, Mallet should be precluded from offering this opinion for several reasons.

First, Mallet has no expertise in the design and installation of HVAC systems and, specifically, no such expertise in travel trailer HVAC systems. Exhibit B, pp. 39, 47, 49-50. Mallet has admitted he has never testified as an expert relative to a negative pressure situation in a travel trailer. Exhibit C, p. 96. In fact, with respect to the Dubuclet unit, he did not personally inspect any of the ductwork, did not find any area of leakage in the ductwork, nor did he measure or attempt to quantify in any way the amount of cold air that he speculated was leaking. Exhibit C, p. 141-42, 145. Second, and more obviously, this opinion is duplicative of the opinions offered by Plaintiff's HVAC/mechanical engineering expert, Ritter. Ritter has authored a 34 page report offering opinions detailing the dynamics and standards of HVAC-system design, installation and operation as well as duct leakage, negative pressure, building leakage, and compliance with codes, standards, instructions and/or guidelines. *See* Exhibit D.

Third, Mallet bases at least some of this opinion on the notion that the trailer's HVAC system did not meet standards promulgated by ASHRAE and/or SMACNA. Exhibit B, pp. 183-

18

85.[14]  Yet, Mallet admitted that (a) that these standards are not specifically applicable to travel trailer HVAC systems and (b) he could not state what ASHRAE or SMACNA standard would apply to air conditioning duct work construction, thus rendering his opinion of no real value or usefulness.  Exhibit B, pp. 183-85.  Furthermore, to the extent this opinion is based on his inspection of the Dubuclet unit and his use of thermographic imaging, it should be excluded as explained more fully under "Opinion No. 8."

Finally, Mallet again states the opinion that the trailer's HVAC system's condition contributed to the release of formaldehyde but Mallet is not qualified to render this opinion as he admits having no expertise in factors that may cause off-gassing of formaldehyde.  Exhibit B, pp. 46-47, 61-64, 164, 185.  Further, Mallet has no expertise in the fields of industrial hygiene, engineering or materials -- each or some of which would be required to render the opinion he has given above.  Exhibit B, pp. 33-34, 47.

Any opinions by Mallet regarding the design, construction, operation or condition of the trailer's HVAC system, duct leakage, building leakage, negative pressure and/or release of formaldehyde in the trailer should be excluded as duplicative of other experts' opinions, beyond his qualification and not based on sound methodology.

### Opinions Nos. 10 and 11

Mallet states that "either the manufacturer, FEMA or Fluor should have devised a safe means of jacking the temporary housing unit by either increasing the rigidity of the metal frame, using a unified hydraulic jacking system . . . or devised a plan including sound engineering

---

[14] "ASHRAE" stands for the American Society of Heating, Refrigeration and Air Conditioning Engineers. "SMACNA" stands for Sheet Metal and Air Conditioning Contractors National Association.

practices." Exhibit A, pp. 54-55. The portion of this opinion that implicates Fleetwood --

"increasing the rigidity of the metal frame" -- should be excluded as it is not based upon requisite

expertise or sound methodology.[15]

Again, Mallet has no expertise in the fields of engineering or materials. Exhibit B, pp.

33-34, 47. Mallet admitted that he did not know the type of steel that was used on the trailer

frame nor did he know the steel's tensile strength (thus, he cannot opine if it needs more

rigidity). Exhibit B, p. 188. In any event, Mallet does not, and cannot, offer the opinion that

increased rigidity would have prevented any problems during jacking or that the steel's current

rigidity was insufficient in any way (thus his opinion is of no assistance to the trier of fact).

Finally, Mallet admitted that he had no knowledge (*i.e.* by way of testing, research, etc.) as to

how increasing the steel frames' rigidity would affect the performance characteristics of the

trailer. Exhibit B, pp. 189-90.

Most importantly, there was ***no evidence of any structural damage found during

inspection of the Dubuclet unit.*** Mallet did not see any cracks in any walls or wall panels, or

ceiling panels falling. Exhibit C, p. 152. Similarly, with respect to Conclusion 11 that the use of

the blocks somehow created stress on the roof, Mallet admitted that whatever stress may

theoretically have occurred, he could identify ***no damage to the unit***. Exhibit C, p. 153.

Furthermore, his observation that there was "an unusual amount of sealant" on the roof really has

no bearing to this case. Mallet again admitted that there was no evidence of any roof look in the

Dubuclet unit. Exhibit C, p. 154.

---

[15] This opinion is also duplicative of Plaintiff's expert Charles Moore. *See* Report of Charles David Moore, dated
July 16, 2009, attached hereto as Exhibit F, p. 7.

Therefore, Mallet's conclusions numbers 10 and 11 should be excluded as not based on requisite expertise and/or not based upon sound methodology or, alternatively, as duplicative and/or irrelevant and unable to assist the trier of fact.

**Opinion No. 12**

Mallet states that the warnings in Fleetwood's owner's manual and inside the Dubuclet unit regarding the potential for formaldehyde emissions "lack clarity."  Exhibit A, p. 55.  Mallet also adds his observation that there was no warning regarding "issues that can result" from ventilating in hot, humid climates or the "mold pollen, moisture, etc. that could affect the occupants."  These opinions should also be excluded for several reasons.

First, this Court has already excluded from trial proffered "warnings" or "human factors" expert opinions.  *See* Rec. Doc. 2181 (excluding the *Alexander* plaintiffs' warnings/human factors expert Lila Laux, Ph.D.) and Rec. Doc. 4845 (excluding Plaintiff's expert Dr. Kenneth Laughery's opinions regarding adequacy of warnings).  Second, Mallet has fully admitted that he is not an expert in the field of warnings or human factors.  Exhibit B, pp. 44-45, 200.  Nor is he a medical expert able to render opinions on how mold pollen, moisture, etc. would affect the occupants.  And finally, Mallet testified that conclusion number 12 was not "to render an opinion.  I was listing observations of what was in the unit and the manual."  Exhibit C, p. 154.

Any "opinions" offered by Mallet regarding the presence of and/or necessity of warnings about formaldehyde or mold pollen, etc. should be excluded because they are not based upon requisite expertise and are of no assistance to the trier of fact.

### Opinion No. 13

Mallet offers the opinion that Fleetwood "failed to conform to its express warranty." Exhibit A, pp. 55-56.  Fleetwood is simultaneously filing a Motion for Summary Judgment as to Plaintiff's claim for breach of express warranty.  Accordingly, any opinions of Mallet (or any other expert) regarding alleged non-conformance with or breach of an express warranty must be excluded as these claims should be removed from this litigation for the reasons set forth in that Motion.

### Opinion No. 14

Mallet states that Fleetwood produced a product that was unreasonably dangerous "as opined by other experts" with respect to formaldehyde emissions because Fleetwood failed to apply "**new**" FEMA procurement specifications.[16]  Exhibit A, p. 56.  Once again, this opinion should be excluded for several reasons.

First, this opinion is admittedly entirely duplicative of the opinions offered by Plaintiff's other experts.  *Id.*  In fact, when directly asked whether he had his own opinion with respect to this conclusion, he quite candidly responded, "No.  That is why I said 'by others.'"  Exhibit C, pp. 158-59.  Second, Mallet has no expertise in the in the design or construction of travel trailers.  Exhibit B, pp. 39-40, 44, 47, 49-50.  Nor does he have expertise in formaldehyde emissions or off-gassing.  Exhibit B, pp. 170-73.

And finally, this opinion is fundamentally untenable.  Mallet is faulting Fleetwood for not achieving **current** FEMA procurement specifications when it designed and manufactured the

---

[16] Mallet's declaration that the trailer was "unreasonably dangerous" is an ultimate legal conclusion and, thereby, beyond his qualifications and constitutes an impermissible invasion of the province of the jury.

subject trailer in 2006 -- well before the existence of the current FEMA procurement

specifications.  A manufacturer cannot be at fault for not achieving standards that were non-

existent; thus, Mallet's opinion is based upon a faulty premise and, therefore, inadmissible.

Further in this regard, FEMA's deputy administrator, David Garratt, testified that the travel

trailer manufacturers who were providing units under the 2004 FEMA specifications were

meeting or exceeding industry standards.  Deposition of David Garratt, taken on July 7, 2009,

attached hereto as Exhibit G, pp. 157-58.  Moreover, Garratt confirmed that there were no

applicable federal (*i.e.,* HUD) standards that applied to trailer construction nor were there any

applicable formaldehyde specifications applicable to trailers at that time.  *Id.* at pp. 158, 183-

84.[17]

       A plaintiff, to prove a design defect, must prove that (1) there existed an alternative

design for the product that was capable of preventing the claimant's damage and (2) the

likelihood that the product's design would cause the damage and the gravity of the damage

outweighed the burden on the manufacturer of adopting such alternative design and the adverse

effect, if any, of such alternative design on the utility of the product.  La. Rev. Stat. §9:2800.56.

The plaintiff in a design defect claim must also present specific evidence of an actual design that

existed when the product left the manufacturer's control (*i.e.,* technical drawings, calculations,

scientific study, publication of engineering principles, etc.).  *See, e.g., Morgan v. Gaylord

Container Corp.* 30 F.3d 586, 590 (5th Cir. 1994); *Seither v. Winnebago Industries, Inc.*, 853

So.2d 37, 41 (La. App. 4th Cir. 2003).  It is stated that such plaintiffs must produce evidence

---

[17] Garratt stated that the new FEMA specification of .016 ppm for formaldehyde emissions after 2007 was for
"brand-new units that were at levels that are far below any living environment any place."  *Id.* at p. 192.

regarding the frequency of similar accidents or damage, economic costs entailed by same, and

the extent of reduction in frequency of such accidents or damages had the alternative design been

used.  *See Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 183 (5th Cir. 1990),

*abrogated on other grounds*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075, n.14 (5th Cir. 1994).

Therefore, any opinions by Mallet regarding travel trailer design and construction

standards, particularly how they relate to formaldehyde emissions after the construction of the

Dubuclet unit, should be excluded as duplicative of other experts, beyond Mallet's qualifications,

and irrelevant to this litigation.

### Opinion No. 15

And finally, Mallet offers various suggested alternative means of construction that he

states would have cured the problem and met the then non-existent FEMA standard.  Exhibit A,

pp. 56-57.  As has been made abundantly clear, Mallet has no expertise in the design or

construction of travel trailers, mass production manufacturing processes, materials, engineering,

industrial hygiene, HVAC systems (in general and in travel trailers) or any issues regarding

formaldehyde (including factors that may cause off-gassing of formaldehyde).  Exhibit B, pp. 33-

34, 39-40, 44, 46-47, 49-50, 61-64, 185, 213.

Mallet offered no "specific evidence of an actual design that existed when the product left

the manufacturer's control."  Mallet was unable to offer an opinion on the cost or feasibility that

would be involved if his suggestions were implemented.  Exhibit B, p. 214.  In addition, Mallet

cannot and does not offer the opinion that the suggested alternative methods would actually have

the desired effect -- thus his suggestions amount to nothing more than pure speculation.  He does

not know whether these materials he suggested are being used in travel trailers even now, much

less back in 2006.  Exhibit C, p. 160.  In fact, there has been no showing that alternative

materials were even available in 2006 in sufficient quantities for this application or that had such

been utilized, the current specification would have been met.  Mallet also admitted that he had

not performed any testing or research and development of his suggested alternatives.  Exhibit B,

pp. 213-16; Exhibit C, p. 160.  Mallet actually characterized this section of his report as just a

"general statement" based upon the findings of the other experts.  Exhibit B, p. 213.  For all these

reasons, this Court previously excluded the same opinion proffered by Mallet in the *Alexander*

case.  (Rec. Doc. 3218, p. 3).

Any opinion by Mallet that the trailer was unreasonably dangerous or defective, or as to

alternative design(s) or construction, should be excluded as based upon then non-existent

standards, beyond his qualifications and premised upon unsound methodology.

## IV.    CONCLUSION

Fleetwood respectfully requests that this Court enter an Order precluding all opinions of

Alexis Mallet, Jr. as cited herein.  It is requested that Mallet be precluded from offering any

opinion that the design, construction and/or materials used in the design or construction of the

Dubuclet unit and/or that the design, installation, operation or condition of the trailer unit's

HVAC system were defective, unreasonable and/or caused or contributed to levels of

formaldehyde inside the trailer unit.  In addition, it is requested that Mallet be precluded from

offering any opinion regarding alternative design or construction of the Dubuclet trailer unit.

Finally, it is requested that Mallet be precluded from offering any opinion regarding warnings as

well as conformance with or breach of express warranties.

This 9th day of November 2009.

Respectfully submitted:

*/s/ Richard K. Hines, V*
Richard K. Hines, V
GA Bar No. 356300
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)


Jerry L. Saporito
LA Bar No. 11717
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-1701
(504) 585-7500 (phone)
(504) 585- 7775 (fax)

Counsel for Fleetwood Enterprises, Inc.

## C E R T I F I C A T E OF SERVICE

I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )  Hand Delivery                    ( )  Prepaid U.S. Mail

( )  Facsimile                        ( )  Federal Express

(X)  CM/ECF

New Orleans, Louisiana, this 9th day of November 2009.

*/s/ Richard K. Hines, V*
Richard K. Hines, V
Georgia Bar No. 356300
richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)