UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | | |
|---|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 | |
| | FORMALDEHYDE | * | | |
| | PRODUCTS LIABILITY | * | | |
| | LITIGATION | * | SECTION: N(5) | |
| | | * | | |
| This Document Relates to: | | * | | |
| *Dubuclet v. Fleetwood Enterprises, Inc.* | | * | | |
| | | * | JUDGE: ENGELHARDT | |
| *Case No. 07-9228* | | * | | |
| | | * | | |
| | | * | MAG: CHASEZ | |

*****************************************************************************

**FLEETWOOD ENTERPRISES, INC.'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO LIMIT
<u>DR. GEORGE A. FARBER'S TESTIMONY REGARDING CAUSATION</u>**

Defendant, Fleetwood Enterprises, Inc. (hereinafter "Fleetwood") moves this Court to limit the testimony of George A. Farber, M.D.. Dr. Farber, who had been a long-practicing New Orleans dermatologist with a number of clinics in the area, has been proposed as one of Plaintiffs' experts on causation to link Ms. Dubuclet's alleged injuries, contact dermatitis and irritant symptoms, to exposure to formaldehyde.[1] Yet his testimony at his deposition shows that he *does not know* whether she is "allergic" to formaldehyde. He cannot cite a single scientific article in the world's literature that supports any type of link between atopic dermatitis and gaseous formaldehyde.[2] On November 2, 2009, plaintiffs' liaison counsel notified the Court and

---

[1] Dr. Farber has not offered any opinions on cancer or fear of cancer.
[2] Not knowing the order the Court will consider the various motions Fleetwood is filing on the medical issues presented in this case, it is important for the Court to understand that it is Fleetwood's medical position that it has been well established in the world's medical literature that formaldehyde in solid (cosmetics, textiles) and aqueous (formalin) states is a skin contact allergen. However, it is Fleetwood's very strong position -- supported by the opinion of Dr. Howard Maibach, one of the world's leading dermatologists and researcher (who, among other things, is the patent holder on the patch test administered to Timia) -- that it has never been established in the world's medical literature that formaldehyde in its gaseous state either causes or exacerbates atopic dermatitis (eczema and related skin disorders).

the parties that Dr. Farber's medical license had been revoked by the State of Louisiana.[3] As detailed below, Dr. Farber's testimony should be severely limited and he should not be permitted to offer any opinion regarding causation. Not knowing the order the Court will consider the various motions Fleetwood is filing on the medical issues presented in this case, it is important for the Court to understand that it is Fleetwood's medical position that it has been well established in the world's medical literature that formaldehyde in solid (cosmetics, textiles) and aqueous (formalin) states is a skin contact allergen. However, it is Fleetwood's very strong position -- supported by the expert opinion of Dr. Howard Maibach, one of the world's leading dermatologists and researcher (who, among other things, is the patent holder on the patch test administered to Timia) -- that it has never been established in the world's medical literature that formaldehyde in its gaseous state either causes or exacerbates atopic dermatitis (eczema and related skin disorders).

## I.     Factual Background

### A.     Ms. Dubuclet has disclosed her treating dermatologist Dr. Farber as an expert on causation.

Dr. George A. Farber, through his clinic physicians, treated Timia Dubuclet for a period of time, starting on May 27, 2008.[4] Dr. Farber's staff performed a T.R.U.E. Test on Ms. Dubuclet on July 3, 2009, and he has interpreted these tests.[5] Based on the T.R.U.E. Test, he concludes that she is "allergic to formaldehyde":

> These positive test results indicate that Ms. Dubuclet had been sensitized to formaldehyde and is now allergic to formaldehyde.[6]

---

[3] Despite this revocation, Plaintiff has not withdrawn Dr. Farber as an expert.
[4] Farber Dep. at 12:3-5, excerpts attached as Ex. B. Dr. Farber himself did not see Ms. Dubuclet until July 3, 2009. *Id.* at 11:23-14:14.
[5] Farber Aff. at 3 (DUB001140), attached as Ex. C.
[6] *Id.* at 3 (DUB001140) (Ex. C). Dr. Lawrence G. Miller also relies on Dr. Farber's conclusion in his affidavit. Miller Aff. at 2 (DUB000597), 5 (DUB000600), attached as Ex. D.

2

He further concludes in his Affidavit:

> It is my opinion that Ms. Dubuclet has been sensitized and irritated by exposure to the tested chemicals, and present and continued medical problems are likely to persist for life.
>
> It is my opinion, that more likely than not, and with reasonable medical certainty and probability that Ms. Dubuclet will continue to have problems with her skin, consequent to the sensitization and long-term exposure to the products tested.[7]

In his deposition, he testified that he is giving the opinion that exposure to formaldehyde exacerbated Ms. Dubuclet's eczema/dermatitis:

> Q. Let's go to your fourth page of your report. You say: The issue is formaldehyde sensitivity and exacerbation of any possible underlying skin condition or upper respiratory condition due to chronic exposure. I just didn't follow that sentence. What did you mean by that?
>
> A. That's where she was believed to have been sensitized or aggravated. And I can't tell you with any degree of certainty that she didn't have an allergy before, but during the time she was exposed she had exacerbation. Now, whether that was cause and effect or just effect, I can't separate them.
>
> Q. Let's then go on the record, at least insofar as that is concerned. It's your opinion that while she was living in the trailer that she was aggravated by formaldehyde. Stop there. That is your opinion?
>
> A. More likely than not she had some exposure in her lifetime, short as it was, and she may have developed an allergy but didn't manifest it, low level. Living in high intensity exposure then she would manifest it.
>
> Q. Let me go back to the first part. With respect to cause, you can't sit here and you are not telling us that you can say, more likely than not, that eczema, the contact dermatitis, whatever it is, was caused by the exposure in the trailer; all you can say is that it is your opinion that it was aggravated?
>
> A. More likely than not aggravated.
>
> Q. Not caused; you cannot give that opinion?

---

[7] Farber Aff. at 4 (DUB001141) (Ex. C).

3

      A.      I cannot distinguish separately with certainty.[8]

      **1.**      *Opinions Based on the T.R.U.E. Test.*

In his deposition, he elaborates on the meaning of the T.R.U.E. Test.[9] For purposes of this motion, according to Dr. Farber, there are four chemicals that contain formaldehyde that are tested in the T.R.U.E. Test: numbers 13, 14, 21, and 26 in the Standard Data Collection Form.[10] Critically, Chemical 21 is a test for formaldehyde "by itself", and Ms. Dubuclet did *not* react to the formaldehyde.[11] Despite that negative result, Dr. Farber -- at least in his affidavit -- states that she is allergic to formaldehyde based on her purported reaction to the three other chemicals. According to Dr. Farber, there are three other chemicals that contain formaldehyde that are tested in the T.R.U.E. Test: numbers 13, 14, and 26 in the Standard Data Collection Form. Notably, Dr. Farber cannot state how much formaldehyde is in Chemicals 13,[12] 14,[13] or 26.[14] Nor does Dr. Farber know if Ms. Dubuclet was actually reacting to the formaldehyde part -- if any -- of the complex chemicals:

- Chemical 13 was p-tert Butylphenol Formaldehyde, and Dr. Farber could not tell from the T.R.U.E. Test which constituent element in that chemical would be the sensitizing agent.[15] This chemical is a resin principally used as leather glue.[16]

---

[8] Farber Dep. at 53:15-55:4 (Ex. B).
[9] The T.R.U.E. Test is used to test for suspected allergens and is a patch test in the form of cards that are applied to the patient's back for approximately 48 hours. The patient is then evaluated for any skin reaction to the suspected allergens. There are 28 allergens that are included, as well as a negative control. *See, e.g.*, Farber Dep. at 45:8-46:8 (describing the test) (Ex. B); *see also* Standard Data Collection Form (DUB001143, attached to Farber Aff., Ex. C) (identifying the allergens and negative control).
[10] Farber Dep. at 47:5-10 (Ex. B); Standard Data Collection Form for Ms. Dubuclet (DUB001143) (Ex. C).
[11] Farber Dep. at 48:14-16 (Ex. B); Standard Data Collection Form for Ms. Dubuclet, attached to Farber Aff. (DUB001143, showing no reaction to formaldehyde, Chemical 21) (Ex. C).
[12] Farber Dep. at 47:21-48:3 (Ex. B).
[13] *Id.* at 48:4-5 (Ex. B).
[14] *Id.* at 48:6-7 (Ex. B).
[15] *Id.* at 49:13-21 (Ex. B); Standard Data Collection Form for Ms. Dubuclet (DUB001143, showing positive reactions to only 13, 14, and 26) (Ex. C).
[16] *See* Important Patient Info., DUB001144 (attached to Farber's Aff., Ex.C).

- Chemical 14 was an epoxy resin, and Dr. Farber cannot determine from the T.R.U.E. Test which part of the epoxy resin was the sensitizing agent.[17] Epoxy resin is in adhesives, inks, and some vinyl and plastics.[18]

- Chemical 26 was Imidzolidinyl Urea, and Dr. Farber could not determine which part of that chemical Ms. Dubuclet was sensitized to.[19] This chemical is found in cosmetics, soaps, and other hygiene products.[20]

Assuming for purposes of this motion that Dr. Farber is correct when he states that each of these three complex chemicals contain formaldehyde as one of their many constituent parts, Dr. Farber swore that he does not know whether Ms. Dubuclet was sensitized to the formaldehyde in the chemical or the other constituent element of those three chemicals:

> Q.   And as we say, we don't know what in that formaldehyde-containing product might have been the sensitizer to that T.R.U.E. Test, correct?
>
> A.   We don't know specifically, but it was a formaldehyde-containing product and that's all I can tell you.
>
> Q.   And we do know that with respect to the one test that was specific for formaldehyde, that was a negative result on that test?
>
> A.   On that test.[21] Indeed, earlier in the deposition, his testimony has the effect of changing his affidavit:
>
> Q.   And you don't know what constituent part of the epoxy resin could have been the sensitizing agent?
>
> A.   That is correct.

---

[17] Farber Dep. at 49:22-50:5 (Ex. B). The Standard Data Collection Form indicates that Chemical 14 is the epoxy resin. (DUB001143, attached to Farber's Aff., Ex. C).
[18] Important Patient Info., DUB001145 (attached to Farber's Aff., Ex. C).
[19] Farber Dep. at 50:6-16 (Ex. B). The Standard Data Collection Form indicates that Chemical 26 is Imidazolidinyl Urea. (DUB001143, attached to Farber's Aff., Ex. C).
[20] Chemical 26 Info., DUB001146 (attached to Farber's Aff., Ex. C).
[21] Farber Dep. at 93:21-94:7 (Ex. B).

> Q. And the same insofar as Imidazolidinyl Urea, you don't know what constituent element of that chemical compound would have been the sensitizing or could have been the sensitizing agent?
>
> A. No. As I understand your question, can I be specific as to those three tests, as to whether or not it was formaldehyde or something else?
>
> Q. Or something else, exactly.
>
> A. I cannot tell you that.
>
> Q. So really, if we look at your next sentence under the paragraph,[22] it simply reads: T.R.U.E. Test report on the second reading, No. 13, No. 26 remained at one plus. Your next paragraph reads: These positive test results indicate that Ms. Dubuclet had been sensitized to formaldehyde and now is allergic to formaldehyde.
>
> What you are really saying is she tested positive to 13, 14 and 26, but you do not know what constituent parts of that triggered the positive response; is that correct?
>
> A. Correct.
>
> Q. So that you cannot say whether or not it was formaldehyde or one of the constituent elements that triggered the positive result; is that correct?
>
> A. Correct.[23]

His affidavit can no longer properly state that she is allergic to formaldehyde, only that she had a positive reaction to his T.R.U.E. Test to those three chemicals.

### 2.   *Scientific basis for causation opinion.*

When questioned on his scientific basis for his causation opinion, he points to Ms. Dubuclet's subjective complaints and the T.R.U.E. Test, as described above. Besides Ms. Dubuclet's subjective complaints, nothing supports Dr. Farber's conclusion:

---

[22] This question is referring to Dr. Farber's report at page 3. *See* Farber Dep. at 49:5-9 (indicating that the questions are referring to Dr. Farber's report) (Ex. B).
[23] Farber Dep. at 50:2-51:11 (Ex. B).

6

> Q. Dr. Farber, we have spent quite a bit of time going through all the various medical records here, indeed pulverizing those medical records. You would agree with me, would you not, that the objective clinical findings that she presented with over the course of her life are the same as the objective clinical findings seen by you and those after October of 2007?
>
> A. Yes.
>
> Q. And all you've got to go on at this point that formaldehyde had anything to do with any part of her disease process is the subjective complaints that she made to you that during a period of time she suffered from intensity of the itching and rashes; is that correct?
>
> A. That, plus her positive test of formaldehyde-containing product.[24]

Moreover, Dr. Farber could not cite any scientific article that has connected formaldehyde vapor to contact dermatitis. Although he cited an example of formaldehyde's use in the apparel industry,[25] when questioned on only formaldehyde gas and formaldehyde vapor purportedly causing contact dermatitis, he could not cite to any study or journal article.[26] Nor could he cite any article that says exposure to gaseous formaldehyde causes or exacerbates atopic dermatitis.[27] He is only familiar with articles dealing with formaldehyde in solution and formaldehyde in solid form.[28]

### 3. *Opinions regarding the construction of EHUs.*

Not only does Dr. Farber opine about formaldehyde and Ms. Dubuclet's medical condition, but he also makes statements about the use of formaldehyde in wood products and the production of EHUs following Hurricane Katrina.[29] In his affidavit, he states that "there was mass production of trailers and ultra rapid assembly of trailers, for emergency living

---

[24] Farber Dep. at 93:1-20 (Ex. B).
[25] *Id.* at 36:2-41:13 (Ex. B).
[26] *Id.* at 41:17-42:18 (Ex. B).
[27] *Id.* at 55:22-56:10 (Ex. B).
[28] *Id.* at 56:11-18 (Ex. B).
[29] Farber Aff. at 3 (DUB001140) (Ex. C).

quarters . . . ."[30] At his deposition, he clarified his statement that the trailers were constructed quickly: "That's not a scientific fact. It is just a deduction based on what was happening and reading a newspaper and all that stuff."[31]

      He also stated in his affidavit that:

> Formaldehyde was used in the particle board and other wood products used in the construction of the trailer. There was confined space, and inadequate ventilation compared to a home with higher ceiling and larger rooms, to diffuse the density of the formaldehyde fumes.[32]

But at his deposition, he stated that "everybody has a consensus of opinion that trailers are small compared to a large home."[33] Nor did he talk to the Dubuclets about how they ventilated the EHU.[34]

## II.   Argument & Citation to Authority

### A.   This Court's Gatekeeping Role Regarding Dr. Farber's Opinions.

    Federal Rule of Evidence 702 permits a witness who, through his expertise, has the knowledge, skill, experience, training or education to offer scientific, technical, or other specialized knowledge may testify regarding that knowledge if it will assist the trier of fact to understand the evidence or to determine a fact in issue. A proposed expert witness must first be qualified to testify regarding the issues for which he is offered.[35] Courts have routinely refused to admit a proffered expert's testimony where the proffered expert, despite a generalized or professed knowledge of issues arguably relevant to the subject matter, nevertheless lacked

---

[30] *Id.*(Ex. C)
[31] Farber Dep. at 57:18-58:21 (Ex. B).
[32] Farber Aff. at 3 (DUB001140) (Ex. C).
[33] Farber Dep. at 61:1-3 (Ex. B).
[34] *Id.* at 61:21-62:17 (Ex. B).
[35] *See U.S. v. Frazier*, 387 F.3d 1244, 1260-1261 (11th Cir. 2004).

expertise with the specific nature of the claims being litigated.[36] Even if an expert is qualified, his opinion can be excluded if not reliable.[37]

Once the expert is deemed qualified, his testimony is only admissible if it is based upon sufficient facts or data, it is the product of reliable principles and methods, *and* the witness has applied the principles and methods reliably to the facts of the case.[38] The reliability inquiry is flexible, and several nonexclusive factors may be considered, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, and (4) whether the technique is generally accepted in the relevant scientific community.[39] The expert testimony must also be relevant -- not only in the way that all testimony must be relevant under Federal Rule of Evidence 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue.[40]

*Daubert* also cautions against admitting expert testimony in a case when the application of the expert's methodology to the facts of the case involves an impermissible leap of faith. The Supreme Court in *General Electric v. Joiner* acknowledged, "[t]rained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to the existing data only by

---

[36] *See, e.g,. Kassim v. City of Schenectady,* 415 F.3d 246, 251 (2nd Cir. 2005) (expert lacked knowledge regarding Arabic translation); *In Re: Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d 531, 543-544 (S.D.N.Y. 2004) (expert's opinion not based on qualification or experience but on subjective views of ethical standards at issue).
[37] *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).
[38] Fed. R. Evid. 702.
[39] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993) (discussing the four nonexclusive factors); Order dated July 15, 2009 at 4 (Rec Doc. 2181) (citing *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)).
[40] Order dated July 15, 2009, at 4 (Rec. Doc. 2181) (citing *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)).

the *ipse dixit* of the expert."[41] If there exists too great an analytical gap between the data and the opinion offered, the testimony is not reliable.[42] *Joiner* reminds district courts that they must review the reasoning used by an expert in applying a given methodology to the expert's ultimate opinion.[43] Ultimately, when the evidence does not "fit" the conclusion, the testimonial evidence is not reliable.[44]

        **B.    Dr. Farber is not qualified to render a causation opinion regarding formaldehyde.**

While Dr. Farber may testify to his previous treatment of Ms. Dubuclet, his knowledge, skill, experience, training, and education do not permit him to offer opinions to the jury about any relationship between gaseous formaldehyde and Ms. Dubuclet's claimed injuries. Although Dr. Farber testified regarding his experience with formaldehyde in apparel he only related experience with formaldehyde in its solid form.[45] When questioned on only formaldehyde gas and formaldehyde vapor purportedly causing contact dermatitis, he could not cite to any study or journal article.[46] Nor could he cite any article that says exposure to gaseous formaldehyde causes or exacerbates atopic dermatitis.[47] He is only familiar with articles dealing with formaldehyde in solution and formaldehyde in solid form.[48] In this case, it is formaldehyde fumes which are the subject of the allegations, not formaldehyde in its solid form.[49] He provided no testimony as to how formaldehyde in solid form used in clothes and alleged health effects provides a basis for his opinion on formaldehyde vapors. Therefore, while Dr. Farber may have

---

[41] 522 U.S. 136, 146 (1997).
[42] *Id.*
[43] *Id.* at 144.
[44] *Cavallo v. Star Enters.*, 892 F. Supp. 756, 761-63 (E.D. Va. 1995).
[45] Farber Dep. at 36:2-41:13 ( Ex. B).
[46] *Id.* at 41:17-42:18 (Ex. B).
[47] *Id.* at 55:22-56:10 (Ex. B).
[48] *Id.* at 56:11-18 (Ex. B).
[49] *See, e.g.*, Aldridge Nov. 30, 2007 Compl. at 20 (paragraphs are unnumbered) (alleging that plaintiffs have been exposed to "formaldehyde fumes").

been qualified to treat Ms. Dubuclet -- before his license was revoked -- he is not qualified to offer causation opinions regarding formaldehyde.

### C. Dr. Farber's causation opinions are not based on any reliable methodology and provide no assistance to the trier-of-fact.

Even if he were qualified to render causation opinions, Dr. Farber concedes that he does not actually know if Ms. Dubuclet is indeed sensitized to formaldehyde. He admits that the T.R.U.E. Test does not provide specific information about Ms. Dubuclet's alleged sensitization to formaldehyde. As the United States Court of Appeals for the Fifth Circuit has held, the admissibility of causation evidence in toxic tort cases is contingent upon the introduction of sufficient general *and* specific causation evidence.[50] "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury."[51]

When the proposed expert cannot explain the scientific basis of his causation opinion, the district court can exclude that opinion. In the Fifth Circuit case *Moore v. Ashland Chemical, Inc.,* the plaintiff developed a respiratory disorder shortly after being exposed to Toluene fumes at work.[52] The plaintiff was ultimately diagnosed with reactive airways dysfunction syndrome (RADS), a condition that his doctors attributed to his exposure to toluene fumes.[53] The plaintiff's causation expert, Dr. Jenkins, examined the plaintiff on three separate occasions, performed a series of tests, and reviewed plaintiff's medical records.[54] The proposed expert also relied on the MSDS, which warned that exposure to the Toluene solution could be harmful to the

---

[50] *See Knight v. Kirby Inland Marine Inc*., 482 F.3d 347, 351 (5th Cir. 2007).
[51] *Id*. (citation omitted).
[52] *Moore v. Ashland Chem., Inc.*, 151 F. 3d 269, 272 (5th Cir. 1998).
[53] *Id.*
[54] *Id.* at 273.

lungs.[55] Based on that information, the proposed expert opined that plaintiff's RADS had been caused by his exposure to the toluene vapors at work.[56] The district excluded his causation opinion as not based on scientific knowledge that would assist the trier of fact, and the Fifth Circuit affirmed that decision.[57]

The Fifth Circuit Court found that the district court was permitted to find that the MSDS had little value, especially given the fact that Dr. Jenkins did not know the level of exposure necessary for a person to sustain the injuries about which the MSDS warned.[58] Dr. Jenkins did not have any reliable evidence of the dose to which the plaintiff was actually exposed, and failed to offer any scientific support for the general theory that exposure to toluene at any level would cause RADS.[59]

Much like Dr. Jenkins in *Moore*, Dr. Farber has not given any opinion regarding the necessary level of formaldehyde exposure required to cause contact dermatitis. Neither can Dr. Farber cite a single medical or scientific article in the world's literature that formaldehyde can cause or even aggravate contact dermatitis.[60] No such article was included in his reliance files.[61] Dr. Farber relies heavily on the results of the T.R.U.E. Test for his conclusion that Ms. Dubuclet is "allergic to formaldehyde."[62] Indeed, in that test, she did *not* react to Chemical 21, "formaldehyde by itself."[63] Notwithstanding that negative reaction, Dr. Farber insists that she is "allergic." Even for the chemicals that Dr. Farber says have formaldehyde as part of the

---

[55] *Id.*
[56] *Id.*
[57] *Id.* at 279.
[58] *Id.* at 278.
[59] *Id.* at 278-79.
[60] Farber Dep. at 41:17-42:18, 55:22-56:10, 56:11-18 (Ex. B).
[61] *Id.* at 42:13-18 (Ex. B).
[62] Farber Aff. at 3 (DUB001140) (Ex. C).
[63] Farber Dep. at 93;21-94:7 (Ex. B); Standard Data Collection Form for Ms. Dubuclet (DUB001143, showing positive reactions to only 13, 14, and 26 ) (Ex. C).

chemical, his testimony is clear that he does not actually know that it is the formaldehyde portion of the complex chemicals to which she is purportedly allergic:

> A. As I understand your question, can I be specific as to those three tests, as to whether or not it was formaldehyde or something else?
>
> Q. Or something else, exactly.
>
> A. I cannot tell you that.
>
> Q. So really, if we look at your next sentence under the paragraph,[64] it simply reads: T.R.U.E. Test report on the second reading, No. 13, No. 26 remained at one plus. Your next paragraph reads: These positive test results indicate that Ms. Dubuclet had been sensitized to formaldehyde and now is allergic to formaldehyde.
>
> What you are really saying is she tested positive to 13, 14 and 26, but you do not know what constituent parts of that triggered the positive response; is that correct?
>
> A. Correct.
>
> Q. So that you cannot say whether or not it was formaldehyde or one of the constituent elements that triggered the positive result; is that correct?
>
> A. Correct.[65]

Given his admission that he cannot relate her reaction on the T.R.U.E. Test to formaldehyde, he is only left with relying on Ms. Dubuclet's subjective complaints that her symptoms were worse while she was in the unit.[66] His opinion is not supported by any methodology. Expert testimony requires "some objective, independent validation of the expert's methodology."[67] Because he is only left with her subjective complaints as the basis for his opinion that her conditions worsened while living in the unit, he is acting as her mouthpiece, and not offering any expert assistance to

---

[64] This question is referring to Dr. Farber's report at page 3. *See* Farber Dep. at 49:5-9 (indicating that the questions are referring to Dr. Farber's report) (Ex. B).
[65] Farber Dep. at 50:11-51:11 (Ex. B).
[66] Farber Dep. at 93:1-20 (Ex. B).
[67] *Moore*, 151 F.3d at 276.

13

the jury. He cannot even relate her subjective complaints to any level of formaldehyde exposure. Dr. Farber fails to offer any scientific support for his opinion that Ms. Dubuclet's alleged exposure to formaldehyde at an unknown level caused her skin condition or exacerbation of her pre-existing skin condition. His testimony would not assist the trier of fact in determining causation when he himself admits he cannot determine it. Therefore, he should not be permitted to testify to causation.

### D. Dr. Farber's statements regarding the construction of EHUs should be excluded.

Although Plaintiff may very well not elicit Dr. Farber's testimony regarding the construction of the EHUs at trial, because it is in his affidavit in this case, Fleetwood is compelled to argue that any such statements should be excluded. Dr. Farber is not an expert on the construction or ventilation of EHUs, and Plaintiff is not offering him for that testimony. Yet Dr. Farber stated that the EHUs were constructed rapidly and without adequate ventilation.[68] He conceded at his deposition that he was not basing his statements that the trailers were constructed quickly on any scientific fact: "That's not a scientific fact. It is just a deduction based on what was happening and reading a newspaper and all that stuff."[69] There is no evidence that he ever inspected the Dubuclet trailer to measure it or determine how it was ventilated. He admits that he did not speak to the Dubuclets about their particular experience with ventilation.[70] Not only is he not qualified to make such statements, but his statements are not scientifically based. He is only interpreting his own experience, and offering nothing to help the jury determine any relevant issue in this case. Therefore, such testimony from Dr. Farber should be excluded.

---

[68] Farber Aff. at 3 (DUB001140) (Ex. C); Farber Dep. at 57:18-58:21, 61:1-3 (Ex. C).
[69] Farber Dep. at 57:18-58:21 (Ex. B).
[70] *Id.* at 61:21-62:17 (Ex. B).

**III.     Conclusion**

Because Dr. Farber admits that he does not know whether Ms. Dubuclet was sensitized to formaldehyde or not, he has no scientific or reliable basis for concluding that she was sensitized to formaldehyde.  Moreover, he is not qualified to offer opinions on formaldehyde's alleged relationship to Ms. Dubuclet's alleged injuries, given the fact that he cannot cite to a single medical article in the world's literature that support his conclusion.  In the end, he relies on no more than Ms. Dubuclet's report of her own symptoms, and offers no expert assistance.  Therefore, his unsupported causation testimony will not be helpful to the jury, and should be excluded.

Finally, his subjective statements about the construction and ventilation of EHUs were based only on his experience as a lay person and resident of New Orleans, and not on science.  Therefore, his testimony on that subject should also be excluded.

This 9th day of November 2009.

Respectfully submitted:

 /s/ Richard K. Hines, V
Richard K. Hines, V
GA Bar No. 356300
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)

Jerry L. Saporito
LA Bar No. 11717
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-1701

(504) 585-7500 (phone)
(504) 585- 7775 (fax)

Counsel for Fleetwood Enterprises, Inc.

## C E R T I F I C A T E OF SERVICE

      I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )    Hand Delivery                ( )    Prepaid U.S. Mail

( )    Facsimile                      ( )    Federal Express

(X)    CM/ECF

      New Orleans, Louisiana, this 9th day of November 2009.

                              /s/ Richard K. Hines, V
                              Richard K. Hines, V
                              Georgia Bar No. 356300
                              richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)