UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION:  N(5) |
| | | * | |
| This Document Relates to: | | * | |
| *Dubuclet v. Fleetwood Enterprises, Inc.* | | * | |
| | | * | JUDGE: ENGELHARDT |
| Case No. 07-9228 | | * | |
| | | * | |
| | | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DEFENDANT FLEETWOOD ENTERPRISES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON CAUSATION

Defendant Fleetwood Enterprises, Inc. (hereinafter "Fleetwood") has moved for summary judgment based on Plaintiff's failure to show that there is any genuine issue of material fact regarding causation.  Plaintiff has failed to produce any evidence that could support a judgment in her favor.  Expert medical testimony is critical to finding causation in a toxic tort case, and the experts proposed by Plaintiff in this case are not able to supply the missing links that would enable a jury to find that Timia Dubuclet's claimed injuries were caused by exposure to gaseous formaldehyde.  Not knowing the order the Court will consider the various motions Fleetwood is filing on the medical issues presented in this case, it is important for the Court to understand that it is Fleetwood's medical position that it has been well established in the world's medical literature that formaldehyde in solid (cosmetics, textiles) and aqueous (formalin) states is a skin contact allergen.  However, it is Fleetwood's very strong position -- supported by the expert opinion of Dr. Howard Maibach, one of the world's leading dermatologists and researchers (who, among other things, is the patent holder on the patch test administered to Timia) -- that it has never been established in the world's medical literature that formaldehyde in its gaseous state

either causes or exacerbates atopic dermatitis (eczema and related skin disorders). The proposed experts are not qualified and do not offer scientifically reliable opinions. Moreover, none of Plaintiff's experts can testify to any harmful level of exposure to formaldehyde.

## I.    Statement of Facts

Plaintiff, Timia Dubuclet, has claimed the following types of injuries: exacerbation of dermatitis / eczema, allergic rhinitis, and mental anguish, including anxiety and fear of cancer or other disease.[1]  It is undisputed in this case that the 11 year old plaintiff has been suffering from atopic dermatitis since the condition was first reported in her medical records at approximately six weeks of age.[2]  It is for this reason that Plaintiff's experts address the alleged exacerbation of Timia's skin condition, rather than the "cause" of her skin condition.  Timia has also sought to bring a loss of consortium claim due to harm suffered by unidentified family members.[3]  She also seeks damages for medical monitoring and surveillance, although she has not identified any disease that needs to be monitored or set forth a specific monitoring plan.[4]  To support these claims with medical testimony, she is relying on four experts: Dr. Patricia M. Williams, Dr. George A. Farber, Dr. Lawrence G. Miller, and Dr. Edward H. Shwery.  Plaintiff is also offering Mary DeVany's testimony regarding levels of formaldehyde in the EHU, and possibly even general medical causation.

---

[1] *See* Proposed Fourth Supp. & Amd. Aldridge Compl.(Rec. Doc. 5394-3.)
[2] Before moving in to the EHU, Timia presented to a medical provider more than 15 times complaining of skin-related conditions, including a visit to a doctor approximately a week before moving in her trailer. *See* Medical Records, compiled in Ex. A; Timia Dubuclet Timeline, attached as Ex. B (Exs. 8 and 9 to Elisha Dubuclet's Dep. dated Oct. 7, 2009). Yet after moving into the EHU, she did not complain to a medical provider about her skin condition until ten months after moving in. Medical Records (Ex. A). She presented only one more time six months later, and only received one prescription for a skin medication during the entire time that she lived in the EHU. Indeed, she uses that prescription for almost a year and does not get another prescription until six months after moving out of the trailer. *Id.* (Ex. A).
[3] Proposed Fourth Supp. & Amd. Aldridge Compl. (Rec. Doc. 5394-3). Fleetwood has moved on independent grounds to dismiss the loss of consortium claim as a matter of law.
[4] *Id.* Fleetwood has moved on separate grounds to bar damages for the medical monitoring and surveillance claim.

**A.     Dr. Patricia M. Williams's testimony.**

Plaintiff has designated Dr. Williams to provide general causation testimony:[5]

- A cause-effect relationship exists between formaldehyde and upper respiratory tract damage and cancer.

- A cause-effect relationship exists between formaldehyde and eczema.[6]

As discussed in greater detail in the memorandum of law to exclude Dr. Williams's testimony, the three studies relied on by Dr. Williams that discuss gaseous formaldehyde do not provide a sound scientific basis for her opinion.[7] Nor is Dr. Williams's general causation opinion on cancer based on any reliable methodology.[8]

Dr. Williams does not give any opinions on the level of alleged formaldehyde exposure experienced by Timia and whether that particular level is related to her alleged injuries.[9] Dr. Williams does not offer any opinions on mental anguish or specific causation. She does not provide any plan or specifics about future medical care or what kind of monitoring should be done for Timia.

**B.     Dr. George A. Farber's testimony.**

Dr. Farber was Timia's treating dermatologist.[10] Plaintiff is offering his testimony to support specific causation of exacerbation of Timia's pre-existing skin conditions and upper

---

[5] Fleetwood has moved to exclude Dr. Williams's causation opinions under Federal Rule of Evidence 702, and incorporates its arguments under Rule 702 into this brief.

[6] Williams Aff. at 40 (DUB000245), attached as Ex. C. Note that the eczema opinion was not the opinion that Dr. Williams offered in the *Alexander* case. *See, e.g.*, Order dated Sept. 8, 2009 (Rec. Doc. 3094).

[7] *See* Memo. Law to Exclude Williams's Testimony at 11-17, incorporated herein.

[8] *See* Memo. Law to Exclude Williams's Testimony at 17-25, incorporated herein.

[9] Williams Dep. at 94:15-95:11, excerpts attached as Ex. D.

[10] Farber Aff. at 2 (DUB001139), attached as Ex. E with attachments. Fleetwood has moved to exclude Dr. Farber's causation opinions under Federal Rule of Evidence 702, and incorporates its arguments under Rule 702 into this brief. Moreover, as all parties and the Court were orally notified on November 2, 2009, Dr. Farber's medical license has been revoked, and it is presently unclear whether Plaintiffs will continue to proffer him as a witness in their case. (Defense counsel has inquired, but as of this writing a week later, no response has been received to the inquiry).

respiratory conditions.[11]  On November 2, 2009, plaintiffs' liaison counsel notified the Court and the parties that Dr. Farber's medical license had been revoked by the State of Louisiana.  Dr. Farber's staff performed a T.R.U.E. Test, and he first interpreted the results to mean that she was "allergic to formaldehyde."[12]  Critically, Timia did *not* react to the formaldehyde "by itself" in the T.R.U.E. Test.[13]  Moreover, Dr. Farber's deposition testimony changed the statements in his affidavit by clarifying that he does *not* know whether Timia was sensitized to formaldehyde or whether she was sensitized to another constituent element of the chemicals used in the T.R.U.E. Test.[14]  Dr. Farber could not cite any scientific article that has connected formaldehyde vapor to contact dermatitis.  Although he cited an example of formaldehyde's use in the apparel industry,[15] when questioned on only formaldehyde gas and formaldehyde vapor purportedly causing contact dermatitis, he could not cite to any study or journal article.[16]  Nor could he cite any article that says exposure to gaseous formaldehyde causes or exacerbates atopic dermatitis.[17]  Indeed, without the interpretation of the T.R.U.E. Test, the only thing he can rely on is Timia's subjective complaints.[18]

Dr. Farber does not give any opinions on the level of alleged formaldehyde exposure experienced by Timia or whether that particular level is related to her alleged injuries.  Dr. Farber does not address the claimed injuries of mental anguish, anxiety, or fear of cancer or other

---

[11] Farber Dep. at 53:15-55:4, excerpts attached as Ex. F.

[12] Farber Aff. at 3 (DUB001140) (Ex. E). The T.R.U.E. Test is used to test for suspected allergens and is a patch test in the form of cards that are applied to the patient's back for approximately 48 hours. The patient is then evaluated for any skin reaction to the suspected allergens. There are 28 allergens that are included, as well as a negative control. *See, e.g.*, Farber Dep. at 45:8-46:8 (describing the test) (Ex. F); *see also* Standard Data Collection Form (DUB001143, attached to Farber Aff., Ex. E) (identifying the allergens and negative control).

[13] Farber Dep. at 48:14-16 (Ex. F); Standard Data Collection Form for Ms. Dubuclet (DUB001143, attached to Farber Aff., Ex. E) (showing no reaction to formaldehyde, Chemical 21).

[14] Farber Dep. at 50:2-51:11, 93:21-94:7 (Ex. F).

[15] *Id.* at 36:2-41:13 (Ex. F).

[16] *Id.* at 41:17-42:18 (Ex. F).

[17] *Id.* at 55:22-56:10 (Ex. F).

[18] *Id.* at 93:1-20 (Ex. F).

diseases.  Dr. Farber does not provide any plan or specifics about future medical care or what kind of monitoring should be done for Timia.

### C.       Dr. Lawrence G. Miller's testimony.

Plaintiff has disclosed Dr. Lawrence G. Miller as an expert to support her theory that formaldehyde exposure in the EHU exacerbated her pre-existing contact dermatitis and allergic rhinitis, providing specific causation testimony.[19]  Dr. Miller relied on Dr. Farber to interpret the results of the T.R.U.E. Test.[20]  Like Dr. Farber, Dr. Miller does not know which constituent element in the T.R.U.E. actually triggered Timia's response.[21]  Neither was Dr. Miller aware of a single article in the world's medical literature that draws a causal connection between exposure to gaseous formaldehyde and atopic dermatitis.[22]  Despite that admission, he states that he bases his opinion on associations and correlations and that he "bring[s] the evidence together."[23]  Dr. Miller cites two studies dealing with relative risk levels and formaldehyde's purported association with development of dermatitis/eczema:[24] 1) Held (1999) and 2) Mirshahpanah and Maibach (2007).[25]  Critically, although it is gaseous formaldehyde that Timia was allegedly exposed to,[26] neither study deals with gaseous formaldehyde.[27]

---

[19] Miller Aff. at 6 (DUB000601), attached as Ex. G. Fleetwood has moved to exclude Dr. Miller's opinions under Federal Rule of Evidence 702, and incorporates its arguments under Rule 702 into this brief.

[20] Miller Dep. at 52:1-6 (stating that although he was present with Dr. Farber while he was interpreting the test, he is relying on Dr. Farber to interpret the results), excerpts attached as Ex. H; *see also id.* at 52:7-53:2 (restating that he is relying on Dr. Farber to interpret the T.R.U.E. Test).

[21] Miller Dep. at 124:17-125:9  (Ex. H) (specific as to Chemical 13), 129:15-24 (addressing all three chemicals).

[22] *Id.* at 131:9-132:3 (Ex. H).

[23] *Id.* at 241:10-16 (Ex. H).

[24] The full names of the two studies are: 1) Held E, Juhansen JD, Agner T, Menne T., *Contact allergy to cosmetics: testing with patients' own products.* Contact Dermatitis 1999 40:310 (cited in Miller Aff.); and 2) Mirshahpanah P, Maibach HI, *Relationship of patch test positivity in a general versus an eczema population.* Contact Dermatitis 2007 56:125 (both cited in Miller Aff.).

[25] Miller Dep. at 243:16-244:16 (Ex. H); Miller Aff. at 4-5 (DUB000599-600) (Ex. G).

[26] *See, e.g.,* Aldridge Nov. 30, 2007 Compl. at 20 (paragraphs are unnumbered) (alleging that plaintiffs have been exposed to "formaldehyde fumes").

[27] Miller Dep. at 245:10-246:3 (Ex. H); *see also id.* at 234:15-235:5 (stating that in dealing with cosmetics, it is not gaseous formaldehyde; formaldehyde is part of the cosmetic substance).

Dr. Miller's opinion on Timia's level of exposure is that because the levels measured by the W.D. Scott Group were above the MRL level for intermediate and chronic exposure to formaldehyde in the ATSDR, that there is a "completed exposure pathway."[28]  In his deposition, he clarified that he is not offering an opinion on causation by agreeing with the statement in the ATSDR that "exposure to a level above the MRL does not mean that adverse health effects will occur."[29]  Dr. Miller does not address the claimed injuries of mental anguish, anxiety, or fear of cancer or other diseases.  Dr. Miller does not provide any plan or specifics about future medical care or what kind of monitoring should be done for Timia.

**D.      Dr. Edward H. Shwery's scope of testimony.**

Dr. Shwery opines that Timia suffers from stress, worry, and anxiety regarding her medical conditions, primarily her eczema.[30]  He also testified that he believes living in the EHU worsened Timia's skin condition and led to her anxiety.[31]  But he bases his opinion on Dr. Farber's indication that she is allergic to formaldehyde -- an opinion which Dr. Farber has since rejected.[32]  Dr. Shwery provides a proposed plan of treatment for Timia's alleged anxiety related to her eczema.[33]

He does not offer any opinion on the level of formaldehyde, if any, that could exacerbate Timia's skin condition.[34]  He also does not offer any opinion on Timia's alleged fear of cancer.

---

[28] Miller Aff. at 3-4 (DUB00598-99) (Ex. G).

[29] Miller Dep. at 164:13-21 (Ex. H). This ATSDR statement is taken from the last sentence on page A-1 of the ATSDR Minimal Risk Levels & Worksheets, Formaldehyde, Appendix A, available at http://www.atsdr.cdc.gov/toxprofiles/tp111-a.pdf, excerpt attached as Ex. I.

[30] Shwery Aff. at 8 (DUB001136), attached as Ex.  J. Fleetwood has moved separately to exclude Dr. Shwery's opinions, and incorporates that motion and memorandum of law herein.

[31] Shwery Dep. at 104:22-105:2, excerpts attached as Ex. K.

[32] Shwery Dep. at 109:22-110:13 (Ex. K). Dr. Shwery indicates that he would defer to Dr. Farber's opinion regarding the skin condition. Id. at 112:3-8 (Ex. K). Farber Dep. at 50:2-51:11, 93:21-94:7 (Ex. F).

[33] Shwery Aff. at 8 (DUB001136) (Ex. J).

[34] Shwery Dep. at 121:23-122:9 (Ex. K).

### E.    Mary DeVany

Plaintiff offers Mary DeVany as a proposed industrial hygiene expert to analyze the specific levels of formaldehyde that Timia was allegedly exposed to in the EHU to determine if her claimed adverse health effects were caused by those levels of formaldehyde.[35]  Although DeVany's report purports to derive formaldehyde levels at the time the Dubuclets moved into the EHU, her report does not specifically state that any of Timia's alleged injuries are related to any level of formaldehyde.[36]  But DeVany -- who is not a medical doctor -- does purport to offer general medical causation opinions in her affidavit, including skin and eye effects, respiratory system effects, neurological effects, sensitization, tissue and systemic changes, cancer-causing potential, reproductive effects, birth defects, and Lou Gehrig's disease.[37]  DeVany does not offer any opinions on mental anguish or fear of cancer.  She does not provide any plan or specifics about future medical care or what kind of monitoring should be done for Timia.

## II.    Argument and Citation of Authority

### A.    Legal standard for granting summary judgment.

Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmovant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[38]  In deciding a summary judgment motion, a court must review the facts drawing all reasonable inferences in the light most favorable to the

---

[35] DeVany Aff. at 9-10 (DUB000612-13) (Ex. L). Fleetwood has moved to exclude the testimony of DeVany separately, and incorporates those arguments in this memorandum of law. As detailed in the memorandum of law in support of the motion to exclude DeVany's testimony, DeVany is not certified as an industrial hygienist, and is unqualified to offer these opinions. DeVany Dep. (July 31, 2009) at 54, excerpts attached as Ex. M.

[36] DeVany Aff. at 17-18 (DUB000620-21) (Ex. L).

[37] DeVany Aff. at 7-9 (DUB000610-612) (Ex. L).

[38] *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 809 (5th Cir.1991) (citations omitted); Fed. R. Civ. Proc. 56(c).

nonmovant.[39]  Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must go beyond the pleadings and through affidavits, depositions, answers to interrogatories, and admissions on file must designate specific facts showing that there is a genuine issue for trial.[40]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[41]  Summary judgment is appropriate "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[42]  Moreover, a factual dispute precludes a grant of summary judgment *only* if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[43]

> ### B.    A grant of summary judgment is proper when the Plaintiff cannot establish causation.

It is the plaintiff's burden to prove causation under the Louisiana Products Liability Act.[44]  The plaintiff must prove causation through medical testimony that it is more probable than not that the subsequent injuries were caused by the product.[45]  In a toxic tort case, the plaintiff must prove both general causation and specific causation -- and must do so with competent expert testimony.[46]  General causation deals with whether the substance at issue can cause certain diseases in people in general.[47]  Specific causation focuses upon whether the

---

[39] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

[40] *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

[41] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

[42] *Id.* (quoting *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)).

[43] *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002) (emphasis added).

[44] *Maranto v. Goodyear Tire & Rubber Co.*, 650 So. 2d 757, 759 (La. 1995).

[45] *Kemp v. Metabolife Int'l, Inc.*, No. 00-3513, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004); *see also Hutchinson v. Shah*, 648 So. 2d 451, 452 (La. Ct. App. 1994) ("[w]hen the conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required").

[46] *Knight v. Kirby Inland Marine Inc.*, 483 F.3d 347, 351 (5th Cir. 2007).

[47] *Kemp*, 2004 WL 2095618, at *3 (citing *Pick v. Am. Med. Sys., Inc.*, 958 F. Supp. 1151, 1164 (E.D. La. 1997)).

substance was in fact the cause of the ailments or symptoms in the particular patient.[48]  Not only

is expert medical testimony required to establish causation, but, in a toxic tort case, the plaintiff

must also present evidence of the harmful level of exposure to the chemical, and knowledge that

plaintiff was exposed to that level:

> Scientific knowledge of the harmful level of exposure to a chemical, plus
> knowledge that the plaintiff was exposed to such quantities, are minimal
> facts necessary to sustain the plaintiffs' burden in a toxic tort case.[49]

Because both specific and general causation are required, when the plaintiff fails to establish

either specific causation or general causation, the plaintiff's claim fails.[50]

Without specific or general causation, not only do the claims for present alleged injuries

fail, including any mental anguish and fear of cancer claims, but the medical monitoring claim

fails as well.  Mental anguish claims, which include the fear of cancer, must be causally related

to a defendant's actions.[51]  Moreover, damages for mental anguish are only recoverable when

that mental anguish results from the fear of developing a condition "as a result of a *present

injury*."[52]  Damages for medical monitoring are only permitted when the monitoring procedures

are "directly related to a manifest physical or mental injury or disease."[53]  Louisiana law also

requires a "significant exposure to a proven hazardous substance" to succeed on a medical

---

[48] *Pick*, 958 F. Supp. at 1164.

[49] *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996); *see also Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 279 n.10 (5th Cir. 1996) (noting importance of the expert knowing the level of exposure to support his causation opinion).

[50] *Pick*, 958 F. Supp. at 1163 (granting summary judgment as to specific causation); s*ee also Leija v. Penn Maritime, Inc.*, No. 06-10489, 2009 WL 211723, at *3  (E.D. La. Jan. 23, 2009) (granting summary judgment in favor of defendant when proposed expert testimony was insufficient to create an issue of fact as to specific causation); *Babin v. Ecolab, Inc.*, No. 2:04-CV-1595,  2005 WL 1629947, at *5 (W.D. La. July 5, 2005) (granting summary judgment when plaintiffs failed to establish that there is a genuine issue of material fact as to general causation).

[51] *Smith v. A.C. & S., Inc.*, 843 F.2d 854, 857-58 (5th Cir. 1988) (quoting *Hagerty v. L & L Marine Svcs., Inc.*, 788 F.2d 315, 318 (5th Cir. 1986)); *see also Maurer v. Heyer-Schulte Corp.*, No. 92-3485, 2002 WL 31819160, at *3 (E.D. La. Dec. 13, 2002) (causation is required for fear of cancer claims). "'[C]ancerphobia' is merely a specific type of compensable mental anguish or emotional distress." *Smith*, 843 F.2d at 858.

[52] *Id.* at 858 (emphasis added).

[53] La. Civ. Code Ann. Art. 2315(B) (2009).

monitoring claim.[54]  When the underlying claims fail as a matter of law, there is nothing left to

base medical monitoring damages on, so that claim should be dismissed as well.[55]

> ### 1. *Without the required expert testimony for both general and specific causation, summary judgment should be granted in favor of Fleetwood.*

Fleetwood has filed separate motions to exclude the causation testimony of Plaintiff's

causation experts: Dr. Williams and DeVany on general causation and Drs. Farber and Miller on

specific causation, and incorporates each those motions and memoranda of law herein.  Because

medical expert testimony is required in this toxic tort case, without their testimony, Plaintiff is

unable to meet her causation burden and summary judgment should be granted in Fleetwood's

favor.[56]  Because both general and specific causation are required, it is not necessary for the

Court to grant all four motions before granting summary judgment on the grounds that Plaintiff

cannot meet her causation burden.

> ### 2. *Plaintiff has not met her causation burden because no evidence connects her claimed injuries to any level of formaldehyde that she was allegedly exposed to, and summary judgment should be granted in favor of Fleetwood.*

Plaintiff has presented no medical testimony connecting her level of exposure to her

alleged injuries.  Even if the Court finds that Plaintiff's proposed experts are qualified to testify,

their testimony cannot save Plaintiff from summary judgment being entered against her.[57]

---

[54] *See Scott v. Am. Tobacco Co., Inc.*, 949 So. 2d 1266, 1282-83 (La. Ct. App. 2007).

[55] *See, e.g., Anderson v. Dow Chem. Co.*, No. 06-30445, 2007 WL 1879170, at *5 (5th Cir. June 28, 2007) (affirming grant of summary judgment, including medical monitoring claim, when claims for mental anguish and increased risk of future disease were dismissed). Fleetwood is filing a separate motion for summary judgment on the medical monitoring damages based on the plaintiff's failure to meet the other requirements for medical monitoring damages. *See Scott*, 949 So. 2d at 1282-83.

[56] *See, e.g., Seaman v. Seacor Marine, L.L.C.*, 326 Fed. Appx. 721, 727-29 (5th Cir. 2009) (affirming grant of summary judgment after excluding expert's causation opinions because plaintiff could not establish a genuine issue of material fact in support of cause of action).

[57] *Seaman*, 326 Fed. Appx. at 727-29 (affirming district court's exclusion of expert's causation testimony when expert was not knowledgeable on exposure level, and affirming subsequent grant of summary judgment); *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996) (affirming exclusion of experts' opinions when experts did not

Although Fleetwood is not conceding that the calculations on exposure level from DeVany or anyone else are correct, it is not the number that matters at the summary judgment stage.  No matter the number, no expert has offered scientific and reliable testimony upon which a jury could reasonably find that the level of exposure to gaseous formaldehyde allegedly experienced by Ms. Dubuclet is the cause of her claimed injuries:

**Dr. Williams:** Dr. Williams is only providing a general causation opinion.  When questioned about exposure levels and skin conditions, she replied, "I'm not doing specific causation."[58]  But when pressed, she referred to the Matsunaga study, which looked at exposure levels of 47 ppb (0.047 ppm) or greater,[59] adding, "But I am not concerned with specific concentrations."[60]  In the Matsunaga study, the authors themselves state that "we could not establish a cause and effect relationship for the associations under study.  Further evaluations in prospective studies are needed to draw a conclusion regarding whether [formaldehyde] exposure increases the likelihood of atopic eczema."[61]  The Matsunaga study was a cross-sectional study, a type of observational study.[62]  It looked at pregnant women that had received medical treatment for a self-reported, undocumented allergic disorder during the previous 12 months.[63]  Once enrolled in the study, the women were requested to wear a passive air sampling tube for 24

---

rely on data concerning exposure to chemical); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 279 n.10 (5th Cir. 1996) (noting importance of the expert knowing the level of exposure to support causation opinion).

[58] Williams Dep. at 94:1-13 (Ex. D).

[59] *See* Ichiro Matsunaga, et al., *Ambient Formaldehyde Levels and Allergic Disorders Among Japanese Pregnant Women: Baseline Data From the Osaka Maternal and Child Health Study*, 18 Ann. Epidemiol. 78, 83 (2008), attached as Ex. N.

[60] Williams Dep. at 94:15-95:11 (Ex. D).

[61] Matsunaga at 83 (Ex. N).

[62] *See* Ref. Manual Scientific Evidence, Second Ed., *Reference Guide on Epidemiology* (2000), at 343, available at http://www.fjc.gov (describing cross-sectional studies as rarely being used for environmental toxic agents because it is not possible to establish the temporal relations between exposure and disease, but that they can provide valuable leads to further directions for research).

[63] Matsunaga at 78 (Ex. N).  The authors pointed out that they did not use validated diagnostic criteria for the allergic disorders, so they concluded that the study might not have included pregnant women with milder cases of allergic disorders. *Id.* at 82.

hours.[64]  This study is based on alleged disease first, exposure second -- turning the temporality requirement of the Bradford-Hill criteria on its head.

Not only is temporality undone, but the authors do not reach any conclusion on exacerbation of atopic eczema, noting that while exposure to formaldehyde "*may* exacerbate atopic eczema symptoms in adults," that the alternative is that "the observed association might be attributed to unrecognized environmental factors associated with [formaldehyde]."[65]  This study does not address causation.  Even the possible exacerbation association is countered with another alternative.

Despite the language and findings in the study, Dr. Williams places importance on this study claiming that the one-day formaldehyde measurement "is an absolute quantitative measurement of a representative amount."[66]  In her report, she cites this study because "[f]ormaldehdye levels of 47ppb or more were independently associated with an increased prevalence of atopic eczema."[67]  She testifies that this is statistically significant.[68]  Yet, in looking at Table 2 of the study at the adjusted odds ratio ("OR"), when the table with the formaldehyde levels subgroups are examined, the lower bound for confidence interval (0.92) for the formaldehyde level $\geq 47$ ppb, includes a relative risk of 1, and the dose-response curve showed non-statistically significant *p*-value, therefore the results of the study are not statistically significant.[69]  The authors then aggregated the three subgroups of exposure level into one group,

---

[64] *Id.* at 79 (Ex. N).
[65] *Id.* at 82 (emphasis added) (Ex. N).
[66] Williams Dep. at 18:7-11 (Ex. D).
[67] Williams Aff. at 22 (DUB000227) (Ex. C).
[68] Williams Dep. at 15:10-17 (Ex. D).
[69] *See* Michael D. Green, et al., Reference Guide on Epidemiology, at 389 (Fed. Jud. Ctr. 2000), available at http://www.fjc.gov/public/pdf.nsf/lookup/sciman00.pdf/$file/sciman00.pdf (defining "confidence interval" to state "[w]here the confidence interval contains a relative risk of 1.0, the results of the study are not statistically significant.").

thereby calculating a new confidence interval that has a lower bound of 1.01.[70]  It is this recalculated OR that Dr. Williams relies on, even though it supplies less specific information due to the aggregation of the subgroups.  And, again, all of those numbers are based on a study that looked at the alleged disease first, then exposure, and which admits in its conclusion that no cause and effect relationship could be established from this study.[71]

Dr. Williams does not explain how this study can support a general causation opinion. Indeed, the study's own language rejects that conclusion.  Even if Dr. Williams were permitted to testify, this study does raise any genuine issue of material fact.  The authors themselves state that it does not support causation, therefore this study could not support the jury finding in favor of Plaintiff.

**Dr. Farber:** Plaintiff is presenting Dr. Farber to provide specific causation testimony. But he offers no opinion on the level of formaldehyde either allegedly experienced by Ms. Dubuclet or the level of formaldehyde that could cause her alleged injuries.

**Dr. Miller:** Plaintiff is also offering Dr. Miller for specific causation.  Dr. Miller's affidavit attempts to connect Ms. Dubuclet's level of exposure to her claimed injuries.  He claims that because the levels measured by the W.D. Scott Group were above the Minimal Risk Level (MRL) for intermediate and chronic exposure to formaldehyde in the ATSDR, there is a "completed exposure pathway."[72]  Dr. Miller is clear in his testimony that he is only using this for noncancerous claims.[73]  But in his deposition, he clarified his use of the ATSDR.  He agrees with the statement in the ATSDR that "exposure to a level above the MRL does not mean that

---

[70] Matsunaga at 81 (Table 2) (Ex. N).
[71] Although Table 2 discusses "current" allergic disorders, see Matsunaga at 81, the authors had previously defined "current" disease as present if the subjects had received any self-reported medical treatment for certain allergic disorder during the previous 12 months. *Id.* at 79 (Ex. N).
[72] Miller Aff. at 3-4 (DUB00598-99) (Ex. G).
[73] Miller Dep. at 160:4-16 (Ex. H).

adverse health effects will occur."[74]   Indeed, he testifies that the ATSDR's MRL only suggests

that *below* that level exposure is unlikely to have adverse health effects:

> Q        Is it your use of MRL's in this case and your reference to it to indicate
> or suggest that exposure above an MRL exposes one to a risk of disease?
> A        I think that the ATSDR division is kind of the flip side of that
> definition -- excuse me -- is kind the flip side of that coin.  It suggests that --
> And these are non-cancer, because ATSDR does non-cancer.  It suggests that
> below that level you're unlikely to have significant non-cancer effects.  It
> doesn't say above that level, you will.[75]

Dr. Miller has no scientific basis for concluding that a level of exposure *above* the ATSDR's

MRL means caused any adverse health effects.  Indeed, he rejects that conclusion.  Therefore,

the statement in his affidavit about a "completed exposure pathway" cannot be interpreted as

showing any causal link between exposure to formaldehyde and Timia's alleged injuries.

**Dr. Shwery:** He does not offer any opinion on the level of formaldehyde, if any, that

could exacerbate Timia's pre-existing skin condition.[76]

**DeVany:** Although DeVany's report purports to derive formaldehyde levels at the time

the Dubuclets moved into the EHU, her report does not specifically state that any of Timia's

alleged injuries are related to any level of formaldehyde.[77]  But DeVany -- who is not a medical

doctor—does purport to offer general medical causation opinions in her affidavit, including skin

and eye effects, respiratory system effects, neurological effects, sensitization, tissue and systemic

changes, cancer-causing potential, reproductive effects, birth defects, and Lou Gehrig's

disease.[78]  While DeVany notes in her affidavit that "[p]re-existing dermatitis, skin rashes,

eczema, acne, and other skin disorders can be severely aggravated by very low levels of

---

[74] Miller Dep. at 164:13-21 (Ex. H). This statement is taken from the last sentence on page A-1 of the ATSDR
Minimal Risk Levels & Worksheets, Formaldehyde, Appendix A, available at
http://www.atsdr.cdc.gov/toxprofiles/tp111-a.pdf (Ex. I).
[75] Miller Dep. at 160:4-16 (Ex. H).
[76] Shwery Dep. at 121:23-122:9 (Ex. K).
[77] DeVany Aff. at 17-18 (DUB000620-21) (Ex. L).
[78] DeVany Aff. at 7-9 (DUB000610-612) (Ex. L).

formaldehyde," she does not state what that "very low level" of exposure is.  Nor does the affidavit cite the study she is relying on.  DeVany is not an epidemiologist, and is not a medical doctor.  This vague opinion, even if Plaintiff decides to present DeVany's testimony and the Court finds that she is qualified, cannot support a jury finding that Plaintiff's causation burden has been carried.

Finally, none of the experts are brazen enough to claim that it is exposure at *any* level that more likely than not caused all of her alleged injuries.

Without any testimony to connect exposure to formaldehyde at the level allegedly experienced by Timia to her claimed injuries, Plaintiff cannot meet her burden to prove causation.  Plaintiff cannot meet this burden simply by citing studies that address levels of exposure, citing public health standards, and then looking at the testing data for EHUs and formaldehyde levels.  While an expert can certainly start with those data points, the data must be analyzed further and applied to Timia's specific situation.  Each study is unique, addresses specific situations, different exposure mechanisms, different exposure durations, and different types of people.  The expert testimony must specifically set forth the reasons that the studies show a certain exposure level could cause the symptoms allegedly experienced by Timia.  But no expert has done this analysis.  While Dr. Miller at least attempts to offer an opinion on exposure level, it falls far short.  He improperly relies on a public health standard that itself states it does not mean that exposure to a level above that MRL means adverse health effects will occur -- gutting his attempt at causation.  It cannot be left up to the jury to look at the Dubuclet testing numbers and statistical analyses from other experts and figure out for themselves which studies or public health standards that discuss exposure levels of gaseous formaldehyde are applicable in

15

this case.  The jury is not to create its own science.[79]  For this reason alone, summary judgment should be granted favor of Fleetwood on all claims.

## III.     Conclusion

Fleetwood requests that summary judgment be entered in its favor on all of Plaintiff's claims.  Plaintiff has failed to meet her burden on general and specific causation.  The required medical expert testimony is lacking.  First, her proposed experts are not qualified and do not offer scientifically reliable opinions, as briefed in the motions to exclude their testimony.  Second, no expert has connected the exposure level that Plaintiff was allegedly exposed to with her claimed injuries.  Certainly Plaintiff has cited studies, public health standards, and testing data, but no expert has analyzed this data to reach a conclusion that injury and exposure are causally related.  The jury cannot be asked to reach such a conclusion without the required expert testimony.  For these reasons, Fleetwood requests that this Court grant summary judgment in its favor.

This 9th day of November, 2009.

Respectfully submitted:

_/s/ Richard K. Hines, V_____
Richard K. Hines, V
GA Bar No. 356300
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)

---

[79] *See, e.g, Rosen v. Ciba-Geigy Corp.,* 78 F.3d 316, 319 (7th Cir. 1996). In referencing expert testimony, the Court noted that "the courtroom is not the place for scientific guesswork, even of the inspired sort. Law lags science; it does not lead it."

Jerry L. Saporito
LA Bar No. 11717
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-1701
(504) 585-7500 (phone)
(504) 585- 7775 (fax)

Counsel for Fleetwood Enterprises, Inc.

17

# C E R T I F I C A T E OF SERVICE

I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )   Hand Delivery                           ( )   Prepaid U.S. Mail

( )   Facsimile                                 ( )   Federal Express

(X)   CM/ECF

New Orleans, Louisiana, this 9th day of November, 2009.

 */s/ Richard K. Hines, V*
Richard K. Hines, V
Georgia Bar No. 356300
richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)