UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER  FORMALDEHYDE  PRODUCTS LIABILITY  LITIGATION | * * * * * | MDL NO. 1873  SECTION: N(5) |
| This Document Relates to:  *Dubuclet v. Fleetwood Enterprises, Inc.*  Case No. 07-9228 | | * * * * * | JUDGE: ENGELHARDT  MAG: CHASEZ |

*************************************************************************

**FLEETWOOD ENTERPRISES, INC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO LIMIT STEPHEN SMULSKI, Ph.D'S TESTIMONY**

Defendant, Fleetwood Enterprises, Inc. (hereinafter "Fleetwood") moves this Court to limit the testimony of Stephen Smulski, Ph.D. Plaintiff has disclosed Stephen Smulski, Ph.D. as an expert in wood science and technology, but he has ventured outside of his zone of expertise, and those opinions -- ranging from design defects to medical causation -- should be excluded.

**I.      Factual Background**

     **A.      Timia Dubuclet's allegations**

Timia Dubuclet has brought a product liability action against Fleetwood under the Louisiana Products Liability Act. The alleged defects in the Emergency Housing Unit ("EHU") that Timia resided include:

> Defective designs calling for the inclusion of materials which included formaldehyde, when equally suitable materials which did not contain formaldehyde were available.[1]

---

[1] Aldridge Nov. 30, 2007 Compl. at 26 (paragraphs are unnumbered).

### B. Smulski's opinions

Smulski has testified that he was asked by Plaintiffs' counsel in the Dubuclet matter "to do a visual inspection of the trailer to inventory the various types of wood and wood composite products that were used in the construction of the trailer as well as bring to the case in general the historic background regarding formaldehyde emission from wood composite products."[2] Smulski was also clear about the subjects in which he is not an expert – for example, he is not a civil engineer, a chemist, a statistician, or a medical doctor.[3]

Despite the narrow role for which he asserts he was retained as an expert by Plaintiffs' counsel, Smulski has offered the following areas of testimony, which Fleetwood is seeking to exclude or limit:

- Design defect: alternative wood products, mechanical ventilation, "bending" of frame;
- Formaldehyde testing results; and
- Medical causation.

#### 1. *Design defect opinions: alternative wood products, mechanical ventilation, and "bending" of frame*

In addition to the visual inspection and inventory of wood products, Smulski offers opinion on design defects and alternative designs for travel trailers, addressing both alternative wood products and mechanical ventilation issues.[4] As a threshold matter, he has never designed a travel trailer.[5] On alternative wood products, he states:

---

[2] Smulski Dep. (Oct. 20, 2009) at 27:14-24, excerpts attached as Ex. A.
[3] *Id.* at 27:25-28:15, 29:16-30:13 (Ex. A).
[4] In *Alexander*, the Court stated that Smulski may offer an opinion as to the "modification of materials used in the construction of the EHU, but it should be made clear that Dr. Smulski is not an expert in design of EHUs in particular, and thus, cannot offer a general opinion regarding the 'design practices' of EHUs beyond the use of wood, wood-based and wood-composite materials in such design." Order at 3-4 (Rec. Doc. 2800). But it is not clear how this Order would apply in this given his testimony that he cannot identify any specific modifications.
[5] Smulski Dep. (Oct. 20, 2009) at 64:20-65:2 (Ex. A).

2

> Fleetwood Enterprises, Inc. could have reduced the number of formaldehyde-emitting products inside the trailer by using wood-based composites that either do not emit formaldehyde (hardwood plywood, medium density fiberboard, and particleboard are also made with adhesives that do not contain formaldehyde) or emit so little formaldehyde that they are exempt from the HUD standard (hardboard for walls and ceilings instead of hardwood plywood).  At the time the trailer was manufactured, Fleetwood Enterprises, Inc. had available to it alternative materials that, if used, would have emitted little or no formaldehyde gas.[6]

Yet, Smulski admits that he has never tested any alternative wood product to determine if it could be used satisfactorily in the construction of a travel trailer such that it supported the requirements for transportability, durability, and price point to which Fleetwood was building the units, but he *thinks* that there were some options available.[7]  He insists that there is "no reason for me to believe [the alternatives are] going to perform differently in a travel trailer."[8]  But he did not perform any test to determine this.  He does not know what the price difference would be for the wood product alternatives he suggests.[9]  He cannot name a specific manufacturer of any wood product alternative.[10]

Regarding mechanical ventilation, he states that Fleetwood could have increased the EHU's air exchange rate and reduced the level of formaldehyde gas inside the EHU by equipping it with "a mechanical system that blows contaminated indoor air outside and draws fresh outdoor air inside."[11]  In his opinion the air exchange rate in the unit is "low."[12]  However, he admits that he does not know what the air exchange rate is in a Fleetwood travel trailer.  He cannot quantify what "low" means, but simply bases that opinion on a study and report from Lawrence Berkeley National Laboratory, which study did *not* examine any Fleetwood units:

---

[6] Smulski Rep. at 9, ¶ 26 (Ex. B) *see also id.* at 6, ¶ 18..
[7] Smulski Dep. (Oct. 20, 2009) at 65:3-20 (Ex. A).
[8] *Id.* at 67:14-68:19 (Ex. A).
[9] *Id.* at 81:25-83:12 (Ex. A).
[10] *Id.* (Ex. A).
[11] Smulski Rep. at 10, ¶ 29 (Ex. B); *see also id.* at 6, ¶ 18.
[12] Smulski Rep. at 4, ¶ 12 (Ex. B).

3

> Q    Now, paragraph 12, you note that the air inside, the volume of air inside the trailer was small, and you make the comment its air exchange rate was low. Have you done any study to determine exactly what the air exchange rate is in that unit?
> A    I have not. The basis for that statement is actually work done by the Lawrence Berkel[e]y National Laboratory, where they did make measurements of air exchange rates in trailers.
> Q    Okay.
> A    And I will note they did not look at a Fleetwood travel trailer. They looked at four other trailers.
> Q    Right.
> A    But all travel trailers that are at issue here are basically similar in the sense they're all about the same size, they have about the same volume of air inside them, they all use particleboard, hardwood plywood and medium density fiberboard in their construction for essentially the same purposes and in essentially the same amount.[13]

He did not conduct any analysis of air exchange rates within the Dubuclet EHU.[14] Smulski is not aware of any mechanical ventilation systems that have ever been used by a manufacturer in travel trailers, and he admits that he does not know how use of a mechanical ventilation system would change the design of the electrical system in the unit, does not know how the EHU would have to modified to allow for installation of a mechanical ventilation system, and does not know how equipping the unit with such a system would add to the utilities costs for the unit -- although he recognized it might increase the resident's electric bill.[15]

He also testifies that the frame and exterior shell of a Fleetwood travel trailer "can" bend during the installation process.[16] He did not state that the Dubuclet EHU did, in fact, bend during the installation process.[17] Rather he states the opposite:

---

[13] Smulski Dep. (Oct. 20, 2009) at 50:25-51:24 (Ex. A).
[14] *Id.* at 28:23-29:7 (Ex. A).
[15] *Id.* at 61:20-64:19 (Ex. A).
[16] Smulski Rep. at 4, ¶ 14 (Ex. B).
[17] In *Alexander*, the Court ruled that Smulski may testify to the general statement that an EHU's frame "can bend and twist" "as a hypothetical observation, or one based on his past experiences, but it must be made clear that Dr. Smulski was not present when this bellwether plaintiffs' EHU was installed." Order at 2 (Rec. Doc. 2800). Fleetwood maintains, however, that because of Smulski's admission that he did not see any bending in this EHU, there is no proper evidentiary foundation for this testimony, and that it would be unduly prejudicial if he were permitted to infer that such damage occurred in this EHU.

>   Q      When you did examine the trailer in July, did you see any damage that you believe was caused by the installation process?
>   A      I did not.[18]

He did not see the Dubuclet unit in the process of being installed, and he never saw it when it was installed on the Dubuclet's property.[19] He admits that he has no knowledge that the frame of the EHU was bent or twisted, and agrees that while it is possible, he does not know for sure.[20]

### 2. *Formaldehyde testing results*

His report also recites other studies dealing with formaldehyde gas levels, seeming to adopt the findings from those studies as his own opinions in this case. Those materials include the reports from ATSDR, Centers for Disease Control and Prevention, and Lawrence Berkeley National Laboratory.[21] He admits that he has not personally done any testing to determine the levels of formaldehyde to which the Dubuclets might have been exposed to.[22] This Court previously ruled that such statements appear to be "factual predicates" and that Smulski "can and will be expected to recite the factual and/or theoretical bases for his opinions."[23] The Court also stated that while Smulski can refer to the results of various testing on level of formaldehyde, "it must be clear that this testing was not done by him and is not his opinions, but rather is available information that he considered in forming his ultimate opinions."[24] Fleetwood is requesting that the Court place this same limitation on Smulski's testimony in this case.

### 3. *Medical causation*

Finally, although he has retreated from an opinion in this area, Smulski notes in his report that that the Dubuclets "were subjected to chronic exposure to formaldehyde gas as a

---

[18] Smulski Dep. (Oct. 20, 2009) at 100:22-101:1 (Ex. A).
[19] Smulski Dep. (Oct. 20, 2009) at 99:25-100:6 (Ex. A).
[20] Smulski Dep. (Oct. 20, 2009) at 100:7-18 (Ex. A).
[21] Smulski Rep. at 6, ¶¶ 19, 20, 23 (Ex. B).
[22] Smulski Dep. (Oct. 20, 2009) at 74:12-75:2 (Ex. A).
[23] Order at 1-2 (Rec. Doc. 2800).
[24] Order at 3 (Rec. Doc. 2800).

consequence of using this trailer as long-term housing."[25] He also states that the Dubuclets "would potentially suffer adverse health effects from chronic exposure to formaldehyde gas" and that, for that reason, the EHU was not suitable for use as long-term housing.[26] During his deposition, however, he stated that he was not going to opine on medical issues.[27] Additionally, this Court has agreed that Smulski is not qualified to testify about adverse health effects.[28] The Court's limitation extended to his opinions that living in an EHU for a "long period of time" would adversely affect the health of persons living in the EHU.[29] These opinions are outside of Smulski's expertise.[30] Fleetwood is requesting that these same limitations be in place here.

## II.     Argument & Citation to Authority

### A.     This Court's gatekeeping role regarding Smulski's opinions.

Federal Rule of Evidence 702 permits a witness who, through his expertise, has the knowledge, skill, experience, training, or education to offer scientific, technical, or other specialized knowledge may testify regarding that knowledge if it will assist the trier of fact to understand the evidence or to determine a fact in issue. A proposed expert witness must first be qualified to testify regarding the issues for which he is offered.[31] Courts have routinely refused to admit a proffered expert's testimony where the proffered expert, despite a generalized or professed knowledge of issues arguably relevant to the subject matter, nevertheless lacked expertise with the specific nature of the claims being litigated.[32]

---

[25] Smulski Rep. at 6, ¶ 18 (Ex. B).
[26] Smulski Rep. at 11, ¶ 30 (Ex. B).
[27] Smulski Dep. (Oct. 20, 2009) at 28:8-13 (Ex. A).
[28] Order at 4 (Rec. Doc. 2800).
[29] *Id.*; *see* Smulski Rep. at 11, ¶¶ 30-31 (Ex. B).
[30] Order at 4 (Rec. Doc. 2800).
[31] *See U.S. v. Frazier*, 387 F.3d 1244, 1260-1261 (11th Cir. 2004).
[32] *See*, *e.g,. Kassim v. City of Schenectady,* 415 F.3d 246, 251 (2nd Cir. 2005) (expert lacked knowledge regarding Arabic translation); *In Re: Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 543-544 (S.D.N.Y. 2004) (expert's opinion not based on qualification or experience but on subjective views of ethical standards at issue).

Even if an expert is qualified, his opinion can be excluded if not reliable.[33] A qualified expert's testimony is only admissible if it is based upon sufficient facts or data, it is the product of reliable principles and methods, *and* the witness has applied the principles and methods reliably to the facts of the case.[34] The reliability inquiry is flexible, and several nonexclusive factors may be considered, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, and (4) whether the technique is generally accepted in the relevant scientific community.[35] The expert testimony must also be relevant -- not only in the way that all testimony must be relevant under Federal Rule of Evidence 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue.[36]

In this case, it is important to note the Louisiana requirements to show an alternative design in a products liability case. In *Seither v. Winnebago Industries, Inc.*, the court found that the trial judge abused his discretion in failing to grant a directed verdict as to the alternative design issue.[37] In that case, there was no valid alternative design presented.[38] The expert "presented merely a concept that was untested, unengineered, and not presented to the jury in any fashion more than mere speculation."[39] The court also noted that the plaintiffs failed to present a risk/utility analysis of the proposed alternative design.[40] In that case, the expert presented an economic feasibility analysis, but it did not have a material quote or manufacturing

---

[33] *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).
[34] Fed. R. Evid. 702.
[35] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993) (discussing the four nonexclusive factors); Order dated July 15, 2009 at 4 (Rec. Doc. 2181) (citing *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)).
[36] Order dated July 15, 2009, at 4 (Rec. Doc. 2181) (citing *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)).
[37] *Seither v. Winnebago Indus., Inc.*, 853 So. 2d 37, 41 (La. Ct. App. 2003).
[38] *Id.*
[39] *Id.*
[40] *Id.*

labor factor.[41] Although *Seither* does not address the admissibility of an expert's opinion directly, it certainly shows the factors that an expert must present in order to have relevant and helpful information for the jury.

*Daubert* also cautions against admitting expert testimony in a case when the application of the expert's methodology to the facts of the case involves an impermissible leap of faith. The Supreme Court in *General Electric v. Joiner* acknowledged, "[t]rained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to the existing data only by the *ipse dixit* of the expert."[42] If the analytical gap between the data and the opinion offered is too great, the testimony is not reliable.[43]

> **B.    Design defect opinions: Smulski is not qualified to offer design defect opinions and his testimony is unreliable and speculative, and should be excluded.**

Fleetwood is not objecting to Smulski's testimony that falls within the charge that he was given -- he took an inventory of the wood products and wood composite products in the Dubuclet unit. Fleetwood does object to Smulski's testimony that goes beyond this expertise. Smulski is not a civil engineer, and is not qualified to offer design defect opinions. In looking at the factors that the Court in *Seither* examined, Smulski is not qualified to offer any evidence that goes to any factor of an alleged alternative design. He cannot identify a specific manufacturer of the generic products he claims Fleetwood could have used in the alternative,[44] he has not conducted an economic feasibility test,[45] and he has never designed a travel trailer before.[46] For the

---

[41] *Id.*
[42] 522 U.S. 136, 146 (1997).
[43] *Id.*
[44] Smulski Dep. (Oct. 20, 2009) at 81:25-83:12 (Ex. A).
[45] *Id.* at 65:3-20 (Ex. A).
[46] *Id.* at 64:20-65:2 (Ex. A).

Case 2:07-md-01873-KDE-MBN   Document 6660-1   Filed 11/09/09   Page 9 of 12

mechanical ventilation suggestion, he is not aware of any mechanical ventilation systems that have been used in travel trailers, he does not know how it would impact the design of the unit's electrical system, he does not know how the EHU would have to be modified, and he does not know what the added cost would be for the unit with such a system -- although it might increase the resident's electric bill.[47] Further, he not conducted any analysis of air exchange rates within the Dubuclet EHU,[48] to even have a baseline from which to test his theory. Of course, neither of these theories were tested to show whether his proposed vague alternative design were remotely feasible for use in a travel trailer or would correct the perceived flaws.

Critically, Smulski has not provided any specification that Fleetwood should have changed. He only offers generic suggestions that Fleetwood could have used other products, but there is no evidence as to whether it is a viable alternative given that Fleetwood needed to provide housing units that met the transportability, durability, and price point requirements that Fleetwood had. For all of these reasons, Smulski has no qualifications or experience on which to base these opinions. Furthermore, this testimony is speculative given all that he does not know. It is not helpful to the trier of fact on an alternative design theory. These opinions should be excluded.

Smulski also seems to offer an opinion that the frame "can" bend, presumably to persuade the jury that this EHU is defective because if the frame "can" bend, then it could theoretically release more formaldehyde gas.[49] But he saw no evidence that there was any damage to this particular unit.[50] Therefore, to the extent that seeks to testify that the unit is

---

[47] *Id.* at 61:20-64:19 (Ex. A).
[48] *Id.* at 28:23-29:7 (Ex. A).
[49] Smulski Rep. at 4, ¶ 14 (Ex. B).
[50] Smulski Dep. (Oct. 20, 2009) at 100:22-101:1 (Ex. A).

defective because the frame and exterior shell "can" bend during installation, such testimony has no reliable basis when Smulski admits that he did not see any damage that this even occurred.

### C. Formaldehyde testing results: Smulski is not qualified and has no basis for such opinions, and this testimony should be limited.

Smulski is not a statistician and has not performed testing on any EHU.[51] Fleetwood is not conceding that Smulski is qualified to render these opinions, but will seek, for now, only to have the Court's previous ruling as to this witness applied here as well. This Court previously ruled that that Smulski "can and will be expected to recite the factual and/or theoretical bases for his opinions."[52] The Court also stated that while Smulski can refer to the results of various testing on levels of formaldehyde, "it must be clear that this testing was not done by him and is not his opinions, but rather is available information that he considered in forming his ultimate opinions."[53] Fleetwood is requesting that the Court place this same limitation on Smulski's testimony in this case.

### D. Medical Causation: Smulski is not qualified to render medical causation opinions, and his testimony is not reliable, and should be excluded.

Smulski has admitted that he is not going to offer opinions on medical issues.[54] Yet, his report in this case contains opinions about the Dubuclets' suffering adverse health effects.[55] Additionally, this Court has agreed that Smulski is not qualified to testimony about adverse health effects.[56] The Court's limitation extended to his opinions that living in an EHU for a "long period of time" would adversely affect the health of persons living in the EHU.[57] Fleetwood is requesting that these same limitations be in place here, and that Smulski be

---

[51] *Id.* at 27:25-28:15, 29:16-30:13, 74:12-75:2 (Ex. A)
[52] Order at 1-2 (Rec. Doc. 2800).
[53] Order at 3 (Rec. Doc. 2800).
[54] Smulski Dep. (Oct. 20, 2009) at 28:8-13
[55] Smulski Rep. at 6, ¶ 18; id. at 11, ¶ 30 (Ex. B).
[56] Order at 4 (Rec. Doc. 2800).
[57] *Id.*; *see* Smulski Rep. at 11, ¶¶ 30-31 (Ex. B).

prevented from testimony to any alleged adverse health effects caused by exposure to formaldehyde.

## III.    Conclusion

Smulski should not be permitted to testify to any alternative design theory asserted by Plaintiff.  He is not qualified, and it is based on pure speculation.  Fleetwood also requests that this Court place the same limitations on Smulski's testimony regarding formaldehyde test levels and medical causation that it had previously placed on Smulski.  For these reasons, Fleetwood requests that this motion be granted.

This 9th day of November 2009.

Respectfully submitted:


 /s/ Richard K. Hines, V
Richard K. Hines, V
GA Bar No. 356300
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)

Jerry L. Saporito
LA Bar No. 11717
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-1701
(504) 585-7500 (phone)
(504) 585- 7775 (fax)

Counsel for Fleetwood Enterprises, Inc.

11

## **C E R T I F I C A T E OF SERVICE**

       I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )    Hand Delivery                      ( )    Prepaid U.S. Mail

( )    Facsimile                             ( )    Federal Express

(X)    CM/ECF

       New Orleans, Louisiana, this 9th day of November 2009.

                                              /s/ Richard K. Hines, V
                                              Richard K. Hines, V
                                              Georgia Bar No. 356300
                                              richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)