UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER FORMALDEHYDE § | | MDL No. 1873 |
| PRODUCTS LIABILITY LITIGATION § | | |
| § | | SECTION N(5) |
| § | | |
| THIS DOCUMENT IS RELATED TO: § | | JUDGE ENGELHARDT |
| *Civil Action No. 07-9228* § | | |
| *Aldridge, et al v. Gulf Stream Coach, Inc., et al* § | | MAGISTRATE CHASEZ |
| *(Elisha Dubuclet o/b/o Timia Dubuclet)* § | | |

_____

**MEMORANDUM IN SUPPORT OF FLUOR ENTERPRISES, INC.'S
MOTION FOR SUMMARY JUDGMENT ON NEGLIGENCE CLAIMS**

This memorandum is submitted on behalf of Fluor Enterprises, Inc. (**FEI**) in support of its partial motion for summary judgment to dismiss all of Timia Dubuclet's negligence-based claims against FEI.

**BACKGROUND**

This multi-district litigation (MDL) is the consolidation of several state and federal toxic tort suits in which plaintiffs claim to have inhabited EHUs that were provided to them by FEMA, because their residences were rendered uninhabitable by Hurricanes Katrina and Rita.[1]  After selecting and purchasing these EHUs, FEMA provided them to plaintiffs by contracting with certain companies, like FEI, to deliver the EHUs, set them up, and make them ready for

---

[1] Member Case 07-9228 (*Aldridge*), Original Complaint, Rec. Doc. 1, art. I.

occupancy.[2]  Plaintiffs generally claim to have been exposed to formaldehyde contained in these EHUs and to have suffered damages as a result.  Plaintiffs sued the manufacturers of the EHUs, the United States Government and the government contractors, like FEI, who delivered and set up these EHUs.

Plaintiff Dubuclet joined the MDL on November 30, 2007.[3]  Thereafter, Timia Dubuclet was selected as the bellwether plaintiff in a trial scheduled to commence on December 7, 2009, against the USA, Fleetwood, the manufacturer of the travel trailer in which Plaintiffs resided, and FEI, the government contractor who was responsible for having the travel trailer delivered and installed.  The claims against the USA were dismissed on a procedural motion in July, 2009.

This plaintiff has claimed injuries due to formaldehyde exposure emitted from products used in construction by defendant Fleetwood of the travel trailer provided to her by the federal government following Hurricane Katrina.  Plaintiff claims that FEI's negligence in installing and maintaining her travel trailer caused her injuries by elevating the levels of formaldehyde in the travel trailer in which she lived.  The plaintiff alleges that the process used by FEI to jack, block, and maintain her trailer caused openings in the seams and cracks in the shell of the trailer. Plaintiff further alleges that these openings and cracks in the shell allowed the infiltration of moisture into the shell of the trailer, thereby increasing the amount of formaldehyde emitted by the wood components of the trailer.  The plaintiff alleges this excess formaldehyde was drawn into the interior of the trailer where she was exposed to elevated levels of formaldehyde. Plaintiff also alleges that FEI had a duty to warn her, grounded in general negligence law, about the elevated levels of formaldehyde in her trailer caused by actions of FEI.

---

[2]  Aldridge First Supplemental and Amending Complaint, Rec. Doc. 1064, at ¶¶ 9-31.
[3]  In Aldridge, et al. v. Fleetwood, et al., 07-9228; Original Complaint, Rec. Doc. 1, art. II.

Plaintiff Timia Dubuclet cannot prove the necessary elements of her state law negligence claims—that FEI breached any duty owed to her—and thus each of her claims fail as a matter of law.

Plaintiff Timia Dubuclet cannot prove that essential element as to the "haul & install claim" because it is clear that there is no evidence that the Dubuclet trailer was damaged during installation, thereby causing openings in the seams and cracks in the shell of the trailer. Lacking such evidence plaintiff cannot link the actions of FEI to any alleged increase in formaldehyde levels to which she claims exposure.

Similarly, plaintiff Timia Dubuclet cannot prove an essential element as to her "negligent maintenance claim." FEI did not have any maintenance responsibility for the trailer after June 30, 2006. According to Elisha Dubuclet and FEI's records, during the very brief time between when she first moved into the trailer in June 2006 and June 30, 2006, when FEI no longer had any responsibility for maintenance, the replacement of a defective microwave oven was the only maintenance required for the trailer. Thus, Timia Dubuclet cannot prove that FEI failed to maintain the trailer in that time period in such a way as to cause an increase in the formaldehyde levels to which she was exposed.

Finally, plaintiff Timia Dubuclet cannot prove an essential element as to the negligence-based failure-to-warn claim. Firstly, FEI owed no duty to warn to this plaintiff. FEI has separately moved for dismissal of the Louisiana Products Liability Act (**LPLA**) claim against it; that motion is virtually identical to the one granted by the Court in *Alexander* bellwether case. Outside of an LPLA claim, there simply is no basis for imposing a duty to warn on Fluor on the facts presented by this case. Secondly, this is particularly true here, where it is clear that there is no evidence of increased formaldehyde levels in the trailer attributable to any action of FEI.

Thus, there was nothing about which FEI is required to warn plaintiff. Thirdly, if indeed plaintiff's position is that FEI had a duty to warn about formaldehyde levels that it in no way caused or affected merely because it "hauled and installed" the trailer, it is undisputed that the Fleetwood trailer in question came with a warning concerning the formaldehyde-containing products used in construction of the trailer. Surely, plaintiff cannot be arguing that some one who installs trailers is obliged to go beyond that which the manufacturer, which clearly has superior knowledge concerning its own products, does in the way of warnings. Therefore, even if there is some duty of FEI to warn concerning the materials of construction, that duty was met in this case.

**FACTUAL BASIS FOR MOTION**

The facts on which this motion is based are simple, few in number and uncontested. They are as follows:

1. FEI had a contract with FEMA that required it to haul, install and maintain for a time various types of RVs manufactured by others that FEMA had selected to provide as emergency housing to people displaced as a result of Hurricanes Katrina and Rita.[4]

2. In the course of performing its contractual obligations to FEMA, FEI had a subcontractor haul and install a travel trailer manufactured by Fleetwood and selected by FEMA to serve as emergency housing for plaintiff.[5]

---

[4] Aldridge First Supplemental & Amended Complaint, Civil Action No. 07-9228, MDL Rec. Doc. No. 1064, at p. 2 (unnumbered paragraph describing FEI's relationship with FEMA), & ¶¶ 9-31 (outlining haul & install role of FEI); Exhibit "A," Declaration of Al Whitaker, at ¶ 3-8, attached to FEI's Statement of Undisputed Material Facts (this is the same Declaration of Mr. Whitaker submitted with FEI's Motion for Summary Judgment on the LPLA claim)[hereafter, "LPLA Decl. of Al Whitker"]

[5] Exhibit "A," LPLA Decl. of Al Whitaker, at ¶¶ 13-14.

3. There is no evidence that the haul and install process, by which the trailer occupied by Timia Dubuclet was jacked and placed on six concrete block piers, damaged the frame or structure of the trailer in any way so as to permit excess moisture intrusion or enhanced formaldehyde off-gassing.[6]

4. FEI's maintenance obligation in regard to the Dubuclet trailer ceased on or before June 30, 2006.[7]

5. From May 11, 2006 until June 30, 2006, the only maintenance needed or requested for the Dubuclet trailer involved replacement of a faulty microwave oven.[8]

6. The Dubuclet trailer contained a warning concerning the formaldehyde-containing products in the wood components of the trailer.[9]

## ARGUMENT AND APPLICABLE LAW

Plaintiff cannot meet her burden to prove a negligence claim against FEI because plaintiff is missing the most fundamental evidence, namely, that FEI breached any duty of care concerning installation or maintenance of the trailer.

Under Louisiana law, a tortfeasor is generally liable for any damage caused by his or her fault. LA. CIV. CODE, article 2315. Louisiana has adopted a duty-risk analysis in determining whether to impose liability under a particular set of facts. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform

---

[6] Exhibits "B" to "F," excerpts from depositions of plaintiffs' and co-defendant Fleetwood's own experts, acknowledging this fact.
[7] Exhibit "G," Declaration of Al Whitaker, at ¶ 5, attached to FEI's Statement of Undisputed Material Facts (this is the same Declaration of Mr. Whitaker submitted with FEI's Motion for Summary Judgment on the Government Contractor defense)[hereafter, Govt. Kxor Decl. of Al Whitaker].
[8] See Exhibit "H," excerpt from 10/6/2009 deposition of Elisha Dubuclet, at 51-54, attached to FEI's Statement of Undisputed Material Facts; *see also* Exhibit "A," Declaration of Al Whitaker, at ¶ 20.
[9] Exhibit "I," photographs of the warning and excerpt from deposition of plaintiff expert, Al Mallet, authenticating same.

his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4)  the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element). *Pinsonneault v. Merchants & Farmers Bank*, 01-2217 (La. 4/3/02), 816 So.2d 270, 276; *Barasich v. Columbia Gulf Transmission Co.*, 467 F.Supp.2d 676, 691, (E.D. La. 2006).  These elements take into consideration each party's conduct and the particular circumstances of each case.  *Joseph v. Dickerson*, 99-1046, 99-1188 (La. 1/19/2000), 754 So.2d 912, 916.  Under this analysis, the plaintiffs must affirmatively prove each element of the duty-risk approach.  *Sciacca*, *supra*, at * 10.    A negative answer to any one of these inquiries results in a determination of no liability.  *Hanks v. Entergy Corp.*, 06-0477 (La. 12/18/06), 944 So.2d 564, 579; and   *Joseph v. Dickerson*, 99-1046, 99-1188 (La. 1/19/2000), 754 So.2d 912, 916.

Contrary to the assertions made in the plaintiff's complaint, FEI did not breach any duty[10] to the plaintiff concerning formaldehyde levels in her trailer.  Plaintiff's own experts found no damage to the trailer that they could attribute to FEI's installation of the trailer.  Additionally, FEI's maintenance obligation ended almost as soon as plaintiff moved into the trailer.  The only maintenance plaintiff's mother requested of FEI and the only act of maintenance that FEI, therefore, performed was replacement of a faulty microwave.  There is no negligent breach of a maintenance obligation that in any way harmed plaintiff.

---

[10] For purposes of this motion only, and without admitting the existence of any duty as alleged in the complaint, FEI addresses the negligent *installation and maintenance* claims of plaintiff as if a duty, as alleged in the complaint, exists.  With respect to the negligence-based, duty-to-warn claim, one of FEI's *alternative* arguments is that no such duty exists.

With respect to plaintiff's negligence-based, duty-to-warn claim, under Louisiana law, FEI had no duty to warn the plaintiff's mother of the alleged dangers associated with formaldehyde found in the trailer. Under general tort law principles, there is no duty to warn strangers of dangers, no matter how grave or imminent. *Miles v. Melrose*, 882 F.2d 976 (5th Cir. 1989) (citing the RESTATEMENT (SECOND) OF TORTS). Under Louisiana law, a cause of action for failure to warn does not exist unless there is an affirmative duty to provide a warning. *Audler v. CBC Innovis Inc.*, 519 F.3d 239 (5th Cir. 2008). Louisiana law imposes a specific duty to warn only in limited situations, none of which is present in the instant case, assuming the Court, consistent with its decision in the Alexander bellwether cases, dismisses the LPLA claim against FEI.

The LPLA of 1988 provides the exclusive remedy for recovery of damages from manufactures in Louisiana. R.S. 9:2800.52. Under the Act, a manufacturer's liability is based in part on whether the product has a characteristic rendering it unreasonably dangerous. R.S. 9:2800.54(A). A product can be unreasonably dangerous when it lacks an adequate warning. R.S. 9:2800.54(B) (3). Therefore, under the LPLA, a "manufacturer" can be found liable to a plaintiff injured by a product when the manufacturer failed to supply an adequate warning as provided in R.S. 9:2800.57. Because FEI did not manufacture the housing units and the plaintiffs' claims under the LPLA must be dismissed as set forth in FEI's separate motion addressed to that claim (including any claims that FEI failed to warn them of the dangerous condition presented by the formaldehyde).

Louisiana law also imposes a duty on landowners or one having custody or *garde* over a thing to disclose any unreasonably dangerous conditions and to either correct the condition or warn others of the condition's existence. *Dauzat v. Curnest Guillot Logging, Inc.*, 995 So.2d

1184 (La. 2008); *Jamison v. United States*, 491 F.Supp.2d 608 (W.D. La. 2007). That type of situation is clearly not present here, where FEI did not own the trailers, nor did FEI have custody or *garde* of the plaintiffs' trailers. Additionally, the duty to warn arises with ownership or *garde* of immovable property and is applicable to claims under a theory of premises liability. The plaintiff has not made these types of claims. The complaints and amended complaints in Aldridge contain no such allegations, and plaintiff cannot amend to assert such claims at this late date. Additionally, the facts support no such claim in any event.

Finally, the plaintiff in this case shares no special relationship with FEI such that a duty to warn might be imposed. For instance, in cases involving actions committed by a third party, it is well-settled law in Louisiana that absent a special relationship between the plaintiff and the defendant, the defendant has no duty to warn the plaintiff. *Johnson v. Orleans Parish School Board*, 938 So.2d 219 (La. App. 4 Cir. 8/9/06). Although the plaintiff has not alleged injuries due to third party activity, there is nevertheless no special relationship between the parties under which a duty to warn of a dangerous condition might arise. The court in *Hollander v. Days Inn Motel*, 739 So.2d 238 (La. App. 3 Cir. 1999), listed examples of special relationships that might create such a duty. These include parent and child, employer and employee, innkeeper and guest, jailer and prisoner, shopkeeper and visitor, and teacher and pupil. The plaintiff and FEI do not share such a relationship creating a responsibility on FEI's part to warn the plaintiffs of possible exposure to formaldehyde.

This argument is all the more compelling on the facts of this case, in which plaintiff cannot prove that FEI acted or failed to act in any way that affected formaldehyde levels in the plaintiff's trailer. If the Court were to impose such a duty on FEI on the facts of this case, it would be imposing a duty on a mere service provider—*who provided its service properly*—to

warn about some intrinsic characteristic or condition of the thing that it delivered or worked on, but that the service provider otherwise had no role whatsoever in causing, creating, buying, selling, building or selecting.

And finally, even if such a duty exists outside of the LPLA context on the facts of this case, it cannot be disputed that plaintiff's trailer came with a warning provided by the trailer manufacturer. Thus, there was no breach of duty.

Given that plaintiff cannot meet either or both of the duty or breach of duty elements of her negligence claims, those claims must fail. Dismissal on summary judgment is therefore required.

### A. <u>Summary Judgments Are Favored</u>

Summary Judgment is appropriate under FRCP 56, if the record discloses that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. There is no genuine issue of material fact if the record, taken as a whole, cannot lead a rational trier fact to find for the non-moving party. *Matsushita Electric Industrial Corp. v. Zenith Radio Co.*, 475. U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed. 2d 538 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The mere existence of factual disputes will not defeat an otherwise properly supported motion. *Anderson*, 477 U.S. at 248. Further, the court's finding that a rational jury could not find for the non-moving party may be supported by the absence of evidence needed to establish an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). FED.R.CIV.P. 56 would be thwarted if a defendant had "to bear the costs of trying all of

the issues in a case when some can and should be resolved on summary judgment." *Little v. Liquid Air Co.*, 37 F.3d 1069, 1076 (5th Cir. 1994).

After the moving party meets its burden of demonstrating the absence of a genuine issue of material fact, the non-moving party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id*. at 1075. This burden cannot be met merely by pointing to "some metaphysical doubt as to the material facts, ... by 'conclusory allegations,' [or] by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id*. (citing *Matsushita*, 475 U.S. at 586; *Lujan v. Nat'l. Wildlife Fed*., 497 U.S. 871-73 (1990); *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); and *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994)).

Courts routinely grant summary judgment and dismiss the plaintiffs' actions in cases where the plaintiffs are unable to show that the defendant owed a duty to the plaintiffs (or when the other elements in the duty risk analysis are not proven). *See, e.g*., *Sciacca v. Rite Aid Corp*., 2003 U.S. Dist. Lexis 1919 (E.D. La. 2003); *Floyd v. El Paso Prod. GOM, Inc*., 2006 U.S. Dist. Lexis 30148 (E.D. La. 2006); *Lazard v. Foti*, 02-2888 (La. 10/21/03), 859 So.2d 656; *Paul v. La. State Employees Group Benefits Program,* 99-0897 (La. App. 5 Cir. 5/12/00), 762 So.2d 136; and *Lane v. State Farm*, 03-2099 (La. App. 4 Cir. 08/25/04), 883 So.2d 5.

Plaintiff makes three distinct negligence claims against FEI: negligent install, negligent maintenance and a negligence-based failure to warn of increased levels of formaldehyde. Regarding the negligent install claims, plaintiff specifically alleges that:

1. By blocking and jacking the Dubuclet trailer where weight was lifted off the wheels FEI created stress and flexing of the trailer frame.[11]

2. The stress and flexing created by blocking them created distortion in the trailer frame which allowed excess moisture intrusion which increased formaldehyde exposures.[12]

---

[11] Aldridge, Plaintiffs First Supplemental and Amending Complaint, Rec. Doc. 1064, ¶ 24.

Regarding the negligent maintenance claim, plaintiff specifically alleges that:

1. FEI failed to adequately manage, maintain and repair the temporary housing units which enabled and contributed to the unsafe and hazardous conditions that led to adverse health effects....[13]

Regarding the negligent failure to warn claim,[14] plaintiff specifically alleges that:

1. FEI failed to warn the occupants of the temporary housing units of the hazardous conditions created by the elevated levels of formaldehyde in the temporary housing units.[15]

The Court should dismiss the installation claim because of lack of proof that anything FEI did during installation damaged the trailer so as to cause an increase in levels of formaldehyde in the trailer. The Court should dismiss the maintenance claim because there is a lack of proof of required maintenance during the very brief period that FEI had any maintenance obligation while plaintiff lived in the trailer. The Court should dismiss the negligence-based failure-to-warn claim both because there is not such duty and, even if there was such a duty, it was satisfied by the manufacturer's warning.

### B.   **FEI Did Not Breach a Duty to the Plaintiff**

*The Install Claim*

Plaintiff's "haul and install" claim rests upon a Tinkers-to-Evers-to-Chance chain of theoretical causation: the trailer frame was flexed during blocking and jacking, which damaged

---

[12] Aldridge, Plaintiffs' First Supplemental and Amending Complaint, Rec. Doc. 1064, ¶ 25.

[13] Aldridge, Plaintiffs' First Supplemental and Amending Complaint, Rec. D. 1064, ¶ 29.

[14] The original and various amending complaints also make failure to warn claims under the Louisiana Products Liability Act La. R.S. 9:2800.51 *et seq.* The LPLA failure to warn claims are conceptually different and are addressed in a separate LPLA motion being filed contemporaneously with this filing.

[15] Aldridge, Plaintiffs First Supplemental and Amending Complaint, Rec. Doc. 1064, ¶ 35. It is not entirely clear whether plaintiffs are claiming that FEI had a duty to warn because some conduct of FEI "elevated" the formaldehyde levels in the trailer or if plaintiffs are claiming that FEI had a duty to warn about characteristics of the Fleetwood trailer even if FEI did nothing untoward to affect the formaldehyde levels in the trailer. Either way, the claim fails, either because there is no evidence of the former, or because there is not duty or the duty was met in the latter case.

the shell by opening seams and cracks, which in turn let excess moisture into the shell of the trailer, which thereby caused the wood products to emit more formaldehyde gas than the wood products otherwise would have emitted, and which gas entered the interior of the trailer and harmed plaintiff.

The problem with plaintiff's theory, as applied to this case, is that *the experts, hired by both plaintiff and the co-defendant, are unanimous in testifying that they see no evidence of the type of damage to the trailer that is alleged to have triggered this theoretical chain of events.* Plaintiff has put forward a number of experts whose opinions touch upon this theory: Al Mallet, Charles Moore, Ervin Ritter and Dr. Stephen Smulski.[16]  Each of these witnesses has testified that they inspected the Dubuclet trailer and each says they saw no evidence of damage caused by jacking

Dr. Smulski's testimony:

> *Q. When you did examine the trailer in July, did you see any damage that you believe was caused by the installation process?*
>
> *A. I did not.*[17]

Mr. Ritter's testimony:

> *Q. Mr. Ritter, in the five or six hours you were at the trailer, did you see anything in looking at the trailer, that you believed could have been a condition of the trailer caused by jacking up of the trailer?*
>
> *A. Outside of my league, but no.*
>
> *Q. I understand. We all have eyes.*
>
> *A. Okay. As long as it stays there .* [18]

---

[16] Each of these experts testified at the first bellweather trial. Mr. Mallet was the Alexander plaintiffs' construction expert, Mr. Moore their structural engineer, Mr. Ritter their mechanical engineer, and Dr. Smulski their wood materials expert.
[17] See Ex. "B," p. 100, *l.* 22 to p. 101, *l.*1
[18] See Ex. "C," p. 236, *l.* 1-8.

Mr. Moore's testimony:

> *Q And when you inspected the interior of the travel trailer, you didn't find any structural damage on the interior?*
>
> *A That's correct, I did not.*
>
> *Q Did you see any visible splitting of any of the walls from each other or the walls from the ceiling or the walls from the floor?*
>
> *A Not in this unit, no.*
>
>   \* \* \* \* \*
>
> *Q Do you have any proof to support any statement that there was any intrusion of water in this unit while the Dubuclets were using the unit?*
> *A Not water itself. No, I did not see any water staining or anything like that.*
>
> *Q No water staining anywhere?*
>
> *A No*
>
>   \* \* \* \* \*
>
> *Q If I understood your responses to Mr. Saporito's questions earlier today, you really noted no damage to this trailer inside or out; is that correct?*
>
> *A That's correct.*
>
> *Q The only thing you mentioned to Mr. Saporito is certain seals on the outside had some cracks in them; is that correct?*
>
> *THE WITNESS: There were seals on the outside. There were the flap seals for the slide-out, and then there was the floor around the front door.*
>
> *EXAMINATION BY MR. PENOT: Q And you have no opinion as to when those items that you just listed occurred; is that correct?*
>
> *A That's correct.*[19]

---

[19] See Ex. "D," p. 102, *l.* 2-10; p. 106, *l.* 15-23; and p. 156, *l.* 16 to p. 157, *l.* 10.

Mr. Mallet's testimony:

> *Q. So if I understand you correctly, you were unable to find any physical manifestations upon your inspection of the Dubuclet travel trailer that indicated that jacking somehow damaged that trailer. Is that a fair statement, sir?*
>
> *A. That is correct. Based on limited visual examination, we found no indication of damage to the unit because of the method of jacking and blocking.[20]*

Likewise, codefendant Fleetwood has put forward a trailer maintenance expert, Thomas Fribley, who has inspected the Dubuclet trailer. Mr. Fribley found no damage to the trailer from jacking:

> *Q.  Mr. Fribley, did you observe any damage or distortion of any of the members, structural members of the Dubuclet travel trailer that in your opinion might have been the result of improper jacking of the unit?*
>
> *A.  No, sir.[21]*

In short, all experts who have issued reports touching on this subject—including four of plaintiff's own experts—have been deposed and their testimony is unanimous that there is no evidence of improper jacking or blocking of the Dubuclet trailer. Plaintiff's entire claim concerning exposure to formaldehyde based upon blocking and jacking rests on a foundational assertion of damage to the trailer during the installation process. Installation damage to the trailer which let in excess moisture is a necessary fact that the defendants must prove to prevail on this claim. It is undisputed and indisputable that there is no proof of such damage. This claim must be dismissed.

*The Negligent Maintenance Claim*

Plaintiff acknowledges not moving into the trailer until June of 2006,[22] the very month in which FEI's maintenance obligation came to an end. The only "maintenance" that plaintiff ever

---

[20] See Ex. "E," p. 243, *l.* 18 to p. 244, *l.* 2.
[21] See Ex. "F," p. 202, *l.* 18-23.

requested of FEI was to replace a malfunctioning microwave oven, which FEI did. There simply is not basis for a negligent maintenance claim against FEI.[23]

*The Negligent Failure to Warn Claim*

There is no duty to warn strangers of dangers, no matter how grave or imminent. *Miles*, 882 F.2d 976 (5th Cir. 1989), *citing* the RESTATEMENT (SECOND) OF TORTS. Under Louisiana law a cause of action for failure to warn does not exist unless there is an affirmative duty to provide a warning. *Audler v. CBC Innovis Inc.*, 519 F.3d 239 (5th Cir. 2008). Should the Court dismiss the LPLA claim, as it did on identical facts in the Alexander bellwether trial, there simply is no such duty applicable to FEI in the circumstances of this case. The other grounds for imposing such a duty, such as a landowner's duty[24] or a special relationship[25], simply are not presented by the facts of this case.

Even if a generalized duty to warn of increased formaldehyde levels does arise from the work FEI did in installing trailers, which is not supported by the law, no breach of the duty occurred in this case. FEI did not cause an increased level of formaldehyde in the trailer by its installation or maintenance practices. In short, FEI had nothing to warn about. Moreover, the trailer in question came with a warning posted in it.

## **CONCLUSION**

Summary judgment should be granted in this case dismissing the plaintiffs' state law negligence claims. The plaintiff is unable to prove the most basic elements of a negligence claim, duty and breach of duty. The plaintiff has no proof that FEI damaged her trailer during the installation process in a way that increased any formaldehyde levels to which she might have

---

[22] See Ex. "H"
[23] *Id.*
[24] *Dauzat v. Curnest Guillot Logging, Inc.*, 08-0528 (La. 12/2/08), 995 So.2d 1184; *Jamison v. United States*, 491 F.Supp.2d 608 (W.D. La. 2007).
[25] *Johnson v. Orleans Parish School Board*, 05-1488 (La. App. 4 Cir. 8/9/06), 938 So.2d 219.

been exposed. Absent such proof, her negligent installation claims must be dismissed. Similarly, the plaintiff lacks evidence that FEI failed to maintain her trailer during the short period in June 2006 when FEI was contractually bound to maintain plaintiff's trailer. The only maintenance request during that period involved the need to replace the microwave in the trailer —an event that could not possibly have had any impact on formaldehyde levels inside the plaintiff's trailer. Finally, plaintiff meets neither the duty nor the breach of duty elements of her negligence-based, failure-to-warn claim.

Plaintiff's negligence claims must be dismissed as a matter of law. Summary judgment is proper.

Respectfully submitted,

**MIDDLEBERG, RIDDLE & GIANNA**

BY: */s/ Charles R. Penot, Jr.*
Charles R. Penot, Jr. (La. Bar No. 1530 &
Tx. Bar No. 24062455)
717 North Harwood, Suite 2400
Dallas, Texas 75201
Tel: (214) 220-6334; Fax: (214) 220-6807
cpenot@midrid.com

-and-

Dominic J. Gianna, La. Bar No. 6063
Sarah A. Lowman, La. Bar No. 18311
201 St. Charles Avenue, Suite 3100
New Orleans, Louisiana 70170
Telephone: (504) 525-7200
Facsimile: (504) 581-5983
dgianna@midrid.com
slowman@midrid.com

-and-

>Richard A. Sherburne, Jr., La. Bar No. 2106
>450 Laurel Street, Suite 1101
>Baton Rouge, Louisiana 70801
>Telephone: (225) 381-7700
>Facsimile: (225) 381-7730
>rsherburne@midrid.com

**ATTORNEYS FOR FLUOR ENTERPRISES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record, including court-appointed liaison counsel, who are CM/ECF participants.

*/s/ Charles R. Penot, Jr.*

ND: 4832-9617-1781, v. 1