**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION** | § § § § | **MDL No. 1873** <br> **SECTION N(5)** |
| **THIS DOCUMENT IS RELATED TO:** <br> *Civil Action No. 07-9228* <br> *Aldridge, et al v. Gulf Stream Coach, Inc., et al* <br> *(Elisha Dubuclet o/b/o Timia Dubuclet)* | § § § § | **JUDGE ENGELHARDT** <br> **MAGISTRATE CHASEZ** |

# EXCERPTS FROM THE DEPOSITION OF ERVIN RITTER

# Exhibit "C"

0001

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION
(THIS DOCUMENT RELATES TO "DUBUCLET V. FLEETWOOD ENTERPRISES, INC.," CASE NO. 07-9228)

MDL NO. 1873
SECTION N(4)
JUDGE ENGELHARDT

* * *

DEPOSITION OF ERVIN RITTER, 201 BOCAGE CIRCLE, LAFAYETTE, LOUISIANA 70503, TAKEN AT THE OFFICES OF LAMBERT & NELSON, 701 MAGAZINE STREET, NEW ORLEANS, LOUISIANA 70130, ON THE 13TH DAY OF OCTOBER, 2009.

REPORTED BY:

CATHY RENEE POWELL, CCR
PROFESSIONAL SHORTHAND REPORTERS
(504)529-5255

0002

APPEARANCES:

CHRIS PINEDO, ESQUIRE
4550 JERICHO ROAD
CORPUS CHRISTI, TEXAS 78413
(ATTORNEYS FOR PLAINTIFFS)

LAMBERT & NELSON
(BY: HUGH LAMBERT, ESQUIRE)
701 MAGAZINE STREET
NEW ORLEANS, LOUISIANA 70130
(ATTORNEYS FOR PSC)

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
(BY: WADE BASS, ESQUIRE)
3 SANCTUARY BLVD., SUITE 201
MANDEVILLE, LOUISIANA 70471
(Attended via telephone)

(ATTORNEYS FOR CH2M HILL CONSTRUCTORS, INC. and SHAW ENVIRONMENTAL, INC.)

GIEGER, LABORDE & LAPEROUSE
(BY: CARSON STRICKLAND, ESQUIRE)
701 POYDRAS STREET
SUITE 4800
NEW ORLEANS, LOUISIANA 70139
(Attended via telephone)

(ATTORNEYS FOR DEFENDANTS FOREST RIVER)

0003

APPEARANCES CONTINUED:

JONES, WALKER, WAECHTER, POITEVENT, CARRERE & DENEGRE
(BY: JAMES PERCY, ESQUIRE)
8555 UNITED PLAZA BOULEVARD
BATON ROUGE, LOUISIANA 70809
(Attended via telephone)
(ATTORNEYS FOR DEFENDANTS PILGRIM, KEYSTONE, MONACO, R-VISION, THOR CALIFORNIA, KZRV, DS/ CROSSROADS AND DUTCHMEN)

LEAKE & ANDERSSON
(BY: JERRY L. SAPORITO, ESQUIRE)
1700 ENERGY CENTRE
1100 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70163
(ATTORNEYS FOR DEFENDANTS FLEETWOOD ENTERPRISES, INC., ET AL.)

LOBMAN CARNAHAN
(BY: HEATHER CHEESBRO, ESQUIRE)
400 POYDRAS STREET
TEXACO CENTER - SUITE 2300
NEW ORLEANS, LOUISIANA 70130
(Attended via telephone)
(ATTORNEYS FOR CRUM & FORSTER)

MIDDLEBURG, RIDDLE
(BY: RICHARD A. SHERBURNE, JR., ESQUIRE)
CHASE TOWERS, NORTH TOWER
450 LAUREL STREET, SUITE 1101
BATON ROUGE, LOUISIANA 70801-1819
(ATTORNEYS FOR FLUOR ENTERPRISES, INC.)

0004

APPEARANCES CONTINUED:

McGLINCHEY STAFFORD
(BY: AMANDA STOUT, ESQUIRE)
301 MAIN STREET, 14TH FLOOR
BATON ROUGE, LOUISIANA 70802
(Attended via telephone)

(ATTORNEYS FOR MORGAN BUILDING & SPAS, INC. AND MORGAN BUILDING SYSTEMS, INC.)

SCANDURRO & LAYRISSON
(BY: TIMOTHY D. SCANDURRO, ESQUIRE)
607 ST. CHARLES AVENUE
NEW ORLEANS, LOUISIANA 70130

(ATTORNEYS FOR GULF STREAM COACH, INC.)

WILLINGHAM, FULTZ & COUGILL
(BY: THOMAS L. COUGILL, ESQUIRE)
NIELS ESPERSON BUILDING
808 TRAVIS, SUITE 1608
HOUSTON, TEXAS 77002
(Attended via telephone)
(ATTORNEYS FOR DEFENDANTS JAYCO AND STARCRAFT)

ALSO PRESENT:

AL WHITAKER

0005

* * *

EXAMINATION INDEX

EXAMINATION BY MR. SAPORITO: ...........11
EXAMINATION BY MR. SHERBURNE: .........229
EXAMINATION BY MR. LAMBERT: ...........240
EXAMINATION BY MR. SHERBURNE: .........281
EXAMINATION BY MR. LAMBERT: ...........294

* * *

INDEX OF EXHIBITS

Exhibit No. 1 .........................32
Notice of Deposition.
Exhibit No. 2 .........................33

Expert report issued by Ervin Ritter, including various charts, graphs and photographs, DUB 1395 through DUB 1428.

Exhibit No. 3 ........................92
Photograph of side of Dubuclet trailer with the slide-out on it, DUB-RITTER 1409.

Exhibit No. 4 ........................92
Photograph of roof and the AC unit, DUB-RITTER 1414.

0006

Exhibit No. 5 ........................94
Photograph of return air grill on the bottom side of the air-conditioning unit, DUB-RITTER 1446.

Exhibit No. 6 ........................96
Two photographs, Fig. 19, Bottom of A/C unit, Fig. 20 Return air grille at time of inspection, DUB 1425.

Exhibit No. 7 ........................99
Blow-up of the bottom photograph on Ritter Exhibit 6, DUB-RITTER 1811.

Exhibit No. 8 .......................101
Al Mallet in photograph of return air system in the ceiling of the travel trailer, DUB-RITTER 1798.

Exhibit No. 9 .......................114
Photograph of return air and plate in ceiling, DUB-RITTER 1802.

Exhibit No. 10 ......................131
Sketch by Mr. Ritter.

0007

Exhibit No. 11 ......................139
Two photographs: Fig. 13, Data Loggers No. 2 and No. 4 intending to measure air conditions and air flow; Fig. 14, Roof of trailer, packaged rooftop A/C unit, TV antenna.

Exhibit No. 12 ......................141
Two photographs: Fig. 5, view of trailer from rear; Fig. 6, ceiling A/C outlet with grille removed, DUB 1418.

Exhibit No. 13 ......................142
Photograph of data recorder with faceplates off, DUB-RITTER 1353.

Exhibit No. 13 ......................143
Photograph of top of trailer, DUB-RITTER 1777.
Exhibit No. 14 ......................144
Photograph of grille cover removed from unit on top of travel trailer, DUB-RITTER 1777.

0008

Exhibit No. 15 ......................148
Two photographs: Fig 9, Wasp nest; Fig. 10, Data Logger attached to A/C grille, DUB 1420.
Exhibit No. 18 ......................149
In globo exhibit of photographs DUB-RITTER 1347, 1418, 1427, 1418, 1444, 1445, 1467 and 1470.
Exhibit No. 16 ......................155
Photograph Inside of a cabinet door, DUB-RITTER 1788.
Exhibit No. 17 ......................156
Photograph of lavatory area, DUB-RITTER 1564.
Exhibit No. 19 ......................158
Photograph of sticker with warning language on inside medicine cabinet door, DUB 1014.
Exhibit No. 20 ......................159
Photograph of cable TV connection handing from outside window on trailer, DUB-RITTER 1785.

0009

Exhibit No. 21 ......................220
FEMA Accessible Model Travel Trailer Procurement Specifications dated April 21, 2006, DUB-RITTER 1312-1322.
Exhibit No. 22 ......................257
Sketch drawn by Mr. Lambert.

0010

S T I P U L A T I O N

It is stipulated and agreed by and between counsel for the parties hereto that the deposition of the aforementioned witness is hereby being taken for all purposes allowed under the Federal Rules of Civil Procedure, in accordance with law, pursuant to notice;

That the formalities of reading and signing are specifically not waived;

That the formalities of filing, sealing, and certification are specifically waived;

That all objections, save those as to the form of the question and the responsiveness of the answer, are hereby reserved until such time as this deposition, or any part thereof, may be used or sought to be used in evidence.

* * *

CATHY RENEE' POWELL, CCR, Certified Court Reporter, officiated in administering the oath to the witness.

0011

MR. SAPORITO:
Just for clarification for the folks listening on the phone, this is just a stenographic deposition, there is no video.

ERVIN RITTER,
having been first duly sworn as a witness, was examined and testified as follows:
EXAMINATION BY MR. SAPORITO:
Q. State your name for the record, please.
A. My name is Ervin Ritter, spelled E-R-V-I-N, R-I-T-T-E-R.
Q. Mr. Ritter, my name is Jerry Saporito. I represent Fleetwood Enterprises in this case involving the Dubuclet trailer and claims made by the Dubuclet family. I'm going to have some questions for you today and then maybe some of these other lawyers will as well.

It should be more than adequate for an area 240 square feet that is adequately constructed, insulated and sealed.

EXAMINATION BY MR. SAPORITO:

Q. Understanding your views about

0228

insulation and sealing, was using this 15,000BTU unit an adequate unit for this Dubuclet travel trailer?

MR. LAMBERT:

Objection.

THE WITNESS:

At the peak cooling season, you would probably be pushing it because you don't have an adequate -- your insulation in your walls is only an inch and a half thick, maybe an R7 or 8; the roof, two and a half inch, maybe an R9, possibly a 10.

With the unfaced insulation, the metal exterior which is going to radiate heat into that insulation, you're really marginal.

EXAMINATION BY MR. SAPORITO:

Q. Did you see anywhere what the R rating was for the wall insulation and the ceiling insulation as per manufacturer's specs?

A. I saw in there the building materials they called out for the thicknesses.

Q. And the R ratings?

0229

A. I don't recall that they called for R ratings. It was unfaced insulation.

MR. SAPORITO:

That's all the questions I have. Thanks.

EXAMINATION BY MR. SHERBURNE:

Q. Mr. Ritter, is July 9 the only time you have seen the Dubuclet travel trailer as far as you know?

A. Yes.

Q. How long were you in the vicinity of the Dubuclet travel trailer on July 9, 2009?

A. Say I arrived around mid-morning and stayed through the afternoon. Five or six hours, I would say.

Q. Of the five or six hours you were in the vicinity of the travel trailer, how much of the time was spent inside the travel trailer?

A. Probably about 50/50.

Q. So two and a half to three hours inside, two and a half to three hours outside?
A. That would be correct.
0230
Q. The two and a half to three hours outside, because we have seen so many photographs of the outside, were you taking photographs the whole time you were outside the trailer?
A. Not the whole time, but I took a few photographs.
Q. It is my understanding from your report, specifically page 9 if you want to look at it, that you have looked at a bill of materials for the Fleetwood trailer, that's right? Let me refer you to paragraph six, second from the bottom.
A. Okay.
Q. You did review a copy of those building materials from the Dubuclet travel trailer?
A. That is correct.
Q. Okay. While you were inside the trailer, I believe you testified previously that Mr. Mallet -- "mallet," or "MA-let"?
A. Here it is pronounced "mallet," in Lafayette we say "MA-let."
Q. Okay. Mr. Mallet. I know that he took a number of infrared photographs. Is
0231
he the only one that took infrared photographs, as far as you know?
A. As I recall, yes.
Q. Did you direct him to take any of those photographs or draw his attention to any objects to photograph?
A. No, I did not.
Q. Did he confer with you about the objects to be photographed?
A. He mentioned to me what he was taking thermographic images of, yes.
Q. Did he seek your opinion or assistance in deciding what to photograph?
A. No.
Q. You testified a little bit earlier today about a manometer and what it measures. If you could for me, does your firm have manometers available to it?
A. We do own a manometer, yes.
Q. Can you describe that manometer to me? I have never seen one.
A. Yes, you have.
Q. I have one in my airplane, but it

0236

Q. Mr. Ritter, in the five or six hours you were at the trailer, did you see anything in looking at the trailer, that you believed could have been a condition of the trailer caused by jacking up of the trailer?
A. Outside of my league, but no.
Q. I understand. We all have eyes.
A. Okay. As long as it stays there.
Q. I understand. One last thing. I want to ask you to look at page 10 of your report. I'm somewhat confused by the second to last paragraph and maybe I was just beaten on by too many nuns when I was learning grammar, but as I read the second to last paragraph, "The leakage is causing the travel trailer to be in a negative pressure condition and the negative pressure condition causes air leakage."
That seems rather circular to me. I suspect that the air leakage in the third sentence in that paragraph, you do not mean the same leakage in the first two sentences in that paragraph, but I can't see any distinction between the two. So I wanted to understand if this is merely a circular

0237

statement, "The leakage caused negative pressure" --
A. I have redundancy there.
Q. Please explain to me, in the first sentence in the second to last paragraph on page 10, what leakage is in the cavity of the walls and floor, or this leakage is causing the trailer, what leakage are you talking about in those two sentences?
A. The leakage from the ductwork, which is in the ceiling cavity, must make its way out of that cavity. The top of the bow trusses is a quarter inch or so paneling with a roof membrane on top of it, which effectively seals the roof down to the top plate of the walls. So that positive pressure that is occurring in that cavity must come out of the ceiling outlet, holes or make its way down through the wall cavities through the holes drilled through that top plate for wiring access from the walls up into the ceiling.
Q. Were you able to visualize any of those holes drilled through the top plates for wiring access?

0238

MR. LAMBERT: