UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER * | | MDL NO. 1873 |
| FORMALDEHYDE * | | |
| PRODUCTS LIABILITY * | | SECTION: N(5) |
| LITIGATION * | | |
| * | | JUDGE: ENGELHARDT |
| This Document Relates to: *Aldridge, et al. v.* * | | |
| *Gulf Stream Coach Inc., et al*, Docket No. 07-9228 * | | MAG: CHASEZ |
| Elisha Dubuclet, individually and on behalf of * | | |
| Timia Dubuclet * | | |

****************************************************************************

### OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY

**MAY IT PLEASE THE COURT:**

On November 3, 2009, Plaintiff Timia Dubuclet ("Plaintiff") moved to compel the production of a document drafted and inadvertently produced by Dr. Philip Cole, an expert retained in this matter by Fleetwood Enterprises, Inc. ("Fleetwood"). The document at issue is Dr. Cole's "task list," a written collection of his current research projects and unpublished writings. (Rec. Doc. 6319-2, p 1). The various assignments listed on the task list involve ongoing research and investigation, including some tasks for which Dr. Cole has not yet formulated an opinion. *See id*. at 1—2. Plaintiff argues that the task list is discoverable because it is neither privileged nor confidential. In addition to the task list, Plaintiff argues that Fleetwood must produce a manuscript that Plaintiff alleges has been produced to the Formaldehyde Council, Inc., and Dr. Cole must answer Plaintiff's deposition questions about both documents. Fleetwood now appears to oppose Plaintiff's Motion on the basis that both documents are privileged and are not discoverable, and also to assert that Dr. Cole is not required to answer deposition questions about either document.

### A.      Legal Standard

Federal Rule of Civil Procedure 26 provides that parties may obtain discovery regarding any matter, not privileged, that is relevant to any party's claim or defense. FED. R. CIV. P. 26(b)(1). However, that right is not without limit. The court must limit the frequency or extent of discovery if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. FED. R. CIV. P. 26(b)(2)(C)(i). Although the rule applies equally to discovery of nonparties, the Court in weighing the burdens imposed by the circumstances may consider an individual's nonparty status. *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 425 (Fed.Cir. 1993).

### B.      Dr. Cole's Task List

As discussed above, there are two documents at issue in Plaintiff's Motion to Compel. The first is Dr. Cole's task list, which Fleetwood asserts is privileged. Plaintiff argues that there is only one privilege that could arguably apply to this document – the so-called trade secret privilege. While the defendants do not deny that such a privilege may take effect in this case, the more applicable privilege is the one granted to academic researchers and commentators who have compiled pre-publication research. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998); *Deitchman v. E.R. Squibb & Sons*, 740 F.2d 556, 560—61 (7th Cir. 1984). This privilege is an offshoot of the "newsman's privilege," which this Honorable Court has recognized. *Id.*; *Cinel v. Connick*, 792 F.Supp. 492, 498—99 (E.D.La. 1992) ("The reporter's privilege is part of the fabric of American law…"). According to the privilege, journalists and scholars are entitled to protection from the premature production of research and/or investigation results so that their efforts to obtain and then disseminate information are not weakened. *See*

*Cusumano*, 162 F.3d at 714; *Deitchman*, 740 F.2d at 560—61. Without this privilege, reporters and scholars could face a "drying-up of sources" if their source materials were subject to production. *See Cusumano*, 162 F.3d at 714. "Just as a journalist, stripped of sources, would write fewer, less incisive articles, an academician, stripped of sources, would be able to provide fewer, less cogent analyses." *Id*. Thus, as at least one court has recognized, "Academicians engaged **in pre-publication research** should be accorded protection commensurate to that which the law provides for journalists." *Id*. (emphasis added).

In the instant case, Fleetwood asserts that the privilege in favor of academicians and scholars should apply in this case to protect Dr. Cole's task list from production. Dr. Cole, a noted epidemiologist and author, is in the process of drafting various manuscripts and expert reports. (*See* Rec. Doc. 6319-3, p. 1—3). In order to prepare these writings for publication, he has compiled research that will support his ultimate conclusions. *See id*. Importantly, he has not yet disseminated these research results through the official publication of the writings. To produce his source materials now – when the results of the research are raw, unpublished, and (in several instances) not opined upon – Dr. Cole would jeopardize the ultimate outcome of these publications by divulging confidential research and information. Fortunately, the scholars' privilege protects this information and prevents Dr. Cole from facing the elimination of resources needed to complete his works. The privilege acts to protect his research and source materials so that Dr. Cole can produce the type of "cogent analyses" his audience requires. *See Cusumano*, 162 F.3d at 714. Therefore, the task list is privileged and not discoverable.

Because Dr. Cole's task list is privileged, Fleetwood asserts that the parties' Stipulated Protective Order governs the inadvertent disclosure of the list. (Rec. Doc. 714). Under the Order, the inadvertent disclosure of any document subject to a legal privilege does not constitute the

waiver of that privilege as long as the "producing party"[1] informs the receiving party within three days of the inadvertent disclosure. *Id*. at p. 9. The receiving party must then return and/or destroy the document, and the receiving party cannot use the document at any deposition or at trial of this matter. *Id*. In the instant case, the Order clearly controls the disclosure of Dr. Cole's task list. The document is subject to the scholar's privilege, as discussed above. Furthermore, only two days after Dr. Cole learned of the inadvertent production, counsel for the Defense Liaison Counsel informed Plaintiff's counsel on Dr. Cole's behalf. *See* email correspondence from Andrew Weinstock, Defense Liaison Counsel, to Gerald Meunier, Plaintiffs' Steering Committee, dated October 29, 2009, attached hereto as Exhibit "A." Pursuant to the Order, therefore, Fleetwood did not waive the privilege on Dr. Cole's task list by accidentally producing it to Plaintiff. Accordingly, Plaintiff is obligated to return the document and forego any use of the document at deposition or trial. (Rec. Doc. 714, p. 9).

Fleetwood maintains that the Stipulated Protective Order overrides any jurisprudential test established to determine whether the inadvertent disclosure of a document waives any privilege attached to that document. However, Fleetwood avers that even under the jurisprudence, Dr. Cole's task list is still privileged despite its accidental production. The U.S. Court of Appeals for the Fifth Circuit has stated that in such a case, the court must look to five factors surrounding the disclosure – (1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery relative to the inadvertent disclosure; (4) the extent of the disclosure; and (5) the overriding issue of fairness. *Alldread v. City of Grenada*, 988 F.2d 1425, 1433 (5th Cir. 1993); *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 332 (N.D. Cal. 1985) (discussing the "scope of discovery"

---

[1] It is critical to note that the Stipulated Protective Order defines a "producing party" as any litigant or third person who produces discovery materials. (Rec. Doc. 714, p. 2). Thus, as a third party producing discovery materials, Dr. Cole is a "producing party" under the terms of the Order.

prong). Applying that test to this case, the parties certainly took reasonable precautions to prevent inadvertent disclosure by providing safeguards in the Stipulated Protective Order for this type of situation;[2] it only took two days for defense counsel to inform Plaintiff's counsel of the inadvertent disclosure, and the remedy of returning and/or destroying the document presumably took mere moments to accomplish;[3] the scope of what has been produced by each party since the start of this litigation is enormous, and the inadvertently produced document was a single page of Dr. Cole's work; admittedly, the extent was a total disclosure of the document, but Fleetwood argues that this is unavoidable considering the document is just one page; and fairness dictates that the task list, which is nothing more than Dr. Cole's personal compilation of his pending projects that includes fragments of information about pre-published works, should be returned to Dr. Cole. As stated above, the public at large values academic freedom, and the scholar's privilege serves that purpose by protecting an academician's pre-publication research. Fairness therefore requires that the document be returned to its author, especially when the list contains projects unrelated to the instant case. Considering all these factors, Fleetwood asserts that the Fifth Circuit's test weighs in favor of upholding the privilege on Dr. Cole's task list and supports its return and/or destruction by Plaintiff.

### C.     Testimony regarding Dr. Cole's Task List

Because the Stipulated Protective Order blocks Plaintiff from using the document at any deposition in this case, it follows that Dr. Cole is not obligated to answer deposition questions regarding this document. However, there is another valid basis to justify Dr. Cole's refusal to discuss the task list at his deposition. Under the Federal Rules of Civil Procedure, a party may depose an expert who has been designated as a witness whose opinions may be presented at trial.

---

[2]     (Rec. Doc. 714, p. 8, 9).

[3]     *See* Exhibit A.

But, the Rule also provides that if a report from that expert is required under Rule 26(a)(2)(B), the deposition of that expert shall not be conducted until after the report is provided. Fed.R.Civ.P. 26(b)(4)(A).

The Rules also provide for discovery related to experts who will not present opinions at trial. Fed.R.Civ.P. 26(b)(4)(B) applies to experts who have been retained in anticipation of litigation or preparation for trial and who are not expected to be called as witnesses at trial. The rule provides that a party may discover facts known or opinions held by such witnesses <u>only</u> as provided by Fed.R.Civ.P. 35(b) or upon a showing of "exceptional circumstances." Fed.R.Civ.P. 26(b)(4)(B). Otherwise, the non-testifying expert's opinions are not discoverable. *See id.* Importantly, even if an expert is identified as a testifying expert, switching that expert's status to "non-testifying" would still preserve the work-product privilege as long as the expert has not been identified on a party's witness list. *In re Shell Refinery v. Shell Oil Camp.,* 132 F.R.D. 437, 440 (E.D. La. 1990).

Applying those rules to this case, Fleetwood and Gulf Stream Coach, Inc. assert that these Rules bar the deposition of Dr. Cole regarding his task list. As Dr. Cole explained, the list provides projects that are outstanding at this time. (Rec. Doc. 6319-3, p. 1). His deposition testimony shows that the projects are in various stages – for some, he is in the process of preparing reports; for others, he is not even certain that he will be designated a testifying expert. *Id.* at 2—3. Regardless, the Federal Rules would not permit his deposition at this point in any of those cases.[4] He is either a testifying expert who has not yet issued a report, or he is or could become a non-testifying expert in which case his opinions would not be discoverable. It stands to

---

[4] There is an indication that Dr. Cole sat for a deposition in the Nicastro and Foster matter. (Rec. Doc. 6319-3, p. 5). However, it is unclear as to whether he sat for the deposition as an expert or in some other capacity. While Rule 26 might not preclude Dr. Cole's deposition in that case, his deposition on the task list is still precluded under the terms of the Stipulated Protective Order.

reason that if Dr. Cole's pending work in a case has not resulted in a written report, protecting him from inquiry in those cases, the Federal Rules also prevent the forced testimony in an unrelated case. Plaintiff cannot circumvent what would otherwise be a prohibition against deposition simply because Dr. Cole has rendered an unrelated report and sat for a deposition in this case. Not every fact and/or issue is fair game at an expert's deposition Thus, to the extent that Plaintiff has not established exceptional circumstances that would allow for the work-product protections of the Federal Rules to be subverted, his testimony about his work in those cases is not discoverable.

**D.      Dr. Cole's Manuscript**

Finally, Fleetwood and Gulf Stream Coach, Inc. address Plaintiff's motion to compel the production of a manuscript that Plaintiff believes is being submitted to the Formaldehyde Council, Inc. First of all, Dr. Cole's deposition testimony does not bear out Plaintiff's argument that Dr. Cole is submitting a manuscript to the Formaldehyde Council. (Rec. Doc. 6319-2, p. 2). When asked by Plaintiff's counsel at his deposition whether Dr. Cole submitted a manuscript to the Formaldehyde Council prior to publishing that manuscript, Dr. Cole denied that he had done so, stating, "I don't think there is any paper or document of the type that you're referring to." (Rec. Doc. 6319-3, p. 2). Even with respect to the one manuscript Dr. Cole has prepared that was supported by the Formaldehyde Council, Dr. Cole had no knowledge that the manuscript was submitted to the Council prior to publication. *Id.* at 2, 6. Thus, it is completely unclear as to whether the manuscript at issue was ever produced to the Formaldehyde Council for review, or whether it has any bearing on this case. There is no indication that the production of the document is calculated to lead to the discovery of admissible evidence, and thus, there is no basis

to produce the manuscript to Plaintiff. *See Myers v. State Farm Fire & Cas. Co.*, 2009 WL 3353223, *3 (E.D.La. Oct. 16, 2009).

Additionally, Fleetwood and Gulf Stream Coach, Inc. point out that this manuscript is not Dr. Cole's to produce – he was a contributing author and therefore is in no position to give up another author's work. This type of situation is controlled by the Federal Rules, which state that this Honorable Court must limit the frequency or extent of discovery when the information can be obtained from a more convenient and less burdensome source. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). In this case, that source is the manuscript's lead author, who is essentially the owner of the document. Dr. Cole has undoubtedly given Plaintiff's counsel sufficient information to present her request of the lead author. At his deposition, Dr. Cole testified:

> Q. And who is the senior author?
> A. The senior author? You are asking me for the name of the senior author of the commentary, I want to be clear about that.
> Q. Yes. I thought you were going to move with short -- with a restricted number of words.
> A . His name is Dr. Jack Mandel.
> Q. And where does he work out of?
> A. He's the dean of the School of Public Health at the University of Toronto.

(Rec. Doc. 6319-3, p. 6—7).

Clearly, Dr. Cole has provided the information by which Plaintiff's counsel can appropriately obtain information concerning the manuscript. Again, Dr. Cole cannot produce a document that he does not own or control. Asking Dr. Cole, "the non-owner," to divulge his work on and/or contribution to the manuscript is no different than asking a contributing scientist to discuss his work on a product before it enters the marketplace when he is not the manufacturer of the product. It would be more proper, convenient, and less burdensome for the lead author to respond to Plaintiff's request. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). If Plaintiff seeks the manuscript from the proper party, the parties can sufficiently determine whether the document is

discoverable. Either Dr. Mandel can provide the manuscript, which will render the pending Motion moot on this point, or Dr. Mandel can oppose production at which point he will have an opportunity to protect his work product in the appropriate court setting.

Regardless, Fleetwood and Gulf Stream Coach, Inc. still assert that the subject manuscript is privileged under the scholars' privilege discussed above. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998); *Deitchman v. E.R. Squibb & Sons*, 740 F.2d 556, 560—61 (7th Cir. 1984). The subject document was a manuscript, not a finished publication. (Rec. Doc. 6319-3, p. 6). As such, it is the type of pre-publication document that is afforded protection under the privilege. Without that privilege, Dr. Cole would have no guarantees that he could protect the research and source materials he needs to present the proper contribution to the publication. *See Cusumano*, 162 F.3d at 714. Therefore, the privilege attaches to protect the manuscript at issue from production. Accordingly, pursuant to the Stipulated Protective Order, Plaintiff cannot use the manuscript at deposition or trial of this matter. This means that Dr. Cole is not obligated to answer the deposition questions posed to him regarding the manuscript at issue.

Together with Fleetwood's argument regarding Dr. Cole's task list, Fleetwood and Gulf Stream Coach, Inc., respectfully reiterate that both documents are privileged. This also means

that Dr. Cole did not and does not have to answer deposition questions about either document. Plaintiff's Motion to Compel should therefore be denied.

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS, PFISTER & WEINSTOCK**

s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495**
**JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON**
**Timothy D. Scandurro #18424**
**Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

**NELSON, MULLINS, RILEY & SCARBOROUGH, LLP**

s/Richard K. Hines, V
_____
**RICHARD K. HINES, V**
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000
richard.hines@nelsonmullins.com

and

**LEAKE & ANDERSSON, LLP**
**JERRY L. SAPORITO**
1100 Poydras Street, Suite 1700
New Orleans, LA 70163-1701
(504) 585-7500
jsaporito@leakeansersson.com
**Counsel for Defendant, Fleetwood Enterprises, Inc.**

## C E R T I F I C A T E

I hereby certify that on the 10th day of November, 2009, a copy of the foregoing Opposition to Plaintiff's Motion to Compel Production of Documents and Testimony, was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495