Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | Docket MDL 1873 "N" |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | New Orleans, Louisiana |
| | * | |
| THIS DOCUMENT IS RELATED TO: | * | September 24, 2009 |
| | * | |
| CHARLIE AGE, ET AL V | * | 8:30 A.M. |
| GULF STREAM COACH, INC., | * | |
| ET AL, DOCKET NO. 09-2892; | * | |
| ALANA ALEXANDER, INDIVIDUALLY | * | |
| AND ON BEHALF OF | * | |
| CHRISTOPHER COOPER | * | |

* * * * * * * * * * * * * * * *

DAY 9
JURY TRIAL PROCEEDINGS BEFORE THE
HONORABLE KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:        Gainsburgh, Benjamin, David,
                             Meunier & Warshauer
                           BY: GERALD E. MEUNIER, ESQ.
                           1100 Poydras Street
                           Suite 2800
                           New Orleans, Louisiana 70163


                           The Buzbee Law Firm
                           BY: ANTHONY G. BUZBEE, ESQ.
                           JP Morgan Chase Tower
                           600 Travis, Suite 7300
                           Houston, Texas  77002




JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT

```
10:54   1   received in evidence, regardless of who may have produced them.
10:54   2                 If the proof fails to establish any essential
10:54   3   part of the plaintiff's claim by a preponderance of the
10:54   4   evidence, you should find for the defendant as to that claim.
10:54   5                 To be clear:  Plaintiffs need to prove their
10:54   6   claims only by a preponderance of the evidence.  The plaintiffs
10:54   7   need not produce every possible witness, and they need not
10:54   8   prove their case beyond a reasonable doubt, as is necessary in
10:54   9   a criminal prosecution.  But speculation or mere possibility
10:54  10   and even unsupported probability is not sufficient to support a
10:54  11   judgment in their favor.
10:54  12                 The mere fact that an incident happens or an
10:54  13   injury occurs does not raise a presumption that any party,
10:54  14   person, or entity was at fault.
10:54  15                 Plaintiffs Alana Alexander and Christopher
10:54  16   Cooper claim that Gulf Stream Coach, Inc., or "Gulf Stream", is
10:55  17   liable for their damages as the manufacturer of the emergency
10:55  18   housing unit, which was sometimes referred to as an "EHU", that
10:55  19   they occupied.  Plaintiffs claim these damages under the
10:55  20   Louisiana Product Liability Act, which I will refer to
10:55  21   sometimes as the "LPLA".
10:55  22                 Specifically plaintiffs are not suing Fluor
10:55  23   Enterprises, Inc., or "Fluor" under the LPLA.
10:55  24                 The LPLA provides the exclusive remedy against a
10:55  25   manufacturer for injuries or damages caused by an unreasonably
```

```
10:55   1   dangerous product.  There are three separate theories of
10:55   2   liability under the LPLA that are applicable to this case:
10:55   3              First, liability based on unreasonably dangerous
10:55   4   construction or composition;
10:55   5              Second, liability based on unreasonably
10:55   6   dangerous design;
10:55   7              And third, liability based on inadequate warning
10:55   8   rendering the product unreasonably dangerous.
10:55   9              Let's talk about liability based on unreasonably
10:56  10   dangerous construction or composition.
10:56  11              In this case the plaintiffs claim that the
10:56  12   product manufactured by Gulf Stream was unreasonably dangerous
10:56  13   in construction or composition; and, in order to be successful,
10:56  14   plaintiffs must prove by a preponderance of the evidence that:
10:56  15              First, the product in question deviated in a
10:56  16   material way from the manufacturer's specifications or
10:56  17   performance standards for the product, or from otherwise
10:56  18   identical products manufactured by Gulf Stream;
10:56  19              Second, the injury which each plaintiff suffered
10:56  20   was proximately caused by a characteristic of the product which
10:56  21   made it unreasonably dangerous and existed at the time the
10:56  22   product left Gulf Stream's control;
10:56  23              Third, the injury which the plaintiffs suffered
10:56  24   arose from a reasonably anticipated use of the product by
10:56  25   plaintiffs or some other person;
```

Page 96

```
10:56  1              And four, there was actual damage to the person
10:56  2    of each plaintiff.
10:57  3              Secondly, let's talk about liability based on
10:57  4    unreasonably dangerous design.
10:57  5              In this case plaintiffs claim that the product
10:57  6    manufactured by Gulf Stream was unreasonably dangerous in its
10:57  7    design.  In order to be successful, plaintiffs must prove by a
10:57  8    preponderance of the evidence that:
10:57  9              First, there was an alternative design for the
10:57  10   product that was capable of preventing the injuries, and the
10:57  11   likelihood that the product's design would cause the injuries
10:57  12   and the seriousness of that injury outweighed the burden on the
10:57  13   defendant of using that alternative design and the adverse
10:57  14   effect of using that alternative design on the utility of the
10:57  15   product;
10:57  16             Second, the injury which each plaintiff suffered
10:57  17   was proximately caused by a characteristic of the product which
10:57  18   made it unreasonably dangerous and existed at the time the
10:57  19   product left the manufacturer's control or resulted from a
10:57  20   reasonably anticipated alteration of the product later;
10:57  21             Third, the injuries which plaintiff suffered
10:57  22   arose from a reasonably anticipated use of the product by the
10:57  23   plaintiffs or some other person;
10:58  24             And fourth, that there was actual damage to the
10:58  25   person of each plaintiff.
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

```
10:58  1              If you find that Gulf Stream has used reasonable
10:58  2  care to provide an adequate warning to the users of the
10:58  3  product, then you must consider the effect of that warning in
10:58  4  deciding the likelihood that the design of the product would
10:58  5  cause plaintiffs' injuries.
10:58  6              Third, let's talk about liability based on
10:58  7  inadequate warning.
10:58  8              In this case the plaintiffs claim that the
10:58  9  product manufactured by Gulf Stream was unreasonably dangerous
10:58 10  because of an inadequate warning about its potential risks.  In
10:58 11  order to be successful, plaintiffs must prove each of the four
10:58 12  elements by a preponderance of the evidence:
10:58 13              First, at the time the product left Gulf
10:58 14  Stream's control, the product had a characteristic that might
10:58 15  cause damage and Gulf Stream failed to use reasonable care to
10:58 16  provide an adequate warning of that characteristic and its
10:58 17  danger to the users of the product;
10:58 18              Second, the injury with which each plaintiff
10:58 19  suffered was proximately caused by a characteristic of the
10:58 20  product which made it unreasonably dangerous and existed at the
10:59 21  time the product left Gulf Stream's control or resulted from a
10:59 22  reasonably anticipated alteration of the product later;
10:59 23              Third, the injury which plaintiff suffered arose
10:59 24  from a reasonably anticipated use of the product by the
10:59 25  plaintiffs, or some other person;
```

```
10:59   1              And four, there was actual damage to the person
10:59   2   of each plaintiff.
10:59   3              Once a plaintiff proves that the lack of
10:59   4   adequate warning rendered the product unreasonably dangerous,
10:59   5   there is a presumption that had the manufacturer provided an
10:59   6   adequate warning, the user would have both read and heeded the
10:59   7   warning.  This presumption may be rebutted by competent
10:59   8   evidence.
10:59   9              The LPLA provides that specific definitions for
10:59  10   certain terms that are used in these instructions, which I will
10:59  11   explain to you now:
10:59  12              When I use the term "reasonably anticipated
10:59  13   use," I mean use of a product that the manufacturer should
10:59  14   reasonably expect of an ordinary person in similar
11:00  15   circumstances.
11:00  16              When I use the term "adequate warning," I mean a
11:00  17   warning or instruction that would lead an ordinary user of a
11:00  18   product to contemplate the danger in using the product, and
11:00  19   then either to decline to use it or, if possible, to use it in
11:00  20   such a manner as to avoid the injury for which the claim is
11:00  21   made.
11:00  22              When I use the term "reasonably anticipated
11:00  23   alteration" of the product at a later time, I mean a change in
11:00  24   the product that the manufacturer should reasonably expect to
11:00  25   be made by an ordinary person in similar circumstances, or a
```

```
11:00  1   change arising from ordinary wear and tear.
11:00  2                I do not mean by that term:
11:00  3                One, failure of a person other than the
11:00  4   manufacturer reasonably to pass on a warning about the product
11:00  5   provided by the manufacturer to that person rather than to the
11:00  6   actual user;
11:00  7                Or two, changes to the product or its operation
11:00  8   because it does not receive reasonable care and maintenance.
11:00  9                These are not reasonably anticipated actions for
11:00  10  which the defendant may be held responsible based on inadequate
11:01  11  warning.
11:01  12               There are certain circumstances, however, under
11:01  13  which a manufacturer does not have to provide an adequate
11:01  14  warning as described above.  A manufacturer does not have to
11:01  15  provide such a warning when:
11:01  16               One, the danger of the product is not beyond
11:01  17  that which would be contemplated by the ordinary user, with the
11:01  18  ordinary knowledge common to the community as to the product's
11:01  19  characteristics;
11:01  20               Or two, the user already knows or reasonably
11:01  21  should be expected to know of the characteristic of the product
11:01  22  that may cause injury and the danger of that characteristic.
11:01  23               A manufacturer is not liable for the
11:01  24  unreasonable danger of a product due to inadequate warning if
11:01  25  he proves that at the time the product left its control, it did
```


```
11:01   1    not know, and in light of the reasonably available scientific
11:01   2    and technical knowledge then existing, could not have known of
11:01   3    the characteristic of the product or its danger that caused the
11:01   4    injury.
11:02   5                   A manufacturer who learns of a characteristic of
11:02   6    a product and its danger after it has left its control that may
11:02   7    cause injury, or who would have learned about it had it acted
11:02   8    in a reasonably prudent fashion, is liable for injury caused by
11:02   9    its subsequent failure to use reasonable care to provide an
11:02  10    adequate warning of such characteristic and its danger of users
11:02  11    of the product.
11:02  12                   A manufacturer cannot be expected to design
11:02  13    products with component parts which will never wear out,
11:02  14    regardless of the nature of use or maintenance of the product.
11:02  15    A manufacturer is entitled to anticipate that a consumer
11:02  16    purchasing its product will use reasonable care in maintaining
11:02  17    it.
11:02  18                   A manufacturer is not liable for the
11:02  19    unreasonable danger of a product due to its design if it proves
11:02  20    that at the time the product left its control:
11:02  21                   One, it did not know, and in light of the
11:02  22    reasonably available scientific and technical knowledge then
11:02  23    existing, could not have known of the design characteristics or
11:03  24    its danger that caused the injury or of the alternative design
11:03  25    identified by the plaintiffs;
```

```
11:03  1              Or two, the alternative design identified by the
11:03  2    plaintiffs was not feasible, in light of the reasonably
11:03  3    available scientific and technical knowledge, or the economic
11:03  4    practicality, then existing.
11:03  5              In this case Gulf Stream has asserted the
11:03  6    sophisticated purchaser/user defense in relation to the LPLA
11:03  7    claims asserted against it by the plaintiffs.
11:03  8              When a manufacturer or distributor sells a
11:03  9    product to a sophisticated purchaser and that purchaser then
11:03 10    supplies the product for use, the manufacturer has no legal
11:03 11    duty to provide any warnings to the user concerning possible
11:03 12    hazards associated with the product's use.
11:03 13              A sophisticated purchaser is one who by
11:03 14    experience and expertise is aware of the possible hazards
11:03 15    associated with the use of the product and who has an
11:03 16    obligation to inform end users of such potential health
11:03 17    hazards.
11:03 18              Therefore, if you find that:
11:04 19              One, Gulf Stream is a manufacturer, which is
11:04 20    undisputed;
11:04 21              And two, the United States through FEMA is a
11:04 22    sophisticated purchaser of this Gulf Stream trailer, then you
11:04 23    must return your verdict in favor of the Gulf Stream on the
11:04 24    LPLA claims based on inadequate warnings.
11:04 25              Plaintiffs have asserted a negligence claim
```

| | | |
|---|---|---|
| 11:12 | 1 | Gulf Stream has the burden of proving that it is a government |
| 11:12 | 2 | contractor. |
| 11:12 | 3 | In this regard, I instruct you that Gulf Stream |
| 11:12 | 4 | cannot be liable under the LPLA based on defective design |
| 11:12 | 5 | where: |
| 11:12 | 6 | First, the federal government approves |
| 11:12 | 7 | reasonably precise specifications; |
| 11:12 | 8 | Second, Gulf Stream's product conforms to those |
| 11:12 | 9 | specifications; |
| 11:12 | 10 | And third, Gulf Stream's product warns the |
| 11:12 | 11 | government at the time of the first sale of the product -- I'm |
| 11:12 | 12 | sorry -- at the time of the first sale of the product of |
| 11:12 | 13 | product dangers that were known to Gulf Stream but not known to |
| 11:12 | 14 | the government. |
| 11:12 | 15 | The government need not prepare the |
| 11:12 | 16 | specifications to be considered to have them -- to have |
| 11:12 | 17 | approved them, as long as the government provides a substantive |
| 11:12 | 18 | review or evaluation of Gulf Stream's plans.  Evidence of |
| 11:13 | 19 | continuous back and forth between Gulf Stream and the |
| 11:13 | 20 | government, such as proof that Gulf Stream and the government |
| 11:13 | 21 | worked closely together in the development of a product from |
| 11:13 | 22 | its planning stages through its full production, generally is |
| 11:13 | 23 | sufficient.  The specifications need not address the specific |
| 11:13 | 24 | defect alleged.  The government need only evaluate the design |
| 11:13 | 25 | feature in question. |

11:32  1   charge, together with your written answers to the questions.
11:32  2   Unless I direct you otherwise, do not reveal your answers until
11:32  3   such time as you are discharged. You must never disclose to
11:32  4   anyone, not even to me, your numerical division on any
11:32  5   particular question.
11:32  6              I indicated that we had prepared a jury verdict
11:32  7   form. I will now read the form to you. You've seen portions
11:32  8   of it during closing arguments. I'm going to read this to you.
11:32  9   At times when I read you the instructions, after each question,
11:32 10   it may sound confusing, but if you concentrate on answering
11:32 11   each question and moving to the next question pursuant to the
11:32 12   instructions, you will see that it makes sense. But I'm going
11:32 13   to go ahead and read to you the jury verdict form.
11:32 14              It says at the top the in re: FEMA Trailer
11:33 15   Formaldehyde Product Liability Litigation, MDL-1873, Section
11:33 16   N-5. This document is related to Age, et. al. v. Gulf Stream
11:33 17   Coach, Inc., et al, No. 09-2892. That's the caption on the
11:33 18   case as it's been docketed here in the court.
11:33 19              Jury verdict form.
11:33 20              A.  Gulf Stream Coach, Inc., or Gulf Stream.
11:33 21              1.  Do you find that the Gulf Stream trailer
11:33 22   occupied by Alana Alexander and Christopher Cooper was
11:33 23   unreasonably dangerous in its construction or composition?
11:33 24              Yes or no. Proceed to Question 2.
11:33 25              2.  Do you find that the Gulf Stream trailer

                JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
                          UNITED STATES DISTRICT COURT
                          EASTERN DISTRICT OF LOUISIANA

```
11:33  1   occupied by Alexander and Cooper was unreasonably dangerous in
11:33  2   its design?
11:33  3                   Yes or no.  Proceed to Question 3.
11:33  4                   3.  Do you find that the Gulf Stream trailer
11:33  5   occupied by Alexander and Cooper was unreasonably dangerous
11:33  6   because of an adequate warning -- because an adequate warning
11:33  7   about the trailer was not provided?
11:33  8                   Yes or no.  If you answered any of the Question
11:34  9   Nos. 1, 2 or 3 "yes," proceed to Question 4.  If you answered
11:34 10   each and all of Question Nos. 1, 2 and 3 "no," proceed to Part
11:34 11   B, question 7.
11:34 12                   Question 4.  Do you find that any unreasonably
11:34 13   dangerous condition of the trailer existed at the time it left
11:34 14   Gulf Stream's control?
11:34 15                   Yes or no.  If you answered Question No. 4
11:34 16   "yes," proceed to Question 5.  If you answered Question No. 4
11:34 17   "no," proceed to Part B, Question 7.
11:34 18                   5.  Do you find that Christopher Cooper
11:34 19   sustained injury to which Gulf Stream substantially contributed
11:34 20   as a result of any unreasonably dangerous condition of the
11:34 21   trailer?
11:34 22                   Yes or no.  Proceed to Question 6.
11:34 23                   6.  Do you find that Alana Alexander sustained
11:34 24   injury to which Gulf Stream substantially contributed as a
11:34 25   result of any unreasonably dangerous condition of the trailer?
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

```
11:34  1                    Yes or no.  Proceed to Question 7.
11:34  2                    B.  Fluor Enterprises, Inc., or Fluor.
11:34  3                    7.  Do you find that Fluor was negligent in
11:35  4   regard to its actions or inactions concerning the hauling
11:35  5   and/or installation of the trailer occupied by Alexander and
11:35  6   Cooper?
11:35  7                    Yes or no.  If you answered Question No. 7
11:35  8   "yes," proceed to Question 8.  If you answered Question No. 7
11:35  9   "no," proceed to Part C, Question 10 without regard to the
11:35 10   parenthetical instructions between C and Question 10.
11:35 11                    8.  Do you find that Christopher Cooper
11:35 12   sustained injury to which Fluor substantially contributed as a
11:35 13   result of the negligence of Fluor in its actions or inactions
11:35 14   concerning the hauling and/or installation of the trailer
11:35 15   occupied by Alexander and Cooper?
11:35 16                    Yes or no.  Proceed to Question 9.
11:35 17                    9.  Do you find that Alana Alexander sustained
11:35 18   injury as to which Fluor substantially contributed as a result
11:35 19   of the negligence of Fluor in its actions or inactions
11:35 20   concerning the hauling and/or installing of the trailer
11:35 21   occupied by Alexander and Cooper?
11:35 22                    Yes or no.  Proceed to Part C, Question No. 10.
11:36 23                    C.  Allocation of fault/damages, and there's an
11:36 24   instruction.
11:36 25                    If you answered each and all of Question Nos. 5,
```

```
11:36  1   6, 8 and 9 "no," do not answer anymore questions.  Please sign
11:36  2   and date this jury verdict form and advise the court security
11:36  3   officer that you have reached a verdict.  Otherwise, proceed to
11:36  4   Question No. 10 if you answered Question Nos. 5 or 8 "yes," if
11:36  5   you answered both Question 5 and 8 "no," proceed to
11:36  6   Question 11.
11:36  7               10.  For Christopher Cooper, please allocate on
11:36  8   a percentage basis the degree of fault, if any, which you
11:36  9   attribute to each of the following parties and non-parties.
11:36 10   Please be careful to enter a "zero" or leave blank where you
11:36 11   have found no fault on the part of a party in your previous
11:36 12   answers.  All numerical percentages you enter in this question
11:36 13   should add up to a total of 100 percent.
11:37 14               Defendant Gulf Stream Coach, Inc., and there's a
11:37 15   blank with a percentage under it and there's an additional
11:37 16   instruction.
11:37 17               Defendant Fluor Enterprises, Inc., and there's a
11:37 18   blank which a percentage.
11:37 19               Plaintiff Alana Alexander, and there's a blank
11:37 20   with a percentage.
11:37 21               United States or FEMA, a blank with a
11:37 22   percentage.
11:37 23               And then person or entity other than defendants,
11:37 24   FEMA, or Alexander, which means maintenance contractor and/or
11:37 25   installer subcontractors only, and there's a blank with a
```

```
11:37  1   percentage.  And underneath that is the total of 100 percent.
11:37  2                   Proceed to Question No. 11 if you answered
11:37  3   Question No. 6 or 9 "yes".  If you answered both Questions 6
11:37  4   and 9 "no," proceed to Question 12 only if you answered
11:37  5   Question No. 10.  Otherwise, please sign and date this jury
11:37  6   verdict form and advise the court security officer that you've
11:37  7   reached a verdict.
11:37  8                   11.  For Alana Alexander, please allocate on a
11:37  9   percentage basis of degree of fault, if any, which you
11:37 10   attribute to each of the following parties and non-parties.
11:37 11   Please be careful to enter a "zero" or leave blank where you
11:38 12   have found no fault on the part of a party in your previous
11:38 13   answers.
11:38 14                   All numerical percentages you enter in this
11:38 15   question should add up to a total of 100 percent.  And then
11:38 16   there are the same identifications with blanks for the
11:38 17   percentage.
11:38 18                   Defendant Gulf Stream Coach, Inc., with a blank
11:38 19   and a percentage.
11:38 20                   Defendant Fluor Enterprises with a blank and a
11:38 21   percentage.
11:38 22                   Plaintiff Alana Alexander with a blank and a
11:38 23   percentage.
11:38 24                   The United States or FEMA, with a blank with a
11:38 25   percentage.
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Page 128

```
11:38  1              And a person or entity other than the
11:38  2   defendants, FEMA, or Alexander, namely the maintenance
11:38  3   contractor and/or installer subcontractors only, and there is a
11:38  4   blank with a percentage and a 100 percent total.
11:38  5              Proceed to Question 12.
11:38  6              12.  What amount of damages, if any, do you find
11:38  7   should be awarded with respect to each of the following claims:
11:38  8              Past, present and future physical pain and
11:38  9   suffering of Christopher Cooper and there's a blank with a
11:38 10   dollar sign.
11:38 11              Past, present and future mental anguish and
11:39 12   emotional distress of Christopher Cooper, and there's a blank
11:39 13   with a dollar sign.
11:39 14              Past, present and future medical expenses,
11:39 15   including medical monitoring, for Christopher Cooper, and
11:39 16   there's a blank with a dollar sign.
11:39 17              Loss of impairment of life's pleasures for
11:39 18   Christopher Cooper, and a there's a blank with a dollar sign.
11:39 19              Past, present and future mental and emotional
11:39 20   distress of Alana Alexander, and there's a blank with a dollar
11:39 21   sign.
11:39 22              Loss of consortium for Alana Alexander, and
11:39 23   there's a blank with a dollar sign.
11:39 24              There is a line for the date and a signature
11:39 25   line for the foreperson of the jury.
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

```
11:39  1              If you want to communicate with me at any time,
11:39  2   please give a written message to the -- well, it says "bailiff"
11:39  3   here, which is an old term. It means CSO or the marshal, the
11:39  4   gentlemen who have been assisting you during the course of the
11:39  5   trial, who will then bring that note to me. I will then
11:39  6   respond as promptly as possible, either in writing or by
11:39  7   meeting with you here in the courtroom. I will always first
11:40  8   show the attorneys your question and my response before I
11:40  9   answer your question.
11:40 10              After you have reached a verdict, you are not
11:40 11   required to talk with anyone about the case unless I order you
11:40 12   to do so, and that would be under extraordinary circumstances
11:40 13   only.
11:40 14              I might also add that any notes that you have
11:40 15   taken during the course of this trial will be destroyed at the
11:40 16   conclusion of the trial and will not be made available to
11:40 17   anyone.
11:40 18              You may now retire to the jury room to conduct
11:40 19   you deliberations.
11:40 20              THE DEPUTY CLERK: All rise.
11:40 21              (WHEREUPON, the jury exited the courtroom.)
11:41 22              THE COURT: You maybe seated.
11:41 23              First thing's first. Since we're going to be
11:41 24   sending into the jury room the instructions and the verdict
11:41 25   form, we want to make sure that we've got some corrections and
```