Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
IN RE:  FEMA TRAILER          *   Docket MDL 1873 "N"
FORMALDEHYDE PRODUCTS         *
LIABILITY LITIGATION          *   New Orleans, Louisiana
                              *
THIS DOCUMENT IS RELATED TO:  *   September 24, 2009
                              *
CHARLIE AGE, ET AL V          *   8:30 A.M.
GULF STREAM COACH, INC.,      *
ET AL, DOCKET NO. 09-2892;    *
ALANA ALEXANDER, INDIVIDUALLY *
AND ON BEHALF OF              *
CHRISTOPHER COOPER            *
* * * * * * * * * * * * * * * *
```

DAY 9
JURY TRIAL PROCEEDINGS BEFORE THE
HONORABLE KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE

APPEARANCES:


For the Plaintiffs:           Gainsburgh, Benjamin, David,
                                 Meunier & Warshauer
                              BY:  GERALD E. MEUNIER, ESQ.
                              1100 Poydras Street
                              Suite 2800
                              New Orleans, Louisiana 70163


                              The Buzbee Law Firm
                              BY:  ANTHONY G. BUZBEE, ESQ.
                              JP Morgan Chase Tower
                              600 Travis, Suite 7300
                              Houston, Texas  77002


JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

10:54  1   received in evidence, regardless of who may have produced them.

10:54  2              If the proof fails to establish any essential

10:54  3   part of the plaintiff's claim by a preponderance of the

10:54  4   evidence, you should find for the defendant as to that claim.

10:54  5              To be clear:  Plaintiffs need to prove their

10:54  6   claims only by a preponderance of the evidence.  The plaintiffs

10:54  7   need not produce every possible witness, and they need not

10:54  8   prove their case beyond a reasonable doubt, as is necessary in

10:54  9   a criminal prosecution.  But speculation or mere possibility

10:54  10  and even unsupported probability is not sufficient to support a

10:54  11  judgment in their favor.

10:54  12             The mere fact that an incident happens or an

10:54  13  injury occurs does not raise a presumption that any party,

10:54  14  person, or entity was at fault.

10:54  15             Plaintiffs Alana Alexander and Christopher

10:54  16  Cooper claim that Gulf Stream Coach, Inc., or "Gulf Stream", is

10:55  17  liable for their damages as the manufacturer of the emergency

10:55  18  housing unit, which was sometimes referred to as an "EHU", that

10:55  19  they occupied.  Plaintiffs claim these damages under the

10:55  20  Louisiana Product Liability Act, which I will refer to

10:55  21  sometimes as the "LPLA".

10:55  22             Specifically plaintiffs are not suing Fluor

10:55  23  Enterprises, Inc., or "Fluor" under the LPLA.

10:55  24             The LPLA provides the exclusive remedy against a

10:55  25  manufacturer for injuries or damages caused by an unreasonably

10:55   1    dangerous product.  There are three separate theories of

10:55   2    liability under the LPLA that are applicable to this case:

10:55   3                       First, liability based on unreasonably dangerous

10:55   4    construction or composition;

10:55   5                       Second, liability based on unreasonably

10:55   6    dangerous design;

10:55   7                       And third, liability based on inadequate warning

10:55   8    rendering the product unreasonably dangerous.

10:55   9                       Let's talk about liability based on unreasonably

10:56   10   dangerous construction or composition.

10:56   11                      In this case the plaintiffs claim that the

10:56   12   product manufactured by Gulf Stream was unreasonably dangerous

10:56   13   in construction or composition; and, in order to be successful,

10:56   14   plaintiffs must prove by a preponderance of the evidence that:

10:56   15                      First, the product in question deviated in a

10:56   16   material way from the manufacturer's specifications or

10:56   17   performance standards for the product, or from otherwise

10:56   18   identical products manufactured by Gulf Stream;

10:56   19                      Second, the injury which each plaintiff suffered

10:56   20   was proximately caused by a characteristic of the product which

10:56   21   made it unreasonably dangerous and existed at the time the

10:56   22   product left Gulf Stream's control;

10:56   23                      Third, the injury which the plaintiffs suffered

10:56   24   arose from a reasonably anticipated use of the product by

10:56   25   plaintiffs or some other person;

Page 96

10:56 1              And four, there was actual damage to the person

10:56 2    of each plaintiff.

10:57 3              Secondly, let's talk about liability based on

10:57 4    unreasonably dangerous design.

10:57 5              In this case plaintiffs claim that the product

10:57 6    manufactured by Gulf Stream was unreasonably dangerous in its

10:57 7    design.  In order to be successful, plaintiffs must prove by a

10:57 8    preponderance of the evidence that:

10:57 9              First, there was an alternative design for the

10:57 10   product that was capable of preventing the injuries, and the

10:57 11   likelihood that the product's design would cause the injuries

10:57 12   and the seriousness of that injury outweighed the burden on the

10:57 13   defendant of using that alternative design and the adverse

10:57 14   effect of using that alternative design on the utility of the

10:57 15   product;

10:57 16             Second, the injury which each plaintiff suffered

10:57 17   was proximately caused by a characteristic of the product which

10:57 18   made it unreasonably dangerous and existed at the time the

10:57 19   product left the manufacturer's control or resulted from a

10:57 20   reasonably anticipated alteration of the product later;

10:57 21             Third, the injuries which plaintiff suffered

10:57 22   arose from a reasonably anticipated use of the product by the

10:57 23   plaintiffs or some other person;

10:58 24             And fourth, that there was actual damage to the

10:58 25   person of each plaintiff.

10:58 1     If you find that Gulf Stream has used reasonable

10:58 2 care to provide an adequate warning to the users of the

10:58 3 product, then you must consider the effect of that warning in

10:58 4 deciding the likelihood that the design of the product would

10:58 5 cause plaintiffs' injuries.

10:58 6     Third, let's talk about liability based on

10:58 7 inadequate warning.

10:58 8     In this case the plaintiffs claim that the

10:58 9 product manufactured by Gulf Stream was unreasonably dangerous

10:58 10 because of an inadequate warning about its potential risks.  In

10:58 11 order to be successful, plaintiffs must prove each of the four

10:58 12 elements by a preponderance of the evidence:

10:58 13     First, at the time the product left Gulf

10:58 14 Stream's control, the product had a characteristic that might

10:58 15 cause damage and Gulf Stream failed to use reasonable care to

10:58 16 provide an adequate warning of that characteristic and its

10:58 17 danger to the users of the product;

10:58 18     Second, the injury with which each plaintiff

10:58 19 suffered was proximately caused by a characteristic of the

10:58 20 product which made it unreasonably dangerous and existed at the

10:59 21 time the product left Gulf Stream's control or resulted from a

10:59 22 reasonably anticipated alteration of the product later;

10:59 23     Third, the injury which plaintiff suffered arose

10:59 24 from a reasonably anticipated use of the product by the

10:59 25 plaintiffs, or some other person;

Page 98

10:59 1          And four, there was actual damage to the person

10:59 2   of each plaintiff.

10:59 3          Once a plaintiff proves that the lack of

10:59 4   adequate warning rendered the product unreasonably dangerous,

10:59 5   there is a presumption that had the manufacturer provided an

10:59 6   adequate warning, the user would have both read and heeded the

10:59 7   warning.  This presumption may be rebutted by competent

10:59 8   evidence.

10:59 9          The LPLA provides that specific definitions for

10:59 10  certain terms that are used in these instructions, which I will

10:59 11  explain to you now:

10:59 12         When I use the term "reasonably anticipated

10:59 13  use," I mean use of a product that the manufacturer should

10:59 14  reasonably expect of an ordinary person in similar

11:00 15  circumstances.

11:00 16         When I use the term "adequate warning," I mean a

11:00 17  warning or instruction that would lead an ordinary user of a

11:00 18  product to contemplate the danger in using the product, and

11:00 19  then either to decline to use it or, if possible, to use it in

11:00 20  such a manner as to avoid the injury for which the claim is

11:00 21  made.

11:00 22         When I use the term "reasonably anticipated

11:00 23  alteration" of the product at a later time, I mean a change in

11:00 24  the product that the manufacturer should reasonably expect to

11:00 25  be made by an ordinary person in similar circumstances, or a

Page 99

11:00  1   change arising from ordinary wear and tear.

11:00  2                I do not mean by that term:

11:00  3                One, failure of a person other than the

11:00  4   manufacturer reasonably to pass on a warning about the product

11:00  5   provided by the manufacturer to that person rather than to the

11:00  6   actual user;

11:00  7                Or two, changes to the product or its operation

11:00  8   because it does not receive reasonable care and maintenance.

11:00  9                These are not reasonably anticipated actions for

11:00 10   which the defendant may be held responsible based on inadequate

11:01 11   warning.

11:01 12                There are certain circumstances, however, under

11:01 13   which a manufacturer does not have to provide an adequate

11:01 14   warning as described above.  A manufacturer does not have to

11:01 15   provide such a warning when:

11:01 16                One, the danger of the product is not beyond

11:01 17   that which would be contemplated by the ordinary user, with the

11:01 18   ordinary knowledge common to the community as to the product's

11:01 19   characteristics;

11:01 20                Or two, the user already knows or reasonably

11:01 21   should be expected to know of the characteristic of the product

11:01 22   that may cause injury and the danger of that characteristic.

11:01 23                A manufacturer is not liable for the

11:01 24   unreasonable danger of a product due to inadequate warning if

11:01 25   he proves that at the time the product left its control, it did

11:01 1    not know, and in light of the reasonably available scientific

11:01 2    and technical knowledge then existing, could not have known of

11:01 3    the characteristic of the product or its danger that caused the

11:01 4    injury.

11:02 5            A manufacturer who learns of a characteristic of

11:02 6    a product and its danger after it has left its control that may

11:02 7    cause injury, or who would have learned about it had it acted

11:02 8    in a reasonably prudent fashion, is liable for injury caused by

11:02 9    its subsequent failure to use reasonable care to provide an

11:02 10   adequate warning of such characteristic and its danger of users

11:02 11   of the product.

11:02 12           A manufacturer cannot be expected to design

11:02 13   products with component parts which will never wear out,

11:02 14   regardless of the nature of use or maintenance of the product.

11:02 15   A manufacturer is entitled to anticipate that a consumer

11:02 16   purchasing its product will use reasonable care in maintaining

11:02 17   it.

11:02 18           A manufacturer is not liable for the

11:02 19   unreasonable danger of a product due to its design if it proves

11:02 20   that at the time the product left its control:

11:02 21           One, it did not know, and in light of the

11:02 22   reasonably available scientific and technical knowledge then

11:02 23   existing, could not have known of the design characteristics or

11:03 24   its danger that caused the injury or of the alternative design

11:03 25   identified by the plaintiffs;

| | | |
|---|---|---|
| 11:03 | 1 | Or two, the alternative design identified by the |
| 11:03 | 2 | plaintiffs was not feasible, in light of the reasonably |
| 11:03 | 3 | available scientific and technical knowledge, or the economic |
| 11:03 | 4 | practicality, then existing. |
| 11:03 | 5 | In this case Gulf Stream has asserted the |
| 11:03 | 6 | sophisticated purchaser/user defense in relation to the LPLA |
| 11:03 | 7 | claims asserted against it by the plaintiffs. |
| 11:03 | 8 | When a manufacturer or distributor sells a |
| 11:03 | 9 | product to a sophisticated purchaser and that purchaser then |
| 11:03 | 10 | supplies the product for use, the manufacturer has no legal |
| 11:03 | 11 | duty to provide any warnings to the user concerning possible |
| 11:03 | 12 | hazards associated with the product's use. |
| 11:03 | 13 | A sophisticated purchaser is one who by |
| 11:03 | 14 | experience and expertise is aware of the possible hazards |
| 11:03 | 15 | associated with the use of the product and who has an |
| 11:03 | 16 | obligation to inform end users of such potential health |
| 11:03 | 17 | hazards. |
| 11:03 | 18 | Therefore, if you find that: |
| 11:04 | 19 | One, Gulf Stream is a manufacturer, which is |
| 11:04 | 20 | undisputed; |
| 11:04 | 21 | And two, the United States through FEMA is a |
| 11:04 | 22 | sophisticated purchaser of this Gulf Stream trailer, then you |
| 11:04 | 23 | must return your verdict in favor of the Gulf Stream on the |
| 11:04 | 24 | LPLA claims based on inadequate warnings. |
| 11:04 | 25 | Plaintiffs have asserted a negligence claim |

11:12  1    Gulf Stream has the burden of proving that it is a government

11:12  2    contractor.

11:12  3              In this regard, I instruct you that Gulf Stream

11:12  4    cannot be liable under the LPLA based on defective design

11:12  5    where:

11:12  6              First, the federal government approves

11:12  7    reasonably precise specifications;

11:12  8              Second, Gulf Stream's product conforms to those

11:12  9    specifications;

11:12 10              And third, Gulf Stream's product warns the

11:12 11    government at the time of the first sale of the product -- I'm

11:12 12    sorry -- at the time of the first sale of the product of

11:12 13    product dangers that were known to Gulf Stream but not known to

11:12 14    the government.

11:12 15              The government need not prepare the

11:12 16    specifications to be considered to have them -- to have

11:12 17    approved them, as long as the government provides a substantive

11:12 18    review or evaluation of Gulf Stream's plans.  Evidence of

11:13 19    continuous back and forth between Gulf Stream and the

11:13 20    government, such as proof that Gulf Stream and the government

11:13 21    worked closely together in the development of a product from

11:13 22    its planning stages through its full production, generally is

11:13 23    sufficient.  The specifications need not address the specific

11:13 24    defect alleged.  The government need only evaluate the design

11:13 25    feature in question.

| | | |
|---|---|---|
| 11:32 | 1 | charge, together with your written answers to the questions. |
| 11:32 | 2 | Unless I direct you otherwise, do not reveal your answers until |
| 11:32 | 3 | such time as you are discharged.  You must never disclose to |
| 11:32 | 4 | anyone, not even to me, your numerical division on any |
| 11:32 | 5 | particular question. |
| 11:32 | 6 |                I indicated that we had prepared a jury verdict |
| 11:32 | 7 | form.  I will now read the form to you.  You've seen portions |
| 11:32 | 8 | of it during closing arguments.  I'm going to read this to you. |
| 11:32 | 9 | At times when I read you the instructions, after each question, |
| 11:32 | 10 | it may sound confusing, but if you concentrate on answering |
| 11:32 | 11 | each question and moving to the next question pursuant to the |
| 11:32 | 12 | instructions, you will see that it makes sense.  But I'm going |
| 11:32 | 13 | to go ahead and read to you the jury verdict form. |
| 11:32 | 14 |                It says at the top the in re:  FEMA Trailer |
| 11:33 | 15 | Formaldehyde Product Liability Litigation, MDL-1873, Section |
| 11:33 | 16 | N-5.  This document is related to Age, et. al. v. Gulf Stream |
| 11:33 | 17 | Coach, Inc., et al, No. 09-2892.  That's the caption on the |
| 11:33 | 18 | case as it's been docketed here in the court. |
| 11:33 | 19 |                Jury verdict form. |
| 11:33 | 20 |                A.  Gulf Stream Coach, Inc., or Gulf Stream. |
| 11:33 | 21 |                1.  Do you find that the Gulf Stream trailer |
| 11:33 | 22 | occupied by Alana Alexander and Christopher Cooper was |
| 11:33 | 23 | unreasonably dangerous in its construction or composition? |
| 11:33 | 24 |                Yes or no.  Proceed to Question 2. |
| 11:33 | 25 |                2.  Do you find that the Gulf Stream trailer |

```
11:33   1    occupied by Alexander and Cooper was unreasonably dangerous in
11:33   2    its design?
11:33   3                Yes or no.  Proceed to Question 3.
11:33   4                3.  Do you find that the Gulf Stream trailer
11:33   5    occupied by Alexander and Cooper was unreasonably dangerous
11:33   6    because of an adequate warning -- because an adequate warning
11:33   7    about the trailer was not provided?
11:33   8                Yes or no.  If you answered any of the Question
11:34   9    Nos. 1, 2 or 3 "yes," proceed to Question 4.  If you answered
11:34  10    each and all of Question Nos. 1, 2 and 3 "no," proceed to Part
11:34  11    B, question 7.
11:34  12                Question 4.  Do you find that any unreasonably
11:34  13    dangerous condition of the trailer existed at the time it left
11:34  14    Gulf Stream's control?
11:34  15                Yes or no.  If you answered Question No. 4
11:34  16    "yes," proceed to Question 5.  If you answered Question No. 4
11:34  17    "no," proceed to Part B, Question 7.
11:34  18                5.  Do you find that Christopher Cooper
11:34  19    sustained injury to which Gulf Stream substantially contributed
11:34  20    as a result of any unreasonably dangerous condition of the
11:34  21    trailer?
11:34  22                Yes or no.  Proceed to Question 6.
11:34  23                6.  Do you find that Alana Alexander sustained
11:34  24    injury to which Gulf Stream substantially contributed as a
11:34  25    result of any unreasonably dangerous condition of the trailer?
```

Page 125

11:34  1                 Yes or no.  Proceed to Question 7.

11:34  2               B.  Fluor Enterprises, Inc., or Fluor.

11:34  3               7.  Do you find that Fluor was negligent in

11:35  4  regard to its actions or inactions concerning the hauling

11:35  5  and/or installation of the trailer occupied by Alexander and

11:35  6  Cooper?

11:35  7                Yes or no.  If you answered Question No. 7

11:35  8  "yes," proceed to Question 8.  If you answered Question No. 7

11:35  9  "no," proceed to Part C, Question 10 without regard to the

11:35  10  parenthetical instructions between C and Question 10.

11:35  11              8.  Do you find that Christopher Cooper

11:35  12  sustained injury to which Fluor substantially contributed as a

11:35  13  result of the negligence of Fluor in its actions or inactions

11:35  14  concerning the hauling and/or installation of the trailer

11:35  15  occupied by Alexander and Cooper?

11:35  16               Yes or no.  Proceed to Question 9.

11:35  17              9.  Do you find that Alana Alexander sustained

11:35  18  injury as to which Fluor substantially contributed as a result

11:35  19  of the negligence of Fluor in its actions or inactions

11:35  20  concerning the hauling and/or installing of the trailer

11:35  21  occupied by Alexander and Cooper?

11:35  22               Yes or no.  Proceed to Part C, Question No. 10.

11:36  23              C.  Allocation of fault/damages, and there's an

11:36  24  instruction.

11:36  25             If you answered each and all of Question Nos. 5,

| | | |
|---|---|---|
| 11:36 | 1 | 6, 8 and 9 "no," do not answer anymore questions.  Please sign |
| 11:36 | 2 | and date this jury verdict form and advise the court security |
| 11:36 | 3 | officer that you have reached a verdict.  Otherwise, proceed to |
| 11:36 | 4 | Question No. 10 if you answered Question Nos. 5 or 8 "yes," if |
| 11:36 | 5 | you answered both Question 5 and 8 "no," proceed to |
| 11:36 | 6 | Question 11. |
| 11:36 | 7 | 10.  For Christopher Cooper, please allocate on |
| 11:36 | 8 | a percentage basis the degree of fault, if any, which you |
| 11:36 | 9 | attribute to each of the following parties and non-parties. |
| 11:36 | 10 | Please be careful to enter a "zero" or leave blank where you |
| 11:36 | 11 | have found no fault on the part of a party in your previous |
| 11:36 | 12 | answers.  All numerical percentages you enter in this question |
| 11:36 | 13 | should add up to a total of 100 percent. |
| 11:37 | 14 | Defendant Gulf Stream Coach, Inc., and there's a |
| 11:37 | 15 | blank with a percentage under it and there's an additional |
| 11:37 | 16 | instruction. |
| 11:37 | 17 | Defendant Fluor Enterprises, Inc., and there's a |
| 11:37 | 18 | blank which a percentage. |
| 11:37 | 19 | Plaintiff Alana Alexander, and there's a blank |
| 11:37 | 20 | with a percentage. |
| 11:37 | 21 | United States or FEMA, a blank with a |
| 11:37 | 22 | percentage. |
| 11:37 | 23 | And then person or entity other than defendants, |
| 11:37 | 24 | FEMA, or Alexander, which means maintenance contractor and/or |
| 11:37 | 25 | installer subcontractors only, and there's a blank with a |

11:37   1    percentage.  And underneath that is the total of 100 percent.

11:37   2                    Proceed to Question No. 11 if you answered

11:37   3    Question No. 6 or 9 "yes".  If you answered both Questions 6

11:37   4    and 9 "no," proceed to Question 12 only if you answered

11:37   5    Question No. 10.  Otherwise, please sign and date this jury

11:37   6    verdict form and advise the court security officer that you've

11:37   7    reached a verdict.

11:37   8                    11.  For Alana Alexander, please allocate on a

11:37   9    percentage basis of degree of fault, if any, which you

11:37  10    attribute to each of the following parties and non-parties.

11:37  11    Please be careful to enter a "zero" or leave blank where you

11:38  12    have found no fault on the part of a party in your previous

11:38  13    answers.

11:38  14                    All numerical percentages you enter in this

11:38  15    question should add up to a total of 100 percent.  And then

11:38  16    there are the same identifications with blanks for the

11:38  17    percentage.

11:38  18                    Defendant Gulf Stream Coach, Inc., with a blank

11:38  19    and a percentage.

11:38  20                    Defendant Fluor Enterprises with a blank and a

11:38  21    percentage.

11:38  22                    Plaintiff Alana Alexander with a blank and a

11:38  23    percentage.

11:38  24                    The United States or FEMA, with a blank with a

11:38  25    percentage.

11:38  1              And a person or entity other than the

11:38  2    defendants, FEMA, or Alexander, namely the maintenance

11:38  3    contractor and/or installer subcontractors only, and there is a

11:38  4    blank with a percentage and a 100 percent total.

11:38  5              Proceed to Question 12.

11:38  6              12.  What amount of damages, if any, do you find

11:38  7    should be awarded with respect to each of the following claims:

11:38  8              Past, present and future physical pain and

11:38  9    suffering of Christopher Cooper and there's a blank with a

11:38  10   dollar sign.

11:38  11             Past, present and future mental anguish and

11:39  12   emotional distress of Christopher Cooper, and there's a blank

11:39  13   with a dollar sign.

11:39  14             Past, present and future medical expenses,

11:39  15   including medical monitoring, for Christopher Cooper, and

11:39  16   there's a blank with a dollar sign.

11:39  17             Loss of impairment of life's pleasures for

11:39  18   Christopher Cooper, and a there's a blank with a dollar sign.

11:39  19             Past, present and future mental and emotional

11:39  20   distress of Alana Alexander, and there's a blank with a dollar

11:39  21   sign.

11:39  22             Loss of consortium for Alana Alexander, and

11:39  23   there's a blank with a dollar sign.

11:39  24             There is a line for the date and a signature

11:39  25   line for the foreperson of the jury.

                    JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
                            UNITED STATES DISTRICT COURT
                            EASTERN DISTRICT OF LOUISIANA

Page 129

11:39  1                 If you want to communicate with me at any time,

11:39  2  please give a written message to the -- well, it says "bailiff"

11:39  3  here, which is an old term.  It means CSO or the marshal, the

11:39  4  gentlemen who have been assisting you during the course of the

11:39  5  trial, who will then bring that note to me.  I will then

11:39  6  respond as promptly as possible, either in writing or by

11:39  7  meeting with you here in the courtroom.  I will always first

11:40  8  show the attorneys your question and my response before I

11:40  9  answer your question.

11:40  10                 After you have reached a verdict, you are not

11:40  11  required to talk with anyone about the case unless I order you

11:40  12  to do so, and that would be under extraordinary circumstances

11:40  13  only.

11:40  14                 I might also add that any notes that you have

11:40  15  taken during the course of this trial will be destroyed at the

11:40  16  conclusion of the trial and will not be made available to

11:40  17  anyone.

11:40  18                 You may now retire to the jury room to conduct

11:40  19  you deliberations.

11:40  20                 THE DEPUTY CLERK:  All rise.

11:40  21                 (WHEREUPON, the jury exited the courtroom.)

11:41  22                 THE COURT:  You maybe seated.

11:41  23                 First thing's first.  Since we're going to be

11:41  24  sending into the jury room the instructions and the verdict

11:41  25  form, we want to make sure that we've got some corrections and