UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                          MDL NO. 07-1873
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION                         SECTION "N" (5)
                                             JUDGE ENGELHARDT
                                             MAG. JUDGE CHASEZ


THIS DOCUMENT RELATES TO:
ALL CASES ("Louisiana Plaintiffs")


* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *


**DEFENDANT UNITED STATES' MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS THE FTCA NEGLIGENCE CLAIMS OF ALL "LOUISIANA
PLAINTIFFS" FOR LACK OF SUBJECT-MATTER  JURISDICTION BASED UPON
NO ANALOGOUS PRIVATE LIABILITY**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.  **The FTCA Waives The United States' Sovereign Immunity And Provides
    Subject Matter-Jurisdiction Only Where A Private Person In Like Circumstances
    Would Be Liable To Plaintiffs.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. **There Is No Analogous Private Liability If A Private Person In Like Circumstances
    Would Be Shielded From Liability By A State Statute.** . . . . . . . . . . . . . . . . . . . . . . . 10

III. **There Is No Analogous Private Liability For Louisiana Plaintiffs' Negligence Claims
     Because A Private Person In Like Circumstances Would Be Shielded From
     Negligence Liability By LHSEADA § 733.1.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   A.  **LHSEADA § 733.1 Represents A Policy Choice On The Part Of The
       Louisiana Legislature To Limit Liability In Order To Encourage The
       Provision Of Free Shelter In Response To A Disaster.** . . . . . . . . . . . . . . . . . . . 13

   B.  **Because The State Of Louisiana Has Chosen To Protect Private Persons
       Who Provide Free Emergency Shelter In Response To A Disaster From
       Negligence Liability, Louisiana Plaintiffs' FTCA Negligence Claims
       Lack Jurisdiction.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       1.  **FEMA Owned Or Operated "Immovable Property Or
           Other Premises".** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       2.  **FEMA Acted "Voluntarily And Without Compensation".** . . . . . . . . . . . 19

       3.  **FEMA Granted The "Use Of The Whole Or Part Of The Immovable
           Property Or Premises".** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

       4.  **FEMA Did So "For The Purpose Of Sheltering Persons During
           An Actual . . . Emergency".** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

### <u>FEDERAL CASES</u>

*Alexander v. United States*,
  605 F.2d 828 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Banks v. United States*,
  623 F. Supp. 2d 751 (S.D. Miss. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Estate of Boone v. United States*,
  591 F. Supp. 2d 800 (D. Md. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Brown v. United States*,
  653 F.2d 196 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bunting v. United States*,
  884 F.2d 1143 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*C.P. Chemical v. United States*,
  810 F.2d 34 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Carmichael v. Southern Coal & Coke Co.*,
  301 U.S. 495 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Carter v. United States*,
  982 F.2d 1141 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cleveland ex rel. Cleveland v. United States*,
  457 F.3d 397 (5th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Continental Insurance v. United States*,
  335 F. Supp. 2d 532 (D. N.J. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dalrymple v. United States*,
  460 F.3d 1318 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ewell v. United States*,
  776 F.2d 246 (10th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*FDIC v. Meyer*,
  510 U.S. 471 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

**PAGE**

*Feres v. United States,*
    340 U.S. 135 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Palmer v. Flaggman,*
    93 F.3d 199 C.A. 5 (Tex.) 1996 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Flast v. Cohen,*
    392 U.S. 83 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Goldstar (Panama) v. United States,*
    967 F.2d 965 (4th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Guile v. United States,*
    422 F.3d 221 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Haceesa v. United States,*
    309 F.3d 722 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hannon v. United States,*
    801 F. Supp. 323 (E.D. Ca. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hill v. SmithKline Beecham Corp.,*
    393 F.3d 1111 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Hornbeck Offshore v. United States,*
    569 F.3d 506 (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hyatt v. United States,*
    968 F. Supp. 96 (E.D.N.Y. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Int'l Ass'n of Machinists v. TX. Steel Co.,*
    538 F.2d 1116 (5th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. Sawyer,*
    47 F.3d 716 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*LaBarge v. County of Mariposa,*
    798 F.2d 364 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 13

*Land v. Dollar,*
    330 U.S. 731 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

iii

**PAGE**

*Leleux v. United States,*
    178 F.3d 750 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lockett v. FEMA,*
    836 F. Supp. 847 (S.D. Fla. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*McClain v. United States,*
    445 F. Supp. 770 (D. Oregon 1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Menchaca v. Chrysler Credit Corp.,*
    613 F.2d 507 (5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mortensen v. First Fed. Sav. & Loan Assoc.,*
    549 F.2d 884 (3d Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Nationwide Mut. Ins. Co. v. United States,*
    3 F.3d 1392 (10th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ortiz v. U.S. Border Patrol,*
    39 F. Supp. 2d 1321 (D. N.M. 1999),
    *aff'd*, 210 F.3d 390 (10th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Owen v. United States,*
    935 F.2d 734 (5th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11

*Palmer v. Flaggman,*
    93 F.3d 199 C.A. 5 (Tex.) 1996. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Palmer v. United States,*
    945 F.2d 1134 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Priah v. United States,*
    590 F. Supp. 2d 920 (N.D. Ohio 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Richards v. United States,*
    369 U.S. 1 (1962).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

*Ridgley v. FEMA,*
    512 F.3d 727 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Sanchez v. Rowe,*
    870 F.2d 291 (5th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**PAGE**

*St. Tammany, ex rel. Davis v. FEMA,*
  556 F.3d 307 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Standefer v. United States,*
  511 F.2d 101 (5th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Starns v. United States,*
  923 F.2d 34 (4th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Starnes v. United States,*
  139 F.3d 540 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Thomas v. Calavar Corp.,*
  679 F.2d 416 (5th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*U.S. Dep't of Energy v. Ohio,*
  503 U.S. 607 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*U.S. Fidelity & Guaranty Co. v. United States,*
  728 F. Supp. 651 (D. Utah 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.,*
  384 F.3d 168 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Mitchell,*
  445 U.S. 535 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Mottaz,*
  476 U.S. 834 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Muniz,*
  374 U.S. 164, 83 S. Ct. 1850, U.S. NY 1963. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Nordic Village, Inc.,*
  503 U.S. 30 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Olson,*
  546 U.S. 43 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 8, 10, 16, 21

*United States v. Smith,*
  324 F.2d 622 (5th Cir. 1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**PAGE**

*United States v. Williams*,
   514 U.S. 527 (1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Winchell v. Dep't of Agriculture*,
   961 F.2d 1442 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Woodbridge v. Bank of Irvine*,
   815 F.2d 538 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Woods v. United States*,
   909 F. Supp. 437 (W.D. La 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

**STATE CASES**

*Banks v. Parish of Jefferson*,
   990 So. 2d 26 (La. Ap.. 5 Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Castille v. Lafayette*,
   896 So.2d 1261 (La. App. 3 Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*City of Denham Springs v. Perkins*,
   10 So. 3d 311 (La. App. 1 Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Clement v. Reeves*,
   935 So. 2d 279 (La. App. 3 Cir. June 28, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ellis v. Dillon*,
   345 So.2d 1241 (La. App. 1 Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Johnson v. FEMA*,
   2009 WL 1208639 (E.D. La. 2009, May 1, 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Keelen v. State Dep't of Culture, Recreation & Tourism*,
   463 So. 2d 1287 (La. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*P.H.A.C. Services, Inc. v. Seaways Intl., Inc.*,
   393 So. 2d 117 (La. App. 1 Cir. 1980),
   *aff'd*, 403 So. 2d 1199 (La. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Robin v. United States*,
   2006 WL 2038169 (E.D. La. July 17, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

**FEDERAL STATUTES**

28 U.S.C. § 1346(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3 passim

**PAGE**

28 U.S.C. § 1402(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

28 U.S.C. § 2671-2680.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 4, 5, 8, 9

28 U.S.C. § 2674. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 3, 8 passim

42 U.S.C. § 4121. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

42 U.S.C. § 5174(c)(1)(B)(I). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

**RULES**

Rule 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Rule 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

**MISCELLANEOUS**

La. Atty. Gen. Op.,
    No. 08-0093 (July 24, 2008) 2008 WL 3889507. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

## INTRODUCTION

Defendant, the United States of America, submits this memorandum in support of its motion to dismiss **Louisiana Plaintiffs'**[1] negligence claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, based upon lack of subject-matter jurisdiction.  For purposes of assessing liability, the FTCA places the United States on equal footing with private persons.  Thus, the United States' liability is measured by referencing the state law liability of a private person under similar circumstances.  As a result, the United States is entitled to raise any and all defenses available to a private person under state law.

In this case, even if Louisiana Plaintiffs could prove that the United States was negligent, there would be no analogous tort liability against a "private individual under like circumstances" under Louisiana law.  *See* 28 U.S.C. §§ 2674, 1346(b).  Consequently, a key jurisdictional requirement under the FTCA is not met.  The State of Louisiana has sought to encourage (rather than discourage through potential liability) the gratuitous provision of shelter to homeless disaster victims by promulgating Section 733.1 of the "Louisiana Homeland Security and Emergency Assistance and Disaster Act" ("LHSEADA"), La. R.S. 29:721-738.  This section abrogates the potential **negligence liability** of all

---

[1] **"Louisiana Plaintiffs" are defined as all plaintiffs in this multi-district litigation ("MDL") who inhabited FEMA-provided emergency housing units ("EHUs") – and allegedly suffered injuries therefrom – while in the State of Louisiana.**  Because the FTCA requires the United States' liability to be measured in accordance with the law of the state where the alleged act or omission occurred, the FTCA claims of these plaintiffs are shaped by the provisions set forth in Louisiana law.  *See* 28 U.S.C. § 1346(b); *Cleveland ex rel. Cleveland v. United States*, 457 F.3d 397, 403 (5th Cir. 2006); *Alexander v. United States*, 605 F.2d 828, 832 (5th Cir. 1979) ("[L]iability under the FTCA is governed by state law."); *see also Richards v. United States*, 369 U.S. 1, 9 (1962).  Any alleged negligent acts or omissions on the part of the United States in these cases will have necessarily occurred within the State of Louisiana (where the plaintiff's EHU was located).

Although most of the cases brought by Louisiana Plaintiffs have presumably been filed in Louisiana District Courts, the location where a case is filed (even if venue is proper) does not necessarily indicate which state law is used to measure FTCA liability.  The FTCA allows for two alternative forums of proper venue: (1) "the judicial district where a plaintiff resides" and (2) the judicial district "wherein the act or omission complained of occurred."  *See* 28 U.S.C. § 1402(b).  As a result of the first option, some cases properly filed in Louisiana District Courts could involve plaintiffs who resided in FEMA-provided housing outside the state of Louisiana (thus requiring liability under the FTCA to be measured using the law of a state other than Louisiana).  Conversely, some cases properly filed in District Courts outside the state of Louisiana could involve plaintiffs who resided in FEMA-provided housing within the state of Louisiana (thus requiring liability under the FTCA to be measured using Louisiana state law as opposed to the law of the state where the case was actually filed).

1

private persons and entities that voluntarily and without compensation allow their property or premises to be used as shelter in response to an emergency.[2]  By alleging that they suffered exposures and resulting injuries from residing in rent-free housing units that were provided in direct response to the continuing effects of a natural disaster, Louisiana Plaintiffs seek to assert the very type of negligence claims that would not be allowed to proceed against a private person under Louisiana law.  *See* La. R.S. 29:733.1. Correspondingly, the FTCA's limited waiver of sovereign immunity dictates that similar claims against the Government are without jurisdiction.  Where there is no analogous private liability under state law – there is no subject-matter jurisdiction under the FTCA.[3]

Because the Government could never be exactly like a private actor, a court's job in examining an FTCA claim is to assess whether a private party would be subject to liability under **similar circumstances**.  *See LaBarge v. County of Mariposa*, 798 F.2d 364, 366-69 (9th Cir. 1986) (emphasis added); *see also Olson*, 546 U.S. at 44.  Thus, as long as the Government's conduct is functionally equivalent (even if not literally identical) to conduct that would be shielded from private liability by a state statute, the Government is afforded the same protection.  Considering the most reasonable private analogue in this case, the Government conduct at issue goes one step further – it squarely satisfies the

---

[2] **§ 733.1. Limitation of liability of owner or operator of facilities**
Any person or organization, public or private, owning or operating immovable property or other premises who voluntarily and without compensation grants a license or privilege or otherwise permits the designation by the state or local homeland security and emergency preparedness agency or use of the whole or any part of the immovable property or premises for the purpose of sheltering persons or household pets or service animals during an actual, impending, mock, or practice emergency, together with his successor in interest, if any, shall not be liable for the death of, or injury to, any person or household pets or service animals on or about such immovable property or premises during the actual, impending, mock, or practice emergency, or for loss of, or damage to, the property of such person, solely by reason or as a result of the license, privilege, designation, or use, unless the gross negligence or the willful and wanton misconduct of the person owning or operating the immovable property or premises or his successor in interest is the proximate cause of the death, injury, loss, or damage occurring during the sheltering period.

[3] The FTCA's limited waiver of sovereign immunity – and, thus, its limited grant of subject-matter jurisdiction – is expressly limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b). Whether a private individual in like circumstances could be subject to liability is a question of sovereign immunity. *See United States v. Olson*, 546 U.S. 43, 44 (2005).  Although the FTCA looks to state law to measure Government liability, whether there is analogous private liability under similar circumstances remains a question of federal law.

2

statutory prerequisites set forth in LHSEADA § 733.1 for private person immunity from negligence

liability.[4]  The undisputed facts and Plaintiffs' allegations show that the United States, through FEMA:

(1)     owned or operated "immovable property or other premises";
(2)     acted "voluntarily and without compensation":
(3)     granted "use of the whole or part of the immovable property or premises"; and
(4)     did so for "for the purpose of sheltering persons during an actual . . . emergency."

*See* La. R.S. 29:733.1.  Accordingly, Louisiana Plaintiffs' negligence claims do not meet the FTCA's

requirement that there must be analogous private liability "under like circumstances" pursuant to the "law

of the place where the act or omission occurred."[5]  *See* 28 U.S.C. §§ 1346(b), 2674.  Plaintiffs' negligence

claims fall outside the FTCA's limited waiver of sovereign immunity and, thus, must be dismissed for

lack of subject-matter jurisdiction.[6]

## BACKGROUND

Plaintiffs in this MDL, are "individuals who resided in emergency housing units ("EHUs")

provided by . . . [FEMA] . . . after Hurricanes Katrina and Rita."  *See* Order and Reasons, August 21,

2009 [Doc. No. 2789].  "In general, Plaintiffs claim injuries resulting from alleged exposure to the release

of formaldehyde and/or formaldehyde vapors in these EHUs."  *Id.* (citing Doc. No. 109 ¶ 30).  All actions

---

[4] LHSEADA § 733.1 is an immunity statute in the classic sense (not to be confused with the concept of sovereign immunity).  Rather than altering the appropriate standard of care, the statute provides that even if an owner/operator of an emergency shelter is found to have committed negligent acts/omissions, as a matter of policy, the law will not hold the owner/operator legally responsible (liable) in tort for their negligence.

[5] Whether Louisiana Plaintiffs choose to cast their claims against the United States as an alleged failure to warn, a failure to mitigate, a failure to respond appropriately, or even a failure to remove and relocate, none of these negligence claims could be asserted against a private person under similar factual circumstances in light of the categorical limitation on negligence liability presented in LHSEADA § 733.1.  The provision wholly immunizes an owner/operator from negligence claims for any death or injury, or loss of damage to property, that results from a person's "use" of an emergency shelter.  Louisiana Plaintiffs' negligence claims all converge on this same factual nexus – their occupancy or "use" of Government-owned emergency housing units that they allege exposed them to formaldehyde throughout the sheltering period and led to resulting injuries/damages.

[6] To be clear, the United States' motion seeks the dismissal of all remaining FTCA claims brought by Louisiana Plaintiffs that sound in negligence.  To the extent Plaintiffs have pleaded other theories of liability such as gross negligence or willful and wanton misconduct, such allegations are beyond the ambit of this motion.  *See* La. R.S. 29:7333.1 (providing that the section does not limit an owner/operator's liability for "gross negligence" or "willful and wanton misconduct").

3

currently pending before this MDL Court necessarily "share factual questions relating to allegations that trailers – provided by . . . [FEMA] . . . in the wake of Hurricanes Rita and Katrina – contain materials which emit dangerous, excessive levels of formaldehyde."  Transfer Order, Oct. 24, 2007 [Doc. No. 1].

As enunciated in the "Third Supplemental and Amended Administrative Master Complaint" [Doc. No. 4486], Plaintiffs have filed suit against over one-hundred entities, including the United States of America.[7]  *See* Third Supp. and Am. Admin. Master Compl. ¶¶ 10-115, 124.  They purport that the United States is subject to the jurisdiction of this Court through the FTCA's limited waiver of sovereign immunity.  *Id.* ¶ 116 (citing 28 U.S.C. §§ 1346, 2671, *et seq*.).  Plaintiffs allege that "a large portion of the negligent and wrongful actions of the defendants occurred in the Eastern District of Louisiana" and that some number of individual plaintiffs "reside in this district and the acts and/or omissions as to certain of the plaintiffs occurred in this district."  *Id.* ¶¶ 121-122.

Plaintiffs plead they were provided housing units by FEMA because "[t]he residence of each Named Plaintiff was rendered uninhabitable following [the landfalls of] Hurricanes Katrina and/or Rita." *Id.* ¶ 124.  As a result of what Plaintiffs describe as "the greatest natural disaster in the history of the United States," each and every Plaintiff was allegedly left "homeless."  *Id.* ¶¶ 128, 171.  Plaintiffs allege that FEMA's provision of housing to these homeless "individuals and families displaced by hurricanes Katrina and Rita" created "a duty on the part of the Federal Government to ensure that such housing was habitable in a safe and sanitary condition," and that the United States was under a duty to: "use due care and caution for the safety of the . . . occupants of the subject housing units"; "provide reasonably safe, functional and habitable housing units"; "ensure that the housing units . . . were free of defects"; and "warn . . . of any defects in the housing units."  *Id.* ¶¶ 150, 162, 201-205.

Plaintiffs specifically allege that the United States was negligent in: "continuing to provide

---

[7] At the time of this filing, Plaintiffs are apparently in the process of seeking leave to file a "Fourth Supplemental and Amended Administrative Master Complaint."  Based upon a review of the proposed filing, the requested amendments would not alter, affect, or renumber the numbered paragraphs from the "Third Supplemental and Amended Administrative Master Complaint" cited herein.

unreasonably dangerous housing units"; "failing to adequately warn . . . of the unreasonably dangerous nature of the housing units"; "failing to remedy the dangerous nature of the housing units"; "failing to timely implement adequate safety measures and procedures to address/remove the defects in the housing units"; and "continuing to house [Plaintiffs] in hazardous, unreasonably dangerous temporary housing units." *Id.* ¶ 209.  They also facially allege that the United States was "grossly negligent, reckless, willful and/or wanton."[8]  *Id.* ¶ 206.  According to Plaintiffs, the "FEMA-provided housing units" were "unsafe" and exposed Plaintiffs to "dangerously high concentrations of . . . formaldehyde . . ."  *Id.* ¶¶ 135, 150. They aver that their occupancy of these "defective and dangerous" housing units caused them to suffer certain physical injuries and other damages.  *Id.* ¶¶ 179, 207, 353.

Finally, Plaintiffs allege that under the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. § 4121, *et seq.*, the Executive Branch of the United States, "through FEMA, may provide 'direct assistance' in the form of temporary housing units." *Id.* ¶ 142. They state that these FEMA-provided housing units were converted from "mobile" units into "temporary housing unit[s] to be used as . . . residence[s] for long-term occupancy." *Id.* ¶ 160.  This was allegedly done by "installing" each housing unit by raising the unit "several feet into the air and off of its wheel base, and setting it on concrete blocks." *Id.* ¶¶ 157, 159, 296.  Plaintiffs plead that this immobilization process, in anticipation of long-term habitation, "modified the design and the actual use of these units occupied by the plaintiffs." *Id.* ¶ 160 (alleging that "mobile" units were "modif[ied]" and "convert[ed]" into a "residence"); *see also id.* ¶¶ 301, 308 (alleging that the housing units were "installed" as "residential installations").  This was also allegedly accomplished through the installation of "residential appliances and heating and air conditioning units." *Id.* ¶ 298.

---

[8] Plaintiffs also plead that the United States "knowingly and intentionally" suppressed and withheld information from the public and "knowingly and intentionally" allowed litigation concerns to take priority over an alleged safety mandate. *Id.* ¶ 209.  As has been mentioned in past filings, the United States has not waived its sovereign immunity for suits involving the intentional torts of Government employees.  *See* 28 U.S.C. § 2680(h).

## STANDARD OF REVIEW

The United States has moved to dismiss Louisiana Plaintiffs' FTCA negligence claims for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  In the alternative, the United States has moved for summary judgment under Rule 56.  Because federal courts are inherently courts of limited jurisdiction, the law starts with the presumption that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Moreover, jurisdiction is a threshold issue.  The separation of powers doctrine requires a federal court to determine whether it has jurisdiction as soon as possible, before reaching the merits of a case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

In deciding this Rule 12(b)(1) motion, the Court is not limited to Plaintiffs' allegations, but may consider materials outside the pleadings.[9]  *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) (in deciding a motion to dismiss for lack of jurisdiction, a court "may inquire by affidavits or otherwise, into the facts as they exist"); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (in assessing a factual challenge to the court's subject-matter jurisdiction, the court may look outside the pleadings without converting the motion into one for summary judgment); *Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir. 1977) ("[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.").  As the party averring jurisdiction, Louisiana Plaintiffs

---

[9] In some circumstances, courts have converted motions to dismiss under Rule 12(b)(1) into motions for summary judgment under Rule 56 when resolution of the jurisdictional question would purportedly be intertwined with the merits of the case and materials outside the pleadings have been submitted.  *See United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004); *see, e.g.,* Order and Reasons, October 3, 2008 [Doc. No. 717].  Here, however, the jurisdictional question – whether LHSEADA § 733.1 would limit the potential tort liability of an analogous private person under similar circumstances – is not intertwined with, and, in fact, bears no relation to, a merits determination of whether the United States was negligent.  The only issue for the Court to decide is whether this particular provision of Louisiana law would limit the liability of a private person under similar circumstances in light of Plaintiffs' allegations and the undisputed facts.  This legal inquiry affects all Louisiana Plaintiffs in the same manner and does not hinge on a case-by-case or individualized analysis.

Even if the Court were to apply the summary judgment standard to this motion, summary judgment is appropriate because there remains no genuine issue of material fact regarding whether LHSEADA § 733.1 would bar analogous private liability under circumstances similar to those presented in this action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  "It is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate."  *Int'l Ass'n of Machinists v. TX. Steel Co.*, 538 F.2d 1116 (5th Cir. 1976).

bear the burden of proof.  *See Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction."); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Whether a private person in "like circumstances" would be subject to liability is a question of sovereign immunity and, thus, is ultimately a question of federal law.  *See Olson*, 546 U.S. at 44; *see also United States v. Mottaz*, 476 U.S. 834, 841 (1986) (stating that the scope of the United States' waiver of sovereign immunity defines the extent of a court's jurisdiction).   Judicial restraint requires federal courts to avoid liberal interpretation of any federal or state law which might expand the Government's waiver of sovereign immunity without Congressional approval.  *See U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (holding that waivers of sovereign immunity and any conditions on such waivers must be "construed strictly in favor of the sovereign").  Thus, if there is a possibility that a private person under "like circumstances" would be shielded from liability pursuant to a state statute, the strict construction required by the Supreme Court dictates that lower courts decline to exercise subject-matter jurisdiction.

## ARGUMENT

I.     **The FTCA Waives The United States' Sovereign Immunity And Provides Subject Matter-Jurisdiction Only Where A Private Person In Like Circumstances Would Be Liable To Plaintiffs.**

"Absent a waiver, sovereign immunity shields the Federal Government . . . from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Owen v. United States*, 935 F.2d 734, 736 (5th Cir. 1991).  The United States' consent to suit cannot be implied, but must be unequivocally expressed and strictly construed.  *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34-35 (1992); *United States v. Williams*, 514 U.S. 527, 531 (1995) ("The court must construe any ambiguities in favor of immunity."); *see also Guile v. United States*, 422 F.3d 221, 229 (5th Cir. 2005).  It is the existence of this consent that defines the scope of a court's jurisdiction.  *See United States v. Mitchell*, 445 U.S. 535, 538 (1990).  Through the FTCA, Congress has chosen to waive the United States' sovereign immunity and, thus, authorize jurisdiction, for

7

certain torts committed by federal employees while acting within the scope of their employment.  28

U.S.C. §§ 1346(b)(1), 2671.  As described above, the FTCA's jurisdictional boundaries must be

"construed strictly in favor of the [United States]."  *Ohio*, 503 U.S. at 615.

One express condition on the FTCA's limited waiver of sovereign immunity is that it only allows

claims where a private person in like circumstances would be subject to liability.  *See Olson*, 546 U.S. at

44.  At 28 U.S.C. § 1346(b)(1), the FTCA provides that courts may only exercise jurisdiction over:

> claims against the United States, for money damages . . . for injury or loss of property, or
> personal injury or death caused by the negligent or wrongful act or omission . . . **under
> circumstances where the United States, if a private person, would be liable to the claimant
> in accordance with the law of the place where the act or omission occurred**.

(emphasis added).  Similarly, at 28 U.S.C. § 2674, the FTCA provides:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, **in
> the same manner and to the same extent as a private individual under like circumstances**

(emphasis added).  Thus, if a private person under similar circumstances would not be liable to plaintiff

for the alleged conduct under the applicable "law of the place," the United States has not waived its

sovereign immunity and the court does not have jurisdiction to adjudicate the FTCA claim.  This

requirement embedded in the FTCA ensures that the Act does not create novel causes of action against

the United States – it only serves to accept Government liability under "like circumstances" that are

functionally equivalent to those where a private person would be liable.[10]  *See Feres v. United States*, 340

U.S. 135, 141 (1950).

The "law of the place where the act or omission occurred," referenced in 28 U.S.C. § 1346(b)(1),

"refers exclusively to state law."  *Brown v. United States*, 653 F.2d 196, 201 (5th Cir. 1981); *see Leleux v.

United States*, 178 F.3d 750, 759 (5th Cir. 1999).  Hence, the FTCA measures Governmental liability in

accordance with the law of the state where the act or omission at issue occurred.  *See Brown*, 653 F.2d at

_____

[10] As described by one court, the FTCA's "like circumstances" requirement is designed to prevent state
legislatures from using the United States' limited waiver of sovereign immunity as an occasion to "enrich their own
citizens at the expense of the deepest pocket."  *See Carter v. United States*, 982 F.2d 1141, 1143 (7th Cir. 1992).

201 ("[T]he liability of the United States under the [FTCA] arises only when the law of the state would impose it [on a private person]."). It follows that the FTCA simply cannot be read to create or enlarge substantive causes of action that do not already exist under state law.[11] *See Richards*, 369 U.S. at 7, 13-14 (the FTCA "was designed to build upon the legal relationships formulated and characterized by the States"); *see also Goldstar (Panama) v. United States*, 967 F.2d 965, 969-70 (4th Cir. 1992); *Winchell v. Dep't of Agriculture*, 961 F.2d 1442, 1443 (9th Cir. 1992) (holding that under the FTCA, a plaintiff must show that the wrongs allegedly committed "would be actionable in tort if committed by a private party under analogous circumstances, under the law of the state where the act or omission occurred").

In *United States v. Olson*, the Supreme Court recently interpreted the words of the FTCA "to mean what they say, namely, that the United States waives sovereign immunity 'under circumstances' where local law would make a '**private person**' liable in tort" (emphasis in *Olson*). 546 U.S. at 44 (quoting 28 U.S.C. § 1346(b)). The Supreme Court also found that even though there may exist state or municipal liability for alleged negligent conduct, if there is no analogous **private** liability, the United States has not waived its sovereign immunity.[12] *Id.* at 45-46. The FTCA "requires a court to look to the

---

[11] The FTCA's limited waiver of sovereign immunity "cannot apply where the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own affairs." *See United States v. Smith*, 324 F.2d 622, 623-25 (5th Cir. 1963); *Hornbeck Offshore v. United States*, 569 F.3d 506, 509 (D.C. Cir. 2009). Internal policies, procedures, or statutes governing federal action – though potentially relevant to a 28 U.S.C. § 2680(a) discretionary function exception analysis – cannot serve to create a substantive cause of action under the FTCA unless the conduct at issue is "independently tortious under applicable state law." *See Johnson v. Sawyer*, 47 F.3d 716,727-29 (5th Cir. 1995); *Dalrymple v. United States*, 460 F.3d 1318, 1327 (11th Cir. 2006). To hold otherwise would effectively "discriminate against the United States." *Johnson*, 47 F.3d at 727; *see St. Tammany, ex rel. Davis v. FEMA*, 556 F.3d 307, 317 (5th Cir. 2009). In addition, merely alleging that the United States was negligent is insufficient to state a claim under the FTCA – there must be a "persuasive analogy with private conduct." *See Woodbridge v. Bank of Irvine*, 815 F.2d 538, 543 (9th Cir. 1987). A plaintiff cannot bring an FTCA action simply because the plaintiff believes that a federal agency has not reasonably exercised its purported charge. *See, e.g., Sanchez v. Rowe*, 870 F.2d 291 (5th Cir. 1989).

[12] State law rules of immunity that expressly apply to state or municipal actors may not prove helpful in measuring the scope of FTCA liability. *See, e.g., Hyatt v. United States*, 968 F. Supp. 96, 108 (E.D.N.Y. 1997). Such provisions may conflict with Congress's required analogy to "private person" liability as stated within the FTCA. *See, e.g., Muniz*, 374 U.S. at 164. For example, a Louisiana statute (La. R.S. 29:735) that deals with **governmental agencies** who engage in emergency response activities would be irrelevant to the required **private person** inquiry required by the FTCA. In addition, whether or how a state legislature has addressed the conduct of the United States is irrelevant. Aside from obvious federalism concerns, such laws would have no bearing on the

9

state-law liability of private entities, not that of public entities, when assessing the Government's liability under the FTCA." *Id.* at 46 (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)); *see Owen*, 935 F.2d at 737 (defining the "relevant question [as] whether the federal defendants [are] in 'like circumstances'"). "Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the **most reasonable analogy**." *See LaBarge*, 798 F.2d at 367 (emphasis added); *C.P. Chemical v. United States*, 810 F.2d 34, 37 (2d Cir. 1987) (focusing on whether private liability would exist under "comparable" circumstances).

## II.    There Is No Analogous Private Liability If A Private Person In Like Circumstances Would Be Shielded From Liability By A State Statute.

As part of the FTCA's private analogous liability requirement, courts have consistently held that the Government is entitled to raise any and all defenses that would potentially be available to a private citizen or entity under state law.[13]  *See Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1998) (applying the state law "borrowed servant" defense in the context of an FTCA action); *Banks v. United States*, 623 F. Supp. 2d 751, 752 (S.D. Miss. 2009) ("Where the FTCA applies, the United States can assert the same defenses available to private citizens . . ."); *Woods v. United States*, 909 F. Supp. 437, 442 (W.D. La 1995) (dismissing an FTCA action based upon the private landowner immunity afforded by Louisiana's recreational use statute).  Invariably, this means that state law defenses, exceptions to liability, immunity provisions, and limitations on recovery coextensively limit the Government's FTCA liability as they would limit a private person's liability under **similar** factual circumstances.  *See Owen*, 935 F.2d at 737; *Palmer v. Flaggman*, 93 F.3d 196, 199 (5th Cir. 1996); *Ewell v. United States*, 776 F.2d

---

required inquiry into the analogous liability of a private person under similar circumstances.  *See* 28 U.S.C. § 2674.

[13]  A number of relevant examples are found throughout the case law.  *See, e.g., Thomas v. Calavar Corp.*, 679 F.2d 416, 418-19 (5th Cir. 1982) (applying state workers' compensation immunity in the context of an FTCA action); *Hannon v. United States*, 801 F. Supp. 323 (E.D. Ca. 1992) (holding that the United States was entitled to the protection of California's recreational land use statute based upon the FTCA's analogous private liability provision even though the statute only applied to private landowners and not public entities); *Palmer v. United States*, 945 F.2d 1134 (9th Cir. 1990) (similar – Hawaii law); *McClain v. United States*, 445 F. Supp. 770 (D. Ore. 1978) ("a state may not protect private citizens from liability without also protecting the federal government").

246, 249 (10th Cir. 1985) ("[I]mmunities created by state law which are available to private persons will immunize the federal government").  State statutes that limit private liability to only those circumstances where a plaintiff can establish gross negligence have been applied in the context of FTCA actions on a number of occasions.  *See, e.g., Bunting v. United States*, 884 F.2d 1143, 1145, 1147-48 (9th Cir. 1989) (in an FTCA case, applying an Alaska law barring liability except upon a showing of gross negligence); *Ortiz v. U.S. Border Patrol*, 39 F. Supp. 2d 1321, 1322-23 (D. N.M. 1999) (similar – New Mexico law), *aff'd*, 210 F.3d 390 (10th Cir. 2000); *Priah v. United States*, 590 F. Supp. 2d 920, 930 (N.D. Ohio 2008) (similar – Ohio law).

Because the United States is seldom identically situated to private parties, the FTCA's "like circumstances" test must be read to cut both ways.  If there is a reasonable analogue, the United States may be held liable under the FTCA for activities that could be considered uniquely governmental in nature, but it also must be afforded the benefit of state immunity statutes and non-liability provisions that the Government has only functionally, rather than literally, complied with.[14]  *See Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1118 (10th Cir. 2004) ("In light of the 'similarly situated' requirement,

---

[14] In judging whether a state immunity provision applies in the context of an FTCA action, the focus must remain on "like circumstances" because the "FTCA assures the federal government of that treatment accorded private parties."  *Starns v. United States*, 923 F.2d 34, 37 (4th Cir. 1991).  Even where the exact terms of a statutory immunity provision have not been met by the Government, "where the United States has satisfied the **objectives of a statutory scheme**, it is to be considered in 'like circumstances' under the FTCA to a private party that has actually complied with the scheme" (emphasis added).  *See Nationwide Mut. Ins. Co. v. United States*, 3 F.3d 1392, 1396-97 (10th Cir. 1993); *see e.g., Estate of Boone v. United States*, 591 F. Supp. 2d 800, 802 (D. Md. 2008) (applying Maryland statutory immunity for private fire companies to the United States in the context of an FTCA action even though not all of the statutory requirements were satisfied); *Continental Insurance v. United States*, 335 F. Supp. 2d 532, 543 (D. N.J. 2004) (analogizing the United States to private persons who were not required to carry insurance pursuant to New Jersey law by concluding that the United States had functionally, though not literally, complied with the state insurance requirements); *Nationwide*, 3 F.3d at 1396-97 (holding that functional compliance with statutory requirements placed the United States in "like circumstances" to those literally protected by a Colorado automobile insurance statute); *Starns*, 923 F.2d at 37 (holding that under the FTCA's "like circumstances" provision, Virginia's state law statutory cap on medical malpractice liability applied to a federally operated hospital even though it was not licensed by the state per the statutory cap's requirements); *Haceesa v. United States*, 309 F.3d 722, 725-27 (10th Cir. 2002) (applying a state law statutory cap in the context of an FTCA action even though the United States had not specifically complied with a number of requirements set forth in the statute); *U.S. Fidelity & Guaranty Co. v. United States*, 728 F. Supp. 651, 654 (D. Utah 1989) (finding that the United States was in "like circumstances" to a secured owner or operator of a vehicle under state law despite the fact that the Government had not strictly complied with some of the requirements set forth by state law).

we . . . have allowed the United States the benefits of certain state-law defenses in FTCA actions, even when the United States did not meet the technical requirements of state law.").  This is especially true where certain prerequisites to raising a state statutory provision cannot be met due to the inherent differences between the Government and a private person.  *See id.* ("[T]o hold that the United States is not entitled to the protection of [state law] would place it in a differently situated position than private parties . . . thereby undermining the conditions precedent to the United States' waiver of sovereign immunity in the FTCA.").  Nevertheless, the matter in this case is clear.  As explained below, the Government conduct at issue goes beyond the functional equivalency standard derived from the FTCA's "like circumstances" language and wholly satisfies the prerequisites for private person immunity announced in LHSEADA § 733.1.  *See* La. R.S. 29:733.1.

## III.   There Is No Analogous Private Liability For Louisiana Plaintiffs' Negligence Claims Because A Private Person In Like Circumstances Would Be Shielded From Negligence Liability By LHSEADA § 733.1.

### A.   LHSEADA § 733.1 Represents A Policy Choice On The Part Of The Louisiana Legislature To Limit Liability In Order To Encourage The Provision Of Free Shelter In Response To A Disaster.

Through the LHSEADA, the State of Louisiana has categorically limited the negligence liability of private persons who, voluntarily and without compensation, provide shelter in response to an emergency or disaster.[15]  *See* La. R.S. 29:733.1.  **Such private persons represent the most reasonable**

---

[15] The LHSEADA outlines a number of steps to aid disaster response activities within the state.  *See* La. R.S. 29:721.  The Louisiana Legislature found the Act necessary:

> Because of the existing possibility of the occurrence of emergencies and disasters of unprecedented size and destructiveness resulting from . . . fire, flood, earthquake or other natural or manmade causes . . . and in order to . . . detect, prevent, prepare for, investigate, respond to, or recover from these events, and generally to preserve the lives and property of the people of the state of Louisiana."

La. R.S. 29:722(A).  The Act provides for state and local civil defense and emergency preparedness agencies; addresses the organization of powers, duties, functions, responsibilities, and funding thereof; and provides for other matters relative to emergencies and disasters.  *See* La. R.S. 29:721-722.  Among the goals enunciated by the Act are the "prompt and efficient . . . care, and treatment of persons victimized . . . by disasters or emergency" as well as the provision of "a setting conducive to the rapid and orderly start of restoration and rehabilitation of persons and property affected by emergencies or disasters."  La. R.S. 29:722.  LHSEADA § 723 specifically includes hurricanes

**analogue to the United States in this case**.  *See LaBarge*, 798 F.2d at 367.  Louisiana Plaintiffs have alleged that the United States provided them with shelter because their residences were "rendered uninhabitable" and because they were left "homeless" as a direct consequence of Hurricanes Katrina and Rita.  Third Supp. and Am. Admin. Master Compl. ¶¶ 124, 128, 171.  Under these facts, had a **private person** responded to the emergency by providing shelter purchased from a commercial vendor to house the displaced hurricane victims at no cost (as FEMA did in this case), the private owner of the shelter would be immune from any claims that his negligence (whether related to his initial provision of the shelter or an alleged failure to respond to health and/or safety concerns regarding usage of the shelter) caused the victims to be injured during their occupancy of the shelter.  *See* La. R.S. 29:733.1.  As such, there can be no analogous liability, and, thus, no FTCA jurisdiction, under "like circumstances" to those presented in this case.[16]  *See Hill*, 393 F.3d at 1118.

The upshot of LHSEADA § 733.1 is clear.  It immunizes those who provide free shelter in response to a disaster from negligence liability, notwithstanding any duties owed by the owner/operator of the premises to the occupants, and notwithstanding whether the owner/operator acted negligently.  This protection represents a public policy choice by the State of Louisiana to encourage the provision of free shelter in the context of an emergency or natural disaster.[17]  *See* La. R.S. 29:733.1.  In order to provide for

---

as one of the disasters contemplated by the Act.  La. R.S. 29:723; *see Castille v. Lafayette*, 896 So.2d 1261, 1263 (La. App. 3 Cir. 2005) (assessing whether LHSEADA § 735 immunized a municipal actor).

[16] It is important to note that Louisiana has abrogated the tort liability of a number of specific private organizations under circumstances similar to those presented in this case.  For example, La. R.S. 9:2793.3 broadly limits the liability of the United Way or its licensed organizations where they have "gratuitously render[ed] any disaster relief or recovery services following a declared state of emergency . . . as a result of any act or omission in rendering assistance, relief, or recovery services . . ."  Another provision, La. R.S. 9:2793.9, limits the liability of certain non-profit tax-exempt organizations, "or any officer, employee, or volunteer thereof, who . . . gratuitously renders any disaster relief or recovery services during a declared state of emergency."  These provisions further support the absence of any analogous private liability in this case.

[17] The importance of this public policy in the State of Louisiana is further illustrated by the fact that the "Louisiana Health Emergency Powers Act" ("LHEPA"), La. R.S. 29:760-772, would also apply to limit private person liability under the "like circumstances" of this case.  Under LHEPA § 771, titled "Miscellaneous," subsection (B) "Liability," the Louisiana Legislature has clarified the distinction between provisions that focus on "state

the "[l]imitation of liability of owner or operator of facilities," LHSEADA § 733.1 was added to the Act

in 1999.  *See* 1999 La. Acts No. 598 ("Emergency Preparedness – Limitation of Liability of Owners or

Operators of Facilities Used For Emergency Shelters"); U.S. Ex. 12 (Enrolled 733.1/HB 1838).  On its

face, the signed version of the bill adding § 733.1 to the LHSEADA, states that this enactment, along with

a separate amendment to a different section of the LHSEADA,[18] together are meant "to provide for

limitation of liability of emergency personnel and owners and operators of facilities used for shelter in

emergencies" as well as "to provide for related matters.  U.S. Ex. 12.

  As summarized by one court, "[t]here is a marked paucity of caselaw interpreting state emergency

---

immunity" and those that apply to "private liability."  *Compare* La. R.S. 29:771(B)(1) (referencing La. R.S. 29:735),
*with* La. R.S. 29:733.1, *and* La. R.S. 29:771(B)(2)(a).  This portion of the LHEPA provides in pertinent part:

> (1) **State immunity**.  State immunity shall be determined in accordance with R.S. 29:735, which shall be
> applicable to this Chapter; (2) **Private liability**.  (a) During a state of public health emergency, any person
> owning or controlling real estate or other premises who voluntarily and without compensation grants a
> license or privilege, or otherwise permits the designation or use of the whole or any part or parts of such
> real estate or premises for the purpose of sheltering persons, together with that person's successors in
> interest, if any, shall not be civilly liable for negligently causing the death of, or injury to, any person on or
> about such real estate or premises under such license, privilege, or other permission, or for negligently
> causing loss of, or damage to, the property of such person.

La. R.S. 29:771(B).  The private liability provision contained in LHEPA § 771(B)(2)(a) tracks the language of
LHSEADA § 733.1, while at the same time clarifying the distinction between "private liability" statutes such as
LHSEADA § 733.1 and LHEPA § 771(B)(2)(a) versus "state immunity" statutes such as LHSEADA § 735(A).  As
discussed *infra*, just as the conditions of LHSEADA § 733.1 are satisfied, the conditions of LHEPA § 771(B)(2)(a)
are also satisfied by the "like circumstances" of this case.  In examining the language of the LHEPA provision, the
response to Hurricanes Katrina and Rita specifically qualifies as a "state of public emergency" as defined by the
statute.  LHEPA § 762 defines a "public health emergency" as "an occurrence or imminent threat of an illness or
health condition that . . . [i]s believed to be caused by any one of the following: . . . (iii) A disaster, including but not
limited to natural disasters such as hurricane, tornado, storm, flood, high winds . . ."  La. R.S. 29:762.  As stated in
LHEPA § 761, part of the purpose of the Act is to meet "the immediate emergency needs of the people of Louisiana,
specifically . . . shelter" and to restore "services essential to the health, safety, and welfare of the people of
Louisiana."  La. R.S. 29:761.  In the months and years following Hurricanes Katrina and Rita, a real health condition
existed in the form of mass-homelessness, displacement, and potential exposure to the elements due to the
widespread destruction of homes and other facilities.

  [18] The other LHSEADA amendment in 1999 La. Acts No. 598 served to amend and reenact La. R.S.
29:733(C)(art. 5), by adding an additional provision to the "Interstate Emergency Preparedness and Disaster
Compact," limiting the liability of emergency personnel working pursuant to the compact.

14

management statutes" such as the LHSEADA.[19]  *See Castille*, 896 So.2d at 1264 (discussing LHSEADA

§ 735); *see also Robin v. United States*, 2006 WL 2038169, at *2 (E.D. La. July 17, 2006) (Lemelle, J.)

(same).  To date, no case appears to have dealt with the private person immunity provision found in

LHSEADA § 733.1.[20]  Nonetheless, at least one court has remarked that based upon its "review of

emergency preparedness statutes in other states" it has found that courts generally provide protection from

suit to the fullest extent permitted by such statutes.  *See Robin*, 2006 WL 2038169, at *3 (citations

omitted).  This is in keeping with the notion that such statutes reflect fundamental policy choices that

have been made by state legislatures (balancing a compelling desire to encourage people to provide

assistance against a general policy of allowing people to seek redress through actions in tort).

---

[19] The few Louisiana cases interpreting the LHSEADA have almost entirely dealt with the immunity provision contained within La. R.S. 29:735(A)(1), which broadly provides for the immunity of agencies and personnel who engage "in any homeland security and emergency preparedness activities."  Unlike LHSEADA § 733.1, § 735 qualifies that its limitation on liability may only be conferred on agencies or personnel for activities conducted "while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter."  La. R.S. 29:735(A)(1).  It also significantly departs from LHSEADA § 733.1, in that the section only applies to "the state . . . any political subdivision thereof . . . other agencies . . . the agents' employees or representatives," whereas § 733.1 applies to "[a]ny person or organization, public or private."  *Compare* La. R.S. 29:735(A)(1), *with* La. R.S. 29:733.1.

[20] A 2008 opinion from the Office of the Attorney General of the State of Louisiana purports to discuss La. R.S. 29:733.1 (among other LHSEADA provisions), but focuses almost entirely on La. R.S. 29:735 and the discretionary immunity provision of La. R.S. 9:2798.  *See* La. Atty. Gen. Op., No. 08-0093.  The opinion stresses that the apparent legislative intent behind the LHSEADA was to "immunize anyone performing emergency activity who is acting in good faith."  *Id.* at *8.  It also recognizes that "[t]here are no cases directly on point regarding the other three sections (of the LHSEADA, including § 733.1]."  *Id.* at *24.  In briefly discussing § 733.1, the opinion notes that the provision was amended in 2006 to add "or household pets or service animals."  *Id.*  More importantly, during its discussion of this minor amendment, the Attorney General characterizes the section as granting immunity/non-liability to "**any person or entity** that gratuitously allows their property or facility to be utilized . . . in an emergency" (emphasis added).  *Id.* at *25-26.  Unlike a number of other sections in the LHSEADA, § 733.1 does not require that there be a "declared state of emergency" for its limitation on liability to take effect.  *See* La. R.S. 29:735.1-735.2.  The Attorney General's opinion stresses that:

> [T]he immunity provisions contained in the Act **must be broadly interpreted** to afford
> immunity to anyone who is engaged in any homeland security and emergency
> preparedness activity, except in cases of willful misconduct . . . [and that] . . . it is the opinion of this office
> that the relative immunity provisions contained in the law will apply to anyone who is engaged in any
> homeland security or emergency preparedness activity.

La. Atty. Gen. Op., No. 08-0093, at *28-29 (emphasis added).

**B.      Because The State Of Louisiana Has Chosen To Protect Private Persons Who Provide Free Emergency Shelter In Response To A Disaster From Negligence Liability, Louisiana Plaintiffs' FTCA Negligence Claims Lack Jurisdiction.**

As discussed *supra*, the United States may not be exposed to greater liability than a private person under "like circumstances." *See Woods,* 909 F. Supp. at 439 ("[I]f a similarly situated private individual would not be liable under [state law] then neither is the United States."). In assessing whether LHSEADA § 733.1 would preclude the negligence liability of a private person who, under similar circumstances, committed acts and omissions akin to those alleged to have been committed by the United States in this case, the Court need not look beyond the obvious meaning of LHSEADA § 733.1. Examining the plain language of the provision, a private person would not be liable to Plaintiffs under Louisiana law even under the strictest interpretation of "like circumstances." *See Olson*, 546 U.S. at 44; *Standefer v. United States*, 511 F.2d 101, 104 (5th Cir. 1975). As per the **private person** analogue required under the FTCA, the United States, through FEMA, must be considered within the province of LHSEADA § 733.1, because the statute applies to any "**person** or organization, public or **private**." *See* La. R.S. 29:733.1. Looking through the lens of analogous private liability, the United States' conduct in this case functionally – if not literally – satisfies the prerequisites for immunity from negligence liability under LHSEADA § 733.1. The United States, through FEMA, volitionally provided FEMA-owned premises for use by disaster victims (including Plaintiffs), at no cost, in direct connection with the continuing and real exigencies created by Hurricanes Katrina and Rita.

**1.      FEMA Owned Or Operated "Immovable Property Or Other Premises."**

LHSEADA § 733.1 limits the negligence liability of private persons who own or operate "immovable property or other premises." *See* La. R.S. 29:733.1. It is undisputed in this case that the United States, through FEMA, provided emergency housing units to thousands of homeless disaster victims across the Gulf Coast (including Plaintiffs) following Hurricanes Katrina and Rita. *See* Third

16

Supp. and Am. Admin. Master Compl. ¶¶ 124, 128, 171, 135.  In doing so, FEMA was sheltering disaster

victims through the use of FEMA-owned "premises" or "immovable property."  Such a conclusion is

consistent with the broad intent of the LHSEADA, as well as the nature of the emergency shelter that

FEMA was providing.  *See* La. Atty. Gen. Op., No. 08-0093, at *28-29 ("[T]he immunity provisions

contained in the Act [LHSEADA] must be broadly interpreted").

      "Other premises" describes a much broader category of property than what would be deemed

"immovable property."  It is used as a catch-all term in LHSEADA § 733.1.  As "emergency housing

units" intended for habitation, the FEMA-owned housing units at issue in this case fall within the "other

premises" designation as used in LHSEADA § 733.1.  Although the LHSEADA does not specifically

define the term "other premises," the term "premises" has been defined by the Louisiana Legislature on

other occasions.  In La. R.S. 9:2791 (dealing with the liability of an owner or occupant of property not

used primarily for commercial recreational purposes), "premises" is defined to include "lands, roads . . .

private ways and buildings, structures, machinery or equipment thereon."  *See Keelen v. State Dep't of

Culture, Recreation & Tourism*, 463 So. 2d 1287, 1290 (La. 1985) (noting that "premises" under the

statute includes "buildings, structures and machinery").  Also, in La. R.S. 13:4711(A)(6) (dealing with

public nuisances), "premises" is broadly defined as "any building, structure, land, watercraft, or

movable."  *See City of Denham Springs v. Perkins*, 10 So. 3d 311 (La. App. 1 Cir. 2009).  Various

sections of the Louisiana Administrative Code have defined "premises" in a very broad sense as any

"physical site."  *See* LAC 48:I.80 (describing health care "premises"); LAC 48:1.82 (describing hospice

"premises").  Given the broad meaning that has been applied to the term "premises" on other occasions,

the FEMA-owned emergency housing units that were provided to Louisiana Plaintiffs meet the "other

premises" language in LHSEADA § 733.1.  The housing units at issue were physical locations, installed

through connections to the land, and were occupied by individuals for shelter on a full-time basis, much

like a house or other type of building.[21]

Even assuming *arguendo*, that Louisiana Plaintiffs' emergency housing units did not qualify as "other premises," they would still constitute separate "immovable property" under Louisiana law given how they were installed.[22]  A FEMA EHU (in this instance, a travel trailer or park model)[23] would be considered a private corporeal thing subject to appropriation.  Whether it would be considered a movable or immovable (particularly given Louisiana Plaintiffs' allegations regarding how the units were installed) depends upon the degree of integration.  Tracts of land are quintessential immovables, but buildings and other structures (*e.g.*, individual condominiums) can be considered separate immovables when they are owned by someone other than the owner of the ground on which they rest.  *See* La. C.C. Art. 464 ("Buildings . . . are separate immovables when they belong to a person other than the owner of the ground.").  Given that, during the sheltering period, the FEMA-owned housing units were integrated into permanent utility systems (connected to the municipal electrical grid and sewage system) and incorporated into the ground (through anchors, tie-downs, and piers of block pilings), and that the units were both installed and uninstalled through the work of specialized contractors using mechanical means, the FEMA-owned housing units – as occupied – should be treated as the rough equivalent of a buildings and, thus, separate immovables under La. C.C. Art. 464 and Louisiana law.[24]  As installed, Plaintiffs'

---

[21] As alleged by Plaintiffs, the FEMA-owned housing units were "installed" and hooked to utilities for "residential purposes."  Third Supp. and Am. Admin. Master Compl. ¶¶ 160, 301, 308.  Housing units were installed and immobilized by raising each unit "several feet into the air and off of its wheel base, and setting it on concrete blocks."  *Id.* ¶¶ 157, 159, 296; *see, e.g.*, U.S. Ex. 13-15 (Deposition Excerpts describing the installation process).

[22] Based upon the civil law tradition, Louisiana law classifies things into a number of different categories based upon a variety of criteria.  *See* La. C.C. Art. 448 ("Things are divided into common, public, and private; corporeals and incorporeals; and movables and immovables.").

[23] Plaintiffs' FTCA claims against the United States involving mobile home units were dismissed through the Court's Order and Reasons, October 3, 2008, at 21 n.9 [Doc. No. 717].

[24] Although mobile homes and house trailers are generally considered movables under the Louisiana Civil Code and special legislation, these items can be classified as separate immovables under La. C.C. Art. 464 (particularly given the circumstances of this case where units were immobilized through an installation process).  *See* La. C.C. Art. 475, La. R.S. 32:710, La. R.S. 9:1149.3 (recognizing that a manufactured home can be installed in a manner which would make it an immovable, but treating manufactured homes as movables under a specific statute

18

FEMA-owned housing units could not be "moved from one place to another," as is required of a true "movable," without uninstalling the units through mechanical intervention.[25]  *See* La. CC. Art. 471. These housing units were set up to be inhabited at static locations throughout the sheltering period.

### 2.    FEMA Acted "Voluntarily And Without Compensation."

LHSEADA § 733.1 limits the negligence liability of private persons who "voluntarily and without compensation" allow their property or premises to be used as emergency shelters.  *See* La. R.S. 29:733.1.  In this case, it is undisputed that the United States, through FEMA, chose to provide rent-free emergency housing to otherwise homeless disaster victims (including Plaintiffs) in direct response to the effects of Hurricanes Katrina and Rita.  This provision of emergency housing was the "like circumstances" equivalent of a private person who "voluntarily and without compensation" provides shelter to victims in response to an emergency.  *See id.*  The Government, through FEMA, chose to provide emergency housing assistance to the victims of Hurricanes Katrina and Rita for over forty-four (44) months, without receiving (or asking for) any form of compensation in return.  *See* U.S. Ex. 11 (FEMA Release); U.S. Ex. 16 (Garrett Deposition Excerpts), at 36:12-13, 37:11-13 ("these units are provided at absolutely no cost to the disaster victims . . . Nothing came out of their pockets in terms of the requirements for this.  They paid no out-of-pocket costs for this.").  Thus, hurricane victims (including

---

for the purpose of mortgages and sales), La. R.S. 9:1149.4 (describing a manufactured home placed upon a lot or tract of land as an immovable under the statute if certain conveyance or mortgage records are recorded and it is "permanently attached to the lot or tract of land").  One Louisiana court has specifically held that a mobile home was a "building or other construction[ ]" within the meaning of La. C.C. Art. 464, and thus an immovable by its very nature.  *Ellis v. Dillon*, 345 So.2d 1241 (La. App. 1 Cir. 1977).  In this case, it is important to look at how the emergency housing units were installed and their purpose in assessing whether they qualify as separate immovables under La. C.C. Art. 464.  A building is not required to have its foundation in the soil to be considered a separate immovable under La. C.C. Art 464.  *See P.H.A.C. Services, Inc. v. Seaways Intl., Inc.*, 393 So. 2d 117 (La. App. 1 Cir. 1980), *affirmed*, 403 So. 2d 1199 (La. 1981) (applying various criteria, including whether the structure attached to the soil).

[25] Fact witnesses who have installed FEMA-owned emergency housing units have described how the units were anchored to the ground using straps and bolts.  *See* U.S. Ex. 13-15.  Plumbing and water lines were permanently attached to the municipal systems, and after installation, the units were not mobile without being uninstalled.  *Id.*  In addition, Plaintiffs have offered expert testimony (including the testimony of a "building scientist") throughout the course of this MDL that all travel trailer units are necessarily buildings.  U.S. Ex. 17-19; *see* U.S. Ex. 19 (Mallet Deposition Excerpts) 95:5-12 ("A travel trailer is just another building . . . It's a building.").

Plaintiffs) were allowed to use FEMA's property as emergency shelters without any direct monetary benefit or other form of consideration ever passing to FEMA.  This enabled victims to live rent-free while they attempted to recover from the continuing exigencies created by Hurricanes Katrina and Rita.

The United States, through FEMA, was not contractually obligated to provide this emergency shelter, nor was there any other form of outside agreement that compelled it to act.  The Government acted on its own volition and not for profit.  It made a conscious choice to allow its property to be used for the sheltering of disaster victims and allowed this use to continue for as long as the victims needed the shelter to cope with the consequences of Hurricanes Katrina and Rita.  Under the "like circumstances" test, the most reasonable private analogue to the Government's activity in this case meets the "voluntarily and without compensation" provision of LHSEADA § 733.1.

Because the inquiry under the FTCA is one of analogous **private** liability, it is dubious whether purported governmental duties are of any consequence in assessing whether the "voluntarily and without compensation" prerequisite of LHSEADA § 733.1 would be satisfied by a private person in "like circumstances" to the Government in this action.  *See Olson*, 546 U.S. at 44.  For instance, internal Government rules and regulations cannot translate to a private analogue.  (Any comparable action against a private person could not reference governmental duties in an attempt to avoid application of LHSEADA § 733.1).  Furthermore, even if a private entity had internal rules/charters/bylaws that outlined and discussed their intent to help disaster victims by providing free shelter following a disaster (including how and when they would provide such assistance), none of these internal provisions would vitiate the "voluntarily and without compensation" provision.  *See* La. R.S. 733.1.  There is no external force that obligates the United States to provide free shelter to disaster victims,[26] and, more importantly, there is no

---

[26] Any argument that the United States was required to provide emergency housing to Louisiana Plaintiffs in exchange for the collection of taxes is wholly without merit.  Because the inquiry is one of analogous private liability under similar circumstances, the Court must ignore the uniquely governmental nature of the United States' conduct in its attempt to find a reasonable analogue.  Regardless, FEMA's discretionary decision to provide direct housing to disaster victims is far too removed from individual taxpayer returns for such funds to ever be considered "compensation."  *See generally Flast v. Cohen*, 392 U.S. 83 (1968) (addressing taxpayer standing).  "[A] tax is not

obligation or duty (in the absence of a contract or similar arrangement – none of which was present in this case) that requires private persons to undertake such a task.

To the extent FEMA's statutory authority has any bearing on this inquiry regarding analogous private liability, the Stafford Act and its related implementing regulations are **permissive** in nature – they do not affirmatively require the provision of assistance. Nor does the Stafford Act mandate if/when/how FEMA should provide direct housing assistance following disasters. FEMA has retained full discretion to authorize the provision of emergency assistance.[27] *See Ridgley v. FEMA*, 512 F.3d 727, 736-37 (5th Cir. 2008) (in the context of rental assistance, describing the language of the Stafford Act and implementing regulations as permissive: "FEMA **may** provide assistance to individuals and households who qualify for such assistance" (emphasis in *Ridgley*)); Third Supp. and Am. Admin. Master Compl. ¶ 142 (citing the "**may**" language from the Stafford Act); 42 U.S.C. § 5174(c)(1)(B)(I) (FEMA "**may** provide temporary housing units, acquired by purchase or lease, directly to individuals or households" (emphasis added)).[28] In other words, while FEMA is permitted by statute to provide emergency housing assistance, a disaster victim does not have an automatic right to receive this assistance from FEMA.[29] This is true even when

---

an assessment of benefits," nor does it constitute consideration in exchange for services. *See Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 521-23 (1937). In addition, in the context of a private entity or charity, if a charity provided emergency shelter to a disaster victim who had previously made contributions to the charity, this alone would never amount to the "compensation" referenced in LHSEADA § 733.1.

   [27] Following Hurricane Andrew, plaintiffs in a suit against FEMA argued that FEMA was required to provide emergency housing to all eligible victims. After examining the Stafford Act, the *Lockett* Court concluded that the Act "clearly shows that assistance is discretionary, not mandatory . . . [t]he word 'may,' when used in a statute, usually implies some degree of discretion." *Lockett v. FEMA*, 836 F. Supp. 847, 854 (S.D. Fla. 1993).

   [28] *See also Johnson v. FEMA*, 2009 WL 1208639, at *1 (E.D. La. 2009, May 1, 2009) (Feldman, J.) (concluding "[b]ecause of its **institutional discretion**, FEMA's emergency housing assistance does not create an entitlement in the plaintiff to a property interest in that assistance") (emphasis added).

   [29] As this Court has explained, " . . . it should be noted that the Fifth Circuit recently held that the Stafford Act, and its accompanying regulations governing the Individual Assistance housing program, even for persons who qualify for housing assistance, does not, in and of itself, create an entitlement to housing assistance." Order and Reasons, December 29, 2008 [Doc. No. 1014] (citing *Ridgley*). Thus, based upon the Stafford Act and its implementing regulations, FEMA has unfettered discretion in deciding whether to provide emergency housing shelter, thus, making any decision to provide such housing a voluntary decision. This Court has also previously identified the permissive, rather than mandatory, nature of the Stafford Act and its housing provisions in its October

shelters are being offered to others victims who meet certain criteria.  *See Ridgley*, 512 F.3d at 736

("[T]he regulations nowhere provide that an individual has a right to receive assistance . . . [t]here is

simply no indication that the regulations constrain FEMA's discretion . . . no 'specific directives' limit

FEMA's discretion by compelling it to provide assistance . . .").  There is no obligation or mandate to

provide shelter, thus, any such provision by the United States, through FEMA, was of its own volition.

> ### 3.    FEMA Granted The "Use Of The Whole Or Part Of The Immovable Property Or Premises."

LHSEADA § 733.1 immunizes all private persons from negligence liability who, as

owners/operators of property or premises, do any one of the following three things: (1) grant "a license or

privilege"; (2) permit "the designation by the state or local homeland security and emergency

preparedness agency"; or (3) **grant the "use of the whole or part of the immovable property or**

**premises**" (emphasis added).  *See* La. R.S. 29:733.1.  It is undisputed in this case that the United States,

through FEMA, allowed thousands of homeless disaster victims (including Plaintiffs) to **use** FEMA-

owned emergency housing units (the "premises" or "immovable property") in direct response to

Hurricanes Katrina and Rita.  *See* Third Supp. and Am. Admin. Master Compl. ¶ 150.  It is Plaintiffs'

usage (occupancy) of these shelters that they now allege caused certain injuries.  *See id.* ¶¶ 179, 207.

> ### 4.    FEMA Did So "For The Purpose Of Sheltering Persons During An Actual . . . Emergency."

Under LHSEADA § 733.1, immunity from negligence liability attaches where a private

person's property or premises is used "for the purpose of sheltering persons . . . during an actual,

impending, mock, or practice emergency."  La. R.S. 29:733.1.  In this case, Plaintiffs plainly allege that

they were allowed to use FEMA-owned shelters in the context of what they describe as "the greatest

natural disaster in the history of the United States."  Third Supp. and Am. Admin. Master Compl. ¶¶ 128,

---

3, 2008, Order and Reasons regarding application of the FTCA's discretionary function exception.  *See* Order and Reasons, October 3, 2008 [Doc. No. 717], at 18; *see also Ridgley*, 512 F.3d at 736 (describing how mandatory language is wholly absent from the regulations that allow FEMA to provide assistance).

171.  Plaintiffs' occupancy of these housing units is inextricably linked with the continuing and actual exigencies created by Hurricanes Katrina and Rita.  As they have pleaded, Plaintiffs were provided the FEMA-owned shelters because "[t]he residence of each Named Plaintiff was rendered uninhabitable following Hurricanes Katrina and/or Rita" and each Plaintiff was left "homeless."  *Id.* ¶¶ 128, 171. Disaster victims (including Plaintiffs) were only allowed to continue living in these rent-free shelters for as long as they had nowhere else to go (until they were able to recover from the destruction wrought by Hurricanes Katrina and Rita and find alternative housing or rebuild).  *See* U.S. Ex. 9 (Emergency Shelter – Agreement to Rules of Occupancy) ("FEMA is providing this unit as a temporary shelter . . . and I [the disaster victim] am not able to live in my residence due to this event").  Through the Emergency Shelter Agreement, each disaster victim was to sign and agree that or she would "accept other housing options when they become available."  *Id.* ¶ 4.  Each person who continued to live in these FEMA-owned "**emergency housing units**" continued to do so in direct response to the unprecedented conditions caused by these natural disasters.

The LHSEADA specifically defines an "emergency" as "the actual or threatened condition which has been or may be created by a disaster."  La. R.S. 29:735.  Notably, the definition does not impose a specific temporal requirement, but rather relies on a "cause and effect" relationship between a disaster and the condition at issue.  *Id.*  "Disaster" is defined in the section as "the result of a natural or manmade event which causes loss of life, injury, and property damage, including but not limited to natural disasters such as hurricane . . . storm, flood, . . ." *Id.*  Because FEMA was providing shelter to disaster victims (including Plaintiffs) throughout the actual condition that was caused by the disaster – specifically, an immense void of housing stock in the affected-areas and a potential state of widespread homelessness – its actions were taken throughout an "actual emergency" as defined by the LHSEADA.

To date, FEMA continues to consider Hurricane Katrina (FEMA-1603-DR) and Hurricane Rita (FEMA-1607-DR) to be "active" major disasters in the State of Louisiana.  U.S. Ex. 10.  In the months

23

and years since the landfalls of these two storms, FEMA has provided free shelter to disaster victims as long as it has been considered essential to meet the immediate threats to life and property resulting from these disasters. Even after the immediate effects of the storms had passed, the looming exigent threats of mass-homelessness, displacement, and lack of shelter were very real and persisted for years. In this context, it would be unwarranted to argue that, at some point, FEMA's provision of emergency housing units became for "general purposes" rather than in direct response to an actual and specific "emergency." *See generally Banks v. Parish of Jefferson*, 990 So. 2d 26, 34 (La. Ap.. 5 Cir. 2008) (assessing whether state immunity under LHSEADA § 735 applied and finding that the section was intended to address actions taken pursuant to a "particular emergency" rather than general construction activity), *compare Clement v. Reeves*, 935 So. 2d 279, 285 (La. App. 3 Cir. June 28, 2006) (finding that state immunity under the LHSEADA did not apply in an automobile accident case where a state of emergency had ended and the connection between the conduct at issue – inspecting a warning sign – and the emergency was tenuous at best). In this case, it is indisputable that FEMA provided Louisiana Plaintiffs with emergency shelter (throughout their occupancy period) in response to a "specific disaster" (Hurricanes Katrina and Rita), thus, ranging far afield from cases where the activity in question might only be tangentially related to the emergency in question (*e.g.*, inspecting a warning sign or a pre-disaster construction project).

Although LHSEADA § 733.1 does not impose a requirement that a declaration be issued by a governmental body or agency for an "actual emergency" to exist for purposes of the provision, it is important to note that the Governor's proclamation declaring a state of emergency in Louisiana as a result of Katrina was recently extended, on limited grounds, through September 5, 2009. U.S. Ex. 1; U.S. Ex. 4; U.S. Ex. 5. Less than three months ago, this extension was granted "to further extend the state of emergency due to the continuation of emergency/disaster conditions" from Hurricane Katrina. *See* U.S. Ex. 5. Similarly, the State of Louisiana Department of Environmental Quality issued a declaration finding that an emergency existed as a result of Hurricane Katrina. U.S. Ex. 6. This declaration was

amended and extended numerous times.  As recently as this year, the State of Louisiana determined in "The Matter of Hurricane Katrina and its Aftermath," that "the emergency conditions [as amended and limited] . . . will continue to exist until at least March 31, 2009, in [certain parishes]."  U.S. Ex. 8.  Similar proclamations were issued years after the initial landfall in response to the continuing and far-reaching after-effects of Hurricane Rita.  *See* U.S. Ex. 20.

## <u>CONCLUSION</u>

As set forth above, the United States is in "like circumstances" to a private person who would be shielded from negligence liability under Louisiana law.  *See* La. R.S. 29:733.1.  Through the lens of analogous private liability, the most reasonable analogue to the Government in this case would satisfy the prerequisites for private person immunity under LHSEADA § 733.1.  Given Louisiana Plaintiffs' allegations and the undisputed facts of this case, FEMA (1) owned "immovable property or other premises"; (2) acted "voluntarily and without compensation"; (3) granted "use of the whole or part of the immovable property or premises"; and (4) did so "for the purpose of sheltering persons during an actual . . . emergency."  At a minimum, FEMA's activity functionally met the terms of LHSEADA § 733.1.  Thus, FEMA must be afforded the same protection as a private person under Louisiana law – it cannot be held liable in negligence "for the death of, or injury to, any person . . . solely by reason or as a result of the . . . use" of FEMA-provided emergency housing units.  La. R.S. 29:733.1.  Whether Plaintiffs choose to focus their FTCA negligence claims on FEMA's alleged failure to warn about the emergency housing units or its alleged failure to respond to safety concerns/complaints regarding the emergency housing units, Plaintiffs' negligence claims all center on alleged injuries that occurred as a result of their "use" and occupancy of these shelters throughout the course of the emergency response period.  A private person under similar circumstances would be immune from negligence liability under LHSEADA § 733.1.  As a result, Louisiana Plaintiffs' FTCA negligence claims against the United States must be dismissed for lack of subject-matter jurisdiction, pursuant to 28 U.S.C. §§ 1346(b) and 2674.

25

Dated:   November 12, 2009

Respectfully Submitted,

TONY WEST
Assistant Attorney General, Civil Division

HENRY T. MILLER
ADAM BAIN
Senior Trial Counsel

J PATRICK GLYNN
Director, Civil Division, Torts Branch

MICHELLE BOYLE
MICHELE GREIF
JONATHAN WALDRON
Trial Attorneys

DAVID S. FISHBACK
Assistant Director

OF COUNSEL:

*s/ Adam M. Dinnell*

ADAM M. DINNELL (TX No. 24055405)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20004
Telephone:  (202) 616-4211
Adam.Dinnell@usdoj.gov

Attorneys for Defendant United States

JORDAN FRIED
Associate Chief Counsel

JANICE WILLIAMS-JONES
Senior Trial Attorney
FEMA/DHS
Department of Homeland Security
Washington, D.C. 20472

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2009, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

*s/ Adam M. Dinnell*

ADAM M. DINNELL (TX No. 24055405)