UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION "N" (5)<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT RELATES TO:
ALL CASES ("Louisiana Plaintiffs")

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT UNITED STATES' STATEMENT OF FACTS IN SUPPORT OF ITS MOTION TO DISMISS THE FTCA NEGLIGENCE CLAIMS OF ALL "LOUISIANA PLAINTIFFS" FOR LACK OF SUBJECT MATTER JURISDICTION BASED UPON NO ANALOGOUS PRIVATE LIABILITY**

Defendant, the United States of America, hereby submits the following statement of facts in support of its motion to dismiss "Louisiana Plaintiffs'" Federal Tort Claims Act ("FTCA"), 28 U.S.C. §1346(b)(1), 2671-80, negligence claims for lack of subject-matter jurisdiction based upon no analogous private liability.

**STATEMENT OF FACTS**

1.  On August 29, 2005, Hurricane Katrina devastated the Gulf Coast of the United States. Three days before the storm struck, on August 26, 2005, the Governor of Louisiana issued Proclamation No. 48 KBB 2005, declaring a state of emergency for the State of Louisiana due to Hurricane Katrina. U.S. Ex. 1 (48 KBB 2005). On August 28, 2005, the Governor sent a letter to the President requesting that the President declare an expedited major disaster for the State of Louisiana in anticipation of Hurricane Katrina. U.S. Ex. 2 (Blanco Letter). On August 29, 2005, the day Hurricane Katrina made landfall, the President issued a declaration of a major disaster for the State of Louisiana (FEMA-1603-DR) based upon the damage caused by Hurricane Katrina. U.S. Ex. 3 (Fed. Reg. Notice).

2. The Governor of Louisiana renewed Proclamation No. 48 KBB 2005 on numerous occasions "to extend the state of emergency due to the extreme damage caused by Hurricane Katrina and the continuing disaster and emergency conditions in the most affected areas." *See, e.g.*, U.S. Ex. 4 (37 KBB 2006) (extending the state of emergency through July 22, 2006). As recently as August 6, 2009, the Governor again extended Proclamation No. 48 KBB 2005 (declaring a state of emergency for the State of Louisiana due to Hurricane Katrina) in limited form, through September 5, 2009. U.S. Ex. 5 (50 BJ 2009). This was done "to further extend the state of emergency due to the continuation of emergency/disaster conditions." *Id*.

3. In addition, on August 30, 2005, the State of Louisiana Department of Environmental Quality, pursuant to its authority under La. R.S. 30:2001, *et seq.*, issued a "Declaration of Emergency and Administrative Order," finding that an emergency existed as a result of Hurricane Katrina. U.S. Ex. 6 (Decl. of Em.). This declaration of emergency was amended and extended numerous times. *See, e.g.*, U.S. Ex. 7 (11th Am. Decl. of Em.) (finding that the emergency conditions regarding Hurricane Katrina and its aftermath continue to exist and extending the declaration of emergency and administrative order through September 30, 2007). In its "Fourth Extension of Twelfth Amended Declaration of Emergency and Administrative Order" regarding "The Matter of Hurricane Katrina and its Aftermath," the State of Louisiana found that "the emergency conditions [as amended and limited by recent declarations] . . . will continue to exist until at least March 31, 2009 in [certain parishes]." U.S. Ex. 8 (4th Ext. of 12th Am. Decl. of Em.).

4. On September 24, 2005, less than one month after Hurricane Katrina struck, Hurricane Rita made landfall. Four days before the storm struck, on September 20, 2005, the Governor of Louisiana issued Proclamation No. 53 KBB 2005, declaring a state of emergency for the State of Louisiana due to Hurricane Rita. *See* U.S. Ex. 20 (28 KBB 2006). On September 22, 2005, the Governor sent a letter to the President requesting that the President declare an expedited major disaster for the State of Louisiana

in advance of Hurricane Rita.  U.S. Ex. 23 (Blanco Letter 2).  On September 24, 2005, the day Hurricane Rita made landfall, the President issued a declaration of a major disaster for the State of Louisiana (FEMA-1607-DR) based upon the damage caused by Hurricane Rita.

     5.     The Governor of Louisiana renewed Proclamation No. 53 KBB 2005 on numerous occasions "to extend the state of emergency due to the extreme damage caused by Hurricane Rita and the continuing disaster and emergency conditions in the most affected areas."  *See, e.g.*, U.S. Ex. 20 (extending the state of emergency until June 22, 2006).  In addition, on September 27, 2005, the State of Louisiana Department of Environmental Quality, pursuant to its authority under La. R.S. 30:2001, *et seq.*, issued a "Declaration of Emergency and Administrative Order," finding that an emergency existed as a result of Hurricane Rita.  U.S. Ex. 21 (Decl. of Emergency).  This declaration of emergency was amended and extended numerous times.  U.S. Ex. 22 (Extension of Eight Am. Decl.).  On September 11, 2007, in its "extension of Eighth Amended Declaration of Emergency and Administrative Order" regarding "The Matter of Hurricane Rita and its Aftermath," the State of Louisiana found that the "emergency conditions set forth . . . regarding Hurricane Rita and its aftermath continue to exist and [require the extension of] said declaration of emergency and administrative order through September 30, 2007."  U.S. Ex. 22.

     6.     The Stafford Act, 42 U.S.C. § 5121, *et seq.*, was enacted by Congress in recognition that "disasters often cause loss of life, human suffering, loss of income, and property loss and damage . . . [and] . . . adversely affect individuals and families with great severity."  42 U.S.C. § 5121.  Under the Act, the President "may declare . . . that a major disaster or emergency exists," thus allowing FEMA to exercise its discretion to make assistance available.  The Executive, through FEMA, retains full discretion to determine and designate both the types of assistance that will be made available and who will be eligible for such assistance.  42 U.S.C. § 5170(b) ("Federal agencies may on the direction of the President, provide assistance . . . [including] . . . (B) search and rescue, emergency medical care, emergency mass care, emergency shelter . . . ").  This assistance may be provided for as long as it is

"essential to meeting immediate threats to life and property resulting from a major disaster." *Id*.  In addition, the Stafford Act allows, but does not mandate, that the Executive "**may provide** financial or other assistance . . . to respond to the disaster-related housing needs of individuals and households who are displaced from their predisaster primary residences or whose predisaster primary residences are rendered uninhabitable . . . as a result of damage caused by a major disaster." 42 U.S.C. § 5174(b)(1) (emphasis added).  Pursuant to this authority, FEMA is allowed, but not required, to provide direct housing assistance to disaster victims.  *See* 42 U.S.C. § 5174(c)(1)(B)(i).  The Stafford Act provides that FEMA "**may** provide temporary housing units, acquired by purchase or lease, directly to individuals or households" (emphasis added).  42 U.S.C. § 5174(c)(1)(B)(i).

7.      When FEMA provided a rent-free emergency housing unit to a victim of Hurricane Katrina or Rita, the occupant would sign an "Emergency Shelter - Agreement to Rules of Occupancy."  *See* U.S. Ex 9 (Agr. to Rules of Occ.).  The document required the disaster victim occupying the unit (as the person who was being provided the "Shelter Unit") to "acknowledge and understand that FEMA is providing this unit as a temporary shelter . . . and I am not able to live in my residence due to this event." *Id.*  The signed agreement specifically required the disaster victim to "accept other housing options, when they become available." *Id*.

8.      FEMA continues to consider Hurricane Katrina (FEMA-1603-DR) and Hurricane Rita (FEMA-1607-DR) to be "active" major disaster.  U.S. Ex. 10 (FEMA Disaster Sheet).  FEMA's provision of free emergency housing for the victims of Hurricanes Katrina and Rita concluded on May 1, 2009.  U.S. Ex. 11 (FNF-09-009).  FEMA exercised its discretion and volitionally provided direct housing assistance to disaster victims for up to forty-four (44) months. *Id.*  The FEMA-provided emergency housing units, by their very nature, were only made available to victims displaced by the storms because of the "major disaster or emergency" and only continued to be made available based upon a finding that they were necessary to respond to the immediate threats from an emergency or disaster.  *See*

*supra* at ¶5.

9.     David Garratt, the Acting Deputy Administrator of FEMA, has testified that the FEMA housing units provided after Hurricanes Katrina and Rita were "provided at absolutely no cost to the disaster victims . . . Nothing came out of their pockets in terms of the requirements for this. They paid no out-of-pocket costs for this." U.S. Ex. 16, Garratt Depo. 36:12-13, 37:11-13.

10.     The FEMA housing units were installed by the Government's contractor, or second/third tier sub-contractors. U.S. Ex. 15, Blanchard Depo. 15-18/16-19. The trailers were installed raised off the ground on six piers/blocks and anchored to the ground by four straps. U.S. Ex. 13, H. Allen Depo. 90-92:18-16; 143-45:22-18; U.S. Ex. 14, T. Allen Depo. 30-34:6-7; 85:2-15; U.S. Ex. 15, Blanchard Depo. 21-22:24-10; 62-65:12-16; 69-71:13-5; 77-78:18-1. The straps were anchored to concrete using special bolts. U.S. Ex. 15, Blanchard Depo. 69-71:13-15. The plumbing was tied into the public sewer system and water line. U.S. Ex. 13, H. Allen Depo. 77-78:2-14; 147-48:22-12; U.S. Ex. 14, T. Allen Depo. 34-35:19-19; 40-41:6-14; 68:1-11; U.S. Ex. 15, Blanchard Depo. 75-77:14-17; 88-89:11-7; 121-22:11-24. Wooden steps were built for the trailers and they were also anchored to the ground. U.S. Ex. 13, H. Allen Depo., 71:5-18; U.S. Ex. 14, T. Allen Depo. 30-34:6-7; 34-35:19-19; U.S. Ex. 15, Blanchard Depo. 7:2-18; 88-89:11-7. The trailers were also connected to the public electric grid. U.S. Ex. 13, H. Allen Depo. 147-48:22-12; U.S. Ex. 14, T. Allen Depo. 27-28:18-22; 40-41:6-14; 68:1-11; U.S. Ex. 15, Blanchard Depo. 75-77:14-17; 88-89:11-7. The actual installation of a trailer took between one to four hours depending on the site – and the trailer was not moveable once installed until it was subsequently uninstalled. U.S. Ex. 13, H. Allen Depo., 90-92:18-16; U.S. Ex. 14, T. Allen Depo. 99:5-23; U.S. Ex. 15, Blanchard Depo. 238-40:24-3.

Dated:   November 12, 2009                                              Respectfully Submitted,

TONY WEST                                                                            HENRY T. MILLER
Assistant Attorney General, Civil Division                       ADAM BAIN
                                                                                                  Senior Trial Counsel

| | |
|---|---|
| J PATRICK GLYNN<br>Director, Civil Division, Torts Branch | MICHELLE BOYLE<br>MICHELE GREIF<br>JONATHAN WALDRON |
| DAVID S. FISHBACK<br>Assistant Director | Trial Attorneys |
| OF COUNSEL: | *s/ Adam M. Dinnell*<br>ADAM M. DINNELL (TX No. 24055405) |
| JORDAN FRIED<br>Associate Chief Counsel | Trial Attorney<br>United States Department of Justice<br>Civil Division, Torts Branch |
| JANICE WILLIAMS-JONES<br>Senior Trial Attorney<br>FEMA/DHS<br>Department of Homeland Security<br>Washington, D.C. 20472 | P.O. Box 340, Ben Franklin Station<br>Washington, D.C. 20004<br>Telephone:  (202) 616-4211<br>Adam.Dinnell@usdoj.gov |
| | Attorneys for Defendant United States |

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 12, 2009, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

                                            *s/ Adam M. Dinnell*
                                            ADAM M. DINNELL (TX No. 24055405)