**KENNETH R. LAUGHERY, Ph.D.**
**3050 CLAIRE COURT**
**JANESVILLE, WI 53548**

**Telephone:  (608) 754-0849**       email: laugher@ruf.rice.edu
**Facsimile:   (608) 754-1082**

July 15, 2009

Ms. Linda J. Nelson
Lambert & Nelson
701 Magazine Street
New Orleans, LA 70130-3629

  RE: Dubuclet vs. Fleetwood, Fluor and FEMA

Dear Ms. Nelson:

  You requested a report of my analysis and opinions regarding the human factors and warnings issues in the Dubuclet vs. Fleetwood, Fluor and FEMA case. This letter is my report.  I reserve the right to amend this report as additional relevant information becomes available.


**Qualifications and Bases For Opinions**

  My analyses and opinions are based on my education, training and experience, my review of relevant materials in the case, and a substantial body of scientific, peer-reviewed, published empirical research.

  Following is a summary of some of my relevant background and qualifications.

  Regarding my education, I received a Bachelor of Science degree in Metallurgical Engineering in 1957, a Masters of Science in Psychology in 1959, and a Ph.D. in Psychology in 1961.  All three degrees are from Carnegie-Mellon University.

  Regarding employment, while on active military duty during 1962-1963, I worked as a Research Psychologist at the US Army Human Engineering Laboratories at Aberdeen Proving Ground, Maryland.  From 1963 through 1972 I was on the faculty at the State University of New York at Buffalo where I held a joint appointment in the Departments of Psychology and Industrial Engineering.  While on sabbatical leave from Buffalo, I was a Visiting Professor at the University of Sussex in England during 1969-1970.  Also while at Buffalo, I was Chair of the Industrial Engineering Department in 1967-1969.  In 1972 I became Professor and Chair of the Psychology Department at the University of Houston, where I remained until 1984.  In 1984 I joined the faculty at Rice University as an Endowed Chair Professor of Psychology. I was Chair

DUB000588

Linda J. Nelson
Dubuclet vs. Fleetwood, et al.
Page 2

of the Psychology Department at Rice from 1987 through 1990. I retired from Rice in 2002, and I currently have the title of Emeritus Professor. In recent years my teaching responsibilities included graduate and undergraduate courses in human factors and ergonomics, human factors methodology, human reliability and safety.

I am a certified Human Factors Professional. I have been President of the national Human Factors and Ergonomics Society. Over the years I have participated in research funded through an assortment of grants and contracts, including contracts funded by a major automobile manufacturer and other large industrial corporations. I have evaluated and published research on topics including the design and effectiveness of product instructions, warnings and labels as well as research involving industrial accident analysis.

I have edited/authored three books on warnings and a book on information technology. My research has been published in peer-reviewed journals, and I have authored or co-authored over 140 articles. Some of the relevant peer-reviewed publications include:

- Wogalter, M.S., DeJoy, D.M. and Laughery, K.R. (Eds.) Warnings and Risk Communication. London, Taylor & Francis, 1999.

- Wogalter, M.S. and Laughery, K.R. Warnings and hazard communications. In Salvendy (Ed.), Handbook of Human Factors and Ergonomics, Third Edition. New York, Wiley, 2006, 889-911.

* Laughery, K.R. Safety communications: Warnings. Applied Ergonomics. 2006, *37*, 467-478.

- Laughery, K.R. and Paige-Smith, D. Explicit information in warnings. In Wogalter, M.S. (Ed.) Handbook of Warnings, Mahwah, New Jersey, Erlbaum, 2006, 419-428.

- Laughery, K.R. and Wogalter, M.S. Designing Effective Warnings. In Williges (Ed.), Reviews of Human Factors and Ergonomics, Volume 2. Santa Monica, Human Factors and Ergonomics Society, 2006, 241-271.

A list of other articles and technical reports is in my Curriculum Vitae. I have offered expert testimony in various state and federal courts throughout the country on issues within my field of expertise.

My fee for work as an expert is $400.00 per hour.

DUB000589

Linda J. Nelson
Dubuclet vs. Fleetwood, et al.
Page 3

My analysis has included a review of the following materials:

Plaintiffs' First Supplemental and Amending Complaint
Plaintiffs' Second Supplemental and Amending Complaint
Dr. Patricia Williams' Expert Report regarding Alexander, et al. vs. Gulf Stream Coach, Inc., et al.
Dr. Lila Laux's Expert Report regarding Alexander, et al. vs. Gulf Stream Coach, Inc., et al.
Affidavit of James P. Kornberg, M.D., SC.D. regarding Alexander, et al. vs. Gulf Stream Coach, Inc., et al.
Affidavit of Patricia M Williams, Ph.D. DABT regarding Timia Dubuclet
Affidavit of Stephen Smulski, Ph.D.
Affidavit of Mary C. Devany Concerning in RE: FEMA Trailer Formaldehyde Products Liability Litigation
Fleetwood's Owner's Manual dated 2006
Plaintiff Fact Sheet (Elisha Dubuclet)
Memorandum – Meeting interview with Elisha Picot Dubuclet, 6/18/09
Photographs showing various labels and stickers on the trailer
FEMA Storage Site Duties/Responsibilities, Bates #s FLE-0000-1943 - 1945
Deposition of Elisha A. Dubuclet o/b/o Timia Dubuclet, September 17, 2008

The methodology employed in my analysis and formulation of opinions involves methods that are based on my education, training and experience and that are generally accepted by experts in the field of human factors and warnings.

**Understanding and Assumptions**

Based on the above review and analysis, I have the following understanding and/or assumptions regarding the incident:

1. In June, 2006 Elisha Picot Dubuclet (dob 3/14/67) moved into a trailer provided by the Federal Emergency Management Agency (FEMA). The trailer was located at 6046 Dorethea Street, New Orleans, LA. Other occupants of the trailer were her son Timothy (dob 5/29/94), her daughter Timia (dob 9/26/98), and her mother Leslie Picot (dob 10/14/45). The family lived in the trailer until September, 2007.

2. FEMA contracted for the trailer to be provided to people who were homeless as a result of the Katrina and Rita hurricanes. Elisha Dubuclet qualified for the program. The 2006 model trailer was manufactured by Fleetwood. It was picked up, delivered

Linda J. Nelson
Dubuclet vs. Fleetwood, et al.
Page 4

and installed by Fluor Enterprises, Inc. (Fluor).  To the best of Elisha Dubuclet's knowledge, the trailer had not been used previously; it was new on arrival.

3. The travel trailer was designed for use as a recreational trailer, not as permanent housing.  However, it was provided by FEMA to serve as permanent housing for victims of the Katrina hurricane.  A label on the trailer, see Exhibit A, clearly stated that this was an "Emergency Living Unit" and that is was "not intended for recreational purposes."

4. The FEMA Storage Site Duties/Responsibilities document contained the following information:

   Plant Production Process:
   The Storage Site unit transfer process will begin with steps that are conducted at the plants.  To ensure that the Fleetwood Representative can efficiently and effectively facilitate the transfer of the unit at the Storage Site the following steps need to be fulfilled by the plant:

   (The following bullet point was listed)

   - **DO NOT INCLUDE** any warranty information with the unit packet, including the HOME OWNERS MANUEL (sic).

5. Elisha Dubuclet reported that she did not receive a Fleetwood Owner's Manual with the trailer.

6. There were trailer problems of walls cracking and mold during the period the Dubuclet family occupied the trailer.

7. Formaldehyde vapors were released into the travel trailers provided by FEMA, including the trailer occupied by the Dubuclet family.  In circumstances of permanent occupancy, such formaldehyde concentrations can cause health hazards, especially to children.

8. Although unpleasant odors were detected in the trailer by the Dubuclet family, they did not interpret or associate the smells with the formaldehyde hazard.

9. There were several labels or signs posted on the trailer.  Only one of the posted labels addressed the formaldehyde hazard associated with the trailer.  The relevant label, see Exhibits B and C, was posted on the inside of the medicine cabinet door.  The size of the label was 3 ½ inches by 6 inches.

Linda J. Nelson
Dubuclet vs. Fleetwood, et al.
Page 5

10. Page 03-1 of the 2006 Fleetwood trailer Owner's Manual (see Exhibit D) contained information and warnings regarding the formaldehyde hazard associated with the trailer.

11. Page 05-4 of the 2006 Fleetwood trailer Owner's Manual contained the following passage:

> **NOTE**
> Your trailer is not designed to be used as permanent housing. Use of this product for long-term or permanent occupancy may lead to premature deterioration of structure, interior finishes, fabrics, carpeting and drapes. Damage or deterioration due to long term occupancy may not be considered normal, and may under the terms of the warranty constitute misuse, abuse, or neglect, and may therefore reduce your warranty protection.

12. There were no smoking, drinking or drugs issues associated with Elisha Dubuclet or the children.

**Opinions**

Based on the above understanding and/or assumptions and my review of the materials listed above, I have the following opinions:

1. The formaldehyde health hazards and consequences associated with permanent occupancy of the Fleetwood trailer are not open or obvious. Indeed, the hazards are technical in nature, and concern issues of chemical vapors, toxicology, and biological/medical reactions. Thus, it is imperative that an adequate warning system be provided to potential occupants in order for informed decisions to be made regarding the manner in which the trailer is used or if it is used at all.

2. The warning system associated with the trailer regarding formaldehyde was inadequate. Ms. Dubuclet reported that Fleetwood and Fluor failed to provide the Owner's Manual with the trailer; thus, any information or warnings in the Owner's Manual regarding formaldehyde were not available to her or her family. Further, the information regarding formaldehyde that was in the Owner's Manual failed to address the human carcinogen consequence of exposure.

Linda J. Nelson
Dubuclet vs. Fleetwood, et al.
Page 6

Only one of the labels posted in the trailer addressed the formaldehyde hazard, and it was located on the inside of the medicine cabinet door. One of the important criteria for warning design is that the warning should be conspicuous; that is, it should attract attention and be noticed. Location is a critical factor on whether warnings are noticed, and the location of the label was completely inappropriate and inadequate. Indeed, if one wanted to hide it, the inside of the medicine cabinet would have been a good place to put it. Not surprisingly, the label was not noticed by Ms. Dubuclet. The label should have been located in a prominent place, such as on the inside of the trailer entry door or prominently displayed in the kitchen. In addition to conspicuity considerations, placement of the label on a kitchen cabinet is consistent with the principle of placing the warning at or in close proximity to the hazard. The metal medicine cabinet is not a source of formaldehyde vapors, and in this regard the warning was inappropriately located.

The label on the inside of the metal medicine cabinet also failed in one other important respect; namely, it did not provide explicit instructions as to how the formaldehyde hazard should be addressed. It employed the following statements: "Proper ventilation should reduce the risk of such problems" and "Use with adequate ventilation". These are classic examples of non-explicit statements that do not provide useful information. Further, the following statement was located at the bottom of the posted label:

> Ventilation is important in maintaining a comfortable environment and we direct your attention to the discussion of ventilation contained in your Owner's Manual.

Two points regarding the above statement are relevant. First, it associates the ventilation issue with comfort, not with the formaldehyde hazard. Second, it refers the person to the Owner's Manual that was not provided.

All three of the warning statements in the label start with the phrase "This product." Given that the label is affixed to the metal medicine cabinet and that this cabinet is not a source of formaldehyde vapors, the warning statements are misleading and confusing.

It should be noted that the warning statements in the medicine cabinet label do not address the human carcinogen consequence of exposure to formaldehyde.

3. Elisha Dubuclet's decision to live in the trailer with her family was reasonable in the context of the circumstances and the information provided.

DUB000593

Linda J. Nelson
Dubuclet vs. Fleetwood, et al.
Page 7

4. The label on the trailer, see Exhibit A, clearly stated that this was an "Emergency Living Unit" and that it was "not intended for recreational purposes." Yet, the first sentence in the NOTE on page 05-4 of the Owner's Manual stated "Your trailer is not designed to be used as permanent housing." The label characterizing the trailer as an Emergency Living Unit, the "hidden" location of the warning label in the medicine cabinet, and the failure to provide the Owner's Manual, constitute a misleading and inadequate warning system. Fleetwood, Fluor and FEMA knew that the trailer was not designed for permanent occupancy and that foreseeable levels of formaldehyde in the trailer in circumstances of permanent occupancy were hazardous.

5. A warning system should have been provided by the defendants to inform Elisha Dubuclet about the formaldehyde hazard, its potential consequences, and instructions regarding if and/or how the trailer could be safely occupied on a permanent basis. At a minimum, the warning system should have included instructions such as those in Title 24 CFR 3280.309 Health Notice on formaldehyde emissions. [49 FR 32012, August 9, 1984, as amended 54 FR 46049, November 1, 1959; 58 FR 55007, October 25, 1993]. The Health Notice is shown below:

**3280.309 Health Notice on formaldehyde emissions**
(a) Each manufactured home shall have a Health Notice on formaldehyde emissions prominently displayed in a temporary manner in the kitchen (i.e., countertop or exposed cabinet face). The Notice shall read as follows:

IMPORTANT HEALTH NOTICE

Some of the building materials used in this home emit formaldehyde. Eye, nose, and throat irritation, headache, nausea, and a variety of asthma-like symptoms, including shortness of breath, have been reported as a result of formaldehyde exposure. Elderly persons and young children, as well as anyone with a history of asthma, allergies, or lung problems, may be at greater risk. Research is continuing on the possible long-term effects of exposure to formaldehyde.

Reduced ventilation resulting from energy efficiency standards may allow formaldehyde and other contaminants to accumulate in the indoor air. Additional ventilation to dilute the indoor air may be obtained from a passive or mechanical ventilation system offered by the manufacturer. Consult your dealer for information about the ventilation options offered with this home.

**DUB000594**

Linda J. Nelson
Dubuclet vs. Fleetwood, et al.
Page 8

> High indoor temperatures and humidity raise formaldehyde levels. When a home is to be located in areas subject to extreme summer temperatures, an air-conditioning system can be used to control indoor temperature levels. Check the comfort cooling certificate to determine if this home has been equipped or designed for the installation of an air-conditioning system. If you have any questions regarding the health effects of formaldehyde, consult your doctor or local health department.

(b)  The Notice shall be legible and typed using letters at least ¼ inch in size. The title shall be typed using letters at least ¾ inch in size.

The aforementioned Health Notice information was known and available to Fleetwood (in the manufactured housing industry) and to FEMA ( a U.S. Government entity). It was certainly feasible for them to have incorporated such a notice in their EHU's.

                                    Sincerely,

                                    *Kenneth R. Laughery*

                                    Kenneth R. Laughery, Ph.D.