UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCTS LIABILITY LITIGATION

MDL NO. 1873

SECTION N-5
JUDGE ENGELHARDT
MAG. JUDGE CHASEZ

THIS DOCUMENT RELATES TO: ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ** * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT UNITED STATES OF AMERICA'S SUPPLEMENTAL
MEMORANDUM IN RESPONSE TO PLAINTIFFS' "MOTION TO COMPEL
UNITED STATES TO PRODUCE 'DISASTER' AND/OR INDIVIDUAL
ASSISTANCE FILES MAINTAINED BY FEMA" (Rec. Doc. 2554)**

INTRODUCTION

Defendant United States of America ("United States") submits this supplemental response to the Plaintiffs Steering Committee ("PSC") "Motion to Compel United States to Produce 'Disaster' and/or Individual Assistance Files Maintained by FEMA" ("Motion to Compel") (Rec. Doc. 2554). Pursuant to Fed. R. Civ. P. 26(b)(2)(B) and 26(b)(2)(C)(iii) the Court should deny PSC's motion because: (1) the evidence elicited at Ms. Faye Green's deposition demonstrates that the electronic information PSC seeks from FEMA – nearly 5,000 Individual Assistance files ("IA Files") from the Federal Emergency Management ("FEMA") NEMIS database[1] – are not reasonably accessible because of undue burden and cost, and (2) the information sought can be obtained more efficiently, at less cost, and at substantially less burden from FEMA's Response Recovery Applicant Tracking System ("FRRATS") database, which has

---

[1] At Ms. Green's deposition PSC indicated that they now seek production of 8,500 IA Files. *See* Exh. 1, Green Depo at P58:L9 - P58:L15. Further, PSC has identified 65,000 claimants in this litigation and in all likelihood, should the Court grant this motion, PSC will seek IA Files for all of these persons. *See* Joint Report No. 13 § V at 3-5 (Rec. Doc. 5959).

been made available to PSC since May 2008. Accordingly, the Court should deny PSC's Motion to Compel, or alternatively, shift costs and require PSC to pay FEMA the actual costs associated with hiring, training, and employing temporary workers to produce the requested IA Files.

## FACTS

1. Ms. Faye Green is the Manager for FEMA's National Processing Service Center ("NPSC"), located in Hyattsville, MD. *See* Exh. 1, Green Depo. P12:L11 - P12:L13.

2. Individual Assistance information relating to disaster victims is maintained by FEMA in the National Emergency Management Information System ("NEMIS") database. The NPSC is responsible for conducting and processing requests for information from NEMIS, and it is the only location capable of producing IA Files. *See* Exh. 1, Green Depo. P79:L5 - P80:L6. NEMIS is an interactive database that contains information relating to all persons who have applied and/or received disaster aid from FEMA in response to a disaster. *See Id.* at P81:L20 - P82:L5.

3. As manager of the NPSC, Ms. Green is familiar with how information is stored in the NEMIS database, the process involved in identifying and extracting information from the database, *i.e.*, creation of an IA File, and the costs and burden associated with the creation and production of an IA File. *See* Exh. 1, Green Depo. P80:L20 - P81:L3; P15:L8 - P15:L18; P78:L6 - P78:L14; P79:L22 - P80:L6; P134:L17 - P136:L12.

4. FEMA has four or five employees tasked and assigned responsibility for identifying, extracting, and preparing IA Files. *See Id.* at P73:L14 - P74:L12. Approximately twenty (20) percent of these employees' duties involve disaster response activities unrelated to fulfilling IA File requests. *See Id.* at P73:L14 - P74:L12; P100:L3 - P100:L6; P100:L22 -

P101:L3. A significant amount of the employees' time associated with IA File requests is dedicated to responding to priority requests sought in conjunction with criminal investigations. *See Id.* at P98:L8 - P98:L18. During a major disaster response, such as a hurricane, these employees cease production of IA Files and assist in disaster response activities full time. *See Id.* at P100:L10 - P101:L3.

5.  Although Ms. Green supervises over 350 employees at the NPSC, these employees all have other duties and responsibilities unrelated to fulfilling IA File requests. *See Id.* at P73:L14 - P74:L12. Transferring and training any of these persons to conduct NEMIS database searches for purposes of responding to PSC's discovery requests would impair and prevent the NPSC from completing its Congressionally mandated mission to provide disaster assistance. *See Id.* at P73:L14 - P74:L12; P100:L22 - P101:L3; P78:L15 - P79:L4.

6.  It takes a FEMA employee approximately one hour to locate, extract, and create a complete IA File. *See* Exh. 1, Green Depo. at P131:L13 - P132:L2.[2] The manner in which information is stored and maintained in the NEMIS database does not allow for it to be electronically downloaded and transferred. *See Id.* at P82:L12 - 83:L6. Special software must be utilized to identify potentially responsive information, and the each and every computer screen containing responsive information must be individually printed. *See Id.* at P83:L4 - P83:L12. Once the responsive information is identified and printed, it is separately scanned –

---

[2]   Information in the NEMIS database is organized by state and disaster number. As a result, a claimant will have more than one IA Files if they have submitted claims for more than one disaster, or submitted claims for the same disaster in more than one state. *See* Exh. 1, Green Depo, P:108:L12 - P110:L1. For example, an applicant who lived for a period of time in Louisiana and for a period of time in Mississippi, and suffered damage from both Hurricanes Katrina and Rita could have four IA Files. *Id.* In such a case it would take FEMA approximately four hours to produce that claimants' IA Files. *Id.*

and that product is an IA File.  *See Id.* at P130:L16 - P131:L12.

7. Contrary to PSC's assetion, it takes a FEMA employee approximately fifty minutes, not forty minutes as PSC asserts, if the NEMIS database search is restricted to four of twelve information categories in the NEMIS database.  PSC Supp. Memo at 3 (Rec. Doc. 6002). This is because those four categories take approximately forty (40) minutes to complete; however, an additional ten (10) minutes are required to assemble, review, stamp, certify as accurate, scan the information into an electronic format, and burn onto a CD.  *See* Exh. 1, Green Depo. at P39:L11 - P140:L17; P130:L16 - P131:L22.

8. Given current Congressional appropriations and funding levels, NPSC does not have the ability to hire an outside contractor or temporary employees to process PSC's request for 5,000 IA Files and, even if such funding was available, it is unlikely that the files could be produced promptly given logistics and security issues associated with hiring an outside contractor and/or temporary employees.  *See Id.* at P73:L14 - P74:L12; P134:L17 - P136:L21.

9. Since July 2008, the United States has responded to informal requests from the parties and voluntarily produced IA Files on individuals selected by PSC to serve as putative class action representatives and for persons selected to serve as Bellwether Trial plaintiffs.  *See* Joint Report No. 13 § V at 3-5 (Rec. Doc. 5959).

10. Information relating to FEMA issued travel trailers, (hereinafter referred to as temporary emergency housing units or "EHUs") are maintained in FEMA's FRRATS databases. FRRATS databases are disaster-specific databases created for use during major disasters, such as Katrina and Rita, to track EHUs.  The database contains information regarding the identify of an EHU issued to an applicant, the date issued, and the date the unit was returned to FEMA.  For

Hurricanes Katrina and Rita, there is a Louisiana FRRATS, a Mississippi FRRATS, an Alabama FRRATS, and a Texas FRRATS database.

11. Since May 2008, the United States has offered to search the various FRRATS databases to identify the EHU that was issued to PSC's clients. Since January of this year – when PSC submitted its first "matching" request – PSC has submitted more than 65,000 names and FEMA has identified the vehicle identification number ("VIN") and FEMA barcodes for EHUs issued to these individuals. *See* Joint Report 13, at § V at 3-5 (Rec. Doc. 5959).

12. Using the VIN number and the VIN Manufacturer Key produced by the Defendant Manufacturers (and is also publically available online), PSC can determine the identity of the manufacturer of the EHU that was issued to their clients. *Id.*

13. In addition, the United States has produced a searchable spreadsheet that allows PSC, using the VIN number, to determine the identity of the Individual Assistance/Technical Assistance Contractor ("IA/TAC") that installed their clients' EHU. *Id.*

14. To date, PSC has not proffered any instance of FEMA supplying inaccurate VIN and/or FEMA barcode numbers. Further, when PSC has identified concerns that a client was not matched with a VIN number or that the VIN number was inaccurate, the parties have met and conferred and successfully resolved the matter. Generally, the lack of a match results from PSC failing to provide information FEMA needed to conduct a FRRATS search (essential information required by FEMA is the PSC's clients' FEMA Identification Number and location where the unit was installed and occupied – and other information that facilitates the search includes address where the EHU was installed and the claimants social security number). The other reason a "match" sometimes cannot be made is because the EHU that the claimant

5

occupied was issued to the claimant's spouse, parent, relative, and or an unrelated friend. These issues have been resolved by PSC consulting with their clients to determine the identity of the person who was issued the EHU and then submitting to FEMA the required information on that individual. *Id.*

## STANDARD OF REVIEW

Under Rule 26(b)(2)(C), a Court must limit discovery otherwise permitted if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C).

Under Rule 26(b)(2)(B) "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). In such an instance, "[o]n motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." *Id*. Upon such a showing, "the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." *Id.* However, the court may specify conditions for the discovery, including shifting of the costs of that discovery to the party requesting discovery where doing so would protect the producing party from undue burden or expense. *See Surplus Source Group, LLC v. Mid America Engine, Inc.*, 2009 WL 961207, (E.D. Tex. 2009) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358,(1978)).

In *Oppenheimer*, the United States Supreme Court recognized that while the presumption under the discovery rules normally require that the responding party bear the costs of complying with discovery requests, the district court has discretion to protect the producing party from undue burden or expense by conditioning discovery on the requesting party's payment of the costs of discovery. *Oppenheimer*, 437 U.S. at 358. This is especially true, according to the *Oppenheimer* Court, where the defendant's case will not be advanced by performing such tasks. *Id.*

## ARGUMENT

I. **PSC's Motion To Compel Should Be Denied Because The Electronic Information Sought Is Not Reasonably Accessible, Production Of The Information Is Unduly Burdensome, And The Information Sought Is Duplicative Of Information Already Produced Or Available To PSC Upon Request.**

As Ms. Green confirmed at her deposition, the electronic information PSC seeks – IA Files for 5,000 clients – possibly 8,500 clients or potentially 65,000 clients, given PSC's representations at the deposition and number of discovery requests already submitted to the United States – is not reasonably accessible and production of that information is unduly burdensome. *See* Exh. 1, Green Depo. At P73:L14 - P74:L12; P100:L22 - P101:L3; P78:L15 - P79:L4. Simply put, to extract the requested information from the NEMIS database, takes approximately one-hour per claimant.[3] *Id.* at P131:L13 - P132:L2. The process requires a

---

[3] If FEMA dedicated one employee full time to produce IA Files for PSC it would take that employee 125 weeks, or two years and five months to produce the 5,000 IA Files. If PSC were to seek IA Files for all identified clients in this litigation (which they have indicated that they intend to do if successful on this motion) – approximately 65,000 persons – it would take that FEMA employee 1625 weeks, or more than 30 years to produce the materials.

Further, even if the PSC were to modify their request and only seek production of four of the twelve categories of information contained in the NEMIS database, this would reduce the amount of time required to produce each file from one hour or sixty (60) minutes to fifty (50) minutes. In practically

FEMA employee trained on the NEMIS database to search for and identify potentially responsive information, extract and print that information, and scan the responsive materials. *See Id.* at P39:L11 - P140:L17; P130:L16 - P131:L22.  Thus, the information sought by PSC will take FEMA approximately 5,000 hours to produce.  *See Id.* at P131:L13 - P132:L2; P58:L9 - P58:L12.  Even if only 4 of 12 categories of information are sought, as PSC suggests, it would only reduce the amount of time to produce an IA file from 60 minutes to 50 minutes.  *See Id.* at P39:L11 - P140:L17; P130:L16 - P131:L22.  FEMA has neither the resources, nor ability given current funding levels, to complete this task and also perform its congressionally mandated duties.  *See Id.* at P78:15 - P79:L4; P73:L8 - P74:12; P136:L10 - P136:L12.

Moreover, PSC's assertion that it requires this information to assist it in the selection of Bellwether Plaintiffs or, alternatively, to ensure that its clients are filing suit against the right EHU Manufacturer and IA/TAC Contractor (PSC alleged need for the information has morphed over time) is simply not true.  *See* PSC Memo at 3-4 (Rec. Doc. 2554); PSC Supp. Memo at 4 (Rec. Doc. 6002).  As an initial matter, PSC's assertion that it requires the information to assist it in selecting Bellwether Plaintiffs simply is not supported by the record.  First, the information in the IA Files – interaction between FEMA and the claimant is cumulative of information that PSC already has available from the Fact Sheet that each and every Plaintiff is required to produce. *See* Pretrial Order No. 2 (Rec. Doc. 87); *See also* Feb 15, 2008, Order (Rec. Doc. 93); March 7,

---

terms this means that it would take a FEMA employee working full time a little bit more than 104 weeks or two years to produce the 5,000 files.

Finally, in the unlikely event that the Court were to credit PSC's argument that the information from the four of the twelve categories in the NEMIS Database can be produced in 40 minutes , it would take a FEMA employee working full time on this matter 83 weeks or approximate one year and four months to produce the 5,000 IA Files.

2008 Order (Rec. Doc. 106); Dec. 19, 2008, Order (Rec Doc. 1006). That Fact Sheet specifically requires each claimant to detail their interaction with FEMA, and relate any problems or concern that they had with FEMA and the EHU that they occupied. *See*, *e.g.*, Exh. 2, Plaintiff Fact Sheet.

Second, PSC claims that it requires the IA Files to assist in selecting Bellwether plaintiffs is moot because the Bellwether selection process will be completed well before FEMA can produce the IA Files. There are three Bellwether trials for which the Court has not yet selected the plaintiff: (1) the July 19, 2010, Keystone Bellwether Trial, (2) the September 13, 2010, Gulf Stream Coach Bellwether Trial, and (3) the October 18, 2010, Manufactured Housing Bellwether Trial. *See* Joint Report 13 § IV at 2-3, § VI at 5-6. The deadline for the parties nomination of plaintiffs to serve as the Keystone Bellwether Trial plaintiff was Friday, November 6, 2009, *id.* § VI(A)(4) at 6; the deadline for Gulf Stream Coach's nominations of 20 potential bellwether plaintiffs for the Gulf Stream Coach Bellwether Trial is November 30, 2009, and PSC must select on or before December 30, 2009, one of those 20 persons, *id.* § VI(A)(5); and January 19, 2010, is the deadline for the parties nomination of plaintiffs to serve as the Manufactured Housing Bellwether plaintiff (all claims against the Untied States involving Manufactured Housing have been dismissed). *Id.* § IV at 2-3. Simply put, given the deadlines and time that it would take FEMA to produce the nearly 5,000 IA Files, the information in the IA Files cannot be produced until well after completion of the bellwether selection process.

Similarly, PSC's assertion that the information is necessary to ensure that their clients are suing the right EHU Manufacturer and IA/TAC contractor is simply wrong. PSC Supp. Memo at 4 (Rec. Doc. 6002). Information relating to EHUs and to whom FEMA issued a particular EHU are maintained in FEMA's FRRATS databases, which are disaster-specific databases that track

9

disaster applicant information, including an applicant's issuance and deactivation of EHUs. Since May 2008, the United States has offered to search that database to identify the EHUs that were issued to PSC's clients. Since January of this year – when PSC submitted its first request – PSC has submitted more than 65,000 names and FEMA has responded by producing the vehicle identification number ("VIN") and FEMA barcode issued to the claimant. *See* Joint Report No. 13 § V at 3-5 (Rec. Doc. 5959). Using the VIN number and the VIN Manufacturer Key, which is a document produced by the EHU Manufacturers that identifies the unique prefix assigned to each EHU Manufacturer that is contained in the VIN number (and is also publically available online), PSC can determine the identity of the manufacturer of the EHU that FEMA issued to their clients. *Id.*

In addition, the United States has also produced to the parties a searchable spreadsheet that allows PSC, using the VIN number, to determine the identity of the Individual Assistance/Technical Assistance Contractor ("IA/TAC") that hauled and installed their clients EHU. *Id.* Thus, the Court and parties already have in place a process that allows PSC to determine the identity of the manufacturer and IA/TAC contractor. The source of that information is the FRRATS database, not the IA Files, since FRRATS is what FEMA uses to track EHUs it issues and that information is not officially tracked in the NEMIS system.

Moreover, to date, PSC has not proffered any instance of FEMA supplying inaccurate VIN and/or FEMA barcode numbers and, when PSC has expressed concerns that a client was not matched with a VIN number, or concern that the VIN number was inaccurate, the parties have met and conferred and successfully resolved the matter. *Id.* Generally, the lack of a match results from PSC's failure to provide information FEMA requires to search the FRRATS

10

database or because FEMA did not issue an EHU to the claimant. *Id.* In that later circumstance, further investigation by PSC has shown that the EHU occupied by the claimant was issued to the claimant's spouse, parent, relative, and or some other unrelated significant other, and running a search of the FRRATS database using that persons identifying information has resolved the issue. *Id.*

Contrary to PSC's assertion, the FRRATS database, not the NEMIS database IA Files, is the database that must be searched to provide PSC with information they require to identify the EHU Manufacturer and IA/TAC contractor. *See* Exh. 1, Greene Depo. at P22:L10 - P23:L9; P52:L17 - P53:L4; P53:L7 - P53:L12. Although, the IA Files may contain some information relating to the EHU that a claimant occupied, the NEMIS database is not designed to track EHUs and that information would only be present in an IA File if the information was included in a document that was preserved in the NEMIS database. *See Id.* P52:L17 - P53:L1.

Accordingly, to the extent that PSC asserts that it requires the IA Files to match its clients to the EHU Manufacturer and the IA/TAC contractor, that information has already been produced and made available, and PSC's request should be denied because it is cumulative and unduly burdensome. *See* Fed. R. Civ. P. 26(b)(2)(B), 26(b)(2)(C)(i).

## II. PSC Has Failed To Provide FEMA With Sufficient Information To Search And Extract Information From The NEMIS Database.

In the event that the Court is inclined to grant PSC's Motion, the Court must nevertheless deny PSC's Motion because PSC has failed to provide FEMA with the information necessary to conduct a search of the NEMIS database. PSC in conjunction with this Request for Production simply produced a document listing 5,000 names. FEMA cannot run a NEMIS database search using simply a name. A NEMIS database search requires accurate identifying information be

provided to ensure the proper individual's files are produced, such as the (1) claimants' full name, (2) claimants' FEMA Identification Number, (3) disaster at issue – Hurricane Rita or Hurricane Katrina, (4) social security number, and (5) date that the claimant first applied for assistance. In addition, the claimant must authorize the production of this Privacy Act protected information to PSC either by demonstrating that they have filed suit against the United States or in the alternative, provide in conjunction with each request, a Privacy Act waiver authorizing production of the information to PSC. *Id*. Exh. 1, Green Depo. at P145:L5 - P145:L12; P107:L3 - P107:L13; P110:L21 - P111:L22.

### III. PSC's Discovery, If Granted Over The United States' Objection, Should Be Conditioned Upon PSC's Payment of The Actual Costs of Such Discovery.

In the event that the Court, despite the foregoing, is inclined to order production of these 5,000 IA Files now, rather than requiring their production individually as cases are set for trial and discovery orders are entered, the United States requests, consistent with the rationale of *Oppenheimer Fund, Inc.*, 437 U.S. 340, that the Court condition such discovery on PSC's payment of the costs of such discovery. *Id.* at 358 (finding district court has discretion to protect the producing party from undue burden or expense by conditioning discovery on the requesting party's payment of the costs of discovery). The *Oppenheimer* rationale is particularly applicable in this case, given that (1) PSC's declared need to have these 5,000 IA Files produced before a scheduling order is entered and a trial date is set – that it be able to confirm the accurateness of information already provided to PSC regarding the identity of potential defendants – will not advanced the interest of the defendants by performing such a monumental task, and (2) the cost is substantial, constituting an undue burden on the United States. *See Id.*

## CONCLUSION

For all the reasons set forth in the United States' initial Memorandum in Opposition (Rec. Doc. 2832), and the additional reasons set forth herein, the Court should deny PSC's Motion, or in the alternative, shift costs and require PSC to pay costs associated with production of the IA Files.

Dated: November 9, 2009                           Respectfully Submitted,

| | |
|---|---|
| TONY WEST | HENRY T. MILLER |
| Assistant Attorney General, Civil Division | ADAM BAIN |
| | Senior Trial Counsel |
| J PATRICK GLYNN | |
| Director, Torts Branch, Civil Division | ADAM DINNELL |
| | MICHELE GREIF |
| DAVID S. FISHBACK | MICHELE BOYLE |
| Assistant Director | Trial Attorneys |
| | |
| OF COUNSEL: | //S// *Jonathan R. Waldron* |
| JORDAN FRIED | JONATHAN R. WALDRON |
| Associate Chief Counsel | (IL. Bar No. 6292058) |
| | Trial Attorney |
| JANICE WILLIAMS-JONES | United States Department of Justice |
| Senior Trial Attorney | Civil Division – Torts Branch |
| FEMA/DHS | P.O. Box 340, Ben Franklin Station |
| Department of Homeland Security | Washington, D.C. 20004 |
| Washington, D.C. 20472 | Attorney Telephone: (202) 307-2091 |
| | Jonathan.Waldron@USDOJ.Gov |
| | |
| | Attorneys for the United States of America |

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2009, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

                                      //S// *Jonathan R. Waldron*
                                      JONATHAN R. WALDRON (IL. Bar No. 6292058)