UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER          * | | MDL NO. 1873 |
|       FORMALDEHYDE      * | | |
|       PRODUCTS LIABILITY * | | |
|       LITIGATION             * | | SECTION:  N(5) |
|                                             * | | |
| This Document Relates to:      * | | JUDGE: ENGELHARDT |
| *Dubuclet v. Fleetwood Enterprises, Inc., et al.* * | | |
| Case No. 07-9228                   * | | MAG: CHASEZ |

*****************************************************************************

**DEFENDANT FLEETWOOD ENTERPRISES, INC.'S OPPOSITION TO
PLAINTIFF'S MOTION TO LIMIT THE
TESTIMONY OF H. JAMES WEDNER, M.D.**

**May It Please The Court:**

Through undersigned counsel, comes Defendant Fleetwood Enterprises, Inc. (hereinafter "Fleetwood") who respectfully submits this memorandum in opposition to Plaintiff's Motion to Limit the Testimony of H. James Wedner, M.D. ("Plaintiff's Motion to Limit") (Rec. Doc. 6652), and in support thereof would demonstrate unto the Court as follows:

**I.  INTRODUCTION**

Plaintiff Timia Dubuclet brings this motion to limit the testimony of Fleetwood's expert, Dr. H. James Wedner on the grounds that Dr. Wedner does not provide the necessary support for his conclusions or in the alternative that such support simply does not exist. As explained more fully below, these allegations are without any basis and Plaintiff's Motion to Limit must be denied.

## II.     LAW AND ARGUMENT

### A.     The Court's Role as Gatekeeper

Federal Rule of Evidence 702 permits a witness who, through his expertise, has the knowledge, skill, experience, training or education to offer scientific, technical, or other specialized knowledge to testify regarding that knowledge if it will assist the trier of fact to understand the evidence or to determine a fact in issue. Once the expert is deemed qualified, his testimony is admissible if it is based upon sufficient facts or data, it is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.[1]  As this Court has recognized, "The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals* provides the analytical framework for determining whether expert testimony is admissible under Rule 702."[2]  The reliability inquiry is flexible, and several nonexclusive factors may be considered, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, and (4) whether the technique is generally accepted in the relevant scientific community.[3]  It is important to note that the trial court's role as gatekeeper is *not* intended to serve as a replacement for the adversary system.[4] Rather, as *Daubert* makes clear, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of

---

[1] Fed. R. Ev.  *Id.* 702.
[2] Order dated July 15, 2009, at 3 (Rec. Doc. 2181) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002)).
[3] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993) (discussing the four nonexclusive factors); Order dated July 15, 2009 at 4 (Rec Doc. 2181) (citing *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).
[4] *Pipitone*, 288 F.3d at 250.

2

proof are the traditional and appropriate methods to attack potentially shaky but admissible evidence."[5]

Plaintiff attempts to challenge Dr. Wedner's opinions multiple times based on his testimony regarding various articles in the world's medical literature. The Fifth Circuit has found that an expert's refusal to base his testimony on a single medical text book or journal article does not warrant exclusion of his testimony, especially where, as is the case with Dr. Wedner, that expert's testimony is based on decades of experience in the relevant field, his review of the plaintiff's medical condition and history, and on a broad spectrum of published materials.[6] Furthermore, an expert's testimony will not be excluded merely because he refuses to recognize any medical textbooks or journal articles as authoritative on a particular topic at issue.[7] As will be shown below, Dr. Wedner is more-than-qualified to testify as an expert in this case regarding the specific causation of Plaintiff's eczema, and his testimony is based on an extensive review of relevant literature, as well as on his own reliable testing and methodologies. Plaintiff's motion to limit Dr. Wedner's testimony should be denied.

### B. Dr. Wedner is Highly Qualified to Give Expert Testimony

Dr. Wedner is well-known to this Court, as he testified on behalf of Defendants at the class certification hearing and was the last witness called by Gulf Stream in the *Alexander* trial. As shown in his curriculum vitae, attached as Exhibit B to his affidavit accompanying this response, Dr. Wedner has more than 40 years experience in the field of allergy and immunology and is currently the Chief of Allergy and Immunology at Barnes-Jewish Hospital of Washington

---

[5] *Daubert.*, 509 U.S. at 595.
[6] Carroll v. Morgan, 17 F.3d 787, 789-90 (5th Cir. 1994).
[7] *Id.*

3

University St. Louis, one of the premier medical facilities and medical schools in the country. Exhibit "A," Affidavit of H. James Wedner, p. 2 ("Wedner Aff."). During the course of his daily work, he both teaches fellows in training to become allergists and immunologists as well as residents in internal medicine and pediatrics and medical students in medical school and treats patients in clinic. *Id.* He sees and treats patients with skin allergies on a daily basis. *Id.* In addition, he has run inner-city allergy programs for children and is very familiar with the treatment of both children and the elderly in the course of his practice. *Id.* As a result, Dr. Wedner is fully qualified to render expert opinions in this case.

    **C.**    **Plaintiff Misconstrues Dr. Wedner's Deposition Testimony and Report**

As an initial matter, Plaintiff makes certain inaccurate statements in her brief regarding Dr. Wedner's methodology and diagnosis. On page 2 of her brief, Plaintiff suggests that Dr. Wedner has made a diagnosis of "Type I Intrinsic Atopic Dermatitis . . . which is non-IgE mediated." While Dr. Wedner did mention Type I (Gell & Coombs) in his deposition and his August Report, he also noted that Type I requires production of IgE type antibodies and that Timia Dubuclet does not have these antibodies against any aero-allergen. Wedner Aff., p. 2 at ¶ 1; Exhibit "B," Deposition of H. James Wedner, Taken October 12, 2009, at pp. 157-159, 197-199. ("Wedner Dep.") *See* attached at Exhibit C. It is for this reason that she is classified as having "intrinsic" rather than "extrinsic" atopic dermatitis. *Id.* Furthermore, the statement on page 2 of Plaintiff's brief that Type I is non-IgE mediated is incorrect. *Id.*

Also, in the introduction section of her brief, Plaintiff confuses the components of the T.R.U.E.™ Test. Wedner Aff., p. 2 at ¶ 2. The T.R.U.E.™ Test contains a specific formaldehyde challenge, and Timia was not sensitive to this reagent. *Id.* This demonstrated that she had not

been sensitized, *i.e.*, had developed Type IV sensitivity to formaldehyde. *Id.* Both p-tert butylphenol and imidazolidinyl urea are complex chemicals of which formaldehyde is one of many constituent elements, but they <u>do not contain free formaldehyde</u>. *Id.* From an immunologic context, a positive test to these reagents does not demonstrate sensitivity to formaldehyde. *Id.;* Wedner Dep., at p. 184. This was clearly pointed out in Dr. Wedner's report as well as in his deposition, and appropriate literature citation was provided. *Id.* To exclude testimony regarding this fact would improperly suggest that Timia had Type IV sensitivity to formaldehyde, which is clearly not the case. *Id.*

> **D.     Plaintiff Improperly Characterizes Dr. Wedner's Basis for His Opinion Regarding the Effects of Gaseous Formaldehyde on Type I Gell and Coombs Classification**

Plaintiff claims that Dr. Wedner's opinion regarding the effects of Gaseous Formaldehyde on Type I Gell and Coombs Classification is unsubstantiated. Indeed, it is Plaintiff's argument that is unsubstantiated – not Dr. Wedner's opinion.

For example, Plaintiff states on pages 3-4 of her brief that in his report, Dr. Wedner "oddly" cited to a work by the German author, Eberline-Koenig that, among other things, found that gaseous formaldehyde caused an increase in transepidermal water loss. Wedner Aff., p. 3 at ¶ 2. As noted in his original report, the concept of transdermal water loss has been studied by the German group headed by Dr. J. Ring (the lead author of this paper is Eberlin-Koenig). *Id.* There were three separate findings in that study. *Id.* One dealt with transepidermal water loss, for which the study group found an excess. *Id.* That finding is not clinically significant because any number of things -- including changes in temperature and humidity -- can affect the transepidermal water loss. *Id.* In the same study, the group found that there was no change in

5

skin roughness, a significant finding for the clinician. *Id.* Even more importantly, the study looked for an increase in the disease markers for eczema (certain serum levels). *Id.* Most importantly, looking at the serum levels, there was no evidence that formaldehyde had any effect on the antigen presentation, *i.e.,* it had no effect on eczema. *Id.* This finding is consistent with the world's literature that there is no evidence to suggest that skin irritation per se has an effect on antigen presentation or on the production of any type of immune response in the skin. *Id.*

The lengthy excerpt from the deposition of Dr. Patricia Farris found on page 4 of Plaintiff's brief – which Plaintiff attempts to characterize as contradictory to Dr. Wedner's opinion – is *not* inconsistent with what is stated above. Wedner Aff. at, p. 4 at ¶ 3. It is important to note, however, that the quotation starts with an answer given by Dr. Farris that in parts says: "They lack a protein called filaggren that causes the bricks to mature in a normal way." The discussion of filaggren is a "red herring" that bears no relationship to this case. *Id.* Patients who have a loss of function mutation in the filaggren gene develop a specific skin disease called ichthyosis vulgaris, and they do indeed have increased antigen presentation and increased frequency of atopic dermatitis. *Id.* Timia does not have ichthyosis vulgaris. *Id.*

Also, on page 5 of her brief, Plaintiff appears to challenge Dr. Wedner's testimony that medical literature cannot show a cause and effect relationship. This again is a mischaracterization of Dr. Wedner's testimony. Indeed, Dr. Wedner believes that medical literature can -- and every day does -- draw cause and effect relationships -- indeed, in certain instances, specific, pathognomonic relationships -- between a suspected pathogen and disease. Wedner Aff., p. 4 at ¶ 4. As Dr. Wedner stated at page 98 of his deposition, which is referred to in Plaintiff's brief at page 5, pneumococci causes pneumoccal pneumonia and is the

pathognomonic pathogen for that disease. In other instances, cause and effect relationships may take years of well-controlled studies -- epidemiologic, experimental, or others -- to establish. *Id.* The point that Dr. Wedner makes in his 17-page report is that although there have been studies that have reported on the effect of gaseous formaldehyde on the skin, as he states at page 98 of his deposition, it is his opinion that there is no paper in the world's literature that demonstrates that formaldehyde either causes or exacerbates atopic dermatitis. *Id.*

Plaintiff then goes on to discuss the volatile organic compounds ("VOC") and Dr. Wedner's testimony in the *Crouder* case. Again, there is no inconsistency between Dr. Wedner's opinions in that case and his opinions here. That case involved high levels of mold contamination and exposure of a newborn. Wedner Aff., p. 5 at ¶ 5. Despite what Plaintiff suggests, there is evidence in the literature to suggest that in the very young, mold produced VOCs may be irritating. *Id.* This is not true for adults or even children, and that was Dr. Wedner's testimony in the *Crouder* case. *Id.* That type of exposure has nothing to do with exposure to formaldehyde. *Id.* In fact, Dr. Wedner stated in the *Crouder* case that VOCs did not aggravate asthma. *Id.*

Clearly, then, Plaintiff's attempts to characterize Dr. Wedner's testimony as inconsistent and unsubstantiated is based entirely on Plaintiff's own mischaracterization of Dr. Wedner's opinions, and Dr. Wedner should be allowed to testify regarding the effects of formaldehyde on pre-existing atopic dermatitis.

> **E.   Plaintiff's Inappropriate Method of Questioning Did Not Establish Any Indicia of Unreliability In Dr. Wedner's Opinion Refuting the Differing Effect of Gaseous Formaldehyde on Children and Elderly Persons**

In her brief, Plaintiff cites an inappropriate line of questioning from Dr. Wedner's deposition and then claims that Dr. Wedner failed to provide any support for his opinion refuting

the different effect of gaseous formaldehyde on children and elderly persons. However, Dr. Wedner has provided substantial support for his opinion, and Plaintiff's counsel's improper method of questioning did nothing to establish any weaknesses in Dr. Wedner's testimony.

During the course of his deposition, Dr. Wedner was asked if there was an increased sensitivity to formaldehyde in children and the elderly.  Wedner Dep., at pp. 216-219. His assertion in response that there is no good support for the hypothesis that the children and the elderly have increased sensitivity to formaldehyde is a correct medical statement.  *Id.*; Wedner Aff., p. 5 at ¶ 1. Dr. Wedner pointed out in his deposition that even the ATSDR tox profile on formaldehyde does not support that proposition.  *Id.* In fact, the 1999 ATSDR toxic states at page 229: "Additional research is necessary to confirm or discard the hypothesis that children may be more susceptible than adults to the irritant effects of formaldehyde and to understand the mechanistic basis of this possible difference."  *Id.* Put another way, that the elderly and children are more susceptible is a hypothesis; it has not been established in the world's medical literature.  *Id.*

On pages 5-8 of her brief, Plaintiff highlights a line of questioning from Dr. Wedner's deposition wherein counsel for Plaintiff asked Dr. Wedner for support that would negate the assertion that children and the elderly are more susceptible. Wedner Dep., at pp. 216-219. Dr. Wedner responded that he was not aware of such in the literature but stated that if Plaintiff's attorney thought he had certain medical literature that so established that point, he would be happy to discuss it.  *Id.* Plaintiff appears to be criticizing Dr. Wedner for making such an offer when, really, it is Plaintiff's counsel's method of questioning that deserves criticism.

Citation is unnecessary to the well-established procedure for cross-examination. If a witness is to be questioned on a document – or, in this instance, an article in the world's medical literature – the questioner must show the witness the article so that the witness can read, understand, and put the question in context. A review of the transcript of the October Deposition of Dr. Wedner, a small excerpt of which is contained within Plaintiff's brief at pages 7-8, demonstrates Plaintiff's counsel's refusal to present the witness with the document that formed the gravamen of the question.

Plaintiff's counsel's questioning and argument implies that when asked, the question is an implied positive. Plaintiff appears to imply that if Dr. Wedner did not have specific proof to the contrary, the statement must be true. This is not how science or medicine works. Wedner Aff., p. 6 at ¶ 2. There is no implied causation between cause and effect. *Id.* Cause and effect must be proven by the scientific method. *Id.* This is particularly true when the implication of the question is in and of itself wrong. *Id.*

At page 8 of her brief, Plaintiff states that there does exist research "indicating" an increase of formaldehyde sensitization in children and the elderly. She cites to the 2001 edition of Casarett and Doull's work, Toxicology. That text is well-known to medical practitioners. Wedner Aff., p. 6 at ¶ 3. Regrettably, Dr. Wedner does not have the 2001 text available to him. *Id.* He does have both the 1996 and the most current (2007) editions. *Id.* These are lengthy texts. *Id.* For example, the 1996 text is 1,111 pages in length. *Id.* That said, to his knowledge, neither one states that children and the elderly are more sensitive to formaldehyde. *Id.* If counsel for Plaintiff would present Dr. Wedner with the reference in this 1,000 plus page text, he will be happy to answer the question based upon what he is shown. *Id.* In a vacuum, and based upon his

9

review of the editions that precede and follow the cited edition, he is aware of no such reference. *Id.*

### F.     Dr. Wedner's Opinion Regarding Nosebleeds Is Reliable and Admissible

Plaintiff makes the assertion that Dr. Wedner has no basis to support his opinion regarding nosebleeds being caused by nose-picking. However, Plaintiff's only support for this claim is another example of an entirely improper line of questioning in which Dr. Wedner was asked to prove an answer to a question that implies a fact when none exists.

Plaintiff first cites deposition testimony wherein Plaintiff's counsel improperly attempts to have Dr. Wedner discuss a paper whose contents he could not recollect. Wedner Dep., at pp. 221-222. Plaintiff then refers to a 2009 article by Zhang in support of her claim that "there is evidence that formaldehyde exposure can cause nosebleeds."  In that article, Zhang cites to a paper by Madison, et al. (Madison, R., Broughton, A., and Thrasher, J., Immunologic biomarkers associated with an acute exposure to exothermic bi-products of a urea formaldehyde spill, Environmen. Health Prospec. 94 (1991) 219-223).  This paper is well-known to Dr. Wedner. Wedner Aff., p. 7 at ¶ 1. It deals with alleged exposure to formaldehyde fumes following a train derailment in Alaska. *Id.* All the authors of this paper do is present a long list of every symptom that was reported by anyone who was in proximity to the spill, and there was no attempt in the paper to correlate the distance of the individual to the spill or the concentration of formaldehyde to which the individuals may have been exposed for any of the signs or symptoms that are reported, let alone nose-bleeds.  *Id.* This paper does not purport to draw any cause and effect relationship between the exposure and the complaint.  *Id.* Remarkably – indeed it is a small

world – Dr. Wedner reviewed the data for this paper, which was eventually withdrawn by the authors. *Id.*

In contrast, Dr. Wedner's opinion that nose-picking is the prominent cause of nosebleeds is based on reliable medical literature. With respect to nose-bleeds, the standard text on pediatrics (Nelson's Textbooks of Pediatrics 15th Ed.) in the section of Epistaxis, written by Dr. James E. Arnold (page 1187) states, "ETIOLOGY Trauma including picking the nose and foreign bodies is the most common cause." Wedner Aff., p. 8 at ¶ 2. The only irritant mentioned by Dr. Arnold in relation to nosebleeds is dry air. *Id.* Neither formaldehyde nor any other irritant is mentioned as an etiologic agent. *Id.*

Clearly, Plaintiff's assertion that Dr. Wedner does not have any basis to support his opinion regarding nosebleeds is false, and in fact, the medical literature cited by Plaintiff lacks reliability and does not provide support for her own claims.

### III. CONCLUSION

**WHEREFORE,** considering the foregoing, defendant Fleetwood Enterprises, Inc. is entitled to and respectfully requests that this Honorable Court enter an order denying Plaintiff's Motion to Limit the Testimony of H. James Wedner, M.D.

This 13th day of November, 2009.

                Respectfully submitted:

                */s/ Richard K. Hines, V*
                Richard K. Hines, V
                GA Bar No. 356300
                NELSON MULLINS RILEY & SCARBOROUGH, LLP
                Atlantic Station
                201 17th Street, NW, Suite 1700
                Atlanta, GA 30363

(404) 322-6000 (phone)
(404) 322-6050 (fax)

Jerry L. Saporito
LA Bar No. 11717
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-1701
(504) 585-7500 (phone)
(504) 585- 7775 (fax)

Counsel for Fleetwood Enterprises, Inc.

## **C E R T I F I C A T E OF SERVICE**

I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )  Hand Delivery             ( )  Prepaid U.S. Mail

( )  Facsimile                 ( )  Federal Express

(X)  CM/ECF

New Orleans, Louisiana, this 13th day of November, 2009.

  /s/ Richard K. Hines, V  
Richard K. Hines, V  
Georgia Bar No. 356300  
richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP  
Atlantic Station  
201 17th Street, NW  
Suite 1700  
Atlanta, GA  30363  
(404) 322-6000 (phone)  
(404) 322-6050 (fax)