Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * | MDL NO. 1873 SECTION: N(5) |
| This Document Relates to: *Dubuclet v. Fleetwood Enterprises, Inc.* Case No. 07-9228 | | * * * * * | JUDGE: ENGELHARDT MAG: CHASEZ |

*******************************************************************

## AFFIDAVIT OF H. JAMES WEDNER, M.D.

STATE OF MISSOURI

COUNTY OF ST. LOUIS

Before me, an officer duly authorized to administer oaths, came H. JAMES WEDNER, M.D., who, having been duly sworn deposes and makes this affidavit in support of the response of Fleetwood Enterprises, Inc. to Plaintiffs' Daubert motion to limit the testimony of H. James Wedner, M.D. and says:

Counsel for Fleetwood has forwarded to me a copy of the motion and supporting memorandum in connection with Plaintiff's *Daubert* motion of my testimony. I will refer to that throughout as "memorandum." For the reasons stated in my original August report (Exhibit A) and in my deposition, I disagree that my opinions with respect to the effect of gaseous formaldehyde on underlying atopic dermatitis are unsubstantiated, I disagree with the statement that gaseous formaldehyde has differing effects on children and elderly persons, and I disagree

with the statement that "picking one's nose, not formaldehyde, is likely the cause of nosebleeds." I will comment on each assertion below.

As shown in my curriculum vitae (Exhibit B), I have more than 40 years experience in the field of allergy and immunology and am currently the Chief of Allergy and Immunology at Barnes-Jewish Hospital of Washington University St. Louis, one of the premier medical facilities and medical schools in the country. During the course of my daily work, I both teach fellows in training to become allergist and immunologists as well as residents in internal medicine and pediatrics and medical students in medical school and treat patients in clinic. I see and treat patients with skin allergies on a daily basis. In addition, I have run inner-city allergy programs for children, and I am very familiar with the treatment of both children and the elderly in the course of my practice.

## I. INTRODUCTION

1.

In the introduction section of the memorandum, there is terminology I need to address. The memorandum suggests that I have made a diagnosis of "Type I Intrinsic Atopic Dermatitis" and at page 2 it is stated: "which is non-IgE mediated." While I did mention Type I (Gell & Combs) in the context of my deposition and my August report (Exhibit A), I also noted that Type I requires production of IgE type antibodies and that Timia Dubuclet does not have these antibodies against any aero-allergen. It is for this reason that she is classified as having "intrinsic" rather than "extrinsic" atopic dermatitis. Furthermore, the statement on page 2 that Type I is non-IgE mediated is incorrect.

2.

In the introduction section of the memorandum, Plaintiff's attorneys confuse the components of the T.R.U.E.™ Test. The T.R.U.E.™ Test contains a specific formaldehyde challenge and Timia was not sensitive to this reagent. This demonstrated that she had not been sensitized, *i.e.*, had developed Type IV sensitivity to formaldehyde. Both p-tert butylphenol and imidazolidinyl urea are complex chemicals of which formaldehyde is one of many constituent elements, but they <u>do not contain free</u> formaldehyde. From an immunologic context a positive test to these reagents does not demonstrate sensitivity to formaldehyde. This was clearly pointed out in my report as well as in my deposition and appropriate literature citation was given. To exclude testimony regarding this fact would improperly suggest that Timia had Type IV sensitivity to formaldehyde which is clearly not the case.

## II. WEDNER'S OPINION REGARDING THE EFFECTS OF GASEOUS FORMALDEHYDE ON TYPE I GELL & COMBS CLASSIFICATION IS UNSUBSTANTIATED

1.

I will address first that section of the memorandum that states that: "Wedner's opinion regarding the effects of gaseous formaldehyde on Type I Gell & Combs classification is unsubstantiated.

2.

Plaintiff's memorandum at pages 3 and 4 state that in my report I "oddly" cited to a work by the German author, Eberline-Koenig, that among other things found that gaseous formaldehyde caused an increase in transepidermal water loss. As noted in my original report, the concept of transdermal water loss has been studied by the German group headed by Dr. J. Ring (the lead author of this paper is Eberlin-Koenig). There were three separate findings in that

study. One dealt with transepidermal water loss, for which the study group found an excess. That finding is not clinically significant because any number of things -- including changes in temperature and humidity -- can affect the transepidermal water loss. In the same study, the group found that there was no change in skin roughness, a significant finding for the clinician. Even more importantly, the study looked for an increase in the disease markers for eczema (certain serum levels). Most importantly, looking at the serum levels, there was no evidence that formaldehyde had any effect on the antigen presentation, *i.e.*, it had no effect on eczema. This finding is consistent with the world's literature that there is no evidence to suggest that skin irritation per se has an effect on antigen presentation or on the production of any type of immune response in the skin.

3.

The lengthy recitation from the deposition of Dr. Patricia Farris found at page 4 of the memorandum is not inconsistent with what I have just stated. I add, however, that the quotation starts with an answer given by Dr. Farris that in parts says: "They lack a protein called filaggren that causes the bricks to mature in a normal way." The discussion of filaggren is a "red herring" which bears no relationship to this case. Patients who have a loss of function mutation in the filaggren gene develop a specific skin disease called ichthyosis vulgaris and they do indeed have increased antigen presentation and increased frequency of atopic dermatitis. Timia does not have ichthyosis vulgaris.

4.

Page 5 of the memorandum appears to challenge my testimony that medical literature cannot show a cause and effect relationship. Indeed, medical literature can -- and every day does -- draw cause and effect relationships -- indeed, in certain instances, specific, pathognomonic

4

relationships -- between a suspected pathogen and disease. As I stated at page 98 of my deposition which is referred to in the memorandum at page 5, pneumococci causes pneumoccal pneumonia and is the pathognomonic pathogen for that disease. In other instances, cause and effect relationships may take years of well controlled studies -- epidemiologic, experimental, or others -- to establish. The point that I make in my 17 page report (Exhibit A) is that although there have been studies that have reported on the effect of gaseous formaldehyde on the skin, as I state at page 98 of my deposition, it is my opinion that there is no paper in the world's literature that demonstrates that formaldehyde either causes or exacerbates atopic dermatitis.

5.

On the same page, there is a discussion of volatile organic compounds ("VOC") in the *Crouder* case. That case involved high levels of mold contamination and exposure of a newborn. Despite what the memorandum suggests, there is evidence in the literature to suggest that for very young children, mold produced VOCs may be irritating. This is not true for adults or even children and that was my testimony in the *Crouder* case. That type of exposure has nothing to do with exposure to formaldehyde. I note that I stated in the *Crouder* case that VOCs did not aggravate asthma.

### III. WEDNER'S OPINION REFUTING THE DIFFERING EFFECT OF GASEOUS FORMALDEHYDE ON CHILDREN AND ELDERLY PERSONS.

1.

During the course of the deposition, I was asked if there was an increased sensitivity to formaldehyde in children and the elderly. That fact that there is no good support for the hypothesis that the children and the elderly have increased sensitivity to formaldehyde is a correct medical statement. I pointed out in my deposition that even the ATSDR toxic profile on

formaldehyde does not support that proposition. In fact, the 1999 ATSDR tox profile states at page 229: "Additional research is necessary to confirm or discard the hypothesis that children may be more susceptible than adults to the irritant effects of formaldehyde and to understand the mechanistic basis of this possible difference." Put another way, that the elderly and children are more susceptible is a hypothesis; it has not been established in the world's medical literature.

2.

During the questioning referred to in the memorandum at pages 5-7, counsel asked me for support that would negate the assertion that children and the elderly are more susceptible. I responded that I was not aware of such in the literature but stated that if Plaintiff's attorney thought I had certain medical literature that so established that point, or if plaintiff's attorney has literature that suggested that either children or elderly were more sensitive, I would be happy to discuss it. I appear to be criticized for making such an offer. As asked by plaintiff's attorney, the question is an implied positive. The criticism appears to suggest that if I did not have specific proof to the contrary, the statement must be true. This is not how science or medicine works. Causation between a stimulus and an effect cannot be implied. Cause and effect must be proven by the scientific method. This is particularly true when the implication of the question is in and of itself wrong.

3.

The memorandum at page 8 states that there does exist research "indicating" an increase of formaldehyde sensitization in children and the elderly. It cites to the 2001 edition of Casarett and Doull's work, Toxicology. That text is well known to medical practitioners. Regrettably, I do not have the 2001 text available to me. I do have both the 1996 and the most current (2007) editions. These are lengthy texts. For example, the 1996 text is 1,111 pages in length. That said,

to my knowledge, neither one states that children and the elderly are more sensitive to formaldehyde. If counsel would present me with the reference in this 1,000 plus page text, I will be happy to answer the question based upon what I am shown. In a vacuum, and based upon my review of the editions that precede and follow the cited edition, I am aware of no such reference.

### IV. WEDNER'S OPINION THAT "PICKING ONE'S NOSE," NOT FORMALDEHYDE, IS LIKELY THE CAUSE OF NOSEBLEEDS.

1.

In regard to nosebleeds and nose-picking, this appears to be another example of a question that was being asked of me in which I was asked to prove an answer to a question that implies a fact when none exists. Plaintiff's memorandum refers to the 2009 Zhang work. Zhang in turn cites to a paper by Madison, et al. (Madison, R., Broughton, A., and Thrasher, J., Immunologic biomarkers associated with an acute exposure to exothermic bi-products of a urea formaldehyde spill, Environmen. Health Prospec. 94 (1991) 219-223). This paper is well known to me. It deals with alleged exposure to formaldehyde fumes following a train derailment in Alaska. All the authors of this paper do is to present a long list of every symptom that was reported by anyone who was in proximity to the spill and there was no attempt in the paper to correlate the distance of the individual to the spill or the concentration of formaldehyde to which the individuals may have been exposed for any of the signs or symptoms that are reported, let alone nose-bleeds. This paper does not purport to draw any cause and effect relationship between the exposure and the complaint. Note, I reviewed the data for this paper, which was eventually withdrawn by the authors.

2.

With respect to nose-bleeds, the standard text on pediatrics (Nelson's Textbooks of Pediatrics 15th Ed.) in the section of Epistaxis, written by Dr. James E. Arnold (page 1187) states, "ETIOLOGY Trauma including picking the nose and foreign bodies is the most common cause." The only irritant mentioned by Dr. Arnold in relation to nose-bleeds is dry air. Neither formaldehyde nor any other irritant is mentioned as an etiologic agent.

_____
H. JAMES WEDNER, M.D.

Sworn to and subscribed before me
This 13\[th\] day of November 2009.

_____
Notary Public

[SEAL]

My commission expires: 10-5-2010

**REBECCA S. LIGHT**
**Notary Public - Notary Seal**
**STATE OF MISSOURI**
**St. Louis County**
**My commission expires 10/05/10**
**Commission # 06948517**

8