**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE: FEMA TRAILER FORMALDEHYDE** | * | **MDL NO. 1873** |
| **PRODUCTS LIABILITY LITIGATION** | * | |
| | * | **SECTION "N" (5)** |
| | * | |
| **THIS DOCUMENT IS RELATED TO:** | * | **JUDGE ENGELHARDT** |
| **Aldridge, et al. vs. Gulfstream Coach, Inc., et al.** | * | |
| **Civil Action No. 07-9228** | * | **MAGISTRATE CHASEZ** |
| *(Elisha Dubuclet on behalf of her minor child, Timia* | * | |
| *Dubuclet vs. Fleetwood Enterprises, Inc., et al.)* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

<u>**PRE-TRIAL ORDER**</u>

1.      **PRE-TRIAL CONFERENCE**

A Pre-Trial Conference in the above captioned matter occurred before this

Honorable Court on Thursday, November 19, 2009, at 9:00 a.m. at the United States District

Court for the Eastern District of Louisiana.

Plaintiff and Fluor Enterprises, Inc. inform the Court that they have reached an

agreement regarding the three (3) summary judgment motions filed by Fluor Enterprises,

Inc. which will result in Fluor Enterprises, Inc. not being a party to the matter at trial, while

preserving certain appellate rights of Plaintiff.  Pending additional filings to accomplish

that result, Fluor Enterprises, Inc.'s inserts are included in this Pretrial Order at this time.

2.   **APPEARANCE OF COUNSEL**

**FOR PLAINTIFF, ELISHA DUBUCLET, ON BEHALF OF HER MINOR CHILD,
TIMIA DUBUCLET:**

GERALD E. MEUNIER
JUSTIN I. WOODS
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile: (504) 528-9973
gmeunier@gainsben.com
jwoods@gainsben.com

        *-and-*

RAUL R. BENCOMO
Bencomo & Associates
639 Loyola Avenue, Suite 2110
New Orleans, Louisiana 70113
Telephone: (504) 529-2929
Facsimile: (504) 529-2018
ben_law@bellsouth.net

        *-and-*

LINDA J. NELSON
Lambert & Nelson, PLC
701 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-1750
Facsimile: (504) 529-2931
lnelson@lambertandnelson.com

        *-and-*

MIKAL C. WATTS
Watts Guerra Craft
Four Dominion Drive
Building Three, Suite 100
San Antonio, Texas 78257
Telephone: (210) 447-0500
Facsimile: (210) 447-0501
mcwatts@wgclawfirm.com

    *-and-*

T. CHRISTOPHER PINEDO
Attorney at Law
802 N. Carancahua, Suite 2250
Corpus Christi, Texas 78470
Telephone: (361) 866-7444
Facsimile: (361) 866-7440
cpinedo@cpinedolaw.com

**FOR DEFENDANTS:**

ANDREW D. WEINSTOCK
**DEFENDANT MANUFACTURERS' LIAISON COUNSEL**
Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock, APLC
3838 N. Causeway Boulevard, 29th Floor
Three Lakeway Center
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Facsimile: (504) 837-3119
andreww@duplass.com

    *-and-*

JERRY L. SAPORITO
AMANDA VONDERHAAR
Leake and Andersson, LLP
1100 Poydras Street, Suite 1700
New Orleans, Louisiana 70163
Telephone: (504) 585-7500
Facsimile: (504) 585-7775
jsaporito@leakeandersson.com
avonderhaar@leakeandersson.com

    *-and-*

RICHARD K. HINES, V
TAYLOR T. DALY
Nelson, Mullins, Riley & Scarborough, LLP
Atlantic Station
201 17th Street NW, Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050
richard.hines@nelsonmullins.com
taylor.daly@nelsonmullins.com

*On Behalf of Fleetwood Enterprises, Inc. and any other related entity*

  *-and-*

DAVID KURTZ
**CONTRACTOR DEFENDANTS' LIAISON COUNSEL**
Baker Donelson & Bearman, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
dkurtz@bakerdonelson.com

  *-and-*

CHARLES R. PENOT, JR.
Middleberg, Riddle & Gianna
717 N. Harwood
Dallas, Texas 75201
Telephone: (214) 220-6334
Facsimile: (214) 220-6807
cpenot@midrid.com

  *-and-*

SARAH A. LOWMAN
DOMINIC J. GIANNA
Middleberg, Riddle & Gianna
201 St. Charles Avenue, 31st Floor
New Orleans, Louisiana 70170
Telephone: (504) 525-7200
Facsimile: (504) 581-5983
slowman@midrid.com
dgianna@midrid.com

*-and-*

SONIA MALLETT
RICHARD SHERBURNE
Middleberg, Riddle & Gianna
Chase Towers, North Tower
450 Laurel Street, Suite 1101
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7700
Facsimile: (225) 381-7730
smallett@midrid.com
rsherburne@midrid.com

*On Behalf of Fluor Enterprises, Inc.*

3. **REPRESENTED PARTIES**

   A. **PLAINTIFF ELISHA DUBUCLET, ON BEHALF OF HER MINOR CHILD, TIMIA DUBUCLET**

   Plaintiff Elisha Dubuclet, on behalf of her minor daughter, Timia Dubuclet, is a resident of the Parish of Orleans.

   B. **DEFENDANT, FLEETWOOD ENTERPRISES, INC.**

   Defendant Fleetwood Enterprises, Inc., is a Delaware corporation with its principal place of business in Riverside, California.  Historically Fleetwood, through its manufacturing subsidiaries, built travel trailers, motor homes, and manufactured housing (mobile homes).  In 2005, as a result of hurricanes Katrina and Rita striking the Gulf Coast, FEMA issued construction specifications and ordered travel trailers as temporary housing for individuals whose residences were rendered uninhabitable by the hurricanes.  Between October 2005 and April 2006, Fleetwood, through its many travel trailers subsidiaries, built

trailers in compliance with the FEMA specifications which were sold by it to a nonparty distributor Morgan Buildings & Spas, Inc., which in turn sold the units to FEMA.  The Dubuclet Fleetwood Unit here at issue was manufactured in Longview, Texas in March 2006.

### C.     DEFENDANT, FLUOR ENTERPRISES, INC.

Defendant Fluor Enterprises, Inc., is a California corporation, with its principal place of business in a place other than Louisiana. Defendant Fluor Enterprises, Inc. is an engineering, procurement and construction management firm.  Prior to Hurricane Katrina making landfall in Louisiana and Mississippi, FEMA awarded FEI an Individual Assistance-Technical Assistance Contract.  Pursuant to Task Orders issued by FEMA following landfall of hurricanes Katrina and Rita, FEI, among many other services, provided staging, hauling and installing, maintenance and deactivation services with respect to various types of emergency housing units that FEMA selected and chose to use to temporarily house displaced citizens.  FEI retained a number of subcontractors who performed the actual hauling and installing services.

### 4.     JURISDICTION

Jurisdiction is proper based on 28 U.S.C. § § 1332 (diversity of citizenship) and based on 28 U.S.C. § § 1331 (federal question).  Jurisdiction is not contested by Defendants.

5. **PENDING MOTIONS**

As of November 13, 2009 at 5:00 p.m., the following motions remain outstanding:

A. **PLAINTIFF:**

1. Plaintiff's Motion for Reconsideration regarding Doc. #5306 Order on Motion to Strike Defendant Medical Expert Dr. H. James Wedner, M.D. (Doc. #5602)

2. Plaintiff's Daubert Motion to Exclude the Testimony of Dr. Howard I. Maibach, M.D.  (Doc. #6650)

3. Plaintiff's Daubert Motion to Exclude the Testimony of Dr. Robert C. James, Ph.D.  (Doc. #6651)

4. Plaintiff's Daubert Motion to Exclude/Limit the Testimony of Dr. H. James Wedner, M.D.  (Doc. #6652)

5. Plaintiff's Daubert Motion to Exclude the Testimony of Dr. Patricia K. Farris, M.D., F.A.A.D.  (Doc. #6653)

6. Plaintiff's Daubert Motion to Exclude/Limit the Testimony of Thomas W. Fribley  (Doc. #6654)

7. Plaintiff's Motion to Substitute Expert Witness, Dr. George Farber, M.D.  (Doc. # _____)

8. Plaintiff's Motion in Limine to Exclude the Testimony of Dr. Michael Ginevan  (Doc. # _____)

9. Plaintiff's Motion in Limine and/or Daubert Motion regarding the Testimony of Dr. William Dyson

10. Plaintiff's Motion in Limine to Prohibit References to Formaldehyde in Food and Other Products (Doc. # _____)

11. Plaintiff's Motion in Limine to Limit Responsive Answers to the Question Asserted (Doc. # _____)

12. Plaintiff's Motion in Limine to Prohibit References to Trailer Testing Not Performed (Doc. # _____)

13.     Plaintiff's Motion in Limine to Prohibit Reference to Plaintiff's Future Ability to Raise a Claim for Cancer (Doc. # _____)

14.     Plaintiff's Motion for Summary Judgment on Causation (Doc. # _____)

15.     Plaintiff's Motion in Limine to Prevent any Mention of the Revocation of Treating Physician Dr. George Farber's Medical License (Doc. # _____)

16.     Plaintiff's Motion in Limine to Prohibit Motion of Fleetwood Bankruptcy (Doc. #_____)

**B.     DEFENDANT, FLEETWOOD ENTERPRISES, INC.:**

1.     Fleetwood Enterprises, Inc.'s Motion to Limit Paul Hewett, Ph.D.'s Testimony filed on November 9, 2009  (Doc. #6644)

2.     Fleetwood Enterprises, Inc.'s Motion in Limine to Limit the Testimony of Marco Kaltofen, P.E. filed on November 9, 2009 (Doc. #6661)

3.     Fleetwood Enterprises, Inc.'s Motion in Limine to Exclude the Testimony of Plaintiff's Expert Kenneth Laughery, Ph.D. filed on November 9, 2009  (Doc. #6649)

4.     Fleetwood Enterprises, Inc.'s Motion to Exclude the Testimony of Plaintiff's Expert Alexis Mallet, Jr. filed on November 9, 2009 (Doc. #6655)

5.     Fleetwood Enterprises, Inc.'s Motion to Exclude Dr. Lawrence G. Miller's Testimony filed on November 10, 2009 (Doc. #6665)

6.     Fleetwood Enterprises, Inc.'s Motion in Limine to Exclude the Testimony of Plaintiff's Expert Charles David Moore, P.E., P.L.S. filed on November 9, 2009 (Doc. #6657)

7.     Fleetwood Enterprises, Inc.'s Motion to Limit Ervin L. Ritter, P.E.'s Testimony filed on November 9, 2009 (Doc. #6658)

8.     Fleetwood Enterprises, Inc.'s Motion to Exclude Dr. Edward H. Shwery's Testimony filed on November 9, 2009 (Doc. #6662)

9.     Fleetwood Enterprises, Inc.'s Motion to Limit Stephen Smulski, Ph.D.'s Testimony filed on November 9, 2009 (Doc. #6660)

10.   Fleetwood Enterprises, Inc.'s Motion to Exclude Dr. Patricia M.
      Williams, Ph.D., D.A.B.T.'s Testimony filed on November 10, 2009
      (Doc. #6664)

11.   Fleetwood Enterprises, Inc.'s Motion for Partial Summary Judgment
      on Causation filed on November 9, 2009 (Doc. #6659)

12.   Fleetwood Enterprises, Inc.'s Motion for Partial Summary Judgment
      on the Express Warranty Claim filed on November 9, 2009
      (Doc. #6579)

13.   Fleetwood Enterprises, Inc.'s Motion for Summary Judgment as to the
      Government Contractor Defense filed on November 9, 2009
      (Doc. #6626)

14.   Fleetwood Enterprises, Inc.'s Motion for Partial Summary Judgment
      on Medical Monitoring, Punitive Damages and Loss of Consortium
      filed on November 9, 2009  (Doc. #6613)

15.   Fleetwood Enterprises, Inc.'s Motion for Partial Summary Judgment
      on Mental Anguish filed on November 9, 2009 (Doc. #6639)

16.   Fleetwood Enterprises, Inc.'s Motion in Limine to Exclude Evidence,
      Testimony, and Argument regarding Other Lawsuits or Claims (Doc.
      #6898)

17.   Fleetwood Enterprises, Inc.'s Motion in Limine to Exclude References
      to Travel Trailers Failing to Meet Housing Codes (to be filed by
      November 16, 2009)

18.   Fleetwood Enterprises, Inc.'s Motion to Exclude Certain Comments to
      the Jury (to be filed by November 16, 2009)

19.   Fleetwood Enterprises, Inc.'s Motion to Exclude References to Post-
      Katrina "Prototype" (to be filed by November 16, 2009)

20.   Fleetwood Enterprises, Inc.'s Motion in Limine to Adopt Rulings in the
      Alexander Bellwether Trial Relative to Various Evidentiary Issues
      (To be filed)

21.   Fleetwood Enterprises, Inc.'s Motion in Limine to Exclude Evidence,
      Testimony and Argument Regarding Family Members (To be filed)

22.   Fleetwood Enterprises, Inc.'s Motion in Limine to Exclude to Prohibit
      any Testimony, Evidence or Argument Regarding any Non Party's
      Medical Issues (To be filed)

23.    Fleetwood Enterprises, Inc.'s Motion in Limine to Exclude FEMA/Fleetwood Email Stream of July 2006 and all Related Testimony (To be filed)

## C.    DEFENDANT, FLUOR ENTERPRISES, INC.:

1.    Fluor Enterprises, Inc.'s Motion for Summary Judgment Based on Government Contractor Defense (Doc. #6643)

2.    Fluor Enterprises, Inc.'s Motion for Partial Summary Judgment to Dismiss LPLA Claims (Doc. #6646)

3.    Fluor Enterprises, Inc.'s Motion for Partial Summary Judgment on Negligence Claims (Doc. #6663)

## 6.    BRIEF SUMMARY OF MATERIAL FACTS

### A.    <u>PLAINTIFF'S SUMMARY OF THE FACTS</u>

As a result of Hurricane Katrina, Plaintiff and her minor daughter, Timia Dubuclet were displaced from their permanent home at 6046 Dorothea Street, New Orleans, Louisiana.  Since their home and their belongings flooded and thus, their home was uninhabitable, Plaintiff and her family, including her minor daughter, Timia Dubuclet, received emergency housing assistance from FEMA.  Plaintiff and her daughter were provided with a travel trailer manufactured by Defendant Fleetwood Enterprises, Inc. (hereinafter, "Fleetwood") on or about June of 2006, with Vehicle Identification Number (VIN) 4CJ1F322764015272.  This unit constitutes a product under the Louisiana Products Liability Act ("LPLA").  Plaintiff and her daughter, Timia, began living in the travel trailer on or about June of 2006 and resided continuously in the unit until approximately September of 2007.

Fleetwood had a duty to warn Plaintiff and her family about the dangers and risks of formaldehyde in the travel trailer; this duty was continuing in nature, and legally was owed to Plaintiff by Fleetwood during the entire period that Plaintiff and her family occupied this

travel trailer.  The exposure of Plaintiff and her daughter, Timia, to formaldehyde offgassing from the travel trailer resulted from the normal, foreseeable, and intended use of the travel trailer, without substantial alteration, in the condition in which Fleetwood sold the travel trailer.  The design of the travel trailer, including the use of particle board, plywood, press board, other composite wood products and other products that contain formaldehyde or formaldehyde resins, is defective and posed an unreasonable risk of harm to Plaintiff and her daughter, Timia.  The use of particle board, plywood, press board, and other composite wood products that contain formaldehyde constitutes a defect in composition or manufacture that posed an unreasonable risk of harm to Plaintiff and her daughter.  The Fleetwood travel trailer was in a defective condition and was unreasonably dangerous under normal use at the time the travel trailer left Fleetwood's control.  Plaintiff and her daughter were intended and foreseeable users of the travel trailer, and the damages and losses to Plaintiff reasonably could have been anticipated by Fleetwood.

The defects in the travel trailer are the result of and/or include, but are not limited to, the following:

1. failing to design the travel trailer so as not to emit dangerous levels of formaldehyde;

2. providing a travel trailer which, by virtue of its design and/or manufacture and/or composition, was unreasonably dangerous under reasonably anticipated use;

3. providing a travel trailer which, by virtue of a lack of an adequate warning(s), was unreasonably dangerous under reasonably anticipated use;

4. providing a travel trailer which did not conform to the express and/or

implied warranties made by Fleetwood Enterprises, Inc. regarding its fitness

for use as reasonably anticipated;

5. failing to adequately test the travel trailer to properly evaluate the levels of

emissions of formaldehyde under foreseeable conditions for extended

periods of time;

6. failing to adhere to any and all express warranties of fitness and safety for

the travel trailer it manufactured and provided;

7. in voluntarily adopting the HUD Standard and failing to comply with all of its

requirements;

8. in manufacturing a travel trailer with less windows than those needed to

properly and adequately ventilate the trailer;

9. in failing to conduct testing of travel trailers prior to shipping them from

their plants;

10. in failing to test the travel trailer for formaldehyde once becoming aware of

same through the news media and other outlets; and

11. in failing to provide Formaldehyde Abatement Kits to the travel trailer

occupants.

The travel trailer provided to Elisha Dubuclet by FEMA was installed on Plaintiff's

home site and hooked to utilities, etc. for residential purposes by Fluor Enterprises, Inc.

(hereinafter, "FEI"), and/or its subcontractors, pursuant to a contract between FEI and

FEMA.  FEI installed the travel trailer unit by "jacking" and "blocking" the unit.  FEI is also a

"manufacturer" under the LPLA.  By jacking and blocking the trailer, and in the process of

jacking the trailer, FEI created stress and flexing on the frame of the unit, as it was not

designed to be lifted off of the wheel base.  Such stress and flexing created distortion of the

trailer's shell allowing water moisture and air and heat intrusion, which contributed to

increased formaldehyde offgassing and exposures.  FEI knew of problems with

formaldehyde emissions in travel trailers it was installing, but took no action to protect

residents.

On behalf of her minor daughter, Plaintiff seeks compensatory damages for: physical

pain and suffering; mental anguish and emotional distress; past, continuing and future

medical expenses; the aggravation of Plaintiff's minor daughter's skin and other conditions;

fear of cancer; the impairment of future wage-earning capacity and/or daily life activities

suffered and to be suffered by Plaintiff's minor daughter.

### B.   DEFENDANT, FLEETWOOD ENTERPRISES, INC.'S SUMMARY OF THE FACTS

Since the 1950s, Fleetwood has been one of the country's leading manufacturers of

travel trailers, and since the 1970s it has been providing emergency housing for disaster

relief to both state and federal agencies.  Since the late 1970s it has been aware of a limited

number of odor and other complaints primarily from owners of manufactured housing and

primarily prior to the availability of low formaldehyde emitting products from the wood

products industry.  Since the early 1980s Fleetwood has been an industry leader in using

the low formaldehyde emitting board in all of its products, including travel trailers used by

FEMA.  In addition to using the low formaldehyde emitting wood products, Fleetwood is

the only travel trailer manufacturer in the country to mandate that a warning about

formaldehyde be placed not only in the owners manual but posted prominently in the

bathroom of the trailer.  One of the warnings posted in the Dubuclet unit may still be found

in the unit on the inside of the bathroom vanity.

In March 2006, the specially designed handicapped unit with a slide out living space used by the Dubuclet's was built at Fleetwood's Plant 40 in Longview, Texas.  The travel trailer was built to FEMA specifications and sold to Morgan who in turn sold the unit to FEMA.  It was transported from Longview, Texas by truck and taken to a FEMA storage unit in Six Flags Staging Area, Louisiana where it was inspected and accepted by Morgan representatives, and separately inspected and accepted by FEMA representatives.  At FEMA's instruction, it was then delivered by a third party to the Dubuclet's private property at 6046 Dorothea Street, New Orleans, Louisiana where it was installed by co-defendant Fluor.  In June 2006, the then seven year old Timia Dubuclet, her mother, brother, and grandmother moved into their Fleetwood trailer.  The Dubuclets left their trailer and moved back into their home in September 2007.

As a result of living in the trailer, Timia Dubuclet claims that she suffered aggravation of her pre-existing eczema, a skin condition she was diagnosed with when she six (6) weeks old.  In fact, Timia was taken to a doctor with her chief complaint being a skin problem some fifteen times prior to moving into the trailer, the last time being approximately one week before moving into the trailer.  She did not go back to the doctor for a chief complaint of skin symptoms for ten (10) months after moving into her trailer and then returned to the doctor some six (6) months later – at or about the time she moved out of the trailer and back into her repaired homes.  These were the only two (2) times, in some sixteen (16) months that she lived in the trailer, that she went to the doctor for her skin condition, and she only had one prescription filled for her skin condition the entire time she lived in the trailer.  After moving out of the trailer, six (6) months passed before

she again saw a doctor for a skin related issue.  There is no indication in her medical records that any treating doctor associated her skin condition to her living in the trailer until plaintiffs' counsel raised the issue with her treating doctor in the summer of 2009.  No medical doctor in the case presently contends that Ms. Dubuclet's eczema was caused by formaldehyde.  Plaintiff's claims are limited to a claim that her skin condition was aggravated by the low levels of gaseous formaldehyde in her unit.

Fleetwood denies that it did anything wrong in connection with the design, manufacture, and sale of the Dubuclet unit and denies that it failed to warn plaintiff of the problems associated with formaldehyde in a temporary housing unit such as a travel trailer.  To the contrary, Fleetwood shows the unit complies with all industry standards and practices and that it placed three (3) separate warnings in the owner's manual and posted the same three (3) warnings in the bathroom of the vanity.  Fleetwood denies that unit was defective in any respect.  Furthermore, Fleetwood denies that gaseous formaldehyde generally – or specifically with respect to Timia – either caused or aggravated her eczema (atopic dermatitis).  Fleetwood will show that there is insufficient evidence in the world's medical literature to draw the conclusion that gaseous formaldehyde, especially in the levels likely experienced in the Dubuclet unit, either causes or aggravates atopic dermatitis.

In sum, Fleetwood contends that at all times acted reasonably and that no condition of the trailer caused the medical conditions alleged by Plaintiffs.

C.     **DEFENDANT, FLUOR ENTERPRISES, INC.'S SUMMARY OF THE FACTS**

Under the Stafford Act, FEMA provided services citizens following natural disasters.  As of 2004, FEMA did not utilize the private sector in connection with its individual

assistance programs.  Rather, those functions were handled by a FEMA group known as the

Disaster Housing Program, using the U.S. Army Corps of Engineers for technical assistance.

By July 2005, with Hurricane Dennis bearing down on Florida, FEMA requested a

formal proposal from FEI for an Individual Assistance-Technical Assistance Contract (IA-

TAC) to assist FEMA in its individual assistance mission.  FEI submitted a proposal to

FEMA.  FEMA chose to award an IA-TAC to FEI.  FEI signed the IA-TAC on July 12, 2005,

well before Hurricane Katrina even existed.

Under the IA-TAC, FEI was required to mobilize personnel and materials necessary

to respond to a disaster anywhere in the United States upon 48 hours' notice from FEMA.

The IA-TAC describes the types of services that FEI might be called upon to provide, but FEI

was not authorized to undertake any work unless and until a properly authorized

contracting officer of the federal government issued a task order to FEI calling for specific

work.  Under the IA-TAC, the government issued a variety of task orders to FEI, including

Task Order 20, which covered staging, hauling and installing, maintenance and

deactivation of mobile homes, park models and travel trailers, all of which are various

types of emergency housing units that FEMA chose to provide to residents displaced by the

storm.  FEI played no role in, was not asked to, and did not evaluate the use of any of these

structures as forms of temporary housing for displaced residents.  Rather, that decision

was made by FEMA, which had long experience since Hurricane Andrew struck Florida in

1992, using mobile homes and travel trailers as forms of emergency housing for displaced

citizens.  Prior to the end of June 2006 FEMA relieved FEI (and all IA-TACs) of any

obligation to maintain installed trailers.

FEMA's IA-TAC contained detailed specifications concerning how travel trailers

would be installed on an individual's property.  These detailed specifications had been generated initially by the U.S. Army Corps of Engineers and had been utilized by FEMA prior to Hurricane Katrina.

FEI conducted 100% quality control inspections on travel trailers installed by its subcontractors.  It would not pay a contractor for installation of a travel trailer until the unit had passed inspection.  Additionally, FEMA had various types of technical monitors and QC individuals who were in the field on a regular basis checking on FEI's compliance with the travel trailer installation specifications.  Ultimately, FEMA hired an independent QC contractor to conduct surprise quality control inspections on travel trailers.

Plaintiffs' trailer was installed according to the FEMA's specifications by an FEI subcontractor, P2S.  FEI's subcontractor P2S acted reasonably and carefully in installing the trailer.  There is no evidence of any damage to the trailer resulting from the installation process that would or did increase formaldehyde levels in the trailer as occupied by the plaintiff.

In 2007, it was deactivated and hauled (by a third party, not FEI or its subcontractors) to Lottie, Louisiana where it was hauled off road and stored in the FEMA "graveyard" from early 2008 to July 2009, when it was first inspected by any Plaintiff expert.  The trailer was maintained by an MDC contractor that was not FEI or any of its subcontractors from the end of June 2006 until its deactivation in early 2008.  FEMA did not maintain the trailer at all once it was located in the Lottie graveyard.  Any claim by Plaintiffs' experts that they know how and when the trailer was damaged or deteriorated is pure speculation.

FEI and its subcontractors did nothing to harm the plaintiffs' trailer and had no

reason to believe that anything they did to the trailer by way of installing it according to Government provided specification would expose the occupants to formaldehyde.  FEI believes its subcontractor was qualified to do the job assigned, and did it properly.  FEI was prudent and careful in the selection of contractors and in offering necessary training, guidance and quality control oversight.

FEI did not choose, design, build or construct the trailer, and did nothing to harm plaintiffs in any way.  By connecting the trailer to utilities and putting it on blocks per the Government's specification, FEI did not thereby become a manufacturer of any new product.  The trailer was and is a travel trailer.  Nothing FEI or its subcontractors did changed it into something new or different.

Throughout FEI's response to hurricanes Katrina and Rita, the issue of formaldehyde or strong odors in the trailers was never a major issue.  Based on the "new smell" that some noticed when first entering a trailer that have been closed up, a practice had developed of airing out the trailers as part of the process of making the trailers ready for occupancy.  FEMA, however, had always told FEI that the trailers were "mission ready," and nothing was required of FEI other than to install the trailers precisely as required by the IA-TAC.  That's what FEI did.

By March 20, 2006, FEI received an email from the area housing office in New Orleans addressed to it and the other two contractors working in the state of Louisiana. This email was sent after a Biloxi news station had aired a story concerning formaldehyde in the travel trailers selected and provided by FEMA.  The email inquired what the contractors were doing to air out the trailers.

FEI immediately acted on this email in a number of respects.  First, it sent the email

to its Health, Safety and Environmental Director on the project, Richard Belote.

Additionally, because all communication with FEMA was to be directed to a single

individual known as the Contracting Officer's Technical Representative (COTR), FEI's

liaison with the COTR forwarded the email to the COTR, who indicated that no further

response was required of FEI.  This reply to the inquiry by FEI's liaison, Jim Rammell, was

noted in a detailed log that was maintained throughout the project and shared with FEMA.

Notwithstanding this direction from FEMA, FEI's safety individuals conducted a

testing that permitted them to come to the conclusion that the issue could be remedied by

airing out the trailers.  This conclusion was communicated by FEI and FEMA.

FEI at all times acted upon direct task and work orders issued to it by FEMA.  At all

times, its conduct was prudent and reasonable.

7.   **UNCONTESTED MATERIAL FACTS**

A.   Plaintiff, Elisha Dubuclet, and her minor daughter, Timia Dubuclet, are

residents of the Parish of Orleans in the State of Louisiana.

B.   FEMA provided Plaintiff, Elisha Dubuclet, and her minor daughter a travel

trailer with Vehicle Identification Number (VIN) 4CJ1F322764015272.

C.   This travel trailer was manufactured by Defendant Fleetwood on or about

March 27, 2006 for use by FEMA as emergency housing.

D.   Fleetwood sold approximately 10,500 travel trailers to Morgan Buildings &

Spas, Inc. for provision to FEMA following hurricanes Katrina and Rita.

E.   Fleetwood sold the travel trailer ultimately provided to the Dubuclets to

Morgan Buildings & Spas, Inc. pursuant to a Master Sales Agreement between

Fleetwood  and Morgan Buildings & Spas, Inc. to manufacture and provide

travel trailer(s) to FEMA for use as emergency housing.

F.      The travel trailer was manufactured by Fleetwood at its Longview, Texas

        plant to be used as emergency housing for displaced residents of hurricanes

        Katrina and/or Rita.

G.      Certain component parts used by Fleetwood in the manufacture of this travel

        trailer contained urea formaldehyde and/or urea formaldehyde resins.

H.      The Fleetwood travel trailer was delivered to Plaintiff and her minor

        daughter, Timia Dubuclet, for occupancy in New Orleans, Louisiana at 6046

        Dorothea Street.

I.      Elisha Dubuclet and Timia Dubuclet resided in this Fleetwood unit from June

        2006 to approximately September 2007.

J.      Elisha Dubuclet and Timia Dubuclet resided in this Fleetwood travel trailer

        for approximately 16 months.

K.      FEMA has provided thousands of travel trailers to displaced residents

        following natural disasters in the United States since at least 1992, including

        displaced residents from the Gulf Coast region.

L.      FEMA provided approximately 143,000 emergency housing units to families

        across the Gulf Coast, in response to hurricanes Katrina and Rita.

M.      Fleetwood Travel Trailers of Texas, Inc. transferred the Dubuclet travel

        trailer to Morgan Buildings and Spas, Inc. on or about March 28, 2006.

N.      Morgan Buildings & Spas, Inc. sold this travel trailer to FEMA for use as

        emergency housing.

O.      The travel trailer provided to Elisha and Timia Dubuclet was a Fleetwood 32

FSH (handicap) model with a slide out feature.

P.      FEI had a contract with the Government to install travel trailers after hurricanes Katrina and Rita, including the Fleetwood travel trailer occupied by Timia Dubuclet and her family.

Q.      By May of 2006, the Fleetwood trailer provided to the Dubuclet family was set up at 6046 Dorothea Street by a subcontractor of FEI.

S.      On July 8-9, 2009 at the FEMA Storage Facility in Lottie, Louisiana, the Fleetwood trailer, which had been previously occupied by Timia Dubuclet and her family, was tested for formaldehyde by W.D. Scott Group, Inc. for formaldehyde.

T.      This testing on July 8-9, 2009 was witnessed by Tony Watson of Workplace Hygiene on behalf of Fleetwood.

U.      On August 10-14, 2009, at the FEMA Storage Facility at Lottie, Louisiana, the Fleetwood trailer, which had previously been occupied by Timia Dubuclet and her family, was tested for formaldehyde by Tony Watson of Workplace Hygiene, on behalf of Fleetwood.  The testing was witnessed by W.D. Scott, on behalf of the Plaintiffs.

V.      During the passive sampling performed W.D. Scott Group, Inc. on July 8-9, 2009, inside the Fleetwood trailer provided to the Dubuclet family, the level of formaldehyde concentration in the air was 0.34 parts per million (ppm) or 340 parts per billion (ppb).

W.     During the passive sampling performed by Tony Watson on August 10, 2009, inside the Fleetwood trailer provided to the Dubuclet family, the level of

formaldehyde concentration in the air was 0.16 ppm or 160 ppb.

X.      During the active sampling performed by W.D. Scott Group, Inc. on July 8, 2009, inside the Fleetwood trailer provided to the Dubuclet family, the level of formaldehyde concentration in the air was 0.23 ppm or 230 ppb.

Y.      During the active sampling performed by Mr. Tony Watson on August 13-14, 2009, inside the Fleetwood trailer provided to the Dubuclet family, the level of formaldehyde concentration in the air was 0.22 ppm or 220 ppb.

Z.      The weather data collected by Dr. Lee Branscome, Ph.D., a certified meteorologist, attached to his report dated July 9, 2009, is representative of the weather conditions for the time frame involved herein.

AA.     Elisha Dubuclet, and her minor son, Timothy Dubuclet, Jr. are named plaintiffs in this litigation.  The Court has determined that Timia Dubuclet's case shall be tried separately from their claims.

BB.     Timia Dubuclet was diagnosed with eczema (atopic dermatitis) at approximately six (6) weeks old.

CC.     According to the National Vital Statistics Report, Timia Dubuclet's life expectancy is 70 additional years (age 81.1).

DD.     According to the National Vital Statistics Report, Timia Dubuclet's worklife equivalent is 40.3 years from the age of 18.

8.   **CONTESTED ISSUES OF FACT**

A.      Whether or not the Fleetwood travel trailer provided to Elisha Dubuclet by FEMA contained levels of formaldehyde which were hazardous to the health and well being of Timia Dubuclet.

B.      Whether or not the Fleetwood travel trailer provided to Elisha Dubuclet by FEMA contained levels of formaldehyde which injured Timia Dubuclet.

C.      Whether or not Plaintiff Elisha Dubuclet was given an Owner's Manual with this travel trailer.

D.      The nature, extent and adequacy of all pertinent warnings allegedly provided to the Plaintiff by Defendant Fleetwood.

E.      Whether or not the Fleetwood trailer occupied by Plaintiff was unreasonably dangerous in its design for its intended or reasonably foreseeable use by Plaintiff.

F.      Whether or not the Fleetwood trailer occupied by Plaintiff was unreasonably dangerous in its construction or composition for its intended or reasonably foreseeable use by Plaintiff.

G.      Whether or not Fleetwood failed to test its travel trailers before putting them into use by victims of hurricanes Katrina and Rita.

H.      Whether or not the Fleetwood travel trailer should have been equipped with a means for the occupants to test for formaldehyde.

I.      Whether or not the Fleetwood and travel trailer should have been equipped with a Formaldehyde Abatement Kit.

J.      Whether or not the Fleetwood trailer was unreasonably dangerous in its intended or reasonably foreseeable use, based on inadequate warnings to Plaintiff.

K.      Whether or not Defendant FEI was a "manufacturer" of the trailer occupied

Plaintiff, according to the Louisiana Products Liability Act (LPLA).

L.     Whether or not FEI altered or modified the trailer occupied by Plaintiff in such a way to render it unreasonably dangerous in construction or composition.

M.     Whether or not FEI failed to provide an adequate warning regarding its alterations or modification of the trailer occupied by Plaintiff that rendered the unit unreasonably dangerous.

N.     The facts and circumstances surrounding the handling of the Fleetwood unit by FEI its employees and/or agents.

O.     The amount of damages owed to Plaintiff as a result of the actions of Defendants, Fleetwood and/or FEI regarding:

   1.     Past, present, and future physical pain and suffering of Timia Dubuclet;

   2.     Past, present, and future mental anguish and emotional distress of Timia Dubuclet;

   3.     Past, present, and future medical expenses for Timia Dubuclet; and

   4.     Loss or impairment of life's pleasures for Timia Dubuclet and other damages which the trier of fact deems appropriate in accordance with the evidence.

P.     The specifications in all contractual agreements between the United States/FEMA and both Fleetwood and FEI; and the respective parties' knowledge of, and communication with one another about, the risks to Plaintiff arising from any such specifications.

Q.     Whether formaldehyde can aggravate eczema; and if so, at what level.

R.     Whether or not there is an increased risk of cancer associated with formaldehyde and at what levels.

S.     Whether Timia Dubuclet's eczema was aggravated by exposure to formaldehyde from the Fleetwood trailer.

T.     Whether Timia Dubuclet's skin was damaged as a result of formaldehyde from the Fleetwood trailer installed by FEI.

U.     Whether Timia Dubuclet has any current medical conditions as a result of exposure to formaldehyde emitted by the Fleetwood travel trailer while she lived there.

V.     Whether Timia Dubuclet has any permanent medical conditions as a result of exposure to formaldehyde from the trailer installed by FEI.

W.     Whether formaldehyde can cause permanent damage; and if so, at what level of exposure.

X.     Whether formaldehyde can cause cancer; and if so, what type of cancer and at what level of exposure.

Y.     Whether Timia Dubuclet has been exposed to levels of formaldehyde from the Fleetwood trailer installed by FEI sufficient to cause her to have an increased risk of cancer.

Z.     Whether exposure to formaldehyde at the levels present in the Dubuclet trailer would cause a person to have a reasonable fear of contracting cancer.

AA.    Whether or not composite wood products containing formaldehyde  caused formaldehyde offgassing in this travel trailer thereby causing Plaintiff to be

exposed to formaldehyde for approximately 16 months.

BB.   Whether the amount, composition and manner of use of composite wood products can cause formaldehyde offgassing in a travel trailer sufficient to cause Plaintiff to be exposed to hazardous levels of formaldehyde.

CC.   What level of formaldehyde is necessary to cause eye, nose and/or throat irritation.

DD.   Whether the trailer used by Timia Dubulcet was damaged prior to, during, or after the initial installation on Dorothea Street in New Orleans, such that the interior air formaldehyde levels were actually increased.

EE.   Whether FEI and/or its subcontractor which jacked and blocked the Dubuclet trailer was competent to do so.

FF.   Whether the installation of the Fleetwood trailer on Dorothea Street was in compliance with government specifications.

GG.   Whether FEI's jacking, blocking and/or installation of this unit caused an increase in formaldehyde offgassing.

HH.   Whether or not the travel trailer could have been tested for formaldehyde offgassing prior to leaving the Longview, Texas plant.

II.   Whether or not there exists a device that could have detected levels of formaldehyde once it became occupied.

JJ.   Whether or not by reducing the number of windows, the Fleetwood travel trailer, as manufactured by Fleetwood, failed to be properly and adequately ventilated and/or designed.

KK.   Whether or not there existed an unreasonably dangerous level or levels of

formaldehyde emissions during the period of Plaintiff's occupancy of the Fleetwood trailer.

LL.     Whether eczema is a condition brought about by an allergic response.

MM.     Whether exposure to gaseous formaldehyde at concentration levels such as were found in the Dubuclet trailer cause an increased risk of any form of cancer.

NN.     Whether formaldehyde in a gaseous state can aggravate atopic dermatitis, and if so, at what level.

OO.     Whether Timia Dubuclet is allergic to formaldehyde.

PP.     Whether Timia Dubuclet has any current medical condition caused by exposure to formaldehyde emitted by the Dubuclet trailer while she lived there.

QQ.     Whether Timia Dubuclet's atopic dermatitis was aggravated by exposure to formaldehyde emissions from the Fleetwood trailer.

RR.     Whether or not Fleetwood had a long standing policy of purchasing LFE composite wood products.

9.     **CONTESTED ISSUES OF LAW:**

A.     Whether Defendant, Fleetwood is liable to Plaintiff under the LPLA.

B.     Whether FEI is liable to Plaintiff under the LPLA.

C.     Whether or not Defendant FEI was a "manufacturer" of the trailer occupied by Plaintiff, according to the LPLA.

D.     Whether FEI was negligent (in the alternative to B, <u>supra</u>).

E.     Whether the Defendants' legal fault, if any, was a cause-in-fact and proximate

cause of damages sustained and recoverable by Plaintiff, on behalf of her daughter Timia Dubuclet.

F.    Whether Plaintiff Elisha Dubuclet may be assessed with comparative fault.

G.    Whether or not the "government contractor defense" is available to Fleetwood and/or FEI.

H.    Whether the Dubuclet unit was unreasonably dangerous, in design and/or construction and whether that design and/or construction caused Timia Dubuclet to suffer damages.

I.    Whether the Dubuclet unit was unreasonably dangerous; whether Fleetwood inadequately warned of that danger; and whether that inadequate warning caused damages to Timia Dubuclet.

J.    Whether FEI was negligent (or manufactured an unreasonably dangerous product) and caused damages to Timia Dubuclet.

K.    Whether FEI and/or its subcontractor was negligent, and did said negligence cause damages to Timia Dubuclet.

L.    The amount of damages, if any, sustained by Timia Dubuclet.

M.    Whether the Dubuclet unit was defective because of a lack of and/or an inadequate warning, and said lack of and/or inadequate warning caused damages to Timia Dubuclet.

N.    Whether FEI placed a product into commerce.

O.    Whether FEI manufactured a product that caused damages to Timia Dubuclet.

P.    Whether specifications provided by the government are reasonably precise

as a matter of law when they describe exactly the result desired but do not prevent the contractor from exercising some discretion as to methods of production.

Q.     Whether FEI negligently maintained this travel trailer and caused damage to Plaintiff.

R.     Whether there is a basis for asking the jury to allocate fault to a specific non-party person or entity, and, in the case of FEMA, whether that fault must rise to the level of gross or willful misconduct for fault to be allocated to FEMA.

S.     Whether FEMA is strictly liable to Plaintiff as the landlord of the travel trailer.

T.     Whether FEMA's actions or lack of action caused damage to Timia Dubuclet.

U.     Whether the contractor which jacked up and blocked the Dubuclet trailer in February 2006, was negligent, and did said negligence cause damages to Timia Dubuclet.

V.     Whether FEI is responsible for any negligence of the Dubuclet trailer lift-block contractor for its work in February 2006.

W.     Whether the MDC contractor responsible for maintaining the Dubuclet travel trailer from June 2006 until December 2007 was negligent in any way that proximately caused damage to plaintiffs.

X.     Whether FEMA's actions or lack of action caused damage to Timia Dubuclet.

10.  **EXHIBITS**

Attached hereto as Exhibit A is Plaintiff's Exhibit List.  Defendant Fleetwood's Exhibit List is attached as Exhibit B and Defendant FEI's Exhibit List is attached as Exhibit

C.  The parties will consolidate these lists into a joint submission prior to trial.

11.    **DEPOSITIONS**

Attached hereto as Exhibit D is the Trial Plan in this regard.

The parties will offer the deposition testimony, or portions thereof, of witnesses identified in the attached witness list as being presented by videotape or transcribed deposition.  The parties reserve the right to introduce by deposition the testimony of any witness who is unavailable to testify at trial, though subpoenaed to do so, or when an attempt to subpoena said witness is unsuccessful, or the person resides out of the jurisdiction of this Honorable Court.

12.    **CHARTS AND GRAPHS**

The parties may use charts, graphs, powerpoints, and other demonstrative aids contained in their experts' reports and/or utilized during expert depositions and/or marshalled and/or exchanged prior to trial.  The parties have agreed to exchange charts and graphs, and other visual aides to be used at trial at the offices of Lambert & Nelson, PLC on or before Tuesday, December 1, 2009, or as otherwise instructed by the Court.

13.    **WITNESSES**

Attached hereto as Exhibit E is Plaintiff's Witness List.  Defendant Fleetwood's Witness List is attached as Exhibit F and Defendant FEI's Witness List is attached as Exhibit G.  The parties will consolidate these lists into a joint submission prior to trial.

14.    **JURY TRIAL**

The parties will submit jury questions/instructions, and objections thereto, and will participate in a jury charge conference with the Court as instructed by this Honorable Court.

15.    **DAMAGES**

The issues of liability will not be tried separately from that of quantum.

16.    **OTHER MATTERS THAT MIGHT EXPEDITE A DISPOSITION OF THE CASE**

On Wednesday, November 4, 2009, Liaison Counsel for Plaintiffs, authorized by and on behalf of the Court-Appointed Plaintiffs' Steering Committee, made a settlement proposal with respect to claims asserted against Defendant Fleetwood and its liability insurer(s).  A prompt response and a settlement conference before Magistrate Chasez may expedite the disposition of this case.

17.    **TRIAL**

Trial shall commence on Monday, December 7, 2009, at 8:30 a.m. and will require approximately ten days of trial to complete.

18.    **STATEMENT OF COMPLIANCE-I**

This Pre-Trial Order has been formulated after conference at which counsel for the respective parties have appeared in person.   Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19.    **STATEMENT OF COMPLIANCE-II**

Counsel acknowledge that cell phones, pagers, beepers, and any other electronic communication devices are not allowed in the courtroom, and shall abide by this rule. Counsel shall further notify all clients and his/her witnesses of this rule.  Only counsel for the parties are allowed to have computers in the courtroom.

20.   **SETTLEMENT**

See statement with regard to settlement in Paragraph 16 of this Pre-Trial Order.


Respectfully submitted:

BY:   */s/Gerald E. Meunier*
      GERALD E. MEUNIER, #9471
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:    (504) 522-2304
      Facsimile:      (504) 528-9973
      gmeunier@gainsben.com

        *-and-*

      */s/Justin I. Woods*
      JUSTIN I. WOODS, #24713
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:    (504) 522-2304
      Facsimile:      (504) 528-9973
      jwoods@gainsben.com

      **COURT-APPOINTED PLAINTIFFS'**
      **STEERING COMMITTEE**
      ANTHONY BUZBEE, Texas # 24001820
      RAUL BENCOMO, #2932
      FRANK D'AMICO, #17519
      MATT MORELAND, #24567
      LINDA NELSON, #9938
      MIKAL WATTS, Texas # 20981820
      DENNIS REICH, Texas # 16739600
      ROBERT BECNEL, #14072

        *-and-*

 /s/ Andrew D. Weinstock
ANDREW D. WEINSTOCK
**DEFENDANT MANUFACTURERS' LIAISON COUNSEL**
Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock, APLC
3838 N. Causeway Boulevard, 29th Floor
Three Lakeway Center
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Facsimile: (504) 837-3119
andreww@duplass.com

       -and-

 /s/ Richard K. Hines
Richard K. Hines, V (GA Bar #356300)
Taylor T. Daly
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone:    (404) 322-6000
Facsimile:     (404) 322-6050
richard.hines@nelsonmullins.com
taylor.daly@nelsonmullins.com

Jerry L. Saporito (LA Bar #11717)
Amanda W. Vonderhaar (LA Bar #31350)
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre, 1100 Poydras St.
New Orleans, LA 70163-1701
Telephone:    (504) 585-7500
Facsimile:     (504) 585- 7775
jsaporito@leakeandersson.com
avonderhaar@leakeandersson.com

Counsel for Fleetwood Enterprises, Inc.

       -and-

__/s/ David Kurtz_____

**CONTRACTOR DEFENDANTS' LIAISON COUNSEL**

Baker Donelson & Bearman, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone:   (504) 566-5200
Facsimile:     (504) 636-4000
dkurtz@bakerdonelson.com

-and-

_/s/ Charles R. Penot, Jr._____

Charles R. Penot, Jr.
MIDDLEBERG, RIDDLE & GIANNA
KPMG Centre, Suite 2400
717 N. Harwood Drive
Dallas, TX 75201
Telephone:   (214) 220-6334
Facsimile:     (214) 220-6807
cpenot@midrid.com

Counsel for Fluor Enterprises, Inc.

New Orleans, Louisiana, this _____ day of _____, 2009.

_____
HONORABLE KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE