UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Dubuclet v. Fleetwood Enterprises, Inc.* | * | |
| Docket No. 07-9228 | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO DEFENDANT FLEETWOOD ENTERPRISES, INC.'S MOTION TO LIMIT ERVIN L. RITTER, P.E.'S TESTIMONY**

Plaintiff responds to Defendant Fleetwood Enterprises, Inc.'s ("Defendant" or "Fleetwood") Motion to Limit Ervin L. Ritter, P.E.'s Testimony (Docket Entry No. 6658) and, in support, would show the following:

**I.      OBJECTION TO RESPONSE DEADLINE**

This motion was filed on November 9, 2009. The Court ordered Plaintiff to respond by November 13, 2009. The motion raises significant issues. It is unfair and prejudicial to compel Plaintiff to respond to this motion within four business days. Further, such a short response date violates Local Rule 7.2.

Plaintiff objects to the extremely brief response date and seeks a continuance of time to respond in more detail. However, Plaintiff has endeavored to provide the most comprehensive response possible in this short deadline and respectfully contends that her response shows in detail why the Motion should be denied.

## II.  EXPERT TESTIMONY, LEGAL BACKGROUND

The admission of expert testimony in federal court is covered by Federal Rule of Evidence 702, which provides: If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise, if: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702.

Expert testimony need only be based on a reliable and scientifically valid methodology that fits the facts of a case. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). The inquiry into the expert's testimony is "a flexible one" where the individual factors are neither exclusive nor dispositive. *See Id.* at 594-95. As such, this Court essentially considers whether the expert retains a broad range of knowledge, skills and training. *Id*.

The court's role as gatekeeper, however, should not replace the adversary system. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. It is certainly not the trial Court's role to determine whether the expert's conclusions are actually correct. *Id.,* at 595. So long as the testimony rests upon "good grounds" it should be tested by the adversary process -- competing expert testimony and active cross-examination – rather than excluded from juror's scrutiny for fear that they will not grasp its

complexities or satisfactorily weigh its inadequacies. *See Ruiz-Trioche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998)(citing *Daubert*, at 596).

### III.  EVIDENCE PRESENTED

| | |
|---|---|
| **Exhibit A** | Excerpt from Transcript of Trial Proceedings in *Alexander v. Gulf Stream, et al*, September 17, 2009 |
| **Exhibit B** | Expert Report of Ervin Ritter, P.E. |
| **Exhibit C** | Excerpt from Deposition of Damien Serauskas |
| **Exhibit D** | Report of Defense Expert Workplace Hygiene |
| **Exhibit E** | Declaration of Ervin Ritter, P.E. |
| **Exhibit F** | Excerpts from Deposition of Ervin Ritter, P.E. |

### IV.  RITTER IS QUALIFIED.

As the Court will recall, Mr. Ritter was admitted as an expert on mechanical engineering and HVAC systems at the Alexander trial. *See Alexander v. Gulf Stream, et al,* Trial Testimony, September 17, 2009, attached as **Exhibit A**. As set forth in his CV (attached at pp. 4-6, as part of Mr. Ritter's report, at **Exhibit B**), he is qualified to testify in these areas, and Defendant does not challenge his qualifications. Defendant's expert Damien Serauskas even acknowledges that Mr. Ritter is "well qualified" in forensic analysis and design engineering, which is exactly what Mr. Ritter is doing here. *See* D. Serauskas Deposition, at p. 96, line 11 to p. 99, line 15, attached as **Exhibit C**. Defendant does challenge three of Mr. Ritter's opinions.

## III. CHALLENGED OPINIONS

   A. Negative Air Pressure Condition Draws Contaminants into Living Space.

First, Defendant challenges Mr. Ritter's opinion that "a negative pressure condition draws contaminants into the living space."   In sum, Mr. Ritter's conclusion is based on sound data and observations:

- His personal observation that air was emerging from the ceiling when the air conditioning was running;

- Workplace Hygiene's (Defendant's expert) August 10, 2009 test data which also confirmed this and which measured the velocity of the emerging air at 530 feet per minute. *See* Workplace Hygiene Report, attached as **Exhibit D**;

- Workplace Hygiene's finding of a positive pressure relationship between ceiling cavity above the bedroom and the indoor space. This confirms that a duct was leaking because, if the duct was tight, the pressure relationship would be zero;

- Workplace Hygiene's finding of a positive pressure relationship between wall cavity and indoor space. This also confirms a conclusion that the unit is operating in a negative pressure condition.

- His personal observation of air entering the living space.

*See* Declaration of Ervin Ritter, P.E., attached as **Exhibit E**, at ¶ 2.  This is data that Mr. Ritter routinely uses in his normal practice to determine pressure differential and duct leakage. *See id*. at ¶ 3.   There is no reason to strike this opinion.

   B.   Ductwork does not meet standards.

Second, Defendant challenges Mr. Ritter's opinions that the ductwork in the unit fails to meet ASHRAE and SMACNA standards, or other standards.   Defendant's arguments are based on the contention that only standards governing travel trailers should apply to this unit. However, Mr. Ritter's opinions are based on the fact that this unit was built for full-time

residency.  This is not a legal conclusion—it is a fact.  It is soundly rested on the FEMA specifications and the facts of this case.[1]  This was explained in Mr. Ritter's report (Ritter Report, **Exhibit B**, at p. 14) and Defense counsel explored that at length with Mr. Ritter at his deposition, so this should come as no surprise.  *See* E. Ritter Deposition, attached as **Exhibit F**, at pp. 126, 216, 221-24.  This is a proper assumption for an expert to make and one that is based on sound facts.

Based on the fact that the unit was intended for, and was used as, a full-time residence, Mr. Ritter opined on which standards a prudent design engineer should look to and whether the unit met those standards.  *See* Ritter Dec., at **Exhibit E**, at ¶ 4.  He opines that they do not.

First, he states that NFPA 1192, Chapter 5 covers travel trailers.  Although it only discusses heating systems, a prudent HVAC engineer will apply the same principles to a cooling system.  *See id.*, at ¶ 5. The ductwork in this unit does not meet NFPA 1192 because of the existence of duct leakage in the unit.  *See id.*

Second, since the intended use of the unit is for full-time residency, a prudent HVAC engineer will also look to codes/standards which are in common use and adopted by federal, state and local governments for residential building.  *See id*. at ¶ 4.  Those standards include NFPA 90 B-Standard for the Installation of Warm Air Heating and Air-Conditioning System, ASHRAE 62.2-2004—Ventilation and Acceptable Indoor Air Quality in Low-Rise Residential Buildings, ASHRAE Applications Handbook 2003, and IRC 2003: International Residential Code.  *See id.* at ¶ 6;  *see also* Ritter Report, **Exhibit B**, at p. 14.   The unit does not meet those standards because of lack of ventilation (fresh air) per ASHRAE 62.2-2004.  *See Ritter Dec.,* **Exhibit E***,* at

---

[1] Defendant refers to the unit as an "Emergency Housing Unit."

¶ 6.    The unit's duct construction does not meet IRC 2003, which references the SMACNA standards and ASHRAE for duct construction and duct design, because the ductwork is not insulated. *See id.*  Also, the ductwork does not meet the International Building Code for the same reasons. *See id.*

In sum, Mr. Ritter has provided sufficient basis for his opinion that the ductwork in the unit does not meet these standards. There is no reason to strike this opinion.

C.    Design Deficiencies

Third, Defendant challenges Mr. Ritter's opinions as to improper placement of the vapor barrier, the insufficient R-value in the insulation, and the design of the ductwork. In his report, Mr. Ritter explained how these designs were flawed and how different designs would result in conditions that do not exacerbate formaldehyde emissions. *See* Ritter Report, **Exhibit B**, at pp. 11-12. He also explained this at his deposition. *See* Ritter Depo.*,* **Exhibit F**, at pp.101-104, 122-125, 126-128, 172-175, 202-203, 212-216, and 222-224.

As to the vapor barrier placement, he opines that it should be on exterior of side of the wall. This would result in no cost difference, this would not affect the utility of the unit, and there is nothing in the FEMA specifications that would prohibit this. *See* Ritter Dec., **Exhibit E,** at ¶ 7.

As to the insufficient R-value in the insulation, he opines that the manufacture should have used expanding foam insulation. This would result in a cost difference of no more than $100, this would not affect the utility of the unit, and nothing in the FEMA specifications would prohibit this. *See* Ritter Dec., **Exhibit E,** at ¶ 8.

As to the ductwork, he opines that it required insulation. This would result in increasing

the duct space by approximately 3 inches in width and 3 inches in height to accommodate the insulation. The cost difference would be minimal, this would not affect the utility of the unit and there is nothing in the FEMA specifications that would prohibit this. *See* Ritter Dec., **Exhibit E,** at ¶ 9.

In order to demonstrate that a product is unreasonably dangerous in design under the LPLA, the plaintiff must (1) identify a specific alternative design that existed and was capable of preventing his injury; and (2) perform the requisite risk-utility analysis. *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir.2000). An alternative design must be reasonably specific and not based on mere speculation. *Seither v. Winnebago Industries, Inc.,* 853 So.2d 37, 41 (La.App.Ct.2003). Mr. Ritter's alternative designs are simple and specific, and require simple and inexpensive modifications in the design of the unit. None of these modifications would alter the utility of the unit (aside from making it safer) and the FEMA specifications do not prohibit these modifications.

Further, it is important to keep in mind that this is not a summary judgment motion or a motion for directed verdict motion, as was the case in *Seither*. In *Seither*, the question was not whether expert opinions should be allowed, but whether those opinions which had been offered met the standard of a directed verdict. This is a motion questioning whether Mr. Ritter's opinions are based on "good grounds." *Ruiz-Trioche,* 161 F.3d at 85. They are and, thus, they should be tested by the adversary process -- competing expert testimony and active cross-examination – rather than excluded from juror's scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. *Id.*

## **PRAYER**

Wherefore, Plaintiff respectfully requests that the Court deny Defendant's Motion.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
ROBERT BECNEL
DENNIS REICH, Texas # 167396

## CERTIFICATE OF SERVICE

    I hereby certify that on November 13, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                          s/Gerald E. Meunier
                                          GERALD E. MEUNIER, #9471