UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
|       FORMALDEHYDE PRODUCTS | * | |
|       LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Dubuclet v. Fleetwood Enterprises, Inc.* | * | |
|  Docket No. 07-9228; | * | |


**PLAINTIFF'S RESPONSE TO DEFENDANT GULF STREAM COACH, INC.'S
MOTION *IN LIMINE* TO EXCLUDE
EXPERT TESTIMONY OF STEPHEN SMULSKI, PhD.**

Plaintiff, Elisha Dubuclet, individually and on behalf of Timia Dubuclet, files this response to Defendant Gulf Stream Coach, Inc.'s Motion *in Limine* to Exclude Expert Testimony of Stephen Smulski, PhD.

**I.
EXHIBITS**

| | |
|---|---|
| Exhibit A. | Affidavit of Stephen Smulski, PhD |
| Exhibit B. | Excerpts from Smulski Deposition in *Alexander* |
| Exhibit C | Smulski Curriculum Vitae |
| Exhibit D | Excerpts from Smulski Deposition in *Dubuclet* |

1

## II.
## BACKGROUND

As the Court is well aware Dr Stephen Smulski has previously testified in the FEMA Formaldehyde Products Liability litigation as an expert on wood science and offered alternative design opinions in the *Alexander* case. Despite prior rulings allowing Dr. Smulski to testify about design alternatives for travel trailers as it would related to reducing formaldehyde, Defendants challenges Dr. Smulski's opinions, many of which are very similar to the opinions he was allowed to render in the *Alexander* case.

## III.
## ARGUMENT AND AUTHORITIES

Defendants allege that Dr. Smulski is not qualified to render opinions on alternative design and or that his opinions are not reliable. Defendant's Memo, pp. 6-7. As to his qualifications, Dr. Smulski holds a PhD degree in wood science and forest products. *See* Exhibit A, p. 1. He serves as a consultant in wood science through his company Wood Science Specialists, Inc. *See* Exhibit A, p. 1. As a wood scientist, he focuses on solving performance problems with wood products for residential, industrial, and institutional settings. *See* Exhibit B. p. 21. He works with architects and engineers in specifying suitable wood products for particular applications. *See* Exhibit B, p. 21. He has published numerous articles on wood and wood-based products, including one entitled "Formaldehyde Indoors," a summary of the then-current knowledge pertaining to the release of formaldehyde by wood composite products. *See* Exhibit A, p. 1; Exhibit B, p. 31. Dr. Smulski's expertise necessarily encompasses the health aspects of wood products, and he routinely lectures on the adverse health effects from the off-gassing of formaldehyde from particle board, fiberboard, and plywood. *See* Exhibit A, p. 2. Because of his

knowledge of wood and wood composite products, and because wood composite products made up such a significant part of the construction and furnishings of the Anderson trailer, Dr. Smulski was asked to catalogue and evaluate the wood products in the Anderson trailer. *See* Exhibit A.

With regard to the reliability of his opinions, as a professional in the field of wood science, Dr. Smulski routinely provides the same type of evaluation for architects and engineers that he offers in his affidavit. See Exhibit B, p. 21-22, 372. His opinions are not "made for litigation". Outside of the courtroom, his job is to determine whether certain wood products are appropriate for their intended applications. See Exhibit B, p. 21-22, 372. This exactly what he did in this case. It is axiomatic that his education and experience have imbued him with the knowledge of the type of facts necessary to reach a valid conclusion. *See* In re Paoli R.R. Yard PCB Litig., 35 F.3d at 747.

Defendants challenge certain of Dr. Smulski's opinions. These will be taken up in sequence.

Alternative Design

Dr. Smulski's opinions center on the wood products used in the travel trailer, their formaldehyde emitting characteristics and methods to reduce the amount of formaldehyde emissions from the wood and the buildup of the same in the travel trailer. As the Court is well aware, Dr. Smulski was qualified to and did render alternative design opinions in the *Alexander* case. Dr. Smulski, has lectured and written on composite wood products and formaldehyde off gassing for years. As Dr. Smulski explained in his deposition in *Alexander*, the job of a wood scientist is to aid engineers and architects in choosing the most suitable wood product for their projects, and to trouble-shoot performance problems when wood products fail within their application. *See* Exhibit B, pp. 21-22, 372.

3

Dr. Smulski is, of course, familiar with the characteristics of the wood itself. *See* Exhibit A, p. 1-2. He understands the propensity of certain wood products to emit gases, and knows which gases they emit. *See* Exhibit A, p. 2. He is exceptionally informed on the adverse health effects of exposure to formaldehyde from wood products, as he has written a book and given lectures on the subject. *See* Exhibit A, p.2. In determining whether a certain wood product would be suitable for a given application and whether an alternate wood product could be used, Dr. Smulski must investigate the application: design specifics, intended use and expected misuse, the environment in which it will be used, and available remedies for wood-related problems. *See* Exhibit B, pp. 24, 52.

Dr. Smulski is qualified to determine the suitability of a wood product for a certain application because he does so every day as part of his profession. *See* Exhibit B, p. 52. There is no reason that he should not be qualified to do the same thing as it relates to the Dubuclet trailer. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1317 (9th Cir. 1995)(*Daubert II*); *see also Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). ("Thus, a court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area.") Dr. Smulski's affidavit should therefore be admitted in full. *See* Id.

Defendants take issue that he is not a *civil engineer*. Defendants Memo p. 4. This misses the point. It is not a *sine qua non* to offer alternative design opinions that one be a civil engineer. Nor is it a requirement under federal law. Furthermore, Dr. Smulski's opinions speak primarily to the selection of the wood products used as opposed the structural and load bearing capacities of the structural members of the travel trailer. He is familiar with and knows the properties of the wood products he suggested for the Fleetwood travel trailer. He would not

4

expect the wood products he suggested to perform any differently, than they would in the Fleetwood trailer. Exhibit D, pp 67-68. The only difference between the wood products he suggested and those that the Defendant used was that the wood products he suggested did not contain urea formaldehyde. Exhibit D, pp 67-68. As stated earlier, Dr. Smulski works with architects and engineers in specifying suitable wood products for applications. Exhibit B, p. 21. This is exactly what he does on a day to day basis.

Alternatively, if Plaintiff had offered a civil engineer, Defendants would have likely said that as a civil engineer, by his training is not qualified to render opinions on the off gassing characteristics wood. Certainly, Dr. Smulski's 10+ years of education qualify him to do much more than just catalogue wood. *See* Exhibit C. p. 1. Exactly as he does in his professional career, he has evaluated whether the wood products in the Dubuclet r trailer were suitable for the purpose for which the trailer was ultimately used. *See* Exhibit A, p. 9. Defendants seem to take the approach that unless Dr. Smulski is a civil engineer, he is not qualified to render opinions on design defect. There is no case law to support the same and runs counter to logic. Dr. Smulski is not rendering opinions on wood products, not on load bearing capacities etc. such as a civil engineer would. The wood products that Dr. Smulski issued opinions about are not load bearing, as he issued opinions about the wall paneling and cabinets etc. Exhibit A.

In their Memo, Defendant cites the case of *Seither v. Winnebago Industries, Inc*., 853 S. 2d 37 (La. Ct. App. 2003). Defendant's Memo, p. 7. As Defendant's concede Seither does not address the admissibility of an expert's opinion. Defendant's Memo, p. 8. Defendant notes that Dr. Smulski did not did not do any economic feasibility analysis. Dr. Smulski's opinion is that the wood products that he was suggesting were commercially available at the time the Dubuclet unit was produced, and in fact had been available for some period of time. Furthermore,

5

Defendants have not provided the unit cost for the formaldehyde emitting wood products in the unit. Plaintiffs should not be criticized for failing conduct an economic analysis when Defendants failed to provide the necessary information to do the analysis.

Defendants also allege that Smulski cannot identify a specific manufacturer who makes generic products he claims Fleetwood could have used in the alternative. Defendant's Memo p. 6. It is not necessary in the case law to identify a specific manufacturer, all it is necessary is that the materials were available and they were and have been for a number of years and they were in this case. Exhibit A, p. 9. Moreover, at the same time Fleetwood was manufacturing travel trailers, they were also manufacturing mobile homes that have been subject to formaldehyde standards since 1984 and which restricted the amount of formaldehyde that could be emitted from those wood products. Exhibit A, pp. 8-9. It is not essential that Dr. Smulski knew the "name" of the wood manufacturers, especially when Fleetwood already knew their names and in fact was doing business with them and buying wood from them to use in their manufactured houses for over twenty years.

Further in response to Defendant's allegations as to the Dr. Smulski's ability and qualifications to render opinions on design alternatives, the Court has previously noted in *Alexander*, that he could not offer general opinions in design practices, but he offer opinions on design practices related to the use of wood, wood-based wood composite materials in design. Court Rec. 2800, pp. 3-4. By their Motion, Defendants are seeking a second bite at the apple on an issue that the Court has already addressed as in *Alexander* when Gulf Stream raised their Motion in Limine on Smulski that he had failed to identify expertise in developing alternative designs for EHU's and the Court did not find that argument persuasive. Court Rec. 2349-2, p. 23.

With regard to the mechanical ventilation systems that Dr. Smulski suggested, they were likewise suggested by Plaintiffs expert Ervin Ritter. Although he could not identify any trailers that had mechanical ventilation systems, mechanical ventilation systems have been used on a variety of buildings for years. More importantly Fleetwood has been making manufactured housing since the 1980's and the HUD regulations had required mechanical ventilation systems in manufactured housing since 1984. Exhibit A, p. 10. Fleetwood had mechanical ventilation systems available to them, the merely needed to put them on a travel trailer to reduce the formaldehyde concentration. Furthermore Congress has now passed stricter regulations for travel trailers in 2008 and the new travel trailers must be equipped with mechanical ventilation system. Exhibit D, p. 63. So the design suggestion Dr. Smulski recommended in this regard obviously is feasible and is further a repeat of what the CDC and Lawrence Berkeley stated in their reports that the air exchange rate in the trailers should be increased. Furthermore, as described in Dr. Smulski's report, some 30 years ago in 1979 RADCO suggested to Fleetwood that "induced outside air ventilation [a mechanical ventilation system] was found to be the most effective means of reducing the HCHO level in a home." Smulski Report page 9. Dr. Smulski's opinion is not that type of opinion that is made for litigation and so devoid of support that it should be excluded.

Curiously, Defendants criticize Dr. Smulski stating, "Critically, Smulski has not provided any specification that Fleetwood should have changed. He only offers generic suggestions that Fleetwood could have used other products". Defendant's Memo, p. 9. There is no requirement under the law that an expert must give a "specification" before he can render design opinions, however, it is just such "generic" opinions that Congress has now made into a specification for new travel trailers that "No Luan, MDF, vinyl gypsum or products which contain urea

7

formaldehyde will be allowed." Exhibit A, p.10, 19, and Exhibit D, p. 65.   When Dr. Smulski was asked whether or not he has done any study that uses the low or zero emitting formaldehyde wood, he stated he had not but that there was no reason to believe that the wood would behave any differently structurally as the only difference was the type of resin or glue that was used to bond the wood products together. Exhibit D, pp 66-67.  Apparently the United States Congress is of the same opinion.

Plaintiff would further distinguish the *Seither v. Winnebago* 853 So.2d 37 (La. Ct. App. 2003) case which defendants cite.  *Seither* involved a crashworthiness claim in which the expert came up with an alternative design for a recreational vehicle.  When the experts proposed alternative design was tested and indicated that the occupant still would have died in the accident, the expert came up with a new alternative design had no support that it would work. Id. 41. This case is entirely different than the case at bar, where Dr. Smulski has recommended methods suggested to Fleetwood some 27 years before this travel trailer was manufactured, where Fleetwood had the know-how since they were making manufactured housing with the changes Dr. Smulski suggested since 1980's, and where Congress has now approved new rules with requirements consistent with what Dr. Smulski' suggested – no urea formaldehyde wood products and mechanical ventilation.

Air Exchange Rates

Defendant criticizes Dr. Smulski on his comments on the air exchange rates in the trailer saying that "he [sic] not conducted any analysis of the air exchange rates with the Dubuclet EHU.  Defendants Memo at 4. This argument is disingenuous as although Plaintiffs requested the opportunity to conduct a blower door test to determine the air exchange rate, they were not allowed to do so by the Defendants.  The Defendants cannot deny Plaintiffs the opportunity to do

8

testing that would determine the air exchange rate and then criticize the expert for failing to do the test.

### Frame Can Bend

Defendant next challenges Dr. Smulski's opinion that the frame can "bend" but he has "no evidence" that there was any damage to this particular unit. Defendant's Memo at 9. All Dr. Smulski testified was that the frame "can bend". This was an opinion similar to what Dr. Smulski offered in the Alexander trial, that was challenged and that the Court allowed. Defendant's argument is without merit. In his report, Dr. Smulski opined, trailer frame *can bend* allowing formaldehyde gas inside the wall and ceiling cavity to more easily enter the living space. Exhibit A., at paragraph 14. Defendants mistake Dr. Smulski's opinion that this "can" occur with "did" occur. He did not testify in his deposition or state in his report that it *did bend*, merely that *it can bend*. These opinions are well within the scope of Dr. Smulski's expertise and the Court has previously allowed his opinions on the same.

### Formaldehyde Testing Results

In section C, of the Defendants Memo, page 4 they write "The Court has stated that while Smulski can refer to the results of various testing on levels of formaldehyde, 'it must be clear that this testing was not done by him and is not his opinions, but rather is available information that he consider in forming his ultimate opinions.'" Plaintiff has no objection to the same.

### Test Results and Medical Causation

9

Defendants in Section C, of their Memorandum, p. 10, ask that Plaintiffs adhere to the same ruling that the Court issued in *Alexander* with regard to test results. Plaintiffs have no opposition to the same.

In Section D. of their Memorandum, Defendant's state that Smulski is not qualified to render medical causation opinions. Defendant's Memo, pp. 10-11. However the court has previously ruled that Dr. Smulski can render an opinion as he did previously in the *Alexander* about his knowledge of the " release of formaldehyde gas from wood-based composite panels including particleboard, medium density fiberboard, and hardwood plywood used in site built houses and in factory-built manufactured houses and the adverse health effects that exposure to formaldehyde gas can cause." Order at 2, Ct. Rec. 2800. To the extent that the Court has specifically ruled "Dr. Smulski may testify that he is aware that exposure to formaldehyde at some level may be harmful, he cannot testify about how long living in the EHU for a 'long period of time'" would adversely affect health ( Court Rec. at p. 4), Plaintiff does not seek to revisit that ruling. Defendant merely asks whatever limits the Court put upon Dr. Smulski in this regard in *Alexander* that the same be imposed upon his testimony here. Plaintiff has no opposition to the Court applying the same allowances and restrictions on Dr. Smulski's testimony on health and medical issues as were set forth in the Court's ruling on Dr. Smulski in *Alexander*.

## IV.
## **CONCLUSION**

Dr. Smulski's affidavit should be admitted in full because it satisfies all of the requirements of *Daubert* and its progeny. In his affidavit, Dr. Smulski not only articulates his opinions, for which he is imminently qualified, but also provides the facts and reasoning

10

underlying his opinions. Defendant, however, objects to the very components that make the opinions admissible – the foundational facts and reasoning. Defendant should not be allowed to bend the rules of evidence with arguments unfounded in both the facts and the law to transform an expert report that is entirely admissible into one that is not. Defendant's Motion *in Limine* other than the matters of agreement set forth above should therefore be denied.

## V.
## PRAYER

For the reasons stated in this Response, Plaintiff respectfully requests that the Court deny Defendant's Motion *in Limine* as set forth above.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
      GERALD E. MEUNIER, #9471
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &
      Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:    504/522-2304
      Facsimile:    504/528-9973
      gmeunier@gainsben.com

      s/Justin I. Woods
      JUSTIN I. WOODS, #24713
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &
      Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:    504/522-2304
      Facsimile:    504/528-9973
      jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
ROBERT BECNEL, #14072
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL WATTS, Texas # 20981820

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record as indicated below in accordance with the Federal Rules of Civil Procedure on November 13, 2009.

                                  /s/Gerald E. Meunier
                                  GERALD E. MEUNIER