UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION: N(5) |
| | | * | |
| This Document Relates to: | | * | |
| *Dubuclet v. Fleetwood Enterprises, Inc.* | | * | |
| | | * | JUDGE: ENGELHARDT |
| *Case No. 07-9228* | | * | |
| | | * | |
| | | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT FLEETWOOD ENTERPRISES, INC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO EXCLUDE REFERENCES TO POST-KATRINA "PROTOTYPE"</u>**

Defendant Fleetwood Enterprises, Inc. (hereinafter "Fleetwood") has moved this Court to exclude evidence, testimony, and argument regarding the "prototype" manufactured housing that one Fleetwood facility attempted to manufacture post-Katrina in order to determine whether Fleetwood would consider bidding on any future FEMA contract. This evidence is irrelevant: it deals with manufactured housing, not travel trailers, and it has no bearing on what any alternative design could be for a travel trailer. Furthermore, allowing this evidence would confuse the jury, particularly in keeping travel trailers separate from manufactured housing, and it would unduly prejudice Fleetwood by implying that Fleetwood created some type of viable and feasible alternative to the Dubuclet unit, when the evidence does not support that conclusion.

**I.      Fleetwood's comments on the "prototype" at issue.**

Steven Smith, a former Fleetwood employee who worked his entire career at Fleetwood in the manufactured-housing division,[1] testified that at one Texas facility, in 2008 or early 2009,

---

[1] Smith Dep. (Nov. 3, 2009) at 7:10-16 (Ex. A). He testified that he had no responsibility or oversight for the travel trailers manufactured by Fleetwood. *Id.* at 9:11-16.

1

Fleetwood employees tested three or four manufactured housing units to determine whether Fleetwood should bid on any future FEMA project, given the stricter formaldehyde guidelines that FEMA announced it would put in place.[2] In attempting to construct a manufactured home that could meet the new FEMA standards, Fleetwood staff at the Texas facility had to do "offline work" and create everything, and could not buy anything off the shelf.[3] Smith testified that he has "no idea" whether the travel trailer division conducted any similar tests.[4] William Farish, a former Fleetwood employee who was an engineer in the manufactured housing division,[5] also testified that there had been testing done at a Waco Fleetwood facility when that facility was attempting to produce a manufactured housing unit that would meet the new FEMA requirements for ambient air formaldehyde.[6]

## II.   Argument and Citation of Authority

Under the Federal Rules of Evidence, only relevant evidence is admissible.[7] Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.[8] The Court, however, may still exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[9]

In this case, it is important to note the Louisiana requirements to show an alternative design in a products liability case. In *Seither v. Winnebago Industries, Inc.*, the court found that

---

[2] Smith Dep. at 66:13-75:5
[3] Id. at 74:11-75:2 (Ex. A).
[4] Id. at 75:3-5 (Ex. A).
[5] Farish Dep. (Nov. 4, 2009) at 8:4-22 (Ex. B).
[6] Id. at 10:19-12:6 (Ex. B).
[7] Fed. Rule Evid. 402.
[8] *Brookshire Bros. Holding, Inc. v. Total Containment, Inc.*, Civ. No. 04-1150, 2007 WL 2491807, *2 (W.D. La. Aug. 30, 2007); Fed. Rule Evid. 401.
[9] Fed. Rule Evid. 403.

the trial judge abused his discretion in failing to grant a directed verdict as to the alternative design issue.[10] In that case, there was no valid alternative design presented.[11] The expert "presented merely a concept that was untested, unengineered, and not presented to the jury in any fashion more than mere speculation."[12] The court also noted that the plaintiffs failed to present a risk/utility analysis of the proposed alternative design.[13] In that case, the expert presented an economic feasibility analysis, but it did not have a material quote or manufacturing labor factor.[14]

> A. The "prototype" evidence is irrelevant because it only deals with manufactured housing and has no bearing on an alternative design claim.

Smith was clear in his testimony that the experiment at Fleetwood to see what was required to meet the new FEMA ambient air requirements as to formaldehyde were only done with manufactured housing. He has no idea what happened on the travel trailer side. Here, the Dubuclets resided in a travel trailer, not manufactured housing. The "prototypes" that were constructed were manufactured housing, not travel trailers. Smith testified that everything had to be built "offline" and Fleetwood had to create the trim, moldings, and cabinet materials.[15] There is nothing in the record as to the precise specifications that were used, and design change was only made in a manufactured housing unit, not in a travel trailer. Smith testified that "[v]irtually everything" was different in the prototype, including "[a]ll wood cabinets, all wood painted trim throughout the unit, linoleum throughout,"[16] and drywall throughout.[17] There is nothing in the record to infer that any design change made in this "prototype" could have been applicable in a

---

[10] *Seither v. Winnebago Indus., Inc.*, 853 So. 2d 37, 41 (La. Ct. App. 2003).
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] Smith Dep. at 74:11:75:2 (Ex. A).
[16] *Id.* at 71:10-15 (Ex. A).
[17] *Id.* at 134: 13 -15 (Ex. A)

3

travel trailer to make it a feasible alternative design. In fact, Mr. Smith testified that "I personally don't think it is feasible to build and all drywall travel trailer.[18] It is not even evident that the changes in design resulted in meeting the new FEMA requirement—Smith testified that they had tested one standard product, and that it was above the FEMA requirement, but there is no evidence that the changes resulted consistently in a design that met the new FEMA requirements. Moreover, there was no discussion about any price point that the unit could have ever been manufactured at—only that it "would be expensive because the products that were substituted are not available or readily available."[19] This testimony about a different product does not have any bearing on the alternative design claim.

> **B.  Allowing this evidence would unduly prejudice Fleetwood by implying that there was an alternative design.**

If any evidence or testimony were permitted that Fleetwood was attempting to build "prototypes" to meet the new FEMA ambient air standard, even if the Court found that this evidence were relevant, it would unduly prejudice Fleetwood and confuse the jury. Allowing this evidence would confuse the jury because it implies that there was a more structured program than merely trying to determine whether, as a business decision, a future bid for FEMA could be made for manufactured housing. By allowing this information to be presented to the jury, it would improperly introduce evidence related to manufactured housing and ask the jury to make a decision in a travel trailer case on actions that only occurred in the manufactured housing side of the company. No design change was ever implemented, much less in a unit similar to the Dubuclet unit. Plaintiff should not be permitted to attempt to confuse the jury on the two products by introducing this information, and it should be excluded.

---

[18] Id. at 134:9 – 12 (Ex. A)
[19] *Id.* at 72:20-73:3 (Ex. A).

4

**III.     Conclusion**

For these reasons, Fleetwood requests that all evidence, testimony, and argument regarding the "prototype" manufactured housing units not be admitted at trial.

This 15th day of November 2009.

        Respectfully submitted:

         /s/ Richard K. Hines, V
        Richard K. Hines, V
        GA Bar No. 356300
        NELSON MULLINS RILEY & SCARBOROUGH, LLP
        Atlantic Station
        201 17th Street, NW, Suite 1700
        Atlanta, GA  30363
        (404) 322-6000 (phone)
        (404) 322-6050 (fax)

        Jerry L. Saporito
        LA Bar No. 11717
        LEAKE & ANDERSSON, L.L.P.
        1700 Energy Centre
        1100 Poydras St.
        New Orleans, LA 70163-1701
        (504) 585-7500 (phone)
        (504) 585- 7775 (fax)

        Counsel for Fleetwood Enterprises, Inc.

## **C E R T I F I C A T E OF SERVICE**

  I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )  Hand Delivery     ( )  Prepaid U.S. Mail

( )  Facsimile       ( )  Federal Express

(X)  CM/ECF

  New Orleans, Louisiana, this 15th day of November 2009.

               /s/ Richard K. Hines, V
              Richard K. Hines, V
              Georgia Bar No. 356300
              richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)