UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 SECTION: N(5) |
| This Document Relates to: *Dubuclet v. Fleetwood Enterprises, Inc., et al.* Case No. 07-9228 | | * * * | JUDGE: ENGELHARDT MAG: CHASEZ |

*************************************************************************

**DEFENDANT FLEETWOOD ENTERPRISES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF THOMAS FRIBLEY**

**May It Please The Court:**

Through undersigned counsel, comes Defendant Fleetwood Enterprises, Inc. ("Fleetwood") who respectfully submits this memorandum in opposition to Plaintiff's Motion to Limit the Testimony of Thomas Fribley ("Plaintiff's Motion to Limit") (Rec. Doc. 6650), and in support thereof would demonstrate unto the Court as follows:

## I.   INTRODUCTION

Plaintiff Timia Dubuclet brings this motion to limit the testimony of Fleetwood's recreational vehicle construction expert, precluding his testimony, on four issues: (1) that the Dubuclet unit met industry standards for such a unit; (2) opinions relating to the HVAC system in the Dubuclet unit; (3) opinions relating to when damage to or certain conditions he observed in and on the Dubuclet unit occurred, and (4) opinions relating to Fleetwood's formaldehyde warning posted in the Dubuclet unit.

First, Mr. Fribley is fully qualified to testify that the Dubuclet unit met recreational vehicle industry standards and has laid the proper foundation for his opinion in his report

submitted in this case[1] and in his deposition given in this case[2]. Second, Mr. Fribley was not offered as an HVAC expert in this matter and did not give opinions as to the sufficiency or insufficiency of the HVAC system in his report in this case, yet he was asked extensive questions about the HVAC system in his deposition by Plaintiff's counsel. Mr. Fribley will not be offered as an expert on this subject except to testify that, based on his observations that the HVAC system components he was able to observe that were present in the Dubuclet unit, met recreational vehicle industry standard. He is qualified to give that opinion. Third, Mr. Fribley inspected the Dubuclet unit and based on his experience in the design and production process of Fleetwood units is fully qualified to testify that certain conditions of and damage to the Dubuclet unit that he observed during his inspection of it in August 2009 were not the condition the unit was in when it left Fleetwood's production plant. Fourth, Mr. Fribley was not offered as a warnings expert in this matter and did not give opinions relating to the warning in his report in this case, yet he was extensively questioned by Plaintiff's counsel about the Fleetwood formaldehyde warning in his deposition. With respect to the Fleetwood formaldehyde warning, Mr. Fribley intends to offer only testimony that he saw the formaldehyde warning in place in the Dubuclet unit during his inspection of the unit in August 2009. He is not offered by Fleetwood as an expert on the sufficiency of the warning. The cross examination of Mr. Fribley by Plaintiffs counsel in this deposition, eliciting his interpretations or opinions about the warning label (for example, testimony on Exhibit B, pages 141 through 168), should not be admitted.

## II.    LAW AND ARGUMENT

Federal Rule of Evidence 702 permits a witness who, through his expertise, has the knowledge, skill, experience, training, or education to offer scientific, technical, or other

---

[1] Attached as Ex. A is the Report of Thomas Fribley dated August 20, 2009.
[2] Attached as Ex. B is the deposition of Thomas Fribley taken October 21, 2009.

specialized knowledge may testify regarding that knowledge if it will assist the trier of fact to understand the evidence or to determine a fact in issue.  A proposed expert witness must first be qualified to testify regarding the issues for which he is offered.[3]  Mr. Fribley is qualified to give the opinions that the Dubuclet unit, including the HVAC components he observed in place in the unit, meets recreational vehicle industry standards, that certain conditions and damage found on the unit upon his inspection in August 2009 were not the condition of the unit when it left the Fleetwood production line, and that a formaldehyde warning was present in the Dubuclet unit when Mr. Fribley inspected it.

Mr. Fribley has been actively involved in the recreational vehicle business for 30 years.[4] He has been actively involved in the Recreational Vehicle Industry Association ("RVIA") for most of that time, and has been on committees writing textbooks and training programs for recreational vehicle service technicians.[5]  Mr. Fribley was employed by various recreational vehicle manufacturers consistently between 1970 and the mid 2000's when he began his consulting company, serving in positions ranging from district marketing manager to technical advisor to warranty claims administrator to national service manager to Vice President of technical services.[6]  He has co authored owner's manuals for travel trailers.[7]  He served on production development committees for a recreational vehicle manufacturer and had design audit responsibilities.[8]  He has toured various recreational vehicle manufacturing plants and reviewed 15 to 20 different manufacturers' bills of materials for the construction of travel trailers (including Fleetwood's) in the course of the work he did in the class certification portion of this

---

[3] *See U.S. v. Frazier*, 387 F.3d 1244, 1260-1261 (11th Cir. 2004).
[4] Ex. A, Para. 1.
[5] Ex. A, Para. 2.
[6] Ex. B, pages 14 -17.
[7] Ex. B, pages 18 – 19.
[8] Ex. B, pages 20 - 21

case.[9] He has visited Fleetwood recreational vehicle production plants on at least four occasions, observing the manufacturing process.[10] The units he observed being produced at a Fleetwood plant in the early 2000's were "almost an identical product" to the Dubuclet unit.[11] He has provided expert testimony in 200 to 300 cases involving travel trailers or motorized recreational vehicles.[12]

Plaintiffs seek to limit Mr. Fribley's testimony that the Dubuclet unit met industry standards. Mr. Fribley inspected the Dubuclet unit, inside and out, in August 2009, for the purpose of "determine [ing] if it was built to applicable codes and standards at the time of its production. Industry standards."[13] He testified in his deposition that the unit was built to industry standards.[14] He explained repeatedly in his deposition that industry standards for the Dubuclet unit were the NFPA 1192 standard which incorporates various other standards such as SAE standards – that the NFPA 1192 standard "involves the whole recreational vehicle".[15] Plaintiffs complain that Mr. Fribley only spoke to the unit meeting NFPA 1192 standards, however, Mr. Fribley explained that the NFPA 1192 standards ARE the recreational vehicle standards.[16] He further explained that RVIA is not an entity which issues standards, rather it "works with industry members in helping to promulgate the standards in effect that govern recreational vehicles", and that it then incorporates the standards of the NFPA.[17] Mr. Fribley inspected the Dubuclet unit specifically to determine whether, based on his knowledge of recreational vehicle design and construction, this unit met the applicable industry standards. He concluded that it

---

[9] Ex. B, pages 39 – 40, 44, 66 – 67.
[10] Ex. B, pages 40, 43 – 44, 57- 58, 60 – 61.
[11] Ex. B, pages 61 – 62.
[12] Ex. B, page 55.
[13] Ex. B, pages 26, 63 – 64.
[14] Ex. B, pages 97, 100 – 101, 102.
[15] Ex. B, pages 103, 104, 106.
[16] Ex. B, page 106.
[17] Ex. B, pages 109 – 110, 111 – 112.

did.[18] Mr. Fribley has the background and experience to provide this opinion, he explained what the standards were on which he was judging the Dubuclet unit, and based his opinion on a physical inspection of the Dubuclet unit. As such, his opinions that the unit met industry standard should be admitted.

Plaintiffs seek to limit Mr. Fribley's discussion of the HVAC system in the Dubuclet unit. Mr. Fribley did not opine about the sufficiency or insufficiency of HVAC system in the report he submitted in this case. When asked: "So you are not here to offer any expert opinions on heating and air conditioning systems for this unit . . ." he responded: "No sir."[19] Yet, Plaintiffs examined him for pages about the HVAC system. Mr. Fribley intends to testify only to his observations of what was present by way of an HVAC system in the Dubuclet unit and that these met recreational vehicle industry standards. He is not offered to give opinions on its sufficiency or insufficiency of the HVAC system. As shown above, Mr. Fribley is fully qualified to give this one opinion regarding the HVAC system present in the Dubuclet unit.

Plaintiffs seek to keep Mr. Fribley from testifying about the timing of certain moisture, sealant conditions and other damage he observed in the Dubuclet unit during his inspection of it in August 2009. Mr. Fribley readily admitted that he does not know when these conditions or damage to the unit occurred – during transportation of the unit to FEMA, during installation, during occupancy by the Dubuclets, during deactivation of the unit by FEMA, or during the time when the unit was stored at FEMA's yard in Lottie, Louisiana.[20] Mr. Fribley was not asked by Plaintiff's counsel at his deposition, but will testify at trial, that certain conditions and damage to the unit that he observed would not have been present when it left Fleetwood's production facility. By way of example, Mr. Fribley testified when questioned by Fluor's counsel that the

---

[18] Ex. B, pages 100 – 101, 102, 106.
[19] Ex. B, page 170.
[20] Ex. B, pages 130, 133, 137.

screw holes he saw in the unit and which he believes allowed moisture to accumulate at the entry way to the unit were not installed at the Fleetwood plant and were put there at some later time.[21] Mr. Fribley is qualified to and should be permitted to testify which conditions and damage he observed on the Dubuclet unit would not have been in that state when it left Fleetwood's production line. He does not intend to testify when, after the unit left Fleetwood, or who, caused these conditions or damages.

Plaintiffs seek to prevent Mr. Fribley from testifying about Fleetwood's formaldehyde warning which he observed, posted in the unit. Mr. Fribley's report in this case contained no opinions about the warning label. He repeated testified in his deposition that "I didn't write the label – I don't know what their implied meaning was . . . ."[22] Despite repeatedly saying that he had no knowledge about the drafting of the warning, the intended meaning of the warning, etc. he was examined for twenty seven pages of his deposition on the warning issue.[23] With the exception of giving testimony that he observed the formaldehyde warning posted in the bathroom of the Dubuclet unit when he inspected it in August 2009 – an observation which he is fully qualified to state -- Mr. Fribley is not offered to given any opinions about warnings. Fleetwood agrees with Plaintiffs on this issue and notes that all of the questioning on warnings within Mr. Fribley's cross examination in pages 141 to 168 of his deposition should not be admitted and further Plaintiff's counsel should not be permitted to turn this witness into a warnings expert when he is not.

### III.   CONCLUSION

**WHEREFORE,** considering the foregoing, defendant Fleetwood Enterprises, Inc. is entitled to and respectfully requests that this Honorable Court enter an order denying Plaintiff's

---

[21] Ex. B, pages 182 - 183
[22] Ex. B, page 156
[23] Ex. B, pages 141 – 168.

Motion to Limit the Testimony of Thomas Fribley with respect to opinions that the Dubuclet unit met industry standards, including its HVAC components, that certain conditions and damage to the unit observed by Mr. Fribley in August 2009 was not present when the unit left the Fleetwood production plant, and that there was a formaldehyde warning posted in the Dubuclet unit when he inspected it in August 2009 but that he is not the witness to discuss that label or to interpret it.

This 15th day of November 2009.

Respectfully submitted:

 /s/ Richard K. Hines, V
Richard K. Hines, V
GA Bar No. 356300
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)

Jerry L. Saporito
LA Bar No. 11717
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-1701
(504) 585-7500 (phone)
(504) 585- 7775 (fax)

Counsel for Fleetwood Enterprises, Inc.

## C E R T I F I C A T E OF SERVICE

  I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )  Hand Delivery    ( )  Prepaid U.S. Mail

( )  Facsimile    ( )  Federal Express

(X)  CM/ECF

  New Orleans, Louisiana, this 15th day of November 2009.

         /s/ Richard K. Hines, V
         Richard K. Hines, V
         Georgia Bar No. 356300
         richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)