Exhibit A

# Transcript of the Testimony of
# Dr. Edward H. Shwery

**Date taken: August 10, 2009**

**In Re: FEMA Trailer Formaldehyde Products Liability Litigation**

***\*\*Note\*\****
All **electronic deposition & exhibit files**
are available at **www.psrdocs.com**.
Please call or e-mail reporters@psrdocs.com if you need a
**Username** and **Password**.

# Professional Shorthand Reporters, Inc.
Phone:   504-529-5255
Fax:   504-529-5257
Email:   reporters@psrdocs.com
Internet:   www.psrdocs.com

Page 23

```
 1   formaldehyde or levels of formaldehyde
 2   either in general or as it pertains to this
 3   litigation involving travel trailers?
 4        A.   No.  Maybe I should clarify.
 5             My last deposition on a
 6   formaldehyde travel trailer matter, I went
 7   into detail describing that I had been aware
 8   of an issue for many, many years, and that
 9   over the years, have read journal articles
10   and things.  But I didn't go back and study
11   any of the references for this examination
12   of this child.
13        Q.   So you did not rely upon any of
14   those formaldehyde documents or documents
15   dealing with formaldehyde in order to
16   examine Timia Dubuclet or to formulate any
17   of your opinions?
18        A.   That's correct.  It is all prior
19   knowledge and experience.
20        Q.   All right. Well, the Notice of
21   Deposition and the attached Schedule A is
22   Exhibit 1.
23             The disk of reliance materials I
24   will attach as Exhibit 2.
25             The affidavit of Dr. Miller, did
```

1   you rely upon anything in this affidavit to
2   assist you in formulating any of your
3   opinions or did you just read it for
4   background?
5        A.   I did the latter.  I read it for
6   background.
7        Q.   What is Dr. Miller's specialty, or
8   what does he practice in?
9        A.   Well, he is a St. Louis doctor
10  that is board certified in internal
11  medicine, and also, I think, has a master's
12  in public health.  It is in his affidavit.
13            I believe he also has expertise
14  in -- I would have to look at that to be
15  definite.  I can tell you in a moment here.
16            He's board certified in internal
17  medicine, pulmonary disease and clinical
18  pharmacology, and he has a master's of
19  public health degree in environmental
20  health.
21       Q.   So there was nothing that you
22  gleaned from his report that you needed in
23  order to form your opinions on Ms. Dubuclet?
24       A.   Actually, I had already formulated
25  my opinions before I read that.

Page 109

1     A.    That is absolutely correct.
2     Q.    Normally, in general, when there
3   is a psychological issue that somebody has,
4   and whether it's caused by some specific
5   outside event or whether it is caused by
6   tension that leads to the dreams, et cetera,
7   that we have been talking about, does a
8   person tend to get better, psychologically
9   better, when they are removed from that
10  event or from those factors that are causing
11  the anxiety?
12    A.    If the external situation or event
13  would be classified as a stressor, removal
14  from that, you would expect, if that were
15  the primary cause of their psychological
16  reaction or psychological problem, removal
17  from that often shows that problems do go
18  down, unless they become ingrained or there
19  are some other issues that are continuing.
20  But, usually, you would expect it to go
21  down, unless something is perpetuating it.
22    Q.    Do you see anything in Timia's
23  case that is perpetuating these issues?
24    A.    Yes, of course.
25    Q.    What is that?

1     A.   Dr. Farber indicated, when I
2  consulted with him, that she is going to
3  have rashes that will recur intermittently
4  the rest of her life.  The eczema will never
5  be cured is the way he put it.
6          He also said that she is going to
7  be having allergies the rest of her life
8  that are, in his opinion, related to the
9  formaldehyde.  He said that she is allergic
10 to formaldehyde, and he described for me the
11 process by which that will medically result
12 in a recurrence of skin conditions and
13 allergic reactions.
14    Q.   Do you remember what he said so
15 you can relate it to us, what he might have
16 said about that?
17    A.   I thought I just did.
18    Q.   I thought you said "medically
19 explained how it will happen"?
20    A.   Well, I don't know that I could
21 reproduce it.  I understood what he said.
22 I'm not a physician.
23    Q.   Since she had eczema from the time
24 she was two years old, and she was six or
25 seven when the hurricane occurred, would she

Page 23

```
 1   formaldehyde or levels of formaldehyde
 2   either in general or as it pertains to this
 3   litigation involving travel trailers?
 4        A.   No.  Maybe I should clarify.
 5             My last deposition on a
 6   formaldehyde travel trailer matter, I went
 7   into detail describing that I had been aware
 8   of an issue for many, many years, and that
 9   over the years, have read journal articles
10   and things.  But I didn't go back and study
11   any of the references for this examination
12   of this child.
13        Q.   So you did not rely upon any of
14   those formaldehyde documents or documents
15   dealing with formaldehyde in order to
16   examine Timia Dubuclet or to formulate any
17   of your opinions?
18        A.   That's correct.  It is all prior
19   knowledge and experience.
20        Q.   All right. Well, the Notice of
21   Deposition and the attached Schedule A is
22   Exhibit 1.
23             The disk of reliance materials I
24   will attach as Exhibit 2.
25             The affidavit of Dr. Miller, did
```

1   you rely upon anything in this affidavit to
2   assist you in formulating any of your
3   opinions or did you just read it for
4   background?
5        A.   I did the latter.  I read it for
6   background.
7        Q.   What is Dr. Miller's specialty, or
8   what does he practice in?
9        A.   Well, he is a St. Louis doctor
10  that is board certified in internal
11  medicine, and also, I think, has a master's
12  in public health.  It is in his affidavit.
13            I believe he also has expertise
14  in -- I would have to look at that to be
15  definite.  I can tell you in a moment here.
16            He's board certified in internal
17  medicine, pulmonary disease and clinical
18  pharmacology, and he has a master's of
19  public health degree in environmental
20  health.
21       Q.   So there was nothing that you
22  gleaned from his report that you needed in
23  order to form your opinions on Ms. Dubuclet?
24       A.   Actually, I had already formulated
25  my opinions before I read that.