UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 |
| | | | SECTION: N(5) |
| This Document Relates to: *Dubuclet v. Fleetwood Enterprises, Inc.* | | * * * | JUDGE: ENGELHARDT |
| Case No. 07-9228 | | * * * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT FLEETWOOD ENTERPRISES, INC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO EXCLUDE EMAILS REGARDING "HARMFUL CHEMICALS NOTICE"</u>**

Defendant Fleetwood Enterprises, Inc. (hereinafter "Fleetwood") has moved this Court in limine to exclude certain emails with the subject line "FW: Harmful chemicals notice." This email chain, and all testimony related to it, is irrelevant and unduly prejudicial to Fleetwood. Fleetwood anticipates that Plaintiff may seek to introduce this email chain in an attempt to show that Fleetwood had knowledge about the purported dangers of formaldehyde. This email chain is written about an unknown label, allegedly found on a Fleetwood travel trailer unit, and has no probative force in this matter. Fleetwood has produced all relevant labels regarding the Dubuclet unit, and introducing evidence relating to an unseen, unidentified label from a different unit should be excluded.

Fleetwood is requesting that the emails themselves be excluded from evidence and that testimony regarding the emails be excluded, including all testimony from Jessica Guay, certain

testimony from Jason Leidig,[1] certain testimony from Stephen Smith,[2] and certain testimony of Rene Rodriquez.

## I. Factual background regarding the email chain

The email chain at issue began on July 11, 2006, initiated by a FEMA employee, who forwarded it to another FEMA employee, who forwarded it to Jason Leidig. In July 2006, Mr. Leidig was employed by Fleetwood's Manufactured Housing Division, working on logistics for delivery of Fleetwood manufactured housing units (not travel trailers) to FEMA staging areas.[3] He has never worked for Fleetwood's travel trailer division.[4] The email chain indicates that an occupant of a FEMA unit, manufactured by Fleetwood, was seeking information about what "chemicals" were in his unit because of some label apparently posted on the unit, which label was photographed by a FEMA field person and apparently attached to the email chain in question – but which is no longer attached to the email chain.[5] The email chain includes an email from Jessica Guay, also a former Fleetwood employee, dated July 17, 2006. Guay wrote in her email:

> I understand that you all are very concerned with the notice that you see in the trailer advising of harmful chemicals in the trailer that can cause cancer or birth defects. These products are manufactured with urea-formaldehyde resin. Formaldehyde vapor may in some people cause headaches, eye, nose and throat irritation, and aggravation of allergies and respiratory problems, such as asthma. Proper ventilation should reduce the risk of such problems.
>
> Also you should know that urethane foam is flammable. Urethane foam will burn rapidly, in an enclosed space the resulting deficiency of oxygen will present a danger of suffocation to the occupants. Hazardous gases

---

[1] Fleetwood requests that these page-line designations from Leidig be excluded: 23:12-34:17, 37:8-15, 40:17-71:17, 42:8-22, 56:22-63:25, 67:15-23, 69:15-72:22. *See* Leidig Dep. (Nov. 3, 2009) (Ex. A.)
[2] Fleetwood requests that these page-line designations from the deposition of Steven Smith of November 3, 2009, be excluded: 76:14-86:11. (Ex. B).
[3] Leidig Dep. at 17:19-18:21. (Ex.A)
[4] *Id.* at 10:21-23 (Ex. A)
[5] Rene Rodriquez was deposed on November 13, 2009. A rough transcript is not yet available. Fleetwood will supplement the record as soon as this transcript is available.

2

> released by the burning foam can be incapacitating or fatal to human beings if inhaled in sufficient quantities.[6]

Guay worked as a customer service representative for Fleetwood in California from 2004 to 2007.[7] At her deposition, Guay testified that she does not know to what label she was referring in the email and that reading it did not refresh her recollection about it.[8] At her deposition, Guay was shown the formaldehyde warning that Fleetwood has identified in the litigation as the notice Fleetwood posted in FEMA travel trailers regarding formaldehyde and she agreed after reviewing it that it does not include the words "chemicals", "cancer" or "birth defects," yet the notice she was sent to review apparently *did* include that language judging from her July 17 email response.[9] While the emails reference that this unit was manufactured in California, there is no evidence as to what unit it is.[10]

Jason Leidig, who is included in the email chain, also testified that he does not recall what unit the email concerned.[11] He does not recall what photographs were attached to the email.[12] He does not know what notice is referred to in the email stream[13] He cannot recall what Guay told him about the notice referenced in the email.[14] He does not know what Guay looked at in order to respond to the email.[15] He cannot say that the Fleetwood formaldehyde notice was the

---

[6] *See* Guay email (July 17, 2006) (FEMA17-005860) (Ex. C).
[7] Guay Dep. at 4:19-5:8, 11:18-23 (Ex. D).
[8] *Id.* at 6:25-7:10 (Ex. D).
[9] *Id.* at 19:4-20:17 (Ex. D); "Important Notice" (Ex. 2 to Guay Dep. Ex. E); Guay email (July 17, 2006) (FEMA17-005860) (Ex. C).
[10] *Id.* at 18:7-19:2, 21:10-13 (Ex. E); Email from Lydell Broom to Jason Leidig, dated July 13, 2006 (FEMA17-005861 (Ex. C).
[11] Leidig Dep. at 23:12-25 (Ex. A). He does, however, think that Ms. Guay may have meant to use the term "travel trailer" and not "mobile home." *Id.* at 24:1-15. He thinks that it could have been a unit that was manufactured in California. *Id.* at 27:22-28:11 (Ex. A).
[12] *Id.* at 25:22-26:4 (Ex. A).
[13] *Id.* at 70:24-71:3 (Ex. A).
[14] *Id.* at 30:9-12 (Ex. A).
[15] *Id.* at 72:4-7 (Ex. A).

"notice" referenced in the email.[16]  He has no knowledge about travel trailer warning labels.[17] It is "purely speculation" on his part that the notice at issue may have related to formaldehyde.[18]

Rene Rodriguez, identified as an employee with FEMA in this email chain, never spoke to the EHU occupant who called about the notice. The occupant did not call with a complaint about formaldehyde or odors in the unit, rather he wanted to know what the notice "about chemicals" in the unit meant.[19] Rodriguez did not go to the unit to observe the notice, rather he sent a field officer Robert Ford to the unit.  Apparently Ford took a photo of "the notice". [20]Rodriguez does not have a copy of the photograph. He does not recall having ever seen a copy of the notice that was shown in the photograph he received.  He does not recall what the notice said. He does not recall if it referenced any particular chemical. He does not recall if it referenced formaldehyde.[21] Rodriguez thinks that the notice was on the inside of a window in the kitchen of the unit but he really cannot say for sure. He cannot say how long the occupant in this unit lived there prior to calling about the notice. He does not know when the notice was placed. He does not know who placed the notice.[22]  Rodriguez also wrote in the original email that "[t]his looks like it is going to turn into something negative for us, so I wanted to give everyone a heads up."[23]

Plaintiff also questioned Steven Smith, whose name appears nowhere on the email chain, about this correspondence.[24] The questioning essentially consisted of Plaintiff's counsel reading

---

[16] *Id.* at 32:8-18 (Ex. A); "Important Notice" (Ex. 2 to Leidig Dep. Ex. A).
[17] Leidig Dep. at 32:19-23 (Ex. A).
[18] *Id.* at 59:21-60:21 (Ex. A).
[19] *See* footnote 5, supra.
[20] *See* footnote 5, supra.
[21] *See* footnote 5, supra.
[22] *See* footnote 5, supra.
[23] *See* Emails, FEMA17-005865 (Ex. C).
[24] Smith Dep. at 76:14-86:11. (Ex. B).

4

the email chain to Smith who knew nothing about it. In July 2006, Mr. Smith was the Director of Corporate Service for the Manufactured Housing Division.[25]

## II.     Argument & Citation to Authority

Under the Federal Rules of Evidence, only relevant evidence is admissible.[26] Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.[27] The Court, however, may still exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[28]

The email from Guay references an alleged notice in an EHU, but not the Dubuclet EHU. No one knows what the actual notice is that is being discussed. Although the email chain notes that at some point pictures of the notice were attached to the email, those pictures are not part of the record. No one knows what Guay looked at to respond to the emails or where her content came from.   Plaintiff simply cannot lay the foundation for that email. Without the actual notice, it has no bearing on this case. Leidig speculates that he might have contacted Guay because it was a unit from California.[29] The Dubuclet unit was manufactured in Texas. There is no foundation to assume or even speculate that the label that this email chain discusses is a label that was in the Dubuclet unit. Without the adequate foundation, Guay's email and the entire email chain refer to nothing.

---

[25] *Id.* at 8:1-3 (Ex. B)

[26] Fed. Rule Evid. 402.
[27] *Brookshire Bros. Holding, Inc. v. Total Containment, Inc.*, Civ. No. 04-1150, 2007 WL 2491807, *2 (W.D. La. Aug. 30, 2007); Fed. Rule Evid. 401.
[28] Fed. Rule Evid. 403.
[29] Leidig Dep. at 27:22-28:11 (Ex. A).

To the extent that Plaintiff may wish to offer Guay's email as an admission that formaldehyde can cause cancer, such a use is not permitted. Critically, the email is in direct response to inquiries regarding a notice, which apparently "advis[es] of harmful chemicals."

Mr. Rodriguez who saw the photograph of the notice could not recall that it related to formaldehyde.[30] Without the actual notice before the Court or personal knowledge from those on the email chain, such a use of this email is prohibited.

Neither should Plaintiff be able to introduce the remark from Rodriguez that it could "turn into something negative for us"—Rodriguez is not an employee of Fleetwood. It is a vague statement, referencing an unseen, unknown notice, and it has no bearing on the Dubuclet matter.

Finally, Steven Smith, though questioned about the email chain, was not copied on the email chain and had no knowledge of these communications at all, and therefore does not have the requisite personal knowledge under Federal Rule of Evidence 602 to identify the notice and Plaintiff should not be permitted to examine him on the email chain.

And all of this area of testimony, even if the Court were to find it relevant, is unduly prejudicial to Fleetwood. Plaintiff likely intends to use this email referencing an unseen, unknown attachment to argue to the jury that Fleetwood believes formaldehyde is dangerous and that is "negative for them." But without the notice itself actually before the court, the entire email chain has no context. Plaintiff intends to take advantage of the missing attachment and persuade the jury to infer the worst with no basis. Fleetwood is then placed in the position of having to defend itself against a notice that it does not have before it that was in another unit. This distracts the jury from the facts in this case. The jury is then not being asked to consider the labels and notices in the Dubuclet unit, but labels in other people's units that it cannot see. This would unduly prejudiced Fleetwood, and this evidence should therefore be excluded.

---

[30] *See* footnote 5, supra.

**III.     Conclusion**

For these reasons, Fleetwood requests that the entire testimony of Jessica Guay be excluded, that the specific page-line designations be excluded for Jason Leidig, Rene Rodriguez, and Steven Smith, and that any other reference, testimony, or argument regarding this chain of emails be excluded.

This 16th day of November 2009.

                                Respectfully submitted:

                                */s/ Richard K. Hines, V*
                                Richard K. Hines, V
                                GA Bar No. 356300
                                NELSON MULLINS RILEY & SCARBOROUGH, LLP
                                Atlantic Station
                                201 17th Street, NW, Suite 1700
                                Atlanta, GA  30363
                                (404) 322-6000 (phone)
                                (404) 322-6050 (fax)

                                Jerry L. Saporito
                                LA Bar No. 11717
                                LEAKE & ANDERSSON, L.L.P.
                                1700 Energy Centre
                                1100 Poydras St.
                                New Orleans, LA 70163-1701
                                (504) 585-7500 (phone)
                                (504) 585- 7775 (fax)

                                Counsel for Fleetwood Enterprises, Inc.

## **C E R T I F I C A T E OF SERVICE**

      I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )    Hand Delivery               ( )    Prepaid U.S. Mail

( )    Facsimile                     ( )    Federal Express

(X)    CM/ECF

      New Orleans, Louisiana, this 16th day of November 2009.

                                        /s/ Richard K. Hines, V
                                        Richard K. Hines, V
                                        Georgia Bar No. 356300
                                        richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)