UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * * * | MDL NO. 1873<br><br>SECTION "N" (5)<br><br>JUDGE ENGELHARDT<br>MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO | | * * | |
| *Charlie Age, et al v. Gulf Stream Coach Inc., et al*, Docket No. 07-9228;<br>Elisha Dubuclet, individually and on behalf of Timia Dubuclet | | * * * * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO LIMIT THE TESTIMONY OF WILLIAM L. DYSON, PH.D. CIH**

Plaintiff Elisha Dubuclet, individually and on behalf of Timia Dubuclet, ("Ms. Dubuclet" or "Plaintiff") respectfully submits the following memorandum in support of Plaintiff's *Daubert* Motion to Limit the Testimony of William L. Dyson, Ph.D. CIH, and hereto states:

**INTRODUCTION**

The matter before this Court involves injuries caused by formaldehyde. In addition to other injuries, Plaintiff specifically asserts that the formaldehyde exposure while in the Fleetwood travel trailer caused respiratory problems and exacerbated Timia Dubuclet's eczema. Defendant Fleetwood, Inc. designates William L. Dyson as an expert qualified to provide expert opinions concerning formaldehyde exposure and causation from the standpoint of an industrial hygienist. Attached as Exhibit "A" to this motion is the Expert Report of Dyson ("Report"). His opinions are set forth in

paragraphs 1-9 on pages 16-17 of his report. Plaintiff seeks an order in limine specifically excluding the opinion testimony set forth in the paragraphs numbered 3, 4, 5, 8 and 9. These opinions fail to meet the reliability prongs of Fed. R. Evid. 702 and the principles of Daubert. As will be discussed *infra*, Dyson's opinions should be limited as Dyson could not provide the necessary support for his conclusions or such support simply does not exist.

## I. STANDARD OF ADMISSIBILITY

Under the Federal Rules of Evidence, the party offering the expert witness bears the burden of establishing that the expert is qualified to give the opinion, and that such opinion is both reliable and relevant to the case at bar. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). Prior to accepting the testimony of an expert witness, trial courts are charged with a "gatekeeper" function requiring a determination of whether an opinion is based upon sound, reliable theory. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 589-91 (1993). As such, "[p]roposed testimony must be supported by appropriate validation–*i.e.*, good grounds." *Id.* at 590 (internal quotations omitted). The concept of "good grounds" is codified under Federal Rule of Evidence 702, which provides that expert testimony is deemed reliable so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Several of Dyson's opinions fail to meet any of the reliability requirements set forth under Rule 702, and, thus, should be excluded.

## II. CERTAIN DYSON OPINIONS ARE NOT RELIABLE UNDER RULE 702 AND SHOULD BE EXCLUDED.

### A.   Dyson's Opinion Regarding the Effects of Gaseous Formaldehyde on the Dubuclets Is Outside His Expertise.

Dyson sets forth the following opinion:

> 3.   In light of available scientific data on sensory irritation from formaldehyde, it is unlikely that the Dubuclet family would have experienced ocular, olfactory, or upper respiratory irritation at formaldehyde levels below 0.3 ppm and certainly would not have at levels below 0.1 ppm.

*See*, Report at page 17.

This opinion is inherently unreliable.  First, Dyson is not qualified to offer an expert opinion as to the cause of Plaintiff's medical problems.  He is rendering an opinion on the causation of symptoms experienced by the Dubuclet family, yet he is not a medical doctor nor a toxicologist.  Exhibit B, Deposition of William L. Dyson, Ph.D., CIH, October 27, 2009, p. 119.  Dyson is an industrial hygienist whose core expertise is exposure, risk assessment and control of those risks.  Exhibit B, p. 21; p. 38-39.  Essentially, he relies on scientific articles and his own reactions to formaldehyde to support his conclusions.  Exhibit B, p. 17-19.  Dyson has performed no independent testing on the effects of formaldehyde exposure and has published no peer-reviewed papers on the subject.  Exhibit B, p. 19-20.  He states that it is "unlikely" that the Dubuclet family would have experienced symptoms at formaldehyde levels below 0.3 ppm.  This opinion is without foundation and is exactly the type of imprecise, unsubstantiated opinion that should be excluded as unreliable.

3

**B.     Dyson's Opinions Concerning The Levels of Formaldehyde Exposure Experienced By the Dubuclet Family Are Unsubstantiated Speculation**

The following opinions are contained in Dyson's Report:

> 4.    Even though the measurement was made long after they moved out, the best estimate of the formaldehyde exposure potentially experienced by the Dubuclet family is the 0.16 to 0.22 ppm measured in the Fleetwood travel trailer in August 2009.
>
> 5.    Although the concentration of formaldehyde in the Fleetwood travel trailer may have been somewhat higher (under closed, unventilated conditions) than 0.16 to 0.22 ppm when the Dubuclet family began occupancy in June 2006, it is not possible to determine quantitatively what the level might have been at that time.

Report at page 17.

In these contradictory opinions, Dyson attempts to provide estimates of the formaldehyde exposure experienced by Plaintiffs. Through his testimony, however, he asserts that he, nor anyone else, can, with reasonable certainty, determine what the levels would have been in the past. In his deposition, Dyson testified as follows:

> Q.    Would it be fair to say that in your view there is really, I guess, no one on the planet who could determine what level of formaldehyde the Dubuclet family was exposed to while they lived in the travel trailer?
>
> A.    With any reasonable degree of certainty, that's correct. And I state that on page 14.

4

(Exhibit B at p. 94 lines 15-21.  Also, see pp. 54-56)

He later testified as follows:

> Q. But you couldn't testify that that would be the type exposure range to a reasonable degree of scientific certainty?
>
> A. No. They may have been exposed even less than that because they were opening the windows and going in and out of it.  And as I indicated to you earlier, the Hewett comparison between occupied and unoccupied suggests that the occupied trailers had dramatically lower concentrations than unoccupied trailers.
>
> So I can't say that it was lower or higher.  It's the best information we have right now, on this particular travel trailer.

(Exhibit B at p. 103 lines 14-p. 104 line 1.  Also, see pp. 102-104).

Dyson has conceded that he is not able to quantify the levels of formaldehyde in the Fleetwood travel trailer at the time it was occupied by the Dubuclets.  Yet, he attempts to do just that through a "best estimate" opinion that is little more than sheer speculation.  Dyson should not be allowed to provide such inherently unreliable, unsubstantiated opinion testimony.

## C. Dyson's Opinion Concerning Exposures By Direct Contact To Formaldehyde From Products Has No Factual Support.

Dyson's Report contains the following opinion:

> 8. More likely than not, Dubuclet family members had direct contact with formaldehyde from products they used such as cleaners, cosmetics, and clothing.

Report at p. 17.

He makes this "more likely than not" conclusion without reference to any specific product used by the Dubuclets that contained formaldehyde.  (Exhibit B, p. 109-112).  In

fact, he specifically acknowledges that he did not know to what extent Plaintiff Timia Dubuclet used such products.

> Q. All right. Do you know to what extent Timia Dubuclet used various cleansers that may have contained formaldehyde?
>
> A. No, I don't, unfortunately.
>
> Q. What about the extent she may have used cosmetics?
>
> A. I don't know. She was a young girl, I wouldn't expect to a great extent, but shampoos and that sort of thing I would expect she would use, but I don't know that in detail.

(Exhibit B at p. 112 line 3-line 12).

His opinion that the Dubuclet family had direct contact with formaldehyde from products is nothing more than an unsupported assumption and should be disallowed by the Court.

**D. Dyson's Opinion That The Dubuclet Family Exposure To Formaldehyde Was Unlikely To Be Higher Than That Experienced By Residents Of Conventional Homes In Southern Louisiana Is Irrelevant And Unsubstantiated.**

In his Report's final conclusion, Dyson states as follows:

> 9. It is unlikely that the Dubuclet family was exposed to average formaldehyde levels higher than those experienced by residents of conventional homes in Southern Louisiana.

This opinion is based on a study of 53 "conventional homes," not travel trailers, in Southern Louisiana. Although the average formaldehyde level was 0.5 parts per million, the testing results ranged from non-detectable to 5.4 parts per million. See, Exhibit B at p. 113. Such a wide range of levels presents a meaningless basis for comparison. This is especially true since Dyson cannot determine what formaldehyde level existed in the

6

Dubuclet travel trailer. See, Exhibit B above. Thus, it is impossible for him to say with reliability that the Dubuclets were unlikely to be exposed to average formaldehyde limits higher than those experienced by residents of conventional homes in Southern Louisiana. *See*, Exhibit B, p. 113-115. In any event the comparison is meaningless. The issues are the exposure and resulting physical impacts in the Fleetwood travel trailer occupied by the Dubuclets.

## **CONCLUSION**

As set forth above, certain opinions of Defendant's expert Dyson should not be allowed to be presented at the trial of this case. Although not a medical doctor or toxicologist, he opines on the cause of medical problems. Even though he acknowledges his inability to quantify formaldehyde levels in the Fleetwood travel trailer at the time it was occupied by Plaintiffs, he gives a "best estimate" of the exposure "potentially" experienced by the Plaintiffs. Without any examples of a formaldehyde containing product actually used by Plaintiffs, Dyson opines that it is "more likely than not" the Dubuclet family had direct contact with such products.

And, finally, by reference to random testing of some conventional homes in Southern Louisiana, and without knowledge of the levels of formaldehyde to which Plaintiffs were exposed, Dyson concludes that it is "unlikely" the Dubuclet family average exposure was higher than that of the residents of the tested conventional homes. Such "opinions" fail to meet the Rule 702 standard and would be highly prejudicial if offered in this case. Thus, Dyson's testimony should be limited accordingly.

Respectfully submitted:

7

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:   504/522-2304
       Facsimile:    504/528-9973
       gmeunier@gainsben.com

       s/Justin I. Woods
       JUSTIN I. WOODS, #24713
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:   504/522-2304
       Facsimile:    504/528-9973
       jwoods@gainsben.com

       **COURT-APPOINTED PLAINTIFFS'
       STEERING COMMITTEE**
       ANTHONY BUZBEE, Texas # 24001820
       RAUL BENCOMO, #2932
       FRANK D'AMICO, #17519
       MATT MORELAND, #24567
       LINDA NELSON, #9938
       MIKAL WATTS, Texas # 20981820
       Dennis Reich, Texas #16739600

**CERTIFICATE OF SERVICE**

    I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing on November 16, 2009.

                                s/Gerald E. Meunier
                                GERALD E. MEUNIER, #9471

8