UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 |
| | * | SECTION: N(5) |
| This Document Relates to: | * * | |
| *Aldridge, et al. v. Fleetwood Enterprises, Inc., et al.* | * | |
| *(Elisha Dubuclet obo Timia Dubuclet)* | * * | JUDGE: ENGELHARDT |
| Case No. 07-9228 | * * | |
| | * | MAG: CHASEZ |

********************************************************************************

Expert Report of
William L. Dyson, Ph.D., CIH

August 19, 2009

### Introduction

At the request of attorneys representing Fleetwood Enterprises, Inc. in litigation involving FEMA temporary housing units (THUs) I was asked to review certain case-specific documents, evaluate the facts of the case, and provide expert opinions on issues arising in the referenced case from the standpoint of an industrial hygienist based on available technical and scientific knowledge. This document will serve as my report in response to this request.

### Professional Qualifications

My qualifications as an industrial hygienist are summarized on the attached curriculum vitae. I have worked as an industrial hygienist since 1967. My educational background includes a Ph.D. in Environmental Health Engineering from Northwestern University in 1975. The American Board of Industrial Hygiene certified me in the comprehensive practice of industrial hygiene in 1978. I am a member and Past President of the Academy of Industrial Hygiene, a Fellow member and former officer of the American Industrial Hygiene Association, a former director and officer of the American Board of Industrial Hygiene, a Professional member of the American Society of Safety Engineers, and a former Trustee of the American Industrial Hygiene

EXHIBIT

*A*

Aug 19 2009 10:23     WORKPLACE ENV                3368556845                    P.4

Expert Report of William L. Dyson, Ph.D., CIH                                                     August 19, 2009

Foundation.  Lists of cases in which I have provided deposition and trial testimony during the last four years are attached.  My fee schedule is attached.

## Brief Background Regarding Case

My understanding is that Ms. Elisha Dubuclet and her daughter Timia Leslie Dubuclet had to abandon their permanent residence at 6046 Dorothea Street in New Orleans when Hurricane Katrina made landfall in August 2005.  They lived in Houston until the end of the 2005-2006 school year.  In June 2006 Ms. Dubuclet and her daughter moved back to New Orleans into a FEMA-issued temporary housing unit which was located on their property at 6046 Dorothea Street.

The temporary housing unit provided to the Dubuclet family was a one bedroom travel trailer manufactured by Fleetwood Travel Trailers of Texas, Inc., Vehicle Identification Number (VIN) 4CJ1F322764015272 and FEMA Identification Number 940760507 (FEMA Bar code 1373963). This unit was manufactured by Fleetwood in March 2006.  Ms. Dubuclet and her daughter lived in the travel trailer approximately sixteen months until repairs could be completed on their permanent residence.  They re-occupied their permanent residence at 6046 Dorothea Street in late September 2007.

The health claims in this case relate primarily to Ms. Dubuclet's daughter Timia.  Timia Dubuclet was born in September 1998.  She was seven years old when her family moved into the travel trailer in June 2006.  Dry skin and eczema had been noted in Timia Dubuclet's medical records throughout her life.  It is alleged that Timia Dubuclet's eczema was exacerbated and she experienced symptoms such as rashes, itching, nose and throat irritation, eye irritation, and sinus congestion as a result of living in the travel trailer.  Through her attorneys, Ms. Dubuclet asserts that her daughter's symptoms resulted from exposure to formaldehyde emitted from products used by Fleetwood to manufacture the travel trailer in which they lived for approximately sixteen months.

## Basic Considerations Regarding Formaldehyde in Homes

Formaldehyde is only one of several volatile organic chemicals emitted into home environments from building materials and other sources that has a low odor threshold, can be a respiratory irritant, and is potentially carcinogenic.  However, due to its prevalence, formaldehyde has been the focus of numerous studies in homes, primarily since the late 1970s and early 1980s when its use in urea-formaldehyde foam insulation (UFFI) caused concern in home occupants and its carcinogenic potential was identified in animal studies.

The exposure routes of concern in the Dubuclet case are inhalation and skin, eye, and upper respiratory contact with formaldehyde gas.  At normal room temperature formaldehyde is colorless gas with a pungent, irritating odor at elevated concentrations.  Formaldehyde is highly reactive and readily soluble in water.  It is ubiquitous in the environment.  Fresh, outside air that enters a home brings with it a certain amount of formaldehyde.  Formaldehyde can also be released into the air of homes from a variety of products.  These include wood products used to build the home and furnishings (e.g., particleboard, plywood, medium-density fiberboard), fabric

Expert Report of William L. Dyson, Ph.D., CIH                          August 19, 2009

materials with crease-resistant finishes (e.g., clothing, draperies, linens, upholstery), and coatings for walls and furnishings. In addition, human activities add to the formaldehyde levels in homes (e.g., cooking, smoking).

Factors that influence the level of formaldehyde in the air of a home are numerous. They include:

1. The level of formaldehyde in the ambient air where the home is located;
2. The type of products from which the home was built;
3. Loading factors for formaldehyde emitting products;
4. Age of the home;
5. Natural air exchange rate or tightness of the home;
6. The presence and use of ventilation systems;
7. Use of doors and windows;
8. Temperature and humidity conditions inside and outside the home;
9. Selection and presence of furnishings in the home;
10. Occupant activities; and
11. The presence of formaldehyde removal sinks and absorber/re-emitter products.

The interrelationships between these factors are complex. Much effort has gone into the development of models to predict the levels of formaldehyde in the air of homes. Several such models have been proposed. Field tests of these models have shown that none can accurately predict the level of formaldehyde in an occupied home. Occupancy creates too many variables. It is widely recognized that the rate of formaldehyde emission from certain products increases with increasing temperature and to a lesser extent with increasing humidity.

**Formaldehyde in Non-Home Environments**

Formaldehyde is ubiquitous. It is found in many environments at airborne concentrations similar to, and higher than, those found in homes. For example:[1]

| Description | Formaldehyde levels, ppm |
|---|---|
| Urban background | 0.008 – 0.068 |
| Buildings in which smoking not permitted | Up to 0.22 |
| Indoor air while cooking fish | 0.48 – 5.31 |

Other locations in which formaldehyde levels in air have been reported include:[2]

---

[1] ASTDR: *Toxicological Profile for Formaldehyde*. U. S. Department of Health and Human Service, Agency for Toxic Substances and Disease Registry, Atlanta, GA (1999) and Sexton, K., M. X. Petreas, and K. S. Liu: Formaldehyde Exposures Inside Mobile Homes. *Environ Sci Technol 23*: 985-988 (1989).
[2] Bardana, E. J., A. Montanaro, and M. T. O'Hollaren: *Occupational Asthma*. Hanley & Belfus, Philadelphia (1988). P. 155

Expert Report of William L. Dyson, Ph.D., CIH                                      August 19, 2009

| Description | Formaldehyde levels, ppm |
|---|---|
| Biology laboratories | 2.75 – 14.8 |
| Clothing store | 0.9 – 3.3 |
| Offices (3 locations) | 0.12 – 0.20 |

Formaldehyde is present in the exhaled air of humans at concentrations between 0.001 and 0.072 ppm, in the same range as concentrations found in homes, with a median level of 0.004 ppm.[3] It is found in the mainstream and side stream smoke from cigarettes at levels from 10 ppm to 279 ppm.[4] Formaldehyde is also present in many foods such as milk, mushrooms, pork, catfish, shrimp, and codfish.[5] Formaldehyde and formaldehyde releasing compounds are found in many consumer products including shampoos, skin creams, cleaning products, clothing, and cosmetics.

## Potential Health Effects of Formaldehyde Exposure via Inhalation

### Odor Threshold

The odor threshold for formaldehyde has been reported to be in the range of 0.05 to 1.0 parts of formaldehyde per million parts of air by volume (ppm).[6] The odor threshold for formaldehyde seems to be highly variable with positive reporting frequencies in a chamber study of 5, 44, 26, 58, and 78 percent for concentrations of 0, 0.5, 1.0, 2.0, and 3.0 ppm respectively.[7] In light of the placebo effect noted in chamber studies with humans[8] (i.e., odors noted at zero formaldehyde concentration), reports that individuals are able to detect formaldehyde in air at extremely low levels (as low as 0.05 ppm) must be viewed with some skepticism.

---

[3] Moser, B., F. Bodrogi, G. Eibl, M. Lechner, J. Rieder, and P. Lirk:  Mass Spectrometric Profile of Exhaled Breath – Field Study by PTR-MS.  *Respir Physiol Neurobio 145*:  295-300 (2005).

[4] Godish, T.:  Formaldehyde Exposures from Tobacco Smoke: A Review. *Amer J Pub Health 79 (8)*:  1044-1045 (1989).

[5] Kaminski, J., A. S. Atwal, and S. Mahadevan:  Determination of Formaldehyde in Fresh and Retail Milk by Liquid Column Chromatography.  *J AOAC Inter 76 (5)*:  1010-1013 (1993) and Weng, X., C. H. Chon, H. Jiang, and D. Li:  Rapid Detection of Formaldehyde Concentration in Food on a Polydimethylsiloxane Microfluidic Chip.  *Food Chem 114*:  1079-1082 (2009).

[6] ACGIH:  *Documentation of Threshold Limit Values and Biological Exposure Limits*. American Conference of Governmental Industrial Hygienists, Cincinnati, OH (2001).

[7] Kulle, T. J.:  Acute Odor and Eye Irritation Response in Healthy Non-Smokers with Formaldehyde Exposure. *Inhal Toxicol 5*:  323-332 (1993).

[8] See Kulle, T. J.:  Acute Odor and Eye Irritation Response in Healthy Non-Smokers with Formaldehyde Exposure. *Inhal Toxicol 5*:  323-332 (1993); Bender, J. R., L. S. Mullins, G. J. Graepel and W. E. Wilson:  Eye Irritation Response of Humans to Formaldehyde. *Amer Ind Hyg Assoc J 44*:  463-465 (1983).

Expert Report of William L. Dyson, Ph.D., CIH                    August 19, 2009

*Sensory Irritation*

Eye, nose, and upper respiratory tract irritation has been observed in individuals exposed to formaldehyde in air, with eyes generally being most sensitive. Irritant effects are concentration-dependent rather than dose-dependent. The formaldehyde levels at which sensory irritation occurs has been explored through chamber, community observation, and workplace studies. Chamber studies provide the best opportunity for determining the presence of eye, nose, and throat irritation at known levels of formaldehyde.[9]   Conclusions from a recent, well designed chamber study[10] with both subjective and objective observations were as follows:

> "The results of the present study indicated eye irritation as the most sensitive parameter. Minimal objective eye irritation was observed at a level of 0.5 ppm with peaks of 1 ppm. The subjective complaints of ocular and nasal irritation noted at lower levels were not paralleled by objective measurements of eye and nasal irritation and were strongly influenced by personality factors and smell. It was concluded that the no-observed effect level for subjective and objective eye irritation due to formaldehyde exposure was 0.5 ppm in case of a constant exposure level and 0.3 ppm with peaks of 0.6 ppm in case of short-term peak exposure."

Irritant effects — burning and itching of the eyes, rhinitis, and sore throat — are temporary and cease once exposure ceases. Acclimatization has been observed in continuing exposure situations.

After reviewing scientific studies through 1995 a panel of experts[11] recommended an occupational exposure limit for formaldehyde of 0.3 ppm as an eight-hour, time weighted average with a ceiling limit of 1.0 ppm based on sensory irritation potential and protection of nearly all workers. In large part, the panel based this recommendation on controlled studies on humans in chambers where formaldehyde was the only contaminant. Even though the panel recognized that sensory irritation from formaldehyde is concentration rather than dose dependant, they applied a safety factor and concluded that "if concentrations of formaldehyde are kept below 0.1 ppm in the indoor environment (where exposure might occur 24h/d) this should prevent irritation in virtually all persons."

More recent reviews have reached similar conclusions. Based on a "Benchmark dose analysis" one set of reviewers estimated that at a level of 1 ppm formaldehyde only 9.5 percent of healthy volunteers experience moderate (i.e., annoying) eye irritation.[12] These same reviewers noted that

---

[9] Bender, J.: The Use of Noncancer Endpoints as a Basis for Establishing a Reference Concentration for Formaldehyde. *Regul Toxicol Pharmacol 35:* 23-31 (2002).
[10] Lang, I., T. Bruckner and G. Triebig: Formaldehyde and Chemosensory Irritation in Humans: A Controlled Human Exposure Study. *Regul Toxicol Pharmacol 50:* 23-36 (2008).
[11] Paustenbach, D., Y. Alarie, T. Kulle, N. Schachter, R. Smith, et al.: A Recommended Occupational Exposure Limit for Formaldehyde Based on Irritation. *J Toxicol Environ Health 50:* 217-262 (1997).
[12] Arts, J. H., M. A. Rennen, and C. de Herr: Inhaled Formaldehyde: Evaluation of Sensory Irritation in Relation to Carcinogenicity. *Regul Toxicol Pharmacol 44(2):* 144-160 (2006).

slight sensory irritation could be observed at formaldehyde concentrations of 0.2 to 0.3 ppm and concluded that 0.1 ppm can be considered a "safe and appropriate level" for indoor air.[13]

*Respiratory Effects*

Formaldehyde is highly reactive and soluble in water. The majority of inhaled formaldehyde, especially at low concentrations, is absorbed in the moist lining of the nose and throat.[14] This has been demonstrated in rats exposed to radioactive-labeled formaldehyde at levels of 5 to 24 ppm.[15] Lower respiratory tract effects occur, if at all, only at high (3 ppm or more) formaldehyde concentrations.

Bronchial provocation studies of selected individuals with symptoms suggestive of asthma, and in whom formaldehyde was believed to be a major trigger, were conducted with formaldehyde concentrations as high as 3 ppm. The authors were unable to substantiate the hypothesis that formaldehyde exposure at up to 3 ppm was either causing or aggravating asthmatic symptoms.[16] A double-blind, random exposure challenge using formaldehyde at concentrations up to 2 ppm was performed in laboratory workers routinely exposed to formaldehyde at work. No lower airway symptoms were noted and pulmonary function remained unchanged.[17] Volatile organic chemicals[18] and formaldehyde[19] in homes have been implicated as potential risk factors for the onset of asthma and wheezing in children. However, these studies of respiratory health effects in home environments have been cross-sectional, not longitudinal, and there are important questions that cannot be answered using this type of study design.[20] Indeed the divergent results between controlled exposure studies in chambers, where formaldehyde levels up to 3 ppm did not result in changes in pulmonary function or bronchial reactivity in asthmatics,[21] and cross-

[13] Arts, J. H., H. Muijser, C. F. Kuper, and R. A. Woutersen: Setting an Indoor Air Exposure Limit for Formaldehyde: Factors of Concern. *Regul Toxicol Pharmacol 52(2)*: 189-194 (2008).
[14] Franks, S. J.: A Mathematical Model for the Absorption and Metabolism of Formaldehyde Vapour by Humans. *Toxicol Appl Pharmacol 206*: 309-320 (2005).
[15] Heck, H. d'A., T. Y. Chin and M. C. Schmitz: Distribution of [14C] Formaldehyde in Rats after Inhalation Exposure. Chap. 4 in J. E. Gibson (Ed.), *Formaldehyde Toxicity*, Hemisphere, Washington, DC (1983), pp. 26-37.
[16] Frigas, E., W. V. Filley, and C. E. Reed: Bronchial Challenge with Formaldehyde Gas: Lack of Bronchoconstriction in 13 Patients Suspected of Having Formaldehyde-Induced Asthma. *Mayo Clin Proc 59*: 295-299 (1984).
[17] Schachter, E. N., T. J. Witek, T. Tosun, et al. Respiratory Effects of Exposure to 2.0 ppm of Formaldehyde in Asthmatic Subjects. *Amer Rev Respir Dis* 131: A170 (1985); Witek, T. J., E. N. Schachter, D. Brody, et al.: A Study of Lung Function and Irritation from Exposure to Formaldehyde in Routinely Exposed Laboratory Workers. *Chest* 88: 65 (1985); Schachter, E. N., T. J. Witek, T. Tosun, and G. J. Beck: A Study of Respiratory Effects from Exposure to 2 ppm Formaldehyde in Healthy Subjects. *Arch Environ Health 41*: 229-239 (1986); and Schachter, E. N., T. J. Witek, D. Brody, T. Tosun, et al.: A Study of Respiratory Effects from Exposure to 2.0 ppm Formaldehyde in Occupationally Exposed Workers. *Environ Res 44*: 188-205 (1987).
[18] Rumchev, K., J. Spickett, M. Bulsara, M. Phillips, and S. Stick: Association of Domestic Exposure to Volatile Organic Compounds with Asthma in Young Children. *Thorax 59*: 746-751 (2004).
[19] Rumchev, K. B., J. T. Spickett, M. K. Bulsara, M. R. Phillips, and S. M. Stick: Domestic Exposure to Formaldehyde Significantly Increase the Risk of Asthma in Young Children. *Eur Respir J 20*: 403-408 (2002).
[20] Franklin, P. J.: Indoor Air Quality and Respiratory Health of Children. *Paed Respir Rev* : 281-286 (2007).
[21] See Frigas, et al. and Schachter, et al. cited above as well as Harving, H., J. Korsgaard, O. F. Pedersen, and L. Molhave: Pulmonary Function and Bronchial Reactivity in Asthmatics during Low-Level Formaldehyde Exposure. *Lung 168*: 15-24 (1990) and Harving, H., J. Korsgaard, R. Dahl, O. F. Pedersen, and L. Molhave: Low Concentrations of Formaldehyde in Bronchial Asthma: A Study of Exposure under Controlled Conditions. *Brit Med J (Clin Res Ed) 293*: 310 (1986).

Expert Report of William L. Dyson, Ph.D., CIH                                              August 19, 2009

sectional case control studies requires further exploration. Controlled animal studies have failed to elicit an allergic response via inhalation.[22] There is uncertainty as to whether even high, occupational exposures to formaldehyde will induce respiratory sensitization or asthma in humans.[23] Something other than formaldehyde may be involved.

*Carcinogenicity*

Rats exposed to formaldehyde at levels of 6 ppm and more for extended periods have developed nasal tumors, the site of contact or absorption of formaldehyde upon inhalation.[24] Formaldehyde exposure has been associated with cancers of nasal cavities, nasopharnyx, prostate, pancreas, and lung in epidemiological studies of industrial workers; however, these associations are inconsistent and controversial. Follow up through 1994 suggested that formaldehyde exposure in industrial workers increased the relative risk of nasopharyngeal cancer (based on nine deaths), but no association was found between formaldehyde exposure and cancers of the lung, pancreas, or brain.[25] In light of the fact that the majority of nasopharyngeal cancers occurred in one plant, the findings regarding this association with formaldehyde exposure has been questioned.[26] Another review of studies through 2006 concluded:[27]

> "Comprehensive review of cancer in industry workers and professionals exposed to formaldehyde shows no appreciable excess risk for oral and pharyngeal, sinonasal, or lung cancers. A non-significantly increased RR for nasopharyngeal cancer among industry workers is attributable to a cluster of deaths in a single plant."

Whether current occupational exposure limits for formaldehyde, which are currently based on protection from sensory irritation, should be changed (lowered) as a result of cancer risk has been considered[28] The conclusion was that current occupational exposure standards were adequate because:

> "the carcinogenic activity of formaldehyde is associated with cytotoxic/proliferative mechanisms. Therefore, protecting from these effects associated with formaldehyde exposure should be sufficient to protect from its potential carcinogenic effects, if an, in humans."

---

[22] Lee, H. K., Y. Alarie, and M. H. Karol: Induction of Formaldehyde Sensitivity in Guinea Pigs. *Toxicol Appl Pharmacol* 75: 147-155 (1984).

[23] Kranke, B. and W. Aberer: Indoor Exposure to Formaldehyde and Risk of Allergy. *Allergy* 55: 402-404 (2000).

[24] Kerns, W. D., K. L. Pavkov, D.J. Donofrio, et al.: Carcinogenicity of Formaldehyde in Rats and Mice after Long-Term Inhalation Exposure. *Cancer Res* 43: 4382-4392 (1983).

[25] Hauptmann, M., J. H. Lubin, P. A. Stewart, R. B. Hayes, and A. Blair: Mortality from Solid Cancers Among Workers in Formaldehyde Industries. *Amer J Epidemiol* 159 (12): 1117-1130 (2004).

[26] Marsh, G. M., A. O. Youk, and P. Morfeld: Mis-Specified and Non-Robust Mortality Risk Models for Nasopharyngeal Cancer in the National Cancer Institute Formaldehyde Worker Cohort Study. *Regul Toxicol Pharmacol* 47: 59-67 (2007).

[27] Bosetti, C., J. K. McLaughlin, R. E. Tarone, E. Pina, and C. La Vecchia: Formaldehyde and Cancer Risk: A Quantitative Review of Cohort Studies Through 2006. *Ann Oncology* 19: 29-43(2008).

[28] Duhayon, S., P. Hoet, G. Van Maele-Fabry, and D. Lison: Carcinogenic Potential of Formaldehyde in Occupational Settings: A Critical Assessment and Possible Impact on Occupational Exposure Levels. *Int Arch Occup Environ Health* 81: 695-710 (2008).

Expert Report of William L. Dyson, Ph.D., CIH                                  August 19, 2009

The lowest average concentration of formaldehyde at which changes in the nasal mucosa of humans has been observed is 0.24 ppm, but it should be noted that exposures above 0.8 ppm occurred frequently and peak exposures were not reported.[29]

*Dermal Effects*

Dermal contact with aqueous solutions of formaldehyde (formalin) at high concentrations can cause immediate irritation. Skin contact with lower concentrations (as low as five percent formaldehyde) may result in dermatitis after prolonged exposure. Contact dermatitis from exposure to gaseous formaldehyde has not been reported outside the occupational setting.[30] Irritation from gaseous formaldehyde has been reported in an occupational setting only where there is concomitant exposure to liquid formaldehyde solution.[31]

Because of its ubiquity and presence in a wide variety of products encountered in everyday living, large numbers of people have developed allergic dermal sensitization to formaldehyde. Patch testing with one to two percent formaldehyde solutions shows positive results in up to ten percent of the population in North America.[32] Inadvertent skin contact with products that contain formaldehyde or formaldehyde-releasing products, such as cleansers and cosmetics, rather than exposure to gaseous formaldehyde seems to be the route to dermal sensitization.[33]

Guidelines for Formaldehyde Exposure in Homes

To date, no national standard has been established in the U. S. for formaldehyde levels in homes. The nearest thing to a national standard is the product standard promulgated by the U. S. Department of Housing and Urban Development. In addition, there are guidelines from professional organizations, several states, various foreign countries, and the World Health Organization.

*Housing and Urban Development*

The U. S. Department of Housing and Urban Development (HUD) addressed the issue of formaldehyde in homes in 1984.[34] At that time HUD chose a product standard – limitation on the amount of formaldehyde emitted from wood products - as the most effective way to control formaldehyde exposures in homes. Emission limits of 0.2 ppm for plywood and 0.3 ppm for

[29] Holmstrom, M., et al.: Histological Changes in the Nasal Mucosa in Persons Occupationally Exposed to Formaldehyde Alone and in Combination with Wood Dust. *Acta Otolaryngol (Stockholm) 107*: 120-129 (1989).
[30] Dooms-Goossens, A. and H. Deleu: Airborne Contact Dermatitis: An Update. *Contact Dermatitis 25*: 211-217 (1991).
[31] Holness, D. L., and J. R. Nethercott: Health Status of Funeral Service Workers Exposed to Formaldehyde. *Arch Environ Health 44*: 222-228 (1989) and Takahashi, S., K. Tsuji, K. Fujii, F. Okazaki, T. Takigawa, A. Ohtsuka and K. Iwatsuki: Prospective Study of Clinical Symptoms and Skin Test Reactions in Medical Students Exposed to Formaldehyde Gas. *J Dermatology 34*: 283-289 (2007).
[32] Warshaw, E. M., et al.: North American Contact Dermatitis Group Patch Test Results, 2003-2004 Study Period. *Dermatitis 19(3)*: 129*-136 (2008) and Zug, K. A., et al.: Patch-Test Results of the North American Contact Dermatitis Group. *Dermatitis 20(3)*: 149-160 (2009).
[33] ATSDR: *Toxicological Profile for Formaldehyde.* Agency for Toxic Substances and Disease Registry, U. S. Public Health Service, Atlanta, GA (July 1999). p. 189
[34] *Federal Register 49 (155)*: 31986-32013 (August 8, 1984).

Expert Report of William L. Dyson, Ph.D., CIH                                      August 19, 2009

particleboard based on large chamber testing were established. In setting these product emission limits HUD considered 0.4 ppm formaldehyde as the goal for airborne levels in homes. Based on scientific evidence available at the time, HUD believed that a target level of 0.4 ppm formaldehyde was reasonably protective of the health of home occupants. This is a standard of comparison that is closely akin, if not directly on point, to the Dubuclet travel trailer.

*American Society of Heating, Refrigeration, and Air Conditioning Engineers*

An example of a guideline regarding formaldehyde levels in homes is that of the American Society of Heating, Refrigeration, and Air Conditioning Engineers (ASHRAE).[35]   To determine ventilation needs for acceptable indoor air quality, ASHRAE addressed guideline levels for formaldehyde and other airborne contaminants in homes. In the early 1980s ASHRAE suggested a formaldehyde level of 0.1 ppm as a goal in determining ventilation design parameters for homes. In the latest version of its standard ASHRAE refers to guidelines recommended by various governmental and non-governmental organizations – including HUD, ACGIH, WHO, Cal-EPA and others - as levels of interest. Referring to a table of guideline values for formaldehyde and other substances ASHRAE notes that the "user of any value in this table should take into account the purposes for which it was adopted and the means by which it was developed." Indoor air quality guidelines are established for many reasons and are not necessarily health-based.

*American Conference of Governmental Industrial Hygienists*

The American Conference of Governmental Industrial Hygienists (ACGIH) recommends occupational exposure limits referred to as Threshold Limit Values (TLVs). The current TLV for formaldehyde in 0.3 ppm as a ceiling limit which should not be exceeded during any part of the workday.[36] Documentation of the TLVs shows that the limit for formaldehyde is based on prevention of irritation. TLVs are applicable to workplace settings where exposures are normally limited to eight hours per day, 40 hours per week. However, since potential irritancy of formaldehyde is concentration-dependent rather than dose-dependent, the ceiling TLV for formaldehyde should serve to protect home occupants from irritation effects as well employees in a workplace.

Numerous other organizations, countries, and states (e.g., World Health Organization, Canada, Australia, and Denmark) use guidelines of 0.08 ppm to 0.1 ppm for formaldehyde in homes. These guidelines reflect public policy decisions, include a margin of safety, and are not an indication of the minimum levels of formaldehyde exposure that produce adverse health effects as shown by good, scientific studies.

---

[35] ASHRAE: ASHRAE Standard 62.1-2004 – *Ventilation for Acceptable Indoor Air Quality.* American Society of Heating, Refrigeration, and Air Conditioning Engineers, Inc., Atlanta, GA (2004).
[36] ACGIH: *Threshold Limit Values for Chemical Substances and Physical Agents.* American Conference of Governmental Industrial Hygienists, Cincinnati, OH (2008).

### Formaldehyde Monitoring Data – FEMA THUs

Several organizations have monitored airborne formaldehyde levels in THUs provided by FEMA after Hurricane Katrina. Datasets from the Sierra Club, the Centers for Disease Control (CDC), and Lawrence Berkley National Laboratory are publicly available for review and consideration of the methodologies used. Datasets obtained by private consulting firms for plaintiffs (e.g., DeVany Industrial Consultants, Boston Chemical Data, and W. D. Scott) are not publicly available.

### Formaldehyde Monitoring Data for Fleetwood Products

A subset of the public and private monitoring data collected in travel trailers manufactured by Fleetwood has been analyzed statistically.[37] Conclusions of this analysis were that:

1. The true mean of formaldehyde monitoring data collected in Fleetwood travel trailers in general, and "Pioneer" models in particular, is higher than the chronic duration Minimum Risk Level (MRL) of 0.008 parts of formaldehyde per million parts of air by volume (ppm) recommended by the Agency for Toxic Substances and Disease Control (ATSDR) and the eight-hour, time-weighted average (TWA) occupational exposure limit of 0.016 ppm recommended by the National Institute for Occupational Safety and Health (NIOSH);
2. A seasonal cyclic pattern is present in the measured formaldehyde levels in Fleetwood travel trailers; and
3. There is a decline in measured concentration of formaldehyde with age of the Fleetwood travel trailers.

This statistical analysis is problematic, not due to the analysis itself but because the input data are questionable.

### Lack of Standardization of Environmental Conditions Prior to Sampling

It is certainly not clear that environmental conditions in the travel trailers were standardized prior to taking formaldehyde measurements in the various datasets. In particular, samples collected at the behest of plaintiff attorneys followed a protocol in which standardization of environmental conditions was not addressed.[38] Active and passive samples for formaldehyde were collected as the travel trailers were found (i.e., at different temperature and relative humidity levels, different ventilation conditions, and different occupancy status). It has been known at least since the late 1970s and early 1980s that environmental conditions, particularly temperature, dramatically affect the levels of formaldehyde found in residences and mobile homes. Protocols for monitoring formaldehyde in manufactured homes in the States of Wisconsin and Minnesota in the 1980s reflected the need for standardization of environmental conditions. The need for

[37] Hewett, P.: Analysis of Fleetwood Formaldehyde. Technical Report from Exposure Assessment Solutions, Inc., July 16, 2009.
[38] DeVany, M. C.: Formaldehyde Sampling: Active and Passive Sampling Protocols -- Procedures for Evaluating Formaldehyde Levels in FEMA Temporary Housing Units. DeVany Industrial Consultants, 2008

Expert Report of William L. Dyson, Ph.D., CIH                                    August 19, 2009

standardization of environmental conditions was recognized by ATSDR in their health consultation to FEMA.[39]

More likely than not, environmental conditions affected the measurements made in Fleetwood travel trailers to such a degree that they are unreliable as indicators of actual exposure of occupants and cannot be compared to one another or to measurements made elsewhere. This methodological flaw substantially reduces the usefulness of the measurement data. Statistical analysis of datasets in which environmental conditions were not standardized is fundamentally unsound and may lead to erroneous conclusions.

An example from the Fleetwood formaldehyde monitoring dataset serves to illustrate the effects of non-standardized environmental conditions. As determined by Dr. Hewett, the overall mean formaldehyde concentration found in Fleetwood travel trailers was 0.15 ppm. This mean value included 582 measurements made by DeVany Industrial Consultants in totally closed travel trailers without air conditioning in the heat of the summer – conditions that do not represent those of normal occupancy. The mean value of these 582 measurements was 0.28 ppm. Without these 582 measurements the overall mean value of the measurements made in Fleetwood travel trailers would have been 0.06 ppm. Similar considerations apply to the Fleetwood "Pioneer" model measurement dataset.

*Lack of Contemporaneous Ambient Air Measurements*

At the levels of formaldehyde at issue in the THUs, the contribution of ambient air to the formaldehyde levels found in the homes may be significant. Ambient levels measured by FEMA in the Baton Rouge staging area for THUs ranged from 0.001 ppm to 0.07 ppm with an average of approximately 0.005 ppm.[40] Ambient formaldehyde levels measured in eight U. S. cities averaged 0.010 to 0.020 ppm,[41] ranged up to 0.023 ppm in eight urban sites in Canada,[42] and have been observed at up to 0.180 ppm in Los Angeles in the summer.[43] In other words, ambient air levels of formaldehyde often exceed the MRL of 0.008 ppm suggested by ATSDR and the TWA occupational exposure limit of 0.016 ppm suggested by NIOSH. Ambient formaldehyde levels on the days samples were collected could have affected the levels of formaldehyde found in the Gulf Stream Coach travel trailers to a significant degree. The potential extent of this confounding factor could have been easily determined but was not. Again, statistical analysis of a monitoring datasets in which the ambient air contributions are not known is unreliable and may lead to erroneous conclusions.

[39] ATSDR: Health Consultation: Formaldehyde Sampling at FEMA Temporary Housing Units, Baton Rouge, LA, February 1, 2007.
[40] FEMA: Formaldehyde in FEMA Family Units Sampling Program, Baton Rouge, LA, Field Documentation, Data Files, and Analytical DATA DVD, November 13, 2006 (Cited by ATSDR above).
[41] Salas, L. J. and H. B. Singh: Measurements of Formaldehyde and Acetaldehyde in the Urban Air. *Atmos Environ 20(6)*: 1301-1304 (1986)
[42] Liteplo, R. G. and M. E. Meek: Inhaled Formaldehyde: Exposure Estimation, Hazard Characterization, and Exposure-Response Analysis. *J Toxicol Environ Health, Part B, 6*: 85-114 (2003).
[43] Meyer, B.: *Urea-Formaldehyde Resins.* Addison-Wesley, Reading, MA (1979), p. 255

Expert Report of William L. Dyson, Ph.D., CIH                                    August 19, 2009

### Monitoring Data for the Dubuclet Travel Trailer

Formaldehyde levels have been measured twice in the Fleetwood travel trailer provided to the Dubuclet family.  The first measurements were made by the W. D. Scott Group, Inc.[44]  Two samples were taken - a 30-minute active sample collected on July 8, 2009 and an overnight (22.6 hours) passive sample collected July 8-9, 2009.  The travel trailer was completely sealed for several days prior to sampling.  Collection media were located immediately above the top surface of the nightstand in the bedroom.  Environmental conditions in the travel trailer were not standardized in any way prior to monitoring.  Sampling flow rates for the active sample were not determined inside the travel trailer at the conditions found there.  Although a laboratory blank was submitted with each sample type, no field blanks were collected.  No ambient air samples were collected simultaneously outside the travel trailer to determine the potential contribution of ambient air to the formaldehyde level found inside the travel trailer.  Results of the W. D. Scott Group measurements were as follows:

| Type and date | Temperature | Relative humidity | HCHO level |
|---|---|---|---|
|  | °F | % | ppm |
| 30 min Active     7/8/09 | 84 | 64-85 | 0.23 |
| 24 hr Passive   7/8-9/09 | 87 | 45-85 | 0.34 |

Air samples were collected in the Dubuclet travel trailer during the week of August 10, 2009 by Mr. Anthony Watson, CIH, CSP of Workplace Hygiene.[45]  A one-hour measurement was taken as the travel trailer was found on August 10, 2009.  The travel trailer was then aired out for approximately one day and closed up approximately two days with the air conditioner operating and the thermostat set at 75 °F.  One-hour active and 24-hour passive measurements were then taken.  Results of the Workplace Hygiene measurements are as follows:

| Type and date | Temperature | Relative humidity | HCHO level |
|---|---|---|---|
|  | °F | % | ppm |
| 1 hr Active     8/10/09 | 81-87 | 70-76 | 0.22 |
| 1 hr Active     8/13/09 | 78-79.5 | 40-47 | 0.16 |
| 24 hr Passive  8/13-14/09 | 78-80.5 | 40-47 | 0.22 |
| 24 hr Passive  8/13-14/09 Outside | 91-96 | 48-53 | 0.005 |

*Effects of Environmental Conditions*

The samples taken by W. D. Scott Group were collected in a closed, unventilated condition.  The temperature and humidity were not representative of normal living conditions.  Results under such conditions were replicated by Workplace Hygiene prior to standardization of environmental conditions.  A comparison of active samples shows that formaldehyde levels found under closed, high temperature conditions were elevated in relation those found in the same travel trailer with environmental conditions adjusted to approximate normal living conditions (0.23 and 0.22 ppm

---

[44] Affidavit of William D. Scott, PE, CHMM executed July 17, 2009.
[45] Watson, T.: Letter report re Formaldehyde Air Sampling – Dubuclet Temporary Housing Unit to Mr. Richard K. Hines, V, Esquire dated August 18, 2009

Expert Report of William L. Dyson, Ph.D., CIH                                    August 19, 2009

versus 0.16 ppm). The air conditioner in the travel trailer apparently could not maintain 75°F. Nevertheless, comparison of 24-hour passive samples shows that lower formaldehyde levels were present when environmental conditions were standardized to approximate normal living conditions (0.34 ppm v 0.22 ppm). These two sampling events in the same travel trailer demonstrate the influence of environmental conditions on formaldehyde monitoring results and confirm the need for standardization of environmental conditions prior to sampling.

*Ambient Formaldehyde Levels*

The sampling location of both the W. D. Scott and Workplace Hygiene measurements reported above were made in Lottie, LA, a very rural area. The ambient formaldehyde level measured in Lottie was low – 0.004 to 0.005 ppm. It is possible, even likely, that ambient formaldehyde levels at 6024 Dorothea Street – an urban address – would be higher and contribute more to the formaldehyde level found inside the travel trailer when it was located there. For example, ambient formaldehyde levels of 0.005 ppm to 0.020 ppm, the average levels found in Baton Rouge and urban areas in the U. S. respectively, could have contributed 2 to 10 percent of the 0.22 ppm formaldehyde found in the Dubuclet travel trailer in August 2009.

*Extrapolation to Date of Occupancy*

Ms. DeVany[46] used mathematical modeling to address the question of what formaldehyde levels may have been present in the Dubuclet travel trailer in June 2006. She described four different models. Two of these models apply to wood products, not to homes built from such products. One model was based on statistical analysis of monitoring data collected in FEA THUs with attendant problems as noted above. The last "model" Ms. DeVany considered simply states that it takes 7.5 years for the formaldehyde concentration to reach 0.01 ppm, a conclusion that assuredly depends upon the beginning level and other factors.

Using various assumptions as input for these models, Ms. DeVany estimates that the formaldehyde level in the travel trailer when occupied by the Dubuclet family ranged from 0.14 to 0.48 ppm. This wide range reflects the vagaries and imprecision of such modeling. Little confidence can be placed in such estimates. As Ms. DeVany points out, and as were listed above, a large number of factors affect the formaldehyde concentration found in a home at any given time and the interplay between these factors is complex.

Dr. Hewett was asked to evaluate the Fleetwood dataset for evidence that formaldehyde levels tend to decline with age of the travel trailer. Dr. Hewett chose to make this evaluation using only the 582 measurements made by DeVany Industrial Consultants in closed travel trailers in the heat of the summer based on the assumption that "differences in formaldehyde levels would be related more to the age of the trailers than any other factor." This assumption is not supported by available scientific evidence which suggest that temperature and humidity are the most critical factors. Dr. Hewett's conclusion from his analysis was that the measurement data, when plotted in relation to the age of the travel trailer, do not suggest that older travel trailers tend to have lower formaldehyde levels. He goes on to say, however, that "a decline in levels with age of the trailer is the expected result". In other words, the data show an unexpected result and Dr.

---

[46] Affidavit of Mary C. DeVany, MS, CSP, CHMM in the Dubuclet case dated July 17, 2009.

Expert Report of William L. Dyson, Ph.D., CIH                                      August 19, 2009

Hewett cannot conclude that higher levels of formaldehyde would have been present in the Dubuclet travel trailer when they began occupancy than were measured in July and August 2009. Dr. Hewett's intuitive answer is "maybe" or even "likely", but statistical analysis does not answer the important question of how much. The concentration of formaldehyde to which the Dubuclet family was exposed while living in the travel trailer cannot be answered quantitatively with any reasonable degree of certainty. Since no contemporaneous measurements of formaldehyde levels in the Dubuclet travel trailer during occupancy, we have to rely upon measurements made long after the family was no longer living in the travel trailer.

The poor condition of the Fleetwood travel trailer when it was monitored in July and August 2009 should also be noted. In particular, there were exposed wood surfaces and edges that would not normally be exposed, such as the night stand tops in the bedroom, stove cutout edges the kitchen countertop, and the broken couch. It is unlikely that these surfaces and edges were exposed upon initial occupancy of the travel trailer. Exposing these surfaces and edges later would tend to increase, and may partially explain, the levels of airborne formaldehyde found in July and August 2009.

**Comparison Guidelines Used by Plaintiffs' Experts**

Numerous exposure guidelines have been suggested for formaldehyde. None are specifically applicable to occupancy of a travel trailer for a nineteen month period. As noted above, monitoring data in FEMA supplied travel trailers have been compared to two standards by plaintiffs' experts: 1) the chronic duration Minimum Risk Level (MRL) of 0.008 parts of formaldehyde per million parts of air by volume (ppm) recommended by the Agency for Toxic Substances and Disease Control (ATSDR) and 2) the eight-hour, time-weighted average (TWA) occupational exposure limit of 0.016 ppm recommended by the National Institute for Occupational Safety and Health (NIOSH). To determine whether these are appropriate comparison standards, consideration must be given to their bases.

*ATSDR Minimum Risk Level*

ATSDR's toxicological profiles for chemical substances are developed in response to requirements of Superfund regulations. They review, synthesize, and interpret available scientific data to "ascertain the levels of significant human exposure for the substance and the associated acute, sub acute, and chronic health effects" primarily for environmental remediation purposes. A toxicological profile for formaldehyde[47] was published in July 1999.

ATSDR develops Minimum Risk Levels (MRLs) for acute (1-14 days), intermediate (15-364 days), and chronic (365 and longer days) durations for oral and inhalation routes of exposure. MRLs are derived using the no-observed effect level/uncertainty factor approach and are below levels that might cause adverse health effects in the people most sensitive to such chemical-induced effects. For formaldehyde MRLs suggested for various durations by inhalation exposure by ATSDR are as follows:

---

[47] Agency for Toxic Substances and Disease Registry. *Toxicological Profile for Formaldehyde*. U. S. Department of Health and Human Services, Public Health Service, Agency for Toxic Substances and Disease Registry, July 1999.

Acute (1-14 days) MRL:  0.040 ppm
Intermediate (15-364 days) MRL:  0.030 ppm
Chronic (365 days or longer) MRL:  0.008 ppm

Plaintiff experts assert that the chronic MRL of 0.008 ppm is an appropriate standard for comparison in the Alexander case since she and her son lived in the travel trailer for more than 365 days. Thus, it is important to understand the scientific basis of the chronic MRL suggested by ATSDR.

The worksheet for the ATSDR's chronic MRL for formaldehyde is attached. This worksheet indicates that the chronic MRL was based on a 1989 paper by Holmstrom and others.[48] Other studies that had similar outcomes were also considered by ASTDR. The lowest observed adverse effect level (LOAEL) for formaldehyde exposure derived from the Holmstrom research was 0.24 ppm.[49] As noted above, 0.24 ppm was an extrapolated average value that did not account for unreported peak exposures frequently exceeding 0.8 ppm. ATSDR then applied two uncertainty factors to the LOAEL:

1. A factor of 3 for use of a LOAEL -- the exposed histological effects are considered to be mild and subclinical in nature, suitable for 0.24 ppm to be designated as a minimal LOAEL; and

2. A factor of 10 for human variability.

The chronic MRL of 0.008 ppm was derived by dividing the LOAEL of 0.24 ppm by 30, the multiplication product of these two uncertainty factors.

It is certainly reasonable to question whether the chronic MRL derived in this way is an appropriate comparison criterion for the Alexander travel trailer. In particular, I note that ambient formaldehyde levels measured in urban areas often exceed the chronic MRL of 0.008 ppm recommended by ATSDR. The LOAEL of 0.24 ppm on which the MRL was based is well above the 0.05 ppm formaldehyde level measured in the Alexander travel trailer in January 2008.

*NIOSH Recommended Exposure Limit*

The National Institute for Occupational Safety and Health (NIOSH) issues Recommended Exposure Limits (RELs) for various substances. The intended application of RELs is in the workplace. The NIOSH REL for formaldehyde is 0.016 ppm as an eight-hour, time-weighted average (TWA).

The important thing to know about the NIOSH REL for formaldehyde is that it is not a health-based standard. NIOSH classifies formaldehyde as a potential occupational carcinogen.

---

[48] Holmstrom, M., et al.: Histological Changes in the Nasal Mucosa in Persons Occupationally Exposed to Formaldehyde Alone and in Combination with Wood Dust. *Acta Otolaryngol (Stockholm)* 107; 120-129 (1989).
[49] ATSDR notes: "Clinical symptoms of mild irritation of the eyes and upper respiratory tract and mild damage to the nasal epithelium were observed in workers exposed for 10.4 years (range 1-36 years) to an average TWA concentration of 0.24 ppm (range (0.04 to 0.4 ppm). The LOAEL of 0.24 ppm is considered to be a minimal LOAEL."

Expert Report of William L. Dyson, Ph.D., CIH                                    August 19, 2009

NIOSH's policy on occupational carcinogens is to maintain exposures to the lowest level possible. RELs for carcinogens, such as the one for formaldehyde, are not based not on evaluation and synthesis of health risk data. The REL for formaldehyde is based on the lowest airborne level that NIOSH believes can be reliably measured in a workplace setting. As such it is a totally inappropriate standard for comparison with monitoring data from the Alexander travel trailer. Like the ATSDR chronic MRL, ambient formaldehyde levels often exceed the REL of 0.016 ppm recommended by NIOSH.

## Effect of Air Conditioning and Ventilation

One of the questions addressed by ATSDR in their February 2007 Health Consultation[50] regarding the FEMA THUs was whether simple measures, such as operating the air conditioner or opening windows, would lower the levels of formaldehyde in the units. Based on a large number of observations the answer is clearly yes. For example, mean formaldehyde levels dropped from 1.04 ppm (n=96) in closed, unventilated units to 0.39 ppm (n=852) when the air conditioner was operated and to 0.09 ppm (n=863) when windows were opened.

Ms. Dubuclet's testimony regarding use of air conditioning and opening windows was conflicting. On one hand she testified that the air conditioner never worked and she went without air conditioning for extended periods. On the other hand Ms. Dubuclet testified that she operated the air conditioner all day. It is clear that Ms. Dubuclet frequently kept windows and doors open. Whether this was her choice or because the air conditioner was not operating is not clear. The net effect, however, is that formaldehyde levels in the travel trailer were reduced by opening windows and the door.

## Formaldehyde Levels in Louisiana Homes

Formaldehyde levels have been measure in 53 conventional homes in Southern Louisiana.[51] The levels found ranged from non-detectable to 5.4 ppm. Approximately 60 percent of the samples exceeded 0.1 ppm with average levels of 0.53 ppm, 0.46 ppm, 0.56 ppm, and 1.04 ppm in Spring, Summer, Fall, and Winter respectively. These results suggest that formaldehyde levels in Ms. Dubuclet's travel trailer more likely than not were low in comparison to other residences in Southern Louisiana.

## Conclusions

Based on the considerations described above, it is my opinion to a reasonable degree of scientific certainty that:

1. The chronic MRL of 0.008 ppm formaldehyde recommended by ATSDR and the TWA REL of 0.016 ppm formaldehyde recommended by NIOSH are not appropriate guidelines

---

[50] ATSDR: *An Update and Revision of ATSDR's February 2007 Health Consultation: Formaldehyde Sampling of FEMA Temporary-Housing Trailers, Baton Rouge, Louisiana, September-October, 2006.* Agency for Toxic Substances and Disease Registry, Atlanta, GA (October 2007).
[51] Lemus, R., A. A. Abdelghani, T. G. Akers, and W. E. Horner: Potential Health Risks from Exposure to Indoor Formaldehyde. *Rev Environ Health 13:* 91-98 (1998).

Expert Report of William L. Dyson, Ph.D., CIH                                    August 19, 2009

for comparison with measurements made in closed, unventilated FEMA travel trailers since they are less than levels of formaldehyde found in urban air;

2. Measurements of formaldehyde levels in closed, unventilated FEMA travel trailers without standardization of environmental conditions and considerations of ambient formaldehyde levels are not reliable indicators of the potential formaldehyde exposure of travel trailer occupants and statistical analysis of such results will lead to erroneous conclusions;

3. In light of available scientific data on sensory irritation from formaldehyde, it is unlikely that the Dubuclet family would have experienced ocular, olfactory, or upper respiratory irritation at formaldehyde levels below 0.3 ppm and certainly would not have at levels below 0.1 ppm;

4. Even though the measurement was made long after they moved out, the best estimate of the formaldehyde exposure potentially experienced by the Dubuclet family is the 0.16 to 0.22 ppm measured in the Fleetwood travel trailer in August 2009;

5. Although the concentration of formaldehyde in the Fleetwood travel trailer may have been somewhat higher (under closed, unventilated conditions) than 0.16 to 0.22 ppm when the Dubuclet family began occupancy in June 2006, it is not possible to determine quantitatively what the level might have been at that time;

6. By opening windows and/or by opening the door in her travel trailer Ms. Dubuclet made a dramatic improvement in her living conditions with respect to formaldehyde exposure at little cost;

7. More likely than not, the Dubuclet family were exposed to airborne formaldehyde from sources other than the Fleetwood travel trailer during the time they resided in it;

8. More likely than not, Dubuclet family members had direct contact with formaldehyde from products they used such as cleansers, cosmetics, and clothing; and

9. It is unlikely that the Dubuclet family was exposed to average formaldehyde levels higher than those experienced by residents of conventional homes in Southern Louisiana.

Submitted by:
Workplace Environments, LLC

*William L. Dyson*

William L. Dyson, Ph.D., CIH
August 19, 2009

17

# CURRICULUM VITAE

## WILLIAM L. DYSON, PhD, CIH

**ADDRESS:**

Workplace Environments, LLC
P.O. Box 160
2100 Dimmocks Mill Road
Hillsborough, NC 27278

Telephone:   919-732-2043
Facsimile:   919-732-7534
e-mail:
      wmdyson@bellsouth.net

**EDUCATION:**

B.S., Chemical Engineering, North Carolina State University, Raleigh, North Carolina, 1966.

M.S., Environmental Health Engineering, Northwestern University, Evanston, Illinois, 1971. Thesis title: *Reduction of Toluene Diisocyanate in Air by Water Vapor*

Ph.D., Environmental Health Engineering, Northwestern University, Evanston, Illinois, 1975. Dissertation title: *The Reaction of Sulfur Dioxide with Zinc Oxide Fume in Air*

Miscellaneous: Graduate work in chemical engineering, North Carolina State University, 1966; Ten week industrial hygiene training course, U.S. Public Health Service, 1967; Business courses, University of Cincinnati, 1967. Numerous short courses and seminars - toxicology, ventilation, asbestos, formaldehyde, indoor air quality, management, and other topics - 1973 to present.

**PROFESSIONAL EXPERIENCE:**

2001
to
Present

Workplace Environments, LLC, Hillsborough, North Carolina
*Consultant in Industrial Hygiene*

1998
to
2001

Workplace Hygiene, LLC, Greensboro, North Carolina
*Consultant in Industrial Hygiene*

1991
to
1998

Health & Hygiene, Inc. Greensboro, North Carolina
*President*

*Curriculum Vitae*          *William L. Dyson, PhD, CIH*          Page 2 of 4

| | |
|---|---|
| 1982<br>to<br>1991 | Health & Hygiene, Inc. Greensboro, North Carolina<br>*Vice President/Industrial Hygiene* |
| 1976<br>to<br>1982 | Burlington Industries, Greensboro, North Carolina<br>*Corporate Industrial Hygienist* |
| 1973<br>to<br>1976 | IBM, Lexington, Kentucky<br>*Manager, Industrial Hygiene* |
| 1967<br>to<br>1969 | U.S. Public Health Service, Cincinnati, Ohio<br>*Industrial Hygiene Engineer* |
| 1967 | Monsanto Company, Luling, Louisiana<br>*Technical Assistance Engineer* |
| Summer<br>1966 | E.I. DuPont de Nemours, Belle, West Virginia<br>*Engineer Intern* |
| Summers<br>1964 & 1965 | Union Carbide, Institute, West Virginia<br>*Operator and Engineer Intern* |

**ACADEMIC EXPERIENCE:**

| | |
|---|---|
| 1979 | North Carolina A & T State University, Greensboro,<br>North Carolina<br>*Adjunct Assistant Professor* |
| 1971<br>to<br>1976 | Northwestern University, Evanston, Illinois<br>*Teaching assistant* |
| 1970 | Northwestern University, Evanston, Illinois<br>*Laboratory teaching assistant* |
| 1966 | North Carolina State University, Raleigh, North Carolina<br>*Laboratory teaching assistant* |

*Curriculum Vitae*          *William L. Dyson, PhD, CIH*                    *Page* 3 of 4

**CERTIFICATION:** Certified by the American Board of Industrial Hygiene in the Comprehensive Practice of Industrial Hygiene (1978). Certification No. 1457

**AFFILIATIONS:** American Industrial Hygiene Association – Fellow Member
American Academy of Industrial Hygiene – Member
American Board of Industrial Hygiene – Diplomate
Carolinas Section AIHA – Member
American Society of Safety Engineers – Professional Member
Sigma Xi

**PROFESSIONAL ACTIVITIES:**
American Industrial Hygiene Association
    Air Pollution Technical Committee 1975-1979
    Conference Program Committee 1979, 1982-1986
    Treasurer-Elect 1995 - 1996
    Treasurer 1996 – 1998
    Finance Committee 1995 - 2002
American Academy of Industrial Hygiene
    Secretary-Treasurer 1980-1983
    Vice-President 1983-1984
    President-Elect 1984-1985
    President 1985-1986
    Past-President 1986-1987
American Board of Industrial Hygiene
    Director 1989-1995
    Treasurer 1991-1995
American Industrial Hygiene Foundation
    Trustee 2002-2005
American Textile Manufacturers Institute
    Chemical Substances Subcommittee 1976-1982
    Dye Task Group 1981
N.C. Triad Association of Occupational Health Nurses
    Advisory Board 1978-1983

Numerous talks and lectures;
    American Industrial Hygiene Conference and Exposition
    North Carolina Statewide Safety Conference
    Professional Conference on Industrial Hygiene
    American Furniture Manufacturers Association
    American Association of Textile Colorists and Chemists
    Carolinas Section AIHA

Case 2:07-md-01873-KDE-MBN    Document 7281-2    Filed 11/16/09    Page 21 of 28

**PAPERS AND PUBLICATIONS:**

Heath, George A. and William Dyson: Handling Powder Dyes: Workplace Exposure, *Textile Chemist and Colorist*, Vol. 22, No. 4, pgs. 25-31, April 1990.

Dyson, William L.: *Guidelines for Safe Handling of Dyes*, ETAD, pgs. 1-15, November 1989.

Powell, Charles H, Duncan A. Holady, Mildred A. Kendrick, and William L. Dyson, The Preliminary Survey: A Technique for the Assessment of the Nation's Occupational Health Requirements, Transactions of the 30th Annual Meeting of the ACGIH, pgs. 60-72, 1968.

McCarl, G.W., R. E. Reifschneider and W. L. Dyson: *Study of an Episode of Illness at Lasko Metal Products Company*, Franklin, Tennessee, Bureau of Occupational Safety and Health, Division of Occupational Injury and Disease Control, May 1969.

Dyson, William, and G. Warren McCarl: *Vehicle Exhaust Exposure at El Paso and Laredo, Texas, Border Crossing Stations*, U.S. Department of Health, Education, and Welfare, Public Health Service, Consumer Protection and Environmental Health Service, Environmental Control Administration, TR-58, November 1968.

Dyson, William and Edward R. Hermann: Reduction of Atmospheric Toluene Diisocyanate by Water Vapor, *American Industrial Hygiene Association Journal*, Vol. 32, Number 11, November 1971.

Imbus, Harold R., Ralph Buncher, William L. Dyson, John A. Thomas, and G.Z. Nothstein: Health Professionals as Experts, *Toxic Torts Litigation of Hazardous Substance Cases, Trial Practice Series*, pgs. 542-584 (1984).

Dyson, William L. and James E. Quon: Reactivity of Zinc Oxide Fume with Sulfur Dioxide in Air, *Environmental Science & Toxicology*, Vol. 10, No. 5, pgs. 476-481, May 1976.

Imbus, Harold R., and William L. Dyson: A Review of Nasal Cancer in Furniture Manufacturing and Woodworking in North Carolina, the United States, and Other Countries, *Journal of Occupational Medicine*, Vol. 29, No. 9, pgs. 734-740, September 1987.

Rose, Vernon E, and William L. Dyson: Occupational Health Survey of the Chicago Metropolitan Area, U.S. Department of Health, Education and Welfare, Bureau of Occupational Safety and Health, October 1969.

# FEE SCHEDULE

## William L. Dyson, PhD, CIH

---

### As of January 1, 2008

| | |
|---|---|
| Retainer: | $700 per case.  Non-refundable.  Accounted for in first invoice for work on case at current hourly rate. |
| Professional services: | $300 per hour for case review, preparation, and testimony time. |
| Travel time: | One-half current hourly rate for professional services. |
| Out-of-pocket expenses: | Billed at cost. |

**Trial Testimony List**
**For**
**William L. Dyson, Ph.D., CIH**

A review of available information indicates that in the last four years I have provided trial or hearing testimony in legal matters as follows:

1. Joe Newman v Georgia Pacific – Dallas, TX – 8/23/05
2. John Thalman v Kelly Moore – Galveston, TX – 2/7/06
3. Timothy Bostic v Georgia Pacific – Dallas, TX – 6/6-7/06
4. David Bakkie v Union Carbide – San Francisco, CA – 8/17-18/06
5. Doris Silvestro v Kelly Moore – Los Angeles, CA – 8/29/06
6. John Hoogerwerf v Honeywell – Bloomington, IL – 10/25/06
7. Timothy Lott v Bondex – Seattle, WA – 11/14/06
8. Arnold Norris v Foster Wheeler – Milwaukee, WI – 12/18/06
9. Mary K. Irwin v Georgia-Pacific – Edmonton, KY – 02/21/07
10. Philip Rincon v Union Carbide – San Francisco, CA – 04/09/07
11. Ralph Harvey v Kaiser Gypsum – Dallas, TX – 5/30/07
12. Shirley Melvin v ExxonMobil – Beaumont, TX – 7/23/07
13. Anthony Chomo v Crane – Los Angeles, CA – 8/20/07
14. James Martin v Georgia-Pacific – Waxahatchie, TX – 10/18/07
15. Bonnie Anderson v ExxonMobil – New Brunswick, NJ – 10/31/07
16. Oliver Smith v Union Carbide – Galveston, TX – 11/15/07
17. Donald Rosen v Georgia-Pacific – Houston, TX – 12/03/07
18. Joyce Windnagle v Georgia-Pacific – Miami, FL – 12/04/07
19. Robert Donlan v UGL – Brockton, MA – 3/13/08
20. Judy Clauson v Ashland – Grays Harbor County, WA – 3/26/08
21. Hugh Nye v North Brothers – Chattanooga, TN – 5/7-8/08
22. James Bennet v Texaco – Lawrenceville, IL – 08/07/08
23. John Russell v Maremont – Los Angeles, CA – 08/19-21/08
24. John Picinic v Union Carbide – New Brunswick, NJ – 11/6/08
25. Elreece McKinney v ExxonMobil – Dallas, TX – 11/18/08
26. Andrew Pulsts v Kaiser Gypsum – Syracuse, NY – 12/09/08
27. Neva Orwig v Kaiser Gypsum – Los Angeles, CA – 12/15/08
28. Walter Warren v Union Carbide – San Francisco, CA – 12/18/08
29. FACTS v City of St. Louis – St. Louis, MO – 2/18/09
30. Haywood Holloway v Georgia-Pacific – Philadelphia – 0225/09
31. Otho Lewis v Celanese – Richmond, VA – 2/27/09
32. Donald Holmes v Abex – Bloomington, IL – 03/02/09
33. Richard Johnston v Mr. Gasket – Seattle, WA – 4/7-8/09
34. Jaunita Rodarmel v Pneumo Abex – Bloomington, IL – 04/22-23/09
35. Larry Smith v CP Chemical – Raleigh, MS – 05/22&26/09
36. Gary Lenz v Viad – Greenville, SC – 06//02/09

William L. Dyson
August 19, 2009

**Deposition Testimony List**
**For**
**William L. Dyson, Ph.D., CIH**

A review of available information indicates that in the last four years I have provided deposition testimony in various types of legal cases that include:

1. Juan Figueroa v Hoechst Celanese – Corpus Christi, TX (Greensboro, NC) – 8/31/05
2. Jo Anne Tomko v Sears – Los Angeles (via telephone) – 9/12/05
3. Lucille Thomas v Union Carbide – Los Angeles (via telephone) – 9/27/05
4. Edna Blair/Carl Calhoun v Kelly Moore – Galveston, TX (Greensboro, NC) – 10/4/05
5. Kevin Sandel v Kaiser Gypsum – Galveston, TX (Greensboro, NC) – 10/5/05
6. Elmer Brodnax v Union Carbide – Los Angeles (via telephone) – 10/10/05
7. Western NC Cases (10) v Westinghouse – Fed Court Western NC – 10/27/05
8. Joseph Couturier v Georgia Pacific – New Orleans (via telephone) – 11/1/05
9. Evelyn Stanick v Reynolds Metals – Corpus Christi (Richmond, VA) – 11/3/05
10. Jim Henry v Sterling – Los Angeles (via telephone) – 11/18/05
11. Robert Ellis v Owens-Illinois – Newport News, VA (Greensboro) – 12/14/05
12. Randy Poore v Georgia-Pacific – Brazoria County, TX (Greensboro) – 1/10/06 and 1/26/06
13. James Studer v Georgia-Pacific – Los Angeles (via telephone) – 1/7/06
14. John Thalman v Kelly Moore – Galveston, TX (Greensboro, NC) – 1/8/06
15. Joseph Long v Foster Wheeler – West Virginia (Greensboro, NC) – 1/16/06
16. Terry McCann v Georgia-Pacific – Los Angeles (via telephone) – 1/19/06
17. Laura Glenn v Bondex – Beaumont, TX (via telephone) – 1/23/06
18. Paul Palmer v Georgia-Pacific – Los Angeles (via telephone) - 1/31/06
19. Linda Rittenberry v Celanese – Corpus Christi, TX (via telephone) – 2/9/06
20. Linward Freeman v Rockbestos – New Orleans, LA – 3/17/06
21. David Mosbacher v Georgia-Pacific – San Francisco (via telephone) – 3/20/06
22. Joseph Baer v Georgia-Pacific – Dallas, TX (via telephone) – 3/30/06
23. Henry Hall v Georgia-Pacific – Los Angeles (via telephone) – 4/5/06
24. Gordon Lewis v Georgia-Pacific – Dallas, TX (via telephone) – 4/6/06
25. Saeed Behshid v Georgia-Pacific – Los Angeles (via telephone) – 4/12/06
26. John McCormick v Georgia-Pacific – Cleveland, OH (via telephone) - 4/14/05
27. Patrick White v Georgia-Pacific – San Francisco (via telephone) – 5/1/06
28. Larry Gregory v Union Carbide – Chicago (via telephone) – 5/5/06
29. Michael Robertson v Georgia-Pacific – Los Angeles (via telephone) – 5/9/06
30. John Hoogerwerf v Honeywell – Bloomington, IL (Greensboro) – 5/12/06
31. Perla Filgueira v Kaiser Gypsum – Houston (via telephone) – 5/22/06
32. Earl Johnson v Union Carbide – Houston (Greensboro) – 5/26/06
33. Jesse Saenz v Kaiser Gypsum – Dallas (Greensboro, NC) – 6/8/06
34. John McNamara v Union Carbide – Los Angeles (via telephone) – 6/19/06
35. James Parsons v American Honda – Boward County, FL (Greensboro, NC) – 6/22/06
36. Robert Clark v General Electric – Cleveland, OH (Greensboro, NC) – 6/30/06
37. Virginia Laseter v Bondex – Los Angeles (via telephone) –7/5/06
38. Jerry Kenny v General Electric – Cook County, IL (via telephone) – 7/18/06
39. Ruben Flores v Bondex - Los Angeles (via telephone) – 7/19/06

1

Deposition Testimony List – William L. Dyson, Ph.D., CIH

40. Richard Davis v Bondex – Wilmington, DE (via telephone) – 8/4/06
41. Clarence Wells v Georgia-Pacific – Baton Rouge, LA (via telephone) – 8/14/06
42. Michael Mikul v ITT – Los Angeles (via telephone) – 8/21/06
43. FACTS v Lambert/St. Louis Airport – St. Louis, MO – 8/24/06
44. Joyce Scieszka-Bailey v Georgia-Pacific – Los Angeles – 8/31/06
45. Forest Christian v CBS/Westinghouse – Seattle, WA (via telephone) – 9/5/06
46. Patsy Bodkin v Bondex – Atlanta, GA (via telephone) – 9/18/06
47. Shirley Melvin v Mobil – Beaumont, TX (Greensboro) – 9/20/06
48. William Raines v Union Carbide – Houston, TX (via telephone) – 9/26/06
49. Jack McNutt v Georgia-Pacific – Dallas, TX (via telephone) – 9/27/06
50. Roman Koronczok v Alcoa – Houston, TX (via telephone) – 10/2/06
51. Palmer Venable v Kaiser Gypsum – Houston, TX (via telephone) – 10/06/06
52. Phillip Brassfield v Alcoa – Houston, TX (via telephone) – 10/09/06
53. Thomas Luckey v Occidental Chemical – Houston, TX (via telephone) – 10/24/06
54. Joseph Troncalli v Georgia-Pacific – Angelton, TX (via telephone) – 10/30/06
55. Ruth Bridges v Elementis Chemical – Los Angeles, CA (via telephone) – 11/6/06
56. James Ticer v Union Carbide – Los Angeles, CA (via telephone) – 11/20/06
57. Daniel Provencher v Crane Company – Boston, MA (via telephone) – 11/30/05
58. Deborah Huff v Union Carbide – Los Angeles (via telephone) – 12/6/06
59. West Virginia Unfair Trade Practices – Charleston, WV (Richmond, VA) – 12/12/06
60. James H. Martin v Union Carbide – Houston, TX (Greensboro, NC) – 01/11/07
61. Phillip Rincon v Union Carbide – San Francisco, CA (via telephone) – 01/24/07
62. Benito Rodriguez v Elementis Chemical – Los Angeles, CA (via telephone) – 01/29/07
63. Jacob Kurle v Georgia-Pacific – Tulsa, OK (Dallas, TX) – 02/08/07
64. Mark K. Irwin v Georgia-Pacific – Metcalf County, KY (via telephone) – 02/09/07
65. Tammy Edwards v GE Lighting – Hendersonville, NC (Greensboro, NC) – 02/20/07
66. Bell/Brown v Celanese – Charlotte, NC (via telephone) – 02/28/07
67. Conrad Beauchamp v Crane – Los Angeles, CA (via telephone) – 03/08/07
68. Barbara Harris v Bondex – Los Angeles, CA (via telephone) – 03/12/07
69. Catherine Wallen v General Electric – Cass County, TX (via telephone) – 03/16/07
70. David Blackinton v Union Carbide – Los Angeles, CA (via telephone) – 03/19/07
71. John Wehner v Westinghouse – Baltimore, MD (via telephone) – 03/23/07
72. Charles Piazza v Kelly Moore – Los Angeles (via telephone) – 03/23/07
73. Gary Gerdes v Crane – Wilmington, DL (via telephone) – 03/26/07
74. Joanne Ehrig v Georgia Pacific – San Francisco (via telephone) – 3/28/07
75. Patricia Pascale v Union Carbide – Los Angeles (via telephone) – 4/2/07
76. Judith Meyer v Kelly Moore – San Francisco (via telephone) – 4/3/07
77. Pedro Baragan v Union Carbide – Los Angeles (via telephone) – 4/9/07
78. Ralph Harvey v Bondex – Houston, TX (via telephone) – 4/17/07
79. Michael Edwards v Kaiser Gypsum – Houston, TX (via telephone) – 4/18/07
80. Ronald Robinson v Welco – Houston, TX (via telephone) – 4/24/07
81. Harvey Ross v Union Carbide – Houston, TX (Greensboro, NC) – 4/27/07
82. Jose Ortiz v Kaiser Gypsum – Houston, TX (via telephone) – 5/8/07
83. Neil LeSage v Union Carbide – San Francisco (via telephone) – 6/4/07
84. Milton Strim v Pilkington – San Francisco (via telephone) – 6/5/07
85. Hubert Lacy v North Brothers – Chattanooga, TN (Greensboro, NC) – 6/6/07

Deposition Testimony List — William L. Dyson, Ph.D., CIH

86. Beverly Saffold v Kelly Moore -- Los Angeles (via telephone) -- 6/7/07
87. Donald Boggs v Union Carbide -- Houston (via telephone) -- 6/12/07
88. John Dachauer v Union Carbide -- San Francisco (via telephone) -- 6/15/07
89. Ruben Pena v Kelly Moore -- Houston (via telephone) -- 6/18/07
90. John Picinic v Union Carbide -- Middlesex County, NJ (Greensboro) -- 6/25/07
91. Charles Palmore v Georgia-Pacific -- Houston, TX (Greensboro) -- 6/27/07
92. Bill Parker v Union Carbide -- Houston, TX (Greensboro) -- 6/27/07
93. Lars Roner v Union Carbide -- Salt Lake City, UT (via telephone) -- 6/29/07
94. Larry Oberle v Union Carbide -- Madison County, IL (via telephone) -- 7/6/07
95. William Marini v Georgia-Pacific -- Miami, FL (via videoconference) -- 7/11/07
96. Linda Shake v Union Carbide -- Houston, TX (via telephone) -- 7/16/07
97. Robert Lyman v Union Carbide -- San Francisco (via telephone) -- 7/27/07
98. Shanda Kozak v Conoco -- Houston, TX (via telephone) -- 8/16/07
99. Mychaelann Gass v Georgia-Pacific -- Houston, TX -- 8/23/07
100. Thomas Gibson v Westinghouse -- Atlanta, GA (via telephone) -- 8/29/07
101. Tony Piro v Hamilton -- Los Angeles, CA (via telephone) -- 8/30/07
102. Stanley Racik v Georgia-Pacific -- Los Angeles, CA (via telephone) -- 8/31/07
103. Donald Rosen v Kaiser Gypsum -- Houston, TX -- 9/4/07
104. Douglas West v Union Carbide -- San Francisco - 9/13/07
105. John Koehne v Georgia-Pacific -- Baltimore -- 9/20/07
106. Anthony Nicollela v Union Carbide -- Dade County, FL - 9/21/07
107. Allan Jumba v Union Carbide -- Los Angeles, CA -- 9/24/07
108. Albert Winton -- Brazoria County, TX -- 9/26/07
109. Martin Lujan v Hamilton -- San Francisco, CA -- 10/05/07
110. Nancy Murray v Reynolds Metals -- Corpus Christi, TX -- 10/05/07
111. David Emery v Union Carbide -- San Francisco, CA -- 10/15/07
112. Robert Donlan v United Gilsonite Laboratories -- Boston, MA -- 10/16/07
113. Robert Elbrink v General Electric -- Indianapolis, IN -- 10/17/07
114. Oliver Smith v Union Carbide -- Galveston, TX -- 11/02/07
115. Eunice Taylor v Pneumo Abex -- Atlanta, GA -- 11/07/07
116. Joyce Windnagle v Georgia-Pacific -- Miami, FL -- 11/16/07
117. Alpha Pruitt v Union Carbide -- Houston, TX -- 11/27/07
118. John McTaggart v Hamilton -- Los Angeles, CA -- 12/06/07
119. Robert Wagner v Conweb -- Kansas City, MO -- 12/07/07
120. Lessie Lewis v CP Chem -- Houston, TX -- 12/14/07
121. Edward Guerra v Dowman -- Los Angeles, CA -- 01/04/08
122. Malvina Cooper v Kelly Moore -- Los Angeles, CA -- 01/15/08
123. Kossie Neil v Union Carbide -- Charleston, WV -- 01/17/08
124. Honeywell v Continental Insurance -- Morris County, NJ -- 01/23/08
125. Eugene Rollin v Union Carbide -- San Francisco, CA -- 01/28/08
126. Joan Mahoney v Kaiser Gypsum -- San Francisco, CA -- 01/30/08
127. Nancy Lemkin v Georgia-Pacific -- Los Angeles, CA -- 01/31/08
128. Betty Moore v Texaco -- Beaumont, TX -- 02/21/08
129. Hector Najar v Bondex -- Galveston, TX -- 02/22/08
130. Bruce Blalock v Georgia-Pacific -- Pensacola, FL -- 03/05/08
131. Hugh Nye v North Brothers -- Chattanooga, TN -- 03/06/08

Deposition Testimony List -- William L. Dyson, Ph.D., CIH

132. Judy Clauson v Ashland -- Grays Harbor County, WA -- 03/14/08
133. Steve Weber v Chevron -- San Francisco, CA -- 04/01/08
134. Eddie Picard v Texaco -- Baton Rouge, LA -- 04/10/08
135. Neva Orwig v Kaiser Gypsum -- Los Angeles, CA -- 04/14/08
136. Paul Gambucci v General Electric -- San Francisco, CA -- 04/16/08
137. David Timmons v Georgia-Pacific -- New Castle County, DE -- 04/24/08
138. Aman Shahabi v UOP -- San Francisco, CA -- 05/02/08
139. William Ring v Union Carbide -- Houston, TX -- 05/09/08
140. Michael Garside v Kaiser Gypsum -- Los Angeles -- 05/14/08
141. Richard Dhyrman v Kaiser Gypsum -- San Francisco -- 05/29/08
142. Gloria Serrins v Kaiser Gypsum -- San Francisco -- 06/20/08
143. Donald Chambers v Rapid American -- Seattle, WA -- 06/9/08
144. Elreece McKinney v ExxonMobil -- Houston, TX -- 07/01/08
145. James Bennett v Texaco -- Lawrence County, IL -- 07/2/08
146. John Russell v Dowman -- Los Angeles, CA -- 07/22/08
147. Denise Tyrell v Georgia-Pacific -- Houston, TX -- 07/23/08
148. Joe Martinez v Kaiser Gypsum -- Los Angeles, CA -- 08/11/08
149. Lenora Walker-Williams v Union Carbide -- Delaware (via telephone) -- 8/18/08
150. Bell/Epperson/Watts v Grumman -- Newport News, VA -- 9/3/08
151. Gary Perry v General Electric -- Kingsport, TN -- 09/5/08
152. William Taylor v Bondex -- Boston, MA -- 0911/08
153. Clifford Nynam v Union Carbide -- Seattle, WA -- 09/12/08
154. Thurl Van Kirk v Union Carbide -- Los Angeles, CA -- 09/15/08
155. Chauncy Cummings v Kaiser Gypsum -- San Francisco, CA -- 09/18/08
156. Harold Deyerler v Union Carbide -- Chicago, IL -- 09/25/08
157. Daniel Young v Kaiser Gypsum -- San Francisco, CA -- 09/26/08
158. Doris Wilson v Abex -- Urbana, IL (Durham, NC) -- 09/29/08
159. Darlene Parker v Kaiser Gypsum -- San Francisco (via telephone) -- 10/01/08
160. Donald Chambers v Union Carbide -- West Virginia (Durham, NC) -- 10/16/08
161. Brian Murphy v Georgia-Pacific -- Boston, MA (Durham, NC) -- 10/21/08
162. Patricia Crawford v Dowman -- Los Angeles (via telephone) -- 10/28/08
163. Lena DeGrasse v Bondex -- New Orleans, LA (Durham, NC) -- 11/07/08
164. Marcello Garcia v ExxonMobil -- Houston, TX -- 11/13/08
165. Walter Warren v Union Carbide -- San Francisco, CA -- 11/21/08
166. James McCollum v Union Carbide -- Angleton, TX -- 12/02/08
167. Otho Lewis v Celanese -- Richmond, VA -- 12/16/08
168. Herbert Moreno v Bondex -- San Francisco, CA -- 12/22/08
169. Tamara Sacks v Kaiser Gypsum -- Los Angeles, CA -- 01/05/09
170. Allen Solum v Kaiser Gypsum - Alameda County, CA -- 01/06/09
171. Johnston v Mr. Gasket -- Seattle, WA -01/08/09
172. Roy Garner v Georgia-Pacific -- Miami, FL -- 01/29/09
173. Blaise DiBenedetto v Montello -- New Orleans, LA -- 01/30/09
174. Richard Johnston v Mr. Gasket -- Seattle, WA -- 02/08/09
175. Bernard Faulkner and others v Union Carbide -- Charleston, WV -- 02/11/09
176. Oliver Tate v Union Carbide -- Richmond, VA -- 02/17/09
177. Howard, Bird v Union Carbide -- New Brunswick, NJ -- 02/17/09

Deposition Testimony List – William L. Dyson, Ph.D., CIH

178.   Neil Le Sage v Union Carbide – San Francisco, CA – 03/16/09
179.   Juanita Rodamel v Pneumo Abex – Bloomington, IL – 03/17/09
180.   Linda Strickland v Hamilton – Los Angeles – 03/18/09
181.   James Neilus v Union Carbide – Houston, TX – 03/20/09
182.   Jake Miller v ExxonMobil – Dallas, TX – 04/03/09
183.   Richard Seaton v Union Carbide – Baltimore, MD – 04/13/09
184.   William Rudolph v Westinghouse – Birmingham, AL – 04/14/09
185.   Willie Flynt v Union Carbide – Volusia County, FL – 04/15/09
186.   James Havilland v Union Carbide – Hillsborough County, FL – 04/15/09
187.   Gary Lenz v Viad Corp – Richland County, SC – 04/16/09
188.   Edward Wilhite v Alcoa – Milam County, TX – 05/07/09
189.   Barbara Anderson v Union Carbide – Richmond, VA– 05/11/09
190.   Kenneth Jackson v North Brothers – Chattanooga, TN – 05/19/09
191.   John Toney v Union Carbide – Wheeling, WV – 05/27/09
192.   Mickey Campbell v Texaco – Los Angeles, CA – 06/01/09
193.   Doris Hogston v North Brothers – Richmond, VA – 06/10/09
194.   Salvador Juarez v Kaiser Gypsum – Houston, TX – 06/11/09
195.   Robert Neibauer v Kelly Moore – Los Angeles, CA – 06/12/09
196.   Hershel Ezzel v Union Carbide – Houston, TX – 06/23/09
197.   Kenny Henry v Union Carbide – Brazoria County, TX – 06/24/09
198.   Walter Golembeski v Union Carbide – Wilmington, DE – 06/25/09
199.   Peter MacIssac v Union Carbide – Providence, RI – 06/26/09
200.   Michael Catania v Pharmacia – Baton Rouge, LA – 06/30/09
201.   Homayoon Enayati v Chevron – Los Angeles, CA – 07/10/09
202.   Michael Tubbs v Kaiser Gypsum – San Francisco, CA – 07/28/09
203.   Gracey Cooper v Union Carbide – Los Angeles, CA – 07/30/09
204.   Jean Papineaux v Union Carbide – Miami, FL – 08/03/09
205.   Paul Puckett v Union Carbide – Angleton, TX – 08/07/09
206.   Wayne Dennis v Kaiser Gypsum – Alameda County, CA – 08/10/09

William L. Dyson
August 19, 2009