UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * | MDL NO. 07-1873 |
| | * | SECTION: N (5) |
| THIS DOCUMENT RELATES TO | * | |
| CIVIL ACTION NO. 2:07-CV-9228 | * | JUDGE ENGELHARDT |
| *Aldridge, et al. v. Gulf Stream Coach, Inc., et al* | * | |
| *(Elisha Dubuclet obo Timia Dubuclet v.* | * | MAGISTRATE JUDGE CHASEZ |
| *Fleetwood Fluor Enterprises, Inc. and FEMA)* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION IN LIMINE TO
PROHIBIT NARRATIVE AND/OR NON-RESPONSIVE TESTIMONY**

Plaintiffs, Elisha Dubuclet and her minor child, Timia Dubuclet, respectfully request that this Court issue an order prohibiting defendant's expert Dr. H. James Wedner, from offering narrative and/or non-responsive testimony at trial.

Under Federal Rule of Evidence 611, this Court "shall" exercise reasonable control over the mode of interrogating witnesses and presenting evidence so as to: (1) make the interrogation and presentation effective for the ascertainment of the truth and (2) avoid needless consumption of time. Witnesses are prohibited from providing "narrative" (i.e. open-ended) testimony and offering non-responsive answers to questions. Under Federal Rule of Evidence 403, this Court has the authority to exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The purpose of the Federal Rules of

Evidence is to "secure fairness in administration" and the "elimination of ... delay, "so that the truth may be ascertained and proceedings justly determined." Fed. R. Evid. 102.

During the *Age* trial, on September 23, 2009, defendants offered the testimony of their expert in the field of allergies and immunology, Dr. H. James Wedner. During that prior testimony, Dr. Wedner gave both narrative and non-responsive answers to questions by defense counsel. In answer to simple questions which called for a "yes" or "no" answer, Dr. Wedner often volunteered lengthy responses which went far beyond the confines of the question.

For example, in the *Age* trial, Dr. Wedner gave this lengthy and narrative response, which prompted this Court to prod defense counsel to "get to the next question":

> **Q. [BY DEFENSE COUNSEL] WE'VE SEEN OR WE'VE HAD PEOPLE DISCUSS VARIOUS RESPONSES THE BODY CAN MAKE TO FORMALDEHYDE. WHAT ABOUT THE -- AND I ALWAYS GET THIS ONE WRONG -- THE TRIGEMINAL NERVE -- TRIGEMINAL NERVE?**
>
> A. [BY DR. WEDNER] TRIGEMINAL.
>
> **Q. [BY DEFENSE COUNSEL] I KNEW I'D GET IT WRONG.**
>
> A. [BY DR. WEDNER] THE TRIGEMINAL NERVE IS PART OF THE VAGUS SYSTEM, WHICH IS A VERY IMPORTANT SYSTEM THAT WE USE BOTH TO SENSE THINGS AND TO TELL PARTS OF THE BODY THAT WE'VE SENSED THEM. SO THE TRIGEMINAL NERVE IS A BIG NERVE WHICH INNERVATES MOST OF OUR UPPER HEAD. AND IT'S CALLED TRIGEMINAL BECAUSE IT'S GOT THREE PARTS TO IT. ONE PART GOES HERE, AND IT BASICALLY IS -- PART OF IT IS WHAT THE DENTIST DOES WHEN HE

> ANESTHETIZES YOUR JAW. AND ANOTHER PART GOES
> TO THE NOSE, AND ANOTHER PART THAT GOES UP
> HERE. AND THERE ARE DISEASES THAT CAUSE
> INTENSE PAIN CALLED TRIGEMINAL NEURALGIA. IF
> YOU'VE EVER MET EVERYBODY THAT HAS THAT, THEY
> CAN TELL WHERE EACH BRANCH IS BECAUSE
> SOMETIMES YOU GET ONE BRANCH AND SOMETIME
> THE OTHER. BUT THE TRIGEMINAL NERVE CARRIES
> THESE WHAT ARE CALLED IRRITANT FIBERS. IRRITANT
> FIBERS ARE VERY, VERY TINY NERVE FIBERS, THE
> SMALLEST NERVE FIBERS, OFTEN REFERRED TO AS C
> FIBERS. AND THAT'S BECAUSE THEY ARE TINY AND
> THEY ARE NOT MYELINATED. THEY DON'T HAVE A
> COATING ON THEM. AND WE USED TO THINK THAT
> THESE FIBERS --
>
> THE COURT: LET'S --
>
> THE WITNESS: IS THAT ENOUGH?
>
> THE COURT: -- GET TO THE NEXT QUESTION.[1]

At another point in the trial, Dr. Wedner gave these responses to questions which called for a "yes" or "no" answer:

> **Q. [BY DEFENSE COUNSEL] DID YOU CONSIDER THAT
> THERE WERE OTHER ENVIRONMENTAL FACTORS
> THAT MIGHT BE CAUSING OR AGGRAVATING
> ASTHMA?**
>
> A. [BY DR. WEDNER] WE MEASURED A HUGE NUMBER
> OF ENVIRONMENTAL FACTORS. WE LOOKED AT
> EVERYTHING THAT WE COULD GET OUR HANDS ON.

---

[1] Exhibit 1, Transcript of trial testimony of Dr. H. James Wedner, Sept. 23, 2009, at 94-95 (emphasis added).

> **Q. [BY DEFENSE COUNSEL] WAS ONE OF THOSE THINGS FORMALDEHYDE?**
>
> **A. [BY DR. WEDNER] EARLY ON, WE MEASURED FORMALDEHYDE. WE WERE UNABLE TO DOCUMENT THE FORMALDEHYDE. WE MEASURED NITROGEN DIOXIDE AND OTHER NITROGEN OXIDES. WE WERE UNABLE TO DOCUMENT THAT THEY WERE A FACTOR, SO IN THE LATER PARTS OF THE STUDY WE DIDN'T MEASURE THEM.[2]**

Shortly thereafter, Dr. Wedner again gave a long narrative response to a question ("Did all of this literature start after the FEMA formaldehyde trailers were made?") which could have been (and in fact was) answered with a simple "No":

> **Q. [BY DEFENSE COUNSEL] DID ALL OF THIS LITERATURE START AFTER THE FEMA FORMALDEHYDE TRAILERS WERE MADE?**
>
> **A. [BY DR. WEDNER] NO. ACTUALLY, THE INTEREST IN FORMALDEHYDE BEGAN IN THE LATE '60S, EARLY '70S. AND IT ACTUALLY STARTED WITH UREA FORMALDEHYDE FOAM INSULATION WHICH WAS PUT IN A LOT OF HOMES AND OTHER BUILDINGS. AND THERE WAS A LOT OF INTEREST IN WHETHER OR NOT THE FORMALDEHYDE MIGHT BE CAUSING SOME DEGREE OF HEALTH -- ADVERSE HEALTH EFFECTS, WHETHER IT WAS PULMONARY, UPPER AIRWAY OR OTHER HEALTH EFFECTS. AND THOSE BEGAN A SERIES OF STUDIES WHICH ACTUALLY STARTED PROBABLY IN THE VERY EARLY 1970S, AND HAVE CONTINUED TO**

---

[2] Exhibit 1, Transcript of trial testimony of Dr. H. James Wedner, Sept. 23, 2009, at 89 (emphasis added).

> TODAY. SO THIS IS A VERY OLD PROBLEM. IT'S NOT A BRAND-NEW PROBLEM.[3]

Then, in response to defense counsel's simple question ("Is that a concept called adaptation"), Dr. Wedner gave another lengthy and narrative response:

> **Q. [BY DEFENSE COUNSEL] IS THAT A CONCEPT CALLED ADAPTATION?**
>
> A. [BY DR. WEDNER] WE ALL HAVE OR WERE PERCEIVED -- AND WE PERCEIVE MULTIPLE ODORS IN OUR ENVIRONMENT ALL THE TIME. WE'RE VERY GOOD AT DETECTING THINGS, AND WE'RE ALSO VERY GOOD AT ADAPTING TO THEM SO THAT WE CAN DETECT NEW ODORS. SENSE OF SMELL IS THE MOST ANCIENT SENSE WE HAVE, AND IT GOES TO A VERY ANCIENT PART OF OUR BRAIN, SO THAT WE CAN PUT AWAY, IN ESSENCE, WE CAN ADAPT TO ODORS; SO, IF IS THERE A NEW ODOR, WE'LL BE ABLE TO SENSE THAT. IF YOU COULDN'T DO THAT, YOU WOULD BE -- WOULDN'T BE ABLE TO DISCRIMINATE ODORS. WE CAN DO THAT FOR ALL OF OUR SENSES, BUT WE CAN DO IT VERY WELL FOR ODORS.[4]

And in response to another question ("Can irritating effects of formaldehyde aggravate asthma?), which could be answered (and, in fact, was answered with a simple "no"), Dr. Wedner launched into a lengthy and non-responsive reply:

---

[3] Exhibit 1, Transcript of trial testimony of Dr. H. James Wedner, Sept. 23, 2009, at 91 (emphasis added).

[4] Exhibit 1, Transcript of trial testimony of Dr. H. James Wedner, Sept. 23, 2009, at 92-93 (emphasis added).

**Q. [BY DEFENSE COUNSEL]** LET'S RETURN TO THE POTENTIAL IRRITATING EFFECTS OF FORMALDEHYDE. **CAN IRRITATING EFFECTS OF FORMALDEHYDE AGGRAVATE ASTHMA?**

**A. [BY DR. WEDNER] NO.** IT'S ACTUALLY BEEN LOOKED AT. BACK IN THE BEGINNING, IN THE MID '70S, WHEN THERE WAS THIS REAL QUESTION OF WHETHER FORMALDEHYDE COULD CAUSE ASTHMA OR COULD AGGRAVATE ASTHMA, THERE WERE A NUMBER OF STUDIES IN WHICH THEY LITERALLY TOOK PEOPLE, PUT THEM IN CHAMBERS, AND EXPOSED THEM TO HIGH LEVELS OF FORMALDEHYDE, BEGINNING WITH, LET'S SAY, .1 PARTS PER MILLION OR A HUNDRED PARTS PER MILLION AND GOING UP TO AS HIGH AS THREE PARTS PER MILLION, AMOUNTS OF FORMALDEHYDE THAT YOU WOULD REALLY NOT LIKE TO BE IN. AND THEY DID BASICALLY THREE GROUPS OF INDIVIDUALS. THE FIRST GROUP WERE NORMAL PEOPLE. AND WHAT THEY SHOWED IS THAT IF YOU TAKE A NORMAL PERSON AND EXPOSE THEM TO THREE PARTS PER MILLION FORMALDEHYDE, ALTHOUGH THEY DON'T LIKE IT, THEY DON'T WHEEZE, AND THERE'S NO CHANGE IN THEIR PULMONARY FUNCTION. THE SECOND GROUP WERE PEOPLE WHO HAD ASTHMA. AND THEY EXPOSED THEM TO AMOUNTS OF FORMALDEHYDE UP TO THREE PARTS PER MILLION, AND ASTHMATICS DON'T WHEEZE. AND THE THIRD GROUP WERE PEOPLE WHO HAD ASTHMA AND BELIEVED THAT THEIR ASTHMA WAS CAUSED BY FORMALDEHYDE, AND THEY BLEW FORMALDEHYDE AT THEM BUT THEY MASKED THE ODOR. YOU CAN TAKE SOMETHING THAT SMELLS WORSE, AND SO IN THAT CASE THEY USED METHYL MERCAPTAN, THE SMELL OF ROTTEN EGGS. AND EVEN THEN, FORMALDEHYDE, WHEN THE PATIENTS DIDN'T KNOW THAT IT WAS FORMALDEHYDE, THEY WERE UNABLE TO DOCUMENT THAT FORMALDEHYDE EITHER CAUSES OR MAKES YOU WHEEZE, EVEN AT VERY HIGH

> CONCENTRATIONS. NOW, AT THESE HIGH CONCENTRATIONS, YOU HAVE TO UNDERSTAND THAT PEOPLE WOULD GET, YOU KNOW, RUNNY NOSE, AND THEY WOULD GET ITCHY EYES, SO IT WAS IRRITATING AT THAT LEVEL.[5]

There are two practical problems with Dr. Wedner's narrative responses. First, it is extremely difficult for Plaintiffs' counsel to make a timely objection to testimony which is not tethered to a specific question. This raises the risk that the jury will hear inadmissible testimony, and the need for an instruction by the Court to disregard such testimony. Second, allowing such narrative and non-responsive answers will unduly prolong the trial.

Plaintiffs respectfully requests that this Honorable Court instruct counsel, and his seasoned witness, to respond to the question that is asked, and no more.

## CONCLUSION

Plaintiffs respectfully request that this Court enter an order prohibiting defendant's expert Dr. H. James Wedner, from offering narrative and/or non-responsive testimony at trial.

---

[5] Exhibit 1, Transcript of trial testimony of Dr. H. James Wedner, Sept. 23, 2009, at 108-09 (emphasis added).

-7-

Respectfully submitted,

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

_/s/ Gerald E. Meunier_
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
**Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70113
Telephone: (504) 522-2304
Facsimile: (504) 528-9973
**meunier@gainsben-com**

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
JUSTIN I. WOODS (LA Bar #24713)
RAÚL R. BENCOMO (LA Bar #2932)
LINDA J. NELSON (LA Bar #9938)
FRANK J. D'AMICO, JR. (LA Bar #17519)
MATT MORELAND (LA Bar #24567)
ROBERT M. BECNEL (LA Bar #14072)
ANTHONY BUZBEE (TX #24001820)
MIKAL WATTS (TX #20981820)
DENNIS REICH (TX #16739600)

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon counsel for all parties by electronic mail (CM/ECF) system which will send a notice of electronic filing to all counsel of record addressed this 16th day of November, 2009.

            /s/ Gerald E. Meunier
            GERALD E. MEUNIER