# Exhibit "D"

# Opinion from the Twenty Fourth Judicial District Court, Parish of Jefferson, July 30, 2009

## JUDGMENT WITH REASONS ON DEFENDANT'S DAUBERT MOTIONS IN LIMINE TO EXCLUDE THE TESTIMONY AND REPORTS OF SOME OF PLAINTIFFS' EXPERTS

PRESENT:   Tim Falcon, Frank Buck, Jerry Sprague and Jack Clegg attorneys for Plaintiffs, Warren Lester, et al

Glen Pilie, Charles F. Gay, Louis Woolf and Howard Jarvis, attorneys for Defendant, Exxon Mobil Corporation, ("Exxon")

Thomas Balhoff, attorney for Defendant, ITCO

### FACTUAL BACKGROUND

The Defendant's, Exxon Mobil and ITCO, filed various motions to exclude testimony and/or reports of some of Plaintiffs' proposed experts. Some were heard on June 23-25, 2009 and orally argued on July 15, 2009. Others were filed and later withdrawn.

Motions heard and argued included:

1) Motion to exclude the testimony and report of Ian Waldram;

2) Motion to exclude the testimony of Dr. Philip Plato and Robert McLendon;

3) Motion to exclude the testimony of Dr. Patricia Williams;

4) Motion to exclude the testimony of Dr. Bertha Daniels;

Motion submitted by written deposition and orally argued:

5) Motion to exclude the testimony of Dr. Lucien A. Nedzi;

Motions filed, not argued but later withdrawn:

6) Motion to exclude the testimony and reports of Dr. Tumulesh K.S. Solanky

7) Motion to exclude the testimony of John Gardner, Ph.D.; and

8) Motion to exclude the testimony of Dr. Templet

Ian Waldram's testimony was taken by transatlantic video on June 23, 2009. He stated that he held a degree in Mechanical Engineering and had experience as a health and safety engineer. His work experience included the duty to test sealed and unsealed drilling pipe scale.

On redirect the witness indicated that some TLD badges, to detect some forms of radiation, were worn on the site, but that none of the Plaintiffs were issued the TLD badges.

On Wednesday, June 24, 2009 the *Daubert* hearings continued. Before commencement, the following were offered and received:

1) The entire deposition of Dr. Frazier; and

2) Judge Julien's judgment from the New Orleans CDC as to the admissibility of Dr. Plato's testimony.

The first witness to appear was Robert McLendon, who was offered as an expert radiation protection technologist and an expert in ionizing radiation dosemetry. He testified as to his qualifications and experience. The defense stated that it had no cross examination. The Court ruled that he would be accepted as an expert radiation protection technologist and an expert in ionizing radiation dosemetry, and as such would be allowed to render expert opinion.

Testimony continued from Dr. Patricia M. Williams. Exhibits titled Williams # 1 and Williams # 2 were introduced. One indicated that she was allowed to testify as to specific medical causation in an earlier case.

Testimony indicated that she is a board certified Toxicologist; that she participates in annual continuing education; that she has testified as an expert in many court appearances and was never rejected.

She acknowledged that as a toxicologist she didn't do a diagnosis. This, she said, was supplied by a doctor. She indicated that she obtained a Master's in Microbiology with a Minor in biochemistry. As to her ability to testify as to specific as opposed to general medical causation, she acknowledged that she does not make a differential diagnosis. She testified as to many considerations that go into a consideration of general medical causation.

On cross examination she acknowledged that a toxicologist is not a medical doctor; that she did not graduate from medical school and that she is not licensed to practice medicine. She further admitted that she is not qualified to prescribe medications; is not an oncologist, a

> A - Yes, sir.
>
> Q - Have you ever heard of anybody doing a differential diagnosis of a cause of cancer?
>
> A - I'm not familiar with that term.

Later in the deposition he was asked, and answered:

> Q - In your practice, assuming the patient - - and there may be some type of toxicants such as radiation that the patient has been exposed to, would you, at times, consult with a board-certified Ph.D. toxicologist in order to help determine what the cause of the cancer is?
>
> A - I can think of a couple of occasions in the last 30 years when I've done that particularly with exposure to some of the vinyl chloride constituents. I spoke to a fellow in New York whose name I can't remember who gave me a differential diagnosis of what possible tumors can be associated with that exposure.

Later, under cross examination by defense counsel he was queried and answered as follows:

> Q - Let me ask you this: Certainly a medical doctor is an individual who is a graduate of medical school?
>
> A - Yes, sir.
>
> Q - A medical doctor is licensed by a particular state to actually practice medicine?
>
> A - Yes, sir.
>
> Q - A medical doctor prescribes medication?
>
> A - Yes, sir.
>
> Q - A medical doctor determines treatment protocol?
>
> A - Yes, sir. Generally.
>
> Q - A medical doctor determines etiology?
>
> A - Not always.
>
> Q - Not always?
>
> A - I don't.

*Corporation*, 934 So.2d 708 (La.App. 1st Cir. 2005) application factors are not part of a proper *Daubert* inquiry.

Counsel argued that the 109 measurements by Lindsay Booher in 1986 and '87 were unreliable but they were looked at and considered by Dr. Plato.

Defense counsel conceded that it is easy to say that Dr. Plato is a qualified health physicist but since he never observed ITCO's operation, took no soil samples and no pipe scale samples, he made only worker favorable assumptions. He cited *Keener v. Keener*, 817 So.2d 347 (La.App. 5th Cir. 2002) wherein a physician was found not qualified to give expert testimony in the fields of biomechanics and injury causation.

He alleged that Dr. Plato failed to use the "site data" in his data formula. He wanted Dr. Plato to use actual site date (the 109 samples of pipe scale considered by Dr. Frazier from 1986 through '97 samples.) This, he said, reflects inappropriate methodology. Here he cited *Finestone v. Florida Power and Light Company*, 2006 WL 267330 (S.D. Fla. 2006) where toxicology experts and treating physicians relied on other excluded experts' findings.

In summary the defense questioned the "inappropriate methodology of Dr. Plato."

Findings as to Dr. Philip Plato:

Dr. Plato is offered as an expert in the field of health physics. As to his qualifications, knowledge and expertise, the record reflects that he has degrees of civil engineering from the University of Miami, a masters degree in radiological health and a PhD in health physics. He is a certified health physicist. His practical experience included teaching graduate students, a professor of health physics at the University of Michigan, including environmental transport and radiation dosemetry. He later worked as a private consultant for nuclear power plants and utilities.

The record further reflected that he and Dr. John R. Frazier employed similar methodology but different as to application factors utilized. Both witnesses agreed that the best procedure would have been to take actual soil and air measurements on site as well as NORM

causation opinion. He noted the federal locales of the cases, and argued that in *Perry*, the Judge went beyond what is required in a *Daubert* analysis in Louisiana.

Defense counsel went beyond what Dr. Sullivan possibly conceded. He argued that Dr. Williams was not qualified to offer opinions as to general causation, specific causation or differential diagnosis. He argued that *Ballard* was right on point as to specific diagnosis.

He took issue with her seven (7) step methodology from the Reference Manual on Scientific Evidence including: 1) Strength 2) Consistency 3) Dose 4) Temporal 5) Biologic Plausibility 6) Coherence and 7) Experimental Evidence. He argued that in benzene cases regular methodology deals with the agent and she never said she looked at radium.

Finally, he argued that she is not a medical doctor and she failed to do a differential diagnosis.

As to the *Perry* decision, he stated that we do rely on the *Perry* language you find on pages 13, 16 and 19 as to specific causation, epidemiology, and differential diagnosis.

Findings as to Dr. Patricia M. Williams:

The first two findings are relatively simple:

1. She is qualified to render an opinion as to general causation. If the *Ballard, Curtis* and *Perry* cases agree on little else, they agree that a Ph.D. Toxicologist can render an opinion as to general causation; other cases agree.

2. She is not a medical doctor and is not even going to attempt to make a differential diagnosis.

3. The third finding presents a more difficult question. Can she in this case, render an opinion as to specific causation?

The *Ballard* case makes a definitive finding that a deferential diagnosis by a medical doctor is essential to allow a Ph.D. Toxicologist to render an opinion as to specific causation. The *Perry* case at page 19 raises no objection to both an oncologist and Ph.D. Toxicologist each engaging in a differential diagnosis.

D.  As to Dr. Bertha Daniels

Plaintiffs counsel argued that she is a medical doctor and an internist. He stated that she did not examine the plaintiffs in the past because there was no money for medical monitoring and that defendants' attacks were misplaced. He deferred further argument until rebuttal.

Defense counsel argued that there are 22 separate consolidated cases, not a class action. In order to have medical monitoring it is necessary to look at a single plaintiff. In this case he argues that the future is a matter of speculation, conjecture and surmise. He contended that her prior medical monitoring was for a group of some 350 people. He quoted her as saying she wanted some tests done earlier than usual. He further quoted her as saying that her medical monitoring is good medical practice and no different from the general populations practice. He argued that her procedure is faulty and flawed.

In response plaintiffs' counsel referred to prior rulings of Judge Pitre. Initially Judge Pitre referred to the seven (7) criteria of *Bourgeois v. A.P. Green Industries*, 783 So.2d 1251 (La 2001) and the effective date of the amendment to LSA - CC Art 2315. He initially found that the plaintiffs had not met their C.C.P. Art. 966 burden, and dismissed their medical monitoring claims without prejudice.

Judge Pitre later granted plaintiffs a new trial on the question of Dr. Daniels' medical monitoring regime. He later issued a clarifying order reinstating the plaintiffs' medical monitoring claims indicating that they had then satisfied the seven (7) criteria of *Bourgeois*.

He then argued that if plaintiffs prove they have been exposed to ionizing radiation, Dr. Daniels' protocol would properly call for earlier screening and medical monitoring.

Findings as to Dr. Bertha Daniels:

The Court finds that Dr. Daniels has a B.S. degree with a Microbiology major, an M.D. degree from the University of Kansas and extensive experience in cancer screening. It further finds that her education, training, experience and knowledge will assist the trier of fact to understand the evidence and determine a fact in issue. It further finds that her protocol is reliable

the testimony of Ian Waldram, Dr. Philip Plato, Robert McLendon and Dr. Bertha Daniels are hereby **DENIED**.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendants motion to exclude the testimony of Dr. Patricia Williams is hereby **DENIED** and she will be allowed to render opinions on both general and specific causation.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** Defendants motion to exclude the testimony of Dr. Lucien A. Nedzi is **DENIED** with the caveat that he will not render opinions as to general and specific causation.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the motions to exclude the testimony and reports of Dr. Tumulesh K.S. Solanky and the testimony of John Gardner Ph.D. and Dr. Paul H. Templet are hereby **DENIED** since they were filed, not argued, and later withdrawn.

Signed at Gretna, Louisiana on this 30th day of July, 2009.

_____
John L. Peytavin
Judge *Ad Hoc*