UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
|       FORMALDEHYDE PRODUCTS | * | |
|       LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Dubuclet v. Fleetwood Enterprises, Inc.* | * | |
| Docket No. 07-9228 | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO DEFENDANT FLEETWOOD ENTERPRISES, INC.'S MOTION TO EXCLUDE DR. LAWRENCE G. MILLER'S TESTIMONY**

Plaintiff Elisha Dubuclet, on behalf of her minor child Timia Dubuclet responds to Defendant Fleetwood Interprises, Inc.'s ("Fleetwood") motion to exclude Dr. Miller's testimony, and, in support would show:

**I.
FACTUAL BACKGROUND**

Plaintiff has asserted claims against Fleetwood under the Louisiana Products Liability Act ("LPLA"). Specifically, Plaintiff claims that the Fleetwood unit she occupied from June of 2006, until September of 2007, due to its construction, composition, design, and lack of warnings, exposed Timia to dangerous levels of formaldehyde. As a result, Timia has suffered exacerbation of her eczema and rhinitis. (rec. Doc. 5394-3).

Dr. Lawrence Miller, who will testify as to specific causation, trained in internal medicine, pulmonology, pharmacology, and public health. His expertise includes dermatological illnesses and epidemiology. He interviewed Timia and her mother, reviewed Timia's medical

1

records, and thoroughly evaluated the scientific and regulatory literature on formaldehyde, including its link to eczema and rhinitis. In light of his credentials and his thoughtful discussions of the medical and scientific issues in this case, he will certainly aid the jury in their quest for the truth.

## II.
## EVIDENCE

Exhibit A    Curriculum Vitae of Lawrence G. Miller

Exhibit B    Miller deposition excerpts

Exhibit C    Miller affidavit

## III.
## ARGUMENT AND AUTHORITIES

A.    Summary Judgment Standard

Summary judgment is proper only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp, 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, Gillis v. Louisiana, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. Hunt v. Rapides Healthcare System, L.L.C., 277 F.3d 757, 764 (5th Cir. 2001). A factual dispute where the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party precludes a grant of summary judgment. Smith v. Amedisys, 298 F.3d 434, 440 (5th Cir. 2002).

B.  Dr. Miller is qualified to render his causation opinions.

Rule 702 requires an expert witness to possess specialized expertise in matters requiring scientific, technical or specialized knowledge and be able to assist the trier of fact. *See* Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3rd. Cir. 2008). The rule, however, does not mandate that an expert be highly qualified to testify about a given issue. Huss v. Gayden, 571 F.3d 442, 452 (5th Cir. 2009). "Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." Id.

Dr. Miller is sufficiently qualified to offer a causation opinion as to the exacerbation of Timia Dubuclet's eczema and rhinitis. He is a Harvard-trained physician, board certified in internal medicine, pulmonary disease, and clinical pharmacology. *See* Miller CV, pp. 1, 4. He additionally holds a Masters in Public Health from the Boston University School of Public Health. *See* Miller CV, p. 2. He has served as the director of the Environmental and Occupational Health Service of the LSU Medical Center, and has taught medical students since 1965. *See* Miller CV, p. 2.

Dr. Miller is trained as an internist, a pulmonologist, and a clinical pharmacologist, and works in all of these areas. *See* Miller depo, p. 63. His training in internal medicine included the study of dermatological illnesses. *See* Miller depo, p. 63. Epidemiology was part of the studies required for his Masters degree. *See* Miller depo, p. 130. His credentials, along with his knowledgeable discussion of the medical issues involved in the case, obviate his qualification to present his expert testimony. *See* Pineda, 520 F.3d at 244

C.  Dr. Miller's weight-of-the evidence methodology is reliable.

Defendant erroneously attacks Dr. Miller's use of the weight-of-the-evidence

3

methodology. Expert testimony is admissible when the underlying reasoning and methodology is scientifically valid, can properly be applied to the facts of the case, and contain no analytical gaps. General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Proof of general causation does not always require a published study to unequivocally conclude that a substance caused a particular illness. Heller v. Shaw Indus., Inc., 167 F.3d 146, 155 (3d Cir.1999). Where an expert otherwise reliably uses the scientific method to reach a conclusion, lack of textual support may go to the weight, not the admissibility of the expert's testimony. Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 354 (5th Cir. 2007).

It is well recognized that in epidemiology, it is rare that any study is ever conclusive of a causation question. *See* Id. Epidemiology, in fact, cannot deductively prove causation. *See* REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, p. 376 (2nd ed. Federal Judicial Center (2000). Causation is always a judgment reached by interpreting the epidemiologic data, and evaluating it against many other factors, including but not limited to biologic plausibility, temporal relationships, and considerations of alternative explanations. *See* Id. at 374-75.

Dr. Miller specifically describes how he used the weight-of-the evidence approach. *See* Miller depo, p. 241. Several scientific studies he summarized and discussed support the association of formaldehyde with allergic contact dermatitis, dermatitis/eczema, and allergic rhinitis. *See* Miller affidavit, p. 4-5. He explained that he considered these associations, together with the weight of other evidence. *See* Miller depo, pp. 233-34. He noted that formaldehyde is capable of causing upper respiratory tract irritation and skin rashes. *See* Miller affidavit, p. 4. In fact, both dermatitis/eczema and allergic rhinitis are characteristic symptoms of formaldehyde exposure. *See* Miller affidavit, p. 5. Using various sampling results, Dr. Miller established that formaldehyde was present in Timia's trailer, and that she was chronically exposed to the

emissions, thus providing "a complete exposure pathway." *See* Miller affidavit, pp. 4, 5.

Dr. Miller addressed scientific plausibility when he noted that the biological mechanism for injury from formaldehyde exposure is a delayed hypersensitivity mechanism associated with surface contact; mucosal in the case of rhinitis, and dermal in the case of dermatitis/eczema. *See* Miller affidavit, p. 5. As to the temporal relationship, from medical records and interviews with Timia and her mother, he concluded that both Timia's eczema/dermatitis and her allergic rhinitis became more chronic and more severe after moving into the trailer and suffering the formaldehyde exposure. *See* Miller affidavit, p. 5. He considered alternative explanations for the exacerbation of her symptoms, specifically rejected stress due to her young age, and noted that there were no other substances identified in her environment that could have exacerbated her symptoms. *See* Miller depo, pp. 154-56.

Defendant's accusation concerning the validity of Dr. Miller's conclusions as they relate to gaseous formaldehyde is simply a red herring. Formaldehyde has the same chemical make-up whether it is present as a solid, liquid, or gas. Even in its gaseous state, formaldehyde molecules come in contact with a person's skin. *See* Miller depo, p. 216. From a chemical standpoint, a formaldehyde molecule reacts with the skin exactly the same regardless of whether the molecule is in its liquid or gas phase. Defendant has presented no evidence to the contrary. Additionally, sources such as the ATSDR do not distinguish between inhalation and dermal contact as to the skin effects of formaldehyde exposure. *See* Miller depo, p. 141.

Dr. Miller use of the weight-of-the-evidence method is thus valid and supported by recognized authority. His explanation of his reasoning contains no analytical gaps. Defendant's motion to dismiss, therefore, should be denied. Joiner, 522 U.S. at 146.

5

D.      Dr. Miller reliance on Dr. Farber's testing does not make his opinions inadmissible.

Defendant criticizes Dr. Miller's reliance on Dr. Farber's interpretation of the T.R.U.E. test he performed on Timia. His reliance on Dr. Farber, however, does not make Dr. Miller's testimony inadmissible. Dr. Miller devoted only three sentences of his report to Dr. Farber's testing. *See* Miller affidavit, pp. 2, 5. Given the depth and breadth of Dr. Miller's analysis, Dr. Farber's test results represent only a minor detail. Even without the reference to Dr. Farber, which provided only "further support" for his opinions, the basis for Dr. Miller's opinion is sound. *See* Miller affidavit, p.5.

E.      Dr. Miller's mention of MRL's is valid.

Defendant would erroneously exclude Dr. Miller's discussion of the ATSDR's MRL's. While not challenging the accuracy of the standards, Defendant incorrectly accuses Dr. Miller of using the MRL's as a dose threshold for injury. Dr. Miller, however, cited the MRL's as background. *See* Miller affidavit, p. 4. He explained that an MRL is not an injury threshold, but a regulatory standard that estimates the level below which exposure is unlikely to result in adverse health effects. *See* Miller depo, p. 160; Miller affidavit, p. 5. He did make use, however, of the ATSDR's formaldehyde threshold level for eye irritation of .4-3 ppm (400-3,000 ppb), and Patricia Williams's general causation threshold concentration ranges applicable to eczema. *See* Miller depo, pp. 18-19, 22, 90, 111, 157; Miller Affidavit, p. 1. Dr. Miller's opinion as to specific causation would thus have been no different absent the MRL discussion.

F.     Dr. Miller has abundant scientific support for his opinions.

Defendant's allegation that Dr. Miller has lost all scientific basis for his opinions is absurd. Assuming *arguendo* that discussion of Dr. Farber's testing and the MRL's is eliminated, Dr. Miller's opinions are still amply supported.

Dr. Miller consulted the medical records from numerous physicians. *See* Miller affidavit, pp. 1, 2. He participated in an actual medical examination of Timia. *See* Miller affidavit, p. 3. He used the sampling data from the CDC and the W.D. Scott Group. *See* Miller affidavit, p. 3. Authorities such as the ATSDR, the North American Contact Dermatitis Group, and the European Environmental and Contact Dermatitis Research Group were all cited in his affidavit. *See* Miller affidavit, pp. 4-5. Further, his discussion of eight published, peer-reviewed epidemiological studies demonstrate their support of his opinions. *See* Miller affidavit, pp. 4-5. Certainly, Dr. Miller's scientific basis for his opinions is sufficient for admissibility. *See* Joiner, 522 U.S. at 146.

## IV.
## CONCLUSION

Dr. Lawrence Miller is entirely qualified to render expert testimony in this case. He has performed a review of the scientific literature, Timia's medical history, and agency reports; and performed a thorough evaluation consistent with the scientific method. Defendant has raised no valid reason ro exclude his testimony. The motion to exclude should therefore be denied.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:  s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:   504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:   504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
ROBERT BECNEL, #14072
DENNIS REICH, Texas # 16739600

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

           s/Gerald E. Meunier
           GERALD E. MEUNIER, #9471