**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
|       FORMALDEHYDE PRODUCTS | * | |
|       LIABILITY LITIGATION | * | SECTION "N" (5) |
| THIS DOCUMENT IS RELATED TO | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| *Dubuclet v. Fleetwood Enterprises, Inc.* | * | |
| No. 07-9228 | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S OPPOSITION TO FLEETWOOD'S MOTION IN LIMINE TO EXCLUDE REFERENCES TO TRAVEL TRAILERS FAILING TO MEET HOUSING CODES**

**NOW INTO COURT,** through undersigned counsel, comes Elisha Dubuclet, individually and on behalf of her child, Timia Dubuclet (hereinafter the "Plaintiff"), to offer this Opposition to the Motion in Limine to Exclude References to Travel Trailers Failing to Meet Housing Codes (the "Motion in Limine") filed by Fleetwood Enterprises, Inc. ("Fleetwood"). This issue goes to the core thrust of this litigation -- that the intended use of the Fleetwood Travel Trailers changed from recreational vehicle to a residential dwelling to be used for long-term occupancy. As such, when Fleetwood agreed to provide temporary housing units intended for residential occupancy, Plaintiff asserts that they subjected themselves to residential and building codes above and aside from the travel trailer specifications provided by the Federal Emergency Management Agency ("FEMA"). Because of the central nature of this issue to this litigation, Plaintiff avers that it is both relevant and necessary, and that it cannot be overly prejudicial if it goes to a central theme of the Plaintiff's case.

The Motion in Limine brought by Fleetwood is premised upon Rule 403 of the Federal Rules of Evidence which states in pertinent part: "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." However, in *Lewis v. Herzog's Automotive Parts, Inc.*, 1998 WL 398038 (E.D. La.), the court cautioned against these exclusions and stated:

> The Fifth Circuit has cautioned, however, that the exclusion of evidence under Rule 403 should occur only sparingly: "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value which permits exclusion of relevant matter under Rule 403." Citing *U.S. v. Pace,* 10 F.3d 1106, 1115-1116 (5th Cir. 1993).

Fleetwood has argued that any reference to failure to meet housing codes is irrelevant and unduly prejudicial. Neither of these statements are true. At the heart of this litigation, from a simple review of the Complaint and subsequent Amendments, is the issue as to whether the manufacture of the Plaintiff's travel trailer was appropriate for its use as a temporary housing unit.[1] In fact, as has been well documented and articulated to this point, the Fleetwood 2006 Owner's Manual contains express language to the fact that it was not designed as permanent housing:

> *Your trailer is not designed to be used as permanent housing. Use of this product for long term or permanent occupancy may lead to a premature deterioration of structure, interior finishes, fabrics, carpeting and drapes. Damage or deterioration due to long term occupancy may not be considered normal, and may under the terms of the warranty constitute misuse, abuse or neglect, and may therefore reduce your warranty protection.*[2]

The very same page of the Owner's Manual distinguishes the recreational travel trailers from

---

[1] Please see the *Aldridge* Complaint, 07-9228, attached hereto as Exhibit "A", p. 20 wherein various manufacturing and construction failures are alleged against Fleetwood (and other defendants).
[2] See p. 05-4 of the Fleetwood Owner's Manual, attached as Exhibit "B" hereto, Bates Labeled FLE-00006543.

a residence and states "RVs are much smaller than a house" and goes on to discuss the anticipated issues relating to moisture accumulation and saturation.  These two points, (1) that it is not designed as a permanent residence, and (2) a delineated distinction between the travel trailer and a long term residence as it relates to condensation and moisture, clearly show that this travel trailer, by its intended design, is not to be used as a long term residence.

It is important that Fleetwood argues that it complied with FEMA's relevant travel trailer specifications which state, as cited to by Fleetwood:

> Travel Trailers being procured under this contract are for the purpose of providing temporary housing.  The units are subjected to continuous road travel, multiple installations and deactivations…3

This language clearly illustrates that the sole use of these units was to be for temporary housing.  Fleetwood knew this when it manufactured the Plaintiff's unit, and the thousands of units like the Plaintiff's, and made them available to FEMA per its request for temporary housing units.  As such, Fleetwood made an implied representation that these units were safe and suitable for the requested purpose of use as temporary housing.  Per the FEMA specs, these units were not to be used as recreational vehicles, rather, and solely, as temporary housing.4  As such, the anticipated use of the travel trailers manufactured by Fleetwood was very different from the designed for use as recreational vehicles.  **However, the knowledge that these units would be used solely as**

---

3 Citing to FLE-00010990-109902 and FLE 00007042-7048 quoted on p.2 of Fleetwood's Motion in Limine.
4 Fleetwood has argued in its Motion for Summary Judgment relating to a Government Contractor Defense (MDL Doc. 6626), that it has provided disaster response housing to FEMA since 1992, so it would be unreasonable to make any assumption that Fleetwood was not aware as to the duration of occupancy that disaster victims would be exposed to, in addition to Fleetwood's awareness of the circumstances in 2005. See p. 2 of Fleetwood's Motion for Summary Judgment of the Government Contractor Defense.

**temporary housing, in advance of their manufacture, means that their intended use at the time of manufacture was to provide residential housing**. This means that housing and building codes are applicable, if nothing else to show what considerations should have gone into the design and manufacture of these temporary housing units.

It is interesting to note that this argument is actually supported by the distinction Fleetwood tries to make in its Motion in Limine regarding the distinction between the travel trailer specs and the "Ruggedized Manufacturing Home Procurement Specifications"[5] which states in pertinent part:

> These units must meet and comply with all appropriate HUD requirements, regulations, standards, and guidance. This is not a waiver of HUD requirements, regulations, standards, and guidance.
>
> Manufactured homes being procured under this contract are for the purpose of providing temporary housing to disaster victims. Some of these units will be used on a repetitive basis and must be built for multiple uses. **These units will be subjected to continuous travel, multiple installations and deactivations…** (emphasis added).

Despite any argument to the contrary, the specification of the travel trailers and the ruggedized manufactured homes call for both to be used for the same purposes and must be suitable for the same use as temporary housing. They both must also be suitable for repetitive use, road travel and multiple installations and deactivations, all in the context of providing disaster response temporary housing. If Fleetwood was producing some units to comply with HUD standards, and others which did not, both to be used for the same purpose, it was at least on notice that there was a potential conflict in the multiple specifications, and that it was aware at least some of the units must comply with residential codes and regulations. At no point, in the history of this litigation, has

Fleetwood indicated that any of its employees, officers, managers or agents ever communicated to FEMA (or anybody else) that its travel trailers were not designed for residential occupancy, or that there could be potential problems associated with the use of travel trailers for residential occupancy. Fleetwood's failure to warn both FEMA and the Plaintiff is a second central theme to this litigation which intersects with this Opposition and necessitates the discussion as to why the manufacture of the Plaintiff's travel trailer was both unsuitable and unsafe for residential occupancy.

There is nothing unduly prejudicial in the Plaintiff's argument that Fleetwood knew that the travel trailers were being sold to FEMA for an anticipated use which clearly differed from their intended design. In order to develop this line of argument, however, Plaintiff should be allowed to discuss how the unit manufactured in response to the travel trailer specs deviated from residential codes, particularly since Fleetwood was concurrently manufacturing HUD compliant residential units at the time it manufactured the Plaintiff's unit. The failure of Fleetwood to comply with residential codes is central to the theme it built and sold units intended for a use other than what they were designed to do. As such it is both relevant and necessary for the Plaintiff to be able to discuss, and the burden of proof on a central theme cannot be construed as unduly prejudicial. As such, Plaintiff prays that this Court deny Fleetwood's Motion in Limine for the reasons discussed herein.

---

5 Attached as Exhibit "E" to Fleetwood's Motion in Limine, and the cited page is attached hereto as Exhibit "C".

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY: s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
ROBERT BECNEL, #14072
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL WATTS, Texas # 20981820

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record as indicated below in accordance with the Federal Rules of Civil Procedure on November 19, 2009.

                                         /s/Justin I. Woods  
                                         JUSTIN I. WOODS