UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 |
| | | | SECTION: N(5) |
| This Document Relates to: *Dubuclet v. Fleetwood Enterprises, Inc.* | | * * * | |
| | | | JUDGE: ENGELHARDT |
| Case No. 07-9228 | | * * * | |
| | | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT FLEETWOOD ENTERPRISES, INC.'S
REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT ON CAUSATION (Rec. Doc. 6659)**

No argument in Plaintiff's brief response (Rec. Doc. 7444) to Fleetwood's motion for summary judgment on causation (Rec. Doc. 6659) has raised any genuine issue of material fact.[1]

Plaintiff did not address Fleetwood's first argument that summary judgment should be granted because Plaintiff has no admissible expert testimony to support her claims. But, whether in the response brief to the summary judgment motion or the responses to the *Daubert* motions, Plaintiff has not shown that her causation experts, Dr. Patricia Williams for general causation and Dr. Lawrence Miller for specific causation, are qualified and have provided scientifically reliable evidence.[2] Therefore, all of Plaintiff's claims fail as a matter of law.

Plaintiff focuses her argument on attempting to cite to different studies or standards that discuss formaldehyde levels. But Plaintiff has not raised any issue of fact regarding the exposure

---

[1] In fact, Plaintiff has failed to comply with Local Rule 56.2. As a result, Fleetwood asserts that all material facts set forth in its statement of uncontested facts, filed at Rec. Doc. 6659-3 pursuant to Local Rule 56.1, are deemed admitted. *See* USDC La. LR 56.2 (2009). Courts have recently confirmed this result where the plaintiff in a toxic tort case, in opposing a chemical company's motion for summary judgment, did not include a statement of material facts to which plaintiffs claimed that there existed genuine issues of material facts to be tried. *See, e.g.*, *Atkins v. Ferro Corp.*, 534 F. Supp. 2d 662 (M.D. La. 2008), affirmed by 314 Fed. Appx. 662 (5th Cir. 2009).

[2] Fleetwood incorporates by reference its reply briefs in support of its motions to exclude the testimony of Dr. Williams and Dr. Miller.

level that Plaintiff was allegedly exposed to with her claimed injuries. Neither Dr. Williams nor Dr. Miller provided an exposure level *and* connected it to Plaintiff's alleged injuries, therefore, neither of them provides scientifically reliable evidence under Rule 702.

**1.     Dr. Williams has not "demonstrated" that skin reactions can occur at certain levels.**

Plaintiff overstates Dr. Williams's opinion; Dr. Williams has not "demonstrated" that skin reactions in sensitized individuals can occur;[3] rather, she has merely cited to OSHA regulations from 1990.[4] Dr. Williams further relies on the Matsunaga and Eberlein-König papers, which Fleetwood has previously shown cannot provide scientifically reliable evidence of causation. The Fifth Circuit has agreed that experts should not be permitted to testify when their opinion is based on studies that only suggest association:

> It is axiomatic that causation testimony is inadmissible if an expert relies upon studies or publications, the authors of which were themselves unwilling to conclude that causation had been proven.[5]

"[C]orrelation is not causation."[6] Therefore Plaintiff is unable to pass the admissibility threshold with proposed expert opinions that rely on studies that show only possible association and not causation. As recently as last week, the District Court for the Eastern District of Louisiana held that a report only "suggesting" a causal relationship could not serve as a basis for the plaintiffs' causation experts to opine on the issue of general causation.[7] The Court held that "[t]he 'suggestion' of a causal relationship in this report does not constitute reliable scientific evidence under *Daubert*, and 'surely' does not constitute 'statistically significant' evidence under *Allen*."[8] This case is consistent with previous Fifth Circuit case law. In *Vargas v. Lee*, the Court found that a study was "not sufficiently reliable to be admitted under

---

[3] Pl.'s Resp. at 3 (Rec. Doc. 7444).
[4] Williams Supp. Aff. (attached as Ex. B to Rec. Doc. 7444); *see also* Ex. M to Pl.'s Resp. to Mot. Exclude Williams (Rec. Doc. 7451) (Ex. M has the appendices included).
[5] *Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) (granting new trial because the general causation evidence suggests speculation and not a reasonable degree of medical certainty).
[6] *Id.*
[7] *LeBlanc v. Chevron USA Inc.*, No. 05-5485, 2009 U.S. Dist. LEXIS 106339, at *9 (E.D. La. Nov. 13, 2009).
[8] *Id.* (referring to *Allen v. Pa. Eng'g Group*, 102 F.3d 194 (5th Cir. 1996)).

2

Rule 702" when that study stated that "trauma may cause [fibromyalgia syndrome]" but that "present data in the literature are insufficient to indicate whether causal relationships exist between trauma and [fibromyalgia] and when that study called for further studies."[9]

The same language found in these cases is found in the sources that Plaintiff now relies on in Dr. Williams's attempt to show an exposure level that is connected to Plaintiff's injuries:

- **Matsunaga**: The authors state that "we *could not establish a cause and effect relationship for the associations under study. Further evaluations in prospective studies are needed* to draw a conclusion regarding whether [formaldehyde] exposure increases the likelihood of atopic eczema."[10] Moreover, the authors do not reach any conclusion on exacerbation of atopic eczema, noting that while exposure to formaldehyde "*may* exacerbate atopic eczema symptoms in adults," that the alternative is that "the observed association might be attributed to unrecognized environmental factors associated with [formaldehyde]."[11]

- **Takahashi**: The authors conclude that "formaldehyde induces skin irritation in students [*i.e.,* medical students in anatomy lab with average exposure at 2.4 ppm] with atopic background, which *may* in turn worsen atopic dermatitis."[12] The authors said may worsen -- not did worsen. The authors also found that there was no allergic mechanism for most of the symptoms complained of and were so confounded by their findings that they pointed out that the results could have been caused either by direct contact with the formalin in the embalmed bodies or by a reaction to the first patch test.

    > In the present study, the patch test results to 1% formaldehyde solution were negative in all 60 students at the beginning, and two (3.3%) of them became positive at the end of the anatomy course. These data confirm that most of the symptoms complained of by the students were due to primary irritation by

---

[9] *Vargas v. Lee*, 371 F.3d 498, 502 (5th Cir. 2003).
[10] Ichiro Matsunaga, et al., *Ambient Formaldehyde Levels and Allergic Disorders Among Japanese Pregnant Women: Baseline Data From the Osaka Maternal and Child Health Study*, 18 Ann. Epidemiol. 78, 84 (2008) at 83 (Ex. E to Rec. Doc. 6664).
[11] *Id.* at 82 (emphasis added) (Ex. E to Rec. Doc. 6664).
[12] Sachiko Takahashi, Prospective Study of Clinical Symptoms and Skin Test Reactions in Medical Students Exposed to Formaldehyde Gas, 34 J. Dermatology 283, 288 (2007) (emphasis added) (Ex. F to Rec. Doc. 6664).

3

formaldehyde, without an allergic mechanism.  In contrast, the present results suggest that de novo sensitization to formaldehyde occurs in a minority of students due to airborne *or direct contact* with formaldehyde during the anatomy course.  Alternatively, we should consider *another possibility* that the sensitization was *induced by 1% formaldehyde solution* used for the first patch test[13] (emphasis added).

- **Eberlein-König**: The authors noted that the "known irritant properties of formaldehyde *may* be the cause of this worsened epidermal barrier function."[14]  The authors did not say it was trhe cause -- only may be.  The study also found that formaldehyde exposure did not affect disease activity in the skin of the atopic subjects being studied because they measured eosinophil cationic protein (ECP) and soluble interleukin-2 receptor (sIL-2R) levels, which are markers that correlate with the disease activity in atopic eczema.[15]  The authors found that "ECP levels in the serum were not influenced by the different exposures. Observed changes of sIL-2R serum levels seemed to follow a circadian rhythm and were unrelated to pollutant exposure."[16]  Simply put, the formaldehyde did *not* incite the eczema.

Finally, Dr. Williams cites to public health standards, with no mention of any underlying studies, to support to her general causation opinion.  But the OSHA regulations that Dr. Williams cites in her supplemental affidavit only apply to "occupational exposures."[17]  The regulation quoted by Dr. Williams is part of Appendix C,[18] which is to be provided to a physician in the event of a medical examination required under the regulations.[19]

None of these sources is sufficiently scientifically reliable to support Williams's general causation opinion and should not be admitted under Rule 702.  Even if these were admitted into evidence,

---

[13] *Id.*(Ex. F to Rec. Doc. 6664).
[14] Bernadette Eberlein-König, et al., *Influence of airborne nitrogen dioxide or formaldehyde on parameters of skin function and cellular activation in patients with atopic eczema and control subjects*, J. Allergy Clin. Immunol. 141, 143 (Jan. 1998) (Ex. G to Rec. Doc. 6664).
[15] *Id.* at 141 (Ex. G to Rec. Doc. 6664).
[16] *Id.* at 142 (Ex. G to Rec. Doc. 6664).
[17] 29 C.F.R. §1910.1048(a) (1990) ("This standard applies to all occupational exposures to formaldehyde") (DUB-WILL-002466), attached as Ex. _.
[18] *See* Williams Supp. Aff. at 6, 18 (Ex. M to Pl.'s Resp. to Mot. Exclude Williams (Rec. Doc. 7451)).
[19] 29 C.F.R. § 1910.1048(l)(6)(i) (1990) (DUB-WILL-002468).

they do not provide the jury with a reasonable basis for finding causation. Critically, Plaintiff has not identified any study finding that formaldehyde exposure can cause Plaintiff's injuries here. "Courts must be arbiters of truth, not junk science and guesswork."[20] Plaintiff's attempts to introduce Dr. Williams's testimony and these studies that do not find causation should be rejected. This evidence is so tenuous that it could not support a judgment in favor of Plaintiff, and summary judgment should be granted.

**2.    Dr. Miller's testimony and affidavit have not raised any genuine issue of material fact regarding specific causation.**

Not only has Plaintiff failed to raise an issue of fact regarding general causation, but Miller's opinions on level of exposure and any connection to Plaintiff's alleged injuries are scientifically unreliable.[21] Dr. Miller's specific causation testimony fails for the same reasons that Dr. Williams's testimony fails. Plaintiff is clear that Dr. Miller "has the benefit" of Dr. Williams's "analysis" -- and whether he is relying on Dr. Williams or reaching the same faulty conclusions she did, his testimony could not support a jury finding causation. Although Plaintiff points to page 6 of Miller's Affidavit as providing concentration levels, no levels are provided on that page.[22] For the first time, Plaintiff suggests that formaldehyde levels can now be established by the symptoms she has allegedly experienced: Plaintiff states that Dr. Miller "could reasonably conclude that the formaldehyde concentration during those incidents [of eye irritation] was at least 400 ppb."[23] This logical fallacy should not be permitted to establish specific causation.

---

[20] *Huss*, 571 F.3d at 459.

[21] Plaintiff spends an inordinate amount of time on the fact that Dr. Miller had access to the formaldehyde ambient air test results. Pl.'s Resp. at 4-5 (Rec. Doc. 7444). This misses the point; Fleetwood does not contend that Dr. Miller has not seen the test results (although certainly he is not qualified to interpret them); Fleetwood states that Dr. Miller has not connected *any* exposure level to any of Plaintiff's alleged injuries, and that Plaintiff, therefore, has not raised any issue of fact regarding specific causation.

[22] Miller Aff. at 6 (Ex. G to Rec. Doc. 6659) (although it lists his "References," no specific mention is made to any formaldehyde exposure level).

[23] Pl.'s Resp. at 5 (Miller deposition citations do not support this statement; there is nothing in the cited testimony about eye irritation or formaldehyde levels).

For these reasons, Fleetwood requests that summary judgment be entered in its favor on all of Plaintiff's claims.  Plaintiff has failed to meet her burden on general and specific causation.  The required medical expert testimony is lacking.  First, her proposed experts are not qualified and do not offer scientifically reliable opinions, as briefed in the motions to exclude their testimony.  Second, no expert has connected the exposure level that Plaintiff was allegedly exposed to with her claimed injuries.  Certainly Plaintiff has cited studies, public health standards, and testing data, but no expert has analyzed this data to reach a conclusion that injury and exposure are causally related.  The jury cannot be asked to reach such a conclusion without the required expert testimony.  For these reasons, Fleetwood requests that this Court grant summary judgment in its favor.

This 19th day of November 2009.

Respectfully submitted:

 /s/ Richard K. Hines, V
Richard K. Hines, V
GA Bar No. 356300
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)

Jerry L. Saporito
LA Bar No. 11717
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-1701
(504) 585-7500 (phone)
(504) 585- 7775 (fax)

Counsel for Fleetwood Enterprises, Inc.

## **C E R T I F I C A T E OF SERVICE**

I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )   Hand Delivery                    ( )   Prepaid U.S. Mail

( )   Facsimile                        ( )   Federal Express

(X)   CM/ECF

New Orleans, Louisiana, this 19th day of November, 2009.

                                     */s/ Richard K. Hines, V*
                                     Richard K. Hines, V
                                     Georgia Bar No. 356300
                                     richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)