**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

IN RE: FEMA TRAILER                       MDL NO. 07-1873
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION                      SECTION "N" (5)
                                          JUDGE ENGELHARDT
                                          MAG. JUDGE CHASEZ

THIS DOCUMENT RELATES TO:
ALL CASES ("Mississippi Plaintiffs")

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT UNITED STATES OF AMERICA'S MEMORANDUM**
**IN SUPPORT OF ITS MOTION TO DISMISS THE REMAINING FTCA CLAIMS OF**
**ALL "MISSISSIPPI PLAINTIFFS" FOR LACK OF SUBJECT MATTER**
**JURISDICTION BASED UPON NO ANALOGOUS PRIVATE LIABILITY**

# TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.     The FTCA Waives The United States' Sovereign Immunity Only
          Where A Private Individual In Like Circumstances Would Be
          Liable To Plaintiffs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    II.    There Is No Analogous Private Liability In This Case Because A Private
          Person In Like Circumstances Would Be Shielded From Tort Liability Under
          State Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          A.    MEML Section 33-15-21(b) Shields Private Persons Who Provide
                  Free Shelter To Disaster Victims From Potential Tort Liability
                  Related To Use Of The Shelter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          B.    Because Mississippi law Immunizes Persons Who Provide Free,
                  Emergency Shelter from Negligence Claims, There Is No Analogous
                  Private Liability In This case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

               1.    FEMA Owned Or Controlled Real Estate Or Other Premises. . . . 13

               2.    FEMA Acted "Voluntarily And Without Compensation". . . . . . . 14

               3.    FEMA Granted A "License Or Privilege," Or Otherwise
                   Permitted "The Designation Or Use" Of The Premises. . . . . . . . 15

               4.    FEMA Acted "For The Purpose Of Sheltering Persons Or
                   Providing Assistance" To Them "During Or In Recovery
                   From" A "Natural Disaster.". . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

C.    Because There Is No Analogous Private Liability, The Mississippi Plaintiffs' Claims Fall Outside The FTCA's Limited Waiver Of Sovereign Immunity.......................................... 18

Conclusion. ................................................................ 19

# TABLE OF AUTHORITIES

## CASES

*American Tobacco Co. v. Patterson*,
456 U.S. 63 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Atorie Air, Inc. v. FAA*,
942 F.2d 954 (5th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Autrey v. Parson*,
864 So.2d 294 (Miss. App. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 *reh'g denied*, 423 U.S. 884 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bolivar County v. Wal-Mart Stores, Inc.*,
797 So.2d 790 (Miss. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Brown v. United States*,
653 F.2d 196 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bunting v. United States*,
884 F.2d 1143 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*,
419 F.3d 355 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*C.P. Chem. Co. v. United States*,
810 F.2d 34 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Camp. v. Stokes*,
No. 08-1076, 2009 WL 3260552. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
447 U.S. 102 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*DePriest v. Barber*,
   798 So.2d 456 (Miss. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dep't of Energy v. Ohio*,
   503 U.S. 607 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Dowl v. Tulane Univ. Hosp.*,
   2005 WL 2060921 (E.D. La. Aug. 22, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*FDIC v. Meyer*,
   510 U.S. 471 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Goldstar (Panama) v. United States*,
   967 F.2d 965 (4th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Guile v. United States*,
   422 F.3d 221 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Guillory v. United States*,
   699 F.2d 781 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Int'l Ass'n of Machinists & Aerospace Workers v. Texas Steel Co.*,
   538 F.2d 1116 (5th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Johnson v. Sawyer*,
   47 F.3d 716 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*LaBarge v. County of Mariposa*,
   798 F.2d 364 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Land v. Dollar*,
   330 U.S. 731 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lavespere v. Niagra Mach. & Tool Works, Inc.*,
   910 F.2d 167 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Leleux v. United States*,
        178 F.3d 750 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lindsey v. Mississippi State Port, et al.*,
        No. 06-656, 2006 U.S. Dist. LEXIS 77872 (S.D. Miss. Oct. 23, 2006). . . . . . . . . . . . . 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
        475 U.S. 574 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Menchaca v. Chrysler Credit Corp.*,
        613 F.2d 507 (5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mocklin v. Orleans Levee Dist.*,
        877 F.2d 427 (5th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mortensen v. First Fed. Sav. & Loan Assoc.*,
        549 F.2d 884 (3d Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

*Ortiz v. United States Border Patrol*,
        39 F. Supp. 2d 1321 (D.N.M. 1999), *aff'd*, 210 F.3d 390 (10th Cir. 2000). . . . . . . . . . . 7

*Owen v. United States*,
        935 F.2d 734 (5th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Parsons v. Mississippi State Port Auth.*,
        No. 07-2095, 2008 WL 4981268 (Miss. App. Nov. 25, 2008). . . . . . . . . . . . . . . . . . . 12

*Paul v. Igyarto*,
        2002 WL 1610962 (E.D. La. July 18, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Priah v. United States*,
        590 F. Supp. 2d 920 (N.D. Ohio 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ramming v. United States*,
        281 F.3d 158 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ridgley v. FEMA*,
        512 F.3d 727 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Richards v. United States*,
    369 U.S. 1 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*,
    384 F.3d 168 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Idaho*,
    508 U.S. 1 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Mitchell*,
    445 U.S. 535 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Mottaz*,
    476 U.S. 834 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Nordic Village, Inc.*,
    503 U.S. 30 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Olson*,
    546 U.S. 43 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Williams*,
    514 U.S. 527 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Vrazel v. Mississippi State Port, et al.*,
    No. 06-657, 2006 WL 3457175 (S.D. Miss. Nov. 27, 2006). . . . . . . . . . . . . . . . . . . . . . 11

*Winchell v. Dep'' of Agric.*,
    961 F.2d 1442 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Young v. Mississippi State Port*,
    No. 06-966, 2007 WL 141906 (S.D. Miss. Jan 12, 2007). . . . . . . . . . . . . . . . . . . . . . 11, 12

## FEDERAL STATUTES

Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 56.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. . . . . . . . . . . . . . *passim*

FTCA, 28 U.S.C. § 1346(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

FTCA, 28 U.S.C. § 2674. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

FTCA, 28 U.S.C. § 2680(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"),
    42 U.S.C. § 5174. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

## STATE STATUTES

Mississippi Emergency Management Law ("MEML"), Miss. Code § 33-15-2. . . . . . . . . . . . . 11

MEML, Miss. Code § 33-15-3.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

MEML, Miss. Code § 33-15-5.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

MEML, Miss. Code § 33-15-21(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

MEML, Miss Code § 33-15-21(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Miss Code § 33-15-219. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Miss Code § 89-8-7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Mississippi Tort Claims Act, Miss. Code §§ 11-46-1 to 23 ("MTCA"),
    Miss. Code §§ 11-46-1 to 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# INTRODUCTION

Defendant, the United States of America ("United States"), submits this memorandum in support of its Fed. R. Civ. P. 12(b)(1) and 12(h) motion to dismiss all remaining Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, claims brought by persons who resided in FEMA-provided emergency housing units ("EHUs") in the state of Mississippi following Hurricane Katrina ("Mississippi Plaintiffs").[1]  The FTCA's limited waiver of sovereign immunity – and thus, its limited grant of subject matter jurisdiction – is expressly limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. §§ 1346(b), 2674.  As demonstrated *infra* Section I, this means that any Governmental liability based upon the FTCA claims of the Mississippi Plaintiffs must be measured by Mississippi tort law.  *See Guillory v. United States*, 699 F.2d 781, 784 (5th Cir. 1983).  Based upon compelling public policy considerations, the State of Mississippi has abrogated the potential tort liability of all private persons who, voluntarily and without compensation, allow their property or premises to be used as shelter in response to an emergency such as a natural disaster.  Miss. Code § 33-15-21(b).  The intent of the Mississippi legislature is clear – people should be encouraged, rather than discouraged by potential liability, to provide shelter to homeless disaster victims.

Chapter 15 of the Mississippi Code (Emergency Management and Civil Defense), Article 1, as part of the Mississippi Emergency Management Law ("MEML"), provides in pertinent part:

---

[1]  The United States has brought a similar motion addressing the FTCA claims of all "Louisiana Plaintiffs."  *See* Motion to Dismiss for Lack of Jurisdiction the FTCA Negligence Claims of All "Louisiana Plaintiffs" Based Upon No Analogous Private Liability (Doc. Rec. 6970).  For purposes of this Motion, the United States hereby incorporates the arguments and law advanced in support of that Motion.

> Any person owning or controlling real estate or other premises who voluntarily and without compensation grants a license or privilege, or otherwise permits the designation or use [thereof] for the purpose of sheltering persons or providing assistance to persons during or in recovery from [a] . . . natural disaster . . . shall not be civilly liable for negligently causing the death of, or injury to, any person on or about such real estate or premises by virtue of its use for emergency management purposes, or loss of, or damage to, the property of such person.

Miss. Code § 33-15-21(b).  Through the lens of private analogous liability, Section 33-15-21(b) of MEML squarely applies to the facts of this case.  The undisputed facts show that the United States, through FEMA, (1) owned or controlled "real estate or other premises"; (2) acted "voluntarily and without compensation"; (3) granted "a license or privilege, or otherwise permit[ted] the designation or use" thereof; and (4) did so "for the purpose of sheltering" or "providing assistance to persons during or in recovery from" a natural disaster.

Whether the Mississippi Plaintiffs choose to cast their claims against the United States as an alleged failure to warn, a failure to mitigate, a failure to respond appropriately, or even a failure to remove and relocate, all such claims are based upon a single factual nexus – personal injuries resulting from the time that they spent in the FEMA-owned emergency housing units that they occupied.  The immunity of Section 33-15-21(b) does not discriminate between such claims but, rather, bars all negligence claims that stem from the "use" of rent-free emergency shelters that have been provided voluntarily.  Thus, the FTCA claims of the Mississippi Plaintiffs hinge on acts and/or omissions that are harbored from private liability under Mississippi law.  If similar acts and/or omissions had been performed by a private person under similar circumstances, that person would be immune from tort liability under Mississippi law.  It follows that Mississippi Plaintiffs' FTCA claims against the United States fall outside this Court's limited jurisdiction. *See* 28 U.S.C. §§ 1346(b), 2674.

**BACKGROUND**

The Mississippi Plaintiffs are claimants who resided in EHUs provided to them by FEMA in the State of Mississippi after Hurricane Katrina.  *See*, *e.g.*, Third Supp. and Am. Admin. Master Compl. ("Third AMC") ¶ 9 (Doc. Rec. 4486); Order and Reasons at 1 (Doc. Rec. 2322). They assert that the FTCA provides this Court with subject matter jurisdiction over their claims against the United States.  Third AMC ¶ 116, *citing* 28 U.S.C. §§ 1346, 2671, *et seq*.

Plaintiffs claim personal injuries resulting from alleged exposure to excessive levels of formaldehyde in the EHUs that FEMA provided to them.  *See* Doc. Rec. 2322 at 1, *citing* Administrative Master Complaint (Doc. Rec. 109 ¶ 30); Transfer Order (Doc. Rec. 1). Specifically, they allege that the United States was negligent in: (1) "failing to warn . . . of the unreasonably dangerous nature of the housing units"; (2) "failing to remedy the dangerous nature of the housing units"; (3) "failing to timely implement adequate safety measures and procedures to address/remove the defects in the housing units"; (4) failing to properly respond to complaints and/or concerns regarding formaldehyde in EHUs; and (5) failing to properly communicate with EHU residents regarding formaldehyde-related health information.  Third AMC ¶ 209.  The Mississippi Plaintiffs assert that as a result of these negligent acts and omissions they have been "exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing units."  *Id.* ¶ 135.  They further allege that they have suffered, and "will continue to suffer harm and injuries," and thus, they are entitled to "recover damages from the Federal Government."  *Id.* ¶ 207.

Through its October 3, 2008 Order and Reasons, the Court has dismissed many of the Mississippi Plaintiffs' tort claims against the United States based upon the discretionary function

exception to the FTCA's limited waiver of sovereign immunity, 28 U.S.C. § 2680(a).  *See* Order

and Reasons (Doc. Rec. 717); *see also* Order and Reasons at 2 (Doc. Rec. 2621).  Through this

Motion, the United States seeks dismissal of the Mississippi Plaintiffs' remaining FTCA claims.

## STANDARD OF REVIEW

Jurisdiction is a preliminary issue, and the separation of powers doctrine requires a

federal court to determine whether it has jurisdiction as soon as possible, rather than deferring the

issue until trial.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The

requirement that jurisdiction be established as a threshold matter . . . is inflexible and without

exception" and lower courts are instructed to resolve jurisdictional issues before reaching the

merits of a case) (internal citation omitted).  Because federal courts are inherently courts of

limited jurisdiction, the law presumes that causes of action "lie[ ] outside" their jurisdiction.

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Further, the burden to show that

jurisdiction is proper lies with the party averring jurisdiction.  *Id.  See also Ramming v. United

States*, 281 F.3d 158, 161 (5th Cir. 2001); *Dowl v. Tulane Univ. Hosp.*, 2005 WL 2060921, at *2-

3 (E.D. La. Aug. 22, 2005) (Engelhardt, J.) (plaintiff must demonstrate subject matter jurisdiction

over FTCA claim); Order and Reasons at 3 (Doc. Rec. 2789) (same).  Finally, in deciding a Rule

12(b)(1) motion, courts are not limited to the allegations of the Complaint, but may consider

materials outside of the pleadings.  *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) (on a

jurisdictional challenge, a court "may inquire by affidavits or otherwise, into the facts as they

exist"); *Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir. 1977) (same);

*Dowl*, 2005 WL at *2-3; *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)

(on a factual challenge to the court's subject matter jurisdiction, the court may look outside the

4

pleadings without converting the motion into one for summary judgment).[2]  Thus, in this case, the Mississippi Plaintiffs bear the burden of establishing that the Court has subject matter jurisdiction over their FTCA claims, and the Court must decide that issue before reaching the merits of their claims.

## ARGUMENT

**I.      The FTCA Waives The United States' Sovereign Immunity Only Where A Private Individual In Like Circumstances Would Be Liable To Plaintiffs.**

"Absent a waiver, sovereign immunity shields the Federal Government . . . from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Guile v. United States*, 422 F.3d 221, 229 (5th Cir. 2005); *Owen v. United States*, 935 F.2d 734, 736 (5th Cir. 1991).  The United States' consent to suit cannot be implied, but must be "unequivocally expressed" and strictly construed.  *See United States v. Idaho*, 508 U.S. 1, 7 (1993); *Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34-35 (1992); *United States v. Mottaz*, 476 U.S. 834, 841 (1986); *United States v. Williams*, 514 U.S. 527, 531 (1995) (Court must construe any

---

[2]  In some circumstances, courts have converted Rule 12(b)(1) and 12(h) motions into Rule 56 motions for summary judgment when resolution of the jurisdictional question was intertwined with the merits of the case, and materials outside the pleadings have been submitted.  *See, e.g.,* Order and Reasons at 9 (Doc. Rec. 717); *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004).  Here, however, the jurisdictional question – whether Section 33-15-21(b) of MEML would bar the potential tort liability of a private person under similar circumstances – bears no relation to a substantive determination of whether the United States was negligent.  Nevertheless, even if the Court were to apply the summary judgment standard, the United States is entitled to summary judgment because there is no genuine issue of material fact regarding whether Section 33-15-21(b) applies to the Mississippi Plaintiffs' claims.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Int'l Ass'n of Machinists & Aerospace Workers v. Texas Steel Co.*, 538 F.2d 1116 (5th Cir. 1976); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986) (materiality of facts is determined by the substantive law's identification of which facts are critical).  This argument is supported by Plaintiffs' own factual assertions.  *See infra* § II.  Further, on a motion for summary judgment, if the dispositive issue is one on which the nonmoving party bears the burden of proof – such as jurisdiction – the moving party need only show an absence of sufficient proof in the record.  *See Celotex*, 477 U.S. at 324-25; *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  Then, the nonmoving party must come forward and designate specific facts showing that a genuine issue remains for trial.  *Celotex*, 477 U.S. at 324-25; *Matsushita*, 475 U.S. at 586-87.  Accordingly, the United States would be entitled to summary judgment on this issue in the event the Court finds Rule 56 adjudication appropriate.

"ambiguities in favor of immunity."). It is the existence of this consent that defines the scope of a court's jurisdiction over a given suit. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980), *citing United States v. Sherwood*, 312 U.S. 584, 586 (1941).

Through the FTCA, Congress has chosen to waive the United States' sovereign immunity for certain torts committed by federal employees while acting within the scope of their employment. 28 U.S.C. §§ 1346(b)(1), 2671. As a result, the waiver contained in the FTCA, which is limited, defines a court's jurisdiction over tort suits against the United States, and therefore must be construed strictly in favor of the United States. *Atorie Air*, *Inc. v. FAA*, 942 F.2d 954, 958 (5th Cir. 1991); *Paul v. Igyarto*, 2002 WL 1610962 at *1 (E.D. La. July 18, 2002) (Engelhardt, J.).

The FTCA's limited waiver of sovereign immunity provides jurisdiction over the United States only where a private person in like circumstances would be subject to tort liability. *See United States v. Olson*, 546 U.S. 43, 44 (2005). The FTCA provides, in pertinent part, that district courts may exercise jurisdiction over

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission . . . *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.*

28 U.S.C. § 1346(b)(1) (emphasis added). Similarly, the FTCA provides:

> The United States shall be liable . . . *in the same manner and to the same extent as a private individual under like circumstances . . . .*

28 U.S.C. § 2674 (emphasis added). Thus, if an analogous private person could not be liable to a plaintiff under the applicable "law of the place," then the United States has not waived its

sovereign immunity and the court lacks jurisdiction to adjudicate the particular FTCA claim.  *See*

*Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir. 1995).

The "law of the place where the act or omission occurred," referenced in 28 U.S.C.

§ 1346(b)(1), "refers exclusively to state law."  *Brown v. United States*, 653 F.2d 196, 201 (5th

Cir. 1981); *Leleux v. United States*, 178 F.3d 750, 759 (5th Cir. 1999) ("[T]he relevant question

under the FTCA is whether a state-law duty exists, not whether a court can create or 'recognize'

one.").  This necessarily includes any defenses, exceptions to liability, and limitations on

recovery, contained in state law.  *See Owen v. United States*, 935 F.2d at 737-38; *Bunting v.

United States*, 884 F.2d 1143, 1145, 1147-48 (9th Cir. 1989) (holding applicable an Alaska law

barring liability for ordinary negligence in an FTCA case); *Ortiz v. United States Border Patrol*,

39 F. Supp. 2d 1321, 1322-23 (D.N.M. 1999) (same – applying New Mexico law), *aff'd*, 210

F.3d 390 (10th Cir. 2000); *Priah v. United States*, 590 F. Supp. 2d 920, 930 (N.D. Ohio 2008)

(same – applying Ohio law).  Thus, "the liability of the United States under the [FTCA] arises

only when the law of the state would impose it," and the FTCA cannot be read to create or

enlarge a substantive cause of action that does not already exist under state law.  *Johnson*, 47

F.3d 716 at 727, *quoting Brown*, 653 F.2d at 201; *see also Richards v. United States*, 369 U.S. 1,

13-14 (1962); *Goldstar (Panama) v. United States*, 967 F.2d 965, 969-70 (4th Cir. 1992);

*Winchell v. Dep't of Agric.*, 961 F.2d 1442, 1443 (9th Cir. 1992).

In *United States v. Olson*, the Supreme Court interpreted the words of the FTCA "to

mean what they say, namely, that the United States waives sovereign immunity 'under

circumstances' where local law would make a '*private person*' liable in tort."  546 U.S. at 44,

*quoting* 28 U.S.C. § 1346(b) (emphasis in original).  The Court also found that even though there

may exist state or municipal liability for allegedly negligent conduct, if there is no analogous *private* liability, then the United States has not waived its sovereign immunity.  *See* 546 U.S. at 45-46.  Thus, the Court held, the FTCA "requires a court to look to the state-law liability of private entities, not that of public entities, when assessing the Government's liability under the FTCA."  *Id.* at 46 (*citing Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)).

Finally, because "the federal government could never be exactly like a private actor," a court must "find the most reasonable analogy" to assess private liability in a given case.  *See LaBarge v. County of Mariposa*, 798 F.2d 364, 367 (9th Cir. 1986); *C.P. Chem. Co. v. United States*, 810 F.2d 34, 37-38 (2d Cir. 1987); *see also Olson*, 546 U.S. at 44.  Thus, as long as the Government's conduct is functionally equivalent (even if not identical) to conduct that would be shielded from private liability by a state statute, the Government is afforded the same protection. Considering the most reasonable private analogue in this case, the Government conduct at issue goes one step further – it squarely satisfies the statutory prerequisites of MEML Section 33-15-21(b).  As shown below, there simply is no analogous private liability under the facts of this case, and therefore, there is no jurisdiction under the FTCA for the Mississippi Plaintiffs' claims.

**II.     There Is No Analogous Private Liability In This Case Because A Private Person In Like Circumstances Would Be Shielded From Tort Liability Under State Law.**

     **A.     MEML Section 33-15-21(b) Shields Private Persons Who Provide Free Shelter To Disaster Victims From Potential Tort Liability Related To Use Of The Shelter.**

In this case, the relevant Section of MEML, Mississippi Code Section 33-15-21(b), provides:

> Any person owning or controlling real estate or other premises who voluntarily and without compensation grants a license or privilege, or otherwise permits the

8

designation or use [thereof] for the purpose of sheltering persons or providing assistance to persons during or in recovery from an actual, impending, mock or practice attack or any man-made, technological or natural disaster, together with his successors in interest, if any, shall not be civilly liable for negligently causing the death of, or injury to, any person on or about such real estate or premises by virtue of its use for emergency management purposes, or loss of, or damage to, the property of such person.

Mississippi Code Section 33-15-21(b) is clear on its face. The statute insulates from liability any private person who voluntarily provides free shelter to those in need during or in recovery from a natural disaster, for injuries arising from the use of that shelter. The statute contains no qualifying, limiting, or ambiguous language, and therefore requires no interpretation.[3]  Nevertheless, as shown below, the plain meaning is consistent with the Mississippi Legislature's intent in enacting this provision as evidenced in the statute's historical background, subject matter, and relevant purposes and objects to be accomplished.

The statutory language now contained in Section 33-15-21(b) of MEML has been in place since 1942. At that time, the relevant language appeared in Title 31 of the Mississippi Code (Militia), Division 6 (Civil Defense), at Section 8610-11 (Immunity). That law provided:

Any person owning or controlling real estate or other premises who voluntarily and without compensation grants a license or privilege, or otherwise permits the designation or use of the whole or any part or parts of such real estate or premises for the purpose of sheltering persons during an actual, impending, mock or practice attack, together with his successors in interest, if any, shall not be civilly

---

[3] "When a statute is plain on its face, there is no room for statutory construction." *Camp. v. Stokes*, No. 08-1076, 2009 WL 3260552, *3 (Miss. App. 2009), *citing Harrison v. State,* 800 So.2d 1134, 1137 (Miss. 2001).  *See also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, *reh'g denied*, 423 U.S. 884 (1975); *Richards v. United States*, 369 U.S. 1, 9 (1962); *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 362 (5th Cir. 2005). The rules of statutory construction are meant to ascertain a legislature's intent in passing a given law, which is not necessary or appropriate when the text of the law clearly expresses such intent.  *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *Mocklin v. Orleans Levee Dist.*, 877 F.2d 427, 428-29 (5th Cir. 1989); *Autrey v. Parson*, 864 So.2d 294, 295 (Miss. App. 2003); *DePriest v. Barber*, 798 So.2d 456, 457-58 (Miss. 2001); *Camp*, 2009 WL at *3. Accordingly, only where a statute's text is unclear, may "the court, in determining the legislative intent," look to a statute's "historical background, its subject matter, and the purposes and objects to be accomplished." *DePriest*, 798 So.2d at 457-58; *Autrey*, 864 So.2d at 295; *Camp*, 2009 WL 3260552, at *3.

> liable for negligently causing the death of, or injury to, any person on or about
> such real estate or premises by virtue of its use for civil defense purposes, or loss
> of, or damage to, the property of such person.

Exh. 1 (31 Miss. Code § 8610-13(b) (1942)).  In 1972, the Mississippi Code was reclassified, and

the provision, which remained unchanged, was moved to Title 33 of the Code (Military Affairs).

*See* Exh. 2 (Miss. Code § 33-15-21(b) (1972)).  By 1989, the provision was changed to its current

form to include "natural disaster[s]" in the class of emergencies to which the immunity applies,

and extended the duration of the immunity to the disaster's recovery period as well as the disaster

itself.  *See* Exh. 3 (Miss. Code § 33-15-21(b) (1989)).  In 1995, the Section was retained in that

same form as part of MEML, which was expanded to, among other things, "express legislative

intent with regard to the State's emergency management law."  Exh. 4 (1995 Miss. Laws 333).

At that time, the Legislature explained that MEML was meant to "reduce the vulnerability of the

people and property of [Mississippi]; to prepare for efficient evacuation *and shelter* of threatened

or affected persons; [and to] to provide for the rapid and orderly provision of relief to persons

and for the coordination of activities relating to" emergency planning and response actions.  Exh.

4 (Miss. Code § 33-15-2(2) (1995); § 33-15-3 (1995)) (emphasis added).  Accordingly, the

Mississippi Legislature has consistently chosen to insulate from liability private persons who

provide free shelter "during or in recovery from," natural disasters.  This reading of the statute is

consistent with the Legislature's intent to "reduce the vulnerability of the people and property" of

Mississippi by encouraging persons to provide shelter, and "to prepare for efficient . . . shelter"

of persons affected by a natural disaster.  Miss. Code §§ 33-15-2(2); 33-15-3(a).

　　　As noted *supra* at 7-8, the Government conduct in this case must be analyzed by

reference to private, rather than state or municipal liability.  *See Olson*, 546 U.S. at 45-46.  And,

notably, "there are no Mississippi Supreme Court decisions which interpret the effect or scope" of the immunity provisions of MEML, including Section 33-15-21(b). *See Vrazel v. Mississippi State Port, et al.*, No. 06-657, 2006 WL 3457175 (S.D. Miss. Nov. 27, 2006) (Guirola, J.) (granting interlocutory appeal on the question of whether the state was immune for hurricane response activities). Still, case law that is available, which interprets other sections of MEML, such as those pertaining to state liability, is consistent with a straightforward reading of Section 33-15-21(b). For example, in *Young v. Mississippi State Port*, the court interpreted MEML Sections 33-15-21(a) and 33-15-5(c) to shield state agencies from liability for property damage resulting from their allegedly negligent preparation for and response to Hurricane Katrina.[4] No. 06-966, 2007 WL 141906 (S.D. Miss. Jan 12, 2007) (Guirola, J.). The court noted that the state's "hurricane procedure, which Plaintiff descries as ill conceived, and the pre-storm and post-storm actions that the Plaintiff alleges was [sic] negligently executed, is precisely the 'emergency management' conduct the legislature intended to insulate from civil liability" through Mississippi Code Section 33-15-21. *Young*, 2007 WL 141906 at *2. *See also Lindsey v. Mississippi State Port, et al.*, No. 06-656, 2006 U.S. Dist. Lexis 77872 (S.D. Miss. Oct. 23, 2006) (Guirola, J.) (same).

---

[4] MEML Section 33-15-21(a) provides:

> Neither the state nor any political subdivision thereof, nor other agencies, nor, except in cases of willful misconduct, the agents, employees, or representatives of any of them engaged in any emergency management activities, while complying with or attempting to comply with this article or any rule or regulation promulgated pursuant [thereto], shall be liable for the death of or any injury to persons, or damage to property, as a result of such activity.

MEML Section 33-15-5(c) provides:

> "Emergency management" means the preparation for, the mitigation of, the response to, and the recovery from emergencies and disasters.

Further, Mississippi case law shows that provisions of MEML, in general, trump other provisions of state law during an emergency, in the event of any conflict.  For example, in *Bolivar County v. Wal-Mart Stores*, *Inc.*, the Mississippi Supreme Court held that MEML Section 33-15-17, which authorized counties and municipalities to make necessary purchases during an emergency, took precedence over the normal state contracting rules contained in other sections of the Mississippi Code.  797 So.2d 790 (Miss. 1999).  To that end, the court stated that MEML "recognizes that in emergency situations the statutorily mandated procedures need not be complied with because of the urgency of the situation."  *Id.* at 795.  *Cf. Parsons v. Mississippi State Port Auth.*, No. 07-2095, 2008 WL 4981268 (Miss. App. Nov. 25, 2008) (immunity waiver contained in Mississippi Tort Claims Act, Miss. Code §§ 11-46-1 to 23 ("MTCA"), did not confer jurisdiction over suit against state agencies based on hurricane response actions because such agencies were immune from suit under MEML Section 33-15-21(a), even though the MTCA was the later-enacted statute).  Accordingly, a survey of available caselaw supports the interpretation of Section 33-15-21(b) described above.

**B.** **Because Mississippi Law Immunizes Persons Who Provide Free, Emergency Shelter From Negligence Claims, There Is No Analogous Private Liability In This Case.**

As shown below, it is clear that the Mississippi Plaintiffs' claims against the United States in this case depend on alleged actions and omissions which, if done by an analogous private person, could not result in liability under Mississippi Law.  Miss. Code § 33-15-21(b).  Therefore, the facts of this case cannot represent "circumstances where . . . a private person" would be liable to the Mississippi Plaintiffs "in accordance with the law of the place where the act or omission occurred" under the FTCA.  *See* 28 U.S.C. §§ 1346(b)(1), 2674; *United States v.*

12

*Olson*, 546 U.S. 43, 44 (2005).  Accordingly, the United States has not waived its sovereign

immunity from suit in tort for the Mississippi Plaintiffs' FTCA claims.

### 1.	FEMA Owned Or Controlled Real Estate Or Other Premises.

Mississippi Code Section 33-15-21(b) requires that, to be shielded from liability, a person

must own or control the premises at issue.  In this case, it is clear that FEMA owned the relevant

EHUs, which easily qualify as "other premises" under the statute.  By their own allegations,

Plaintiffs declare that FEMA owned the EHUs at issue and provided them to Plaintiffs.  Third

AMC ¶¶ 129, 131-133, 203.  Further, the occupancy agreements entered into between FEMA and

the Mississippi Plaintiffs specifically refer to the EHUs as "premises" and "temporary shelter"

required by an emergency.  *See* Exh. 5 (FEMA Temporary Housing Occupant Dwelling Lease);

Exh. 6 (Emergency Shelter – Agreement to Rules of Occupancy) (EHU recipients "acknowledge

and understand that FEMA is providing [the] unit as a temporary shelter . . . and [the recipient is]

not able to live in [his or her] residence due to this event.").  Moreover, state law provides that

EHUs such as travel trailers are among the types of shelter to be used by the state to house

disaster victims, and that a "premises" means a "dwelling unit."  *See* Miss. Code § 33-15-219

("Description of temporary housing" under Mississippi's Individual Assistance and Emergency

Temporary Housing Assistance Act); § 89-8-7 (definition of "premises" from the definitions

Section of Mississippi's Residential Landlord and Tenant Act).  It follows that the EHUs at issue

in this case squarely qualify as the type of "premises" contemplated by the Mississippi

Legislature in its enactment of Section 33-15-21(b).

### 2.   FEMA Acted "Voluntarily And Without Compensation."

In order to be shielded by Section 33-15-21(b), a person must have provided the shelter at issue "voluntarily and without compensation."  As shown below, FEMA's actions at issue in this case easily satisfy both of these criteria.  *First*, it is undisputed that FEMA did not charge the disaster victims, including the Mississippi Plaintiffs, any rent, but rather provided them with rent-free temporary emergency housing following Hurricane Katrina.  *See* Exh. 7 (FEMA Press Release No. FNF-09-009); Exh. 8 (Dec. Garratt ¶ 3); *see also* Stafford Act, 42 U.S.C. § 5174 (President, through FEMA, may provide direct housing assistance to individuals and households "who are unable to meet such expenses or needs through other means.").  *Cf.* Exh. 5 ¶ 4 (noting unique circumstances where "rent" may be charged – in the event an assistance recipient has insurance to pay for temporary housing, or in the event of a holdover in the EHU).  In response to the unprecedented housing crisis caused by Hurricane Katrina, FEMA extended this free form of assistance to disaster victims for over 44 months following Hurricane Katrina.  *See* Exh. 7.

*Second*, it is readily apparent that FEMA provided the emergency shelter at issue in this case to the Mississippi Plaintiffs of its own volition.  *See* Third AMC ¶¶ 9, 124.  In providing the free shelter to the Hurricane victims, FEMA was not acting pursuant to any requirement that it do so, such as a contract or other external force.  In fact, the voluntary nature of the federal assistance at issue in this case is specifically pleaded by the Mississippi Plaintiffs.  *See* Third AMC ¶ 142 ("Under the Stafford Act, at 42 U.S.C.A. § 5174, the Executive, through FEMA, *may* provide 'direct assistance' in the form of temporary housing units, acquired by purchase or lease, directly to individuals or households who, because of a lack of available housing resources, would be unable to make use of the alternative 'financial assistance' provided under

14

subparagraph (c)(1)(A).") (emphasis added).  Although federal statutes and regulations do not govern the analogous private liability inquiry, an examination of the Stafford Act, 42 U.S.C. § 5174, and its implementing regulations, confirms that FEMA's actions were voluntary in nature.  *See* Stafford Act, 42 U.S.C. § 5174 (President, through FEMA, "*may*" provide direct housing assistance to qualifying persons in need following a disaster) (emphasis added).  This proposition was recently confirmed by the Fifth Circuit in *Ridgley v. FEMA*, in the context of rental assistance.  512 F.3d 727, 736 (5th Cir. 2008) ("The regulations state only that 'FEMA *may* provide assistance to [qualifying] individuals and households'" (emphasis in original)).  In other words, a disaster victim does not have a right to receive assistance from FEMA, even if such assistance if being offered and he or she meets certain eligibility criteria.  *See id.* ("There is simply no indication that the regulations constrain FEMA's discretion . . . .  [N]o 'specific directives' limit FEMA's discretion by compelling it to provide assistance . . . ."); *see also* Order and Reasons at 48-49 (Doc. Rec. 1014) (*citing Ridgley*).  Accordingly, FEMA retained discretion at all times to provide (or not to provide) housing assistance to the Mississippi Plaintiffs following Hurricane Katrina.

### 3.    FEMA Granted A "License Or Privilege," Or Otherwise Permitted "The Designation Or Use" Of The Premises.

To be shielded from liability under Section 33-15-21, the owner or controller of the premises at issue must have granted a license, privilege, or other permission for a disaster victim to have used such premises.  In this case, FEMA's actions easily satisfy this requirement.  It is clear that FEMA permitted the Mississippi Plaintiffs to use the premises when it provided them with the EHUs at issue.  *See supra* § II(B)(2); Exh. 5 (granting permission for an EHU recipient

to reside in a particular EHU).  Further, the Mississippi Plaintiffs assert that it was their very

"use" of the EHUs that were "provided" to them by FEMA that gave rise to their alleged injuries.

*See* Third AMC ¶¶ 124, 135 (Mississippi Plaintiffs "resid[ed] or liv[ed]" in EHUs provided to

them by FEMA after Hurricane Katrina and the "significant time" they spent therein exposed

them to high formaldehyde concentrations); Exh. 6 (obligating an EHU recipient to "occupy the

unit continuously").

> ### 4.   FEMA Acted "For The Purpose Of Sheltering Persons Or Providing Assistance" To Them "During Or In Recovery From" A "Natural Disaster."

To be protected by the immunity of Section 33-15-21(b), a person must have acted "for

the purpose of sheltering persons or providing assistance" to them "during or in recovery from" a

"natural disaster."  The undisputed facts of this case plainly show that FEMA's alleged actions

and omissions meet this criteria.  The Mississippi Plaintiffs, by their own allegations, declare that

they were rendered "homeless and in need of housing assistance" after Hurricane Katrina,

prompting their use of FEMA-provided EHUs.  *See* Third AMC ¶ 128.  They further allege they

had "nowhere else to go" in the "aftermath of the greatest natural disaster in the History of the

United States."  *See* Third AMC ¶ 171.  They state that FEMA provided them with the EHUs at

issue as shelter "during the period of [their] displacement" following Hurricane Katrina.  *See*

Third AMC ¶ 355 (Compensatory Damages for Mississippi State-Based Claims).  Further,

FEMA requires that, in order to qualify for temporary emergency housing, an individual or

family must be unable to live in their primary residence because of disaster-related damage, and

must agree to "accept other housing options, when they become available."  Exh. 6; *see also* Exh.

5.  Thus, any person or family that accepted an EHU must have done so during or in recovery

from, in this case, Hurricane Katrina.

MEML defines "disaster" as an emergency "that causes damage of sufficient severity and magnitude to result in a declaration of an emergency by a county or municipality, the Governor or the President of the United States."  Miss. Code § 33-15-5(m).  On August 27, 2005, the Governor of Mississippi requested that the President declare a state of emergency in Mississippi as a result of Hurricane Katrina, noting that he had issued a State of Emergency for the entire state and had determined that the damage caused by Hurricane Katrina was "of such severity and magnitude that effective response [was] beyond the capabilities of the State and affected local governments, and that supplementary Federal assistance [was] necessary" for the health and safety of residents of Mississippi.  Exh. 9 (Letter from Haley Barbour to President Bush, dated August 27, 2005).  On August 29, 2005, the President, through FEMA, declared Hurricane Katrina a major disaster in Mississippi, authorizing FEMA to provide federal assistance to the state and its individuals under the Stafford Act and its implementing regulations.  *See* Exh. 10 (Federal Register Notice dated August 29, 2005).

Finally, it is clear that the emergency conditions of Hurricane Katrina, and its resulting housing shortage, continued to exist long after the Hurricane made landfall.  For example, in the winter of 2007, the Governor of Mississippi requested that FEMA extend its temporary housing assistance program for an additional year, to the winter of 2008.  *See* Exh. 11 (Mississippi Governor's Office of Recovery and Renewal, Press Release, dated January 19, 2007) (noting that "thousands of our citizens will be without permanent housing" after FEMA's six-month extension of the temporary housing program and that an additional year was necessary).  In fact, as of the spring of 2008, over 2,000 households remained in FEMA-provided EHUs in

17

Mississippi, and FEMA's temporary emergency housing program did not end in Mississippi until the spring of 2009.  *See* Exh. 7; Exh. 13 (FEMA Press Release No. 1604-724).  *See also* Exh. 12 (Federal Register Notices dated October 27, 2005 and May 25, 2007) (amending FEMA's initial disaster declaration for Hurricane Katrina in Mississippi and extending the duration and amount of federal assistance FEMA was to provide to Mississippi and its citizens for disaster response activities).  To date, FEMA still considers Hurricane Katrina to be an "active" major disaster in Mississippi.  Exh. 14 (FEMA.gov "Disaster Search Results").  Accordingly, it is clear that the EHUs at issue in this Motion were provided to the Mississippi Plaintiffs by FEMA "during or in recovery from" Hurricane Katrina, "the greatest natural disaster in the History of the United States."  *See* Third AMC ¶ 171.

### C. Because There Is No Analogous Private Liability, The Mississippi Plaintiffs' Claims Fall Outside The FTCA's Limited Waiver Of Sovereign Immunity.

As demonstrated above, FEMA's conduct, as seen through analogous private liability, satisfies the four requirements set forth in MEML Section 33-15-21(b).  The Mississippi Plaintiffs' FTCA claims center on alleged injuries that occurred as a result of their "use" of the EHUs, which FEMA voluntarily provided to them after they were rendered homeless by Hurricane Katrina.  Regardless of whether they focus their claims on the initial provision of their EHUs or an allegedly negligent response to safety concerns/complaints regarding the units, Section 33-15-21(b) mandates that liability cannot be maintained against a private individual under the circumstances described above.  Accordingly, Mississippi Plaintiffs' FTCA claims against the United States fall outside the FTCA's limited waiver of sovereign immunity.  28 U.S.C. §§ 1346(b), 2674.

## CONCLUSION

For the foregoing reasons, the Mississippi Plaintiffs' FTCA claims against the United States should be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12 and 28 U.S.C. §§ 1346(b) and 2674.

Dated:  November 20, 2009                    Respectfully Submitted,

TONY WEST                                    HENRY MILLER
Assistant Attorney General, Civil Division   ADAM BAIN
                                             Senior Trial Counsel


J. PATRICK GLYNN                             ADAM DINNELL
Director, Torts Branch, Civil Division       MICHELE GREIF
                                             JONATHAN WALDRON
DAVID S. FISHBACK                            Trial Attorneys
Assistant Director
                                             *//S// Michelle Boyle*
                                             MICHELLE BOYLE (Va. Bar No. 73710)
OF COUNSEL:                                  Trial Attorney
JORDAN FRIED                                 United States Department of Justice
Associate Chief Counsel                      Civil Division – Torts Branch
                                             P.O. Box 340, Ben Franklin Station
JANICE WILLIAMS-JONES                        Washington, D.C. 20004
Senior Trial Attorney                        Telephone No:  (202) 616-4447
FEMA/DHS                                     E-mail: Michelle.Boyle@USDOJ.Gov
Department of Homeland Security
Washington, D.C. 20472                       Attorneys for the United States of America


## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2009, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

*//S// Michelle Boyle* (Va. Bar No. 73710)

19