nity under this section shall be extended only if the physician or certified nurse practitioner and patient execute a written waiver in advance of the rendering of such medical services specifying that such services are provided without the expectation of payment and that the licensed physician or certified nurse practitioner shall be immune as provided herein.

(2)  Any physician who voluntarily renders any medical service under a special volunteer medical license authorized under Section 1 of this act without any payment or compensation or the expectation or promise of any payment or compensation shall be immune from liability for any civil action arising out of any act or omission resulting from the rendering of the medical service unless the act or omission was the result of the physician's gross negligence or wilful misconduct.  In order for the immunity under this subsection to apply, there must be a written or oral agreement for the physician to provide a voluntary noncompensated medical service before the rendering of the service by the physician.

SECTION 5.  This act shall take effect and be in force from and after July 1, 1995.

Approved: March 10, 1995

## CHAPTER NO. 333
## HOUSE BILL NUMBER 1103

AN ACT TO CREATE NEW CODE SECTIONS TO BE CODIFIED AS SECTIONS 33-15-2, 33-15-14 AND 33-15-53, MISSISSIPPI CODE OF 1972, TO EXPRESS LEGISLATIVE INTENT WITH REGARD TO THE STATE'S EMERGENCY MANAGEMENT LAW; TO ESTABLISH THE RESPONSIBILITIES OF THE MISSISSIPPI EMERGENCY MANAGEMENT AGENCY; TO REQUIRE THAT EACH STATE DEPARTMENT, AGENCY OR COMMISSION DESIGNATE AN EMERGENCY COORDINATION OFFICER AND AN ALTERNATE EMERGENCY COORDINATION OFFICER FROM WITHIN SUCH DEPARTMENT, AGENCY OR COMMISSION; TO AMEND SECTION 33-15-5, MISSISSIPPI CODE OF 1972, TO DEFINE THE TERMS "EMERGENCY MANAGEMENT," "EMERGENCY," "MAN-MADE EMERGENCY," "NATURAL EMERGENCY," "TECHNOLOGICAL EMERGENCY," "LOCAL EMERGENCY MANAGEMENT AGENCY" AND "DISASTER"; TO AMEND SECTIONS 33-15-3, 33-15-7, 33-15-11, 33-15-13, 33-15-15, 33-15-17, 33-15-19, 33-15-35, 33-15-39 AND 33-15-51, MISSISSIPPI CODE OF 1972, IN CONFORMITY TO THE PROVISIONS OF THIS ACT; TO REPEAL SECTION 33-15-9, MISSISSIPPI CODE OF 1972, WHICH PROVIDES FOR THE CREATION OF THE MISSISSIPPI EMERGENCY MANAGEMENT COUNCIL; TO REPEAL SECTION 33-15-101, MISSISSIPPI CODE OF 1972, WHICH PROVIDES FOR THE AUTHORITY OF THE STATE TO ENTER INTO CIVIL DEFENSE AND DISASTER COMPACTS; AND FOR RELATED PURPOSES.

*Be it enacted by the Legislature of the State of Mississippi:*

SECTION 1.  The following shall be codified as Section 33-15-2, Mississippi Code of 1972:

33-15-2.  (1)  The Legislature finds and declares that the state is vulnerable to a wide range of emergencies, including natural, technological and man-made disasters, all of which threaten the life, health and safety of its people; damage and destroy property; disrupt services and everyday business and recreational activities; and impede economic growth and development.  The Legislature further finds that this vulnerability is exacerbated by the growth in the state's number of persons with special needs.  This growth has greatly complicated the state's ability to coordinate its emergency management resources and activities.

EXHIBIT
4

(2) It is the intent of the Legislature to reduce the vulnerability of the people and property of this state; to prepare for efficient evacuation and shelter of threatened or affected persons; to provide for the rapid and orderly provision of relief to persons and for the coordination of activities relating to emergency preparedness, response, recovery and mitigation among and between agencies and officials of this state, with similar agencies and officials of other states, with local and federal governments, with interstate organizations and with the private sector.

(3) It is further the intent of the Legislature to promote the state's emergency preparedness, response, recovery and mitigation capabilities through enhanced coordination, long-term planning and adequate funding. State policy for responding to disasters is to support local emergency response efforts. In the case of a major or catastrophic disaster, however, the needs of residents and communities will likely be greater than local resources. In these situations, the state must be capable of providing effective, coordinated and timely support to communities and the public. Therefore, the Legislature determines and declares that the provisions of this article fulfill an important state interest.

SECTION 2.  Section 33-15-3, Mississippi Code of 1972, is amended as follows:

33-15-3.  (a)  Because of the existing and increasing possibility of the occurrence of disasters or emergencies of unprecedented size and destructiveness resulting from enemy attack, sabotage or other hostile action, and from natural, man-made or technological disasters, and in order to insure that preparations of this state will be adequate to deal with, reduce vulnerability to, and recover from such disasters or emergencies, and generally to provide for the common defense and to protect the public peace, health and safety, and to preserve the lives and property of the people of this state, it is hereby found and declared necessary:  (1)  To create a state emergency management agency, and to authorize the creation of local organizations for emergency management in the municipalities and counties of the state, and to authorize cooperation with the federal government and the governments of other states; (2) to confer upon the Governor, the agency and upon the executive heads or governing bodies of the municipalities and counties of the state the emergency powers provided herein; and (3) to provide for the rendering of mutual aid among the municipalities and counties of the state, and with other states, and with the federal government with respect to the carrying out of emergency management functions and responsibilities; (4) to authorize the establishment of such organizations and the development and employment of such measures as are necessary and appropriate to carry out the provisions of this article; and (5) to provide the means to assist in the prevention or mitigation of emergencies which may be caused or aggravated by inadequate planning for, and regulation of, public and private facilities and land use.

(b)  It is further declared to be the purpose of this article and the policy of the state that all emergency management functions of this state be coordinated, to the maximum extent, with the comparable functions of the federal government, including its various departments and agencies, of other states and localities, and of private agencies of every type, to the end that the most effective preparation and use may be made of the nation's manpower, resources, and facilities for dealing with any disaster or emergency, or both, that may occur as enumerated in this section.

SECTION 3.  Section 33-15-5, Mississippi Code of 1972, is amended as follows:

33-15-5.  The following words, whenever used in this article shall, unless a different meaning clearly appears from the content, have the following meanings:

(a) "Agency," the Mississippi Emergency Management Agency, created by Section 33-15-7.

(b) "Director," the Director of Emergency Management, appointed pursuant to Section 33-15-7.

(c) "Emergency management," means the preparation for, the mitigation of, the response to, and the recovery from emergencies and disasters. Specific emergency management responsibilities include, but are not limited to:

(i) Reduction of vulnerability of people and communities of this state to damage, injury and loss of life and property resulting from natural, technological or man-made emergencies or hostile military paramilitary action.

(ii) Preparation for prompt and efficient response and recovery to protect lives and property affected by emergencies.

(iii) Response to emergencies using all systems, plans and resources necessary to preserve adequately the health, safety and welfare of persons or property affected by the emergency.

(iv) Recovery from emergencies by providing for the rapid and orderly start of restoration and rehabilitation of persons and property affected by emergencies.

(v) Provision of an emergency management system embodying all aspects of preemergency preparedness and postemergency response, recovery and mitigation.

(vi) Assistance in anticipation, recognition, appraisal, prevention and mitigation of emergencies which may be caused or aggravated by inadequate planning for, and regulation of public and private facilities and land use.

(d) "Civil defense," whenever it appears in the laws of the State of Mississippi, shall mean "emergency management" unless the content clearly indicates otherwise.

(e) "State of war emergency" means the condition which exists immediately, with or without a proclamation thereof by the Governor, whenever this state or nation is attacked by an enemy of the United States or upon receipt by the state of a warning from the federal government indicating that such an attack is probable or imminent.

(f) "State of emergency" means the duly proclaimed existence of conditions of disaster or extreme peril to the safety of persons or property within the state caused by air or water pollution, fire, flood, storm, epidemic, earthquake, resource shortages, or other natural or man-made conditions other than conditions causing a "state of war emergency," which conditions by reasons of their magnitude are or are likely to be beyond the control of the services, personnel, equipment and facilities of any single county and/or municipality and requires combined forces of the state to combat.

(g) "Local emergency" means the duly proclaimed existence of conditions of disaster or extreme peril to the safety of persons and property within the territorial limits of a county and/or municipality caused by such conditions as air or water pollution, fire, flood, storm, epidemic, earthquake, resource shortages or other natural or man-made conditions, which conditions are or are likely to be beyond the control of the services, personnel, equipment and facilities of the political subdivision and require the combined forces of other subdivisions or of the state to combat.

(h) "Emergency" means any occurrence, or threat thereof, whether natural, technological, or man-made, in war or in peace, which results or may result in substantial injury or harm to the population or substantial damage to or loss of property.

(i) "Man-made emergency" means an emergency caused by an action against persons or society, including, but not limited to, emergency attack, sabotage, terrorism, civil unrest or other action impairing the orderly administration of government.

(j) "Natural emergency" means an emergency caused by a natural event, including, but not limited to, a hurricane, a storm, a flood, severe wave action, a drought or an earthquake.

(k) "Technological emergency" means an emergency caused by a technological failure or accident, including, but not limited to, an explosion, transportation accident, radiological accident, or chemical or other hazardous material incident.

(l) "Local emergency management agency" means an organization created to discharge the emergency management responsibilities and functions of a political subdivision.

(m) "Disaster" means any natural, technological or civil emergency that causes damage of sufficient severity and magnitude to result in a declaration of a state of emergency by a county, the Governor or the President of the United States. Disasters shall be identified by the severity of resulting damage, as follows:

(i) "Catastrophic disaster" means a disaster that will require massive state and federal assistance, including immediate military involvement.

(ii) "Major disaster" means a disaster that will likely exceed local capabilities and require a broad range of state and federal assistance.

(iii) "Minor disaster" means a disaster that is likely to be within the response capabilities of local government and to result in only a minimal need for state or federal assistance.

SECTION 4. Section 33-15-7, Mississippi Code of 1972, is amended as follows:

33-15-7. (a) There is hereby created within the executive branch of the state government a department called the Mississippi Emergency Management Agency with a director of emergency management who shall be appointed by the Governor; he shall hold office during the pleasure of the Governor and shall be compensated as determined by any appropriation that may be made by the Legislature for such purposes.

(b) The director, with the approval of the Governor, may employ such technical, clerical, stenographic and other personnel, to be compensated as provided in any appropriation that may be made for such purpose, and may make such expenditures within the appropriation therefor, or from other funds made available to him for purposes of emergency management, as may be necessary to carry out the purposes of this article.

(c) The director and other personnel of the emergency management agency shall be provided with appropriate office space, furniture, equipment, supplies, stationery and printing in the same manner as provided for other state agencies.

(d) The director, subject to the direction and control of the Governor, shall be the executive head of the emergency management agency and shall be responsible to

the Governor for carrying out the program for emergency management of this state. He shall coordinate the activities of all organizations for emergency management within the state, and shall maintain liaison with and cooperate with emergency management agencies and organizations of other states and of the federal government, and shall have such additional authority, duties, and responsibilities authorized by this article as may be prescribed by the Governor.

SECTION 5. Section 33-15-11, Mississippi Code of 1972, is amended as follows:

33-15-11. (a) The Governor shall have general direction and control of the activities of the Emergency Management Agency and Council and shall be responsible for the carrying out of the provisions of this article, and in the event of a man-made, technological or natural disaster or emergency beyond local control, may assume direct operational control over all or any part of the emergency management functions within this state.

(b) In performing his duties under this article, the Governor is further authorized and empowered:

(1) To make, amend, and rescind the necessary orders, rules and regulations to carry out the provisions of this article with due consideration of the plans of the federal government.

(2) To work with the Mississippi Emergency Management Agency in preparing a comprehensive plan and program for the emergency management of this state, such plans and program to be integrated into and coordinated with the emergency management plans of the federal government and of other states to the fullest possible extent, and to coordinate the preparation of plans and programs for emergency management by the political subdivisions of this state, such local plans to be integrated into and coordinated with the emergency management plan and program of this state to the fullest possible extent.

(3) In accordance with such plan and program for emergency management of this state, to ascertain the requirements of the state or the political subdivisions thereof for food or clothing or other necessities of life in the event of attack or natural or man-made or technological disasters and to plan for and procure supplies, medicines, materials, and equipment, and to use and employ from time to time any of the property, services, and resources within the state, for the purposes set forth in this article; to make surveys of the industries, resources and facilities within the state as are necessary to carry out the purposes of this article; to institute training programs and public information programs, and to take all other preparatory steps, including the partial or full mobilization of emergency management organizations in advance of actual disaster, to insure the furnishing of adequately trained and equipped forces of emergency management personnel in time of need.

(4) To cooperate with the President and the heads of the Armed Forces, and the Emergency Management Agency of the United States, and with the officers and agencies of other states in matters pertaining to the emergency management of the state and nation and the incidents thereof; and in connection therewith, to take any measure which he may deem proper to carry into effect any request of the President and the appropriate federal officers and agencies, for any action looking to emergency management, including the direction or control of (a) blackouts and practice blackouts, air raid drills, mobilization of emergency management forces, and other tests and exercises, (b) warnings and signals for drills or attacks and the mechanical devices to be used in connection therewith, (c) the effective screening or extinguishing of all lights and lighting devices and appliances, (d) shutting off water mains, gas mains, electric

power connections and the suspension of all other utility services, (e) the conduct of civilians and the movement and cessation of movement of pedestrians and vehicular traffic during, prior, and subsequent to drills or attack, (f) public meetings or gatherings under emergency conditions, (g) the evacuation and reception of the civilian population, and (h) implementing the State Emergency Management Agency's crisis relocation plan when directed.

(5)  To take such action and give such directions to state and local law enforcement officers and agencies as may be reasonable and necessary for the purpose of securing compliance with the provisions of this article and with the orders, rules and regulations made pursuant thereto.

(6)  To employ such measures and give such directions to the state or local boards of health as may be reasonably necessary for the purpose of securing compliance with the provisions of this article or with the findings or recommendations of such boards of health by reason of conditions arising from enemy attack or the threat of enemy attack or natural, man-made or technological disaster.

(7)  To utilize the services and facilities of existing officers and agencies of the state and of the political subdivisions thereof; and all such officers and agencies shall cooperate with and extend their services and facilities to the Governor as he may request.

(8)  To establish agencies and offices and to appoint executive, technical, clerical, and other personnel as may be necessary to carry out the provisions of this article including, with due consideration to the recommendation of the local authorities, part-time or full-time state and regional area directors.

(9)  To delegate any authority vested in him under this article, and to provide for the subdelegation of any such authority.

(10)  On behalf of this state to enter into reciprocal aid agreements or compacts with other states and the federal government, either on a statewide basis or local political subdivision basis or with a neighboring state or province of a foreign country. Such mutual aid arrangements shall be limited to the furnishing or exchange of food, clothing, medicine, and other supplies; engineering services; emergency housing; police services; national or state guards while under the control of the state; health, medical and related services; fire fighting, rescue, transportation, and construction services and equipment; personnel necessary to provide or conduct these services; and such other supplies, equipment, facilities, personnel, and services as may be needed; the reimbursement of costs and expenses for equipment, supplies, personnel, and similar items for mobile support units, fire fighting, and police units and health units; and on such terms and conditions as are deemed necessary.

(11)  To sponsor and develop mutual aid plans and agreements between the political subdivisions of the state, similar to the mutual aid arrangements with other states referred to above.

(12)  Authorize any agency or arm of the state to create a special emergency management revolving fund, accept donations, contributions, fees, grants, including federal funds, as may be necessary for such agency or arm of the state to administer its functions of this article as set forth in the executive order of the Governor.

(13)  To authorize the Commissioner of Public Safety to select, train, organize, and equip a ready reserve of auxiliary highway patrolmen.

(14) To suspend or limit the sale, dispensing or transportation of alcoholic beverages, firearms, explosives and combustibles.

(15) To control, restrict and regulate by rationing, freezing, use of quotas, prohibitions on shipments, price fixing, allocation or other means, the use, sale or distribution of food, feed, fuel, clothing, and other commodities, materials, goods or services.

(16) To proclaim a state of emergency in an area affected or likely to be affected thereby when he finds that the conditions described in Section 33-15-5(g) exist, or when he is requested to do so by the mayor of a municipality or by the president of the board of supervisors of a county, or when he finds that a local authority is unable to cope with the emergency. Such proclamation shall be in writing and shall take effect immediately upon its issuance. As soon thereafter as possible, such proclamation shall be filed with the Secretary of State and be given widespread notice and publicity. The state of emergency shall be terminated at the earliest possible date that conditions warrant.

(c) In addition to the powers conferred upon the Governor in this section, the Legislature hereby expressly delegates to the Governor the following powers and duties in the event of an impending enemy attack, an enemy attack, or a man-made, technological or natural disaster where such disaster is beyond local control:

(1) To suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business, or the orders, rules or regulations of any state agency, if strict compliance with the provisions of any statute, order, rule or regulation would in any way prevent, hinder or delay necessary action in coping with a disaster or emergency.

(2) To transfer the direction, personnel or functions of state agencies, boards, commissions or units thereof for the purpose of performing or facilitating disaster or emergency services.

(3) To commandeer or utilize any private property if necessary to cope with a disaster or emergency, provided that such private property so commandeered or utilized shall be paid for under terms and conditions agreed upon by the participating parties. The owner of said property shall immediately be given a receipt for the said private property and said receipt shall serve as a valid claim against the Treasury of the State of Mississippi for the agreed upon market value of said property.

(4) To perform and exercise such other functions, powers and duties as may be necessary to promote and secure the safety and protection of the civilian population in coping with a disaster or emergency.

SECTION 6.  Section 33-15-13, Mississippi Code of 1972, is amended as follows:

33-15-13.  (a)  In the event of actual or impending enemy attack, as determined by the President, against the United States and the State of Mississippi, the Governor may proclaim that a state of war emergency exists, and thereafter the Governor shall have and may exercise for such period as such state of war emergency exists or continues, the following additional emergency powers:

(1) To enforce all laws, rules and regulations relating to emergency management and to assume direct operational control of all emergency management forces and helpers in the state;

(2) To purchase supplies and services for emergency management purposes, including aiding the populace, without necessity for advertising therefor; to call upon all

persons, firms and corporations to furnish such supplies, services and facilities as they may control which may be needed for the protection of the public, and to enter into all necessary contracts and agreements as may be necessary with relation thereto, all or any provisions of law with reference to advertisements in such matters being expressly waived for this purpose;

(3)  To utilize or commandeer any private property for the protection of the public or at the request of the President, the Armed Forces or the Emergency Management Agency of the United States including:

(A)  For use during emergency only, all means of transportation and communication, except newspapers, or publications, or wire facilities leased or owned by news services, newspapers and other news publications;

(B)  Food, clothing, equipment, materials, medicines, any supplies and stocks of fuel of whatever nature;

(C)  Facilities including buildings and plants, for use during emergency only; in the event it shall become necessary to utilize any such facilities, plants or services, the operation thereof, if possible, shall be left in the hands of the owner, subject to direction of the Governor, and only such portion as may be essential for the protection of life and property, or the national defense, shall be commandeered or utilized;

(4)  To sell, lend, give or distribute all or any such personal property utilized among the inhabitants of the state and to account to the State Treasurer for any funds received for such property;

(5)  To perform and exercise such other functions, powers and duties as may be deemed necessary to promote and secure the safety and protection of the civilian population.

(b)  Adequate compensation shall be paid for any property so utilized, taken or condemned.  In case it shall become necessary to take or use any private property as provided above, the full faith and credit of the State of Mississippi shall be pledged to pay just compensation therefor.  In case the Governor and the owner of any such property so utilized or taken shall not be able to agree on the compensation to be paid for use, damage or taking thereof, the amount of such compensation to be paid shall be determined in conformity with the statutes of this state relating to eminent domain procedures.

(c)  All powers granted to the Governor by this section with respect to a state of war emergency shall terminate when the state of war emergency has been terminated by proclamation of the Governor or by concurrent resolution of the Legislature declaring it at an end.

SECTION 7.  The following shall be codified as Section 33-15-14, Mississippi code of 1972:

33-15-14.  (1)  The agency is responsible for maintaining a comprehensive statewide program of emergency management.  The agency is responsible for coordination with efforts of the federal government with other departments and agencies of state government, with county and municipal governments and school boards and with private agencies that have a role in emergency management.

(2)  In performing its duties under this article, the agency shall:

(a)  Work with Governor, or his representative, in preparing a state comprehensive emergency management plan of this state, which shall be integrated into and coordinated with the emergency management plans of the federal government and of other states to the fullest possible extent, and to coordinate the preparation of plans and programs for emergency management by the political subdivisions of the state, such local plans to be integrated into and coordinated with the emergency plan and program of this state. The plan must contain provisions to ensure that the state is prepared for emergencies and minor, major and catastrophic disasters, and the agency shall work closely with local governments and agencies and organizations with emergency management responsibilities in preparing and maintaining the plan. The state comprehensive emergency management plan will be operations oriented and:

(i)  Include an evacuation component that includes specific regional and interregional planning provisions and promotes intergovernmental coordination of evacuation activities. This component must, at a minimum:  ensure coordination pertaining to evacuees crossing county lines; set forth procedures for directing people caught on evacuation routes to safe shelter; and establish policies and strategies for emergency medical evacuations.

(ii)  Include a shelter component that includes specific regional and interregional planning provisions and promotes coordination of shelter activities between the public, private and nonprofit sectors. This component must, at a minimum: contain strategies to ensure the availability of adequate public shelter space in each region of the state; establish strategies for refuge-of-last-resort programs; provide strategies to assist local emergency management efforts to ensure that adequate staffing plans exist for all shelters, including medical and security personnel; provide for a postdisaster communications system for public shelters; establish model shelter guidelines for operations, registration, inventory, power generation capability, information management and staffing; and set forth policy guidance for sheltering people with special needs.

(iii)  Include a postdisaster response and recovery component that includes specific regional and interregional planning provisions and promotes intergovernmental coordination of postdisaster response and recovery activities. This component must provide for postdisaster response and recovery strategies according to whether a disaster is minor, major or catastrophic. The postdisaster response and recovery component must, at a minimum:  establish the structure of the state's postdisaster response and recovery organization; establish procedures for activating the state's plan; set forth policies used to guide postdisaster response and recovery activities; describe the chain of command during the postdisaster response and recovery period; describe initial and continuous postdisaster response and recovery actions; identify the roles and responsibilities of each involved agency and organization; provide for a comprehensive communications plan; establish procedures for monitoring mutual aid agreements; provide for rapid impact assessment teams; ensure the availability of an effective statewide urban search and rescue program coordinated with the fire services; ensure the existence of a comprehensive statewide medical care and relief plan administered by the State Department of Health; and establish systems for coordinating volunteers and accepting and distributing donated funds and goods.

(iv)  Include additional provisions addressing aspects of preparedness, response and recovery, as determined necessary by the agency.

(v)  Address the need for coordinated and expeditious deployment of state resources, including the Mississippi National Guard.  In the case of an imminent major disaster, procedures should address predeployment of the Mississippi National Guard, and, in the case of an imminent catastrophic disaster, procedures should address predeployment of the Mississippi National Guard and the United States Armed Forces. This

subparagraph (v) does not authorize the agency to call out and deploy the Mississippi National Guard, which authority and determination rests solely with the Governor.

(vi) Establish a system of communications and warning to ensure that the state's population and emergency management agencies are warned of developing emergency situations and can communicate emergency response decisions.

(vii) Establish guidelines and schedules for annual exercises that evaluate the ability of the state and its political subdivisions to respond to minor, major and catastrophic disasters and support local emergency management agencies. Such exercises shall be coordinated with local governments and, to the extent possible, the federal government.

(viii) 1. Assign lead and support responsibilities to state agencies and personnel for emergency support functions and other support activities.

2. The agency shall prepare an interim postdisaster response and recovery component that substantially complies with the provisions of this paragraph (a). Each state agency assigned lead responsibility for an emergency support function by the state comprehensive emergency management plan shall also prepare a detailed operational plan needed to implement its responsibilities. The complete state comprehensive emergency management plan shall be submitted to the Governor no later than January 1, 1995, and on January 1 of every even-numbered year thereafter.

(b) Adopt standards and requirements for county emergency management plans. The standards and requirements must ensure that county plans are coordinated and consistent with the state comprehensive emergency management plan. If a municipality elects to establish an emergency management program, it must adopt a city emergency management plan that complies with all standards and requirements applicable to county emergency management plans.

(c) Assist political subdivisions in preparing and maintaining emergency management plans.

(d) Review periodically political subdivision emergency management plans for consistency with the State Comprehensive Emergency Management Plan and standards and requirements adopted under this section.

(e) Make recommendations to the Legislature, building code organizations and political subdivisions for zoning, building and other land use controls, safety measures for securing mobile homes or other nonpermanent or semipermanent structures; and other preparedness, prevention and mitigation measures designed to eliminate emergencies or reduce their impact.

(f) In accordance with the State Comprehensive Emergency Management Plan and program for emergency management, ascertain the requirements of the state and its political subdivisions for equipment and supplies of all kinds in the event of an emergency; plan for and either procure supplies, medicines, materials and equipment or enter into memoranda of agreement or open purchase orders that will ensure their availability; and use and employ from time to time any of the property, services and resources within the state in accordance with this article.

(g) Anticipate trends and promote innovations that will enhance the emergency management system.

(h)  Prepare and distribute to appropriate state and local officials catalogs of federal, state and private assistance programs.

(i)  Implement training programs to improve the ability of state and local emergency management personnel to prepare and implement emergency management plans and programs.

(j)  Review periodically emergency operating procedures of state agencies and recommend revisions as needed to ensure consistency with the State Comprehensive Emergency Management Plan and program.

(k)  Prepare, in advance whenever possible, such executive orders, proclamations and rules for issuance by the Governor as are necessary or appropriate for coping with emergencies and disasters.

(l)  Cooperate with the federal government and any public or private agency or entity in achieving any purpose of this article.

(m)  Assist political subdivisions with the creation and training of urban search and rescue teams and promote the development and maintenance of a state urban search and rescue program.

(n)  Delegate, as necessary and appropriate, authority vested in it under this article and provide for the subdelegation of such authority.

(o)  Report biennially to the Governor and the President of the Senate, and the Speaker of the House of Representatives, no later than January 1 of every odd-numbered year, the status of the emergency management capabilities of the state and its political subdivisions.

(p)  In accordance with Section 25-43-1 et seq., create, implement, administer, promulgate, amend and rescind rules, programs and plans needed to carry out the provisions of this article with due consideration for, and in cooperating with, the plans and programs of the federal government.

(q)  Do other things necessary, incidental or appropriate for the implementation of this article.

SECTION 8.  Section 33-15-15, Mississippi Code of 1972, is amended as follows:

33-15-15.  (a)  The agency is authorized to provide, within or without the state, such support from available personnel, equipment and other resources of state agencies and the political subdivisions of the state as may be necessary to reinforce emergency management agencies in areas stricken by emergency. Such support shall be rendered with due consideration of the plans of the federal government, this state, the other states and of the criticalness of the existing situation.  Emergency management support forces shall be called to duty upon orders of the agency and shall perform their functions in any part of the state, or, upon the conditions specified in this section, in other states.

(b)  Personnel of emergency management support forces while on duty, whether within or without the state, shall:

(1)  If they are employees of the state, have the powers, duties, rights, privileges and immunities and receive the compensation incidental to their employment;

(h) Prepare and distribute to appropriate state and local officials catalogs of federal, state and private assistance programs.

(i) Implement training programs to improve the ability of state and local emergency management personnel to prepare and implement emergency management plans and programs.

(j) Review periodically emergency operating procedures of state agencies and recommend revisions as needed to ensure consistency with the State Comprehensive Emergency Management Plan and program.

(k) Prepare, in advance whenever possible, such executive orders, proclamations and rules for issuance by the Governor as are necessary or appropriate for coping with emergencies and disasters.

(l) Cooperate with the federal government and any public or private agency or entity in achieving any purpose of this article.

(m) Assist political subdivisions with the creation and training of urban search and rescue teams and promote the development and maintenance of a state urban search and rescue program.

(n) Delegate, as necessary and appropriate, authority vested in it under this article and provide for the subdelegation of such authority.

(o) Report biennially to the Governor and the President of the Senate, and the Speaker of the House of Representatives, no later than January 1 of every odd-numbered year, the status of the emergency management capabilities of the state and its political subdivisions.

(p) In accordance with Section 25-43-1 et seq., create, implement, administer, promulgate, amend and rescind rules, programs and plans needed to carry out the provisions of this article with due consideration for, and in cooperating with, the plans and programs of the federal government.

(q) Do other things necessary, incidental or appropriate for the implementation of this article.

SECTION 8. Section 33-15-15, Mississippi Code of 1972, is amended as follows:

33-15-15. (a) The agency is authorized to provide, within or without the state, such support from available personnel, equipment and other resources of state agencies and the political subdivisions of the state as may be necessary to reinforce emergency management agencies in areas stricken by emergency. Such support shall be rendered with due consideration of the plans of the federal government, this state, the other states and of the criticalness of the existing situation. Emergency management support forces shall be called to duty upon orders of the agency and shall perform their functions in any part of the state, or, upon the conditions specified in this section, in other states.

(b) Personnel of emergency management support forces while on duty, whether within or without the state, shall:

(1) If they are employees of the state, have the powers, duties, rights, privileges and immunities and receive the compensation incidental to their employment;

(2)  If they are employees of a political subdivision of the state, and whether serving within or without such political subdivision, have the powers, duties, rights, privileges and immunities and receive the compensation incidental to their employment; and

(3)  If they are not employees of the state or a political subdivision thereof, be entitled to compensation by the state at a rate commensurate with their duties and responsibilities and to the same rights and immunities as are provided by law for the employees of this state.

All personnel of emergency management support forces shall, while on duty, be subject to the operational control of the authority in charge of emergency management activities in the area in which they are serving, and shall be reimbursed for all actual and necessary travel and subsistence expenses, and for death, disability or injury to such personnel while on such emergency duty as a member of an emergency management support force, the state shall pay compensation to the heirs in event of death or the individual in event of injury or disability in accordance with payment schedules contained in the Mississippi Workers' Compensation Law.

(c)  The state shall reimburse a political subdivision for the actual and necessary travel, subsistence and maintenance expenses of employees of such political subdivision while serving as members of an emergency management support force, and for all payments for death, disability or injury of such employees incurred in the course of such duty, and for all losses of or damage to supplies and equipment of such political subdivision resulting from the operation of such emergency management support force.

(d)  Whenever an emergency management support force of another state shall render aid in this state pursuant to the orders of the governor of its home state and upon the request of the Governor of this state, the personnel thereof shall have the powers, duties, rights, privileges and immunities of emergency management personnel serving in similar capacities in this state, except compensation, and this state shall reimburse such other state for the compensation paid and actual and necessary travel, subsistence and maintenance expenses of the personnel of such emergency management support force while rendering such aid, and for all payments for death, disability or injury of such personnel incurred in the course of rendering such aid, and for all losses of or damage to supplies and equipment of such other state or a political subdivision thereof resulting from the rendering of such aid; provided, that the laws of such other state contain provisions substantially similar to this section.

(e)  No personnel of emergency management support forces of this state shall be ordered by the Governor to operate in any other state unless the laws of such other state contain provisions substantially similar to this section.

SECTION 9.  Section 33-15-17, Mississippi Code of 1972, is amended as follows:

33-15-17.  (a)  Each county and municipality, or counties and the municipalities therein acting jointly, or two (2) or more counties acting jointly, of this state are hereby authorized and directed to establish a local organization for emergency management in accordance with the state emergency management plan and program, if required and authorized so to do by such state emergency management plan. Each local organization for emergency management shall have a director who shall be appointed by the governing body of the political subdivision, or political subdivisions acting jointly, and who shall have direct responsibility for the organization, administration and operation of such local organization for emergency management, subject to the direction and control of such governing body. Each local organization for emergency management shall perform emergency management functions within the territorial limits of the political sub-

divisions within which it is organized; and, in addition, shall conduct such functions outside of such territorial limits as may be required pursuant to the provisions of the state emergency management plan. Each county shall develop an emergency management plan and program that is coordinated and consistent with the state comprehensive emergency management plan and program. Counties that are part of an interjurisdictional emergency management agreement entered into pursuant to this section shall cooperatively develop an emergency management plan and program that is coordinated and consistent with the state emergency management plan and program.

(b) In carrying out the provisions of this article each county and municipality, or the two (2) acting jointly, or two (2) or more counties acting jointly, where there is joint organization, in which any disaster as described in Section 33-15-3 occurs, shall have the power to enter into contracts and incur obligations necessary to combat such disaster, protecting the health and safety of persons and property, and providing emergency assistance to the victims of such disaster. Each county and municipality is authorized to exercise the powers vested under this section in the light of the exigencies of the extreme emergency situation without regard to time-consuming procedures and formalities prescribed by law pertaining to the performance of public work, entering into contracts, the incurring of obligations, the employment of temporary workers, the rental of equipment, the purchase of supplies and materials, the levying of taxes and the appropriation and expenditure of public funds.

(c) Each county and each municipality, or two (2) or more counties acting jointly, shall have the power and authority:

(1) To appropriate and expend funds, make contracts, obtain and distribute equipment, materials, and supplies for emergency management purposes; provide for the health and safety of persons and property, including emergency assistance to the victims of any enemy attack or man-made, technological or natural disasters; and to direct and coordinate the development of emergency management plans and programs in accordance with the policies and plans set by the federal and state emergency management agencies;

(2) To appoint, employ, remove, or provide, with or without compensation, air raid wardens, rescue teams, auxiliary fire and police personnel, and other emergency management workers;

(3) To establish, as necessary, a primary and one or more secondary emergency operating centers to provide continuity of government, and direction and control of emergency operation during an emergency;

(4) Subject to the order of the Governor, or the chief executive of the political subdivision, to assign and make available for duty, the employees, property or equipment of the subdivision relating to fire fighting, engineering, rescue, health, medical and related services, police, transportation, construction, and similar items or services for emergency management purposes either within or outside of the limits of the subdivision;

(5) Subject to the order of the chief executive of the county or municipality or the Governor to order the evacuation of any area subject to an impending or existing enemy attack or man-made, technological or natural disaster;

(6) Subject to the order of the chief executive of the county or municipality or the Governor, to control or restrict egress, ingress and movement within the disaster area to the degree necessary to facilitate the protection of life and property.

(d)  A local emergency as defined in Section 33-15-5 may be proclaimed by the governing body of a municipality or county.  The governing body shall review the need for continuing the local emergency at least every seven (7) days until such local emergency is terminated, and shall proclaim the termination of such local emergency at the earliest possible date that conditions warrant.  During a local emergency, the governing body of a political subdivision may promulgate orders and regulations necessary to provide for the protection of life and property, including orders or regulations imposing a curfew within designated boundaries where necessary to preserve the public order and safety.  Such orders and regulations and amendments and rescissions thereof shall be in writing and shall be given widespread notice and publicity.  The authorization granted by this section to impose a curfew shall not be construed as restricting in any manner the existing authority to impose a curfew pursuant to police power for any other lawful purpose.

SECTION 10.  Section 33-15-19, Mississippi Code of 1972, is amended as follows:

33-15-19.  (a)  The governing body of a municipality or county of the state is authorized to develop and enter into mutual aid agreements within the state for reciprocal emergency management aid and assistance in case of disaster or emergency too extensive to be dealt with unassisted.  Copies of the agreements shall be sent to the agency.  Such arrangements shall be consistent with the state emergency management plan and program, and in time of emergency it shall be the duty of each local emergency management organization to render assistance in accordance with the provisions of such mutual aid arrangements.

(b)  The Governor may enter into compacts with any state or group of states if he finds that joint action with that state or group of states is desirable in meeting common intergovernmental problems of emergency management planning or emergency prevention, mitigation, response and recovery.

SECTION 11.  Section 33-15-25, Mississippi Code of 1972, is amended as follows:

33-15-25.  (a)  The Governor of the State of Mississippi is authorized to enter into agreements with the federal government for the purpose of matching any federal funds that may be made available for emergency management purposes, which shall include purchasing emergency management equipment and supplies, to the state on a matching basis.  Provided, that no agreement shall obligate the state for an amount greater than the appropriation available for such purpose.  The state's portion of the purchase price of any emergency management equipment may be made available from any appropriation made for such purposes.

(b)  Any county board of supervisors or municipal governing body may enter into agreement with the federal government with approval of the State Director of Emergency Management for matching funds which may be made available for emergency management purposes, which shall include purchasing emergency management equipment and supplies, by such county or municipality in conjunction with any federal matching program and funds may be expended from the general fund of such county or municipality or from such other funds as may be available to such county or municipality for emergency management purposes in order to provide the county or municipal portion of funds necessary to carry out such matching agreement.

SECTION 12.  Section 33-15-29, Mississippi Code of 1972, is amended as follows:

33-15-29.  (a)  In carrying out the provisions of this article, the Governor and the executive officers or governing bodies of the political subdivisions of the state are directed to utilize the services, equipment, supplies and facilities of existing departments, offices, and agencies of the state and of the political subdivisions thereof to the

maximum extent practicable, and the officers and personnel of all such departments, offices, and agencies are directed to cooperate with and extend such services and facilities to the Governor and to the emergency management organizations of the state or such subdivisions upon request.

(b)  State agencies in carrying out their assigned disaster or emergency assignments shall be reimbursed their expenses for emergency or disaster-related duties which may include the payment of overtime and the employment of temporary personnel by such agencies in the same manner as authorized in Sections 33-15-301 et seq., 43-41-17 and 43-41-319, and as provided by Section 43-41-701.

SECTION 13.  Section 33-15-31, Mississippi Code of 1972, is amended as follows:

33-15-31.  (a)  The governing bodies of the political subdivisions of the state and other agencies designated or appointed by the Governor are authorized and empowered to make, amend, and rescind such orders, rules, and regulations as may be necessary for emergency management purposes and to supplement the carrying out of the provisions of this article, but not inconsistent with any orders, rules and regulations promulgated by the Governor or by any state agency exercising a power delegated to it by him.

(b)  All orders, rules, and regulations promulgated by the Governor, the Mississippi Emergency Management Agency or by any political subdivision or other agency authorized by this article to make orders, rules and regulations, shall have the full force and effect of law, when, in the event of issuance by the Governor, or any state agency, a copy thereof is filed in the office of the Secretary of State, or, if promulgated by a political subdivision of the state or agency thereof, when filed in the office of the clerk of the political subdivision or agency promulgating the same.  All existing laws, ordinances, rules and regulations inconsistent with the provisions of this article, or of any order, rule, or regulation issued under the authority of this article, shall be suspended during the period of time and to the extent that such conflict, disaster or emergency exists.

(c)  In order to attain uniformity so far as practicable throughout the country in measures taken to aid emergency management, all action taken under this article and all orders, rules and regulations made pursuant thereto, shall be taken or made with due consideration to the orders, rules, regulations, actions, recommendations, and requests of federal authorities relevant thereto and, to the extent permitted by law, shall be consistent with such orders, rules, regulations, actions, recommendations and requests.

SECTION 14.  The following shall be codified as Section 33-15-53, Mississippi Code of 1972:

33-15-53.  The head of each state department, agency or commission shall select from within each agency a person to be designated as the emergency coordination officer for the agency and an alternate.  The emergency coordination officer is responsible for coordinating with the Mississippi Emergency Management Agency on emergency preparedness issues, preparing and maintaining emergency preparedness and postdisaster response and recovery plans for such agency, maintaining rosters of personnel to assist in disaster operations and coordinating appropriate training for agency personnel.  These individuals shall be responsible for ensuring that each state facility, such as a prison, office building or university, has a disaster preparedness plan that is approved by the applicable local emergency management agency or the division.  The head of each agency shall notify the Governor and the Mississippi Emergency Management Agency in writing of the person initially designated as the emergency coordination officer for each agency and his alternate and of any changes in persons so designated thereafter.

SECTION 15. Section 33-15-9, Mississippi Code of 1972, which provides for the creation of the Mississippi Emergency Management Council, is repealed.

SECTION 16. Section 33-15-101, Mississippi Code of 1972, which provides for the authority of the state to enter into civil defense and disaster compacts, is repealed.

SECTION 17. This act shall take effect and be in force from and after July 1, 1995.

Approved: March 10, 1995

## CHAPTER NO. 334
## HOUSE BILL NUMBER 1230

AN ACT TO DESIGNATE A CERTAIN SEGMENT OF MISSISSIPPI HIGHWAY 42 IN PETAL, MISSISSIPPI, AS "BOBBY RUNNELS MEMORIAL DRIVE"; AND FOR RELATED PURPOSES.

*Be it enacted by the Legislature of the State of Mississippi:*

SECTION 1. (1) That portion of Mississippi Highway 42 in the City of Petal, Mississippi, beginning at the Norfolk Southern Railroad and extending approximately one-half (1/2) mile to its intersection with Main Street is designated and shall be known as "Bobby Runnels Memorial Drive."

(2) The Mississippi Department of Transportation shall erect and maintain appropriate signs on and along such highway.

SECTION 2. This act shall take effect and be in force from and after its passage.

Approved: March 10, 1995

## CHAPTER NO. 335
## HOUSE BILL NUMBER 1298

AN ACT TO AMEND SECTION 43-21-353, MISSISSIPPI CODE OF 1972, TO PROVIDE FOR MANDATED REPORTING OF REPORTS OF SEXUAL ABUSE AND SEVERE PHYSICAL ABUSE TO A LAW ENFORCEMENT AGENCY IMMEDIATELY UPON RECEIPT OF THE REPORT AND TO THE DISTRICT ATTORNEY'S OFFICE WITHIN 72 HOURS OF RECEIVING THE REPORT; TO PROVIDE A PENALTY FOR VIOLATION OF THIS SECTION; AND FOR RELATED PURPOSES.

*Be it enacted by the Legislature of the State of Mississippi:*

SECTION 1. Section 43-21-353, Mississippi Code of 1972, is amended as follows:

43-21-353. (1) Any attorney, physician, dentist, intern, resident, nurse, psychologist, social worker, child care giver, minister, law enforcement officer, public or private school employee or any other person having reasonable cause to suspect that a child is a neglected child or an abused child, shall cause an oral report to be made immediately by telephone or otherwise and followed as soon thereafter as possible by a report in writing to the Department of Human Services, and immediately a referral shall be made by the Department of Human Services to the intake unit and where appropriate to the youth court prosecutor. Upon receiving a report that a child has been abused and that