UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER  FORMALDEHYDE  PRODUCTS LIABILITY  LITIGATION | * * * * * | MDL NO. 1873  SECTION: N(5) |
| This Document Relates to: *Dubuclet v. Fleetwood Enterprises, Inc.* Case No. 07-9228 | * * * * * * | JUDGE: ENGELHARDT  MAG: CHASEZ |

******************************************************************************

### DEFENDANT FLEETWOOD ENTERPRISES, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO LIMIT THE TESTIMONY OF WILLIAM L. DYSON, PH.D., CIH (REC. DOC. 7281)

Plaintiff has challenged five of William L. Dyson's opinions. As shown in Dyson's supplemental affidavit, Plaintiff's challenge fails, and Dyson's opinions are properly supported under Rule 702. Many of Dyson's opinions are offered as a counterpoint to Plaintiff's experts -- who must carry Plaintiff's burden -- and Dyson is certainly qualified to do so.[1] Moreover, "as a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[2]

### 1. Opinion No. 3: An industrial hygienist is permitted to offer an opinion regarding risk and general causation.

Dyson is not offering a specific medical causation opinion; rather, he is providing an opinion on risk assessment in general.[3] As an industrial hygienist, he has core expertise in this

---

[1] *See Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009).
[2] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (internal citations and quotations omitted).
[3] Dyson Aff. (Nov. 19, 2009) at ¶ 5, attached as Ex. A.

area and is called to assess whether an exposure presents a risk of an adverse event.[4]  Moreover, Dyson provided the background for his opinion in the body of his report.[5]  It is appropriate -- indeed, it is the standard of care -- for an industrial hygienist to review other scientific articles.[6]  As detailed in Dyson's supplemental affidavit, his opinion regarding sensory irritation is supported by his review and analysis of scientific studies, and therefore he has a reliable basis for his opinion.[7]  To the extent that Plaintiff takes issue with Dyson not actually performing independent testing on the effects of formaldehyde, she can certainly question him on that during cross-examination, but that factor goes to the weight, and not the admissibility, of his opinion.  It is passing strange that Plaintiffs criticize Dr. Dyson for not having conducted testing or published on formaldehyde in peer reviewed journals in light of the fact that none of Plaintiff's experts have done that either.

2. **Opinion Nos. 4 and 5: Dyson's testimony regarding the estimation of formaldehyde levels is scientifically reliable.**

Dyson's opinions on how best to estimate the formaldehyde level to which Plaintiff was exposed are reliable and based on science.  As Dyson points out in his supplemental affidavit, he looked at the actual measurements made in the Dubuclet travel trailer after standardization of environmental conditions, the testimony from Ms. Elisha Dubuclet that she operated the air conditioner as necessary, the fact that windows and doors were opened by the four people living in the unit, and Dr. Hewett's data (Plaintiff's own expert) on Fleetwood travel trailers.[8]  Using these factors to estimate the exposure level provides a reliable methodology for reaching his conclusion.  Even Plaintiff has attempted to estimate, and Dyson's opinions on Plaintiff's

---

[4] *Id.*
[5] *Id.* at ¶ 6 (Ex.A); Dyson Rep. at 5 (Ex. A to Rec. Doc. 7281).
[6] Dyson Aff. (Nov. 19, 2009) at ¶ 6 (Ex. A).
[7] *Id.*
[8] *Id.* at ¶ 10.

2

method is admissible as well in order to present the counterargument to the jury. Dyson has an opinion on the validity of Plaintiff's reliance on mathematical models to extrapolate a formaldehyde exposure level, and he is qualified to offer an opinion to the jury on Plaintiff's method of estimating the formaldehyde exposure level.[9] Fleetwood is entitled to present evidence on this point, even if the testimony is that no one can determine to an exacting standard the actual level at the time Plaintiff resided in the unit.

3.  **Opinion No. 8: Dyson's testimony that Plaintiff likely had direct contact with formaldehyde from other products is relevant and admissible.**

In Dyson's supplemental affidavit, he states that "[t]he fact remains that the overwhelming majority of formaldehyde-related dermal sensitization in humans comes from inadvertent contact with everyday products such as cleaners, cosmetics, and clothing."[10] Even if Dyson does not have list of every product that Timia was ever exposed to, it is relevant to exposure in general that formaldehyde is found in other products and that people are exposed to them. Dyson states that in his opinion the likelihood that Plaintiff did not use such other products is low.[11] Plaintiff can cross-examine him on his knowledge regarding the general population, versus Timia, but such testimony goes to the weight and not to the admissibility of the evidence.

4.  **Opinion No. 9: Dyson's comparison of formaldehyde levels to conventional homes is relevant and factually supported.**

Plaintiff is complaining that Fleetwood's product is unreasonably dangerous, and Dr. Dyson's comparison of formaldehyde levels to conventional homes, which she would otherwise have been living in, is relevant. It is also relevant because it shows that the formaldehyde levels

---

[9] *Id.* at ¶¶ 8-9 (Ex. A).
[10] *Id.* at ¶ 11 (Ex. A).
[11] *Id.* (Ex. A).

3

in Fleetwood travel trailers are not exceptionally high relative to other residential environments. Moreover, Dyson based this opinion on a simple comparison of the numbers in the study of 53 Southern Louisiana homes.[12]  Dyson's opinion was expressed in a "more likely than not" terms, and is helpful to the jury in understanding whether a Fleetwood travel trailer is unreasonably dangerous.

For these reasons, Dyson's testimony on these points is scientifically reliable and helpful to the jury.  To the extent that Plaintiff believes Dyson's testimony is faulty, she can cross-examine him on those points, allowing the jury to determine his credibility on those points. Therefore, Fleetwood requests that this Court deny Plaintiff's motion.

This 20th day of November 2009.

Respectfully submitted:

 /s/ Richard K. Hines, V
Richard K. Hines, V
GA Bar No. 356300
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)

Jerry L. Saporito
LA Bar No. 11717
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-1701
(504) 585-7500 (phone)
(504) 585- 7775 (fax)

Counsel for Fleetwood Enterprises, Inc.

---

[12] *Id.* at ¶ 12 (Ex. A).

4

## C E R T I F I C A T E OF SERVICE

  I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( ) Hand Delivery        ( ) Prepaid U.S. Mail

( ) Facsimile          ( ) Federal Express

(X) CM/ECF

  New Orleans, Louisiana, this 20th day of November 2009.

              */s/ Richard K. Hines, V*
              Richard K. Hines, V
              Georgia Bar No. 356300
              richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)