UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION:  N(5) |
| | | * | |
| This Document Relates to: | | * | |
| *Dubuclet v. Fleetwood Enterprises, Inc.* | | * | |
| | | * | JUDGE: ENGELHARDT |
| *Case No. 07-9228* | | * | |
| | | * | |
| | | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DEFENDANT FLEETWOOD ENTERPRISES, INC'S MEMORANDUM SUPPORTING ITS OBJECTIONS TO CERTAIN OF PLAINTIFF'S EXHIBITS

COMES NOW Fleetwood Enterprises, Inc. ("Fleetwood") and submits this its memorandum outlining its objections to certain of Plaintiff's Exhibits listed on the amended version (provided to Fleetwood by Plaintiff's counsel) of Plaintiff's Exhibit A to the Joint Pretrial, which list is attached hereto as Exhibit A.

**1.      Exhibits referencing political proceedings.**

Fleetwood objects to the following exhibits listed by Plaintiff related to the political proceedings involving post-Katrina formaldehyde issues in FEMA EHUs:  Exhibits 7, 8, 14, 16, 17, 176, 182, 185, 196, 198, 199 ("all exhibits to Christopher DeRosa deposition" to the extent some of those include these types of documents), and 201.  In this case, the Court has granted Fleetwood's motion in limine seeking to exclude evidence related to political proceedings (Rec. Doc. 7684), incorporating by reference its ruling in the *Alexander* case (Rec. Doc. 3029)"to the extent that any party seeks to introduce evidence, by way of documentation or testimony, about Congressional hearings, proceedings, inquiries, or other legislative branch events.  This includes any investigatory reports, committee minutes, committee reports, analysis, opinions, or other

1

attempts by members of Congress, or their staffs, to find facts that somehow relate to the use

of . . . EHU's by FEMA in the aftermath of Hurricanes Katrina and Rita.  While those inquiries

might well touch upon matters central to the trial in this matter, they were conducted for various

purposes, including review of past policy decisions and future policy formulation and FEMA

planning.  This matter, on the other hand, seeks to establish only the liability *vel non* of the

defendant herein, applying the legal standard of the Louisiana Product Liabilities Act, La. Rev.

Stat. Ann. § 9:2800.52, *et seq.*, and/or in the alternative, negligence (in the instance of defendant

Fluor Enterprises, Inc.).  Thus, any facts, opinions, or analysis offered as a result of

Congressional hearings or investigations are not admissible in these proceedings." (Rec. Doc.

3029 at 2-3.)   [Fleetwood is not attaching to its memorandum any of the exhibits listed in this

category as the Court is familiar with them, their descriptions on Plaintiffs Exhibit List are clear

and the individual exhibits are voluminous.  *See* attached Exhibit "A," Plaintiff's Amended

Exhibit List.]

> 2.      **Exhibits referencing ambient air standards being discussed for promulgation or promulgated after September 2007, the date the Dubuclets moved out of the Fleetwood unit.**

Fleetwood objects to the following exhibits listed by Plaintiff related to ambient air

standards that post-date the move-out date of the Dubuclets (September 2007):  Exhibits 14, 16,

22, 196, 198.  In this case, the Court has granted Fleetwood's motion in limine seeking to exclude

evidence related to ambient air standards that post dated the move out date of the Dubuclets from

the Fleetwood unit (Rec. Doc. 7684), incorporating by reference its ruling in the *Alexander* case

(Rec. Doc. 3069 at 2).  The Dubuclets moved out of the Fleetwood unit in September 2007. The

Court ruled "to the extent that any formaldehyde regulations or guidelines that were established

after Plaintiff vacated the trailer are excluded, as that time period is not relevant for purposes of

formaldehyde inhalation for these particular plaintiffs."  (Rec. Doc. 3069 at 2.) [Fleetwood is not attaching to its memorandum any of the exhibits listed in this category as the Court is familiar with them, their descriptions on Plaintiffs Exhibit List are clear and the individual exhibits are voluminous.  *See* attached Exhibit "A," Plaintiff's Amended Exhibit List.]

     **3.**      **Learned Treatises.**

     Fleetwood objects to the admissibility into evidence of the following Plaintiff exhibits: Exhibits 32, 33, 34, 35, 36, 37, 38, 39, 40, 43, 44, 51, 52, 53, 54, 55, 56, 57, 58, 60, 61, 62, 63, 64, 65, 66, 67, and 200.  These exhibits are learned treatises under Federal Rule of Evidence 803(18), and may be used to examine and cross examine witnesses, as appropriate, but cannot be admitted into evidence for the jury. [Fleetwood is not attaching to its memorandum any of the exhibits listed in this category as the Court is familiar with them, their descriptions on Plaintiffs Exhibit List are clear and the individual exhibits are voluminous.  *See* attached Exhibit "A," Plaintiff's Amended Exhibit List.]

     **4.**      **Articles/Reports that lack relevance to any issue in this case and/or which include hearsay, and will be misleading and confusing to the jury, and prejudicial to Fleetwood.**

     Fleetwood objects to the admissibility into evidence of the following Plaintiff exhibits: 9, 10, 33, 41, 42, 45, 46, 47, 48, 49, 59, 177, and 222.  These exhibits are articles that are not admissible under Federal Rules of Evidence 802 and 403 because they are not relevant to any issue in the case, contain hearsay, will mislead and confuse the jury, and are unfairly prejudicial to Fleetwood.  [Fleetwood is not attaching to its memorandum any of the exhibits listed in this category as the Court is familiar with them, their descriptions on Plaintiffs Exhibit List are clear and the individual exhibits are voluminous.  *See* attached Exhibit "A," Plaintiff's Amended Exhibit List.]

5.    **Plaintiff's expert reports and "files."**

Fleetwood objects to the admissibility of the following Plaintiff exhibits, which are the written reports of its experts and their "files":  Exhibit 68 (Branscome)[1]; 71 (DeVany); 75, 76, 77, 79 (Hewett); 80, 82 (Kaltofen); 83, 85 (Laughery); 86, 88, 89 (Mallet); 90, 92 (Miller); 93, 95 (Moore); 96, 98 (Ritter); 94, 101 (Scott); 105, 107 except as to his actual medical notes and records specific to his examination of Timia Dubuclet (Shwery); 108, 110 (Smulski); and 111, 113 (Williams).  If these experts testify at trial, then these exhibits are cumulative under Federal Rule of Evidence 403.  To the extent that Plaintiff intends to offer these exhibits in lieu of expert testimony, the reports and "files" lack foundation under Federal Rules of Evidence 602 and 703 and lack authentication under Federal Rule of Evidence 901.  In addition, the Court has issued orders in this case limiting the testimony of the following experts such that their expert reports and files contain material that has been excluded by the Court – Smulski  (Doc. Rec. 7683) and Laughery (Doc. Rec. 7533)  Finally,  Plaintiff has formally withdrawn as experts DeVany and Moore; consequently, their materials listed above should not be admitted.  [Fleetwood is not attaching to its memorandum any of the exhibits listed in this category as the Court is familiar with them, their descriptions on Plaintiffs Exhibit List are clear and the individual exhibits are voluminous. *See* attached Exhibit "A," Plaintiff's Amended Exhibit List.]

6.    **Photographs/videos that depict an alleged "broken test vial" in the Dubuclet unit.**

Fleetwood objects to the admissibility of any photographs or videotapes of an alleged broken test vial noted in the report of Plaintiff's expert Scott on the grounds that the glass debris from a supposed test is irrelevant, particularly given that it is not relied upon as a basis for any

---

[1] The parties, however, have agreed to permit into evidence certain weather data compiled by Mr. Branscome, and Fleetwood stands by its agreement on that issue.

expert's opinion.  Scott merely noted his observation that glass debris was found, that it appeared to be similar to a glass envelope used in tube sampling, but he does not know anything else about alleged testing.  Plaintiff's exhibits 121 – 124 and 126 are photographs or videos of the Dubuclet unit and may include such images.   [Fleetwood is not attaching these photographs or the videotapes, however, if the Court sustains Fleetwood's objections to such documents, Fleetwood will work with Plaintiffs to insure that such photographs or videotapes are not introduced.]

> **7.    Demonstrative evidence materials, animation and others.**

Fleetwood objects to the animation provided to it by Plaintiff as Exhibit 127, on the grounds that it depicts incomplete and inaccurate information, is misleading and confusing to the jury, and is unfairly prejudicial to Fleetwood under Federal Rule of Evidence 403.  The Court has directed that all demonstrative exhibits be exchanged by the parties by December 3, 2009 (Doc. Rec. 7605).  Fleetwood will work with Plaintiff's counsel in an effort to work out objections to this animation, to the other demonstrative exhibits listed on Exhibit A hereto, Exhibits 130, 131 and 232, and to any other demonstrative exhibits presented to it by the Plaintiff by December 3, 2009.

> **8.    "All testing documents":  Exhibit 129.**

Plaintiff includes as Exhibit 129 on Exhibit A an exhibit entitled "Results of all testing and inspection of the Fleetwood/Dubuclet unit including, but not limited to, air sampling, temperature, humidity, and photographs thereof".  Because of this vague description, Fleetwood does not know what this exhibit actually refers to.  Fleetwood does not object to the introduction of the testing data from the W.D. Scott tests of the Dubuclet unit, or to the photographs or videotapes taken at the time. Nor does it object to the introduction of the test data from its testing expert Tony Watson or to the photographs or videotapes taken of the unit and the testing at the

time. But  Fleetwood objects to the introduction of any photographs or materials relating to

"other testing" or the broken vial referenced in Paragraph 6, *supra*, for the reasons stated in that

paragraph of  this memorandum.   [Fleetwood is not attaching any exhibits here as it does not

object to known testing data and information.  If there is other testing information to which

Plaintiff refers, Fleetwood has not been provided such information.]

> **9.      RADCO testing documents:  Exhibit 144, also Exhibit 114 (as Exhibit 2 to Michael Zieman deposition).**

Fleetwood does not object to the introduction of these RADCO testing documents

identified as FLE-00006624 – FLE-00006897; however, Fleetwood notes that Plaintiff has

repeatedly attempted in discovery to examine Fleetwood and other witnesses on these RADCO

documents without satisfying the requirements of Federal Rule of Evidence 602.  Fleetwood

reserves it right to object to the use of these documents with witnesses who have no personal

knowledge of them.

> **10.     Certain Exhibits referring to issues relating only to manufactured housing units of Fleetwood.**

Fleetwood objects to Plaintiff introducing the following exhibits, which are all emails

related to manufactured housing issues, and not travel trailer issues:

- Exhibit 150 (FLE-00000797 – FLE00000801) an October 11, 2005 email from Farish to

  various individuals in Fleetwood's Manufactured Housing Division relating to floor

  decking;

- Exhibit 153 (FLE00000621), an email from Bill Farish to Dick Reinhard on September

  26, 2005 regarding the number of units (3,000) that must be delivered by the end of

  November 2005;

- Exhibit 154, (FLE00000622) an email from Bill Farish to Dick Reinhard on September 23, 2005 regarding interpretation of FEMA specifications, DAPIA drawings and inspection of units; and

- Exhibit 156, (FLE00000733 – FLE00000744) an email from Ted Gugliotta on October 25, 2005 regarding weight of units and tire blow out issues.

[Fleetwood is attaching copies of these four exhibits.]

Fleetwood objects to the introduction of each of these emails on the grounds that all of these emails exclusively relate to manufactured housing issues and not to travel trailers. All of the individuals listed on the emails were employees of Fleetwood's Manufactured Housing Division. In addition, only Exhibit 150 even deals with wood products at all. As such these emails are not relevant and should be excluded under Federal Rule of Evidence 403.

With respect to Exhibit 150, Plaintiff seeks to introduce this exhibit, which discusses Fleetwood's need to be prepared for shortages of some wood products, in an effort to show that Fleetwood in fact experienced shortages and substituted products during production of FEMA units following Katrina. This document should not be admitted for that, or any other purpose, as first it related to manufactured housing products and not to travel trailer products and second because there is absolutely no evidence that Fleetwood experienced product shortages or substituted products the construction of the travel trailers. See Fleetwood's motion in limine on this issue. Rec. Doc. 7215. Briefly, Charles Reick, Fleetwood's Director of Materials, testified unequivocally that Fleetwood on occasion had to buy different sizes of its wood products during the FEMA production but never was without its normal wood products and never substituted different wood products. Deposition of Charles Reick, taken on October 6, 2009, attached hereto Exhibit B, pp. 70-72. Danny McBride, Plant 40 Production Manager, also specifically testified

that Plant 40 -- the plant that manufactured the Dubuclet unit -- never experienced a shortage of wood products or made any substitutions of materials in the units it manufactured.  *See* Deposition of Danny McBride, taken on November 6, 2009, attached hereto as Exhibit C, pp. 91-94, 96-97. Plaintiffs also examined former Fleetwood employee Steven Smith, who at the time of the production of units for FEMA post-Katrina was the Vice President Western Division for Fleetwood's Manufactured Housing Division, about this email (Exhibit 150).  Mr. Smith testified that Mr. Farish's email was written to address the possibility of a need for materials substitution if circumstances made that necessary, but that his "recollection is that we did not have to [make this substitution]."  Deposition of Steve Smith, taken on November 3, 2009, attached hereto as Exhibit D, pp. 111-114.  This email should not be admitted as it is not relevant to any issue, is misleading and confusing to the jury.

11.     **Fluor materials:  Exhibits 158 – 161.**

Despite withdrawing all Fluor witnesses from the Trial Plan, Plaintiff lists Exhibits 158 to 161, which are various Fluor manuals and other Fluor documents.  Fleetwood reserves the right to object to these Fluor documents to the extent that Plaintiff cannot lay a proper foundation for same and to the extent that she attempts to use these documents in abrogation of Federal Rule of Evidence 602.  [Fleetwood is not attaching to its memorandum any of the exhibits listed in this category as the Court is familiar with them, their descriptions on Plaintiffs Exhibit List are clear and the individual exhibits are voluminous.  *See* attached Exhibit "A," Plaintiff's Amended Exhibit List.]

12.     **FEMA Storage Site Duties/Responsibilities regarding Fleetwood and Morgan:  Exhibit 162 (FLE-00001943 – FLE-00001945) and Exhibit 170.**

Plaintiff lists as Exhibit 162 (and also as Exhibit 170) a document prepared by Fleetwood employee Doug Henriquez.  Fleetwood objects to the use or introduction of this document on the

grounds that it lacks relevance.  As Morgan employee James Schilligo testified in his deposition

on October 9, 2009, this document was drafted by Mr. Henriquez in the summer of 2005, prior to

Katrina, and contains proposed procedures for handling Fleetwood units sold to Morgan for use

as EHUs by FEMA, however, Henriquez had never run this storage process before, while

Morgan had, and Mr. Schilligo "rejected it before the Katrina/Rita response." It was never

utilized.  James Schilligo Dep. October 9, 2009, at 94:7 – 25 to 95:1 – 19.  As such, the

document lacks any relevance and should be excluded under Federal Rules of Evidence 402 and

403.  [Fleetwood is attaching a copy of this exhibit and the referenced excerpts from Mr.

Schilligo's deposition are attached as Exhibit E.]

13.     **Exhibits 186 to 192, various emails involving Christopher DeRosa.**

Fleetwood objects to these emails on the grounds that their purpose is to establish

some evidence of a conspiracy by FEMA lawyers with respect to FEMA's response on the

formaldehyde issues.  FEMA is not a defendant in this case.  Introduction of this information is

irrelevant to any issue in the case, the emails contain hearsay, are misleading and confusing and

will prejudice Fleetwood.  Federal Rules of Evidence 402, 403, 802. [Fleetwood is not attaching

to its memorandum any of the exhibits listed in this category as the Court is familiar with them,

their descriptions on Plaintiffs Exhibit List are clear and the individual exhibits are voluminous.

*See* attached Exhibit "A," Plaintiff's Amended Exhibit List.]

14.     **Email chain of July 2006, regarding "chemicals notice":  Exhibits 118, 119, 202.**

Plaintiff seeks to introduce an email chain initiated by FEMA employees in July 2006

and responded to by a Fleetwood employee (the email is Exhibit 202 but is also found as an

exhibit to the depositions of Jessica Guay, whose "deposition exhibits" Plaintiff has collectively

listed as Exhibit 118 and as an exhibit to the deposition of FEMA employee Rene Rodriguez,

whose "deposition exhibits" Plaintiff has collectively listed as 119.)  Fleetwood has filed a motion in limine seeking to exclude this email chain and all testify relating thereto.  Rec. Doc. 7279.  The email chain indicates that an occupant of a FEMA unit, manufactured by Fleetwood, was seeking information about what "chemicals" were in his unit because of some label apparently posted on the unit. But this label, photographed by a FEMA field person, which was apparently attached to the original email chain in question, is no longer attached to the email chain and is not part of the record.  The email from Guay references an alleged notice in an EHU, but not the Dubuclet EHU. No one knows what the actual notice is that is being discussed, or even whether "formaldehyde" was included in the notice. No one knows what Guay looked at to respond to the emails or where her content came from.   Plaintiff simply cannot lay the foundation for that email. Without the actual notice, it has no bearing on this case. As Fleetwood stated in its motion in limine seeking to exclude this email chain, Leidig speculates that he might have contacted Guay because it was a unit from California. The Dubuclet unit was manufactured in Texas. There is no foundation to assume or even speculate that the label that this email chain discusses is a label that was in the Dubuclet unit. Without the adequate foundation, Guay's email and the entire email chain refer to nothing.  [Fleetwood is attaching a copy of the email stream at issue, FEMA17-005860]

**15.    Photographs of skin conditions of family members other than Timia Dubuclet, Exhibits 212.**

Fleetwood objects to introduction of photographs of allegedly depicting skin conditions of family members of Timia Dubuclet on the grounds that same lack relevance, will mislead and confuse the jury.  Federal Rules of Evidence 402 and 403.   This case is about the medical claims of Timia only and not her family members' claims. In fact the parties included in their Joint Stipulation of Fact No. 23 that other family members' claims would be handled separately.

Fleetwood has pending a motion in limine to exclude all reference to other family members' medical claims or conditions, Rec. Doc. 7193. [Fleetwood is not attaching copies of these photographs.]

**16.    Documents relating to the issue of doctor licensure as it related to Plaintiff's expert Miller and Fleetwood expert Wedner:  Exhibits 223, 224**

Plaintiff lists as exhibits Dr. Miller's temporary medical license (Exhibit 223) and the instructions for obtaining a temporary medical license in Louisiana (Exhibit 224).  Plaintiff seeks to introduce this information to suggest to the jury that Dr. Wedner has acted improperly in the case in conducting an IME on Timia Dubuclet. The Court has ruled that Plaintiff may elicit from Dr. Wedner that he is not a Louisiana-licensed doctor, but that no further discussion on that issue may be had before the jury.  Rec. Doc. 5306.  These exhibits should be excluded as they are simply another attempt, despite this Court's ruling, to raise this issue regarding Dr. Wedner. [Fleetwood is attaching a copy of Exhibits 223, 224.]

**17.    Exhibits 227, 228, 229, MSDS sheet from Louisiana Pacific, Owens Corning.**

Fleetwood objects to these documents on the grounds that there is no evidence that Fleetwood purchased products from this manufacturer.  The exhibit is also cumulative of other MSDS sheets (Exhibits 225, 226) from other wood manufacturers from whom Fleetwood did purchase products.  [Fleetwood is not attaching these documents.  They are simply MSDS sheets but not applicable to Fleetwood.]

**18.    Exhibit 233, Forensic Economics Corporation Report regarding the Life Expectancy and Worklife Equivalent of Timia Dubuclet.**

Fleetwood objects to Exhibit 233 on the grounds of lack of foundation and lack of relevance.  There is no evidence in this case of probable future lost wages or any need for medical monitoring. [Fleetwood is attaching a copy of Exhibit 233.]

11

**19.     Exhibits 237-242 relating to Dr. Wedner materials.**

Fleetwood has not had the opportunity to review and analyze the materials listed in

Plaintiff's Exhibits 237–243, which include Dr. Wedner's employment contract with Washington

University School of Medicine (Exhibit 237) and various materials allegedly generated by Dr.

Wedner, including billings to the Formaldehyde Council, to "other manufacturers", to Gulf

Stream in the *Alexander* case, and including other publications (Exhibits 238 -242).  Fleetwood

objects to Exhibit 237 on the grounds that Dr. Wedner's employment arrangement with

Washington University has no relevance to his qualifications or opinions in this case. Federal

Rule of Evidence 402.  Because Fleetwood has not yet seen or reviewed these materials, it

objects to each of these exhibits on the grounds of lack of relevancy, but will review these

documents when they are available and will confer with Plaintiff's counsel immediately and

notify the Court if it has specific objections to any of this group of documents.  The Plaintiff has

issued a Subpoena requesting the production of these documents.  To date, requested documents

have not been produced or provided to Fleetwood.

**20.     Exhibit 243 relating to Formaldehyde Council (Dr. Cole/Dr. Mandell)
           materials.**

Fleetwood has not had the opportunity to review and analyze the materials listed in

Plaintiff's Exhibit 243 but objects to these materials, as described, on the grounds that Fleetwood

is not a member of the Formaldehyde Council and none of these materials would be relevant to

Fleetwood knowledge.  Federal Rule of Evidence 403.  .  The Plaintiff has issued a Subpoena

requesting the production of these documents.  To date, requested documents have not been

produced or provided to Fleetwood.

**Conclusion**

For the reasons stated herein, Fleetwood objects to the listed exhibits on Plaintiffs'

amended Exhibit List, attached hereto as Exhibit A.

Respectfully submitted:

*/s/ Richard K. Hines, V*
Richard K. Hines, V
GA Bar No. 356300
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)

Jerry L. Saporito
LA Bar No. 11717
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-1701
(504) 585-7500 (phone)
(504) 585- 7775 (fax)

Counsel for Fleetwood Enterprises, Inc.

## C E R T I F I C A T E OF SERVICE

I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )   Hand Delivery                    ( )   Prepaid U.S. Mail

( )   Facsimile                        ( )   Federal Express

(X)   CM/ECF

New Orleans, Louisiana, this 23rd day of November 2009.

 */s/ Richard K. Hines, V*
Richard K. Hines, V
Georgia Bar No. 356300
richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)