UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | | |
|---|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | | MDL NO. 1873 SECTION: N(5) |
| This Document Relates to: | | * * | | |
| This Document Relates to: *Dubuclet v. Fleetwood Enterprises, Inc.* | | * * * | | JUDGE: ENGELHARDT |
| Case No. 07-9228 | | * * * | | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT FLEETWOOD ENTERPRISES, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE CERTAIN COMMENTS FROM THE JURY**

Fleetwood herein replies to each of Plaintiff's responses (Rec. Doc. 7634) to Fleetwood's motion *in limine* to exclude certain comments from the jury (Rec. Doc. 7278) as follows:

**1.     Reference to impact on jurors or others as taxpayers.**

Plaintiff would have this Court believe that this type of inflammatory statement is somehow allowable in closing argument. However, as explained by Fleetwood, there are certainly limitations as to proper summations to be made in closing arguments. Plaintiff's appeal to jurors as taxpayers is precisely the type of argument prohibited by the golden rule. Jurors are not to decide the case based on their personal involvement in the subject matter; they are to decide the case based on the evidence presented to them. Moreover, Plaintiff ignores the fact that following closing arguments, this Court expressed its concern with this appeal to the jurors:

THE COURT:  I think that the nature of the rebuttal
of the closing argument was dangerously close to the edge of
being improper.  And I suppose we're going to find out whether
it crossed the line of propriety by the way of post-trial
motions.

I instructed counsel yesterday -- which I
shouldn't even need to instruct counsel -- to argue the
evidence.  Argue the evidence.  And I think we departed from
that in rebuttal; and, yes, I am concerned about it.  But we'll
see what the jury does with this.  Your objection is so noted
and the issue will be briefed, I would think, appropriately,
after trial.[1]

2.      **Reference to residents of FEMA EHUs as "victims."**

Plaintiff wishes to refer to herself as a "victim," because "Plaintiff was injured or harmed by living in a condition where she was exposed to formaldehyde on a daily basis."[2] But this statement improperly presupposes that the jury will find Fleetwood liable. Fleetwood further points out that it is particularly objecting to juxtaposing Plaintiff as a "victim of Katrina" and a "victim of Fleetwood." Such a juxtaposition, equating Fleetwood with a natural disaster, unduly prejudices Fleetwood, and any such reference, whether in argument or testimony, should be excluded.

3.      **Reference to shortages or substitutions of products in FEMA units.**

Contrary to Plaintiff's assertion, Fleetwood is not seeking a motion for summary judgment as to this issue.  However, there is no evidence on record that Fleetwood actually experienced any shortages or substitutions of products in any of its travel trailers, much less a travel trailer produced in Plant 40, and most importantly, there is certainly no evidence of such

---

[1] In Re: FEMA Trailer Formaldehyde Prods. Liab. Litig., Day 9 Tr, pp. 82-83, excerpts attached hereto as Exhibit A.
[2] Pl.'s Resp. at 3 (Rec. Doc. 7634).

2

shortage or substitutions in the one travel trailer that matters in this bellwether case -- the unit utilized by the Dubuclets. For Plaintiff to imply otherwise at trial is unduly prejudicial to Fleetwood. The email attached by Plaintiff as Exhibit A demonstrates exactly why Fleetwood's motion is warranted -- it refers to speculation within the manufactured housing division. (Rec. Doc. 7634-2). Plaintiff should not be allowed to reference such irrelevant evidence that could very easily confuse the jury.

**4.       Reference to glass debris found in the Dubuclet unit.**

As Fleetwood stated previously, the glass debris from a supposed test is irrelevant, particularly given that it is not relied upon as a basis for any expert's opinion. Scott merely noted his observation that glass debris was found, that it appeared to be similar to a glass envelope used in tube sampling, but he does not know anything else about alleged testing.

**5.       Reference that Fleetwood was "plagued" by formaldehyde problems.**

Plaintiff attempts to support her position that it is permissible for Smulski to testify that the manufactured housing industry has been "plagued" with formaldehyde gas problems by pointing to a nonchallenge to that particular language in the Alexander case, and that the Court's order regarding Smulski (Rec. Doc. 2800) permitted this testimony. It is inappropriate to interpret the Court's order as blessing this language from Smulski when the language was not challenged. Moreover, although Smulski did not use the word "plagued" at the Alexander trial, even his attempts at discussing the "HUD Code Manufactured Housing" and the "first formaldehyde problem that happened . . . in the 1970s and 1980s" were rejected by this Court:

Q. THESE MECHANICAL VENTILATION SYSTEMS THAT PULL FRESH AIR IN AND EXPEL POLLUTED AIR OUT, THOSE WERE AROUND IN 2004?

A. YES, THEY WERE. AND, IN FACT, IN HUD CODE MANUFACTURING HOUSING, THEY HAVE BEEN A REQUIREMENT SINCE 1984 AS A RESULT OF THE FIRST FORMALDEHYDE PROBLEM THAT HAPPENED IN HUD CODE MANUFACTURED HOUSING IN THE 1970S AND 1980S.

MR. WEINSTOCK: OBJECTION, YOUR HONOR.

MR. WATTS: LET'S MOVE ON -- WELL, I THINK IT'S RELEVANT FROM THE STANDPOINT OF SHOWING THE FEASIBILITY OF THE MECHANICAL VENTILATION SYSTEM. BUT I'LL MOVE ON.

THE COURT: I'M GOING TO SUSTAIN THE OBJECTION, BUT I'LL MARK IT SO THAT IT CAN BE COVERED UNDER CROSS SINCE IT WAS ALREADY TESTIFIED, AND I'LL ALLOW YOU SOME LATITUDE TO COVER IT ON CROSS, IF YOU CHOOSE TO.

BY MR. WATTS:
Q. YEAH, LET'S -- DON'T TALK ABOUT THE REASONS THAT ARE THERE RIGHT NOW UNLESS HE ASKS YOU ABOUT IT, BUT LET ME JUST GET A DIRECT ANSWER. IN 2004, IN HUD HOUSING, FOR EXAMPLE, IN LARGER MOBILE HOMES, DID THEY HAVE MECHANICAL VENTILATION SYSTEMS?

A. YES, THEY DID.[3]
\*\*\*\*\*\*\*\*\*\*\*\*\*
Q BECAUSE YOU'RE GIVING US AN OPINION ON THEORETICALLY WHAT MIGHT BE WRONG WITH THIS TRAVEL TRAILER IF IT'S USED IN A CERTAIN WAY, CORRECT?

A. I AM TELLING YOU WHAT THE EXPERIENCE WITH FORMALDEHYDE PROBLEM HAS BEEN IN HUD CODE MANUFACTURED HOMES IN THE 1980S AND WE HAVE TODAY THE IDENTICAL PROBLEM OCCURRING FOR THE IDENTICAL REASON AND THE REASON THE GOVERNING PRINCIPLE --

---

[3] In Re: FEMA Trailer Formaldehyde Prods. Liab. Litig., Day 5 Tr. at 56:22-57:17, excerpts attached as Ex. B.

>MR. WEINSTOCK:  OBJECTION, YOUR HONOR.  THAT'S COMPLETELY NONRESPONSIVE.
>
>THE COURT:  ANSWER THE QUESTION.  IF YOU'RE NOT GOING TO ANSWER THE QUESTION, THEN WE'RE GOING TO STOP AND YOU'LL HAVE TO STEP DOWN AND WE'LL DISREGARD YOUR TESTIMONY.  SO LISTEN CAREFULLY AND ANSWER THE QUESTION THAT'S ASKED.  THERE WILL BE AN OPPORTUNITY FOR REDIRECT AFTER MR. WEINSTOCK FINISHES.  SO LISTEN VERY CAREFULLY TO THE QUESTION.
>
>THE WITNESS:  YES, YOUR HONOR.[4]

Just as the objection to Smulski's testimony regarding the "first formaldehyde problem" and the admonishment that Smulski received after providing nonresponsive testimony, again trying to reference the "problem" with manufactured homes in the 1970s and 1980s, so should Fleetwood's motion here be granted.  Smulski is attempting to characterize Fleetwood as experiencing a "plague."  Plaintiff admits that Smulski is referring to the manufactured housing industry, and not Fleetwood itself,[5] but it then becomes even more critical to not allow Smulski to testify to this because Plaintiff is using it to infer that Fleetwood, too, was "plagued" by such problems.  For these reasons, this testimony should be excluded.

**6.     Reference to Dr. Wedner's practicing without a Louisiana medical license.**

Although Plaintiff reurges her many previous motions seeking to cast aspersions on Dr. Wedner (*See* Rec. Doc. 7634, pp. 5-6),[6] this Court recently cautioned counsel that Plaintiff is limited to eliciting from Dr. Wedner only whether he is licensed to practice medicine in Louisiana.  Fleetwood maintains that to ask any questions which would imply criminal actions or

---

[4] In Re: FEMA Trailer Formaldehyde Prods. Liab. Litig., Day 5 Tr. at 80 :10-25, excerpts attached as Ex. B.
[5] Pl.'s Resp. at 5 (Rec. Doc. 7634).
[6] It is in fact interesting to note that, despite these many vitriolic motions, PSC has recently asked Dr. Wedner to travel to New Orleans to conduct his Rule 35 medical examination of the Recreation by Design bellwether plaintiff.

misconduct of Dr. Wedner with respect to his medical licensing in Louisiana would be improper, irrelevant, and unduly prejudicial.

This 23rd day of November 2009.

Respectfully submitted:

 /s/ Richard K. Hines, V
Richard K. Hines, V
GA Bar No. 356300
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)

Jerry L. Saporito
LA Bar No. 11717
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre
1100 Poydras St.
New Orleans, LA 70163-1701
(504) 585-7500 (phone)
(504) 585- 7775 (fax)

Counsel for Defendant Fleetwood Enterprises, Inc.

## **C E R T I F I C A T E OF SERVICE**

      I hereby certify that a copy of the foregoing has this date been serves on all counsel of record in this proceeding by:

( )    Hand Delivery                   ( )    Prepaid U.S. Mail

( )    Facsimile                         ( )    Federal Express

(X)    CM/ECF

      New Orleans, Louisiana, this 23rd day of November, 2009.

                                  */s/ Richard K. Hines, V*
                                  Richard K. Hines, V
                                  Georgia Bar No. 356300
                                  E-mail: richard.hines@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW
Suite 1700
Atlanta, GA 30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)