**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE | * | MDL NO. 1873 |
|       PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION "N" (5) |
| THIS DOCUMENT RELATES TO:  07-9228 | * | |
| | * | JUDGE ENGELHARDT |
| *Elisha Dubuclet on behalf of her minor child, Timia* | * | |
| *Dubuclet vs. Fleetwood Enterprises, Inc.* | * | MAGISTRATE CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFF'S RESPONSE TO FLEETWOOD'S OBJECTIONS TO CERTAIN EXHIBITS

Plaintiff responds to Fleetwood's Objections to Certain Exhibits as follows:

**1.  Exhibits referencing political proceedings.**

Plaintiff withdraws exhibits 7, 8, 14, 16, 17, 176, 182, 185, and 199.

Exhibit 196 is "The FEMA Interim Direction Use of Temporary Housing Units".  This exhibit is admissible as it is relevant to show an alternative design, i.e., to prove it was possible to design and build a temporary housing unit with lower formaldehyde levels.  Furthermore, the document was not drafted or issued as any part of a political proceedings, and thus does not fall within the Court's order granting Fleetwood's *motion in limine* (Rec Doc. 7684).

Exhibit 198 is "Travel Trailer Requirements" and it is admissible as it shows what specifications FEMA gave to Fleetwood for the provisions of temporary housing units. Furthermore, the document was not drafted or issued as any part of a political proceedings, and thus does not fall within the Court's order granting Fleetwood's *motion in limine* (Rec. Doc. 7684).

Exhibit 201 is "Fact Sheet: Assessment of Health Complaints Among Children Living in FEMA Temporary Housing Units in Hancock County, Mississippi". This document was not drafted or issued as any part of a policy proceeding. Instead, just as the Health Consultation and numerous other relevant documents, this document was published by a federal agency, not by any Congressional body. Accordingly, this document does not fall within the Court's order granting Fleetwood's *motion in limine* (Rec. Doc. 7684).

2. **Exhibits referencing ambient air standards being discussed for promulgation or promulgated after September 2007, the date the Dubuclets moved out of the Fleetwood unit.**

Defendant object to exhibits 14, 16, 22, 196, 198 claiming they are related to ambient air standards passed after the Dubuclets moved out of the trailer and are excluded by the Court's previous Order (Rec. Doc. 3069). (Rec Doc. 7741, pp. 14-15).

Plaintiff withdraw Exhibits 14 and 16.

Defendant objects to Exhibit 22, which are the California Air Resources Board's (CARB) Standards. This document is relevant as Fleetwood was headquartered in California and California had their own product standards relating to formaldehyde. Defendant states the Court has granted Fleetwood's Motion in limine excluding evidence related to ambient air standards that post-dated the move out date of the Dubuclet from the Fleetwood unit, (Rec. Doc. 7684) and Defendant's Memo (Rec. Doc. 7741, p. 2). However, the Defendant fails to note that the California Standards issued a Draft Rule on May 2, 2006, and that the California

Air Resources Board approved the airborne toxic control measure as a product standard specifically to reduce formaldehyde emissions from composite wood products on April 26, 2007.  See www.arb.ca.gove/toxics/compwood/process.htm., last checked 11/24/2009.  The rule was not final until April 18, 2008, however, formaldehyde was designated as a toxic air contaminant in California in 1992 with no safe level of exposure.  Id. Thus, Fleetwood had notice of this when it was manufacturing the Dubuclet travel trailer.  The standard is also relevant to alternative design.

As a secondary reason why Exhibit 22 should not be excluded, Plaintiff would point out the Defendant specifically requested, and was granted, a Motion excluding subsequently pass *ambient* air standards.  See Rec. Doc. 2887-2, p. 9 and Rec. Doc. 3069, p. 2.  The California rule is not an ambient air standard, it is a product standard and therefore is not subject to exclusion based on the Court's prior ruling.  See Rec. Doc. 3069, p. 2 and Rec. Doc. 7684, P. 2.  Ambient air standards govern the aggregate amount of formaldehyde in a space that someone can be exposed to from all sources.  A product standard governs the amount of formaldehyde emitted from one specific product over a given period of time.

Exhibit 196 is "FEMA: Interim Direction on use of Temporary Housing Units" (Revision Effective: March 10, 2008).  This document should not be excluded as it does not include any ambient air standards, guidelines or exposure levels.   Rec. Doc. 2887-2, p. 2.  Exhibit 196 does discuss formaldehyde and methods to test trailers for formaldehyde, but it does not set forth any minimum risk levels or exposure levels

or guidelines for exposure that Defendant complained about in their initial Motion. Rec. Doc. 2887-2, pp. 1, 2, 8, 9.

Exhibit 198, "FEMA Travel Trailer Requirements", should not be excluded as it is not covered by the Court's prior ruling, 3069, as it does not include any discussion of ambient air standards, exposure levels or guidelines relating to formaldehyde.

3. **Learned Treatises.**

Plaintiff agrees with Fleetwood to the extent that Exhibits 32, 33, 34, 35, 36, 37, 38, 39, 40, 43, 44, 51, 52, 53, 54, 56, 57, 58, 60, 61, 62, 63, 64, 65, 66, 67, and 200 are learned treatises pursuant to Federal Rule of Evidence 803(18), and accordingly are precluded from being admitted into evidence as exhibits.  Plaintiff reserves the right, however, to rely on these treatises during the direct or cross-examination of any witness and to seek their admission into evidence by having the expert read the statements into evidence.

4. **Articles/Reports that lack relevance to any issue in this case and/or which include hearsay, and will be misleading and confusing to the jury, and prejudicial to Fleetwood.**

In a blunderbuss approach, Defendant claims that Exhibits 10, 33, 41, 42, 45, 46, 47, 48, 49, 59, 177, and 222 lack relevance, include hearsay, mislead the jury, confuse the jury, or are prejudicial.  Defendant does not lodge a specific complaint to each of these exhibits, nor does defendant specifically state what language in each document is objectionable.  Defendant merely makes general allegations of all the documents.  Plaintiff would show that Defendant has not met their burden to

establish that the document are indeed objectionable, therefore, their objections should be denied. Notwithstanding the same, Plaintiff withdraws exhibits 42, 45, 47, 48, 59, 177, and 222. Each of the remaining exhibits in this category will be discussed in sequence.

Exhibit 10 is US EPA "Indoor Air Quality Basic Information for Formaldehyde" - Last Updated November 14, 2007. This document is not hearsay as it is a public record under Federal Rule of Evidence 803(8) and further constitutes a learned treatise under Federal Rule of Evidence 803(18). The document sets forth information on formaldehyde, its uses, sources, health effects, and additional resources. The document is relevant to the issues at bar. The document is not prejudicial, and would not confuse or mislead the jury.

Exhibit 33 is July 20, 2007, "Formaldehyde and FEMA Trailers" by Lee Shull, Ph.D. Lee Shull, Ph.D. is the principal toxicologist and risk assessor with Environmental Resources Management in Sacramento California and a former tenured professor of toxicology at the University of California, Davis. See Footnote 1, to Exhibit 33. This document is not hearsay as it is a learned treatise under Federal Rules of Evidence 803(18). The document is relevant. The document is not prejudicial, and would not confuse or mislead the jury.

Exhibit 41 is "FEMA media release: FEMA Awards Contracts for Low Emissions Travel Trailers - April 7, 2009 - Release No. HQ-09-034b." This document is not hearsay as it is public record under Federal Rule of Evidence 803(8). Although Defendant did not raise the issue, Plaintiff is willing to have the new FEMA

ambient air standard for travel trailer redacted from the document before it is entered into evidence. The document is relevant to proof of alternative design. Furthermore, the document is not prejudicial, and would not confuse or mislead the jury.

Exhibit 46 is "Fact Sheet: Airborne Toxic Control Measure (ATCM) to Reduce Formaldehyde Emissions from Composite Wood Products." This is a document from the Air Resources Board of the California Environmental Protection Agency. Fleetwood is headquartered in California. This document is not hearsay as it is public record under Federal Rule of Evidence 803(8). The document discusses the Airborne Toxic Control Measure product standard for formaldehyde that was approved by the California Air Resources Board in April 2007, at a time when the Dubuclets were still living in their trailer. Therefore, the document should not be excluded on the basis of the Court's prior ruling in Court Rec. Doc. 3069. The document is relevant to formaldehyde in composite wood products. Furthermore, the document is not prejudicial, and would not confuse or mislead the jury.

Exhibit 49 is "Formaldehyde Levels in FEMA-Supplied Trailers; Early Findings from the Centers for Disease Control and Prevention." This document was issued by FEMA and is not hearsay as it is a public record under Federal Rule of Evidence 803(8). The document is relevant as it sets forth findings of the Centers for Disease Control with regard to formaldehyde in travel trailers. Furthermore, the document is not prejudicial, and would not confuse or mislead the jury.

**5.      Plaintiff's expert reports and "files".**

Fleetwood objected to Exhibit 68, the "Affidavit of Lee E. Branscome, Ph.D., C.C.M." (DUB000254-DUB000271). Plaintiff and Defendant have jointly stipulated to the relevant weather data, specifically the weather data as contained in Dr. Branscome's Affidavit. (See Joint Stipulations Rec. Doc. 7167) Therefore, Plaintiff contends the parties have agreed that this information and the supporting weather data contained in Exhibit 68 is appropriate evidence for the jury to consider pursuant to the stipulation of the parties.

Exhibit 71 is the Affidavit of Mary C. DeVany, M.S., C.S.P., C.H.M.M. Plaintiff has indicated that Mrs. DeVany will not be called to testify in this matter and, therefore, withdraws Exhibit 71.

Exhibits 75, 76, 77, and 79 are the Affidavits of Dr. Paul Hewett, Ph.D. and his reliance materials supporting his Affidavit. Plaintiff intends to call Dr. Hewett who will testify consistent with and will rely on, his Affidavit and supporting reliance materials.

Exhibits 83 and 85 are the Affidavit of Dr. Kenneth Laughery and his supporting reliance materials. Plaintiff will introduce only that testimony or evidence which is consistent with this Honorable Court's ruling in Rec. Doc. 7533.

Exhibits 86, 88, and 89 are the Affidavit of Alexis Mallet and his supporting photographs, thermographs, and drawings from his personal inspection of the actual Dubuclet travel trailer manufactured by Fleetwood. This inspection was allowed by this Honorable Court. Mr. Mallet will testify utilizing these materials

obtained or created during this inspection.  He will lay a proper foundation for the introduction of these materials and it will be properly authenticated at that time.

Exhibits 90 and 92 and Exhibits 94 through 101 are the Affidavits and supporting materials of Dr. Lawrence Miller, M.D., M.P.H., and William Scott, P.E., C.H.M.M., respectively.  These expert witnesses will lay a proper foundation for the introduction of these materials and it will be properly authenticated at that time.

Exhibits 93 and 95 are the Affidavit and supporting reliance material of Charles David Moore.  Mr. Moore personally inspected the Dubuclet trailer.  Plaintiff will not call Mr. Moore to the stand at trial, but do not withdraw Mr. Moore's Affidavit and supporting reliance materials since other experts may rely on this information.

6.  **Photographs/videos that depict an alleged "broken test vial" in the Dubuclet unit.**

Plaintiff responds that Plaintiff will agree not to introduce any photographs of the broken glass testing vial found in the Dubuclet unit if Defendant will confirm that Defendant did not test and, further, knows of no testing performed on this unit other than the testing on July, 2008 by Plaintiff and August, 2008 by Defendant.  With that confirmation or stipulation by Defendant, Plaintiff will withdraw any photographs of this vial found in the Dubuclet unit.  Plaintiff reserves the right to utilize any other photograph listed that does not contain close ups of the broken glass testing vial in the unit.

7.  **Demonstrative evidence materials, animation and others.**

   Plaintiff will fully comply with this Court's deadlines for demonstrative evidence and will exchange all demonstrative exhibits by December 3, 2009. (Doc. Rec. 7605)

   With regard to Exhibit 127, Plaintiff will withdraw this animation as an exhibit but reserves the right to utilize it as demonstrative evidence in this matter.

   With regard to Exhibit 130, Plaintiff contends that this dosimeter (or testing badge), utilized by Plaintiff and Defendant in this matter, is appropriate evidence that the jury should be allowed to see and consider when deciding this matter. It is instructive and will help the jury understand the evidence.

   Exhibits 131 and 232 are withdrawn as exhibits but Plaintiff reserves the right to utilize these exemplar panels and parts of a travel trailer as demonstrative evidence and to question witnesses accordingly.

8.  **"All testing documents": Exhibit 129.**

   Plaintiff will introduce the testing data of William D. Scott, P.E., C.H.M.M., of the Dubuclet unit and photographs and videotapes taken during his personal inspection of this Fleetwood travel trailer. Plaintiff has agreed to withdraw any evidence with regard to the broken glass testing vial found by Mr. Scott in the Dubuclet unit.

9.  **RADCO testing documents: Exhibit 144, also Exhibit 114 (as Exhibit 2 to Michael Zieman deposition).**

   RADCO performed certain testing with regard to formaldehyde for Fleetwood.

Defendant states that it does not object to the introduction of these RADCO documents, Exhibits 144, and 114.  See Court Rec. Doc. 7741, p. 16.  Their objection is that a witness should not be questioned about the exhibit without satisfying Federal Rule of Evidence 602.  Since this is an objection to the use of the document rather than its admissibility, such objection is best dealt with at trial and no further response is necessary at this time.  These documents should be admitted into evidence.

**10.  Certain Exhibits referring to issues relating only to manufactured housing units of Fleetwood.**

Plaintiff contends that certain exhibits relating to issues with respect to Fleetwood' manufactured housing division are indeed very relevant to the case at bar with respect to the Dubuclet travel trailer**.**  Fleetwood's manufactured housing division was aware of the toxic effects of formaldehyde as far back as the 1970's or earlier.  Plaintiff will show that the travel trailer division of Fleetwood either knew or should have known of the dangers of formaldehyde in Fleetwood travel trailers as a result of Fleetwood's research on formaldehyde by its manufactured housing division.

Further, Exhibit 150 with regard to potential shortages of composite wood products with respect to Fleetwood's manufactured housing division are relevant concerning Fleetwood's knowledge about shortages of composite wood products in general which Plaintiff contends is also relevant to its travel trailer division.  Emails such as Farish's email to Fleetwood's manufactured housing division are relevant, including parts such as:

> "The word from our suppliers is that we will have to be prepared to use any and all types and brands of floor decking during our <u>crash</u> FEMA production.  This means we will probably be <u>violating</u> our long-standing practice of avoiding the use of particleboard for homes going to the Gulf Coast."  (emphasis added) (FLE0000798) (Exhibit 150)

Exhibit 150 must be read in conjunction with Exhibit 151 (FLE0000621) which is also relevant.  In this email, Farish states:

> "We have to have all 3,000 [units] shipped by end of November!"

These emails show the lack of inventory, the rush to meet deadlines and the willingness of Fleetwood to <u>violate</u> its long-standing practice of avoiding the use of particleboard for homes going to the Gulf Coast.

Exhibit 154 (FLE0000622) is an email from Farish which states:

> "Our production rates are going to put enough pressure on your staff...."

These emails show the context and time frame in which Fleetwood was manufacturing FEMA units, such as the Dubuclet unit, i.e., under "pressure", and willing to knowingly violate its own safety policies.

Plaintiff contends that these emails are relevant to Fleetwood's manufacturing process and attitude with respect to safety.  Further, these exhibits are also relevant to alternative design.

Plaintiff withdraws Exhibit 156 since Fluor is not longer a Defendant in this matter.

## 11.   Fluor materials: Exhibits 158-161.

Now that Fluor is no longer a party to this litigation, Plaintiff withdraws exhibits 158 through 161.

12. **FEMA Storage Site Duties/Responsibilities regarding Fleetwood and Morgan: Exhibit 162 (FLE00001943 - FLE00001945) and Exhibit 170.**

  Defendant objects to the FEMA Storage site manual, two different versions of which have been marked on Plaintiff's Exhibit List as Exhibits 162 and 170.  These documents are relevant because they instruct the Fleetwood Manufacturing Plant to <u>not</u> provide warranty information or the Home Owner's Manual with their travel trailer and further instructs Fleetwood Storage Site staff to inspect the units for structural damage.

13. **Exhibits 186 to 192, various Emails involving Christopher DeRosa.**

  Plaintiff withdraws Exhibits 186 through 192 now that FEMA is no longer a party to this litigation.

14. **Email chain of July 2006, regarding "chemicals notice": Exhibits 118, 119, 202.**

  Exhibit 202 is an email from Jessica Guay regarding a Harmful Chemical Notice that was in a Fleetwood trailer deployed by FEMA after Hurricane Katrina.

  Exhibit 118 is the complete set of exhibits from the deposition of Jessica Guay which includes the email and a label that was supposedly in all the Fleetwood trailers.  Plaintiff agrees to withdraw Exhibit 119.  Defendant does not clearly set forth the basis of their objection as to an email chain regarding a harmful chemical notice.  Jessica Guay was employed by Fleetwood and, in the email string, she was responding to an inquiry, that was originally made by a resident in a travel trailer.  The email recounts that a trailer occupant has read a notice in the Fleetwood trailer about harmful chemicals and wants to know what the chemical are so they can tell their doctor.  The inquiry made it up the chain within Fleetwood where a response

was crafted by Jessica Guay, in Fleetwood's Owners Relations Department.

Guay responds by email that one of the chemicals is formaldehyde and describes formaldehyde health risks. This email string and the exhibits to the Guay deposition are relevant to the issue of the <u>notice</u> on behalf of Fleetwood of the hazards of formaldehyde in its travel trailers. Defendant contends that no one knows what the specific notice actually looked like or if the word "formaldehyde" appeared in the notice. Further they claim that without a copy of the actual notice it has no bearing in the case. Defendant is wrong. Plaintiff is not seeking to enter the particular notice, but the email string, that acknowledges Fleetwood's direct <u>knowledge</u> that there are harmful chemicals in the trailer including formaldehyde. The email is highly relevant to notice on behalf of Fleetwood and should not be excluded.

15. **Photographs of skin conditions of family members other than Timia Dubuclet, Exhibits 212.**

    Plaintiff agrees to withdraw photographs of other family members, but not photographs containing Timia Dubuclet.

    Further, Plaintiff reserves the right to use any and all photographs of Timia Dubuclet and her family as demostrative evidence in this matter.

16. **Documents relating to the issue of doctor licensure as it related to Plaintiff's expert Miller and Fleetwood expert Wedner: Exhibits 223, 224.**

    Exhibit 223 is the Temporary Medical License of Dr. Lawrence Miller, M.D. and Exhibit 224 is the Louisiana State Board of Medical Examiners Temporary Permit Qualifications under which Dr. Miller received his temporary medical

license.

Although this Honorable Court has ruled that the Federal Rules of Evidence control the admissibility of the testifying defense expert Dr. Wedner (Rec. Doc. 5306), it does not follow that Dr. Miller's compliance with Louisiana's temporary licensing procedure for Lawrence Miller, M.D. is not relevant for the jury to consider in evaluating Dr. Miller's background and credentials.  Defendant's argument that Plaintiff is attempting to use a back door to re-visit an issue that this Court has already rules against the Plaintiff is sheer sophistry.  Defendant's objections to exhibits 223 and 224 should be overruled.

**17.** **Exhibits 227, 228, 229, MSDS Sheet from Louisiana Pacific, Owens Corning.**

Although these exhibits were produced by Fleetwood, Plaintiff withdraws Exhibits 227, 228, and 229 upon Fleetwood's assurances that they are not relevant.

**18.** **Exhibit 233, Forensic Economics Corporation Report regarding the Life Expectancy and Worklife Equivalent of Timia Dubuclet.**

Defendant correctly points out that Plaintiff has not made a claim for future loss of wages or medical monitoring.  However, life expectancy and work life expectancy tables (Plaintiff's Exhibit 233) are relevant in projecting the length of time in which Plaintiff envisions or experiences her fear of cancer.  Fear of cancer is a cognizable claim asserted by the Plaintiff because of her exposure to formaldehyde which has been classified by IARC as a known human carcinogen.  Defendant's objection to Exhibit 233 should be overruled.  If this Court so chooses, the Court can take Judicial Notice of the Worklife and Life Expectancy tables in lieu of this exhibit.

**19.    Exhibits 237-242 relating to Dr. Wedner Materials.**

The financial arrangements that Dr. Wedner has with the Formaldehyde Council, other formaldehyde manufacturers, and Washington University are relevant in evaluating Dr. Wedner's "biases." Since Dr. Wedner has been designated as a defense expert, the jury should be permitted to follow the "money trail" and independently determine whether his receipt of money from companies that profit from the sale of formaldehyde may have a bearing on his testimony. Also, to the extent that Dr. Wedner's contract with Washington University addresses his work as an expert witness, these exhibits may also be a matter that the jury should be entitled to learn about. Accordingly, defendant's objection to Exhibits 237 through 242 should be overruled.

**20.    Exhibit 243 relating to Formaldehyde Council (Dr. Cole/Dr. Mandell) materials:**

Plaintiff does not have Exhibit 243 in her possession because she is awaiting production of the documents pursuant to a subpoena. However, to the extent that the exhibits relate to Philip Cole, M.D. and others who have worked on behalf of the Formaldehyde Council, the jury should be entitled to know about their involvement with this trade organization that has publicly criticized and funded public relations efforts designed to discredit peer reviewed studies of the effects of formaldehyde in inducing lymphohematopoietic cancers. See Youtube video and deposition of Dr. Philip Cole in Alexander and Dubuclet cases. See Cole deposition in Alexander, July 14, 2009 at 11-190 and Cole deposition in Dubuclet, October 27, 2009 at 83-203.

Respectfully submitted:

**FORMALDEHYDE TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:  /s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
gmeunier@gainsben.com


/s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com


**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
DENNIS REICH, Texas # 16739600
ROBERT BECNEL, #14072

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I electronically mailed the foregoing document to all counsel of record who are non-CM/ECF participants.

                                                */s/Gerald E. Meunier*
                                                GERALD E. MEUNIER, #9471