## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE | *    **MDL NO. 1873** |
|    PRODUCTS LIABILITY LITIGATION | * |
| | *    **SECTION "N" (5)** |
| | * |
| **THIS DOCUMENT IS RELATED TO:** | *    **JUDGE ENGELHARDT** |
| **Aldridge, et al. vs. Gulfstream Coach, Inc., et al.** | * |
| **Civil Action No. 07-9228** | *    **MAGISTRATE CHASEZ** |
| *(Elisha Dubuclet on behalf of her minor child, Timia* | * |
| *Dubuclet vs. Fleetwood Enterprises, Inc., et al.)* | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### REVISED JOINT PRE-TRIAL ORDER

1.  **PRE-TRIAL CONFERENCE**

    A Pre-Trial Conference in the above captioned matter occurred before this

Honorable Court on Thursday, November 19, 2009, at 9:00 a.m. at the United States District

Court for the Eastern District of Louisiana.

2.  **APPEARANCE OF COUNSEL**

    **FOR PLAINTIFF, ELISHA DUBUCLET, ON BEHALF OF HER MINOR CHILD,
    TIMIA DUBUCLET:**

    GERALD E. MEUNIER
    JUSTIN I. WOODS
    **PLAINTIFFS' CO-LIAISON COUNSEL**
    Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
    2800 Energy Centre, 1100 Poydras Street
    New Orleans, Louisiana 70163
    Telephone: (504) 522-2304
    Facsimile: (504) 528-9973
    gmeunier@gainsben.com
    jwoods@gainsben.com

    *-and-*

RAUL R. BENCOMO
Bencomo & Associates
639 Loyola Avenue, Suite 2110
New Orleans, Louisiana 70113
Telephone: (504) 529-2929
Facsimile: (504) 529-2018
ben_law@bellsouth.net

-and-

LINDA J. NELSON
Lambert & Nelson, PLC
701 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-1750
Facsimile: (504) 529-2931
lnelson@lambertandnelson.com

-and-

T. CHRISTOPHER PINEDO
Attorney at Law
802 N. Carancahua, Suite 2250
Corpus Christi, Texas 78470
Telephone: (361) 866-7444
Facsimile: (361) 866-7440
cpinedo@cpinedolaw.com

-and-

DENNIS C. REICH
Reich & Binstock
4265 San Felipe, Suite 1000
Houston, Texas 77027
Telephone: (713) 622-7271
Facsimile: (713) 623-8724
dreich@reichandbinstock.com

**FOR DEFENDANTS:**

ANDREW D. WEINSTOCK
**DEFENDANT MANUFACTURERS' LIAISON COUNSEL**
Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock, APLC
3838 N. Causeway Boulevard, 29th Floor
Three Lakeway Center
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Facsimile: (504) 837-3119
andreww@duplass.com

-and-

JERRY L. SAPORITO
AMANDA VONDERHAAR
Leake and Andersson, LLP
1100 Poydras Street, Suite 1700
New Orleans, Louisiana 70163
Telephone: (504) 585-7500
Facsimile: (504) 585-7775
jsaporito@leakeandersson.com
avonderhaar@leakeandersson.com

-and-

RICHARD K. HINES, V
TAYLOR T. DALY
Nelson, Mullins, Riley & Scarborough, LLP
Atlantic Station
201 17th Street NW, Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050
richard.hines@nelsonmullins.com
taylor.daly@nelsonmullins.com

*On Behalf of Fleetwood Enterprises, Inc. and any other related entity*

3.     **REPRESENTED PARTIES**

A.     **PLAINTIFF ELISHA DUBUCLET, ON BEHALF OF HER MINOR CHILD, TIMIA DUBUCLET**

Plaintiff Elisha Dubuclet, on behalf of her minor daughter, Timia Dubuclet, is a resident of the Parish of Orleans.

B.     **DEFENDANT, FLEETWOOD ENTERPRISES, INC.**

Defendant Fleetwood Enterprises, Inc., is a Delaware corporation with its principal place of business in Riverside, California.  Historically Fleetwood, through its manufacturing subsidiaries, built travel trailers, motor homes, and manufactured housing (mobile homes).  In 2005, as a result of hurricanes Katrina and Rita striking the Gulf Coast, FEMA issued construction specifications and ordered travel trailers as temporary housing for individuals whose residences were rendered uninhabitable by the hurricanes.  Between October 2005 and April 2006, Fleetwood, through its many travel trailers subsidiaries, built trailers in compliance with the FEMA specifications which were sold by it to a nonparty distributor Morgan Buildings & Spas, Inc., which in turn sold the units to FEMA.  The Dubuclet Fleetwood Unit here at issue was manufactured in Longview, Texas in March 2006.

4.     **JURISDICTION**

Jurisdiction is proper based on 28 U.S.C. § § 1332 (diversity of citizenship). Jurisdiction is not contested by Defendant.

5.    **PENDING MOTIONS**

     **As of November 30, 2009 at 12:00 p.m., the following motions remain outstanding:**

    A.    **PLAINTIFF:**

        1.    Plaintiff's Motion in Limine to Prohibit References to Formaldehyde in Food and Other Products (Doc. # 7282)

        2.    Plaintiff's Motion in Limine to Prohibit Narrative and/or Non-Responsive Testimony  (Doc. # 7287)

        3.    Plaintiff's Motion in Limine to Prohibit References to Trailer Testing Not Performed (Doc. # 7286)

        4.    Plaintiff's Motion in Limine to Exclude Evidence, Testimony, and Argument Regarding Other Lawsuits or Claims (Or Absence of Other Claims or Lawsuits) (Doc. # 7288)

        5.    Plaintiff's Motion in Limine to Prevent any Mention of the Revocation of Treating Physician Dr. George Farber's Medical License (Doc. #7285)

        6.    Plaintiff's Motion in Limine to Prohibit Reference to Unrelated, Non-Pled Claims (Doc. #7284)

    B.    **DEFENDANT, FLEETWOOD ENTERPRISES, INC.:**

        1.    Fleetwood Enterprises, Inc.'s Motion in Limine to Limit the Testimony of Marco Kaltofen, P.E. filed on November 9, 2009 (Doc. #6661)

        2.    Fleetwood Enterprises, Inc.'s Motion to Exclude the Testimony of Plaintiff's Expert Alexis Mallet, Jr. filed on November 9, 2009 (Doc. #6655)

        3.    Fleetwood Enterprises, Inc.'s Motion to Exclude Dr. Lawrence G. Miller's Testimony filed on November 10, 2009 (Doc. #6665)

        4.    Fleetwood Enterprises, Inc.'s Motion to Limit Ervin L. Ritter, P.E.'s Testimony filed on November 9, 2009 (Doc. #6658)

        5.    Fleetwood Enterprises, Inc.'s Motion to Exclude Dr. Edward H. Shwery's Testimony filed on November 9, 2009 (Doc. #6662)

6.   Fleetwood Enterprises, Inc.'s Motion for Partial Summary Judgment on Mental Anguish filed on November 9, 2009 (Doc. #6639)

7.   Fleetwood Enterprises, Inc.'s Motion in Limine to Exclude Evidence, Testimony, and Argument regarding Other Lawsuits or Claims (Doc. #6898)

8.   Fleetwood Enterprises, Inc.'s Motion in Limine to Exclude References to Travel Trailers Failing to Meet Housing Codes (Doc. #7194)

9.   Fleetwood Enterprises, Inc.'s Motion to Exclude Certain Comments to the Jury (Doc. #7278)

10.   Fleetwood Enterprises, Inc.'s Motion to Exclude References to Post-Katrina "Prototype" (Doc. #7195)

11.   Fleetwood Enterprises, Inc.'s Motion in Limine to Exclude Evidence, Testimony and Argument Regarding Family Members (Doc. #7193)

12.   Fleetwood Enterprises, Inc.'s Motion in Limine to Exclude to Prohibit any Testimony, Evidence or Argument Regarding any Non Party's Medical Issues (Doc. #7202)

13.   Fleetwood Enterprises, Inc.'s Motion to Exclude Emails Regarding Harmful Chemicals Notice (Doc. #7279)

## 6.   BRIEF SUMMARY OF MATERIAL FACTS

### A.   PLAINTIFF'S SUMMARY OF THE FACTS

As a result of Hurricane Katrina, Plaintiff and her minor daughter, Timia Dubuclet were displaced from their permanent home at 6046 Dorothea Street, New Orleans, Louisiana.  Since their home and their belongings flooded and thus, their home was uninhabitable, Plaintiff and her family, including her minor daughter, Timia Dubuclet, received emergency housing assistance from FEMA.  Plaintiff and her daughter were provided with a travel trailer manufactured by Defendant Fleetwood Enterprises, Inc. (hereinafter, "Fleetwood") on or about June of 2006, with Vehicle Identification Number

(VIN) 4CJ1F322764015272. This unit constitutes a product under the Louisiana Products Liability Act ("LPLA"). Plaintiff and her daughter, Timia, began living in the travel trailer on or about June of 2006 and resided continuously in the unit until approximately September of 2007.

Fleetwood had a duty to warn Plaintiff and her family about the dangers and risks of formaldehyde in the travel trailer; this duty was continuing in nature, and legally was owed to Plaintiff by Fleetwood during the entire period that Plaintiff and her family occupied this travel trailer. The exposure of Plaintiff and her daughter, Timia, to formaldehyde offgassing from the travel trailer resulted from the normal, foreseeable, and intended use of the travel trailer, without substantial alteration, in the condition in which Fleetwood sold the travel trailer. The design of the travel trailer, including the use of particle board, plywood, press board, other composite wood products and other products that contain formaldehyde or formaldehyde resins, is defective and posed an unreasonable risk of harm to Plaintiff and her daughter, Timia. The use of particle board, plywood, press board, and other composite wood products that contain formaldehyde constitutes a defect in composition or manufacture that posed an unreasonable risk of harm to Plaintiff and her daughter. The Fleetwood travel trailer was in a defective condition and was unreasonably dangerous under normal use at the time the travel trailer left Fleetwood's control. Plaintiff and her daughter were intended and foreseeable users of the travel trailer, and the damages and losses to Plaintiff reasonably could have been anticipated by Fleetwood.

The defects in the travel trailer are the result of and/or include, but are not limited to, the following:

1.      failing to design the travel trailer so as not to emit dangerous levels of

formaldehyde;

2.      providing a travel trailer which, by virtue of its design and/or manufacture and/or composition, was unreasonably dangerous under reasonably anticipated use;

3.      providing a travel trailer which, by virtue of a lack of an adequate warning(s), was unreasonably dangerous under reasonably anticipated use;

4.      providing a travel trailer which did not conform to the express and/or implied warranties made by Fleetwood Enterprises, Inc. regarding its fitness for use as reasonably anticipated;

5.      failing to adequately test the travel trailer to properly evaluate the levels of emissions of formaldehyde under foreseeable conditions for extended periods of time;

6.      failing to adhere to any and all express warranties of fitness and safety for the travel trailer it manufactured and provided;

7.      in voluntarily adopting the HUD Standard and failing to comply with all of its requirements;

8.      in manufacturing a travel trailer with fewer windows than those needed to properly and adequately ventilate the trailer;

9.      in failing to conduct testing of travel trailers prior to shipping them from their plants;

10.     in failing to test the travel trailer for formaldehyde once becoming aware of same through the news media and other outlets; and

11.     in failing to provide Formaldehyde Abatement Kits to the travel trailer

occupants.

On behalf of her minor daughter, Plaintiff seeks compensatory damages for: physical pain and suffering; mental anguish and emotional distress; past, continuing and future medical expenses; the aggravation of Plaintiff's minor daughter's skin and other conditions; fear of cancer; the impairment of future wage-earning capacity and/or daily life activities suffered and to be suffered by Plaintiff's minor daughter.

**B.    DEFENDANT, FLEETWOOD ENTERPRISES, INC.'S SUMMARY OF THE FACTS**

Since the 1950s, Fleetwood has been one of the country's leading manufacturers of travel trailers, and since the 1970s it has been providing emergency housing for disaster relief to both state and federal agencies. Since the late 1970s it has been aware of a limited number of odor and other complaints primarily from owners of manufactured housing and primarily prior to the availability of low formaldehyde emitting products from the wood products industry. Since the early 1980s Fleetwood has been an industry leader in using the low formaldehyde emitting board in all of its products, including travel trailers used by FEMA. In addition to using the low formaldehyde emitting wood products, Fleetwood is the only travel trailer manufacturer in the country to mandate that a warning about formaldehyde be placed not only in the owners manual but posted prominently in the bathroom of the trailer. One of the warnings posted in the Dubuclet unit may still be found in the unit on the inside of the bathroom vanity.

In March 2006, the specially designed handicapped unit with a slide out living space used by the Dubuclet's was built at Fleetwood's Plant 40 in Longview, Texas. The travel trailer was built to FEMA specifications and sold to Morgan who in turn sold the unit to FEMA. It was transported from Longview, Texas by truck and taken to a FEMA storage unit

in Six Flags Staging Area, Louisiana where it was inspected and accepted by Morgan representatives, and separately inspected and accepted by FEMA representatives. At FEMA's instruction, it was then delivered by a third party to the Dubuclet's private property at 6046 Dorothea Street, New Orleans, Louisiana where it was installed by a contractor, Fluor. In June 2006, the then seven year old Timia Dubuclet, her mother, brother, and grandmother moved into their Fleetwood trailer. The Dubuclets left their trailer and moved back into their home in September 2007.

As a result of living in the trailer, Timia Dubuclet claims that she suffered aggravation of her pre-existing eczema, a skin condition she was diagnosed with when she six (6) weeks old. In fact, Timia was taken to a doctor with her chief complaint being a skin problem some fifteen times prior to moving into the trailer, the last time being approximately one week before moving into the trailer. She did not go back to the doctor for a chief complaint of skin symptoms for ten (10) months after moving into her trailer and then returned to the doctor some six (6) months later – at or about the time she moved out of the trailer and back into her repaired homes. These were the only two (2) times, in some sixteen (16) months that she lived in the trailer, that she went to the doctor for her skin condition, and she only had one prescription filled for her skin condition the entire time she lived in the trailer. After moving out of the trailer, six (6) months passed before she again saw a doctor for a skin related issue. There is no indication in her medical records that any treating doctor associated her skin condition to her living in the trailer until plaintiffs' counsel raised the issue with her treating doctor in the summer of 2009. No medical doctor in the case presently contends that Ms. Dubuclet's eczema was caused by formaldehyde. Plaintiff's claims are limited to a claim that her skin condition was

aggravated by the low levels of gaseous formaldehyde in her unit.

Fleetwood denies that it did anything wrong in connection with the design, manufacture, and sale of the Dubuclet unit and denies that it failed to warn plaintiff of the problems associated with formaldehyde in a temporary housing unit such as a travel trailer. To the contrary, Fleetwood shows the unit complies with all industry standards and practices and that it placed three (3) separate warnings in the owner's manual and posted the same three (3) warnings in the bathroom of the vanity. Fleetwood denies that unit was defective in any respect. Furthermore, Fleetwood denies that gaseous formaldehyde generally – or specifically with respect to Timia – either caused or aggravated her eczema (atopic dermatitis). Fleetwood will show that there is insufficient evidence in the world's medical literature to draw the conclusion that gaseous formaldehyde, especially in the levels likely experienced in the Dubuclet unit, either causes or aggravates atopic dermatitis.

In sum, Fleetwood contends that at all times acted reasonably and that no condition of the trailer caused the medical conditions alleged by Plaintiffs.

7. **UNCONTESTED MATERIAL FACTS**

    A.    Plaintiff, Elisha Dubuclet, and her minor daughter, Timia Dubuclet, are residents of the Parish of Orleans in the State of Louisiana.

    B.    FEMA provided Plaintiff, Elisha Dubuclet, and her minor daughter a travel trailer with Vehicle Identification Number (VIN) 4CJ1F322764015272.

    C.    This travel trailer was manufactured by Defendant Fleetwood on or about March 27, 2006 for use by FEMA as emergency housing.

    D.    Fleetwood sold approximately 10,500 travel trailers to Morgan Buildings & Spas, Inc. for provision to FEMA following hurricanes Katrina and Rita.

E.      Fleetwood sold the travel trailer ultimately provided to the Dubuclets to Morgan Buildings & Spas, Inc. pursuant to a Master Sales Agreement between Fleetwood  and Morgan Buildings & Spas, Inc. to manufacture and provide travel trailer(s) to FEMA for use as emergency housing.

F.      The travel trailer was manufactured by Fleetwood at its Longview, Texas plant to be used as emergency housing for displaced residents of hurricanes Katrina and/or Rita.

G.      Certain component parts used by Fleetwood in the manufacture of this travel trailer contained urea formaldehyde and/or urea formaldehyde resins.

H.      The Fleetwood travel trailer was delivered to Plaintiff and her minor daughter, Timia Dubuclet, for occupancy in New Orleans, Louisiana at 6046 Dorothea Street.

I.      Elisha Dubuclet and Timia Dubuclet resided in this Fleetwood unit from June 2006 to approximately September 2007.

J.      Elisha Dubuclet and Timia Dubuclet resided in this Fleetwood travel trailer for approximately 16 months.

K.      FEMA has provided thousands of travel trailers to displaced residents following natural disasters in the United States since at least 1992, including displaced residents from the Gulf Coast region.

L.      FEMA provided approximately 143,000 emergency housing units to families across the Gulf Coast, in response to hurricanes Katrina and Rita.

M.      Fleetwood Travel Trailers of Texas, Inc. transferred the Dubuclet travel trailer to Morgan Buildings and Spas, Inc. on or about March 28, 2006.

N.  Morgan Buildings & Spas, Inc. sold this travel trailer to FEMA for use as emergency housing.

O.  The travel trailer provided to Elisha and Timia Dubuclet was a Fleetwood 32 FSH (handicap) model with a slide out feature.

P.  By May of 2006, the Fleetwood trailer provided to the Dubuclet family was set up at 6046 Dorothea Street in New Orleans.

Q.  On July 8-9, 2009 at the FEMA Storage Facility in Lottie, Louisiana, the Fleetwood trailer, which had been previously occupied by Timia Dubuclet and her family, was tested for formaldehyde by W.D. Scott Group, Inc. for formaldehyde.

R.  This testing on July 8-9, 2009 was witnessed by Tony Watson of Workplace Hygiene on behalf of Fleetwood.

S.  On August 10-14, 2009, at the FEMA Storage Facility at Lottie, Louisiana, the Fleetwood trailer, which had previously been occupied by Timia Dubuclet and her family, was tested for formaldehyde by Tony Watson of Workplace Hygiene, on behalf of Fleetwood.  The testing was witnessed by W.D. Scott, on behalf of the Plaintiffs.

T.  During the passive sampling performed W.D. Scott Group, Inc. on July 8-9, 2009, inside the Fleetwood trailer provided to the Dubuclet family, the level of formaldehyde concentration in the air was 0.34 parts per million (ppm) or 340 parts per billion (ppb).

U.  During the passive sampling performed by Tony Watson on August 10, 2009, inside the Fleetwood trailer provided to the Dubuclet family, the level of

formaldehyde concentration in the air was 0.16 ppm or 160 ppb.

V.   During the active sampling performed by W.D. Scott Group, Inc. on July 8, 2009, inside the Fleetwood trailer provided to the Dubuclet family, the level of formaldehyde concentration in the air was 0.23 ppm or 230 ppb.

W.   During the active sampling performed by Mr. Tony Watson on August 13-14, 2009, inside the Fleetwood trailer provided to the Dubuclet family, the level of formaldehyde concentration in the air was 0.22 ppm or 220 ppb.

X.   The weather data collected by Dr. Lee Branscome, Ph.D., a certified meteorologist, attached to his report dated July 9, 2009, is representative of the weather conditions for the time frame involved herein.

Y.   Elisha Dubuclet, and her minor son, Timothy Dubuclet, Jr. are named plaintiffs in this litigation.  The Court has determined that Timia Dubuclet's case shall be tried separately from their claims.

Z.   Timia Dubuclet was diagnosed with eczema (atopic dermatitis) at approximately six (6) weeks old.

AA.  According to the National Vital Statistics Report, Timia Dubuclet's life expectancy is 70 additional years (age 81.1).

BB.  According to the National Vital Statistics Report, Timia Dubuclet's worklife equivalent is 40.3 years from the age of 18.

8.   **CONTESTED ISSUES OF FACT**

A.   Whether or not the Fleetwood travel trailer provided to Elisha Dubuclet by FEMA contained levels of formaldehyde which were hazardous to the health and well being of Timia Dubuclet.

B.   Whether or not the Fleetwood travel trailer provided to Elisha Dubuclet by FEMA contained levels of formaldehyde which injured Timia Dubuclet.

C.   Whether or not Plaintiff Elisha Dubuclet was given an Owner's Manual with this travel trailer.

D.   The nature, extent and adequacy of all pertinent warnings allegedly provided to the Plaintiff by Defendant Fleetwood.

E.   Whether or not the Fleetwood trailer occupied by Plaintiff was unreasonably dangerous in its design for its intended or reasonably foreseeable use by Plaintiff.

F.   Whether or not the Fleetwood trailer occupied by Plaintiff was unreasonably dangerous in its construction or composition for its intended or reasonably foreseeable use by Plaintiff.

G.   Whether or not Fleetwood failed to test its travel trailers before putting them into use by victims of hurricanes Katrina and Rita.

H.   Whether or not the Fleetwood travel trailer should have been equipped with a means for the occupants to test for formaldehyde.

I.   Whether or not the Fleetwood's travel trailers should have been equipped with a Formaldehyde Abatement Kit.

J.   Whether or not the Fleetwood trailer was unreasonably dangerous in its intended or reasonably foreseeable use, based on inadequate warnings to Plaintiff.

K.   The amount of damages owed to Plaintiff as a result of the actions of Defendant, Fleetwood regarding:

1.  Past, present, and future physical pain and suffering of Timia
    Dubuclet;

2.  Past, present, and future mental anguish and emotional distress of
    Timia Dubuclet;

3.  Past, present, and future medical expenses for Timia Dubuclet; and

4.  Loss or impairment of life's pleasures for Timia Dubuclet and other
    damages which the trier of fact deems appropriate in accordance with
    the evidence.

L.  The specifications in all contractual agreements between the United
    States/FEMA and Fleetwood; and the respective parties' knowledge of, and
    communication with one another about, the risks to Plaintiff arising from any
    such specifications.

M.  Whether formaldehyde can aggravate eczema; and if so, at what level.

O.  Whether or not there is an increased risk of cancer associated with
    formaldehyde and at what levels.

P.  Whether Timia Dubuclet's eczema was aggravated by exposure to
    formaldehyde from the Fleetwood trailer.

Q.  Whether Timia Dubuclet's skin was damaged as a result of formaldehyde
    from the Fleetwood trailer.

R.  Whether Timia Dubuclet has any current medical conditions as a result of
    exposure to formaldehyde emitted by the Fleetwood travel trailer while she
    lived there.

S.  Whether Timia Dubuclet has any permanent medical conditions as a result of

exposure to formaldehyde from the Fleetwood trailer.

T.     Whether formaldehyde can cause permanent damage; and if so, at what level of exposure.

U.     Whether formaldehyde can cause cancer; and if so, what type of cancer and at what level of exposure.

V.     Whether Timia Dubuclet has been exposed to levels of formaldehyde from the Fleetwood trailer sufficient to cause her to have an increased risk of cancer.

W.     Whether exposure to formaldehyde at the levels present in the Dubuclet trailer would cause a person to have a reasonable fear of contracting cancer.

X.     Whether or not composite wood products containing formaldehyde  caused formaldehyde offgassing in this travel trailer thereby causing Plaintiff to be exposed to formaldehyde for approximately 16 months.

Y.     Whether the amount, composition and manner of use of composite wood products can cause formaldehyde offgassing in a travel trailer sufficient to cause Plaintiff to be exposed to hazardous levels of formaldehyde.

Z.     What level of formaldehyde is necessary to cause eye, nose and/or throat irritation.

AA.    Whether the trailer used by Timia Dubulcet was damaged prior to, during, or after the initial installation on Dorothea Street in New Orleans, such that the interior air formaldehyde levels were actually increased.

BB.    Whether or not the travel trailer could have been tested for formaldehyde offgassing prior to leaving the Longview, Texas plant.

CC.     Whether or not there exists a device that could have detected levels of formaldehyde once it became occupied.

DD.     Whether or not by reducing the number of windows, the Fleetwood travel trailer, as manufactured by Fleetwood, failed to be properly and adequately ventilated and/or designed.

EE.     Whether or not there existed an unreasonably dangerous level or levels of formaldehyde emissions during the period of Plaintiff's occupancy of the Fleetwood trailer.

FF.     Whether eczema is a condition brought about by an allergic response.

GG.     Whether exposure to gaseous formaldehyde at concentration levels such as were found in the Dubuclet trailer cause an increased risk of any form of cancer.

HH.     Whether formaldehyde in a gaseous state can aggravate atopic dermatitis, and if so, at what level.

II.     Whether Timia Dubuclet is allergic to formaldehyde.

JJ.     Whether Timia Dubuclet has any current medical condition caused by exposure to formaldehyde emitted by the Dubuclet trailer while she lived there.

KK.     Whether Timia Dubuclet's atopic dermatitis was aggravated by exposure to formaldehyde emissions from the Fleetwood trailer.

LL.     Whether or not Fleetwood had a long standing policy of purchasing LFE composite wood products.

9.     **CONTESTED ISSUES OF LAW:**

A.     Whether Defendant, Fleetwood is liable to Plaintiff under the LPLA.

B.     Whether the Defendant's legal fault, if any, was a cause-in-fact and proximate cause of damages sustained and recoverable by Plaintiff, on behalf of her daughter Timia Dubuclet.

C.     Whether Plaintiff Elisha Dubuclet may be assessed with comparative fault.

D.     Whether or not the "government contractor defense" is available to Fleetwood.

E.     Whether the Dubuclet unit was unreasonably dangerous in design and/or construction and whether that design and/or construction caused Timia Dubuclet to suffer damages.

F.     Whether the Dubuclet unit was unreasonably dangerous; whether Fleetwood inadequately warned of that danger; and whether that inadequate warning caused damages to Timia Dubuclet.

G.     The amount of damages, if any, sustained by Timia Dubuclet.

H.     Whether the Dubuclet unit was defective because of a lack of and/or an inadequate warning, and said lack of and/or inadequate warning caused damages to Timia Dubuclet.

I.     Whether specifications provided by the government are reasonably precise as a matter of law when they describe exactly the result desired but do not prevent the contractor from exercising some discretion as to methods of production.

J.     Whether there is a basis for asking the jury to allocate fault to a specific non-

party person or entity, and, in the case of FEMA, whether that fault must rise to the level of gross or willful misconduct for fault to be allocated to FEMA.

K.    Whether a specific non-party person or entity was negligent such that there is a basis for asking the jury to allocate fault to such a specific non-party person or entity.

## 10. EXHIBITS

Attached hereto as Exhibit A is Plaintiff's Exhibit List.  Defendant Fleetwood's Exhibit List is attached as Exhibit B.  The parties will consolidate these lists into a joint submission by noon on Tuesday, December 1, 2009 pursuant to Rec. Doc. 7605.

## 11. DEPOSITIONS

Attached hereto as Exhibit C is the Trial Plan in this regard.

The parties will offer the deposition testimony, or portions thereof, of witnesses identified in the attached witness list as being presented by videotape or transcribed deposition.  The parties reserve the right to introduce by deposition the testimony of any witness who is unavailable to testify at trial, though subpoenaed to do so, or when an attempt to subpoena said witness is unsuccessful, or the person resides out of the jurisdiction of this Honorable Court.

## 12. CHARTS AND GRAPHS

The parties may use charts, graphs, powerpoints, and other demonstrative aids contained in their experts' reports and/or utilized during expert depositions and/or marshalled and/or exchanged prior to trial.  The parties have agreed to exchange charts and graphs, and other visual aides to be used at trial at the offices of Lambert & Nelson, PLC on or before Thursday, December 3, 2009, at 9:00 AM, or as otherwise instructed by the

Court.

13.    **WITNESSES**

Attached hereto as Exhibit D is Plaintiff's Witness List.  Defendant Fleetwood's

Witness List is attached as Exhibit E.

14.    **JURY TRIAL**

The parties have submitted jury questions/instructions, and objections thereto, and

will participate in a jury charge conference with the Court as instructed by this Honorable

Court.

15.    **DAMAGES**

The issues of liability will not be tried separately from that of quantum.

16.    **OTHER MATTERS THAT MIGHT EXPEDITE A DISPOSITION OF THE CASE**

On Wednesday, November 4, 2009, Liaison Counsel for Plaintiffs, authorized by and

on behalf of the Court-Appointed Plaintiffs' Steering Committee, made a settlement

proposal with respect to claims asserted against Defendant Fleetwood and its liability

insurer(s).  Mediation before John Perry, Esq. (appointed by this Honorable Court) is

presently scheduled for Wednesday, December 2, 2009.

17.    **TRIAL**

Trial shall commence on Monday, December 7, 2009, at 8:30 a.m. and will require

approximately ten days of trial to complete.

18.    **STATEMENT OF COMPLIANCE-I**

This Pre-Trial Order has been formulated after conference at which counsel for the

respective parties have appeared in person.   Reasonable opportunity has been afforded

counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the

course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19.   **STATEMENT OF COMPLIANCE-II**

Counsel acknowledge that cell phones, pagers, beepers, and any other electronic communication devices are not allowed in the courtroom, and shall abide by this rule. Counsel shall further notify all clients and his/her witnesses of this rule.  Only counsel for the parties are allowed to have computers in the courtroom.

20.   **SETTLEMENT**

See statement with regard to settlement in Paragraph 16 of this Pre-Trial Order.

Respectfully submitted:

BY:  *Gerald E. Meunier*

GERALD E. MEUNIER, #9471  *by Linda J Nelson*
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   (504) 522-2304
Facsimile:    (504) 528-9973
gmeunier@gainsben.com
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
DENNIS REICH, Texas # 16739600
ROBERT BECNEL, #14072

-and-

Jerry L. Saporito (LA Bar #11717)
Amanda W. Vonderhaar (LA Bar #31350)
LEAKE & ANDERSSON, L.L.P.
1700 Energy Centre, 1100 Poydras St.
New Orleans, LA 70163-1701
Telephone:    (504) 585-7500
Facsimile:    (504) 585- 7775
jsaporito@leakeandersson.com
avonderhaar@leakeandersson.com

Richard K. Hines, V (GA Bar #356300)
Taylor T. Daly
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Telephone:    (404) 322-6000
Facsimile:    (404) 322-6050
richard.hines@nelsonmullins.com
taylor.daly@nelsonmullins.com

Counsel for Fleetwood Enterprises, Inc.

-and-

ANDREW D. WEINSTOCK
**DEFENDANT MANUFACTURERS' LIAISON COUNSEL**
Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock,
APLC
3838 N. Causeway Boulevard, 29th Floor
Three Lakeway Center
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Facsimile: (504) 837-3119
andreww@duplass.com

New Orleans, Louisiana, this _____30th_____ day of _____November_____, 2009.


_____
HONORABLE KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE

*PRETRIAL ORDER*
*MDL 1873*