**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION**

**IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LABILITY LITIGATION**

**MDL NO. 1873**

**SECTION N-5
JUDGE ENGELHARDT
MAG. JUDGE CHSEZ**

**This document is related to:
Lyndon Wright vs. Forest River, et al. No. 09-2977(ED LA)**

**PLAINTIFF, LYNDON WRIGHT'S MEMORANDUM
IN OPPOSITION TO DEFENDANT'S UNITED STATES OF AMERICA'S
MOTION TO DISMISS PLAINTIFF LYNDON WRIGHT'S FTC CLAIMS FOR LACK
OF SUBJECT MATTER JURISDICTION**

May it please the Court:

The United States of America in its Motion pursuant to Fed. R. Civ. P. 12(b)(1) and

129h)(3) or alternatively 56(c), seeks to dismiss Plaintiff, Lyndon Wright's Federal Tort Claims

Act (FTCA) 28 U.S.C. §§ 1346 (b) (1), 2671-80 claims for lack of subject matter jurisdiction.

The United States alleges which is strongly denied by plaintiff, that plaintiff's claims against the

United States are barred because:

(1) Plaintiff filed suit prematurely, prior to exhausting his administrative remedy, 28

U.S.C. § 2674 (a) and

(2) He failed to present his administrative claim to the Federal Emergency Management

Agency (FEMA) within the FTCA'S two year statute of limitations 28 U.S.C. § 2401

(b)

1

Plaintiff in this Memorandum will show that both arguments of the United States described above are without merit and therefore, the Motion To Dismiss filed by the United States should be denied.

### PLAINTIFF DID NOT FILE HIS SUIT PREMATURELY

As stated in the memorandum filed by the United States, plaintiff moved into his FEMA trailer on March 1, 2006. Suit was filed on plaintiff's behalf on March 2, 2009.

Attached to this Memorandum is the affidavit of Greg Warren who was assisting undersigned counsel in processing his FEMA clients. He states that SF95 form was mailed to FEMA as required by law.

Plaintiff in his deposition recalls signing the SF95 form which is dated April 2, 2008. This is the form that Mr. Warren describes mailing to the government. Thus, plaintiff filed his SF95 more than six months before he filed suit which is the subject of this pending litigation.

Accordingly, plaintiff respectfully submits, that the first contention alleged by the United States is without merit and should be dismissed.

### **PLAINTIFF FILED HIS CLAIM WITHIN TWO YEARS OF ITS ACCRUAL**

Plaintiff's deposition was taken on July 10, 2009. In that deposition, he states that he did not learn of Formaldehyde in the FEMA trailers until he received undersigned counsel's business card. (Depo. pg. 217). He stated further that a representative from undersigned counsel's office came to his trailer on April 2, 2008 and spoke to him extensively about Formaldehyde and its potential health risk in FEMA trailers.

This is when he discovered that he had a potential claim, because of his exposure to Formaldehyde while living in the FEMA trailer provided to him by the United States of America.

He stated the following as to his prior knowledge of Formaldehyde and FEMA trailers.

2

Q.      And as we sit here today, it's your testimony that during the entire occupancy of the trailer, watching TV in there, you never saw any news broadcast, commercial or other programming or public service announcement about any issue or problem that people were experiencing relating to these FEMA travel trailers?

A.      No, no.

(Depo. pg. 163)

Plaintiff in his deposition also described how he complained to the maintenance workers of FEMA or its contractors and representatives. He testified that he was given a phone number for maintenance at the initial meeting with FEMA to call if he experienced any problems with the trailer (Depo. pg. 103).

Plaintiff was asked if he or his mother ever called the maintenance number supplied by FEMA.

Q.      At any time during your occupancy of that unit, was there any reason that you had to call that number?

A.      Yes, for an electrical problem that the trailer had.

Q.      Okay.

A.      and about - - it was about an odor that I kept smelling.  (Depo. Pg. 104)

Plaintiff also described how he told maintenance workers about the odor in the trailer.

He testified as follows:

> The monthly maintenance people would come around.  Those are
>
> the people I would complain about the smell, too. (Depo. Pg. 119).

3

Plaintiff also testified that he had problems with the furnace within a couple of months after he moved into the FEMA trailer. The maintenance people came out on two occasions but were not able to repair the furnace. (Depo. Pg. 110-111). He further testified as follows:

Q.     The folks who came out to fix the furnace, did you complain to them about an odor?

A.     Yes, I did.

Q.     What was their response to you when you complained to them about an odor?

A.     Their response was, like, it wasn't their thing to take care of. They were basically there for the furnace. (Depo. Pg. 112)

He also testified that his mother called FEMA about the odor inside the trailer. He testified as follows:

Q.     But have you ever contacted FEMA about the odor? Like called FEMA.

A.     No my mom did.

Q.     Your mom has?

A.     Yes

Q.     I think you testified earlier that she called, and then what happened?

A.     They did a runaround, gave her another number and said they would get back in touch with her. And we just never followed upon it.

I mean that when I started telling the maintenance people during their little check off, you know, that I was having these problems. (Depo. Pg. 325)

Plaintiff testified in summation as follows:

> She made the phone call and nobody ever called her back. I told
> the maintenance people. They never wrote nothing down, but they

4

always told me they would have somebody come out about the

situation.  (Depo. Pg. 327)

Plaintiff testified that the litigation started for him in April of 2008.

A.       Pretty much - - well, I assume the litigation started with this in 2008.  I mean, I

didn't get knowledge of that until I really got with my lawyers and everything.  (Depo. Pg. 331)

## PLAINTIFF LYNDON WRIGHT DID NOT HAVE SUFFICIENT

## INFORMATION TO START ACCRUAL UNTIL APRIL OF 2008

Plaintiff, Lyndon Wright respectfully submits federal courts have applied the "discovery

rule" of accrual, in cases involving medical malpractice, latent injuries on toxic exposure see

Johnson v. United States 430 F. 3d 616, 622 (5th cir. 2006); Harrison v. United States 708 F.2d

1023, 1027 (5th Cir. 1983); Soleson v. United States 629 F.2d 1265 (7th Cir. 1980)

Plaintiff cites Uric v. Thompson 337 U.S. 163 (1949) which involved a railroad fireman

who claimed he contracted silicosis after long term exposure to Silica dust.  The Supreme Court

held that the plaintiff's claim did not accrue until he discovered the existence and the cause of his

ailment.

Plaintiff may have discovered the existence of his ailment but he did not discover the

cause until April of 2008.  From the deposition testimony cited above, it is clear that plaintiff

faced obstacles in learning about the existence and cause of his injuries.

Plaintiff was forced from his home because of the destruction caused by Hurricane

Katrina and its aftermath.  After returning home plaintiff moved into the trailer and began to

experience health problems.  As his testimony shows, he had no knowledge that his health

problems were related to formaldehyde emissions, emanating from his temporary home.  He did

5

not know about formaldehyde or its potential risks until April of 2008 when he became a client of undersigned counsel.

Plaintiff and his mother made complaints to FEMA and their representatives to no avail. These representatives always stated that they would send someone to investigate which they never did. They never acted concerned or took plaintiff's complaints seriously.

It was the defendant who had knowledge of the dangers of Formaldehyde but it never shared that knowledge with plaintiff. He made complaints to FEMA and its representatives but they never took any action.

Prior to April of 2008, plaintiff was at the mercy of the United States who withheld vital information from him. Again, he made complaints which were disregarded by FEMA and its representatives. The government should not benefit when it failed to disclose important information to plaintiff or to act on his complaints about odor inside the trailer.

For these reasons, plaintiff requests that the Defendant, Motion be dismissed.

Respectfully submitted,

Douglas M. Schmidt 11789
335 City Park Avenue
New Orleans, LA 70119
Phone: 504-482-5711
Fax: 504-482-5755

6