1                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
2

3     ****************************************************************

4     IN RE:  FEMA TRAILER
      FORMALDEHYDE PRODUCTS
5     LIABILITY LITIGATION

6                               DOCKET MDL NO. 1873 "N"
                               NEW ORLEANS, LOUISIANA
7                               MONDAY, SEPTEMBER 14, 2009, 8:30 A.M.

8     THIS DOCUMENT IS RELATED TO

9     CHARLIE AGE, ET AL V
      GULF STREAM COACH, INC.,
10    ET AL, DOCKET NO. 09-2892;
      ALANA ALEXANDER,
11    INDIVIDUALLY AND ON BEHALF
      OF CHRISTOPHER COOPER
12

13    ****************************************************************

14                            **MORNING SESSION**
                     TRANSCRIPT OF JURY TRIAL PROCEEDINGS
15         HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
                     UNITED STATES DISTRICT JUDGE
16

17    APPEARANCES:

18

      FOR THE PLAINTIFFS:
19
                               GAINSBURGH BENJAMIN DAVID MEUNIER AND
20                             WARSHAUER
                               BY:  GERALD E. MEUNIER, ESQUIRE
21                             2800 ENERGY CENTRE
                               1100 POYDRAS STREET, SUITE 2800
22                             NEW ORLEANS LA   70163

23
                               THE BUZBEE LAW FIRM
24                             BY:  ANTHONY G. BUZBEE, ESQUIRE
                               600 TRAVIS, SUITE 7300
25                             HOUSTON TX   77002

1    APPEARANCES CONTINUED:

2

3                              WATTS GUERRA CRAFT
                               BY:  MIKAL C. WATTS, ESQUIRE
4                              FOUR DOMINION DRIVE
                               BUILDING THREE, SUITE 100
5                              SAN ANTONIO TX 78257

6

7                              HILLIARD MUNOZ GUERRA
                               BY:  ROBERT C. HILLIARD, ESQUIRE
                               719 S. SHORELINE BOULEVARD #500
8                              CORPUS CHRISTI TX 78401

9

10                             CHRIS PINEDO
                               ATTORNEY AT LAW
                               802 N. CARANCAHUA, SUITE 2250
11                             CORPUS CHRISTI TX  78470

12

13   FOR GULF STREAM COACH, INC.:

14                             DUPLASS ZWAIN BOURGEOIS MORTON
                               PFISTER & WEINSTOCK
                               BY:  JOSEPH G. GLASS, ESQUIRE
15                             THREE LAKEWAY CENTER
                               3838 N. CAUSEWAY BOULEVARD
16                             SUITE 2900
                               METAIRIE LA  70002
17

18                             SCANDURRO & LAYRISSON
                               BY:  TIMOTHY D. SCANDURRO, ESQUIRE
19                             607 ST. CHARLES AVENUE
                               NEW ORLEANS LA  70130
20

21
     FOR FLUOR ENTERPRISES, INC.:
22

23                             MIDDLEBERG RIDDLE & GIANNA
                               BY:  CHARLES R. PENOT, JR., ESQUIRE
                                    RICHARD A. SHERBURNE, ESQUIRE
24                             717 N. HARDWOOD
                               DALLAS TX  75201
25

1    ALSO PRESENT:              SONIA MALLETT, ESQUIRE

2

3    OFFICIAL COURT REPORTER:   CATHY PEPPER, CCR, RMR, CRR
                                500 POYDRAS STREET, ROOM B406
4                               NEW ORLEANS LA  70130
                                (504) 589-7779
5
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
6    PRODUCED BY COMPUTER.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        **P-R-O-C-E-E-D-I-N-G-S**

2                        MORNING SESSION

3            MONDAY, SEPTEMBER 42009, 8:30 A.M.

4                    (COURT CALLED TO ORDER)

5

6

7            THE DEPUTY CLERK:  ALL RISE.

8            THE COURT:  GOOD MORNING, AS YOU WERE.  WE ARE WAITING

9    FOR THE JURY POOL TO BE SENT UP TO THE COURTROOM.  BEFORE THAT

10   HAPPENS, AND I DON'T KNOW HOW LONG THAT'S GOING TO BE.  I

11   UNDERSTOOD THEY HAVE A COMPUTER PROBLEM OR SOMETHING AND I'M NOT

12   QUITE SURE WHAT THE PROCESS IS DOWN THERE AND HOW THAT'S GOING TO

13   IMPACT US, BUT I BELIEVE THEM TO BE ON THE VERGE OF SENDING UP 65

14   INDIVIDUALS WHO WILL BE THE JURY POOL FOR QUESTIONING.

15            BEFORE WE DO THAT, I HAVE SOME PRELIMINARY

16   INSTRUCTIONS, SO I THOUGHT I WOULD DO THAT NOW WITHOUT THE JURY

17   POOL BEING HERE.

18            FIRST OF ALL, IF ANYBODY HERE HAS NOT GOTTEN WORD,

19   NO CELL PHONES, LAPTOPS, BLACKBERRIES, ANY OTHER TYPE OF

20   ELECTRONIC COMMUNICATION DEVICES WILL BE ALLOWED IN THE

21   COURTROOM, EVEN TURNED OFF, DURING THE COURSE OF THIS TRIAL.  SO

22   IF ANYBODY HAS ANY OF THAT WITH THEM NOW, PLEASE TURN IT INTO MY

23   SECRETARY.  ANY VIOLATORS OF THAT POLICY WILL HAVE THE CELL PHONE

24   OR BLACKBERRY OR WHATEVER YOU HAVE CONFISCATED UNTIL THE JURY'S

25   VERDICT IS RETURNED, YOU WILL NOT BE ALLOWED TO RETURN TO THE

1  COURTROOM DURING THE COURSE OF THE TRIAL, AND THERE MAY BE A

2  POSSIBLE FINANCIAL SANCTION.  SO I'M TRYING TO BE AS CLEAR AS I

3  CAN BE AND BE UP FRONT ABOUT THIS.  NOT ONLY IS IT ONE OF MY PET

4  PEEVES, BUT IT ALSO IS VERY, VERY DISTRACTING TO THE ATTORNEYS

5  AND THE JURY DURING THE COURSE OF A TRIAL TO HAVE A PHONE GO OFF

6  OR EVEN TURNED OFF.  THERE ARE ALL THESE PROBLEMS, PEOPLE FORGET,

7  SO LET'S NOT EVEN GO THERE WITH THAT.  SO PLEASE ABIDE BY THAT

8  POLICY.

9          IF YOU'RE NOT GOING TO BE HERE THROUGHOUT THE TRIAL

10  BUT SOMEONE FROM YOUR OFFICE IS GOING TO BE HERE, PLEASE REMIND

11  THEM OF THAT POLICY.  AND YOU CAN CERTAINLY CHECK YOUR PHONE IN

12  WITH MY SECRETARY, SUSAN ADAMS, AND PICK IT UP DURING THE BREAK

13  OR DURING THE LUNCH HOUR.  BUT THAT POLICY WILL BE ENFORCED AND I

14  WILL HAVE THE COURT SECURITY OFFICER OR CSO WHO WILL BE SITTING

15  IN THAT BLUE CHAIR BACK BY THE DOOR, HE WILL ALSO BE RESPONSIBLE

16  FOR POLICING THAT POLICY.  SO DON'T THINK IF I CAN'T SEE IT FROM

17  UP HERE, MAYBE IT'S OKAY.  BUT HE'LL BE RESPONSIBLE FOR LOOKING

18  AT THAT, AS WELL.

19          ALL RIGHT.  LET ME SEE THE ATTORNEYS AT THE BENCH

20  HERE REGARDING ONE JUROR PROBLEM THAT'S BEEN BROUGHT TO MY

21  ATTENTION.

22          (WHEREUPON, AT THIS POINT IN THE PROCEEDINGS, THERE WAS

23  A CONFERENCE HELD AT THE BENCH.)

24          THE COURT:  JERRY, I UNDERSTAND WE HAVE A PROBLEM WITH

25  MS. CHARBONNET.

1          MR. MEUNIER:  MS. CHARBONNET, YOUR HONOR, IS THE WIFE OF

2    BERNARD CHARBONNET.  HIS WIFE HAS REFERRED FEMA TRAILER

3    FORMALDEHYDE CASES TO US, SO WE'RE ASKING THAT SHE BE EXCUSED.

4          THE COURT:  FOR CAUSE, RIGHT?  EVERYBODY OKAY WITH THAT?

5    WE'LL TAKE THAT ONE OUT FOR CAUSE.  WE CAN MAYBE TELL THEM NOT TO

6    SEND HER UP.

7          PAM, WOULD YOU TELL THEM NOT TO SEND UP NUMBER SIX,

8    PLEASE.  SEND UP NUMBER 66 IN PLACE OF NUMBER SIX.

9          MR. WEINSTOCK:  THERE IS ALWAYS A COUPLE OF THINGS.

10          THE COURT:  ONE OTHER THING:  THEY ARE TRYING TO CHECK

11    PEOPLE IN DOWNSTAIRS.  I DON'T KNOW WHY IT'S TAKING SO LONG.  IT

12    WAS WELL-ESTABLISHED THAT THIS WAS GOING TO START AT 8:30.  SO IF

13    I'VE GOT TO GO BACK AND MAKE A CALL, I'M GOING TO DO THAT, BUT I

14    TOLD MARIANNE JUDICE THAT IF WE'RE MISSING ANYBODY IN 1 THROUGH

15    65, TO FILL IN THE GAPS OF THOSE THAT ARE MISSING WITH 66, 67,

16    68, SO WE WILL HAVE 65 PEOPLE, AND I WILL LET YOU KNOW WHICH ONES

17    OUT OF THE FIRST 65 ARE NOT UP HERE BUT WILL BE ARRIVING

18    DOWNSTAIRS LATER.

19          SO WE'RE GOING TO HAVE 65.  AND NOW WE'RE GOING TO

20    HAVE 65 MINUS NUMBER SIX, PLUS NUMBER 66.

21          MR. WEINSTOCK:  THERE IS ONE OTHER JUROR, AND JOE GLASS

22    CAN TELL YOU ALL OF THE DETAILS, BILLY GUSTE, III, WHO IS A

23    LAWYER HAS SEVERAL CASES INCLUDING A PERSONAL CASE THAT WE'RE ON

24    THE OTHER SIDE OF.  NOW, IF YOU WANT TO TALK TO HIM ABOUT IT,

25    THAT'S FINE.

1          THE COURT:  IS IT RELATED IN ANY WAY TO THIS TYPE OF

2    CASE?

3          MR. GLASS:  IT'S ONE OF HIS PARTNERS' HURRICANE SUITS,

4    PERSONAL HOUSE SUIT AND WE'RE DEFENDING IT AGAINST HIS INSURER.

5          THE COURT:  SO IT'S NOT A FORMALDEHYDE TRAILER CASE?  IS

6    THERE A CERTAIN AMOUNT OF ACRIMONY THAT I NEED TO KNOW ABOUT?

7          MR. BUZBEE:  NOT WITH ANDY, YOUR HONOR.

8          MR. WEINSTOCK:  ONLY TONY.  NO, JUST KIDDING.

9          THE OTHER THING IS, YOUR HONOR, IT'S MY

10   UNDERSTANDING THAT NEWS STORIES BROKE LAST NIGHT AND THIS MORNING

11   ABOUT THE FORMALDEHYDE CASES AND I DON'T KNOW IF YOU WERE GOING

12   TO MENTION THAT.

13         THE COURT:  I'M GOING TO ASK IT IN MY VOIR DIRE.

14         MR. WEINSTOCK:  IN THE NEWSPAPER OR LOCAL TV?

15         THE COURT:  LOCAL TV.  THE STORIES WERE JUST THAT WE

16   WERE STARTING THIS TRIAL TODAY, ALTHOUGH THE LITTLE BLOW-IT UNDER

17   THE STORY LOOKED LIKE SOMETHING THAT MIGHT COME FROM YOUR OPENING

18   STATEMENT.

19         MR. BUZBEE:  DID THEY MENTION MY NAME?  THAT'S WHAT I'M

20   REALLY CONCERNED ABOUT.

21         THE COURT:  NO, I THINK IT SAYS SOMETHING ABOUT TOXIC

22   TRAILER SUIT BEGINS.

23         MR. BUZBEE:  EXCELLENT.  IF THEY DID INTERVIEW ME,

24   THAT'S WHAT I WOULD HAVE SAID.

25         THE COURT:  I WAS GOING TO SAY, IT LOOKED LIKE SOMETHING

1 FROM YOUR POWERPOINT.  I'LL ASK THEM ABOUT THAT.

2        MR. HILLIARD:  AND, JUDGE, UNDER THE GOOD NEWS/BAD NEWS

3 THEORY, WHEN I READ THE EXHIBIT STIPULATION, THE GOOD NEWS IS

4 THERE'S A LOT AGREED TO, THE BAD NEWS IS THERE'S ABOUT A HUNDRED

5 DIFFERENT NUMBERS THAT I'M GOING TO HAVE TO READ, COUNT THEM UP.

6        THE COURT:  I'LL TELL THE JURY THAT THE NUMBERS ARE

7 MEANINGLESS RIGHT NOW, BUT THAT WHEN WE START USING NUMBERS, THEY

8 WILL KNOW WHAT THESE EXHIBITS ARE AS WE GO THROUGH THE TRIAL.

9        MR. BUZBEE:  WE'RE GOING TO KEEP I GUESS THREE DIFFERENT

10 COPIES SO WE CAN ALL KEEP TRACK OF THEM.

11        THE COURT:  I WILL ASK YOU ALL AT THE END OF TRIAL, AND

12 I DON'T KNOW IF I TOLD YOU THIS AT THE PRETRIAL, BUT I WILL ASK

13 YOU ALL AT THE END OF THE TRIAL TO VERIFY THAT THE EXHIBITS THAT

14 PAM HAS TO SEND IN TO THE JURY ROOM ARE INCLUSIVE OF EVERYTHING

15 THAT'S BEEN ADMITTED AND ARE EXCLUSIVE OF OTHER MATERIAL

16 INCLUDING EXHIBITS TO WHICH AN OBJECTION HAS BEEN SUSTAINED.  IT

17 WILL BE YOUR RESPONSIBILITY TO POLICE THAT, SO MAKE SURE NOTHING

18 GOES IN THE JURY ROOM.  IN FACT, YOU'LL HAVE TO SIGN A STATEMENT

19 SAYING THAT YOU HAVE VERIFIED THAT THE EXHIBITS ARE CORRECT AND

20 ACCURATE AND DON'T INCLUDE SOMETHING THAT DOESN'T BELONG IN

21 THERE.  SO THAT'S GOING TO BE ON YOU ALL TO CHECK THAT WITH PAM.

22 SHE DOES A GOOD JOB, BUT YOU KNOW THERE IS A LOT OF STUFF HERE,

23 SO YOU'LL HAVE TO CHECK IT WITH HER BEFORE THEY GO INTO THE JURY

24 ROOM.

25        MR. WATTS:  YOUR PLAN'S WHEN TO QUIT IN THE AFTERNOON?

1          THE COURT:  FIVE O'CLOCK.

2          MR. WATTS:  SHARP OR WHEN THE WITNESS IS DONE?

3          THE COURT:  GIVE OR TAKE 15 MINUTES.  I MIGHT START WITH

4    SOMEBODY -- AND THAT POINT CAME UP YESTERDAY IN CONNECTION WITH

5    MR. SHEA.  I DON'T WANT TO HAVE TO GO OVER HIM.  I DON'T THINK WE

6    HAVE ANY WITNESS IN THE CASE THAT'S LIKE A MOSE JEFFERSON-TYPE OF

7    WITNESS THAT NEEDS TO GO OVER THREE DAYS OR EVEN OVER A DAY.  I

8    DON'T THINK WE'VE GOT A WITNESS IN THIS CASE THAT'S GOING TO BE

9    OVER FOUR HOURS.  SO THERE IS NO REASON FOR US TO START SOMEBODY

10   AND THEN SAY WE'RE TAKING OFF THE REST OF THE DAY AND WE'RE GOING

11   TO BRING THEM BACK THE NEXT DAY.

12          FINISH UP AT THE END WITH WHATEVER WITNESS WE'VE

13   GOT AND BRING A NEW WITNESS IN THE MORNING.  SO LET'S BE

14   EFFICIENT.  I HAVE A PADDLE SO YOU'LL KNOW THE NUMBERS.

15          WE'LL DO THIS QUICKLY.  OKAY?  SO LET'S BE

16   EFFICIENT.  THANK YOU ALL.

17          (WHEREUPON, AT THIS POINT IN THE PROCEEDINGS, THE

18   BENCH CONFERENCE CONCLUDED.)

19          THE COURT:  WHILE THE JURY POOL IS COMING UP, LET ME

20   ALSO ADVISE ANY COUNSEL OR ANYONE ELSE WHO IS HERE TO OBSERVE THE

21   TRIAL THAT THE COURTROOM ACROSS THE HALL IS OUTFITTED FOR AN

22   AUDIO FEED FROM THIS COURTROOM, BUT THAT WILL ONLY BE IN PLACE

23   THROUGH THE JURY SELECTION PROCESS.  THERE IS GOING TO BE A

24   NINE-MEMBER JURY, AND ONCE WE HAVE SELECTED THE JURY FOR THIS

25   CASE, OF COURSE THE OTHER HALF OF THE COURTROOM WILL BE AVAILABLE

1  PROCEEDING, AND UNDER THOSE CIRCUMSTANCES THERE WILL NOT BE AN

2  AUDIO FEED ON THE OTHER SIDE OF THE HALLWAY.  SO THAT'S TEMPORARY

3  IN CASE SOMEONE IS HERE AND THERE IS NOT ENOUGH ROOM BECAUSE OF

4  THE NEED FOR SPACE FOR THE JURY POOL.

5           THE DEPUTY CLERK:  59 IS ABSENT ALSO UNLESS SHE CAME IN.

6           THE COURT:  LET'S GO AHEAD AND BEGIN.  LET'S CALL THE

7  CASE.

8           THE DEPUTY CLERK:  MDL NUMBER 1873, IN RE: FEMA TRAILER

9  FORMALDEHYDE TRAILER PRODUCTS LIABILITY LITIGATION.

10          THE COURT:  COUNSEL, WOULD YOU MAKE YOUR APPEARANCES.

11          MR. BUZBEE:  ANTHONY G. BUZBEE FOR THE PLAINTIFFS, YOUR

12  HONOR.

13          MR. WATTS:  MIKAL WATTS FOR PLAINTIFFS.

14          MR. HILLIARD:  BOB HILLIARD FOR THE PLAINTIFFS.

15          MR. MEUNIER:  JERRY MEUNIER FOR THE PLAINTIFFS.

16          MR. WEINSTOCK:  ANDY WEINSTOCK FOR GULF STREAM COACH.

17          MR. SCANDURRO:  TIM SCANDURRO FOR GULF STREAM COACH.

18          MR. GLASS:  JOE GLASS FOR GULF STREAM COACH.

19          MR. PENOT:  CHARLES PENOT FOR FLUOR ENTERPRISES, INC.

20          MR. SHERBURNE:  RICHARD SHERBURNE FOR FLUOR ENTERPRISES.

21          MS. MALLETT:  SONIA MALLET FOR FLUOR ENTERPRISES.

22          THE COURT:  COUNSEL, ARE YOU PREPARED TO PROCEED TO

23  TRIAL IN THIS MATTER?

24          MR. WEINSTOCK:  YES, WE ARE, SIR.

25          MR. BUZBEE:  YES.

1          THE COURT:  LET ME START OUT WITH THE JURY POOL.  BEFORE

2     I HAVE YOU ALL TAKE YOUR OATH, AS MEMBERS OF THE JURY POOL, I

3     WANT TO THANK YOU ALL FOR BEING HERE AND WELCOME YOU TO THE

4     EASTERN DISTRICT OF LOUISIANA AND SPECIFICALLY TO SECTION "N".  I

5     AM JUDGE KURT ENGELHARDT AND I WILL BE PRESIDING OVER THIS

6     MATTER.  WE WILL GET INTO SOME QUESTIONS WITH YOU ALL.  WE WILL

7     TRY TO BE AS EFFICIENT AND AS PROMPT AS WE CAN IN ORDER TO NOT

8     TAKE UP MORE OF YOUR TIME AS NECESSARY IN THE SELECTION PROCESS.

9     NINE OF YOU WILL BE SELECTED TO HEAR THIS CASE.

10          I ALSO WANT TO APOLOGIZE FOR THE PROCEDURE OF

11     GIVING YOU THESE PADDLES WITH NUMBERS ON THEM.  IT SEEMS RATHER

12     IMPERSONAL, AND THIS IS THE FIRST TIME THAT I HAVE DONE THAT, BUT

13     I THINK IT WILL EXPEDITE MATTERS.  SO IF YOU WILL FORGIVE THE

14     IMPERSONAL NATURE OF THAT PROCESS, I WILL TRY TO LEARN AS MANY OF

15     YOUR NAMES AS WE CAN OVER THE NEXT HOUR OR SO THAT WE ENGAGE IN

16     THIS PROCESS.  BUT IN THE MEANTIME, FOR THE BENEFIT OF THE

17     ATTORNEYS, IF YOU DO ANSWER A QUESTION OR IF YOU STAND UP TO TELL

18     US SOMETHING DURING THIS PROCESS, IF YOU WOULD HOLD YOUR PADDLE

19     SOMEPLACE WHERE WE CAN SEE IT.  THE ATTORNEYS HAVE A LIST OF YOUR

20     NAMES AND THEY WILL BE ABLE TO KNOW FROM YOUR NUMBER WHICH ONE OF

21     YOU ARE SPEAKING, ESPECIALLY THE FOLKS IN THE BACK PART OF THE

22     COURTROOM.

23          SO PLEASE DON'T BE OFFENDED BY US ASSIGNING YOU A

24     NUMBER.  ALSO, PLEASE UNDERSTAND THAT IT'S GOING TO BE MORE

25     EFFICIENT IN THE SELECTION PROCESS WHICH HOPEFULLY YOU'LL

1    APPRECIATE.

2              BEFORE WE BEGIN OUR QUESTIONING OF THE JURY POOL,

3    I'LL ASK THE COURTROOM DEPUTY TO ADMINISTER THE OATH TO YOU.  IF

4    ALL OF YOU ARE HERE, NUMBERS 1 THROUGH 69, IF YOU ALL WOULD ALL

5    RISE, PLEASE.

6              THE DEPUTY CLERK:  PLEASE RAISE YOUR RIGHT HAND.  DO YOU

7    SOLEMNLY SWEAR THAT YOU WILL MAKE TRUE AND PERFECT ANSWERS TO ALL

8    QUESTIONS THAT SHALL BE PROPOUNDED TO YOU, TOUCHING YOUR

9    QUALIFICATIONS AND COMPETENCY TO SIT AS A JUROR IN THE CASE, SO

10   HELP YOU GOD?

11             VOICES:  I DO.

12             THE DEPUTY CLERK:  THANK YOU.  YOU MAY BE SEATED.

13             THE COURT:  WELCOME AGAIN.  YOUR ATTENDANCE TODAY IS

14   MOST APPRECIATED.  THIS CIVIL CASE IS BROUGHT BY THE PLAINTIFF,

15   ALANA ALEXANDER, BOTH FOR HERSELF AND ON BEHALF OF HER MINOR SON,

16   CHRISTOPHER COOPER.  MS. ALEXANDER CLAIMS THAT SHE AND HER SON

17   WERE HARMED BY EXPOSURE TO FORMALDEHYDE WHILE LIVING IN A TRAVEL

18   TRAILER WHICH HAD BEEN PROVIDED AS EMERGENCY HOUSING BY FEMA

19   AFTER HURRICANE KATRINA.  THE PLAINTIFF HAS SUED TWO DEFENDANTS:

20   FIRST, GULF STREAM COACH, INCORPORATED, WHICH MANUFACTURED THE

21   TRAVEL TRAILER IN QUESTION AND SECONDLY FLUOR ENTERPRISES,

22   INCORPORATED, A CONTRACTOR WHICH INSTALLED THE TRAILER ON THE

23   PROPERTY AT MS. ALEXANDER'S FORMER RESIDENCE.

24             PLAINTIFF CLAIMS THAT GULF STREAM IS LIABLE AS

25   MANUFACTURER BECAUSE THE TRAILER WAS UNREASONABLY DANGEROUS IN

1  NORMAL OR FORESEEABLE USE.  PLAINTIFF ALSO CLAIMS THAT FLUOR IS

2  LIABLE BECAUSE OF FLUOR'S NEGLIGENCE AS A CONTRACT.

3          GULF STREAM STATES THAT IT MANUFACTURED THE TRAVEL

4  TRAILER IN QUESTION AND THAT IT WAS NOT UNREASONABLY DANGEROUS IN

5  ANY WAY.  FLUOR ENTERPRISES STATES THAT IT ACTED REASONABLY AND

6  CORRECTLY AS FEMA'S CONTRACTOR IN CONNECTION WITH THE TRAILER.

7  BOTH GULF STREAM AND FLUOR MAINTAIN THAT NEITHER ALANA ALEXANDER

8  NOR CHRIS COOPER, WHILE LIVING IN THE TRAILER, SUFFERED

9  COMPENSATORY INJURIES CAUSED BY GULF STREAM OR FLUOR ENTERPRISES.

10          BOTH THE PLAINTIFFS AND THE DEFENDANTS HAVE THE

11  RIGHT TO HAVE THIS CASE TRIED BY A QUALIFIED AND FAIR AND

12  IMPARTIAL JURY.  A QUALIFIED AND IMPARTIAL JURY IS ONE WHICH IS

13  RESPONSIBLE AND CAPABLE AND WHICH WILL OBJECTIVELY WITHOUT FEVER,

14  FAVOR, BIAS, PREJUDICE, SYMPATHY, OR FASHION HEAR AND DECIDE THE

15  ISSUES TO BE TRIED AND ONE WHICH WILL RENDER ITS VERDICT BASED

16  SOLELY ON THE EVIDENCE PRESENTED AT THIS TRIAL AND THE LAW

17  APPLICABLE TO THE CASE AS IT IS GIVEN TO THE JURY BY THE COURT.

18          IT IS THE LAW THAT A JUROR'S QUALIFICATIONS AND

19  IMPARTIALITY MAY NOT BE ASSUMED WITHOUT INQUIRY.  THIS INQUIRY

20  WHICH IS ABOUT TO BE MADE IS KNOWN AS THE VOIR DIRE EXAMINATION.

21  ITS PURPOSE IS TO DEVELOP THE WHOLE TRUTH CONCERNING THE

22  COMPETENCY OF EACH PROSPECTIVE JUROR, HIS OR HER FRAME OF MIND

23  AND ABILITY TO DO HIS OR HER SWORN DUTY IN ACCORDANCE WITH THE

24  JURORS'S OATH.  THE ANSWERS TO THE QUESTIONS TO BE PUT TO YOU BY

25  THE COURT WILL NOT ONLY ENABLE THE COURT TO DETERMINE WHETHER ANY

1   OF YOU SHOULD BE EXCUSED FOR CAUSE, EITHER ON THE COURT'S OWN

2   MOTION OR WHEN CHALLENGED FOR CAUSE BY ANY PARTY, BUT WILL ALSO

3   ALLOW COUNSEL FOR THE PARTIES TO MAKE INTELLIGENT USE OF

4   PEREMPTORY CHALLENGES, THAT IS THOSE CHALLENGES WHICH THE LAW

5   GIVES THE PARTIES AND WHICH MAY BE EXERCISED WITHOUT ASSIGNING

6   ANY REASON THEREFORE.

7           YOU SHOULD UNDERSTAND, THEREFORE, THAT IT IS

8   EXPECTED OF EACH OF YOU THAT YOUR ANSWERS TO THE QUESTIONS

9   PROPOUNDED SHALL BE COMPLETE AND TRUTHFUL.  EACH JUROR IS UNDER

10  COMPULSION TO DISCLOSE, UPON A GENERAL QUESTION, ANY MATTERS

11  WHICH MIGHT TEND TO DISQUALIFY HIM OR HER FOR ANY REASON FROM

12  SITTING ON THIS CASE.  FALSE OR MISLEADING ANSWERS MAY RESULT IN

13  THE SEATING OF A JUROR WHO MIGHT HAVE BEEN DISCHARGED BY THE

14  COURT FOR CAUSE OR STRICKEN THROUGH THE EXERCISE OF PEREMPTORY

15  CHALLENGES AND COULD RESULT IN A MISCARRIAGE OF JUSTICE.

16          ALTHOUGH THE QUESTIONS WILL BE ADDRESSED TO ALL OF

17  YOU COLLECTIVELY, THEY SHALL BE CONSIDERED AS THOUGH DIRECTED TO

18  YOU INDIVIDUALLY, AND ARE TO BE ANSWERED BY EACH OF YOU

19  INDIVIDUALLY.  IF YOU FEEL THAT THE RESPONSE TO ANY OF THE

20  QUESTIONS WHICH I'M GOING TO ASK YOU HERE THIS MORNING IS OF A

21  PERSONAL NATURE, YOU SHOULD FEEL FREE TO REQUEST PERMISSION TO

22  APPROACH THE BENCH AND DISCUSS THE MATTER DIRECTLY.  IN THOSE

23  CIRCUMSTANCES, THE ATTORNEYS FOR THE PARTIES WILL APPROACH THE

24  BENCH AS WELL IN ORDER THAT THEY CAN HEAR WHAT YOU HAVE TO SAY.

25          IT IS ANTICIPATED THAT THE TRIAL OF THIS CASE MAY

1    REQUIRE AS LONG AS TWO WEEKS TO COMPLETE.  BY TWO WEEKS, WE MEAN

2    MONDAY THROUGH FRIDAY.  AND I KNOW THE ATTORNEYS ARE VERY WELL

3    PREPARED AND THAT THEY ARE GOING TO BE ABLE TO MEET THAT DEADLINE

4    OF COMPLETING THE TRIAL IN TWO WEEKS AND, IN FACT, MIGHT EVEN BE

5    ABLE TO FINISH IT EARLIER THAN TWO WEEKS.

6            WHAT I'M ABOUT TO SAY SHOULD NOT BE CONSTRUED AS AN

7    INVITATION TO ANY OF YOU TO CAPRICIOUSLY OR WITHOUT GOOD CAUSE

8    SEEK TO BE EXCLUDED MERELY TO AVOID DISCHARGING WITH A LEGAL AND

9    CIVIC DUTY WHICH YOU HAVE TO SERVE AS JURORS.  I'M ALSO GOING TO

10   ADVISE YOU THAT THIS JURY WILL NOT BE SEQUESTERED.  IN OTHER

11   WORDS, YOU WILL BE ALLOWED TO RETURN HOME IN THE EVENINGS.

12           THE TRIAL EACH DAY WILL START AT APPROXIMATELY

13   8:30, ASSUMING ALL OF YOU, THE NINE OF YOU WHO ARE SELECTED, CAN

14   BE HERE, AND WE WILL BREAK EACH DAY AT 5:00 P.M., GIVE OR TAKE

15   15 MINUTES.  THERE MAY BE DAYS WHEN I HAVE TASKS TO COVER WITH

16   THE ATTORNEYS, IN WHICH CASE WE MAY BREAK A LITTLE EARLIER THAN

17   THAT.  BUT THAT WILL BE THE SCHEDULE.  YOU WILL NOT BE HERE

18   BEYOND THE 5 O'CLOCK HOUR OTHER THAN TO WRAP UP SOME BUSINESS

19   HERE, AND WE WILL START EACH DAY AT 8:30 AND YOU WILL BE ALLOWED

20   TO RETURN HOME.  SO PLEASE FACTOR THAT INTO YOUR COMMENTS OR YOUR

21   THOUGHTS AT THIS POINT.

22           LET ME ASK IF ANY OF YOU HONESTLY AND

23   CONSCIENTIOUSLY BELIEVE THAT YOU WOULD BE SUBJECTED TO SERIOUS

24   HARDSHIP OR WOULD BE OTHERWISE SERIOUSLY INCONVENIENCED OR

25   AFFECTED IF YOU WERE SELECTED BECAUSE OF THE LENGTH OF THIS TRIAL

1   AND YOU'VE NOT ALREADY BROUGHT THOSE ISSUES TO MY ATTENTION BY

2   WAY OF THE QUESTIONNAIRE, I WOULD REQUEST THAT YOU AT THIS TIME

3   PLEASE RAISE YOUR HAND.  DOES ANYBODY HAVE A VERY SERIOUS ISSUE

4   THAT WOULD PREVENT YOU FROM BEING HERE?

5              YES, SIR.  NUMBER 13 WOULD BE MR. VICKNAIR.

6         PROSPECTIVE JUROR 13:  SINCE I FILLED OUT THE

7   QUESTIONNAIRE, I HAD SOME TROUBLE WITH MY EYES AND IT'S KIND OF

8   HARD FOR ME TO DRIVE.  AND I LIVE IN LAPLACE.

9         THE COURT:  IS THAT TEMPORARY, I MEAN, YOU JUST WENT TO

10  THE DOCTOR FOR THAT, OR IS THAT SOMETHING THAT HAS HAPPENED

11  AND --

12        PROSPECTIVE JUROR 13:  WELL, I'VE BEEN HAVING THIS FOR A

13  WHILE.  IT COMES AND GOES.  THEY CALL IT NIGHT BLINDNESS WHERE

14  THE FLUID LEAKS BLIND MY RETINA.

15        THE COURT:  YOU HAVE A DOCTOR'S APPOINTMENT OR ARE YOU

16  JUST TELLING US THAT BECAUSE YOU MAY NOT BE ABLE TO SEE AS WELL

17  AS OTHER JURORS?

18        PROSPECTIVE JUROR 13:  I'M SUPPOSED TO GO BACK TO HIM,

19  BUT I HAVEN'T MADE ANOTHER APPOINTMENT.  BUT IT'S HARD FOR ME TO

20  SEE SOMETIMES.

21        THE COURT:  THANK YOU, MR. VICKNAIR.

22             LET'S SEE.  NUMBER 16.  THAT WOULD BE MS. HOOFKIN.

23  IF YOU WOULD, STAND UP, PLEASE.

24        PROSPECTIVE JUROR 16:  I HAVE A DOCTOR'S APPOINTMENT ON

25  FRIDAY.

1          THE COURT:  IS THAT A REGULAR DOCTOR'S APPOINTMENT OR IS

2     THAT FOR A CONDITION THAT YOU NEED TREATMENT FOR THAT HAS COME

3     UP?

4          PROSPECTIVE JUROR 16:  YES, IT'S FOR A REGULAR

5     APPOINTMENT.

6          THE COURT:  SOMETHING THAT CAME UP?

7          PROSPECTIVE JUROR 16:  NO, IT'S REGULAR.

8          THE COURT:  IT'S FOR A REGULAR APPOINTMENT?

9          PROSPECTIVE JUROR 16:  UH-HUH (AFFIRMATIVE RESPONSE).

10         THE COURT:  THANK YOU.  WE'LL COVER THAT IF THE

11    ATTORNEYS WANT TO COVER THAT, WE MAY BRING YOU UP HERE TO

12    QUESTION YOU ABOUT IT RATHER HAVE YOU TELL US ABOUT YOUR DOCTOR'S

13    VISIT HERE IN OPEN COURT.

14             NUMBER 45, THAT WOULD BE MR. KIRZNER.

15         PROSPECTIVE JUROR 45:  YES.  MY PROBLEM IS THAT I HAVE

16    -- I'M A COMMISSION SALESMAN AND I HAVE SOME JOBS GOING ON HERE

17    IN TOWN WITH CONSTRUCTION WORK WITH THE SCHOOL BOARDS, AND MY

18    PROBLEM IS IF I'M HERE FOR TWO WEEKS, QUITE TRUTHFULLY AND

19    HONESTLY, I DON'T GET PAID AND I HAVE WORK THAT IS GOING TO BE

20    HAPPENING WITHIN THE NEXT TWO WEEKS.

21         THE COURT:  OKAY.  I UNDERSTAND, THANK YOU.

22             AND NUMBER 55?

23         PROSPECTIVE JUROR 55:  I'M A SOLE PROPRIETOR OF A

24    COMPANY WITH 13 EMPLOYEES, AND LIKE TODAY I HAVE HALF OF THEM NOT

25    THERE.

1           THE COURT:  HALF OF THEM --

2           PROSPECTIVE JUROR 55:  NOT THERE BECAUSE IT'S RAINING.

3    SO I HAVE ISSUES WITH EMPLOYEES AND I'M A SOLE PROPRIETOR.

4           THE COURT:  THANK YOU.  THAT WAS -- IF I DON'T CALL YOUR

5    NAME OUT, TELL US.  THAT WAS MS. STEFFY?

6           PROSPECTIVE JUROR 55:  CORRECT.

7           THE COURT:  CORRECT.

8               NUMBER 64?

9           PROSPECTIVE JUROR 64:  I HAVE ATTACHED A COUPLE OF

10   LETTERS TO MY QUESTIONNAIRE REGARDING MY JOB.

11          THE COURT:  MS. BLANCHARD?

12          PROSPECTIVE JUROR 64:  YES, I AM A SECRETARY IN A

13   TWO-PERSON COMPANY AND IF I'M GONE FOR ANY PERIOD OF TIME, MY

14   DEADLINES DON'T GET MET.  AND MY BOSS DOESN'T DO THE WORK, I DO

15   THE WORK.

16          THE COURT:  THAT'S USUALLY THE CASE.

17              NUMBER 29?

18          PROSPECTIVE JUROR 29:  I JUST STARTED A NEW POSITION

19   WITH MY JOB AS A NURSE AT THE HOSPITAL.

20          THE COURT:  WHEN DID YOU START?

21          PROSPECTIVE JUROR 29:  I JUST STARTED ABOUT A MONTH AGO.

22   I'M STILL IN TRAINING.  PLUS I DO HAVE TWO YOUNG KIDS.  MY

23   HUSBAND WORKS SHIFT WORK, SO I'M USUALLY RESPONSIBLE FOR BRINGING

24   THEM TO AND -- WELL, MY SON, I HAVE TO DRIVE HIM TO AND FROM

25   SCHOOL.  AND ALSO, I ONLY GET PAID FOR A WEEK IF I'M ABSENT FROM

1  WORK FOR JURY DUTY.

2          THE COURT:  THAT'S MS. HAMILTON.

3              THANK YOU, MS. HAMILTON.

4              25 WOULD BE MS. ROJAS.

5          PROSPECTIVE JUROR 25:  YES.  I'M A FULL-TIME GRADUATE

6  STUDENT, JUST TO LET YOU KNOW.

7          THE COURT:  SO YOU'RE IN SCHOOL RIGHT NOW, OR SHOULD BE

8  IN SCHOOL THIS MORNING?

9          PROSPECTIVE JUROR 25:  WELL, IT'S AN EVENING, 4:30

10  CLASSES.

11          THE COURT:  I UNDERSTAND.  AND LET ME TELL ALL OF YOU

12  ALL, I USUALLY SAVE THIS FOR WHEN I EXCUSE THOSE OF YOU WHO HAVE

13  NOT BEEN SELECTED, BUT THERE IS NEVER A GOOD TIME FOR YOU TO SHOW

14  UP FOR JURY DUTY IN YOUR LIVES.  I UNDERSTAND THAT.  YOU COULD BE

15  ELSEWHERE THIS MORNING BUT FOR THE FACT THAT YOU RECEIVED A JURY

16  SUMMONS, YOU'RE HERE TODAY WITH US.  I KNOW THAT ALL OF YOU HAVE

17  FAMILIES.  I KNOW THAT MANY OF YOU, IF NOT ALL OF YOU, HAVE JOBS

18  THAT YOU ARE DEPENDENT UPON TO DISCHARGE CERTAIN DUTIES AT THOSE

19  JOBS.  MAYBE YOU HAVE A SICK CHILD OR A SICK ELDERLY PERSON OR

20  EVEN SOMEBODY WHO IS NOT SICK THAT DEPENDS ON YOU.  WE'RE

21  COGNIZANT OF ALL OF THAT, AND I KNOW THAT IT'S A SACRIFICE FOR

22  YOU ALL TO BE HERE TODAY, AND IT WILL BE A SACRIFICE FOR THOSE OF

23  YOU WHO SIT ON THE JURY.  BUT SITTING ON A JURY IS THE GREATEST

24  CIVIC RESPONSIBILITY THAT YOU HAVE OTHER THAN PERHAPS YOUR RIGHT

25  TO VOTE.

1    SO I DO APPRECIATE YOU ALL BEING HERE AND I AM

2    COGNIZANT AND I'M NOT IN ANY WAY DISCOUNTING ANY OF THE REASONS

3    THAT I'VE JUST HEARD.  SO DON'T INTERPRET IT AS SUCH, BUT WE KNOW

4    THAT YOU HAVE OTHER THINGS GOING ON THAT YOU NEED TO DEAL WITH

5    AND PLACES YOU NEED TO BE, SO WE HAVE TO FACTOR THAT IN WHEN WE

6    MAKE A SELECTION PROCESS AND WE HAVE FOLKS HERE TO PARTICIPATE IN

7    THE JURY SELECTION PROCESS.

8            DOES ANYBODY HAVE ELSE HAVE ANY OTHER CRITICAL

9    REASON THAT THEY THINK WOULD PREVENT THEM FROM SITTING ON THIS

10   JURY?

11           YES, SIR.  NUMBER 69, WHO I JUST MENTIONED THAT WAS

12   MR. ROMERO.

13           PROSPECTIVE JUROR 69:  YES, SIR.  I'VE BEEN ATTENDING TO

14   THE VA HOSPITAL BECAUSE I HAVE ANGER MANAGEMENT PROBLEMS AND I'VE

15   BEEN ATTENDING, LIKE, EVERY FRIDAY.  AND THEN I GOT A COUPLE OF

16   APPOINTMENTS SOMETIME THIS MONTH.

17           THE COURT:  ALL RIGHT.  THANK YOU, MR. ROMERO.

18           NUMBER 37, THAT WOULD BE MR. HYMEL.

19           PROSPECTIVE JUROR 37:  YES, SIR.  I THOUGHT I HEARD YOU

20   SAY ABOUT TURNING IN DOCUMENTATION WITH THE QUESTIONNAIRE.  I

21   ALSO TURNED IN SOME DOCUMENTATION WITH MY QUESTIONNAIRE, I HAVE

22   TWO SMALL ISSUES.  I'M PREPARING FOR AN OVERSEAS JOB FOR NINE

23   MONTHS FOR MY COMPANY.  I'M SCHEDULED TO LEAVE OCTOBER 1ST FOR AN

24   OVERSEAS JOB, SO I DON'T KNOW IF THAT'S GOING TO CONFLICT WITH

25   THIS TRIAL.  AND I ALSO HAVE A MEDICAL APPOINTMENT THIS COMING

1   FRIDAY.

2           THE COURT:  THANK YOU, MR. HYMEL.

3               NUMBER 58?

4           PROSPECTIVE JUROR 58:  GOOD MORNING, YOUR HONOR.

5           THE COURT:  GOOD MORNING.  YOU'RE MR. SMITH?

6           PROSPECTIVE JUROR 58:  YES, SIR, I AM.  WHAT WOULD

7   PREVENT ME FROM SERVING ON THIS JURY IS THAT I'M ALREADY PARTIAL

8   TO A VERDICT.

9           THE COURT:  WAIT.  I HAVEN'T GOT TO THAT QUESTION YET.

10  I HAVEN'T GOT TO THAT QUESTION YET.  WHEN I ASK THAT QUESTION,

11  I'LL LOOK FOR NUMBER 58, WE'LL TAKE YOU FIRST, IF I REMEMBER.

12  BUT WHAT I DON'T WANT TO HAVE HAPPEN, WHEN I ASK THAT QUESTION --

13  Y'ALL ARE PRETTY SHARP, YOU'RE GETTING AHEAD OF US HERE.  WHEN I

14  ASK THAT QUESTION, I DON'T WANT ANYBODY TO BLURT OUT AND SAY, "I

15  CAN'T BE A JUROR ON THIS CASE BECAUSE I THINK SUCH AND SUCH,"

16  BECAUSE MANY OF YOU, HOPEFULLY AT LEAST NINE OF YOU, WON'T HAVE

17  THAT SAME PROCLIVITY.

18          SO LET'S GO AHEAD AND GO THROUGH THE QUESTIONS

19  HERE.  IF THERE IS ANYBODY ELSE THAT HAS A PERSONAL ISSUE, AND

20  WHEN I SAY "PERSONAL," OF THE NATURE THAT WE'VE ALREADY HEARD, WE

21  DID HAVE QUESTIONNAIRES AND THAT QUESTION WAS ASKED, AND SOME OF

22  YOU DID HAVE ANSWERS FOR THAT.  IF YOU'RE HERE, THAT MEANS THAT

23  EITHER YOUR ANSWER WAS NOT GOOD ENOUGH TO EXCUSE YOU OR THAT WE

24  WANTED TO HEAR MORE ABOUT IT BEFORE YOU GOT EXCUSED FROM JURY

25  SERVICE ON THIS PARTICULAR JURY.

1       AND QUITE HONESTLY, IF YOU ARE NOT CHOSEN FOR THIS

2  JURY, YOU MAY RETURN DOWNSTAIRS AND THERE MAY BE ANOTHER SECTION

3  OF COURT THAT YOU MAY BE SUMMONED TO LATER ON THIS MORNING.  SO

4  LET'S GO AHEAD AND WORK THROUGH THE QUESTIONS HERE.

5       IF YOUR ANSWERS TO ANY OF THE FOLLOWING QUESTIONS

6  ARE NO, PLEASE RAISE YOUR HAND.  AND WE HAVE ALREADY HEARD, I

7  THINK, FROM MR. VICKNAIR WITH REGARD TO CAN YOU HEAR AND SEE

8  WELL.

9       ANYBODY OTHER THAN WHAT WE'VE HEARD FROM MR.

10  VICKNAIR?  ANYBODY OTHER THAN MR. VICKNAIR HAVE ANY PROBLEM

11  SEEING OR HEARING?

12       ALL OF YOU READ, WRITE AND UNDERSTAND ENGLISH?

13  ANYBODY HERE THAT HAS A PROBLEM WITH THE ENGLISH LANGUAGE?  IN

14  TERMS OF COMPREHENSION.  A LOT OF US HAVE PROBLEMS WITH THE

15  ENGINE LANGUAGE, INCLUDING MYSELF SOMETIMES.

16       IF ANY OF YOU SHOULD ANSWER ANY OF THE FOLLOWING

17  QUESTIONS YES, PLEASE RAISE YOUR HAND, STATE YOUR NUMBER AND

18  NAME.  THE PLAINTIFF IN THIS CASE, THE PLAINTIFFS IN THE CASE ARE

19  ALANA ALEXANDER AND CHRISTOPHER COOPER.  ARE ANY OF YOU RELATED

20  BY BLOOD OR MARRIAGE TO OR ARE ANY OF YOU PERSONALLY ACQUAINTED

21  WITH ALANA ALEXANDER OR CHRISTOPHER COOPER?

22       MR. BUZBEE:  CAN THEY STAND UP SO EVERYBODY CAN SEE

23  THEM?

24       THE COURT:  I HAVEN'T GOTTEN TO YOU ALL YET.

25       MR. BUZBEE:  I WAS TALKING ABOUT THE PLAINTIFFS.

1        THE COURT:  I HAVEN'T GOTTEN TO THE ATTORNEYS YET.  OH,
2   I SEE WHAT YOU'RE SAYING.  YES, IF YOU WOULD, MS. ALEXANDER AND
3   MR. COOPER.  I'M SORRY, I MISUNDERSTOOD YOU, MR. BUZBEE.

4        DOES ANYBODY KNOW THESE TWO PEOPLE WHO ARE STANDING
5   UP?  THANK YOU.

6        THE DEFENDANTS IN THE CASE ARE GULF STREAM COACH
7   AND FLUOR ENTERPRISES.  AND FLUOR IS SPELLED F-L-U-O-R.  ARE ANY
8   OF YOU ALL PERSONALLY ACQUAINTED WITH EITHER OF THESE TWO
9   COMPANIES OR ANYONE WHO WORKS FOR THESE TWO COMPANIES?

10        ALL RIGHT.  LET ME ASK BEFORE I ASK COUNSEL TO
11   STAND AND REINTRODUCE THEMSELVES TO YOU AND THEIR LAW FIRMS --

12        MR. WATTS:  JUDGE, NUMBER 41.

13        THE COURT:  NUMBER 41, THAT WOULD BE MS. WATTS.

14        PROSPECTIVE JUROR 41:  I HAVE AN UNCLE WHO IS AN
15   ATTORNEY FOR FLUOR ENTERPRISES.

16        THE COURT:  YOU HAVE AN UNCLE WHO'S AN ATTORNEY FOR
17   FLUOR ENTERPRISES?

18        PROSPECTIVE JUROR 41:  YES.

19        THE COURT:  AND WHAT'S THE NAME OF THAT PERSON?

20        PROSPECTIVE JUROR 41:  JIM KENNY.

21        THE COURT:  JIM KENNY.  OKAY.  THANK YOU, MS. WATTS.

22        LET ME ASK YOU ALL, WE TYPICALLY DON'T ASK THIS,
23   BUT DO ANY OF YOU ALL KNOW EACH OTHER?  WE DON'T WANT TO HAVE TWO
24   PEOPLE ON THE JURY, SOMEBODY AND THEIR COUSIN OR SOMEBODY AND
25   THEIR BROTHER OR A NEPHEW OR SOMETHING LIKE THAT.

1          MR. WETZEL, NUMBER THREE?

2          PROSPECTIVE JUROR 3:  I'M FRIENDS WITH A COUPLE OF THEM.

3  I MEAN, THEY RECOGNIZE ME AND I RECOGNIZE THEM WHEN WE COME TO

4  COURT.

5          THE COURT:  FROM THE NEIGHBORHOOD?

6          JUROR THREE:  NO, WE WORK TOGETHER OR ARE IN THE SAME

7  BUSINESS.

8          THE COURT:  YES, YOU'VE GOT YOUR HAND UP.  NUMBER 18

9  WOULD BE MR. GUSTE.  YES.

10         PROSPECTIVE JUROR 18:  I KNOW MR. TOMMY LANE.  HE WAS

11 DOWNSTAIRS IN THE JURY ROOM.

12         THE COURT:  NUMBER 37, THAT WOULD BE MR. HYMEL AGAIN?

13         PROSPECTIVE JUROR 37:  HE AND I WORK TOGETHER, NUMBER

14 66.

15         THE COURT:  YOU KNOW NUMBER 66.  THAT WOULD BE

16 MR. BLANK.

17         OKAY.  AND MS. HATTIER?  EVERY TIME SOMEBODY RAISES

18 TWO, THAT MEANS THEY KNOW EACH OTHER.  AND YOU KNOW MS. BREWER?

19 ARE YOU ALL FRIENDS OR --

20         PROSPECTIVE JUROR 31:  FRIENDS.

21         THE COURT:  DOES ANYBODY ELSE HERE KNOW EACH OTHER IN

22 THE JURY POOL?  YES, SIR, NUMBER 44.  THAT WILL BE MR. GISCLAIR.

23         PROSPECTIVE JUROR 44:  I KNOW MR. NAQUIN.

24         THE COURT:  ALL RIGHT.  LET ME ASK THE ATTORNEYS AT THIS

25 TIME STARTING WITH PLAINTIFFS' COUNSEL, IF YOU ALL WOULD STAND

1  UP.  AGAIN, TELL THE JURY YOUR NAMES AND THE LAW FIRMS THAT YOU

2  ALL ARE WITH.

3          MR. WATTS:  YOUR HONOR, GOOD MORNING.  I'M MIKAL WATTS.

4  I'M WITH THE LAW FIRM OF WATTS, GUERRA & CRAFT.

5          MR. BUZBEE:  I'M TONY BUZBEE WITH THE BUZBEE LAW FIRM IN

6  DALLAS.

7          MR. HILLIARD:  GOOD MORNING.  I'M BOB HILLIARD AND MY

8  LAW FIRM IS CALLED, HILLIARD, MUNOZ & GUERRA.

9          MR. MEUNIER:  I'M JERRY MEUNIER WITH THE LAW FIRM OF

10 GAINSBURGH, BENJAMIN, DAVID, MEUNIER & WARSHAUER IN NEW ORLEANS.

11         THE COURT:  LET'S GO WITH GULF STREAM COACH.

12         MR. WEINSTOCK:  ANDREW WEINSTOCK WITH DUPLASS, ZWAIN.

13         MR. SCANDURRO:  TIM SCANDURRO WITH THE FIRM SCANDURRO &

14 LAYRISSON.

15         MR. GLASS:  JOE GLASS WITH DUPLASS, ZWAIN.

16         MR. PENOT:  CHARLES PENOT WITH MIDDLEBERG, RIDDLE &

17 GIANNA.

18         MR. SHERBURNE:  RICHARD SHERBURNE WITH MIDDLEBERG,

19 RIDDLE & GIANNA.

20         MS. MALLETT:  SONIA MALLETT, MIDDLEBERG, RIDDLE &

21 GIANNA.

22         THE COURT:  DO ANY OF YOU ALL KNOW ANY OF THE THESE

23 ATTORNEYS OR THEIR LAW FIRMS?

24             YES, 64.  THAT WOULD BE MS. BLANCHARD.

25             PROSPECTIVE JUROR 64:  THE GENTLEMAN THAT WORKS FOR

1  MUNOZ, WHAT'S MUNOZ'S FIRST NAME?

2        MR. HILLIARD:  JACOB.

3        PROSPECTIVE JUROR 64:  IS HE LOCAL?

4        MR. HILLIARD:  NO.

5        PROSPECTIVE JUROR 64:  I KNEW A GENTLEMAN BY THAT NAME.

6  I WAS MAKING SURE.

7        THE COURT:  MR. GUSTE, 18.

8        PROSPECTIVE JUROR 18:  YES, YOUR HONOR, I DO KNOW

9  MR. MEUNIER VERY, VERY WELL AND I'M ALSO VERY FAMILIAR WITH THE

10 DUPLASS FIRM BECAUSE MY SON USED TO WORK FOR THEM BEFORE HE

11 DECIDED HE DIDN'T LIKE CIVIL LITIGATION.  BUT I DO KNOW

12 MR. MEUNIER VERY WELL.  WE'RE ACTUALLY FRIENDS.

13       THE COURT:  SURE.  THANK YOU, MR. GUSTE.

14           ANYBODY ELSE HAVE ANY FAMILIARITY WITH THESE

15 ATTORNEYS OR THEIR LAW FIRMS?

16           HAVE ANY OF YOU ALL SERVED AS A JUROR IN A CRIMINAL

17 OR CIVIL CASE OR A MEMBER OF A GRAND JURY EITHER IN FEDERAL OR

18 STATE COURT, JUST A SHOW OF HANDS OR PADDLES?  ANYBODY SIT ON A

19 JURY BEFORE?

20           LET'S START ON THE FRONT ROW HERE, I BELIEVE NUMBER

21 SEVEN, MR. NAQUIN, DID YOU INDICATE -- IF YOU WOULD, STAND UP

22 WHEN YOU ANSWER AND SHOW THE ATTORNEYS YOUR PADDLE.  MR. NAQUIN,

23 NUMBER SEVEN.  GO AHEAD.  TELL US WHERE THE JURY SERVICE WAS,

24 WHAT TYPE OF CASE, AND IF YOU RECALL WHAT THE VERDICT WAS AND HOW

25 LONG AGO.

1            PROSPECTIVE JUROR 7:  IT WAS HERE PROBABLY TEN YEARS

2  AGO, MAYBE.  I WAS AN ALTERNATE, SO I DON'T KNOW HOW IT TURNED

3  OUT.

4            THE COURT:  CIVIL OR CRIMINAL?

5            PROSPECTIVE JUROR 7:  CIVIL.

6            THE COURT:  YOU DID NOT DELIBERATE?

7            PROSPECTIVE JUROR 7:  NO.

8            THE COURT:  THANK YOU, MR. NAQUIN.

9            ANYBODY ELSE ON THE FRONT ROW?  ALL RIGHT.  LET'S

10  GO ON TO THE BACK ROW.  JUROR NUMBER TEN IS MR. DEMPSEY.

11            PROSPECTIVE JUROR 10:  YES, SIR.  I SERVED AS A JUROR ON

12  A CRIMINAL TRIAL IN ST. CHARLES PARISH.

13            THE COURT:  HOW LONG AGO?

14            PROSPECTIVE JUROR 10:  EIGHT YEARS AGO.  I'M NOT SURE.

15            THE COURT:  DO YOU KNOW WHAT THE RESULT WAS?

16            PROSPECTIVE JUROR 10:  WELL, IT WAS AN ARMED ROBBERY,

17  ATTEMPTED MURDER OR ATTEMPTED MANSLAUGHTER, AND IT WASN'T REALLY

18  WHETHER HE WAS GUILTY OR NOT, IT WAS WHETHER IT WAS INDUCED BY

19  COCAINE AND SO FORTH.  SO HE NEVER REALLY DEFENDED HIMSELF WITH

20  THE ARMED ROBBERY BECAUSE OF THE EVIDENCE THAT WAS THERE.  IT WAS

21  WHAT CAUSED IT.

22            THE COURT:  SO HE WAS FOUND GUILTY, YOU SAY?

23            PROSPECTIVE JUROR 10:  YES.

24            THE COURT:  THANK YOU.  LET'S SEE.  MR. VICKNAIR?

25            PROSPECTIVE JUROR 13:  I SERVED HERE.  IT WAS ABOUT SIX

1    TO TEN YEARS AGO.  IT WAS A CIVIL CASE.  AND IT WAS NOT GUILTY.

2          THE COURT:  A CIVIL CASE, THE DEFENDANT WAS NOT LIABLE

3    TO THE PLAINTIFF?  I APPRECIATE YOU SAYING THAT.  MAYBE I SHOULD

4    BE CLEAR.  IN A CIVIL CASE, A PLAINTIFF FILES AN ACTION IN COURT

5    WHERE A PLAINTIFF SEEKS TO ESTABLISH THE LIABILITY OF A DEFENDANT

6    AND TO BE COMPENSATED WITH SOME TYPE OF RELIEF, USUALLY SOME TYPE

7    OF MONETARY RELIEF.  IN A CRIMINAL CASE, THE GOVERNMENT; IN STATE

8    COURT, IT'S THE DISTRICT ATTORNEY'S OFFICE; IN FEDERAL COURT,

9    IT'S THE U.S. ATTORNEY'S OFFICE, FILES CHARGES, CRIMINAL CHARGES

10   AND THE DEFENDANT, IN THAT CASE, IS SEEKING TO BE FOUND NOT

11   GUILTY.

12          DOES EVERYBODY UNDERSTAND THE DIFFERENCE?  SO WHEN

13   YOU TELL ME THAT YOU SERVED ON THE JURY AND I ASK YOU WHETHER IT

14   WAS CIVIL OR CRIMINAL --

15          PROSPECTIVE JUROR 13:  I GUESS IT WAS CRIMINAL.  I MEAN,

16   WE FOUND THE COMPANY NOT GUILTY OF THE CHARGES.

17          THE COURT:  AS LAWYERS WE SAY "NOT LIABLE," BUT IN OTHER

18   WORDS, IT'S THE EQUIVALENT OF NOT GUILTY IN A CRIMINAL CASE.  DO

19   YOU UNDERSTAND THAT?

20          PROSPECTIVE JUROR 13:  YES.

21          THE COURT:  WHAT TYPE OF CASE WAS IT?

22          PROSPECTIVE JUROR 13:  I GUESS IT WAS A CIVIL CASE.

23          THE COURT:  NO, BUT I MEAN, WAS IT SOMEBODY CLAIMING AN

24   INJURY OR A CONTRACT CASE OR EMPLOYMENT?

25          PROSPECTIVE JUROR 13:  IT WAS SOMEBODY THAT HIT

1  SOMETHING IN A PARKING LOT AND WAS TRYING TO SUE THE OWNER OF THE

2  BUSINESS.

3          THE COURT:  I SEE.  THANK YOU, MR. VICKNAIR.

4          ANYBODY ELSE ON THE SECOND ROW?  YES, SIR.  NUMBER

5  14 WOULD BE MR. STRICKER.

6          PROSPECTIVE JUROR 14:  ABOUT 20 PLUS YEARS AGO, IN THIS

7  BUILDING, AND IT WAS PLAINTIFF VERSUS ST. TAMMANY PARISH

8  SHERIFF'S DEPARTMENT.  AND THE PLAINTIFF WAS SUING THE SHERIFF'S

9  DEPARTMENT FOR DAMAGES.  AND IT WAS RULED IN FAVOR OF THE

10 PLAINTIFF.

11         THE COURT:  IN FAVOR OF THE PLAINTIFF.  WAS IT LIKE A

12 POLICE BRUTALITY?

13         PROSPECTIVE JUROR 14:  YES.

14         THE COURT:  THANK YOU.

15         ANYONE ELSE IN THE JURY BOX?

16         ALL RIGHT.  THE FRONT ROW HERE IN THE COURTROOM,

17 NUMBER 17, THAT'S MR. DUPRE.

18         PROSPECTIVE JUROR 17:  I SERVED ON THE CRIMINAL ONE AND

19 HE PLED IT OUT AND SO WE DIDN'T GIVE A VERDICT OR ANYTHING.  IT

20 WAS, LIKE, 13 YEARS AGO.

21         THE COURT:  WHERE WAS THAT SERVICE?

22         PROSPECTIVE JUROR 17:  IN HOUMA.  AND I HAD ANOTHER ONE

23 IN HOUMA, IT WAS CIVIL AND I WAS AN ALTERNATE.

24         THE COURT:  YOU WERE AN ALTERNATE.  THANK YOU.

25         MR. GUSTE?

1          PROSPECTIVE JUROR 18:  YES, SIR, I WAS PICKED TO SERVE

2    ON A CRIMINAL JURY, THE SAME.  I DIDN'T ACTUALLY HAVE TO SERVE,

3    BUT WAS CHOSEN IN A CRIMINAL CASE.  IN CRIMINAL DISTRICT COURT.

4          THE COURT:  THANK YOU, MR. GUSTE.  NUMBER 19.  THAT

5    WOULD BE MS. BROWN.

6          PROSPECTIVE JUROR 19:  YES, SIR.  I SERVED IN A CRIMINAL

7    CASE IN TERREBONNE PARISH ABOUT 17 YEARS AGO.

8          THE COURT:  WHAT TYPE OF CASE?

9          PROSPECTIVE JUROR 19:  IT WAS A CASE WHERE A PRIEST

10   MOLESTED AN ALTAR BOY.

11         THE COURT:  AND WHAT WAS THE RESULT, THE JURY VERDICT?

12         PROSPECTIVE JUROR 19:  GUILTY.

13         THE COURT:  GUILTY.  ALL RIGHT.

14             ANYBODY ELSE ON THE FRONT ROW OF THE COURTROOM?

15             LET'S GO ONTO THE SECOND ROW.  THE ROW RIGHT BEHIND

16   THE PARTITION THERE.  NUMBER 24.  THAT WOULD BE MS. ROHNER?

17         PROSPECTIVE JUROR 24:  YES, I SERVED IN CIVIL DUTY HERE

18   IN THIS BUILDING ABOUT 15 YEARS AGO.  IT WAS A MARITIME SUIT AND

19   WE DIDN'T HEAR EXACTLY WHAT HE WANTED.

20         THE COURT:  SAY THE LAST PART AGAIN.

21         PROSPECTIVE JUROR 24:  HE WASN'T GIVEN EXACTLY WHAT HE

22   WANTED.

23         THE COURT:  THE PLAINTIFF WAS NOT GIVEN EXACTLY WHAT HE

24   WANTED?  BUT THERE WAS A JUDGMENT IN FAVOR OF THE PLAINTIFF?  OR

25   WAS THE PLAINTIFF NOT AWARDED ANYTHING?

1          PROSPECTIVE JUROR 24:  HE WAS AWARDED SOMETHING.  BUT IT

2    WAS NOT COMPLETELY WHAT HE WANTED.

3          THE COURT:  THANK YOU.  ANYBODY ELSE ON THAT ROW?

4          NUMBER 30 WOULD BE MR. REED.

5          PROSPECTIVE JUROR 30:  YES, YOUR HONOR.  I SERVED ONCE,

6    FEDERAL COURT; TWICE, ST. TAMMANY PARISH.  FEDERAL COURT WAS

7    APPROXIMATELY SIX OR EIGHT YEARS AGO.  IT WAS AN INJURY CASE,

8    NOMINAL, NOMINAL -- WHAT'S THE RIGHT WORD -- WAS AWARDED.

9          THE COURT:  NOMINAL DAMAGES?

10         PROSPECTIVE JUROR 30:  YES, SIR.  ST. TAMMANY PARISH WAS

11   AN AGGRAVATED RAPE CASE AND THE PERSON WAS FOUND GUILTY.

12         THE COURT:  OKAY.  ANYBODY ELSE ON THAT ROW?  THE ROW

13   RIGHT BEHIND?

14         NEXT ROW.  LET'S GO TO NUMBER 44.  I THINK THAT

15   WOULD BE MR. GISCLAIR.

16         PROSPECTIVE JUROR 44:  YES, SIR.  I SERVED IN A CRIMINAL

17   TRIAL IN ASSUMPTION PARISH AS AN ALTERNATE ON THE DRUG

18   DISTRIBUTION CASE.

19         THE COURT:  YOU WERE NOT CALLED UPON TO DELIBERATE AS AN

20   ALTERNATE?

21         PROSPECTIVE JUROR 44:  NO, I WAS RELEASED.

22         THE COURT:  HOW LONG AGO WAS THAT?

23         PROSPECTIVE JUROR 44:  BACK IN '91, 92.

24         THE COURT:  LET'S SEE.  NUMBER 45 IS MR. KIRZNER?

25         PROSPECTIVE JUROR 45:  YES, I SERVED ON A CIVIL CASE IN

1   JEFFERSON PARISH ABOUT 15, 20 YEARS AGO WITH -- THE PLAINTIFF WAS

2   SUING.  SUPPOSEDLY FELL AND HURT HIMSELF AND HE WAS -- IT WAS IN

3   FAVOR OF THE DEFENDANT WHERE HE WAS NOT AWARDED ANY FEES.

4           THE COURT:  ALL RIGHT.  NUMBER 47 IS MS. BARRE?

5           PROSPECTIVE JUROR 47:  YES, SIR.  I SERVED ON A PERSONAL

6   INJURY SUIT AT THE JDC AND THEY SETTLED BEFORE WE GOT TO

7   DELIBERATE.

8           THE COURT:  THANK YOU.  NUMBER 48, THAT WOULD BE

9   MS. MCGRUDER?

10          PROSPECTIVE JUROR 48:  YES, I'VE SERVED ON THREE

11  CRIMINAL CASES, A FIRST-DEGREE MURDER TRIAL, MANSLAUGHTER AND A

12  DRUG TRIAL, AND I ALSO SERVED IN CIVIL COURT WITH THE PLAINTIFF

13  SUING THE STATE FOR A TRAFFIC ACCIDENT.

14          THE COURT:  DO YOU RECALL THE RESULTS OF THOSE TRIALS

15  THAT YOU PARTICIPATED IN?

16          PROSPECTIVE JUROR 48:  THE FIRST-DEGREE MURDER TRIAL, WE

17  WERE SEQUESTERED AND WE FOUND HIM GUILTY OF SECOND-DEGREE MURDER;

18  MANSLAUGHTER, WAS FOUND GUILTY; OF DRUG TRAFFICKING, WAS FOUND

19  GUILTY; AND CIVIL COURT, THE PLAINTIFF WASN'T REWARDED ANYTHING.

20          THE COURT:  THANK YOU, MS. MCGRUDER.

21             ANYONE ELSE ON THAT ROW WHERE MS. MCGRUDER IS?

22             LET'S GO TO THE ROW BEHIND THAT.  NUMBER 58, THAT

23  WOULD BE MR. SMITH.

24          PROSPECTIVE JUROR 58:  YES, SIR.  I DIDN'T SERVE AS AN

25  ACTUAL JUROR.  I WAS AN ALTERNATE FOR A STABBING CASE JUST BEFORE

1    THE HURRICANE IN CRIMINAL DISTRICT COURT AND I WASN'T PRIVILEGED

2    TO HEAR THE VERDICT AND I HAD THE CHANCE TO.  AS NOW, JUST LIKE

3    THEN, MY MIND IS ALREADY MADE UP.

4         THE COURT:  ANYBODY ELSE ON THE ROW WHERE MR. SMITH IS?

5              ON THE LAST ROW, IS THERE ANOTHER ROW BEHIND

6    MR. SMITH?

7              NUMBER 65, THAT WOULD BE MS. DESEAMUS.

8         PROSPECTIVE JUROR 65:  YES, I WAS ON A JEFFERSON PARISH

9    CRIMINAL CASE, ARSON, ABOUT 20 YEARS AGO, WE FOUND HIM NOT

10   GUILTY.

11        THE COURT:  THANK YOU.  ANYBODY ELSE ON THAT ROW?

12   NUMBER 67 WOULD BE MS. TURNIPSEED.

13        PROSPECTIVE JUROR 67:  I SERVED ON A CRIMINAL JURY IN

14   JEFFERSON PARISH.  IT WAS ABOUT, LIKE, MAYBE FIVE OR SIX YEARS

15   AGO.  IT WAS RAPE.  THE VERDICT WAS GUILTY.

16        THE COURT:  ANYBODY ELSE?  NUMBER 30.  THAT, AGAIN,

17   WOULD BE MR. REED.

18        PROSPECTIVE JUROR 30:  YES, YOUR HONOR.  I'M SORRY, THE

19   SECOND CASE THAT I SERVED ON IN ST. TAMMANY PARISH WAS AN AUTO

20   ACCIDENT INJURY CASE, AGAIN NOMINAL COMPENSATION WAS AWARDED.

21        THE COURT:  THANK YOU, MR. REED.

22              HAVE ANY OF YOU ALL PARTICIPATED IN A LAWSUIT AS A

23   PARTY, MEANING AS A PLAINTIFF OR DEFENDANT OR AS A WITNESS OR IN

24   SOME OTHER CAPACITY?  LISTEN CAREFULLY.  HAVE YOU EVER

25   PARTICIPATED IN A LAWSUIT AS A PARTY, MEANING PLAINTIFF OR A

1    DEFENDANT OR AS A WITNESS IN A LAWSUIT OR IN SOME OTHER CAPACITY?

2    WHEN I SAY THAT, I MEAN, IF YOU HAVE WORKED AT A LAW FIRM OR

3    SOMETHING OF THAT NATURE, WHERE YOU PARTICIPATED IN A LAWSUIT,

4    NOT AS AN OBSERVER WHO CAME TO COURT, HAVE YOU PARTICIPATED IN

5    THE LAWSUIT?

6            NUMBER THREE.  THAT, AGAIN, IS MR. WETZEL.

7            PROSPECTIVE JUROR 3:  YES, YOUR HONOR.  I HAVE ABOUT

8    FOUR LAWSUITS GOING RIGHT NOW WHERE I'M THE -- NOT THE DEFENDANT,

9    THE PLAINTIFF.

10           THE COURT:  YOU'RE THE PLAINTIFF?

11           PROSPECTIVE JUROR 3:  I'VE ALSO -- LET ME SAY I'VE HAD A

12   COUPLE OF OTHERS THAT HAVE GONE TO COURT, AND I'VE WON ONE AND

13   LOST ONE.

14           THE COURT:  AND WHAT ARE THE NATURE OF THOSE LAWSUITS?

15   IS IT SOMETHING RELATED TO YOUR BUSINESS, OR IS IT SOMETHING THAT

16   YOU --

17           PROSPECTIVE JUROR 3:  IT'S RELATED -- WELL, IT'S RELATED

18   TO MY BUSINESS, BUT IT'S JUST -- WELL, I'M SURE YOU DON'T --

19           THE COURT:  CAN YOU DESCRIBE THEM GENERALLY?

20           PROSPECTIVE JUROR 3:  I CAN JUST SAY IT'S -- I DON'T

21   KNOW HOW TO EXPLAIN IT WITHOUT MAYBE GETTING IN TROUBLE, BUT I

22   JUST THINK IT'S FRIVOLOUS LAWSUITS THAT WE HAVE.

23           THE COURT:  YOU'RE A DEFENDANT IN THOSE LAWSUITS?

24           PROSPECTIVE JUROR 3:  I'M A DEFENDANT.

25           THE COURT:  SO CERTAIN PERSONS HAVE FILED A LAWSUIT

1   AGAINST YOU?

2           PROSPECTIVE JUROR 3:  RIGHT, FOR JUST OUT OF THE BLUE.

3           THE COURT:  ARISING OUT OF YOUR BUSINESS.  AND WHAT

4   BUSINESS ARE YOU IN?  WE NEED EVERYBODY TO SAY THAT, BUT GO

5   AHEAD.

6           PROSPECTIVE JUROR 3:  I OWN BIG EASY LIMOS IN KENNER,

7   LOUISIANA.

8           THE COURT:  I SEE.  OKAY.

9           PROSPECTIVE JUROR 3:  SO RIGHT NOW I HAVE FOUR GOING.

10          THE COURT:  AND TWO OF THEM HAVE GONE TO TRIAL?

11          PROSPECTIVE JUROR 3:  NO, NO.  THAT'S -- THE OTHER TWO

12  WERE GONE YEARS AGO, A COUPLE YEARS AGO.

13          THE COURT:  SO RIGHT NOW -- IS IT YOU OR YOUR COMPANY?

14          PROSPECTIVE JUROR 3:  I'M STILL -- HUH?

15          THE COURT:  YOU OR YOUR COMPANY?

16          PROSPECTIVE JUROR 3:  WELL, I'M THE PRESIDENT AND OWNER.

17  SO IT'S MY COMPANY BEING SUED, NOT ME PERSONALLY.

18          THE COURT:  RIGHT, RIGHT.  I UNDERSTAND.

19          PROSPECTIVE JUROR 3:  RIGHT.  IT'S AUTOMOBILE RELATED.

20          THE COURT:  THANK YOU.  ANYBODY ELSE ON THE FRONT ROW?

21             SECOND ROW IN THE JURY BOX?  YES, NUMBER 12 WOULD

22  BE MISS AUCOIN.

23          PROSPECTIVE JUROR 12:  YES.  I HAVE SUED AN EMPLOYER.

24          THE COURT:  YOU'VE SUED A FORMER EMPLOYER OF YOURS?

25          PROSPECTIVE JUROR 12:  UNLAWFUL TERMINATION.

1          THE COURT:  UNLAWFUL TERMINATION.  HOW LONG AGO WAS

2  THAT?

3          PROSPECTIVE JUROR 12:  ABOUT 15 YEARS.

4          THE COURT:  DID YOU GO TO TRIAL ON THAT?

5          PROSPECTIVE JUROR 12:  NO, WE SETTLED OUT OF COURT.

6          THE COURT:  YOU SETTLED IT.  OKAY.  ALL RIGHT.  THANK

7  YOU.

8              AND NUMBER 14 WOULD BE MR. STRICKER?

9          PROSPECTIVE JUROR 14:  ABOUT -- I GUESS ABOUT A YEAR AND

10 A HALF AGO, OUR CONTRACTOR POST-KATRINA DECIDED HE WANTED TO FILE

11 A LAWSUIT, SO I SECURED DEFENSE, BUT IT'S JUST SITTING THERE.

12 NOTHING IS HAPPENING.

13         THE COURT:  SO LET ME TRY AND UNDERSTAND IT.  RELATING

14 TO SOME CONTRACTOR'S WORK AFTER KATRINA, YOU PERSONALLY?

15         PROSPECTIVE JUROR 14:  CORRECT.

16         THE COURT:  YOUR HOME?

17         PROSPECTIVE JUROR 14:  YES, SIR.

18         THE COURT:  YOU FILED AN ACTION AGAINST A CONTRACTOR; DO

19 I UNDERSTAND CORRECTLY?

20         PROSPECTIVE JUROR 14:  HE FILED -- HE SERVED ME, AND I

21 SECURED DEFENSE.  SO THAT'S AS FAR AS IT'S GONE.

22         THE COURT:  ALL RIGHT.  THANK YOU, MR. STRICKER.

23         MR. PIERCE, DID YOU HAVE YOUR PADDLE UP?

24         PROSPECTIVE JUROR 15:  YES.  I WAS A WITNESS IN MARCH IN

25 A CASE, A LOCAL CASE, JEFFERSON PARISH, WHICH TWO BROTHERS WERE

1    SUING EACH OTHER OVER A BUSINESS ENTITY.

2              THE COURT:  AND YOU SERVED AS A WITNESS AT THAT TRIAL?

3              PROSPECTIVE JUROR 15:  I WAS PROBABLY ONE OF THE MAIN

4    KEY WITNESSES TO IT.

5              THE COURT:  AND THAT WENT TO TRIAL; YOU TESTIFIED IN

6    COURT?

7              PROSPECTIVE JUROR 15:  YES, SIR.

8              THE COURT:  WHAT WAS THE NATURE OF THEIR -- IT HAD TO DO

9    WITH THE DISSOLUTION OF A BUSINESS?

10             PROSPECTIVE JUROR 15:  NO, SIR.  TWO BROTHERS ACTUALLY

11   STARTED UP A LIMOUSINE BUSINESS.  AND AFTER A WHILE, ONE PAIRED

12   OFF, AND THEY WERE TRYING TO GET THE LIKENESS APART OF EACH

13   OTHER.

14             THE COURT:  IT WASN'T MR. WETZEL?

15             PROSPECTIVE JUROR 15:  NO.  I DO KNOW HIM, THOUGH.

16             PROSPECTIVE JUROR 3:  NOT YET.

17             PROSPECTIVE JUROR 15:  WE ARE IN THAT SAME GENERAL

18   THING.

19             THE COURT:  THANK YOU, MR. PIERCE.

20                  ON THE FRONT ROW -- LET'S SEE, BEFORE WE GO TO THE

21   FRONT ROW, I SEE MS. HOOFKIN HAS GOT HER PADDLE UP.

22             PROSPECTIVE JUROR 16:  I WAS INJURED AT WORK, AND MY

23   TRIAL IS IN JANUARY.

24             THE COURT:  IT'S COMING UP IN JANUARY, OR YOU ALREADY

25   HAD A TRIAL IN JANUARY?

1          PROSPECTIVE JUROR 16:  IT'S COMING UP IN JANUARY.

2          THE COURT:  AND YOU SUED BECAUSE OF AN INJURY AT WORK?

3          PROSPECTIVE JUROR 16:  UH-HUH (AFFIRMATIVE RESPONSE).

4          THE COURT:  AND WHO IS THE DEFENDANT IN THAT SUIT?

5          PROSPECTIVE JUROR 16:  THE HARTFORD.

6          THE COURT:  THE HARTFORD.  AND IT'S FOR LIKE A SLIP AND

7     FALL TYPE OF INJURY OR SOME OTHER --

8          PROSPECTIVE JUROR 16:  I FELL THE DAY IT SNOWED.

9          THE COURT:  THANK YOU.

10          ON THE FRONT ROW OF THE COURTROOM HERE, MR. GUSTE.

11          PROSPECTIVE JUROR 18:  YOUR HONOR, THE -- I'VE SPENT THE

12     GREATER PART OF MY CAREER REPRESENTING PLAINTIFFS IN VARIOUS

13     TYPES OF PERSONAL INJURY LITIGATION, SO I GUESS THAT I'VE BEEN

14     INVOLVED IN, I DON'T KNOW, A THOUSAND LAWSUITS IN THAT CAPACITY.

15          BUT ALSO, YOU KNOW, I'VE BEEN -- I'VE REPRESENTED

16     THE PLAINTIFF IN -- OVER 20-PLUS YEARS AGO IN A MOTORCYCLE

17     ACCIDENT WHEN I WAS INVOLVED WITH MOTORCYCLES.  MAKE IT 30 YEARS.

18     BUT I'VE ALSO HAD SUITS AGAINST, YOU KNOW, MY CONTRACTORS -- I

19     MEAN, MY HOMEOWNERS INSURER FOR VARIOUS APARTMENTS THAT I OWN.

20     I'VE BEEN SUED IN CONNECTION WITH ACCIDENTS THAT MY CHILDREN GOT

21     IN.  I'VE BEEN SUED OVER THE APARTMENTS.  SO THE ANSWER TO THE

22     QUESTION IS, YES, I'VE BEEN.

23          THE COURT:  THANK YOU, MR. GUSTE.

24          19 IS MS. BROWN.

25          PROSPECTIVE JUROR 19:  YES, YOUR HONOR.  I WORKED FOR A

1 COMPANY 28 YEARS AGO THAT MY LEFT HAND GOT CAUGHT IN A MEAT

2 GRINDER, AND I SUED THEIR INSURANCE COMPANY.  AND WE WOUND UP

3 SETTLING OUT OF COURT.

4         THE COURT:  MR. SMALLWOOD, NUMBER 21.

5         PROSPECTIVE JUROR 21:  GOOD MORNING, EVERYONE.  TWENTY

6 YEARS AGO, WE HAD A FIRE IN OUR HOUSE HERE IN NEW ORLEANS.  AND

7 OUR INSURANCE COMPANY, CNA, PAID A CLAIM TO REPAIR THE DAMAGES.

8 AND WE DID, IF I REMEMBER THE TERM RIGHT, SUBROGATED THE CASE

9 AGAINST THE PLUMBER, WHO HAD REPAIRED THE GAS LINE A FEW DAYS

10 BEFORE THE FIRE.

11         THE COURT:  THANK YOU, MR. SMALLWOOD.

12          ANYBODY ELSE ON THE FRONT ROW?  NEXT ROW?  YES.

13 NUMBER 30, THAT WOULD BE MR. REED.

14         PROSPECTIVE JUROR 30:  YES, YOUR HONOR.  I WAS A

15 PLAINTIFF IN AN AGE DISCRIMINATION SUIT, SETTLED OUT OF COURT.

16         THE COURT:  HOW LONG AGO WAS THAT?

17         PROSPECTIVE JUROR 30:  APPROXIMATELY 15 YEARS AGO, SIR.

18         THE COURT:  ALL RIGHT.  THANK YOU, MR. REED.

19          ANYBODY ELSE ON MR. REED'S ROW?  NUMBER 26 IS

20 MR. BACCHUS.

21         PROSPECTIVE JUROR 26:  TWO YEARS AGO, A DEFENDANT IN A

22 CASE THAT HAD WENT TO TRIAL HERE WITH MY COMPANY, BUT WE'RE

23 BASICALLY STILL FIGHTING THAT RIGHT NOW.

24         THE COURT:  OKAY.  MS. WATTS, YOU ALSO HAD YOUR PADDLE

25 SHOWN.

1          PROSPECTIVE JUROR 27:  OVER 20 YEARS AGO, MY HUSBAND AND

2    I FILED SUIT.  HE WAS A PEDESTRIAN HIT BY A CAR, BUT IT DID

3    NOT -- IT SETTLED OUT OF COURT.

4          THE COURT:  ANYBODY ELSE ON THAT ROW?  LET'S GO TO THE

5    ROW BEHIND THAT.

6               YES, NUMBER 36.  THAT WOULD BE MR. SALTER.

7          PROSPECTIVE JUROR 36:  YES, SIR.  I WAS A PLAINTIFF IN A

8    PERSONAL INJURY LAWSUIT IN '86, AND IT WAS SETTLED OUT OF COURT.

9          THE COURT:  WHAT TYPE OF SUIT?  WAS IT AN AUTO ACCIDENT?

10         PROSPECTIVE JUROR 36:  YES, SIR.

11         THE COURT:  ANYONE ELSE?  NUMBER 38 IS MR. MILLER.

12         PROSPECTIVE JUROR 38:  THE COMPANY I WORKED FOR, I WAS

13   THE MANAGER ON DUTY, AND WE'RE HAVING TO GO TO TRIAL ON A

14   PERSONAL INJURY WORKMEN'S COMP LAWSUIT.

15         THE COURT:  ANYONE ELSE IN THAT ROW?  THE ROW BEHIND

16   THAT?

17              NUMBER 42, AND THAT WOULD BE MR. NORDGREN.

18         PROSPECTIVE JUROR 42:  YES, SIR, YOUR HONOR.  I WAS

19   INVOLVED IN AN AUTOMOBILE ACCIDENT, ACTUALLY THE VICTIM, AND

20   SETTLED OUT OF COURT.

21         THE COURT:  HOW LONG AGO WAS THAT?

22         PROSPECTIVE JUROR 42:  '99.

23         THE COURT:  OKAY.  ABOUT TEN YEARS AGO.  ALL RIGHT.

24              OTHERS ON THAT -- LET'S SEE, NUMBER 45.  THAT WOULD

25   BE MR. KIRZNER.

1            PROSPECTIVE JUROR 45:  YES, I WAS INVOLVED IN A -- I GOT

2  INJURED ON THE JOB MAYBE ABOUT 30 YEARS AGO, AND IT WAS SETTLED

3  OUT OF COURT.

4            AND THEN, ABOUT 25 YEARS AGO, WE WERE DEFENDANTS.

5  MY FAMILY OWNS A PIECE OF PROPERTY THAT THE TENANT SUPPOSEDLY WAS

6  INJURED, AND I BELIEVE IT WAS SETTLED OUT OF COURT.

7            THE COURT:  ALL RIGHT.  47 IS MS. BARRÉ.

8            PROSPECTIVE JUROR 47:  YES.  IN 1986, I WAS INVOLVED IN

9  A PERSONAL INJURY WITH FOUR MEMBERS OF MY FAMILY.  I SETTLED FOR

10 DAMAGES.

11           IN 1990, I WAS A DEFENDANT IN A PERSONAL INJURY.

12 WE SETTLED OUT OF COURT.  AND I ALSO SERVED AS A MINUTE CLERK IN

13 JDC FOR 12 YEARS, AND I'VE SERVED ON A CIVIL GRAND JURY.

14           THE COURT:  THANK YOU, MS. BARRÉ.

15           ANYONE ELSE ON THAT ROW?  LET'S GO TO THE ROW

16 BEHIND THAT, THEN.  NUMBER 53 WOULD BE MS. SHELVIN.

17           PROSPECTIVE JUROR 53:  YES.  I WAS A PLAINTIFF IN AN

18 AUTO INJURY CASE IN MARCH OF 2008.  SETTLED OUT OF COURT.

19           THE COURT:  ALL RIGHT.  LET'S SEE, WHO ELSE ON THAT ROW?

20 NUMBER 55, I SEE.  THAT'S MS. STEFFY.

21           PROSPECTIVE JUROR 55:  YEAH.  LIFE INSURANCE OVER THE

22 SUICIDE OF MY HUSBAND.  TWO AUTO ACCIDENTS, ONE BY A TEENAGER,

23 ONE BY A DRUNK DRIVER.  AND --

24           THE COURT:  NOW, THE TWO AUTO ACCIDENTS, YOU WERE THE

25 PLAINTIFF ON?

1          PROSPECTIVE JUROR 55:  YES, THEY HIT ME.

2          THE COURT:  OKAY.

3          PROSPECTIVE JUROR 55:  AND MY HOMEOWNERS INSURANCE FOR

4    KATRINA AND MY CONTRACTOR FOR KATRINA.  EVERYTHING SETTLED OUT OF

5    COURT WITH THE EXCEPTION OF THE CONTRACTOR IS STILL PENDING.

6          THE COURT:  THANK YOU, MS. STEFFY.

7               ANYONE ELSE ON THAT ROW?  56 IS MS. LESSARD.

8          PROSPECTIVE JUROR 56:  YES, SIR.  IN 1980, WE WAS IN A

9    CAR ACCIDENT WHEN MY OLDEST SON WAS KILLED IN THAT ACCIDENT, AND

10   IT WAS SETTLED OUT OF COURT.

11         THE COURT:  THANK YOU, MRS. LESSARD.  58, THAT WOULD BE

12   MR. SMITH.

13         PROSPECTIVE JUROR 58:  TWO THAT I CAN RECALL,

14   YOUR HONOR.  ONE WHEN I WAS IN HIGH SCHOOL, I WAS HIT BY A CAR,

15   AND WE SUED THE DRIVER, THEIR INSURANCE AND ST. JAMES PARISH

16   SCHOOL BOARD.  AND MY WIFE WHEN SHE WAS CARRYING OUR FIRST CHILD

17   WAS INVOLVED IN AN AUTO ACCIDENT, AND --

18         THE COURT:  THANK YOU, MR. SMITH.

19              ANYONE ELSE ON THAT ROW?  LET'S TO GO THE LAST ROW.

20   NUMBER 64, THAT WOULD BE MS. BLANCHARD.

21         PROSPECTIVE JUROR 64:  MY COMPANY THAT I WORK FOR, MY

22   BOSS IS AN EXPERT IN OYSTER ECOLOGY.  HE DOES A LOT OF WORK WITH

23   THE FRESHWATER DIVERSION PROJECTS AND NUMEROUS OYSTER FISHERMEN.

24   AND PERSONALLY, I HAD A SMALL CLAIMS, MY HUSBAND AND I, AGAINST

25   FRIENDS OF OURS, AND IT WAS SETTLED.

1    THE COURT:  ANYONE ELSE ON THAT ROW?  LET'S SEE, NUMBER

2    68, THAT WOULD BE MR. DAVID, OR DAVID IF I'M MISPRONOUNCING YOUR

3    NAME.

4         PROSPECTIVE JUROR 68:  IN 1986, PERSONAL INJURY AUTO

5    ACCIDENT, PLAINTIFF, SETTLED OUT OF COURT.

6         THE COURT:  DOES ANYBODY ELSE HAVE ANY EXPERIENCE AS A

7    PARTY OR AS A WITNESS IN LITIGATION?

8         I'M GOING TO READ TO YOU A LIST NOW OF EXPECTED

9    WITNESSES AT THIS TRIAL.  NOW, THIS LIST, SOME OF THE NAMES I'M

10   GOING TO READ TO YOU ARE PEOPLE WHO MAY BE WITNESSES, BUT THE

11   ATTORNEYS MAY DURING THE COURSE OF THE TRIAL DECIDE NOT TO CALL

12   THESE PEOPLE AS WITNESSES.  BUT, RIGHT NOW, I WANT TO FIND OUT IF

13   ANY OF YOU ALL KNOW ANYONE ON THE WITNESS LIST FOR THIS TRIAL.

14   SO I'M GOING TO READ TO YOU A LIST OF NAMES.  I WILL SPELL THE

15   NAME IF IT'S NOT READILY APPARENT.  IF IT'S NOT A COMMON NAME, I

16   WILL SPELL THE NAME.  AND IF YOU KNOW ANY OF THESE PEOPLE, MAKE A

17   MENTAL NOTE OF IT BECAUSE WHEN I FINISH READING THE LIST, I WILL

18   ASK YOU IF YOU KNOW ANYBODY.

19        LEONARD C. QUICK; DAMION SERAUSKAS,

20   S-E-R-A-U-S-K-A-S, DAMION SERAUSKAS; GRAHAM ALLEN; H. JAMES

21   WEDNER, W-E-D-N-E-R; MEGAN A. CIOTA, C-I-O-T-A; NATHAN T. DORRIS,

22   D-O-R-R-I-S; PHILLIP COLE, C-O-L-E; WILLIAM L. DYSON; ROBERT

23   JAMES; JESSICA HERTZSTEIN, JANET BARNES; LEE BRANSCOME,

24   B-R-A-N-S-C-O-M-E; GARY BUNZER, B-U-N-Z-E-R; MARY C. DEVANY,

25   D-E-V-A-N-Y; PAUL HEWETT; REGAN JOHNSON; MARCO KALTOFEN,

1  K-A-L-T-O-F-E-N; JAMES P. KORNBERG, KORNBERG WITH A K; PAUL

2  LAGRANGE; GERALD MCGWIN, M-C-G-W-I-N; PATRICIA WILLIAMS; ALEXIS

3  MALLET, M-A-L-L-E-T, JR.; STEPHEN SMULSKI, S-M-U-L-S-K-I; EDDIE

4  ABBOTT; ALANA ALEXANDER; ERICA ALEXANDER; HEATH ALLEN; TRAVIS

5  ALLEN; SCOTT BAILEY; ANGELA BAKSH, B-A-K-S-H.  I HOPE I'M

6  PRONOUNCING THESE CORRECTLY.  I'LL SPELL THEM IF THERE'S A

7  PROBLEM.  TERRENCE BLANCHARD; JAMES -- I'M SORRY, IT'S LISTED AS

8  TERRY BLANCHARD; JAMES R. BROWN; CHRISTOPHER COOPER; ALAN DAVIS;

9  CHRIS DEROSA, IT'S D-E-R-O-S-A; ROBERT DUCKWORTH; DWIGHT DURHAM;

10  LINDA ESPARZA, E-S-P-A-R-Z-A; DON FREIBURGER; KAREN FREIBURGER;

11  FRANK JACQUEZ, J-A-C-Q-U-E-Z; BURL KEEL, K-E-E-L; DARRYL LEMIEUX,

12  L-E-M-I-E-U-X.

13          COUNSEL, I HAVE TWO OTHER GENTLEMEN WITH THAT LAST

14  NAME.  ARE THESE THREE DIFFERENT WITNESSES?

15          MR. HILLIARD:  YES, THEY ARE, JUDGE.  BROTHER AND SON.

16          THE COURT:  HUGO LINARES, L-I-N-A-R-E-S; PATRICK

17  MCCREARY; DAVID METHOT, OR METHOT, AS WE WOULD SAY IN SOUTH

18  LOUISIANA, M-E-T-H-O-T; CHARLES DAVID MOORE; SCOTT PULLIN,

19  P-U-L-L-I-N; ERVIN RITTER; JEREMIAH SCOTT; WILLIAM SCOTT; DON

20  SHAFFER; DAN SHEA; JIM SHEA; DR. ED SHWERY, S-H-W-E-R-Y, DR. ED

21  SHWERY; TERRY SLONE, S-L-O-N-E; RICHARD SOBER, SO-B-E-R; KYLE

22  TIMMINS, T-I-M-M-I-N-S; JEFF ZUMBRUN, Z-U-M-B-R-U-N.  LET'S SEE.

23  I MENTIONED -- TOM MAYOR, M-A-Y-O-R; PHILLIP SARVARI,

24  S-A-R-V-A-R-I; JOSEPH CLELAND, C-L-E-L-A-N-D; DR. KARIN PACHECO,

25  P-A-C-H-E-C-O; KEVIN SOUZA, S-O-U-Z-A; JOE LITTLE; STEVE MILLER;

1   MARTIN MCNEESE; TODD LENTYCH, L-E-N-T-Y-C-H, TODD LENTYCH;

2   MICHAEL CARTER; STANLEY LARSON; GARY BONOMO, B-O-N-O-M-O; DAVID

3   GARRATT, G-A-R-R-A-T-T; PAM GAY; BILL ULM, THAT'S U-L-M; DAN

4   LEMIEUX, SPELLED JUST LIKE THE OTHERS; DARREN LEMIEUX; RAUL

5   MEDINA, M-E-D-I-N-A; VAN HODGE; GLORIA MORTON; JIM RAMMELL,

6   R-A-M-M-E-L-L; ROBERT BUKOWSKI, B-U-K-O-W-S-K-I; TOM RAPASKY,

7   R-A-P-A-S-K-Y, RICHARD BELOTE, B-E-L-O-T-E; AL WHITAKER; AND

8   CHUCK BERGER, B-E-R-G-E-R.

9            OUT OF THE NAMES THAT I HAVE READ, IF YOU KNOW --

10  I'LL ASK YOU TO RAISE YOUR HAND IF YOU THINK YOU KNOW ANY OF

11  THESE WITNESSES.  AMONGST ANYBODY, IS THERE A NAME THAT STRIKES

12  YOU AS FAMILIAR?  MR. GUSTE, NUMBER 18?

13           PROSPECTIVE JUROR 18:  WELL, I KNOW -- I DON'T REALLY

14  KNOW HIM PERSONALLY IN THE SENSE OF KNOWING LIKE I KNOW SOME OF

15  THE LAWYERS HERE, BUT DR. SHWERY WAS SUPPOSED TO BE ONE OF MY

16  WITNESSES IN A CASE.

17           THE COURT:  ALL RIGHT.

18            LET'S SEE, NUMBER 45, ALSO, I SEE.  AND THAT WOULD

19  BE IN KIRZNER.

20           PROSPECTIVE JUROR 45:  LEONARD QUICK IS AN ACQUAINTANCE

21  OF MINE.  I HAVEN'T SEEN HIM IN ABOUT TEN YEARS, BUT I KNOW

22  LENNIE QUICK.

23           THE COURT:  DO YOU KNOW HIM THROUGH WORK?

24           PROSPECTIVE JUROR 45:  NO, PERSONAL FRIENDS.

25           THE COURT:  LET'S SEE, 64, THAT WOULD BE MS. BLANCHARD.

1           PROSPECTIVE JUROR 64.  THERE WAS A NAME, SCOTT BAILEY.

2    I DON'T KNOW IF IT'S THE SAME PERSON THAT I KNOW OR NOT, BUT I AM

3    FRIENDS WITH HIS FAMILY.

4           THE COURT:  SCOTT BAILEY.  OKAY.

5           MR. SCANDURRO:  HE'S NOT LOCAL, YOUR HONOR.

6           THE COURT:  HE'S NOT LOCAL.  HE'S NOT FROM HERE.

7           PROSPECTIVE JUROR 64:  IS HE THE ONE IN METAIRIE?

8           MR. SCANDURRO:  INDIANA.

9           THE COURT:  FROM THE STATE OF INDIANA.

10           NUMBER 67, THAT WOULD BE MS. TURNIPSEED.

11           PROSPECTIVE JUROR 67:  TWO OF THE NAMES ARE PEOPLE I'VE

12   MET THROUGH MY JOB, DAMION SARAUKAS AND ERVIN RITTER, IF IT'S

13   ERVIN RITTER.  I DON'T KNOW ANYBODY ELSE.

14           THE COURT:  ANYBODY ELSE?  DOES ANYBODY HAVE ANY

15   QUESTIONS ABOUT THESE NAMES AND WOULD LIKE ME TO SPELL A NAME

16   THAT YOU HEARD OR HEARD A NAME THAT'S KIND OF FAMILIAR AND YOU

17   NEED MORE INFORMATION?

18           I'VE ALREADY TOLD YOU THAT THIS CASE INVOLVES

19   ISSUES RELATED TO FORMALDEHYDE EXPOSURE FROM A FEMA TRAILER.  DO

20   ANY OF YOU, OF YOUR OWN KNOWLEDGE, HAVE ANY INFORMATION ABOUT THE

21   FACTS OF THIS CASE?

22           HAVE ANY OF YOU -- AND, MR. SMITH, THIS IS YOUR

23   QUESTION -- HAVE ANY OF YOU ANY OPINION ABOUT THIS CASE?  HE'S

24   ALREADY GOT HIS PADDLE UP.  OTHER THAN MR. SMITH, DO ANY OF YOU

25   HAVE AN OPINION ABOUT THIS CASE?  YOU ALL HAVE FILLED OUT

1    QUESTIONNAIRES, AND I THINK WE ASKED YOU CERTAIN QUESTIONS.  SO

2    OTHER THAN WHAT YOU PUT IN THE QUESTIONNAIRE THAT THE LAWYERS

3    HAVE SEEN, DO ANY OF YOU HAVE AN OPINION ABOUT THIS CASE?

4              ALL RIGHT.  MR. SMITH, HOLD THAT THOUGHT.  WHAT

5    WE'RE GOING TO DO, AT SOME POINT YOU MAY BE CALLED UP TO

6    ELABORATE ON WHAT YOUR OPINION IS, BUT WHY DON'T WE HOLD THAT

7    THOUGHT.

8              HAVE ANY OF YOU ALL READ ANYTHING ABOUT THIS MATTER

9    COMING UP FOR TRIAL OR HEARD ANYTHING ABOUT THIS MATTER COMING UP

10   FOR TRIAL?

11             NOW, LET ME ASK YOU.  SEVERAL PADDLES CAME UP.  LET

12   ME ASK YOU THIS.  WAS IT SIMPLY A NEWS REPORT ON TV OR IN A

13   NEWSPAPER THAT YOU READ THAT SAID THE MATTER WAS COMING UP FOR

14   TRIAL?  ALL RIGHT.

15             AS A RESULT OF HEARING THAT OR READING WHATEVER IT

16   WAS THAT YOU READ, WOULD ANY OF YOU ALL HAVE A PROBLEM SITTING AS

17   A JUROR IN THIS CASE BECAUSE YOU HAVE HEARD THAT INFORMATION?

18             NUMBER 12, THAT, AGAIN, WOULD BE MS. AUCOIN.

19   WITHOUT STATING AN OPINION ABOUT --

20             PROSPECTIVE JUROR 12:  WELL, I KNOW SOMEONE THAT WAS IN

21   A FEMA TRAILER.  JOHN DUVAL.

22             THE COURT:  AND WHAT RELATION IS THIS TO YOU?

23             PROSPECTIVE JUROR 12:  HE MOVED OUT OF THE TRAILER TO, I

24   GUESS, SEEK A LAWYER.

25             THE COURT:  SO YOU KNOW SOMEBODY WHO MIGHT HAVE FILED A

1  CLAIM RELATIVE TO LIVING IN A TRAILER?

2          PROSPECTIVE JUROR 12:  JOHN DUVAL.

3          THE COURT:  AND WHAT'S THE RELATIONSHIP?  IS THAT A

4  RELATIVE OF YOURS OR JUST A FRIEND?

5          PROSPECTIVE JUROR 12:  A FRIEND.

6          THE COURT:  I'M TALKING ABOUT THE INFORMATION THAT YOU

7  MAY HAVE HEARD.  SOME OF YOU INDICATED THAT YOU HAD HEARD SOME

8  NEWS ABOUT THIS MATTER COMING UP FOR TRIAL.  WOULD HEARING THAT

9  NEWS IN ANY WAY IMPACT YOUR ABILITY TO BE A FAIR AND IMPARTIAL

10 JUROR IF YOU WERE CHOSEN TO SERVE IN THIS CASE, HEARING THE NEWS

11 THAT YOU HEARD?  ALL RIGHT.

12          HAS ANYONE TALKED TO YOU OR TRIED TO TALK TO YOU

13 ABOUT THIS CASE?

14          IF YOU ARE SELECTED TO SIT AS A JUROR IN THIS CASE,

15 WILL YOU BE UNABLE OR UNWILLING TO RENDER A VERDICT SOLELY ON THE

16 EVIDENCE PRESENTED AT THIS TRIAL AND THE LAW AS I GIVE IT TO YOU

17 IN MY INSTRUCTIONS, DISREGARDING ANY OTHER IDEAS, NOTIONS, OR

18 BELIEFS ABOUT THE LAW YOU MAY HAVE ENCOUNTERED IN REACHING YOUR

19 VERDICT?  DOES EVERYBODY UNDERSTAND --

20          COUNSEL, SEE IF YOU ALL CAN FIND A SEAT HERE.  GO

21 IN THE OVERFLOW ROOM IF THERE IS NOT ENOUGH ROOM.

22          DOES EVERYBODY UNDERSTAND THAT DURING THE COURSE OF

23 THE TRIAL, YOU'RE GOING TO HEAR THE ARGUMENTS OF COUNSEL, OPENING

24 AND CLOSING STATEMENTS, AND THEN WE'RE GOING TO HAVE WITNESSES

25 WHO ARE GOING TO COME SIT UP HERE BY ME, AND THEY ARE GOING TO

1    GET ASKED A BUNCH OF QUESTIONS BY THE ATTORNEYS.  AND THE JURY IS

2    GOING TO LISTEN TO THOSE QUESTIONS, AND THERE WILL BE DOCUMENTS

3    THAT GO INTO EVIDENCE.  THEY ARE GOING TO GO UP ON A SCREEN.  AND

4    THERE'S LITTLE SCREENS IN THE JURY BOX.  AND THAT THIS CASE IS

5    GOING TO BE DECIDED ONLY ON THE EVIDENCE, THE TESTIMONY AND THE

6    DOCUMENTS, THAT ARE PRESENTED TO YOU IN THIS COURTROOM.  DOES

7    EVERYBODY UNDERSTAND THAT?

8              DOES EVERYBODY UNDERSTAND THAT YOUR DECISION IN

9    THIS CASE, IF YOU ARE CHOSEN AS A JUROR, YOUR DECISION MUST BE

10   BASED SOLELY ON WHAT YOU HEAR IN THIS COURTROOM AND WHAT YOU SEE

11   IN THIS COURTROOM AND THE INSTRUCTIONS THAT I GIVE YOU AT THE

12   CONCLUSION OF THE EVIDENCE?  DOES EVERYBODY UNDERSTAND THAT?

13   DOES ANYBODY HAVE A PROBLEM FOLLOWING THOSE INSTRUCTIONS?

14             YOU UNDERSTAND THAT YOU ARE NOT TO BE INFLUENCED BY

15   ANY TYPE OF OUTSIDE INFORMATION OR OTHER BELIEFS THAT YOU MAY

16   HAVE.  YOU MUST BE GUIDED BY THE EVIDENCE THAT THE ATTORNEYS

17   PRESENT IN COURT, TO PROVIDE THE ARGUMENTS THAT THEY MAKE WHEN

18   YOU DELIBERATE THIS CASE.  ANYBODY HAVE A PROBLEM WITH THAT IDEA

19   OR THINK THAT THEY CANNOT DO THAT?  ALL RIGHT.

20             IF YOU WERE ONE OF THE PARTIES IN THIS CASE, DO YOU

21   KNOW OF ANY REASON WHY YOU WOULD NOT BE CONTENT TO HAVE A CASE

22   TRIED BY SOMEONE IN YOUR FRAME OF MIND?

23             HAVE ANY OF YOU, LET'S JUST HAVE A SHOW OF HANDS OR

24   PADDLES, AS THE CASE MAY BE, HAVE ANY OF YOU SUSTAINED DAMAGE AS

25   A RESULT OF HURRICANES KATRINA OR RITA?

1      WE ASKED IN THE QUESTIONNAIRE IF ANY OF YOU, AND

2  THERE SHOULD NOT HAVE BEEN -- I THINK THAT WE ELIMINATED THOSE

3  WHO RESIDED IN A FEMA TRAILER OR MOBILE HOME PROVIDED BY FEMA IN

4  THE AFTERMATH OF THOSE HURRICANES, BUT I WILL ASK HERE TO DOUBLE

5  CHECK.  DID ANY OF YOU ALL RESIDE IN A FEMA-PROVIDED TRAILER,

6  TRAVEL TRAILER OR MOBILE HOME AFTER KATRINA?

7      YES, NUMBER 48.  THAT WOULD BE MS. MCGRUDER.  YOU

8  RESIDED IN A FEMA TRAILER AFTER KATRINA --

9      PROSPECTIVE JUROR 48:  I SURE DID.  I WAS LIVING IN THE

10  TRAILER FOR APPROXIMATELY EIGHT MONTHS.  AND THE MAJORITY OF THE

11  TIME, I WENT AND LIVED WITH MY SON IN BATON ROUGE BECAUSE IT WAS

12  TOO CONFINING.

13      THE COURT:  ALL RIGHT.  THANK YOU, MS. MCGRUDER.

14      DID ANYBODY ELSE HERE RESIDE IN A FEMA TRAILER FOR

15  ANY PERIOD OF TIME AFTER KATRINA OR RITA?

16      ALL RIGHT.  THOSE OF YOU WHO HAD DAMAGE, DID ANYONE

17  HAVE MORE THAN PROPERTY DAMAGE, IN OTHER WORDS, DAMAGE TO YOUR

18  HOME?  DID ANYBODY HAVE -- LET'S SEE, NUMBER 55.  MS. STEFFY.

19  YES.

20      PROSPECTIVE JUROR 55:  I HAD SEVEN TREES GO THROUGH MY

21  HOME.

22      THE COURT:  AND 48 WOULD BE MS. MCGRUDER, AGAIN.

23      PROSPECTIVE JUROR 48:  YES.  I LIVED IN EAST NEW ORLEANS

24  NEAR -- ON THE OTHER SIDE OF BULLARD, AND I SUSTAINED ABOUT 60 TO

25  70 PERCENT OF DAMAGE TO MY HOME.

1      THE COURT:  THANK YOU, MS. MCGRUDER.

2          LET'S DO THIS.  WHY DON'T WE -- WHEN I ASKED THE

3    QUESTION PREVIOUSLY, SEVERAL PADDLES WENT UP.  IF YOU WOULD,

4    THOSE OF YOU WHO HAVE HAD PROPERTY DAMAGE AS A RESULT OF

5    HURRICANES KATRINA OR RITA, WOULD YOU PLEASE RAISE YOUR PADDLE,

6    AND I'M GOING TO CALL OUT THE NUMBERS SO THAT THE ATTORNEYS CAN

7    MARK DOWN, IF THEY CHOOSE TO, WHICH JURORS HAVE SUSTAINED

8    PROPERTY DAMAGE.

9          NUMBER 3 AND NUMBER 4.  FORGIVE ME FOR NOT USING

10   YOUR NAMES, BUT IT'S EASIER FOR THEM TO MARK ON THEIR ROSTER.

11   NUMBER 10, 11, 12, 14, 17, 18, 19, 20, 21, 22, 24, 26, 27, 28,

12   29, 30, 34, 36, 40, 41, 42, 43, 45, 46, 47, 48, 52, 54, 55, 57,

13   60, 61, 65, 67 AND 69.

14         ALL RIGHT.  WOULD ANY OF YOU HAVE A HARD TIME GOING

15   BACK TO YOUR COMMUNITY IF YOU ULTIMATELY DECIDED NOT TO AWARD ANY

16   MONEY TO THE PLAINTIFFS IN THE CASE?

17         DO ANY OF YOU FEEL THAT GIVING NO MONEY IN THIS

18   CASE TO THE PLAINTIFFS WHO ARE HURRICANE KATRINA VICTIMS WOULD BE

19   IMMORAL, WRONG OR INSENSITIVE?

20         IN THIS TRIAL, THE JURY WILL ALSO BE ASKED TO

21   ASSESS THE FAULT, IF ANY, OF NOT ONLY THE TWO DEFENDANTS,

22   GULF STREAM AND FLUOR ENTERPRISES AND PLAINTIFF, BUT ALSO THE

23   FAULT, IF ANY, OF ONE OR MORE NON-PARTIES.  IF THE JURY CONCLUDES

24   THERE IS EVIDENCE OF FAULT ON THE PART OF MORE THAN ONE

25   DEFENDANT, THE PLAINTIFF AND/OR A NON-PARTY, IT WILL BE

1   REQUIRED -- THE JURY WILL BE REQUIRED TO ASSIGN PERCENTAGES OF

2   THE TOTAL FAULT IN THE CASE TO EACH DEFENDANT, THE PLAINTIFF

3   AND/OR THAT NON-PARTY.  WOULD ANY OF YOU HAVE DIFFICULTY DECIDING

4   THE PERCENTAGE OR PERCENTAGES OF FAULT, IF ANY, TO BE ASSIGNED TO

5   EACH DEFENDANT, THE PLAINTIFF AND ANY NON-PARTY FOUND AT FAULT?

6           DOES EVERYBODY UNDERSTAND WHAT THE JURY IS GOING TO

7   BE ASKED TO DO?

8           ALL RIGHT.  ONE OF THE NON-PARTIES AS TO WHICH THE

9   JURY IN THE CASE MAY HAVE TO ASSESS FAULT IS THE UNITED STATES

10  THROUGH ITS AGENCY, FEMA.  THEREFORE, THE JURY MAY HAVE TO ASSIGN

11  A PERCENTAGE OF FAULT TO THE FEDERAL GOVERNMENT THROUGH FEMA.

12  WOULD ANY OF YOU HAVE ANY DIFFICULTY PUTTING ASIDE ANY

13  PREEXISTING ATTITUDES ABOUT FEMA AND ASSESSING THE FAULT OF FEMA,

14  IF ANY, IF ANY, BASED SOLELY ON THE EVIDENCE PRESENTED IN THIS

15  TRIAL AND RELATIVE TO THIS PARTICULAR CASE?

16          YES, NUMBER 30.  THAT WOULD BE MR. REED.

17          PROSPECTIVE JUROR 30:  YES, YOUR HONOR.  I'M RETIRED

18  FROM THE U.S. ARMY CORPS OF ENGINEERS.  I'VE WORKED FAIRLY

19  CLOSELY WITH FEMA THROUGH THE YEARS.  AND --

20          THE COURT:  SO WITHOUT STATING ONE WAY OR THE OTHER, YOU

21  HAVE AN OPINION WITH REGARD TO FEMA BASED UPON THAT RELATIONSHIP?

22          PROSPECTIVE JUROR 30:  YES, SIR, I DO.

23          THE COURT:  ALL RIGHT.  ANYBODY ELSE?

24          DO ANY OF YOU -- THIS IS SORT OF A CATCH-ALL.  THE

25  LAST TWO QUESTIONS ARE SORT OF A CATCH-ALL HERE.  OTHER THAN WHAT

1   YOU ALL HAVE TOLD US, DO YOU KNOW OF ANY REASON WHY YOU THINK

2   THAT YOU COULD NOT SIT IN THIS CASE AND RENDER A JUST, FAIR,

3   HONEST AND IMPARTIAL VERDICT IF YOU ARE CHOSEN AS A JUROR?  SORT

4   OF ANYTHING ELSE THAT I HAVEN'T ASKED YOU ABOUT THAT YOU THINK

5   MIGHT PREVENT YOU FROM BEING FAIR IN THIS CASE?

6                   DOES ANYONE HAVE ANYTHING ELSE ON THEIR MIND WHICH

7   WOULD AFFECT YOUR ABILITY TO SERVE ON THIS JURY AND WHICH HAS NOT

8   BEEN COVERED BY THE QUESTIONS PREVIOUSLY ASKED?  AGAIN, IT'S A

9   CATCH-ALL QUESTION FOR YOU TO TELL US IF THERE IS SOMETHING THAT

10  YOU THINK WOULD PREVENT YOU FROM BEING FAIR AND HONEST IN THIS

11  CASE.

12                  ALL RIGHT.  AT THIS POINT, I'M GOING TO ASK EACH OF

13  YOU -- WE'LL DO THIS ONE THROUGH 69 HERE, TRY TO DO THIS AS

14  QUICKLY AS WE CAN -- I'M GOING TO START WITH JUROR NUMBER ONE,

15  MS. AUCOIN.  I'M GOING TO ASK YOU EACH TO RISE, AND WE'LL FOLLOW

16  THE SAME ORDER THAT WE HAVE BEEN FOLLOWING.  YOU WOULD STAND UP,

17  GIVE US YOUR FULL NAME, MARITAL STATUS, TELL US WHAT YOUR

18  OCCUPATION IS AND WHAT YOUR SPOUSE DOES, IF YOUR SPOUSE IS

19  EMPLOYED OUTSIDE THE HOME.  TELL US HOW MANY CHILDREN YOU HAVE

20  AND THEIR AGES; AND, IF YOUR CHILDREN ARE GROWN AND ARE EMPLOYED

21  OUTSIDE OF THE HOME, TELL US WHAT ANY OF YOUR CHILDREN DO THAT

22  ARE SO EMPLOYED.

23                  MS. AUCOIN, THAT'S A LOT OF STUFF, BUT AFTER THE

24  FIRST FEW OF YOU DO IT YOU'LL REALIZE I'M ASKING FOR JUST THE

25  BASICS, NAME, RANK, SERIAL NUMBER TYPE INFORMATION.  MS. AUCOIN.

1            PROSPECTIVE JUROR 1:  MITZI MARKERSON AUCOIN.  I'M A

2    PARA-PROFESSIONAL WITH TERREBONNE PARISH SCHOOL BOARD.  MY

3    HUSBAND IS A FINANCIAL ADVISOR WITH EDWARD JONES INVESTMENTS.  I

4    HAVE TWO CHILDREN, AGES 17 AND 14.  IS THAT IT?

5            MR. WATTS:  WHAT DO THEY DO FOR A LIVING?

6            PROSPECTIVE JUROR 1:  THEY ARE STUDENTS.

7            THE COURT:  THEY'RE STUDENTS.  ALL RIGHT.  LET'S MOVE ON

8    THEN TO MS. ROBICHAUX, NUMBER 2.

9            PROSPECTIVE JUROR 2:  MY NAME IS SAMANTHA ROBICHAUX,

10   SINGLE, NO KIDS.  I'M A REGISTERED NURSE.  I WORK AT TERREBONNE

11   GENERAL MEDICAL CENTER IN HOUMA, LOUISIANA.

12           THE COURT:  MR. WETZEL.

13           PROSPECTIVE JUROR 3:  MICHAEL WETZEL.  I'M THE PRESIDENT

14   OF BIG EASY LIMOS.  MY WIFE IS RETIRED.  I HAVE TWO CHILDREN, 30

15   AND 35.  THE 30-YEAR-OLD WORKS FOR ME AND THE 35 WORKS FOR

16   BLESSEY INDUSTRIES, WHICH IS A TUGBOAT COMPANY OUT ON THE RIVER.

17           MR. HILLIARD:  WHAT DID YOUR WIFE DO BEFORE SHE RETIRED?

18           PROSPECTIVE JUROR 3:  OH, I'M SORRY.  SHE WAS A

19   SECRETARY FOR A REAL ESTATE.

20           PROSPECTIVE JUROR 4:  BERT ST. ROMAIN, III.  I'M SINGLE,

21   AND I'M A SALES REP FOR COMMUNITY COFFEE.

22           PROSPECTIVE JUROR 5:  STEPHEN HYMEL, MARRIED, TWO KIDS,

23   EIGHT AND NINE.  MY WIFE IS AN OCCUPATIONAL THERAPIST.  I'M A

24   REGISTERED NURSE.

25           THE COURT:  THANK YOU, MR. HYMEL.

1          PROSPECTIVE JUROR 7:  CRAIG NAQUIN, AUTO MECHANIC.  MY

2   WIFE WORKS AS A FOOD SERVER.  I HAVE TWO KIDS, 8 AND 18.

3          THE COURT:  8 AND 18.

4          PROSPECTIVE JUROR 8:  MAXINE BOURG, ACCOUNTS MANAGER FOR

5   A NURSING COMPANY.  I'M THE ONLY PERSON IN THAT DEPARTMENT.  I

6   HAVE TWO CHILDREN, AGE 25 AND 10.  AND MY HUSBAND IS A SALESMAN.

7          THE COURT:  ALL RIGHT.

8          PROSPECTIVE JUROR 9:  RACHEL MORRIS.  SINGLE, AND I WORK

9   AS A CASHIER.

10          THE COURT:  IF YOU COULD -- AGAIN, I HATE TO GET ON YOU

11   ALL WITH THE PADDLES, BUT IF YOU HOLD YOUR --

12          PROSPECTIVE JUROR 9:  WORK AT WAL-MART AS A CASHIER.

13          THE COURT:  THAT'S DREW BREES' NUMBER, NUMBER 9.

14          PROSPECTIVE JUROR 10:  GLEN DEMPSEY.  I'M EMPLOYED AS AN

15   AIR TRAFFIC CONTROL SPECIALIST FOR 21 YEARS.  MARRIED FOR

16   22 YEARS.  SIX KIDS, AGES 20 THROUGH THREE.  AND MY WIFE IS A

17   HOMEMAKER.

18          THE COURT:  ANY OF YOUR KIDS EMPLOYED OUTSIDE THE HOME?

19          PROSPECTIVE JUROR 10:  NO, THEY ARE IN COLLEGE.

20          THE COURT:  ALL RIGHT.  THANK YOU.

21          PROSPECTIVE JUROR 11:  RONALD FRANKLIN.  I'M A

22   CARPENTER.  I JUST LOST MY WIFE.  AND I HAVE TWO KIDS, 32 AND 33.

23          THE COURT:  ARE YOUR TWO CHILDREN EMPLOYED?

24          PROSPECTIVE JUROR 11:  YES.

25          THE COURT:  THE 32 AND 33, HOW ARE THEY EMPLOYED?

1            PROSPECTIVE JUROR 11:  I HAVE ONE OF THEM THAT WORKS FOR

2   WHITNEY BANK, AND ONE OF THEM IS THIS A CLERK.

3            THE COURT:  WHITNEY BANK AND THE OTHER IS A CLERK?

4            PROSPECTIVE JUROR 11:  YES, SIR.

5            THE COURT:  WHERE?

6            PROSPECTIVE JUROR 11:  AT A HOSPITAL.

7            THE COURT:  AT A HOSPITAL?

8            PROSPECTIVE JUROR 11:  YES, SIR.

9            THE COURT:  HERE LOCALLY?

10            PROSPECTIVE JUROR 11:  YES, SIR.

11            THE COURT:  WHICH HOSPITAL IS THAT?

12            PROSPECTIVE JUROR 11:  OCHSNER.

13            THE COURT:  ALL RIGHT.  THANK YOU.

14            PROSPECTIVE JUROR 12:  CECILIA AUCOIN, SINGLE, WORK AT

15   NORM'S DAIQUIRIS & GRILL.

16            THE COURT:  MR. VICKNAIR.

17            PROSPECTIVE JUROR 13:  JAMES A. VICKNAIR, JR.  MY

18   OCCUPATION IS I'M A CRANE OPERATOR AT A STEEL MILL.  MY WIFE IS

19   OUT OF WORK RIGHT NOW.  WE'VE GOT THREE KIDS, 22, 26 AND 30.

20            THE COURT:  HOW ARE YOUR KIDS EMPLOYED?

21            PROSPECTIVE JUROR 13:  THEY JUST -- ONE WORKS AS A

22   RECEPTIONIST AT A HOTEL, AND ONE WORKS AT AN EYE CLINIC.  AND THE

23   OTHER ONE, I DON'T KNOW WHAT SHE DOES.

24            THE COURT:  AND YOU SAID YOUR WIFE IS UNEMPLOYED NOW.

25   WAS SHE EMPLOYED RECENTLY OR --

1      PROSPECTIVE JUROR 13:  ABOUT THREE YEARS AGO.  SHE HAS

2  BEEN HAVING TROUBLE WITH HER BACK.  SHE CAN'T WORK.

3      PROSPECTIVE JUROR 14:  RALPH STRICKER, JR.  I'M IN

4  SALES.  MY WIFE IS A NURSE.  I HAVE A 20 AND A 16, BOTH IN

5  SCHOOL.

6      THE COURT:  OKAY.  THANK YOU, MR. STRICKER.

7      MR. PIERCE.

8      PROSPECTIVE JUROR 15:  ROY PIERCE, DIVORCED.  I WORK FOR

9  A MAJOR WHOLESALE LIQUOR AGENCY HERE.  I ALSO WORK AS A LIMOUSINE

10  DRIVER.  I ALSO HOLD A COMMISSION WITH THE ST. CHARLES PARISH

11  DISTRICT ATTORNEY'S OFFICE.  I HAVE ONE SON.  HE'S 17, LIVES IN

12  BATON ROUGE AND WORKS RETAIL.

13      THE COURT:  I'M SORRY, HE WORKS?

14      PROSPECTIVE JUROR 15:  RETAIL.

15      THE COURT:  THANK YOU.

16      MS. HOOFKIN.

17      PROSPECTIVE JUROR 16:  MY NAME IS NEDRA HOOFKIN.  I WAS

18  LAID OFF IN JUNE.  I HAVE TWO KIDS.  THEY ARE BOTH IN SCHOOL.

19  THE AGES ARE NINE AND EIGHT.

20      THE COURT:  MR. DUPRE.

21      PROSPECTIVE JUROR 17:  TROY DUPRE.  I WORK FOR AUTOCHLOR

22  HERE IN NEW ORLEANS.  MY WIFE -- I'M MARRIED.  MY WIFE WORKS FOR

23  A TRANSPORTATION IN HOUMA.  I HAVE TWO KIDS, ONE IS 22.  HE'S MY

24  SON, AND HE GOES TO LSU.  AND MY DAUGHTER IS 20, AND SHE GOES TO

25  NICHOLLS.

1          THE COURT:  ALL RIGHT.

2          PROSPECTIVE JUROR 18:  YOUR HONOR, WILLIAM J. GUSTE,

3    III.  AND I AM MARRIED, AND MY WIFE IS A HOMEMAKER.  I'M AN

4    ATTORNEY, AS I'VE SAID.  SIX CHILDREN, AGE 36 TO 24.  THE

5    36-YEAR-OLD IS A WASHINGTON, DC LAWYER WHO SERVES AS AN EDUCATION

6    CONSULTANT.  THE NEXT IS 35; COLLEEN IS AN INTERIOR DESIGNER IN

7    BATON ROUGE.  NEXT IS 32; JULIE IS A DOCTOR AT OCHSNER.  NEXT IS

8    BILLY, WHO IS A LAWYER WHO SERVES AS A CONSULTANT WITH RIGAMER

9    AND ASSOCIATES.  NEXT IS JOHN GUSTE, WHO IS 27, WHO JUST GOT HIS

10   M.D.  HE'S A SURGEON AT TULANE.  AND NEXT UP IS BESSIE, WHO IS

11   24, WHO IS DISABLED AND WORKS AT MAGNOLIA SCHOOL.

12          THE COURT:  ALL RIGHT.  THANK YOU, MR. GUSTE.

13          PROSPECTIVE JUROR 19:  YOUR HONOR, MY NAME IS ANITA

14   BROWN.  I'M MARRIED.  MY HUSBAND WAS A BRICK MASON WHO TWO YEARS

15   AGO HAD A STROKE, SO HE'S DISABLED.  I HAVE SIX SONS.  MY OLDEST

16   SON IS 30.  HE IS A LOSS PREVENTION MANAGER FOR A MAJOR RETAIL

17   COMPANY.  I HAVE A 28-YEAR-OLD WHO IS A PROFESSIONAL BALL PLAYER

18   OVERSEAS IN ITALY.  I HAVE A 22-YEAR-OLD WHO IS A SENIOR AT

19   EASTERN NEW MEXICO UNIVERSITY.  AND I HAVE A 17-YEAR-OLD WHO IS A

20   SENIOR AND A 16-YEAR-OLD WHO IS A JUNIOR AND A NINE-YEAR-OLD WHO

21   IS IN FOURTH GRADE.

22          THE COURT:  THANK YOU.

23          PROSPECTIVE JUROR 20:  DENIA ELLIS.  TOTAL PROPERTY

24   ACCOUNTING.  SINGLE, NO CHILDREN.

25          PROSPECTIVE JUROR 21:  CHARLES BROWN SMALLWOOD.  I'M A

1   TEACHER IN THE ST. TAMMANY PARISH PUBLIC SCHOOLS.  MY WIFE IS A

2   BOOKKEEPER IN A SMALL SLIDELL FINANCIAL SERVICES COMPANY.  I HAVE

3   FIVE CHILDREN BETWEEN THE AGES OF 21 AND 13, ALL ARE STUDENTS.

4           THE COURT:  OKAY.  MS. FARLEY.

5           PROSPECTIVE JUROR 22:  DARIEN FARLEY.  I'M MARRIED.  MY

6   HUSBAND IS A MANUFACTURING REP FOR AN INTERNATIONAL COMPANY.  I

7   HAVE TWO BOYS.  THE OLDEST IS A REAL ESTATE ATTORNEY, AND THE

8   YOUNGEST IS A COMPUTER ANALYST.

9           THE COURT:  THANK YOU.

10          PROSPECTIVE JUROR 23:  DARLENE HATTIER.  I'M MARRIED.

11  MY HUSBAND AND I BOTH WORK AT OCHSNER.

12          THE COURT:  WORK AT OCHSNER.

13          PROSPECTIVE JUROR 23:  AT THE HOSPITAL.  AND WE HAVE TWO

14  CHILDREN.  MY DAUGHTER IS 27.  SHE'S A REGISTERED NURSE FOR A

15  HOSPICE IN DALLAS.  AND THE OTHER ONE IS IN NINTH GRADE.

16          THE COURT:  THANK YOU.  LET'S START BACK.  NEXT ROW.

17          PROSPECTIVE JUROR 24:  I'M MIRIAM ROHNER, AND I WORK AT

18  LALLIE KEMP AND LSU MEDICAL CENTER IN INDEPENDENCE, LOUISIANA.

19  I'M AN ADMINISTRATIVE COORDINATOR.  I'M A WIDOW.  MY HUSBAND WAS

20  AN EQUIPMENT OPERATOR.  I HAVE TWO CHILDREN.  I HAVE A GIRL WHO

21  WORKS AS A RECEPTIONIST IN A DOCTOR'S OFFICE AND A SON WHO IS AN

22  EQUIPMENT OPERATOR.

23          THE COURT:  THANK YOU.

24          PROSPECTIVE JUROR 25:  DANIELLE ROJAS.  I'M A TEACHER,

25  HIGH SCHOOLTEACHER.  I HAVE A LAW ENFORCEMENT BACKGROUND.  I'M

1  MARRIED.  MY HUSBAND WORKS FOR CHEVRON -- I HAVE TWO SMALL

2  CHILDREN, AGES TWO AND SIX.

3          THE COURT:  THANK YOU.

4          PROSPECTIVE JUROR 26:  YOUR HONOR, I'M EMILE BACCHUS.

5  MARRIED.  IT'S MY ANNIVERSARY TODAY.  I HAVE THREE CHILDREN, ONE

6  16, ONE 12 AND ONE 2.  ALL ATTEND SCHOOL.  MY WIFE, SHE'S A

7  MANAGER AT LOWE'S.  I'M A SECURITY GUARD, A BELLMAN AND A VALET

8  PARKER.

9          THE COURT:  AND WHAT BETTER WAY TO CELEBRATE THAN COMING

10  TO JURY DUTY.

11          PROSPECTIVE JUROR 27:  I'M PAULA WATTS.  I'M A

12  REGISTERED NURSE.  MY HUSBAND IS A SELF-EMPLOYED CPA.  AND NO

13  CHILDREN.

14          PROSPECTIVE JUROR 28:  I'M MICHAEL MARSH.  I'M SINGLE.

15  I WORK FOR ROUSE'S SUPERMARKET.  NO CHILDREN.

16          PROSPECTIVE JUROR 29:  ALZA HAMILTON.  I'M A REGISTERED

17  NURSE.  I WORK FOR A HOSPICE COMPANY NOW.  MY HUSBAND IS A

18  LIEUTENANT AT A JUVENILE DETENTION CENTER.  I HAVE TWO KIDS, A

19  SIX-YEAR-OLD AND AN 11-YEAR-OLD.

20          PROSPECTIVE JUROR 30:  JIMMY DARWIN REED.  I'M RETIRED

21  FROM THE U.S. ARMY CORPS OF ENGINEERS, NEW ORLEANS DISTRICT,

22  AFTER 30 YEARS WITH THEM.  AND I'M CURRENTLY WORKING WITH GRIFFIN

23  CONSULTING IN BELLE CHASSE.

24          PROSPECTIVE JUROR 31:  GINA BREWER.  I WORK FOR AM-PM

25  TEMPORARY SERVICES AS A SECRETARY.  MARRIED.  MY HUSBAND IS A

1   POLICEMAN.  AND I HAVE A 13-YEAR-OLD SON.

2          THE COURT:  THANK YOU.

3          PROSPECTIVE JUROR 33:  TIMOTHY GENDRON.  I'M A

4   MAINTENANCE MAN AT VICTORY FELLOWSHIP.  I'M SINGLE.

5          PROSPECTIVE JUROR 34:  MY NAME IS JARRED ROCHE.  I'M A

6   FIELD PROJECT MANAGER WITH BOH BROTHERS CONSTRUCTION.  I'M

7   MARRIED, AND MY WIFE IS A THIRD GRADE TEACHER.

8          PROSPECTIVE JUROR 35:  JOSHUA MORGAN.  I'M A RETAIL

9   CLERK FOR ROBERT'S FRESH MARKET, AND I'M SINGLE.

10         PROSPECTIVE JUROR 36:  TOMMY SALTER.  I'M A PRINCIPAL IN

11  TERREBONNE PARISH.  I'M MARRIED.  MY WIFE WORKS AS A MEDICAL

12  ASSISTANT, WORKS FOR DR. RALPH BOURGEOIS IN HOUMA.  I HAVE TWO

13  KIDS, ONE 18 ATTENDING SOUTHEASTERN AND ONE 13 IN THE EIGHTH

14  GRADE.

15         PROSPECTIVE JUROR 37:  MY NAME IS CLYDE HYMEL.  I WORK

16  AT SHELL CHEMICAL COMPANY IN NORCO.  BEEN THERE 30 YEARS.  MY

17  WIFE IS A TEACHER AT EAST SAINT JOHN HIGH SCHOOL TEACHING HEALTH.

18  AND SHE'S ALSO A NURSE, DOES HOME HEALTHCARE ON THE SIDE.  WE

19  HAVE A SON, 27.  HE'S AN API INSPECTOR.  AND MY DAUGHTER IS

20  SELF-EMPLOYED DOING GRAPHIC DESIGN AND VIDEO EDITING.

21         PROSPECTIVE JUROR 38:  JOHN MILLER.  OCCUPATION,

22  NIGHTCLUB MANAGEMENT FOR AMERICAN REST, INCORPORATED.  I'M

23  SINGLE.  NO KIDS.

24         PROSPECTIVE JUROR 39:  MY NAME IS KIMBERLEE KANTROW.

25  I'M A REALTOR WITH PRUDENTIAL GARDNER.  AND MY HUSBAND IS A

 1  PULMONOLOGIST CRITICAL CARE SPECIALIST AT LSU AND OCHSNER.

 2          PROSPECTIVE JUROR 40:  VERNELL WILLIAMS, SINGLE.

 3  CARPENTER.  I HAVE TWO KIDS.  ONE IS 35 AND 45.

 4          THE COURT:  SO YOU HAVE ONE THAT'S 35, AND THE OTHER

 5  IS --

 6          PROSPECTIVE JUROR 40:  45.

 7          THE COURT:  AND WHAT OCCUPATIONS ARE THEY IN?

 8          PROSPECTIVE JUROR 40:  CARPENTERS.

 9          THE COURT:  CARPENTERS, ALSO.

10          PROSPECTIVE JUROR 41:  AUGUSTA WATTS.

11          THE COURT:  THERE IS A MICROPHONE THERE, BUT AT THE RISK

12  OF -- IT'S GOING TO BE HARDER TO GET YOU ALL TO COME UP TO THE

13  MICROPHONE, SO IF YOU COULD JUST SPEAK LOUDER IT WILL PROBABLY GO

14  A LITTLE BIT QUICKER.

15          PROSPECTIVE JUROR 41:  MY NAME IS AUGUSTA WATTS.  I WORK

16  AS A LIBRARIAN AS TULANE, AND I'M SINGLE.

17          PROSPECTIVE JUROR 42:  MY NAME IS GEORGE NORDGREN,

18  MARRIED, RETIRED.  I HAVE A SON 17, A DAUGHTER THAT'S 37, WORKS

19  FOR CHATTERBOX BOUTIQUE.

20          THE COURT:  AND YOU SAY YOU'RE RETIRED.  WHAT WAS YOUR

21  OCCUPATION BEFORE YOU RETIRED?

22          PROSPECTIVE JUROR 42:  I WAS A VICE-PRESIDENT OF BYWATER

23  BUILDING SALES, A COMMERCIAL CLEANING SERVICE.

24          PROSPECTIVE JUROR 43:  MY NAME IS BRENDA GAUTREAUX.

25  I'VE WORKED FOR TERREBONNE PARISH SCHOOL SYSTEM FOR 14 YEARS AS A

1  LIBRARY CLERK.  MY HUSBAND IS A CAPTAIN ON A TUGBOAT.  I HAVE

2  THREE CHILDREN.  30 YEARS OLD, SHE WORKS AS -- FOR THE HEAD START

3  PROGRAM IN TERREBONNE PARISH.  I HAVE A 17-YEAR-OLD.  SHE WORKS

4  AS A RISK MANAGEMENT FOR TERREBONNE PARISH.  SHE'S IN TERREBONNE

5  PARISH CONSOLIDATED GOVERNMENT.  AND I HAVE A 12-YEAR-OLD.

6          THE COURT:  THANK YOU.

7          PROSPECTIVE JUROR 44:  MY NAME IS TIMMY GISCLAIR.  I'M

8  AN OPERATIONS MANAGER FOR A TELECOMMUNICATIONS COMPANY.  I'M

9  MARRIED.  MY WIFE IS A SCHOOLTEACHER.  AND WE HAVE TWO SONS, ONE

10  15 AND ONE 12.

11          PROSPECTIVE JUROR 45:  MY NAME IS DAVID KIRZNER.  I'M

12  MARRIED.  I'M A COMMERCIAL SALESMAN.  I HAVE A 22-YEAR-OLD

13  DAUGHTER THAT'S WORKING FOR A COMPANY CALLED EPCO, WHICH IS A

14  PIPELINE COMPANY, AND AN 18-YEAR-OLD SON AT LSU.

15          PROSPECTIVE JUROR 46:  I'M BAYARD AMES.  I'M MARRIED.

16  I'M AN OPERATIONS DIRECTOR FOR A COMPUTER SERVICE.  MY WIFE IS AN

17  EEG TECH.  I HAVE TWO CHILDREN, ONE 36 WHO DOES REAL ESTATE

18  APPRAISALS, AND THE 33-YEAR-OLD, MY SECOND DAUGHTER, SHE'S AN IT

19  TECH FOR AN IT FIRM -- OR, I'M SORRY, SHE WORKS FOR AN IT FIRM,

20  AND SHE'S WORKING ON THE HEALTH DESK.

21          PROSPECTIVE JUROR 47:  ANDREA BARRÉ, HAPPILY DIVORCED,

22  TWO CHILDREN.  44-YEAR-OLD SON IN CONSTRUCTION, AN EIGHT-YEAR-OLD

23  IN CATHOLIC SCHOOL.  I'M RETIRED, DISABLED --

24          PROSPECTIVE JUROR 48:  I'M MOLLIE MCGRUDER.  I'M

25  MARRIED.  I'M A RETIRED RESPIRATORY THERAPIST.  MY HUSBAND WORKS

1    AT DELGADO COMMUNITY COLLEGE.  I HAVE ONE SON WHO IS 37 WHO WORKS

2    FOR HONEYWELL.  HE DRIVES WIFE'S --

3           PROSPECTIVE JUROR 50:  I'M DANIELLE QUINN.  I'M EMPLOYED

4    WITH THE HAMPTON INN, AND I'M SINGLE.

5           PROSPECTIVE JUROR 51:  I'M HOLLY HAWKINS.  I'M A

6    REGISTERED NURSE AT TULANE.  MY HUSBAND IS AN ATTORNEY.  AND I

7    HAVE TWO KIDS.

8           THE COURT:  MR. SOLANO.

9           PROSPECTIVE JUROR 52:  JESUS SOLANO.  I WORK FOR RON-DEL

10   FLOOR SERVICE.  I'VE BEEN THERE FOR 20 YEARS.  WIFE WORKS AT

11   WINN-DIXIE.  SHE'S A MANAGER.  AND I'VE ONLY GOT ONE KID.  HE'S

12   FOUR YEARS OLD.

13          PROSPECTIVE JUROR 53:  CHERYL SHELVIN, NOW LEWIS.  I'M

14   RECENTLY MARRIED.  ONE SON.  I'M EMPLOYED BY THE STATE OF

15   LOUISIANA AS A PROVISIONAL COORDINATOR FOR JEFFERSON PARISH.  MY

16   HUSBAND IS A PASTOR.

17          PROSPECTIVE JUROR 54:  DANA LEAMAN.  I'M A TEACHER.

18   MARRIED.  I HAVE KIDS, FIVE AND TWO YEARS OLD.  MY WIFE IS A

19   HOMEMAKER.

20          PROSPECTIVE JUROR 55:  SANDY STEFFY.  I'M WIDOWED.  MY

21   HUSBAND WAS MILITARY FOR 29 YEARS, NAVY SEAL.  SOLE PROPRIETOR OF

22   A SANITATION COMPANY, AND I RAISE ALPACAS.

23          PROSPECTIVE JUROR 56:  VICTORIA LESSARD.  I'M MARRIED.

24   I WORK IN A FOOD GROCERY STORE IN LABADIEVILLE.  MY HUSBAND WORKS

25   FOR ISC OUT OF BATON ROUGE, ELECTRICIAN.  MY YOUNGEST SON, WHICH

1    IS 32, HE ALSO WORKS FOR ISC.

2           PROSPECTIVE JUROR 57:  MY NAME IS TRACY KIMBLE.  I AM A

3    PARA-PROFESSIONAL AT TERREBONNE PARISH SCHOOL BOARD.  I AM

4    MARRIED.  MY HUSBAND WORKS AS A DIESEL MECHANIC AT INDUSTRIAL

5    DIESEL IN GALLIANO, LOUISIANA.  I HAVE ONE DAUGHTER.  SHE'S 13.

6           PROSPECTIVE JUROR 58:  MY NAME IS SHERMAN R. SMITH.  MY

7    WIFE AND I, AFTER 25 YEARS, WE JUST RECENTLY RESIGNED FROM OUR

8    JOBS.  I WAS A HOTEL MANAGER, AND MY WIFE WAS A MANAGER AT STAGE

9    DEPARTMENT STORE.  WE STARTED OUR OWN WEB BASED COMPANY.  WE HAVE

10   SIX CHILDREN:  25, 23, 21, 19, 17, AND 15.  FOUR OF THEM HAVE

11   ALREADY GRADUATED FROM COLLEGE, AND TWO ARE IN COLLEGE RIGHT NOW.

12   AND ONE IS STILL IN HIGH SCHOOL.

13          THE COURT:  THANK YOU.

14          PROSPECTIVE JUROR 60:  KIANA ROBERTSON.  I'M A POLICE

15   DISPATCHER FOR ONE YEAR, NEW ORLEANS PD.  MY FIANCE IS A POLICE

16   OFFICER.  AND ONE CHILD IS 11 YEARS OLD.

17          PROSPECTIVE JUROR 61:  TAWANA CONNER.  I'M MARRIED.  I

18   WORK AT PEOPLE'S HEALTH NETWORK AS A MANAGER.  I HAVE FIVE KIDS,

19   AGES -- MY HUSBAND WORKS FOR NORTHROP GRUMMAN AS AN ELECTRICAL

20   ENGINEER.  AGES ARE 30, 29, 27, 26 AND 25.  THE OLDEST LIVES IN

21   LAFAYETTE.  HE WORKS FOR HALLIBURTON AS AN ENGINEER.  THE SECOND

22   ONE WORKS FOR THE STATE IN THE DISABILITY OFFICE.  ONE WORKS IN A

23   PLANT OUT IN RESERVE, LOUISIANA, AND THE YOUNGEST IS IN THE

24   AIR FORCE.

25          PROSPECTIVE JUROR 63:  IRENE SIMNO.  I'M SINGLE, NO

1   CHILDREN.  I WORK FOR MEDICAL RECORDS FOR DIAGNOSTIC IMAGING

2   SERVICES.

3          PROSPECTIVE JUROR 64:  MY NAME IS SANDRA BLANCHARD.

4   I'VE BEEN MARRIED FOR 30 YEARS.  I HAVE A DAUGHTER WHO IS 22.

5   SHE'S AT DELGADO IN THE NURSING FIELD, AND SHE ALSO WORKS AT

6   COPELAND'S.  I HAVE WORKED FOR AN ENVIRONMENTAL COMPANY FOR THE

7   PAST -- OVER 25 YEARS.  MY HUSBAND IS SELF-EMPLOYED AS AN

8   ELECTRICAL CONTRACTOR.

9          PROSPECTIVE JUROR 65:  DEBORAH DESEAMUS.  I'VE BEEN

10  MARRIED 30 YEARS.  MY HUSBAND HAS HIS OWN BUSINESS, A PHONE

11  COMPANY.  I HAVE MY OWN COMPANY.  I'M A TAX ASSOCIATE.  I HAVE

12  TWO DAUGHTERS.  ONE IS 26.  SHE'S A CHEMIST AT PACE ANALYTICAL.

13  THE OTHER IS 24.  SHE WORKS FOR THE LOUISIANA BUSINESS AND

14  TECHNOLOGY CENTER AS AN INTERN WHILE SHE'S GOING TO LSU'S MBA

15  PROGRAM.

16         PROSPECTIVE JUROR 66:  DANNY BLANK.  I WORK FOR SHELL

17  CHEMICAL IN NORCO.  MARRIED.  MY WIFE IS A SCHOOL TEACHER IN

18  ST. JAMES PARISH.  I HAVE TWO YOUNGER CHILDREN IN ELEMENTARY

19  SCHOOL AND ONE IN COLLEGE.

20         PROSPECTIVE JUROR 67:  MARGARET TURNIPSEED.  I WORK FOR

21  VERGES ROME ARCHITECTS.  I DO ACCOUNTING, HR, MARKETING AND

22  PROJECT SUPPORT.  MY HUSBAND IS SELF-EMPLOYED SALES.  MY

23  28-YEAR-OLD DAUGHTER IS A PATHOLOGY LAB TECHNICIAN, AND MY

24  26-YEAR-OLD SON IS A FILM EDITOR AT A LOCAL TV STATION.

25         PROSPECTIVE JUROR 68:  ROYAL DAVID.  I'M A LICENSED

 1  EMBALMER AND FUNERAL DIRECTOR.  I'VE BEEN LICENSED FOR 30 YEARS.

 2  I'M THE MANAGER OF A NORTHSHORE FUNERAL HOME.  MY WIFE IS A SALES

 3  CONSULTANT FOR OUR CEMETERY.  WE HAVE SIX CHILDREN:  31, 21, 17,

 4  14, 8 AND 4.  MY 31-YEAR-OLD IS A FUNERAL DIRECTOR, ALSO, OUT OF

 5  LAFAYETTE.  HE'S BEEN PRACTICING FIVE YEARS.  HE IS ALSO A

 6  LICENSED EMBALMER.  MY 21-YEAR-OLD IS A SENIOR AT SOUTHEASTERN,

 7  AND THE REST ARE IN SCHOOL.

 8          PROSPECTIVE JUROR 69:  I AM JULIO ROMERO.  I'M A

 9  HYDRAULIC TECHNICIAN.  I WORK FOR THE RIVERFRONT, ON THE

10  RIVERFRONT WHEN THE SHIPS COME.  I'M MARRIED.  I'VE GOT TWO KIDS,

11  ONE BOY AND A GIRL.  THE BOY IS 35.  MY GIRL IS 25.  SHE'S GOING

12  TO SOUTHEASTERN UNIVERSITY.  AND MY SON GRADUATED FROM TULANE AND

13  HE'S WORKING IN NEW YORK.  MY WIFE, SHE DON'T WORK.  SHE'S A

14  HOUSEWIFE.  TAKE CARE OF ALL THE STUFF.

15          THE COURT:  THANK YOU.  AT THIS TIME, LET ME ASK COUNSEL

16  TO APPROACH THE BENCH.  WE'RE GOING TO DISCUSS UP HERE SOME OF

17  THE INFORMATION YOU ALL HAVE GIVEN US.  IF YOU COULD JUST MAKE

18  YOURSELVES COMFORTABLE, WE'LL TRY TO BE AS EFFICIENT AND AS

19  PROMPT AS WE CAN.  WE'RE NEARING THE CONCLUSION OF THE JURY

20  SELECTION PROCESS, SO PLEASE BEAR WITH US.

21          (WHEREUPON, AT THIS POINT IN THE PROCEEDINGS, THERE WAS

22  A CONFERENCE HELD AT THE BENCH.)

23          THE COURT:  FIRST 30 JURORS, ANY CHALLENGES FOR CAUSE?

24          MR. MEUNIER:  YOUR HONOR, SO I UNDERSTAND THE GROUND

25  RULES, WE CAN'T -- YOU DON'T WANT US TO GO BACK AND CHALLENGE FOR

```
 1   CAUSE ON THINGS THAT WERE IN THE QUESTIONNAIRE THAT DID NOT COME
 2   OUT TODAY; IS THAT --
 3             THE COURT:  I WOULD RATHER NOT.  IF SOMETHING CAME OUT
 4   TODAY --
 5             MR. MEUNIER:  IF WE'RE LIMITING IT ONLY TO WHAT CAME OUT
 6   TODAY.
 7             THE COURT:  RIGHT.
 8             MR. MEUNIER:  BECAUSE I THINK I'VE ALREADY LOOKED AT THE
 9   REASONS FOR CAUSE.  WE HAD THE GENTLEMAN, MR. VICKNAIR, WHO SAID
10   HIS SIGHT WAS NOT GOOD.  I THINK WE PROBABLY OUGHT TO GET HIM
11   OFF.
12             MR. MEUNIER:  WELL, YOUR HONOR, I WOULD LIKE TO AT LEAST
13   ASK HIM A LITTLE BIT MORE ABOUT THAT.
14             THE COURT:  WE CAN BRING THESE PEOPLE UP FOR
15   QUESTIONING.  VICKNAIR IS A CANDIDATE.  WHO ELSE?
16             MR. GLASS:  JUDGE, WE HAVE SOME PROBLEMS WITH -- I DON'T
17   WANT TO GO INTO IT.
18             MR. MEUNIER:  I CAN'T HEAR YOU.
19             MR. WEINSTOCK:  JUST TELL HIM WHICH ONES WE WANT TO ASK
20   QUESTIONS ABOUT.
21             MR. GLASS:  AUCOIN, FIRST ONE.
22             MR. WEINSTOCK:  THAT'S MITCHELL, NUMBER 12.  I
23   APOLOGIZE.
24             MR. GLASS:  HOOFKIN, NUMBER 16.  GUSTE, NUMBER 18.
25             THE COURT:  I THINK I'M GOING TO EXCUSE GUSTE FOR CAUSE.
```

1    HE KNOWS A LOT OF PEOPLE.

2         MR. MEUNIER:  WE'RE NOT GOING TO ASK HIM IF HE COULD BE

3    FAIR?

4         MR. WEINSTOCK:  AND HARRIS IS THE OTHER ONE WE'D LIKE TO

5    ASK QUESTIONS.

6         THE COURT:  PLAINTIFFS, ANY OTHER CHALLENGES FOR CAUSE

7    THAT YOU WOULD LIKE TO ARGUE -- THAT YOU WOULD LIKE PEOPLE TO BE

8    EXCUSED FOR CAUSE?

9         MR. MEUNIER:  I HAVE A NUMBER I'D LIKE TO BE EXCUSED FOR

10   CAUSE.

11        THE COURT:  OUT OF THE FIRST 30.

12        MR. MEUNIER:  OUT OF THE FIRST 30.  NUMBER FIVE, EMILE;

13   NUMBER 14, STRICKER; NUMBER 17, DUPRE; NUMBER 21, SMALLWOOD;

14   NUMBER 22, FARLEY; AND, NUMBER 23, HATTIER.

15        THE COURT:  WHAT'S THE PROBLEM WITH NUMBER -- BEFORE WE

16   GO, FLUOR, DO Y'ALL HAVE ANY --

17        MR. SHERBURNE:  WE'RE ON THE SAME PAGE.

18        THE COURT:  NUMBER ONE.  WHAT'S THE PROBLEM WITH

19   NUMBER ONE?

20        MR. MEUNIER:  I DIDN'T HAVE A PROBLEM WITH NUMBER ONE.

21        THE COURT:  I'M SORRY, NUMBER FIVE.

22        MR. MEUNIER:  WELL, AGAIN, I GUESS BECAUSE I'M HEARING A

23   NEED TO QUESTION JURORS FOR CAUSE BASED ON -- I'M NOT SURE

24   WHAT -- I HAVE TO PRESERVE FOR THE RECORD THE OBJECTION BASED ON

25   HIS QUESTIONNAIRE THAT HE OWNS A TRAVEL TRAILER.  HE OWNS A

1   CHEROKEE TRAVEL TRAILER AND HAS NO SAFETY CONCERNS OR HEALTH

2   CONCERNS.

3            THE COURT:  I THINK THAT'S A PEREMPTORY.

4            MR. MEUNIER:  JUST NOTE FOR THE RECORD OUR OBJECTION.

5            THE COURT:  SURE.  NEXT PLAINTIFF IS NUMBER 14.

6            MR. GLASS:  NUMBER 12.

7            THE COURT:  PLAINTIFF.

8            MR. MEUNIER:  NUMBER 14, STRICKER.  YOUR HONOR, STRICKER

9   IN HIS QUESTIONNAIRE SAID HE HAD A CONCERN ABOUT BEING OPEN

10  MINDED BECAUSE HE WAS NOT FAMILIAR WITH FEDERAL CONSTRUCTION

11  GUIDELINES, AND THAT THE EVIDENCE WOULD HAVE TO BE, QUOTE, CLEAR

12  AND OBVIOUS.  SO I WOULD LIKE TO AT LEAST BE ABLE TO QUESTION

13  MR. STRICKER ABOUT WHETHER THE PREPONDERANCE OF THE EVIDENCE

14  STANDARD IS SOMETHING THAT HE COULD FOLLOW, HAVING SAID THAT.

15           THE COURT:  WE'RE GOING TO DO THIS VERY QUICKLY, GUYS.

16           MR. STRICKER, NUMBER 14, IF YOU COULD COME ON UP,

17  PLEASE.  WE HAVE A FEW ADDITIONAL QUESTIONS FOR YOU.

18           IT'S OKAY TO TALK AMONGST YOURSELVES, BUT IF YOU

19  COULD DO SO QUIETLY BECAUSE I'M TRYING TO HEAR EVERYTHING UP

20  HERE, AND WE'RE NOT ON THE MICROPHONE HERE.

21           MR. STRICKER, IF YOU'D COME UP.

22           THE DEPUTY CLERK:  JUDGE, SOME JURORS NEED TO GO TO THE

23  RESTROOM.

24           THE COURT:  IF YOU NEED TO GO TO THE RESTROOM, IF YOU

25  ALL COULD GO ONE OR TWO AT A TIME AND RETURN AS PROMPTLY AS

1    POSSIBLE, PLEASE.

2                MR. STRICKER, YOU INDICATED IN YOUR QUESTIONNAIRE

3    THAT YOU WERE NOT AWARE OF CERTAIN GUIDELINES OR CERTAIN FEDERAL

4    GUIDELINES RELATIVE TO THIS CONSTRUCTION?

5          MR. MEUNIER:  JUDGE, IF I COULD REFER YOU TO THE

6    QUESTION.  IT'S NUMBER 128.

7          PROSPECTIVE JUROR 14:  IT WAS A LENGTHY QUESTIONNAIRE.

8          THE COURT:  MR. MEUNIER CAN DIRECT YOU TO THE RESPONSE.

9          MR. MEUNIER:  NUMBER 128 ASKS, "IS THERE ANYTHING YOU

10   CAN THINK OF THAT WOULD GIVE YOU TROUBLE BEING OPEN MINDED IN A

11   CASE INVOLVING A PERSON SUING THE TRAILER MANUFACTURERS,

12   INSTALLATION AND MAINTENANCE CONTRACTORS AND FEMA FOR

13   FORMALDEHYDE EXPOSURE FROM THEIR FEMA ISSUED TRAILERS?"  AND YOU

14   CAN READ WHAT YOUR ANSWER WAS.

15         PROSPECTIVE JUROR 14:  SURE.  "I HAVEN'T STUDIED THE

16   INDUSTRY OR FEDERAL CONSTRUCTION GUIDELINES, NOR DO I BELIEVE I

17   COULD MAKE DEFINITE DECISION BASED ON ARGUMENT.  THE EVIDENCE

18   MUST BE CLEAR AND OBVIOUS."

19               AND I REALLY THINK THAT THE TRAIN OF THOUGHT THERE

20   WAS WHAT ARE THE FEDERAL REGULATIONS ON FEMA TRAILERS -- OR ON

21   TRAILERS, AND ARE THEY MEANT TO BE USED FOR PERMANENT DWELLING OR

22   FOR RECREATIONAL USE?

23         THE COURT:  YOU MEAN YOU HAVE A QUESTION ABOUT THAT, BUT

24   YOU DON'T HAVE AN OPINION ABOUT IT?

25         PROSPECTIVE JUROR 14:  NO, I DON'T HAVE AN OPINION.  I

1  MEAN, MY OPINION WOULD BE THAT THEY ARE MEANT FOR RECREATIONAL

2  USE, BUT I DON'T HAVE ANYTHING TO SUBSTANTIATE THAT.

3          THE COURT:  GO AHEAD.

4          MR. MEUNIER:  WHEN YOU SAID THE EVIDENCE MUST BE CLEAR

5  AND OBVIOUS, IF THE PREPONDERANCE OF THE EVIDENCE STANDARD, AS

6  THE JUDGE WILL INSTRUCT YOU, IS NOT A CLEAR AND OBVIOUS STANDARD,

7  THAT'S WHAT I HAVE A QUESTION ABOUT, WHAT WERE YOU REFERRING TO

8  WHEN YOU SAID THE EVIDENCE MUST BE CLEAR AND OBVIOUS?

9          PROSPECTIVE JUROR 14:  WELL, I GUESS MY INITIAL THOUGHT

10  WOULD BE THAT, YOU KNOW, IF THE GUIDELINES ARE CLEAR, WHAT WERE

11  THEY USED FOR, YOU KNOW, WAS THAT THE INTENDED PURPOSE OF THE

12  TRAILER, YOU KNOW.  I THINK YOU CAN MAKE IT IMPARTIAL -- I THINK

13  I COULD BE IMPARTIAL ENOUGH TO MAKE AN HONEST DECISION, BUT, YOU

14  KNOW, THAT'S JUST MY INITIAL LEANING.

15          THE COURT:  BUT YOU UNDERSTAND THAT THE STANDARD IN THIS

16  CASE IN ORDER TO EVALUATE WHETHER SOMEBODY IS LIABLE IS GOING TO

17  BE BY A PREPONDERANCE OF THE EVIDENCE --

18          PROSPECTIVE JUROR 14:  YES, SIR.

19          THE COURT:  -- NOT BY A CLEAR AND OBVIOUS STANDARD.  IN

20  OTHER WORDS, YOU'RE GOING TO HEAR EVIDENCE, AND YOU'RE GOING TO

21  DECIDE WHETHER SOMETHING IS MORE LIKELY THAN NOT.

22          PROSPECTIVE JUROR 14:  SURE.

23          THE COURT:  AND YOU'RE GOING TO RULE IN THIS CASE, AS A

24  JUROR, YOU'LL HAVE TO CONSIDER WHETHER BY A PREPONDERANCE OF THE

25  EVIDENCE, NOT CLEAR AND OBVIOUS.  IN CRIMINAL CASES, WE SAY

1   BEYOND A REASONABLE DOUBT, WHICH IS EVEN A HIGHER STANDARD.  SO

2   WHEN YOU SAY CLEAR AND OBVIOUS, YOU'RE NOT USING THAT AS A LEGAL

3   TERM?

4           PROSPECTIVE JUROR 14:  NO, SIR.

5           MR. MEUNIER:  I HAVE NO FURTHER QUESTIONS.

6           THE COURT:  ANYBODY ELSE WANT TO QUESTION THIS WITNESS?

7   DO YOU THINK YOU CAN BE FAIR IN THIS CASE IF YOU'RE CHOSEN AS A

8   JUROR?  BECAUSE THE QUESTIONS THAT YOU'RE ANSWERING HERE REALLY

9   GO TO SOME ISSUES IN THIS CASE, IN OTHER WORDS, THINGS THAT THE

10  JURY IS GOING TO HAVE TO DECIDE.  DO YOU HAVE ANY FEELING AT THIS

11  POINT THAT YOU ARE PERSUADED ONE WAY OR THE OTHER AS EVIDENCED IN

12  YOUR ANSWER TO THAT QUESTION?

13          PROSPECTIVE JUROR 14:  I DON'T THINK ANYTHING OTHER THAN

14  I'VE ALREADY STATED.

15          THE COURT:  ALL RIGHT.  THANK YOU.

16          PROSPECTIVE JUROR 14:  THANK YOU.

17          THE COURT:  I THINK HE'S A PEREMPTORY CHALLENGE.

18          MR. MEUNIER:  OUR NEXT IS 17, DUPRE.  THIS GENTLEMAN

19  INDICATES THAT HE WAS A SERVICE TECH FOR A COMPANY, A CHEMICAL

20  COMPANY CALLED AUTOCHLOR, AND I WOULD LIKE TO ASK HIM ABOUT

21  AUTOCHLOR BECAUSE WE HAVE SOME INFORMATION THAT THEY WERE

22  INVOLVED IN A FORMALDEHYDE CONTROVERSY.

23          THE COURT:  MR. DUPRE, NUMBER 17.

24          MR. WEINSTOCK 1:  I THINK HE WENT TO THE MEN'S ROOM.

25          THE COURT:  WE'LL COME BACK TO HIM.

1    MR. MEUNIER:  YOUR HONOR, NUMBER 21, SMALLWOOD, SAYS HE

2  HAS EXPERIENCE WITH FURNITURE, CARPETS AND WOODWORK.  AND, AGAIN,

3  THE QUESTION I WOULD LIKE TO ASK HIM IS WHETHER HE WORKS AROUND

4  FORMALDEHYDE AND IS --

5    THE COURT:  DIDN'T WE HAVE THAT IN THE QUESTIONNAIRE,

6  THOUGH?

7    MR. DUPRE, IF YOU'D COME FORWARD, PLEASE.

8  MR. MEUNIER WANTED TO ASK YOU A FEW QUESTIONS ABOUT AN ANSWER

9  THAT YOU GAVE ON THE QUESTIONNAIRE.

10    MR. MEUNIER:  MR. DUPRE, YOU INDICATE THAT YOU WORKED

11  FOR A COMPANY CALLED AUTOCHLOR.

12    PROSPECTIVE JUROR 17:  YES, SIR.

13    MR. MEUNIER:  THAT'S A CHEMICAL MANUFACTURING COMPANY?

14    PROSPECTIVE JUROR 17:  YES.

15    MR. MEUNIER:  DO THEY MAKE FORMALDEHYDE?

16    PROSPECTIVE JUROR 17:  NO, THEY DON'T.

17    MR. MEUNIER:  HAVE YOU EVER COME ACROSS CONTROVERSY WITH

18  FORMALDEHYDE THROUGH AUTOCHLOR?

19    PROSPECTIVE JUROR 17:  NO.  IT'S A DISHWASHING COMPANY.

20    THE COURT:  WHAT KIND OF CHEMICALS DO THEY USE?

21    PROSPECTIVE JUROR 17:  OH, WE USE STUFF FOR LAUNDRY,

22  LIKE CAUSTIC SODA AND ALKALI.

23    MR. MEUNIER:  AND YOU OWN A MOBILE HOME?

24    PROSPECTIVE JUROR 17:  YES.

25    MR. MEUNIER:  WHO MADE IT, MANUFACTURED IT?

1          PROSPECTIVE JUROR 17:  NORTH RIVER.

2          MR. MEUNIER:  YOU LIVE IT?

3          PROSPECTIVE JUROR 14:  YES.  I'VE BEEN LIVING IN IT FOR

4     23 YEARS.

5          MR. MEUNIER:  AND YOU HAVE NO CONCERNS ABOUT SAFETY

6     LIVING IN A MOBILE HOME?

7          PROSPECTIVE JUROR 17:  NO.  AND I ALSO -- I FORGOT TO

8     TELL YOU, I DO WORK OFF OF COMMISSION ALSO, COMMISSION SALES.

9          THE COURT:  ANYBODY ELSE?  THANK YOU, MR. DUPRE.

10         MR. MEUNIER:  WE'D JUST NOTE THE SAME OBJECTION, JUDGE,

11    THAT HE LIVED IN A MOBILE HOME.  YOU KNOW, I DON'T KNOW HOW

12    YOU'RE GOING TO HAVE A JUROR BE FINDING A PRODUCT UNREASONABLY

13    DANGEROUS WHEN THEY LIVE --

14         MR. WEINSTOCK:  THIS CASE ISN'T A MOBILE HOME CASE.  IF

15    IT WAS, IT WOULD BE PREEMPTIVE.

16         THE COURT:  WE'VE GOT TO MOVE ON.  I DON'T THINK WE CAN

17    EXCUSE EVERYBODY WHO HAS HAD AN EXPERIENCE WITH A MOBILE HOME.

18    THAT WOULD BE LIKE SAYING EVERYBODY THAT'S BEEN IN A CAR ACCIDENT

19    OR SOMEBODY WHO OWNS A CAR COULD BE EXCUSED AS A JUROR.

20         MR. MEUNIER:  I'LL SKIP SMALLWOOD.

21         THE COURT:  DID YOU WANT TO ASK SMALLWOOD?

22         MR. MEUNIER:  WELL, THERE ARE THE PLACES IN THE

23    QUESTIONNAIRE WHERE HE TALKS ABOUT FORMALDEHYDE.

24         THE COURT:  FARLEY.

25         MR. MEUNIER:  FARLEY, HER HUSBAND IS A MANUFACTURING

1   COMPANY MANUFACTURER.  THE COMPANY IS CALLED INTRALOX.  AGAIN,

2   I'D LIKE TO ASK WHETHER THEY MAKE FORMALDEHYDE.  AND SHE, TOO,

3   HAS OWNED A CAMPER.

4          THE COURT:  MS. FARLEY, NUMBER 22, IF YOU WOULD COME

5   FORWARD, PLEASE.

6              GO AHEAD, MR. MEUNIER.

7          MR. MEUNIER:  MS. FARLEY, YOU INDICATED IN YOUR

8   QUESTIONNAIRE THAT YOUR HUSBAND IS AN MANAGER FOR A MANUFACTURING

9   COMPANY.  I THINK IT'S INTRALOX.

10         PROSPECTIVE JUROR 22:  YES, IT IS.

11         MR. MEUNIER:  WHAT DO THEY MAKE?

12         PROSPECTIVE JUROR 22:  CONVEYOR BELTING.

13         MR. MEUNIER:  DO YOU KNOW WHAT KIND OF CHEMICALS THEY

14  USE?

15         PROSPECTIVE JUROR 22:  I HAVEN'T A CLUE.  THEY ARE

16  MOLDED.  THEY USE MOLDING MACHINES.  THAT'S ALL I KNOW.

17         MR. MEUNIER:  YOU DON'T KNOW WHETHER THEY USE

18  FORMALDEHYDE IN THEIR MOLDING PROCESS?

19         PROSPECTIVE JUROR 22:  I HAVE NO IDEA.  I HAVE ONE IDEA.

20         MR. WEINSTOCK:  IS THAT ONE OF THE LATRAM COMPANIES?

21         PROSPECTIVE JUROR 22:  IT IS LATRAM.  YES, IT IS.

22         MR. MEUNIER:  WHO MADE THE CAMPER THAT YOU OWNED, DO YOU

23  KNOW?

24         PROSPECTIVE JUROR 22:  OH, GOSH.  I DON'T KNOW.  THAT

25  WAS SO LONG AGO.

1          THE COURT:  YOU DON'T OWN IT ANYMORE?

2          PROSPECTIVE JUROR 22:  NO.  WE SOLD IT LIKE 20 YEARS

3   AGO.  I HAVE NO IDEA.

4          MR. MEUNIER:  BUT YOU NEVER HAD ANY SAFETY CONCERNS

5   ABOUT YOUR CAMPER?

6          PROSPECTIVE JUROR 22:  NO, WE DIDN'T HAVE IT THAT LONG.

7   WE GOT TIRED OF CAMPING.

8          THE COURT:  I THINK YOU CAN USE A PEREMPTORY ON HER.

9          MR. MEUNIER:  THIS LAST ONE, HATTIER, WAS ON OUR STRIKE

10  LIST FOR CAUSE, AND YOU DECLINED AT THAT TIME.  SHE'S THE ONE WHO

11  SAYS IN HER QUESTIONNAIRE THAT SHE THINKS LAWSUITS ARE OUT OF

12  CONTROL, QUOTE, UNQUOTE.  AND SHE OWNS A FOREST RIVER AND A,

13  QUOTE, VARIETY OF OTHERS, CLOSE QUOTE, SO --

14         THE COURT:  MS. HATTIER, NUMBER 23, IF YOU WOULD COME

15  FORWARD, PLEASE.  ALSO, AGAIN, IF YOU ALL WANT TO TALK QUIETLY

16  AMONGST YOURSELVES, THAT'S FINE, BUT PLEASE KEEP IT DOWN.  THOSE

17  WHO ARE HERE OBSERVING WHO ARE NOT IN THE JURY POOL, PLEASE HAVE

18  A SEAT, IF YOU'RE NOT USING THE RESTROOM, BECAUSE WHEN WE START

19  UP, I DON'T WANT TO HAVE PEOPLE IN THE AISLE.

20              AGAIN, YOU CAN TALK QUIETLY AMONGST YOURSELVES, BUT

21  PLEASE KEEP IT DOWN.  AND PLEASE BE SEATED IF YOU ARE NOT ON YOUR

22  WAY OUT OR INTO THE COURTROOM.

23         MS. HATTIER, YOU CAN INDICATED IN YOUR

24  QUESTIONNAIRE THAT YOU ALL OWN A FORREST RIVER?

25         PROSPECTIVE JUROR 23:  RIGHT NOW, WE DO, YES.  WE HAVE

1   HAD CAMPERS, RECREATIONAL VEHICLES, FOR MANY YEARS.  AND

2   CURRENTLY WE HAVE A FOREST RIVER.  WE DID HAVE A GULF STREAM

3   MAYBE TWO BACK, YOU KNOW, BUT THAT'S IT.  I MEAN, IT'S JUST

4   SOMETHING WE'VE ALWAYS DONE IS HAVE RECREATIONAL VEHICLES.  WE DO

5   A LOT OF CAMPING.

6             MR. MEUNIER:  YOU USED THE GULF STREAM?

7             PROSPECTIVE JUROR 23:  UH-HUH (AFFIRMATIVE RESPONSE).

8             MR. MEUNIER:  AND YOU NEVER HAD ANY PROBLEMS WITH IT?

9             PROSPECTIVE JUROR 23:  NO.

10            MR. MEUNIER:  NO SAFETY CONCERNS, NO HEALTH CONCERNS

11  ABOUT IT?

12            PROSPECTIVE JUROR 23:  NO.

13            MR. MEUNIER:  AND I BELIEVE YOU'RE ALSO -- AT OCHSNER,

14  YOU'RE IN CLAIMS HANDLING?

15            PROSPECTIVE JUROR 23:  ACTUALLY, I'M A FINANCIAL ANALYST

16  IN THE SYSTEMS AREA; BUT, AT ONE POINT IN MY CAREER, I WORKED IN

17  ANOTHER HOSPITAL, AND I WAS A BUSINESS OFFICE MANAGER.  AND AT

18  THAT POINT, I WAS OVER, YOU KNOW, BILLING AND COLLECTIONS AND

19  THAT TYPE OF THING.  THAT WAS SEVERAL YEARS AGO.  BUT I'M NOW AN

20  ANALYST OVER THE SYSTEMS --

21            MR. MEUNIER:  AND YOU DID STATE IN YOUR QUESTIONNAIRE

22  THAT YOU THOUGHT LAWSUITS WERE, QUOTE, OUT OF CONTROL?

23            PROSPECTIVE JUROR 23:  TO SOME POINT, YEAH.  I THINK IT

24  CAN BE A BIT FRIVOLOUS.

25            THE COURT:  DO YOU THINK THAT YOU COULD BE FAIR IN THIS

1  CASE, IF YOU WERE CHOSEN AS JUROR?

2          PROSPECTIVE JUROR 23:  YES.

3          THE COURT:  DO YOU UNDERSTAND THAT WE'RE GOING TO HAVE

4  EVIDENCE HERE, AND THAT YOU'RE GOING TO DECIDE BASED ON THE

5  EVIDENCE AND NOT BASED ON ANYTHING ELSE OUTSIDE OF THE COURTROOM?

6          PROSPECTIVE JUROR 23:  YES.

7          THE COURT:  COUNSEL, ANY OF YOU ALL HAVE ANY QUESTIONS?

8              THANK YOU.

9          MR. MEUNIER:  THAT CONCLUDES OUR QUESTIONS FOR CAUSE,

10  BUT LET ME JUST ASK THE COURT TO CONSIDER THE FACT THAT THIS IS A

11  JUROR WHO OWNED AND USED A GULF STREAM RV AND FOUND IT TO BE

12  WITHOUT ANY KIND OF PROBLEM, HAD NO SAFETY OR HEALTH CONCERN.  I

13  DON'T KNOW HOW WE CAN EXPECT SOMEONE TO SIT ON A JURY AND NOW

14  FIND A GULF STREAM RV UNREASONABLY DANGEROUS UNDER NORMAL USE.

15  SHE JUST COMES TO THE TABLE WITH AN OWNERSHIP OF THE PRODUCT

16  EXPERIENCE THAT, COMING INTO IT, SHE'S GOING TO HAVE TO BELIEVE

17  THAT THIS PRODUCT IS FINE, OR ELSE SHE WOULDN'T HAVE OWNED IT AND

18  USED IT WITHOUT ANY CONCERN.  AND, JUDGE, THAT PUTS US --

19          THE COURT:  ANDY.

20          MR. WEINSTOCK:  I WOULD LIKE TO SAY HE'S WRONG, BUT I

21  DON'T THINK HE IS, YOUR HONOR.

22          THE COURT:  I THINK WE CAN GET JURORS.  I WOULD RATHER

23  NOT HAVE A JUROR THAT IS ON THE PRECIPICE OF BRINGING EXPERIENCE

24  WITH A PRODUCT IN A PRODUCT LIABILITY CASE.  AGAIN, I USED THE

25  ANALOGY WITH THE AUTOMOBILE, BUT THIS MAY BE A LITTLE BIT GREATER

1    THAN THAT, SO I'LL GO AHEAD AND EXCUSE MS. HATTIER FOR CAUSE.

2              ALL RIGHT.  ON THE DEFENDANTS' SIDE.  LET'S QUICKLY

3    GO THROUGH.

4         MR. GLASS:  MS. AUCOIN INDICATED IN SEVERAL PLACES THAT

5    SHE HAS MADE UP HER MIND ABOUT THIS CASE.  SPECIFICALLY IN

6    QUESTION 106, SHE SAID THAT SHE HAS OPINIONS ABOUT THE

7    MANUFACTURING COMPANIES AND FEELS THAT PEOPLE SHOULD NOT BE PUT

8    IN A BAD INSTANCE OF HEALTH DUE TO LACK OF TRAILERS AND DANGEROUS

9    SITUATIONS.  116, SHE HAS AN OPINION AGAINST FEMA CONTRACTORS.

10   SHE THINKS PEOPLE SHOULD NOT HAVE BEEN PUT IN A DANGEROUS

11   POSITION.  REGARDING 125, SHE SAID SHE HEARD ALL THE NEWS, SHE

12   TALKED TO PEOPLE, AND THAT PEOPLE SHOULDN'T HAVE TO HAVE BEEN PUT

13   IN THAT POSITION.

14        THE COURT:  MS. AUCOIN, NUMBER 12, IF YOU WOULD PLEASE

15   COME FORWARD.

16              WHAT ABOUT VICKNAIR, WHILE WE'RE --

17        MR. GLASS:  THESE ARE ALL THE PEOPLE WHO SAID THEY

18   WEREN'T OPEN MINDED BECAUSE OF --

19        THE COURT:  SO YOU'RE OKAY WITH VICKNAIR.  WELL, WE'LL

20   ASK MR. VICKNAIR.

21              AND, MR. VICKNAIR, IF YOU WOULD BE READY.  IF YOU

22   COULD COME HERE AND STAND BY THE EXIT TO JURY BOX, PLEASE.

23              ALL RIGHT.

24        MR. GLASS:  MA'AM, I JUST WANTED TO ASK YOU A FEW

25   QUESTIONS ABOUT YOUR QUESTIONNAIRE.  YOU WERE ASKED TODAY IF YOU

1    COULD BE OPEN MINDED, AND YOU DIDN'T RESPOND; BUT, IN YOUR

2    QUESTIONNAIRE, YOU HAD SOME VERY SPECIFIC CONCERNS ABOUT PEOPLE

3    BEING IN TRAILERS.  IN QUESTION NUMBER 106, YOU SAID THAT YOU

4    HAVE OPINIONS ABOUT COMPANIES WHO MANUFACTURE TRAILERS.  THESE

5    PEOPLE WOULD SHOULD NOT BE PUT IN BAD INSTANCES OF HEALTH.  HAVE

6    YOU ALREADY AN OPINION THAT THESE TRAILERS ARE DANGEROUS?

7             PROSPECTIVE JUROR 12:  YES.  I LOOK AT IT THIS WAY,

8    AS -- IF YOU WERE GOING TO BE KILLED, WOULDN'T YOU WANT TO BE

9    KILLED IN AN INSTANT AND IN A HURRICANE THAN BE PUT IN A SPOT

10   WHERE YOU'RE GOING TO DIE A SLOW DEATH?

11            MR. GLASS:  SO YOU THINK THESE TRAILERS WILL CAUSE YOU

12   TO DIE A SLOW DEATH?

13            PROSPECTIVE JUROR 12:  WELL, WOULDN'T YOU THINK IT IF --

14            MR. GLASS:  YOU'VE ALREADY MADE UP YOUR MIND, THEN?

15            PROSPECTIVE JUROR 12:  WELL, I MEAN, THINK ABOUT IT AS,

16   YOU KNOW, Y'ALL BANNING SECONDHAND SMOKE IN A BARROOM, WHICH I

17   HAPPEN TO WORK IN.  AND IF YOU HAVE CHOICES, YOU KNOW, THINK

18   ABOUT IT AS IN IF THEY HAD A CHOICE WOULD THEY GO IN THAT

19   TRAILER?

20            MR. SHERBURNE:  MA'AM -- MY NAME IS RICHARD SHERBURNE --

21   I NOTICED THAT YOU MENTIONED THAT YOU HAD A FRIEND THAT HAS A

22   CLAIM.  AND WE ALL HAVE LOTS OF FRIENDS, AND WE'RE CLOSE TO SOME

23   AND LESS CLOSE TO OTHERS.  CAN YOU TELL US A LITTLE BIT ABOUT

24   YOUR RELATIONSHIP WITH THIS PERSON?

25            PROSPECTIVE JUROR 12:  I WORK AT -- WHERE I WORK AT IS

1  NORM'S. THE GUY WHO OWNS THE PLACE, THAT'S HIS GOOD FRIEND, AND

2  THAT'S HOW I CAME TO KNOW HIM. AND HE COMES, ALSO.

3          MR. SHERBURNE: DO YOU SEE HIM IN THE BAR EVERY DAY?

4          PROSPECTIVE JUROR 12: OH, NO. NO. HE COMES WHEN --

5  THE OWNERS THAT OWNS OUR PLACE IS REAL SICK, AND HE ACTUALLY

6  HELPS DRIVE HIM. SO WHEN HE COMES.

7          THE COURT: OKAY. ANYBODY ELSE?

8          MR. MEUNIER: CAN I ASK?

9          THE COURT: SURE.

10          MR. MEUNIER: THE JUDGE IS GOING TO INSIST THAT EVERY

11  JUROR TAKE AN OATH TO LISTEN JUST TO THE EVIDENCE IN THIS CASE

12  AND DECIDE JUST WHETHER THIS TRAILER IN THIS CASE THAT WAS LIVED

13  IN BY THIS FAMILY WAS A PROBLEM OR NOT. IF THE JUDGE INSISTS

14  THAT YOU TAKE AN OATH AND DO THAT --

15          PROSPECTIVE JUROR 12: I UNDERSTAND WHAT YOU'RE SAYING.

16          MR. MEUNIER: -- DO YOU THINK YOU CAN LIMIT YOUR

17  CONSIDERATION TO WHAT YOU HEAR IN THIS COURTROOM AND DECIDE ABOUT

18  THIS TRAILER ONLY, DESPITE WHAT YOU MAY THINK ABOUT TRAILERS IN

19  GENERAL?

20          PROSPECTIVE JUROR 12: THAT'S HOW I FEEL, THOUGH,

21  TRAILERS IN GENERAL. I DON'T KNOW. I MEAN, LIKE, HE ASKED THAT

22  EARLIER, AND I QUESTIONED IT MAYBE, YOU KNOW, YEAH, I CAN, AND

23  MAYBE THEN WHAT IF I DOUBT MYSELF. THAT'S -- I MEAN, THAT'S WHY

24  I DIDN'T RAISE MY NUMBER BECAUSE I DIDN'T KNOW, YOU KNOW, LIKE --

25  I MEAN -- I DON'T KNOW. I CAN'T SAY YEAH OR NO. AFTER HEARING

1  IT, MAYBE I CAN, MAYBE I CAN'T.  I'M NOT --

2           THE COURT:  OKAY.  THANK YOU VERY MUCH.

3               I'M GOING TO EXCUSE HER.  I DON'T WANT TO TAKE A

4  CHANCE ON -- I THINK SHE'S GOT HER MIND MADE UP.

5           MR. MEUNIER:  THERE ARE JURORS OUT THERE WHO ARE GOING

6  TO BE STRUCK FOR PEREMPTORY WHO COME INTO THIS THING WITH

7  OPINIONS IN THE QUESTIONNAIRES, AND THEY PUT IT OUT OF THEIR HEAD

8  AND DECIDE IT BASED ON WHAT THEY HEAR IN THE COURTROOM.

9           THE COURT:  SHE ANSWERED EVEN THAT QUESTION SHE COULD.

10          MR. MEUNIER:  SHE HAD DOUBTS ABOUT THAT.

11          THE COURT:  WHY WOULD I TAKE A CHANCE WITH A JUROR WHO

12 HAS DOUBTS?  I MAY GET MIDSTREAM AND THE JUROR MAY SAY, YOU KNOW

13 WHAT, I CAN'T.

14          MR. GLASS:  WHICH MEANS YOU'D HAVE TO WAIT UNTIL THE

15 END.

16          MR. MEUNIER:  WELL, ALL I'M SUGGESTING IS THE

17 QUESTIONNAIRES REFLECT THAT A LOT OF THESE JURORS COME INTO THIS

18 WITH PREDISPOSED ATTITUDES.  A LOT OF THEM, FOR EXAMPLE, ARE VERY

19 ANGRY AT FEMA.  SO I JUST DON'T KNOW THAT THIS SHOULD BE STRUCK

20 FOR CAUSE, SOMEONE WHO HAS A PREEXISTING DOUBT.

21          MR. SHERBURNE:  BUT, JUDGE, WE JUST STRUCK SOMEBODY FOR

22 CAUSE BECAUSE SHE OWNED A TRAILER, BECAUSE SHE'S MADE A JUDGMENT

23 ABOUT TRAILERS THAT THEY'RE SAFE.  AND THIS LADY IS TELLING US

24 SHE CAN'T SAY THAT THEY'RE NOT --

25          THE COURT:  I'M GOING TO EXCUSE HER FOR CAUSE.

1              MR. VICKNAIR, SIR, IF YOU WOULD COME FORWARD.

2    MR. VICKNAIR, YOU INDICATED YOU HAD SOME PROBLEMS WITH YOUR

3    EYESIGHT.

4              PROSPECTIVE JUROR 13:  YES.

5              THE COURT:  ARE YOU ABLE TO READ A NEWSPAPER?

6              PROSPECTIVE JUROR 13:  RIGHT NOW, IT'S HARD BECAUSE I

7    GOT -- WHAT IT IS, IT'S LIKE A LITTLE SLIT, AND THE FLUID IS

8    LEAKING BEHIND THE RETINA, SO IT MAKES EVERYTHING BLURRY.

9              THE COURT:  BUT IS THAT ONE EYE OR BOTH EYES?

10             PROSPECTIVE JUROR 13:  WELL, IT'S MY RIGHT EYE RIGHT

11   NOW, BUT LAST YEAR IT WAS MY LEFT EYE.

12             THE COURT:  BUT RIGHT NOW --

13             PROSPECTIVE JUROR 13:  IT WOULD MAKE IT HARD FOR ME

14   TO --

15             THE COURT:  CAN YOU READ THIS?  CAN YOU SEE THIS HERE

16   AND READ THIS SCREEN HERE?

17             PROSPECTIVE JUROR 13:  NO.

18             THE COURT:  YOU CAN'T SEE IT.  THE SCREEN THAT'S IN THE

19   JURY BOX THAT LOOKS JUST LIKE THIS, THERE IS NOTHING ON IT RIGHT

20   NOW, BUT WOULD YOU BE ABLE TO READ THAT IF THAT WAS IN FRONT OF

21   YOU?

22             PROSPECTIVE JUROR 13:  I DON'T KNOW.  LIKE I SAY, MY

23   EYES ARE SO BAD RIGHT NOW, IT'S HARD FOR ME TO SEE.

24             THE COURT:  ALL RIGHT.  ARE YOU ABLE TO DRIVE AT ALL?

25             PROSPECTIVE JUROR 13:  WELL, I DRIVE BACK AND FORTH TO

1  WORK BECAUSE I LIVE LIKE TWO MILES.  BUT LIKE IF A CAR COMES

2  TOWARDS ME, IT BLINDS ME.  I CAN'T SEE.  AND LIKE THE GLARE IN

3  HERE IS BOTHERING ME RIGHT NOW.

4        MR. MEUNIER:  WHEN YOU DRIVE, YOU CAN READ THE ROAD

5  SIGNS?

6        PROSPECTIVE JUROR 13:  YEAH, IF THEY ARE BIG ENOUGH.

7  LIKE IF IT WAS SOMETHING SMALL, I CAN'T SEE IT.

8        MR. MEUNIER:  SO IF THERE IS A SCREEN WHICH HAS PRINT ON

9  IT THAT'S BIG ENOUGH, YOU WOULD BE ABLE TO READ THAT?

10        PROSPECTIVE JUROR 13:  YEAH, IF IT'S BIG ENOUGH.

11        THE COURT:  OKAY.  COUNSEL, ANYTHING?  THANK YOU.

12        MR. MEUNIER:  THANK YOU, SIR.

13        THE COURT:  DOES ANYBODY WANT TO COMMENT?

14        MR. SHERBURNE:  JUDGE, I HATE TO SAY IT.  THE MAN SAID

15  HE COULDN'T READ WHAT'S ON YOUR SCREEN.

16        MR. MEUNIER:  WELL, BUT I COULDN'T READ IT.

17        THE COURT:  HE CAN READ STREET SIGNS, IF HE CAN DRIVE.

18        MR. SHERBURNE:  HE'S DRIVING TWO MILES TO HIS JOB THAT

19  HE'S HAD FOR 30 YEARS, JUDGE.

20        THE COURT:  I'M GOING TO LEAVE HIM IN.  I'M GOING TO

21  LEAVE HIM IN.  I THINK HE GOT HERE, HE CAN SERVE, IF HE'S PICKED.

22        WHO ELSE?  MS. HOOFKIN.  WHAT'S THE PROBLEM WITH

23  MS. HOOFKIN?

24        MR. GLASS:  SHE HAS FAMILY IN TRAILERS, THREE PEOPLE.

25  SHE CAN'T UNDERSTAND HOW THEY WOULD LET PEOPLE HAVE TRAVEL

1  TRAILERS WHEN THERE'S FORMALDEHYDE IN IT.  WHY WOULD THEY LET

2  THEM LIVE THERE.  HEARD THAT PEOPLE ARE SUFFERING FROM ILLNESS

3  BECAUSE OF TRAVEL TRAILERS.

4          THE COURT:  THIS IS FROM THE QUESTIONNAIRE.

5          MR. GLASS:  BUT SHE SAYS SHE CAN'T BE OPEN MINDED, WHY

6  WOULD THEY THEN -- HER SPECIFIC COMMENTS ARE WHY WOULD THEY ALLOW

7  PEOPLE TO LIVE WHERE THERE IS FORMALDEHYDE.  WHY WOULD THEY PUT

8  THAT IN THE TRAILER WHEN IT CAUSES ALL OF THIS HARM.

9          THE COURT:  NUMBER 16, MS. HOOFKIN, IF YOU WOULD COME

10 FORWARD, PLEASE.

11           WHAT'S THE PROBLEM WITH ELLIS WHILE 16 IS?

12         MR. GLASS:  SAME THING.  HER FAMILY MEMBER INSPECTED

13 TRAILERS.

14         THE COURT:  MS. HOOFKIN, YOU ANSWERED SOME QUESTIONS ON

15 THE QUESTIONNAIRE.  DO YOU THINK THAT IF YOU'RE CHOSEN AS A JUROR

16 IN THIS CASE YOU COULD BE FAIR AND LISTEN TO ALL OF THE EVIDENCE

17 AND COME TO A CONCLUSION IN THIS CASE, IF YOU'RE PICKED AS A

18 JUROR, BASED ON ONLY THE EVIDENCE IN THIS COURTROOM?

19         PROSPECTIVE JUROR 16:  YEAH.

20         THE COURT:  MR. GLASS, DID YOU WANT TO ASK QUESTIONS?

21         MR. GLASS:  YES, MA'AM.  YOU INDICATED IN YOUR

22 QUESTIONNAIRE THAT YOU HAD SOME FAMILY MEMBERS WHO WERE IN

23 TRAILERS?

24         PROSPECTIVE JUROR 16:  NO.  I DIDN'T HAVE ANY FAMILY

25 MEMBERS.  I KNOW SOME FRIENDS THAT WAS IN TRAILERS.

1          MR. GLASS:  ARE THEY PLAINTIFFS IN THE CASE?

2          PROSPECTIVE JUROR 16:  NO.

3          MR. GLASS:  YOU TALKED TO PEOPLE ABOUT YOUR CONCERNS IN

4     THE TRAILER AND DID YOU, WELL, FIRST OF ALL, IS THIS YOUR

5     HANDWRITING?

6          PROSPECTIVE JUROR 16:  UH-HUH (AFFIRMATIVE RESPONSE).

7          MR. GLASS:  YOU TALKED TO SOME PEOPLE, AND YOU HAD

8     CONCERNS, YOU'VE MADE UP YOUR MIND ABOUT FORMALDEHYDE AND WHY

9     WOULD THEY LET PEOPLE LIVE IN THESE TRAILERS BECAUSE THEY HAVE

10    FORMALDEHYDE IN THEM?

11         PROSPECTIVE JUROR 16:  YEAH.  IT WAS LIKE MAYBE ME AND

12    SOME FAMILY, WE TALKED ABOUT IT WHEN WE SEEN IT ON THE NEWS, THAT

13    THEY WERE HAVING THE PEOPLE SUING THEM.  MY CONCERN WAS IF THE

14    COMPANY KNEW THAT THE FORMALDEHYDE WOULD, YOU KNOW, CAUSE

15    SOMEBODY INJURY, WHY WOULD THEY PUT THEM IN THERE?

16         MR. GLASS:  AND THAT'S WHAT YOU'RE INDICATING IN NUMBER

17    120, THAT IT'S YOUR OPINION THAT FORMALDEHYDE, YOU'VE ALREADY

18    FORMED AN OPINION THAT IT SHOULDN'T BE USED IN A PLACE WHERE

19    PEOPLE HAVE TO RESIDE SO THEY WOULDN'T, WOULD GET HURT?

20         PROSPECTIVE JUROR 16:  YEAH.

21         MR. MEUNIER:  YOUR HONOR, THE QUESTION THAT MR. GLASS

22    REFERRED TO IS OVERCOME BY THE FACT THAT THE WITNESS HAS JUST

23    TOLD YOU THAT IF SHE IS CALLED ON TO LISTEN TO THE EVIDENCE IN

24    THIS CASE AND DECIDE THE EVIDENCE AS SHE HEARS IT, SHE CAN BE

25    FAIR.

1            THE COURT:  MS. HOOFKIN, YOU UNDERSTAND THAT NO MATTER

2   WHAT QUESTIONS YOU MAY HAVE HAD OR DISCUSSIONS YOU'VE HAD WITH

3   FAMILY MEMBERS OR FRIENDS THAT THIS CASE WILL BE DECIDED ONLY BY

4   THE EVIDENCE IN THIS COURTROOM AND NOT BY ANYTHING ELSE OR WHAT

5   SOMEBODY TOLD YOU OR WHAT YOU MAY THINK BY SEEING A NEWS PROGRAM.

6   YOU HAVE TO DECIDE THIS CASE BASED ON THE EVIDENCE.  DO YOU THINK

7   YOU COULD DO THAT IF YOU'RE PICKED AS A JUROR?

8            PROSPECTIVE JUROR 16:  YES, I CAN.

9            THE COURT:  THANK YOU, MS. HOOFKIN.

10           PROSPECTIVE JUROR 16:  OKAY.

11           THE COURT:  SHE'S A PEREMPTORY.

12              ELLIS.  ELLIS IS THE SAME THING?  DO YOU WANT --

13           MR. GLASS:  SHE ACTUALLY HAD RELATIVES IN THE TRAILER.

14   I HAD THAT BACKWARDS.

15           THE COURT:  SHE HAD RELATIVES IN THE TRAILER?  SHE

16   ANSWERED THAT TODAY?  DID SHE PUT THAT IN THE QUESTIONNAIRE?

17           MR. WEINSTOCK:  ANDY WEINSTOCK.  WE WANT TO KNOW IF ANY

18   OF THOSE FAMILY MEMBERS HAVE MADE A CLAIM AND FILED A SUIT.

19           THE COURT:  MS. ELLIS, NUMBER 20.

20              WHO ELSE?  THAT'S IT OUT OF THE TOP 30?

21              MS. ELLIS, HOW ARE YOU?  GO AHEAD, MR. GLASS.

22           MR. GLASS:  MA'AM, YOU INDICATE IN YOUR QUESTIONNAIRE

23   THAT YOU HAVE SEVERAL RELATIVES IN TRAILERS?  YOUR GRANDMOTHER,

24   YOUR UNCLE, YOUR AUNTS AND SOME FRIENDS?

25           PROSPECTIVE JUROR 20:  UH-HUH.

1          MR. GLASS:  ARE ANY OF THEM PLAINTIFFS IN A LAWSUIT?

2          PROSPECTIVE JUROR 20:  NO.

3          MR. GLASS:  ARE ANY OF THEM CONTEMPLATING FILING A

4    LAWSUIT?

5          PROSPECTIVE JUROR 20:  NO.

6          MR. GLASS:  YOU ALSO INDICATED THAT THERE WERE SOME

7    THINGS THAT WOULD GIVE YOU TROUBLE BEING OPEN MINDED IN THE CASE

8    AND ONE OF THOSE BEING THAT THERE'S A LOT OF NEGATIVE COMMENTS

9    AND THAT'S POSSIBLE THAT THAT WON'T ALLOW YOU TO BE OPEN MINDED.

10   WHAT WERE YOU INDICATING IN THAT QUESTION?

11         PROSPECTIVE JUROR 20:  JUST IN THE SENSE OF SEEING A LOT

12   OF THINGS ON TELEVISION ASKING PEOPLE TO COME FORWARD, AND THAT

13   THERE IS A POSSIBILITY THAT YOU CAN WHETHER OR NOT THERE IS AN

14   PROBLEM.

15         MR. GLASS:  SO YOU THINK YOU'VE MADE UP -- YOU'VE

16   ALREADY GOT AN OPINION IF THERE'S A PROBLEM WITH FORMALDEHYDE IN

17   THE TRAILERS?

18         PROSPECTIVE JUROR 20:  THAT THERE IS A POSSIBLE PROBLEM.

19   I DON'T KNOW WHAT BECAUSE I DON'T HAVE ANY SPECIFIC PROBLEMS WITH

20   THAT MYSELF.

21         MR. GLASS:  DO YOU HAVE A FAMILY MEMBER WHO WORKED FOR

22   FEMA FOR THE TRAILER INSPECTIONS?

23         PROSPECTIVE JUROR 20:  MY AUNT.

24         MR. GLASS:  WHO WAS THAT, YOUR AUNT?

25         PROSPECTIVE JUROR 20:  MY AUNT.

1          MR. GLASS:  WHICH INSPECTOR DID SHE WORK FOR?

2          PROSPECTIVE JUROR 20:  I DON'T KNOW THAT MUCH.  I GUESS

3     IT PROBABLY WAS, SHE WENT TO THE FEMA TO -- I THINK WAS SOMETHING

4     SHE NEEDED TO CHECK FOR, JUST REGULAR CHECK ON THINGS AND CHECK

5     ON IF EVERYTHING IS OPERATING.

6          MR. GLASS:  HAVE YOU TALKED TO HER ABOUT ANYTHING ABOUT

7     FORMALDEHYDE OR TRAILERS INSPECTION?

8          PROSPECTIVE JUROR 20:  NO, I HAVEN'T.

9          MR. GLASS:  YOU'VE INDICATED THAT IT MIGHT BE, I'M

10    SORRY, WOULD THAT CAUSE YOU ANY PROBLEMS FINDING A PARTY LIABLE

11    IF THEY WERE INVOLVED IN INSPECTING TRAILERS?

12         PROSPECTIVE JUROR 20:  NO.

13         MR. GLASS:  THAT'S IT.

14         THE COURT:  MS. ELLIS, YOU UNDERSTAND THAT THIS CASE IS

15    GOING TO BE DECIDED ONLY ON THE EVIDENCE THAT'S PRESENTED IN THIS

16    COURTROOM, AND THAT YOU, IF YOU'RE CHOSEN AS A JUROR, YOU HAVE TO

17    HEAR ALL OF THAT EVIDENCE AND THEN COME TO A CONCLUSION AS TO

18    WHAT YOU THINK IS A JUST RESULT BASED ON THE INSTRUCTIONS THAT I

19    GIVE THE JURY, YOU UNDERSTAND THAT?

20         PROSPECTIVE JUROR 20:  I DO.

21         THE COURT:  DO YOU THINK YOU CAN DO THAT AND BE FAIR IN

22    THIS CASE BASED ON WHAT YOU'VE TOLD MR. GLASS JUST NOW AND WHAT

23    YOU'VE WRITTEN IN THE QUESTIONNAIRE?

24         PROSPECTIVE JUROR 20:  I WOULD THINK THAT I CAN, JUST,

25    OF COURSE, REMINDING MYSELF TO TAKE WHAT IS ON THE TABLE AND NOT,

1   I GUESS, WHAT'S AT THE BUFFET, I GUESS YOU COULD SAY.

2           THE COURT:  OKAY.  ANYBODY ELSE?  THANK YOU.

3               LET'S DO THIS:  LET ME ASK YOU ONE FINAL QUESTION.

4   ARE THERE ANY OTHER QUESTIONS YOU WOULD LIKE ME TO ASK THE GROUP

5   BEFORE YOU RETURN TO YOUR TABLES?

6           MR. WATTS:  IF YOU'RE NOT GETTING TO JUROR NUMBER 30 --

7           THE COURT:  IF WE GET PAST 30, I DON'T THINK WE WILL,

8   I'LL BRING SOMEBODY UP HERE, THAT'S WHY I DIDN'T WANT TO

9   CONCENTRATE ON ANYBODY AFTER 30.  BUT WE HAVE ENOUGH NOW THAT YOU

10  CAN USE ONE, ONE, ONE, ONE.  WE'RE GOING TO DO FIVE ROUNDS OF ONE

11  APIECE AND THAT'S IT.  THEN WE'RE GOING TO GET GOING.  OKAY,

12  LET'S DO IT, QUICKLY.

13              LADIES AND GENTLEMEN OF THE JURY POOL, WE'RE NOW

14  GOING TO ENGAGE IN A PROCESS THAT THE ATTORNEYS ARE GOING TO

15  PARTICIPATE IN.  AGAIN, I'LL ASK YOUR PATIENCE IN THE MEANTIME.

16  THE ATTORNEYS ARE GOING TO EXERCISE WHAT ARE CALL PEREMPTORY

17  CHALLENGES, I MADE REFERENCE TO THOSE BEFORE, AND MY COURTROOM

18  DEPUTY IS GOING TO GO FROM ONE SIDE TO THE OTHER HERE, PLAINTIFFS

19  TO DEFENDANTS, SO THEY CAN EXERCISE PEREMPTORY CHALLENGES.  THAT

20  SHOULD NOT TAKE VERY LONG.

21              AND ONCE THEY HAVE DONE THAT, WE WILL HAVE OUR

22  NINE-PERSON JURY, WE'LL GO AHEAD AND SEAT THAT JURY, AND THEN

23  WE'LL BE JUST ABOUT READY TO TAKE A BREAK FOR THOSE OF YOU WHO

24  ARE GOING TO BE THE NINE WHO HEAR THIS CASE.

25              AFTER WE TAKE THE BREAK, WE WILL COME BACK AND HEAR

1   THE OPENING STATEMENTS OF THE ATTORNEYS AND PROBABLY AT THAT

2   POINT TAKE A LUNCH BREAK, AND THEN WE'LL PICK UP WITH THE

3   TESTIMONY AND THE EVIDENCE IN THIS CASE.

4            LET'S GO AHEAD AND EXERCISE THE PEREMPTORY

5   CHALLENGES VERY PROMPTLY.  COUNSEL, YOU ALREADY HAVE INFORMATION

6   SO THIS SHOULD NOT TAKE VERY LONG.

7            MR. WATTS:  MAY WE APPROACH?

8            MR. MEUNIER:  MAY WE APPROACH, JUDGE?

9            THE COURT:  ALL RIGHT, COUNSEL IF YOU WOULD COME

10   FORWARD, PLEASE.  ONE SECOND.  WHO DO WE HAVE?

11      (WHEREUPON, AT THIS POINT IN THE PROCEEDINGS, THERE WAS A

12   CONFERENCE HELD AT THE BENCH.)

13            MR. WATTS:  WE NEED TO MAKE A MOTION BEFORE --

14            THE COURT:  OKAY, I UNDERSTAND.  IT'S NUMBER ONE, NUMBER

15   TWO, NUMBER THREE, NUMBER FOUR, NUMBER FIVE, I'M SORRY, NUMBER

16   FOUR, NUMBER SEVEN, NUMBER EIGHT, NUMBER 13, NUMBER 15, AND

17   NUMBER 21 ARE THE NINE PEOPLE WHO ARE CHOSEN AS A RESULT OF THE

18   PROCESS.  WOULD ANYONE LIKE TO MAKE A MOTION?

19            MR. WATTS:  WE WOULD.  COMING OUT OF THE PLAINTIFFS,

20   MICHAEL WATTS, PRACTICING LAW FOR 20 YEARS, THIS IS THE FIRST

21   *BATSON* MOTION I'VE EVER MADE.  THERE WERE 22 ELIGIBLE PERSONS OR

22   21 ELIGIBLE PERSONS.  THERE WERE FIVE AFRICAN-AMERICANS.  LET THE

23   RECORD REFLECT BOTH THE PLAINTIFF ALEXANDER AND COOPER ARE

24   AFRICAN-AMERICANS.  THE AFRICAN-AMERICANS AVAILABLE ON THE VENIRE

25   PANEL WERE JUROR NUMBER 9, JUROR NUMBER 11, JUROR NUMBER 16,

1    JUROR NUMBER 19, AND JUROR NUMBER 20.  AMONG THE AVAILABLE PANEL

2    MEMBERS AFRICAN-AMERICANS MADE UP 20 PERCENT.

3                 STATISTICALLY, THE DEFENDANTS EMPLOYED FIVE

4    PEREMPTORY CHALLENGES.  ALL FIVE WERE USED ON AFRICAN-AMERICANS,

5    AND WE MAKE A MOTION IN *BATSON* THAT, NUMBER ONE, WE'D BE

6    PERMITTED AFTER COUNSEL SPEAKS NOT TO PUT THEM ON THE STAND;

7    NUMBER TWO, TO INVESTIGATE WHETHER THERE IS RACE-NEUTRAL REASONS

8    THAT COULD POSSIBLY EXPLAIN THIS KIND OF STATISTICAL DISPARITY;

9    NUMBER TWO, AFTER THAT WE MAKE A MOTION THAT THOSE FIVE

10   AFRICAN-AMERICANS BE PLACED BACK ON THE PANEL AND THAT COUNSEL BE

11   DIRECTED TO EMPLOY HIS PEREMPTORY CHALLENGES ON OTHER JURORS NOT

12   IN VIOLATION OF *BATSON*.

13              THE COURT:  COUNSEL, YOU WANT TO RESPOND?

14              MR. WEINSTOCK:  YOUR HONOR, WE'RE HAVE 129 QUESTIONS ON

15   EACH AND EVERY JUROR.  WE ASKED MANY OF THEM TO COME UP HERE.

16   SEVERAL OF THEM WERE STRUCK FOR CAUSE.  FOR EXAMPLE, MR. FRANKLIN

17   JUST LOST HIS WIFE.  THERE'S A VALID REASON FOR EVERY SINGLE

18   PERSON WE ASKED TO BE EXCUSED, AND IT'S NOT BASED ON RACE.

19              THE COURT:  TELL ME WHAT, OUT OF THE NINE PEOPLE WE HAVE

20   CHOSEN, ARE THERE ANY AFRICAN-AMERICANS ON THE JURY AMONGST THOSE

21   NINE?

22              MR. WATTS:  I DON'T KNOW.  THEY STRUCK ALL FIVE OF

23   THE --

24              MR. WEINSTOCK:  NO, YOUR HONOR.

25              THE COURT:  DO YOU WANT TO TELL ME THE REASONS ON EACH

1   ONE AND SEE IF YOU CAN ESTABLISH A RACE NEUTRAL?

2          MR. WEINSTOCK:  I WOULD BE HAPPY TO HAVE SOMEBODY ON MY

3   TEAM TELL YOU THE REASONS FOR EACH ONE.  I WILL CERTAINLY.  TWO I

4   CAN TELL YOU IS, THE TWO WE ASKED TO COME UP, I BELIEVE MS., I

5   JUST TOLD YOU ABOUT MR. FRANK.  MS. HOOFKIN, MS. ELLIS, I BELIEVE

6   IT WAS.

7          THE COURT:  RIGHT, BOTH OF THEM CAME UP.

8          MR. WEINSTOCK:  BOTH OF THEM CAME UP AND BOTH OF THEM

9   HAVE FRIENDS AND RELATIVES THAT HAVE LIVED IN TRAILERS, AND THEY

10  HAVE ABSOLUTE, IN OUR MINDS AND THEY SAID IT IN THEIR

11  QUESTIONNAIRES, PRECONCEIVED NOTIONS ON BOTH.

12         THE COURT:  NUMBER NINE WAS THE FIFTH CHALLENGE YOU

13  USED.  THAT'S MS. MORRIS.

14         MR. GLASS:  SHE INDICATED THAT SHE WOULD ALSO FIND THE

15  COMPANY LIABLE IF THEY EXPOSED THE CONSUMER TO ANY KIND OF TOXIC

16  SUBSTANCE, ALWAYS.

17         THE COURT:  ALL RIGHT.  WHO ELSE?  BUT THAT WAS THE

18  QUESTION THAT I'VE HAD HAD A PROBLEM WITH THE WAY IT WAS WORDED

19  AND WE COMMENTED ON THIS WHEN WE HAD OUR CONFERENCE.  THAT

20  QUESTION IN AND OF ITSELF IS WORDED TO BEG THE ANSWER THAT

21  SOMEONE WOULD HAVE A PROBLEM WITH IT.

22         MR. GLASS:  A COUPLE OTHERS, YOUR HONOR.  TESTING WAS

23  VERY INADEQUATE.  MOST COMPANIES TRY AND INCREASE WITHOUT REGARD

24  FOR ETHICS.  AND INCREASED PROFITS WITHOUT REGARD TO ETHICS.  AND

25  HOW THEY -- PROFITS FOR COMPANIES.

1        THE COURT:  WHO ELSE?  WHAT ABOUT MR. FRANKLIN WAS YOUR

2   FOURTH.

3        MR. SHERBURNE:  YOUR HONOR, WE REMOVED MR. FRANKLIN

4   BECAUSE HE JUST LOST HIS WIFE.  THAT'S THE SOLE REASON.

5        MR. WEINSTOCK:  THAT'S THE SOLE REASON BECAUSE HIS WIFE

6   JUST PASSED AWAY.

7        MR. WATTS:  HOLD ON.

8        THE COURT:  WAIT.  I'M NOT UNDERSTANDING.  WHY WAS

9   MR. FRANKLIN SUBJECT OF A PEREMPTORY CHALLENGE?

10        MR. WEINSTOCK:  BECAUSE HE JUST LOST HIS WIFE, WHICH WE

11   BELIEVE MAKES HIM INCREDIBLY SYMPATHETIC.

12        MR. GLASS:  THAT AND THAT IN HIS QUESTIONNAIRE HE SAID

13   MOST COMPANIES WANT PROFITS OVER ETHICS, SAFETY TESTING IS VERY

14   INADEQUATE.  THE GOVERNMENT SHOULD PAY FOR INJURY EVEN IF THERE'S

15   NO PROOF.  HE HAD CHEMICAL EXPOSURE IN HIS OWN HOME, SO IF HE

16   THINKS HIS WIFE'S DEATH WAS A PROBLEM WITH THAT --

17        THE COURT:  WHEN I ASKED YOU FOR CAUSE, NOBODY CALLED

18   HIM UP HERE TO QUESTION HIM ABOUT THOSE ANSWERS.

19        MR. WEINSTOCK:  THAT'S TRUE, YOUR HONOR, BUT YOU DID NOT

20   ASK US TO KEEP CALLING THE SAME PEOPLE UP TO DISCUSS THAT

21   QUESTION OVER AND OVER.  WE MADE PRECONCEIVED NOTIONS BASED ON

22   WHAT THEY HAD WRITTEN.

23        MR. GLASS:  WE TRIED TO LIMIT IT TO A FEW PEOPLE.

24        THE COURT:  WHAT ABOUT MS. BROWN, YOUR THIRD CHALLENGE?

25        MR. WEINSTOCK:  MR. BROWN PUT IN BOLD, PUT VERY

1  EMPHATICALLY IN THE QUESTIONNAIRE, JUSTICE DOES NOT LIMIT WHAT'S

2  WRONG OR AMOUNT.  HER HUSBAND HAD A STROKE.  COMPANIES WILL DO

3  WHATEVER FOR PROFITS.  TESTING INADEQUATE BEFORE MARKETING.

4          MR.  WEINSTOCK:  SHE'S ALSO BEEN A PERSONAL PLAINTIFF

5  BEFORE.  CAN WE CAUCUS FOR ABOUT 30 SECONDS?

6          THE COURT:  ARE THERE ANY AFRICAN-AMERICANS ON 23

7  THROUGH 30 THAT WE ASKED ABOUT?

8          MR. WATTS:  WE'VE GOT EMILE BACCHUS.

9          THE COURT:  EMILE BACCHUS.

10         MR. HILLIARD:  THE CARPENTER.

11         THE COURT:  DO YOU HAVE A PROBLEM WITH ONE OF THEM?

12  BACCHUS OR, WHAT WAS THE OTHER ONE?

13         MR. WATTS:  29, RIGHT?

14         THE COURT:  WHO WAS THE OTHER ONE?

15         MR. WEINSTOCK:  YOUR HONOR, IF YOU HAVE A MOTION, I'LL

16  JUST USE MY LAST STRIKE ON SOMEBODY ELSE BECAUSE OF THE FIVE,

17  MR. FRANKLIN WAS CLEARLY, I MEAN -- THAT WAS THE ONE CLEARLY

18  CLOSEST TO THE LINE.  THAT'S WHY SHE WAS NUMBER FIVE.

19         THE COURT:  WHO WAS THAT?

20         MR. WEINSTOCK:  MS. MORRIS.  I'LL WITHDRAW IT AND STRIKE

21  SOMEBODY ELSE.

22         THE COURT:  MS. MORRIS?

23         MR. WEINSTOCK:  YES.

24         THE COURT:  LET MISS MORRIS IN?  AND THAT WOULD TAKE OUT

25  MR. SMALLWOOD?

1          MR. WEINSTOCK:  OR I WOULD HAVE TO STRIKE SOMEBODY ELSE

2    OR I WOULD TAKE OUT MR. SMALLWOOD.

3          THE COURT:  I SAID THAT HE COULD USE A PEREMPTORY ON

4    HOOFKIN AND ELLIS WHEN WE REVIEWED THEM.  THAT'S THE GROUNDS FOR

5    A PEREMPTORY CHALLENGE.  YOU'RE SAYING THAT MR. FRANKLIN, YOU

6    WOULD HAVE MR. FRANKLIN, I'M SORRY, MS. MORRIS ON THE JURY?

7          MR. WEINSTOCK:  SURE.

8          THE COURT:  SO YOU WOULD WITHDRAW THE PEREMPTORY

9    CHALLENGE NUMBER FIVE?  SO MS. MORRIS WOULD BE ON THE JURY?

10          MR. WEINSTOCK:  CORRECT.

11          THE COURT:  AND WHAT WAS THE GROUNDS ON MR. FRANKLIN,

12    SIMPLY BECAUSE HIS WIFE PASSED AWAY?

13          MR. WEINSTOCK:  HIS WIFE PASSED WAY.

14          THE COURT:  DO WE KNOW HOW LONG IT'S BEEN SINCE HIS WIFE

15    PASSED AWAY?

16          MR. WEINSTOCK:  SHE JUST PASSED AWAY.

17          THE COURT:  MR. FRANKLIN, NUMBER 11, IF YOU COULD COME

18    FORWARD, PLEASE.

19              YOU INDICATED WHEN WE QUESTIONED THE GROUP THAT

20    YOUR WIFE HAD RECENTLY PASSED AWAY.

21          PROSPECTIVE JUROR 11:  YES.

22          THE COURT:  HOW LONG AGO WAS THAT?

23          PROSPECTIVE JUROR 11:  THIRTEEN MONTHS.

24          THE COURT:  THIRTEEN MONTHS AGO?

25          PROSPECTIVE JUROR 11:  YES.

1            THE COURT:  IF YOU DON'T MIND ME ASKING, AND I KNOW IT'S

2    A PAINFUL THING FOR YOU PERHAPS STILL TO TALK ABOUT, DID SHE PASS

3    BECAUSE OF NATURAL CAUSES?

4            PROSPECTIVE JUROR 11:  SHE WAS SICK.

5            THE COURT:  SHE HAD AN ILLNESS?

6            PROSPECTIVE JUROR 11:  SCLERODERMA.

7            THE COURT:  SCLERODERMA?  IS THAT A TYPE OF CANCER?  I'M

8    NOT FAMILIAR WITH IT.

9            PROSPECTIVE JUROR 11:  IT'S NOT A CANCER, IT'S A RARE

10   DISEASE.

11           THE COURT:  A RARE DISEASE?

12           PROSPECTIVE JUROR 11:  YES.

13           THE COURT:  IF YOU WERE CHOSEN AS A JUROR IN THIS CASE,

14   DO YOU THINK THAT YOU COULD BE FAIR TO THE PARTIES AND HEAR THE

15   EVIDENCE IN THIS CASE, NOTWITHSTANDING THE CIRCUMSTANCES OF YOUR

16   WIFE'S PASSING?

17           PROSPECTIVE JUROR 11:  OF COURSE.

18           THE COURT:  YOU THINK THAT YOU COULD?

19           PROSPECTIVE JUROR 11:  YES.

20           THE COURT:  AND YOU UNDERSTAND THE CASE IS GOING TO BE

21   DECIDED ONLY ON THE EVIDENCE HERE, NOT OUT OF ANY KIND OF

22   SYMPATHY OR ANY OTHER TYPE OF FEELING TOWARDS THE PLAINTIFFS OR

23   THE DEFENDANTS IN THE CASE?

24           PROSPECTIVE JUROR 11:  JUROR YES, SIR.

25           THE COURT:  AND IF THE EVIDENCE ISN'T THERE, YOU HAVE TO

1  RULE FOR THE DEFENDANTS IF YOU ARE ON THE JURY.  AND IF, OF

2  COURSE, THE EVIDENCE IS THERE, THEN OF COURSE YOU CAN FACTOR THAT

3  EVIDENCE AND BASE A DECISION IN FAVOR OF THE PLAINTIFF BASED ONLY

4  ON THE EVIDENCE.  DO YOU UNDERSTAND THAT?

5          PROSPECTIVE JUROR 11:  YES, SIR.

6          THE COURT:  COUNSEL, DO YOU HAVE ANY OTHER QUESTIONS FOR

7  MR. FRANKLIN?

8          MR. GLASS:  WAS SHE -- YOU SAID SHE WAS EXPOSED TO

9  CHEMICALS IN YOUR HOUSE?

10          PROSPECTIVE JUROR 11:  NO, NO CHEMICALS.

11          MR. GLASS:  ON THE QUESTIONNAIRE, YOU SPOKE OF

12  CHEMICALS.

13          PROSPECTIVE JUROR 11:  EXCUSE ME?

14          THE COURT:  THE QUESTIONNAIRE.

15          MR. GLASS:  ON THE QUESTIONNAIRE, ON THE FORM YOU SAID

16  THAT YOU WERE EXPOSED TO CHEMICALS IN YOUR HOME?  WERE YOU

17  EXPOSED TO CHEMICALS IN YOUR HOME?

18          PROSPECTIVE JUROR 11:  NO, NO CHEMICALS.

19          THE COURT:  DO YOU HAVE ANY OTHER QUESTIONS WHILE WE'RE

20  GETTING THAT?  WHAT WAS ON THE QUESTIONNAIRE?  THERE WAS A

21  QUESTION ABOUT HIM INDICATING.

22          MR. GLASS:  BEING EXPOSED TO CHEMICALS.

23          THE COURT:  IN YOUR JOB WERE YOU EXPOSED TO ANY KIND OF

24  CHEMICALS OR ANY KIND OF INHALANTS?

25          PROSPECTIVE JUROR 11:  NO, I'M A CARPENTER, I WORK AT

1    THE NEW ORLEANS FAIRGROUNDS.

2        THE COURT:  LET'S SEE WHAT THEY ARE REFERRING TO ON THE

3    QUESTIONNAIRE.

4        MR. GLASS:  HE ALSO INDICATED THAT HE HAS CONCERNS ABOUT

5    COMPANIES PUTTING PROFITS OVERT ETHICS AND TAKE SAFETY TESTING IN

6    THEIR PRODUCTS.  WHAT ARE THOSE CONCERNS?

7        THE COURT:  SHOW HIM THE QUESTIONS SO HE CAN REFRESH HIS

8    MEMORY.  THAT'S WHAT YOU'RE TALKING ABOUT.

9        MR. GLASS:  HAVE YOU EVER EXPERIENCED ANY OF THE

10   FOLLOWING PROBLEMS IN YOUR HOME?  CHEMICAL EXPOSURE.

11       PROSPECTIVE JUROR 11:  WELL, WHAT WE WERE STAYING FOR,

12   WE WERE STAYING ACROSS FROM CHALMETTE FERRY, AND THEY HAD

13   CHEMICALS, YOU KNOW, LIKE YOU SMELL IT.  YOU KNOW, COMING FROM ON

14   THE OTHER SIDE OF THE RIVER WHERE I WAS STAYING AT, WE WOULD

15   SMELL THAT ALL THE TIME.

16       MR. GLASS:  DO YOU THINK THAT HURT YOUR HEALTH OR YOUR

17   WIFE'S HEALTH?

18       PROSPECTIVE JUROR 11:  PROBABLY BECAUSE BEEN EXPOSED,

19   SIR, BECAUSE CERTAIN KIND OF WAY THE WIND BLOW, YOU CAN SMELL IT

20   COMING FROM CHALMETTE.

21       THE COURT:  OTHER THAN THE ODOR, HAVE YOU ANY REASON TO

22   BELIEVE THAT THAT SMELL HAD ANY IMPACT ON YOUR HEALTH OR THE

23   HEALTH OF YOUR WIFE?

24       PROSPECTIVE JUROR 11:  I DON'T THINK SO.

25       THE COURT:  NO ONE HAS EVER TOLD YOU THAT, A DOCTOR OR

1  ANYTHING?

2          PROSPECTIVE JUROR 11:  NO.

3          THE COURT:  WHAT WAS THE OTHER QUESTION?

4          MR. GLASS:  THE OTHER QUESTION WAS, PUTTING ETHICS ASIDE

5  SO COMPANIES CAN MAKE A PROFIT.  YOU SAY THAT SAFE TESTING OF

6  PRODUCTS WAS VERY INADEQUATE FOR COMPANIES IN AMERICA.  DO YOU,

7  IS IT YOUR BELIEF THAT MANUFACTURERS PUT PRODUCTS ON THE MARKET

8  WITHOUT TESTING THEM SAFELY OR ADEQUATELY?

9          PROSPECTIVE JUROR 11:  YEAH.

10          MR. GLASS:  THAT'S A PREFORMED OPINION THAT YOU HAVE,

11  THAT THESE PRODUCTS ARE NOT SAFE WHEN THEY GO ON THE MARKETPLACE?

12          PROSPECTIVE JUROR 11:  RIGHT.

13          MR. GLASS BECAUSE THE COMPANIES DON'T ADEQUATELY TEST

14  THEM?

15          PROSPECTIVE JUROR 11:  RIGHT.

16          MR. GLASS:  AND YOU'VE INDICATED TO THE JUDGE THAT YOU

17  CAN PUT THAT ASIDE WHEN YOU'VE ALREADY GOT THIS FORMED OPINION.

18  I'M TRYING TO RECONCILE THOSE TWO QUESTIONS.

19          PROSPECTIVE JUROR 11:  IT COULD GO EITHER WAY.  I COULD

20  LOOK AT IT EITHER WAY.

21          THE COURT:  MR. MEUNIER, DO YOU WANT TO ASK, I DON'T

22  KNOW IF YOU'RE FINISHED YET, MR. GLASS.  MR. MEUNIER.

23          MR. MEUNIER:  NO.

24          THE COURT:  DO YOU, MR. FRANKLIN, DO YOU UNDERSTAND, AND

25  I SAID THIS ALREADY SO I SOUND LIKE A BROKEN RECORD, BUT THERE IS

1   GOING TO BE EVIDENCE IN THIS CASE AND WITNESSES AND TESTIMONY,

2   AND EVEN IF YOU GENERALLY THINK THAT COMPANIES ARE CONCERNED

3   ABOUT PROFITS, IF THEY HAVEN'T DONE ANYTHING WRONG IN THIS CASE,

4   AND I'M GOING TO READ THE LAW TO YOU, IF YOU FIND THAT THE FACTS

5   DON'T ESTABLISH THEY'VE DONE ANYTHING WRONG, THEY CANNOT BE HELD

6   LIABLE.  DO YOU UNDERSTAND THAT?

7           PROSPECTIVE JUROR 11:  YES, SIR.

8           THE COURT:  AND A COMPANY, JUST LIKE A PRIVATE

9   INDIVIDUAL, IF IT WASN'T GULF STREAM, IF IT WAS JOE BLOW OR A

10  PRIVATE INDIVIDUAL OR MS. ALEXANDER WASN'T A DEFENDANT IN THIS

11  CASE, THEY WOULD BE ENTITLED TO A FAIR TRIAL JUST LIKE THE

12  COMPANY.  DO YOU UNDERSTAND THAT?

13          PROSPECTIVE JUROR 11:  YES.

14          THE COURT:  DO YOU THINK YOU CAN TREAT THE DEFENDANTS IN

15  THIS CASE LIKE THAT?

16          PROSPECTIVE JUROR 11:  YES.

17          THE COURT:  YOU'RE NOT COMING INTO THIS CASE WITH THE

18  IDEA THAT THESE DEFENDANTS, BECAUSE THEY ARE COMPANIES, SOMEHOW

19  ARE GOING TO BE LIABLE IN THIS CASE?  DO YOU UNDERSTAND, DO YOU

20  THINK THAT?

21          PROSPECTIVE JUROR 11:  YES.

22          THE COURT:  YOU THINK YOU CAN BE FAIR TO THEM AND PUT

23  ASIDE ANY KIND OF FEELINGS TOWARDS THEM, THAT THEY ARE

24  RESPONSIBLE BEFORE THEY EVEN GET A CHANCE TO PUT ON ANY EVIDENCE?

25          PROSPECTIVE JUROR 11:  YES, SIR.

```
 1              THE COURT:  COUNSEL, ANYTHING FURTHER?

 2              MR. WEINSTOCK:  NO.

 3              MR. WATTS:  NOT WITH HIM, BUT I HAVE SOMETHING I NEED TO

 4    PUT ON THE RECORD.

 5              THE COURT:  THANK YOU, MR. FRANKLIN, YOU CAN RETURN TO

 6    YOUR SEAT.

 7                   ALL RIGHT, MR. WATTS.

 8              MR. WATTS:  FIRST OF ALL, BEFORE I PUT THIS ON THE

 9    RECORD, I NEED TO KNOW WHETHER OR NOT THEY ARE GOING TO REINSTATE

10    VOLUNTARILY THAT JUROR.

11              MR. WEINSTOCK:  YES.

12              MR. WATTS:  OKAY.  THEN I HAVE NO STATEMENT.

13              THE COURT:  SO WE WOULD HAVE, ON THE JURY, THEN, WE

14    WOULD HAVE MR. FRANKLIN?

15              MR. WEINSTOCK:  YES.  NOW, CAN I STILL USE MY PEREMPTORY

16    CHALLENGE THEN?

17              THE COURT:  YEAH.  WE WOULD HAVE MR. FRANKLIN AND WHAT

18    ABOUT --

19              MR. WEINSTOCK:  I'M SORRY, NOT MR. FRANKLIN.  NO.

20    MS. MORRIS.

21              MR. WATTS:  I DO HAVE AN OBJECTION TO BE MADE.

22              THE COURT:  MS. MORRIS ON THE JURY?

23              MR. WATTS:  MAY I MAKE THIS OBJECTION?  IF COUNSEL IS

24    NOT GOING TO VOLUNTARILY AGREE TO REINSTATE MR. FRANKLIN, WE

25    OBJECT TO THE ENTIRE LINE OF QUESTIONS AND ANSWERS THAT WERE JUST
```

1    CONDUCTED.  THE *BATSON* CASE LAW DOES NOT ALLOW A POSTHOC

2    EXAMINATION AFTER STRIKES ARE BEING MADE TO TRY TO REHABILITATE A

3    *BATSON* CHALLENGE, AND WE OBJECT TO THAT.

4              WE REAFFIRM OUR *BATSON* OBJECTION AS TO MR. DAVIS,

5    AS TO ALL FIVE, AND I'VE GOT OTHER STATEMENTS TO MAKE, BUT I NEED

6    TO MAKE THIS SPECIFIC PROCEDURAL OBJECTION, THAT THE QUESTION AND

7    ANSWER TO TRY TO REHABILITATE A *BATSON* STRIKE TO COME UP WITH

8    OTHER RACE-NEUTRAL REASONS THAT WERE NOT STATED BY COUNSEL IS NOT

9    PERMITTED.

10             THE COURT:  I'M PUTTING MR. FRANKLIN ON.  I'M GOING TO

11   YOU TWO PEREMPTORIES, AND WE'RE GOING TO PUT MR. FRANKLIN AND

12   MS., WHO IS THE OTHER ONE, MS. MORRIS AND MR. FRANKLIN.

13             MR. GLASS:  JUST IN RESPONSE, I JUST WANT TO MAKE SURE

14   IT'S ON THE RECORD, WE STATED THE RACE-NEUTRAL REASON, THAT HE

15   WAS EXPOSED TO CHEMICALS BEFORE HE CAME UP HERE AND WAS

16   QUESTIONED.  WE STATED SEVERAL OTHER REASONS ABOUT HIS ETHICS AND

17   THE COMPANIES, WE CITED SPECIFICALLY TO HIS PLAINTIFF FACTS SHEET

18   BEFORE HE WAS QUESTIONED.  SO THERE WAS A RACE-NEUTRAL REASON.

19             MR. WATTS:  THE COURT HAS ALREADY RULED.

20             MR. WEINSTOCK:  LAST BUT NOT LEAST, I UNDERSTAND WHAT

21   YOU'RE SAYING.  I'M GLAD HE CAME UP HERE AND TOLD US MY WIFE

22   RECENTLY DIED 13 MONTHS AGO.  IT OBVIOUSLY STILL RESONATES WITH

23   HIM TO HAVE SAID IT THAT WAY.

24             MR. WATTS:  IN ANSWER TO A QUESTION OF WHEN DID YOUR

25   WIFE DIE, HE TOLD YOU WHEN.

1          MR. WEINSTOCK:  RECENTLY.

2          THE COURT:  HE SAID 13 MONTHS.

3          MR. WEINSTOCK:  HE SAID THAT UP HERE.  WHEN WE

4    CHALLENGED HIM, HE SAID MY WIFE RECENTLY DIED.  IT OBVIOUSLY

5    RESONATES VERY SERIOUSLY --

6          THE COURT:  LET ME ASK YOU THIS:  OTHER THAN MS. MORRIS,

7    IS THAT THE ONLY DEFENSE OFFERING WITH REGARD TO THE *BATSON*

8    CHALLENGE?

9          MR. WEINSTOCK:  YES, YOUR HONOR.

10          THE COURT:  IF WE CAN CURE THE CHALLENGE, THEN LET'S

11    CURE IT.  IF WE CAN'T, THEN I'LL GO AHEAD AND RULE ON IT AND DO

12    WHAT WE HAVE TO DO.  SO YOU WOULD PROPOSE THAT YOU WOULD TAKE,

13    YOU WOULD PUT MS. MORRIS ON THE JURY.

14          MR. WEINSTOCK:  CORRECT.

15          THE COURT:  AND THAT YOU WOULD EXERCISE A CHALLENGE ON

16    SOMEBODY ELSE.

17          MR. WEINSTOCK:  CORRECT.

18          THE COURT:  SOMEBODY OUT OF THE NINE THAT HAVE ALREADY

19    BEEN CHOSEN.

20          MR. WEINSTOCK:  CORRECT.

21          MR. WATTS:  I THINK I HEARD THE COURT SAY THAT NUMBER

22    NINE WAS GOING TO BE REINSTATED AND DESPITE HIS --

23          THE COURT:  THAT'S WHAT HE'S OFFERED.

24          MR. WATTS:  OKAY, SO HE'S OFFERED NUMBER NINE, WHICH

25    MAKES IT MOOT.

1        AS TO NUMBER 11, WE REITERATE THE *BATSON* CHALLENGE.

2   WE DON'T THINK THAT THE HAPPENSTANCE OF SOMEBODY LOSING A WIFE

3   13 MONTHS AGO EXCUSES THE STATISTICAL DISPARITY.

4        THE COURT:  NO, IT WASN'T, IT WAS THE QUESTION TO THEIR

5   ANSWERS, WHICH I ASKED HIM ABOUT UP HERE.  I UNDERSTAND YOUR

6   ARGUMENT ABOUT REHABILITATING.  I WANTED TO KNOW --

7        MR. WATTS:  NO, I UNDERSTAND.  AND AS I UNDERSTAND THE

8   COURT'S RULING, YOU'RE GOING TO REINSTATE JUROR NUMBER 11.

9        THE COURT:  WELL, THAT'S WHAT WE'RE TALKING ABOUT RIGHT

10  NOW.  RIGHT NOW ALL I HAVE ON YOU IS THE MOTION, AND I'M TRYING

11  TO WORK WITH DEFENSE COUNSEL BECAUSE THEY SAID THAT THEY WOULD

12  LIFT THEIR PEREMPTORY CHALLENGE ON MS. MORRIS.

13       MR. WATTS:  CORRECT.

14       THE COURT:  SO I HAVEN'T RULED ON YOUR MOTION YET, AND I

15  HAVEN'T FASHIONED A REMEDY.  I WAS SUGGESTING THAT MR. FRANKLIN

16  COULD BE ADDED, AND IF THEY AGREED TO DO THAT, THEN THE MOTION

17  MIGHT BE MOOTED.  IF IT'S NOT MOOT, IT'S BEING PURSUED.

18       MR. GLASS:  AND, YOUR HONOR, I WOULD POINT OUT THAT MR.

19  WATTS HAS INDICATED THAT THE POTENTIAL JURORS THAT ARE OF ONE

20  RACE ARE 22 PERCENT.  BY CURING THIS, WE NOW HAVE 20 PERCENT,

21  WHICH IS THE EXACT MAKEUP IT SEEMS TO ME.

22       MR. WEINSTOCK:  NO.  YOU'VE GOT THE NUMBERS WRONG, BUT I

23  WANT TO ADDRESS THAT IN A DIFFERENT WAY.  I DON'T KNOW HOW HE

24  KNEW THAT 20 PERCENT OF THE POOL WAS AFRICAN-AMERICAN BECAUSE

25  IT'S NOT LISTED ANYWHERE HERE.

1        MR. WATTS:  NO, THE WAY I KNOW IS, I LOOKED AT THE 20

2    JURORS THAT ARE AVAILABLE IN THE STRIKE POOL AND THERE ARE FIVE

3    AFRICAN-AMERICANS.  AND SO CALL THAT 20.

4        MR. WEINSTOCK:  OF THE ENTIRE POOL.  I JUST WAS SHOCKED

5    HOW YOU KNEW THAT.

6        MR. WATTS:  JUDGE, LET ME JUST GET THIS ON THE RECORD,

7    BECAUSE, I MEAN, I'VE GOT A JOB TO DO AND YOU'VE GOT A JOB TO DO.

8    THERE IS A U.S. SUPREME COURT CASE AFTER *BATSON*, IT'S THE

9    MILLER-EL II CASE.  IT'S *MILLER-EL V DRETKE*, 545 U.S. 231.  IT'S

10   AT 125 S.CT. 2317.  IT'S KNOWN AS THE *MILLER-EL II* CASE, WHERE

11   THE U.S. SUPREME COURT IN APPLYING *BATSON* SAID IT'S NOT GOOD

12   ENOUGH FOR SOMEBODY TO STRIKE.  IN THAT CASE IT WAS 92 PERCENT OF

13   THE AVAILABLE AFRICAN-AMERICANS, AND SAY, I'M COMING UP WITH A

14   RACE-NEUTRAL REASON.  THAT'S WHAT HAPPENED IN *BATSON* FOR

15   20 YEARS.

16        IN 2005, THE SUPREME COURT OF THE UNITED STATES

17   SAID YOU HAVE TO USE AT LEAST A FIVE-STEP ANALYSIS.  NUMBER ONE,

18   IN *MILLER-EL II* IS A STATISTICAL ANALYSIS OF THE JURORS STRUCK.

19   IN *MILLER-EL II*, THE U.S. SUPREME COURT NOTED THAT THE

20   PROSECUTORS USE PEREMPTORY CHALLENGES TO EXCLUDE 91 PERCENT OF

21   THE ELIGIBLE AFRICAN-AMERICAN VENIRE MEMBERS, AND THEY CALL THAT

22   PERCENTAGE TOO GREAT TO ATTRIBUTE MERELY TO, QUOTE, HAPPENSTANCE.

23   HERE, THESE GENTLEMEN STRUCK 100 PERCENT.

24        THE SECOND STANDARD IS A COMPARATIVE JUROR

25   ANALYSIS.  AND WHAT THEY SAY IS THAT IN ADDITION TO LOOKING AT

1  STATISTICS ARE SIDE-BY-SIDE COMPARISONS WITH BLACK VENIRE PANEL

2  MEMBERS VERSUS WHITE VENIRE PANEL MEMBERS WHO ARE ALLOWED TO

3  SERVE IN THAT SITUATION.

4          WE OFFER, AS PART OF THIS *BATSON* RECORD, THE

5  QUESTIONNAIRES OF ALL 30 OF THE JURORS WHO ARE IN THE STRIKE

6  RANGE, AND WE WOULD ASK THAT THAT BE ADMITTED AT THIS TIME FOR

7  PURPOSE OF THE RECORD.

8          MR. WEINSTOCK:  YOUR HONOR, I HOPE --

9          MR. WATTS:  HOLD ON.  IS THAT ADMITTED, JUDGE?

10         THE COURT:  YES.

11         MR. WATTS:  THIRD, IN THAT CASE, UNDER TEXAS PROCEDURE

12  THEY USED THE JURY SHUFFLE, I DON'T THINK THAT'S APPLICABLE HERE.

13         NUMBER FOUR, THEY NOTED IN THE FOURTH FACTOR THAT

14  THE, THAT THERE WERE CONTRASTING VOIR DIRE QUESTIONS FOR

15  SPECIFICALLY THE BLACK AND NONBLACK PANEL MEMBERS, AND ALTHOUGH

16  THE COURT DID THE VOIR DIRE, AND WE'RE NOT OBJECTING TO THE WAY

17  YOU CONDUCTED THE VOIR DIRE, I DO NOTE THAT WITH RESPECT TO

18  PEOPLE THAT WERE CALLED UP HERE, WHILE AFRICAN-AMERICANS WERE

19  ONLY FIVE OF THE 21 AVAILABLE, THEY CALLED HALF OF THE

20  AFRICAN-AMERICANS UP HERE IN ORDER TO CREATE A RACE-NEUTRAL

21  REASON THAT THEY COULD PUT ON THE RECORD.  AND WE THINK THAT THAT

22  RELATES TO THAT.

23         FINALLY, YOUR HONOR, IF THE COURT, AND I WILL GRANT

24  THAT AS PART OF THEIR EFFORT TO CALL TWO AFRICAN-AMERICANS UP

25  HERE AMONG THE PEOPLE THAT THEY CALLED UP, AND THIS IS IN THE

1  RECORD, THAT THEY ATTEMPTED TO CREATE RACE NEUTRAL REASONS WITH

2  RESPECT TO JUROR NUMBER 16 AND JUROR NUMBER 20.  NOW, I DON'T

3  THINK THAT GETS THEM AROUND *MILLER-EL II*.  I THINK THAT THERE ARE

4  RACE NEUTRAL REASONS THAT THEY STATED IN THE RECORD, BUT I DON'T

5  THINK THAT GETS AROUND THE ANALYSIS OF *MILLER-EL II*.

6          WITH RESPECT TO JUROR NUMBER 19, SHE WAS NOT CALLED

7  UP.  THERE WERE NO RACE NEUTRAL REASONS CREATED, AND SO WE'RE

8  BACK TO WHAT THE SUPREME COURT OF THE UNITED STATES SAID IN

9  *MILLER-EL II*, THAT YOU HAVE LAWYERS WHO STATISTICALLY STRUCK AN

10 OVERWHELMINGLY LARGE PERCENTAGE OF AFRICAN-AMERICANS AND THEN

11 THEY COME UP AND PUT INTO THE RECORD A SUPPOSED RACE-NEUTRAL

12 REASON, AND I THINK THAT'S THE STATE OF THE RECORD HERE.

13          SO WE OBJECT ON THE GROUNDS OF *BATSON* AND *MILLER-EL*

14 *II* TO THE ENTIRE STRIKE OF 16, 20, 19, 11 AND 9.  WE GRANT FOR

15 THE PURPOSES OF THE RECORD THAT IN THE COURSE OF THEIR PORTION OF

16 THE VOIR DIRE WHEN THEY WERE ABLE TO CALL PEOPLE UP, THAT THEY,

17 YOU KNOW, AT LEAST TALKED THE COURT INTO THE EXISTENCE OF A

18 RACE-NEUTRAL REASON WITH RESPECT TO 16 AND 20.  NO SUCH RACE

19 NEUTRAL REASONS WERE STATED WITH RESPECT TO 19, 11 AND 9, AND WE

20 WOULD MOVE THE COURT TO REINSTATE 19, 11 AND 9 AT THE VERY LEAST

21 WITHOUT WITHDRAWING OUR MOTION TO REINSTATE ALL FIVE OF THEM

22 BECAUSE I DON'T THINK THAT A LAWYER CALLING UP TWO

23 AFRICAN-AMERICANS IN A PANEL LIKE THIS IN A CASE WITH

24 AFRICAN-AMERICAN PLAINTIFFS AND ACHIEVING (SPELLED PHONETICALLY)

25 A SINGLE RACE-NEUTRAL REASON THAT YOU CAN QUOTE VERBATIM ON THE

1  RECORD GETS THEM THERE.

2        THE COURT:  WHO ELSE?

3        MR. WEINSTOCK:  YOUR HONOR, IF I COULD ADDRESS A COUPLE

4  THINGS.  FIRST OF ALL, WHEN I PUT MY WIRELESS CARD IN AND DO SOME

5  RESEARCH, YOUR HONOR, I JUST WANT TO POINT OUT THAT THESE ARE MY

6  NOTES LONG BEFORE ANYBODY WALKED INTO THIS COURTROOM.

7        NUMBER 19, I HAD ENOUGH AND THE JURY CONSULTANT HAD

8  ENOUGH AND FLUOR HAD ENOUGH.  I DIDN'T SEE A REASON TO ASK YOU TO

9  BRING HER UP HERE FOR CAUSE LONG BEFORE I LAID EYES ON HER AND

10  KNEW WHAT COLOR HER SKIN WAS.  WE HAD MADE A DECISION THAT SHE

11  WAS NOT THE JUROR FOR US.  AND THAT'S THE POINT HERE.

12        THERE WERE A COUPLE OF JURORS THAT WE WERE

13  REQUESTING ABOUT, TWO OF THEM SPECIFICALLY THAT WE ASKED YOU TO

14  BRING UP BECAUSE THEY SAID THINGS IN THEIR QUESTIONNAIRE WE

15  WANTED TO KNOW MORE ABOUT, THINGS LIKE FRIENDS AND RELATIVES IN

16  TRAILERS.  I DID NOT BRING UP EVERY AFRICAN-AMERICAN JUROR TO

17  FIND A RACE NEUTRAL OPINION FOR THEM.  THAT WAS NOT EVEN REMOTELY

18  PART OF OUR QUESTION.

19        THE COURT:  WHO ELSE OUT OF THE TOP 30?  WE HAVE

20  MR. BACCHUS, AND ARE THERE ANY OTHER AFRICAN-AMERICANS IN THE

21  TOP --

22        MR. WATTS:  29.

23        THE COURT:  29.  MS. HAMILTON.  MR. BACCHUS AND

24  MS. HAMILTON.  HERE IS WHAT I WOULD PROPOSE TO DO:  NUMBER ONE,

25  RETURN A CHALLENGE TO THE DEFENDANTS AND PUT MS. MORRIS ON THE

1    JURY AS DEFENDANTS HAVE OFFERED.  NUMBER TWO WOULD BE TO RETURN A

2    SECOND CHALLENGE TO THE DEFENDANTS AND PUT ON EITHER MR. BACCHUS

3    OR MS. HAMILTON ONTO THE JURY.

4        MR. WEINSTOCK:  AND IF I CAN CONSULT WITH MY GROUP,

5    BEFORE MR. FRANKLIN.

6        THE COURT:  WHY DON'T YOU PICK BETWEEN ONE OF THOSE TWO

7    SINCE YOU'RE ALREADY --

8        MR. WEINSTOCK:  WHAT ABOUT --

9        THE COURT:  OR MR. FRANKLIN.

10       MR. WEINSTOCK:  OR MR. FRANKLIN.

11       THE COURT:  OR MR. FRANKLIN.  YOU HAVE THREE CHOICES.

12   AND I WILL RETURN TWO CHALLENGES TO YOU.  THAT'S WHAT I PROPOSED

13   TO DO THE REMEDY.

14       MR. WATTS:  JUST FOR THE RECORD, WHAT ARE THOSE THREE

15   OPTIONS THAT YOU GAVE HIM?  I'M SORRY, JUDGE.  THE JUROR NUMBERS,

16   I'M SORRY.

17       THE COURT:  NO, I TOLD HIM THAT THEY CAN CHOOSE BETWEEN

18   MS. MORRIS IS GOING TO BE ON THE JURY, AND THEY WILL GET A

19   CHALLENGE BACK.  THEY WILL GET ANOTHER CHALLENGE BACK, BUT THEY

20   WILL CHOOSE BETWEEN MR. FRANKLIN, MR. BACCHUS AND MS. HAMILTON.

21       MR. WATTS:  AND JUROR NUMBER 11 IS MR. FRANKLIN.

22       THE COURT:  YES.

23       MR. WATTS:  MR. ABOUT BACCHUS IS.

24       THE COURT:  BACCHUS IS 26 AND HAMILTON IS 29.

25       MR. MEUNIER:  SO WE MUST EXERCISE THAT PEREMPTORY WITH

```
 1  ONE OF THOSE THREE?
 2          THE COURT:  NO, ONE OF THOSE THREE WILL BE ON THE JURY,
 3  AND THEY WILL ONLY HAVE TWO PEREMPTORIES TO EXERCISE AS TO ALL
 4  OTHERS ON THE JURY.
 5          MR. WEINSTOCK:  WE WILL SEAT MR. BACCHUS.
 6          THE COURT:  MR. BACCHUS.
 7          MR. WEINSTOCK:  AND IF YOU'LL GIVE ME ONE MORE MINUTE,
 8  I'LL TELL YOU WHO WE WANT --
 9          THE COURT:  EXERCISE TWO.
10          MR. WEINSTOCK:  4 AND 13.
11          THE COURT:  4 IS OFF.  AND 13 IS OFF.
12          THE DEPUTY CLERK:  THOSE ARE DEFENDANTS' CHALLENGES,
13  JUDGE.
14          THE COURT:  YES.
15          THE DEPUTY CLERK:  WHICH NUMBERS?
16          THE COURT:  THAT'S NUMBER 4 AND NUMBER 13.  WHICH MEANS
17  THAT MR. NAQUIN, HERE IS THE JURY, HERE'S THE JURY, ALL RIGHT.
18  EVERYBODY LISTEN UP.  LISTEN UP.  1, 2, 3, 7, 8, 9, 15, 21, AND
19  26.
20          MR. GLASS:  MR. WATTS, I'D JUST LIKE TO SAY FOR NEVER
21  HAVING DONE A BATSON CHALLENGE, THAT WAS REALLY WELL DONE THE ON
22  THE FLY.
23          MR. WATTS:  WELL, ACTUALLY I WROTE A PAPER ABOUT IT LAST
24  YEAR WHEN THE MILLER-EL DECISION CAME OUT AND WAS REAFFIRMED BY
25  THE TEXAS SUPREME COURT.
```

1        MR. GLASS:  I JUST THINK IT WAS VERY WELL DONE.

2        THE COURT:  IT'S VERY IMPORTANT.

3           AND LET'S GO AHEAD AND RETURN TO YOUR TABLES, AND

4 I'M GOING TO SEAT THIS JURY.  GO AHEAD, MR. WATTS.

5        MR. WATTS:  JUST VERY BRIEFLY.  YOUR HONOR,

6 RESPECTFULLY, WE UNDERSTAND THE COURT'S RULING.  WE, AGAIN, FOR

7 THE RECORD OBJECT TO THE EXCLUSION OF JUROR NUMBER 16, JUROR

8 NUMBER 20, JUROR NUMBER 19 AND JUROR NUMBER 11 UNDER THE *BATSON*

9 AND THE *MILLER-EL II* DECISIONS.  WE UNDERSTAND THAT THE COURT HAS

10 ATTEMPTED TO FASHION A REMEDY, BUT WE OBJECT TO THAT REMEDY AS

11 BEING INSUFFICIENT AND NOT UNDOING THE DAMAGE CAUSED BY THE

12 DEFENDANTS WHOLESALE EXCLUSION OF FIVE OUT OF FIVE

13 AFRICAN-AMERICANS, AND WE DON'T THINK THAT GIVING US BACK ONE OR

14 TWO FIXES IT, BUT THAT'S MY OBJECTION, BUT THANK YOU, YOUR HONOR.

15        MR. WEINSTOCK:  AND, YOUR HONOR, AT THIS TIME, I'D LIKE

16 TO MAKE OUR *BATSON* CHALLENGE.

17        THE COURT:  LET ME ALSO MAKE A RECORD STATING THAT THERE

18 WERE RACE NEUTRAL REASONS CITED FOR ALL FIVE OF THE INDIVIDUALS,

19 AND WHILE THE COURT CAN CERTAINLY SECOND GUESS THOSE RACE NEUTRAL

20 REASONS THAT WERE OFFERED, CERTAINLY THE FIRST THREE AT A MINIMUM

21 WERE EXCUSED FOR RACE NEUTRAL REASONS.

22         PRETTY CLEARLY TO ME, THE OTHERS IN AN ATTEMPT TO

23 CURE A DEFECT TO THE EXTENT AND I'M NOT BE FINDING ANY BAD FAITH

24 USE OF A PEREMPTORY CHALLENGE IN THIS CASE, BUT IN ORDER TO

25 FASHION A REMEDY IN THIS CASE, THE DEFENDANTS THEMSELVES OFFERED

1    WITH REGARD TO MS. MORRIS, THE COURT HAS ACCEPTED THAT.  SHE WILL

2    BE RETURNED TO THE JURY, AND THEN I THINK THAT THE REMEDY THAT

3    I'LL FASHION TO THE EXTENT THAT THE JURY SELECTION PROCESS HAS

4    BEEN ALLEGED BY PLAINTIFFS TO HAVE BEEN RACE MOTIVATED IN TERMS

5    OF CHALLENGES, I THINK THE INCLUSION OF THE NINTH JUROR REMEDIES

6    THAT AND THAT THE OTHER JURORS WHO HAVE BEEN EXCUSED HAVE BEEN

7    EXCUSED FOR RACE NEUTRAL REASONS, SO I NOTE YOUR OBJECTION.

8              MR. WATTS:  THANK YOU, YOUR HONOR.

9              THE COURT:  IF I CALL YOUR NAME, PLEASE RISE AND I'LL

10   FIND A PLACE FOR YOU TO SIT HERE SOMEPLACE ELSE BESIDES THE JURY

11   BOX.  IF YOU WOULD, PLEASE RISE AND MAYBE YOU CAN STAND IN THE

12   AISLE I'LL OR SLIDE OVER A LITTLE BIT.  I NEED YOU TO REMOVE

13   YOURSELF FROM THE JURY BOX.  NUMBER FOUR, MR. ST. ROMAIN, THANK

14   YOU.  NUMBER FIVE, MR. HYMEL, THANK YOU.  NUMBER SIX,

15   MS. CHARBONNET.  I'M SORRY, NUMBER SIX IS NOT HERE.  NUMBER

16   SEVEN, I'M SORRY, MR. NAQUIN, STAY THERE.  MR. DEMPSEY, NUMBER

17   10.  MR. FRANKLIN, NUMBER 11.  MS. AUCOIN, NUMBER 12,

18   MR. VICKNAIR, NUMBER 13, AND MR. STRICKER, NUMBER 14,

19   MS. HOOFKIN, NUMBER 16, MR. DUPRE, NUMBER 17, NO, MR. DUPRE,

20   THAT'S ALL RIGHT, MR. DUPRE, YOU'RE FINE.  STAY WHERE YOU ARE.  I

21   OVERSHOT THE NUMBERS.

22              WHAT I WOULD LIKE TO DO, THEN, ON THE FRONT ROW

23   THEN, MR. NAQUIN AND MS. BOURG, IF YOU ALL WOULD SLIDE OVER TWO

24   SEATS, PLEASE, SO THAT YOU'RE SITTING NEXT TO MR. WETZEL.  ALL

25   RIGHT.  THANK YOU.

1    AND THE FOLLOWING PERSONS, IF YOU WOULD, COME UP

2 AND HAVE A SEAT NEXT TO MS. MORRIS:  MR. PIERCE, NUMBER 15, IF

3 YOU WOULD, THAT'S ALL RIGHT, JUST SLIDE ON OVER, MR. PIERCE.  ON

4 THE SECOND ROW.  I'M SORRY, I WAS NOT CLEAR.  MR. SMALLWOOD,

5 NUMBER 21.  LET ME START ON THE FRONT ROW.  THE FIVE PEOPLE IN

6 THE FRONT ROW, MS. AUCOIN, MS. ROBICHAUX, MR. WETZEL, MR. NAQUIN

7 AND MS. BOURG.  THE SECOND ROW IS MS. MORRIS, MR. PIERCE,

8 MR. SMALLWOOD, AND MR. BACCHUS, NUMBER 26.  OKAY.  HAPPY

9 ANNIVERSARY.

10    WHILE MR. BACCHUS IS MAKING HIS WAY UP, I WANT TO

11 THANK ALL OF YOU WHO ARE HERE FOR JURY SERVICE TODAY.  IT TOOK A

12 LITTLE LONGER THAN WE HAD ANTICIPATED, SO I SINCERELY APPRECIATE

13 YOUR PATIENCE AND YOUR COOPERATION.  I WILL TELL THOSE WHO SERVE

14 ON JURIES HERE AT THE CONCLUSION OF THEIR JURY SERVICE HOW

15 IMPORTANT IT IS TO REPORT FOR JURY DUTY.  IT'S CRITICAL TO OUR

16 SYSTEM OF JUSTICE THAT CITIZENS SUCH AS YOURSELVES WHO COME TO

17 COURT WITHOUT ANY TYPE OF LEGAL TRAINING OR ANY KNOWLEDGE OF

18 CASES COME TO COURT AND ARE WILLING TO SERVE ON JURIES.  WITHOUT

19 YOU ALL WE COULD NOT HAVE A SYSTEM OF JUSTICE SUCH AS WE HAVE.

20    IT'S VERY, VERY IMPORTANT THAT YOU REPORT FOR JURY

21 DUTY.  WE KNOW IT DOESN'T COME AT A CONVENIENT TIME.  YOU ALWAYS

22 HAVE SOMETHING ELSE YOU HAD PLANNED TO DO.  SO THANK YOU AGAIN

23 FOR YOUR SERVICE IN REPORTING.  YOU HAVE DONE YOUR DUTY BY GIVING

24 THESE ATTORNEYS THE OPPORTUNITY TO CHOOSE A JURY FROM AMONGST

25 YOUR NUMBER.  THEY WOULD NOT BE ABLE TO DO THAT IF ALL OF YOU HAD

1  NOT BEEN HERE, SO THANK YOU VERY MUCH FOR ATTENDING JURY SERVICE

2  TODAY.

3           YOU WILL HAVE TO RETURN DOWNSTAIRS AND I'M NOT

4  CERTAIN IF YOU ARE FREE TO GO OR NOT, DEPENDING ON WHAT ELSE IS

5  GOING ON IN THE BUILDING.  BUT AT THIS POINT IN TIME, THE COURT

6  SECURITY OFFICER OR CSO WILL ESCORT YOU BACK DOWN TO THE FIRST

7  FLOOR.  THANK YOU.

8           PROSPECTIVE JUROR 18:  JUDGE, A QUESTION.  IF SOMEBODY

9  WANTED TO STAY AND LISTEN TO OPENING STATEMENTS.

10          THE COURT:  YEAH, ONCE YOU'RE FREE TO GO, YOU CAN COME

11  BACK UP IF YOU WANT.

12          MR. BUZBEE:  JUDGE, MAY WE --

13          THE COURT:  WE'RE GOING TO TAKE A BREAK HERE ONCE I GIVE

14  THE JURY THE ADDITIONAL INSTRUCTIONS.  WHILE THEY ARE MAKING

15  THEIR WAY OUT, WHY DON'T WE, WE'RE A TAD BEHIND SCHEDULE HERE.

16  LET ME GIVE YOU SOME PRELIMINARY INSTRUCTIONS AND THEN WE'LL TAKE

17  A SHORT BREAK.  DEPENDING ON WHAT TIME IT IS, WE MAY HAVE TO TAKE

18  OUR LUNCH BREAK, BUT LET'S GO AHEAD AND GIVE YOU SOME PRELIMINARY

19  INSTRUCTIONS.

20          MY JOB IS TO MAKE SURE THAT THE JURY PAYS

21  ATTENTION.  PLEASE KEEP YOUR EYES OPEN.  IF YOU NEED A RECESS OR

22  ASK FOR FIVE MINUTES TO MAKE A PHONE CALL OR GO TO THE BATHROOM,

23  WE'LL TAKE A RECESS SHORTLY SO YOU CAN DO THAT.

24          DURING THE COURSE OF THE TRIAL, PLEASE DO NOT BRING

25  CELL PHONES, BLACKBERRIES, PAGERS, ANY OTHER TYPES OF ELECTRONIC

1   COMMUNICATIONS DEVICES INTO THE COURTROOM.  YOU MAY EITHER LEAVE

2   THEM IN THE JURY ROOM, WHICH YOU'RE GOING TO SEE SHORTLY.  IF

3   YOU'RE NOT COMFORTABLE WITH THAT, YOU MAY LEAVE THEM WITH MY

4   SECRETARY AND HE'LL SHOW YOU WHERE MY CHAMBERS ARE AND YOU CAN

5   LEAVE THEM THERE, AND SHE WILL HOLD IT FOR YOU WITH YOUR NAME ON

6   IT.  YOU CAN GET IT DURING THE LUNCH BREAK OR DURING A BREAK, BUT

7   DO NOT BRING CELL PHONES OR PAGERS OR BLACKBERRIES IN THE

8   COURTROOM, EVEN TURNED OFF, AND WHEN WE DELIBERATE THIS CASE, YOU

9   ARE NOT TO HAVE THOSE WITH YOU IN THE JURY ROOM DURING

10  DELIBERATIONS.

11          I HAVE NO DOUBT THAT YOU AS JURORS ARE MINDFUL OF

12  YOUR GREAT RESPONSIBILITIES, AND CERTAINLY YOU ARE AWARE THAT

13  YOUR CONDUCT DURING THIS TRIAL WILL BE OBSERVED BY THE COURT,

14  YOUR FELLOW JURORS, THE DEFENDANTS, THE PLAINTIFFS, THE ATTORNEYS

15  FOR ALL OF THE PARTIES AND THE PERSONS BOTH INSIDE AND OUTSIDE OF

16  THIS COURTROOM.  YOU SHOULD BE EXTREMELY CAREFUL IN THE MANNER IN

17  WHICH YOU CONDUCT YOURSELVES IN ORDER THAT NO ONE MAY DOUBT THAT

18  THIS CASE IS BEING FAIRLY AND IMPARTIALLY TRIED, AND THAT IN THE

19  END, JUSTICE HAS BEEN DONE.

20          FOR THE SAME REASON, THE ATTORNEYS IN THE CASE, THE

21  PARTIES, THE WITNESSES AND ALL OTHERS IDENTIFIED WITH OR

22  CONNECTED WITH THIS TRIAL OR ITS PARTICIPANTS SHOULD BE EQUALLY

23  CAREFUL IN THEIR CONDUCT.  THAT MEANS THAT THOSE OF YOU WHO ARE

24  HERE TO OBSERVE THIS TRIAL ARE NOT TO COMMUNICATE WITH A JUROR AT

25  ALL.  IN THE HALLWAYS, DURING THE BREAKS, DURING THE LUNCH HOUR,

1   YOU ARE NOT TO DISCUSS THIS CASE WITH ANYONE, AND IF ANYONE DOES

2   DISCUSS THIS CASE WITH YOU OR TRIES TO, YOU ARE TO REPORT THAT TO

3   ME IMMEDIATELY.

4          THE CASE WILL PROCEED IN THE FOLLOWING ORDER:

5   FIRST, COUNSEL FOR THE PLAINTIFFS WILL MAKE AN OPENING STATEMENT.

6   THEY WILL OUTLINE THEIR PLAINTIFFS' CASE.  THAT STATEMENT IS

7   NOTHING MORE THAN AN EXPLANATION OF THE PLAINTIFFS' THEORY OF THE

8   CASE AND SERVES MERELY AS AN INTRODUCTION TO THE EVIDENCE WHICH

9   THE PLAINTIFF INTENDS TO PRODUCE DURING THE COURSE OF THIS TRIAL.

10          THEN COUNSEL FOR THE DEFENDANTS MAY ALSO MAKE AN

11   OPENING STATEMENT OUTLINING THE DEFENDANTS' CASE.  LIKE THE

12   PLAINTIFFS' OPENING STATEMENT, ANY DEFENSE OPENING STATEMENT, IF

13   MADE, WOULD BE NOTHING MORE THAN AN EXPLANATION OF THAT

14   DEFENDANT'S THEORY OF THE CASE.

15          OPENING STATEMENTS ARE NOT EVIDENCE BUT ARE MERELY

16   TO AID YOU IN UNDERSTANDING THE SIGNIFICANCE OF EVIDENCE WHEN IT

17   IS INTRODUCED.  THE ATTORNEYS WILL BE GIVEN AN OPPORTUNITY TO

18   ARGUE THEIR CASE TO YOU, BUT THAT IS SIMPLY ARGUMENT, IT IS NOT

19   EVIDENCE THAT YOU ARE TO CONSIDER IN DECIDING THIS CASE.

20          AFTER THE OPENING STATEMENTS, COUNSEL FOR THE

21   PLAINTIFFS WILL HAVE AN OPPORTUNITY TO CALL WITNESSES AND

22   INTRODUCE EVIDENCE.  AT THE CONCLUSION OF THE PLAINTIFFS'

23   EVIDENCE, COUNSEL FOR THE DEFENDANTS MAY THEN INTRODUCE EVIDENCE.

24   REBUTTAL EVIDENCE MAY THEN BE INTRODUCED THEREAFTER.

25          AT THE CONCLUSION OF ALL OF THE EVIDENCE, THE

1   ATTORNEYS WILL PRESENT ORAL ARGUMENT TO YOU IN SUPPORT OF THEIR

2   RESPECTIVE CASES.  WHAT IS SAID IN CLOSING ARGUMENTS IS NOT

3   EVIDENCE.  IT IS JUST THE SAME AS WHAT IS SAID IN OPENING

4   STATEMENTS, IT IS ARGUMENT.  THE ARGUMENTS ARE INTENDED TO

5   PRESENT TO YOU THE CONTENTIONS OF THE RESPECTIVE PARTIES AS TO

6   WHAT THE EVIDENCE HAS SHOWN AND WHAT INFERENCES MAY BE DRAWN FROM

7   THAT EVIDENCE.

8           AFTER THE CLOSING ARGUMENTS, I WILL INSTRUCT YOU ON

9   THE APPLICABLE LAW AND YOU WILL THEN RETIRE TO DELIBERATE AND

10  CONSIDER YOUR VERDICT, WHICH MUST BE UNANIMOUS.

11          THE LAW APPLICABLE TO THIS CASE WILL BE CONTAINED

12  IN THE INSTRUCTIONS I GIVE YOU DURING THE COURSE OF THE TRIAL,

13  AND IT IS YOUR DUTY TO FOLLOW ALL SUCH INSTRUCTIONS.  IT IS YOUR

14  DUTY TO DETERMINE THE FACTS AND TO DETERMINE THEM FROM THE

15  EVIDENCE AND THE REASONABLE INFERENCES ARRIVING FROM SUCH

16  EVIDENCE, AND IN SO DOING, YOU MUST NOT INDULGE IN GUESSWORK OR

17  SPECULATION.

18          THE EVIDENCE WHICH YOU ARE TO CONSIDER CONSISTS OF

19  THE TESTIMONY OF WITNESSES AND THE EXHIBITS ADMITTED INTO

20  EVIDENCE.  THE TERM *WITNESS* MEANS ANYONE WHO TESTIFIES IN PERSON

21  OR BY DEPOSITION.  THE ADMISSION OF EVIDENCE IN COURT IS GOVERNED

22  BY RULES OF LAW, AND FROM TIME TO TIME IT MAY BE THE DUTY OF THE

23  ATTORNEYS TO MAKE OBJECTIONS AND MY DUTY AS THE JUDGE TO RULE ON

24  THOSE OBJECTIONS AND THUS WHETHER YOU CAN CONSIDER CERTAIN

25  EVIDENCE.

1          YOU MUST NOT CONCERN YOURSELF WITH THE OBJECTIONS

2   OR THE COURT'S REASONS FOR THESE RULINGS.  DO NOT HOLD IT AGAINST

3   LAWYERS WHO MAKE OBJECTIONS.  YOU MUST NOT CONSIDER TESTIMONY OR

4   EXHIBITS TO WHICH AN OBJECTION WAS SUSTAINED OR WHICH HAS BEEN

5   ORDERED STRICKEN.

6          THERE ARE TWO KINDS OF EVIDENCE, DIRECT AND

7   CIRCUMSTANTIAL.  DIRECT EVIDENCE IS DIRECT PROOF OF A FACT SUCH

8   AS TESTIMONY OF AN EYEWITNESS.  CIRCUMSTANTIAL EVIDENCE IS PROOF

9   OF FACTS FROM WHICH YOU MAY INFER OR CONCLUDE THAT OTHER FACTS

10  EXIST.  BEAR IN MIND THAT YOU MAY CONSIDER BOTH KINDS OF

11  EVIDENCE.

12         THERE MAY BE BENCH CONFERENCES AT WHICH THE LAWYERS

13  AND THE JUDGE WILL TALK SO LOW THAT THE JURY CANNOT HEAR.  SOME

14  MATTERS MUST BE DECIDED OUTSIDE THE HEARING OF THE JURY BECAUSE

15  THEY ARE NOT ADMISSIBLE.  IT IS OKAY TO STAND AT YOUR SEAT AND

16  STRETCH DURING THOSE BENCH CONFERENCES.

17         YOU MUST NOT BE INFLUENCED IN ANY DEGREE BY ANY

18  PERSONAL FEELING OF SYMPATHY OR PREJUDICE AGAINST THE PARTIES OR

19  THEIR COUNSEL.  NO STATEMENT OR RULING OR REMARK WHICH I MAKE

20  DURING THE PRESENTATION OF EVIDENCE IS INTENDED TO INDICATE MY

21  OPINION AS TO WHAT THE FACTS ARE.  YOU ARE TO DETERMINE THE

22  FACTS.  IN THIS DETERMINATION, YOU ALONE MUST DECIDE UPON THE

23  BELIEVABILITY OF THE EVIDENCE AND ITS WEIGHT AND VALUE.

24         IN CONSIDERING THE WEIGHT AND VALUE OF THE

25  TESTIMONY OF ANY WITNESS, YOU MAY TAKE INTO CONSIDERATION THE

1   APPEARANCE, ATTITUDE AND BEHAVIOR OF THE WITNESS, THE INTEREST OF

2   THE WITNESS IN THE OUTCOME OF THE SUIT, THE RELATION OF THE

3   WITNESS TO THE PARTIES, THE INCLINATION OF THE WITNESS TO SPEAK

4   TRUTHFULLY OR NOT, THE PROBABILITY OR IMPROBABILITY OF THE

5   WITNESS'S STATEMENTS AND ALL OTHER FACTS OR CIRCUMSTANCES IN

6   EVIDENCE.  THUS, YOU MAY GIVE THE TESTIMONY OF ANY WITNESS JUST

7   SUCH WEIGHT AND VALUE AS YOU MAY BELIEVE THE TESTIMONY OF SUCH

8   WITNESS IS ENTITLED TO RECEIVE.

9             DURING THE COURSE OF THE TRIAL, JURORS SHALL NOT

10  ENGAGE OR ATTEMPT TO ENGAGE OR HAVE ANY CONVERSATION OR

11  COMMUNICATION OF ANY KIND WHATSOEVER WITH ANY OF THE PARTIES TO

12  THIS SUIT, THEIR REPRESENTATIVES, THE ATTORNEYS, THE WITNESSES OR

13  ANY OTHER PERSON IDENTIFIED WITH THIS TRIAL.  AND LIKEWISE, AS I

14  INDICATED, ANY PERSON IDENTIFIED WITH THIS TRIAL SHALL NOT ENGAGE

15  OR ATTEMPT TO ENGAGE IN ANY CONVERSATION OR COMMUNICATION

16  WHATSOEVER WITH ANY JUROR.

17            IF THIS HAPPENS, AGAIN, I ASK THAT YOU REPORT IT TO

18  ME IMMEDIATELY, AND YOU MAY DO SO BY REPORTING IT TO THE COURT

19  SECURITY OFFICER OR CSO THAT WILL BE ASSIGNED TO THE JURY.

20            FURTHER, AS JURORS, YOU SHOULD AVOID ALLOWING

21  YOURSELVES TO BE PLACED IN A POSITION WHEN OUTSIDE OF THE

22  COURTROOM WHERE DISCUSSIONS OF THIS CASE ARE BEING CONDUCTED BY

23  ANY OF THE PARTIES, THE ATTORNEYS OR THE WITNESSES.  FURTHERMORE,

24  THE ATTORNEYS, THE PARTIES AND THE WITNESSES MUST BE PARTICULARLY

25  CAREFUL NOT TO DISCUSS AND SHALL NOT DISCUSS THIS CASE WHERE

1  THERE IS A POSSIBILITY THAT ANY OF THE JURORS MAY OVERHEAR THEIR

2  REMARKS.  IF THAT OCCURS, PLEASE NOTIFY ME IMMEDIATELY.

3         YOU SHOULD NOT TAKE ANY OFFENSE TO THE FACT THAT

4  ANY OF THE PARTIES TO THIS TRIAL DO NOT EVEN EXTEND TO YOU A

5  FRIENDLY GREETING.  THE REASON THAT THOSE EXCHANGES ARE NOT

6  INDULGED IN IS BECAUSE ALTHOUGH THEY MAY SEEM INNOCENT TO YOU,

7  THEY COULD NEVERTHELESS GIVE THE IMPRESSION OF A LACK OF

8  IMPARTIALITY.  AND CREATING AN IMPRESSION OF BEING PARTIAL IS AS

9  BAD AS BEING BIASED OR PARTIAL AND SHOULD BE AVOIDED.

10        AT THIS TIME I'M GOING TO GIVE YOU THE FOLLOWING

11 SPECIFIC INSTRUCTIONS:  YOU ARE NOT TO DISCUSS THE CASE WITH

12 ANYONE.  THIS INCLUDES YOUR SPOUSE, YOUR CHILDREN, RELATIVES,

13 FRIENDS, AND STRANGERS, AND YOU ARE NOT TO DISCUSS THE CASE EVEN

14 AMONGST YOURSELVES UNTIL IT IS CONCLUDED AND YOU ARE ORDERED TO

15 BEGIN YOUR DELIBERATIONS.  VERY, VERY IMPORTANT THAT YOU FOLLOW

16 THAT INSTRUCTION.

17        IF YOU WISH, YOU MAY TAKE NOTES, AND YOU WILL BE

18 PROVIDED NOTE PADS ON WHICH TO DO SO, BUT IF YOU DO TAKE NOTES,

19 LEAVE THEM ON YOUR SEAT BOTH DURING THE BREAKS AND AT THE END OF

20 THE DAY.  THEY ARE NOT TO BE GIVEN OR READ TO ANYONE ELSE.  YOU

21 ARE NOT REQUIRED TO TAKE NOTES, BUT IF YOU CHOOSE TO TAKE NOTES,

22 YOU MAY DO SO AND THAT IS HOW THEY WILL BE HANDLED.

23        YOU WILL BE ABLE TO TAKE YOUR NOTES WITH YOU INTO

24 THE JURY ROOM TO DELIBERATE IN THIS CASE, AND I'LL HAVE SOME

25 ADDITIONAL INSTRUCTIONS AT THAT TIME AS TO HOW THOSE NOTES ARE TO

1   BE USED.

2           IF ANY PUBLICITY ABOUT THIS CASE HAS COME TO YOUR

3   NOTICE BEFORE THIS MOMENT, YOU MUST STRIKE IT FROM YOUR MINDS AND

4   COMPLETELY DISREGARD ANYTHING THAT HAS COME TO YOUR ATTENTION

5   OUTSIDE OF THIS COURTROOM.

6           FROM THIS MOMENT ON, YOU ARE NOT TO READ ANY

7   NEWSPAPERS OR OTHER ACCOUNTS OF THIS TRIAL, NOR ARE YOU TO VIEW

8   OR LISTEN TO ANY TELEVISION NEWS OR RADIO REPORTS OR OTHER

9   ACCOUNTS OF THIS TRIAL.  THIS IS NECESSARY AND IMPORTANT BECAUSE

10  YOUR VERDICT IN THIS CASE MUST BE BASED SOLELY ON THE EVIDENCE

11  PRESENTED IN THIS TRIAL IN ACCORDANCE WITH WHAT YOU HEAR AND VIEW

12  IN THIS COURTROOM.  AND IN ACCORDANCE WITH THE COURT'S

13  INSTRUCTIONS ON THE LAW APPLICABLE TO THIS CASE.

14          FINALLY, YOU ARE NOT TO REACH ANY CONCLUSIONS IN

15  THIS CASE UNTIL ALL THE EVIDENCE HAS BEEN PRESENTED.  THE COURT

16  HAS INSTRUCTED YOU ON THE LAW APPLICABLE TO THIS CASE, AND THE

17  CASE IS GIVEN TO YOU FOR DELIBERATION AND DECISION.

18          IN THE MORNING WHEN YOU ARRIVE AND DURING THE DAY

19  WHEN YOU'RE IN THIS BUILDING AND COURT IS IN RECESS, OR FOR ANY

20  REASON THAT THE JURY IS NOT REQUIRED TO BE IN THE COURTROOM, I

21  ASK THAT YOU GO TO AND REMAIN IN THE JURY ROOM OR REMAIN UNDER

22  THE DIRECT SUPERVISION OF THE COURT SECURITY OFFICER OR THE

23  MARSHAL UNTIL THE CSO OR THE MARSHAL ADVISES YOU TO ENTER THE

24  COURTROOM.  PLEASE DO NOT LOITER IN THE HALLWAYS.  IF YOU DO SO,

25  YOU ARE LIKELY TO COME ACROSS SOMEONE ASSOCIATED WITH THE TRIAL

1    OR HEAR SOMETHING ABOUT THE TRIAL THAT YOU SHOULD NOT BE HEARING.

2              THE JURY ROOM IS HEADQUARTERS FOR THE JURY AND

3    THERE ARE SOME REFRESHMENTS IN THERE AND COFFEE, RESTROOMS AND A

4    TELEPHONE.  HOPEFULLY, YOU'LL BE COMFORTABLE WHEN YOU'RE IN

5    THERE.  I, AS A POLICY, AND I HAVE CAUTIONED THE ATTORNEYS THAT

6    WHEN I TELL YOU WE ARE STARTING AT A CERTAIN TIME, I DO NOT LIKE

7    FOR YOU TO SPEND EXTRA TIME IN THE JURY ROOM.  THE ATTORNEYS ARE

8    AWARE THAT IF I TELL YOU TO COME BACK AT A CERTAIN TIME, YOU CAN

9    PLAN ON COMING OUT OF THE JURY ROOM AND COMING INTO THE COURTROOM

10   AT A CERTAIN TIME, LIKEWISE, AT THE BEGINNING OF THE DAY SO THAT

11   WE WILL NOT HAVE DOWN TIME WHEN YOU'LL BE IN THE JURY ROOM WHEN

12   YOU'RE SUPPOSED TO BE IN HERE LISTENING TO THE EVIDENCE.

13             I INDICATED THAT THIS CASE MIGHT POSSIBLY LAST AS

14   LONG AS TWO WEEKS, MONDAY THROUGH FRIDAY.  THE SCHEDULE WILL BE,

15   AS I INDICATED, 8:30 IN THE MORNING.  WE WILL TAKE A MID MORNING

16   AND A MID AFTERNOON BREAK OF ABOUT 10 TO 15 MINUTES.  WE WILL

17   HAVE APPROXIMATELY AN HOUR FOR LUNCH AT SOME POINT MIDDAY.  WE

18   WILL BREAK AT THE END OF THE DAY AT APPROXIMATELY FIVE O'CLOCK,

19   GIVE OR TAKE WHAT'S GOING ON ON THE CALENDAR, BUT IF IT GOES PAST

20   FIVE, IT WILL NOT BE VERY LONG PAST FIVE.  IT IS MORE LIKELY THAT

21   WE WILL BREAK EARLIER THAN FIVE IN ORDER TO START UP THE NEXT

22   DAY.  IN OTHER WORDS, WE WILL NOT START WITH ANOTHER WITNESS THAT

23   WILL EXTEND WELL PAST FIVE O'CLOCK, SO THAT YOU CAN PLAN

24   ACCORDINGLY.

25             ALL RIGHT.  AT THIS POINT IN TIME WE'RE GOING TO GO

1   AHEAD AND ADMINISTER THE OATH TO YOU AS JURORS, WHICH IS A LITTLE

2   DIFFERENT THAN THE OATH YOU TOOK THIS MORNING AS MEMBERS OF THE

3   JURY POOL.  WOULD YOU PLEASE RISE.

4          THE DEPUTY CLERK:  WOULD YOU RAISE YOUR RIGHT HANDS.  DO

5   YOU SOLEMNLY SWEAR THAT YOU WILL WELL AND TRULY TRY THE ISSUES

6   JOINED BETWEEN THE PLAINTIFF AND THE DEFENDANT AND A TRUE VERDICT

7   RENDER ACCORDING TO THE EVIDENCE AND THE LAW AS IT SHALL BE GIVEN

8   TO YOU BY THE COURT, SO HELP YOU GOD.

9          VOICES:  I DO.

10         THE COURT:  LET'S GO AHEAD.  I'VE GOT ABOUT QUARTER TO

11  12.  WE'RE A LITTLE BIT BEHIND THE SCHEDULE THAT I WANTED TO BE

12  ON.  WHY DON'T WE GO AHEAD AND TAKE THE LUNCH BREAK NOW.  AND WE

13  WILL COME BACK WITH THE OPENING STATEMENTS OF COUNSEL.  SINCE

14  WE'RE BREAKING ABOUT 15 MINUTES EARLY, I WOULD LIKE TO START UP

15  AGAIN AT QUARTER TO ONE.  ACCORDING TO MY CLOCK UP HERE, WHICH IS

16  ACCURATE.  I'M ON THE DOT HERE.

17          WHY DON'T WE START UP AT QUARTER TO 12.  IF YOU

18  COULD BE BACK IN THE JURY ROOM.  THE COURT SECURITY OFFICER WILL

19  SHOW YOU WHERE THE JURY ROOM IS.  YOU'LL HAVE LUNCH ON YOUR OWN.

20  AND IF YOU CAN BE BACK AT QUARTER TO ONE, WE'LL GO AHEAD AND GET

21  STARTED.  THANK YOU ALL.

22         THE COURT SECURITY OFFICER:  ALL RISE.

23         THE COURT:  COUNSEL, IS THERE ANYTHING WE NEED TO PUT ON

24  THE RECORD NOW THAT WE HAVE NOT PUT ON THE RECORD?

25         MR. WATTS:  YOUR HONOR, I THINK I'VE PRESERVED THIS BUT

1  JUST TO MAKE CERTAIN, TO THE EXTENT THAT THE PRESERVATION RULES

2  REQUIRE IT, WE WOULD AGAIN OBJECT TO THE SEATING OF THIS JURY AND

3  SEEK THE REMEDY THAT WE SOUGHT BEFORE.

4       THE COURT:  THAT'S ALREADY ON THE TRANSCRIPT.  DOES

5  ANYBODY HAVE ANYTHING ELSE TO PUT ON THE TRANSCRIPT?

6       MR. WEINSTOCK:  NO, SIR.

7       THE COURT:  LET'S GO OFF THE RECORD.

8       (WHEREUPON, AT 11:47 A.M., THE PROCEEDINGS WERE

9  CONCLUDED.)

10                     *   *   *

11

12              REPORTER'S CERTIFICATE

13

14   I, CATHY PEPPER, CERTIFIED REALTIME REPORTER, REGISTERED

15  MERIT REPORTER, REGISTERED PROFESSIONAL REPORTER, CERTIFIED COURT

16  REPORTER, OFFICIAL COURT REPORTER FOR THE UNITED STATES DISTRICT

17  COURT, EASTERN DISTRICT OF LOUISIANA, DO HEREBY CERTIFY THAT THE

18  FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY

19  ABILITY AND UNDERSTANDING, FROM THE RECORD OF THE PROCEEDINGS IN

20  THE ABOVE-ENTITLED AND NUMBERED MATTER.

21

22              *S/CATHY PEPPER*

23              CATHY PEPPER, CRR, RMR, CCR

24              OFFICIAL COURT REPORTER

25              UNITED STATES DISTRICT COURT