```
 1                     UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF LOUISIANA
 2

 3   ****************************************************************

 4   IN RE:  FEMA TRAILER
     FORMALDEHYDE PRODUCTS
 5   LIABILITY LITIGATION

 6                                   DOCKET MDL NO. 1873 "N"
                                     NEW ORLEANS, LOUISIANA
 7                                   MONDAY, SEPTEMBER 14, 2009, 8:30 A.M.

 8   THIS DOCUMENT IS RELATED TO

 9   CHARLIE AGE, ET AL V
     GULF STREAM COACH, INC.,
10   ET AL, DOCKET NO. 09-2892;
     ALANA ALEXANDER,
11   INDIVIDUALLY AND ON BEHALF
     OF CHRISTOPHER COOPER
12
     ****************************************************************
13

14
                     TRANSCRIPT OF MOTION PROCEEDINGS
15          HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
                       UNITED STATES DISTRICT JUDGE
16

17   APPEARANCES:

18
     FOR THE PLAINTIFFS:
19
                         GAINSBURGH BENJAMIN DAVID MEUNIER AND
20                       WARSHAUER
                         BY:  GERALD E. MEUNIER, ESQUIRE
21                       2800 ENERGY CENTRE
                         1100 POYDRAS STREET, SUITE 2800
22                       NEW ORLEANS LA   70163

23
                         THE BUZBEE LAW FIRM
24                       BY:  ANTHONY G. BUZBEE, ESQUIRE
                         600 TRAVIS, SUITE 7300
25                       HOUSTON TX   77002
```

```
 1  APPEARANCES CONTINUED:

 2

 3                              WATTS GUERRA CRAFT
                                BY:  MIKAL C. WATTS, ESQUIRE
 4                              FOUR DOMINION DRIVE
                                BUILDING THREE, SUITE 100
 5                              SAN ANTONIO TX 78257

 6
                                HILLIARD MUNOZ GUERRA
 7                              BY:  ROBERT C. HILLIARD, ESQUIRE
                                719 S. SHORELINE BOULEVARD #500
 8                              CORPUS CHRISTI TX 78401

 9
                                CHRIS PINEDO
10                              ATTORNEY AT LAW
                                802 N. CARANCAHUA, SUITE 2250
11                              CORPUS CHRISTI TX  78470

12
    FOR GULF STREAM COACH, INC.:
13
                                DUPLASS ZWAIN BOURGEOIS MORTON
14                              PFISTER & WEINSTOCK
                                BY:  JOSEPH G. GLASS, ESQUIRE
15                              THREE LAKEWAY CENTER
                                3838 N. CAUSEWAY BOULEVARD
16                              SUITE 2900
                                METAIRIE LA  70002

17

18                              SCANDURRO & LAYRISSON
                                BY:  TIMOTHY D. SCANDURRO, ESQUIRE
19                              607 ST. CHARLES AVENUE
                                NEW ORLEANS LA  70130

20

21
    FOR FLUOR ENTERPRISES, INC.:
22
                                MIDDLEBERG RIDDLE & GIANNA
23                              BY:  CHARLES R. PENOT, JR., ESQUIRE
                                     RICHARD A. SHERBURNE, ESQUIRE
24                                   SONIA MALLETT, ESQUIRE
                                717 N. HARDWOOD
25                              DALLAS TX  75201
```

```
 1  OFFICIAL COURT REPORTER:      CATHY PEPPER, CCR, RMR, CRR
                                  500 POYDRAS STREET, ROOM B406
 2                                NEW ORLEANS LA  70130
                                  (504) 589-7779
 3
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
 4  PRODUCED BY COMPUTER.
```

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2            MONDAY, SEPTEMBER 14, 2009, 8:30 A.M.
 3                         (IN CHAMBERS)
 4
 5
 6           THE COURT:  I GOT YOUR MOTIONS IN LIMINE AND I'M GOING
 7   TO RULE ON THEM RIGHT NOW.  I READ EVERYTHING YOU SUBMITTED, SO
 8   THIS ISN'T AN OPPORTUNITY TO ARGUE THEM AGAIN AFTER I RULE ON
 9   THEM BECAUSE WE'VE GOT VERY LIMITED TIME.  I WANT TO GET OUT
10   THERE AND GIVE YOU A CHANCE TO RUN TO THE RESTROOM BEFORE WE
11   START AT 8:30, SO LET ME GO THROUGH THESE VERY QUICKLY.
12               THE ONLY THING I HAVE NOT GOTTEN A RESPONSE TO IS
13   THE FLUOR -- WELL, IT'S NOW A MOTION, BUT I RECEIVED IT BY WAY OF
14   E-MAIL, WHICH I APPRECIATE THE HEADS UP ON.  FLUOR'S CONTENTION
15   REGARDING THE LPLA.
16           MR. HILLIARD:  JUDGE, WE JUST FILED IT.
17           THE COURT:  I APPRECIATE THAT TOO, BUT I DON'T HAVE TIME
18   TO READ IT RIGHT NOW.
19           MR. HILLIARD:  I'M SORRY.
20           THE COURT:  BUT THAT'S OKAY.
21           MR. HILLIARD:  WE WERE WORKING HARD ALL NIGHT ON IT.
22           THE COURT:  MY FEELING IS THAT NOW THAT WE'RE DEALING
23   WITH A NEGLIGENCE CLAIM, WHY IS THAT NOT PART OF A SIMPLE DUTY
24   BREACH ANALYSIS RELEVANT TO WHAT FLUOR DID OR DIDN'T DO THAT THEY
25   WERE SUPPOSED TO DO?
```

1          MR. PENOT:  YOU WANT A RESPONSE, YOUR HONOR?
2          THE COURT:  CHARLES PENOT.
3          MR. PENOT:  CHARLES PENOT FOR FLUOR.
4              BECAUSE IT SORT OF DERIVES FROM THE SAME NOTION IN
5    TORT LAW OF THERE IS NOT A DUTY TO ACT, RIGHT, IN TORT LAW.  I
6    MEAN, WE MAY NOT LIKE IT, YOU KNOW, BUT THAT'S THE REALITY OF
7    TORT LAW.  OKAY?  SO THE DUTY TO WARN, THE DUTY OF MY CLIENT TO
8    SPEAK TO SOME STRANGER AND SAY SOMETHING DERIVES FROM A COUPLE OF
9    TYPES OF CIRCUMSTANCES THAT WE LAID OUT IN THE MEMO.  PRODUCTS
10   LIABILITY, IF I WERE A MANUFACTURER, THAT'S GONE.  SOME SORT OF
11   SPECIAL RELATIONSHIP, BUT THOSE HAVE BEEN DEFINED PRETTY
12   NARROWLY.  AND THE THIRD GUARD 2322, PREMISES LIABILITY.  OKAY?
13             NONE OF THOSE EXIST HERE.  SO WE DON'T --
14        THE COURT:  GIVE ME THE THREE SENTENCE REJOINDER.
15        MR. HILLIARD:  BOB HILLIARD, JUDGE.
16             FLUOR'S DOCUMENTS REFERRED TO RESIDENCE AS
17   CUSTOMERS OF FLUOR, NOT STRANGERS.
18        THE COURT:  I THINK IT'S FAIR GAME, BOTH FROM WHAT I'VE
19   READ AND FROM WHAT YOU ALL HAVE TOLD ME, I THINK IT'S FAIR GAME
20   TO GO INTO THAT DURING THE COURSE OF THE TRIAL, SO I'M GOING TO
21   DENY THAT PARTICULAR MOTION.
22             WITH REGARD TO, AND FOR THE RECORD, DO YOU HAVE A
23   DOCKET NUMBER ON THAT SO THE PEOPLE DOWNSTAIRS DON'T STRING ME UP
24   OVER THIS?
25        THE CLERK:  THERE WAS A MOTION FOR LEAVE TO FILE IT.

```
 1            THE COURT:  MOTION FOR LEAVE IS GRANTED AND --
 2            THE CLERK:  3266.
 3            THE COURT:  THAT'S 3266 AND THE MOTION THAT GOES WITH
 4   THAT MOTION TO LEAVE, THEN, IS DENIED.
 5            MOTION IN LIMINE FORMALDEHYDE, THIS IS ON DOCKET
 6   3261, FORMALDEHYDE IS EVERYWHERE, UNSUPPORTED -- THIS IS A
 7   PLAINTIFFS' MOTION DIRECTED TO GULF STREAM, I BELIEVE.  THAT IS
 8   DENIED.  THIS IS NUMBER ONE IN THE MEMORANDUM IN SUPPORT.  THE
 9   DISCUSSION OF THE DEFENDANTS' KATRINA EXPERIENCE -- LOOK, I DON'T
10   WANT TO SPEND A LOT OF TIME HEARING KATRINA STORIES ABOUT WHO DID
11   WHAT TO WHOM AND HOW EVERYBODY WOUND UP ON THE SHORT END OF THE
12   STICK HERE, WHETHER IT'S A MANUFACTURER OR THE PLAINTIFFS.  I
13   MEAN, EVERYBODY KNOWS WHAT HAPPENED DURING KATRINA, BUT I THINK
14   THERE ARE DIFFERENCES BETWEEN THE PLAINTIFFS' EXPERIENCE, I THINK
15   I USED THE WORD THEIR "ODYSSEY" AFTER THE STORM.  AND THE
16   PLAINTIFFS HAVE ARGUED THAT THE DEFENDANTS' CONDUCT WITH REGARD
17   TO HOW THEY MANUFACTURED, WHAT THEY COULD HAVE ANTICIPATED WITH
18   REGARD TO THESE UNITS, IS RELEVANT.  SO I THINK IT'S A LITTLE BIT
19   DIFFERENT, BUT I DON'T WANT TO SPEND TIME TALKING ABOUT THINGS
20   THAT ARE KATRINA-RELATED THAT ARE NOT RELATED TO THE PRODUCT
21   LIABILITY CASE WITH REGARD TO GULF STREAM.
22            SO I REALIZE THAT'S SORT OF A VAGUE NOTION, BUT I
23   AM GOING TO DENY THE MOTION AS IT RELATES TO NUMBER TWO,
24   DISCUSSION OF DEFENDANTS' KATRINA EXPERIENCE, BUT I WOULD ASK
25   YOU, IT'S GOING TO HAVE TO BE RELEVANT TO THE MANUFACTURER OF THE
```

1  UNIT OR THEIR POLICY REGARDING THE ISSUES UNDER LPLA.  I DON'T
2  WANT TO HEAR JUST SOME GENERAL KATRINA ANECDOTAL-TYPE INFORMATION
3  THAT'S NOT PERTINENT TO THE LPLA ELEMENTS.
4              WITH REGARD TO FEMA'S ALLEGED INSTRUCTION TO
5  GULF STREAM NOT TO TALK TO RESIDENTS, I THINK WE COVERED THAT AT
6  THE PRETRIAL AND I THINK PLAINTIFFS HAVE ACCURATELY DESCRIBED MY
7  POSITION WITH REGARD TO THAT.  IF WE'RE GOING TO HAVE TESTIMONY
8  THAT THEY DIDN'T WARN -- THE PARAGRAPH HERE TALKS ABOUT THE --
9  FEMA'S INSTRUCTIONS, WE TALKED ABOUT THIS AT THE PRETRIAL AND THE
10 ISSUE OF PAYMENT AND ALL OF THAT.  I HOPE WE DON'T GO THERE, BUT
11 I'M NOT GOING TO LET SOMETHING THAT'S INACCURATE BE PORTRAYED TO
12 THE JURY WITHOUT ALLOWING THE OTHER SIDE TO RESPOND.  SO PLEASE
13 DON'T OPEN DOORS OR GO DOWN RABBIT TRAILS THAT WE DON'T NEED TO
14 GO DOWN.  I KIND OF THINK THIS IS ONE OF THOSE.  BUT LET'S SEE
15 WHAT HAPPENS.  BUT REMEMBER THAT THERE IS NOT GOING TO BE ANY
16 SWORD AND SHIELD HERE.  IF YOU USE IT, IT'S GOING TO GET COVERED.
17             SO I'M GOING TO DENY THE ISSUE WITH REGARD TO DR.
18 DEVANEY OR MS. DEVANEY OR WHATEVER SHE IS.  I THINK THE JURY
19 NEEDS TO HEAR, TO EVALUATE HER TESTIMONY AND I THINK I EXPRESSED
20 MYSELF PRETTY CLEARLY IN MY ORDER AND REASONS AND MY ASTONISHMENT
21 AT HER COMMENTS, WHICH I APPRECIATE COUNSEL WANTING TO FALL ON
22 THE GRENADE, BUT I'M STILL AMAZED THAT SHE WOULD CHARACTERIZE
23 HERSELF THE WAY SHE DID ON THAT TRANSCRIPT.  SO WE'RE GOING TO
24 SEE WHAT SHE HAS TO SAY ABOUT IT, BUT I THINK THE JURY NEEDS TO
25 HEAR IT.

1           ARE YOU GOING TO BRING THAT OUT ON YOUR VOIR DIRE?
2           MR. SCANDURRO:  YOUR HONOR, ONE OTHER THING, AND I'LL
3    JUST ASK THE PLAINTIFFS, THEY HAVE SEVERAL EXPERTS, INCLUDING A
4    STATISTICIAN WHO ARE GOING TO ENGAGE IN THIS SORT OF REGRESSION
5    ANALYSIS OF WHAT THE LEVELS MIGHT HAVE BEEN IN HER TRAILER WHEN
6    SHE MOVED IN.  DEVANEY IS ONE OF THOSE.  I DON'T KNOW IF Y'ALL
7    INTEND TO ELICIT THAT TESTIMONY FROM HER WITH RESPECT TO THAT.
8    YOUR HONOR SAID YOU WERE VERY CONCERNED ABOUT THAT, BUT YOU
9    DIDN'T OUTRIGHT SAY SHE COULDN'T TALK ABOUT IT.  SHE WOULD HAVE
10   TO LAY A REALLY GOOD FOUNDATION.  AND I WOULD SUGGEST THAT IF
11   THEY ARE GOING TO ELICIT THAT FROM HER AS OPPOSED TO THE
12   STATISTICIAN AND THE OTHER EXPERTS, IT'S PROBABLY A GOOD IDEA
13   SHE'S GOING ON SOMETIME THIS AFTERNOON, TO HAVE A SHORT VOIR DIRE
14   OUTSIDE THE PRESENCE OF THE JURY.
15           THE COURT:  SHE COULD TESTIFY AS TO TESTING UNITS AND
16   COMPILING RESULTS, THOUGH.  ISN'T THAT THE NATURE?  AS I
17   UNDERSTOOD IT, SHE HAD AT LEAST TWO TASKS THAT I RECALL FROM THE
18   CLASS CERT HEARING.  SHE WENT OUT AND TESTED OR SUPERVISED SOME
19   TESTING AND CREATED SORT OF A COMPILATION OR A DATABANK OF TEST
20   RESULTS AND THEN SHE HAD SOME OPINIONS THAT WERE RELATED TO THE
21   ONE-MOLECULE THEORY, WHICH I THINK YOU SPENT SOME TIME CROSSING
22   HER ON AT THE CLASS CERT HEARING, AS I RECALL.
23           MR. SCANDURRO:  THAT WAS DR. WILLIAMS.
24           THE COURT:  DR. WILLIAMS IS GOING TO BE HERE THIS
25   EVENING.  SHE CAN TESTIFY TO THAT.  I DON'T HAVE ANY PROBLEM WITH

1  THAT.  I JUST THINK IT GOES TO THE WEIGHT.  I'VE TALKED ENOUGH
2  ABOUT THAT.
3           DR. DIROSA.  I WASN'T CLEAR WHEN WE ASKED THE LIST
4  OF WITNESSES WHOSE DEPOSITIONS I WOULD HAVE TO GO THROUGH THAT HE
5  WAS GOING TO BE ON TODAY, BUT I THINK I'VE RULED ON EVERYTHING.
6  AS I UNDERSTAND IT, THERE ARE NO OUTSTANDING OBJECTIONS ON DIROSA
7  AT THIS POINT.
8       MR. MEUNIER:  JERRY MEUNIER.  I JUST TALKED TO THE
9  VIDEOGRAPHER AND HE'S HAVING DIFFICULTY PATCHING IN THE
10 DEFENDANTS' DESIGNATIONS WITH OURS, SO THERE MAY BE A LITTLE
11 TECHNICAL GLITCH ON THAT.
12      THE COURT:  LET'S GET SOMEBODY ELSE UP WHILE THEY ARE
13 WORKING ON THAT.
14           THERE IS A MOTION TO CERTIFY FOR INTERLOCUTORY
15 REVIEW.  IF HE'S GOING TO TESTIFY TODAY, YOU WANT TO SEND THIS
16 ISSUE UP SEPARATE FROM APPEAL?
17      MR. MEUNIER:  YES, YOUR HONOR.  IT'S REALLY FOR LATER
18 TRIALS.
19      THE COURT:  DOES ANYBODY HAVE ANY PROBLEM WITH THAT, YOU
20 MAY GET A RULING BETWEEN NOW AND DECEMBER?  DOES ANYBODY HAVE A
21 PROBLEM WITH ME DOING THAT, OTHER THAN THE FIFTH CIRCUIT?
22           ALL RIGHT.  LET'S GO AHEAD.  I'LL GO AHEAD AND
23 GRANT THAT ONE.  THAT'S NUMBER 3250, AND I'LL SUFFER WHATEVER
24 SLINGS AND ARROWS THEY CHOOSE TO SEND MY WAY ON IT.
25      MR. WATTS:  ALL PARTIES WOULD APPRECIATE IT, SIR.

1    THE COURT: I THINK IT'S LEGITIMATE BECAUSE WE DO HAVE
2 TRIALS THAT ARE COMING AND IF WE RESERVE IT FOR AN APPEAL,
3 JUDGMENT IN THE CASE, THEN IT'S NOT GOING TO GET RULED ON AND
4 WE'RE LIABLE TO TRY TWO OR THREE OTHER CASES BEFORE WE HEAR FROM
5 THEM, SO I'LL GO AHEAD AND GRANT THEM.
6    DEMONSTRATIVE EXHIBITS. LET ME GO THROUGH THIS
7 REAL QUICK. ON THE DEFENDANTS, THE ONLY PROBLEM I SEE ON THE
8 DEFENDANTS ARE THE TRANSCRIPTS, DEPOSITION TRANSCRIPTS. AND I'LL
9 SAY THIS NOW, AND I KNOW MOST JUDGES IN THIS BUILDING BECAUSE I
10 THINK WE'VE HAD THIS CONVERSATION AMONGST OURSELVES SEVERAL TIMES
11 OVER THE PAST SINCE I'VE BEEN HERE, TYPICALLY WE DON'T USE
12 DEPOSITION TRANSCRIPTS OR TRIAL TRANSCRIPTS FOR OPENING AND
13 CLOSING STATEMENTS. AND THERE ARE A LOT OF REASONS FOR THAT, NOT
14 THE LEAST OF WHICH IS, WHEN THE JURY DELIBERATES AND THEY SEE
15 SOMEBODY'S LITTLE SEGREGATED QUESTION AND ANSWER THAT YOU WANT TO
16 PUT UP AT CLOSING ARGUMENT, THE FIRST QUESTION I GET FROM THE
17 JURY ROOM IS, "WE WANT THE TRANSCRIPTS OF THIS WITNESS AND THAT
18 WITNESS AND THE OTHER WITNESS." AND THEY DON'T GET THAT.
19 MOREOVER BECAUSE IT'S A DEPOSITION TRANSCRIPT, THE WITNESSES
20 HAVEN'T TESTIFIED YET, AND IF THEY TESTIFY CONSISTENTLY WITH
21 WHAT'S IN THE TRANSCRIPT, THEN THERE IS NO REASON TO USE THE
22 TRANSCRIPTS. YOU CAN TELL THE JURY WHAT THEIR TESTIMONY IS GOING
23 TO BE, BUT PUTTING IT UP ON THE SCREEN AS A TRANSCRIPT, I'M GOING
24 TO GRANT.
25    MR. WEINSTOCK: THE ONLY THING I'LL SAY IS THE ONE WE

```
 1  USED IS KARIN PACHECO WHO IS COMING IN BY DEPOSITION AND THOSE
 2  PAGES WERE NOT OBJECTED TO.  I'LL TRY NOT TO USE IT AS
 3  DEMONSTRATIVE.  I CAN TELL THEM --
 4           THE COURT:  YOU CAN TELL THEM, SURE.
 5           MR. WEINSTOCK:  I CAN PUT IT IN QUOTES, AIR QUOTES.
 6           THE COURT:  YES.  YOU CAN SPEAK QUOTES OF WHAT SOMEBODY
 7  TESTIFIED TO OR WHAT THEIR TESTIMONY IS GOING TO BE, BUT TO
 8  HIGHLIGHT IT AND PUT IT ON A SCREEN IS GOING TO SUGGEST TO THE
 9  JURY THAT THEY CAN HAVE A TRANSCRIPT ANY TIME THEY WANT AND THEY
10  CAN'T.  THEY HAVE TO LISTEN TO THE TESTIMONY AND USE THEIR
11  RECOLLECTIONS AND THEIR NOTES.
12           MR. WATTS:  SO FOR CLOSING, WE CAN'T SHOW THE
13  TRANSCRIPT, BUT WE CAN PUT WHAT THEY SAID IN QUOTES?
14           THE COURT:  YOU CAN SPEAK IT.  YOU CAN REMIND THE JURY
15  THAT SO AND SO TOOK THE STAND AND SAID, I QUOTE, AND SAY IT.
16           MR. WATTS:  BUT IF WE'RE USING A POWERPOINT, AS LONG AS
17  WE'RE NOT USING THE TRANSCRIPT, CAN WE QUOTE FROM WHAT THEY SAID?
18           THE COURT:  I WOULD RATHER YOU NOT.
19           MR. WATTS:  CAN WE USE BULLET POINTS AND -- I MEAN,
20  CHARACTERIZING WHAT THEY SAID?
21           THE COURT:  YOU CAN CHARACTERIZE THEIR TESTIMONY.
22           MR. WATTS:  I'VE GOT YOU.
23           THE COURT:  IF IT WERE A BENCH TRIAL, IT WOULD BE FAIR
24  GAME, BUT I WOULD REMEMBER WHAT THEY SAY AND THE JURY IS GOING TO
25  REMEMBER WHAT THEY SAY.  BUT ONCE YOU START PUTTING EXCERPTS,
```

1  EVERYBODY IS GOING TO WANT EVERYTHING AND THEN THE JURY IS GOING
2  TO WANT ALL OF THE TRANSCRIPTS.  AND LET'S NOT GO DOWN THAT ROAD.
3  OTHER THAN THAT, I GOT NO PROBLEM WITH THE DEFENDANTS'
4  DEMONSTRATIVE.  WELL, FLUOR'S OBJECTION TO THE DEMONSTRATIVE IS
5  3216.  THEY HAVE -- WELL, I DON'T HAVE AN UPDATED POWERPOINT ON
6  THIS.  I'LL OVERRULE NUMBER ONE, BUT YOU SHOULD MAKE IT CLEAR
7  THAT THE DAMAGED INTERIOR WALL INSIDE THE ALEXANDER TRAILER AT
8  THE TIME THEY MOVED IN IS BASED ON THEIR TESTIMONY.
9             MR. BUZBEE:  YOUR HONOR, I TRIED TO FIX A LOT OF THESE.
10            THE COURT:  I KNOW YOU DID FROM THE SPELLING.  LET ME
11 ASK YOU, THOUGH, SINCE MY MOTION IS OUTDATED, MR. PENOT, WHAT'S
12 LEFT ON THEIR OBJECTION?  I'VE GOT SOME POWERPOINT SLIDES HERE.
13 I DON'T HAVE ANYTHING ON THEM.
14            MR. SHERBURNE:  YOUR HONOR, THE ONE THAT HAD NOTHING ON
15 IT I BELIEVE HAS BEEN FIXED.
16            MR. BUZBEE:  THE ONE THAT HAD NOTHING ON IT WAS A SHORT
17 ANIMATION, WHICH IS ONE OF THEIR OBJECTIONS.
18            THE COURT:  WHAT IS IT THAT'S A PROBLEM NOW?
19            MR. SHERBURNE:  YOUR HONOR, WITH THAT CLARIFICATION, I
20 DON'T THINK WE HAVE ANY OBJECTIONS.  THEY FIXED THE PICTURE ONE,
21 THEY FIXED THE SPELLING ONE.  WE'RE GOOD.
22            THE COURT:  AND I'VE RULED ON NUMBER ONE.  SO 3216 IS
23 DENIED IN PART AND MOOT AS TO THE REST OF IT.
24              NUMBER 3215 IS THE MOTION IN LIMINE REGARDING THE
25 INTEROFFICE MEMO, WHICH IS DENIED.  AS I UNDERSTAND IT, THE

1  DOCUMENT WAS PRODUCED BY GULF STREAM.  OBJECTIONS TO
2  DEMONSTRATIVE EXHIBITS ON THE PLAINTIFFS' SIDE.  WHAT IS THE
3  ISSUE ON THE DANGER SLIDE, IT BEING APPLICABLE TO FORMALDEHYDE?
4  IS THAT APPLICABLE TO FORMALDEHYDE, THE DANGEROUS, MSDS?
5          MR. BUZBEE:  THAT'S DIRECTLY OFF THE MSDS, YOUR HONOR.
6  I DON'T KNOW WHAT THEIR OBJECTION TO IT IS, BUT IT'S ABSOLUTELY
7  FROM THE MSDS.
8          THE COURT:  ALL OF THESE ARE PREJUDICIAL, BUT I DON'T
9  FIND ANY OF THEM TO BE OUTSIDE THE REALM OF ARGUMENT OR UNFAIR,
10 UNDULY PREJUDICIAL.  AND I'LL EXPLAIN TO THE JURY WHAT ARGUMENT
11 IS NOT EVIDENCE.
12          SO LET'S SEE, WE'VE GOT MS. WILLIAMS TONIGHT.
13 GULF STREAM COACH'S.  THERMOGRAPHIC IMAGING, THIS IS NUMBER 3238.
14 THERE'S A REAL DIFFERENCE OF OPINION.  WE COVERED THIS IN THE
15 TELEPHONE CONFERENCE AND I THINK WE HAVE A TRANSCRIPT ON IT,
16 WHERE THE BLOWERS AND ALL THAT OTHER JUNK WERE ON WHEN HE TOOK
17 THIS THING OUT AND USED IT.  SOME PEOPLE SAY YEAH AND SOME PEOPLE
18 SAY ABSOLUTELY NO.  I THOUGHT I ASKED THAT VERY QUESTION DURING
19 THE PHONE CONVERSATION.
20          MR. BUZBEE:  I'LL TELL YOU, AS AN OFFICER OF YOUR COURT,
21 YOUR HONOR, I CAN'T TELL YOU YES OR NO, SO IF THEY KNOW THAT FOR
22 SURE --
23          THE COURT:  WHY DON'T YOU ASK HIM.
24          MR. WEINSTOCK:  WHY DON'T WE ASK HIM BEFORE HE GETS ON
25 THE STAND.

1            THE COURT:  STANDING ROOM ONLY LAWYERS IN HERE AND
2    NOBODY KNOWS WHAT HAPPENED.
3            MR. WEINSTOCK:  WHAT HAPPENED IS, WE WENT BACK AND
4    LOOKED AT THE PICTURES AND THE TIMESTAMP ON IT IS WHEN THE BLOWER
5    DOOR IS RUNNING, BUT I'M HAPPY TO --
6            MR. GLASS:  IT'S ALSO IN HIS REPORT.
7            MR. WEINSTOCK:  AND IT'S ALSO IN HIS REPORT.
8            THE COURT:  HE CAN TESTIFY AS TO READINGS THAT HE TOOK
9    USING THAT INSTRUMENT WHEN THE OTHER TESTS WERE NOT BEING RUN.
10   IF HE MEASURED IT AS A COMPONENT PART OF THOSE OTHER TESTS, THEN
11   THAT IS GOING TO FALL IN THE CATEGORY OF THE BLOWER DOOR TEST AND
12   THE AIR VENT DUCT TEST OR WHATEVER IT WAS CALLED.  SO LET'S FIND
13   OUT WHAT HE DID.  YOU CAN EXPLAIN THAT TO HIM.  I PROBABLY WON'T
14   EVEN HAVE TO GET TO THAT.
15           MR. BUZBEE:  YOU CAN BE ASSURED SINCE I'M THE ONE
16   PUTTING HIM ON, IT WILL BE VERY SIMPLE.  I MAY NOT MENTION ANY OF
17   THIS STUFF.
18           THE COURT:  I DON'T THINK THERE IS ANYTHING ELSE WE NEED
19   TO COVER RIGHT NOW, BUT THAT'S MY FINAL ADVICE TO YOU FROM
20   READING ALL THIS MATERIAL, WE'RE GOING TO GET NINE PEOPLE IN
21   THERE.  KEEP IT SIMPLE, BE EFFICIENT.  DON'T WASTE TIME BECAUSE
22   I'LL CALL YOU ON IT.  WE'RE GOING TO GET MOVING HERE.
23               YOU ALREADY HAVE QUESTIONNAIRES.  WE'RE GOING TO GO
24   THROUGH THE JURY MATERIAL.  I DID NOT PUT ALL OF YOUR QUESTIONS
25   IN THE JURY VOIR DIRE SCRIPT BECAUSE A LOT OF THEM TOUCHED ON

```
 1  THINGS THAT YOU ALREADY KNOW.  I DON'T THINK I'VE EVER HAD
 2  LAWYERS PICK A JURY WHEN THEY ARE SO FAMILIAR WITH THESE PEOPLE
 3  THAT THEY KNOW WHAT'S ON THEIR SCREEN SAVER AND THEY KNOW WHAT
 4  BUMPER STICKERS THEY HAVE.
 5           AND YOU'VE GOT THE LIST.  I'VE NEVER HAD A TRIAL
 6  WHERE YOU'VE GOTTEN THE LIST OF JURORS AS THEY HAVE BEEN
 7  NUMERICALLY SELECTED FIVE DAYS BEFORE JURY SELECTION.  SO YOU
 8  KNOW WHO IS GOING TO COME OUT, YOU KNOW WHAT ORDER THEY ARE GOING
 9  TO BE IN AND YOU KNOW THE ANSWERS TO SOME 120-SOMETHING
10  QUESTIONS, SO I EXPECT US TO GO AT A PRETTY GOOD SPEED.  I'M
11  GOING TO COVER EVERYTHING.  WE'LL PROBABLY HAVE PEOPLE COME UP TO
12  THE BENCH TO TELL US SOME SECRET THAT THEY NEED TO TELL US AND
13  THEN WE'RE GOING TO PICK AND THEN LET'S GET GOING.
14           MR. SCANDURRO:  YOUR HONOR, I MAY HAVE TO DIVE UNDER THE
15  TABLE WHEN I SAY THIS, I NOTICED GOING THROUGH THE EXHIBIT LIST
16  THIS MORNING THAT THE 2008 FEMA SPECS WHICH ARE THE NEW LOWER
17  LEVEL WHICH I UNDERSTAND YOUR HONOR HAS RULED ON THAT ISSUE IN
18  CONNECTION WITH SOME MOTIONS IN LIMINE IS ON THE EXHIBIT LIST AS
19  UNOBJECTED TO AND IT WAS SUPPOSED TO BE OBJECTED TO.  I JUST --
20           THE COURT:  I'M GOING TO ASK ONE OF YOU ALL, I HOPE ONE
21  OF YOU IS PREPARED BECAUSE IT'S TOO LATE TO PREPARE FOR IT NOW,
22  ONE OF YOU ALL TO TAKE THE PODIUM BEFORE OPENING STATEMENTS AND
23  OFFER A STIPULATION OF NUMERICALLY NUMBERED EXHIBITS, NUMERICALLY
24  CATEGORIZED EXHIBITS.  DON'T PUT THAT ONE IN IF IT'S OBJECTED TO.
25  THAT ONE IS GOING TO HAVE TO BE INTRODUCED THE OLD FASHIONED WAY.
```

```
 1  IS SOMEBODY READY TO DO THAT?  ANYBODY?
 2           MR. WEINSTOCK:  IS PETER HERE?
 3           MR. BUZBEE:  I'LL GET SOMEBODY READY TO DO THAT.
 4           THE COURT:  ALL I NEED IS NUMBERS, JUDGE, WE'RE PUTTING
 5  IN 1 THROUGH 72, 75 THROUGH 164.  ALL I NEED IS NUMBERS AND WE'RE
 6  GOING TO GET THOSE IN, BUT I NEED SOMEBODY TO DO IT AND DO IT
 7  QUICKLY BECAUSE ONCE THOSE ARE IN, THAT'S IT.
 8           MR. PENOT:  IT MIGHT BE GOOD TO HAVE TWO PEOPLE AT THE
 9  PODIUM LOOKING AT THE LIST.
10           THE COURT:  WE CAN ALL LOOK AT IT WHILE WE'RE DOING IT.
11  BUT I TOLD YOU AT THE PRETRIAL WE'RE GOING TO GET ALL OF THOSE
12  EXHIBITS IN AT THE FRONT END.
13           MR. BUZBEE:  THERE ARE SO MANY OBJECTIONS, I MEAN --
14           THE COURT:  WELL, THEN, IT SHOULD BE EASY.  TAKE THE
15  ONES THAT ARE NOT OBJECTED TO.  UNFORTUNATELY IF THERE IS ONLY
16  THOSE FEW, THEN IT SHOULD BE EASY.  GET THOSE IN.
17           MR. MEUNIER:  JUDGE, STIPULATIONS, YOU WILL READ THOSE?
18           THE COURT:  I WILL READ THOSE.  I WILL READ THOSE AFTER
19  WE STIPULATE THE EXHIBITS IN.  I WILL READ THE STIPULATIONS AND
20  THEN I WILL TURN TO YOU ALL AND SAY, "OPENING STATEMENT."
21           MR. MEUNIER:  ARE THOSE WRITTEN STIPULATIONS GOING INTO
22  EVIDENCE OR ARE THEY JUST GOING TO BE --
23           THE COURT:  THEY SHOULD BE.
24           THE CLERK:  ALL I HAVE IS THE E-MAIL.
25           MR. MEUNIER:  I THINK IT WOULD BE APPROPRIATE TO HAVE
```

```
 1  THE JURY REFER TO THEM.
 2          THE COURT:  SOMEBODY NEEDS TO DO -- AND I THINK I SAID
 3  THIS AT THE PRETRIAL -- A WRITTEN PLEADING THAT HAS THE NAME OF
 4  THE CASE AND TRIAL STIPULATIONS AND ONE THROUGH SIX OR HOWEVER
 5  MANY YOU GOT, SIGNED BY EVERYBODY.  THAT'S GOING TO GO NOT ONLY
 6  IN THE RECORD, BUT IT'S GOING TO GO INTO THE JURY ROOM WITH ALL
 7  OF THE EXHIBITS.  SO SOMEBODY NEEDS TO PREPARE THAT SO THAT IT
 8  CAN GO IN THE JURY ROOM AND NOT HAVE IT AN E-MAIL.
 9          MR. MEUNIER:  IF YOU'VE GIVEN ME THE E-MAIL, SO I KNOW
10  I'VE GOT THE RIGHT LIST AND WE'LL GET IT DONE.
11          THE CLERK:  DO YOU WANT IT ON PAPER?  DO YOU WANT ME TO
12  PRINT IT OUT?
13          MR. MEUNIER:  I'M GOING TO HAND IT TO MY SECRETARY.
14          MR. WATTS:  I SENT COUNSEL AN E-MAIL LAST NIGHT.  WE
15  WERE CONCERNED GIVEN HOW QUICKLY WE'RE GOING TO START TODAY THAT
16  WE DIDN'T HAVE ENOUGH WITNESSES, SO WE ADDED DR. GERALD MCGWIN.
17  I CONFIRMED WITH COUNSEL.  THERE AREN'T ANY OBJECTIONS.  WE
18  WORKED EVERYTHING OUT.  I WANTED TO LET YOU KNOW THAT.
19          THE COURT:  AS LONG AS WE'VE GOT ONE IN THE HOPPER.
20          MR. WATTS:  I FIGURED IF WE WERE DONE AT FOUR AND YOU
21  ASKED FOR OUR NEXT WITNESS AND WE SAID, "NO MORE," YOU WOULD --
22          THE COURT:  LET'S GO GET THIS READY AND UNDERWAY.
23              (WHEREUPON AT 8:22 P.M., THE CONFERENCE ENDED.)
24                          *   *   *
25
```

18

```
 1
 2
 3
 4                        REPORTER'S CERTIFICATE
 5
 6      I, CATHY PEPPER, CERTIFIED REALTIME REPORTER, REGISTERED
 7   MERIT REPORTER, REGISTERED PROFESSIONAL REPORTER, CERTIFIED COURT
 8   REPORTER, OFFICIAL COURT REPORTER FOR THE UNITED STATES DISTRICT
 9   COURT, EASTERN DISTRICT OF LOUISIANA, DO HEREBY CERTIFY THAT THE
10   FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY
11   ABILITY AND UNDERSTANDING, FROM THE RECORD OF THE PROCEEDINGS IN
12   THE ABOVE-ENTITLED AND NUMBERED MATTER.
13
14
15                                  *S/CATHY PEPPER*
16                                  CATHY PEPPER, CRR, RMR, CCR
17                                  OFFICIAL COURT REPORTER
18                                  UNITED STATES DISTRICT COURT
19
20
21
22
23
24
25
```