```
 1                    UNITED STATES DISTRICT COURT
 2                    EASTERN DISTRICT OF LOUISIANA
     *******************************************************************
 3

 4   IN RE:  FEMA TRAILER
     FORMALDEHYDE PRODUCTS              Docket No. MDL-1873(N)
 5   LIABILITY LITIGATION              New Orleans, Louisiana
                                       Friday, March 20, 2009
 6
     *******************************************************************
 7

 8            TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
           HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
 9                    UNITED STATES DISTRICT JUDGE

10

11   APPEARANCES:

12   FOR THE PLAINTIFF
     STEERING COMMITTEE:          GAINSBURGH BENJAMIN DAVID
13                                MEUNIER AND WARSHAUER
                                  BY:  GERALD E. MEUNIER, ESQ.
14                                     JUSTIN I. WOODS, ESQ.
                                  2800 Energy Centre
15                                1100 Poydras Street, Suite 2800
                                  New Orleans, LA 70163
16

17
     FOR THE DEFENDANTS'
18   LIAISON COUNSEL:            DUPLASS ZWAIN BOURGEOIS MORTON
                                 PFISTER & WEINSTOCK
19                               BY:  ANDREW D. WEINSTOCK, ESQ.
                                      JOE GLASS, ESQ.
20                                    Three Lakeway Center
                                 3838 N. Causeway Boulevard, Suite 2900
21                               Metairie, LA 70002

22
     FOR THE GOVERNMENT:         UNITED STATES DEPARTMENT OF JUSTICE
23                               BY:  HENRY T. MILLER, ESQ.
                                      ADAM M. DINNELL, ESQ.
24                                    Civil Division - Torts Branch
                                 P.O. Box 340, Ben Franklin Station
25                               Washington, D.C. 20004
```

```
 1

 2   FOR FEMA:                    FEMA DHS
                                  BY:  JANICE WILLIAMS-JONES, ESQ.
 3                                Office of Chief Counsel
                                  500 C Street, SW
 4                                Washington, D.C. 20472

 5

 6

 7   Official Court Reporter:    Karen A. Ibos, CCR, RPR, CRR
                                  500 Poydras Street, Room HB-406
 8                                New Orleans, Louisiana 70130
                                  (504) 589-7776
 9

10

11     Proceedings recorded by mechanical stenography, transcript
     produced by computer.
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>P R O C E E D I N G S</u>

(MARCH 20, 2009)

(MOTION PROCEEDINGS)

1
2
3
4
5          THE COURT:  All right.  You may be seated.  First of all,
6     good morning to you all.  We changed venues here.  They are doing
7     some updating on the technology in the courtroom next door, so
8     Judge Duval has been kind enough to let us use his courtroom so I
9     want to thank him for that.
10          I did meet with the committees during the last hour and
11     so we have a lot to report to you today, and we'll go ahead and
12     start with what will be Joint Report No. 9.
13          Who wants to go ahead and take the initial?
14          MR. WEINSTOCK:  Mr. Woods has volunteered.
15          THE COURT:  All right, Mr. Woods.
16          MR. WOODS:  Good morning, your Honor, Justin Woods for
17     the PSC.  Section I of Joint Report No. 9.  The PLC and the MDLC
18     report there have a total of 95 actions filed thus far or
19     transferred into this MDL proceeding.  There is a list here, it's
20     an extensive list, six pages of new suits that were filed by the
21     March 2nd, 2009 deadline in order for individuals to be considered
22     to be a part of the potential pool of bellwether trial plaintiffs.
23          And this list goes on for six pages, I don't know if,
24     your Honor, what would you like for me to do regarding names?
25          THE COURT:  They will be listed when we file the report,

```
 1    so I don't think we need to go through them one by one.

 2            Most of them were filed, I'm looking at the dates here,

 3    March the 2nd, there's a couple here from late February, and I see

 4    one or two here from March the 3rd.  But these are all newly filed

 5    actions and many of them are Eastern District actions.

 6            MR. WOODS:  Yes, your Honor.

 7            THE COURT:  Go ahead.

 8            MR. WOODS:  Section II, your Honor, is entitled Plaintiff

 9    Fact Sheets.  Today the PSC office still operates its claims office

10    located at 4731 Canal Street here in New Orleans.  To date we've

11    delivered 3,543 completed PFS forms to the defendants.

12            And there is a correction to the joint report that was

13    submitted to the court.  The PSC has cured to date a total of 803

14    deficiencies, not 231 as cited in the report.  And we'll make that

15    correction, your Honor, by the end of this day.

16            THE COURT:  And the number previously to that, right

17    above that, it says that PLC, the Plaintiffs' Liaison Committee has

18    delivered 3,543 completed Plaintiff Fact Sheets to the defendants

19    as of today.  Is that correct, Mr. Woods?

20            MR. WOODS:  Yes, your Honor.

21            THE COURT:  And 803 deficiencies have been corrected and

22    supplied to the defendants as we sit here today?

23            MR. WOODS:  Yes, your Honor.

24            THE COURT:  And how many more, do we know how many

25    deficiencies have been identified that need to be corrected at this
```

1    point?

2              MR. WOODS:  I don't have that number, your Honor.  We do

3    not.

4              THE COURT:  All right.  Let's just keeping working in

5    that direction.

6              For those of you -- well, we are going to stress this a

7    couple of times today, but I think for those of you who are not on

8    the committees, the Plaintiff Fact Sheets must be completed as

9    accurately and as completely as possible.  And one of the features

10   of that that is absolutely critical, if at all possible for you to

11   get, is the FEMA ID number.  If you're filling out a fact sheet for

12   a plaintiff, it's critical that you have the FEMA ID number, so

13   please tell your clients if they don't have that with them to

14   please look every which place they could possibly imagine.  Most of

15   the time it's written, as I understand it from the government, it's

16   written on almost every document that they would get from the

17   government related to the FEMA trailer issue.  All right.

18             MR. WOODS:  And further, your Honor, the court entered an

19   order, Pre-Trial Order No. 32, which sets particular deadlines for

20   the completion of PFS forms, and it's most important for

21   individuals or attorneys with large numbers of clients to be very

22   mindful of the percentages that are required and the dates that are

23   required as outlined in Pre-Trial Order No. 32 that was entered on

24   Wednesday, March 18th.

25             THE COURT:  Okay.  All right.  Motion practice, let me go

1    ahead and comment on that.

2             This morning, or yesterday afternoon, it should be

3    docketed this morning, the court denied the motion for direct

4    filing into the MDL.  And as I told the attorneys when I did sign

5    that order, I would like us to be able to establish a procedure

6    that expedites filing of cases that are ultimately going to wind up

7    in the MDL while I agreed with -- I think the government opposed

8    the motion, while I agreed with the analysis of law and felt duty

9    bound, of course, to apply it, I would like the parties to continue

10   to discuss ways to expedite the filing of actions either directly

11   into the MDL or see to it that they can be brought here as

12   inexpensively and as quickly as possible.

13            If we're going to have to file in all of the various

14   venues and jurisdictions and those actions are going to have to

15   either be removed or transferred here or both, removed and then

16   transferred by the other federal district courts here, it's going

17   to take up a lot of time and it's also going to take resources,

18   both judicial and party resources.  So I am going to urge the

19   attorneys to try to continue to work on a means that would short

20   circuit that process.

21            I would like to have granted the motion for direct

22   filing, but I didn't see legally how I could do that over the

23   objection the government's raised.  So if you're not familiar with

24   the positions that are taken, you can see in the record the

25   government's objection, which I agree with as a correct analysis of

 1    the law.

 2            The other motion that's pending here relates to the

 3    notice of denial of class certification.  The parties have

 4    submitted a draft of what that notice would be, and there are very

 5    few objections to it.  But by the end of today, I am going to issue

 6    an order that resolves those very few discrepancies between the

 7    parties relative to the notice.  So you can look for that again by

 8    the end of today.

 9            All right.  Anything else on motion practice, counsel?

10            MR. MEUNIER:  Nothing on that, Judge.  But just if I

11    might add something about the notice for those who are here, those

12    plaintiff counsel.

13            From the PSC standpoint, the most important aspect of

14    this notification to form class members is that the denial of

15    certification by this court has legal implications for them in

16    terms of the statute of limitations.  And certainly since we are no

17    longer a class action, our duties to these absent claimants is

18    different than it was when we were operating as class counsel.

19            But I think it is important for plaintiff lawyers here to

20    be aware that the statute is running.  But more than that, this

21    court now has agreed to publish a notice or to approve the

22    publication of a notice which will officially and formally notify

23    people of that fact, and therefore it becomes more difficult, I

24    think, for claimants to later take the position that post denial of

25    class cert, they weren't aware that they had to exercise certain

1    legal rights that they have.  I just want to emphasize that for

2    those that are here.

3         THE COURT:  Okay.  All right.  Let's also talk about --

4    is there any need to cover the mobile housing?  Why don't you give

5    us whatever you can.

6         MR. MEUNIER:  Just report, Judge, that pursuant to your

7    directives, the manufacturers of mobile housing units and part

8    models, these are units other than travel trailers, which do not as

9    a whole comprise a significant percentage of the total inventory at

10   issue in this litigation because they're perceived to be in a

11   different category certainly than the travel trailer manufacturers,

12   have been meeting with the delegation of the PSC in an effort to

13   forego formal discovery and costs associated with discovery and to

14   get to a point where we can have discussion about global

15   resolution.

16        In that process it's become clear, however, that some

17   claims information is necessary for those discussions to take

18   place.  So to some extent we're dependent again on matching

19   activity, dependent again on people filing suit once they're

20   matched, and we do hope that nonetheless that when sufficient

21   matching and claims information is at hand those discussions with

22   the mobile housing manufacturers will be fruitful.

23        THE COURT:  Well, here again, touching on something I

24   said just a few minutes ago, this has come up at every single

25   meeting I've had with the committees as well as these conferences

1   that we've had.  In order to get this case moving quicker than it

2   is on the plaintiffs side, again, you've got to get that

3   information, it's critical.  It's the gold standard in this case.

4   Every time we come across an issue in this case where something

5   needs to be done, the first thing I hear from the attorneys is that

6   we don't have sufficient information, we can't match, we don't know

7   which manufacturer, we don't know which third-party contractor is

8   involved.

9          So this is a threshold matter for those of you who are

10  here representing plaintiffs, it's a threshold matter that you

11  gather that information, and you'll be doing yourself and all of

12  the lawyers, not just the plaintiffs liaison counsel and the

13  committee, you will be doing all of the lawyers a great service.

14  You will be doing the court a great service because we can get the

15  case moving a little quicker.  So please try to get that

16  information on the front end.

17         And I'll sound like a broken record, I'm sure, it will

18  probably come up again before the end of this conference, but the

19  FEMA ID number and any of the information on the fact sheet is

20  critical to get the claim processed quicker.

21         The next topic on the report is matching the plaintiff to

22  the defendant manufacturer and FEMA contractor.  Seems like I just

23  talked about that.  But does anybody have anything they want to add

24  on that before I repeat myself once again?

25         Does anybody have any questions about that?  Maybe it is

```
 1    a good time now to ask if anyone has any questions at all.  Yes,
 2    sir.
 3              MR. SCHMIDT:  Don Schmidt.  Your Honor, we received a
 4    spreadsheet or something, an e-mail or something to put our clients
 5    down to match with the government.  Is that true if we sent the
 6    names in to the government of the people that resided in the
 7    trailer we would be able to get the --
 8              THE COURT:  Why don't you come up to the podium.
 9              It's an important question and I am going to let the
10    attorneys respond.
11              MR. SCHMIDT:  I'm Doug Schmidt and I am on the Plaintiffs
12    Steering Committee.  We have a number of clients that again we
13    don't have all of the information we need.  We want to know if we
14    got some kind of spreadsheet in an e-mail and if we put our
15    client's name down, will the government give us the information as
16    for the manufacturers ID and all of that stuff?
17              THE COURT:  Well, my understanding is that it's not
18    simple, it's not as simple as that.  Can they do it, would it be
19    possible for them to do it, I'll let Mr. Miller talk about that.
20    There are a lot of complications to that, so please don't assume
21    that if you give us the name somebody's going to be able to go find
22    this because it's costly, it's time consuming, and it may not, we
23    don't know.
24              So the first source for that information is going to be
25    your client.  And your client, if they come to you and say, well, I
```

1    don't remember or I don't know, you're going to have to go through

2    the exercise with them saying you need to go back and get whatever

3    documents you have because it's going to save a lot of time.

4         So please don't rely on just the fact that you have the

5    name that somebody else is going to go find it because they may not

6    be able to or it's going to take so long that it's going to wind up

7    costing us time, it's going to cost resources that could be put to

8    better use.

9         Counsel, does anybody want to respond?

10        MR. MEUNIER:  What I heard, Henry can correct me if I'm

11   wrong, the two most important pieces of information are not the

12   name.  It's first the location of the unit because first it has to

13   be put in one of the four states in the FEMA system.

14        MR. SCHMIDT:  Location.

15        MR. MEUNIER:  Location of where the unit was:  Texas,

16   Mississippi, Louisiana or Alabama.  The second thing once you've

17   got the location is the FEMA ID number.

18        And as we're hearing, and as I've told Judge Engelhardt

19   and I'll say here, a lot of the clients don't have their FEMA ID

20   numbers.  But I think it behooves all plaintiff counsel to do

21   everything possible on our end with due diligence to make sure that

22   they don't have, to get it if they have it; and if you're

23   absolutely certain there is no way we can come up with it and then

24   we go to the next step, which is to ask, if with the government's

25   help, we cannot make the match without a FEMA ID number.

1          But I think it behooves us to get the ID number from the

2   client, it is on some information that they received from the

3   government.

4          THE COURT:  My understanding is that if you have the FEMA

5   ID number, you are way ahead on the game board than you would be if

6   you submitted a name.

7          MR. SCHMIDT:  I think most of them would have a FEMA ID

8   number.

9          THE COURT:  That would be very, very helpful and would

10  get you much furtherer along with the FEMA ID number.

11         MR. SCHMIDT:  Another question, your Honor.  It's a

12  little off this topic, but we sent in a number of I-95s.  How can

13  we decide -- how can we find out if the government actually

14  received it?  Does the government keep a list of the I-95s for each

15  claim that comes in and how can we access that list?

16         THE COURT:  Let me let Mr. Miller respond to that.

17         MR. MILLER:  Your Honor, in fact, I received an e-mail

18  from Mr. Schmidt asking me to list all of his clients who submitted

19  an I-95.  I have to assume Mr. Schmidt knows who he submitted I'95s

20  on for his clients and the dates that he sent it out to FEMA.

21  That's the best source.  FEMA does not keep a list by attorney.

22         To the extent that you provided it, it's considered

23  Privacy Act information, we're not allowed to release it back to

24  you.

25         You also asked about Mr. Raul Bencomo's list, I can't

```
 1    issue that to you even if we had it in terms of the Privacy Act.

 2    Mr. Bencomo would have to request that.

 3              FEMA is the arbiter.  When you file an administrative

 4    claim, FEMA has the claim and FEMA basically has a right to

 5    adjudicate the claim, resolve the claim based at that point.

 6              If after six months FEMA has not resolved it, you have

 7    the right to file suit in this court or the appropriate venue.

 8              MR. SCHMIDT:  I didn't make myself clear on the record.

 9    How do I know you received it?  I know the data I sent you.  But

10    what if you say, well, I sent 300, I sent it certified mail but

11    there's 20 of them that you said you didn't get them.

12              MR. MILLER:  If you sent them certified mail you have the

13    certified mail receipt, that solves the problem.

14              MR. SCHMIDT:  I am just saying if -- how do I know that

15    you received them?  Do you all keep a list and you could say yes?

16              MR. MILLER:  The answer is no, there is no such list.

17              MR. SCHMIDT:  Why isn't there a list?

18              MR. MILLER:  Because I think FEMA has 40,000 claims they

19    received and haven't been able to process them all.

20              THE COURT:  As I understand what Mr. Miller is saying,

21    they deal with them individually when they get them, they don't

22    compile them in any kind of list.  If you have a green card back

23    from the mail that indicates that it's been properly addressed and

24    there is a signature indicating it's been received, then I think

25    you're entitled to rely upon that.
```

1          MR. SCHMIDT:  Some of ours we sent by Federal Express in

2    bulk.  So if they go in bulk by Federal Express, of course they

3    received it and we have that list.  But what if they say, well,

4    you've got 300 you sent but we only have 270?  Do you know what I'm

5    saying here?  I am sending them by Federal Express, they got there.

6    I don't think it's unreasonable to have a list or to log in on the

7    computer, everybody else has computers, to put a person's name down

8    when you received it.

9          MR. MILLER:  Can I just point out this becomes an issue,

10   your Honor.  If after the plaintiff files suit, he has filed suit

11   prematurely.  As long as you file suit after six months, when you

12   believe it was received and you have the facts that you can prove

13   it, you're going to satisfy the jurisdictional requirements.  So

14   you have a Fed-Ex label that shows it was mailed off, you have a

15   list of the claims that were submitted, that's your evidence.

16         MR. SCHMIDT:  Okay.  That's all I wanted to know.  That's

17   all I needed to know.

18         THE COURT:  Come on up.  There was another question in

19   the back row though, too.  He had his hand up and then we'll get to

20   your question.

21         MR. GARSIDE:  Good morning, your Honor, Clay Garside on

22   behalf of the family named the Huckabees and the parents of an

23   infant named Dynasty Trang who died in a FEMA trailer in the summer

24   of 2007.

25         Regarding this issue, I would like to ask the court just

1   to take the next step.  If the parents of Dynasty Trang just don't

2   have their FEMA ID number, they're not native English speakers,

3   they're basically itinerant workers at this point, they just don't

4   have it.  I submitted the information I have, which is everything

5   else, and the government just declined to respond.  Do they have to

6   do some due diligence to find it?

7           THE COURT:  Submit it to liaison counsel.  You've given

8   the names to liaison counsel?

9           MR. GARSIDE:  I've given everything except the ID

10  numbers.

11          THE COURT:  They'll see what they can do to locate it.

12  But it is going to take some doing for them to find that.  If you

13  haven't heard anything, it may not be as simple as just popping in

14  a name and coming up with a number.  They will try to find it.  My

15  understanding is that they have the name, they will try to find it.

16  But it's going to take some time and it's not nearly as expeditious

17  as if we had numbers on the front end.

18          MR. GARSIDE:  Right.

19          THE COURT:  The point is, if you can get the number, if

20  your client has documentation, any documentation, you all can scour

21  that documentation, try to identify the number which would be of

22  great help to the court.

23          MR. GARSIDE:  I understand.

24          THE COURT:  So, look, I can't sit here and respond an

25  inquiry about everybody's separate cases.

1          MR. GARSIDE:  The question basically is the response I

2   believe I got was we decline to look for it because you don't have

3   the FEMA ID number.  Is that sufficient, do they have a duty to --

4   as I understand also --

5          THE COURT:  Your client has a duty to have that number.

6   Your client has a duty.  All right.  If they don't have it and if

7   that somehow comprises their case, then it comprises their case.

8   If they can find it, they're going to try to find it.  I've

9   encouraged them to do so.

10         But don't come in here, I am not talking to you in

11  particular, don't come here and drop a bunch of names and expect

12  someone else to do the work if there's a way for you to get that

13  number.  The number is important.  I've said it at least twice

14  already, Mr. Meunier has said it and Mr. Miller has said it.

15         MR. GARSIDE:  I understand.

16         THE COURT:  So if you can get the number, I am talking to

17  everybody, not just you, if you can get the number you're doing

18  yourself and everybody else a world of good.  If you can't get the

19  number, get it to liaison counsel, they will see if the government

20  can try to find a number that matches up with that name.  Hopefully

21  they will, and in your case I am going to encourage them to do

22  that.

23         But they don't have a duty to -- in my opinion they don't

24  have a duty to undertake that with regard to every name that they

25  get.

1        MR. GARSIDE:  And in that regard, can I clarify for the

2    people who aren't in the inside, I have no authority to issue any

3    discovery requests, is that correct, as just an individual, you

4    know, plaintiff?

5        MR. MEUNIER:  Let me respond to this, Judge.  I think

6    this is a legitimate issue.  For those people who have done

7    everything they can as plaintiff lawyers to find the FEMA ID

8    number, which is the way you match, and they can do nothing else

9    and they can't conduct formal discovery and the clock is ticking on

10   the statute of limitation, I think there is an equitable tolling

11   issue here.  And I think, with all due respect to the court, it

12   does become incumbent on the defendant which holds the information.

13       Because remember, once upon a time FEMA had a number you

14   could call and you could give them your name and the location and

15   they would look in their system and they would find the

16   information.  So they're the ones holding the information.

17       I would say with respect to this gentleman, that if there

18   are situations where everything has been done and we can

19   demonstrate to the court due diligence has been exhausted on our

20   end, that I would wrap those cases together, bring an appropriate

21   motion and order, ask the court to direct FEMA, if they're not

22   willing to do it voluntarily, to by a date certain search for and

23   come up with that information.  If we can't do anymore and it's in

24   their hands.

25       THE COURT:  The key to what Mr. Meunier just said is due

1    diligence on the plaintiff's side.  If you have done all of that,

2    if you have visited with your client, if you have gotten your

3    client to produce to you all of the documentation they have, if

4    any, some people may not have any, if you've exhausted every avenue

5    to try to get that number, then we are going to try to get that

6    number from whatever sources we can within the government.

7         But do they have a duty upon the presentation of a name

8    to go and find that number?  I am not going to go that far and I

9    don't think that they do.  From what I understand from Mr. Miller,

10   they'll try to do that.  If you were told that they absolutely

11   won't do it, I suggest to you to get that name to liaison counsel

12   so that they can submit that name to the government based upon the

13   conversation that I had with them this morning.

14        MR. GARSIDE:  Okay.  Thank you, your Honor.  Thank you.

15        MR. MILLER:  Your Honor, if I can --

16        THE COURT:  Unless it has to do with this, Henry, why

17   don't I go ahead and hear from this gentleman, he's been patiently

18   waiting.  Go ahead.

19        MR. LAMBERT:  Thank you, your Honor, Hugh Lambert.  Your

20   Honor, during the deposition of one of the no-bid contractors --

21   and I am not sure if it was CH2M Hill or Bechtel Corporation, I am

22   just not sure, could have been Fluor -- there is a provision in the

23   contract which requires the government to keep electronically on a

24   CD ROM a list of information which was described during the

25   deposition as being on an Excel spreadsheet.  And that was required

1    by these contractors to maintain maintenance logs.

2              And according to the witness, and I would be happy to

3    present the court at a later time through liaison counsel the

4    particular pages of the deposition testimony that I am asking the

5    court to consider.  The information of this ID number, the

6    location, the physical location of the temporary housing unit or

7    emergency housing unit, however you want to phrase it, the

8    individual who occupied that unit, in other words, the head of the

9    household or whatever, the date that that unit was put in service

10   with that individual, if it was decommissioned, the date that it

11   was decommissioned, and all of this is required to be kept

12   electronically by the no-bid contractor.  A copy of it is required

13   to be sent to FEMA.

14             In the contract it's required that that information be

15   held for a certain period of time, and I am not sure exactly how

16   long, two years, maybe three, I don't remember the detail.  And the

17   argument is privileged information, Privacy Act.  I would ask the

18   court to consider asking the government to provide you with that CD

19   ROM, just you, so that you could view in camera what information is

20   available.

21             It's also supposed to contain the maintenance complaints.

22   For example, my roof's leaking or whatever, my furnace doesn't

23   work, for that particular unit.  If you would look at that and make

24   a determination as to whether or not it can be redacted so as to

25   only provide to the list of individuals who liaison counsel has

```
1    satisfied your Honor that we have the authority to get it so it
2    doesn't violate any sort of privacy issues, it seems to me like
3    that would solve a ton of problems with judicial efficiency,
4    without putting unnecessary hurdles in front of plaintiffs,
5    allowing the defendants to protect the information that's not
6    included in this litigation.  And if you would look at it and make
7    the determination if it's really there and that simple, I think
8    that this whole issue could be resolved.  So my --
9              THE COURT:  I am not quite sure -- I don't have a motion
10   in front of me such that I would conduct an in camera inspection.
11   From what you're describing, it wouldn't surprise me if that exists
12   in the form that you say it does and what the witness testified to.
13             MR. LAMBERT:  It does.
14             THE COURT:  But why would I be looking at it at this
15   point without a discovery request even having been made?
16             MR. LAMBERT:  Maybe I should make that discovery request.
17             THE COURT:  Yeah, I think so.  And if there's a
18   dispute --
19             MR. MEUNIER:  I just asked Mr. Woods if we had a formal
20   discovery request pending that would cover what Skip is talking
21   about and the answer is no.  But we will file one forthwith,
22   proceed with a motion to compel if we need to, bring it to the
23   magistrate and to the court.  I think it's an excellent way to
24   proceed.
25             Thank you, Skip.
```

1            MR. MILLER:  Your Honor, I had actually discussed this

2     with Mr. Lambert, and, in fact, I suggested that the way to go was

3     Privacy Act prevented us from just handing it, that they basically

4     should request it, and if the court believes the Privacy Act should

5     be waived, then the court can do that.

6            THE COURT:  Right.

7            MR. MILLER:  That was the only way I could handle it.

8            THE COURT:  Okay.

9            MR. D'AMICO:  Your Honor, with respect to Fluor under the

10    Aldridge case, we have requested that information.

11           THE COURT:  Okay.  All right.  I mean, that's all fine

12    with me.  I don't have any problem with any of that.  This

13    suggestion that somehow having the FEMA ID number that if

14    plaintiffs' counsel can find the FEMA ID number, I don't view as a

15    hurdle.  I think that's the term you used just now that this is

16    somehow a hurdle, I don't view it as a hurdle.  Either they have it

17    or they don't.  The only way to know if they have it is to look for

18    it.  Some people will have it, most people I hope will have it, and

19    some people won't.

20           But I don't think it's an unreasonable thing for an

21    attorney to ask a client, since you're doing the Plaintiff Fact

22    Sheets anyway, for the FEMA ID number if they have it.  And that's

23    where this whole thing begins, regardless of who else has it.

24    Maybe somewhere in the government's possession, may be somewhere in

25    a third party's possession, may be somewhere in the manufacturer's

```
 1   possession, but it really starts with plaintiff's counsel getting
 2   the appropriate information about his or her client.  And I am
 3   going to emphasize that you all really need to do that and that's
 4   not a hurdle.  All right.
 5            MR. MILLER:  Your Honor.
 6            THE COURT:  Go ahead, Mr. Miller.
 7            MR. MILLER:  Your Honor, the two things that I wanted to
 8   point out is that there have been approximately I think 42 new
 9   complaints filed that named the United States as a party, and I
10   just wanted to advise all plaintiffs counsel that under the Federal
11   Rules of Civil Procedure Rule 4(i) you need to effect service in
12   compliance with those requirements.  And until that service is
13   effected, the time period for the United States issuing an answer
14   does not begin to run, and the United States gets 60 days basically
15   from the time the complaint is served.
16            Secondly, if you don't effect that service within 120
17   days, the court has the discretion and the ability to dismiss that;
18   and that motion has actually been teed up on some other cases where
19   those cases were eventually voluntarily dismissed.
20            The second thing is, just to put thing s into
21   perspective, if we do not have the FEMA number, we tried running
22   name searchs back last spring and we were only coming back with a
23   27 percent match.  So if you do not have your FEMA ID number, there
24   is a large risk that we will not be able to match up your client's
25   name.  It is in your best interest to get that, as well as the fact
```

1   that the Plaintiff Fact Sheets require the plaintiffs to provide

2   that and cert that.

3          Obviously if they do not have any way to find it and it's

4   impossible for them to do it, we will try to dig up that

5   information for them.  But it is a substantial expense to the

6   government if it has to do that, it's multiple searchs, where the

7   FEMA ID number and the state, we can match fairly readily.

8          As to I think it was the plaintiff's counsel from Mr. --

9   the Huckabees, designated Exhibit 11 was submitted to the

10  government on March 6th.  The problem we had with that is that none

11  of the claimants names had any FEMA identification number, there

12  was not one of them.  And I basically rejected that and considered

13  deficient because there were no matches.  If, in fact, there is one

14  person they cannot match up, they've done the due diligence, the

15  government will attempt to run that search.

16         But clearly this is not the general rule and that's what

17  I really want to stress here.  You need your FEMA ID numbers.

18  Thank you, your Honor.

19         THE COURT:  All right.  Mr. Woods.

20         Oh, okay.  Mr. Woods, did you want to add anything or

21  Mr. Meunier?

22         MR. MEUNIER:  I think he worked it out.  The only thing

23  on service I wanted to add is that there has been no agreement with

24  manufacturing counsel or contractor defendant counsel to waive

25  service, so all formalities of service are in play and all

1   plaintiffs counsel should be aware of that with respect to new

2   filings.

3             THE COURT:  Right.

4             MR. MEUNIER:  Judge, I think the next section deals with

5   bellwether trials.  This court by prior order has scheduled four

6   trial dates beginning, the first being this September, and those

7   are a matter of record.

8             On Monday the parties are obliged to submit to the court

9   the names of nominees for bellwether trial plaintiff selection.

10  The lists are divided by the four manufacturers who are currently

11  scheduled to be in those trials, and pursuant to a discussion with

12  the court this morning that I want certainly all counsel for

13  plaintiffs to be aware of, we now at our request have been afforded

14  by you an opportunity, among the parties, to study the nomination

15  pool on Monday and have some time on our end to perhaps agree on

16  the selection of bellwether trial plaintiffs that we would regard

17  as instructive and propose those names to the court.

18            And as I appreciate it, we have until Thursday for that

19  process.  So following the submission of the names on Monday, we

20  will have until Thursday to come up by agreement, to come to an

21  agreement about bellwether selection.  And failing that, we will

22  have an opportunity on Friday to make objections to the nominations

23  made by all parties; and thereafter, as I appreciate it, will go

24  forward depending on whether we have an understanding among

25  ourselves or the court will have to select those plaintiffs.

```
 1            THE COURT:  Right.  That's correct.  That's the

 2   conversation that we had this morning.

 3            So as I understand it, hopefully by the end of next week,

 4   assuming you all can agree, we should have the bellwether

 5   plaintiffs identified.

 6            MR. MEUNIER:  Yes.

 7            THE COURT:  Am I correct in that?

 8            MR. MEUNIER:  Yes.

 9            THE COURT:  And if you can't agree, then I will make a

10   choice, which I will try to do by the end of next week or the week

11   after.

12            MR. MEUNIER:  And in each case, Judge, the plan is to

13   proceed one plaintiff against a single matched manufacturer --

14   specifically one of the four who has already been designated as

15   holding the largest inventory shares, if you will -- one matched

16   contractor.  But I do want to emphasize here for those present that

17   there are four what we refer to as no bid contractors.  One of

18   those four Bechtel is not an Eastern District of Louisiana suable

19   contractor, and under the rules of the MDL, the Lexicon doctrine,

20   this court is not empowered to conduct bellwethers as to non-LAED

21   defendants unless that's done by agreement.

22            So at the moment, we anticipate that the four bellwether

23   trials will be naming three separate manufacturers -- I'm sorry,

24   contractors, one of whom may have to go twice, if you will.  And

25   those are Shaw, Fluor and CH2M Hill.
```

1          And then in each case also we're obliged to present

2     claims against FEMA that are both ripe, that is six months have

3     passed from Form I-95, and viable under the court's discretionary

4     function immunity ruling which narrowed the theory of fault as to

5     FEMA.

6          THE COURT:  Right.  Does anybody have any question about

7     the bellwether, the setting of the bellwether trials and the

8     selection process?  Okay.

9          Let me also point out, this is probably the appropriate

10     place to point out that we have had some defendant manufacturers

11     file for bankruptcy protection.  My listing of those, and this will

12     appear in the report that's filed into the record here, but my

13     listing would be Monaco Coach Corporation, R-Vision, Inc.,

14     Fleetwood Enterprises, Pilgrim International, Patriot Homes, and a

15     manufactured home defendant Oakwood Homes, LLC, are currently under

16     Chapter 11 bankruptcy protection.

17          That schedule, by the way, for the bellwether trials is

18     currently set for the first to take place on September 14th, 2009;

19     the second, October 26, 2009; the third, December 7th; and the

20     fourth, January 11th.  You might want to amend this, Justin, when

21     you revise, it's 2010 for letter D.

22          MR. WOODS:  Yes, your Honor.

23          THE COURT:  Okay.  I meant to mention this in my meeting

24     with the committees this morning, but I would certainly cover this

25     with the group anyway.  My intent as we sit here today is to put

1    together some type of jury questionnaire form that we would send

2    out well in advance of these trial dates.  Insofar as what that

3    form would include, I would hope that counsel, you all perhaps have

4    already been discussing it, at least amongst yourselves on each

5    side, but it probably is not too early for you all to be giving

6    that some thought.

7            I have some sample forms that have been used for cases

8    here in the Eastern District.  But in terms of what form we're

9    going to use, it will certainly be a collaborative effort.  And so

10   I will ask you all to start giving that some thought.  I'll do the

11   same and maybe we can start putting pen to paper sometime between

12   now and our next status conference so that we can have a draft that

13   we can start kicking around as to what we're going to send out for

14   the first bellwether trial.  Yes.

15           MR. BECNEL:  Robert Becnel.  In conjunction with what

16   Mr. Meunier just said on the trial schedule, I noted the date of

17   January 11, 2010 also, which should be amended as to take Bechtel

18   Corporation out since they're not an Eastern District no-bid

19   contractor.

20           THE COURT:  Yes, I see them.  They're listed here and

21   Mr. Meunier just pointed that out so we can probably go ahead and

22   remove them from this listing.  Do you have that?

23           MR. MEUNIER:  Yes, we have it, Judge.

24           THE COURT:  All right.  Yes.

25           MR. PERCY:  Jim Percy on behalf of Keystone RV, your

```
 1   Honor.  It's my understanding as a result of the chambers

 2   conference that the schedule for the trials of bellwether

 3   plaintiffs as to the manufacturing defendants, the order, and this

 4   is very important to my client and others, would be Gulf Stream is

 5   pencilled in as the first scheduled trial, Fleetwood second, Forest

 6   River third and Keystone fourth; is that correct, your Honor?

 7           THE COURT:  That's correct.  That's the order in which

 8   they have been identified.  In other words, we need to find and

 9   we're going to find through the process we've described a little

10   while ago a plaintiff matched to one of those manufacturers to go

11   to trial on those dates that you've associated with each

12   manufacturer.

13           Now, of course we do have the issue of Fleetwood's

14   bankruptcy and we're going to determine, we haven't determined

15   today, but we've discussed whether or not Fleetwood will actually

16   be a defendant on the second of those bellwether trial dates.

17   Counsel are going to confer and advise as to whether or not the

18   bankruptcy is going to prevent Fleetwood from being a defendant.

19           My intent, and I've told the liaison counsel and the

20   committees, is that if Fleetwood is not going to go to trial on

21   that day in light of the bankruptcy, that another defendant -- and

22   counsel can discuss what other defendant could be substituted -- we

23   will identify a case to go to trial for a bellwether trial on that

24   date.  So that's the game plan right now.

25           As of now, Fleetwood is going to remain pencilled in as
```

1    the defendant on the second of those dates, which is the

2    October 26th trial date.

3              MR. PERCY:  Thank you, your Honor.

4              THE COURT:  All right.  Anybody have any questions about

5    the bellwether trials, the selection process, the scheduling?

6              We are going to talk a little bit more about discovery at

7    this point.  Mr. Meunier, you want to go ahead and cover that?

8              MR. MEUNIER:  Yes.  Judge, as reflected in the joint

9    report, which will be filed in the record, the PSC contemplates

10   simultaneous, three simultaneous but separate discovery tracks:

11   One dealing with general merits issues; one dealing with insurance

12   coverage and limits, which is obviously important given the state

13   of affairs with the bankruptcy filings and in the RV industry; and

14   then third, the bellwether specific plaintiff discovery.

15             It is critical that there be coordination.  We know there

16   will be overlapping depositions and overlapping discovery.  We're

17   committed as plaintiffs liaison counsel to do everything we can to

18   prevent there from being conflicting or uncoordinated activity on

19   our end.  We're going to organize into teams, we'll have separate

20   teams with separate chiefs all coordinating through liaison to make

21   sure that we don't run into problems with it.

22             And I think we have a way to do this without involving

23   the court and the magistrate, but it is going to be simultaneous

24   discovery tracks which require coordination.  I would ask that any

25   plaintiff attorney who feels the need to conduct discovery or have

 1    discovery conducted on behalf of his or her clients, please

 2    coordinate with Justin Woods and me so that we can incorporate

 3    those efforts through our organizational structure.

 4            THE COURT:  I think that goes back to something that

 5    Mr. Garside had raised.  Does that answer your question or did you

 6    want to -- you mentioned discovery and your question was or rather

 7    your statement was I understand that I can't do discovery.  I think

 8    Mr. Meunier answered the question; but in case he didn't for the

 9    benefit of everybody, did you have any follow-up on that?

10            MR. GARSIDE:  No, your Honor.

11            THE COURT:  Okay.  All right.  Thank you.  And thank you

12    for raising it, too, because I knew it was coming up later on the

13    agenda but I appreciate you raising it.

14            MR. WEINSTOCK:  Your Honor, the other issue -- I'm sorry,

15    Andy Weinstock, defense liaison.

16            The other issue that's come up on match discovery is that

17    the PSC is going to redraft the master written discovery on merits

18    issues to send to the defendants so we can start getting to a

19    resolution of the E-discovery issues and thereafter depositions

20    that need to be taken, obviously with those documents available and

21    not before those documents become available, which would subject

22    the witness to two depositions.

23            It's my understanding the PSC is going to go back and not

24    only redraft the discovery but redraft the plan in which they want

25    to approach dates and depos and all of that following the written

1   discovery.

2          MR. MEUNIER:  That's correct, Judge.

3          THE COURT:  All right.  And that's an important point.

4   For the sake of the deposition process, we've got to make certain

5   that it's conducted in the proper order and that we don't get the

6   cart before the horse, given that documents are simply going to be

7   essential to the deposition process, we're going to have to make

8   certain that the document discovery is conducted timely and in the

9   appropriate order.

10          So we're going to try to tee up the document discovery, I

11  guess on all three tracks if I am not mistaken, sooner rather than

12  later so that we don't have to redepose anybody and we certainly

13  wouldn't want to allow anyone, the plaintiff or the defendant, to

14  have to sit for another deposition based upon documents that

15  existed prior to the first but were just never obtained.  So let's

16  make sure that when you depose somebody, you depose them with the

17  benefit of all of the information needed to conduct a complete

18  deposition such that there will not be a redeposition.

19          All right.  We also discussed the issue of another master

20  complaint being filed relative to the contractor defendants.  I am

21  cognizant of the fact that when they are added as a party to the

22  bellwether trials, the contractor defendants, the entities that are

23  going to participate in each of those bellwether trials will bring

24  Rule 12 motion practice in connection with those trials.

25          I think what we envision, Mr. Meunier, you can describe

1    this maybe in more detail better than I can, but what we're

2    contemplating is that there will be Rule 12 issues by the

3    contractor defendants that would be general enough to apply to all

4    plaintiffs.  And in the interest of saving time for everybody and

5    resources, certainly so that we don't have piecemeal treatment of

6    these issues by plaintiffs, that those can be raised in response to

7    a future master complaint.  And the court's rulings -- they can

8    brief it once, plaintiffs can respond once, we can get those issues

9    resolved.

10             MR. MEUNIER:  Exactly, Judge.  As I see the schedule with

11   the bellwether trial schedule being what it is, there will be some

12   12(b) motion practice by contractor defendants no doubt in response

13   to a bellwether plaintiff selection and the complaint by that

14   bellwether plaintiff.  However, the master complaint to us remains

15   a very important administrative tool, and when there are a

16   sufficient number of underlying actions filed which bring forth

17   claims, certainly defendants like the contractors who have not

18   heretofore been before you on a global common basis, we do propose

19   to amend the master complaint, incorporate into it as an

20   administrative device all of those allegations against all of those

21   defendants who have been brought in, and this will give you a

22   chance to dispose as an MDL judge of common issues pursuant to

23   12(b) motion practice, etc.

24             Unfortunately, I don't think we're going to be able, as

25   we discussed in chambers, to await dealing with all of the common

 1   issues of the contractor defendants that way because the bellwether

 2   trial schedule is going to see to it that we come sooner to that

 3   point.  But I think we'll end up with a both and situation.

 4          And I am asked from time to time about the master

 5   complaint, plaintiff lawyer wanting to know are we going to amend

 6   it, what are we going to do with it?  We do intend to amend it, we

 7   want there to be a sufficient number of underlying cases filed to

 8   make the amendment meaningful for the purpose of summarizing

 9   presenting issues for common disposition.  My thought was, and I

10   think this is reflected actually in an order that might be posted

11   soon by the court, is we will have an announced date certain of

12   August 1 by which we say file your underlying actions, there are

13   good reasons to do so dealing with the statute of limitation, but

14   file your action by that date.

15          And assuming that we have a sufficient population filed,

16   we will then follow with an amendment to the master complaint which

17   will lead to 12(b) motion practice.  But, of course, by then we

18   will have reached some of that with the bellwether trials.

19          THE COURT:  Let me ask you this.  The amended complaint

20   as we envision it today, is it going to be more in the way of a

21   supplement such that the claims against the contractor defendants

22   can be stated or is it going to be an amendment that's going to be

23   more encompassing relative to claims against manufacturing

24   defendants or claims again the government?  I think we already have

25   a master complaint that covers all of the states involved and all

 1    of the claims under state law for each of those states.

 2            MR. MEUNIER:  We're not interested in revisiting with an

 3    amendment matters that either were or should have been addressed

 4    previously as to the government and the manufacturers.

 5            THE COURT:  Okay.  Good.

 6            MR. MEUNIER:  So I think the amendment is focused on the

 7    newly added defendants and the claims against them.

 8            THE COURT:  So it's again, not to be hypertechnical about

 9    names, it's more like a supplemental.

10            MR. MEUNIER:  It will be supplemental, yes, your Honor.

11            THE COURT:  Okay.  Supplemental master complaint.

12            Is there anything else on the report, counsel, that any

13    of you all would like to mention?

14            MR. MEUNIER:  There is another correction we want to

15    make.

16            MR. D'AMICO:  Your Honor, as to the, C, page 12 -- Frank

17    D'Amico on behalf of the PSC -- the bellwether trial selection

18    discovery.  The PSC has made available for deposition one

19    individual, it says two, one was selected by the PSC as their

20    selection so we went forward with one deposition yesterday.

21            THE COURT:  And this is on the Forest River case?

22            MR. D'AMICO:  Yes.  For the limited purpose, because we

23    added new Plaintiff Fact Sheets at the last minute, we allowed this

24    deposition to go forward.

25            THE COURT:  So we need to correct that to say one instead

1   of two?

2         MR. D'AMICO:  That's correct, your Honor.

3         THE COURT:  All right.  Anything else with regard to the

4   report?  Mr. Weinstock, anything?

5         MR. WEINSTOCK:  No, your Honor.  But I believe we agreed

6   in chambers we would remove the attachment, we would take out

7   Section IX, all reference, too.

8         THE COURT:  Right.  And Mr. Miller, Mr. Dinnell, anything

9   from the government?

10         MR. MILLER:  Nothing further from the United States, your

11   Honor.  Thank you.

12         MR. MEUNIER:  Judge, there is a final section

13   Miscellaneous in the report, it does deal with something that is

14   important and that is the testing of the units.

15         My understanding from your Honor is that you want these

16   bellwether plaintiff cases to involve units that have been tested.

17   That is certainly our expectation and understanding.  But to the

18   extent that there is a selected plaintiff whose unit for some

19   reason has not been tested, we do have an agreement with Mr. Miller

20   that expedited efforts will be undertaken to get that unit tested

21   believing that it is somewhere stored by the government and test

22   results might be of some help.

23         THE COURT:  Hopefully, yeah, it will be available and can

24   be submitted for testing in short order.  There was at one time,

25   and maybe we don't need to go there today, but there was the idea

1    of the statistical analysis, which is still on the table but is

2    not, I would think is not going to be relevant for the bellwether

3    trials.

4           MR. MEUNIER:  That's true, Judge.  And it remains to be

5    seen when and how that statistical model will be presented to you

6    for scrutiny.  We frankly have invested a lot of time and money in

7    that model and we undertook it, as you know, when the class action

8    was pending because we didn't want any absent claimants in this

9    case to be premised by the fact that the government had dispose of

10   this property and yet by the time that plaintiff came forward, that

11   may have happened and the evidence would be lost.

12          So what we have is what we believe to be a reasonable

13   model that will substitute for actual test results, a probable

14   result based on the model.

15          It was my understanding that, at least for this first

16   series of bellwether trials, the court was not inclined to bring

17   the model in to play, if you will.  It does introduce Daubert

18   issues, it does introduce a whole different area of scientific

19   analysis, and our belief was that if we proceed at least in the

20   first series of bellwether trials with actual results then later we

21   can address a unit, the results of which would depend on this model

22   coming into evidence.

23          THE COURT:  All right.  That's correct.

24          Let me again open the floor to further discussion about

25   either anything we've already talked about up to this point or any

```
 1    new issues that any of you all would like to bring up.  Yes,
 2    Mr. Schmidt.
 3              MR. SCHMIDT:  Doug Schmidt.  I wasn't in the meeting, of
 4    course, this morning, and I just wanted to say if you could clarify
 5    about filing our lawsuits.  We can't file it into the MDL?
 6              THE COURT:  Can't file directly into the MDL.
 7              MR. SCHMIDT:  So how does that effect our prescription
 8    problems?
 9              THE COURT:  It shouldn't effect your prescription.  To me
10    it's a separate issue.  You will have to file them in the
11    appropriate venue and jurisdiction, whether it's state court or in
12    another district of federal court, at which point they're going to
13    be undoubtedly removed from state court and then they'll be sent to
14    the MDL.
15              So from my point of view, and perhaps from many of your
16    points of view, that involves the additional step or steps plus the
17    consumption of time and perhaps even the consumption of -- maybe on
18    the defendant's side some fees and costs involved.  I would like to
19    see, I would like to see a different process, one that's more
20    streamlined.  But we haven't achieved that yet and I can't order a
21    different procedure --
22              MR. SCHMIDT:  So it has to be agreed on by the government
23    and the manufacturers before we do that?
24              THE COURT:  In the Vioxx case it was agreed to by the
25    manufacturer.
```

1          There are other issues that have come up relative to the

2     government's status as a defendant under Federal Tort Claims Act

3     provisions that can't be ignored in my opinion.

4          MR. SCHMIDT:  Now, let me ask you this, your Honor.  Are

5     we going to be able to string file these in these other

6     jurisdictions?  I mean, if you have 3,000 clients, are they going

7     to make you pay a fee of $340 each client and so you have to pay $1

8     million filing fees which you can put it into an MDL?

9          THE COURT:  I don't know how they do it elsewhere and I

10    don't want to comment on what our clerk's offices are going to

11    require.  I certainly hope not.  I don't know that there is a

12    prohibition between combining the claims of the plaintiffs in a

13    single action, I hardly think that that would be the case.  But

14    that's an issue that you're going to have to take up and perhaps

15    you can work something out between liaison counsel and defense

16    counsel.

17         MR. SCHMIDT:  Not to belabor the point --

18         THE COURT:  It is a good point and it is a laborsome

19    point, so I am glad you're asking this.  Look, I am with you that

20    there's got to be a better way to do this, but go ahead.

21         MR. SCHMIDT:  The only thing I would say, I really hope

22    we can put our heads together on this because it's been done in

23    Minnesota with the devices, it's been done all over.

24         THE COURT:  Oh, I know.

25         MR. SCHMIDT:  It's so complicated that we can't get it

```
 1    going.  I mean, justice, let's get justice served.  Let's get the
 2    ball rolling.
 3              THE COURT:  In all of those cases, the ones that you've
 4    just mentioned, I don't know the other ones that you're thinking
 5    about, but in all of the cases that I have looked at, they did not
 6    involve the government as a defendant.  And I don't mean to keep
 7    putting the goat horns on the government here, but the provisions
 8    of law that they are citing relative to Federal Tort Claims Act
 9    filing are pretty clear in my mind and it can't be ignored.
10              MR. SCHMIDT:  You don't have the authority to waive it or
11    overrule it?
12              THE COURT:  Not based on what I have read from plaintiffs
13    at this point.  I don't think that I can order them to waive a very
14    clear provision of the Federal Tort Claims Act.  I can encourage
15    them to do that and I've done that, to either come up with, either
16    agree with the plaintiffs and the defendants to agree to a direct
17    filing mechanism here, which would be my preference; or to come up
18    with some other way to expedite the submission of claims directly
19    into the MDL.
20              MR. SCHMIDT:  I really appreciate your efforts.  Thank
21    you, your Honor.
22              THE COURT:  While I am encouraging it as vigorously as I
23    can, I am duty bound not to ignore the law.  I am not suggesting
24    that you're saying that I should, but I am just saying having
25    looked at the briefs and when you look at the order I submitted
```

1    today, it basically says that for the reasons stated by the

2    government in its brief, I don't feel like I am authorized to do

3    that.  If I can be convinced otherwise, I certainly would.  But I

4    am sure the government would want to weigh in on it again.

5          So I am sympathetic to your plight and I am very much

6    open to any resolution of that.  From my point of view it slows

7    down the progress of the case; from your point of view you have the

8    issue of financial costs.  It's a lot messier, so.

9          MR. MILLER:  Your Honor, Henry Miller for the United

10   States.  Just to point out to plaintiffs counsel, what I would

11   suggest, having worked with MDL before, when you file in another

12   jurisdiction, all you have to do is send a letter to the

13   Multidistrict Panel notifying them simultaneously that this case

14   has been filed and it arises out of the same circumstances and

15   facts as this MDL action.  The MDL court will then automatically

16   transfer it over so it is not that laborsome as it may seem.

17         You just have to file your action in the appropriate

18   venue, a Mississippi case, Alabama case or Texas case, immediately

19   shoot a letter up to the MDL panel in Washington, and they will

20   automatically transfer based on that.

21         THE COURT:  The clerks offices should know and are all

22   too willing to send cases here, which is fine with me.  I have told

23   the clerks of all three districts in Louisiana and I have told

24   several of the judges in other districts to please, whenever one

25   crosses their desk or their counter, to please tag it to come here

```
1   directly and as promptly as possible.  So, you know, I am all in

2   favor of expediting it.  They're going to wind up here eventually

3   so let's get them here and deal with them here.

4           All right.  Anybody have any other issues that we want to

5   talk about before we adjourn?  Anything at all?  Questions,

6   comments?

7           MR. PERCY:  Date for the next status conference, your

8   Honor.

9           THE COURT:  Oh, good point.  Let's see.  Does anybody

10  have any objection to sometime in June or July, a Friday in June or

11  July?  Do we need one sooner, do you think, or do you think we need

12  one later than that?  I would prefer not to go later.

13          MR. MEUNIER:  Judge, I think maybe sooner, maybe May.

14          THE COURT:  Okay.  How does May 8th look for you all?  I

15  need to double check something, May 8th or May 1st.

16          MR. MEUNIER:  I think May 8th is better.

17          THE COURT:  May 1st actually is not, I'm looking at it

18  now, is probably not the best date for me either.

19          Let me double check on something on May 8th.  If everyone

20  can do May 8th or most of us can do May 8th, does that work?

21          MR. MEUNIER:  Yes, your Honor.

22          MR. WEINSTOCK:  Yes, your Honor.

23          THE COURT:  Let me just double check, Pam's going to

24  check on one thing, and we will do again 8:45 with the committees

25  and 10 o'clock hopefully back in my regular courtroom.  They've
```

1   promised me that it's going to be finished by April 17th, but you

2   know how that goes.

3          Let me double check when Pam comes back.  May 8th looks

4   like the best date.

5          The Fifth Circuit Judicial conference starts on May the

6   3rd, it's the weekend before and ends, for those of you who might

7   be attending or be involved in it, I believe it ends on Wednesday,

8   May the 6th.

9          Let's go ahead and take May 8th, 8:45 and 10 o'clock.

10          And in the meantime if any issues come up, counsel know

11   to contact me.  All right.  Good.  Thank you all very much.

12          MR. WEINSTOCK:  Thank you, your Honor.

13          MR. MEUNIER:  Thank you, your Honor.

14          MR. MILLER:  Thank you, your Honor.

15          THE DEPUTY CLERK:  All rise.

16      (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

17

18                      * * * * * *

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE


   I, Karen A. Ibos, CCR, Official Court Reporter, United States

District Court, Eastern District of Louisiana, do hereby certify

that the foregoing is a true and correct transcript, to the best of

my ability and understanding, from the record of the proceedings in

the above-entitled and numbered matter.




                    Karen A. Ibos, CCR, RPR, CRR

                    Official Court Reporter