UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER　　　　　　　　　　MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION　　　　SECTION "N-5"

　　　　　　　　　　　　　　　　　　　　　JUDGE ENGELHARDT
　　　　　　　　　　　　　　　　　　　　　MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*Sylvia Cornish, et al, v. Crum and Forster*
*Specialty Insurance, Co.*, Case No. 09-5998
************************************************************************

### FIRST SUPPLEMENTAL AND AMENDING COMPLAINT FOR DAMAGES

Named Plaintiffs through undersigned counsel respectfully supplement and amend their original Complaint in the following respects:

1. By adding the name of Sylvia Cornish on behalf of the minor child, Kiara Cornish, as a Named Plaintiff in the Original Complaint.

2. By naming American International Specialty Lines, Co., Insurance Company of the State of Pennsylvania, and Lexington Insurance Company as defendants in this matter.

3. By adding the following under Section I, Parties,

    a. Defendant American International Specialty Lines Insurance Company (hereinafter, "AISLIC"), is, upon information and belief, a foreign entity, with its principle place of business in a foreign state. Further, defendant AISLIC provided insurance coverage for the risks involved herein of Monaco Enterprises, Inc., (hereinafter, "Monaco"), which manufactured and supplied FEMA trailers or

housing units as defined below pursuant to contracts with FEMA for use in the State of Louisiana.

b. The Insurance Company of the State of Pennsylvania, (hereafter, "Insurance Co. of Pennsylvania"), is, upon information and belief, a corporation organized under the laws of the State of Pennsylvania, with its principle place of business in New York. Further, Plaintiff avers that defendant Insurance Co. of Pennsylvania had in full force and effect a policy of liability insurance affording coverage to Monaco Coach with respect to the matters, risks and things for which Monaco is liable herein, thereby affording Plaintiff the right to proceed against this defendant insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:655.

c. Lexington Insurance Company, (hereafter, "Lexington"), is, upon information and belief, a corporation organized under the laws of the State of Delaware, with its principle place of business in Massachusetts. Further, Plaintiff avers that defendant Lexington had in full force and effect a policy of liability insurance affording coverage to Monaco with respect to the matters, risks and things for which Monaco is liable herein, thereby affording Plaintiff the right to proceed against this defendant insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:655.

4. By adding the following under Section II, Jurisdiction and Venue,

a. Insurance Co. of Pennsylvania is subject to the *in personam* jurisdiction of this Court because it and its insured client, Monaco, does sufficient business in the State of Louisiana and within this federal district to confer same, and at all

relevant times hereto engaged in commerce both in this federal district and in the State of Louisiana with respect to the activities and claims which are the subject of this litigation.

b. Lexington is subject to the *in personam* jurisdiction of this Court because it and its insured client, Monaco, does sufficient business in the State of Louisiana and within this federal district to confer same, and at all relevant times hereto engaged in commerce both in this federal district and in the State of Louisiana with respect to the activities and claims which are the subject of this litigation

c. AISLIC is subject to the *in personam* jurisdiction of this Court because it and its insured client, Monaco, does sufficient business in the State of Louisiana and within this federal district to confer same, and at all relevant times hereto engaged in commerce both in this federal district and in the State of Louisiana with respect to the activities and claims which are the subject of this litigation.

5. By amending Paragraphs 19 through 31 to read as follows,

a. FEMA contracted with Pilgrim and Monaco to purchase thousands of the housing units, primarily travel trailers, for provision to the Plaintiff as temporary housing.

b. On information and belief, Pilgrim and Monaco expedited production of these housing units, and, on information and belief, resorted to using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing units occupied by Plaintiff containing higher than normal levels of formaldehyde.

c. On information and belief, the housing unit(s) of Plaintiff, including any unit which was manufactured prior to the hurricanes and any later manufactured and

purchased by FEMA, deviated from Government specifications pertaining to the safety of the unit as a residence.

d. Plaintiff submits that each and all of the housing units which are at issue herein, both those which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, did not conform to any Government-imposed specifications which addressed the design and/or construction of the housing units pertinent to formaldehyde levels.

e. Plaintiff submits that any of the housing units at issue, both those which were manufactured prior to the hurricanes and those later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to Pilgrim and Monaco's use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, but that failed to warn the Federal Government about these dangers, which initially were not known to the Federal Government.

f. Plaintiff submits that Pilgrim and Monaco ignored, or concealed and/or condoned the concealment of, the fact that each and all of the housing units at issue contained dangerous levels of formaldehyde due to Pilgrim's and Monaco's use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, all in order to sell products of Pilgrim and Monaco, and/or avoid the costs of safety

      precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions.

g. Plaintiff spent significant time in the FEMA-provided housing units manufactured by Pilgrim and Monaco and provided to Plaintiff by the Federal Government. As a result, Plaintiff was unwittingly exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing units.

h. Formaldehyde is found in construction materials such as particle board, fiberboard and plywood, as well as glues and adhesives used in the manufacture of the housing units. Pursuant to federal law, the defendants are required to display a "Health Notice" about exposure to formaldehyde which reads:

IMPORTANT HEALTH NOTICE

Some of the building materials used in this home emit formaldehyde. Eye, nose and throat irritation, headache, nausea, and a variety of asthma-like symptoms, including shortness of breath, have been reported as a result of formaldehyde exposure. Elderly persons and young children, as well as anyone with a history of asthma, allergies, or lung problems, may be at greater risk. Research is continuing on the possible long-term effects of exposure to formaldehyde.

Reduced ventilation resulting from energy efficiency standards may allow formaldehyde and other contaminants to accumulate in the indoor air. Additional ventilation to dilute the indoor air may be obtained from a passive or mechanical ventilation system offered by the manufacturer. Consult your dealer for information about the ventilation options offered with this home.

High indoor temperatures and humidity raise formaldehyde levels. When a home is to be located in areas subject to extreme summer temperatures, an air-conditioning system can be used to control indoor temperature levels. Check the comfort cooling certificate to determine if this home has been equipped or designed for the installation of an air-conditioning system.

If you have any questions regarding the health effects of formaldehyde, consult your doctor or local health department.

*See* 24 C.F.R. §3280.309.

i.  According to the National Cancer Institute, formaldehyde has been classified as a human carcinogen (cancer-causing substance) by the International Agency for Research on Cancer and as a probable human carcinogen by the U.S. Environmental Protection Agency ("EPA"). Additionally, the Agency for Toxic Substances and Disease Registry ("ATSDR") has reported to FEMA and members of Congress that not only is formaldehyde classified as "reasonably anticipated to be a human carcinogen," but also that there is no recognized safe level of exposure, and that any level of exposure to formaldehyde may pose a cancer risk, regardless of duration.

j.  Most published exposure standards for formaldehyde address protective levels for the adult working population in the workplace, based upon a 40-hour work week, and specifically do not address chronic exposure levels or protective levels for the more susceptible population, for instance, the very young, the elderly and those with respiratory, skin and other chronic diseases. Nonetheless, reference to the levels established by the Occupational Safety and Health Administration ("OSHA") evidences formaldehyde's harmful effects. In 1987, OSHA reduced the amount of formaldehyde to which workers can be exposed over an 8-hour day from 3 ppm to1 ppm. In May, 1992, the formaldehyde exposure limit was further reduced to .75 ppm.

k.  HUD regulates formaldehyde levels in certain construction materials to include the pressed wood products used in manufactured housing (such as prefabricated mobile homes). HUD has far stricter exposure limits for residential formaldehyde emissions. By regulation, "All plywood and particle board materials bonded with

a resin system or coated with a surface finish containing formaldehyde shall not exceed the following formaldehyde emission levels when installed in manufactured homes: (1) Plywood materials shall not emit formaldehyde in excess of 0.2 parts per million (ppm)...[and] (2) Particle board materials shall not emit formaldehyde in excess of 0.3 ppm...". *See* 24 C.F.R. §3280.308.

l. Both the EPA and the ATSDR have suggested values for safe formaldehyde exposure, which are reproduced below, which values are applicable herein since the FEMA trailers/housing units at issue were intended to be occupied for up to a year and a half by evacuees. *See* 44 C.F.R. § 206.110(e).

| Agency | Standard |
|---|---|
| EPA recognized level at which acute health effects can manifest | 0.1 parts per million (ppm) |
| Agency for Toxic Substances and Disease Registry Minimum Risk Levels (MRL) | 0.04 ppm - short exposures up to 14 days |
|  | 0.03 ppm – exposure durations between 15 and 364 days |
|  | 0.008 ppm – exposures of 365 days or greater |

*See* Union of Concerned Scientists, Citizens and Scientists for Environmental Solutions, *FEMA Exposes Gulf Coast Residents to Formaldehyde*, Updated on Dec 19, 2007, *available at* http://www.ucsusa.org/scientific_integrity/interference/fema-trailers.html.

    m. Pilgrim and Monaco knew or should have known of the health hazards inherent in the products they constructed, by familiarity with industry standards, the material safety data sheets in its possession, and published medical studies.

6. By adding a Count V to reflect as follows,

## CAUSE OF ACTION AGAINST MANUFACTURER MONACO UNDER LOUISIANA PRODUCTS LIABILITY ACT

    a. Monaco is a manufacturer of housing units occupied by the Plaintiff, which units constitute products under the Louisiana Products Liability Act [LPLA].

    b. The exposure to Plaintiff to formaldehyde fumes from Monaco's products and equipment resulted from the normal, foreseeable, and intended use of the products and equipment, without substantial alteration in the condition in which Monaco sold these housing units.

    c. The design of the housing units, using plywood, press board, other composite wood products and other products that contain formaldehyde is defective and posed an unreasonable risk of harm to Plaintiff.

    d. Alternatively, the use of plywood, press board, other composite wood products and other products that contain formaldehyde constitutes a defect in composition or manufacture that posed an unreasonable risk of harm to Plaintiff.

    e. Monaco's product, equipment and supplies used by Plaintiff were in a defective condition and were unreasonably dangerous under normal use at the time the products and equipment left Monaco's control. Plaintiff was an intended and foreseeable user of the alleged defective products and damages and losses to Plaintiff reasonably could have been anticipated by Monaco.

f. The defects in Monaco's housing units are the result of and/or include, but are not limited to, the following:

　　i. In failing to design their product so as not to emit dangerous levels of formaldehyde;

　　ii. In providing housing units which, by virtue of their design and/or manufacture and/or composition, were unreasonably dangerous under reasonably anticipated use;

　　iii. In providing housing units which, by virtue of a lack of an adequate warning(s), were unreasonably dangerous under reasonably anticipated use;

　　iv. In providing housing units which did not conform to the express warranties made by Monaco regarding their fitness for use as reasonably anticipated;

　　v. In manufacturing, testing, marketing, distributing, licensing and selling of unreasonably dangerous housing units;

　　vi. In failing to properly test the housing units to property evaluate the level of emissions of formaldehyde under foreseeable conditions for extended periods of time;

　　vii. In failing to warn Plaintiff of the unreasonably dangerous nature of the housing unit occupied by the Plaintiff, or warn adequately of the

       presence of excessive levels of emissions of formaldehyde and the hazards associated with the excess levels of emissions of formaldehyde in the unit;

    viii. In failing to insure that the housing units it manufactured and provided to Plaintiff were suitable for their intended use;

    ix. In failing to adhere to any and all express warranties of fitness and safety for the housing units they manufactured and provided;

    x. In manufacturing and providing housing units which were unduly dangerous due to their emissions of formaldehyde; and

    xi. Such other indicia of fault under the LPLA as will be shown at the trial of this matter.

7. By amending Section IV: Compensatory Damages to read as follows,

    a. In addition to and by way of summarizing the compensatory damages prayed for herein, Plaintiff avers that the defendants, the United States of America through FEMA, Insurance Co. of Pennsylvania, Lexington, and AISLIC through Monaco, Crum & Forster, and Sentry through Pilgrim, and Shaw, individually and/or jointly are responsible for all damages which the Plaintiff herein has suffered and continue to suffer as a consequence of defendants' acts and/or omissions as pled herein, which damages include, but are not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary

medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages and injuries, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven at the time of trial.

8. By amending the Prayer for Relief to reflect the following,

WHEREFORE, the Plaintiff prays that Insurance Co. of Pennsylvania, Lexington, and AISLIC through Monaco, Crum & Forster and Sentry through Pilgrim, Shaw, and the Federal Government be served with a copy of this Complaint, and that, after due proceedings:

a. There be a judgment herein in favor of Plaintiff and against Defendants for all compensatory damages together will legal interest thereon from the date of judicial demand until paid, all costs and expenses of these proceedings, and attorneys' fees, declaring that the defendants are liable for all applicable damages and thereafter;

b. There be specially included in the judgment in Plaintiff's favor, provisions for the following damages and relief as found applicable and supported by the evidence:

      a. past and future physical injuries,

      b. past and future mental and physical pain and suffering,

      c. past and future physical impairments and disability,

      d. past and future reasonable and necessary medical expenses,

  e. past and future loss of earning capacity,

  f. past and future loss of enjoyment and quality of life,

  g. loss of consortium and/or society,

  h. compensable out-of-pocket expenses related to defendants' wrongdoing, and

  i. costs of court,

All other general, equitable, and further relief as the Court may deem just and proper.

9. As no answer has been filed in the above captioned matter, the Named Plaintiffs are entitled to amend their Complaint as a matter of course pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

WHEREFORE, plaintiffs respectfully supplement the original Complaint in the foregoing respects, and they otherwise reiterate and re-aver all of the allegations, claims and prayers for relief contained therein.

    Respectfully submitted:

    **FEMA TRAILER FORMALDEHYDE**
    **PRODUCT LIABILITY LITIGATION**

    BY: <u>s/Gerald E. Meunier</u>
      GERALD E. MEUNIER, #9471
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &

Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
ROBERT BECNEL, #14072
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL WATTS, Texas # 20981820


**PLEASE SERVE:**

American International Specialty Lines Insurance Company
through the Secretary of State
State of Louisiana
8585 Archives Ave
Baton Rouge, LA 70809

The Insurance Company of the State of Pennsylvania
through the Secretary of State
State of Louisiana
8585 Archives Ave
Baton Rouge, LA 70809

Lexington Insurance Company
through the Secretary of State
State of Louisiana
8585 Archives Ave
Baton Rouge, LA 70809

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record as indicated below in accordance with the Federal Rules of Civil Procedure on December 22, 2009.

            /s/Justin I. Woods
            JUSTIN I. WOODS