# Transcript of the Testimony of
# Videotaped Deposition of David Edward Garratt

### Date taken: July 7, 2009

### In Re: FEMA Trailer Formaldehyde Products Liability Litigation

### **Note**
All **electronic deposition & exhibit files**
are available at **www.psrdocs.com**.
Please call or e-mail reporters@psrdocs.com if you need a
**Username** and **Password**.

# Professional Shorthand Reporters, Inc.
Phone:   504-529-5255
Fax:   504-529-5257
Email:   reporters@psrdocs.com
Internet:   www.psrdocs.com



PLAINTIFF'S EXHIBIT 2

## Page 37

1  Correct?
2  A. I would say that's probably correct, that
3  they -- their taxes go to pay for those units, that's
4  correct, as does the rest of the United States
5  population.
6  Q. Absolutely, but you're not excluding the
7  disaster victims from -- they didn't get anything per
8  se absolutely free or at no cost to them?
9       MR. WOODS: Objection, calls for --
10 assumes facts not in evidence.
11 A. Nothing came out of their pockets in terms
12 of the requirements for this. They paid no
13 out-of-pocket costs for this.
14      BY MR. WOODS:
15 Q. At the time that the units were provided,
16 but again, it being funded by taxpayer money,
17 assuming that an individual is a taxpayer that
18 received an EHU, that there is some portion --
19 A. I'll concede the point.
20 Q. Okay. Let's get into talking specifically
21 about the reason we're here, and that's the
22 formaldehyde concerns in the EHUs.

## Page 38

1       In paragraph -- or -- I'm sorry -- section
2  4, which is, again, the next section of your
3  declaration, you say: I became aware of a possible
4  systemic formaldehyde problem involving EHUs in May,
5  June 2006, following the release of a Sierra Club
6  report recording high formaldehyde readings in
7  occupied EHUs.
8       Who brought to your attention that Sierra
9  Club report?
10 A. A member of my staff named Kevin Souza.
11 Q. And what is Mr. Souza's title?
12 A. At the time, he was the chief of our IA
13 policy branch.
14 Q. And IA stands for?
15 A. I'm sorry.
16    Individual assistance.
17 Q. You go on to state that: In June 2006,
18 the disaster assistance director assumed FEMA
19 responsibility for coordinating the agency response
20 to formaldehyde-related concerns in EHUs.
21      How did the directorate assume FEMA
22 responsibility for coordination?

## Page 39

1  A. Well, because the emergency housing units
2  are provided under the aegis of the individual
3  assistance program and the public assistance program,
4  those programs are managed at least at the
5  headquarters level by our directorate, so I don't
6  think there was any doubt that this was our
7  directorate's responsibility at the time.
8  Q. Well, go on to say that prior to the
9  disaster assistance directorate assuming response
10 coordination responsibility of the formaldehyde issue
11 in June 2006, FEMA's Gulf Coast recovery office had
12 through its assigned transitional recovery offices in
13 each state been responding to occupants' air quality
14 complaints on a case-by-case basis.
15      What was your understanding in June of
16 2006 of how the Gulf Coast recovery office was
17 responding to air quality complaints?
18 A. I'm not sure what you mean when you say my
19 understanding of how they were responding to
20 complaints.
21      You mean the -- the mechanism by which
22 they respond to complaints, how they're set up to

## Page 40

1  respond to complaints?
2  Q. How they're set up to respond to
3  complaints and how did they actually respond to
4  complaints, if you know?
5       MR. MILLER: Objection, compound.
6  A. In terms of the former, the transitional
7  recovery offices, which are really extended versions
8  of our joint field offices that we set up in every
9  disaster operation, but these are there long term,
10 and we typically staff them with longer-term
11 employees, have maintenance and deactivation
12 contracts, and those maintenance and deactivation
13 contractors -- and they had numerous maintenance and
14 deactivation contractors -- supporting each of the
15 transitional recovery offices, depending on which
16 state that you're in are assigned a certain sector
17 area, and occupants of emergency housing units in
18 those areas would call this particular maintenance
19 and deactivation contractor if they have an issue or
20 a problem with a unit, and it was that contractor's
21 responsibility to respond and address and deal with
22 the issue.

10 (Pages 37 to 40)