UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N(5)<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO:<br>*Earline Castanel v. Recreation by Design,<br>LLC, et al.,* No. 09-3251 (E.D. La.) | MAGISTRATE CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**SHAW ENVIRONMENTAL, INC.'S**
**STATEMENT OF UNCONTESTED MATERIAL FACTS**

NOW INTO COURT, through undersigned counsel, comes defendant, Shaw Environmental, Inc. (referred to herein as "Shaw") and submits, in support of its Motion for Summary Judgment and pursuant to Local Rule 56.1, the following statement of the material facts as to which there are no genuine issues to be tried.

1.  As part of its Individual Assistance/Technical Assistance Contract (the "FEMA Contract") with the Federal Emergency Management Agency ("FEMA"), Shaw was directed to install a travel trailer on property owned by an acquaintance of Earline Castanel at 2261 Urquhart, New Orleans Louisiana, 70117.

2. Shaw discharged the responsibility by having one of its subcontractors install a Recreation by Design, LLC trailer bearing VIN# 5CZ200R2461125294 (the "Trailer") on the above-referenced property.

3. One of Shaw's subcontractors conducted a "Ready for Occupancy" inspection of the Trailer on March 11, 2006.[1]

4. The "Ready for Occupancy" inspection showed the Trailer to be in good condition.[2]

5. Ms. Castanel signed her name on the inspection form and accepted the Trailer.[3]

6. Ms. Castanel moved into the Trailer in March 2006.[4]

7. Ms. Castanel asserts that in March 2006, as a result of living in the trailer and being exposed to formaldehyde, she suffered irritation and burning of the eyes; irritation to nasal membrane; irritation; itching, rashes, and drying or scaling of her skin; irritation or swelling of eyelids or eye area; tingling or swelling of lips or face area; headaches; nausea, abdominal pain and diarrhea; difficulty breathing, shortness of breath, and tightness of the chest; throat irritation and hoarseness; worsening of allergies; and dizziness.[5]

---

[1] *See* Temporary Housing Unit Inspection Report, dated March 11, 2006, attached as Exhibit "B" to Memorandum in Support of Shaw Environmental Inc.'s Motion for Summary Judgment Regarding Prescription (hereinafter "Memorandum").

[2] *See* Exhibit "B" to Memorandum.

[3] *See* Exhibit "B" to Memorandum. *See also* Exhibit "C" to Memorandum, Castanel Deposition, p. 107.

[4] *See* Ms. Castanel's Plaintiff Fact Sheet ("PFS"), attached as Exhibit "A" to Memorandum. *See also* Exhibit "C" to Memorandum, Castanel Deposition, pp. 22-23. It should be noted that Ms. Castanel's PFS claims that she moved into the trailer in February 2006; however, the "Ready for Occupancy" inspection form and other documents associated with moving into the Trailer are signed and dated March 11, 2006.

[5] See Exhibit "A" to Memorandum, at 3-5.

8. Ms. Castanel asserts that within four to five weeks of moving into the trailer, she began to experience breathing and sinus problems.[6]

9. Ms. Castanel asserts that within five to six weeks of moving into the trailer, she began to experience severe headaches and eye irritations.[7]

10. Ms. Castanel asserts that within three month of moving into the trailer, she began to suffer dry itchy skin, nausea, abdominal pain, and diarrhea.[8]

11. Ms. Castanel attributes the injuries she suffered to living in the Trailer.[9]

12. In May 2006, FEMA elected to separately contract maintenance responsibilities for travel trailers installed at private sites directly to "Maintenance and Deactivation Contractors," or "MDCs."[10]

13. FEMA's process of transferring the contractual maintenance responsibility directly to the MDCs became known as the "MDC turnover."[11]

14. C. Martin Company was the MDC that accepted responsibility for the Trailer.[12]

15. C. Martin Company accepted the Trailer on June 1, 2006.[13]

---

[6] *See* Exhibit "C" to Memorandum, Castanel Deposition, pp. 32-35.

[7] *Id*. at 36-38.

[8] *Id*. at 35-36, 38-39.

[9] *Id*. at 68-70, 111-112.

[10] *See* Affidavit of Allison Hansen, Shaw's Operations Manager during the FEMA Contract, attached as Exhibit "D" to Memorandum, ¶¶ 3-4.

[11] See Exhibit "D" to Memorandum, Hansen Affidavit, ¶ 3-4.

[12] See Exhibit "D" to Memorandum, Hansen Affidavit, ¶ 7.

[13] See Exhibit "D" to Memorandum, Hansen Affidavit, ¶¶ 7-9.

16. FEMA directed, participated in, was informed of, and accepted the transfer responsibilities for the Trailer from Shaw to C. Martin Company.[14]

17. Shaw did not participate in the deactivation of the Trailer.[15]

18. Shaw's maintenance and other responsibilities with regard to the Trailer, through the FEMA Contract or otherwise, ended on June 1, 2006.[16]

19. Ms. Castanel filed the instant lawsuit on April 8, 2009.

Respectfully submitted,

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

   /s/ M. David Kurtz
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000

**ATTORNEYS FOR DEFENDANT, SHAW ENVIRONMENTAL, INC.**

---

[14] *See* Exhibit "D" to Memorandum, Hansen Affidavit, ¶ 10.

[15] *See* Exhibit "D" to Memorandum, Hansen Affidavit, ¶ 11.

[16] *See* Exhibit "D" to Memorandum, Hansen Affidavit, ¶ 11.

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2009 I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.

    /s/ M. David Kurtz