UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL CASES ("Louisiana Plaintiffs") | MDL NO. 07-1873<br><br>SECTION "N" (5)<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF ITS
"MOTION TO DISMISS THE FTCA NEGLIGENCE CLAIMS OF ALL 'LOUISIANA
PLAINTIFFS' FOR LACK OF SUBJECT-MATTER JURISDICTION BASED UPON NO
ANALOGOUS PRIVATE LIABILITY" [Doc. No. 6970]**

In their opposition to the United States' motion, Louisiana Plaintiffs fail to show how the Government conduct at issue in this case is functionally different from – if not literally identical to – the kind of private person conduct shielded from negligence liability under Louisiana law. *See* La. R.S. 29:733.1. Plaintiffs fail to recognize that the FTCA's limited waiver of sovereign immunity requires that the Court remove the governmental cloak and assess whether a private person could be subject to state law liability under "similar circumstances." *See United States v. Olson*, 546 U.S. 43, 45 (2005) (holding that "'like circumstances' do not restrict a court's inquiry to the same circumstances, but require it to look further afield"); *see LaBarge v. County of Mariposa*, 798 F.2d 364, 366-69 (9th Cir. 1986) ("Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy."). Stripping away the inherent differences between the Government and a private person, it becomes clear that the Government's provision of emergency housing units ("EHUs") to disaster victims following Hurricanes Katrina and Rita presents "similar circumstances" to the type of private person conduct protected by La. R.S. 29:733.1. *See Olson*, 546 U.S. at 44 (holding that sovereign immunity is only waived "where local law would make a '**private**

**person**' liable in tort" (emphasis in *Olson*)); *LaBarge*, 798 F.2d at 366-69 (finding the United States was in like circumstances to a private employer covered by a state immunity provision); *Owen v. United States*, 935 F.2d 734, 736-37 (5th Cir. 1991).

I.  **The Scope Of Analogous Private Liability Is A Question Of Federal Subject-Matter Jurisdiction; It Shapes The Bounds Of The FTCA's Limited Waiver Of Sovereign Immunity**.

Plaintiffs have failed to meet the FTCA's requirement that there be analogous tort liability against a "private individual under like circumstances," *see* 28 U.S.C. §§ 2674, 1346(b), and, thus, have failed to carry their burden of establishing subject-matter jurisdiction.[1]/ *See Kokkonen v. Guardian*, 511 U.S. 375, 377 (1994); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Although Plaintiffs focus on state rules of statutory interpretation in their opposition, Opp. Memo. at 2-3 (Rec. Doc. 9403), the Supreme Court has held that whether a private person in "like circumstances" would be subject to liability is a question of sovereign immunity and, thus, is ultimately a question of federal law.[2]/ *Olson*, 546 U.S. at 44. Contrary to Plaintiffs' argument, because this exercise determines the scope of the FTCA's limited waiver of sovereign immunity (*i.e.,* Can Plaintiffs meet the FTCA's condition that there be analogous private liability in like

---

[1]/   In their opposition, Plaintiffs do not challenge the proposition that the jurisdictional question presented (whether La. R.S. 29:733.1 would limit the potential tort liability of a private person under similar circumstances) bears no relation to a merits determination of whether the United States was negligent. Thus, the United States' motion should be decided pursuant to Rule 12(b)(1), rather than Rule 56. *See generally* Opp. Memo. Nonetheless, should the Court choose to apply the summary judgment standard to this motion, there remains no genuine issue of material fact regarding whether there is analogous private liability under similar circumstances. In addition, since Plaintiffs' opposition did not include a responsive statement of material facts, the United States' statement of material facts should be deemed admitted pursuant to Local Rule 56.2.

[2]/   Plaintiffs incorrectly cast the United States' motion as unrelated to the question of sovereign immunity. *See* Opp. Memo at 2. Although the FTCA's private analogous liability provisions look to the framework established by state tort law, *see* 28 U.S.C. §§ 2674, 1346(b), how the question of analogous private liability is resolved determines the scope of the FTCA's limited waiver of sovereign immunity and, thus, determines the scope of subject-matter jurisdiction. *See United States v. Mottaz*, 476 U.S. 834, 841 (1986); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (affirming Rule 12(b)(1) dismissal based upon no analogous private liability).

circumstances under Louisiana law?), the Court must construe all federal and state statutes that affect this condition "in favor of the sovereign." *See U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992); *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998) (in assessing jurisdiction, a court must resolve "all ambiguities in favor of the sovereign").

In judging whether the FTCA's requirement of analogous private liability is met, federal law requires that the Court assess whether the Government conduct at issue would constitute "similar circumstances" to those that would result in liability being imposed (or not imposed) upon private persons under state law. *See LaBarge*, 798 F.2d at 366-69. This inquiry is an issue of federal subject-matter jurisdiction that, in part, looks to the framework of state law for guidance, but is not answered through a rote application of state law text to the facts of a particular case. Importantly, the "similar circumstances" concept that shapes the FTCA's analogous private liability inquiry is necessarily flexible to ensure the Government is afforded the same protections as private persons – it allows for state law provisions to "apply" to shield the Government where the Government activity functionally, rather than literally, meets the terms of the state statute at issue.[3]/ *See Hill v. SmithKline*, 393 F.3d 111, 1118 (10th Cir. 2004).

Additionally, Plaintiffs' reliance on case law dealing with Louisiana's recreational land use statute is misplaced. State law principles surrounding this unrelated statute are of no

---

[3]/ The FTCA's "similar circumstances" or "like circumstances" test for analogous private liability must be read to cut both ways. If there is a reasonable analogue, the United States may be held liable under the FTCA for uniquely governmental activities that a private person would never perform; but, in turn, the United States must be afforded the benefit of state immunity statutes and non-liability provisions that the Government has only functionally, rather than literally, complied with. *See Hill*, 393 F.3d at 1118 ("In light of the 'similarly situated' requirement, we . . . have allowed the United States the benefits of certain state-law defenses in FTCA actions, even when the United States did not meet the technical requirements of state law."). This is especially true where the United States' activity does not technically meet the terms of the state statute due to uniquely governmental attributes. Simply put, the "similar circumstances" test requires that the Government activity at issue be 'in the ballpark' of the activity described in a state liability or non-liability provision. This ensures that the Government is placed on equal footing with private persons despite their inherent differences. *See id.*; U.S. Mem. (Rec. Doc. 6970-2) at 11 (citing cases).

3

consequence in an analogous private liability inquiry focused on the provisions of the Louisiana Homeland Security and Emergency Assistance and Disaster Act ("LHSEADA"), La. R.S. 29:721-738.[4]/  In stark contrast to the narrow interpretation sought by Plaintiffs, a 2008 opinion from the Office of the Louisiana Attorney General stresses that "the immunity provisions contained in the Act [LHSEADA] **must be broadly interpreted**."  La. Atty. Gen. Op., No. 08-0093, at *28-29 (emphasis added); *see also Robin v. United States*, 2006 WL 2038169, at *2 (E.D. La. July 17, 2006) (Lemelle, J.) (discussing the LHSEADA and remarking that, based upon a review of other states' emergency statutes, courts generally provide protection from suit to the fullest extent permitted).  Finally, although the Government activity at issue need only be the functional equivalent of the private conduct shielded from liability under La. R.S. 29:733.1, the activity at issue in this case squarely satisfies the statute's terms.  This result in no way requires that the private person protections set forth in La. R.S. 29:733.1 be extended beyond their obvious meaning.

II.     **The Nature, Scope, And Applicability Of La. R.S. 29:733.1 Support A Finding Of No Analogous Private Liability For Plaintiffs' FTCA Negligence Claims.**

The Louisiana statute at issue limits the state law liability of private persons who own and provide shelter in response to an emergency.  *See* La. R.S. 29:733.1.  A facial reading of Plaintiffs' own Complaint shows that they allege each individual Plaintiff was rendered "homeless" following the "greatest natural disaster in the history of the United States" and that

---

[4]/     As stated in *Woods v. United States*, "Congress has bestowed jurisdiction on federal courts only if a private party similarly situated to the United States might be liable, and Congress' pronouncements, not those of the Louisiana legislature or Supreme Court, will decide when we have subject matter jurisdiction over a specific case." 909 F. Supp. 437, 442 (W.D. La. 1995).  In *Woods*, the Court rejected plaintiffs' argument that the Government could not be afforded the protections of Louisiana's recreational land use statute because the statute does not apply to public lands.  *Id.*  The Court ruled that it had to go beyond the facts of the case and consider whether, under like circumstances, a private person would be afforded the protections if the incident had occurred on private land.  *Id.*

the United States responded by providing what Plaintiffs consider to have been "unreasonably dangerous housing units" in an attempt to shelter "individuals and families displaced" by the hurricanes. *See* Third Admin. Master Compl. (Rec. Doc. 4486) ¶¶ 124, 128, 171, 150, 162, 201-205, 209 (as incorporated by the Fourth Admin. Master Compl. (Rec. Doc. 7688)). Though Plaintiffs urge that the Court consider the nature and scope of La. R.S. 29:733.1, Opp. Memo. at 1, the upshot of the provision is that persons and entities who provide emergency shelter should be shielded from any and all associated liability that sounds in simple negligence. *See* La. R.S. 29:733.1. Using the FTCA's required analogy, had a private person or entity provided thousands of emergency shelters to the victims of Hurricanes Katrina and Rita (the same shelters complained of in Plaintiffs' suit) – La. R.S. 29:733.1 plainly would preclude any negligence liability for injuries related to Plaintiffs' use of these shelters. Plaintiffs fail to explain how their claims about purportedly dangerous emergency shelters should remain untouched by the Louisiana statute that specifically limits the liability of those who choose to provide emergency shelters in response to emergencies.[5]/ Nor do they explain how affording the United States the same protections as private persons who provide shelter in response to emergencies, as required by the FTCA, would constitute "absurd consequences." *See* Opp. Memo. at 1.

In large part, Plaintiffs seek to distinguish the protections announced in La. R.S. 29:733.1 by stressing that it was the United States Government – not a private person – who provided the shelters at issue in this case. Thus, Plaintiffs argue that the factual underpinnings of this case (because of the inherent differences between the Government and a private person, such as the

---

[5]/   Although Plaintiffs characterize La. R.S. 29:733.1 as "obscure" and "rarely applied," Opp. Memo. at 1, this is not surprising given the discrete focus of the statue (the provision of emergency shelter in response to an emergency). The fact that a statute has been written to expressly shield private persons who may engage in such an uncommon contingency speaks to the important policy considerations that underlie the statute. *See* La. R.S. 29:733.1; *see also* La. R.S. 29:771(B) (providing for similar private person immunity under similar circumstances).

5

collection of taxes and internal regulations) are markedly different from a scenario in which La. R.S. 29:733.1 would apply to a private person. Such reasoning ignores the FTCA's jurisdictional requirement as well as the Supreme Court's holding in *Olson* that there be analogous "private person" liability.[6]/ *See* 546 U.S. at 44 (discussing 28 U.S.C. § 1346(b)).

By focusing on La. R.S. 29:735, an LHSEADA provision focused almost exclusively on **governmental** immunity rather than private person immunity, Plaintiffs attempt to skew the analogous private liability inquiry. While Plaintiffs argue that La. R.S. 29:735 is the "more obvious statute" because it deals with governmental liability and the United States is the defendant in this action, *see* Opp. Memo. at 3, such reasoning directly conflicts with Congress' requirement – recently explicated by the Supreme Court in Olson – that the FTCA look to **private person** liability. *See Olson*, 546 U.S. at 45-46 (finding that private person liability, not state or municipal liability, defines the scope of the FTCA's waiver of sovereign immunity, even when uniquely governmental functions are at issue). As specifically stated by the Supreme Court, the FTCA "requires a court to look to the state-law liability of private entities, not that of public entities, when assessing the Government's liability under the FTCA." *Id*. at 46. For these same reasons, Plaintiffs' reliance on *Robin v. United States*, 2006 WL 2547984 (E.D. La. Aug. 30, 2006), an FTCA case analyzing La. R.S. 29:735(A)(1), is also misplaced. *See* Opp. Memo. at 2.[7]/

---

[6]/ By measuring the Government's FTCA liability through the use of "private person" liability, Congress sought to prevent state legislatures from using the FTCA's limited waiver of sovereign immunity to "enrich their own citizens" at the expense of the United States. *See Carter v. United States*, 982 F.2d 1141, 1143 (7th Cir. 1992). This is in keeping with the FTCA's intent to limit the waiver of sovereign immunity to "run-of-the-mine" torts where there are clear private analogues and no policy implications. *See United States v. Gaubert*, 499 U.S. 315, 325 n.7 (1991); *Dalehite v. United States*, 346 U.S. 15, 28 n.19 (1953). Considering the teachings of *Olson*, private person analogies may exist for the conduct at issue here, but Louisiana law has shielded such private persons from negligence liability. *See* 546 U.S. at 47.

[7]/ Although Plaintiffs cite the Court's Order denying reconsideration in *Robin*, 2006 WL 2547984 (E.D. La. Aug. 30, 2006), Opp. Memo. at 2, neither the reconsideration Order, nor the underlying Order, *Robin v. United States*, 2006 WL 2038169 (E.D. La. July 17, 2006), supports Plaintiffs' arguments. *Robin* involved an employee of

The statute discussed in *Robin* affords certain protections to state emergency management personnel and their representatives. *Id.* In stark contrast, the statute referenced in the instant motion, La.. R.S. 29:733.1, specifically applies to "any person or organization, public or private" and thus can appropriately supply a private person analogue to determine the United States' liability under the FTCA. *See* La. Atty. Gen. Op., No. 08-0093, at *25-26.

### III.    The Government Activity At Issue Presents "Similar Circumstances" To The Kind Of Private Person Activity Shielded From Negligence Liability By La. R.S. 29:733.1.

La. R.S. 29:733.1 protects private persons who:

(1) own or operate "immovable property or other premises";
(2) act "voluntarily and without compensation";
(3) grant "use of the whole or part of the immovable property or premises"; and
(4) do so "for the purpose of sheltering persons during an actual . . . emergency."

La. R.S. 29:733.1. In their opposition, Plaintiffs do not dispute that the Government conduct at issue presents "similar circumstances" to private person conduct that would satisfy elements (1) and (3). *See* Opp. Memo. at 4-8. Instead, Plaintiffs focus solely on elements (2) and (4), namely, whether the Government conduct at the center of this case was in like circumstances with a

---

the United States Wildlife and Fisheries who was deemed to be acting as a representative of the State of Louisiana under the facts of the case and, thus, just like a private person, was held to be protected by the state governmental immunity provision found at La. R.S. 29:735(A)(1) which protects from negligence liability all state agencies and employees, as well as **private persons who act as representatives of the state** in furtherance of the state's emergency management statute. *See Robin*, 2006 L 2038169. Although the statute mainly deals with state government personnel, the private person 'representative of the state' provision was found to apply. La. R.S. 29:735(A)(1) was also analyzed as part of a private analogous liability inquiry in *Martin v. United States*, No. 07-663-FJP-CN, 2008 U.S. Dist. LEXIS 106817, at *4 (M.D. La. Sept. 24, 2008) (finding that Louisiana law would not impose tort liability on a private person under like circumstances because the federal employee was engaging in emergency preparedness activities as an agent of the State of Louisiana). Plaintiffs setup a strawman by stating that La. R.S. 29:735(A)(1) deals with governmental immunity in the context of emergency management, and then argue that the provision does not specifically afford any protection to the United States. Even if La. R.S. 29:735(A)(1) were to specifically provide that employees of the federal government are to be immune from certain claims, aside from federalism concerns, such a statute would have no bearing on the FTCA's requirement that potential liability be measured by that of a "private individual under like circumstances." *See* 28 U.S.C. §§ 2674, 1346(b). Any case law reflecting the contrary is a vestige of arguments that were made prior to the Supreme Court's unambiguous pronouncement in *Olson*. *See* 546 U.S. at 44 (reversing a line of cases that had interjected state or municipal liability rather than private person liability into the FTCA's limited waiver of sovereign immunity); *id*. at 45 ("Our cases have consistently adhered to this 'private person' standard").

7

private person who acts voluntarily and without compensation for the purpose of sheltering persons during an emergency. *See id.*

### A. The Government Was In Like Circumstances With A Private Person Who Acts Voluntarily And Without Compensation.

In their opposition, Plaintiffs have failed to come forward with any evidence that the United States did not provide emergency shelter to the victims of Hurricanes Katrina and Rita of its own volition. Examining the kind of like circumstances that would vitiate a private person's "voluntariness" under La. R.S. 29:733.1, Plaintiffs cannot show that the United States was contractually obligated or otherwise bound by any outside element to provide the emergency shelter in question. Given the FTCA's requirement that the Court consider a private analogue under "similar circumstances" to ensure that the Government and private persons are placed on equal footing, *see LaBarge*, 798 F.2d at 366-69, internal Government regulations and statutory charges that only apply to the Government should play little role in a private analogous liability inquiry. *See Hill*, 393 F.3d at 1118, U.S. Mem. at 11 n.11 (citing cases). If such inherently governmental provisions were allowed to vitiate state law protections and authorize suit where a private person would otherwise be shielded, the Government would be placed "in a differently situated position than private parties . . . thereby undermining the conditions precedent to the United States' waiver of sovereign immunity in the FTCA."[8]/ *Id.*

---

[8]/ For instance, if the Court were to conclude that the United States was not in like circumstances to a private person who acted voluntarily on the grounds that the United States has formed the Federal Emergency Management Agency ("FEMA") and has set forth various implementing regulations that charge the agency with the responsibility of responding to emergencies, such a determination would place the Government – because it is the Government – in an entirely different position from an otherwise similarly situated private person. The FTCA's limited waiver of sovereign immunity requires a different result. One could argue that the provision of thousands of emergency shelters following a natural disaster is an inherently governmental activity, nonetheless, the FTCA requires application of the most reasonable private person analogy to determine liability. *See, e.g., Nationwide Mut. Ins. Co. v. United States*, 3 F.3d 1392, 1396-97 (10th Cir. 1993) (looking past inherent differences between the Government and a private person in order to assess whether the Government was in like circumstances to a private person who would be afforded protection under state law).

Even if such provisions were relevant to this inquiry, the Stafford Act, which Plaintiffs argue compelled the Government to provide assistance in this case, in fact provides for unfettered discretion in deciding if/when/how the United States, through FEMA, should provide emergency shelter to disaster victims. *See* U.S. Statement of Facts ¶ 6; 42 U.S.C. § 5174(c)(1)(B)(I) (stating that FEMA "**may** provide temporary housing units . . . to individuals or households" (emphasis added)). There is no mandatory provision, internal or otherwise, that required the United States to provide Plaintiffs with shelters following Hurricanes Katrina and Rita. The United States made this decision on its own accord and, as a result, this activity must be considered in like circumstances with a private person acting voluntarily.[9]/ Similarly, there is no foundation for Plaintiffs' argument that an "altruistic basis" or motivation requirement should be read into the language of La. R.S. 29:733.1. Opp. Memo. at 5. Although Plaintiffs seek to distinguish the Government's activity in this case by saying that La. R.S. 29:733.1 should only apply where someone "steps forward in an emergency to help shelter a disaster victim by making his own property available," that is exactly the kind of action the United States took in response to the massive destruction and homelessness left in the wake of Hurricanes Katrina and Rita. *See id.* Plaintiffs' argument that a private person would never be expected to adhere to the litany of policy objectives, regulations, and guidelines that purportedly shaped the United States' provision of emergency shelter is not compelling. Such an argument wholly ignores the holding of *LaBarge*, which stressed that the Court must look past the inherent differences between the Government and a private person in order to find the most reasonable private person analogy.

---

[9]/    In the context of a private person or entity, even if a provider of shelter had internal rules or bylaws that outlined its intent to provide safe and habitable emergency shelter to disaster victims whenever the need arises, the private person or entity would still be taking voluntary action under La. R.S. 29:733.1 because no external force compelled it to adopt such rules and bylaws and provide such aid.

798 F.2d at 366-69. In this case, the most reasonable analogy would involve the kind of private person conduct that falls within the protections of La. R.S. 29:733.1.

Similarly, Plaintiffs' focus on cases dealing with whether individuals may have a vested property interest in FEMA assistance is misplaced. As stated above, such an inherently governmental issue, involving internal Government policies and regulations, does not translate between the Government and the FTCA's required private analogue under state tort law. Nevertheless, the regulations described in the Stafford Act (which impose no duties upon private persons) speak only in permissive terms.[10]/ *See* U.S. Statement of Facts ¶ 6; *Ridgley v. FEMA*, 512 F.3d 727, 729, 736-37 (5th Cir. 2008) (confirming that FEMA has discretionary authority to authorize and administer emergency housing assistance). Although the question of whether individuals have a vested property interest in FEMA assistance is not germane to the private analogous liability inquiry, a recent opinion dealing specifically with emergency housing units confirmed that "[b]ecause of its institutional discretion, FEMA's emergency housing assistance does not create an entitlement in the plaintiff to a property interest in that assistance." *Johnson v. FEMA*, 2009 WL 1208639, at *1 (E.D. La. May 1, 2009) (Feldman, J.) (denying a plaintiff's request for an injunction to stay in his Government-provided emergency shelter); *see Lockett v. FEMA*, 836 F.Supp. 847, 854 (S.D. Fla. 1993) (following Hurricane Andrew, ruling that the Stafford Act "clearly shows that assistance is discretionary, not mandatory"). Although Plaintiffs rely upon *McWaters v. FEMA*, 436 F.Supp. 802 (E.D. La. 2006), much of the language in

---

[10]/ Even if Plaintiffs could establish that the United States through FEMA had an ongoing policy or practice of providing emergency housing to certain similarly situated individuals, the Government's provision of housing and establishment of such a policy or practice would still be the product of an elective and voluntary choice on the part of the United States to provide such assistance.

10

*McWaters* appears to be undercut by the Fifth Circuit's recent ruling in *Ridgley*.[11]/ *See* 512 F.3d at 736-37. As stated in *Ridgley*, mandatory language is wholly absent from FEMA's implementing regulations that discuss the provision of assistance. *Id*. 512 F.3d at 736 (discussing all of FEMA's implementing regulations, beyond just the rental assistance provision, and stating "[t]here is simply no indication that the regulations constrain FEMA's discretion to the point that it is bound to provide assistance"). Regardless, not a single regulation referenced in any of these cases requires the United States to provide emergency shelter to disaster victims. When the United States chose to do so following Hurricanes Katrina and Rita, it acted of its own volition. Even if the United States undertakes the task of assisting the public in an emergency (and has set up an agency to do so), that does not make the decision to undertake that task non-voluntary: If the Government imposed upon itself an obligation to provide assistance or adopted a policy/practice to provide safe and habitable assistance, that obligation was one voluntarily undertaken by the Government.

Again seeking to interject inherent differences between the Government and private persons into this analogous private liability inquiry, Plaintiffs also argue that the United States' provision of rent-free shelter was not in like circumstances with a private person who acts without

---

[11]/ As this Court has stated, "[A]s for the applicability of the *McWaters* case to the scenario before this Court, it should be noted that the Fifth Circuit recently held that the Stafford Act, and its accompanying regulations governing the Individual Assistance housing program, even for persons who qualify for housing assistance, does not, in and of itself, create an entitlement to housing assistance." *In re: FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488 (E.D. La. 2008) (citing *Ridgley v. FEMA*, 512 F.3d 727, 734-45 (5th Cir. 2008). Unlike the *Johnson v. FEMA*, 2009 WL 1208639 case, which found no entitlement to an emergency housing unit, *McWaters* did not deal with the Government's provision of emergency housing units. *See McWaters*, 408 F. Supp. 2d 221 (discussing notice, rental assistance, SBA loans, and short-term lodging assistance, *i.e.*, hotels and motels). Thus, Plaintiffs' criticism of *Ridgley* applies equally to *McWaters*. *See* Opp. Mem. at 7 (arguing that *Ridgley* should be distinguished because it did not deal with the provision of emergency housing units). *McWaters*, in ruling on a request for a preliminary injunction, dealt specifically with the continuation and administration of certain programs already set in place. *Id*. at 236. Even if the Government had established a pattern or practice of providing emergency shelter to certain qualified individuals, this does not make the actual decision to provide shelter in the first place any less voluntary or discretionary.

11

compensation because the United States collects taxes. Plaintiffs concede, as they must, that they, as recipients of Government-owned emergency shelters, did not pay any money for such assistance "in the direct, payment-to-FEMA sense." Opp. Memo. at 4. Such a direct payment, *i.e.*, rent or a purchase price, would be the very definition of compensation. The United States received no such payments in exchange for its provision of emergency shelter to homeless disaster victims. As FEMA Acting Deputy Administrator David Garratt testified, disaster victims "paid no out-of-pocket costs" to live in these shelters. U.S. Ex. 16, 37:11-13. Although American taxpayers, potentially including Plaintiffs, help fund some of the Government's operations, such moneys are far too attenuated from the Government's provision of emergency shelter to be considered compensation under La. R.S. 29:733.1. General income tax payments simply cannot amount to consideration or compensation for the unrelated subsequent provision of specific emergency shelter. "[A] tax is not an assessment of benefits," nor does it constitute consideration in exchange for services. *See Carmichael v. Southern Coal*, 301 U.S. 495, 521-23 (1937). Plaintiffs' argument is akin to the oft-rejected notion of taxpayer standing. *See generally Flast v. Cohen*, 392 U.S. 83 (1968). Finally, it is inarguable that the collection of taxes – an activity conducted only by the Government – can meaningfully translate to the private person analogy.[12]/

---

[12]/ For example, in the context of a private entity or charity, if a charity provided emergency shelter to a disaster victim who had previously made contributions to the charity, this could scarcely amount to an exchange of "compensation" as would be required to vitiate the protections of La. R.S. 29:733.1. In addition, if the collection of taxes were to be considered in like circumstances with a private person's acceptance of compensation, La. R.S. 29:733.1 could never, under any set of facts, "apply" to the United States, thus restricting the United States from being afforded a protection granted to certain private persons under state law. This would violate the FTCA's intent to make the tort liability of the United States "the same as that of a private person under like circumstance, in accordance with the local law"). *See Olson*, 546 U.S. at 46-47 (quoting S.Rep. No. 1400, 79th Cong., 2d Sess., 32 (1946)).

### B.     The Government Was In Like Circumstances With A Private Person Who Acts During An Actual Emergency.

The provisions of La. R.S. 29:733.1 apply to acts taken during an "actual, impending, mock, or practice emergency." La. R.S. 29:733.1. In this case, the Government activity at issue was in like circumstances with a private person who acts during an actual emergency. *See id.* (the statute uses the term "actual emergency" to distinguish it from a "mock" or "practice emergency"). Plaintiffs' approach ignores the fact that the LHSEADA specifically defines the term "emergency." An "emergency" under the LHSEADA is defined as "the actual or threatened condition which has been or may be created by a disaster."[13]/ La. R.S. 29:723(1)(a). Rather than requiring a certain temporal relationship as Plaintiffs suggest, the statute's definition relies on a "cause and effect" relationship between a disaster and the condition at issue. Regardless of whether a private person provides free emergency shelter to disaster victims days, weeks, months, or years after a particular disaster, if the emergency shelter is being provided in direct response to the actual condition and exigencies created by a disaster, then that private person would be protected from negligence liability under La. R.S. 29:733.1. The same protection must be afforded the Government in this case under similar circumstances. This result is in accord with an explicitly stated purpose of the LHSEADA – to help "respond to" and "recover from" emergencies and disasters. *See* La. R.S. 29:722(a). It is also required given the remarkable scope and protracted effects (particularly, the potential for widespread homelessness) of the damage caused by Hurricanes Katrina and Rita.

As was made clear through the Emergency Shelter Agreement between the Government

---

[13]/    Under the statute, an emergency may also be defined as "[a]ny national or state emergency," La. R.S. 29:723(1)(b)(iii). Thus, such conditions can relevant to whether an act was taken during the course of an "actual emergency". *See* U.S. Mem. at 24-25 (discussing state declarations of emergency and the fact that Hurricanes Katrina and Rita are considered active federal disasters).

13

and occupants of Government-owned emergency shelters, the housing shelters at issue were specifically provided because each resident affirmed that he or she was "not able to live in my residence due to this event [Hurricanes Katrina and Rita]." *See* U.S. Ex. 9. As agreed upon, the units were being specifically provided because a "major disaster or emergency" had been declared in the area and, as soon as the occupant was able to recover from the storm enough to find other available housing options, he or she was required to "accept" the other options and relocate. *Id.* The United States' provision of emergency housing units was always inextricably and directly linked with the real conditions caused Hurricanes Katrina and Rita and never become part of a "general purpose" program unrelated to the continuing and real effects of the hurricanes. *See generally Banks v. Parish of Jefferson*, 990 So. 2d. 26, 34 (La. App. 5 Cir. 2008).

### III. Because La. R.S. 29:733.1 Would Apply To A Private Person Under Similar Circumstances, The United States Must Be Shielded From All FTCA Negligence Liability And Plaintiffs' FTCA Negligence Claims Must Be Dismissed.

Each Plaintiff alleges that he or she was injured as a product of formaldehyde emissions in his or her Government-owned emergency housing unit. These emergency shelters, which Plaintiffs allege were "defective and dangerous" are at the epicenter of Plaintiffs' claims of causation and injury. *See* Third Admin. Master Compl. ¶¶ 179, 207, 353. Given their allegations, Plaintiffs cannot divorce their claims from the very shelters that they allege caused them harm during the course of occupancy/usage. Regardless of a potential plaintiff's theory of liability, a private person who falls under the protections of La. R.S. 29:733.1 "shall not be liable for the death of, or injury to, any person on or about such . . . premises during the actual . . . emergency . . . solely by reason or as a result of the . . . use." La. R.S. 29:733.1. Thus, any and all negligence claims against such a private person that allege injury or death stemming from the usage or occupancy of an emergency shelter are barred under Louisiana law. *Id.* Likewise, under similar

14

circumstances, such claims may not proceed against the United States under the FTCA. *See id*. La. R.S. 29:733.1 does not distinguish between negligence claims that are premised on a defendant's status as property owner and those that are not. Indeed, regardless of the theory of negligence liability, if the statute's prerequisites are met, the provider of shelter is immune from all negligence claims as long as the alleged injury or death that occurred was caused by the usage or occupancy of the shelter and the injury or death occurred during the sheltering period.[14]/ *Id*. Because the United States must be afforded the same protections as a private person under similar circumstances, all of Louisiana Plaintiffs' FTCA negligence claims, since they allege injury from exposure to formaldehyde in Government-provided emergency shelters, must be dismissed for lack of subject-matter jurisdiction.[15]/

Dated: December 29, 2009                                    Respectfully Submitted,

TONY WEST                                                    HENRY T. MILLER
Assistant Attorney General, Civil Division                   ADAM BAIN
                                                             Senior Trial Counsel

---

[14]/  To the extent the United States arguably owed a duty to Plaintiffs, such a duty arose as a product of the United States' relationship as owner and provider of what Plaintiffs allege were dangerous emergency housing units. Just because it was providing emergency assistance to other individuals, Plaintiffs cannot argue that the Government had a duty to individual Plaintiffs until the United States provided an emergency shelter to that Plaintiff. To the extent Plaintiffs argue that the Government had some independent duty beyond its role as owner and provider of the allegedly dangerous emergency housing units, *see* Opp. Memo. at 9, there is no possible analogous private liability theory under state law that would support such a claim. 'Negligence in the air' is not enough, there must be an analogous duty under state tort law. *See Johnson v. Sawyer*, 47 F.3d 716, 727-28 (5th Cir. 1995) ("It is virtually axiomatic that the FTCA does not apply 'where the claimed negligence arises out of the failure of the United Sates to carry out a [federal] statutory duty in the conduct of its own affairs."); *Sanchez v. Rowe*, 870 F.2d 291 (5th Cir. 1989). For example, there is no recognized theory of state tort liability that would support an action against a private person based upon that person's negligent failure in the abstract to "properly respond to an emerging public health crisis" or failure to "disclose information." *See* Opp. Memo. at 9.

[15]/  Because La. R.S. 29:733.1 allows claims to proceed where the plaintiff can establish that the owner or operator of the emergency shelter committed "gross negligence" or "willful and wanton misconduct" and this gross negligence or willful and wanton misconduct was the "proximate cause" of the alleged death or injury that occurred during the sheltering period, the United States' motion only seeks the dismissal of Louisiana Plaintiffs' FTCA negligence claims. To the extent Plaintiffs have pleaded claims that rely on more than simple negligence, such claims against the Government fall outside the scope of this particular motion to dismiss.

| | |
|---|---|
| J. PATRICK GLYNN | |
| Director, Civil Division, Torts Branch | MICHELLE BOYLE |
| | MICHELE GREIF |
| DAVID S. FISHBACK | JONATHAN WALDRON |
| Assistant Director | Trial Attorneys |
| | |
| OF COUNSEL: | *s/ Adam M. Dinnell* |
| | ADAM M. DINNELL (TX No. 24055405) |
| JORDAN FRIED | Trial Attorney |
| Associate Chief Counsel | United States Department of Justice |
| | Civil Division, Torts Branch |
| JANICE WILLIAMS-JONES | P.O. Box 340, Ben Franklin Station |
| Senior Trial Attorney | Washington, DC 20004 |
| Federal Emergency Management Agency | Telephone: (202) 616-4211 |
| Department of Homeland Security | Adam.Dinnell@usdoj.gov |
| | |
| | Attorneys for Defendant United States |

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2009, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

*s/ Adam M. Dinnell*
ADAM M. DINNELL (TX No. 24055405)