UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER  MDL NO. 07-1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION  SECTION N-5
 JUDGE ENGELHARDT
 MAG. JUDGE CHASEZ

This Document Relates to:

09-5348; 09-5349; 09-5350; 09-5351; 09-5352; 09-5353; 09-5354; 09-5355; 09-5356; 09-5357; 09-5358; 09-5372; 09-5376; 09-6396; 09-6397; 09-6398; 09-6399; 09-6400; 09-6873; 09-6874; 09-6875; 09-6876; 09-6877; 09-6878; 09-6885; 09-7356

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION
TO "MOTION FOR EXTENSION OF DEADLINES TO COMPLY
WITH PRETRIAL ORDERS 40 & 49 BY PLAINTIFF" (Rec. Doc. 9572)

Defendant United States of America ("United States") hereby submits its Memorandum in Opposition to "Motion for Extension of Deadlines to Comply with Pretrial Orders 40 & 49 by Plaintiff" (Rec. Doc. 9572). The Court should deny Plaintiffs' Motion and dismiss Plaintiffs' claims because they have failed to comply with the requirements of Pretrial Orders 40 and 49, and have failed to demonstrate that they have exercised due diligence to identify the manufacturers of the temporary emergency housing units ("EHUs") that they occupied.

## STANDARD OF REVIEW

The relevant section of Fed. R. Civ. P. 16(b)(4) provides that a pretrial scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The purpose of a Scheduling Order, is in part to assist in expediting disposition of an action, and Rule 16(b)(3) authorizes district courts to include in a Scheduling Order deadlines addressing appropriate matters that may facilitate this goal. *See* Fed. R. Civ. P. 16(b)(3). Consistent with

the authority vested in the trial court by Fed. R. Civ. P. 16, the Fifth Circuit gives the district court "'broad discretion to preserve the integrity and purpose of the pretrial order." *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208 (5th Cir.1992) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir.1990)).

Rule 16(b) requires that a party demonstrate good cause to modify a scheduling order deadline. Fed. R.Civ. P. 16(b)(4); *see also Tunica-Biloxi Indians of Louisiana v. Pecot*, 227 F.R.D. 271, 276-77 (W.D. La. 2005). The "good cause" standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir.2003) (quoting 6A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 1522.1 (2d ed.1990)). "[T]he good cause showing unambiguously centers on [the mover's] diligence." *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F.Supp.2d 845, 851 (E.D. Tex.2004); *see also Verhoeven v. Balboa Ins. Co.*, No. 06-4891, 2007 WL 4374222, at *7 (E.D. La. 2007) (absence of prejudice to the non-moving party is irrelevant to whether there exists good cause); *Porter v. Milliken & Michaels, Inc*, 2001 WL 378687 *1 (E.D. La. 2001) (same). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Smith v. United Parcel Svc., Inc.*, 902 F.Supp. 719, 721 (S.D. W.Va.1995); *see also Porter*, 2001 WL 378687 *1 (mere inadvertence by the movant does not satisfy the "good cause" requirement). In *Dilmar Oil Co, Inc. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D. S.C.1997), the court explained:

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may

> "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of a party seeking the extension." Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Id*. at 980 (citations omitted). *See also Ordemann v. Unidentified Party*, 2008 WL 695253 *2 (E.D. La. 2008) (inexplicable delay and failure to timely move to alter scheduling deadline "is tantamount to no explanation at all").

## ARGUMENT

The Court should deny Plaintiffs' motion because they have failed to meet their burden and demonstrate that they have exercised due diligence to comply with PTO 40 and 49. Plaintiffs' counsel asserts, without providing any specific facts as to any individual claimant, that they and their clients have exercised due diligence and that good cause exists to alter and amend PTO 40 and 49 because: (1) for some unspecified number of claimants, Plaintiffs' counsel has been unable to contact the claimant and obtain information that the Federal Emergency Management Agency ("FEMA") requires to search the applicable database to identify the EHU that the claimant occupied; (2) for some unspecified number of claimants, Plaintiffs' counsel have been unable to ascertain from their clients who was the head of household who signed the paper work and was issued the EHU; and (3) for some unspecified number of claimants, the claimants apparently do not recall their FEMA Identification Number ("FEMA ID") and did not retain any disaster aid related paperwork which reflects their FEMA Identification Number. *See* Exh. 1, Aug. 28, 2009 Email Plaintiff Counsel / DOJ.

As an initial matter, Plaintiffs have failed to demonstrate that they took timely and reasonable steps to identify and provide information necessary for FEMA to search its database for the FEMA Barcode and Vehicle Identification Number ("VIN") of the EHU occupied by a

3

claimant.  Throughout this litigation, the Court, Government Counsel, and Plaintiffs' Liaison Counsel have consistently urged all Plaintiffs to provide certain necessary identifying information to conduct a matching search.  Commencing with the January 30, 2009 Joint Report, and repeated in every Joint Report filed thereafter, all counsel were instructed that to conduct a matching search FEMA claimants must submit the name of the head of the household for the family who was issued the EHU, that disaster aid recipient's FEMA ID number, and the city, state, and street address where the unit was installed.[1]  *See* Joint Reports No. 8 (Rec. Doc. 1075 at 9), No. 9 (Rec. Doc. 1220 at 8-9), No. 10 (Rec. Doc. 1458 at 5), No. 11 (Rec. Doc. 2012 at 12), No. 12 (Rec. Doc. 2604 at 9-10), and No. 13 (Rec. Doc. 5959 at 3).  Further information that may assist FEMA in confirming the accuracy of a search result include the disaster aid recipient's social security number and date of birth.  As government counsel have repeatedly informed Plaintiffs, this information is essential for FEMA to perform a reliable "matching request" of the database to identify the VIN of the EHU, which would also identify the manufacturer.  *See, e.g.*, Exh. 20, Cover Letter to 11/4/2009 Production of Matching Exhibit QQQQ.

---

[1] As Plaintiffs counsel is well aware, the most important among the required information is the FEMA ID number and the State where the unit at issue was installed.  In May of 2008, FEMA attempted to provide matching information for submissions that did not include FEMA ID numbers; besides creating a great burden on FEMA, this resulted in a very low matching rate of approximately twenty-five (25) percent due to FEMA's inability to accurately ascertain the identity of an individual based on other information provided.  Where a FEMA ID number and State ID have been provided, however, the United States' match rate averages greater than ninety (90) percent.  FEMA's inability to match a small minority of names where the required information was submitted is likely due to one of the following reasons: (1) the information was provided for a client who was not the head of household, (2) the client was never provided an EHU from FEMA, or (3) the FEMA ID number or state identification submitted for matching was simply incorrect.

In the instant case, Plaintiffs' counsel has consistently submitted matching requests that failed to contain the information which they know FEMA requires to search its database to provide matching information. *See* Exh. 2, 4/3/2009 Buzzbee Law Firm Match Request Exhibit W; Exh. 3, 6/19/2009 Buzzbee Law Firm Match Request Exhibit JJ; Exh. 4, 8/21/2009 Buzzbee Law Firm Match Request Exhibit VVV; Exh. 5, 9/4/2009 Buzzbee Law Firm Match Request Exhibit BBBB; Exh. 6, 9/17/2009 Buzzbee Law Firm Match Request Exhibit FFFF; Exh. 7, 9/23/2009 Buzzbee Law Firm Match Request Exhibit LLLL; Exh. 8, 9/29/2009 Buzzbee Law Firm Match Request Exhibit PPPP; Exh. 9, 10/2/2009 Buzzbee Law Firm Match Request Exhibit QQQQ; Exh. 10, 12/21/2009 Buzzbee Law Firm Match Request Exhibit ZZZZZ. For example, the Buzbee Law Firm submitted a matching request that contained FEMA ID numbers for only 860 of the 7,278 names submitted for matching. *See* Exh. 2, 4/3/2009 Buzzbee Law Firm Match Request Exhibit W. For the 860 with FEMA ID numbers, FEMA returned matching information on 821 names, a match rate of approximately 95 percent. *See* Exh. 11, 4/27/2009 FEMA Matching Results for Exhibit W. This match rate is consistent with FEMA's matching rate for the instant Plaintiffs' other matching requests. Excluding one currently pending request, the instant Plaintiffs have submitted approximately 2,200 client names that included the FEMA ID number and the state were each unit was located, and FEMA returned matching information on 2,100 of them, resulting in a match rate of greater than 95 percent.[2] *See* Exh. 12 (Exhibit JJ Matching Results); Exh. 13 (Exhibit VVV Matching Results); Exh. 14 (Exhibit BBBB Matching

---

[2] FEMA's inability to achieve a 100 percent match rate is likely due to the same reasons listed in Footnote 1, *supra*. For those who resided in an EHU but were not issued an EHU by FEMA, Plaintiffs must submit matching information for the Head of household / person issued the EHU by FEMA in order to obtain their matching information.

Results); Exh. 15 (Exhibit FFFF Matching Results); Exh. 16 (Exhibit LLLL Matching Results); Exh. 17 (Exhibit PPPP Matching Results); Exh. 18 (Exhibit QQQQ Matching Results).

Plaintiffs' counsel rejected the Government's request that he produce the FEMA ID number of the head of household for the trailer in which each Plaintiff family lived. Plaintiffs' counsel failed to provide any good reason for the failure to provide the information that FEMA needs in order to provide reliable matching information – information that is undeniably within the possession and control of counsel's own clients. On August 28, 2009, Plaintiffs' counsel, in response to the Government's e-mail explained:

> I appreciate the government's assistance in trying to identify the trailers involved that allegedly made my clients sick but, contrary to what you stated in your last email, ***I have to tell you, "no," I do not think it is reasonable for FEMA to tell the residents of these trailers that they must have the FEMA ID # of the head of household for the trailer in which they lived.*** Honestly, I think such a request is insensitive, impractical, and flat out wrong. Moreover, I think such a request evinces a complete misunderstanding of my clients' personal situation and the circumstances that caused my clients to seek assistance from the government that they support with their tax dollars. You or your client FEMA have information identifying almost everyone who resided in these toxic trailers. Please consult that database or let us do so. Please do not take a unreasonable position making it more difficult to identify the trailers for those your client was charged to help.

Exh.19, Aug. 28, 2009, E-Mail Plaintiffs Counsel / DOJ (emphasis added).[3]

Given that Plaintiffs' counsel has failed to provide information necessary for matching and has refused to even request that their clients provide the required information which they control, the Court must deny Plaintiffs' motion. The conduct of Plaintiffs' counsel shows that

---

[3] Although the United States has repeatedly requested that PSC omit names of minors and non-head of households from matching requests and only submit names of heads of household who were issued an emergency housing unit by FEMA due to the duplicative matching burden on FEMA, the United States has continued to process all names submitted that contain a FEMA ID and state where the unit was located, even where this information has not been omitted.

they have failed to meet their burden bu demonstrating that they exercised due diligence to identify the manufacturer of the unit that each of the Plaintiffs occupied.  Additionally, despite the Government's request, Plaintiffs refused to provide any specific instances where FEMA was unable to match a specific claimant despite Plaintiffs having submitted the required information to match. *See* Exh. 1, 12/28/2009 e-mail exchange between Scott Daniels and Henry Miller.

Further, Plaintiffs' motion and arguments in support of their assertion that there exists "good cause" to extend the deadlines established by PTO 40 and 49 demonstrate a substantive misunderstanding of the matching process.  Specifically, contrary to Plaintiffs' assertions, FEMA's database does not track EHUs by manufacturer of the unit; by contractor that hauled and installed the unit; or by persons who occupied the unit.  Rather, FEMA tracks EHUs by their VIN and FEMA Barcode number, which can be used to identify the manufacturer of a unit and the installation contractor.  In fact, this is the most reliable way to identify the manufacturer and installation contractor for a given unit. Simply put, if a VIN is provided, Plaintiffs have the ability to determine the manufacturer and installation contractor for that unit without any additional information.

The United States has explained the matching process on numerous occasions to opposing counsel, most recently in Joint Report No. 13.  As explained in the Court appointed Steering Committee's Joint Report No. 13:

> Based upon recent discussions with counsel for the Hurricane Legal Center ("HLC") and review of the HLC's recently withdrawn Motion to Compel, the United States believes that some counsel may not understand the matching process and what actions that they must take to identify the manufacturer of the EHU that their client occupied and IA/TAC contractor that installed the unit.
>
> In response to a matching request, the United States produces information obtained from the FEMA FRRATS database.  The key information produced to a

> claimant is the VIN number and FEMA barcode number of the EHU or EHUs issued to a disaster victim.  Using the VIN number, a claimant can determine the identity of the manufacturer of the unit that they occupied.  To do this, the claimant must take the VIN number identified and compare it with the "Prefix Key" produced by the Manufacturers' Liaison Counsel in Spring 2008.  Each manufacturer has a unique prefix number that is contained in the VIN.  The "Prefix Key" identifies that number for each of the manufacturer defendants, thereby allowing a claimant using the VIN number to determine the manufacturer of the unit that he or she occupied.  In addition, a claimant using the VIN number can also determine the identity of the manufacturer by accessing the link on the following internet page and inputting the VIN number:
>
> http://www.nhtsa.dot.gov/cars/rules/manufacture/
>
> For purposes of identifying the IA/TAC contractor, the claimant must search the Excel spreadsheet produced by the Government to Liaison Counsel in January 2009.  That searchable spreadsheet lists each of the EHUs that the IA/TAC contractors installed by VIN number.
>
> Further, claimants should be aware that the matching process identifies the VIN number of the EHU that FEMA issued to a disaster victim.  FEMA does not retain information regarding the identity of all persons who occupied or resided in an EHU.  Generally, the reason why the Government is unable to provide a match for a claimant is because: (1) the personal data provided is inaccurate (incorrect name, FEMA identification number, social security number, address where unit was installed, dates of occupancy), or (2) the claimant occupied an EHU that had been issued to some other person.

Joint Report No. 13 at 4-5 (Rec. Doc. 5959).  This last paragraph is, in essence, contained in

each cover letter accompanying the Government's production of matching information:

> The United States' ability to produce information in response to Plaintiffs' discovery requests is contingent upon Plaintiff's ability to provide the requested information describing each client . . . . To the extent matching information is not provided for any of the listed clients, it is because FEMA was unable to locate these persons in their system based upon the information provided.
>
> *See*, *e.g.,* Exh. 20, Cover Letter to 11/4/2009 Production of Matching Exhibit QQQQ.

In the instant motion, Plaintiffs seek to extend PTO 40 and 49 deadlines for all claimants

for whom they have failed to identify the manufacturer and/or installation contractor of the EHU

that they occupied.  Plaintiffs, however, merely allege an inability to match an unspecified

8

number of their clients and utterly fail to demonstrate that they exercised due diligence in pursuing the identify of the manufacturer or installation contractor.  Accordingly, the Court should deny this Motion because (1) these Plaintiffs have failed to demonstrate that they submitted to the Government the information that FEMA requires to run a matching request, and (2) the available evidence shows that these claimants failed to exercise due diligence to identify the information that the FEMA requires to run a matching request.

## CONCLUSION

For all of these reasons the Court should deny Plaintiffs' motion to modify and alter the deadlines established by Pretrial Order 40 and 49.

Dated: January 5, 2010                                             Respectfully Submitted,

TONY WEST                                                          HENRY T. MILLER
Assistant Attorney General, Civil Division                         ADAM BAIN
                                                                   Senior Trial Counsel

J PATRICK GLYNN
Director, Torts Branch, Civil Division                             ADAM DINNELL
                                                                   MICHELLE BOYLE
DAVID S. FISHBACK                                                  MICHELE GREIF
Assistant Director                                                 Trial Attorneys

OF COUNSEL:                                                        //S// *Jonathan R. Waldron*
JORDAN FRIED                                                       JONATHAN R. WALDRON
Associate Chief Counsel                                            (IL. Bar No. 6292058)
                                                                   Trial Attorney
JANICE WILLIAMS-JONES                                              United States Department of Justice
Senior Trial Attorney                                              Civil Division – Torts Branch
FEMA/DHS                                                           P.O. Box 340, Ben Franklin Station
Department of Homeland Security                                    Washington, D.C. 20004
Washington, D.C. 20472                                             Attorney Telephone: (202) 307-2091
                                                                   Jonathan.Waldron@USDOJ.Gov

                                                                   Attorneys for the United States of America

9

## CERTIFICATE OF SERVICE

      I hereby certify that on January 5, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

                                                                                                    *//S// Jonathan R. Waldron*
                                                                                                     JONATHAN R. WALDRON (IL. Bar No. 6292058)