IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | § | MDL NO: 1873 |
| FORMALDEHYDE PRODUCTS | § | |
| LIABILITY LITIGATION | § | SECTION: N (5) |
| | § | |
| | § | JUDGE ENGLEHARDT |
| | § | |
| | § | MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO: | § | |
| *North American Catastrophe Services,* | § | |
| *Inc. v. Northfield Ins. Co.*, No. 09-3818 | § | |

**MEMORANDUM IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT ON THE DUTY TO DEFEND**

In ruling on this motion, the Court faces a single issue:

- An insurer's duty to defend is determined solely by the allegations of the plaintiff's complaint against its insured, and an obligation to furnish a defense exists unless the complaint unambiguously excludes coverage. In this case, comparing the allegations of the underlying plaintiffs' allegations against North American Catastrophe Services, Inc. ("NACS") with the terms of an insurance policy issued by Northfield Insurance Company leaves open the possibility of coverage under the policy. Does Northfield therefore have a duty to defend NACS against those claims?

Although this Court has previously concluded that Louisiana law governs the interpretation of the insurance policy at issue, whether Northfield has a duty to indemnify NACS for any potential liability is immaterial to the relief sought in this motion.[1] That is, even assuming that there remain questions as to the applicability of certain policy exclusions, because the policy does not unambiguously exclude coverage for plaintiffs' claims, Northfield owes NACS a defense.

## STATEMENT OF FACTS

In August 2004, NACS purchased a commercial general liability ("CGL") insurance policy from Northfield.[2] At the time the policy issued, NACS was engaged in the business of procuring modular temporary housing units for FEMA. As evidenced by the policy's declarations, Northfield was aware of the nature of NACS' business activities when it issued the policy.[3]

In the aftermaths of Hurricanes Katrina and Rita, NACS acted as a broker between FEMA and modular-home manufacturers in acquiring emergency housing units ("EHUs") for persons displaced by the storms. Some residents of those EHUs have since filed suit against the manufacturers of the EHUs and other involved parties, including NACS.

Shortly after being named a defendant in the first of these lawsuits, and pursuant to the terms of the policy, NACS timely advised Northfield of the claims

---

[1] *See* Order and Reasons denying Northfield's Motion to Transfer Venue for Convenience at pp. 5-6 (Dec. 7, 2009). A copy is attached hereto as Exhibit A.
[2] *See* Northfield Insurance Company policy numbers CP494600 and CP494600-1 covering the period from August 25, 2004 through August 25, 2006 ("Insurance Policy"), attached hereto as Exhibit B.
[3] *Id.*

asserted against it. NACS also requested that Northfield furnish a defense and pay any liability ultimately found to be due. Northfield, however, disclaimed all liability under the policy with respect to the claims in the underlying lawsuits and continues to refuse to undertake NACS' defense of these claims.

Northfield's refusal to defend NACS in these lawsuits prompted this declaratory judgment action. Regardless of how the indemnity issue may ultimately be resolved, there are no material facts in dispute which would absolve Northfield of its duty to defend NACS in the FEMA trailer litigation.

## LAW & ARGUMENT

### I.   The pleadings alone determine Northfield's duty to defend NACS

An insurer's duty to defend is broader than its liability for damage claims.[4] Insurers are obligated to furnish a defense unless a complaint unambiguously excludes coverage, and courts liberally construe the complaints to determine whether any one claim triggers the duty to defend.[5] "Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiffs, an insurer must defend the insured regardless of the outcome of the suit."[6] In other words, an insurer must defend the insured if a complaint discloses even a possibility of liability under an insurance policy.[7]

---

[4] *Steptore v. Masco Const. Co., Inc.,* 93-2064 (La. 8/18/94), 643 So.2d 1213, 1218 (citation omitted).
[5] *Yount v. Maisano,* 627 So.2d 148, 153 (La.1993).
[6] *Id.*
[7] *Steptore,* 643 So.2d at 1218.

Under these guiding principles, to determine whether Northfield is obligated to defend NACS, it is only necessary to compare the allegations of the underlying plaintiffs' complaints with the terms of the policy to see if the claims fall within the scope of Northfield's duty to defend.

## II.     Plaintiffs' allegations in the underlying lawsuits

NACS is a defendant in two related cases pending before the Court in this multi-district litigation.[8] In both lawsuits, plaintiffs seek damages allegedly resulting from exposure to formaldehyde while living in the EHUs procured by NACS pursuant to its contract with FEMA. Not surprisingly, both lawsuits allege NACS' liability under similar theories.

Specifically, plaintiffs in both suits allege that NACS had actual or constructive knowledge that the EHUs off-gassed formaldehyde, and that extended habitation would expose the plaintiffs to elevated levels of formaldehyde.[9] Plaintiffs further assert that NACS' failure to act reasonably in identifying, selecting, and procuring the EHUs proximately caused their exposure to formaldehyde, and, consequently, their injuries.[10] In short, plaintiffs assert that NACS' negligence in procuring

---

[8] The first action is captioned *Aldridge, et al., v. Gulf Stream Coach, Inc., et al.,* Member Case no. 07-9228 (E.D. La. filed Nov. 30, 2007). A copy of the Aldridge Original and First Supplemental; and Amending Complaints are attached hereto as Exhibit C. The second action is captioned *Montrell Sinegar, et al. v. Forest River, Inc., et al.,* Member Case no. 09-2926 (E.D. La. filed Mar. 2, 2009), and a copy of the Sinegar Complaint is attached hereto as Exhibit D.
[9] *See* Sinegar Complaint at ¶ 117.
[10] *See* Aldridge First and Supplemental Amending Complaint at ¶¶ 73-74; Sinegar Complaint at ¶¶ 120-121.

suitable EHUs caused them adverse health consequences.[11] Because these are potentially valid causes of action against NACS, Northfield should be required to honor the insurance agreement and furnish NACS a defense to these claims.

### III. The policy's insuring agreement obligates Northfield to defend NACS against any suits seeking damages allegedly resulting from "bodily injury"

Northfield issued NACS a CGL policy effective from August 25, 2004 to August 25, 2006. The policy provides primary liability coverage for sums that NACS becomes legally obligated to pay as damages due to "occurrences" causing "bodily injury" or "property damage." The Sinegar and Aldridge lawsuits can only be characterized as claims for damages that allegedly stem from occurrences that resulted in personal injuries.

The policy requires Northfield to defend NACS with respect to any "suit" that alleges any covered "occurrence."[12] The policy's insuring agreement provides as follows:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily

---

[11] *See* Aldridge First and Supplemental Amending Complaint at ¶¶ 67-72; Sinegar Complaint at ¶¶ 114-119.
[12] *Id.*

    injury" or "property damage" to which this insurance does not apply…. [13]

In sum, Northfield agreed to furnish a defense to any suit for damages against NACS on account of injury, sickness, disease or destruction, even if the suit is groundless, false, or fraudulent. Moreover, the above disclaimer related to Northfield's duty to defend has no bearing on whether such a duty exists; it is necessary defer to the considerations articulated in this State's jurisprudence to make that determination.

  **IV.** **There is no genuine dispute as to the material facts pertinent to Northfield's duty to defend NACS in the underlying lawsuits**

To warrant summary judgment, the evidence must show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[14] In this case, comparing the allegations of the plaintiffs' complaints to the policy language yields the following conclusion: There are no pertinent material facts in dispute which could relieve Northfield of its duty to defend.

Significantly, this Court has concluded that "…Northfield consented to suit within Louisiana and under Louisiana law."[15] Consequently, Louisiana law will govern the interpretation of the insurance policy, including as it pertains to the applicability of the policy's pollution exclusion. Regardless, however, of this Court's consideration of the policy exclusions, it is obvious that plaintiffs' complaints

---

[13] *See* Insurance Policy, Commercial General Liability Coverage Form, p. 1 (emphasis added).
[14] FED. R. CIV. P. 56(c).
[15] *See* Order and Reasons at p. 6.

against NACS disclose, at the very least, the possibility of liability under the policy. Since the policy does not preclude every possibility of coverage, Northfield should be required to defend NACS.

## CONCLUSION

Plaintiffs in the underlying lawsuits allege that they suffered "bodily injuries" caused by an "occurrence" as those terms are defined in the Northfield policy. The policy certainly contemplated coverage for such claims. Notwithstanding the question of Northfield's duty to indemnify NACS for any potential liability, there can be no doubt that plaintiffs' complaints disclose at least the possibility of coverage. For these reasons, NACS requests that this Court enter an order requiring Northfield (1) to furnish a defense in the underlying Aldridge and Sinegar lawsuits and (2) to reimburse NACS for all costs incurred, including attorney's fees, as a consequence of Northfield's wrongful denial of its defense obligations, accruing from the date of the denial to the issuance of the order.

        Respectfully submitted,

        */s/ Kevin F. Bruce*
        John E. Galloway, Bar #5892
        jgalloway@gjtbs.com
        Kevin F. Bruce, Bar #31071
        kbruce@gjtbs.com
        GALLOWAY, JOHNSON,
        TOMPKINS, BURR & SMITH
        701 Poydras Street, 40th Floor
        New Orleans, Louisiana 70139
        Telephone: (504) 525-5802
        Facsimile: (504) 525-2456

        **Attorneys for North American Catastrophe Services, Inc.**

## Certificate of Service

I hereby certify that on the 6th of January, 2010, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record by operation of the Court's electronic filing system.



*/s/ Kevin Bruce*