## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE | * | MDL NO. 1873 |
| PRODUCT LIABILITY LITIGATION | * | |
| | * | SECTION "N - 5" |
| | * | |
| | * | |
| | * | JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO: | * | MAG. JUDGE CHASEZ |
| *EARLINE CASTANEL, ET AL V.* | * | |
| *RECREATION BY DESIGN, LLC,* | * | |
| *NO. 09-3251* | * | |

*******************************************************************************

### PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
### FILED BY SHAW ENVIRONMENTAL, INC.

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Earline Castanel, ("Plaintiff" or "Ms. Castanel"), who respectfully submits this Opposition to Shaw Environmental, Inc.'s ("Shaw"), Motion for Summary judgment on the issue of prescription.  Based upon the arguments submitted below, Ms. Castanel contends that: (1) *American Pipe* tolling does not apply to Shaw, both as an unnamed manufacturing defendant and as a joint tortfeasor; and (2) the prescriptive period did not begin to run based upon the notion of *contra non*.  Plaintiff contends these arguments are sufficient to defeat the Motion for Summary Judgment filed by Shaw, and upon a full review, prays that this Honorable Court will deny Shaw's Motion.

### I.      Background

In the immediate aftermath of Hurricane Katrina, the United States, through the Federal Emergency Management Agency ("FEMA"), engaged Shaw in a no-bid contract to provide a number of tasks to assist with the implementation of the Disaster Housing response.[1]  The contract between

---

[1] See Initial Contract Communications between Shaw and FEMA, attached as Exhibit "A".

1

FEMA and Shaw tasked Shaw with a number of areas of disaster response implementation,[2] including but not limited to: (1) hauling and transportation of Emergency Housing Units ("EHU"); (2) installation and make-ready of EHU's; (3) inspecting the EHU's; and (4) maintaining the EHU's once they had been installed.  Shaw was one of three contracting entities in Louisiana charged with the implementation of FEMA's disaster housing response, the others being Fluor Enterprises, Inc. and CH2M Hill Constructors, Inc. (collectively Shaw, Fluor and CH2M Hill are the "No-Bid Contractors").

Included in the thousands of EHU's assigned to Shaw pursuant to its contract, was a Recreation by Design, LLC, travel trailer, VIN #5CZ200RZ461125294 ("the Trailer").  The Trailer was designed by Recreation by Design as a recreational vehicle, not intended for long term habitation.  The Trailer was to be moved by Recreation by Design to 2261 Urquhart Street, New Orleans, Louisiana.  Upon information and belief, the trailer was delivered to the address and jacked up onto concrete piers in February of 2006.  Shortly after moving in to the Trailer, Ms. Castanel began to feel sick.

Shaw contends that on May 18, 2006, Shaw began discussions with C. Martin Company to begin a sequenced hand over of "Maintenance and Deactivation" for the EHUs originally tasked to Shaw.  This included Ms. Castanel's EHU, and Shaw contends that the transfer/hand-off of her Trailer was to take place on or about June 1, 2006.  However, also on May 18, 2006, *Hilliard, et al v. United States of America, et al.,* 06-cv-2576 was filed in the Eastern District of Louisiana, and brought class allegations against identified and unidentified manufacturers based upon negligence

---

[2]  See Excerpts from Shaw Scope of Work attached as Exhibit "B".

and strict liability (including failure to warn), as well as breach of warranty.[3]

Ms. Castanel continued to reside in the Trailer from her February 2006 move-in until March 2007.[4]  During this time, her physical condition continued to deteriorate, and she continued to suffer injury, including but not limited to, headaches, breathing problems and  itching dry skin.

On or about December 29, 2008, this Honorable Court issued its Order and Reasons denying class certification.  The *Aldridge* case was amended on January 21, 2009 which specifically named Shaw and the other No-Bid Contractors, but was not able to specifically match the Plaintiffs to No-Bid Contractors, because this information was exclusively in the possession of FEMA and the No-Bid Contractors themselves.  The Plaintiffs' Steering Committee ("PSC") was only provided with this information in or about February 2009.

On April 8, 2009, a little over three months after denial of class certification, Ms. Castanel filed her suit against Recreation by Design, Shaw and the United States.  Also in March, Shaw brought Rule 12(B) Motions to Dismiss based upon arguments of prescription, standing, and that it was not a manufacturer under the Louisiana Products Liability Act ("LPLA").  This Honorable Court, in its June 15, 2009 Order and Reasons (Doc. 1762), granted Shaw's motion only as to those Plaintiffs unmatched, but denied the Motion as to prescription, standing, and the LPLA.[5]

## II.    Standard of Law in Opposing a Motion for Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be

---

[3]  The *Hilliard* filing was to be followed by multiple additional suits in the following months asserting class allegations as well.

[4]  See the Plaintiff Fact Sheet of Earline Castanel, p. 9, Exhibit C.

[5]  The Order and Reasons is attached as Exhibit "D".

3

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. Rule 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claims. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is no genuine issue at trial.' *Celotex*, 477 U.S. at 324, *see also Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp*, 475 U.S. 574, 587 (1986), *Auguster v. Vermillion Parish School Bd*., 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (5th Cir. 2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

4

1994)(citations omitted).  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").  Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075.  Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the moving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

Finally, in the context of prescription, "Courts should resolve doubts about a prescription question in favor of giving the litigant his day in court." *Orthopaedic Clinic of Monroe v. Ruhl*, 786 So.2d 323, 328 (La. App. 2 Cir.), writ denied, 798 So.2d 970 (La. 2001), and "prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished." *Landry v. Blaise, Inc.*, 774 So.2d 187, 190 (La. App. 4 Cir.), writ denied, 776 So.2d (La. 2000).

### III. *American Pipe* Tolling Applies to Shaw

The concept of prescriptive tolling is laid out in *American Pipe and Construction Co., et al v. State of Utah*, *et al*, 414 U.S. 538, 554 (1974), wherein the Supreme Court held:

> (C)ommencement of class actions suspends applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.

The *American Pipe* Court also discussed efficiency and judicial economy being important to this notion and stated:

> A federal class action is no longer an 'invitation to joinder" but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious paper and motions...[T]he claimed members of the class stood as parties to the suit until and unless they received notice thereof and chose not to continue. Thus, commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs. To hold to the contrary would frustrate the principle function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier, individual motions to join or intervene as parties - precisely the multiplicity of activity which Rule 23 was designed to avoid...[6]

In the instant litigation, this prescriptive tolling runs not only against Recreation by Design and the United States, but also against Shaw. As will be discussed below, there are three reasons that this Honorable Court should read the tolling to apply to Shaw as well as Recreation by Design and the United States: (1) *American Pipe* prescriptive tolling has been held to apply to putative or unnamed defendants as well as plaintiffs, (2) when viewed in the context of judicial efficiency and economy discussed in *American Pipe*, suspension and interruption should be treated as a distinction without a difference, as numerous Louisiana courts have previously done and (3) the Plaintiff asserts that Shaw qualifies as a unnamed manufacturer or vendor, and thus is tolled in fact by *Hilliard.*

---

[6] 414 U.S. at 550-1.

6

### A.   *American Pipe* applies to Unnamed Defendants

As this Honorable Court has previously recognized in *Appleton Electric Company v. Graves Truck Line, Inc.*, 635 F.2d 603, 609-10 (7th Cir. 1980), the Seventh Circuit extended *American Pipe* to unnamed defendants.  The court, very cognizant of the *American Pipe* desire to promote judicial efficiency and economy, and to avoid a multiplicity of actions, stated:

> Unlike the Court in *American Pipe*, supra, we are confronted here with a true conflict between the operation of the statute of limitations and Rule 23.  This conflict can be resolved only by the promotion of one rule at the expense of the other, unless due process considerations require a particular result.  Our reading of the cases convinces us that due process is not offended by the tolling doctrine, even where a defendant has no notice of a suit until after the limitations period has run.  Cf.  *United States v. Wahl*, supra.[7]  The Supreme Court specifically rejected the contention that due process was abridged by the tolling doctrine in *American Pipe*, 414 U.S. at 556-59.

> We are persuaded that implicit in the Supreme Court's *American Pipe* decision was the Court's determination that "effectuation of the purpose of litigative efficiency and economy," (which Rule 23 was designed to perform) transcends the policies of repose and certainty behind statutes of limitations.  414 U.S. at 556. **We are guided by that conclusion in the instant case to hold that where a class action suit is instituted against a class of unnamed defendants, pursuant to Rule 23(b)(3), the statute of limitations is tolled as to all putative members of the defendant class.** (emphasis added).

The *Appleton* case was originally brought against seventeen named defendants, but was amended to add as defendants "all others similarly situated."  In the *Hilliard* Complaint filed in the instant MDL, the Complaint considers a group of as of yet unidentified defendants and styles them "Unnamed Manufacturers."[8]

---

[7]  583 F.2d 285 (6th Cir. 1978), the Sixth Circuit held that the filing of a complaint within the limitations period tolled the statute, even though the defendant was not served until three years after the limitations period had run.

[8]  In filings subsequent to *Hilliard*, the notion of unnamed manufacturers and defendant parties was repeated.

Ms. Castanel argues that in light of the *Appleton* ruling above, *American Pipe* tolling applies directly to Shaw, and that with the filing of *Hilliard*, the prescriptive period against Shaw was tolled. As such, when *Hilliard* was filed with its class allegations in May 2006, it tolled the running of the prescriptive period against Shaw itself.  When class certification was denied on December 29, 2008, Ms. Castanel would contend there were at least eight or nine months remaining on the prescriptive period in which she could bring individual claims against Recreation by Design, FEMA and Shaw, regardless of whether tolling had been suspended or interrupted by *American Pipe*. Ms. Castanel brought her individual claims on April 8, 2009.

> **B.     Interruption and Suspension are a Distinction Without Difference in the Context of *American Pipe*.**

Should this Honorable Court find the *Appleton* decision non-persuasive, Plaintiff contends that the claims against Shaw as a Joint Tortfeasor are preserved under Article 2324 of the Louisiana Civil Code which provides that interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.  Shaw has argued that there is a clear distinction between the concepts of interruption and suspension and, therefore, there was no prescriptive tolling against Shaw under the class action filings as they were not named until March 2009.  Ms. Castanel, however, would argue that, in the context of *American Pipe* itself, and class actions generally, that this a distinction without a difference, and that several Louisiana Courts have held that there is interruption as to joint tortfeasors upon the filing of class actions.

The *American Pipe* Court discussed at length the rationale for the limitations tolling. The Court found "a federal class action is no longer an 'invitation to joinder" but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions..."

The tolling was based on the concepts of promoting judicial economy and efficiency, and to avoid the filing of a multiplicity of actions that asserted identical claims. Further, federal class actions were 'truly representative suits," and the Court further stated to this effect.

> A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of the litigation which is the principle purpose of the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable.[9]

This discussion certainly intends to create a situation where additional filings into the class action are not necessary and avoided by judicial preference. This rationale also de-incentivizes any additional filings by a putative class member during the pendency of the question of class certification.

Further, the focus of the *American Pipe* decision was clearly that the prescriptive period be tolled during the pendency of a class action, rather than a focus on the distinction between suspension and interruption. In *American Pipe* itself, the rationale for using the term suspension may derive from the fact that the Court was considering a class action stemming from Section 5(b) of the Clayton Act, and stated:

> It remains to determine the precise effect the commencement of the class action had on the relevant limitations period. Section 5(b) of the Clayton Act provides that the running of the statutes of limitation be 'suspended' by the institution of a Government anti-trust suit based on the same subject matter.[10]

When discussing *American Pipe*, many courts give no distinction between suspension or interruption, and simply refer to the limitations period being tolled during the pendency of the class

---

[9]  414 U.S. at 553.

[10]  414 U.S. at 561.

action.  *See*, *In re: Katrina Canal Breaches Consolidated Litigation*, 601 F. Supp. 2d 809 (E.D. La. 2009); *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983); *Drumm v. Sizelar Realty Co., Inc.*, 817 F2d 1995 (5th Cir. 1987).  In addition to these federal decisions, there are a number of situations where Louisiana courts use the term suspension and interruption interchangeably.

In Louisiana, class action filings and the issue of tolling fall under Article 596 of the Louisiana Code of Civil Procedure.  Article 506 provides in part:

> Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein.

However, there are a number of cases where Louisiana courts have inserted the term interruption in the content of class action filings.  *See Pitts v. Louisiana Citizens Property Ins. Corp.*, 4 So.3d 107 (La. App. 4 Cir. 2009), which held that prescription was interrupted by the class action filing, and did not begin to run again until denial of certification; *Eastin v. Entergy Corp.*, 971 So.2d 374 (La. App. 5 Cir 2007), *writ denied*, 972 So.2d 1167 (La. 2008), interestingly in this case the court stated that the prescriptive period was interrupted by the filing of the class action, but also used the term suspension in a different place, reinforcing the lack of distinction in this context; *Williams v. State*, 350 So.2d 151 (La. 1977), held that the class action interrupts prescription as to claims of all members of the class.

The purpose of the distinction between suspension and interruption is to avoid delays and abuse.  In the instant litigation, this is a non-issue.  When the *Hilliard* suit was filed in May 2006, Ms. Castanel was still in her trailer, and was just becoming aware that she was not feeling well.  Further, Shaw still had contractual obligations over her trailer, and the damage caused by the jacking and installation would not become obvious for many more months.  As such, no time had run on the

prescriptive period against any defendant, and the fact that she filed suit barely three months after certification was denied is an indication that there was no intent to drag out the filing process by Ms. Castanel.  Further, Ms. Castanel refrained from any filing during the class certification pendency as was intended and discussed by the *American Pipe* Court.

Other courts in Louisiana have looked at the distinction between suspension and interruption in the context of class actions and simply found the terms to be interchangeable. The arguments raised by Shaw attempt to overcomplicate this matter.  Where the courts have held that the purpose of judicial economy and efficiency are best served by avoiding a multiplicity of actions, it would unfairly penalize a putative class member for not bringing an individual claim prior to the determination of the class certification.  In fact, the courts using the term interruption when stating that the prescriptive period would begin running again once class certification was denied is a good indicator that a hybrid term and application is appropriate in this context.

Finally, the Fifth Circuit, *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 346-47 (5th Cir. 2009), (citation *Lina v. Schmidt*, 595 So.2d 624, 629 (La. 1992), stated:

> Louisiana law favors redressability. The Louisiana Supreme Court has held that "prescription statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished; thus of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted."

As such, this Court should find that the filing of *Hilliard* tolled the prescriptive periods against all defendant parties, and that the tolling should satisfy La. C.C. Art. 2324's interruption against one joint tortfeasor counting against all.

**C.  Shaw is a Manufacturer under the LPLA**

While the distinction between suspension and interruption under *American Pipe* goes to Shaw's potential status as joint tortfeasor, Plaintiff also continues to assert that Shaw is a manufacturer under the Louisiana Products Liability Act, and that the filing of *Hilliard* directly tolled the prescriptive period against Shaw.  The issue of Shaw's classification as a manufacturer under the LPLA has been argued and briefed in previous pleadings and remains a contested issue in the Plaintiffs' Motion for New Trial in the Alexander bellwether case.  However, in the interest of clarification and for the benefit of this Honorable Court, Plaintiff briefly rearticulates her position as follows.

The manufacture of a product is defined by Louisiana Revised Statute 9:2800.53(1) which states "manufacturing a product means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning, or refurbishing a product."  Even if Shaw contends that it had nothing to do with the refurbishment of Ms. Castanel's Trailer, because Shaw had handed over the contract on that unit. Shaw still played a pivotal role in the construction of the Trailer for use by Ms. Castanel.  Not only do the facts support this contention, but this Court in a prior decision language supported this contention.

This court, in its June 15, 2009 Order and Reasons stated:

This Court finds in the case of *Coulon v. Wal-Mart Stores, Inc.*, 734 So.2d 916 (La. App. 1 Cir. 1999), *writ denied*, 747 So.2d 1125 (La. 1999), cited by Plaintiffs, instructive.  In *Coulon*, Defendant Wal-Mart Stores, Inc. ("Wal-Mart") was found liable under the LPLA for injuries caused by a bicycle purchased from Wal-Mart. The defective bicycle was assembled by either Wal-Mart or by its contractor.  The alleged defect in the bicycle was a created in the assembly process.  The Louisiana First Circuit concluded that Wal-Mart would be liable under the LPLA as a manufacturer for any defects that are created in the assembly process.  That court reasoned:

'Although LSA-R.S. 9:2800.53 does not include the word "assembly" or "assemble"

> in the definition of "manufacturer" or "manufacturing a product," it does include the term "constructing." Construct is not defined in the LPLA; however, Black's Law Dictionary, sixth edition, defines construct as follows: "To build; erect; put together; make ready for use. To adjust and join materials, or parts of, so as to form a permanent whole. To put together constituent parts of something in their proper place and order." Accordingly, we conclude that the term "manufacturing a product" indirectly refers to assembling; thus, one who assembles a product for sale is properly deemed a manufacturer of the assembled product under the LPLA.'

It is important to note that the *Coulon* Court continued to state in the very next sentence that: "Accordingly, this entity would be liable under the LPLA as a manufacturer for any defects that are created in the assembly process." 734 So.2d 919, citing to *Rowell v. Carter Mobile Homes, Inc.*, 500 So.2d 748 (La. 1987); *Marshall v. Truck Equipment, Inc.*, 481 So.2d 1022 (La. App. 1 Cir. 1985). In addition to this Court's discussion of the LPLA and the *Coulon* case cited therein, the case of *Credeur v. Champion Homes of Boaz, Inc.,* 6 So.3d 339 (La. App. 3 Cir. 2009) is also relevant. The *Credeur* Court held a mobile home installation defendant to be a manufacturer and stated: If a retailer actively participates in the construction, assembly, or installation of the component parts that are essential for the structure to become useable for its intended purpose...then the retailer is held to the same standards as the manufacturer."

The fact pattern with Shaw as it relates to Ms. Castanel's unit shows several ways in which Shaw could be considered a manufacturer under the LPLA. First, Shaw took and converted the Trailer from a recreational vehicle, not to be used for long-term occupancy - the purpose and use for which it had been designed by Recreation by Design - to an installed dwelling to be used for long-term habitation. This process involved installing the Trailer onto concrete piers, connecting the Trailer to residential water, sewerage and electrical lines, as well as taking other steps in the make-ready for occupancy process.

For the abovementioned reasons, Shaw should be considered a manufacturer under the LPLA.  Plaintiff would argue that this puts Shaw directly under the tolling provisions of *American Pipe* and the Seventh Circuit's holding in *Appleton*.  If nothing else, the issue to whether Shaw is a manufacturer based upon the facts of this litigation are a dispute that should be determined at trial, rather than in this Motion for Summary Judgment.

      **IV.**    ***Contra Non Valentem* Applies to Ms. Castanel's Claims Against Shaw**

In addition to Plaintiff's assertion that the suit was brought against Shaw in a timely manner either as an anticipated unnamed defendant, or through the interruption of prescriptive tolling when the class allegations were asserted in *Hilliard*, the Plaintiff also contends that the doctrine of *contra non valentem* applies to this matter.  *Contra non valentem* is defined by Black's Law Dictionary, seventh edition, as "[t]he rule that limitations or prescriptive period does not begin to run against a plaintiff who is unable to act, usually because of the defendant's culpable act, such as concealing material information that would give rise to the plaintiff's claim."  At issue in the instant litigation is that the information relating to Shaw's role in the manufacturing process and the emergency housing response was entirely in the possession of the United States and Shaw itself, and not available to Ms. Castanel, unlike the Trailer being labeled a Recreation By Design unit or the obvious connectivity of FEMA in the housing response.[11]

The Louisiana Supreme Court expanded the doctrine from its traditional three situations where it would apply and added a fourth in *Corsey v. State of Louisiana*, 375 So.2d 1319 (La. 1979).  Traditionally, *contra non valentem*:

---

[11] In fact, matching information for Plaintiff and No-Bid Contractors was not received by the PSC from the Federal Government until early 2009.  Until this, there was no way to match a plaintiff with a no-bid contractor.

[A]pplied to prevent running of liberative prescription as follows: (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; and (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action. [citations omitted]

Modern jurisprudence also recognizes a fourth type of situation where *contra non valentem* applies so that prescription does not run: Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

This is further expounded upon by the Louisiana Fourth Circuit Court of Appeals in *Beth Israel v. Bartley, Inc.*, 579 So.2d 1066 (La.App. 4 Cir. 1991).  In *Beth Israel*, the court examined a defect in the installation of a roof on a synagogue.  The defect was not known by the plaintiff until after the prescriptive period had run, but plaintiff had relied upon a report from the defendant which caused the delay in identification of the problem.  The court, relying on *Corsey*, supra, held that "prescription does not run as long as it is reasonable for the victim/plaintiff not to recognize that the condition or problem may be related to the treatment or defect.  The focus is on the reasonableness of the tort victim's action or inaction."  *citing Griffin v. Kinberger*, 507 So.2d 821 (La. 1987)).

In examining the concept of liberative prescription and *contra non valentem*, the *Beth Israel* court held:

Liberative prescription of one year is also applicable to delictual actions so that a products liability claim is also subject to a one year limitation from the injury or damage or from the date the victim became aware of the defect.  La. C.C. Art. 3492...

Prescription does not commence to run until the plaintiff has actual or constructive knowledge of the tortuous act and the damage.  *Reed v. General Motors Corp.*, 400 So.2d 919 (La.App.. 1 Cir. 1981)...**Mere apprehension that something might be wrong is not sufficient.**  *Griffin v. Kinberger*, 507 So.2d at 821.  (emphasis added).

The equitable concept of *contra non valentem* should be applied here to bar prescription

because numerous factors contributed to Ms. Castanel's inability to appreciate her claims against Shaw.

These factors include Ms. Castanel's inability to obtain the necessary information to identify which contractor installed and maintained the EHU. Furthermore, Ms. Castanel could not have appreciated her claims against Shaw since she did not fathom that Shaw's installation and maintenance of the EHU could be partly or wholly the cause of any perceived injury related to the trailer. Accordingly, Ms. Castanel's contends that under the doctrine of *contra non valentem*, her claims against Shaw were not known or reasonably knowable.

## V. There Is No Distinction Between This Court's Prior Rulings And The Case At Bar

Shaw recognizes in its Motion to Dismiss that this Honorable Court has already determined, twice over, that claims of plaintiffs similarly situated to Ms. Castanel are not prescribed.[12] In doing so, however, Shaw wishes to cite a "critical distinction" between the Court's prior rulings and the case at bar. Yet, there is no true distinction. While Recreation By Design was not a named defendant in the *Hilliard* complaint filed on May 18, 2006, Recreation By Design is clearly a manufacturer within the intended defendant class. The mere fact that the manufacturer was not a named defendant, but rather a putative class member, is not such a distinction as to warrant a departure from this Court's prior rulings, because Recreation By Design was still a defendant. The filing of *Hilliard* on May 18, 2006, tolled the prescriptive period of plaintiffs, and those similarly situated, against the established defendant class under *American Pipe* which included both Recreation By Design and Shaw. Accordingly, there is no distinction between the defendants named and the putative

---

[12] The Court's Order and Reasons, dated September 2, 2009 (Rec. Doc No. 3012) and Order and Reasons, dated November 16, 2009 (Rec. Doc. No. 7241).

16

defendants, like Recreation By Design, and thus Shaw's Motion For Summary Judgment should be denied.

**VI.      Conclusion**

Quite simply, and for the reasons articulated above, Ms. Castanel brought a timely filed suit against Recreation by Design, FEMA and against Shaw.  Shaw's Motion for Summary Judgment on the issue of prescription attempts to complicate relatively straightforward concepts.  Ms. Castanel's Complaint was timely asserted against Shaw for the following reasons: (1) *American Pipe* tolling applies directing to Shaw as an unnamed defendant; (2) For the purposes of judicial economy and efficiency, and to avoid a multiplicity of actions, *American Pipe* effectively interrupts prescription against Shaw as a joint tortfeasor; (3) the Doctrine of *contra non valentem* applies to Castanel, and the prescriptive period did not run against Shaw because (a) Castanel's ignorance of the defect and injury caused by Shaw's installation and make-ready preparations; and (b) the procedural disincentive by the *American Pipe* tolling during the pendency of class certification; and (4) Shaw's Motion for Summary judgment is premature as to Shaw's status as a joint tortfeasor pending a determination and allocation of liability at trial.

WHEREFORE, Plaintiff Earline Castanel prays that this Honorable Court, for the reasons and arguments articulated above and herein, deny the Motion for Summary Judgment brought by Shaw Environmental, Inc. on the issues of prescription.

Respectfully submitted,

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:     */s/Gerald E. Meunier*

17

GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:     504/528-9973
gmeunier@gainsben.com


 */s/Justin I. Woods*
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:     504/528-9973
jwoods@gainsben.com


**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
RONNIE PENTON, #10462
MIKAL C. WATTS, Texas # 20981820
ROBERT BECNEL, #14072
DENNIS REICH, Texas #16739600

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading was served on all counsel for record

through electronic notification pursuant to the electronic filing in the United States District Court

for the Eastern District of Louisiana this 19th day of January, 2010.

18

/s/Gerald E. Meunier
GERALD E. MEUNIER, #9471