Case 2:07-md-01873-KDE-MBN   Document 10352-4   Filed 01/19/10   Page 1 of 15
Case 2:07-md-01873-KDE-ALC   Document 2803-10   Filed 08/24/2009   Page 1 of 15
Case 2:07-md-01873-KDE-ALC   Document 1762   Filed 06/15/2009   Page 1 of 15

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER      MDL NO. 07-1873
      FORMALDEHYDE PRODUCTS
      LIABILITY LITIGATION

                                            SECTION "N" (5)

THIS DOCUMENT RELATES TO
Member Case No. 07-9228; *Aldridge,
et al. v. Gulf Stream Coach, Inc., et al.*

## ORDER AND REASONS

Before the Court is the Motion to Dismiss (Rec. Doc. 1324), filed by Defendants Shaw Environmental, Inc. And CH2M Hill Constructors, Inc. (collectively referred to as the Individual Assistance/Technical Assistance Contractors or "IA/TACs"). After reviewing the original and supplemental complaints in the *Aldridge* matter, (Case no. 07-9228, Rec. Doc. 1; Case no. 07-1873, Rec. Docs. 1064, 1346), the memoranda of the parties, and the applicable law, the Court rules as set forth herein.

I.    BACKGROUND

After Hurricane Katrina made landfall on the Gulf Coast in late August 2005, the IA/TACs[1] contracted separately with the Federal Emergency Management Agency ("FEMA"), agreeing to provide certain services, including the management of the hauling and the

---

[1]     Aside from the IA-TACs who have filed this particular motion, two others existed: Fluor Enterprises, Inc. and Bechtel National, Inc.


PLAINTIFF'S EXHIBIT D

Case 2:07-md-01873-KDE-MBN   Document 10352-4   Filed 01/19/10   Page 2 of 15
Case 2:07-md-01873-KDE-ALC   Document 2803-10   Filed 08/24/2009   Page 2 of 15
Case 2:07-md-01873-KDE-ALC   Document 1762   Filed 06/15/2009   Page 2 of 15

installation of the emergency housing units ("EHUs") at issue in this litigation.

Although the Aldridge plaintiffs filed their original complaint on November 20, 2007 (Case No. 07-9228, Rec. Doc. 1), they did not assert claims against the IA/TACs until they filed the First Supplemental and Amending Complaint on January 21, 2009. (Rec. Doc. 1064). However, the First Amended Complaint failed to match individual plaintiffs with individual IA/TACs. Indeed, it was not until April 20, 2009 that Plaintiffs filed the Second Supplemental and Amending Complaint (Rec. Doc. 1346), wherein some of the named plaintiffs were matched to specific IA/TACs.

The IA/TACs have filed the instant motion, alleging three separate grounds for dismissal: (1) Plaintiffs' claims against them have prescribed; (2) subject matter jurisdiction is lacking as Plaintiffs have no Article III standing; and (3) Plaintiffs have failed to plead claims that are cognizable under the Louisiana Products Liability Act ("LPLA").[2]

## II. DISCUSSION

### A. Legal Standard - Motion to Dismiss under Rules 12(b)(1) and 12(b)(6)

The instant motion to dismiss is brought under both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Pursuant to rule 12(b)(1), a court may dismiss a complaint on motion of the defendant if the court lacks jurisdiction over the subject matter. See Fed.R.Civ.P. 12(b)(1). Here, the IA/TACs assert that this Court lacks subject matter jurisdiction because Plaintiffs have failed to establish Article III standing. The standard of review for such a motion is the same as that applied for a motion brought under rule 12(b)(6) for failure to state a claim for which relief can be granted. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir.1992).

---

[2] Specifically, the IA/TACs' standing argument is brought under Rule 12(b)(1) and their other arguments, relating to prescription and the LPLA, are brought under Rule 12(b)(6).

2

In considering a motion to dismiss brought under rule 12(b)(6), the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965 (quotation marks, citations, and footnote omitted). Plausible grounds "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the claim. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.*, (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B.   Analysis

The Court now addresses the IA/TACs' alleged grounds for dismissal:

#### 1.   Lack of Subject Matter Jurisdiction Based on Lack of Standing

The IA/TACs argue that because the *Aldridge* Plaintiffs have failed to comply with this Court's previous Orders (See Rec. Doc. 599, 604, and 842) requiring the matching of plaintiffs to defendants, their claims should be dismissed for lack of subject matter jurisdiction and lack of Article III standing. The IA/TACs assert that they were not added to this litigation until January 21, 2009, and even then, Plaintiffs' First Supplemental and Amending Complaint (Rec. Doc. 1064) did not specifically link any particular plaintiff to any particular IA/TAC. The IA/TACs

3

Case 2:07-md-01873-KDE-MBN   Document 10352-4   Filed 01/19/10   Page 4 of 15
Case 2:07-md-01873-KDE-ALC   Document 2803-10   Filed 08/24/2009   Page 4 of 15
Case 2:07-md-01873-KDE-ALC   Document 1762   Filed 06/15/2009   Page 4 of 15

contend that Plaintiffs' failure to match is inexcusable because Plaintiffs had the ability to match since at least February 22, 2008 when the Government first began providing them with CDs containing the entire inventory of EHUs. The IA/TACs note that Plaintiffs' first attempt to obtain IA/TAC information was not made until January 12, 2009. The Government quickly responded to this request on January 31, 2009 with information linking particular EHUs to specific IA/TACs.

In opposition, Plaintiffs explain that after the IA/TACs filed their motion, Plaintiffs requested and were granted leave on April 20, 2009 to file a Second Supplemental and Amending Complaint (Rec. Doc. 1346), wherein some of the named plaintiffs were matched to the specific IA/TACs. They contend that, based on the Second Amended Complaint, the IA/TACs argument asserting lack of standing is rendered moot. Plaintiffs acknowledge that the Second Amended Complaint only matches some - not all- of the plaintiffs to IA/TACs; however, they urge that the remaining unmatched plaintiffs remain that way for several reasons, including but not limited to: (1) lack of a FEMA Identification Number in their possession; (2) lack of EHU VIN number; and/or (3) typographical errors within the database which did not allow for matching. Plaintiffs warn that because of this, a number of matches will only be available through discovery upon the IA/TACs themselves. Essentially, Plaintiffs argue that their good faith efforts to obtain this information and to move the litigation forward (described in detail in their Opposition (Rec. Doc. 1361)) should effectively moot the standing arguments asserted by the IA/TACs. Last, Plaintiffs contend that the argument by the IA/TACs, that allowing the claims against them to proceed would be unfair or unduly burdensome based upon the current trial schedule, must fail because there are no *Aldridge* plaintiffs involved in the first flight of

4

Case 2:07-md-01873-KDE-MBN   Document 10352-4   Filed 01/19/10   Page 5 of 15
Case 2:07-md-01873-KDE-ALC   Document 2803-10   Filed 08/24/2009   Page 5 of 15
Case 2:07-md-01873-KDE-ALC   Document 1762   Filed 06/15/2009   Page 5 of 15

bellwether trials set in this MDL.

In reply, the IA/TACs disagree that their argument is moot. Indeed, they assert that the filing of Plaintiffs' Second Supplemental and Amending Complaint, wherein certain Plaintiffs were matched to certain IA/TACs was "too little too late." (Rec. Doc. 1390, p. 8). They complain that it provides matches for only *some* Plaintiffs and is, thus, insufficient. In the event this Court accepts the matches for some of the plaintiffs, the IA/TACs submit that standing is not properly asserted with respect to the unmatched plaintiffs, whose claims, they argue, should be dismissed.

Indeed, in its August 1, 2008 Order and Reasons (Rec. Doc. 599), the Court cautioned that "that any Defendants not specifically matched to individual Plaintiffs will be dismissed without prejudice." The Court also explained that sufficient and specific matching allegations are necessary to show the existence of Article III standing. Further, in its November 12, 2008 Order and Reasons (Rec. Doc. 884), the Court reinforced these instructions and concluded that because it was shown that some originally-named plaintiffs were matched to certain defendant manufacturers, standing existed that allowed those originally-named plaintiffs to add additional plaintiffs, defendants, and claims.

This conclusion can be applied in the instant case. Because Plaintiffs' Original Complaint (Case No. 07-9228, Rec. Doc. 1., section II) matched plaintiffs to specific defendant manufacturers, standing exists that allows those originally named plaintiffs to add additional plaintiffs, defendants (here, the IA/TAC contractors), and claims. Thus, the IA/TACs motion is denied in this regard. However, standing is a threshold issue, and this Court must still address the IA/TACs other grounds for dismissal.

Case 2:07-md-01873-KDE-MBN   Document 10352-4   Filed 01/19/10   Page 6 of 15
Case 2:07-md-01873-KDE-ALC   Document 2803-10   Filed 08/24/2009   Page 6 of 15
Case 2:07-md-01873-KDE-ALC   Document 1762   Filed 06/15/2009   Page 6 of 15

Last, with regard to this issue, the claim of any plaintiff who is asserting a claim against an IA/TAC but who is not yet matched to a specific IA/TAC is hereby dismissed without prejudice, in accordance with this Court's August 1, 2008 Order and Reasons (Rec. Doc. 599).

### 2. Prescription

The IA/TACs argue that Plaintiffs' claims have prescribed on the face of their Complaint. They allege that because Plaintiffs' Complaint sounds in tort, and because in Louisiana delictual actions prescribe in one year, Plaintiffs' claims against them prescribed one year after a reasonably minded Plaintiff could objectively determine by the exercise of reasonable diligence that there was a reasonable possibility that he/she was the victim of tortious conduct.

The IA/TACs note that the first case filed relating to formaldehyde in EHUs was *Hillard v. U.S.*, 06-2576. The *Hillard* case was filed on May 18, 2006. The IA/TACs assert that any potential claimants should likely have been aware of their related claims by the date *Hillard* was filed. Thus, they claim that the formaldehyde claims against them prescribed one year from that date or on May 18, 2007. The instant case was not filed until November 30, 2007, and the IA/TACs were not added until January 13, 2009.

In opposition, Plaintiffs assert that IA/TACs' entire prescription argument is incorrectly tied to the May 2006 filing of *Hillard*. Plaintiffs note that the IA/TACs fail to provide any support for the proposition that knowledge of the individual Aldridge plaintiffs regarding their claims in this litigation may be inferred from the filing of *Hillard*. Plaintiffs note that as this Court reasoned in denying class certification, each claim in this case is individual and made up of a unique set of facts. Thus, Plaintiffs assert that what each Aldridge plaintiff knew about formaldehyde exposure or the possibility of legal claims relating thereto, and when this

6

Case 2:07-md-01873-KDE-MBN   Document 10352-4   Filed 01/19/10   Page 7 of 15
Case 2:07-md-01873-KDE-ALC   Document 2803-10   Filed 08/24/2009   Page 7 of 15
Case 2:07-md-01873-KDE-ALC   Document 1762   Filed 06/15/2009   Page 7 of 15

knowledge occurred, are questions that can be answered only on a case-by-case basis.

In reply, the IA/TACs explain that they do not contend that the commencement of the *Hillard* lawsuit itself started the prescription clock, only that its filing date is a "good proxy (for purposes of prescription) to determine when any given plaintiff knew or should have known of his or her formaldehyde claim against the IA/TAC defendants." (Rec. Doc. 1390, p. 3). The IA/TACs note that the instant lawsuit was filed on November 30, 2007, 18 months after *Hillard*. Further, Plaintiffs did not, or rather, were not granted leave to, allege claims against the IA/TACs until January 13, 2009. Thus, the IA/TACs claim that this motion must be granted on prescription grounds even if the date when these plaintiffs knew or should have known of their claims is November 29, 2006, and arguably as late as January 12, 2008.

The IA/TACs also explain that they are not maintaining that the *Aldridge* plaintiffs knew or should have known that the *Hillard* case had been filed. They reason that because the *Hillard* plaintiffs knew about their claims on or before May 18, 2006, then it is unreasonable to conclude that the *Aldridge* plaintiffs neither knew, nor should they have known about their claims until much later. Because the *Hillard* plaintiffs' claims are identical in substance to those asserted by the *Aldridge* plaintiffs, and given the immediate nature of these claims (for example, eye irritation, nose bleeds, headaches), it is clear from the face of the Complaint that the *Aldridge* plaintiffs knew or should have found out about their claims before or quite soon after the *Hillard* plaintiffs' discovered the same thing. Further, the IA/TACs note that Plaintiffs failed to set forth facts in their opposition to suggest that they could not have known about their claims within months after the *Hillard* case was filed. In summary, the IA/TACs allege that the *Aldridge* plaintiffs did not file their claims against them until January 13, 2009, which was over two and a

7

Case 2:07-md-01873-KDE-MBN   Document 10352-4   Filed 01/19/10   Page 8 of 15
Case 2:07-md-01873-KDE-ALC   Document 2803-10   Filed 08/24/2009   Page 8 of 15
Case 2:07-md-01873-KDE-ALC   Document 1762   Filed 06/15/2009   Page 8 of 15

half years after the *Hillard* action was filed. They assert that this date is too late to permit a reasonable conclusion that the filing of these claims was timely.

As the IA/TACs point out, under Louisiana law, actions sounding in tort "are subject to a liberative prescription of one year." La. Civ.Code art. 3492. "This prescription commences to run from the day injury or damage is sustained." *Id.* "The damage suffered must be actual and appreciable in quality-that is, determinable and not merely speculative." *Orthopaedic Clinic of Monroe v. Ruhl*, 786 So.2d 323, 328 (La.App. 2d Cir.), *writ denied*, 798 So.2d 970 (La.2001). "Damage is sustained, for prescription purposes, only when it has manifested itself with sufficient certainty to be susceptible to proof in a court of justice." *Landry v. Blaise, Inc.*, 774 So.2d 187, 190 (La.App. 4th Cir.), *writ denied*, 776 So.2d (La.2000); see also *Cameron Parish School Board v. ACandS, Inc.*, 687 So.2d 84, 88 (1997) ("damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support accrual of a cause of action"); *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 527 (5th Cir.1995). "The damage must be actual and appreciable in quality." *Id.*

"Courts should resolve doubts about a prescription question in favor of giving the litigant his day in court." *Ruhl*, 786 So.2d at 328. "Prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished." *Landry*, 774 So.2d at 190. "Accordingly if a petition does not show that it has prescribed on its face, the burden is on the party raising the objection of prescription to prove the facts to support prescription." *Id.*

In the *Aldridge* case, the complaints that relate directly to the contractor defendants are the first (Rec. Doc. 1064) and second (Rec. Doc. 1346) amended complaints. It has not been shown, on the faces of these complaints, that Plaintiffs' claims against the contractor defendants

8

Case 2:07-md-01873-KDE-MBN   Document 10352-4   Filed 01/19/10   Page 9 of 15
Case 2:07-md-01873-KDE-ALC   Document 2803-10   Filed 08/24/2009   Page 9 of 15
Case 2:07-md-01873-KDE-ALC   Document 1762   Filed 06/15/2009   Page 9 of 15

have prescribed - nor have the contractor defendants, at this early juncture, met their burden of proving the facts necessary to support prescription. The contractor defendants' arguments focus on when Plaintiffs should have been put on notice of their alleged tortious conduct. However, prescription does not commence to run upon acquiring notice of a wrongful act. *Gochnour v. Boring Aircraft Co.*, 1992 WL 129605 *2 (E.D.La.1992) (" 'mere notice of a wrongful act' is not sufficient to commence the running of prescription"). It commences to run when injury or damage is sustained. La. Civ.Code art. 3492. The contractor defendants assert in their Rule 12(b)(6) motion that Plaintiffs should or at least should likely have been aware of any potential claims by the date the first FEMA trailer formaldehyde case, *Hillard*, was filed on May 18, 2006. If this is true, the Aldridge plaintiffs would have experienced an appreciable injury allegedly caused by the contractor defendants by May 18, 2006 and their claims against the contractor defendants would prescribe one year thereafter. However, such injury is not evident from the face of the complaints.

As Plaintiffs note in their opposition to the instant motion and as the Court reasoned in denying class certification, each claim in this case is individual and made up of a unique set of facts. What each Aldridge plaintiff knew about formaldehyde exposure or the possibility of legal claims relating thereto; what injury each Aldridge plaintiff allegedly experienced from such exposure, and when knowledge of these alleged injuries occurred, are questions that can be answered only a case-by-case basis. These facts are not evident from the face of the complaints. Accordingly, under a Rule 12(b)(6) standard, the IA/TACs' general prescription argument must

Case 2:07-md-01873-KDE-MBN   DOCUMENT 10352-4   Filed 01/19/10   Page 10 of 15
Case 2:07-md-01873-KDE-ALC   Document 2803-10   Filed 08/24/2009   Page 10 of 15
Case 2:07-md-01873-KDE-ALC   Document 1762   Filed 06/15/2009   Page 10 of 15

fail.[3]

### 3. Viability of LPLA Claims[4]

The Louisiana Revised Statutes instructs that the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. § 9:2800.52. Thus, to be liable under the LPLA, a person or entity must be a manufacturer. The LPLA provides that "'[m]anufacturer' means a person or entity who is in the business of manufacturing a product for placement into trade or commerce." La. R.S. § 9:2800.53(1). This statute further explains that "'[m]anufacturing a product' means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product." *Id.* Here, the parties dispute whether the IA/TACs are considered "manufacturers" under the LPLA.

The IA/TACs contend that they are not manufacturers, as defined by the LPLA itself. The IA/TACs argue that none of them is in the business of manufacturing a product for placement into commerce. Plaintiffs do not allege that they or FEMA purchased EHUs from the IA/TACs nor do they allege that the IA/TACs produced or made the EHUs at issue in this litigation. The IA/TACs point out that the actual manufacturers of these EHUs are indeed already defendants in this MDL. They argue that they merely installed the EHUs at locations specified by FEMA.

---

[3] Thus, because this Court finds that Plaintiffs' claims are not prescribed on the face of the complaints, the burden does not shift to Plaintiffs to prove either suspension, interruption, or some other exception to prescription. Accordingly, the Court does not reach the issues of Plaintiffs' claims relating back to the filing of an original Complaint; prescription being either suspended or interrupted; the joint tortfeasor theory, or the continuing tort theory.

[4] The IA/TACs do not address this particular issue in their reply, so it is somewhat unclear to the Court whether they are still advancing this argument as a grounds for dismissal. For the purposes of this Order and Reasons, the Court assumes that the IA/TACs are advancing this argument and simply, for whatever reason, chose not to address this particular issue in their reply.

10

Case 2:07-md-01873-KDE-MBN    Document 10352-4    Filed 01/19/10    Page 11 of 15
Case 2:07-md-01873-KDE-ALC    Document 2803-10    Filed 08/24/2009    Page 11 of 15
Case 2:07-md-01873-KDE-ALC    Document 1762    Filed 06/15/2009    Page 11 of 15

While Plaintiffs assert that the IA/TACs qualify as manufacturers because, pursuant to FEMA's instructions, they placed the EHUs on concrete blocks, which created stress that allowed increased moisture intrusion and formaldehyde exposure due to cracks and openings in the shell, the IA/TACs argue that Plaintiffs' factual assertions fail to meet the definition of "manufacturer" under the LPLA. The IA/TACs argue that they did nothing to alter the basic design of the EHUs. They only lifted them to rest on concrete blocks as opposed to their wheels. The IA/TACs note that, after doing so, the EHUs functioned in exactly the same capacity as was intended when the EHUs left the manufacturers' facilities.

Last, while Plaintiffs assert that the IA/TACs' actions caused the emission of formaldehyde, the IA/TACs note that they did not *add* formaldehyde to these EHUs. Because the IA/TACs had nothing to do with the formaldehyde being in the EHUs in the first place, they assert that their actions can constitute neither a "manufacture" or a "remanufacture".

In opposition, Plaintiffs allege that the IA/TACs qualify as "manufacturers" for the following reasons: (1) the IA/TACs "constructed" the final defective product used by Plaintiffs; (2) the IA/TACs engaged in the restoration and/or refurbishment of the EHUs; and (3) the IA/TACs' actions have significantly modified and materially altered the EHUs.
First, Plaintiffs allege that the actions of the movants render them subject to liability as manufacturers under the LPLA as they "constructed" the final product used by the plaintiffs. The LPLA defines a manufacturer as a person or entity that engages in the "construction" of a product. La. Rev. Stat. 9:2800.53(1). In their First Supplemental and Amending Complaint (Rec. Doc. 1064), Plaintiffs allege that the IA/TACs prepared each EHU for long-term occupancy by installing residential appliances, heating and air conditioning units, plumbing, and

11

Case 2:07-md-01873-KDE-MBN   Document 10352-4   Filed 01/19/10   Page 12 of 15
Case 2:07-md-01873-KDE-ALC   Document 2803-10   Filed 08/24/2009   Page 12 of 15
Case 2:07-md-01873-KDE-ALC   Document 1762   Filed 06/15/2009   Page 12 of 15

electricity. The IA/TACs transferred the EHUs to concrete piers, "blocking" them off of their wheels. They also protected the pipes from freezing and wrapped the EHUs to prevent the entrance of cold air. Essentially, Plaintiffs claim that in readying the EHUs for occupancy, the IA/TACs assembled the EHUs on concrete blocks, and ultimately constructed the end product as they were used by Plaintiffs.

Second, Plaintiffs alleged in their Complaint that the IA/TACs engaged in the restoration and refurbishment of the EHUs. (Rec. Doc. 1064). The LPLA identifies restoration and refurbishment as actions giving rise to manufacturer status. Moreover, Plaintiffs assert that the allegations in their Complaint regarding refurbishment are clear and undisputed, and thus, argue that they have unmistakably stated a legally cognizable claim against the IA/TACs under the LPLA.

Plaintiffs finally allege that the IA/TACs' actions and modifications to the EHUs substantially modified and materially altered them, qualifying the IA/TACs as manufacturers under the LPLA. Specifically, they assert that by "jacking up" the EHUs, the IA/TACs converted and transformed them into stationary residential housing. Moreover, the addition of residential appliances, plumbing, electricity, and other utilities substantially altered the otherwise mobile, temporary-residence trailers into more permanent housing to displaced disaster victims. Because this transformation materially altered the intended purpose of the EHUs, the IA/TACs should be considered manufacturers under the LPLA.

This Court finds the case of *Coulon v. Wal-Mart Stores, Inc.*, 734 So.2d 916 (La.App. 1 st Cir.1999), *writ denied*, 747 So.2d 1125 (La.1999), cited by Plaintiffs, instructive. In *Coulon*,

12

Case 2:07-md-01873-KDE-MBN   Document 10352-4   Filed 01/19/10   Page 13 of 15
Case 2:07-md-01873-KDE-ALC   Document 2803-10   Filed 08/24/2009   Page 13 of 15
Case 2:07-md-01873-KDE-ALC   Document 1762   Filed 06/15/2009   Page 13 of 15

Defendant Wal-Mart Stores Inc. ("Wal-Mart") was found liable under the LPLA for injures caused by a bicycle purchased from Wal-Mart. The defective bicycle was assembled by either Wal-Mart or by its contractor. The alleged defect in the bicycle was created in the assembly process. The Louisiana First Circuit concluded that Wal-Mart would be liable under the LPLA as a manufacturer for any defects that are created in the assembly process.[5] That court reasoned:

> Although LSA-R.S. 9:2800.53 does not include the word "assembly" or "assemble" in the definition of "manufacturer" or "manufacturing a product," it does include the term "constructing." Construct is not defined in the LPLA; however, Black's Law Dictionary, sixth edition, defines construct as follows: "To build; erect; put together; make ready for use. To adjust and join materials, or parts of, so as to form a permanent whole. To put together constituent parts of something in their proper place and order." Accordingly, we conclude that the term "manufacturing a product" indirectly refers to assembling; thus, one who assembles a product for sale is properly deemed a manufacturer of the assembled product under the LPLA.

734 So.2d at 919. The *Coulon* decision differs from the decision in *Loper v. National Union Fire Ins. Co.*, 2001 WL 210367 (E.D. La. Mar. 2, 2001), wherein the alleged defect was found to be in the design of the part - not it its installation. The *Loper* court determined that the proper assembly of a defective part does not create LPLA manufacturer liability. In contrast to the plaintiffs in *Loper*, Plaintiffs here contend that the alleged formaldehyde-related defect occurred in part because of the assembly process used by the IA/TACs.

Similar to the *Coulon* case, Plaintiffs here allege that the IA/TACs constructed or

---

[5] In *Coulon*, Wal-Mart did not give notice to its customers, including Plaintiff, that a separate entity assembled some of the bicycles for sale. Therefore, the court determined that Wal-Mart held itself out as a manufacturer of the assembled bicycle, and concluded that the trial court properly treated Wal-Mart as a manufacturer under the LPLA.

13

Case 2:07-md-01873-KDE-MBN   DOCUMENT 10352-4   Filed 01/19/10   Page 14 of 15
Case 2:07-md-01873-KDE-ALC   Document 2803-10   Filed 08/24/2009   Page 14 of 15
Case 2:07-md-01873-KDE-ALC   Document 1762   Filed 06/15/2009   Page 14 of 15

assembled the final defective product used by Plaintiffs. Specifically, in their First Supplemental and Amending Complaint (Rec. Doc. 1064), Plaintiffs allege that the IA/TACs readied the EHUs for occupancy by transferring them to concrete piers, "blocking" them off of their wheels. (Rec. Doc. 1064, ¶ 23). In doing so, Plaintiffs assert that the IA/TACs converted and transformed the travel trailers into stationary residential housing. (Rec. Doc. 1064, ¶ 26). Plaintiffs allege that these actions created stress that allowed increased moisture intrusion and formaldehyde exposure due to cracks and openings in the shell. (Rec. Doc. 1064, ¶¶ 24-25). Case law indicates that a "defect" which manifests itself in the assembly process can impose LPLA manufacturer liability on a party when the defect is created by the assembly process. Because this transformation is alleged to have materially altered the intended purpose of the EHUs and because the assembly is alleged to have created or to have added to the alleged formaldehyde-related defects, Plaintiffs have asserted sufficient allegations to survive the IA/TACs' motion to dismiss on this ground. To be clear, while the Court is not now making a determination as to whether the IA/TACs are indeed manufacturers under the LPLA, the undersigned is denying the instant motion to dismiss on the ground that the IA/TACs cannot as a matter of law be considered manufacturers under the LPLA.[6]

### III.  CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the Motion to Dismiss (Rec. Doc. 1324) is **DENIED**, except that the claim of any plaintiff who is asserting a claim against an

---

[6] This Court finds the IA/TACs' reliance on *Slaid v. Evergreen Indemnity, Ltd.*, 745 So.2d 793 (La. App. 2 Cir. 1999) misplaced for the reasons cited by Plaintiffs in their opposition. (See Rec. Doc. 1361, pp. 15-16).

Case 2:07-md-01873-KDE-MBN   Document 10352-4   Filed 01/19/10   Page 15 of 15
Case 2:07-md-01873-KDE-ALC   Document 2803-10   Filed 08/24/2009   Page 15 of 15
Case 2:07-md-01873-KDE-ALC   Document 1762   Filed 06/15/2009   Page 15 of 15

IA/TAC but who is not yet matched to a specific IA/TAC is hereby dismissed without prejudice, in accordance with this Court's August 1, 2008 Order and Reasons (Rec. Doc. 599).

New Orleans, Louisiana, this 15th day of June, 2009.

_____
KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE