# VERON BICE PALERMO & WILSON, LLC

ATTORNEYS AT LAW

J. MICHAEL VERON
JERE JAY BICE*
J. ROCK PALERMO III*
ALONZO P. WILSON
JAMIE B. BICE
ELAINE B. SOLARI
MICHAEL G. HODGKINS

*CERTIFIED MEDIATORS

721 KIRBY STREET (70601)
POST OFFICE BOX 2125
LAKE CHARLES, LA 70602.2125

TELEPHONE (337) 310-1600
FACSIMILE  (337) 310-1601
TOLL FREE  (877) 300-8680

WEBSITE:
www.veronbice.com

EMAIL:
info@veronbice.com

RECEIVED DEC 2 4 2009

December 17, 2009

**CERTIFIED MAIL
RETURN RECEIPT REQUESTED
ARTICLE NO. 7009 2250 0002 3027 9556**

Gulf Stream Coach, Inc.
Through Kenneth C. Brinker
503 South Oakland
Nappanee, IN 46550

Re:  Donald Veal, et al
     Vs. No. 679-070 "D"
     Gulf Stream Coach, Inc., et al
     24th Judicial District Court
     Jefferson Parish, Louisiana

Ladies/Gentlemen:

Please find enclosed a citation and certified copy of the Petition for Damages which has been filed against you in the above-referenced matter. This is being served on you pursuant to Louisiana Long Arm Statute, La. R.S. 13:3201.

Please note that you have thirty (30) days from the date of service within which to file an answer to this Petition.

Yours truly,

Rock Palermo

J. ROCK PALERMO III

JRP:mmc
Enclosure


EXHIBIT A

(101) Citation: RE-ISSUE PETITION FOR DAMAGES ;   091214-9872-0

## 24TH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

DONALD VEAL, ERNESTINE VEAL
  versus
GULF STREAM COACH INC, SHAW ENVIRONMENTAL INC

Case: 679-070   Div: "D"
P 1 DONALD VEAL

To: GULF STREAM COACH INC
THRU KENNETH C. BRINKER
503 SOUTH OAKLAND
NAPPANEE IN 46550
PURSUANT TO LOUISIANA LONG ARM STATUTE

LA Long Arm

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the PETITION FOR DAMAGES of which a true and correct copy accompanies this citation, or make an appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for the Parish of Jefferson, State of Louisiana, within THIRTY 30 CALENDAR days after the service hereof, under penalty of default.

This service was requested by attorney J ROCK PALERMO III and was issued by the Clerk Of Court on the 14th day of December, 2009.

_____
Dazerra J. Washington, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk Of Court

_____SERVICE INFORMATION_____

(101) Citation: RE-ISSUE PETITION FOR DAMAGES ;   091214-9872-0

Received:_____  Served:_____  Returned:_____

Service was made:
___ Personal      ___ Domiciliary _____

Unable to serve:
___ Not at this address      ___ Numerous attempts _____ times
___ Vacant                   ___ Received too late to serve
___ Moved                    ___ No longer works at this address
___ No such address          ___ Need apartment / building number
___ Other _____

Service: $_____   Mileage: $_____   Total: $_____

Completed by:_____ # _____
                  Deputy Sheriff
Parish of: _____

**DIV. D**
JUDGE
ROBERT M. MURPHY

RECEIVED DEC 24 2009

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO.: 679-070                                                      DIVISION: "D"

Donald Veal and Ernestine Veal,

Plaintiffs,

versus

Gulf Stream Coach, Inc. and Shaw Environmental, Inc.

Defendants.

FILED
OCT 1 4 2009
S/ MERRICK REEME
DEPUTY CLERK

FILED: _____                      _____

DEPUTY CLERK

### PETITION FOR DAMAGES

THE PETITION of Donald Veal and Ernestine Veal, persons of full age of majority, on behalf of themselves (hereinafter, "Plaintiffs"), through undersigned counsel, respectfully represent that:

I.

Plaintiffs Donald Veal and Ernestine Veal are residents of and domiciled in the Parish of Jefferson, State of Louisiana.

II.

Made Defendants are:

    A. Defendant Gulf Stream Coach, Inc. is, upon information and belief, an entity incorporated in the State of Indiana which conducts business in the State of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the State of Louisiana and within the jurisdiction of this Honorable Court.

    B. Shaw Environmental, Inc. ("Shaw"), a Louisiana corporation, received a No-Bid contract from the Federal Emergency Management Agency ("FEMA") and was tasked with, amongst other things, performing significant functions in the transportation, delivery,

installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita and is within the jurisdiction of this Honorable Court.

III.

Venue is proper in Jefferson Parish as it is the parish where the plaintiffs' injuries occur.

IV.

At all pertinent times hereto, hereinafter Gulf Stream Coach, Inc. was engaged by the Federal Emergency Management Agency, hereinafter "FEMA", to sell temporary housing units for provision to the Plaintiffs as temporary housing following Hurricane Katrina.

V.

On information and belief, Gulf Stream Coach, Inc. expedited production of these housing units, and, on information and belief, resorted to using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing units occupied by each Plaintiff containing higher than normal levels of formaldehyde.

VI.

On information and belief, the housing unit of each Plaintiff, including those units which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, deviated from Government specifications pertaining to the safety of the unit as a residence.

VII.

Plaintiffs submit that each and all of the housing units which are at issue herein, both those which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, did not conform to any Government-imposed specifications which addressed the design and/or construction of the housing units pertinent to formaldehyde levels.

VIII.

Plaintiffs submit that each of the housing units at issue, both those which were manufactured prior to the hurricanes and those later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to Gulf Stream Coach, Inc.'s use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, but that Gulf Stream Coach, Inc. failed to warn the Federal Government about these dangers, which initially were not known to the Federal Government.

IX.

Plaintiffs submit that Gulf Stream Coach, Inc. ignored, or concealed and/or condoned the concealment of, the fact that each and all of the housing units at issue contained dangerous levels of formaldehyde due to Gulf Stream Coach, Inc.'s use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, all in order to sell Gulf Stream Coach, Inc.'s products, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions.

X.

Each and all of the Plaintiffs spent significant time in the FEMA-provided housing units manufactured by Gulf Stream Coach, Inc. and provided to Plaintiffs by the Federal Government. As a result, the Plaintiffs unwittingly were exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing units.

XI.

Gulf Stream Coach, Inc. knew or should have known of the health hazards inherent in the products it constructed, by familiarity with industry standards and published medical studies.

XII.

At all pertinent times hereto, Shaw was engaged by FEMA through a no-bid contract, with the transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units.

XIII.

Under the terms of their contract, Shaw was obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and indicated by the manufacturers of same. Further, under their no-bid contracts with FEMA, Shaw was obligated to advise and instruct FEMA regarding the implementation of those contracts. Upon information and belief Shaw failed to properly fulfill either of these tasks.

XIV.

Shaw contracted with FEMA to pick-up and transport the temporary housing units from FEMA-controlled staging areas and deliver them to areas which Shaw was tasked with operating. These new areas included staging areas to be managed and maintained as assigned to one of Shaw or individual locations and addresses where Shaw assigned that temporary housing unit would have obligations to manage and maintain it.

XV.

To accomplish its contractual obligation with FEMA, in addition to the use of subsidiary companies, Shaw entered into numerous sub-contracts, but at all times retained supervisory capacity and responsibility under its individual contract with FEMA.

XVI.

Shaw was tasked under their contracts with FEMA to identify and prepare the infrastructure for the various group site locations. This included, amongst other things, ensuring there would be adequate water, sewage, electricity, etc. Shaw knew or should have known that these preparations were for long-term occupancy of the temporary housing units.

XVII.

Once the temporary housing units occupied by the plaintiffs were transported and delivered to a particular location, Shaw had the responsibility for installing that temporary housing unit. Shaw installed the temporary housing units by "blocking" the unit. This meant raising each plaintiff's unit several feet into the air and off of its wheel base, and setting it on concrete blocks.

XVIII.

By blocking the temporary housing units of each plaintiff, Shaw created stress and flexing on the frames of the unit as it were not designed to be lifted off of the wheel base. In fact, the manufacturers of the temporary housing units warned in the various owners' manuals provided with the units, that units should not be jacked so that the vehicle's weight is no longer supported by the wheels.

XIX.

The stress and flexing of temporary housing units' frames caused by Shaw "blocking" them with weight off of the wheels created distortion in the travel trailer's shell allowing increased moisture intrusion which contributed to increased formaldehyde exposures.

XX.

The temporary housing units occupied by the plaintiffs which were provided by FEMA were for the most part travel trailers. The travel trailers are, by definition, mobile. They are designed for and intended for periodic, recreational use and not for long-term habitation. By installing the travel trailers on concrete blocks for extended occupancy, Shaw knowingly and intentionally modified the design and the actual use of these units occupied by the plaintiff(s) by converting them into a temporary housing unit to be used as a residence for long term occupancy in some instances exceeding 18 months.

XXI.

Shaw failed to consult with the manufacturers of the temporary housing units, including Gulf Stream Coach, Inc., with regard to the installation, warnings, warranty issues or advisability of using travel trailers for long term residence and occupation. Shaw took actions which voided the warranties of the manufacturers and directly

created or contributed to unsafe and hazardous living conditions in the temporary housing units.

## XXII.

Once Shaw had completed the transportation, delivery and installation of the temporary housing units occupied by the plaintiffs, Shaw was tasked with inspecting each unit to ensure that it was safe and habitable, prior to occupancy by the plaintiffs. Upon information and belief, Shaw failed to adequately inspect the temporary housing units occupied by the plaintiff(s) to ensure that the units were safe and suitable for their intended use – the long-term occupancy by individuals and families displaced by hurricanes Katrina and Rita. This failure to properly inspect the units for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by hurricane victims.

## XXIII.

In addition to transportation, site identification, installation and inspection, the temporary housing units occupied by the plaintiffs provided in response to hurricanes Katrina and Rita were also managed, maintained and repaired by Shaw, or their various subcontractors over whom they maintained direct oversight and responsibility. Upon information and belief, Shaw failed to adequately manage, maintain and repair the temporary housing units which enabled and contributed to the unsafe and hazardous conditions that led to adverse health effects amongst the plaintiffs.

## XXIV.

Parallel to their duty to manage, maintain and repair each temporary housing unit, Shaw failed to undertake appropriate action, maintenance or repair in response to numerous complaints made by the Plaintiff-occupant(s) of the temporary housing units to various adverse health effects caused by exposure to elevated levels of formaldehyde.

## XXV.

Following the Plaintiffs' occupancy of each temporary housing unit, Shaw was tasked with its de-installation. Upon discovering the deteriorated condition of the temporary housing units at the time of de-installation and removal, Shaw failed to identify the unsuitability of the temporary housing units for long-term occupancy.

XXVI.

In addition to de-installation of the temporary housing units, Shaw was tasked with refurbishment and restoration of the temporary housing units for use, either in direct response to hurricanes Katrina and Rita or for use in the future. By restoring and refurbishing these temporary housing units, Shaw warranted that the units were fit for their intended use, long term occupancy in response to disaster related displacement. By restoring and refurbishing these temporary housing units, Shaw created and perpetuated existing hazardous conditions which would foreseeably lead to adverse health effects caused by the elevated levels of formaldehyde in the temporary housing units. Further, in thousands of cases, following the restoration and refurbishment, these temporary housing units were immediately occupied by new individuals or families displaced by hurricanes Katrina and Rita, and who were then directly exposed to hazardous levels of formaldehyde.

XXVII.

Shaw, at every stage of their involvement, failed to warn the plaintiffs of each temporary housing unit of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde – a known human carcinogen – which led directly to adverse health effects, including but not limited to the advent of childhood asthma and the onset of adult asthma in some of the Plaintiffs.

XXVIII.

Through their actions and omissions, Shaw created and perpetuated a situation wherein occupants of the temporary housing units were exposed to elevated levels of formaldehyde and, as a result, suffered adverse health effects. Shaw negligently failed to adhere to the manufacturer instructions and warnings related to: (1) the manufacturers' intended (short-term) use of the temporary housing units; (2) the installation and set-up of the temporary housing units; and (3) the warning that the temporary housing units contained urea formaldehyde resin which would release formaldehyde gas directly into the intended living space.

XXXIV.

Furthermore, Shaw Environmental, Inc., under all applicable laws, including but not limited to, the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, et seq., is strictly liable unto Plaintiffs for all injuries and damages for designing, manufacturing, constructing, assembling, distributing, and/or refurbishing of the residential housing as described above, that were defective, unsafe, and unreasonably dangerous in design, composition, manufacture, and/or construction and/or due to its lack of and/or inadequate warnings and due to its non-conformity to the express warranties of fitness of said product.

XXXV.

Plaintiffs assert their claims against both Gulf Stream Coach, Inc. and Shaw Environmental, Inc. under the laws of the State of Louisiana and under any other state and federal statutes which may be applicable.

XXXVI.

Plaintiffs are entitled to a trial by jury.

WHEREFORE, Plaintiffs pray that Gulf Stream Coach, Inc. and Shaw Environmental, Inc. be served with a copy of this Petition for Damages and that after due proceedings are had, Plaintiffs pray for judgment in their favor and against all Defendants in an amount reasonable under the premises, together with legal interest thereon from the date of judicial demand, and for all costs of these proceedings, and for all appropriate legal and equitable relief, and for trial by jury.

Respectfully submitted:

_____
J. ROCK PALERMO III
Bar Roll No. 21793
Veron, Bice, Palermo & Wilson, L.L.C.
721 Kirby Street
P.O. Box 2125
Lake Charles, LA 70602
337-310-1600
Fax: 337-310-1601

**PLEASE WITHHOLD SERVICE ON ALL DEFENDANTS UNTIL FURTHER NOTICE.**

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE
_____
DEPUTY CLERK
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON

HSFE04-04-Q-8000
## FEMA Model Travel Trailer Procurement Specifications
Dated: August 12, 2004

### General
Travel trailers being procured under this contract are for the purpose of providing temporary housing. The units are subjected to continuous road travel, multiple installations and deactivations, and various weather conditions. The standards shall not be considered restrictive in that the supplier may provide "equal or better" units considering that the competitive price and delivery requirements can be met.

The construction and outfitting standards identify minimum square footage of living space, floor plan configuration, finishes, furnishing and environmental living conditions necessary to provide emergency housing for disaster relief operations. All exterior openings such as windows, doors, drain pipes; etc... will be caulked with a clear, non-hardening weatherproof sealant to prevent air and moisture penetration.

The units shall meet industry standards except where identified. These units will not include awnings, stereos, holding tanks, and/or any optional accessories.

### Quality of Construction
The specifications establish the minimum standards for travel trailer construction and outfitting to meet FEMA contract requirements. This specification does not constitute any expressed or implied deviation or waiver of any requirement of the U.S. regulatory requirements from the governing agency. All units to include furnishings and appliances must be new. The manufacturer shall design and construct all units under this contract within a superior grade quality of workmanship.

| Size and Configuration | |
|---|---|
| Type | FEMA Model Travel Trailer |
| Exterior Length | 32-35 ft |
| Exterior Width | 8 ft (Not to exceed) (No Slide-out units) |
| Screwjack | Non-detachable (No fifth wheel units) |
| Electrical System – AMPS | 30 Amp power cord (50 ft long) |
| Furnishing | Fully |
| Bedrooms | Sleep 6. There must be two bedrooms of which one must be contain a double bunk. |
| Bathroom | 1 (residential commode and no holding tank) |
| Refrigerator | Yes - (Residential) 14 cf. Frost-free electric refrigerator with freezer |
| Range and Oven | Yes - (Gas) The each unit must have a gas range and oven. NOTE: The gas appliances must have auto (electronic) ignition |
| Washer Capacity | No |
| Dryer Capacity | No |
| Air Conditioner | Yes (Rooftop) |
| Furnace | Yes |
| Microwave | Yes |
| Water Heater | Yes, Gas, 10 Gal (auto electronic ignition) |
| Exterior Covering | Industry standard |
| Smoke Detector | Yes; in kitchen area, and each bedroom/sleeping area. |
| LP Gas Detector | Yes |
| Fire Extinguisher | Yes |

TTProcurementSpec(08-11-04)(Final)1A7

Page 1 of 4


EXHIBIT B

165

Gulf0005675
ALX-DORRIS-000022

HSFE04-04-Q-8000
## FEMA Model Travel Trailer Procurement Specifications
Dated: August 12, 2004

| Electrical Services | |
|---|---|
| **Receptacles** | |
| Interior Receptacles | Electrical receptacles will be installed at convenient locations throughout the unit. Receptacles located near or in wet areas must be protected with ground fault interrupter protection. |
| Exterior Receptacles | Each home will be provided with a heat tape receptacle located near the water inlet. Exterior receptacles must be protected with ground fault interrupter protection. |
| Phone and Cable | Television Jack: Each unit shall have a television jack and a telephone jack installed in the living room and master bedroom area. |

| Plumbing Service | |
|---|---|
| Plumbing System | Industry standard plumbing system will be installed. The holding tank will not be installed. |
| Winterization | All drain lines shall have antifreeze poured into all traps, including washer drain, after the flood test. |
| Faucet Assemblies | All faucet assemblies in the home shall be of the dual shutoff valve type. |
| Bathroom | The bathroom shall also have the manufacturer's standard vanity with lavatory, medicine cabinet with mirror and accessories (paper holder, towel bars/hooks). All interior plumbing must be assembled. All bathroom fixtures shall be of the same color. |
| Commode | The unit will have a residential commode. The water storage tank, seat and cover shall be the same color as the commode bowl. |
| Sewer Line | The sewer line will exit the home approximately two feet (2') and not more than three feet (3') behind the rear axle. The exit pipe shall protrude approximately six inches (6"), but not more than eight inches (8"), from the underlying, shall have a threaded end, and be capped with a removable plastic cap and chain. |

| Appliances | |
|---|---|
| Water Heater | A 10-gallon auto electric ignition water heater. |
| Range | A auto electric ignition cooking range having three (3) or four (4) burners (Note: four burners is preferred), thermostatically controlled oven, and a lighted, power-vented range hood |
| Refrigerator | Residential 14 c. f. frost-free electric refrigerator with freezer. |
| Microwave Oven | Each unit will have a minimum 1.2 cu. ft microwave. |

| Furnishings | |
|---|---|

Gulf0005676
ALX-DORRIS-000023

HSFE04-04-Q-8000
## FEMA Model Travel Trailer Procurement Specifications
Dated: August 12, 2004

| Furnishings | |
|---|---|
| | Furnishings shall be the manufacturer's standard for functional quality (provides usability, comfort and minimum maintenance). All furniture shall be assembled with all packing material removed. All furniture shall be appropriately secured to prevent damage during transport. |
| Bedrooms. | One bedroom shall have a full-size bed. The other bedroom shall have a double bunk w/ storage. |
| Living Room | Each living room area will be furnished with sleeper sofa, capable of sleeping adults. |
| Dining Room | The dining room area will be furnished with dinette table and seating. |

| Interior | |
|---|---|
| Heating and Cooling System (NOTE: Furnace and A/C shall use the same thermostat) | |
| Furnace | The unit will be equipped with a furnace capable of operating on liquefied petroleum (LP) gas. The unit shall have a 34,000 BTU Furnace and In-Floor Ducted Heat with a wired thermostat connected and completely installed. Also if a battery is needed, then a battery and cover must be included. |
| Air Conditioner (A/C) | 15,000 BTU Ducted Roof A/C wired and connected with the furnace. Window units are not acceptable. |

| Safety Equipment | |
|---|---|
| Smoke Detectors | Each unit will include three battery-operated smoke detector (battery included). Smoke detectors shall be equipped with push-button testing devices. |
| Fire Extinguisher | Each home will be equipped with a five-pound A-B-C type fire extinguisher and a mounting bracket. |
| Gas Detector | LP gas detector. |
| LP Tanks | Double 30 LB LP bottles w/auto change-over gauge and bottle covers |
| Steps | Double entry steps-welded to frame |
| Jacks | Four corner stabilizer jacks with pads |

| Exterior Covering | |
|---|---|
| Siding | Industry standard with an entry assist handles at entrance/exit each door. |
| Roof | Industry standard covering. Rain gutter w/corner downspout along the roofline. |
| Exterior Door Lock | Flush mounted combo entry dead-bolt lock. |

Gulf0005677
ALX-DORRIS-000024

HSFE04-04-Q-8000
### FEMA Model Travel Trailer Procurement Specifications
Dated: August 12, 2004

| Interior Covering | |
|---|---|
| Floor Covering | Living room and bedrooms shall have carpet and pad. Duct openings shall be covered with a 4" x 10" metal, adjustable louvered covering (register). No carpet shall be installed in the bathrooms and/or kitchen. These areas shall be covered with continuous, roll non-foam resilient sheet vinyl tension flooring. |
| Window Covering | Mini Blinds for all windows except bedrooms with bunks, which shall be covered with flame retardant curtains. |

| Transport | |
|---|---|
| FEMA Acceptance | Units will not be accepted as FEMA property until an appropriate FEMA Rep inspects and signs for the unit. FEMA must have a copy of all shipping documents. FEMA reserves the right to reject any unit due to damages, non- road ready and/or transportable unit, and/or non-specifications compliance. The unit must be made transportable and road ready prior to acceptance. Units that are not in a transportable and road ready condition (such as flat tires, damaged axles, etc) will not be considered acceptable. |

| Miscellaneous | |
|---|---|
| Master Keys | The unit manufacturer or supplier shall furnish 3 sets of keys for homes procured. Master keys shall be provided and packaged separately. The master keys must be received with delivery of the first unit. |
| Warranty | The company the unit is purchased from will be FEMA's point-of-contact (POC) for all warranties, this includes the actual unit, A/C, furnace, water heater, and all furnishings and appliances. The company supplying the unit must identify a POC for handling warranty items and the company needs to provide FEMA the procedure for reporting warranty items. |
| Certificates of Origin | The certificate of origin must be provided. |

Gulf0005678
ALX-DORRIS-000025



Gulf0005679
ALX-DORRIS-000026