# VERON
# BICE
# PALERMO &
# WILSON, LLC

ATTORNEYS AT LAW

J. MICHAEL VERON
JERE JAY BICE*
J. ROCK PALERMO III*
ALONZO P. WILSON
JAMIE B. BICE
ELAINE B. SOLARI
MICHAEL G. HODGKINS

*CERTIFIED MEDIATORS

721 KIRBY STREET (70601)
POST OFFICE BOX 2125
LAKE CHARLES, LA 70602.2125

TELEPHONE (337) 310-1600
FACSIMILE (337) 310-1601
TOLL FREE (877) 300-8680

WEBSITE:
www.veronbice.com

EMAIL:
info@veronbice.com

December 19, 2009

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**ARTICLE NO. 7009 2250 0002 3029 7727**

Gulf Stream Coach, Inc.
Through Kenneth C. Brinker
503 South Oakland
Nappannee, IN 46550

Re:   In Re: FEMA Trailer Formaldehyde
      Products Liability Litigation
      MDL No. 1873
      (Robin Scott
      Vs. No. 09-7370
      Gulf Stream Coach, Inc., et al)
      U.S. District Court, Eastern District of Louisiana

Dear Mr. Brinker:

Enclosed please find a summons together with copies of the Civil Cover Sheet, Notice of Removal and original Petition for Damages filed in the above-referenced matter. Please note that you have twenty (20) days from the date of service within which to file an answer to this Petition.

Yours truly,

J. ROCK PALERMO III

JRP:mmc
Enclosures



EXHIBIT
A

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court
## EASTERN DISTRICT OF LOUISIANA

ROBIN SCOTT

**V.**

GULF STREAM COACH, INC., ET AL

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: 09-7370

SECT. N, MAG. 5

TO: (Name and address of defendant)

GULF STREAM COACH, INC.
Through Kenneth C. Brinker
503 South Oakland
Nappanee, IN 46550

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

J. Rock Palermo III
Veron, Bice, Palermo & Wilson
721 Kirby Street
P.O. Box 2125
Lake Charles, LA 70602-2125

an answer to the complaint which is herewith served upon you, within twenty (20) 21 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

LORETTA G. WHYTE

DEC 1 6 2009

CLERK

DATE

B. Gregon

(BY) DEPUTY CLERK

. AO 440 (Rev. 10/93) Summons in a Civil Action

---

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me [1] | |
| Name of SERVER (PRINT) | TITLE |

---

*Check one box below to indicate appropriate method of service*

☐   Served Personally upon the Defendant. Place where served: _____
_____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion then residing therein.
Name of person with whom the summons and complaint were left: _____
_____

☐   Returned unexecuted: _____
_____
_____
_____

☐   Other *(specify):* _____
_____
_____

---

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing
information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
            *Date*                                  *Signature of Server*

                                                    _____
                                                    *Address of Server*

---

(1)   As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

JS 44 (Rev. 11/04)  Case 2:09-cv-07370-KDE-ALC   Document 1-2   Filed 11/18/2009   Page 1 of 1

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Robin Scott | Gulf Stream Coach, Inc. |

| (b) County of Residence of First Listed Plaintiff  Terrebonne Parish_____ | County of Residence of First Listed Defendant   Elkhart County (IN)_____ |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>TRACT OF<br>LAND INVOLVED. |

| (c) Attorney's (Firm Name, Address, and Telephone Number)<br>J. Rock Palermo, III, 721 Kirby Street, P.O. Box 2125, Lake Charles, LA 70602, (337) 310-1600 | Attorneys (If Known)<br>Baker Donelson Bearman Caldwell & Berkowitz PC, Baker Donelson Bearman Caldwell & Berkowitz PC,3 Sanctuary Blvd., Suite 201, Mandeville, LA 70471(985) 819-8400 |
|---|---|

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government<br>Plaintiff | x  3  Federal Question<br>(U.S. Government Not a Party) |
| ☐ 2  U.S. Government<br>Defendant | ☐ 4  Diversity<br>(Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                         and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | x  365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determinatio |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | Appeal to District |
|---|---|---|---|---|---|
| ☐ 1  Original<br>Proceeding | x  2  Removed from<br>State Court | ☐ 3  Remanded from<br>Appellate Court | ☐ 4  Reinstated or<br>Reopened | ☐ 5  Transferred from<br>another district<br>(specify) | ☐ 6  Multidistrict<br>Litigation   ☐ 7  Judge from<br>Magistrate<br>Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §1442 (a) (1)
Brief description of cause:
FEMA Trailer Formaldehyde Products Liability Action

| VII. REQUESTED IN<br>COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION<br>UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND:   x  Yes   ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S)<br>IF ANY | (See instructions):   JUDGE   Englehardt | DOCKET NUMBER   07-md-01873 (EDLA) |
|---|---|---|

| DATE<br>November 18, 2009 | SIGNATURE OF ATTORNEY OF RECORD<br>/s/ Sandra Varnado |
|---|---|

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ROBIN SCOTT,                                    *
                                                *
                                                *
                   Plaintiff,                   *
vs.                                             *
                                                *
                                                *
GULF STREAM COACH, INC.,                        *
SHAW ENVIRONMENTAL, INC.;                       *
FLUOR ENTERPRISES, INC.; AND                    *
CH2M HILL CONSTRUCTORS, INC.                    *
                                                *
                   Defendants.                  *
                                                *
* * * * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF REMOVAL

   **NOW INTO COURT**, through undersigned counsel, comes defendant, CH2M Hill

Constructors, Inc. ("CH2M HILL"), and, with a full reservation of rights, files this Notice of

Removal and avers that this matter is hereby removed to this Court on the following grounds:

1.

On August 7, 2009, plaintiff, through attorney J. Rock Palermo, III, filed this action, entitled *"Robin Scott vs. Gulf Stream Coach, Inc.; Shaw Environmental, Inc.; Fluor Enterprises, Inc.; and CH2M HILL Constructors, Inc.,"* and bearing Docket Number 158077, Division "E" (the "Petition"), in the 32nd District Court for the Parish of Terrebonne, State of Louisiana.

2.

For purposes of allotment, this Petition arises solely from operative facts that are the subject of multidistrict litigation ongoing in the U.S. District Court for the Eastern District of Louisiana, entitled *In re: FEMA Trailer Formaldehyde Products Liability Litigation* and bearing MDL docket number 07-1873, which matter is pending before Judge Engelhardt, Section N(5) [*In re: FEMA Trailer Formaldehyde Products Liability Litigation*, MDL No. 07-md-01873-KDE-ALC (E.D. La.)].

3.

CH2M HILL was served with the Citation and Petition on November 12, 2009.  A copy of all process, pleadings, and orders served upon CH2M HILL is attached as Exhibit "1" in accordance with  28 U.S.C. § 1446(b).

4.

CH2M HILL is removing this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides an exception to the general rule requiring that all defendants join in the removal. *Akin v. Ashland Chemical*, 156 F.3d 1030, 1034 (10th Cir. 1998); *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965) ("it is settled that the filing of a petition for removal by a single federal officer removes the entire case to the federal court."); *Ely*

2

*Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981) ("Since the federal officer is the only one entitled to remove under § 1442, he alone can remove without other defendants joining in the petition, and the entire case is removed to the federal court."). Thus, this Notice of Removal of the case to the United States District Court is timely filed, *i.e.*, no more than thirty (30) days after service of the Petition, in accordance with 28 U.S.C. §§ 1441 and 1446.

5.

"[T]he right of removal under 28 U.S.C. § 1442 (a)(1) is made absolute whenever a suit in state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in federal court. Federal jurisdiction rests on a 'federal interest in the matter' . . . ." *Willingham v. Morgan*, 395 U.S. 402, 406, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969).

6.

Three requirements must be met to invoke the federal officer removal statute: (1) the defendant must be a "person" within the meaning of §1442(a)(1); (2) the defendant must have acted under color of federal authority when committing the acts that allegedly caused plaintiff's injuries; and (3) the defendant must have a colorable federal defense. *Williams v. Todd Shipyards Co.*, 154 F.3d 416 (5th Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129, 131, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989)). All three requirements exist in this instance. *See, e.g., Isaacson v. DOW Chemical Co.*, 517 F.3d 129 (2nd Cir. 2008) (finding removal proper under Section 1442(a)(1) where the defendant was a government contractor and its colorable federal defense was based upon the government contractor defense); *Miller v. Diamond Shamrock*

3

*Chemical Co.*, 275 F.3d 414 (5th Cir. 2001) (same); *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 397-401 (5th Cir. 1998) (same); *Williams v. Todd Shipyards Corp.*, 154 F.3d 416 (5th Cir. 1998) (same).

7.

CH2M HILL qualifies as a "person" under Section 1442(a)(1). *See Winters v. Diamond Shamrock Chemical Company*, 149 So. 2d 387, 398 (5th Cir. 1998) (examining the federal officer removal statute and explaining that "corporate entities qualify as 'persons' under § 1442(a)(1)") (citation omitted).

8.

CH2M HILL was acting under color of federal authority when it is alleged to have performed the work that resulted in plaintiff's alleged injuries. Indeed, plaintiff's allegations against CH2M HILL arise out of CH2M HILL's contractual engagement by FEMA to perform "the transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units." *See* Exh. "1," Petition ¶ XII. If CH2M HILL performed the transportation, installation, inspection, maintenance or repair of the FEMA trailers involved in this litigation (the "Work"), then the Work, as alleged by plaintiff, was performed pursuant to a federal contract between FEMA and CH2M HILL (the "Contract"), and CH2M HILL was acting under color of federal authority when performing under the Contract.

4

9.

Specifically, FEMA approved and provided reasonably precise specifications regarding installation of travel trailers, and mandated the installation method complained of at ¶¶ XVII, XVIII, XIX, and XX of the Petition (*i.e.*, "blocking the unit"). Further, CH2M HILL performed this government work under FEMA's supervision and FEMA inspectors monitored and inspected the Work performed under the Contract. Moreover, FEMA maintained enforcement authority and substantively reviewed the Work performed by CH2M HILL. The Contract between CH2M HILL and FEMA are attached hereto as Exhibit "2."

10.

More specifically, the Contract provides detailed specifications, checklists, procedures and policies regarding delivery, installation, maintenance, and inspection of the FEMA trailers.[1] Exhibit 7 to Attachment A of the Contract, entitled "TRAVEL TRAILER INSTALLATION" provides precise direction as to the method of installing the units allegedly occupied by the plaintiff, and these directions specifically mandate the "Blocking and Leveling" about which plaintiff complains.[2]

11.

As a government contractor involved in the Hurricane Katrina disaster assistance provided by FEMA, CH2M HILL has available to it the government contractor defense.[3] *See In*

---

[1]    *See, e.g.*, Contract (Exh. "2") at Sections G.7 – Project Monitor; Section G.8 – Technical Direction and Surveillance; Section J, Attachment A – Performance Work Statement; and Section J, Attachment A – Performance Work Statement, Exhibits 1–15. Throughout performance of the Contract, FEMA modified and amended its policies and procedures with respect to the Work by contract modifications and verbal and written communication to CH2M HILL.

[2]    *See* Contract (Exh. "2"), Attachment A, Exhibit 7, Section 2.1.2 "Blocking and Leveling."

5

*re World Trade Center Disaster Site Litigation*, 521 F.3d 169, 197 (2nd Cir. 2008) (applying the government contractor defense to "the disaster relief context due to the unique federal interest in coordinating federal disaster assistance and streamlining the management of large-scale disaster recovery projects, as evidenced by the Stafford Act.").

12.

In accordance with the requirements of 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal, CH2M HILL will give written notice of this Notice of Removal to all adverse parties and will file a copy of this Notice of Removal with the Clerk of Court for the 32nd District Court for the Parish of Terrebonne, which notice shall be in the form of the Notice of Filing of Notice of Removal attached hereto as Exhibit "3."

**WHEREFORE,** defendant, CH2M Hill Constructors, Inc. prays that this matter be removed to the United States District Court for the Eastern District of Louisiana for further proceedings and disposition.

---

[3]     For purposes of removal, CH2M HILL is not required to prove success on its defense. *Mesa*, 489 U.S. at 133; *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) ("defense need only be plausible; its ultimate validity is not to be determined at the time of removal."); *Jamison v. Wiley*, 14 F.3d 222, 238 (4th Cir. 1994) ("defendant need not prove that he will actually prevail on his federal immunity defense in order to obtain removal"). Rather, CH2M HILL is only required to show a causal connection between the plaintiff's claims and CH2M HILL's performance as a federal contractor; CH2M HILL has done so. *See Williams v. Todd Shipyards Co.*, 154 F.3d 416 (5th Cir. 1998).

6

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.


s/  Sandra Varnado
Danny G. Shaw (Bar No. 11977)
Gerardo R. Barrios (Bar No. 21223)
Wade M. Bass (Bar No. 29081)
Sandra Varnado (Bar No. 30775)
No. 3 Sanctuary Boulevard, Suite 201
Mandeville, LA  70471
Telephone: (985) 819-8400
Facsimile:  (985) 819-8484
dshaw@bakerdonelson.com
gbarrios@bakerdonelson.com
wbass@bakerdonelson.com
svarnado@bakerdonelson.com

**ATTORNEYS FOR
CH2M HILL CONSTRUCTORS, INC.**

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have on November 18th, 2009, filed a true copy of the foregoing Notice of Removal. Plaintiff's counsel received notice of this filing by operation of the Court's electronic filing system. I further certify that the foregoing pleading was served upon counsel for plaintiff by placing same in the United States Mail, in a properly addressed envelope, with first-class postage pre-paid. Other parties may access this filing through the Court's CM/ECF system.

/s/ Sandra Varnado

32ND JUDICIAL DISTRICT COURT FOR THE PARISH OF TERREBONNE

STATE OF LOUISIANA

NO.: 158077   **1580'77**

DIVISION: "  "

Robin Scott,

Plaintiff

versus

Gulf Stream Coach, Inc.; Shaw Environmental, Inc.;
Fluor Enterprises, Inc.; and CH2M Hill Constructors, Inc.,

Defendants.

FILED: _____

_____
DEPUTY CLERK

## PETITION FOR DAMAGES

THE PETITION of Robin Scott, a person of full age of majority, on behalf of

himself (hereinafter, "Plaintiff"), through undersigned counsel, respectfully represent

that:

I.

Plaintiff is a resident of and domiciled in the Parish of Terrebonne, State of

Louisiana.

II.

Made Defendants are:

> A. Defendant Gulf Stream Coach, Inc. is, upon information and belief,
> an entity incorporated in the state of Indiana which conducts business
> in the State of Louisiana, and which manufactured and supplied FEMA
> trailers or housing units as defined below pursuant to contracts with
> FEMA for use in the State of Louisiana and within the jurisdiction of
> this Honorable Court.

> B. The following defendants, collectively referred to as the "Contractor
> Defendants," upon information and belief, received No-Bid contracts
> from the Federal Emergency Management Agency ("FEMA") and was
> tasked with, amongst other things, performing significant functions in

RANDALL L. BETHANCOURT
JUDGE - DIVISION E

the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita:

    a. Shaw Environmental, Inc., is, upon information and belief, an entity incorporated in the state of Louisiana;

    b. Fluor Enterprises, Inc., is, upon information and belief, an entity incorporated in the state of California;

    c. CH2M Hill Constructors, Inc., is, upon information and belief, an entity incorporated in the state of Delaware;

All of the named Contractor Defendants are doing business in the State of Louisiana and within the jurisdiction of this Honorable Court.

III.

Venue is proper in Terrebonne as it is the parish where the Plaintiff's injuries occur.

IV.

At all pertinent times hereto, hereinafter Gulf Stream Coach, Inc. was engaged by the Federal Emergency Management Agency, hereinafter "FEMA", to sell temporary housing units for provision to the Plaintiff as temporary housing following Hurricane Katrina.

V.

On information and belief, Gulf Stream Coach, Inc. expedited production of these housing units, and, on information and belief, resorted to using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing units occupied by each Plaintiff containing higher than normal levels of formaldehyde.

VI.

On information and belief, the housing unit of each Plaintiff, including those units which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, deviated from Government specifications pertaining to the safety of the unit as a residence.

VII.

Plaintiff submits that each and all of the housing units which are at issue herein, both those which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, did not conform to any Government-imposed specifications which addressed the design and/or construction of the housing units pertinent to formaldehyde levels.

VIII.

Plaintiff submits that each of the housing units at issue, both those which were manufactured prior to the hurricanes and those later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to Gulf Stream Coach, Inc.'s use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, but that Gulf Stream Coach, Inc. failed to warn the Federal Government about these dangers, which initially were not known to the Federal Government.

IX.

Plaintiff submits that Gulf Stream Coach, Inc. ignored, or concealed and/or condoned the concealment of, the fact that each and all of the housing units at issue contained dangerous levels of formaldehyde due to Gulf Stream Coach, Inc.'s use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, all in order to sell Gulf Stream Coach, Inc.'s products, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions.

X.

Plaintiff spent significant time in the FEMA-provided housing units manufactured by Gulf Stream Coach, Inc. and provided to Plaintiff by the Federal Government. As a result, the Plaintiff unwittingly was exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing units.

XI.

Gulf Stream Coach, Inc. knew or should have known of the health hazards inherent in the products it constructed, by familiarity with industry standards and published medical studies.

XII.

At all pertinent times hereto, the Contractor Defendants were engaged by FEMA through a no-bid contract, with the transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units.

XIII.

Under the terms of their contract, Contractor Defendants were obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and indicated by the manufacturers of same.  Further, under their no-bid contracts with FEMA, Contractor Defendants were obligated to advise and instruct FEMA regarding the implementation of those contracts. Upon information and belief Contractor Defendants failed to properly fulfill either of these tasks.

XIV.

Contractor Defendants contracted with FEMA to pick-up and transport the temporary housing units from FEMA-controlled staging areas and deliver them to areas which Contractor Defendants were tasked with operating.  These new areas included staging areas to be managed and maintained as assigned to one of Contractor Defendants or individual locations and addresses where Contractor Defendants assigned that temporary housing unit would have obligations to manage and maintain it.

XV.

To accomplish tits contractual obligation with FEMA, in addition to the use of subsidiary companies, Contractor Defendants entered into numerous sub-contracts, but at all times retained supervisory capacity and responsibility under its individual contract with FEMA.

XVI.

Contractor Defendants were tasked under their contracts with FEMA to identify and prepare the infrastructure for the various group site locations. This included, amongst other things, ensuring there would be adequate water, sewage, electricity, etc. Contractor Defendants knew or should have known that these preparations were for long-term occupancy of the temporary housing units.

XVII.

Once the temporary housing units occupied by the plaintiffs were transported and delivered to a particular location, Contractor Defendants had the responsibility for installing that temporary housing unit. Contractor Defendants installed the temporary housing units by "blocking" the unit. This meant raising each plaintiff's unit several feet into the air and off of its wheel base, and setting it on concrete blocks.

XVIII.

By blocking the temporary housing units of each plaintiff, Contractor Defendants created stress and flexing on the frames of the unit as it were not designed to be lifted off of the wheel base. In fact, the manufacturers of the temporary housing units warned in the various owners' manuals provided with the units, that units should not be jacked so that the vehicle's weight is no longer supported by the wheels.

XIX.

The stress and flexing of temporary housing units' frames caused by Contractor Defendants "blocking" them with weight off of the wheels created distortion in the travel trailer's shell allowing increased moisture intrusion which contributed to increased formaldehyde exposures.

XX.

The temporary housing units occupied by the plaintiffs which were provided by FEMA were for the most part travel trailers. The travel trailers are, by definition, mobile. They are designed for and intended for periodic, recreational use and not for long-term habitation. By installing the travel trailers on concrete blocks for extended occupancy, Contractor Defendants knowingly and intentionally modified the design and the actual use of these units occupied by the plaintiff(s) by converting them into a temporary

housing unit to be used as a residence for long term occupancy in some instances exceeding 18 months.

XXI.

Contractor Defendants failed to consult with the manufacturers of the temporary housing units, including Gulf Stream Coach, Inc., with regard to the installation, warnings, warranty issues or advisability of using travel trailers for long term residence and occupation. Contractor Defendants took actions which voided the warranties of the manufacturers and directly created or contributed to unsafe and hazardous living conditions in the temporary housing units.

XXII.

Once Contractor Defendants had completed the transportation, delivery and installation of the temporary housing units occupied by the plaintiffs. Contractor Defendants were tasked with inspecting each unit to ensure that it was safe and habitable, prior to occupancy by the plaintiffs. Upon information and belief, Contractor Defendants failed to adequately inspect the temporary housing units occupied by the plaintiff(s) to ensure that the units were safe and suitable for their intended use – the long-term occupancy by individuals and families displaced by hurricanes Katrina and Rita. This failure to properly inspect the units for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by hurricane victims.

XXIII.

In addition to transportation, site identification, installation and inspection, the temporary housing units occupied by the plaintiffs provided in response to hurricanes Katrina and Rita were also managed, maintained and repaired by Contractor Defendants, or their various subcontractors over whom they maintained direct oversight and responsibility. Upon information and belief, Contractor Defendants failed to adequately manage, maintain and repair the temporary housing units which enabled and contributed to the unsafe and hazardous conditions that led to adverse health effects amongst the plaintiffs.

### XXIV.

Parallel to their duty to manage, maintain and repair each temporary housing unit, Contractor Defendants failed to undertake appropriate action, maintenance or repair in response to numerous complaints made by the Plaintiff-occupant(s) of the temporary housing units to various adverse health effects caused by exposure to elevated levels of formaldehyde.

### XXV.

Following the Plaintiff's occupancy of each temporary housing unit, Contractor Defendants were tasked with its de-installation.  Upon discovering the deteriorated condition of the temporary housing units at the time of de-installation and removal, Contractor Defendants failed to identify the unsuitability of the temporary housing units for long-term occupancy.

### XXVI.

In addition to de-installation of the temporary housing units, Contractor Defendants were tasked with refurbishment and restoration of the temporary housing units for use, either in direct response to hurricanes Katrina and Rita or for use in the future.  By restoring and refurbishing these temporary housing units, Contractor Defendants warranted that the units were fit for their intended use, long term occupancy in response to disaster related displacement.  By restoring and refurbishing these temporary housing units, Contractor Defendants created and perpetuated existing hazardous conditions which would foreseeably lead to adverse health effects caused by the elevated levels of formaldehyde in the temporary housing units.  Further, in thousands of cases, following the restoration and refurbishment, these temporary housing units were immediately occupied by new individuals or families displaced by hurricanes Katrina and Rita, and who were then directly exposed to hazardous levels of formaldehyde.

### XXVII.

Contractor Defendants, at every stage of their involvement, failed to warn the plaintiffs of each temporary housing unit of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde – a known human carcinogen – which led directly to adverse health effects, including but not

limited to the advent of childhood asthma and the onset of adult asthma in some of the Plaintiff.

### XXVIII.

Through their actions and omissions, Contractor Defendants created and perpetuated a situation wherein occupants of the temporary housing units were exposed to elevated levels of formaldehyde and, as a result, suffered adverse health effects. Contractor Defendants negligently failed to adhere to the manufacturer instructions and warnings related to: (1) the manufacturers' intended (short-term) use of the temporary housing units; (2) the installation and set-up of the temporary housing units; and (3) the warning that the temporary housing units contained urea formaldehyde resin which would release formaldehyde gas directly into the intended living space.

### XXIX.

Contractor Defendants failed to warn the occupants of temporary housing units of the hazardous conditions created by the elevated levels of formaldehyde in the temporary housing units.

### XXX.

By restoring and refurbishing the trailer for future habitation, Contractor Defendants improperly and negligently warranted that the units were fit for the intended use of long-term occupancy.

### XXXI.

As a result of the foregoing, Plaintiff was caused to sustain injuries including, but not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven.

XXXII.

Plaintiff's injuries and resulting damages were proximately caused by the fault of Defendants and their officers, agents, employees, and those for whom they are legally responsible.

XXXIII.

Gulf Stream Coach, Inc., under all applicable laws, including but not limited to, the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, et seq., is strictly liable unto Plaintiff for all injuries and damages for designing, manufacturing, distributing and/or selling of temporary housing units described above, that were defective, unsafe, and unreasonably dangerous in design, composition, manufacture, and/or construction and/or due to its lack of and/or inadequate warnings and due to its non-conformity to the express warranties of fitness of said product.

XXXIV.

Furthermore, Contractor Defendants, under all applicable laws, including but not limited to, the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, et seq., are strictly liable unto Plaintiff for all injuries and damages for designing, manufacturing, constructing, assembling, distributing, and/or refurbishing of the residential housing as described above, that were defective, unsafe, and unreasonably dangerous in design, composition, manufacture, and/or construction and/or due to its lack of and/or inadequate warnings and due to its non-conformity to the express warranties of fitness of said product.

XXXV.

Plaintiff asserts his claims against both Gulf Stream Coach, Inc. and Contractor Defendants under the laws of the State of Louisiana and under any other state and federal statutes which may be applicable.

XXXVI.

Plaintiff is entitled to a trial by jury.

WHEREFORE, Plaintiff prays that Gulf Stream Coach, Inc. and Contractor Defendants be served with a copy of this Petition for Damages and that after due proceedings are had, Plaintiff prays for judgment in their favor and against all Defendants in an amount reasonable under the premises, together with legal interest thereon from the date of judicial demand, and for all costs of these proceedings, and for all appropriate legal and equitable relief, and for trial by jury.

Respectfully submitted:

**J. ROCK PALERMO III**
Bar Roll No. 21793
Veron, Bice, Palermo & Wilson, L.L.C.
721 Kirby Street
P.O. Box 2125
Lake Charles, LA 70602
337-310-1600
Fax: 337-310-1601

**PLEASE WITHHOLD SERVICE
ON ALL DEFENDANTS UNTIL
FURTHER NOTICE.**

FILED
AUG - 7 2009
/s/ KAREN L. PICOU
Deputy Clerk of Court
Parish of Terrebonne, LA

HSFE04-04-Q-8000
**FEMA Model Travel Trailer Procurement Specifications**
Dated: August 12, 2004

**General**

Travel trailers being procured under this contract are for the purpose of providing temporary housing. The units are subjected to continuous road travel, multiple installations and deactivations, and various weather conditions. The standards shall not be considered restrictive in that the supplier may provide "equal or better" units considering that the competitive price and delivery requirements can be met.

The construction and outfitting standards identify minimum square footage of living space, floor plan configuration, finishes, furnishing and environmental living conditions necessary to provide emergency housing for disaster relief operations. All exterior openings such as windows, doors, drain pipes; etc… will be caulked with a clear, non-hardening weatherproof sealant to prevent air and moisture penetration.

The units shall meet industry standards except where identified. These units will not include awnings, stereos, holding tanks, and/or any optional accessories.

**Quality of Construction**

The specifications establish the minimum standards for travel trailer construction and outfitting to meet FEMA contract requirements. This specification does not constitute any expressed or implied deviation or waiver of any requirement of the U.S. regulatory requirements from the governing agency. All units to include furnishings and appliances must be new. The manufacturer shall design and construct all units under this contract within a superior grade quality of workmanship.

| Size and Configuration | |
|---|---|
| Type | FEMA Model Travel Trailer |
| Exterior Length | 32-35 ft |
| Exterior Width | 8 ft (Not to exceed) (No Slide-out units) |
| Screwjack | Non-detachable (No fifth wheel units) |
| Electrical System – AMPS | 30 Amp power cord (50 ft long) |
| Furnishing | Fully |
| Bedrooms | Sleep 6. There must be two bedrooms of which one must be contain a double bunk |
| Bathroom | 1 (residential commode and no holding tank). |
| Refrigerator | Yes - (Residential) 14 cf. Frost-free electric refrigerator with freezer |
| Range and Oven | Yes - (Gas) The each unit must have a gas range and oven. NOTE: The gas appliances must have auto (electronic) ignition |
| Washer Capacity | No |
| Dryer Capacity | No |
| Air Conditioner | Yes (Roof top) |
| Furnace | Yes |
| Microwave | Yes |
| Water Heater | Yes, Gas, 10 Gal (auto electronic ignition). |
| Exterior Covering | Industry standard. |
| Smoke Detector | Yes, in kitchen area, and each bedroom/sleeping area. |
| LP Gas Detector | Yes. |
| Fire Extinguisher | Yes |

TTProcurementSpec(08-11-04)(Final);LAI



EXHIBIT
5

165

Gulf0005675
ALX-DORRIS-000022

HSFE04-04-Q-8000
**FEMA Model Travel Trailer Procurement Specifications**
Dated: August 12, 2004

| Electrical Service | |
|---|---|
| **Receptacles** | |
| Interior Receptacles | Electrical receptacles will be installed at convenient locations throughout the unit. Receptacles located near or in wet areas must be protected with ground fault interrupter protection. |
| Exterior Receptacles | Each home will be provided with a heat tape receptacle located near the water inlet. Exterior receptacles must be protected with ground fault interrupter protection. |
| Phone and Cable | Television Jack: Each unit shall have a television jack and a telephone jack installed in the living room and master bedroom area. |

| Plumbing Service | |
|---|---|
| Plumbing System | Industry standard plumbing system will be installed  The holding tank will not be installed. |
| Winterization | All drain lines shall have antifreeze poured into all traps, including washer drain, after the flood test. |
| Faucet Assemblies | All faucet assemblies in the home shall be of the dual shutoff valve type. |
| Bathroom | The bathroom shall also have the manufacturer's standard vanity with lavatory, medicine cabinet with mirror and accessories (paper holder, towel bars/hooks). All interior plumbing must be assembled. All bathroom fixtures shall be of the same color. |
| Commode | The unit will have a residential commode. The water storage tank, seat and cover shall be the same color as the commode bowl. |
| Sewer Line | The sewer line will exit the home approximately two feet (2') and not more than three feet (3') behind the rear axle. The exit pipe shall protrude approximately six inches (6"), but not more than eight inches (8"), from the underlying, shall have a threaded end, and be capped with a removable plastic cap and chain. |

| Appliances | |
|---|---|
| Water Heater | A 10-gallon auto electric ignition water heater. |
| Range | A auto electric ignition cooking range having three (3) or four (4) burners (Note: four burners is preferred), thermostatically controlled oven, and a lighted, power-vented range hood |
| Refrigerator | Residential 14 c. f. frost-free electric refrigerator with freezer. |
| Microwave Oven | Each unit will have a minimum 1.2 cu. ft microwave. |

| Furnishings | |
|---|---|

Gulf0005676
ALX-DORRIS-000023

HSFE04-04-Q-8000
**FEMA Model Travel Trailer Procurement Specifications**
Dated: August 12, 2004

| Furnishings | |
|---|---|
| | Furnishings shall be the manufacturer's standard for functional quality (provides usability, comfort and minimum maintenance). All furniture shall be assembled with all packing material removed. All furniture shall be appropriately secured to prevent damage during transport. |
| Bedrooms. | One bedroom shall have a full-size bed. The other bedroom shall have a double bunk w/ storage. |
| Living Room | Each living room area will be furnished with sleeper sofa, capable of sleeping adults. |
| Dining Room | The dining room area will be furnished with dinette table and seating. |

| Heating and Cooling System (NOTE: Furnace and A/C shall use the same thermostat) | |
|---|---|
| Furnace | The unit will be equipped with a furnace capable of operating on liquefied petroleum (LP) gas. The unit shall have a 34,000 BTU Furnace and In-Floor Ducted Heat with a wired thermostat connected and completely installed. Also if a battery is needed, then a battery and cover must be included. |
| Air Conditioner (A/C) | 15,000 BTU Ducted Roof A/C wired and connected with the furnace. Window units are not acceptable. |

| Safety Equipment | |
|---|---|
| Smoke Detectors | Each unit will include three battery-operated smoke detector (battery included). Smoke detectors shall be equipped with push-button testing devices. |
| Fire Extinguisher | Each home will be equipped with a five-pound A-B-C type fire extinguisher and a mounting bracket. |
| Gas Detector | LP gas detector. |
| LP Tanks | Double 30 LB LP bottles w/auto change-over gauge and bottle covers |
| Steps | Double entry steps-welded to frame |
| Jacks | Four corner stabilizer jacks with pads |

| Exterior Covering | |
|---|---|
| Siding | Industry standard with an entry assist handle at entrance/exit each door. |
| Roof | Industry standard covering. Rain gutter w/corner downspout along the roofline. |
| Exterior Door Lock | Flush mounted combo entry dead-bolt lock. |

Gulf0005677
ALX-DORRIS-000024

HSFE04-04-Q-8000
**FEMA Model Travel Trailer Procurement Specifications**
Dated: August 12, 2004

| Interior Covering | |
|---|---|
| Floor Covering | Living room and bedrooms shall have carpet and pad. Duct openings shall be covered with a 4" x 10" metal, adjustable louvered covering (register). No carpet shall be installed in the bathrooms and/or kitchen. These areas shall be covered with continuous, roll non-foam resilient sheet vinyl tension flooring. |
| Window Covering | Mini Blinds for all windows except bedrooms with bunks, which shall be covered with flame retardant curtains. |

| Transport | |
|---|---|
| FEMA Acceptance | Units will not be accepted as FEMA property until an appropriate FEMA Rep inspects and signs for the unit. FEMA must have a copy of all shipping documents. FEMA reserves the right to reject any unit due to damages, non-road ready and/or transportable unit, and/or non-specifications compliance. The unit must be made transportable and road ready prior to acceptance. Units that are not in a transportable and road ready condition (such as flat tires, damaged axles, etc) will not be considered acceptable. |

| Miscellaneous | |
|---|---|
| Master Keys | The unit manufacturer or supplier shall furnish 3 sets of keys for homes procured. Master keys shall be provided and packaged separately. The master keys must be received with delivery of the first unit. |
| Warranty | The company the unit is purchased from will be FEMA's point-of-contact (POC) for all warranties, this includes the actual unit, A/C, furnace, water heater, and all furnishings and appliances. The company supplying the unit must identify a POC for handling warranty items and the company needs to provide FEMA the procedure for reporting warranty items. |
| Certificates of Origin | The certificate of origin must be provided. |

T:\Procurement\Specs\(08-11-04)(Final)1A1

Page 4 of 4

Gulf0005678
ALX-DORRIS-000025



CV-DH

Gulf0005679
ALX-DORRIS-000026