UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER　　　　　　　　　　　　　　　　　MDL NO. 07-1873
　　　　FORMALDEHYDE PRODUCTS
　　　　LIABILITY LITIGATION
　　　　　　　　　　　　　　　　　　　　　　　　　　SECTION "N"　(5)

THIS DOCUMENT RELATES TO
Member Case No. 09-3251

# ORDER AND REASONS

Before the Court is the Defendant United States of America's Motion to Dismiss Plaintiff Earline Castanel's FTCA Claims for Lack of Subject Matter Jurisdiction (Rec. Doc. 8629). After considering the memoranda of the parties and the applicable law, the Court grants this motion.

**A.　BACKGROUND**

In this multi-district litigation ("the MDL"), referred to as "In Re: FEMA Trailer Formldehyde Products Liability Litigation," Plaintiffs are individuals who resided in emergency housing units ("EHUs") provided by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita. In general, Plaintiffs claim injuries resulting from alleged exposure to the release of formaldehyde and/or formaldehyde vapors in these EHUs. (Rec. Doc. 109,¶ 30).　The parties have now completed the class certification phase, conducted substantial discovery, and have moved into the bellwether trial phase. This particular motion relates to the first bellwether trial.

Bellwether plaintiff, Earline Castanel ("Castanel"), first moved into her EHU on or about

March 11, 2006.[1]. Before moving into the EHU, Castanel was not sick. (Exhibit 2 to Rec. Doc. 8629, pp. 68-70). Within four to six weeks of moving into the EHU, Castanel began to experience breathing and sinus problems. She testified that "[a]fter I was in there, that's when I started really having it bad, I couldn't breath[e]." (Exhibit 2 to Rec. Doc. 8629, pp. 41-42). To breathe and relieve these symptoms, Castanel testified that she "would go stand by the door" or go outside the EHU. (Exhibit 2 to Rec. Doc. 8629, pp. 32-33). According to Castanel, within five to six weeks of moving into the EHU, "everything got worse," (Exhibit 2 to Rec. Doc. 8629, pp. 41-42), her eyes became puffy and itchy, and she suffered headaches that hurt much more than a regular headache. (Exhibit 2 to Rec. Doc. 8629, pp. 36-38, 41-42). Three months after moving into the trailer she began to suffer dry itchy skin, nausea, abdominal pain, and diarrhea. (Exhibit 2 to Rec. Doc. 8629, pp. 35-36, 38-39). Castanel further testified:

> Q. Did you enjoy your trailer?
>
> A. It was all right. But I was sick and I know that. After I was in there a while it wasn't like I thought it would have been.
>
> Q. And after you were in there a while you thought that the trailer was making you sick?
>
> A. There was nothing else I see could be making me sick, there was

---

[1] As the Government point out in note 1 tp Rec. Doc. 8629, it is unclear whether Castanel moved into the EHU in February 2006 or on March 11, 2006. According to Castanel's Fact Sheet and deposition testimony she moved into the unit in February 2006, however, documents associated with a FEMA aid recipient moving into a trailer are signed and dated March 11, 2006. (See Exhibit1 to Rec. Doc. 8629, p. 9; Exhibit 2 to Rec. Doc. 8629, pp. 22-23, 68; Exhibits 3-6 to Rec. Doc. 8629). For purposes of this motion, the Court will use the later date which is more favorable to Castanel for purposes of determining accrual.

> nothing else. Like I said, I don't drink, I don't smoke, and I don't run the streets, so I don't see nothing else could make me sick.
>
> Q. And you got sick within four or five or six weeks of moving in that trailer.
>
> A. Yeah. Because I started feeling bad, you know, so that's it.

(Exhibit 2 to Rec. Doc. 8629, pp. 111-12). Castanel also related her concerns about health problems and the EHU to her neighbor, Ms. Robert, and one of her daughters. (Exhibit 2 to Rec. Doc. 8629, p. 53).

In March of 2007, Castanel moved out of the EHU. (Exhibit 1 to Rec. Doc. 8629, p. 9). On August 7, 2008, FEMA received from Castanel's attorney an administrative claim that he had issued on her behalf seeking $6,500 in property damage and $100,000 for personal injuries. (Exhibits 6-7 to Rec. Doc. 8629). Castanel then filed this lawsuit on April 8, 2009. (*Castanel, et al. v. recreation by Design, L.L.C., et al.*, Member Case No. 09-3251, Rec. Doc. 1).

The Government has now filed the instant motion to dismiss Castanel's claims against it, asserting that such claims are barred by the Federal Tort Claim Act's ("FTCA") two-year statute of limitations, 28 U.S.C. § 2401(b).

**B. LAW AND ANALYSIS**

**1. Standard of Review**

Rule 12(b)(1) of the Federal Rules of Civil Procedure governs challenges to a court's subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v.*

*Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)). "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)). In the context of the FTCA's statute of limitations, Plaintiffs, who are asserting jurisdiction, bear the burden of demonstrating that subject matter jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).[2]

### 2. Law Regarding FTCA's Statute of Limitations

The FTCA is a limited waiver of the sovereign immunity of the United States. *United States v. Kubrick*, 444 U.S. 111, 117-18, 100 S.Ct. 352, 356-57, 62 L.Ed.2d 259 (1979). Subject to some exceptions, the United States is liable in tort for certain damages caused by the negligence of any employee of the Government "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); see *Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir.1995) (en banc). While substantive state law determines whether a cause of action exists, federal law determines when that claim accrues. *Quinton v. United States*, 304 F.2d 234, 235 (5th Cir.1962). A two-year statute of

---

[2] The FTCA's statute of limitations is a jurisdictional issue. The Fifth Circuit had stated in *Perez v. United States*, 167 F.3d 913, 915-16 (5th Cir. 1999), that the jurisdictional nature of 28 U.S.C. § 2401(b) was an open question due to the possible application of equitable tolling to the FTCA's statute of limitations. However, as the Government notes, since the *Perez* decision was rendered, the Supreme Court's decision in *John R. Sand & Gravel Co. v. United States*, 128 S.Ct. 750, 753 (2008), wherein it held that a similar limitations provision in the Tucker Act (28 U.S.C. § 2501) was jurisdictional, likely answers the question regarding whether the FTCA's limitations provision is jurisdictional in nature. See *Marley v. United States,* 567 F.3d 1030, 1034-37 (9th Cir. 2009). For the purposes of this motion, this Court assumes it is jurisdictional, and as such, determines this issue now as a threshold issue ripe for decision, before reaching the merits of this case. See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S. Ct. 1003, 140 L.Ed.2d 210 (1998).

limitations from the accrual date applies for FTCA claims. 28 U.S.C. § 2401(b). Indeed, "a tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues. . . " 28 U.S.C. § 2401(b). However, as noted by the Fifth Circuit in *Johnston v. U.S.*, 85 F.3d 217, 219 (5th Cir. 1996), the FTCA fails to explain when a cause of action "accrues." The general rule, however, is that a cause of action accrues at the time of a plaintiff's injury. *Kubrick*, 444 U.S. at 120.

   3.   **Analysis**

In sum, the Government asserts that because Castanel was aware prior to August 7, 2006 (the date two years before a claim was filed on behalf of Castanel) that Castanel was experiencing symptoms that she alleges were related to the EHU, her claim is barred. Castanel, on the other hand, assert that Castanel did not have sufficient information to start accrual of her claim until March 2007, when she first became aware of the presence of formaldehyde in the EHU and its potential health effects.

However, the Supreme Court in *Kubrick* made clear that a plaintiff need not know the precise agent causing the injury for a claim to accrue. Indeed, a plaintiff need only have sufficient information regarding injury and causation that would lead a reasonable person to inquire further into the facts to determine the specific cause of the injury:

> We thus cannot hold that Congress intended that "accrual" of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff . . . armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.

444 U.S. at 123. Here, the FTCA's two-year statute of limitations for Castanel's claims against

the Government began to run when she first associated her symptoms to conditions in the EHU shortly after she moved in. Specifically, within five to six weeks after moving into the EHU (i.e., by late April 2006, early May 2006, at the latest), Castanel suffered the injuries/symptoms at issue in this lawsuit – breathing and sinus problems, puffy and itchy eyes, headaches, and inability to breathe while inside the EHU. (Exhibit 1 to Rec. Doc. 8629, pp. 3-4; Exhibit 2 to Rec. Doc. 8629, pp. 36-38, 41-42). Further, Castanel clearly had sufficient information to attribute her injuries/symptoms to the EHU and initiate an investigation to determine the specific problem with the EHU that was causing her injuries/symptoms because she admits that, to relieve these symptoms and breathe, she "would go stand by the door" of the EHU or go outside of the EHU. (Exhibit 2 to Rec. Doc. 8629, pp.32-33). Castanel explained:

> There was nothing else I see [but the EHU] could be making me sick, there was nothing else. Like I said, I don't drink, I don't smoke, and I don't run the streets, so I don't see nothing else could make me sick.

(Exhibit 2 to Rec. Doc. 8629, pp. 111-12). According to her Plaintiff Fact Sheet, Castanel began experiencing symptoms in March 2006. (Exhibit 1 to Rec. Doc. 8629, p. 4). However, even assuming that she did not experience symptoms that she attributed to the EHU until six weeks after moving in, her claim accrued at the latest in early May of 2006.[3] Yet, Castanel waited until August 7, 2008 to file an administrative claim. (Exhibits 6-7 to Rec. Doc. 8629).

Even though Castanel did not immediately know of the exact cause of her physical symptoms, she was aware that they either began or worsened when she initially took up residence in the EHU. She admittedly associated these symptoms with the EHU. The Court

---

[3] Castanel knew or suspected that these symptoms were associated with the EHU because she admits that to relieve these symptoms, she would either exit the EHU or stand near the door of the EHU. (Exhibit 2 to Rec. Doc. 8629, pp 32-33, 36-38, 4-42, 68-70, 111-12).

6

concludes that this was sufficient information regarding injury and causation that would lead a reasonable person to inquire further in the facts to determine the specific cause of the injury.

Also, the Court finds unpersuasive Castanel's argument that she sustained an ongoing and continuous injury caused by formaldehyde exposure until March 2007 (when she moved out of the EHU). The Court concludes that because accrual for the FTCA's statute of limitations hinges on notice, it is unnecessary for the plaintiff to be aware, or have suffered, the full extent of his injuries for the limitations period to begin to run. See *Beech v. United States*, 345 F.2d 872, 874 (5th Cir. 1965) (finding that, under the FTCA, where "some damage is discernible at the time, the two-year statute of limitations begins to run, even though the ultimate damage is unknown or unpredictable").

Last, the Court notes that as opposed to the assertion of a prescriptive statute ,which must be strictly construed against prescription, *Landry v. Blaise, Inc.*, 774 So.2d 187, 190 (La. App. 4th Cir.), *writ denied*, 776 So.2d (La.2000), the FTCA's statute of limitations is jurisdictional, and as such, courts must strictly construe the statute so as to avoid extending it beyond the limited waiver that Congress intended. See *Kubrick* 444 U.S. at 117-18. Here, the Court has strictly construed the FTCA's statute of limitations as to Castanel's claims against the Government so as to avoid extending the FTCA beyond the limited waiver that Congress intended and so as to encourage the prompt presentations of claims against the Government.

## C. CONCLUSION

Considering the foregoing, **IT IS ORDERED** the **Defendant United States of America's Motion to Dismiss Plaintiff Earline Castanel's FTCA Claims for Lack of Subject Matter Jurisdiction (Rec. Doc. 8629)** is **GRANTED**. Thus, the claims of Earline Castanel

against Defendant United States of America are hereby **DISMISSED**.

New Orleans, Louisiana, this 22nd day of January, 2010.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**