UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                          MDL NO. 07-1873
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION                         SECTION "N" (5)
                                             JUDGE ENGELHARDT
                                             MAG. JUDGE CHASEZ

THIS DOCUMENT RELATES TO:
ALL CASES ("Alabama Plaintiffs")

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEFENDANT UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION
TO DISMISS THE FTCA CLAIMS OF ALL "ALABAMA PLAINTIFFS"
FOR LACK OF SUBJECT-MATTER  JURISDICTION BASED UPON NO
ANALOGOUS PRIVATE LIABILITY

**TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS ............................................................................ i

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ....................................................................................... 1

BACKGROUND ......................................................................................... 3

STANDARD OF REVIEW ......................................................................... 5

ARGUMENT .............................................................................................. 7

I.      The FTCA Waives The United States' Sovereign Immunity And
        Provides Subject Matter-Jurisdiction Only Where A Private Person In
        Like Circumstances Would Be Subject To Liability ...................................... 7

II.     There Is No Analogous Private Liability For Alabama Plaintiffs' FTCA
        Claims Because A Private Person In Like Circumstances Would Be Shielded
        From All Civil Liability Under Alabama Law ............................................. 12

        A.      Ala. Code § 31-9-17 Protects Private Persons Who Provide Free Shelter
                To Disaster Victims From Civil Liability ......................................... 13

        B.      Because Alabama Has Chosen To Immunize Private Persons Who
                Provide Free Emergency Shelter In Response To A Disaster, The Court
                Lacks Jurisdiction Over Alabama Plaintiffs' FTCA Claims ........................ 15

                1.      The Government Was In Like Circumstances With
                        A Private Person Who Owns Or Controls "Real Estate Or
                        Other Premises" ......................................................... 16

                2.      The Government Was In Like Circumstances With
                        A Private Person Who Acts "Voluntarily And Without
                        Compensation" .......................................................... 17

                3.      The Government Was In Like Circumstances With
                        A Private Person Who "Permits The . . . Use Of . . . Such . . .
                        Premises" ............................................................... 20

**PAGE**

    4.     **The Government Was In Like Circumstances With
A Private Person Who Acts "For The Purpose Of
Sheltering Persons During An Actual Disaster"** ................................. 21

**CONCLUSION** .................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

<u>**PAGE**</u>

### <u>CASES</u>

*Alexander v. United States*,
   605 F.2d 828 (5th Cir. 1979) ................................................................. 1

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................. 6

*Banks v. United States*,
   623 F. Supp. 2d 751 (S.D. Miss. 2009) ................................................ 11

*Brown v. United States*,
   653 F.2d 196 (5th Cir. 1981) ................................................................. 8

*C.P. Chemical v. United States*,
   810 F.2d 34 (2d Cir. 1987) ................................................................. 10

*Carmichael v. Southern Coal & Coke Co.*,
   301 U.S. 495 (1937) ........................................................................... 19

*Carter v. United States*,
   982 F.2d 1141 (7th Cir. 1992) ............................................................... 8

*Chambers v. City of Opelika*,
   698 So. 2d 792 (Ala. Cr. App. 1996) .................................................. 16

*Cleveland ex rel. Cleveland v. United States*,
   457 F.3d 397 (5th Cir. 2006) ................................................................. 1

*Continental Insurance v. United States*,
   335 F. Supp. 2d 532 (D. N.J. 2004) .................................................... 11

*Dalrymple v. United States*,
   460 F.3d 1318 (11th Cir. 2006) ............................................................. 9

*Estate of Boone v. United States*,
   591 F. Supp. 2d 800 (D. Md. 2008) .................................................... 11

*Ewell v. United States*,
   776 F.2d 246 (10th Cir. 1985) ............................................................. 11

**PAGE**

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ........................................................................................... 7

*Feres v. United States*,
    340 U.S. 135 (1950) ........................................................................................... 8

*Flast v. Cohen*,
    392 U.S. 83 (1968) ........................................................................................... 19

*Goldstar (Panama) v. United States*,
    967 F.2d 965 (4th Cir. 1992) ........................................................................... 9

*Guile v. United States*,
    422 F.3d 221 (5th Cir. 2005) ........................................................................... 7

*Haceesa v. United States*,
    309 F.3d 722 (10th Cir. 2002) ......................................................................... 12

*Hannon v. United States*,
    801 F. Supp. 323 (E.D. Ca. 1992) ................................................................... 10

*Hill v. SmithKline Beecham Corp.*,
    393 F.3d 1111 (10th Cir. 2004) ....................................................................... 12

*Hornbeck Offshore v. United States*,
    569 F.3d 506 (D.C. Cir. 2009) ......................................................................... 9

*Hyatt v. United States*,
    968 F. Supp. 96 (E.D. N.Y. 1997) ................................................................... 10

*Indian Towing Co. v. United States*,
    350 U.S. 61, 64 (1955) ..................................................................................... 10

*Int'l Ass'n of Machinists v. TX. Steel Co.*,
    538 F.2d 1116 (5th Cir. 1976) ......................................................................... 6

*Johnson v. FEMA*,
    2009 WL. 1208639 (E.D. La. 2009, May 1, 2009) (emphasis added) ................... 20

*Johnson v. Sawyer*,
    47 F.3d 716 (5th Cir. 1995) ............................................................................. 9

iv

**PAGE**

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ................................................................................. 5

*LaBarge v. County of Mariposa*,
    798 F.2d 364 (9th Cir. 1986) .............................................. 2, 10, 14

*Land v. Dollar*,
    330 U.S. 731 (1947) ............................................................................. 5,6

*Leleux v. United States*,
    178 F.3d 750 (5th Cir. 1999) ........................................................... 8

*Lockett v. FEMA*,
    836 F. Supp. 847 (S.D. Fla. 1993) ................................................ 20

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ........................................................... 6

*McClain v. United States*,
    445 F. Supp. 770 (D. Oregon 1978) .......................................... 10

*Menchaca v. Chrysler Credit Corp.*,
    613 F.2d 507 (5th Cir. 1980) ........................................................... 6

*Mortensen v. First Fed. Sav. & Loan Assoc.*,
    549 F.2d 884 (3d Cir. 1977) ........................................................... 6

*Nationwide Mut. Ins. Co. v. United States*,
    3 F.3d 1392 (10th Cir. 1993) ....................................................... 11

*Owen v. United States*,
    935 F.2d 734 (5th Cir. 1991) ............................................. 7, 10, 11

*Palmer v. Flaggman*,
    93 F.3d 196, (5th Cir. 1996) ....................................................... 11

*Palmer v. United States*,
    945 F.2d 1134 (9th Cir. 1990) ..................................................... 10

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ......................................................... 5

**PAGE**

*Richards* v. U.S.,
    369 U.S. 1 (1962) ................................................................................................ 9

*Ridgley v. FEMA*,
    512 F.3d 727 (5th Cir. 2008) ........................................................................... 20

*Robin v. United States*,
    2006 WL. 2038169 (E.D. La. July 17, 2006) .................................................. 14

*Russellville Gas Co. v. Duggar*,
    260 So. 2d 393 (Ala. Civ. App. 1971) ............................................................. 17

*St. Tammany, ex rel. Davis v. FEMA*,
    556 F.3d 307 (5th Cir. 2009) ............................................................................. 9

*Standefer v. United States*,
    511 F.2d 101 (5th Cir. 1975) ........................................................................... 15

*Starnes v. United States*,
    139 F.3d 540 (5th Cir. 1998) ........................................................................... 10

*Starns v. United States*,
    923 F.2d 34 (4th Cir. 1991) ....................................................................... 11, 12

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................................................. 5

*Thomas v. Calavar Corp.*,
    679 F.2d 416 (5th Cir. 1982) ........................................................................... 10

*U.S. Dep't of Energy v. Ohio*,
    503 U.S. 607 (1992) ........................................................................................... 7

*U.S. Fidelity & Guaranty Co. v. United States*,
    728 F. Supp. 651 (D. Utah 1989) ..................................................................... 12

*U.S. v. Muniz*,
    374 U.S. 150 (1963) ......................................................................................... 10

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*,
    384 F.3d 168 (5th Cir. 2004) ............................................................................. 5

**PAGE**

*United States v. Mitchell*,
   445 U.S. 535 (1990) ............................................................... 7

*United States v. Mottaz*,
   476 U.S. 834 (1986) ............................................................... 6

*United States v. Nordic Village, Inc.*,
   503 U.S. 30 (1992) ............................................................... 7

*United States v. Olson*,
   546 U.S. 43 (2005) ........................................... 1, 6, 8, *passim*

*United States v. Smith*,
   324 F.2d 622 (5th Cir. 1963) ............................................... 9

*United States v. Williams*,
   514 U.S. 527 (1995) ............................................................... 7

*Winchell v. Dep't of Agriculture*,
   961 F.2d 1442 (9th Cir. 1992) ............................................. 9

*Woods v. United States*,
   909 F. Supp. 437 (W.D. La. 1995) ................................. 11, 15

## FEDERAL STATUTES

28 U.S.C. § 1346 ..................................................... 1, 3, 6, *passim*

28 U.S.C. § 1402(b) ..................................................................... 1

28 U.S.C. § 2671 ............................................................... 1, 3, 7

28 U.S.C. §§ 2671-2680 ............................................................. 1

28 U.S.C. § 2674 ..................................................... 1, 6, 8, *passim*

28 U.S.C. § 2680(h) ................................................................ 4, 5

42 U.S.C. § 5174(c)(1)(B)(I) ..................................................... 20

## RULES

Rule 12(b)(1) ............................................................................... 5

-vii-

**PAGE**

Rule 12(h)(3) ........................................................................................ 5

Rule 56 ................................................................................................. 5

## **STATE STATUTES**

Ala. Code § 13A-3-20 .......................................................................... 16

Ala. Code § 13A-7-1 ............................................................................ 16

Ala. Code §§ 31-9-1 through 31-9-24 ................................................... 13

Ala. Code § 31-9-2(a) .......................................................................... 13

Ala. Code § 31-9-3(1) .......................................................................... 13

Ala. Code § 31-9-8(a) .......................................................................... 23

Ala. Code § 31-9-16 ....................................................................... 23, 24

Ala. Code § 31-9-17 ............................................................ 2, 6, 12, *passim*

Ala. Code § 31-9-23 ......................................................................... 14, 22

Ala. Code  § 35-9A-141 ....................................................................... 16

## **MISCELLANEOUS**

Ala. Op. Att. Gen. No. 2006-010,
      2005 WL 2996722 (October 25, 2005) ........................................... 23

## INTRODUCTION

Defendant, the United States of America ("United States"), submits this memorandum in support of its motion to dismiss **Alabama Plaintiffs'**[1] claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, based upon lack of subject-matter jurisdiction.[2] Alabama Plaintiffs have failed to meet the FTCA's requirement that there be analogous tort liability against a "private individual under like circumstances," *see* 28 U.S.C. §§ 2674, 1346(b), and, consequently, cannot carry their burden of establishing subject-matter jurisdiction. The FTCA's limited waiver of sovereign immunity – and, thus, its limited grant of subject-matter jurisdiction – hinges on whether a private person could be subject to state law liability under "similar circumstances." *See United States v. Olson*, 546 U.S. 43, 45 (2005) (holding that "'like circumstances' do not restrict a court's inquiry to the same circumstances, but require it to look further afield"); *LaBarge v. County of Mariposa*, 798 F.2d 364, 366-69 (9th Cir. 1986)

---

[1] **"Alabama Plaintiffs" are defined as all plaintiffs in this multi-district litigation ("MDL") who inhabited FEMA-provided emergency housing units ("EHUs") – and allegedly suffered injuries therefrom – while in Alabama.** Because the FTCA requires the United States' liability to be measured in accordance with the law of the state where the alleged act or omission occurred, the FTCA claims of these plaintiffs are shaped by Alabama law. *See* 28 U.S.C. § 1346(b); *Cleveland ex rel. Cleveland v. United States*, 457 F.3d 397, 403 (5th Cir. 2006); *Alexander v. United States*, 605 F.2d 828, 832 (5th Cir. 1979) ("[L]iability under the FTCA is governed by state law."). Any alleged negligent acts or omissions on the part of the United States in these cases will have necessarily occurred within Alabama (where the plaintiff's EHU was located and occupied).

Although most of the cases brought by Alabama Plaintiffs have presumably been filed in Alabama District Courts, the location where a case is filed (even if venue is proper) does not necessarily indicate which state law is referenced to help measure FTCA liability. The FTCA allows for two alternative forums of proper venue: (1) "the judicial district where a plaintiff resides" and (2) the judicial district "wherein the act or omission complained of occurred." *See* 28 U.S.C. § 1402(b). As a result of the first option, some cases properly filed in Alabama District Courts could involve plaintiffs who resided in FEMA-provided housing outside the state of Alabama (thus requiring liability under the FTCA to be measured by referencing the law of a state other than Alabama). Conversely, some cases properly filed in District Courts outside Alabama could involve plaintiffs who resided in FEMA-provided housing within the state of Alabama (thus requiring liability under the FTCA to be measured by referencing Alabama state law as opposed to the law of the state where the case was actually filed in federal court).

[2] This motion references an Alabama state statute that is similar to the Louisiana and Mississippi statutes discussed in the United States' previous motions to dismiss based upon no analogous liability. *See* Rec. Docs. 6970, 7690.

1

("Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy.").  In this case, the Government's provision of emergency housing units ("EHUs") to the Alabama victims of Hurricane Katrina (including Plaintiffs) presents "similar," if not identical, circumstances to the type of private-person conduct shielded from civil liability under Alabama law.[3]  *See* Ala. Code § 31-9-17.

Alabama has sought to encourage (rather than discourage through potential tort liability) the provision of shelter to homeless disaster victims by promulgating Ala. Code § 31-9-17 (entitled "Exemption from tort liability of persons granting license or privilege for use of real estate, etc., for shelters").  This section abrogates the potential civil liability of any private person who, voluntarily and without compensation, allows their premises to be used for the purpose of sheltering persons during a response to a natural disaster.  Ala. Code § 31-9-17.  In this case, Plaintiffs allege that they suffered exposures and resulting injuries as a consequence of residing in rent-free housing units that were provided by the United States in direct response to a hurricane.  Using the FTCA's required analogy, had a private person provided thousands of emergency shelters to the Alabama victims of Hurricane Katrina (the same shelters complained of in Plaintiffs' suit), Ala. Code § 31-9-17 would shield that person from all civil liability for injuries related to Plaintiffs' use of the shelters.  The United States must be afforded the same protection under similar circumstances.  Thus, Alabama Plaintiffs' claims fall outside the FTCA's limited waiver of sovereign immunity and must be dismissed for lack of subject-matter

---

[3] Although Plaintiffs in this MDL consist of individuals who resided in FEMA-provided EHUs following both Hurricane Katrina and Hurricane Rita, *see* Order and Reasons, August 21, 2009 (Rec. Doc. 2789), only Hurricane Katrina is specifically mentioned in reference to the Alabama Plaintiffs because Hurricane Rita does not appear to have significantly affected Alabama.

2

jurisdiction.

## **BACKGROUND**

Plaintiffs in this MDL, are "individuals who resided in emergency housing units ("EHUs") provided by . . . [FEMA] . . . after Hurricanes Katrina and Rita." *See* Order and Reasons, August 21, 2009 (Rec. Doc. 2789). "In general, Plaintiffs claim injuries resulting from alleged exposure to the release of formaldehyde and/or formaldehyde vapors in these EHUs." *Id.* (citing Rec. Doc. 109 ¶ 30). All actions currently pending before this MDL Court necessarily "share factual questions relating to allegations that trailers – provided by . . . [FEMA] in the wake of Hurricanes Rita and Katrina – contain materials which emit dangerous, excessive levels of formaldehyde." Transfer Order, October 24, 2007 (Rec. Doc. 1).

As enunciated in the "Fourth Supplemental and Amended Administrative Master Complaint" (Rec. Doc. 7688), Plaintiffs have filed suit against over one-hundred entities, including the United States. *See* Third AMC (Rec. Doc. 4486) ¶¶ 10-115, 124 (as incorporated by reference through the Fourth AMC).[4] They purport that the United States is subject to the jurisdiction of this Court through the FTCA's limited waiver of sovereign immunity. *Id.* ¶ 116 (citing 28 U.S.C. §§ 1346, 2671, *et seq*.). Specifically, Plaintiffs allege that they occupied EHUs in Alabama and other states (Louisiana, Mississippi, and Texas) "after the landfalls of Hurricane Katrina and/or Rita." *Id.* ¶ 124. The housing units were provided by FEMA because "[t]he residence of each Named Plaintiff was rendered uninhabitable following [the landfalls of]

---

[4] Because the "Fourth Supplemental and Amended Administrative Master Complaint" (Rec. Doc. 7688) wholly incorporates by reference paragraphs presented in the "Third Supplemental and Amended Administrative Master Complaint" (Rec. Doc. 4486) – without reproduction – citations in this memorandum to such incorporated paragraphs are stated as direct citations to the original "Third Supplemental and Amended Administrative Master Complaint."

3

Hurricanes Katrina and/or Rita." *Id.* ¶ 128. As a result of what Plaintiffs describe as "the greatest natural disaster in the history of the United States," each and every Plaintiff was allegedly left "homeless." *Id.* ¶¶ 128, 171. Plaintiffs allege that FEMA's provision of housing to these homeless "individuals and families displaced by hurricanes Katrina and Rita" created "a duty on the part of the Federal Government to ensure that such housing was habitable in a safe and sanitary condition," and to: "use due care and caution for the safety of the . . . occupants of the subject housing units"; "provide reasonably safe, functional and habitable housing units"; "ensure that the housing units . . . were free of defects"; and "warn . . . of any defects in the housing units." *Id.* ¶¶ 150, 162, 201-205.

Plaintiffs specifically allege that the United States was negligent in: "continuing to provide unreasonably dangerous housing units"; "failing to adequately warn . . . of the unreasonably dangerous nature of the housing units"; "failing to remedy the dangerous nature of the housing units"; "failing to timely implement adequate safety measures and procedures to address/remove the defects in the housing units"; and "continuing to house [Plaintiffs] in hazardous, unreasonably dangerous temporary housing units." *Id.* ¶ 209. They also facially allege that the United States was "grossly negligent, reckless, willful and/or wanton."[5] *Id.* ¶ 206. According to Plaintiffs, the "FEMA-provided housing units" were "unsafe" and exposed Plaintiffs to "dangerously high concentrations of . . . formaldehyde . . ." *Id.* ¶¶ 135, 150. They aver that their occupancy of these "defective and dangerous" housing units caused them to suffer

---

[5] Plaintiffs also plead that the United States "knowingly and intentionally" suppressed and withheld information from the public and "knowingly and intentionally" allowed litigation concerns to take priority over an alleged safety mandate. *Id.* ¶ 209. As has been mentioned in past filings, the United States has not waived its sovereign immunity for suits involving the intentional torts of Government employees. *See* 28 U.S.C. § 2680(h).

certain physical injuries and other damages.  *Id.* ¶¶ 179, 207, 353.

## STANDARD OF REVIEW

The United States has moved to dismiss all of Alabama Plaintiffs' remaining FTCA claims for lack of subject-matter jurisdiction, pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure.  In the alternative, the United States has moved for summary judgment under Rule 56.  Because federal courts are inherently courts of limited jurisdiction, the law starts with the presumption that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Moreover, jurisdiction is a threshold issue.  The separation of powers doctrine requires a federal court to determine whether it has jurisdiction as soon as possible, before reaching the merits of a case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  As the party averring jurisdiction, Alabama Plaintiffs bear the burden of proof and must establish that the Court possesses subject-matter jurisdiction over their FTCA claims.  *See Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction."); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding this motion under Rules 12(b)(1) and 12(h)(3), the Court is not limited to Plaintiffs' allegations, but may consider materials outside the pleadings.[6]  *See Land v. Dollar*,

---

[6] In some circumstances, courts have converted motions to dismiss under Rules 12(b)(1) and 12(h)(3) into motions for summary judgment under Rule 56 when resolution of the jurisdictional question would purportedly be intertwined with the merits of the case and materials outside the pleadings have been submitted.  *See United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004); *see, e.g.,* Order and Reasons, October 3, 2008 (Rec. Doc. 717).  Here, however, the jurisdictional question – whether Ala. Code § 31-9-17 would abrogate the potential tort liability of private person in like circumstances – is not intertwined with, and, in fact, bears no relation to, a merits determination of whether the United States was negligent.  *See, e.g.,* Order and Reasons, January 22, 2010 (Rec. Doc. 10626) at 3-4.  The only issue for the Court to decide is whether this particular provision of Alabama law would limit the liability of a private person under similar circumstances in light of Plaintiffs' allegations and the undisputed facts.  This legal inquiry affects all Alabama Plaintiffs in the same

330 U.S. 731, 735 n.4 (1947) (in deciding a motion to dismiss for lack of jurisdiction, a court "may inquire by affidavits or otherwise, into the facts as they exist"); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (in assessing a factual challenge to the court's subject-matter jurisdiction, the court may look outside the pleadings without converting the motion into one for summary judgment); *Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir. 1977) ("[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.").

Although the FTCA's analogous private liability provisions rely upon the framework established by state tort law for guidance, *see* 28 U.S.C. §§ 2674, 1346(b), whether a private person in "like circumstances" would be subject to liability is a question of sovereign immunity and, thus, is ultimately a question of federal law.  *See Olson*, 546 U.S. at 44; *see also United States v. Mottaz*, 476 U.S. 834, 841 (1986) (stating the scope of the United States' waiver of sovereign immunity defines the extent of a court's jurisdiction); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (affirming Rule 12(b)(1) dismissal based upon no analogous private liability).  Judicial restraint requires federal courts to avoid liberal interpretation of any federal or state law which might expand the Government's waiver of sovereign immunity without Congressional approval.  *See U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (holding that waivers of sovereign immunity and any conditions on such waivers must be "construed

manner and does not hinge on a case-by-case or individualized analysis.
Even if the Court were to apply the summary judgment standard to the United States' motion, summary judgment is appropriate because there remains no genuine issue of material fact regarding whether Ala. Code § 31-9-17 would bar private person liability under circumstances similar to those presented in this action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  "It is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate."  *Int'l Ass'n of Machinists v. TX. Steel Co.*, 538 F.2d 1116 (5th Cir. 1976).

strictly in favor of the sovereign"). Thus, in its assessment of whether a private person under "like circumstances" would be shielded from liability pursuant to Ala. Code § 31-9-17, the Court must construe all relevant federal and state statutes in favor of the Government.

## ARGUMENT

I.    **The FTCA Waives The United States' Sovereign Immunity And Provides Subject Matter-Jurisdiction Only Where A Private Person In Like Circumstances Would Be Subject To Liability.**

"Absent a waiver, sovereign immunity shields the Federal Government . . . from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Owen v. United States*, 935 F.2d 734, 736 (5th Cir. 1991). The United States' consent to suit cannot be implied, but must be unequivocally expressed and strictly construed. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34-35 (1992); *United States v. Williams*, 514 U.S. 527, 531 (1995) ("The court must construe any ambiguities in favor of immunity."); *see also Guile v. United States*, 422 F.3d 221, 229 (5th Cir. 2005). It is the existence of this consent that defines the scope of a court's jurisdiction. *See United States v. Mitchell*, 445 U.S. 535, 538 (1990). Through the FTCA, Congress has chosen to waive the United States' sovereign immunity and, thus, authorize jurisdiction, for certain torts committed by federal employees while acting within the scope of their employment. 28 U.S.C. §§ 1346(b)(1), 2671. As explained above, the FTCA's jurisdictional boundaries must be "construed strictly in favor of the [United States]." *Ohio*, 503 U.S. at 615.

One express condition on the FTCA's limited waiver of sovereign immunity is that it only allows claims where a private person in like circumstances would be subject to liability. *See Olson*, 546 U.S. at 44. At 28 U.S.C. § 1346(b)(1), the FTCA provides that courts may only exercise jurisdiction over:

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission . . . **under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred**.

(emphasis added).  Similarly, at 28 U.S.C. § 2674, the FTCA provides:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, **in the same manner and to the same extent as a private individual under like circumstances**

(emphasis added).  Thus, if a private person under similar circumstances would not be liable to plaintiff for the alleged conduct under the applicable "law of the place," the United States has not waived its sovereign immunity and the court does not have jurisdiction to adjudicate the FTCA claim.  This requirement embedded in the FTCA ensures that the Act does not create novel causes of action against the United States – it only serves to accept Government liability under "like circumstances" that are functionally equivalent to those where a private person would be liable.[7]  *See Feres v. United States*, 340 U.S. 135, 141 (1950).

The "law of the place where the act or omission occurred," referenced in 28 U.S.C. § 1346(b)(1), "refers exclusively to state law."  *Brown v. United States*, 653 F.2d 196, 201 (5th Cir. 1981); *see Leleux v. United States*, 178 F.3d 750, 759 (5th Cir. 1999);  Hence, the FTCA measures the Government's liability by referencing the law of the state where the act or omission at issue occurred.  *See Brown*, 653 F.2d at 201 ("[T]he liability of the United States under the [FTCA] arises only when the law of the state would impose it [on a private person].").  It follows that the FTCA simply cannot be read to create or enlarge substantive causes of action that do not

---

[7] As described by one court, the FTCA's "like circumstances" requirement is designed to prevent state legislatures from using the United States' limited waiver of sovereign immunity as an occasion to "enrich their own citizens at the expense of the deepest pocket."  *See Carter v. United States*, 982 F.2d 1141, 1143 (7th Cir. 1992).

already exist under state law.[8]  *See Richards v. United States*, 369 U.S. 1, 7, 13-14 (1962) (the

FTCA "was designed to build upon the legal relationships formulated and characterized by the

States."); *see also Goldstar (Panama) v. United States*, 967 F.2d 965, 969-70 (4th Cir. 1992);

*Winchell v. Dep't of Agriculture*, 961 F.2d 1442, 1443 (9th Cir. 1992) (under the FTCA, a

plaintiff must show that the wrongs allegedly committed "would be actionable in tort if

committed by a private party under analogous circumstances, under the law of the state where

the act or omission occurred").

    In *United States v. Olson*, the Supreme Court recently interpreted the words of the FTCA

"to mean what they say, namely, that the United States waives sovereign immunity 'under

circumstances' where local law would make a '**private person**' liable in tort" (emphasis in

*Olson*).  546 U.S. at 44 (quoting 28 U.S.C. § 1346(b)).  The Supreme Court also found that even

though there may exist state or municipal liability for alleged negligent conduct, if there is no

analogous **private** liability, the United States has not waived its sovereign immunity.[9]  *Id.* at 45-

---

[8] The FTCA's limited waiver of sovereign immunity "cannot apply where the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own affairs."  *See United States v. Smith*, 324 F.2d 622, 623-25 (5th Cir. 1963); *Hornbeck Offshore v. United States*, 569 F.3d 506, 509 (D.C. Cir. 2009).  Internal policies, procedures, or statutes governing federal action cannot serve to create a substantive cause of action under the FTCA unless the conduct at issue is "independently tortious under applicable state law."  *See Johnson v. Sawyer*, 47 F.3d 716, 727-29 (5th Cir. 1995); *Dalrymple v. United States*, 460 F.3d 1318, 1327 (11th Cir. 2006).  A federal statute or regulation that speaks only to the government's conduct simply cannot be read to impose state law tort duties upon private persons.  To hold otherwise would effectively "discriminate against the United States."  *Johnson*, 47 F.3d at 727; *see St. Tammany, ex rel. Davis v. FEMA*, 556 F.3d 307, 317 (5th Cir. 2009).

[9] State law rules of immunity that apply exclusively to state or municipal employees may not prove helpful in measuring the scope of FTCA liability.  *See, e.g., Hyatt v. United States*, 968 F. Supp. 96, 108 (E.D. N.Y. 1997).  Such provisions have no bearing on Congress's required analogy to "private person" liability.  *See, e.g., United States v. Muniz*, 374 U.S. 150, 164 (1963).  For example, an Alabama statute that only deals with **governmental agencies** who engage in emergency response activities would be irrelevant to the required **private person** inquiry under the FTCA.  In addition, whether or how a state legislature has addressed the conduct of the United States is irrelevant.  Aside from obvious federalism concerns, such laws would have no bearing on the required inquiry into the analogous liability of a private person under similar circumstances.  *See* 28 U.S.C. § 2674.

9

46.  The FTCA "requires a court to look to the state-law liability of private entities, not that of public entities, when assessing the Government's liability under the FTCA."  *Id.* at 46 (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)); *see Owen*, 935 F.2d at 737 (defining the "relevant question [as] whether the federal defendants [are] in 'like circumstances'").  "Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the **most reasonable analogy**."  *See LaBarge*, 798 F.2d at 367 (emphasis added); *C.P. Chemical v. United States*, 810 F.2d 34, 37 (2d Cir. 1987) (focusing on whether private liability would exist under "comparable" circumstances).

As part of the FTCA's required inquiry into analogous private person liability, courts have consistently held that the Government is entitled to raise any and all defenses that would potentially be available to a private citizen or entity under state law.[10]  *See Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1998) (applying the state law borrowed servant defense in the context of an FTCA action); *Banks v. United States*, 623 F. Supp. 2d 751, 752 (S.D. Miss. 2009) ("Where the FTCA applies, the United States can assert the same defenses available to private citizens . . . "); *Woods v. United States*, 909 F. Supp. 437, 442 (W.D. La. 1995) (dismissing an FTCA action based upon private landowner immunity afforded by Louisiana's recreational use statute).  Invariably, this means that state law defenses, exceptions to liability, immunity

---

[10] Numerous relevant examples are found throughout the case law.  *See, e.g., Thomas v. Calavar Corp.*, 679 F.2d 416, 418-19 (5th Cir. 1982) (applying state workers' compensation immunity in the context of an FTCA action); *Hannon v. United States*, 801 F. Supp. 323 (E.D. Ca. 1992) (holding that the United States was entitled to the protection of California's recreational land use statute based upon the FTCA's analogous private liability provision even though the statute only applied to private landowners and not public entities); *Palmer v. United States*, 945 F.2d 1134 (9th Cir. 1990) (holding that Hawaii's recreational use statute immunized the United States from liability just as it would protect a private person due to the FTCA's analogous private liability requirement); *McClain v. United States*, 445 F. Supp. 770 (D. Oregon 1978) (stating that "a state may not protect private citizens from liability without also protecting the federal government").

provisions, and limitations on recovery coextensively limit the Government's FTCA liability as they would limit a private person's liability under **similar** factual circumstances. *See Owen*, 935 F.2d at 737; *Palmer v. Flaggman*, 93 F.3d 196, 199 (5th Cir. 1996); *Ewell v. United States*, 776 F.2d 246, 249 (10th Cir. 1985) ("[I]mmunities created by state law which are available to private persons will immunize the federal government").

Because the United States is seldom identically situated to private parties, the FTCA's "like circumstances" test must be read to cut both ways. If there is a reasonable analogue, the United States may be held liable under the FTCA for activities that could be considered uniquely governmental in nature; but, in turn, the United States must be afforded the benefit of state immunity statutes and non-liability provisions that the Government has only functionally, rather than literally, complied with.[11]  *See Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1118 (10th Cir. 2004) ("In light of the 'similarly situated' requirement, we . . . have allowed the

---

[11] In judging whether a state immunity or non-liability provision is implicated in the context of an FTCA action, the focus must remain on "like circumstances" because the "FTCA assures the federal government of that treatment afforded private parties." *Starns v. United States*, 923 F.2d 34, 37 (4th Cir. 1991). Even where the exact terms of a state statutory immunity provision have not been met by the Government, "where the United States has satisfied the **objectives of a statutory scheme**, it is to be considered in 'like circumstances' under the FTCA to a private party that has actually complied with the scheme." *See Nationwide Mut. Ins. Co. v. United States*, 3 F.3d 1392, 1396-97 (10th Cir. 1993); *see, e.g., Estate of Boone v. United States*, 591 F. Supp. 2d 800, 802 (D. Md. 2008) (applying Maryland statutory immunity for private fire companies to the United States in the context of an FTCA action even though not all of the statutory requirements were satisfied); *Continental Insurance v. United States*, 335 F. Supp. 2d 532, 543 (D. N.J. 2004) (analogizing the United States to private persons who were not required to carry insurance pursuant to New Jersey law by concluding that the United States had functionally, though not literally, complied with the state insurance requirements); *Nationwide*, 3 F.3d at 1396-97 (holding that functional compliance with statutory requirements placed the United States in "like circumstances" to those literally protected by a Colorado automobile insurance statute); *Starns*, 923 F.2d at 37 (holding that under the FTCA's "like circumstances" provision, Virginia's state law statutory cap on medical malpractice liability applied to a federally operated hospital even though it was not licensed by the state per the statutory cap's requirements); *Haceesa v. United States*, 309 F.3d 722, 725-27 (10th Cir. 2002) (applying a state law statutory cap in the context of an FTCA action even though the United States had not specifically complied with a number of requirements set forth in the statute); *U.S. Fidelity & Guaranty Co. v. United States*, 728 F. Supp. 651, 654 (D. Utah 1989) (finding that the United States was in "like circumstances" to a secured owner or operator of a vehicle under state law despite the fact that the Government had not strictly complied with some of the prerequisites set forth by state law).

11

United States the benefits of certain state-law defenses in FTCA actions, even when the United States did not meet the technical requirements of state law.").  This is especially true where certain prerequisites to raising a state statutory provision cannot be met as a consequence of the inherent differences between the Government and a private person.  *See id.* ("[T]o hold that the United States is not entitled to the protection of [the state law provision] would place it in a differently situated position than private parties . . . thereby undermining the conditions precedent to the United States waiver of sovereign immunity in the FTCA.").  The FTCA's "like circumstances" language only requires that the Government activity at issue be the functional equivalent of the kind of private conduct shielded from state tort liability.  Whether there is analogous private liability is not answered through a rote application of state law text to the facts of a particular case.  Nonetheless, here, the matter is clear.  As explained below, the Government activity at issue squarely satisfies the prerequisites for private person immunity under Alabama law, as set forth through the plain language and obvious meaning of Ala. Code § 31-9-17.

## II.     There Is No Analogous Private Liability For Alabama Plaintiffs' FTCA Claims Because A Private Person In Like Circumstances Would Be Shielded From All Civil Liability Under Alabama Law.

### A.     Ala. Code § 31-9-17 Protects Private Persons Who Provide Free Shelter To Disaster Victims From Civil Liability.

Ala. Code § 31-9-17, entitled "Exemption from tort liability of persons granting license or privilege for use of real estate, etc., for shelters,"[12] provides:

---

[12] As initially enacted, Section 17 was entitled "NO PRIVATE LIABILITY."  It was not until 1975 that the provision was renamed "Exemption from tort liability of persons granting license or privilege for use of real estate, etc., for shelters."  *See* U.S. Ex. 9 (Alabama Civil Defense Act of 1955); U.S. Ex. 10 (Ala. Code § 31-9-17) (1975).  The substantive text of the Section has remained unchanged since its initial promulgation as part of the Alabama Civil Defense Act of 1955.

12

> Any person owning or controlling real estate or other premises who voluntarily and without compensation grants a license or privilege, or otherwise permits the designation or use of the whole or any part or parts of such real estate or premises for the purpose of sheltering persons during an actual disaster or an actual, impending, mock or practice attack, shall, together with his successors in interest, if any, not be civilly liable for negligently causing the death of, or injury to, any person on or about such real estate or premises, or for the loss of, or damage to, the property of such person.

This particular Alabama Code section is part of the Alabama Emergency Management Act ("AEMA"), found at Title 31 (Military Affairs and Civil Defense), Chapter 9 (Emergency Management), Sections 1 through 24.[13]  *See* Ala. Code §§ 31-9-1 through 31-9-24.  Among other functions, the AEMA creates the Alabama Emergency Management Agency, confers emergency powers upon the Governor and various governing bodies, and authorizes the establishment of various local emergency management organizations.  *See* Ala. Code § 31-9-2(a).  One of the Act's primary purposes is to assist and encourage emergency response activities.  *Id.*

As summarized by one court, "[t]here is a marked paucity of caselaw interpreting state emergency management statutes" such as the AEMA.  *See Robin v. United States*, 2006 WL 2038169, at *2 (E.D. La. July 17, 2006) (Lemelle, J.) (discussing a similar Louisiana statute). To date, no case appears to have dealt with the private person immunity provision found at Ala. Code. § 31-9-17.  Nonetheless, the AEMA itself stresses that all of its provisions, including Ala. Code § 31-9-17, are to be "**construed liberally**" in order to effectuate the chapter's purpose.[14]

---

[13] The AEMA was promulgated, in part, "[b]ecause of the existing and increasing possibility of the occurrence of disasters or emergencies of unprecedented size and destructiveness resulting from . . . flood . . . or other natural causes . . ." Ala. Code § 31-9-2(a).  In addition, various types of "emergency welfare services," *see* Ala. Code § 31-9-3(1), fall within the ambit of the Act.  These are defined as "assistance and services to meet human needs of individuals and families resulting from disasters, including, but not limited to . . . lodging . . . locating and reuniting families . . . and all other feasible welfare aid and services to people in need during an emergency."  *See* Alabama Administrative Code (AL ADC) 660-5-81-.01.

[14] Similarly, at least one court has remarked that based upon its "review of emergency preparedness statutes" in various states it has found that courts generally provide protection from suit to the fullest extent

Ala. Code § 31-9-23 (entitled "**Chapter to be liberally construed**") (emphasis added).

The upshot of Ala. Code § 31-9-17 is clear.  It categorically limits the civil liability of private persons who, voluntarily and without compensation, provide premises for shelter in response to a disaster, notwithstanding any duties owed by the owner/operator of the premises to the occupants and whether the owner/operator acted negligently.  *See* Ala. Code § 31-9-17. **Such private persons represent the most reasonable analogue to the United States in this case**.  *See LaBarge*, 798 F.2d at 367.  Alabama Plaintiffs have alleged that the United States provided them with shelter because their residences were "rendered uninhabitable" and because they were left "homeless" as a direct consequence of Hurricane Katrina.  *See* Third AMC ¶¶ 124, 128, 171.  Under the same facts, had a **private person** responded to the disaster by providing shelter premises purchased from a commercial vendor to house the displaced hurricane victims at no cost (as FEMA did in this case), the private owner of the shelters would be immune from any associated claims that his or her acts/omissions (whether related to his initial provision of the shelters or an alleged failure to respond to health and/or safety concerns regarding usage of the shelters) caused the victims to be injured during their occupancy of the shelters.  *See* Ala. Code § 31-9-17.  Therefore, there can be no  analogous liability, and, thus, no FTCA jurisdiction, under the "like circumstances" presented in this case.  *See Hill*, 393 F.3d at 1118.

---

permitted by the state's statute.  *See Robin,* 2006 WL 2038169, at *3 (citations omitted).  This is in keeping with the notion that such statutes reflect fundamental policy choices that have been made by state legislatures (balancing a compelling desire to encourage people to provide assistance against a general policy of allowing people to seek redress through actions in tort).

**B.** **Because Alabama Has Chosen To Immunize Private Persons Who Provide Free Emergency Shelter In Response To A Disaster From All Civil Liability, The Court Lacks Jurisdiction Over Alabama Plaintiffs' FTCA Claims.**

As discussed *supra*, the United States may not be exposed to greater liability than a private person under similar circumstances. *See Woods,* 909 F. Supp. at 439 ("[I]f a similarly situated private individual would not be liable under [state law] then neither is the United States"). In assessing whether Ala. Code. § 31-9-17 would preclude the liability of a private person who, under similar circumstances, committed acts and omissions akin to those alleged to have been committed by the United States in this case, the Court need not look beyond the obvious meaning of Ala. Code. § 31-9-17. Examining the plain language of the provision, a private person would not be liable to Plaintiffs under Alabama law even under the strictest interpretation of "like circumstances." *See Olson*, 546 U.S. at 44; *Standefer v. United States*, 511 F.2d 101, 104 (5th Cir. 1975). As per the **private person** analogue required under the FTCA, the United States, through FEMA, must be considered within the province of Ala. Code. § 31-9-17, because the statute applies to "**any person**." *See* Ala. Code. § 31-9-17. Looking through the lens of analogous private liability, the United States' conduct in this case functionally – if not literally – satisfies the prerequisites for civil immunity under Ala. Code. § 31-9-17. By voluntarily providing Government-owned premises for use by disaster victims (including Plaintiffs), at no cost, in direct connection with the continuing and real disaster conditions created by Hurricane Katrina, the United States, through FEMA, was equivalent to a private person who (1) owns or controls premises, (2) acts voluntarily and without compensation, (3) permits the use of his or her premises, and (4) does so for the purpose of sheltering persons during a disaster. *See* Ala. Code § 31-9-17.

15

### 1.    The Government Was In Like Circumstances With A Private Person Who Owns Or Controls "Real Estate Or Other Premises."

Ala. Code § 31-9-17 abrogates the civil liability of private persons "owning or controlling real estate or other premises."  It is undisputed in this case that the United States, through FEMA, provided its property in the form of emergency housing units to thousands of homeless disaster victims in Alabama (including Plaintiffs) following Hurricane Katrina.  *See* Third AMC ¶¶ 124, 128, 135, 171.  In doing so, FEMA was sheltering disaster victims through the use of Government-owned "premises."  This conclusion is consistent with the broad intent of the AEMA, as well as the nature of the emergency housing units at issue.

Although the AEMA does not specifically define the term "other premises," the term "premises" is defined throughout other Sections of the Alabama Code.  In Ala. Code § 13A-3-20 (a Criminal provision), premises is defined as "including any building, as defined in this section."  Ala. Code § 13A-3-20(5).  The Code goes on to define a building as "[a]ny structure which may be entered and utilized by persons for . . . lodging . . . and includes any vehicle, aircraft, or watercraft used for the lodging of persons . . ."  Ala. Code § 13A-3-20(1); *see* Ala. Code § 13A-7-1; *Chambers v. City of Opelika*, 698 So. 2d 792, 794 (Ala. Cr. App. 1996) (stating that under Ala. Code § 13A-7-1, a mobile home trailer was considered "premises").  Similarly, in Ala. Code § 35-9A-141 (a section of Alabama's Uniform Residential Landlord and Tenant Act), "premises" is explicitly defined as a "dwelling unit."  In the context of Alabama workers' compensation law, the term premises is considered an elastic and inclusive term that can refer to any room, shop, building, or other kind of definite area.  *See Russellville Gas Co. v. Duggar*, 260 So. 2d 393, 394 (Ala. Civ. App. 1971).  As trailers/structures installed as dwelling units and

intended for habitation by disaster victims, the Government-owned emergency housing units provided to and occupied by Plaintiffs meet the "premises" prerequisite of Ala. Code § 33-9-17.[15]

### 2.      The Government Was In Like Circumstances With A Private Person Who Acts "Voluntarily And Without Compensation."

Ala. Code. § 31-9-17 limits the civil liability of private persons who "voluntarily and without compensation" allow their premises to be used as emergency shelter. In this case, it is undisputed that the United States, through FEMA, chose to provide rent-free emergency housing to otherwise homeless disaster victims (including Plaintiffs) in direct response to disaster conditions caused by Hurricane Katrina. This provision of emergency housing was the "like circumstances" equivalent of a private person who "voluntarily and without compensation" provides shelter to victims in response to a disaster. *See id.* The Government chose to provide emergency housing assistance to the victims of Hurricane Katrina for over 44 months, without requesting or receiving any form of compensation in return. *See* U.S. Ex. 6 (FEMA Release); U.S. Ex. 7 (Garratt Deposition Excerpts), at 36:12-13, 37:11-13 ("these units are provided at absolutely no cost to the disaster victims . . . Nothing came out of their pockets in terms of the requirements for this. They paid no out-of-pocket costs for this."). Thus, hurricane victims (including Plaintiffs) were allowed to use the Government's property as emergency shelter without any direct monetary benefit or other form of consideration passing to the Government. This enabled victims to live rent-free while they attempted to recover from the lasting effects of

---

[15] As alleged by Plaintiffs, the Government-owned housing units were "installed" and immobilized through connections to the land and hooked to utilities for "residential purposes" much like a house or other building. Third AMC ¶¶ 157, 159, 160, 296, 301, 308.

Hurricane Katrina.

Examining the kind of like circumstances that would vitiate a private person's "voluntariness," the United States was not contractually obligated or otherwise bound to provide emergency shelter, nor was there any other form of outside agreement that compelled it to act. The Government acted on its own volition and not for profit. It made a conscious choice to allow its property to be used for the sheltering of disaster victims and allowed this use to continue for as long as the victims needed the shelter to cope with the continuing disaster conditions caused by Hurricane Katrina. Under the "like circumstances" test, the most reasonable private analogue to the Government's activity in this case meets the "voluntarily and without compensation" provision of Ala. Code § 31-9-17.

Because the inquiry under the FTCA is one of analogous **private** liability under similar circumstances, internal Government regulations and statutory charges (things that only apply to the Government) should not play any role in assessing whether the Government was in like circumstances with a private person who acts "voluntarily and without compensation." For instance, internal Government rules and regulations cannot translate to a private analogue. (Any comparable action against a private person could not reference governmental duties in an attempt to avoid application of Ala. Code § 31-9-17). Furthermore, even if a private entity had internal rules/policies/charters/bylaws that outlined and discussed its intent to undertake the task of helping disaster victims by providing safe and habitable rent-free shelter whenever the need arises (including how and when they would provide such assistance), the private entity would still be taking **voluntary** action under Ala. Code. § 31-9-17 because no external force compelled it to undertake such a task, adopt such policies, or provide such aid. There simply is no external

18

force that obligates the United States to provide free shelter to disaster victims,[16] and, more importantly, there is no obligation or duty (in the absence of a contract or similar arrangement – which was not present in this case) that requires private persons to undertake such a task.  The Government accepted the task of providing shelter to the Alabama victims of Hurricane Katrina on its own accord.

Even if the inherent differences between the Government and a private person were relevant to this inquiry, the Stafford Act and its related regulations are **permissive** in nature – they do not affirmatively require the provision of assistance.  Nor does the Stafford Act mandate if/when/how FEMA should provide direct housing assistance following disasters.  Instead, FEMA has retained full discretion to authorize the provision of emergency assistance.[17]  *See Ridgley v. FEMA*, 512 F.3d 727, 736-37 (5th Cir. 2008) (in the context of rental assistance, describing the language of the Stafford Act and implementing regulations as permissive: "FEMA **may** provide assistance to individuals and households who qualify for such assistance" (emphasis in *Ridgley*)); Third AMC ¶ 142 (citing the "**may**" language from the Stafford Act); 42

---

[16] Any argument that the United States was required to provide emergency housing to Alabama Plaintiffs in exchange for the collection of taxes is wholly without merit.  Because the inquiry is one of analogous private liability under similar circumstances, the Court must ignore the uniquely governmental nature of the United States' conduct in its attempt to find a reasonable analogue.  Regardless, FEMA's discretionary decision to provide direct housing to disaster victims is far too removed from individual taxpayer returns for such funds to ever be considered "compensation."  *See generally Flast v. Cohen*, 392 U.S. 83 (1968) (addressing taxpayer standing).  "[A] tax is not an assessment of benefits," nor does it constitute consideration in exchange for services.  *See Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 521-23 (1937).  In addition, in the context of a private entity or charity, if a private charity provided emergency shelter to a disaster victim who had previously made contributions to the charity, this alone would never amount to the "compensation" referenced in Ala. Code § 31-9-17.  This provision of shelter would still meet the "voluntarily and without compensation" prerequisite.

[17] Following Hurricane Andrew, plaintiffs in a suit against FEMA argued that FEMA was required to provide emergency housing to all eligible victims.  After examining the Stafford Act, the *Lockett* Court concluded that the Act "clearly shows that assistance is discretionary, not mandatory . . . [t]he word 'may,' when used in a statute, usually implies some degree of discretion."  *Lockett v. FEMA*, 836 F. Supp. 847, 854 (S.D. Fla. 1993).

19

U.S.C. § 5174(c)(1)(B)(I) (FEMA "**may** provide temporary housing units, acquired by purchase or lease, directly to individuals or households" (emphasis added)).[18]  In other words, while FEMA may be permitted by statute to provide emergency housing assistance on the Government's behalf, a disaster victim does not have an automatic right to receive this assistance from FEMA.[19]  This is true even when shelters are being offered to other victims who meet certain criteria.  *See Ridgley*, 512 F.3d at 736 ("[T]he regulations nowhere provide that an individual has a right to receive assistance . . . [t]here is simply no indication that the regulations constrain FEMA's discretion . . . no 'specific directives' limit FEMA's discretion by compelling it to provide assistance . . .").  There is no obligation or mandate to provide shelter, thus, any such provision by the United States, through FEMA, must be considered voluntary.

> **3.**      **The Government Was In Like Circumstances With A Private Person Who "Permits The . . . Use Of . . . Such . . . Premises."**

Ala. Code § 31-9-17 immunizes all private persons who, as owners/controllers of real estate or other premises, do any **one** of the following three things: (1) grant "a license or privilege"; (2) permit "the designation"; or (3) **permit the "use of the whole or any part or**

---

[18] *See also Johnson v. FEMA*, 2009 WL 1208639, at *1 (E.D. La. 2009, May 1, 2009) (Feldman, J.) (concluding "[b]ecause of its **institutional discretion**, FEMA's emergency housing assistance does not create an entitlement in the plaintiff to a property interest in that assistance") (emphasis added).

[19] As this Court has explained, " . . . it should be noted that the Fifth Circuit recently held that the Stafford Act, and its accompanying regulations governing the Individual Assistance housing program, even for persons who qualify for housing assistance, does not, in and of itself, create an entitlement to housing assistance."  Order and Reasons, December 29, 2008 (Rec. Doc. 1014) (citing *Ridgley*).  Thus, based upon the Stafford Act and its implementing regulations, FEMA has unfettered discretion in deciding whether to provide emergency housing shelter, thus, making any decision to provide such housing a voluntary decision.  This Court has also previously identified the permissive, rather than mandatory, nature of the Stafford Act and its housing provisions in its October 3, 2008, Order and Reasons regarding application of the FTCA's discretionary function exception.  *See* Order and Reasons, October 3, 2008 (Rec. Doc. 717), at 18; *see also Ridgley*, 512 F.3d at 736 (describing how mandatory language is wholly absent from the regulations that allow FEMA to provide assistance).

**parts of such real estate or premises**" (emphasis added).  *See* Ala. Code § 31-9-17.  It is

undisputed in this case that the United States, through FEMA, allowed thousands of homeless

disaster victims (including Plaintiffs) to **use** Government-owned emergency housing units (the

"premises") in direct response to the disaster conditions caused by Hurricane Katrina.  *See* Third

AMC ¶ 150; *see also id.* ¶¶ 124, 135 (Alabama Plaintiffs "resid[ed] or liv[ed]" in EHUs provided

to them by the Government after Hurricane Katrina).  It is Plaintiffs' very usage (occupancy) of

these shelters that they now allege caused certain injuries.  *See id.* ¶¶ 179, 207, 353.

> **4.    The Government Was In Like Circumstances With A Private Person Who Acts "For The Purpose Of Sheltering Persons During An Actual Disaster."**

Under Ala. Code § 31-9-17, immunity from civil liability attaches where a private

person's property is used "for the purpose of sheltering persons during an actual disaster."  *See*

Ala. Code § 31-9-17 (the statute uses the term "actual disaster" to distinguish it from an

"impending, mock or practice" event).  In this case, Plaintiffs plainly allege that they were

allowed to use Government-owned shelters in the context of what they describe as "the greatest

natural disaster in the history of the United States."  Third AMC ¶¶ 128, 171.  Plaintiffs'

occupancy of these housing units is inextricably linked with the continuing and actual disaster

conditions created by an event, specifically, Hurricane Katrina.  As they have pleaded, Plaintiffs

were provided the Government-owned shelters for the very reason that "[t]he residence of each

Named Plaintiff was rendered uninhabitable following Hurricanes Katrina and/or Rita" and each

Plaintiff was left "homeless."  *Id.* ¶¶ 128, 171.  Disaster victims (including Plaintiffs) were only

allowed to continue living in these rent-free shelters for as long as they had nowhere else to go

(until they were able to initially recover and emerge from the continuing disaster conditions

wrought by Hurricane Katrina and find some form of alternative housing).  *See* U.S. 5

(Emergency Shelter – Agreement to Rules of Occupancy) ("FEMA is providing this unit as a

temporary shelter . . . and I [the disaster victim] am not able to live in my residence due to this

event [Hurricane Katrina]).  As agreed upon through the Emergency Shelter Agreement, the

units were being specifically provided because a "major disaster" had been declared in the area

and, as soon as the occupant was able to recover from the storm enough to find other available

housing options, he or she was required to accept the other options and relocate. *Id*. ¶ 4.  By the

very nature of the units, each person who continued to live in these Government-owned shelters

did so in direct response to the continuing disaster conditions that were inextricably linked to

Hurricane Katrina.

        Although the AEMA does not define the term "disaster," the term should be liberally

construed per the Act's own express requirement.  *See* Ala. Code § 31-9-23 (entitled "**Chapter**

**to be liberally construed**") (emphasis added).  A broad interpretation of the term is in keeping

with the Act's intent to respond to and recover from natural disasters and other events.  While a

storm may pass or an earthquake may strike in a matter of minutes, the actual disaster (the result)

created by such events can continue for days, months, and, in the case of Hurricane Katrina,

years.  The key is whether there is a true causal connection between the initial event and the

conditions at issue.  Here, Plaintiffs were provided shelter in direct response to the actual and

protracted disaster conditions (particularly, the disastrous potential for widespread

homelessness) created by Hurricane Katrina.

        In the months and years since the landfall of Hurricane Katrina, FEMA has provided free

shelter to disaster victims as long as it has been considered essential to meet the immediate

22

threats to life and property resulting from the aftereffects of the storm.  Even after the initial

event passed, the **disaster** (including the exigent threats of mass-homelessness, displacement,

and lack of shelter) persisted for years.  Although Ala. Code. § 31-9-17 does not impose a

requirement that a formal declaration be issued by a governmental body or agency for an "actual

disaster" to exist for purposes of the provision, the Governor of Alabama did declare an official

state of emergency in Alabama due to the devastation inflicted on the state by Hurricane

Katrina.[20]  U.S. Ex. 1 (Riley Press Release, August 28, 2005); U.S. Ex. 4 (Proclamation by the

Governor of Alabama) (discussing "the complete devastation of areas within . . . Alabama").  In

addition, the President declared a major disaster for the state of Alabama (Disaster Number

1605) based upon the extensive and lasting damage caused by Hurricane Katrina.  U.S. Ex. 2

(Riley Press Release, August 29, 2005); U.S. Ex. 8 (Fed. Reg. Notice).  To this day, FEMA

considers Hurricane Katrina to still be an "active" major disaster in the state of Alabama.  U.S.

Ex. 3 (FEMA: Alabama State Disaster History).

## CONCLUSION

The undisputed facts and Plaintiffs' own allegations show that the United States was, at a

minimum, acting in "like circumstances" to a private person who:

(1)     owns or controls "real estate or other premises";
(2)     acts "voluntarily and without compensation";

---

[20] In contrast, other provisions of the AEMA explicitly state that their provisions only apply if a formal state of emergency has been declared.  For example, Ala. Code § 31-9-8(a) provides, "The provisions of this section shall be operative only during the existence of a state of emergency, referred to hereinafter as one of the state of emergency defined in Section 31-9-3."  The "disaster" requirement presented in Ala. Code § 31-9-17 does not mention the term "emergency" and does not contain any restrictive language.  Instead, it is similar to the immunity provision for state government personnel found at Ala. Code § 31-9-16, which shields all state emergency management functions from liability, but is not limited to declared emergencies.  *See* Ala. Op. Att. Gen. No. 2006-010, 2005 WL 2996722, *2 (October 25, 2005).

      (3)     "permits the . . . use of . . . such real estate or premises"; and

      (4)     does so "for the purpose of sheltering persons during an actual disaster."

Thus, the United States must be afforded the same protection as a private person under Alabama law given these similar circumstances. Whether the Alabama Plaintiffs choose to cast their claims against the United States as an alleged failure to warn, a failure to mitigate, a failure to respond appropriately, or even a failure to remove and relocate, all of their allegations converge on a singular factual nexus – their alleged injury from the usage and occupancy of Government-owned emergency shelter. The absolute bar to civil liability contained within Ala. Code § 31-9-17 does not discriminate between different types of claims, but rather, states that an owner or controller of premises used as disaster shelter "shall . . . not be civilly liable for negligently causing the death of, or injury to, any person on or about such real estate or premises."[21] Ala. Code § 31-9-17. It is the means of injury (whether the occupant was injured as a result of the emergency shelter), not the theory of liability, that triggers immunity under Ala. Code § 31-9-17. As set forth above, the United States provided its property to Plaintiffs as rent-free shelters during disaster conditions. Thus it was acting in "like circumstances" to a private person who would be shielded from all civil liability under Alabama law. As a result, all of Alabama Plaintiffs' remaining FTCA claims against the United States must be dismissed for lack of subject-matter jurisdiction, pursuant to 28 U.S.C. §§ 1346(b) and 2674.

---

[21] The broad extent of Ala. Code § 31-9-17 civil immunity is illustrated both by its "shall . . . not be civilly liable" language and the absence of further qualifying language. Although the provision mentions the term "negligence," this should not be read as a limitation, but rather a clarification that the immunity referred to is immunity from civil liability in tort. Had Alabama sought to limit the private person immunity granted under Ala. Code § 31-9-17 to simple negligence, it would have stated that the immunity provision applies "except in cases of willful misconduct, gross negligence or bad faith." In fact, the preceding Section of the AEMA, Ala. Code § 31-9-16 contains this very language as an explicit limitation on state governmental immunity. Ala. Code § 31-9-17 contains no such qualification, thus, it should be considered to provide full immunity from civil liability in tort.

Dated:  January 24, 2010                    Respectfully Submitted,

TONY WEST                                   HENRY T. MILLER
Assistant Attorney General, Civil Division  ADAM BAIN
                                            Senior Trial Counsel
J. PATRICK GLYNN
Director, Civil Division, Torts Branch      MICHELLE BOYLE
                                            MICHELE GREIF
DAVID S. FISHBACK                           JONATHAN WALDRON
Assistant Director                          Trial Attorneys

OF COUNSEL:                                 _s/ Adam M. Dinnell_____
                                            ADAM M. DINNELL (TX No. 24055405)
JORDAN FRIED                                Trial Attorney
JANICE WILLIAMS-JONES                       United States Department of Justice
FEMA/DHS                                    Civil Division, Torts Branch
                                            P.O. Box 340, Ben Franklin Station
                                            Washington, DC 20004
                                            Telephone:  (202) 616-4211
                                            Email: Adam.Dinnell@usdoj.gov

                                            Attorneys for Defendant United States


## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2010, the foregoing document was filed via the U.S.

District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison

Counsel.

                              _s/ Adam M. Dinnell_____
                              ADAM M. DINNELL (TX No. 24055405)

25