UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | SECTION: N(5) |
| LITIGATION | * | |
| | * | JUDGE: ENGELHARDT |
| This Document Relates to:  September 2010 | * | |
| Trial against Gulf Stream Coach, Inc. | * | MAG: CHASEZ |

*************************************************************************

### REPLY TO PLAINTIFFS STEERING COMMITTEE'S OBJECTIONS TO GULF STREAM'S SECOND BELLWETHER TRIAL NOMINEES

**MAY IT PLEASE THE COURT:**

The sixth bellwether trial in the FEMA Trailer Formaldehyde litigation is currently scheduled to begin on September 13, 2010. In preparation for the trial, one of the defendants in the case, Gulf Stream Coach, Inc. ("Gulf Stream"), submitted on or about November 30, 2009, a list of 20 plaintiffs who Gulf Stream proposed could serve as the bellwether plaintiff in this upcoming trial. The current bellwether-selection procedure is the mirror-image of the procedure ultimately used in the *Alexander* trial, when Gulf Stream selected several candidates from a list produced by plaintiffs.  However, the Plaintiffs' Steering Committee ("PSC") chose not to select a bellwether plaintiff from Gulf Stream's list, instead objecting to all 20 plaintiffs proposed by Gulf Stream. In response to those objections, Gulf Stream submits that the PSC's objections are unpersuasive. Gulf Stream further avers that the plaintiffs can find at least one plaintiff on the list that will serve as a fair representative for the plaintiffs and produce a meaningful and instructive result at trial.

At the outset, it is important to note that the PSC's selection is not an exercise in vetting the 20 plaintiffs on the list. The PSC only has to select <u>one</u> individual who can serve as the bellwether plaintiff. If just one can act as a proper bellwether plaintiff, then the plaintiffs should

1

select that individual even if the PSC finds the other 19 candidates objectionable. The parties are not trying 20 cases with these 20 plaintiffs – they are trying one case, and they require just one plaintiff to participate. Gulf Stream believes that of the 20 plaintiffs listed, surely at least one can be selected who is fit to act as a proper bellwether plaintiff in this case.  Presumably, the very purpose of submitting a list of twenty candidates was so that a pool of viable candidates would remain should some of the candidates be unsuitable to serve as a bellwether plaintiff.[1]

Additionally, Gulf Stream believes that the PSC's stated reasons for rejecting all 20 are unpersuasive. Gulf Stream will examine each objection in turn:

**Objection 1: Form 95 Timing Issues**

The PSC has stated that several of the 20 plaintiffs cannot act as proper bellwether plaintiffs because their claims against co-defendant United States of America ("USA") may be prescribed, and the bellwether trial will not produce a meaningful result without the involvement of the USA.  According to the PSC, these nine plaintiffs filed their administrative claims under the Federal Tort Claims Act ("FTCA") more than two years after they first reported symptoms that they relate to formaldehyde exposure. Thus, according to this Honorable Court's prior ruling in Bellwether Trial I, the PSC argues that these claims may be prescribed vis-à-vis the USA. Without "ripe" claims against the USA, as the PSC has put it, the result of the trial would not be instructive.

This argument is nonsensical. Though the USA may assert the prescription defense in this case, that defense has nothing to do with whether the claim is FEMA-ripe. The relevant questions are simply (i) whether the plaintiff filed a Standard Form 95 (which initiates the administrative claim against the government under the FTCA) more than six months ago, or (ii)

---

[1]     In their objection, the PSC has represented that 13,500 plaintiffs had sued Gulf Stream as of November 1, 2009.  While that may be true, less than one third have submitted fact sheets and many of those were incomplete.

whether the plaintiff has already sued the USA. All of the names on Gulf Stream's list qualify because each has either sued the USA or filed a Standard Form 95 over six months ago.

Nevertheless, the PSC seems to assert that the existence of a valid defense is enough to eliminate a plaintiff from involvement in a bellwether trial. This Court has never required that a potential bellwether plaintiff have claims that could survive all jurisdictional defenses. In fact, that would be an impossible hurdle to jump because it would require the Court to predetermine each plaintiff's claims in light of each defendant's defenses. Such jurisdictional issues must be litigated by the parties and ruled upon by this Court – to eliminate the plaintiffs now because of possible defenses is to put the cart before the horse. The potential for the USA to assert a prescription defense is not a proper basis for an objection to a bellwether candidate. FEMA's prescription defense does not preclude FEMA from appearing on the jury verdict form. Thus, any finding against FEMA on a prescribed claim can still be instructive.  Interestingly, the Court instructed the PSC to nominate 25 trial candidates by January 22, 2010.  Seven of their trial candidates have the same "Form 95 timing issue" as nine of the candidates proposed by Gulf Stream.[2]

### Objection 2: Inability To Locate Certain Plaintiffs

The PSC has claimed an inability to locate two plaintiffs, Wilfred Mackey, and his wife, Marilyn Mackey. Accordingly, the PSC claims that neither can act as the bellwether plaintiff for the upcoming trial. However, a brief search of various Internet resources reveals apparent contact information for at least one of the plaintiffs. One resource contained information for an

---

[2]     Plaintiffs objected to Mary Ashford, Warren A. Bellazar, Anthony Camp, Dorothy M. Gibson, Ulysses R. Gibson, Robin Lewis, Corey Oatis, Daniel R. Porter and Romaine M. Riley on the basis of the "Form 95 timing issue."  On Doc. No. 10654, Plaintiffs nominated the following people, Troy Esteen, William Pollard, Brenda Pollard, Eddie King, Jr., Gerry McKey o/b/o Halle McKey, Cynthia Davis, Salvatricia Ragusa, with the same "Form 95 timing issues."

individual named Wilfred Mackey with the same date of birth and address as the plaintiff.[3] This printout provides two potential telephone numbers, one of which was "last seen" in December 2009.   While there was no information listed for Marilyn Mackey, Mr. Mackey could undoubtedly reveal the whereabouts of his wife.

Of course, Gulf Stream did not call or write to Mr. Mackey to confirm that he is the same person who has filed a claim for formaldehyde exposure, nor is Gulf Stream suggesting that the PSC has purposely avoided contacting him. However, it does appear that the Mackeys may still be living in the New Orleans area and may be fairly easy to contact. The PSC should make every effort to confirm whether this individual is the plaintiff in question, especially because the PSC did not object to either plaintiff's ability to serve as a bellwether on any other basis. Thus, if the PSC can locate the Mackeys, then the PSC should be able to select either or both to serve as bellwether plaintiffs in this case.  Indeed, Mr. Mackey is forty-eight years old, never smoked, does not appear to have a "Form 95" timing issue, and his unit was tested at .100 ppm by Bureau Veritas North America ("BVNA").

**Objection 3: Individuals Unable To Undergo Trial**

The PSC also identified three plaintiffs from the list – Charles Age, Ruth Carter, and Willie Ashford – whom the PSC believes are physically and/or mentally unable to withstand the rigors of trial. First, the PSC provides no medical information whatsoever to show that these plaintiffs have a disability that would prevent them from participating in trial. This information is a necessary prerequisite to the objection because Gulf Stream has a valid interest in trying the claims of one of these elderly plaintiffs. Since the inception of this litigation, the PSC has argued that the elderly are affected more severely by formaldehyde than adults who are young or middle-aged. In order to get an instructive verdict on that issue, Gulf Stream included elderly

---

[3]        See Contact Information printout for Wilfred A. Mackey, attached as Exhibit "A."

plaintiffs on its list. Thus, the PSC should provide actual information that these individuals cannot undergo trial. To object without providing supporting documentation is unreasonable and unfair in light of Gulf Stream's inclusion of the elderly plaintiffs for a specific purpose.

Second, as to the claims of Wayne Landry, the PSC has objected on the basis that Mr. Landry is unwilling to participate in a bellwether trial. This Court has already ruled that if a plaintiff is unwilling to participate in a bellwether trial, that plaintiff's claims will be dismissed with prejudice. If Mr. Landry has no desire to act as a bellwether plaintiff, Gulf Stream asks this Court to dismiss his claims with prejudice.

Finally, Gulf Stream understands that some individuals may have certain limitations that would make the trial experience difficult. However, these plaintiffs filed suit just like tens of thousands of other individuals. They undoubtedly knew that our advocacy system uses a trial method for the adjudication of claims, so they had to know that at some point, trial was a possibility. Indeed, short of settlement or voluntary dismissal, trial is these plaintiffs' only chance to obtain compensation for their alleged injuries. If the PSC is unwilling to nominate a plaintiff simply because of his age, then those claims should be dismissed.

## Objection 4: Some Plaintiffs Have Dismissed Their Claims

The PSC has stated that three plaintiffs – Loleita Ordon, Bobbie Tolbert, and Stella Washington – cannot act as bellwether plaintiffs because they have dismissed their claims for formaldehyde exposure. Importantly, these dismissals were done <u>after</u> Gulf Stream submitted its list of 20 potential bellwether plaintiffs.  Again, presumably a list of twenty candidates was ordered by the Court to account for this very event.  Only one qualified candidate from the list is necessary for trial.  However, to the extent that the Court orders substitute candidates for the three who dismissed their claims, Gulf Stream submits that it should offer the substitutes.

**Objection 5: Representative Levels**

Finally, the PSC has argued that a number of the plaintiffs included on Gulf Stream's list cannot serve as bellwether plaintiffs because the formaldehyde levels measured in those plaintiffs' trailers are too low. The PSC asserts that the levels are so low that a trial of that plaintiff's alleged injuries would not produce a meaningful result. Instead, the PSC suggests trying a case of a plaintiff whose formaldehyde exposure was at the median of all formaldehyde exposure levels in all THUs.

Where the median lies, however, is in dispute. The PSC has argued, based on the formaldehyde levels computed from an assortment of sources, including their expert Mary Devany who arguably manipulated the results with her testing protocol, the median formaldehyde concentration is 160 parts per billion ("ppb"). However, this was not the median ascertained by ("BVNA"), a contractor of the Federal Emergency Management Agency that tested thousands of trailers following Katrina. As of May 2009, BVNA had tested 4,086 Temporary Housing Units ("THUs"). It found the median to be just 47 ppb.[4] Of the over 4,000 units tested, BVNA found that 80 percent of the units had a level of 99 ppb or lower. The bellwether trials are to find instructive results for all of the units, not just Gulf Stream's.

Nevertheless, when BVNA's numbers were adjusted to account for Gulf Stream units only, the median BVNA ascertained was 100 ppb, not .160 ppb.[5] Thus, if the Court believes the parties should try a case that reflects the true median, then they should try one with a 100 ppb test result. In fact, if the Court is inclined to get a result from this trial that is instructive for all cases (not just Gulf Stream's), then it should consider using the BVNA median for all units – 47 ppb.

---

[4]      See BVNA data stream attached as Exhibit "B."

[5]      See BVNA "GSCI" data stream attached as Exhibit "C."

Furthermore, the PSC's criticism that the BVNA numbers are low is unfounded and misleading. The PSC quotes the Director of the Center for Disease Control, who stated that the CDC test results were low, to support its argument. However, the CDC results represented only a fraction of BVNA's overall testing sample (the 519 tested in January/February 2008). BVNA tested <u>approximately 3,500 additional units</u> and did not limit its testing to the winter months. The PSC cannot transfer the alleged factor in the CDC numbers to the larger BVNA sample. And ironically, though the PSC critiques the BVNA numbers as too low, it is actually the PSC's numbers that are too high. The PSC's expert, Mary Devany, used a "seal up units with internal temperatures into the 130 degrees Fahrenheit range and test" protocol during the warmest months of the year to acquire her results in this case. By relying on those numbers to support their identification of the median, the PSC has presented artificially high numbers while at the same time falsely arguing that the BVNA numbers are low. The PSC is wrong on both counts.

Also, the PSC's counter-suggestion of 25 plaintiffs who could serve as bellwether plaintiffs belies its entire argument about levels.[6] The PSC has argued that the parties should choose someone with results close to the median, which the PSC argues is 160 ppb. Yet, in its Nominees for Second Gulf Stream Bellwether Trial, the PSC includes nine plaintiffs with results at about half that level.[7] This clearly shows that the PSC is not objecting based on the levels, but rather based on its preference for specific people.

An examination of Gulf Stream's twenty candidates establishes that the tested levels in the units are much higher than the PSC's objections might suggest to the Court.  Five of the

---

[6]      The PSC incorrectly reported that the Porter and Riley units were not tested.  Those units tested at .120 ppm and .018 ppm, respectively.  See Exhibit "D."

[7]      See PSC nominees, Doc. No. 10654, attached as Exhibit "E."  The nominees with results around .08 include Albert Jr., Mary and Alneisha Polite; Twana Batiste o/b/o Tre Deggs, Troy Deggs and Trenton Grow; Deborah harris; Beverly Batiste and Eddie King.

twenty candidates' respective units tested at or above 100 ppb.[8]  This constitutes twenty-five percent (25%) of the overall candidate pool, and almost thirty percent (30%) of the remaining seventeen candidates.  More striking, forty percent (40%) of the overall candidate pool had test results that were at least 91 ppb.[9]  This group comprises forty-seven percent (47%) of the remaining seventeen candidates.

Finally, the plaintiffs' argument raises a very important and interesting issue.  For some time, this Court and the parties have considered a *Lone Pine* order in this case. The fact that the plaintiffs are seemingly unwilling to try: 1) an elderly plaintiff, or 2) a plaintiff whose test result is below 100 ppb, crystallizes the need for an order that dismisses such claims. First, if "elderly" plaintiffs are physically or mentally unable to prosecute their claims (as has been repeatedly argued during bellwether candidate selection for several trial settings), a means of vetting these claims is necessary.  Second, if the parties cannot get a meaningful or instructive result from plaintiffs who were exposed at these "low" levels, then the level should serve as the cutoff point for viable claims in the litigation. That the PSC would select 100 ppb as a cutoff is curious considering that BVNA shows that <u>80 percent</u> of claimants were exposed at levels at or below 99 ppb. But if the PSC voluntarily admits that individuals below the median do not have viable claims, then those plaintiffs whose results are below the median should be dismissed from this litigation. Regardless, to the extent the Court believes the selection of a bellwether plaintiff

---

[8]     Wayne Landry (120 ppb); Daniel Porter (120 ppb); Charlie Age (110 ppb); Marilyn Mackey (100 ppb); and Wilford Mackey (100 ppb).

[9]     Dorothy Gibson (92 ppb); Ulysses Gibson (92 ppb); and Warren Bellazar (91 ppb).

should come from a plaintiff whose test result is at the median, the Court should use the 47 ppb

or the 100 ppb numbers identified by BVNA, not the litigation-driven results obtained by the

plaintiffs' experts.

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**


s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
(504) 837-3119 (FAX)
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON
Timothy D. Scandurro #18424
Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
(504) 529-6199 (FAX)
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

9

## **C E R T I F I C A T E**

I hereby certify that on the 25th day of January, 2010, a copy of the foregoing Reply to Plaintiffs Steering Committee's Objections to Gulf Stream's Second Bellwether Trial Nominees, was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

s/Andrew D. Weinstock

_____

ANDREW D. WEINSTOCK #18495
andreww@duplass.com