# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCT LIABILITY | * | SECTION "N-5" |
| LITIGATION | * | |
| | * | JUDGE ENGELHARDT |
| | * | |
| THIS DOCUMENT RELATES TO | * | MAG. JUDGE CHASEZ |
| *EARLINE CASTANEL, ET AL* | * | |
| *v.  RECREATION BY DESIGN, LLC* | * | |
| *ET AL*, DOCKET NO. 09-3251 | * | |

**************************************************************************

## REPLY MEMORANDUM IN SUPPORT OF RECREATION BY DESIGN, LLC'S MOTION FOR SUMMARY JUDGMENT REGARDING PRESCRIPTION

**MAY IT PLEASE THE COURT:**

Defendant Recreation by Design, LLC ("RBD") submits this Reply Memorandum in Further Support of its Motion for Summary Judgment Regarding Prescription in order to respond to Plaintiff's Opposition Memorandum (Rec. Doc. 10350) as follows:

### I.    Factual History

Plaintiff's Opposition primarily argues RBD does not prove that Ms. Castanel related her alleged injuries to living in the unit in the Spring of 2006.  However, the evidence shows that within five to six weeks of moving into her unit, Ms. Castanel started having symptoms that she thought were from the trailer.[1]  RBD highlights this evidence in items number 5, 6, 7, and 8 of its Statement of Facts regarding relevant portions of Ms. Castanel's deposition testimony.[2]

---

[1]  *See* Exhibit "B" to RBD's Motion for Summary Judgment (Rec. Doc. 9722-3), Deposition of Earline Castanel, pp. 68-70 and pp. 111-112.

[2]  *See* Statement of Uncontested Material Facts to RBD's Motion for Summary Judgment (Rec. Doc. 9722-2, p. 2).

Despite Plaintiff's arguments in her brief, the deposition testimony and PFS reveal that Ms. Castanel knew about her symptoms and associated them with the unit shortly after she first began to occupy the trailer.[3] As such, there are no genuine issues of material fact regarding Ms. Castanel's date of knowledge and RBD's Motion should be granted.

## II.    Argument and Authorities

## A.    RBD Established a Starting Date for Prescription As a Matter of Law

It is undisputed that a cause of action based on negligence is a delictual action subject to a one year prescriptive period commencing on the "day the injury or damage is sustained."[4] Likewise, claims brought under the Louisiana Products Liability Act ("LPLA") are also subject to a one year prescriptive period.[5] Prescription generally begins to run "when plaintiff has actual or constructive notice of the alleged tortious act."[6] To state this another way, prescription begins to run when it can be objectively determined that the exercise of reasonable diligence would have alerted a reasonably minded plaintiff of the reasonable possibility that it was a victim of the tortious conduct.[7]

In Plaintiff's Opposition Memorandum, Ms. Castanel erroneously contends that RBD failed

---

[3] Similarly, the Court's ruling on Defendant United States of America's Motion to Dismiss Plaintiff Earline Castanel's FTCA Claims for Lack of Subject Matter Jurisdiction analyzes this same time line to find that Ms. Castanel first associated her symptoms to conditions in the EHU within five to six weeks after moving in (i.e., by late April 2006, early May 2006, at the latest). *See* Order and Reasons (Rec. Doc. 10626, pp. 5-7).

[4] La. Civ. Code Art. 3492.

[5] *See* Plaintiff's Opposition Memorandum (Rec. Doc. 1053, p. 3); *see also Denoux v. Vessel Management Services, Inc.,* 2007-0163 (La.App. 4th Cir. 7/11/07), 964 So.2d 1081; *see also Bultman v. Danek Medical, Inc.,* 1999 WL 33537321 (E.D. La. 1999).

[6] *Mistich v. Cordis Manufacturing Co.,* 607 So.2d 955, 956 (La. App. 4th Cir. 1992).

[7] *Griffen v. Minbergeri,* 507 So.2d 821, 823 (La. 1987).

to prove the date on which prescription for her claims commenced.  Specifically, Plaintiff argues that her First Supplemental and Amended Complaint does not reveal prescription on its face because it only contains two dates: (1) February 2006, the date Ms. Castanel began living in the trailer, and (2) March 2007, the date she stopped living in the trailer.[8]  Plaintiff concludes that prescription is not apparent from the face of the petition because neither of the aforementioned time periods "can be construed as the date Ms. Castanel acquired either actual or constructive knowledge of RBD's tortious acts."[9]  However, Plaintiff's ***very next sentence*** reiterates RBD's conservative estimate[10] of Ms. Castanel's date of knowledge based on her deposition testimony as April 30, 2006.[11]  Accordingly, Ms. Castanel's claims prescribed on the face of the petition within one year of April 30, 2006, as she did not individually file her own suit until April 8, 2009–nearly 3 years later–thus placing the burden of proof on Ms. Castanel to demonstrate that her claims have not prescribed.

As set forth in RBD's Motion, Ms. Castanel testified under oath that she began to experience symptoms that she associates with formaldehyde exposure shortly after moving into her trailer.[12]  Within four to five weeks of moving into the trailer, Ms. Castanel began to experience breathing and

---

[8] *See* Plaintiff's Opposition Memorandum (Rec. Doc. 1035, p. 3).

[9] *Id*.

[10] RBD submits that evidence exists that Ms. Castanel had knowledge of her alleged injury as early as the end of March 2006.  For purposes of this motion, however, RBD will use the end of April 2006 based on the unit acceptance form showing that Ms. Castanel signed for the unit on March 11, 2006.  RBD reserves its right to raise prescription again at a later date if additional evidence clarifies that Ms. Castanel had knowledge before April 30, 2006 which could impact the legal analysis regarding prescription.

[11] *See* Plaintiff's Opposition Memorandum (Rec. Doc. 1035, p. 3).

[12] *See* Exhibit "B" to RBD's Motion for Summary Judgment (Rec. Doc. 9722-3), Deposition of Earline Castanel, pp. 41-42 and 68-70.

sinus problems:

> A:   Well, when I was in the trailer, after I was in there for awhile, not too long, then I started having my nose stopped up.  I would get so stopped up like I had to go to the door to see if I could catch some air, I couldn't like hardly breathe.

> Q:   So you had breathing problems?

> A:   Yes.  My sinus.  When I get like that I couldn't, I don't know, I keep going like that (demonstrating), trying to catch my breath because I couldn't breathe through my nose.

> Q:   And this happened soon after you moved into the trailer?

> A:   It was like five weeks or so after I got in there, four or five weeks it started getting like that.[13]

According to Ms. Castanel, within five to six weeks of moving into the trailer "everything got worse,"[14] her eyes became puffy and itchy, and she suffered headaches that hurt far worse than a regular headache.[15]  Three months after moving into the trailer she claims to have begun to suffer dry itchy skin, nausea, abdominal pain, and diarrhea.  Ms. Castanel testified that before moving into the trailer, she was not ill:

> Q:   Just to make it clear, within five to six weeks of moving in you started suffering these symptoms, sinus problems, itching, dry itching skin, generall not feeling good; is that right?

> A:   Yes.

> Q:   Prior to moving into the trailer you weren't experiencing those symptoms or those problems?

---

[13] *Id.*

[14] *Id.* at 36-38; 41-42.

[15] *Id.* at 68-69.

4

A:    No.

Q:    You didn't have those problems before?

A:    No.  I had–I used to have my nose stop up a little bit but nothing like I had it in there.

Q:    It was different and it was much worse?

A:    Yes, it was much worse.[16]

Most tellingly, Ms. Castanel attributed the above-referenced injuries to living in the trailer:

Q:    And did these problems go away after you moved back into your house?

A:    I might have a–well, I'll say yes, because I don't have that anymore.

Q:    So these were problems that you had because you attributed because of the trailer?

A:    Yeah.

***

Q:    And after you were in there a while you thought the trailer was making you sick?

A:    There was nothing else I could see be making me sick, there was nothing else. Like I said, I don't drink, I don't smoke, and I don't run the streets, so I don't see nothing else could make me sick.[17]

Plaintiff's deposition testimony confirms that she was acutely aware of her symptoms and specifically associated them with her trailer shortly after she moved in.[18] Although Plaintiff cites one

---

[16]  *See* Exhibit "B" to RBD's Motion for Summary Judgment (Rec. Doc. 9722-3), Deposition of Earline Castanel, pp. 68-69.

[17]  *Id*. at pp.70 and 111-112.

[18]  This Court agrees, and ruled that Ms. Castanel first associated her symptoms to conditions in the EHU within five to six weeks after moving in.  *See* Order and Reasons (Rec.

phrase in her testimony that she did not know what was causing her symptoms, her later deposition

testimony clarifies that she related her illnesses to the trailer.  Thus, the burden is on Ms. Castanel

to prove that her claims have not prescribed, which she has failed to do.

**B.     Prescription Has Run Out Under *American Pipe***

Plaintiff's only opposition to RBD's argument that Ms. Castanel's claims have prescribed

under *American Pipe*[19] is her contention that RBD did not prove the date on which prescription

commenced.[20]   As explained *supra*, however, RBD has established that Ms. Castanel's date of

knowledge was no later than April 30, 2006.  Therefore, assuming that the filing of the Amended

*McGuire* Complaint would have suspended her claim, Ms. Castanel would have had twenty-one (21)

days following class denial to file her own individual suit.  Plaintiff did not file within this time

frame, since class certification was denied on December 29, 2008 and Ms. Castanel did not file her

individual Complaint until over (3) three months later on April 8, 2009.  Accordingly, any suspended

period that would have applied to Ms. Castanel expired and her claims are time barred.[21]

**C.     Relation Back Doctrine Does Not Apply**

Plaintiff also seeks to avoid the consequences of her late filing by invoking the "relation

back" doctrine outlined in Article 2324 of the Louisiana Civil Code, which provides that interruption

Doc. 10626, pp. 5-7).

[19]   *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).

[20]   *See* Plaintiff's Opposition Memorandum (Rec. Doc. 10350, p. 6).

[21]   Similarly, even using the early May 2006 date of knowledge referenced by the Court in its ruling on Defendant United States of America's Motion to Dismiss Plaintiff Earline Castanel's FTCA Claims for Lack of Subject Matter Jurisdiction, Ms. Castanel still did not timely file her claim.  *See* Order and Reasons (Rec. Doc. 10626, pp. 5-7).

of prescription as to one joint tortfeasor is effective against all joint tortfeasors.[22]  Specifically, Plaintiff notes that "this Court has already ruled in the *Wright* case that the *Hilliard* complaint pled a defendant class, which is susceptible to *American Pipe* tolling."[23]  Unlike the *Wright* case, however, RBD is not a member of the defendant class as defined in *Hilliard* because it is not a vendor who sold trailers to FEMA.  Plaintiff's only argument addressing this key distinction is that RBD did not provide sufficient summary judgment evidence proving that it is not a vendor.[24]  Plaintiff cites to *Malacara v. Garber*[25] for the proposition that RBD has the burden of presenting evidence proving that it is not a vendor.  However, Plaintiff completely misconstrues the holding of that case.[26]  A movant's burden is to point out the ***absence*** of evidence supporting the nonmovant's case.[27]  To survive summary judgment, the ***nonmovant*** must submit or identify existence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action.[28]  It was Plaintiff's burden, therefore, to provide the Court with evidence showing that RBD

---

[22] *See* La. Civ. Code art. 2324.

[23] *See* Plaintiff's Opposition Memorandum (Rec. Doc. 10350, p. 6).

[24] *Id.*

[25] 353 F.3d 393, 405 (5th Cir. 2003).

[26] Indeed, Plaintiff recites the holding in that case, which clearly does not apply to instant matter: "When evidence exists in the summary judgment record but the **nonmovant** fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *See* Plaintiff's Opposition Memorandum (Rec. Doc. 10350, p. 6); emphasis added.

[27] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Judwin Props., Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 436-37 (5th Cir.1992).

[28] *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 349 (5th Cir.2001); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir.1986).

is a vendor, which she failed to do.  Plaintiff cannot rest on mere allegations here.  Accordingly, Plaintiff has submitted no evidence that RBD was a vendor; thus, RBD does not meet the definition of the alleged purported defendant class of manufacturers.

**D.      Joint Tortfeasors**

Further, the Court's previous rulings in the *Alexander* and *Wright* cases on the application of *American Pipe* tolling and the Joint Tortfeasor Doctrine are distinguishable from the case at hand.  Specifically, the manufacturing defendant in the *Alexander* case (Gulf Stream) and the manufacturing defendant in the *Wright* action (Forest River), were both originally named in the *Hilliard* action.  In previous filings, plaintiffs have suggested that because co-defendants Gulf Stream and Forest River were named in the *Hilliard* action, the suspension of prescription for the claims asserted against the manufacturing defendants should apply to the claims asserted against the unnamed, contractor defendants, Fluor and Shaw.  Here, Plaintiff cannot make the same insinuation because neither RBD nor Shaw were named in the *Hilliard* action.  Accordingly, there was no named joint tortfeasor in *Hilliard* regarding Ms. Castanel's claims against RBD to relate her claims back to that filing.

**III.      Conclusion**

RBD has established as a matter of law that more than one year passed between the time that Ms. Castanel discovered her alleged injuries and the filing of this suit.  Because Plaintiff's claims have prescribed on the face of her petition, and because Plaintiff has failed to prove the existence of any exception to prescription, RBD respectfully requests that its Motion for Summary Judgment Regarding Prescription be granted.

Respectfully submitted,


*/s/ Randall C. Mulcahy*
LYON H. GARRISON, Bar No. 19591
SCOTT P. YOUNT, Bar No. 22679
RANDALL C. MULCAHY, Bar No. 26436
DARRIN L. FORTE, Bar No. 26885
KELLY M. MORTON, Bar No. 30645
GARRISON, YOUNT, FORTE
& MULCAHY, LLC
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 527-0680
Facsimile: (504) 527-0686
Attorneys for defendant,
Recreation By Design, LLC
Email: rmulcahy@garrisonyount.com


## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2009, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of this electronic filing to all known counsel of record.


*/s/ Randall C. Mulcahy*
RANDALL C. MULCAHY, Bar No. 26436

9