UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (4) |
| | * | |
| | * | |
| This Document relates to: | * | JUDGE ENGELHARDT |
| Paul Fountain, et al v. | * | |
| United States of America, et al | * | |
| No. 09-03622 | * | |
| | * | MAG. JUDGE CHASEZ |

*********************************************************************

## PLAINTIFFS' THIRD SUPPLEMENTAL AND AMENDING COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel come plaintiffs, Paul Fountain, Charles Ray Fountain, Joan Fountain Captain and Jessica Landry who supplement and amend their original Complaint, First and Second Supplemental and Amending Complaint. In the Amended Complaint, the Plaintiffs adopt, incorporate and restate all allegations, assertions of fact, causes of action, claims and requests for relief raised and set forth in the Original Complaint, First Supplemental and Amending Complaint and Second Supplemental and Amending Complaint. In addition, Plaintiffs supplement and amend the pleadings as follows:

1.

The Plaintiffs supplement and amend Section I (Parties) of the Original Petition, the First Supplemental and Amending Petition and the Second Supplemental and Amendment Petition by naming and adding a new defendant and amending the Section to read as follows:

2. PARTIES

"The defendants are:

a) The United States of America through the Federal Emergency Management Agency (hereinafter sometimes referred to as FEMA).

b) Forest River, Inc. which is alleged upon information and belief to be an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units pursuant to contracts with FEMA for use in the State of Louisiana.

c) Fluor Enterprises, Inc. ('Fluor'), a California corporation with its principal place of business in Irving, Texas, licensed to do business in the State of Louisiana, and which received a No-Bid contract from FEMA to transport, install, repair trailers or housing units pursuant to contracts with FEMA for use in the State of Louisiana and did perform these duties with regards to the temporary housing unit assigned to the Plaintiffs' mother.

d) North American Catastrophe Services, Inc., a Florida corporation, not licensed to do business in Louisiana, received a contract from the United States to identify, select and procure temporary housing units for those displaced by hurricanes Katrina and Rita and procured the temporary housing unit in which the Plaintiffs' mother lived and was improperly exposed to harmful substances."

2.

The Plaintiffs supplement and amend the Original Petition, the First Supplemental and Amending Petition and the Second Supplemental and Amendment Petition by adding the following paragraphs:

## II. FACTS AND GENERAL ALLEGATIONS

"46 (aa) North American Catastrophe Services, Inc., a Florida corporation, not licensed to do business in Louisiana, received a contract from the United States to identify, select and procure temporary housing units for those displaced by hurricanes Katrina and Rita.

46 (bb). In response to Hurricanes Katrina and Rita, FEMA, upon information and belief, tasked North American Catastrophe Services, Inc. and others with the identification, selection and procurement of approximately 143,000 temporary housing units (i.e., travel trailers, park models and manufactured housing) pursuant to the direct housing assistance provisions of the Stafford Act, which FEMA purchased from the manufacturers and off dealer lots, and intended for Gulf Coast residents in the four states at issue. The vast majority of the temporary housing units purchased were travel trailers which became widely known as 'FEMA Trailers'.

46 (cc). At all times, North American Catastrophe Services, Inc. and others identified, selected and procured travel trailers for FEMA to utilize as temporary housing units under the Stafford Act, while failing to consult with the manufacturers regarding the warnings or instructions against the use of travel trailers for extended occupancy.

46 (dd) North American Catastrophe Services, Inc. and others communicated with manufacturers prior to hurricanes Katrina and Rita regarding the financial opportunities associated with the provision of travel trailers as temporary housing units, but failed to take into account or research the health concerns relating to formaldehyde exposure to occupants of the travel trailers and other foreseeable problems and defects which would occur during an extended occupancy.

46 (ee) North American Catastrophe Services, Inc. and others knew or should have known that the Federal Government's intended use of the travel trailers and other temporary housing units was for residential occupancy for periods up to eighteen months, if not longer, pursuant to the emergency housing mandate of the Stafford Act.

46 (ff) North American Catastrophe Services, Inc. and others knew or should have known that the manufacturers' intended use of the travel trailers was for intermittent, recreational use, and that the travel trailers were designed as recreational vehicles rather than permanent or long-term housing units.

46 (gg) Further, North American Catastrophe Services, Inc. and others knew or should have known that the manufacturers' warned against long-term occupancy of the travel trailers.

46 (hh) Following the procurement of the temporary housing units by North American Catastrophe Services, Inc. and others, the Federal Government contracted with the No-Bid Contractors to implement the mandates of the Stafford Act in the areas affected by hurricanes Katrina and Rita.

46 (ii) In order to implement and manage its disaster response obligation and temporary housing mandate under the Stafford Act, FEMA engaged North American Catastrophe Services, Inc. and others with No-Bid contracts, eventually amounting to billions of dollars. The Federal Government also relied on the expertise and knowledge of the No-Bid Contractors and North American Catastrophe Services, Inc. and others to provide information and advice on, among other things, the conversion of mobile travel trailers into temporary housing units for periods up to, and potentially exceeding, eighteen months in duration.

46 (jj) North American Catastrophe Services, Inc. and others knowingly and intentionally identified, selected and procured approximately 140,000 travel trailers for

converted use by FEMA as temporary housing units, despite the manufacturers' clearly expressed warnings against using the travel trailers for that purpose. In doing so, North American Catastrophe Services, Inc. and others created and contributed to a situation."

3.

The Plaintiffs supplement and amend the Original Petition, the First Supplemental and Amending Petition and the Second Supplemental and Amendment Petition by adding the following paragraphs:

"COUNT 5:
CAUSE OF ACTION AGAINST:
NEGLIGENCE OF NORTH AMERICAN CATASTOPHE
SERVICES, INC.

Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

59 (AA). At all relevant times North American Catastrophe Services, Inc. and others were tasked with the identification, election and procurement of FEMA temporary housing units for use in Louisiana, Mississippi, Alabama and Texas following hurricanes Katrina and Rita.

59 (BB). North American Catastrophe Services, Inc. owed a duty to Plaintiffs to select a unit which was suitable for the intended purpose of extended habitation up to and exceeding 18 months.

59 (CC). At all relevant times, North American Catastrophe Services, Inc. and others were in communication with the manufacturers of the travel trailers regarding their use as temporary housing units for FEMA in response to hurricanes Katrina and Rita.

59 (DD). North American Catastrophe Services, Inc. and others knew or should have known when they identified, selected and procured the travel trailers for use as temporary housing units that the manufacturers specifically warned against such use and clearly indicated

in the various owners' manuals that the travel trailers were recreational vehicles designed to be mobile and towable, and were expressly not designed for use as permanent dwellings.

59 (EE). North American Catastrophe Services, Inc. and others knew or should have known that the travel trailers offgassed formaldehyde and that extended habitation would expose residents to elevated levels of formaldehyde, increased moisture and condensation and a deterioration of the internal soft goods, all of which rendered the travel trailers unfit for FEMA's intended purpose of extended occupancy.

59 (FF). North American Catastrophe Services, Inc. and others knowingly and intentionally elected to procure travel trailers instead of alternative housing more fit for extended occupancy.

59 (GG) North American Catastrophe Services, Inc. and others breached their duty to Plaintiffs in failing to act reasonably in the identification, selection and procurement of the temporary housing units, specifically by:

   a. Failing to sufficiently consult with the manufacturers of the travel trailers regarding the use of the trailers as FEMA temporary housing units;

   b. Failing to advise FEMA as to the inadequacy of the travel trailers as temporary housing units; and

   c. Knowingly and intentionally selecting travel trailers for use as temporary housing units, rather than alternative housing more fit for extended occupancy.

59 (HH) North American Catastrophe Services, Inc. and others' actions were the proximate cause of the increased exposure of formaldehyde to the Plaintiffs, by selecting travel trailers for use as temporary housing units.

59 (II) North American Catastrophe Services, Inc. and others contributed to the adverse health impacts upon the residents of the temporary housing units by selecting units unfit for extended occupancy.

### COUNT 6:
### CAUSE OF ACTION AGAINST: NEGLIGENCE OF
### NORTH AMERICAN CATASTOPHE SERVICES, INC.
### UNDER LOUISIANA LAW

Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

59 (JJ). At all relevant times NORTH AMERICAN CATASTROPHE SERVICES, INC. was tasked with the transportation, installation, site identification, preparation, inspection, maintenance and repair, refurbishment and restoration, and removal of the temporary housing units, which caused the Plaintiffs' injuries. NORTH AMERICAN CATASTROPHE SERVICES, INC. owed a duty to Plaintiffs to provide, transport, install, inspect, maintain, repair, refurbish, recondition and restore safe temporary housing units that did not emit hazardous levels of formaldehyde.

59 (KK). NORTH AMERICAN CATASTROPHE SERVICES, INC. knew or should have known when it provided, transported, installed, inspected, maintained, repaired, refurbished, reconditioned and restored the temporary housing units to the general public (thereby modifying and converting the mobile units into residential installations) the actual and intended use of the temporary housing units by each plaintiff, and that the temporary housing units would be used in the manner that each plaintiff herein used the temporary housing units.

59 (LL). NORTH AMERICAN CATASTROPHE SERVICES, INC. breached its duty to Plaintiffs in failing to act reasonably in the provision, installation, inspection, maintenance,

repair, refurbishment, reconditioning and restoration of the temporary housing units; specifically by:

    a. Failing to sufficiently warn the plaintiffs of the inherently dangerous properties or the foreseeable conditions of the temporary housing units when used for long term occupancy;

    b. Failing to adhere to the manufacturers' warnings against jacking the temporary housing units off the wheel base by 'blocking' the units;

59 (MM). NORTH AMERICAN CATASTROPHE SERVICES, INC.'s actions were the proximate cause of the increased exposure of formaldehyde to the Plaintiffs' mother.

59 (MM). NORTH AMERICAN CATASTROPHE SERVICES, INC. contributed to and exacerbated the adverse health impacts upon the residents of the temporary housing units, including the Plaintiffs' mother."

WHEREFORE, plaintiffs Paul Fountain, Charles Ray Fountain, Joan Fountain Captain and Jessica Landry pray that:

1) Plaintiffs' Third Supplemental and Amending Complaint For Damages be filed as prayed for according to law;

2) Except to the extent amended herein, all of the allegations and prayers for relief of plaintiffs' prior pleadings including the Complaint be repeated and reiterated as if recited herein in extenso;

3) That defendant, North American Catastrophe Services, Inc., be served with a certified copy Plaintiffs' Third Supplemental and Amending Complaint For Damages and be cited to appear and answer same;

4) That after the lapse of all delays and due proceedings had, that there be a judgment rendered herein favor of the plaintiffs Paul Fountain, Charles Ray Fountain, Joan Fountain

Captain and Jessica Landry, and against the defendants, jointly, individually and in solido in a sum of damages as reasonable under premises together with legal interest from the date of judicial demand until paid, and for all cost of these proceeding, and for the fees of expert witnesses; and

    5) For all other orders and decrees necessary in the premises and for all cost of these proceedings and for full, general and equitable relief.

                          Respectfully submitted:

                          Simien & Simien, L.L.C.
                          Attorneys and Counselors at Law
                          7908 Wrenwood Blvd.
                          Baton Rouge, Louisiana 70809
                          Telephone:   (225) 932-9221
                          Fax:            (225) 932-9286

                          /s/ Eulis Simien, Jr.
                          _____
                          By: Eulis Simien, Jr., Bar # 12077