UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
|    FORMALDEHYDE PRODUCTS | * | |
|    LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Charlie Age, et al v. Gulf Stream Coach* | * | |
| *Inc., et al*, Docket No. 09-2892; | * | |
| Alana Alexander, individually and on behalf of | * | |
| Christopher Cooper | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF OPPOSED MOTION TO RETAX COSTS**

  Plaintiff Alana Alexander, individually and on behalf of her son, Christopher Cooper ("Ms. Alexander" or "Plaintiff"), asks the court to retax costs awarded by the clerk, pursuant to Federal Rule of Civil Procedure 54(d)(1), and, in support, would show:

**BACKGROUND**

  On October 6, 2009, this court entered judgment in favor of Defendant Gulf Stream Coach, Inc. ("Gulf Stream") and Defendant Fluor Enterprises, Inc. ("Fluor") after a jury trial. (Docket Entry No. 4752).  On November 3, 2009, Gulf Stream filed its Motion to Assess Taxable Costs, seeking an award of $181,488.76 against Ms. Alexander.  (Docket Entry No. 6325).  On November 5, 2009, Fluor filed its motion to Assess Taxable Costs seeking an award of $132,535.20 against Ms. Alexander.  (Docket Entry No. 6427).  As discussed below, these cost bills seek recovery of costs that are not allowed under statutory and case law.

  Plaintiff submitted her objections on November 24, 2009.  (Docket Entry No. 8073 & 8074).  On November 30, 2009, Gulf Stream filed a motion for leave to file a reply memorandum

in support of its motion to assess taxable costs (Doc. 8307) and this reply memorandum was filed on December 1, 2009. (Doc. 8369). In its reply memorandum, Gulf Stream submitted additional invoices that allegedly set forth the deposition transcript-only costs associated with each witness. A hearing was held before the clerk of the court on December 2, 2009. After the hearing, both Gulf Stream and Fluor submitted revised cost bills in letters to the clerk of the court. Unfortunately, it is still difficult to make heads or tails of these bills, even in their revised form, or determine whether the charges incurred were actually necessary. In any event, lead counsel for both Gulf Stream and Fluor each submitted sworn declarations "under penalty of perjury that the foregoing costs are correct, were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed."

On January 19, 2010, the clerk entered the bill of costs for $75,531.34 in favor of Gulf Stream (Docket Entry No. 10620) and the bill of costs for Fluor for $116,543.07 (Docket Entry No. 10621); however, it was not entered on the system and published to Plaintiff's counsel until January 22, 2009. The Rules require a motion to retax costs within 7 days of entry of costs. FED. R. CIV. PRO. 54(d)(1). Counsel for Defendants does not oppose filing this motion to retax costs on January 29, 2010.

## ARGUMENT AND AUTHORITIES

**I.      The Costs Sought By Gulf Stream And Fluor Are Excessive And Unnecessary**

Pursuant to FED. R. CIV. P. 54(d)(1), costs are generally to be awarded as a matter of course, unless the Court directs otherwise. The types of costs awardable under Rule 54(d) are limited to those enumerated in 28 U.S.C. § 1920. *Crawford Fitting Co., v. J.T. Gibbons, Inc*. 482 U.S. 437, 441-442 (1987). Section 1920 permits the following recoverable costs:

2

> (1) Fees of the Clerk and Marshal;
>
> (2) Fees of the Court reporter for all or any part of the stenographic transcript obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily used for use in the case;
>
> (5) Docket fees under § 1923;
>
> (6) Compensation of court-appointed experts, compensation for interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828.

28 U.S.C. § 1920.

Section 1920 "embodies Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against the losing party." *Crawford*, 482 U.S. at 440. Costs not listed in Section 1920 may not be taxed to the losing party unless they are specifically authorized by some other statute or by contract. *Id.;* see also *Mota v. University of Texas Houston Health Science Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001); *Coats v. Penrod Drilling Corp.*, 5 F.3d. 877, 891 (5th Cir.1993)("A district court may decline to award the costs listed in the statute but may not award costs omitted from the list.") "Those who are entitled to recover costs and expenses bear the burden of furnishing a reasonable accounting." *Cooper Liquor, Inc. v. Adolph Coors Company*, 684 F.2d 1087, 1099 (5th Cir). In order to obtain

> costs under Rule 54(d), the prevailing party has the burden of establishing that the expenses he seeks to have taxed as costs are authorized by applicable federal law, including proof of necessity and reasonableness under 28 U.S.C. § 1920.

*Berryman v. Hofbauer*, 161 F.R.D. 341, 344 (E.D. Mich. 1995); *see Collins v. Gorman*, 96 F.3d 1057, 1058 (7th Cir. 1996).

3

A.      Deposition Transcripts

First, Section 1920 does not allow for recovery of a "deposition fee" paid to a witness. Further, the Fifth Circuit has made it clear that "expert fees are not recoverable." *Coats*, 5 F.3d. at 891. At the December hearing, the Clerk of the Court determined that Gulf Stream could not recover expert fees.

Second, Section 1920 does not allow for recovery of "sync" fees. Gulf Stream does not offer any authority in support of this claim. Since these fees are not enumerated in Section 1920, they should not be allowed. *Crawford Fitting Co.,* 482 U.S. at 441-442; *Coats*, 5 F.3d. at 891.

Third, as to the fees associated with video depositions, the Fifth Circuit has recently made it clear that this is not a recoverable cost:

> The court erred in taxing the University with the cost of videotaped depositions. We have observed that "28 U.S.C. § 1920(2) only allows for the recovery of '[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case.' There is no provision for videotapes of depositions." This reading is consistent with the text of 28 U.S.C. § 1920(2) and the Supreme Court's admonition that we strictly construe this provision.

*Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 529-30 (5th Cir. 2001)(citing *Crawford Fitting Co.*, 482 U.S. at 441-42); *see also Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1049 (5th Cir.1998)(same). Further, at the hearing, the Clerk held that Gulf Stream and Fluor would not be able to recover costs for video-taping, video-syncing and similar charges.

Additionally, a party may not normally recover costs for an expedited deposition transcript. *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991). The Court noted that:

4

> [w]e have previously held that the extra cost of obtaining a trial transcript on an expedited basis is not taxable unless prior court approval of expedition has been obtained or the special character of the litigation necessitates expedited receipt of the transcript.  The same reasoning applies to a copy of a deposition obtained on an expedited basis.

*Id*.  Further, courts have held that "additional charges for such items as minuscripts, keyword indices, ASCII disks, exhibits, and postage are delivery … [are not taxable] because they are the convenience of counsel."  Burton v. R.J. Reynolds Tobacco Co., 395 F.Supp.2d 1065, 1080 (D. Kan 2005); *see also Irwin Seating Co. v. International Business Machines Corp.*, 2008 WL 1869055, at *4 (W.D. Mich. Apr. 24, 2008) (removing costs for the "extra costs associated with deposition transcripts, including "live note hookup," expedited transcripts, condensed transcripts, ASCII diskettes, mini-transcripts, rough drafts, e-transcripts").

Finally, costs of depositions taken purely for discovery or investigative purposes, rather than for trial preparation or trial use, ordinarily are not recoverable.  *Coats*, 5 F.3d at 891.

B.   Daily Transcripts

"It is the rule in the Fifth Circuit that a copy of a transcript of the trial evidence obtained by counsel for use during trial is not a taxable item." *See Hiller v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 60 F.R.D. 87,87 (N.D. Ga. 1973) (emphasis supplied); *United States v. Lynd*, 334 F.2d (5th Cir. 1964); *Carmichael v. Allen*, 267 F. Supp. 985 (N.D. Ga. 1965); *Department of Highways v. McWilliams Dredging Co.*, 10 F.R.D. 107 (W.D. La. 1951), *aff'd*, 187 F.2d 61 (5th Cir. 1951).[1]  The Court may not award transcript fees when used merely for attorney convenience." *Bats, Inc. v. Vector Pipeline LP*, 222 F.R.D. 356, 359 (D. Ind. 2004); *Brumley*

---

[1] Gulf Stream cites *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994), in support of its motion but the party opposing the award in that case did not challenge the factual basis of the court's finding of necessity, as Plaintiff does here.

*Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1362, 1363 (5th Cir. 1983).

As the court, in *Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Authority*, 133 F.R.D. 481, 484 (E.D. La. 1990), explained:

> Daily transcripts of trial proceedings are not customary. In this case, the parties infrequently referred to the daily transcripts during testimony. Considering that the trial lasted eight weeks, it is likely that the lawyers personally used the daily transcripts to refresh their memories of past testimony. Any one of the lawyers sitting with trial counsel could have taken notes for that purpose. Both trial attorneys in this case are partners in large law firm with extensive staff support. Accordingly, the court finds that the daily transcripts were obtained primarily for the convenience of the lawyers are were not necessarily obtained for use in that case.

*See also In re Nissan Antitrust Litigation*, 577 F.2d 910, 918 (5th Cir. 1978), *cert denied*, *P.D.Q., Inc. of Miami v. Nissan Motor Corporation in U.S.A.*, 439 U.S. 1072 (1979); *Harris Corp. v. Sanyo N. Am. Corp.*, 2002 U.S. Dist LEXIS 3608 (N.D. Tex., Mar. 4, 2002).

Courts within this judicial district agree:

> Daily transcripts are not routinely prepared. In this case, there was little occasion for the Court or the jury to make use of the daily transcripts, and post-trial findings of fact were not necessary. The Court finds that the daily transcripts were a luxury item obtained primarily for the convenience of counsel and were not necessarily obtained for use in the case. Accordingly, $45,435.90 will be deducted from the costs taxed to the plaintiffs.

*Industrial Risk Insurers v. New Orleans Public Service, Inc.*, 1991 U.S. Dist. LEXIS 259 (E.D. La. 1991).

To have any basis on which to award the cost of daily transcripts under any circumstances, the Fifth Circuit has required that a court find both that such transcripts were "not obtained primarily for the convenience of the parties but were "necessarily obtained for use in this case." *Fogleman*, 920 F.2d at 286; *Bolton v. Resoro Petroleum Corp.*, 871 F.2d 1266, 1278 (5th Cir. 1989); *Studiengesellschaft Kohle v. Eastman Kodak Co.* 713 F.2d 128, 133 (5th Cir. 1983). A finding of necessity is a factual finding [*Studiengesellshaft*, 713 F.2d at 133] on which

6

the defendant bears the burden of proof. *Fogleman*, 920 F.2d at 286; *Datapoint*, 1998 U.S. Dist. LEXIS 10897.

    C.    <u>Copies</u>

As to copy costs, a party's request for the costs of copying documents must include a showing of a sufficient nexus between the costs incurred and the litigation. *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir.1991) ("While we certainly do not expect a prevailing party to identify every xerox copy made for use in the course of legal proceedings, we do require some demonstration that reproduction costs necessarily result from that litigation."); *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir.1994) (vacating costs awarded for photocopying where the district court neglected to make the requisite finding of necessity). Expenses for copies made solely for convenience of counsel or the litigant's own use are not recoverable. *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1441 (7th Cir. 1994).

    D.    <u>Witness Fees</u>

The express wording of Section 1920 refers to "court-appointed experts." None of these expert witnesses were appointed by the Court and Gulf Stream does not claim that they were. Further, Section 1920 does not provide for a party's retained expert's hotel, meals and incidental expenses. *Id*. at § 1821(c)-(d).

Generally, the recovery of expert witness fees is limited to the statutory amounts authorized under 28 U.S.C. §§ 1821 and 1920. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 332 (5th Cir.), *cert. denied*, 516 U.S. 862 (1995). Under 28 U.S.C. § 1821(b), "a witness shall be paid an attendance fee of $40.00 per day for each day's attendance." Therefore,

Gulf Stream should only be permitted to recover a $40.00 per day of testimony for the number of experts (4) it presented at trial, or $160.00.

Section 1821 requires that any witness traveling by common carrier travel "at the most economical rate reasonably available. [And that] a receipt or other evidence of actual cost be furnished." *Id*. at § 1821(c)(1). And even if the Court determines that witness should be awarded subsistence allowance, this amount "shall be paid in an amount not to exceed that maximum per diem allowance prescribed by the Administrator of General Services … for official travel in the area of attendance by employees of the Federal Government." Id. at § 1821(d)(2). In September 2009 for the New Orleans area, this amount was limited to $160 max per diem rate ($101 for lodging and $59 for meals and incidental expenses) with $44.25 for the first and last day. U.S. General Services Administration, Louisiana – FY 09, http://www.gsa.gov/Portal/gsa/ep/contentView.do?queryYear=2009&noc=T&queryState=Louisiana&contentType=GSA_BASIC&contentId=17943 (last viewed Jan. 29, 2010).

E.   Fees for Service of Summons and Subpoena.

Section 1920 does not list for service of summons and subpoena as a proper recoverable cost.

F.   Costs Sought By Defendants.

Plaintiff will now address each item of allowable costs in turn.

   i.   **Deposition transcripts**

Gulf Stream initially claimed an amount of $81,879.45 under this section. This includes

8

sub-categories for deposition videos, deposition transcript, and deposition "sync" fees.[2] Gulf Stream also claims costs under this section for "expert deposition fees" in the amount of $42,813.27. As discussed above, Gulf Stream was not entitled to the recovery of expert fees under Fifth Circuit law. Prior to the hearing before the clerk of the court, Gulf Stream submitted revised bills for these deposition costs in the amount of $49,479.22 and were awarded a like amount. Even at this reduced amount, it still contained charges that should not have been there. First, Gulf Stream billed for the deposition of Dr. George Farber, a deposition taken in the *Dubuclet* matter. Second, Gulf Stream submitted costs for the expedited transcript of Kevin Souza. (Docket Entry No. 8369-2, p. 10). Further, Gulf Stream billed for "deposition extras" like rough drafts (for a total no less than $1,650.25), mini-transcripts, "processing fees" upward of $55 and shipping and handling charges that rose to $95 for one transcript.

Fluor initially claimed costs in the amount of $94,613.86 for court reporter and transcripts fees. This included costs for deposition videos, videographer fees, e-tran fees, expedition fees, deposition transcript, deposition "sync" fees, daily feed of trial transcripts. Plaintiff has added up these amounts and has found that the invoices actually amount to approximately $90,500.00—further proof that Fluor is submitting claims without sufficient backup. After the hearing, Fluor submitted a revised cost chart for transcripts to the clerk and was awarded $78,621.13 in costs. However, errors remain in this revised spreadsheet:

- $100 video service fee for the 7/29/09 deposition of Angela Baksh (Docket Entry No. 6427-4, p. 19);

---

[2] Presumably, fees associated with synchronizing a deposition transcript with its video counterpart.

- The transcript cost for Gary Bunzer was $4767.32,[3] not $5,244.05, an amount that includes a late fee (Docket Entry No. 6427-4, p. 27);

- The transcripts cost for Burl Keel was $401.04, not $1,018.37 (Docket Entry No. 6427-5, pp. 8 & 48);

- The transcript costs for Linares and Sober were at most $1,214.95, not $12,113.80 (Docket Entry No. 6427-5, p. 15);

- The transcript cost for Daniel Shea was $998.31, not $1,396.48 (Docket Entry No. 6427-5, pp. 48 & 49);

- The transcript cost for James Shea was $1,009.69, not $1,262.86 (Docket Entry No. 6427-5, p. 44 & 48); and

- The 8/1/09 deposition of Edward Shwery was taken in connection with the *Dubuclet* matter (docket Entry 6427-6, p. 9).

In addition to the above charges, Fluor submitted, and received, costs for obtaining rough drafts, in addition to a certified copy of the deposition transcript, in an amount equal to no less than $3,933.25. Additionally, Fluor paid $1,536.20 to expedite the transcripts of Whitaker and Duckworth without showing the need for expedited transcripts. (Docket Entry No. 5427-6, p. 17). In some invoices, Fluor submitted costs for "processing," shipping (including overnight), mini-transcripts and e-tran copies.

This is not by any means a complete summary of all of the erroneous costs sought by Gulf Stream and Fluor. However, it is an example of the sloppiness that existed in preparing these bills of cost.

### ii. Daily transcripts

Both Gulf Stream and Fluor were awarded $13,048.80 and $13,046.60, respectively, in

---

[3] It should be noted that Gulf Stream was only charged $843.88 for a certified copy of Dr. Bunzer's transcript. (Docket Entry No. 8369-3, p. 18).

daily deposition transcripts. As discussed above, the burden of proving the necessity of expedited transcripts is on the defendant. Thus, Gulf Stream and Fluor were required to come forward with "affirmative proof that without the daily transcripts, the presentation of [its] case would have been adversely affected." Gulf Stream and Fluor failed to meet its burden and it should not be awarded costs for daily transcripts.

### iii.   Copies

In its initial motion, Gulf Stream sought $22,075.78 in what it calls "other copy costs". Only $11,086.36 of this amount was for the copies. The remaining $10,989.42 includes costs for tabs, binders, OCR/conversion, conference calls, scanning, courier and CD and DVD duplication/production.

It is clear that Section 1920 does not allow for cost recovery for office supplies (like tabs and binders), OCR/Conversion, scanning, CD and DVD duplication/production, conference calls, or courier fees. After the hearing, Gulf Stream reduced submitted costs to $11,086.26. However, Gulf Stream has still failed to show that these copies were necessary for trial and not for the convenience of counsel.

Fluor submitted $32,370.30 in fees for exemplification and necessary copies. Similarly, Fluor did not break this out, and a review of the invoices shows that this apparently includes copies (including color copies), imaging costs (pdf conversion, OCR, character recognition, logical document determination costs), scanning costs, bates labeling, DVD and CD production and duplication and supplies (tabs and binders). Even after the hearing and Plaintiff's objections, Fluor did not submit revised invoices but still was awarded the entire amount sought. Aside from possibly the copies, none of these items are recoverable costs under Section 1920 and Fluor

11

has failed to make any showing that these copies were necessarily obtained for use in this case.

      **iv.    Witness fees**

Gulf Stream initially claimed fees and travel expenses for its retained experts to attend trial (including for those who did not even testify), in the amount of $21,377.42. After the December hearing with the clerk, Gulf Stream reduced this amount to, and was awarded, $1,708.92. As discussed above, none of these experts were court-appointed experts.

Further, only Drs. Wedner and Cole testified, so Gulf Stream should not be awarded $40 each for Mr. Allan, Mr. Serauskas and Dr. Herzstein. Similarly, Gulf Stream should also not be awarded travel costs and a subsistence allowance for Mr. Allan. Further, Gulf Stream did not produce receipts for Dr. Cole so there is no way to verify his travel expenses and determine whether they were "at the most economical rate reasonably available." Finally, in addition to not producing receipts, the hotel expenses claimed for Dr. Cole are above the maximum per diem amount of $101, excluding taxes, for lodging as prescribed by 28 U.S.C. § 1821(d)(2).

      **v.    Miscellaneous**

Finally, Fluor sought an awarded "other costs" in the amount of $4,637.54. However, Fluor provided no basis for this request, much less what these costs are for. Since these unknown costs are obviously not enumerated in Section 1920, they should be denied. Fluor also submitted costs for $913.50 for service of summons and subpoena. Section 1920 does not list this as a proper recoverable cost and, therefore, this cost should be denied. Further, it is unclear where Fluor itemized this expense on its bill of costs. Despite these shortcomings being brought to its attention, Fluor still submitted, and was awarded, these costs.

In sum, Defendants' awards were largely unfounded in the law, excessively large could

not possibly be limited to items that were "for use at trial" and should be denied.[4] Despite the fact that lead counsel for both Gulf Stream and Fluor swore "under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed," Defendants' bills of cost were just summary statements that lacked the specificity required by law. Both Gulf Stream and Fluor have failed to meet their burden to show that the above expenses were necessary for their case and their account was less than reasonable. At best, the submitted bills were the result of sloppiness. At worst, the Defendants submitted these bills in bad faith.

The bottom line is that Gulf Stream and Fluor are seeking a lot of money in costs from a single mother. The Defendants' obligation is to provide clear and concise bills of cost. However, since they did not and, as Defendants' bills of cost are in large part meritless, without basis in law or fact, and unreasonably large, this Court should retax Defendants costs to zero dollars. *See Andretti v. Borla Performance Industries, Inc.*, 426 F.3d 824, 836 (6th Cir. 2005); *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 733 (6th Cir. 1986); *Jansen v. Packaging Corp. of America*, 898 F.Supp. 625, 629 (N.D. Ill. 1995). If the Court does not decide to this, the Court should require that Defendants resubmit their bills of cost. Further, Plaintiff would like to depose these declarants to find out how they know that each of those charges were used for trial.

---

[4] On January 16, 2007, after the conclusion of the *Anthony Wayne Dedrick v. Merck & Co., Inc.*, Case Number 2:05cv2524, trial, Merck filed a motion for taxation of costs in the amount of **$43,567.30**. (Docket Entry No. 9691). Plaintiff filed his opposition on April 16, 2007. (Docket Entry No. 10786). To date, Judge Fallon has not ruled on this motion.

## II.     Costs Should Not Be Awarded Against Ms. Alexander

For the reasons cited above, costs should not be awarded against Ms. Alexander. Additionally, no party contests that Ms. Alexander brought this case in good faith. *White & White, Inc.*, 786 F.2d at 733. Further, the following factors all support a denial of Gulf Stream and Fluor's bills of cost.

### A.     This Was A Close And Complex Case.

Denial of costs is proper in cases that are close and complex. *See Association of Mexican-American Educators v. State of Calif.*, 231 F.3d 572, 593 (9th Cir. 2000); *White & White, Inc.*, 786 F.2d at 732-33. No party involved can deny that this case was a complex product liability case that involved numerous experts and was the first of its kind. Further, Plaintiff won multiple motions prior to and during the trial of this case, including numerous issues related to expert testimony.[5]

### B.     Ms. Alexander Is Financially Unable To Pay This Award.

A court may deny or reduce costs based upon the losing party's inability to pay the full measure of costs. *See Association of Mexican-American Educators*, 231 F.3d at 592-93; *Chapman v. AI Transport*, 229 F.3d 1012, 1039 (11th Cir. 2000); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997). Ms. Alexander is a working single mother and the sole provider for her two children. *See* Declaration of Alana Alexander, at ¶¶ 1 & 7, attached as **Exhibit A**. Her gross pay is $35,000 per year and her wages are her sole source of income. *Id.* at ¶¶ 2 & 3. She has a minimal amount of money in her bank accounts and few assets that are

---

[5] As the court is well aware, the Defendants filed numerous motions in the final months before trial and Plaintiff prevailed on the bulk of these.

not encumbered by a mortgage or loan. *Id*. at ¶¶ 4 & 5. Presently, Ms. Alexander takes home approximately $2,200 each month and her regular monthly expenses are approximately $1861.39 per month. *Id*. at ¶¶ 2 & 6. This leaves Ms. Alexander with roughly $340 per month for "discretionary" purchases, including groceries. Additionally, like many working class Americans, Ms. Alexander is in the process of paying off roughly $2,500 in credit card debt. *Id*. at ¶ 6. At her present income, it would take Ms. Alexander over five years to pay of this combined award of costs; and this is assuming she foregoes paying her taxes, mortgage note and providing food for her children.

      C.    <u>This Was An "Extraordinary" Case With Broad Implications</u>.

As previously noted, this case was the first of its kind and was an "extraordinary" case. *See Association of Mexican-American Educators*, 231 F.3d at 593; S*tanley v. University of So. Calif.*, 178 F.3d 1069, 1079-80 (9th Cir. 1999). Ms. Alexander and her son were just two of over one hundred thousand people who resided in FEMA trailers in Louisiana, Mississippi, Alabama and Texas as a result of Hurricanes Katrina and Rita. At least partially as a result of this litigation, FEMA has changed its procurement policies for temporary housing units and set new requirements for temporary housing units used in the aftermath of future disasters. To award costs against Ms. Alexander would have the chilling effect of discouraging future bellwether plaintiffs in this litigation and future cases. *See, e.g., Association of Mexican-American Educators*, 231 F.3d at 593.

For these foregoing reasons, it would be inequitable and unjust to award costs against Ms. Alexander.

**III.**    **Costs Should Be Apportioned Against All Plaintiffs In The MDL**

In the alternative, costs should be apportioned against all members of the MDL on a *pro rata* basis. As noted above, Ms. Alexander's case directly and indirectly affects the cases of tens of thousands of individuals. In *White v. Sunderstrand Corp.*, the court held that the costs could not be shared amongst all putative class members because they were not given notice and did not have a chance to opt out of the class. 256 F.3d 580, 586 (7th Cir. 2001). However, all of the tens of thousands of members of this MDL have participated in this litigation to varying degrees and are on notice that this litigation exists. As such, it is neither unreasonable nor unfair nor a violation of the due process clause to apportion costs amongst all members of the MDL, or, in the very least, amongst all members with a claim against Gulf Stream and/or Fluor.

### IV. Defendants Submitted These Bills of Cost In Bad Faith

Finally, Defendants opposed the taxing of costs against the group of plaintiffs in the MDL as a whole instead of Ms. Alexander personally. If Defendants' only concern was to recover costs incurred defending themselves, they would not oppose this alternative; the fact that they do oppose illustrates that the sole purpose of filing these cost bills was to punish Ms. Alexander and deter from future bellwether trial plaintiffs from serving. For this reason alone, the Court should retax costs to zero dollars.

### **PRAYER**

WHEREFORE, Plaintiff Alana Alexander respectfully requests that the Court strike the award of costs because of Defendants' bad faith, Plaintiff's indigency and the extraordinary and complex nature of this case or, in the alternative, that the Court require Defendants to resubmit to the Court a new proper bill that has only allowed costs under the law, with a declaration from someone that says they reviewed each of the items in the bill and that they were actually used for

trial of this particular case and are reasonable, and that any costs be assessed against each claimant in this MDL, on a *pro rata* basis.

      Respectfully submitted:

      **FEMA TRAILER FORMALDEHYDE**
      **PRODUCT LIABILITY LITIGATION**

BY:  s/Gerald E. Meunier
    GERALD E. MEUNIER, #9471
    **PLAINTIFFS' CO-LIAISON COUNSEL**
    Gainsburgh, Benjamin, David, Meunier &
    Warshauer, L.L.C.
    2800 Energy Centre, 1100 Poydras Street
    New Orleans, Louisiana 70163
    Telephone: 504/522-2304
    Facsimile: 504/528-9973
    gmeunier@gainsben.com

    s/Justin I. Woods
    JUSTIN I. WOODS, #24713
    **PLAINTIFFS' CO-LIAISON COUNSEL**
    Gainsburgh, Benjamin, David, Meunier &
    Warshauer, L.L.C.
    2800 Energy Centre, 1100 Poydras Street
    New Orleans, Louisiana 70163
    Telephone: 504/522-2304
    Facsimile: 504/528-9973
    jwoods@gainsben.com

    **COURT-APPOINTED PLAINTIFFS'**
    **STEERING COMMITTEE**
    ANTHONY BUZBEE, Texas # 24001820
    RAUL BENCOMO, #2932
    FRANK D'AMICO, #17519
    MATT MORELAND, #24567
    LINDA NELSON, #9938
    MIKAL WATTS, Texas # 20981820
    ROBERT BECNEL
    DENNIS REICH, Texas # 16739600

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

<pre>
                              s/Gerald E. Meunier
                              GERALD E. MEUNIER, #9471
</pre>