UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION:  N(5) |
| | * | |
| This Document Relates to:  *Lyndon T. Wright  v.* | * | JUDGE: ENGELHARDT |
| *Forest River, Inc., et al*, Docket No. 09-2977 | * | |
| | * | MAG: CHASEZ |

*************************************************************************

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON CAUSATION

**MAY IT PLEASE THE COURT:**

Defendants Forest River, Inc. ("Forest River")and Shaw Environmental, Inc. ("Shaw") (hereinafter, "defendants") respectfully submit this memorandum in support of their Motion for Summary Judgment regarding causation.  Defendants assert that, as a matter of law, all of plaintiff's claims must be dismissed as a result of his failure to provide the general and specific causation testimony necessary to support his claims.

### BACKGROUND

As the Court is well aware, this Multi-District Litigation is the consolidation of hundreds of federal toxic tort suits in which an estimated seventy thousand named plaintiffs claim to have inhabited emergency housing units ("EHUs") that were provided to them by the Federal Emergency Management Agency ("FEMA") as a result of the alleged uninhabitability of their residences due to Hurricanes Katrina and Rita. (Rec. Doc. 109, at ¶ 96).

Bellwether plaintiff Lyndon Wright originally filed suit in March of 2009; on April 6, 2009, the Court entered Pre-Trial Order No. 34, confirming Wright as Forest River's first trial plaintiff. (Rec. Doc. No. 1299).  On June 24, 2009, Wright filed a Motion for Leave to File First Supplemental and Amended Complaint, seeking to add new claims related to mold exposure in the trailer.  (Rec. Doc. 1862).  The Court granted that motion on July 17, 2009.  (Rec. Doc. 2201).

In this new Complaint, Wright expressly amended his allegations with respect to compensatory damages and identified ten distinct areas of harm due to his alleged exposure to formaldehyde and/or mold in the trailer:

1. Physical pain and suffering;

2. Mental anguish and emotional distress, including the fear of an increased risk of cancer;

3. Past, continuing, and future medical expenses, including medical monitoring costs;

4. Sleep loss and decreased appetite as a result of living in the trailer and exposure to formaldehyde;

5. High blood pressure induced by stress;

6. Walking pneumonia;

7. Aggravation of plaintiff's preexisting allergies;

8. Development of asthma due to continual exposure to formaldehyde emitting products;

9. Impairment of future wage-earning capacity and/or daily life activities; and

10. Growing frustration with Shaw due to their failure to address maintenance issues, and the accompanying mental depression which occurred as a result.

Rec. Doc. 2203, para. 17.[1]

---

[1] Mr. Wright has never been diagnosed with any form of cancer.

-2-

Central to any toxic tort case is the issue of causation, and, with this myriad of symptoms – ranging from asthma to allergies to pneumonia – defendants anticipated that plaintiff would have identified a wide range of experts to provide causation testimony linking these damages to his formaldehyde/mold exposure.  However, plaintiff has only identified four medical experts, and, as detailed in this Motion, these experts simply do not provide the testimony needed to make a causal connection between formaldehyde/mold exposure and **any** of Wright's alleged medical conditions.

Dr. Patricia Williams, a toxicologist with whom this Court is exceedingly familiar, is the sole expert retained by plaintiff to offer opinions on general causation.  She asserts that a cause-effect relationship exists between formaldehyde and (1) upper respiratory tract damage and cancer, (2) bronchoconstriction/asthma and (3) eczema.[2]

On the specific causation side, Wright has listed three experts:

1. Dr. Farber, a dermatologist, authored a report on Wright's skin conditions.[3]  Based on information and belief, Dr. Farber's medical license was recently revoked in November 2009 by the State of Louisiana.  Plaintiff has subsequently withdrawn Farber as a testifying expert in the case.[4]  Forest River will file a separate *Motion in Limine* to exclude any reference to his report, but, without Farber's opinions, plaintiff

---

[2] *See generally* Expert report of Dr. Williams, dated 10/2/09, p. 63-64, attached as Ex. A. The remainder of her report focuses on "associations" between formaldehyde/mold and epistaxis (nosebleed) and rhinitis.  Although discussed more fully *infra*, these "associations" are not sufficient evidence to meet a plaintiff's burden to prove causation under the Louisiana Products Liability Act.

[3] *See* Dr. Farber report, dated 10/2/09, attached as Ex. B.

[4] *See* Ex. C, email from A. Ahlquist to J.Bone, et al., dated 11/20/09, noting, "Plaintiffs can agree that we will not call Dr. Farber as a witness for trial."  It should be noted that, without warning, Dr. Farber excused himself from his deposition in this case.

will not be able to present expert testimony on Wright's alleged dermatological issues.

2.　　Dr. Richard Spector, an otolaryngologist (ENT), examined Mr. Wright to address two specific ailments.  First, Spector biopsied a mass at the base of Mr. Wright's tongue in the late summer of 2009.  His ultimate diagnosis was that the mass was a benign neuroma, possibly induced by trauma, stress or simply heredity, but in no way caused by formaldehyde and/or mold exposure.  Additionally, he investigated the cause of Wright's recurring bloody sputum.  Dr. Spector was unable to find the source of this blood, and he testified that there is no causal link between that bloody sputum and formaldehyde/mold exposure.[5]

3.　　Dr. Larry Miller, a physician board-certified in internal medicine, pulmonary disease and clinical pharmacology, has opined that, "within a reasonable degree of medical probability, the exposure to formaldehyde emissions during his approximately 28 months of residence in the FEMA trailer significantly exacerbated Mr. Lyndon Wright's rhinosinusitis."[6]  Dr. Miller was clear that the formaldehyde exposure did not *cause* this rhinosinusitis but simply exacerbated the condition.[7]  With regard to Wright's other conditions, including rashes, bloody sputum, nocturnal dyspnea, Dr.

---

[5] *See* Spector report, dated 9/21/09, p. 1-2, attached as Ex. D.  *See*  Deposition of Dr. Spector, p. 105; 128-29; 164, attached as Ex. E.

[6] *See* Miller report, dated 10/2/09, p. 7, attached as Ex. F.

[7] *Id.*

-4-

Miller noted that "limitations in the medical records and toxicological evidence prevent establishment of a causal association at this time."[8]

As this brief summary demonstrates, there are some alleged health complaints – such as walking pneumonia – that no expert ever comments upon, much less opines that such a condition was caused by formaldehyde and/or mold exposure.[9]

However, even for those health complaints actually addressed by his medical experts, plaintiff has still failed to coordinate both general and specific causation testimony to support any of his claims. Although Dr. Williams ascribes a causative relationship between formaldehyde and

---

[8] *Id.  See* Deposition of Dr. Miller, attached as Ex. G, p. 113-14; 118-19.

[9] In this case, no expert has offered any opinion or testimony  that Wright has a specific increased risk of cancer or other serious latent disease.  Recall that,  in the Gulf Stream bellwether trial, Dr. Kornberg opined that plaintiff was seventeen times more likely to develop cancer as a result of formaldehyde exposure in the trailer:

> "Given the extent, amount and duration of [C.C.'s] exposure to formaldehyde, . . . it is my environmental medical opinion that [C.C.] should be afforded medical monitoring direct toward the early detection of cancer of the nasal passages.  This opinion is supported by my analysis . . . that illustrates the risk quotient (RQ) that compares [C.C.'s] 19 month formaldehyde inhalation dose to that inhalation dose based upon EPA cancer risk based concentration.  In my analysis RQ = 17.0.  This number simply means that over the 19 month period that [C.C.] was exposed in his FEMA-supplied trailer, he endured an exposure to formaldehyde that was 17 times the 30 year residential inhalation dose of formaldehyde that the EPA recognizes is associated with an increased lifetime cancer risk . . . ."

*See* Expert report of Dr. Kornberg, dated 5/19/09, p. 26-27, referenced herein as Ex. I.  (Due to the local rules prohibiting reference to minors in pleadings filed with the Court, Forest River has withheld publication of Exhibit I.  Should it be necessary, Forest River will provide a hard copy of Exhibit I for *in camera* inspection.)  In this case, however, no expert has ever offered any opinion on this topic.  Accordingly, Wright cannot recover damages for an increased risk of cancer.  *See Bonnette v. Conoco, Inc.*, 837 So.2d 1219, 1233, 2001-2767  (La. 2003) (affirming trial court's decision to deny recovery for increased risk of cancer where plaintiff could only show a "slight" increased risk).

several ailments, her findings do not include a general causation link between formaldehyde and the exacerbation of chronic rhinosinusitis.  Conversely, Dr. Miller, the only specific causation expert remaining who supports Wright's theories, opines that the **only** causative effect of Wright's exposure to formaldehyde is exacerbation of chronic rhinosinusitis.  In other words, while both Drs. Williams and Miller believe Wright suffered some harm due to formaldehyde exposure, neither expert has found any common ground in the form of a shared specific/general causal link.  As such, they are merely two ships passing in the night, with the end result being a lack of complete causation testimony for all of  Mr. Wright's claims.

Thus, while previous bellwether defendants like Gulf Stream and Fleetwood focused their attention on the merits of opinions formed by plaintiffs' medical experts, Forest River and Shaw have an entirely different basis for their Motion for Summary Judgement on "causation": a total lack of any unified opinion.   Plaintiff has not submitted the requisite general and specific causation testimony to recover in this case.  As such, all Wright's claims –including damages for both physical and mental harm – should be dismissed as a matter of law.

## LAW AND ARGUMENT

### I.    Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be rendered if the pleadings, discovery, disclosure materials and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing

law." *Id.* Further, "It is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tx. Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.,* 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must go beyond the pleadings and through affidavits, depositions, answers to interrogatories, and admissions on file designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F .3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). The nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied,* 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002).

## III. Summary Judgment is Proper where Plaintiff Cannot Establish Causation

It is the plaintiff's burden to prove causation under the Louisiana Products Liability Act.[10] The plaintiff must prove causation through medical testimony that it is more probable than not that his claimed injuries were caused by an aspect of the product which rendered it unreasonably dangerous.[11] In a toxic tort case, the plaintiff must prove **both** general causation and specific

---

[10] *Maranto v. Goodyear Tire & Rubber Co.*, 650 So. 2d 757, 759 (La. 1995). Similarly, plaintiff bears the burden of proving causation in his negligence claims asserted against Shaw. *Morris v. Orleans Parish School Bd.*, 553 So. 2d 427, 430 (La. 1989).

[11] *Kemp v. Metabolife Int'l, Inc.*, No. 00-3513, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004); *see also Hutchinson v. Shah*, 648 So. 2d 451, 452 (La. Ct. App. 1994) ("[w]hen the

causation -- and must do so with competent expert testimony.[12]   General causation deals with whether the substance at issue can cause certain diseases in people in general.[13]  Specific causation focuses upon whether the substance was in fact the cause of the ailments or symptoms in the particular patient.[14] Not only is expert medical testimony required to establish causation, but, in a toxic tort case, the plaintiff must also present evidence of the harmful level of exposure to the chemical, and knowledge that plaintiff was exposed to that level:

> Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case.[15]

Because both specific and general causation are required, when the plaintiff fails to establish either specific causation or general causation, the plaintiff's claim fails.[16]

Moreover, without specific or general causation, mental anguish and fear of cancer claims

---

conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required").

[12] *Knight v. Kirby Inland Marine Inc.*, 483 F.3d 347, 351 (5th Cir. 2007).

[13] *Kemp*, 2004 WL 2095618, at *3 (citing *Pick v. Am. Med. Sys., Inc.*, 958 F. Supp. 1151, 1164 (E.D. La. 1997)).

[14] *Pick*, 958 F. Supp. at 1164.

[15] *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996); *see also Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 279 n.10 (5th Cir. 1996) (noting importance of the expert knowing the level of exposure to support his causation opinion).

[16] *Pick*, 958 F. Supp. at 1163 (granting summary judgment as to specific causation); s*ee also Leija v. Penn Maritime, Inc.*, No. 06-10489, 2009 WL 211723, at *3 (E.D. La. Jan. 23, 2009) (granting summary judgment in favor of defendant when proposed expert testimony was insufficient to create an issue of fact as to specific causation); *Babin v. Ecolab, Inc.*, No. 2:04-CV-1595, 2005 WL 1629947, at *5 (W.D. La. July 5, 2005) (granting summary judgment when plaintiffs failed to establish that there is a genuine issue of material fact as to general causation).

fail as a matter of law, as do any claims for medical monitoring.  Mental anguish claims, which include the fear of cancer, must be causally related to a defendant's actions.[17]  Moreover, damages for mental anguish are only recoverable when that mental anguish results from the fear of developing a condition "as a result of a *present injury*."[18]  Damages for medical monitoring are only permitted when the monitoring procedures are "directly related to a manifest physical or mental injury or disease."[19]  Louisiana law also requires a "significant exposure to a proven hazardous substance" to succeed on a medical monitoring claim.[20]  When the underlying claims fail as a matter of law, there is nothing left to base medical monitoring damages on, and that claim should be dismissed as well.[21]

## III.   With Regard to Wright's Alleged Formaldehyde Exposure, All Claims for Damages Must be Dismissed Due to a Lack of Causation Testimony

Although Wright has identified a number of medical conditions which he alleges were caused by formaldehyde exposure, none of those conditions has both the general and specific causation testimony necessary to support the claim.  Dr. Williams, plaintiff's general causation

---

[17]  *Smith v. A.C. & S., Inc.*, 843 F.2d 854, 857-58 (5th Cir. 1988) (quoting *Hagerty v. L & L Marine Svcs., Inc.*, 788 F.2d 315, 318 (5th Cir. 1986)); *see also Maurer v. Heyer-Schulte Corp.*, No. 92-3485, 2002 WL 31819160, at *3 (E.D. La. Dec. 13, 2002) (causation is required for fear of cancer claims). "'[C]ancerphobia' is merely a specific type of compensable mental anguish or emotional distress." *Smith*, 843 F.2d at 858.

[18]  *Smith* , 843 F.2d at 858 (emphasis added).

[19]  La. Civ. Code Ann. Art. 2315(B) (2009).

[20]  *See Scott v. Am. Tobacco Co., Inc.*, 949 So.2d 1266, 1282-83 (La. App. 4 Cir. 2/7/07).

[21]  *See, e.g., Anderson v. Dow Chem Co.*, no. 06-30445, 2007 WL 1879170, at *5 (5th Cir. June 28, 2007) (affirming grant of summary judgment, including medical monitoring claim, when claims for mental anguish and increased risk of future disease were dismissed). Defendants will file a separate motion for summary judgment on the medical monitoring claim based on plaintiff's failure to meet the other requirements for medical monitoring damages.

expert[22], lists the following as cause-effect relationships:

> "A cause-effect relationship exists between formaldehyde and upper respiratory tract damage and cancer.
> A cause-effect relationship exists between formaldehyde and bronchoconstriction/asthma.
> A cause-effect relationship exists between formaldehyde and eczema.
> An association exists between formaldehyde and epistaxis.
> An association exists between epistaxis and cancer of the sinuses, nasal cavity, and nasal vestibule and wall.
> An association exists between mold exposure and nonallergic rhinitis."[23]

The obvious distinction that Dr. Williams draws in her analysis is the one between "cause-effect" as opposed to "association." According to the Federal Judicial Center's *Reference Manual on Scientific Evidence*, "it should be emphasized that an association is not equivalent to causation. . . .An association between exposure to an agent and disease exists when they occur together more frequently than one would expect by chance. Although a causal relationship is one possible explanation for an observed association between an exposure and a disease, an association does not necessarily mean that there is a cause-effect relationship."[24]

Dr. Williams is fully aware of the meaning of terms like "cause-effect relationship" and "association." She testified:

---

[22]  Williams confirmed her status as a general causation expert witness:
Q:     Okay. You have testified earlier, but I want to make sure that it's clear for the record, that you're here specifically and solely for the purpose of general causation, not specific causation, as it relates to Mr. Wright, correct?
A:     That's correct.
Deposition of Williams, dated 12/3/09, p. 64, attached as Ex. H.

[23]  *See* Williams report, p. 63-64, attached as Ex. A.

[24]  Michael D. Green, et al, "Reference Guide on Epidemiology," Federal Judicial Center 2000, *Reference Manual on Scientific Evidence, Second Edition*, at pp. 335-37, 348 (notations omitted).

Q:     Okay.   What's the difference between a cause and effect relationship and an association?

A:     Well, an association means that you cannot rise to the level of the Sir Bradford Hill causal considerations in the strength of association or in some other parameter, so that you can't give a definitive statement of cause and effect or causation.

****

Q:     In order to go from association to cause and effect, you need to reach two times on the Bradford Hill criteria, correct?

A:     Well, you need to have – And, I mean, you need to have – It not just the strength of association, but you have several considerations that you make.  It means in general terms that something is lacking that would not give it the status of causation if it met all or – It doesn't have to be all, but it has to meet a significant amount for you to make the call.
I am the expert.  For my purposes, it did not reach to the level that I would use, that I use, which is the Federal Court requirements, to rise to the level of causation.

Q:     So you know the difference between association and cause and effect as you wrote this report, correct?

A:     Correct.

* * * *

Q:     **The last three categories of your opinion, those do not rise to the level of cause and effect relationship?**

A:     **That's my expert opinion.**[25]

Dr. Williams has therefore identified a discrete set of conditions that, in her opinion, are causally linked to formaldehyde: (1) upper respiratory tract damage and cancer, (2) bronchocontriction/asthma and (3) eczema.**[26]**

---

[25]   *See* Deposition of Patricia Williams, dated 12/3/09, p. 73-77, attached as Ex. H.

[26]   Defendants have moved to strike Dr. Williams' supplemental opinions on formaldehyde's alleged causal link to leukemia.  It should be noted that Lyndon Wright has never

Of course, the next hurdle that plaintiff must clear is specific causation related to any or all

of these three conditions.  Dr. Farber has been withdrawn as a testifying expert, and, without his

testimony, plaintiff has no admissible specific causation related to Mr. Wright's alleged skin rashes

or eczema.[27]  Plaintiff's second specific causation expert, Dr. Spector, expressly concluded that

formaldehyde exposure did not cause Wright's tongue neuroma or episodes of bloody sputum.  He

explained:

> Q.   Doctor, you stated in your report
> that you cannot find or cannot attribute
> this neuroma to the alleged formaldehyde
> exposure, correct?
> A.   That's correct.
> * * * *
> Q.   As we sit here today, you can't
> say more probably than not what caused that
> particular neuroma, correct?
> A.   That's correct.
> * * * *
> Q.   And then about four paragraphs
> down from that you state that:  Based upon
> my medical knowledge, Mr. Wright's history,
> prior medical records and medical surgical
> examinations, I cannot find a source for his
> complaint of bloody mucous.  Is that true
> today?
> A.   It is.
> Q.   In addition, I cannot identify any

---

been diagnosed with leukemia.

[27]  Regardless of whether he is withdrawn or not, Dr. Farber's testimony in this case has no impact on the overall viability of plaintiff's dermatological claims, since there is no corresponding general causation testimony to support his opinions.  In her report, Dr. Williams only found a causal link between formaldehyde and eczema.  *See* Ex. A, p. 63-64.  Conversely, Dr. Farber only opined that Wright had an exacerbation of dermatitis; he never diagnosed Wright with eczema.  *See* Ex. B.  Just as with Drs. Williams and Miller, there is a lack of complete causation testimony  between Drs. Williams and Farber with respect to all of Wright's alleged dermatological conditions.

relationship between his exposure to
formaldehyde and his complaint of bloody
mucous or ear drainage.  Is that true today?
    A.   It is true today.[28]

Dr. Miller is thus the only specific causation expert left who can tie one of Dr. Williams'

general causation theories to a specific illness experienced by Mr. Wright.  However, Dr. Miller has

only offered a specific causation opinion regarding one condition: exacerbation of rhinosinusitis.

He testified:

    Q   Let me ask you this.  In your
final conclusion in your October 2nd report,
you state, "In summary, it is my
professional opinion that, within a
reasonable degree of medical probability,
the exposure to formaldehyde emissions
during his approximately 28 months of
residence in the FEMA trailer significantly
exacerbated Mr. Lyndon Wright's
rhinosinusitis," correct?
    A   That's correct.
    Q   Is that the only opinion that you
hold in this case?
    A   That's the only one certainly
stated here, yes.
    Q   And so if called upon to testify,
the only causal link that you can draw to
any of Mr. Wright's symptomatology is that
you believe exposure to some level of
formaldehyde caused an exacerbation of his
rhinosinusitis?
    A   That's what's stated here, yes.[29]

* * * *

    Q   I notice that there's no reference
to pulmonary disorders in your report.  Is

---

[28]  Deposition of Dr. Spector, p. 105; 128-29; 164, attached as Ex. E.

[29]  Deposition of Dr. Miller, p. 113-14, attached as Ex. G.

-14-

it a true statement that you didn't diagnose
Mr. Wright with any pulmonary disorder?

A    Let me be clear and see if I
understand what you mean.  Mr. Wright
certainly has some pulmonary symptoms.  Is
that what you mean?

Q    My question, again, may be
inartful, but I'm simply asking, did you
diagnose him with any pulmonary disorder?

A    With a specific pulmonary
diagnosis, I think is what you mean?

Q    Yes.

A    I did not.

Q    Other than rhinosinusitis, did you
diagnose any other condition, syndrome or
other medical issue with respect to
Mr. Wright?

A    He has a number, obviously, of
other illnesses that I believe are not
relevant here, but the answer to your
question is, putting those aside, no.**[30]**

Dr. Miller's report and testimony could not be clearer: exacerbation of rhinosinusitis is the

only condition caused by Mr. Wright's exposure to formaldehyde. [31] **Even if Dr. Miller is correct,**

**the simple fact is that Dr. Williams never addresses formaldehyde's relationship to**

**rhinosinusitis, or the exacerbation of rhinosinusitis, in either her expert report or**

**accompanying deposition.**  In fact, the word "rhinosinusitis" never appears in those sections of her

---

[30]  *Id.* at p. 118-19.

[31]  Plaintiff may note that Dr. Miller supplemented his report on January 12, 2010.
Defendants filed a separate motion to strike that supplemental report (Rec. Doc. 10321) and
hereby incorporate those arguments *in extenso.*  Regardless of the admissibility of that report,
though, the arguments made in this motion remain valid, since Dr. Miller did not provide any
additional specific causation testimony relating to any alleged injury.  Instead, his supplemental
report was limited to a discussion of Dr. Williams' report and Wright's alleged fear of cancer
claim.

report which discuss formaldehyde exposure.[32]  Plaintiff has committed a fatal error in failing to submit general causation testimony on rhinosinusitis, the one and only condition supported by specific causation testimony.  Because both specific and general causation are required, when the plaintiff fails to establish either one, the plaintiff's claim fails.[33]  Accordingly, all of plaintiff's claims arising from his alleged exposure to formaldehyde in the trailer must be dismissed as a matter of law.

## IV.   All Claims for Damages arising out of Wright's Alleged Mold Exposure in the Trailer Must Also be Dismissed Due to a Lack of Causation Testimony

Although Drs. Williams and Miller do not provide a harmonious analysis of medical causation with respect to formaldehyde, the opposite is true of causation issues related to mold.  Both experts agree: mold has no cause-effect relationship to any of Mr. Wright's alleged conditions.  Instead, mold is merely "associated" with one and only one condition, rhinitis.  This "association" link is not strong enough to provide causative support to plaintiff's mold claims, and those claims should therefore be dismissed.

With respect to mold exposure, Dr. Williams, plaintiff's general causation expert, lists the following:

"An association exists between mold exposure and nonallergic rhinitis."[34]

---

[32]  *See* Williams' report, p. 1-29, attached as Ex. A.

[33]  *Pick*, 958 F. Supp. at 1163 (granting summary judgment as to specific causation); s*ee also Leija v. Penn Maritime, Inc.*, No. 06-10489, 2009 WL 211723, at *3 (E.D. La. Jan. 23, 2009) (granting summary judgment in favor of defendant when proposed expert testimony was insufficient to create an issue of fact as to specific causation); *Babin v. Ecolab, Inc.*, No. 2:04-CV-1595, 2005 WL 1629947, at *5 (W.D. La. July 5, 2005) (granting summary judgment when plaintiffs failed to establish that there is a genuine issue of material fact as to general causation).

[34]  *See* Williams report, p. 63-64, attached as Ex. A.

This is the only opinion Dr. Williams provides on the topic of mold exposure.  As discussed above,

Dr. Williams is well versed in the important distinction between a causal link and an association.

Here, she is only able to opine that an association exists, and, as such, plaintiff has no general

causation testimony with respect to his mold exposure claim.

Further, even Dr. Miller, the only expert providing viable specific causation in this case,

could not point to literature to support a causal link between mold exposure and Wright's respiratory

symptoms.  He testified:

> Q    All right.  Let's talk a little
> bit about the October 2nd report.  On Page 6
> of the report, just above the paragraph
> wherein you list the complaints that
> Mr. Wright had, you state that "Mr. Wright
> was likely exposed to various fungal species
> while living in the trailer.  Exposure to
> fungi is associated with exacerbations of
> upper and lower airways disease, but
> limitations in the literature do not warrant
> a causal association."
>            Can you tell me what you meant by
> that, Doctor?
>     A    Well, very simply, that he was
> likely exposed to fungi.  Now, we know what
> the fungi were, you know, a year and some
> time after he left the trailer.  We can't
> know with certainty what they were prior to.
> And there certainly is -- There's no
> question about a literature existing on
> fungal toxins' effects on the respiratory
> tract.
>            **But in my understanding, that
> literature is not definitive at this point.
> There's a big literature.  It's not exactly
> clear what does what yet, so that's why I
> was hesitant to draw any conclusions at that
> point.**

-17-

Q   Okay.  When you say it does "not
warrant a causal association," is what
you're saying that if you were called upon
to testify, your testimony would be that
more probably than not there was no causal
association between exposure to fungi in
Mr. Wright's case and any of the symptoms
he's complaining of?

A   I wouldn't put it that way.  I
would say based on limitations in the
literature, we can't comment one way or the
other.

**Q   Okay.  You cannot say more
probably than not that fungi caused any of
the problems that Mr. Wright is complaining
of?**

**A   Right.**[35]

Like Dr. Williams, Dr. Miller does not offer any expert testimony to support the contention that mold

exposure caused any of Mr. Wright's alleged health problems.

Defendants question why the mold allegations were ever even included in this case, as

plaintiff clearly has **no** expert testimony – either general or specific – to support his contention that

mold in the trailer caused any health problems.  Recall that plaintiff interjected a mold claim into

what was designed to be a formaldehyde bellwether trial.  Plaintiff could and should have performed

an appropriate inquiry into the viability of his mold claims **prior** to amending his complaint and

causing all parties to expend the time, money and resources testing the trailer and assembling expert

reports.  Indeed, one call by opposing counsel to their existing team of experts would have told them

then what all the parties now know: there is no scientific literature that establishes a cause-effect

relationship between mold exposure and any of Mr. Wright's conditions.  Plaintiff's refusal to make

that call months ago, combined with his persistence in pursuing the mold claim throughout this

---

[35]  Deposition of Dr. Miller, p. 106-08, attached as Ex. G (emphasis added).

litigation, are inexcusable.  Defendants submit that all expert fees related to mold testing and analysis, as well as the fees for the expert reports, should be awarded as a result.[36]

In any event, given that neither specific nor general causation elements can be proven at trial, defendants assert that any and all claims related to mold exposure while in the trailer be dismissed as a matter of law.

## IV.   Plaintiff's Mental Anguish, Stress, Medical Monitoring and Fear of Cancer Claims Should also be Dismissed

As noted above, without specific or general causation, the claims for Wright's other mental damages also fail as a matter of law.  Mental anguish claims, which include the fear of cancer, must be causally related to a defendant's actions.[37]  Moreover, damages for mental anguish are only recoverable when that mental anguish results from the fear of developing a condition "as a result of a *present injury*."[38]  As discussed above, Wright has failed to carry his burden of proof to provide the expert causation testimony necessary to recover for any present injury.  Although a separate Motion for Summary Judgment will be filed relating to plaintiff's fear of cancer claims, the arguments made in this motion are sufficient to dismiss all of Wright's mental anguish claims, including those related to depression, anxiety, increased stress and fear of cancer.

Finally, although defendants will file a separate Motion for Summary Judgment with respect

---

[36]  Defendants request these costs in the instant Motion for Summary Judgment but will prepare a more formal Motion should the Court deem it necessary.

[37]  *Smith v. A.C. & S., Inc.*, 843 F.2d 854, 857-58 (5th Cir. 1988) (quoting *Hagerty v. L & L Marine Svcs., Inc.*, 788 F.2d 315, 318 (5th Cir. 1986)); *see also Maurer v. Heyer-Schulte Corp.*, No. 92-3485, 2002 WL 31819160, at *3 (E.D. La. Dec. 13, 2002) (causation is required for fear of cancer claims). "'[C]ancerphobia' is merely a specific type of compensable mental anguish or emotional distress." *Smith*, 843 F.2d at 858.

[38]  *Id.* at 858 (emphasis added).

to plaintiff's medical monitoring damages, defendants would note that the foregoing discussion of causation should also preclude plaintiff from recovering these damages as well.  Medical monitoring awards are only permitted when the monitoring procedures are "directly related to a manifest physical or mental injury or disease."[39]  Louisiana law also requires a "significant exposure to a proven hazardous substance" to succeed on a medical monitoring claim.[40]  When the underlying claims fail as a matter of law, there is nothing left to base medical monitoring damages on, so that claim should be dismissed as well.[41]  Because plaintiff has no viable avenue of recovery for his alleged damages due to a lack of expert medical testimony, his medical monitoring claims must also fail as a matter of law.

## CONCLUSION

Plaintiff has plainly failed to meet his burden under the LPLA and Louisiana negligence law to provide both general and specific causation testimony for any of his alleged injuries.  For the foregoing reasons, defendants ask the Court to grant summary judgment in their favor, dismissing all of plaintiff's claims with prejudice and assessing the costs of these proceedings against plaintiff.

---

[39]  La. Civ. Code Ann. Art. 2315(B) (2009).

[40]  *See Scott v. Am. Tobacco Co., Inc.*, 949 So.2d 1266, 1282-83 (La. Ct. App. 2007).

[41]  *See, e.g., Anderson v. Dow Chem Co.*, no. 06-30445, 2007 WL 1879170, at *5 (5th Cir. June 28, 2007) (affirming grant of summary judgment, including medical monitoring claim, when claims for mental anguish and increased risk of future disease were dismissed).

Respectfully submitted,


/s/  Jason D. Bone
Ernest P. Gieger, Jr. (No. 6154)
Jason D. Bone (No. 28315)
Carson W. Strickland (No. 31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*


/s/ M. David Kurtz
David Kurtz (No. 23821)
Karen K. Whitfield (No. 19350)
Catherine N. Thigpen (No. 30001)
Baker Donelson Bearman Caldwell & Berkowitz, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
*ATTORNEYS FOR SHAW ENVIRONMENTAL, INC*


## C E R T I F I C A T E

I hereby certify that on the 1st day of February, 2010, a copy of the foregoing *Memorandum in Support* was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.


/s/  Jason D. Bone
JASON D. BONE