UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER         * | | MDL NO. 1873 |
|     FORMALDEHYDE         * | | |
|     PRODUCTS LIABILITY   * | | |
|     LITIGATION           * | | SECTION:  N(5) |
| * | | |
| This Document Relates to: *Lyndon T. Wright  v.*  * | | JUDGE: ENGELHARDT |
| *Forest River, Inc., et al*, Docket No. 09-2977   * | | |
| * | | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**<u>MEMORANDUM IN SUPPORT OF FOREST RIVER, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFF'S MENTAL ANGUISH CLAIMS</u>**

**MAY IT PLEASE THE COURT:**

Defendant Forest River, Inc. (hereinafter "Forest River") has moved for partial summary judgment based on plaintiff's failure to show that there is any genuine issue of material fact regarding his mental anguish claims, including his fear of cancer claim.  First, plaintiff's mental anguish claims must fail, as plaintiff has not testified as to (1) any mental anguish caused by Forest River's actions or (2) a specific fear of cancer.  Moreover, plaintiff has not shown through either specific medical testing or, more generally, through epidemiological evidence, a causal link between the levels of formaldehyde he was allegedly exposed to while residing in the unit at issue and cancer. Finally, plaintiff has not shown that any alleged fear of cancer is reasonable as a matter of law. Accordingly, all of plaintiff's mental anguish claims, including his fear of cancer claim, against Forest River should be dismissed with prejudice.

## FACTUAL BACKGROUND

Lyndon Wright ("Plaintiff") has filed this suit alleging injuries resulting from exposure to formaldehyde in his Forest River manufactured trailer. Just as with the Gulf Stream and Fleetwood bellwether plaintiffs, Wright has included a fear of cancer claim among his alleged injuries. (Rec. Doc. 2128, para. 17). However, Forest River submits that both the factual and expert testimony in Mr. Wright's case present a unique scenario. As discussed more fully below, plaintiff's mental anguish and fear of cancer are not reasonable based on his level of formaldehyde exposure in the trailer. Even assuming, *arguendo*, that Wright's fear is legitimate, his mental state is the result of a myriad of other health problems which, by his own expert's admission, have no causal connection to his formaldehyde and/or mold exposure.

In the early stages of this litigation, plaintiff's expert psychologist, Dr. Edward Shwery, performed a psychological evaluation of Wright. In his July 2009 report, Dr. Shwery's "Summary and Recommendations" section included no mention of Wright's fear of cancer. Instead, he opined that, "Lyn is concerned that his health is deteriorating and the thought of becoming disabled and dependent on others for his welfare is alarming to him. The bone density issues are particularly of concern, as well as the continued blood in his mucus when he coughs. It is not clear whether or not living in the trailer had any impact upon his bone density issues, but I am concerned that if the bone density problems increase, it is very likely that this man will develop chronic pain disorder." Ex. A, Affidavit of E. Shwery, dated 7/21/09, p. 9-10.

Following the production of Dr. Shwery's first report, the parties deposed Dr. Charles Field, Wright's treating physician from 2000 to 2006. *See* Deposition of Dr. Field, dated 10/20/09, p. 9, 17, attached as Ex. B. Dr. Field confirmed that he had first diagnosed Wright with severe

osteoporosis in 2003. *Id.* at 60. He noted that, with regard to osteoporosis, Wright is "definitely at risk for getting worse." *Id.* at 78. Not surprisingly, Wright mentioned his concerns over this osteoporosis to Dr. Shwery during the July 2009 examination. It should be noted that none of plaintiff's experts have linked Wright's alleged formaldehyde and/or mold exposure to the development or exacerbation of Wright's osteoporosis.

Following Dr. Shwery's examination in July of 2009, Wright continued to complain of hemoptysis (spitting up blood) in his mucous upon waking in the morning. *See* Ex. C, Affidavit of Dr. Spector, dated 9/21/09, p.1. Wright has allegedly experienced this problem for the last few years. *See* Deposition of Lyndon Wright, dated 7/10/09, p. 298, attached as Ex. D. Plaintiff's expert otolaryngologist, Dr. Richard Spector, was concerned about a mass at the base of Mr. Wright's tongue and biopsied it in July 2009 in an effort to determine the potential cause of this problem. *See* Ex. C, Affidavit of Dr. Spector, dated 9/21/09, p. 2. In his subsequent expert report, Dr. Spector reached three conclusions: (1) the tongue mass was in fact a benign neuroma (2) the neuroma was not causally related to formaldehyde exposure and (3) he could not identify the source of Mr. Wright's current bloody sputum. *Id.* During the biopsy procedure, Dr. Spector also took a swab sample of plaintiff's nasal epithelial tissue. *See* Deposition of Dr. Spector, dated 10/29/09, p. 106-07, attached as Ex. E. That study revealed no evidence of malignancy or cellular damage of any kind, including but not limited to ciliated columnar epithelial cells. *Id.* at 106-108.

After receiving the results of the tongue biopsy, Wright saw Dr. Shwery again in September of 2009. Dr. Shwery concluded that Wright was suffering from increased anxiety, depression, and mental anguish when compared to his July exam. *See* Ex. F, Affidavit of E. Shwery, dated 9/24/09, p. 2. The recent biopsy clearly dominated Mr. Wright's thoughts, as Shwery noted:

> The need for surgical intervention and examination of a biopsy of the mass has crystalized many of the psychological issues with which Lyn had been coping more successfully prior to the surgery in late July, 2009.
> ....
> Lyn reports that he recently has become more depressed and is experiencing increased mental anguish compared to his mental status when I saw him two months ago.  When I inquired of his recent increase in depression he stated, "The lump, it worries me.  Dr. Spector wondered if it might have been cancer, so far it's not clear what it is.  When the doctor found it I started to worry that what if it is cancer.  Since the biopsy, I still have bleeding.  He (Dr. Spector) isn't sure what's causing the bleeding and he wants me to come back in six weeks until he figures out what it is.

*Id.* at p. 2.  In other words, when asked the cause of his increased depression, Wright identified the neuroma and his bloody mucous as the causes of his psychological issues.  As noted above, Dr. Spector did not causally relate either of these conditions to formaldehyde and/or mold exposure.  *See* Ex. C, Affidavit of Dr. Spector, dated 9/21/09, p. 2.

Finally, it is important to note that, in this case, no expert has offered any opinion or testimony that Wright has a specific increased risk of cancer or any other serious latent disease based on his particular levels of formaldehyde and/or mold exposure.  Recall that, in the Gulf Stream bellwether trial, Dr. Kornberg opined that plaintiff was seventeen times more likely to develop cancer as a result of formaldehyde exposure in the trailer:

> "Given the extent, amount and duration of [C.C's] exposure to formaldehyde, . . .
> it is my environmental medical opinion that [C.C.] should be afforded medical monitoring direct toward the early detection of cancer of the nasal passages.  This opinion is supported by my analysis . . . that illustrates the risk quotient (RQ) that compares [C.C.'s] 19 month formaldehyde inhalation dose to that inhalation dose based upon EPA cancer risk based concentration.  In my analysis RQ = 17.0.  This number simply means that over the 19 month period that [C.C.] was exposed in his FEMA-supplied trailer, he endured an exposure to formaldehyde that was 17 times the 30 year residential inhalation dose of formaldehyde that the EPA recognizes is associated with an increased lifetime cancer risk . . . ."

*See* Expert report of Dr. Kornberg, dated 5/19/09, p. 26-27, attached as Ex. G[1]. In this case, however, no expert has ever offered any opinions on this topic.[2]

As this brief summary demonstrates, there are key differences in the factual and legal support that Wright has presented when compared to the evidence offered by plaintiffs in the prior Gulf Stream and Fleetwood bellwether cases. As discussed below, Wright's claim for mental anguish damages, including fear of cancer, should be dismissed accordingly.

## LAW & ARGUMENT

I.   **Summary Judgment Standard**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be rendered if the pleadings, discovery, disclosure materials and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* Further, "It is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tx. Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976).

---

[1] Due to the local rules prohibiting reference to minors in pleadings filed with the Court, Forest River has withheld publication of Exhibit G. Should it be necessary, Forest River will provide a hard copy of Exhibit G for *in camera* inspection.

[2] For instance, while plaintiff's expert Dr. Patricia Williams comments on the alleged general causation link between formaldehyde and cancer, no expert has provided any specific causation testimony opining that Wright's particular levels of exposure to formaldehyde and/or mold will more likely than not result in an increased risk of cancer or any other serious latent disease.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.,* 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must go beyond the pleadings and through affidavits, depositions, answers to interrogatories, and admissions on file designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the

motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied,* 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002).

## II.  Plaintiff's Claim for Mental Anguish Damages Must be Dismissed

As stated above, plaintiff has made a claim for mental anguish damages, including a fear of cancer claim, as a result of alleged exposure to formaldehyde and/or mold in the trailer. However, none of plaintiff's self-described mental anguish damages has any connection to the conduct of Forest River. Further, under Louisiana law, a plaintiff must introduce some specific evidence of his genuine fear of developing cancerous conditions in the future. *Smith v. A.C. & S., Inc.*, 843 F.2d 854 (5th Cir. 1988). A plaintiff's fear of developing cancer must be *reasonable* and *causally related* to the defendant's negligence. *Id.* (emphasis added); *Maurer v. Heyer-Schulte Corp.*, 2002 WL 31819160, *3 (E.D.La. Dec. 13, 2002). Plaintiff has not presented evidence sufficient to demonstrate that 1) he has a genuine fear of cancer as a result of formaldehyde and/or mold exposure, 2) the amount of formaldehyde to which he was exposed can cause cancer, and 3) that his fear of cancer is reasonable.

> **A.  Plaintiff's own testimony regarding his alleged mental anguish damages reveals (1) Forest River did not cause any of these damages and (2) he has no genuine fear of cancer from exposure to formaldehyde and/or mold.**

A claim for mental anguish must be "sufficiently detailed" to allow a court to discern the basis of the claim for such damages. *Khalimsky v. Liberty Mut. Fire Ins. Co.,* 2009 WL 982641 at *9 (E.D. La. 4/13/09). Because any discussion of cancer is highly inflammatory and incites passions and fears of most reasonable individuals, it is critical that evidence of cancer only be admitted on those situations where the proper evidentiary guidelines are followed. *Smith, supra* at 859. In *Smith,* the plaintiff expressed concern about his future general health, testifying that he was growing weaker and had become short of breath over the past two to three years. However, he did not testify as to any specific fear of contracting cancer. *Id*. at 859. The Fifth Circuit found that the district court erred in allowing expert testimony on the reasonableness of his fear of cancer when the evidentiary foundation had not been laid. *Id*.

In this case, Lyndon Wright has not testified as to any specific fear of cancer. In his deposition, Wright was asked about the emotional issues related to his occupation of the unit.

> Q. Mr. Wright, you have also made a claim for emotional-related issues; is that correct?
> A. Yes.
> Q. Can you describe for me, if you would, the nature of the emotional-related issues that you feel are related to your occupancy of this particular unit.
> A. First of all, like, when I complained about the problems with the door and the mold, nobody ever responded to it. I had to keep trying to fix it myself, not

> knowing what I was trying to fix.
>    I mean, I would get bleach and water, trying to clean up the mold and it would come right back. The rainwater coming through the door, every time a maintenance man would come, they would say, "We'll have somebody come look at it, somebody will give you a call."
>    Nobody would call. When I'd see a maintenance person again, do it again.
>    Just basically sitting in the trailer with all the coughing and -- I'm not thinking I'm sick, but I have got this aggravating cough and it's making my head hurt.
>    And then, that little cooped-up trailer. And then when the blood started to coming through my mouth, I don't know why that's happening. So I'm just like aggravated.

Ex. D, Deposition of L. Wright, p. 233-34.

As this testimony demonstrates, Wright identified two causes of his mental anguish: failure of maintenance personnel to respond to his complaints with the trailer, and his bloody sputum. Forest River had no involvement with maintenance of the unit, and, as discussed above, the bloody mucus was not caused by formaldehyde or mold exposure.

Even assuming, *arguendo,* that Wright did develop a fear of cancer, Wright's current fiancé, Tyshone Marsh, testified that this fear came about recently and has nothing to do with his time in the trailer:

> Q   Has Lyndon ever told you he's scared that he's going to get cancer?
>    A   No, sir.
>    Q   Has Lyndon ever told you that he has a fear of cancer?
>    A   Yes.

    Q   When did he first tell you that?
    A   About a couple of months ago.
* **
    Q   What did he tell you?
    A   We was just talking about it and he was just saying.
    Q   Saying what?
    A   He was just talking. We was just talking about cancer and he was just talking how he feels, I guess.
    Q   What did he say?
    A   He was just saying he hope he don't ever get cancer. That's all he was just saying.
    Q   Is that all he said?
    A   Yes.
    Q   Did he say anything about that and the trailer?
    A   Huh-uh (negative response).
    Q   So he didn't say he had a fear of cancer because of the trailer?
    A   No, sir.

Deposition of T. Marsh, dated 1/14/10, p. 89-91, attached as Ex. H.

In sum, plaintiff's two sources of mental anguish – the maintenance issues and bloody sputum – are not cancer-related and certainly have no connection to Forest River's actions in this case. Even if one assume that Wright did have a fear of cancer, Wright's fiancé testified that this fear had no relation to his time in the trailer. Plaintiff's mental anguish claims against Forest River should be dismissed on these grounds.

Plaintiff will undoubtedly cite to Dr. Shwery's second report[3], wherein he notes that Mr.

---

[3] While Dr. Shwery's first report discussed the impact of Wright's osteoporosis on his mental health, that opinion is notably absent from Dr. Shwery's second report. It seems doubtful that osteoporosis – a potentially debilitating disease – was of significant concern to Wright in July of 2009 but no longer in September of 2009 when Dr. Shwery's second report was issued. In any event, like his neuroma and bloody mucous, no expert has ever linked Wright's osteoporosis to his formaldehyde and/or mold exposure. Accordingly, the mental anguish related

Wright expressed concerns over cancer.  *See* Ex. F, report of E. Shwery, dated 9/24/09, p. 2.  Forest River, however, contends that this new found fear of cancer has nothing to do with Mr. Wright's exposure to formaldehyde while living in the trailer.  **Instead, Mr. Wright's anxiety has been created due to a his neuroma and continued bloody mucus episodes – events which have nothing to do with formaldehyde or Wright's time in the trailer.**

As noted in Dr. Shwery's most recent report, it is the neuroma, not exposure to formaldehyde, which is driving his current fear of cancer.  The report stated, "When I [Dr. Shwery] inquired of his recent increase in depression [Wright] stated, 'The lump, it worries me.  Dr. Spector wondered if it might have been cancer, so far it's not clear what it is.  When the doctor found it I started to worry that what if it is cancer.  Since the biopsy, I still have bleeding.  He (Dr. Spector) isn't sure what's causing the bleeding and he wants me to come back in six weeks until he figures out what it is.'"  Shwery Report, attached as Ex. F.

Dr. Shwery went on to explain at his deposition that this recent biopsy was an issue that crystallized Wright's fears and anxiety:

> Q   The symptoms that he purportedly had while living in the trailer, he said to you that he initially related them to his prior health problems?
> A   Well, no, I think more what I saw was that he didn't have too much concern about them.  He would go to the doctor and take care of them.  But he thought that was all being taken care of, and then now to have this come up is what really triggered and crystallized some obsessions about it and some intense concerns, and he's now

---

to this condition – mental anguish acknowledged by Dr. Shwery – was not caused by the Forest River travel trailer.

worried, "What's been going on with me?" It's like "I thought it was one way. Now I'm not so sure."

Another way of saying that is in the past, his defenses have handled those things, and the more recent medical developments have overrode his defenses and they have been over -- They haven't been sufficient to contain all of this.

Q   So the development of a neuroma was the item that was the straw that broke the camel's back?

A   Yeah, I guess it -- The bleeding and the fact that he wasn't getting completely well would be one factor, and then this biopsy, this neuroma comes up, and he couldn't understand, he couldn't explain it away.  I don't know that it was one.  It was probably two or three things that culminated in his defenses aren't working as well as they used to.

Q   Let's make sure we got them all established.

A   Okay.

Q   Development of the neuroma?

A   Yes.

Q   The biopsy of the neuroma?

A   Right.

Q   Bleeding?

A   Correct.

Q   That's the bleeding that he reports bringing up some blood-colored mucus at some point in time when he wakes up in the morning?

A   Correct.

Q   Okay.  Anything else?

A   No.  I think it's that he started to look back and say, "Boy, there was a level, a heightened level of problems that never went away."  I think it's more kind of a clarity of perception that has developed with him.

Ex. I, Deposition of E. Shwery, 11/9/09, p. 73-75.

Mr. Wright's own words, both at deposition and at his visits with Dr. Shwery, combined with the opinions of Dr. Shwery, repeatedly underscore the fact that Mr. Wright's (1) recent biopsy and (2) continued bloody sputum are the sources of his current anxiety, not his exposure to formaldehyde. Wright has been forced to deal with a serious medical condition via the neuroma, and the resulting fear caused by this condition has naturally induced a fear of future medical injury. While this is unfortunate, this stress and fear have absolutely no relation to his exposure to formaldehyde in the trailer. The underlying medical conditions giving rise to plaintiffs's alleged fears are, according to plaintiffs own experts, not causally linked to Wright's alleged exposure to formaldehyde while residing in the unit at issue. Accordingly, plaintiff's claims for mental anguish and fear of cancer do not stem from an issue for which Forest River can be held liable.

**B.   Plaintiff Cannot Prove that the Level of Formaldehyde to which he was Exposed Causes Cancer**

Additionally, plaintiff cannot recover for fear of cancer, as he has not proven that the levels of formaldehyde to which he was exposed can cause cancer. Plaintiff must present "at least some reliable scientific evidence" to show that the disease could be caused by the defendant's actions. *See Maurer,* 2002 WL 31819160 at *3. "Mere speculation concerning an event cannot provide the basis for an award for anxiety." *Id.*

According to the U.S. Court of Appeals for the Fifth Circuit, reliable scientific evidence comes in the form of epidemiologic studies. *See Brock v. Merrell Dow Pharmaceuticals, Inc.*, 874 F.2d 307, 311 (5th Cir. 1989), cert. denied, 494 U.S. 1046 (1990). Courts consider epidemiologic studies to be crucial in establishing causation. *See, e.g., Maurer v. Heyer-Schulte Corp.,* 2002 WL

31819160 at *4-5 (noting that the plaintiff could not produce reliable scientific articles or human studies that supported her claim for fear of cancer).

Here, plaintiff has not presented sufficient evidence to prove that the levels of formaldehyde and/or mold to which he was allegedly exposed could cause cancer. First, no expert has offered any opinion or testimony that Wright has a specific increased risk of cancer or any other serious latent disease based on his particular levels of formaldehyde and/or mold exposure. In the Gulf Stream bellwether, Dr. Kornberg testified that plaintiff was seventeen times more likely to develop cancer. *See* Ex. G. Wright has failed to provide any such evidence. The only plaintiff expert who performed a review of the literature on formaldehyde and cancer, Dr. Williams, never even reviewed the testing data obtained from Wright's trailer.[4] Therefore, plaintiff will be unable to offer expert testimony regarding his particular cancer risk.

In fact, the only evidence produced in this case demonstrates that no cancer risk exists whatsoever. Dr. Spector testified that Wright's neuroma was not causally related to exposure to formaldehyde. *See* Ex. C, Affidavit of Dr. Spector, dated 9/21/09, p.1. Further, the International Association for Research on Cancer ("IARC") has not set forth an association between formaldehyde and nasopharyngeal carcinoma "NPC") at the levels that plaintiff was allegedly exposed to. Even Christopher DeRosa, MS, Ph.D., (an environmental health scientist for the CDC's Agency for Toxic Substances and Disease Registry ("ATSDR"), who has not been retained by either plaintiffs or defendants, testified that the IARC classification of formaldehyde as a known carcinogen is based primarily on a scientific study from the American Journal of Epidemiology entitled "Mortality from

---

[4] In other words, Dr. Williams never reviewed the formaldehyde air sampling results from Bill Scott or any other testing expert, and she thus would not have any way to link her general causation findings to Wright's particular exposure level.

Solid Cancers among Workers in Formaldehyde Industries." *See* Ex. J, Depo of DeRosa July 6, 2009, at p. 256-257. That study concluded that there was no association between formaldehyde and NPC below a peak exposure of *four thousand* parts per billion (or 4 ppm). *See Mortality from Solid Cancers among Workers in Formaldehyde Industries*, 159 AM. JOURNAL OF EPIDEMIOLOGY 1117 (2004), attached as Ex. K. Furthermore, the median duration of exposure in the study was 35 years. *Id*. at 119.

This dose and duration of exposure far exceed the dose and duration that plaintiff was exposed to. Wright only resided in his trailer from March of 2006 to July of 2008. *See* Ex. D, p. 298-99. Testing of plaintiff's trailer indicated levels of formaldehyde far below the levels referenced in the *Journal of Epidemiology* study. For instance, plaintiff's expert Bill Scott found levels of formaldehyde ranging from 0.048 ppm to a high of 0.13 ppm.[5] *See* Ex. L, Affidavit of Bill Scott, dated 10/2/09, p. 13. Air sampling conducted by Forest River's experts revealed levels between 0.035 and 0.044 ppm. *See* Ex. M, Expert report of Bill Dyson, dated 11/2/09, p. 13. Even assuming plaintiff's sampling is accurate, these results are not even close to that 4 ppm benchmark. Thus, although the study – and therefore, IARC – concludes that there is an association between this cancer and this substance, there is no basis to conclude the association would exist at the levels experienced by this plaintiff in this trailer. Thus, plaintiff has not produced sufficient evidence to recover for his fear of cancer claim.

---

[5] As discussed more fully in Forest River's Motion in Limine to exclude the testimony of Bill Scott, Forest River submits that Scott used an improper testing methodology to obtain these results. In particular, he refused to operate the air conditioning system or ventilate the unit, resulting in exaggerated formaldehyde levels that are not indicative of those that would have been experienced by Wright. However, even if one accepts Scott's numbers as accurate, they are far below the 4 ppm level discussed above.

C.     **Plaintiff's Fears of Cancer are Unreasonable**

Finally, even if one assumes that plaintiff has created genuine issues of fact with regard to his subjective fear and causation, Forest River asserts that his fear of cancer is unreasonable. In *Triche v. Overnight Transportation Co.*, this Honorable Court found that fear of cancer claims by two of three plaintiffs were unreasonable as a matter of law. 1996 WL 396041 (E.D. La. 1996). In *Triche*, three plaintiffs sought to recover for fear of cancer due to exposure to sodium bichromate, a compound that was "considered extremely carcinogenic." *Id.* at *1. One plaintiff was allowed to recover for fear of cancer, as he was covered in the substance and received burns as a result of his exposure. *Id.* at *4, 14-15. However, the Court dismissed the fear of cancer claims as to the other two plaintiffs because their fears of cancer were unreasonable. *Id.* The Court noted that each of these two plaintiffs received minimal exposure to the substance and that each sought a minimal amount of medical treatment. *Id.* The MSDS stated that respiratory protection was not normally needed with this substance and that the plaintiffs did not show they encountered an amount exceptional to this general standard. *Id.* at *14. In addition, the Court noted that the credibility of a plaintiff's anxiety over fear of cancer is "diminished" where the plaintiff smokes cigarettes - a known cause of cancer. *Id.*

Similarly, Wright's fear of cancer is unreasonable. As discussed above, plaintiff's real anxiety come from his tongue neuroma/cancer scare and the inability of his doctors to determine the cause of his continual bleeding. Moreover, the testing of the Wright trailer demonstrates that Wright was exposed to a minimal amount of formaldehyde while he resided there. Wright also lived with a smoker – his mother, Bobbie Wright – for the first sixteen years of his life. *See* Ex. D, Deposition of Lyndon Wright, p. 172-74. He now dates a woman who smokes in his car. *Id.* at 176. These

alternate exposures (at undoubtedly higher levels of formaldehyde[6]) are significant, and Wright's current fear of cancer claim based on his time living in the trailer accordingly, not reasonable. Plaintiff has likewise sought minimal medical treatment for this exposure. At the time of his deposition in July of 2009, Wright testified that he had not been to a doctor since January of 2009 and had no plans to see one in the future. *Id.* at 226-227. He has not scheduled a follow-up visit with Dr. Spector, nor has Dr. Spector (who admittedly established a physician-patient relationship with Wright) recommended that Wright consult a psychiatrist for further evaluation. *See* Deposition of Dr. Spector, p. 125-26; 156-57, attached as Ex. E. While Wright may claim he subjectively fears cancer, his actions cannot reasonably be construed as evidencing a fear of cancer. Thus, his mental anguish claims are unreasonable as a matter of law.

## **CONCLUSION**

Plaintiff Lyndon Wright has not testified that he subjectively has a genuine fear of cancer. Additionally, he has produced no evidence to show that he was exposed to a level of formaldehyde that could possibly cause cancer. Finally, even assuming he has shown the above, Wright has not demonstrated that any fear of cancer is reasonable. Accordingly, Forest River requests that his mental anguish claims, including his fear of cancer claim, be dismissed with prejudice.

---

[6] Formaldehyde is found in mainstream and side stream smoke from cigarettes at levels from 10 ppm to 279 ppm. *See* Ex. M, Report of B. Dyson, dated November 2, 2009, p. 3-4 (citing Godish, Formaldehyde Exposures from Tobacco Smoke: A Review. *Amer. J. Pub. Health* 79(8): 1044-45 (1989). This level is order of magnitude greater than the highest level of 0.13 ppm found by plaintiff's expert Bill Scott.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (La. State Bar Roll No. 6154)
JASON D. BONE (La. State Bar Roll No. 28315)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

## **C E R T I F I C A T E**

I hereby certify that on the 1st day of February, 2010, a copy of the foregoing *Memorandum in Support* was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone
JASON D. BONE