Transcript of the Testimony of
# Videotaped Deposition of Charles David Moore, PE, PLS

## Date taken: October 27, 2009

## In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Wright)

### **Note**
All **electronic deposition & exhibit files**
are available at **www.psrdocs.com**.
Please call or e-mail reporters@psrdocs.com if you need a
**Username** and **Password**.

# Professional Shorthand Reporters, Inc.

Phone:   504-529-5255
Fax:   504-529-5257
Email:   reporters@psrdocs.com
Internet:   www.psrdocs.com

EXHIBIT
"F"

In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Wright)          Videotaped Deposition of Charles David Moore, PE, PLS

Page 95

1    provide a lot of details as to what was

2    supposed to be done.

3            So in that regard, I would say

4    that there was a lack of direction, so then

5    that would lead to some interpretation, some

6    other things that Shaw could have done.  I

7    don't remember if the FEMA document

8    specifically talked about the jacking or

9    jacking it improperly.  I remember there

10   were several documents that talked about

11   improper jacking.

12       Q    Let me ask you to look at

13   Exhibit 6.  When you look at Section

14   2.1.2 -- do you see that, sir, on Exhibit 6?

15       A    Yes, sir.

16       Q    And it continues to the second

17   page, right?

18       A    Correct.

19       Q    Okay.  Leaving aside the jacking

20   for a moment, Section 2.1.2 adequately

21   describes the finished product, does not it?

22       A    It appears to, yes.

23       Q    Okay.  Anything about this trailer

24   that you think fails to comply with that

25   specification as it was installed?

Page 96

1      A    I don't know of anything that

2   would have been different, no.  I guess the

3   only thing that I see here that I really --

4   and again, I don't know -- is it says, "The

5   contractor will be responsible for all

6   necessary re-leveling and re-blocking for a

7   period of 90 days after final inspection."

8           I don't see -- I didn't see

9   anything that said that they either looked

10  at it or didn't look at it.  They may have

11  or they may not have.

12     Q    You don't know one way or the

13  other?

14     A    No, sir.

15     Q    You don't know whether Shaw went

16  back out there and releveled it or not, do

17  you?

18     A    No, I do not know.  As far as I

19  know, there was no documents that I saw that

20  indicated either way.

21     Q    Okay.  You don't know whether FEMA

22  went out there and checked to see if Shaw

23  had installed this trailer right, do you?

24     A    I think they had the FEMA

25  inspector there at the time of installation.

Page 97

1    After the installation, I don't know if they

2    went back or not.

3         Q    Okay.  So the person who inspected

4    the trailer at the time of installation

5    didn't find anything wrong with the

6    installation, did they?

7         A    I don't remember seeing that on

8    any of the documents, no.

9         Q    You probably would have noticed

10   that, wouldn't you?

11        A    I would think so, yes.  And, in

12   fact, I would think that that would be

13   noticed, that there should have been

14   additional work or should have been some

15   additional documents that were produced

16   until they got to a point to where they were

17   satisfied.

18        Q    Okay.  How far up did the trailer

19   have to be raised in order to install it on

20   piers of the description set forth in

21   Exhibit 6, Section 2.1.2?

22        A    The only thing that it really

23   talks about is it gives you the base, which

24   has to be three-quarters of an inch.  It

25   says that the piers will have at least two