UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
|    FORMALDEHYDE | * | |
|    PRODUCTS LIABILITY | * | |
|    LITIGATION | * | SECTION:  N(5) |
| | * | |
| This Document Relates to:  *Lyndon T. Wright  v.* | * | JUDGE: ENGELHARDT |
| *Forest River, Inc., et al*, Docket No. 09-2977 | * | |
| | * | MAG: CHASEZ |

*************************************************************************

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR MEDICAL MONITORING DAMAGES

**MAY IT PLEASE THE COURT:**

Defendants Forest River, Inc. ( "Forest River") and Shaw Environmental, Inc. ("Shaw") (hereinafter, "defendants") respectfully request that the Court dismiss plaintiff's claim for damages related to medical monitoring.  As detailed below, plaintiff has failed to provide the requisite evidence for several elements of his claim for medical monitoring and, consequently, his claim should be dismissed with prejudice.

### FACTUAL BACKGROUND

As the Court is well aware, this Multi-District Litigation is the consolidation of hundreds of federal toxic tort suits in which an estimated seventy thousand named plaintiffs claim to have inhabited emergency housing units ("EHUs") that were provided to them by the Federal Emergency Management Agency ("FEMA") as a result of the alleged uninhabitability of their residences due

to Hurricanes Katrina and Rita. (Rec. Doc. 109, at ¶ 96). Bellwether plaintiff Lyndon Wright originally filed suit in March of 2009; on April 6, 2009, the Court entered Pre-Trial Order No. 34, confirming Wright as a trial plaintiff. (Rec. Doc. No. 1299). On June 24, 2009, Wright filed a Motion for Leave to File First Supplemental and Amended Complaint, seeking to add new claims of mold exposure. (Rec. Doc. 1862). The Court granted that motion on July 17, 2009. (Rec. Doc. 2201).

As part of his amended complaint, plaintiff specifically seeks to recover for any and all costs associated with medical monitoring. *See* Rec. Doc. 2203, Plaintiff's Supplemental and Amended Complaint at ¶ 17(c). Despite these allegations, plaintiff has failed to establish evidence supporting any award of medical monitoring damages. Wright has not proven a current, manifest injury, nor has he produced any expert testimony describing a proposed medical monitoring regime or why it would be medically necessary in this case. As such, plaintiff cannot carry his burden of proof under Louisiana jurisprudence to recover medical monitoring damages, and his claim for medical monitoring damages should be dismissed with prejudice.

## LAW & ARGUMENT

### I.    Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be rendered if the pleadings, discovery, disclosure materials and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing

law." *Id.*  Further, "It is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tx. Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.,* 910 F.2d 167, 178 (5th Cir. 1990).  Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must go beyond the pleadings and through affidavits, depositions, answers to interrogatories, and admissions on file designate specific facts showing that there is a genuine issue for trial.  *Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F .3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party.  *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001).  Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  *See id.*  (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied,* 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002).

## II.   Louisiana law on medical monitoring

The Louisiana Supreme Court addressed a plaintiff's ability to recover costs associated with medical monitoring in *Bourgeois v. A. P. Green Industries, Inc.* 716 So. 2d 355 (La. 1998). In *Bourgeois*, plaintiffs sought the establishment of a judicially administered fund to pay for the costs of periodic medical monitoring due to asbestos exposure. In authorizing recovery for such damages, the Supreme Court enunciated a list of criteria that a plaintiff must meet in order to recover medical monitoring damages. These criteria must be proven through competent expert testimony. *Id*. at n. 14. The criteria are:

(1)     Significant exposure to a proven hazardous substance.

(2)     As a proximate result of this exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease.

(3)     Plaintiff's risk of contracting a serious latent disease is greater than (a) the risk of contracting the same disease had he or she not been exposed and (b) the chances of members of the public at large of developing the disease.

(4)     A monitoring procedure exists that makes early detection of the disease possible.

(5)     The monitoring procedure has been prescribed by a qualified physician and is reasonably necessary according to the contemporary scientific principles.

(6)     The prescribed monitoring regime is different from that normally recommended in the absence of exposure.

(7)     There is some demonstrated clinical value in the early detection and diagnosis of the disease.

*Id*. at 360-361.

In 1999, the Louisiana Legislature passed Act 989, which added the following provision to Louisiana Civil Code Article 2315 imposing an additional requirement for a plaintiff to meet in order to recover for medical monitoring:

> Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are *directly related to a manifest physical or mental injury or disease*. (Emphasis added).

*See* La. Civ. Code Art. 2315(B).  Thus, in order to recover damages for medical monitoring, plaintiff must suffer a "manifest" physical injury which directly relates to the need for medical monitoring. The plaintiff must then establish, through expert testimony, each of the criteria in *Bourgeois*.

## III.   Plaintiff has failed to present sufficient evidence to support an award of medical monitoring damages.

Plaintiff has failed to created a genuine issue of material fact with regard to several elements of his claim for medical monitoring damages.  First, plaintiff has not suffered any "manifest physical or mental injury" which would allow for recovery of medical monitoring damages.  Secondly,

plaintiff cannot meet at least four of the seven *Bourgeois* criteria.  As such, plaintiff's claim for medical monitoring damages must fail as a matter of law and should be dismissed.

### A.       Plaintiff has not shown a manifest physical or mental injury.

Plaintiff has not met his threshold burden of showing that his claim for medical monitoring directly relates to a manifest injury.  Although detailed more fully in defendants' Motion for Summary Judgment regarding causation,[1] plaintiff's specific and general causation experts have never reached a consensus on those injuries allegedly caused by formaldehyde/mold and experienced by Wright.[2]  The only medical condition identified by a specific causation expert as being related to Wright's formaldehyde exposure is exacerbation of rhinosinusitis.[3]  *See* Expert report of Dr. Miller, dated 10/2/09, p. 7, attached as Ex. A.  However, plaintiff's only general causation expert, Dr. Patricia Williams, never opines on the link between rhinosinusitis and formaldehyde.  *See* Expert report of Dr. Williams, p. p. 63-64, attached as Ex. B.  As a result, plaintiff cannot present complete causation testimony for any medical injury whatsoever.  Because the underlying claims fail as a matter of law, there is nothing left to base medical monitoring damages on, so that claim should be dismissed as well.[4]

---

[1]  Of course, should that Motion for Summary Judgment regarding causation be granted, plaintiff's claim for medical monitoring damages would necessarily be dismissed as well.

[2]  In a toxic tort case, the plaintiff must prove both general causation and specific causation – and must do so with competent expert testimony.  *Knight v. Kirby Inland Marine Inc.*, 483 F.3d 347, 351 (5th Cir. 2007).

[3]  Plaintiff has not provided any specific causation testimony linking his alleged mold exposure in the trailer to any of his current medical symptoms.

[4]  *See, e.g., Anderson v. Dow Chem Co.*, no. 06-30445, 2007 WL 1879170, at *5 (5th Cir. June 28, 2007) (affirming grant of summary judgment, including medical monitoring claim, when claims for mental anguish and increased risk of future disease were dismissed).

**B.     The Plaintiff has not and cannot prove all the *Bourgeois* criteria.**

Even if the Court were to find that plaintiff has suffered manifest physical injuries sufficient to support a claim for medical monitoring, his claim for medical monitoring damages is unsubstantiated, as he is unable to meet at least four of the seven criteria established in *Bourgeois*. As discussed more fully below, plaintiff has not satisfied the second, third, fifth and sixth elements necessary to establish a claim for medical monitoring damages.[5]

**i.  *Bourgeois* Criteria #2:  As a proximate result of this exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease.**

Plaintiff has not met the second criterion, as he has not presented expert testimony that he has suffered a "significantly increased risk" of contracting a serious latent disease.  While a plaintiff need not quantify this increased risk or prove a certain probability of actually suffering harm, he must show a *significant degree* of increased risk.  *See Bourgeois, supra* at 360 (emphasis added).  A plaintiff cannot recover for a slightly increased risk.  *See Lilley v. Board of Supervisors of Louisiana State University*, 735 So.2d 696, 706 (La. App. 3 Cir. 1999).

In this case, no expert has offered any opinion or testimony that Wright has an increased risk of a serious latent disease, let alone that such risk is "significant."  Recall that,  in the Gulf Stream bellwether trial, Dr. Kornberg opined that plaintiff was seventeen times more likely to develop cancer as a result of formaldehyde exposure in the trailer:

> "Given the extent, amount and duration of [C.C.'s] exposure to formaldehyde, . . .
> it is my environmental medical opinion that [C.C.] should be afforded medical monitoring
> direct toward the early detection of cancer of the nasal passages.  This opinion is supported

---

[5] Defendants' decision to focus on *Bourgeois* criteria #2, 3, 5, & 6 does not mean that the other criteria have necessarily been met by plaintiff.  For instance, defendants have consistently argued that the formaldehyde exposure in the trailer was never "significant" per the language of criterion #1.   For the purposes of the instant motion, however, defendants have elected to focus on four of the seven criteria.

by my analysis . . . that illustrates the risk quotient (RQ) that compares [C.C.'s] 19 month formaldehyde inhalation dose to that inhalation dose based upon EPA cancer risk based concentration. In my analysis RQ = 17.0. This number simply means that over the 19 month period that [C.C.] was exposed in his FEMA-supplied trailer, he endured an exposure to formaldehyde that was 17 times the 30 year residential inhalation dose of formaldehyde that the EPA recognizes is associated with an increased lifetime cancer risk . . . ."

*See* Expert report of Dr. Kornberg, dated 5/19/09, p. 26-27, attached as Ex. C.[6]  In this case, however, no expert has ever offered any opinions on this topic.[7]  Thus, plaintiff's claim does not meet the second criterion of the *Bourgeois* test.

> **ii.  *Bourgeois Criteria #3***:  **Plaintiff's risk of contracting a serious latent disease is greater than (a) the risk of contracting the same disease had he or she not been exposed and (b) the chances of members of the public at large of developing the disease.**

Likewise, plaintiff has not presented any evidence to show that the risk of disease resulting from alleged formaldehyde and mold exposure in the trailer is greater than the risk had he not been exposed to formaldehyde and mold in the trailer.  No expert offered by the plaintiff has attempted to quantify the increased risk of Wright contracting a future disease, nor has plaintiff developed any evidence that his alleged exposure to formaldehyde while residing in the Forest River unit at issue placed him at an increased risk of developing any malady when compared with the general population.  Plaintiff admits that he lived with a cigarette smoker – his mother, Bobbie Wright – for the first sixteen years of his life, and she smoked roughly a pack per day.  *See* Ex. D, Depo. of

---

[6]Due to the local rules prohibiting reference to minors in pleadings filed with the Court, Forest River has withheld publication of Exhibit C.  Should it be necessary, Forest River will provide a hard copy of Exhibit C for *in camera* inspection.

[7]  For instance, while plaintiff's expert Dr. Patricia Williams comments on the alleged general causation link between formaldehyde and cancer, no expert has provided any specific causation testimony opining that Wright's particular levels of exposure to formaldehyde and/or mold will more likely than not result in an increased risk of cancer or any other serious latent disease.  This lack of expert testimony is fatal to Wright's claim for medical monitoring damages.

Lyndon Wright, p. 172-74; Depo. of Bobbie Wright, p. 123, attached as Ex. E.  Even now, Wright dates a woman who smokes in his presence.  *See* Ex. D, Depo. of Lyndon Wright at 176.  These alternate exposures, at undoubtedly higher levels of formaldehyde[8], are significant, especially when compared to the relatively low levels of formaldehyde that testing revealed in the Forest River trailer.[9]  As such, plaintiff cannot prove that the risk of any disease due to his time in the trailer is greater than the risk he suffers due to other exposures.  Therefore, he cannot meet the third criterion of the *Bourgeois* test.

> **iii.  *Bourgeois Criteria #5*:  The monitoring procedure has been prescribed by a qualified physician and is reasonably necessary according to the contemporary scientific principles.**

Perhaps most glaringly, plaintiff has failed to meet the fifth criterion.  **<u>No expert has prescribed any medical monitoring of plaintiff for any latent disease due to his alleged exposure to formaldehyde or offered any opinion on the subject.</u>**  Among plaintiff's three specific causation experts[10], only Dr. Miller will be able to testify that Wright suffered an injury from formaldehyde exposure, namely, exacerbation of rhinosinusitis.  However, even Dr. Miller has not made any recommendations for future care:

---

[8]  Formaldehyde is found in mainstream and side stream smoke from cigarettes at levels from 10 ppm to 279 ppm.  *See* Ex. F, Report of B. Dyson, dated November 2, 2009, p. 3-4 (citing Godish, Formaldehyde Exposures from Tobacco Smoke: A Review.  *Amer. J. Pub. Health* 79(8): 1044-45 (1989).

[9]  In October of 2008, plaintiff's expert, Bill Scott, tested Wright's unit and obtained a formaldehyde measurement of 0.048 ppm.  *See* Ex. G, Affidavit of Bill Scott, dated 10/2/09, p. 13.  Scott retested the unit in August 2009 and measured levels between 0.095 and 0.13 ppm.  *Id.* In other words, even using plaintiff's own test results (numbers which defendants contend are inflated due to plaintiff's manipulation of the trailer's indoor air temperature), the formaldehyde concentration in the trailer is orders of magnitude lower than the 10 ppm to 279 ppm emitted from cigarette smoke.

[10]  Plaintiff has withdrawn Dr. Farber as a testifying expert in this case.

>  Q    Just to be clear, after the
>  July meeting with Mr. Wright, you made no
>
>  recommendations to him for his future care,
>  correct?
>  A    I did not.

Deposition of Dr. Lawrence Miller, p. 39, attached as Ex. H.

Dr. Richard Spector, an otolaryngologist (ENT), examined Mr. Wright to address two specific ailments at issue in this case.  First, Dr. Spector biopsied a mass at the base of Mr. Wright's tongue in the late summer of 2009.  His ultimate diagnosis was that the mass was a benign neuroma, possibly induced by stress or due to heredity, but in no way caused by formaldehyde or mold exposure.  *See* Spector report, dated 9/21/09, p. 1-2, attached as Ex. I; *see* Deposition of Dr. Spector, p. 105; 128-29; 164, attached as Ex. J.  Additionally, he investigated the cause of Wright's recurring bloody sputum.  Dr. Spector was unable to find the source of this blood, and he testified that there is no causal link between that bloody sputum and formaldehyde/mold exposure.  *Id.*  He stated:

>  Q.   Doctor, you stated in your report
>  that you cannot find or cannot attribute
>  this neuroma to the alleged formaldehyde
>  exposure, correct?
>  A.   That's correct.
>  * * * *
>  Q.   As we sit here today, you can't
>  say more probably than not what caused that
>  particular neuroma, correct?
>  A.   That's correct.
>  * * * *
>  Q.   And then about four paragraphs
>  down from that you state that:  Based upon
>  my medical knowledge, Mr. Wright's history,
>  prior medical records and medical surgical
>  examinations, I cannot find a source for his
>  complaint of bloody mucous.  Is that true
>  today?
>  A.   It is.

> Q.   In addition, I cannot identify any
> relationship between his exposure to
> formaldehyde and his complaint of bloody
> mucous or ear drainage.  Is that true today?
> A.   It is true today.

Deposition of Dr. Spector, p. 105; 128-29; 164, attached as Ex. J.

While Dr. Schwery, plaintiff's psychologist, has prescribed future psychotherapy for a few years following this litigation, this treatment does not relate to the monitoring of any serious latent disease, only Wright's alleged future mental anguish.  *See* Report of Dr. Edward Schwery, dated 9/24/09, p. 5, attached as Ex. K.  In sum, no medical expert has prescribed a medical monitoring regime or offered any opinion on the need for the same, and, as a result, plaintiff has failed to present evidence of the fifth criterion.

### iv.  *Bourgeois Criteria #6:*  **The prescribed monitoring regime is different from that normally recommended in the absence of exposure.**

Additionally, even if the Court were to find that an expert has prescribed a monitoring scheme, any alleged monitoring scheme would not be different from that normally recommended to Wright absent any formaldehyde/mold exposure.  A plaintiff must demonstrate that his increased risk of disease warrants medical monitoring beyond that which an individual should pursue as a matter of general good sense and foresight.  *Bourgeois, supra* at 361.  Here, plaintiff's own treating physician, Dr. Charles Field, recommended *at least* two doctor's visits per year to monitor Wright's osteoporosis – a condition (1) which predates his time in the trailer and (2) which no expert has causally related to either mold or formaldehyde exposure in the Forest River trailer.  Deposition of Dr. Charles Field, at p. 60-61, attached as Ex. L.  Dr. Field testified:

> Q.   So due to the fact that he has
> osteoporosis, in your medical opinion,
> Doctor, he should be seen by a doctor on a

regular basis; is that correct?
A.  Right, correct.
Q.  And how often would you recommend
that he sees a doctor for his osteoporosis?
A.  Every year.  Well, even more often
than that for his osteoporosis.
Q.  Maybe twice a year?
 A.  At least twice a year.

*Id.* at p. 78.

As plaintiff already should visit his doctor twice a year for the various medical conditions unrelated

to this litigation, any medical monitoring would be unnecessarily duplicative and not causally related

to plaintiff's allegations against defendants.  Consequently, plaintiff fails to meet the sixth criterion.

## **CONCLUSION**

As is detailed above, plaintiff has not presented evidence of a current manifest physical

injury, nor has he met the criteria for medical monitoring damages under *Bourgeois*.  As a result, the

motion for partial summary judgment should be granted in favor of defendants, and plaintiff's

medical monitoring claims should be dismissed with prejudice.

Respectfully submitted,

/s/  Jason D. Bone
Ernest P. Gieger, Jr. (No. 6154)
Jason D. Bone (No. 28315)
Carson W. Strickland (No. 31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

/s/ M. David Kurtz
David Kurtz (No. 23821)
Karen K. Whitfield (No. 19350)
Catherine N. Thigpen (No. 30001)
Baker Donelson Bearman Caldwell & Berkowitz, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
*ATTORNEYS FOR SHAW ENVIRONMENTAL, INC*

## C E R T I F I C A T E

I hereby certify that on the 1st day of February, 2010, a copy of the foregoing Memorandum in Support was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/  Jason D. Bone
JASON D. BONE