UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N(5)<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO:<br>*Lyndon Wright v. Forest River, Inc., et al.,*<br>No. 09-2977 (E.D. La.) | MAGISTRATE CHASEZ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**STATEMENT OF UNCONTESTED MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON
<u>SHAW ENVIRONMENTAL, INC.'S STATUS AS A GOVERNMENT CONTRACTOR</u>**

Defendant, Shaw Environmental, Inc. (hereinafter referred to as "Shaw"), submits the following statement of uncontested material facts in connection with its motion for summary judgment based on the government contractor defense.

1.  Following Hurricane Katrina, Plaintiff's mother, Bobbie Wright, received emergency housing assistance from FEMA.[1]

---

[1] Rec. Doc. No. 2203, ¶¶ 4-5 (Wright's First Supplemental and Amended Complaint).

2. FEMA provided a travel trailer manufactured by Forest River, Inc., bearing VIN No. 4X4TSMH296C008992, to Plaintiff's mother, Bobbie Wright, as emergency housing ("the Trailer").[2]

3. On September 30, 2005, FEMA and Shaw executed the Individual Assistance/Technical Assistance Contract ("IA/TAC") under which Shaw would provide certain services for disaster relief anywhere in the United States, pursuant to individual task orders issued by FEMA.[3]

4. In response to Hurricane Katrina, FEMA issued Task Order 15 to Shaw to provide staging support, hauling, installation, maintenance, and deactivation services to further FEMA's operational objective of providing emergency housing solutions for citizens displaced by the hurricane.[4]

5. Exhibit 7 to the Performance Work Statement, which is attached to the IA/TAC as Attachment A ("Exhibit 7") sets forth precise specifications directing the exact manner for Shaw to install the travel trailers, including detailed requirements for delivery, blocking and leveling, anchoring and straps, utilities hook-ups (including sewer, water, and electrical), steps, winterization, handicap ramps/platform steps, and numerous other minor tasks to make the trailer trailers ready for occupancy (RFO).[5]

---

[2] *Id.* at ¶ 17. *See also* Affidavit of Geoffrey C. Compeau, ¶ 15, attached hereto as Exhibit A (the "Compeau Affidavit").

[3] Compeau Affidavit, ¶¶ 2, 4-5 (Exhibit A) and Exhibit 1 thereto.

[4] Compeau Affidavit, ¶¶ 6-7 (Exhibit A) and Exhibit 2 thereto.

[5] Compeau Affidavit, ¶¶ 9-10 (Exhibit A) and Exhibit 3 thereto.

6. In Exhibit 7, FEMA directed Shaw to install the travel trailers on concrete piers constructed in a precise fashion.[6]

7. Shaw had no role in developing, testing or engineering any aspect of Exhibit 7 or any other aspect of FEMA's instructions to place the travel trailers on concrete blocks.[7]

8. Additionally, FEMA provided Shaw with a pier diagram prepared by Terry Zien of the U.S. Army Corps of Engineers. Shaw was never directed or asked to, and therefore never undertook, to perform any engineering services concerning this diagram.[8]

9. Shaw was assigned the task of delivering, installing and making ready for use the EHU assigned to Bobbie Wright, Plaintiff's mother.[9]

10. The Trailer was picked up at FEMA's designated staging area and installed at 2315 Seminole Lane, New Orleans, Louisiana, on November 21, 2005, by one of Shaw's subcontractors.[10]

11. Shaw retained qualified and experienced subcontractors to perform the actual installation of travel trailers, including the Trailer. Shaw utilized a rigorous quality control program that checked each trailer to ensure that it met the requirements of Exhibit 7 precisely.[11]

---

[6] Compeau Affidavit, ¶ 10 (Exhibit A) and Exhibit 3 thereto.

[7] *Id*.

[8] Compeau Affidavit, ¶ 11 (Exhibit A) and Exhibit 4 thereto.

[9] Compeau Affidavit, ¶ 13 (Exhibit A).

[10] Compeau Affidavit, ¶ 17 (Exhibit A) and Exhibit 8 thereto.

[11] Compeau Affidavit, ¶ 20 (Exhibit A).

12. Specifically, Shaw had a construction lead who worked with each subcontractor and who checked the work of that subcontractor. Additionally, Shaw separately inspected, or had one of its subcontractors inspect, every single installation during the "Ready for Occupancy" (or, "RFO") process. Finally, during the "lease-in" process, Shaw or its subcontractor would check the trailer again, this time with the occupant present.[12]

13. The RFO Checklist indicates that the Trailer was blocked on concrete piers, anchored with the required straps, and utilities installed (i.e. sewer, water, and electricity) as well as propane tanks, battery and metal steps. This document confirms that the Trailer had been installed in accordance with Exhibit 7.[13]

14. Plaintiff confirmed that he participated in a "walk-through" of the Trailer with Shaw (or its subcontractor) and found nothing to be wrong with the Trailer.[14]

15. Plaintiff signed off on the Trailer and was leased-in on February 13, 2006.[15]

16. Plaintiff contends that he began living in the Trailer in March 2006.[16]

17. FEMA sent an inspector out to the Wright Trailer on February 21, 2006, to conduct an inspection. The Trailer passed that inspection.[17]

---

[12] *Id.*

[13] Compeau Affidavit, ¶ 21 (Exhibit A) and Exhibit 10 thereto.

[14] Deposition of Lyndon Wright, pp. 96-97, 102-103, 258-259, 265, 267, attached hereto as Exhibit B (the "Wright Deposition").

[15] Compeau Affidavit, ¶ 22 (Exhibit A) and Exhibit 13 thereto.

[16] Wright Deposition, p. 73 (Exhibit B).

[17] Compeau Affidavit, ¶ 23 (Exhibit A) and Exhibit 14 thereto.

4

18. Exhibit 10 to the Performance Work Statement, which is attached to the IA/TAC as Attachment A, ("Exhibit 10") sets forth specifications governing the maintenance of EHUs.[18]

19. After Plaintiff moved into the Trailer, Shaw maintained it for less than three months, until June 1, 2006, when C. Martin Company assumed maintenance responsibility.[19]

20. During the period of Shaw's maintenance, Plaintiff lodged no formaldehyde or other odor-related complaints; indeed, he reported only one maintenance issue – a broken furnace that was repaired to his satisfaction.[20]

21. Further, the Preventative Maintenance Form ("PMI"), which was signed by a representative of C. Martin, indicates that no maintenance issue existed at the time of the MDC Turnover with respect to the Trailer.[21]

22. Plaintiff lived in the trailer for over two more years after the MDC turnover.[22]

23. Even at the end of that period, Plaintiff and his mother continued to sign off on inspection reports from other contractors and/or subcontractors, confirming that nothing was wrong with the Trailer.[23]

---

[18] Compeau Affidavit, ¶ 12 (Exhibit A) and Exhibit 5 thereto (Exhibit 10 to Performance Work Statement, Attachment A to Section J of the IA/TAC).

[19] Affidavit of Allison Hansen, ¶¶ 4-12, attached hereto as Exhibit C (the "Hansen Affidavit") and Exhibits 1 and 2 thereto.

[20] Compeau Affidavit, ¶¶ 24-26 (Exhibit A) and Exhibits 15 and 16 thereto.

[21] Hansen Affidavit, ¶¶ 5, 11 (Exhibit C) and Exhibit 3 thereto.

[22] Wright Deposition, pp. 73, 132 (Exhibit B).

[23] Crown Roofing Services, Inc. Maintenance Records, pp. 7, 9-10, 12, attached hereto as Exhibit D.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

  /s/ M. David Kurtz
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000

**ATTORNEYS FOR DEFENDANT,
SHAW ENVIRONMENTAL, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2010, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.

  /s/ M. David Kurtz