UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N(5)<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO:<br>*Lyndon Wright, et al. v. Forest River, Inc.,*<br>*et al.,* No. 09-2977 | MAGISTRATE CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

STATE OF WASHINGTON
KING COUNTY

### AFFIDAVIT OF GEOFFREY C. COMPEAU

1. My name is Geoffrey C. Compeau. I am above the age of majority, and I make this Declaration based on facts that are within my own personal knowledge. I am competent to testify concerning the subject matter set forth in this Affidavit.

2. I worked as the Program Manager with respect to the Individual Assistance/Technical Assistance Contract, HSFEHQ-05-D-0573, ("IA/TAC" or "the Contract") between Shaw Environmental, Inc. ("Shaw") and FEMA. I am personally familiar with the scope of Shaw's work under the Contract.

**EXHIBIT "A"**

3. In my capacity as the Program Manager, I had access to the records that Shaw kept as a part of its normal business operations with respect to the services that Shaw performed under the Contract.

4. Shaw executed the Contract with FEMA on September 30, 2005. The IA/TAC contained specifications that, among other things, contemplated that Shaw would assist FEMA in the providing of emergency housing to disaster victims as directed by task order; for example, through the delivery and installation of FEMA travel trailers, park models, and mobile homes for purposes of providing emergency housing units ("EHUs") to citizens displaced by Hurricanes Katrina and Rita. Shaw could not deviate from the contract specifications without FEMA's review and approval.

5. Attached to this Affidavit as Exhibit "1" (SHAW-000373-393, 000430-451) is a true and correct copy of certain relevant portions of the IA/TAC.

6. Task Order number HSFEHQ-05-J-0015, commonly referred to as Task Order 15, was issued to Shaw under the Contract. It directed Shaw to perform certain services related to hauling, installing and maintaining EHUs in Louisiana. A true and correct copy of Task Order 15 is attached to this Affidavit as Exhibit "2" (SHAW-000633-640).

7. Under Task Order 15, Shaw's obligation was to pick up specific EHUs, which FEMA identified in work orders by vehicle identification numbers and bar codes, from a FEMA staging yard and install each EHU at a FEMA-designated location.

8. I assisted with the management and implementation of Shaw's services to FEMA under the IA/TAC and Task Order 15.

9. Exhibit 7 to the Performance Work Statement of the IA/TAC governs the installation of travel trailers. A true and correct copy of Exhibit 7 entitled "TRAVEL TRAILER INSTALLATION" is attached hereto to this Affidavit as Exhibit "3" (SHAW-000480-489).

10. Exhibit 7 to the IA/TAC contains the detailed specifications directing how travel trailers in general, and the Wright travel trailer in particular, were to be delivered, installed, blocked, leveled, anchored, attached to utilities, outfitted with steps or handicap ramps/platform steps, winterized, and otherwise be made ready for occupancy. Specifically, Exhibit 7 directed Shaw to install the travel trailers on six piers constructed in a precise fashion. Exhibit 7 was provided by FEMA as part of the IA/TAC specifications, and Shaw had no role in developing, testing or engineering any aspect of Exhibit 7.

11. Additionally, Shaw was provided with a drawing prepared by Terry R. Zien of the U.S. Army Corps of Engineers depicting the pier construction specified in Exhibit 7. Shaw was never directed or asked to, and therefore never undertook to perform engineering services concerning the blocking diagram. A true and correct copy of the pier construction diagram prepared by Terry R. Zien is attached to this Affidavit as Exhibit "4" (SHAW-002020).

12. Exhibit 10 to the Performance Work Statement of the IA/TAC governs the maintenance of EHUs. A true and correct copy of Exhibit 10 entitled

3

"MAINTENANCE-TEMPORARY HOUSING UNITS" is attached to this Affidavit as Exhibit "5" (SHAW-000505-519).

13. Pursuant to the IA/TAC and Task Order 15, Shaw was assigned the task of delivering, installing, and making ready for use the EHU assigned to Bobbie Wright, the mother of Plaintiff Lyndon Wright.

14. Shaw's records include installation and maintenance records for the EHU assigned to Bobbie Wright ("the Trailer").

15. The FEMA Unit Inspection Report, dated November 19, 2005, and attached hereto as Exhibit "6" (SHAW-WRI-00008), is a record kept by Shaw in the normal course of business and reflects that the Trailer assigned to Bobbie Wright was a travel trailer owned by FEMA and manufactured by Forest River, Inc., bearing VIN No. 4X4TSMH296C008992. This record also indicates that, when FEMA received the Trailer, it was new.

16. The FEMA Temporary Housing Unit Inspection Report, dated November 20, 2005, and attached hereto as Exhibit "7" (SHAW-WRI-00024), is a record kept by Shaw in the normal course of business and reflects that, upon Shaw's receipt of the Trailer on that date at a staging yard, there was no damage to the Trailer.

17. The Manhattan Site Trailer Delivery List, attached hereto as Exhibit "8" (SHAW-WRI-00025), is a portion of a record kept by Shaw in the normal course of business and reflects that the Trailer was picked up at Shaw's staging area on the Westbank and installed by Shaw's subcontractor, RCG Enterprises, at 2315 Seminole Lane, New Orleans, Louisiana, on November 21, 2005.

4

18. The Unit Delivery Ticket, attached hereto as Exhibit "9" (SHAW-WRI-00026), is a record kept by Shaw in the normal course of business and reflects that the Trailer was delivered to 2315 Seminole Lane, New Orleans, Louisiana, designated as Site Control number 03-011544.

19. Due to the difficulties that Entergy experienced in restoring electrical power to the area where the Wright trailer was located, the unit could not be powered up and made ready for occupancy until February 2006.

20. Shaw retained qualified and experienced subcontractors to perform the actual installation of travel trailers, including the Trailer. Shaw utilized a rigorous quality control program that checked each trailer to ensure that it met the requirements of Exhibit 7 precisely.

21. Shaw used three checklists to ensure that it complied with the specifications in Exhibit 7 of the IA/TAC. The RFO checklist, dated February 12, 2006 and attached hereto as Exhibit "10" (SHAW-WRI-00010), is a record kept by Shaw in the normal course of business and reflects that the Trailer was blocked on concrete piers, that it was level, that it was anchored with the required straps, and that the utilities were installed (i.e. sewer, water, and electricity) as well as a battery. The purpose of this document was to ensure that the Trailer had been installed in accordance with FEMA's specifications. The document shows that it was. The Trailer Lease Check In List and the Bobbie Wright RFO Checklist, attached hereto as Exhibits "11" and "12" (SHAW-WRI-00009 and SHAW-WRI-00011), are also records Shaw kept in the

normal course of business and further reflect that the Trailer was in good condition during the lease-in process.

22. The FEMA Temporary Housing Unit Inspection Report, dated February 13, 2006 and attached hereto as Exhibit "13" (SHAW-WRI-00007), is a record Shaw kept in the normal course of business. This document was used by Shaw to record the condition of the Trailer upon lease in. As shown by Lyndon Wright's signature (he signed his mother's name), the condition of the Trailer was new, other than one scratch and dent.

23. The AFO DHOPS Master Expedite List, dated March 31, 2006, and a portion of which is attached hereto as Exhibit "14" (SHAW-WRI-00029), is a record Shaw kept in the normal course of business and indicates that FEMA sent a representative to the Trailer on February 21, 2006, to conduct an inspection. The Trailer passed that inspection.

24. The FEMA Maintenance Transition Report, a portion of which is attached hereto as Exhibit "15" (SHAW-WRI-00049-50), is a record Shaw kept in the normal course of business and indicates that Shaw conducted monthly inspections of the Trailer in April 2006 and May 2006, with no problems noted.

25. In addition, Exhibit 15 and the Call Center Maintenance Requests Form dated March 19, 2006 (a record Shaw kept in the normal course of business), attached hereto as Exhibit "16" (SHAW-WRI-00015-16), indicate that Plaintiff made only one call to the maintenance center after the Trailer was installed and during the time Shaw was responsible for maintenance of Trailer. The maintenance call involved an issue with

the furnace, which was repaired by one of Shaw's subcontractors. As shown by Lyndon Wright's signature on the Call Center Maintenance Requests Form, the issue involving the furnace was resolved.

26. Shaw's records also indicate that Plaintiff reported no odor-related problems, formaldehyde or otherwise, with respect to Trailer.

27. During May 2006, FEMA elected to separately contract maintenance responsibility for trailers installed at private sites directly to "Maintenance and Deactivation Contractors," or "MDCs." After June 1, 2006, full responsibility for the Trailer had been turned over to C. Martin Company (an MDC), with the full knowledge and acceptance of FEMA. After June 1, 2006, Shaw had no further responsibilities or obligations with regard to the Trailer. After June 1, 2006, Shaw did not maintain the Trailer in any way. Moreover, Shaw did not deactivate the Trailer.

28. Shaw did not produce, make, fabricate, construct, design, remanufacture, recondition or refurbish the Trailer.

29. Shaw did not label the Trailer as its own or otherwise hold itself out to be the manufacturer of the EHU.

30. Shaw did not exercise control over, or influence a characteristic of, the design, construction or quality of the Trailer.

31. Shaw did not select the types of structures, such as travel trailers, park models and mobile homes, which FEMA chose to use to house disaster victims following Hurricanes Katrina and Rita.

32. Shaw played no role in selecting manufacturers from whom FEMA purchased travel trailers or any other structures FEMA utilized as temporary housing following Hurricanes Katrina and Rita.

33. Shaw never took title to the travel trailers, park models, and mobile homes that FEMA utilized as temporary housing following Hurricanes Katrina and Rita.

Pursuant to 28 U.S.C. § 14.46, I declare under penalty of perjury that the foregoing is true and correct.

*[signature]* Ph.D.

**Geoffrey C. Compeau**

SWORN TO AND SUBSCRIBED before me, Notary Public, at Seattle, this 1st day of ~~January~~ February, 2010.

> Notary Public
> State of Washington
> **CRAIG LUCHINETTI**
> MY COMMISSION EXPIRES
> January 13, 2013

*[signature]* NOTARY PUBLIC

8