UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N(5)<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO:<br>*Lyndon Wright, et al. v. Forest River, Inc.,*<br>*et al.*, 09-2977 (E.D. La.) | MAGISTRATE CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**SHAW ENVIRONMENTAL, INC.'S MEMORANDUM IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT REGARDING FAILURE TO WARN**

**MAY IT PLEASE THE COURT:**

Shaw Environmental, Inc. ("Shaw") moves this Court for a partial summary judgment dismissing all claims against it arising from the notion that Shaw failed to warn him about the dangers of formaldehyde, for the simple reason that Shaw never had knowledge that there was a formaldehyde danger and accordingly had no duty to warn Plaintiff about it. Moreover, Shaw's activities were strictly specified and limited by the contract between it and FEMA; that contract did not impose upon Shaw any duty to investigate possible dangers or warn about them. Because Shaw's actions complied with its contract, Shaw is entitled to immunity under the government contractor defense with regard to all failure to warn claims.

## **INTRODUCTION AND BACKGROUND**

Plaintiff alleges that Shaw failed to warn him of the presence of formaldehyde in the EHU provided to Plaintiff's mother, in which Plaintiff resided (the "Trailer"). Specifically, Plaintiff asserts that "Shaw took no actions to warn or communicate to Lyndon that the particle board, medium density fiber board, hard wood plywood and other wood products used inside the Trailer [were] made of urea formaldehyde adhesive and these products [would] release formaldehyde gas inside the trailer. . . ."[1] This alleged failure to warn purportedly resulted in Plaintiff's exposure to formaldehyde.

As a preliminary matter, a failure to warn claim necessarily presumes that the defendant is aware of a danger. There is no evidence that Shaw had any such knowledge; specifically, Shaw had no knowledge that the Trailer contained a dangerous level of formaldehyde (which is itself an unsupported supposition by Plaintiff that Shaw denies).

Indeed, there was nothing in particular about the Trailer, or any others like it, that would have reasonably led Shaw to suspect that they were dangerous in any way. After all, FEMA had used trailers in numerous prior disasters as a means of providing emergency housing assistance, and those trailers posed no danger to their occupants. Beyond that, of course, there are many thousands of travel trailers in public use, and Shaw had (and still has) no knowledge that those trailers are harmful to their occupants.

Plaintiff presumably will point to the fact that some trailers "smelled new," and that Shaw often aired out trailers to remove odors. This is hardly evidence that the Trailer (or trailers generally) posed a danger to their occupants. The process of airing out trailers reduced the post-

---

[1]   C.A. No. 09-2977, Rec. Doc. No. 2203 (Wright's First Supplemental and Amended Complaint), ¶ 16.

production odors – the "new smell" – effectively. To claim that merely airing something out to reduce a smell is equivalent to knowledge of a danger is pure argument, not evidence, and certainly this sort of argument is insufficient to withstand summary judgment.

In any event, Plaintiff testified that he noticed the "new smell" himself when he received the Trailer:

> Q. Did you smell anything unusual at that time, February 13, 2006?
>
> A. It had like this new smell.
>
> Q. Like a new car smell?
>
> A. Yeah.
>
> Q. Now, is the new smell the same as or different from the wet carpet odor that you were talking about with Mr. Bone earlier?
>
> A. Different? Yes. It was definitely different.
>
> * * *
>
> Q. Okay. Did you think that the new smell was irritating enough to be a problem?
>
> A. Being excited with getting in the trailer, no, I didn't really see it would be a problem, a new smell and everything.[2]

Thus, there was nothing to warn Plaintiff about with respect to the smell itself – he smelled it.

Nevertheless, Plaintiff alleges that Shaw should have issued a warning at the time Plaintiff took possession of the Trailer (at "lease-in"), or perhaps some time during the three following months, when Shaw was maintaining the Trailer. Therefore, a brief recitation of the facts relating to lease-in and maintenance is necessary to place this motion in the proper factual context.

---

[2]   Deposition of Lyndon Wright, pp. 267-268, attached hereto as Exhibit D.

Both the lease-in process and maintenance are strictly governed by the terms of the Shaw-FEMA "Individual Assistance/Technical Assistance Contract" ("IA/TAC").[3] Lease-in is the culmination of the "Ready for Occupancy" or "RFO" process, by which Shaw (directly or through its subcontractors) tested the condition and functioning of each EHU and then transferred it to the occupant. The following is FEMA's instruction with respect to making the travel trailer ready for occupancy ("RFO"):

> **2.1.9   Make Travel Trailer Ready for Occupancy (RFO)**
>
> **i)   Assemble Accessories and Arrange for Use:**
> (a) Arrange all furniture for occupancy;
> (b) Clean and mount storm window panels;
> (c) Install drawers;
> (d) Remove window clips; travel blocking and protective taping;
> (e) Hang fire extinguisher (report low charge to FEMA inspector);
> (f) Mount exterior light fixtures, and install bulbs;
> (g) Install interior light globes and covers;
> (h) Install screens;
> (i) Re-install any fallen curtains;
> (j) Install cabinet door panels and other knockout panels;
> (k) Install commode tank lid; and
> (l) Repair, if necessary, cabinet/door/drawer hardware.
>
> **ii)   Activate Utility Systems and Make Minor Repairs (All parts changed must be of the same quality)**
> (a) Test water system and make minor repairs (i.e., tighten, adjust, or replace fittings flare nuts, faucet washers, ball cocks, shower diverters, faucet sets, etc.);
> (b) Verify hot/cold water lines, reverse if required;
> (c) Tighten or replace loose drain line connections (traps, strainer assemblies, etc.);
> (d) Replace commode wax ring and tank gaskets, as needed;
> (e) Tighten loose connections in electrical system; and

---

[3]   Affidavit of Geoffrey Compeau, attached hereto as Exhibit A (the "Compeau Affidavit"). Exhibits 1 and 2 to that Affidavit are true and correct copies of relevant portions of the IA/TAC between FEMA and Shaw. Exhibit 3 attached to that Affidavit is a true and correct copy of Exhibit 7 ("Travel Trailer Installation") to Section J, Attachment A – Performance Work Statement, of the IA/TAC.

> (f) Test electrical circuits and replace bulbs, breakers, switches, or receptacles, as needed.
>
> **iii)** **Test Appliances and Appurtenances**:
> (a) Activate, test and make any necessary minor repairs to the refrigerator, range, furnace, air conditioners, and water heater for proper operations. Adjust pilots and burners, change orifices, water heater elements, etc., as needed;
> (b) Test smoke detector and replace if faulty. Defective smoke detectors provided by FEMA or manufacturer upon receipt of damaged one; and
> (c) Test exhaust fans for proper operation, repair as needed.
>
> **iv)** **Final Clean-Up and Readiness:**
> (a) Clean floors, counters, kitchen equipment, bath fixtures, and windows as needed;
> (b) Perform any other minor work required to prepare the unit for occupancy (i.e., door adjustments, refasten molding and panels, etc.);
> (c) Remove unit packing debris and excess set-up material from premises; and
> (d) Report major discrepancies or missing items to FEMA inspector.

Obviously, there is no obligation in these specification to issue warnings during this process, or even to test for possible dangers.

Notably, Plaintiff does not claim that Shaw failed to warn its customer, FEMA – after all, FEMA knew that trailers were built with products that used urea-formaldehyde before Katrina,[4] and it is undisputed that Shaw responded to FEMA's satisfaction when FEMA asked about formaldehyde.[5] After Shaw's response, FEMA did not tell Shaw (or the other contractors) that it ought to be warning occupants, or that the levels of formaldehyde in EHUs were potentially dangerous.

---

[4] Deposition of Martin McNeese, pp. 107-108, attached hereto as Exhibit B.

[5] Email from William Deane to Brian Boyle, dated March 21, 2006, attached hereto as Exhibit C.

The IA/TAC also imposed no testing or warning obligation upon Shaw during the maintenance period. Exhibit 10 to Section J, Attachment A – Performance Work Statement, of the IA/TAC ("Exhibit 10") required Shaw to, among other things:

- "Provide maintenance services of units assigned by FEMA. This maintenance services contract includes performing monthly preventative maintenance, inspections responding to routine and emergency maintenance calls and making repairs as required for units assigned to the contractor and/or identified by FEMA."

- "Maintain records pertaining to the tasks assigned..."

- "Perform other tasks as required by the COTR [Contracting Officers' Technical Representative] ...."

- "Operate and supply the resources for a maintenance call center …."

- "Make repairs identified by FEMA."[6]

Shaw complied with Exhibit 10 throughout the period that it maintained the Trailer, which lasted only until June 1, 2006.[7] In fact, during the period of Shaw's maintenance, Plaintiff reported only one maintenance issue -- a broken furnace that was repaired to his satisfaction.[8] Thus, as of June 1, 2006, the time the Trailer was no longer Shaw's responsibility to maintain, Plaintiff had not notified Shaw of any formaldehyde or even any other odor-related issues in the Trailer.

There is no evidence that Shaw ever became aware of a dangerous condition in the Trailer, whether at the time of lease-in or during maintenance, and therefore it cannot be held responsible for a "failure" to warn.

---

[6] Compeau Affidavit, Exhibit A. Attached to that Affidavit is a true and correct copy of Exhibit 10 ("Maintenance-Temporary Housing Units") to the Performance Work Statement, which is Attachment "A" to the IA/TAC.

[7] Affidavit of Allison Hansen, ¶¶ 4-12, attached hereto as Exhibit E and Exhibits 1 and 2 thereto.

[8] Compeau Affidavit, ¶¶ 24-26, Exhibit A and Exhibits 15 and 16 thereto.

## LAW AND ARGUMENT

### I.  Summary Judgment Standard

Summary judgment is proper when there is "no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law."[9]  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[10]  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[11]

The moving party must initially demonstrate that no genuine issue of material fact exists and identify those portions of the record which it believes show the absence of a genuine issue of material fact.[12]  However, once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."[13]  To satisfy this burden, the non-movant must proffer *sufficient* evidence to show that a reasonable jury could find in its favor - that is, that "reasonable jurors could find by a preponderance of the evidence

---

[9]  Fed. R. Civ. P. 56(c).

[10]  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).

[11]  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citations and internal quotations omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.") (citations omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.

[12]  *Celotex Corp.,* 477 U.S. at 323; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

[13]  *Id.* at 322.

7

that the plaintiff is entitled to a verdict."[14]  Of course, unsubstantiated assertions do not constitute competent summary judgment evidence.[15]

## II. Shaw Owed No Duty to Warn.

### A. Louisiana Law Imposes No Duty to Warn on Shaw.

Louisiana has adopted a duty-risk analysis in determining whether to impose liability for any negligence claim, including failure to warn.  For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element).[16]  Under this analysis, the plaintiff must affirmatively prove each element of the duty-risk approach.[17]  A negative answer to any one of these inquiries results in a determination of no liability.[18]  Plaintiff

---

[14] *Anderson,* 477 U.S. at 249-50, 252.  *See also Frakes v. Crete Carrier Corp.,* 579 F.3d 426, 430-431, (5th 2009) ("[P]laintiff has the burden to put forth sufficient evidence to create a genuine dispute" as to a material fact); *Florida Dep't of Ins. v. Chase Bank of Texas Nat'l Ass'n,* 274 F.3d 924, 928 (5th Cir. 2001) ("After a defendant properly moves for summary judgment, the non-movant plaintiff must bring forward sufficient evidence to demonstrate that a genuine issue of material fact exists on every element of a claim."); *Ginsberg 1985 Real Estate P'ship v. Cadle Co.,* 39 F.3d 528, 531 (5th Cir. 1994) (citation omitted) ("An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party.")

[15] *Abbott v. Equity Group, Inc.* 2 F.3d 613, 619 (5th Cir. 1993) (*citing Celotex Corp.*, 477 U.S. at 324).

[16] *Pinsonneault v. Merchants & Farmers Bank*, 01-2217 (La. 4/3/02), 816 So.2d 270, 276; *Barasich v. Columbia Gulf Transmission Co.*, 467 F. Supp. 2d 676, 691, (E.D. La. 2006).

[17] *Sciacca v. Rite Aid Corp.*, 2003 WL 282362 * 10 (E.D. La. 2003).

[18] *Hanks v. Entergy Corp.*, 06-0477 (La. 12/18/06), 944 So.2d 564, 579; and *Joseph v. Dickerson*, 99-1046, 99-1188 (La. 1/19/2000), 754 So.2d 912, 916.

cannot prove any of these essential elements for his failure to warn claim; however, for purposes of this motion, Shaw will focus solely on the duty element.

Shaw owed no duty to warn Plaintiff of any danger posed by formaldehyde in the Trailer. The existence of a duty to warn is a question of law.[19] Under general tort law principles, there is no duty to warn strangers of dangers, no matter how grave or imminent.[20] A cause of action for failure to warn does not exist unless there is an affirmative duty to provide a warning.[21]

Except for situations where a duty is created by a contract, the only situation in which Louisiana courts have imposed a duty to warn upon a contractor for a dangerous condition not created by the contractor is one in which the contractor acquired ***actual knowledge*** of a defect in its work. For example, in *Tenneco Oil Co. Chicago Bridge & Iron Co,* the court held "that a contractor who acquires knowledge of a danger inherent in the ordinary use of that which he constructed has a duty to warn, at the very least, the owner. He also has a duty to warn if he has knowledge that the owner's actual use of that which he constructed creates a danger where the owner's use would otherwise be considered normal."[22] Leaving aside for the moment the fact that Plaintiff is not the owner of the Trailer, it is clear that the *Tenneco Oil* court was focusing on the fact that the contractor there had actually acquired knowledge of a danger. This only makes sense, because it would be illogical to impose upon a contractor a duty to warn third persons about a danger of which the contractor was unaware.

---

[19] *Perez v. Michael Weinig, Inc.*, 2005 WL 1630018 *6 (W.D. La. 2005).

[20] *Miles v. Melrose*, 882 F.2d 976, 992 (5th Cir. 1989) (citing the RESTATEMENT (SECOND) OF TORTS).

[21] *Audler v. CBS Innovis, Inc.*, 519 F.3d 239, 254 (5th Cir. 2008).

[22] 495 So.2d 1317, 1326 (La. App. 4th Cir. 1986).

Plaintiff cannot provide evidence that Shaw knew of dangerous levels of formaldehyde in the Trailer, or in trailers generally. As a result under Louisiana law, Shaw had no duty to warn.

Smelling something in the Trailer (or in other trailers) does not change this result. Just being aware of an odor is simply not the same thing as having knowledge of a danger to human health. Shaw was indeed aware of post-production odors in trailers; that is precisely why Shaw aired them out. But this smell – often described as a "new smell" or a "new car smell" – certainly was not indicative of danger, especially when one considers the many disasters in which FEMA had previously used trailers as a principal means of providing housing assistance to disaster victims,[23] not to mention the thousands of new-smelling trailers on the road that do not seem to harm anyone.

Again, Plaintiff himself was aware of the new smell and thought little of it. Plaintiff testified that upon entering the Trailer for the first time he noticed a "new car smell."[24] However, Plaintiff was not alarmed by this smell.[25] Further, Plaintiff never made any odor-related complaints (formaldehyde or otherwise) during the three months Shaw maintained the Trailer.[26] If Plaintiff, the person who lived in the Trailer day-in and day-out, was not aware of any problems associated with this "new car smell," there is no reason to attribute to Shaw any knowledge that the smell was dangerous.

---

[23] Deposition of David Garratt, p. 207, attached hereto as Exhibit F.

[24] Wright Deposition, p. 267, Exhibit D.

[25] Wright Deposition, p. 268, Exhibit D.

[26] Compeau Affidavit, ¶¶ 25-26, Exhibit A and Exhibits 15 and 16 thereto.

Put simply, there is no evidence to suggest that Shaw ever "acquired knowledge" of dangerous levels of formaldehyde in the Trailer. As such, Louisiana law imposes no duty to warn on a contractor such as Shaw.

### B.     The IA/TAC Imposed No Duty to Warn.

Shaw anticipates that Plaintiff will argue that the existence of a contract between Shaw and FEMA imposes upon Shaw a duty to warn Plaintiff. Even assuming for purposes of this motion that the IA/TAC could create such a duty, that duty would be defined by the Contract itself. The Contract is very specific as what Shaw must do in the process of making the Trailer ready to be occupied by Plaintiff. Specifically, Exhibit 7, § 2.1.9 (quoted above) provides a long, specific list of tasks that Shaw was required to perform in order for a travel trailer to be made ready for occupancy. Exhibit 10 provides similarly detailed specifications for maintenance. Nowhere does the IA/TAC call for air testing or other investigation into possible dangers; nowhere does the IA/TAC call for Shaw to issue warnings.

Plaintiff relies on hindsight to claim that just because Shaw had a contract with FEMA to help provide disaster assistance that Shaw should have done something beyond that contract – test for formaldehyde and then warn occupants. But given that Shaw had no actual knowledge of dangerous levels of formaldehyde, Plaintiff's argument may be seen for what it is – equivalent to saying that Shaw should have investigated and warned about every conceivable danger in trailers, just because it had a contract with FEMA. Imagine the disruption that would have ensued had Shaw shut down the housing assistance effort in order to test every trailer for all possible airborne contaminants. Again, in the absence of *actual knowledge* of a danger, there is

11

simply no support for imposing upon a contractor the duty to discover and then warn about dangers.[27]

Plaintiff cannot expand Shaw's duty to warn beyond those dangers about which Shaw had actual knowledge simply by referring to the IA/TAC. Testing for formaldehyde was not required under the IA/TAC; nor was investigating or warning about possible dangers in trailers. Shaw complied with all of its duties under the IA/TAC, and no duty to warn Plaintiff can be inferred from that contract.

### III. The Government Contractor Defense Bars Plaintiff's Failure to Warn Claim

The Supreme Court in *Boyle v. United Tech. Corp.*, 487 U.S. 500, 505-06 (1988) formulated the elements of the government contractor defense, which immunizes contractors from tort liability under certain conditions. The *Boyle* court reasoned that government contractor defense applies when: (1) the government approved reasonably precise specifications; (2) the work conformed to those specifications; and (3) the contractor warned the government about the dangers and the use of the equipment that were known to the contractor but not to the government. [28] The first two factors of the defense assured that the government and not the contractor is exercising discretion in selecting the design. The third element is necessary to eliminate any incentive that this defense would create for contractors to withhold knowledge of risks.[29] If the contractor satisfies these three conditions, the nature of the contractor's work

---

[27] Again, Shaw does not concede that there ever was an actual formaldehyde danger in the Trailer, or in trailers generally.

[28] 487 U.S. at 501.

[29] *Id.* at 512.

(military, non-military, service or procurement) is irrelevant. The defense applies with equal force to failure to warn cases.[30]

In *In Re Air Disaster at Ramstein Air Base, Germany*, the Fifth Circuit held that a "conflict between state law and federal policy might arise if there is evidence that the government was involved in the decision or not to give a warning."[31]  The Court adapted the *Boyle* test to fit failure to warn claims, holding that the government contractor defense applies if: (1) the government exercised discretion and approved the warnings; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned about dangers it knew, but the government did not.[32]

Additionally, the government contractor defense applies in "situations in which the government makes the informed decision not to include a specification or require a warning because, in the government's view, one would be unnecessary or problematic."[33] After Plaintiff had begun to occupy his unit, FEMA learned of certain odor-related/formaldehyde complaints in travel trailers occupied by other residents. FEMA asked Shaw and the other IA/TACs what they were doing to air out these travel trailers. Shaw responded, and FEMA was satisfied with that response. In fact, FEMA was well aware of the presence of formaldehyde in trailers before this time.[34] Under these circumstances, because FEMA had not issued, or asked Shaw to issue, a

---

[30] *Bynum v. FMC Corp.*, 770 F.2d 556, 574 n. 24 (5th Cir. 1985); *Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431, 431 (5th Cir. 2000).

[31] 81 F.3d 570, 576 (5th Cir. 1996).

[32] *Kerstetter,* 210 F. 3d at 438.

[33] *Kerstetter,* 210 F. 3d at 438 (citing *Tate v. Boeing Helicopters*, 140 F.3d 654, 660 (6th Cir. 1998)).

[34] McNeese Deposition, pp. 107-108, Exhibit B.

formaldehyde warning, Shaw cannot be held liable for not having done so on its own.[35] The first two elements of *Boyle* are met.

To satisfy the third condition of the government contractor defense, the contractor must show only that it knew of no "reasons not known to the government why the application" of the approved plans and specifications were "unsafe or unreasonable."[36] Importantly, however, *Boyle*'s third condition does not oblige the contractor to test for or discover inherent risks that neither the United States nor its contractor ever considered to be unsafe.[37] Rather, the contractor must warn the United States only "of dangers about which it has *actual knowledge,*" and not about dangers which, in hindsight, the contractor allegedly *should have* identified.[38]

Again, there is absolutely no evidence or documentation showing that Shaw had ***actual*** knowledge of problems with formaldehyde in the Trailer. Even assuming Shaw knew of the presence of formaldehyde in the Trailer, there is absolutely no evidence or documentation showing that Shaw had actual knowledge that the presence of formaldehyde inside a travel trailer would pose an actual threat to human heath. Without actual knowledge of any danger, Shaw had

---

[35] *See Kerstetter*, 210 F.3d at 449 ("Defendant BASI argues that since the release problem was not an alleged design defect, and since BASI is a maintenance contractor, it has no duty to warn.") (citation omitted). They did not voluntarily undertake to warn by the attendance at the FEAT meeting. We agree with BASI's statement that "[i]t stands logic on its head to argue that the Navy's disclosure of a design defect at a meeting BASI attended as a maintenance representative triggered a duty of BASI to warn the Navy about the same problem.").

[36] *In re Katrina*, 2007 WL 4219351, at *5; see also *Kerstetter*, 210 F.3d at 436; *In re Air Disaster*, 81 F.3d at 575-76.

[37] See *Boyle*, 487 U.S. at 513 (rejecting an alternative test for what the contractor could have "reasonably known" as inadequately "protect[ing] the federal interest embodied in the 'discretionary function' exemption").

[38] *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1487 (emphasis added). (*See infra* pp. 50-52). Shaw submits that Plaintiff can present no evidence to suggest that it was in a position where it "should have identified" the formaldehyde danger (if one exists), but since "actual knowledge" is the relevant test, further discussion of this point is unnecessary.

no responsibility to warn FEMA about it. Furthermore, to the extent the existence of formaldehyde would qualify as a "danger" that Shaw had an obligation to convey to FEMA, FEMA was already well aware of the presence of formaldehyde in trailers.[39]

Because Shaw had no obligation to inform FEMA of dangers FEMA already knew about, and because Shaw never learned of any dangerous conditions regarding the presence of formaldehyde during the performance of the IA/TAC, Shaw is entitled to the protection of the government contractor defense.

## CONCLUSION

Summary judgment should be granted in this case, dismissing Plaintiff's failure to warn claim. Plaintiff is unable to prove the most basic element of a negligence claim, the existence of a duty. This first step cannot be satisfied because Shaw had no actual knowledge of a danger and no obligation to look for possible dangers. Thus, the failure to warn claim should be dismissed. In addition, Shaw is entitled to the immunity afforded by the federal government contractor defense with regard to the failure to warn claim. Shaw therefore respectfully urges the Court to grant its motion and dismiss the failure to warn claim against it.

---

[39] McNeese Deposition, p. 108, Exhibit B.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**


/s/ M. David Kurtz
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**ATTORNEYS FOR DEFENDANT,
SHAW ENVIRONMENTAL, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2010, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.

/s/ M. David Kurtz