UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N(5)<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO:<br>*Lyndon Wright, et al. v. Forest River, Inc.,<br>et al.*, 09-2977 (E.D. La.) | MAGISTRATE CHASEZ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF SHAW ENVIRONMENTAL, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>REGARDING PLAINTIFF'S MAINTENANCE CLAIMS</u>**

**MAY IT PLEASE THE COURT:**

Shaw Environmental, Inc. ("Shaw") respectfully submits this memorandum in support of its motion for partial summary judgment on all of Plaintiff's claims related to improper or negligent maintenance of the emergency housing unit ("EHU") occupied by Lyndon Wright (the "Trailer"). These allegations are wholly unsupported by the evidence, and are even contradicted by Plaintiff's own sworn testimony, and should be dismissed as a matter of law.

## STATEMENT OF FACTS

On September 30, 2005, FEMA and Shaw executed an Individual Assistance/Technical Assistance Contract ("IA/TAC"), No. HSFEHQ-05-D-0573.[1]  This contract contemplated that Shaw would assist FEMA in its mission to provide assistance to disaster victims, pursuant to individual task orders issued by FEMA.[2]  One of the ways in which Shaw assisted FEMA following Hurricane Katrina was to provide maintenance services for EHUs, including the trailer occupied by Plaintiff.[3]

As an initial matter, Plaintiff moved into the Trailer in March 2006,[4] and Shaw's maintenance responsibilities ended on June 1, 2006, when C. Martin (another contractor) assumed these responsibilities.[5]  During the period of Shaw's maintenance, Plaintiff made one maintenance call, which was resolved to his satisfaction,[6] and Shaw made two monthly inspections, which the Trailer passed.[7]  Further, the Preventative Maintenance Form ("PMI"), which was signed by a representative of C. Martin, indicates that no maintenance issue existed at

---

[1] Affidavit of Geoffrey C. Compeau, ¶¶ 2, 4, attached hereto as Exhibit A.  Exhibit 1 to that Affidavit is a copy of certain relevant portions of the IA/TAC between FEMA and Shaw; Exhibit 2 to the Affidavit is a copy of Task Order 15; and Exhibit 5 to the Affidavit is a copy of "Exhibit 10 – Maintenance-Temporary Housing Units" to the Performance Work Statement (Attachment A to Section J) of the IA/TAC.

[2] Compeau Affidavit, ¶ 4, Exh. A and Exhibit 1 thereto (the IA/TAC).

[3] Compeau Affidavit, ¶ 12, Exh. A and Exhibit 5 thereto (the IA/TAC).

[4] Deposition of Lyndon Wright, p. 73, attached hereto as Exhibit B.

[5] Affidavit of Allison Hansen, ¶¶ 4-12, attached hereto as Exhibit C and Exhibits 1 and 2 thereto (June 2, 2006 Email from C. Martin's Robyn Williams; and C. Martin's MDC Turnover Spreadsheet).

[6] Compeau Affidavit, ¶¶ 24-26, Exh. A and Exhibits 15 and 16 thereto (FEMA Maintenance Transmission Report and Call Center Maintenance Request Form, date March 19, 2006); *see also* Wright Deposition, p. 275, Exh. B.

[7] Compeau Affidavit, ¶ 24, Exh. A and Exhibit 15 thereto (FEMA Maintenance Transition Report).

the time the Trailer was turned over.[8]  Plaintiff continued to occupy the Trailer for another two years after this, until July 2008.[9]  During those two years, Plaintiff continued to sign off on inspection reports from other FEMA contractors and/or subcontractors, confirming that nothing was wrong with the Trailer.[10]

Nevertheless, Plaintiff claims, among other things, that during the initial three-month period, Shaw failed to adequately perform its contractual duty to maintain and repair the Trailer, which somehow caused and/or contributed to unsafe conditions in the unit.  Specifically, Plaintiff alleges that:

> Shaw was negligent in their duty to . . . maintain and repair the temporary hosing unit provided by FEMA . . . .  Further, … the frame was bent and warped which caused the door not to close and seal properly and also caused signification leaking in his bedroom window.  The heating system in the Trailer never functioned properly and Shaw never properly repaired the heating system, even though Lyndon complained repeatedly to Shaw about these problems.  Lyndon was forced to use space heaters to warm the trailer.  These complaints and requests for maintenance were also repeatedly ignored.  Lyndon contends that Shaw had a duty to maintain the Trailer and to make necessary repairs as needed and were negligent in their duty to do so.[11]

Plaintiff stretches these allegations even further, claiming that, due to a lack of maintenance and Shaw's "failure to respond to the various problems with the Trailer," he "became depressed and

---

[8]  Hansen Affidavit, ¶¶ 5, 11, Exh. C and Exhibit 3 thereto (June 1, 2006 PMI for Wright Trailer).

[9]  Wright Deposition, pp. 73, 132, Exh. B.  Possibly, when Plaintiff made these claims, he did not understand that Shaw's maintenance responsibilities ended on June 1, 2006.  However, the MDC turnover process by which other contractors assumed those responsibilities has become well-known through discovery, and Plaintiff has persisted in making these claims against Shaw.   He should not be allowed to raise them at trial.

[10]  Crown Roofing Services, Inc. Maintenance Records, pp. 7, 9-10, 12, attached hereto as Exhibit D.

[11]  C.A. No. 09-2977, Rec. Doc. No. 2203 (Wright's First Supplemental and Amended Complaint), ¶ 14.  Shaw denies these allegations.

3

suffered loss of self-esteem."[12] In accordance with Rule 56(b) of the Federal Rules of Civil Procedure, Shaw seeks a judgment dismissing Plaintiff's claims of improper maintenance on the basis that Shaw never failed to maintain the Trailer, and Plaintiff has no evidence to the contrary.

## LAW AND ARGUMENT

### I.  Summary Judgment Standard

Summary judgment is proper when there is "no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law."[13] "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[14] Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[15]

The moving party must initially demonstrate that no genuine issue of material fact exists and identify those portions of the record which it believes show the absence of a genuine issue of material fact.[16] However, once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to the

---

[12]  Rec. Doc. No. 2203 (Wright's First Supplemental and Amended Complaint), ¶ 15. These allegations, similarly unfounded, are addressed separately in Shaw Environmental, Inc.'s Motion for Partial Summary Judgment Regarding Plaintiff's Mental Anguish Claims. Rec. Doc. 10945.

[13]  Fed. R. Civ. P. 56(c).

[14]  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).

[15]  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citations and internal quotations omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.") (citations omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.

[16]  *Celotex Corp.,* 477 U.S. at 323; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

party's case, and on which that party will bear the burden of proof at trial."[17] To satisfy this burden, the non-movant must proffer *sufficient* evidence to show that a reasonable jury could find in its favor – that is, that "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."[18] Of course, unsubstantiated assertions do not constitute competent summary judgment evidence.[19]

## II. Plaintiff Has No Evidence That Shaw Breached Its Maintenance Duties.

Under Louisiana law, a tortfeasor is generally liable for any damage caused by his or her fault.[20] Louisiana has adopted a duty-risk analysis in determining whether to impose liability under a particular set of facts. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to the plaintiff to conform defendant's conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element).[21]

---

[17] *Id.* at 322.

[18] *Anderson,* 477 U.S. at 249-50, 252. *See also Frakes v. Crete Carrier Corp.,* 579 F.3d 426, 430-431 (5th Cir. 2009) ("[P]laintiff has the burden to put forth sufficient evidence to create a genuine dispute" as to a material fact); *Florida Dep't of Ins. v. Chase Bank of Texas Nat'l Ass'n,* 274 F.3d 924, 928 (5th Cir. 2001) ("After a defendant properly moves for summary judgment, the non-movant plaintiff must bring forward sufficient evidence to demonstrate that a genuine issue of material fact exists on every element of a claim."); *Ginsberg 1985 Real Estate P'ship v. Cadle Co.,* 39 F.3d 528, 531 (5th Cir. 1994) (citation omitted) ("An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party.").

[19] *Abbott v. Equity Group, Inc.* 2 F.3d 613, 619 (5th Cir. 1993) (citing Celotex Corp., 477 U.S. at 324).

[20] LA. CIV. CODE art. 2315.

[21] *Pinsonneault v. Merchants & Farmers Bank*, 01-2217 (La. 4/3/02), 816 So.2d 270, 276; *Barasich v.*

Under this analysis, the plaintiff must affirmatively prove each element of the duty-risk approach.[22] A negative answer to any one of these inquiries results in a determination of no liability.[23] Courts routinely grant summary judgment and dismiss plaintiffs' actions in cases where plaintiffs are unable to show that any one element of the duty-risk analysis is met.[24]

Plaintiff's claim for negligent or improper maintenance incorrectly assumes that Shaw's maintenance duties were owed to Plaintiff. This is wrong; clearly, Shaw's maintenance duties arose out of its contract with FEMA, and Shaw's maintenance activities were performed on FEMA's property. This is important because, even if one were to assume that Shaw's duties in this regard extended to Plaintiff, clearly those duties arose out of, and were defined and limited by, Shaw's contract with FEMA. Plaintiff will present no evidence that FEMA – the entity with the most knowledge of whether Shaw was living up to the maintenance responsibilities of the IA/TAC – ever rejected or even complained about Shaw's maintenance work with respect to the Trailer.

Leaving aside the duty element, Plaintiff cannot present evidence of breach. Plaintiff alleges that Shaw repeatedly failed to respond and/or ignored his many complaints for maintenance, but this is merely allegation. Plaintiff has offered no evidence to support this notion. To the contrary, Shaw's records reveal that, during the three months Shaw maintained

---

*Columbia Gulf Transmission Co.*, 467 F. Supp. 2d 676, 691, (E.D. La. 2006).

[22]   *Sciacca* v. Rite Aid Corp., 2003 WL 282362 (E.D. La. 2003).

[23]   *Hanks v. Entergy Corp.*, 06-0477 (La. 12/18/06), 944 So.2d 564, 579; and *Joseph v. Dickerson*, 99-1046, 99-1188 (La. 1/19/2000), 754 So.2d 912, 916.

[24]   *Lane v. State Farm Mut. Auto. Liability Ins. Co.*, 2003-2099 (La.App. 4 Cir. 8/25/04), 883 So.2d 5.

the Trailer, the only "maintenance" that Plaintiff ever requested was to repair a broken furnace, which Shaw did.[25] Plaintiff's own testimony belies this claim; although Plaintiff contends that "the heating system in the Trailer never functioned properly and Shaw never properly repaired the heating system," his deposition reveals otherwise:

> Q. Did the maintenance crew fix the furnace problem, as far as you knew, when they came out on March 19, 2006? Let me ask you a better way. Did you think they had fixed it when they left on March 19, 2006?
>
> A. Yes, because it was working.
>
> Q. And that's why you signed off on the maintenance form, right?
>
> A. Yes.[26]

Plaintiff lodged no other complaints, formaldehyde-related or otherwise, during the remainder of Shaw's maintenance responsibilities. In sum, the records reveal that Shaw adequately maintained the Trailer during this period, and Plaintiff has provided no evidence to rebut these facts.

Indeed, closer examination of the facts reveals that the objects of Plaintiff's ire occurred well after Shaw's maintenance concluded. For example, he complains about the furnace, but he admits that the second call about the furnace (the first having been resolved to his satisfaction) was after that date:

> Q. I believe you told Mr. Bone that people came out at least twice to work on the furnace, right?
>
> A. Yes.

---

[25] Compeau Affidavit, ¶¶ 24-26, Exh. A and Exhibits 15 and 16 thereto (FEMA Maintenance Transmission Report and Call Center Maintenance Request Form, date March 19, 2006).

[26] Wright Deposition, p. 275, Exh. B.

7

Q. Do you know if this call record reflects the first or the second time out? The date on this is March 19, 2006.

A. It may have been the first time.

Q. Was the second time in the winter, later in 2006?

A. Yes, it should have been because I know they came out twice.

Q. Okay.

A. I mean, I'm not good with all these dates and trying to remember. I just know they came out, tried to fix the problem, they didn't, so I did what I had to do to try to keep warm.

Q. Let me see if I can help you with the dates on the second time the maintenance people came out with regard to the furnace. You had told Mr. Bone that you noticed the foul odor sometime in the winter of 2006, right?

A. Yes.

Q. By "winter," were you talking about the November/December time frame of 2006?

A. Yes.

Q. And I think you told Mr. Bone, and please correct me, that you told the maintenance people when they came out the second time about the foul odor and they told you that they couldn't do anything about that, right?

A. They would have somebody get in touch with me about it, yes.

Q. So the second maintenance visit must have been November or December of 2006 at the earliest, right?

A. Maybe, yes.[27]

---

[27] Wright Deposition, pp. 273-275, Exh. B.

Similarly, with regard to his claim that maintenance never fixed an alleged leak above the Trailer entry door, Plaintiff acknowledges that this problem did not even manifest itself until 2007:

> Q: Okay. You mentioned the leak around the door. First of all, was the leak occurring under the door like rainwater was getting pushed over the threshold or was it coming from the top, the sides, what is your recollection?
>
> A. It came over the top.
>
> Q. Over the top?
>
> A. Uh-huh.
>
> Q. Okay. Was there a gap there that you could see daylight through?
>
> A. Yes.
>
> Q. Okay. When did that start?
>
> A. I would have to say I noticed it in '07.
>
> Q. Okay. Do you remember roughly about what part of '07?
>
> A. No.[28]

There is simply no evidence whatsoever of problems with Shaw's maintenance services prior to June 1, 2006. Based on these undisputed facts, there is no basis for a negligent maintenance claim against Shaw. In fact, even setting aside the subsequent maintenance records (from other FEMA contractors) showing that Plaintiff thought the Trailer was in good condition

---

[28] Deposition of Lyndon Wright, pp. 275-276, Exh. B.

9

in 2008,[29] Plaintiff admits that the maintenance problems – if any – were not until well after June 1, 2006.

## CONCLUSION

Shaw's motion for partial summary judgment regarding maintenance claims is a simple one: Plaintiff has a complete lack of evidence to suggest that Shaw failed to maintain the Trailer. Rule 56 is clear that such claims should be dismissed prior to trial. Shaw respectfully urges the Court to do so.

Respectfully submitted,

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

  /s/ M. David Kurtz
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**ATTORNEYS FOR DEFENDANT, SHAW ENVIRONMENTAL, INC.**

---

[29] Crown Roofing Services, Inc. Maintenance Records, pp. 7, 9-10, 12, Exh. D.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2010, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.

/s/ M. David Kurtz