UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE:    FEMA TRAILER                    *    MDL NO. 1873
          FORMALDEHYDE PRODUCTS           *
          LIABILITY LITIGATION            *    SECTION "N" (5)
                                          *
                                          *    JUDGE ENGELHARDT
                                          *    MAGISTRATE CHASEZ
                                          *
THIS DOCUMENT IS RELATED TO               *
                                          *
*Lyndon T. Wright v. Forest River, Inc., et al*    *
Docket No. 07-9228                        *

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL EXPERT REPORTS

Plaintiff Lyndon T. Wright ("Mr. Wright" or "Plaintiff") respectfully submits the following Response to Defendants' Joint Motion to Strike Plaintiff's Supplemental Expert Reports, and hereto states:

I.    **BACKGROUND**

Defendant Forest River, Inc. ("Forest River") and Shaw Environmental, Inc. ("Shaw") have jointly filed a Motion to Strike the Supplemental Expert Reports of Plaintiff's Experts Patricia Williams Ph.D., DABT, Paul Hewett, Ph.D., Paul LaGrange, and Lawrence Miller, M.D., M.P.H.   The most telling line from Defendants' Memorandum in Support of their Motion is their line that "Plaintiff cannot have his cake and eat it too" when this is exactly what the Defendants are trying to do.  Court

1

Rec. 10944-2, Memorandum, page 16.  Defendants are totally silent that Defense Experts issued three of their own supplemental reports after the expert report deadline and Plaintiff did not object to the same.  Furthermore in their Motion and Memorandum Defendants exhibit a fundamental lack understanding of the Federal Rules of Civil Procedure relating to supplementation.

## II.     ARGUMENT AND AUTHORITIES

According to the Court's Trial Scheduling Order, Defense expert reports were due on November 2, 2009.  Court Doc. 2716.  In their Motion and Memorandum, Defendants are completely silent that and that Defense Expert John Osteraas issued a supplemental report on November 17, Defense Expert Coreen Robbins issued a Supplemental Report on November 25, and Defense expert Robert James issued a supplemental  report on December 16, Plaintiff did not complain or object to the same. [1]

Under Rule 26(a) (2) (C), a Plaintiff has a duty to supplement the disclosure of expert testimony pursuant to Rule 26(e) (1).  FED. R. CIV. PROC. 26(a) (2) (C) ("The parties shall supplement these disclosures when required under subdivision (e) (1).").  This latter rule imposes a "duty to supplement . . . if the party learns that in some material

---

[1]  Osteraas is an expert retained by Shaw.  Robert James and Corren Robbins were retained as experts by the United States which was dismissed from this matter after their depositions were taken.   Defendants have have reserved the right to use each other's experts so there is a potential that Robert James and Corren Robbins may still appear as expert witnesses on behalf of Forest River or Shaw in this matter.

respect the information disclosed is incomplete or incorrect."  FED. R. CIV. PROC. 26(e)

(1).  The Rule specifically provides that "[w]ith respect to testimony of an expert . . . the

duty extends to both information contained in the report and to information provided

through a deposition of the expert."  *Id*. The purpose of the Rule is "to bar evidence

when a party fails to make a required supplemental disclosure." *Brennan's Inc. v. Dickie

Brennan & Comp. Inc.*, 376 F.3d 556, 375 (5th Cir. 2004).  Thus, "the duty to supplement

[does] not by itself provide a reason to exclude [supplemented] testimony," and should

only be excluded where there exists "other grounds to exclude it."  *Id*.  Accordingly, the

trial court retains the discretion to permit additional disclosures made subsequent to the

production of expert reports deadline.  *Jacobs v. Ascot,* 2006 WL 2728827, at *11 (N.D.

Tex. Sept. 25, 2006).

In determining whether to allow supplemental disclosure of expert testimony,

the Fifth Circuit considers four factors: "(1) the explanation for the failure to [submit a

complete report on time]; (2) the importance of the testimony; (3) potential prejudice in

allowing the testimony; and (4) the availability of a continuance to cure such prejudice."

*Reliance Ins. Co. v. Louisiana Land and Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)

(quoting *Geiserman v. MacDonald,* 893 F.2d 787, 791 (5th Cir. 1990)). In evaluating these

factors, the Court performs a balancing test weighing each to determine necessity,

fairness, undue delay or expense. *Tucker*, 49 F.Supp.2d at 461.

A.      **WILLIAMS REPORT**

Dr. Williams is a toxicologist and Defendants concede that she is offering opinions on general causation. Defendants' Memo, p. 3. Williams supplement is based largely upon the International Agency for Research on Cancer recent pronouncement that there is sufficient evidence that formaldehyde causes leukemia. Defendants allege here Supplement is untimely, contains new opinions, and is based upon materials available prior to Williams' submission of her expert report. Defendants' Motion should be denied as Dr. Williams addendum is a permissible supplement within Rule 26 or Rule 37 of the Federal Rules of Civil Procedure as the disclosure of the addendum is neither unfair nor causes undue delay or expense. *Tucker v. OHTSU Tire & Rubber Co., Ltd.,* 49 F.Supp.2d 456, 461 (D. MD. 1999).

Dr. Williams completed her Report on October 2, 2009. The primary reason for January 2010 Supplement was the October 20-27, 2009 Meeting of the International Agency for Research on Cancer (IARC), the foremost international authority on cancer, and a 2010 study published by Zhang. Between October 20-27, 2009, IARC met in Lyon France to review "Chemical Agents and Related Occupations". See List of Attendees, Exhibit 1. This meeting included new mechanistic evidence on the Biologic Plausibility of formaldehyde in the causation of leukemia and new epidemiology evidence for causation of leukemia by formaldehyde. In December of 2009, the results of this October 20-27th, 2009 meeting were published in the Lancet. Exhibit 2. The key

4

references concerning formaldehyde and causation of leukemia were not published in the public domain until December, 2009 (Hauptmann et al., Exhibit 3) and January, 2010 (Zhang, et al., Exhibit 4).  These two studies were critical in effecting the decision of the IARC Working Group to render an opinion that sufficient evidence exists that formaldehyde causes leukemia.  Such an opinion had <u>not yet been rendered</u> by IARC prior to the completion of Dr. Williams' Report on October 2, and the key references relating to leukemia had not been published by IARC.  This new causal opinion on formaldehyde and leukemia is important as Lyndon Wright has expressed a fear of cancer and this is one of the cancer that the IARC has said may be caused by formaldehyde exposure.

Prior to the October 2009 IARC Meeting, a possible association with leukemia was previously considered "strong but not sufficient", because of the lack of a plausible mechanism.   The epidemiological evidence has become stronger: now with the publication of the Hauptman, December 16, 2009 study and the Zhang 2010 study.  Hauptmann 2009 found that embalming was significantly associated with an increased risk for myeloid leukemia, with significant trends for cumulative years of embalming ($p_{trend}$=0.020) and for increasing peak formaldehyde exposure ($p_{trend}$=0.036).   Exhibit 3.  Zhang 2010 found a group of exposed workers showed numerical chromosomal aberrations in myeloid progenitor cells (chromosome 7 monosomy, chromosome 8

trisomy) consistent with myeloid leukemia, and hematological changes in peripheral blood that are indicative of effects on the bone marrow.  Exhibit 4.

The IARC Working Group referred to Zhang, Tang, Rothman, et al, as 2009 in press; however this publication was not published until January 2010. Exhibit 4. This article was entitled:   "Occupational Exposure to Formaldehyde, Hematotoxicity, and Leukemia-Specific Chromosome changes in Cultured Myeloid Progenitor Cells". Exhibit 4.  The objective of the study was to determine if formaldehyde exposure disrupted hematopoietic function and produced leukemia-related chromosome changes in exposed humans. Exhibit 4. Forty-three exposed workers and 51 unexposed controls were studied in China.  The median formaldehyde exposure in all 43 exposed workers was 1.28 (0.63-2.51) ppm as an 8-hour time-weighted average.  Exhibit 4.  The IARC Working Group concluded that overall, there is *sufficient* evidence that formaldehyde causes leukemia, particularly myeloid leukemia.  (Baan, et al., IARC Working Group, December 2009).    Therefore, Plaintiff has shown sufficient cause for this supplementation and in fact is required to do so as Dr. Williams opinions are incomplete without this supplementation. Under Rule 26 Plaintiff is constrained to supplement if he finds the materials are incomplete, and as pointed out above, the duty of supplementation extends to expert testimony.

The first factor evaluated by the Court is the reason proffered for the

supplemental opinion.  This factor must be considered in the context of all factors for even if this Court finds the explanation inadequate, such a finding, does not, in and of itself, warrant exclusion of the supplemental disclosure. *Jacobs*, 2006 WL 272827, at *13-14 (allowing supplemental disclosure even where no explanation for supplement was provided).   Here the reason for the supplementation is recent pronouncement by the IARC on formaldehyde and another form of cancer, leukemia, and recent studies that have come out on the issues, some as recent as January 2010.  The second factor is the importance of the testimony elicited from the disclosure.  Lyndon Wright has already testified that he has a fear of cancer.  This additional testimony regarding the recent pronouncement of formaldehyde and leukemia is directly relevant to the same and support's Lyndon Wright's fear of cancer claim.   Next the Court is to examine the potential prejudice suffered by the opposing party.  The Defendants suffer no prejudice in the instant case because Plaintiff has not disclosed on the eve of trial.   Thus, Defendants cannot argue that they have been subject to "trial by ambush."   *See Congressional Air Ltd. v. Beech Aircraft Corp.*, 176 F.R.D. 513, 516 (D. Md. 1997) (prohibiting submission of expert disclosure less than one month before trial).  Further, in *Tucker*, the court noted that a party was not prejudiced where:

> Plaintiff's counsel did not wait until the eve of trial to supplement . . . , but did so more than four months before trial.  Defense counsel could have scheduled, if not actually taken, additional deposition testimony  . . . before the discovery cutoff, or requested a brief extension of discovery for the limited purposes of completing discovery regarding

the supplement opinions.

*Tucker*, 49 F. Supp.2d at 460-61.  Here, Dr. Williams Supplement disclosed more than six weeks before trial and Defendants never requested to reconvene her deposition, which in fact they left open, nor did they request an extension of discovery to reconvene the deposition.   Furthermore, Defense Expert Philip Cole has written about the formaldehyde and leukemia association.   Dr. Cole was questioned about the IARC pronouncement on leukemia at his deposition on January 27, 2010, he testified he was familiar with it and disagreed with it. [2]   Defendants are familiar with the IARC pronouncement on leukemia cannot be prejudiced by this Supplementation.  As such, Defendants are not prejudiced by the disclosure of Dr. Williams' Supplement as they are familiar with the issues surrounding the link between formaldehyde and leukemia. The fourth factor to consider is the availability of to cure any prejudice via a continuance.  Because there is no prejudice here, a continuance is not needed.

In their criticism of Dr. Williams' Supplement, Defendants primarily rely on *Lampe Berger USA, Inc. v. Scienter*, 2008 WL 474203 (M.D. La. Aug. 8, 2008) in support of their argument, but Defendants, however, fail to recognize the distinguishing elements of this case.  In *Lampe Berger*, the supplemental disclosure was given after the court had already granted multiple continuances regarding disclosures of expert reports.  *Id*. at *4;

---

[2] Dr. Cole's deposition was taken on January 27, 2010, just seven days prior to this submission. Counsel for Plaintiff submitting this Response has yet to receive a copy of the deposition transcript from the Court Reporter.

*see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 74 F.3d 546, 571 (5th Cir. 1996) (holding that the initial disclosures were insufficient to comply with the discovery order and thus could supplement to correct); *Simmons v. Johnson*, 2008 WL 474203, at * 3 (M.D. La. Feb. 14, 2008) (noting that multiple continuances had already been granted to disclose expert reports).    Further, other cases cited by Defendants involved "supplements" disclose during summary judgment phase.   *Buxton v. Lil' Drug Store Products, Inc.*, 2007 WL 2254492, at *7 (S.D. Miss. Aug. 1, 2007) (noting that supplement provided on the "eve of summary judgment briefing); *Shelter Mut. Ins. Co. v. Culbertson's Ltd., Inc.*, 1999 WL 135297, at *4 (E.D. La.). Here, motions for summary judgment have not yet been presented.

Defendants further allege that her report contains "new opinions".  If this Court determines that Plaintiff's disclosure of Dr. Williams addendum is not a "supplement" within the terms of Rule 26(e)(1), the Court should treat the addendum as an undisclosed opinion pursuant to Rule 37(c)(1).  *Jacobs*, 2006 WL 2728827, at * 12 (holding that where the supplementing party does not identify the opinion supplemented, the court will evaluate under the standards set forth for undisclosed opinions).  Pursuant to Rule 37(c) (1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e) (1) . . . is not, <u>unless such failure is harmless</u>, permitted to use as evidence at trial."  FED. R. CIV. PROC. 37(c) (1) (emphasis added).  To determine whether an undisclosed opinion is harmful, the Fifth Circuit evaluates

essentially the same factors used to evaluate supplemental opinions, "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Primrose Operating Co. v. National American Ins. Co.*, 382 F.3d 546, 563-64 (5th Cir. 2004); *see also Tex. A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003); *Jacobs*, 2006 WL 2728827, at * 12. As set forth above, all these factors would weigh in favor of allowing Dr. Williams' Supplement.

### B.    HEWETT'S REPORT

Dr. Hewett has prepared a report examining the formaldehyde levels in Forest River trailers.  Dr. Hewett examines data from nine different data sets.  A summary of his conclusions is that the vast majority (95%- 100%) of Forest River travel trailers had measured formaldehyde levels in excess of the ATSDR and NIOSH levels.  This was true for all nine data sets analyzed individually as well as all the data combined.   See Exhibit 5, page 22, Table 4.   During his deposition, Defendants implied that Dr. Hewett's analysis was incomplete in some fashion as he did not compare one data set with another or that he did not properly combine data or did not look at the data properly.   In fact in their Memo, page 14, they allege they state they intend to file a motion in limine on one of these "error[s]". Dr. Hewett has now done the analysis to respond to Defendants stated and implied criticisms and his basic conclusions remain

the same: the vast majority of Forest River travel trailers had measured formaldehyde levels in excess of the ATSDR and NIOSH levels.

The Defendant's comment on Plaintiff's wanting their cake and eating it too is especially apt for the Defendants here for an additional reason beyond Defendant's silence about their own supplemental reports, is now that Dr. Hewett has done the additional analysis to respond to Defendants implied or stated criticisms of his analysis they are effectively saying "you can't talk about them or report them."   The hypocrisy of Defendants comments is highlighted by the fact that Dr. Hewett's basic conclusions remain the same.

In Dr. Hewett's September 26, 2009 Report, he analyzed various sets of data on Forest River travel trailers and various groupings of Forest River trailers.   During his deposition, he was questioned on whether he had compared various data sets to see if they were properly combinable from a statistical viewpoint or if the data sets were different. See quote of Dr. Hewett testimony on page 12 of Defendants' Memo.  Dr. Hewett said he had not done such a comparison statistically but that he could and he did not think it would change his conclusions in any regard.  In his Supplemental Report, Dr. Hewett has now done this additional analysis comparing data sets and reported the results, and his conclusions remain the same. The analysis was summarized in a section of analysis of variance (ANOVA) multiple comparison test and a Tukey's Honestly Significant-Difference Test in Section 4.3 of his Supplemental

Report.  He reported each of the specific tests and comparisons for the data sets in

Appendix 9.1 of his Report see page 35, Exhibit 6.

Contrary to what Defendants allege, combining the DeVany data with the other

data was not improper.  An analysis of variance test shows that the DeVany data is not

statistically different from the other data sets. *Id*.   Now that he has done this additional

analysis that he considered unnecessary, but that a defense attorney inquired about,

Defendants cannot be heard to criticize him for doing the analysis that they asked

about.

In Dr. Hewett's 2009 Report he reported that 95% of the Forest River travel

trailers were above the ATSDR chronic level for formaldehyde exposure of 0.008 ppm

and the NIOSH limit of 0.016. Exhibit 6. He looked at nine different data sets

individually and in combination.  The number of comparisons that can be had between

nine different data sets is 255, so there are numerous comparisons that can be made.

The mere fact that Dr. Hewett did not do this or that comparison is immaterial.

Likewise, there with eight different Forest River Models involved and the number of

combinations of comparisons between these various models is 162, so again we have

multiple comparisons that can be made.  The summary of Defendants' arguments when

it is stripped of the statistical and legal verbiage is that "you did not compare data set *x*

to data set *y*, did you – and now that you have done it, you cannot talk about it."

Defendants want their cake and to eat it too.

Showing their failure to comprehend the issues at hand, Defendants state that Appendix 9.1 and the conclusions derived from it should be stricken since it is nothing more than a printout.  Defendants' Memo at page 13. When in fact in his Supplemental Report, Exhibit 6, page 12, Dr. Hewett writes, "the analysis of variance (ANOVA) multiple-comparison test was used to determine if one or more of the occupied "travel trailer" data sets, when grouped by data source are statistically different from at least one of the remaining datasets."  Hewett Report, Exhibit 6 page 12.  He reports the findings of that analysis in the Appendix 9.1 which contains Tukey's Honestly-Significant-Difference Test. Hewett Report, Exhibit 6, page 12.  It is not a mere printout but backup for his discussion on page 12.

Dr. Hewett has done the most common and most important comparisons and reported them. Defendants seem to be purposely confusing the issues by talking about the new analysis Hewett added to his report, when it based upon "criticisms" of his September 26, 2009 Report, that were really of no important and when he did this analysis, as his basic conclusions did not change.  Furthermore, as pointed out above there are seemingly limitless comparisons that can be done when one is dealing with numerous data sets and numerous models.  Defendants are seeking to confuse the issues by grasping at matters that are of no import.  Defendants further confuse the issues, when they talk about Dr. Hewett's Supplemental Report, when they write, "Certainly, if permitted, the defense would have to have an opportunity to hire their

own expert(s) to double-check these conclusions", Defendants Memo at p. 13. The conclusions they are talking about really aren't conclusions, they are just test results.

Defendants also complain about the occupied vs. unoccupied analysis Dr. Hewett includes in his Supplemental Report. Again Defendants implied during their questioning of Dr. Hewett during his deposition that his analysis was in some way incomplete for not stratifying the data between occupied and unoccupied travel trailers. He has now done the analysis and his conclusions remain the same. Defendants cannot be heard to complain that this is an improper supplementation. In his September 26, 2009, Report Paul Hewett reported that 98.9% of the Forest River Travel Trailers had formaldehyde levels above the ASTDR chronic level for formaldehyde and that 98.0% had formaldehyde levels above the NIOSH level.  See Exhibit 5, Table 4, of the September 26, 2009 Report.  In is Supplemental Report he reported that 98.9% of the occupied Forest River Travel Trailers were above the ASTDR chronic level for formaldehyde and 97.5% of the Forest River Travel Trailers were above the NIOSH level[3].  See, Exhibit 6, Table 3 of the Supplemental Report.  So it is obvious that his conclusions in this regard are virtually identical – that is the vast majority of Forest River Travel trailers had formaldehyde levels in excess of the ASTDR and NIOSH level.

Furthermore, in his September 26, 2009 Report, he reported that the average

[3] The September 2009 Report contained numbers for occupied and unoccupied trailers combined, whereas, in the Supplemental Report, the figures reported above are for occupied travel trailers only.

formaldehyde level for Forest River Travel trailers was 0.4630 ppm.  See Exhibit 5, Table 3, page 21.  With regard to the average formaldehyde level in the Supplemental Report, Dr. Hewett stratified the data and reported an average formaldehyde level for unoccupied travel trailers of 0.672 ppm and 0.142 to for occupied travel trailers.  See Exhibit 6, Tables 4 & 7, pages 20-1.  The average of 0.672 and 0.142 is 0.407 which is not that different from 0.4630, however, the 0.4630 represents a weighted average.  Again, his conclusions do not change in any significant matter.  He has just looked at the data differently in response to Defendants' queries.

Another matter that Defendants take issue with is that the September Report contained data on 883 travel trailers, while the Supplemental Report contained formaldehyde measurements on 933 Forest River travel trailers.  The difference was that the Supplemental Report contained additional formaldehyde test results on Forest River Travel trailers that were taken in late 2009 (August, September, October and November) 2009.  Simply stated, this data was not available with Dr. Hewett first did his analysis.

Defendants also complain about the decay analysis that Dr. Hewett has done. The decay analysis shows that when the trailers off-gas more formaldehyde when they are newer and less when they are older.  Yet, this is a conclusion that is held universally by defendant's experts as well such as Graham Allen and by the United States Centers for Disease Control.  Defendants should not be heard to complain about analysis that is supported by their own experts.  Again, Defendants want their cake and to eat it too. If

the Defendants want the Report excluded, then they should be prohibited from asking questions about analysis he did not do in his September Report that he has now completed. It would only be fair and equitable that if Defendants ask him about supposed "tests" he did not do, then Defendants open the door for him to talk about his Supplemental Report.

In considering the four elements the Fifth Circuit considers outlined in *Reliance Ins. Id,*: "(1) the explanation for the failure to [submit a complete report on time]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice," all of these factors weigh in favor of allowing the Supplementation. Dr. Hewett is merely responding to Defendants' criticisms, and the Supplement is important in responding to the criticisms.  He could not respond to the criticisms, until the Defendants made them.  Furthermore, the Defendants are not prejudiced because Plaintiff has not disclosed on the eve of trial. Thus, Defendants cannot argue that they have been subject to "trial by ambush."  *See Congressional Air Ltd. v. Beech Aircraft Corp.*, 176 F.R.D. 513, 516 (D. Md. 1997) (prohibiting submission of expert disclosure less than one month before trial).  Further, in *Tucker*, the court noted that a party was not prejudiced where:

> Plaintiff's counsel did not wait until the eve of trial to supplement . . . , but did so more than four months before trial.  Defense counsel could have scheduled, if not actually taken, additional deposition testimony  . . . before the discovery cutoff, or requested a brief extension of discovery for the limited purposes of completing discovery regarding

the supplement opinions.

*Tucker*, 49 F. Supp.2d at 460-61.  Here, Dr. Hewett Supplement was disclosed more than seven weeks before trial and Defendants never requested to reconvene his deposition, nor did they request an extension of discovery to reconvene the deposition.  As such, Defendants are not prejudiced by the disclosure of Dr. Hewett's Supplement.  The fourth factor to consider is the availability of to cure any prejudice via a continuance. Because there is no prejudice here, a continuance is not needed.

If this Court determines that Plaintiff's disclosure of Dr. Hewett's Supplement is not a "supplement" within the terms of Rule 26(e)(1), the Court should treat the addendum as an undisclosed opinion pursuant to Rule 37(c)(1) and examine the same type of factors set forth above.  *Jacobs*, *Id*. As set forth above, all these factors would weigh in favor of allowing Dr. Hewett's Supplement.

### C.   PAUL LAGRANGE'S ADDENDUM

Plaintiff's expert Paul LaGrange conducted tests to determine the air exchange rate in the travel trailer and prepared a Report on the same.  After receiving Defendants expert reports, Paul LaGrange compared his air exchange rate with the air exchange rate with the one reported by Defendants experts.  In his Report, LaGrange had reported a Natural Air Exchange Rate ("NACH) of 1.374.   In making his comparison he, discovered a miscalculation.   Upon discovering the miscalculation, he has recalculated and reported his figures in a two page addendum consistent with FED. R.

17

CIV. PROC. 26(a) (2) (C) and (e) (1)" which, in fact, imposes a "duty to supplement . . . if the party learns that in some material respect the information disclosed is incomplete or incorrect." FED. R. CIV. PROC. 26(e) (1). See Addendum, Exhibit 7. Plaintiff would further show that there is no surprise in his calculations in this regard as his corrected number for the air exchange rate is very similar to what the defense experts have reported.

In response to the issues addressed by Plaintiff's expert Paul LaGrange, Defendant Forest River hired two experts Norm Nelson and Donald Snell of Liberty Building Forensic Group who issued a lengthy report. On pages 114 of the Liberty Report they alternately report a NACH of 0.23 and a NACH between 0.2 – 0.3. This number is entirely consistent with LaGrange's revised NACH calculations contained in his Supplement of 0.271 – 0.28. Exhibit 7.

LaGrange's Addendum also contained a revised manual J load figure. The calculation of the manual J load, or heat load is dependent on the NACH. One of the variables when performing a manual J load is how much outdoor air enters the buildings also expressed as NACH. Based upon the revised NACH level, LaGrange revised his manual J load figure. Defendants were not prejudiced by the same as they could have equally calculated the manual J load based upon their own calculations of the NACH which was similar to Paul LaGrange's revised NACH calculation.

A third item in the Addendum was change in the configuration of the roof of the travel trailer in the diagram that LaGrange prepared.  LaGrange had originally prepared a diagram and an animation with the a traditional "A" frame roof.  The bow truss roof more clearly approximates the shape of roof on the trailer.  That was the only reason for the change.  The shape of the roof in the diagram has nothing to do with the calculations; it just more accurately depicts the actual shape of the roof trailer itself. Defendants are mistaken when they surmise that "LaGrange miscalculated the size and shape of the attic space in the trailer. Defendants' Memo, page 17.  Defendants are not prejudiced with regard to this Supplement as the calculations on the air exchange rate are now much closer to what their own experts achieved in their analysis and the manual J load is a direct derivation from the air exchange rate.  Further they are not prejudiced by the change in the roof structure in the diagram and animation as the bow truss roof structure more closely approximates the actual structure of the trailer.

Considering the four elements the Fifth Circuit considers outlined in *Reliance Ins. Id,*: "(1) the explanation for the failure to [submit a complete report on time]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice," all of these factors weigh in favor of allowing the Supplementation.  Paul LaGrange is correcting his calculations which he is obligated to do under the rules.  The testimony is important as it is related to the proper air exchange rate.  Furthermore, the Defendants are not prejudiced

because Plaintiff has not disclosed on the eve of trial and his revised air exchange rate is within the range of Defendant's own experts.  Thus, Defendants cannot argue that they have been subject to "trial by ambush."  *See Congressional Air Ltd. v. Beech Aircraft Corp.*, 176 F.R.D. 513, 516 (D. Md. 1997).   Moreover, here LaGrange's Addendum was disclosed on January 8, nine weeks before trial and Defendants never requested to reconvene his deposition, nor did they request an extension of discovery to reconvene the deposition.   Defendants are not prejudiced by the disclosure of LaGrange's Addendum as the figures are consistent with their own experts.  The fourth factor to consider is the availability of to cure any prejudice via a continuance.  Because there is no prejudice here, a continuance is not needed.

If this Court determines that Plaintiff's disclosure of LaGrange's Addendum is not a "supplement" within the terms of Rule 26(e)(1), the Court should treat the addendum as an undisclosed opinion pursuant to Rule 37(c)(1) and examine the same type of factors set forth above.  *Jacobs*, *Id.* As set forth above in the earlier Section, all these factors would weigh in favor of allowing Paul LaGrange's Addendum.

### D.    DR. MILLER'S REPORT

Plaintiff has previously filed a Response to Forest River, Inc. and Shaw Environmental Inc.'s Joint Motion to Strike the Addendum to the Expert Report of Lawrence Miller, M.D., and Plaintiff hereby incorporates those arguments as if set forth at length herein.

20

## III.    CONCLUSION

Regardless of whether this Court determines Dr. Williams, Dr. Hewett, Paul Lagrange's and Dr. Miller's addendum to be a "supplement" under Rule 26(a)(2)(C) or a failure to disclose under Rule 37(c)(1), this Court looks to essentially the same four factors in determining whether the supplemented or improperly disclosed testimony should be allowed.  In reaching its conclusion, the court balances equitable and fairness considerations, including the amount of prejudice a party would suffer if the opinion were/were not submitted.   Here given the considerations and the circumstances outlined above, the Court should deny the Motion to Strike Plaintiff's Supplemental Expert Reports.  In alternative, in conducting the balancing examination and weighing fairness and other factors, called for in *Tucker*, if the Court strikes these expert reports the Court should likewise strike the supplemental expert reports of defense experts Robbins, Osteraas and James.



Respectfully submitted:

FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

BY:    s/Gerald E. Meunier
         GERALD E. MEUNIER, #9471
         PLAINTIFFS' CO-LIAISON COUNSEL
         Gainsburgh, Benjamin, David, Meunier &
         Warshauer, L.L.C.

2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:     504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
PLAINTIFFS' CO-LIAISON COUNSEL
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:     504/528-9973
jwoods@gainsben.com

COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE
ANTHONY BUZBEE, # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
DENNIS REICH, Texas #16739600

CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the above and foregoing with the
Clerk of the Court by using the CM/ECF system which will send a notice of electronic
filing to all counsel of record who are CM/ECF participants.  I further certify that I
mailed the foregoing document and the notice of electronic filing on February 3, 2010.

    s/Gerald E. Meunier
    GERALD E. MEUNIER, #9471

22