UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION: N(5) |
| | | * | |
| This Document Relates to: *Lyndon T. Wright. v.* | | * | JUDGE ENGELHARDT |
| *Forest River, Inc., et al*, Docket No. 09-2977 | | * | |
| | | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL EXPERT REPORTS

**MAY IT PLEASE THE COURT:**

Defendants Forest River Inc., ("Forest River") and Shaw Environmental, Inc. ("Shaw") (collectively, "defendants") submit this reply memorandum in support of their Motion to Strike the supplemental reports of plaintiff's experts Williams, Hewett and Lagrange.

As a preliminary matter, plaintiff's Opposition alleges that defendants are attempting to "have their cake and eat it too." They claim, and defendants concede, that three of defendants' experts have supplemented their reports. Dr. John Osteraas, Shaw's engineering expert, provided

an errata report[1] on November 17, 2009, just over two weeks after his initial expert report was submitted on November 2, 2009. Experts Dr. Coreen Robbins and Dr. Robert James, both of whom were retained by the United States, submitted supplemental reports on November 25, 2009 and December 17, 2009, respectively.[2]

Without even having to examine the substance of these reports, one immediately notices the timing of these submissions. Unlike plaintiff's supplemental reports, all of which were provided in January 2010 (and one of which was submitted only two days before the close of discovery), **all** of defendants' supplemental reports were provided in advance of their respective depositions – two before the end of November with the remainder in mid December. Dr. Osteraas, for example, provided his supplement fifteen days after submitting his first report in November. In contrast, none of plaintiff's supplemental expert reports were provided prior to their initial depositions.

Moreover, unlike plaintiff's January submissions, defendants' supplemental reports are just that – supplements – and do not contain new opinions. Defendants' supplements were submitted in a proper and timely fashion when compared to plaintiff's, and, accordingly, there is no parity of supplementation as plaintiff would suggest. As detailed in its prior Motion (Rec. Doc. 10944) and below, plaintiff lacks sufficient justification for the submission of his supplemental expert reports, and all should be excluded in their entirety.

---

[1] Importantly, Dr. Osteraas only corrected a few typographical errors and moved one reference, otherwise out of context, to another section of his report. He issued **no** new opinions.

[2] None of Forest River's eleven experts ever filed supplemental reports in this case.

## LAW AND ARGUMENT

**Dr. Williams**

In his Opposition (Rec. Doc. 11143), plaintiff presents two primary defenses to the exceedingly late submission of Dr. Williams' January 2010 report. First, he attempts to cast the opinions contained in that report as mere "supplementation" to her prior reports under FRCP 26(e). Opposing counsel then references two studies from the last two months which purportedly address formaldehyde's alleged link to leukemia, all in an effort to suggest that there has been a seismic shift in the state of the literature on that topic.

Neither assertion is accurate. As to the first, Dr. Williams never offered **any** opinions relating to formaldehyde's alleged causal link to leukemia in her prior reports, not even the suggestion that there may be an association between the two. Accordingly, her "supplement" contains entirely new opinions that were never disclosed prior to the deadline for her expert report in October. These new opinions should therefore be excluded for the reasons discussed in defendants' Motion to Strike (Rec. Doc. 10944).

Plaintiff next engages in a lengthy discussion of articles published by Hauptmann in 2009 and Zhang in 2010; according to plaintiff, these articles constitute "stronger" epidemiological evidence that formaldehyde causes leukemia. Plaintiff goes on to argue that these new findings justify the submission of Dr. Williams' report on January 27, 2010.

Regardless of the validity of these articles, the plain fact remains that Dr. Williams had access to the vast majority of articles in her new report prior to submitting her expert report. As noted in defendants' original Motion to Strike, of the twenty-one references included in her addendum, thirteen have a publication date of 2008 or before. Moreover, even for those leukemia

articles referenced by Dr. Williams that were published in 2009 and 2010, only three were published within the last three months. Dr. Williams' original reports even contain references to articles dealing with formaldehyde and leukemia. *See* p. 69 of Ex. B, attached to defendants' Motion to Strike (Rec. Doc. 10944), referencing study by Linos et al, "Leukemia and non-Hodgkin's lymphoma among embalmers and funeral directors*," J. Natl Cancer Inst.*, 82:66 (1990). She undoubtedly could have discussed at least the 19 expert reports that were available as of October of 2009.

Plaintiff has countered by arguing that, since IARC only recently found an alleged causal link between formaldehyde and leukemia in December of 2009, Dr. Williams should now be able to include these opinions at trial. **This argument completely ignores the fact that Dr. Williams opined on both causal links AND "associations" in her prior expert reports.** *See* Ex. B, expert report of Dr. Patricia Williams, p. 63-64, attached to defendants' Motion to Strike (Rec. Doc. 10944). In other words, Dr. Williams did not limit her report only to a discussion of established causal links between formaldehyde and particular medical conditions. She also offered opinions on "associations" between (1) formaldehyde and epistaxis (2) mold exposure and allergic rhinitis and (3) epistaxis and cancer of the sinuses. *Id.* at p. 64.

Therefore, Dr. Williams was free to discuss any "association" she found between formaldehyde and leukemia in her original July and October expert reports. For whatever reason, she chose not to do so. Had Dr. Williams included a discussion of the association between formaldehyde and leukemia, she might be able to argue that her opinions on the 2009 Hauptmann and 2010 Zhang study are true supplements. However, by remaining completely silent on this topic[3]

---

[3] Recall that, in her December 2009 deposition, Dr. Williams confirmed that her original reports contained all of the opinions she would issue in this case. *See* Ex. C to defendants' original Motion to Strike, Rec. Doc. 10944.

until two days before the end of discovery, Dr. Williams – and therefore plaintiff – waived this issue.

Addressing the potential prejudice to the parties, opposing counsel summarily concludes that the defendants are not prejudiced by the submission of this expert report two days before the close of discovery. Plaintiff notes that defendants never requested an extension of discovery or an additional deposition of Dr. Williams. This argument is absurd; should Dr. Williams be allowed to testify, an entirely new round of expert reports and depositions would be necessary. This additional discovery and investigation would not be limited to Drs. Williams and Cole, and defendants may even need to conduct a second medical examination of Wright. The extension of the discovery deadline for a few days would be meaningless; instead, an entire new trial date would be necessary.

Plaintiff also cites various cases where courts allowed supplemental expert reports to be admitted. Not surprisingly, there are key factual distinctions in those cases which negate their impact here. For instance, in *Tucker* v. *Ohtsu Tire & Rubber Co., Ltd.*, 49 F.Supp.2d 456, 461 (D.Md., 1999), the court allowed an expert to issue a supplemental report, but that report was submitted **four months** prior to trial. Here, Dr. Williams provided her report – a report with new opinions – two days prior to the close of discovery and just over six weeks before trial. Plaintiff also attempts to distinguish a case cited by defendants, *Lampe Berger USA, Inc. v. Scienter,* 2008 WL 474203 (M.D. La. 8/8/09). Plaintiff notes that, in *Lampe,* the court did not allow the supplemental disclosure because it had been provided after multiple continuances of the expert report deadline. Plaintiff has apparently forgotten that this scenario occurred in *Wright* as well; the expert report deadline in this case has been extended twice, with the initial July deadline pushed back to September and then to October of 2009.

Furthermore, plaintiff states that "Motions for Summary Judgement have not yet been presented." *See* Plaintiff's Response to Defendants Joint Motion to Strike Plaintiff's Supplemental Expert Reports, Doc 11143, p.9. This is simply untrue. As plaintiff is well aware, all parties, including plaintiff, submitted dispositive motions on Monday, February 2, 2010. Accordingly, at the time opposing counsel filed the instant opposition, plaintiff had a dispositive motion on file with this Honorable Court. Given that discovery is closed and dispositive motions filed, the window to present new opinions or theories of recovery is at an end. As such, plaintiff's untimely supplemental reports should be struck.

Finally, plaintiff claims that he has not subjected defendants to "trial by ambush." The timing of plaintiff's submission of Dr. Williams' supplement demonstrates just the opposite. Plaintiff deposed Dr. Cole, Forest River's expert in epidemiology, the morning of January 27, 2010, and asked him numerous questions on leukemia and its association with formaldehyde. **Less than four hours** after Dr. Cole's deposition concluded, plaintiff submitted the supplement from Dr. Williams. Indeed, the only plausible motivation in submitting the expert report in this fashion was plaintiff's desire to ambush defendants.

In fact, in his Opposition to defendants' Motion to Strike Williams' supplemental report, plaintiff now uses Dr. Cole's deposition testimony to support his position that Dr. Cole knew about IARC's findings on leukemia. This discussion is irrelevant. Because Dr. Williams did not discuss leukemia in her prior reports, Dr. Cole had no duty to address these issues in his reports. Dr. Cole's familiarity with a particular study does not somehow translate into an automatic right for Dr. Williams to discuss that study at trial. Plaintiff's examination of Dr. Cole was, in part, subterfuge to improperly introduce extraneous and novel issues, all in an effort to fabricate some justification

for the introduction of Williams' new opinions at the eleventh hour. This maneuver is entirely inappropriate, and the Court should strike Dr. Williams' January 2010 report accordingly.

**B.    Dr. Hewett**

Plaintiff argues that the Hewett supplement should be permitted because "his basic conclusions remain the same." In fact, plaintiff claims that the comparison of the DeVany data to the other data in the Forest River dataset was an "additional analysis that he [Hewett] considered unnecessary." If these things are true, then the supplement is duplicative and unnecessary. By definition it is therefore irrelevant and fails the basic test of Rule 403 of the Federal Rules of Evidence. The Hewett supplement should not be allowed because it is inadmissible.

More to the point, plaintiff seems to be suggesting that when a flaw in an expert report is explored through a deposition, the expert ought to have an unfettered right to correct that flaw through supplementation. This is not the case, particularly not months after the expert report deadline, after the close of discovery, and on the eve of a complex, expert-driven trial. If plaintiff's position were to stand, the defense would certainly have to conduct another deposition of Dr. Hewett. The defense believes additional flaws would come to light. Then, presumably, he would again attempt to correct them, leading to more depositions, motion practice, and so on. Given the current trial schedule, this process is prejudicial and should not be permitted.

The main flaw about which Dr. Hewett was questioned at his deposition – the inclusion of a large number of formaldehyde measurements taken by DeVany Industrial in unoccupied trailers under conditions that in no way approximated living conditions – is not new. Dr. Hewett was questioned on this point in the *Alexander* case. Dr. Hewett had all of the data necessary to conduct this analysis before he issued his report, and he knew that this was a flaw. If he were going to

respond to this criticism, the time to do it was in accord with the Court's Scheduling Order, not after the close of discovery.

Plaintiff also distorts the nature of Dr. Hewett's findings. When plaintiff talks about "basic conclusions" remaining the same, he refers apparently only to the conclusion that measurements of formaldehyde concentrations in "X%" of Forest River Salem model trailers exceed the very low levels of formaldehyde mentioned by the ATSDR or NIOSH. The "X%" may differ somewhat as between the October 2009 report and the January 21, 2010, supplement, but to Plaintiff's way of thinking, because "X%" is still a pretty high number, the differences are irrelevant. Plaintiff's argument fails, however, because this is not all that Dr. Hewett says. He calculates actual arithmetic and geometrical means, and various point estimates of the "true average" concentration of formaldehyde in trailers. These numbers do differ significantly – to minimize them as remaining basically the same is disingenuous, at best.

Indeed, plaintiff even goes so far as to say that the arithmetic average shown in the original report -- .463 ppm – has "not change[d] in any significant matter" when Dr. Hewett states in his new report that the average in unoccupied trailers is .672 ppm, and the average in occupied trailers is .142 ppm, because the average of those two averages is .407 ppm, which according to Plaintiff's counsel is "not that different from .463."[1] First of all, this is just the argument of plaintiff's counsel; it is not a statement from Dr. Hewett, presumably because it makes no sense. First, Dr. Hewett himself testified that the true average concentration was best estimated through the "MVUE" rather than the

---

[1] Moreover, this is bad math: .463 is statistically different from .407 under these circumstances. Aside from statistics, we should not lose sight of the context of this case. Plaintiff expert Bill Scott took a reading in plaintiff's trailer in October 2008 of .048 ppm. The difference between .463 and .407 is .056. Therefore, arguing that .463 and .407 are not that different is a lot like claiming that .048 is not that different than zero.

arithmetic mean, so plaintiff's counsel is not even talking about the right numbers. But, equally importantly, saying that "the average is .463" is different from saying "there are two populations here, and their averages are .142 and .672." If Dr. Hewett had wished to make the second claim, he had all the necessary data to do it in his first report, and he should have done so then.

Dr. Hewett's ANOVA analysis does not change this result. His October 2009 conclusions about average formaldehyde concentrations were tainted by his reliance on data collected by DeVany in unoccupied trailers under unnatural conditions. His ANOVA analysis, if it shows anything at all, shows only that the six measurements that DeVany took in occupied trailers were not much different than the readings other testers got in occupied trailers. This is both not surprising and totally irrelevant. Dr. Hewett's original *and his supplemental* reports both calculate estimates of the true average that rely on the unoccupied trailers as well. Since the ANOVA analysis does nothing to cure the underlying problem, it is inadmissible and for that reason should not be permitted as a supplement.

With regard to the decay analysis, the supplement purports to delete all of the support – a regression analysis – that relates to his conclusion that formaldehyde concentrations in trailers decline with the age of the trailer. Dr. Hewett is not an expert in wood science, or chemistry, or anything else related to formaldehyde. Without a statistical analysis, he has absolutely no basis for drawing the conclusion that formaldehyde concentrations decline with age. If Dr. Hewett is permitted to remove the regression analysis from his report, then he should not be permitted to discuss a relationship between formaldehyde concentration and age at all.

### C. Paul Lagrange

In his Opposition to the Motion to Strike Lagrange's supplemental report, plaintiff asserts that Lagrange's supplement was designed to correct (1) flawed calculations on the trailer's air exchange rate and (2) inaccurate depictions of the trailer's roof.

Although these revisions are not "new" information in the way that Dr. Williams' opinions on leukemia are, they should nevertheless be excluded. Courts have routinely rejected untimely "supplemental" expert testimony where the opinions are based upon information available prior to the deadline for expert disclosures. *See Lampe Berger USA, Inc v. Scentier, Inc.,* 2008 WL 3386716 (M.D. La. 2008); *Shelter Mut. Ins. Co. v. Culbertson's Ltd., Inc.*, 1999 WL 135297 (E.D. La. 1999) (Duval, J.); *Simmons v. Johnson*, 2008 WL 474203 (M.D. La. 2008); *Buxton v. Lil' Drug Store Products, Inc.*, 2007 WL 2254492 (S.D. Miss. 2007).

Defendants assert that all of the information pertaining to air exchange rates and roof size/shape was available to Lagrange at the time he issued his report. His "supplemental report" is simply being used as a means to comment upon other experts' findings, specifically with respect to the air exchange rate observed by Forest River's experts at Liberty Building Forensics Group. The Scheduling Order does not allow for parties to engage in this sort of endless exchange of competing expert reports back and forth. Lagrange had all the tools and materials necessary to form his opinions, and he should not be allowed to supplement to address issues which could have been addressed prior to his deposition.

Moreover, opposing counsel has no justification for the delay in producing Lagrange's supplemental report. Their expert had all the information regarding air exchange rates from Liberty Building Forensic Group by November 2, 2009, the date Liberty's expert report was submitted. By

providing this supplement over two months later on January 8, 2009, plaintiff seriously impaired defendants' ability to address these new opinions, especially in light of the fact that (1) other depositions were already booked almost every day in January and (2) the upcoming dispositive motion deadline was set for the end of the month. Lagrange's delay in submitting this report is without good cause, and the Court should strike it as a result.

## CONCLUSION

For the foregoing reasons, defendants Forest River, Inc. and Shaw Environmental, Inc. respectfully request the Court to strike any and all opinions contained in the supplements to plaintiffs' expert reports.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (#6154)
JASON D. BONE (#28315)
CARSON W. STRICKLAND (#31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

/s/ M. David Kurtz
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
*ATTORNEYS FOR SHAW
ENVIRONMENTAL, INC.*

**C E R T I F I C A T E**

I hereby certify that on the 5th day of February, 2010, a copy of the foregoing *Memorandum in Support* was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone
JASON D. BONE