UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-5"<br><br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO:
*Lyndon T. Wright v. Forest River, Inc., et al,*
**Docket No. 09-2977**
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* ON ANY REFERNCE TO PLAINTIFF WITNESSING ANY TESTIMONY AT PRIOR TRIAL

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Lyndon Wright (hereinafter "Plaintiff" or "Wright"), who offers this memorandum in support of his Motion *in Limine* on any reference by Defendants Forest River, Inc. ("Forest River") or Shaw Environmental, Inc. ("Shaw) (collectively hereinafter the "Defendants"), relating to Plaintiff being influenced by his witnessing of the testimony of Edward Shwery, Ph.D. at the September bellwether trial.  This is both irrelevant based upon the testimony of Defendants' own expert psychiatrist, and highly prejudicial against the Plaintiff far outweighing any possible probative value gained by the Defendants.

Plaintiff Wright underwent a series of psychological and psychiatric evaluations in the instant litigation.  He was first seen by Dr. Shwery in July, 2009.  Dr. Shwery's initial report was produced on July, 21, 2009 and was based upon that initial evaluation and testing conducted in

1

relation thereto. A second report was submitted by Dr. Shwery following a September 24, 2009 evaluation and examination, which included discussion of increased psychological symptomology relating to anxiety and depression suffered by Wright. Defendants' psychiatric expert, John Thompson, Jr., MD, evaluated Wright on November 5, 2009, and again found increased anxiety and depression on the psychological testing compared to his July results as reported by Dr. Shwery.

Dr. Shwery reports a very simple explanation for this dramatic increase in reported anxiety and depression. He discusses a biopsy performed on Wright by Dr. Richard Spector in late July, 2009 (after Dr. Shwery issued his preliminary report), on a mass growing at the base of Wright's tongue. In his report, Shwery writes:[1]

> The need for surgical intervention and examination of a biopsy of the mass has crystallized many of the psychological issues which Lyn had been coping more successfully prior to the surgery in late July, 2009….
>
> Lyn reports that he recently has become more distressed and is experiencing increased mental anguish compared to his mental status when I saw him two months ago. When I inquired of his recent increase in depression he stated, "The lump, it worries me. Dr. Spector wondered if it might be cancer, so far it's not clear what it is. When the doctor found it, I started to worry that what if it is cancer. Since the biopsy, I still have bleeding…"

However, Defendants have placed a large amount of emphasis on the fact that Lyndon Wright spent an hour at the *Alexander/Cooper* trial one morning in September, 2009. The morning which Wright attended happened to include Dr. Shwery's testimony (in addition to several video testimonies). Defense has attempted to construe this observation as somehow influencing his reporting of symptoms in his own case.

---

[1] Dr. Shwery's final report is attached hereto as Exhibit "A", see pp. 1-2.

Dr. Thompson, in his November, 2009 report states: "Confounding the anxiety issue is the fact that Mr. Wright went to a FEMA trailer trial and watched Dr. Shwery testify."[2] Dr. Thompson then goes on to state that the elevated anxiety was reported to Dr. Shwery less than a week later and was reported as severe. Dr. Thompson fails, however, to state that the independent testing conducted at his own instruction also found Mr. Wright to be reporting anxiety in the severe range.[3]

Most importantly, however, is the sworn testimony given by Dr. Thompson relating to malingering, or the absence thereof. In his report, Dr. Thompson states: "According to the DSM-IV, the essential feature of Malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives…"[4] However, Dr. Thompson volunteered at his deposition that he did not think that Wright was malingering. He stated:[5]

> …So malingering is not about a particular test. It's about looking at all of the information and just trying to determine what makes sense or what doesn't in light of that information. So, I don't know. That's the best I can answer the question.
>
> EXAMINATION BY MR. REICH:
>
> Q.    I want you to identify for me –
>
> A.    But I never diagnosed him as malingering, okay?
>
> Q.    All right. So your position is he is not a malingerer and you have not diagnosed him as a malingerer, correct?
>
> MR. BONE:
>
> > Object to the Form.

---

[2] Dr. Thompson's report is attached hereto as Exhibit "B", see p. 14.
[3] See Exhibit "B", pp. 11-12.
[4] See Exhibit "B", p. 13
[5] Selected pages of Dr. Thompson's deposition transcript are attached hereto as Exhibit "C".

EXAMINATION BY MR. REICH:

Q.     Is that true?

A.     That's correct.

If Dr. Thompson believed that Wright's observing Dr. Shwery's testimony actually caused him to modify how he reported his symptoms, anxiety and depression, it would have neatly fit into his definition of malingering given in his report.  However, at deposition, he **volunteered** that he did not diagnose Wright as a malingerer.  This alone should be sufficient to limit any reference by Defendants relating to the Plaintiff witnessing testimony by Dr. Shwery at the bellwether trial in September, 2009.

It is also important to note that the testimony given in the September, 2009 bellwether is significantly different from the anticipated testimony of Dr. Shwery in the instant matter.  As this Court is well aware, as was the focal premise of the Order and Reasons denying class certification, the injuries experienced by plaintiffs in the MDL are by their very nature, personal. The testimony given by Dr. Shwery in the September bellwether trial related to the specific experiences of an eight year-old boy, and the worries and concerns he had with his asthma.  As such, any value derived by Wright in observing any specific prior testimony is greatly tempered by the very different facts at issue in that case.

Even if there was some conceivable probative value which could be derived from Defendants bringing this issue of Wright's witnessing Dr. Shwery testify at an earlier trial, it would greatly prejudice the Plaintiff because defense would plant the implication that Wright's injuries and concerns are merely litigation driven.  This would greatly impair Wright's credibility with the jury, where Wright's prior physician stated at his deposition that he had no reason to doubt Wright's veracity, and that he believed Wright to be reliable and honest.

Dr. Field, Wright's treating doctor from 2000 to 2006 stated at deposition:[6]

Q. Now, we have been sitting here discussing Lyndon's personal details in his medical records for this jury for two hours now, and it occurs to me that the jury doesn't know anything about Lyndon. What kind of person is Lyndon, in your opinion?

A. Very nice person, very reliable. Faithfully made his appointments. He was sort of very down to earth. He was always up front with his problems. Didn't speak a whole lot, but mostly was a very reliable patient and would return faithfully for his visits.

Q. Now, you had the occasion to see him over a span of five years; is that correct?

A. Yes.

Q. During those five years, did you have the opportunity to learn anything about Lyndon's veracity as a patient?

A. Well, he seemed to be – everything seemed to be – well, he just seemed to be honest throughout the time. I didn't have any reason to question his sincerity, you know.

Q. I would like for you to describe for the jury a little bit about Lyndon's personality. Is it fair to state that he is shy, somewhat reserve?

A. Yes, he was kind of quiet and didn't talk a whole lot.

Q. Some patients I know you see complain a lot and talk a lot. Is Lyndon one of those patients?

A. No, he spoke only when spoken to. In other words, some people just answer the questions and that was it. He wouldn't elaborate too much.

The fact pattern of a biopsy and medical uncertainty following the biopsy of the cause of not only Wright's growth in his throat at the base of his tongue, but also the bleeding he was experiencing is a valid and likely explanation for his increased anxiety and depression. A concocted argument that he witnessed trial testimony which made him change his entire approach to his litigation, where any such argument is contradicted by Defendants' own expert,

---

[6] Selected pages of Dr. Field's deposition are attached hereto as Exhibit "D".

would clearly and unfairly prejudice the jury and should be excluded as both irrelevant and as unfairly prejudicial under Rules 402 and 403 of the Federal Rules of Evidence. It is axiomatic that the Court has great discretion in determining what evidence may be excluded as unfairly prejudicial.

It is also important to note, that should Defendants choose to bring up the issue of prior litigation, Plaintiff would argue that opens the door to discussing the prior litigation. Not only can Plaintiff anticipate an argument that such would be unfairly prejudicial to defendants, but counsel for both Plaintiff and Defendants have stipulated an agreement not to discuss other MDL Claims.[7]

For the reasons discussed herein, Plaintiff respectfully requests that this honorable Court grant the Motion *in Limine* relating to any reference to Plaintiff Wright observing any trial testimony given in the previous bellwether trial.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:  s/Gerald E. Meunier
 GERALD E. MEUNIER, #9471
 **PLAINTIFFS' CO-LIAISON COUNSEL**
 Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
 2800 Energy Centre, 1100 Poydras Street
 New Orleans, Louisiana 70163
 Telephone:  504/522-2304
 Facsimile:  504/528-9973
 gmeunier@gainsben.com

---

[7] See Doc. 11181, wherein all parties stipulate, amongst other things, to refrain from discussing other MDL litigation or claims, based upon this Court's Order and Reasons, Doc. No. 8171.

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
Dennis Reich, Texas #16739600

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on February 9, 2010.

 s/Gerald E. Meunier
GERALD E. MEUNIER, #9471