**Tulane University**

SCHOOL OF MEDICINE
Department of Psychiatry and Neurology
1440 Canal St  TB53
New Orleans, Louisiana 70112
(504) 988-2201  Fax (504) 988-7457
www.psychneuro.tulane.edu

Forensic Neuropsychiatry
John W. Thompson, Jr. M.D.
Director

November 17, 2009

Jason Bone
Gieger, Laborde, Laperouse
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, LA  70139

### Psychiatric Civil Forensic Evaluation

| | |
|---|---|
| **Name:** | Lyndon T. Wright |
| **Age:** | 39 |
| **Date of Birth** | 4-1-70 |
| **SS#:** | XXX-XX-1748 |
| **Case:** | Lyndon Wright v. Forest River, Inc. et al. USDC, E.D.LA. No. 09-2977 "N" (5) Part of FEMA trailer formaldehyde products liability litigation. |
| **Date of Evaluation:** | 11-5-09 |

## PURPOSE OF THE EVALUATION:

Pursuant to a lawsuit filed by Mr. Wright against Forest River, Inc. et al, I was asked to perform an independent psychiatric evaluation on Mr. Wright in order to determine psychiatric diagnoses, psychiatric prognosis, and causation in relation to alleged formaldehyde exposure in a FEMA trailer from March, 2006 to July, 2008. The evaluation took place at Tulane University Hospital and Clinics, 1440 Canal St., New Orleans, LA, on 11-5-09 and lasted approximately 2 hours of face-to-face interviewing and an additional 2-3 hours of psychological testing.

## STATEMENT OF NON-CONFIDENTIALITY:

Prior to the onset of the evaluation Mr. Wright was informed of the non-confidential nature of the evaluation. He was also given a verbal HIPAA Notice of Privacy Practices and the limitations thereof. He decided to proceed knowing such.

## QUALIFICATIONS OF THE EXAMINER:

The qualifications of the examiner John W. Thompson, Jr., MD are outlined in my Curriculum Vitae, which is attached for review.

Lyndon Wright
Page 2

## SOURCES OF INFORMATION:

1. **Affidavit of Edward Halie Shwery.**

2. **Psychological Examination --- Edward Halie Shwery, PhD dated 07/21/09.**

Dr. Shwery evaluated Mr. Wright and found that he was an appropriately dressed and groomed individual, appearing his stated age. He reported that Mr. Wright had complaints about problems that were happening while he was living in the FEMA trailer. He noted in his report that in 2002, Mr. Wright reported seeing physicians at the Uptown Clinic and was prescribed Effexor. He reported that Mr. Wright took the medication for 2 or 3 months and then stopped the medication. (Uptown Nephrology Clinic records, including testimony by Dr. Field, in his deposition, document that Mr. Wright started this medication in August of 2000 and continued to take it while Dr. Field was caring for him through 2005. He was depressed on and off from 2000 to 2003 and perhaps even as a teenager according to Dr. Field.)

Dr. Shwery also reported that Mr. Wright had reported continuing burning and redness in his eyes and increased frequency of coughing and headaches. He reported that Mr. Wright developed depression after approximately 9-12 months of living in the trailer. He reported that Mr. Wright started Effexor medication and reading self-help books which he had used in the past for depression. He reported that his condition was improved with these treatments. He stated that at one time Mr. Wright reported suicidal ideation while living in the trailer. He also reported that after Mr. Wright moved out of the trailer, his mental status started to improve and his sex drive also improved. (Of note is that Mr. Wright reported problems with his sex drive from January 2001 long before his stay in the FEMA trailer. This history is noted in the deposition of Dr. Field and in the records from the Uptown Nephrology Clinic. Mr. Wright took sexual dysfunction medications of one kind or another up to his stay in the FEMA trailer.)

Dr. Shwery performed psychological testing on Mr. Wright giving him a Beck Anxiety Inventory. He scored a 9 indicating that Mr. Wright was in the mild range of anxiety. He also administered the Beck Depression Inventory 2. Mr. Wright scored an 8, which is in the minimal range of depression. Dr. Shwery also administered an MMPI-2 as well as other tests. The On the MMPI-2, he stated "Lyn is not experiencing intense problems with anxiety, or depression, but the clinical issues are lingering under the surface." (He did not mention that Mr. Wright scored high on the alcohol/substance abuse section of the MMPI-2.)

Dr. Shwery's initial diagnosis was Anxiety disorder due to pulmonary problems.

Under Summary and Recommendations, Dr. Shwery reported "Lyn has basically been psychologically healthy and well adjusted during his life." (This is in contrast to the deposition of Dr. Field and the records of the Uptown Nephrology Clinic which demonstrate

Lyndon Wright
Page 3

that he was depressed for five years before the FEMA trailer habitation.) He also implied in his summary that Mr. Wright was experiencing "private worry and distress" and that he was particularly alarmed about "bone density issues." (The issues of bone density started prior to his stay in the FEMA trailer as well.) Dr. Shwery recommended that outpatient counseling to allay Mr. Wright's private anxieties. (To my knowledge this counseling has not occurred.) He strongly recommended consultation between his treating psychologists and medical doctors and recommended follow-up psychological examinations should he develop a chronic pain problem. He opined about the cost of future treatments as well and placed the costs at approximately 50,000 dollars.

### 3. Psychological Examination — Edward Halie Shwery, PhD dated 09/24/09.

In this evaluation Dr. Shwery saw Mr. Wright for re-examination when he reported developing additional psychological problems since he saw his ENT surgeon, Dr. Spector and had a benign mass removed from the base of his tongue. Dr. Shwery reported that Dr. Spector had informed Mr. Wright that he did not have cancer and he reported that Mr. Wright had stated to him that the cause of a lesion on his tongue was undetermined. Dr. Shwery felt that the examination and biopsy of the mass had "crystallized many of the psychological issues with which Lyn has been coping more successfully prior to the surgery in late 2009." Mr. Wright reported to Dr. Shwery that he had become more concerned about the formaldehyde in the trailer "it's like I was cooking in the formaldehyde. The more I think about all this, the more I worry about what is coming down the line for me. How long does it take for formaldehyde to have an effect on you? Will it be when I am 45 or 50?" He reported that Mr. Wright became upset about this and he had to be consoled. Mr. Wright reported to him "I really didn't think it was that serious (living in a trailer), but then all kinds of things started going off in my head. It all got worse after I saw Dr. Spector a couple of months ago."

The Beck Anxiety Inventory was re-administered and Mr. Wright scored a 36 on it. The Beck Depression Inventory was administered and he scored a 25. These were considerable increases compared to his previous scores. (Of note, is that Dr. Shwery did not repeat the MMPI2 which contains validity scales.) He again gave Mr. Wright a diagnosis of anxiety disorder due to pulmonary problems but also added depressive disorder NOS and recorded again that he had worries about long-term health. He reported an increase in the recommended amount of psychotherapy that Mr. Wright might have to receive with total future medical costs of $65,400. (Dr. Shwery failed to mention in his report that Mr. Wright went to view Dr. Shwery testify in another FEMA trailer trial between the time of the first evaluation and the second evaluation. Also omitted was the impact of viewing Dr. Shwery's testimony on increasing the psychological testing scores. The tests and re-evaluation were performed within one week after Mr. Wright witnessed the testimony.)

### 4. Videotaped Deposition of Lyndon Wright dated 07/10/09.

Mr. Wright was asked numerous questions concerning general background information about his upbringing and education. He reported having a high school education and

Lyndon Wright
Page 4

graduated from Walter L. Cohen. He also reported that he had a long-term hearing deficit.
He outlined the various places where he was employed, both before Hurricane Katrina and
after. He discussed various medical conditions as questions were posed to him. He
described medical conditions that he had prior to living in the FEMA trailer, including
depression and treatment of his depression with the medication, Effexor. He also described
problems with erectile dysfunction and treatment with various medications for this
condition. He described his time in the FEMA trailer, various aspects of life in the FEMA
trailer and what his concerns were about the FEMA trailer. He also reported experiencing
depressive symptoms while in the FEMA trailer. He expressed concerns about long-term
health risks and the fact that he may not be able to work as long if his chronic medical
conditions did not improve.

5. **Plaintiff Fact Sheet dated 2/19/09.**

   In this fact sheet, Mr. Wright reported that he had been seen for depression treatment by Dr.
   Angela Reginnelli and treated for depression while in the FEMA trailer.

6. **Authorization for Release of Psychological/Psychiatric Records pursuant to 45C.S.R.
   (HIPAA). To be signed by plaintiffs making a claim for emotional stress.**

7. **Affidavit of Philip Cole, MD, DrPH dated October, 2009.**

   On page 10, Dr. Cole reports: "These meta analyses support the views of Marsh and his
   colleagues, described above, as well as my own view that formaldehyde does not cause NPC
   (nasopharyngeal cancer) or leukemia."

8. **Affidavit of George Farber, MD dated 10/2/2009 including supplemental affidavit.**

9. **Medical Records of Mr. Lyndon Wright.**

   These medical records document the reported symptoms of Mr. Wright that were described
   in Dr. Field's deposition. They documented that Effexor was in fact started in 2000 and also
   restarted in 2001 and that Mr. Wright was treated for depression long before his time in the
   FEMA trailer. He may have experienced depression as a teenager.

   Other conditions diagnosed and or treated were weight loss, erectile dysfunction and
   decreased sexual desire, osteoporosis, ear infections, hypothyroidism, and others.

10. **Videotaped Deposition of Dr. Edward Shwery dated 06/18/09.**

11. **Transcript of Testimony of Dr. Edward Shwery taken 08/10/09.**

Lyndon Wright
Page 5

12. Videotaped Deposition of Dr. Charles Shepard Field, Jr., dated 10/20/09.

In this deposition, Dr. Field described his treatment of Mr. Wright. He reported that Mr. Wright had depression which started in 2000 and was treated with Efexor. The medication was discontinued by Mr. Wright after he reached a maximum dose of 225 mgs. His symptoms returned and he was placed back on the medication. Dr. Field reported that Mr. Wright had problems, on and off, with depression for the time he treated him prior to Hurricane Katrina. He also reported on Mr. Wright's chronic medical conditions, which included degenerative scoliosis, osteoporosis, and erectile dysfunction as well as his testing Mr. Wright for HIV and other sexually transmitted diseases. He also reported on treatment with various medications for erectile dysfunction.

13. Curriculum Vitae of George A. Farber, MD.

14. Curriculum Vitae of Lawrence G. Miller, MD.

15. Affidavit of Lawrence G. Miller, MD dated 10/2/09.

16. Affidavit and Report of Richard A. Spector, MD, JD dated 07/25/09 and Deposition of Dr. Spector dated 10/29/09.

17. Forest River Recreational Vehicle Owners' Manual for Travel Trailers and 5th Wheels.

18. Material Safety Data Sheets for various hazardous materials.

19. Record of Patient Financial History from Uptown Nephrology and Office Visits.

20. U.S. Department of Labor, Occupational and Safety Health Administration, Region 6, Baton Rouge Area Office letter dated 9/13/07 signed by Greg Honaker, Area Director.

21. Report dated 12/15/05 from Materials Management Group Inc. on various mold spores and mold counts at five facilities in New Orleans.

22. Materials Management Group Inc. Limited Indoor Air Quality Evaluation at 2W20 of City Hall dated 5/27/06

23. Mold Investigation Report dated 6/6/08 from Materials Management Group Inc.

24. Materials Management Group Inc. report dated 12/14/05, Asbestos Sampling Report.

25. Materials Management Group Inc. report dated 12/27/05, Limited Indoor Air Quality Evaluation of the Basement of City Hall.

Lyndon Wright
Page 6

26. Pharmacy Records from Walgreen Company and Rite-Aid.

These were prescriptions filled by Mr. Wright including Effexor which was prescribed for him for depression. There are also prescriptions filled for Cialis which was filled both before and after Mr. Wrights occupation of the FEMA trailer in 2006.

27. Certification of Medical Records from Touro Infirmary dated 3/24/09 and 4/13/09.

28. Affidavit of Paul Hewett concerning the FEMA Trailer Formaldehyde Products Liability Litigation, an analysis of the Forest River, Inc. formaldehyde data set dated 9/26/09.

29. Record from Paul Hewett, PhD, an analysis of Gulf Stream Coach Inc. Formaldehyde Exposure data sheet dated 5/18/09.

30. Electrical Systems Operational Report for the FEMA Trailer of Lyndon Wright prepared by D. Hicks Consulting Inc., P.O. 52311, Lafayette, LA dated 10/1/09.

31. Letter from Paul LaGrange of LaGrange Consulting dated 7/21/09 addressed to Aaron Z. Ahlquist, Class Action Attorney, Frank J. D'Amico, Jr. APLC, re: FEMA Trailer Formaldehyde Products Liability Litigation, U.S. District Court, Eastern District of LA MDL#1873.

32. Report dated August 2009 which is referred to as an inspection report, prepared by Lagrange Consulting, prepared for Al Mallet, Jr. (on the front cover).

33. Records from Kenneth R. Laughery, PhD dated 10/1/09, re: Wright v Forest River, Inc., Shaw Environmental, Inc. and FEMA.

34. Inspection Report of Lyndon Wright's FEMA temporary housing unit dated 10/2/09 from First General Services of the South, Inc.

35. Preliminary Inspection Report for Lyndon Wright's FEMA temporary housing unit dated 07/29/09 by First General Services of the South, Inc.

36. Preliminary Structural Condition Assessment performed by Charles David Moore, of Freyou, Moore & Associates, Inc. prepared for First General Services of the South, Inc. dated 10/2/09 and 7/24/09.

37. Preliminary Report of the FEMA Trailer prepared by Erwin L. Ritter, PE dated 7/23/09.

38. Investigation and Inspection of FEMA Travel Trailer prepared by Erwin L. Ritter, PE dated 10/1/09.

Lyndon Wright
Page 7

39. Affidavits of William D. Scott, PE, CHMM prepared and dated 10/2/09 and 07/28/09.

40. Affidavits of Stephen Smulski, PhD dated 9/29/09 and 7/27/09.

41. Preliminary Affidavit of Patricia M. Williams, PhD dated 10/2/09.

This is an affidavit of the plaintiff's expert who opines that formaldehyde may cause cancer in certain individuals.

42. Affidavit of Patricia M. Williams, PhD, ABT dated 8/11/08.

43. Raw data from Dr. Shwery's testing dated 7/21/09 and 9/24/09.

This data included the Beck Depression Inventory and the Beck Anxiety Inventory as well as MMPI-2 raw data and MBMD raw data from his 9/24/09 evaluation. Also included were the Beck Depression Inventory and the Beck Anxiety Inventory. There was a marked increase in scores between the first and second administration of the BDI (from 8 to 25) and BAI (from 9 to 36).

44. Testing interpreted by Gina Manguno-Mire, PhD from 11-5-09.

Mr. Wright scored a 17 on his Beck Depression Inventory (mild depressive symptoms) which was down from the 25 in Dr. Shwery's second evaluation. He scored a 31 on the Beck Anxiety Inventory (severe anxiety symptoms) which was also down from Dr. Shwery's second evaluation where he scored a 36.

The MMPI-2 showed an increase in depressive symptoms compared to the previous MMPI-2 administered by Dr. Shwery at is first session. He also showed increased anxiety on the content scales of the MMPI-2 compared to the previous MMPI. He again showed an elevation on the alcohol/substance abuse scales.

## FUNCTIONING PRIOR TO THE FEMA TRAILER OCCUPANCY:

Mr. Wright reported that he was evaluated by Dr. Field starting sometime in 2003 and 2004. (As stated above the depression treatment started in 2000.) He reported that at that time he was not going to the doctor for depression but that Dr. Field noted that he was depressed. The doctor suggested that he take Effexor, which is an anti-depressant medication. He started on Effexor and was treated for sometime but discontinued the medication. He reported that he stopped taking the medication because it made him sleepy and he did not take it for very long. He also reported that after Dr. Field left, Dr. Cruz took Dr. Fields' place and that Dr. Cruz may have treated him for depression as well. Mr. Wright reported that in the aftermath of Hurricane Katrina, he came back to the City of New Orleans after evacuating and was initially placed on the cruise ship while working for the City of New Orleans. He reported that he did not have a lot of

Lyndon Wright
Page 8

psychiatric problems while working on the cruise ship because he was given 3 meals a day and he had his own cabin. After some time, the FEMA trailer was moved to his property in November 2005 and was ready for his occupancy in March 2006.

## ACCOUNT OF THE TIME OF OCCUPANCY IN THE FEMA TRAILER:

Mr. Wright said that he was in the FEMA trailer from March 2006 to July 2008. He initially noted that his sinuses were acting up and that his mouth was dry. He thought that it was not a big deal at first but noted that occasionally he would spit up sputum that was tinged with blood in the morning. He reported that this did not occur the rest of the day. By the time he finished brushing his teeth in the morning, all of the blood filled sputum was gone. He reported that "nothing hurt" and it wasn't going on all day long, so he didn't think it was a big deal. He said that over time, he reported these symptoms to his doctors who could not tell him why he was having these symptoms. He reported that while in the trailer, he started to experience depression and went to go see a Dr. Rigonelli, who started him back on Effexor. He reported that he took the medication for awhile but did not continue its use. He reported that when he got out of the FEMA trailer, he noticed that his mood improved and his "sex drive" came back. (His sex drive had been a problem reported in Dr. Field's records since 2001 up until the time he occupied the FEMA trailer.) He noticed that he felt less depressed because he was in "a more pleasant environment." When asked whether he thought the size of the trailer was depressing, he said, "yes, I had to turn sideways just to walk past the couch to get to the bathroom."

## FUNCTIONING SINCE LEAVING THE FEMA TRAILER:

Mr. Wright reported since leaving the FEMA trailer his depression has lifted and he was doing well. When he first saw Dr. Shwery, he did not have substantial depressive symptoms or anxiety symptoms. He told me that his anxiety symptoms started when he was shown the owner's manual for the trailer and he started getting involved in the litigation. The more he became involved in the litigation, the more anxious he became. He also reported feeling anxious after going to someone else's FEMA trial where he sat and watched Dr. Shwery testify. When asked why he reported being much worse at Dr. Shwery's second evaluation, he reported "nobody can give me a straight answer about the long-term effects of formaldehyde." (He did not mention going to see Dr. Shwery testify in another FEMA trial until he was asked directly by the examiner.)

Mr. Wright reported that his sinuses acted up more while he was in the trailer and have improved over time. Although, over the last 2 weeks the sinuses have given him trouble again. He reported that no doctor ever told him that his condition was cancerous. He reported that he was discovered to have a lesion on his tongue. After it was removed, he no longer had blood tinged sputum. He reported that the blood in his sputum had only happened 5 times since the tumor was removed. He did report anxiety related to the lesion on his tongue, even though he was told it was not cancer. Mr. Wright reported that since the litigation started, whenever he gets a medical condition he thinks it's related to the FEMA trailer and the formaldehyde. He said he hates it when his lawyer calls him to talk about the litigation because it makes him anxious.

Lyndon Wright
Page 9

## PSYCHIATRIC REVIEW OF SYMPTOMS:

When discussing specific psychiatric symptoms, Mr. Wright reported that his mood was neutral, that he had interest in going out and doing things that he normally would, including going to the movies with friends. He experienced pleasure when he engaged in these activities. He reported that his sleep was okay and his energy level was okay. He denied any excessive feelings of guilt. He reported that he was easily distracted, in reference to concentration but has always been that way. With reference to appetite, he reported that he had gained a few pounds but is back to his normal body weight. He denied psychomotor retardation and denied present suicidal thoughts. He reported that he had one suicidal thought while he was in the trailer to take some pills but he quickly dismissed this. (His Beck depression inventory score was 17 (mild depressive symptoms).

With reference to manic symptoms, he did not report a distinct period of abnormally and persistently elevated, expansive or irritable mood. With reference to anxiety symptoms, he reported "the whole litigation situation" makes him anxious. He reported that he did not know whether he was going to get sick or not and no one will give him a straight answer about whether he will get sick or not and that has him worried. His BAI score was 31(severe anxiety symptoms). With reference to post traumatic stress symptoms, he denied specific post traumatic stress symptoms. With reference to psychotic disorders, he reported that he was "paranoid". When asked to describe paranoia, he reported that he worries about medical conditions possibly occurring to him especially when the litigation is being discussed.

## PAST PSYCHIATRIC HISTORY:

As stated before, he was treated by Dr. Field with Effexor starting in August of 2000. (Dr. Field's deposition and records outline extensive treatment for depression which occurred over a long period of time from 2000 until before Hurricane Katrina. He also reported to Dr. Shwery that he had used self help books prior to his depression while in the FEMA trailer.)

## SUBSTANCE AND ALCOHOL HISTORY:

Mr. Wright reported that he drinks 3-16 ounce beers everyday after getting off from work. He also reported drinking up to a 6 pack of 16 oz. beers on weekends. He reported that when he was in a FEMA trailer, he drank heavily from the time he got home until 2 or 3 in the morning and that he would consume at least a 6 pack of 16 oz. beers everyday while in the trailer. He reported CAGE criteria positive for a desire to cut back on alcohol use and feeling guilty about the amount of alcohol he was using while he was in the FEMA trailer. At the time of my evaluation, he felt like his alcohol consumption was normal. He denied inpatient or outpatient treatment for substance abuse and denied DWIs or public intoxication. (Both of the MMPI-2 psychological tests performed on Mr. Wright demonstrated elevations in the alcohol/substance abuse scales.)

Lyndon Wright
Page 10

## PAST MEDICAL HISTORY:

He reported a history of a thyroid condition, history of hypertension and a history of chronic sinus problems. He also has a history of a small benign tumor on the base of his tongue which was felt to be "not malignant."

## MEDICATIONS:

1.  Rampril, 8 mg per day for hypertension.
2.  Synthroid, 100 micrograms per day for hypothyroidism.
3.  Folic Acid.
4.  Calcium and vitamin D supplements for bone density loss.
5.  Nasonex as needed for nasal congestion. (Note: Chronic administration of Nasonex has been associated with nose bleeding.)
6.  Levitra "to enhance sexual performance, increase duration."

As noted, Mr. Wright is not taking his anti depressant medication, Effexor. When asked why he was not taking it he stated; "I think I have adapted and I don't think I need it on a regular basis."

## ALLERGIES:

He reported no known drug allergies.

## FAMILY HISTORY:

He reported his mother was age 69 and has a history of gout and diabetes mellitus. His father is age 72 but he does not know his father's current medical conditions. He has a sister age 35 who has a cholesterol problem and is "paranoid". "She just lost it. Thought people were coming in the house to kill her. She is on medication."

## CHILDHOOD HISTORY:

He had a history of normal developmental milestones but has a right hearing loss and left hearing impairment secondary to chronic ear infections as a child. He was born and raised in New Orleans. He denied a history of physical abuse or sexual abuse.

## EDUCATIONAL HISTORY:

He reported that went through high school at Walter L. Cohen and graduated in 1988. He attempted to go to college at SUNO but quit after two semesters. He reported his grades in school were A's and B's. He denied truancy, fighting or expulsions.

Lyndon Wright
Page 11

## MARITAL HISTORY

He reported that he has never been married and he has no children.

## EMPLOYMENT HISTORY:

After high school he worked in temporary work as a security guard and general laborer. He also worked at Riverside Court Condominiums as a security guard. He started working for the Hyatt Regency in 1999 bussing tables and then later moved to the engineering department where he worked on and off until Hurricane Katrina. He started working for the City of New Orleans post-Hurricane Katrina.

## MILITARY HISTORY:

He reported that he tried to enter the military but due to hearing problems he was not accepted.

## LEGAL HISTORY:

He denied a previous criminal history and denied any other civil litigation.

## MENTAL STATUS EXAMINATION:

Mr. Wright was a thin male appearing his stated age who was not in acute distress. He was awake, alert and oriented to person, place, time, and situation. His attention and concentration were excellent. He was able to subtract Serial 7s without difficulty. His mood was normal and his affect was appropriate to his mood. His speech was goal directed and coherent with normal rate, rhythm and tone. His cognitive skills, both verbal and mathematical, were consistent with his level of education. His thought processes were logical, goal-directed and coherent. There was no flight of ideas, loosening of association, tangential or circumstantial thought process. He did not appear paranoid, bizarre or disorganized during the evaluation. Thought content was void of delusional beliefs and he denied hallucinations in all senses. He denied thought broadcasting, thought insertion, thought control or command hallucinations. His insight into his legal situation was felt to be fair. His judgment was also fair. He denied suicidal ideas or suicidal plans. He denied homicidal ideas or plans.

## PSYCHOLOGICAL TESTING:

Beck Depression Inventory: Mr. Wright's score was a 17 and landed in the mild range of depression. The score was improved from Dr. Shwery's second evaluation but higher that the first evaluation.

Beck Anxiety Inventory: Mr. Wright's score was a 31 and landed in the severe anxiety range. The score was improved from Dr. Shwery's second evaluation but higher that the first evaluation.

Lyndon Wright
Page 12

MMPI-2: Mr. Wright's was different than the first evaluation perfumed by Dr. Shwery. He had elevations on the depression clinical scale and elevations on the anxiety content scales compared to the first administration. He continued to show elevations with respect to potential alcohol or substance abuse issues.

## ASSESSMENT:

It is my opinion, with a reasonable degree of medical certainty, that Mr. Wright has the following psychiatric diagnoses. This opinion is based on a personal interview with Mr. Wright in the review of the data in the Sources of Information section. Should additional information become available, I will take it under consideration.

AXIS I:     *Major depression, chronic in partial remission on no medication.*

Mr. Wright has a history of depression and has been treated with Effexor since 2000. He reported that he was not taking this medication because he felt that he did not need it and he was not reporting depressive symptoms during the interview. He did report some mild depressive symptoms in the Beck Depression Inventory and significant depressive symptoms on the MMPI-2. This is in stark contrast to the clinical interview where he was relatively calm and controlled.

Another confounding issue is his regular alcohol use which is notorious for causing depressive symptoms or making them worse. Alcohol is a central nervous system depressant. Mr. Wright reported heavy alcohol consumption while in the FEMA trailer when he experienced depressive symptoms. Consumption of alcohol while he was in the FEMA trailer was likely a major contributor to his depressive symptoms. He reported that he drank almost every day while in the trailer until 2 am. He regularly drank 96 oz. of beer a night. He continues to consume 48 oz. of beer per night with 96 oz. on weekends. He reported that he wanted to cut down on his use of beer and felt he had a problem while he was in the FEMA trailer. His MMPI-2 scores also indicate a potential alcohol problem.

*Anxiety Disorder, NOS.*

Mr. Wright does not appear to have an anxiety disorder when he is interviewed. He does however report anxiety symptoms on psychological testing that do not fit into a common DSM-IV-TR category.

AXIS II:     *No Diagnosis*

Lyndon Wright
Page 13

**AXIS III:**    *HTN, Hypothyroidism, Chronic Hearing Loss, Osteoporosis, Sexual Dysfunction, Decreased Sexual Desire, Low body weight*

Weight loss and decreased sexual desire are classic symptoms of depression. Hypothyroidism is a common medical cause of depressive symptoms.

**AXIS IV:**    *Psychosocial Stressors* include problems related to the legal system e.g., Mr. Wright's major stressor is ongoing litigation and worry about some of the allegations in the litigation. He reported that he has anxiety when his lawyers call him or whenever he has to talk to someone about the litigation.

**AXIS V:**    *Global Assessment of Functioning 62:* He appeared to have mild to moderate symptoms. He reported depressive and anxiety symptoms but does not take the medication that has helped him in the past. He reported that these anxiety symptoms primarily occur when he is talking about his litigation or arguing with friends or family about the litigation.

## PRESENCE OR LACK OF MALINGERING:

According to the DSM-IV, the essential feature of Malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs. Under some circumstances, malingering may represent adaptive behavior--for example, feigning illness while captive of the enemy during wartime.

Malingering should be strongly suspected if any combination of the following is noted:

1. Medico legal context of presentation (e.g., the person is referred by an attorney to the clinician for examination)
2. Marked discrepancy between the person's claimed stress or disability and the objective findings
3. Lack of cooperation during the diagnostic evaluation and in complying with the prescribed treatment regimen
4. The presence of Antisocial Personality Disorder

With reference to #1, Mr. Wright presented in a medico legal context. With reference to #2, Mr. Wright reported worry which appears to be in excess of what is expected given the situation, but is not uncommon in some individuals experiencing this type of litigation. With reference to #3, Mr. Wright has been noncompliant with medication. It has been suggested that he remain on psychiatric medications, but he has discontinued them on his own and is not taking any at the present time. With reference to #4, he does not have antisocial personality disorder.

Lyndon Wright
Page 14

He has at least two of the above indicia of malingering but did not show a classic pattern of malingering on psychological testing. He is, however, acting against medical advice with reference to his non-compliance with anti-depressant medication. He also reported inaccurate dates with reference to the onset of depression and sexual dysfunction. In addition both MMPI-2 tests picked up on underlying long term emotional issues that he may not be revealing to mental health professionals.

## CAUSATION:

With reference to his depressive symptoms, it is my opinion that his depressive symptoms were present years prior to the litigation. They started in 2000 and are likely the result of a previous condition. Depressive symptoms which manifest during the FEMA trailer occupancy are likely the result of living in a confined space, increased use of alcohol, and the tremendous stress of post Katrina New Orleans. When he moved out of the trailer into a more pleasant environment and decreased his alcohol intake the depressive symptoms decreased. At the present time they are considered mild to moderate on no medication.

With reference to Mr. Wright's anxiety symptoms, it is my opinion that these symptoms are primarily driven by the process of the litigation. Increasing his anxiety is his history of osteoporosis and the recent biopsy of a benign lesion on his tongue. Mr. Wright does not have a clear idea of whether formaldehyde causes medical conditions such as cancer or if it is causing his medical conditions. He is worried because he perceives that he cannot get a straight answer from any of his doctors about this issue. (Dr. Spector discussed this with him frankly as per Dr. Spector's deposition.) This level of anxiety can bee seen in individuals with preexisting mental illness that are going through litigation of this type. I do not think that Mr. Wright legitimately believes that he will develop cancer from his exposure to formaldehyde in the FEMA trailer.

Confounding the above anxiety issues is the fact that Mr. Wright went to a FEMA trailer trial and watched Dr. Shwery testify. He was evaluated within a week after Dr. Shwery's testimony and had markedly elevated scores on the BDI and BAI. His BAI went from 9 to 36 after watching the FEMA trial. In addition he reported to me that each time he has to meet with someone to discuss the trial or deal with litigation issues it increases his anxiety.

An additional significant confound is that Mr. Wright is not taking his medication as described above. His need for medication started long before the litigation and is not causally related to his alleged exposure to formaldehyde in the FEMA supplied travel trailer.

## PROGNOSIS:

It is my opinion that Mr. Wright has a good prognosis should he restart his antidepressant and continue treatment with the medication that he has responded to in the past. This medication, Effexor, will improve his depressive symptoms and also protect him from litigation induced anxiety. He has been started on the medication three times and each time he discontinues

Lyndon Wright
Page 15

it when he feels a little better. He should take the medication regularly for the maximum benefit.
He will likely have minimal symptoms of anxiety when the litigation concludes.

I disagree with Dr. Shwery's long term medical costs. Treatment with an antidepressant is
not causally related to his alleged exposure to formaldehyde. Even so, the actual costs described
by Dr. Shwery are inflated and do not represent routine costs for mental health services in the
New Orleans area. Medication prescribing by a psychiatrist is usually 75 to 125 dollars per visit
and could be accomplished quarterly. Psychotherapy is usually 150 dollars or less per hour if
performed by a psychologist or licensed social worker.

Respectfully submitted,

John W. Thompson, Jr., MD
Vice Chair, Professor, and Chief,
Section of Adult Psychiatry
Director, Division of Forensic Neuropsychiatry
Tulane University School of Medicine