UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | *<br>*<br>*<br>*<br>*<br>*<br>* | MDL NO. 1873<br><br>SECTION "N" (5)<br><br>JUDGE ENGELHARDT<br>MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO | | *<br>* | |
| *Lyndon T. Wright v. Forest River, Inc., et al*,<br>Docket No. 09-2977; | | *<br>* | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO LIMIT THE TESTIMONY OF WILLIAM L. DYSON, PH.D. CIH

Plaintiff Lyndon T. Wright ("Mr. Wright" or "Plaintiff") respectfully submits the following memorandum in support of Plaintiff's *Daubert* Motion to Limit the Testimony of William L. Dyson, Ph.D. CIH, and hereto states:

### INTRODUCTION

The matter before this Court involves injuries caused by formaldehyde. In addition to other injuries, Plaintiff specifically asserts that the formaldehyde exposure while in the Forest River travel trailer caused respiratory problems and a fear of cancer. Defendant Forest River, Inc. designates William L. Dyson as an expert qualified to provide expert opinions concerning formaldehyde exposure and causation from the standpoint of an industrial hygienist. Attached as Exhibit "A" to this motion is the Expert Report of Dyson ("Report"). His opinions are set forth in paragraphs 1-10 on pages 18 and 19 of his report. Plaintiff seeks an order in limine specifically excluding the opinion testimony set forth in the paragraphs numbered 3, 4, 5, 6, 8 and 9. These opinions fail

to meet the reliability prongs of Fed. R. Evid. 702 and the principles of Daubert. As will be discussed *infra*, Dyson's opinions should be limited as Dyson could not provide the necessary support for his conclusions or such support simply does not exist.

I.      STANDARD OF ADMISSIBILITY

Under the Federal Rules of Evidence, the party offering the expert witness bears the burden of establishing that the expert is qualified to give the opinion, and that such opinion is both reliable and relevant to the case at bar. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). Prior to accepting the testimony of an expert witness, trial courts are charged with a "gatekeeper" function requiring a determination of whether an opinion is based upon sound, reliable theory. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 589-91 (1993). As such, "[p]roposed testimony must be supported by appropriate validation–*i.e.*, good grounds." *Id.* at 590 (internal quotations omitted). The concept of "good grounds" is codified under Federal Rule of Evidence 702, which provides that expert testimony is deemed reliable so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Several of Dyson's opinions fail to meet any of the reliability requirements set forth under Rule 702, and, thus, should be excluded.

II.     **CERTAIN DYSON OPINIONS ARE NOT RELIABLE UNDER RULE 702 AND SHOULD BE EXCLUDED.**

A.      **Dyson's Opinion Regarding the Effects of Gaseous Formaldehyde on Mr. Wright Is Outside His Expertise.**

Dyson sets forth the following opinion:

> 3. In light of available scientific data on sensory irritation from formaldehyde, it is unlikely that Mr. Wright would have experienced ocular, olfactory, or upper respiratory irritation at formaldehyde levels found in his travel trailer with the air-conditioning operating in August 2009.

*See*, Report at page 18.

This opinion is inherently unreliable. First, Dyson is not qualified to offer an expert opinion as to the cause of Plaintiff's medical problems. He is rendering an opinion on the causation of symptoms experienced by the Plaintiff, yet he is neither a medical doctor nor a toxicologist. Exhibit B, Deposition of William L. Dyson, Ph.D., CIH, October 27, 2009, p. 119. Dyson is an industrial hygienist whose core expertise is exposure, risk assessment and control of those risks. Exhibit C, Deposition of William L. Dyson, Ph.D., CIH, December 21, 2009, p. 9-10. Essentially, he relies on scientific articles and his own reactions to formaldehyde to support his conclusions. Exhibit B, p. 17-19. Dyson has performed no independent testing on the effects of formaldehyde exposure and has published no peer-reviewed papers on the subject. Exhibit B, p. 19-20. He states that it is "unlikely" that Mr. Wright would have experienced symptoms at formaldehyde levels found in his travel trailer with the air-conditioning operating in August 2009. This opinion is without foundation and is exactly the type of imprecise, unsubstantiated opinion that should be excluded as unreliable.

**B.      Dyson's Opinions Concerning The Levels of Formaldehyde Exposure Experienced By the Plaintiff Are Unsubstantiated Speculation**

The following opinions are contained in Dyson's Report:

> 4.   Even though the measurement was made after his occupancy, the best estimate of the formaldehyde exposure potentially experienced by Mr. Wright is the 0.035 to 0.044 ppm measured in the Forest River travel trailer in August 2009.
>
> 5.   Although the concentration of formaldehyde in the Forest River travel trailer may have been somewhat higher (under closed, unventilated conditions) than 0.035 to 0.044 ppm when Mr. Wright began occupancy in March 2006, it is not possible to determine quantitatively what the level might have been at that time.

Report at page 19.

In these contradictory opinions, Dyson attempts to provide estimates of the formaldehyde exposure experienced by Plaintiff. Through his testimony, however, he asserts that he, nor anyone else, can, with reasonable certainty, determine what the levels would have been in the past. In his deposition, Dyson testified as follows:

> Q.   If you would, explain your basis for that conclusion.
>
> A.   The -- well, it starts with the fact that there were no measurements made in that travel trailer during the period of occupancy, and so we're all left with the problem of estimating the exposures that Mr. Wright may have

4

> experienced.
>
> ….So although we can't say with absolute certainty that this represents the exposure of Mr. Wright, it's the only set of reasonable data points that we have on which to base our judgments.

(Exhibit C at p. 25 lines 17-23, p. 27, lines 5-8.)

Dyson has conceded that he is not able to quantify the levels of formaldehyde in the Forest River travel trailer at the time it was occupied by Mr. Wright. Yet, he attempts to do just that through a "best estimate" opinion that is little more than sheer speculation. Dyson should not be allowed to provide such inherently unreliable, unsubstantiated opinion testimony.

**C.   Dyson's Opinions Concerning Improvement in Formaldehyde Exposure by Operating the Air Conditioner in Plaintiff's Travel Trailer.**

The following opinion is contained in Dyson's Report:

> 6.   By operating the air conditioner in his travel trailer Mr. Wright made an improvement in his living conditions with respect to formaldehyde levels.

*See*, Report at page 19.

> Q.   So in Conclusion Number 6, basically the improvement in the living conditions when you're talking about that, you're talking about when he lowers the temperature of the unit, the inside temperature; is that correct?
>
> MR. BONE:  Object to the form.  You can answer.
>
> A.   That certainly is a way of reducing the formaldehyde levels to which he was exposed, yes.
>
> Q.   But operating that air conditioner would not provide more ventilation because it's a recirculating air conditioner; is that correct?
>
> MR. BONE:  Object to the form.

        A.     It -- it would not; that's correct.

(Exhibit C at p. 40, lines 6-19)

Dyson has conceded that turning on the air conditioner would not necessarily change the levels of formaldehyde in the Forest River travel trailer at the time it was occupied by Mr. Wright since the air conditioner was a recirculating unit. Yet, he attempts to do just that through a "best estimate" opinion that is little more than sheer speculation. Dyson should not be allowed to provide such inherently unreliable, unsubstantiated opinion testimony.

**D.**    **Dyson's Opinion Concerning Exposures by Direct Contact to Formaldehyde from Products Has No Factual Support.**

Dyson's Report contains the following opinion:

8.    More likely than not, Mr. Wright had direct contact with formaldehyde from products they used such as cleaners, cosmetics, and clothing.

Report at p. 19.

He makes this "more likely than not" conclusion without reference to any specific product used by the Plaintiff that contained formaldehyde. (Exhibit C, p. 42, lines 2-21). In fact, he specifically acknowledges that he did not know if Mr. Wright used such products.

        Q.     Okay. Let's look at Conclusion Number 8; if you'd read that one into the record.

        A.     "More likely than not, Mr. Wright had direct contact with formaldehyde in products he used such as cleansers, cosmetics, and clothing."

        Q.     How did you make that determination?

>   A. It speaks to his claim of dermatitis from -- in this case, but -- and again, I don't have specific evidence from his testimony about use of certain things, but the ubiquitous nature of formaldehyde in such products, especially permanent press clothing, I think, would suggest that the probabilities are very high. I can't say that with absolute precision.
>
>   Q. Okay. So would it be -- would it be fair to say that this conclusion is really not -- it's not based on anything that you determined directly from Mr. Wright as far as knowledge?
>
>   A. No. It's -- it's an expert's generalization, yes. I don't have specific facts in the case to support that conclusion.

(Exhibit C at p. 42, lines 2-21).

His opinion that Mr. Wright had direct contact with formaldehyde from products is nothing more than an unsupported assumption and should be disallowed by the Court.

**D. Dyson's Opinion That Mr. Wright's Exposure To Formaldehyde Was Unlikely To Be Higher Than That Experienced By Residents Of Conventional Homes In Southern Louisiana Is Irrelevant And Unsubstantiated.**

In his Report's conclusion 9, Dyson states as follows:

>   9. It is unlikely that Mr. Wright was exposed to average formaldehyde levels higher than those experienced by residents of conventional homes in Southern Louisiana.

This opinion is based on a study of 53 "conventional homes," not travel trailers, in Southern Louisiana. Although the average formaldehyde level was 0.5 parts per million, the testing results ranged from non-detectable to 5.4 parts per million. See, Exhibit C at p. 43. Such a wide range of levels presents a meaningless basis for comparison. This is especially true since Dyson cannot determine what formaldehyde level existed in the Wright travel trailer. See, Exhibit C above. Thus, it is impossible for him to say with

7

reliability that Mr. Wright was unlikely to be exposed to average formaldehyde limits higher than those experienced by residents of conventional homes in Southern Louisiana.  *See*, Exhibit C, p. 42-44.  In any event the comparison is meaningless.  The issues are the exposure and resulting physical impacts in the Forest River travel trailer occupied by Mr. Wright.

## CONCLUSION

As set forth above, certain opinions of Defendant's expert Dyson should not be allowed to be presented at the trial of this case.  Although not a medical doctor or toxicologist, he opined on the cause of medical problems.  Even though he acknowledged his inability to quantify formaldehyde levels in the Forest River travel trailer at the time it was occupied by Plaintiff, he gave a "best estimate" of the exposure "potentially" experienced by the Plaintiff.  Also, Dyson opined that by using his air conditioner Plaintiff improved his living conditions with respect to formaldehyde exposure.  This opinion is invalidated by Dyson's testimony that the air conditioner at issue was a recirculating air conditioner that would not provide more ventilation.  Without any examples of a formaldehyde containing product actually used by Plaintiff, Dyson opined that it is "more likely than not" Mr. Wright had direct contact with such products.

And, finally, by reference to random testing of some conventional homes in Southern Louisiana, and without knowledge of the levels of formaldehyde to which Plaintiffs were exposed, Dyson concluded that it was "unlikely" Mr. Wright's average exposure was higher than that of the residents of the tested conventional homes.  Such

"opinions" fail to meet the Rule 702 standard and would be highly prejudicial if offered in this case. Thus, Dyson's testimony should be limited accordingly.

        Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:  504/522-2304
        Facsimile:  504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:  504/522-2304
        Facsimile:  504/528-9973
        jwoods@gainsben.com

        **COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON, #9938
        MIKAL WATTS, Texas # 20981820
        Dennis Reich, Texas #16739600

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic

filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on February 9, 2010.

                                         <u>s/Gerald E. Meunier</u>
                                         GERALD E. MEUNIER, #9471