UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE:   FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Lyndon T. Wright v. Forest River, Inc., et al* | * | |
| Docket No. 09-2977 | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO PROHIBIT REFERENCE TO FORMALDEHYDE IN FOODS AND OTHER PRODUCTS**

Plaintiff Lyndon Wright, respectfully submit the following memorandum in support of Plaintiff's Motion *in Limine* to Prohibit Reference to Formaldehyde in Food and Other Products and hereto states:

**I.   STANDARD OF ADMISSIBILITY.**

Only relevant evidence is admissible. FED. R. EVID. 402. In determining relevancy, Rule 401 provides that relevant evidence is "evidence, having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. To sustain the relevancy standard, the Fifth Circuit has noted that proposed evidence must go beyond mere surmise or suspicion and be "sufficiently tied to the

1

facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003). As such, under Rule 403 of the Federal Rules of Evidence, a district judge is permitted to exclude even relevant evidence if he finds that its probative value is substantially outweighed by the danger of "unfair prejudice, confusion of the issues, or misleading the jury." FED. R. EVID. 403.

Plaintiff seeks an order preventing Defendants from referencing food products containing formaldehyde. Plaintiff anticipates that Defendants may state that certain foods and beverages contain formaldehyde levels above those tested in Plaintiff's emergency housing unit ("EHU"). However, as noted by Defendants experts, food products do not contain the same 'formaldehyde' found in ambient air, but instead are composed of formyl, which is wholly distinguishable and does not carry the same irritant properties as formaldehyde. Further, Plaintiff has not raised a claim relating to food consumed or other products containing formyl or formaldehyde. Thus, because formyl containing foods and other products are not relevant to any discussion regarding the irritant effects of formaldehyde, any reference by Defendants to formaldehyde in foods and beverages and other products containing formyl is irrelevant and confuses the issues, will mislead the jury and is unfairly prejudicial.

II. **FORMYL FOOD PRODUCTS ARE NOT RELEVANT AND ARE NOT USEFUL TO ANY DISCUSSION REGARDING THE EXISTENCE OF FORMALDEHYDE OR IT'S EFFECTS.**

Under Rule 401, '[r]elevant evidence' means evidence having any tendency to

2

make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Here, reference to formyl or formaldehyde in foods and beverages is not useful in proving the probability of any fact. Defendants will likely assert that there exists many foods, beverages or other products containing high levels of formaldehyde; specifically, higher levels of formaldehyde than those tested in the travel trailers. Respectfully, these foods and other products do not contain the formaldehyde at issue in this case, as noted by Defendant's Expert, Dr. H. James Wedner in the *Dubuclet* case:

> Q       But is formaldehyde also contained in certain foods?
>
> A       Is it contained in certain foods? Sure.
>
> Q       But that's not free formaldehyde, is it?
>
> A       No, it's formyl, F-O-R-M-Y-L.
>
> Q       And that's not an irritant in the same way that formaldehyde in the ambient air we have been discussing is?
>
> A       That's correct.
>
> Q       Tell me again the formula or the description you used for formaldehyde in food?
>
> A       Most formaldehyde is a single one carbon fragment, and it's a formyl group.
>
> Q       You say, F-O-R-M-I-L, formyl.

3

> A    Y-L.
>
> Q    F-O-R --
>
> A    M-Y-L, formyl.
>
> Q    Formyl group. So when we are talking about formaldehyde in something like shrimp or beer, that's totally different than the formaldehyde we would be talking about in the ambient air, isn't it?
>
> A    Correct.
>
> Q    Because we know if you drink a glass of beer or you eat a few shrimp, that's going down through your throat and into your stomach, and that doesn't cause the type of primary irritant reaction that we are talking about with ambient formaldehyde in the air, does it?
>
> A    Well, if we are talking about formaldehyde in beer, no. To some people, beer itself is an irritant, but that's neither here nor there.

Exhibit 1, Deposition Transcript of H. James Wedner, M.D., October 12, 2009, p. 87, l. 4- p. 88, l. 11. Defendant has also designated James Wedner, M.D. as an expert in this this case. Moreover, Defendants Expert, Dr. Robert C. James, during his deposition in the *Dubuclet* case similarly noted the irrelevancy of comparing formaldehyde in food products to formaldehyde.

> Q    And formaldehyde in food really isn't relevant to these numbers you have here in comparison to free formaldehyde in the ambient air is it?

4

> . . .
>
> A    Concentrations in food are not comparable to concentrations in air. They're two different things. Those are same as concentrations in water.
>
> Q    So it would be silly to compare the amount of formaldehyde in food with the amount of formaldehyde that's in the ambient air wouldn't it?
>
> A    I don't do that.

Exhibit 2, Deposition Transcript of Robert C. James, Ph.D., November 6, 2009, p. 96, l. 16 – p. 97, l. 4. Robert James has also been designated as an expert in this case[1]. Simply put, foods and other products containing formyl are not relevant to the case at issue and serve no purpose. Reference to such food products will cause confusion and mislead the jury into believing that the formyl levels in foods and beverages are comparable to formaldehyde levels in the ambient air. The possibility of such confusion is evident during the questioning of Defendants expert Dr. H. James Wedner.

> Q    So if somebody is talking about formaldehyde in food, whether it's beer or whether it's shrimp or whether it's catfish, and we are talking about formaldehyde in the air, that's just two different things, that's apples and oranges, isn't it?

---

[1] Robert James, Ph.D. was originally designated as an expert by the United States, however, Shaw and Forest River have cross designated experts of the other defendants and have further indicated that they may call Robert James on their behalf in the trial of this matter.

A      I usually don't talk about formaldehyde in foods, **so I really don't know what you are talking about**, so.  We generally don't talk about formaldehyde in food.

Q      We don't talk it about being an irritant or a cancer risk, do we?

A      No, we don't talk about it at all.

Q      Because it's not something to be concerned about, is it?

A      As I say, I can't remember the last time anybody ever mentioned to me the fact that there was formaldehyde in their food.

Q      And if somebody was making a comparison between formaldehyde and food and formaldehyde and ambient air, that would just be something that is totally without merit when we are discussing about a risk of harm due to exposure to formaldehyde, wouldn't it?

A      **I have no idea what you are talking about. Formaldehyde is a gas.  So the formaldehyde that I envision in food is a formyl one carbon fragment, so I wouldn't even call it formaldehyde**.

Q      Okay. So if somebody is talking about formaldehyde in shrimp, you don't think it's scientifically accurate to discuss that, do you, describe it that way, do you?

A      I have never heard it called that, so maybe there is formaldehyde gas that off gases from shrimp.  I don't know.

6

> Q      I'm not talking about formaldehyde gas off gasing. I'm talking about formaldehyde in the formyl group, as you discussed it, as being in food substances.
>
> A      Well, formaldehyde is one of our major way of transporting one carbon fragments, so we use it all the time in intermediary metabolism. There is formaldehyde in all foods.  So to that extent, everything has formaldehyde, but it's not the kind of formaldehyde we are talking about.
>
> Q      It's not the type of formaldehyde that we are talking about that can cause harm to the human body and is considered a primary irritant; isn't that right?
>
> A      I would say not.

Exhibit 1, p. 88, l. 15-p. 90, l. 15.

The testimony of Defendants' owns experts proves that formyl found in food and beverages is not the same kind of formaldehyde at issue in this case, and as stated by Dr. Wedner, should not even be called 'formaldehyde.'  Thus, because there is no claim in this case that Plaintiff became sick from eating or drinking products/food containing formyl and because such products contain a wholly irrelevant type of molecular substance, any discussion of such would mislead the jury, confuse the issues and cause undue prejudice.

## **CONCLUSION**

Plaintiff anticipates that Defendants will cite to formaldehyde levels in food as evidence that levels found in Plaintiff's trailer are harmless.  However, as admitted by

7

Defendant's own experts, it is impossible to compare formyl in foods or other products to formaldehyde in the ambient air as they are compromised of different molecular structures. Further, Plaintiff has not pled injuries caused by consumption of food products or beverages. Thus, given the irrelevancy and potential confusion brought by references to formaldehyde or formyl in foods or beverages, this Court should preclude any such references.

        Respectfully submits:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        jwoods@gainsben.com

        **COURT-APPOINTED PLAINTIFFS'**

          **STEERING COMMITTEE**
          ANTHONY BUZBEE, Texas # 24001820
          RAUL BENCOMO, #2932
          FRANK D'AMICO, #17519
          MATT MORELAND, #24567
          LINDA NELSON, #9938
          MIKAL WATTS, Texas # 20981820
          Dennis Reich, Texas #16739600

## CERTIFICATE OF SERVICE

   I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on February 9, 2010.

            s/Gerald E. Meunier
          GERALD E. MEUNIER, #9471