UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE<br>PRODUCT LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N-5<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

This Document Relates to:

09-5997; 09-6699; 09-6915; 09-4779

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO "MOTION FOR EXTENSION OF TIME TO MATCH PLAINTIFFS PURSUANT TO PRE-TRIAL ORDERS 40 & 49" (Rec. Doc. 10874)**

Defendant United States of America ("United States") hereby submits its Memorandum in Opposition to "Motion for Extension of Time To Match Plaintiffs Pursuant To Pre-trial Orders 40 & 49" (Rec. Doc. 10874). The Court should deny Plaintiffs' Motion and dismiss Plaintiffs' claims because they have failed to comply with the requirements of Pretrial Orders 40 and 49, have failed to demonstrate that they have exercised due diligence to identify the manufacturers of the temporary emergency housing units ("EHUs") that they occupied, and have not shown excusable neglect for their failure to timely request an such an extension.

**STANDARD OF REVIEW**

The relevant section of Fed. R. Civ. P. 16(b)(4) provides that a pretrial scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The purpose of a Scheduling Order, is in part to assist in expediting disposition of an action, and Rule 16(b)(3) authorizes district courts to include in a Scheduling Order deadlines addressing appropriate matters that may facilitate this goal. *See* Fed. R. Civ. P. 16(b)(3). Consistent with

the authority vested in the trial court by Fed. R. Civ. P. 16, the Fifth Circuit gives the district court "'broad discretion to preserve the integrity and purpose of the pretrial order.'" *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208 (5th Cir.1992) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir.1990)).

Rule 16(b) requires that a party demonstrate good cause to modify a scheduling order deadline. Fed. R.Civ. P. 16(b)(4); *see also Tunica-Biloxi Indians of Louisiana v. Pecot*, 227 F.R.D. 271, 276-77 (W.D. La. 2005). The "good cause" standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir.2003) (quoting 6A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 1522.1 (2d ed.1990)). "[T]he good cause showing unambiguously centers on [the mover's] diligence.*" STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F.Supp.2d 845, 851 (E.D. Tex.2004); *see also Verhoeven v. Balboa Ins. Co.*, No. 06-4891, 2007 WL 4374222, at *7 (E.D. La. 2007) (absence of prejudice to the non-moving party is irrelevant to whether there exists good cause); *Porter v. Milliken & Michaels, Inc*, 2001 WL 378687 *1 (E.D. La. 2001) (same). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Smith v. United Parcel Svc., Inc.*, 902 F.Supp. 719, 721 (S.D. W.Va.1995); *see also Porter*, 2001 WL 378687 *1 (mere inadvertence by the movant does not satisfy the "good cause" requirement). In *Dilmar Oil Co, Inc. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D. S.C.1997), the court explained:

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may

2

> "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of a party seeking the extension." Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Id.* at 980 (citations omitted). *See also Ordemann v. Unidentified Party*, 2008 WL 695253 *2 (E.D. La. 2008) (inexplicable delay and failure to timely move to alter scheduling deadline "is tantamount to no explanation at all").

Even if good cause exists for modifying a scheduling order, the Court must nevertheless deny such a request where the movant moves for an extension, after the deadline having lapsed, and fails to show "excusable neglect" for the late filing. Fed. R. Civ. P. 6(b)(1). "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed R. Civ. P. 6(b)(1)(B). Determining whether a party has demonstrated excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). These circumstances "include ... the danger of prejudice ..., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. *See also Midwest Employers Cas. Co. v. Williams*, 161 F.3d 877, 879 (5th Cir. 1998) (reversing district court's extension of time because counsel's mistaken belief about computation of time did not constitute excusable neglect). While Rule 6(b) is a "somewhat 'elastic' concept," a party's "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Id.* at 392. When a motion for extension is made out of time, it is the movant who bears the burden of proving "excusable neglect" for failure to timely move. *Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465 (5th 1998).

3

**ARGUMENT**

The Court should deny Plaintiffs' motion because they have failed to meet their burden and demonstrate that they have exercised due diligence to comply with PTO 40 and 49. Plaintiffs' counsel asserts, without providing any specific facts as to any individual claimant, that he and his clients have exercised due diligence and that good cause exists to alter and amend PTO 40 and 49 because: (1) approximately 185 claimants remain unmatched despite Plaintiffs' counsel "diligently" working with FEMA to obtain matching information; and (2) "due to time constraints and the lack of sufficient information from the clients," Plaintiffs' counsel has been unable to obtain matching information for these 185 claimants. *See* Rec. Doc. 10874-2 at 3. No other justification is provided for Plaintiffs' failure to match these individuals prior to the Court's deadlines in Pre-Trial Orders 40 and 49. Plaintiffs' proffered reasons are without merit and do not constitute good cause. In fact, Plaintiffs' counsel has failed to specify any particular actions he took to provide the information FEMA requires to conduct matching searches; nor has he offered any explanation for the failure to timely request a matching extension.

For example, Plaintiffs have failed to demonstrate that they took reasonable steps to identify information necessary for FEMA to search its database for the FEMA Barcode and Vehicle Identification Number ("VIN") of the EHU occupied by a claimant, which in turn allows Plaintiffs to determine the manufacturer and installation contractor of each client's EHU. Throughout this litigation, the Court, Government Counsel, and Plaintiffs' Liaison Counsel have consistently urged all Plaintiffs to provide certain necessary identifying information to conduct a matching search. Commencing with the January 30, 2009, Joint Report, and repeated in every Joint Report filed thereafter, all counsel were instructed that, to enable FEMA to conduct a matching search, claimants must submit the name of the head of the household for the family who was issued the EHU, that disaster aid recipient's FEMA ID number, and the city, state, and

4

street address where the unit was installed.[1] *See* Joint Reports No. 8 (Rec. Doc. 1075 at 9), No. 9 (Rec. Doc. 1220 at 8-9), No. 10 (Rec. Doc. 1458 at 5), No. 11 (Rec. Doc. 2012 at 12), No. 12 (Rec. Doc. 2604 at 9-10), and No. 13 (Rec. Doc. 5959 at 3). Further information that may assist FEMA in confirming the accuracy of a search result includes the disaster aid recipient's social security number and date of birth. As government counsel have repeatedly informed Plaintiffs, this information is essential for FEMA to perform a reliable "matching request" of the database to identify the VIN of the EHU, which would also identify the manufacturer. *See, e.g.*, Exh 1, Cover Letter to 7/20/2009 Production of Matching Exhibit QQ.

In the instant case, Plaintiffs' counsel claims to represent approximately 1,000 clients, and argues that despite "diligently working with FEMA to obtain matching information related to their clients," approximately 185 clients remain unmatched. (Rec. Doc. 10874-2 at 3). **Yet Plaintiffs' counsel has only submitted a total of sixty-seven (67) names to FEMA for matching**. Plaintiffs' first matching request was made on June 29, 2009, (Exhibits QQ, RR, SS). *See* Exh. 2, 6/29/2009 Penton Match Request Exhibit QQ; Exh. 3, 6/29/2009 Penton Match Request Exhibit RR; Exh. 4, 6/29/2009 Penton Match Request Exhibit SS. Plaintiffs' second

---

[1] As Plaintiffs counsel is well aware, the most important among the required information is the FEMA ID number and the State where the unit at issue was installed. In May of 2008, FEMA attempted to provide matching information for submissions that did not include FEMA ID numbers; besides creating a great burden on FEMA, this resulted in a very low matching rate of approximately twenty-five (25) percent due to FEMA's inability to accurately ascertain the identity of an individual based on other information provided. Where a FEMA ID number and State ID have been provided, however, the United States' match rate averages greater than ninety (90) percent. FEMA's inability to match a small minority of names where the required information was submitted is likely due to one of the following: (1) the information was provided for a client who was not the head of household, (2) the client was never provided an EHU from FEMA, or (3) the FEMA ID number or state identification submitted for matching was simply incorrect.

and final matching request was submitted on July 6, 2009, (Exhibits VV, WW).[2]  *See* Exh. 5, 7/6/2009 Penton Match Request Exhibit VV; Exh. 6, 7/6/2009 Penton Match Request Exhibit WW.  In total, these exhibits contained sixty-seven (67) names, of which fifteen (15) percent failed to include a FEMA ID or the state where the EHU was installed.  FEMA timely returned matching information for all but five (5) names submitted with the proper information.[3]  *See* Exh. 7, FEMA Matching Results for Exhibit QQ; Exh. 8, FEMA Matching Results for Exhibits RR and SS; Exh. 9, FEMA Matching Results for Exhibits VV and WW.  Plaintiff counsel's chimerical assertion of working with FEMA "diligently" to match plaintiffs is not factually supported nor does it support any further extension of the matching deadlines.

As a further indication of a lack of diligence, the Penton Law Firm has not submitted any requests for matching for its clients in over six months, since July 6, 2009, yet it offers only a vague explanation why it was unable to do so.  Plaintiffs' counsel merely states that it requires an additional sixty (60) day extension of time "due to time constraints and lack of sufficient information from the clients to provide to FEMA to match these clients."[4] (Rec. Doc. 10874-2 at 3.)  Plaintiff fails to explain what "time constraints" did not allow him to obtain the necessary

---

[2] Plaintiffs' Motion erroneously states that "Plaintiffs' counsel requested matching information from the Government, through the PLC, by submitting names for matching on July 6, 2009, and on July 21, 2009." (Rec. Doc. 10874-2 at 3.)  In fact, PLC's own tracking records indicate that the only submissions by Ronnie Penton/The Penton Law Firm were submitted on June 29, 2009, and July 6, 2009. *See* Exh. 10, PLC List of Exhibits Sent and Dates.

[3] FEMA's inability to achieve a 100 percent match rate is likely due to the same reasons listed in Footnote 1, *supra*.  For those who resided in an EHU but were not issued an EHU by FEMA, Plaintiffs must submit matching information for the Head of household / person issued the EHU by FEMA in order to obtain their matching information.

[4] While Plaintiffs' counsel provides no details of what "sufficient information" he was unable to procure from his clients in this six month period, Plaintiffs have known since at least October 16, 2009, the procedures necessary to obtain their client's FEMA ID if the client is unable to recall their number from memory or their records. *See* Rec. Doc. 10795.

information from 185 clients to submit to FEMA for matching. Moreover, at no time did either Plaintiff Liaison Counsel or the Penton Law Firm contact Government Counsel to relate concerns regarding FEMA's inability to provide a FEMA Barcode or VIN for EHUs occupied by the Penton Law Firm clients. Nor did Plaintiffs' counsel ever discuss what efforts that they had made to obtain from their clients the information FEMA required to search its database. This shows a clear lack of due diligence on the part of Plaintiffs' counsel, and justifies denial of Plaintiffs' requested extension.

Plaintiffs' motion and arguments in support also demonstrate a substantive misunderstanding of the established matching process. Specifically, FEMA's database does not track EHUs by manufacturer of the unit; by contractor that hauled and installed the unit; or by persons who occupied the unit. Rather, FEMA tracks EHUs by their VIN and FEMA Barcode number, which can be used to identify the manufacturer of a unit and the installation contractor. In fact, this is the most reliable way to identify the manufacturer and installation contractor for a given unit. Simply put, if a VIN is provided, Plaintiffs have the ability to determine the manufacturer and installation contractor for that unit without any additional information.

The United States has explained the matching process on numerous occasions to opposing counsel, most recently in Joint Report No. 13. As explained in the Court appointed Steering Committee's Joint Report No. 13:

> Based upon recent discussions with counsel for the Hurricane Legal Center ("HLC") and review of the HLC's recently withdrawn Motion to Compel, the United States believes that some counsel may not understand the matching process and what actions that they must take to identify the manufacturer of the EHU that their client occupied and IA/TAC contractor that installed the unit.
>
> In response to a matching request, the United States produces information obtained from the FEMA FRRATS database. The key information produced to a claimant is the VIN number and FEMA barcode number of the EHU or EHUs issued to a disaster victim. Using the VIN number, a claimant can determine the

>identity of the manufacturer of the unit that they occupied. To do this, the claimant must take the VIN number identified and compare it with the "Prefix Key" produced by the Manufacturers' Liaison Counsel in Spring 2008. Each manufacturer has a unique prefix number that is contained in the VIN. The "Prefix Key" identifies that number for each of the manufacturer defendants, thereby allowing a claimant using the VIN number to determine the manufacturer of the unit that he or she occupied. In addition, a claimant using the VIN number can also determine the identity of the manufacturer by accessing the link on the following internet page and inputting the VIN number:
>
>http://www.nhtsa.dot.gov/cars/rules/manufacture/
>
>For purposes of identifying the IA/TAC contractor, the claimant must search the Excel spreadsheet produced by the Government to Liaison Counsel in January 2009. That searchable spreadsheet lists each of the EHUs that the IA/TAC contractors installed by VIN number.
>
>Further, claimants should be aware that the matching process identifies the VIN number of the EHU that FEMA issued to a disaster victim. FEMA does not retain information regarding the identity of all persons who occupied or resided in an EHU. Generally, the reason why the Government is unable to provide a match for a claimant is because: (1) the personal data provided is inaccurate (incorrect name, FEMA identification number, social security number, address where unit was installed, dates of occupancy), or (2) the claimant occupied an EHU that had been issued to some other person.

Joint Report No. 13 at 4-5 (Rec. Doc. 5959). This last paragraph is, in essence, contained in each cover letter accompanying the Government's production of matching information:

>The United States' ability to produce information in response to Plaintiffs' discovery requests is contingent upon Plaintiff's ability to provide the requested information describing each client . . . . To the extent matching information is not provided for any of the listed clients, it is because FEMA was unable to locate these persons in their system based upon the information provided.
>
>*See, e.g,* Exh. 1, Cover Letter to 7/20/2009 Production of Matching Exhibit QQ.

In the instant motion, Plaintiffs seek to extend PTO 40 and 49 deadlines for all claimants for whom their counsel has failed to identify the manufacturer and/or installation contractor of the EHU that they occupied. Plaintiffs utterly fail to demonstrate, however, that they exercised due diligence in pursuing the identify of the manufacturer or installation contractor using the

established matching procedures agreed to by the parties and embodied in the Joint Reports since January 2009, **having only submitted 3 of the 185 unmatched names to FEMA for matching**.[5] Accordingly, the Court should deny this Motion because (1) these Plaintiffs have failed to demonstrate that they submitted to the Government the information that FEMA requires to run a matching request, and (2) the available evidence shows that these claimants failed to exercise due diligence to identify the information that the FEMA requires to run a matching request.

Even if Plaintiffs were able to establish "good cause" for such an extension, their motion should nevertheless be denied because it was filed after the deadlines established by Pre-Trial Orders 40 and 49 had lapsed, and Plaintiffs have failed to meet their burden of showing excusable neglect for this failure to timely file. *See* Fed. R. Civ. P. 6(b)(1); *See also, Pioneer*, 507 U.S. 380. On December 8, 2009, the Court ordered that all unmatched Plaintiffs shall be matched with a specific manufacturing defendant within forty-five (45) days of the filing of the compliant, or, if the complaint has already been filed/transferred to this Court, within twenty (20) days of the entry of its Order. *See* Rec. Doc. 8908. Here, Plaintiffs' own motion clearly shows that each of the four complaints at issue were filed prior to the Court's December 8, 2009, Order. Accordingly, Plaintiffs' counsel had twenty (20) days, starting from December 8, 2009, in which to match all plaintiff listed in these complaints – by December 28, 2009. Plaintiffs' counsel did not file the instant motion until January 28, 2010, thirty (30) days after the deadline had lapsed. Plaintiffs' motion does not contain any explanation for the failure to timely request

---

[5] Out of Plaintiffs' list of unmatched Plaintiff names listed in Exhibit "A" (Rec. Doc. 10874-5), FEMA has only received matching requests for Woodrow Stevenson, Joshua Watson, and Sheira Griffin. For Ms. Griffin, FEMA returned complete matching information in mid August 2009 – meaning Plaintiffs' counsel has had her matching information for about six months.

9

an extension. *See Ordemann*, 2008 WL 695253 *2 (E.D. La. 2008) (inexplicable delay and failure to timely move to alter scheduling deadline "is tantamount to no explanation at all"). Thus, Plaintiffs have not met their burden of establishing "excusable neglect" for the late filing, and Plaintiffs motion must be denied.

## CONCLUSION

For all of these reasons the Court should deny Plaintiffs' motion to modify and alter the deadlines established by Pretrial Order 40 and 49.

Dated: February 9, 2010                                     Respectfully Submitted,

| | |
|---|---|
| TONY WEST | HENRY T. MILLER |
| Assistant Attorney General, Civil Division | ADAM BAIN |
| | Senior Trial Counsel |
| J PATRICK GLYNN | |
| Director, Torts Branch, Civil Division | ADAM DINNELL |
| | MICHELLE BOYLE |
| DAVID S. FISHBACK | MICHELE GREIF |
| Assistant Director | Trial Attorneys |
| | |
| OF COUNSEL: | //S// *Jonathan R. Waldron* |
| JORDAN FRIED | JONATHAN R. WALDRON |
| Associate Chief Counsel | (MO Bar No. 58898) |
| | Trial Attorney |
| JANICE WILLIAMS-JONES | United States Department of Justice |
| Senior Trial Attorney | Civil Division – Torts Branch |
| FEMA/DHS | P.O. Box 340, Ben Franklin Station |
| Department of Homeland Security | Washington, D.C. 20004 |
| Washington, D.C. 20472 | Attorney Telephone: (202) 307-2091 |
| | Jonathan.Waldron@USDOJ.Gov |
| | |
| | Attorneys for the United States of America |

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

                            //S// *Jonathan R. Waldron*
                            JONATHAN R. WALDRON (MO Bar No. 58898)