**103.3 Applications and Permits.** The Director shall receive applications, review construction documents and issue permits for the erection, and alteration, demolition and moving of building and structures, inspect the premises for which such permits have been issued and enforce compliance with the provisions of this code.

**103.4 Notices and Orders.** The Director shall issue all necessary notices or orders to ensure compliance with this code.

**103.5 Inspections.** The Director shall make all of the required inspections, or the Director shall have the authority to accept reports of inspection by approved agencies or individuals. Reports of such inspections shall be in writing and be certified by a responsible officer of such approved agency or by the responsible individual. The Director is authorized to engage such expert opinion as deemed necessary to report upon unusual technical issues.

**103.6 Identification.** The Director and employees of the Department of Safety and Permits shall carry proper identification when inspecting structures or premises in the performance of duties under this code.

**103.7 Right of Entry.** Where it is necessary to make an inspection to enforce the provisions of this code, or where the Director has reasonable cause to believe that there exists in a structure or upon a premises a condition which is contrary to or in violation of this code which makes the structure or premises unsafe, dangerous or hazardous, the Director is authorized to enter the structure or premises at reasonable times to inspect or to perform the duties imposed by this code, provided that if such structure or premises be occupied that credentials be presented to the occupant and entry requested. If such structure or premises be unoccupied, the Director shall first make a reasonable effort to locate the owner or other person having charge or control of

the structure or premises and request entry. If entry is refused, the Director shall have recourse to the remedies provided by law to secure entry.

**103.8 Liability.** The Director, members of the Board of Building Standards and Appeals or employees charged with the enforcement of this code, while acting for the jurisdiction in good faith and without malice in the discharge of the duties required by this code or other pertinent law or ordinance, shall not thereby be rendered liable personally and is hereby relieved from personal liability for any damage accruing to persons or property as a result of any act or by reason of an act or omission in the discharge of official duties. Any suit instituted against an officer or employee because of an act performed by that officer or employee in the lawful discharge of duties and under the provisions of this code shall be defended by legal representative of the jurisdiction until the final termination of the proceedings. The Director or any subordinate shall not be liable for cost in any action, suit or proceeding that is instituted in pursuance of the provisions of this code.

**103.9 Stop Work Orders.** Upon notice from the Director, work on any building, structure, electrical, gas, or mechanical system that is being done prior to the securing of the required permit and/or contrary to the provisions of this Code or in a dangerous or unsafe manner, shall immediately cease. Such notice shall be in writing and shall be given to the owner of the property or to his agent, or to the person doing the work, and shall state the conditions under which work may be resumed. Where an emergency exists, the Director shall not be required to give a written notice prior to stopping the work.

**103.10 Revocation of Permits.** The Director may revoke a permit or approval, issued under the provisions of this Code, in the event that there has been any false statement or misrepresentation or upon failure to execute said work in accordance with said application, plans or specifications or which has been

LWFR-EXP 5-000253

issued in violation of the Zoning or Building Code ordinances.

**103.11 Approved materials and equipment.** Materials, equipment and devices approved by the Director shall be constructed and installed in accordance with such approval.

**103.12 Used Materials and Equipment.** The use of used materials which meet the requirements of this code for new materials is permitted. Used equipment and devices shall not be reused unless approved by the Director.

**103.13 Modifications.** Wherever there are practical difficulties involved in carrying out the provisions of this code, the Director shall have the authority to grant modifications for individual cases, upon application of the owner or owner's representative, provided the Director shall first find that special individual reason makes the strict letter of this code impractical and the modification is in compliance with the intent and purpose of this code and that such modification does not lessen health, accessibility, life and fire safety, or structural requirements. The details of action granting modifications shall be recorded and entered in the files of the department of Safety and Permits.

**103.14 Alternative Materials, Design and Methods of Construction and Equipment.** The provisions of this code are not intended to prevent the installation of any material or to prohibit any design or method of construction not specifically prescribed by this code, provided that any such alternative has been approved. An alternative material, design or method of construction shall be approved where the Director finds that the proposed design is satisfactory and complies with the intent of the provisions of this code, and that the materials, method or work offered is, for the purpose intended, at least the equivalent of that prescribed in this code in quality, strength, effectiveness, fire resistance, durability and safety.

LWFR-EXP 5-000254

**103.15 Tests.** Whenever there is insufficient evidence of compliance with the provisions of this code, or evidence that a material or method does not conform to the requirements of this code, or in order to substantiate claims for alternative materials or methods, the Director shall have the authority to require tests as evidence of compliance to be made at no expense to the jurisdiction. Test methods shall be as specified in this code or by other recognized test standards. In the absence of recognized and accepted test methods, the Director shall approve the testing procedures. Tests shall be performed by an approved agency. Reports of such tests shall be retained by the Director for the period required for retention of public records.

**103.16 Requirements Not Covered by Code.** Any requirements necessary for the strength or stability of an existing or proposed building or structure, or for the public safety, health and general welfare, not specifically covered by this Code, shall be determined by the Director.

**103.17 Modifications.** The application for modification and the approval of the Director shall be in writing and shall be officially recorded with the application for permit in the permanent records of the Department of Safety and Permits and report of action taken filed with the Secretary of the Board of Building Standards and Appeals.

**103.18 Employees.** The Director shall appoint all employees of the Department of Safety and Permits subject to the existing Civil Service Laws of the State of Louisiana and the City of New Orleans. The person or persons appointed shall be persons fully qualified by technical training and experience, in both theory and practice, in the field in which their services will be utilized.

**103.19 Construction or Demolishing Privileges.** Materials or equipment for use in connection with the construction, demolishing, repair or maintenance of a building may not be placed upon any portion of public-right-of-way (street or sidewalk), adjacent to the building without a permit issued by the Director of Department of Public Works. The space, which may be permitted for materials or equipment to be used from day to day in connection with the operations for which the building permit has been issued, will generally be limited to the sidewalk and, a distance of 10 ft. into the street space adjacent to the curb. If the entire sidewalk is used for material or equipment storage, the permitted will normally be required to provide a walkway for the protection of pedestrians. If space on the sidewalk or street is authorized, all sand, gravel, crushed stone or other loose materials shall be confined to bins. No materials or equipment shall be placed on any street within twenty(20) ft. of the curb lines of intersecting streets. If the written consent by the owner of property adjoining the site of the building operations is obtained and is filed with the Director, the street or sidewalk occupancy permit may be extended beyond the limits in front of the building site, provided the adjoining owners are not unreasonably deprived of ingress to and egress from their property.

**103.19.1** The gutter or waterway shall not at any time be obstructed by any earth, sand, gravel or other building materials, but such gutters or waterways must at all times be kept clear by the builder to allow the free passage of water in and along same, using a substantial bridge over the gutter if necessary.

**103.19.2** Any person having the use as described herein of any portion of the street or sidewalk shall cause red lights to be placed and maintained in a conspicuous place in front of all obstructions from sunset to sunrise each night, during the time such obstructions remain on the street or sidewalk and, further, shall cause barricades to be placed and maintained in a conspicuous place in front of all obstructions twenty-four (24) hours a day. Said person shall agree to indemnify and hold harmless the

LWFR-EXP 5-000255

City of New Orleans, its officials, agents and employees from and against all claims, suits, liabilities, damages, losses and expenses, including, but not limited to, costs, attorney's fees and interest, for all injuries to persons, and for all damage to the property of the City or others, caused by or resulting from failure to properly light and guard the obstruction or caused by or resulting from the negligence of himself, his employers or his agents, in connection with said use of the street or sidewalk, and further, said person shall indemnify and hold harmless the City of New Orleans, its officials, agents and employees from and against all claims of strict liability brought against the City in connection with injury against all persons or property occurring in connection with said use of the street or sidewalk.

**103.19.3**   All excavations below lot grade must be adequately protected for the safety of life, limb and property, and where excavations are left uncovered, adequate means must be provided to prevent the accumulation of stagnant water.  All back filling must be performed promptly.

**103.19.4** Earth taken from excavations and materials or rubbish taken from buildings shall not be stored upon the sidewalks or streets, but shall be removed from day to day as rapidly as accumulated.  When such materials are dry, and likely to produce a dust when handled, they shall be kept moist so as to prevent the wind blowing the same about.  Materials or rubbish accumulated on upper floors, shall be lowered by elevators in closed receptacles or by closed chutes discharging directly to wagons or trucks.  No material, fence or shed shall be placed in any way that will obstruct free approach to any fire hydrant, fire alarm box, street lighting standard, public utility pole, manhole, catch basin, or U.S. mail box.

**103.19.5**   Any temporary sheds used by a builder shall be removed upon completion of the work. The street and sidewalk shall be cleared of all materials as soon as the use of the street for storage is no longer required.

**103.19.6**   In consideration of the foregoing permission to use streets and sidewalks for the piling and storing of materials and tools, or the use of equipment, the owner of the building shall be obligated in the event that any of the street or sidewalk pavements or the surface of the paved streets, be damaged by the piling or storing of materials or tools, or the use of equipment, to restore the same within 30 days after completion and acceptance of building, to the original condition in which they were before materials or tools were piled or stored thereon, or before the use of equipment.

**103.19.7** In every building of reinforced concrete construction, forms of combustible materials shall be stripped from the concrete and removed from the building as soon as practicable.

**103.19.8** In buildings where standpipes are required by Article 905, such standpipes shall be installed as the construction progresses, in such a matter that they are always ready for fire department use to the topmost floor that has been installed.  Such standpipes shall be provided with a Siamese fire department connection on the outside of the building at the street level and with one standard hose outlet at each floor.  All outlets, connections and fittings shall be designed to fit Fire Department equipment.

**103.19.9** During building operations,  free access from the street to fire hydrants and to outside connections for standpipes, sprinklers or other fire extinguishing equipment, whether permanent or temporary, shall be provided and maintained at all times.  No material or construction equipment shall be placed within ten (10) ft. of such hydrant or connection, nor between it and the center line of the street.

**103.20 Demolition Requirement.**  When drawings and detail statements are filed with the Director for the construction of a new building, if any existing building or part of an existing building is to be demolished, such

LWFR-EXP 5-000256

facts shall be stated in the statement so filed. In demolishing a building, story after story shall be completely removed. No material shall be placed upon the floor of such building in the course of demolishing, but brick, timbers and other structural parts of each story shall be lowered to the ground immediately upon displacement. The owner, architect, Builder or contractor for a structure to be demolished, shall give not less than a twenty-four (24 ) hour notice in writing to the Director of such intended demolition. The material being removed shall be properly wet down to lay the dust incident to its removal. Immediately following the displacement or demolition of plaster, masonry, concrete, and other dust-raising materials, they shall again be thoroughly hosed down to insure against dust or other objectionable features before further removal or disturbance. All remaining exposed walls of adjoining buildings must be left perfectly safe, and all proper safeguards for the public shall be taken. Any surface holes or irregularities, wells, septic or underground storage tanks, basements, cellars, sidewalk vaults, or coal chutes remaining after demolition of any building or structure shall be filled with material as approved by the Director, and shall be graded in such a manner as to provide effective surface drainage. In demolishing buildings, covered walkways in accordance with the requirements of Chapter 33 may be required when, in the opinion of the Director, such walkways are necessary for public safety.

**103.20.1** All demolition contracts for properties to be demolished in which the city is a party shall contain language to mandate that demolition contractors recycle all salvageable construction materials from such demolition projects and to prohibit such contractors from such demolition projects and to prohibit such contractors from depositing any salvageable construction materials in any landfills or from otherwise disposing of such materials, salvageable construction materials shall include but not be limited to wooden door frames, wooden window frames, brackets, doors, windows, any decorative millwork, structural lumber, bricks, cinder blocks, ironwork, baseboards, roofing slate, tile, shingles

floorboards, glasswork, gable ends and shutters, weather boards, cabinets, bathtubs, plumbing and wiring.

**103.20.2   Removal of Debris.** It is unlawful to leave debris , resulting from a fire, or in the demolition or partial demolition of a building, or upon the completion of a new building on such lot, it is hereby made the duty of the owner of the property or his agent, to remove or cause to be removed from sidewalk and street, all such debris within six (6) days after a notice served upon him by the Director and to place such debris in such a manner as not to be dangerous.

**103.20.3   Moving of Buildings.** No building or part of any building shall be moved through or across any sidewalk, street, alley or highway within the City limits without first obtaining permission from the proper City authorities.

**103.20.4     State Laws.** Laws of the State of Louisiana regulating the protection of workmen, and the public, in construction shall be deemed a part of this Code.

**103.20.5     Penalties.** Any person, firm or corporation who shall be the owner of any such building or buildings, or parts thereof, chimneys, staging, or other structure which has become dangerous or unsafe, and a menace to life and limb, and who shall fail, neglect or refuse to comply with the orders of the Director within the time hereinbefore specified, shall be deemed and held guilty of a violation of this Code. Each day that the said person, firm or corporation remains in violation, shall constitute a separate violation; and the fact that the Director may cause said building, buildings or parts thereof, chimneys, staging or other structure to be demolished at the expense of the person, firm or corporation owning the same, shall not preclude the Director from preferring charges against the person, firm or corporation who shall fail, neglect or refuse to comply with the orders of the

LWFR-EXP 5-000257

Director.

## SECTION 104
## UNSAFE BUILDINGS, INSTALLATION AND
## MACHINERY

**104.1   Definitions:**  For purposes of this section, the following definition shall apply.

**104.2   Public Nuisance:**  A building or structure is deemed to be a public nuisance if by reason of the condition in which it is permitted to be or remain, it shall or may endanger the health, life, limb, or property of a person , or cause any hurt, harm, damages, injury or loss to a person or persons in  one or more of the following circumstances.

    **(A)** By reasons of being dilapidated, decayed, unsafe or unsanitary is detrimental to health, morals, safety, public welfare, and the well-being of the community, endangers life or property or is conducive to ill health, delinquency and crime.

    **(B)** By reason of being a fire hazard.

    **(C)** By reason of the conditions which require its continued vacancy, the public nuisance, and its surrounding grounds are not reasonably or adequately maintained thereby causing deterioration and creating a blighting influence or condition on nearby properties and  thereby depreciating the value, use and enjoyment to an extent that it is harmful to the public health, welfare, morals, safety and the economic stability of the area, community, or neighborhood in which such a public nuisance is located.

**104.3   Unsafe Mechanical or Electrical Installations.**  Any premises, building or buildings, part or parts of a building, mechanical or electrical installations and equipment, chimneys, staging or other structure that from any cause may now be or shall at any time hereafter become dangerous or unsafe, shall be taken down and removed, or made safe.

**104.4   Menace to Public Safety.**  The Director shall determine as a matter of fact whether or not said public nuisance is in imminent danger of collapse and constitutes a menace to public safety.

**104.5      Imminent Danger.**     If the Director determines that the public nuisance is in imminent danger of collapse and constitutes a menace, he shall have the authority to cause the demolition of said nuisance by a municipal department or private company without previous notice to the owner, executor, administrator, agent, lessee, or any person or persons who may have a vested or contingent interest in said nuisance.

**104.6   Public Nuisance.**  If the Director or his duly authorized representative determines that said public nuisance is not in imminent danger of collapse, but is a nuisance, as defined in  Article 102.4.1 of this code, the following procedure shall be followed:

(a) The location of the nuisance shall be entered immediately on a Docket of Public Nuisances to be kept by the Director or his representative.

(b) A determination shall be made by the Director or his representative whether the nuisance must be removed or repaired.  If the nuisance is in the Vieux Carre' District, the Director or his representative shall obtain the written recommendations of the Vieux Carre' Commission before complying with Section 4 below. If the nuisance is located in an historic district established or adopted by the City Council or is a structure, or portion thereof, designated as a landmark by the appropriate commission, the Director shall obtain the written recommendation of the Historic District Landmarks Commission having jurisdiction over the nuisance or area of work.

(c) The Director shall give notice as defined in Section 5 below to the owner or one of the owners, executor, administrator, agent, lessee, or person or persons who

LWFR-EXP 5-000258

may have a vested or contingent interest in the nuisance as determined by part (b) above. Said notice shall direct the person or person notified to certify to the director within twenty-four (24) hours from the time of notification of his or their assent or refusal to repair or remove same. Provided that, in the alternative, or in addition to the enforcement procedures outlined herein, the Director may proceed to enforce the provisions of the Code by proceedings pursuant to Chapter 28 of the City Code.

(d) If the person or persons so notified assent with the requirements of Section 4 C above, the work shall be initiated within ten (10) days of the notice and performed as speedily as possible and shall be continuously prosecuted until completed to the satisfaction of the Director or his representative.

(e) Failure to comply with the Director's order to repair or demolish the nuisance in question, shall empower the Director to:

(1) file charges in the Municipal Court of the City of New Orleans; and/or

(2) notify, as provided in Section 5 of this Ordinance, the owner, executor, administrator, agent, lessee or any person or persons who may have a vested or contingent interest in the nuisance of the time and place to appear before the Council of the City of New Orleans to show cause why said nuisance should not be demolished; and/or

(3) seek relief through Civil District Court or another Court of competent jurisdiction; and /or

(4) notify as provided in Chapter 6 of the Code of the City of New Orleans, the owner of record and/or any other person whom the City Attorney identifies as required to receive notice, to appear before an Administrative Hearing Officer to show cause why the said owner and/or person should not be adjudicated as a violator to the said Chapter 6 and why said nuisance should not be demolished.

(f) Any person who fails to appear or who does not receive a continuance from the City council shall be deemed in violation of this Code and the demolition hearing before the City Council shall proceed without further notice.

**104.7   Demolition of Nuisance.**   Upon a determination of the City Council that the nuisance should be demolished or, in the case of imminent danger as in Article 102.4.3.1, the Director shall employ such labor, furnish such materials and take such steps as in his judgement may be necessary to demolish said nuisance.

**104.8   Bids for Demolition of Nuisance.**   The Director shall then proceed to effect the said demolition by advertising for bids through the City Purchasing Bureau, which bids shall be submitted to the Council for acceptance or rejection and final disposition. The City may do the work of demolition itself, through the use of its own employees or volunteers, or may without competitive bidding employ the services of volunteers, where the work is to be done at cost, and where the value of the demolition work and/or said cost is less than $5,000. The service of another governmental entity shall be employed in accordance with an intergovernmental agreement approved and executed as a written contract.

**104.9   Lien and Privilege.**   All expenses incurred by the City of New Orleans in the enforcement of Article 102.4 shall be borne by the person or persons owning the public nuisance which sums so expended together with the attorney fees and interest at the rate of twelve (12%) percent per annum from the date of completion of such work shall be charged to the owner of the property on the next regular tax bill forwarded to such owner by the City, if not paid by such owner thereto, which charge shall be due and payable by such owner at the time of payment of such tax bill. If the full amount due the City under this Article is not paid by the owner within ten (10) days after the work has been done the Director or his representative shall cause to be recorded in the Mortgage Office of the Parish a sworn statement showing the cost and expense incurred for the work and the date, place or property on which such work was done, and the recordation of such sworn

**Page 10**

LWFR-EXP 5-000259

statement shall constitute a lien and privilege on the property and shall remain in full force and effect for the amount due in principal and interest, plus costs of court, if any, for collection, until final payment has been made. Such costs and expenses shall be collected in the manner fixed by law for the collection of taxes; and further shall be subject to a delinquent penalty of ten (10%) percent in the event they are not paid in full on or before the date the tax bill upon which the charge appears becomes delinquent. Sworn statements recorded in accordance with the provisions hereto shall be prima facie evidence that all legal formalities have been complied with and that the work has been properly and satisfactorily done and shall be full notice to every person concerned that the amount of the statement, plus interest, constitutes a charge against the property designated or described in the statement and that such charge is due and collectible as provided by law.

**104.10   Legal Action.** The fact that the City may cause said premises, building, buildings, or parts thereof, chimneys, staging or other structure to be demolished or repaired at the expense of the person, firm or corporation owning the same, shall not preclude the Director from taking legal action in a court of competent jurisdiction against the person, firm or corporation who shall fail, neglect or refuse to comply with the orders of the Director and the violation or disregard of such orders shall be considered a violation of this Code.

**104.11   Notice to Owners.** For purposes of this Ordinance, notice which is required to be given to the owner, executor, administrator, agent or lessee or person or persons who may have a vested interest in the nuisance, it shall be sufficient to serve one of the aforementioned parties with the required notice, and in the case of multiple owners, it shall be sufficient to notify one of them.

**104.12   Posting of Notice.** Service shall be deemed sufficient in the case of persons residing in Orleans Parish to attempt personal or domiciliary service on three

separate occasions within a fourteen (14) day period, and failing such service, a posting of copy of the notice of public nuisance in a conspicuous place on the premises, a certified letter return receipt requested to the last known address of the owner, executor, administrator, agent, lessee or person or persons who may have an interest in the premises and the publishing of a notice in a newspaper of general circulation in the City of New Orleans once each week for two (2) consecutive weeks, prior to the date of such hearing before the City Council shall be deemed the equivalent of personal service.

**104.13   Notice in a Newspaper.** In the case of persons residing outside Orleans Parish, the posting of copy of the notice of public nuisance in a conspicuous place on the premises, a certified letter return receipt requested to the last known address of the owner, executor, administrator, agent, lessee or person or persons who may have an interest in the premises and the publishing of a notice in a newspaper of general circulation in the City of New Orleans once each week for two (2) consecutive weeks, prior to the date of such hearing before the City Council shall be deemed the equivalent of personal service.

**104.14   Serving of Notice.** Furthermore, notice must be served forty-eight (48) hours before any hearing.

**104.15   Discontinue Utilities.** The Director shall have authority to discontinue service of the utility companies. Before discontinuing the supply of any or all utilities to any person or persons, the Director shall give the parties concerned written notice by certified mail of at least ten (10) calendar days in advance of the date to do so, with a copy of said notice being sent to the Office of the Utility Company or companies or board providing the service. Should the violating party or parties fail or refuse to comply with orders of the Director to proceed to remedy the violation within said period of ten (10) calendar days, the supply of any or all utilities shall be discontinued by the company or

LWFR-EXP 5-000260

board concerned upon written notification by the Director.

## SECTION 105
## PERMITS

**105.1   Required.** An owner or authorized agent who intends to construct, enlarge, alter, repair, move, demolish, or change the occupancy of a building or structure, or to erect, install, enlarge, alter, repair, remove, convert or replace any electrical, gas or mechanical system, the installation of which is regulated by this code, or to cause any such work to be done, shall first make application to the Director and obtain the required permit.

**105.1.1   Annual Permit.** In lieu of an individual permit for each alteration to an already approved electrical, gas, mechanical or plumbing installation, the Director is authorized to issue an annual permit upon application therefore to any person, firm or corporation regularly employing one or more qualified trade persons in the building, structure or on the premises owned or operated by the applicant for the permit.

**105.1.2   Annual Permit Records.**
The person to whom an annual permit is issued shall keep a detailed record of alterations made under such annual permit. The Director shall have access to such records at all times or such records shall be filed with the official as designated.

**105.2   Work Exempt from Permit.** Exemptions from permit requirements of this code shall not be deemed to grant authorization for any work to be done in any manner in violation of the provisions of this code or any other laws or ordinances unless any owner, authorized agent, or contractor who desires to construct, enlarge, alter, repair, move, demolish, or change the occupancy of a building or structure, or to erect, or construct a sign of any description, or to install or alter fire extinguishing apparatus, elevators, engines, or to install a steam boiler,

furnace, heater, incinerator, or other heat producing apparatus, or other appurtenances, the installation of which is regulated by this Code, or to cause any such work to be done, shall first make application to the Director and obtain the required permit for the work.

A building permit shall not be required for the following, unless in the opinion of the Director it involves hazardous or complex conditions which require permitting and inspection:
(1) Removal and replacement of deteriorated weather boards, aluminum or vinyl siding.
(2) Removal and replacement of deteriorated floor boards.
(3) Removal and replacement of deteriorated porches and steps - front and rear sides, when not in conflict with the Zoning Ordinance.
(4) Interior painting, papering and similar finish work.
(5) Paving of yard.
(6) Retaining walls which are not over three (3) ft. in height.
(7) Exterior painting when not requiring protective scaffolding over public property.
(8) Roofing and/or gutter work with respect to one and two family dwellings.
(9) Fences up to seven (7) ft. in height.
Exemption from the permit requirements of this Code shall not be deemed to grant authorization for any work to be done in any manner in violation of the provisions of this Code or any other laws or ordinances of the City of New Orleans including Vieux Carre' Commission and Historic District Landmarks Commission requirements.

**Electrical:**
Repairs and maintenance: Minor repair work, including the replacement of lamps or the

LWFR-EXP 5-000261

connection of approved portable electrical equipment to approved permanently installed receptacles.

**Radio and Television Transmitting Stations:** The provisions of this code shall not apply to electrical equipment used for radio and television transmissions, but does apply to equipment and wiring for power supply, the installations of towers and antennas.

**Temporary Testing Systems:** A permit shall not be required for the installation of any temporary system required for the testing or servicing of electrical equipment or apparatus.

**Gas:**
1. Portable heating appliance.
2. Replacement of any minor part that does not alter approval of equipment or make such equipment unsafe.

**Mechanical:**
1. Portable heating appliance;
2. Portable ventilation equipment;
3. Portable cooling unit;
4. Steam, hot or chilled water piping within any heating or cooling equipment regulated by this code;
5. Replacement of any part which does not alter its approval or make it unsafe.
6. Portable evaporative cooler;
7. Self-contained refrigeration system containing 10 pound (4.54 kg) or less of refrigerant and actuated by motors of 1 horsepower (746 W) or less.

**105.2.1 Emergency Repairs.** Where equipment replacements and repairs must be performed in an emergency situation, the permit application shall be submitted within the next working business day to the Director.

**105.2.2 Repairs.** Application or notice to the Director

is not required for ordinary repairs to structures, replacement of lamps or the connection of approved portable electrical equipment to approved permanently installed receptacles. Such repairs shall not include the cutting away of any wall, partition or portion thereof, the removal or cutting of any structural beam or load bearing support, or the removal or change of any required means of egress, or rearrangement of parts of a structure affecting the egress requirements; nor shall ordinary repairs include addition to, alteration of, replacement or relocation of any standpipe, water supply, sewer, drainage, drain leader, gas, soil, waste, vent or similar piping, electric wiring or mechanical or other work affecting public health or general safety.

**105.2.3 Public Service Agencies.** A permit shall not be required for the installation, alteration or repair of generation, transmission, distribution or metering or other related equipment that is under the ownership and control of public service agencies by established right.

**105.3 Application for Permit.** To obtain a permit, the applicant shall first file an application therefor in writing on a form furnished by the department of Safety and Permit for that purpose. Such application shall:

1. Identify and describe the work to be covered by the permit for which application is made.
2. Describe the land on which the proposed work is to be done by legal description, street address or similar description that will readily identify and definitely located the proposed building or work.
3. Indicate the use and occupancy for which the proposed work is intended.
4. Be accompanied by construction documents and other information as required in Section 106.3.
5. State the valuation of the proposed work.
6. Be signed by the applicant, or the applicant's authorized agent.
7. Give such other data and information as required by

LWFR-EXP 5-000262

the Director.

**105.3.1 Action on Application.** The Director shall examine or cause to be examined applications for permits and amendments thereto within a reasonable time after filing. If the application or the construction documents do not conform to the requirements of pertinent laws, the Director shall reject such application in writing, stating the reasons therefor. If the Director is satisfied that the proposed work conforms to the requirements of this code and laws and ordinances applicable thereto, the Director shall issue a permit therefor as soon as practicable.

**105.3.2 Time Limitation of Application.** An application for a permit for any proposed work shall be deemed to have been abandoned 180 days after the date of filing, unless such application has been pursued in good faith or a permit has been issued; except that the Director is authorized to grant one or more extensions of time for additional periods not exceeding 90 days each. The extension shall be requested in writing and justifiable cause demonstrated.

**105.4 Validity of Permit.** The issuance or granting of a permit shall not be construed to be a permit for, or an approval of, any violation of any of the provisions of this code or of any other ordinance of the jurisdiction. Permits presuming to give authority to violate or cancel the provisions of this code or other ordinances of the jurisdiction shall not be valid. The issuance of a permit based on construction documents and other data shall not prevent the Director from requiring the correction of errors in the construction documents and other data. The Director is also authorized to prevent occupancy or use of a structure where in violation of this code or of any other ordinances of this jurisdiction.

**105.5 Expiration.** A permit becomes invalid unless the work authorized by the permit is commenced within 180 days after its issuance, or if the work authorized on the permit is suspended or abandoned for a period of 180

days after the time the work is commenced. The Director is authorized to grant, in writing, one or more extensions of time, for periods not more than 180 days each. The extension shall be requested in writing and justifiable cause demonstrated.

**105.6 Suspension or Revocation.** The Director is authorized to suspend or revoke a permit issued under the provisions of this code wherever the permit is issued in error or on the basis of incorrect, inaccurate or incomplete information, or in violation of any ordinance or regulation or any of the provisions of this code.

**105.7 Placement of Permit.** The building permit or copy shall be kept on the site of the work until the completion of the project.

## SECTION 106
## CONSTRUCTION DOCUMENTS

**106.1 Designers Name:** Construction documents, except as follows, shall be prepared by or under the direct supervision of a Louisiana Registered Architect or a Louisiana Registered Civil Engineer, within the purview of the State of Louisiana licensing law provisions, and said construction documents shall be imprinted with his seal designating him as the professional of record and shall contain a statement to the effect that they comply with all City requirements to the best of his knowledge and belief and shall also include a statement that either he is generally administering the work or that he is not generally administering the work, whichever is applicable. The following types of projects shall be exempt from the above requirements to the degree stated below:

**One and Two Family Dwellings:**

(a)   No plans are required for a one story structure, less than 2, 500 square feet in area. However a foundation plan and other

LWFR-EXP 5-000263

foundation details prepared and certified by a Louisiana Registered Architect or a Louisiana Registered civil Engineer shall be available at the construction site for foundation inspection.

(b)     Second story additions or renovations, not exceeding 500 square feet, shall require drawings but no certification of an architect or engineer.

(c)     Townhouses - Plans and certification of an architect or engineer is required.        No exceptions.

The Director may waive the certification requirements, if he finds that the nature of the work applied for is such that certification of plans is not necessary to obtain compliance with this Code.

**106.1.1 Designers Name:** Construction documents involving mechanical, gas and electrical installations except as follows, shall be prepared by or under the direct supervision of a Louisiana Registered Mechanical or Electrical Engineer, as applicable, within the purview of the State of Louisiana licensing law provisions, and said drawings and specifications shall be imprinted with his seal designating, him as the professional of record and shall contain a statement to the effect that they comply with all city requirements to the best of his knowledge and belief and shall also include a statement that either he is generally administering the work or that he is not generally administering the work, whichever is applicable, and further, said drawings are to be submitted at the time of application for building permits.

**Exceptions:**

1.   The submission of construction documents and certification documents and certification requirements is not necessary when the electrical work does not exceed $15,000 and/or when the mechanical work does not exceed $15,000, in the opinion of the Director.

2.   The submission of construction documents and certification requirements is not necessary for the construction and or the repair work for one and two family dwellings.

The Director may also waive the submission of construction documents if he finds that the nature of work applied for is such that reviewing of construction is not necessary to obtain compliance with this Code. Where there are unusual conditions because of type of occupancy or type of construction, the Director may depart from the limitations set forth above and require submission of construction documents.

**106.1.2   Submittal   Documents.** Construction documents, special inspection and structural observation programs, and other data shall be submitted in one or more sets with each application for a permit. The construction documents shall be prepared by a registered design professional where required by the statutes of the jurisdiction in which the project is to be constructed.    Where special conditions exits, the Director is authorized to require additional construction documents to be prepared by a registered design professional.

**106.1.3 Information on Construction Documents.**

LWFR-EXP 5-000264

Construction documents shall be dimensioned and drawn upon suitable material. Electronic media documents are permitted to be submitted when approved by the Director. Construction documents shall be of sufficient clarity to indicate the location, nature and extent of the work proposed and show in detail that it will conform to the provisions of this code and relevant laws, ordinances, rules and regulations, as determined by the Director.

**106.1.3.1    Fire Protection System Shop Drawings.** Shop drawings for the fire protection system(s) shall be submitted to indicate conformance with this code and the construction documents and shall be approved prior to the start of system installation. Shop drawings shall contain all information as required by the referenced installation Standards in Chapter 9.

**106.1.4    Means of Egress.** The construction documents shall show in sufficient detail the location, construction, size and character of all portions of the means of egress in compliance with the provisions of this code. In other than occupancies in Groups R-2 and R-3 as applicable in Section 101.2 and 1-1, the construction documents shall designate the number of occupants to be accommodated on every floor, and in all rooms and spaces.

**106.1.5    Exterior Wall Envelope.** Construction documents for all buildings shall describe the exterior wall envelope in sufficient detail to determine compliance with this code. The construction documents shall provide details of the exterior wall envelope as required, including flashing, intersections with dissimilar materials, corners, end details, control joints, intersections at roof, eaves, or parapets, means of drainage, water-resistive membrane, and details around openings. The construction documents shall include manufacturing installation instructions that provide supporting documentation that the proposed penetration and opening details described in the construction documents maintain the weather resistance of the exterior wall envelope. The supporting documentation shall fully describe the exterior wall system which was tested, where applicable, as well as the test procedure used.

**106.2    Site Plan.** The construction documents submitted with the application for permit shall be accompanied by a site plan showing to scale the size and location of new construction and existing structures on the site, distances from lot lines, the established street grades and the proposed finished grades; and it shall be drawn in accordance with an accurate boundary line survey. In the case of demolition, the site plan shall show construction to be demolished and the location and size of existing structures and construction that are to remain on the site or plot. The Director is authorized to waive or modify the requirement for a site plan when the application for permit is for alteration or repair or when otherwise warranted.

**106.3    Examination of Documents.** The Director shall examine or cause to be examined the accompanying construction documents and shall ascertain by such examinations whether the construction indicated and described is in accordance with the requirements of this code and other pertinent laws or ordinances.

**106.3.1 Approval of Construction Documents.** When the Director issues a permit, the construction documents shall be approved, in writing or by stamp, as "Reviewed for Code Compliance." One set of construction documents so reviewed shall be retained by the Director. The other set shall be returned to the applicant, shall be kept at the site of work and shall be open to inspection by the Director or his authorized representative.

**106.3.2 Previous Approvals.** This code shall not require changes in the construction documents, construction or designated occupancy of a structure for

New Orleans Amendments to the International Bldg. Code, 2000 Ed.

**Page 16**

LWFR-EXP 5-000265

which a lawful permit has been heretofore issued or otherwise lawfully authorized, and the construction of which has been pursued in good faith within 180 days after the effective date of this code and has not been abandoned.

**106.3.3    Phase Approval.** The Director is authorized to issue a permit for the construction of foundations or any other part of a building or structure before the construction documents for the whole building or structure have been submitted, provided that adequate information and detailed statements have been filed complying with pertinent requirements of this code. The holder of such permit for the foundation or other parts of a building or structure shall proceed at the holder's own risk with the building operation and without assurance that a permit for the entire structure will be granted.

**106.3.4    Revision of Approved Construction Documents.** It shall be unlawful to erase, materially alter or modify any lines, figures, letters, words or coloring contained in the construction documents stamped by the Director. If during the progress of the execution of such work it is desired to deviate in any manner affecting the construction or other essentials of the building from the terms of the applications plans, or specifications or statement of cost of work, notice of such intention to alter or deviate shall be given in writing to the Director, and his written assent shall be obtained before such alterations or deviations may be made. If such change or deviation affects structural design, exit arrangement, occupancy change etc., then new construction documents thereof shall be submitted to the Director for approval, and, if necessary, an additional permit shall be secured.

**106.3.5 Design Professional in Responsible Charge.**

**106.3.5.1 General.** When it is required that documents be prepared by a registered design professional, the Director shall be authorized to require the owner to engage and designate on the building permit application a registered design professional who shall act as the registered design professional in responsible charge. If the circumstances require, the owner shall designate a substitute registered design professional in responsible charge who shall perform the duties required of the original registered design professional in responsible charge. The Director shall be notified in writing by the owner if the registered design professional in responsible charge is changed or is unable to continue to perform the duties. The registered design professional in responsible charge shall be responsible for reviewing and coordinating submittal documents prepared by others, including phased and deferred submittal items, for compatibility with the design of the building. Where structural observation is required by Section 1709, the inspection program shall name the individual or firms who are to perform structural observation and describe the stages of construction at which structural observation is to occur. See also duties specified in Section 1704.

**106.3.5.2 Deferred submittals.** For the purpose of this section, deferred submittals are defined as those portions of the design that are not submitted at the time of the application and that are to be submitted to the Director within a specified period. Deferral of any submittal items shall have the prior approval of the Director. The registered design professional in responsible charge shall list the deferred submittals on the construction documents for review by the Director. Submittal documents for deferred submittal items shall be submitted to the registered design professional in responsible charge who shall review them and forward them to the Director with a notation indicating that the deferred submittal documents have been reviewed and that they have been found to be in general conformance with the design of the building. The deferred submittal items shall not be installed until their design and submittal documents have been approved by the

LWFR-EXP 5-000266

Director.

## SECTION 107
## TEMPORARY STRUCTURES AND USES

**107.1    General.** The Director is authorized to issue a permit for temporary structures and temporary uses. The permit shall be limited as to time of service, but shall not be permitted for more than 180 days. The Director is authorized to grant extensions for demonstrated cause.

**107.2 Conformance.** Temporary structures and uses shall conform to the structural strength, fire safety, means of egress, accessibility, light, ventilation and sanitary requirements of this code as necessary to ensure the public health, safety and general welfare.

**107.3 Temporary power.** The Director is authorized to give permission to temporarily supply and use power in part of an electric installation before such installation has been fully completed and the final certificate of completion has been issued. The part covered by the temporary certificate shall   comply with the requirements specified for temporary lighting, heat or power .

**107.4.   Termination of approval.** The Director is authorized to terminate a permit for a temporary structure or use and to order the temporary structure or use to be discontinued.

## SECTION 108
## FEES

**108.1** Payment of fees.  A permit is not valid until the fees prescribed by law are paid.    An amendment to a permit will not be released until the additional fee, if any, has been paid.

**108.2 Work Commencing Before Permit Issuance.** Any person who commences any work on a building or a structure before obtaining the necessary building permit or who commences any demolition work prior to obtaining the necessary  permit shall be subject to a penalty  in addition to the required permit fee.  The penalty for commencing construction shall not be more than the valuation of the improvements.  The penalty for commencing demolition shall not be more than the replacement value of the structure or the demolished portion thereof as determined by the provisions of Section 108.4.  The determination of the extent of the penalty, and the amount of the penalty shall be in the sole discretion of the Director.

**108.3 Accounting.** The Director is to collect fees for certificates and permits and shall give receipts for same; he shall deposit daily all sums collected under this Code to the Bureau of the Treasury, to the account of the General Fund, except guarantee deposit fees shall be kept in a separate account by the Director of Finance. The Director shall keep a permanent, accurate account of all fees and other monies collected and received under this Code, the names of the person upon whose account the same were paid, the date and amount thereof, together with the location of the building or premises to which they relate.

**108.4    Building   Permit   Valuations.**     The determination of value or valuation under any of the provisions of this Code shall be made by the Director, and in so determining the value he shall be guided by recognized appraisal methods.  The Director shall keep posted in public view the system or method including basic cost data in use in  determining the cost or value. The data shall be made public at least two (2) weeks in advance of its enactment and shall be revised at least every twelve (12) months.  In the event a certified copy of the construction contract is presented, the contract price shall  be the  basis for determining fees.   For construction, structural repairs, additions and structural alterations, a permit must be secured and fee paid, except in cases where the work is actually performed

LWFR-EXP 5-000267

by the City Government in which case a building permit shall be secured without payment of fee.

**108.5 Related fees.** The payment of the fee for the construction, alteration, removal or demolition for work done in connection with or concurrently with the work authorized by a building permit shall not relieve the applicant or holder of the permit from the payment of other fees that are prescribed by law.

**108.6 Schedule of Permit Fees.** On all buildings, structures or alterations requiring a building permit, a fee for each building permit shall be paid as required at the time of filing application, in accordance with the following schedule:

1.     Permit fees for all work requiring permits, except for removal or demolition. These fees include the certificate of use and occupancy (with or without plans). $50.00 plus $5.00 per $1000.00 or fraction thereof of construction value.

2.     When plans are required and filed with an application for a building permit, the Department of Safety and Permits shall collect a plan checking fee, determined as one-tenth of 1% for the total valuation of all construction work. Total valuation shall be the same as that used in determining building permit fees. There shall be a minimum fee of $50.00 for this review. When plans are submitted for a re-review process, the Department of Safety and Permits shall collect a re-review plan checking fee. The amount of the fee shall be determined as one-twentieth of one percent for the total valuation of all construction work. The total valuation shall be the same as used in determining building permit fees. There shall be a minimum fee of $35.00 and a maximum of $5,000.00 per application for re-review.

3.     Permit fees for removal or demolition shall be as follows:
$75.00 plus $5.00 for each $1000.00 of demolition cost.

4.     An extra inspection or wasted trip fee of $50.00 shall be incurred for each inspection called for by the owner or the owner's representative when, in the opinion of the Director, the work to be inspected is incomplete and/or not suitable for inspection. This charge is for each and any extra inspections made necessary as a result of blatantly incomplete work, inaccessibility to perform the inspection or for alterations to work previously accepted. This fee is in addition to any regular required permit fees.

5.     A fee of $50.00 for each residential unit or phase and $100.00 for each commercial unit or phase shall be incurred to process the request for a Temporary Certificate of Occupancy.

6.     On all buildings, structures, or alterations which fall within the Vieux Carre, as defined in Section 65-6 of the Code of the City of New Orleans, and which require a permit from the Vieux Carre Commission in addition to requiring a building permit under this Code, an additional 50 percent surcharge is added to the permit fee and the plan checking fee as enumerated in subsections 1, 3 and 4 of Section 103.6.5 above.

7.     On all buildings, structures, or alterations which fall within an officially designated Historic District, or any officially designated landmark, or which otherwise may require Historic District Landmarks Commission staff review, an additional 50 percent surcharge is added to the permit fee and the plan checking fee as enumerated in subsections 1, 3, and 4 of Section 103.6.5 above.

**108.7 Refunds.** Subject to the discretion of the Director of Safety and Permits, the applicant for a permit or holder of a permit shall not be entitled to a refund of any fee paid.

LWFR-EXP 5-000268

## SECTION 109
## INSPECTIONS

**109.1 General.** Construction or work for which a permit is required is subject to inspection by the Director and the construction or work shall remain accessible and exposed for inspection purposes until approved. Approval as a result of an inspection shall not be construed to be an approval of a violation of the provisions of this code or of other ordinances of the city. Inspections presuming to give authority to violate or cancel the provisions of this code or of other ordinances of the city shall not be valid. It shall be the duty of the permit applicant to cause the work to remain accessible and exposed for inspection purposes . Neither the Director nor the city shall be liable for expense entailed in the removal or replacement of any material required to allow inspection.

**109.2 Preliminary inspection.** Before issuing a permit, the Director is authorized to examine or cause to be examined buildings, structures and sites for which an application has been filed.

**109.3 Required inspections.** The Director, upon notification, shall make the inspections set forth in Sections 109.3.1 through 109.3.9.

**109.3.1 Footing or foundation inspection.** Footing and foundation inspections shall be made after excavations for footings are complete and any required reinforcing steel is in place. For concrete foundations, any required forms shall be in place prior to inspection. Materials for the foundation shall be on the job, except where concrete is ready mixed in accordance with ASTM C 94, the concrete need not be on the job.

**109.3.2 Concrete slab or under-floor inspection.** Concrete slab and under-floor inspections shall be make after in-slab or under-floor reinforcing steel and building service equipment, conduit, piping accessories and other ancillary equipment items are in place, but before any concrete is placed or floor sheathing installed, including the subfloor.

**109.3.3 Lowest floor elevation.** The elevation certification required in Section 1612.5 shall be submitted to the Director.

**109.3.4 Frame inspection.** Framing inspections shall be made after the roof deck or sheathing, all framing, fire blocking and bracing are in place and pipes, chimneys and vents to be concealed are complete and the rough electrical, plumbing, heating wires, pipes and ducts are approved.

**109.3.5 Lath or gypsum board inspection.** Lath and gypsum board inspections shall be make after lathing and gypsum board, interior and exterior, is in place , but before any plastering is applied or before gypsum board joints and fasteners are taped and finished.

**Exception:** Gypsum board that is not part of a fire-resistive assembly or a shear assembly.

**109.3.6 Fire-resistant penetrations.** Protection of joints and penetrations in fire-resistance-rated assemblies shall not be concealed from view until inspected and approved.

**109.3.7 Other inspections.** In addition to the inspections specified above, the Director is authorized to make or require other inspections of any construction work to ascertain compliance with the provisions of this code and other laws that are enforced by the Department of Safety and Permits.

**109.3.8 Special inspections.** For special inspections, see Section 1704.

**109.3.9 Final inspection.** The final inspection shall be made after all work required by the building permit

LWFR-EXP 5-000269

is complete.

**109.4 Inspection agencies.** The Director is authorized to accept reports of approved inspection agencies, provided such agencies satisfy the requirements as to qualifications and reliability.

**109.5 Inspection requests.** It shall be the duty of the holder of the building permit or their duly authorized agent to notify the Director when work is ready for inspection. It shall be the duty of the permit holder to provide access to and means for inspection of such work for any inspections that are required by this code.

**109.6 Approval required.** Work shall not be done beyond the point indicated in each successive inspection without first obtaining the approval of the Director. The Director, upon notification, shall make the requested inspections and shall either indicate the portion of the construction that is satisfactory as completed, or shall notify the permit holder or an agent of the permit holder wherein the same fails to comply with this code. Any portions that do not comply shall be corrected and such portion shall not be covered or concealed until authorized by the Director.

**109.7 Existing Building Inspections.** Before issuing a permit the Director may examine or cause to be examined any building for which an application has been received for a permit to enlarge, alter, repair, move, demolish, or change the occupancy. He shall inspect all buildings and structures, from time to time, during and upon completion of the work for which a permit was issued. He shall make a record of every such examination and inspection and of all violations of this Code.

## SECTION 110
## CERTIFICATE OF OCCUPANCY

**110.1 Use and Occupancy.** No building or structure shall be used or occupied, and no change in the existing occupancy classification of a building or structure or portion thereof shall be made until the Director has issued a certificate of occupancy . Issuance of a certificate of occupancy shall not be construed as an approval of a violation of the provisions of this code or of other ordinances of the city.

**110.2 Change in use.** Changes in the character or use of an existing structure shall not be made except as specified in Chapter 34.

**110.2.1 Alterations.** Any building or structure which is enlarged, altered, raised, repaired, or built upon to an extent exceeding an expenditure of 50% of the replacement value after alterations, shall be made to comply in its entirety with the requirements for a new building or structure. Where the expenditures are less than 50% of the said replacement value, only portions added, altered, or replaced need be made to conform. Replacement value shall be determined by the Director, as provided in 108.4.

**110.3 Issuing Certificate Of Occupancy.** Upon completion of a building erected in accordance with an approved building permit and after the final inspection the Director shall issue a certificate of occupancy stating the nature of the occupancy permitted.

**110.4 Temporary occupancy.** The Director is authorized to issue a temporary certificate of occupancy before the completion of the entire work covered by the permit, provided that such portion or portions shall be occupied safely. The Director shall set a time period during which the temporary certificate of occupancy is valid.

**110.5 Revocation.** The Director is authorized to, in writing, suspend or revoke a certificate of occupancy or completion issued under the provisions of this code wherever the certificate is issued in error, or on the basis of incorrect information supplied, or where it is

LWFR-EXP 5-000270

determined that the building or structure or portion thereof is in violation of any ordinance or regulation or any of the provisions of this code.

**110.6 Existing Building Certificate Of Occupancy.** A certificate of occupancy for any existing building may be obtained by applying to the Director and supplying the information and data necessary to determine compliance with this Code for the occupancy intended. Where necessary, in the opinion of the Director, two sets of detailed drawings, or a general inspection, or both, may be required. When, upon examination and inspection, it is found that the building conforms to the provisions of the Code for such occupancy, a certificate of occupancy may be issued.

## SECTION 111
## SERVICE UTILITIES

**111.1 Connection of service utilities.** No person shall make connections from a utility, source of energy, fuel or power to any building or system that is regulated by this code for which a permit is required, until released by the Director.

**111.2 Temporary connection.** The Director shall have the authority to authorize the temporary connection of the building or system to the utility source of energy, fuel or power.

**111.3 Authority to disconnect service utilities.** The Director shall have the authority to authorize disconnection of utility service to the building, structure or system regulated by this code and the codes referenced in case of emergency where necessary to eliminate an immediate hazard to life or property. The Director shall notify the serving utility, and wherever possible the owner and occupant of the building, structure or service system of the decision to disconnect prior to taking such action. If not notified prior to disconnecting, the owner or occupant of the building,

structure or service system shall be notified in writing, as soon as practical thereafter.

## SECTION 112
## BOARD OF BUILDING STANDARDS AND APPEALS

**112.1 - General**
The Director has the authority  and it is his duty, subject to the provisions of law and of this Code, to pass upon a question relative to the mode, manner of construction or materials to be used in the erection or alteration of any building or other structure erected or to be erected within the City of New Orleans, which is affected by the provisions of this Code, or of any existing law applicable to the City of New Orleans and relating to the design, construction, alteration, maintenance, repair, and removal of buildings or other structures therein, and to require that such design, mode, manner of construction, or materials shall conform to the true intent and meaning of the several provisions of this Code. If the Director, rejects or refuses to issue a building permit, or to approve the design, mode, manner of construction or materials proposed to be followed or used in the erection and alteration of any such building or structure, or when it is claimed that the rulings of the Director or the provisions of this Code do not apply, or that a more desirable and equally safe form of construction, from the owner's point of view can be employed in a specific case, or whenever the owner of a building or structure shall object to any decision given by the Director, relative to the extent of damage sustained by any building or structure, by fire or otherwise, or to the extent or value of repairs, alterations or improvements of any existing building or replacement value thereof, the owner of the building may appeal from the decision of the Director to the Board of Building Standards and Appeals.

**112.2 — Appointment**
There shall be in the City of New Orleans a Board to be

LWFR-EXP 5-000271

called "Board of Building Standards and Appeals" hereinafter referred to as the "Board". The Board shall consist of five members to be appointed by the Mayor, one member to be a Louisiana State Registered Architect, one member to be a Louisiana State Registered Civil Engineer, one member to be a Louisiana State Licensed General Contractor, one member to be a Louisiana State Registered Mechanical or Electrical Engineer, and one member to be an engineer experienced in fire protection. All members shall be domiciled in the City of New Orleans.

### 112.3 — Terms of Office
The term of office shall be five (5) years each, but each member shall serve until his successor is appointed and qualified. Any member may be removed by the Mayor, with approval of the Council, for malfeasance, incapacity or neglect of duty. In case a member is interested in any way in an appeal, he shall be recused and the Board shall appoint a member of the same calling to serve in his stead for the particular case. Said terms shall terminate on June 30 of the respective years.

### 112.4 — Board Officers and Quorum
Each member shall take an oath of office in a form prescribed by the City Attorney, and the Board shall elect one of its members as Chairman and one as Vice-Chairman. A secretary, not a member of the Board, shall also be appointed. The Board shall meet when called by the Chairman to consider appeals which meeting shall be considered a regular meeting; or by the Director of the Department of Safety and Permits for the transaction of such business as he may designate, which shall not be held more often than twice in each month of each year. No appeal shall be considered at a meeting of the Board unless it is submitted at least eight (8) working days prior to the date of the meeting. The Board shall meet when notified by the Director for the purpose of recommending appropriate changes in this code and then refer the same to the City Council for consideration and action. Three members shall

constitute a quorum. In varying the application of any provisions of the Code, or in modifying an order of the Director, minimum three affirmative votes shall be required.

### 112.5 — Legal Advisor
The City Attorney is the legal advisor to the Board.

### 112.6 — Appeals
Whenever the owner of an alleged unsafe structure or an alleged public nuisance does not agree with the order from the Department of Safety and Permits, as to the corrections to be made, he shall have the right to appeal to the Board of Building Standards and Appeals within fifteen (15) days from the date of the order stating how he proposes to make the structure safe and, if required by the Board, shall submit detailed engineering analysis or recommendations accompanied by plans and specifications prepared by a Louisiana registered architect or a Louisiana registered civil engineer, or other substantiating data concerning the removal or other remedial steps to be taken to render the structure safe. In cases of emergency, and when the Director considers the structure in imminent danger of collapse, that portion of 104.5 relative to imminently dangerous structures shall govern and no appeal to the Board shall be permitted.

### 112.7 — Fees
Application for an appeal shall be accompanied by a check payable to the "City of New Orleans" for fees as follows:

1 and 2 family dwelling....................................$125.00
All others.........................................................$400.00
Townhouses -$125.00 each, not to exceed.........$375.00
Rehearing.......................................................$100.00
Special Board Meeting...................................$1200.00
In cases when an application for a slab elevation waiver is made AFTER pouring of a slab, the application fee shall be tripled.

LWFR-EXP 5-000272

**112.8 — Duties and Powers**

It shall be the duty of the Board:

**1.** To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by the Director in the enforcement of this Code.

**2.** To hear and decide all matters referred to it or upon which it is required to pass under this Code.

**3.** To pass upon appeals where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this Code, to vary or modify the application of any of the regulations or provisions of such articles relating to the construction or alteration of buildings or structures so that the spirit of this Code shall be observed, public safety and welfare secured and substantial justice done.

**4.** To interpret the intent or meaning of this Code for the advice of the Director. In exercising the above-mentioned powers, the Board may reverse or affirm wholly or in part, or may modify the order, requirement, decision or determination appealed from and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the Director from whom the appeal is taken. The concurring vote of three members of the Board shall be necessary to recall any requirement, decision or determination of the Director, or to decide in favor of the applicant on any matters on which it is required to pass under this Code, or to effect any variation in this Code.

**112.9 — Amendments**

All amendments to this Code shall first be reviewed by the Board of Building Standards and Appeals, and shall be accompanied by its recommendation prior to consideration by the City Council.

**112.10 — Rehearing**

In cases when the Board rules against an application, and the applicant subsequently elects to modify his original building plan and submit the modified plan to the Board for rehearing, the applicant must pay to the Director a rehearing fee of $100.00, which shall be deposited by the Director in the General Fund of the City.

**112.11 — Actions**

All cases in which application for appeals have been filed with the Board shall be heard, and the Board shall inform the Director of its decisions, stating the waivers or denials granted and conditions, if any, as they may require in each action. The decisions shall specify the variations allowed and the reason therefore, and shall be filed in the office of the Director within 30 days of the public hearing. When building conditions are very unusual, requiring site visit, research and the like, the Director may grant a reasonable extension of time. Failure to file the decision shall not delay issuance of permits in accordance with a favorable vote so long as conditions attached to the permits are in accord with the action of the Board. Copies of the decision shall be sent to the applicant and all parties involved in the appeal. If the order or refusal of the Director is affirmed, the order or refusal shall have full force and effect. If the order or refusal is modified or annulled, the Director shall issue a permit in accordance with the decision.

**112.12 - Appeal to Courts**

A person, or any officer, department, commission, board, bureau, or any other agency of the City of New Orleans jointly or singularly aggrieved by a decision of the Board of Building Standards and Appeals may present to the Civil District Court of the Parish of Orleans, within one (1) year after filing of the decision in the office of the Board, a writ of certiorari asking for such relief and under such rules and regulations as are provided for such matters in appropriate legislation of the State of Louisiana.

**SECTION 113**
**VIOLATIONS AND PENALTIES**

LWFR-EXP 5-000273

**113.1 Unlawful acts.** It shall be unlawful for a person, firm or corporation to erect, construct, alter, extend, repair, move, remove, demolish or occupy any building, structure or equipment regulated by this code, or cause same to be done, in conflict with or in violation of any of the provisions of this code.

**113.2 Notice of violation .** The Director is authorized to serve a notice of violation or order on the person responsible for the erection, construction, alteration, extension, repair, moving, removal, demolition or occupancy of a building or structure in violation of the provisions of this code, or in violation of a permit or certificate issued under the provisions of this code. The order shall direct the discontinuance of the illegal action or condition and the abatement of the violation.

**113.3 Prosecution of violation.** If the notice of violation is not complied with promptly, the Director is authorized to request the legal counsel of the jurisdiction to institute the appropriate proceeding at law or in equity to restrain, correct or abate such violation, or to require the removal or termination of the unlawful occupancy of the building or structure in violation of the provisions of this code or of the order or direction made pursuant thereto.

**113.4 Violation penalties.** A person who violates a provision of this code or fails to comply with any of the requirements thereof or who erects, constructs, alters or repairs a building or structure in violation of the approved construction documents or directive of the Director, or of a permit or certificate issued under the provisions of this code, is subject to penalties as prescribed by law.

## SECTION 114
## STOP WORK ORDER

**114.1 Authority.** The Director is authorized to issue a stop work order whenever he finds any work regulated by this code being performed in a manner contrary to

the provisions of this code or in a dangerous or unsafe manner.

**114.2 Issuance.** The stop work order shall be in writing and shall be given to the owner of the property involved, or to the owner's agent, or to the person doing the work. Upon issuance of a stop work order, the cited work shall immediately cease. The stop work order shall state the reason for the order, and the conditions under which the cited work will be permitted to resume.

When an emergency exists, the Director shall not be required to give a written notice prior to stopping the work.

**114.3 Unlawful continuance.** A person who continues any work after having been served with a stop work order, except the work that person is directed to perform to remove a violation or unsafe condition, is subject to penalties as prescribed by law.

## SECTION 115
## STREET ADDRESS

When issuing building permits, the Director shall designate thereon the street number that the building when completed will bear. Buildings shall have approved address numbers placed in a position to be plainly legible and visible from the street or road fronting the property. These numbers shall contrast with their background. Address numbers shall be Arabic numerals or alphabet letters. Numbers shall be a minimum of 4 inches high with a minimum stroke width of 0.5 inch.

## SECTION 116
## ZONING RESTRICTIONS

The provisions of the Comprehensive Zoning Ordinance of the City of New Orleans shall not be deemed to be modified by any provision of this Code. The provisions of the Comprehensive Zoning Ordinance shall be controlling, except that whenever

LWFR-EXP 5-000274

this Code imposes greater restrictions by reason of the type of construction used, the provisions of this Code shall control.

## SECTION 117
### FIRE PREVENTION

The provisions of the Fire Prevention Ordinance shall not be deemed to be modified by any provisions of this Code except that wherever the requirements of this Code are more restrictive, the requirements of this Code shall apply.

## SECTION 118
### MINIMUM HOUSING RESTRICTIONS

The provisions of Chapter 26 of the City Code "Housing Standards - Minimum Housing Standards Code", as amended, shall not limit, restrict, contravene, or vitiate the provisions of this Code as adopted herein or hereafter amended.  Wherever there is a conflict between the Minimum Housing Standards and the Building Code, the more restrictive provisions shall be enforced.

## SECTION 119
### LOT FILL OR LOT GRADE

**119.1 General**

It is unlawful to place fill on a lot or site or part thereof or grade a lot or site in a manner that allows runoff to drain onto abutting lots or sites.  The requirement for prevention of water runoff to abutting sites or lots may be met by use of a perimeter swale or a retaining wall. Lots or sites shall generally be graded to drain the water toward the street(s) side (s) of the lot or site.  Any retaining walls installed pursuant to the provisions of this section shall be constructed of concrete.  Request for approval of materials other than concrete may be reviewed and approved or disapproved by the Director depending upon the structural integrity of the alternate material.  Retaining walls of treated lumber when approved are limited to a maximum height of 12 inches.

**119.2 Notarized certificate.** Prior to issuance of a Certificate of Occupancy by the Department of Safety and Permits, the applicant shall present a notarized certificate signed by the owner stipulating that all filling, grading and sidewalk and driveway installations have met the requirements of the applicable sections of the Code of the City of New Orleans.  Compliance with all filling, grading and sidewalk and driveway installation requirements shall be completed before final inspection by the Department of Safety and Permits.

**119.2.1 Slab Foundations Certificate**

The Department of Safety and Permits shall inscribe on the building permit the minimum floor elevation in accordance with the Federal Flood Insurance Rate Map and the Code of the City of New Orleans.  In addition, the top of the slab shall not be less than 18 inches above the highest point of the curbin front of the lot or site.  The builder shall obtain from a Land Surveyor or Civil Engineer, licensed in the State of Louisiana, a Certificate of Construction Bench Mark describing a mark of known elevation of the slab.  Also, the Certificate of Construction Bench Mark must contain the elevations in the four corners of the lot.  This certificate shall be furnished to the Department of Safety and Permits at the time of the building permit application.  Before framing begins, a Certificate of Slab Elevation shall be submitted by the applicant to the Department of Safety and Permits.  This certificate shall contain as built minimum floor elevation and shall be signed by a Civil Engineer or Land Surveyor, licensed in the State of Louisiana.  If the slab is built below the stipulated elevation, the Department of Safety and Permits is empowered to order the removal or correction of said slab and the Department of Safety and Permits is empowered to cancel the building permit.

**119.2.2 Pier or Chain Wall Foundation Certificate**

The Department of Safety and Permits shall inscribe on the building permit the minimum floor elevation in

LWFR-EXP 5-000275

accordance with the Federal Flood Insurance Rate Map and the Code of the City of New Orleans. In addition, the top of the floor shall not be less than 18 inches above the highest point of the curb in front of the lot or site. Furthermore, the underside of a raised structure shall have a minimum of 18 inches from the underside of the sill to the ground beneath the entire structure. The builder shall obtain from a Land Surveyor or Civil Engineer, licensed in the State of Louisiana, a Certificate of Construction Bench Mark describing a mark of known elevation in immediate proximity to the property. This will be used in establishing the elevation of the piers or chain wall. This Certificate shall be furnished to the Department of Safety and Permits at the time of building permit application. Before framing begins, a Certificate of Floor Elevation shall be submitted by the applicant to the Department of Safety and Permits. This certificate shall contain as built minimum floor elevation and shall be signed by a Civil Engineer or Land Surveyor, licensed in the State of Louisiana. If the as built minimum floor elevation is built below the stipulated elevation, the Department of Safety and Permits is empowered to order the removal or correction of said floor and the Department of Safety and Permits is empowered to cancel the building permit.

**119.3 Modifications**

In the Central Business District (including the area known as the Vieux Carre'), in built-up commercial areas and in areas where a satisfactory system of lot grades and building elevations already have been established, the Department of Safety and Permits may modify or vary the requirements of 110.2.1 and 110.2.2 provided the new construction in the above-mentioned areas shall always be equal to or above the average lower floor elevation in the particular block or area, so long as such grade elevations are in compliance with the requirements of the Federal Insurance Administration."

SECTION 9.   That Chapter 2 of the IBC, 2000 Edition, be amended to include the following:

**"CHAPTER 2**
**DEFINITIONS**

**Building Official:** The Director of the Department of Safety and Permits, or his duly authorized representative or employee."

SECTION 10.   That Chapter 4 of the IBC, 2000 Edition, be amended to include the following:

**"CHAPTER 4**
**SPECIAL DETAILED REQUIREMENTS BASED**
**ON USE AND OCCUPANCY**

**SECTION 419**
**TENTS**

**419.1 PERMIT REQUIRED.** Tents, with an area up to 1,200 sq. ft. and not located in the inner city fire limits, require only a Certificate of Compliance from Fire Prevention. Tents, with an area exceeding 1,200 sq. ft. and all tents located in the inner city fire limits, require a certificate of compliance from the Fire Department and a Building Permit from the Department of Safety and Permits.

**SECTION 420**
**PREFABRICATED AND MODULAR BUILDINGS**
**420.1 SCOPE:** This section covers the installation of prefabricated and modular buildings within the City of New Orleans.

**420.2 Definition:** Structures transportable in one or more sections and which are built on a permanent chassis shall be considered as prefabricated and/or modular buildings.

**420.3 General:** Prefabricated and Modular Buildings shall be designed with a permanent foundation and must comply with the provisions of this code. It shall be the duty of the permit applicant to provide a label or seal of compliance with the provisions of this code, issued

LWFR-EXP 5-000276

by an agency approved by the City of New Orleans. In the alternative, the permit applicant shall cause the work to be accessible and exposed for inspection purposes. The permit applicant is responsible for expense entailed in the removal or replacement of any material required to allow inspection.

**420.4 Construction Documents:** Two sets of construction documents prepared by a Louisiana Registered Architect or Civil Engineer shall be submitted to the department along with an application for a permit. Construction documents shall include, among other things, plans, elevations, sections, foundation details, construction benchmark etc. The construction documents shall be drawn to scale and shall be of sufficient clarity to indicate the location, nature and extent of the proposed work and show in detail that the prefabricated and/or modular building will conform to the provisions of this code."

SECTION 11. That Chapter 9 of the IBC, 2000 Edition, be amended to include the following:

**"CHAPTER 9**
**FIRE PROTECTION SYSTEMS**

**SECTION 912**
**HYDRANTS, WATER MAINS & FIRE LANES**

**912.1 Fire Protection on Private Property.** Requirement for fire hydrants, water mains, fire lanes and driveways for the use of fire apparatus to combat fires on private property, shall be installed in the following developments and land uses as specified below:

1. Residential land use developments involving 2 acres or more.

2. Medium and High Density Residential Land Uses.

3. Large Scale Commercial Land Use Development involving 2 acres or more.

4. Large Scale Industrial Land Use Development involving 2 acres or more.

5. Light Industrial and Heavy Industrial Land Uses.

6. New Subdivisions in excess of five building sites.

7. New Subdivisions or Resubdivisions requiring additional streets.

8. Conditional land uses when approved by the Fire Department and Sewerage and Water Board.

9. Any Private Development, land and buildings and containing 2 acres or more that does not already have public streets, water mains and fire hydrants.

10. Campus development involving two acres or more.

**912.2 Detail Requirements:** All fire fighting systems required by this Code shall comply in all respects with:

1. Standard Fire Prevention Code as amended by the City of New Orleans.

2. Requirements of the Sewerage and Water Board which include but are not limited to:

(a) Connection to the public water supply, all connections to be made with a detector check valve, furnished and installed by the Sewerage and Water Board, the cost of installation charged to the applicant.

(b) If domestic water is also taken off the fire main, full-flow meters will be installed in lieu of the detector check valve.

(c) Granted Servitudes as required by the Sewerage and Water Board for servicing of water mains and fire hydrants which are to be installed according to the Sewerage and Water Board's specifications and the above code requirements.

**912.3** Furnish layout plans for approval.

**912.3.1** Plans shall be drawn to scale and shall include, but are not limited to, the following essential details:

1. The scale shall conform to the following:

1.1 Projects containing more than 200 acres, not more than 200 ft to one inch.

1.2 Projects containing 50 acres to 200 acres, not more than 100 ft to one inch.

1.3 Projects containing less than 50 acres, not more than 60 ft to one inch.

LWFR-EXP 5-000277

1.4 Projects containing 10 acres or less, not more than 50 ft. to one inch.

2. Size and location of water supply.

3. Size and location of all mains, the class and type of mains to be installed and the depths to which it is to be buried.

4. Size, type and location of all meters and valves.

5. Number and size of hose outlets, thread detail, setting grade and location of all hydrants.

6. Location and size of sprinkler and standpipe risers supplied by the system.

7. Fire lane and driveway widths and turning radius.

**912.4 Water Distribution System.** Water mains shall conform to the Specifications and/or Plumbing Code of the Sewerage and Water Board, and the applicable provisions of the codes and requirements mentioned herein.

**912.4.1 Sizing of water mains.** The following is adopted minimum size of water mains along with other provisions to be used for fire hydrant supply:

1. **Large Scale Commercial and Industrial Land Use Developments (includes campus developments):**

1.1 12-in or larger mains can be used as a loop system around the area and shall be supplied by separate feeder mains.

1.2 8-in mains can be used within the area when it completes a gridiron to be supplied by 12-in or larger mains at each end.

1.3 Adjustment in main size above 12 in shall be made when additional fire flow is required for sprinklers, standpipes and special protective equipment for hazardous occupancy or processes.

2. **Heavy Industrial Land Uses:**

2.1 12 inch mains to be used throughout.

2.2 Adjustment in main size to above 12 in. to be made when additional fire flow is required.

3. **Low, Medium and High Density Residential Land Uses: Large Scale Residential Land Use Developments (except when located in the Inner Fire Limits):**

3.1 8-in or larger mains to be used when supplied by at least two 8-in or larger feeders, separated from each other and when it completes a gridiron not exceeding 600 ft to the side with a hydrant at each corner and intermediate hydrant between corners. However, the 6 inch mains are not to be dead-ended.

4. Requests for variations from the above specified sizes may be approved by the Director provided such requests are accompanied by engineering design calculations for the intended land use prepared by a Louisiana Registered Engineer experienced in such work.

**912.5 Fire Flow.** Fire flow at a residual pressure of 20 psi is required with the following flows:

1. Low and medium density (one and two family) residential land uses 1000 to 2500 gpm. Distribution based on ratio of one hydrant to each 150,000 to 140,000 sq ft of average area served.

2. Large scale residential land use development 1500 to 3500 gpm. Distribution based on ratio of one hydrant to each 140,000 to 120,000 sq. ft. of average area served.

3. Medium and high density (apartments) residential land uses 3500 to 4000 gpm. Distribution based on ratio of one hydrant to each 120,000 to 110,000 sq ft of average area served.

4. All commercial land uses including campus development. (except those within the Inner Fire Limits) 3500 to 4000 gpm. Distribution based on ratio of one hydrant to each 110,000 to 100,000 sq ft of average area served.

LWFR-EXP 5-000278

5. Light industrial land uses and large scale industrial land use developments 4000 to 8000 gpm. Distribution based on ratio of one hydrant to each 100,000 to 60,000 sq ft of average area served.

6. Heavy industrial land uses 8000 to 12000 gpm. Distribution based on ratio of one hydrant to each 60,000 to 40,000 sq ft of average area served.

7. Additional fire flow is required in excess of the specified fire flow for extra hazardous occupancy, processes or conditional uses.

**912.6 Fire Hydrants.** Hydrants shall meet the specifications of the Sewerage and Water Board.

**906.6.1 Type of Hydrant.** Hose outlets size and threads to conform to the hose connections used by the Sewerage and Water Board.

**912.6.2 Hydrant Spacing.** Hydrants shall be spaced as indicated below:

1. Hydrants should be located no closer than 50 ft from buildings in industrial districts. In other districts hydrants shall be located where the chance of fire and falling walls would not endanger hydrants.

2. Spacing shall not be more than 350 ft. apart in residential districts.

3. In industrial areas and shopping centers, hydrants shall be located to permit all sides of the building to be reached by a hose lay not in excess of 300 ft.

4. In multiple housing developments, commercial districts and large scale developments, hydrants shall be located to permit all sides of the building to be reached by a hose lay not in excess of 400 ft.

**912.6.3 Hydrant Setting.** Hydrants shall be protected from mechanical injury and shall be installed as indicated below:

1. Hydrant settings, center of hose outlets should be not less than 18 in above the final grade line.

2. Hydrant locations shall not be less than 18 in nor more than 30 in from the curb of a street or driveway, have no obstructions within 15 ft on each side and shall be accessible so fire department pumpers can be connected with no more than 15 ft of hose.

**912.7 Fire Lanes.** Fire lanes as indicated below shall be provided for Fire Department access.

**912.7.1 Low Density Residential Development.** Every part of a structure must be accessible from a street or highway, with a maximum of 150 ft of hose in a low density Residential Development. In instances where the maximum hose lay is exceeded, specific plans of the structure and its location must be reviewed and approved by the Department of Fire.

**912.7.2 Other Developments.** In all other residential districts, commercial and industrial developments, and large scale developments, no building of any type construction for any occupancy shall be constructed, unless every part of the structure is accessible from a street or highway with 150 ft of fire hose, or provided that said structure may be erected at a greater distance if fire lanes are constructed as designated by this Code requirement.

**912.7.3 Detail Requirements.**

1. Fire lanes shall be located from whichever portion of any structure can be reached with 150 ft of fire hose. Private streets, built in accordance with the regulations of City of New Orleans, Department of Public Works, Standard Plans and Specifications, may be considered as fire lanes.

2. Any such fire lanes more than 100 ft long, shall either connect at both ends to a dedicated street or be provided with a turn-around having a minimum radius of 50 ft.; or other

LWFR-EXP 5-000279

circulation system approved by the Department of Fire.

3. Fire lanes shall have a minimum width of 20 ft. and a minimum height clearance of 14 ft.

4. Fire lanes and road surfaces shall be constructed in accordance with the regulations of the City of New Orleans, Department of Public Works, Standard Plans and Specifications."

SECTION 12.   That Chapter 18 of the IBC, 2000 Edition, be amended to include the following:

## "CHAPTER 18
## SOILS AND FOUNDATIONS

### SECTION 1812
### SPECIAL PROVISIONS FOR THE CITY OF NEW ORLEANS

Preamble: This Section offers provisions associated with the design and construction of foundations. However, it does not and cannot replace education or experience, and it must be used in conjunction with professional judgement. Not all aspects of this Section may be applicable in all circumstances. The provisions of this Section are not intended to represent or replace the standard of care by which the adequacy of a given professional service must be judged, nor should the provisions be applied without consideration of a project's many unique aspects.

**1812.1   GENERAL**

Foundation analysis and design in the City of New Orleans shall be conducted in conformance with Section 1812. Where there is conflict between a requirement of Section 1812 and a requirement of another section of the International Building Code (IBC), the requirement of Section 1812 shall govern.

**1812.2   GEOTECHNICAL INVESTIGATION**

**1812.2.1**   Foundation capacity shall be determined by geotechnical investigation unless otherwise provided for in section 1812. The geotechnical investigation shall be performed under the direction of a Louisiana Registered Civil Engineer experienced in geotechnical engineering. The geotechnical investigation shall consist of undisturbed soil borings and laboratory tests or other applicable methods and procedures to define subsurface conditions. The type and extent of the subsurface investigation program shall be consistent with generally accepted geotechnical engineering practice, and it shall be influenced by the importance, type, size, planned grade changes, and location of the proposed construction.

**1812.2.2.**   An engineering analysis shall be made by a Louisiana Registered Civil Engineer experienced in geotechnical engineering that establishes information applicable to the design and construction of the foundation. This information includes the allowable soil bearing capacity, allowable pile or pier capacity, depth of foundation, expected movements (settlement, heave, etc), depth to groundwater, and other items related to foundation design and construction.

Data required for 1812.2.2 shall be obtained from a minimum of:

1. One (1) soil boring (or equivalent) for structures two stories or less and 10,000 sq. ft. or less of ground floor area.

2. Two (2) soil borings for other structures 15,000 sq. ft. or less of ground floor area.

3. One (1) soil boring for each additional 15,000 sq. ft. of ground floor area.

Deviations from the above may be allowed by the Director if supported by adequate geotechnical data.

**1812.3   FOUNDATIONS**

**1812.3.1**   Foundations shall be supported on piles unless an engineering analysis from a Louisiana Registered Civil Engineer experienced in geotechnical

LWFR-EXP 5-000280

engineering is provided. Such analysis would indicate the suitability of a spread foundation and establish allowable soil bearing capacity. Foundations shall be constructed of masonry, plain concrete, reinforced concrete, or of pile or pier materials described in Section 1812.

**1812.3.2**     Any person or entity contemplating foundation construction that may make use of, be adjacent to, or involve public property shall determine in advance of construction the existence of public or private underground or overhead utilities that may be occupying said public property.

Such person shall secure the proper approval from public and private agencies concerned and shall observe all precautions necessary to avoid damage or disturbance to said utilities (telephone, telegraph, cable, fiber optic, sewerage, drainage, water, gas, electricity and the like).

**1812.3.3**     Temporary buildings ( See Section 107) and buildings not exceeding one story in height and no more than 500 sq. ft. in area shall be exempt from these requirements.

## 1812.4     SPREAD FOUNDATIONS

**1812.4.1   Design**
**1812.4.1.1**   Spread foundations shall be constructed on suitable naturally occurring soil or on properly selected, placed, compacted, and controlled structural (engineered) fill. When structural fill is used, the in-place density and moisture content shall be independently verified by testing during construction. Footings are to be designed so that the allowable bearing capacity of the soil shall not be exceeded and the anticipated movements shall be within tolerable limits for the planned structure.  The bottom of a spread foundation shall be at least 12 in. below the undisturbed ground surface.

**1812.4.2     Soil Bearing Capacity**
**1812.4.2.1**   The Director may accept the allowable soil bearing capacity established by the engineering analysis in 1812.2.2 as meeting the minimum requirements. Such analysis shall be performed by a Louisiana Registered Civil Engineer experienced in geotechnical engineering.

**1812.4.2.2.**    The Director may accept other adequate proof as to the allowable soil bearing capacity at a particular location.

**1812.4.3     Differential Settlement**
**1812.4.3.1**   Where footings are supported by soils of widely different bearing capacity, differential settlement can occur. Therefore, the allowable bearing values of the more yielding soil shall be reduced or special provisions shall be made in the design to reduce the likelihood for excessive or structurally intolerable differential settlements to occur.

**1812.4.4     Excavations**
**1812.4.4.1**    When excavating for buildings and/or associated structures, such excavations shall be made safe to prevent danger or damage to life and property. Permanent excavations shall have retaining walls of sufficient strength made of steel, masonry, reinforced concrete, mechanically stabilized earth, or other suitable materials to retain embankments, together with any surcharge loads. Excavations for any purpose shall not extend within 1 ft. of the angle of repose or natural slope of the soil under any footing, foundation, or load-bearing element, unless such footing, foundation, or load-bearing element is first properly underpinned or protected against movement.

## 1812.5     PILE FOUNDATIONS

**1812.5.1   Design**
**1812.5.1.1**   All pile foundations shall be designed by a Louisiana Registered Civil Engineer.  Piles shall be

LWFR-EXP 5-000281

designed to include all applied weights and forces including the weight of mats or caps and the weight of earth or fill on top of the mats or caps considering the effect of buoyancy; the weight of the piles shall be given due consideration in the foundation design. In cases where piles are loaded eccentrically, provisions shall be made for such eccentricities. Further analyses should be performed for laterally loaded piles or piles subjected to dynamic loading (machinery, etc.). Consideration also should be given in design to the influence of negative skin friction (downdrag) on foundation performance.

**1812.5.1.2**   Except for lightly loaded piles (as defined elsewhere in Section 1812) where the minimum spacing is 2 ft., the minimum pile spacing for all other piles shall be either 3 ft, or three pile diameters (widths), or as determined by the expression.

$$SPAC = 0.05 (L_1) + 0.025 (L_2) + 0.0125 (L_3), \text{ in which:}$$

$SPAC$ = Center-to center spacing of piles, ft.

$L_1$ = Pile penetration up to 100 ft.

$L_2$ = Pile penetration from 101 to 200 ft.

$L_3$ = Pile penetration beyond 201 ft.

**1812.5.1.3**   Greater spacing than the minimum value may be required to satisfy group perimeter shear as provided in 1812.5.3.1 and to assure that piles will not interfere with or intersect each other during installation.

**1812.5.1.4**   Piles extending above the ground surface, surrounded by relatively weak soil, or standing in free water, that are used as load-carrying members, shall be designed structurally in their unrestrained length in accordance with applicable column formulas as referenced in the IBC; due consideration to effective unsupported length must be given. Location of pile fixity shall be determined with due regard to soil properties.

**1812.5.1.5**   Where subsurface investigation records or

site conditions indicate possible deleterious action of pile materials because of soil constituents, changing water levels, electrolysis, corrosion, or other factors, such materials shall be adequately protected. The effectiveness of such methods of processes for the particular purpose shall have been thoroughly established by satisfactory service records or other evidence that demonstrates the effectiveness of such protective measures. Cutoff of untreated timber piles shall not be higher than the lowest groundwater level anticipated for the life of the structure as determined by an engineering investigation based on established data, but in no case shall the cutoff be less than 7 ft. below the natural ground surface. Structural steel piles driven below the permanent water table and into natural soil need not be protected against electrolysis and/or corrosion unless previous site history or field conditions warrant otherwise.

**1812.5.1.6**   The design and installation of pile foundations shall be under the direct supervision of a Louisiana Registered Civil Engineer who shall certify to the Director that the piles, as installed, satisfy the design criteria.

**1812.5.1.7**   Pile foundations shall be designed and installed on the basis of a geotechnical investigation and report which shall include soil borings and laboratory tests or other subsurface exploration at locations and depths sufficient to determine the position and adequacy of the bearing soils except where sufficient data upon which to base the design and installation is available. The investigation and report shall include, but not be limited to, the following.

1. Descriptions of the soil and groundwater conditions.
2. Recommended pile types and predicted capacities.
3. Pile installation criteria.
4. Field observation procedures.
5. Probe piles and pile load test requirements.
6. Designation of bearing stratum or strata.

LWFR-EXP 5-000282

7. Estimated movements   (settlement, heave, etc.)
8. Other applicable installation and performance
   considerations such as: lateral  capacity, dynamic
   loads,  vibrations, downdrag, fill placement,
   groundwater lowering, etc.

**1812.5.1.8**     Allowable stresses greater than those specified for each pile type in this Code may be permitted when supporting data justifying such higher stresses are filed with the Director.

**1812.5.2     Pile Load Capacity for a Single Pile**
**1812.5.2.1     Pile Load Test Case.**
  The pile load testing procedure for a single pile shall be conducted in general accordance with ASTM D 1143 under the direction of a Louisiana Registered Civil Engineer. The load-carrying capacity for a single pile in compression shall be established by any of the following methods:
      Method 1:   When the total test load applied equals twice the proposed load capacity for a single pile, it shall be left in place at least 48 hr, the last 24 hr. of which shall be free from settlement.  If after deducting rebound following the total release of this load, the net settlement at the top of the pile does not exceed 0.01 in. per ton of total test load, the pile shall be considered adequate to support the proposed load capacity for a single pile.
      Method 2:   Where the pile is loaded to failure, the loading value where the load settlement curve begins to show an   accelerated deviation from its previous trend may be considered the "yield point" for the given soil and pile. One-half of this value or one-half of the value at which the net settlement is estimated as ½ in., whichever is smaller, shall be considered as the allowable load capacity for a single pile.
      Method 3:   The failure load of a pile, one-half of which shall be used  as the allowable load capacity for a single pile, shall be defined as that load which produces a settlement or movement of the tip equal to 1/4 inch. The movement of the tip can be determined by

actual measurement or by either of the following two load distribution cases, both involving the measurement of the butt movement.  In each case, the failure load shall be defined as that load producing a movement of the butt equal to the elastic deformation of the pile under the failure load plus 1/4 inch.

**1812.5.2.2     Arbitrary Load Distribution Case.**  In determining the elastic deformation of the pile, the assumption may be made that the soil-pile friction value is constant from tip to butt and that tip bearing is ignored.  For a prismatic pile of one material, the butt movement shall be calculated by the expression:

| $D_f$ | = | $(P_fL / AE) + 0.25$ in., in which: |
|-------|---|-------------------------------------|
| $D_f$ | = | Butt movement, in. |
| $P_f$ | = | Failure load, kips |
| $L$   | = | Pile length, in. |
| $A$   | = | Pile cross-sectional area, sq. in. |
| $E$   | = | Modulus   of   elasticity   of   pile material, ksi. |

**1812.5.2.3     Actual  Load  Distribution Case.**
In determining the elastic deformation of the  pile, the actual distribution of stress into the soil may be used provided that sufficient soil data have been obtained.

**1812.5.2.4**     A variation of the load capacity of a load-tested pile shall be allowed without additional load tests provided that the load capacity is derived primarily from skin friction.   The change in load capacity for a single pile may be increased by not more than 20% with an increase in length of 20%. A decrease in length of not more that 10% may be accompanied with a decreased in capacity of 20%.  Such stipulation shall be made in writing by a Louisiana Registered Civil Engineer experienced in geotechnical engineering if the pile foundation will be subject to downdrag forces, lateral loads, vibration loads, etc.

**1812.5.2.5**     Where the number of  piles required for a structure is 100 or less, the load per pile does not exceed 150 psf of embedded pile area, and the actual

LWFR-EXP 5-000283

pile penetration into the supporting soil is not less than 40 ft., the Director may waive, upon specific request, the load test requirements. The basis for such a waiver shall be data developed by the geotechnical investigation and geotechnical engineering analysis (see 1812.2 and 1812.5.1.7). The allowable load on a single pile shall not exceed the value determined by the geotechnical engineering analysis.

**1812.5.2.6**    The Director may, upon specific request, accept as adequate proof of the load capacity of a single pile, load test results from other piles subject to all of the following conditions.

(1) The previously load-tested pile  must be located within 300 ft. (measured in any direction) from the new pile in question, but not to exceed 500 ft. to the farthest footprint of the building or structure.  (2) The load test(s) must have been performed on the same type and length of piles that are to be used at the new location. (3) Adequate soil information (see 1812.2 and 1812.5.1.7) establishes the geotechnical similarity of the soils at each location.  The variations described in 1812.5.2.4 shall not be permitted in conjunction with this provision.

**1812.5.3    Pile Group Capacity**

**1812.5.3.1.**    The supporting value of piles depending primarily on  friction when driven in clusters or groups may be investigated on the basis of group perimeter shear by the expression:

$Q_a$   =   $(PLc / FS_F) + l \, 2.6q_r (1 + 0.2 \, w/b) ) / FS_b$, in which:

$Q_a$   =   Allowable load-carrying capacity of pile group, lb

$P$    =   Perimeter distance of pile group, ft.

$L$    =   Length of pile, ft

$c$    =   Average (weighted) cohesion or shear strength of material between the surface and the depth of the pile tip, psf.

$q_r$   =   Average unconfined compressive

strength of material in the zone below pile tips, psf; the thickness of the zone shall consider the pile group size and shape, as well as the soil stratigraphy and soil properties.

$w$    ≈   Width of base of pile group , ft.

$b$    ≈   Length of base of pile group, ft.

$A$    ≈   Base area of pile group, sq. ft.

$FS_F$  =   Factor of safety for the group friction area = 2

$FS_b$  =   Factor of safety for the group base area = 3

**1812.5.3.2**    The soil properties ( $c$ and $q_r$ ) used in the above formula shall be based on data obtained from the geotechnical investigation as described in 1812.2 and 1812.5.1.7.  In the application of this formula, the weight of the piles, pile caps and mats, considering the effect of buoyancy, shall be included.

**1812.5.4    Pile Splices**

**1812.5.4.1**    Splices shall be such  that the resultant vertical and lateral loads at the splice location are adequately transmitted.  Splices shall be so constructed as to provide and maintain the joint integrity and position of the component parts of the pile during installation and in service.

**1812.5.4.2**    Technical data shall be submitted to the Director to substantiate the suitability of the splice(s) for the proposed application.

**1812.5.4.3**    The Director shall  maintain a file of permitted splices so that repetitive submissions of technical data will not be necessary, unless factors involving a particular application so warrant.

**1812.6        WOOD-CONCRETE COMPOSITE PILES**

**1812.6.1        DEFINITION.**

LWFR-EXP 5-000284

A wood-concrete composite pile is defined as a pile having an untreated timber pile lower section and a steel cased cast-in-place concrete upper section. The butt of the untreated lower section shall be located in accordance with the requirements of 1812.5.1.5. The two sections shall be jointed by a mechanical connector approved by the Director.

**1812.6.2   MATERIALS.**

The timber section shall conform to the requirements of this Code; the concrete portion of the steel-cased cast-in-place concrete upper section also shall conform to the requirements of this Code. The steel casing shall be a minimum of 11-in. I.D. and sufficiently water tight to exclude water and foreign matter intrusion during concrete placement.   The connector shall be manufactured or fabricated of structural grade steel and shall consist, in general, of a drive-shoe of 12 ga or thicker material that is firmly attached to the steel casing. The drive-shoe shall be capable of penetrating a minimum of 4 in. into the timber section.

**1812.6.3   ALLOWABLE STRESSES.**

The allowable unit stresses in the timber section shall conform to the requirements of the Code. The allowable unit stresses in the concrete of the steel-cased cast-in place concrete upper section also shall conform to the requirements of this Code. The concrete in the steel-cased case-in-place concrete upper section shall have a minimum design compressive strength ($f'_c$) at 28 days 2500 psi as measured on concrete cylinders made, stored, and tested in general accordance with ASTM procedures.   The wood-concrete composite pile shall not be designed for single pile capacity in excess of 25 tons in compression nor shall it be designed for tension (uplift) loads.

**1812.6.4   SPLICES.**

Except as provided for in this Section, the pile splice connector shall conform to the requirements of 1812.5.4. The splice shall withstand a minimum moment capacity

of 4 ft-kips, with no applied axial load. The splice shall withstand a minimum tensile force of 10 tons.

**1812.6.5          CONSTRUCTION CONSIDERATIONS.**  After installation to final depth and immediately before filling with concrete, it should be verified and documented that the inside of the steel casing is clean from top to bottom and that it is not collapsed or otherwise damaged. Any accumulated water or other foreign matter in a casing shall be removed before placing the concrete. Concrete should not be placed until all piles within a radius of 40 ft. have been driven, or the driving within a 40-ft. Radius shall be discontinued until the concrete has been placed and adequate strength has developed. The concrete placed in the casing does not need to be vibrated, but care shall be taken in placing concrete to prevent the formulation of voids. High-slump concrete that is properly designed and proportioned may be used.

**1812.7   HIGH-CAPACITY PILES**

**1812.7.1   GENERAL.**

This article addresses prestressed concrete and steel piles that have allowable load capacities greater than 40 tons.   These special provisions apply only to the transfer of stress into the pile caps. At the option of the Louisiana Registered Civil Engineer responsible for the foundation design, the use of high-capacity piles may be used, in which event, all applicable provisions of this article shall apply.

**1812.7.2   PRECAST CONCRETE PILING.**

The load from the pile shall be transferred to the concrete foundation over the area of the pile butt provided that:

1.   An allowable working stress of 0.80 $f'_c$ in the concrete foundation is not exceeded.

2.  The distance from the centerline of the pile to the edge of the concrete foundation is at least 1.5 times the pile width or diameter, but not less than 2ft 6 inches.

3.  The minimum $f'_c$ of the concrete foundation is 3000

LWFR-EXP 5-000285

psi.

4.   The minimum embedment of the pile into the concrete foundation is 6 inches.

5.   Two-way continuous reinforcement is placed a minimum of 2 in. above the pile butt and its area per lineal foot in each direction shall be at least equal to the design pile load in kips divided by 3 times the yield stress of the reinforcement in kips per square inch.

**1812.7.3   Steel Piling.** In the case of steel piling, the load of the pile shall be transferred to the concrete foundation in either of two ways.

1.   By bearing through a steel cap plate of a least the same dimension as the pile secured to and properly bearing on the pile butt and into the concrete mat foundation provided that:

   1.1   An allowable working stress of $0.80f_c$ in the concrete foundation is not exceeded.

   1.2   The distance from the centerline of pile to the edge of the concrete foundation is at least 1.5 times the pile width or diameter, but not less than 2 ft. 6 inches.

   1.3   The minimum $f_c$ of the concrete foundation is 3000 psi.

   1.4   The minimum embedment of the pile into the concrete foundation is 6 inches.

   1.5   Two-way continuous reinforcement is placed a minimum of 2 in. above the pile butt and its area per lineal foot in each direction shall be at least equal to the design pile load in kips divided by 3 times the yield stress of the reinforcement in kips per square inch.

2.   By direct transfer from the pile into the concrete foundation provided that:

   2.1   An allowable working stress of 12,000 psi in the concrete foundation is not exceeded.

   2.2   The minimum concrete foundation thickness is 3 feet.

   2.3   The distance from the centerline of pile to the edge of the concrete foundation is at least 1.5 times

the pile width or diameter, but not less than 2 ft. 6 inches.

   2.4   The minimum $f_c$ of the concrete foundation is 3000 psi.

   2.5   The minimum embedment of the pile into the concrete foundation is 6 inches.

   2.6   The maximum thickness of the pile material is 5/8 inches.

   2.7   Two-way continuous reinforcement is placed a minimum of 2 in. above the pile butt and its area per lineal foot in each direction shall be at least equal to the design pile load in kips divided by 3 times the yield stress of the reinforcement in kips per square inch.

**1812.8   ALTERNATIVES**

**1812.8.1**   For either concrete or steel piling, any other approach following a rational analysis using accepted rules and theories of engineering mechanics and strength of materials, as well as recognized allowable stresses of materials as referenced in this Code shall be submitted to the Director for evaluation and approval.

**1812.9   SPECIAL   PILES   AND   SPECIAL CONDITIONS**

**1812.9.1**   Pile types not specifically mentioned in Section 1812, including piles used to underpin and relevel existing structures, and piles under conditions not specifically covered in Section 1812, shall be permitted. The use of such piles is subject to the approval of the Director, upon submission of acceptable test data, calculations, and other information relative to the properties and load-carrying capacity of such piles. Test data shall consist of a at least five (5) consecutive field tests which shall include, but shall not be limited to, the driving, loading, extraction, and examination of the piles. The calculations shall follow rational engineering analysis and they shall be performed by a Louisiana Registered Civil Engineer.

## 1812.10   COMBINATION PILES

**1812.10.1**   Individual segments of a combination pile shall comply with the requirements for piles of that type of section. Splices shall be in accordance with the requirements of 1812.5.4

## 1812.11   LIGHTLY LOADED PILES

**1812.11.1   General Requirements.**   For purposes of this document, a lightly loaded pile shall conform to the provisions of 1812.11.2. Lightly loaded piles shall comply with all applicable requirements of this Section except as provided in this article. Piles shall be properly held in place or adequately tied together at their butt end. Pile butts shall be protected by a minimum of 3 in. of concrete around their perimeter. All piles for a building or structure shall extend to the same tip penetration and bear in the same stratum unless adequate provisions for differential settlement within the building or structure have been made. The Director shall be notified by the party installing the piles at least 24 hr. in advance of any pile driving.

## 1812.11.2   SIZE REQUIREMENTS.

Except as provided in this article, timber piles depending predominantly on skin friction for their load-carrying capacity shall have a minimum tip diameter of 6 in. and a minimum butt diameter of 8 inches. Timber piles depending predominantly on tip bearing (end bearing) for their load-carrying capacity shall have a minimum tip diameter of 6 in. with a natural taper to the butt. Piles for accessory buildings 1000 sq. ft. or less in area shall be treated timber piles having a minimum 4- 3/4 in. tip diameter with a natural taper to the butt. Segmental jack-down piles of either concrete or steel that are mechanically connected, epoxied, or welded together, shall have a minimum outside dimension of 6 inches. Helical steel piles also may be acceptable to the Director. Cast-in-place concrete piles that have a minimum diameter of 6 in. and a maximum length of 10 ft. the last 2 ft. of which must penetrate into a

supporting sand stratum, are also acceptable if verified by a geotechnical investigation performed in accordance with this Code.

## 1812.11.3   DESIGN REQUIREMENTS.

Except as provided in this article, the maximum allowable load capacity for a single pile shall not exceed 8 tons; an allowable load capacity of up to 12 tons may be permitted if substantiated by a geotechnical investigation and a pile load test. Piles for one- and two-family dwellings and their accessory buildings that comply with the size requirement of 1812.11.2 shall be exempt from the load test and may be designed as per 1812.12.2.3. The minimum pile spacing shall be 24 in. on center. The maximum load capacity limitations stated here refer to stresses in the pile material and not to the allowable load bearing value of the soil which may be more or less. The requirements of 1812.5.2.5 are applicable for lightly loaded piles except that the load per pile shall not exceed 90 psf of embedded pile area, the actual penetration into the supporting soil shall not be less than 30 ft. and a geotechnical investigation or a pile load test may not be required.

## 1812.11.4   DRIVING AND LENGTH

**REQUIREMENTS.**   Except as noted in 1812.11.2, and unless driven to refusal, the minimum pile length shall be 30 feet. When refusal occurs between 7 and 30 ft. below the natural ground surface, the load bearing capacity of the pile shall not exceed the values shown in Table 1812.11.4, unless substantiated by a geotechnical investigation or a pile load test.

**Table 1812.11.4**
**Maximum Allowable Single Pile Load Capacity**
**When Refusal Occurs**
**City of New Orleans, Louisiana**

| Pile Tip Embedment, ft. tons | Maximum Allowable Single Pile Capacity (Compression), |
|---|---|
| 7 to 10 | 1 |

LWFR-EXP 5-000287

| 11 to 20 | 2 |
|----------|---|
| 21 to 30 | 4 |

---

#### 1812.11.5   MATERIAL REQUIREMENTS.

Lightly loaded timber piles shall conform to ASTM D25 except for size. Preservative and minimum final retention shall be in accordance with AWPA Standard C3. A certificate of treatment shall be furnished by the supplier.

#### 1812.11.6   WIND PRESSURE AND COMPUTED LOADS.

Please refer to Section 16 in the IBC for guidance.

#### 1812.12 LIGHTLY LOADED PILES - RESIDENTIAL

#### 1812.12.1   SCOPE.

This portion of the Code covers pile foundation design for one-and two-family dwellings. Accessory buildings, not having their roofs or foundations connected to the main building, need not comply with the following requirements provided the gross floor area does not exceed 500 sq. feet. Because most of the areas within the City of New Orleans have either soils with low bearing values, exhibit initial and continuing subsidence, or require fill to reach grade, all foundations for residential structures will be supported by pile foundations except as provided for in 1812.12.2.4 or 1812.12.2.6 and except in areas GM 19 and GM 20 (see map). A map that shows the locations of GM 19 and GM 20 is available for purchase from the Director. When uncertainties exist, a geotechnical investigation should be conducted.

#### 1812.12.2   PILE FOUNDATIONS

1812.12.2.1   All pile foundations shall be designed by a Louisiana Registered Civil Engineer. Residential piles shall comply with all applicable requirements of 1812.12. Piles shall be properly held in place or adequately tied together at their butt end. Pile butts

shall be protected by a minimum of 3 in. of concrete around their perimeter. All piles for a building or structure shall extend to the same depth and bear in the same stratum unless adequate provisions for differential settlement within the building or structure have been made. During construction, the contractor shall be responsible for vibration monitoring and control as needed for the protection of adjacent property. A notarized affidavit from the piling contractor is required to be submitted to the Department of Safety and Permits by the owner or general contractor. The affidavit shall substantiate the number, size, type, treatment, and embedment of the piles. The affidavit also shall contain a certification that the piles comply with this Code and the permit drawings.

1812.12.2.2   Piles shall be treated modified ANSI Class 5 timber piles. Modified Class 5 timber piles shall have a minimum tip diameter of 6 inches and a minimum butt diameter of 8 inches. For piles less than 30 ft. long, the tip diameter shall be at least 6 inches with a natural taper to the butt. Composite Class 5 piles including steel or concrete sections with a minimum 6 inches diameter are permitted with the use of an approved connector. Treated ANSI Class 9 timber piles shall have a minimum tip diameter of 4 3/4 inches with a natural taper to the butt. ANSI Class 9 piles may only be used for accessory structures of 1000 square feet or less in area.

1812.12.2.3   Maximum allowable pile load capacities have been established for various types and embedments of piles. These values are tabulated for each area and are shown below in Table 1812.12.2.3. Also, each area is delineated on maps on file with the Department of Safety and Permits. These maps also can be purchased from the Department.

Table 1812.12.2.3 (See Page 53)

1812.12.2.4   Requirements of the Code regarding

LWFR-EXP 5-000288

the need for a pile foundation or the maximum design load capacity for the particular type of pile may be superseded by a geotechnical investigation that is performed on the site in accordance with 1812.2 or a pile load test which is performed in accordance with 1812.5.2. The Director may waive the distance requirement provided a written request, which demonstrates just cause for the waiver, is presented by a Louisiana Registered Civil Engineer or Louisiana Registered Architect.

**1812.12.2.5** The minimum center-to-center pile spacing shall be the greater of 24 in. or 0.05 L where 'L' is the pile length in feet.

**1812.12.2.6 Exemption:** New one- and two-family dwellings up to two stories and not more than 2000 sq. ft. in area in established neighborhoods (80% developed) shall be exempt from the pile requirements of Article 1812.12.1 provided that a Louisiana Registered Civil Engineer or Louisiana Registered Architect states in writing, that he is familiar with the soil conditions in that particular area and that the foundation design submitted is adequate for that structure in that location."

**SECTION 13.** That Chapter 27 of the IBC, 2000 Edition, be deleted in its entirety, and substitute the following:

## "CHAPTER 27
## ELECTRICAL
**2701 - GENERAL**

**2701.1 - Scope -** This chapter governs the electrical components, equipment and systems used in buildings and structures covered by this code. Electrical components, equipment and systems shall be designed and constructed in accordance with the provisions of the National Electrical Code, (NFPA-70). Where there is conflict between a requirement of Chapter 27

and a requirement of the National Electrical Code, the requirement of Chapter 27 shall govern.

For low voltage installations refer to **Section 2735 (E) - BASIC STANDARDS** of this Chapter.

**2702 - EMERGENCY AND STANDBY POWER SYSTEMS**

**2702.1 - Installation.** Emergency and standby power systems shall be installed in accordance with the National Electric Code, (NFPA-70), National Emergency and Standby Power Systems, (NFPA-110) and National Stored Electrical Energy Emergency and Standby Power Systems, (NFPA-111).

**2703 - CERTIFIED ELECTRICAL CONTRACTOR OR ELECTRICIAN**

A person holding an electrical license issued by the Electrical Inspection Division of the Department of Safety and Permits.

**2704 - ELECTRICAL CONTRACTORS LICENSE REQUIREMENT**

No person shall undertake any work as a Class "A" Electrical Contractor, Class "B" Fabrication Contractor, Class "C" Maintenance Electrician, Class "D" Journeyman Electrician, Class "E" Electrician Trainee, or Class "E" Student Trainee unless that person is registered with the Electrical Inspection Division of the Department of Safety and Permits and received a license in the respective classification. A person performing electrical work without the proper license shall be held in violation of this code.

**2705 - CLASSIFICATION OF ELECTRICIANS Class "A" Electrical Contractor -** A Class "A" electrical license holder engaging in the business of installing or contracting to install or repairing or contracting to repair electrical conductors, motors, generators, fixtures, signs, or any electrical apparatus,

LWFR-EXP 5-000289

equipment or material for all systems operating at a potential of forty-nine (49) volts or more.

**Class "B" Fabrication Contractor** - A Class "B" electrical license holder engaging in the business or contracting for the fabrication, assembly, and repair of electrical apparatus, equipment or material.

**Class "C" Maintenance Electrician** - A Class "C" electrical license holder who is employed as a Maintenance Electrician by a person, firm or corporation owning or operating any place of business. Said license is valid only while the Maintenance Electrician remains in the employment of a person, firm or corporation. A Maintenance Electrician may only perform work on existing electrical installations in the building or place of business in which he is employed.
No new electrical apparatus, equipment or material shall be installed under this classification.

**Class "D" Journeyman Electrician** - A Class "D" electrical license holder engaged in the trade of installing or repairing electrical materials or apparatus, equipment or material.  A Journeyman electrician must be employed by and work under the supervision of a Class "A" Electrical Contractor.
If deemed necessary by the Director, the Class "D" Journeyman Electrician shall provide an employment record showing proof of employment with the designated Class "A" Electrical Contractor.

**Class "E" Electrician Trainee** - A Class "E" electrical license holder engaged in the trade of installing or  repairing electrical apparatus equipment or materials. A Class "E" electrician trainee must work under the direct supervision of a Class "A" Electrical Contractor or a Class "D" Journeyman Electrician.
If deemed necessary by the Director, the Class "E" Electrician Trainee shall provide an employment record showing proof of employment with the

designated Class "A" Electrical Contractor.

**Class "E" Electrician "student trainee"** - A "STUDENT TRAINEE" may be designated under the provisions of the Class "E" Electrician Trainee classification if: 1) the individual is a "bona fide" student of a recognized Louisiana Department of Education Secondary or Post Secondary School, 2) the duration of the license is no longer than the period of May through Sept. of the issuing year.  The issued license shall be in accord with the U.S. Department of Labor Child Labor Law.
The designation "STUDENT TRAINEE" shall be noted in bold letters on the face of the license when issued.

**2705.1 - Supervision and Responsibility for Work**
A licensed electrician of the proper classification shall be present at all times and in direct supervision in the actual work of installing, maintaining, altering or repairing electrical conductors, material or equipment for which a permit is required by this Code.
A Class "A" Electrical Contractor shall be liable and responsible for layout and technical supervision of any work which  requires the securing of permits, and a Class "A" Electrical Contractor or a Class "D" Journeyman Electrician shall be in direct "on the job" supervision of work carried out as specified within this Code.  If such supervision and control is not being maintained, the Director shall take the necessary action for such violation or shall order the work to be discontinued.  The person, firm or corporation to whom the permit has been issued shall discontinue further work until the Director is assured that proper supervision and control has been employed or supplied.
Nothing herein shall be construed as prohibiting the employment of a Class "E" Electrician Trainee to assist the duly licensed and qualified Class "A" Electrical Contractor or Class "D" Journeyman Electrician under the provisions of this Chapter.  The

LWFR-EXP 5-000290

numeric ratio of Class "E" Electrician Trainees to Class "A" Electrical Contractors or Class "D" Journeyman Electricians should be consistent with proper supervision, training, and safety.  In no instance shall such ratio provide for more than three (3) Class "E" Electrician Trainees for every Class "A" Electrical Contractor or Class "D" Journeyman Electrician employed at the same jobsite.

Class "E" Electrician "Student Trainees" shall be under the same supervision, training and safety requirements and constraints as the Class "E" Electrician Trainee.

## 2706 - LICENSE APPLICATIONS

**2706.1 General** - Applicants for a Class "A" Electrical Contractor, Class "B" Fabrication Contractor, Class "C" Maintenance Electrician, Class "D" Journeyman Electrician, Class "E" Electrician Trainee and Class "E" Student Trainee license shall submit the application for certification, properly completed on forms furnished by the Electrical Inspection Division.  All applications and renewals shall be made to the Director.

All license applicants shall meet the following requirements.

Each applicant shall pass the required electrical examination prior to the issuance of any new license issuance [except Class "E" Electrician Trainee and the Student Trainee].

Each applicant  shall furnish to the Electrical Inspection Division two passport type photos , 1 inch by 1 ½ inches in size.

Each  license shall identify the name of the person to whom the license is issued and the expiration date.

Each applicant must be at least eighteen (18) years of age and possess either a high school diploma or GED [except for the Class "E" Electrician Trainee and the Student Trainee].   **Absent either of the above two documents, the applicant must provide documented evidence of education or training to the  satisfaction and acceptance of the Director**

**before any license is issued.**

Each applicant for a Class "A" or Class "B" license shall have had at least 5 year's experience in the occupation or business governed by the license for which he is applying; or be a graduate of a trade school or technical college of recognized standing and in addition  have had four (4) years of practical experience in that class of occupation or business governed by the license for which he is applying.

Each applicant for a Class "A" or Class "B" license must have and maintain an established place of business and have someone in attendance in order to receive communications from the Electrical Inspection Division of the Department of Safety and Permits, or other persons concerned, during regular business hours.

A Class "A" Electrical or Class "B" Fabrication license holder shall represent only one firm, corporation or business at any one time.

A license holder must have his license in his immediate possession at all times when performing work for which he is certified and shall display it upon demand of an agent of the Department of Safety and Permits..

**2706.1.1** - Each Applicant for a Class "C" Maintenance Electrician license must have had at least five (5) years experience working under the supervision of a Class "A" Electrical Contractor in that particular line or class of occupation in which he desires to engage.

**2706.1.2** - Each applicant for a Class "D" Journeyman Electrician license must have at least five (5) years continuous experience working at the electrical trade as an electrician trainee or have a minimum of four (4) years of schooling in the electrical trade at a recognized state trade school or a state approved apprenticeship training program and must have a passing grade in the above  programs, plus four (4) years experience working as an

LWFR-EXP 5-000291

electrician trainee.

2706.1.3 - Each applicant for a Class "E" Electrician Trainee license must have a letter of recommendation from a certified Class "A" Electrical Contractor recommending the applicant for licensing. An individual may not hold a Class "E" Electrician Trainee license for more than five (5) years from the initial issue date.   Note: Any exception to this time limit for a longer or extended period must be in writing to and with the written approval of the Director.

2706.1.4 - Each applicant for a "Student Trainee" license must have a letter of recommendation from a Class "A" Electrical Contractor. A "Student Trainee" license shall be valid only for the period of May 1 through September 30 of any issuing year. A "Student Trainee" license shall not be issued to an individual more than three times.

2706.2 Duration of License - All Class "A", "B","C", "D" & "E" licenses issued under this Code expire on the applicant's date of birth.
For the initial license, the expiration date shall be on the date of birth in the year following the date of issuance.
Licenses that have been expired for a period of up to one (1) year shall be renewed only after payment of the license registration fee and required delinquent fees.

   Licenses that have been expired for a period of more than one (1) year shall require an application as a new candidate.

2706.3 License Issuance - When a candidate passes the examination, the original examination results and the completed application for the appropriate license must be submitted to the Electrical Inspection Division to qualify for license issuance. The appropriate license must be obtained by the qualified applicant within two (2) months of the examination

date.  The issued license must be signed by the Director or his designee.

2706.4 - Revoked License - Licenses issued under this code may be revoked for any reason or finding defined in Article 2706.5.   Upon such finding the Director  may order such revocation. However, the Director  may find that the public interest is adequately protected by a warning or a suspension for a definite period of time not to exceed two years. No license shall be suspended or revoked except by the Director.  Upon revocation, the Director shall not accept an application for a new license or a renewal within two (2) years from the date of such revocation, [except for medical recovery supported by a physician's opinion, after Directors  review and approval].

2706.4.1 - Code Violation Hearing - If needed,  the Chief Electrical Inspector shall initiate a hearing, in conjunction with the Chief Building Official and the Director, to review a code violation he has determined to exist, that would effect any electrical license issued by the Electrical Inspection Division to be suspended or revoked.

2706.5 - Revocation and Suspension Reasons
1.  Violating, on more than one occasion, either willfully or maliciously, or by reason of incompetence, any provision of this code.
2.  Conviction of any offense involving the defrauding of  any person for whom a service has been rendered or contracted to be rendered under this chapter.
3.  Fraud or misrepresentation in obtaining a license or permit.
4.. Conviction of drunkenness or the use of narcotics.
5.  Adjudication of insanity.
6.  Securing a permit for electrical work not actually performed by the Class "A" Electrical Contractor or by certified (licensed) individuals under his control,

LWFR-EXP 5-000292

supervision, direction and responsibility.

7. Securing a permit under any pretext for an installation concerning which the applicant has no valid contract.

8. Performing any electrical work as defined herein for which no electrical permit has been obtained.

9. Refusing to finish the electrical work for which a permit was taken and for which full payment has been accepted.

10. Performing any electrical work as defined herein for which an electrical permit has been obtained and which work is being performed by improperly certified (licensed) individuals under his control, supervision, direction and responsibility.

11. False, misleading or deceptive advertising.

12. Any medical reason wherein a physician's medical opinion is provided to the Director indicating that the person certified is unable to satisfactorily perform the duties and functions expected of a Class "A" , Class "B", Class "C", Class "D", or Class "E" Electrical license holder, and that any further performance in the electrical field would be a danger to himself and endanger the life and property of others.

**2706.6 - Notice of revocation or suspension hearing.** A notice shall be served upon the holder of the license stating the time and place of the hearing to be held by the Director which shall be not less than ten (10) calendar days from the date such notice is given. The notice shall be sent by the Director and shall enumerate the cause or causes for suspending or revoking the license. The notice may be mailed by registered or certified mail to the holder of the license at the address of his place of business as given by him on his application for the license, or it may be served on him in person by a Police Officer or employee of the Department of Safety and Permits.

All petitions shall be prepared and prosecuted by the Law Department. If proper notice has been served upon the defendant, the hearing may proceed without his presence if he fails to appear. Certified copies of

convictions involving causes for suspension or revocation in either the Municipal Court of New Orleans or in the Criminal District Court of Orleans Parish shall constitute "prima facie" proof of a violation by the license holder.

**2706.7 Appeal Procedure**: An appeal from the decision of the Director may be taken to the Board of Building Standards and Appeals, within ten (10) days of written notification to the appellant.

**2707 - INSURANCE**

Before a Class "A" Electrical Contractor or a Class "B" Fabrication Contractor license is issued or renewed, each certified Class "A" Electrical Contractor or Class "B" Fabrication Contractor must provide evidence of the following to the Director when he registers with the Electrical Inspection Division.

**2707.1 - MINIMUM INSURANCE REQUIREMENTS:**

(A) Workers' Compensation Insurance in accordance with Louisiana state law.

(B) Comprehensive general liability insurance coverage with limits of not less than $500,000 per occurrence for bodily injury and $250,000 per occurrence for property damage, with coverage extended as follows:

    (i) Operations-premises liability:

    (ii) Independent contractor's liability-broad form:

    (iii) Contractual liability - broad form:

    (iv) Completed operations and products liability.

The required insurance shall be issued by a company duly registered and authorized to write such insurance in the State of Louisiana. Compliance with this section shall be considered as having been met when a copy of the policy, or a license of insurance has been filed with and approved by the Department of Safety

New Orleans Amendments to the International Bldg. Code, 2000 Ed.

Page 44

LWFR-EXP 5-000293

and Permits.

The policy shall include an endorsement that the Department of Safety and Permits will be notified at least 10 days in advance in the event the policy or policies are canceled or permitted to lapse by not renewing before the expiration date of the license.

## 2708 - FEDERAL IDENTIFICATION NUMBER AND OCCUPATIONAL LICENSE

Before a Class "A" Electrical Contractor or a Class "B" Fabrication Contractor license is issued or renewed, each certified Class "A" Electrical Contractor or Class "B" Fabrication Contractor must provide his Federal Identification Number and his Parish Occupational license number to the Director when he registers with the Electrical Inspection Division.

## 2709 - APPLICATIONS FOR EXAMINATION AND LICENSES

All examination applications shall be made directly to the nationally recognized testing company under contract with the City of New Orleans prior to the deadline dates published in accordance with their information brochure.

## 2710 - EXAMINATIONS

(A) The written examination for a Class "A" Electrical Contractor and a Class "B" Fabrication Contractor shall include the following:
(a) National Electric Code, (NFPA-70) questions,
(b) Practical wiring questions,
(c) Practical questions on electrical equipment,
(d) Knowledge of practical business procedure,
(e) Material takeoff.
(B) The written examination for a Class "C" Maintenance Electrician and a Class "D" Journeyman Electrician shall include the following:
(a) National Electric Code, (NFPA-70) questions,
(b) Practical wiring questions,
(c) Practical questions on electrical equipment.
The minimum passing grade for Class "A", "B", "C"

& "D" examinations is 70 percent.

## 2711 - RE-EXAMINATIONS

If an applicant fails to make a passing grade on the required examination, he is permitted to apply to be re-examined at the next regularly scheduled examination date. There is no limit to the number of examinations a candidate is allowed to take.

## 2712 - LICENSE FEES

(A) To obtain an initial license, or renew a license, an applicant shall pay the applicable license fee as follows:

| Type | License |
|---|---|
| Class "A" Electrical Contractor ................. | $75.00 |
| Class "A" Electrical Contractor (INACTIVE)... | $25.00 |
| Class "B" Fabrication Contractor ............... | $75.00 |
| Class "C" Maintenance Electrician ............. | $25.00 |
| Class "D" Journeyman Electrician................ | $25.00 |
| Class "E" Electrician Trainee ...................... | $25.00 |
| Class "E" Electrician "Student Trainee"..... | $25.00 |

(B) License fees shall be made payable to "The City of New Orleans". Payment shall be made prior to license issuance.
(C) Examination fees are established by and paid directly to the nationally recognized testing company under contract with the City of New Orleans. No examination fees are to be directed to the Electrical Inspection Division or made payable to the "City of New Orleans."

## 2712.1 - ACCEPTANCE OF OTHER JURISDICTIONAL CERTIFICATION

The Electrical Inspection Division of the Department

LWFR-EXP 5-000294

of Safety and Permits will extend to an electrical contractor or journeyman electrician, that is licensed by another jurisdictional authority, the recognition and acceptance of his certification from the other jurisdictional authority in lieu of the requirement of an additional examination by the nationally recognized testing agency under contract with the City of New Orleans.   Approval of the applicants submitted material is required by the Director and is based on the following conditions:

(a) The jurisdictional authority should be a "bona fide" municipality within the United States with a recognized jurisdictional inspection agency for that municipality.

(b) The applicant must submit a letter of recommendation from the Authority of that jurisdiction to the Director of the City of New Orleans.  The letter should indicate the license requirements of his jurisdiction that would justify this recognition as being comparable, with  the City of New Orleans requirements, and. indicate  the applicants license status is current, his record as a licensed individual has been acceptable and he has been licensed by that jurisdiction for a minimum of five (5) years.

If approved by the Director, the applicant shall present a copy of his license  for the City of New Orleans files and complete the necessary applications set forth by the Electrical Inspection Division of the City of New Orleans.  The applicant shall pay the appropriate fee for the classification of license for which he is applying.

This extended offer for recognition applies only to jurisdictions duly authorized to perform inspections for the safety and welfare of the general public.

**2713 - PAYMENT OF FEES: DATES FOR RENEWAL OF ACTIVE LICENSES**
The initial license registration fee shall be paid to the Electrical Inspection Division at the time the application for the license  is presented.

The renewal license registration fee is due and payable to the Electrical Inspection Division on or before the first regular day of business after the applicants date of birth.  No renewal license shall be issued unless all work specified on permit(s) filed more than three (3) months prior to the applicant's date of birth has been completed, or a written reason, sufficient to the Director, has been submitted and approved, indicating why the job installation(s) remains incomplete.

A license issued at any time during any calendar year shall expire, unless sooner revoked, on the applicant's date of birth.  Application and renewal fees for the license renewal for the subsequent year shall be submitted to the Electrical Inspection Division prior to the first regular day of business after the applicant's date of birth.

Should a Class "A" Electrical Contractor or a Class "B" Fabrication Contractor fail to renew his license prior to the first regular day of business after his date of birth, or fail to complete the work specified on his permit(s) issued more than three (3) months prior to his date of birth without explanation, a delinquent fee of ten ($10.00) per month shall be added to the renewal fee beginning  on the first regular day of business after his date of birth and extending through his date of birth in the following year.

No permit application shall be processed, nor shall any permit be issued to any applicant who has not been issued a current active license for the year of the permit application.

Failure to renew a Class "A" Electrical Contractor or a Class "B" Fabrication Contractor license that has been expired for more than a one (1) year period shall require examination as a new applicant.

Should a Class "C" Maintenance Electrician license holder fail to renew his license prior to the first regular day of business after his date of birth a delinquent fee of five  ($5.00) per month shall be added to the renewal fee beginning on the first regular day of business after his date of birth and extending

LWFR-EXP 5-000295

through his date of birth in the following year.

Should a Class "D" Journeyman Electrician license holder fail to renew his license prior to the first regular day of business after his date of birth a delinquent fee of five ($5.00) per month shall be added to the renewal fee beginning on the first regular day of business after his date of birth and extending through his date of birth in the following year.

Failure to renew the Class "C", or Class "D" license that has been expired for more than a one (1) year period shall require examination as a new applicant.

Should a Class "E" Electrician Trainee fail to renew his license prior to the first regular day of business after his date of birth a delinquent fee of two ($2.00) per month shall be added to the renewal fee beginning on the first regular day of business after his date of birth and extending through his date of birth in the following year.

The Class "E" five (5) year license time limit for the applicant remains unchanged from his initial issued date, regardless of failure to renew his license in a timely manner.

The Class "E" "Student Trainee" three (3) issue limit remains unchanged from his initial issuance date. Any subsequent issue of this license shall not be considered as a renewal or a continuation of any previous issue,

## 2714 - INACTIVE LICENSE

A Class "A" Electrical Contractor may, by written request to and approval of the Director, change his license to an inactive status. The Class "A" Electrical Contractor that has changed his license to inactive, must maintain his inactive license in a current status by paying the annual renewal fee as required in this Code. The inactive status license must be renewed each year and the Director must be notified in writing that the contractor desires to remain in the inactive status for the ensuing year. There shall be no limit to the number of years the Class "A" Electrical

Contractor may continue to carry his license in this inactive status No license renewal shall be made for any Class "A" Electrical Contractor that has allowed his inactive license to lapse and remain lapsed for a period of more than one (1) year, until he has passed an examination as a new applicant.

The inactive Class "A" license shall expire on his date of birth in the following year. The Class "A" Electrical Contractor may revert his license back to an active status by a written request to and approval by the Director. Reverting the license back to the active status requires the payment of the full active fee as required in this Code.

No Class "A" Electrical Contractor shall engage in business as an electrical contractor while his license is in an inactive status. An inactive license holder can, however engage in electrical work under the supervision of an active Class "A" license holder. Only one change to an inactive status is allowed during any twelve (12) month period.

## 2715 - PROHIBITION AGAINST LICENSE TRANSFER

No Class "A" or Class "B" Electrical license holder shall assign or in any way convey his license to anyone by power of attorney or any other process or become involved in any type of agreement, assignment or use whereby he will not have supervision, direction, control or responsibility for the electrical work for which he has obtained an electrical permit from the Electrical Inspection Division of the Department of Safety and Permits.

No Class "C", Class "D" or Class "E" Electrical license holder shall assign or in any way convey his license to anyone by power of attorney or any other process or become involved in any type of agreement, assignment or use whereby he will not have control of his own issued license.

## 2716 - LIMITATIONS OF LICENSE

A Class "A" Electrical license holder or Class "B"

LWFR-EXP 5-000296

Fabrication license holder shall be limited to operations described in this Code. The use of his license shall not be applicable to more than one electrical contracting firm, company or corporation at one time. The license holder shall be allowed to file electrical permits only for the firm of which he is employed and registered in accordance with this Code.

A Class "C" Maintenance Electrician shall not engage in the business of installing or repairing electrical wiring and apparatus outside the plant or premises of the person, firm or corporation by whom he is employed.

A Class "D" Journeyman Electrician shall be limited to operations described in this Code. A Class "E" Electrician Trainee and "Student Trainee" shall be limited to operations described in this Code.

## 2717 - ELECTRICIAN'S AND OWNER'S RESPONSIBILITIES

**(A)** The Class "A" Electrical Contractor license holder shall keep on file with the Director, a letter designating which person, partnership, firm or corporation he represents. He shall notify the Director within ten (10) days of any status change. The Class "A" Electrical Contractor license holder shall represent only one person, partnership, firm or corporation.

**(B)** Every Class "A" license holder certified in accordance with these regulations, shall be responsible for any defects of construction installed by him until such time as a License of Approval has been issued by the Director. Also, any and all defects (discrepancies) that may have been concealed by such Class "A" Electrical Contractor and discovered after a License of Approval has been issued shall be the responsibility of and corrected by said Class "A" Electrical Contractor.

At the discretion of the Director, inspections may be withheld until all outstanding discrepancies on the same installation, that are in violation of the Code, have been corrected by the Class "A" Electrical Contractor.

**(C)** A Class "C" Maintenance Electrician or a Class "A" Electrical Contractor with a maintenance contract shall be required in any building that requires an operating (stationary) engineer as defined in the amendments to the *International Mechanical Code*, 2000 edition.

The Class "C" Maintenance Electrician or the Class "A" Electrical Contractor with the maintenance contract, shall file a semi-annual inspection report with the Electrical Inspection Division. This inspection report shall be to inspect the current electrical service or apparatus in the building designated within, or contracted as a part of, the maintenance responsibilities.

If electrical discrepancies or new electrical installations are discovered to exist as a result of this inspection, notification of same will be provided to the owner of the building or the "on-site" representative of the person, firm or corporation utilizing the building.

**(D)** All power and control wiring shall be installed by a Class "A" Electrical license holder.
**Exception:** Control wiring for HVAC. appliances and electric water heaters ONLY (120 volts or less) may be installed by a non-electrical contractor.

The installing non-electrical contractor must be a licensed Class "A" Master Gasfitter, Master Plumber or a Class "A" Air Conditioning and Refrigeration Contractor.

The Electrical Inspection Division shall inspect the installation of all jacketed cable-only control wiring systems governed by this exception.

The Electrical Division shall inspect all control wiring systems installed in raceways.

All wiring must be installed in accordance with the National Electric Code, (NFPA-70) and this Code.
**(D) (1).** All wiring for electrical appliances shall be supplied and installed from the main source of electric service through a remote disconnect switch to the electrical appliance by a Class "A" Electrical

LWFR-EXP 5-000297

Contractor.

**Exception**: On the replacement of VAC. appliances and electric water heaters, [ten (10) tons, ten (10) tons including supplemental heat, or ten (10) kw or less] a non-electrical contractor may make ONLY the final electrical connections from the existing remote disconnect switch to the replaced unit, not to exceed eight (8) feet.

If a remote disconnect switch is not present or is not within eight (8) feet of the electrical appliance, a remote disconnect switch must be installed and the distance location must be corrected by a Class "A" Electrical Contractor.

(2). The installing non-electrical contractor must be a licensed Master Plumber, Class "A" Master Gasfitter, or Class "A" Air Conditioning and Refrigeration Contractor.

The non-electrical contractors may troubleshoot or replace factory installed power elements that are a part of the appliance only when these power elements or the unit in which they are contained conform to standard electrical materials.

(E)   A Class "A" Electrical license shall not be required for the following allied contractors who are performing only their trade work on a system or apparatus having electrical work regulated by this code:

1. Plumbing
2. Air Conditioning and Refrigeration,  (HVAC.)
3. Gasfitting
4. Sheet metal
5. Insulating
6. Operating (stationary) Engineers as defined in the amendments to the *International Mechanical Code*, 2000 edition.

(F)   Whenever a Class "A" Electrical Contractor is replaced by another Class "A" Electrical Contractor in order to complete an electrical installation, the succeeding Class "A" Electrical Contractor must provide the following in order to take over the job:

1. A letter from the owner or prime contractor to the Director attesting that the original Class "A" Electrical Contractor will no longer be utilized for the electrical installation at the listed job;

2. File a new permit application for the entire electrical installation;

3. Pay all fees, with the amount of the fees based upon the total required for the new application less the amount already paid by the original Class "A" Electrical Contractor.

Whenever a Class "A" Electrical Contractor replaces another, he then becomes the Class "A" Electrical Contractor of record for the entire electrical installation. All future correspondence from the Electrical Inspection Division regarding that installation will be directed to the new Class "A" Electrical Contractor.  Any deviation from the above due to extenuating circumstances must be coordinated in writing to and with the approval of the Director.

## 2718 - PERMIT REQUIRED

(1) Every Class "A" license holder proposing to install, repair or alter any electrical equipment or wires designated to carry electricity at a potential of forty-nine (49) volts or more for any purpose or service in or on any building or premises, shall file an application for a permit with the Electrical Inspection Division of the Department of Safety and Permits.

Permit applications shall only be accepted from Class "A" or Class "B"license holders with current and active licenses and when properly completed and signed by the license holder.

No work may be commenced until the permit application is approved and the acceptance is acknowledged by the Electrical Inspection Division, except when failure to commence the work would be life threatening or the work is an emergency due to a disaster or any uncontrolled event or occurrence.

The permit fee for any work commenced prior to obtaining the required permit, excepting the emergency or life threatening conditions, shall be the listed permit fee plus a penalty fee of five (5) times

New Orleans Amendments to the International Bldg. Code, 2000 Ed.     **Page 49**

LWFR-EXP 5-000298

the listed fee for such work.

**The determination of the extent of the penalty and the amount of the penalty fee for blatant and continuous violations of this article, by any Contractor, shall be in the discretion of the Director.**

The applications for permits shall be in accordance with application forms provided by the Electrical Inspection Division of the Department of Safety and Permits.

A permit shall be construed to be authorization to proceed with the work and shall NOT be construed as authority to violate, cancel, alter, or set aside any of the provisions of this Code, or any other ordinances adopted by the City of New Orleans, including the Comprehensive Zoning Ordinance nor shall such issuance of a permit prevent the Director from thereafter requiring a correction of errors in plans or in construction, or of violations of this Code.

Every issued permit shall become invalid:
(a) if the work authorized by the permit is not commenced within six (6) months after its issuance, or
(b) if the work authorized by the permit is suspended for more than six (6) months after its issuance, or (c) if the work authorized by the permit is suspended or abandoned for a period of six (6) months after the time the work is commenced. One or more extensions of time, for periods of not more than ninety (90) days each, may be allowed for the permit. The extension must be requested in writing and justifiable cause demonstrated to the Director. When an extension is granted it shall be in writing by him.
(2) If deemed necessary, upon request by the Director, The Class "A" Electrical Contractor proposing to install any electrical apparatus shall provide a written contract or affidavit between him and the owner/general contractor. The contract or affidavit shall indicate the scope of the work to be accomplished at the job location by the Class "A" Electrical Contractor.

**2719 - CONSTRUCTION DOCUMENTS:**
Construction documents involving electrical installations are to be submitted at the time of application for building permits. See **Article 106 - Construction Documents:** of these New Orleans Amendments for details.

**2720 - CERTIFICATES OF APPROVAL**
The Director or his designee shall sign and issue all Certificates of Approval for the installation, repair or alteration of all electrical work. Said certificate shall not be issued until all work has been inspected and found to comply with all the requirements of National Electric Code, (NFPA-70), and this Code. Said certificate shall contain electrical data, name of the owner or owners, and exact location of the building or premises where the installed work was accomplished.

The Director shall keep a record of the equipment inspected in each building giving the description of the equipment, the name of the owner or owners of the building, the inspection date and the amount collected for such inspections and the name of the installer for whom the inspection was made.

**2721 - SPECIAL EVENTS: WIRING**
A Special Event includes but is not limited to fairs, festivals, carnivals, circuses, road shows, trade shows, concerts, displays, expositions and such other functions with a temporary status generally taking place outdoors and indoors at a permanent location or building utilizing the electrical service at that location or building for electric service to support the Special Event. This includes the temporary installation of wiring or electrical equipment of any description to be powered by the use of any self generated power equipment rented or owned by any of the types of Special Event.

A permit is required for the Special Event temporary installation wiring or electric equipment of any description.

LWFR-EXP 5-000299

All Certificates of Approval issued for Special Events wiring or electrical equipment of any description may be revoked at the discretion of the Director if the continued use of such wiring or electrical equipment for the Special Event is deemed unsafe and not in the interest of the safety, health and welfare of the general public for which the event was initially allowed.

All permits shall automatically expire at the end of ninety (90) days.

## 2722 - CONNECTION OF ELECTRIC SERVICE

The Director has the sole responsibility and shall notify and authorize the Utility Company, via facsimile or telephone, to make the final electric meter connection of the building or premises electric system to the Utility Company's service facilities. To follow this authorization, the Director shall issue a *"Entergy Permit & Inspection Desk Electrical Meter Release Authorization"* form for that designated municipal address of the electric meter installation. No other person, firm or corporation shall be authorized to make the final connection.

The connection of electricity from a privately owned source of electric supply to electrical wiring system or equipment within or on any building or premises shall not be made until a special permit is secured from the Director authorizing such connections.

## 2723 - ELECTRICAL METER RELEASE STIPULATIONS

(a) If any municipal address or location has been without electric service for a period of time exceeding six (6) months, an electrical permit must be obtained and an inspection must be made in accordance with this Code, before the electric service can be reconnected.

(b) *"Entergy Permit & Inspection Desk electric Meter Release Authorization"* approvals, issued for electrical meter service connection by the Utility Company

within residential, commercial or industrial establishments, shall expire six (6) months from the date of issuance to the Utility Company. If a meter is not installed prior to the expiration date a new release authorization shall be required.

The new release authorization shall be issued only after a re-inspection of the location has been made by the Director.

## 2724 - DISCONTINUANCE OF ELECTRIC SERVICE

(A) If the Director or Director determines the construction, repair or installation of any electrical wiring, appliance or equipment at any municipal address or location to be in a dangerous, hazardous or perilous condition and imminently threatening to the safety, health and welfare of the users, occupants or the general public, immediate notification shall be given to the Utility Company to disconnect the meter or remove the electric service to the building or location. No utility service shall be resumed until the necessary corrections have been completed as required by this Code.

(B) If the Director determines any electrical installation, wiring, equipment or appliances in any building to be unsafe or in a dangerous condition, or any electrical construction, installation, or repair work has been installed or is being used in violation of this Code or is being used in violation of the use provisions of the Comprehensive Zoning Ordinance as interpreted by the Zoning Administrator, and such violations have not been corrected within ten (10) days of such determination, the Director shall send written notice to the person, firm or corporation responsible for the violation(s) to correct the condition(s) within the time specified in the written notice. This period may not be extended except by written permission from the Director.

Failure to comply with this notice shall empower the Director or Director to:

(1) request that charges be filed in the Municipal

LWFR-EXP 5-000300

Court of the City of New Orleans; and

(2) seek relief through Civil District Court or another Court of competent jurisdiction; and

(3) notify as provided in Chapter 6, Article II, of the Code of the City of New Orleans, the owner of record and any other person whom the City Attorney identifies as required to receive notice, to appear before an Administrative Hearing Officer to show cause why the said owner and person; should not be adjudicated as a violator to the said Chapter 6, Article II.

If the above Courts and Administrative Agency determination that the owner and person is in violation of the provisions of this Code or the provisions of the Comprehensive Zoning Ordinance and such violations have not been corrected within 10 days of said determination, the Director shall have authority to discontinue the service of the utility company until such time the violations have been corrected.  When the violations have been corrected and  the location is re-inspected by the Director, he shall notify the utility company that the electrical service may be reconnected.

The Zoning Administrator must ascertain, and corroborate to the Director, that the  Zoning violations have been corrected prior to reconnecting the utility service.

## 2725 - WORK BY OTHER THAN ELECTRICAL CONTRACTORS

No person, firm or corporation, erecting, repairing, or altering buildings, erecting signs, altering, changing or installing plumbing or engaged in any other work shall close in or conceal any wiring or raceways nor cut, break, destroy, disconnect or in any other  manner interfere with the arrangements of any electrical conduct ors or appliances whatever inside or outside of any building or premises without receiving a permit from the Director.  Before the permit is issued, the person, firm or corporation shall serve the Director with a written notice at least forty-eight (48) hours before the

contemplated work is to be commenced.  The work of altering, changing or disconnecting  electrical conductors or appliances must be done under the supervision  of a Class "A" Electrical license holder.

## 2726 - DISPLAY OF CONTRACTOR'S SIGN, PUBLIC ADVERTISING OR ADVERTISEMENT OF SERVICES

Every location where work of an electrical nature is being done shall have displayed on a conspicuous place in front, an identifying sign indicating electrical work is being performed, and the words "CLASS "A" ELECTRICAL CONTRACTOR" in letters not less than two (2) inches high.  The display of such a sign by other than a duly certified Class "A" Electrical Contractor shall constitute a violation of this Code.

The sign shall contain the license number of the Class "A" Electrical Contractor, and the name, address, and telephone number of the firm or corporation in letters not less than two (2) inches high.

Every Class "A" Electrical Contractor shall install a sign on each work vehicle utilized in the performance of his duties and responsibilities as a Class "A" Electrical Contractor as defined in Article 2705 of this Code.  The vehicle sign shall contain the license number of the Class "A" Electrical Contractor, and the name, address and the telephone number of the firm or corporation, in letters not less than two (2) inches high.

Every Class "A" Electrical Contractor advertising or proposing to advertise to the general public for the purposes of obtaining any of the types of electrical work as defined in this Code, shall provide his license number, and the name, address and telephone number of the firm or corporation. The display of a sign or advertising for the purposes of obtaining work by a person other than the duly certified Class "A" Electrical Contractor constitutes a violation of this Code.

False, misleading or deceptive advertising shall

LWFR-EXP 5-000301

constitute an attempt to circumvent the general health, welfare and safety of the public and shall constitute a violation of this Code.

## 2727 - FEES FOR ADDED INSPECTIONS

**(a) wasted trip inspection** - When a Class "A" license holder, after notice has been given by the Director, is found to have violated any of the requirements of this Code, or when through any such violation by any Class "A" license holder doing the work, it shall become necessary to make extra inspections because of a wasted trip, a fee of $50.00 shall be charged.  This charge is for each and any extra inspections made necessary as a result of blatantly incomplete work, inaccessibility to perform the inspection or for alterations to work previously accepted.  This fee is in addition to any regular required permit fees and shall be received before any further inspections are made by the Electrical Inspection Division.

**(b) Fire Marshal Inspection** - When any person, firm or corporation requests a complete electrical inspection of existing installations to comply with the State Fire Marshal Act, a fee of $30.00 shall be charged.

**(c) After Hour Inspections** - When a person, firm or corporation requests an inspection of installed electrical equipment to be performed at a time other than the designated working hours of the Electrical Inspectors of the Department of Safety and Permits a fee shall be charged . The request and reason for the after hour inspection must be made to and approved by the Director for inspector assignment.
A fee of $120.00 shall be paid by the person, firm or corporation requesting the after hour inspection. Payment of this fee must be made to the "City of New Orleans" within forty-eight (48) hours of the request for the inspection and is to be paid in addition to any regular required permit fees in this Code.  No further inspections are to be made by the Electrical Inspection Division until the required fee has been

received.

## 2728 - EXEMPTIONS

The provisions  in this Chapter do not apply to Companies regulated by the Louisiana Public Service Commission, or the Council of the City of New Orleans, with the following exceptions.
(a) Telephone and telegraph companies - a permit is required where electrical work is performed on the primary side of the source of power from the Utility Company at a voltage over fifty (50) volts and which consumes more than five hundred (500) watts of energy.
(b) Utility Company - a permit is required where electrical work is performed on the secondary side of the source of power from the Utility Company.
(c) Regional Transit Authority (RTA) - a permit is required where electrical work is performed on the secondary side of the source of power from the Utility Company.

## 2729 - PLENUM SPACES

If it is necessary to install electrical equipment in plenum spaces used for supply or return air systems, see *International Building Code*, 2000 edition and the National Electric Code, (NFPA-70), for requirements.

## 2730 - EMERGENCY SYSTEMS, EXIT AND EMERGENCY ILLUMINATION

Means of egress shall be illuminated at all times in accordance with the *International Building Code*, 2000 edition and the National Electric Code, (NFPA-70).

## 2731 - TEMPORARY DECORATIVE LIGHTING

No person, firm or corporation shall install wiring of a temporary decorative character in or about any municipal address or location without having first secured from the Director written permission authorizing the work to be installed.  The Director shall be authorized to grant written and limited

LWFR-EXP 5-000302

approval for any temporary installations which may, in his opinion, be necessary. Temporary installations of decorative lighting of residences or their premises otherwise complying with this Code may be exempted from this requirement by the Director.

Temporary as defined within this Section shall include seasonal or holiday installations lasting for a limited time not to exceed thirty (30) days.

## 2732 - ELECTRICAL SIGNS

Before any electrically illuminated or electrically powered sign may be erected or placed in position upon, above, or attached to the outside of any building, structure or premises, an electrical permit shall be secured from the Director.

The sign erector shall also secure a building permit prior to the erection of such sign as required by *The International Building Code*, 2000 edition, as amended, Section 3107, signed by a Class "A" Electrical license holder, acknowledging intention to erect and notify the Director when the installation is completed. When an erector has been determined to be in violation of the Code and refuses to correct same, no further permits will be issued to him.

Written notice shall be given by the sign contractor and by the Class "A" license holder to the Director upon completion of the installations. The Director shall then inspect the sign, and determine whether or not it is installed in conformity with applicable ordinances.

Signs that are approved and labeled and such signs of billboard type, skeleton, ornamental, lettering and neon tubing inside and outside of buildings, that are wired in conformity with the National Electric Code, (NFPA-70) shall be considered as being in conformity with the requirements of this Code. Electric service shall not be connected to any sign or billboard until all work on same is completed, and then only when the Certificate of Approval is issued by the Director and the electric meter authorization is issued to the Utility Company.

## 2733-AUTOMATIC EARLY WARNING PROTECTIVE DEVICES

Early warning protective devices shall conform to *The International Building Code*, 2000 edition, as amended.

## 2734 - FEES; PERMITS

**(A) The electrical permit fee schedule is as follows:**

1. Thirty dollars ($30.00) per construction loop. All construction loop permits issued may be revoked at any time at the discretion of the Director, however all such permits shall automatically expire at the end of ninety (90) days with the exception of those providing required construction power to the project still under construction.

2. Thirty dollars ($30.00) minimum per permit application for all installations, plus (a) & (b) below.

(a) Thirty cents (.30) per ampere of service or protective device rating.

(b) Three dollars ($3.00) per connected circuit in each and every panel. [Within the meaning of the terms of this code, each main feeder, sub-main or branch circuit for power, light or any other purpose or service shall be considered a circuit. Each fused or other type of automatic cutout protected wire of a final branch multi-wire circuit shall be also considered a circuit.]

3. A minimum fee of thirty dollars ($30.00) shall apply for the repair or replacement of any existing electrical equipment of the same capacity.

4. A fee of thirty dollars ($30.00) shall apply for each illuminated sign, whether indoors or outdoors.

5. A fee of fifty dollars ($50.00) shall apply to each Elevator, Moving Stair, Dumbwaiter, and Man lift.

6. A fee of fifty dollars ($50.00) shall apply for any elevator repair work, modernization or current changeover.

## 2735 - BASIC STANDARDS

LWFR-EXP 5-000303

**(A)** No electrical work for light, heat or power shall be installed or placed in or on any building, structure or premises, unless this work is in conformity with current approved methods of construction. Compliance with the regulations in the National Electric Code, (NFPA-70) shall be prima facie evidence of conformity with such approved methods. No electrical service equipment shall be installed below grade elevation.

**(B)** All installed electrical wiring shall conform to the requirements of the *International Building Code*, 2000 edition, as amended, the National Electric Code, (NFPA-70) and such other applicable safety codes as enforced by the Department of Safety and Permits.

**(C)** All electrical devices, fittings, materials, equipment, and appliances shall be those approved for the purpose for which they are used. Only such electrical devices, fittings, materials, equipment, and appliances, that are constructed in conformity with their listing or labeled by a testing laboratory acceptable to the Director, shall be installed. The satisfactory listing or labeling of these devices, fittings, materials, equipment, and appliances shall be prima facie evidence of conformity with the requirements of this Code.

**(D)** The Director or his designee is hereby authorized to seize, de-energize or cause to make inoperable any electrical apparatus deemed by him to be dangerous, hazardous or perilous, when such electrical apparatus is either being used in a manner for which it is not approved or being used for a purpose for which it does not conform electrically.

Large or bulky electrical apparatus that is not capable of being moved or transported to a location designated by the Chief Administrative Officer for storage shall be de-energized and "locked off" so as to be inoperable or incapable of being used.

The seized electrical apparatus that is capable of being moved shall be transported to a location designated by the Chief Administrative Officer for storage. The custodian of the storage area shall maintain records of the impounded electrical apparatus and the date on which it was impounded and shall hold the apparatus in the storage area for a period of not more than thirty (30) days. Any electrical apparatus so held, or "locked off" may be redeemed by the owner thereof upon the payment of a fee to the City of New Orleans through the custodian thereof, consisting of a total of $150.00 plus $10.00 per day storage fee for each day the apparatus is stored. Any electrical apparatus impounded and stored or "locked off" and not redeemed by the owner thereof within thirty (30) days may be transferred or assigned to the custody of the Department of Finance to be sold at public auction in the same manner as surplus property of the City.

**(E)** Low voltage installation wiring shall:

1. be properly attached to structural components.

2. be removed if it is abandoned as a result of a new low voltage installation.

3. be installed in a neat and workmanlike manner

4. be installed so as not to impair or degrade the fire rating or structural integrity of a penetrated wall or ceiling in accordance with **Section 300.21** of the NEC..

5. be properly listed and labeled in accordance with **Section 110.3 (b)** of the NEC.

## 2736 - FIRE PUMPS

All wiring of fire pump installations shall be in accordance with the National Electric Code, (NFPA-70), and Centrifugal Fire Pumps, (NFPA-20), (See Chapter 35 of the *International Building Code*, 2000 ed., as amended ).

## 2737 - STANDARD ELECTRICAL MATERIALS

Before any electrical material, appliance, or equipment is used, it shall be constructed in conformity with current standards, and be classified and listed by, including but not limited to,

LWFR-EXP 5-000304

Underwriters Laboratory (UL), Factory Mutual (FM), Canadian Standards Association (CSA), Electrical Testing Laboratories (ETL), MET Laboratories and others listed by the SBCCI Public Safety Testing & Evaluation Service, Inc.(PST&ESI) to insure safety to life and property.

## 2738 - ALTERNATE MATERIALS AND METHODS

The provisions of this Code are not intended to prevent the use of any material or method of construction not specifically prescribed by this Code, provided an alternate has been approved by the Director. The Director may approve an alternate, provided he finds that the alternate for the purpose intended is at least the equivalent of that prescribed in this Code in quality, strength, effectiveness, fire resistance, durability and safety. The Director shall require that sufficient evidence or proof be submitted to substantiate any claim made regarding the alternate. The Director may recommend an amendment to this Code in order to make permissible the use of the alternate. If, in the opinion of the Director, the evidence and proof are not sufficient to justify approval or recommendation for an amendment, the applicant may refer the entire matter to the Board of Building Standards and Appeals as specified in article 104 of the *International Building Code*, 2000 Edition, as amended.

## 2739 - TESTS OF MATERIALS AND SYSTEMS OF CONSTRUCTION

Where new and alternate systems of construction, qualities of materials or tests are proposed for use, tests may be required by the Director. The required tests shall be made at the expense of the owner or his agent by a testing laboratory or other organization approved for the purpose by the Director. Certified copies of the test reports shall be filed with the Director for his approval before the systems of construction or materials are used. The owner or his agent shall notify the Director of the time and location of the tests so that he or his representative may be present.

## 2740 - COMPLIANCE REQUIREMENTS

All electrical contractors and electricians certified under this Chapter must also comply with all applicable laws and regulations of the State of Louisiana, in order to be considered in compliance with this Chapter.

## 2741 - ELECTRIC FENCE

No fence shall be electrified in the City of New Orleans."

**SECTION 14.** That Chapter 35 of the IBC, 2000 Edition, be amended to include the following:

## "CHAPTER 35
### REFERENCED STANDARDS

The following additional Standards are referenced in various Sections of this code.
NFPA 20-99, Centrifugal Fire Pumps.............................2736
NFPA 70-02, National Electrical Code..............................2701"

**SECTION 15.** That a new Chapter, to be designated as Chapter 36 be adopted to read as follows:

## "CHAPTER 36
### INTERNATIONAL RESIDENTIAL CODE

The following Chapters of the International Building Code, as amended shall also be applicable to the construction of any One and Two Family dwelling when the structure is designed and constructed in accordance with the International Residential Code.
Chapter 1.......................Administration

LWFR-EXP 5-000305

Chapter 18.....................Soils and Foundations (Where applicable to One and Two Family Dwellings.)

The following Chapters of International Residential Code are deleted.

Chapter 1.......................Administration
Chapter 4.......................Foundations
Chapter 12.....................Mechanical Administration
Chapter 13.....................General Mechanical System Requirements
Chapter 14.....................Heating and Cooling Equipment
Chapter 15.....................Exhaust System
Chapter 16.....................Duct Systems
Chapter 17.....................Combustion Air
Chapter 18.....................Chimneys and Vents
Chapter 19.....................Special Fuel- Burning Equipment
Chapter 20.....................Boilers/Water Heaters
Chapter 21.....................Hydronic Piping
Chapter 22.....................Special Piping and Storage Systems
Chapter 23.....................Solar Systems
Chapter 24.....................Fuel Gas
Chapter 25.....................Plumbing Administration
Chapter 26.....................General Plumbing Requirements
Chapter 27.....................Plumbing Fixtures
Chapter 28.....................Water Heaters
Chapter 29.....................Water Supply and Distribution
Chapter 30.....................Sanitary Drainage
Chapter 31.....................Vents
Chapter 32.....................Traps
Chapter 33.....................General Requirements
Chapter 34.....................Electrical Definitions
Chapter 35.....................Services
Chapter 36.....................Branch Circuit and Feeder Requirements
Chapter 37.....................Wiring Methods
Chapter 38.....................Power and Lighting Distribution

Chapter 39.....................Devices and Lighting Fixtures
Chapter 40.....................Appliance Installation
Chapter 41.....................Swimming Pools
Chapter 42.....................Class 2 Remote-

Control Signaling and Power - Limited Circuits

All electrical work with respect to One and Two Family Dwellings shall be in accordance with the National Electrical Code, NFPA 70 (See Chapter 35 of the International Building Code.)

All mechanical and gas work with respect to One and Two Family Dwellings shall be in accordance with the International Mechanical Code and International Fuel Gas Code (See Chapter 35 of the International Building Code."

**SECTION 16.** That Appendix D of the IBC, 2000 Edition, be deleted in its entirety, and substitute the following:

**APPENDIX D**
**FIRE DISTRICTS**

**"SECTION D 101**

**GENERAL**

**D 101.1 — Scope**

For the purpose of this Code, fire district shall include that territory or portions of the City as described in Section D101.1.2.

**D 101.1.1 Mapping.** The fire district complying with the provisions of Section D101.1 shall be shown on a map that shall be available to the public.

**D 101.1.2 Fire District.** The area included within the following described boundaries is hereby designated " Fire District." Commencing at the center line of John Churchill Chase Street at the Mississippi River, thence along the center line of John Churchill Chase Street to the center line of Camp Street, thence

LWFR-EXP 5-000306

along the center line of Calliope Street to the center line of St. Charles Avenue, thence along the center line of St. Charles Avenue to the intersection of Howard Avenue, thence along the center line of Howard Avenue to the center line of Claiborne Avenue, thence along the center line of Claiborne Avenue to the center line of St. Peter Street, thence along the center line of St. Peter Street to the Mississippi River, thence along the Mississippi River to the point of commencement.

**(See Page 54 for the Map)**

### SECTION D 102
### BUILDING RESTRICTIONS

**D102.1    Types of construction permitted.** Within the fire district every building hereafter erected shall be either Type I, II, III or IV, except as permitted in Section D104.

**D102.2   Other specific requirements.**

**D102.2.1 Exterior walls.** Exterior walls of buildings located in the fire district shall comply with the requirements in Table 601 except as required in Section D102.2.6.

**D102.2.2 Group H prohibited.** Group H occupancies shall be prohibited from location within the fire district.

**D102.2.3 Construction type.** Every building shall be constructed as required based on the type of construction indicated in Chapter 6.

**D102.2.4 Roof covering.** Roof covering in the fire district shall conform to the requirements of Class A or B roof coverings as defined in Section 1505.

**D102.2.5 Structural fire rating.** Walls, floors, roofs, and their supporting structural members shall

be a minimum of 1-hour fire-resistance-rated construction.

   **Exceptions:**
1. Buildings of Type IV construction.
2. Buildings equipped throughout with an automatic sprinkler system in accordance with   Section 903.3.1.1.
3. Automobile parking structures.
4. Buildings surrounded on all sides by a permanently open space of  not less than 30 feet   (9144 mm).
5.  Partitions complying with Section 603.1 (8).

**D102.2.6 Exterior walls.** Exterior load-bearing walls of Type II buildings shall have a fire-resistance rating of 2 hours or more where such walls are located within 30 feet (9144 mm) of a common property line or an assumed property line.  Exterior nonload-bearing walls of Type II buildings located within 30 feet (9144 mm) of a common property line or an assumed property  line shall have fire-resistance ratings as required by Table 601, but not less than 1 hour.   Exterior walls located more than 30 feet (9144 mm) from a common property line or an assumed property line shall comply with Table 601.

**Exception:** In the case of one story buildings that are 2,000 square feet (108 M$_2$ ) or less in area, exterior walls located more than 15 Feet (4572 mm) from a common property line or an assumed property line need only comply with Table 601.

**D102.2.7 Architectural trim.** Architectural trim on buildings located in the fire district shall be constructed of approved noncombustible materials or fire retardant treated wood.

**D102.2.8 Permanent canopies.** Permanent canopies are permitted to extend over adjacent open spaces provided:

LWFR-EXP 5-000307

1. The canopy and its supports shall be of noncombustible material, fire-retardant-treaded wood, Type IV construction, or of 1-hour fire resistance rated construction.

**Exception:** Any textile covering for the canopy shall be flame resistant as determined by tests conducted in accordance with NFPA 701 after both accelerated water leaching and accelerating weathering.

2. Any canopy covering, other than textiles, shall have a flame spread index not greater than 25 when tested in accordance with ASTM E 84 in the form intended for use.

3. The canopy shall have at least one long side open.

4. The maximum horizontal width of the canopy shall not exceed 15 feet (4572 mm).

5. The fire resistance of exterior walls shall not be reduced.

**D102.2.9 Roof structures.** Structures, except aerial supports 12 feet (3658 mm) high or less, flag poles, water tanks and cooling towers, placed above the roof of any building within the fire district shall be of noncombustible material and shall be supported by construction on non-combustible material.

**D102.2.10 Plastic signs.** The use of plastics complying with Section 2611 for signs is permitted provided the structure of the sign in which the plastic is mounted or installed is noncombustible.

**D102.2.11 Plastic veneer.** Exterior plastic veneer is not permitted in the fire district.

**D102.2.12 Temporary Buildings.** Temporary structures such as reviewing stands and other miscellaneous structure conforming to the requirements of this Code and shed, canopies or fences used for the protection of the public around and in conjunction with construction work may be erected in the Inner Fire Limits and outer Fire Limits by permit from the Director for a limited period of time, and such building or structure shall be completely removed upon the expiration of the time limit stated in such permit.

**D102.2.13 Other minor structures.** A special permit of 90 days may be issued for other minor, one story, temporary structures used for shelter purposes only and not exceeding 100 sq. ft. in area.

## SECTION D103
## CHANGES TO BUILDINGS

**D103.1 Existing buildings within the fire district.** An existing building shall not hereafter be increased in height or area unless it is of a type of construction permitted for new buildings within the fire district or is altered to comply with the requirements for such type of construction. Nor shall any existing building be hereafter extended on any side, nor square footage or floors added within the existing building unless such modifications are of a type of construction permitted for new buildings within the fire district.

**D103.2 Other alterations.** Nothing in Section D103.1 shall prohibit other alterations within the fire district provided there is not change of occupancy that is otherwise prohibited and provided the fire hazard is not increased by such alteration.

**D103.3 Moving buildings.** Buildings shall not hereafter be moved into the fire district or to another lot in the fire district unless the building is of a type of construction permitted in the fire district.

## SECTION D104
## BUILDINGS LOCATED PARTIALLY IN THE FIRE DISTRICT

**D104.1 General.** Any building located partially in the fire district shall be of a type of construction required for the fire district, unless the major portion of such building lies outside of the fire district and no part is more than 10 feet (3048mm) inside the

New Orleans Amendments to the International Bldg. Code, 2000 Ed.

Page 59

LWFR-EXP 5-000308

boundaries of the fire district.

## SECTION D105
## EXCEPTIONS TO RESTRICTIONS IN FIRE
## DISTRICT

**D105.1 General.** The preceding provisions of this appendix shall not apply in the following instances:

1. Temporary buildings used in connection with duly authorized construction.
2. A private garage used exclusively as such, not more than one story in height, nor more than 650 square feet (60 m2) in area, located on the same lot with a dwelling.
3. Fences not over 8 feet (2438 mm) high.
4. Coal tipples, material bins, and trestles constructed of Type IV construction.
5. Water tanks and cooling towers conforming to Section 1509.3 and 1509.4.
6. Greenhouses less than 15 feet (4572mm) high.
7. Porches on dwellings not over one story in height, and not over 10 feet (3048 mm) wide from the face of the building, provided such porch does not come within 5 feet (1524 mm) of any property line.
8. Sheds open on a long side not over 15 feet (4572 mm) high and 500 square feet (46 m2) in area.
9. One- and two-family dwellings where of a type of construction not permitted in the fire district can be extended 25 percent of the floor area existing at the time of inclusion in the fire district by any type of construction permitted by this code.
10. Wood decks less than 600 square feet (56 m2) where constructed of 2-inch (51 mm) nominal wood, pressure treated for exterior use.
11. Wood veneers on exterior walls conforming to

Section 1405.4.

12. Exterior plastic veneer complying with Section 2605.2 where installed on exterior walls required to have a fire-resistance rating not less than 1 hour, provided the exterior plastic veneer does not exhibit sustained flaming as defined in NFPA 268.

## SECTION D106
## REFERENCED STANDARDS

| | | |
|---|---|---|
| ASTM E 84-99 | Test Methods for Surface Burning Burning Characteristics of Building Materials | D102.2.8 |
| NFPA 268-96 | Standard Test Method for Determining Ignitability of Exterior Wall Assemblies Using a Radiant Heat Energy Source | D105.1 |
| NFPA 701-96 | Methods of Fire Test for Flame-resistant Textiles and Films" | D102.2.8 |

LWFR-EXP 5-000309

Page 61

LWFR-EXP 5-000310

Table 1812.12.2.3
Maximum Allowable Single Pile
Load Capacity without Investigations
or Load Tests
City of New Orleans, Louisiana

| Map Area | ANSI Pile Classification | Pile Tip Embedment In Feet | Maximum Allowable Single Pile Load Capacities Without Investigations or Load Tests (tons) |
|---|---|---|---|
| GM-1 & GM-21 | Class 9 | 30 | 4^ |
| | Class 9 | 35 | 5* |
| | Class 5 | 30 | 5 |
| | Class 5 | 35 | 6 |
| | Class 5 | 40 | 8* |
| GM-2 GM-5 & G M-3 (1,2, 3a,4,7) | Class 9 | 30 | 4^ |
| | Class 9 | 35 | 5 |
| | Class 5 | 30 | 5 |
| | Class 5 | 35 | 6 |
| | Class 5 | 40 | 7 |
| GM-3 (3b,6,8) GM-8, GM-9 GM-12, GM-16 GM-17, GM-18 & GM-22 | Class 9 | 30 | 2.5^ |
| | Class 9 | 35 | 3 |
| | Class 9 | 40 | 4 |
| | Class 5 | 30 | 3 |
| | Class 5 | 35 | 4 |
| | Class 5 | 40 | 5 |
| GM-4, GM-10 GM-11 & GM-15 | Class 9 | 18 - 33 | 5*^☆ |
| | Class 5 | 18 - 33 | 8*☆ |
| GM-6, GM-7 GM-13, GM - 14 | Class 9 | 10 - 25 | 5*^☆ |
| | Class 5 | 10 - 25 | 8*☆ |

\* Pile tip embedded in sand stratum.

^ ANSI Class 9 piles to be used only for accessory buildings of 1000 sq. ft.

LWFR-EXP 5-000311

or less or utility  usage.

⚘      The allowable capacity of these piles is governed  by 1812.11.4 unless a site-specific geotechnical

         investigation  recommends otherwise.  Areas  not specifically covered in  the above table or by the

         referenced  maps shall require a  geotechnical investigation.

LWFR-EXP 5-000312



LWFR-EXP 5-000313

New Orleans Amendments to the International Bldg. Code, 2006 Ed.          **Page 65**

LWFR-EXP 5-000314

ADOPTED BY THE COUNCIL OF THE
CITY OF NEW ORLEANS June 19, 2003
     OLIVER M. THOMAS, JR.
     PRESIDENT OF COUNCIL

DELIVERED TO THE MAYOR ON JUNE 20, 2003

APPROVED:
~~DISAPPROVED:~~  June 27, 2003

     C. RAY NAGIN
     MAYOR

RETURNED BY THE MAYOR  ON
  June 30, 2003  AT  11:55 A.M.

     PEGGY CRUTCHFIELD
     CLERK OF COUNCIL

LWFR-EXP 5-000315

# APPENDIX Q

**Transcript of the**
**Explanation of House Cross Section Animation**

This graphic shows a building whose air conditioning system is running. However, the supply ductwork is not just pushing conditioned air into the house. It is also leaking air into the attic. At the same time, the return air duct is pulling air from the house back into the system to be reconditioned.

The return ductwork is also leaking a great deal, so when the machine is running, the return ductwork is sucking air from the attic into the machine. Because the return is leaking so much more than the supply ductwork, the attic is developing a negative pressure, similar to a vacuum. The house, in turn, is developing a slightly positive pressure. This happens because the supply ducts are supplying air that is not being pulled back into the machine by the return because that need is being met by the attic air being pulled into the return leaks.

When the return air pulls in air from the attic, it also pulls in contaminants from the attic such as fiberglass, dust, humidity, and VOCs (volatile organic compounds). It then distributes these contaminants throughout the home via the supply ductwork.

If the walls of the structure are not well air sealed, this creates another problem. As the attic develops a negative pressure, it pulls air from the tops of the walls, which also creates a negative pressure in the walls of the building. This then encourages air leakage around windows,doors and other openings in the wall and ceiling. The air leakage around the wall openings brings in heat and humidity that is pulled through the walls into the attic and into the return air duct that is leaking. All of these air leakage paths allow heat, humidity and contaminants to be brought into the air conditioner and supplied to the inside of the home for people to breath. All this can be corrected by sealing ductwork properly and air sealing walls and wall and ceiling openings such as windows, doors, light fixtures and outlets.