1

```
 1            UNITED STATES DISTRICT COURT
 2            EASTERN DISTRICT OF LOUISIANA
 3
 4   IN RE:  FEMA TRAILER      MDL NO. 1873
 5   FORMALDEHYDE PRODUCTS     SECTION N(4)
 6   LIABILITY LITIGATION      JUDGE ENGELHARDT
 7   (This document relates to
      "DUBUCLET V. FLEETWOOD
 8     ENTERPRISES, INC.,"
      Case No. 07-9228)
 9
10                  *   *   *
11
12            DEPOSITION OF ALEXIS MALLET, JR.,
13   103 BRADBURY CROSSING, LAFAYETTE, LOUISIANA
14   70508, TAKEN AT THE OFFICES OF LAMBERT &
15   NELSON, 701 MAGAZINE STREET, NEW ORLEANS,
16   LOUISIANA 70130, ON THE 28TH DAY OF OCTOBER,
17   2009.
18
19
20   REPORTED BY:
21      CATHY RENEE´ POWELL, CCR
        PSR
22      (504)529-5255
23
24
25
```

1    designer or a manufacturer of a travel
2    trailer?
3         A.   No, sir.
4         Q.   Have you ever been involved in a
5    consultation, prior to this FEMA litigation,
6    involving a claim of formaldehyde in a
7    travel trailer?
8         A.   No, sir.
9         Q.   You are not a mechanical engineer,
10   are you?
11        A.   I am not.
12        Q.   Do you hold any engineering
13   degrees in any discipline?
14        A.   I don't, but I have a lot of
15   experience working with our engineers, and
16   35 years of construction experience in
17   design build, and having engineers and
18   architects working underneath me.
19        Q.   And you have never worked as a
20   designer or manufacturer of an HVAC system
21   or air-conditioning system specifically for
22   a travel trailer, have you?
23        A.   No, sir.  Although we have had to
24   specify or replace air-conditioning units
25   and ductwork systems in travel trailers when

1    expert and give opinions on location or

2    adequacy of warnings?

3         A.   No, sir.  I am not an expert in

4    that field, nor was it my intention to give

5    testimony in that field, other than the

6    observation.

7         Q.   Of what you observed while you

8    were inspecting the travel trailer?

9         A.   That is correct.

10        Q.   All right.

11             Tell me what your role is in the

12   Dubuclet case.  We know there is Mr. Moore

13   out there, we know there is Mr. Ritter out

14   there, we know there are others out there.

15   What is your role?  What is the area of your

16   opinions and expertise in the Dubuclet case?

17        MR. PINEDO:

18             Objection, form.

19        THE WITNESS:

20             I basically lead the team,

21   disseminate who is going to look at what,

22   and have them to either -- if there are

23   calculations involved, perform the

24   calculations that will back up or that will

25   tell me whether a position that we have

1   taken is accurate or inaccurate.

2          They're the more technical end of

3   the team, but, in general, I see and

4   understand how the whole package fits

5   together, how the parts and system works or

6   doesn't work together, and how -- if it

7   doesn't function, why it doesn't function

8   properly.

9   EXAMINATION BY MR. SAPORITO:

10      Q.   Are you saying Mr. Moore and

11  Mr. Ritter, in their particular fields,

12  cannot see how the whole package fits

13  together; and, therefore, they should defer

14  to your testimony in that area?

15      MR. PINEDO:

16          Objection, form.

17      THE WITNESS:

18          They are not brought in to perform

19  that function.  They can have opinions, they

20  can have observations, but my overall

21  function is to put the whole package

22  together.

23  EXAMINATION BY MR. SAPORITO:

24      Q.   Are you saying that Mr. Ritter and

25  Mr. Moore cannot verify their own