UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 SECTION: N(5) |
| This Document Relates to: *Lyndon T. Wright. v. Forest River, Inc., et al*, Docket No. 09-2977 | | * * * | JUDGE ENGELHARDT: MAG: CHASEZ |

**************************************************************************

### FOREST RIVER INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. LAWRENCE G. MILLER

Defendant Forest River, Inc. (hereinafter "Forest River") hereby moves this Court to exclude the testimony of Dr. Lawrence G. Miller, as Dr. Miller does not possess the requisite expertise to assist the jury in the matter, since he is no longer actively engaged in the practice of clinical medicine, and plaintiff has failed to establish any evidence of general causation sufficient to support Miller's diagnosis, rendering his opinions irrelevant. Should Dr. Miller be permitted to testify at all, he should be limited to a discussion of Wright's alleged exacerbation of rhinosinusitis, since this is the only condition that Dr. Miller has found to be causally related to either formaldehyde or mold. No other medical condition should be discussed.

### I.     Factual Background

The instant action stems from plaintiff's alleged exposure to formaldehyde while residing in a travel trailer supplied by FEMA as emergency housing. Plaintiff has retained Dr. Lawrence

Miller, a physician certified in internal medicine and pulmonary disease, to present specific causation testimony regarding plaintiff's alleged respiratory conditions. Dr. Miller personally examined Wright in the summer of 2009 and originally issued timely expert reports, with preliminary opinions in July of 2009 and a final report in October of 2009.[1] These reports focused on a wide range of Wright's respiratory conditions and their alleged association with either formaldehyde or mold.

After a brief discussion of the literature on formaldehyde and mold, Dr. Miller opined that, "within a reasonable degree of medical probability, the exposure to formaldehyde emissions during his approximately 28 months of residence in the FEMA trailer significantly exacerbated Mr. Lyndon Wright's rhinosinusitis," an opinion at odds with Wright's treating physician, Dr. Spector.[2] Dr. Miller was clear that the formaldehyde exposure did not *cause* this rhinosinusitis but simply exacerbated the condition.[3] With regard to Wright's other conditions, including rashes, bloody sputum, nocturnal dyspnea, Dr. Miller noted that "limitations in the medical records and toxicological evidence prevent establishment of a causal association at this time."[4]

A brief review of plaintiff's other medical causation experts is instructive. Plaintiff has retained Dr. Patricia Williams to serve as his only general causation expert in this case. Dr.

---

[1] *See generally* expert reports of Dr. Miller (July 2009 report attached as Ex. A, and October 2009 report attached as Ex. B). Dr. Miller subsequently provided an Addendum to his reports on January 12, 2010. Forest River and Shaw Environmental, Inc. filed a separate Motion to Exclude that Addendum, Rec. Doc. 10321. Forest River hereby incorporates the arguments made in that motion *in extenso*.

[2] *See* Miller report, dated 10/2/09, p. 7, attached as Ex. B.

[3] *Id.*

[4] *Id. See* Deposition of Dr. Miller, dated 11/10/09, p. 113-14; 118-19, attached as Ex. C.

Williams, a toxicologist (board-certified 2006), cites a number of studies in her report but ultimately lists the following opinions:

> "A cause-effect relationship exists between formaldehyde and upper respiratory tract damage and cancer.
> A cause-effect relationship exists between formaldehyde and bronchocontriction/asthma.
> A cause-effect relationship exists between formaldehyde and eczema.
> An association exists between formaldehyde and epistaxis.
> An association exists between epistaxis and cancer of the sinuses, nasal cavity, and nasal vestibule and wall.
> An association exists between mold exposure and nonallergic rhinitis."[5]

On the specific causation side, two other experts have been identified aside from Dr. Miller:

1. Dr. Farber, a dermatologist, authored a report on Wright's skin conditions.[6] Based on information and belief, Dr. Farber's medical license was recently revoked in November 2009 by the State of Louisiana. Plaintiff has subsequently withdrawn Farber as a testifying expert in the case.[7] Forest River will file a separate *Motion in Limine* to exclude any reference to his report, but, without Farber's opinions, plaintiff not be able to present expert testimony on Wright's alleged dermatological issues.

2. Dr. Richard Spector, an otolaryngologist (ENT), examined Mr. Wright to address two specific ailments. First, Spector biopsied a mass at the base of Mr. Wright's tongue

---

[5] *See* Williams report, p. 63-64, attached as Ex. D. Defendants have moved to strike Dr. Williams' supplemental report (Rec. Doc. 10321) and incorporate those arguments herein. However, the contents of that supplement do not alter the arguments made by Forest River in this motion.

[6] *See* Dr. Farber report, dated 10/2/09, attached as Ex. E. It should be noted that Dr. Farber excused himself from deposition, and plaintiff later withdrew him as a testifying expert in the case.

[7] *See* Ex. F, email from A. Ahlquist to J.Bone, et al., dated 11/20/09, noting, "Plaintiffs can agree that we will not call Dr. Farber as a witness for trial."

in the late summer of 2009. His ultimate diagnosis was that the mass was a benign neuroma, possibly induced by stress or due to heredity, but in no way caused by formaldehyde or mold exposure. Additionally, he investigated the cause of Wright's recurring bloody sputum. Dr. Spector was unable to find the source of this blood, and he testified that there is no causal link between that bloody sputum and formaldehyde/mold exposure.[8]

## II.     Argument & Citation to Authority

### A.     Dr. Miller is not Qualified to Render Opinions in this Case

Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." According to the Advisory Committee Notes to Rule 702, "whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier of fact." The Fifth Circuit has previously recognized that expert testimony should be excluded if the court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge."[9] The inquiry is thus twofold: (1) whether the expert is qualified, and (2) whether such testimony will assist the trier of fact.[10]

---

[8] *See* Spector report, dated 9/21/09, attached as Ex. G; Deposition of Dr. Spector, dated 10/29/09, p. 105; 128-29; 164, attached as Ex. H.

[9] *Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir.1990).

[10] *Kiger v. Plaisance Dragline and Dredging Co., Inc.*, 2006 WL 3844995, *1 (E.D. La.,2006).

Although Dr. Miller is board certified in Internal Medicine, Pulmonary Disease, and Clinical Pharmacology, he has not worked with patients in the past four years.[11] He now works as a venture capitalist and currently serves as president of Mediphase, a company that is involved in biotech investments.[12] Since the early 1990s, the overwhelming majority of his work – 80-90% – has been on the business side, not the clinical side, of medicine.[13] In the 1990s, his clinical work was limited to teaching medical students internal medicine, usually just one afternoon a week.[14] He has not published regularly since the early 1990s.[15] When he did publish, it was primarily pharmacology publications.[16] He has not written any articles on formaldehyde and has not had any experience in reviewing formaldehyde-related diseases, stating, "I don't recall dealing with formaldehyde in the past."[17]

As this brief review demonstrates, Dr. Miller is no longer in the business of being a clinical physician but has instead shifted his focus to venture capitalism. He no longer sees patients or publishes regularly, and he has no experience with formaldehyde-related issues. Forest River

---

[11] *See* Deposition of Dr. Miller from Fleetwood bellwether, dated 9/22/09, p. 14:7-18, attached as Ex. I.

[12] *Id.* at 12 (describing Mediphase).

[13] *Id.* at 14-18 (in early 1990s, clinical work encompasses 10-20% of his time); 18:11-19:9 (around 1996, the clinical side of his work remained at 10-20%, and the other part was decision support for physicians); 23:19-24:7 (in 1997, his clinical work remained constant at 10-20%).

[14] *Id.* at 19.

[15] *Id.* at 22.

[16] *Id.* at 23.

[17] *Id.* at 23; 45.

submits that Dr. Miller does not possess the requisite expertise to assist the jury in evaluating the causative effect of formaldehyde and/or mold and its impact on Lyndon Wright's health.[18]

Moreover, Dr. Miller has not even examined all the relevant material available to him in this case, and, consequently, he cannot form a valid opinion as to the source of Wright's alleged medical conditions. For instance, he did not examine Wright's work records or examine the possibility of alternate chemical exposures there.[19] He did not review any of the material safety data sheets for those chemicals that Wright works with in connection with his job as a maintenance engineer at the City of New Orleans and Hyatt hotel.[20] He never reviewed Wright's pharmacy records and did not examine all possible side effects of those medications.[21] Therefore, although Dr. Miller opines that a "completed exposure pathway" existed with regard to formaldehyde in the trailer, he has never

---

[18] In *Easson v. Velsicol Chemical Corp.*, Dr. Miller sought to provide testimony regarding an increased risk of cancer. 1991 WL 220955 (E.D. La. 1991). The court did not allow him to testify, expressing concerns over Dr. Miller's qualifications to opine regarding cancer:

> Dr. Miller is not an expert in either oncology or pathology. Miller's opinion as to the cause of [the plaintiff's] death was formed without consultation with oncologists or other cancer specialists. Dr. Miller's experience with cancer occurred during his residency when he assisted in a study of the immune system as affected by smoking and asbestos. Dr. Miller does not routinely treat cancer patients, nor has he ever treated a patient with a colon cancer of the type that affected [the plaintiff].

*See Easson* at *2, citing *Christophersen v. Allied-Signal Corporation*, 939 F.2d 1106 (5th Cir.1991). As in *Easson*, Dr. Miller's opinions should be excluded here. His opinions regarding Wright are based on clinical experience that ended years ago, and he had no prior familiarity with the state of formaldehyde research prior to being retained by plaintiff's counsel for the Fleetwood bellwether trial.

[19] *See* Ex. C, Deposition of Dr. Miller, dated 11/10/09, p. 54-55.

[20] *Id.* at 56-57.

[21] *Id.* at 77-80.

6

performed a complete analysis of other potential exposure pathways. This methodology is improper, as he has failed to rule out other potential causes of Wright's current symptomology. Accordingly, the Court should strike Dr. Miller's testimony due to both his lack of expertise and improper methodology.

**B.     Dr. Miller's Testimony is Not Relevant.**

Expert testimony is not exempt from the requirement of Federal Rule of Evidence 402 providing that "[e]vidence which is not relevant is not admissible."[22]  Under the Federal Rules of Evidence, admissibility is predicated on more than just logical relevance; rather, legal relevance is paramount: "Although relevant, evidence may be excluded if it probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ... or needless presentation of cumulative evidence."[23]  In determining legal relevance under Rule 403, the trial judge has broad discretion and is authorized to balance the probative value of the evidence against its prejudicial effect.[24]

It is the plaintiff's burden to prove causation under the Louisiana Products Liability Act.[25] The plaintiff must prove causation through medical testimony that it is more probable than not that the subsequent injuries were caused by the product.[26]  In a toxic tort case, the plaintiff must prove

---

[22]   *Kiger v. Plaisance Dragline and Dredging Co., Inc.*, 2006 WL 3844995, *1 (E.D. La., 2006).

[23]   Fed.R.Evid. 403.

[24]   *See United States v. Johnson,* 558 F.2d 744 (5th Cir. 1977); *see also United States v. Maceo*, 947 F.2d 1191 (5th Cir.1991).

[25]   *Maranto v. Goodyear Tire & Rubber Co.*, 650 So. 2d 757, 759 (La. 1995).

[26]   *Kemp v. Metabolife Int'l, Inc.*, No. 00-3513, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004); *see also Hutchinson v. Shah*, 648 So. 2d 451, 452 (La. Ct. App. 1994) ("[w]hen the

both general causation and specific causation -- and must do so with competent expert testimony.[27] General causation deals with whether the substance at issue can cause certain diseases in people in general.[28] Specific causation focuses upon whether the substance was in fact the cause of the ailments or symptoms in the particular patient.[29] Not only is expert medical testimony required to establish causation, but, in a toxic tort case, the plaintiff must also present evidence of the harmful level of exposure to the chemical, and knowledge that plaintiff was exposed to that level.

Although discussed more fully in Forest River's Motion for Summary Judgment on causation, plaintiff has failed to coordinate both general and specific causation testimony to support any of his claims. Although Dr. Williams ascribes a causative relationship between formaldehyde and several ailments, her findings do not include a general causation link between formaldehyde and the exacerbation of chronic rhinosinusitis. Conversely, Dr. Miller, the only specific causation expert remaining who supports Wright's theories, opines that the **only** causative effect of Wright's exposure to formaldehyde is exacerbation of chronic rhinosinusitis.[30] Accordingly, there is no shared specific/general causal link sufficient to support Wright's claims.

---

conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required").

[27] *Knight v. Kirby Inland Marine Inc.*, 483 F.3d 347, 351 (5th Cir. 2007).

[28] *Kemp*, 2004 WL 2095618, at *3 (citing *Pick v. Am. Med. Sys., Inc.*, 958 F. Supp. 1151, 1164 (E.D. La. 1997)).

[29] *Pick*, 958 F. Supp. at 1164.

[30] Deposition of Dr. Miller, p. 113-14, attached as Ex. C.

Due to plaintiff's failure to satisfy his burden of proof, Forest River requests that the Court exclude any and all testimony from Dr. Miller, as it is irrelevant and immaterial as there is no corroborative general causation testimony.

**C.     In the event Dr. Miller is allowed to testify, his opinions should be limited to those dealing with the exacerbation of Wright's rhinosinusitis.**

Assuming Dr. Williams did in fact provide a sufficient general causation link between formaldehyde and the exacerbation of Wright's rhinosinusitis, which is specifically denied, Dr. Miller's testimony should be limited to that topic alone. In his deposition, Dr. Miller was clear: the only cause-effect relationship (specific causation) he found was that between formaldehyde and the exacerbation of rhinosinusitis. He testified:

> Q   Let me ask you this. In your final conclusion in your October 2nd report, you state, "In summary, it is my professional opinion that, within a reasonable degree of medical probability, the exposure to formaldehyde emissions during his approximately 28 months of residence in the FEMA trailer significantly exacerbated Mr. Lyndon Wright's rhinosinusitis," correct?
> A   That's correct.
> Q   Is that the only opinion that you hold in this case?
> A   That's the only one certainly stated here, yes.
> Q   And so if called upon to testify, the only causal link that you can draw to any of Mr. Wright's symptomatology is that you believe exposure to some level of formaldehyde caused an exacerbation of his rhinosinusitis?
> A   That's what's stated here, yes.[31]

---

[31] Deposition of Dr. Miller, p. 113-14, attached as Ex. C.

> \* \* \* \*
>
> Q   I notice that there's no reference to pulmonary disorders in your report. Is it a true statement that you didn't diagnose Mr. Wright with any pulmonary disorder?
> A   Let me be clear and see if I understand what you mean. Mr. Wright certainly has some pulmonary symptoms. Is that what you mean?
> Q   My question, again, may be inartful, but I'm simply asking, did you diagnose him with any pulmonary disorder?
> A   With a specific pulmonary diagnosis, I think is what you mean?
> Q   Yes.
> A   I did not.
> Q   Other than rhinosinusitis, did you diagnose any other condition, syndrome or other medical issue with respect to Mr. Wright?
> A   He has a number, obviously, of other illnesses that I believe are not relevant here, but the answer to your question is, putting those aside, no.[32]

At trial, Dr. Miller should be precluded from offering testimony on any medical conditions outside of the exacerbation of rhinosinusitis. He should not be allowed to offer any opinions on the effect that formaldehyde and/or mold had on Wright's asthma[33], rashes, nocturnal dyspnea, bloody mucous, or any other medical condition allegedly suffered by Wright. His report candidly admits that, with respect to these other conditions, "limitations in the medical record and toxicological

---

[32] *Id.* at p. 118-19.

[33] Dr. Miller admitted that he never provided a specific pulmonary diagnosis for Wright. Deposition of Dr. Miller, p. 118, attached as Ex. C.

evidence prevent establishment of a causal association [to formaldehyde] at this time."[34] As a result, Miller, if permitted to testify, should only be allowed to offer opinions on formaldehyde's alleged causal link to the exacerbation of rhinosinusitis, nothing more.

Furthermore, all of Dr. Miller's opinions related to Wright's alleged exposure to mold in the trailer should be excluded in their entirety, since Dr. Miller admits that the scientific literature does not support the causal link between mold exposure and Wright's alleged ailments:

> Q   All right.  Let's talk a little bit about the October 2nd report.  On Page 6 of the report, just above the paragraph wherein you list the complaints that Mr. Wright had, you state that "Mr. Wright was likely exposed to various fungal species while living in the trailer.  Exposure to fungi is associated with exacerbations of upper and lower airways disease, but limitations in the literature do not warrant a causal association."
>       Can you tell me what you meant by that, Doctor?
>    A   Well, very simply, that he was likely exposed to fungi.  Now, we know what the fungi were, you know, a year and some time after he left the trailer.  We can't know with certainty what they were prior to.  And there certainly is -- There's no question about a literature existing on fungal toxins' effects on the respiratory tract.
>       But in my understanding, that literature is not definitive at this point.  There's a big literature.  It's not exactly clear what does what yet, so that's why I was hesitant to draw any conclusions at that point.
>    Q   Okay.  When you say it does "not

---

[34] *See* Miller report, dated 10/2/09, p. 7, attached as Ex. B.

11

>    warrant a causal association," is what you're saying that if you were called upon to testify, your testimony would be that more probably than not there was no causal association between exposure to fungi in Mr. Wright's case and any of the symptoms he's complaining of?
>    A   I wouldn't put it that way. I would say based on limitations in the literature, we can't comment one way or the other.
>    Q   Okay. You cannot say more probably than not that fungi caused any of the problems that Mr. Wright is complaining of?
>    A   Right.[35]

In sum, any opinions offered by Dr. Miller outside of those concerning formaldehyde's alleged link to Wright's rhinosinusitis must be excluded. This testimony would only serve to confuse the jury's understanding on the causation issues at play in the case. Forest River requests that, in the event Dr. Miller is allowed to testify, he be limited to a discussion of the one cause-effect relationship described in his report, the exacerbation of rhinosinusitis.

## CONCLUSION

For the foregoing reasons, Forest River respectfully requests that the Court exclude the testimony of Dr. Lawrence Miller, or, in the alternative, limit his testimony in the manner described above.

---

[35] Deposition of Dr. Miller, p. 106-08, attached as Ex. C.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (La. Bar Roll No. 6154)
JASON D. BONE (La. Bar Roll No. 28315)
CARSON W. STRICKLAND (La. Bar Roll No. 31336)
GIEGER, LABORDE & LAPEROUSE, LLC
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana  70139-4800
Telephone:  (504) 561-0400
Facsimile:  (504) 561-1011
ATTORNEYS FOR FOREST RIVER, INC.

## **C E R T I F I C A T E**

I hereby certify that on the 9th day of February, 2010, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone