UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 SECTION: N(5) |
| This Document Relates to: *Lyndon T. Wright. v. Forest River, Inc., et al*, Docket No. 09-2977 | | * * * | JUDGE ENGELHARDT: MAG: CHASEZ |

*************************************************************************

### DEFENDANT FOREST RIVER, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN COMMENTS TO THE JURY

**MAY IT PLEASE THE COURT:**

Forest River, Inc. (hereinafter "Forest River") has moved this Court to exclude certain comments that Forest River anticipates may be made to the jury in this case. Those comments, which are irrelevant and will unduly prejudice Forest River if made before the jury, include:

1. References to (1) jurors', or others', status as taxpayers in connection with (2) FEMA's use of federal tax funds in purchasing, distributing, or storing FEMA EHUs in response to Hurricanes Katrina and Rita.

2. References to the residents of FEMA EHUs as "victims."

3. References to shortages or substitutions of construction materials relating to units procured by FEMA.

4. References that the travel trailer industry was "plagued" with formaldehyde problems in the 1970s.

5. References to Dr. Wedner practicing medicine without a medical license.

6. References to Forest River trailers which were not constructed using low formaldehyde-emitting ("LFE") materials.

7. Any references to building codes.

8. References to leukemia.

9. References to the November 2008 report by the Lawrence Berkeley National Laboratory.

## LAW & ARGUMENT

Under the Federal Rules of Evidence, only relevant evidence is admissible. Fed. Rule Evid. 402. Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Brookshire Bros. Holding, Inc. v. Total Containment, Inc.*, Civ. No. 04-1150, 2007 WL 2491807, *2 (W.D. La. Aug. 30, 2007); Fed. Rule Evid. 401. The Court, however, may still exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. Rule Evid. 403.

**I.   Plaintiff should not be permitted to appeal to the jurors as taxpayers.**

Forest River requests that plaintiff's counsel refrain from any references to jurors', or others', status as taxpayers in connection with FEMA's use of federal tax funds in purchasing, distributing, or storing FEMA EHUs. In the closing arguments of the *Alexander* bellwether trial, plaintiffs' counsel attempted to incense the jurors' anger towards the defendants by referencing various persons' – including the jurors' – status as taxpayers:

> If those trailers weren't dangerous, would there
> be 30,000 of them sitting in a field? Any taxpayer – any
> taxpayer – should be appalled at that. Absolutely appalled.
> And they're still spending money.
> …
> I'm a taxpayer. The judge is a taxpayer. The
> case manager is a taxpayer. The court reporter is a taxpayer.
> The clerk's a taxpayer. Many people in this room are
> taxpayers. And I know you're all taxpayers. You should be
> appalled. You should be absolutely appalled. That is not
> right.
> …
> They laughed all the
> way to the bank. And guess who's left holding the bag? The
> federal government.
> Who is the federal government anyway? We're the
> federal government. We're the taxpayers. We pay the taxes.
> We bought those trailers. We bought a bunch of junk is what we
> bought.

Transcript of Alexander proceedings, September 24, 2009, attached hereto as Ex. A, p. 73-75.

This type of "golden rule" argument is improper and specifically prohibited in this circuit. Fifth Circuit courts have forbidden counsel to explicitly request a jury to place themselves in the plaintiff's position, explaining that "such arguments encourage the jury to decide the case on the basis of personal interest and bias rather than on the evidence." *See, e.g., Whitehead v. Food Max*, 163 F.3d 265, 278 (5th Cir. 1998) (internal citations omitted).

Other courts have held that appeals to jurors as taxpayers are improper. *See, e.g., Byrns v. St. Louis County*, 295 N.W.2d 517, 521 (Minn. 1980) ("An appeal by counsel that is aimed primarily at the self-interest of a juror is improper, including an appeal aimed at the jurors' interests as taxpayers."); *City of Springfield v. Thompson Sales Co.*, 71 S.W.3d 597, 600 (Mo. 2002) ("[S]uch remarks necessarily have the effect of making the jurors tax conscious and are designed 'to operate

upon the selfinterest of such taxpayers.'"). In some cases, these remarks have even been grounds for a new trial. *See City of Columbia v. Myers*, 294 S.E.2d 787, 788 (S.C. 1982); *City of Springfield v. Thompson Sales Co., supra.*

The taxpayer references in the *Alexander* trial were clearly intended to encourage the jurors to decide the case based on personal concerns over their bank accounts and tax bills, not the evidence and law presented. These comments are irrelevant, inflammatory, and should be prohibited.

## II.     Plaintiff should not be referred to as a "victim."

Forest River requests that plaintiff's counsel and their witnesses refrain from referring to plaintiff as a "victim" – whether they are referring to him as a "victim of Hurricane Katrina" or a "victim" related to any possible Forest River action. The term "victim" has no probative value.[1] It connotes one who has been maliciously harmed by another, and using that term to refer to plaintiff as a victim of any action by Forest River, particularly if used in conjunction with the phrase "a victim of Katrina," is only meant to invoke sympathy from the jury. Such an argument is meant to distract the jury from the facts presented in the case and instead focus their attention on the plights in plaintiff's life. Under FRE 403, courts will consider whether the proffered evidence "is calculated to arouse jury sympathy of the unfairly prejudicial genre" that could cause the jury to punish a defendant for actions for which it is not on trial. *See Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 355 (5th Cir. 1995). Forest River asks that this case be decided by a jury based as much as possible on a presentation of the facts, as opposed to argument intended to invoke sympathy for someone displaced by a natural disaster.

---

[1] *See, e.g., State v. Wigg*, 889 A 2d 233, 236 (Vt. 2005).

**III.     Plaintiff should not be permitted to reference shortages of materials or substitutions of products in any of Forest River's travel trailers.**

Forest River requests that plaintiff's counsel and plaintiff's witnesses refrain from referring to shortages or substitutions of products in FEMA emergency housing units.  While some manufacturing defendants may have experienced these issues, Forest River did not.  There is absolutely no evidence that (1) any product was substituted by Forest River in constructing the travel trailers used by FEMA post-Katrina or that (2) any materials were substituted in the construction of the Wright unit itself.  In fact, Doug Gaeddert, Forest River's general manager, testified that Forest River did not have any problems with materials from their regular suppliers:

> Q  All right.  Was there a concern back in September
>    of 2005 that there could be a material shortage
>    with regard to Forest River's suppliers in response
>    to the hurricane production?
> A  It was -- yes.  We looked ahead and contacted
>    vendors immediately because of that concern.
> Q  Right.  And, in fact, in the bid itself, didn't it
>    say that other sources of products would be
>    permitted?
> A  What -- what page are you at?
>       MR. GIEGER:  Where are you looking at?
> Q  We'll move on to something else while he's looking
>    for that.
>       But it was a concern that there would be
>    material shortages.
> A  We anticipated a big demand.  We wanted to make
>    sure that we were covered, so we checked very
>    early.
> Q  And as a result of that, did Forest River have to
>    change some of their material suppliers for these
>    orders?
> A  No.
> Q  You were able to fill the orders with your standard
>    Adorn and Patrick and your regular suppliers.
> A  Yes.

Ex. B, Deposition of Doug Gaeddert, August 6, 2008, p. 117.

Forest River respectfully requests that plaintiff and his witnesses be precluded from making any references to either material shortages or substitution of materials in any Forest River unit.

**IV.     No testimony, evidence, or argument should be admitted that Forest River has been "plagued" by formaldehyde gas problems.**

Forest River requests that plaintiff not be permitted to argue that Forest River has been "plagued" by formaldehyde gas problems. Plaintiff's designated expert in wood science and technology, Stephen Smulski, Ph.D., commented in his report that the manufactured housing industry has been "plagued" with formaldehyde gas problems – attempting to connect the current lawsuit, involving a travel trailer, with issues pertaining to HUD-Code manufactured houses from the 1970s and early 1980s:

> [t]he current formaldehyde gas problem in the FEMA-supplied travel trailers could have been prevented had Forest River, Inc. (and FEMA) employed the mitigation techniques detailed in the extensive body of literature documenting an identical formaldehyde gas problem that plagued HUD-Code manufactured houses in the 1970s and early 1980s for identical reasons.[2]

Dr. Smulski has not quantified in either his expert report or his deposition testimony the number of complaints the travel trailer industry in general, or Forest River in specific, received. In his deposition in the Fleetwood trial, he testified that he bases this opinion on his authorship of an article from 1987 titled "Formaldehyde Indoors."[3] In that article, he does not use the word

---

[2] *See* Ex. C, expert report of Dr. Smulski, dated 10/1/09, p. 11.

[3] *See* Deposition of Stephen Smulski, dated 10/20/09, p. 69-70, attached as Ex. D. The article is attached as Ex. E.

"plagued."[4] In fact, his article does not specifically address Forest River or any other manufacturer.[5] He states in that article that "[i]n the mid-1970's the Consumer Product Safety Commission (CPSC) began to receive complaints from owners of new mobile and manufactured homes."[6] Based on this statement, and the fact that Smulski did not cite anything specific to complaints received by Forest River[7], he should not be permitted to characterize historical complaints in the 1970s and 80s relating to formaldehyde in its manufactured housing units as a "plague" of formaldehyde issues. This unfounded characterization of the travel trailer industry does not have any bearing on the claims at issue in this lawsuit. Dr. Smulski's comments are irrelevant and would only serve to prejudice Forest River; accordingly, they should be excluded.

**V.     Plaintiff should not be permitted to make any reference to Dr. Wedner practicing medicine without a medical license.**

As this Court is aware, plaintiff's counsel in the *Dubuclet* proceeding made much of Dr. Wedner's medical licensing status in the state of Louisiana. In the event plaintiff seeks to re-urge this issue in *Wright,* Forest River requests that the Court exclude any references to Dr. Wedner's licensing. For all the reasons stated in Fleetwood's Opposition to Plaintiff's Motion to Strike Dr. Wedner [Rec. Doc. 4854] and in Fleetwood's subsequent Opposition to Plaintiff's Motion for Reconsideration on Motion to Strike Dr. Wedner [Rec. Doc. 5817], the Louisiana state medical licensing statute is not at issue in this federal court. Dr. Wedner's licensing status in the state of

---

[4] *Id.*

[5] *Id.*

[6] *See* Ex. E, Smulski article at p. 10.

[7] Indeed, Forest River was not in existence in the 1970s or 1980s.

Louisiana has absolutely no relevance to any fact at issue, and it certainly has no impact on his ability to offer his well-qualified expert opinions in this case. Plaintiff's counsel only seeks to introduce such evidence in order to cast personal aspersions on Dr. Wedner. Such references would serve only to mislead and confuse the jury. Therefore, Forest River respectfully requests that plaintiff be precluded from (1) making any reference to Dr. Wedner's lack of a medical license in the state of Louisiana and (2) suggesting that Dr. Wedner has committed an illegal, immoral or unethical act by examining Wright or the other bellwether plaintiffs.

## VI. Plaintiff should not be permitted to reference that other Forest River trailers were constructed using non-LFE materials.

Forest River requests that plaintiff not be allowed to reference the fact that some Forest River EHUs may have been constructed using non-LFE (*i.e.*, "regular") materials. There is only one EHU at issue in this case – the EHU inhabited by plaintiff Lyndon Wright. **The parties have specifically stipulated that Wright's trailer was constructed using only LFE materials**. *See* Joint Stipulation of Fact, Rec. Doc. 8334.

Accordingly, plaintiff should not be allowed to discuss the wood products used in other trailers and whether these wood products were LFE or non-LFE. Any such reference would be completely irrelevant and would serve only to mislead or confuse the jury by diverting their attention from the issue of this case – whether plaintiff's unit was unreasonably dangerous. Therefore, Forest River respectfully requests that plaintiff be precluded from referencing Forest River's use of non-LFE materials in other trailers.

**VII.    Plaintiff should not be permitted to reference that his unit was not compliant with certain building codes**.

Forest River requests that plaintiff not be permitted to offer any testimony that asserts that (1) certain building codes applied to the Wright trailer or (2) that the Wright trailer failed to comply with those codes.

A more thorough analysis of this issue can be found in Forest River's Motions in Limine on plaintiff's experts Lagrange, Mallet and Ritter. Forest River hereby incorporates the arguments made in those Motions *in extenso.* However, a brief summary is provided below.

Plaintiff's building scientist, Al Mallet, has concluded that the National Electrical Code (NEC), International Building Code (IBC), International Residential Code (IRC), the City of New Orleans Building Code, and the American Society of Heating, Refrigerating and Air Conditioning Engineers (ASHRAE) standards all applied to the plaintiff's EHU. *See* Mallet expert report, p. 128, Section IX, A & B, attached Ex. F. Paul Lagrange, plaintiff's HVAC and ventilation expert, has opined that the City of New Orleans Building Code and IRC applied to the EHU. *See* Lagrange expert report, p. 75, attached as Ex. G. Ervin Ritter examined various ventilation and insulation issues with the unit's HVAC system; although his report does not identify any code aside from NFPA 1192,[8] he issued the blanket statement that "all building codes which were in effect prior to the construction/manufacture of this trailer should be applicable." *See* Ritter expert report, p. 22, attached as Ex. H.

Each of these assertions is false and not supported by any evidence produced in this case. For instance, Mallet's sole research into the issue was a brief email exchange with Johnny Odom,

---

[8] Forest River concedes that NFPA 1192 does apply to the Wright travel trailer.

the chief building inspector at the City of New Orleans, in January 2010 (after Mallet's expert report was written).  Odom told him that the building code inspections normally done by the City were "suspended," and FEMA was allowed to conduct its own inspections of the unit.  *See* Ex. I*,* Depo of Al Mallet, dated 1/12/09, p. 20-21.  Mallet performed no research into how municipal building codes interact with federal property.  *Id.* at 245.  Plaintiff has produced no evidence to show that FEMA required trailers to comply with IBC, IRC or the City of New Orleans.

Further, Paul Lagrange admitted that he did not know what training is necessary to determine whether certain codes apply to home construction.  *See* Deposition of Lagrange, p, 46-47, attached as Ex. J.  He performed no factual or legal research as to whether these codes did in fact apply to FEMA supplied travel trailers or even travel trailers in general. *Id.* at 48.  In fact, Lagrange originally thought 2003 building codes would have applied to this trailer, resulting in the need for Al Mallet to point out that the 2000 code applied instead.  *Id.* at 41-43.  Lagrange made no inquiries as to whether the City actually applied the Building Code to FEMA trailers post Katrina.  *Id.* at 49-50. He never reviewed any articles dealing with the application of building codes to the construction of travel trailers.  *Id.* at 244-46.

Even if one assumes that the Code did indeed apply, a fact which Forest River vehemently denies, Lagrange never inquired as to whether the City waived building code requirements in the wake of Katrina.  *Id.* at 252.[9]  In fact, Forest River's own experts have confirmed with officials at

---

[9] Lagrange also failed to examine the question of whether the FEMA travel trailer procurement specifications required adherence to building codes.  Lagrange assumed that the FEMA spec requirement that the units comply with "U.S. regulatory requirements from any governing agency" translated into a requirement to comply with the New Orleans Building Code and the International Residential Code.  *See* Ex. J, Depo of Lagrange, p. 58-59.
   However, the FEMA specs make no explicit reference to compliance with any building code.  *See* Ex. K, FEMA Specs.  Further, Lagrange reviewed none of the depositions of various

the City of New Orleans that the various building codes referenced by plaintiff's experts do not apply. *See* Ex. L, Report of Liberty Building Forensics Group, dated 10/29/09, p. 16.

Plaintiff has not reliably demonstrated that these standards were applicable to the EHU in which he resided. Thus, any reference to these standards would be irrelevant, misleading, and highly prejudicial to Forest River and should be excluded.

**VIII.    Plaintiff should not be permitted to reference formaldehyde's alleged link to leukemia.**

Plaintiff's counsel and witnesses should not be permitted to reference leukemia and its alleged association with formaldehyde. On January 27, 2010, two days prior to the close of discovery, plaintiff provided a "supplemental affidavit" from his general causation expert, Dr. Patricia Williams. In this affidavit, Dr. Williams asserts that formaldehyde causes leukemia. Prior to this report, none of plaintiff's experts, including Dr. Williams, ever referenced leukemia in any report or deposition. As Forest River had no notice that leukemia was at issue in this case until two days prior to the close of discovery, Forest River has filed a motion to strike this supplemental report and incorporates those arguments here *in extenso*.[10]

---

FEMA personnel who discussed the meaning and requirements embodied in the FEMA specs or what the term "industry standard" required. *See* Ex. J, Depo of Lagrange, p. 276-77. Finally, on a common sense level, it seems highly unlikely that the FEMA specs would require the manufacturers to construct units with particular city building codes in mind. Given that these units were to be deployed by FEMA throughout the Gulf Coast region, it would be virtually impossible for travel trailer manufacturers to tailor their products to meet the standards of each and every city throughout Louisiana, Mississippi, Texas, etc. in which they would be located.

[10]  *See* Rec. Doc. 10944.

Should that motion be granted, plaintiff's counsel and witnesses should be barred from referencing leukemia at trial.[11]  Because any discussion of cancer is highly inflammatory, it is critical that evidence of cancer only be admitted when the proper evidentiary guidelines are followed.  *See Smith v. A.C. & S., Inc.*, 843 F.2d 854, 859 (5th Cir. 1988).  Assuming Dr. Williams' supplemental report is excluded, there should be no reference made to the novel opinions sought to be introduced therein.  Accordingly, all references to leukemia before the jury should be excluded as such issue is not properly a part of this trial.

IX. **Plaintiff should not be allowed to refer to the findings of the November 2008 report by the Lawrence Berkeley National Laboratory.**

Several experts retained by plaintiff refer to the findings contained in the November 2008 report issued by the Lawrence Berkeley National Laboratory (LBNL) entitled *Aldehyde and Other Volatile Organic Chemical Emissions in Four FEMA Temporary Housing Unit*.  *See, e.g,* Ex. C, expert report of S. Smulski, p. 9.  That report examined levels of formaldehyde inside of four never-occupied FEMA trailers.  *Id.*  However, as plaintiff's expert Dr. Stephen Smulski concedes, **none of the travel trailers examined by the LBNL were manufactured by Forest River.**  *Id.*  Accordingly, the findings in that report have no relevancy to the Forest River product at issue in this litigation, and all references to that report should be excluded.

## CONCLUSION

For the foregoing reasons, Forest River respectfully requests that this Honorable Court issue an Order excluding references to the matters described above.

---

[11] Should the Court deny the motion to strike, Dr. Williams should be the only witness allowed to discuss leukemia and its alleged link to formaldehyde, as no other witness has ever discussed that issue in this case.

        Respectfully submitted,

        /s/ Jason D. Bone
        ERNEST P. GIEGER, JR. (La. Bar Roll No. 6154)
        JASON D. BONE (La. Bar Roll No. 28315)
        CARSON W. STRICKLAND (La. Bar Roll No. 31336)
        GIEGER, LABORDE & LAPEROUSE, L.L.C.
        One Shell Square
        701 Poydras Street, Suite 4800
        New Orleans, Louisiana 70139-4800
        Telephone: (504) 561-0400
        Facsimile: (504) 561-1011
        *ATTORNEYS FOR FOREST RIVER, INC.*

## **C E R T I F I C A T E**

      I hereby certify that on the 9th day of February, 2010, a copy of the foregoing Memorandum in Support was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

        /s/ Jason D. Bone
        JASON D. BONE