```
                                                                  1

  1                UNITED STATES DISTRICT COURT
  2                EASTERN DISTRICT OF LOUISIANA
  3
  4    IN RE:  FEMA TRAILER        MDL NO. 1873
  5    FORMALDEHYDE PRODUCTS       SECTION N(4)
  6    LIABILITY LITIGATION        JUDGE ENGELHARDT
  7    (This document is related
       to "Lyndon Wright, et al.
  8    v. Forest River, Inc.,
       et al.")
  9
 10                       *   *   *
 11
 12             VIDEOTAPED DEPOSITION OF ALEXIS
 13    MALLET, JR., 103 BRANDBERRY CROSSING,
 14    LAFAYETTE, LOUISIANA 70598, TAKEN AT THE
 15    OFFICES OF FRANK D'AMICO, ATTORNEY AT LAW,
 16    622 BARONNE STREET, NEW ORLEANS, LOUISIANA
 17    70112, ON THE 12TH DAY OF JANUARY, 2010.
 18
 19
 20    REPORTED BY:
 21       CATHY RENEE´ POWELL, CCR
          PROFESSIONAL SHORTHAND REPORTERS
 22       (504)529-5255
 23    VIDEOGRAPHER:
 24       MICHAEL BERGERON
          PROFESSIONAL SHORTHAND REPORTERS
 25       (504)529-5255
```

1    temporary housing units supplied by FEMA?
2        A.   Yes, sir.
3        Q.   Who did you contact?
4        A.   The chief building inspector.
5        Q.   Who was that?
6        A.   The same name -- I don't recall.
7    I have to dig it up.  It's the same name --
8    the man that Liberty contacted, the chief
9    building inspector.
10       Q.   And did he give you the same
11   response as to whether the building codes
12   were, in fact, applied to travel trailers
13   that he gave to Liberty?
14       A.   The response that I got was that
15   the building codes were not waived, they
16   only suspended the inspections.
17       Q.   By "suspending the inspections,"
18   what did you take that to mean?
19       A.   That the contractor was to do his
20   own inspections.
21       Q.   Do you have a document from the
22   chief building inspector of the City of New
23   Orleans that says that the building codes
24   were not waived for these particular units?
25       A.   Yes, sir.

```
 1         Q.   Let me mark this as the next
 2   exhibit, Exhibit 3.
 3              Now, Mr. Mallet, what I have
 4   marked as Exhibit 3 is, in fact, the e-mail
 5   chain between you and Mr. Odom; is that
 6   correct?
 7         A.   Yes, sir.
 8         Q.   And this e-mail chain begins on
 9   January 8 of this year, correct?
10         A.   I guess.  Yes, sir.
11         Q.   Do you have a copy of your own?
12         A.   No, sir.
13         Q.   All right.
14         A.   This is the only copy that I have.
15         Q.   All right.
16         A.   Yes, sir.
17         Q.   And the response that you got was
18   on January 11, which was yesterday, correct?
19         A.   Yes, sir.
20         Q.   So Mr. Odom related to you that
21   "We did not waive code requirements, we did
22   allow FEMA to have their own inspections,"
23   correct?
24         A.   Yes, sir.  I misspoke, I said the
25   contractors, it's FEMA.
```

```
1    the -- whatever agency performs the
2    inspection for compliance with plans and
3    specifications on the project.
4         Q.   But you haven't done any research
5    specifically into the issue of how municipal
6    building codes interact when something is
7    federal property.  Am I correct?
8         A.   To the extent that -- is it
9    GSA? -- writes a more stringent plan, more
10   stringent set of specifications or
11   requirements, and typically the professional
12   of record utilizes the building codes,
13   building standards for their standard of
14   care in producing their design.
15        Q.   Have you seen any document, rule
16   or regulation that specifically addresses
17   the question of how municipal building codes
18   interact with federal property, specifically
19   federal property?
20        A.   No.
21        (Brief discussion between reporter and
22   witness off the record.)
23        Q.   Now, in talking about the
24   air-conditioning unit on the Lyndon Wright
25   unit, I believe you said you have problems
```