UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION:  N(5) |
| | | * | |
| This Document Relates to:  *Lyndon T. Wright. v.* | | * | JUDGE ENGELHARDT: |
| *Forest River, Inc., et al*, Docket No. 09-2977 | | * | |
| | | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### FOREST RIVER INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. EDWARD H. SHWERY

**MAY IT PLEASE THE COURT:**

Defendant, Forest River, Inc. (hereinafter "Forest River") respectfully submits this memorandum in support of its Motion to Exclude the Expert Testimony of Dr. Edward H. Shwery. Forest River contends that Dr. Shwery's opinions are unreliable, irrelevant, and should be excluded in their entirety.

### BACKGROUND

This action stems from plaintiff's alleged exposure to formaldehyde while residing in a travel trailer provided by FEMA as emergency housing.  Plaintiff has asserted claims for emotional damages as a result of his occupancy of the Forest River trailer.  (Rec. Doc. 1862).  To support these claims, he retained psychologist Dr. Edward Shwery to testify regarding his mental and emotional issues.  Dr. Shwery issued two reports based on separate examinations of Wright.  His first report,

dated July 21, 2009, addressed Wright's alleged depression, stress and anxiety. Dr. Shwery's testing

indicated that Wright was in the "mild range of anxiety" and the "minimal range of depression."[1]

In his "Summary and Recommendations" section, Shwery wrote:

> [Lyn's] experience of living in the trailer leading to numerous medical symptoms and
> health concerns has become an area of private worry and distress. Lyn is concerned
> that his health is deteriorating and the thought of becoming disabled and dependent
> on others for his welfare is alarming to him. The bone density issues are particularly
> of concern, as well as the continued blood in his mucus when he coughs. It is not
> clear whether or not living in the trailer had any impact upon his bone density issues,
> but I am concerned that if the bone density problems increase, it is very likely that
> this man will develop chronic pain disorder.[2]

Dr. Shwery prescribed weekly outpatient psychotherapy therapy sessions for one year at a cost of

$15,600, monthly consultation between the psychologist and medical doctors for one year at a cost

of $3,600, and followup psychological re-examinations at $5,000 each.[3]

Dr. Shwery later examined Wright in September of 2009 and issued a supplemental report

on September 24, 2009. After re-administering anxiety and depression testing of Wright, Dr. Shwery

concluded that plaintiff now registered in the "severe range of anxiety" and in the "moderate range

of depression."[4] Dr. Shwery focused on a recent surgery Wright underwent to determine whether

a mass at the base of his tongue was cancerous. Wright had explained to Shwery that, for the last

several years, he had suffered from hemoptysis (spitting up blood) in his mucous upon waking in the

---

[1] *See* Shwery expert report, dated July 21, 2009, p. 7, attached as Ex. A.

[2] *Id.* at p. 9-10.

[3] *Id.* at p. 10.

[4] *See* Shwery report, dated September 24, 2009, p. 4, attached as Ex. B.

morning.[5]  Another expert retained by plaintiff in this case, ENT specialist Dr. Richard Spector, was concerned about this mass and biopsied it in July 2009 in an effort to determine the potential cause of this problem.[6]  In his subsequent expert report, Dr. Spector reached three conclusions: (1) the tongue mass was in fact a benign neuroma (2) the neuroma was not causally related to formaldehyde exposure and (3) most significantly in the context of the instant motion, he could not identify the source of Mr. Wright's current bloody sputum.[7]

The recent biopsy clearly dominated Mr. Wright's thoughts, as Shwery noted in his second report:

> The need for surgical intervention and examination of a biopsy of the mass has crystalized many of the psychological issues with which Lyn had been coping more successfully prior to the surgery in late July, 2009.
> ....
> Lyn reports that he recently has become more depressed and is experiencing increased mental anguish compared to his mental status when I saw him two months ago.  When I inquired of his recent increase in depression he stated, "The lump, it worries me.  Dr. Spector wondered if it might have been cancer, so far it's not clear what it is.  When the doctor found it I started to worry that what if it is cancer.  Since the biopsy, I still have bleeding.  He (Dr. Spector) isn't sure what's causing the bleeding and he wants me to come back in six weeks until he figures out what it is.[8]

Dr. Shwery recommended increased therapy as a result of Wright's heightened depression and anxiety, with a total cost of $65,400.[9]

_____

[5]  *See* Ex. B, Shwery report, dated September 24, 2009, p. 1; Ex. C, Affidavit of Dr. Spector, dated 9/21/09, p.1.

[6]  *See* Ex. C, Affidavit of Dr. Spector, dated 9/21/09, at p. 2.

[7]  *Id.*

[8]  *See* Ex. B, Shwery report, dated September 24, 2009, p. 1-2.

[9]  *See id.* at p. 5.

3

Forest River now brings this Motion in Limine to Exclude or Limit Dr. Shwery's testimony. Forest River asserts that Dr. Shwery's testimony is irrelevant, as there is no causal link between the Forest River trailer and Wright's mental health. Additionally, his opinions are unreliable because they are based on an inadequate review of medical records. Finally, Forest River submits that the findings in Dr. Shwery's second report are nothing more than the product of litigation-induced fear.

## LAW & ARGUMENT

### I.    Legal Standard

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir.2004); see *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

*Daubert* also cautions against admitting expert testimony in a case when the application of the expert's methodology to the facts of the case involves an impermissible leap of faith. The Supreme Court in *General Electric v. Joiner* acknowledged, "[t]rained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to the existing data only by the *ipse dixit* of the expert." *General Electric v. Joiner*, 522 U.S. 136, 146, 139 L. Ed. 508, 519 (1997). If there exists too great an analytical gap between the data and the opinion offered, the testimony is not reliable.

*Id*. *Joiner* reminds district courts that they must review the reasoning used by an expert in applying a given methodology to the expert's ultimate opinion.  It is imperative that an expert explains the "how" and the "why" behind his conclusions.  *See id*. at 144; see also *Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989) (stressing that the expert must state both the foundation for his opinions and the reasoning from that foundation).  Ultimately, when the evidence does not "fit" with the conclusion, the testimonial evidence is not reliable.  *Cavallo v. Star Enterprises*, 892 F. Supp. 756, 761-63 (E.D. Va. 1995), *aff'd in part and rev'd in part*, 100 F.3d 1150 (4th Cir. 1996).

## II.   Dr. Shwery's Opinions are Irrelevant

> I.   *Because he has not proven any present injury was caused by formaldehyde and/or mold, Wright cannot recover any mental anguish damages, and Dr. Shwery's testimony is therefore irrelevant.*

Expert testimony is not exempt from the requirement of Federal Rule of Evidence 402 providing that "[e]vidence which is not relevant is not admissible."[10]  Under the Federal Rules of Evidence, admissibility is predicated on more than just logical relevance; rather, legal relevance is paramount: "Although relevant, evidence may be excluded if it probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ... or needless presentation of cumulative evidence."[11]  In determining legal relevance under Rule 403, the trial judge has broad discretion and is authorized to balance the probative value of the evidence against its prejudicial effect.[12]

---

[10]   *Kiger v. Plaisance Dragline and Dredging Co., Inc*., 2006 WL 3844995, *1 (E.D. La.,2006).

[11]   Fed.R.Evid. 403.

[12]   *See United States v. Johnson,* 558 F.2d 744 (5th Cir.); *see also United States v. Maceo*, 947 F.2d 1191 (5th Cir.1991).

Moreover, it is the plaintiff's burden to prove causation under the Louisiana Products Liability Act.[13]  The plaintiff must prove causation through medical testimony that it is more probable than not that the subsequent injuries were caused by the product.[14]  In a toxic tort case, the plaintiff must prove both general causation and specific causation -- and must do so with competent expert testimony.[15]  General causation deals with whether the substance at issue can cause certain diseases in people in general.[16]  Specific causation focuses upon whether the substance was in fact the cause of the ailments or symptoms in the particular patient.[17] Not only is expert medical testimony required to establish causation, but, in a toxic tort case, the plaintiff must also present evidence of the harmful level of exposure to the chemical, and knowledge that plaintiff was exposed to that level.

Although discussed more fully in Forest River's Motion for Summary Judgment on causation, plaintiff has failed to coordinate both general and specific causation testimony to support any of his claims.  Although Dr. Williams ascribes a causative relationship between formaldehyde and several ailments, her findings do not include a general causation link between formaldehyde and

---

[13]  *Maranto v. Goodyear Tire & Rubber Co.*, 650 So. 2d 757, 759 (La. 1995).

[14]  *Kemp v. Metabolife Int'l, Inc.*, No. 00-3513, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004); *see also Hutchinson v. Shah*, 648 So. 2d 451, 452 (La. Ct. App. 1994) ("[w]hen the conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required").

[15]  *Knight v. Kirby Inland Marine Inc.*, 483 F.3d 347, 351 (5th Cir. 2007).

[16]  *Kemp*, 2004 WL 2095618, at *3 (citing *Pick v. Am. Med. Sys., Inc.*, 958 F. Supp. 1151, 1164 (E.D. La. 1997)).

[17]  *Pick*, 958 F. Supp. at 1164.

the exacerbation of chronic rhinosinusitis.[18]  Conversely, Dr. Miller, the only specific causation expert remaining who supports Wright's theories, opines that the **only** causative effect of Wright's exposure to formaldehyde is exacerbation of chronic rhinosinusitis.[19]  In other words, while both Drs. Williams and Miller believe Wright suffered some harm due to formaldehyde exposure, neither expert has found any common ground in the form of a shared specific/general causal link.

With regard to Dr. Shwery's opinions, Forest River notes that mental anguish damages are only recoverable where there is a physical injury.  *See Moresi v. State Through Dept. of Wildlife and Fisheries,* 567 So. 2d 1081, 1095  (La. 1990).  Additionally, damages for fear of developing cancer are only recoverable when that mental anguish results from the fear of developing a condition "as a result of a *present injury*."  *Smith v. A.C. & S., Inc.*, 843 F.2d 854, 858 (5th Cir. 1988) (emphasis added).

Wright has failed to provide sufficient evidence that he suffers from a present injury related to his alleged formaldehyde and/or mold exposure in the trailer.  By failing to carry his burden of proof with respect to these claims, Wright cannot recover for any mental anguish claims.  Even if one were to assume that Wright did prove that he suffered from the exacerbation of rhinosinusitis, Dr. Shwery has not ascribed any causative link between that condition and Wright's mental anguish claims.  Accordingly, Dr. Shwery's testimony is entirely irrelevant, will not assist the jury, and should be excluded.

*ii.  Dr. Shwery has failed to link Wright's mental anguish to his formaldehyde and/or mold exposure, and thus his testimony is irrelevant.*

---

[18]  *See* Expert report of Dr. Williams, p. 63-64, attached as Ex. D.

[19]  *See* Deposition of Dr. Miller, p. 113-14, attached as Ex. E.

A careful reading of Dr. Shwery's reports reveals that, while Wright may suffer from depression or anxiety, none of these mental conditions are related to his alleged exposure to formaldehyde and/or mold while residing in the unit at issue.

For instance, in Dr. Shwery's first report, he focused on Wright's health concerns over his osteoporosis.[20]  None of plaintiff's experts has ever linked Wright's osteoporosis to his alleged exposure to mold or formaldehyde.

In his second report, Dr. Shwery opined that Wright's recent neuroma and episodes of bloody mucous crystallized Wright's concerns over his health.[21]  Dr. Shwery was very specific about the causes of his current mental anguish:

> Q   The symptoms that he purportedly had while living in the trailer, he said to you that he initially related them to his prior health problems?
> A   Well, no, I think more what I saw was that he didn't have too much concern about them.  He would go to the doctor and take care of them.  But he thought that was all being taken care of, and then now to have this come up is what really triggered and crystallized some obsessions about it and some intense concerns, and he's now worried, "What's been going on with me?"  It's like "I thought it was one way.  Now I'm not so sure."
>           Another way of saying that is in the past, his defenses have handled those things, and the more recent medical developments have overrode his defenses and they have been over -- They haven't been sufficient to contain all of this.
> Q   So the development of a neuroma

---

[20]  *See* Ex. A, Shwery expert report, dated July 21, 2009, p. 9-10.

[21]  *See* Ex. B, Shwery report, dated September 24, 2009, p. 1-2.

was the item that was the straw that broke
the camel's back?

A    Yeah, I guess it -- The bleeding
and the fact that he wasn't getting
completely well would be one factor, and
then this biopsy, this neuroma comes up, and
he couldn't understand, he couldn't explain
it away.  I don't know that it was one.  It
was probably two or three things that
culminated in his defenses aren't working as
well as they used to.

Q    Let's make sure we got them all
established.

A    Okay.

Q    Development of the neuroma?

A    Yes.

Q    The biopsy of the neuroma?

A    Right.

Q    Bleeding?

A    Correct.

Q    That's the bleeding that he
reports bringing up some blood-colored mucus
at some point in time when he wakes up in
the morning?

A    Correct.

Q    Okay.  Anything else?

A    No.  I think it's that he started
to look back and say, "Boy, there was a
level, a heightened level of problems that
never went away."  I think it's more kind of
a clarity of perception that has developed
with him.[22]

Again, none of plaintiff's experts has ever related plaintiff's neuroma or bloody mucous – the

"straws that broke the camel's back" with regard to his alleged current state of mental health – to

Wright's formaldehyde and/or mold exposure.  In fact, Dr. Spector, plaintiff's expert, specifically

_____

[22]  Depo of Dr. Shwery, p. 73-75, attached as Ex. F.

9

found no causative link to exist between Wright's formaldehyde and/or mold exposure in the trailer and his neuroma and bloody sputum.[23]

All of Dr. Shwery's testimony regarding Wright's alleged mental anguish must be excluded, as none of the sources of Wright's mental health issues is causally related to his time in the Forest River trailer.

## III.   Dr. Shwery's Testimony is Based Upon an Inadequate Review of the Medical Records and is Unreliable

Dr. Shwery's testimony should also be excluded because his opinions lack a reliable foundation of evidence in this case.  He has not reviewed any of the deposition testimony in this case, including the deposition of Wright.[24]  He has not reviewed the records of Dr. Field, who previously treated Wright for depression since the early 2000s.[25]  Dr. Shwery did not even consult Wright's doctors to verify the assertions made by Wright:

> Q   "Increased and frequent coughing, headaches, and, 'My throat would get clogged up and I would wake up at night and have trouble breathing,'" correct?
> A   Correct.
> Q   And that's what he related to you?
> A   That's correct.
> Q   Again, did you look at his medical records to confirm whether these representations were accurate?
> A   No.  And I didn't call the doctors.
> Q   Now, that's a good point.  Have you spoken with any of his treating physicians during the period he lived in the trailer?

---

[23]  *See* Ex. B, expert report of Dr. Spector, dated 9/21/09, p.1-2.

[24]  *See* Ex. F, Deposition of Dr. Edward Shwery, p. 20.

[25]  *Id.*

A   No.  I made some calls.  I haven't been able to get ahold of them.

Q   Mr. Wright reported to you that even after seeking treatment from Uptown Nephrology, "his chest congestion continued and gradually worsened"?

A   That was his representation, that's correct.  That's how he reported it.

Q   Okay.  And then, "After three to four months in the trailer, dermatological problems developed with primarily rashes on his elbows, back of his neck, and upper back," correct?

A   That's what he said, yes.

Q   Do you have any documentation of any of those problems?  Did he have any photographs?  Did he have any documentation from a doctor that showed he had ever reported any of those problems?

A   No.  I don't have any of that.[26]

Dr. Shwery has not performed an adequate review of the materials in this case, and the Fifth Circuit has specifically criticized this approach.  In *Viterbo v. Dow Chemical Co.*, the Fifth Circuit affirmed the trial court's exclusion of an expert who relied solely on the medical history provided by the plaintiff.[27]   In *Viterbo*, the plaintiff alleged a variety of ailments due to a toxic exposure, including endogenous depression, depressive neurosis, essential hypertension, and allergies.[28]  The plaintiff's causation expert formulated his opinions using the oral history given by the plaintiff at his examination; however, the expert was unaware that the plaintiff had a family history of depression

---

[26]  Ex. F, Depo of Dr. Shwery, p. 106-07.

[27]  826 F. 2d 420 (5th Cir. 1987).

[28]  *Id.*

and hypertension.[29]  The Fifth Circuit found that the expert's "failure to take into account this family history seriously weakens this source as a foundation for the expert's opinion."[30]

Similarly, in *Lassiegne v. Taco Bell*, this Court excluded the expert testimony of a social worker who did not have a reliable basis for his opinions.[31]  In *Lassiegne*, the plaintiff alleged various physical and mental injuries after choking on and swallowing a chicken bone which was hidden in his soft taco.[32]  The plaintiff's social worker testified that he diagnosed the plaintiff with post-traumatic stress disorder as a result of the incident.[33]  However, Judge Vance found that the social worker's basis for his opinion – the oral history provided by the plaintiff – was unreliable.[34]  The Court noted that the social worker did not know the pertinent facts, specifically, that the plaintiff's brother suffered from depression, delusions, and cocaine dependency and that the plaintiff's mother committed suicide with his gun years earlier.[35]

Here, Dr. Shwery's failure to review the entire appropriate materials in this case should preclude him from testifying at trial.  One glaring example of his incomplete analysis can be found in Wright's complaints regarding erectile dysfunction.  In his first report, Dr. Shwery explains that, based on Wright's medical history, Wright never had erectile dysfunction problems prior to his time

---

[29]  *Id.* at 423.

[30]  *Id.*

[31]  202 F. Supp. 2d 512 (E.D. La. 2002)

[32]  *Id.* at 514.

[33]  *Id.*

[34]  *Id.* at 519-20.

[35]  *Id.*

in the trailer.[36]  Wright apparently told Shwery that, prior to his time in the trailer, he took Viagra and other erectile dysfunction medication to "enhance his sexual life," not for impotence.[37]

    This assertion, though, is simply not true.  Dr. Field, Wright's treating physician from 2000 to 2005, stated that Wright was specifically experiencing erectile dysfunction prior to Hurricane Katrina.[38]  He testified:

> Q.  Let me hand you the last note we have from July 12, 2005.  I will mark this as Exhibit 7.
>
>     Doctor, do you recognize that as a note from your file relating to contact from Mr. Wright?
>
> A.  Yes, it looks like it probably would have been.
>
> Q.  Would you relate to us what complaints Mr. Wright was making to your office as of that date in July of 2005?
>
> A.  Okay.  "Patient had a change in his bowel movements now for about three weeks.  Only gets gas. . . . **Also, he is experiencing erectile dysfunction in the a.m. and throughout the day**.  What do you suggest he does?  Should he see a urologist?  And if yes, who do you recommend?"
>
>     And I said, "Could see Dr. Neil Baum and preferably get his annual blood work repeated before he goes, like one month."
>
>     Then somebody says they called and there was no answer.
>
> * * *
>
> Q:  I want you to assume that

---

[36]  *See* Ex. A, Shwery expert report, dated 7/29/09, p. 5-6.

[37]  *Id.*

[38]  *See* Ex. G, Depo of Dr. Field, p. 101-03.

> Mr. Wright moved into a FEMA travel trailer
> on or about March of 2006.  And that he
> stated something to that effect.  If he told
> an expert in this case that he had not
> suffered from sexual dysfunction before that
> date, before March of 2006, you would
> disagree with that statement?
> * * *
>      A.   Yes, correct.[39]

In addition, Lyndon Wright's sister Michelle is a diagnosed schizophrenic.[40]  Although this type of information was clearly relevant to the plaintiff's claim in *Lassiegne, supra,* Dr. Shwery never references this fact.  As these examples demonstrate, Dr. Shwery does not have a sufficient grasp of the facts of the case, and he should therefore be prevented from testifying at trial.

## IV.   Dr. Shwery Does Not Sufficiently Address Wright's Pre-existing Mental Health Issues.

Additionally, Dr. Shwery fails to draw any meaningful distinction between Lyndon Wright's pre-existing depression and his current mental condition.   Dr. Field, Wright's treating physician in the early 2000s, diagnosed Wright with depression and prescribed Effexor for treatment.[41]  By October 2000, Dr. Field had prescribed Wright with the maximum dose of Effexor.[42]  Wright eventually took himself off of the Effexor despite Dr. Field's recommendation to the contrary.[43]

Forest River contends that Dr. Shwery's methodology and analysis are improper.  Rather than address Wright's pre-existing need for counseling due to depression, Dr. Shwery improperly implies

---

[39] *Id.* at 101-03 (emphasis added).

[40] *See* Ex. H, Deposition of Bobbie Wright, dated 1/5/10, p. 225.

[41] *See* Ex. G, Depo. of Dr. Field, p. 25.

[42] *Id.* at 33.

[43] *Id.* at 36-41.

14

that the entirety of Wright's current psychological care needs are due to his time in the trailer.  Such testimony is inaccurate, highly prejudicial and will undoubtedly confuse or mislead the jury.[44]  As such, Shwery's testimony should be struck in its entirety.  At a minimum, any testimony regarding the cost of future care costs should be struck, since Shwery has failed to distinguish Wright's pre-existing treatment needs form those related to the allegations in this case.

**V.     Dr. Shwery's Second Report is not based on a reliable methodology**.

Shwery's diagnosis of anxiety contained within his second report is the result of nothing more than litigation induced fear, and that any opinions in Dr. Shwery's second report are completely unreliable and should be excluded.

As discussed above, Dr. Shwery's first report found that Wright scored in the "mild range of anxiety" on the Beck's Anxiety Inventory, which Dr. Shwery himself opined was "very low."[45]  Similarly, the Plaintiff's score on the Beck's Depression Inventory-II test  was "very low and was in the minimal range of depression."[46]  *Id.*

Following this visit to Dr. Shwery, **Lyndon Wright attended the Gulf Stream bellwether trial and listed to one witness testify – Dr. Shwery.**[47]  Within a week of watching Shwery testify,

---

[44]  By failing to distinguish pre-existing from current mental conditions, Dr. Shwery has rendered his testimony irrelevant, as it does not assist plaintiff in meeting his burden of proof.  *See Frey v. Alfred*, 492 So. 2d 48, 51 (La. App. 1 Cir. 1986) (noting that, with regard to a pre-existing psychological condition, plaintiff bears the burden of proving the extent of damage caused by defendant's negligence).

[45]  *See* Ex. B, Shwery report, dated 9/24/09, p. 4.

[46]  *Id.*

[47]  When he was examined by Forest River's expert psychiatrist, Dr. Thompson, Lyndon Wright admitted that he attended the Gulf Stream bellwether trial to listen to Dr. Shwery testify.  *See* Ex. I, expert report of Dr. John Thompson, p. 8.

Wright returned to Dr. Shwery for a second psychological examination. Not surprisingly, Wright's depression and anxiety were found to have worsened; his score on the Beck's Anxiety Inventory placed him in the "severe range of anxiety," and his score on the Beck's Depression Inventory-II placed him in the "moderate range of depression."[48]

Shwery's second round of testing and second report are based on nothing more than litigation-induced fear. Forest River's expert psychiatrist, Dr. John Thompson, confirmed that Wright's decision to watch Dr. Shwery testify increased his anxiety levels.[49] Wright's attendance at the Gulf Stream trial is unrelated to actions of Forest River, and Dr. Shwery should therefore not be allowed to discuss any alleged mental trauma that allegedly existed after this event. The opinions contained in Dr. Schwery's second report should be struck in their entirety.

## CONCLUSION

Dr. Shwery's testimony should be excluded in this case. However, should he be allowed to testify, Forest River requests that his testimony be limited in the manner described above.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (6154)
JASON D. BONE (28315)
CARSON W. STRICKLAND (31336)
GIEGER, LABORDE & LAPEROUSE, LLC
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana  70139-4800
Telephone:  (504) 561-0400
Facsimile:  (504) 561-1011
ATTORNEYS FOR FOREST RIVER, INC.

---

[48] *See* Ex. B, expert report of Shwery, dated 9/24/09, p. 4.

[49] *See* Ex. I, expert report of Dr. Thompson, p. 14.

## <u>C E R T I F I C A T E</u>

I hereby certify that on the 9th day of February, 2010, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone