UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION:  N(5) |
| | | * | |
| This Document Relates to:  *Lyndon T. Wright. v.* | | * | JUDGE ENGELHARDT: |
| *Forest River, Inc., et al*, Docket No. 09-2977 | | * | |
| | | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### FOREST RIVER INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO LIMIT STEPHEN SMULSKI, PH.D.

**MAY IT PLEASE THE COURT:**

Defendant, Forest River, Inc., (hereinafter "Forest River") respectfully submits the following Memorandum in Support of its Motion in Limine to Limit the Expert Testimony of Stephen Smulski, Ph.D.

### FACTUAL BACKGROUND

This action stems from plaintiff's alleged exposure to formaldehyde while residing in a travel trailer provided by FEMA as emergency housing.  Plaintiff has retained Stephen Smulski, Ph.D. ("Smulski") to identify and describe the wood products used in the construction of the Forest River travel trailer at issue in this litigation.  *See* Expert Report of Stephen Smulski, September 29, 2009,

attached as Ex. A.  Dr. Smulski is self-professed expert in "wood science and technology."  *See id.*[1]

He participated in the destructive testing of Wright's trailer in August of 2009 and issued his final

report in late September 2009.  *See id.* at ¶ 14.  It should be noted that, on December 1, 2009, the

parties entered into a joint stipulation that all wood products in the Wright trailer were constructed

with low formaldehyde emitting ("LFE") wood products.  *See* Rec. Doc. 8334.

This Court has previously examined Dr. Smulski's credentials and opinions in both the Gulf

Stream and Fleetwood bellwether cases.  Thus, to the extent that Dr. Smulski's report in *Wright*

offers the same or similar opinions as those in prior cases, Forest River respectfully requests that the

Court strike them for the reasons already articulated.  Forest River will provide a brief summary of

those prior Orders, *infra*, for ease of reference.  However, Dr. Smulski has also issued additional

opinions in this case, each of which will be addressed in turn.  Forest River requests that the Court

strike these additional opinions for the reasons described herein.

## LAW & ARGUMENT

**A.      Applicable Law**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness

testimony. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or education, may testify thereto in the form of an
> opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the

---

[1]  Smulski is not an expert in civil engineering, chemistry, medicine, industrial hygiene,
emergency relief response, disaster relief response, toxicology, or epidemiology.  *See* Deposition
of Smulski from Gulf Stream bellwether, dated 6/10/09, p. 66-67, attached as Ex. B.  Nor is he
an expert in OSHA regulations or regulations offered by any governmental agency.  *Id.* at 68.  He
is not an expert in sociology, biology or statistics.  *Id*. at p. 71; 229-230.

testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.   The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002).   Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir.2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

*Daubert* also cautions against admitting expert testimony in a case when the application of the expert's methodology to the facts of the case involves an impermissible leap of faith.   The Supreme Court in *General Electric v. Joiner* acknowledged, "[t]rained experts commonly extrapolate from existing data.   But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to the existing data only by the *ipse dixit* of the expert." *General Electric v. Joiner*, 522 U.S. 136, 146, 139 L. Ed. 508, 519 (1997).   If there exists too great an analytical gap between the data and the opinion offered, the testimony is not reliable. *Id*.   It is imperative that an expert explains the "how" and "why" behind his conclusions.   *See id*. at 144; *see also Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989) (stressing that the expert must state both the foundation for his opinions and the reasoning from that foundation).   Ultimately, when the evidence does not "fit" with the conclusion, the

3

testimony is not reliable.  *Cavallo v. Star Enterprises*, 892 F. Supp. 756, 761-63 (E.D. Va. 1995), *aff'd in part and rev'd in part*, 100 F.3d 1150 (4th Cir. 1996).

**B.      Prior rulings regarding Dr. Smulski's testimony.**

As the Court will recall, both Gulf Stream and Fleetwood filed separate Motions in Limine to exclude certain portions of Dr. Smulski's testimony.  *See* Rec. Docs. 2349 & 6660.  The Court issued two Orders.  *See* Rec. Docs. 2800 & 7683.  Forest River contends that the following opinions in Dr. Smulski's expert report in *Wright* fall within the broad categories previously examined and excluded by the Court.  Consequently, these opinions should not allowed in the instant case.

**Expert report of Dr. Smulski, dated 9/29/09:[2]**

Paragraph 18

Dr. Smulski contends that, when the unit was installed, it was "converted to temporary housing that falls somewhere along the continuum between 'short term and recreational use' and a 'permanent dwelling.'"  He goes on to state that the use of the trailer by Wright as temporary housing for months or years was "a reasonably anticipated use given that this trailer was sold to FEMA for the purpose of temporarily housing persons displaced by natural disasters like hurricane Katrina."

In its prior Order (Rec. Doc. 2800, p. 3), the Court was clear that these sorts of opinions were inappropriate since they contained vague, potentially pejorative terms.  Further, there was no reason for Dr. Smulski, a wood products expert, to offer "expert opinions" on the nature of housing provided to plaintiffs.  Forest River requests that the Court similarly limit Dr. Smulski's discussion related to the anticipated uses of travel trailers following Katrina.

---

[2]  All references in these sections relate to various paragraphs from Dr. Smulski's expert report in *Wright*, attached as Ex. A.

<u>Paragraph 21</u>

Dr. Smulski offers opinions on the trailer's installation process for travel trailers and notes that bending or twisting can caused sealed joints in the walls, roof and floor to open.  In its prior Order, the Court stated that, "plaintiffs will be expected to make it clear to the jury that Dr. Smulski is *not* an expert on the installation of EHUs, and was not present when the bellwether plaintiffs' EHU was installed."  *See* Rec. Doc. 2800, p. 2.  Forest River asks that the same ruling apply here.

The Court went on to state that, "Dr. Smulski may testify . . . that during the process of installation of an EHU, 'the frame and exterior shell can bend and twist,' as a hypothetical observation."  *Id.*  While Forest River understands the rationale behind the Court's statement, Forest River nevertheless asks that this opinion be excluded as well.  Unlike the limited testing in the prior bellwethers, the Wright unit underwent complete destructive testing, during which the frame and exterior were examined.  Dr. Smulski should not be allowed to offer hypothetical opinions on the consequences of jacking, given the fact that (1) he is not an engineer and (2) testing was performed to address this precise issue.  Additionally, when examined on the issue, Dr. Smulski could not say whether the frame of the unit at issue had ever experienced any such condition:

> Q.  Let's look at paragraph 21 on page 7 of 39.
>     You state that "It is my understanding that during the process of installation that the frame and exterior shell can bend and twist, causing sealed joints in the walls, roof, ceiling and floor to open."
>     Let me ask you this:  Do you have any knowledge that that, in fact, did occur with respect to the unit occupied by Lyndon Wright?
>     A.  I do not.

5

> Q.   "This can allow formaldehyde gas
> inside the wall and ceiling cavities to more
> easily enter the living space and increase
> the concentration of formaldehyde gas inside
> the trailer."
>      Did I read that correctly?
> A.   Yes.
> Q.   Do you have any indication that
> that condition did, in fact, occur in the
> unit occupied by Lyndon Wright?
>      A.   I do not.

*See* Ex. C, Deposition of S. Smulski, dated 1/29/10, p. 67-68.  Any discussion by Dr. Smulski of the

installation of the trailer or its effects on formaldehyde – topics which he admits are hypothetical and

not based on any supporting evidence – should be excluded.

<u>Paragraphs 23, 24, 25, & 28</u>

Forest River also requests that paragraphs 23, 24, 25, and 28, in which Smulski recites the

results of various testing reports on levels of formaldehyde, receive the same ruling as in the

Fleetwood and Gulf Stream cases – that it must be made clear that this testing was not performed

by him and is not his opinion.

<u>Paragraphs 33 & 35</u>

In paragraph 35 of his report, Dr. Smulski has opined that Forest River could have increased

the Wright unit's air exchange rate by installing a mechanical ventilation system to remove

contaminated indoor air and bring in fresh outdoor air.  This opinion is virtually identical to the

opinion issued by Dr. Smulski in his report for the Fleetwood bellwether.  Dr. Smulski also offers

opinions on the use of a mechanical ventilation system in paragraph 33.  In the Fleetwood bellwether

case, the Court ruled that "Dr. Smulski, as a wood science expert, may not testify regarding 'how'

the trailer could/should have been ventilated, as he does not appear to be qualified as an expert in

the fields of HVAC or travel trailer design."  Rec. Doc. 7683, p. 2.  The same ruling should be applied in *Wright*.

C.     **Additional Opinions Unique to *Wright*.**

       <u>**Paragraph 15 (Findings of non-LFE wood)**</u>

       In paragraph 15, Smulski details his findings as to the various wood products contained within the unit at issue.  Although he concedes that some products in the trailer are low formaldehyde emitting (LFE) materials, Smulski states that certain wall panels within the trailer are not LFE and emit "much more formaldehyde gas than LFE panels."[3]

       First, this vague statement on "regular" hardwood plywood should be excluded, as Dr. Smulski never quantifies the extent to which additional formaldehyde is emitted from "regular" wood.  **More importantly, however, the parties entered into a stipulation in this case which provides, "The unit occupied by Lyndon Wright was manufactured by Forest River using only low formaldehyde emitting products."**  *See* Rec. Doc. 8334.  While the distinction between LFE and regular wood may have been at issue in the Gulf Stream bellwether, this is not the case in *Wright*.  Because all parties have agreed that the Wright unit was built with LFE products exclusively, Dr. Smulski's testimony on regular wood in Paragraph 15 must be excluded.  Any discussion of "regular" wood in the Wright trailer is contrary to the stipulated facts of the case and cannot be admitted at trial.[4]

_____

[3]  The parties in this case have entered into a stipulation that certain components of plaintiff's trailer were manufactured using only low formaldehyde emitting wood products.  See, Joint Stipulation of Fact, R. Doc. 8334 at ¶2.  To the extent that Dr. Smulski opines otherwise, that testimony should be excluded.

[4]  Even if "regular" wood were installed in the trailer, Dr. Smulski admitted that he did not have the technical background to conduct testing to distinguish LFE wood from regular wood in the

**Paragraph 16 & 21 (Opinions as to water intrusion and the effects thereof)**

In paragraph 16 of his affidavit, Dr. Smulski notes that, at the time of his inspection, he observed that water had leaked into the trailer and then offers multiple conclusions as to the effects of the water intrusion:

> The intrusion of water allowed mold fungi to grow on some of the solid softwood wall framing, hardwood plywood panels, and softwood plywood subfloor at these locations. The intrusion of water allowed wood-destroying fungi to cause some of the solid softwood framing, hardwood plywood panels, and softwood plywood subfloor to rot at these locations. The intrusion of water into the wall cavity caused the relative humidity inside the wall to increase which in turn increased the release of formaldehyde gas from the hardwood plywood wall panels. Wetting of the hardwood plywood wall panels by water caused their moisture content to increase which in turn increased the release of formaldehyde gas from the wall panels.

In paragraph 21, Dr. Smulski adds the following statement that was not present in his affidavit in the Gulf Stream and Fleetwood trials:

> As noted in Item 16, the intrusion of water into the trailer allowed mold fungi to grow on some of its solid wood and wood composite products and allowed wood-destroying fungi to cause some of its solid wood and wood composite products to rot.

First, Dr. Smulski should be precluded from any discussion of mold inside the trailer. As detailed in the Motion for Summary Judgment on causation filed by Forest River and Shaw Environmental, Inc., plaintiff's mold claim is not supported by his own medical experts and should therefore be dismissed. Accordingly, Dr. Smulski, who has no expertise in mold testing or analysis, should be precluded from offering any testimony to suggest that mold existed inside the trailer. Such testimony would be highly prejudicial and misleading to the jury.

Furthermore, any discussion related to rotten wood inside the trailer should be excluded. Dr. Smulski observed the trailer in August 2009, over one year after plaintiff moved out of the trailer

Wright trailer. *See* Ex. C, deposition of S. Smulski, p. 24-27.

in July 2008.  During that time, the trailer was stored in a field in Melville, Louisiana – uninhabited,

unmaintained, and exposed to the elements.  Thus, any conditions observed at the time he inspected

the trailer are irrelevant since they are not indicative of those experienced by Wright.   Dr. Smulski

cannot identify when this damage occurred.  *See* Ex. C, depo of S. Smulski, p. 55; 59-60.  In fact,

plaintiff's formaldehyde testing expert, William Scott, testified that he could not relate any of the

mold present in the plaintiff's trailer, at the time of the inspection, to the time in which the Plaintiff

lived there:

> Q.    So let me ask my
> question again.
>        Is there any opinion contained in
> your report that says the level of mold or
> fungus contained within the Wright trailer
> as tested in August of 2009, that it would
> be comparable in any way to the level of
> mold which was in the trailer at any point
> between March of 2006 and July of 2008?
>        A.  No.

Deposition of William Scott, p. 76, attached as Ex. D.

Any conclusions drawn from the rot inside the unit are based on improper methodology and should

be excluded in their entirety.[5]

Finally, although this issue is also addressed in Forest River's Motion in Limine to limit the

testimony of plaintiff's expert Alexis Mallet, Dr. Smulski should not be allowed to comment on how

the wet wood in the trailer caused humidity, and thereby the rate of formaldehyde off-gassing, to

---

[5]   Similarly, in the case involving Fleetwood, this Court limited the testimony of Dr. Thomas
Fribley, as he testified that he did not know when water damage to the EHU occurred.  *See* Rec.
Doc. 8000.

    At a minimum, the Court should force Dr. Smulski to explain the circumstances behind
his inspection and reveal the time period the trailer sat in a FEMA storage lot.

increase.  These statements are purely speculative.  Neither Dr. Smulski nor any of plaintiff's other experts ever measured how these conditions actually increased formaldehyde levels inside the unit. *See* Ex. C, depo of S. Smulski, p. 69-72.  After a month of destructive testing, plaintiff's experts should not now be allowed to offer hypothetical conclusions for testing they could have done.[6]  Dr. Smulski's should not be allowed to offer opinions on how, for example, the wetting of the hardwood plywood wall panels lead to increased formaldehyde levels inside the unit.  These statements, which are based on no quantifiable measurement, are too speculative to be allowed at trial.[7]

**Paragraph 17 (Opinions regarding knowledge of Forest River)**

In paragraph 17 of his affidavit, Smulski cites the formaldehyde warning contained in the Forest River owner's manual.  Smulski then offers the following statement:

> The presence of this statement in the owner's manual confirms that Forest River, Inc. was aware that the concentration of formaldehyde gas in the air inside the trailer is influenced by the number of formaldehyde-emitting sources inside the trailer, the volume of the trailer, and the trailer's air exchange rate (i.e. ventilation).

Forest River avers that these conclusions are speculative, are outside Smulski's area of expertise, and invade the province of the jury.  Dr. Smulski, a wood-scientist, does not have a

---

[6]  Dr. Smulski admitted that he was free to conduct any testing he wished:

> Q.  Was there any portion of your
> testing protocol that you wished to perform
> that you were in any way precluded from
> performing in this case?
>     A.  No.

Ex. C, depo of S. Smulski, p. 30.

[7]  Paragraph 26 of Dr. Smulski's report also offers similar conclusions on how the levels of formaldehyde would have *hypothetically* risen due to conditions inside the trailer.  For the reasons discussed above, the opinions in paragraph 26 should be excluded as well.

10

sufficient evidentiary basis to extrapolate Forest River's knowledge regarding formaldehyde. Additionally, the question of Forest River's knowledge regarding the elements that Smulski claims affect formaldehyde concentration is irrelevant under the LPLA. As such, his statements in this area do not assist the trier-of-fact and should be excluded.

### Paragraph 29 (CARB standards)

In paragraph 29, Dr. Smulski includes a discussion of standards adopted by the California Air Resources Board (CARB) relating to LFE wood products. All of the opinions in this paragraph should be excluded, since these CARB standards became effective on January 1, 2009. Plaintiff moved out of his trailer in July of 2008, well before these standards were ever applicable. Also, the parties in this case have already stipulated that evidence related to subsequently passed ambient air standards would be excluded. *See* Rec. Doc. 11181 (adopting the Order from the Gulf Stream bellwether, Rec. Doc. 3069). This discussion of CARB standards is completely irrelevant to plaintiff's claims and would only serve to prejudice the jury. The statements made in paragraph 29 should be excluded.

### Paragraphs 31,33,& 35 (alternative travel trailer design)

In paragraphs 31, 33, and 35, Dr. Smulski offers numerous opinions on alternative designs that should have been adopted by Forest River. In paragraph 31, he notes that Forest River "had available to it alternative materials that, if used, would have emitted little to no formaldehyde gas." In paragraph 33, Dr. Smulski opines that Forest River "could have directed the companies who applied the overlays to the hardwood plywood that it did buy to apply an overlay to both panels' face and back rather than only on its face." In paragraph 35, he asserts that Forest River could have used a mechanical ventilation system in the event that alternative wood products were not available.

All of these opinions relate to alternative products and/or designs that should have been used by Forest River in constructing the Wright travel trailer. However, Dr. Smulski has not performed the requisite analysis, research, or testing to offer these opinions at trial. In *Seither v. Winnebago Industries, Inc.*, the court found that the trial judge abused his discretion in failing to grant a directed verdict as to the alternative design issue. In that case, there was no valid alternative design presented. 853 So. 2d 37 (La. App. 4 Cir. 2003). The expert "presented merely a concept that was untested, unengineered, and not presented to the jury in any fashion more than mere speculation." *Id*. at 41. The court also noted that the plaintiffs failed to present a risk/utility analysis of the proposed alternative design. *Id*. In that case, the expert presented an economic feasibility analysis, but it did not have a material quote or manufacturing labor factor. Although *Seither* does not address the admissibility of an expert's opinion directly, it certainly shows the factors that an expert must present in order to have relevant and helpful information for the jury.

Here, Smulski has not performed any risk/utility tests for the alternative designs he offers, nor has he tested these alternative designs. For instance, he suggests that alternative resins such as phenolic resin, could have been used as the binding agent on certain wood products. *See* Ex. C, depo of S. Smulski, p. 82. However, he has never performed a safety analysis of these alternative materials, nor has he studied whether such materials were available in sufficient quantities for Forest River's production needs.

> Q. You don't offer any opinion in your report
> that these alternate products are safer than what was
> being used in this trailer, you simply offer
> the opinion that they released less
> formaldehyde. Correct?
> A. Yes.

Q.   And you have not retrofitted a travel trailer with wallboard or hardwood plywood or any composite wood product bonded with an isocyanate resin to determine how that would impact air quality, have you?

A.   I personally have not done that, no.

Q.   Do you know if anyone has ever done that?

A.   I don't know if anyone has done that.[8]

* * *

Q.   Do you know the volume of wood product that would have been needed to supply Forest River for a year?

A.   No.

Q.   Do you know the volume of wood product that would have been required to supply the RV industry for a year?

A.   No.[9]

* * *

Now, Doctor, I have not read one of those documents before from the position of someone who was purchasing any of this type of composite wood products.  Where do these documents tell me the -- and you can just show them to me -- where do these documents tell me the quantities of the type of wood available bonded with non-UF resins?

A.   They don't.  They tell you that these products are available.

**Q.   So from review of those documents, you can't tell me whether I could have bought 10,000 sheets or only 500 sheets of a certain product?**

**A.   From these documents, no.**

**Q.   Do you have any documentary**

---

[8]  *See* Ex. C, depo of S. Smulski, p. 89.

[9]  *Id.* at 104-05.

13

> **evidence to say that I could go out and buy**
> **500,000 sheets of OSB or plywood or other**
> **types of product bonded with non-UF product**
> **in 2005?**
>     **A.   No.**[10]

Dr. Smulski has not performed an analysis of either the safety or availability of the alternative products listed in his report.  He does not know how much was needed by Forest River.  He does not know how much was available.  He does not know if these products were actually safer alternatives.  Accordingly, the Court should preclude him from offering any testimony regarding these alternative products at trial.

## CONCLUSION

As is detailed above, Dr. Smulski has attempted to give numerous opinions that are either outside of his area of expertise or unsupported by the evidence.  Forest River respectfully requests that the Court strike his testimony in the manner described above.

Respectfully submitted,

/s/  Jason D. Bone
ERNEST P. GIEGER, JR. (La. Bar Roll No. 6154)
JASON D. BONE (La. Bar Roll No. 28315)
CARSON W. STRICKLAND (La. Bar Roll No. 31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

---

[10]  *Id.* at 108-09 (emphasis added).

## **C E R T I F I C A T E**

I hereby certify that on the 9th day of February, 2010, a copy of the foregoing Memorandum in Support was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/  Jason D. Bone                                    
JASON D. BONE