UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N(5)<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO:<br>*Lyndon Wright v. Forest River, Inc., et al.,*<br>*L.L.C., et al.*, No. 09-2977 (E.D. La.) | MAGISTRATE CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### SHAW ENVIRONMENTAL, INC.'S MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE REFERENCES TO BUILDING CODES

**MAY IT PLEASE THE COURT:**

Shaw Environmental, Inc. (hereinafter referred to as "Shaw") respectfully submits this memorandum in support of its motion *in limine* to exclude at trial any testimony or evidence relating to building codes, including the Building Code of the City of New Orleans ("New Orleans Building Code"), the International Building Code ("IBC"), and the International Residential Code ("IRC"), because they are not relevant to the subject of this action and would pose a significant danger of jury confusion and unfair prejudice to defendants.

### FACTUAL BACKGROUND

At issue in this litigation is Plaintiff's alleged exposure to formaldehyde and mold while residing in an emergency housing unit ("EHU") – a travel trailer that was manufactured by Forest River, Inc. ("Forest River"), issued by the Federal Emergency Management Agency

("FEMA") to Plaintiff's mother, Bobbie Wright, and installed and briefly maintained by Shaw (through its subcontractors).

In support of his claims against Shaw, Plaintiff has submitted a report from Charles David Moore, who holds himself out as a structural condition assessment expert in this case.[1] Moore opined in his report that certain water leaks he observed in the Trailer[2] were most likely caused or made worse by the "improper jacking" of the Trailer.[3] Moore also concludes that the construction of the Trailer was "inadequate" considering its use for temporary residential occupancy.[4]

In reaching these findings, Moore considers numerous building codes in his report, including the New Orleans Building Code, the IBC and the IRC and concludes that these codes were violated. Moore offers no real explanation in his report as to why these codes apply other than simply to state that:

> The scope of the [New Orleans] building code is stated in section 101.2 as applying the International Building Code (IBC) (2000 edition) to the construction of every building or structure with the exception of one- and two- family dwellings, which shall comply with the International Residential Code (IRC). Chapter 4 of the New Orleans building code also refers to prefabricated and modular buildings, which are defined as 'structures transportable in one or more sections and which are built on a permanent chassis…' Therefore, this trailer should comply with either IBC or IRC.[5]

---

[1] A copy of certain excerpts of his report is attached hereto as Exhibit "A," Moore's October 2, 2009 Structural Condition Assessment for FEMA Travel Trailer Wright/Forest River, Inc. Trailer Melville, Louisiana ("Moore's Report").

[2] The only time Moore observed the Trailer was in August 2009, after it had been sitting unmaintained in a field in Melville, Louisiana, for a year.

[3] Moore's Report, p. 19, Exh. A.

[4] *Id*.

[5] *Id*., p. 13.

In applying these building codes, Moore determined that the wind-load and floor-load in the Trailer should have been designed to comply with the New Orleans Building Code, the IBC, and the IRC.[6] Because the Trailer did not meet these weight requirements, Moore concludes that the building codes were violated.[7]

Shaw anticipates that Plaintiff will attempt to introduce testimony at trial of alleged building code violations in an effort to support his various theories of recovery. Aside from pointing out the obvious – that travel trailers are not buildings – there is absolutely no evidence in the record of a causal connection between alleged violations of building codes and Plaintiff's alleged injuries. As such, any reference to building codes should be excluded because they are irrelevant and have no proper bearing on any issue in this case. Further, reference to building codes at trial will most certainly confuse the jury, prejudice defendants, and cause unnecessary delays in the trial of this case.

## LAW AND ARGUMENT

It is a basic precept of the Federal Rules of Evidence that in order to be admissible, evidence must first be relevant.[8] And pursuant to the Federal Rules of Evidence, to be relevant, evidence must have a "tendency to make some fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[9]

---

[6] *Id.*, pp. 13-15.

[7] *Id.*

[8] Fed. R. Evid. 402.

[9] Fed. R. Evid. 401.

Further, "even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[10] Evidence may also be unfairly prejudicial if it "may cause a jury to base its decision on something other than the established propositions in the case.[11] The Fifth Circuit has explained that "[a] motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds."[12]

The purpose of a motion *in limine* is to avoid the futile attempt to "unring the bell" when irrelevant or prejudicial evidence is offered and then stricken at the time of trial.[13] Because the evidence discussed above is not relevant, or because any tangential relevance it may have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and needless waste of time, it should be excluded.

---

[10] Fed. R. Evid. 403.

[11] *Carter v. Hewitt,* 617 F.2d 961, 972 (3rd Cir. 1980); *In re Ark-La-Tex Timber Co.,* 482 F.2d 319 (5th Cir. 2007).

[12] *O'Rear v. Fruehauf Corp.,* 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (internal quotation marks omitted). *See also Billiot v. Schlumberger N. Am.,* Civ. No. 06-11253, 2008 U.S. Dist. LEXIS 39049, at *5 (E.D. La. May 13, 2008) ("The purpose of filing a motion in limine to suppress evidence or to instruct opposing counsel not to offer it is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury with respect to matters which have no proper bearing on the issues in the case or the rights of the parties to the suit. It is the prejudicial effect of the questions asked or the statements made in connection with the offer of the evidence, not the prejudicial effect of the evidence itself, which a motion in limine is intended to reach.") (quoting *Bridges v. City of Richardson,* 354 S.W.2d 366, 367 (Tex. 1962)).

[13] *McEwen v. City of Norman, Oklahoma*, 926 F.2d 1539, 1548 (10th Cir. 1991).

### A. Building Codes are Irrelevant to Any Fact of Consequence in Plaintiff's Case.

1. <u>No Evidence Exists that Building Codes Apply to Travel Trailers on Blocks</u>.

Moore applies the New Orleans Building Code, the IBC, and the IRC in reaching his conclusion that the construction of the Trailer was inadequate. Moore's expert opinion in this regard is premised upon his belief that the Trailer was converted into a "building" simply because it was placed on "blocks" and used as emergency housing by Plaintiff.

> Q. When does a trailer stop being a trailer and become something that's governed by the building code?
>
> A. By the use of that trailer.
>
> Q. Okay. So if I intend to live in my trailer, even if I don't put it on blocks, then it's something covered by the building code?
>
> A. Yes, sir.
>
> Q. And that sort of situation would fail the building code, right?
>
> A. I believe so, yes.
>
> Q So it's the use of the thing as a residence that triggers the applicability of the code where the thing is, right?
>
> A I believe that's correct, yes.[14]

Moore offers no source or objective basis for his "personal belief" that the Trailer is a building for purposes of applying these various building codes. Further, Moore acknowledges that he has never had to determine whether building codes apply to travel trailers or any other objects.

> Q. Have you ever had to determine whether an object is governed by a building code, other than the opinions you've rendered in this litigation, the whole litigation?
>
> A. I'm not sure I completely understand what you're asking.

---

[14] Deposition of Charles David Moore, pp. 107-108, attached hereto as Exhibit "B."

5

> Q. Well, one of the things that you're saying in your report is that travel trailers, when they're put on blocks and lived in by people, are covered by the building code, right?
>
> A. Yes, sir.
>
> Q. Okay. My question is, other than in connection with the FEMA trailer formaldehyde litigations, have you ever had to determine whether an object falls under the building code?
>
> A. I've had to determine which building code or which codes that it would fall under but not whether it would not fall under a building code. Does that make sense?[15]

Moore also acknowledges that building codes typically do not apply to travel trailers.

> Q. You'd agree with me that travel trailers are not the sorts of objects that are normally governed by the building code, right?
>
> A. As a travel trailer, that's correct.[16]

The fact of the matter is that the City of New Orleans did not require that travel trailers meet the provisions set forth in the New Orleans Building Code, the IBC, the IRC, or any other building code. In an email from Johnny Odom, Chief Building Inspector of the City of New Orleans, to Forest River's expert Don Snell, Mr. Odom confirmed that any site referencing and zoning of the FEMA travel trailers did not fall under the enforcement of the City of New Orleans Building Department, including the New Orleans Building Code, the IBC, and the IRC.[17] Mr. Odom's comment is consistent with the fact that tens of thousands travel trailers were placed on blocks and used for emergency housing, without citation by New Orleans building officials. The

---

[15] *Id.*, p. 88.

[16] *Id.*, p. 89.

[17] See Deposition of Don Snell, pp. 40, 167-168, 170 and Plaintiff's Exhibit 20 thereto, attached hereto as Exhibit "C."

code enforcement personnel who worked for the city were hardly unaware that there was a multitude of trailers on blocks throughout the City. Those officials did not seek to stop or modify their installation; nor did they issue citations to the contractors. The fact that the relevant authorities knew about these trailers and did not seek to apply the code is proof that the code does not apply in the first place.

In sum, there exists no reliable evidence that suggests that building codes apply to the Trailer. This case involves a travel trailer, not a building. Building codes simply have no place in this litigation. Accordingly, any argument, document, evidence or testimony relating to building codes is irrelevant and, therefore, inadmissible.

        2.    <u>Even Assuming Building Codes Apply, a Purported Violation Would Not Affect Any Fact that is of Consequence in this Case.</u>

Plaintiff (through his expert Moore) suggests that the use of travel trailers as temporary housing units violates the New Orleans Building Code, the IBC, and IRC, because the units are not constructed to adequately comply with the wind-load and floor-load requirements contained therein. In other words, Plaintiff claims that the simple use of a travel trailer as temporary residential housing violates the building code. While it is not entirely clear to whom Plaintiff attributes this alleged violation, it is clear that neither Shaw nor Forest River had anything to do with the decision to use travel trailers as EHUs or to place them on concrete blocks. Those decisions were made solely by FEMA, and this Court has already ruled that the discretionary function exception bars Plaintiff's FTCA claims challenging FEMA's decision to purchase and use travel travelers as temporary emergency housing for Katrina disaster victims.[18]

---

[18]     Rec. Doc. No. 717, pp. 43-44.

Putting that issue aside, whether or not a building code's wind-load/floor-load weight requirements were satisfied has absolutely nothing to do with whether Plaintiff was actually exposed to unsafe levels of formaldehyde or mold. Moore admits that he has no opinions about formaldehyde or mold.[19] In fact, Moore testified that just because a travel trailer is not code compliant does not mean that an occupant will be harmed at all.[20]

Plaintiff has put forth no evidence that connects a building code violation to Plaintiff's alleged exposure to formaldehyde and/or mold while residing in the Trailer. Even Moore did not provide any opinion that a building code violation caused or contributed to Plaintiff's exposure to formaldehyde and/or mold. No other Plaintiff expert even mentions building code violations as a possible cause of Plaintiff's alleged injury. Accordingly, there is a complete lack of evidence, even in the form of opinion, that violations of a building code actually caused or contributed to increased levels of formaldehyde and/or mold in the Trailer. As such, any testimony or evidence relating to building code violations is irrelevant, and therefore should be excluded pursuant to Rules 401 and 402 of the Federal Rules of Evidence.

**B.    Any Conceivable Probative Value of Violations of Building Codes Is Substantially Outweighed by Its Danger of Unfair Prejudice.**

Here, any reference to building codes and alleged violations of building codes would be more confusing and distracting than helpful to the jury. If plaintiff were permitted to admit evidence of building code violations with respect to the construction of the Trailer, this would confuse the jury into thinking that: (1) the referenced building codes actually apply to travel

---

[19]    Moore Deposition, p. 253, Exh. B.

[20]    Moore Deposition, pp. 99-100, Exh. B.

trailers in the first instance; (2) Shaw somehow violated these building codes in its installation of the Trailer; and (3) these purported violations caused and/or contributed to Plaintiff's alleged exposure to formaldehyde and/or mold. Presumably Plaintiff wishes to discuss alleged building code violations in an effort to suggest that defendants did something wrong, in the hopes that the jury will overlook the lack of a causal connection between the alleged violation and the injury that Plaintiff claims. Shaw denies that it violated the building code in any way, but it submits that discussing the codes at all is a mudslinging tactic that would be unnecessary and confusing, and therefore should not be permitted. Under Rule 403, even if building codes were somehow relevant, the potential for unfair prejudice and confusion is too great, and evidence regarding them should be excluded.

## CONCLUSION

Plaintiff's reference to building codes is a red herring. This is a formaldehyde/mold exposure products liability case, not a building code violation case. Evidence of building codes or any alleged violations thereof should be excluded as both irrelevant and unfairly prejudicial under Rules 401, 402, and 403 of the Federal Rules of Evidence. For all the foregoing reasons, Shaw respectfully requests the Court to enter an order excluding evidence of building codes, and any testimony or argument regarding them, from the trial of this matter.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**


  /s/ M. David Kurtz
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**ATTORNEYS FOR DEFENDANT,
SHAW ENVIRONMENTAL, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2010, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.

  /s/ M. David Kurtz