# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA
# NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * | MDL NO. 1873 |
| | | | SECTION "N" (5) |
| | | * * | JUDGE ENGELHARDT |
| | | * | MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO | | * * | |
| *Lyndon T. Wright v. Forest River, Inc., et al*, Docket No. 09-2977; | | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S RESPONSE TO DEFENDANT FOREST RIVER, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE FAILURE TO WARN CLAIM

Plaintiff Lyndon T. Wright ("Plaintiff") respectfully submits this Memorandum in Opposition to Defendant Forest River, Inc.'s ("Forest River") Motion for Partial Summary Judgment as to the Failure to Warn Claim (Docket Entry No. 10937-2), and in support, would show:

## INTRODUCTION

Plaintiff has asserted claims against Forest River under the Louisiana Products Liability Act ("LPLA"). Specifically, Plaintiff claims that the Forest River unit at issue in this lawsuit, bearing VIN 4X4TSMH296C008992, occupied from March, 2006 until July, 2008, due to its construction, composition, design, and lack of warnings, exposed Plaintiff to dangerous levels of formaldehyde.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be granted if the pleadings, discovery, disclosure materials, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See F. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir.1995). A party moving for summary judgment "must demonstrate the absence of a genuine issue of material fact." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

"If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial." Harvey v. Toyota Material Handling, USA, Inc., No. 05-0561, 2007 WL 1115235 (W.D. La. April 13, 2007) (citing Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046–47 (5th Cir. 1996)). On a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. See Gillis v.

Louisiana, 294 F.3d 755, 758 (5th Cir. 2002).  "Factual controversies are to be resolved in favor of the nonmovant, 'but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'"  Harvey, 2007 WL 1115235 at *3 (citing Wallace, 80 F.3d at 1048); see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir.1996). If there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is a genuine issue for trial, and thus, summary judgment is inappropriate. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## DISCUSSION

I.  **FOREST RIVER HAD A DUTY TO WARN OF THE DANGERS OF FORMALDEHYDE IN THE TRAVEL TRAILERS AND IS NOT PROTECTED BY THE SOPHISTICATED USER DEFENSE**

Generally, the LPLA holds a manufacturer liable for damage caused by a characteristic of the manufacturer's product that renders the product unreasonably dangerous. See La. Rev. Stat. § 9:2800.54(A) (2009). A product is considered unreasonably dangerous when the manufacturer of the product fails to provide an adequate warning regarding a characteristic of the product that may cause damage, so long as that characteristic was present at the time the product left the manufacturer's control. See id.

However, this section also excepts manufacturers from the duty to provide such warning when "[t]he user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic." See id. § 9:2800.57(B)(2).  This is commonly known as the sophisticated user defense. See Mozeke v. Int'l Paper Co., 933 F.2d 1293, 1297 (5th Cir. 1991).  "'Sophisticated users' of a product may be presumed to know about the

danger because of their familiarity with the product." <u>Mallery v. Int'l Harvester Co.</u>, 690 So.2d 765, 768 (La. App. 3d Cir. 11/6/96). "A sophisticated user possesses more than a general knowledge of the product and how it is used." <u>Asbestos v. Bordelon, Inc.</u>, 726 So.2d 926, 955 (La. Ct. App. 1978) (finding shipyard employer not a sophisticated user of asbestos-containing insulation as it did not manufacture any insulation of its own and did not construct a final product). Under Louisiana law, "a manufacturer's duty to warn is precluded in situations when the purchaser has particular knowledge of or experience with the inherent dangers in the use of a product, i.e., a sophisticated user." <u>Mozeke</u>, 933 F.2d at 1297. "Whether a user is sophisticated is ordinarily a question of fact for the jury to decide." <u>Id.</u>

In one case, the Fifth Circuit reversed a trial court's finding that an employer was a sophisticated user as a matter of law even though the record showed that the employer had been using the product (ozone) in its manufacturing process for 55 years and this particular ozone generator for 12–13 years before the plaintiff discovered his injuries. <u>See</u> <u>Swope v. Columbian Chemicals Co.</u>, 281 F.3d 185, 206 (5th Cir. 2002). The *Swope* court held that experience with a device does not necessarily equate to knowledge. <u>See</u> <u>id.</u> at 208–09.

A.   **Forest River has failed to show as a matter of law that FEMA was a sophisticated user of travel trailers.**

1.   *Forest River has not shown, and cannot show, that FEMA is constructively charged with all of the knowledge of the United State government.*

Forest River has failed to show as a matter of law that FEMA was a sophisticated user of travel trailers. Forest River argues that FEMA was "keenly aware" of the issues related to formaldehyde levels in the indoor air, as this topic has been the subject of

federal regulation for decades.  See Rec. Doc. 10397-2 at 8.  Forest River goes further to argue that in the 1970s and 1980s, the U.S. Department of Housing and Urban Development ("HUD") set forth regulations dealing with formaldehyde in the ambient air of manufactured homes.  See id.  Forest River argues that FEMA has all of the institutional knowledge of the U.S. government.

The knowledge of the U.S. government as a whole, nor information in possession of other Federal agencies or FEMA officials other than those responsible for providing Plaintiff temporary emergency housing—*i.e.*, FEMA Individual Assistance Program officials in Louisiana or at FEMA Headquarters — is relevant to assessing whether the United States is liable. See U.S. v. Currency Totaling $48,318.08, 609 F.2d 210, 215 (5th Cir. 1980) (knowledge of custom agent not attributable to government because claimant failed to prove that agent had a duty to reveal information); Wyler v. Korean Air Lines, Inc. 928 F.2d 1167, 1172 (D.C. Cir. 1991) (where duty is owed by the FAA there is no basis for holding the government liable under the FTCA if the Air Force knew of the danger but the FAA did not—stating "[i]ndeed even within FAA imputation of knowledge between different FAA operations may not be justified"); U.S. v. Schiffer, 831 F. Supp. 1166, 1204 n.45 (E.D. Pa. 1993), aff'd, 31 F.3d 1135 (3d Cir. 1994) ("knowledge by other federal agencies such as the Army. . . cannot be imputed to the INS"); State v. Smith, 697 So.2d 889, 891 (Fl. App. 1997) (knowledge in possession of motor vehicle bureau cannot be imputed to revenue department).

Mooreoverver, the cases Forest River uses to support this alleged institutional knowledge of FEMA are inapposite.  The HUD regulations cited to by Forest River are directed to the emission of formaldehyde in manufactured housing (or mobile homes).

Travel trailers are not within the ambit of these regulations as travel trailers are not mobile homes. See 2009 Deposition of Douglas Gaeddert, 60:30-63:19 attached as Exhibit A. Forest River argues that under *U.S. ex rel. Finney v. Nextwave Telecom, Inc.* (a district court decision from the Southern District of New York), FEMA is charged with the knowledge of these HUD regulations. See 337 B.R. 479, 487 (S.D. N.Y. 2006); c.f. Lambert v. B.P. Products N. Am., Inc., No. 04-347-GPM, 2006 WL 924988 (S.D. Ill. April 6, 2006) ("The Court declines to hold that the United States is in every time and season a sophisticated purchaser.").

However, *Finney* does not stand for that proposition at all. In *Finney*, the United States of America was a plaintiff in a qui tam action where the court held that the United States, not any specific department or sub-agency thereof, was charged with the existence of a federal statute. See id. Those facts are distinguishable from the present situation where Forest river is asserting that FEMA, an agency of the U.S. government charged with handling national emergencies and disaster relief efforts, is charged with the knowledge of HUD, a separate agency charged with regulating housing.

In further support of Forest River's theory, it offers *Morgan v. Brush Wellman, Inc.*, where the Eastern District of Tennessee held that the United States was a sophisticated user of beryllium. See 165 F. Supp. 2d 704, 718 (E.D. Tenn. 2001). However, a closer reading of the facts of that case reveal that it, too, is distinguishable from the present case. In *Morgan*, the exposure to beryllium at issue occurred in the setting of a nuclear armaments facility operated by government contractors. See id. at 706. Beryllium is an essential component used in nuclear reactors and weapons, and is thus an integral part of numerous Department of Defense and Department of Energy

applications.  See id. at 709.  The context in which the claim arose is clearly within the purview of those agencies as the claim arose from exposure in a plant involved with the defense of the United States.  Thus, when the court stated, "the United States agencies and its contractors at Y-12 and K-25 have been and are sophisticated users of beryllium," the court was clearly referring to the agencies identified earlier in the decision and who contract work in this field at the Y-12 and K-25 facilities.  Id. at 718.  The court would not have envisioned that FEMA was to be charged with the intimate knowledge of the Departments of Energy and Defense regarding the properties of beryllium, nor did it state such a proposition.

Likewise, the Akin case cited by Forest River also fails to support Defendant's proposition.  See Akin v. Ashland Chem. Co., 156 F.3d 1030 (10th Cir. 1998).  In Akin, the Tenth Circuit found that the United States Air Force ("Air Force") was a sophisticated purchaser in a claim by Air Force employees related to low-level chemical exposure.  See id. at 1037.  The court based its finding on the ability of the Air Force to conduct studies and its extremely knowledgeable staff.  See id.  However, FEMA is by no means the size of the Air Force.  The Air Force has approximately 481,500 employees, while FEMA employees approximately 3,700 full-time employees and 4,000 stand-by disaster relief employees.[1]  Surely, the court cannot be understood to mean that an agency the size of FEMA, whose sole purpose is to provide disaster relief, has the same breadth of resources, ability to conduct studies, and knowledgeable staff as the United States Air Force.

---

[1] See U.S. Air Force Home Page, Air Force Personnel Center, http://www.afpc.randolph.af.mil/library/airforcepersonnelstatistics.asp (last visited Feb. 8, 2010); FEMA Home Page, About FEMA, Who We Are, http://www.fema.gov/ about/#0 (last visited Feb. 8, 2010).

Thus, all of the cases cited to by Forest River are distinguishable on their facts from the present case and in contravention of the greater weight of the law. Therefore, it cannot be argued with any persuasiveness /that FEMA is charged with having the institutional knowledge of the entire U.S. government.

> 2.    *FEMA did not have actual knowledge of the dangers of formaldehyde until 2006.*

Furthermore, FEMA did not gain actual knowledge about the dangers of formaldehyde in travel trailers until March 2006 as evidenced by the following testimony:

Deposition of FEMA's Kevin Souza (2008) relevant portions attached as Exhibit B.

- FEMA first became aware of formaldehyde health hazard in March 2006 (see p. 22:5–17);

- FEMA was not aware of formaldehyde-related complaints until March 2006 (see p. 26:13–16);

Deposition of FEMA's Kevin Souza (2009), relevant portions attached as Exhibit C.

- Believed trailers were safe at time of purchase (see pp. 30:17–31:16);

- First heard of formaldehyde concerns in March 2006 (see pp. 42:16–43:12);

Deposition of FEMA's Bryan McCreary, relevant portions attached as Exhibit D.

- Not aware of formaldehyde as an issue during trailer procurement (see p. 15:3–22);

- Not aware of formaldehyde complaints pre-Katrina (see p. 29:8–11);

Deposition of FEMA's David Garratt, relevant portions attached as Exhibit E.

- First became aware of formaldehyde complaint via Sierra Club report from K. Souza (see p. 38:1–10);

- No formaldehyde claims from residents of trailers from previous disasters (see p. 208:7–16);

Deposition of FEMA's Martin McNeese, relevant portions attached as Exhibit F.

- Prior to Katrina, not aware of any formaldehyde complaints associated with trailers (see p. 101:15–21);

Deposition of FEMA's Guy Bonomo, relevant portions attached as Exhibit G.

- With regard to FEMA's knowledge of formaldehyde, "We were as surprised as the applicants, you know. We had no idea." (see p. 19:16–18);

Expert Report of FEMA expert Michael Lindell, relevant portions attached as Exhibit H.

- FEMA Emergency Managers had no forewarning about formaldehyde in travel trailers from its experience providing temporary housing after previous disasters (see pp. 6–9).

  3.   *The relationship between Forest River and FEMA does not provide a basis for finding that FEMA was a sophisticated purchaser or user.*

Forest River asserts that its "extensive interaction" with FEMA provides a basis for finding that FEMA was a sophisticated user of travel trailers and thus knew or should have known of the dangers of the formaldehyde emitted from such trailers. See Rec. Doc. 10397-2 at 6. However, Forest River mischaracterizes and overstates the interaction between itself and FEMA. In support of its theory of this extensive interaction, Forest River relies on the request for proposal process whereby FEMA provided specifications to Forest River for the travel trailers to be used in future disasters. FEMA's specifications did not in any way address the safety requirements of the travel trailers other than to specify the required fire extinguishers and LP gas and smoke detectors. See FEMA Model Travel Trailer Procurement Specifications ("FEMA Specs") attached as Exhibit I. FEMA relied on the manufacturers for ensuring the

safety of the travel trailers in conformance with their intended use. See 2009 Deposition of David Garratt, 157:9 – 158:4, attached as Exhibit A.

Forest River also relies on its recommendations regarding the substitution of roofing materials and stoves models and FEMA's acceptance of these recommendations as evidence of the extensive relationship between the parties. See Rec. Doc. 10397-2 at 8. However, this exchange of suggested modifications merely highlights Forest River's superior position of knowledge over FEMA when it comes to the production and use of travel trailers and emphasizes the opportunity Forest River had to warn FEMA that the specifications FEMA had provided were unsuitable for the disclosed, intended use of the trailers: to provide housing to victims of future disasters. See FEMA Specs attached as Exhibit I. While Forest River found it appropriate to give FEMA other feedback regarding the FEMA Specs and to suggest modifications to ensure the travel trailers fit their intended use, and despite Forest River's knowledge as a manufacturer of manufactured housing (mobile homes) of the HUD standards regarding formaldehyde exposure in such homes, Forest River did not find it prudent to make any suggestions regarding the use of formaldehyde-emitting components in these travel trailers.

In arguing that Forest River and FEMA's allegedly extensive interaction provides a basis for finding that FEMA was a sophisticated user of travel trailers, Forest River further relies on the 2004 First Article Inspection made by FEMA specialist, David Porter. See Rec. Doc. 10397-2 at 7. Forest River implicitly asserts that its interactions with FEMA in 2004 were sufficient to create a relationship whereby FEMA and Forest River were "working closely together" on the development of the travel trailers. In reality though, Forest River met with one representative of FEMA on one occasion for a period of three hours. 2008 Deposition of Douglas Gaeddert, 41:2-

12, attached as Exhibit J; 2009 Deposition of Douglas Gaeddert, 147:19 – 149:23 and 196:10 – 197:19, attached as Exhibit A.  This single meeting between FEMA and Forest River cannot and should not be deemed as a matter of law to be the creation of a close working relationship between the parties.

Forest River contends that Porter's three-hour, one time visit to Forest River's manufacturing facility to tour the operation and inspect the prototype manufactured for FEMA provided FEMA with the "detailed knowledge" necessary to make FEMA aware of the danger of formaldehyde exposure in the travel trailers.  See id. at 12.  Defendant implies that through its opening of its books to allow Porter to examine the documentation associated with the trailer, FEMA gained either actual or constructive knowledge of the danger of formaldehyde exposure. See id.  However, Forest River failed to explain that the only way FEMA could have gained knowledge of these dangers would have been to sift through thousands of Material Data Safety Sheets on file looking for those associated with the specific travel trailer components that emit formaldehyde.  Forest River, in its brief, also fails to explain that this one three-hour inspection sums up the whole of Forest River's contact with FEMA.  See Deposition of James Albrecht, 21:12-16,2 attached as Exhibit K; Deposition of Elton Kiefer, 254:8-11, attached as Exhibit L; 2008 Deposition of Douglas Gaeddert, 41:2-12, attached as Exhibit J.  There was no additional communication between FEMA and Forest River as North American Catastrophe Services ("NACS") was the actual purchaser of those FEMA spec travel trailer units.  See Rec. Doc. 10397-2 at 11.  In fact, FEMA never purchased travel trailers directly from Forest River.  See Rec. Doc. 10397-2 at 11; 2009 Deposition of Douglas Gaeddert, 131:17–18 attached as Exhibit A.

Finally, Forest River points to FEMA's past use of travel trailers in 1992 post-Hurricane Andrew and following various disasters in the early 2000s as evidence of FEMA's alleged status of a sophisticated user. <u>See</u> Rec. Doc. 10397-2 at 6, 11. However, this prior use of travel trailers does not apply to the particular travel trailer at issue in this litigation because in June 2004, FEMA instituted a "new direction" for post-disaster relief housing by significantly changing its specifications for travel trailers. <u>See</u> Letter of Richard Spillane dated June 30, 2004 attached as Exhibit M; Facsimile Letter from NACS to Forest River dated July 1, 2004 attached as Exhibit N. Prior to Hurricane Katrina, Forest River only provided approximately 800 travel trailers produced in response to the new specifications. Thus, any alleged knowledge FEMA may have acquired through its prior use of travel trailers as post-disaster housing in 1992 or in the early 2000s is inapplicable to the travel trailer at issue.

Based on the foregoing reasons, there exist genuine issues as to material facts regarding whether FEMA was a sophisticated purchaser or sophisticated user of travel trailers such that Forest River was exempt, under section 9:2800.57(B)(2) of the LPLA, from providing FEMA warnings of the dangers of formaldehyde exposure in use of its travel trailers. Thus, Forest River's Motion for Partial Summary Judgment should be denied as a matter of law.

**B.**    **<u>Forest River has failed to show as a matter of law that NACS was a sophisticated user of travel trailers.</u>**

In addition to failing to show that FEMA was a sophisticated user of travel trailers such that Forest River was exempt from providing FEMA the warnings of the dangers of formaldehyde exposure in use of its travel trailers, Forest River has also failed to show, and cannot show, that the actual purchaser of the trailers, NACS, was a sophisticated user or purchaser. It is uncontroverted that NACS was the actual purchaser of the travel

trailers used to provide temporary, long-term housing to disaster victims. <u>See</u> Rec. Doc. 10397-2 at 11; 2009 Deposition of Douglas Gaeddert 131:17-18 attached as Exhibit A. Forest River, in fact, acknowledges it as "undisputed" that no contract existed between Forest River and FEMA. <u>See</u> Rec. Doc. 10936-2 at 9. Thus, even if FEMA is deemed a sophisticated user of the travel trailers, which Plaintiff strongly denies, NACS, who is not a manufacturer of travel trailers and is not a government agency allegedly charged with all of the institutional knowledge of the U.S. government, cannot be deemed to be a sophisticated purchaser exempt from warning under the LPLA.

"In all cases of products liability, including those of failure to warn, a manufacturer is presumed to know of its product's potential hazards." <u>Marshall v. Beno Truck Equip., Inc.</u>, 481 So.2d 1022, 1030 (La. App. 1st Cir. 1985). "In *Chappuis v. Sears Roebuck & Co.*, the Louisiana Supreme Court held that, "when the danger is known to the manufacturer and cannot justifiably be expected to be within the knowledge of users generally, the manufacturer must take reasonable steps to warn the user." <u>Chappuis v. Sears Roebuck & Co.</u>, 358 So.2d 926, 930 (La. 1978). Furthermore, "[t]he user must be warned concerning the potential dangers of a product, whether he be the purchaser or not, and it is the user who should be furnished instructions or warnings intended to prevent misuse." <u>Marshall</u>, 481 So.2d at 1030.

A seller has no duty to warn an ultimate user when intermediate purchasers are knowledgeable. <u>See</u> <u>generally</u> <u>Guidry v. Kem Mfg. Co.</u>, 693 F.2d 426, 430–31 (5th Cir. 1982); <u>see</u> <u>also</u> <u>Thibodaux v. McWane Cast Iron Pipe Co.</u>, 381 F.2d 491, 495 (5th Cir. 1967) (finding consulting intermediaries knowledgeable and thus manufacturer not under duty to warn intermediaries). Thus, it is axiomatic that when an intermediate purchaser is

not knowledgeable, the seller's duty to warn an ultimate user is not discharged. Forest River has not presented any facts that NACS, the actual purchaser of the travel trailers, was a sophisticated purchaser.

Thus, as Forest River has failed to show that NACS, the immediate purchaser, was a sophisticated purchaser, Forest River had a duty to warn NACS or the end-user residents of the travel trailers. Based on the foregoing, Forest River cannot show, as a matter of law, that there is no genuine issue of material fact surrounding NACS's knowledge or Forest River's duty to warn, and summary judgment is inappropriate.

## II.   THE WARNING PROVIDED BY FOREST RIVER WAS INSUFFICIENT TO WARN PLAINTIFF OF THE DANGERS OF THE PRODUCT

Forest River contends that, even if it was required to provide a warning of the dangers of formaldehyde exposure in use of its travel trailers, it satisfied this duty through the warning provided in its Owner's Manual for the travel trailers. However, the warning provided in the Owner's Manual, attached in relevant part as Exhibit O, is grossly insufficient in several regards.

The LPLA defines "adequate warning" as:

> a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either decline to use the product or, if possible, to use or handle the product in such a way as to avoid the damage for which the claim is made.

La. Rev. Stat. § 9:2800.54(A) (2009).

Forest River's warning provided in the Owner's Manual states:

> Certain building products such as particleboard, fiberboard, and hardwood plywood are manufactured with an adhesive containing urea-formaldehyde. These products emit a small quantity of formaldehyde into the air.

*       *       *

The concentration of formaldehyde in the indoor air depends on the quantity and emission rates of all emission rates of emitting products in the structure compared to the volume of indoor air and the fresh air ventilation rate. As with other indoor pollutants, ventilation should reduce formaldehyde levels.

WARNING: FORMALDEHYDE LEVELS IN THE INDOOR AIR CAN CAUSE TEMPORARY EYE AND RESPIRATORY IRRITATION AND MAY AGGRAVATE RESPIRATORY CONDITIONS OR ALLERGIES.

Rec. Doc. 10936-2 at 2.

Federal regulations regarding the use of formaldehyde emitting components require the following warning:

Important Health Notice

Some of the building materials used in this home emit formaldehyde. Eye, nose, and throat irritation, headache, nausea, and a variety of asthma-like symptoms, including shortness of breath, have been reported as a result of formaldehyde exposure. Elderly persons and young children, as well as anyone with a history of asthma, allergies, or lung problems, may be at greater risk. Research is continuing on the possible long-term effects of exposure to formaldehyde.

Reduced ventilation resulting from energy efficiency standards may allow formaldehyde and other contaminants to accumulate in the indoor air. Additional ventilation to dilute the indoor air may be obtained from a passive or mechanical ventilation system offered by the manufacturer. Consult your dealer for information about the ventilation options offered with this home.

High indoor temperatures and humidity raise formaldehyde levels. When a home is to be located in areas subject to extreme summer temperatures, an air-conditioning system can be used to control indoor temperature levels. Check the comfort cooling certificate to determine if this home has been equipped or designed for the installation of an air-conditioning system.

If you have any questions regarding the health effects of formaldehyde, consult your doctor or local health department.

24 C.F.R. § 3280.309.

First, the warning provided in the Forest River's Owner's Manual does not even mention the potential for long-term effects associated with the formaldehyde emitting

components in the travel trailers at issue. Thus, there is no way for an ordinary, reasonable user to contemplate this danger, as is required by statute. Forest River admits the Owner's Manual, warning included, was adopted in whole from a company bought by Forest River and that the warning was not modified or otherwise addressed by Forest River. See 2009 Deposition of Douglas Gaeddert, 147:15–148:22 attached as Exhibit A. Forest River's wholesale adoption of this warning without inquiry or research as to the accuracy or adequacy of the content of the warning make it unreasonable for Forest River to have relied on such warning to comply with the LPLA.

Moreover, the Owner's Manual itself, in the fine print of the "Foreword," states: "This recreational vehicle has been designed for short term and recreational use. It was not designed to be used as a permanent dwelling." Owner's Manual p. 4, attached as Exhibit O. Thus, any warning provided in this Owner's Manual does not contemplate the use for which the FEMA Spec units were designed for: to provide housing to victims of future disasters. See FEMA Specs, attached as Exhibit I.

Second, this warning is included on page 77 of 80 in the Owner's Manual, in a section entitled "Maintenance." In general, this placement does not lend itself to ease of discovery by a user, nor is its placement or content commensurate with the actual risks involved. Furthermore, the warning was only provided through the Owner's Manual, not affixed anywhere in the unit itself. This Plaintiff, specifically, did not receive an Owner's Manual when he moved in to his travel trailer. See Deposition of Lyndon Wright, 98:7-15, attached as Exhibit P. Thus, he received no warning at all. Delivery of the warning through affixing a warning sticker or label inside the individual travel trailers is not out of the realm of possibility. In fact, Forest River is required to provide just such

warnings for the units produced in California to comply with California Proposition 65. See Deposition of Jeffrey Burien, 180:7-19, attached as Exhibit Q.  Those warning labels are required to affix to the unit itself and must convey a specifically worded warning when any components are hazardous to the health of the user.  Given that Forest River produces some warning labels addressing dangers to the health of the user that are affixed to the trailer itself, it would be possible to deliver *all* such warnings in this manner, rather than relying on a user to happen upon the warning on page 77 of the Owner's Manual that the user may or may not receive.

Further, the method of delivery of the warning provided in the Owner's Manual did not ensure that the end user, a displaced disaster survivor in need of emergency housing, would even receive the warning.  As noted above, this Plaintiff did not receive an Owner's Manual, thus could not have known of the dangers of exposure to formaldehyde emitting components of the travel trailer.  Generally, the method of delivery of the Owner's Manual was to allow the delivery driver from Forest River to provide the manual and keys to the unit to NACS upon delivery of the unit, with the idea that these items would be provided to the end user at the staging area. Deposition of Jeffrey Burien, 228:1-20, attached as Exhibit Q.  However, Forest River knew that the actual purchaser, NACS did not take part in the delivery to the end user.  See 2009 Deposition of Douglas Gaeddert, 105:17–23 attached as Exhibit A.  In fact, Forest River did not know the actual process for how the Owner's Manual was delivered to the end user.  See id. at 104:21–106:3.  Moreover, Shaw, the company hired to stage the travel trailers and deliver them to the end user has stated that it did not know whether an Owner's Manual accompanied each of the units, nor was Shaw provided with any extra

manuals for distribution. See Deposition of Geoffrey Compeau, 190:22 - 191:5, See attached Exhibit R. It was unreasonable for Forest River to rely on these intermediaries, who were not and had no expectation of being knowledgeable of the risks of exposure to the formaldehyde emitting components of the travel trailers, to provide the warnings to the end user. See Mozeke, 933 F.2d at 1297 (citing Marshall, 481 So.2d at 1030) ("A Louisiana court has stated . . . that the user must be warned concerning potential dangers of a product, whether he be a purchaser or not, and it is the user who should be furnished instructions or warnings . . . .").

In summary, Forest River claims that it satisfied its duty to warn through the warning included in the Owner's Manual. But even given the seriousness of the dangers of exposure to formaldehyde emitting components of the trailers, of which Forest River obviously knew through its use of the Owner's Manual and through its manufacturing of mobile or manufactured homes regulated by HUD standards on such emissions, Forest River did not consider it necessary to evaluate the sufficiency of the warning it provided, ensure that the warning reached the end user through this obviously circuitous delivery process, or advise the actual purchaser of the formaldehyde dangers and of the importance of the Owner's Manual, containing warnings thereof, reaching the end user.

Moreover, at no time did Forest River advise FEMA or NACS of the unsuitability of these travel trailers for long-term use due to the risks of formaldehyde exposure, despite its knowledge of such dangers. See 2009 Deposition of Douglas Gaeddert, 103:3-19 attached as Exhibit A; see also Marshall, 481 So.2d at 1030 ("In all cases of products liability, including those of failure to warn, a manufacturer is presumed to know of its product's potential hazards."). Thus, it appears that Forest River intentionally withheld

information regarding both the formaldehyde risks and the resulting unsuitability of the travel trailers it produced as emergency housing for disaster victims.

Based upon the foregoing discussion, there exist genuine issues of material fact regarding whether Forest River satisfied its duty to warn through the warning contained in the Owner's Manual, and thus, summary judgment is inappropriate.

## III.    FOREST RIVER HAD A CONTINUING DUTY TO WARN THE PLAINTIFF

Forest River argues that it did not owe a continuing duty to Plaintiff to warn him about the dangers and risks of formaldehyde in the travel trailer at issue because Forest River "never acquired any actual or constructive knowledge of any alleged health hazards relating to the use of its trailers until this litigation began." See Rec. Doc. 10397-2 at 16.

However, as discussed in detail above, as a manufacturer of a product that poses serious health risks to its user, Forest River is deemed to be an expert on its product and knew or should have known of these dangers. See Marshall, 481 So.2d at 1030. Although Forest River asserts the lack of any "verifiable" complaints regarding formaldehyde in the "hundreds of thousands of other trailers" manufactured by Forest River is evidence of its alleged lack of knowledge, such assertion does not mitigate or destroy Forest River's actual knowledge (through its inclusion of a partial warning of the dangers of formaldehyde exposure in the Owner's Manual) or its constructive knowledge (as imposed by law) of the dangers of exposure to formaldehyde emitting components in the travel trailers. Thus, Forest River's argument that it did not owe any continuing duty to warn Plaintiff fails as a matter of law, and summary judgment is inappropriate.

## CONCLUSION

Based upon the foregoing reasons, Plaintiff Lyndon T. Wright respectfully requests that this Court deny Defendant Forest River, Inc.'s Partial Motion for Summary Judgment on the Failure to Warn Claim.

Respectfully Submitted,

**FEMA TRAILER FORMALDEHYDE**
**PRODUCT LIABILITY LITIGATION**

BY:     s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:   504/522-2304
        Facsimile:     504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:   504/522-2304
        Facsimile:     504/528-9973
        jwoods@gainsben.com

        **COURT-APPOINTED PLAINTIFFS'**
        **STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON, #9938
        MIKAL WATTS, Texas # 20981820
        Dennis Reich, Texas #16739600

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing on February 11, 2010.


 s/Gerald E. Meunier
GERALD E. MEUNIER, #9471