1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

------------------------------X

                              :

IN RE: FEMA TRAILER       :

    FORMALDEHYDE PRODUCTS : MDL NO. 1873

    LIABILITY LITIGATION  :  Section "N" (5)

                              :  Judge Engelhardt

                              :  Magistrate Chasez

------------------------------X

EXHIBIT C

VIDEOTAPED DEPOSITION OF KEVIN SOUZA

Winchester, Virginia

Wednesday, July 15, 2009

10:34 a.m.

Job No.: 1-159429

Pages: 1 - 156

Reported by: Michelle L. Lonas, RPR, CCR

Souza, Kevin 071509

30

1  back, I'd like to join in that objection as well.
2          (Last question was read back by the
3  reporter.)
4  BY MR. WOODS:
5      Q    Is that true?
6      A    That's correct.
7      Q    Do you feel comfortable sitting here today
8  testifying and telling us exactly -- and affirming
9  what you, the statements you've made in this
10 declaration as to what FEMA relied upon when
11 negotiating with vendors and manufacturers for
12 emergency housing units?
13         MR. MILLER:  Objection, mischaracterizes
14 the declaration and the terms in the declaration.
15     A    Yes.
16 BY MR. WOODS:
17     Q    You go on to state, the last sentence in
18 your declaration says that, FEMA purchased these EHUs
19 believing that they would provide safe and habitable
20 temporary emergency housing.  And you feel comfortable
21 today testifying that you knew, or you are certain
22 that FEMA purchased these EHUs believing that they

Souza, Kevin 071509

30

1  back, I'd like to join in that objection as well.
2          (Last question was read back by the
3  reporter.)
4  BY MR. WOODS:
5      Q    Is that true?
6      A    That's correct.
7      Q    Do you feel comfortable sitting here today
8  testifying and telling us exactly -- and affirming
9  what you, the statements you've made in this
10 declaration as to what FEMA relied upon when
11 negotiating with vendors and manufacturers for
12 emergency housing units?
13         MR. MILLER:  Objection, mischaracterizes
14 the declaration and the terms in the declaration.
15     A    Yes.
16 BY MR. WOODS:
17     Q    You go on to state, the last sentence in
18 your declaration says that, FEMA purchased these EHUs
19 believing that they would provide safe and habitable
20 temporary emergency housing.  And you feel comfortable
21 today testifying that you knew, or you are certain
22 that FEMA purchased these EHUs believing that they

Souza, Kevin 071509

31

1  would provide safe and habitable housing?
2      A    Yes.  And I'm going to elaborate and say
3  that we had used the EHUs previously.  EHUs being, in
4  this case, travel trailers.  We used them as early, or
5  as recently I should say as 2004.  And in our previous
6  use of the units, we had no real reasons to believe
7  that units purchased off the lot would not be safe and
8  habitable as long as they met the industry standards
9  that we had purchased off the lot previously.  And so
10 although I don't have any specific knowledge of the
11 standards as they existed back then, when I was told
12 that we were purchasing the units off the lot met --
13 to meet industry standards, I had no reason to believe
14 that they would not be safe and habitable units as the
15 units we had used previously in our disaster
16 operations.
17     Q    But you don't know what the industry
18 standards were?
19     A    No.
20     Q    Okay.  But you do know that FEMA relied
21 upon the vendors and manufacturers in their expertise
22 in -- to what industry standards would have been in

42

1  BY MR. WOODS:
2      Q    Let's say Louisiana.
3           MR. MILLER:  Objection, vague.
4      A    I think it was Steve Miller.
5  BY MR. WOODS:
6      Q    I believe -- is there a Steve Miller and a
7  Stephen Miller?
8      A    I'm talking about -- I -- I go -- I call
9  him by Steve Miller.  I don't know if -- his name is
10 Stephen Miller, but I call him Steve.  I don't know if
11 there's another one.
12     Q    We've just run across a couple of people.
13 One, I think, is referred to as Steve, and one is
14 referred to as Stephen.  You don't know?
15     A    I don't know.
16     Q    When was the first that you ever heard of
17 any complaints or concerns?  Let's say that.  When was
18 the first that you ever heard of any concerns
19 regarding formaldehyde emissions in the EHUs?
20     A    I think it was about May of 2006.
21     Q    But in your declaration, you say that FEMA
22 received the first reported concerns in March of 2006;

Souza, Kevin 071509

43

1   is that correct?
2       A    Yes.
3       Q    How did you become aware of the March 2006
4   concerns?
5       A    As the formaldehyde topic started to grow,
6   people started asking questions about -- people at
7   headquarters I should say, started saying to the field
8   offices in particular, trying to fact gather in terms
9   of what they knew and what they had collected to
10  point.  And I think it was Mississippi indicated that
11  the first indication they had or were aware of a
12  problem was in March.
13      Q    If you'd turn to page four of your
14  declaration, and if I can draw your attention to
15  section 12.  You state, In June 2006, I was made aware
16  of ongoing discussions between FEMA Field Program
17  staff and FEMA's Office of General Counsel regarding
18  formaldehyde-related applicant requests for EHU
19  information.  What discussions -- what particular
20  discussions were you made, made aware of in June of
21  2006 between FEMA field program staff and FEMA
22  office -- FEMA's Office of General Counsel?

Souza, Kevin 071509