UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER  *  | MDL NO. 1873 |
|     FORMALDEHYDE * | |
|     PRODUCTS LIABILITY * | |
|     LITIGATION * | SECTION: N(5) |
| * | |
| This Document Relates to: *Lyndon T. Wright. v.* * | JUDGE: ENGELHARDT |
| *Forest River, Inc., et al*, Docket No. 09-2977 * | |
| * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### FOREST RIVER, INC'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO CERTAIN AFFIRMATIVE DEFENSES

**MAY IT PLEASE THE COURT:**

Defendant Forest River, Inc. ("Forest River") respectfully submits this Opposition to plaintiff's Motion for Partial Summary Judgment with respect to certain affirmative defenses raised by Forest River.

**ARGUMENT**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be rendered if the pleadings, discovery, disclosure materials and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

1

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (5th Cir. 2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

Plaintiff claims that two of the affirmative defenses asserted by Forest River are not supported by the evidence in this case. Forest River submits there are sufficient facts to substantiate both affirmative defenses and will address each in turn.

### A. Forest River's Seventh Defense: Defect was Open and Obvious

Forest River's Seventh Affirmative Defense provides:

> Solely in the alternative, in the event this Court determines there was any defect in any travel trailer, which is specifically denied, said defect was apparent and obvious and could be easily avoided or remedied, precluding any recovery by Plaintiff.

Forest River asserts that sufficient evidence exists to show that the alleged defects in travel trailer were indeed open and obvious, and summary judgment on this defense is therefore improper. It is a well accepted principle that if the plaintiff knew of the defective condition, it is considered open and obvious. *Mesa v. Chilean Line, Inc*., 1998 WL 241548, *2-3 (E.D.La., 1998). In addition to this general principle, the Fifth Circuit addressed the question of open and obvious defects in *Garner v. Santoro,* 865 F.2d 629 (5th Cir. 1989). In *Garner*, plaintiff sued the manufacturer of epoxy paint for injuries allegedly sustained as a result of exposure to paint fumes. *Id.* at 631. Plaintiff asserted that he suffered eye, throat and nose irritation as a result of

2

the exposure. *Id.* at 631-32. Like formaldehyde, the paint fumes were colorless, though they did have an odor. *Id.* at 631. Although the case dealt with Mississippi law on "open and obvious" dangers, the Fifth Circuit noted that "reasonable persons could reach different conclusions, given the evidence presented, as to whether the paint's danger was, indeed, open and obvious." *Id.* at 639. Accordingly, the Fifth Circuit rejected the defendant's argument that the trial court erred in denying the defendant's motion for a directed verdict based on the argument that the dangers of the epoxy paint were open and obvious. *Id.* at 640.

Here, the question of whether Wright's alleged formaldehyde exposure was an apparent and obvious defect is a question of fact for the jury to decide. As in *Garner*, there is a sufficient basis for reasonable persons to disagree whether formaldehyde – a substance which, though colorless, does have an odor – is an open and obvious defect. Of even greater significance, during his deposition, Lyndon Wright was questioned about his alleged health problems in the trailer. He testified:

> Q. Do you recall being asked by anyone if you had any health problems associated with this particular unit?
> A. My mom.
> Q. When did that conversation take place?
> A. Basically, when I was on the phone talking to her at one time and I was doing a lot of coughing. I made the mention that I woke up choking, you know, looking for water. I believe I made the comment that I think this trailer has made me sick because I wasn't like this when I was on the cruise ship.
>     She said, "Well, I'm going to call FEMA and have somebody come out. You think there's a leak going on up in there?"
>     I said, "Not that I know of, I don't smell propane or nothing, I'm just not feeling like I was feeling on the cruise ship."

3

Q. Explain to me the difference in the way you were feeling from the time -- as compared to the cruise ship, which is why you thought there was some problem with the unit.

A. I mean, I slept comfortably. I was actually -- what word can I use? I felt a lot better on the cruise ship than I did in the trailer. When I got in the trailer, my eyes started getting irritated and I just associated it with my allergies, and I think it was this trailer, but it was just constant. And the coughing, just a plain old dry cough. And I started seeing blood in my mucus when I expelled, you know.

Q. Uh-huh.

A. And I would wake up with this choking feeling out of my sleep. And I started keeping water by the bed -- by the sofa, really, I slept on the sofa.

It just didn't feel right, I mean, between telling the people about the rainwater and -- I don't know. It was just aggravating.

\* \* \*

Q. When you first believed or came to the belief that your occupancy of this particular unit was impacting your health, did you tell your mother immediately?

A. Yes. I made the comment, because I was coughing so much, I made the comment, "Ma, I think this trailer is making me sick."

Q. Did you ask her to take any action on your behalf in that regard?

A. Initially, she wanted me to call the maintenance people, but they gave me the runaround. They wanted all kinds of personal information from my mom, so I told my mom she had to call.

So she said she called to tell them that I was smelling a foul odor. They gave her the runaround. She said they gave her another number to call. She called that number and somebody said they would get back in touch with her.

4

> She never did get a phone call, and it just pretty much fell from there on. That's when I started telling the maintenance people when I saw them.
> Q. Do you recall when the phone call was with your mother that you expressed to her that you believed your occupancy of this unit was causing you a health problem?
> A. I would say probably April.
> Q. Of what year?
> A. '06. Right after I got in the trailer.
> Q. So in April of '06, you were of the opinion that your occupancy of this unit was causing you a health problem?
> A. I would say I thought it was making me sick, yes.

*See* Ex. A, Deposition of L. Wright, dated 7/10/09, p. 134-36; 169-71.

As Wright himself testified, he believed that the trailer was "making him sick" as early as April of 2006, only a month after moving into the trailer. He then discussed his alleged health concerns with his mother. As noted above, it is a "well accepted principle that if the plaintiff knew of the defective condition, it is considered open and obvious." *Mesa v. Chilean Line, Inc.*, 1998 WL 241548, *2 -3 (E.D.La., 1998). Forest River submits that these facts alone are sufficient to create a genuine issue of material fact sufficient to defeat plaintiff's Motion for Partial Summary Judgment.

With regard to plaintiff's mold exposure claim, there can be no question that sufficient evidence exists to defeat plaintiff's motion. Wright began working at the Hyatt Hotel in New Orleans in 1999 as a maintenance man, and his responsibilities specifically included handling mold complaints in the hotel. He testified:

> From 1999 to 2002, before your job duties changed, were you responsible for addressing leaks or other repair issues that may have required the removal of either wallpaper or drywall at the Hyatt?

5

   A.  Yes.
   Q.  If an occupant of one of the rooms had a leak problem and the drywall in that room needed to be removed, were you one of the people that would be responsible for doing that?
   A.  Yes.
   Q.  Do you recall any complaints or issues regarding mold in the Hyatt during your tenure, or during the time you worked there?
   A.  Yes.
   Q.  Okay.  What were those complaints?
   A.  Well, mold smell in the bathroom, they had ceiling tiles.  And the room above might have been leaking, and by being closed up all that time and a guest that's probably sensitive to the smell, complained and investigated and found that there was mold.
   Q.  All right.  And as part of your job responsibilities, were you required to remove those ceiling tiles to investigate that problem?
   A.  That's correct.
   Q.  Did you take part in any repair to that particular area to remove the damage, the water-damaged ceiling tiles or Sheetrock?
   A.  Yes.
   Q.  Did you wear any respiratory protection during that period of time?
   A.  Yes.
* * *
   Q.  Was that the only complaint you recall about mold related to the Hyatt?
   A.  The only one -- no, I -- no.
      I mean, you would have complaints of mold, like, in the restrooms.  No, that wasn't the only complaint.
   Q.  There were several complaints about mold growth throughout the Hyatt, correct?
   A.  Yes.
* * *
   Q.  Can you give me an estimate, during your time at the Hyatt, from -- let's start with '99 to 2002, how often you

6

>    responded to complaints of leaks within the
>    building?
>        A.   Frequently.
>        Q.   Was it once a shift that you were
>    responding to a complaint of a leak within
>    the building?
>        A.   Probably about twice a shift.

*See* Ex. A, Deposition of L. Wright, dated 7/10/09, p. 55-58.

Wright testified that he observed mold in his trailer and reported the issue to maintenance personnel. *Id.* at 289-90. He was clearly familiar with the smell and appearance of mold from his experience handling mold problems at the Hyatt, and there is certainly sufficient evidence on the question of apparent and obvious defects related to mold to go to the jury. Plaintiff's Motion for Partial Summary Judgment should be denied with respect to both the mold and formaldehyde claims in connection with Forest River's seventh affirmative defense.

### B.   Forest River's Ninth Defense: Estoppel, Release, Waiver

Forest River's Ninth Affirmative Defense provides:

> Plaintiff's claims against Forest River are barred, in whole or in part, by the doctrines of estoppel, release or waiver.

Forest River submits that this affirmative defense is also not ripe for summary adjudication. In his First Supplemental and Amended Complaint, plaintiff alleges that Shaw "significantly altered the original travel trailer and re-constructed the unit with a different intended purpose." *See* Rec. Doc. 2203, para. 12. Plaintiff asserted that Shaw Environmental, Inc. ("Shaw") was a manufacturer under the Louisiana Products Liability Act ("LPLA"). *Id.* Forest River submits that the affirmative defenses of estoppel and waiver apply, and plaintiff should be precluded from offering any arguments contrary to the allegations contained in his First Supplemental and Amended Complaint.

In *Miller v. Conagra, Inc.*, 991 So.2d 445, 452 (La.9/8/08), the Louisiana Supreme Court explained that judicial estoppel is "an equitable doctrine designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." It is an equitable doctrine invoked at the trial court's discretion. *Id*.

Waiver is defined as the "intentional relinquishment of a known right, power, or privilege." *Steptore v. Masco Constr. Co.,* 643 So.2d 1213, 1216 (La. 1994); *see also Tate v. Charles Aguillard Ins. & Real Estate, Inc.,* 508 So.2d 1371, 1373 (La. 1987). In order for waiver to occur there must first be an existing right and knowledge of that right's existence. *See Steptore,* 643 So.2d at 1216. A party may then waive that right through either: (1) "an actual intention to relinquish it," or (2) "conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Id.*

Although plaintiff entered into a stipulation in this case and agreed to dismiss with prejudice his claims against Shaw under the LPLA (Rec. Doc. 11240), the allegations in his First Supplemental and Amended Complaint remain unchanged. In short, this pleading asserts that Shaw "re-manufactured" the Wright unit. *See* Rec. Doc. 2203, para. 12.

Moreover, in plaintiff's Opposition to Shaw's Motion for Summary Judgment on the issue of prescription, plaintiff claimed that the "fact pattern with Shaw as it relates to Wright's unit shows several ways in which Shaw should be considered a manufacturer under the LPLA." *See* Rec. Doc. 2803, p. 16. For instance, Shaw "took and converted the Trailer from a recreational vehicle, not to be used for long-term occupancy – the purpose and use for which it had been designed by Forest River – to an installed dwelling to be used for long-term habitation." *Id.* Plaintiff also pointed out that Shaw was responsible for completing the installation and "make-ready" preparations. *Id* at 17. He also argued that Shaw "created a defect in the Wright Trailer when it jacked the unit off its wheel based (sic) and installed it upon

8

concrete piers." *Id.* at 17. Plaintiff concluded by stating, "Shaw created **the** defect in Wright's unit" and therefore "should be considered a manufacturer under the LPLA." *Id.* at 17-18 (emphasis added).

Forest River asserts that estoppel and waiver are viable affirmative defenses, as plaintiff should not be able to offer any arguments contrary to the positions he has taken in these pleadings filed with the Court. In other words, Forest River should be able to rely upon plaintiff's representations (including, but not limited to, plaintiff's assertion that "Shaw created **the** defect in Wright's unit) when crafting its defenses in this case. Accordingly, Forest River's ninth affirmative defense should not be dismissed.

## CONCLUSION

**WHEREFORE,** considering the foregoing, Forest River respectfully requests that this Honorable Court deny plaintiff's Motion for Partial Summary Judgment with respect to certain affirmative defenses.

    Respectfully submitted,

    /s/ Jason D. Bone_____
    ERNEST P. GIEGER, JR. (La. Bar Roll No. 6154)
    JASON D. BONE (La. Bar Roll No.28315)
    CARSON W. STRICKLAND (La. Bar Roll No. 31336)
    GIEGER, LABORDE & LAPEROUSE, L.L.C.
    One Shell Square
    701 Poydras Street, Suite 4800
    New Orleans, Louisiana 70139-4800
    Telephone: (504) 561-0400
    Facsimile: (504) 561-1011
    *ATTORNEYS FOR FOREST RIVER, INC.*

## **C E R T I F I C A T E**

    I hereby certify that on the 12th day of February, 2010, a copy of the foregoing Memorandum in Support was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

                                            /s/ Jason D. Bone_____
                                            JASON D. BONE