1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: FEMA TRAILER FORMALDEHYDE
PRODUCTS LIABILITY LITIGATION

MDI. NO. 1873
SECTION "N" (5)

_____

**EXHIBIT C**

DEPOSITION OF JOHN D. OSTERAAS, Ph.D.
Taken on behalf of the Plaintiffs
Wednesday, December 16, 2009

88

1  in front of him the errata report, I don't think he has a
2  copy of the original report.
3  BY MR. D'AMICO:
4      Q.   Okay.  I think this is the section of the report
5  where you were analyzing the entry door.  Okay, let's turn
6  to Page 15 and start with, "Mr. Wright's testimony, as well
7  as a photo of the trailer, indicate that in 2007 he was
8  unable to fully close the door.  And that the problem of the
9  door not closing fully became progressively worse over a
10 period of time."
11          Do you see where I'm reading in your report?
12     A.   Yes.
13     Q.   Okay.  Did I read that correctly?
14     A.   I believe so.
15     Q.   All right.  Is that your understanding of what Mr.
16 Wright's testimony was?
17     A.   That's is my summary of my understanding of his
18 testimony.
19     Q.   Okay.  And if we turn to page 16, I'm going to ask
20 you to read this sentence, "Given the fact that the support
21 piers were simply supported on the ground surface any
22 differential movement of the soil beneath the trailer over a
23 period of several years is inevitable and would result in
24 differential movement of the trailer."
25          What did you mean by that statement, Doctor?

Osteraas, John 12/16/09

89

1    A.   Well, several things.  First and foremost, the
2  fact that the piers were placed on plywood supported on the
3  topsoil at the surface at the ground, we would expect, over
4  a period of years some minor differential movement of that
5  soil, either as a result of sort of normal precipitation,
6  periods of drought or heavy rains, and anything that would
7  really affect the, essentially, the soil volume.  So you
8  could have either swelling or minor differential settlement
9  of the soil.
10           And part of the reason that we build structures --
11  well, one other thing, you know, just given the types of --
12  or the problems we have in New Orleans, in general, with
13  long-term subsidence, I would expect to see some movement
14  over time without installation of deep foundations.
15      Q.   Okay.  In fact you say that, "movement of the soil
16  beneath the travel trailer over a period of several years is
17  inevitable."
18           That's a true statement, isn't it?
19      A.   I believe that entire sentence is a true
20  statement.
21      Q.   Particularly given the soil conditions that exist
22  in New Orleans, and particularly the areas where Lyndon
23  Wright's trailer was located?
24           MR. KURTZ:  Objection; form.
25           THE WITNESS:  I think this is a true statement in

Osteraas, John 12/16/09

97

1  Q.  All right. And as we sit here today, do you have
2  any reason or any information to believe otherwise?
3  A.  I do not. I have -- I have accepted his testimony
4  at face value on this issue.
5  Q.  Is it also your understanding from the review of
6  Mr. Wright's testimony that this condition with the door
7  became progressively worse over time?
8  A.  That is my understanding, that it began as a
9  problem, small crack or sticking of the door, and eventually
10  progressed to a larger gap.
11  Q.  And given the fact that the support piers were
12  simply supported on the ground surface, any differential
13  movement of the soil beneath the travel trailer over a
14  period of several years would be inevitable and would result
15  in differential movement of the trailer, correct?
16  MR. KURTZ: Objection; asked and answered.
17  BY MR. D'AMICO:
18  Q.  Correct?
19  A.  I think we've covered that.
20  Q.  Yeah. And from your forensic analysis of the
21  case, haven't you found objective evidence to support the
22  statements made by Mr. Wright, that in fact there was
23  differential settlement of the trailer over time, which
24  eventually caused the front entry door not to close
25  completely?

Osteraas, John 12/16/09

1         MR. KURTZ:  Objection; form.
2         THE WITNESS:  There's --
3  BY MR. D'AMICO:
4     Q.   Go ahead.
5     A.   Yeah, there is just one door.  But that is my
6  understanding that the -- there was movement.  I believe
7  there was movement of the soil beneath the piers that led
8  the sticking of the front door.  I think our physical
9  testing, or the results of our physical testing -- let me
10 back up.
11        Based on the results of our physical testing, we
12 can -- we have been able to identify a reasonable physical
13 scenario that is consistent with Mr. Wright's testimony
14 regarding his observations of what was occurring with the
15 door.
16    Q.   And in fact, Doctor, you have reviewed a
17 photograph of the front of Lyndon Wright's travel trailer
18 that he occupied, taken in 2008, which shows that the door
19 is partially ajar at the latch side of the door up to the
20 right, correct?
21    A.   I'm sorry.  I didn't catch the last part of it.  At
22 the latch side of the door...
23    Q.   Yes, that the door does not completely close and
24 it's partially ajar up at the top, above the latch side of
25 the door.