UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE PRODUCTS | * | |
| | LIABILITY LITIGATION | * | SECTION "N" (5) |
| | | * | |
| | | * | JUDGE ENGELHARDT |
| | | * | MAGISTRATE CHASEZ |
| | | * | |
| THIS DOCUMENT IS RELATED TO | | * | |
| | | * | |
| *Lyndon T. Wright v. Forest River, Inc., et al,* | | * | |
| Docket No. 09-2977; | | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN OPPOSITION TO DEFENDANT FOREST RIVER, INC.'S MOTION FOR SUMMARY JUDGMENT AS TO THE GOVERNMENT CONTRACTOR DEFENSE

Plaintiff Lyndon Wright ("Plaintiff") opposes Defendant Forest River, Inc.'s ("Forest River") "Motion for Summary Judgment as to the Government Contractor Defense" (Docket Entry No. 10936) and in support, would show:

## BACKGROUND

Plaintiff is one of thousands of people displaced by Hurricanes Katrina and Rita. Following the devastation of these hurricanes, the Federal Emergency Management Agency ("FEMA") worked with North American Catastrophe Services ("NACS") to acquire emergency housing units (each an "EHU") for the displaced victims of the disaster.

Beginning in September 2005, NACS worked with Forest River and other vendors to acquire a number of EHUs. Through this process, Forest River supplied Plaintiff's specific EHU (the "Trailer"). Plaintiff's claims against Forest River arise out of

the Trailer's construction, composition, design, and lack of warnings and relate to Plaintiff's exposure to dangerous levels of formaldehyde.

## ARGUMENT AND AUTHORITIES

### I. SUMMARY JUDGMENT STANDARD.

#### A. Generally

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be granted if the pleadings, discovery, disclosure materials, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See* F. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir.1995).  A party moving for summary judgment "must demonstrate the absence of a genuine issue of material fact." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

"If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial." *Harvey v. Toyota Material Handling, USA, Inc.*, No.

05-0561, 2007 WL 1115235 (W.D. La. April 13, 2007) (citing *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996)).   When considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party.   *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (5th Cir. 2001).   If there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is a genuine issue for trial, and thus, summary judgment is inappropriate. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### B.   In the Context of the Government Contractor Defense

The government contractor defense is an affirmative defense, for which Forest River bears the burden of proof.   *See Bailey v. McDonnell Douglas Corp.,* 989 F.2d 794, 802 (5th Cir. 1993).   Accordingly, Forest River must show evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial and demonstrate the absence of any material fact. *See id.* (citations omitted).   As a non-moving party without the burden of proof, the Plaintiff need only produce significant, probative evidence demonstrating the existence of a material fact *after* Forest River meets its initial burden. *See International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991)(emphasis added).

## II.   THE GOVERNMENT CONTRACTOR DEFENSE

### A.   Applicable Law

As set forth by the United States Supreme Court in *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988), state laws holding government contractors liable for design defects do "in some circumstances present a 'significant conflict' with federal policy and

[therefore] must be displaced." *Id.* at 512.   Accordingly, the government contractor defense exists "to prevent the contractor from being held liable when the government is actually at fault" *Trevino v. General Dynamics Corp.,* 865 F.2d 1474 (5th Cir.), *cert. denied*, 493 U.S. 935 (1989).   This is consistent with tort liability principles that "seek to impose liability on the wrongdoer whose act or omission caused the injury, not the otherwise innocent contractor whose only role in causing the injury was the proper performance of a plan supplied by the government." *In re Agent Orange Products Liability Litigation,* 506 F.Supp. 762, 793 (E.D.N.Y), *rev'd on other grounds*, 635 F.2d 987 (2d Cir. 1980), *cert. denied sub nom; Chapman v. Dow Chemical Co.,* 454 U.S. 1128 (1981).

Although the government contractor defense exists to provide immunity to those contractors that are able to demonstrate that its application is proper, the Fifth Circuit Court of Appeals has noted the following:

> The protective shield in favor of the contractor collapses when the actions of the government contractor – and not those of the Government – produce the damaging defect.   In such a situation, fairness dictates that a government contractor should not be permitted to escape liability by asserting the sovereign immunity of the Government.

> *Mitchell v. Lone Star Ammunition, Inc.,* 913 F.2d 242, 245-46 (5th Cir. 2000).

To determine whether or not the protective shield should remain, the United States Supreme Court articulated the following three elements in *Boyle*:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the   equipment   conformed   to   those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States.

*Boyle,* 487 U.S. at 513.

If a contractor is unable to establish <u>all</u> of the above elements, the general contractor defense is ineffective and the contractor remains subject to liability.  *See Smith v. Xerox Corp.,* 866 F.3d 135, 136-37 (5th Cir. 1989)(emphasis added).  In the case at hand, Forest River may not avail itself of the government contractor defense for the following reasons:  (1) Forest River is not a government contractor; (2) there were no reasonably precise government specifications; (3) Forest River cannot demonstrate compliance due to the lack of relevant specifications; and (4) fact questions remain as to the knowledge of Forest River and FEMA with respect to the dangers associated with the use of formaldehyde products in travel trailers.

## B.    Forest River is not a Government Contractor

Although not expressly one of the three *Boyle* elements discussed above, it is axiomatic that in order to invoke the government contractor defense, one must actually be a government contractor. *See generally, Boyle,* 487 U.S. at 504-06.  The defense protects the government's interests *under its contracts. See id* (emphasis added).  In relation to the defense, *Boyle* repeatedly emphasizes the necessity of a contract, discussing the "obligations to and rights of the United States under its contracts," "performance of a [government] contract," and that "the present case [involved] an independent contractor performing its obligations under a procurement contract," and "civil liabilities arising out of the performance of federal procurement contracts." *Id.* at 505-506.

Forest River, however, does not qualify as a government contractor.  Forest River in fact acknowledges it as "undisputed" that no contract existed between it and FEMA.  Rec. Doc. 10936-2, pg. 9.  Nevertheless, Forest River implicitly asserts that its

interactions with FEMA in 2004 were sufficient to create a relationship whereby FEMA and Forest River were "working closely together" on the development of the EHUs as in *In re Air Disaster at Ramstein Air Base, Germany,* 81 F.3d 570 (5th Cir. 1996).  In reality, Forest River met with a representative of FEMA on one occasion for a "First Article Inspection" as a result of changes to the specifications set forth in the travel trailer request for proposal.  2008 Deposition of Douglas Gaeddert, pp. 39-41, See Exhibit A attached.  This single meeting between FEMA and Forest River cannot and should not be deemed as a matter of law to be the creation of a close working relationship between the parties.

Since the government is not a party to a contract with Forest River, the government's rights and interests are not involved.  No reason exists to extend the government contractor defense to Forest River, which did not contract with the government.  Moreover, as this Court noted, the Fifth Circuit has not applied the government contractor defense in the context of a non-contracting party.  *See* Rec. Doc. 7682 (this Court's order against Fleetwood Enterprises, Inc. noting that *In re Air Disaster* does not address this specific issue).  Although Forest River has submitted evidence of other jurisdictions applying this defense in the context of subcontractors, such rationale has not been adopted by the Fifth Circuit.  Furthermore, even if this Court were inclined to agree with the subcontractor rationale, Forest River's production and sale of travel trailers to an intermediary does not rise to the level of a specific task being subcontracted to them by a government contractor.  Forest River did not have to alter its production process to assemble the EHUs.  *See* 2008 Deposition of Douglas Gaeddert, pp. 37, Exhibit A attached.  Forest River simply made certain upgrades and other minor

detail changes to its existing trailer models in order to meet the terms of the RFP.  *See generally, id.,* pp. 43 – 45.  The fact that an intermediary purchased these essentially stock travel trailers does not make Forest River a subcontractor of the intermediary or the government.  Forest River's relationship with the intermediaries was more similar to that of a vendor, not a subcontractor.

Accordingly, because Forest River has failed to prove as a matter of law that it is, in fact, a government contractor, the motion for summary judgment should be denied.

**C.    Forest River Cannot Establish as a Matter of Law that the Government Approved Reasonably Precise Specifications**

The first element of *Boyle* requires a showing that the governmental agency at issue approved reasonably precise specifications. *See Boyle*, 487 U.S. at 512.  Whether the specifications were "reasonably precise" and whether actual approval occurred are fact-specific inquiries. *See Stout v. Bourg-Warner Corp.*, 933 F.2d 331, 336-37 (5th Cir. 1991).   Both issues ultimately turn on whether the government agency exercised substantial oversight of the product's original design, development and production. *See id.* (the government examined production drawings and actually tested the prototypes); *Kerstetter,* 210 F.3d at 435 (the government continuously interacted with the contractor over a period of eight years and addressed design issues specific to the case during the design process); *Smith v. Xerox Corp.*, 866 F.2d 135, 137-38 (5th Cir. 1989)(the government provided initial specifications that were incorporated into the production contract, and reviewed and approved the contractor's final drawings); *see also Harduvel v. General Dynamics Corp.*, 878 F.2d. 1311, 1320 (11th Cir. 1989); *Kleeman v. McDonnell Douglas Corp.*, 890 F.2d 698 (4th Cir. 1989).

It is true that the government need not always prepare the specifications to be deemed to have approved them for purposes of the first *Boyle* element.  *See Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1480 (5th Cir. 1989).  However, mere passive acceptance of a contractor's independently-developed design choices does not constitute approval of reasonably precise specifications. *See id.* at 1486-87.   As explained by the Fifth Circuit:

> The mere signature of a government employee on the 'approval line' of a contractor's working drawings, without more, does not establish the government contractor defense.  The trier of fact should not evaluate the wisdom or quality of any government decision, but must locate the actual exercise of the discretionary function.  We hold that 'approval' under the *Boyle* defense requires more than a rubber stamp . . . When the government merely accepts, without any substantial review or evaluation, decisions made by a government contractor, then the contractor, not the government, is exercising discretion.   A rubber stamp is not a discretionary function; therefore, a rubber stamp is not 'approval' under *Boyle*.

*Id.* at 1480.

### 1.    The Procurement Specifications were not "Reasonably Precise"

Forest River cannot establish as a matter of law that FEMA approved reasonably precise specifications.   Forest River asserts that the "FEMA specs" set forth in the FEMA Travel Trailer Procurement Specifications, dated 5/8/04 and marked FOREST 2485-88, (hereinafter the "FEMA Specs"), were "comprehensive, setting forth information about the size and configuration of the trailers, electrical service, plumbing service, appliances, furnishings, heating and cooling mechanisms, safety equipment, coverings, transportation methods, and other issues." *See* Exhibit B attached.  Forest River further contends that such specifications "were thorough, detailing all aspects of

the trailers' construction from the overall square footage to the quantity of master keys sets that were required for each unit." *Id.*

Despite their attempt to characterize the FEMA Specs as all-encompassing, Forest River's argument regarding the thoroughness and precision of these FEMA Specs is not supported by the facts of this case. In reality, the FEMA Specs were a four-page document outlining the basic details of the EHUs. While the FEMA Specs did provide a fair amount of detail as to the options and upgrades the EHUs were required to have to meet FEMA's procurement guidelines, they hardly rose to the level of "reasonably precise specifications" removing discretion in **construction** from the part of the contractor. If anything, the FEMA Specs only removed discretion *as to the options* each EHU was required to have to have (i.e. 30-Amp service, 10-gallon water heater, expanded air conditioning capacity, and a length of 32-35 ft). FEMA's requirement of such options and upgrades no more controlled the construction of the EHUs then the options selected on a car by a buyer during the ordering process.

Despite Forest River's claims, the FEMA Specs clearly do not reflect FEMA's "discretion over the complete design [of the EHUs]" or the enumeration "of each design feature." Pg. 16 of Forest River's Motion. No part of the simple four-page FEMA Specs addresses the actual engineering and underlying design, material, and construction choices that go into the assembly of a travel trailer. The FEMA Specs do not, for example, provide any guidance as to the use of plywood, pressboard, or other products containing formaldehyde. Accordingly, Forest River cannot demonstrate as a matter of law that the FEMA Specs were in fact "reasonably precise" as required by *Boyle*. Summary judgment should therefore be denied.

### 2. There was No "Approval" of Forest River's Design

Forest River also contends that FEMA's inspection and approval of the Trailer constitutes "approval" of Forest River's design and construction choices. *See* pg. 16-17 of Forest River's Motion. As support, Forest River cites the FEMA Unit Inspection Report, dated 11/19/05 and marked Shaw-WRI 00008, and the FEMA Temporary Housing Unit Inspection Report, dated 2/13/06 and marked Shaw-WRI 00007, (hereinafter collectively referred to as the "Unit Inspection Reports"). *See* Exhibit C attached.

The Unit Inspection Reports evidence nothing more than a "rubber stamp." *See Trevino*, 865 F.2d at 1480. The inspections tied to each report were primarily concerned with determining whether the units and certain of their furnishings and fittings were damaged at delivery. *See* Exhibit C attached. In fact, many of the FEMA Specs, such as winterization, the plumbing system, and whether the siding and roof met industry standards, were not even examined. *See* Exhibits B and C attached. Neither the FEMA Specs nor the Unit Inspection Reports evidence any governmental oversight or approval of the actual design, development, or production processes. *See id.*

Forest River also relies heavily on David Porter's inspection of the Forest River manufacturing facilities in 2004. *See* pg. 16 of Forest River's Motion. Forest River goes so far as to claim that David Porter's single visit rose to the level of "FEMA [taking a] meaningful role in developing the trailer design and finalizing the detailed specifications for the Forest River units." Pg. 16-17 of Forest River's Motion.

As with the FEMA Specs and Unit Inspection Reports, Forest River's characterization of David Porter's visit is misleading. Forest River cites FEMA's incorporation of its suggestions with respect to changing to a three-burner stovetop (as

opposed to a four-burner stovetop) and the use of an industry-standard rubber roof (as opposed to the requested aluminum roof) as evidence of Forest River's unique relationship with FEMA and presumably evidence of their meaningful interaction with respect to the design of the EHUs.  *See* pg. 5, 16-17 of Forest River's Motion.  Aside from these two supply-related suggestions, however, Forest River has not provided any meaningful evidence of any continuous back and forth as to the actual engineering and design of the trailers.  *See id.* (emphasis added).  Despite Forest River's attempts to characterize it as a significant event, David Porter's single visit – which lasted approximately three hours and concluded prior to lunch, *see* 2009 Deposition of Gaeddert, pg. 149, ln. 13-23, *See* Exhibit D attached – was nothing more than a rubber stamp over Forest River's production process and an inspection to ensure that the required upgrades and options were in the prototype.

Ultimately, despite its attempts to mischaracterize the FEMA Specs, Unit Inspection Reports, and Dave Porter's visit to Forest River's manufacturing facility as being more substantial than they are, Forest River cannot demonstrate the government's approval of its specifications and establish the first element of the *Boyle* test as a matter of law.  Accordingly, Forest River's motion for summary judgment should be denied.

### 3.    The FEMA Specifications do not Relate to the Issue at Hand

Assuming, *arguendo*, that the FEMA Specs could somehow be deemed to be reasonably precise or approved by the government as a matter of law, the approved specifications still must relate to the particular feature of the product claimed to be defective in order for the government contractor defense to apply.  *See Trevino*, 865 F.2d at 1486; *Bailey v. McDonnell Douglas Corp.,* 989 F.2d at 794, 799 (5th Cir. 1993)(a

court's analysis must focus upon the "particular feature" that is allegedly defective); *see also Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744 (9th Cir. 1997); *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1371, 1377-79 (11th Cir. 1997); *Shurr v. A.R. Siegler, Inc.*, 70F.Supp. 2d 900, 900 (E.D. Wis. 1999); *Strickland v. Royal Lubricant Co.*, 911 F. Supp. 1460, 1467-68 (M.D. Ala. 1995). The reasoning behind this rule is simple – where actions of the government contractor – and not those of the Government – produce the damaging defect, the logic of the government contractor defense does not apply. *See Mitchell,* 913 F.2d at 245-46.

The specific defective feature at issue here is the use of plywood, pressboard, and other products containing formaldehyde. Nothing in the FEMA Specs or other related documentation provided by Forest River addresses these components. *See* Exhibit B attached. Similarly, there is nothing in the Unit Inspection Reports relating to any of these components or design aspects. *See* Exhibit C attached. Forest River has thus failed to negate the factual dispute as to whether the particular defect at issue, the use of formaldehyde-containing products, was specified or approved by the government. *See* Trevino, 865 F.2d at 1486. Accordingly, regardless of this Court's finding as to the specificity of the FEMA Specs, summary judgment remains inappropriate and Forest River's motion should be denied.

### D.  Forest River Cannot Demonstrate Compliance with Reasonably Precise Specifications Because No Such Specifications Exist

The second *Boyle* element requires a contractor to establish that the equipment at issue conformed to the government's reasonably precise specifications. *See Boyle*, 487 U.S. at 512. In this case, the four-page FEMA Specs are not reasonably precise and, moreover, do not address the design issues raised by this lawsuit. Accordingly,

because no relevant specifications exist, Forest River cannot meet its burden on the second prong of the *Boyle* test.

### E.   Summary judgment should be denied because factual disputes exist on the failure to warn claim.

The third *Boyle* element requires proof that the contractor warned the government about possible dangers in the use of the product known to the contractor but not to the government. *Boyle*, 487 U.S. at 512. A contractor can satisfy this element by proving that (1) it lacked knowledge of any alleged danger relating to the product, or (2) that the government already knew of the alleged danger or hazard. *See Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 1003-04 (7th Cir. 1996). The logic behind the third element is simple – "in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability." *Boyle*, 487 U.S. at 512.

With respect to the third prong of the *Boyle* test, Forest River asserts as a primary argument that it had no knowledge of any alleged dangers with respect to the construction of its trailers, and more specifically, the use of formaldehyde in such trailers. *See* pg. 19 of Forest River's Motion. As a secondary argument, Forest River references FEMA's existing use of travel trailers prior to Katrina as well as the alleged formaldehyde warning set forth in the owner's manual accompanying each Forest River trailer. *See id.,* pg. 20-21 and the Forest River Recreational Vehicle Owner's Manuel, Exhibit E attached hereto.

Without addressing the adequacy of the warning in the owner's manual, Forest River's argument is, respectfully, not consistent with itself. The mere fact that Forest

River saw fit to place a warning in the owner's manual of each trailer is arguably de facto proof that they were, in fact, fully aware of the potential dangers associated with the use of formaldehyde in the travel trailers.  At the very least, the presence of the warning creates a genuine issue of material fact as to Forest River's knowledge.  Thus, Forest River's primary argument – that they had no knowledge of formaldehyde dangers – fails as a matter of law.

Accordingly, for purposes of summary judgment, the third prong of *Boyle* requires Forest River to demonstrate that FEMA already knew of these potential hazards as a matter of law.  *See Oliver,* 96 F.3d at 1003-04.  In the case at hand, however, fact questions exist both as to the adequacy of the warning and the timing of FEMA's knowledge regarding the dangers of formaldehyde.  *See, e.g.* Deposition of Geoffrey Compeau, pg. 104-05, Exhibit F attached, (suggesting that FEMA may have first learned of the formaldehyde dangers in Spring 2006, after the acquisition and installation of the Trailer); Deposition of FEMA's David Garratt, pg. 38, ln. 1-10 (first became aware of formaldehyde complaint in June 2006), and pg. 208, ln. 7-16 (not aware of formaldehyde complaints prior to Katrina) Exhibit G attached; 2009 Deposition of FEMA's Kevin Souza, pg. 30-31 (believed trailers to be safe at time of purchase) and pg. 42-43 (first heard of formaldehyde concerns in March 2006) Exhibit H attached. Forest River therefore cannot negate the factual disputes relating to the third prong of *Boyle* and summary judgment should be denied.

## CONCLUSION

The government contractor defense is only available to those who can meet all of the *Boyle* elements.  Absent a showing that no reasonable jury could find for the

Plaintiff, "[w]hether the facts establish the conditions for the [government contractor] defense is a question for the jury." *Boyle*, 487 U.S. at 514. Moreover, because the government contractor defense is an affirmative defense and Forest River carries the burden of persuasion, this Court must evaluate whether or not Forest River has met its burden with respect to each prong of *Boyle*. *See Bailey,* 989 F.2d at 802.

In this case, Forest River arguably cannot meet its burden of showing an absence of a genuine issue of material fact as to the government contractor defense and each underlying element. *See id.* However, even if this Court finds that Forest River has met its initial burden with respect to the government contractor defense, the Plaintiff has offered significant and probative evidence demonstrating the existence of material facts with respect to multiple elements of the *Boyle* test. Accordingly, summary judgment is not appropriate. *See International Shortstop,* 939 at 1264-65.

Respectfully Submitted,

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
      GERALD E. MEUNIER, #9471
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &
      Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:   504/522-2304
      Facsimile:    504/528-9973
      gmeunier@gainsben.com

      s/Justin I. Woods
      JUSTIN I. WOODS, #24713
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &

Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
Dennis Reich, Texas #16739600

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing on February 11, 2010.

 s/Gerald E. Meunier
GERALD E. MEUNIER, #9471