## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE PRODUCTS | * | |
| | LIABILITY LITIGATION | * | SECTION "N" (5) |
| | | * | |
| | | * | JUDGE ENGELHARDT |
| | | * | MAGISTRATE CHASEZ |
| | | * | |
| THIS DOCUMENT IS RELATED TO | | * | |
| | | * | |
| *Lyndon T. Wright v. Forest River, Inc., et al,* | | * | |
| Docket No. 09-2977; | | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFF'S RESPONSE TO DEFENDANT SHAW ENVIRONMENTAL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING FAILURE TO WARN

Plaintiff Lyndon Wright ("Plaintiff") responds to Defendant Shaw Environmental, Inc.'s ("Shaw") Motion for Partial Summary Judgment Regarding Failure to Warn (Docket Entry No. 10946) and in support, would show:

### BACKGROUND

Plaintiff is one of thousands of people displaced by Hurricanes Katrina and Rita. Following the devastation of these hurricanes, the Federal Emergency Management Agency ("FEMA") contracted with Shaw and other Individual Assistance/Technical Assistance Contractors ("IA/TACs") to aid in the delivery, installation, and maintenance of emergency housing units (each an "EHU") for the displaced victims of the disasters.

As an IA/TAC, Shaw was responsible for the delivery, installation, and initial maintenance of Plaintiff's specific EHU (the "Trailer"). Plaintiff's claims against Shaw arise out of Shaw's installation of the Trailer and ultimately allege that Shaw's

NPCHAR1:545479.1-MO-(JELLIS) 039371-00004

installation process created stress and distortion that allowed increased moisture intrusion and formaldehyde exposure due to cracks and opening in the shell of the Trailer.

## ARGUMENT AND AUTHORITIES

### I.    SUMMARY JUDGMENT STANDARD.

####    A.    Generally

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be granted if the pleadings, discovery, disclosure materials, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See* F. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996).  A party moving for summary judgment "must demonstrate the absence of a genuine issue of material fact." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

"If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial." *Harvey v. Toyota Material Handling, USA, Inc.*, No. 05-0561, 2007 WL 1115235 (W.D. La. April 13, 2007) (citing *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996)).   When considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party.  *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (5th Cir. 2001).  If there is sufficient evidence for a jury to return a verdict in the

NPCHAR1:545479.1-MO-(JELLIS) 039371-00004

nonmovant's favor, there is a genuine issue for trial, and thus, summary judgment is inappropriate. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## I.   Summary judgment should be denied because material issues of fact exist as to Plaintiff's failure to warn claim.

(A)   *Shaw had a duty to warn of the dangers of formaldehyde in the emergency housing units.*

Under the duty-risk analysis used in Louisiana, a finding of liability for the negligence of a defendant is predicated upon the existence of a duty and a subsequent breach thereof. *Gammill v. Invacare Corp.*, 2 So.3d 557, 559, 2008-0833, p. 3 (La.App. 4 Cir. 12/17/08) (citation omitted). Thus, to avoid summary judgment on his negligent failure to warn claim, Plaintiff must show that Shaw owed a duty to warn about the formaldehyde dangers.[1] The question of whether a duty is owed is one at law. *Rando v. Anco Insulations, Inc.*, 16 So.3d 1065, 08-1163 (La. 5/22/09). "In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Gary v. Moncla Well Service*, 21 So.3d 1101, 1104, 2009-377, p. 4 (La.App. 3 Cir. 11/4/09) (citing *Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095 (La.3/10/06), 923 So.2d 627, 632-33, *quoted in Rando*, 16 So.3d 1065).

As the Louisiana Court of Appeals stated in *Gammill*:

> In determining whether to impose a duty in a particular situation, the court may consider various moral, social, and

---

[1] Shaw's argument and memorandum in Support of its Motion for Partial Summary Judgment focuses solely on the duty element of Plaintiff's failure to warn claim. As such, this Memorandum, likewise, is limited to the duty element of Plaintiff's failure to warn claim.

> economic factors, including whether the imposition of a duty would result in an unmanageable flow of litigation; the ease of association between the plaintiff's harm and the defendant's conduct; the economic impact on society as well as the economic impact on similarly situated parties; the nature of the defendant's activity; moral considerations, particularly victim fault; and precedent as well as the direction in which society and its institutions are evolving.

*Id.* at 559 (*citing Fox v. Board of Supervisors of Louisiana State Univ.*, 576 So.2d 978 (La. 1991)).   Moreover, if a person undertakes a task which he otherwise has no legal duty to perform, he must nevertheless perform that task in a reasonable and prudent manner.   *Slaid v. Evergreen Indemnity, Ltd.*, 745 So.2d 793, 32,363 (La.App. 2 Cir. 10/27/99) (*citing Moore v. Safeway, Inc.*, 95-1552 (La.App. 1st Cir. 11/22/96), 700 So.2d 831, 846; *Crane v. Exxon Corp.*, 613 So.2d 214 (La.App. 1st Cir. 1992); *Marsalis v. LaSalle*, 94 So.2d 120 (La.App. Or. Cir. 1957).   "Negligent breach of a duty which has been voluntarily or gratuitously assumed may create civil liability." *Id. also citing, Rick v. State, DOTD,* 93-1776 (La.1/21/94), 630 So.2d 1271, 1275; *Brown v. Tesack,* 566 So.2d 955, 957 (La.1990); *Harris v. Pizza Hut,* 455 So.2d 1364, 1371 (La.1984); *Carlin v. Rapides Parish Police Jury,* 584 So.2d 337, 339 (La.App. 3d Cir.1991); *Barnes v. Bott,* 571 So.2d 183, 186 (La.App. 4th Cir.1990), *writ denied,* 573 So.2d 1141 (La.1991); RESTATEMENT (SECOND) OF TORTS § 324A.

Additionally, Louisiana law imposes a duty upon owners or one having custody or *garde* over a thing who knows or, in the exercise of reasonable care, should have know of a defect or dangerous condition to disclose the condition and to warn others of the condition's existence or correct the condition.   La. Civ.Code art. 2317.1;[2] *See, e.g.,*

---

[2] Specifically, article 2317.1 of the Louisiana Civil Code provides:

*Jamison v. United States*, 491 F.Supp.2d 608 (W.D. La. 2007). Here, to avoid summary judgment, Plaintiff is only required to show that questions of fact exist, under the particular facts and relevant considerations in this case, as to whether Shaw owed it a duty by contract, statute, jurisprudence, general negligence principles or otherwise.[3]

In the present case, Shaw alleges that it had no duty to warn about the formaldehyde danger in the EHUs because it never had knowledge that there was a formaldehyde danger and because the contract between Shaw and FEMA did not expressly impose a duty upon Shaw to investigate possible dangers or issue warnings. These assertions, however, are directly contradicted by the testimony of Shaw's Rule 30(b)(6) witness, Geoffrey Compeau.[4]  Mr. Compeau was Shaw's program manager for its IA-TAC program, and as program manager it was his responsibility to implement the tasks undertaken by Shaw in its contract with FEMA. (Deposition of Geoffrey C. Compeau, pp. 80-81).

Mr. Compeau testified that as it concerned the entire scope of work undertaken by Shaw relative to the installation, set-up and maintenance of the travel trailers, Shaw had a responsibility to install the trailers and carryout the entire scope of its work in a safe, secure and sanitary manner. *Id.* pp. 86-88.  Furthermore, he admits that pursuant to its contract with FEMA, Shaw had a duty to identify problems and raise any such problems that may arise that would impact the temporary disaster housing mission. *Id.* pp. 88-89.

---

"The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he know or, in the exercise of reasonable care, should have know of the ruin, vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. ..."

La. Civ.Code art. 2317.1.

[3] *See, e.g., Faucheaux v. Terrebonne Consol. Government*, 615 So.2d 289, 292 (La.1993); *Brow v. Allstate Indem. Co.*, 99-2319 (La.App. 1 Cir. 11/3/00), 771 So.2d 268, 272; *Hardenstein v. Cook Const., Inc.*, 96-829 (La.App. 1 Cir. 2/14/97), 691 So.2d 177).

[4] The relevant excerpts of Mr. Compeau's deposition are attached hereto as Exhibit A.

NPCHAR1:545479.1-MO-(JELLIS) 039371-00004

According to Mr. Compeau, if Shaw had problems that came up with respect to any aspect of the site identification, site preparation, installation and/or maintenance of the travel trailer, Shaw had a duty to identify the problems to FEMA and to discuss possible solutions to the problems. *Id.* p. 90. However, when issues regarding the formaldehyde dangers came to Shaw's attention, it failed to take action to identify or warn of such problems. Instead, Shaw merely relied on FEMA and anticipated that FEMA would direct Shaw as appropriate in dealing with the chemical odor issues. (Compeau, pp. 100-103).

Contrary to Shaw's allegations in support of summary judgment that it had no knowledge of formaldehyde dangers in the EHUs, Mr. Compeau clearly testified that Shaw knew there were issues/problems with formaldehyde in the travel trailers during the scope of its contract with FEMA. (Compeau, pp. 148-149). In fact, Mr. Compeau testified that Shaw received complaints of chemical odors from residents in the travel trailers as early as 2005 and 2006. (Compeau, pp. 115-117, 119-120). It is undisputed that after learning of the formaldehyde chemical odors in the travel trailers Shaw did not test any of the trailers or conduct any further inspections to check for formaldehyde or determine the extent of the danger posed by the chemical emissions. (Compeau, pp. 143-144, 146).

Shaw's knowledge regarding formaldehyde emission problems in the EHUs is further evidenced by internal communications between Shaw employees showing that it was aware chemical odor issues at the time of arrival for some of the travel trailers and when Shaw personnel were attempting to install the trailers. *See* (Compeau, pp. 99-100). Additionally, the record contains numerous emails exchanged between or including

numerous Shaw employees between March 2006 and July 2006 that clearly demonstrate Shaw's knowledge of the formaldehyde odor issues and dangers in the mobile housing units. *See,* (Compeau, pp. 109-121, and Deposition Exhibits 4-9 (Attached hereto as Exhibits B through G)). Mr. Compeau testified that, as evidenced by these emails, the problem of formaldehyde in the travel trailers was being discussed by Shaw personnel in March 2006, at the latest. *Id.* pp. 110, 114-115, 116-117, 128.

Despite the Defendant's contrary assertions, the evidence of record clearly shows that Shaw knew the dangers surrounding formaldehyde in the EHUs and failed to inform the Plaintiff of such hazards. Shaw was aware of certain odors early on in the process, prior to installation of the trailers, but did nothing to communicate this fact to FEMA, the Plaintiff or any other occupants. *See generally,* (Compeau, pp. 100 – 103). In fact, a Shaw representative even went so far as to recommend that Shaw make FEMA "**aware** of [the formaldehyde issues] (as the 'owners' of the trailers)." (Compeau, pp. 158 – 160, and Deposition Exhibit 8 thereto (attached as Exhibit F)) (emphasis added). Moreover, this May 17, 2006 email between Shaw employees also contains specific, detailed information taken from the EPA's website regarding the dangers of formaldehyde emissions from materials used in the construction of mobile homes and similar housing structures. *Id.* This internal communication between Shaw employees is indisputable evidence that Shaw was aware of the dangers of formaldehyde emissions in trailers and, more specifically, evidences Shaw's knowledge and concern regarding formaldehyde dangers in the travel trailers FEMA provided the Plaintiff and other individuals.

Even assuming, *arguendo,* that Shaw had no statutory or contractual duty to inspect the Plaintiff's housing unit and warn of formaldehyde dangers, Shaw undertook

such a duty through its actions related to the transportation, installation, preparation, inspection, and maintenance of the EHU.  Moreover, based on the particular facts and circumstances involved in this case, including but not limited to, the nature of Shaw's relationship with the Plaintiff and FEMA and the extent of the duties and activities Shaw performed in relation to the EHUs (i.e., transportation, installation, preparation, inspection, maintenance and repair, etc.), general principles of liability impose a duty upon Shaw to warn Plaintiff and other occupants of actual and/or potential formaldehyde dangers in the EHUs of which it was aware of should have reasonably been aware based on its experience and knowledge.  *See, e.g., Slaid*, 745 So.2d 793 (holding summary judgment improper where questions of fact existed as to whether a person with the defendant's knowledge and experience would or should have taken particular notice of the hazardous condition and finding that an affirmative duty would be imposed on the defendant to alert of the potentially dangerous condition if a reasonable inspection would have uncovered the condition).

Defendant's motion for summary judgment as to Plaintiff's failure to warn claim must be denied because, as demonstrated above, questions of material fact exist as to Shaw's knowledge regarding the existence of formaldehyde dangers and whether Shaw owed a duty to Plaintiff and others under the circumstances based on its knowledge and experience.  Even assuming that Shaw had no affirmative contractual or statutory duty to inspect or issue warnings, under the particular facts and relevant considerations in this case, Shaw is charged with such a duty by general negligence principles of liability.  Summary judgment is not to be used as a substitute for a trial on the merits.  *Osborne v. Vulcan Foundry, Inc.*, 675 So.2d 837, 841, 95-2766 (LA.App. 4 Cir. 5/29/96) (citation

NPCHAR1:545479.1-MO-(JELLIS) 039371-00004

omitted).  It is not the function of the trial court on a motion for summary judgment to decide or even inquire into the merits of the issues raised, to weigh conflicting evidence on a material fact or make evaluations of credibility.  *Id.* at 842 (citations omitted).  "A motion for summary judgment is not appropriate for disposition of cases requiring a judicial determination of subjective facts, e.g., motive, intent, good faith, and **knowledge**."  *Id.* at 841 (*citing Jefferson Parish School Bd. v. Rowley Co., Inc.,* 305 So.2d 658, 663 (La.App. 4 Cir.1974); *Butler v. Travelers Ins. Co.,* 233 So.2d 271 (La.App. 1 Cir.1970)); *see also, Wilson v. State Farm Fire and Casualty Insurance Co.,* 654 So.2d 385, 388, 94-1342 (La.App. 3 Cir. 4/5/95).

## II.   The government contractor defense is inapplicable to Plaintiff's failure to warn claim and Shaw cannot meet the requirements to assert the affirmative defense.

Shaw also seeks summary judgment as to Plaintiff's failure to warn claim by asserting that it is entitled to immunity under the government contractor defense.  Summary judgment should be denied because Shaw has failed to establish the elements required for application of the government contractor defense, and therefore the affirmative defense cannot act as a bar to Plaintiff's failure to warn claim.  Shaw has failed to meet its burden to show that the government exercised any control or discretion over Shaw's activities with respect to warnings.  Moreover, summary judgment must be denied because whether the facts of a particular case establish the required conditions for this affirmative defense is a question of fact for the jury.  *Boyle v. United Technologies Corp.,* 487 U.S. 500, 514, 108 S.Ct. 2510 (1988).

The government contractor defense is an affirmative defense, for which Shaw bears the burden of proof.  *See Bailey v. McDonnell Douglas Corp.,* 989 F.2d 794, 802

(5th Cir. 1993). Accordingly, Shaw must show evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial and demonstrate the absence of any material fact. *See id.* (citations omitted). As a non-moving party without the burden of proof, the Plaintiff need only produce significant, probative evidence demonstrating the existence of a material fact *after* Shaw meets its initial burden. *See International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991)(emphasis added).

**(A)     *Shaw cannot meet the first to elements of the government contractor defense for failure to warn claims.***

In *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988), the Supreme Court extended the immunity afforded to discretionary functions of the federal government to government contractors by allowing them an affirmative defense in state law tort actions where a "significant conflict" exists between the requirements of state law and the contractor's obligations to the federal government.[5] *Id.* at 512, 108 S.Ct. 2510; *see also, Densberger v. United Technologies Corp.*, 297 F.3d 66, 75 (2nd Cir. 2002). "The affirmative defense applies only if the government exercised significant control over the relevant actions of the contractor." *Densberger*, 297 F.3d at 75. While the court in *Boyle* did not address the applicability of this defense to a failure to warn claim, it has been extended by other courts to apply in the failure to warn context under certain circumstances. *See, e.g., Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th

---

[5]  In Boyle, the Supreme Court articulated the following three requirements for asserting the affirmative defense:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the     equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States.

*Boyle,* 487 U.S. at 513.

NPCHAR1:545479.1-MO-(JELLIS) 039371-00004

Cir. 1998); *In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d 570 (5th Cir. 1996); *Garner v. Santoro*, 865 F.2d 629 (5th Cir. 1989).

The law is clear that a defendant cannot defeat a failure to warn claim by simply establishing the elements of the government contractor defense applicable to a design defect claim. *See*, *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996). The elements of the *Boyle* test as applied in the context of failure to warn claims are: (1) the government exercised discretion and control over the nature of product warnings; (2) the contractor complied by providing the warnings required by the government; and (3) the contractor warned the government of all product dangers known to it but not to the government. *See Densberger*, 297 F.3d at 75; *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996). However, the government contractor defense to a failure to warn claim is not available if the government contract is silent on the question of warnings or the specifications did not preclude additional warnings. *See generally*, 72A C.J.S. Products Liability § 82 (2009).

The government contractor defense does not apply to a failure to warn claim unless the government, for reasons of federal interest, makes a discretionary decision to control or limit the warnings provided to the end-user. *Densberger*, 297 F.3d at 75. "*Boyle's* government contractor defense in the failure to warn context requires that a federal authority exercise *some* degree of *direct* influence over the contractor's activities with respect to warnings." *Cole v. Northrop Grumman Ship Systems, Inc.*, 2008 WL 2651428 at *5 (E.D. La. 2008) (finding the government contractor defense not a colorable defense where government did not exercise direct control over warnings).[6]

---

[6] In *Northrop Grumman Ship Systems, Inc.*, the District Court for the Eastern District of Louisiana cited a line of cases from that District all of which hold that, in the failure to warn context, for the government

NPCHAR1:545479.1-MO-(JELLIS) 039371-00004

This affirmative defense bars the ultimate product users from suing the contractor for failure to warn only where "the government controlled which warnings the contractor was allowed to provide *to those users*, and thereby precluded the warnings at issue from being given." *Densberger*, 297 F.3d at 75 (*citing In re Joint Eastern and Southern District New York Asbestos Litigation (Grispo v. Eagle Picher Industries, Inc.)*, 897 F.2d 626, 630, 632 (2nd Cir. 1990)).  As the Second Circuit Court of Appeals held in *Grispo*, *supra*, for the government contractor defense to apply the contractor must show "that the Government itself 'dictated' the content of the warnings meant to accompany the product," and "that the Government controlled or limited the ability of contractors … themselves to warn those who would come into contact with its product." *Densberger*, 297 F.3d at 76 (*citing Grispo*, 897 F.2d at 630, 632).

In the present case, Shaw is not entitled to protection under the government contractor defense because it cannot establish an identifiable federal interest or policy in the existence of warnings or a significant conflict between that federal interest and the operation of state law.  Moreover, because Shaw cannot show that the government limited Shaw's ability to provide warnings to Plaintiff or that it dictated the content of warnings concerning the EHUs, the defense does not preclude recovery in this case.  It is undisputed that the contract between FEMA and Shaw is silent as to warnings, and neither the contract nor the government specifications precluded Shaw from issuing warning concerning the EHUs to Plaintiff or other occupants.  *See*, (Shaw Memo. in Support of Motion for Partial Sum. Judg., pp. 4-6 (Document 10946-2)).  As Shaw

---

contractor defense to apply the defendant must establish that "the government, at a minimum, had to provide some level of direct control over warnings... ." Id. at *4 (citing *Gauthe v. Asbestos Corp.*, 1997 WL 3255 (E.D.La.1997); *Porche v. Flexitalic, Inc.*, 1996 WL 603919 (E.D.La.1996); *Savoie v. Northrop Grumman*, No. 05-2086 (E.D.La.2005); *Mouton v. Flexitallic, Inc.*, 1999 WL 225438 (E.D.La.4/19/99); *Guidroz v. Anchor Packing*, No. 98-3709 (E.D.La .1999).

NPCHAR1:545479.1-MO-(JELLIS) 039371-00004

admits, the record is void of any evidence whatsoever that FEMA exercised <u>any</u> degree of direct control or influence over Shaw's activities w/ respect to warnings.

Without a showing that FEMA exercised discretion or control over Shaw's activities in regard to warnings, Shaw has failed to meet it burden of proof under the first prong of the affirmative defense. Moreover, Shaw admits that it has never provided any warnings to the Plaintiff or any other occupants concerning the EHUs and that it has not conducted any activities related to warnings. Therefore, it cannot proffer any evidence that FEMA exercised direct influence over Shaw's activities concerning warnings nor can it show that it complied with government direction or requirements as to warnings. As such, summary judgment is inappropriate and must be denied.

**(B)   *Questions of fact remain as to Shaw's and FEMA's knowledge regarding the dangers of formaldehyde.***

The third *Boyle* element requires proof that the contractor warned the government about possible dangers in the use of the product known to the contractor but not to the government. *Boyle*, 487 U.S. at 512. A contractor can satisfy this element by proving that (1) it lacks knowledge of any alleged danger relating to the product, or (2) that the government already knew of the alleged danger or hazard. *See Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996). Even assuming, *arguendo*, that Shaw could satisfy the first to elements of the government contractor defense, summary judgment must be denied because questions of fact exist s to both Shaw's and FEMA's knowledge concerning dangers of formaldehyde.

As discussed above in the first section of this memorandum, the testimony of Shaw's Rule 30(b)(6) witness along with internal communications between various Shaw representatives patently demonstrates that material issues of fact exist as to Shaw's

NPCHAR1:545479.1-MO-(JELLIS) 039371-00004

knowledge of dangers associated with formaldehyde. Where, as in this case, the contractor, by virtue of being engaged in the business, should have known as much as, if not more than, the government regarding toxicity, the government contractor affirmative defense is weakened. *See*, *Strickland v. Royal Lubricant Co.*, 911 F.Supp. 1460 (M.D. Ala. 1995). Furthermore, whether FEMA may have had prior knowledge of the formaldehyde problems, as Shaw alleges in support of its motion, is a question of fact which precludes summary judgment in this case.

Clearly, factual questions exist both as to the timing and extent of FEMA's knowledge regarding the dangers of formaldehyde. *See, e.g.* Deposition of Geoffrey Compeau, pg. 104-05 (suggesting that FEMA may have first learned of the formaldehyde dangers in Spring 2006, after the acquisition and installation of the Trailer); Deposition of FEMA's David Garratt, pg. 38, ln. 1-10 (first became aware of formaldehyde complaint in June 2006), and pg. 208, ln. 7-16, See Exhibit I attached, (not aware of formaldehyde complaints prior to Katrina); 2009 Deposition of FEMA's Kevin Souza, pg. 30-31 (believed trailers to be safe at time of purchase) and pg. 42-43, See Exhibit J, (first heard of formaldehyde concerns in March 2006). Shaw has offered no evidence to demonstrate that, as a matter of law, FEMA had knowledge of the presence of odors or formaldehyde issues in the trailers (and the associated danger) prior to the placement of the trailers in the forward yards. Furthermore, the correspondence referenced above and testimony from Shaw's own representative suggests that fact questions do in fact exist as to whether or not FEMA was aware of the formaldehyde issues at the time they came to Shaw's attention. Therefore, as a matter of law, Shaw cannot meet its burden with respect to the third element of the *Boyle* test.

The government contractor defense is an affirmative defense, and Shaw bears the burden of proof to demonstrate the absence of any material fact as to each element.  It has failed to satisfy this burden.  As the Supreme Court stated in *Boyle*, "Whether the facts establish the conditions for the [government contractor] defense is a question for the jury."  *Boyle*, 487 U.S. at 514.  As such, Defendant has failed to meet its burden to prove the government contractor affirmative defense, and its motion for partial summary judgment should be denied.

## CONCLUSION

Pursuant to the authority cited above, Shaw's motion for summary judgment must be denied because material questions of fact exist as to the duty Shaw owed Plaintiff to warn of dangers associated with formaldehyde and the extent of Shaw's knowledge regarding such dangers.  Moreover, Shaw cannot meet its burden of showing an absence of a genuine issue of material fact as to the government contractor affirmative defense and each underlying element.  However, if this Court finds that Shaw has met its initial burden with respect to the government contractor defense, the Plaintiff has offered significant and probative evidence demonstrating the existence of material facts with respect to each of the elements of the *Boyle* test.  For the reasons stated herein, summary judgment is not appropriate as to Plaintiff's failure to warn claim, and Plaintiff respectfully requests that Shaw's Motion for Partial Summary Judgment be denied as a matter of law.

Respectfully Submitted,

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

NPCHAR1:545479.1-MO-(JELLIS) 039371-00004

BY:     s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:   504/522-2304
        Facsimile:    504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:   504/522-2304
        Facsimile:    504/528-9973
        jwoods@gainsben.com

        **COURT-APPOINTED PLAINTIFFS'
        STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON, #9938
        MIKAL WATTS, Texas # 20981820
        Dennis Reich, Texas #16739600

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on February 12, 2010.

         s/Gerald E. Meunier
         GERALD E. MEUNIER, #9471

NPCHAR1:545479.1-MO-(JELLIS) 039371-00004