UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Lyndon Wright v. Forest River, Inc., et al.*; | * | |
| Docket No. 09-2977 | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CAUSATION

Plaintiff Lyndon Wright (hereinafter "Plaintiff" or "Wright"), through undersigned counsel, respectfully submits this response to Defendants Forest River, Inc. ("Forest River") and Shaw Environmental, Inc.'s ("Shaw") Motion for Summary Judgment regarding causation (Docket Entry No. 10933) and, in support, will show:

### SUMMARY OF ARGUMENT

The Motion for Summary Judgment on medical causation filed by both Forest River and Shaw (hereinafter "Defendants") argues that Plaintiff fails to show general or specific medical causation for his injuries. This is wholly untrue, and the Summary Judgment must fail. There are three specific areas of causative links between formaldehyde and the adverse health effects experienced by Lyndon Wright: (1) the exacerbation of rhinosinusitis as reported by Plaintiff's expert Toxicologist/Pulmonologist, Lawrence Miller, MD; (2) the diagnosis of by Defense medical expert, Dr. Kenneth Smith; and (3) the known carcinogenic properties of formaldehyde, coupled with the myriad of symptoms Wright experienced during and after his occupancy of the trailer, clearly support his fear of cancer claim. Further, Plaintiff's general causation expert

Toxicologist, Dr. Patricia Williams, PhD, DABT, offers general causational support for the above. Finally, the fact that Wright's current treating physician, Dr. Richard Spector, who also offered expert reports in this matter, cannot clearly identify what is causing Wright's ongoing symptoms further support the mental anguish and fear of cancer associated with Wright's exposure to formaldehyde. He is struggling with the uncertainty of exactly what will happen to his health in the future, and voiced his concern to Dr. Edward Shwery, PhD, during his psychological evaluation.

Finally, Plaintiff also filed responses to Motions for Summary Judgment relating specifically to mental anguish filed by both Shaw and Forest River, and re-avers and incorporates all arguments made therein without necessarily repeating them in the instant response.

## FACTUAL BACKGROUND

In March 2006, Plaintiff Lyndon Wright moved in to a trailer that was manufactured by Forest River and installed by Shaw. Shortly after moving in to the Trailer, Wright began to feel sick. He felt so ill that he voiced his concern to his mother in a phone call made in early April 2006 where he stated that he was worried the Trailer was making him sick.[1] However, on April 10, 2006, Wright went to his doctor and was told that he had "seasonal allergies."[2] As such, with his doctor's diagnosis, he had no reason to think the trailer was making him sick. In fact, it was not until after a conversation with an individual about formaldehyde and this litigation that Wright realized his physical symptoms were in fact caused by formaldehyde exposure from

---

[1] See selected excerpts from the Lyndon Wright deposition attached hereto as Exhibit "A", at p. 171.
[2] See April 10, 2006 medical record attached as Exhibit "B".

2

living in the Trailer.[3]

Wright resided in the Trailer from March 2006 until July 2008.[4] During this time, his physical condition continued to deteriorate, and he began noticing the presence of blood in his sputum every day.[5] He saw Dr. Knight Worley for this bleeding, but Dr. Worley never gave him an indication that it was caused by living in the Trailer, rather he was diagnosed with sinusitis and was prescribed antibiotics (which did not work).[6] In October, 2008, Wright's Trailer was tested for formaldehyde and a level of .048 ppm was found by the WD Scott Group. During later testing, in August 2009, levels as high as .130 ppm were found in the trailer.[7]

Wright still experiences health problems since leaving the trailer, with frequent bloody sputum in the mornings, and with ongoing sinus complaints.[8] In June, 2009, Wright underwent a defense directed medical examination by Kenneth Smith, MD, who diagnosed Wright with asthma following a methacholine challenge, and also identified numerous physical complaints which Wright experience while living in the trailer, but subsequently resolved when Wright moved out of the trailer.[9]

In late July, 2009, Wright went to Dr. Spector, an otolaryngologist and surgeon, for an examination. Dr. Spector's examination revealed a growth at the base of Wright's tongue/back of his throat. Dr. Spector ordered a biopsy of the growth, which was done in early August,

---

[3] See Exhibit "A" at p.217
[4] Exhibit "A" p. 299
[5] *Id.* at p. 148
[6] *Id.* at p. 147
[7] Test Results from WD Scott Group are attached as Exhibit "C".
[8] See Wright deposition, Attached as Exhibit "A", pp. 145-148.
[9] Dr. Smith's report is attached hereto as Exhibit "D"

3

2009.[10]  The results of the biopsy indicated no malignancy in the growth, which was determined to be a neuroma, but Dr. Spector was unable to determine what caused the growth or whether it related to Wright's exposure to formaldehyde in the trailer.  Nor was Dr. Spector able to determine the causal source of the bloody sputum which Wright experienced every morning.[11]

Wright discussed the biopsy and ongoing uncertainty about the impact that formaldehyde exposure has had on his health at a September 24, 2009, psychological evaluation with Dr. Edward Shwery, who indicated that the biopsy served as a crystallizing event for Wright, and that he now experiences severe emotional distress in the form of anxiety and depression relating to his time in the trailer his exposure to formaldehyde.[12]  On or about November 5, 2009, Wright again underwent a psychiatric evaluation, this time by Defendant expert Dr. John Thompson, Jr., MD, who again reported Wright suffered from severe anxiety and mild depression based upon psychological testing Dr. Thompson had ordered.[13]

It is also important to note that Plaintiff has entered into stipulations with Defendants waiving his claims of medical monitoring and future lost wages.

## ARGUMENT AND AUTHORITIES

### I.   SUMMARY JUDGMENT STANDARD.

#### A.   Generally

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

---

[10] See Dr. Spector's Final Report attached hereto as Exhibit "E".
[11] Id.
[12] See Dr. Shwery Final Report attached hereto as Exhibit "F"
[13] See Dr. Thompson's Report attached hereto as Exhibit "G"

4

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (5th Cir. 2001).

In evaluating evidence to determine whether a factual controversy exists, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255. Instead, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe and should give credence to the evidence favoring the non-moving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## II. GENUINE ISSUES OF FACT REMAIN ON CAUSATION

### A. Generally

In Louisiana, issues concerning fault in a civil action are decided based on a preponderance of the evidence, which requires a fact-finder to consider all evidence, direct or

circumstantial, to determine whether a fact is more probable than not. *Hanks v. Entergy Corp.*, 06-477 (La.12/18/06), 944 So.2d 564, 578. Proof is sufficient to constitute a preponderance of the evidence when the entirety of the evidence, both direct and circumstantial, establishes that the fact or causation sought to be proved is more probable than not. *Cay v. State Dep't. of Trans. and Dev*. 93-0887 (La.1/14/94), 631 So.2d 393, 395; *Riley v. Salley*, 03-1601, p. 2 (La. App. 4 Cir. 4/21/04), 874 So.2d 874, 876.

Use of circumstantial evidence and the deductions and inferences arising therefrom is a common process for establishing liability in negligence cases. *Cangelosi v. Our Lady of the Lake Regional Medical Center*, 564 So.2d 654 (La.1989). It is well established that circumstantial evidence can be used to defeat a motion for summary judgment. *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226.

Causation is a factual question to be determined by the factfinder. *Benjamin ex rel. Benjamin v. Housing Authority of New Orleans*, 04-10585 (La.12/1/04), 893 So.2d 1, 7. *Wallace v. State Farm Mutual Automobile Insurance Co.*, 36,099 (La.App. 2d Cir.6/14/02), 821 So.2d 704; *Maryland Cas. Co. v. Advance Transformer Co.* (La. App. 3d Cir. 4/6/94), 635 So.2d 565, 567.

Further, Louisiana utilizes a legal presumption of causation established in *Housley v. Cerise*, 579 So.2d 973 (La.1991). The presumption provides three factors that must be shown in order to apply the presumption: (1) The plaintiff must demonstrate that he was in good health prior to the accident at issue; (2) He must demonstrate that subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested themselves afterwards; (3) He must

6

demonstrate that through evidence, medical, circumstantial, or common knowledge, a reasonable possibility of causation between the accident and the injury claimed.  *See id.*  Whether that presumption applies is a question of fact.  *Viviano v. Progressive Sec. Ins. Co*., 05-125 (La.App. 3 Cir. 1/11/06), 920 So.2d 313, writ denied, 06-359 (La.4/28/06), 927 So.2d 290.

Finally, and specific to fear of cancer, Louisiana jurisprudence recognizes that a plaintiff may recover damages for the serious mental distress arising from his fear of developing cancer as a result of the negligence of another.  *Smith v. A.C. & S, Inc.,* 843 F.2d 854, 858 (5th Cir. 1988);  *Bartlett v. Browning-Ferris Industries, Chemical Services, Inc.,*683 So.2d 1319, 1323 (La.App. 3 Cir.), *writ denied*  692 So.2d 394 (La. 1997); *see also Hoerner v. ANCO Insulations, Inc.* 812 So.2d 45, 49 (La.App. 4 Cir., 2002).  The compensable injury is the mental anguish the plaintiff suffers as a result of his fear of developing cancer.  *Smith*, 843 F.2d at 858.  To recover for fear of cancer, the plaintiff must establish that his fear is reasonable, and that it is causally related to the defendant's negligence. Id.

A fear of cancer claim is essentially a specific type of mental anguish claim.  *Hagerty v. L & L Marine Services, Inc.,* 788 F.2d 315, 318 (C.A.5 (La.),1986.)  The evidentiary focus for recovery is therefore the plaintiff's own testimony. Id. at 855; *see generally Bartlett,* 683 So.2d 1319, 1322-23.  The plaintiff must credibly establish that he presently suffers from the fear of developing cancer with specificity.  *Smith,* 843 F.2d at 858.  The circumstances surrounding the fear-inducing occurrence may serve as proof of the reasonableness and genuineness of his testimony.  Id.

7

B.	**Factual Disputes Clearly Remain**

While Defendants attempt to argue that none of the health effects experienced by Wright were caused by his exposure to formaldehyde, this is simply not true. Further, there is clear support offered by numerous experts in this litigation (both Defendant and Plaintiff) that, in fact Wright has claims which at the very least should have their day in court. The Plaintiff avers that there are very simple and straightforward claims to which dispute clearly remains. They are: (1) Plaintiff's rhinosinusitis was exacerbated from his exposure to formaldehyde while living in the Trailer; (2) Plaintiff either developed asthma or his existing asthma was made worse due to formaldehyde exposure while living in the Trailer; and (3) Plaintiff's fear of cancer is justified due to the exposure to formaldehyde, a known human carcinogen, while living in the Trailer. Additionally, Wright experienced a number of health effects which are discussed by both Plaintiff and Defendant experts, which resolved after moving out of the trailer, and which are connected with formaldehyde. While Defendants spend significant time arguing that Plaintiff has failed to show Specific Causation, Plaintiff would argue that this is not the case in each of the issues identified above, and as will be discussed herein. As such, disputes of material fact remain, therefore, the Defendants' Motion for Summary Judgment must fail.

i.	**Exacerbation of Rhinosinusitis**

The Plaintiff expert Lawrence Miller, MD, MPH, offers his specific causation opinion that Wright's rhinosinusitis was exacerbated by the formaldehyde exposure over the approximately 28 month occupancy of the Trailer.[14] Dr. Miller wears many hats -- an MD

---

[14] See Exhibit "H" p. 7.

internal medicine and pulmonary specialist, but also specialist in pharmacology and an M.P.H in Environmental Health, with a significant number of peer reviewed publications and contributions.[15] As such, Dr. Miller is more than capable of giving both general and specific causation opinion, and his investigation and study to that effect is clearly reflected in his report.

In his October 2, 2009 report, Dr. Miller discusses the numerous toxicology studies in a general causation context, and then applies the general and known toxicological data to Wright's specific causation wherein he makes his specific causation opinion of exacerbation of rhinosinusitis.[16] Further, he is qualified to do both. It is important to note that Dr. Miller's initial deposition in November, 2009, was cut short with a mutual agreement to reopen the deposition at a later date. As such, counsel for Plaintiff did not offer any rehabilitative or direct lines of questions to the effect of Dr. Miller's credentials to give both specific and general causational opinion. However, despite the mutual agreement to re-open the deposition, defendants chose not to proceed.[17] The following transpired at Dr. Miller's initial deposition:

> Mr. Bone:
>
> At this point I am going to look over my notes and hand him off to the other attorneys. With respect to the documents we requested, obviously, we will reschedule at a mutually convenient time after we have had the opportunity to look through the medical records that the doctor has reviewed and his notes and any other of the documents that may be contained in his file, whether that be a written, you know, notes relating to phone calls or the intake notes relating to Mr. Wright himself.
>
> Mr. D'Amico:

---

[15] See Dr. Miller's CV attached hereto as Exhibit "I"
[16] See Miller affidavit attached hereto as Exhibit "H"
[17] See Miller deposition transcript, Exhibit "J", p. 119-120.

> That's fine. Also, there are some documents that we do not have, some deposition testimony that has never been provided to us, for instance, and obviously we would like him to look at those as well.
>
> Mr. Bone:
>
> Okay. Do you have any?
>
> Ms. Whitfield:
>
> I think I'm just going to wait until after we get the file.

In his report, Dr. Miller discusses, generally, the toxicological effects of durational exposure on the upper respiratory tract, and the "broad agreement that formaldehyde exposure is correlated with rhinosinusitis." In fact pages 4 and 5 of Miller's report go into great detail on general causational issues.[18] Dr. Miller clearly offers both general and specific toxicological/medical opinion relating to exacerbation of rhinosinusitis in his October 2, 2009 report, and, as such the Defendants' claims that we offer no supporting general causation with our specific causation opinions is inaccurate, erroneous and must fail.

Further, objective medical records show physiological changes in Wright's nasal cavity from before and after Wright lived in the Forest River trailer. These records were discussed at the deposition of Defense expert Dr. Smith's deposition, where Dr. Smith acknowledged that a 2002 CT scan that Wright underwent was significantly different from a 2009 CT scan that Wright underwent, both relating to his sinuses.[19] The 2002 CT scan states: "The visualized portions of the paranasal sinuses and the orbital contents are grossly unremarkable in appearance", while the 2009 CT scan has a finding of "bilateral maxillary sinusitis along with

---

[18] See Miller October 2, 2009 report attached hereto as Exhibit "H"
[19] See relevant pages of Dr. Smith's deposition attached hereto as Exhibit "K", p. 124.

10

spheno idal sinusitis…"[20]

Dr. Miller's opinion that Wright's formaldehyde exposure exacerbated his rhinosinusitis is grounded in an interview with Mr. Wright, an examination of the medical records, including but not limited to the CT scans referenced herein, and an extensive survey of the scientifically accepted general causational studies.  As such, the Defendants' argument that Plaintiff fails to satisfy his causational requirement for Dr. Miller's opinion must fail, and all that remains is a disputed issue of material fact.

### ii. Defense Diagnosis of Asthma is Supported by Patricia Williams

It is interesting that Defendants fail entirely to mention that their own expert, Dr. Kenneth Smith, diagnosed the Plaintiff with asthma.  This is also supported by Dr. Patricia Williams' lengthy and voluminous general causation analysis in her report.[21]  In fact, Dr. Smith discusses in his report historical support for a diagnosis of asthma in the Plaintiff, and that it probably made the cough experienced by Wright while living in the trailer worse.[22]

At deposition, Dr. Smith discussed his finding of asthma in Wright:

Q. Well, in fact, he did tell you that he had never known that before?

A. That's correct.  He told me he was surprised he had asthma, that he had a positive test, and probably said something to the effect that he had never been told that before.  Whether or not that's true, I don't know.  But I couldn't find anything in the medical record where he was told that he had asthma.

---

[20] The two CT scans are attached as Exhibit "L"
[21] It must be noted that Dr. Williams expert report in Wright merely builds upon her previous report and testimony in the first bellwether trial, where the issue of asthma exacerbation was the fundamental medical issue at trial.  As such, since she has already faced exceptions in that litigation on point here relating to asthma exacerbation, Plaintiff would aver that this honorable Court take judicial notice of its prior acceptance of the expert testimony of Dr. Williams.  Plaintiff incorporates and re-avers all arguments made on behalf of Dr. Williams in the first bellwether trial.
[22] See Dr. Smith report, p.3 attached hereto as Exhibit "D"

> Q. And that's where I'm getting at. You didn't find in the medical records where a diagnosis of asthma had been made pre-living in the travel trailer?
>
> A. Not the diagnosis, that's correct.
>
> Q. Okay. And so if he told you that he had never been told that before, you were not able to find any evidence of it in the medical records?
>
> A. Any evidence that he had been told that?
>
> Q. Yes.
>
> A. That's correct.
>
> Q. So that would support at least an objective point of view from the medical records that nobody told him that before?
>
> A. That's correct.

In addition to the diagnosis of asthma, Dr. Smith, in his report, stated that "the cough that he experienced while living in the trailer was mild, historically, but may have been worse than it might otherwise have been because of underlying asthma."[23]

There is clearly an issue of material fact which must be determined by a trier of fact at trial relating to the diagnosis of asthma in Wright that would simply preclude summary judgment. Because of Defendant's own expert diagnosis of Wright with asthma (which had never previously been diagnosed) that exacerbated his condition living in the trailer, coupled with the voluminous report language in Dr. Williams' general causation expert report, Plaintiff argues that the Defendants' Motion for Summary Judgment must fail.

---

[23] See Smith Report, p. 3 attached hereto as Exhibit "D"

### iii. Fear of Cancer

While Plaintiff incorporates and re-avers all arguments relating to his mental anguish and fear of cancer as they have been pled responsive to contemporaneous Motions for Summary Judgment filed by both Shaw and Forest River, it is important to raise a few points in the instant Opposition. Most importantly, a fear of cancer claim, by its nature is almost purely factually driven, both in regards to defendant negligence causing exposure to a cancer causing agent, and rests on the factual testimony of the Plaintiff. As such, and because of the purely factual nature of the fear of cancer claim, Plaintiff argues that at its onset, the Defendants' Motion for Summary Judgment must be denied.

The question of a quantifiable increase in risk is totally irrelevant to a fear of cancer claim. Wright must merely show that his fear is reasonable and that it stems from the negligence of others (i.e. Shaw and/or Forest River). See *Smith v. A.C. & S, Inc.,* 843 F.2d 854 (5th Cir. 1988). In the instant matter, the Plaintiff knows that he was exposed to a known human carcinogen.[24] Further, while living in the trailer he began coughing up blood on an almost daily basis. He has had a biopsy of a non-malignant growth at the base of his tongue (which has not stopped his bloody sputum).[25] His treating physician cannot tell him what the source of the blood is, or what caused either the growth or bloody discharge, and that he doesn't know if it was caused by exposure to formaldehyde.[26] Finally, Wright has voiced his significant concerns to both Plaintiff and Defendant psychological experts, and has been diagnosed by both as having

---

[24] See Dr. Miller report attached hereto as Exhibit "H"
[25] See the Final report of Dr. Spector, attached hereto as Exhibit "E"
[26] Id.

13

severe anxiety.[27]

It is very important to point out that Defendants' falsely attempt to characterize Dr. Spector's report as refuting any connection between either the growth in Wright's throat, or his bloody sputum to formaldehyde whatsoever.  Dr. Spector in his report, and as illustrated by both Lyndon Wright and Dr. Spector at deposition, really indicated he could not identify what caused either the neuroma or the bloody mucous.  At deposition, Dr. Spector stated:[28]

> Q.   Doctor, you stated in your report that you cannot find or cannot attribute this neuroma to the alleged formaldehyde exposure, correct?
>
> A.   That's correct.
>
> Q.   All right.  And based on your explanation, I think I understand but just to be clear, by that positive statement that you can't attribute it, is it also true that you can't rule it out as a possible cause?
>
> A.   Yes, I think the converse is a fair statement.  I have no evidence to blame the formaldehyde for the tumor, but neither do I have any evidence that it wouldn't have any role in it…

In addition to Dr. Spector's own words at deposition, Wright conveyed this same sentiment to Dr. Shwery in late September, 2009 during a psychological evaluation.  Dr. Shwery's report discusses at length the frustration and worry that Wright had not knowing what was the cause of his growth and his bleeding, and that Wright was worried about cancer and his body breaking down little by little so that he had no idea what would happen to him in the future.[29]

Dr. Spector has voiced to Wright an uncertainty regarding the cause of the growth in

---

[27] See Dr. John Thompson Report attached hereto as Exhibit "G"
[28] See p. 164 of Dr. Spector's deposition testimony attached hereto as Exhibit "M"
[29] See Dr. Shwery's final report attached hereto as Exhibit "F"

14

Wright's throat and the bloody mucous.[30]  He has not indicated to Wright, however, that he has ruled out that the problems are related to formaldehyde or Wright's time in the Forest River trailer.  This, coupled with all of the other problems and symptoms experienced by Wright both while in the trailer and since, has created severe anxiety, as diagnosed by both Shwery and Thompson, as well as an articulated and well-formed fear of cancer.

It is also worth noting that the ATSDR, the federal agency tasked with providing the toxicological profiles on various chemicals, will not provide minimum risk levels relating to the carcinogenicity of formaldehyde, and the ATSDR states that "MRLs are based on noncancer health effects only and are not based on a consideration of cancer effects."[31]  Further, the International Agency for the Research of Cancer, a branch of the World Health Organization lists Formaldehyde as a Class I known human carcinogen.

Lyndon knows that while living in his travel trailer he was exposed to formaldehyde which is a known human carcinogen.  During the time in the trailer, in addition to numerous minor health complaints, he began spitting up blood on a daily basis.  Since moving out, he has continued to spit up blood, but is now aware that he has a growth at the base of his tongue.  His doctor is uncertain as to what caused it, or what the source of the bleeding is.  He has voiced this concerns about long-term health effects of formaldehyde and the possibility of developing cancer.  This is clearly a case where the jury should decide the reasonableness of his claim.  Per the court's ruling in *Smith,* supra, the questions such as existence and fear of cancer are questions of fact for the jury to decide.

---

[30] It should be noted that the bloody mucous was called "Epistaxis" by Dr. Worley, a physician treating Wright in 2007 – during Wright's occupancy of the trailer. (Attached hereto as Exhibit "N")  Further, Dr. Williams has significant discussion of the association between Epistaxis and formaldehyde exposure in her final report on p. 26-28 and cites 14 separate studies relating to the bloody discharge.
[31] Appendix A to the ATSDR Formaldehyde profile is attached as Exhibit "O".

Lyndon Wright has a very clearly developed fear of cancer which should be left for the jury to decide as a question of material fact. As such, the Defendants Motion for Summary Judgment should be denied.

### iv.  Additional medical symptoms suffered by Wright while in the Trailer

Briefly, Wright has substantial medical records indicating various health related issues which Wright faced while living in the trailer. These include headaches, cough, sinus problems, eye irritation, skin rashes, etc. These are discussed by Dr. Smith previously as abating once Wright moved out of the trailer. While these can be construed as more nuisance complaints in nature, they are still causally connected with formaldehyde and are discussed at length by Dr. Williams in her report and are generally listed in various formaldehyde documents and warnings at issue in this case (including the Forest River Owner's Manual). As such, these smaller, nuisance styled health complaints which Wright suffered with while in the trailer should come in, at least as foundational evidence or additional support for Wright's fear of cancer claim, if not in their entirety as possibly caused by the formaldehyde exposure itself.

## CONCLUSION

Really, the Plaintiff's case is straightforward, and supported by both specific and general causation, and increased risk as an element is not that relevant in the context of fear of cancer. The Plaintiff has been diagnosed, with supporting general causation, by Dr. Miller, as having exacerbated rhinosinusitis. The Plaintiff was diagnosed by Defense expert Dr. Smith with at least an exacerbation of asthma, if not the onset of asthma, which occurred during the time he lived in the Forest River trailer. Dr. Smith's diagnosis is supported by Dr. Williams' general causation report. Wright has a very well articulated fear of cancer claims, which comports with Louisiana law and is an issue of fact

for the jury to decide.  Finally, the Plaintiff experienced a number of other minor health problems which resolved after moving out of the trailer, and which are consistent with exposure to formaldehyde.  As such, there are clear and obvious issue of material fact which remain in dispute and which support the Plaintiff's opposition to the Motion for Summary Judgment.

Viewing the evidence in the light most favorable to the Plaintiff and drawing all reasonable inferences in favor of the Plaintiff, the Court should deny Defendants' Motion.  *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir.2002); *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (5th Cir. 2001)

### PRAYER

WHEREFORE, Plaintiff Lyndon Wright respectfully requests that the Court deny Shaw and Forest River's Motion for Summary Judgment.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
      GERALD E. MEUNIER, #9471
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &
      Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:   504/522-2304
      Facsimile:   504/528-9973
      gmeunier@gainsben.com

17

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:     504/522-2304
Facsimile:     504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
ROBERT BECNEL
DENNIS REICH, Texas # 16739600

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
