UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER FORMALDEHYDE
PRODUCTS LIABILITY LITIGATION

MDL NO: 1873

SECTION N(5)

JUDGE ENGELHARDT

THIS DOCUMENT IS RELATED TO:
*North American Catastrophe Service, Inc. v.*
*Northfield Ins. Co.No. 09-3818*

MAGISTRATE CHASEZ

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## NORTHFIELD INSURANCE COMPANY'S  MEMORANDUM
## IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, Northfield Insurance Company ("Northfield") files this Memorandum in

support of its Cross-Motion for Summary Judgment on the Declaratory Judgment Action filed by

North American Catastrophe Services, Inc. ("NACS").  Northfield is entitled to judgment as a

matter of law because coverage does not exist for the underlying plaintiffs' claims against

NACS—and, by extension, NACS' claims for defense and indemnity against those claims—

under the relevant policies of insurance.

The issue facing this Court boils down to a straightforward question of interpreting a

Total Pollution Exclusion in an insurance contract under Florida law. Succinctly stated, the facts

and law are as follows:

> Underlying plaintiffs allege that, as a result of NACS' negligence,
> they have been exposed to formaldehyde fumes and suffer certain
> injuries resulting from that exposure. Northfield insured NACS
> under policies of insurance issued in Florida that contain a Total
> Pollution Exclusion that excludes coverage for bodily injury
> because of "actual, alleged or threatened discharge, dispersal,

1

seepage, migration, release or escape of 'pollutants.'" "Pollutants" is defined to include "fumes." Under Florida law, total pollution exclusions are applied as written to exclude coverage.

Thus, the narrow issue is whether the Total Pollution Exclusion in Northfield's policies excludes coverage for underlying plaintiffs' alleged injuries resulting from exposure to formaldehyde fumes, thereby eliminating any obligation by Northfield to defend and indemnify NACS against the underlying lawsuits. The answer clearly is "yes"—an answer that is dispositive of NACS' Declaratory Judgment Action in its entirety.

## I.   UNDISPUTED MATERIAL FACTS

NACS—a Florida company[1] not licensed to do business in Louisiana[2]—has been named as a defendant in those certain matters pending before this Court, styled as (1) *Aldridge, et al., v. Gulf Stream Coach, Inc., et al.*, No. 07-9228 ("*Aldrige* Lawsuit") and (2) *Montrell Sinegar, et al., v. Forest River, Inc., et al.*, No. 09-2926 ("*Sinegar* Lawsuit").[3]  In the *Aldridge* Lawsuit, the plaintiffs allege that they have "been exposed to dangerously high concentrations of formaldehyde fumes..."[4]  The *Aldridge* plaintiffs further allege that NACS' procurement of certain travel trailers for conversion into temporary housing units "created and contributed to a situation where hundreds of thousands of people displaced by hurricanes Katrina and Rita were exposed to elevated and hazardous levels of formaldehyde."[5]  According to the allegations, NACS' selection of temporary housing units unfit for extended occupancy proximately caused

---

[1]   Complaint filed by NACS, [Docket No. 09-3818] (Rec. Doc. 1), attached hereto as Ex. A; *Aldridge* First Supplemental and Amending Complaint, MDL No. 1873, (Rec. Doc. 1052-2), attached hereto as Ex. B; *Sinegar* Complaint for Damages, [Docket No. 09-2926] (Rec. Doc. 1), attached hereto as Ex. C.

[2]   *See,* Louisiana Secretary of State Corporations Database printout, February 16, 2009, attached as Ex. D, *available at* http://www.sos.louisiana.gov/tabid/819/Default.aspx.

[3]   For ease of reference, the *Aldridge and Sinegar,* Lawsuits may be referred to collectively as "Underlying Lawsuits."

[4]   *Aldridge* Original Complaint, [Docket No. 07-9228] (Rec.Doc. 1), ¶¶ IV, attached hereto as Ex. E.

[5]   *Aldridge* First Supplemental and Amending Complaint, ¶ 38, Ex. B.

plaintiffs' increased exposure to formaldehyde and contributed to their adverse health effects.[6] As a result of their alleged formaldehyde exposure, the *Aldridge* plaintiffs contend that they have suffered certain injuries, including headaches, nose bleeds, and respiratory problems.[7] The *Aldridge* plaintiffs seek, among other things, the removal of all formaldehyde materials from their temporary housing units, medical monitoring, actual damages, and punitive damages.[8]

Similarly, plaintiffs in the *Sinegar* Lawsuit seek to recover damages for alleged injuries resulting from exposure to formaldehyde fumes in temporary housing units furnished by FEMA.[9] The *Sinegar* plaintiffs assert many of the exact same allegations against NACS as those asserted by the *Aldridge* Plaintiffs: (1) NACS "created and contributed to a situation where hundreds of thousands of people, including Plaintiffs, displaced by hurricanes Katrina and Rita were exposed to elevated and hazardous levels of formaldehyde[;]"[10] and (2) NACS' selection of temporary housing units unfit for extended occupancy proximately caused plaintiffs' increased exposure to formaldehyde and contributed to their adverse health effects.[11] As a result of their alleged exposure to formaldehyde fumes, the *Sinegar* plaintiffs seek to recover damages for past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages and injuries.[12]

---

[6]   *Id.* at ¶¶ 73-74.

[7]   *Aldridge* Original Complaint, Ex. E, *at* ¶¶ I and IV; *Aldridge* First Supplemental and Amending Complaint, ¶¶ 10-11 and 65-74, Ex. B.

[8]   *Aldridge* Original Complaint at Prayer, Ex. E.

[9]   *See generally, Sinegar* Complaint for Damages, Ex. C.

[10]   *Id.* at ¶¶ 59 and 112-121.

[11]   *Id.* at ¶¶ 120-121.

[12]   *Id.* at ¶¶ 122 and Prayer for Relief.

NACS subsequently filed its Complaint for declaratory judgment and damages, seeking defense and indemnity from Northfield for the *Aldridge* and *Sinegar* Lawsuits under a general liability policy allegedly providing coverage for the collective period from August 25, 2004 through August 25, 2006.[13] Importantly, in its Complaint, NACS acknowledges that the *Sinegar* and *Aldridge* plaintiffs (1) seek damages for injuries resulting from alleged formaldehyde exposure and (2) allege that their formaldehyde exposure was proximately caused by NACS' failure to reasonably procure temporary housing units.[14]

Northfield issued those certain comprehensive general liability policies of insurance bearing policy numbers CP494600 for the policy period from August 25, 2004 through August 25, 2005 and CP494600-1 for the policy period from August 25, 2005 through August 25, 2006, which provide coverage to North American Catastrophe Services consistent with all terms, limitations, conditions and exclusions therein (collectively, "Policies").[15]   Both Policies were negotiated, brokered, issued, and delivered in Florida[16] and provide in relevant part:

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" ***to which this insurance applies.*** We will have the right and duty to defend the insured against any "suit" seeking those damages. **However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....**[17]

---

[13]   See, NACS Complaint, generally, attached as Ex. A hereto.

[14]   *Id.* at ¶¶ VIII-X.

[15]   Affidavit of Howard E. Fitts, attached as Ex. F;  Policy CP494600, eff. August 25, 2004 through August 25, 2005, ("2004 Policy") attached as Ex. G;  Policy CP494600-1, eff. August 25, 2005 through August 25, 2006 ("2005 Policy") attached as Ex. H.

[16]   2004 Policy, Ex. G at Bates No. NIC000001 (confirming the Florida addresses of both NACS and the agency from which NACS procured the 2004 Policy); 2005 Policy, Ex. H at Bates No. NIC000085 (same).

[17]   2004 Policy, Ex. G at Bates No. NIC000029 (emphasis added); 2005 Policy, Ex. H at Bates No. NIC 0000114 (emphasis added).

4

In addition, the Policies each contain a Total Pollution Exclusion that provides in relevant part:

> This insurance does not apply to:
> 1. "Bodily injury" or "property damage," which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
>
> \* \* \*
>
> 2. Any loss, cost or expense arising out of any:
>   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or
>   (b) Claim or suit by or on behalf of a government authority or others because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."[18]

Under the Policies, "pollutants" means "any solid, liquid, gaseous or thermal irritant, contaminant or toxin, including but not limited to smoke, vapor, soot, *fumes,* acids, alkalis, chemicals, metals and waste...."[19]

## II.   LAW AND ARGUMENT

### A.   STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate and the moving party is entitled to summary judgment as a matter of law if no

---

[18]   2004 Policy, Ex. G at Bates No. NIC000030-31; 2005 Policy, Ex. H at Bates No. NIC000115-16.

[19]   2004 Policy, Ex. G at Bates No. NIC000040 (emphasis added); 2005 Policy, Ex. H at Bates No. NIC000125 (emphasis added).

genuine issue of material fact exists.[20] Substantive law determines the materiality of facts, and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[21] Once the movant establishes the absence of genuine issues of material fact, the non-movant must produce specific facts and support its claim by more than a mere scintilla of colorable evidence.[22] General allegations or unsupported assertions of material fact are inadequate to satisfy the non-movant's burden and the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[23] Here, there are no disputes of fact precluding summary judgment; rather, this dispute presents only a question of contract interpretation. Based on the undisputed facts, summary judgment is due to be entered in favor of Northfield.

## B. LOUISIANA CHOICE-OF-LAW ANALYSIS REQUIRES THE APPLICATION OF THE LAW OF FLORIDA, WHERE THE NORTHFIELD POLICIES WERE NEGOTIATED, BROKERED, AND DELIVERED

A "critical first test" in a choice-of-law analysis is to determine whether a difference actually exists between the law of competing jurisdictions and whether that difference affects the outcome of the case.[24] Where a difference exists between the law of the two jurisdictions regarding a relevant issue, a detailed choice-of-law analysis becomes necessary.[25] In Louisiana, the total pollution exclusion has been applied pursuant to strict guidelines and a fact-intensive inquiry established by the Supreme Court in *Doerr v. Mobil Oil Corp.*[26] Conversely, in Florida,

---

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

[22] *Id.* at 252.

[23] *Kee v. City of Rowlett, Texas*, 247 F.3d 206, 210 (5th Cir. 2001).

[24] *Palm v. Stewart*, 2003-0594 (La. App. 3 Cir. 11/5/03); 858 So. 2d 790.

[25] *Id.*

[26] 2000-0947 (La. 3/16/01); 782 So. 2d 573.

the total pollution exclusion has been upheld as unambiguous and applied as written to bar coverage without any regard to active versus non-active polluters or for the alleged type of "pollutant" at issue.[27] Therefore, a true conflict exists, necessitating a choice-of-law analysis.

Louisiana choice-of-law analysis applicable to contract interpretation[28] mandates that this Court interpret the Northfield's Policy under Florida law. The choice-of-law rules are codified in Louisiana Civil Code Articles 3515 through 3549. The residual Code article for Conflict of Laws, article 3515, provides a framework for assessing which state's interests would be most seriously impaired if its law were not applied. In resolving a choice-of-law issue in Louisiana, a court should weigh not only the relationship of each state to the parties and the dispute, but also the needs of the interstate system and what is required to safeguard the parties' justified expectations. Because Louisiana Civil Code article 3515 is both a residual article and a general article, its analytical framework should be considered in any conflicts question even though more specific articles in Book IV may also apply.[29]

Insurance coverage disputes are contract issues governed by the choice-of-law articles specific to contracts.[30] Louisiana Civil Code article 3537 provides the general rule for choice-of-law analysis concerning contracts. In weighing which states' interests would be most seriously impaired if its law were not applied, the court should consider

> (1) the pertinent contacts of each state to the parties and the transaction, including **the place of negotiation, formation, and performance of the contract, the location of the object of the**

---

[27] *See* section II.C.2 infra. As discussed below, the Florida Supreme Court in *Deni Associates of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998), explicitly rejected any analysis based on the nature of the insured-polluter.

[28] A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Mayo v. Hartford Life Ins. Co.*, 354 F. 3d 400, 403 (5th Cir. 2004)

[29] *See* Article 3515, cmt. a.

[30] *See Levy v. Jackson*, 612 So. 2d 894, 897 (La. App. 4 Cir. 1993) (applying Alabama law in considering whether there was coverage for an accident that occurred in Louisiana when the policy was issued in Alabama).

**contract, and the place of domicile, habitual residence, or business of the parties**; (2) **the nature, type, and purpose of the contract**; and (3) the policies referred to in Article 3515, as well as the **policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse**, and of protecting one party from undue imposition by the other.[31]

Civil Code articles 3515 and 3537 focus the choice-of-law analysis on the state with the most significant contacts with the *contract*. In the case of an insurance coverage dispute, that state is the state in which the policy was brokered, negotiated, or delivered to the insured, which in this case is Florida. The fact that the alleged *tort* may have ultimate effects in, among other places, but not exclusively, Louisiana, is irrelevant and certainly not dispositive of the choice-of-law analysis.

A number of Louisiana courts have applied the choice-of-law analysis to determine the applicable law governing insurance contract disputes. In *Resure, Inc. v. Chemical Distributors, Inc.*,[32] the accident in question occurred in Louisiana, injuring Louisiana residents, but the insurance policies were negotiated and delivered in New Mexico to a corporation based in New Mexico and doing business in several states. Applying Articles 3515 and 3547, the court rejected the policyholder's argument that Louisiana law applied, noting the insurer's contention that "if the law of the place of the 'accident' is applied to a multi-state trucking company...neither it nor its insurer have any means of negotiating required coverage for the insured with any degree of certainty."[33] The court concluded that "[w]hen confronted with similar cases, Louisiana courts consistently apply the law of the state in which the insurance policy was executed."[34] On appeal, the United States Fifth Circuit Court of Appeal affirmed the

---

[31]   La. C.C. art. 3537 (West 2005) (emphasis added).

[32]   927 F. Supp. 190 (M.D. La. 1996), *aff'd*, 114 F.3d 1184 (5th Cir. (La.) 1997).

[33]   *Id.* at 192.

[34]   *Id.*

district court's application of New Mexico law to the insurance policy. *See also, Holcomb v. Universal Ins. Co.,* 640 So. 2d 718 (La. App. 3 Cir. 1994), *writ denied,* 94-1740 (La. 10/7/94), 644 So. 2d 643 (applying Arkansas law to an automobile policy delivered in Arkansas in order to safeguard Arkansas' right to regulate its insurance industry despite an automobile collision in Louisiana); *Potomac Electric Power Company v. California Union Insurance Co.,* 777 F. Supp. 968 (D.D.C. 1991) (applying the law of the state where the insured had its headquarters, rejecting the idea that the place of pollution dictates which law governs a coverage issue and discussing the confusion that results from applying more than one body of law to a single contract).

Likewise, in *The Travelers Ins. Group Inc. v. O.C.S., Inc.,*[35] the court held that a coverage dispute under a policy delivered to a Texas insured in Texas must be construed under Texas law even though the claim for coverage was for an oil-well fire that occurred in Louisiana. In that case, the contract was issued to a corporation headquartered in Texas, negotiated by an insurance agent in Texas, and delivered in Texas. The insurer was incorporated in Connecticut.

In December, 2003, the Louisiana Second Circuit Court of Appeal decided *Harrison v. Morrison.*[36] In *Harrison,* multiple Louisiana plaintiffs sued a Mississippi corporation, which was doing business in Louisiana, and its insurer after a leak from a gas storage tank resulted in bodily injury and property damage in Louisiana. As an initial matter, the court concluded that a true conflict existed between Mississippi law and Louisiana law because the policy's pollution exclusion would bar coverage under Mississippi law, but not Louisiana law. Second, the court reasoned that the law of Mississippi would be most seriously impaired if Mississippi law were not applied because the insured was a Mississippi domiciliary; the insurance contract was

---

[35] 914 F. Supp. 126 (E.D. La. 1996).

[36] 37,992 (La. App. 2 Cir. 12/10/03); 862 So. 2d 1065, *writ denied,* 2004-0101 (La. 3/19/04), 869 So. 2d 857.

negotiated, executed, and delivered in Mississippi; both the insured and the insurer expected Mississippi law to apply; and the purpose of the contract was to ensure the Mississippi corporation's assets and activities *regardless* of where the corporation operated. As a result, the court applied Mississippi law. *See also, Murden v. ACandS, Inc.*, 2005-0319 (La. App. 4 Cir. 12/14/05), 921 So. 2d 165, *writ denied*, 2006-0129 (La. 4/17/06), 926 So. 2d 526 (applying Belgian law to an insurance policy issued to a Belgian manufacturer of asbestos-containing products where policy was negotiated in Belgium, premiums were paid in Belgium, the parties intended Belgian law to govern the contract, the product distributor was not a Louisiana corporation, and the policy covered liability arising wherever products were distributed so that the application of Louisiana law would destroy predictability and uniformity of interpretation).

As demonstrated by *Resure, Holcomb, O.C.S. Inc., Harrison*, and *Murden*, the critical issues under the Louisiana choice-of-law analysis are (1) where the policy was negotiated and issued, (2) where the insured is domiciled, (3) where the policy proceeds are to be paid, (4) the expectations of the contracting parties, and (5) whether applying the law of the situs of the accident could result in inconsistent results from state to state.

Here, *all* of the pertinent contacts in this case are in Florida. Specifically, this case concerns coverage issued to a Florida corporation by an insurer domiciled in Iowa with its principle place of business in Minnesota. The Northfield Policy was negotiated, brokered, and executed in Florida to a Florida corporation, which also happens to have its principal place of business in Florida. Also, any proceeds payable under the Northfield Policy to NACS—a corporation unauthorized to conduct business in Louisiana—will be delivered in Florida. Based on these contacts and utilizing Louisiana's choice-of-law principles, the application of Florida

law conforms to the justified expectations of both NACS and Northfield—the parties to the contract—insofar as they would have expected Florida law to govern the policy.

It is both appropriate and essential that all risks be governed by only one state's law—Florida. This is particularly true given that the MDL for FEMA Trailer Formaldehyde Products Liability Litigation pending before the Court involves claims by plaintiffs throughout the Gulf State region, including Texas, Alabama, and Mississippi. Indeed, although the *Aldridge* and *Sinegar* plaintiffs are from Louisiana, they explicitly plead that NACS was tasked with obtaining temporary housing units after Hurricane Katrina "intended for Gulf Coast residents in [Louisiana, Mississippi, Texas and Alabama]."[37]

> At all relevant times, [NACS was] tasked with the identification, election and procurement of FEMA temporary housing units for use in Louisiana, Mississippi, Alabama and Texas following hurricanes Katrina and Rita.[38]

NACS' alleged procurement of temporary housing units for use throughout the entire Gulf Region recognizes a real possibility that plaintiffs residing in Texas, Mississippi and Alabama could try to assert similar claims against NACS. The risk of claims against NACS by plaintiffs residing in multiple states underscores precisely why the law of the single state having the most contacts with the *contract* should govern policy interpretation: interpreting Northfield's Policies under five or more different states' law would result in contradictory and irreconcilable obligations under the same Policies for the same alleged injuries. Interpreting the Policies under multiple states' law not only would cause confusion, but also would produce inconsistent results and strain the links of the interstate system.[39] Conversely, applying Florida law to policies delivered to a Florida corporation in Florida produces consistent results on similar claims from

---

[37] *Aldridge* First Supplemental and Amending Complaint, ¶¶ 5 and 9, Ex. B; *Sinegar* Complaint, ¶ 32, Ex. C.

[38] *Aldridge* First Supplemental and Amending Complaint, ¶ 66, Ex. B.

[39] *See, Resure*, 927 F. Supp. at 192.

state to state, precisely as the Louisiana Legislature dictated when it codified the choice-of-law articles in 1991. That is precisely why Art. 3515 provides that the choice-of-law analysis must include an evaluation of the policies and needs of the interstate system, including consideration for the justified expectations of the parties and minimizing the adverse consequences potentially resulting from subjecting a party to the law of more than one state.

The analysis set forth in the Civil Code requires that Florida law be applied to this coverage dispute. No other law satisfies the required contact-analysis. Louisiana is merely the situs of some of the alleged injuries. Nothing in the Civil Code suggests that the situs of the injuries (especially in a multi-state situation) is pertinent to the choice-of-law analysis in a contract dispute. To the contrary, the location of the injuries is not relevant—a finding that is supported by the cases discussed above in which Louisiana state courts applied the Louisiana Civil Code choice-of-law analysis pertaining to conventional obligations rather than those articles concerning delictual and quasi-delictual obligations. This Court should apply the same rationale as those courts which decided *Holcomb, O.C.S., Resure, Harrison* and *Murden*.

## C. THE TOTAL POLLUTION EXCLUSION UNAMBIGUOUSLY EXCLUDES COVERAGE FOR THE CLAIMS MADE UNDER FLORIDA LAW

Under Florida law, an insurer's obligation to defend depends upon the allegations asserted against its insured in the complaint.[40] "Although an insurer has a duty to defend when some allegations in the complaint arguably fall within coverage of the policy, there is no duty to defend where the complaint shows either that there is no coverage or that a policy exclusion

---

[40] *Jones v. Florida Insurance Guaranty Association, Inc.*, 908 So. 2d 435, 442-443 (Fla. 2005).

applies."[41]    Here, the allegations in the Underlying Lawsuits fall squarely within the unambiguous total pollution exclusions in the Policies.

### 1. The Alleged Exposure to Formaldehyde Fumes Forms the Basis of Underlying Plaintiffs' Claims Against NACS

Plaintiffs in the Underlying Lawsuits allege that NACS' procurement of certain travel trailers for conversion into temporary housing units "created and contributed to a situation where hundreds of thousands of people displaced by hurricanes Katrina and Rita were exposed to elevated and hazardous levels of formaldehyde"[42] and proximately caused plaintiffs' increased exposure to formaldehyde and contributed to their adverse health effects.[43]  As a result of their alleged formaldehyde exposure, the plaintiffs contend that they have suffered certain injuries, including headaches, nose bleeds, and respiratory problems.[44]  The underlying plaintiffs seek to recover damages from NACS as a result of those bodily injuries, including without limitation damages for medical expenses, and medical monitoring.[45]

### 2.  Florida Law Mandates that the Northfield Policies Exclude Coverage

The Florida Supreme Court determined in *Deni Associates of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, that the total pollution exclusion is clear and unambiguous.  711 So. 2d 1135, 1138 (Fla. 1998) (explicitly rejecting the notion that the exclusion only bars coverage for environmental or industrial pollution as determined in *South Central Bell Tel. Co., v. Ka-Jon Food Stores*, 644 So. 2d 357 (La. 1994)).  The court also rejected the notion that the words

---

[41]    *WPC Industrial Contractors, Ltd. v. Amerisure Mut. Ins. Co.*, --F. Supp. 2d --, *available at* 2009 WL 2992569 (S.D. Fla. 9/17/09) *citing to Prudential Prop. & Cas. Ins. Co. v. Calvo*, 700 F. Sup. 1104, 1105 (S. D. Fla. 1988).

[42]    *Aldridge* First Supplemental and Amending Complaint, ¶ 38,  Ex. B.

[43]    *Id.* at ¶¶ 73-74.

[44]    *Aldrgidge* Original Complaint, Ex. E, *at* ¶¶ I and IV; *Aldridge* First Supplemental and Amending Complaint, ¶¶ 10-11 and 65-74, Ex. B.

[45]    *Aldridge* Original Complaint at Prayer, Ex. E.

"irritant" and "contaminant" within the definition of "pollutant" are ambiguous because they are undefined. *Id.* at 1139 *citing to American States Ins. Co. v. Nethery,* 79 F. 3d 473, 476 (5th Cir. 1996) ("An irritant is a substance that produces a *particular* effect, not one that generally or probably causes such effects.") (emphasis in original).

Following the Florida Supreme Court's holding in *Deni,* subsequent Florida courts have confirmed that the total pollution exclusion does not distinguish between active and inactive polluters and that the pollution exclusion bars coverage for an insured's alleged failure to warn about potential pollutants. In *Continental Casualty Co. v. City of Jacksonville,* an insurer sought a declaration that it was not obliged to defend or indemnify its insured where underlying plaintiffs alleged injuries caused by the excessive exposure to elevated levels of heavy metals and other toxic contaminants. 654 F. Supp. 2d 1338 (M.D. Fl. 2009). According to the allegations, the insured-defendant, Duval County School Board, purchased and built schools upon property that the defendant knew or should have known contained toxic chemicals that would result in exposure; permitted children to play in contaminated areas, thereby creating an unreasonable risk of injury; failed to close the properties; and failed to warn parents and children about the contamination and exposure. *Id.* at 1340-41. The court ultimately determined that the school board's alleged acts of negligence arose directly out of the pollution at the site and that a finding of negligence depended upon the school board's response to and recognition of pollution. Further, the court recognized that plaintiff's claims for damages depended upon the existence of contamination. *Id.* at 1344. As a result, the court determined that the school board's alleged failure to warn about the contamination fell within the total pollution exclusion and the school board's insurer was not obliged to defend or indemnify the school board against the underlying claims.

14

Like the plaintiffs in *Jacksonville,* the plaintiffs in the Underlying Lawsuits claim to have been harmed by "formaldehyde fumes" and "exposure to formaldehyde" released from their temporary housing units. Plaintiffs' alleged injuries arose out of, originated from, grew out of, and flowed from the release of formaldehyde fumes and, but for the alleged formaldehyde fumes, they would not have a claim for damages against NACS. Under Florida law, the Northfield Policies cannot possibly apply to the claims made by the various plaintiffs because the Total Pollution Exclusion clearly precludes coverage for pollution resulting from formaldehyde fumes:

> This insurance does not apply to:
> 1. "Bodily injury" or "property damage," which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
>
>        \* \* \*
>
> 2. Any loss, cost or expense arising out of any:
>     (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or
>     (b) Claim or suit by or on behalf of a government authority or others because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."[46]

Under the Policies, "pollutants" means "any solid, liquid, gaseous or thermal irritant, contaminant or toxin, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals and waste…."[47]

Plaintiffs alleged that they had suffered bodily injury resulting from the alleged exposure to formaldehyde fumes in their travel trailers. The foregoing exclusion specifically bars

---

[46] 2004 Policy, Ex. G at Bates No. NIC000030-31; 2005 Policy, Ex. H at Bates No.NIC000115-16.

[47] 2004 Policy, Ex. G at Bates No. NIC000040; 2005 Policy, Ex. H at Bates No. NIC000125.

coverage for bodily injury claims resulting from the alleged release of "fumes." Therefore, the exclusion should be enforced as written.

## CONCLUSION

Plaintiffs' allegations explicitly alleged a pollution-related event that is encompassed by the language of the total pollution exclusion in the Northfield Policy, which should be applied as written under Florida law. The Northfield policy, therefore, does not provide primary coverage and NACS is not entitled to defense or indemnity against the claims asserted in the Underlying Lawsuits. Accordingly, the Defendant Northfield is entitled as a matter of law to summary judgment on NACS' Declaratory Judgment Action.

Respectfully submitted,

RALPH S. HUBBARD III, T.A., La. Bar # 7040
TINA L. KAPPEN, La. Bar #29579
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
**Attorneys for Northfield  Insurance Company**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2010, a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system and notice of this filing was sent to all know counsel of record by operation of the court's electronic filing system.