UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION:  N(5) |
| | * | |
| This Document Relates to: *Charlie Age, et al. v* | * | JUDGE: ENGELHARDT |
| *Gulf Stream Coach Inc., et al*, Docket No. 09-2892 | * | |
| | * | |
| **This Pleading Pertains Only to**: Severed Claims | * | MAG: CHASEZ |
| of Alana Alexander individually and on behalf of | * | |
| the minor child Christopher Cooper | * | |

******************************************************************************

**GULF STREAM COACH, INC.'S**
**OPPOSITION TO PLAINTIFF'S MOTION TO RETAX COSTS**

**MAY IT PLEASE THE COURT:**

Following the trial of plaintiff Alana Alexander's lawsuit against the defendants, this

Honorable Court taxed costs against her and in favor of Gulf Stream Coach, Inc. ("Gulf Stream")

in the amount of $75,531.34. The plaintiff now moves the Court to retax those costs, arguing that

such costs are not allowed under statutory and case law. In so moving, the plaintiff asserts (with

few exceptions) the exact same arguments she did when opposing Gulf Stream's original Motion

to Assess Taxable Costs. Her arguments were largely unpersuasive then, and they remain

unpersuasive now. Therefore, Gulf Stream is entitled to the $75,531.34 that the Court taxed

following trial of this matter.

A.      **Deposition Transcripts**

It is well settled that the prevailing party can recover certain costs incurred for the taking

and/or procuring of depositions, including transcript costs and other expenses.[1] Yet the plaintiff

---

[1]      *See, e.g., Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Authority*, 133 F.R.D. 481 (E.D. La. 1990); *Bendis v. Alexander and Alexander, Inc.,* 905 F.Supp. 963 (D.Kan. 1995); *Griffith v. Mt. Carmel Medical Center*, 157 F.R.D. 499 (D.Kan. 1994); *Chemical Bank v. Kimmel*, 68 F.R.D. 679 (D.C. Del. 1975).

argues in her motion that several costs, including those associated with synching depositions, videotaping the deponent's testimony, and expediting a transcript, are not allowable. Considering that Gulf Stream specifically removed many of those fees when it submitted its reply memorandum in support of its motion, this argument is inapplicable and moot.

Moreover, the plaintiff's attempt to identify any remaining non-transcript deposition costs is untimely. The parties, along with the Clerk of Court, had every opportunity to examine Gulf Stream's invoices and receipts when Gulf Stream submitted its original motion. It is not the obligation of this Court to pore over pages and pages of invoices simply to verify the Clerk's final numbers. The fact that the Clerk eliminated over $100,000 of Gulf Stream's original motion for costs shows that the Clerk performed this task more than adequately.

The plaintiff's effort to rehash specific fees is even more problematic when it comes to the approximately $1,600 in "deposition extras." The plaintiff argues that Gulf Stream was awarded these costs, but does not direct the Court to any exhibit or invoice that supports her argument. She does not stop there, either. The plaintiff argues that these extras are illustrative of the other mistakes Gulf Stream made, thereby suggesting that the Clerk improperly taxed other costs, as well. In making these arguments, the plaintiff essentially asks the Court to review all the documents and invoices to determine whether any costs should be eliminated without directing the Court to any support for her argument. It is nonsensical that the plaintiff would ask the Court and the defendants to simply take her word for it. She must present and describe what problems allegedly exist, especially after the Clerk has already performed the very task the plaintiff asks the Court to perform. The plaintiff has not, and seemingly cannot, do so. Therefore, the Clerk's award for deposition fees is completely justified.

As a final point, it does appear that the parties simply overlooked the costs for one deposition that was taken in the *Dubuclet* matter. Gulf Stream requested a $323.50 reimbursement for the deposition of Dr. George Farber, which should be removed. After reducing the overall total accordingly, Gulf Stream submits that the Court should affirm the taxation of $49,155.72 in deposition costs.

**B.      Daily Transcripts**

The plaintiff argues that Gulf Stream is not entitled to recoup costs for daily transcripts because it procured these transcripts for the convenience of its lawyers, not out of necessity for use in the litigation. That is simply not the case. Gulf Stream used these transcripts in order to prepare for the examination and cross-examination of several witnesses and to prepare for closing argument. The transcripts were critical resources for recapping and understanding the witness testimony. Though the Court instructed the parties from reading directly from the transcripts, Gulf Stream's use of the transcripts was necessary and invaluable in providing summaries of the testimony to the jurors during closing argument.

Furthermore, this is not the type of case where Gulf Stream's attorneys could have simply taken notes and relied upon them for cross-examination and closing. As the plaintiff has argued on several occasions, this case was complex and involved highly technical issues. Several experts provided extensive specialized testimony, so Gulf Stream needed to examine the exact testimony in order to present a complete closing. This is the very same consideration that other courts have focused on in awarding costs for daily transcripts. At least one court has held that costs for daily transcripts are justified in complex cases because the transcripts can focus areas of dispute between experts and provide the attorneys with the information they need to perform thorough cross-examinations. *See Vornado Air Circulation Systems, Inc. v. Duracraft Corp.*,

1995 WL 794070, *2 (D.Kan. 1995). Therefore, taking all of these things into consideration, Gulf Stream submits that the Clerk properly taxed $13,048.80 in daily transcript costs.

### C. Copies

The plaintiff admits that copy costs can be awarded as long as they are necessarily obtained for use in the litigation. It is indisputable that Gulf Stream needed an enormous amount of copies to produce its exhibits and to use as demonstratives during trial. Not once did Gulf Stream copy a document simply so it could have a duplicate or for the sake of convenience. Moreover, the plaintiff has not a shred of evidence that Gulf Stream did so. Her only argument with respect to copy costs is to say that Gulf Stream has not shown that it needed all of these copies for the litigation rather than for convenience. Gulf Stream needed these documents for trial, its attorney affirmed that fact under penalty of perjury, and the Clerk awarded copy costs accordingly. The plaintiff has presented nothing to refute that, so the copy cost award of $11,086.36 is justified.

### D. Witness Fees

The plaintiff argues that the amount awarded for witness fees for Gulf Stream's experts was improperly given. The plaintiff first focuses on the fact that the law on taxation of costs limits expert fees to court-appointed experts. However, the statute also allows for witness fees, without a differentiation between fact and expert witnesses. *See* 28 U.S.C. § 1920(3). Accordingly, the U.S. Court of Appeals for the Fifth Circuit has awarded travel expenses and fees associated with trial attendance for defense expert witnesses. *See Holmes v. Cessna Aircraft Co.*, 11 F.3d 63 (5th Cir. 1994).

As for the precise amount awarded, the Clerk awarded a relative small amount for "witness fees," with the total coming to $1,708.92. At the December 2009 hearing on this issue,

the Clerk referenced an IRS statute that allows for a daily per diem of over $200 for each expert witness' trial attendance. Applying this per diem amount to the number of defense experts and the time they spent at trial, the total is well above the amount awarded by the Clerk. Thus, the Clerk properly awarded the $1,708.92 in this case.

### E.       Other Factors

The plaintiff presents various other reasons why the Court should not tax costs against her. These are similarly unavailing. First, regarding the complexity of this case, Gulf Stream does not dispute that this was an intricate case that involved many witnesses, both fact and expert. However, that alone has absolutely no bearing on whether this Court should award costs. As the plaintiff stated in her motion to retax, costs are generally awarded **as a matter of course**. (Rec. Doc. 10926—2, p. 2). The Federal Rules of Civil Procedure provide for costs regardless of whether the claim is a $75,000 automobile collision or a multi-million dollar mass tort. That the parties had to tackle difficult issues – and had to expend more time and expense in doing so – actually makes the award all the more reasonable and justified.

Second, regarding the plaintiff's financial condition, Gulf Stream understands that the plaintiff is not a multi-millionaire. However, she was a litigant in this case who agreed to become the first bellwether plaintiff. She was not forced to take on this role. When she did, she was undoubtedly informed that litigation poses certain risks, including the risks that the losing party could be taxed for costs that arise. Those risks are heightened when the litigation is complex. Despite those risks, the plaintiff chose to make this claim and act as the first trial plaintiff. That her financial condition would make the payment of costs difficult and problematic should have been something she considered prior to trial, not something that absolves of her obligations as a litigant after it.

Third, the result of the trial has had no impact on whether other plaintiffs have pursued claims for formaldehyde exposure. Tens of thousands of individuals have joined this claim, including a multitude that has signed on since the defendants prevailed in the first bellwether trial. Likewise, Gulf Stream is not aware of a single plaintiff who dismissed his case simply because the jury found in favor of the defendants in the first bellwether trial. And even Ms. Alexander herself has continued to pursue her claims, both moving for a new trial against the defendants and continuing to sue them for the claims of her daughter, Erika Alexander. Clearly, there has been no chilling effect simply because Gulf Stream and the other defendants won the trial. Furthermore, the notion that the stature of the case should nullify the Federal Rules of Civil Procedure is silly. Certainly, this litigation is far-reaching, well known, and important. However, much like the complexity of the case, the importance of the case is likewise immaterial when it comes to awarding costs. The Rules provide for the taxation of costs in all civil actions, not just the easy ones. It is unavailing for the plaintiff to argue otherwise.

Finally, the plaintiff argues that the costs should be apportioned to all members of the MDL. As written, this argument appears to ask this Court to apportion costs to the MDL "members," not just the plaintiffs, on a pro rata basis. Under this interpretation, Gulf Stream would actually be taxed some portion of the costs that it is owed. To ask the party who is entitled to recover costs to pay those costs is utterly absurd. If the plaintiff is limiting her request to the plaintiff members of the MDL, that is more understandable, but also problematic. It is not clear how plaintiff Alexander could ask each plaintiff to put up a portion of the costs taxed in favor of Gulf Stream, especially considering that none of the other plaintiffs' claims have been resolved. However, to the extent the plaintiff can get each of the other plaintiffs to pay a pro rata portion of the costs, or to the extent the Plaintiffs' Steering Committee wishes to pay these costs on the

plaintiff's behalf, Gulf Stream has no objection as long as the fees are paid timely and in accordance with federal law.

###### F.        Conclusion

It appears that the plaintiff has not objected to the $208.00 awarded by the Clerk for medical records. Therefore, Gulf Stream submits that the total for deposition fees, daily transcripts, copy costs, witness fees, and medical records comes to $75,207.80. The Clerk properly awarded this amount, and the Court should affirm that decision.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER, & WEINSTOCK**

s/Andrew D. Weinstock

_____

**ANDREW D. WEINSTOCK #18495
JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Fax: (504) 837-3119
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON
Timothy D. Scandurro #18424
Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
Telephone: (504) 522-7100
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc.**

7

## C E R T I F I C A T E OF SERVICE

I hereby certify that on the 17th day of February, 2010, a copy of the foregoing Gulf Stream Coach, Inc.'s Opposition to Plaintiff's Motion to Retax Costs was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to all known counsel of record by operation of the court's electronic filing system.

s/Andrew D. Weinstock

_____

ANDREW D. WEINSTOCK #18495
andreww@duplass.com

8