UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 SECTION: N(5) |
| This Document Relates to: *Lyndon T. Wright v. Forest River, Inc., et al*, Docket No. 09-2977 | | * * * | JUDGE ENGELHARDT: MAG: CHASEZ |

*****************************************************************************

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* ON ANY REFERENCE TO PLAINTIFF WITNESSING ANY TESTIMONY AT PRIOR TRIAL

Defendants Forest River Inc. and Shaw Environmental, Inc. (collectively "defendants") submit this memorandum in opposition to plaintiff Lyndon Wright's Motion *in Limine* on Any Reference to Plaintiff Witnessing Any Testimony at Prior Trial.

In this motion, plaintiff seeks to exclude any reference that plaintiff was influenced by witnessing the testimony of Dr. Edward Shwery, his psychologist, in the September bellwether trial involving Gulf Stream. Plaintiff contends such reference would be irrelevant and highly prejudicial. As is detailed below, the motion lacks merit and should be denied.

### BACKGROUND

Plaintiff has asserted claims for emotional damages as a result of his occupancy of the Forest River trailer. (Rec. Doc. 1862). To support these claims, he retained psychologist Dr. Shwery to testify regarding his mental and emotional issues. Dr. Shwery issued two reports based on separate examinations of Wright. His first report, dated July 21, 2009, addressed Wright's alleged

depression, stress and anxiety. Dr. Shwery's testing indicated that Wright was in the "mild range of anxiety" and the "minimal range of depression."[1] Dr. Shwery prescribed weekly outpatient psychotherapy therapy sessions for one year at a cost of $15,600, monthly consultation between the psychologist and medical doctors for one year at a cost of $3,600, and followup psychological re-examinations at $5,000 each.

Plaintiff then attended the September bellwether trial involving Gulf Stream, where he witnessed Dr. Shwery testify. Less than one week after observing him testify, Wright visited Dr. Shwery for a second examination. Dr. Shwery later examined Wright in September of 2009 and issued a supplemental report on September 24, 2009. After re-administering anxiety and depression testing of Wright, Dr. Shwery concluded that plaintiff now registered in the "severe range of anxiety" and in the "moderate range of depression."[2] Dr. Shwery recommended increased therapy as a result of Wright's heightened depression and anxiety, with a total cost of $65,400.[3]

Plaintiff was also evaluated by Forest River's expert Dr. John Thompson, a psychiatrist with Tulane School of Medicine, in November of 2009. Dr. Thompson found that Wright suffers from anxiety and depression based on the testing performed. However, in the "Causation" portion of his report, Dr. Thompson concluded that plaintiff's anxiety is "**primarily driven by the process of**

---

[1] *See* Shwery expert report, dated July 21, 2009, p. 7, attached as Ex. A.

[2] *See* Shwery report, dated September 24, 2009, p. 4, attached as Ex. B.

[3] *See id.* at p. 5.

**litigation.**"[4] Dr. Thompson added that this anxiety can be seen in individuals with preexisting mental illness that are going through litigation of this type.[5] Dr. Thompson then stated:

> [C]onfounding the above anxiety issues is the fact that Mr. Wright went to a FEMA trial and watched Dr. Shwery testify. He was evaluated within a week after Dr. Shwery's testimony and had markedly elevated scores on the [Beck's Depression Inventory] and [Beck's Anxiety Inventory]. His [Beck's Anxiety Inventory] went from 9 to 36 after watching the FEMA trial. In addition, he reported to me that each time he has to meet with someone to discuss the trial or deal with litigation issues it increases his anxiety.[6]

Plaintiff's motion *in limine* now seeks to exclude any discussion by Dr. Thompson or others regarding Wright's presence at the Gulf Stream bellwether trial. For the reasons discussed below, this motion should be denied.

## ARGUMENT

Plaintiff contends that Wright's witnessing Shwery's testimony is both irrelevant and prejudicial. With respect to relevancy, plaintiff has a fundamental misunderstanding of the nature of Dr. Thompson's testimony. Dr. Thompson has not included a discussion of Wright's presence at the Gulf Stream trial as an aside or mere footnote to his report. Rather, it is a key piece of information used in reaching his explicit conclusion that plaintiff's anxiety is "**primarily driven by the process of litigation.**"[7]

---

[4] *See* Thompson expert report, p. 14, attached as Ex. C

[5] As has been stated in prior motions, Wright has a history of depressive symptoms dating back to 2000. *See* Thompson report, p. 14

[6] *Id*.

[7] *Id.*

In his motion, plaintiff writes, "Even if there was some conceivable probative value which could be derived from Defendants bringing this issue of Wright's witnessing Dr. Shwery testify at an earlier trial, it would greatly prejudice the Plaintiff because defense would plant the implication that Wright's injuries and concerns are merely litigation driven." [Rec. Doc. 11348-1, p. 4]. Plaintiff has clearly failed to read the expert report of Dr. Thompson in any great detail, since this was one of the main points of Dr. Thompson's report – that Wright's current mental state is the result of litigation-induced anxiety. Contrary to plaintiff's implications, defendants are not "concocting" this defense, and Dr. Thompson is clearly entitled to rely on information about Wright's attendance at the Gulf Stream trial in rendering his opinions.[8] Wright's presence at this prior trial is a relevant piece of information used by Dr. Thompson in reaching his conclusions as to causation, especially in light of the fact that plaintiff's anxiety symptoms substantially increased after attending trial.

Plaintiff should not be able to undercut the factual basis for Dr. Thompson's opinions in this case by excluding references to Wright's attendance at the Gulf Stream trial. Keep in mind that plaintiff's own attorneys, not Forest River or Shaw, brought Wright to trial, and they brought him to observe just one witness, Dr. Shwery. If plaintiff had concerns about how his credibility with the jury would be affected by attending the Gulf Stream trial, he had a simple solution: stay home. Regardless of whether plaintiff's counsel was attempting to coach his witness or not, plaintiff cannot now exclude references to his presence at the Gulf Steam trial and thereby remove a key piece of factual evidence utilized by Dr. Thompson in his report.

---

[8] Defendants also point out that, to the extent plaintiff's felt Dr. Thompson's methodology and testing were unreliable, they were free to file a motion *in limine* to limit or exclude his testimony. No such motion was ever filed.

Plaintiff next argues that this evidence is irrelevant by cherry-picking a portion of Dr. Thompson's deposition testimony. He highlights the fact that Dr. Thompson did not formally diagnose Wright as a "malingerer." According to plaintiff's logic, if Wright were a malingerer, he would have intentionally produced exaggerated psychological symptoms and would have been motivated by external incentives. Wright's second visit to Dr. Shwery would therefore have produced artificially high test results, presumably because he was "coached" by watching Shwery testify. However, because Dr. Thompson did not diagnose him as a "malingerer," plaintiff implies that his second visit to Shwery produced proper, valid test results.

First, while Dr. Thompson may not have diagnosed Wright as a "malingerer," Dr. Thompson did find that plaintiff demonstrated evidence of malingering in two instances: (1) by acting against medical advice with regard to taking his anti-depressant medication; and (2) by noting inaccurate dates with regard to the onset of depression and sexual dysfunction.

At his deposition, Dr. Thompson testified that "malingering" is not a specific diagnosis, but rather a spectrum of behavior:

> Q. Would a fair definition of a malingerer be a person who intentionally exaggerates a claim or, in fact, makes up a claim in order to obtain some type of monetary benefit through litigation?
> MR. BONE:
>     Object to the form. You can answer.
>   THE WITNESS:
>     The term "malingering," rather than the term you used before, "pathological liar," really is a continuum of how people present in the context of litigation or in the context of any other situation.

> \* \* \*
> So you can have what's referred to in the literature by Dr. Resnick, who writes the most about this, as partial malingering or false amputation where a person can say, "Well, all of my psychiatric symptoms started after the accident," when in fact, some of them started before the accident and some of them started after the accident.
> \* \* \*
> I think there's parts of that that he's doing probably on a conscious level and parts of that he's doing on an unconscious level, meaning he may remember that he was, in fact, taking antidepressants and all that when you mention it to him and bring it up, right, but in this context, what's present in his mind is what happened in the FEMA trailer.
> So he thinks that, you know, the depressive symptoms started in the FEMA trailer when they may have started a little before. In fact, if you look in the record, they started several years before, and he has been going on and off with it. **So malingering is more like a spectrum rather than a particular diagnosis.**[9]

Dr. Thompson will testify that plaintiff, whether consciously or unconsciously, has engaged in behavior that is indicative of malingering. Regardless of his motivations, plaintiff has not accurately reported details of symptoms related to his depression and sexual dysfunction, both of which he has put at issue in this lawsuit. Dr. Thompson's testimony on these points is relevant and will assist the jury in assessing whether Wright's psychological complaints post-Gulf Stream trial are credible.

Of course, lost in the tortured logic of plaintiff's discussion of malingering is a reason why Wright's presence at the Gulf Stream trial is somehow irrelevant. Dr. Thompson's report does not

---

[9] *See* Deposition of Dr. John Thompson, attached as Ex. "D," p. 79-81.

focus on the validity of Shwery's test results as much as on the **cause** of those test results. Drs. Shwery and Thompson agree that Wright is depressed and anxious – but they do not agree on the cause. While Shwery may not believe that Wright's presence at the Gulf Stream trial impacted Wright's mental health, Thompson does. He expressly stated in his report that Wright's current mental issues stem from the litigation in general and by Wright's observation of Shwery in particular. Regardless of whether Wright was or was not completely honest and forthright during his psychological evaluations, Dr. Thompson is entitled to discuss his opinions on the potential sources of Wright's mental anguish. Plaintiff can cross examine Dr. Thompson, and the jury can make its own determination. In the end, plaintiff has confused multiple issues: (1) Wright's malingering; (2) the validity of Dr. Shwery's and/or Dr. Thompson's testing; and (3) Dr. Thompson's ability to comment on the sources of causation of Wright's depression and anxiety. The first two issues have nothing to do with the third, and plaintiff's arguments regarding malingering are therefore without merit. Plaintiff's presence at the Gulf Stream trial is clearly relevant, admissible evidence.

Plaintiff then seeks to engage the Court in credibility determinations and the weighing of evidence. Plaintiff cites testimony from plaintiff's treating physician, Dr. Field, who testified that plaintiff was "honest" and "reliable."[10] Plaintiff argues that his neuroma and bloody mucus were "valid and likely explanations" for his increased anxiety and depression. Again, these arguments concern Wright's status as a malingerer and have no impact on relevancy. Plaintiff also asserts that Wright's "credibility" would be impacted by inclusion of the testimony about his presence at the Gulf Stream trial. Based on Wright's emphasis on the fact that he is not a malingerer, he should

---

[10] Defendants question their use in this motion, given that Dr. Thompson has not alleged plaintiff to be dishonest.

presumably have no concern over the jury's suspicions that he has not been honest about his mental conditions. In any event, these concerns over prejudice are not well founded and do not outweigh Dr. Thompson's right to discuss the bases for his opinions.

Plaintiff then claims that Dr. Shwery's testimony at the Gulf Stream trial was too "personal" to have any influence on Wright's mental condition. This argument is refuted by a cursory review of Dr. Shwery's trial testimony. At the Gulf Stream trial, he testified:

> Q: Did [plaintiff] bring up his experience in the FEMA trailer while living in the trailer?
> A: Yeah, he went into that. He started to talk about where he had more problems with his asthma and allergies.
> Q: Any what did he say about that?
> * * *
> A: We talked some more, and he eventually talked about that he remembered his breathing and his allergies getting bad, real bad. He used words like that. Talking about his experience over the past several years of when it went up in intensity and frequency and when it was distressing, and he attributed that to the months he was in the trailer.[11]

Recall that Wright claims to have suffered from worsened allergies and the development of asthma due to his alleged exposure to formaldehyde in the trailer. Although there can be little doubt that Shwery's testimony had an impact on Wright's psyche, the jury should at a minimum be able to consider this evidence.

Plaintiff finally argues that any discussion of this event would "open the door" to a discussion of other litigation, citing a stipulation entered into by plaintiff and defendants that no prior MDL litigation or claims would be discussed.[12] Again, this argument is devoid of merit. The purpose of that stipulation was to exclude reference to evidence or claims of other MDL litigants. The extremely

---

[11] *See* Trial Transcript from Gulf Stream bellwether trial, Day 4 (9/17/09), morning session, p. 44-45, attached as Ex. E.

[12] *See* Rec. Doc. 11181.

limited discussion of Wright's presence at the Gulf Stream trial is a far cry from discussing the MDL cases as a whole, and the intent behind the parties' stipulation surely does not justify swallowing up this small reference to one witness in the Gulf Stream trial.  In any event, the discussion offered by Dr. Thompson would center on the emotional impact of Wright's witnessing the testimony of Dr. Shwery, not the impact of another MDL plaintiff's claim on the credibility of Wright's claim.

## CONCLUSION

Wright seeks damages for mental anguish and emotional distress in this lawsuit, and, consequently, evidence as to any source of these alleged damages is directly relevant to his claimed damages.  Because Dr. Thompson has opined that plaintiff's anxiety is primarily due to litigation, evidence that plaintiff witnessed testimony in a previous bellwether trial is highly probative, and plaintiff's motion to exclude such evidence should be denied.

Respectfully submitted,

/s/  Jason D. Bone
ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
JASON D. BONE (Bar Roll No. 28315)
CARSON W. STRICKLAND (Bar Roll No. 31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

/s/ M. David Kurtz
David Kurtz (Bar Roll No. 23821)
Karen K. Whitfield (Bar Roll No. 19350)
Catherine N. Thigpen (Bar Roll No. 30001)
Baker Donelson Bearman Caldwell & Berkowitz, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
*ATTORNEYS FOR SHAW ENVIRONMENTAL, INC*

**C E R T I F I C A T E**

I hereby certify that on the 18th day of February, 2010, a copy of the foregoing Memorandum in Support was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone
JASON D. BONE