UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
|     FORMALDEHYDE | * | |
|     PRODUCTS LIABILITY | * | |
|     LITIGATION | * | SECTION: N(5) |
| | * | |
| This Document Relates to: *Lyndon T. Wright v.* | * | JUDGE: ENGELHARDT |
| *Forest River, Inc., et al*, Docket No. 09-2977 | * | |
| | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT FOREST RIVER, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO LIMIT THE TESTIMONY OF WILLIAM L. DYSON, PH.D., CIH (REC. DOC. 11354)**

Plaintiff has challenged six of William L. Dyson's opinions. As shown in Dyson's supplemental affidavit, plaintiff's challenge fails, and Dyson's opinions are properly supported under Rule 702.[1] Many of Dyson's opinions are offered as a counterpoint to Plaintiff's experts -- who must carry Plaintiff's burden -- and Dyson is certainly qualified to do so.[2] Moreover, "as a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[3]

---

[1] **Please note that references to the Affidavit of Dr. Dyson in this Motion refer to the Affidavit prepared by him in the Fleetwood bellwether case.** *See* Ex. A, Affidavit of Dr. Dyson, dated 11/19/09, attached to Fleetwood's Opposition, Rec. Doc. 7691. Forest River incorporates that Affidavits into their Opposition and will refer to it throughout the instant motion.

[2] *See Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009).

[3] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (internal citations and quotations omitted).

1

1.      **Opinion No. 3: An industrial hygienist is permitted to offer an opinion regarding risk and general causation.**

Dyson is not offering a specific medical causation opinion; rather, he is providing an opinion on risk assessment in general.[4] As an industrial hygienist, he has core expertise in this area and is called to assess whether an exposure presents a risk of an adverse event.[5] At his deposition in *Wright*, he explained:

> Could you tell me about, when you say that you've done this report from the standpoint of an industrial hygienist, what that means?
> A   In more modern terminology, we're talking about a risk assessment. And the predecessors to a risk assessment are a hazard determination and then an exposure assessment.
> From an industrial hygiene standpoint, you have to determine whether formaldehyde and/or mold has the intrinsic ability to cause the health effects that are being claimed; and then beyond that, to see whether there is sufficient exposure based on what is known in the scientific literature for there to be some assignment of risk based on that exposure.
> The exposure portion of it is the exposure assessment, and then a risk assessment or risk determination follows that. So that's my role as an industrial hygienist.[6]

Moreover, Dyson provided the background for his opinion in the body of his report.[7] It is appropriate -- indeed, it is the standard of care -- for an industrial hygienist to review other scientific articles.[8] As detailed in Dyson's supplemental affidavit, his opinion regarding sensory irritation is supported by his review and analysis of scientific studies, and therefore he has a reliable basis for his opinion.[9] Plaintiff's criticisms of Dyson are ill-founded as he has relied

---

[4] *See* Dyson Affidavit at ¶ 5, attached as Ex. A to Fleetwood's Opposition, Rec. Doc. 7691.
[5] *Id.*
[6] Deposition of Dr. Dyson, dated 12/21/09, p. 9-10, attached as Ex. A to the instant response.
[7] *See* Dyson Affidavit at ¶ 6, attached as Ex. A to Fleetwood's Opposition, Rec. Doc. 7691; *see also* expert report of Dr. Dyson, dated 11/2/09, attached as Ex. A to plaintiff's motion in limine, Rec. Doc. 11354.
[8] Dyson Affidavit at ¶ 6, attached as Ex. A to Fleetwood's Opposition, Rec. Doc. 7691.
[9] *Id.*

upon methodology and resources recognized in the field of industrial hygiene to formulate his opinions.

2.     **Opinion Nos. 4 and 5: Dyson's testimony regarding the estimation of formaldehyde levels is scientifically reliable.**

Dyson's opinions on how best to estimate the formaldehyde level to which plaintiff was exposed are reliable and based on science.  As Dyson points out in his supplemental affidavit, he investigated a multitude of factors in reaching his conclusions, including (1) an examination of the formaldehyde levels in the Wright travel trailer after standardization of environmental conditions, (2) deposition testimony from Lyndon Wright that he operated the air conditioner as necessary, and (3) Dr. Hewett's data (plaintiff's own expert) on Forest River travel trailers.[10] Using these factors to estimate the exposure level provides a reliable methodology for reaching his conclusion.  As Dr. Dyson points out in his supplemental affidavit, both plaintiff **and** defendants have estimated the levels in the trailer during Wright's occupancy because no measurement was ever taken during that time period.  In order to place plaintiff's results in their proper perspective, Dr. Dyson should be permitted to offer opinions on these topics, as well as plaintiff's method, to the jury.  Dyson also should be able to discuss the validity of plaintiff's reliance on mathematical models to extrapolate a formaldehyde exposure level, as he is qualified to offer an opinion to the jury on plaintiff's method of estimating the formaldehyde exposure level.[11]  Forest River is entitled to present evidence on this point, even if the testimony is that it is impossible to scientifically determine the formaldehyde concentration at any point in time during the plaintiff's occupancy of the unit.

---

[10] *Id.* at ¶ 10.
[11] *Id.* at ¶¶ 8-9.

3. **Opinion No. 6: Dyson's testimony regarding the use of the air conditioner to improve Wright's living conditions is relevant and admissible.**

In his sixth opinion, Dr. Dyson offers the opinion that, "[b]y operating the air conditioner in his travel trailer Mr. Wright made an improvement in his living conditions with respect to formaldehyde levels." This statement is supported by earlier sections of his report wherein he noted the following:

> "A comparison of active samples shows that formaldehyde levels under closed, high temperature conditions were elevated in relation to those found in the same travel trailer with environmental conditions adjusted to approximate normal living conditions . . . . These two sampling events . . . demonstrate the influence of environmental conditions, particularly temperature, on formaldehyde monitoring results. . . ."[12]

Plaintiff argues that Dyson somehow "conceded that turning on the air conditioner would not necessarily change the levels of formaldehyde in the Forest River travel trailer." [Rec. Doc. 11354, p. 6]. He references the following deposition testimony to support his point:

> Q  So in Conclusion Number 6, basically the improvement in the living conditions when you're talking about that, you're talking about when he lowers the temperature of the unit, the inside temperature; is that correct?
>     MR. BONE: Object to the form. You can answer.
> A  That certainly is a way of reducing the formaldehyde levels to which he was exposed, yes.
> Q  But operating that air conditioner would not provide more ventilation because it's a recirculating air conditioner; is that correct?
>     MR. BONE: Object to the form.
> A  It -- it would not; that's correct.[13]

As a careful reading of this passage demonstrates, Dyson never conceded that the air conditioner would not impact the formaldehyde levels in the unit. Rather, he just agreed with plaintiff's counsel's statement that a recirculating air conditioner would not typically provide additional

---

[12] *See* expert report of Dr. Dyson, p. 13, dated 11/2/09, attached as Ex. A to plaintiff's motion in limine, Rec. Doc. 11354.
[13] *See* Deposition of Dr. Dyson, p. 40, attached as Ex. A to the instant response.

4

ventilation. In other words, this entire deposition excerpt only discusses the impact of the A/C system on ventilation, not formaldehyde. Plaintiff is simply attempting to put words in Dyson's mouth. Indeed, Dyson explained that temperature would impact formaldehyde levels in answering plaintiff's counsel's prior question:

> Q   Okay. If Mr. Wright was -- let's take these two situations. If he's operating his air conditioner to maintain a certain temperature level within his unit versus having -- being in the unit with it closed but still having that same temperature level, is there a difference between those two as the formaldehyde levels are concerned?
> A   The only -- if in fact the air conditioner were not a recirculating unit, it would make a difference. But in this case it's a recirculating unit, and **so the only impact that you have is not from the air or fresh outside air coming in, but from the temperature.** And so those two conditions would be expected to be the same.[14]

Plaintiff's argument – that Dyson's admitted that the A/C unit would not have impacted the levels of formaldehyde inside the unit – is simply incorrect. As the temperature and humidity readings taken from the August 2009 testing demonstrate, the A/C unit in the Wright trailer was able to control temperature and humidity inside the unit. The level of formaldehyde inside the unit was impacted accordingly, and plaintiff's arguments with regard to Dyson's sixth opinion must be rejected.

4.   **Opinion No. 8: Dyson's testimony that plaintiff likely had direct contact with formaldehyde from other products is relevant and admissible.**

In Dyson's prior affidavit, he states that "[t]he fact remains that the overwhelming majority of formaldehyde-related dermal sensitization in humans comes from inadvertent contact with everyday products such as cleaners, cosmetics, and clothing."[15]

---

[14] *Id.* at 39-40 (emphasis added).
[15] *See* Dyson Affidavit at ¶ 11, attached as Ex. A to Fleetwood's Opposition, Rec. Doc. 7691.

While it is true that, during his deposition, Dyson could not recall the specific products that Wright discussed in his deposition, Dyson had reviewed the deposition testimony of Mr. Wright prior to drafting his report.[16] In that deposition, Wright testified that he used household cleaning products such as Lysol, Tilex, and carpet cleaners during the time he lived in the Forest River travel trailer.[17] This oversight was merely inadvertent and is insufficient to exclude his opinion.

Even if Dyson does not have list of every product that Wright was ever exposed to, it is relevant that formaldehyde is found in other products and that people are generally exposed to them. Dyson states that, in his opinion, the likelihood that a plaintiff did not use products such as cleansers, cosmetics and clothing is low.[18] Plaintiff can cross-examine him on his knowledge regarding the general population versus Wright, but such testimony goes to the weight and not to the admissibility of the evidence.

**5.    Opinion No. 9: Dyson's comparison of formaldehyde levels to conventional homes is relevant and factually supported.**

Plaintiff argues that Dyson's discussion of the Lemus study is "a meaningless basis for comparison." *See* Rec. Doc. 11354, p. 7. The study, which measured formaldehyde levels in site-built homes in Southern Louisiana, is relevant, and Dyson's opinions on the study are therefore admissible. Plaintiff has alleged that the Forest River travel trailer at issue was unreasonably dangerous. Had he not been living in a FEMA provided travel trailer, it is certainly reasonable to assume that he would have lived in a conventional home, as he had done throughout his life. Dyson's discussion of the Lemus study will allow the jury to compare the trailer to alternate housing; it shows that the formaldehyde levels in the unit occupied by plaintiff

---

[16] *See* Deposition of Dr. Dyson, p. 11-12, attached as Ex. A to the instant response.
[17] *See* Deposition of L. Wright, dated 7/10/09, p 122-26, attached as Ex. B to the instant reply.
[18] *See* Dyson Affidavit at ¶ 11, attached as Ex. A to Fleetwood's Opposition, Rec. Doc. 7691.

are lower than the average formaldehyde concentrations in Louisiana residences as measured by Lemus. Dr. Dyson's comparison of formaldehyde levels in the unit at issue to conventional homes will assist the jury in determining the ultimate issue in this case – whether the travel trailer was unreasonably dangerous.

For these reasons, Dyson's testimony is scientifically reliable and helpful to the jury. To the extent that Plaintiff believes Dyson's testimony is faulty, his counsel can cross-examine him on those points. Forest River therefore requests that this Court deny Plaintiff's motion.

      Respectfully submitted,

      /s/ Jason D. Bone
      ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
      JASON D. BONE (Bar Roll No. 28315)
      CARSON W. STRICKLAND (Bar Roll No. 31336)
      One Shell Square
      701 Poydras Street, Suite 4800
      New Orleans, Louisiana  70139-4800
      Telephone:  (504) 561-0400
      Facsimile:  (504) 561-1011
      *ATTORNEYS FOR FOREST RIVER, INC.*

## **CERTIFICATE**

I hereby certify that on the 18th day of February, 2010, a copy of the foregoing *Memorandum in Support* was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to liaison counsel by operation of the Court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

      /s/ Jason D. Bone