UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION:  N(5) |
| | * | |
| This Document Relates to:  *Lyndon T. Wright v.* | * | JUDGE: ENGELHARDT |
| *Forest River, Inc., et al*, Docket No. 09-2977 | * | |
| | * | MAG: CHASEZ |

**************************************************************

## FOREST RIVER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PROHIBIT REFERENCE TO FORMALDEHYDE IN FOODS AND OTHER PRODUCTS

Plaintiff has filed a motion *in limine* to prohibit reference to formaldehyde in foods and other products (Rec. Doc. 11357).  This motion is virtually identical to the motion *in limine* filed by plaintiff in the *Dubluclet* case (Rec. Doc. 7282), and, accordingly, Forest River, Inc. ("Forest River") adopts and re-urges the arguments made in Fleetwood's Opposition to that motion (Rec. Doc. 7692).[1]

As noted in that Opposition, plaintiff's motion is premised upon his confusion as to the fundamentally similar forms of formaldehyde found in nature.  Forest River will clarify the

---

[1]   **Please note that references to the Affidavits of Dr. Wedner and Dr. James in this Motion refer to the Affidavits prepare by those two experts in the Fleetwood bellwether case.** *See* **Ex. E, Affidavit of Dr. Wedner, dated 11/20/09, attached to Fleetwood's Opposition, Rec. Doc. 7692; Ex. B, Affidavit of Dr. Robert James, dated 11/19/09, attached to the same Opposition, Rec. Doc. 7692.  Forest River incorporates those Affidavits into its Opposition and will refer to them throughout the instant motion.**

testimony of its experts Robert C. James, Ph.D. and H. James Wedner, M.D. and show why plaintiff's motion must be denied.

### A.      Background

Plaintiff's stated goal behind this motion is to prevent Forest River from potentially confusing the jury by showing that the naturally occurring formaldehyde in foods is not the same as the formaldehyde that is the subject of this litigation.   While this might be a valid request if this assertion were correct, it is neither scientifically nor legally accurate.   Plaintiff's motion appears to be based on their fundamental misunderstanding of "formyl."[2]  Plaintiff erroneously refers to "formyl foods" as though this were a special form of formaldehyde different from the inhaled form.  The term "formyl food" is a scientifically unknown, improper term which appears to be first coined by plaintiff's counsel in the instant motion.  It has no known relevance to either formaldehyde in foods or in biological systems.  It appears to be colloquy in a deposition that has confused the issue -- a confusion that this response and the attached affidavits of Drs. Wedner and James have clarified in their respective affidavits which were produced in response to PSC's initial attempt to exclude these matters in the *Dubuclet* matter.[3]

Formyl has nothing to do with biological systems and is not the form of formaldehyde present in foods.   In biological systems, formaldehyde is broken down by an extraordinarily efficient enzyme (formaldehyde dehydrogenase) which converts formaldehyde ($HCHO$) to formic acid or formate ($HCOOH$).  The metabolic breakdown does not pass through a "formyl"

---

[2]  The formyl molecule is most commonly formed during the photolysis (i.e., breakdown by sunlight) of formaldehyde with the dominant pathway producing stable molecular hydrogen ($H_2$) and carbon monoxide (CO) with the other pathway producing the formyl radical ($HCO^-$) and a hydrogen atom ($H^-$) which are involved in highly complex air pollution chemistry.  WHO 2002, http://disc.sci.gsfc.nasa.gov/data-holdings/PIP/hydroperoxyl_radical.shtml.

[3]  *See* Ex. E, Affidavit of Dr. Wedner, dated 11/20/09, attached to Fleetwood's Opposition, Rec. Doc. 7692; Ex. B, Affidavit of Dr. Robert James, dated 11/19/09, attached to the same Opposition, Rec. Doc. 7692.

stage.  This is the reason that neither the formaldehyde from food nor from concentrations in the air can change the normal levels in the blood and every other tissue that are always present. Formaldehyde plays a key role as part of the "one carbon pool" of all living systems as both a breakdown product of normal metabolism as well as a building block used for the biosynthesis of more complex molecules.  Following exposure of rats, monkeys and humans at up to 15 ppm formaldehyde, there are no differences between pre- and post-exposure blood levels, demonstrating that airborne levels do not enter the body to change normal levels.  In these studies, it is the total formaldehyde present that was measured.[4]

Plaintiff claims that "because formyl containing foods and other products are not relevant to any discussion regarding the irritant effects of formaldehyde, any reference by Defendants to formyl foods and other products containing formyl is irrelevant and confuses the issues, will mislead the jury and is unfairly prejudice."  Rec. Doc. 11357-1, p. 2.  While it is true that formaldehyde levels in food can play no role with respect to the irritant effects of formaldehyde, the formaldehyde levels in food *can* clearly play a contributory role in formaldehyde levels in indoor air.  The amounts of formaldehyde in numerous foods (which are measured in units of mg/kg rather than as mg/m$^3$ as in air) can clearly contribute to airborne formaldehyde levels from cooking.  As shown in Table 2 of the ATSDR Revised Health Consultation involving Formaldehyde Sampling of FEMA Temporary-Housing Trailers (October 2007), cooking fish indoors can contribute 0.48 – 5.31 ppm of formaldehyde to the indoor air.  Consequently, the contribution of just this food-derived source of formaldehyde could hypothetically put those in close proximity to the frying pan being exposed to formaldehyde levels exceeding ATSDRs acute, intermediate, and chronic minimum risk levels of 0.04, 0.03 and 0.008 ppm, respectively.

---

[4] Heck et al. 1982, Heck and Casanova 2004.

While this is not to say that this actually happens, it does illustrate that levels of formaldehyde in food (and numerous other consumer products, including cigarette smoke) can influence levels in the indoor air.[5]

As also noted in the motion, "Plaintiff has not raised a claim relating to food consumed." Rec. Doc. 11357-1, p.2. This is certainly correct since consumption of food containing formaldehyde, just like inhalation of air containing formaldehyde, has no effect whatsoever on the normal levels of formaldehyde present in the blood. However, as the ATSDR report noted above demonstrates, food levels of formaldehyde can play a role in indoor air levels due to the fact that numerous foods contain formaldehyde.[6]

## B.      Dr. Wedner's Opinions Regarding "formyl"

Tellingly, Plaintiff's motion appears to center on Dr. Wedner's use of the term "formyl." "Formaldehyde," "formyl," and "formalin" are not different chemicals. *See* Affidavit of Dr. H. James Wedner, attached as Ex. E to Fleetwood's Opposition, Rec. Doc. 7692, ¶ 3. Rather, in connection with Dr. Wedner's discussion on the distinction between free formaldehyde (HCHO) and the so-called bound form, he used the term formyl-. *Id.* In point of fact, the so-called bound form of formaldehyde might be more elegantly referred to as an adduct in which formaldehyde is conjugated to low molecular weight molecules during intermediary metabolism, such as glutathione adducts or tetrahydrofolate adducts or to larger macromolecules such as proteins, glycoproteins and aminoacids. *Id.* Like the majority of low molecular weight organic compounds, formaldehyde can exist in a variety of states. *Id.* at ¶ 4. As a gas, formaldehyde is

---

[5] Additional documentation of sources of formaldehyde in food or consumer products and therefore as plausible contributors to indoor air levels can be found in IARC (2006, p. 90) or WHO (1989, 2002) documents.

[6] *See* Table titled "Foods known to contain naturally occurring formaldehyde", attached as Exhibit A to Fleetwood's Opposition, Rec. Doc. 7692.

not ionized and contains both of its hydrogen atoms and is often abbreviated as HCHO.   *Id.*
Formaldehyde may be dissolved in water (usually at 37% solution) and is then referred to as
formalin solution.   *Id.*   When dissolved in solution, formaldehyde may become ionized and
actually exist in two forms:  HCHO and HCHO-.   *Id.*   These two forms are in equilibrium.   *Id.*
The non-ionized form is referred to as "formaldehyde," and the ionized form is referred to as
"formyl" since it is this form which is capable of becoming an adduct.   *Id.*[7]

From the standpoint of formaldehyde chemistry, the first form of this compound in
solution, HCHO, is actually in equilibrium with the gaseous form and thus can be found in
expired air from humans or in foodstuff.   *Id.* at ¶ 5.   The second, HCHO-, is the reactive form,
which is free to conjugate to tissue protein and other macromolecules as noted above, and it is
this form that binds to the mucosa of the upper airway.   *Id.*   In addition, this form is also free to
enter the intermediary metabolic pool -- the so-called one carbon pool -- and be used by any
organism for the metabolism of one-carbon fragments.   *Id.*   Thus, this form of formaldehyde is
also found in foodstuffs.   *Id.*

In his deposition, Dr. Wedner provided answers to specific questions that were not asked
in the context of the entire scope of formaldehyde biochemistry.   However, as noted in his
deposition, there is not only formyl, but also free formaldehyde in the body.[8]   Furthermore,
during his deposition, he characterized much of the discussion that was held between him and
Plaintiff's counsel as making "no chemical sense at all" because of the improper foundation of

---

[7] For additional explanation of Dr. Wedner's deposition statements, see Affidavit of Dr. Robert James, ¶ 6, attached as Ex. B to Fleetwood's Opposition, Rec. Doc. 7692.

[8] *See* Deposition of H. James Wedner, taken on October 12, 2009, p. 90-91, attached as Ex. C to Fleetwood's Opposition, Rec. Doc. 7692.

the questions themselves.[9]   A full understanding of formaldehyde and its biochemistry, toxicology, and immunology cannot be achieved without learning about the chemistry of formaldehyde in all its forms, whether in the ambient air in a travel trailer, in the blood or expired air of a human being, or in the body of a shrimp.

### C.    Dr. James' Opinions Regarding Formaldehyde in Food

It is important for a toxicologist or risk assessor to consider all sources and routes of exposure for a particular chemical (e.g., food, air, dermal, or water) when assessing the relative hazard or safety associated with a specific route of exposure.  Providing this same information to lay persons, e.g., in this instance the jury, helps them understand the complexities of residential environmental exposures and the different sources of formaldehyde exposure an individual might experience daily.  Without such information, lay persons may be easily mislead into thinking that some chemical exposures/doses are either unique or very high relative to what other U.S. citizens experience, even though such may not be the case.  Alternative source information may also become a key factor when evaluating daily doses from a specific source of exposure versus the total daily dose of that chemical coming from all exposure sources; or when evaluating total lifetime doses for specific sources versus the total lifetime dose associated with all ambient sources of exposure.  Considering the potential impact of alternative exposure sources always helps provide a better and more informed perspective for toxicologists and non-toxicologists alike as it promotes a better understanding as to what extent an additional source of exposure may or may not represent a potential health hazard.[10]

---

[9] Dr. Wedner also described this equilibrium and emphasized its importance.  *See* Exhibit C, p. 90-93, especially p. 92, line 3 to p. 93, line 9, attached to Fleetwood's Opposition, Rec. Doc. 7692.
[10] *See* Exhibit B, ¶ 4, attached to Fleetwood's Opposition, Rec. Doc. 7692.

Dr. James did testify that the concentrations of formaldehyde in any environmental medium (i.e., food, water, air, dermal contact) to which a person might be exposed were not strictly comparable.  James also established that he does not make those kinds of comparisons because they can be misleading to lay persons if they do not understand, or are not informed about, differences in contact rate, absorption rates, and other exposure factors that determine the ultimate absorbed dose one might receive from different exposure pathways (e.g., the ingestion versus inhalation pathways).  *See* Ex. B, at ¶ 5, Affidavit of Dr. Robert James, dated 11/19/09, attached to Fleetwood's Opposition, Rec. Doc. 7692.  However, this potential confusion is easily avoided, either by making pathway or source dose comparisons when media (air, water, food, dermal) concentrations are presented, or by simply stating the concentrations in different environmental media are not comparable for several reasons.  *Id.*  It is Plaintiff's failure to place this discussion in the proper context that has created this confusion.  Any lack of context can be easily corrected at the time any alternative exposure-source information is given.  *Id.*

As shown above, Plaintiff has misinterpreted defense experts' statements about formyl groups to mean that no free formaldehyde is present in foods. But plaintiffs' own expert, Dr. Williams, discusses the concentration of "free and reversibly bound" formaldehyde in tissues as being 2.1 ppm ($\mu$g/g) in blood.[11]  Dr. Williams then states that formaldehyde is converted to formic acid via the enzymes aldehyde dehydrogenase and formaldehyde dehydrogenase.  This is another concession that free formaldehyde is present in the body as the latter enzyme

---

[11] *See* Report of Patricia Williams, dated July 9, 2009, at p. 8, attached as Exhibit D to Fleetwood's Opposition, Rec. Doc. 7692.  This section of Dr. Williams' report in the Fleetwood bellwether is virtually identical to that section in her report in *Wright*.

metabolizes free formaldehyde and not larger aldehyde structures or other biological molecules containing formyl groups.[12]

In sum, although Plaintiff argues that "it is impossible to compare formyl foods or other products to ambient air formaldehyde as they are compromised of different molecular structures" this is simply incorrect based on the well known laws of chemistry and biology as they pertain to formaldehyde.  Rec. Doc. 11357-1, p. 8.

<u>**CONCLUSION**</u>

Plaintiff's concern of potential confusion brought by references to formyl foods or other products containing formyl is premised on Plaintiff's own confusion and on a factually incorrect assumption.  Based upon the above and foregoing, Forest River is entitled to and seeks this Honorable Court enter an order denying the instant motion.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
JASON D. BONE (Bar Roll No. 28315)
CARSON W. STRICKLAND (Bar Roll No. 31336)
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana  70139-4800
Telephone:  (504) 561-0400
Facsimile:  (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

---

[12] For a detailed discussion of the chemical composition of these various groups, *see* Exhibit B, ¶¶ 7 and 8, citing papers by Owen et al. (1990), Dhareshwar and Stella (2008), and Trezl et al. (1995), attached to Fleetwood's Opposition, Rec. Doc. 7692

## **CERTIFICATE**

I hereby certify that on the 18th day of February, 2010, a copy of the foregoing *Memorandum in Support* was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to liaison counsel by operation of the Court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone