**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | | | |
|---|---|---|---|
| **IN RE:** | **FEMA TRAILER** | * | **MDL NO. 1873** |
| | **FORMALDEHYDE PRODUCTS** | * | |
| | **LIABILITY LITIGATION** | * | **SECTION "N" (5)** |
| | | * | |
| | | * | **JUDGE ENGELHARDT** |
| | | * | **MAGISTRATE CHASEZ** |
| | | * | |
| **THIS DOCUMENT IS RELATED TO** | | * | |
| | | * | |
| *Lyndon T. Wright v. Forest River, Inc., et al,* | | * | |
| Docket No. 09-2977; | | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S RESPONSE TO DEFENDANT FOREST RIVER INC.'S MOTION TO LIMIT THE TESTIMONY OF ALEXIS MALLET

Plaintiff Lyndon T. Wright ("Plaintiff") respectfully submits this Memorandum in Opposition to Defendant Forest River, Inc.'s ("Forest River") Motion to Limit the Testimony of Alexis Mallet ("Mallet") (Docket Entry No. 11383-1), and in support, would show the following:

**I.**    **Legal Background.**

Defendant's Motion to Limit Testimony is one to exclude evidence, specifically expert testimony. Therefore, the Federal Rules of Evidence should govern the Court's analysis of the motion.

FED. R. EVID. 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

FED. R. EVID. 402 provides:

All relevant evidence is admissible, except as otherwise provided by the

Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

FED. R. EVID. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Expert testimony need only be based on a reliable and scientifically valid methodology that fits the facts of a case. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-93 (1993). The inquiry into the expert's testimony is "a flexible one" where the individual factors are neither exclusive nor dispositive. *See id.* at 594–95. As such, this Court essentially considers whether the expert retains a broad range of knowledge, skills and training. *See id.*

In analyzing the reliability of proposed expert testimony, the role of the Court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 153 (1999). While extensive academic and practical expertise

in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony whose knowledge is based on experience. *See Smith v. Ford Motor Co.,* 215 F.3d 713 (7th Cir. 2000) (citing *Bryant v. City of Chicago,* 200 F.3d 1092, 1098 (7th Cir. 2000), *Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 590 (7th Cir. 2000); *Kumho,* 526 U.S. at 156 ("No one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

The court's role as gatekeeper should not replace the adversary system. *See Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 595. It is certainly not the trial Court's role to determine whether the expert's conclusions are actually correct. *See id.* at 595. So long as the testimony rests upon "good grounds" it should be tested by the adversary process -- competing expert testimony and active cross-examination—rather than excluded from juror's scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. *See Ruiz-Trioche v. Pepsi Cola of Puerto Rico Bottling Co.,* 161 F.3d 77, 85 (1st Cir. 1998) (citing *Daubert,* 509 U.S. at 596).

## II.     Mr. Mallet is Qualified to Give an Expert Opinion.

When this issue was previously raised by Gulf Stream in the *Alexander* trial (and by Fleetwood in the *Dubuclet* trial), this Court determined that Mr. "Mallet does have relevant experience to support certain of the opinions he has offered" and that the attacks on his expertise "are more appropriately raised as part of the *voir dire* of this expert." *See*

Order and Reasons, p. 2, Docket Entry No. 3218.   In fact, Mr. Mallet testified at the *Alexander* trial.   As many of the arguments made in those Defendants' Motions to Exclude Testimony overlap with Forest River's Motion, Plaintiff hereby incorporates herein the arguments made in those Plaintiffs' Responses.   *See* Rec. Docs. 2990 and 7166.

Mr. Mallet has been involved in the building industry for over thirty-five (35) years. *See* July 17, 2009 Deposition of Alexis Mallet, Jr., at 381:4–7 (hereinafter "2009 Mallet Dep."), relevant portions attached as **Exhibit A**.   He is licensed as a general contractor, residential building contractor and manufactured housing installer. *See id.* at 379:12–22.  As can be seen on his *curriculum vitae* ("CV"), Mr. Mallet has an impressive list of certifications, licenses, recognitions and education experiences. *See* CV of Alexis Mallet, Jr., attached as **Exhibit B**. To the best of Mr. Mallet's knowledge, he is also the only non-engineer member of the Investigative Engineers Association.   *See* Mallet Dep. at 388:23–389:2. In fact, on November 13, 2009, he gave a lecture as a paid presenter to the Investigative Engineers Association on the topics of building sciences[1], air movement, air temperature, moisture, water management, mechanical systems and how they interrelate with building design, construction and materials. *See* Declaration of Alexis Mallet, Jr., at ¶ 3, attached as **Exhibit D**.  Mr. Mallet also has training in the field of indoor air quality. *See* 2009 Mallet Dep. at 33:21–34:5.

---

[1]The Department of Housing and Urban Development ("HUD") defines building science as "the study of the interaction between occupants, building components/systems, and environment" with a focus "on flows of heat, air [and] moisture." Building Science Basics, at p. 2, found at http://www.hud.gov/webcasts/archives/2007-06- l4slide2.pdf, attached as **Exhibit C.**

In addition to his extensive involvement in the building industry, Mr. Mallet has also served as an expert in over *45* cases. *See* Alexis Mallet's List of Trial Testimony and/or Depositions, attached as **Exhibit E;** *see* Declaration of Alexis Mallet, Jr., at ¶ 2. Recently, he served as an expert of building design and construction defects and failures. *See Aucoin v. Southern Quality Homes, LLC,* 2008 WL 498668 (La. 2/26/08). Mr. Mallet has served as an expert witness on numerous occasions, and his testimony has never been excluded. *See* Mallet Declaration, at ¶ 2.

Specifically, Mr. Mallet has worked on nearly one hundred (100) travel trailers, and many more mobile homes, since 1985.  *See* 2009 Mallet Dep. at 42:17-43:13.  As a result of this work, he has become familiar with the materials used in these units, as well as the building methods and styles of travel trailers. *See id.* at 380:8–23. When asked what kind of work he has done on mobile homes and travel trailers, Mr. Mallet replied:

> Well, everything from analysis of defects and failures, analyzing the moisture issues, negative air pressure issues, comparison of the construction to the codes and standards under which they're built to determine if they're in compliance with those codes and standards, infrared thermography, indoor air quality testing, repairs to those facilities from either fire damage, water damage, mold damage, windstorm damage or some other event, such as a casualty, an accident, where a car may have run into a mobile home or into a camper, thing of that nature. We would take them apart and put them back together.

*Id.* at 384:17–385:6.  He has a long history of doing work in the context of hurricanes related to all sorts of structures, including trailers. *See id.* at 382:12–383:13.

Louisiana courts have consistently held that general contractors may testify as experts related to building defects. *See Mitchell v. Popiwchak,* 95-1423 (La. App. 4th Cir. 6/26/96), 677 So.2d 1050, 1054–55; *Cruz v. Bertucci,* 95-200 (La. App. 5th Cir. 11/15/95), 665 So.2d 460, 463.

This wealth of personal experience in the building industry allows Mr. Mallet to give expert opinions on the construction of, and materials used in, Plaintiff's trailer.

Despite Forest River's claims that Mr. Mallet purely relies on the expert opinions of others, Mr. Mallet also performed his own inspection of the trailer. *See* October 2, 2009 Report of Alexis Mallet, Jr. at 5, relevant portions attached as **Exhibit F**. Regardless, an expert may give opinions, "based, in part, upon report of others which are not in evidence but which the expert customarily relies upon in the practice of his profession." *Jenkins v. US.,* 307 F.2d 637, 641 (C.A.D.C. 1962) (stating an expert may give opinions, "based, in part, upon report of others which are not in evidence but which the expert customarily relies upon in the practice of his profession"); *Southwire Co. v. JP. Morgan Chase & Co.,* 528 F. Supp. 2d 908, 934 (W.D. Wis. 2007) (stating experts may rely on the reports of others); *In re Lake States Commodities, Inc.,* 272 B.R. 233, 242 (Bkrtcy. N.D. Ill. 2002) (an expert can rely on another expert's report, even if it is inadmissible hearsay). Mr. Mallet stated that, in the course of his business, he will consult with engineers. *See* 2009 Mallet Dep. at 390:14-391:18.

III.     **Exclusion of Mallet's Testimony in Whole.**

Contrary to Forest River's assertions that many of Mr. Mallet's opinions are merely duplicative of the testimony of Plaintiff's other experts, Mr. Mallet's testimony provides the essential function of providing a global picture of the travel trailer at issue. While each of the other experts' testimonies focuses on certain individual components of the travel trailer, Mr. Mallet's testimony contextualizes those separate analyses as they relate to the travel trailer as a whole.  Some of his testimony provides background facts, upon which Mr. Mallet rests his other opinions. *Daubert* mandates the Court to ensure

that an expert's testimony rests on a reliable foundation. *See Daubert,* 509 U.S. at 592–93. The facts on which the witness relies must be of the type normally relied on by experts in the field. *See Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408, 414 (3d Cir. 2002). The reasoning from the facts to the opinions must be adequately explained and contain no analytical gaps. *See General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). As the Court has previously noted, experts may (and in fact are expected to) provide the facts upon which their opinions are based. *See* Docket Entry No. 2800, pp. 1–2. However, several of the paragraphs of testimony that Forest River seeks to exclude contain some of the facts and reasoning that Mr. Mallet used to arrive at his opinions.

Also, an expert witness is permitted to give testimony that embraces an ultimate issue to be decided by the trier of fact. *See Berckeley Inv. Group v. Colkitt, 455* F.3d 195, 217 (3d Cir. 2006). Only legal opinions are prohibited. *See id.* An expert opinion is not a legal opinion if: (1) the expert does not use legal terms; (2) if any of the potentially legal terms have a separate meaning when used in the vernacular; or (3) if the witness does not track the language of either a legal principle of an applicable statute. *See US. v. Perkins,* 470 F.3d 150, 157–58 (4th Cir. 2006). As such, Mr. Mallet's opinions do not invade the province of the jury.

In sum, Mr. Mallet has the experience and training to provide his expert opinions, and his opinions will assist the jury in reaching a decision without invading its province. Therefore, Defendant's Motion should be denied.

**IV.**     **Exclusion of Specific Opinions.**

Forest River argues that even if this Court does not exclude Mr. Mallet's testimony in its entirety, his testimony as to certain opinions should be excluded.

Specifically, Defendant requests that this Court exclude Mr. Mallet's testimony regarding:  mold inside the trailer; the applicability of certain building codes to the construction of the travel trailer; general construction issues; formaldehyde off-gassing and mold growth; jacking of the travel trailers; vapor barriers; alternative building materials; the furnace of the travel trailer; and other miscellaneous topics such as the tire size, extent of moisture damage and wood degradation, and air conditioner size. *See* Rec. Doc. 11383-1.  In short, Defendant argues that every opinion of Mr. Mallet should be excluded for one reason or another.  Those arguments will be individually addressed below in the order that they are addressed in Defendant's memorandum.

## Mold Inside the Travel Trailer

Forest River bases its argument that Mr. Mallet's testimony on the mold levels within Plaintiff's travel trailer is irrelevant because Plaintiff has not provided medical expert testimony that his medical conditions are caused by mold in the trailer. *See* Rec. Doc. 11383-1 at 10–12.  However, this argument fails to consider a second, critical function of Mr. Mallet's findings:  those elements and conditions that are generally necessary for mold manifestation are the same elements and conditions that elevate the levels of formaldehyde off-gassing in hot, humid environments.  *See* Jan. 2010 Deposition of Alexis Mallet (hereinafter "Jan. 2010 Mallet Dep."). at 117:20–118:14, See **Exhibit G** attached.  This relationship between the levels of mold and the levels of formaldehyde off-gassing in the unit is an important component of Mr. Mallet's research regarding the defects of the travel trailer at issue. *See also* July 2, 2008 CDC Final Report on Formaldehyde Levels in FEMA-Supplied Travel Trailers, Park Models, and Mobile Homes at 16, relevant portions attached as **Exhibit H**.    As the levels of

formaldehyde off-gassing in the trailer is a pivotal issue in this litigation and is undoubtedly relevant, any research and findings as to the interrelated mold levels is also relevant and, thus, should not be excluded.

### Applicability of Certain Building Codes

Plaintiff disputes Forest River's assertion that the NEC, ASHRAE standards, IBC, IRC, New Orleans Building Codes and International Building Codes did not apply to the construction of the travel trailer at issue. Plaintiff requests that this Court reference Plaintiff's February 18, 2010 Memorandum in Opposition to Shaw Environmental, Inc.'s Motion in Limine to Exclude References to Building Codes, which addresses this argument in detail.

### General Construction Issues

Mr. Mallet's opinions are that the Forest River travel trailer was not constructed for use in hot, humid climates (Mallet's Conclusion C) and that the quality of workmanship in the travel trailer, including the installation of the HVAC system, was less than superior (Mallet's Conclusion M). Forest River argues that Mr. Mallet's testimony on these topics should be excluded because (1) he does not have the expertise to comment on the workmanship or design capabilities of any travel trailer and (2) these topics are irrelevant. *See* Rec. Doc. 11383-1 at 15–16.

However, Mr. Mallet has over thirty-five years of experience as a general contractor in Louisiana and numerous other states. *See* 2009 Mallet Dep. at 381:4–7. Although he has never constructed a travel trailer from scratch, he has constructed hundreds of other housing units and repaired and rebuilt multiple travel trailers. Thus, he is aware of the means and methods of constructing travel trailers. Further, the same

building science and forensic analysis used to evaluate moisture and air intrusion in buildings is applicable regardless of what type of structure is being evaluated. *See* 2009 Mallet Dep. at 170:19–171:7. Moreover, Mr. Mallet has been found qualified as an expert on general construction, estimating, analysis of construction and design defects, building science, and mold remediation by the Louisiana Supreme Court as recently as two years ago. *See Aucoin v. Southern Quality Homes, LLC*, 984 So.2d 685, 688, n. 3, 2007-1014 (La. 2/26/08) (finding Alexis Mallet's testimony as to moisture intrusion in a mobile home "extremely well documented, thoroughly researched and based on sound construction standards and entitled to a great deal of weight"). More importantly, this Court admitted Mr. Mallet's opinions in the Gulf Stream and Fleetwood bellwether cases and he ultimately testified in the Gulf Stream trial. *See* Order and Reasons, p. 2, Docket Entry No. 3218.

Furthermore, Mr. Mallet's extensive experience in working with mobile homes in Louisiana[2] also provides him with the knowledge that formaldehyde-based wood products emit more formaldehyde when they are exposed to heat and moisture. Therefore, he is qualified to offer the opinion that if a housing unit is constructed in such a manner that moisture and external air infiltrate the housing structure, it will increase the relative humidity therein, which in turn, other experts will show, increased the levels of formaldehyde emitted by the wood products. This makes his testimony regarding the quality of the workmanship and the resulting defects eminently relevant to determining their effect on the formaldehyde emissions in Lyndon Wright's travel trailer. Mr. Mallet does not need to be an engineer to understand the principles of construction that would relate to this matter. Given that a general contractor may testify as an expert as to

construction defects,[3] Mr. Mallet is more than qualified to testify as to the impact the faulty design and construction of the travel trailers had on the formaldehyde and mold levels in the trailer at issue.

### Formaldehyde Off-Gassing and Mold Growth

Defendant argues that Mr. Mallet's testimony regarding the increase of formaldehyde off-gassing and mold growth due to the defects within the trailer (Conclusions D, F, G, and K) is irrelevant and unreliable because Mr. Mallet never links the construction defects to a *quantifiable* increase in the rate of formaldehyde off-gassing or mold growth. *See* Rec. Doc. 11383-1 at 16–17 (emphasis added). However, this fails to consider Mr. Mallet's testimony regarding the increased off-gassing immediately prior to the cited sentence. *See* Jan. 2010 Mallet Dep. at 163:4–164:21. Furthermore, testing to precisely quantify the increase in the rate of off-gassing while Mr. Wright resided in the travel trailer was not possible due to the fact that more than one year had elapsed since Plaintiff had moved out of the trailer and almost four years had elapsed since its manufacture and also due to the limitations of the testing protocol imposed on all experts involved. Even assuming that the levels of formaldehyde in the trailer during Plaintiff's residency could be properly quantified at the time of inspection (which they cannot be as there would have been significant degradation of the levels of formaldehyde off-gassing after this length of time), in order to perform such tests, each individual formaldehyde-emitting component would have had to individually be placed in a chamber to measure the off-gassing. Such testing could not have been performed until the destructive phase of the inspections, at which time it was impracticable.

---

[2] *See* 2009 Mallet Dep. at 43:14–18.

Moreover, there is no need to test scientifically proven concepts. Plaintiff has shown that there are multiple intrusion points on the exterior of the travel trailer and from the cavity to the interior of the unit. Additionally, it has been proven that the intrusion of moisture and air through these points led to increased levels of relative humidity inside the unit, which in turn caused the levels of formaldehyde off-gassing and mold growth to increase. There is no real need to test this scientifically proven concept.

Forest River states that there exists too great a gap between Mr. Mallet's data and the opinions offered. However, Mr. Mallet's assertions that the design and construction of the trailer increased the heat and humidity inside the trailer, thus increasing the formaldehyde off-gassing and mold growth, are not vague or speculative. These opinions are based upon his intimate familiarity with this concept through his extensive work with mobile homes and numerous other structures in Louisiana and his companion knowledge of the HUD Code (Part 3280) for mobile homes that address this relationship between increased heat and humidity and formaldehyde off-gassing. Thus, despite the lack of a quantifiable percentage increase in the off-gassing rates[4], Mr. Mallet's testimony is both reliable and relevant and should not be excluded.

### Jacking

Forest River argues that Mr. Mallet's opinions on the effects of jacking and blocking should be excluded because he has no engineering background that would allow him to reach these conclusions. *See* Rec. Doc. 11383-1 at 17. However, when the record

---

[3] *See Mitchell*, 95-1423 (La. App. 4th Cir. 6/26/96), 677 So.2d at 1054–55; *Cruz*, 95-200 (La. App. 5th Cir. 11/15/95), 665 So.2d at 463.

[4] Despite Defendant's assertion that Mr. Mallet fails to quantify a percentage increase in the formaldehyde off-gassing rates, Mr. Mallet's report states that for every twelve degrees Fahrenheit rise in temperature, the formaldehyde emissions double. *See* October 2, 2009 Report of Alexis Mallet, Jr. at 164–68, relevant portions attached as **Exhibit F**.

is examined, Mr. Mallet has an operational and practical understanding of engineering principles as he has been involved in rehabilitating buildings and houses that have suffered structural damage due to defects. *See* 2009 Mallet Dep. at 85:10–86:20. Moreover, his extensive work in the jacking and stabilization of structures has won him an international award. *See id.* In the hundreds of times that he has been involved in these projects, he has become knowledgeable of the basic engineering principles of the shifting of houses and buildings and those forces which are necessary to cause structural damage allowing air and moisture intrusion into the envelope of a structure. Furthermore, in building hundreds of housing units and buildings, he has become intimately familiar with the types of construction materials used, as well as their load bearing characteristics.

Defendant further argues that Mr. Mallet's opinions are duplicative of Plaintiff's other expert witness and thus should be excluded for this reason. However, to the extent that Mr. Mallet's opinion with regard to the effect of the improper jacking of the travel trailer overlaps with the opinion of Charles Moore, Plaintiff will be offering one expert on this issue, and final determination as to which expert will be opining has not been determined. There is no merit in asserting that testimony is duplicative prior to the actual trial.

Moreover, Forest River mischaracterizes the case cited in its Memorandum as exemplary of the point that courts have excluded experts who planned to offer cumulative testimony. The court in *Miley v. Delta Marine Drilling Co.*, 473 F.2d 856 (5th Cir. 1973) did not exclude the expert primarily because his testimony would have been cumulative as Forest River's Memorandum suggests. Rather, the exclusion was made on the basis that the witness lacked experience in the area of loading and unloading of anchor chains

and therefore did not qualify as an expert.  *See id.* at 858.  Furthermore, the appellate court's note makes clear the fact that the trial court actually allowed cumulative testimony at the trial since it permitted two experts that plaintiff had previously qualified to testify as to loading and unloading procedures during the trial.  *See id.*

As Rule 403 of the Federal Rules of Evidence provides a permissive standard rather than mandating exclusion, and given that the Defendant will not be prejudiced by the inclusion of Mr. Mallet's testimony at this time, Plaintiff argues that Mr. Mallet's testimony as to the effect of improper jacking and its relationship to the increased formaldehyde off-gassing and mold growth must not be excluded.[5]

### Vapor Barriers

Mr. Mallet opines that the travel trailer at issue was defective due to the inclusion of vinyl vapor barriers in the interior of the trailer, unsuitable for use in hot, humid climates, which caused moisture to become trapped inside the unit, thereby leading to increased formaldehyde off-gassing and mold growth (Mallet's Conclusions I and J). Forest River argues that the methodology used by Mr. Mallet reveals that he is simply speculating as to this conclusion.  Defendant bases this on statements made in Mr. Mallet's depositions that he did not observe any vapor damage between the wallboard and vinyl covering, nor did he present any photograph depicting such moisture damage. *See* Rec. Doc. 11383-1 at 19.

However, Defendant's assertion is based on a groundless assumption.  Defendant assumes that you must have visible moisture damage in order to cause increased formaldehyde off-gassing and mold growth.  This is untrue.  In order to cause moisture

damage to the wallboard in the cavity, you have to have a relative humidity of around 95%. *See* Jan. 2010 Mallet Dep. at 139:2–17. However, increased formaldehyde off-gassing occurs at a lower level of relative humidity: between 60-70%—a level too low to cause observable moisture damage. *See id.* at 115:25–116:9.

Likewise, Forest River points to Mr. Mallet's failure to provide the exact PERM rating of the wall covering as evidence that his testimony is pure speculation. *See* Rec. Doc. 11383-1 at 19. However, as explained by Mr. Mallet, in his past research and experience with mobile homes, he has found all vinyl that to be moisture retarders, thus making the exact PERM level inconsequential as to this argument that the use of the vinyl wall covering at all in this climate was a defect that led to increased formaldehyde off-gassing and mold growth. *See* Jan. 2010 Mallet Dep. at 134:9–135:22.

### Alternative Building Materials

Forest River argues that Mr. Mallet's testimony concerning the use of alternative building materials should be excluded because: (1) he has no expertise in the design and construction of travel trailers, (2) his testimony is duplicative, (3) the question of alternative building materials is outside his area of expertise, (4) he failed to present a risk/utility analysis, and (5) he has never attempted to construct a travel trailer with these alternative materials himself to determine their feasibility. *See* Rec. Doc. 11383-1 at 19–20. All of these assertions are patently false with the exception of the last one: Mr. Mallet has never attempted to construct a travel trailer with these alternative building materials himself. However, in order to offer expert testimony on the feasibility of

---

[5] Furthermore, despite Defendant Gulf Stream's similar argument regarding the alleged duplicative nature of the witness's testimony in that case, this Court did not determine that exclusion was necessary. *See* Rec. Doc. 3218 at 3.

alternative building materials in the construction of a temporary housing unit, he is not required to have reinvented such wheel.

First, as detailed above, Mr. Mallet has constructed, renovated, repaired, restored, or inspected hundreds of other housing units and has repaired or rebuilt nearly one hundred (100) travel trailers, and many more mobile homes. Thus, he is aware of the means and methods of constructing travel trailers. *See* 2009 Mallet Dep. at 42:17-43:13. As a result of this work, he has become familiar with the materials used in these units, as well as the building methods and styles of travel trailers. *See id.* at 380:8–23. Thus, Mr. Mallet is qualified to offer testimony on alternative materials, design, and construction of travel trailers.

Second, despite Dr. Smulski's retention as Plaintiff's woods products expert, Mr. Mallet's experience with the construction, repair, and analysis of the defects of various structures is not rendered duplicative. Mr. Mallet's testimony provides the essential function of providing a global picture of the feasibility of use of alternative building materials in the travel trailer at issue.

Further, Mr.Mallet's more than thirty-five year career as a general contractor has provided him with a vast knowledge of the suitability of certain building materials. His work specifically with mobile homes and travel trailers has further honed this knowledge of the suitability of such materials to the travel trailer at issue in this litigation. This body of work has required Mr. Mallet to have knowledge of the risks of formaldehyde off-gassing in mobile homes, and what materials can be safely used to replace the formaldehyde-emitting components according to HUD Code standards on this issue.

Thus, the suitability of alternative building materials is well within Mr. Mallet's area of expertise.

Forest River's argument that Mr. Mallet failed to present a risk/utility analysis is simply inaccurate. Defendant argues that Mr. Mallet never conducted an examination of prices for the alternative materials. However, Mr. Mallet's report offers a pricing breakdown upon demand, and such testimony was provided during his deposition. *See* Jan. 2010 Mallet Dep. at 293:9–295:15.

Finally, as noted previously, the fact that Mr. Mallet has never attempted to construct a travel trailer with these alternative building materials himself is not determinative of the admissibility of his testimony regarding the availability and feasibility of alternative building materials. An expert witness opining on the availability and feasibility or alternative building materials is not required to build a test model composed of the alternative products.

In the *Seither* case cited to by Defendant as requiring a valid alternative design, the product at issue was being analyzed and redesigned for its crashworthiness. *See Seither v. Winnebago Industries, Inc.*, 853 So.2d 37, 40–41 (La. App. 4th Cir. 2003). The alternative design at issue was a mockup for a structural redesign of an RV that had killed several passengers when it crashed. *See id.* In the present litigation, however, the alternative design at issue is a substitution of building materials. Thus, *Seither* is inapposite on that issue and has no real relevance to this issue.

In light of Mr. Mallet's vast experience with construction materials, and with the issues surrounding formaldehyde-emitting building components specifically, he is well-

qualified to provide an expert opinion on alternative building materials for the travel trailer at issue.

### Furnace

Forest River criticizes Mr. Mallet's ability to render opinions on the repair of the heating system. Mr. Mallet offers the opinion that the defect in the duct work in the travel trailer allows for external moist air to be drawn in to the trailer. As discussed above, Mr. Mallet is uniquely qualified to offer an opinion because he has supervised the installation of and designed hundreds of heating and air conditioning systems in housing units. *See* Mallet Declaration, at ¶ 9. It is a basic tenet of heating and air conditioning that if there are leaks in the duct work, it will cause negative air pressure and external hot, humid air will be drawn in to the building from the outside environment. This is particularly true in southern climates such as Louisiana. Further, Mr. Mallet testified during the *Alexander* trial about a negative pressure situation in a travel trailer. *See* September 17, 2009 Afternoon Trial Transcript, pp. *259* & 279-80, relevant portions attached as **Exhibit I.** Additionally, it requires very little technical knowledge to know whether or not a duct system is leaking. It does not involve the design or construction of the entire HVAC system and is not a mechanical issue. *Id.* at ¶ 10.

If the furnace system was not working properly, *i.e.* through leaks in the ductwork, then this condition has a direct impact on the increased formaldehyde off-gassing and mold growth as discussed above, and it thus, relevant to the issues in this litigation.

### Miscellaneous Topics

18

*Tire Size*

Mr. Mallet's inspection of the Wright travel trailer revealed that one of the four tires was a smaller size than the others by one inch. *See* October 2, 2009 Report of Alexis Mallet, Jr. at 49, relevant portions attached as **Exhibit F**. There is no evidence that any of the tires on this unit had been altered at any time since delivery. In his testimony, Mr. Mallet opines that this one inch differential likely affected the stress placed on the unit's frame, thus contributing to the defects allowing moisture intrusion. Forest River argues that Mr. Mallet is not qualified to offer an opinion on this issue. However, Plaintiff contends that Mr. Mallet's substantial work and experience with both mobile homes and travel trailers, along with his extensive background regarding jacking, leveling, and blocking mobile homes and other structures, provides him with the requisite knowledge of the effect an unlevel frame may have had in contributing to the defects allowing for moisture intrusion. Thus Mr. Mallet's testimony should not be excluded on this issue.

*Extent of Moisture Damage and Wood Degradation*

Forest River argues that any comments made by Mr. Mallet regarding moisture damage and wood degradation inside the Wright travel trailer should be excluded because Mr. Mallet allegedly cannot provide testimony that these issues existed at the time Plaintiff resided in the unit. However, Forest River fails to acknowledge that Mr. Mallet was never asked whether any such tests were even available to determine the precise amount of degradation and damage in existence at the time of Plaintiff's occupancy. Thus, Defendant cannot disqualify Mr. Mallet's opinions for their own failure to determine whether such testing is available at all.

## CONCLUSION

Based upon the foregoing reasons, Plaintiff Lyndon T. Wright respectfully requests that this Court deny Defendant Forest River, Inc.'s Motion to Limit the Testimony of Alexis Mallet.

Respectfully Submitted,

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:     s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:   504/522-2304
        Facsimile:     504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:   504/522-2304
        Facsimile:     504/528-9973
        jwoods@gainsben.com

        **COURT-APPOINTED PLAINTIFFS'
        STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519

MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
Dennis Reich, Texas #16739600

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing on February 18, 2010.

      s/Gerald E. Meunier
GERALD E. MEUNIER, #9471