UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * MDL NO. 1873<br>*<br>* SECTION "N" (5)<br>*<br>* JUDGE ENGELHARDT<br>* MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO | | * |
| Lyndon T. Wright v. Forest River, Inc., et al, Docket No. 09-2977; | | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SHAW ENVIRONMENTAL, INC.'S MOTION *IN LIMINE* TO EXCLUDE REFERENCES TO BUILDING CODES

Plaintiff Lyndon T. Wright ("Plaintiff") respectfully submits this memorandum in opposition to Shaw Environmental, Inc.'s ("Shaw" or "Defendant") Motion in Limine to Exclude References to Building Codes. For the reasons set forth herein, Plaintiff respectfully requests that Shaw's motion be denied.

### STANDARD OF ADMISSIBILITY

Defendant's Motion in Limine is one to exclude evidence. Therefore, the Federal Rules of Evidence govern the Court's analysis of the motion. Rule 401 of the Federal Rules of Evidence provides:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

FED. R. EVID. 401. Further, Rule 402 provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of

> Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

Fed. R. Evid. 402.

Long established precedent makes clear that the court's role as gatekeeper should not replace the adversary system. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993). It is certainly not the trial Court's role to determine whether the expert's conclusions are actually correct. *See Id.* at 595. So long as the testimony and evidence offered rests upon "good grounds" it should be tested by the adversary process -- competing expert testimony and active cross-examination—rather than excluded from juror's scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. *See, Ruiz-Trioche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) (*citing Daubert*, 509 U.S. at 596).

**I.   Building Codes are Relevant to Material Issues Concerning the Claims Asserted by Plaintiff and References to the Codes Should Be Permitted at Trial.**

Defendant Shaw seeks an order *in limine* specifically excluding Plaintiff from proffering any evidence, testimony, argument or even any references to building codes during the trial of this case, including the New Orleans Building Code, the International Building Code ("IBC"), and the International Residential Code ("IRC"). Specifically, Shaw alleges that references to these codes should not be permitted because there is no evidence that they are applicable to the temporary housing unit ("THU") at issue in

this case and because there are no allegations or evidence that violations of the building codes contributed to Plaintiff's injury. As the following demonstrates, Shaw's motion should be denied because evidence concerning the application of the building codes to the THU is relevant to the claims asserted by Plaintiff and there is evidence showing that violations of the building code requirements had a direct and material affect on the injuries sustained by Plaintiff.

### A. *FEMA's Use of the Trailers as Temporary Housing Units Triggers the Application of the Building Codes.*

In support of its motion *in limine*, Shaw wrongfully asserts that the building codes are irrelevant in this case because there is no evidence that the codes are applicable to travel trailers. This argument fails because the trailer at issue in this case was not provided for use as a "travel trailer"; it was manufactured, installed and provided to Plaintiff for use as a temporary housing unit. Pursuant to the FEMA procurement documents, the trailer provided to the Plaintiff was manufactured and installed "for the purpose of providing temporary housing" for its occupants. Travel trailers are, by their very nature, designed to be mobile and used on a short term basis for recreational, camping and seasonal use, but not for housing. The temporary housing units FEMA provided Plaintiff and other occupants following Hurricane Katrina, on the other hand, were manufactured specifically to meet FEMA's temporary housing standards which transformed the trailer to a temporary housing unit.

It undisputed that the FEMA specifications and procurement documents call for the manufacture and installation of "temporary housing units," not travel trailers. In support of its claims in this case, Plaintiff has submitted, among other things, expert reports prepared by Charles David Moore, Paul LaGrange, Alexis Mallet, Jr., and Ervin L.

3

Ritter.[1] Each of these experts reached the same conclusion that the trailer Plaintiff was provided by FEMA was intended for, and was used as, a full-time residence. For example, Mr. Mallet testified that the Plaintiff's trailer was clearly converted to a housing unit because, among other things: the framing for the unit was blocked off the ground; the unit contained a residential refrigerator; it did not have holding tanks for the sewerage, the black water, the gray water, or for the fresh water; the plumbing was constructed to be hooked up to the city sewerage; and the unit was constructed to be connected to the city water and electrical systems. (Deposition of Alexis Mallet, Jr., Jan. 12, 2010, pp. 177, 457-58).[2]

When the trailers were converted to temporary housing structures pursuant to the FEMA specifications and provided to the Plaintiff and other occupants for residential purposes, it triggered the application of the building codes. *See e.g.*, (Mallet, pp. 176-177); (Deposition of Charles Moore, Oct. 27, 2009, pp. 90, 107-108).[3] At the time the temporary housing unit provided to Plaintiff was manufactured and installed, the International Residential Code 2000 and the City of New Orleans Building Code effective as of June 2003 ("NOBC") were the building codes that governed housing construction in that locale. *See,* (Moore, pp. 34-36, 289-90); (LaGrange Report, pp. 3-4). Both the IRC and NOBC expressly state, "Temporary structures and uses shall conform to the structural strength, fire safety, means of egress, light, ventilation and

---

[1] *See, e.g.,* October 2, 2009 Structural Condition Assessment for FEMA Travel Trailer Wright/Forest River, Inc. Trailer Melville, Louisiana ("Moore's Report") (a copy of which is attached hereto as Exhibit A); October 1, 2009 Investigation and Inspection of FEMA Travel Trailer No. 127702, Prepared by Ervin L. Ritter, P.E. ("Ritter Report") (a copy of which is attached hereto as Exhibit B); October 2, 2009 Inspection Report of the Lyndon Wright FEMA Temporary Housing Unit, Wright-Forest River, Inc., Melville, Louisiana, Prepared by First General Services of the South, Inc. ("Mallet Report") (a copy of which is attached hereto as Exhibit C); August 2009 Inspection Report prepared by LaGrange Consulting, LLC ("LaGrange Report") (a copy of which is attached hereto as Exhibit D).
[2] The cited portions of Mr. Mallet's deposition testimony are attached hereto as Exhibit E.
[3] The cited portions of Mr. Moore's deposition testimony are attached hereto as Exhibit F.

sanitary requirements of this code as necessary to ensure the public health, safety and general welfare." *IRC 2000*, R107.2; *Bldg. Code of the City of New Orleans, 2003*, 107.2; see also, (LaGrange Report, pp. 3-4); (Moore, p. 109).[4]

Moreover, the New Orleans Building Code incorporates certain provisions of both the IBC and the IRC. For example, Section 101.2 of the Code states, "The provisions of the *International Building Code* shall apply to the construction, alteration, movement, enlargement, replacement, repair, equipment, use and occupancy, location, maintenance, removal and demolition of every building or structure...." *Bldg. Code of the City of New Orleans, 2003,* 101.2. Section 101.2 also includes an exception that states, "[d]etached one-and-two-family dwellings and multiple single-family dwellings (townhouses) not more than three stories high with separate means of egress... shall comply with the *International Residential Code*." *Id.*

The term "dwelling" is defined under the IRC as:

> Any building that contains one or two dwelling units used, intended or designed to be built, used, rented, leased, let or hired out to be occupied, or that are occupied for living purposes. A dwelling is a building that contains either one or two dwelling units. The purpose of a dwelling is occupation for living purposes, regardless of the manner of ownership. Single-family houses and duplex fall under the definition of a dwelling.... A single unit providing complete independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation.
> ...

*IRC 2000*, R202. Based on the undisputed fact that the intended use of the FEMA trailers was to serve as "dwelling units" for its occupants, the temporary housing unit the Plaintiff was provided fell within the purview of the New Orleans Building Code, along

---

[4] Copies of the cited portions of the International Residential Code 2000 and the New Orleans Building Code 2003 are attached hereto as Exhibits G and H, respectively.

with the applicable sections of the IRC and the IBC.  This conclusion is also supported by the testimony and reports proffered by the Plaintiff's experts in this case.  For example, it is Mr. Moore's expert opinion that, although these building codes do not specifically discuss or refer to "travel trailers", when the trailers are stacked on blocks and converted to immobile living structures, as they were in this case, they become akin to manufactured homes and temporary structures that fall within the purview of the IRC, the IBC and the NOBC.  See, (Moore, pp. 34-35, 90, 109).

It is Mr. Moore's expert opinion that trailers installed in the manner as the one occupied by the Plaintiff were required to meet the standards of the NOBC, the IRC and the IBC.  (Moore, p. 109).  In rendering his expert opinions in this case, Mr. Moore consulted various industry standards, building codes and guidelines to determine what requirements were applicable to the temporary housing unit provided to the Plaintiff, including without limitation, the International Building Code, International Residential Code the ASCE 7, HUD standards, the Manual for Steel Construction, and the Timber Construction Manual.  (Moore, pp. 13-16, 32-33, 34).  Mr. Moore testified that in preparing his expert report he referred to both the International Building Code and the International Residential Code because he "believed that these units should have been designed and constructed in accordance with the building codes that were in force and in place at the time that they were used, and these were two documents that were referenced in the New Orleans Building Code.  (Moore, pp. 34-35).  Likewise, other experts retained by the Plaintiff to render opinions in this litigation are in agreement with Mr. Moore's conclusion that the City of New Orleans Building Code, the IRC and the IBC are applicable to the temporary housing unit provided to the Plaintiff.  See, e.g.

6

(LaGrange Report, pp. 3-4); (Mallet Report, p. 128); (Ritter Report, p. 22). As such, the is extensive evidence in the record which demonstrates the applicability and relevancy of the building codes to the Plaintiff's claims in this litigation.

### B. Whether the City of New Orleans Decided to Enforce the Building Code with Respect to the FEMA Temporary Housing Units Has No Affect on the Relevancy of the Code to Plaintiff's Claims.

In support of its Motion, Shaw asserts that the building codes have no relevance in this case because the City of New Orleans did not require the THUs to meet the requirements of the NOBC, the IBC or the IRC. (Shaw Memo., pp. 6-7 (Document 11414-1)). According to Shaw, since the local building authorities in New Orleans were aware of the trailers and did not seek to apply the building code, that is proof that the codes do not apply. (Shaw Memo., pp. 6-7). This faulty assertion is based on Shaw's unsupported interpretation of an email from Johnny Odom, the Chief Building Inspector of the City of New Orleans, which Shaw claims is proof that the IRC, the IBC and the NOBC are not applicable to the FEMA trailers. *Id.* However, Shaw's interpretation Mr. Odom's comments is misleading, as Mr. Odom did not state that the building codes were inapplicable to the THUs.

As a follow up to the email from Mr. Odom referenced in Shaw's memorandum, Alex Mallet, Jr., of First General Services of the South Inc.,[5] contacted Mr. Odom to determine whether the City of New Orleans actually applied the building codes to the THUs supplied by FEMA. (Mallet, pp. 19-20). According to Mr. Odom, the building code requirements were not waived by the City of New Orleans in regard to the FEMA trailers; the City simply suspended their inspections and allowed FEMA to conduct their

---

[5] Plaintiff has offered Mr. Mallet as an expert in this case. The validity and relevance of Mr. Mallet's testimony has been separately addressed by Plaintiff in its memorandum submitted in Opposition to Defendant Forest River, Inc.'s Motion to Limit the Testimony of Alexis Mallet.

own inspections. (Mallet, pp. 20-21). Specifically, in an email to Mr. Mallet dated January 8, 2010, Mr. Odom states, "We did not waive code requirements, we did allow FEMA to have their own inspections." (Mallet, p. 21).[6] This communication from the City of New Orleans chief building inspector is further evidence that the building code requirements of the NOBC and the IRC are applicable to the temporary housing unit FEMA provided Plaintiff. Furthermore, Mr. Odom's communications with Mr. Mallet also show that the City of New Orleans expected and required FEMA, or its contractor, to inspect the trailer to ensure building code compliance. *See*, (Mallet, pp. 22-23).

### C. Testimony of Shaw's Rule 30(b)(6) Witness Confirms the Relevancy and Applicability of the Building Codes to Plaintiff's Claims.

The testimony provided by Geoffrey Compeau, the individual designated to testify on behalf of Shaw, further demonstrates the relevancy of the building codes to the Plaintiff's claims in this case. It is undisputed that, pursuant to its contract with FEMA, Shaw was required to comply with all Federal, State, and local laws, regulations and codes applicable to its installation of the THUs. (Deposition of Geoffrey Compeau, Jan. 7, 2010, pp. 69-70).[7] Mr. Compeau, who was Shaw's project manager in charge of overseeing the entire FEMA project, testified that the local building codes and ordinances were applicable to the travel trailers insofar as they required Shaw to obtain building permits for water, sewer and electrical. (Compeau, pp. 93-95, 273-74). Shaw was also aware that the installation of the trailers had to comply with applicable HUD codes and Louisiana State permitting and building code requirements. (Compeau, pp. 255-259). After admitting the relevancy and applicability of the building codes to the Plaintiff's temporary housing unit with regard to water, sewer and electrical, Shaw

---

[6] A copy of the January 8, 2010 email exchange between Mr. Mallet and Mr. Odom is attached hereto as Exhibit I.
[7] The cited portions of Mr. Compeau's deposition testimony are attached hereto as Exhibit J.

8

cannot now validly assert that the building codes have no relevancy in this case.

Moreover, it is undisputed that Shaw had numerous discussions, both internally and with government and local officials in New Orleans, regarding the application of local building code requirements and building permits for items such as blocking and leveling. *See generally*, (Compeau, pp. 249-260, 359-362). In fact, Shaw had meetings several times a week with local building officials from various parishes regarding the building codes and building permits for both private and group sites. (Compeau, p. 360). According to Mr. Compeau, Shaw was clear that they needed to obtain electrical, sewer and water permits, and Shaw had concerns at to whether the building codes governed the THUs. (Compeau, p. 360). Despite its concerns and constant discussions with local building officials, Shaw never sought clarification from the City of New Orleans regarding whether the building code governed the temporary housing units and made no determination as to whether they needed to obtain building permits. (Compeau, pp. 360-61). Shaw's knowledge that the local building codes may apply to the THUs is further evidenced by the fact that Shaw even submitted initial applications to the City of New Orleans for building permits, but it never followed through or actually obtained them. (Compeau, p. 360-61). According to Mr. Compeau, because Shaw was unclear as to whether the local building code applied, Shaw decided to ignore the issue and simply "stopped looking for building permits." (Compeau, pp. 360-61).

Mr. Compeau's testimony patently demonstrates the relevancy of the building codes to issues and claims asserted by the Plaintiff in this case. Shaw's decision to ignore the application of the building codes at the time it was installing the THUs does not make the building codes irrelevant or inapplicable in this litigation. Through its

9

motion *in limine*, Shaw is effectively asking the Court to do the same thing it did concerning the building codes, turn a blind eye and pretend the codes and industry standards simply do not apply. If Shaw's motion to exclude any references to the building codes is granted it would preclude the jury from considering evidence regarding building code standards that Shaw has admitted are, at least in part, relevant to the Plaintiff's claims.

## II. Evidence of Building Code Violations Will Directly Affect Facts of Consequence to Plaintiff's Claims in this Litigation.

In this case, Plaintiff asserts a products liability claim and, alternatively, a negligence claim against Shaw based, in part, upon its installation of the temporary housing unit at Plaintiff's residence which caused and contributed to the emission of formaldehyde gas in the housing unit and thereby causing injury to the Plaintiff. Evidence concerning the failure of the FEMA temporary housing unit to meet the applicable building code requirements will have a material affect on Plaintiff's ability to establish the necessary elements of its claims in this case. For example, evidence regarding whether the installation and use of the temporary housing unit was in violation of the applicable building codes has a direct bearing on whether Shaw was negligent in carrying out its duties with respect to the THU, including a duty to inspect and warn of dangerous conditions of which it had knowledge or reasonably should have known.

Furthermore, the reports submitted by Plaintiff's experts in this case show that violations of building code requirements regarding items such as HVAC, insulation, water leakage, and loading levels can have a direct affect on off-gassing levels and can cause or contribute to the existence of mold and emission of formaldehyde gases in the

temporary housing units.[8] Thus, evidence of building code violations is directly related to Plaintiff's exposure to formaldehyde and mold while residing in the FEMA temporary housing units and the damages Plaintiff sustained due to such exposure.

To meet the standard for "relevant evidence" under Rules 401 and 402 of the Federal Rules of Evidence Plaintiff need to merely show that the evidence has "**any tendency** to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). As this memorandum shows, there can be no reasonable dispute that evidence related to building codes, the applicability of the building codes to the temporary housing unit Plaintiff was provided, the failure of the temporary housing unit to satisfy the applicable building code requirements and the increased exposure to formaldehyde gasses and/or mold caused by the failure of the unit to meet the building code requirements which caused or contributed to Plaintiff's injuries easily surpasses this minimal evidentiary standard. As such, Shaw's Motion *in Limine* to exclude any references to the building codes should be denied.

### III.  The Probative Value of Evidence Relating to the Applicability of Building Codes and Violations of the Codes Substantially Outweighs any Danger of Unfair Prejudice.

Finally, Plaintiff asserts that even if the evidence concerning building codes is relevant in this case, this evidence should still be excluded under Rule 403 of the Federal Rules of Evidence because it would be too confusing and distracting to the jury. In support of this overreaching attempt to exclude any references to building codes at

---

[8] For example, as examined in detail in the LaGrange Report, the THUs did not satisfy the building code requirements concerning insulation, air leaks, air conditioning and duct work. *See generally*, LaGrange Report (attached as Exhibit D); *See also*, Ritter Report, pp. 7-8 (attached as Exhibit B); Mallet Report, pp. 127-130 (attached as Exhibit C).

11

the trial of this case, Shaw simply reiterates it prior argument that the building codes are irrelevant to Plaintiff's claims and, therefore, if this evidence is allowed it would confuse the jury. While Shaw may dispute the relevancy of building codes in this case, that does not constitute unfair prejudice. As demonstrated above in the prior sections of this memorandum, the probative value of evidence that may be offered at trial concerning the applicability of the building codes to the temporary housing unit FEMA provided Plaintiff and the Defendants' failure to comply with the building code requirements clearly outweighs any potential for unfair prejudice or confusion of the issues.

## CONCLUSION

As demonstrated above, there are questions of material fact at issue in this case that will be advanced through evidence concerning the application of the building codes to the temporary housing unit at issue in this case and violations of the building code requirements, and in making these factual determinations the jury should be permitted to weigh all of the evidence and relevant considerations proffered by the parties. In light of the undeniable evidence that, at the very least, the building codes arguably apply to the temporary housing unit Plaintiff was provided and that Shaw's failure to comply with the building codes could have contributed to the damages sustained by the Plaintiff, Shaw's Motion *in Limine* to exclude any references to the building codes at trial should be denied.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
  GERALD E. MEUNIER, #9471
  **PLAINTIFFS' CO-LIAISON COUNSEL**

Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:    504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
Dennis Reich, Texas #16739600

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on February 18, 2010.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471

13