UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL No. 07-1873 |
| | SECTION N(5) |
| THIS DOCUMENT RELATES TO: | JUDGE ENGLEHARDT |
| *Lyndon Wright v. Forest River, Inc., et al., L.L.C., et al.*, No. 09-2977 (E.D.La.) | MAGISTRATE CHASEZ |

### PLAINTIFF'S RESPONSE TO DEFENDANT FOREST RIVER INC.'S MOTION TO STRIKE THE TESTIMONY OF PAUL J. LAGRANGE

Plaintiff Lyndon Wright ("Mr. Wright") respectfully submits the following Response to Defendant Forest River Inc.'s ("Forest River") Motion to Strike the Testimony of Paul LaGrange (Docket Entry No. 11380-1).

Forest River moves to strike certain testimony of Paul LaGrange on the basis that 1) LaGrange's testimony is duplicative and 2) he is not qualified to opine on what building codes applied to the trailer at issue or on indoor air quality. As explained below, neither of these criticisms is accurate. For this reason, Forest River's Motion must be denied.

**I.      LAGRANGE'S TESTIMONY IS NOT DUPLICATIVE.**

Federal Rule of Evidence 403 does not require a court to exclude evidence even if that evidence is duplicative. Moreover, the Rule addresses treatment of evidence at the time of trial. Wright will abide by Orders of the court that apply to trial. However, since

no trial has yet commenced, it is impossible to label any testimony as cumulative under Rule 403. Forest River's Motion is premature and must be denied.

Forest River mischaracterizes the sole reported case cited in its Memorandum as exemplary of the point that courts have excluded experts who planned to offer cumulative testimony. The court in *Miley v. Delta Marine Drilling Co.*, 473 F.2d 856 (5th Cir.1973) did not exclude the expert primarily because his testimony would have been cumulative as Forest River's Memorandum suggests. Rather, the exclusion was made on the basis that the witness lacked experience in the area of loading and unloading of anchor chains and therefore did not qualify as an expert. *Id.* at 858. Furthermore, the appellate court's note makes clear the fact that the trial court actually allowed cumulative testimony at the trial since it permitted two experts that plaintiff had previously qualified to testify as to loading and unloading procedures during the trial. *Id.*

In *Young v. Am Reliable Ins. Co.*, 1999 WL 600393 (E.D.La. Aug. 9, 1999), the court merely limited the experts to the opinions for which each expert was being offered, as plaintiffs indicated prior to trial. Finally, in *Matthew v. Remington Arms Co.*, 2009 WL 1220541 (May 4, 2009), the court did not exclude testimony offered by the plaintiffs by a second expert on alternative firearm design, which was the testimony the defendants had sought to exclude. *Id.* at *1. Defendant's motion had been made on the qualifications grounds. *Id.* The court did not agree with the defendant and denied the motion. *Id.*

Testimony of the experts in the instant case may overlap, similarly to the expert testimony in *Remington*, but is not cumulative. LaGrange investigated and reported upon the pressure envelope of Mr. Wright's trailer. Ritter was asked to inspect and evaluate

2

that existing mechanical systems in [Mr. Wright's] trailer and prepare a report. *See* Plaintiff's Response to Forest River's Motion *in Limine* to Limit the Testimony of Ervin Ritter. Al Mallet is a construction expert who has synthesized the findings of all the various experts. Though these experts may be addressing a single subject, they are looking at and testifying about that subject from wholly separate and different perspectives. None of the testimony can be cumulative if it is expressing a different perspective. Moreover, until trial, Mr. Wright should be able to have all of these witnesses available to be able to choose amongst them at the time of trial. No authority requires exclusion of testimony prior to trial on the basis of overlap.

LaGrange brings a unique perspective to this case and different testimony than the other experts. He may not be a trained engineer, but an engineering degree in and of itself is not a requirement for qualifying as an expert on air leakage or duct leakage or for being able to present reliable evidence. LaGrange has been admitted in other cases in federal courts to testify as a building science expert; as this court is well aware, he was admitted as a qualified expert in the first bellwether case of this litigation, *Alexander, et al. v. Gulf Stream Coach, et al.*, Docket No. 09-2892.

Mr. LaGrange is a former builder with over 20 years of experience in the building of residential homes and commercial construction. Deposition of Paul LaGrange, 10/26/09, attached as Ex. A, p. 10-11. He has been a licensed contractor in the State of Louisiana. Ex. A, p. 26, and Deposition of Paul LaGrange, 07/01/09, attached as Ex. B, p. 59. He has also operated a building science consulting business to assist individuals who are building their own homes, contracts, architects, and engineers, design them building assemblies, walls floors, ceilings, roof lines, air conditions, and ventilation

equipment to perform properly in the Gulf south region and climate since 1999. Ex. A., p. 9. Mr. LaGrange estimated that in this consulting business he evaluates 650 to 680 homes for energy issues each year. Ex. A, p. 17.

As Forest River's own Memorandum indicates, Mr. LaGrange was brought into the evaluation to perform blower door tests and duct blaster tests to determine air leakage in the thermal envelope and supply and return duct work in Mr. Wright's trailer. Forest River's Memorandum, p. 1. LaGrange does indeed have extensive experience in this testing and the mechanics behind it, having performed such testing as part of the energy audits he performs on 650 to 680 houses per year in his consulting business. Ex. A, p. 17-18. Neither Mr. Mallet nor Mr. Ritter performed similar testing. Thus, only LaGrange may testify from the perspective of having actually performed the testing and interpreting the results in light of extensive experience with such testing. His testimony simply will not be cumulative to Mr. Mallet's or Mr. Ritter's.

## II.   BUILDING CODE COMPLIANCE.

A detailed explanation of the relevance of testimony pertaining to the codes is set forth in separate Response filed by Wright to Shaw's Motion *In Limine* to Exclude References to Building Codes. For efficiency the entire argument will not be reproduced here but is applicable to respond to any assertion by Forest River that testimony on building codes is irrelevant to the FEMA trailer litigation. Mr. LaGrange is qualified to provide testimony regarding code applicability and compliance in this litigation. In addition to extensive experience gained from complying with building codes as a builder, LaGrange has attended many code conferences on behalf of more than one homebuilder

association. Ex. A, p. 47. He also personally researched the codes that he commented upon. Ex. A, p. 46. While he may have initially looked at the 2003 building codes, LaGrange confirmed that he went back and researched the differences between the 2000 and 2003 codes before writing his final report for this case. Ex. A, p. 42. It may be true that LaGrange did not research the law but he is not a lawyer and will not be offering interpretation of any building code from a legal perspective. Ex. A, p.49.

Mr. LaGrange did not summarily conclude anything about the New Orleans building code based on a simple reading, as Forest River's motion suggests. As he testified, Mr. LaGrange's conclusions about applicability of the New Orleans building code were made after his own research on references to temporary housing in the building code and in light of his vast experience and knowledge in working with the code. Ex. A, p. 48. LaGrange is clearly qualified to render opinions on building code applicability in this case.

Prior to his deposition in the Gulf Stream bellwether case, LaGrange had not been asked to comment upon what building codes would be applicable to the trailer at issue or to investigate indoor air quality. As such, he had no reason to consider any code at all but responded to questions that were put to him on applicability of standards promulgated by ASHRAE based on his knowledge and experience in the area of building codes. In criticizing this aspect of Mr. LaGrange's testimony, Forest River wholly disregards the fact that Mr. LaGrange has undertaken a wholly different task in this matter and now understands that the building code issue has significance. As he explains, if the trailer manufacturers had followed the International Residential Code and/or the International

Building Code, there would have been uniformity amongst the trailers and they would have been in compliance with codes across the United States. Ex. A, p. 61.

## III. **INDOOR AIR QUALITY.**

As has previously been explained, Forest River has no basis for asserting that LaGrange lacks expertise in the area of performance of blower door or duct blaster testing. He estimates he has performed between 4,000 and 5,000 blower door tests in the past, and approximately 1,200 duct blaster tests. Ex. B, p. 89-90. Blower door testing is the standard for measuring air leakage in structures. Ex. B, p. 90-91. In addition, Mr. LaGrange has testified that he is an indoor air quality specialist. Ex. B, p. 60-61. He may not have experience in the design or construction of travel trailers but in this instance, for what he was specifically asked to do with regard to the testing, the point is irrelevant.

While it may also be said that the best way to examine indoor air quality in a given particular space is to sample the air within the space, this is only completely true when the issue of interest is the quality of the air at the present time. In this case, in which air quality between 2004 and 2008 is really the issue, it is absurd to insist that air samples should be a requirement. Even if LaGrange had needed air samples to complete his specific testing, which Wright does not agree that he did, those samples would not and could not, be representative of the air that was present at the time Wright occupied the trailer.

There is no way that anyone could determine what "contaminants" might have been drawn into the trailer through air samples taken in 2009 with the trailer in a wholly different location from where Mr. Wright was living in it. That is not to say that it will

be impossible for LaGrange or any other expert to comment upon chemicals, particulates, or microbes that might have been present when Mr. Wright lived in the trailer, if said chemicals, particulates or microbes were not "contaminants" but can be shown to have come from a source such as the trailer itself. LaGrange can legitimately draw conclusions as to the indoor air quality to the extent that interpretation of his test results allows him to do so. Since it would not be speculation to provide opinions which can be supported or otherwise justified by test data, he should be allowed to provide such testimony at trial.

IV. **CONCLUSION.**

For all the reasons set forth above, Mr. Wright respectfully requests that this Court deny Forest River's Motion *In Limine* to Strike the Testimony of Paul LaGrange.

Respectfully submitted,

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

s/ Gerald E. Meunier
GERALD E. MEUNIER, # 9471
**PLAINTIFF'S' CO-LIAISON COUNSEL**
Gainsburg, Benjamin, David, Meunier & Warshauer, L.L.C
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
T: 504/522-2304
F. 504/528-9973
gmeunier@gainsben.com


s/ Justin I. Woods
JUSTIN I WOODS, #24713
**PLAINTIFF'S' CO-LIAISON COUNSEL**
Gainsburg, Benjamin, David, Meunier & Warshauer, L.L.C
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163

T: 504/522-2304
F. 504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON. #9938
MIKAL WATTS, Texas #20981820
DENNIS REICH, Texas #16739600


Attorneys for Plaintiff


**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on February 18, 2010.

s/ Gerald E. Meunier
GERALD E. MEUNIER, # 9471