**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | |
|---|---|
| **IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION** | **MDL NO. 1873**<br><br>**SECTION "N-5"**<br><br>**JUDGE ENGELHARDT**<br>**MAG. JUDGE CHASEZ** |

**THIS DOCUMENT IS RELATED TO:**
*Lyndon Wright v. Forest River, Inc., et al.*
*Case No. 09-2977 (E.D. La.)*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S OPPOSITION TO FOREST RIVER, INC.'S**
**MOTION TO EXCLUDE CERTAIN COMMENTS TO THE JURY**

**MAY IT PLEASE THE COURT:**

Plaintiff, Lyndon Wright, ("Plaintiff") respectfully submits this Opposition to Defendant Forest River, Inc.'s ("Defendant" or "Forest River") Motion to Exclude Certain Comments to the Jury. While there are several which the Plaintiff can and has agreed to, there are other comments identified by Defendant which are central to the facts of this case and which have significant probative value that substantially outweighs any harm or prejudice suffered by Defendant if they were to be presented to the Jury. Further, as this Court has stated previously, the nature of litigation is inherently prejudicial. Simply because a statement evokes a response from the jury,

1

does not make it unfair or unduly burdensome. As such, Plaintiff offers the following Opposition points.

## I. STANDARD OF ADMISSIBILITY FOR RELEVANT EVIDENCE

Defendant's Motion to Exclude is one to exclude evidence, specifically certain factual statements. Therefore, the Federal Rules of Evidence should govern the Court's analysis of the motion.

FED. R. EVID. 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

FED. R. EVID. 402 provides:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

Though the role of the court may be to serve as a gatekeeper of admissible evidence, it is not intended to replace the adversary system. *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 595. So long as the testimony rests upon "good grounds" it should be tested by the adversary process -- competing expert testimony and active cross-examination — rather than excluded from juror's scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. *See Ruiz-Trioche v. Pepsi Cola of Puerto Rico Bottling Co.,* 161 F.3d 77, 85 (1st Cir. 1998) (citing *Daubert,* at 596).

## II.   DISCUSSION AND REFUTATION OF DEFENDANT'S ARGUMENTS

### A.   References to Jurors as Taxpayers

Plaintiff agrees to this limitation.

### B.   References to Residents of FEMA emergency housing units as Victims

Plaintiff agrees to this limitation.

### C.   References to Shortages or Substitutions of Construction Materials

Plaintiff agrees to this limitation.

### D.   References that the Travel Trailer Industry was "Plagued" with Formaldehyde Problems in the 1970s

The argument made by Forest River to exclude comments that the Travel Trailer industry was "plagued" by formaldehyde gas problems since the 1970s is misleading and not accurate to support the position that Defendant takes in its argument. The comments attacked by Forest River made by Dr. Stephen Smulski, the Plaintiff's designated wood science expert, were made in the context of problems with **HUD-Code manufactured houses** and mobile homes faced in the 1970s and early 1980s. Further, it is directly relevant to the issue at hand, as it shows that the issue of formaldehyde gas is nothing new, and has been known by manufacturers of mobile homes and HUD-Code manufactured housing for 30+ years.

This issue is also relevant, because Forest River does in fact produce mobile homes and manufactured housing. At the 30(b)(6) deposition of Forest River's corporate representative, Doug Gaeddert, the following exchange took place:[1]

> Q.   All right. And it's my understanding that Forest River does produce products that are designed to be lived in, such as mobile homes.

---

[1] Relevant pages of the Gaeddert deposition are attached hereto as Exhibit "A".

> A. We have a manufactured housing company that we own.
>
> Q. And there are divisions of Forest River that would come under the HUD guidelines.
>
> A. Park models, if they were over 400 square feet, would be my understanding; and manufactured housing or modular housing…

Because Forest River clearly owns and operates a manufactured housing division, there is institutional knowledge which must be applicable to the question of what Forest River as an entity knew.

A close examination of the argument made by Forest River in its Motion to Exclude reveals that Plaintiff has made absolutely no mention of formaldehyde "plaguing" the travel trailer industry since the 1970s and early 1980s. As such, Defendant's argument is irrelevant and misleading. Coupled with the fact that Forest River does, in fact, manufacture mobile homes and HUD-code manufactured housing, there is absolutely no reason that this topic of discussion be limited.

### E. Exclude Plaintiff making Reference to Dr. Wedner Practicing Medicine Without a Medical License

Briefly, Plaintiff argues that Dr. Wedner admitted at deposition that he did not obtain a temporary medical license to practice medicine in the State of Louisiana. This is an issue which has been decided by the Court in a previous Motion to Strike filed by Plaintiffs in the MDL. However, Plaintiff asserts that he needs to be allowed to ask whether this temporary license was obtained in order to preserve the record at trial.

### F. Exclude Plaintiff from Referencing other Forest River Trailers were Constructed using Non-LFE Materials

It is undisputed that Plaintiff has entered into a stipulation with the Defendant that the unit in question was manufactured using Low Formaldehyde Emitting (LFE) composite wood products. Further, Plaintiff agrees that the issue at this trial is the Forest River unit occupied by Lyndon Wright. However, it was clearly stated at numerous depositions of Forest River employees and officers that Forest River had no LFE policy in place at the time the Plaintiff's unit was manufactured. Doug Gaeddert at his 30(b)(6) deposition stated on p. 96: "In fact, I mean, looking back – because we didn't use LFE wood in Indiana at this time." He went on to state on p. 215 of his deposition that there was no Forest River LFE policy in place in 2005.

It is also interesting to look at the statements made by Jeff Burian, the Production Manager of the Forest River facility in California that manufactured the Plaintiff's unit. He stated:[2]

> Q. If you would, Jeff, please identify and describe any policies or discussions or other communications regarding the use of low formaldehyde emitting, LFE, wood products and regular wood products used in the manufacture and construction of Forest River units during the relevant time period.
>
> A. There are no policies or regulations or anything of that nature regarding the use of LFE products.
>
> \*\*\*
>
> Q. And if there was no standard requirement or no policy or regulation, requirement, why did the plant use LFE wood?
>
> A. We had a conversation regarding that a short period of time ago, and nobody really knows exactly why we always use LFE. We just all know that, for the ten years that I have been there, we used LFE. Purchasing manager knows that's what he – when he came there, that's what they were buying and he continued to buy that product. So it was just something that was always spec'd into our materials that came in for no specific reason other than the fact that that's what we were continuing to buy. May be something that was carried over from the Cobra days prior to the purchase of – Forest River purchasing Cobra.

---

[2] See, Exhibit "B"

It is clear that there was absolutely no policy in place at Forest River in 2005 regarding the use of LFE wood products. There was merely an unexplained practice in one California facility that only ordered LFE wood products, and where the Production Manager at that facility has no idea why. Plaintiff contends that this is relevant to his position as a bellwether Plaintiff and that it should be allowed to come in. However, Plaintiff strongly contends that, if this area of discussion be initially limited, that should Forest River make any reference to a policy or practice relating to the use of LFE wood products in its travel trailers manufactured in 2005, that would constitute the opening of this door, and the Plaintiff would then be allowed to discuss this issue as necessary.

      **G.**    **Exclusion of Discussion of Building Codes**

Plaintiff vigorously contests this effort by Forest River to exclude discussion of certain building codes. Plaintiff has offered briefing in depth on this issue in a number of other responses, specifically the Motion *in Limine* filed by Shaw Environmental, Inc. relating to discussion of Codes, and has further briefed this issue in responses to challenges against several of Plaintiff's expert. As such, Plaintiff hereby adopts and incorporates all arguments made therein. In a briefly articulated position here, Plaintiff argues that the issue of code application is central to the entire litigation. At the time these units were manufactured by Forest River, it was known that they would be used as temporary residences to provide housing for individuals affected and displaced by natural disasters (specifically Hurricane Katrina). As such, Plainitff avers the issue of various codal considerations and applications for the manufacture of units intended for residential occupancy, for a period up to and possibly exceeding eighteen months

6

under the Stafford Act, is central to this litigation and the jury must be allowed to come to its own decision on this issue. Again, Defendant's arguments are misleading and inaccurate.

It is undisputed that Forest River did not take the Orleans Parish Code, the International Building Code or the International Residential Code into consideration when it manufactured the units responsive to the FEMA Specs. It is further relevant because Forest River admittedly DID manufacture HUD-code manufactured housing as discussed previously. Finally, it is absolutely relevant because these units were never intended to be used as "recreational vehicles" but, rather, as "temporary" or "emergency" housing capable of repeated installations per the applicable FEMA specifications. As such, Forest River knew at the time of manufacture that these units, including the Plaintiff's would be used solely for temporary residential occupancy, rather than as recreational vehicles. Yet Forest River never even took residential or building codes into consideration, let alone application.

Doug Gaeddert stated at pp 98-99 of his deposition:

Q. Did anyone at NACS or FEMA ever discuss with anyone over at Forest River if any local building codes would apply to using the travel trailers as temporary housing units for disaster victims?

A. No.

Q. Those discussions never occurred.

A. No.

Q. And likewise, have you ever seen the contract that any of the haul and install contractors signed with FEMA relating to any local building codes?

A. No.

Q. You're just unaware of it?

A. We've never had any discussions with Shaw.

7

Further, Jamie Albrecht, a Forest River Production Manager who developed Forest River's unit responsive to the FEMA specifications, stated at p. 37 of his deposition:[3]

> Q.    Are the products that you manufacture in your two facilities intended – designed to be lived in for extended periods of time?
>
> MR. DINNELL:    Objection, form.
>
> A.    The products that I manufacture, again, are a base-level product intended to be used by families for recreation on a weekend or maybe a week here or there. I'm not – I don't build products that are intended to be permanent residences, no.
>
> Q.    And the products you manufacture in your facilities do not fall under or comply with residential codes or HUD codes; correct?
>
> A.    No, they do not.

Albrecht went on to say at p. 52:

> Q.    And neither Mr. Christner nor RVIA look at residential codes?
>
> A.    No.
>
> Q.    Do you know why?
>
> A.    Well, a travel trailer is a different animal. A recreational vehicle is a different animal.

The further arguments given made by Defendant regarding the knowledge of whether the Orleans Parish Building Code applied are erroneous at best. The statements by Defendant's own experts that Orleans Parish Building Codes were waived by Orleans Parish are premised upon a communication that says nothing of the sort, and is further disproven by a subsequent communication between the Parish and Plaintiff expert Alexis Mallet, Jr. Defendant experts rely

---

[3] Relevant pages of Albrecht's Deposition attached hereto as Exhibit "C".

upon an email communication between Don Snell of Liberty Building Forensics, and John Odom, Chief Building Inspector, City of New Orleans,[4] which states:

> Dear Mr. Odom,
>
> Thank you for taking a few minutes this afternoon to speak to me on the telephone. This is to confirm my understanding of your responses to my question that:
>
> - Any site referencing zoning of the FEMA trailers did not fall under the enforcement of the City of New Orleans Building Department including the City of New Orleans Building Code and International Building Codes.
>
> Your Reply is appreciated.
>
> Thank you.
>
> Don Snell

To which Mr. Odom responded: "That is correct. The FEMA Trailers were installed by FEMA Contractors and we made no inspections."

The response by Mr. Odom does not correspond with the position taken by Defendant's experts. It merely states that city of New Orleans did no inspections. Because of this discrepancy, Plaintiff expert Alexis Mallet, Jr. also contacted Mr. Odom in a subsequent email, and asked the following:[5]

> Did the City of New Orleans waive code requirements regarding FEMA Trailers (08/29/2005 and after) or just waived the protocol allowing FEMA contractors to perform inspections?

To which Mr. Odom replied: "We did not waive code requirements. We did allow FEMA to have there [sic] own inspectors." Also, as has been discussed at length in numerous

---

[4] Attached hereto as Exhibit "D".
[5] The Mallet email is attached hereto as Exhibit "E"

9

Plaintiff responses in front of this honorable Court, Shaw was required to comply with several codes relating to water, plumbing and electrical codes for the temporary housing units.

Most importantly, Forest River had an intimate awareness of residential building considerations, and Plaintiff must be allowed to discuss the fact that, despite this knowledge and the awareness these units would be used as temporary housing, Forest River failed to take any residential code into consideration in their construction of the temporary housing units.  As such, Plaintiff argues that this effort to exclude reference to building codes must fail.

        **H.**       **Exclusion of Reference to Formaldehyde's link to Leukemia**

Any effort to exclude reference to the link between Formaldehyde and Leukemia must fail because, according to the International Agency for the Research of Cancer October 2009 findings, there is a causal link between formaldehyde and blood born cancers, including leukemia.[6]  Further, any argument that it is inflammatory to link formaldehyde with cancer is irrelevant, because it is clearly accepted that IARC has already designated Formaldehyde as a Class I known human carcinogen as of 2004.  Further, the issue of fear of cancer is central to the Plaintiff's case, and the ability to discuss the current state of knowledge is absolutely relevant to Wright's fear claims.  Further, Plaintiff adopts and reiterates all arguments made in the Motion his Opposition to the Motion to Strike the Supplemental Report of Dr. Williams, and the Motion for Reconsideration filed contemporaneously herewith.

        **I.**       **Exclusion to the Lawrence Berkeley Nation Laboratories 2008 Report**

Defendant's argument that none of the four travel trailers analyzed in the LBNL 2008 report V*olatile Organic Chemical Emissions in Four FEMA Temporary Housing Units* were

---

[6] See Patricia Williams Supplemental Affidavit attached as Exhibit "F".  A Motion for Reconsideration is filed concurrently with this Opposition.

10

Forest River units is both irrelevant and exaggerated. The report makes statements which are applicable to all travel trailers containing urea-formaldehyde bearing component wood products. The similarities between these are significant as the body of litigation alleging similar problems across thousands of complaints affecting tens of thousands of Plaintiffs who resided in dozens of manufacturers, including Forest River, clearly demonstrate the applicability of the generalized statements made in the report. Further, this is hardly an unfair prejudice on Forest River, when all that the Defendant would need to do is ask any expert referencing the report whether a Forest River unit was among the four tested by the laboratory. As such, Plaintiff should be allowed to discuss this report at trial, and Defendant's motion to exclude should be denied.

### III. CONCLUSION

WHEREFORE, while the Plaintiff agrees to certain limitations raised in the Motion to Exclude, he asks that the Court deny the Motion to exclude for the arguments and reasons asserted herein and allow discussion of the various point at trial.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY: s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:       504/522-2304
Facsimile:         504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
ROBERT BECNEL, #14072
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL WATTS, Texas # 20981820

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record as indicated below in accordance with the Federal Rules of Civil Procedure on February 18, 2010.

/s/Justin I. Woods
JUSTIN I. WOODS