UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER  　　　　　　　　　　MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION  　　　　SECTION "N-5"

　　　　　　　　　　　　　　　　　　　　　　JUDGE ENGELHARDT
　　　　　　　　　　　　　　　　　　　　　　MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*Lyndon Wright v. Forest River, Inc., et al.*
*Case No. 09-2977 (E.D. La.)*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S OPPOSITION TO FOREST RIVER, INC.'S
MOTION IN LIMINE TO LIMIT THE TESTIMONY OF
DR. STEPHEN SMULSKI, PH.D.**

**MAY IT PLEASE THE COURT:**

　　Plaintiff, Lyndon Wright, ("Plaintiff") respectfully offers this Opposition to Defendant Forest River, Inc.'s ("Defendant") Motion *in Limine* to limit the testimony of Dr. Stephen Smulski, ("Smulski"). Plaintiff objects to Defendant's broad mischaracterization of Smulski's factual and historical testimony as vague and unsupported opinion. As evidenced by Smulski's curriculum vitae, he is well-qualified to offer background facts and history on a number of issues related to wood science and travel trailers. The Plaintiff avers that is it improper to limit the testimony of Dr. Smulski and offers the following argument in support of their opposition.

**I.　　STANDARD OF ADMISSIBILITY FOR EXPERT TESTIMONY**

　　Defendant's Motion to Exclude is one to exclude evidence, specifically expert testimony. Therefore, the Federal Rules of Evidence should govern the Court's analysis of the motion.

1

FED. R. EVID. 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

FED. R. EVID. 402 provides:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

FED. R. EVID. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Expert testimony need only be based on a reliable and scientifically valid methodology that fits the facts of a case. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-93 (1993). The inquiry into the expert's testimony is "a flexible one" where the individual factors are neither exclusive nor dispositive. *See Id.* at 594-95. As such, this Court essentially considers whether the expert retains a broad range of knowledge, skills and training. *Id.*

In analyzing the reliability of proposed expert testimony, the role of the Court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 153 (1999). While extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony whose knowledge is based on experience. *See Smith v. Ford Motor Co.,* 215 F.3d 713 (7th Cir. 2000)(citing *Bryant v. City of Chicago,* 200 F.3d 1092, 1098 (7th Cir.2000), *Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 590 (7th Cir. 2000); *Kumho,* 526 U.S. at 156 ("No one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")

Though the role of the court may be to serve as a gatekeeper of admissible evidence, is not intended to replace the adversary system. *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 595. It is certainly not the trial Court's role to determine whether the expert's conclusions are actually correct. *Id.* at 595. So long as the testimony rests upon "good grounds" it should be tested by the adversary process -- competing expert testimony and active cross-examination — rather than excluded from juror's scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. *See Ruiz-Trioche v. Pepsi Cola of Puerto Rico Bottling Co.,* 161 F.3d 77, 85 (1st Cir. 1998) (citing *Daubert,* at 596).

## II. SMULSKI'S TESTIMONY IS ADMISSIBLE UNDER FRE 702

Defendant's motion is based on the premise that Smulski's opinions should be stricken for all reasons previously examined by the Court in both the Gulf Stream and Fleetwood bellwether cases. (Rec. Doc. 11403-1, ¶ 3.). Since the Defendant has not raised any issue with Smulski's qualification as an expert ,Defendant should agree that Smulski is qualified to testify by his knowledge, skill, experience, training and education to offer testimony in this case. Further, the Court in a previous order, ruled that recitations of the factual predicates on which he forms his opinions are not "opinions" and should not be construed as such. (See Exhibit "A", Rec. Doc. 2800, p. 1). The Court stated that "Of course, Dr. Smulski can and will be expected to recite the factual and/or theoretical bases for his opinions." (See Exhibit "A", Rec. Doc. 2800, p. 2).

The Defendant also claims that Smulski is a "self-professed expert" in wood science technology in an effort to underscore their argument that Smulski's testimony should be limited. The Plaintiff strongly objects to this dismissive and unfounded mischaracterization and refers to Smulski's curriculum vitae, which clearly states that he is a recognized expert in the field of wood science and technology, and has a Bachelor's of Science, a Master's of Science and a Ph.D. in wood science technology from university programs accredited by the Society of Wood Science and Technology.  Smulski has been a full-time practicing professional in Wood Science and Technology since 1985, and has taught programs in wood science and technology at the University of Massachusetts at Amherst for seventeen years. In addition to publishing over 45 articles on wood and the in-service performance of wood products, Smulski has given over 100

4

invited presentations on wood and wood products. Smulski is qualified as an expert in Wood and Science Technology, and has testified in Massachusetts, Maryland, Ohio, Connecticut, Minnesota, New Jersey, New York, Kentucky, North Carolina and Louisiana. To claim that he is a "self-professed" expert is not only inaccurate but also misleading.

### A. Dr. Smulski's Expert Report

#### 1. Paragraph 18

Defendant seeks to limit Smulski's "discussion related to the anticipated uses of travel trailers" (Rec. Doc. 11403-1, p. 4) by piggybacking on a prior Order (See Exhibit "A", Rec. Doc. 2008, p. 3) that deemed opinions inappropriate if they contained "[v]ague, potentially pejorative terms." The Plaintiff strongly disagrees that Smulski's statements are not an opinion. One does not need qualification as an expert in order to reasonably conclude that if someone lives in a trailer for months to years the trailer is no longer a "short term and recreational use" but has converted to temporary housing. When a trailer is used for recreational purposes, it is not put on a foundation, hard-wired and hard-plumbed. However, the "Temporary Housing Units" provided by FEMA were uniformly installed in such a manner.

#### 2. Paragraph 21

In its prior Order, the Court stated that, "Dr. Smulski may testify. . . that during the process of installation of an EHU, 'the frame and exterior shell can bend and twist,' as a hypothetical observation." (See Exhibit "A", Rec. Doc. 2800, p. 2.) Although this Honorable Court has already addressed this issue, Defendant insists on reexamining this issue.

Plaintiff strongly objects to this limitation. Smulski is not rendering an opinion regarding the EHU, and should be allowed to offer a basic principle of engineering as part of his testimony. This Court has ordered Dr. Smulski may testify regarding hypothetical observations about the

installation process of an EHU. Any further limitation of Smulski's testimony would be overly zealous and unnecessary.

It is also important to note on this issue that Forest River Production Manager, Jeff Burian said as much at his deposition, where the following exchange took place:[1]

> A. "NOTE: If after leveling, the entrance door to the trailer 'sticks', you have most likely lifted one side of the trailer excessively, causing a binding condition on the frame. If this condition exists, lower the trailer and relevel to obtain proper balance."
>
> Q. Okay. Do you know why that note is weitten in the manual?
>
> A. I do not.
>
> Q. Do you know if it is, in fact, true, that if, after leveling the entrance door till the trailer sticks, you have most likely lifted one side of the trailer excessively, causing a binding condition in the frame?
>
> A. That would be my understanding, yes.
>
> Q. All right. So is it also your understanding that if jacked improperly, it can cause the frame to twist and case a binding condition causing doors to stick?
>
> A. Yes.
>
> Q. Do you know if it is also true that id jacked improperly, in addition to causing the door to stick, that it can, if jacked excessively enough, can stop the door from closing altogether?
>
> A. Yes, if you put the tailer in enough of a bind, I imagine it would.

**3. Paragraphs 23, 24, 25 and 28**

Plaintiff objects to any limitation of Smulski's testimony regarding testing reports on levels of formaldehyde. Dr. Smulski should be allowed to reference the results as they statements of fact. Specifically, Smulski's statement in paragraph 28 explains that the use of LFE products does not guarantee anything with regard to the actual concentration of formaldehyde that will be

[1] See relevant pages of Burian testimony attached hereto as Exhibit "D"

in the air inside a trailer. It is important that Smulski can explain such test results, as it may be confusing to the trier of fact.

### 4. Paragraphs 33 and 35

Plaintiff strongly objects to the limitation of Smulski's testimony regarding a mechanical ventilation system. Dr. Smulski has written about the importance of ventilation and the use of mechanical ventilation systems for controlling the relative humidity inside buildings in at least three articles.[2] In addition, Smulski has given numerous invited presentations about moisture problems in wood framed buildings and avoidance of such problems by use of mechanical ventilation systems. The principles of ventilation apply to all structures whether it is a single-family house, an office building or a trailer. While Smulski does not promote himself as an expert in the fields of HVAC or travel trailer design, he is an expert in wood and as such should be allowed to offer opinions regarding wood structures.

### B. Additional Opinions

### 1. Paragraph 15

Plaintiff objects to limiting Smulski's testimony regarding non-LFE wood. Smulski's expert opinion on the matter of off-gassing panels is important to explain to the trier of fact. Smulski has explained that distinctions between LFE and non-LFE wood could be made if there are differences in the formulations of LFE and regular UF adhesives. (See Exhibit "B", Smulski Dep. 27:14). Smulski should be allowed to recite such distinctions in the context of trial.

### 2. Paragraph 16 and 21

---

[2] *See* Controlling indoor moisture in energy-efficient houses, Architectural Record, 2000; Durability of energy-efficient wood-frame houses, Forest Products Journal,1999; Controlling indoor moisture in energy-efficient houses, Wood Design Focus, 1997.

7

Plaintiff strongly objects to any limitation regarding the discussion of mold inside the trailer. Smulski is qualified to testify regarding wood and wood structures; therefore, the introduction of water in a wood structure would be included in his area of expertise. Additionally, Plaintiff objects to Defendant limiting Smulski's testimony based upon lack of corroboration by Plaintiff's medical diagnosis. This limitation is overly broad and should not be granted.

Furthermore, Defendant seeks to exclude testimony of Smulski based upon Plaintiff's formaldehyde testing expert William Scott's statement "that he could not relate any of the mold present in the plaintiff's trailer, at the time of the inspection, to the time in which the Plaintiff lived there."( Rec. Doc. 11403-1, Scott Dep. 76. ) However, Scott simply denied that his opinion contained in his report stated the mold or fungus level in August 2009. *Id.* Such a statement does not parlay into a denial that mold or fungus existed. More importantly, testimony of a fellow expert should not limit the range of Smulski's testimony. Defendant has failed to provide any reason to limit testimony on mold, and any such limitation should not be granted.

### 3. Paragraph 17

Plaintiff objects to any limitation placed upon discussion of Forest River's formaldehyde warning, particularly in light of the limits the Court in Fleetwood case placed on the warnings experts which state:

> [t]he fact that Dr. Laughery's first opinion has been found to be admissible does not change the Court's conclusion in this regard. With regard to this product, warnings should be made and created such that lay people may understand them. It is within the province of the jury, as lay persons who would otherwise be purchasers/users of this trailer, to determine whether and to what extent the instant warning was adequate. (See Exhibit "C", Rec. Doc. 7533, p.2).

By the Court's rationale in Fleetwood, warnings are a subject that lay persons can discuss and decide for themselves if a warning is adequate. As such, Smulski's discussion of the

formaldehyde warning is done as a lay person, not an expert and should be allowed. Defendant manufactured and distributed a product with a formaldehyde warning, and discussion of that warning should be allowed. Therefore, it is ludicrous to assert Forest River does not have knowledge of formaldehyde in its trailers as a formaldehyde warning is provided in each unit. Forest River had knowledge of formaldehyde emission from the products it used and Smulski should be allowed to testify in that area.

**4. Paragraph 29**

Plaintiff objects to any limitation regarding the CARB standard. The trier of fact should be informed as to the current standards in order to properly consider all issues of fact in the instant matter. The current standards should be referenced as an instructional tool, to provide the trier of fact with the current acceptable level of formaldehyde, particularly since the unit was manufactured in California.

**5. Paragraph 31, 33 and 35**

Finally, Plaintiff strongly objects to any limitation regarding Smulski's opinion on alternative designs. Smulski does not promote himself as an expert in alternative design theory but maintains that he is an expert regarding any wood structure issue. Smulski has not promoted himself as an expert in trailer design, but any expert testimony regarding wood structures should not be prohibited. Smulski's training includes design, construction, inspection and dismantling of wood-framed structures mounted on a metal foundation. The principles of design and building houses are directly transferrable to trailers. Therefore, Smulski should be allowed to provide expert testimony on any wood-framed structure without limitation.

## CONCLUSION

WHEREFORE, the Plaintiff Lyndon Wright respectfully requests that this Honorable Court dismiss the Defendant's Motion in Limine to limit the testimony of Dr. Stephen Smulski as an expert witness for the reasons set forth in this Memorandum and the prior rulings of the Court.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
ROBERT BECNEL, #14072
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL WATTS, Texas # 20981820

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record as indicated below in accordance with the Federal Rules of Civil Procedure on February 18, 2010.

                                 /s/Justin I. Woods  
                                 JUSTIN I. WOODS