UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER  
FORMALDEHYDE PRODUCTS  
LIABILITY LITIGATION

MDL NO. 07-1873

SECTION "N" (5)

THIS DOCUMENT RELATES TO  
Member Case No. 09-2892

## ORDER AND REASONS

Before the Court is the Gulf Stream Coach, Inc.'s Motion to Limit the Testimony of Stephen Smulski (Rec. Doc. 2349). In this motion, Defendant Gulf Stream Coach, Inc. ("Gulf Stream") seeks to limit the testimony of Stephen Smulski, Ph.D ("Dr. Smulski"), Plaintiff's wood science/wood technology expert. After considering the memoranda of the parties, the expert opinion/affidavit submitted by Dr. Smulski, and the applicable law, the Court rules as set forth herein.

First, upon reviewing the expert opinion/affidavit offered by Dr. Smulski (Exhibit A to Rec. Doc. 2349), it seems that Gulf Stream's Memorandum is somewhat generous in its characterization of each numbered statement in Dr. Smulski's expert affidavit/report being an "opinion." Indeed, most of the statements are factual predicates upon which his ultimate opinion is based. Such statements are not "opinions", and this Court will not allow for any party to suggest to the jury that such statements are his opinions discerned after his own analysis. Of

course, Dr. Smulski can and will be expected to recite the factual and/or theoretical bases for his opinions.

Nonetheless, the Court will address and rule on the admissibility of each of the 27 numbered statements in Dr. Smulski's expert report (See Exhibit A to Rec. Doc. 2349). Statements 1 through 13, 15, 20, 21, and 25 are admissible. Notably, while Gulf Stream objects to Statement 10 because it pertains to the May 2009 "test" (the results of which were deemed inadmissible by the Court in its May 18, 2009 Order and Reasons (See Rec. Doc. 1547)), it is clear that Dr. Smulski conducted a visual inspection, perhaps yielding some space measurements, which the Court has previously ruled would likely be admissible. (See Rec. Doc. 2062, n. 1). In sum, Statement 10 does not involve testing anything in the emergency housing unit ("EHU"), or the results of any such "tests."

As for Statement 14, Dr. Smulski is stating his understanding of how the EHU could be installed. Of course, there must be established a foundation for this statement, and for any assertion of knowledge of the facts surrounding the bellwether plaintiffs' EHU. At trial, Plaintiffs will be expected to make clear to the jury that Dr. Smulski is *not* an expert on the installation of EHUs, and was not present when the bellwether plaintiffs' EHU was installed. However, Dr. Smulski may testify, generally, that during the process of installation of an EHU, "the frame and exterior shell can bend and twist ...", as a hypothetical observation, or one based on his past experiences, but it must be made clear that Dr. Smulski was not present when this bellwether plaintiffs' EHU was installed.

The first sentence of Statement 16 is admissible, as Dr. Smulski is reciting his familiarity with the testing done in January of 2008. However, no party will be allowed to suggest to the

2

jury that Dr. Smulski conducted the testing himself, or that it was done at his direction. Indeed, Dr. Smulski is merely referring to testing done by someone other than himself. The remainder of Statement 16 is inadmissible.

The content of Statement 17 is inadmissible. Dr. Smulski uses some subjective quantitative terms which the jury must consider, such as "*short-term* recreational use", and that the occupants "would be subjected to *acute exposure* to formaldehyde gas." He also asserts that the EHU "was converted from short-term recreational use to *long-term* housing." Dr. Smulski describes "*chronic exposure* to formaldehyde gas." These are opinion statements for which there is no basis (or, rather, a basis outside of this expert's field), containing undefined terms of possible pejorative nature. Dr. Smulski also states that the use of this EHU "was a reasonably anticipated use given that this trailer was sold to FEMA for the purpose of housing persons displaced by natural disasters like Hurricane Katrina." While perhaps true, there is no need for this to be offered as an "expert opinion" from a wood science/wood technology expert, and it is admissible only to the extent that this is a factual assumption he makes to support his opinions.

Statements 18, 19, and 22, wherein Dr. Smulski recites the results of various testing reports on levels of formaldehyde, are admissible. While Dr. Smulski may refer to these reports, it must be clear that this testing was not done by him and is not his opinion, but rather is available information that he considered in forming his ultimate opinions.

Statement 23 is admissible to the extent that the witness may offer an opinion as to the modification of materials used in the construction of the EHU, but it should be made clear that Dr. Smulski is not an expert in design of EHUs in particular, and thus, cannot offer a general opinion regarding the "design practices" of EHUs beyond the use of wood, wood-based and

3

wood-composite materials in such design.

Statement 24 is admissible and is actually the permissible opinion that logically results from the last sentence of Statement 23.

Statement 26 is admissible up to the last clause ("... used in this trailer."). The Court is particularly concerned with the last clause, beginning with "and that Ms. Alexander and her son ... ." Dr. Smulski may not testify as to "adverse health effects from chronic exposure to formaldehyde gas" as he is unqualified as a wood science expert to do so. Also, his use of the word "potentially" makes his opinion statement even more vague, and thus of little use to the jury on that issue.

Statement 27 is not a permissible expert opinion. This statement goes to the ultimate decision that the jury will have to make, i.e., whether the product was unreasonably dangerous. Furthermore, the opinion is expressed in an unclear, awkward fashion: "it was unreasonable for anyone[1] to think that the health of persons living in this Gulf Stream Coach, Inc. Cavalier model trailer for a long period of time would not be adversely affected ... ." Although Dr. Smulski may testify that he is aware that exposure to formaldehyde at some level may be harmful, he is not qualified to testify about how living in the EHU for a "long period of time", whatever that time he believes that period may be, would "adversely affect" the health of persons living in the EHU. Dr. Smulski is a wood science/wood technology expert; that expertise does not extend to offering opinions within the realm of a medical doctor or other health professional who can gauge an

---

[1] In stating that it would be *unreasonable* for *anyone* to think" that the inhabitants' health was not placed at risk, Dr. Smulski couches his opinion to the jury with exclusivity, implicitly criticizing those with a contrary opinion, including someone with expertise in the field of healthcare and/or toxicology ... as well as any juror who might be persuaded otherwise.

4

"adverse effect" of inhaling formaldehyde on a person's health.

Considering the foregoing, **IT IS ORDERED Gulf Stream Coach, Inc.'s Motion to Limit the Testimony of Stephen Smulski (Rec. Doc. 2349) is GRANTED IN PART and DENIED IN PART** as expressed herein.

New Orleans, Louisiana, this 24th day of August, 2009.

KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE