UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE PRODUCTS | * | |
| | LIABILITY LITIGATION | * | SECTION "N" (5) |
| | | * | |
| | | * | JUDGE ENGELHARDT |
| | | * | MAGISTRATE CHASEZ |
| | | * | |
| THIS DOCUMENT RELATES TO: | | * | |
| *Lyndon T. Wright v. Forest River, Inc. et al,* | | * | |
| Docket No. 09-2977 | | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO DEFENDANT FOREST RIVER, INC.'S MOTION TO EXCLUDE THE TESTIMONY OF LAWRENCE G. MILLER, M.D., M.P.H**

Plaintiff Lyndon Wright ("Mr. Wright" or "Plaintiff") respectfully submits the following Response to Defendant Forest River, Inc.'s Motion to Exclude the Testimony of Lawrence G. Miller, M.D., M.P.H. and hereto states:

**FACTUAL BACKGROUND**

Plaintiff has asserted claims against Forest River under the Louisiana Products Liability Act ("LPLA"). Plaintiff specifically claims that the Forest River unit he occupied, due to its construction, composition, design, and lack of warnings, exposed him to dangerous levels of formaldehyde. As a result, Mr. Wright has suffered exacerbation of his rhinosinusitis. Dr. Miller, who will testify as to specific causation, is trained in internal medicine, pulmonology, pharmacology, and public health. His expertise includes pulmonary diseases, dermatological illnesses and epidemiology. Dr. Miller interviewed Mr. Wright, reviewed Mr. Wright's medical records, and thoroughly evaluated the scientific and regulatory literature on formaldehyde, including its link to rhinosinusitis. As will be discussed *infra*, Dr. Miller is more than qualified to render

1

the opinions he has offered, the science supporting his opinions are sound and reliable, and Dr. Miller's testimony will assist the jury in evaluating and weighing the evidence. Further, Dr. Miller's testimony should not be limited to discussion of rhinosinusitis as Dr. Miller retains the expertise to discuss the other ailments he evaluated including the rashes, bloody sputum, and nocturnal dyspnea.

I.  STANDARD OF ADMISSIBILITY.

The admission of expert testimony in federal court is government by Federal Rule of Evidence 702, which provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

Under a Rule 702 inquiry, the first step is to determine whether the expert is qualified to testify. *Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 741 (3d Cir. 1994). The United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), emphasized that a Rule 702 inquiry is "a flexible one" where the individual factors are neither exclusive nor dispositive. *Id*. at 594-95.  As such, this Court essentially considers whether the expert retains a range of knowledge, skills and training. *Id*.

The second step of the Rule 702 inquiry requires the expert testimony to be reliably based upon scientific methods. *Paoli*, 35 F.3d at 742. "*Daubert* explains that the language of Rule 702 requiring the expert to testify to scientific knowledge means that the expert's opinion must be based on the 'methods and procedures of science' rather

than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Id.* (citing *Daubert*, 509 U.S. at 590).

Dr. Miller is not only qualified to provide his opinions, but his opinions are indeed reliable and provide information that will undoubtedly assist the trier of fact in developing a reasoned decision.

**II.    DR. MILLER IS QUALIFIED TO TESTIFY.**

The first step in a Rule 702 inquiry is to determine whether the expert is qualified.  Plaintiff has designated Dr. Miller as an expert in pulmonary diseases, epidemiology, and dermatologic illnesses.  As discussed below, Dr. Miller is clearly qualified by knowledge, skill, experience, training and education to offer such testimony.  Further, this Court in the *Dubuclet* matter evaluated Dr. Miller's qualifications, and determined that he was sufficiently qualified to render opinions relating to the health effects derived from formaldehyde exposure.  Rec. Doc. 8295. Thus, Defendants attempt to yet again argue that Dr. Miller lacks requisite qualifications is repetitive and unnecessary.

Rule 702 requires an expert witness to possess specialized expertise in matters requiring scientific, technical or specialized knowledge and be able to assist the trier of fact.  *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3rd. Cir. 2008). The rule, however, does not mandate that an expert be highly qualified to testify about a specific issue. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Instead, "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*

Dr. Miller is sufficiently qualified to offer a causation opinion as to the exacerbation of Mr. Wright's rhinitis.  He is a Harvard-trained physician, board certified in internal medicine, pulmonary disease, and clinical pharmacology. *See* Exhibit A,

3

Curriculum Vitae of Lawrence G. Miller, M.D., M.P.H., p. 1, 4. He additionally holds a Masters in Public Health from the Boston University School of Public Health. *See* Exhibit A, p. 2. He has served as the director of the Environmental and Occupational Health Service of the LSU Medical Center, and has taught medical students since 1965. *See* Exhibit A, p. 2.

Dr. Miller is trained as an internist, a pulmonologist, and a clinical pharmacologist, and works in all of these areas. *See* Exhibit B, Deposition of Lawrence G. Miller, M.D., M.P.H., September 22, 2009, p. 63.[1] His training in internal medicine included the study of dermatological illnesses. *See* Miller depo, p. 63. Defendants misconstrue Dr. Miller's current line of work as on the "business side." Dr. Miller, however, testified that in his current line of consulting work he determines the "effects of drugs of toxins." Exhibit C, Deposition Testimony of Lawrence G. Miller, M.D., M.P.H., November 10, 2009 p. 116. His credentials, along with his knowledgeable discussion of the medical issues involved in the case, obviate his qualifications to present expert testimony. *See Pineda*, 520 F.3d at 244

### III.   DR. MILLER'S OPINIONS ARE RELIABLE.

In addition to lacking qualifications, Defendant argues that Dr. Miller's opinions regarding rhinosinusitis are unreliable because Dr. Miller did not examine all available materials. Respectfully, the reliability of an expert's opinion is based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; essentially, the expert must have 'good grounds' for his or her belief." *Id*. (citing

---

[1] It should be noted at Dr. Miller original deposition was cut short by mutual agreement to reopen the deposition at a later date. As such, counsel for Plaintiff did not offer any rehabilitative or direct lines of questions to the effect of Dr. Miller's credentials to give both specific and general causational opinion. However, despite the mutual agreement to re-open the deposition, defendants chose not to proceed. Miller deposition transcript, Exhibit C, p. 119-120. As a result, Plaintiff cites to Dr. Miller's previous testimony in support of his qualifications.

4

*Daubert*, 509 U.S. at 590). As such, simply because Dr. Miller did not conduct an in depth evaluation of all materials does not render his opinion unreliable.

Under *Daubert* and its progeny, Dr. Miller's methodology is reliable and bears numerous hallmarks of such reliability. *See Ancar v. Murphy Oil, U.S.A., Inc.*, 2007 WL 3270763, *2 (E.D. La. Nov. 2, 2007); *In re Katrina Canal Breaches Consol. Litigation*, 2007 WL 3245438, *12 (E.D. La. Nov. 2, 2007). His opinions relating to the specific causation of rhinosinusitis are consistent with the research on which he relies. *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). In his report, Dr. Miller's details the epidemiological support for his opinion, which is consistent with the opinions of many venerated organizations such as the National Institute for Safety and Occupation Health ("NIOSH") and the Occupational Safety and Health Administration ("OSHA"). *See* Exhibit D, Affidavit of Lawrence G. Miller, M.D., M.P.H., October 2, 2009, p. 3-5; NIOSH Criteria for Recommended Standard: Occupational Exposure to Formaldehyde, DHHS (NIOSH) Publication No. 77-126, US Department of Health, Education and Welfare (1976); 29 CFR 1910.1000 (1990).

Defendant further implies that Dr. Miller failed to review all available records pertaining to Mr. Wright. Defendant, however, seemingly neglected to review Dr. Miller's October report which indicates that Dr. Miller reviewed all available medical records. *See* Exhibit D. Defendant also misconstrues Dr. Miller's testimony by alleging that Dr. Miller failed to review pharmacy records. Dr. Miller did review the records; Dr. Miller, however, did not conduct detailed research on every drug to determine possible conflicting side effects. Such research would be relevant if Dr. Miller's opinion were based on unsupported speculation or subjective belief, but Dr Miller's opinion is founded upon recognized methodologies and cited epidemiological evidence. Thus, at most, Defendant's argument pertains to the credibility of Dr. Miller's opinion, not its

5

admissibility. *See Imperial Trading Co., Inc. v. Travelers Property Cas. Co. of Am.*, 2009 WL 2356292, *3 (E.D. La. July 28, 2009). Similarly, whether Dr. Miller evaluated every cleaning product encountered by Mr. Wright does not exclusively establish reliability. Reliability is determined by the methodologies employed by the expert and whether there exists 'good grounds' for the expert's belief. *Daubert*, 509 U.S. at 590. Here, Dr. Miller evaluated Mr. Wright, reviewed Mr. Wright's records, and conducted extensive research regarding the effects of formaldehyde on rhinosinusitis. Defendants have not sought to refute Dr. Miller's core methodologies, but have instead attempted to raise dispensable issues that are more appropriately asserted against credibility and not admissibility.

## IV.  DR. MILLER'S TESTIMONY IS RELEVANT

Defendant attempts to exclude the testimony of Dr. Miller by raising arguments relating to relevancy. While Defendant correctly references the relevancy standard as evidence that is more probative than prejudicial, Rec. Doc. 11385-1, p. 7, Defendant fails to cite a single basis in which Dr. Miller's testimony will incur prejudice to the Defendant. Instead, Defendant raises a burden of proof argument stating that "[P]laintiff has failed to *coordinate* both general and specific causation testimony." Rec. Doc. 11385-1, p. 8 (emphasis added). Respectfully, whether or not Plaintiff has met his burden of proof has little to do with whether Dr. Miller's testimony is relevant.[2] Moreover, Dr. Miller's straightforward opinion regarding the effect of formaldehyde on rhinosinusitis is certainly more probative than prejudicial as it does not confuse the issues, mislead the jury or present cumulative evidence.

---

[2]  Arguments relating to whether Plaintiff has met his burden of proof are more aptly covered in summary judgment practice according to Rule 56 of the Federal Rules of Civil Procedures. Fed. R. Civ. Proc. 56. Noticeably, Defendant essentially admits such in its motion to exclude. Rec. Doc. 11385-1, p. 8. As a result, Defendant is seemingly attempting to engage in a second bite at the apple with respect to its causation arguments, and any discussion of such should be disregarded.

6

Regardless, Plaintiff has 'coordinated' its general and specific causation testimony regarding the effect of formaldehyde on rhinosinusitis. Dr. Patricia Williams, Plaintiff's general causation expert, opines that "[a] cause—effect relationship exists between formaldehyde" and specifically named injuries. Exhibit E, Affidavit of Patricia Williams, Ph.D., DABT, p. 63-64. Defendant claims that Dr. Williams's "causation" opinion conflicts and is uncoordinated to Dr. Miller's "exacerbation" opinion. Defendant, however, forgets that Dr. Williams is not providing an opinion on specific causation, and terminology with respect to "causation" or "exacerbation" of asthma is commonly used interchangeably with respect to general causation. *See, e.g.*, Adgate, J., *Allergen levels in inner city homes: baseline concentrations and evaluation of intervention effectiveness*, 18 J. EXP. SCI. & ENV. EPI. 430 (2008). Furthermore, Defendant's own expert, Dr. Kenneth Smith, diagnosed the Plaintiff with asthma, which is supported by Dr. Williams's general causation analysis. Notably, in his report, Dr. Smith discusses historical support for a diagnosis of asthma in the Plaintiff, and notates that Mr. Wright's cough likely worsened while living in the trailer. Exhibit F, Report of Dr. Kenneth Smith, p. 3. As such, not only do Plaintiff's experts sufficiently "coordinate" general and specific causation opinions, Defendant's own expert supplies an adequate nexus.

## V. DR. MILLER'S TESTIMONY SHOULD NOT BE LIMITED

Defendant proposes an alternative argument that this Court should limit Dr. Miller's testimony to discussions regarding exacerbation of rhinosinusitis.[3] While Dr. Miller has only specifically diagnosed Mr. Wright with rhinosinusitis, Dr. Miller should

---

[3] It should be noted that Plaintiff has filed a Motion for Reconsideration directed towards this Court's Order striking the supplemental opinions of Dr. Miller. Rec. Doc. 11695. Should this Court reconsider and reform its original Order to allow Dr. Miller's supplemental opinions, this Court should allow Dr. Miller to testify accordingly.

7

be permitted to testify as to the other conditions that may be attributable to formaldehyde, specifically rashes, nocturnal dyspnea, and blood in sputum. With respect to skin conditions, Dr. Miller has been previously recognized as qualified to discuss dermatologic effects of formaldehyde, Rec. Doc. 8295, and Dr. Miller further cites to various studies analyzing skin sensitivity to formaldehyde. Exhibit D, p. 2-4. Further, Dr. Miller described in his October Affidavit the associative nature between various fungal species and exacerbations of upper and lower airway diseases. Exhibit D., p. 6. Dr. Miller also concluded, based on Mr. Wright's methacholine challenge and the extensive literature correlating formaldehyde exposure "to the development of, or exacerbation of asthma," that Mr. Wright's lower respiratory tract may have been affected by his formaldehyde exposures. Exhibit D, p. 6. While Dr. Miller admitted that the Mr. Wright's medical records lack specificity with regard to other ailments, these other ailments do in fact exist, and the effect of formaldehyde on these ailments is relevant.[4] Thus, because Dr. Miller is an expert qualified in pulmonary diseases and

---

[4]  Again, it should be noted that counsel stipulated to depose Dr. Miller at a later date, which has not occurred due to Defendant. As a result, Plaintiff did not engage in direct or rehabilitative questioning at Dr. Miller's original deposition.

>   Mr. Bone:   At this point I am going to look over my notes and hand him off to the other attorneys. With respect to the documents we requested, obviously, we will reschedule at a mutually convenient time after we have had the opportunity to look through the medical records that the doctor has reviewed and his notes and any other of the documents that may be contained in his file, whether that be a written, you know, notes relating to phone calls or the intake notes relating to Mr. Wright himself.
>
>   Mr. D'Amico:   That's fine. Also, there are some documents that we do not have, some deposition testimony that has never been provided to us, for instance, and obviously we would like him to look at those as well.
>
>   Mr. Bone:   Okay. Do you have any?
>
>   Ms. Whitfield:   I think I'm just going to wait until after we get the file.

Exhibit C, p. 119-20.

dermatologic illnesses and he established the basis for other potential effects of formaldehyde, Dr. Miller should be permitted to testify as to the health issues that may have resulted from Mr. Wright's formaldehyde exposure.

## CONCLUSION

This Court should deny Defendant's Motion to Exclude the Testimony of Dr. Miller. Dr. Miller is a highly qualified internist, pulmonologist, and a clinical pharmacologist, and has rendered his opinion in accordance with established scientific methodologies. Defendant has failed to assert any reasonable basis in which to discredit Dr. Miller's opinion, and has instead attempted to exclude his testimony on grounds inappropriate for *Daubert* challenges. Nevertheless, Dr. Miller's testimony will undoubtedly assist the trier of fact in weighing the evidence, and is more probative than prejudicial. Finally, because of Dr. Miller's expertise, this Court should permit Dr. Miller to testify as to the relevant effects that may be caused by formaldehyde exposure.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:     504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.

9

2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
DENNIS REICH, Texas #16739600
ROBERT M. BECNEL, #14072

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on February 18, 2010.

 s/Gerald E. Meunier
GERALD E. MEUNIER, #9471