# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA
# NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL CASES ("Alabama Plaintiffs") | MDL NO. 07-1873<br><br>SECTION "N" (5)<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF ITS "MOTION TO DISMISS THE FTCA CLAIMS OF ALL 'ALABAMA PLAINTIFFS' FOR LACK OF SUBJECT MATTER JURISDICTION BASED UPON NO ANALOGOUS PRIVATE LIABILITY" (Rec. Doc. 10656)**

**INTRODUCTION**

In their opposition to the United States' motion, Alabama Plaintiffs fail to show how the Government conduct at issue in this case is functionally different from – if not literally identical to – the kind of private person conduct shielded from civil liability under Alabama law. *See* Ala. Code § 31-9-17. Plaintiffs fail to recognize that the FTCA's limited waiver of sovereign immunity requires that the Court remove the governmental cloak and assess whether a private person could be subject to state law liability under "similar circumstances." *See United States v. Olson*, 546 U.S. 43, 45 (2005) (holding that "'like circumstances' do not restrict a court's inquiry to the same circumstances, but require it to look further afield"); *see LaBarge v. County of Mariposa*, 798 F.2d 364, 366-69 (9th Cir. 1986) ("Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy."). Stripping away the inherent differences between the Government and a private person, it becomes clear that the Government's provision of emergency housing units ("EHUs") to Alabama disaster victims following Hurricane Katrina presents "similar circumstances" to the type of private person conduct that would be protected by Ala. Code § 31-9-17. *See Olson*, 546 U.S. at 44 (holding that sovereign immunity is only waived "where local law would make a '**private person**' liable in tort" (emphasis in *Olson*)); *LaBarge*, 798 F.2d at 366-69 (finding the United States was in like circumstances to a private employer that would be covered by a state immunity provision).

**I.    The Scope Of Analogous Private Liability Is A Question Of Federal Subject-Matter Jurisdiction; It Shapes The Bounds Of The FTCA's Waiver Of Sovereign Immunity**.

Plaintiffs have failed to meet the FTCA's requirement that there be analogous tort liability against a "private individual under like circumstances," *see* 28 U.S.C. §§ 2674, 1346(b), and, thus, have failed to carry their burden of establishing subject-matter jurisdiction. *See Kokkonen v. Guardian*, 511 U.S. 375, 377 (1994); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

1

Although Plaintiffs focus on state rules of statutory application in their opposition, Opp. Memo. at 2 (Rec. Doc. 11470), the Supreme Court has held that whether a private person in "like circumstances" would be subject to liability is a question of sovereign immunity and, thus, is ultimately a question of federal law.[1]/ *Olson*, 546 U.S. at 44. Contrary to Plaintiffs' argument, because this exercise determines the scope of the FTCA's limited waiver of sovereign immunity (*i.e.,* whether Plaintiffs can meet the FTCA's condition that there be analogous private liability in like circumstances under Alabama law), the Court must construe all federal and state statutes that affect this condition "in favor of the sovereign."[2]/ *See U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992); *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998) (in assessing jurisdiction, a court must resolve "all ambiguities in favor of the sovereign"). In addition, the Alabama Emergency Management Act ("AEMA") specifically states that all of its provisions, including the private person immunity provision found at Ala. Code § 31-9-17, are to be "**construed liberally**" in order to effectuate the chapter's purpose. *See* Ala. Code § 31-9-23 (entitled "**Chapter to be liberally construed**") (emphasis added). This stands in stark contrast to the narrow interpretation sought by Plaintiffs. *See* Opp. Memo. at 2 (Rec. Doc. 11470). At least one Court has also remarked that courts generally interpret disaster statutes (similar to Ala. Code § 31-9-17) in order to provide protection from suit to

---

[1]/ In their opposition, Plaintiffs do not challenge the proposition that the jurisdictional question presented (whether Ala. Code § 31-9-17 would limit the potential civil liability of a private person under similar circumstances) bears no relation to a merits determination of whether the United States was negligent. Thus, the United States' motion should be decided pursuant to Rule 12(b)(1), rather than Rule 56. *See generally* Opp. Memo. (Rec. Doc. 11470). Nonetheless, should the Court choose to apply the summary judgment standard to this motion, there remains no genuine issue of material fact regarding whether there is analogous private liability in like circumstances under Alabama law. In addition, since Plaintiffs' opposition did not include a responsive statement of material facts, the United States' statement of material facts should be deemed admitted pursuant to Local Rule 56.2.

[2]/ Plaintiffs incorrectly cast the United States' motion as unrelated to the question of sovereign immunity. *See* Opp. Memo. at 2. Although the FTCA's analogous private liability provisions look to the framework established by state tort law, *see* 28 U.S.C. §§ 2674, 1346(b), how the question of analogous private liability is resolved determines the scope of the FTCA's limited waiver of sovereign immunity and, thus, determines the scope of subject-matter jurisdiction. *See United States v. Mottaz*, 476 U.S. 834, 841 (1986); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (affirming Rule 12(b)(1) dismissal for lack of jurisdiction based upon no analogous private liability).

the fullest extent possible.  *See Robin v. U.S.*, 2006 WL 2038169, at *2 (E.D. La. July 17, 2006).

In judging whether the FTCA's requirement of analogous private liability is met, federal law requires that the Court assess whether the Government conduct at issue would constitute "similar circumstances" to those that would result in liability being imposed (or not imposed) upon private persons under state law.  *See LaBarge*, 798 F.2d at 366-69.  This inquiry is an issue of federal subject-matter jurisdiction that, in part, looks to the framework of state law for guidance, but is not answered through a rote application of state law text to the facts of a particular case.  *See Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1118 (10th Cir. 2004).  Importantly, the "similar circumstances" concept that shapes the FTCA's analogous private liability inquiry is necessarily flexible to ensure the Government is afforded the same protections as private persons – it allows for state law provisions to "apply" to shield the Government where the Government activity functionally, rather than literally, meets the terms of the state statute at issue.[3]/  *Id.* (holding that the FTCA's "like circumstances" inquiry requires only that the United States be analogized to a similarly situated private party and that in light of the "similarly situated" requirement, the United States is allowed "the benefits of certain state-law defenses in FTCA actions, even when the United States [does] not meet the technical requirements of state law").  For example, in the FTCA case of *Starns v. United States*, 923 F.2d 34 (4th Cir. 1991), the Court stressed that the "FTCA assures the federal government of that treatment accorded private parties," and, thus, held that the Government must be afforded the benefit of Virginia's medical malpractice cap, even though the Government does not meet the cap's

---

[3]/    The FTCA's "similar circumstances" or "like circumstances" test for analogous private liability must be read to cut both ways.  If there is a reasonable analogue, the United States may be held liable under the FTCA for uniquely governmental activities that a private person would never perform; but, in turn, the United States must be afforded the benefit of state immunity statutes and non-liability provisions that the Government has only functionally, rather than literally, complied with.  *See Hill*, 393 F.3d at 1118.  This is especially true where the United States' activity does not technically meet the terms of the state statute due to uniquely governmental attributes.  Simply put, the "similar circumstances" test requires that the Government activity at issue be 'in the ballpark' of the activity described in a state liability or non-liability provision.  This ensures that the Government is placed on equal footing with private persons (as required by the FTCA) despite their inherent differences.  *See id.*.

requirement that providers must be licensed by the state for the cap to apply. *Id*. at 37.  The Court in *Starns* ruled that the Government was sufficiently in "like circumstances" to a private provider that would be entitled to benefit from the cap, even though the Government had not literally complied with the terms of the cap. *Id*.  In a similar FTCA case, the Court in *Boone v. United States*, 591 F. Supp.2d 800 (D. Md. 2008), found that the Government was in "like circumstances" to a non-profit, private, self-insured, fire company, and, thus, had to be afforded the same state law immunity protections that would apply to a private fire company under Maryland law, even though the Government had not specifically complied with all of the requirements for private fire company immunity under Maryland law.  *Id.* at 802-04 (stating that, "the specific requirements of the Maryland statute do not dictate the government's liability in this action . . . [r]ather, the 'FTCA assures the federal government of that treatment accorded private parties.'").  In this case, although the Government activity at issue need only be the functional equivalent of the private conduct shielded from liability under Ala. Code § 31-9-17, the activity at issue squarely satisfies the statute's terms.  This result in no way requires that the private person protections set forth in Ala. Code § 31-9-17 be extended beyond their obvious meaning as a part of the "like circumstances" test mandated by the FTCA's analogous private liability requirement.

## II. The Nature, Scope, And Applicability Of Ala. Code § 31-9-17 Support A Finding Of No Analogous Private Liability For Plaintiffs' FTCA Claims.

The Alabama statute at issue limits the civil liability of private persons who own and provide shelter in response to a disaster.  *See* Ala. Code § 31-9-17.  A facial reading of Plaintiffs' own Complaint shows that they allege each individual Plaintiff was rendered "homeless" following the "greatest natural disaster in the history of the United States" and that the United States responded by providing what Plaintiffs consider to have been "unreasonably dangerous housing units" in an attempt to shelter "individuals and families displaced" by the hurricane.  *See* Third AMC (Rec. Doc.

4486) ¶¶ 124, 128, 171, 150, 162, 201-205, 209 (as incorporated by the Fourth AMC (Rec. Doc. 7688)).  Though Plaintiffs urge that the Court consider the nature and scope of Ala. Code § 31-9-17, *see* Opp. Memo. at 1 (Rec. Doc. 111470), the upshot of the provision is that persons and entities who provide shelter in the context of a disaster should be shielded from any and all associated civil liability.  *See* Ala. Code § 31-9-17.  Using the FTCA's required analogy, had a private person or entity undertaken the task of providing thousands of emergency shelters to the Alabama victims of Hurricane Katrina (the same shelters complained of in Plaintiffs' suit) – Ala. Code § 31-9-17 plainly would preclude all potential civil liability for injuries related to Plaintiffs' use of these shelters.  Plaintiffs fail to explain how their claims about purportedly dangerous emergency shelters should remain untouched by the Alabama statute that specifically bars the civil liability of those who choose to provide emergency shelters in response to a disaster.[4]  Nor do they explain how affording the United States the same protections as private persons who provide shelter in response to disasters – as is explicitly required by the FTCA – would constitute "absurd consequences."  Opp. Memo. at 1.

In large part, Plaintiffs seek to distinguish the protections announced in Ala. Code § 31-9-17 by stressing that it was the United States Government – not a private person – who provided the shelters at issue in this case.  Thus, Plaintiffs argue that the factual underpinnings of this case (because of the inherent differences between the Government and a private person, such as the Government's collection of taxes and internal regulations) are markedly different from a scenario in which Ala. Code § 31-9-17 would apply to a private person.  Such reasoning ignores the FTCA's jurisdictional requirement that there be analogous "private person" liability as well as the Supreme

---

[4]     Although Plaintiffs characterize Ala. Code § 31-9-17 as "rarely applied," Opp. Memo. at 1 (Rec. Doc. 11470), this is not surprising given the discrete focus of the statue (the provision of emergency shelter in response to a disaster).  The fact that a statute has been written to expressly shield private persons who engage in such an uncommon contingency speaks to the important considerations that underlie the statute.

5

Court's teachings in *Olson*.[5]/ *See* 546 U.S. at 44 (discussing 28 U.S.C. § 1346(b)); *Hannon v. United States*, 801 F. Supp. 323, 326 (E.D. Cal. 1992) (based upon the FTCA's analogous private liability requirement, the Government must be afforded the benefit of California's recreational land use statute even though the statute only applies to private, not governmental, land owners); *id*. ("[The land use statute] applies to private persons, so it must also apply to the United States in this [FTCA] case"). Because Ala. Code § 31-9-17 specifically applies to "[a]ny person," it appropriately informs whether there is analogous private person liability in this FTCA action. *See* Ala. Code § 31-9-17.

### III.  The Government Activity At Issue Presents "Similar Circumstances" To The Kind Of Private Person Activity Shielded From Civil Liability By Ala. Code § 31-9-17.

Ala. Code § 31-9-17 protects any private person who:

(1) owns or controls "real estate or other premises";
(2) acts "voluntarily and without compensation";
(3) grants "use of the whole or any part or parts of such . . . premises"; and
(4) does so "for the purpose of sheltering persons during an actual disaster."

Ala. Code § 31-9-17. In their opposition, Plaintiffs do not dispute that the Government conduct at issue presents "similar circumstances" to private person conduct that would satisfy elements (1), (3), and (4). *See* Opp. Memo. at 2-6 (Rec. Doc. 11470). Instead, Plaintiffs focus solely on element (2), namely, whether the Government conduct at the center of this case can be considered in like circumstances with a private person who acts voluntarily and without compensation. *Id.*

#### A.  The Government Was In Like Circumstances With A Private Person Who Acts Voluntarily And Without Compensation.

In their opposition, Plaintiffs have failed to come forward with any evidence that the United

---

[5]/   By measuring the Government's FTCA liability through the use of "private person" liability, Congress sought to prevent state legislatures from using the FTCA's limited waiver of sovereign immunity to "enrich their own citizens" at the expense of the United States. *See Carter v. United States*, 982 F.2d 1141, 1143 (7th Cir. 1992). This is in keeping with the FTCA's intent to limit the waiver of sovereign immunity to "run-of-the-mine" torts where there are clear private analogues under state tort law. *See United States v. Gaubert*, 499 U.S. 315, 325 n.7 (1991); *Dalehite v. United States*, 346 U.S. 15, 28 n.19 (1953). Considering the teachings of *Olson*, private person analogies may exist for the conduct at issue here, but Alabama protects such persons from civil liability. *See* 546 U.S. at 47.

States did not provide emergency shelter to the Alabama victims of Hurricane Katrina of its own volition. Examining the kind of like circumstances that would vitiate a private person's "voluntariness" under Ala. Code § 31-9-17, Plaintiffs cannot show that the United States was contractually obligated or otherwise bound by any outside element to provide the emergency shelter in question. Just as a private person would never have an independent duty under Alabama state law to provide shelter to those affected by disasters, no such duty can be ascribed to the United States.

For example, in the FTCA case of *Bunting v. United States*, 884 F.2d 1143 (9th Cir. 1989), the Court held that under the FTCA's required private person analogy, the Coast Guard, like a private person under state law, could not be found to have a preexisting duty to rescue and could not be ascribed with having any duty above and beyond that of a private person under state law. *Id.* at 1149. Thus, for purposes of the FTCA action, the Coast Guard had to be afforded the same protections that a private person would be afforded under similar circumstances where there is no preexisting duty, namely, the protections set forth in Alaska's Good Samaritan statute (limiting liability to only those circumstances where a plaintiff can establish gross negligence). *Id*.

Given the FTCA's requirement that the Court consider a private analogue under "similar circumstances" to ensure that the Government and private persons are placed on equal footing, *see LaBarge*, 798 F.2d at 366-69, internal Government regulations and statutory charges that only apply to the Government cannot play a role in a private analogous liability inquiry. *See Hill*, 393 F.3d at 1118; *see also* U.S. Memo. at 11 n.11 (Rec. Doc. 10656-2) (citing cases). If such inherently governmental provisions were allowed to vitiate state law protections and authorize suit where a private person taking similar action would otherwise be shielded, the Government would immediately be placed "in a differently situated position than private parties . . . thereby undermining

the conditions precedent to the United States' waiver of sovereign immunity in the FTCA."[6]/ *Id*.

Even if such provisions were relevant to the required **private person** analogue, the Stafford Act, which Plaintiffs argue compelled the Government to provide assistance in this case, in fact provides for unfettered discretion in deciding if/when/how the United States, through FEMA, should provide emergency shelter to disaster victims.  *See* U.S. Statement of Facts ¶ 4; 42 U.S.C. § 5174(c)(1)(B)(I) (stating that FEMA "**may** provide temporary housing units . . . to individuals or households" (emphasis added)).  There is no mandatory provision, internal or otherwise, that required the United States to provide Plaintiffs with shelters following Hurricane Katrina.  The United States made this decision on its own accord and, as a result, this activity must be considered in like circumstances with a private person acting voluntarily.[7]/  Similarly, there is no foundation for Plaintiffs' argument that an "altruistic basis" or motivation requirement should be read into the language of Ala. Code § 31-9-17.  Opp. Memo. at 3.  Although Plaintiffs seek to distinguish the Government's activity in this case by saying that Ala. Code § 31-9-17 should only apply where someone "steps forward in an emergency to help shelter a disaster victim by making his own property available," that is exactly the kind of action the United States took in response to the massive

---

[6]/   For instance, if the Court were to conclude that the United States was not in like circumstances to a private person who acted voluntarily on the grounds that the United States has formed the Federal Emergency Management Agency ("FEMA") and has set forth various implementing regulations that charge the agency with the task of responding to emergencies, such a determination would place the Government – simply because it is the Government – in an entirely different position than an otherwise similarly situated private person.  The FTCA's limited waiver of sovereign immunity requires a different result.  One could argue that the provision of thousands of emergency shelters following a natural disaster is an inherently governmental activity, nonetheless, the FTCA requires application of the most reasonable private person analogy to determine liability.  *See, e.g., Nationwide Mut. Ins. Co. v. United States*, 3 F.3d 1392, 1396-97 (10th Cir. 1993) (looking past inherent differences between the Government and a private person in order to assess whether the Government was in like circumstances to a private person who would be afforded certain protections under state law).

[7]/   In the context of a private person or entity, even if a provider of shelter had internal rules or bylaws that outlined its intent to provide safe and habitable emergency shelter to disaster victims whenever the need arises, the private person or entity would still be taking voluntary action under Ala. Code § 31-9-17 because no external force compelled it to adopt such rules and bylaws and undertake the task of providing such aid.

destruction and homelessness left in the wake of Hurricane Katrina.  *See id*.  Plaintiffs' argument that a private person would never be expected to adhere to the litany of policy objectives, regulations, and guidelines that purportedly shaped the United States' provision of emergency shelter is not compelling.  Such an argument wholly ignores the holding of *LaBarge*, which stressed that the Court must look past the inherent differences between the Government and a private person in order to find the most reasonable private person analogy.  798 F.2d at 366-69.  In this case, the most reasonable analogy would involve the kind of private person conduct protected under Ala. Code § 31-9-17.

      Plaintiffs' reference to arguments surrounding the applicability of the FTCA's discretionary function exception only serve to muddle the issue before the Court and are completely off target.  Although the applicability of this exception to the FTCA's waiver of sovereign immunity has been discussed in various rulings by this Court, the exception is just one of many independent conditions on the FTCA's limited grant of subject-matter jurisdiction.  Whether the exception applies or does not apply has no bearing on whether there is analogous private liability under similar circumstances to those presented in this action (as informed by relevant state law).  Whereas the existence of internal Government rules, regulations, and policies (assuming they are mandatory and specific) can help determine whether the jurisdictional bar set forth in the FTCA's discretionary function exception is triggered, such directives are **entirely unrelated** to the analogous private liability inquiry required here.  Unlike the analysis required under the discretionary function exception (focusing on whether the Government had discretion and whether its choices were susceptible to policy considerations), whether there is analogous private liability under similar circumstances hinges upon the duties and defenses that would shape the potential liability of a private person under state tort law.  In *Johnson v. Sawyer*, 47 F.3d 716 (5th Cir. 1995), the Fifth Circuit confirmed that internal Government rules, regulations, and policies (although potentially important to discretionary function exception analysis) do not inform whether there is analogous private person liability in the context of an FTCA action.

9

*Id.* at 727. Directives that only speak to Government activity do not shape the actions of private persons and simply cannot be relevant to whether a private person would have a duty under state tort law, whether a private person could raise a defense under state tort law, or whether an immunity/non-liability provision would apply to a similarly situated private person under state tort law. As set forth in the FTCA, the Government can only be held liable when a private person could be held liable under similar circumstances, thus, the FTCA does not allow for novel or additional tort law duties to be imposed upon the Government beyond those that are independently imposed upon private persons under state tort law. *Id.* If a claim could not proceed against a private person under state law, it cannot be brought as an FTCA action against the Government.[8]/ An alleged violation of a federal law, rule, regulation, or policy – even if sufficient to vitiate the discretionary function exception – falls outside the FTCA's jurisdictional scope unless the complained of conduct would be specifically actionable against a private person under the law of the state where the conduct occurred and would constitute a breach of a duty owed by private persons under state tort law. *Id*. Neither the FTCA, nor a Government rule, regulation, or policy can impose a new duty, cause of action, or standard of care against the Government if the duty, cause of action, or standard of care could not be imposed against private persons in the non-federal context under state tort law. *Id*. at 727-28 (citing *Gelley v. Astra*, 610 F.2d 558, 562 (8th Cir. 1979) (" . . . federal imposed obligations, whether general or specific, are irrelevant to our inquiry under the FTCA, unless state law imposes a similar obligation upon private persons.")); *Tindall v. United States*, 91 F.2d 53, 56 n.8 (5th Cir. 1990) ("a federal regulation cannot establish a duty owed to the plaintiff under state law").

    Plaintiffs' focus in their opposition on cases dealing with whether individuals may have a

---

[8]/    In their opposition, Plaintiffs appear to argue that their claims against the United States cannot be limited to the claims that could only be brought against a private person under similar circumstances. *See* Opp. Memo. at 6-7 (Rec. Doc. 11470). This line of reasoning directly contradicts a foundational requirement set forth in the FTCA's limited waiver of sovereign immunity. *See* 28 U.S.C. §§ 1346(b)(1); 2674.

10

vested property interest in FEMA assistance is also misplaced. As stated above, such an inherently governmental issue, involving internal Government rules, regulations, and policies, does not meaningfully translate to the FTCA's required analogous private liability inquiry (informed by state tort law). Nevertheless, the regulations described in the Stafford Act (which impose no duties upon private persons) speak only in permissive terms.[9]/ *See* U.S. Statement of Facts ¶ 4; *Ridgley v. FEMA*, 512 F.3d 727, 729, 736-37 (5th Cir. 2008) (confirming that FEMA has discretionary authority to authorize and administer emergency housing assistance). Although the question of whether individuals have a vested property interest in FEMA assistance is not germane to the private analogous liability inquiry, a recent opinion dealing specifically with emergency housing units confirmed that "[b]ecause of its institutional discretion, FEMA's emergency housing assistance does not create an entitlement in the plaintiff to a property interest in that assistance." *Johnson v. FEMA*, 2009 WL 1208639, at *1 (E.D. La. May 1, 2009) (Feldman, J.) (denying a plaintiff's request for an injunction to stay in his Government-provided emergency shelter); *see Lockett v. FEMA*, 836 F.Supp. 847, 854 (S.D. Fla. 1993) (following Hurricane Andrew, ruling that the Stafford Act "clearly shows that assistance is discretionary, not mandatory"). Although Plaintiffs rely upon *McWaters v. FEMA*, 436 F.Supp. 802 (E.D. La. 2006), much of the cited language in *McWaters* is undercut by the Fifth Circuit's recent ruling in *Ridgley*.[10]/ *See* 512 F.3d at 736-37. As stated in *Ridgley*, mandatory

---

[9]/ Even if Plaintiffs could establish that the United States through FEMA had an ongoing policy or practice of providing emergency housing to certain similarly situated individuals, the Government's provision of housing and establishment of such a policy or practice would still be the product of an elective and voluntary choice on the part of the United States to provide such assistance and undertake such a task.

[10]/ As this Court has stated, "[A]s for the applicability of the *McWaters* case to the scenario before this Court, it should be noted that the Fifth Circuit recently held that the Stafford Act, and its accompanying regulations governing the Individual Assistance housing program, even for persons who qualify for housing assistance, does not, in and of itself, create an entitlement to housing assistance." *In re: FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488 (E.D. La. 2008) (citing *Ridgley v. FEMA*, 512 F.3d 727, 734-45 (5th Cir. 2008)). Unlike the *Johnson v. FEMA*, 2009 WL 1208639 case, which found no entitlement to an emergency housing unit, *McWaters* did not deal with the Government's provision of emergency housing units. *See McWaters*, 408 F. Supp.2d at 221 (discussing notice, rental assistance, SBA loans, and short-term lodging assistance, *i.e.*, hotels and motels). Thus,

language is wholly absent from the internal FEMA implementing regulations that discuss the provision of assistance. *Id*. (discussing all of FEMA's implementing regulations, beyond just the rental assistance provision, and stating "[t]here is simply no indication that the regulations constrain FEMA's discretion to the point that it is bound to provide assistance"). Regardless, not a single regulation referenced in any of these cases requires the United States to provide emergency shelter to disaster victims. Nor are private persons required to provide assistance under Alabama state law. When the United States chose to provide disaster assistance following Hurricane Katrina, it acted of its own volition. Even if the United States undertakes the task of assisting the public in an emergency (and has set up an agency to do so), that does not make the decision to undertake that task non-voluntary. Here, even if the Government imposed upon itself an obligation to provide assistance or adopted a policy/practice to provide safe and habitable assistance, that obligation was one voluntarily undertaken by the Government and, thus, the Government remained in like circumstances with a private person who would be afforded the protections of Ala. Code § 31-9-17.

Again seeking to interject inherent differences between the Government and private persons into this analogous private liability inquiry, Plaintiffs also argue that the United States' provision of rent-free shelter was not in like circumstances with a private person who acts without compensation because the United States collects taxes (an inherently governmental task). Plaintiffs concede, as they must, that they, as recipients of Government-owned emergency shelters, did not pay any money for such assistance "in the direct, payment-to-FEMA sense." Opp. Memo. at 3 (Rec. Doc. 11470). Such a direct payment, *i.e.*, rent or a purchase price, is the very definition of compensation. The

---

Plaintiffs' criticism of *Ridgley* applies equally to *McWaters*. *See* Opp. Memo. at 7 (arguing that *Ridgley* should be distinguished because it did not deal with the provision of emergency housing units). *McWaters*, in ruling on a request for a preliminary injunction, dealt specifically with the continuation and administration of certain programs already set in place. *Id*. at 236. Even if the Government had established a pattern or practice of providing emergency shelter to certain qualified individuals, this does not make the actual decision to provide shelter in the first place any less voluntary or less discretionary.

12

United States received no such payments in exchange for its provision of emergency shelter to homeless disaster victims.  As FEMA Acting Deputy Administrator David Garratt testified, disaster victims "paid no out-of-pocket costs" to live in these shelters.  U.S. Ex. 7, 37:11-13.  Although American taxpayers, potentially including Plaintiffs, help fund some of the Government's operations, such moneys are far too attenuated from the Government's provision of emergency shelter to be considered compensation under Ala. Code § 31-9-17.  *See, e.g., Hannon*, 801 F. Supp. at 327 (holding that the Government could benefit from the California recreational land use statute in an FTCA case because, even though the Forest Service required fees to be paid to enter certain campgrounds at the park in question, the statute's "no consideration" provision was met because the Government did not require the Plaintiff to pay any direct "consideration" to the Government upon entry of the park).  General income tax payments simply cannot amount to consideration or compensation for the unrelated subsequent provision of specific emergency shelter.  As the Supreme Court has stated, "a tax is not an assessment of benefits," nor does it constitute consideration in exchange for services.  *See Carmichael v. Southern Coal*, 301 U.S. 495, 521-23 (1937).  Plaintiffs' argument is akin to the oft-rejected notion of taxpayer standing.  *See generally Flast v. Cohen*, 392 U.S. 83 (1968).  Finally, it is inarguable that the collection of taxes – an activity conducted only by the Government – can meaningfully translate to the private person analogy.[11]/

**IV.     Because Ala. Code § 31-9-17 Would Apply To A Private Person Under Similar Circumstances, The United States Must Be Shielded From Civil Liability And Alabama Plaintiffs' FTCA Claims Must Be Dismissed In Their Entirety.**

---

[11]/     For example, in the context of a private entity or charity, if a charity provided emergency shelter to a disaster victim who had previously made contributions to the charity, this would scarcely amount to an exchange of "compensation" as required to vitiate the protections of Ala. Code § 31-9-17.  In addition, if the collection of taxes were to be considered in like circumstances with a private person's acceptance of compensation, Ala. Code § 31-9-17 could never, under any set of facts, shield the United States from liability, thus depriving the United States of a legal protection otherwise granted to certain private persons under state law.  This would undermine the FTCA's intent to make the Government's tort liability the same as that of a private person under like circumstance.

Each Plaintiff alleges that he or she was injured as a product of formaldehyde emissions in his or her Government-owned emergency housing unit.  These emergency shelters, which Plaintiffs allege were "defective and dangerous" are at the epicenter of Plaintiffs' claims of causation and injury.  *See* Third AMC ¶¶ 179, 207, 353.  Given their allegations, Plaintiffs cannot divorce their claims from the very shelters that they allege caused them harm during the course of occupancy/usage.  Regardless of a potential plaintiff's theory of liability, a private person who falls under the protections of Ala. Code § 31-9-17 "shall. . . not be civilly liable for negligently causing the death of, or injury to, any person on or about such . . . premises."  Ala. Code § 31-9-17.  Thus, any and all civil tort claims against such a private person that allege injury or death stemming from the usage or occupancy of an emergency shelter are barred under Alabama law.  *Id*.  Likewise, under similar circumstances, such claims may not proceed against the United States under the FTCA.  *See id*.  Ala. Code § 31-9-17 in no way distinguishes between civil claims that are premised on a defendant's status as property owner and those that are not.  Indeed, regardless of the theory of liability, if the statute's prerequisites are met, the provider of shelter is immune from all civil claims as long as the alleged injury or death occurred "on or about" the premises. *Id*.  Here, Plaintiffs plainly allege they were injured while they were "on or about" their EHUs during the course of occupancy.

Importantly, Ala. Code § 31-9-17 broadly precludes *all* civil liability arising from a private person's voluntary provision of free shelter in response to a natural disaster.[12]/  Thus, the statute's

---

[12]/    To the extent the United States arguably owed an independent state law duty to Plaintiffs, such a duty arose as a product of the United States' relationship as owner and provider of what Plaintiffs allege were dangerous emergency housing units.  Just because it was providing emergency assistance to other individuals, Plaintiffs cannot argue that the Government had a duty to individual Plaintiffs until the United States provided an emergency shelter to that Plaintiff.  To the extent Plaintiffs argue that the Government had some independent state law duty beyond its role as owner and provider of the allegedly dangerous emergency housing units, *see* Opp. Memo. at 6-7, there is no possible analogous private liability theory under state law that would support such a claim.  'Negligence in the air' or the violation of inherently governmental regulations or policies is not enough, **there must be an analogous and independent duty under state tort law**.  *See Sawyer*, 47 F.3d at 727-28 ("It is virtually axiomatic that the FTCA does not apply 'where the claimed negligence arises out of the failure of the United Sates to carry out a [federal] statutory duty in the conduct of its own affairs.").  For example, there is no recognized theory of state tort liability

14

protection is not limited to liability arising from simple negligence and does not contain a special exception for gross negligence or other misconduct. This is supported by the plain language of Ala. Code § 31-9-17 and its context in the statutory scheme, notably, its proximity to the previous subsection, Ala. Code § 31-9-16(b). The text of this subsection provides immunity for state actors engaged in emergency management activities, but specifically qualifies that immunity "**in cases of willful misconduct, gross negligence or bad faith**." Ala. Code § 31-9-16(b) (emphasis added). Just as Alabama chose to qualify the immunity of state actors, it easily could have qualified the immunity of private persons who provide shelter in response to disasters, yet the qualifying language of Ala. Code § 31-9-16(b) does not appear in the text of Ala. Code § 31-9-17. The fact that Alabama did not take such action evinces that the immunity from civil liability conferred by Ala. Code § 31-9-17 is absolute and applies to all civil claims sounding in tort.

## CONCLUSION

While Plaintiffs argue that it would be improper for "the Court to conclude that all of the claims and theories of fault urged against FEMA . . . be limited in such a way as to be analogous to claims against a private person . . . ," Opp. Memo. at 7, this is precisely what the FTCA requires. Regardless of whether Plaintiffs' tort claims are grounded in simple negligence or other theories of liability, they could not proceed against a private person in "like circumstances" under Alabama law. *See* Ala. Code § 31-9-17. Under the FTCA's analogous private liability requirement, it follows that all of Alabama Plaintiffs' FTCA claims must be dismissed for lack of subject-matter jurisdiction.

---

that would support an action against a private person based upon that person's negligent failure in the abstract to "properly respond to an emerging public health crisis." *See* Opp. Memo. at 6. There is no independent duty under Alabama state law that a private person "disclose important information" to persons absent some sort of relationship between the persons that creates a legally supportable duty. *See id.* Where there would be no duty or claim against a private person under similar circumstances under state tort law (even though there are inherent differences between the Government and private persons), the FTCA's limited waiver does not provide jurisdiction for such claims to proceed against the United States. The FTCA simply does not provide redress for all perceived claims against the United States – only those that could proceed against a private person in like circumstances.

| | |
|---|---|
| Dated:  February 18, 2010 | Respectfully Submitted, |
| TONY WEST<br>Assistant Attorney General, Civil Division | HENRY T. MILLER<br>ADAM BAIN<br>Senior Trial Counsel |
| J. PATRICK GLYNN<br>Director, Civil Division, Torts Branch | MICHELLE BOYLE<br>MICHELE GREIF |
| DAVID S. FISHBACK<br>Assistant Director | JONATHAN WALDRON<br>Trial Attorneys |
| OF COUNSEL: | *s/ Adam M. Dinnell*<br>ADAM M. DINNELL (TX No. 24055405) |
| JORDAN FRIED<br>Associate Chief Counsel | Trial Attorney<br>United States Department of Justice<br>Civil Division, Torts Branch |
| JANICE WILLIAMS-JONES<br>Senior Trial Attorney<br>Federal Emergency Management Agency<br>Department of Homeland Security | P.O. Box 340, Ben Franklin Station<br>Washington, DC 20004<br>Telephone:  (202) 616-4211<br>Adam.Dinnell@usdoj.gov |
| | Attorneys for Defendant United States |

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

*s/ Adam M. Dinnell*
ADAM M. DINNELL (TX No. 24055405)