UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:  FEMA TRAILER                          MDL NO. 07-1873
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION                          SECTION N(5)

                                              JUDGE ENGELHARDT

THIS DOCUMENT RELATES TO:
*Lyndon Wright v. Forest River, Inc., et al.*   MAGISTRATE CHASEZ
No. 09-2977 (E.D. La.)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### SHAW ENVIRONMENTAL, INC.'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO PROHIBIT REFERENCES TO AN EXEMPLAR TRAILER

**MAY IT PLEASE THE COURT:**

Shaw Environmental, Inc. (hereinafter referred to as "Shaw") respectfully submits this Response to Plaintiff's Motion *in Limine* to Prohibit References to an Exemplar Trailer. Plaintiff's motion is apparently driven by the desire to suppress an embarrassing fact – the fact that the stresses placed on trailers during over-the-road travel are greater than those induced by jacking.  Since there is no epidemic of leaky trailers resulting from normal road use, it is reasonable to conclude that transportation loads do not cause leaks, and therefore the lesser loads of jacking do not cause leaks, either.  Shaw is entitled to defend itself scientifically – using a real experiment to determine whether transportation loads are greater or lesser than jacking. Plaintiff's motion seeks to prevent Shaw from defending itself, and the motion should be denied.

## **INTRODUCTION**

Plaintiff's motion, seeks to exclude admittedly relevant evidence[1] gathered, analyzed, and reported by a recognized expert so as to be scientifically valid and of the utmost assistance to the jury in deciding the veracity of claims asserted by Plaintiff. Plaintiff does not challenge the expertise of John D. Osteraas, Ph.D., P.E. of Exponent Failure Analysis Associates (hereinafter referred to as "Dr. Osteraas"). Nor does Plaintiff challenge the methods by which Dr. Osteraas conducted his science. Plaintiff does not even dispute the probative value of conclusions drawn by Dr. Osteraas. Rather, Plaintiff complains, without citation to legal authority or logical explanation: (1) that he had no opportunity to participate in Dr. Osteraas' expert examination, and (2) that this evidence, while relevant, might somehow be unduly prejudicial or confusing to the jury. Indeed, had counsel for Plaintiff been at all confused about methods or conclusions related to the exemplar unit, they could have raised critical questions at Dr. Osteraas' deposition. Not one such question was asked.

As is more fully explained below, this Motion in Limine is wholly without merit. Because Plaintiff cites no authority authorizing his participation in the independent examination of an opposing expert, and because Plaintiff is unable to explain any reasonable basis for exclusion of evidence related to the exemplar trailer tested by Dr. Osteraas, Plaintiff's Motion in Limine to Prohibit References to an Exemplar Trailer should be denied.

---

[1] *See* Plaintiff's Memo in Support, Rec. Doc. 11384 at p. 3. ("Although testimony regarding testing and examination of an exemplar travel trailer may be relevant, …")

**BACKGROUND**

**I.   Plaintiff's Allegations Required Comprehensive Expert Analysis.**

On July 17, 2009, Plaintiff filed his First Supplemental and Amended Complaint ("Amended Complaint"),[2] alleging that the process of installing his emergency housing unit ("EHU") for occupancy caused damage to the structure of the EHU.   Specifically, Plaintiff claims "… the 'blocking' of the Trailer caused the frame to bend and become warped thus leading to numerous problems relating to leaking and growth of mold because of leaks created by the blocking, [and that] [a]s a consequence, (Plaintiff) was subjected to chronic exposure to formaldehyde gas and mold."[3]   Further, Plaintiff alleges "… as a result of the improper 'blocking' of the unit, the frame was bent and warped which caused the door not to close and seal properly and also caused significant leaking in his bedroom window."[4]   Underlying these allegations is plaintiffs' theory that the act of jacking or lifting the trailer in order to place it on blocks caused the alleged bending and warping of the frame.   While not directly pled, this "jacking theory" became necessary as a result of the PSC's realization that, as federal contractors, defendants such as Shaw could not be held liable for blocking the units in compliance with explicit direction from FEMA.

Plaintiff's theory, therefore, is that the process of lifting his EHU placed enough stress on the frame of the EHU to cause damage to the frame and that this damage somehow led to or worsened his exposure to formaldehyde gas.   It is, of course, Shaw's right, and indeed inherent in

---

[2] Rec. Doc. 2203.

[3] Rec. Doc. 2203 at ¶ 12.

[4] Rec. Doc. 2203 at ¶ 14.

the adversary process, to conduct scientific experimentation to disprove Plaintiff's theories. Thus, as is more fully explained below, Shaw's expert, Dr. Osteraas, a recognized expert in the field of structural failure analysis, tested Plaintiff's theories by conducting well-reasoned experiments: (1) on the Wright EHU in accordance with this Honorable Court's instructions, and (2) on a privately purchased and nearly identical exemplar unit in accordance with sound scientific principles.

## II. Shaw's Defense Is Based on Expert Analysis.

Shaw has consistently maintained that it was not negligent in any way that caused harm to Plaintiff.[5]   Shaw is, however, not satisfied with the prospect of relying solely on Plaintiff's inability to prove negligence.  Thus, Shaw sought the expertise of Dr. Osteraas[6] and asked him to "utilize the scientific method and engineering principles to determine whether the activities of Shaw and/or its subcontractors damaged the integrity of the exterior envelope of the subject trailer in a way that allowed passage of abnormal quantities of water and/or air through or into the exterior envelope of the Wright trailer."[7]   Thus, Dr. Osteraas set out to design and conduct a program of document review, visual examination, well-reasoned experimentation, and engineering analysis, the results of which would be easily understood by and helpful to the jury

---

[5] *See, e.g.* Shaw's Answer and Affirmative Defenses to Complaint and First Amended Complaint, Rec. Doc. 10918; Shaw's Fifth Defense.

[6] A copy of the November 17, 2009 expert report of Dr. Osteraas (the "Osteraas Report") is attached hereto as Exhibit "A."

[7] Osteraas Report at p. 1 (SWE-000090).

at the trial of this matter.  Indeed, even Plaintiff admits that "this testing was not done on the spur of the moment, but was carefully planned."[8]

Considering Plaintiff's allegations of "improper jacking," Shaw hypothesized that any loads experienced by the structural elements of the EHU during jacking would be less than or equal to loads experienced by those same members during road transportation, for which the EHU was designed.  Should this hypothesis prove to be correct, the jury would be justified in concluding (perhaps even obligated to conclude) that: (1) the actions of the installation contractor or subcontractor cannot have damaged the EHU as claimed by Plaintiff, and (2) those actions, therefore, cannot have caused the theorized but untested and unquantified increase in ambient formaldehyde gas in the EHU, as alleged by Plaintiff.

Dr. Osteraas carefully measured the loads experienced by the structural elements of the EHU during lifting and blocking in accordance with the protocol for joint testing of the Wright EHU.[9]  These tests, while telling in their own right, provided only a baseline for examination of Shaw's hypothesis, *i.e.*, that any loads experienced by structural members of the EHU during the process of lifting and blocking were within the parameters for which the trailer was designed. To complete testing of this hypothesis, Shaw purchased an EHU nearly identical to the unit at issue in this matter.  Dr. Osteraas then outfitted this exemplar unit with instrumentation sufficient to collect real-time data and towed the unit over a distance of more than 750 miles.  This real world test resulted in approximately 10,800,000 readings which, when subjected to proper analysis, proved Shaw's hypothesis to be true.   Indeed, Dr. Osteraas has concluded that

---

[8] *See* Plaintiff's Memo in Support, Rec. Doc. 11384 at p. 4.

[9] Osteraas Report at pp. 5-10 (SWE-000095-99) and Appendix C thereto.

"[s]tresses sustained by the trailer during over-the-road transport are comparable in magnitude and far exceed in frequency those sustained during installation in accord with FEMA requirements."[10]   This easily understood conclusion is, of course, absolutely essential to the jury's understanding of the truth of matters asserted by Plaintiff.   Thus, this conclusion is also essential to Shaw's defense and the jury's ability to correctly decide this matter.

Plaintiff asks the Court to suppress this relevant important information and to keep it away from the jury.   Given the implications of Dr. Osteraas' conclusions, Plaintiff's reasons are as obvious as they are understandable.   Having been presented with this information, a jury that finds Dr. Osteraas to be a credible witness cannot also find that Plaintiff's jacking theory is credible.

### III.   Testing of the Wright Unit.

Plaintiff seeks to cloak his argument with the authority of this Court by claiming that Dr. Osteraas' testing of another unit violates this Court's June 30, 2009 Order (R. Doc. 2009) (the "Order"), which governed the testing of the Wright unit.   Therefore, the context of that Order is important.   In response to motions by the parties, and in recognition of the plain fact that all of the trailers at issue in this MDL are federal property, the Court balanced the parties' needs against the fact that there had been prior formaldehyde testing in this trailer and the government's property interests by allowing certain testing of the Wright unit.   Moreover, the Court allowed destructive testing of the Wright unit, so that there would be one bellwether trial in which the trailer at issue had actually been disassembled.

---

[10] Osteraas Report, p. 19, Conclusion number 4 (SWE-000108) and Appendix D (SWE-000143-154) thereto.

Not one word of the June 30, 2009 Order suggests that it is a limitation of any other testing that the parties might perform.  Indeed, none of the considerations that underlie the Order are even applicable to the testing of an exemplar trailer.  Certainly, the Order did not set out that it was a limitation on Shaw's ability to defend itself by testing the science (or lack thereof) behind Plaintiff's theories.

## LAW AND ARGUMENT

**I.      Dr. Osteraas' Conclusions Are Logically Derived, Clearly Stated, and Highly Probative.**

In support of his motion, Plaintiff sets forth two arguments.  He first appears to argue, without explanation, that while testimony regarding the exemplar unit is relevant, its probative value is somehow outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay.[11]  Plaintiff does not explain this argument and Shaw is, therefore, unable to address any specific concerns that Plaintiff might have.  In support of his motion, Plaintiff cites, again without explanation, the case of *U.S. v. Connelly*, 874 F.2d 412 (7th Cir. 1989).  In *Connelly*, a criminal matter, the U.S. Seventh Circuit held that details surrounding a previous crime (home invasion) were sufficiently similar to the crime at issue (armed robbery) that details of the previous crime were admissible to show the identity of Mr. Connelly.  In effect, the court ruled that details of the exemplar crime were sufficiently probative and not unduly prejudicial or confusing.  As noted by the *Connelly* court, "[e]vidence is considered unfairly prejudicial, not merely because it damages the opposing

---

[11] *See* Plaintiff's Memo in Support, Rec. Doc. 11384 at p. 3.

party's case, but its admission makes it likely that the jury will be induced to decide the case on an improper basis …" *Id.* at 418.

As explained above, Dr. Osteraas' conclusions regarding the testing of the exemplar trailer are logically derived, clearly stated, of great probative value, and indispensable to Shaw's defense. Indeed, the use of the exemplar not only does not suggest an improper basis to the jury; to the contrary, it employs science to ensure that Plaintiff cannot simply argue that jacking breaks seams without proving that this occurred. It is Plaintiff who wishes that the jury would decide the case on the basis of argument rather than evidence, and Dr. Osteraas' testing will refute that attempt.

Further, any confusion that might exist in Plaintiff's mind about the methods that Dr. Osteraas employed should have been addressed during the deposition of Dr. Osteraas.[12] Plaintiff chose not to ask Dr. Osteraas a single question about his testing of the exemplar trailer during his deposition. Having thus failed to question Dr. Osteraas about the exemplar – whether for tactical reasons or otherwise – Plaintiff cannot now be heard to complain that he has been prejudiced by "not being able to do a comparative stud[y] of all testing performed" or not being "allowed to replicate [Dr. Osteraas'] testing."[13]

## II.   Plaintiff is Not Entitled to Participate in The Preparation of Shaw's Defense.

Plaintiff's second argument appears to be that any and all testing conducted by Dr. Osteraas is subject to the rules set forth by this Honorable Court for the combined testing of the

---

[12] A copy of the transcript of the December 16, 2009 deposition of Dr. Osteraas is attached hereto as Exhibit "B." Although Plaintiff had over one month to formulate questions related to Dr. Osteraas' Report, and although Dr. Osteraas specifically mentioned the exemplar testing during his deposition (see p.51 line 13), Plaintiff did not inquire as to Dr. Osteraas' methodology or his conclusions related to the exemplar unit.

[13] Plaintiff's Memo in Support, Rec. Doc. 11384 at pp. 5 and 6.

Wright trailer.  Plaintiff essentially argues that all experimentation in this matter must be conducted jointly and that he should have some participation in the design and conduct of Shaw's defense.[14]  Simple logic and a plain reading of the Order reveals that this argument is also without merit.

Plaintiff assumes, without reason, that because the Court ordered that the defense be allowed access to the Wright EHU during and after the PSC's retest of that unit,[15] the Court would also mandate joint testing of a trailer privately purchased and tested by Shaw as part of its defense in this matter.  Plaintiff has no basis to draw such a conclusion.  To the contrary, the Court's Order, generated because of the need for coordinated access to the unit at issue, limits its own applicability to "the Wright housing unit."[16]

If, however, as part of its defense, Shaw wanted to compare the forces involved in jacking to transportation loads in a scientific manner, an exemplar trailer was its only option.  There simply was no way to perform meaningful road testing on the Wright unit itself as it sat in a field in Melville, Louisiana.  If the truth that transportation loads are greater than jacking was to be analyzed scientifically and presented to the jury, it would have to be done through an exemplar, and that is exactly what Shaw has done.  Exemplar testing is a commonly used method of supporting probative expert testimony.  *See*, *e.g.*, *Scordill v. Louisville Ladder Group*, 2004

---

[14] Shaw would note, however, that Plaintiff does not extend his view so far as to advocate defendant's participation in plaintiff's experimentation.  The report of plaintiff's expert Paul Hewett Ph.D, CIH, for example, is a collection of test results from other units and a statistical analysis thereof.  Shaw had no opportunity to participate in that testing and does not presently claim any right to such participation.

[15] *See* Rec. Doc. 2009.

[16] *See* Rec. Doc. 2009, p.2 at ¶ 1 (Defendants [and their experts] shall be allowed complete access to **the Wright housing unit** to perform comparative studies relating to any and all testing performed by the PSC.) (emphasis added).

WL 307475 (E.D. La. 2004) (expert testimony regarding testing of exemplar ladder was admissible).[17]

Further, Shaw respectfully submits that Plaintiff's position is disingenuous. Plaintiff admits that it had knowledge of the exemplar unit on November 2, 2009, when it received Dr. Osteraas' original expert Report.[18] Despite this knowledge, and with three months left in the discovery period, Plaintiff never even asked to be allowed access to the exemplar unit. Indeed, prior to expiration of the expert report period in this matter, Plaintiff was free to purchase his own exemplar unit and to conduct testing on that unit as he wished. Plaintiff cannot sit on his discovery rights for three months and now, having squandered his opportunity to conduct appropriate experimentation or to meaningfully question Dr. Osteraas, claim foul play.

### III.   Plaintiff Is Using Data Collected by His Experts Without Defense Participation.

It should not be overlooked that Plaintiff also has tested other trailers, without any of the contractor defendants being present or even aware that this was occurring, and seeks to present the results of those tests to the jury. PSC experts Bill Scott and Mary DeVany, as well as others, collected data from many trailers, before the contractor defendants were added to the MDL in January 2009. Now, PSC expert Paul Hewett is using those data to present analyses of the data that were collected. Plaintiff's argument is contrary to his own methods of presenting this case, and it should not be permitted.

---

[17] Not surprisingly, Shaw's research does not reveal any case where a party argues that it should have been allowed to participate in exemplar testing performed by an opposing expert.

[18] See Plaintiff's Memo in Support, Rec. Doc. 11384 at p. 3. (On November 2, 2009, Plaintiff received the expert report of Defense Expert John Osteraas who was retained by Shaw. ... The report contained a section of exemplar testing ...)

## CONCLUSION

Plaintiff, asks this Court to exclude admittedly relevant evidence gathered, analyzed, and reported by Dr. Osteraas.  Plaintiff does not dispute Dr. Osteraas' expertise, his methods, or even his conclusions.  Rather, Plaintiff complains, without explanation, that this relevant evidence might somehow be unduly prejudicial.  In contrast to Plaintiff's unfounded request, Shaw respectfully avers that conclusions drawn by Dr. Osteraas relative to the exemplar trailer are highly relevant, essential to Shaw's defense, and critical to the jury's understanding of the truth of Plaintiff's allegations.

Plaintiff also alleges, without citation to any authority, that he should have been allowed to participate in Dr. Osteraas' expert examination and experimentation related to the exemplar trailer.  This Court ordered no such amalgamation of opposing experts' analyses, and Plaintiff has no right to influence or participate in the conduct of Shaw's defense.  For all the foregoing reasons, Shaw respectfully requests that the Court deny Plaintiff's Motion in Limine to Prohibit References to an Exemplar Trailer.

Respectfully submitted,

**BAKER DONELSON BEARMAN**
**CALDWELL & BERKOWITZ, PC**


  /s/ M. David Kurtz
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000

**ATTORNEYS FOR DEFENDANT,**
**SHAW ENVIRONMENTAL, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2010, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.

<u>   /s/ M. David Kurtz                          </u>