UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE:   FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Lyndon T. Wright v. Forest River, Inc., et al* | * | |
| Docket No. 09-2977 | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S RESPONSE TO DEFENDANT SHAW ENVIRONMENTAL INC.'S MOTION IN LIMINE TO EXCLUDE THE EXPERT TESTIMONY OF PAUL HEWETT, PH.D.**

Plaintiff, Lyndon Wright, files this Response to Shaw Environmental Inc.'s Motion to Exclude Expert Testimony of Paul Hewett, Ph.D.

**I.
BACKGROUND**

Defendant Shaw Environmental, Inc. ("Shaw") filed a Motion to Exclude the Testimony of Paul Hewett on several different issues. At best, Shaw's Motion and Memorandum shows a basic misunderstanding of statistical concepts, and at worst, Shaw's Motion shows a purposeful attempt to mislead the Court. Defendant does not dispute Dr. Hewett's qualifications to render the opinions he has set forth. At one point

1

Shaw even concedes the correctness of Dr. Hewett's calculations, but rather argues that he does not use or analyze the data properly. Defendant's Memorandum, p. 11. As will be seen below each of Shaw's criticisms is without merit.

## II.
## SPECIFIC ALLEGATIONS

**A.   The NIOSH and ATSDR Levels are Reasonable Comparative Levels for Hewett's Analysis**

In his analysis, Dr. Hewett calculates the percentage of Forest River travel trailers that are above the NIOSH (0.016 ppm) and ATSDR chronic (0.008 ppm) levels for formaldehyde. Shaw criticizes Dr. Hewett for this analysis saying he used "only the two lowest 'standards.'" Memorandum p. 3. Defendant goes on to state that Dr. Hewett could have used the HUD target levels of .2 ppm and .3 ppm. This criticism is misleading and confuses the issues for a number of reasons. First, the United States Department of Housing and Urban Development (HUD) never set a target level of .2 ppm or .3 ppm for ambient air in travel trailers or manufactured housing. Second, instead of passing ambient air levels, HUD passed product standards that govern the amount of formaldehyde a given piece of wood product could emit in a chamber over a given period of time. Third, the HUD standards do not apply to travel trailers, they apply to manufactured housing. Fourth, the HUD standards also required mechanical ventilation, something these travel trailers did not have. The requirement of

2

mechanical ventilation systems was designed to specifically address the buildup of toxic gases such as formaldehyde in manufactured houses. Mechanical ventilation systems reduce the buildup of formaldehyde in the unit by forcing fresh air into the unit and thereby dispersing the formaldehyde.

However, Shaw's criticism in this regard is especially disingenuous in that the NIOSH level Dr. Hewett used as a comparative, 0.16 ppm, is the same level as the new FEMA standard for travel trailers. To say that using a standard preexisting standard that is equivalent to the currently existing FEMA standard for formaldehyde in travel trailers is improper is without merit.

The criticism of Dr. Hewett using Agency for Toxic Substances and Disease Registry (ATSDR) chronic level for formaldehyde of 0.008 ppm is duplicitous. The ATSDR sets the minimum risk levels for acute, medium and chronic (longer than 365 days) exposures to formaldehyde. It was only natural for Dr. Hewett to use ATDSR's the chronic exposure level of 0.008 ppm which equates with exposures of 365 days or more, as Lyndon Wright lived in the travel trailer for over two years. Defendant's criticism of Dr. Hewett's comparative analysis is without merit

**B.     DeVany Data is not from a Statistically Different Data Set**

Shaw criticizes Hewett for not analyzing the DeVany data to see whether it "came from a statistically different population." Defendant's Memorandum, p. 6. At

3

the time Dr. Hewett prepared his report and at the time he was deposed, did not think it was necessary to do the analysis to determine if the DeVany was statistically different from the other data sets.  Since he was asked about it during his deposition, he went back and did the analysis after his deposition.  He included his findings on the data comparison in his Supplemental Report. Exhibit 1.   By doing analysis of variance multiple comparison tests and Tukey's Honestly-Significant-Difference tests, Dr. Hewett determined that the DeVany data was not statistically different from the other data sets.  Exhibit 1, p. 12 and Appendix 9.1.  Therefore, this criticism is without merit and even sanctionable as Defendant had this additional analysis *before* they filed their Motion.

**C.    The DeVany Data Are Reliable**

Shaw implies in some way that the DeVany data are not reliable.  Defendant's Memorandum, p. 10.  However, they do not point out any errors in the data.  This criticism is without merit.

**D.    The DeVany Data are Relevant**

Shaw claims that the DeVany data in some way are not relevant to the analysis in this case as they came from unoccupied travel trailers and the "only conceivable relevant point that could be made" is the average formaldehyde concentration of occupied travel trailers. Defendant's Memorandum, p. 11.  Shaw again misapprehends

4

or purposefully misconstrues Dr. Hewett's analysis.  This error on behalf of Shaw is even more egregious, given that Dr. Hewett specifically testified about the relevance of the unoccupied data during his December 2, 2009, deposition. Dr. Hewett does not claim that the DeVany measurements have the same predictive value as measurements collected in occupied trailers and in fact acknowledges a difference in his September 26, 2009 Report: [1]

> The DeVany consultants data were collected primarily from currently unoccupied THU's or from THU's that had never been occupied, and strongly suggest that the THU's, even several years after manufacture, continue to produce levels of formaldehyde well above the ATSDR and NIOSH limits. (Hewett Report, Exhibit 2, p.14, paragraph 4)

The probative value of this dataset, and Dr. Hewett's statistics, graphs, and statements (such as that above), should be left to the jury to decide.  Furthermore, Dr. Hewett clearly summarized the value of this dataset in his December 2009 deposition when he testified:

> The DeVany Industrial Consultants data, while they are less predictive of exposures and concentrations in occupied trailers, they are nonetheless -- they nonetheless represent extremely valuable data, in my mind, regarding the potential for these units to release formaldehyde.
>   The fact is years after manufacture, these units are still releasing a tremendous amount of formaldehyde that cannot in any way, shape or form be attributed to individuals, individual behavior, smoking, cooking, dogs, anything else.  The units generate formaldehyde." Hewett Deposition, Exhibit 3, p.232-233

---

[1] Defendant Shaw refers to this report as the October 1, 2009 Report or simply as the "Report". Defendant's Memorandum, p. 2.

5

As Dr. Hewett testified, the DeVany data show that the trailers continue to generate formaldehyde that cannot be attributed to individuals or lifestyles.

The DeVany data also suggest the levels that one would expect to experience when returning to a trailer unit after it had been sealed up or shut in. These conditions bear a resemblance of what occurred with Lyndon Wright. While he was living in the trailer, Lyndon Wright was working long hours and he left it sealed up with the windows closed. From October 2005 until December 2006, or January 2007 Lyndon was working twelve hour shifts, seven days a week for the City of New Orleans. Exhibit 4, p. 78, l. 1-10. From January to July 2007, he worked 40 hours a week for the City of New Orleans, but then in July 2007, he went to work for Hyatt and was holding down two full-time jobs. Exhibit 4, p. 75, l. 10 – p. 76, l. 9 & p. 79, l. 6-8. During this time frame he worked 40 hours week for the Hyatt and 40 hours a week for the City of New Orleans. Exhibit 4, p. 75, l. 10 – p. 76, l. 9. When he left the trailer, he typically would close all the windows. Exhibit 4, p. 128, l. 5-9. Furthermore, it was his practice to turn off the air conditioner when he left the trailer. Exhibit 4, p. 127, l. 16 – 22. Therefore, the data on "unoccupied travel trailers" bears a resemblance to the conditions that actually existed when Lyndon Wright would come back to his trailer on a daily basis after work as he

would leave the trailer sealed up and when he would come back it was very hot.[2]

E.   Shaw Criticizes Hewett on the Use of the DeVany Data

Shaw states that the DeVany Data comprise a majority of the data set upon which Hewett relies. Memorandum, p. 10.  This is another criticism which misconstrues or purposefully misleads the Court on the nature of Dr. Hewett's analysis.  Dr. Hewett examined data from nine different data sets. The DeVany Data set, was just one of the nine data sets. The DeVany data set showed that 99.6% of the Forest River Travel trailers had formaldehyde levels above the NIOSH level of 0.016 ppm.  The other data sets were the Boston Chemical Data which showed that 100% of the Forest River trailers had formaldehyde levels above the NIOSH level of 0.016 ppm; the Bureau Veritas data which showed that 90.7% of the Forest River trailers had formaldehyde levels above the NIOSH level of 0.016 ppm; the FEMA CDC data set which showed that 100% of the Forest River trailers had formaldehyde levels above the NIOSH level of 0.016 ppm; the Occupant data which showed that 96.7% of the Forest River trailers had formaldehyde levels above the NIOSH level of 0.016 ppm; the Sierra Club data which showed that 100% of the Forest River trailers had formaldehyde levels above the NIOSH level of 0.016 ppm; the Technical Environmental Services data which showed that 96.8% of the Forest River trailers had formaldehyde levels above the NIOSH level of 0.016 ppm; the

---

[2] The trailer was so hot that when he came back that he would set the thermostat to 60 to cool it down and once it cooled off he would set the thermostat to 75-80 F.  Exhibit 4, p. 127, l. 4 – 11.  Plaintiff would note that when Bobbie Wright, Lyndon Wright's mother visited, she would crack the windows open.

Texas Parks and Wildlife data which showed that the 100% of the Forest River trailers had formaldehyde levels above the NIOSH level of 0.016 ppm; and, the W.D. Scott data which showed that 100% of the Forest River Travel trailers had formaldehyde levels above the NIOSH level of 0.016 ppm.  Exhibit 2, Table 4, in Hewett Report, p. 22.  It is obvious *that no matter which data set one uses, a vast majority of the Forest River travel trailers are over the NIOSH level of 0.016 ppm*.  Similar but higher percentages are found with respect to the 0.008 ppm chronic formaldehyde exposure limit established by the ATSDR.  Exhibit 2, Table 4, in Hewett Report, p. 22.  Shaw's criticism is without merit.

**F.     Shaw's Criticism of Using the Devany Data in Averages is Without Merit**

Shaw states that Dr. Hewett's calculations of the average formaldehyde concentrations were "inflated due to use of data supplied by DeVany" as DeVany data were from unoccupied trailers.  Defendant's Memorandum, p. 10-11.  Dr. Hewett does calculate an average formaldehyde level for all Forest River travel trailers, but he also calculates *individual formaldehyde averages for Forest River travel trailers for each of the nine data sets*.  Exhibit 2, Table 6, page 23.  These eight other averages for the other eight data sets, by definition cannot be "inflated" as they did not contain the DeVany data.

**G.     Combining DeVany Data on Unoccupied Trailers with Data on Occupied Trailers**

Shaw criticizes Dr. Hewett for combining the DeVany data, which is on unoccupied trailers, with data from data sets on occupied trailers.  There are summary

8

statistics for all the data sets combined, but *there are also individual statistics for averages for each of the nine data sets, seven of which are for occupied travel trailers*.  The only data sets that were all or primarily from unoccupied travel trailers were the DeVany data set and the Boston Chemical Data data set.  The other seven data sets, Bureau Veritas, FEMA CDC, Occupant, Sierra Club, Technical Environmental Services, Texas Parks and Wildlife, and W.D. Scott are from occupied trailers, and as shown in the Report and in the previous Section, all these occupied data sets show that between 100% and 95.4% of the Forest River travel trailers had formaldehyde levels that exceeded the ATSDR chronic level for formaldehyde of 0.008 ppm, and 90.7% to 100% exceeded the NIOSH level of 0.016 ppm.  See Table 4, p. 23, Exhibit 2.  Likewise, individual averages are calculated for the formaldehyde levels in the travel trailers in these other data sets.  Furthermore, as seen in Section D, above, unoccupied data are relevant to issues in this case.  Defendant's criticism is without merit.

**H.     Seasonal Pattern**

Shaw challenges Dr. Hewett's ability to render an opinion that there appears to be a "cyclic pattern showing a relationship between formaldehyde concentration and season, but rather than form his own opinion he merely repeats what the CDC" said.  Defendant's Memorandum, p. 3 & 11. This criticism is a *non sequitor* and misses the point of Dr. Hewett's analysis.  Dr. Hewett reports his data in a series of figures and

9

tables. Exhibit 2. Figures 4 and 5 show a clear seasonal variation in formaldehyde levels with the higher levels occurring in the summer months and lower levels occurring in the winter months. See Exhibit 2, p. 26. Dr. Hewett should clearly be entitled to testify to what his data show and what government agencies such as the CDC have found on this issue.

I.      **Formaldehyde Levels Decline with Age of Trailer**

Defendants allege that Dr. Hewett should not be allowed to testify that formaldehyde levels decline with the age of the trailer. Defendant's criticism is misguided. The analysis of the Bureau Veritas and Combined Bureau Veritas FEMA CDC data sets showed a statistically significant relationship for the equation containing the variables of THU age, Temperature, Relative Humidity, Windows Open, and the presence of Mold. See Exhibit 2, Table, 9, page 24. However not all of the individual variables in the equation were statistically significant. This may be due to multicollinearity which masks the importance of certain variables.

However, Shaw ignores that the statistical model used by Dr. Hewett is virtually identical to that used by the United States Centers for Disease Control (CDC, 2008) and the ATSDR (2007), with the exception that age of the trailer unit at the time of sampling were included. By adding age to the CDC and ATSDR statistical models Dr. Hewett made the model consistent with the well-known exponential decay curve models used

by others to describe the decline in formaldehyde levels as function of time as can be seen from the following testimony of Dr. Hewett:

> Q   Okay.  Is there any difference between what you did in your report, Exhibit 2, as far as the regression analysis is concerned and exponential decay curve analysis?
> A   Actually, they're the same.
> Q   That is what you did in your report?
> A   That's what I did.
> Q   Okay.
> A   I added more variables.  I mean, strict exponential decay analysis is a situation where you're taking concentration and making it a function of time.  Now, we have that here.  In effect, that exponential decay curve is the cornerstone model used in so many of the papers one sees in the literature on formaldehyde decay from wood products and in trailers and so on and so forth.  In fact, I have a few citations in a paper regarding that.
> (p.105;  Hewett Deposition, Exhibit 3)

While it is true that majority of the model coefficients, including that for trailer age, were not statistically significant, this is less a reflection of the adequacy of the model, and more a reflection on the quantity and spread of the data.  For example, formaldehyde data were not available for the early years of trailer use, making it mathematically difficult to estimate a "statistically significant" age decay coefficient. However, the decay coefficient estimate was negative, as expected, and similar to values reported by the CDC, in the literature, and as acknowledged by Defendant Forest River's experts that the amount of formaldehyde in these travel trailers decreases over time.  The statistical model is not being offered as a means to calculate the exact concentration for a specific trailer, on a specific day, under a specific set of age,

11

temperature, and humidity conditions. It is being offered to show the expected differences in formaldehyde levels for trailers at different ages. Dr. Hewett should be allowed to testify what his data show and to testify that others who have conducted similar analysis have reported.

**J.     Estimating Formaldehyde Levels**

Shaw states, Section 5.4 of the Report and Table 8, develop a formula for estimating the formaldehyde levels in a trailer when certain information is known or assumed about a trailer. Defendant's Memorandum, p. 13. Shaw goes on to state if the variables were plugged into the formula with the windows closed for the Wright trailer, they would "predict" a concentration of .255 ppm, which his five times higher than the actual concentration of "0.048". Defendant's Memorandum, p. 13. Shaw's criticism is without merit and misleading. Dr. Hewett is not offering the model to exactly predict the level of formaldehyde in a given travel trailer. The model predicts the central tendency (in this case median or geometric mean) of the formaldehyde concentrations, for any particular combination of model variables, such as trailer age, temperature, and relative humidity. Shaw claims that the model is inaccurate simply because it did not predict exactly a measurement collected by their consultant. No model can predict the specific true concentration of formaldehyde for any specific combination of explanatory variables, nor does Dr. Hewett claim this to be case. The model permits the calculation

12

of the "prediction interval", which is discussed on Sections 4.3 and 5.3 of the Report. The concept of a prediction interval - which is related to the "standard error of the forecast" and is a concept discussed in the Federal Judicial Center (2000) *Reference Manual on Scientific Evidence* (pp.219-221). The concept of a prediction interval it is well known in statistics and is used to predict the range in which one is highly confident that the majority of actual values will fall.

Moreover, had the defendants used one of their experts to calculate the prediction interval for the specific conditions at the time of sampling, no doubt it would have contained the measurement collected by their consultant. Instead, Shaw complains that the model did not *exactly* predict the measurement. No model can exactly predict measured concentrations, and Dr. Hewett's model is not being offered as a means to do so as Defendant alleges. It is being offered as a means to estimate formaldehyde concentrations for trailers newer than those sampled.

## V.
## PRAYER

For the reasons stated in this Response, Plaintiff respectfully requests that the Court deny Defendant's Motion *in Limine* as set forth above.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE**
**PRODUCT LIABILITY LITIGATION**

    BY: s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone: 504/522-2304
       Facsimile: 504/528-9973
       gmeunier@gainsben.com

       s/Justin I. Woods
       JUSTIN I. WOODS, #24713
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone: 504/522-2304
       Facsimile: 504/528-9973
       jwoods@gainsben.com

       **COURT-APPOINTED PLAINTIFFS'
       STEERING COMMITTEE**
       ANTHONY BUZBEE, Texas # 24001820
       ROBERT BECNEL, #14072
       RAUL BENCOMO, #2932
       FRANK D'AMICO, #17519
       MATT MORELAND, #24567
       LINDA NELSON, #9938
       DENNIS REICH, Texas #16739600
       MIKAL WATTS, Texas # 20981820

## **CERTIFICATE OF SERVICE**

   I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record as indicated below in accordance with the Federal Rules

of Civil Procedure on 18th day of February 2010.

                                              /s/Gerald E. Meunier
                                              GERALD E. MEUNIER