UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 |
| | | * | SECTION: N(5) |
| This Document Relates to: *Lyndon T. Wright. v. Forest River, Inc., et al*, Docket No. 09-2977 | | * * * | JUDGE ENGELHARDT: |
| | | * | MAG: CHASEZ |

******************************************************************************

**REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT FOREST RIVER INC.'S MOTION FOR SUMMARY JUDGMENT AS TO THE <u>GOVERNMENT CONTRACTOR DEFENSE</u>**

**MAY IT PLEASE THE COURT**

In his response to Forest River's Motion for Summary Judgment on the Government Contractor Defense, plaintiff Lyndon Wright alleges that Forest River is not a government contractor, that it cannot establish that the government approved reasonably precise specifications, and that factual issues exist with regard to whether Forest River warned the government of those dangers of which it was aware. As is detailed below, these contentions lack merit, and thus Forest River is entitled to summary judgment as a matter of law.

**I.     Forest River is a government contractor**

Plaintiff argues that Forest River is not a government contractor because the government does not have a direct contract with Forest River, and, therefore, the "government's rights and interests are not involved." Rec. Doc. 11541, p. 6. This argument ignores the realities of the facts of this case, as the government clearly has an intimate interest in providing shelter to its citizens following

a natural disaster as part of its police power.  Plaintiff cannot legitimately argue that the federal government's interests are not at issue with respect to Forest River merely because Forest River sold the trailers through an intermediary such as NACS.  FEMA and Forest River, not NACS, worked together to design these units, and the price of these units set by Forest River in its bid to NACS was essentially the same as the price NACS charged to FEMA.  2008 Gaeddert depo, p. 149, attached as Ex. A.  The costs and design of the trailers supplied to the government clearly implicate the government's rights and interests.  Forest River again points out that the policies of *Boyle* – discouraging the costs of liability from being built into the price of products supplied to the government – necessitate that the defense apply to subcontractors as well and has cited cases to that effect.

Plaintiff then argues that Forest River is not a subcontractor, but rather a vendor.  This argument is inaccurate and misleading, as it implies that Forest River was selling ready-made trailers to the government.  This is clearly not the case.  Forest River specially designed this unit to meet the FEMA specs precisely because it did not have a unit that could be retrofitted to comply with these specs.  *See* Ex. B, Deposition of J. Albrecht, dated 1/20/10, p. 21-22.  Forest River even built a prototype of this unit which was inspected by FEMA personnel. *Id.* at 30-31.  Every FEMA-spec trailer was manufactured from start to finish to comply with the FEMA specs.

Additionally, plaintiff points to Doug Gaeddert's deposition testimony that Forest River did not have to alter its production schedule to assemble the EHUs.  However, this mischaracterizes his testimony.  Gaeddert was testifying that these units were manufactured at the same rate as other trailers, *i.e.,* Forest River was not hastily assembling these unit.  In fact, Forest River halted production of all other types of trailers for four weeks in order to produce these FEMA-specific units.

*See* 2008 Gaeddert depo, p. 152, attached as Ex. A.  In any event, plaintiff's focus on Forest River's production schedule is a red herring, as it has no bearing on whether Forest River should be entitled to government contractor immunity as subcontractor.

## II.     The government approved reasonably precise specifications

Plaintiff contends that the FEMA specifications were not "reasonably precise." These contentions lack merit.  Plaintiff repeatedly mentions that these specifications were only four pages long.  *See* Rec. Doc. 11541, p. 9.  Forest River points out that, regardless of page length, these specifications were comprehensive and thorough, as was the inspection of the prototype.  Plaintiff himself even admits in his response that these four pages contained a "fair amount of detail." *Id*. Plaintiff also likens the specifications to options on a vehicle, as if the FEMA specs were no more than choosing the color of a car or the type of trim used in the interior.  However, plaintiff's argument completely ignores the fact that the Forest River FEMA spec unit was a unique floor plan/design that was specifically tailored to incorporate FEMA's requirements.  Again, Forest River was not retrofitting any previously manufactured trailers but constructing each of these units to FEMA's design requirements.

Plaintiff also incorrectly argues that Forest River's government contractor defense fails because the FEMA procurement specification does not specifically address formaldehyde levels. The Fifth Circuit has held that the specifications need not address the specific defect alleged; the government need only evaluate the design feature in question.  *Kersetter v. Pac. Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000).  The FEMA procurement specifications meet this qualification because they mandate that the units must meet the industry standards in all respects.  Plaintiff cannot dispute that the industry standard includes the use of composite wood products, which of course is

the design feature in question. Because these specifications touch upon industry-standard composite wood products and state that the supplier cannot deviate from that direction, the trailer specifications clearly evaluate the design feature in question.

Additionally, FEMA evaluated and approved the Forest River prototype and thereby evaluated the design feature in question. Plaintiff attempts to characterize Dave Porter's visit to Forest River's plant as a "rubber stamp." Again, Forest River notes that this visit was for the specific purpose of evaluating the prototype trailer designed for FEMA disaster response efforts. FEMA did not simply begin accepting trailers from Forest River without review – it sent a top official to review the prototype prepared. Porter had a meaningful opportunity to view the prototype, inspect any materials, observe/inspect the production process and meet with plant personnel.[1] Additionally, Forest River suggested alternate designs to Porter – designs which were ultimately incorporated into the FEMA specs. This interaction was exactly the type of "back-and-forth" participation that Forest River noted in *Ramey v. Martin-Baker Aircraft Co.*, 656 F.Supp 984 (D. Md. 1987) (finding that the "reasonably precise" specifications requirement of the government contractor defense had been met where Navy had an opportunity to review a mock-up of an aircraft and approved the design). Thus, this review rose above the level of a "rubber stamp."

Forest River has established as a matter of law that it complied with reasonably precise government specifications and is therefore entitled to summary judgment under the government contractor defense.

---

[1] Plaintiff emphasizes that this visit took place in only three hours. However, there is no evidence that Porter's visit was somehow inadequate, or that Porter was not afforded a meaningful opportunity to review the prototype further.

### III. No factual disputes exist as to the failure to warn claim

As his final argument, plaintiff alleges that factual disputes exist as to whether Forest River warned FEMA as to those dangers known to the manufacturer but not the government. Even if one assumes that the presence of such low-levels of formaldehyde constitutes a "danger," a point which Forest River denies, the contractor only has a duty to inform of the **dangers it actually knows about, not should have known about**. *Kerstetter*, 210 F. 3d at 436. Again, Forest River had **no health complaints** related to formaldehyde prior to this litigation, despite manufacturing nearly one million trailers. Thus, Forest River had no actual knowledge of any potential health hazards. The fact that Forest River's Owner's Manual contained a formaldehyde warning is not evidence that it knew of any health complaints directed at the company. The warning was a precautionary measure, not an admission of knowledge regarding its knowledge of health complaints related to formaldehyde. Nevertheless, the statement was provided to FEMA with each unit.

Forest River provided a copy of its owner's manual, which contained a formaldehyde warning, with every trailer to FEMA – giving FEMA knowledge at least equal to that of Forest River. FEMA personnel were also aware that formaldehyde was present inside the trailers[2], and at least had constructive knowledge of the health hazards related to formaldehyde via the HUD regulations on same. *See U.S. ex rel. Finney v. Nextwave Telecom, Inc.*, 337 B.R. 479, 487 (S.D.N.Y., 2006) (noting that the federal legislature which enacted the law, the federal agencies which enforce the law, and the federal courts which apply the law are all charged with knowledge of the statute).

---

[2] *See* Deposition of Martin McNeese, dated 7/14.09, p. 108, attached as Ex. M to Forest River's original motion.

Even presuming there were a fact issue as to Forest River's actual knowledge of any alleged health hazards, it is clear that FEMA knew as much or more than Forest River and, thus, Forest River is entitled to judgment as a matter of law.

## CONCLUSION

In light of the above and foregoing, Forest River has satisfied each element necessary to establish its immunity as a government contractor defense, insofar as the uncontested facts establish that the United States, through FEMA, approved reasonably precise specifications for the production of EHU's, that Forest River complied with those specifications, and that the United States had equal or superior knowledge of the alleged "danger," if any, posed by the presence of formaldehyde. Accordingly, Forest River respectfully requests this Honorable Court enter summary judgment in its favor on all claims.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (No.6154)
JASON D. BONE (No. 28315)
CARSON W. STRICKLAND (No. 31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

**C E R T I F I C A T E**

I hereby certify that on the 19th day of February, 2010, a copy of the foregoing *Reply* was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone
JASON D. BONE