```
                                                                    1


 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3
       IN RE: FEMA TRAILER           *    MDL NO. 1873
 4            FORMALDEHYDE PRODUCTS  *
              LIABILITY LITIGATION   *    SECTION "N"(4)
 5                                   *
                                     *    JUDGE ENGELHARDT
 6                                   *
       * * * * * * * * * * * * * * *
 7

 8

 9            The 30(b)(6) videotaped deposition upon oral
10     examination of FOREST RIVER by DOUG GAEDDERT, a
11     witness produced and sworn before me, Patrice E.
12     Morrison, RMR, CRR, Notary Public in and for the
13     County of Marion, State of Indiana, taken on behalf of
14     the Plaintiffs at The Marriott, 123 North Saint Joseph
15     Street, South Bend, Indiana, on August 6, 2008, at
16     9:02 a.m., pursuant to the Federal Rules of Civil
17     Procedure.
18
19
20               STEWART RICHARDSON & ASSOCIATES
                 Registered Professional Reporters
21                      One Indiana Square
                           Suite 2425
22                  Indianapolis, IN  46204
                         (317)237-3773
23
24
25
```

```
 1        when you replaced that with low emission materials,
 2        the increased cost per unit was about $10.  Is that
 3        right?
 4   A    That's my best recollection.
 5   Q    Now, at the same time that you were manu- -- when
 6        you manufactured these 5000 units for FEMA, some of
 7        these were manufactured in Oregon and California
 8        where you were manufacturing using low emission
 9        materials, including low emission decorative
10        hardwood materials; right?
11   A    That's correct.
12   Q    Was there a cost differential in producing the
13        units out of California from a supply point of view
14        because you used the low emission materials versus
15        the Indiana facility?
16            MR. GIEGER:  Object to form.  Foundation.
17            If you know.
18   A    There would have been a cost difference borne by
19        us, because material costs are typically several
20        percent higher there anyhow.  The LFE would have
21        added additional cost.  We did not have a
22        difference in what we bid to NACS.  And to my
23        knowledge NACS sold everything to the Government at
24        the same price, so basically --
25   Q    You haven't broken down that difference in cost
```

```
1    Q   And when you took this action, you halted
2        production for your vendors, for other customers
3        and other persons for four weeks; is that right?
4    A   It varied by plant, but yes, we altered our
5        schedule and inserted these in place of our normal
6        customers, normal business.
7    Q   Why did you do that?
8    A   Well, we had -- we had an obligation, we felt
9        personal.  We had prior business relationships --
10       or prior business experiences with NACS in helping
11       with disaster relief.  Sometimes it might have been
12       tornadoes or a flood or -- obviously the Florida
13       hurricanes the prior year.  So we had an obligation
14       to try and help as quickly as we could, and we did
15       our best to balance it out with all our customers,
16       NACS and the folks that were displaced.
17   Q   And that's one of the great ways you came up with
18       the 5000 units that you were going to provide to
19       NACS; is that right?
20   A   Yes.
21   Q   Now, to the best of your knowledge -- do you
22       understand what blocking means, refers to?
23   A   Not football related, I'm assuming.
24   Q   No, no.
25   A   Yes.
```