UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873  SECTION: N(5) |
| This Document Relates to: *Lyndon T. Wright. v. Forest River, Inc., et al*, Docket No. 09-2977 | | * * * | JUDGE ENGELHARDT:  MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT FOREST RIVER INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE TO WARN CLAIM**

**MAY IT PLEASE THE COURT**

In his response to Forest River's Motion for Partial Summary Judgment on his inadequate warning claim, plaintiff Lyndon Wright raises several defenses: that FEMA was not a sophisticated user/purchaser of travel trailers, that Forest River's warning was not adequate, and that Forest River owed a continuing duty to warn. As is detailed below, these contentions lack merit, and Forest River is entitled to summary judgment as a matter of law.

I.  **FEMA is a Sophisticated Purchaser.**

Plaintiff first alleges that, because FEMA cannot be charged with the all of the knowledge of the United States government, FEMA is not a sophisticated purchaser. (*See* p. 4-6). However, plaintiff completely misconstrues and mischaracterizes Forest River's contentions. Forest River is not alleging that a FEMA is charged with knowledge of particular facts, but, rather, knowledge of the **laws** of the United States. Specifically, FEMA is charged with knowledge of the HUD

regulations regarding formaldehyde levels in manufactured housing. These regulations are published in the Code of Federal Regulations and are therefore available to all federal agencies. *See* 42 U.S.C. § 3280.308 & 3280.309. A well-known tenet of law is that citizens are presumed to know the laws of the municipality, state, and federal government. By analogy, when a regulation is published by an agency, other agencies, including FEMA, should be presumed to know that regulation just like ordinary citizens. The case of *U.S. ex rel. Finney v. Nextwave Telecom, Inc.*, cited previously by Forest River, stands for this proposition. *See* 337 B.R. 479, 487 (S.D.N.Y. 2006). The cases cited by plaintiff are all distinguishable as they stand for the proposition that knowledge of particular **facts** known by members of one agency cannot be imputed to other agencies.

Even assuming, *arguendo,* FEMA is not presumed to have knowledge of the other agency's regulations appearing in the Code of Federal Regulations, the fact remains that FEMA knew these trailers contained formaldehyde. Plaintiff selectively cites deposition testimony that refers to no knowledge of formaldehyde "complaints" and "health hazards" prior to 2006. *See* Rec. Doc. 11528, p. 8-9. However, as Martin McNeese, FEMA's Emergency Program Specialist at the time of Hurricane Katrina, stated, it was no surprise that the travel trailers contained that chemical. *See* deposition of Martin McNeese, dated 7/14/09, p. 108, attached as Ex. G to Forest River's motion. High-level FEMA personnel knew that these trailers contained formaldehyde prior to 2006 but still elected to utilize these trailers in disaster response efforts.

Further, the standard for a sophisticated user is not actual knowledge, but constructive knowledge. *See Mallery v. International Harvester Co.*, 690 So. 2d 765, 768 (La. App. 3. Cir. 1996) ("To be relieved of the duty to warn, the manufacturer need not show that the user had actual knowledge of the danger; the manufacturer need show only that the user should have known of the

danger."). In this case, FEMA clearly has constructive knowledge of the presence of formaldehyde due to its experience with travel trailers. FEMA has used travel trailers since 1992. It was FEMA who, in 2004, prepared the specifications for the Forest River units that were ultimately used for post-Katrina temporary housing. FEMA even inspected the Forest River plant and approved Forest River's trailer which was specially-designed for FEMA. Finally, FEMA had experience with these Forest River units, as it utilized eight hundred of these Forest River trailers in response to the 2004 Florida hurricanes.[1]

Plaintiff attempts to minimize Forest River's connections with FEMA by discussing that alleging that the only interaction with FEMA was Dave Porter's "three-hour inspection." Rec. Doc. 11528 p. 10-11. This characterization is misleading. Porter was given an extensive and meaningful opportunity to visit the plant, inspect/observe the production facilities and materials of construction, and meet with employees. There has been no suggestion that this visit was at all inadequate. Nor was there any suggestion that FEMA was precluded from returning to the Forest River plant. Porter was given ample opportunity to review the entire Forest River manufacturing process.

In fact, Dave Porter's inspection is a major reason this case is distinguishable from *Swope v. Columbian Chemicals Co.*, a case cited by plaintiff. *See* 281 F. 3d 185 (5th Cir. 2002). *Swope* involved claims related to hazardous exposure to ozone from an ozone generator. There, the Fifth Circuit noted that the sophisticated purchaser never had any occasion to delve into the intricacies of the generator's internal operation. *Id.* at 209-10. It was "undisputed" that the purchaser in *Swope*

---

[1] Plaintiff attempts to downplay the significance of FEMA's experience with Forest River trailers prior to Katrina response, noting that Forest River "**only** provided 800 trailers." *See* Rec. Doc. 11528, p. 12. This is a significant number of trailers, especially when one considers that Forest River was only tasked with producing 5,000 trailers in response to Katrina.

had never dismantled or performed major internal maintenance on the generators. *Id*. at 210. Additionally, the generator in question was the first generator of that kind bought by that purchaser. *Id*. at 209. Conversely, Dave Porter's inspection gave FEMA a step-by-step tour of the Forest River manufacturing process. Unlike in *Swope*, FEMA had knowledge of every step of the manufacturing process. Additionally, **FEMA had used eight hundred of this very same model in previous disaster relief efforts**. Thus, *Swope* is clearly distinguishable on its facts.

FEMA also demonstrated their status as a sophisticated purchaser in the way it handled complaints related to formaldehyde post-Katrina. FEMA enlisted the help of other federal agencies such as the EPA, CDC and the ATSDR to test and evaluate these trailers. FEMA handled all formaldehyde-related complaints. FEMA was proactive in distributing formaldehyde warning and notices to trailer residents. FEMA never contacted Forest River with regard to these problem. By taking complete ownership of the response effort, FEMA underscored its role as a sophisticated purchaser.

Finally, plaintiff argues that Forest River failed to show that North American Catastrophe Services ("NACS") was a sophisticated user. Rec. Doc. 11528, p. 12-14. Plaintiff appears to imply that, although a seller has no duty to warn the ultimate user when intermediate purchasers are knowledgeable, a seller must prove that **all** intermediate purchasers were knowledgeable. In support of this contention, plaintiff cites two cases – *Guidry v. Kem Manufacturing Co.*, 693 F. 2d 426 (5th Cir. 1982) and *Thibodaux v. McWane Cast Iron Pipe Co.*, 381 F. 2d 491, 495 (5th Cir. 1967).[2] The

---

[2]In fact, the entirety of the case law cited in this section of plaintiff's brief is pre-LPLA case law. One of these cases, *Chappuis v. Sears Roebuck & Co.*, has clearly been superseded by the LPLA. *See Hoerner v. ANCO Insulations, Inc.*, 812 So.2d 45, 59 (La. App. 4 Cir. 2002). ("This court has held that *Chappuis* has been legislatively overruled by the adoption of the Louisiana Products Liability Act ("LPLA"), LSA-R.S. 9:2800.52, 'which establishes exclusive

question of whether NACS was a sophisticated purchaser is not relevant, and, in any event, the cases cites by plaintiff do not stand for this principle at all.

For instance, *Guidry* dealt with a plaintiff who was injured after inadvertently mixed two drain cleaning solutions – Drano and Thermaken. 693 F. 2d at 428 (5th Cir. 1982). The Thermaken bottle contained a warning that plaintiff read and testified that he understood – that the product was not to be used with other drain chemicals. *Id.* at 429. In an action for contribution by Drano against Thermaken, the Fifth Circuit found that the warning label on the Thermaken was adequate as it told the plaintiff how to avoid the alleged dangers. *Guidry* does not stand for the proposition that NACS must be a sophisticated purchaser in order for FEMA to be classified as one.

Plaintiff's reliance on *Thibodaux v. McWane Cast Iron Pipe Co.* is also misplaced. 381 F. 2d 491, 492 (5th Cir. 1967). *Thibodeaux* dealt with a natural gas explosion due to a corroded pipe which was part of the city of Thibodaux's natural gas distribution system. *Id.* Plaintiff sued the pipe's manufacturer, who years earlier had received specifications for the pipe from the contractors hired by the city to design the city's distribution system and who manufactured cast iron pipe in accordance with those specifications. *Id.* Plaintiff argued that the manufacturer had a duty to warn the city or its engineers that the pipe would corrode at an unusually rapid rate. *Id.* at 493-4. The court found that the engineers who designed the pipe specifications for the natural gas system were familiar or chargeable with knowledge of the corrosion characteristics of the pipes. *Id.* at 495. This knowledge absolved the manufacturer of the duty to warn. *Id.* *Thibodaux* actually supports Forest River's position. Like the engineers in *Thibodeaux*, FEMA was familiar with the characteristics of the trailer, and therefore the manufacturer, Forest River, had no duty to warn.

---

theories of liability for manufacturers for damage caused by their products.'").

Again, plaintiff did not demonstrate – and Forest River cannot find – any requirement that it must prove that NACS is a sophisticated purchaser in order assert the sophisticated purchaser defense against FEMA. As plaintiff notes, "A seller has no duty to warn an **ultimate user** when intermediate **purchasers** are knowledgeable." Rec. Doc. 11528, p. 13 (emphasis added). Note that the word "purchasers" (plural) implies that this defense does not flow only to the initial purchaser of the product. Indeed, FEMA inspected this trailer and confirmed that it met their specifications. As FEMA prepared these specification, FEMA knew, or at the very least should have known, of any alleged unreasonably dangerous condition with this trailer.

Additionally, while NACS purchased the units, the testimony in this case is clear that all the parties knew that **FEMA**, not NACS, was going to be the ultimate purchaser of these units. The specifications for the trailers were developed by FEMA, not NACS, and called "FEMA specs," not "NACS specs." Forest River underwent the First Article Inspection with FEMA, not NACS, personnel. NACS was merely the intermediary who facilitated the interaction between the parties.

As such, FEMA is a sophisticated purchaser and Forest River is entitled to judgment as a matter of law.

**II.     Forest River's Warning was Adequate**

Plaintiff next alleges that Forest River's warning in its owner's manual was inadequate. Plaintiff cites the HUD standard for an example of an adequate warning.[3] *See* Rec. Doc. 11528, p.

---

[3] Forest River points out that, earlier in his Opposition to the MSJ, plaintiff argued that the United States was not charged with knowledge of the HUD regulations. However, he now asserts that Forest River's travel trailer manufacturing division should have knowledge of these regulations. The plaintiff "cannot have his cake and eat it too" and argue that (1) Forest River should incorporate the HUD warnings in its trailers while at the same time arguing that (2) FEMA should not be expected to be knowledgeable about these regulations.

15. However, with regard to the adequacy of the warning provided by Forest River's Owner's Manual, the Court need look no further than the testimony of plaintiff himself:

> Q. And if you had read in this owner's manual that "formaldehyde levels in indoor air can cause temporary eye and respiratory irritation and may aggravate respiratory conditions of allergies," what action would you have taken?
> A. I would have called my mom and told her to see about getting me to stay in a hotel or something.
> **Q. So if you had had that knowledge, if you had read that statement, you would have taken immediate action to move out of the trailer?**
> **A. Yes, I would have.**

Ex. A, Deposition of Wright, p. 329-330.

In other words, plaintiff was read the <u>direct language from the Forest River Owner's Manual</u>, and he acknowledged that he would have moved out of the trailer had he read it. As the testimony of plaintiff himself clearly evidences, this warning was entirely adequate. Thus, any contentions that the warning was somehow inadequate are without merit.

Plaintiff next complains that he never received the Owner's Manual. Rec. Doc. 11528, p. 16. Forest River points out that, while plaintiff has testified that he did not receive the owners' manual, there is also no evidence to show that he did *not* receive the manual. Plaintiff himself even admitted that he may have received the manual:

> Q. Yes, any documents, any correspondence, anything from FEMA?
> A. No. I just received a packet, that's all.
> Q. What packet did you receive?

> A. Just a big white, thick envelope with the maintenance number.
> Q. Did you ever look inside the packet to see what the packet consisted of?
> A. No.
> Q. Where did you put the packet?
> A. In the cabinet.
> Q. Which cabinet?
> A. Above the dining area.
> Q. Did the individual who handed you the packet tell you what was inside the packet?
> A. No.
> Q. Did you ever get curious and look inside the packet to determine what was in there?
> A. No, I didn't look in there.
> \* \* \* \* \*
> Q. You talked about having a packet of materials in a white envelope. Do you recall that?
> A. Yes.
> Q. And you said you had no idea what was in it, right?
> A. No.
> Q. It could have been owner's manuals, right?
> A. Could have been.

*See* Ex. A, Deposition of Lyndon Wright, p. 209-210; p. 339.

Regardless of whether plaintiff received the manual or not, this fact is not of consequence to Forest River fulfilling its *duty* to warn. As stated previously, the owner's manual was shipped in a packet with the keys to every unit. These packets were to be hand-delivered to the trailer's ultimate location. Forest River had no other means of contacting end-users as FEMA instructed individuals to address their concerns with the agency of its subcontractors. Accordingly, Forest River satisfied its duty to warn as a matter of law.

### III. Forest River did not have a Continuing Duty to Warn

In arguing that Forest River owed a continuing duty to warn, plaintiff relies on pre-LPLA case law which he cites for the proposition that Forest River is presumed to know of the dangers of its product. Rec. Doc. 11528, p. 19.

Forest River points out that the continuing duty to warn only arises after notice that there is some dangerous characteristic associated with its product. The LPLA requires that if a manufacturer **acquires knowledge after the product has left the manufacturer's control** that any characteristic of the product may cause damage, he is liable for his **subsequent** failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product. La. R.S. § 9:2800.7(C) (emphasis added).

As stated, the continuing duty to warn is inapplicable to this case, as Forest River never acquired knowledge of any alleged dangers due to formaldehyde until the start of this litigation. Forest River has manufactured an estimated one million trailers, yet never received any health related complaints regarding the component materials in its trailers. Thus, because Forest River never learned of any potentially dangerous characteristics inside its trailers, no continuing duty to warn ever arose as a matter of law. Forest River is entitled to judgment on this issue.

### CONCLUSION

For the foregoing reasons, Forest River respectfully requests that the Court grant its Motion for Partial Summary Judgment and dismiss plaintiff's failure to warn claims with prejudice.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
JASON D. BONE (Bar Roll No. 28315)
CARSON W. STRICKLAND (Bar Roll No. 31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

**C E R T I F I C A T E**

I hereby certify that on the 19th day of February, 2010, a copy of the foregoing Reply was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone
JASON D. BONE