UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
|     FORMALDEHYDE | * | |
|     PRODUCTS LIABILITY | * | |
|     LITIGATION | * | SECTION: N(5) |
| | * | |
| This Document Relates to: *Lyndon T. Wright v.* | * | JUDGE: ENGELHARDT |
| *Forest River, Inc., et al*, Docket No. 09-2977 | * | |
| | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### FOREST RIVER, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT REGARDING MENTAL ANGUISH CLAIMS

Defendant Forest River, Inc. ("Forest River") submits the following memorandum in response to plaintiff's Opposition to the Motion for Summary Judgment regarding mental anguish claims.

### ARGUMENT

**A. Plaintiff's own experts concede that Wright's alleged mental anguish is causally unrelated to Forest River.**

Although plaintiff glosses over Dr. Shwery's first report in his Opposition, Forest River submits that this report is the starting point in the overarching theme to Wright's alleged mental anguish claims: these claims have no causal link to Forest River's actions.

In that first July 2009 report, Dr. Shwery's "Summary and Recommendations" section included no mention of Wright's alleged fear of cancer. Instead, Shwery opined that, "Lyn is concerned that his health is deteriorating and the thought of becoming disabled and dependent on

others for his welfare is alarming to him.  **The bone density issues are particularly of concern, as well as the continued blood in his mucus when he coughs.**  It is not clear whether or not living in the trailer had any impact upon his bone density issues, but I am concerned that if the bone density problems increase, it is very likely that this man will develop chronic pain disorder."  *See* Ex. A attached to Forest River's original motion, Affidavit of E. Shwery, dated 7/21/09, p. 9-10 (emphasis added).

Fast forward to Dr. Shwery's second report in September 2009, when plaintiff manifested increased depression and anxiety.  As explained in Forest River's motion, Wright identified the **neuroma and his bloody mucous** as the causes of these new psychological issues.  Dr. Shwery's report noted, "The need for surgical intervention and examination of a biopsy of the mass has crystallized many of the psychological issues with which Lyn had been coping more successfully prior to the surgery in late July, 2009."  *See* Ex. F to Forest River's previously filed motion, Affidavit of E. Shwery, dated 9/24/09, p. 2

Plaintiff's own words underscore his concern over the neuroma and bloody mucous.  Throughout motion practice in this case, plaintiff has repeatedly argued that these two conditions were the cause of his increased depression and anxiety.  In his motion *in limine* on references to plaintiff's witnessing Dr. Shwery testify at the Gulf Stream trial, plaintiff writes:

> Dr. Shwery reports a very simple explanation for this dramatic increase in reported anxiety and depression.  He discusses a biopsy performed on Wright by Dr. Richard Spector in late July, 2009 . . . .
> The fact pattern of a biopsy and medical uncertainty following the biopsy of the cause of not only Wright's growth in his throat at the base of his tongue, but also the bleeding he was experiencing is **a valid and likely explanation for his increased anxiety and depression.**

Rec. Doc. 11348, p. 2, 5.

As these excerpts show, plaintiff has repeatedly admitted, both to doctors and in his motions in this case, that these two conditions – the neuroma and bloody mucous – are the source of his current depression and anxiety. **However, neither condition has ever been causally linked to Wright's formaldehyde and/or mold exposure.** Plaintiff's expert ENT, Dr. Spector, explained:

> Q.  Doctor, you stated in your report that you cannot find or cannot attribute this neuroma to the alleged formaldehyde exposure, correct?
> A.  That's correct.
> * * * *
> Q.  As we sit here today, you can't say more probably than not what caused that particular neuroma, correct?
> A.  That's correct.
> * * * *
> Q:  Understood.  As we sit here today, you cannot say more probably than not that any of the physical complaints or issues for which you have treated Mr. Wright are related to formaldehyde, correct?
> A:  That's a fair statement.
> * * * *
> Q.  And then about four paragraphs down from that you state that: Based upon my medical knowledge, Mr. Wright's history, prior medical records and medical surgical examinations, I cannot find a source for his complaint of bloody mucous.  Is that true today?
> A.  It is.

> Q. In addition, I cannot identify any relationship between his exposure to formaldehyde and his complaint of bloody mucous or ear drainage. Is that true today?
> A: It is true today.

*See* Deposition of Dr. Spector, dated 10/29/09, p. 105; 128-29; 131; 164, attached as Ex. A to the instant reply memorandum.

Dr. Miller, another of plaintiff's specific causation experts, confirmed that Spector could find no cause for the bloody mucous and noted in his report: "Dr. Spector reports that he is 'unable to find a source for [Wright's] complaint of bloody mucous'. . . . **With regard to the neuroma recently diagnosed, there is no evidence that this is associated with formaldehyde exposure**." *See* Dr. Miller report, p. 3 & 7, attached as Ex. B to the instant reply memo (emphasis added).

Like the bone density issues discussed in Dr. Shwery's first report, these two medical issues have **no** causal connection to Wright's formaldehyde exposure in the trailer. No medical expert has ever causally linked Wright's alleged formaldehyde/mold exposure to either his osteoporosis/bone density issues (both of which were diagnosed long before he lived in the trailer at issue) or his neuroma/ bloody mucous. Although passing references are made to Wright's discussion of formaldehyde exposure, they are not the causes of his problems; a careful reading of the conclusions in Shwery's reports demonstrates that, by Dr. Shwery's own admission, the cause of Wright's mental anguish stems from diseases and conditions which have no relation to Forest River. Thus, plaintiff's claims for mental anguish against Forest River must be dismissed.

**B. Plaintiff's Own Fiancé Admits that Wright's alleged fear of cancer has nothing to do with his time in the trailer.**

Plaintiff claims that Wright's fiancé, Tyshone Marsh, has testified that Wright has a fear of cancer. Rec. Doc. 11542, p. 5. This description is only partially complete, however, since plaintiff has attempted to hide the ball and omit an important follow up question. The full text of that portion of the deposition provides:

>     Q   Has Lyndon ever told you that he
>   has a fear of cancer?
>       A   Yes.
>       Q   When did he first tell you that?
>       A   About a couple of months ago.
>       Q   Is that after he sat through the
>   trial of Gulf Stream in September?
>       A   Excuse me?
>       Q   Was that the first time after he
>   sat through trial in September of 2009?
>       MR. AHLQUIST:
>          Objection. You can answer.
>       THE WITNESS:
>          Huh?
>       MR. AHLQUIST:
>          You can answer.
>       THE WITNESS:
>          I can answer?
>   EXAMINATION BY MR. GIEGER:
>       Q   Yes.
>       A   That was before.
>       Q   How long before?
>       A   I don't recall.
>       Q   What did he tell you?
>       A   We was just talking about it and
>   he was just saying.
>       Q   Saying what?
>       A   He was just talking. We was just
>   talking about cancer and he was just talking
>   how he feels, I guess.
>       Q   What did he say?
>       A   He was just saying he hope he

5

> don't ever get cancer. That's all he was just saying.
> Q   Is that all he said?
> A   Yes.
> **Q   Did he say anything about that and the trailer?**
> **A   Huh-uh (negative response).**
> **Q   So he didn't say he had a fear of cancer because of the trailer?**
> **A   No, sir.**

*See* Deposition of T. Marsh, dated 1/14/10, p. 90-91, attached as Ex. C (emphasis added).

The final portion of this discussion is critical and supports what Forest River has argued all along – that Wright's fears about cancer have nothing to do with formaldehyde or mold exposure. Marsh's testimony is also consistent with Wright's deposition testimony, where he never mentioned any fear of cancer associated with his time in the trailer. *See* Ex. D, Deposition of L. Wright, p. 233-34, attached to Forest River's motion.

Wright has disclosed, and Dr. Shwery has acknowledged, that the neuroma and bloody mucous have caused Wright to have real concerns about his health. While unfortunate, these issues are completely unrelated to Wright's allege exposure to formaldehyde. Tyshone Marsh's testimony is yet another reminder that Wright's mental anguish is not causally related to formaldehyde, and his claims should therefore be dismissed.

### C. The lack of a specific increased risk of cancer, combined with the fact that formaldehyde is ubiquitous, render Wright's fear of cancer unreasonable.

Plaintiff asserts that he has a "particularly light burden" in proving reasonableness for purposes of a fear of cancer claim. Even if this characterization is accurate, plaintiff has still failed to demonstrate that his fear of cancer is reasonable for one simple reason: no expert has ever told him he faces an increased risk of cancer.

In the Gulf Stream bellwether trial, Dr. Kornberg opined that plaintiff was seventeen times more likely to develop cancer as a result of formaldehyde exposure in the trailer.  Wright has never presented any such opinion in this case.  With Dr. Miller's Addendum (discussing the "reasonableness" of Wright's alleged fear of cancer) excluded, no specific causation expert ever even mentions cancer in his report.

Plaintiff may point to Dr. Williams, arguing that she finds a link between cancer and formaldehyde.  Even if plaintiff need not quantify the exact increased risk of cancer, Forest River submits that this testimony alone is insufficient to allow Wright to carry his burden of proof.  There is no evidence that he ever spoke with Dr. Williams, as her role was only to provide a general causation link.  How, then, does Wright even know he faces an increased risk of cancer?  The only expert in the case who ever discussed cancer with Wright is Dr. Shwery, a psychologist who has no training in cancer or cancer risks.  Aside from Dr. Shwery and his own lawyers, Wright has never had a legitimate discussion about cancer with any trained professional.

Plaintiff also improperly references the testimony contained in Dr. Miller's Addendum, submitted in January of 2010.  Although this Addendum was struck by the Court, this late submission is a tacit acknowledgement by plaintiff that (1) there is a gaping hole in his case and (2) a mental anguish case based on Dr. Williams' testimony alone is not sufficient.  If Dr. Williams report is the only piece of scientific evidence needed to support a fear of cancer claim, then every human on earth would have a viable fear of cancer claim.  Unlike other toxic tort cases that involve exotic chemicals that humans are not typically exposed to, formaldehyde is ubiquitous.  Urban background levels of formaldehyde have been measured between 0.008 and 0.068 ppm; formaldehyde is present in the exhaled air of humans at concentrations between

0.001 and 0.072 ppm.  *See* Ex. D, expert report of Dr. Dyson, dated 11/2/09, p. 3.  Therefore, plaintiff's argument, that one need only show the possibility of contracting a disease "no matter how remote," simply cannot apply in this case.  Under plaintiff's logic, a person would merely need to read Dr. Williams' expert report and step foot into court to be able to recover fear of cancer damages.  This cannot be the case.

Finally, plaintiffs note that, "Dr. Thompson, Defendant's psychiatric expert, even recognized that one of the factors causing Mr. Wright's anxiety was his uncertainty as to the extent of formaldehyde's carcinogenic effects."  Rec. Doc. 11542, p. 6.  This uncertainty is plaintiff's own doing.  Wright could have retained Dr. Kornberg or some other qualified medical professional to provide him with an opinion on potential health effects based on his specific level of alleged formaldehyde exposure.  Instead, Wright was simply left in the dark.  Once again, this anxiety has been caused by Wright or his attorneys, not the actions of Forest River in this case.

## CONCLUSION

Plaintiff has failed to present any genuine issue of material fact with respect to the cause of his mental anguish claims.  The bone density issues, neuroma, and bloody mucous, all of which caused his depression and anxiety, are not related to formaldehyde or mold.  Furthermore, Wright should not be allowed to rely on Dr. Williams alone to support a fear of cancer claim, as this would essentially relieve plaintiffs of their burdens of proof for fear of cancer claims in these MDL cases.  Accordingly, Forest River requests that his mental anguish claims, including his fear of cancer claim, be dismissed with prejudice.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
JASON D. BONE (Bar Roll No.28315)
CARSON W. STRICKLAND (Bar Roll No. 31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

## **C E R T I F I C A T E**

I hereby certify that on the 19th day of February, 2010, a copy of the foregoing Memorandum in Support was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone
JASON D. BONE