1

```
 1            UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF LOUISIANA
 2
 3   IN RE:  FEMA TRAILER      MDL NO. 1873
 4   FORMALDEHYDE PRODUCTS     SECTION "N"(4)
 5   LIABILITY LITIGATION      JUDGE ENGELHARDT
 6
 7   This document relates to:  Lyndon T. Wright
 8        v. Forest River, Inc., et al
 9            Docket No. 09-2977
10                 *   *   *
11                (Volume I)
12       Videotaped Deposition of LAWRENCE
13   G. MILLER, M.D., 118 Upland Road, Waban,
14   Massachusetts 02468, taken at the Law
15   Offices of Frank J. D'Amico, Jr., 622
16   Baronne Street, New Orleans, Louisiana
17   70113, on Tuesday, the 10th day of November,
18   2009.
19
20   REPORTED BY:
21        JAMES T. BRADLE, CCR
          PROFESSIONAL SHORTHAND REPORTERS
22        (504)529-5255
23   VIDEOGRAPHER:
24        BRIAN SOILEAU
          PROFESSIONAL SHORTHAND REPORTERS
25        (504)529-5255
```

```
 1    conversation.  It was well over six months
 2    ago.
 3    EXAMINATION BY MR. BONE:
 4         Q    Do you take any notes of
 5    conversations, especially if they relate to
 6    new matters that you will be dealing with?
 7         A    Not necessarily.  Sometimes yes,
 8    sometimes no.
 9         Q    Okay.  If you were to take those
10    notes, where would they be kept?
11         A    I would probably have them in a
12    file.  I don't believe I have any notes from
13    those initial conversations.
14         Q    Do you maintain a file relative to
15    this case?
16         A    I do.
17         Q    Other than the reliance materials,
18    the reports that we have discussed, and your
19    billing records, what other materials would
20    comprise that file?
21         A    There isn't much.  I might have a
22    few notations about a paper or about
23    something I read, but not much to it.
24         Q    Have those documents, where you
25    may have made some notes about something you
```

```
 1   read, have those documents been produced to
 2   counsel?
 3        A    I don't believe so, no.
 4        MR. BONE:
 5             I would call upon production of
 6   those notes relating to the documents that
 7   the good doctor has read and made notations
 8   with response to.
 9   EXAMINATION BY MR. BONE:
10        Q    Would there be, if there had been
11   notes made about phone records and things of
12   that nature, would those notes also be
13   encapsulated in the file?
14        A    That's correct.
15        Q    Again, to extent that any of those
16   documents exist, we would call upon those to
17   be produced as well.
18             What was your understanding -- Or
19   let me put it this way.  Did you have an
20   initial understanding after the first
21   conversation you had relative to this case
22   about what you were being asked to do?
23        A    I will have to give you just a
24   general answer.  Those conversations were
25   quite a few months ago.  But generally, to
```

1    evaluate an individual who had allegedly

2    sustained formaldehyde exposure and

3    understand its health effects on that

4    individual.

5        Q    Okay.  And were you allowed to

6    formulate the plan of how you would go about

7    doing that?

8        A    I was.

9        Q    And after the initial

10   conversation, were there subsequent

11   conversations before you formulated your

12   plan or did you formulate a general plan of

13   how you were going to address this issue,

14   and then had had subsequent conversations

15   regarding that?

16       A    I can't give you an answer to

17   that.  That's all some months ago.  I don't

18   remember that level of detail.

19       Q    All right.  Did you subsequently

20   formulate a plan as to how you were going to

21   address that particular task?

22       A    I did.

23       Q    And how did you discern that you

24   were going to go about determining whether

25   Mr. Wright had any problems as related to

```
 1          Q    Other than notes, did you record
 2    your meeting with Mr. Wright through video
 3    or audio?
 4          A    I did not.
 5          Q    So the only recollection that you
 6    have of your meeting with Mr. Wright is
 7    through the notes that you wrote out at the
 8    time of the meeting, correct?
 9          A    Yes.
10          Q    And were those notes made
11    contemporaneously with the meeting with
12    Mr. Wright?
13          A    They were.
14          Q    Again, because we don't have the
15    notes relating to the meeting, we will call
16    upon the production of those notes, and
17    obviously keep the deposition open pending
18    receipt of these documents.
19               The first meeting in June with
20    Mr. Wright, what was the purpose of that
21    particular meeting?
22          A    I was in New Orleans on another
23    matter.  It was one of the days that
24    Mr. Wright was available, and I spent a few
25    minutes, probably 30, 45 minutes just
```

113

1    results of the nasal smear?
2         A    I don't believe I saw -- I have
3    Dr. Spector's records.  I don't believe I
4    saw anything specific there.
5         Q    Okay.  So as we sit here today,
6    you're unaware of whether the nasal smear
7    collected epithelial cells from the actual
8    nasal membrane of the interior nasal cavity
9    of Mr. Lyndon Wright?
10        A    I would have to look back at the
11   records.  I can't recall that as we sit
12   here.
13        Q    And as we sit here, you don't
14   recall that the nasal smear performed by
15   Dr. Spector indicated the presence of normal
16   ciliated columnar epithelial cells?
17        A    I don't recall one way or the
18   other.
19        Q    So you didn't factor that into
20   your opinions in this case in the
21   conclusions that you reached?
22        A    I would have to look back at that.
23   I don't recall one way or the other.  I
24   can't answer your question.
25        Q    Let me ask you this.  In your

1    final conclusion in your October 2nd report,
2    you state, "In summary, it is my
3    professional opinion that, within a
4    reasonable degree of medical probability,
5    the exposure to formaldehyde emissions
6    during his approximately 28 months of
7    residence in the FEMA trailer significantly
8    exacerbated Mr. Lyndon Wright's
9    rhinosinusitis," correct?
10        A    That's correct.
11        Q    Is that the only opinion that you
12   hold in this case?
13        A    That's the only one certainly
14   stated here, yes.
15        Q    And so if called upon to testify,
16   the only causal link that you can draw to
17   any of Mr. Wright's symptomatology is that
18   you believe exposure to some level of
19   formaldehyde caused an exacerbation of his
20   rhinosinusitis?
21        A    That's what's stated here, yes.
22        Q    All right, Doctor.  Mr. Ahlquist
23   has been kind enough to furnish us with some
24   of the invoices that you have provided to
25   the plaintiffs in this matter.  I would like

1    you actually spend testifying or is it, as
2    Dr. Spector said, from portal to portal,
3    from the time you leave your home until the
4    time you get home?
5         A    No, for me, it's for the time
6    testifying.
7         Q    I notice that there's no reference
8    to pulmonary disorders in your report.  Is
9    it a true statement that you didn't diagnose
10   Mr. Wright with any pulmonary disorder?
11        A    Let me be clear and see if I
12   understand what you mean.  Mr. Wright
13   certainly has some pulmonary symptoms.  Is
14   that what you mean?
15        Q    My question, again, may be
16   inartful, but I'm simply asking, did you
17   diagnose him with any pulmonary disorder?
18        A    With a specific pulmonary
19   diagnosis, I think is what you mean?
20        Q    Yes.
21        A    I did not.
22        Q    Other than rhinosinusitis, did you
23   diagnose any other condition, syndrome or
24   other medical issue with respect to
25   Mr. Wright?

```
 1         A    He has a number, obviously, of
 2    other illnesses that I believe are not
 3    relevant here, but the answer to your
 4    question is, putting those aside, no.
 5         MR. BONE:
 6              At this point, I'm going to look
 7    over my notes and hand him off to the other
 8    attorneys.
 9              With respect to the documents we
10    have requested, obviously, we will
11    reschedule at a mutually convenient time
12    after we have had the opportunity to look
13    through the medical records that the doctor
14    has reviewed and his notes and any other of
15    the documents that may be contained in his
16    file, whether that be a written, you know,
17    notes relating to phone calls or the intake
18    notes relating to Mr. Wright himself.
19         MR. D'AMICO:
20              That's fine.  Also, there are some
21    documents that we do not have, some
22    deposition testimony that has never been
23    provided to us, for instance, and obviously
24    we would like him to look at those as well.
25         MR. BONE:
```