UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N(5)<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO:<br>*Lyndon Wright, et al. v. Forest River, Inc., et al.*,<br>09-2977 (E.D. La.) | MAGISTRATE CHASEZ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### SHAW ENVIRONMENTAL, INC.'S
### REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL
### SUMMARY JUDGMENT REGARDING PLAINTIFF'S MAINTENANCE CLAIMS

**MAY IT PLEASE THE COURT:**

Shaw Environmental, Inc. ("Shaw") submits this memorandum in support of its motion for partial summary judgment regarding Plaintiff's maintenance claims (R. Doc. 10947) and in response to Plaintiff's Memorandum in Opposition to Shaw's motion (R. Doc. 11554) (the "Opposition"). Shaw's motion is predicated on the complete lack of evidence suggesting that it failed to maintain the Trailer prior to June 1, 2006 – the date when Shaw's maintenance responsibilities with respect to the Trailer ended.[1] The Opposition proves Shaw's point that Plaintiff has failed to introduce a shred of evidence that Shaw negligently maintained the Trailer during that period. Accordingly, Shaw's motion should be granted.

---
[1] Affidavit of Allison Hansen, ¶ 12, attached hereto as Exhibit "C."

## LEGAL ARGUMENT

As an initial matter, Shaw notes that Plaintiff has filed no opposing affidavits or other specific countervailing evidence challenging the accuracy of Shaw's verified supporting documentation as required by Rule 56(e) of the Federal Rules of Civil Procedure. Rule 56(e) provides in pertinent part that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."[2] A straightforward application of this rule would require that summary judgment be granted in the instant case.

Contrary to Plaintiff's unsupported assertions, it is undisputed that Plaintiff moved into the Trailer in March 2006,[3] and Shaw's maintenance responsibilities ended on June 1, 2006, when C. Martin (another contractor) assumed these responsibilities.[4] It is undisputed that Plaintiff made only one maintenance call during the period of Shaw's maintenance responsibilities. It is undisputed that this problem (*i.e.*, the broken furnace) was resolved to his satisfaction.[5] It is undisputed that Shaw made two monthly inspections during the period of its maintenance responsibilities, which the Trailer passed.[6] It is undisputed that the Preventative

---

[2] Fed. R. Civ. P. 56(e).

[3] Deposition of Lyndon Wright, p. 73, attached hereto as Exhibit "B."

[4] Hansen Affidavit, ¶¶ 4-12, Exh. C and Exhibits 1 and 2 thereto (June 2, 2006 Email from C. Martin's Robyn Williams; and C. Martin's MDC Turnover Spreadsheet).

[5] Affidavit of Geoffrey Compeau, ¶¶ 24-26, attached hereto as Exhibit "A" and Exhibits 15 and 16 thereto (FEMA Maintenance Transmission Report and Call Center Maintenance Request Form, date March 19, 2006); *see also* Wright Deposition, p. 275, Exh. B.

[6] Compeau Affidavit, ¶ 24, Exh. A and Exhibit 15 thereto (FEMA Maintenance Transition Report).

Maintenance Form ("PMI"), which was signed by a representative of C. Martin, indicates that no maintenance issue existed at the time the Trailer was turned over on June 1, 2006.[7] It is undisputed that during the next two years Plaintiff continued to live in the Trailer, and he signed off on inspection reports from other FEMA contractors and/or subcontractors, confirming that nothing was wrong with the Trailer.[8] These are the facts, and they are undisputed. Accordingly, summary judgment should be granted with respect to Plaintiff's maintenance claims.

In his Opposition, Plaintiff sets forth a number of unsupported assertions in an attempt to show that a genuine issue of fact exists as to whether Shaw failed to adequately maintain the Trailer. Given the page limitation, Shaw cannot respond to all of them but will attempt to point out the lack of evidence supporting Plaintiff's arguments as to the principal issues.

### A.   Shaw Repaired the Furnace.

First, Plaintiff claims that Shaw breached its maintenance duties because it failed to adequately repair his furnace. Specifically, Plaintiff claims that the furnace broke immediately after Shaw's initial repair of it on March 19, 2006, and "[d]espite multiple verbal complaints from the Plaintiff to Shaw that the heater was still not working, no additional actions were taken to repair it."[9] This argument is wholly unsupported by the evidence, and is even contradicted by Plaintiff's own sworn testimony. Plaintiff acknowledged at his deposition that Shaw fixed the furnace problem to his satisfaction in March 2006.

> Q.   Did the maintenance crew fix the furnace problem, as far as you knew, when they came out on March 19, 2006? Let me ask you a better way. Did you think they had fixed it when they left on March 19, 2006?

---

[7] Hansen Affidavit, ¶¶ 5, 11, Exh. C and Exhibit 3 thereto (June 1, 2006 PMI for Wright Trailer).

[8] Crown Roofing Services, Inc. Maintenance Records, pp. 7, 9-10, 12, attached hereto as Exhibit "D."

[9] Opposition, p. 3.

3

> A. Yes, because it was working.
>
> Q. And that's why you signed off on the maintenance form, right?
>
> A. Yes.[10]

In his Opposition, Plaintiff claims that the furnace immediately broke down again.[11] However, the excerpt to which Plaintiff cites says nothing of the sort. Plaintiff stated in his deposition that he complained about the furnace on at least two different occasions.[12] As discussed above, the first occasion was resolved to his satisfaction. Plaintiff testified that the second occasion occurred in the winter of 2006, which was after Shaw's maintenance responsibilities had ended.[13] Thus, even assuming Plaintiff made a second complaint regarding the furnace (which is not supported by the record), Shaw would not have been responsible for any alleged failure to repair the heating system.

### B. Shaw's Maintenance Obligations Were Defined Solely by Its Contract with FEMA, and Shaw Fully Complied with that Contract.

Plaintiff argues, without support, that Shaw also had a duty to properly maintain the Trailer in strict accordance with the manufacturer's instructions.[14] Obviously, Forest River's owner's manual does not impose duties on Shaw, and no support is offered for Plaintiff's proposition that Shaw should have called Forest River about anything. Shaw's maintenance duties were defined solely by its contract with FEMA.[15] Shaw complied fully with those duties, and Plaintiff has no evidence to the contrary.[16]

---

[10] Wright Deposition, p. 275, Exh. B.

[11] Opposition, p. 3.

[12] Wright Deposition, p. 273, Exh. B

[13] Wright Deposition, pp. 273-275, Exh. B.

[14] Opposition, pp. 3 and 11, and scattered throughout.

[15] *Day v. National U.S. Radiator Corp.*, 128 So.2d 660 (La. 1961) (declining to impose tort duties beyond those

### C. Shaw Responded to FEMA's Inquiry about Airing Out Trailers and Formaldehyde the Very Next Day.

As detailed more fully in Shaw's reply memorandum in support of its motion for summary judgment regarding causation, Plaintiff blatantly misrepresents the facts regarding Shaw's response to FEMA's March 20, 2006, formaldehyde inquiry.[17] FEMA's Mr. Boyle confirmed that he received and was satisfied with Shaw's March 21, 2006, response to his inquiry.[18] Plaintiff's claim that Shaw did not respond[19] is simply false.

Plaintiff's claim that Shaw's corporate representative had "no idea" if Shaw "notified or warned either FEMA or the occupants,"[20] is also false. Shaw's corporate representative did not have specific knowledge of the nature of Shaw's response to FEMA, but when questioned about it, he repeatedly testified that he was sure that Shaw did respond, because if Shaw had not responded, Mr. Boyle would have kept asking for a response, which did not occur.[21]

With regard to the occupants, Plaintiff fails to mention that the Forest River owner's manual contains a formaldehyde warning, and Shaw's corporate representative testified that whenever it received a trailer from FEMA with an owner's manual in it, Shaw left the owner's

---

called for by contract).

[16] Just as an example, Plaintiff claims without citation that seals were to be inspected monthly. But Plaintiff fails to point out that in fact Shaw did perform monthly inspections. *See* Exhibit A-15 to Shaw's original motion. Of course, the reason that Shaw did this was because of its contract with FEMA, not because of Forest River's owner's manual, but the effect is the same. Even if a duty to inspect seals monthly were owed to Plaintiff, no breach occurred.

[17] Opposition, pp. 3-4.

[18] Deposition of Brian Boyle, pp. 60-62, attached hereto as Exhibit "E."

[19] Opposition, p. 8.

[20] Opposition, p. 9.

[21] Deposition of Geoffrey Compeau, pp. 132-135, attached hereto as Exhibit "F."

manual in the trailer.[22] Given that Mr. Boyle testified that FEMA checked to be sure that trailers contained owner's manuals,[23] and given that Plaintiff admitted that he received with the Trailer a white envelope that he never opened and that may have contained an owner's manual,[24] one can conclude that Shaw passed along a warning to Plaintiff, who did not even read it. For the purposes of this motion, the important point is that Plaintiff offered no evidence to refute this. Notwithstanding the patent misrepresentations, the issue of whether Shaw responded to FEMA's formaldehyde inquiry has nothing to do with whether or not Shaw negligently maintained the Trailer.

### D.   The Soil Subsidence Issue Has Nothing to Do with Maintenance.

Plaintiff claims that soil subsidence is "a major impact of [Shaw's] involvement" that manifested itself months after Shaw's maintenance obligations ended.[25] Again, Plaintiff cites to no evidence at all that Shaw had anything to do with the settling of the Trailer.[26] Besides that, though, Plaintiff's whole theory on this point is that Shaw somehow failed to install the Trailer in a manner that would prevent soil subsidence from affecting the Trailer. This, then, is an installation issue, not a maintenance issue, and it is accordingly irrelevant for purposes of this motion. Although Plaintiff argues that Shaw maintenance teams did not correct the "improper installation of the Trailer on concrete piers," obviously the maintenance teams during Shaw's tenure, which ended June 1, 2006, could not have corrected an issue that Plaintiff admits did not

---

[22] Compeau Deposition, pp. 190-191, Exh. F.

[23] Boyle Deposition, p. 87, Exh. E.

[24] Wright Deposition, p. 339, Exh. B.

[25] Opposition, pp. 4 and 14-15.

[26] Plaintiff's only citation in this section is to his own deposition testimony, in which he admitted that the gap over the door – allegedly caused by soil subsidence – did not occur until 2007.

6

occur until 2007. Notably, had Plaintiff actually notified anyone that there was a maintenance issue with his trailer once he noticed that the door was leaking and the Trailer was no longer level in 2007 – and there is no record that he ever did so – the solution would have been a simple shimming and re-leveling of the Trailer. Plaintiff never did that, but in any event that could only have occurred in 2007 or thereafter, well after Shaw's maintenance responsibilities ended.

### E. Plaintiff Has Not Shown that Shaw Owed a Maintenance Duty to Plaintiff.

Plaintiff argues that Shaw's duty to maintain the Trailer was owed to Plaintiff,[27] but again he submits no evidence to support this argument. Under the duty-risk analysis, Plaintiff, not Shaw, has the burden of proving that Shaw owed a duty to maintain the Trailer and that Shaw breached this duty.[28] Accordingly, under Rule 56 simply stating that the duty exists is not enough. In order to rebut Shaw's arguments, Plaintiff must provide competent evidence that Shaw owed a maintenance duty to Plaintiff and that Shaw breached this duty. Plaintiff has failed to do so.

Plaintiff argues that he complained of an odor to a Shaw maintenance person, that FEMA was looking to Shaw for direction, that Shaw did not contact Forest River about maintenance, etc.[29] Again, these statements are flatly wrong or at least misleading, and they are unsupported by evidence, but more fundamentally there is no reason why any of these things would create a maintenance duty on the part of Shaw owed to the Plaintiff. There is none.

---

[27] Opposition, p. 10.

[28] *Pinsonneault v. Merchants & Farmers Bank*, 01-2217 (La. 4/3/02), 816 So.2d 270, 276; *Barasich v. Columbia Gulf Transmission Co.*, 467 F. Supp. 2d 676, 691, (E.D. La. 2006).

[29] Opposition, p. 11.

With regard to Plaintiff's argument – unsupported by any affidavit or other evidence – that he complained of an odor when he first moved in, Shaw is constrained to point out that this is another misrepresentation. Plaintiff's deposition reflects that he smelled a "new smell," but it does not say that Plaintiff complained about it.[30] In fact, when asked whether the new smell was a problem at that time, Plaintiff testified, "Being excited with getting in the trailer, no, I didn't really see it would be a problem, the new smell and everything."[31] In fact, not only has Plaintiff failed to introduce any deposition testimony that he complained to Shaw about the new smell and failed to produce affidavits to that effect in compliance with Rule 56, his deposition testimony actually contradicts this new claim. Plaintiff testified that he complained about a "foul odor" for the first time in November or December of 2006,[32] when the maintenance people came out to repair the furnace on the second occasion – not Shaw maintenance personnel, as Shaw's maintenance responsibilities had ended by then.

### F.  Plaintiff's Argument about Pier Construction Is Both Wrong and Misses the Point.

Plaintiff claims that the use of an ABS pad underneath the cinderblock piers upon which the Trailer was installed violates the IA/TAC.[33] Again, this contention seems to pretend that the deposition of Brian Boyle did not occur. At his deposition, Mr. Boyle specifically testified that the use of ABS pads was authorized.[34] But besides that, the pads are an installation, not

---

[30] Wright Deposition, pp. 267-68, Exh. B.

[31] Wright Deposition, p. 268, Exh. B.

[32] Wright Deposition, p. 274, Exh. B.

[33]  Opposition, p. 12.

[34] Boyle Deposition, p. 150, Exh. E.

maintenance, issue. Even if Shaw did negligently install the Trailer (which is vehemently denied and unsupported by any evidence), this has nothing to do with whether or not Shaw negligently maintained the Trailer.

### G. Evidence of Water Damage in August 2009 Also Misses the Point.

The Opposition also discusses destructive testing performed in August 2009 to point out the existence of water damage in the Trailer at that time.[35] The fact that there was water damage in the Trailer after it had sat in a FEMA trailer graveyard for a year ought to come as no surprise (especially since one of the vent caps was missing and the door latch had been damaged, both of which allowed water into the Trailer). In fact, with regard to the water damage observed in 2009, Moore admitted that he could not tell how old the damage was.[36] Therefore, the water damage observed in 2009 has nothing to do with the issue presented by Shaw's motion – whether there is evidence that Shaw failed to adequately maintain the Trailer before its maintenance responsibilities with respect to the Trailer ended on June 1, 2006.[37]

### CONCLUSION

The record establishes that Shaw adequately maintained the Trailer during the period in which it was responsible for maintenance. Plaintiff, in response to Shaw's motion, presented argument, but no evidence that Shaw failed to adequately maintain the Trailer. The Affidavits of Geoffrey Compeau and Allison Hansen, along with the other evidence submitted by Shaw stand unrebutted, and as such summary judgment should be entered, dismissing all claims related to the improper or negligent maintenance of the Trailer.

---

[35] Opposition, pp. 15-17.

[36] Deposition of Charles David Moore, p. 142, attached hereto as Exhibit "G."

[37] Hansen Affidavit, ¶ 12, Exh. C.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

  /s/ M. David Kurtz
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000

**ATTORNEYS FOR DEFENDANT,
SHAW ENVIRONMENTAL, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2010, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.

  /s/ M. David Kurtz