UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:  FEMA TRAILER                             MDL NO. 07-1873
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION                             SECTION N(5)

                                                 JUDGE ENGELHARDT

THIS DOCUMENT RELATES TO:
*Lyndon Wright, et al. v. Forest River, Inc., et al.,*    MAGISTRATE CHASEZ
09-2977 (E.D. La.)

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### SHAW ENVIRONMENTAL, INC.'S
### REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
### PARTIAL SUMMARY JUDGMENT REGARDING FAILURE TO WARN

Shaw Environmental, Inc. ("Shaw") submits this memorandum in support of its motion

for partial summary judgment regarding failure to warn (R. Doc. 10946) and in response to

Plaintiff's Memorandum in Opposition to Shaw's motion (R. Doc. 11543) (the "Opposition").

The Opposition proves Shaw's point that Plaintiff has failed to provide any evidence to support a

finding that Shaw owed Plaintiff a duty to warn about formaldehyde. Accordingly, Shaw's

motion should be granted.

**A.    Plaintiff Has Failed Prove That Shaw Owed a Duty to Warn or that Shaw
       Had Knowledge of Any Danger About Which to Warn.**

On a motion for summary judgment, the moving party must initially demonstrate that no

genuine issue of material fact exists and identify those portions of the record which it believes

show the absence of a genuine issue of material fact.[1]   However, once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."[2]   To satisfy this burden, the non-movant must proffer *sufficient* evidence to show that a reasonable jury could find in its favor - that is, that "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."[3]   Of course, unsubstantiated assertions do not constitute competent summary judgment evidence.[4]

Under Louisiana law, Plaintiff has the burden of proving that Shaw has an affirmative duty to provide him a warning with respect to formaldehyde.[5]   Naturally, Shaw cannot be obligated to warn of an unknown danger.   Given the clear affidavit of Shaw representative Geoffrey Compeau,[6] which confirms the lack of any contractual obligation to warn or test for dangers, and the complete lack of evidence that Shaw knew that there was a dangerous level of formaldehyde in any trailer, Plaintiff may not simply rest on his allegations.   Rather, he must

---

[1] *Celotex Corp.,* 477 U.S. at 323; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

[2] *Id.* at 322.

[3] *See Frakes v. Crete Carrier Corp.,* 579 F.3d 426, 430-431, (5th 2009) ("[P]laintiff has the burden to put forth sufficient evidence to create a genuine dispute" as to a material fact); *Florida Dep't of Ins. v. Chase Bank of Texas Nat'l Ass'n,* 274 F.3d 924, 928 (5th Cir. 2001) ("After a defendant properly moves for summary judgment, the non-movant plaintiff must bring forward sufficient evidence to demonstrate that a genuine issue of material fact exists on every element of a claim."); *Ginsberg 1985 Real Estate P'ship v. Cadle Co.,* 39 F.3d 528, 531 (5th Cir. 1994) (citation omitted) ("An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party.")

[4] *Abbott v. Equity Group, Inc.* 2 F.3d 613, 619 (5th Cir. 1993) (*citing Celotex Corp.*, 477 U.S. at 324).

[5] *Audler v. CBS Innovis, Inc.*, 519 F.3d 239, 254 (5th Cir. 2008).

[6] Affidavit of Geoffrey Compeau, attached as Exhibit "A" to Shaw's Motion for Partial Summary Judgment (R. Doc. 10946).

instead put forth competent evidence to support the allegations and withstand summary judgment, which Plaintiff has failed to do.[7]

Plaintiff attempts to suggest that Shaw knew all about formaldehyde by mischaracterizing the testimony of Shaw's corporate representative, Geoffrey Compeau.  Specifically, Plaintiff argues that Shaw admitted that it knew of formaldehyde-related problems as early as 2005 and failed to warn FEMA by citing to certain pages within the deposition of Mr. Compeau (pp. 80-81, 86-89, 90, 99-103, 109-121, 128, 143-144, 146, 148-149, 158-160) (Opposition, pp. 5-7). However, this testimony only confirms the following things: 1) Shaw personnel noticed odors emanating from some of the travel trailers in the staging yards;[8] 2) Shaw attributed these odors to residual from the manufacture of the travel trailers;[9] 3) Shaw resolved this issue by ventilating the travel trailers and found that the odors dissipated in most cases;[10] 4) Shaw did not know whether these odors related to formaldehyde;[11] and 5) Shaw did not know that formaldehyde in travel trailers was even an "issue" until it was informed by FEMA in March 2006.[12]  These facts do not a duty to warn make.

---

[7] *St. Etienne v. Martin Marietta Manned Space Systems*, 1994 WL 179968 *1 (E.D. La., April 29,1994) (When confronted with affidavits or deposition testimony, the plaintiff may not simply rest on his pleadings, but must instead come forward with competent evidence to support the allegations of the petition.)

[8] Deposition of Geoffrey Compeau, p. 100, attached hereto as Exhibit "A."

[9] *Id.* at p. 116, Exh. "A."

[10] *Id.*, Exh. "A."

[11] *Id.* at p. 149, Exh. A.

[12] *Id.* at p. 115, Exh. "A."

Lacking anything of real substance, Plaintiff seizes on Shaw's knowledge of "odors" in trailers, and he attempts to extrapolate from that knowledge a duty to warn.  In fact, throughout the Opposition, Plaintiff uses the phrase "chemical odors" in an apparent attempt to make the odors seem more nefarious.  During his deposition, Mr. Compeau, who holds a Ph.D. in chemistry, said, "Well, all odors are chemical."[13]  Clearly he meant that all odors are chemical in nature, not that the trailers smelled like chemicals.  Plaintiff repeats this phrase so frequently in the Opposition that he winds up mischaracterizing Mr. Compeau's testimony – Mr. Compeau never said that Shaw expected FEMA to direct Shaw about "chemical odor issues," and he never said that Shaw had received complaints of "chemical odors."[14]  In any event, nearly everyone, including Plaintiff, described the smell as a "new" smell, which most people find pleasing.  Plaintiff's attempt to make the smell sound worse than it was should not be countenanced, and certainly this argument does not create a duty to warn.

Plaintiff further tries to confect a duty to warn by discussing Shaw's knowledge of formaldehyde without mentioning that the referenced communications either came in response to, or well after, an inquiry from FEMA about formaldehyde: "[T]he record contains numerous emails exchanged between or including numerous Shaw employees between March 2006 and July 2006 that clearly demonstrate Shaw's knowledge of formaldehyde."  (Opposition, p. 7).  In particular, Plaintiff points to a May 17, 2006 email where a Shaw employee wrote that FEMA ought to be aware of formaldehyde.  (Opposition, p. 7).  It appears that Plaintiff is suggesting the email creates an issue of fact as to whether FEMA was aware of the formaldehyde issues before

---

[13] *Id*. at p. 101, Exh. "A"; see also pp. 127, 138, Exh. "A."

[14] *Compare* Opposition, p. 6, to Compeau Deposition, pp. 100-03 and 116-17, Exh. "A."

Shaw.  (Opposition, pp. 7-8).   What Plaintiff fails to point out to the Court is that this communication, from a single Shaw employee, came roughly *two months after FEMA's Brian Boyle asked about formaldehyde and received a satisfactory response from Shaw.*

On March 20, 2006, at 10:14 a.m., FEMA representative Brian Boyle sent an email to all IA/TACs asking about airing out trailers and what the contractors were doing to handle formaldehyde.  Shaw responded on March 21, 2006, at 10:41 a.m. – just more than 24 hours later – to Mr. Boyle (with a copy to Mr. Boyle's supervisor, Larry Woodruff), attaching Shaw's trailer staging yard procedures (which showed that Shaw routinely ventilated trailers).[15]   Mr. Deane even asked Mr. Boyle, "Let me know if this is what you are looking for."[16]   At his deposition – Mr. Boyle was questioned about this document, and he confirmed that he was satisfied with Shaw's response.[17]

But even if this were not the case, Plaintiff has already alleged that FEMA became aware of the health concerns related to formaldehyde in travel trailers, as early as October 2005.[18]   Now that FEMA is no longer a party to this litigation, Plaintiff cannot simply ignore this allegation just because it is convenient to his argument on this issue.

The Opposition also totally overlooks a critical point: the mere presence of formaldehyde is not dangerous.  It is a naturally occurring part of the atmosphere, and it is produced as part of the normal human metabolism.   Even if Shaw knew that the "odors" were (in part)

---

[15] *See* Email from William Deane to Brian Boyle, SHAW 013563-68, a copy of which is attached hereto as Exhibit "B."

[16] *Id.* at SHAW 013563.

[17] Deposition of Brian Boyle, pp. 60-62, attached hereto as Exhibit "C."

[18] C.A. No. 09-2977, R. Doc. No. 1, ¶¶ 53-54.

formaldehyde, there is no evidence to suggest that Shaw had actual knowledge that the concentration of formaldehyde was dangerous.  Given that trailers had been used in many prior disasters without complaint, and given that FEMA was aware of and dealing with the odor issue as of March 2006, Shaw had absolutely no reason to believe that there was anything dangerous in the trailers.

Ultimately, the Opposition fails to present evidence that Shaw knew about dangerous levels of formaldehyde in travel trailers.  As a result, it cannot withstand summary judgment.

**B.    The Government Contractor Defense Is Applicable to Plaintiff's Failure to Warn Claim.**

**1.    The Government Contractor Defense Does Not Require that the Government Explicitly Control Warnings.**

Plaintiff argues that the government contractor defense does not apply in this case because FEMA did not expressly control or limit the warnings provided to FEMA trailer occupants.  However, the cases cited by Plaintiff to support this argument are inapposite because they all involve products liability claims against manufacturers.  As the Court is aware, all claims relating to the Louisiana Products Liability Act against Shaw have been dismissed with prejudice.[19]

Under circumstances similar to the instant case, courts have held that the defense does apply to failure warn claims against government contractors even when the contract and/or the government is silent with respect to warnings.  For example, the Fifth Circuit in *Kerstetter v. Pacific Scientific Company*, affirmed a district court's ruling that the government contractor

---

[19] R. Doc. No. 11240.

6

applied to a failure to warn claim against a maintenance contractor.[20]   The Fifth Circuit affirmed summary judgment based on the government contractor defense, even though there was no discussion of whether the maintenance contractor's contract reflected government control as to warnings.[21]

Further, in cases involving design defects, courts in other jurisdictions have held that the government contractor defense bars failure to warn claims even where the government's specifications do not affirmatively prohibit warnings.  For example, the court in *Russek v. Unisys Corp.*, held that "[w]here the contractor and the government have equal knowledge regarding a defect, …a specification that does not require warnings should be treated as the equivalent of a specification that warnings are not required.   Otherwise, the contractor will be liable for the design defect itself."[22]

This result only makes sense.  Shaw is not a manufacturer and therefore has no superior knowledge with respect to the product at issue.  In these circumstances, to infer a duty to warn from a silent contract would make contractors the unwilling warrantors of every product that they use in the course of their work.  The government contractor defense is designed to prevent litigants from second-guessing whether a contractor should have done more than what the contract required.   Here, there was no duty to warn in Shaw's contract, and under the circumstances of this case, the government contractor defense applies to bar Plaintiff's failure to warn claim.

---

[20] 210 F.3d 431 (5th Cir. 2000).

[21] *Id.*

[22] 921 F. Supp. 1277, 1294 (D.N.J. 1996).

2.     **There Is No Issue of Material Fact As to Shaw's and FEMA's**
       <u>**Knowledge Regarding the Dangers of Formaldehyde.**</u>

A federal contractor satisfies the government contractor defense's third condition by proving it knew of no "reasons not known to the government why the application" of the approved specifications "[w]as unsafe or unreasonable."[23]   But the third condition does not oblige the contractor to test for or discover inherent risks that neither the United States nor its contractor ever considered to be problematic.[24]   Instead, the contractor must warn the United States "of dangers about which it has *actual knowledge,*" and not about dangers which, in hindsight, the contractor allegedly *should have* identified.[25]   Moreover, *Boyle's* third condition tests only whether the contractor knew of dangers "not known to the government."[26]

In March 2006, FEMA learned of certain odor-related/formaldehyde complaints in travel trailers occupied by other residents.   As discussed above, FEMA asked Shaw and the other IA/TACs what they were doing to air out these travel trailers.  Shaw responded, and FEMA was

---

[23] *In re Katrina,* 2007 WL 4219351 *5 (E.D. La. 2007); *see also Kerstetter,* 210 F.3d at 436.

[24] *See Boyle,* 487 U.S. 500, 513 (U.S. 1988) (the standard is not what a contractor should have "reasonably known" because that is inadequate to "protect the federal interest embodied in the 'discretionary function' exemption"); *see also Kerstetter,* 210 F.3d at 436 (holding the government contractor defense applies "even when the contractor did not warn the government of latent defects ... that neither the contractor nor the government considered").

[25] *See Kerstetter,* 210 F.3d at 436 (quoting *Trevino v. General Dynamics,* 865 F.2d 1474, 1487 (5th Cir. 1989) (emphasis in original).

[26] *In re Katrina,* 2007 WL 4219351, at *5. Thus, a contractor also may satisfy this third condition by showing the United States' knowledge of potential risks either equaled or exceeded the contractor's knowledge. *See, e.g., Miller v. Diamond Shamrock Co.,* 275 F.3d 414, 422-23 (5th Cir. 2001) (affirming summary judgment partly because the United States knew of the danger posed by a byproduct of Agent Orange); *Kerstetter,* 210 F.3d at 438 n.9 (affirming summary judgment partly because the United States "knew at least as much as the contractors"),

satisfied with that response and did not direct Shaw to issue a formaldehyde warning.[27]  Shaw cannot be held liable for not having done so on its own.[28]

Plaintiff has provided no evidence showing that at any time Shaw failed to warn FEMA about anything that FEMA did not already know.  Accordingly, this element is satisfied.

## CONCLUSION

In response to Shaw's motion, Plaintiff, presented argument, but no evidence, that Shaw had an affirmative duty to warn of formaldehyde.  Plaintiff cannot prove that Shaw had actual knowledge of a danger and/or an obligation to look for possible dangers.  In addition, Plaintiff's Opposition does not create a genuine issue of fact with respect to Shaw's government contractor defense.  The record establishes that Shaw is entitled to the immunity afforded by this defense.  The Affidavit of Geoffrey Compeau, along with the depositions of FEMA representatives and other evidence submitted by Shaw stand unrebutted, and as such summary judgment should be entered, dismissing all claims related to failure to warn.

---

[27] *Id.*

[28] *See Kerstetter*, 210 F.3d at 449 ("Defendant BASI argues that since the release problem was not an alleged design defect, and since BASI is a maintenance contractor, it has no duty to warn.") (citation omitted).  They did not voluntarily undertake to warn by the attendance at the FEAT meeting.  We agree with BASI's statement that "[i]t stands logic on its head to argue that the Navy's disclosure of a design defect at a meeting BASI attended as a maintenance representative triggered a duty of BASI to warn the Navy about the same problem.").

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**


   /s/ M. David Kurtz
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000

**ATTORNEYS FOR DEFENDANT,
SHAW ENVIRONMENTAL, INC.**


## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2010, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.


   /s/ M. David Kurtz