# Transcript of the Testimony of
# Videotaped 30(b)(6) Shaw Environmental, Inc. through Geoffrey C. Compeau, Ph.D.

**Date taken: January 7, 2010**

**In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Wright)**

***Note***
All **electronic deposition & exhibit files**
are available at **www.psrdocs.com**.
Please call or e-mail reporters@psrdocs.com if you need a
**Username** and **Password**.

# Professional Shorthand Reporters, Inc.

Phone:   504-529-5255
Fax:   504-529-5257
Email:   reporters@psrdocs.com
Internet:   www.psrdocs.com

EXHIBIT "A"

In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Wright)          Videotaped 30(b)(6) Shaw Environmental, Inc. through Geoffrey C. Compeau, Ph.D.

Page 100

1     Q    Not at installation.  When did
2  these problems arise?
3        MR. BONE:
4             Objection, form.
5        MR. KURTZ:
6             Objection, form.
7        THE WITNESS:
8             We understand that in the forward
9  yards, where we worked side by side with
10 FEMA, that, you know, on arrival, some of
11 the trailers may have had odors, but again,
12 these were brand new equipment built to
13 those specifications, and so we simply
14 ventilated the trailers.
15 EXAMINATION BY MR. D'AMICO:
16    Q    Shaw identified odors emanating
17 from the trailers in the storage yards?
18       MR. KURTZ:
19            Objection, form.
20       THE WITNESS:
21            Shaw personnel indicated there
22 were odors from time to time in some of the
23 trailers that came into the forward yards.
24 EXAMINATION BY MR. D'AMICO:
25    Q    Were these chemical odors?

In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Wright)     Videotaped 30(b)(6) Shaw Environmental, Inc. through Geoffrey C. Compeau, Ph.D.

Page 101

1    MR. BONE:
2        Object to the form.
3    THE WITNESS:
4        Well, all odors are chemical.
5    EXAMINATION BY MR. D'AMICO:
6    Q    And did Shaw ever ascertain what
7    the nature of the odor or cause of the odor
8    was?
9    MR. BONE:
10       Objection, form.
11   MR. KURTZ:
12       Objection, form and scope.
13   THE WITNESS:
14       It was a new trailer smell is how
15   it often came up.
16   EXAMINATION BY MR. D'AMICO:
17   Q    Shaw did not endeavor to determine
18   what the cause or source of the odor was?
19   MR. BONE:
20       Object to the form.
21   MR. KURTZ:
22       The same.
23   THE WITNESS:
24       We did not.
25   EXAMINATION BY MR. D'AMICO:

In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Wright)        Videotaped 30(b)(6) Shaw Environmental, Inc. through Geoffrey C. Compeau, Ph.D.

Page 102

```
 1       Q    Did Shaw ever endeavor to find out
 2   if these chemical odors were causing or were
 3   capable of causing health problems to the
 4   occupants of the temporary housing units?
 5       MR. BONE:
 6            Object to the form.
 7       MR. KURTZ:
 8            And scope.
 9       THE WITNESS:
10            Again, we ventilated the trailers,
11   and typically that was sufficient to deal
12   with the issue, so we didn't believe there
13   was any sustained issue with the odor.
14   EXAMINATION BY MR. D'AMICO:
15       Q    All right.  My question was, did
16   Shaw ever endeavor to determine whether or
17   not any of these chemical odors posed a
18   health risk to the occupants of the
19   temporary housing units?
20       MR. BONE:
21            Object to the form.
22       MR. KURTZ:
23            And scope.
24       THE WITNESS:
25            No, we did not.
```

In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Wright)          Videotaped 30(b)(6) Shaw Environmental, Inc. through Geoffrey C. Compeau, Ph.D.

Page 103

```
 1   EXAMINATION BY MR. D'AMICO:
 2        Q    You did not.  Okay.  And did you
 3   ever do any testing, Shaw do any testing of
 4   the chemicals that were emanating in these
 5   travel trailers to determine what the
 6   chemicals were?
 7        MR. BONE:
 8             Object to the form.
 9        MR. KURTZ:
10             And scope.
11        THE WITNESS:
12             We relied on --
13        MR. KURTZ:
14             Go ahead.
15        THE WITNESS:
16             We relied on -- When it came to
17   our attention, we relied on FEMA, who we
18   understood was studying the issue, and we
19   anticipated would get back and direct us as
20   appropriate.
21   EXAMINATION BY MR. D'AMICO:
22        Q    What did you understand FEMA to be
23   studying?
24        MR. MILLER:
25             Objection, vague, time.
```

In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Wright)        Videotaped 30(b)(6) Shaw Environmental, Inc. through Geoffrey C. Compeau, Ph.D.

Page 115

1    Shaw personnel that there was a problem with
2    odors of formaldehyde emanating from the
3    travel trailers?
4        MR. BONE:
5            Objection, form.
6        MR. KURTZ:
7            Objection.
8        THE WITNESS:
9            With odors?  Yes.  During, as I
10   said, in the forward yards, but that was
11   handled by ventilation.
12           Specific to formaldehyde, it
13   really wasn't until approximately this time,
14   May -- excuse me, March of 2006, that FEMA
15   began to raise it to us as formaldehyde.
16   EXAMINATION BY MR. D'AMICO:
17       Q    So let me understand your
18   question.  There was some notice of odors
19   emanating from the travel trailers in the
20   storage yards prior to March of '06, but it
21   had not been identified as formaldehyde; is
22   that what you're saying?
23       A    Yes.
24       MR. BONE:
25           Objection.

Case 2:07-md-01873-KDE-MBN   Document 11828-1   Filed 02/19/10   Page 7 of 11

In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Wright)    Videotaped 30(b)(6) Shaw Environmental, Inc. through Geoffrey C. Compeau, Ph.D.

Page 116

1    MR. KURTZ:
2         Objection, form.
3    EXAMINATION BY MR. D'AMICO:
4    Q    Okay.  So that the Shaw personnel
5    noticed some chemical odors, but didn't know
6    what it was initially?
7    MR. KURTZ:
8         Objection, form.
9    MR. BONE:
10        Objection.
11   THE WITNESS:
12        They noticed transient odors,
13   assuming they were residual from
14   manufacture, aired out the trailers, and
15   found out that the odors dissipated.  I
16   mean, that was by and large the case.
17        We had very few, to my knowledge,
18   complaints of any odors when these trailers
19   were actually installed and people were
20   habitating them in the over, I think, 20,000
21   trailers that we had successfully installed.
22   EXAMINATION BY MR. D'AMICO:
23   Q    Are you saying you had no
24   complaints of odors from the people who were
25   inhabiting these 20,000 trailers?

Case 2:07-md-01873-KDE-MBN   Document 11828-1   Filed 02/19/10   Page 8 of 11

In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Wright)   Videotaped 30(b)(6) Shaw Environmental, Inc. through Geoffrey C. Compeau, Ph.D.

Page 117

```
 1      A    You know, we had a few.  I would
 2 have to look at the records for a number.
 3 But we had a few, to my recollection.
 4      Q    All right.
 5      A    And again, it was not a systemic
 6 issue.
 7      Q    Isn't it true that pursuant to the
 8 contract with FEMA, you were required to
 9 keep a complaint log of resident complaints,
10 residents of the travel trailers?
11      A    Yes.
12      MR. KURTZ:
13           Objection, form.
14 EXAMINATION BY MR. D'AMICO:
15      Q    All right.  Did Shaw do such?
16      A    Shaw and subcontractors.  We had a
17 responsibility for operations and
18 maintenance of the trailers.
19      Q    Yes.  And you were supposed to
20 keep a complaint log on a disk in a certain
21 format, correct?
22      MR. KURTZ:
23           Objection, form.
24      THE WITNESS:
25           We created a database, so it would
```

Case 2:07-md-01873-KDE-MBN   Document 11828-1   Filed 02/19/10   Page 9 of 11

In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Wright)     Videotaped 30(b)(6) Shaw Environmental, Inc. through Geoffrey C. Compeau, Ph.D.

Page 127

1   trailers were delivered to us.  We're not
2   sure how long past production it was.  So
3   this is essentially like a new car, right?
4   I mean, there's going to be post-production
5   odors, and over time the odors dissipate and
6   everything is ventilated, and, you know,
7   these things are no longer noticeable.
8   EXAMINATION BY MR. D'AMICO:
9        Q    Okay.
10       A    So we treated it as a new piece of
11  equipment that may have had some residual
12  materials and that ventilation solved the
13  problem.
14       Q    Similar to a new car smell?
15       A    Similar, yeah, to a new -- and
16  even a new house smell, I mean, you know,
17  things that are newly manufactured will have
18  some residual odors, and I think we have all
19  experienced them in our lives.
20       Q    Yeah.  And this new car or new
21  home or new travel trailer odor is a
22  chemical odor, correct?
23       A    Typically, yeah, they have to be
24  caused by chemicals, right.
25       Q    Okay.

In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Wright)    Videotaped 30(b)(6) Shaw Environmental, Inc. through Geoffrey C. Compeau, Ph.D.

Page 138

1   vent the trailer.
2   EXAMINATION BY MR. D'AMICO:
3       Q    Of the chemical odors?
4       MR. BONE:
5            Object to the form.
6       THE WITNESS:
7            Of odors, yeah.
8   EXAMINATION BY MR. D'AMICO:
9       Q    All right.  And you have already
10  said that the odors were chemical in nature,
11  correct?
12      MR. BONE:
13           Object to the form.
14      MR. KURTZ:
15           Objection.
16      THE WITNESS:
17           All odors are.
18  EXAMINATION BY MR. D'AMICO:
19      Q    "All odors are."  Thank you.
20           Now, I would like to show you
21  another document that has been Bates labeled
22  Shaw 013546 from Mike Noble.  Do you know
23  who Mike Noble is?
24      A    Yes, I do.
25      Q    Who is Mike Noble?

Case 2:07-md-01873-KDE-MBN   Document 11828-1   Filed 02/19/10   Page 11 of 11

In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Wright)     Videotaped 30(b)(6) Shaw Environmental, Inc. through Geoffrey C. Compeau, Ph.D.

Page 149

```
 1            Objection, asked and answered,
 2    beyond the scope.
 3         MR. KURTZ:
 4            I join.
 5    EXAMINATION BY MR. D'AMICO:
 6         Q    I'm asking for a definitive answer
 7    first.  You can explain later.  Did Shaw
 8    believe there was a problem, yes or no, and
 9    then you can explain?
10         A    Yeah, we believed there were odor
11    issues that could be mitigated by
12    ventilation, but we were not -- it was
13    unclear as to whether those were
14    specifically related to formaldehyde.
15         Q    Well, at some point, though, we
16    have proof that FEMA was discussing that it
17    was a formaldehyde problem, correct?
18         MR. BONE:
19            Object to the form.
20         MR. KURTZ:
21            Objection.
22         THE WITNESS:
23            Again, they studied the problem.
24    Whether FEMA, again, sitting here, whether
25    FEMA actually ever determined that, in fact,
```