UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 SECTION: N(5) |
| This Document Relates to: *Lyndon T. Wright. v. Forest River, Inc., et al*, Docket No. 09-2977 | | * * * | JUDGE ENGELHARDT: MAG: CHASEZ |

*****************************************************************************

**REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT FOREST RIVER, INC.'S MOTION TO EXCLUDE PLAINTIFF'S ANIMATION EXHIBIT**

In his response to Forest River's Motion to Exclude Animation Exhibit, plaintiff Lyndon Wright alleges that his video is demonstrative evidence that is relevant and not unfairly prejudicial. As is detailed below, these contentions lack merit, and thus this animation should be excluded.

**I.     Plaintiff's Reliance on the animation in the Gulf Stream Trial is misplaced.**

Plaintiff repeatedly urges this Court to allow this animation because it was admitted in the Gulf Stream bellwether. However, Forest River points out that these two cases are vastly different, in that parties in the Gulf Stream case did not engage in the destructive testing that occurred in the instant case. As plaintiff himself notes, the testing in this case produced "over five thousand (5,000) photographs of the unit and over fifteen (15) hours of video." Rec. Doc. 11708, p. 8. What better evidence does plaintiff need to prove his case? It is curious that, after repeatedly asking for destructive testing, plaintiff now wishes to discard the evidence generated by such inspection. This

direct documentary evidence, which is not colored by one party's viewpoint, is the most accurate means of explaining plaintiff's theories in this case.

Although plaintiff attempts to characterize the off-gassing of formaldehyde as a convoluted and confusing process, the theory of plaintiff's case is elementary and can be told best through actual photos of the unit. Forest River also points out that plaintiff is using this animation as a vehicle to lessen plaintiff's burden of proof in this case. For example, plaintiff contends that moisture invaded the wall cavities due to defects in the trailer's insulation and ventilation system. Plaintiff should be required to show the jury photographic or video evidence that condensation damaged actually occurred as opposed to a manipulated simulation of this theory via the animation. While the animation may have been appropriate in the Gulf Stream trial due to the lack of destructive testing of the unit, the same rationale is inapposite here, and the animation should be excluded.

## II.     Plaintiff's animation is not analogous to a "sketch."

Plaintiff next argues that his exhibit is simply a demonstrative, likening the animation to an expert "drawing a sketch on a note pad." Rec. Doc. 11708, p. 4. However, as plaintiff admitted, this animation does not demonstrate one expert's testimony, but, instead, synergistically combines elements of the testimony of **five** experts. *Id.* at p. 8. Thus, the animation is not one individual sketch done by an expert to demonstrate his testimony, but rather a comprehensive re-creation plaintiff's entire theory of the case which not only combines their findings but takes unjustified liberties with those findings. Plaintiff's analogy fails, as the animation is much more powerful than any drawing on a sketch pad.

Additionally, because this animation demonstrates the testimony of five individual experts, it amplifies Forest River's contention that an effective cross-examination is virtually impossible.[1] The animation is not clearly severable as to the distinct opinions of each expert, as plaintiff has not identified which portions of the animation correspond to the testimony of Mallet, Ritter, Smulski, Moore and Lagrange. In other words, in addition to being forced to rebut this animation through five piecemeal cross-examinations, Forest River will have to guess as to which parts of the animation correspond to each expert's theories. This is unacceptable, and the animation must be excluded.

### III. Plaintiff must meet the substantial similarity test

Plaintiff also contends that this animation is not a recreation of disputed events, but rather an illustration of scientific principles and thus not subject to the "substantial similarity" test. Rec. Doc. 11708, p. 4. This argument is completely undercut by the animation itself: it depicts what plaintiff claims to be a perfect replica of the Wright trailer and then proceeds to demonstrate plaintiff's version of how formaldehyde – depicted as a red fog – off-gassed, permeated the cabin, and was re-circulated by the air conditioner during his occupancy. It cannot be reasonably argued that the animation is simply illustrating scientific principles. Instead, the clear impact of the presentation is an attempt to re-create the disputed events of this case in the light most favorable to plaintiff. Accordingly, the "substantial similarity" test must be satisfied before the animation may be admitted.

Plaintiff likens this animation to one found to be admissible by the Sixth Circuit in *In re Air Crash Disaster*, 86 F. 3d 498 (6th Cir. 1996). That case dealt with an airplane crash allegedly caused

---

[1] Plaintiff suggests cross-examining each expert whose opinions form the animation is adequate. Forest River has already thoroughly addressed why this solution is inadequate in its original Motion.

by an improperly functioning circuit breaker. The animation there displayed the functions of the single circuit breaker at issue and was used by an expert to "demonstrate the circuit breaker's inner workings." *Id*. at 538-539. Forest River first notes that the mechanism of a circuit breaker is much more complex than plaintiff's off-gassing theories, and thus the use of the animation in that case was arguably justified. Moreover, unlike in this case, the animation in *In re Air Crash Disaster* only depicted a small portion of the entire accident and did not re-create the events at issue. Were that animation truly analogous to the animation in this case, it would have shown the circuit breaker failing and then the plane crashing. The animation in this case is clearly distinguishable from the facts of *In Re Air Crash Disaster*.

Plaintiff then asserts that, assuming the substantial similarity test applies, he has met all requirements of that test. He argues that the exhibit "accurately reflects the manner in which Mr. Wright lived in this trailer." Rec. Doc. 11708, p.4. Plaintiff's characterization is inaccurate. In the animation, none of the trailer's windows are ever opened, yet **all** of the other fact witnesses who visited Wright in the trailer testified that he constantly had the windows open.[2] Plaintiff claims these women were only "occasional guests," but Nicole Dison stayed with Wright intermittently for a period of six months and lived with him continuously for at least a full month. *See* Ex. A, Deposition of Dison, p. 24;43-45. Wright's mother lived with him continuously for two months. *See* Ex. B, Deposition of Bobbie Wright, p. 122-123. In addition, his current fiancé visited him once every two weeks. *See* Ex. C, Deposition of T. Marsh, p. 57-58. The consistent testimony from all the other fact witnesses who resided in the trailer demonstrates that Wright kept the windows open

---

[2] *See* deposition excerpts from witnesses Nicole Dison, Bobbie Wright, Michelle Wright and Tyshone Marsh cited in Forest River's original motion.

regularly. Plaintiff's animation fails to acknowledge this fact or to demonstrate the effect that open windows and doors would have on the off-gassing or concentration of formaldehyde within the unit.

Plaintiff also claims that he only opened the windows when he cooked and cleaned, thereby attempting to rebut the testimony of his mother, sister, Dison and Marsh. Plaintiff's assertions are misleading, and the testimony he cites was only in response to questions specifically asking whether he opened the windows when cooking and cleaning:

> Q. Did you ever or was it your course of practice to open the windows when you would clean the unit?
> A. Yes.
>
> * * *
> Q. When you cooked, did you open your windows?
> A. Yes. I would open the windows, yes.
>
> Ex. D, Deposition of Wright p. 125 & 312.

Wright testified that he opened the windows open for the purpose of air circulation:

> Q. Was there ever a time when you opened the windows to attempt to get rid of the smell that you described, the odor?
> A. To have circulation of air, yes.
> * * *
> Q. Okay. Did you ever do anything like open windows, open the door, run the exhaust fans, in order to try and get the new smell out?
> A. I opened the windows, but not specifically for that purpose. I mean, just to have air circulation or something.
>
> *Id.* at p. 128; 270

Thus, Wright's own testimony indicates that he opened the windows for ventilation, consistent with the testimony of other witnesses previously cited. Wright's animation does not include these facts and fails to account for their impact. As such, plaintiff's proffered animation fails the substantial similarity test.

Furthermore, a case cited in plaintiff's response provides instructive value with regard to the substantial similarity test. Although dealing with South Carolina state law, in *Clark v. Cantrell*, the South Carolina Supreme Court upheld the exclusion of an animation which did not accurately reflect the testimony of the proponent and her expert witness. 529 S.E. 2d 528 (S.C. 2000). In *Clark*, the defendant sought to introduce an animation of an auto accident through an expert witness. *Id*. at 535. The trial judge excluded the animation because it was inconsistent with prior testimony (including that of the defendant's expert witness) and inaccurately reflected the evidence. *Id.*

In affirming, the South Carolina Supreme Court noted that the animation did not accurately reflect the initial position of the defendant's car according to the defendant's own testimony. *Id.* at 538. The court also found that the animation also did not comport with the defendant's expert's testimony regarding the location of the plaintiff's car. *Id*. The court stated that an animation need not be consistent with the testimony and evidence of the opposing party, but that <u>it should at least be consistent with the proponent's version of the events</u>. *Id*. at 537 (emphasis added). The court held that this evidence did not accurately reflect the testimony of the proponent and her expert, and, because of these inaccuracies, the animation would mislead the jury. *Id*. at 538.

This case further supports Forest River's contention that the animation must, at the very least, be substantially similar to the version of events told by **plaintiff and his own witnesses**. This animation is not substantially similar to the version of events provided by Wright and other fact

witnesses who observed firsthand the conditions of his occupancy. The animation is inaccurate and misleading, and the Court should exclude it.

Finally, two additional points must be addressed. First, plaintiff repeatedly argues that the brevity of this animation is beneficial to both the jury and the Court. Forest River need not remind the Court that plaintiff has presented **five** experts to discuss design and construction issues with the trailer, and, no matter how "brief," this animation is adding another layer to plaintiff's already cumulative presentation.

Second, although plaintiff does not address it in his response, Forest River would again point out that the plaintiff's usage of the color red – most notably the thick red fog that appears throughout the animation – is overly prejudicial and underscores the need for the Court to exclude this animation. In sum, this evidence is misleading, cumulative, and substantially outweighed by the danger of unfair prejudice or misleading the jury. The Court should exclude it.

## CONCLUSION

In light of the above and foregoing, plaintiff has failed to demonstrate that the animation at issue is substantially similar to the testimony of plaintiff's own witnesses. The proffered exhibit is misleading, prejudicial, and duplicative of other more direct photographic evidence. The probative value, if any, of plaintiff's animation is substantially outweighed, and it should be excluded.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
JASON D. BONE (Bar Roll No. 28315)
CARSON W. STRICKLAND (Bar Roll No. 31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

## **C E R T I F I C A T E**

I hereby certify that on the 24th day of February, 2010, a copy of the foregoing Memorandum in Support was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone
JASON D. BONE