UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION: N(5) |
| | | * | |
| This Document Relates to: *Lyndon T. Wright v.* | | * | JUDGE ENGELHARDT: |
| *Forest River, Inc., et al*, Docket No. 09-2977 | | * | |
| | | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**FOREST RIVER INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE THE EXPERT TESTIMONY OF PAUL J. LAGRANGE**

Defendant, Forest River, Inc., (hereinafter "Forest River") respectfully submits the following reply memorandum in support of its Motion *in Limine* to Exclude the Testimony of Paul Lagrange.

**I.   Lagrange's Testimony should be excluded in its entirety, as it is cumulative evidence.**

Plaintiff argues that Federal Rule of Evidence 403 "does not require a court to exclude evidence even if that evidence is duplicative." Rec. Doc. 11746, p. 1.  He argues that, rather than being cumulative, the testimony of Lagrange, Ritter and Mallet merely "overlap" and are therefore admissible.

However, a cursory review of these three expert reports reveals that Mallet has offered **only** cumulative opinions, taking the test results from Lagrange, the engineering analysis from Ritter, and the findings of other experts and merging them into a 130 page report.  Mallet admitted that, in reference to plaintiffs' other construction and design experts, he was ". . . just repeating their and

taking their position in how the building affected it."[1]  In the Fleetwood bellwether, he similarly testified that, "I basically lead the team, disseminate who is going to look at what, and have them to either -- if there are calculations involved, perform the calculations that will back up or that will tell me whether a position that we have taken is accurate or inaccurate. They're the more technical end of the team, but, in general, I see and understand how the whole package fits together, how the parts and system works or doesn't work together, and how – if it doesn't function, why it doesn't function properly."[2]  By plaintiff's own admission, Mallet simply "synthesizes" information presented by other experts. Rec. Doc. 1146, p. 3.

As the Court is well aware, Federal Rule of Evidence 403 excludes relevant evidence if it is outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  Fed. R. Evid. 403 (2008).  This Court was clear in its prior rulings in this MDL that, "No duplicative testimony will be allowed.  Multiple opinions on the same subject will generally not be admitted, absent prior consent of the Court based on a showing of compelling reasons."  (Rec. Doc. 2062, p. 1).

Plaintiff should not be able to present testimony from Lagrange, as it is entirely cumulative of Mallet's testimony.  Plaintiff should either select Mallet and allow him to testify on this broad array of topics, or he should present experts like Lagrange to present their testing and conclusions.  Forcing plaintiff to select Mallet or Lagrange is even more reasonable in light of the fact that Lagrange, like Mallet, is a "building scientist."  The Court should not allow both of these two experts, each of whom profess the same expertise (and neither of whom have an engineering degree),

---

[1]  *See* Ex. A, Deposition of Al Mallet, dated 7/17/09, p. 126.

[2]  *See* Ex. B, Deposition of Al Mallet, taken 10/28/09, p. 105-06.

2

to testify at trial.  Contrary to plaintiff's argument, no "unique perspective" will be lost if Lagrange is precluded from testifying, as his report is incorporated in its entirety in Mallet's report.   Given the fact that trial is to last only two weeks, plaintiff's decision to list Lagrange, Mallet and three other witnesses to discuss design and construction issues can only be viewed as a diversionary tactic. Plaintiff wants to sit back and "have all of these witnesses available to be able to choose amongst them at the time of trial," requiring defendants to prepare for all.  Rec. Doc. 11748, p. 3.  This is contrary to the rules of evidence and a waste of the defendants', and Court's, resources.

      **B.**    **In the alternative, Lagrange's testimony should be limited to the testing performed.**

          **1. Building Code Compliance**

With respect to Lagrange's assertions that various building codes applied to the Wright travel trailer, Forest River refers the Court to the numerous arguments made in its motions *in limine* on Ritter, Mallet, and Lagrange, as well as those arguments made by Shaw in its motion *in limine* on the same topic.

Forest River would also point out, that, even if the Court allows certain experts to discuss building codes at trial, Lagrange should not be included among them.  Lagrange performed no research into this issue other than his own personal reading of the codes.  In examining code issues in the Gulf Stream bellwether trial, he made no reference to these building codes, and he had to be directed to examine this issue in this case.  Most importantly, there is no evidence that Lagrange ever contacted city officials (unlike other experts in this case) to discuss building codes, and his conclusions are therefore based entirely on his own opinions, not fact or research.  Although Forest River contends that plaintiff's arguments regarding the application of building codes are entirely

3

incorrect, Lagrange's own testimony demonstrates that he took an exceedingly passive role in this analysis and thus does not have sufficient factual support to justify his ability to opine on these matters at trial.

### 2. Indoor Air Quality

Finally, plaintiff asserts that Lagrange is (1) an indoor air specialist and (2) qualified to render opinions on indoor air quality in the Wright trailer.

As to the first point, although plaintiff claims that Wright is an "indoor air quality specialist," this seems to be based on nothing more than Lagrange's own declaration. Plaintiff cites a select portion of his deposition testimony but conveniently excludes the subsequent questioning on that point. The entire discussion reads:

> Q   Are you an indoor air quality specialist?
> A   I am.
> **Q   Is that something you can be certified or licensed in?**
> **A   Yes, sir, it is.  Certified in.**
> **Q   Are you a certified indoor air quality specialist?**
> **A    No, sir, I'm not.**

*See* Ex. C, Deposition of P. Lagrange, 7/1/09, p. 60-61.

The fact that Lagrange considers himself an expert does not make him so, and plaintiff's response to the motion *in limine* does not sufficiently explain how Lagrange has an expertise in this particular area outside of the ventilation tests that he conducted for this case. Indoor air quality determinations deal with more than just air exchange rates, and Lagrange does not have the technical expertise to assist the trier of fact, especially when one considers that plaintiff retained experts like Bill Scott to specifically opine upon indoor air quality.

Based on his blower door and duct blaster tests, Lagrange ultimately concluded that leaks in the unit contributed to "poor" indoor air quality within the unit. This description is so vague as to be meaningless, but, regardless, it is improper and prejudicial, as Lagrange lacks the technical background to offer this opinion at trial. Specifically, Lagrange does not have test data to support his opinions.

In deposition, Lagrange conceded that the most effective way to examine air quality inside a particular space is, not surprisingly, to test the air in that area. *Id.* at 132-33. He never conducted this testing. Plaintiff's motion now attempts to qualify Lagrange's statement on appropriate methods of testing, arguing that air samples from the unit from testing in 2009 would not be indicative of the conditions in Wright's trailer from 2006 to 2008. Rec. Doc. 11746, p. 6. Plaintiff notes, "Even if Lagrange had needed air samples to complete his specific testing, which Wright does not agree that he did, those samples would not and could not, be representative of the air that was present at the time Wright occupied the unit." *Id.* If the air samples were not representative, why does plaintiff rely on the formaldehyde levels he obtained during this August 2009 testing? .

Plaintiff is obviously arguing out of both sides of his mouth. He does not hesitate to manipulate and extrapolate the formaldehyde levels from August 2009 testing in order to compare them to the 2006 to 2008 time frame, but, when it comes to his theories on moisture and humidity, he claims that such extrapolation is meaningless. In reality, plaintiff could have obtained, and in fact did obtain (though did not discuss), temperature and humidity readings. He simply chose not to analyze the trailer's ability to control these factors during testing in any of his experts' reports. Plaintiff also claims that there is no way to compare the "contaminants" that might have been drawn in during the 2009 testing to those from 2006 and 2008. Plaintiff fails to mention, though, that the

5

"contaminants" Lagrange, Ritter and Mallet focus on are temperature, moisture and "particulate matter."  Both temperature and moisture factors were not overly site-specific factors in this case, since there are similar levels of humidity and temperature in Melville, La. (the site of testing) and Wright's residence in New Orleans, La.  Plaintiff simply elected not to discuss this information, and, at the end of the day, plaintiff offers no reasonable explanation in his response.[3]  Plaintiff could and should have utilized the temperature and humidity data from the datalogger deployed by his experts, and, indeed, plaintiffs did just that in the prior Gulf Stream bellwether **and** present Recreation by Design action.  Without this testing and analysis, *Daubert* requires that Lagrange (and the other experts) forfeit their right to discuss their opinions on indoor air quality at trial.

### III.  Conclusion

Forest River requests that the Court exclude the testimony of Paul Lagrange, or, in the alternative, limit his testimony in the manner described above.

        Respectfully submitted,

        /s/ Jason D. Bone
        ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
        JASON D. BONE (Bar Roll No. 28315)
        CARSON W. STRICKLAND (Bar Roll No. 31336)
        GIEGER, LABORDE & LAPEROUSE, LLC
        One Shell Square
        701 Poydras Street, Suite 4800
        New Orleans, Louisiana  70139-4800
        Telephone:  (504) 561-0400
        Facsimile:  (504) 561-1011
        ATTORNEYS FOR FOREST RIVER, INC.

---

[3]  Lagrange failed to monitor the temperature and humidity inside the unit while the air conditioner was in operation.  *See* Ex. C to original motion, Depo of Lagrange, p. 54-55.  He also has no opinion on the air conditioner's ability to control the temperature or humidity inside the unit. *Id.* at 54-56.  Lagrange candidly admitted that he will be unable to offer any testimony as to the humidity levels inside the unit while Wright lived in the trailer. *Id.* at 186-87.

**C E R T I F I C A T E**

  I hereby certify that on the 24th day of February, 2010, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

            /s/ Jason D. Bone
            JASON D. BONE