UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION: N(5) |
| | | * | |
| This Document Relates to: *Lyndon T. Wright v.* | | * | JUDGE ENGELHARDT: |
| *Forest River, Inc., et al*, Docket No. 09-2977 | | * | |
| | | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### FOREST RIVER INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE THE EXPERT TESTIMONY OF ALEXIS MALLET

Defendant, Forest River, Inc., (hereinafter "Forest River") respectfully submits the following reply memorandum in support of its Motion in Limine to Exclude the Testimony of Alexis ("Al") Mallet.

**A.      Mallet's Testimony should be excluded in its entirety.**

**1. Mallet's Testimony is Cumulative.**

Plaintiff argues that Mallet's testimony provides a "global picture" of Wright's travel trailer and "contextualizes" the separate analyses of plaintiff's other experts. *See* Rec. Doc. 11731, p. 6. He argues that, rather than being cumulative, the testimony of Lagrange, Ritter and Mallet merely "overlap" and are therefore admissible.

Although more fully explained in the reply memoranda for the motions *in limine* regarding Ritter and Lagrange, this characterization is not accurate.  Plaintiff should either select Mallet or present

Ritter, Lagrange, and Moore to present their analyses.   Mallet's testimony is clearly cumulative, and

plaintiff wants to sit back and "have all of these witnesses available to be able to choose amongst them

at the time of trial," requiring defendants to prepare for all.  Rec. Doc. 11748, p. 3.  This is contrary to

the rules of evidence and a waste of the defendants', and Court's, resources.

### 2.  Mallet's Testimony is Irrelevant.

After more than a month of testing and countless expert reports, plaintiff has finally revealed

his true approach to testing in this case: in his opposition to the motion *in limine* to exclude Mallet,

plaintiff writes, "**[T]here is no need to test scientifically proven concepts.**"  Rec. Doc. 11731, p. 12.

His logic is simple: science shows that, in general, increases in temperature and humidity can cause

increased formaldehyde off-gassing.  By showing that the temperature and humidity increased in the

Wright unit via the testimony of Ritter, Mallet and others, plaintiff will therefore be able to imply that

the formaldehyde must have been higher and therefore harmed plaintiff.

*Daubert* was designed precisely to eliminate such unsupported speculation.  Plaintiff essentially

wants to argue to the jury: "You heard from Mallet, Ritter and others that this trailer was hot and humid

and therefore off-gassed more formaldehyde, but we will leave it to your imagination exactly how much

more off-gassing occurred."   Plaintiff should not be allowed to offer testimony on ventilation and

insulation from Ritter when neither his nor any other expert's testimony specifically addresses the

alleged increased amounts of formaldehyde in the trailer.  Because the testimony is never linked to any

specific quantification of the rate of alleged increased off-gassing, or more importantly any

formaldehyde concentration within the unit, it does not assist the trier of fact and is therefore irrelevant.

B.      **In the alternative, Mallet's testimony should be limited with respect to the following.**

1.  **Mold Inside the Trailer**

Plaintiff argues that Mallet should be able to discuss his findings regarding mold in the trailer. This testimony must be excluded.  Defendants have filed a Motion for Summary Judgment regarding causation and argued that plaintiff has failed to provide any medical causation evidence to support Wright's mold claims.  Rec. Doc. 10933.  Plaintiff's Opposition to that motion does not appear to contest the dismissal of this claim (*see* Rec. Doc. 11542), yet plaintiff continues to refer mold in his responses to the motions *in limine* regarding Mallet and others.  Forest River requests that the Court preclude Mallet or any of plaintiff's other experts from referencing mold in Wright's trailer, as any discussion would only serve the confuse the jury with respect to the claims at issue in this case.

Plaintiff then suggests another rationale for allowing this evidence at trial, namely, that evidence of mold in the trailer must mean that there are hot, humid conditions which would affect formaldehyde off-gassing.  This argument is obviously plaintiff's attempt to get the mold issue before the jury via the proverbial "back door," and the Court should not allow him to do so.  First, plaintiff retained Mallet to serve as an expert on "building science" and other construction topics, and he should not be allowed to support his opinions on these topics by the use of circumstantial evidence related to mold.  Mallet and other experts should be forced to prove their theories on increased temperature and humidity with, logically, **temperature and humidity data**, not the presence of mold.

Moreover, the trailer was stored in an open field in Melville, Louisiana for over a year prior to the August 2009 inspection performed by Mallet.  The parties have stipulated that the trailer had a missing vent cap during the entire time it was stored at Melville.  Rec. Doc. 11608.  One need not be a mold expert to know that this continuous flow of water into the unit while stored at Melville would

3

not reflect the types or levels of mold present when Wright resided in the unit.  At his deposition, Mallet

even acknowledged the vent cap issue impacted the mold levels inside the Wright unit:

> Q.  Would you agree or disagree that,
> assuming the vent cap was missing for some
> period of time, that that was the likely
> source of the mold growth on the commode and
> floor in the bathroom?
>     A.  Yes.
>     Q.  From your review of the documents
> that you specified in your report relating
> to the condition of the unit over time, did
> you see any report during the occupancy of
> Mr. Wright that there was a missing vent cap
> on this particular unit?
>     A.  No, sir.
>     Q.  If we assume, then, that the
> missing vent cap occurred after the unit
> left Mr. Wright's -- after Mr. Wright was no
> longer an occupant of that particular unit,
> and that moisture intruded into the unit by
> virtue of the missing vent cap, and that
> that moisture caused mold growth on the
> commode, **would you agree with me then, sir,**
> **that the condition of the unit as you**
> **observed it in August of 2009 with respect**
> **to the mold growth within the unit was not**
> **the same as it would have been when**
> **Mr. Wright occupied the unit?**
>     A.  Correct.[1]

Mallet is not a forensic mold specialist, and he should not be allowed to draw conclusions from the

mold present in the trailer during August 2009 testing.

### 2.  Building Code Compliance

With respect to Mallet's assertions that various building codes applied to the Wright travel

trailer, Forest River refers the Court to the numerous arguments made in its motions *in limine* on

---

[1]   Ex. A, Deposition of Al Mallet, dated 1/12/10, p. 88-90 (emphasis added).

Ritter and Lagrange (Rec. Docs. 11393 and 11380), as well as those arguments made by Shaw in its motion *in limine* on the same topic (Rec. Doc. 11414).

### 3. General Construction Issues

Mallet has opined that the Forest River unit was not constructed for use in hot, humid climates and had "less than superior" quality of workmanship.

Plaintiff dedicates the bulk of his rebuttal to this argument to a discussion of Mallet's professional experience. This discussion is irrelevant, and Forest River again asserts that Mallet's testimony should be excluded. Again, these workmanship issues are more properly part of a construction defect case, not a products liability case. Regardless of Mallet's findings, they are irrelevant and fail to address specifically how these alleged defects impacted the formaldehyde and/or mold concentration within the unit during the time of Wright's occupancy.

Finally, plaintiff claims that Mallet "is qualified to offer the opinion that if a housing unit is constructed in such a manner that moisture and external air infiltrate the housing structure, it will increase relative humidity therein, which in turn, other experts will show, increased the levels of formaldehyde emitted by the wood products." Rec. Doc. 11731, p. 10. This statement is entirely untrue and is the reason why Mallet and other experts' testimony on moisture and humidity is irrelevant. **No expert will "show" that humidity "increased the levels of formaldehyde emitted by the wood products."** The best plaintiff will offer is that the alleged increased humidity *may theoretically* have increased formaldehyde off-gassing, and, even if it did, he cannot (1) quantify how much or (2) state if this affected the concentration of formaldehyde **at all**. This testimony is speculative, unsupported and must be excluded.

**4.  Formaldehyde Off-gassing and Mold Growth**

Forest River re-urges its arguments regarding the relevancy of Mallet's formaldehyde off-gassing testimony and requests that the Court exclude references to mold growth for those reasons set forth above in Section B(1).

Plaintiff offers two additional justifications for his approach to testing.  He notes that, because of the time that has elapsed between Wright's occupancy and the August 2009 testing, the formaldehyde off-gassing rates measured today would be meaningless.  This argument is inaccurate, as this is precisely what plaintiff did with the regression analysis performed by his expert Dr. Hewett. In other words, plaintiff could have taken off-gassing rates from the August 2009 testing and regressed them back to the time frame when Wright lived in the unit.  Further, plaintiff admits that chamber testing would have provided this information, but he claims that such testing was "impracticable."  This characterization is completely untrue and unsupported by any legitimate rationale.  With over a month of destructive testing, plaintiff cannot blame anyone but himself for a failure to conduct appropriate testing.

**5.  Jacking**

Mallet claims that he has an "operational and practical understanding of engineering principles" that would allow him to opine on jacking.  Mallet is not an engineer, and plaintiff has already retained Charles Moore, a licensed engineer, to discuss issues related to jacking.  Mallet lacks the necessary technical expertise to opine on these issues, and his testimony is duplicative of Moore's.  Plaintiff should not be allowed to wait until the last minute to make his "final determination" as to who he will offer at trial, and the Court should exclude Mallet's opinions on this issue.

### 6. Vapor Barriers

Mallet asserts that the vapor barriers in the unit were not suitable for hot, humid climates and that they caused moisture to be trapped inside the unit, leading to increased formaldehyde off-gassing and mold growth.  First, the discussion of mold growth should be excluded for the reasons discussed previously.

Also, plaintiff claims that, because Mallet's past experience tells him that vinyl vapor barriers are "moisture retarders," the need to specify a precise PERM rating is unnecessary.  Like the issue related to quantification of formaldehyde off-gassing, Mallet has once again failed to provide the specific evidence to support his claim.  He has not conducted appropriate testing to verify his PERM rating theory, and, when asked to produce even a single photograph which depicted the alleged moisture damage and mold growth inside the unit's wall cabinet, Mallet could not do so.  This testimony rests on speculation, not facts, and Mallet should not be allowed to discuss these issues at trial.

### 7. Alternative Building Materials

Plaintiff argues that Mallet's prior experience in renovating, repairing and inspecting travel trailers qualifies him to discuss alternative building materials.  Rec. Doc. 11731, p. 16.  Regardless of Mallet's experience, Mallet did **not** provide any analysis of the costs or availability of other materials in his expert report.  Plaintiff's only counter is that pricing information was contained in Mallet's deposition testimony, but, as the deposition testimony cited by plaintiff reveals, this testimony was elicited by **plaintiff's counsel:**

> EXAMINATION BY MR. D'AMICO
>    Q.   In pricing the alternative
> designs -- I may have missed this, I don't
> know -- did you talk about the difference in
> cost between lauan paneling versus Masonite
> board?

MR. BONE:

**We didn't talk about it because
it's not in his report.**
EXAMINATION BY MR. D'AMICO:
Q.   Is -- is there a difference in
cost?
A.   There's a slight difference in
cost, and I priced out the whole system and
it was about $700, seven or so hundred
dollars difference.  Masonite, insulation,
the Tyvek.  Building it like you would build
a home or a mobile home.
* * *
Q.   All right.  What is the difference
in cost, if you know, between a Masonite
panel board and the lauan panel board that
was used in this travel trailer?
MR. BONE:

**Please note my continuing
objection.**

**You can answer these questions,
but because it's not in your report, I'm
just going to note my continuing objection
to these questions.**[2]

The fact that this issue was discussed by plaintiff's counsel at deposition did not somehow open

the door for Mallet to offer these opinions.  Again, Mallet has provided no pricing info in his report,

nor did he ever discuss the availability of the alternative materials or conduct a risk/utility analysis.

Because his opinions lack the proper foundation, they should be excluded.  *See Seither v. Winnebago*

*Industries, Inc.*, 853 So. 2d 37, 41 (La. Ct. App. 2003) (noting that plaintiff failed to present risk/utility

analysis of proposed alternative design); *Lacoste v. Pilgrim International*, 2009 WL 126847 (E.D. La.

1/15/09) (stating alternative designs must be reasonably specific and not based on mere speculation).

---

[2]  Ex. A, Deposition of Al Mallet, dated 1/12/10, p. 293-94.

### 8.  Furnace

Plaintiff argues that Mallet's prior experience with HVAC units allows him to render opinions related to the furnace, and that Mallet has only relied on "basic tenants of heating and air conditioning" in reaching his opinions.  Rec. Doc. 11731, p. 18.  Plaintiff has misconstrued defendants' argument entirely.  The furnace has nothing to do with this case.  None of plaintiff's experts, not even Mallet, has ever attempted to link the allegation of failure to repair the furnace to formaldehyde or mold.  Thus, even if Mallet's opinion were true, it would be irrelevant, and it is therefore inadmissible.

Moreover, the factual testimony undercuts Mallet's opinions.  Mr. Wright testified at his deposition that the first attempt at a repair of the furnace was in March 2006, and he acknowledged that his signature on the maintenance form reflected the fact that he was satisfied with the repair at that time.  ***This is the only instance of a furnace repair, or of a complaint about the furnace not working, prior to June 1, 2006, after which Shaw was no longer maintaining the trailer.***  Mallet should have withdrawn his opinion on Shaw's involvement in the furnace maintenance issue, since Wright's complaints about the furnace do not relate to Shaw but some other contractor.

### 9.  Miscellaneous Topics

#### I.  Tire Size

To support Mallet's ability to opine on the effects of tire size on the Wright unit, plaintiff has once again turned to Mallet's prior experience as the sole justification for these opinions.  Again, Mallet conceded that he (1) performed no testing to assess this alleged problem and (2) deferred to engineer Charles Moore for an analysis of that issue.  Mallet's testimony on that subject is speculative, duplicative, and should not be allowed at trial.

### ii.  Extent of Moisture Damage and Wood Degradation

Plaintiff's argument regarding Mallet's testimony on moisture and wood degradation makes little sense.  Plaintiff claims that, because Forest River did not ask Mallet about whether testing was available, Forest River forfeited its right to object to Mallet's testimony on these points.  This is obviously a strained argument.  Plaintiff has the burden of proof, and his experts must conduct the testing and gather the factual support his opinions.  Mallet conducted no testing to determine how long these alleged issues had existed.  As a result, he cannot pinpoint when these alleged damages began (*i.e.,* before the unit was delivered, while Wright resided in the trailer, or after the unit was stored in Melville).  His testimony should be excluded accordingly.

### iii.  Size of Air Conditioner

Plaintiff has not voiced any objections to this topic in his response.  *See* Rec. Doc. 11731. Without any objection, Forest River requests that the Court preclude Mallet from testimony regarding air conditioner size.

### III.  Conclusion

Forest River requests that the Court exclude the testimony of Alexis Mallet, or, in the alternative, limit his testimony in the manner described above.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
JASON D. BONE (Bar Roll No. 28315)
CARSON W. STRICKLAND (Bar Roll No. 31336)
GIEGER, LABORDE & LAPEROUSE, LLC
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana  70139-4800
ATTORNEYS FOR FOREST RIVER, INC.

# CERTIFICATE

I hereby certify that on the 24th day of February, 2010, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone
JASON D. BONE