UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION:  N(5) |
| | | * | |
| This Document Relates to:  *Lyndon T. Wright v.* | | * | JUDGE ENGELHARDT: |
| *Forest River, Inc., et al*, Docket No. 09-2977 | | * | |
| | | * | MAG: CHASEZ |

*************************************************************************

**FOREST RIVER INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO EXCLUDE THE EXPERT TESTIMONY OF
DR. LAWRENCE G. MILLER**

Defendant Forest River, Inc. (hereinafter "Forest River") hereby submits this Reply

Memorandum in support of its Motion *in Limine* to exclude the testimony of plaintiff's expert Dr.

Lawrence Miller.

**ARGUMENT**

**I.  Dr. Miller's Opinions are Irrelevant.**

As plaintiff points out, many of the arguments offered by Forest River in the instant motion

are also contained in defendants' Motion for Summary Judgment regarding causation. *See* Rec. Doc.

10933.  However, Forest River has submitted these same arguments in the instant motion *in limine*

to ensure that the relevancy of Dr. Miller's testimony is adequately addressed.  Relevant evidence

is that which has a tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable.  *See* Federal Rule of Evidence 401.  If Dr. Miller's specific causation testimony is not supported by general causation testimony, Wright cannot recover for those alleged injuries, and thus Miller's testimony is rendered irrelevant under FRE 401.

Despite plaintiff's arguments to the contrary, Dr. Miller's specific causation testimony is not supported by corresponding general causation testimony, and it therefore must be excluded at trial. As a preliminary matter, Forest River would point out that, in his opposition to the motion *in limine* regarding Dr. Miller, **plaintiff never specifically argues that Dr. Miller has offered general causation testimony.**  *See* Rec. Doc. 11757.  Plaintiff even states, "**Dr. Miller, who will testify as to specific causation, . . . .**"  Rec. Doc. 11757, p. 1.  This stands in stark contrast to plaintiff's Opposition to defendants' Motion for Summary Judgment on causation, wherein plaintiff argues that Dr. Miller offered both specific **and** general causation testimony related to Wright's alleged exacerbation of rhinosinusitis.  *Compare* Rec. Doc. 11757 to Rec. Doc. 11546.  This is further proof that plaintiff never intended for Dr. Miller to provide general causation testimony in this case, and he has only offered that argument in his Opposition to defendants' MSJ  in a desperate attempt to save his entire case from being dismissed.

In any event, the only specific causation opinion that Dr. Miller offers in this case is that, "within a reasonable degree of medical probability, the exposure to formaldehyde emissions during his approximately 28 months of residence in the FEMA trailer significantly exacerbated Mr. Lyndon Wright's rhinosinusitis."

Dr. Williams, plaintiff's only general causation expert, never opines that formaldehyde has a cause-effect relationship with the exacerbation of rhinosinusitis.  Indeed, although she explicitly

discusses scientific literature on the "association" between **mold** and rhinosinusitis, the word "rhinosinusitis" never appears in any section of her expert report that deals with formaldehyde.  *See* Ex. A, expert report of Dr. Williams, p. 32.  Because Dr. Williams never provides general causation support to Dr. Miller's opinions on the exacerbation of rhinosinusitis, those claims fail as a matter of law.  Dr. Miller's opinions on the exacerbation of rhinosinusitis are therefore irrelevant and should be excluded at trial.

With respect to Dr. Miller's qualifications, Forest River reasserts those arguments contained in its original motion.  Although plaintiff claims that the Court has already allowed Dr. Miller to testify on the health effects of formaldehyde in the Fleetwood bellwether, that statement is not entirely true.  The Court left open the possibility of a *Daubert* challenge to certain aspects of his testimony, and, since the Fleetwood case was settled prior to trial, Forest River requests that the Court examine these areas once more.  *See* Rec. Doc. 8295.

Moreover, based on his opposition to defendants' motion for summary judgment on causation, plaintiff now appears to have raised the possibility of Dr. Miller offering general causation testimony at trial.  Forest River would point out that he lacks the credentials to do so, and his report is not sufficiently complete to allow for him to offer general causation testimony.  In the Fifth Circuit, "epidemiological proof of causation is the most useful and conclusive type of evidence." *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 198 (5th Cir. 1996).  Dr. Miller, however, is not an epidemiologist.  *See* Ex. B, Deposition of Dr. Miller from Fleetwood bellwether, dated 9/22/09, p. 34-35.  In addition to his lack of credentials, Dr. Miller's October 2009 expert report is also lacking; it spends just over one page discussing his alleged "general causation" opinions, most of which are one line conclusions with little to no explanation.   His conclusions are not couched in

"cause-effect" language, and the most direct statement Miller provides is that "there is strong evidence supporting chronic inhalation of formaldehyde with the development of rhinosinusitis." Miller report, dated 10/2/09, p. 7, attached as Ex. B to Forest River's original motion.  The only discussion of general causation relating to rhinosinusitis is located in one paragraph on page 5 of his report.  That section reads, "While most series are small, there is broad agreement that formaldehyde exposure is correlated with rhinosinusitis."  *See id.* at p. 5.  Dr. Miller's report never attempts to establish, nor comes close to offering, an opinion that, "A cause effect relationship exists in general between the exacerbation of rhinosinusitis and formaldehyde exposure."

The contrast between Dr. Miller and Dr. Williams - two of plaintiff's own experts - is glaring. Although defendants disagree with Dr. Williams' conclusions, plaintiff clearly knows what a general causation analysis should looks like, e.g., Dr. Williams' report, and Dr. Miller's one page recap falls far short of it.  Plaintiff is clearly scrambling to grasp at any general causation he can find to support this failing claim, and, in doing so, he is forcing both defendants and the Court to read the proverbial tea leaves in Dr. Miller's report to find a general causation opinion.  The problem with plaintiff's approach is that no such opinion exists.[1]

---

[1]  Plaintiff claims that, because defendants held the deposition of Dr. Miller open, he did not have a chance to offer any "rehabilitative" question regarding Miller's specific and general causation opinion.  Forest River has addressed this deposition issue in its reply memo to the motion for summary judgment on causation (Rec. Doc. 11816) and incorporates those arguments herein.  In short, Forest River argues that plaintiff cannot use this deposition as the excuse for inserting new opinions from Dr. Miller.

II.    **In the event Dr. Miller is allowed to testify, his opinions should be limited to those dealing with the exacerbation of Wright's rhinosinusitis.**

    A.  **Dr. Miller should not be allowed to discuss asthma.**

Plaintiff argues that Dr. Miller should be able to discuss a number of other issues at trial, including asthma.  First, Dr. Miller has never diagnosed Wright with asthma, nor has he ever offered any opinion that Wright's asthma was caused or exacerbated by his alleged exposure to formaldehyde.  The only discussion of asthma included in Miller's report is the following:

> It should also be noted that Mr. Wright **may have** had effects of formaldehyde exposure on the lower respiratory tract as well.  Mr Wright underwent a methacholine challenge procedure during his independent medical examination in early June 2009 and the result indicated a decrement in FEV1 of at least 20%.  There is an extensive literature correlating exposure to formaldehyde and the development of, or exacerbation of asthma.

Miller report, dated 10/2/09, p. 6, attached as Ex. B to Forest River's original motion.

Dr. Miller never comes close to offering a cause-effect opinion related to asthma.  Plaintiff then points to the report of Dr. Ken Smith, Forest River's expert pulmonologist, who diagnosed Wright as an asthmatic during his examination.  As explained in defendants' MSJ on causation (Rec. Doc. 11816), Dr. Smith does NOT offer any specific causation testimony that Wright's asthma was either caused or exacerbated by Wright's time in the trailer.  In fact, Dr. Smith has explicitly stated that Wright's asthma pre-dated his time in the trailer.  With regard to the question of exacerbation of his asthma, Dr. Smith uses words like "may" and "possibly" in his report when describing plaintiff's alleged exacerbation of asthma.  Again, he uses these words to indicate that these are symptoms Wright was reporting to him **by history**.  Dr. Smith accepted these as true, but he did not ever state that, in his expert opinion, these symptoms were caused by formaldehyde exposure.

In sum, plaintiff has no justification for allowing Dr. Miller to opine on asthma during trial. Dr. Miller never included any causal analysis of asthma in his report, and Dr. Smith does not opine that Wright's asthma was caused or exacerbation by formaldehyde.

**It is clear that, at trial, plaintiff will attempt to confuse the jury by referencing Wright's asthma, with the implication being that, because Wright was never diagnosed with asthma before he lived in the trailer, he must have developed asthma as a result of his time in the trailer. This is contrary to the expert evidence in this case.** To avoid this confusion – confusion that will undercut the instructive value of this case as a bellwether trial – Dr. Miller should not be allowed to comment on Wright's asthma at trial.

### B.  Dr. Miller should not be allowed to discuss other "nuisance" conditions and bloody sputum.

Plaintiff argues that Dr. Miller should be allowed to offer his opinions related to rashes, nocturnal dyspnea and blood in sputum.  Plaintiff is clearly reaching here, since Dr. Miller directly stated that he could not find a causal association between these conditions and formaldehyde exposure:

> Mr. Wright reports other conditions, including rashes, nocturnal dyspnea, blood in sputum, and a positive methacholine challenge test indicative of reactive airways disease.  It is **possible** that formaldehyde exposure contributed to these illnesses to varying degrees, but limitations in the medical record and toxicological evidence prevent establishment of a causal association at this time.  With regard to the neuroma recently diagnosed, there is no evidence that this is associated with formaldehyde exposure.

> Miller report, dated 10/2/09, p. 7, attached as Ex. B to Forest River's original motion.

Plaintiff should not be allowed to present Dr. Miller's testimony on these points based on mere possibilities.  The fact that these are only "nuisance" claims does not relieve plaintiff of his burden to provide general and specific causation evidence from qualified medical experts.  As with

every other claim in this case, plaintiff has failed to do so.  None of plaintiff's specific causation experts have provided testimony to support these claims.

As explained in defendants' MSJ, Dr. Farber will not testify at trial, and his dermatological findings are therefore meaningless.[1]  Dr. Spector provided no specific causation link between formaldehyde and these claims.  Dr. Miller did not either, instead only offering an opinion of Wright's exacerbation of rhinosinusitis.  Dr. Miller testified:

> Q   Let me ask you this.  In your final conclusion in your October 2nd report, you state, "In summary, it is my professional opinion that, within a reasonable degree of medical probability, the exposure to formaldehyde emissions during his approximately 28 months of residence in the FEMA trailer significantly exacerbated Mr. Lyndon Wright's rhinosinusitis," correct?
> A   That's correct.
> Q   Is that the only opinion that you hold in this case?
> A   That's the only one certainly stated here, yes.
> Q   And so if called upon to testify, the only causal link that you can draw to any of Mr. Wright's symptomatology is that you believe exposure to some level of formaldehyde caused an exacerbation of his rhinosinusitis?
> A   That's what's stated here, yes.
>
> * * * *
>
> Q   Other than rhinosinusitis, did you diagnose any other condition, syndrome or other medical issue with respect to Mr. Wright?
> A   He has a number, obviously, of other illnesses that I believe are not

---

[1]  The parties have stipulated that all of Dr. Farber's reports and opinions are inadmissible.  *See* Rec. Doc. 11729.

> relevant here, but the answer to your
> question is, putting those aside, no.

Ex. C, Deposition of Dr. Miller, dated 11/10/09, p. 113-14; 118-19.

Dr. Miller should not be allowed to present testimony on these conditions – the rashes, nocturnal

dyspnea and bloody sputum – when plaintiff has no ability to recover damages for them due to his

lack of causation testimony.  Dr. Miller's discussion of these issues will only confuse the jury and

distract them from the other claims in the case.  The testimony must be excluded.

### C.  Dr. Miller cannot offer any opinions related to Wright's alleged mold exposure in the trailer.

Furthermore, all of Dr. Miller's opinions related to Wright's alleged exposure to mold in

the trailer should be excluded in their entirety, since Dr. Miller admits that the scientific literature

does not support the causal link between mold exposure and Wright's alleged ailments:

> Q   All right.  Let's talk a little
> bit about the October 2nd report.  On Page 6
> of the report, just above the paragraph
> wherein you list the complaints that
> Mr. Wright had, you state that "Mr. Wright
> was likely exposed to various fungal species
> while living in the trailer.  Exposure to
> fungi is associated with exacerbations of
> upper and lower airways disease, but
> limitations in the literature do not warrant
> a causal association."
>     Can you tell me what you meant by
> that, Doctor?
>    A   Well, very simply, that he was
> likely exposed to fungi.  Now, we know what
> the fungi were, you know, a year and some
> time after he left the trailer.  We can't
> know with certainty what they were prior to.
> And there certainly is -- There's no
> question about a literature existing on
> fungal toxins' effects on the respiratory
> tract.

8

But in my understanding, that
literature is not definitive at this point.
There's a big literature.  It's not exactly
clear what does what yet, so that's why I
was hesitant to draw any conclusions at that
 point.

Q   Okay.  When you say it does "not
warrant a causal association," is what
you're saying that if you were called upon
to testify, your testimony would be that
more probably than not there was no causal
association between exposure to fungi in
Mr. Wright's case and any of the symptoms
he's complaining of?

A   I wouldn't put it that way.  I
would say based on limitations in the
literature, we can't comment one way or the
other.

Q   Okay.  You cannot say more
probably than not that fungi caused any of
the problems that Mr. Wright is complaining
of?

A   Right.[2]

This testimony would only serve to confuse the jury's understanding on the causation issues

at play in the case.  Forest River requests that any and all references to Wright's alleged mold

exposure in the trailer be excluded.

## CONCLUSION

For the foregoing reasons, Forest River respectfully requests that the Court exclude the

testimony of Dr. Lawrence Miller, or, in the alternative, limit his testimony in the manner described

above.

---

[2]   Deposition of Dr. Miller, p. 106-08, attached as Ex. C.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
JASON D. BONE (Bar Roll No. 28315)
CARSON W. STRICKLAND (Bar Roll No. 31336)
GIEGER, LABORDE & LAPEROUSE, LLC
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana  70139-4800
Telephone:  (504) 561-0400
Facsimile:  (504) 561-1011
ATTORNEYS FOR FOREST RIVER, INC.


## C E R T I F I C A T E

I hereby certify that on the 24th day of February, 2010, a copy of the foregoing was filed

electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be

sent to liaison counsel by operation of the court's electronic filing system and all other counsel of

record via e-mail and U.S. Mail.

/s/ Jason D. Bone
JASON D. BONE