1

 1              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
 2
 3    IN RE:  FEMA TRAILER         MDL NO. 1873
 4    FORMALDEHYDE PRODUCTS        SECTION "N"(4)
 5    LIABILITY LITIGATION         JUDGE ENGELHARDT
 6
 7    This document relates to:  Lyndon T. Wright
 8           v. Forest River, Inc., et al
 9              Docket No. 09-2977
10                   *   *   *
11                   (Volume I)
12       Videotaped Deposition of LAWRENCE
13    G. MILLER, M.D., 118 Upland Road, Waban,
14    Massachusetts 02468, taken at the Law
15    Offices of Frank J. D'Amico, Jr., 622
16    Baronne Street, New Orleans, Louisiana
17    70113, on Tuesday, the 10th day of November,
18    2009.
19
20    REPORTED BY:
21         JAMES T. BRADLE, CCR
           PROFESSIONAL SHORTHAND REPORTERS
22         (504)529-5255
23    VIDEOGRAPHER:
24         BRIAN SOILEAU
           PROFESSIONAL SHORTHAND REPORTERS
25         (504)529-5255

1    results of the nasal smear?

2        A    I don't believe I saw -- I have

3    Dr. Spector's records.  I don't believe I

4    saw anything specific there.

5        Q    Okay.  So as we sit here today,

6    you're unaware of whether the nasal smear

7    collected epithelial cells from the actual

8    nasal membrane of the interior nasal cavity

9    of Mr. Lyndon Wright?

10       A    I would have to look back at the

11   records.  I can't recall that as we sit

12   here.

13       Q    And as we sit here, you don't

14   recall that the nasal smear performed by

15   Dr. Spector indicated the presence of normal

16   ciliated columnar epithelial cells?

17       A    I don't recall one way or the

18   other.

19       Q    So you didn't factor that into

20   your opinions in this case in the

21   conclusions that you reached?

22       A    I would have to look back at that.

23   I don't recall one way or the other.  I

24   can't answer your question.

25       Q    Let me ask you this.  In your

1   final conclusion in your October 2nd report,

2   you state, "In summary, it is my

3   professional opinion that, within a

4   reasonable degree of medical probability,

5   the exposure to formaldehyde emissions

6   during his approximately 28 months of

7   residence in the FEMA trailer significantly

8   exacerbated Mr. Lyndon Wright's

9   rhinosinusitis," correct?

10       A    That's correct.

11       Q    Is that the only opinion that you

12  hold in this case?

13       A    That's the only one certainly

14  stated here, yes.

15       Q    And so if called upon to testify,

16  the only causal link that you can draw to

17  any of Mr. Wright's symptomatology is that

18  you believe exposure to some level of

19  formaldehyde caused an exacerbation of his

20  rhinosinusitis?

21       A    That's what's stated here, yes.

22       Q    All right, Doctor.  Mr. Ahlquist

23  has been kind enough to furnish us with some

24  of the invoices that you have provided to

25  the plaintiffs in this matter.  I would like

1    you actually spend testifying or is it, as

2    Dr. Spector said, from portal to portal,

3    from the time you leave your home until the

4    time you get home?

5         A    No, for me, it's for the time

6    testifying.

7         Q    I notice that there's no reference

8    to pulmonary disorders in your report.  Is

9    it a true statement that you didn't diagnose

10   Mr. Wright with any pulmonary disorder?

11        A    Let me be clear and see if I

12   understand what you mean.  Mr. Wright

13   certainly has some pulmonary symptoms.  Is

14   that what you mean?

15        Q    My question, again, may be

16   inartful, but I'm simply asking, did you

17   diagnose him with any pulmonary disorder?

18        A    With a specific pulmonary

19   diagnosis, I think is what you mean?

20        Q    Yes.

21        A    I did not.

22        Q    Other than rhinosinusitis, did you

23   diagnose any other condition, syndrome or

24   other medical issue with respect to

25   Mr. Wright?

```
 1          A    He has a number, obviously, of
 2     other illnesses that I believe are not
 3     relevant here, but the answer to your
 4     question is, putting those aside, no.
 5          MR. BONE:
 6                At this point, I'm going to look
 7     over my notes and hand him off to the other
 8     attorneys.
 9                With respect to the documents we
10     have requested, obviously, we will
11     reschedule at a mutually convenient time
12     after we have had the opportunity to look
13     through the medical records that the doctor
14     has reviewed and his notes and any other of
15     the documents that may be contained in his
16     file, whether that be a written, you know,
17     notes relating to phone calls or the intake
18     notes relating to Mr. Wright himself.
19          MR. D'AMICO:
20                That's fine.  Also, there are some
21     documents that we do not have, some
22     deposition testimony that has never been
23     provided to us, for instance, and obviously
24     we would like him to look at those as well.
25          MR. BONE:
```