UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE:     FEMA TRAILER     *     MDL NO. 1873
        FORMALDEHYDE     *
        PRODUCTS LIABILITY     *
        LITIGATION     *     SECTION: N(5)
        *
This Document Relates to: *Lyndon T. Wright v.*     *     JUDGE ENGELHARDT:
*Forest River, Inc., et al*, Docket No. 09-2977     *
        *     MAG: CHASEZ
**************************************************************************

### FOREST RIVER INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE THE EXPERT TESTIMONY OF ERVIN RITTER

Defendant, Forest River, Inc., (hereinafter "Forest River") respectfully submits the following reply memorandum in support of its Motion *in Limine* to Exclude the Testimony of Ervin Ritter.

**A. Ritter's Testimony should be excluded in its entirety, as it is cumulative evidence.**

Plaintiff argues that Federal Rule of Evidence 403 "does not require a court to exclude evidence even if that evidence is duplicative." Rec. Doc. 11745, p. 1. He argues that, rather than being cumulative, the testimony of Lagrange, Ritter and Mallet merely "overlap" and are therefore admissible.

However, a cursory review of these three expert reports reveals that Mallet has offered **only** cumulative opinions, taking the engineering analysis from Ritter, the test results from Lagrange, and the findings of other experts and merging them into a 130 page report. Mallet admitted that, in

reference to plaintiffs' other construction and design experts, he was ". . . just repeating their and taking their position in how the building affected it."[1]  In the Fleetwood bellwether, he similarly testified that, "I basically lead the team, disseminate who is going to look at what, and have them to either -- if there are calculations involved, perform the calculations that will back up or that will tell me whether a position that we have taken is accurate or inaccurate. They're the more technical end of the team, but, in general, I see and understand how the whole package fits together, how the parts and system works or doesn't work together, and how – if it doesn't function, why it doesn't function properly."[2]  By plaintiff's own admission, Mallet simply "synthesizes" information presented by other experts. Rec. Doc. 1145, p. 3.

As the Court is well aware, Federal Rule of Evidence 403 excludes relevant evidence if it is outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403 (2008). This Court was clear in its prior rulings in this MDL that, "No duplicative testimony will be allowed. Multiple opinions on the same subject will generally not be admitted, absent prior consent of the Court based on a showing of compelling reasons." (Rec. Doc. 2062, p. 1).

Plaintiff should not be able to present testimony from Ritter, as it is entirely cumulative of Mallet's testimony.  Plaintiff should either select Mallet or he should present experts like Ritter to present their engineering analysis.  Because Ritter is an actual engineer, his testimony is on insulation and ventilation is presumably more qualified than Mallet's testimony on those subjects, since Mallet is not an engineer.  Whomever plaintiff selects to offer this testimony is his decision,

---

[1]   See Ex. A, Deposition of Al Mallet, dated 7/17/09, p. 126.

[2]   See Ex. B, Deposition of Alexis Mallet, taken 10/28/09, p. 105-06.

but the Court should not allow both of these two expert to testify at trial. Given the fact that trial is to last only two weeks, plaintiff's decision to list Ritter, Mallet and three other witnesses to discuss design and construction issues can only be viewed as a diversionary tactic. Plaintiff wants to sit back and "have all of these witnesses available to be able to choose amongst them at the time of trial," requiring defendants to prepare for all. Rec. Doc. 11748, p. 3. This is contrary to the rules of evidence and a waste of the defendants', and Court's, resources.

> **B. In the alternative, Ritter's testimony should be limited with respect to the following.**

> **1. Building Code Compliance**

With regard to Ritter's opinions on the application of building codes, plaintiff has conceded that Ritter will not offer this testimony at trial.[3] Rec. Doc. 11745, p. 3. Accordingly, Forest River requests that the Court enforce plaintiff's concession and preclude any and all testimony from Ritter related to building codes.

---

[3] Recall that, in his report, Ritter wrote:

> [A]ll building codes which were in effect prior to the construction/manufacture of this trailer should be applicable. This trailer is not and never was intended to be a recreational vehicle.
> * * * *
> This discuss (sic) on applicability of building codes can be found in other expert reports. The
> writer of this report is in agreement with the conclusions of the experts applying the building codes to these units.
>
> *See* Ritter report, dated 10/2/09, p. 22, attached as Ex. A to Forest River's original motion.

### 2. Performance of Mechanical Systems

After more than a month of testing and countless expert reports, plaintiff has finally revealed his true approach to testing in this case: in his opposition to the motion *in limine* to exclude Mallet, plaintiff writes, "**[T]here is no need to test scientifically proven concepts.**"  Rec. Doc. 11731, p. 12.  His logic is simple: everyone knows that increased temperature and humidity cause increased formaldehyde off-gassing.  By showing that the temperature and humidity increased in the Wright unit via the testimony of Ritter, Mallet and others, plaintiff will therefore be able to imply that the formaldehyde must have been higher and harmed plaintiff.

*Daubert* was designed precisely to eliminate plaintiff's maneuver, *i.e.,* disregarding the scientific underpinnings of his theories.  Plaintiff essentially wants to argue to the jury: "You heard from Mallet, Ritter and others that this trailer was hot and humid and therefore off-gassed more formaldehyde, but we will leave it to your imagination exactly how much more off-gassing occurred."  Plaintiff should not be allowed to offer testimony on ventilation and insulation from Ritter when neither his nor any other expert's testimony specifically addresses the alleged increased amounts of formaldehyde in the trailer.  Because the testimony is never linked to any specific quantification of the rate of alleged increased off-gassing, it does not assist the trier of fact and is therefore irrelevant.

Moreover, the factual evidence produced during testing completely undercuts Ritter's opinions on ventilation and insulation.  For instance, Ritter claims that condensation would have occurred in walls built without a vapor barrier, but he could not point to one photograph of condensation damage to support his theory.  Plaintiff offers the excuse that this condensation damage would have been in the ceiling, but Ritter did not open this area during testing.  Rec. Doc. 11745.

This argument is absurd: this trailer was subject to complete destructive testing, down to the studs and including the ceiling compartment, for over a month. Ritter could have examined any area he wished, but he conveniently chose to ignore those areas that might actually support his opinions. His argument regarding the foil-faced surface on the duct work is another red herring and has nothing to do with the lack of condensation damage observed on the wall insulation.

Of course, the most egregious excuse can be found in plaintiff's discussion of the datalogger info. Ritter failed to utilize temperature and humidity data from the dataloggers deployed at the site. Plaintiff's excuse is that the datalogger equipment was merely provided by Ritter's company for use by another expert. Rec. Doc. 11745, p. 6. Forest River submits that this is no justification at all. Ritter could and should have utilized the temperature and humidity data from the datalogger, and, indeed, plaintiffs did just that in the prior Gulf Stream bellwether **and** present Recreation by Design action. Forest River can only assume that he withheld this information in this case because it was not favorable to him. Regardless, Ritter's methodology is questionable, his opinions unsupported, and the Court should therefore exclude his testimony.

Finally, as an aside, defendants have filed a Motion for Summary Judgment regarding causation and argued that plaintiff has failed to provide any causation evidence to support Wright's **mold** claims. Rec. Doc. 10933. Plaintiff's Opposition to that motion does not appear to contest the dismissal of this claim (*see* Rec. Doc. 11542), yet plaintiff continues to refer mold in his response to the motion *in limine* regarding Ritter and other experts. Forest River requests that the Court preclude Ritter or any of plaintiff's other experts from referencing mold in Wright's trailer, as any discussion would only serve the confuse the jury with respect to the claims at issue in this case.

### 3. Alternative Designs  Indoor Air Quality

Ritter should not be able to offer testimony regarding alternative designs.  Plaintiff has offered only one piece of evidence to support Ritter's ability to testify on alternative designs: Ritter said that the additional equipment for mechanical ventilation in each unit would be $1,000.  A closer examination reveals that Ritter did no research into whether this was the actual cost of the equipment, but simply a guess:

> Q.  So there would have been an additional cost associated with that modification of the travel trailer that you're proposing?
> A.  Yes, there would be.
> Q.  Do you know how much that cost would have been?
> A.  Considering that the retail cost of that unit was probably about $1,200, plus you have to factor in the fact that they would be buying in vast quantities and probably getting some type of discount, maybe on the order of 25, 30, maybe even 50 percent of that, **they would probably increase their overall cost maybe $1,000, just off the top of my head** with -- as I sit here in front of the camera putting the numbers together.
> Q.  Understood.  I was just looking for your best estimate.
> A.  Okay.

See Ex. C, Deposition of E. Ritter, dated 12/9/09, p. 167-68 (emphasis added).

Contrary to plaintiff's implications, Ritter performed **no** research into the feasibility of alternative designs (cost, availability, risk/utility), and he included no analysis of the feasibility of alternative designs in his expert report.  See Seither v. Winnebago Industries, Inc., 853 So. 2d 37, 41 (La. Ct. App. 2003) (noting that plaintiff failed to present risk/utility analysis of proposed

alternative design); *Lacoste v. Pilgrim International*, 2009 WL 126847 (E.D. La. 1/15/09) (stating that an alternative design must be reasonably specific and not based on mere speculation). Instead, Ritter offered a guess as to what a mechanical ventilation system might cost – nothing more. Ritter has not performed any meaningful research into this area, and his opinions as to alternative designs are incomplete, have no factual foundation, and therefore insufficient as a matter of law. Accordingly, the Court should preclude him from offering any opinions regarding alternative designs.

### III. Conclusion

Forest River requests that the Court exclude the testimony of Ervin Ritter, or, in the alternative, limit his testimony in the manner described above.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
JASON D. BONE (Bar Roll No. 28315)
CARSON W. STRICKLAND (Bar Roll No. 31336)
GIEGER, LABORDE & LAPEROUSE, LLC
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana  70139-4800
Telephone:  (504) 561-0400
Facsimile:  (504) 561-1011
ATTORNEYS FOR FOREST RIVER, INC.

**C E R T I F I C A T E**

      I hereby certify that on the 24th day of February, 2010, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this fililing will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

                                   /s/ Jason D. Bone
                                   JASON D. BONE