UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 SECTION: N(5) |
| This Document Relates to: *Lyndon T. Wright v. Forest River, Inc., et al*, Docket No. 09-2977 | | * * * | JUDGE ENGELHARDT: MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REPLY TO PLAINTIFF'S OPPOSITION TO FOREST RIVER INC.'S
MOTION TO LIMIT STEPHEN SMULSKI, PH.D.**

Defendant Forest River Inc. ("Forest River") submits the following reply to plaintiff's opposition of to the motion *in limine* to limit the testimony of Stephen Smulski, Ph.D.

**BACKGROUND**

In its original Motion, Forest River sought the exclusion of the content of various paragraphs of Dr. Smulski's September 9, 2009 expert report. For certain paragraphs, Forest River simply asked the Court to apply rulings on Dr. Smulski's testimony similar to those in the previous bellwethers involving Fleetwood and Gulf Stream. (*See* Rec. Doc. 2800 & 7683). For some newly added paragraphs unique to the *Wright* case, Forest River has asked for additional limitations on Smulski's testimony.

**ARGUMENT**

I.      **Prior Rulings Regarding Smulski's Testimony**

   **Paragraph 18 (Opinions on "reasonably anticipated use")**

   In paragraph 18, Dr. Smulski contends that, when the unit was installed, it was "converted to temporary housing that falls somewhere along the continuum between 'short term and recreational use' and a 'permanent dwelling.'" Plaintiff first contends that this statement is somehow not an opinion but a fact. This argument is weak at best, since Smulski's statements on the occupancy of the trailer are clearly opinion, *i.e.,* a subjective conclusion based on certain data. As such, this opinion testimony is outside of Smulski's area of expertise. Smulski is a "wood science" expert, not an expert in housing or recreational vehicles, and reference to this issue by Dr. Smulski would only serve to confuse or mislead the jury.

   Plaintiff then proceeds to argue that one does not need qualification as an expert in order to conclude whether the trailer was converted to temporary housing. If one accepts plaintiff's argument as correct, then there is no need for Dr. Smulski to offer any testimony on the subject at all, as it is a conclusion that the jury can reach for itself without the need for expert testimony. *See* Federal Rule of Evidence 702. Smulski's testimony on this topic invades the province of the jury, and, if admitted, would only confuse the jury. This testimony should be excluded, consistent with the Court's prior ruling. *See* Rec. Doc. 2800, p. 3

   **Paragraph 21 (Hypothetical theories relating to the installation of travel trailers)**

   In paragraph 21, Smulski discusses hypothetical theories regarding the installation of an EHU, specifically that the frame can bend and twist. In arguing the admissibility of this topic, plaintiff points to this Court's prior Orders allowing discussion of this concept. However, as Forest

River has noted, the *Wright* case is different from prior bellwethers due to the extensive destructive testing that was performed on this unit.  **Moreover, Smulski testified that he did not see any evidence of "twisting and bending" of the frame of Wright's trailer.**  *See* Ex. C attached to original motion, Deposition of S. Smulski, dated 1/29/10, p. 67-68. He should thus not be allowed to discuss hypothetical theories at trial, given that plaintiff had the unfettered opportunity to test these theories but failed to do so, or was unhappy with the result.

Plaintiff also cites deposition testimony of Forest River's production manager, Jeff Burian. He argues that, since Burian (a non-engineer) discussed the effects of jacking under questioning from plaintiff, Smulski should be able to as well.  This argument ignores the fact that plaintiff has retained an engineering expert, Charles Moore, to discuss the effects of jacking.  Smulski is not an engineer and has no physical evidence to support his hypothetical conclusions.  The fact that Jeffrey Burian, one of Forest River's production managers, discussed the topic **when questioned by plaintiff at deposition** does not somehow excuse Smulski from *Daubert* scrutiny on these issues.  Smulski's discussion of hypothetical theories about jacking are admittedly beyond the expertise of a specialist in wood products.  As such, they are neither relevant nor reliable but based mainly on the *ipse dixit* of the witness.  This testimony must be excluded.

**Paragraphs 23, 24, 25, and 28 (Results of testing performed by others)**

In these paragraphs, Smulski discusses the results of various reports which examined formaldehyde levels.  Plaintiff argues that Smulski should be allowed to discuss these test results; Forest River only asks that it be made clear that this testing was not performed by him and is not his opinion, consistent with the Court's prior Orders.

Plaintiff also asserts that Smulski should be able to explain that "the use of LFE products does not guarantee anything." Rec. Doc. 11756, p. 6. As explained in this motion and the original motion in limine, Smulski should be precluded from offering testimony regarding the distinction between "regular" and LFE wood products due to the Stipulation entered by the parties on that issue. Rec. Doc. 8334. There can be no evidence to support **or** refute a stipulation, and Smulski's musings about LFE and what it means are intended to do just that – call the existing stipulation into question. As such, they must be excluded.

**Paragraphs 33 & 35 (Opinions on mechanical ventilation)**

Plaintiff attempts to argue that the Court should not limit Smulski's opinions on mechanical ventilation despite the fact that they are virtually <u>identical</u> to opinions excluded in the Fleetwood bellwether. Indeed, this Court has already noted that Smulski is not an expert in the fields of HVAC or travel trailer design. *See* Rec. Doc. 7683, p. 2. Plaintiff has not put forth any additional qualifications that Smulski has gained since this Order was rendered. Thus, Forest River asks for rulings consistent with those cases.

Forest River also points out that plaintiff already has a team of experts who will opine on mechanical ventilation systems, specifically Al Mallet, Paul Lagrange, and Ervin Ritter. Forest River has made objections to each of these expert's ability to discuss the issue of mechanical ventilation, but, in any event, Smulski is even less qualified than these experts to opine on this issue. Forest River incorporates the arguments contained in the motions *in limine* on Ritter, Lagrange and Mallet herein and requests that the Court exclude any testimony by Dr. Smulski related to mechanical ventilation.

**II.    Additional Opinions Unique to *Wright***

**Paragraph 15 (Opinions as to non-LFE wood)**

In opposing the exclusion of paragraph 15, plaintiff seeks to disregard a clear stipulation to which all parties agreed. Rec. Doc. 8334. Plaintiff cites Smulski's deposition testimony wherein he claims that distinctions can be made between LFE and non-LFE wood and discusses potential differences in the formulations of LFE and regular urea formaldehyde adhesives. Plaintiff asserts that Smulski should be able to offer this testimony at trial.

Plaintiff's contentions lack merit. First, in his deposition, Smulski stated that he is not a chemist and that such distinctions regarding LFE vs. regular products are outside his area of expertise. *See* Ex. A, Smulski Depo , p. 27. Moreover, Forest River would note that this case is about one trailer, the Wright unit. The discussion of LFE vs. regular wood, while perhaps relevant in the Gulf Stream trial, is simply not at issue here due to the parties' stipulation. Any discussion of the contents of paragraph 15 should therefore be excluded.

**Paragraphs 16 & 21 (Opinions as to water intrusion and the effects thereof)**

Paragraphs 16 and 21, wherein Smulski discusses his observations of the growth of mold fungi and wood rot, must also be excluded. Defendants have filed a Motion for Summary Judgment regarding causation and argued that plaintiff has failed to provide any medical causation evidence to support Wright's mold claims. Rec. Doc. 10933. Plaintiff's Opposition to that motion does not appear to contest the dismissal of this claim (*see* Rec. Doc. 11542), yet plaintiff continues to refer mold in his responses to the motions *in limine* regarding Smulski and others. Forest River requests that the Court preclude Smulski or any of plaintiff's other experts from referencing mold in Wright's trailer, as any discussion would only serve the confuse the jury with respect to the claims at issue in this case.

Additionally, it is admitted that the level of mold observed during the August 2009 testing is not representative of the level present when Wright occupied the unit. The trailer was stored in an open field in Melville, Louisiana for over a year prior to the August 2009 inspection performed by Mallet. The parties have stipulated that the trailer had a missing vent cap during the entire time it was stored at Melville. Rec. Doc. 11608. One need not be a mold expert to know that this continuous flow of water into the unit while stored at Melville would not reflect the types or levels of mold present when Wright resided in the unit.[1] Even if he is knowledgeable about the "introduction of water into a wood structure," Dr. Smulski has not been offered as a forensic mold

---

[1] At his deposition, Mallet even acknowledged the vent cap issue impacted the mold levels inside the Wright unit:

> Q. Would you agree or disagree that, assuming the vent cap was missing for some period of time, that that was the likely source of the mold growth on the commode and floor in the bathroom?
> A. Yes.
> * * *
> Q. If we assume, then, that the missing vent cap occurred after the unit left Mr. Wright's -- after Mr. Wright was no longer an occupant of that particular unit, and that moisture intruded into the unit by virtue of the missing vent cap, and that that moisture caused mold growth on the commode, **would you agree with me then, sir, that the condition of the unit as you observed it in August of 2009 with respect to the mold growth within the unit was not the same as it would have been when Mr. Wright occupied the unit?**
> A. **Correct.**

Ex. B, Deposition of Al Mallet, dated 1/12/10, p. 88-90 (emphasis added).

specialist. He has never performed testing to determine whether the condition of the wood during the August 2009 testing was similar to its condition when Wright occupied the trailer. Plaintiff's mold expert, Bill Scott, never performed this testing either. Smulski's opinions on these topics are based on unsound methodology and lack factual support. As a result, Smulski should not be allowed to offer any opinions related to the mold he observed inside the trailer during August 2009 testing.

**Paragraph 17 (Opinions regarding the knowledge of Forest River)**

Plaintiff argues that Smulski should be able to discuss Forest River's warning in the owner's manual. For support, plaintiff cites to the Court's Order in the Fleetwood bellwether where the Court stated that it is "within the province of the jury as lay persons" to determine the adequacy of warnings. Rec. Doc. 7533, p. 2.

Plaintiff argues that this Order allows Smulski to offer opinions on the formaldehyde warnings in this case. He reasons that, since Smulski is a "lay person" like any juror with regard to this issue, Smulski is qualified to discuss this issue. This argument ignores the purpose of the Court's Order, which was to **prevent** experts from discussing the adequacy of warnings, not encourage it. Smulski should not be allowed to put on his "lay person" hat when discussing warnings and his "expert hat" for the rest of his testimony. This maneuver will undoubtedly confuse the jury and is contrary in every respect to the rules of evidence.

Furthermore, nowhere in this questionable logic does plaintiff address Forest River's original objection, *i.e.,* that Smulski should not be allowed to opine on Forest River's knowledge of (1) formaldehyde and (2) the factors which influence its rate of off-gassing. Smulski, a wood scientist, is venturing well outside his area of expertise in speculating on Forest River's knowledge of formaldehyde. Additionally, Smulski has not provided any factual basis to support his statement

outside of his surface level conclusions from reviewing the warning in the owner's manual. In the end, Smulski's testimony on these topics is unsupported and misleading, and the Court should therefore exclude it.

**Paragraph 29 (Discussion of the CARB standard)**

Plaintiff contends that Smulski should be allowed to discuss the CARB standard, which became effective after plaintiff moved out of his trailer. Plaintiff makes this argument despite the fact that the parties in this case have already stipulated that evidence related to subsequently passed ambient air standards would be excluded. *See* Rec. Doc. 11181 (adopting the Order from the Gulf Stream bellwether, Rec. Doc. 3069). This discussion of CARB standards is completely irrelevant to plaintiff's claims and would only serve to prejudice the jury; accordingly, it must be excluded.

**Paragraph 31, 33, and 35 (Opinions on alternative designs)**

Defendants object to Dr. Smulski's opinions on alternative designs. As a brief review, Smulski claims that Forest River "had available to it alternative materials that, if used, would have emitted little to no formaldehyde gas." In paragraph 33, Dr. Smulski opines that Forest River "could have directed the companies who applied the overlays to the hardwood plywood that it did buy to apply an overlay to both panels' face and back rather than only on its face." In paragraph 35, he asserts that Forest River could have used a mechanical ventilation system in the event that alternative wood products were not available.

Plaintiff voices little opposition to defendants' request to exclude all of these opinions. *See* Rec. Doc. 11756, p. 9. Plaintiff only argues that Smulski's prior experience building and inspecting "wood-framed structures" qualifies him to opine on the subject. *Id.*

Regardless of his past experience, Dr. Smulski has not performed the appropriate research in this case to allow him to comment on alternative designs for the trailer. He has not performed any risk/utility tests for the alternative designs he offers, nor has he tested these alternative designs. For instance, he suggests that alternative resins such as phenolic resin, could have been used as the binding agent on certain wood products. *See* Ex. C attached to Forest River's original motion, depo of S. Smulski, p. 82. However, he has never performed a safety analysis of these alternative materials, nor has he studied whether such materials were available in sufficient quantities for Forest River's production needs. Time and again, Smulski could not provide specific information about the alternative materials he lists:

> Q. What does phenolic resin emit?
> A. I don't understand your question.
> Q. It may not emit formaldehyde, but doesn't phenolic resin emit other gases?
> A. It may, and you are asking me a question . . . . But you are asking me a question of chemistry that I don't have an answer for.
> * * *
> Q. Let's take the soybeans first. Were soybean adhesives commercially available in 2005?
> A. I don't know whether they were or weren't. They have been in development for at least 25 years.
> * * *
> Q. All right. Can you say -- well, let me put it to you this way: You don't offer any opinion in your report that these alternate products are safer than what was being used in this trailer, you simply offer the opinion that they released less formaldehyde. Correct?
> A. Yes.
> * * *

    Q. And you have not retrofitted a travel trailer with wallboard or hardwood plywood or any composite wood product bonded with an isocyanate resin to determine how that would impact air quality, have you?
    A. I personally have not done that, no.
    Q. Do you know if anyone has ever done that?
    A. I don't know if anyone has done that.[2]

Dr. Smulski has not performed an adequate analysis to determine whether the alternative products he lists were available, economically feasible, or even safer. Accordingly, the Court should preclude him from offering any testimony regarding these alternative products at trial.

## CONCLUSION

As stated above, many of the topics within Smulski's expert report are inadmissible. As such, he should not be allowed to testify regarding these subjects.

                        Respectfully submitted,

                        /s/ Jason D. Bone
                        ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
                        JASON D. BONE (Bar Roll No. 28315)
                        CARSON W. STRICKLAND (Bar Roll No. 31336)
                        GIEGER, LABORDE & LAPEROUSE, L.L.C.
                        One Shell Square
                        701 Poydras Street, Suite 4800
                        New Orleans, Louisiana 70139-4800
                        *ATTORNEYS FOR FOREST RIVER, INC.*

---

[2] Ex. A, Deposition to Dr. Smulski, dated 1/29/10, p. 80, 85, 87, 89.

**C E R T I F I C A T E**

I hereby certify that on the 24th day of February, 2010, a copy of the foregoing Reply was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone
JASON D. BONE