UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 <br><br> SECTION: N(5) |
| This Document Relates to: *Lyndon T. Wright v. Forest River, Inc., et al*, Docket No. 09-2977 | | * * * | JUDGE ENGELHARDT: <br><br> MAG: CHASEZ |

*************************************************************************

**DEFENDANTS' JOINT MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION TO RECONSIDER THE COURT'S RULING GRANTING DEFENDANTS' MOTION TO STRIKE THE PLAINTIFF'S EXPERT SUPPLEMENTAL REPORTS**

**MAY IT PLEASE THE COURT:**

Defendants Forest River Inc., ("Forest River") and Shaw Environmental, Inc. ("Shaw") (collectively, "defendants") submit the following memorandum in opposition to plaintiff's Motion to Reconsider the Court's ruling granting defendants' motion to strike the plaintiff's expert supplemental reports.

**LAW AND ARGUMENT**

The Federal Rules of Civil Procedure do not expressly contemplate a motion for reconsideration. *See Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 at n.10 (5th

Cir.1998).  If the motion for reconsideration is filed within ten days of the judgment or order, then the motion is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e).  *Id*.

The instant Motion for Reconsideration was filed within this ten day time frame.  Under Rule 59(e) of the Federal Rules of Civil Procedure, the Court enjoys "considerable discretion" in granting or denying a motion for reconsideration.  *See Shepard v. Int'l Paper Co.*, 372 F.3d 326, 328 n. 1 (5th Cir. 2004).  A motion for reconsideration "calls into question the correctness of a judgment." *Templet v. Hydro Chem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (citation omitted).  There are three grounds upon which a Court may grant a Rule 59 motion for reconsideration or to alter or amend the judgment: (1) an intervening change in the controlling law has occurred, (2) evidence not previously made available to the adjudicator becomes available, or (3) it is necessary to correct clear error or to prevent manifest injustice.  *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002).  However, reconsideration is an extraordinary remedy which should be used sparingly and "is not the proper vehicle for rehashing evidence, legal theories or arguments that could have been raised prior to the entry of judgment."  *Templet*, 367 F.3d at 478.

Plaintiff has not specified which of the three grounds he relies upon in this Motion for Reconsideration.  However, since there has been (1) no change in the law and (2) no new evidence produced, defendants can only assume that the third basis is the applicable justification.  Defendants first note that plaintiff has wholly failed to demonstrate, nor has he alleged, that the Court committed "clear error" in its prior ruling.  Plaintiff has also failed to demonstrate that the Court's denial of the experts' untimely reports will result in "manifest injustice."  He has thus failed to articulate an appropriate basis for relief in the instant Motion for Reconsideration, and the Motion should be

denied on those grounds alone. Nevertheless, as demonstrated in defendants' original Motion to Strike plaintiff's supplemental expert reports (Rec. Doc. 10944), the Court's decision to exclude these expert reports was not erroneous but instead appropriate and well supported by both the facts and applicable law. *See* Court's prior Order, Rec. Doc. 11464.[1]

**Dr. Williams**

In his Motion for Reconsideration, plaintiff offers no new arguments regarding Dr. Williams' additional report, instead emphasizing once again that "new" literature on the alleged link between leukemia and formaldehyde was published in December 2009 and January 2010.

Plaintiff has yet again attempted to cast this additional report as a mere supplement under FRCP 26(a)(2)(C). This characterization is inaccurate, as Dr. Williams is now attempting to provide **entirely new opinions** on the alleged link between formaldehyde and leukemia. A party cannot skirt expert disclosure requirements of Rule 26 by characterizing new opinions as "supplemental." *See, Simmons v. Johnson*, 2008 WL 474203 *2 (M.D. La. 2008).

Dr. Williams never offered **any** opinions relating to formaldehyde's alleged causal link to leukemia in her prior reports – not even the suggestion that there may be an association between the two. In fact, the word "leukemia" does not appear anywhere in the body of her original reports and is conspicuously absent from the section discussing formaldehyde's alleged link to cancer.[2]

---

[1] Defendants expressly incorporate those arguments contained in their Motion to Strike (Rec. Doc. 10944) and reply memorandum (Rec. Doc. 11290) *in extenso.*

[2] Curiously, Dr. Williams does list studies dealing with leukemia and formaldehyde in her October 2009 report. *See, e.g.,* Ex. A to Motion to Strike (Rec. Doc. 10944), p. 69, reference article by Linos, et al. entitled "Leukemia and non-Hodgkin's lymphoma among embalmers and funeral directors (Letter to the Editor)," J Natl Cancer Inst., 82:66, 1990. The fact that Dr. Williams (allegedly) reviewed this paper and others related to leukemia and chose not to discuss them in her prior reports is yet another factor that should weigh against allowing her

Accordingly, her "supplement" contains entirely new opinions that were never disclosed prior to the deadline for her expert report in October. These new opinions should therefore be excluded for the reasons discussed in defendants' Motion to Strike (Rec. Doc. 10944 & 11290).[3]

Plaintiff next engages in a discussion of articles published by Hauptmann in 2009 and Zhang in 2010; according to plaintiff, these articles constitute "critical" epidemiological evidence that formaldehyde causes leukemia. Plaintiff goes on to argue that these new findings justify the submission of Dr. Williams' report on January 27, 2010.

Regardless of the validity of these articles, the plain fact remains that Dr. Williams had access to the vast majority of articles in her new report prior to submitting her expert report. As noted in defendants' original Motion to Strike, of the twenty-one references included in her addendum, thirteen have a publication date of 2008 or before. Moreover, even for those leukemia articles referenced by Dr. Williams that were published in 2009 and 2010, only three were published within the last three months. Dr. Williams' original reports even contain references to articles dealing with formaldehyde and leukemia. *See* p. 69 of Ex. B to Rec. Doc. 10944, reference to study by Linos et al, "Leukemia and non-Hodgkin's lymphoma among embalmers and funeral directors," *J. Natl Cancer Inst.*, 82:66 (1990). She undoubtedly could have discussed at least the 19 expert reports that were available as of October of 2009. The conspicuous absence of any reference to

---

supplemental opinions to be included in this case.

[3] Plaintiff also claims that, since Wright has "already testified that he has a fear of cancer," these new leukemia opinions are somehow admissible. Rec. Doc. 11758-1, p. 5. First, Wright has **never** testified that he has a fear of cancer; he never mentioned this issue at his prior deposition. Moreover, plaintiff cannot legitimately argue that Wright's fear of cancer claim should somehow allow his expert's the unfettered right to supplement their reports with new opinions on formaldehyde's alleged link to other forms of cancer at this late date.

leukemia in her prior reports suggests that the issue was not considered by Dr. Williams and that the instant eleventh hour "supplement" is designed solely to address that oversight.

This "supplementation" is even more inappropriate in light of Dr. Williams' prior sworn testimony. At her deposition in December, Dr. Williams was specifically asked if her July and October reports constituted the entirety of her opinions in the *Wright* case. She testified:

> Since you authored this report, which is Exhibit No. 3, have you reviewed that report in anticipation of this deposition, in preparation for this deposition?
> A   Of course.
> Q   Okay. And is there any changes or revisions that you have made to that report? You have reviewed it?
> A   I have not made any changes to this report.
> Q   That's all I asked you, whether or not -- You wrote the report it. You read it in preparation for the deposition. There are no changes or additions that you have made to that report, correct?
> A   No, it's in its entirety at this time.
> Q   And you believe it to be correct?
> A   It is.
> Q   It's your opinion in this case?
> A   No, it's not just my opinion. There's scientific literature. Yes.
> Q   It's your opinion in this case, right?
> A   It's my opinion and the facts, scientific facts.
> Q   Okay. **And it's all of your opinions in this case?**

>    **A   Yes, those are all the opinions I
>    will be issuing in this case.**[4]

Plaintiff has countered by arguing that, since IARC only recently found an alleged causal link between formaldehyde and leukemia in December of 2009, Dr. Williams should now be able to include these opinions at trial. **This argument completely ignores the fact that Dr. Williams opined on both causal links AND "associations" in her prior expert reports.** *See* Ex. B, expert report of Dr. Patricia Williams, p. 63-64, attached to defendants' Motion to Strike (Rec. Doc. 10944). In other words, Dr. Williams did not limit her report only to a discussion of established causal links between formaldehyde and particular medical conditions. She also offered opinions on "associations" between (1) formaldehyde and epistaxis (2) mold exposure and allergic rhinitis and (3) epistaxis and cancer of the sinuses. *Id.* at p. 64.

Therefore, Dr. Williams was free to discuss any "association" she found between formaldehyde and leukemia in her original July and October expert reports. For whatever reason, she chose not to do so. Had Dr. Williams included a discussion of the association between formaldehyde and leukemia, she might be able to argue that her opinions on the 2009 Hauptmann and 2010 Zhang study are true supplements. However, by remaining completely silent on this topic until two days before the end of discovery, Dr. Williams – and therefore plaintiff – waived this issue.

Addressing the potential prejudice to the parties, opposing counsel summarily concludes that the defendants are not prejudiced by the submission of this expert report **two days** before the close

---

[4] *See* Deposition of Dr. Patricia Williams, dated 12/3/09, p. 53-54, attached as Ex. C to defendants' Motion to Strike (Rec. Doc. 10944) (emphasis added).

of discovery.[5]  Should Dr. Williams be allowed to testify, an entirely new round of expert reports and depositions would be necessary.  This additional discovery and investigation would not be limited to Drs. Williams and Cole, and defendants may even need to conduct a second medical examination of Wright.  The extension of the discovery deadline for a few days would be meaningless; instead, an entire new trial date would be necessary.

Finally, plaintiff claims that he has not subjected defendants to "trial by ambush."  The timing of plaintiff's submission of Dr. Williams' supplement demonstrates just the opposite. Plaintiff deposed Dr. Cole, Forest River's expert in epidemiology, the morning of January 27, 2010, and asked him numerous questions on leukemia and its association with formaldehyde.  **Less than four hours** after Dr. Cole's deposition concluded, plaintiff submitted the supplement from Dr. Williams.  The only plausible motivation in submitting the expert report in this fashion was plaintiff's desire to ambush defendants.

In fact, in his Opposition to defendants' Motion to Strike Williams' supplemental report, plaintiff uses Dr. Cole's deposition testimony to support his position that Dr. Cole knew about IARC's findings on leukemia.  This discussion is irrelevant.  Because Dr. Williams did not discuss leukemia in her prior reports, Dr. Cole had no duty to address these issues in his reports.  Dr. Cole's familiarity with a particular study does not somehow translate into an automatic right for Dr. Williams to discuss that study at trial.  Plaintiff's examination of Dr. Cole was, in part, subterfuge

---

[5] To counter the argument that this late submission from Dr. Williams is "trial by ambush," plaintiff cites the case of *Congressional Air Ltd. v. Beech Aircraft Corp.,* 176 F.R.D. 513, 516 (D. Md. 1997).  That case prohibited submission of the expert's late disclosure as it was provided less than one month before trial.  Here, plaintiff has admittedly waited just over six weeks before trial.  Defendants do not agree that the additional two weeks somehow excuses the plaintiff's late submission from Dr. Williams.

to improperly introduce extraneous and novel issues, all in an effort to fabricate some justification for the introduction of Williams' new opinions at the eleventh hour. This maneuver is entirely inappropriate, and the Court should strike Dr. Williams' January 2010 report accordingly.

**Dr. Hewett**

Plaintiff first asserts that Dr. Hewett's additional report was simply an analysis "to respond to Defendants' stated and implied criticisms." Rec. Doc. 11758-1, p. 5-6. Plaintiff seems to be suggesting that when a flaw in an expert report is explored through a deposition, the expert ought to have an unfettered right to correct that flaw through supplementation. This is not the case, particularly not months after the expert report deadline, after the close of discovery, and on the eve of a complex, expert-driven trial. If plaintiff's position were to stand, the defense would certainly have to conduct another deposition of Dr. Hewett. The defense believes additional flaws would come to light. Then, presumably, he would again attempt to correct them, leading to more depositions, motion practice, and so on. Given the current trial schedule, this process is prejudicial and should not be permitted.

Plaintiff then argues that the Hewett supplement should be permitted because "his basic conclusions remain the same."[6] When plaintiff talks about "basic conclusions" remaining the same, he refers apparently only to the conclusion that measurements of formaldehyde concentrations in "X%" of Forest River Salem model trailers exceed the very low levels of formaldehyde mentioned

---

[6] The main flaw about which Dr. Hewett was questioned at his deposition – the inclusion of a large number of formaldehyde measurements taken by DeVany Industrial in unoccupied trailers under conditions that in no way approximated living conditions – is not new. Dr. Hewett was questioned on this point in the *Alexander* case. Dr. Hewett had all of the data necessary to conduct this analysis before he issued his report, and he knew that this was a flaw. If he were going to respond to this criticism, the time to do it was in accord with the Court's Scheduling Order, not after the close of discovery.

by the ATSDR or NIOSH. The "X%" may differ somewhat as between the October 2009 report and the January 21, 2010, supplement, but to Plaintiff's way of thinking, because "X%" is a fairly high number, the differences are irrelevant. Plaintiff's argument fails, however, because this is not all that Dr. Hewett says. He calculates actual arithmetic and geometrical means, and various point estimates of the "true average" concentration of formaldehyde in trailers. These numbers do differ significantly – to minimize them as remaining basically the same is disingenuous, at best.

Indeed, in his opposition to the original motion to strike, plaintiff even goes so far as to say that the arithmetic average shown in the original report -- .463 ppm – has "not change[d] in any significant matter" when Dr. Hewett states in his new report that the average in unoccupied trailers is .672 ppm, and the average in occupied trailers is .142 ppm, because the average of those two averages is .407 ppm, which according to Plaintiff's counsel is "not that different from .463."[1] First of all, this is just the argument of plaintiff's counsel; it is not a statement from Dr. Hewett, presumably because it makes no sense. Dr. Hewett himself testified that the true average concentration was best estimated through the "MVUE" rather than the arithmetic mean, so plaintiff's counsel is not even comparing the correct figures. But, equally importantly, saying that "the average is .463" is different from saying "there are two populations here, and their averages are .142 and .672." If Dr. Hewett had wished to make the second claim, he had all the necessary data to do it in his first report, and he should have done so then.

---

[1]  Moreover, this is bad math: .463 is statistically different from .407 under these circumstances. Aside from statistics, we should not lose sight of the context of this case. Plaintiff expert Bill Scott took a reading in plaintiff's trailer in October 2008 of .048 ppm. The difference between .463 and .407 is .056. Therefore, arguing that .463 and .407 are not that different is a lot like claiming that .048 is not that different than zero.

Dr. Hewett's ANOVA analysis does not change this result. His October 2009 conclusions about average formaldehyde concentrations were tainted by his reliance on data collected by DeVany in unoccupied trailers under unnatural conditions. His ANOVA analysis, if it shows anything at all, shows only that the six measurements that DeVany took in occupied trailers were not much different than the readings other testers got in occupied trailers. This is neither surprising nor relevant. Dr. Hewett's original *and his supplemental* reports both calculate estimates of the true average that rely on the unoccupied trailers as well. Since the ANOVA analysis does nothing to cure the underlying problem, it is inadmissible and for that reason should not be permitted as a supplement.

With regard to the decay analysis, the supplement purports to delete all of the support – a regression analysis – that relates to his conclusion that formaldehyde concentrations in trailers decline with the age of the trailer. Dr. Hewett is not an expert in wood science, or chemistry, or anything else related to formaldehyde. Without a statistical analysis, he has absolutely no basis for drawing the conclusion that formaldehyde concentrations decline with age. If Dr. Hewett is permitted to remove the regression analysis from his report, then he should not be permitted to discuss a relationship between formaldehyde concentration and age at all.

**Paul Lagrange**

Plaintiff has offered absolutely no explanation for the untimely disclosure of Lagrange's additional report in his Motion for Reconsideration. Rec. Doc. 11758-1, p. 6. In fact, it appears that plaintiff has merely copied and pasted the arguments he offered in response to the motion *in limine* regarding Lagrange's **cumulative evidence.** Plaintiff never addresses why Lagrange's late report is justified, or why the motion for reconsideration should be granted.

In any event, as defendants argued in their prior motions, Lagrange's supplement provides two new pieces of information. First, Lagrange has revised his calculations regarding the envelope air leakage rate and the manual j load calculation (regarding A/C equipment sizing). In addition, Lagrange's supplement includes a revised animation to "more closely depict the share of the trailer with relation to attic space." *See* Rec. Doc. 11143.

Lagrange offers no clear explanation as to the justification for these changes, merely stating that his prior figures were "inaccurate." It is unclear what factual circumstances have changed since the drafting of Lagrange's October 2009 report that would justify this revision. Defendants can only surmise that Lagrange miscalculated the size and shape of the attic space in the trailer. Regardless, there is no new information that justifies this supplement. Nothing has changed with respect to the trailer at issue, a trailer that Lagrange had complete and unrestricted access to it for over a month during the August 2009 destructive testing. His "supplemental report" is simply being used as a means to comment upon other experts' findings, specifically with respect to the air exchange rate observed by Forest River's experts at Liberty Building Forensics Group. The Scheduling Order does not allow for parties to engage in this sort of endless exchange of competing expert reports back and forth. Lagrange had all the tools and materials necessary to form his opinions, and he should not be allowed to supplement to address issues which could have been addressed prior to his deposition. Accordingly, the Court should not allow him to have an additional opportunity to correct his flawed calculations.[2]

---

[2] Courts have routinely rejected untimely "supplemental" expert testimony where the opinions are based upon information available prior to the deadline for expert disclosures. *See Lampe Berger USA, Inc v. Scentier, Inc.,* 2008 WL 3386716 (M.D. La. 2008); *Shelter Mut. Ins.*

Moreover, even assuming, *arguendo*, that the supplementation is warranted, such an analysis should have been completed long ago and provided to defendants in a timely manner. Lagrange was deposed on October 26, 2009, and he had access to defendants' expert reports by November 2, 2009. If Lagrange felt compelled to supplement his report, he should have provided it months ago, thereby allowing defense counsel to have sufficient opportunity to review it and re-depose him if necessary. By providing this supplement on Friday, January 8, 2009, plaintiff seriously impaired defendants' ability to address these new opinions, especially in light of the fact that (1) other depositions were already scheduled almost every day in January and (2) the upcoming dispositive motion deadline was set for the end of the month. Lagrange's delay in submitting this report is without good cause, and the Court was correct in striking it.

## CONCLUSION

For the foregoing reasons, this Honorable Court's decisions regarding plaintiff's untimely expert reports were well-founded and should not be set aside. Accordingly, defendants Forest River, Inc. and Shaw Environmental, Inc. respectfully request the Court deny plaintiff's Motion for Reconsideration.

---

*Co. v. Culbertson's Ltd., Inc.*, 1999 WL 135297 (E.D. La. 1999) (Duval, J.); *Simmons v. Johnson*, 2008 WL 474203 (M.D. La. 2008); *Buxton v. Lil' Drug Store Products, Inc.*, 2007 WL 2254492 (S.D. Miss. 2007).

Respectfully submitted,


/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
JASON D. BONE (Bar Roll No. 28315)
CARSON W. STRICKLAND (Bar Roll No. 31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*


/s/ M. David Kurtz
M. DAVID KURTZ (Bar Roll No. 23821)
KAREN KALER WHITFIELD (Bar Roll No. 19350)
CATHERINE N. THIGPEN (Bar Roll No. 30001)
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
*ATTORNEYS FOR SHAW ENVIRONMENTAL, INC.*

**C E R T I F I C A T E**

I hereby certify that on the 24th day of February, 2010, a copy of the foregoing Memorandum in Support was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Jason D. Bone
JASON D. BONE