**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:  FEMA TRAILER          *      MDL NO. 1873
     FORMALDEHYDE PRODUCTS     *
     LIABILITY LITIGATION      *      SECTION "N" (5)
                               *
                               *      JUDGE ENGELHARDT
                               *      MAGISTRATE CHASEZ
THIS DOCUMENT IS RELATED TO   *
                               *
*Lyndon T. Wright v. Forest River, Inc, et al.*   *
Docket No. 09-2977            *

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION *IN LIMINE* TO PROHIBIT REFERENCES TO**
**THE FINANCIAL MATTERS OF BOBBIE WRIGHT**

Plaintiff Lyndon T. Wright, responds to Defendants' opposition to Plaintiff's motion *in limine* to prohibit references to the financial matters of Bobbie Wright, and would show as follows:

**I.**
**EVIDENCE**

Exhibit A       Shwery Affidavit, July 29, 2009

Exhibit B       Lyndon Wright deposition excerpts

Exhibit C       Bobbie Wright deposition excerpts

1

## II.
## FACTUAL BACKGROUND

After Hurricane Katrina, Bobbie Wright, whose house had been damaged by the storm, agreed to have Lyndon Wright, her adult son, move into the FEMA trailer on her property. *See* Exhibit C, p. 83.  She hoped that her son's presence would deter criminals from entering her house. *See* Exhibit C, p. 83.  Ms. Wright, herself, never lived in the trailer. *See* Exhibit C, pp. 83, 196.

While occupying the trailer, although he had no idea that the trailer emitted formaldehyde, Lyndon began suffering so many physical ailments that he worried the trailer might be making him sick. *See* Exhibit B, pp. 134-38, 171, 329, 338, 353.  Even after questioning his doctor, the lack of the critical fact of his formaldehyde exposure prevented Lyndon from obtaining any definitive link between the trailer and his health problems. *See* Exhibit A, p. 6; Exhibit B, pp. 313, 328-29, 338, 353.

Lyndon Wright filed his motion in limine to prohibit references to his mother's financial matters on the grounds that they have no relevance to the litigation. *See* Document 11416-1.  In response, Defendants argue that the money Ms. Wright received from FEMA is relevant to the issue of mitigation of damages.  Defendant's argument is incorrect.

## III.
## ARGUMENT

Defendants reasonably assume that moving from the trailer at an earlier date would have limited Lyndon Wright's formaldehyde exposure, thus limiting his resulting health effects and mental anguish.  The error in Defendants' argument, however, is their mistaken presumption that Bobbie Wright's FEMA funds would have made a difference in the date Lyndon chose to move out of the trailer.

While occupying the trailer, Lyndon never knew that he was being exposed to formaldehyde. *See* Exhibit B, pp. 329, 338, 353.  It was this lack of knowledge concerning his formaldehyde exposure, not financial inability to afford other arrangements, that induced him to stay in the trailer as long as he did.

Lyndon testified that if he had been informed of the formaldehyde in his trailer, he would have immediately moved out. *See* Exhibit B, pp. 329-30.  He reiterated the statement in his psychological evaluation. *See* Exhibit A, p. 6.  His deposition made clear that the only reason he stayed in the FEMA trailer as long as he did was that he didn't know the trailer was "formaldehyde riddled."  *See* Exhibit B, p. 328.

Further, no evidence exists that money was an obstacle to Lyndon obtaining alternate housing.  In fact, just the opposite has been established.  While he was living in the trailer, Lyndon held two jobs simultaneously. *See* Exhibit B, pp. 70-71.  He was making more money that he had ever before made. *See* Exhibit B, pp. 228-29.  He had no trouble paying his bills, and he testified that he had been financially able to afford an apartment if he had so desired. *See* Exhibit B, pp. 312-13, 327-28.

It is clear that while he was living in the FEMA trailer, Lyndon had the financial means to acquire alternate housing.  The only impediment to Lyndon seeking a healthier location was his complete lack of knowledge that his trailer was, in fact, not healthy.  Had he been given his mother's FEMA payments, he still would not have known that he was being exposed to formaldehyde in the trailer.  His mother's FEMA money, while he still lacked the crucial information that he was being exposed to formaldehyde, would not have prompted him to seek safer living conditions.  Money from his mother, therefore, would have had no effect on Lyndon's ability to mitigate his damages.  Because lack of information, rather than lack of funds,

3

was the reason Lyndon did not obtain alternate housing, Bobbie Wright's finances are totally irrelevant to mitigation of damages or any other issue in the lawsuit.

Since Ms. Wright's FEMA funds are totally irrelevant to any issue in the case, Defendants' only possible purpose in seeking their introduction would be to embarrass or harass her, or to somehow demean Lyndon through innuendo. References to Bobbie Wright's financial matters should therefore be prohibited. *See* Fed. R. Evid. 401, 402.

## IV.
## CONCLUSION

Defendants argue that Bobbie Wright's financial information is relevant because her FEMA money would have allowed Lyndon to move out of his contaminated trailer and mitigate his damages. The evidence, however, establishes that Lyndon was himself entirely capable of paying for other living arrangements. The only reason Lyndon didn't move out earlier is that he didn't know about the formaldehyde exposure he was suffering in the trailer. His mother's FEMA money would have made no difference either in his ability or his choice to leave the trailer, and is therefore irrelevant to mitigation of damages. The Federal Rules of Evidence, therefore, any references to Bobbie Wright's financial matters should be prohibited.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:   504/522-2304
        Facsimile:    504/528-9973
        gmeunier@gainsben.com

4

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:      504/522-2304
Facsimile:      504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
DENNIS REICH, Texas # 16739600

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471