UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * * * * * | MDL NO. 1873  SECTION "N" (5)  JUDGE ENGELHARDT MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO | | |
| *Lyndon T. Wright v. Forest River, Inc., et al* Docket No. 09-2977 | * * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S REPLY TO FOREST RIVER INC.'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO PROHIBIT REFERENCE TO FORMALDEHYDE IN FOODS AND OTHER PRODUCTS**

Plaintiff Lyndon Wright, respectfully submits the following reply to Forest River Inc.'s Opposition to Plaintiff's Motion *in Limine* to Prohibit Reference to Formaldehyde in Foods and Other Products and hereto states:

**I.   DEFENDANT'S EXPERTS RECOGNIZE THE INAPPLICABILITY OF FORMALDEHYDE IN FOOD TO THIS CASE.**

Under Rule 403 of the Federal Rules of Evidence, a district judge is permitted to exclude even relevant evidence if he finds that its probative value is substantially outweighed by the danger of "unfair prejudice, confusion of the issues, or misleading the jury." FED. R. EVID. 403. Here, Defendant, Forest River, Inc., asserts that Plaintiff's motion originates from Plaintiff's "confusion" as to the similarities between gaseous formaldehyde and formaldehyde found in food. Rec. Doc. 11728, p. 2. Respectfully, if this Court follows Defendant's logic, then not only is Plaintiff confused, but Defendant's

1

own experts must be confused. Although Defendant's argue that Plaintiff's counsel asked specific questions limited to a specific scope of formaldehyde biochemistry, it is clear from the questioning that Plaintiff's counsel asked a very general question to which Dr. Wedner provided a clear answer:

> Q But is formaldehyde also contained in certain foods?
>
> A Is it contained in certain foods? Sure.
>
> Q But that's not free formaldehyde, is it?
>
> A No, it's formyl, F-O-R-M-Y-L.
>
> Q And that's not an irritant in the same way that formaldehyde in the ambient air we have been discussing is?
>
> A That's correct.

Exhibit A, Deposition Transcript of H. James Wedner, M.D., October 12, 2009, p. 87, l. 4- l. 12. Similarly, counsel for Plaintiff asked Dr. James a similarly straightforward question to which Dr. James clearly answered:

> Q And formaldehyde in food really isn't relevant to these numbers you have here in comparison to free formaldehyde in the ambient air is it?
> . . .
> A Concentrations in food are not comparable to concentrations in air. They're two different things. Those are same as concentrations in water.

Exhibit B, Deposition Transcript of Robert C. James, Ph.D., November 6, 2009, p. 96, l. 16 –l. 23.

Defendant accuses Plaintiff of parsing the testimony of Drs. Wedner and James

to misrepresent their statements.  Accordingly, Plaintiff has attached the unedited, relevant portions of Drs. Wedner and James's testimony where they clearly enunciate the differences between gaseous formaldehyde and formaldehyde in food.  *See* Exhibit A, Exhibit B.  As such, it is evident that Defendant's experts recognize the inapplicability of formaldehyde in food as to the issues before this Court.

## II. EVIDENCE REGARDING FORMALDEHYDE IN FOOD IS CONFUSING TO THE ISSUES AT HAND.

Defendant's arguments in response to Plaintiff's motion *in limine* serve to validate Plaintiff's point that the inclusion of evidence relating to formaldehyde in food will confuse the issues. Although Defense counsel attempts to back-pedal from Drs. Wedner and James's testimony through the subsequent submission of affidavits, the biological facts differentiating gaseous formaldehyde and formaldehyde in food affirm the original statements of Defendant's experts.  Formaldehyde in its free, or gaseous state is not the same as bound formaldehyde found in foods.  Rec. Doc. 11728, p. 5. Defendant, however, attempts to persuade the court of the relevancy of formaldehyde in food by mentioning that cooking "fish" indoors can contribute to the levels of indoor formaldehyde.  While this assertion may be true, it does not mean that foods in and of themselves will combust and release formaldehyde.  Instead, the focus is on the act of cooking to induce the formaldehyde release, which has nothing to do with the dormant amount of formaldehyde contained within foodstuffs.

Moreover, Defendant's attempt to educate Plaintiff and this Court on the

chemical makeup of the various forms of formaldehyde is indicative of its confusing nature. While such information is interesting, the various forms of formaldehyde have little bearing on the issues before this Court. Free-form formaldehyde is the only form at issue here. Bound formaldehyde, or as Defendant "eloquently" and rather confusingly describes "as an adduct in which formaldehyde is conjugated to low molecular weight molecules during intermediary metabolism," has no bearing on Plaintiff's injuries. In fact, Defendant admits that "it is true that formaldehyde levels in food can play no role with respect to the irritant effects of formaldehyde." Thus, the chemistry lesson Defendant wishes to impose on the jury so it can introduce all the different levels of formaldehyde found in the environment is wholly unnecessary and only serves to confuse the issues and mislead the jury.

## CONCLUSION

Ultimately, this case is not about whether other products or foods contain formaldehyde, but whether the construction or design of Defendant's product caused Defendant's injuries. The gaseous formaldehyde at issues in this case does not exist shrimp or other foods. Plaintiff is not confused nor are Defendant's experts confused. Confusion, however, will exist if Defendant's are allowed to introduce evidence of formaldehyde in foods or other products. If such occurs, Plaintiff's will be forced to educate the jury on the exact differences between "an adduct in which formaldehyde is conjugated to low molecular weight molecules during intermediary metabolism" and free form formaldehyde, and how the forms of formaldehyde discussed are not the same as the type of formaldehyde emitted from the wood of Defendant's product.

Respectfully submits:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:    504/522-2304
       Facsimile:    504/528-9973
       gmeunier@gainsben.com

       s/Justin I. Woods
       JUSTIN I. WOODS, #24713
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:    504/522-2304
       Facsimile:    504/528-9973
       jwoods@gainsben.com

       **COURT-APPOINTED PLAINTIFFS'
       STEERING COMMITTEE**
       ANTHONY BUZBEE, Texas # 24001820
       RAUL BENCOMO, #2932
       FRANK D'AMICO, #17519
       MATT MORELAND, #24567
       LINDA NELSON, #9938
       MIKAL WATTS, Texas # 20981820
       Dennis Reich, Texas #16739600

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing on February 24, 2010.

                                                <u>s/Gerald E. Meunier</u>
                                                GERALD E. MEUNIER, #9471