UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL NO. 07-1873 |
| | SECTION N(5) |
| | JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO: *Lyndon Wright, et al. v. Forest River, Inc., et al.*, 09-2977 (E.D. La.) | MAGISTRATE CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### SHAW ENVIRONMENTAL, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF PAUL HEWETT, PH.D.

**MAY IT PLEASE THE COURT:**

Shaw Environmental, Inc. ("Shaw") submits this reply memorandum in support of its motion *in limine* to exclude expert testimony of Paul Hewett, Ph.D. ("Dr. Hewett") (R. Doc. 11415 ) in order to point out certain errors in Plaintiff's Memorandum in Opposition to Shaw's motion (R. Doc. 11762) (the "Opposition").

        **A.**       **The DeVany Data Is Unreliable and Irrelevant.**

Plaintiff argues that Shaw is incorrect for criticizing Dr. Hewett for not analyzing the DeVany data to see whether it "came from a statistically different population" because Hewett went back and did the analysis after his deposition, which was included his Supplemental Report. (Opposition, pp. 3-4). At the outset, Plaintiff should not be able to cite to Dr. Hewett's

Supplemental Report because it has been stricken from the record due to its late submission.[1] The Hewett Supplemental Report has no bearing on this litigation. Any reference by Plaintiff to this document is not only irrelevant, but improper, and thus, should be prohibited.

Even so, to the extent this Court is interested in the content of that report; Plaintiff misrepresents Dr. Hewett's findings. Before issuing the Supplemental Report, Dr. Hewett acknowledged that the DeVany's readings are much higher than anyone else's – so much so, that they actually form a different population of measurements in a statistical sense.[2] However, in the Supplemental Report, Hewett conducted a new analysis – an "ANOVA" analysis – that apparently is meant to show that DeVany's data really are not so different, after all. What Plaintiff fails to mention is Hewett only checked a fraction of DeVany's data set in reaching this so-called conclusion.[3] In other words, Hewett's Supplemental Report did not critique the entire data set. The fact still remains that DeVany's readings form a different population of measurements. Thus, the data are unreliable in and of themselves as a basis for testimony about the formaldehyde concentration in occupied Forest River travel trailers.

### B. DeVany Data on Unoccupied Trailers Have No Probative Value.

As stated in Shaw's motion, for any opinion about the average formaldehyde concentration in trailers other than the one at issue to be relevant in this case, the measurements

---

[1] Rec. Doc. No. 11464. Shaw acknowledges that Plaintiff has moved for reconsideration of this Order.

[2] Deposition of Paul Hewett, p. 85, attached hereto as Exhibit "A."

[3] The Opposition claims that the Supplemental Report reflects a determination that the DeVany data were not statistically different than the other data sets. Opposition, p.4. This is not true. The Supplemental Report only checked to see if the DeVany data taken from occupied units were different from the other data sets taken from occupied units. Shaw's whole point is that the inclusion of hundreds of DeVany readings taken from *unoccupied* units in Hewett's analysis inflates his results and makes them unreliable. The conclusions of the Supplemental Report – even if they are considered – do not respond to Shaw's argument.

2

taken in those other trailers must be taken while the trailer is occupied, or at least while the trailer is under conditions that simulate the circumstances under which an occupant might be living.  Because measurements of unoccupied units have no bearing on the conditions of occupied units and because Hewett failed to distinguish between measurements taken by occupied versus unoccupied travel trailers, his opinions are unreliable.

In response, Plaintiff argues that despite Shaw's assertion to the contrary, conditions of unoccupied units are of probative value.  Specifically, Plaintiff compares the conditions of an unoccupied trailer (one that has been sealed up with no ventilation whatsoever for an extended period of time) to those conditions experienced by Mr. Wright after returning to the Trailer after it had been closed up for the day while he was at work. (Opposition, p. 6).  Specifically, Plaintiff contends that while living in the Trailer, he "was working long hours" and left his Trailer "sealed up with the windows closed." (*Id*.)  Further, during the work days, Plaintiff asserts that he typically turned off "the air conditioner when he left the Trailer." (*Id*.)  Therefore, Plaintiff concludes that "the data on 'unoccupied travel trailers' bears a resemblance to the conditions that actually existed when Lyndon Wright would come back to his trailer on a daily basis after work as he would leave the trailer sealed upon and when he would come back it was very hot." (Opposition, pp. 6-7).

The fact (which is assumed here) that Plaintiff would leave his Trailer closed up with no air conditioner on a daily basis does not make it similar to the conditions that existed in unoccupied travel trailers that had sat around for days, weeks or months before testing.  Some of the temperatures in the DeVany-tested unoccupied units reached levels of over 100 degrees.  It is doubtful that Plaintiff experienced such extreme temperatures in his Trailer.  Further, DeVany's

data of unoccupied units were collected in the summer, while Mr. Wright lived in his Trailer year round.

The status of Plaintiff's trailer did not change from "occupied" to "unoccupied" just because he was not physically present there during the day. For Plaintiff to suggest otherwise is preposterous. Data collected in unoccupied trailers that have been closed up for some time, allowing formaldehyde levels to build under extreme temperatures, do not reflect conditions that Mr. Wright or actual travel trailer occupants might have experienced. Conclusions based on such data are inherently unreliable and should be excluded.

### C.   The DeVany Data Comprise a Majority of the Data Set Relied Upon.

Plaintiff attacks Shaw's argument that the DeVany data comprise a majority of the data set upon which Dr. Hewett relied because the DeVany set was just one of nine data sets Dr. Hewett examined in reaching his conclusions. (Opposition, p. 7). Plaintiff is mischaracterizing the facts. Dr. Hewett analyzed a "Forest River" data set comprising 833 readings, as well as a "Salem" subset of that dataset, comprising 178 readings. Of the 833 readings in the Forest River dataset, **520** were supplied by DeVany.[4] DeVany supplied 113 of the 178 "Salem" readings.[5]

Despite this, Plaintiff actually goes so far as to claim that Shaw "purposefully misleads the Court on the nature of Dr. Hewett's analysis" when "Shaw states that the DeVany Data comprise a majority of the data set upon which Hewett relies." Opposition, p. 7. This bizarre argument is refuted by Dr. Hewett himself:

---

[4]   Hewett Deposition, p. 78, Exh. "A."

[5]   *Id.*, pp. 78-79, Exh. "A."

Q: And she had a substantial majority of the measurements that are reflected in the Forest River dataset that you relied on, right?

A: That's correct.[6]

Further, among the 833 readings, DeVany was responsible for 288 of the top 300 readings.[7] Thus, by simply stating that the DeVany data compromised only one of nine data sets is misleading and disingenuous. Certainly, this one-out-of-nine argument does nothing to rehabilitate Hewett's conclusions, which depend on a heavy preponderance of DeVany data.

### D. Dr. Hewett Should Not Be Able to Offer Testimony Contrary to His Findings.

Plaintiff argues that Dr. Hewett should be allowed to testify on a relationship between age and formaldehyde levels because *analysis by others* "showed a statistically significant relationship for the equation containing the variable of the THU age, Temperature, Relative Humidity, Windows Open, and the presence of Mold." (Opposition, p. 10). Interestingly, Plaintiff neglects to address the fact that Dr. Hewett's own regression analysis failed to find that such a relationship exists. Table 8 in Dr. Hewett's report places an asterisk next to each coefficient that is correlated with formaldehyde concentration in a statistically significant way.[8] Some of the coefficients have asterisks. Age does not – not for the data collected by Bureau Veritas, not for the data collected by CDC, and not for the combined group. Therefore, *among*

---

[6] *Id.*, p.78, Exh. "A."

[7] *Id.*, p. 76, Exh. "A."

[8] Expert Report of Paul Hewett, p. 24, attached hereto as Exhibit "B."

*the data that Dr. Hewett analyzed, there is no statistically significant relationship between trailer age and formaldehyde levels*.

Further, Dr. Hewett looked only at Forest River trailers in reaching his conclusion about age and formaldehyde. The CDC Report looked at travel trailers from a number of different manufacturers. Thus, Dr. Hewett's failure to find a statistically significant relationship between age and formaldehyde has more bearing on this litigation than the CDC reporting generally that such a relationship may exist. Allowing Dr. Hewett to offer testimony regarding the relationship between age and formaldehyde when such testimony is directly contrary to his own findings is, by definition, unreliable.

### E. Dr. Hewett's Formula for Estimating Formaldehyde Levels is Unreliable.

Plaintiff incorrectly asserts that Shaw criticizes Dr. Hewett's formaldehyde formula because it "did not exactly predict the measurement." (Opposition, p. 12). Shaw is not arguing that Dr. Hewett's estimation formula is unreliable just because it does not predict the exact measurement of formaldehyde; Shaw argues that Dr. Hewett's formula is unreliable because it is known to give off values that are off by a factor of five.

It is true, as both Plaintiff and Dr. Hewett himself acknowledge, that statistical models do not, and are not even meant to, predict precise value. The problem with this estimation formula is that its margin of error is so wide that it is not probative of any particular fact at issue. For example, in Hewett's report, he estimates that if given a temperature of 75ºF, humidity of 50%, windows closed, no mold, and a trailer age of 0, the predicted median concentration of formaldehyde is .157ppm.[9] On cross, the defense could point out that the confidence interval

---

[9] Hewett Report, p. 17, Exh. "B."

6

extends all the way from .023 ppm to 1.065 ppm – a gap of 46 times – but nothing will really have been accomplished. The wide margin of error means that the prediction of the median is inherently unreliable in the context of this case. As a gatekeeper, the Court should not allow predictions based on this model into evidence.

## CONCLUSION

Based on the reasoning and jurisprudence cited in Shaw's Motion *In Limine* to Exclude Expert Testimony of Paul Hewett, Ph.D., and for the reasons stated herein, Shaw Environmental, Inc. respectfully urges the Court to enter an order excluding Dr. Hewett's testimony in its entirety.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**


  /s/ M. David Kurtz
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**ATTORNEYS FOR DEFENDANT,
SHAW ENVIRONMENTAL, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2010, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.

                                                /s/ M. David Kurtz