UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE<br>PRODUCTS LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N-5<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO:

*Lyndon Wright v. Forest River, et al.*, No. 09-2977 (E.D. LA)

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF COSTS

Defendant United States of America ("United States") hereby moves pursuant to Fed. R. Civ. P. 54, and applicable law, for an award of costs incurred by the Government in defending this action. The Court should grant this Motion because given the underlying facts, and this Court's Orders in this Multi-District Litigation, Plaintiff was aware or should have been aware that the Court lacked subject matter jurisdiction under the Federal Tort Claims Act ("FTCA") over his claims.

### BACKGROUND

On March 2, 2009, plaintiff Lyndon Wright filed suit against the United States (Rec. Doc. 1, Case No. 09-2977). On March 6, 2009, the Court selected Mr. Wright as a Bellwether Plaintiff and set his case for trial on December 7, 2009 (Rec. Doc. 1299; Rec. Doc. 1307). On July 17, 2009, the Court allowed Plaintiff to amend his Complaint to assert claims for damages resulting from alleged exposure to mold and required all parties to complete trailer testing and expert reports relating to mold by September 1, 2009 (Rec. Doc. 2201).

On August 17, 2009, the Court reset the case for trial on March 15, 2010, and required

parties to complete all discovery on or before January 29, 2010 (Rec. Doc. 2716).  On November 17, 2009, the United States filed its Motion to Dismiss Lyndon Wright's FTCA claims asserting that the Court lacked subject matter jurisdiction because Mr. Wright filed suit before exhausting his administrative remedies, 28 U.S.C. § 2675(a), and asserting that his FTCA claims are time-barred by the FTCA two-year statute of limitations, 28 U.S.C. § 2401(b) (Rec. Doc. 7368).  Plaintiff opposed that Motion arguing that he complied with applicable legal requirements and asserting that the Court had subject matter jurisdiction over his FTCA action (Rec. Doc. 8670).  On January 21, 2010, the Court granted the United States Motion and dismissed Plaintiffs' FTCA claims for lack of subject matter jurisdiction (Rec. Doc. 10493).

## ARGUMENT

The presumptive rule is that a prevailing party may recover its costs incurred in litigating a case.  *See* Fed. R. Civ. P. 54(d)(1) ("[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party.").  Further, a defendant in a case dismissed with prejudice is considered a "prevailing party" under Rule 54.  *See Schwarz v. Folloder*, 767 F.2d 125, 130-131 (5th Cir. 1985) ("a dismissal with prejudice gives the defendant the full relief to which he is legally entitled and is tantamount to a judgment on the merits."); *Pacheco v. Mineta, et al.*, 448 F.3d 783, 795 n.19 (5th Cir. 2006) ("A dismissal with prejudice is tantamount to a judgment on the merits and thus the prevailing party is entitled to costs."), *citing Schwarz*, 767 F.2d at 130-131.  This is because the "decision to award costs turns on whether a party, as a practical matter, has prevailed." *Id.*, *citing Anthony v. Marion County General Hosp.*, 617 F.2d 1164, 1169-70 (5th Cir.1980) ("Although there has not been an adjudication on the merits in the sense of a weighing of facts,

2

there remains the fact that a dismissal with prejudice is deemed an adjudication on the merits for the purposes of *res judicata.* As such, the [defendant] has clearly prevailed in this litigation."). *See also Porter v. Kessner*, No. 00-31396, 268 F.3d 1064 (5th Cir. 2001), 2001 WL 878061 (affirming cost award under Rule 54 after dismissal for lack of subject matter jurisdiction); 28 U.S.C. § 1919 (the Court "may order the payment of just costs" when "any action or suit is dismissed . . . for want of jurisdiction.").

The categories of costs that may be awarded to a prevailing party under Rule 54 are listed in 28 U.S.C. § 1920, which provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. *See, e.g., Tyler v. Union Oil Co.*, 304 F.3d 379, 405 n.16 (5th Cir. 2001); *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993). Accordingly, the United States, pursuant to 28 U.S.C. § 1920(2), seeks the following fees for "printed or electronically recorded transcripts necessarily obtained for use" in this case:

| Name of Deponent | Date of Deposition | Total Costs Incurred |
|---|---|---|
| Albrecht, James | 1/20/2010 | $421.92 |
| Allan, Graham | 12/17/2009 | $707.80 |
| Burian, Jeffery | 11/4/2009 | $901.62 |
| Compeau, Geoffrey | 1/7/2009 | $1,294.65 |
| Coy, Mike | 1/19/2010 | $239.20 |
| Dison, Nicole | 1/14/2010 | $350.10 |
| Dorris, Nathan | 1/4/2010 | $939.00 |
| Dyson, William | 12/21/2009 | $187.98 |
| Farber, George | 10/28/2009 | $112.13 |
| Field, Charles | 10/20/2009 | $404.75 |
| Foltz, James | 1/19/2010 | $243.37 |
| Fribley, Thomas | 1/15/2010 | $1,588.05 |
| Gaeddert, Doug | 11/5/2009 | $530.61 |
| Hewett, Paul | 12/2/2009 | $642.45 |
| James, Robert | 1/14/2010 | $606.56 |
| Jarrell, Albert | 1/25/2010 | $350.45 |
| Keifer, Elton | 11/3/2009 | $847.33 |
| Kelman, Bruce | 12/15/2009 | $1,310.55 |
| LaGrange, Paul | 10/26/2009 | $695.60 |
| Mallet, Al | 1/12/2010 | $588.55 |
| Marsh, Tyshone | 1/14/2010 | $287.05 |
| Miller, Lawrence | 11/10/2009 | $313.15 |
| Moore, Charles | 10/27/2009 | $1,090.00 |
| Morris, Travis | 12/19/2009 | $238.05 |
| Nelson, Norm | 12/23/2009 | $282.18 |
| Osteraas, John | 12/16/2009 | $919.85 |
| Polk, Mark | 12/22/2009 | $573.05 |
| Ritter, Ervin | 12/9/2009 | $473.75 |
| Robbins, Coreen | 12/14/2009 | $2,127.50 |
| Scott, William | 11/13/2009 | $478.35 |
| Shwery, Edward | 11/9/2009 | $484.75 |
| Smith, Kenneth | 12/4/2009 | $411.60 |
| Smulski, Stephen | 1/29/2010 | $395.55 |
| Snell, Donald | 12/22/2009 | $724.88 |
| Spector, Richard | 10/29/2009 | $589.60 |
| Thompson, John | 1/8/2010 | $337.70 |
| Watson, Tony | 12/21/2009 | $197.38 |
| Williams, Patricia | 12/3/2009 | $845.65 |

| | | |
|---|---|---|
| Wright, Bobbie | 1/5/2010 | $668.80 |
| Wright, Lyndon | 7/10/2009 | $653.05 |
| Wright, Michelle | 1/5/2010 | $158.90 |
| Young, Edith | 1/22/2010 | $462.00 |
| **TOTAL COSTS** | | **$25,675.26** |

These costs are further detailed at U.S. Exhibit 1, attached hereto.

Further, 28 U.S.C. § 1920(3) ("Fees and disbursements for printing and witnesses") permits recovery of costs incurred in making Government witnesses available to testify. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987). Such costs include $40 per day for the witnesses' attendance at trial or deposition. 28 U.S.C. § 1821(a)(1), (b); *West Wind Africa Line, Ltd. v. Corpus Christi Marine Servs. Co.*, 843 F.2d 1232, 1237 (5th Cir. 1988). Thus, the United States seeks the following costs for the deposition attendance of witnesses it produced in this case:

| **Name of Witness** | **Date Made Available** | **Costs Incurred** |
|---|---|---|
| Boyle, Brian | 2/12/2010 | $40.00 |
| Polk, Mark | 12/22/2009 | $40.00 |
| **TOTAL COSTS** | | **$80.00** |

Finally, the United States seeks all costs relating to Dr. Bruce Kelman. Dr. Kelman is a toxicologist and is the expert the United States retained to investigate and provide expert opinion regarding whether Plaintiff was injured as a result of his alleged exposure to mold. A court, pursuant to its inherent authority and so long as such an award is not forbidden by Congress, may award costs for expert witnesses, in excess of the statutory maximum contained in 28 U.S.C. § 1821. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-259 (1975). Such an award is warranted where a party has willfully disobeyed a court order, or has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (citing cases); *see also*

28 U.S.C. § 1927 (attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 332-333 (5th Cir. 1995) (expert fees in excess of statutory minimum may be awarded in certain circumstances under discovery rule).  The United States submits that this case presents such a special circumstance and that it is entitled to costs and expenses charged by Dr. Kelman.

On June 18, 2009, the Defendants filed a Motion for Protective Order to prohibit the re-testing of the trailer occupied by Mr. Wright (Rec. Doc. 1805; Rec. Doc. 1817).  That Motion requested, in part, that "no mold testing of any kind be permitted" because mold had "not been properly alleged in this case."  *Id.* at 11 & n.12 (Rec. Doc. 1805-2).  On June 30, 2009, the Court Ordered that "no mold testing shall be permitted " (Rec. Doc. 2009 at 2).

On July 2, 2009, Plaintiff filed a Motion for Reconsideration arguing that "[t]he prohibition of mold testing will exclude a very large and important piece of evidence essential to Plaintiff's case."  Rec. Doc. 2042-1 ¶ 5.  On July 13, 2009, the Court denied Plaintiff's Motion for Reconsideration, explaining and referencing its July 6, 2009 Order and Reasons wherein it ruled on a separate request addressing mold that:

> Plaintiffs have confirmed that they are not alleging claims relating to the impact of mold on their health. . . . The Court will consider giving an instruction to the jury that Plaintiffs do not allege and cannot recover for the impact of the presence of mold on their health.  It should be noted that the substance of this guidance shall also apply to the Court's June 30, 2009 Order and Reasons (Rec. Doc. 2009), wherein it stated that "[n]o mold testing shall be permitted."

Order at 2 (Rec. Doc. 2062).  The Court further explained that "at this late date, the Court will

not permit Wright to conduct mold testing to allegedly support his recently-made claims that mold contributed to his injuries." Rec. Doc. 2149 at 3.

Notwithstanding the Court's denial of the Motion for Reconsideration, Mr. Wright on July 13, 2009, filed a Motion for Leave to file a First Supplemental and Amending Complaint that alleged that his injuries were caused by exposure to mold in the travel trailer (Rec. Doc. 2128 (incorporating Rec. Doc. 1854 and Rec. Doc. 1862, deficient Motions to Amend)). On July 17, the Court held a conference to address Plaintiff's Motion and request to amend his Complaint to add claims of injury due to exposure to mold in the travel trailer (Doc. Rec. 2201). In the conference, this Court explained that "[t]he MDL was designed to handle common allegations from several districts relative to formaldehyde exposure . . . this is the first and only case where mold exposure has been a component claim for compensation . . . I am very concerned about injecting an entirely new claim for injury based on mold exposure . . . I don't think that result tells us anything about how the MDL can be resolved." July 17, 2009, Hearing Transcript at 4:10-5:3 (Rec. Doc. 2625-1); *see also id.* at 15:16-23 ("I'm surprised that this hasn't come up before" that Plaintiff "has in addition to [his formaldehyde claim] a mold exposure claim. I don't understand how this could have come up so late."). The United States explained that allowing Plaintiff to test the trailer and assert claims based upon mold would simply constitute a waste of time and money:

> **Mr. Miller**: Judge, even if the plaintiff from the very beginning had been asking for damages that were mold related, we still would have opposed mold testing at this point in time because what is the point of hiring a bunch of mold experts to go out to a trailer that's been sitting out in a field in Louisiana through the winter, summer, all seasons for 18 months? God knows what kind of mold is growing in that thing. I mean, no useful data is going to come out of that expenditure of money on mold testing at this point in time.

7

\* \* \*

> **The Court**: Well, you might be right about that and that sounds like the subject of a <u>Daubert</u> motion. It may well be that a test at this point in time is pretty meaningless seems to me, and that's the subject of a <u>Daubert</u> motion and that will be the subject of the merits of it, not admissibility.

July 17, 2009, Hearing Transcript at 22:6-22 (Rec. Doc. 2625-1). The Court further explained

that:

> **The Court**: You've made an allegation about mold, I hope under Rule 12 you've got some basis to make that allegation. You should already have a lot of information on that. You're asking me to allow this amended complaint, I hope you've already done your homework to a large degree.
>
> **Mr. D'Amico**: We have, Judge.

*Id.* at 36:20-25. Finally, the Court instructed Plaintiff's Counsel, that Plaintiff must promptly

abandon the mold claim if he was unable to meet his burden of proof. *Id.* at 48:21-24.

> **The Court**: . . . And I have the same concern about expanding beyond formaldehyde, my responsibility was to try to handle in a multidistrict fashion complaints about formaldehyde exposure. The problem with not handling the mold at this point that in order to hopefully achieve a resolution of all of these cases I've got to be able to pick up that piece to the extent that it is not unique to this plaintiff alone but that it may be a common component to a larger group of plaintiffs.
>
> **Mr. D'Amico**: And, Judge, I would say that that's the point if I felt that was an oddball case and it was one of a rarity I would not be proposing that we go forward with this case. I would say, look, we have an anomaly, let's kick him out. All of our statistical analysis and what CDC showed, just like you did in this selection process, one is going to be a mold case and that's what we found.
>
> **The Court**: Frank, all I can tell you, cautionary word, if you do not have an expert who can help you with your burden of proof, I would expect you to abandon the claim with regard to mold exposure.
>
> **Mr. D'Amico**: Absolutely. And the only reason I am addressing, if you look at the attachment from FEMA about important information about formaldehyde residents, they warn that other pollutants, mold and smoke -

8

> **The Court**: All of that is well and good, but you need testimony to meet your burden of proof that this man . . . That this plaintiff suffered an injury as a result of not just any mold but mold that was present in his unit while he lived in it and not mold from any other source. So you better be prepared to meet that burden. And if you can't, I would expect you to abandon the claim, sooner rather than later.
>
> **Mr. D'Amico**: Absolutely, Judge.

*Id.* at 48-49:14-12 (Rec. Doc. 2625-1). After the conference, the Court issued an Order granting Plaintiff leave to amend his Complaint to add the claim for mold-related injuries (Rec. Doc. 2201).

Within days of the Court's Order allowing Plaintiff to assert that he suffered injuries as a result of exposure to mold in trailer, the United States retained Dr. Bruce Kelman, a toxicologist. Dr. Kelman was instructed to investigate and assess Plaintiff's mold claim and to prepare a report setting forth his opinions and basis for his opinions. Dr. Kelman was hired specifically to address Plaintiff's mold claims.

Notwithstanding Plaintiff's Counsel's representation, Plaintiff failed to proffer evidence to meet his burden of proof. *See* Memo. In Support of Motion for Summary Judgement at 16-19 (Rec. Doc. 10933-1). Plaintiffs' expert Dr. Patricia Williams explicitly refused to offer a general causation opinion of "more likely than not," rather simply offering the opinion that mold has been associated with some symptoms, and Plaintiff offered absolutely no specific causation witness. *Id*. Nevertheless, Plaintiff failed comply with the Court's instruction and abandon the mold claim, and thus, presently pending is the Defendants' Motion for Summary Judgment on Causation (Rec. Doc. 10933-1), which in part, seeks dismissal of all mold claims. *See* Memo. In Support of Motion at 16-19 (Rec. Doc. 10933-1). Significantly, Plaintiff does not challenge the Defendants' Motion to dismiss his mold claims. *See* Response to Motion filed by Plaintiffs'

Liaison Counsel (failing to challenge Motion to dismiss mold claims) (Rec. Doc. 11544); Reply to Response to Motion filed by Defendant at 2 (noting that Plaintiff failed to oppose dismissal of mold claim) (Rec. Doc. 11816).

Because Plaintiff's Counsel failed to comply with the Court's instruction and promptly abandon the mold claim, consistent with the Court's instruction and Plaintiff's Counsel's agreement, the Court should award the United States all costs associated with defending against the mold allegations. Plaintiff's Counsel was instructed and agreed to promptly abandon the claim if the expert were unable to establish a *prima facie* case, and Plaintiff failed to comply with the Court's admonitions and instructions. Such a special circumstance justifies the Court's award of expert witness fees in this action for expenses incurred by the United States in response to Plaintiff's mold claim. *See Alyeska*, 451 U.S. at 258-259; *Cambridge Toxicology Group*, *Inc.*, *v. Val Exnicios*, 495 F.3d 195, 180-181 (5th Cir. 2007) (attorney who continued to file pleadings despite repeated denials of leave to amend and court instructions was required to pay costs and fees pursuant to 28 U.S.C. § 1927). Accordingly, the Court should award the United States' all costs associated with Dr. Kelman, which total **$130,072.95**. *See* U.S. Exhibit 2.

The equities in this case weigh in favor of awarding the United States all costs that it seeks to recover in this action. Plaintiff's Counsel knew, or through the exercise of due diligence should have known, that the Court lacked jurisdiction over his FTCA claim when they filed suit. As an initial matter, the action was commenced by Mr. Wright prior to even initiating, much less exhausting, the administrative claims process (a fact that the United States could not determine because his Counsel had simply shipped approximately 5,000 administrative claims to FEMA in boxes with no cover letter or other documentation identifying on whose behalf the claims were

submitted).  Further, Plaintiff's Counsel knew or should have known that the claim was presented well after expiration of the two-year statute of limitations.  Order at 5-9 (Rec. Doc. 10493); *see also* Motion to Dismiss for Lack of Jurisdiction Lyndon Wright's FTCA Claims For Failure To Exhaust His Administrative Remedy And For Failure To Present His Administrative Claim To FEMA In A Timely Manner (Rec. Doc. 7368; Rec. Doc. 7368-1).

Moreover, the dismissal of Mr. Wright's FTCA claims followed established case law and prior rulings of this Court on these issues in other cases.  *See* July 24, 2009, Order and Reasons at 1-2 (Rec. Doc. 2323) (in lawsuit filed by Mr. Wright's counsel, Court ruled that it lacked jurisdiction over claimant's FTCA claims because claimant failed to exhaust administrative claim process before filing suit); August 21, 2009, Order and Reasons (Rec. Doc. 2789) (dismissing Chris Cooper's FTCA claims for failing to file timely administrative claim); November 16, 2009, Order and Reasons (Rec. Doc. 7251) (Order denying as moot Plaintiff's Counsels' Motion to Amend because they agreed to voluntarily dismiss with prejudice the claim of Elisha Dubuclet, which was time-barred).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court award it costs in the amount of **$156,673.13**.

Dated: February 25, 2010.

TONY WEST
Assistant Attorney General, Civil Division

J. PATRICK GLYNN
Director, Torts Branch, Civil Division

DAVID S. FISHBACK
Assistant Director

OF COUNSEL:

JORDAN FRIED
Associate Chief Counsel

JANICE WILLIAMS-JONES
Senior Trial Attorney
Federal Emergency Management Agency
Department of Homeland Security
Washington, D.C. 20472

Respectfully Submitted,

ADAM BAIN
HENRY T. MILLER
Senior Trial Counsel

ADAM DINNELL
MICHELE GREIF
JONATHAN WALDRON
Trial Attorneys

*//S// Michelle Boyle*
MICHELLE BOYLE (Va. Bar No. 73710)
Trial Attorney
United States Department of Justice
Civil Division – Torts Branch
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20004
Telephone No: (202) 616-4447
E-mail: Michelle.Boyle@USDOJ.Gov

Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

*//S// Michelle Boyle*
MICHELLE BOYLE (Va. Bar No. 73710)