## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

| | | |
|---|---|---|
| **EUGENE ROBERTSON, et al** | * | **DOCKET NO. 2:10-cv-00216** |
| | * | |
| **versus** | * | **JUDGE ENGELHARDT** |
| | * | |
| **GULF STREAM COACH, INC.** | * | **MAGISTRATE CHASEZ** |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Plaintiffs file this motion to remand under 28 U.S.C. § 1447(c) and, in support, would show:

### BACKGROUND

Plaintiffs filed suit against Defendant Gulf Stream Coach, Inc. in the Civil District Court for the Parish of Orleans on or about December 8, 2009.  Defendant removed the case to this court, based on: 1) diversity jurisdiction, 28 U.S.C. § 1332; and 2) federal officer removal statute, 28 U.S.C. § 1442(a)(1).  (Docket Entry No. 1, at ¶¶ 4 & 10).

### ARGUMENT AND AUTHORITIES

The court may remand a case on the basis of any defect identified in a motion for remand filed within 30 days after the notice of removal under 28 U.S.C. § 1446(a).  28 U.S.C. § 1447(c).  Defendant filed its notice of removal on January 29, 2010.  Therefore, this motion is timely.

Federal district courts are courts of limited jurisdiction.  U.S. CONST. art. III, § 2, cl.1.  Federal subject matter jurisdiction cannot be consented to nor waived.  *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999).  Therefore, a federal court may exercise jurisdiction only in certain, specific instances.  "The removing party bears the burden of establishing that federal jurisdiction exists."  *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th

Cir. 1995) ("*de Aguilar II*").  "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."  *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  Defendant has not met this burden.

## I.      Standard of Review

The Fifth Circuit will "review a denial of a motion to remand *de novo*."  *Gebbia v. Wal-Mart Stores*, 233 F.3d 880, 882 (5th Cir. 2000).

## II.     Diversity Jurisdiction Does Not Exist

The federal courts:

> have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
>
> (1) citizens of different States; …

28 U.S.C. § 1332(a)(1).  Plaintiffs do not contest that Defendant and Plaintiffs are citizens of different states.  However, the amount in controversy for each individual plaintiff[1] does not exceed $75,000.00, exclusive of interest and costs.

Further, the Court may not exercise jurisdiction under subsection 1332(d), as this lawsuit has fewer than one hundred plaintiffs and the all of the claims and injuries arise from events or occurrences in the state of Louisiana.  *See* 28 U.S.C. § 1332(d)(11).

In instances such as this one, where the Plaintiff did not specify an amount of damages,[2] "the removing defendant must prove by a preponderance of the evidence that the amount in

---

[1] Further, plaintiffs' claims cannot be aggregated to equal or exceed $75,000.00.  *See Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia, S.A.*, 988 F.2d 559, 563-64 (5th Cir. 1993) ["ANPAC"], *abrogated on other grounds by Marathon Oil Co. v. A.G. Ruhrgas*, 145 211 (5th Cir. 1998); *Eagle Star Insurance Co. v. Maltes*, 313 F.2d 778, 779-80 (5th Cir. 1963).

[2] Defendant points out that Plaintiffs did not set out an amount in controversy in accordance with Louisiana law.  (Docket Entry No., at ¶ 8).  It should be noted that the Plaintiff in *Royal Cosmopolitan* also did not plead a

controversy exceeds $75,000." *Simon*, 193 F.3d at 850.  A removing defendant may do this in two ways:

> (1) by showing that it is apparent from the face of the petition that the plaintiff's claims exceed the jurisdictional amount, or

> (2) by setting forth facts showing that the jurisdictional amount is satisfied.

*Royal Cosmopolitan, LLC v. Star Real Estate Group*, LLC, 629 F. Supp.2d 594, 596 (E.D. La. 2008), *citing Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

> A.    <u>It is not facially apparent that individual Plaintiffs' claims exceed $75,000.</u>

In cases where the courts have found that it is facially apparent that the claims exceed $75,000, the petitions usually invoke strong language to describe the injuries.  *See Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (petition alleged, among other things, "travel expenses, an emergency ambulance trip, a six day stay in the hospital" after plaintiff suffered heart failure after not taking her medicine when airline lost her luggage); *De Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir. 1993) ("*de Aguilar I*") (in case concerning an airplane explosion in the Mexico where petition plead "claims for wrongful death,[3] terror in anticipation of death, loss of companionship, and funeral expenses");   However, simply using strong language in the state court petition does not in and of itself make it facially apparent that the claim exceeds $75,000.  *See German v. Lowrance*, No. Civ. A., 05-2161, 2005 WL 3543944, at *1 (E.D. La. Oct. 14, 2005) (granting motion to remand and determining that it was not facially apparent that jurisdictional amount existed even though the petition alleged "that the defendant driver was speeding and 'violently struck' the plaintiffs' vehicle resulting in 'serious and painful

---

maximum or minimum amount in controversy in its state court petition.  (Case No. 2:08-cv-04504-SSV-SS, Docket Entry No. 1, at ¶ 1 and Docket Entry No. 1-2, at pp. 2-4, attached as **Exhibit A**).  The original state court petition in *Royal Cosmopolitan* was also filed after the 2004 amendments to article 893 of the Louisiana Code of Civil Procedure.

[3] While this present case includes claims brought on behalf of the estates of Charlie Trotter and Sandra Williby, Plaintiffs did not plead wrongful death damages in its petition.

injuries,' 'handicap[] in employment,' and future medical care."); *Heinhuis v. Wilkes*, No. Civ. A. 02-1776, 2002 WL 1610963, at *1 (E.D. La. Jul. 17, 2002) (granting motion to remand in a personal injury case even though the petition stated that the plaintiff sustained "'serious and/or permanent injuries consisting of, but not necessarily limited, to severe trauma to her neck, back and other serious injuries to her mind and body,' causing her '*inter alia*, severe pain and suffering (physical and mental), mental anguish and distress, humiliation, disfigurement, disability, impairment of function, loss of past and future income, loss of past and fringe benefits, impairment of earning capacity and past, loss of enjoyment of life and future medical expenses.'").  By comparison, here, it is not facially apparent from the petition that damages sought are in excess of $75,000.00.

      B.    <u>Defendant has set forth no facts showing the jurisdictional amount is satisfied.</u>

Defendant has also set forth no fact showing that the amount in controversy exceeds $75,000.00.  The party invoking federal jurisdiction has the burden:

> 'both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegation.'

*Morton v. State Farm Ins. Co.*, 250 F.R.D. 273, 275 (E.D. La. 2008), *citing St. Paul Mercury indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 287, n. 10 (1938).  "Conclusional allegations are insufficient to establish jurisdiction" and do not constitute grounds for removal.  *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1240, 1254 (5th Cir. 1998).  However, in its notice of removal, Defendant only made the unsupported allegation that the amount in controversy exceeds $75,000.  (Docket Entry No. 1, at ¶ 9.)

"When the amount in controversy is ambiguous, as it is here, the nonremoving party may submit such an affidavit to clarify the amount of damages sought."  *Royal Cosmopolitan*, 629 F.

Supp.2d at 597.  In *ANPAC*, the Fifth Circuit relied on a sworn affidavit from plaintiffs' counsel stating that the damages sought were less than $50,000 per plaintiff.  988 F.2d at 565.  In *Royal Cosmopolitan*, the plaintiff "submitted the sworn affidavit[4] of its representative who aver[red] that 'the damages sought by Royal Cosmopolitan, LLC, do not exceed $75,000.00 exclusive of interest and costs.'"  629 F. Supp.2d at 597.  In the present case, none of the plaintiffs in this suit are seeking more than $75,000.00 in damages, exclusive of interest and costs.  *See* Affidavit of J. Scott Daniels, attached as **Exhibit C**; *see* Declarations of 76 of the 95 plaintiffs involved in this matter, attached as **Exhibit D**.   Therefore the amount in controversy does not exceed $75,000.00.[5]  In fact, the situation in the present case is very similar to the one in *ANPAC* where the Fifth Circuit held that

> [w]ithout purporting to resolve the question of the removing party's burden in all situations, we hold that at least where the following circumstances are present, that burden has not been met: (1) the complaint did not specify an amount of damages, and it was not otherwise facially apparent that the damages sought or incurred were likely above $50,000; (2) the defendants offered only a conclusory statement in their notice of removal that was not based on direct knowledge about the plaintiffs' claims; and (3) the plaintiffs timely contested removal with a sworn, unrebutted affidavit indicating that the requisite amount in controversy was not present.

*ANPAC*, 988 F.2d at 566; *see also Royal Cosmopolitan*, 629 F. Supp.2d at 597.

As Defendant has failed to show that the amount in controversy exceeds $75,000.00, this Court lacks jurisdiction over this matter and should grant Plaintiffs' motion.

## III.    Defendant Is Not A Federal Officer

The Federal Officer Removal Statute states that:

---

[4] A copy of this affidavit is attached as **Exhibit B**.

[5] Further, a formal stipulation is not required for Plaintiffs to prevail on their motion for remand.  *See German*, 2005 WL 3543944, at *2.

> (a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue. …

28 U.S.C. § 1442(a)(1). The purpose of this statute is to allow a federal official, acting in his official capacity, to present his defenses, including immunity, in a federal forum so that "a trial upon the merits of the state-law question [will be] free from local interests or prejudice." *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981). While § 1442 is not to be narrowly construed like other removal statutes, the "broad language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history and purposes." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). Further, even though § 1442(a)(1)

> is to be liberally construed, it must nevertheless be interpreted 'with the highest regard for the right of the states to make and enforce their own laws in the field belonging to them under the Constitution.'

*Preston v. Tenet Healthsystem Mem. Med. Ctr.*, 463 F.Supp.2d 583, 590 (E.D. La. 2006), *quoting Dixon v. Ga. Indigent Legal Servs., Inc.*, 388 F.Supp. 1156, 1162 (S.D. Ga. 1975). And, as in all other removal actions, the party seeking removal under § 1442 still bears the burden of proving that federal jurisdiction exists. *Winters v. Diamond Shamrock Chemical Co.*, 149, F.3d 387, 398 (5th Cir. 1998).

While available to contractors and other private parties in certain instances,

[t]he federal officer removal statute confers jurisdiction only if at least one of the Defendants is (1) a "person," (2) that acted under color of federal authority when

committing the allegedly tortious conduct, and (3) can assert a colorable federal defense.

*Breaux v. Gulf Stream Coach, Inc.*, Civ. Act. No. 08-893, 2009 WL 152109, at *2 (E.D. La. Jan. 21, 2009), *citing Winters*, 149, F.3d at 397.  Defendant must demonstrate that it meets all three criteria, but it cannot.

      A.    <u>Defendant is a person</u>.

Plaintiffs do not contest that Defendant qualifies as a "person" for the purposes of this statute.

      B.    Defendant was not acting under the color of federal authority when it <u>manufactured the trailers that caused Plaintiffs' injuries</u>.

Analysis of this factor:

depends on 'the level of official control, and perhaps more to the point, whether the defendant acted sufficiently under the direction of a federal officer in the performance of the acts that form the basis of the suit.'

*Breaux*, 2009 WL 152109, at *2, *quoting Guillory v. Ree's Contract Services, Inc.*, 872 F.Supp. 344, 346 (S.D. Miss. 1994).  In order to meet the second prong and "show the requisite federal direction", the contractor must "demonstrate that a federal officer has direct and detailed control over it."  *Kaye v. Southwest Airlines Co.*, 2005 WL 2074327, at *3 (N.D. Tex. 2005 Aug. 29, 2005), *citing* 16 MOORE'S FEDERAL PRACTICE § 107.15(1)(b)(ii) (3d ed. 2005); *see also Winters*, 149 F.3d at 398 ("the defendants acted pursuant to a federal officer's directions and that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims"); *Preston*, 463 F.Supp.2d at 590.  The Fifth Circuit looks to three factors that assess the level of control actually exercised by the government: (1) the level of detail in the government's specifications; (2) the government's compulsion with regard to the specifications; and (3) the degree of supervision exercised by the government.  *Winters*, 149 F.3d at 400.  "Federal

direction requires more than general auspices of a federal officer, or participation in a regulated industry." *Breaux*, 2009 WL 152109, at *3, *citing Bradley v. Northrop Grumman Systems*, 2007 WL 115246, at *2 (E.D. La. Apr. 12, 2007).

The "reasonably precise specifications" cited by Defendant are in fact just a five page document that simply provide the minimum standards for travel trailer construction. *See* Exhibit B to Defendant's Notice of Removal.  In fact, this issue has already been addressed by Judge Fallon and he found that the FEMA Model Travel Trailer Procurement Specifications "confirms that FEMA did not exercise any significant degree of control over the manufacturing of travel trailers." *Joseph v. Fluor Corp.*, 513 F. Supp.2d 664, 672 (E.D. La. 2007).  "[T]his document reflects the reality that FEMA merely entered the market for travel trailers as would any other buyer, with certain practical and economic considerations in mind." *Id*. at 673.  Additionally any claims that § 1442(a)(1) should be interpreted even more broadly because of the disaster context of this case have been routinely rejected by the courts of this district.  *Id*. (finding the Fleetwood and Fluor were not entitled to removal); *see also Creighton v. Fleetwood Enterprises, Inc.*, Civ. Act. No. 07-7194, 2009 WL 1229793 (E.D. La. May 5, 2009) ("American Radiation Services, Inc. (ARS), a government contractor responsible for inspecting and maintaining the FEMA trailers" was not entitled to removal under § 1442(a)(1)); *Breaux*, 2009 WL 152109, at *5 (Shaw not entitled to removal); *Preston*, 463 F.Supp.2d at 590 (finding that FEMA did not exercise direct and detailed control over evacuation operations at local hospitals in the days following Katrina).

Further, in its Notice of Removal, Defendant exaggerates the involvement of FEMA in the monitoring and inspection process of travel trailer manufacturing.  As one of Defendant's inspectors a testified, inspectors for the federal government only inspected the trailers once, after

Defendant had already conducted its final inspection. *See* Deposition of Susan Linda Esparza, at pp. 8-9 & 28, relevant portions attached as **Exhibit E**. Further, government personnel were not allowed inside the manufacturing facilities. *Id*. at p. 28; *see* Deposition of Terry Slone, at pp. 35-37, relevant portions attached as **Exhibit F**.

     C.    <u>Defendant does not have a colorable federal defense</u>.

While Defendant is not required to prove its defense on the merits, it must still show that it has a colorable, or plausible, federal defense. *Winters*, 149 F.3d at 400. Defendant's federal contractor defense is not even plausible.

The Supreme Court held that a federal contractor would be immune from state tort law only when 1) the subject matter involves "uniquely federal interests"[6] and 2) a "significant conflict exists between an identifiable federal policy of interest and the operation of state law or the application of state law would frustrate specific objective of federal legislation." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 507-08 (1998). If there is a "uniquely federal interest," then the Supreme Court provided three factors to determine if there was a significant conflict and thus where preemption should apply and to what extent:

(1)  whether the United States approved reasonably precise specifications;
(2)  whether the equipment conformed to those specifications; and
(3)  whether the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id*. at 512. The Fifth Circuit has held that

The protective shield in favor of the contractor collapses when the actions of the government contractor – and not those of the Government – produce the damaging defect. In such a situation, fairness dictates that a government contractor should not be permitted to escape liability by asserting the sovereign immunity of the Government.

---

[6] *Boyle* identified three areas where "uniquely federal interests arise: 1) the obligations to, and rights of, the United States under its contracts; 2) the liability of federal officers for official acts; and 3) civil liabilities arising out of procurement contracts relating to national defense. *Boyle*, 487 U.S. at 504-05.

*Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 245-46 (5th Cir. 2000).

### 1.   There Were No Reasonably Precise Specifications.

The first element requires the government provide precise specifications leaving no discretion to the contractor.  *Boyle*, 487 U.S. at 513; *Wisner v. Unisys Corp.*, 917 F. Supp. 1501, 1510 (D.C. Kan. 1996) (noting that "virtually microscopic precision" meets the first element). Courts have interpreted this to require "continuous back and forth" collaboration between the contractor and the government with respect to the design of the product supplied to the government.  *See Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000) (the government continuously interacted with the contractor over eight years and the government addressed the design issues specific to this case during the process); *Stout v. Bourgh-Warner Corp.*, 933 F.2d 331, 336 (5th Cir. 1991) (government contractor defense is available where "review [of the project] involved, inter alia, [the contractor's] submission of detailed drawings at various progressive stages of the design, critical design reviews where [government] engineers critiqued [the contractor's] work, and finally, the production of prototype model tested and evaluated for months by the [government] for its actual performance."); *Smith v. Xerox Corp.*, 866 F.2d 135, 137-38 (5th Cir. 1989) (first element established by government's initial supply of relevant specifications for shoulder-mounted weapon which were incorporated into production contract, and government's subsequent review and approval of contractor's final drawings and specifications); *see also Harduvel v. General Dynamics Corp.*, 878 F.2d 1311, 1320 (11th Cir. 1989) (extensive analysis and review by government of fighter aircraft's electrical system established government approval); *Kleeman v. McDonnell Douglas Corp.*, 890 F.2d 698, 702-03 (4th Cir. 1989) ((1) regular discussions between Navy officials and the contractor's employees as to the design, testing and production of the aircraft, (2) the Navy's large staff presence at the

contractor's facility; (3) the Navy's retention and exercise of the power to approve and reject design modifications; (4) the contractor's use of the Navy specifications for the landing gear design; and (5) the Navy's testing of the prototype).

In contrast, when the government passively accepts the contractor's independently developed design choices and, accordingly, does not exercise sufficient discretion over the design features in question, the contractor will not be allowed to assert the government contractor defense. *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1486-87 (5th Cir. 1989). "'[A]pproval' under the *Boyle* defense requires more than a rubber stamp" from the government. *Id.* at 1480.

The Fifth Circuit has held that reasonably precise specifications and conformity with those specifications refer to the particular feature of the product claimed to be defective. *Id.* at 1486; *see also Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 799 (5th Cir. 1993) (a court's analysis must focus upon the "particular feature" allegedly defective); *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746-47 (9th Cir. 1997); *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1371, 1377-79 (11th Cir. 1997); *Shurr v. A.R. Siegler, Inc.*, 70 F. Supp.2d 900, 900 (E.D. Wis. 1999); *Strickland v. Royal Lubricant Co.*, 911 F. Supp. 1460, 1467-68 (M.D. Ala. 1995).

As noted by Judge Fallon, the specifications cited by Defendant are simply purchase orders that establish basic parameters. *Joseph*, 513 F. Supp.2d at 672-73. Indeed, the set of facts in the present case is closely analogous to the example given in *Boyle* of what does not pose a significant conflict between federal and state interests:

> The United States contracts for the purchase … of [a travel trailer], specifying the [basic requirements] but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include certain safety features would not be a duty identical to anything promised by the Government, but neither would it be contrary. [Gulf Stream] could comply with both its contractual obligations and the state-prescribed duty of care.

*Boyle*, 487 U.S. at 509.  In such a case, "No one suggests that state law would generally be pre-empted in this context."  *Id*.

      2.   As There Are No Specifications, Moot Point on Whether The Trailer "Conformed" to Those Specifications.

As the five page specifications are not reasonably precise and contain no references to the design and warning defect claims in this lawsuit and there are no relevant provisions in the specifications, it is impossible for Defendant to prove that it complied with these non-existent "reasonably precise specifications."

      3.   Defendant Knew of Formaldehyde Risks, but Failed to Warn the United States

The third factor for "significant conflict" requires proof that the contractor warned the government about possible dangers in the use of the product known to the contractor but not to the government.  *Boyle*, 487 U.S. at 512.  The contractor satisfies this element by proving (1) that it lacks knowledge of any alleged danger relating to the product, or (2) the government already knew of the alleged danger or hazard.  *See Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996).  However, where a government contractor, by virtue of being engaged in the business, should have known as much, if not more than, the government regarding toxicity, the government contract defense is weakened.  *Strickland*, 911 F. Supp. at 1468.  As has been routinely demonstrated through the course of this litigation, there is no evidence that the Federal Government was aware of the danger of formaldehyde exposure in travel trailers until 2006; in contrast, there is ample evidence that Defendant was well aware of the hazard.

## **PRAYER**

As demonstrated above, this Court lacks subject matter jurisdiction over this matter. Diversity jurisdiction does not exist under 28 U.S.C. § 1332(a) because the amount in

controversy does not exceed $75,000.00, exclusive of interest and costs. Further, Defendant does not qualify for removal under the federal officer removal statute. For these reasons, Plaintiffs respectfully request that this Court grant the motion to remand and remand this suit to the Civil District Court for the Parish of Orleans.

Respectfully submitted:

### THE BUZBEE LAW FIRM

*/s/ Anthony G. Buzbee*

_____
Anthony G. Buzbee
Texas Bar No. 24001820
JPMorgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Tel.:   (713) 223-5393
Fax.:   (713) 223-5909

OF COUNSEL:
### THE BUZBEE LAW FIRM
Peter K. Taaffe
Texas Bar No. 24003029

John Munoz (#9830)
GARNER & MUNOZ
1010 Common Street, Suite 3000
New Orleans, LA 70112-2411
Tel.:   (504) 581-7070
Fax.:   (504) 581-7083

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

*/s/ John Munoz*
JOHN MUNOZ, #9830