UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N-5<br><br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO:

*Nunnery, et al v. Keystone RV Industries., et al,*
Case No. 09-3871

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT UNITED STATES OF AMERICA'S STATEMENT OF FACTS
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF DAVID MCGRAW'S FTCA
CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant the United States of America ("United States") hereby submits this statement of facts in support of its Fed. R. Civ. P. 12(b)(1) and 12(h)(3) motion to dismiss plaintiff David McGraw's Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b)(1), 2671-80, claims for lack of subject matter jurisdiction.

STATEMENT OF FACTS

1. In response to Hurricane Katrina, Mr. McGraw evacuated New Orleans and moved to Sulphur, Louisiana. Exh. 1, McGraw Depo. 51:9-14; 108-09:11-8. In January 2006, Mr. McGraw returned to New Orleans. Exh. 1, McGraw Depo. 120-22:25-22; 125:6-17. For the first five or six months – January 2006 to June 2006 – Mr. McGraw stayed at the Hilton Hotel on Airline Highway. Exh. 1, McGraw Depo. 122-23:12-1; 125-26:11-7. In June 2006, he moved to his niece's apartment in Metarie, Louisiana. Exh. 1, McGraw Depo. 120-22:25-22;125:6-17. Mr. McGraw stayed with his niece for approximately two to three weeks. Exh. 1, McGraw

Depo. 122-23:12-19; 125-26:11-7.

2. In June 2006, a FEMA trailer issued to Mr. McGraw's sister was installed in the backyard of Mr. McGraw's property, 5212 Dauphine Street, New Orleans, Louisiana. Exh. 1, McGraw Depo. 126:2-20; 136-40:3-9. In late June or early July 2006, Mr. McGraw vacated his niece's apartment and moved into that trailer. Exh. 1, McGraw Depo. 126-28:2-11; Exh. 2, McGraw PFS at 9; First Supplemental and Amending Complaint for Damages ("Supp. Complt.") ¶¶10, 14 (Rec. Doc. 10274). Mr. McGraw lived in the trailer that FEMA had issued to his sister for two to three weeks. Exh. 1, McGraw Depo. 125-28:11-6.

3. In late July 2006, a second FEMA trailer, this trailer issued to Mr. McGraw and manufactured by Keystone, was installed in Mr. McGraw's backyard at 5212 Dauphine Street. Exh. 1, McGraw Depo.136-40:3-9; Exh. 2, McGraw PFS at 9; Supp. Complt. ¶12 (Rec. Doc. 10274). Mr. McGraw moved into this trailer in late July 2006. Exh. 1, McGraw Depo. 136-40:3-9; Exh. 2, McGraw PFS at 9; Supp. Complt. ¶12. (Rec. Doc. 10274).

4. Mr. McGraw vacated the Keystone trailer on or before December 2007 after he completed repairs to his house at 5212 Dauphine Street. *See* Exh. 1, McGraw Depo. at 69-70:23-9 (vacated trailer in November or December 2007); Exh. 2, McGraw PFS at 9, 11 (trailer vacated in July 2007); Supp. Complt. ¶14 (trailer vacated in July 2007) (Rec. Doc. 10274).

5. Before June 2006 and Mr. McGraw moving into the FEMA issued trailers, he was not sick. Exh. 2, McGraw PFS at 3-4.

6. Within one or two months of moving into the FEMA issued trailers, Mr. McGraw experienced headaches, nausea, abdominal pain, diarrhea, shortness of breath, persistent cough, and he began to suffer allergies for the first time in his life. Exh. 2, McGraw PFS at 3-4.

7.     Mr. McGraw asserts that he had not experienced any of these types of illness or diseases prior to living in the FEMA trailer. Exh. 2, McGraw PFS at 4. At his deposition taken on February 22, 2010, Mr. McGraw testified that:

Q    Why was it that you went to the doctor?

A    Mostly because I had sinus problems.

Q    How long ago was this? Two weeks ago?

A    Two weeks ago.

Q    When did the sinus problems you went to the doctor for, when did that start?

A    Well, these sinus problems, what I have now, been started. Like I told him, my lawyer, I never had the money to go pay for a doctor, so I just originally went to the health clinic where it was for free. So I been having real, real bad sinus problems when I was staying in the trailer.

Q    When did those start?

A    In '06, somewhere like July or August, the sinus started flaring up real bad, and I mean real bad, just constantly. After that certain period, every day sinus, where I wake up in the middle of the night because I can't breathe, because my nose is stopped up. Wake up in the morning, I got to blow the mucus out my nose, because I can't breathe. It was an everyday thing ever since then.

*   *   *

Q    . . . You're saying the problems that started when you moved in your trailer, sinus problems, that's what you went to the doctor for just two weeks ago?

A    Yes.

Exh. 1, McGraw Depo. 63-64:7-22.

Q    Now, you also claim $140,000 in personal injuries; is that right?

A    Yes.

3

\* \* \*

Q      . . . [W]hat is your definition of "personal injury"?

MR. WOODS:  Objection to the form of the question.

Q      Go ahead.

A      For once [sic], it's affecting my health.  Right now I'm going through something I never went through with this sinus stuff.  I never had sinus like this before, where every day I got to fight for my life just to breathe through my nose.

Q      Anything else?

A      Headaches and stuff like this.

Q      So there's sinus problems, headaches.  What else, sir?

A      Well, I have sometimes burning eyes.

\* \* \*

Q      So we have burning eyes, sinus and --

A      And headaches.

Q      Anything else?

A      That's it.

Q      Those are the things that you believe were caused as a result of the trailer?

A      Yes.

Q      Now, did you suffer the burning eyes when you were in the trailer?

A      Yes.

Q      Did you ever suffer those burning eyes before you moved into the trailer?

A      No.

Q       These headaches that you're talking about, these are worse headaches than you had before you moved into the trailer?

A       Well, these like headaches [sic], I could take Excedrin and still have a headache.

Q       And that's what I'm getting at.  You indicated in response to Mr. Johnson's questions that before you moved into the trailer, you had some headaches, but you would take an aspirin or Excedrin and it would go away?

A       Yes.

Q       The headaches that you started suffering once you moved into the trailer, were they different?

A       They're different.

Q       And how were they different?

A       They're more extreme, they last more longer, and just hard to get rid of.

Q       The Excedrin doesn't work on them?

A       No.

Q       And you also indicated that the sinus problem is really bad?

A       Well, I have a sinus problem now since I been in that trailer like I never had before.

Q       In fact, when you were talking with Mr. Johnson about it, you said that once you moved in, after a month or so, it got really bad, the sinus problems?

A       Well, once I came down here from Lake Charles, my sinus problem was clear.  I stayed at the hotel for five months.  I never had a sinus problem.  I stayed by my niece a couple of weeks.  I never had a sinus problem.  So when I got in this trailer for a couple of weeks, my sinus started acting up.

Q       And these were problems that you didn't have before you got in the trailer?

A       That's it.

Exh. 1, McGraw Depo. 243-46:5-20.

8. Mr. McGraw explained at his deposition he didn't know what in the trailer made him sicker than he had ever been before, but he thought it was the trailer because he had never had any of these problems before he moved into the trailer. Exh. 1, McGraw Depo. 242-47:2-10; 327:12-13.

9. On June 23, 2008, well within the FTCA two-year statute of limitations, Mr. McGraw signed a Contingency Fee Contract with the Hurricane Legal Center ("HLC"). Exh. 1, McGraw Depo. 225-26:25-16; 228:4-14; Exh. 3, HLC Contract at 1. Pursuant to that contract HLC agreed to represent Mr. McGraw and prosecute his claims for damages arising out of exposure to formaldehyde. Exh. 1, McGraw Depo. 256:3-8; Exh. 3, HLC Contract at 1. Mr. McGraw instructed his counsel that he did not have a wrongful death claim. Exh. 1, McGraw Depo. 227:21-14; 254-55:14-10; Exh. 3, HLC Contract at 4.

10. On June 1, 2009, FEMA received an Standard Form ("SF") 95 Administrative Claim from HLC. Exh. 4, Fed. Exp. Mailing Label/Receipt & Administrative Claim at FEMA-001011-12, 14; Exh. 5, Dec. M. Schrauger ¶¶4-5.[1] That claim was dated May 26, 2009, and seeks $176,000 in damages; $36,000 for property damage and $140,000 for personal injury.

---

[1] On June 23, 2008, the same day that Mr. McGraw signed the contingency fee contract with HLC, Mr. McGraw also signed a modified "Form 95 Administrative Claim." Exh. 1, McGraw Depo. 252-56:15-15; Exh. 6, June 23, 2008, Modified Claim Form. Mr. McGraw did not send that Claim Form to FEMA, and does not know what his counsel did with that document. Exh. 1, McGraw Depo. 252-56:15-15. Mr. McGraw and HLC through Mr. McGraw's Plaintiff Fact Sheet, completed on August 3, 2009, certified that only the May 26, 2009, Administrative Claim form was submitted to FEMA. Exh. 2, McGraw PFS §VIII (B) at MCGRAW_EX-000193, 204-06 (Mr. McGraw and HLC produced only the May 26, 2009, Administrative Claim Form in response to PFS request to produce all claims submitted to the Government). In addition, the Government has searched the administrative claims submitted by HLC to FEMA to determine whether HLC submitted and FEMA received the modified Administrative Claim Form dated June 23, 2008. Exh. 5, Dec. M. Schrauger ¶¶4-5. That search showed that the document was never received by FEMA. Exh. 5, Dec. M. Schrauger ¶¶4-5.

Exh. 4, Fed. Exp. Mailing Label/Receipt & Administrative Claim at FEMA-001014.

11. On June 15, 2009, Mr. McGraw filed suit against Keystone and Hill seeking damages for alleged injuries resulting from exposure to formaldehyde. *See* Complaint, *Nunnery, et. al. v. Keystone Indus. Inc., et. al.*, Docket No. 09-3871 (E.D. La.) (Rec. Doc. 1).

12. On January 14, 2010, Mr. McGraw filed an Amended Complaint and added the United States as a Defendant. *See* Supp. Complt. ¶2(a) (Rec. Doc. 10274).

Dated: March 4, 2010.                                   Respectfully Submitted,

TONY WEST                                               ADAM BAIN
Assistant Attorney General, Civil Division              Senior Trial Counsel

J. PATRICK GLYNN                                        MICHELLE BOYLE
Director, Torts Branch, Civil Division                  ADAM DINNELL
                                                        MICHELE GREIF
DAVID S. FISHBACK                                       JONATHAN WALDRON
Assistant Director                                      Trial Attorneys

OF COUNSEL:                                             //S// *Henry T. Miller*
                                                        HENRY T. MILLER (D.C. Bar No. 411885)
JORDAN FRIED                                            Senior Trial Counsel
Associate Chief Counsel                                 United States Department of Justice
                                                        Civil Division – Torts Branch
JANICE WILLIAMS-JONES                                   P.O. Box 340, Ben Franklin Station
Senior Trial Attorney                                   Washington, D.C. 20004
Federal Emergency Management Agency                     Telephone No: (202) 616-4223
Department of Homeland Security                         E-mail: Henry.Miller@USDOJ.Gov
Washington, D.C. 20472

                                                        Attorneys for the United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

                                        //S// *Henry T. Miller*
                                        HENRY T. MILLER (D.C. Bar No. 411885)