IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | § | MDL NO: 1873 |
| FORMALDEHYDE PRODUCTS | § | |
| LIABILITY LITIGATION | § | SECTION: N (5) |
| | § | |
| | § | JUDGE ENGLEHARDT |
| | § | |
| | § | MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO: | § | |
| *North American Catastrophe Services,* | § | |
| *Inc. v. Northfield Ins. Co.*, No. 09-3818 | § | |

**NORTH AMERICAN CATASTROPHE SERVICES, INC.'S MEMORANDUM IN OPPOSITION TO NORTHFIELD INSURANCE COMPANY'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff North American Catastrophe Services, Inc. ("NACS") opposes the cross-motion for summary judgment filed by Northfield Insurance Company on several grounds. First and foremost, this Court's conclusion that "Northfield consented to suit within Louisiana and under Louisiana law" would seem to resolve outright any questions pertaining to Northfield's duty to defend and indemnify NACS under the insurance policy.[1] This conclusion also renders unnecessary a

---

[1] Rec. Doc. 8625, p. 6 (Order and Reasons denying Northfield's motion to transfer venue) (Dec. 7, 2009).

conflicts analysis to determine whether Louisiana or Florida law governs enforcement of the policy. Even if a conflicts analysis were necessary, the result is the same: Louisiana law governs interpretation of the policy, including the policy's pollution exclusion. Under this State's laws, and, particularly, the Louisiana Supreme Court's decision in *Doerr v. Mobil Oil Corp.*, the policy's pollution exclusion does not apply to the claims against NACS in the underlying lawsuits.

As a final preliminary matter, Northfield's motion obviously relates to two distinct issues requiring different inquiries: (1) whether Northfield owes defense to NACS and (2) whether Northfield is potentially liable for the damage claims asserted in the underlying litigation. Because the duty to defend is much broader than the question of coverage, NACS submitted a Motion for Partial Summary Judgment on the Duty to Defend in an attempt to separate the consideration of these issues and as a logical first step in reaching the ultimate question of liability.[2] Regardless of how the indemnity issue may ultimately be resolved, there can be little doubt—especially in light of this Court's prior judgment on Northfield's motion to transfer venue—that at the very least, the claims of the underlying plaintiffs disclose the *possibility* of Northfield's liability under the policy, thus giving rise to a duty to defend NACS.

## STATEMENT OF FACTS

Since this Court is well versed in the facts giving rise to this declaratory judgment action, in lieu of reproducing the entirety of the factual and procedural

---

[2] *Steptore v. Masco Const. Co., Inc.*, 93-2064 (La. 8/18/94), 643 So.2d 1213, 1218 (citation omitted).

history of this dispute, NACS will instead highlight several important facts omitted from Northfield's discussion and will also seek to clarify a misrepresentation contained therein.

First, in the memorandum and statement of undisputed facts submitted in support of its motion, Northfield claims that NACS was not authorized to conduct business in this State. This assertion is misleading. Presumably, Northfield reaches this conclusion based on the fact that NACS did not procure a certificate of authority from the Louisiana Secretary of State prior to conducting business in this State. In fact, under subsections (E) and (H) of La. Rev. Stat. 12:302, NACS was not required to obtain a certificate of authority before conducting operations in Louisiana.[3] Thus, any suggestion that NACS engaged in non-sanctioned or improper business activities is misguided.

Indeed, Northfield knew about the nature and geographical extent of NACS's business operations when it issued the policy. As indicated in the policy's declarations, NACS was engaged in the business of supplying modular units to

---

[3] La. Rev. Stat. 12:302 provides, in part, as follows:

> Without excluding other activities which may not constitute transacting business in this state, *a foreign corporation or a business association shall not be considered to be transacting business in this state, for the purpose of being required to procure a certificate of authority pursuant to R.S. 12:301*, by reason of carrying on in this state any one or more of the following activities:
> …
> E. Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, if such orders require acceptance outside this state before becoming binding contracts, including all preliminary incidents thereto.
> …
> H. Transacting any business in interstate or foreign commerce…. (Emphasis added).

3

FEMA when it purchased the policy in August 2004. Significantly, Northfield does not deny that it was aware of NACS's business pursuits outside of Florida when the policy issued. In light of the fact that Northfield knew of NACS's business activities in other states, it would have been understandable had Northfield sought to include a choice of law provision in the policy, especially given the possibility that the object of the insurance contract—the insured risk—might manifest in a state other than Florida. Northfield, however, did not include a choice of law provision. Instead, Northfield included two separate clauses in the policy which relate to out-of-state coverage.

The first provision related to out-of-state coverage is the Service of Suit Clause, which provides as follows:

### SERVICE OF SUIT

> It is agreed that in the event of our failure to pay any amount claimed to be due hereunder, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. …[4]

In addition to the Service of Suit Clause, the policy also contains a Coverage Territory Clause stating that coverage under the policy exists with "The United States of America (including its territories and possessions)".[5] Although Northfield had the option to contractually pre-determine which jurisdiction's laws would apply to a dispute arising out of the insurance policy by including a choice of law provision, it failed to do so.

---

[4] Rec. Doc. 3193-3, p. 73; 3193-4, p. 69 (Northfield Insurance Policy).
[5] Rec. Doc. 3194-3, p. 57; 3194-4, pp. 29, 52 (Northfield Insurance Policy).

4

### LAW & ARGUMENT

**I. Because "Northfield consented to suit within Louisiana and under Louisiana law," a choice of law analysis is unnecessary and Louisiana law governs interpretation of the policy**

While Civil Code articles 3537 and 3515 provide the general rules for conflicts of law analysis in contractual disputes, this Court recognized that these provisions "…may be superseded by the effect given to other relevant articles, including article 3540."[6] Article 3540 states that "all other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties."[7] Thus, under article 3540, the threshold question is whether the policy itself—the law between the parties—provides guidance with regard to choice of law.

At the outset, it must be noted that the Northfield policy does not state that it shall be governed by Florida law. On the contrary, the policy contains two clauses demonstrating Northfield's cognizance of the risk that the insurance contract could be construed under the laws of a state other than Florida: the Coverage Territory Clause and the Service of Suit Clause.

Based on the Coverage Territory Clause and the Service of Suit Clause, this Court stated as follows in its judgment denying Northfield's motion to transfer venue:

---

[6] Rec. Doc. 8625, p.5 (Order and Reasons) (citing La. Civ. Code art.3537, comment (a) (1994)).
[7] La. Civ. Code art. 3540.

5

> The Coverage Territory Clause, found three times within the policy, concedes that coverage under the policy exists with "The United States of America (including its territories and possessions)". Likewise and perhaps most importantly, the Service of Suit Clause states that "all matters arising hereunder shall be determined in accordance with the law and practices of" "any court of competent jurisdiction with the United States of America." (Rec. Doc. 3193-3, pg. 73; 3193-4, pg. 69). NACS relied upon the words of the contract when it filed suit in this Court. …Northfield was aware that it was amenable to suit based upon the contract under the laws of the State of Louisiana. Northfield, as author of the contract, could have inserted into the contract a specific choice-of-law clause requiring the contract to be interpreted according to the laws of the state of its choosing; however, it did not. [8]

In sum, these clauses demonstrate that Northfield was not only *aware* that the policy might be susceptible to enforcement in other states under the laws of other states, it *anticipated* that very scenario.

Northfield's knowledge of the nature and geographical extent of NACS's business activities belies any suggestion that Northfield contemplated that NACS's activities would be confined within Florida and that the policy would be governed solely by Florida law.[9] In fact, the Coverage Territory Clause includes all of the United States! Both NACS and Northfield were surely aware then that the law of any state in which NACS conducted business might apply to a particular claim.

The policy's silence with regard to choice of law—not to mention the clauses relating to out-of-state coverage—yields the following conclusion: The policy was intended to provide indemnity to NACS for liability arising out of the conduct of its business, regardless of the location of the risk. Accordingly, this Court concluded

---

[8] Rec. Doc. 8625, p. 6 (Order and Reasons) (citing the Insurance Policy at Rec. Doc. 3194-3, pg. 57; 3194-4, pgs. 29 and 52.
[9] *Cf. Boutte v. Fireman's Fund County Mutual Inc.*, 06-34 (La.App. 3 Cir. 5/10/06), 930 So.2d 305, 319.

6

that these policy provisions made it unnecessary "…for the Court to engage in a conflicts of law analysis, as Northfield consented to suit within Louisiana and under Louisiana law."[10]

## II. Even if a conflicts of law analysis were necessary, Louisiana law would still govern interpretation of the insurance policy

Though this Court has concluded that the policy language renders unnecessary a conflicts analysis, even if it were, Louisiana's conflicts of law rules would dictate that this State's law governs interpretation of the contract. As this Court noted, in conflicts of law analyses

> Louisiana has adopted a comparative impairment standard. See La. Civ. Code art. 3537 (1994). For threshold consideration, the Court will determine if Louisiana has an interest in the matter, and if that interest would be impaired were Louisiana law not applied. In determining if Louisiana has an interest, the Court evaluates, among other things, the "contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties . . . " *Id.*[11]

In other words, the objective of the conflicts rules is "to identify 'the state whose policies would be most seriously impaired,' that is, the state that, in light of its connection to the parties and the transaction and its interests implicated in the conflict, would bear the most serious legal, social, economic, and other consequences 'if its law were not applied' to the issue at hand."[12]

Certainly, some of the considerations identified in articles 3537 and 3515 will be given more weight than others. In this case, "[t]he location of the risk dominates all

---

[10] Rec. Doc. 8625, p. 6 (Order and Reasons).
[11] Rec. Doc. 8625, p. 5 (Order and Reasons).
[12] La. Civ. Code art. 3537, Revision Comment (c).

7

other contacts with the contract."[13] That is, where the insured risk—the object of the contract—is involved, "the insured should be entitled to the application of the more beneficial of the conflicting rules because the law is protective of the insured and because the policy which favors the spreading of the risk will often be considered a superior policy by the states involved."[14] Here, the insured risk—the object of the contract—spanned the entire Gulf Coast. Northfield cannot deny that it had knowledge of NACS's business pursuits in other states when it issued the policy. Based on this knowledge, surely Northfield considered the possibility that the policy could be subject to enforcement in a state other than Florida.

In addition to being the location of the insured risk, Louisiana's relationship to this dispute arises from numerous other sources: NACS conducted business here pursuant to its contract with FEMA; the alleged injuries all occurred in Louisiana; the litigation commenced in Louisiana and remains pending in this Court; the plaintiffs are alleged to be residents of Louisiana; and all of the conduct related to NACS's defense of those claims is occurring here. Applying the considerations in article 3537 to the facts of this case, this Court concluded that "the place of performance, the location of the object of the contract, and NACS's business dealings within Louisiana are all contacts that implicate Louisiana's interest in the suit."[15]

In contrast to Louisiana's meaningful contacts with this dispute, Florida's contacts are derived entirely from the simple fact that NACS is a Florida

---

[13] *In re Combustion (I)*, 960 F.Supp. 1056 (W.D. La. 1997).
[14] *Id.* (citing P. Hay, E. Scoles, *Conflict of Laws*, § 17.34 at 621 (2 ed. 1992)).
[15] *Id.*

8

corporation. Northfield's narrow focus on the parties to the contract and the place where the administrative activities related to the contract took place is misguided. The principles governing conflicts analysis are not meant for mechanical application based entirely on the relationship of contracting parties, and irrespective of the relationship of the parties involved in a dispute to a contract.[16] "If that were true, then there would be no balancing of competing interests; every contract between an insured and an insurer would simply be upheld under the laws of the foreign state, no matter how severe the injury done in Louisiana to a Louisiana resident and no matter how invasive and violative of Louisiana policy…."[17]

Weighing the considerations identified in articles 3515 and 3537, it is apparent that Louisiana has more compelling interests that supersede those of Florida and would be adversely affected if Louisiana law were not applied. Obviously, Florida has an interest in the regulation of companies domiciled there and contractual obligations into which those companies may enter. It does not seem likely, however, that Florida would have an interest in asserting its laws to interpret an insurance contract entered into by its domiciliary, where it's domiciliary will be protected and benefit by the application of Louisiana law to the contract.[18]

---

[16] *Boutte*, 930 So.2d at 320.
[17] *See Richards Realty Company, L.L.C. v. Paramount Disaster Recovery, Inc.*, 476 F.Supp.2d 618, 623 (E.D.La. 2007) ("As envisioned by this Article, the search for the applicable law should not be a mechanical, quantitative process, but should be based on an objective and impartial evaluation of the consequences of the choice-of-law decision of each of the involved states with a view towards accommodating their respective interests rather than selfishly promoting the interests of one state at the expense of the others.").
[18] *See In re Combustion*, 960 F.Supp. at 1068.

In contrast, Louisiana's interests are much more substantial. Chief among these interests is Louisiana's "…interest in having localized controversies decided locally."[19] Plaintiffs in the underlying lawsuits are Louisiana residents. Consequently, the underlying plaintiffs would rightfully expect to be protected by this State's laws, including its strong public policy to compensate tort victims.[20] Moreover, this State's serious concern for the health and safety of its residents also supports a finding that Louisiana has a genuine interest in this dispute. In sum, because Louisiana's contacts to NACS, the underlying plaintiffs, and the object of the contract is stronger than Florida's contacts to Northfield and to the transaction itself, Louisiana's policy would be more impaired if Florida's law were applied that Florida's policy would be if Louisiana's law were applied.

### III. Because Louisiana law governs interpretation of the insurance policy, the pollution exclusion does not apply to the claims asserted in the underlying litigation

Regardless of whether the resolution of this dispute requires a conflicts analysis, Louisiana law will nevertheless govern the policy. This State's jurisprudence regarding the applicability of pollution exclusions in CGL policies determines whether Northfield is obligated to defend and indemnify NACS. Under Louisiana law, the pollution exclusion will not apply to the claims against NACS asserted in the underlying lawsuits.

---

[19] Rec. Doc. 8625, p. 4 (Order and Reasons).
[20] *Cf. In re Combustion*, 960 F.Supp. at 1068.

In Louisiana, pollution exclusions in CGL policies do not apply to all contact with substances that may be classified as "pollutants."[21] In *Doerr v. Mobil Oil Corp.*—the seminal Louisiana case on pollution exclusion—the Louisiana Supreme Court held that the pollution exclusion was designed to exclude coverage for environmental pollution only.[22] The applicability of a pollution exclusion turns on several considerations:

> (1) Whether the insured is a "polluter" within the meaning of the exclusion;
>
> (2) Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and
>
> (3) Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.[23]

A proper interpretation of a total pollution exclusion is that the "exclusion [is] designed to exclude coverage for environmental pollution only and not for all interactions with irritants or contaminants of any kind."[24]

Applying the *Doerr* framework to the facts of this case leaves no doubt that the pollution exclusion contained in the Northfield policy does not apply to the claims asserted against NACS in the underlying litigation. Regardless of whether formaldehyde can be considered a "pollutant," NACS cannot be considered a "polluter" or "discharger" of pollutants.[25]

---

[21] *See Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00), 774 So.2d 119.
[22] *Id.*
[23] *Id.* at 135.
[24] *Id.* at 136.
[25] Significantly, formaldehyde is not specifically listed in the pollution exclusion of the policy. Moreover, Louisiana courts have not addressed whether formaldehyde is a

In determining whether an insured is a polluter, it is necessary to examine of the nature of the insured's business.[26] This involves several inquiries: (1) whether the insured's business presents a risk of pollution; (2) whether the insured has a separate policy covering the disputed claim; (3) whether the insured should have known from a reading of the exclusion that a separate policy covering pollution damages would be necessary for the insured's business; (4) who the insurer typically insures; and (5) any other claims made under the policy.[27] All of these considerations mandate a finding that NACS is not a polluter.

As to the first inquiry, NACS's "business" was acting as a broker between FEMA and modular manufacturers. This is not a business pursuit that presents a risk of pollution, and there is not a separate policy covering the disputed claims against NACS. At the time of negotiating and signing the policy, Northfield knew that NACS was not engaged the type of business that would present any more than an attenuated risk of pollution. Finally, NACS has no knowledge of the types of businesses Northfield typically insures.

---

"pollutant" under *Doerr*. The United States Environmental Protection Agency ("EPA") has stated "[f]ormaldehyde is an important chemical used widely by industry to manufacture building materials and numerous household products." *See* An Introduction to Indoor Air Quality, http://www.epa.gov/iaq/formalde.html (last visited June 23, 2009). The EPA also states that formaldehyde is "a by-product of combustion and certain other natural processes [and] may be present in substantial concentrations both indoors and outdoors." *Id*. While formaldehyde can create the risk of adverse health effects, it occurs naturally in food and is present in ambient air. *See* Formaldehyde Hazard Summary at http://www.epa.gov/ttn/atw/hlthef/formalde.html (last visited June 23, 2009). Even if formaldehyde can be considered a "pollutant," the pollution exclusion clause does not preclude coverage for the claim because NACS is not a "polluter" within the meaning of the exclusion.

[26] *Doerr*, 774 So.2d at 135.
[27] *Id*.

In order to qualify as a polluter, the insured must be an "active polluter."[28] In *Thomson v. Temple*, the court observed that "pollution exclusions are intended to exclude coverage for active industrial polluters, when businesses knowingly emitted pollutants over extended periods of time."[29] In *Doerr*, the Supreme Court approved this reasoning, stating that "there is no history in the development of this exclusion to suggest that it was ever intended to apply to anyone other than an active polluter of the environment."[30] There is no evidence that NACS could be considered an "active polluter," or that it had knowledge of any potential pollution or an intent to pollute.

In sum, under Louisiana law, the pollution exclusion will not operate to preclude Northfield's liability for any judgments against NACS in the underlying litigation. Since there are no other policy exclusions which could potentially be invoked by Northfield in an attempt to avoid its obligations to NACS, the questions of Northfield's duty to defend and indemnify NACS are resolved as a matter of law.

## CONCLUSION

As this Court has concluded, Northfield consented to suit in this State and under Louisiana law. Consequently, the laws of this State will govern interpretation of the insurance policy, including the applicability of the policy's pollution exclusion. Even assuming that a conflict of laws analysis is necessary, the result is the same due to the fact that Louisiana has much more compelling interests than does Florida in

---

[28] *Thomson v. Temple*, 580 So.2d 1133, 1134 (La. App. 4 Cir. 1991); *see also Avery v. Commercial Ins. Co.*, 621 So.2d 184, 190 (La. App. 3 Cir. 1993).
[29] *Id.*
[30] *Doerr*, 774 So.2d at 127.

13

applying its laws to this dispute. For any of several independent reasons, NACS respectfully asks the Court to deny Northfield's cross-motion for summary judgment.

                                                Respectfully submitted,

                                                /s/ Kevin F. Bruce
                                                John E. Galloway, Bar #5892
                                                jgalloway@gjtbs.com
                                                Kevin F. Bruce, Bar #31071
                                                kbruce@gjtbs.com
                                                GALLOWAY, JOHNSON,
                                                TOMPKINS, BURR & SMITH
                                                701 Poydras Street, 40th Floor
                                                New Orleans, Louisiana 70139
                                                Telephone: (504) 525-5802
                                                Facsimile: (504) 525-2456

                                                ***Attorneys for North American Catastrophe Services, Inc.***

## Certificate of Service

I hereby certify that on the 2nd of March, 2010, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record by operation of the Court's electronic filing system.

                                                /s/ Kevin Bruce