UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                                                    MDL NO. 07-1873
       FORMALDEHYDE PRODUCTS
       LIABILITY LITIGATION
                                                                                        SECTION "N"  (5)

THIS DOCUMENT RELATES TO
Member Case No. 09-2977

# ORDER AND REASONS

Before the Court is the Plaintiff's Motion to Limit the Testimony of William Dyson, PH.D. (Rec. Doc. 11354). This motion is opposed by Defendant Forest River, Inc. ("Forest River"). (See Rec. Doc. 11727). After considering the memoranda of the parties and the applicable law,

**IT IS ORDERED** that the **Plaintiff's Motion to Limit the Testimony of William Dyson, PH.D. (Rec. Doc. 11354)** is **GRANTED IN PART and DENIED IN PART**, as follows:

(1) Dyson's Opinion #3 Regarding the Effects of Gaseous Formaldehyde on Mr. Wright: Denied. As an industrial hygienist, Dyson may testify about his assessment of whether an exposure (here, to formaldehyde) presents a risk of an adverse effect.

(2) Dyson's Opinions #s 4 and 5 Concerning The Levels of Formaldehyde Exposure Experienced By the Plaintiff: Denied. Indeed, both Plaintiff and Defendants have estimated the levels in the emergency housing unit ("EHU") during Plaintiff's occupancy because no measurement was ever taken during that time period. Dyson may offer opinions on Plaintiff's results/estimations as well as Plaintiff's method of arriving at those estimations. Specifically, Dyson is qualified to and thus may discuss the validity of Plaintiff's reliance on mathematical models to estimate a formaldehyde exposure level. However, the jury shall be made aware that it is impossible to scientifically determine the precise formaldehyde concentration at any point in time during Plaintiff's

occupancy of the EHU.

(3)     Dyson's Opinion #6 Concerning Improvement in Formaldehyde Exposure by Operating the Air Conditioner in Plaintiff's Travel Trailer: Denied. Dyson may explain his opinion regarding temperature's impact on formaldehyde levels.

(4)     Dyson's Opinion #8 Concerning Exposures by Direct Contact to Formaldehyde from Products: Granted in part.  If Dyson is presented with testimony regarding which specific products Plaintiff uses, he may comment on the formaldehyde found in such products (if any). However, without knowledge of the specific products Plaintiff uses, Dyson may only comment generally on the subject (i.e, "[t]he fact remains that the overwhelming majority of formaldehyde-related dermal sensitization in humans comes from inadvertent contact with everyday products such as cleaners, cosmetics, and clothing.") (Exhibit A to Rec. Doc. 7691, ¶11).

(5)     Dyson's Opinion #9 That Mr. Wright's Exposure To Formaldehyde Was Unlikely To Be Higher Than That Experienced By Residents Of Conventional Homes In Southern Louisiana: Granted in part.  Dyson may (very briefly) discuss the Lemus test, to show general formaldehyde levels in site-built conventional homes in southern Louisiana.  However, these tests results may not be specifically compared to the formaldehyde levels in Plaintiff's EHU while Plaintiff resided therein because such levels are unknown as no measurement was ever taken during that time period.

New Orleans, Louisiana, this 8th day of March, 2010.

**KURT D. ENGELHARDT**
**United States District Court**

2