UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N-5<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

This Document Relates to:

09-04840, 09-04841, 09-04842, 09-04843, 09-04844, 09-04845, 09-5994, 09-6412, 09-6643, 09-6419, 09-6501, 09-6636, 09-6498, 09-6497, 09-6632, 09-6495

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO PLAINTIFFS' "OPPOSED MOTION FOR EXTENSION OF TIME" (Rec. Doc. 12503)**

Defendant United States of America ("United States") hereby submits its Memorandum in Opposition to Plaintiffs' "Opposed Motion for Extension of Time" (Rec. Doc. 12503). The Court should deny Plaintiffs' Motion and dismiss Plaintiffs' claims because they have failed to comply with the requirements of Pretrial Orders ("PTO") 40 and 49, and have failed to meet their burden and demonstrate that they have exercised due diligence to identify the manufacturer and installation contractor of the temporary emergency housing unit ("EHU") that they occupied.

**STANDARD OF REVIEW**

The relevant section of Fed. R. Civ. P. 16(b)(4) provides that a pretrial scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The purpose of a Scheduling Order, is in part to assist in expediting disposition of an action, and Rule 16(b)(3) authorizes district courts to include in a Scheduling Order deadlines addressing appropriate matters that may facilitate this goal. *See* Fed. R. Civ. P. 16(b)(3). Consistent with the authority vested in the trial court by Fed. R. Civ. P. 16, the Fifth Circuit gives the district

court "'broad discretion to preserve the integrity and purpose of the pretrial order." *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208 (5th Cir.1992) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir.1990)).

Rule 16(b) requires that a party demonstrate good cause to modify a scheduling order deadline. Fed. R.Civ. P. 16(b)(4); *see also Tunica-Biloxi Indians of Louisiana v. Pecot*, 227 F.R.D. 271, 276-77 (W.D. La. 2005). The "good cause" standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (quoting 6A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 1522.1 (2d ed. 1990)). "[T]he good cause showing unambiguously centers on [the mover's] diligence." STMicroelectronics, Inc. v. Motorola, Inc., 307 F.Supp.2d 845, 851 (E.D. Tex. 2004); *see also Verhoeven v. Balboa Ins. Co.*, No. 06-4891, 2007 WL 4374222, at *7 (E.D. La. 2007) (absence of prejudice to the non-moving party is irrelevant to whether there exists good cause); *Porter v. Milliken & Michaels, Inc*, 2001 WL 378687 at *1 (E.D. La. 2001) (same). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Smith v. United Parcel Svc., Inc.*, 902 F.Supp. 719, 721 (S.D. W.Va. 1995); *see also Porter*, 2001 WL 378687 at *1 (mere inadvertence by the movant does not satisfy the "good cause" requirement). In *Dilmar Oil Co, Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), the court explained:

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may

> "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of a party seeking the extension." Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Id*. at 980 (citations omitted). *See also Ordemann v. Unidentified Party*, 2008 WL 695253, at *2 (E.D. La. 2008) (inexplicable delay and failure to timely move to alter scheduling deadline "is tantamount to no explanation at all").

## ARGUMENT

The Court should deny Plaintiffs' motion because Plaintiffs have failed to meet their burden and demonstrate that they have exercised due diligence to comply with PTO 40 and 49. *See Southwestern Bell,* 346 F.3d at 546 (The "good cause" standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension"). Plaintiffs' counsel merely asserts, without providing any specific facts as to any individual claimant, that they and their clients have exercised due diligence and that good cause exists to alter and amend PTO 40 and 49 because: (1) Plaintiffs' counsel submitted three separate matching lists to FEMA providing required information "when known" which returned matches for a "small fraction" of the names submitted; (2) Plaintiffs and their counsel attempted to contact FEMA directly, outside of the FRRATS matching process, and were only partially successful; and (3) "the reality of the post-Katrina environment" resulted in there being "no consistent pattern [for] identifying who the head of household was for matching purposes." (Rec. Doc. 12503-3 at 3-4). Plaintiffs' proffered reasons are without merit and do not constitute good cause. In fact, Plaintiffs' counsel have failed to specify any particular actions they took to provide the information FEMA requires to conduct matching searches.

For example, Plaintiffs have failed to demonstrate that they took reasonable steps to identify information necessary for FEMA to search its database for the FEMA Barcode and Vehicle Identification Number ("VIN") of the EHU occupied by a claimant, which in turn allows Plaintiffs to determine the manufacturer and installation contractor of each client's EHU. Throughout this litigation, the Court, Government Counsel, and Plaintiffs' Liaison Counsel have consistently urged all Plaintiffs to provide certain necessary identifying information to conduct a matching search. Commencing with the January 30, 2009, Joint Report, and repeated in every Joint Report filed thereafter, all counsel were instructed that, to enable FEMA to conduct a matching search, claimants must submit the name of the head of the household for the family who was issued the EHU, that disaster aid recipient's FEMA ID number, and the city, state, and street address where the unit was installed.[1] *See* Joint Reports No. 8 (Rec. Doc. 1075 at 9), No. 9 (Rec. Doc. 1220 at 8-9), No. 10 (Rec. Doc. 1458 at 5), No. 11 (Rec. Doc. 2012 at 12), No. 12 (Rec. Doc. 2604 at 9-10), No. 13 (Rec. Doc. 5959 at 3), and No. 14 (Rec Doc. 10417 at 4). Further information that may assist FEMA in confirming the accuracy of a search result includes the disaster aid recipient's social security number and date of birth. As government counsel have

---

[1] As Plaintiffs' counsel is well aware, the most important among the required information is the FEMA ID number and the State where the unit at issue was installed. In May of 2008, FEMA attempted to provide matching information for submissions that did not include FEMA ID numbers; besides creating a great burden on FEMA, this resulted in a very low matching rate of approximately twenty-five (25) percent due to FEMA's inability to accurately ascertain the identity of an individual based on other information provided. Where a FEMA ID number and State ID have been provided, however, the United States' match rate averages greater than ninety (90) percent. FEMA's inability to match a small minority of names where the required information was submitted is likely due to one of the following: (1) the information was provided for a client who was not the head of household, (2) the client was never provided an EHU from FEMA, or (3) the FEMA ID number or state identification submitted for matching was simply incorrect.

4

repeatedly informed Plaintiffs, this information is essential for FEMA to perform a reliable "matching request" of the database to identify the VIN of the EHU, which would also identify the manufacturer.  *See, e.g.*, Rec. Docs. 9947-7 and 10262, Cover Letter to the 9/8/2009 Production of Matching Exhibit HHH.

Plaintiffs' motion and arguments in support demonstrate a substantive misunderstanding of the established matching process.  Specifically, FEMA's database does not track EHUs by manufacturer of the unit; by contractor that hauled and installed the unit; or by persons who occupied the unit.  Rather, FEMA tracks EHUs by their VIN and FEMA Barcode number, which can be used to identify the manufacturer of a unit and the installation contractor.  In fact, this is the most reliable way to identify the manufacturer and installation contractor for a given unit.  Simply put, if a VIN is provided, Plaintiffs have the ability to determine the manufacturer and installation contractor for that unit without any additional information.

The United States has explained the matching process on numerous occasions to opposing counsel, most recently in Joint Report No. 14.  As explained in the Court appointed Steering Committee's Joint Report No. 14:

> Based upon recent discussions with counsel as well as from various motions filed by parties to extend the deadline to match, the United States believes that some counsel may not understand the matching process and what actions that they must take to identify the manufacturer of the EHU that their client occupied and IA/TAC contractor that installed the unit.
>
> In response to a matching request, the United States produces information obtained from the FEMA FRRATS database. The key information produced to a claimant is the VIN number and FEMA barcode number of the EHU or EHUs issued to a disaster victim.  Using the VIN number, a claimant can determine the identity of the manufacturer of the unit that they occupied.  To do this, the claimant must take the VIN number identified and compare it with the "Prefix Key" produced by the Manufacturers' Liaison Counsel in Spring 2008.  Each manufacturer has a unique prefix number that is contained in the VIN, thereby

5

>allowing a claimant using the VIN number to determine the manufacturer of the unit that he or she occupied. In addition, a claimant using the VIN number can also determine the identity of the manufacturer by accessing the link on the following internet page and inputting the VIN number:
>
>http://www.nhtsa.dot.gov/cars/rules/manufacture/
>
>For purposes of identifying the IA/TAC contractor, the claimant must search the Excel spreadsheet produced by the Government to Liaison Counsel in January 2009. That searchable spreadsheet lists each of the EHUs that the IA/TAC contractors installed by VIN number.
>
>Further, claimants should be aware that the matching process identifies the VIN number of the EHU that FEMA issued to a disaster victim. FEMA does not retain information regarding the identity of all persons who occupied or resided in an EHU. Generally, the reason why the Government is unable to provide a match for a claimant is because: (1) the personal data provided is inaccurate (incorrect name, FEMA identification number, social security number, address where unit was installed, dates of occupancy), or (2) the claimant occupied an EHU that had been issued to some other person.

Joint Report No. 14 at 4-5 (Rec. Doc. 10417); *See* Joint Report 13 at 4-5 (Rec. Doc. 5959). If a Plaintiff does not remember or have a record of his or her FEMA ID, the United States has explained how a plaintiff can obtain it from FEMA. *See* Notice by United States of America Regarding How An Applicant Or Co-Applicant Who Applied For And Received A FEMA EHU May Call To Obtain His Or Her FEMA Identification Number For Matching Purposes (Rec. Doc. 10795). Further, the United States further clarifies in each cover letter accompanying the Government's production of matching information:

>The United States' ability to produce information in response to Plaintiffs' discovery requests is contingent upon Plaintiff's ability to provide the requested information describing each client . . . . To the extent matching information is not provided for any of the listed clients, it is because FEMA was unable to locate these persons in their system based upon the information provided.
>
>*See, e.g,* Rec. Doc. 9947-7, Cover Letter to 9/8/2009 Production of Matching Exhibit

HHH.

In the instant case, Plaintiffs' counsel states 535 of their 6,500 clients remain unmatched, yet they have consistently submitted matching requests that failed to contain the information which they know FEMA requires to search its database to provide matching information. *See* Rec. Docs. 9947-1, and 10262, 4/3/2009 Torres Law Firm Match Request Exhibit D; Rec. Docs. 9947-2 and 10262, 5/28/2009 Torres Law Firm Match Request Exhibit EE; Rec. Docs. 9947-3 and 10262, 8/5/2009 Torres Law Firm Match Request Exhibit HHH. While Plaintiffs' counsel claims to represent only 6,500 clients, review of the Torres Law Firm Matching Requests shows that 7,800 client names were submitted for matching, of which more than 2,000 of them (approximately 27 percent) failed to include information necessary for FEMA to conduct a search of its database – to wit, providing a FEMA identification number and listing the state where the emergency housing unit was installed.[2] These matching requests did, however, contain 5,700 client names with the required information; and FEMA was able to provide matching information for 5,500 of them for a matching rate of 96 percent.[3] Despite Plaintiffs' assertion that "F.E.M.A., through its counsel, provided undersigned counsel with matches for a

---

[2] Plaintiffs only allege that they supplied FEMA this required information "when known." See Plaintiffs' Motion (Rec. Doc. 12503-3 at 3). Yet, Plaintiffs certainly should know what state their trailer was installed; and, further, they have the means to obtain their FEMA ID if they are not able to remember the number or locate it from their records. See Notice by United States of America Regarding How An Applicant Or Co-Applicant Who Applied For And Received A FEMA EHU May Call To Obtain His Or Her FEMA Identification Number For Matching Purposes (Rec. Doc. 10795).

[3] FEMA's inability to achieve a 100 percent match rate is likely due to the same reasons stated in Footnote 1, *supra*. For those who resided in an EHU but were not issued an EHU by FEMA, Plaintiffs must submit the required search information for the head of household or for the person issued the EHU by FEMA in order to obtain matching information for that individual. As we discuss, *infra* at page 9, Plaintiffs' reliance upon "the post-Katrina environment" as an explanation why they failed to identify the head of household (Rec. Doc. 12503-3 at 3-4) fails to explain why the individual plaintiff residents cannot provide such information that rests exclusively within their knowledge.

small fraction names (*sic*) submitted," (Rec. Doc. 12503-3 at 3), FEMA has provided matching information for 96 percent of the Plaintiffs' claimant names where Plaintiffs provided the required information to permit a search.[4]  *See* Rec. Docs. 9947-4 and 10262, (Exhibit D Matching Results); Rec. Docs. 9947-5 and 10262, (Exhibit EE Matching Results); Rec. Docs. 9947-6 and 10262, (Exhibit HHH Matching Results).

As a further indication of a lack of diligence, at no time did either Plaintiffs' Liaison Counsel or the Torres Law Firm contact Government Counsel to relate concerns regarding FEMA's inability to provide a FEMA Barcode or VIN for EHUs occupied by the Torres Law Firm clients.  Nor did Plaintiffs' counsel ever discuss what efforts that they had made to obtain from their clients the information FEMA required to search its database.  In addition, **Plaintiffs have not submitted any requests to FEMA for matching in over seven months**, since August 5, 2009; yet Plaintiffs offer no explanation for this failure.  This is despite the Court's January 19, 2010 Order (Rec. Doc. 10386) granting Plaintiffs' nearly verbatim "Motion For Extension Of Deadlines To Receive Information To Match Clients With Defendant-Manufacturers And File Lawsuits By Plaintiffs" (Rec. Doc. 9606), granting Plaintiffs an additional sixty (60) day extension of the matching deadlines to seek matching information from FEMA.  These actions show a clear lack of due diligence on the part of Plaintiffs' counsel, justifying denial of Plaintiffs' request to extend matching deadlines yet again.

Further, the admission of Plaintiffs' counsel that he directed his clients to contact FEMA employees directly, without informing Government Counsel, to try to elicit the identity of their

---

[4] Even if Plaintiffs failure to provide the required information is ignored, FEMA still provided matching information for approximately 5,500 out of 7,800 total submissions–hardly a "small fraction" as Plaintiffs' motion states.

8

EHU manufacturer does not support Plaintiffs' motion.  The parties had all agreed to a matching process to identify manufacturers of EHUs; Plaintiffs' attempted circumvention of that process cannot qualify as "due diligence."  Plaintiffs' low rate of success in contacting FEMA employees directly should be of no consequence – Plaintiffs should have followed the established matching procedure.

Plaintiffs' final assertion that due to "the reality of the post-Katrina environment . . . . there was no consistent pattern in identifying who the head of household was for matching purposes" is also unpersuasive.  If an individual lived in an EHU for any length of time, that person should know the identity of the head of household or the person to whom FEMA issued the EHU, which would lead to a FEMA ID number; of course, the person should also know the state in which they were living.  Movement of a trailer from one location to another should not affect Plaintiffs' ability to identify the head of household for their unit, nor is there any allegation that any claimants had their unit moved across state lines.

Plaintiffs' motion seeks to extend PTO 40 and 49 deadlines for all claimants for whom they have failed to identify the manufacturer and/or installation contractor of the EHU that they occupied.  Plaintiffs, however, merely allege an inability to match 535 clients and utterly fail to demonstrate that they exercised any diligence in pursuing the identify of the manufacturer or installation contractor over these claims using the established matching procedures agreed to by the parties and embodied in the Joint Reports since January 2009.  Accordingly, the Court should deny this Motion because no "good cause" exists where (1) these Plaintiffs have failed to demonstrate that they submitted to the Government the information that FEMA requires to run a matching request, and (2) the available evidence shows that these claimants failed to exercise

due diligence to identify the information that FEMA requires to run a matching request or even submit a matching request in the past seven months.

## CONCLUSION

For all of these reasons the Court should deny Plaintiffs' motion to modify and alter the deadlines established by Pretrial Order 40 and 49.

Dated: March 10, 2010                                  Respectfully Submitted,

TONY WEST                                              HENRY T. MILLER
Assistant Attorney General, Civil Division             ADAM BAIN
                                                       Senior Trial Counsel
J PATRICK GLYNN
Director, Torts Branch, Civil Division                 ADAM DINNELL
                                                       MICHELLE BOYLE
DAVID S. FISHBACK                                      MICHELE GREIF
Assistant Director                                     Trial Attorneys

OF COUNSEL:                                            //S// *Jonathan R. Waldron*
JORDAN FRIED                                           JONATHAN R. WALDRON
Associate Chief Counsel                                (MO. Bar No. 58898)
                                                       Trial Attorney
JANICE WILLIAMS-JONES                                  United States Department of Justice
Senior Trial Attorney                                  Civil Division – Torts Branch
FEMA/DHS                                               P.O. Box 340, Ben Franklin Station
Department of Homeland Security                        Washington, D.C. 20004
Washington, D.C. 20472                                 Attorney Telephone: (202) 307-2091
                                                       Jonathan.Waldron@USDOJ.Gov

                                                       Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

                    //S// *Jonathan R. Waldron*
                    JONATHAN R. WALDRON (MO. Bar No. 58898)