UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER FORMALDEHYDE
PRODUCTS LIABILITY LITIGATION

MDL NO: 1873

SECTION N(5)

JUDGE ENGELHARDT

THIS DOCUMENT IS RELATED TO:
*North American Catastrophe Service, Inc. v.*
*Northfield Ins. Co.No. 09-3818*

MAGISTRATE CHASEZ

*************************************************************************

NORTHFIELD INSURANCE COMPANY'S REPLY BRIEF
IN SUPPORT OF  CROSS-MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Defendant, Northfield Insurance Company ("Northfield") respectfully submits this reply

brief to the Opposition of North American Catastrophe Services, Inc. ("NACS") to Northfield's

Cross-Motion for Summary Judgment ("Opposition") [Rec. Doc. 11579].

I.       THIS COURT  HAS NOT PREVIOUSLY DECIDED THAT LOUISIANA
         LAW GOVERNS NORTHFIELD'S COVERAGE OBLIGATIONS

NACS repeatedly cites to this Honorable Court's Order and Reasons denying

Northfield's Motion to Transfer Venue [Rec. Doc. 8625] in support of its position that this Court

has already determined Louisiana law governs Northfield's coverage obligations under the

policies.  In so doing, NACS confuses the analysis of venue transfers under § 1404(a) with

choice-of-law considerations.  NACS' conflation of the two concepts is wrong as a matter of

law.

This Court's prior order concerned only whether the Eastern District of Louisiana was a

proper venue for NACS' Declaratory Judgment Action against Northfield. That the venue

analysis under §1404(a) is not coextensive with choice-of-law analysis under Louisiana law is

demonstrated by the fact that choice-of-law considerations present merely one factor to be balanced by courts analyzing venue. *See, In re Volkswagon,* 545 F.3d 304, 315 (5th Cir. 2008) (enumerating the various factors, including "[t]he avoidance of unnecessary problems of conflict of law [or in] the application of foreign law"). Without doubt, if choice-of-law and venue considerations were intended to be synonymous, then choice-of-law analysis would not be one of many factors affecting venue.

Moreover, as this Court recognized in its Order, the Fifth Circuit has cautioned against pre-trying cases. *See,* Order, p. 5. Consequently, to the extent this Honorable Court engaged in a conflicts analysis, its determination must be limited only to the effect that choice-of-law considerations have upon venue. To hold otherwise would legitimize dicta that disregards the wealth of cases applying Louisiana's choice-of-law provision regarding conventional obligations as well as Fifth Circuit precedent directly on point. *See, Resure, Inc. v. Chemical Distributors, Inc.,* 114 F.3d 1184 (5th Cir. (La.) 1997) (affirming interpretation of policy issued to a New Mexico company under New Mexico law even though accident occurred in Louisiana and Louisiana residents were injured.). Because the Order addresses only the question of venue, NACS' attempts to transform the Order into one that pre-decides choice-of-law must be rejected.

II.     **NACS IMPROPERLY CITES TO INAPPOSITE POLICY PROVISIONS TO SUGGEST THAT NORTHFIELD HAS CONSENTED TO APPLICATION OF LOUISIANA LAW**

Not only does NACS improperly characterize the Order, but NACS also obfuscates the purpose of certain policy provisions regarding jurisdiction and scope of coverage in a misguided effort to convert those provisions into choice-of-law provisions. Specifically, NACS cites to the Service of Suit clause and Coverage Territory clause for the proposition that Northfield could reasonably anticipate its policy obligations would be governed by Louisiana law. Not so.

As an initial matter, the Service of Suit clause provides only that Northfield will submit to the jurisdiction of any court of competent jurisdiction within the United States.[1] At best the provision is merely a choice-of-forum provision, not a choice-of-law designation. Indeed, courts have specifically rejected the notion that a service-of-suit clause is a choice-of-law provision in order to discourage forum shopping. *See, e.g., Norfolk Southern Corp. v. California Union Ins. Co.,* 2002-0369 (La. App. 1 Cir. 2003), 859 So. 2d 167, 183 (holding that wrongful conversion of service-of-suit clause into choice-of-law clause "would have the undesirable effect of allowing the objectionable practice of forum shopping to proceed unchallenged by allowing an insured to simply pick the forum based on the law it believes to be most favorable to its case, without regard for whether or not the forum has any connection to the dispute or the parties."); *see also, Singer v. Lexington Ins. Co.,*658 F. Supp. 341 (N.D. Tex. 1986) (finding that service-of-suit clause is not a choice-of-law clause).

Likewise, the Coverage Territory clause is not a choice-of-law clause. Quite the opposite, the Coverage Territory clause merely extends coverage (consistent with all terms, limitations, conditions and exclusions) to the insured for certain occurrences that could take place within the defined coverage territory.[2] The Coverage Territory clause does not contemplate, however, that the substantive law governing the contractual obligations of either NACS or Northfield will vary depending on where those potential occurrences take place. Rather, the parties' respective coverage obligations and rights remain governed by Florida law regardless of where the underlying acts giving rise to potential coverage occur. *See, e.g., Anderson v. T&D Machine Handling, Inc.,* 1996 WL 518140 (E.D. La. Sept. 9, 1996) (Duval, J.)

---

[1]    Policies, Exs. G and H to Northfield's Cross-Motion [Rec. Doc. 11579] ("Policies") at Bates No. NIC000073 and NIC000158.

[2]    *Id.* at Bates No. NIC 000024 and NIC000107.

3

(applying Georgia law to policy of insurance issued to Georgia insured despite alleged injuries to Louisiana plaintiffs and holding that "the purpose of the contract is to provide a Georgia corporation coverage for accidents that could occur in any place [the insured] operates."); *also, Harrison v. Morrison & Son, Inc.,* No. 37,992 (La. App. 2 Cir. 12/10/03), 862 So. 2d 1065, 1070 ("The performance of the contract included whatever states in which [the insured] operated, but the State of Louisiana has no connection to the insurance policy other than the fact that it is one location among many that is considered the object of the contract.").

The non-effect of Coverage Territory clauses on choice-of-law considerations is reinforced by decisions rejecting the effect of state-specific endorsements upon choice-of-law. *See, e.g., Extex Production, Inc. v. Mid-Continent Casualty Co.,* 2008 WL 191650 (M.D. La. Jan. 22, 2008) (rejecting insured's contention that a state-specific endorsement regarding application of pollution exclusion in Louisiana meant Louisiana law governed the policy and holding that the mere presence of state-specific endorsements is not an "affirmative choice of the law of any particular state."); *Breese v. Hadson Petroleum, Inc.,* 955 F. Supp. 648, (M.D. La. 1996). Certainly, if courts are unwilling to glean parties' intent regarding choice-of-law from state-specific endorsements, then by extension, intent regarding choice-of-law should not be inferred from a Coverage Territory provision that makes no reference to choice-of-law whatsoever.

Finally, contrary to NACS' representations, there was no need for Northfield to include a choice-of-law provision in the policy. This is because the policies were confected in Florida, having been issued through a Florida insurance agent to a Florida insured. *See,* Policies at Bates No. NIC000001 and NIC000085. Under the long-settled law in Florida regarding choice-of-law governing insurance policies, neither Northfield nor NACS had any reason to believe that

anything other than Florida law would govern their respective rights and obligations. Specifically, the Florida Supreme Court has made clear that policies of insurance are interpreted according to *lex loci contractus*, so that the law of the jurisdiction where the contract is executed governs the rights and responsibilities of the parties. *See, State Farm Mutual Automobile Ins. Co. v. Roach*, 945 So. 2d 1160 (Fla. 2006) (discussing prior rejection of "most significant relationship test" in favor of more inflexible *lex loci contractus* rule.). ***"When parties come to terms in an agreement, they do so with the implied acknowledgment that the laws of [the jurisdiction where the contract was confected] will control absent some provision to the contrary."*** *Id.* at 1164 (emphasis added), *quoting Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988) (holding that laws of jurisdiction where policy confected are ***incorporated by implication***). Absent a choice-of-law provision, NACS and Northfield clearly contemplated that their respective obligations and rights under the policies would be governed by Florida law, which was necessarily incorporated by reference into the policies of insurance.

### III.   LOUISIANA'S CHOICE-OF-LAW ANALYSIS CODIFIED IN ARTICLE 3537 MANDATES THAT FLORIDA LAW GOVERNS NORTHFIELD'S OBLIGATIONS UNDER THE POLICIES[3]

Florida's compelling interest in regulating the insurance industry and contractual obligations arising under policies issued in Florida should not be disregarded. The sanctity of an insurance contract and the contracting-state's interest in the interpretation and enforcement of that contract is a real and substantial interest to be considered in choice-of-law analyses concerning conventional obligations:

---

[3]  NACS does not dispute that Florida law enforces pollution exclusions such as the one in Northfield's policy as written. Instead, NACS focuses upon Louisiana decisions interpreting pollution exclusions under Louisiana law and *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 3/16/01); 782 So. 2d 573. Because Florida law—rather than Louisiana law—governs Northfield's obligations under the Policy, Northfield reserves its right to address the factual inquiries concerning application of the pollution exclusion under *Doerr* only in the event this Court determines that Louisiana law governs Northfield's policy obligations.

> The integrity of an insurance policy is a substantial and real interest. The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests that this is a legitimate public interest.

*Harrison,* 862 So. 2d at 1070, *quoting Zuviceh v. Nationwide Ins. Co.,* 00-0773 (La. App. 1 Cir. 5/11/01), 786 So. 2d 340, 346 *writ denied* 01-2141 (La. 11/9/01), 801 So. 2d 373; *see also, Norfolk Southern,* 859 So. 2d at 181.

Contrary to NACS' representation, the issue for this Court is not compensation for plaintiffs' alleged injuries in the underling litigation. The dispute before this court pertains to whether NACS is entitled to a defense or indemnity for the underlying actions and, as such, is completely divorced from any interest of the underlying plaintiffs. To the extent that the present action has anything to do with compensating the underlying plaintiffs, there should be no doubt that the plaintiffs stand to be compensated, (should they be entitled to any recovery), irrespective of the outcome of this declaratory judgment action. This action simply seeks to determine who would fund such recovery, NACS or its insurers. Stripped of that red herring, the outcome of this matter turns exclusively on the interpretation of insurance contracts to which only Northfield and NACS are parties and a dispute to which only Northfield and NACS are parties.

NACS' efforts to interject Louisiana's interest in resolving NACS' delictual obligations to underlying plaintiffs into the resolution of a purely contractual issue should be rejected. As Judge Duval reasoned in *Anderson v. T&D Machine,*

> It would be unreasonable for this Court to impose on this contractual relationship heaped in Georgia flavor, a Louisiana based outcome solely because the incident in question occurred here and the plaintiffs are Louisiana residents. ***To do so would basically result in superimposing the choice of law for delictual obligations to this conventional obligation issue.***

1996 WL 518140 at *3 (emphasis added). Similarly, confusion of NACS' delictual obligations

with Northfield's contractual obligations would confuse and ignore very different choice-of-law

considerations codified by the legislature for different purposes. Moreover, such holding would

ignore the object of the contract, which is not the temporary housing units fortuitously located in

Louisiana by FEMA, but the provision of coverage (consistent with all policy terms) for NACS'

operations, which are based in Florida. Indeed, the temporary housing units would not have

ended up in Louisiana but for FEMA's decision to distribute them here and those trailers just as

easily could have been located elsewhere. Thus, NACS should not be permitted to bootstrap its

delictual obligations to plaintiffs into the choice-of-law analysis regarding Northfield's

conventional obligations at the risk of creating conflicting decisions under the policies.

Notably, NACS does not dispute any of the cases relied upon by Northfield concerning

how Louisiana's choice-of-law provisions are to be applied to conventional obligations such as

insurance policies. Nor can it. This is because, with the exception of a handful of

distinguishable cases discussed *infra*, every Louisiana appellate court has consistently interpreted

insurance policies under *lex loci contractus*—the location where the policy was negotiated,

brokered and issued—regardless of whether the underlying tort occurred in Louisiana.[4]   In

---

[4]   *Norfolk Southern Corp. v. California Union Ins. Co.*, 2002-0369 (La. App. 1 Cir. 9/12/03), 859 So. 2d 167 (applying Virginia law to insurance policy issued in Virginia upon finding that "Virginia has a compelling interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof."); *Dreisel v. Metropolitan Property and Cas. Ins. Co.*, 01-2705 (La. App. 1 Cir. 12/20/02), 836 So. 2d 347 (same, Massachusetts law); *Zuviceh v. Nationwide Ins. Co.*, 00-0773 (La. App. 1 Cir. 5/11/01), 786 So. 2d 340 (same, Mississippi law); *Gill v. Matlack*, 94-2546 (La. App. 1 Cir. 10/6/95), 671 So. 2d 395 (same, Missisippi law); *Harrison v. Morrison & Son, Inc.*, No. 37, 992 (La. App. 2 Cir. 12/10/03), 862 So. 2d 1065 (interpreting policy under Mississippi law where policy issued in Mississippi to Mississippi insured who owned gas stations in multiple states, including Louisiana, where alleged fuel leak giving rise to injuries occurred); *Montgomery v. Farmers Texas County Ins. Co.*, 34, 628 (La. App. 2 Cir. 5/9/01), 786 So. 2d 306 (same, Arkansas law); *Anderson v. Oliver*, 97-1102 (La. App. 3 Cir. 1/7/98), 705 So. 2d 301 (same, Georgia law); *Holcomb v. Universal Ins. Co.*, 640 So. 2d 718 (La. App. 3 Cir. 1994) (same, Arkansas law); *Levy v. Jackson*, 612 So. 2d 894, 897 (La. App. 4 Cir. 1993) (same, Alabama law); *Murden v. ACandS*, 2005-0319 (La. App. 4 Cir. 12/14/05), 921 So. 2d 165 (same, Belgian law); *Shell Oil Co. v. Hollywood Marine, Inc.*, 97-106 (La. App. 5 Cir. 10/15/97), 701 So. 2d 1038 (same, Texas law).

addition, Louisiana federal courts—*including the United States Fifth Circuit Court of Appeals*—have followed the legislative requirements set forth in Civil Code article 3537 to apply the concept of *lex loci contractus* to interpretation of insurance policies.[5]  As demonstrated in all of those cases, the critical issues under the Louisiana choice-of-law analysis are (1) where the policy was negotiated and issued, (2) where the insured is domiciled, (3) where the policy proceeds are to be paid, (4) the expectations of the contracting parties, and (5) whether applying the law of the situs of the accident could result in inconsistent results from state to state.

Applying those five factors, the policies here were negotiated and issued in Florida through a Florida insurance agent.[6]  NACS is a Florida corporation not licensed to conduct business in the State of Louisiana.[7]  Neither has NACS offered any evidence that it maintains offices or employees in Louisiana.  Additionally, just as NACS paid all policy premiums in Florida, the policy proceeds are likewise to be paid in Florida.  Moreover, as discussed above, Florida law is necessarily incorporated by reference into the contract because the contract was confected in Florida.  *See, Roach*, 945 So. 2d 1160.

Most importantly—as previously briefed and unrefuted by NACS—the application of a single state's law to the policies eliminates the significant risk of Northfield having conflicting obligations to NACS for the same alleged acts merely because the allegedly injured parties reside

---

[5]  *Resure v. Chemical Distribs, Inc.*, 927 F. Supp. 190, 192 (M.D. La. 1996) *aff'd* 114 F.3d 1184 (5th Cir. (La.) 1997) (same, New Mexico law); *The Travelers Ins. Group Inc. v. O.C.S., Inc.*, 914 F. Supp. 126 (E.D. La. 1996) (same, Texas law); *Breese v. Hadson Petroleum, Inc.*, 955 F. Supp. 648 (M.D. La. 1996) (same, Mississippi law); *Anderson v. T&D Machine Handling, Inc.*, 1996 WL 518140 (E.D. La. Sept. 9, 1996) (Duval, J.) (same, Georgia law).

[6]  Policies, Ex. G and H to Northfield's Cross-Motion for Summary Judgment [Rec. Doc. 11579] at Bates No. NIC000001 and NIC0000085.

[7]  *See,* Louisiana Secretary of State Corporations Database printout, February 16, 2009, attached as Ex. B to Northfield's Motion for Summary Judgment, [Rec. Doc. 11579].  Northfield's statement that NACS is not licensed in Louisiana is only intended to show that Louisiana has no relationship to NACS and not to demonstrate that NACS has done anything illegal, as NACS suggests.

in different states. Louisiana courts have refused to endorse conflicting results resulting from the application of multiple states law. *See, e.g., Murden,* 921 So. 2d at 172 ("A contrary conclusion could subject this policy to 50 different interpretations based on the state in which a plaintiff files suit, thereby destroying any predictability or uniformity of application."); *Harrison,* 862 So. 2d at 1070 ("[T]he policies and needs of the interstate system, including the policies of upholding the justified expectations of the parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state, weigh in favor of applying the law of the State of Mississippi."). Certainly, neither NACS nor Northland expected that the law of five different states affected by Hurricanes Katrina and Rita—with potentially five different interpretations—would govern Northland's obligations under the policies.

Because NACS cannot refute the overwhelming authority in Louisiana that requires courts to analyze the relationship of the states to the contract and the parties, NACS instead relies upon three inapposite cases. First, NACS's reliance on *In re Combustion,* 960 F. Supp. 1056 (W.D. La. 1997) is misplaced. Not only does *Combustion* involve Louisiana insureds who conducted business in Louisiana, but *Combustion* also concerned direct action claims asserted by underlying plaintiffs against the insurers. 960 F. Supp. at 1070 (distinguishing non-direct action cases that applied law of state where policy was issued); *Norfolk,* 859 So. 2d at 181 (distinguishing *Combustion*); *Extex Production, Inc.,* 2008 WL 191650 (distinguishing *Combustion*). While Northfield disagrees with *Combustion's* arbitrary distinction between direct action and non-direct action claims, the Declaratory Judgment Action filed by NACS does not involve any direct action claims and is more like the circumstances presented in *Resure,* 927 F. Supp. 190, which *Combustion* distinguished.

Likewise, NACS' citation to *Boutte v. Fireman's Fund County Mut. Ins.,* 2006-34 (La.

App. 3 Cir. 5/10/06), 930 So. 2d 305 is equally misplaced. The issue in *Boutte* concerned the validity of a named-driver exclusion in a business automobile coverage form. Important to the *Boutte* court's ruling was the fact that the Louisiana legislature had already specifically codified rules governing named-driver exclusions under Louisiana Revised Statute 32:900(B)(2)(d), which permits an owner to exclude certain named persons as insureds under commercial policies *only* if the owner obtains coverage under another insurance policy providing coverage to the excluded person. Unlike *Boutte*, the instant case does not concern named-driver exclusions—which is governed by Louisiana law under explicit mandate by the Louisiana legislature. Because the Louisiana legislature has not ruled on the viability of the pollution exclusion—or which law governs pollution exclusions—courts must conduct a choice-of-law analysis.

Finally, NACS improperly relies upon *Richard's Realty Company, LLC v. Paramount Disaster Recovery*, 476 F. Supp. 2d at 618 (E.D. La. 2007) (Lemmon, J.). *Richard's Realty* concerned a contract entered into by a Louisiana citizen and a California corporation, where the performance of services under the contract occurred in Louisiana and involved Louisiana property. Neither NACS nor Northfield are Louisiana citizens and the object of the policies do not concern services to be performed in Louisiana. Each of the foregoing cases are inapposite to the issues presented in NACS' Declaratory Judgment Action against Northfield, which concerns only Northfield's duty to defend and indemnify NACS under policies confected in Florida.

Applying Louisiana's codified choice-of-law principles as written, Florida law governs the contract dispute between NACS and Northfield. Under Florida law, the Northfield policies do not provide coverage for underlying plaintiffs' alleged exposure to formaldehyde fumes and NACS is not entitled to defense or indemnity against the plaintiffs' claims. Accordingly, Northfield's motion is due to be granted.

Respectfully submitted,

RALPH S. HUBBARD III, T.A., La. Bar # 7040
TINA L. KAPPEN, La. Bar #29579
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
**Attorneys for Northfield Insurance Company**

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of March, 2010, a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system and notice of this filing was sent to all know counsel of record by operation of the court's electronic filing system.

11