UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873  SECTION: N(5) |
| This Document Relates to: *Lyndon T. Wright v. Forest River, Inc., et al*, Docket No. 09-2977 | | * * * | JUDGE: ENGELHARDT  MAG: CHASEZ |

*****************************************************************************

## STIPULATED FACTS TO BE READ TO THE JURY

1. Plaintiff Lyndon Wright is a resident of the Parish of Orleans in the State of Louisiana.

2. FEMA has provided thousands of travel trailers to displaced residents following natural disasters in the United States since 1992, including displaced residents from the Gulf Coast region.

3. FEMA provided approximately 143,000 emergency housing units to families across the Gulf Coast, in response to Hurricanes Katrina and Rita.

4. Defendant Forest River, Inc. manufactured and provided approximately 5,000 travel trailers to FEMA through North American Catastrophe Services (hereinafter "NACS") following hurricane Katrina.

5. The travel trailer at issue in this litigation was a SMT32BHLE model manufactured by Forest River, Inc. in Rialto, California on or about November 14, 2005 for use by

        FEMA as emergency housing for displaced residents of hurricanes Katrina and/or Rita.

6.     The Forest River travel trailer at question in this litigation was manufactured using only Low-Formaldehyde Emitting (LFE) wood products.

7.     The travel trailer ultimately provided to Lyndon Wright was ordered from Forest River by NACS on or about September 8, 2005, and was shipped on or about November 16, 2005, pursuant to a Master Sales Agreement between Forest River and NACS.

8.     NACS sold this travel trailer to FEMA for use as emergency housing.

9.     This trailer arrived at the FEMA Staging Yard in Baton Rouge, Louisiana on or about November 19, 2005.

10.     FEMA provided this trailer, bearing Vehicle Identification Number (VIN) 4X4TSMH296C008992, to Plaintiff's mother, Ms. Bobbie Wright.

11.     The travel trailer was 29'8" (without hitch) and 8' in width.

12.     The parties have conducted formaldehyde air sampling inside this unit. The initial formaldehyde sampling taken via passive dosimetry on October 1 and 2, 2008 by WD Scott Group was taken with an average interior temperature of approximately 85.3º F and average relative humidity of approximately 32.9%, and detected a formaldehyde concentration of .048 part per million (ppm), or 48 parts per billion (ppb).

13.     When applying the Berge equation to the October 2008 sampling taken by the WD Scott Group (correcting the temperature calculation to 70º F), the sampling corrects from 48 ppb to 19 ppb.

14. A one-hour active formaldehyde sample was taken on August 8, 2009 by WD Scott Group of the same unit and pursuant to Plaintiff's testing protocol, which called for the unit to be closed and sealed for 72 hours prior to the sample collection, and found an indoor formaldehyde concentration of .095 ppm or 95 ppb, with an average interior temperature of 81.9º F and an average interior relative humidity of 86.6%.

15. A twenty-four hour passive dosimetry formaldehyde sample was taken by WD Scott Group, of the same unit and pursuant to the same Plaintiff testing protocol, on August 8 and 9, 2009, which found an indoor formaldehyde concentration of .130 ppm or 130 ppb at an average interior temperature of 84.9º F and an average interior relative humidity of 77.1%.

16. When applying the Berge equation to the August 8 and 9, 2009 sampling taken by the WD Scott Group (correcting the temperature calculation to 70º F), the August 8, 2009 one-hour active sampling corrects from 95 ppb to 46 ppb, and the twenty-four hour passive dosimetry sampling corrects from 130 ppb to 53 ppb.

17. A one-hour active formaldehyde sample was also taken by Workplace Hygiene on August 8, 2009, contemporaneously with the sample taken by the WD Scott Group, and found an indoor formaldehyde concentration of .097 ppm or 97 ppb under the same environmental conditions.

18. Pursuant to the Defendant's testing protocol, the trailer was ventilated for 29.5 hours and then air conditioned with the HVAC system set at 72º F for 48 hours prior to the sampling.

19. Workplace Hygiene collected a one hour active formaldehyde sample on August 13, 2009, pursuant to Defendants' testing protocol, and detected an indoor formaldehyde concentration of .035 ppm or 35 ppb.

20. Workplace Hygiene collected a twenty-four hour passive dosimetry sample on August 13 and 14, 2009 of the same unit, pursuant to Defendants' testing protocol, and detected indoor formaldehyde concentrations of .044 ppm or 44 ppb.

21. Certain components parts used by Forest River in the manufacture of this travel trailer contained urea formaldehyde and/or urea formaldehyde resins.

22. FEMA tasked Shaw with delivering, installing and making the trailer FEMA assigned to Bobbie Wright ready for occupancy.

23. On September 30, 2005, FEMA and Shaw executed an Individual Assistance/Technical Assistance Contract ("IA/TAC") under which Shaw would provide certain services for disaster relief anywhere in the United States, pursuant to individual task orders issued by FEMA.

24. In response to Hurricane Katrina, FEMA issued Task Order 15 to Shaw to provide, among other things, hauling, installation, and maintenance services to further FEMA's mission of providing emergency housing solutions for citizens displaced by the hurricane.

25. Shaw's contract with FEMA provides specifications for travel trailer installation, including requirements for delivery, blocking and leveling, anchoring and straps, utilities hook-ups (including sewer, water, and electrical), steps, winterization, handicap ramps/platform steps, and numerous other minor tasks to make the trailers ready for occupancy.

26. FEMA directed Shaw to install the travel trailers on concrete piers constructed in a precise fashion, as set forth in Exhibit 7 ("Travel Trailer Installation") to the Performance Work Statement of the IA/TAC.

27. These detailed specifications were drafted by FEMA and provided to Shaw by FEMA. FEMA also provided Shaw a pier diagram prepared by the U.S. Army Corps of Engineers.

28. The Wright trailer was picked up at the FEMA Staging Yard in Baton Rouge and taken to Shaw's staging yard in Harvey, Louisiana. From there, it was delivered and installed at 2315 Seminole Lane, New Orleans, LA on or about November 21, 2005 by RCG Enterprises, Inc., one of Shaw's subcontractors.

29. RCG Enterprises, Inc. held a license to install mobile homes in Louisiana.

30. Due to the difficulties that Entergy experienced in restoring electrical power to the area where the trailer was located, the trailer could not be powered up and made ready for occupancy until February 11, 2006.

31. Shaw inspected every travel trailer installed by its subcontractors to ensure that FEMA requirements were met.

32. Shaw separately inspected, or had one of its subcontractors inspect, every trailer installation during the "Ready for Occupancy" ("RFO") process, and again during the "lease-in" process, this time with the occupant present.

33. On February 12, 2006, Shaw inspected the trailer and confirmed that it was properly blocked on concrete piers, anchored with the required straps, connected to all utilities (i.e. sewer, water, and electricity), and outfitted with propane tanks, battery and steps.

34. On February 13, 2006, Plaintiff conducted a walk-through inspection of the Trailer with one of Shaw's subcontractors. Plaintiff signed off on the trailer and was leased-in on February 13, 2006.

35. After lease-in, Plaintiff remained on the cruise ship where he had been living until some time in March, 2006, at which point he moved to the trailer.

36. Lyndon Wright resided in this Forest River unit from approximately March 2006 to approximately July 2008.

37. After Plaintiff moved into the trailer, Shaw maintained it for less than three months, until June 1, 2006, when C. Martin Company assumed maintenance responsibility.

38. During the period of Shaw's maintenance, Shaw conducted monthly inspections of the trailer in April 2006 and May 2006. No problems with the trailer were noted during those inspections.

39. At the time Shaw turned over maintenance responsibilities, a representative of C. Martin Company signed a Preventative Maintenance Form indicating that no maintenance issue existed with regard to the trailer as of June 1, 2006.

40. Plaintiff first noticed a leak in the trailer in 2007.

41. Plaintiff continued to live in the trailer for two more years after Shaw's maintenance responsibility for the trailer ended.

42. Shaw conducted no formaldehyde testing of any travel trailers during its contract with FEMA following hurricanes Katrina and Rita

43. On March 20 and 21, 2006, Shaw was contacted by FEMA regarding formaldehyde and the process of airing out emergency housing units, to which Shaw responded on

       March 21, 2006 to FEMA by providing a standard operating procedure which indicated that the unit doors were left open to ventilate in the Shaw staging yards.

44. Sometime after Plaintiff moved out of the trailer in July 2008, the trailer was deactivated and hauled by a third party – not Shaw – to Melville, Louisiana, where it was hauled off road and sat in a field until August 2009, when it was inspected by the parties' experts in this case.

45. FEMA did not maintain the trailer at all once it was located in the FEMA storage yard in Melville, Louisiana.

46. At all times the travel trailer was located at plaintiff's residence at 2315 Seminole Lane, New Orleans, Louisiana, a vent cap was present on the roof of the travel trailer.

47. At all times the travel trailer bearing was located at the FEMA storage site in Melville, Louisiana, the roof vent cap over the bathroom area was missing.

48. Any and all moisture damage observed in the bathroom area of the Wright unit during the August and September 2009 testing was the result of bulk water intrusion caused by the missing vent cap.

49. The weather data collected by Dr. Lee Branscome, Ph.D., a certified meteorologist, attached to his report dated July 9, 2009, is representative of the weather conditions at 2315 Seminole Lane in New Orleans, Louisiana and Melville, Louisiana, for all time periods relevant to the travel trailer's actual location.

Respectfully submitted,

/s/ Aaron Z. Ahlquist
FRANK J. D'AMICO, JR. (Bar Roll No. 17519)
AARON Z. AHLQUIST (Bar Roll No. 29063)
FRANK J. D'AMICO, JR., APLC
622 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-7272
Fax: (504) 525-9522
*ATTORNEYS FOR LYNDON T. WRIGHT*


/s/ Carson W. Strickland
ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
JASON D. BONE (Bar Roll No. 28315)
CARSON W. STRICKLAND (Bar Roll No. 31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*


/s/ David Kurtz
ROY C. CHEATWOOD (Bar Roll No. 4010)
DAVID KURTZ (Bar Roll No. 23821)
KAREN K. WHITFIELD (Bar Roll No. 19350)
CATHERINE N. THIGPEN (Bar Roll No. 30001)
Baker Donelson Bearman Caldwell & Berkowitz, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
*ATTORNEYS FOR SHAW ENVIRONMENTAL, INC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of March, 2010, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all known counsel of record by operation of the court's electronic filing system.

                                                /s/   Carson W. Strickland
                                                CARSON W. STRICKLAND