UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * | Docket MDL 1873 "N" New Orleans, Louisiana |
| THIS DOCUMENT IS RELATED TO: | * * | September 15, 2009 |
| CHARLIE AGE, ET AL V GULF STREAM COACH, INC., ET AL, DOCKET NO. 09-2892; ALANA ALEXANDER, INDIVIDUALLY AND ON BEHALF OF CHRISTOPHER COOPER | * * * * * * | 12:40 P.M. |

* * * * * * * * * * * * * * * *

DAY 2
AFTERNOON SESSION
JURY TRIAL PROCEEDINGS BEFORE THE
HONORABLE KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:	Gainsburgh, Benjamin, David,
  Meunier & Warshauer
BY: GERALD E. MEUNIER, ESQ.
1100 Poydras Street
Suite 2800
New Orleans, Louisiana 70163

The Buzbee Law Firm
BY: ANTHONY G. BUZBEE, ESQ.
JP Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas  77002

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| 15:24 | 1 | government right after Katrina hit; isn't that true? |
| 15:25 | 2 | A.   That's correct. |
| 15:25 | 3 | Q.   But Gulf Stream -- or the government also used trailers |
| 15:25 | 4 | that had been previously sold to the government; isn't that |
| 15:25 | 5 | right? |
| 15:25 | 6 | A.   As I understand it, yes, sir. |
| 15:25 | 7 | Q.   And, for instance, in 2004, Gulf Stream had sold, through |
| 15:25 | 8 | dealers, trailers to the United States government; isn't that |
| 15:25 | 9 | right? |
| 15:25 | 10 | A.   That's correct. |
| 15:25 | 11 | Q.   And that's -- it was one of those trailers that this |
| 15:25 | 12 | family was living in; true? |
| 15:25 | 13 | A.   As I understand it, yes. |
| 15:25 | 14 | Q.   Now, what was your role in the response to Hurricane |
| 15:25 | 15 | Katrina?  Within Gulf Stream, I mean. |
| 15:25 | 16 | A.   As a support member for some of the contractors, worked |
| 15:25 | 17 | with CH2M Hill, Fluor, made a couple trips down to Baton Rouge |
| 15:26 | 18 | to investigate some issues that had come up and surfaced, and |
| 15:26 | 19 | just generally a support. |
| 15:26 | 20 | Q.   And you remember that sometime in the spring of 2006, less |
| 15:26 | 21 | than about three months the trailers had been sent down to |
| 15:26 | 22 | Louisiana, that complaints started to come in; isn't that |
| 15:26 | 23 | right? |
| 15:26 | 24 | A.   I'm aware of a complaint came in in March, yes. |
| 15:26 | 25 | Q.   That was March the 10th of 2006? |

```
15:26   1   A.   That's correct.
15:26   2              MR. BUZBEE:  Your Honor, at this time I want to offer
15:26   3   the first complaint that we have record of, Exhibit 70, which
15:26   4   is one of complaints that this witness is aware of.
15:26   5              MR. SCANDURRO:  Your Honor -- I'm sorry -- our
15:26   6   objection is going to be to foundation unless it can be shown
15:26   7   it's a 2004 trailer.
15:26   8              THE COURT:  Wait.  I think we're getting a little bit
15:26   9   ahead of ourselves.
15:26  10              Have you shown it to him?
15:26  11              MR. BUZBEE:  And I'll tell you what I was trying to
15:26  12   do --
15:26  13              THE COURT:  No, no, don't tell us what you're trying
15:26  14   to do in front of the jury because you may not be able to do
15:27  15   what you're trying to do.
15:27  16              MR. BUZBEE:  Right.  I understand.  I was trying to
15:27  17   short-circuit going and showing him each one of these.  That's
15:27  18   what I was trying to do.  But it looks like they have a more
15:27  19   global objection.  And if we get over that, probably all these
15:27  20   complaints can come in.
15:27  21              THE COURT:  The objection at this point relates to
15:27  22   foundation.  So do you want to try to cure that?
15:27  23              MR. SCANDURRO:  That's correct.  And I would agree,
15:27  24   we don't need to go through this every time.
15:27  25              THE COURT:  Sure.
```

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

****************************************************************

IN RE:  FEMA TRAILER
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION

           DOCKET MDL NO. 1873 "N"
           NEW ORLEANS, LOUISIANA
           TUESDAY, SEPTEMBER 15, 2009, 8:30 A.M.

THIS DOCUMENT IS RELATED TO

CHARLIE AGE, ET AL V
GULF STREAM COACH, INC.,
ET AL, DOCKET NO. 09-2892;
ALANA ALEXANDER,
INDIVIDUALLY AND ON BEHALF
OF CHRISTOPHER COOPER

****************************************************************

DAY 2
MORNING SESSION
TRANSCRIPT OF JURY TRIAL PROCEEDINGS
HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE


APPEARANCES:


FOR THE PLAINTIFFS:

           GAINSBURGH BENJAMIN DAVID MEUNIER AND
           WARSHAUER
           BY:  GERALD E. MEUNIER, ESQUIRE
           2800 ENERGY CENTRE
           1100 POYDRAS STREET, SUITE 2800
           NEW ORLEANS LA   70163


           THE BUZBEE LAW FIRM
           BY:  ANTHONY G. BUZBEE, ESQUIRE
           600 TRAVIS, SUITE 7300
           HOUSTON TX   77002

1   A.   WE WENT BACK AND LOOKED, AND CERTAINLY THE TIME FRAME THAT
2   WAS, THAT WAS INVOLVED HERE WITH THIS CONTRACT, PEOPLE THAT WERE
3   MAKING THE CLAIMS.  THERE'S AN OSHA LOG THAT'S KEPT, AND WE
4   REVIEWED ALL THOSE.
5            AND WE WENT THE EXTRA STEP OF TALKING TO A LOCAL
6   PHYSICIAN WHO TREATS WORKPLACE SPRAINS AND STRAINS AND SO FORTH,
7   AND -- AS WELL AS GENERAL HEALTH ASPECTS IN THE COMMUNITY.  SO
8   THAT'S WHAT WE DID AND THAT'S WHAT WE FOUND.
9   Q.   WHY DIDN'T YOU TELL THE GOVERNMENT ABOUT YOUR INFORMAL
10  SCREENING RESULTS?
11  A.   THE INFORMAL SCREENING RESULTS THAT WE REFERENCED IN OUR
12  LETTER?
13  Q.   YES, SIR.
14  A.   WE OFFERED THOSE TO THE GOVERNMENT.
15  Q.   WHY DIDN'T YOU JUST PROVIDE THEM, JUST ATTACH THEM AND
16  PROVIDE THEM?  IT'S NO MORE THAN 15 OR 20 PAGES.
17  A.   WELL, I THINK THE IMPORTANT THING THAT WE WANTED TO
18  COMMUNICATE WITH THE GOVERNMENT WAS WHAT WE FOUND WHEN WE
19  CANVASSED THE PEOPLE.  AND, YOU KNOW, WE'VE HAD A MEETING WITH
20  FEMA REPRESENTATIVES ON APRIL 24TH, I BELIEVE IT WAS, AND WE
21  UNDERSTOOD WE WOULD BE WORKING COLLECTIVELY WITH PEOPLE THAT HAD
22  SENSITIVITIES, WE WANTED TO COMMUNICATE WHAT WE FOUND RELATIVE TO
23  THE CANVASSING THAT WE DID, AND WE THOUGHT THAT WAS THE MOST
24  IMPORTANT ASPECT.
25  Q.   COULDN'T YOU HAVE JUST SENT THEM A FAX OF ALL OF YOUR