UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
IN RE:  FEMA TRAILER         *   Docket MDL 1873 "N"
FORMALDEHYDE PRODUCTS         *
LIABILITY LITIGATION          *   New Orleans, Louisiana
                              *
THIS DOCUMENT IS RELATED TO:  *   September 15, 2009
                              *
CHARLIE AGE, ET AL V          *   12:40 P.M.
GULF STREAM COACH, INC.,      *
ET AL, DOCKET NO. 09-2892;    *
ALANA ALEXANDER, INDIVIDUALLY *
AND ON BEHALF OF              *
CHRISTOPHER COOPER            *
* * * * * * * * * * * * * * * *
```

DAY 2
AFTERNOON SESSION
JURY TRIAL PROCEEDINGS BEFORE THE
HONORABLE KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Plaintiffs:          Gainsburgh, Benjamin, David,
                               Meunier & Warshauer
                             BY:  GERALD E. MEUNIER, ESQ.
                             1100 Poydras Street
                             Suite 2800
                             New Orleans, Louisiana 70163


                             The Buzbee Law Firm
                             BY:  ANTHONY G. BUZBEE, ESQ.
                             JP Morgan Chase Tower
                             600 Travis, Suite 7300
                             Houston, Texas  77002

15:24  1    government right after Katrina hit; isn't that true?

15:25  2    A.    That's correct.

15:25  3    Q.    But Gulf Stream -- or the government also used trailers

15:25  4    that had been previously sold to the government; isn't that

15:25  5    right?

15:25  6    A.    As I understand it, yes, sir.

15:25  7    Q.    And, for instance, in 2004, Gulf Stream had sold, through

15:25  8    dealers, trailers to the United States government; isn't that

15:25  9    right?

15:25 10    A.    That's correct.

15:25 11    Q.    And that's -- it was one of those trailers that this

15:25 12    family was living in; true?

15:25 13    A.    As I understand it, yes.

15:25 14    Q.    Now, what was your role in the response to Hurricane

15:25 15    Katrina?  Within Gulf Stream, I mean.

15:25 16    A.    As a support member for some of the contractors, worked

15:25 17    with CH2M Hill, Fluor, made a couple trips down to Baton Rouge

15:26 18    to investigate some issues that had come up and surfaced, and

15:26 19    just generally a support.

15:26 20    Q.    And you remember that sometime in the spring of 2006, less

15:26 21    than about three months the trailers had been sent down to

15:26 22    Louisiana, that complaints started to come in; isn't that

15:26 23    right?

15:26 24    A.    I'm aware of a complaint came in in March, yes.

15:26 25    Q.    That was March the 10th of 2006?

Page 249

15:26  1   A.    That's correct.

15:26  2            MR. BUZBEE:  Your Honor, at this time I want to offer

15:26  3   the first complaint that we have record of, Exhibit 70, which

15:26  4   is one of complaints that this witness is aware of.

15:26  5            MR. SCANDURRO:  Your Honor -- I'm sorry -- our

15:26  6   objection is going to be to foundation unless it can be shown

15:26  7   it's a 2004 trailer.

15:26  8            THE COURT:  Wait.  I think we're getting a little bit

15:26  9   ahead of ourselves.

15:26  10               Have you shown it to him?

15:26  11           MR. BUZBEE:  And I'll tell you what I was trying to

15:26  12   do --

15:26  13           THE COURT:  No, no, don't tell us what you're trying

15:26  14   to do in front of the jury because you may not be able to do

15:27  15   what you're trying to do.

15:27  16           MR. BUZBEE:  Right.  I understand.  I was trying to

15:27  17   short-circuit going and showing him each one of these.  That's

15:27  18   what I was trying to do.  But it looks like they have a more

15:27  19   global objection.  And if we get over that, probably all these

15:27  20   complaints can come in.

15:27  21           THE COURT:  The objection at this point relates to

15:27  22   foundation.  So do you want to try to cure that?

15:27  23           MR. SCANDURRO:  That's correct.  And I would agree,

15:27  24   we don't need to go through this every time.

15:27  25           THE COURT:  Sure.

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


*************************************************************

IN RE:  FEMA TRAILER
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION

                         DOCKET MDL NO. 1873 "N"
                         NEW ORLEANS, LOUISIANA
                         TUESDAY, SEPTEMBER 15, 2009, 8:30 A.M.

THIS DOCUMENT IS RELATED TO

CHARLIE AGE, ET AL V
GULF STREAM COACH, INC.,
ET AL, DOCKET NO. 09-2892;
ALANA ALEXANDER,
INDIVIDUALLY AND ON BEHALF
OF CHRISTOPHER COOPER


*************************************************************

                         DAY 2
                    MORNING SESSION
          TRANSCRIPT OF JURY TRIAL PROCEEDINGS
      HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
              UNITED STATES DISTRICT JUDGE


APPEARANCES:


FOR THE PLAINTIFFS:

                    GAINSBURGH BENJAMIN DAVID MEUNIER AND
                    WARSHAUER
                    BY:  GERALD E. MEUNIER, ESQUIRE
                    2800 ENERGY CENTRE
                    1100 POYDRAS STREET, SUITE 2800
                    NEW ORLEANS LA  70163


                    THE BUZBEE LAW FIRM
                    BY:  ANTHONY G. BUZBEE, ESQUIRE
                    600 TRAVIS, SUITE 7300
                    HOUSTON TX  77002

IN RE:  FEMA TRAILER          MOTIONS          CATHY PEPPER, CRR
FORMALDEHYE PRODUCTS LIABILTY LITIGATION          SEPTEMBER 14, 2009

Page 132

1    A.   WE WENT BACK AND LOOKED, AND CERTAINLY THE TIME FRAME THAT

2    WAS, THAT WAS INVOLVED HERE WITH THIS CONTRACT, PEOPLE THAT WERE

3    MAKING THE CLAIMS.  THERE'S AN OSHA LOG THAT'S KEPT, AND WE

4    REVIEWED ALL THOSE.

5              AND WE WENT THE EXTRA STEP OF TALKING TO A LOCAL

6    PHYSICIAN WHO TREATS WORKPLACE SPRAINS AND STRAINS AND SO FORTH,

7    AND -- AS WELL AS GENERAL HEALTH ASPECTS IN THE COMMUNITY.  SO

8    THAT'S WHAT WE DID AND THAT'S WHAT WE FOUND.

9    Q.   WHY DIDN'T YOU TELL THE GOVERNMENT ABOUT YOUR INFORMAL

10   SCREENING RESULTS?

11   A.   THE INFORMAL SCREENING RESULTS THAT WE REFERENCED IN OUR

12   LETTER?

13   Q.   YES, SIR.

14   A.   WE OFFERED THOSE TO THE GOVERNMENT.

15   Q.   WHY DIDN'T YOU JUST PROVIDE THEM, JUST ATTACH THEM AND

16   PROVIDE THEM?  IT'S NO MORE THAN 15 OR 20 PAGES.

17   A.   WELL, I THINK THE IMPORTANT THING THAT WE WANTED TO

18   COMMUNICATE WITH THE GOVERNMENT WAS WHAT WE FOUND WHEN WE

19   CANVASSED THE PEOPLE.  AND, YOU KNOW, WE'VE HAD A MEETING WITH

20   FEMA REPRESENTATIVES ON APRIL 24TH, I BELIEVE IT WAS, AND WE

21   UNDERSTOOD WE WOULD BE WORKING COLLECTIVELY WITH PEOPLE THAT HAD

22   SENSITIVITIES, WE WANTED TO COMMUNICATE WHAT WE FOUND RELATIVE TO

23   THE CANVASSING THAT WE DID, AND WE THOUGHT THAT WAS THE MOST

24   IMPORTANT ASPECT.

25   Q.   COULDN'T YOU HAVE JUST SENT THEM A FAX OF ALL OF YOUR