UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 | |
| FORMALDEHYDE | * | | |
| PRODUCTS LIABILITY | * | | |
| LITIGATION | * | SECTION:  N(4) | |
| | * | | |
| This Document Relates to:  *Karen Andrews, et al* | * | JUDGE: ENGELHARDT | |
| *v. Gulf Stream Coach, Inc.*; Docket No. 10-198 | * | MAG: CHASEZ | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

**NOW INTO COURT,** through undersigned counsel, comes defendant, Gulf Stream Coach, Inc., ("Gulf Stream") and, with a full reservation of rights, files this Opposition to Plaintiffs' Motion to Remand and, based on the laws and facts stated herein, avers that this matter has been properly removed to this Court on the following grounds:

(1) Federal jurisdiction is proper in this matter under 28 U.S.C. §1332 as all plaintiffs named are diverse in citizenship from all named defendants and the amount in controversy more likely than not exceeds $75,000.00 per plaintiff.

    (a) It is facially apparent from the Plaintiffs' Original Petition for Damages that potential damages in this matter exceed $75,000.00 for any individual plaintiff.

    (b) Based on evidence provided personally by the plaintiffs and a sample of awards granted by Louisiana courts for symptoms similar to those complained of by individual plaintiffs, the allegations of the plaintiffs, if proven at trial, are reasonably valued over $75,000.00, thus invoking federal jurisdiction.

(2) In addition and/or alternatively, Federal jurisdiction over this case is proper under the Federal Officer Removal statute, 28 U.S.C. § 1442(a)(1). Gulf Stream meets all three requirements established in the *Mesa* decision for jurisdiction.

(3) In addition and/or alternatively, this Court has jurisdiction under the Class Action Fairness Act, 28. U.S.C. §1332(d)

## I.      Background

On or about December 08, 2009, Plaintiffs, through attorney John Munoz of the firm Garner & Munoz, filed the Petition for Damages in this action, entitled *"Karen Andrews, together with all individuals whose names appear in paragraph "I" v. Gulf Stream Coach, Inc."* and bearing Docket Number 09-12800, Division "N-8," (the "Petition"), in the Civil District Court for the Parish of Orleans, State of Louisiana.

For purposes of allotment, this Petition arises solely from operative facts that are the subject of multidistrict litigation ongoing in the U.S. District Court for the Eastern District of Louisiana, entitled *In re: FEMA Trailer Formaldehyde Products Liability Litigation* and bearing MDL docket number 07-1873.

On January 28, 2010, Gulf Stream properly removed this matter to the Federal Court for the Eastern District of Louisiana. Plaintiffs filed a motion to remand in this matter on February 26, 2010, alleging that the Eastern District lacks jurisdiction under 28 U.S.C. §1332 and 28. U.S.C. §1442(a)(1). Hearing on this Motion is set for March 24, 2010.

## II.     Federal jurisdiction is proper in this matter under 28 U.S.C. §1332 as all plaintiffs named are diverse in citizenship from all named defendants and the amount in controversy more likely than not exceeds $75,000.00 per plaintiff.

Plaintiffs, in their Memorandum in Support of their Motion to Remand, concede that all plaintiffs and defendants are citizens of different states.[1] The Plaintiffs, however, allege that Gulf Stream has failed to show that the damages sought exceed $75,000.00.

Under 28 U.S.C. § 1332(a), a federal court has diversity jurisdiction if the matter in controversy (1) exceeds $75,000.00, exclusive of interest and costs, and (2) is between citizens of different states. In 2005, the United States Supreme Court held that where the other elements of jurisdiction are present <u>and at least one named plaintiff in the action satisfies 28 U.S.C.</u>

---

[1] Plaintiffs' Memorandum in Support of Their Motion to Remand, page 2, Section II (Rec. Doc. 11991-1).

§1332(a)'s amount-in-controversy requirement, 28 U.S.C. §1367 authorizes supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the requisite amount." *Exxon Mobile Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 125 S.Ct. 2611, 2616-2628 (2005)(Emphasis Added).

Because plaintiffs in Louisiana state courts, by law, may not quantify damages in the petition, the removing defendant has the burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.00. *Gebbia v. Wal-Mart Stores, Inc.,* 233 F.3d 880, 882 (5th Cir. 2000). A defendant makes that showing when it is "facially apparent" from a reading of the complaint that the plaintiff's claims are likely to exceed $75.000.00. *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995). If it is not "facially apparent" from a plaintiff's petition that the amount in controversy exceeds $75,000.00, the Court may rely on "summary judgment-type" evidence relevant to the amount in controversy at the time of removal to make the determination. *White v. FCI USA, Inc.,* 319 F.3d 672, 675 (5th Cir. 2003); *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir.1999);. Under any manner of proof, jurisdictional facts must be judged at the time of removal, and post-petition affidavits are allowable only if relevant to that period of time. *Allen,* 63 F.3d at 1335 (Emphasis Added).

If a removing defendant shows that the amount in controversy is likely to exceed the federal jurisdictional minimum, the plaintiff must then show that it is a "legal certainty" that he or she will not be able to recover the jurisdictional amount. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938). The plaintiffs' burden can be met by: (1) showing state procedural rules binding a plaintiff to his pleadings; or (2) filing with the complaint a binding stipulation or affidavit to that effect. *De Aguilar v. Boeing Co.,* 47 F.3d 1404 (5th Cir.1995).

**A.     It is facially apparent from the Plaintiffs' Original Petition for Damages that potential damages in this matter exceed $75,000.00 for any individual plaintiff.**

In their Original Petition for Damages,[2] filed in the Civil District Court for the Parish of

Orleans, State of Louisiana, the plaintiffs state:

XII.

"As a result of the foregoing, Plaintiffs were caused to sustain injuries including, but not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during a period of displacement from a natural disaster, as well as, all general, special, incidental, and consequential damages shall be proven."

**1.     The U.S. Fifth Circuit Court of Appeals' decision in *In re 1994 Exxon Chemical Fire* discusses, in detail, the categories of damages alleged in chemical exposure cases which justify removal to federal courts. These categories of damages align with the categories of damages asserted by the Plaintiffs in this matter.**

The Fifth Circuit has held that removal is justified where alleged damages in a chemical

exposure case include:

"individual and familial suffering; injuries to physical and mental health, including, but not limited to, emotional distress and mental anguish from the knowledge of exposure to a hazardous substance; expenses incurred by reason of illness caused by the nuisance; fear and apprehension of further exposure to, and impact from, hazardous chemicals; economic and financial harm; loss of enjoyment of life and peaceful use of property; and, other consequential, incidental, general, and special damages."

*In re 1994 Exxon Chemical Fire,* 558 F.3d 378 (5th Cir. 2009).

The listed damages cited by the Federal Fifth Circuit in *In re 1994 Exxon Chemical Fire*

closely mirrors the listed damages alleged by Plaintiffs here, justifying this removal under the

---

[2]     Plaintiffs' Original Petition for Damages, filed in the Civil District Court for the Parish of Orleans, State of Louisiana, is attached here as Exhibit "A."

"facially apparent" standard set forth in *Allen, supra*. Indeed, the Plaintiffs here assert one additional category of damages above and beyond those asserted in *In re 1994 Exxon Chemical Fire*. Plaintiffs here have alleged "past and future physical impairments and disability." A brief look at the method in which these allegations of "past and future disability and impairment" are handled by the Fifth Circuit and surrounding courts further establishes that an amount in controversy above $75,000.00 is facially apparent in Plaintiffs' petition.

> **2.**     **Recent U.S. Fifth Circuit decisions hold that petitions that seek damages for disability and impairment support a substantially larger monetary basis for federal jurisdiction.**

The Federal Fifth Circuit has noted that emotional distress, functional impairment, and disability are the kinds of damages that if alleged, "support a substantially larger monetary basis for federal jurisdiction." *Simon v. Wal-Mart Stores, Inc.* 193 F.3d 848, 851 (5th Cir. 1999).

In *Robinson v. Delchamps,* the plaintiff sought remand, citing a failure to establish the requisite jurisdictional amount of $75,000.00. The defendant argued that the jurisdictional amount was facially apparent from the plaintiff's petition which cited nine separate types of damages, including physical and mental pain and suffering (past and future), loss of income (past and future), medical expenses (past and future), loss of enjoyment of life (past and future), and disability (past and future). The Louisiana Eastern District held, "[t]he number of claims, the nature of those claims, and the allegations that plaintiff will continue to suffer damages into the future, all weigh against plaintiff's argument. It is facially apparent that if all damages alleged in this case are recovered, the amount of the judgment would likely be well in excess of the jurisdictional amount." *Robinson v. Delchamps, Inc.,* No. 98-0503, 1998 WL 352131 (E.D. La. 06/30/98)(emphasis added). In a similar holding, the Western District of Louisiana has found that the jurisdictional amount of $75,000.00 was facially apparent where the plaintiff

5

sought damages for physical pain and suffering (past and future); mental anguish, emotional distress, worry, anxiety, and inconvenience (past and future); medical and related expenses (past and future); loss of enjoyment of life; and <u>disability and impairment</u>. *Lowery v. J.C. Penny Corp., Inc.,* No. 06-1710, 2006 WL 3827527 (W.D. La. 12/28/06)(Citing *Robinson*)(emphasis added.) Furthermore, the Federal Fifth Circuit has found that the Louisiana Eastern District did not err in finding that it was facially apparent from the plaintiff's petition that the amount in controversy exceeded $75,000 when the petition sought damages for past and future medical expenses, past and future pain and suffering, past and future lost wages and <u>past and future disability</u>. *Davis v. Grider,* 214 F.3d 1350 (Table), 2000 WL 634655 (5th Cir. 2000)(Emphasis Added).

### 3.      The Louisiana Eastern District's decision in *Aisola* is directly on point.

Recently and most directly on point, this Court found that the jurisdictional amount requirement was met in a chemical exposure case. In *Aisola,* thirteen minor school children were allegedly injured when the defendant negligently released chemicals into the air. *Aisola v. Exxonmobil Corp.,* No. 08-1105, 2009 WL 1455788 *1 (E.D. La. 05/22/09). Each plaintiff cited damages "inclusive of past, present, and future medical expenses; past, present, and future lost wages; past, present, and future mental anguish; past, present, and future pain and suffering; disability and disfigurement; and other damages." *Id.* *2. Furthermore, the plaintiffs claimed the exposure "necessitated and will further necessitate medical treatment." *Id.* The Court, based primarily on the *In re 1994 Exxon Chemical Fire* holding and a thorough discussion of damages sought for disability, found that it was facially apparent from the plaintiffs' petition that the amount in controversy exceeded $75,000. *Id.*

The damages asserted in *Aisola* are almost identical to the damages asserted in the

6

current matter. Both cases seek damages for 1) past and future mental anguish/pain and suffering, 2) past and future physical pain and suffering, 3) past and future medical expense, and 4) disability and impairment/disfigurement. The Plaintiffs here also seek damages not cited in *Aisola* such as past and future physical injury and loss of enjoyment of life. Using *Aisola* and *Robinson* as guides, it is facially apparent from the Plaintiff's Original Petition for Damages that if all damages alleged by the plaintiffs were recovered, then this amount would more likely than not be in excess of $75,000.00.

The Plaintiffs' own allegations of damages show that Gulf Stream has met its burden of proving that the requisite amount in controversy under 28 U.S.C. §1332 is facially apparent from the Plaintiffs' Original Petition for Damages, and this Court need not look further.

**B.      Alternatively, based on evidence provided personally by the plaintiffs and a sample of awards granted by Louisiana Courts for symptoms similar to those complained of by individual Plaintiffs, the allegations of the Plaintiffs, if proven at trial, are reasonably valued over $75,000.00, thus invoking federal jurisdiction.**

Although Section I(A) clearly indicates that the jurisdictional amount required under 28 U.S.C. §1332 is facially apparent from Plaintiffs' Original Petition for Damages, in an abundance of caution and in accordance with *Luckett* and *White, supra*, Gulf Stream submits the following exhibits and jurisprudence which clearly shows that Plaintiffs' claims for damages could be reasonably calculated to exceed $75,000.00. To reiterate the law stated earlier, so long as one named plaintiff in this action meets the jurisdictional requisite amount under 28 U.S.C. 1332, then jurisdiction is obtained over all other plaintiffs. *See Exxon Mobile Services, supra.*

In the course of discovery, most of the Plaintiffs in this matter submitted to Gulf Stream a "Plaintiff Fact Sheet," which, among other things, cites the symptoms and consequences that each Plaintiff has allegedly suffered in this case as a result of the alleged exposure.

1.  **Despite the testimony cited in the Affidavit filed by attorney J. Scott Daniels, four of the Plaintiffs named in this suit have specifically alleged to suffer damages far in excess of the jurisdictional requisite of $75,000.00**

Four of the Plaintiffs who submitted a "Plaintiff Fact Sheet" attached to the fact sheet the Department of Justice's Form 95 "Claim for Damage, Injury or Death " (hereafter "Form 95"). Form 95 asks Plaintiffs to cite, in specific dollar amounts, the amount of damages they seek. For purposes of convenience, these four Plaintiffs who submitted a Form 95 will hereafter be referred to as "Plaintiff Group One."[3] As seen in Exhibit "B," Plaintiff Group One seeks from $220,000.00 to $350,000.00 in damages:[4]

James Scott, Sr. seeks $350,000.00 in damages.
Donald Roberts seeks $300,000.00 in damages.
Charnell Haymond seeks $300,000.00 in damages.
Audrey Scott seeks $220,000.00 in damages.

Plaintiffs have attempted to avoid jurisdiction under 28 U.S.C. §1332 by submitting post-removal affidavits and declarations stating that no individual claim exceeds $75,000.00[5]; this matter is discussed in more detail below. However, it is apparent from Exhibit "C" that many of the named Plaintiffs, in sworn claims to the federal government, disagree with their counsel on the value of their claims.

2.  **The symptoms and conditions allegedly suffered by individual Plaintiffs, if proven at trial, could be reasonably calculated to exceed $75,000.00 when compared to other awards by Louisiana juries in similar exposure cases.**

---

[3]   Attached to this Opposition is Exhibit "B," the Plaintiff Fact Sheets and completed Form 95 for Plaintiff Group One.

[4]   It should be noted that Plaintiff Group One comprises all of the Plaintiffs who submitted Form 95s. No Plaintiff has submitted a Form 95 seeking less than $75,000.00.

[5]   The affidavit of J. Scott Daniels is attached to this Opposition as Exhibit "C."

In *In re New Orleans Train Car Leakage Fire Litgation,*[6] a Louisiana jury awarded $2,100,000[7] to twenty plaintiffs (with two plaintiffs receiving over $100,000 each) in general damages for physical pain and suffering, mental anguish, and evacuation and inconvenience after the plaintiffs were exposed to butadiene caused by a train car leak.[8] The plaintiffs also cited a general fear of negative health consequences due to the exposure. *In re New Orleans Train Car Leakage Fire Litgation,* 2000-0479 (La. App. 4 Cir. 06/27/01), 795 So.2d 364.

In *In re New Orleans Train Car Leakage Fire Litgation,*[9] a Louisiana jury awarded a single plaintiff in a mass action suit $60,000 for physical pain and suffering and $25,000 for mental anguish after the plaintiff was exposed to the chemical, butadiene, after a train car leaked.[10] The plaintiff suffered from three symptoms - skin irritation, vomiting, and diarrhea - for approximately three days following the exposure. The plaintiff also suffered from being evacuated to an unsanitary facility. *In re New Orleans Train Car Leakage Fire Litgation,* 2000-1919 (La. App. 4 Cir. 04/20/05), 903 So.2d 9.

Attached as *Exhibit "D,"* is a Plaintiff Fact Sheets from Donald Roberts, one of the named plaintiffs. For convenience, this Plaintiff will be referred to as "Plaintiff Group Two." The Plaintiff in Plaintiff Group Two has indicated that he suffered from the same three symptoms as the plaintiff in *In re New Orleans,* namely skin irritation, vomiting, and diarrhea. Furthermore, the Plaintiff in Plaintiff Group Two alleges suffering between 16 total symptoms or conditions as a result of the purported exposure. This means that in addition to three identical

---

[6]     This matter refers to the first set of plaintiffs selected by the parties for trial.

[7]     In addition, the jury awarded $850,000,000 in punitive damages to the plaintiffs.

[8]     These damages do not include any special damages for medical expenses.

[9]     This matter refers to the third phase of plaintiffs selected by the parties for trial

[10]    These damages do not include any special damages for medical expenses.

symptoms to the plaintiff in *In re New Orleans,* for which a Louisiana jury awarded $85,000.00, the Plaintiff in this group is seeking damages for an additional 13 symptoms or conditions. Based on the award granted in *In re New Orleans,* and the additional damages sought by these current Plaintiffs, it is not unreasonable to believe that damages in excess of $75,000.00 could be awarded to this plaintiff, if the damages sought were proven at trial, particularly when combined with a special damage award.

In *Lemaire,* a Louisiana jury awarded $270,000.00 in general damages and $150,000.00 in potential future medical damages to a plaintiff after he was exposed to the chemicals, Atrazine and Galecron. The plaintiff suffered from nausea, vomiting, diarrhea, headaches, and nostril burning. He also suffered kidney and flank pain, as well as proteinuria and hematuria. He experienced some mental anguish, trouble sleeping, and developed a fear of cancer. *Lemaire v. CIBA-GEICY Corp.,* 1999-1809 (La. App. 1 Cir. 06/22/01) 793 So.2d 349.

Attached as *Exhibit "E,"* are Plaintiff Fact Sheets from three of the named plaintiffs.[11] For convenience, they will be referred to as "Plaintiff Group Three." Every plaintiff in Plaintiff Group Three has indicated that they suffered from symptoms similar to the plaintiff in *Lemaire,* namely nausea, vomiting, diarrhea, headaches, sinus irritation, and problems with the kidneys. The Plaintiffs in Plaintiff Group Three allege suffering between 25 and 33 total symptoms or conditions as a result of the alleged exposure. The average number of symptoms and conditions alleged by members of Plaintiff Group Three is 28. This means that, on average, in addition to six symptoms similar to the plaintiff in *Lemaire,* for which a Louisiana jury awarded $420,000.00 (not including special damages), the Plaintiffs in this group are seeking damages for an additional 22 symptoms or conditions. Based on the award granted in *Lemaire* and the

---

[11]     These plaintiffs are: Manuel Gilbert, Charnell Haymond, and Gillian Haymond.

additional damages sought by these plaintiffs in Plaintiff Group Three, it is not unreasonable to believe that damages in excess of $75,000.00 could be awarded to plaintiffs, if the damages sought were proven at trial, particularly when combined with a special damage award.

In *Manuel,* a Louisiana judge awarded a plaintiff $250,000.00 in general damages (total awarded including future medicals and lost wages was $955,936.79) after the plaintiff was exposed to benzene. The plaintiff suffered from headaches, dizziness, chills, and nausea. He also suffered from anxiety, depression, fatigue, and confusion. Medical experts testified that he was at increased risk of cancer. *Manuel v. Shell Oil Co.,* 94-590 (La. App. 5 Cir. 10/18/95), 664 So.2d 470.

Attached as *Exhibit "F,"* are Plaintiff Fact Sheets from three of the named Plaintiffs.[12] For convenience, these Plaintiffs will be referred to as "Plaintiff Group Four." Every Plaintiff in Plaintiff Group Four has indicated that they suffered symptoms similar to the plaintiff in *Manuel,* namely dizziness, headaches, nausea, and fatigue. The Plaintiffs in Plaintiff Group Four allege suffering between 16 and 24 total symptoms or conditions as a result of the alleged exposure. The average number of symptoms and conditions alleged by members of Plaintiff Group Four is 20. This means that, on average, in addition to the four symptoms similar to the plaintiff in *Manuel,* for which a Louisiana jury awarded $250,000.00 (just general damages), the Plaintiffs in this group are seeking damages for an additional 16 symptoms or conditions. Based on the award granted in *Manuel* and the additional damages sought by these Plaintiffs in Plaintiff Group Four, it is not unreasonable to believe that damages in excess of $75,000.00 could be awarded to plaintiffs, if the damages sought were proven at trial, particularly when combined with a special damage award.

---

[12]     These plaintiffs are: Karen Andrews, Marc Haymond, and Audrey Scott.

Every Plaintiff who submitted a Form 95 valued their claim far in excess of the requisite amount under 28 U.S.C. §1332. Furthermore, the decisions in *In re New Orleans, Lemaire,* and *Manuel* demonstrate that Louisiana juries have valued individual subsets of the symptoms alleged by the Plaintiffs far in excess of the jurisdictional requisite. Gulf Stream has met its burden under *Luckett* and *White.*

      **C.**    **The affidavit of attorney, J. Scott Daniels, and the declarations of twelve of the named Plaintiffs are irrelevant and cannot be considered under the rules governing removals.  Furthermore, three named Plaintiffs have judicially admitted to having a claim in excess of $75,000.00.**

Plaintiffs filed their Motion to Remand on February 26, 2010. Attached to this Motion for Remand is *Plaintiffs' Exhibits "C"* which is an affidavit from attorney J. Scott Daniels, signed February 25, 2010, asserting that an employee of his firm spoke with all plaintiffs in this matter prior to the filing of suit, and these plaintiffs instructed the firm to seek damages less than $75,000.00 per claim [13]. Also attached is *Plaintiffs' Exhibit "D"* which are post-removal "Declarations Under Penalty of Perjury" signed on behalf of twelve of the sixteen named Plaintiffs, all dated in February of 2010, asserting that no Plaintiff is seeking damages greater than $75,000.00 and that this intention was made clear to Plaintiff counsel prior to the suit being filed.[14]

      **1.**    **If Plaintiffs and Plaintiff Counsel had information regarding the valuation of damages prior to filing of the State Petition for Damages, then, under U.S. Fifth Circuit precedent, they were required to make this information known at the time suit was filed.**

Plaintiffs and their representative counsel must make all information regarding complaints known at the time suit is filed. *DeAguilar,* at 1412; *Aisola,* at 3 (n.1). If plaintiff

---

[13]     See Exhibit "C."

[14]     The Declarations of the sixty named plaintiffs are attached to this Opposition, *in globo,* as Exhibit "G."

counsel knew of his clients' alleged requests to seek less than $75,000.00 at the time the original suit was filed, as asserted in the affidavit and declarations, then this should have been, as was required to be, stated in the Original Petition for Damages.  "Events occurring subsequent to removal of cause from state to Federal District Court reducing amount recoverable below requisite amount, whether beyond plaintiff's control or the result of his volition by stipulation, affidavit, or amendment of his pleadings, do not oust District Court's jurisdiction once it has attached." *St. Paul Mercury Indemnity Company v. Red Cab Company,* 303 So.2d 283, 292; 58 S.Ct. 586, 592 (1938). Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case; *St. Paul* makes later filings irrelevant. *DeAguilar* at 1412, *citing In re Shell Oil Co.,* 970 F.2d 355, 356 (7th Cir.1992) (Emphasis Added). Thus, the affidavit filed by Daniels and the Declarations of the sixty named Plaintiffs are irrelevant under the law.

> **2.      The U.S. Fifth Circuit decision in *ANPAC* provides for the admission of a post-removal affidavit concerning amount of damages only when three narrow conditions are present. Neither the affidavit nor the declarations meet these three requirements and are, therefore, inadmissible.**

In support of the affidavits, the plaintiffs cite *Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia (ANPAC) v. Dow Quimcia de Columubia S.A.* In *ANPAC*, the Federal Fifth Circuit allowed a post-removal affidavit to be used in support of the plaintiffs' Motion to Remand. The Court reasoned that the affidavit was attempting to "clarify" and not change the previously asserted damages. *Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia (ANPAC) v. Dow Quimcia de Columubia S.A.,* 988 F.2d 559 (5th Cir. 1993), *abrogated by Marathon Oil Co. v. A.G. Ruhrgas,* 145 F.2d 211 (5th Cir. 1998).

Plaintiffs claim that ANPAC presents a situation very similar to this matter.[15] This is not the case; here, the only plausible reason for the submission of these affidavits and declarations is to change, not clarify, the previously stated damages.

The U.S. Court of Appeals for the Fifth Circuit, mere months after deciding *ANPAC,* described, in detail, its very limited application.[16] In *Marcel,* the Fifth Circuit stated, "*ANPAC,* though controlling authority, is very narrowly drawn and circumscribed and is plainly distinguishable." *Marcel v. Pool Co*., 5 F.3d 81, 84 (5th Cir. 1993). *ANPAC* only allows a post-removal affidavit to be considered when: (1) the jurisdictional amount is not facially apparent from the Plaintiff's Original Complaint, (2) the defendants provide only a conclusory statement regarding jurisdictional amount <u>prior to the ruling on the remand,</u>[17] and (3) the plaintiffs offer an unrebutted stipulation or affidavit of damages. *Marcel,* at 85. The Fifth Circuit concluded, "[n]othing in *ANPAC* suggests that stipulations or affidavits--from the plaintiffs, their attorneys, or otherwise--always or even usually should be given effect to defeat removal." *Marcel,* at 85.

J. Scott Daniel's affidavit in this case meets none of the three *ANPAC* requirements. First, as seen by the argument in Section I (A) of this Opposition, it is facially apparent that the damages asserted in Plaintiffs' Original Petition, if proven at trial, would more likely than not exceed $75,000.00. Second, as in the *Marcel* case, a lengthy and detailed description of the categories of damages sought, the evidence regarding damage amounts, and the relevant jurisprudence interpreting each comprise this section of the Opposition to Plaintiffs' Motion to

---

[15]     Plaintiffs' Memorandum in Support of their Motion to Remand, page 5, (Rec. Doc. 11991-1).

[16]     *ANPAC* has since been abrogated on other grounds by *Marathon Oil Co. v. A.G. Ruhrgas,* 145 F.2d 211 (5th Cir. 1998).

[17]     *Marcel* is similar to the current matter in that the *Marcel* defendants did not put forth any "summary judgment type" evidence in the actual removal, but, using information received in discovery, provided a detailed explanation as to why the requisite jurisdictional amount was present in their Opposition to Plaintiffs' Remand. *See Marcel* at 85.

Remand.  This information provides this Court with much more than a mere conclusory statement regarding the jurisdictional amount. Thus, the second condition under *ANPAC* is not present. Finally, the affidavit by Plaintiff Counsel is not unrebutted. Gulf Stream has clearly displayed why this affidavit is inadmissible and irrelevant.

The "Declarations Under Penalty of Perjury" from Plaintiffs are even less akin to the situation in *ANPAC*. First, these documents are not affidavits as required by *ANPAC*. None of these documents have been notarized. Seven of the declarations have no parish identified even though the document specifically provides for one.[18] Five of these documents are not dated. Also, for the reasons stated directly above, *ANPAC* is inapplicable to this matter because none of the three requirements for the admissibility of post-removal affidavits have been met.

It is difficult to understand why Plaintiffs would go through all the trouble of sitting down with each of the seventy-three clients "prior to suit being filed" in order to obtain agreements to limit damages and then fail to timely make a binding stipulation in the petition as required, or to mention this limitation in the Original Petition at all.

The plaintiffs also cite in support *Royal Cosmopolitan, L.L.C. v. Star Realty Estate Group, L.L.C.,* 629 F. Supp. 2d 594 (E.D. La. 2008). *Royal* is inapplicable to this matter for the reasons already stated.[19]

### 3.    J. Scott Daniel's Affidavit contains hearsay within hearsay and is, therefore, inadmissible.

The affidavit of J. Scott Daniel is also hearsay. In *Aisola,* a plaintiffs' counsel seeking remand offered an affidavit attesting that no plaintiff had damages exceeding $75,000. The

---

[18]    One additional Declaration identifies the Parish of signature as "New Orleans Parish." No such Parish exists in the State of Louisiana.

[19]    In *Royal,* the Court found that the plaintiff's affidavit met the three requirements under *ANPAC*. The Court held that jurisdictional amount was not facially apparent, the defendants offered only a conclusory statement regarding damages, and offered no rebuttal to the affidavit. *Royal* at 597.

Court correctly noted that the plaintiffs' counsel was not a fact witness to the case and, thus, his testimony regarding the extent of his clients' injuries was not admissible.[20] *Aisola,* at 3 (n.1). In the current matter, Plaintiffs' counsel has worded his affidavit in such an indirect way as to avoid directly testifying about his clients' damages. He attests to having personal knowledge of an employee of his firm speaking to the clients at which time the clients allegedly relayed to an employee the proposition that their claims do not equal $75,000.00. This amounts to hearsay within hearsay. Rule 802 of the Federal Code of Evidence deems inadmissible the substance of any conversations taking place between the Plaintiffs and an employee of Buzbee Law Firm unless directly testified to by the Plaintiff making the statement. Furthermore, any third-party knowledge of these conversations, such as J. Scott Daniel's personal knowledge that the conversations took place, still amounts to hearsay unless testified to by the firm's employee or the individual plaintiff who was present during the conversation.

### 4. The Plaintiffs' declarations directly contradict prior, relevant evidence as to the valuation of damages.

In the declarations signed in February of 2010, the individual Plaintiffs state that they will not seek damages in excess of $75,000.00.[21] They further that the Plaintiffs made their attorneys aware of this limitation of damages prior to the suit being filed.[22] However, attached to Plaintiff Group One's "Plaintiff Fact Sheets" are Form 95s which clearly indicates that these four plaintiffs valued their total claims between $350,000.00 and $220,000.[23] These "Plaintiff Fact Sheets" were signed in 2008, and were relevant at the time this removal was filed, unlike

---

[20]     It should also be noted that Court went on to state that it is an ethical violation for an attorney to assert personal knowledge of facts at issue when he is not a witness. *Aisola* at 3 (FN1)(citing Louisiana Rule of Professional Conduct 3.4(e).)

[21]     *See* Exhibit "G," paragraph 3

[22]     *See* Exhibit "G," paragraph 4

[23]     *See* Exhibit "B."

their post-removal declarations.

For the many reasons stated above, Gulf Stream has met its burden for jurisdiction under 28 U.S.C. §1332.

**III.   Federal jurisdiction over this case is proper under the Federal Officer Removal statute, 28 U.S.C. § 1442(a)(1). Gulf Stream meets all three requirements established in the *Mesa* decision for jurisdiction.**

In the interest of judicially efficiency, Gulf Stream asks that this Court incorporate by reference the arguments made in Section III (entitled – "Federal jurisdiction over this case is proper under the Federal Officer Removal statute, 28 U.S.C. § 1442(a)(1). Gulf Stream meets all three requirements established in the *Mesa* decision for jurisdiction."), previously filed in its Opposition to Plaintiffs' Motion to Remand, *Pamela Floyd, et al v. Gulf Stream Coach, Inc.*; Docket No. 10-204, Rec. Doc. 13012, in their entirety.

**IV.   This Court has jurisdiction under the Class Action Fairness Act (28 U.S.C. 1332(d)). Based on relevant jurisprudence, Plaintiffs are not able to segment this mass action into five different suits for the sole purposes of defeating federal diversity.**

Plaintiffs have filed Motions to Remand in five separate lawsuits. Including the current matter, Plaintiffs have filed remand motions in *Abram, Floyd, Lewis,* and *Robertson.* Based on the jurisprudence below, this indiscriminate segmenting of the mass action is not permissible to defeat federal jurisdiction.

28 U.S.C. 1332(d) states in relevant parts:[24]

**(11)(A)** For purposes of this subsection and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.

**(B)(i)** As used in subparagraph (A), the term "mass action" means any civil action

---

[24]   The Class Action Fairness Act generally requires minimum diversity and $5,000,000 in controversy. *See 28 U.S.C. 1332(d)(2).*

(except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

In *Freeman,* three hundred diverse plaintiffs, segmented their mass action into five different suits based on six-month intervals, and asserted damages of 4.9 million dollars per six-month period. The Plaintiffs argued that since no single suit met the jurisdictional minimum, the federal courts lacked jurisdiction under CAFA. *Freeman v. Blueridge Paper Products, Inc.,* 551 F.3d. 405 (6th Cir. 2008). In holding that CAFA jurisdiction existed, the U.S. Court of Appeals for the Sixth Circuit stated, "CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction." *Id.* at 407. "Generally, if a plaintiff 'does not desire to try his case in the federal court, he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.' (citing *St. Paul Mercury* at 294). But where recovery is expanded, rather than limited, by virtue of splintering of lawsuits for no colorable reason, the total of such identical splintered lawsuits may be aggregated." *Id.* at 409 (Emphasis Added).

In order to obtain jurisdiction under CAFA, the mass action must 1) contain at least 100 plaintiffs and 2) the aggregate amount in controversy must exceed $5,000,000. The Plaintiffs argue that this Court lacks federal jurisdiction under CAFA because no single suit contains the necessary 100 plaintiffs under 28 U.S.C. 1332(d).

The total number of plaintiffs in the five remanded suits equals 407. *Abram* claims damages on behalf of 97 plaintiffs.[25] *Andrews* claims damages on behalf of 17 plaintiffs.[26]

---

[25]    See *Michelle Abram, et al v. Gulf Stream, et al,* filed in Civil District Court for Orleans Parish, attached here as Exhibit "H."

[26]    See Exhibit "A."

*Floyd* claims damages on behalf of 99 plaintiffs.[27] Lewis claims damages on behalf of 99 plaintiffs.[28] Finally, *Robertson* claims damages on behalf of 95 plaintiffs.[29] These five suits assert, verbatim, the same allegations, damages, and prayers for relief. In fact, the only difference in the five suits "paragraph 1" which lists the named plaintiffs. The suits are obviously aligned in alphabetical order, such that it appears that all 407 plaintiffs were alphabetized and then segmented such that no single suit had more than 100 plaintiffs. This is the exact type "artificial structuring" of lawsuits referred in *Freeman*. There is no colorable reason for splintering these five suits other than the intentional avoidance of CAFA jurisdiction. Thus, the claims of all 407 plaintiffs may be aggregated in order to reach the $5,000,000 jurisdictional amount required by 28 U.S.C. 1332(d)(2). In order to reach this amount, each of the 407 plaintiffs must average a claim of $12,285.11. Based on the arguments made in Section (II) of this Opposition regarding damages asserted and the evidence presented as to symptoms alleged due to the exposure, recovery will more likely than not exceed $12,285.11 per plaintiff, if these allegations are proven at trial. Thus, this Court has jurisdiction under the Class Action Fairness Act.

**WHEREFORE,** defendant, Gulf Stream Coach, Inc. prays that this matter be removed to

---

[27]     See *Pamela Floyd, et al v. Gulf Stream, et al,* filed in Civil District Court for Orleans Parish, attached here as Exhibit "I."

[28]     See *Pearl Lewis, et al v. Gulf Stream, et al,* filed in Civil District Court for Orleans Parish, attached here as Exhibit "J."

[29]     See *Eugene Robertson, et al v. Gulf Stream, et al,* filed in Civil District Court for Orleans Parish, attached here as Exhibit "K."

the United States District Court for the Eastern District of Louisiana for further proceedings and

disposition.

Respectfully submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK (#18495)
JOSEPH G. GLASS (#25397)**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON**
Timothy D. Scandurro #18424
Dewey M. Scandurro #23291
607 St. Charles Avenue
New Orleans, LA 70130
Telephone: (504) 522-7100
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Defendant, Gulf Stream Coach, Inc**

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of March, 2010, a copy of the foregoing Opposition

to Plaintiffs' Motion to Remand was filed electronically with the Clerk of Court using the

CM/ECF system.  Notice of this file will be sent to all known counsel of record by operation of

the court's electronic filing system.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495

20

andreww@duplass.com