**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

**IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

**MDL NO. 07-1873**

**SECTION N-5**

**JUDGE ENGELHARDT**
**MAG. JUDGE CHASEZ**

**THIS DOCUMENT IS RELATED TO:**

***Nunnery, et al. v. Keystone RV Industries., et al., Case No. 09-3871***

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM IN SUPPORT OF "DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS PLAINTIFF DAVID MCGRAW'S FTCA CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION" (Rec. Doc. 12264)**

The United States of America ("United States") submits this Reply Memorandum in support of its "Motion to Dismiss Plaintiff David McGraw's FTCA Claims for Lack of Subject Matter Jurisdiction" (Rec. Doc. 12264). The Court should grant the United States' motion because Mr. McGraw has failed to meet his burden and show that he presented his claim to FEMA within the FTCA's two-year statute of limitations. 28 U.S.C. § 2401(b). Plaintiffs' Steering Committee ("PSC") acknowledges that shortly after he moved into the trailer in July 2006, Mr. McGraw was aware of his injuries, *see* PSC Memo. at 3 (Rec. Doc. 12951), but argue that the June 1, 2009, administrative claim was timely because Mr. McGraw did not actually learn that formaldehyde in the trailer was the cause of his injuries until 2008 when he saw a television advertisement from his counsel soliciting claimants for this lawsuit. *See* PSC Memo. at 3-6. PSC argues that Mr. McGraw's failure to exercise due diligence and investigate his injuries between July 2006 and 2008 should be excused because Mr. McGraw's "injuries [headaches, sinus problems and burning eyes] mimicked those suffered through the normal

course of life," and because as Mr. McGraw testified I was too "busy doing work on the housing [sic], going to work, so [I] didn't have time to put two and two or is the trailer making me sick or none of that." PSC Memo. at 2, 4, 6.

Importantly, this line of argument directly contradicts the purpose of the FTCA's two year statute of limitations – the timely investigation and presentment of potential claims against the Government, *see United States v. Kubrick*, 444 U.S. 111, 117 (1979) – and invites potential claimants who suffer an injury to avoid accrual by "sticking their heads in the sand" and waiting to be passively informed of their claims (such as through lawyer advertisements on television). If a potential claimant suffers an injury – experiencing new physical ailments – the FTCA mandates that the onus is on the potential claimant to begin diligently investigating why they may be experiencing these new physical ailments and whether they may have a potential claim. If this requirement were not in place, a plaintiff could always make the subjective argument that he or she was willfully ignorant in order to avoid accrual.

Moreover, contrary to PSC's assertion, Mr. McGraw's testimony shows that the injuries he claims are well beyond a normal headache or any prior "normal course of life" experience. As Mr. McGraw testified, **"[I]** ***never had sinus like this before, where every day I got to fight for my life just to breathe through my nose***." Exh. 1, McGraw Depo. 243:22-24; he testified that after he moved into the trailer the headaches he experienced were "***different***" and "***more extreme, they last more longer, and just hard to get rid of***." Exh. 1, McGraw Depo. 245:20-23. Further, the fact that Mr. McGraw was busy rebuilding his house and working between July 2006

and 2008, does not relieve him of the obligation to investigate and present a timely claim.[1/] The FTCA's two year statute of limitations is not a draconian rule, it allows potential claimants a full two year period after they realize that they have started to experience a new physical symptom or injury to investigate the potential cause of that symptom or injury and to bring a claim against the Government if they decide such a claim is warranted. This is shown by fact that although Mr. McGraw did nothing to investigate his injuries between discovery of his injuries shortly after he moved into the trailer in July 2006 and June 2008, well before expiration of the two year statute of limitation, he initiated an investigation and on June 23, 2008, hired counsel to pursue his claim and completed an FTCA administrative claim form on that same date, however, his counsel choose not to present that claim to FEMA, but rather postponed presenting a claim until June 1, 2009, well after expiration of the two year statute of limitations. *See* United States' Memo. at 8-9, fn. 7; *see also* Exh. 3, HLC Contract; Exh. 6, June 23, 2008, Adm. Claim.

Further, PSC's argument that Mr. McGraw sustained an ongoing and continuous injury, and, therefore, his claim accrued when he moved out of the trailer is without merit. PSC Memo. at 6-8. This argument has been previously considered and rejected by the Court, and for the same reasons set forth in those Orders should be rejected here.[2/]

---

[1/] *See In re FEMA Trailer Formaldehyde Prod. Liab. Lit.*, 2010 WL 323898 (E.D. La. Jan. 21, 2010) (claim accrued because injury commenced or worsened when he took up residence in the trailer); *In re FEMA Trailer Formaldehyde Prod. Liab. Lit.*, 2010 WL 360361 at *3 (E.D. La. Jan. 22, 2010) (claim accrued because claimant had to stand by door to relieve symptoms).

[2/] *See In re FEMA Trailer Formaldehyde Prod. Liab. Lit.*, 2010 WL 360361 at *4 (rejecting argument that claim did not accrue until Plaintiff Castanel vacated the trailer); *In re FEMA Trailer Formaldehyde Prod. Liab. Lit.,* 2009 WL 2599195 *3 (E.D. La. Aug. 21, 2009) (same holding with respect to Plaintiff Cooper).

**I. Mr. McGraw's Claim Is Untimely Because It Accrued in July 2006, And His Claim Was Presented To FEMA on June 1, 2009, Well Beyond The FTCA Two Year Statute Of Limitations.**

In July 2006, Mr. McGraw had sufficient information regarding injury and causation that would lead a reasonable person to inquire further into the facts to determine the specific cause of the injury.[3/] PSC acknowledges that Mr. McGraw was aware of his injury within three to four weeks of occupying the trailer. PSC Memo. at 3 ("[r]oughly three to four weeks after taking residency in the unit [Mr. McGraw] . . . began to suffer breathing and sinus problems"). Moreover, as explained in the United States' initial Memorandum, on June 23, 2008, well within the two year statute of limitations, well within two years of discovering he had been injured hired counsel to pursue his formaldehyde claims against the Government and also completed a Standard Form 95 seeking $1 million for personal injuries and $1 million for wrongful death. Exh. 3, HLC Contract; Exh. 6, Adm. Claim. However, neither Mr. McGraw nor his counsel presented that claim to FEMA, but rather, his counsel withheld presenting a claim to FEMA until June 1, 2009, and then presented a different Standard Form 95 that sought $140,000 for personal injury and $36,000 for property damage. Exh. 4, Adm. Claim. *See* United States' Memorandum at 8-9 n.2 (Rec. Doc. 12264-1).

Further, there is absolutely no dispute that Mr. McGraw shortly after he moved into the trailer at the end of July 2006 was aware that he had been injured. As he testified:

---

[3/] In fact, around the same time Mr. McGraw was allegedly facing new physical symptoms that directly coincided with his occupancy of a FEMA trailer, thousands of other similarly situated persons had already made a connection between physical symptoms and FEMA trailers and had chosen to pursue claims against the Government. *See Hillard.*, Civ. No. 06-2576 (class action complaint filed May 18, 2006) (Rec. Doc. 1). In this case, rather than initiating an investigation into the cause of his new symptoms, Mr. McGraw chose to ignore the alleged changes in his health.

> In '06, somewhere like July or August, the sinus started flaring up real bad, and I mean real bad, just constantly. After that certain period, every day sinus, where I wake up in the middle of the night because I can't breathe, because my nose is stopped up. Wake up in the morning, I got to blow the mucus out my nose, because I can't breathe. It was an everyday thing ever since then.

Exh. 1, McGraw Depo. 63-64:24-8. Mr. McGraw described the sinus symptoms he suffered after moving into the trailer as "never had sinus like this before, where every day I got to fight for my life just to breathe through my nose." Exh. 1, McGraw Depo. 243:22-24. Mr. McGraw also testified that he suffered unique headache symptoms after moving into the trailer, that he described as "different" and "more extreme, they last more longer, and [are] just hard to get rid of;" and he also testified that he suffered from burning eyes. Exh. 1, McGraw Depo. 245:20-23. Allegedly, Mr. McGraw was suffering physical symptoms like he had never suffered before – the only difference was his living arrangements (the FEMA trailer).

Prior to moving into the trailer, Mr. McGraw had not suffered any of these types of injuries or symptoms. Exh. 1, McGraw Depo. 244-47:2-10; Exh. 2, McGraw PFS at 4. As Mr. McGraw explained: ***"I came down here from Lake Charles, my sinus problem was clear. I stayed at the hotel for five months. I never had a sinus problem. I stayed by my niece a couple of weeks. I never had a sinus problem. So when I got in this trailer for a couple of weeks, my sinus started acting up."*** Exh. 1, McGraw Depo. 246:10-17. Mr. McGraw further explained:

> Q . . . What I gather is these were problems that you never had, though, prior to coming back and moving into the trailer?
>
> A Well, not no everyday sinus problem, where I got to wake up in the middle of the night, spray my nose just so I can breathe, with headaches, sinus pressure headaches. I never had no sinus pressure like this. When I had a sinus problem, my nose run, I would take something and it's gone. ***On this, as soon as I stepped into that trailer, this is an everyday thing. Like I'm talking to you now, my nose is clogged up, I can't breathe.***

***Everything I take, I can't get rid of it.***

Q ***And you didn't have this before you moved into the trailer?***

A ***I never had this problem. I never had the problem. You can ask my sister or anybody at my house. I never was a sick person. I never had to go to the hospital. . . .***

Exh. 1, McGraw Depo. 247-48:24-21.

Notwithstanding the severity of the alleged injuries, Mr. McGraw did nothing to investigate their cause between July 2006 and 2008. For example, though Mr. McGraw believed he had access to free medical care, between July 2006 and 2008, he made no attempt to consult or seek advice from a doctor.

Q But did you go to the doctor?

A See, while I was down here, I didn't go to the doctor, because they didn't have no doctors down here at the time.

Q There were no doctors you could go to in New Orleans?

A They had some doctors down in like clinics they set up around the neighborhood, but I didn't go to none of them.

Q And if you had gone to those, would those have been free clinics?

A Yeah, they probably was, because I think it was FEMA that set them up.

Q So when you came back, you lived in your trailer, you had sinus problems, you could have gone to a doctor?

A Yeah, but I decided I didn't know what it was. . . .

Exh. 7, McGraw Depo. 294-95:24-16. As Mr. McGraw explained, the reason he failed to investigate is because he was too busy doing other things.

Q And you never had any of those problems before you moved into the trailer, correct?

A No.

Q And so moving into the trailer is what started those symptoms, right?

A ***Yeah, but I still ain't never put two and two together, because I was just – Like I said, I was busy doing work on the house, going to my work, so I didn't have time to try to put two and two or is the trailer making me sick or none of that.***

Exh. 7 McGraw Depo. 262-63:21-7; *see also Id*. 179:3-8 (Mr. McGraw explain that he did not review warning in the owner's manual that chemicals in trailer can cause sinus problems and burning eyes because "I [was] mostly working and stuff. I didn't really have time, because I was trying to do this and get the other house gutted out and stuff, going to work").

Although Mr. McGraw now argues that he subjectively never drew a connection between these new physical injuries and his occupancy of a FEMA trailer (despite the obvious temporal relationship between the two), by any objective measure, Mr. McGraw had enough information in his possession in 2006 to begin investigating whether he had a claim against the Government. While Mr. McGraw stood idle, thousands of similarly situated individuals – including national and local media reports – had already drawn a connection between alleged health effects (similar to those complained of by Mr. McGraw) and the occupancy of FEMA trailers. Even aside from the broad publicity of the FEMA/formaldehyde issue during this time period, had Mr. McGraw simply paused to consider that all of his allegedly new physical symptoms coincided with his occupancy of the FEMA trailer, there is no doubt, by any objective measure, that Mr. McGraw was armed with the facts necessary to consider the possibility of a claim. The FTCA does not excuse individuals who – although they are given two years from the date of injury – do not diligently investigate whether they have claims against the Government for injuries.

PSC's request that this Court excuse Mr. McGraw's failure to investigate his injuries is inconsistent and at odds with the discovery rule articulated in *United States v. Kubrick*, 444 U.S. 111 (1979), which requires a claimant to exercise due diligence in investigating the potential causes of an injury. In *Kubrick*, the Supreme Court explicitly rejected the type of argument that PSC is making here in finding that a plaintiff need not know that an injury was negligently inflicted for a claim to accrue; the Court held that a plaintiff need only have sufficient information regarding injury and causation that would lead a reasonable person to inquire further into the facts.

> We thus cannot hold that Congress intended that "accrual" of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff . . . armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. ***To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.***

*Id*. at 123. Here, Mr. McGraw was on notice of the development of unique physical symptoms that he had never previously experienced shortly after moving into the trailer. A reasonable person would have investigated those symptoms to determine whether they were related to the trailer. The fact that Mr. McGraw failed to do so, cannot delay accrual of the cause of action. PSC's construction of the FTCA's statute of limitations would obviate the necessity of due diligence, as it would allow a claimant to delay accrual of the FTCA's statute of limitations indefinitely by simply ignoring the injury. This Court must reject such a construction.

The Fifth Circuit's application of the FTCA discovery rule in *Hoskins v. United States*, No. 01- 30428, 2001 WL 1692434 at *1 (5th Cir. Nov. 21, 2001), is instructive. In that case plaintiffs brought an FTCA claim for damages resulting from Formosan termites. *Id*. Plaintiffs

asserted that their claim against the United States accrued when they discovered that the injury was caused by the government's introduction of Formosan termites into the New Orleans area. *Id*. The Fifth Circuit explained, that it had:

> [Y]et to hold that the "discovery rule" applies to an FTCA claim in a context similar to this case. Even if we had, however, ***the discovery rule would not apply unless Appellants could establish that they were unaware of, and had no reasonable opportunity to discover, the critical facts of their injury and its cause***.

*Id*. Dismissing plaintiffs' argument, the court held that the claim was time barred because the publication of newspaper articles on potential cause of Formosan termites in the New Orleans area demonstrated that information regarding the cause of the injury was available and had plaintiffs exercised due diligence they could have ascertained the cause of the injury, but had failed to do so. *Id*.

Dismissing Christopher Cooper's FTCA claims this Court ruled that:

> Cooper and Alexander both noticed an irritating chemical smell in the EHU and experienced physical symptoms such as burning sensation in the nose, sneezing, and itchy eyes from the very first day they moved into the EHU . . . ***Even though Alexander did not immediately know the exact cause of her and Cooper's physical symptoms, she was aware that they either began . . . or worsened . . . when they initially took up residence in the EHU.*** The Court concludes that this was sufficient information regarding injury and causation that would lead a reasonable person to inquire further in the facts to determine the specific cause of the injury.

*In re FEMA Trailer Formaldehyde Prod. Liab. Lit.,* 2009 WL 2599195 at *3 ("plaintiff need only have sufficient information regarding injury and causation that would lead a reasonable person to inquire further into the facts to determine the specific cause of the injury").

In the instant case, Mr. McGraw's claim accrued in July 2006; at that time he was aware of his injury, and had he exercised due diligence – consulted a doctor or lawyer – he could have

ascertained whether the trailer was a potential cause of his injury. *See In re FEMA Trailer Formaldehyde Prod. Liab. Litig.,* 2009 WL 2599195 at *3. Moreover, PSC's argument that Mr. McGraw had no reason to associate the injuries with formaldehyde or the trailer because his headache, sinus problems and burning eyes "mimicked those suffered through the normal course of life," *see* PSC Memo. at 2, 3, 5, is not supported by the record:

*** Prior to moving into the trailer Mr. McGraw had never before suffered any such injury or illness. Exh. 1, McGraw Depo. 244-47:2-10; Exh. 2, McGraw PFS at 4.

*** The injuries occurred shortly after Mr. McGraw moved into the trailer, and as he explained, **"as soon as I stepped into that trailer, this is an everyday thing. Like I'm talking to you now, my nose is clogged up, I can't breathe,."** Exh. 1, McGraw Depo. 248:11-14.

*** The alleged injuries according to Mr. McGraw's were severe – **"*never had sinus like this before, where every day I got to fight for my life just to breathe through my nose*,"** Exh. 1, McGraw Depo. 243:22-24, and headaches that he described as "***different***" and "***more extreme, they last more longer, and just hard to get rid of***." Exh. 1, McGraw Depo. 245:17-25.

*** On May 18, 2006, more than two months before Mr. McGraw moved into the trailer, the first Class Action Complaint was filed asserting claims on behalf of all trailer occupants for the type of injuries alleged by Mr. McGraw. *See Hillard*, Civ. No. 06-2576 (Rec. Doc. 1).

*** The Keystone Trailer Owner's Manual that Mr. McGraw received when he moved into the trailer and that he was instructed to review contained a section entitled **"Chemical Sensitivity Issues**." Exh. 8, Keystone Manual at MCGRAW000113. That section warned that "Many individuals are sensitive to the out-gassing from common construction materials used in the construction of RV's. This occurs most frequently in hot weather and after a unit has been closed up for extended periods. ***Chemical sensitivity is an individual reaction.*** Common symptoms include, but are not limited to ***burning eyes, respiratory irritations***, and other allergic reactions . . . **Suggested Solution:** Frequent fresh air ventilation. Open the windows and roof vents when possible." Exh. 8, Keystone Manual at MCGRAW000113;[4/] *see also* Exh. 7, McGraw Depo. 200-01:8-8 (in July 2006

[4/] The Keystone warning also provided that: "A common myth is that formaldehyde is used in the manufacturing paneling and other building materials. *Keystone RV* ***does not*** *use products containing*

when he took possession of the trailer Mr. McGraw was instructed to read and review the owners' manual).[5/]

*** In August/September 2006 FEMA issued a Formaldehyde Brochure detailing potential health concerns associated with exposure to formaldehyde in travel trailers which was distributed to trailer occupants in New Orleans area. *See* Exh. 9, Dec. Bonomo ¶¶2-6 (Rec. Doc. 2718-9); Exh. 10, Formaldehyde Brochure.[6/]

Had Mr. McGraw in July 2006 put even minimal effort into attempting to ascertain the cause of his injury, there was a plethora of information available that would have allowed him to identify that formaldehyde in the trailer was a potential cause of his injuries. This is confirmed by the fact that on June 23, 2008, Mr. McGraw, well within the two year statute of limitations, was able to hire counsel simply by responding to a plaintiffs' counsel's television advertisement. Exh. 1, McGraw Depo. 256:3-8; Exh. 3, HLC Contract; Exh. 7, McGraw Depo. 250-52:4-1.

Moreover, PSC implies that the application of the FTCA's two year statute of limitations to bar Mr. McGraw's action creates a draconian rule and unfairly punishes Mr. McGraw for failing to investigate his injuries. PSC's argument is misplaced. The FTCA grants a claimant a two years to commence the investigation and file a claim. In the instant case, on June 23, 2008, well within the two year statute of limitations, Mr. McGraw took action and hired counsel to pursue his formaldehyde claims, and on that same date completed an FTCA administrative claim form – a claim his counsel failed to present to FEMA. *See* United States' Memo. at 8-9, fn. 7; *see*

---

*formaldehyde.*" Exh. 8, Keystone Manual at MCGRAW000113.

[5/] Mr. McGraw testified that the first time he read this section of the owners' manual was at his deposition, and that he failed to read it early because he was too busy. *See* Exh. 7, McGraw Depo. 175-79:15-12; 179:3-8 ("I mostly working and stuff. I didn't really have time, because I was trying to do this and get the other house gutted out and stuff, going to work"); 296-97:3-13 (first time Mr. McGraw reviewed section of owner's manual addressing chemical sensitivity was at the deposition).

[6/] Mr. McGraw testified that he never received or saw the FEMA formaldehyde brochure prior to his deposition. Exh. 7, McGraw Depo. 277-78:6-1.

*also* Exh. 3, HLC Contract; Exh. 6, June 23, 2008, Adm. Claim. Mr. McGraw's claim is time barred not because he failed to initiate, investigate, and seek advice within the allotted two year period, but rather because his counsel failed to promptly present his claim to FEMA.

Finally, contrary to the PSC's assertion, the Fifth Circuit's decision in *MacMillan v. United States*, 46 F.3d 377, 381 (5th Cir. 1995), does not stand for the proposition that the FTCA's statute of limitations begins to run when Mr. McGraw learned in 2008 that the trailer and/or formaldehyde was "***the cause***" of his injuries. *See* PSC Memo. at 3-4.[7] Instead, in *MacMillan*, the Fifth Circuit held that the statute begins to run when a plaintiff has sufficient information to ***make an inquiry*** regarding the specific cause of the injury. *See* 46 F.3d at 381. In *MacMillan*, the Court found that the statute of limitations started when the plaintiff's parents received a report, noting that the plaintiff had likely suffered "anoxia at birth" and resulting neurological damage (knowledge of physical injury), which provided "facts sufficient to compel a reasonable person to seek professional advice regarding [the plaintiff's] neurological difficulties and the connection, if any, to the problems associated with her birth." *Id.* Thus, knowing, or having reason to know, the precise cause of injury was not necessary; instead,

---

[7] PSC's reliance upon *Urie v. Thompson*, 337 U.S. 163 (1949), and *Stoleson v. United States*, 629 F.2d 1265 (7th Cir. 1980), is also misplaced. *See* PSC Memo. at 2-3. The Supreme Court decision in *Urie* applied the discovery rule in the context of a latent injury, and ruled that the claim did not accrue until the injury manifested itself because until that time the injury was "unknown and inherently unknowable." *Id*. at 170. Mr. McGraw's injuries were manifest – known and knowable – in July 2006 well more than two years before his claim was presented to FEMA.

Similarly, the Seventh Circuit's decision in *Stoleson* does not support PSC's argument that Mr. McGraw exercised due diligence to determine the cause of his injury between July 2006 and 2008. In *Stoleson* the plaintiff sought professional advice from numerous physicians on multiple occasions who advised her that medical science did not recognize a causal connection. 629 F.2d at 1270. In contrast, Mr. McGraw conducted no such investigation between July 2006 and 2008. In June 2008, when he did seek professional advice, he promptly discovered that lawyers were asserting claims based upon purported causal connection between the travel trailers, formaldehyde and injuries like his.

objectively having enough information regarding injury and cause (in *MacMillan,* knowledge of a potential cause) to begin an inquiry will start the limitations period. *See also Johnson v. United States*, 460 F.3d 616, 622 (5th Cir. 2006) (analyzing *MacMillan* and holding that knowledge of a potential cause or facts that would lead a reasonable person to inquire into specific causation is sufficient to begin the FTCA's statute of limitations).

Here, Mr. McGraw knew or through exercise of due diligence could have discovered in July 2006 that the cause of his symptoms was formaldehyde in the trailer; this knowledge was sufficient to start the limitations period even if he was unaware of the precise causal agent, namely, the formaldehyde emissions in the trailer. The alleged obvious change in symptoms he experienced roughly at the same time he began to occupy the trailer constituted more than enough information for Mr. McGraw to make an inquiry into the cause of the changes in his health. To allow Mr. McGraw to postpone accrual until he passively was informed of the detailed facts related to the specific agent of causation would be contrary to the purpose of the FTCA's two-year statute of limitations which "is to require the reasonably diligent presentation of tort claims against the government." *Kubrick*, 444 U.S. at 123. Where all of the information regarding a potential claim is readily available to a plaintiff, accrual should not be postponed on account of the plaintiff's disinterest in investigating his or her potential claim.[8/] Accordingly, the Court lacks subject matter jurisdiction because Mr. McGraw's claim is barred by the FTCA two-year statute of limitations. 28 U.S.C. § 2401(b). Specifically, FEMA received Mr. McGraw's

---

[8/] Again, all Mr. McGraw had to do in 2006 was tell someone that ever since he had moved into his FEMA trailer, he had started to experience different physical symptoms. In addition, due to the firestorm of media attention regarding formaldehyde in FEMA trailers, it strains belief that somehow this topic never came to his attention until 2008. It certainly would have come to his attention had he read/seen news reports or visited a doctor/lawyer.

administrative claim on June 1, 2009, more than two years after his claim accrued in July 2006.

## II. PSC's Contention That The Injury Was Ongoing And Continuous Does Not Delay The Running Of The FTCA's Statute Of Limitations.

Contrary to PSC's assertion, the running of the FTCA's statute of limitations is not delayed by virtue of an injury being ongoing and continuous. *See* PSC Memo. at 6-8. In dismissing Christopher Cooper and Earline Castanel's FTCA claim, this Court rejected this exact same argument, ruling that because the discovery rule of accrual for the FTCA's statute of limitations hinges on notice, it is not necessary for the plaintiff to be aware, or have suffered, the full extent of his injuries for the limitations period to begin. *See In re FEMA Trailer Formaldehyde Prod. Liab. Lit.*, 2010 WL 360361 at *4 (citing *Beech v. United States*, 345 F.2d 872, 874 (5th Cir. 1965) (statute of limitations for an FTCA claim accrues when "some damage is discernable," even though the "ultimate damage is unknown or unpredictable")).

Moreover, Following the PSC's logic, the claims of trailer occupants would not accrue until the last day that each occupant lived in the trailer. This cannot be correct as a matter of law or common sense. Indeed, many plaintiffs have filed lawsuits or administrative claims with the Government while still living in their trailers. Clearly, a claim must accrue when a plaintiff is on notice of an injury and has objective reason to believe that the injury may be related to the trailer.

Furthermore, PSC's continued reliance on *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223 (5th Cir. 1984), is misplaced and has been previously rejected by this Court.[9/] PSC erroneously asserts that in *Albertson* the court held that under a "time of event" rule in a toxic

---

[9/] *See In re FEMA Trailer Formaldehyde Prod. Liab. Lit.*, 2010 WL 360361 at *4 (rejecting argument that claim did not accrue until Ms. Castanel vacated the trailer); *In re FEMA Trailer Formaldehyde Prod. Liab. Lit.,* 2009 WL 2599195 *3 (same).

exposure case, a plaintiff's cause of action does not accrue until the time of the "last exposure." PSC Memo. at 7. As an initial matter, *Albertson* was not an FTCA case. Moreover, PSC has only provided the Court with a selected portion of the relevant quote. The full quote states, "Albertson possessed the critical facts of his injury and its cause at the time he endured the last exposure to the TCE. ***At that time he suffered serious damage and noteworthy injury, and he knew the injury was significant***." 749 F.3d at 233. Thus, the court in *Albertson* found that the plaintiff's claim accrued at the time of his last exposure on a ship because it was at that point in time when the plaintiff suffered a "noteworthy injury" and "knew the injury was significant." *Id*. It was not the end of exposure that was important, but rather the suffering of an injury that put the plaintiff on notice. In comparing this case to the FTCA's statute of limitations, the important point is that the plaintiff's claim accrued when he, having suffered a significant, noteworthy injury, "either possessed or had a reasonable opportunity to discover the critical facts of his injury and its cause." *Id*. In the instant case, Mr. McGraw presented with symptoms or "noteworthy injury," in July 2006, and thus, his claim accrued in July 2006.

Finally, a claim of continuous injury cannot be sustained in this case because, once an occupant is aware that he or she has suffered an injury related to the trailer, the occupant can simply move out of the trailer to avoid further injury. The United States cannot be held liable for a "continuous injury" under circumstances where a person has voluntarily subjected himself or herself to a continuous exposure which he or she knows to be injurious.

**CONCLUSION**

For all of the foregoing reasons, the Court should grant the United States' Motion and dismiss Mr. McGraw's FTCA claims for lack of subject matter jurisdiction.

Dated: March 22, 2010.

Respectfully Submitted,

TONY WEST
Assistant Attorney General, Civil Division

J. PATRICK GLYNN
Director, Torts Branch, Civil Division

DAVID S. FISHBACK
Assistant Director

OF COUNSEL:

JORDAN FRIED
Associate Chief Counsel

JANICE WILLIAMS-JONES
Senior Trial Attorney
Federal Emergency Management Agency
Department of Homeland Security
Washington, D.C. 20472

ADAM BAIN
Senior Trial Counsel

MICHELLE BOYLE
ADAM DINNELL
MICHELE GREIF
JONATHAN WALDRON
Trial Attorneys

//S// *Henry T. Miller*
HENRY T. MILLER (D.C. Bar No. 411885)
Senior Trial Counsel
United States Department of Justice
Civil Division – Torts Branch
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20004
Telephone No: (202) 616-4223
E-mail: Henry.Miller@USDOJ.Gov

Attorneys for the United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

*//S// Henry T. Miller*
HENRY T. MILLER (D.C. Bar No. 411885)