UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                      MDL NO. 07-1873
FORMALDEHYDE
PRODUCTS LIABILITY LITIGATION       SECTION N-5
                                                        JUDGE ENGELHARDT
                                                        MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:

*Lyndon Wright v. Forest River, et al.*, No. 09-2977 (E.D. LA)

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA'S REPLY MEMORANDUM IN
SUPPORT OF "UNITED STATES OF AMERICA'S MOTION FOR AN AWARD OF
COSTS" (Rec. Doc. 11936)

In their Opposition to the United States of America's ("United States") Motion for an Award of Costs (Rec. Doc. 12963) ("PSC Memo."), Plaintiffs' Steering Committee ("PSC") concedes that the United States, as a prevailing party under Fed. R. Civ. P. 54, is presumptively entitled to costs incurred in defending against Lyndon Wright's FTCA claims. Nevertheless, they argue: (1) that certain expenses claimed by the United States are improper in this case; and (2) that, despite the United States' prevailing party status under Rule 54, special factors counsel against a cost award in this case. For the following reasons, PSC's arguments lack merit.

ARGUMENT

I.     The Costs The United States Seeks Are Reasonable And Appropriate In This Case.

        A.     Expert Witness Fees Incurred To Defend Against Plaintiff's Mold Claim.

In July 2009, the United States hired Dr. Bruce Kelman for the sole purpose of defending against the mold claims that the Court in July 2009 allowed PSC to assert. PSC now argues that allowing the United States to recover costs associated with Dr. Kelman could lead to a "slippery

slope" that "will dramatically change the face of this litigation" and costs associated therewith by allowing the prevailing party to seek and recover expert witness fees. PSC Memo. at 8. PSC misstates the United States' request. Through its Motion the United States only seeks to recover the costs of one expert, Dr. Kelman, whose only assignment in this litigation was to investigate and address whether Mr. Wright's injuries resulted from his alleged exposure to mold. This is because of the unique circumstances under which that particular claim was brought, and subsequently dismissed by the Court. These unique circumstances were recently addressed by the Court in its Order and Reasons granting the private Defendants' summary judgment Motion with respect to Plaintiff's mold claim, where the Court, consistent with its previous instruction to PSC regarding that claim, ruled that Defendants are entitled to the costs of all expert fees related to mold testing and analysis. As the Court explained:

> [A] significant portion of Defendant's motion was spent arguing that all claims for damages arising from Plaintiff's alleged mold exposure in the EHU must be dismissed due to a lack of causation testimony. (See Rec. Doc. 10933, pp. 16-19). As Defendants note in their Reply, Plaintiff failed to address this issue in his 18-page Opposition. Indeed, the word "mold" does not appear anywhere therein. Finding Defendants' unopposed arguments in this regard to have merit, this Court grants this motion. ***Further, based on Plaintiff's vigorous argument, which he ultimately won, to have mold exposure claims added to this bellwether trial and Defendants' adamant arguments to the contrary, including those relating to the increased cost of litigation expenses relating thereto, the Court finds it appropriate to award Defendants the cost of all expert fees related to mold testing and analysis, as well as the fees for the expert reports that were generated based on such testing and analysis***.

Rec. Doc. 12049 at 2 (emphasis added).

PSC further argues that it should not be required to reimburse the United States for Dr. Kelman's costs and expenses because "there is no evidence" that the claim was brought "in bad

faith" or that Plaintiff or his counsel "disobeyed a court order."  PSC Memo. at 6-8.[1]  PSC's argument is simply not supported by the record.  As an initial matter, in July 2009, PSC in its effort to reverse the Court's multiple rulings denying PSC's requests to add claims for exposure to mold, implied to the Court and the parties that they had already investigated Mr. Wright's mold claim and were prepared to offer expert testimony sufficient to establish a *prima facia* claim on that issue.  PSC compounded its action by agreeing to the Court's instruction to voluntarily dismiss the mold claim if their experts were unable to establish a *prima facia* case, and then failed to comply with that instruction, instead, requiring the Defendants to hire experts, submit expert reports, and file a Motion for summary judgement, which PSC simply chose to ignore and not oppose.  *See* Doc. Rec. 2625-1, Status Conference Tr. 36:20-25; 48:21-25; 49:10-13; Rec. Doc. 12049 at 2.  The colloquy between the Court and PSC at the July 2009 conference on this issue is instructive:

> COURT: You've made an allegation about mold, I hope under Rule 12 you've got some basis to make that allegation.  You should already have a lot of information on that.  You're asking me to allow this amended complaint, I hope you've already done your homework to a large degree.
>
> MR. D'AMICO: We have, Judge.
>
> \* \* \*

---

[1] A prevailing party is entitled to a cost award under Rule 54 regardless of whether the losing party's claim was brought in good faith.  *See Brown v. Wilson County*, 2003 WL 1524563, \*1 (5th Cir. 2003) (district court erred in refusing to award costs because the plaintiffs' action was not frivolous).  A contrary result would eviscerate Rule 54's presumption in favor of awarding costs to prevailing parties.  Moreover, PSC and other Plaintiffs' counsel have been well aware of the FTCA's jurisdictional requirements, *i.e.*, what they must do in order to sue the United States in tort, long before the *Wright* case began.  *See* Joint Report No. 1, § 5, p. 2.  PSC's desire to prosecute Mr. Wright's claim, and/or preserve appellate review of that claim (*see* PSC Memo. at 7), despite information indicating the claim would be unsuccessful, should not serve as a basis to deny the cost award the United States seeks.

3

>COURT:     Frank, all I can tell you, cautionary word, if you do not
>           have an expert who can help you with your burden of
>           proof, I would expect you to abandon the claim with regard
>           to mold exposure.
>
>MR. D'AMICO:  Absolutely.
>
>                         * * *
>
>COURT:     [Y]ou better be prepared to meet that burden. And if you
>           can't, I would expect you to abandon the claim, sooner
>           rather than later.
>
>MR. D'AMICO:  Absolutely, Judge.

Doc. Rec. 2625-1, Status Conference Tr. 36:20-25; 48:21-25; 49:10-13.

Further, contrary to PSC's suggestion (PSC Memo. at 8), the fees the United States incurred in retaining Dr. Kelman were reasonable. On July 17, 2009, the Court allowed PSC to add the mold claim to Mr. Wright's case. Rec. Doc. 2201. Within days of that decision, the United States retained Dr. Kelman, specifically to assist in its defense against the mold claim. *See* Doc. Rec. 11936-5, Kelman Invoices. In other words, Dr. Kelman would not have been retained *at all* in the absence of the Court's Order allowing PSC to amend Mr. Wright's Complaint to add claims for injuries resulting from exposure to mold. *See* U.S. Exh. 1, Expert Report of Bruce Kelman at KELMAN-000001 ("I have been asked to provide an expert opinion as a toxicologist regarding human health effects from indoor exposure to mold spores and myotoxins. . . . myotoxins are toxins produced by molds."); Exh. 2, Kelman Dep. Tr. 84:25-85:25, 86:7-12, 101:15-22; 118:8-120:15; 124:10-13 (stating that Dr. Kelman's opinions relate to mold as opposed to formaldehyde).[2]

---

[2] Notably, at Dr. Kelman's deposition, PSC addressed formaldehyde more often than it addressed mold. *See* Exh. 2, Kelman Dep. Tr. at 180, 185.

Moreover, Dr. Kelman has a doctorate degree in toxicology, is certified by the American Board of Toxicology, and possesses several appointments and has authored numerous publications in his fields of expertise. *See* Exh. 1, Kelman Resume, KELMAN-000029-41. Dr. Kelman's hourly rate of $425 is reasonable in light of the up to $600 hourly rate charged by PSC's experts retained to address causation issues. *See* Exh. 2, Kelman Dep. Tr. at 23:25-24:1; Exh. 3, Spector. Dep. Tr. 147:11-148:21; Exh. 4, Miller Dep. Tr. 116:6-16. Accordingly, Dr. Kelman's fees are reasonable in light of his area of expertise, the education and training associated therewith, the prevailing rates of other comparable experts, the nature and quality of his work, and the fee actually charged. *See* PSC Memo. at 8; *Williams v. M-I, LLC*, No. 05-0404, 2006 WL 2604672, at *1 (W.D. La. Sep. 8, 2006). For the above reasons, the Court should award the United States **$130,072.95**, which constitutes all costs it incurred as a result of having to hire Dr. Kelman to defend against PSC's spurious mold claims.[3]

### B. Costs for Deposition Transcripts.

PSC argues that the United States is not entitled to reimbursement for deposition costs incurred after it filed its Motion to Dismiss, claiming that the "depositions were not necessary to the United States' motion to dismiss." PSC Memo. at 9-10. PSC misstates the legal standard for reimbursement of deposition costs under 28 U.S.C. § 1920, which is whether, at the time the deposition was taken, it could reasonably have been expected to be used for trial preparation. *See Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991); *Zapata Gulf Marine Corp. v.*

---

[3] To the extent PSC asserts that the United States may only recover discovery-related costs or expenses relating to Dr. Kelman (*see* PSC Memo. at 8), the United States disagrees with PSC's assertion. However, if the Court were to determine that the United States is only entitled to such costs, the subset of fees relating to Dr. Kelman, which were incurred specifically for responding to discovery, total $84,681.25. Such fees are itemized on pages 1, 2, 9, 11, 13, and 15 of Exhibit 2 to the United States' Motion for an Award of Costs (Rec. Doc. 11936-5).

*Puerto Rico Maritime Shipping Auth.*, 133 F.R.D. 481 (E.D. La. 1990). PSC suggests that the United States should have simply abandoned its trial preparation efforts once it filed its Motion to Dismiss Mr. Wright's FTCA claims. PSC Memo. at 9-10. PSC's argument in this regard is nonsensical. Given the aggressive Scheduling Order in this case and the fact that PSC opposed the United States' Motion to Dismiss, it was impossible for the United States to simply abandon trial preparation and assume that the Court would grant the Government's Motion. The United States, however, agrees with PSC that it is not entitled to costs for depositions that were taken after the Court granted the United States' Motion to Dismiss (*see* PSC Memo. at 9), and hereby withdraws its request for copies of deposition transcripts taken after its dismissal (totaling $1,208.00). The United States therefore reduces the deposition fees it seeks, to **$24,395.26**.

      **C.**    **Witness Fees.**

PSC also argues that the United States should not be awarded costs under 28 U.S.C. § 1821 for making the witnesses Brian Boyle and Mark Polk available because Brian Boyle's deposition was not noticed by PSC, and because Mark Polk is an expert, whose "sitting" fee already should have been paid by PSC. PSC Memo. at 10. Accordingly, the United States withdraws its requests for witness fees for Brian Boyle and Mark Polk, which totaled $80.00.

**II.**    **The United States As a Prevailing Party Is Entitled to Costs in This Case.**

Under Rule 54, there is a "strong presumption" that costs are to be awarded to a prevailing party, and the failure to award them is "in the nature of a penalty." *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985); *Walters v. Roadway Express, Inc.*, 557 F.2d 521, 526 (5th Cir. 1977). Therefore, a court must provide reasons for failing to award costs to a prevailing party. *Walters*, 557 F.2d at 526; *Hall v. State Farm Fire & Casualty Co.*, 937 F.2d

210, 216-17 (5th Cir. 1991).

Despite this strong presumption, PSC argues that special factors counsel against a cost award in this case. PSC Memo. at 11-12. Specifically, PSC argues that the Court should not award costs because Mr. Wright cannot afford to pay them. However, the authority relied upon by PSC (*see* PSC Memo. at 11) does not support their argument. In *Chapman v. AI Transport*, the court stated:

> when awarding costs a district court should not consider the relative wealth of the parties. [Doing so] would unduly prejudice parties with assets and undermine "the presumption that Rule 54(d)(1) creates in prevailing parties' favor, and . . . the foundation of the legal system that justice is administered to all equally, regardless of wealth or status." ***Even in those rare circumstances where the non-prevailing party's financial circumstances are considered in determining the amount of costs to be awarded, a court may not decline to award any costs at all.***

229 F.3d 1012, 1039 (11th Cir. 2000) (internal citations omitted) (emphasis added). Even where courts have considered a losing party's financial resources in deciding whether to award costs to the prevailing party, that consideration was simply one of several other factors in the decision, none of which applies in this case.[4] For these reasons, Mr. Wright's financial position should not bear on the Court's consideration of a cost award in this case.[5]

---

[4] In *Association of Mexican-American Educators (AMAE) v. California*, 231 F.3d 572 (9th Cir. 2000), the Court stated it was not "attempting to create an exhaustive list of 'good reasons' for declining to award costs" in light of the "presumption in favor of awarding costs to prevailing parties." *Id.* at 593. Instead, it simply held that "the reasons that the district court gave for refusing to award costs in this case were appropriate," which included the parties' relative wealth in light of other factors such as the importance of the case and the closeness and complexity of its issues. *Id.* Similarly, in *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926 (7th Cir. 1997), the court's statement regarding the ability to pay was merely *dictum*, where the court affirmed the district court's cost award to the prevailing party. *Id.* at 945-46.

[5] As noted above, it is dubious whether a losing party's financial resources may play a role in courts' consideration of cost awards under Rule 54. Additionally, in this case, it appears that PSC may have private, contractual agreements with their clients providing that the clients will not ultimately bear the costs of their litigation if it is unsuccessful. *See*, *e.g.*, Exh. 5, Contingent Fee Retainer agreement

7

PSC also argues that it should not pay costs because of the importance of this case. PSC Memo. at 12. However, the case upon which PSC relies in support of their argument, *AMAE*, is inapplicable because it involved a class action. 231 F.3d 572. The *AMAE* litigation was held to be "extraordinarily important" because "tens of thousands of Californians," the class members, would be affected by its outcome. *Id.* at 593. By contrast, in the instant case the Court denied class certification, and although Mr. Wright's trial is designated as a "bellwether" trial, it is a single personal injury case that adjudicated his individual claims against the United States, and had no legal effect upon the claims of any other plaintiff who has filed suit against the United States. *See* Order and Reasons, Rec. Doc. 1015.

PSC further argues that it should not pay costs because the issues in this case were "close and complex." PSC Memo. at 11. However, PSC's authority in this regard is distinguishable. *See White & White*, *Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 732-733 (6th Cir. 1986) ("In its memorandum opinion denying costs to [the prevailing party], the district court observed that the case involved complex issues requiring protracted litigation. Indeed, the matter consumed 80 trial days, required 43 witnesses, produced 800 exhibits, generated almost 15,000 pages of transcript, and begat a 95 page opinion."). By contrast, this case involved the straightforward application of the FTCA's exhaustion and statute of limitations provisions, which had been the subject of previous rulings in this litigation. *See* Order and Reasons at 5-9 (Rec. Doc. 10493); *see also In re FEMA Trailer Formaldehyde Prod. Liab. Lit.,* 2009 WL 2599195, *3 (E.D. La. Aug. 21, 2009) (ruling that Chris Cooper's claim is barred by the FTCA

---

between plaintiff Earline Castanel and her Counsel. If Mr. Wright and his Counsel have such an agreement, then PSC's arguments in this regard are disingenuous (*see* PSC Memo. at 11-12) and should not prevent this Court from entering a cost award against Mr. Wright and in favor of the United States, the prevailing party in this case, under Rule 54.

two-year statute of limitations); Order and Reasons at 2-3 (*Aldridge*, No. 07-9228) (Rec. Doc. 2323) (denying leave to amend complaint to sue the United States where claimants had not exhausted their administrative remedies under the FTCA).  Moreover, Plaintiff's mold claim, which generated the vast majority of costs the United States seeks, clearly was not close or complex – in fact, its dismissal was uncontested by PSC.  *See* Rec. Doc. 12049 at 2.  Accordingly, the special factors advanced by PSC as justification to deny a cost award to the United States as the prevailing party under Rule 54, despite the strong presumption to award those costs, simply do not apply here.

Finally, PSC requests that any cost award should be apportioned among all plaintiffs in this litigation.  PSC Memo. at 12-13.  In response, the United States notes that under Rule 54, it is the losing party who is responsible for paying costs to the prevailing party.  Accordingly, the United States believes that costs should be awarded against Mr. Wright.  The United States should not be required to expend resources attempting to recover the costs from the numerous plaintiffs who have filed suit, some of whom may not even be aware that their counsel have brought actions against the United States.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court award it costs in the amount of **$154,468.21**.

Dated:  March 23, 2010.                                        Respectfully Submitted,

| | |
|---|---|
| TONY WEST | ADAM BAIN |
| Assistant Attorney General, Civil Division | HENRY T. MILLER |
| | Senior Trial Counsel |
| | |
| J. PATRICK GLYNN | ADAM DINNELL |
| Director, Torts Branch, Civil Division | MICHELE GREIF |
| | JONATHAN WALDRON |
| DAVID S. FISHBACK | Trial Attorneys |
| Assistant Director | |
| | |
| OF COUNSEL: | *//S// Michelle Boyle* |
| | MICHELLE BOYLE (Va. Bar No. 73710) |
| JORDAN FRIED | Trial Attorney |
| Associate Chief Counsel | United States Department of Justice |
| | Civil Division – Torts Branch |
| JANICE WILLIAMS-JONES | P.O. Box 340, Ben Franklin Station |
| Senior Trial Attorney | Washington, D.C. 20004 |
| Federal Emergency Management Agency | Telephone No:  (202) 616-4447 |
| Department of Homeland Security | E-mail:  Michelle.Boyle@USDOJ.Gov |
| Washington, D.C. 20472 | |
| | Attorneys for the United States of America |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

*//S// Michelle Boyle*
MICHELLE BOYLE (Va. Bar No. 73710)