UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE | * | |
| | PRODUCTS LIABILITY | * | |
| | LITIGATION | * | SECTION: N(5) |
| | | * | |
| This Document Relates to: *Lyndon T. Wright v.* | | * | JUDGE ENGELHARDT: |
| *Forest River, Inc., et al*, Docket No. 09-2977 | | * | |
| | | * | MAG: CHASEZ |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW AGAINST FOREST RIVER, INC. AS TO THE GOVERNMENT CONTRACTOR DEFENSE AND SOPHISTICATED PURCHASER/USER**

**MAY IT PLEASE THE COURT:**

Defendant Forest River, Inc. ("Forest River") respectfully submits this memorandum in opposition to plaintiff's Motion for Judgment as a Matter of Law regarding the government contractor and sophisticated purchaser/user defense.

As a preliminary matter, it should be noted that, despite plaintiff's arguments to the contrary, there are no "new" interpretations of the government contractor defense that the Court somehow overlooked in *Alexander*.[1]  Both the government contractor and sophisticated purchaser defenses are

---

[1] In oral argument on this motion, plaintiff's counsel referred to the case of *Trevino v. General Dynamics Corp.*, 865 F.2d 1474 (5th Cir. 1989) as justification for re-visiting the government contractor issue.  It should be noted, however, that *Trevino* was referred to extensively throughout plaintiff's Opposition to Forest River's Motion for Summary Judgment on the government contractor defense (Rec. Doc. 11541).

appropriate in this case and supported by the factual evidence presented at trial. Plaintiff's motion for judgment as a matter of law should be denied accordingly.

I.   **Judgment as a Matter of Law Standard**

In entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-151, 120 S.Ct. 2097, 2110 (2000). In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.*

II.   **Forest River is a government contractor.**

Plaintiff argues that Forest River failed to satisfy the three criteria set forth in *Boyle v. United Technologies Corp,* 487 U.S. 500 (1988).[2] In *Boyle*, the U.S. Supreme Court held that some areas of activity – those involving "uniquely federal interests" – are so committed to federal control that any applicable state law becomes pre-empted. *Id.* at 504. The government's procurement of equipment (and specifically military equipment, as in the *Boyle* decision) is one of those areas. *See id*. at 507. From a policy standpoint, the Supreme Court found that imposition of liability on government contractors would directly affect the terms of government contracts: either the contractor

---

[2] Significantly, plaintiff has failed to address the question of the contractual relationship between Forest River and FEMA. Out of an abundance of caution, however, Forest River refers the Court to its discussion of this issue – and its argument that the lack of a direct contract does not defeat the application of this defense – contained in its Motion for Summary Judgment related to the government contractor defense, Rec. Doc. 10936.

would decline to manufacture the design specified by the government, or it would raise its price. *Id*.

The Court held that state-law liability for design defects cannot be imposed when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id*. at 512. (emphasis added).

      A.      **The government approved reasonably precise specifications**

Plaintiff first argues that Forest River's government contractor defense fails because the FEMA procurement specification does not specifically address formaldehyde levels and/or wood products in the trailer. **The Fifth Circuit has held that the specifications need not address the specific defect alleged; the government need only evaluate the design feature in question**. *Kersetter v. Pac. Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000). The FEMA procurement specifications meet this qualification because they mandate that the units must meet the "industry standards." Plaintiff cannot dispute that the industry standard includes the use of composite wood products, which of course is the design feature in question.[3] Doug Gaeddert testified:

> Q. All right. Now, considering where the units were coming, and considering what the purpose they were going to be utilized for, did anyone at Forest River ever notify anyone at NACS that perhaps you may consider utilizing a different wood product that would be more suitable for those environments?
>
> A. No, and several reasons. Number one, we've been shipping thousands of units per year in the Gulf Coast since the origin of our company. We've got products all over Louisiana, Alabama, Mississippi, Florida, Georgia, et cetera.

---

[3] The issue of industry standard wood products is the same one that was in the *Alexander* trial. The government contractor defense certainly applies in this case as well.

> Number two, industry standard is what they called for, and the industry standard is what we utilized.

Trial Testimony, p. 1778, l. 2-12. Because these specifications touch upon industry-standard composite wood products and state that the supplier cannot deviate from that direction, the trailer specifications clearly evaluate the design feature in question.

Plaintiff next contends that the FEMA specifications were not "reasonably precise" because the FEMA specifications allowed for "equal or better" units. Forest River questions how this one phrase somehow negates the specific instructions contained within the FEMA specifications as a whole. In any event, the only testimony that plaintiff points to is a quotation from Doug Gaeddert that, "[FEMA] didn't require a specific floor plan." Trial Testimony, p. 1772, l.1. Plaintiff somehow translates this into Forest River's right to retain "complete discretion over the physical construction of the EHUs." *See* plaintiff's Motion, p. 7.

Plaintiff completely mischaracterizes the extent to which FEMA dictated the specifications of the trailer's composition and design. The FEMA specifications are a precise list of design features that dictate the overall construction of the unit. *See* Trial Exhibit 579. Moreover, the fact that Forest River generated an internal document to guide them in producing these FEMA spec units supports Forest River's position, not plaintiff's. *See* Trial Exhibit 578. If the FEMA specs were as vague and non-specific as plaintiff contends, there would have been no need for Forest River to create this detailed list to ensure that its various manufacturing facilities across the country would create uniform travel trailers.

Plaintiff also ignores the extent to which Forest River had to change its existing product line to comply with the FEMA specs. In his trial testimony, Doug Gaeddert explained that FEMA

mandated 32 to 35 foot trailers, but Forest River only produced "slide-out" units in that size. *See* Trial Transcript, p. 1732-33. In order to meet the FEMA specs, Forest River had to alter its designs to incorporate FEMA's request. *Id. See also* Trial Testimony of Jeff Burian, manager of Forest River's Rialto, CA plant, p. 696-97 (noting that the FEMA specs were different from traditional travel trailer designs due to changes in the holding tanks, plumbing and kitchen appliances).

Plaintiff then argues that FEMA did not approve of Forest River's design. This contention lacks merit. FEMA evaluated and approved the Forest River prototype and thereby evaluated the design feature in question. Plaintiff attempts to characterize Dave Porter's visit to Forest River's plant as a "rubber stamp." Again, Forest River notes that this visit was for the specific purpose of evaluating the prototype trailer designed for FEMA disaster response efforts. FEMA did not simply begin accepting trailers from Forest River without review – it sent an official to review the prototype prepared. *See* Trial Testimony of Doug Gaeddert, p. 1736-40. Porter had a meaningful opportunity to view the prototype, inspect any materials, observe/inspect the production process and meet with plant personnel.[4] *Id.*

Additionally, Forest River suggested alternate **designs** to Porter – designs which were ultimately incorporated into the FEMA specs. *Id.* These design changes were not "supply-related"[5] issues but dealt with critical components of the trailer such as the roof, plumbing, and appliances. *Id.* at 1739-42. This interaction was exactly the type of "back-and-forth" participation that Forest

---

[4] Plaintiff emphasizes that this visit took place in only three hours. However, there is no evidence that Porter's visit was somehow inadequate, or that Porter was not afforded a meaningful opportunity to review the prototype further.

[5] Plaintiff's arguments regarding the changes as "supply-related" are merely semantic. An important aspect of any design choice is the question of supply.

River noted in *Ramey v. Martin-Baker Aircraft Co.*, 656 F.Supp 984 (D. Md. 1987) (finding that the "reasonably precise" specifications requirement of the government contractor defense had been met where Navy had an opportunity to review a mock-up of an aircraft and approved the design). **Regardless of whether Porter visited for three hours or three days, Forest River is unique among other manufacturers, as FEMA conducted an inspection of both its manufacturing facilities and a FEMA spec prototype. The government contractor defense is well supported by the facts in this case, and, at a minimum, the question of whether Forest River was a government contractor is a question of fact for the jury.** [6]

B.  **The unit conformed to FEMA specifications.**

Forest River has established that the Wright unit complied with the FEMA specifications. Mr. Mark Polk, an expert in recreational vehicle construction and maintenance, testified that the Wright unit met the FEMA specifications.

> Q  Okay. Well, Mr. Polk, have you reviewed the FEMA specifications for production of travel trailers for use in the temporary housing assistance program?
> A.  Yes.
> Q.  Do you have an opinion, sir, as we sit here today, based upon your education, training, and experience relating to the RV industry as to whether the Lyndon Wright unit met or exceeded the FEMA specifications for its construction?
> A.  Yes, the best I could tell, it did meet the specifications.
> Q.  All right. There have been objections to that question,

---

[6] In his motion, plaintiff has offered various policy rationales behind the government contractor defense. Forest River has briefed these issues in prior motions (Rec. Docs. 10936 & 11812) and incorporates them herein. In short, the costs and design of the trailers supplied to the government clearly implicate the government's rights and interests. Forest River again points out that the policies of *Boyle* – discouraging the costs of liability from being built into the price of products supplied to the government – necessitate that the defense apply to Forest River in this case.

>     so let me ask it another way.  Do you have an opinion as to
>     whether the Lyndon Wright unit met the specifications provided
>     by FEMA for its construction?  You can answer.
>     A.  It's my opinion that it met the FEMA specifications.

Trial Transcript, p. 1698, l. 25 - 1699, l. 14.

Forest River has clearly offered evidence that the unit complied with the FEMA specifications and therefore has satisfied the second prong of *Boyle*.  Plaintiff does not offer any real argument to the contrary in his motion, and this aspect of plaintiff's motion is without merit.

### C.   No factual disputes exist as to the failure to warn claim

As his final argument, plaintiff alleges that Forest River failed to warn the United States about the "dangers" of formaldehyde.  Even if one assumes that the presence of such low-levels of formaldehyde constitutes a "danger," a point which Forest River denies, the contractor only has a duty to inform of the **dangers it actually knows about, not should have known about**.  *Kerstetter*, 210 F. 3d at 436.  Again, Forest River had **no health complaints** related to formaldehyde from its trailer's component products prior to this litigation.  *See* Trial Testimony, p. 1728-29.  Thus, Forest River had no actual knowledge of any potential health hazards.  The fact that Forest River's Owner's Manual contained a formaldehyde warning is not evidence that it knew of any health complaints directed at the company.  The warning was a precautionary measure, not an admission of knowledge regarding its knowledge of health complaints related to formaldehyde.  Nevertheless, the statement was provided to FEMA with each unit.

Forest River provided a copy of its owner's manual, which contained a formaldehyde warning, with every trailer to FEMA – giving FEMA knowledge at least equal to that of Forest River.  *Id.* at 665-666; 1748-49.  FEMA personnel were also aware that formaldehyde was present

inside the trailers[7], and at least had constructive knowledge of the health hazards related to formaldehyde via the HUD regulations on same. *See U.S. ex rel. Finney v. Nextwave Telecom, Inc.*, 337 B.R. 479, 487 (S.D.N.Y., 2006) (noting that the federal legislature which enacted the law, the federal agencies which enforce the law, and the federal courts which apply the law are all charged with knowledge of the statute).

Even presuming there were a fact issue as to Forest River's actual knowledge of any alleged health hazards, it is clear that FEMA knew as much or more than Forest River. There is a sufficient factual basis for Forest River to satisfy the third prong of *Boyle*, and plaintiff's motion must be denied.

**III.     Forest River is entitled to assert the Sophisticated User/Purchaser Defense.**

A manufacturer is not required to provide an adequate warning about its product when the user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic. La. Rev. Stat. § 9:2800.57(B)(2). These knowledgeable users are sometimes referred to as sophisticated users or intermediaries, and, in fact, many cases use the terms sophisticated user and sophisticated purchaser interchangeably. *Jones v. Flowserve FCD Corp.*, 73 Fed. Appx. 706, 711 (5th Cir. 2003); *Laird v. Deep Marine Technology, Inc.*, 2005 WL 22949, *4 (E.D. La. 2005); *Abadie v. Metropolitan Life Ins. Co.*, 784 So.2d 46, 78 (La. App. 5 Cir. 2001). A manufacturer has no duty to warn a sophisticated purchaser. *See Davis v. Avondale Indus.*, 975 F.2d 169, 172 (5th Cir. 1992). Louisiana courts presume that sophisticated users know about the danger because of their familiarity

---

[7]   *See* Trial Testimony of Martin McNeese, p. 1889-91.

with the product.  *Mallery v. International Harvester Co.*, 690 So.2d 765, 768 (La. App. 3 Cir. 1996).

Forest River refers the Court to the arguments made in its Motion for Partial Summary Judgment on plaintiff's failure to warn claim (Rec. Docs. 10937 & 11813).  In particular, Forest River would direct the Court to Forest River's discussion of the sophisticated user/purchaser doctrine in relation to the actions of the federal government in *Morgan v. Brush Wellman, Inc.*, 165 F.Supp.2d 704, 706 (E.D. Tenn. 2001) and *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1037 (10th Cir. 1998).

In the instant motion, plaintiff claims that a "manufacturers (sic) duty to warn extends not only to a purchaser in the distributive chain of the product but also to the ultimate user of the product." Plaintiff's Motion, p. 11.  This statement is directly at odds with plaintiff's prior statement in his Opposition to Forest River's Motion for Partial Summary Judgment, wherein he wrote that, "**A seller has no duty to warn an ultimate user when intermediate purchasers are knowledgeable**." *See* Rec. Doc. 11528, p. 13 (citing *Guidry v. Kem Mfg. Co.*, 693 F.2d 426, 430-31 (5th Cir. 1982); *Thibodaux v. McWane Cast Iron Pipe Co.*, 381 F.2d 491, 495 (5th Cir. 1967).  Moreover, a manufacturer is not compelled to warn sophisticated purchasers of dangers of which the buyer either knows or should be aware.  *Davis v. Avondale Industries,* 975 F.2d 169, 172 (5th Cir.

1992)[8] (citing *Bradco Oil & Gas Co. v. Youngstown Sheet & Tube Co.*, 532 F.2d 501, 504 (5th Cir.1976)).

Forest River has sufficient legal grounds to argue that FEMA was a sophisticated purchaser and thereby relieved Forest River of a duty to warn the end user, Lyndon Wright. Forest River has presented sufficient evidence that FEMA is a sophisticated purchaser. Indeed, the parties have stipulated that FEMA provided thousands of travel trailers to displaced residents following natural disasters in the United States since 1992, including displaced residents from the Gulf Coast region. Testimony from FEMA officials demonstrated that FEMA knew that formaldehyde was in travel trailers. *See* Trial Testimony, p. 1889-91. FEMA officials also coordinated the response to complaints of formaldehyde from trailer residents and never contacted Forest River. *Id.* at 1763. In the end, for these reasons and those discussed in the *Alexander* trial, the jury should be allowed to consider the sophisticated purchaser defense raised by Forest River. Plaintiff's motion should be denied as to this defense.

---

[8] In *Davis*, the court considered the "duty to warn" language included in certain jury charges and noted:

> We recognize, however, that certain courts have indicated that whether the seller has a duty to warn third parties may depend on whether the seller has reason to assume that the purchaser will do so. It is usually held that the seller may so assume where the purchaser is a sophisticated user and the third parties are employees of the purchaser whom it has a duty to warn or protect.

*Davis,* 975 F.2d at 173. The logic identified in *Davis* has equal application in this case as well, as FEMA's duty to warn and protect housing occupants relieved Forest River of its duty to warn end users such as Lyndon Wright.

## CONCLUSION

In light of the above and foregoing, plaintiff's motion must be denied, as Forest River has satisfied each element necessary to establish its immunity as a government contractor defense. The testimony establishes that the United States, through FEMA, approved reasonably precise specifications for the production of EHU's, that Forest River complied with those specifications, and that the United States had equal or superior knowledge of the alleged "danger," if any, posed by the presence of formaldehyde. Moreover, Forest River is entitled to assert the sophisticated purchaser defense for the reasons discussed above. Accordingly, Forest River respectfully requests this Honorable Court deny plaintiff's Motion for Judgment as a Matter of Law on these defenses.

Respectfully submitted,

 /s/ Carson W. Strickland
ERNEST P. GIEGER, JR. (No.6154)
JASON D. BONE (No. 28315)
CARSON W. STRICKLAND (No. 31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

**C E R T I F I C A T E**

I hereby certify that on the 25th day of March, 2010, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

/s/ Carson W. Strickland
CARSON W. STRICKLAND