UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCT LIABILITY | * | SECTION "N-5" |
| LITIGATION | * | |
| | * | JUDGE ENGELHARDT |
| | * | |
| THIS DOCUMENT RELATES TO | * | MAG. JUDGE CHASEZ |
| *EARLINE CASTANEL, ET AL* | * | |
| *v.  RECREATION BY DESIGN, LLC* | * | |
| *ET AL*, *DOCKET NO. 09-3251* | * | |

********************************************************************************

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT REGARDING SURGERY-RELATED CLAIMS**

**MAY IT PLEASE THE COURT:**

Defendants, Recreation By Design, LLC ("RBD") and Shaw Environmental, Inc, move for

partial summary judgment based on plaintiff's recent nasal surgery.  During the deposition of

plaintiff's friend, Edwin Ganier, taken on April 1, 2010, counsel for defendants first learned that

plaintiff had undergone nasal surgery the day prior to Mr. Ganier's deposition on March 31, 2010.

Counsel for defendants were not advised of the scheduled surgery nor advised after the surgery by

plaintiff counsel of plaintiff's condition.  As this matter is set for trial in approximately five weeks,

1

and plaintiff's deadline for production of expert reports has long since passed, defendants would be severely prejudiced by the introduction of any evidence and/or testimony regarding any alleged nasal surgery and any causal relationship, if any, between plaintiff's nasal surgery and her FEMA travel trailer.  Accordingly, defendants urge that any surgery related claims should be dismissed.

Further, any claim by plaintiff regarding her nasal surgery should be dismissed for a failure to show the existence of any genuine issue of material fact with respect to any causal relationship between her nasal surgery and any alleged formaldehyde exposure in her FEMA travel trailer. Plaintiff has failed to produce any evidence that could support a judgment in her favor regarding her surgery-related claims.  Expert medical testimony is critical to finding causation in a toxic tort case, and the experts presented by plaintiff in this case have not offered any testimony to suggest that plaintiff's nasal surgery was causally related to her alleged exposure to gaseous formaldehyde in her FEMA travel trailer.  Additionally, none of plaintiff's experts can testify to any harmful level of exposure to formaldehyde.  Defendants, therefore, assert that as a matter of law, plaintiff's surgery related claims must be dismissed as a result of her failure to bring forth any expert medical testimony to support such claims.

## I.  BACKGROUND

For a more thorough discussion of the background of this matter and the claims made against Defendants, Defendants refer this Court to its Memorandum in Support of Motion for Summary Judgment on Causation.  For purposes of the present motion, given plaintiff's deposition testimony and the opinions rendered by plaintiff's experts, plaintiff's claims have been narrowed to the exacerbation of her rhinosinusitis and mental anguish claims of anxiety and fear of cancer.

On information and belief, plaintiff underwent nasal surgery on March 31, 2010.  Neither

plaintiff nor her counsel informed undersigned counsel of this surgery.  Rather, undersigned counsel learned of this surgery through the testimony of Edwin Ganier on April 1, 2010.  In light of this recent surgery, it is anticipated that plaintiff, although she has never to this point specifically pled any surgery-related claims, will assert a claim(s) relating to this surgery.

To support her claim(s) regarding the alleged exacerbation of her pre-existing rhinosinusitis, plaintiff relies on purported expert, Dr. Lawrence G. Miller.  For the reasons more fully noted in Defendants' Motion for Summary Judgment on Causation, Dr. Miller, in addition to plaintiff's other purported experts, simply does not provide the testimony needed to make a causal connection between formaldehyde and any of Castanel's alleged medical conditions.  Notwithstanding the arguments raised in that motion and more specifically for purposes of this motion, plaintiff has not produced any expert medical testimony to show that her recent nasal surgery is causally related to any alleged exposure to formaldehyde in her FEMA travel trailer.  As a result, partial summary judgment is warranted.

## II.  LAW AND ARGUMENT

### A.    Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be rendered if the pleadings, discovery, disclosure materials and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[1]  The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant.[2] A fact is material if it "might affect the outcome of the suit under the

---

[1]Fed. R. Civ. P. 56(c).

[2]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

governing law."[3]  Further, "it is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate."[4]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the records contains insufficient proof concerning an essential element of the nonmoving party's claim.[5]  Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must go beyond the pleadings and through affidavits, depositions, answers to interrogatories, and admissions on file and designate specific facts showing that there is a genuine issue for trial.[6]

When considering a Motion for Partial Summary Judgment, the Court views the evidence in the light most favorable to the nonmoving party,[7] and draws all reasonable inferences in favor of that party.[8]  Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[9]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[10]

---

[3]*Id.*

[4]*Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tx. Steel Co.,* 538 F.2d 1116, 1119 (5th Cir. 1976).

[5]*See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.,* 910 F.2d 167, 178 (5th Cir. 1990).

[6]*Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Augster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

[7]*Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002).

[8]*Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001).

[9]*Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

[10]*Id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a Motion for Partial Summary Judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, the evidence is not properly before the district court."[11] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports her claims.[12]

The nonmovant's burden of demonstrating a genuine issue is not satisfied by merely creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[13] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[14]

### B. Plaintiff's surgery-related claims should be dismissed, as the submission of expert medical testimony approximately one month out from trial and long past the expert reporting deadline is highly prejudicial to Defendants.

In addition to the substantive issues addressed below which merit dismissal of Castanel's surgery-related claims, plaintiff's surgery-related claims should be dismissed on technical and/or prejudicial grounds. Trial of this matter is set to commence on May 17, 2010. Plaintiff's deadline for production of expert reports was January 29, 2010.[15] Neither plaintiff and/or her counsel have at

---

[11]*Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003).

[12]*Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied,* 513 U.S. 871 (1994).

[13]*Little,* 37 F.3d at 1075.

[14]*Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002).

[15]*See* Rec. Doc. No. 9471, Trial Scheduling Order.

any point informed undersigned counsel that Castanel intended to undergo nasal surgery. Undersigned counsel did not become aware of plaintiff's surgery until the deposition of Edwin Ganier on April 1, 2010. At his deposition, Mr. Ganier commented that plaintiff had undergone nasal surgery on March 31, 2010.

As more fully addressed below, to this point in the litigation, plaintiff has not produced any expert medical testimony to show that her nasal surgery was caused by any alleged exposure to formaldehyde in her FEMA travel trailer. In light of the upcoming trial date and the already passed expert reporting deadline, any attempt by plaintiff to introduce expert medical testimony from Dr. Miller and/or any other purported expert regarding plaintiff's nasal surgery and its alleged causal relationship to her travel trailer would be improper and highly prejudicial to Defendants' defense of this matter. As a result, plaintiff should not be allowed to introduce any expert medical testimony regarding plaintiff's nasal surgery. Further, in the absence of any such expert medical testimony, plaintiff's surgery-related claims should be dismissed with prejudice.

C.   **Plaintiff has brought forth no expert medical testimony to show that her nasal surgery is causally related to any alleged formaldehyde exposure from her FEMA travel trailer.**

It is the plaintiff's burden to prove causation under the Louisiana Products Liability Act.[16] The plaintiff must prove causation through medical testimony that it is more probable than not that the subsequent injuries were caused by the product.[17] In a toxic tort case, the plaintiff must prove

---

[16]*Maranto v. Goodyear Tire & Rubber Co.,* 650 So.2d 757, 759 (La. 1995).

[17]*Kemp v. Metabolife Int'l, Inc.,* No. 00-3513, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004); *see also Hutchinson v. Shah,* 648 So.2d 451, 452 (La. App. 1st Cir. 1994) ("[w]hen the conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required").

both general causation and specific causation -- and must do so with competent expert testimony.[18]

Because both specific and general causation are required, when the plaintiff fails to establish either

specific causation or general causation, the plaintiff's claim fails.[19]

      Based upon the law, jurisprudence, and argument more fully set forth in Defendants' Motion

for Summary Judgment on Causation and associated Memorandum in Support, adopted herein as if

copied *in extenso*, plaintiff has failed to bring forth the requisite expert medical testimony in order to

causally relate *any* of her alleged symptoms and/or injuries to alleged formaldehyde exposure in her

FEMA travel trailer.  Furthermore, and more specifically as it pertains to the present motion, plaintiff

has brought forth absolutely no evidence to show that her recent nasal surgery was caused by her

travel trailer.  As a result, Defendants' Motion for Partial Summary Judgment should be granted, and

plaintiff's surgery-related claims should be dismissed.

      Dr. Alan Bowers and Dr. Joseph Gautreaux, two of plaintiff's long-term treating physicians,

were deposed in conjunction with this matter, and neither testified to a causal link between

Castanel's medical conditions, including her nasal surgery, and her alleged formaldehyde exposure.

Plaintiff has been a patient of Dr. Bowers, a board certified internist, for the past ten years. She first

treated with Dr. Bowers at Methodist Hospital, and continued her treatment with him when he joined

the Family Doctors Clinic.  Dr. Bowers offered no testimony with respect to plaintiff's nasal surgery.

In fact, Dr. Bowers testified that Castanel's medical condition was the same after Hurricane Katrina

---

[18]*Knight v. Kirby Inland Marine Inc.,* 483 F.3d 347, 351 (5th Cir. 2007).

[19]*Pick v. Am. Med. Sys., Inc.,* 958 F. Supp. 1151, 1163 (E.D. La. 1997) (granting summary judgment as to specific causation); *see also Leija v. Penn Maritime, Inc.,* No. 06-10489, 2009 WL 211723, at *3 (E.D. La. Jan. 23, 2009) (granting summary judgment in favor of defendant when proposed expert testimony was insufficient to create an issue of fact as to specific causation); *Babin v. Ecolab, Inc.,* No. 2:04-CV-1595, 2005 WL 1629947, at *5 (W.D. La. July 5, 2005) (granting summary judgment when plaintiffs failed to establish that there is a genuine issue of material fact as to general causation).

-- while she was residing in the FEMA travel trailer -- as it was before the storm.  Dr. Bowers also testified that he did not notice any increase of Castanel's various medical conditions, including her sinus complaints, while she was residing in the travel trailer.[20] Additionally, Dr. Bowers testified that it was his opinion that Castanel did not suffer any type of injury as a result of residing in the travel trailer.[21]

Dr. Gautreaux, a board certified Ear, Nose, and Throat specialist, has treated plaintiff since 2002 for various sinus complaints. Dr. Gautreaux is the only treating physician and/or expert who testified with respect to the possibility of surgery for plaintiff as a result of her sinus symptoms.[22] Importantly, however, at his deposition, Dr. Gautreaux testified that he did not detect a change in Castanel's medical condition during the time she resided in the travel trailer.[23]  Dr. Gautreaux also testified that throughout the course of his treatment of Castanel from 2002 to present, she suffered from sinusitis and that he did not see any changes in her diagnosis after Hurricane Katrina.[24] Specifically, Dr. Gautreaux testified as follows:

> Q.    I will be happy to.  Ms. Castanel's treatment for you in 2009 for sinusitis related to exposure to bacteria, that wouldn't be related to any exposure to bacteria from a FEMA trailer in which Ms. Castanel lived in 2007?

---

[20]*See* Exhibit A, Deposition of Dr. Alan Bowers, at pp. 59-61, 63.  *See* also the deposition testimony on Plaintiff's gentlemen companion, Edwin Ganier, wherein he testified that Castanel's sinus problems did not increase while she resided in the FEMA travel trailer, that rather, her sinus problems got progressively worse after she moved out of the travel trailer.  Edwin Ganier depo.  at 43:20-25 and 44:1-8, excerpts attached as Ex. B.

[21]*See* Ex. A.,at pp. 61-63.

[22]*See* Exhibit C, Deposition of Dr. Joseph Gautreaux, at pp. 75, 86.

[23]*See id.*, at pp. 54, 79- 80.

[24]*See id.*, at p. 54.

MR. REICH: The same objection.

MR. D'AMICO: Object to the form of the question.

THE WITNESS: No.

EXAMINATION BY MR. GARRISON:

Q.      That's a correct statement?

A.      That's a correct statement.[25]

Further, Dr. Gautreaux stated that he has no knowledge of whether formaldehyde can worsen a rhinitis condition,[26] and that Castanel did not once tell him that she thought her symptoms were related to residing in a FEMA travel trailer.[27]

Dr. Gautreaux also testified that Plaintiff's incidences of sinusitis in 2009 were likely due to exposure to bacteria and were not in any way related to any alleged exposures dating back to 2007. Dr. Gautreaux testified as follows:

Q.      Could her more frequent visits be related to her sinusitis maybe being more active due to exposure to bacteria?

****

A.      I mean, yes.

Q.      And if Ms. Castanel is treating with you in 2009 for sinusitis, would the bacteria which has caused her sinusitis be bacteria she was exposed to in that year, 2009?

****

---

[25] *See id.*, at pp. 89-90.

[26] *See id.*, at p. 67.

[27] *See id.*, at p. 81.

9

A.  There's really no way of telling that.

Q.  All right.  If Ms. Castanel moved out of her FEMA trailer in July of 2007, her treatment for sinusitis with you would not be related to bacteria to which she was exposed in that FEMA trailer in 2007?

****

A.  You've got to repeat that one.

Q.  I will be happy to.  Ms. Castanel's treatment with you in 2009 for sinusitis related to exposure to bacteria, that wouldn't be related to any exposure to bacteria from a FEMA trailer in which Ms. Castanel lived in 2007?

****

A.  No.

Q.  That's a correct statement?

A.  That's a correct statement.[28]

It follows that if Plaintiff's 2009 incidences of bacteria related sinusitis were unrelated to the time she resided in the FEMA travel trailer, then her resulting surgery for treatment of this condition in March of 2010 is also unrelated to any alleged exposure she experienced while residing in her travel trailer.

Additionally, at his April 7, 2010 deposition, RBD IME expert witness, Dr. H. James Wedner, unequivocally testified that there is no connection between Castanel's 2010 nasal procedure and her alleged exposure to formaldehyde while residing in her FEMA travel trailer in 2006 and 2007.[29] After meeting with and examining Castanel, and after reviewing her medical records related to treatment before and after she resided in the FEMA travel trailer, Dr. Wedner opined that there is no physical evidence of injury as a result of alleged exposure to formaldehyde, nor did he find any

---

[28] *See id.,* at pgs. 88-90.
[29] The transcript of Dr. H. James Wedner's April 7, 2010 deposition is not yet available.  Defendants will supplement

evidence in Castanel's medical records of any injury sustained as a result of alleged exposure to formaldehyde.[30] Further, unlike Dr. Miller, who did not know the formaldehyde level in Castanel's FEMA travel trailer, Dr. Wedner opined that the .05 ppm tested level of formaldehyde in Castanel's FEMA travel trailer would not have caused any irritation or injury to Castanel's sinuses.[31]

With respect to plaintiff's claims regarding the alleged exacerbation of her rhinosinusitis, plaintiff relies solely on the testimony of her purported expert, Dr. Lawrence Miller.  Dr. Miller has opined that, "within a reasonable degree of medical probability, the exposure to formaldehyde emissions during her residence in the FEMA trailer significantly exacerbated Ms. Castanel's rhinosinusitis."[32]  Dr. Miller relied on the medical history given to him by Castanel in reaching this conclusion.

However, when presented with medical testimony at his deposition that Castanel's rhinosinusitis symptoms did not increase while she resided in the FEMA travel trailer or after moving out of the trailer, Dr. Miller conceded that he would have to revisit his conclusion regarding her rhinosinusitis.  Dr. Miller testified as follows:

> Q.    "I have a question.  The question is, would you disagree with this testimony - -  this is Dr. Bowers - - referring to Page 58, 13: "Question: With respect to Ms. Castanel's overall health, how would you describe her health? Answer: I think her health is good.
>
> "Question: The office notes we just went through from October of 2003 until last week, Ms. Castanel was treated on a consistent basis; would that be fair to say?  Answer: Yes, sir.

---

this memorandum with the citations to Dr. Wedner's transcript as soon as it becomes available.
[30] *Id.*
[31] The transcript of Dr. H. James Wedner's April 7, 2010 deposition is not yet available.  Defendants will supplement this memorandum with the citations to Dr. Wedner's transcript as soon as it becomes available.
[32] *See* Exhibit D, Affidavit of Dr. Lawrence Miller, dated Jan. 28, 2010, at p. 6.

"Question: Did you see any changes in Ms. Castanel's condition, significant changes, during that time period from 2003 to last week?"  And just so you'll know, "last week" was in January of 2010.  "Answer: No, I can't say that it did.

"Question: Would you say that her health and her symptoms remained relatively consistent during the time period, that six-and-a-half, almost seven-year time period?  Answer: Yes.

"Question: Actually a little more than six years.  Based on a review of your medical notes and your records, it appears as though Ms. Castanel treated consistently for sinus problems before Hurricane Katrina; is that correct?  Answer: Yes, sir.

"Question: Would it be fair to say - - did you not sense or note any increase in Ms. Castanel's sinus problems after Hurricane Katrina?"  And Dr. Bowers testified, "No."

Would you have any reason to disagree with that testimony?

A.    The testimony is what it is.  It's not my job to agree or disagree.   In terms of Ms. Castanel's sinus problems, obviously she gave me different information.

Q.    If the information given to Dr. Bowers is accurate, and that is that Ms. Castanel did not have any increase in sinus problems after Hurricane Katrina or after living in a FEMA unit, would you still stand by your opinions regarding the fact that you believe Ms. Castanel had an exacerbation of her sinusitis?

A.    I can't answer your question.  That's not the information I received, so I can't give you an answer.

Q.    I want you to assume - - you're an expert.  I want you to make an assumption.

****

A.    It doesn't make sense.  It's counterfactual to information I have. So I don't think I can answer you.

Q.    That's fine.  Let's put the facts that you got from Ms. Castanel on

12

the side, just for purposes of this question.

A.    Are we talking about a hypothetical patient, some other patient?

Q.    We're talking about a hypothetical question.

A.    I'm not sure I understand that at this point.

Q.    Let's just go through it.  You're an expert, or they're going to attempt to qualify you as an expert.  Putting the history given by Ms. Castanel on the side, if Ms. Castanel did not have any increase in her sinus symptoms after Hurricane Katrina or while living in the FEMA unit or after the FEMA unit, would you still opine that Ms. Castanel had an exacerbation of her sinusitis as a result of formaldehyde?

****

A.    I would revisit that conclusion.  I'm not sure I can give you that exact answer as we sit here.

Q.    So you can't answer that hypothetical?

A.    I can't.[33]

Additionally, Dr. Miller failed to define what is considered to be a harmful level of formaldehyde, and he did not provide evidence that plaintiff was exposed to this requisite level of formaldehyde.  When questioned at his deposition regarding the level of formaldehyde in Castanel's FEMA travel trailer, Miller responded as follows:

Q.    As you sit here today, you don't know what the level of formaldehyde was in Ms. Castanel's trailer?

****

A.    Again, what I specifically, no.  I've discussed the level in FEMA trailers in general in this report.

Q.    And you offered opinions in your report regarding Ms.

---

[33]*See* Exhibit E, Deposition of Dr. Lawrence Miller, at pp. 102-105.

13

Castanel's condition and its relationship to formaldehyde in her trailer without knowing the level of formaldehyde in her trailer, correct?

A.      Correct.[34]

It is clear from the above referenced excerpts from Dr. Miller's report and deposition testimony, that he does not "present evidence of the harmful level of exposure to the chemical, and knowledge that plaintiff was exposed to that level" as required by law.[35]  Plaintiff has, therefore, not provided specific causation testimony linking her alleged exacerbation of rhinosinusitis claim to formaldehyde exposure.  Most importantly, Dr. Miller offers no testimony whatsoever as to whether plaintiff's nasal surgery is caused by and/or related to any alleged exposure to formaldehyde in her travel trailer.

Presently, a little over a month before trial and well after the expert report deadline, it is apparent that plaintiff has brought forth absolutely no expert medical evidence to show that her March 31, 2010 nasal surgery was causally related to any alleged formaldehyde exposure she may have experienced while residing in her FEMA travel trailer.  Dr. Miller is the *only* purported expert who even suggests that plaintiff's rhinosinusitis condition was exacerbated as a result of the travel trailer, and, incredibly, he did not even know the formaldehyde levels plaintiff was allegedly exposed to in her trailer.  Most importantly for purposes of the present motion, Dr. Miller has offered absolutely no opinion whatsoever with respect to the plaintiff's need for nasal surgery or the causal connection between formaldehyde exposure and nasal surgery.  Additionally, while Dr. Gautreaux noted plaintiff's potential need for nasal surgery, he testified that he did not detect any changes in

---

[34]*See id.*, at p. 90.
[35]*Allen v. Pa. Eng'g Corp.,* 102 F.3d 197, 199 (5th Cir. 1996); *see also Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 279 n.10 (5th Cir. 1996) (noting importance of expert knowing the level of exposure to support causation opinion).

plaintiff's symptoms during the time period that she resided in the travel trailer.  Dr. Gautreaux testified that the plaintiff's symptoms and diagnosis were the same before, during, and after the plaintiff lived in the FEMA travel trailer.

Due to plaintiff's inability to bring forth expert medical testimony establishing a causal relationship between her nasal surgery and the travel trailer, plaintiff's surgery-related claims must fail.  Consequently, partial summary judgment is warranted, and plaintiff's surgery-related claims should be dismissed.

### III.  CONCLUSION

Based upon the above and foregoing, there exists no genuine issue of material of fact, and Defendants' Motion for Partial Summary Judgment Regarding Surgery-Related Claims should be granted.  Plaintiff has failed to bring forth any expert medical testimony to show that her recent nasal surgery was in any way caused by any alleged exposure to formaldehyde in her FEMA travel trailer. Additionally, as this matter is set for trial in approximately one month and plaintiff's deadline for production of expert reports has long since passed, Defendants would be severely prejudiced by the introduction of any evidence and/or testimony regarding any alleged causal relationship between plaintiff's nasal surgery and her FEMA travel trailer.  Accordingly, Defendants respectfully request that this Honorable Court grant their Motion for Partial Summary Judgment and dismiss plaintiff's surgery-related claims, with prejudice, and at plaintiff's cost.

Respectfully submitted,

**_/s/ Randall C. Mulcahy_**
LYON H. GARRISON, Bar No. 19591
SCOTT P. YOUNT, Bar No. 22679
RANDALL C. MULCAHY, Bar No. 26436
DARRIN L. FORTE, Bar No. 26885
KELLY M. MORTON, Bar No. 30645
GARRISON, YOUNT, FORTE
& MULCAHY, LLC
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 527-0680
Facsimile: (504) 527-0686
Attorneys for defendant,
Recreation By Design, LLC
Email: rmulcahy@garrisonyount.com

**_/s/ M. David Kurtz_**
ROY C. CHEATWOOD, Bar No. 4010
M. DAVID KURTZ, Bar No. 23821
KAREN K. WHITFIELD, Bar No. 19350
CATHERINE N. THIGPEN, Bar No. 30001
Baker Donelson Bearman Caldwell
& Berkowitz, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
Attorneys for defendant,
Shaw Environmental, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of this electronic filing to all known counsel of record.

**_/s/ Randall C. Mulcahy_**
RANDALL C. MULCAHY, Bar No. 26436

16