UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| | * | |
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCT LIABILITY | * | SECTION "N-5" |
| LITIGATION | * | |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAG. JUDGE CHASEZ |
| | * | |
| THIS DOCUMENT RELATES TO: | * | |
| *EARLINE CASTANEL, ET AL v .* | * | |
| *RECREATION BY* | * | |
| *DESIGN, LLC, SHAW* | * | |
| *ENVIRONMENTAL, INC.,* | * | |
| *and UNITED STATES OF AMERICA* | * | |
| *THROUGH THE FEDERAL* | * | |
| *EMERGENCY MANAGEMENT* | * | |
| *AGENCY,* NO. 09-3251 | * | |

**************************************************************************

DEFENDANTS' MEMORANDUM IN SUPPORT
OF PARTIAL MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFF'S MENTAL ANGUISH CLAIMS

**MAY IT PLEASE THE COURT:**

Defendants, Recreation By Design, LLC ("RBD") and Shaw Environmental, Inc. ("Shaw")

move for partial summary judgment based on Plaintiff's failure to show that there is any genuine

issue of material fact regarding her mental anguish claims, including her fear of cancer claim.  First,

Plaintiff's mental anguish claims must fail as Plaintiff has not testified as to (1) any mental anguish caused by Defendants' actions or (2) a specific fear of cancer.  Moreover, Plaintiff has not shown through either specific medical testing or, more generally, through epidemiological evidence, a casual link between the levels of formaldehyde she was allegedly exposed to while residing in the travel trailer at issue and cancer.  Finally, Plaintiff has not shown that any alleged fear of cancer is reasonable as a matter of law.  Accordingly, all of Plaintiff's metal anguish claims, including her fear of cancer claim, against Defendants should be dismissed with prejudice.

## I.  BACKGROUND

Plaintiff, Earline Castanel, has claimed the following, non-specific, types of injuries: past and future physical pain and suffering,  mental anguish and emotion (sic) distress, including the fear of an increased risk of future serious disease.[1]

### A.        Plaintiff's mental anguish and emotional distress claims

Dr. Shwery testified at his March 2, 2010 deposition that he diagnosed the Plaintiff as suffering from "an anxiety disorder due to a specific medical condition, specifically sinus and breathing problems."[2]  He further testified that his "appreciation of the role of anxiety in this woman's life is that it really comes up around issues of sinus and breathing difficulties.  That's when the anxiety heats up, if you will."[3]  These statements are in direct contradiction to the testimony of Plaintiff's treating physician, Dr. Alan Bowers, wherein he testified that Plaintiff has had ongoing

---

[1]See Plaintiff's Complaint for Damages, R. Doc. 1, Docket No. 09-cv-3251 and Plaintiff's Supplemental and Amending Complaint for Damages, R. Doc. 9401.

[2]Shwery Depo. at 104:16-19, excerpts attached as Ex. A.

[3]Shwery Depo. at 105:7-11, excerpts attached as Ex. A.

anxiety problems for several years.[4]

    **B.    Plaintiff's fear of cancer claim**

    Dr. Shwery also testified that Plaintiff has a fear of cancer, but he did not know when she first developed this fear or what caused her to develop this fear.[5]  In fact, Shwery admitted that Castanel did not even bring up this fear of cancer until her second visit with him.[6] Further, at her February 10, 2010 deposition, Castanel testified that she only started worrying about cancer about three or four months ago, which was about the time she was selected as a bellwether Plaintiff in November 2009.[7] Despite this worry, Castanel did not mention this fear to any of her treating physicians.[8]   Finally, Castanel's long time companion, Edwin Ganier, testified at his deposition that Castanel has had a fear of cancer since her son died from cancer approximately ten to twelve years ago.[9]

    Throughout this MDL, Plaintiff's toxicology expert witness, Patricia M. Williams, has attempted to provide testimony on general causation in an effort to show how formaldehyde *causes* cancer.  However, Dr. Williams is unwilling and unable to provide an opinion as to what exposure levels are sufficient to trigger any cancerous process due to formaldehyde exposure.[10] Additionally,

---

[4]Bowers Depo. at 32:1-25, excerpts attached as Ex. B.

[5]Shwery Depo. at 145:2-7; 146:9-12, excerpts attached as Ex. A.

[6]Shwery Depo. at 65:6-8, excerpts attached as Ex. A.

[7]Castanel Feb. 2, 2010 Depo. at 137:8-19, excerpts attached as Ex. C.  See also R. Doc. 6423, wherein the Court appointed Castanel as a bellwether plaintiff.

[8]Castanel Feb. 2, 2010 Depo. at 138:10-18, excerpts attached as  Ex. C.

[9]Ganier Depo. at 55:6-22, excerpts attached as Ex. D.

[10]Williams Depo. dates July 7, 2009, at 97:23-99:6, 127:18-132:15, excerpts attached as Ex. E.

Dr. Lawrence Miller, Plaintiff's IME physician, relied on Dr. Williams' general opinion regarding the relationship between formaldehyde and cancer to conclude that Castanel's fear of cancer was rational,[11] even though he testified he did not know what the level of formaldehyde was in her unit.[12] Therefore, no expert, medical or otherwise, has indicated that the exposure level that Castanel allegedly experienced puts her at any possible risk for cancer.

## II.  LAW AND ARGUMENT

### A.  Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be rendered if the pleadings, discovery, disclosure materials and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[13] The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant.[14] A fact is material if it "might affect the outcome of the suit under the governing law."[15]  Further, "It is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate."[16]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof

---

[11]Affidavit of Lawrence Miller, M.D., pg. 6, attached as Ex. F.

[12]Miller depo. at 90:1-3, excerpts attached as Ex. G.

[13]Fed. R. Civ. P. 56(c).

[14]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[15]*Id.*

[16]*Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tx. Steel Co.,* 538 F.2d 1116, 1119 (5th Cir. 1976).

4

at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the records contains insufficient proof concerning an essential element of the nonmoving party's claim.[17]   Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must go beyond the pleadings and through affidavits, depositions, answers to interrogatories, and admissions on file to designate specific facts showing that there is a genuine issue for trial.[18]

When considering a motion for summary judgement, the Court views the evidence in the light most favorable to the nonmoving party[19], and draws all reasonable inferences in favor of that party.[20]   Factual controversies are to be resolved in favor or the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[21]   The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[22]

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment.   "When evidence exists in the summary judgment record but the nonmovant

---

[17]*See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.,* 910 F.2d 167, 178 (5th Cir. 1990).

[18]*Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

[19]*Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002).

[20]*Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001).

[21]*Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

[22]*Id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

fails even to refer to it in the response to the motion for summary judgment, the evidence is not properly before the district court."[23] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[24]

The nonmovant's burden of demonstrating a genuine issue is not satisfied by merely creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[25] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[26]

### B.   A grant of summary judgment is proper when the Plaintiff cannot establish causation and proper evidentiary foundation.

Mental anguish claims, which include a fear of cancer, must be causally related to a defendant's actions.[27] The plaintiff must prove causation through medical testimony that it is more probable than not that the subsequent injuries were caused by the product.[28] Without causation, the

---

[23]*Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003).

[24]*Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied,* 513 U.S. 871 (1994).

[25]*Little,* 37 F.3d at 1075.

[26]*Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002).

[27]*Smith v. A.C. &S., Inc.,* 843 F.2d 854,857-58 (5th Cir. 1988) (quoting *Hagerty v. L. & L Marine Svcs., Inc.,* 788 F.2d 315, 318 (5th Cir. 1986)). "'[C]ancerphobia' is merely a specific type of compensable mental anguish or emotional distress."*Id.* at 858.

[28]*Kemp v. Metabolife Int'l, Inc.,* No. 00-3513, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004); *see also Hutchinson v. Shah,* 648 So.2d 451, 452 (La. Ct. App. 1994) ("[w]hen the conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required").

plaintiff's claims fail.[29]

For a fear of cancer claim in particular, "a plaintiff must, as a threshold matter, present evidence of [her] particular fear of developing cancerous conditions in the future."[30]  To meet this threshold requirement, the courts will look to the plaintiff's own testimony.[31]  To lay this evidentiary foundation, the plaintiff must present evidence from which the jury could conclude that the plaintiff's fear of cancer is serious and reasonable, and the jury's conclusion must be "premised on the plaintiff's evidence as to [her] specific fear of cancer" - - not premised on a general statement by the plaintiff that she is concerned about her health.[32]

If this proper evidentiary foundation is laid, then the plaintiff must also present expert testimony that the plaintiff's fear of cancer is reasonable.[33]  To qualify as a reasonable fear, the plaintiff must show that it is possible to contract a disease, though the plaintiff has no obligation to

---

[29]*Leija v. Penn Maritime, Inc.,* No. 06-10489, 2009 WL 211723, at *3 (E.D. La. Jan 23, 2009) (granting summary judgment in favor of defendant when proposed expert testimony was insufficient to create an issue of fact as to specific causation); *Babin v. Ecolab, Inc.,* No.  2:04-CV–1595, 2005 WL 1629947, at *5 (W.D. La. July 5, 2005) (granting summary judgment when plaintiffs failed to establish that there is a genuine issue of material fact as to general causation).

[30]*Smith,* 843 F.2d at 859; *see also Easson v. Velsicoal Chem. Corp.,* No. 89-188, 1991 WL 220955,at *3 (E.D. La. Oct. 23, 1991) (denying defendant's motions in limine to exclude evidence of fear of cancer when plaintiff offered specific testimony of his fear of cancer as a result of toxic exposure, as well as the requisite expert testiomny).

[31]*Smith,* 843 F.2d at 858-59 (discussing several cases).

[32]*Id.* at 859.

[33]*Id.*  (holding that the district court erred in admitting expert testimony on reasonableness of fear of cancer without the proper evidentiary foundation); *see also Maurer v. Heyer-Schulte Corp.,* No. 92-3485, 2002 WL 31819160, at *3 (E.D. La. Dec. 12, 2002).

show the likelihood is more probable than not.[34]  And to show that the fear is reasonable and that it

is possible for cancer to be caused, the plaintiff "must produce at least some reliable scientific

evidence."[35]  "Mere speculation" will not suffice.[36]  Reliable scientific evidence comes in the form

of epidemiologic studies.[37]  Courts consider epidemiologic studies to be crucial in establishing

causation.[38]

### C.    Plaintiff's mental anguish and emotional distress claims

In both her Original Complaint for Damages and First Supplemental and Amended

Complaint,[39] Plaintiff alleges that she suffered from mental anguish and emotional distress.  Plaintiff

did not, however, define the nature of the mental anguish and emotional distress she suffered.

However, as noted above, Dr. Shwery diagnosed the plaintiff as suffering from "an anxiety disorder

due to a specific medical condition, specifically sinus and breathing problems."[40]  Dr. Shwery does

---

[34]*Maurer,* 2002 WL 31819160, at *3.

[35]*Id.*

[36]*Id.* (citation omitted).

[37]*See Brock v. Merrell Dow Pharms., Inc.,* 874 F.2d 307, 311 (5th Cir. 1989).

[38]*See id.; Thomas v. Hoffman-la Roche, Inc.,* 731 F. Supp. 224 (N.D. Miss. 1989) (holding that without some epidemiological study or statistical basis, an expert's opinion as to causation amounts to little more than speculation), *aff'd,* 949 F.2d 806 (5th Cir. 1992), *cert. denied,* 504 U.S. 956 (1992); *see also Maiorana v. U.S. Mineral Prod. Co.,* 52 F.ed. 1124 (2d Cir. 1995) ("[Epidemiological evidence is indispensable in toxic and carcinogenic tort actions where direct proof of causation is lacking."); *Elkins v. Richardson-Merrell,* 8 F.3d 108, 1073 (6th Cir. 1993) (affirming summary judgment where plaintiff failed to raise a genuine issue of fact regarding causation in light of epidemiological evidence).

[39]See Plaintiff's Complaint for Damages, R. Doc. 1, Docket No. 09-cv-3251 and Plaintiff's Supplemental and Amending Complaint for Damages, R. Doc. 9401.

[40]Shwery Depo. at 104:16-19, excerpts attached as Ex. A.

not conclusively connect Plaintiff's sinus and breathing problems to her alleged formaldehyde exposure while she resided in the travel trailer. When questioned regarding whether Castanel ever told him  that she thought the formaldehyde in her travel trailer was causing her breathing problems, Shwery  testified that "no, it was really generic "living in that trailer, I had trouble".  I'm not sure if she would be familiar in detail about what formaldehyde is."[41]

Of note, the only medical expert that connects Castanel's increased sinus and breathing problems to formaldehyde exposure is plaintiff's expert witness, Dr. Lawrence Miller.  However, Dr.  Miller did not include any evidence in his January 28, 2010 affidavit[42] conclusively linking Castanel's sinus and breathing problems to formaldehyde exposure.  Rather, Dr. Miller has only made unsupported, blanket statements regarding a connection between Castanel's increased sinus symptoms and her alleged formaldehyde exposure. In fact, Dr. Miller testified he did not know what the tested level of formaldehyde was in the Castanel travel trailer.[43] Without specific evidence  of a causal connection between  Castanel's alleged exposure to formaldehyde while residing in the travel trailer and the exacerbation of her rhinosinusitis, Miller's statements on this issue are simply unfounded.[44]

Additionally, Dr. Miller's association of Castanel's exacerbated rhinosinusitis with her alleged exposure to formaldehyde does not coincide with the information Castanel shared with her

---

[41]Shwery Depo. at 83:25, 84:1-7, excerpts attached as Ex. A.

[42]Affidavit of Lawrence Miller, M.D., dated June 28, 2010, attached as Ex. F.

[43]Miller Depo. at 90:1-3, excerpts attached as Ex. G.

[44]Note, RBD is filing a *Motion in Liminie* to exclude Dr. Miller's opinions, and incorporates that motion and memorandum herein.

long term treating physician, Dr. Alan Bowers.  At an October 19, 2006 visit with Dr. Bowers, Castanel stated that her sinus problem was not any worse than usual.[45] [Note that Castanel had been residing in her travel trailer for about seven months at the time of that visit.]

Additionally, a review of plaintiff's medical records show that she has been a very nervous person and suffered from anxiety for the better part of the last twenty-five years.  Plaintiff's treating physician, Dr. Carter Paddock,  noted at a February 20, 1984 visit that "...her general health, mainly she said she was a very nervous person."[46]  Some ten years later, Castanel again noted to Dr. Paddock that she continued to suffer from nervousness. Dr. Paddock testified, "...So we kind of asked about her general health.  She said she was still nervous."[47]

Further, Dr. Bowers also testified that Castanel also noted that she had suffered from anxiety for several years prior to moving into her travel trailer.  Dr. Bowers first began treating Castanel in 2000 while he worked at Methodist Hospital.[48]  Dr. Bowers testified as follows regarding Castanel's history of anxiety:

> Q.     The anxiety, depression and nervousness you described
>          as chronic, and I did see repeated references to those
>          symptoms, did Ms. Castanel have an ongoing problem
>          with this nervousness and depression in 2004, 2005?
>
> A.     I think Ms. Castanel has always had an issue with anxiety.
>          She would be what most people call a high strung person.

---

[45]See Medical Records from October 19, 2006 visit with Dr. Alan Bowers which were attached as Exhibit #3 to his deposition, excerpts attached as Ex. H.

[46]Paddock Depo. at 25:2-3, excerpts attached as Ex. I.

[47]Paddock Depo. at 34:4-6, excerpts attached as  Ex. I.

[48]Bowers Depo. at 14:7-10, excerpts attached as Ex. B. Note that medical records are not available from Methodist Hospital because same was destroyed in Hurricane Katrina.

Q.      That's fair.  And do you remember if she had those nervousness
        issues and depression issues when you treated Ms. Castanel
        At Methodist Hospital?

A.      Definitely.

Q.      Yes, sir.  And was Ms. Castanel receiving any medication
        for those issues and nervousness and depression?

A.      She took some chlordiazepoxide for that kind of on an
        as-needed basis and we had attempted to try some daily
        maintenance medications but they were never successful
        or she would have certain side effects or issues with taking
        them so we were never able to stick with any one but we did
        try.[49]

Medical records from an October 21, 2003 visit Castanel had  with Dr. Bowers  reveal that

Castanel suffered from generalized anxiety disorder.[50]  Also of note is that at a March 29, 2006 visit

with Dr. Bowers, during which she resided in the travel trailer, Castanel stated that she was suffering

mentally and that one of her children was giving her trouble.[51]   When questioned about this visit at

his deposition, Dr. Bowers testified as follows:

Q.      "...If you don't mind, Doctor, let's go to it looks like March
        March 29, 2006.

A.      Here we go, yes.

Q.      Let's run through this visit in a little more detail.  Please tell
        us Ms Castanel's complaints.

A.      This patient had sustained quite a significant loss during

---

[49]Bowers Depo. at 32:15-25. 33:1-12, excerpts attached as Ex. B.

[50]See Medical Records from October 21, 2003 visit with Dr. Alan Bowers which were
attached as Exhibit #3 to his deposition, excerpts attached as Ex. H.

[51]See Medical Records from March 29, 2006 visit with Dr. Alan Bowers which were
attached as Exhibit #3 to his deposition, excerpts attached as Ex. H.

Hurricane Katrina and during this visit I think things had really started to get to her, and using her own words she said "I got problems" and she relayed that she cried every day.  She had lost everything and she has more than one child and usually one or the other of them can give her some trouble in her own words and she stresses out about that as well, but on this particular visit I do remember vividly seeing her in my office and seeing her very tearful describing the magnitude of her loss during the hurricane in a way that she could really make you feel how hollow she was because everything had been taken from her.  All of her memories, all of her possessions, everything.

Q.     And as I understand your testimony, you have a specific recollection of this meeting with Ms. Castanel?

A.     I definitely do.

Q.     And your notes are detailed as well that Ms. Castanel's emotional state on this date, January - - I'm sorry, March 29th, 2006 it was related to the loss that she sustained from the hurricane?

A.     Yes.

Q.     And some of the family problems she was having?

A.     Yes, sir.

Q.     Did Ms. Castanel mention any other reasons that she thought she was feeling this depression on March 29th, 2006?

A.     I think that pretty much covered it.

Q.     Yes, sir.  And you - - with your specific recollection, that's your recollection as well that her depression and her emotions were related to her loss from the hurricane?

A.     Yes, sir.[52]

Further, Dr. Bowers, when questioned regarding whether Castanel had ever mentioned to him that her FEMA trailer was causing any of her symptoms, responded that she had never once mentioned

---

[52]Bowers Depo. at 33:18-25, 34:1-25, 35:1-14, excerpts attached as Ex. B.

this to him. Dr. Bowers further stated that had Castanel made such a statement to him, he would have made a notation of it in her records because he writes exactly what the patient's primary complaint is as they speak it.[53]

There is no basis to connect Castanel's anxiety to her alleged formaldehyde exposure. First, no medical expert, including Dr. Miller, has opined that Castanel's alleged increased sinus problems were caused by exposure to a specific level of formaldehyde. Further, there is also a lack of evidence that Castanel has experienced an increase in her sinus problems. In fact, Castanel noted soon after she moved into the travel trailer that her sinus problems were about the same. As such, there is no evidence upon which a jury could reasonably find that Castanel's alleged anxiety is in any way caused by Defendants. Therefore, Castanel's mental anguish and emotional distress claims, should be dismissed as a matter of law.

### D. Plaintiff's fear of cancer claim has no evidentiary foundation because there is no specific evidence regarding her fear of cancer.

As mentioned above, in her First Supplemental and Amended Complaint, plaintiff alleged that she feared an increased risk of future serious disease. Plaintiff did not specify what "serious disease" she fears. However, in her deposition testimony, the only serious disease that she testified that she worried about developing was cancer. She testified this fear began about three or four months before her February 2, 2010 deposition, which is around the time when she was selected as a bellwether Plaintiff. As such, Defendants believe that it is necessary to address Plaintiff's fear of cancer claim. The only "evidence" of Castanel's fear of developing an unknown type of cancer is

---

[53]Bowers Depo. at 57:18-25, 58:1-7, excerpts attached as Ex. B.

her testimony during her second deposition,[54]  her vague statements regarding this fear at her second visit with Dr. Shwery on January 25, 2010,[55]  and in Dr. Miller's report regarding Castanel's fear of cancer being rationally based.[56]

Plaintiff filed her lawsuit in April of 2008, but did not include a fear of cancer claim in her complaint.  Additionally, she did not include a fear of cancer claim in her December 2009 supplemental and amended complaint nor did she mention it in her December 2009 deposition.  Yet, she testified at her February 2, 2010 deposition that she had been worrying about cancer for at least three or four months.[57]  Therefore, at the time Plaintiff amended her complaint she had developed a fear of cancer, yet her counsel did not include a fear of cancer claim in the amended complaint. Also, as stated above, Dr. Shwery could only testify that Plaintiff mentioned that she had a fear of cancer, but he could not testify to specifics, such as when Plaintiff first developed a fear of cancer and why she developed a fear of cancer.  Finally, Dr. Miller bases his conclusion that Plaintiff's fear of cancer is rational from her statements regarding her fear and based on Patricia Williams. Ph.D. report.[58]  He did not perform any independent medical research to support this conclusion nor did he even know the formaldehyde levels tested in Castanel's travel trailer.[59]

---

[54]Castanel Feb. 2, 2010 depo. at 137:8-19, excepts attached as Ex. C.

[55]Shwery Depo. at 65:6-8, excerpts attached as Ex. A.

[56]Aff. of Lawrence Miller, M.D., attached as Ex. F.

[57]Castanel Feb. 2, 2010 depo, at 137:8-19, excerpts attached as Ex. C.

[58]Please note RBD is filing a motion in accordance with the Court's Motion in Limine deadline to exclude Dr. Williams' testimony, and incorporates that motion and memorandum of law herein.

[59]Miller Depo, at 58:4-18 and 90:1-3, excerpts attached as Ex. G.

In *Smith v. A.C. & S., Inc.,* the plaintiff testified about his general concern for his future health, but the Fifth Circuit could not make the evidentiary leap from that general statement to a specific fear of cancer.[60]   The Fifth Circuit found that the district court erred in allowing expert testimony on the reasonableness of his fear of cancer when the proper evidentiary foundation had not been laid.[61]  In the instant matter, except for generalized comments regarding Castanel's recently developed fear of cancer, there has not been any evidentiary foundation laid to support Castanel's alleged fear of cancer claim.   As detailed in the proceeding paragraph, the Plaintiff did not even include a fear of cancer claim in her December 2009 amended complaint, even though at time of the amendment, she had allegedly recently developed a fear of cancer.  As such, just as the Court in *Scott* found that there was no evidentiary foundation laid, so should this Court find that there is no foundation for Castanel's fear of cancer claim.  Without the proper evidentiary foundation, Plaintiff's fear of cancer claim should be dismissed as a matter of law for this reason alone.

### E.   There is no genuine issue of material facts as to whether Plaintiff's fear of cancer claim is reasonable, and summary judgment should be granted in Defendants' favor.

Even if this Court were to conclude that there is a proper evidentiary foundation sufficient to permit the jury to hear expert testimony on the reasonableness of Plaintiff's alleged fear of cancer, the expert testimony offered by Plaintiff is insufficient to establish a reasonable fear.   Defendants are  moving separately to exclude Patricia Williams' testimony on general causation of cancer and

---

[60]*Smith*, 843 F.2d 859.

[61]*Id.*

incorporates those arguments herein.[62]  Without her testimony, Plaintiff has no evidence from which

a jury could reasonably conclude that her alleged fear of cancer is reasonable.  Therefore, Plaintiff's

fear of cancer claim should be dismissed for that reason alone.

But even if Patricia Williams is permitted to testify regarding cancer, her testimony is

insufficient to permit a jury to find that any fear of cancer is reasonable. Patricia Williams' opinions

are not connected to any exposure level, they are speculative, and they are not based on

epidemiological evidence.[63]

i.    **Without testimony regarding the level of exposure, causation for fear of cancer fails as a matter of law.**

The testimony from Patricia Williams on general causation does not provide any causal link

to the alleged exposure level of formaldehyde that Castanel experienced.[64]  Without any testimony

to connect exposure to formaldehyde at the level allegedly experienced by Castanel to her claimed

injuries, Plaintiff cannot prove that her fear of cancer is reasonable.  Even though a plaintiff only

need show that it is "possible" and not "probable" that she will contract a disease for a fear of future

disease claims,[65] that burden cannot be met here.  The scientific literature does not show that cancer

---

[62]The subject motion is being filed in accordance with the Court's Motion in Limine Deadline.

[63]In fact, the epidemiologist retained by the plaintiff in this matter, Dr. Gerald McGwin, Jr., M.S., Ph.D, did not offer an opinion as to an association between cancer and formaldehyde rather, his report addressed the association between respiratory health and formaldehyde exposure.  *See* McGwin depo. at 59:19-25 and 60:1-11, excerpts attached as Ex. J.

[64]Indeed, Dr. Williams has not provided an opinion as to what exposure levels are sufficient to trigger any cancerous process due to formaldehyde exposure. Williams Depo, (July 7, 2009) at 97:23-99:6, 127:18-132:15, excerpts attached as Ex. E.

[65]*Maurer,* 2002 WL 31819160, at *3.

is possible for someone exposed to *any* level of formaldehyde - - and Plaintiff must present some scientific evidence of what that level is that makes cancer even "possible."

> ### ii.  Williams' cancer opinion is too speculative, and therefore, no fear of cancer is reasonable.

Patricia Williams' testimony on theoretical DNA damage cannot save this claim.  That testimony contains too many leaps of faith that the jury would need to make to conclude that DNA damage occurred, and that it might result in cancer.  Her testimony is too speculative:

> A.   One molecule at the *theoretical* level can cause the damage.  It can also be repaired...we *are talking at the molecular level.*  So *theoretically,* molecular level, one hit could *theoretically* cause the mutation...
>
> * * * *
>
> A.   ...the *theoretical potential* is there, *if* the repair mechanisms fail, *if* the cell cycle timing of the hit is just that it isn't repaired...*there is no safe level* of the DNA-reactive carcinogen.[66]

Suffice it to say, her opinion is not only problematic because it is based on subclinical, subcellular damage *potential,* but by her own words it is, at best, "theoretical" and based on numerous "ifs" and uncertainties.

> ### iii.  Williams does not have sufficient epidemiological or other scientific evidence to support a fear of cancer claim.

Finally, Plaintiff cannot meet her burden of presenting expert testimony on the reasonableness of any fear simply by citing studies that address levels of exposure, citing public health standards, and then looking at the testing data for EHUs and formaldehyde levels.  While an expert can certainly start with those data points, the data must be analyzed further and applied to

---

[66]Williams Depo, dated July 7, 2009 at 133:5-134:15 (emphasis added), excerpts attached as Ex. E.

Castanel's specific situation.  But no expert has done this analysis.  It cannot be left up to the jury to look at various testing numbers and figure out which studies or public health standards that discuss exposure levels of gaseous formaldehyde are applicable in this case, and then decide whether cancer in the future is "possible."

Critically, there is no epidemiologic link between formaldehyde at the level that Castanel was allegedly exposed to and cancer of any kind.  Plaintiff's epidemiologist, Dr. McGwin, did not even address the link between formaldehyde and cancer.[67]  The evidence shows that the International Association for Research on Cancer ("IARC") has not set forth an association between formaldehyde and nasopharyngeal cancer ("NPC") at the level that Castanel was allegedly exposed to.  Even Christopher DeRosa, M.S., Ph.D. (an environmental health scientist for the CDC's Agency for Toxic Substances and Disease Registry ("ATSDE")) (who has not been retained by either plaintiffs or defendants), has testified that the IARC classification of formaldehyde as a known carcinogen is based primarily on a scientific study from the American Journal of Epidemiology entitled "Mortality from Solid Cancers among Workers in Formaldehyde Industries."[68]  That study concluded that there was no association between formaldehyde and NPC below a peak exposure of *four thousand* parts per billion (or 4 ppm).[69]  Furthermore, the median duration of exposure in the study was 35 years.[70]  This dose and duration of exposure far exceed the dose and duration that Castanel was exposed to.

---

[67]McGwin depo, at 59:18-25 and 60;1-11, excepts attached as Ex. J.

[68]*See* DeRosa Depo. at 256-57, excerpts attached as Ex. K.

[69]*See* Michael Hauptmann, et al., *Mortality from Solid Cancers among Workers in Formaldehyde Industries,* 159 Am. J. Epid, 1117 (2004); DeRose Dep. at 257-58, excerpts attached as Ex. K.

[70]Hauptmann at 1119, excerpts attached as Ex. L.

Plaintiff's expert witness, William D. Scott, testified at his March 31, 2010 deposition that the Castanel travel trailer had an active formaldehyde sample reading of 48 parts per billion of volume.[71]   Paul Hewett, the statistician designated by Plaintiff,[72] calculated that the mean formaldehyde level in occupied RBD "Morgan" models was 0.079 ppm - - far less than 4 ppm.[73] Thus, although the study - - and therefore, IARC - - conclude that there was an association between this cancer and this substance, there is no basis to support the conclusion that the association would exist at the levels that Castanel could have possibly experienced.

Considering the scientific study cited and relied upon by IARC, and the testimony of the expert witnesses in this matter, Defendants respectfully assert that there is no scientific basis to conclude that there is a link between formaldehyde at the .050 PPM level present in the Plaintiff's travel trailer and cancer of any type.  The epidemiologic and scientific studies show the scientific link between nasopharyngeal cancer and formaldehyde is nonexistent at the formaldehyde level Castanel was allegedly exposed to.  This Honorable Court has previously ruled that without such a link, a plaintiff's fear of cancer is not reasonable.[74]  In this case, Plaintiff has no reasonable fear of cancer, and therefore is not entitled to an award based on her alleged mental anguish.  For these additional reasons Defendants request that Plaintiff's fear of cancer claim be dismissed.

### III.  CONCLUSION

---

[71]Depo of W.D. Scott, at 39:6-15, excerpts attached as Ex. M.

[72]*See* Plaintiff's Designation of Expert Witnesses, dated Jan. 6, 2010, Ex N; Hewett CV attached as Ex. O.

[73]Hewett Aff. dated Jan. 26, 2010, at Table 8, excerpt attached as  Ex. P.

[74]*See Maurer,* 2002 WL 31819160, at *3.

19

Based on the forgoing, Defendants request that summary judgment be entered in their favor on Plaintiff's mental anguish, emotional distress, and fear of cancer claims. There is no expert testimony sufficient to connect Castanel's alleged anxiety to Defendants' actions, and the only bases for Plaintiff's fear of cancer claim are just vague allegations asserted by Castanel and her expert witnesses. Further, there is no scientific basis to show that it is even possible that Castanel could develop cancer in the future based on exposure to formaldehyde at the levels detected in her travel trailer. For these reasons, Defendants respectfully request that this Court grant summary judgment in their favor on all mental anguish claims.

Respectfully submitted,

*/s/ Randall C. Mulcahy*

LYON H. GARRISON, Bar No. 19591
SCOTT P. YOUNT, Bar No. 22679
RANDALL C. MULCAHY, Bar No. 26436
DARRIN L. FORTE, Bar No. 26885
KELLY M. MORTON, Bar No. 30645
GARRISON, YOUNT, FORTE
& MULCAHY, LLC
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 527-0680
Facsimile: (504) 527-0686
Attorneys for defendant,
Recreation By Design, LLC
Email: rmulcahy@garrisonyount.com

*/s/ M. David Kurtz*
ROY C. CHEATWOOD, Bar No. 4010
M. DAVID KURTZ, Bar No. 23821
KAREN K. WHITFIELD, Bar No. 19350
CATHERINE N. THIGPEN, Bar No. 30001
Baker Donelson Bearman Caldwell
& Berkowitz, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
Attorneys for defendant,
Shaw Environmental, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of this electronic filing to all known counsel of record.

*/s/ Randall C. Mulcahy*
RANDALL C. MULCAHY, Bar No. 26436