UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

|  |  |  |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | * * * * * * * * | MDL NO. 1873 <br><br> SECTION "N-5" <br><br><br> JUDGE ENGELHARDT <br> MAG. JUDGE CHASEZ |
| THIS DOCUMENT RELATES TO: *EARLINE CASTANEL, ET AL v. RECREATION BY DESIGN, LLC, SHAW ENVIRONMENTAL, INC., and UNITED STATES OF AMERICA THROUGH THE FEDERAL EMERGENCY MANAGEMENT AGENCY*, NO. 09-3251 | * * * * * * * * * * |  |

*****************************************************************************

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CAUSATION**

**MAY IT PLEASE THE COURT:**

Defendants, Recreation By Design, LLC ("RBD") and Shaw Environmental, Inc. ("Shaw") move for summary judgment based on Plaintiff's failure to show that there is any genuine issue of material fact regarding causation. Plaintiff has failed to produce any evidence that could support a judgment in her favor. Expert medical testimony is critical to finding causation in a toxic tort case,

and the experts presented by Plaintiff in this case are not able to supply the links that would enable a jury to find that her claimed injuries were caused by exposure to gaseous formaldehyde. Additionally, none of Plaintiff's experts can testify to any harmful level of exposure to formaldehyde. Defendants, therefore, assert that as a matter of law, all of Plaintiff's claims must be dismissed as a result of her failure to provide the general and specific causation testimony necessary to support her claims.

## I. BACKGROUND

Plaintiff, Earline Castanel, has claimed the following types of injuries: past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, and past and future reasonable and necessary medical expenses.[1] In her Supplemental and Amended Complaint, Plaintiff added and somewhat clarified her injuries as follows: mental anguish and emotion (sic) distress, including the fear of an increased risk of future serious disease, past, continuing and future medical expenses of plaintiff which have been necessitated by the injuries sustained herein, including costs of future medical treatment, services, and/or procedures to address physical and/or mental injuries from formaldehyde exposure which currently are manifest.[2]

Plaintiff's claims are broad and undefined, leaving Defendants unsure of the actual nature of the claims Plaintiff intended to advance against them. However, given the opinions rendered by Plaintiff's experts witnesses and the Plaintiff's deposition testimony, Plaintiff's claims have been

---

[1] See Plaintiff's Complaint for Damages, R. Doc. 1, Docket No. 09-3251, pg. 33, par. 105.

[2] See Plaintiff's Supplemental and Amending Complaint for Damages, R. Doc. 9401, pg. 4, par. 15.

narrowed to the exacerbation of her rhinosinusitis and mental anguish claims of anxiety and fear of cancer. Note that at her December 2, 2009 deposition, the Plaintiff did offer self serving, vague testimony about itching, headaches, puffy eyes, nausea, abdominal pain, diarrhea, and other vague complaints after moving in the trailer, but Ms. Castanel could not state what caused these alleged symptoms, and there is absolutely no medical evidence to suggest that the above symptoms were caused or exacerbated due to her residing in the FEMA travel trailer.[3]

In an attempt to support her claims, Plaintiff relies on three experts: Patricia M. Williams, Ph.D., Dr. Lawrence G. Miller, and Edward H. Shwery, Ph.D. As will be discussed in detail below, these experts simply do not provide the testimony needed to make a causal connection between formaldehyde and any of Castanel's alleged medical conditions

## II.  LAW AND ARGUMENT

### A.  Summary Judgment Standard

Pursuant to Rule 56(C) of the Federal Rules of Civil Procedure, summary judgment should be rendered if the pleadings, discovery, disclosure materials and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[4] The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant.[5] A fact is material if it "might affect the outcome of the suit under the governing law."[6] Further, "It is axiomatic that where questions of law alone are involved

---

[3] Castanel depo. dated Dec. 2, 2009, at pgs. 32 - 40, excerpts attached as Ex. A.

[4] Fed. R. Civ. P. 56(c).

[5] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[6] *Id.*

in a case, summary judgment is appropriate."[7]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the records contains insufficient proof concerning an essential element of the nonmoving party's claim.[8]  Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must go beyond the pleadings and through affidavits, depositions, answers to interrogatories, and admissions on file and designate specific facts showing that there is a genuine issue for trial.[9]

When considering a motion for summary judgement, the Court views the evidence in the light most favorable to the nonmoving party[10], and draws all reasonable inferences in favor of that party.[11]  Factual controversies are to be resolved in favor or the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[12]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[13]

---

[7]*Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tx. Steel Co.,* 538 F.2d 1116, 1119 (5th Cir. 1976).

[8]*See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.,* 910 F.2d 167, 178 (5th Cir. 1990).

[9]*Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

[10]*Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002).

[11]*Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001).

[12]*Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

[13]*Id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, the evidence is not properly before the district court."[14] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[15]

The nonmovant's burden of demonstrating a genuine issue is not satisfied by merely creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[16] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[17]

### B. A grant of summary judgment is proper when the Plaintiff cannot establish causation

It is the plaintiff's burden to prove causation under the Louisiana Products Liability Act and under Louisiana negligence law.[18] The plaintiff must prove causation through medical testimony that it is more probable than not that the subsequent injuries were caused by the product.[19] In a toxic tort

---

[14]*Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003).

[15]*Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied,* 513 U.S. 871 (1994).

[16]*Little,* 37 F.3d at 1075.

[17]*Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002).

[18]*Maranto v. Goodyear Tire & Rubber Co.,* 650 So.2d 757, 759 (La. 1995).

[19]*Kemp v. Metabolife Int'l, Inc.,* No. 00-3513, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004); *see also Hutchinson v. Shah,* 648 So.2d 451, 452 (La. App. 1st Cir. 1994) ("[w]hen the

case, the plaintiff must prove both general causation and specific causation - - and must do so with competent expert testimony.[20] General causation deals with whether the substance at issue can cause certain diseases in people in general.[21] Specific causation focuses upon whether the substance was in fact the cause of the ailments or symptoms in the particular patient.[22] Not only is expert medical testimony required to establish causation, but in a toxic tort case, the plaintiff must also present evidence of the harmful level of exposure to the chemical, and knowledge that plaintiff was exposed to that level:

> Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case.[23]

Because both specific and general causation are required, when the plaintiff fails to establish either specific causation or general causation, the plaintiff's claim fails.[24]

---

conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required").

[20] *Knight v. Kirby Inland Marine Inc.,* 483 F.3d 347, 351 (5th Cir. 2007).

[21] *Kemp,* 2004 WL 2095618, at *3 (citing *Pick v. Am. Med. Sys., Inc.,* 958 F. Supp. 1151, 1164 (E.D. La. 1997)).

[22] *Pick,* 958 F. Supp. at 1164.

[23] *Allen v. Pa. Eng'g Corp.,* 102 F.3d 197, 199 (5th Cir. 1996); *see also Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 279 n.10 (5th Cir. 1996) (noting importance of the expert knowing the level of exposure to support his causation opinion).

[24] *Pick,* 958 F. Supp. at 1163 (granting summary judgment as to specific causation); *see also Leija v. Penn Maritime, Inc.,* No. 06-10489, 2009 WL 211723, at *3 (E.D. La. Jan. 23, 2009) (granting summary judgment in favor of defendant when proposed expert testimony was insufficient to create an issue of fact as to specific causation); *Babin v. Ecolab, Inc.,* No. 2:04-CV-1595, 2005 WL 1629947, at *5 (W.D. La. July 5, 2005) (granting summary judgment when plaintiffs failed to establish that there is a genuine issue of material fact as to general causation).

Without specific or general causation, not only do the claims for present alleged injuries fail, but any mental anguish, fear of cancer, and medical monitoring, if any, claims also fail. Mental anguish claims, which include the fear of cancer, must be causally related to the defendant's actions.[25] Moreover, damages for mental anguish are only recoverable when the mental anguish results from the fear of developing a condition "as a result of a *present injury*."[26] Further, damages for medical monitoring are only permitted when the monitoring procedures are "directly related to a manifest physical or mental injury or disease."[27] Louisiana law also requires a "significant exposure to a proven hazardous substance" to succeed on a medical monitoring claim.[28] When the underlying claims fail as a matter of law, there is nothing left to base medical monitoring damages on, so any such claim should be dismissed as well.[29]

    **C.    All Plaintiff's claims for damages must be dismissed due to lack of causation testimony**

        **I.    General Causation**

Plaintiff has advanced claims of exacerbation of rhinosinusitis, mental anguish and fear of

---

[25] *Smith v. A.C. & S., Inc.,* 843 F.2d 854, 857-58 (5th Cir. 1988) (quoting *Hagerty v. L&L Marine Svcs., Inc.,* 788 F.2d 315, 318 (5th Cir. 1986)); *see also Maurer v. Heyer-Schulte Corp.,* No. 92-3485, 2002 WL 31819160, at *3 (E.D. La. Dec. 13, 2002)(causation is required for fear of cancer claims). "'[C]ancerphobia' is merely a specific type of compensable mental anguish or emotional distress." *Smith,* 843 F.2d at 858.

[26] *Id.* at 585 (emphasis added).

[27] La. Civ. Code Ann. Art. 2315(B) (2009).

[28] *See Scott v. Am. Tobacco Co., Inc.,* 949 So.2d 1266, 1282-83 (La. App. 4th 2007).

[29] *See, e.g., Anderson v. Dow Chem. Co.,* No. 06-30445, 2007 WL 1879170, at *5 (5th Cir. June 28, 2007) (affirming grant of summary judgment, including medical monitoring claim, when claims for mental anguish and increased risk of future disease were dismissed).

cancer as the injuries and symptoms she experienced as a result of the alleged formaldehyde exposure she suffered while residing in her FEMA travel trailer. However, Plaintiff has not presented both the general and specific causation testimony necessary to support these claims.

Plaintiff's general causation expert witness, Patricia Williams, Ph.D.[30], has opined as follows:

> "Therefore, the following General Causation opinion is rendered:
> A cause-effect relationship exists between formaldehyde and upper respiratory tract damage and cancer. A cause-effect relationship exists between formaldehyde and bronchoconstriction/asthma. A cause-effect relationship exists between formaldehyde and eczema. An association exists between formaldehyde and epistaxis. An association exists between epistaxis and cancer of the sinuses, nasal cavity, and nasal vestibule and wall. An association exists between mold and nonallergic rhinitis. A cause-effect relationship exists between formaldehyde and leukemia.[31]

The obvious distinction that Williams draws in her analysis is the one between "cause-effect" as opposed to "association." According to the Federal Judicial Center's *Reference Manual on Scientific Evidence,* "it should be emphasized that an association is not equivalent to causation. ...An association between exposure to an agent and disease exists when they occur together more frequently than one would expect by chance. Although a causal relationship is one possible explanation for an observed association between an exposure and a disease, an association does not necessarily mean that there is a cause-effect relationship.[32]

---

[30]Williams testified at her Feb. 24, 2010 deposition that she was Plaintiff's general causation expert, that she did not review any documents specific to Castanel, and that she did not have any information specific to Castanel. See Williams depo. at 10:2-6 and 13:1-4, excerpts attached as Ex. B.

[31]Expert Affidavit of Patricia M. Williams, Ph.D., DABT, pg. 70, excerpts attached as Ex. C.

[32]Michael D. Green, et al, "Reference Guide on Epidemiology," Federal Judicial Center 2000, *Reference Manual on Scientific Evidence, Second Edition,* at pp. 335-37, 348 (notations

Williams is fully aware of the meaning of terms like "cause-effect relationship" and "association." She testified:

> Q: Okay. What's the difference between a cause and effect relationship and an association?
>
> A: Well, an association means that you cannot rise to the level of the Sir Bradford Hill causal considerations in the strength of association or in some other parameter, so that you can't give a definitive statement of cause and effect or causation.
>
> ****
>
> Q. In order to go from association to cause and effect, you need to reach two times on the Bradford Hill criteria, correct?
>
> A. Well, you need to have – And, I mean, you need to have – It's not just the strength of association, but you have several considerations that you make. It means in general terms that something is lacking that would not give it the status of causation if it met all or – It doesn't have to be all, but it has to meet a significant amount for you to make the call. I am the expert. For my purposes, it did not reach to the level that I would use, that I use, which is Federal Court requirements, to rise to the level of causation.
>
> Q. So you know the difference between association and cause and effect as you wrote this report, correct?
>
> A. Correct.[33]

Williams has therefore only identified a discrete set of conditions that, in her opinion, are causally linked to formaldehyde: (a) upper respiratory tract damage and cancer, (2) bronchoconstriction/asthma, (3) eczema, and (4) leukemia, as having a causal link to formaldehyde. Williams does not mention rhinosinusitis causation in her opinion. The Plaintiff, has therefore failed

---

omitted).

[33] Williams Depo. dated Dec. 3, 2009, at pgs. 73-77, attached as Ex. D.

to provide the required general causation testimony necessary to support her exacerbation of rhinosinusitis claim.

### ii.     Specific Causation

As detailed above, in a toxic tort case, a plaintiff must also present evidence of the harmful level of exposure to the chemical, and knowledge that plaintiff was exposed to that level.[34] In the instant matter, the Plaintiff has failed to satisfy either of these requirements.

On the specific causation side, Dr. Lawrence Miller has opined that, "within a reasonable degree of medical probability, the exposure to formaldehyde emissions during her residence in the FEMA trailer significantly exacerbated Ms. Castanel's rhinosinusitis."[35] Dr. Miller relied largely on the medical history given to him by Castanel in reaching this conclusion.[36]

However, when presented with medical testimony at his deposition that Castanel's rhinosinusitis symptoms did not increase while she resided in the FEMA travel trailer or after moving out of the trailer, Dr. Miller conceded that he would have to revisit his conclusion regarding her rhinosinusitis. Dr. Miller testified:

> Q.     "I have a question. The question is, would you disagree with this testimony - - this is Dr. Bowers - - referring to Page 58, 13: "Question: With respect to Ms. Castanel's overall health, how would you describe her health? Answer: I think her health is good.

---

[34] *Allen v. Pa. Eng'g Corp.,* 102 F.3d 197, 199 (5th Cir. 1996); *see also Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 279 n.10 (5th Cir. 1996) (noting importance of the expert knowing the level of exposure to support his causation opinion).

[35] See Affidavit of Dr. Lawrence Miller, dated Jan. 28, 2010, at pg. 6, excerpts attached as Ex. E.

[36] Miller depo. at 110:1-7, excerpts attached as Ex. F.

10

"Question: The office notes we just went through from October of 2003 until last week, Ms. Castanel was treated on a consistent basis; would that be fair to say?  Answer: Yes, sir.

"Question: Did you see any changes in Ms. Castanel's condition, significant changes, during that time period from 2003 to last week?"  And just so you'll know, "last week" was in January of 2010.  "Answer: No, I can't say that it did.

"Question: Would you say that her health and her symptoms remained relatively consistent during the time period, that six-and-a-half, almost seven-year time period?  Answer: Yes.

"Question: Actually a little more than six years.  Based on a review of your medical notes and your records, it appears as though Ms. Castanel treated consistently for sinus problems before Hurricane Katrina; is that correct?  Answer: Yes, sir.

"Question: Would it be fair to say - - did you not sense or note any increase in Ms. Castanel's sinus problems after Hurricane Katrina?"  And Dr. Bowers testified, "No."

Would you have any reason to disagree with that testimony?

A.  The testimony is what it is.  It's not my job to agree or disagree.  In terms of Ms. Castanel's sinus problems, obviously she gave me different information.

Q.  If the information given to Dr. Bowers is accurate, and that is that Ms. Castanel did not have any increase in sinus problems after Hurricane Katrina or after living in a FEMA unit, would you still stand by your opinions regarding the fact that you believe Ms. Castanel had an exacerbation of her sinusitis?

A.  I can't answer your question.  That's not the information I received, so I can't give you an answer.

Q.  I want you to assume - - you're an expert.  I want you to make an assumption.

****

A.  It doesn't make sense.  It's counterfactual to information I have.

11

                So I don't think I can answer you.

Q.      That's fine. Let's put the facts that you got from Ms. Castanel on the side, just for purposes of this question.

A.      Are we talking about a hypothetical patient, some other patient?

Q.      We're talking about a hypothetical question.

A.      I'm not sure I understand that at this point.

Q.      Let's just go through it. You're an expert, or they're going to attempt to qualify you as an expert. Putting the history given by Ms. Castanel on the side, if Ms. Castanel did not have any increase in her sinus symptoms after Hurricane Katrina or while living in the FEMA unit or after the FEMA unit, would you still opine that Ms. Castanel had an exacerbation of her sinusitis as a result of formaldehyde?

\*\*\*\*

A.      I would revisit that conclusion. I'm not sure I can give you that exact answer as we sit here.

Q.      So you can't answer that hypothetical?

A.      I can't.[37]

Most importantly, Dr. Miller failed to define what is considered to be a harmful level of formaldehyde and he did not provide evidence that Plaintiff was exposed to this requisite level of formaldehyde. In his report, Dr. Miller only writes in general terms when referencing both of these issues. On page 5 of his report, Dr. Miller states that the "MRL derived for intermediate inhalation (15-365 days) is 30 ppb, and for chronic inhalation (greater than 365 days) is 8 ppb."[38] However, Dr. Miller does not indicate whether he believes that exposure to levels of formaldehyde at levels

---

[37]Miller depo. at 102:1-24, 103:1-24, 104:1-24, and 105:1-3, excerpts attached as Ex. F.

[38]Miller affidavit, pg. 5, attached as Ex. E.

greater than the stated MRL's are harmful. Further, Dr. Miller also failed to provide evidence that plaintiff was exposed to this the requisite level of formaldehyde which is harmful to humans. Again, in his report, he only address this issue in general terms. He writes as follows:

> With regard to Ms. Castanel, the primary elements for the correlation of her rhinosinusitis with formaldehyde exposure are present. As previously noted, a "completed exposure pathway" is present, indicating the strong likelihood that Ms. Castanel was exposed chronically to formaldehyde emissions in her "FEMA trailer" housing.[39]

Further, when questioned at his deposition regarding the level of formaldehyde in Castanel's FEMA travel trailer, Miller responded as follows:

> Q. As you sit here today, you don't know what the level of formaldehyde was in Ms. Castanel's trailer?
>
> ****
>
> A. Again, what I specifically, no. I've discussed the level in FEMA trailers in general in this report.
>
> Q. And you offered opinions in your report regarding Ms. Castanel's condition and its relationship to formaldehyde in her trailer without knowing the level of formaldehyde in her trailer, correct?
>
> A. Correct.[40]

It is clear from the above referenced excerpts from Dr. Miller's report and deposition testimony, that he does not "present evidence of the harmful level of exposure to the chemical, and

---

[39] Miller affidavit, pg. 6, attached as Ex. E.

[40] Miller depo. at 90:12 - 24, excerpts attached as Ex. F.

knowledge that plaintiff was exposed to that level" as required by law.[41]

Additionally, at his April 7, 2010 deposition, RBD IME expert witness, Dr. H. James Wedner, unequivocally testified that there is no connection between Castanel's 2010 nasal procedure and her alleged exposure to formaldehyde while residing in her FEMA travel trailer in 2006 and 2007.[42] After meeting with and examining Castanel, and after reviewing her medical records related to treatment before and after she resided in the FEMA travel trailer, Dr. Wedner opined that there is no physical evidence of injury as a result of alleged exposure to formaldehyde, nor did he find any evidence in Castanel's medical records of any injury sustained as a result of alleged exposure to formaldehyde.[43] Further, unlike Dr. Miller, who did not know the formaldehyde level in Castanel's FEMA travel trailer, Dr. Wedner opined that the .050 ppm tested level of formaldehyde in Castanel's FEMA travel trailer would not have caused any irritation or injury to Castanel's sinuses.[44]

Plaintiff has, therefore not provided specific causation testimony linking her alleged exacerbation of rhinosinusitis claim to formaldehyde exposure. As such, Plaintiff's exacerbation of rhinosinusitis claim must fail.

> iii.    **Plaintiff's treating physicians do not make a causal connection between her ailments and alleged formaldehyde exposure**

---

[41]*Allen v. Pa. Eng'g Corp.,* 102 F.3d 197, 199 (5th Cir. 1996); *see also Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 279 n.10 (5th Cir. 1996) (noting importance of the expert knowing the level of exposure to support his causation opinion).

[42]The transcript of Dr. H. James Wedner's April 7, 2010 deposition is not yet available. Defendants will supplement this memorandum with the citation to Dr. Wedner's transcript as soon as it becomes available.

[43]*Id.*

[44]*Id.*

Several of Plaintiff's long-term treating physicians were deposed in conjunction with this matter and none testified to a causal link between Castanel's medical conditions and her alleged formaldehyde exposure.

Plaintiff has been a patient of Dr. Alan Bowers, a board certified internist, for the past ten years. She first treated with Dr. Bowers at Methodist Hospital, and continued her treatment with him when he joined the Family Doctors Clinic.[45] At his deposition, Dr. Bower's testified that Castanel's medical condition was the same after Hurricane Katrina, while she was residing in the FEMA travel trailer, as it was before the storm.[46] Dr. Bowers also testified that he did not notice any increase of Castanel's various medical conditions, including her sinus complaints, while she was residing in the travel trailer.[47] Additionally, he testified that it was his opinion that Castanel did not suffer any type of injury as a result of residing in the travel trailer.[48]

Dr. Joseph Gautreaux, a board certified Ear, Nose, and Throat specialist, has treated the Plaintiff since 2002 for various sinus complaints. At his January deposition, Dr. Gautreaux testified that he did not detect a change in Castanel's medical condition during the time she resided in the travel trailer.[49] Dr. Gautreaux also testified that throughout the course of his treatment of Castanel from 2002 to present, she suffered from sinusitis and that he did not see any changes in her diagnosis

---

[45] Bowers depo. at 59:17-25 and 60:1-11, excerpts attached as Ex. G.

[46] Bowers depo. at 61:17-25, excerpts attached as Ex. G.

[47] Bowers depo. at 62:14-17, excerpts attached as Ex. G.

[48] Bowers depo. at 63: 1-18, excerpts attached as Ex. G.

[49] Gautreaux depo. at 54:10-22, 79:21-25, and 80:1-2, excerpts attached as Ex. H.

after Hurricane Katrina.[50] Dr. Gautreaux also stated that he has no knowledge of whether formaldehyde can worsen a rhinitis condition[51] and that Castanel did not once tell him that she thought her symptoms were related to residing in a FEMA travel trailer.[52]

Further, Dr. Gautreaux also testified that Plaintiff's increased incidences of sinusitis in 2009 were likely due to exposure to bacteria[53] and were not in any way related to any alleged exposures dating back to 2007 (the time she resided in the FEMA travel trailer).[54] Given Dr. Gautreaux's testimony that Plaintiff's increased incidences of sinusitis in 2009 were unrelated to the time she resided in her FEMA travel trailer, it follows that her resulting surgery for treatment of this condition is also unrelated to any alleged exposure Castanel experienced while residing in her travel trailer in 2007.

Additionally, Plaintiff's treating dermatologist, Dr. Carter Paddock, who has treated Castanel for several years, testified at his deposition that Castanel did not experience an increase in her dermatitis or eczema following Hurricane Katrina.[55] Drs. Reddy and O'Byrne, who have both also treated Castanel for several years, testified that none of the medical conditions they treated Castanel for were caused by formaldehyde exposure.[56]

---

[50] Gautreaux depo. at 54:6-14, excerpts attached as Ex. H.

[51] Gautreaux depo. at 67:2-5, excerpts attached as Ex. H.

[52] Gautreaux depo. at 81:5-12, excerpts attached as Ex. H.

[53] Gautreaux depo. at 88:10-17, excerpts attached as Ex. H.

[54] Gautreaux depo. At 89:17-25 and 90:1-7, excerpts attached as Ex. H.

[55] Paddock depo. at 101:25 and 102:1-13, excerpts attached as Ex. I.

[56] Reddy depo. at 37:5-24, excerpts attached as Ex. J and O'Byrne depo. at 73:13-25 and 74:1-10, excerpts attached as Ex. K.

As detailed above, Castanel's treating physicians, who have treated and followed her medical conditions over the years, did not make a connection between her various medical conditions and the time she resided in the FEMA travel trailer nor did they connect her various symptoms to her alleged formaldehyde exposure.

> iv. **Plaintiff's mental anguish, medical monitoring and fear of cancer claims should be dismissed**

As noted above, without specific or general causation, Plaintiff's mental damages claims also fail as a matter of law. Mental anguish claims, which include the fear of cancer, must be causally related to a defendant's actions.[57] Moreover, damages for mental anguish are only recoverable when the mental anguish results from the fear of developing a condition "as a result of a *present injury*."[58] As discussed above, Plaintiff has failed to carry her burden of proof to provide the expert causation testimony necessary to recover for any present injury. Although a separate Motion for Summary Judgment is being filed relating to Plaintiff's mental anguish and fear of cancer claims, the arguments made in this motion are sufficient to dismiss all of Plaintiff's mental anguish claims, including those related to depression, anxiety, increased stress and fear of cancer.[59]

Finally, though it does not appear that Plaintiff asserted a claim for medical monitoring, out

---

[57] *Smith v. A.C., Inc.,* 843 F.2d 854, 857-58 (5th Cir. 1988) (quoting *Hagerty v. L & L Marine Svcs., Inc.,* 788 F.2d 315, 318 (5th Cir. 1986)); *see also Maurer v. Heyer-Schulte Corp.,* No. 92-3485, 2002 WL 31819160, at *3 (E.D. La. Dec. 13, 2002) (causation is required for fear of cancer claims). "'[C]ancerphobia' is merely a specific type of compensable mental anguish or emotional distress." *Smith,* 843 F.2d 585.

[58] *Id.* at 858 (emphasis added).

[59] Defendants are filing a separate Motion for Summary Judgment regarding Plaintiff's mental anguish and fear of cancer claims, and incorporates the arguments and memorandum included in that motion into the instant motion.

17

of an abundance of caution, Defendants submit to this Court that Plaintiff has not offered any evidence regarding the need for medical monitoring nor has any physician opined regarding the need for future medical monitoring. Therefore, to the extent that Plaintiff has asserted a medical monitoring claim, it too should fail.

## CONCLUSION

The Plaintiff has plainly failed to meet her burden under the LPLA and Louisiana negligence law to provide the requisite causation testimony for any alleged injuries. For the foregoing reasons, Defendants request that the Court to grant summary judgment in their favor, dismissing all of Plaintiff's claims, with prejudice, and assessing the costs of these proceedings against Plaintiff.

Respectfully submitted,

*/s/ Randall C. Mulcahy*
LYON H. GARRISON, Bar No. 19591
SCOTT P. YOUNT, Bar No. 22679
RANDALL C. MULCAHY, Bar No. 26436
DARRIN L. FORTE, Bar No. 26885
KELLY M. MORTON, Bar No. 30645
GARRISON, YOUNT, FORTE
& MULCAHY, LLC
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 527-0680
Facsimile: (504) 527-0686
Attorneys for defendant,
Recreation By Design, LLC
Email: rmulcahy@garrisonyount.com

                                    */s/ M. David Kurtz*
ROY C. CHEATWOOD, Bar No. 4010
M. DAVID KURTZ, Bar No. 23821
KAREN K. WHITFIELD, Bar No. 19350
CATHERINE N. THIGPEN, Bar No. 30001
Baker Donelson Bearman Caldwell
& Berkowitz, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Attorneys for defendant,
Shaw Environmental, Inc.


## CERTIFICATE OF SERVICE

    I hereby certify that on April 8, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of this electronic filing to all known counsel of record.

                                    */s/ Randall C. Mulcahy*
RANDALL C. MULCAHY, Bar No. 26436