UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N(5)<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO:<br>*Earline Castanel v. Recreation by Design,<br>L.L.C., et al.*, No. 09-3251 | MAGISTRATE CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF SHAW ENVIRONMENTAL, INC.'S
MOTION FOR SUMMARY JUDGMENT ON CAUSATION**

Shaw Environmental, Inc. ("Shaw") respectfully submits this memorandum in support of its motion for summary judgment on causation. Plaintiff has presented no evidence that raises a genuine issue of material fact as to whether Shaw's actions and/or inactions actually increased the concentration of formaldehyde in Plaintiff's trailer, thereby causing or exacerbating the claimed injuries. In particular, Plaintiff has offered no expert opinion that Shaw damaged the Trailer while installing it. This stands in marked contrast to both the *Wright* case, in which plaintiff's expert opined that installation had led to water damage, and the *Alexander* case, in which there was an opinion that installation caused a wall panel to pop out.[1] Here, there is no

---

[1] Of course, both juries rejected these strained interpretations of the facts. The point here is that the expert opinions that allowed those cases to survive summary judgment are absent from this case.

opinion that installation damage actually occurred to Ms. Castanel's trailer; rather, there is only the opinion that installation may, if done improperly, damage trailers. This possibility is plainly insufficient to withstand summary judgment; imagine the consequences if plaintiffs could bring car wreck cases with no evidence that their cars were damaged but only the opinion that cars may be damaged if other people drive improperly. Accordingly, Shaw is entitled to judgment as a matter of law, dismissing all of Plaintiff's claims against it with prejudice.

## PRELIMINARY STATEMENT

The legal principles that govern this Motion are not in dispute. It is black-letter law that Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.'"[2] And it is equally settled that causation is "an essential element of any tort claim."[3] Thus, to avoid summary judgment here, Plaintiff must identify specific evidence in the record that would enable her at trial to show, by a preponderance of the evidence, that Shaw's actions or inactions actually injured Plaintiff by increasing the level of formaldehyde in her unit. Given that Shaw plainly had nothing to do with the formaldehyde directly, Ms. Castanel – like all plaintiffs in this MDL asserting claims against government contractor defendants – has confected a tortuous chain of "causation" in a futile attempt to connect Shaw to her claimed injuries.

---

[2] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[3] *Jenkins v. St. Paul Fire & Marine Ins. Co.,* 422 So.2d 1109, 1110 (La.1982).

2

Specifically, Plaintiff claims that Shaw somehow did something when installing the Trailer and/or maintaining the Trailer that raised the level of formaldehyde in the unit, thereby causing or exacerbating her damage.[4]  However, as demonstrated below, Plaintiff has not come forward with any evidence – expert testimony or otherwise – to show that Shaw "more likely than not" caused and/or exacerbated her claimed injuries resulting from alleged exposure to formaldehyde.  In other words, there is a lack of sufficient evidence that would enable Plaintiff to satisfy her burden of proof on causation.  Plaintiff's entire case against Shaw rests on nothing more than conclusory allegations, speculation, and unsubstantiated assertions, which, on a motion for summary judgment, "are inadequate to satisfy the nonmovant's burden."[5]

## FACTUAL BACKGROUND

Pursuant to its contract with FEMA, Shaw (through its subcontractor) installed the Trailer on or about December 8, 2005.[6]  Due to the difficulties that Entergy experienced in restoring electrical power to the area where the Trailer was located, the Trailer could not be powered up and made ready for occupancy until March 2006.[7]  Once power became available, however, Shaw was able to make the Trailer fully ready for occupancy.  On March 11, 2006, Plaintiff conducted a "lease-in" process with Shaw (through its subcontractor).[8]  During that process,

---

[4] The travel trailer in which Ms. Castanel lived was manufactured by Recreation By Design, L.L.C. and bore VIN number 5CZ200R2461125294  (the "Trailer").

[5] *Douglas v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citation omitted).

[6] Affidavit of Geoffrey C. Compeau, ¶¶ 16-17 attached hereto as Exhibit "A" and Exhibits "7"-"9" thereto (the "Compeau Affidavit").

[7] Compeau Affidavit, ¶ 18, Exh. "A."

[8] Compeau Affidavit, ¶ 21, Exh. "A."

Plaintiff conducted an inspection of the Trailer and found nothing wrong with it, as indicated by her signature on the lease-in forms.[9]

After Plaintiff moved into the Trailer, Shaw maintained it for less than three months, until June 1, 2006, when C. Martin Company assumed maintenance responsibility.[10] During the period of Shaw's maintenance, Plaintiff lodged no formaldehyde or other odor-related complaints.[11]

## LAW AND ARGUMENT

### I.  SUMMARY JUDGMENT STANDARD

#### A.  General Standard

Summary judgment is proper when there is "no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law."[12] "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[13] Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[14]

---

[9] Compeau Affidavit, ¶¶ 21, 22 Exh. "A" and Exhibits "11," "13" thereto; Deposition of Earline Castanel, February 10, 2010, pp. 187:21-188:9, attached hereto as Exhibit "B."

[10] Affidavit of Allison Hansen, ¶ 11, attached hereto as Exhibit "C."

[11] Compeau Affidavit, ¶¶ 23-25 and Exhibits "14" and "15" thereto, Exh. "A."

[12] Fed. R. Civ. P. 56(c).

[13] *Celotex Corp.* 477 U.S. at 323-24.

[14] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citations and internal quotations omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.") (citations omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.

The moving party must initially demonstrate that no genuine issue of material fact exists and identify those portions of the record which it believes show the absence of a genuine issue of material fact.[15]  However, once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."[16]  To satisfy this burden, the non-movant must proffer *sufficient* evidence to show that a reasonable jury could find in its favor – that is, that "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."[17]  The existence of "some evidence" favoring the nonmoving party will not prevent summary judgment unless the evidence is "of such a character that it would warrant the jury in finding a verdict in favor of that party."[18]

### B. To Avoid Summary Judgment the Record Must Show a "Genuine Issue," Not Just a Factual Dispute.

A "genuine issue" may be lacking even when the non-moving party purports to "dispute" facts in issue.  In particular, summary judgment is proper, even when a "dispute" exists, if the evidence is not sufficient to allow a reasonable jury to find for the non-moving party.[19]  The Fifth

---

[15] *Celotex Corp.,* 477 U.S. at 323; *Little,* 37 F.3d at 1075.

[16] *Id.* at 322.

[17] *Anderson,* 477 U.S. at 249-50, 252.  *See also Frakes v. Crete Carrier Corp.,* 579 F.3d 426, 430-431 (5th 2009) ("[P]laintiff has the burden to put forth sufficient evidence to create a genuine dispute" as to a material fact); *Florida Dep't of Ins. v. Chase Bank of Texas Nat'l Ass'n,* 274 F.3d 924, 928 (5th Cir. 2001) ("After a defendant properly moves for summary judgment, the non-movant plaintiff must bring forward sufficient evidence to demonstrate that a genuine issue of material fact exists on every element of a claim."); *Ginsberg 1985 Real Estate P'ship v. Cadle Co.,* 39 F.3d 528, 531 (5th Cir. 1994) ("An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party.").

[18] *Id.* at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)).

[19] *See Anderson,* 477 U.S. at 248-49.

Circuit has held that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[20] Furthermore, "[e]vidence purporting to create doubts as to the facts that is too incredible to be accepted by reasonable minds will not prevent summary judgment."[21] Several points of law follow from these basic principles.

First, "[e]vidence manifestly at variance with the laws of nature and the physical facts is of no probative value and may not support a jury verdict."[22] In *Molden v. Georgia Gulf Corp.*, the court granted summary judgment despite the plaintiffs' testimony that they suffered physical injuries within a short time of a toxic chemical release because the scientific evidence showed that their level of exposure was not sufficiently high to give rise to their physical injuries.[23]

Second, equivocal or vague testimony cannot be relied on to overcome summary judgment.[24] Likewise, expert testimony is insufficient to create a genuine issue of material fact if that testimony consists of "conclusory, unsupported assertions."[25] For example, the Fifth Circuit has held that expert testimony that goes beyond the bounds of the expert's expertise, contains internal inconsistencies, and provides no comment on key considerations is not

---

[20] *Little,* 37 F.3d at 1075 (citation and quotation omitted).

[21] *Barker v. Norman,* 651 F.2d 1107, 1127 (5th Cir. 1981).

[22] *Ralston Purina Co. v. Hobson,* 554 F.2d 725, 729 (5th Cir. 1977).

[23] 465 F. Supp. 2d 606, 613-614 (M.D. La. 2006).

[24] *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 271-72 (5th Cir. 2002).

[25] *Kampen v. American Isuzu Motors, Inc.,* 157 F.3d 306, 318 (5th Cir. 1998).

sufficient to defeat summary judgment.[26] In *White v. Black & Decker (U.S.) Inc.,* this Court granted summary judgment to the defendant in a product defect case because the plaintiffs' expert did not provide adequate factual support or explanation for his assertions, admitted he was unaware of studies that supported his statements, and conducted no tests himself to support his position.[27]

Finally, a party may not avoid summary judgment by relying on an unsubstantiated interpretation of its own evidence. Thus, although the evidence is viewed in the light most favorable to the non-moving party, summary judgment is appropriate when the moving party shows that the evidence relied upon by the other party is simply not susceptible to the interpretation which the other party gives it.[28] In *Sievers,* the court refused to infer a causal connection between an airplane crash and an alleged aircraft defect, and granted summary judgment on that basis, because there was no physical evidence of a causal relationship, an investigation by a federal agency did not conclude the crash was caused by defendant's negligence, and there was a reasonable alternative explanation for the cause of the crash.[29] In *Little v. Liquid Air Corp.,* the Fifth Circuit rejected the plaintiff's inference that "nasal fatigue" was the cause of the decedent's failure to smell the combustible gas that caused a fatal explosion,

---

[26] *Id.*

[27] Civ. A. No. 03-0874, 2004 WL 1373271 at *9 (E.D. La. June 16, 2004).

[28] *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968); *Sievers v. Beechcraft Mfg. Co.,* 497 F. Supp. 197, 200 (E.D. La. 1980).

[29] 497 F. Supp. at 199-202.

finding that the reason for his failure to smell the gas could not be inferred from his failure to evacuate the area.[30]

### C. Summary Judgment on Causation is Appropriate.

Causation is the first element of proof of a negligence claim.[31] The Louisiana Supreme Court has stated that "[a] negligent party may not be held liable where his negligence is not a cause-in-fact of the accident . . . ."[32] The plaintiff in a negligence action has the burden of proving causation by a preponderance of the evidence, *i.e.* the plaintiff must show that based on the evidence it is more probable than not that harm was caused by tortious conduct of the defendant.[33] "To be actionable the defendant's conduct must be both the cause-in-fact and a legal cause of the plaintiff's damages. Conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm, *i.e.,* but for the defendant's conduct, the plaintiff would not have sustained the injury."[34] It is not enough for the plaintiff to prove tortious conduct on the part of the defendant; "the plaintiff has the burden of establishing a causal connection between the defendant's act or omission and the plaintiff's damages."[35]

In cases involving multiple causes, the Fifth Circuit has concluded that the threshold test for cause-in-fact is "an inquiry of 'to what extent' did the defendant's conduct have something to

---

[30] 37 F.3d at 1077.

[31] *Quick v. Murphy Oil Co.*, 93-2267 (La. App. 4 Cir. 9/20/94), 643 So. 2d 1291, 1295.

[32] *LeJeune v. Allstate Ins. Co.*, 365 So. 2d 471, 475 (La. 1978) (citations omitted).

[33] *Morris v. Orleans Parish School Bd.*, 553 So. 2d 427, 430 (La. 1989).

[34] *Succession of Harvey*, 97-2815 (La. App. 4 Cir. 6/24/98), 716 So.2d 911, 914.

[35] *Francis v. Lafon Nursing Home of Holy Family*, 2002-1863 (La. App. 4 Cir. 3/19/03), 840 So. 2d 1281, 1283.

do with the plaintiff's injuries."[36]  In other words, a defendant's conduct is a cause-in-fact of a plaintiff's injuries only if that conduct was a substantial factor in bringing about the plaintiff's harm.[37]

The determination of whether an action is the cause-in-fact of the injury can be resolved on summary judgment if reasonable minds could not differ.[38]  A factual dispute about causation can only survive summary judgment if the dispute is genuine.  In *Little v. Liquid Air Corp.,* the Fifth Circuit found that plaintiffs' evidence, including expert proof, did not establish a genuine issue of fact concerning their theory of causation in a gas leak explosion case.[39]  Similarly in *Bach v. Trident S.S. Co.,* the Fifth Circuit held that the plaintiff could not avoid summary judgment on causation without introducing "evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result."[40]  The Fifth Circuit, and other courts, have not hesitated to grant summary judgment on causation where the evidence did not raise a genuine issue of material fact.[41]

---

[36] *Westchester Fire Ins. Co. v. Haspel-Kansas Inv. Partnership*, 342 F.3d 416, 420-421 (5th Cir. 2003).

[37] *Id., citing, e.g., Adams v. Traina*, 36,306 (La .App. 2 Cir. 10/25/02), 830 So. 2d 526, 533.

[38] *Gullie v. Comprehensive Addict Program*, 98-2605 (La. App. 4 Cir. 4/21/99), 735 So. 2d 775, 778, *citing Fowlers v. Roberts*, 556 So.2d 1, 4 (La. 1989).

[39] 37 F.3d at 1075.

[40] 920 F.2d 322, 327 (5th Cir. 1991) (overruled on other grounds) (quoting W. Keeton, Prosser & Keeton on Torts § 41, at 269).

[41] *See, e.g., Little*, 37 F.3d at 1077 (affirming summary judgment on causation of shipboard accident); *Ralston Purina Co. v. Hobson*, 554 F.2d 725, 729 (5th Cir. 1977) (setting aside jury verdict on causation of poultry mortality); *In re Ingram Towing Co.*, 1995 WL 601027 (E.D. La. Oct. 11, 1995) (granting summary judgment on causation in toxic exposure case, finding that it was "impossible for any person to have become ill due to the oil spill from drinking tap water in the days following the accident."); *Molden,* 465 F. Supp. 2d at 613-14 (M.D. La. 2006) (granting summary judgment on causation in chemical exposure case).

## II. THERE IS NO EVIDENCE OF A CAUSAL CONNECTION BETWEEN PLAINTIFF'S THEORY OF LIABILITY AGAINST SHAW AND PLAINTIFF'S CLAIMED INJURIES.

Notwithstanding the fact that Plaintiff's entire claim against Shaw is predicated upon proving that Shaw's actions or inactions exacerbated her exposure to formaldehyde, and further notwithstanding that Plaintiff retained no less than 13 experts to formulate opinions in this matter, Plaintiff has offered no evidence – expert opinion or otherwise – that Shaw's actions or inactions "more likely than not" caused the claimed injuries resulting from exposure to formaldehyde. Plaintiff's expert reports indicate that there will be no expert testimony offered at trial relating to causation on Shaw's part. The only opinions remotely relating to Shaw's liability are the opinions of Charles David Moore and Alexis Mallet, Jr.

It is worth noting that in the *Wright* case, Moore specifically opined that he observed water damage to the Wright unit that he attributed directly to Shaw's installation of that travel trailer. There is no such opinion in the instant matter. Moore could not say that Shaw's installation of the Trailer "more likely than not" caused damage to the unit. Instead, Moore simply opines that "any deviations from the blocking requirements would cause problems with the load carrying capacity of the trailer."[42] In other words, Moore is saying that *if* Shaw did deviate from the FEMA specifications for blocking, the travel trailer would have been damaged.

Putting aside the fact that this opinion is based on pure speculation, Moore admitted in his deposition that he did not have information to suggest that Shaw deviated from Exhibit 7 during the installation of the Castanel trailer.[43] Moreover, Moore admitted in his deposition that

---

[42] Report of Charles David Moore, p. 13, excerpts attached hereto as Exhibit "D."

[43] Deposition of Charles David Moore, p. 110:2-6, attached hereto as Exhibit "E."

he could not attribute any of the damage he observed to the unit in January 2010 to Shaw's actions or inactions in relation to the installation of the Trailer.

> Q. Mr. Moore, in your report, you did not come to any conclusions to the effect that any of the conditions that you observed in January of 2010 with respect to the Castanel unit were caused or contributed to by the installation of the unit, right?
>
> A. I believe that I had in there that it may have been caused or the installation may have contributed to problems with that, I think something to that effect is how it was worded there.
>
> Q. Can you tell me in your report where you set that forth? Mr. Moore, are you referring on page 13 to the fourth paragraph where you talk about the blocking of the unit leading to questions?
>
> A. That is part of it, yes.
>
> Q. Okay. In that particular paragraph, you didn't note any specific conditions that you attributed to installation, right?
>
> A. That's correct.
>
> Q. Okay. Is there anything else in your report where you attribute any specific conditions or damage to installation of the trailer?
>
> A. No, sir.[44]

Moore's musings about "theoretical possibilities do not create a genuine issue of material fact as to the actual causation" of Plaintiff's injuries.[45]

Mallet's opinions are no less theoretical. Although he wrote that installation allowed moisture to enter the Trailer, that is not the same thing as saying that installation damaged the Trailer. Moreover, he admitted that his moisture-entry opinion was hypothetical in nature:

---

[44] *Id.*, p. 157:19-158:21, Exh. "E."

[45] *See Grissom v. Seal Fleet, Inc.*, 1996 WL 633241, at *2 (E.D. La. October 29, 1996).

11

> Q. Now, what evidence do you have to support your conclusion that "Jacking and blocking caused the unit to flex, creating openings around the windows, allowing air, heat and moisture to enter the trailer"?
>
> A. We know that if the blocking did not occur in a unified method and the axles were not supported and jacked up and blocked at the same time as the unit was, that stress was going to be placed on that structure causing it to move. Around the windows and openings, there are typically two beads of caulking or sealant material. If that first bead of caulking, even if it became deteriorated for some reason over the course of time, the second bead of caulking that is not exposed to UV rays should not have had the same rate of deterioration as the exterior. There are basically only two reasons that those windows or intersections should leak and that is, one, that the materials are not installed properly or that movement has caused stress and the sealant material to separate and to allow for that air passage.[46]

This is purely a discussion of what might have happened if the installation placed uneven stress on the trailer. It is not an opinion about what did happen. Indeed, Mallet admitted that he knew nothing about how Ms. Castanel's trailer was installed.[47] And although he claims to have seen movement around windows when Shaw's expert conducted jacking tests on the trailer, he further admitted that he did not measure the movements,[48] and he never saw a seal actually break:

> Q. When you were observing Exponent's jacking process, did you actually see any seals break?
>
> A. No, sir.[49]

Mallet provided no evidence in his report to support this opinion as to the actual facts regarding Castanel unit itself. An observation of unmeasured movement that did not itself cause any

---

[46] Deposition of Alexis Mallet, Jr., pp. 117:21-25; 118:1-21, attached hereto as Exhibit "F."

[47] Mallet Depo., pp. 152:1-153:6, Exh. "F."

[48] Mallet Depo., p. 113:10-13, Exh. "F."

[49] Mallet Depo., p. 136:5-8, Exh. "F."

damage simply is not support for a conclusion that jacking "more likely than not" damaged the unit. Even if one were to accept as true Mallet's hypothesis – that if blocking did not occur in a unified manner, the structure would move – there is still no support for a conclusion that blocking damaged this particular unit, which apparently was quite capable of withstanding the stresses of blocking without damage. Mallet cannot help Plaintiff prove that installation *caused* damage.

Further, Mallet confirmed in his deposition that he could not offer an opinion to the effect that Shaw "more likely than not" increased the level of formaldehyde in the Trailer thereby causing or exacerbating Plaintiff's injuries.

> Q. Did you measure or have any data to tell us to what extent the formaldehyde off-gassing or concentration levels inside the unit was increased by something that Shaw or its sub did on the unit?
>
> A. Did I measure?
>
> Q. Yes. Do you have any data to be able to tell me that?
>
> A. No, sir.
>
> ***
>
> Q. Sure. Did you perform any testing to quantify the amount of increased formaldehyde off-gassing or formaldehyde concentration levels within the living space of the Castanel unit that was caused by anything that Shaw did during jacking and blocking?
>
> A. No, sir.
>
> Q. So you can't tell me if the formaldehyde off-gassing or concentration levels increased by 1 part per billion or 100 parts per billion as a result of anything Shaw did or did not do during the jacking and blocking process?
>
> A. Only that the avenues for the moisture and air infiltration causes the increase of formaldehyde off-gassing.

13

> Q. But you can't tell me by how much it increased by tying it to anything that Shaw specifically did or did not do?
>
> A. I cannot quantify it.
>
> Q. Same thing with their maintenance responsibilities. Can you tell me, is there anything that Shaw did or did not do during its maintenance responsibilities that, in turn, increased the formaldehyde off-gassing or concentration levels by 1 part per billion or 100 parts per billion? Can you tell me what that amount is?
>
> A. No, sir.[50]

The remaining liability experts retained by Plaintiff offer opinions as to the construction and building of travel trailers, but none of them offer testimony as to what effects the installation or maintenance of the Trailer may have had on the formaldehyde concentration in the unit. Therefore, there is a complete lack of evidence, even in the form of opinion, that Shaw's actions or inactions "more likely than not" caused or exacerbated Plaintiff's injuries resulting from alleged exposure to formaldehyde.

It bears recalling that water damage is the key to Plaintiff's causation claim as to Shaw. Without water, there is no medium through which to effect an increase in formaldehyde offgassing. Without water, there is no way to connect trailer installation to formaldehyde-related injury. Yet, no plaintiff expert claims to have seen water damage in Ms. Castanel's Trailer that could be attributed to negligent installation. Indeed there was no water damage in the Trailer at all other than a light stain on a window frame due to the frost on the day of expert inspections in Lottie, Louisiana, in January 2010. Ms. Castanel never saw a leak herself apart from a drip from the air conditioner; there is no suggestion that this drip was installation related, but in any event, she caught that water in a pan, where it could not contribute to formaldehyde release from wood

---

[50] Mallet Depo., pp. 162:15-23; 163:7-164:11, Exh. "F."

14

panels.[51] Again, the contrast with the *Wright* case is revealing: There, an opinion was made that installation damage caused or contributed to leaks; here, there is none.

The absence of water damage has left Plaintiff with pure speculation – the "hidden leak" theory. The hidden leak theory proposes that it is possible for leaks to occur in the wall or ceiling cavities that are not visible from the interior, and it further proposes that negligent installation could cause such a leak. That Plaintiff challenges Shaw to "rule out" this theory, as if the impossibility of ruling out the hidden leak is evidence that it occurred. This twisted approach fails for any number of reasons, the two most prominent of which are: (1) it seeks to reverse the burden of proof; and (2) it assures that a failure to disprove is logically equivalent to proof, which is plainly wrong. The hidden leak theory cannot withstand summary judgment.

In an exposure case such as this, it is incumbent upon the plaintiff to prove – not merely postulate – a causal connection between the actions of the defendant and the exposure that is alleged.[52] Moreover, without an expert opinion, Plaintiff cannot meet his burden with regard to this element.[53] Given that Plaintiff has offered no opinion that Shaw caused or exacerbated

---

[51] Castanel Depo., pp. 72:14-22; 103:23-25; 195:9-12, Exh. "B."

[52] *See Molden v. Georgia Gulf Corp.*, 465 F. Supp. 2d 606 (M.D. La. 2006) (In tort action for personal injury under Louisiana law, plaintiff must establish by preponderance of evidence that it is more probable than not that personal injury of which he complains was caused by defendant's conduct). *See also Vodanovich v. A.P. Green Industries, Inc.*, 2003-1079 (La. App. 4 Cir. 3/3/04), 869 So. 2d 930, 933 ("Under Louisiana law, the plaintiff bears the burden of proving that the defendants' conduct caused asbestos exposure, and that the conduct was a substantial contributing factor of the plaintiff's injury."); *Watters v. Department of Social Services*, 2008-0977 (La. App. 4 Cir. 6/17/09), 15 So. 3d 1128, 1142-1143 ("Plaintiffs in a mold personal injury case must establish causation on five different levels: (i) the presence of mold, ***(ii) the cause of the mold and the relationship of that cause to a specific defendant,*** (iii) actual exposure to the mold, (iv) the exposure was a dose sufficient to cause health effects (general causation), and (v) a sufficient causative link between the alleged health problems and the specific type of mold found (specific causation)") (emphasis added).

[53] *See Brown v. Olin Chemical Corp.*, 231 F.3d 197, 201 (5th Cir. 2000) (When the source of the harm is not apparent on the face of the facts alleged, the plaintiff must put forth expert testimony to show that the harm could only have been caused by the negligence of the defendant). *See also Knight v. Kirby Inland Marine, Inc.*, 482 F.3d

15

Plaintiff's exposure to formaldehyde, she lacks proof on an element necessary to her case, and as such, her claims against Shaw should be dismissed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## CONCLUSION

Ultimately, Plaintiff has not presented, and cannot present, any evidence that Shaw's actions and/or inactions actually injured Plaintiff by increasing the concentration of formaldehyde in her Trailer. This should come as no surprise. All Shaw did was haul the Trailer to Plaintiff's homesite, install it on piers as specified by FEMA, and maintain it for a few months. Shaw did nothing with regard to formaldehyde. There is no evidence in this case that raises a genuine issue of material fact on the question of whether Shaw caused the formaldehyde level in the Trailer to increase. Therefore summary judgment should be entered, dismissing all claims against Shaw with prejudice.

---

347, 351 (5th Cir. 2007) (citation omitted) (In a toxic tort suit, the plaintiff must present admissible expert testimony to establish general causation as well as specific causation. General causation is whether a substance is capable of causing a particular injury or condition in the general population. Specific causation is whether a substance caused a particular individual's injury).

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**


　/s/ M. David Kurtz
ROY C. CHEATWOOD (#4010)
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000

**ATTORNEYS FOR DEFENDANT,
SHAW ENVIRONMENTAL, INC.**


## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2010, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.

　/s/ M. David Kurtz