UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N(5)<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO:<br>*Earline Castanel v. Recreation by Design,<br>L.L.C., et al.*, 09-3251 (E.D. La.) | MAGISTRATE CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### SHAW ENVIRONMENTAL, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING FAILURE TO WARN

**MAY IT PLEASE THE COURT:**

Shaw Environmental, Inc. ("Shaw") moves this Court for a partial summary judgment dismissing all claims against it arising from the notion that Shaw failed to warn Plaintiff about the dangers of formaldehyde, for the simple reason that Shaw never had knowledge that there was a formaldehyde danger and, accordingly, had no duty to warn her about it.  Beyond that, there is no evidence that Shaw's purported failure to warn "more likely than not" caused Plaintiff's alleged exposure or increased exposure to formaldehyde, thereby resulting in injury.

Plaintiff's failure to warn claim against Shaw begs the legal questions of (1) whether Shaw had a legal duty to warn of an alleged formaldehyde danger (where Shaw was neither the manufacturer or seller of travel trailers and played no role in selecting the particular travel trailer

used to house Plaintiff Earline Castanel); and (2) whether the claimed injuries resulting from alleged formaldehyde exposure were legally or factually caused by a failure to warn. The answers to these questions are "no," and summary judgment is appropriate.

## INTRODUCTION AND BACKGROUND

In the aftermath of Hurricane Katrina, Shaw was tasked with assisting FEMA in providing emergency housing units ("EHUs") to tens of thousands of hurricane victims. Plaintiff Earline Castanel filed this action on the ground that she was injured through exposure to formaldehyde while residing in an EHU – a travel trailer (the "Trailer") that Shaw, through its subcontractors, installed and maintained for less than three months. Plaintiff alleges that Shaw failed to warn her of the presence of formaldehyde in the Trailer, and that this alleged failure to warn purportedly caused or exacerbated her injuries.[1]

As a preliminary matter, a failure to warn claim necessarily presumes that the defendant is aware of a danger. Plaintiff has failed to present any evidence that Shaw had such knowledge; specifically, Shaw had no knowledge that the Trailer contained a dangerous level of formaldehyde (which is itself an unsupported supposition by Plaintiff that Shaw denies).

Indeed, there was nothing in particular about the Trailer, or any others like it, that would have reasonably led Shaw to suspect that they were dangerous in any way. After all, FEMA had used trailers in numerous prior disasters as a means of providing emergency housing assistance, and those trailers posed no danger to their occupants. Beyond that, of course, there are many thousands of travel trailers in public use, and Shaw had (and still has) no knowledge that those trailers are harmful to their occupants.

---

[1] R. Doc. 1, C.A. No. 09-3251, ¶¶ 48-50 (Castanel).

Notably, Plaintiff does not claim that Shaw failed to warn its customer, FEMA – after all, FEMA knew that trailers were built with products that used urea-formaldehyde before Katrina.[2] Additionally, Plaintiff admits in her Amended Complaint that FEMA was aware of concerns related to formaldehyde exposure in travel trailers months before Shaw leased Ms. Castanel into her trailer:

> [P]laintiff avers that the defendant FEMA negligently failed to take prompt and appropriate remedial action, and/or to communicate promptly and effectively to her, with respect to the safety and health risks and concerns related to formaldehyde exposure in this travel trailer, even though FEMA became aware of such risks and concerns generally, as early as Fall/Winter of 2005.

[R. Doc. 9401, ¶11]. Further, it is undisputed that Shaw responded to FEMA's satisfaction when FEMA asked about airing out trailers and formaldehyde.[3] After Shaw's response, FEMA did not tell Shaw (or the other contractors) that it ought to be warning occupants, or that the levels of formaldehyde in EHUs were potentially dangerous.[4]

Nevertheless, Plaintiff alleges that Shaw should have issued a warning at the time Plaintiff took possession of the Trailer (at "lease-in"), or perhaps sometime during the three following months, when Shaw was maintaining the Trailer. It should be noted that both the "lease-in" process and maintenance are strictly governed by the terms of the Shaw–FEMA

---

[2] Deposition of Martin McNeese, pp. 107:18-108:5, attached hereto as Exhibit "C."

[3] Email from William Deane to Brian Boyle, dated March 21, 2006, attached hereto as Exhibit "D."

[4] In the *Wright* case, the Court denied a motion similar to this partly on the ground that questions remained about knowledge of formaldehyde dangers by "Shaw and FEMA." [R. Doc. 12406]. Shaw respectfully submits that FEMA's knowledge of formaldehyde cannot be attributed to Shaw. To the contrary, if, as Plaintiff alleges, FEMA knew about formaldehyde months before discussing it with the contractors, that only proves that FEMA was in control of investigating and warning about the formaldehyde issue – not Shaw.

3

"Individual Assistance/Technical Assistance Contract" ("IA/TAC").[5] There is no obligation under the IA/TAC to issue warnings during these processes, or even to test for possible dangers.

The fact is that there is no evidence that Shaw ever became aware of a dangerous condition in the Trailer, whether at the time of "lease-in" or during maintenance, and therefore it cannot be held responsible for a "failure" to warn. The undisputed facts show that during the "lease-in" process, Plaintiff inspected the Trailer and found nothing wrong with it, as indicated by her signature on the lease-in forms.[6] After Plaintiff moved into the Trailer, Shaw maintained it for less than three months, until June 1, 2006, when C. Martin Company assumed maintenance responsibility.[7] During the period of Shaw's maintenance, Plaintiff lodged no formaldehyde or other odor-related complaints.[8]

## LAW AND ARGUMENT

### I. Summary Judgment Standard

Summary judgment is proper when there is "no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law."[9] "One of the principal purposes of the

---

[5] Affidavit of Geoffrey Compeau, attached hereto as Exhibit "A" (the "Compeau Affidavit"). Exhibit "1" to that Affidavit is a true and correct copy of relevant portions of the IA/TAC between FEMA and Shaw. Exhibit "3" attached to that Affidavit is a true and correct copy of Exhibit 7 ("Travel Trailer Installation") to Section J, Attachment A – Performance Work Statement, of the IA/TAC. Exhibit "5" attached to that Affidavit is a true and correct copy of Exhibit 10 (Maintenance-Temporary Housing Units") to Section J, Attachment A –Performance Work Statement, of the IA/TAC.

[6] Compeau Affidavit, ¶¶ 20, 21, Exh. "A" and Exhibits "11," "13" thereto; Deposition of Earline Castanel, February 10, 2010, pp. 187:21-188:9, attached hereto as Exhibit "B."

[7] Affidavit of Allison Hansen, ¶¶ 4-11, attached hereto as Exhibit "E" (the "Hansen Affidavit") and Exhibits "1" and "2" thereto.

[8] Compeau Affidavit, ¶¶ 23-25 and Exhibits "14" and "15" thereto, Exh. "A;" Castanel Depo., p. 220:1-20, Exh. "B."

[9] Fed. R. Civ. P. 56(c).

summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[10] Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[11]

The moving party must initially demonstrate that no genuine issue of material fact exists and identify those portions of the record which it believes show the absence of a genuine issue of material fact.[12]  However, once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."[13]  To satisfy this burden, the non-movant must proffer *sufficient* evidence to show that a reasonable jury could find in its favor – that is, that "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."[14]  Of course, unsubstantiated assertions do not constitute competent summary judgment evidence.[15]

---

[10] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).

[11] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citations and internal quotations omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.") (citations omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.

[12] *Celotex Corp.,* 477 U.S. at 323; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

[13] *Id.* at 322.

[14] *Anderson,* 477 U.S. at 249-50, 252.  *See also Frakes v. Crete Carrier Corp.,* 579 F.3d 426, 430-431, (5th 2009) ("[P]laintiff has the burden to put forth sufficient evidence to create a genuine dispute" as to a material fact); *Florida Dep't of Ins. v. Chase Bank of Texas Nat'l Ass'n,* 274 F.3d 924, 928 (5th Cir. 2001) ("After a defendant properly moves for summary judgment, the non-movant plaintiff must bring forward sufficient evidence to demonstrate that a genuine issue of material fact exists on every element of a claim."); *Ginsberg 1985 Real Estate P'ship v. Cadle Co.,* 39 F.3d 528, 531 (5th Cir. 1994) (citation omitted) ("An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party.")

[15] *Abbott v. Equity Group, Inc.* 2 F.3d 613, 619 (5th Cir. 1993) (*citing Celotex Corp.,* 477 U.S. at 324).

**II.     Shaw Owed No Duty to Warn.**

   **A.     Louisiana Law Imposes No Duty to Warn on Shaw.**

Louisiana has adopted a duty-risk analysis in determining whether to impose liability for any negligence claim, including failure to warn. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element).[16] Under this analysis, the plaintiff must affirmatively prove each element of the duty-risk approach.[17] A negative answer to any one of these inquiries results in a determination of no liability.[18] Plaintiff cannot prove any of these essential elements for her failure to warn claim; however, for purposes of this motion, Shaw will focus solely on the duty element and the causation element.

The existence of a duty to warn is a question of law.[19] Under general tort law principles, there is no duty to warn strangers of dangers, no matter how grave or imminent.[20] A cause of

---

[16] *Pinsonneault v. Merchants & Farmers Bank*, 01-2217 (La. 4/3/02), 816 So.2d 270, 276; *Barasich v. Columbia Gulf Transmission Co.*, 467 F. Supp. 2d 676, 691, (E.D. La. 2006).

[17] *Sciacca v. Rite Aid Corp.*, 2003 WL 282362 * 10 (E.D. La. 2003).

[18] *Hanks v. Entergy Corp.*, 06-0477 (La. 12/18/06), 944 So.2d 564, 579; and *Joseph v. Dickerson*, 99-1046, 99-1188 (La. 1/19/2000), 754 So.2d 912, 916.

[19] *Perez v. Michael Weinig, Inc.*, 2005 WL 1630018 *6 (W.D. La. 2005).

[20] *Miles v. Melrose*, 882 F.2d 976, 992 (5th Cir. 1989) (citing the RESTATEMENT (SECOND) OF TORTS).

action for failure to warn does not exist unless there is an affirmative duty to provide a warning.[21]

Except for situations where a duty is created by a contract, the only situation in which Louisiana courts have imposed a duty to warn upon a contractor for a dangerous condition not created by the contractor is one in which the contractor acquired *actual knowledge* of a defect in its work.  For example, in *Tenneco Oil Co. Chicago Bridge & Iron Co,* the court held "that a contractor who acquires knowledge of a danger inherent in the ordinary use of that which he constructed has a duty to warn, at the very least, the owner.  He also has a duty to warn if he has knowledge that the owner's actual use of that which he constructed creates a danger where the owner's use would otherwise be considered normal."[22]

Leaving aside for the moment the fact that Plaintiff is not the owner of the Trailer, it is clear that the *Tenneco Oil* court was focusing on the fact that the contractor there had actually acquired knowledge of a danger.  This only makes sense, because it would be illogical to impose upon a contractor a duty to warn third persons about a danger of which the contractor was unaware.  Even Plaintiff's own expert, Dr. Laughery, confirmed that for a person to be expected to issue a warning, that person must know a hazardous condition exists.[23]  Plaintiff has presented no evidence to prove that Shaw knew a hazardous condition existed.

---

[21] *Audler v. CBS Innovis, Inc.*, 519 F.3d 239, 254 (5th Cir. 2008).

[22] 495 So.2d 1317, 1326 (La. App. 4th Cir. 1986).

[23] Deposition of Dr. Kenneth Laughery, p. 140:2-5, attached hereto as Exhibit "F"

> Q.  Would you agree that generally, to be expected to issue a warning, you have to know that the hazard exists?
>
> A.  Yes.

Plaintiff presumably will point to the fact that some trailers "smelled new," and that Shaw often aired out trailers to remove odors. This is hardly evidence that the Trailer (or travel trailers generally) posed a danger to their occupants. Just being aware of an odor is simply not the same thing as having knowledge of a danger to human health. This "new smell" or a "new car smell" certainly was not indicative of danger, especially when one considers the many disasters in which FEMA had previously used trailers as a principal means of providing housing assistance to disaster victims,[24] not to mention the thousands of new-smelling trailers on the road that do not harm anyone.

The process of airing out trailers reduced the post-production odors – the "new smell" – effectively. To claim that merely airing something out to reduce a smell is equivalent to knowledge of a danger is pure argument, not evidence, and certainly this sort of argument is insufficient to withstand summary judgment.

In the past, arguments have been made that Shaw knew about formaldehyde based on mischaracterizations of testimony and emails. Shaw's corporate representative never said that Shaw knew there was a "formaldehyde" problem. Rather, he testified:

> Q. . . . Did Shaw believe there was a problem, yes or no, and then you can explain?
>
> A. Yeah, we believed there were odor issues that could be mitigated by ventilation, but we were not -- it was unclear as to whether those were specifically related to formaldehyde.
>
> Q. Well, at some point, though, we have proof that FEMA was discussing that it was a formaldehyde problem, correct?
>
> \* \* \*

---

[24] Deposition of David Garratt, pp. 207:3-208:7, attached hereto as Exhibit "G."

> A. Again, they studied the problem. Whether FEMA, again, sitting here, whether FEMA actually ever determined that, in fact, it was a problem is a question. I don't think there is a definitive statement to that effect.[25]

Similarly, arguing that Shaw knew about "chemical odors" in order to make the odors seem nefarious is to attribute to Shaw the words of Plaintiff's counsel. What Dr. Compeau actually said was: "Well, all odors are chemical."[26] This is not an unreasonable thing to say, and it certainly does not mean that Shaw had any reason to believe that they might be dangerous. These sorts of mischaracterizations of what Shaw has said and written should not be heard to create a "genuine" issue of material fact.

The fact is that there is no evidence to suggest that Shaw ever "acquired knowledge" of dangerous levels of formaldehyde in travel trailers generally or in the Trailer. This should come as no surprise because nearly two months *after* Shaw had relinquished maintenance responsibility for the Trailer – at the end of July 2006 – FEMA had received only 20 plus formaldehyde complaints out of the 79,000 travel trailers deployed in Louisiana.[27]

---

[25] Deposition of Geoffrey Compeau, pp. 149:6-150:3, Exhibit "H."

[26] Compeau Depo., p. 101:4, Exh. "H." *See also, Id.* at pp. 127:20-128:1,

> Q. Yeah. And this new car or new home or new travel trailer odor is a chemical odor, correct?
> A. Typically, yeah, they have to be caused by chemicals, right.
> Q. Okay.
> A. Right. So is good food.

Likewise, it has previously been argued to this Court that a May 17, 2006 email from Trina Baldwin to John Bruton with information about formaldehyde was a Shaw "internal communication" that constituted a "recommend[ation] that Shaw make FEMA aware of [the formaldehyde issues]." [R. Doc. 11543, p. 7]. John Bruton is a FEMA employee: he was a COTR in Texas. (Compeau Depo., p. 159, Exh. "H").

[27] Garratt Depo. p. 211:10-21, Exh. "G."

### B.     The IA/TAC Imposed No Duty to Warn.

Shaw anticipates that Plaintiff will argue that the existence of a contract between Shaw and FEMA imposes upon Shaw a duty to warn Plaintiff.  Even assuming for purposes of this motion that the IA/TAC could create such a duty, that duty would be defined by the Contract itself.  The Contract is very specific as what Shaw must do in the process of making the Trailer ready to be occupied by Plaintiff.  Specifically, Exhibit 7, § 2.1.9 provides a long, specific list of tasks that Shaw was required to perform in order for a travel trailer to be made ready for occupancy.  Exhibit 10 provides similarly detailed specifications for maintenance.  Nowhere does the IA/TAC call for air testing or other investigation into possible dangers; nowhere does the IA/TAC call for Shaw to issue warnings.

Plaintiff relies on hindsight to claim that just because Shaw had a contract with FEMA to help provide disaster assistance that Shaw should have done something beyond that contract – test for formaldehyde and then warn occupants.  But given that Shaw had no actual knowledge of dangerous levels of formaldehyde, Plaintiff's argument may be seen for what it is – equivalent to saying that Shaw should have investigated and warned about every conceivable danger in trailers, just because it had a contract with FEMA.  Imagine the disruption that would have ensued had Shaw shut down the housing assistance effort in order to test every trailer for all possible airborne contaminants.  Again, in the absence of *actual knowledge* of a danger, there is

simply no support for imposing upon a contractor the duty to discover and then warn about potential dangers.[28]

Plaintiff cannot expand Shaw's duty to warn beyond those dangers about which Shaw had actual knowledge simply by referring to the IA/TAC. Testing for formaldehyde was not required under the IA/TAC; nor was investigating or warning about possible dangers in trailers. Shaw complied with all of its duties under the IA/TAC, and no duty to warn Plaintiff can be inferred from that contract.

Furthermore, FEMA's own representative confirmed that the federal government was the one ultimately responsible for air quality issues with the travel trailers, and FEMA was not looking to the government contractors to resolve this issue:

> Q.  And as I understand your testimony, FEMA assumed the responsibility for coordinating the response to this issue at that time, whenever it was. Isn't that fair?
>
> A.  That is fair.
>
> Q.  And FEMA debated what an appropriate response might be, whether it be testing, warnings, or taking people out of the trailers. Is that true?
>
> A.  True.
>
> Q.  Okay. And you would agree with me that the responsibility for determining an appropriate programmatic response to this issue lay within the FEMA organization?
>
> A.  Let me caveat my response to that and that -- or let me characterize this carefully. FEMA is delegated responsibility for the disaster environment and coordinating the engagement and application of all federal resources and assets to support that state. So at the top of that multiorganizational activity is FEMA, who is solely or responsible for what goes on by all of those agencies. So, yes, we are ultimately responsible, but in terms of

---

[28] Again, Shaw does not concede that there ever was an actual formaldehyde danger in the Trailer, or in trailers generally.

11

        expertise and agency responsible -- agency responsibility, this was something we believed that we shared.

Q.    Okay. With other agencies?

A.    Yes.[29]

### III. No Evidence Has Been Introduced That Any Purported Failure To Warn Caused Plaintiff's Injuries.

Plaintiff is required to prove that Shaw's failure to warn her of the alleged dangerous levels of formaldehyde in the Trailer was the cause in fact, or proximate cause of her alleged injuries.[30] Even assuming that Shaw owed a duty to Plaintiff, and assuming *arguendo* that Shaw breached that duty, Plaintiff has not proven that Shaw's purported failure to warn caused the claimed injuries resulting from alleged exposure to formaldehyde. To show this, Plaintiff would have had to have shown that she would have behaved differently had she received a warning. She has failed to do so. Without a sound basis in law or fact for supporting causation, Plaintiff's negligence claim must fail.

### CONCLUSION

Summary judgment should be granted in this case, dismissing Plaintiff's failure to warn claim. Plaintiff is unable to prove the most basic elements of a negligence claim, the existence of a duty and causation; the absence of which either one would require dismissal of Plaintiff's failure to warn claim. This first step cannot be satisfied because Shaw had no actual knowledge of a danger and no obligation to look for possible dangers. Even so, there is no evidence in the record that Shaw's failure to warn "more likely than not" caused or exacerbated Plaintiff's

---

[29] Garratt Depo., pp. 225:21-227:5, Exh. "G."

[30] In failure to warn cases, plaintiff must prove a reasonable relationship between the omission of the warning and the injury suffered. *Bloxom v. Bloxom*, 512 So. 2d 839 (La. 1987).

claimed injuries resulting from alleged formaldehyde exposure. Shaw therefore respectfully urges the Court to grant its motion and dismiss the failure to warn claim against it.

        Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

  /s/ M. David Kurtz
ROY C. CHEATWOOD (#4010)
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**ATTORNEYS FOR DEFENDANT,
SHAW ENVIRONMENTAL, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2010, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison counsel.

  /s/ M. David Kurtz