UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N(5)<br><br>JUDGE ENGELHARDT |
| THIS DOCUMENT RELATES TO:<br>*Earline Castanel v. Recreation by Design,*<br>*L.L.C., et al.,* No. 09-3251 | MAGISTRATE CHASEZ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

STATE OF WASHINGTON
KING COUNTY

### AFFIDAVIT OF GEOFFREY C. COMPEAU

1.    My name is Geoffrey C. Compeau.  I am above the age of majority, and I make this Declaration based on facts that are within my own personal knowledge.  I am competent to testify concerning the subject matter set forth in this Affidavit.

2.    I worked as the Program Manager with respect to the Individual Assistance/Technical Assistance Contract, HSFEHQ-05-D-0573, ("IA/TAC" or "the Contract") between Shaw Environmental, Inc. ("Shaw") and FEMA.  I am personally familiar with the scope of Shaw's work under the Contract.

**EXHIBIT
"A"**

3.      In my capacity as the Program Manager, I had access to the records that Shaw kept as a part of its normal business operations with respect to the services that Shaw performed under the Contract.

4.      Shaw executed the Contract with FEMA on September 30, 2005.  The IA/TAC contained specifications that, among other things, required Shaw to assist in the providing of emergency housing to disaster victims as directed by task order; for example, through the delivery and installation of FEMA travel trailers, park models, and mobile homes for purposes of providing emergency housing units ("EHUs") to citizens displaced by Hurricanes Katrina and Rita.  Shaw could not deviate from the contract specifications without FEMA's review and approval.

5.      Attached to this Affidavit as Exhibit "1" (SHAW-000373-393, 000430-451) is a true and correct copy of certain relevant portions of the IA/TAC.

6.      Task Order number HSFEHQ-05-J-0015, commonly referred to as Task Order 15, was issued to Shaw under the Contract.  It directed Shaw to perform certain services related to hauling, installing and maintaining EHUs in Louisiana.  A true and correct copy of Task Order 15 is attached to this Affidavit as Exhibit "2" (SHAW-000633-640).

7.      Under Task Order 15, Shaw's obligation was to pick up specific EHUs, which FEMA identified in work orders by vehicle identification numbers and bar codes, from a FEMA staging yard and install each EHU at a FEMA designated location.

8.      I assisted with the management and implementation of Shaw's services to FEMA under the IA/TAC and Task Order 15.

9.     Exhibit 7 to the Performance Work Statement of the IA/TAC governs the installation of travel trailers.  A true and correct copy of Exhibit 7 entitled "TRAVEL TRAILER INSTALLATION" is attached hereto to this Affidavit as Exhibit "3" (SHAW-000480-489).

10.    Exhibit 7 to the IA/TAC contains the detailed specifications directing how travel trailers in general, and the Castanel travel trailer in particular, were to be delivered, installed, blocked, leveled, anchored, attached to utilities, outfitted with steps or handicap ramps/platform steps, winterized, and otherwise be made ready for occupancy.  Specifically, Exhibit 7 directed Shaw to install the travel trailers on six piers constructed in a precise fashion.  Exhibit 7 was provided by FEMA as part of the IA/TAC specifications, and Shaw had no role in developing, testing or engineering any aspect of Exhibit 7.

11.    Additionally, Shaw was provided with a drawing prepared by Terry R. Zien of the U.S. Army Corps of Engineers depicting the pier construction specified in Exhibit 7.  Shaw was never directed or asked to, and therefore never undertook to perform engineering services concerning the blocking diagram.  A true and correct copy of the pier construction diagram prepared by Terry R. Zien is attached to this Affidavit as Exhibit "4" (SHAW-002020).

12.    Exhibit 10 to the Performance Work Statement of the IA/TAC governs the maintenance of EHUs.  A true and correct copy of Exhibit 10 entitled "MAINTENANCE-TEMPORARY HOUSING UNITS" is attached to this Affidavit as Exhibit "5" (SHAW-000505-519).

13.    Pursuant to the IA/TAC and Task Order 15, Shaw was assigned the task of delivering, installing, and making ready for use the EHU assigned to Earline Castanel.

14.    Shaw's records include installation and maintenance records for the EHU assigned to Earline Castanel ("the Trailer").

15.    The FEMA Temporary Housing Unit Inspection Report, attached hereto as Exhibit "6" (SHAW-CAST 0036), is a record kept by Shaw in the normal course of business and reflects that, upon Shaw's receipt of the Trailer at a staging yard on December 8, 2005, there was no damage to the Trailer.

16.    The Manhattan Site Trailer Delivery List, attached hereto as Exhibit "7" (SHAW-CAST-0019), is a portion of a record kept by Shaw in the normal course of business and reflects that the Trailer was picked up at Shaw's staging area on the Westbank and installed by Shaw's subcontractor, Woodrow Wilson Construction Company, Inc., at 2261 Urquhart Street, New Orleans, Louisiana, on December 8, 2005.

17.    The Haul Install – Applicant Information form, attached hereto as Exhibit "8" (SHAW-CAST-0010), and the Unit Delivery Ticket, attached hereto as Exhibit "9" (SHAW-CAST-0035), are records kept by Shaw in the normal course of business and reflect that the Trailer, bearing VIN No. 5CZ200R2461125294, was delivered to 2261 Urquhart, New Orleans, Louisiana, designated as Site Control number 03-049429 and assigned Private Site Installation Work Order number 1603-0002-13797-IPR.

18. Due to the difficulties that Entergy experienced in restoring electrical power to the area where the Trailer was located, the unit could not be powered up and made ready for occupancy until March 2006.

19. Shaw retained experienced subcontractors to perform the actual installation of travel trailers, including the Castanel Trailer. Shaw utilized a rigorous quality control program that checked each trailer to ensure that it met the requirements of Exhibit 7 precisely.

20. Shaw used three checklists to ensure that it complied with the specifications in Exhibit 7 of the IA/TAC. The RFO checklist, dated March 11, 2006 and attached hereto as Exhibit "10" (SHAW-CAST-00013), is a record kept by Shaw in the normal course of business and reflects that the Trailer was blocked on concrete piers, that it was level, that it was anchored with the required straps, and that the utilities were installed (i.e. sewer, water, and electricity) as well as a battery. The purpose of this document was to ensure that the Trailer had been installed in accordance with FEMA's specifications. The document shows that it was. The Trailer Lease Check In List and the Earline Castanel RFO Checklist, attached hereto as Exhibits "11" and "12" (SHAW-CAST-0014 and SHAW-CAST-0015), are records Shaw kept in the normal course of business and further reflect that the Trailer was in good condition during the lease-in process.

21. The FEMA Temporary Housing Unit Inspection Report, dated March 11, 2006 and attached hereto as Exhibit "13" (SHAW-CAST-0009), is a record Shaw kept in the normal course of business. This document was used by Shaw to record the

5

condition of the Trailer upon lease in.  As shown by Earline Castanel's signature, the condition of the Trailer was new, and no damage was observed.

22.   In connection with ensuring that Shaw's subcontractors, who performed the actual haul and install functions with respect to all travel trailers, including the Trailer, complied strictly with the FEMA specifications, Shaw created a quality control program that checked each trailer to ensure that it met the requirements of Exhibit 7 precisely.   Specifically, Shaw had a construction lead who worked with each subcontractor.     Additionally, Shaw separately inspected, or had one of its subcontractors inspect, every single installation during the RFO process.  Finally, during the lease-in-process, Shaw or its subcontractor would check the trailer again, this time with the occupant present.  Kendrick Paul, an employee of one of Shaw's subcontractors, inspected the Castanel Trailer.  As shown by his signature on the RFO Checklist (Exhibit "10") and the FEMA Temporary Housing Unit Inspection Report (Exhibit "13"), and Ms. Castanel's initials on the Trailer Lease In Checklist (Exhibit "11") and her signature on the FEMA Temporary Housing Unit Inspection Report (Exhibit "13"), no problems were reported with the installation of the Trailer during these processes.

23.   The FEMA Maintenance Transition Report, a portion of which is attached hereto as Exhibit "14" (SHAW-CAST-0026-0027), is a record Shaw kept in the normal course of business and indicates that Shaw conducted monthly inspections of the Trailer in April 2006 and May 2006.

24. In addition, Exhibit 14 and the Call Center Maintenance Request Form dated May 16 and 17, 2006 (records Shaw kept in the normal course of business), attached hereto as Exhibit "15" (SHAW-CAST-0024 and SHAW-CAST-0025), indicate that Plaintiff made only one call to the maintenance center after the Trailer was installed and during the time Shaw was responsible for maintenance of Trailer. The maintenance call involved an issue with the air conditioner that was noted during the May monthly inspection.   The air conditioner was repaired by one of Shaw's subcontractors.

25. Shaw's records also indicate that Plaintiff reported no odor-related problems, formaldehyde or otherwise, with respect to the Trailer.

26. During May 2006, FEMA elected to separately contract maintenance responsibility for trailers installed at private sites directly to "Maintenance and Deactivation Contractors," or "MDCs."  After June 1, 2006, full responsibility for the Trailer had been turned over to C. Martin Company (an MDC), with the full knowledge and acceptance of FEMA.  After June 1, 2006, Shaw had no further responsibilities or obligations with regard to the Trailer.  After June 1, 2006, Shaw did not maintain the Trailer in any way.  Moreover, Shaw did not deactivate the Trailer.

27. Shaw did not produce, make, fabricate, construct, design, remanufacture, recondition or refurbish the Trailer.

28. Shaw did not label the Trailer as its own or otherwise hold itself out to be the manufacturer of the EHU.

29.   Shaw did not exercise control over, or influence a characteristic of, the design, construction or quality of the Trailer.

30.   Shaw did not select the types of structures, such as travel trailers, park models and mobile homes, which FEMA chose to use to house disaster victims following Hurricanes Katrina and Rita.

31.   Shaw played no role in selecting manufacturers from whom FEMA purchased travel trailers or any other structures FEMA utilized as temporary housing following Hurricanes Katrina and Rita.

32.   Shaw never took title to the travel trailers, park models, and mobile homes that FEMA utilized as temporary housing following Hurricanes Katrina and Rita.

Pursuant to 28 U.S.C. § 17.46, I declare under penalty of perjury that the foregoing is true and correct.  Executed on April ___ 2010.

Geoffrey C. Compeau

8