UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION N (5)<br><br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO ALL CASES

MEMORANDUM IN SUPPORT OF NOMINATION OF
BELLWETHER PLAINTIFFS BY PALM HARBOR DEFENDANTS

MAY IT PLEASE THE COURT:

The Court has scheduled for Monday, October 18, 2010 a bellwether trial against one of the defendant manufacturers of manufactured housing units (as opposed to travel trailers). In its most recent Order [Doc. 13196] addressing this trial, the Court set April 15, 2010 as the date by which to submit an agreed bellwether plaintiff for the October trial. As a result of prior orders and the impending settlement by all manufactured housing defendants except Palm Harbor, that defendant will apparently be Palm Harbor. Accordingly, the Palm Harbor Defendants ("Palm Harbor") submit this their memorandum in support of their nomination of bellwether plaintiffs.

### PURPOSE OF BELLWETHER TRIALS

The purpose of a bellwether trial is to provide some indicia to guide the court and litigant on how to best resolve an agglomeration of cases.

> The term bellwether is derived from the ancient practice of belling a wether (a male sheep) selected to lead his flock. The ultimate success of the wether selected to wear the bell was determined by whether the flock had confidence that the wether would not lead them astray, and so it is in the mass tort context.

> The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar.

*In re Chevron U.S.A., Inc.,* 109 F.3d 1016, 1019 (5th Cir. 1997). "Common issues or even general liability may also be resolved in a bellwether context in appropriate cases." *Id.*

The order requiring that the manufactured housing defendants and PSC select a bellwether plaintiff and defendant was premised, on information and belief, on the notion that if the manufactured housing defendants did not settle as a group, then the bellwether process should begin as to those defendants as well. But it is now expected that all of the manufactured housing defendants except Palm Harbor will settle, leaving Palm Harbor as the sole remaining manufactured housing defendant in this MDL.

The utility of having Palm Harbor serve as a bellwether defendant[1] is, in the view of Palm Harbor, marginal. Palm Harbor appears to be unique among all the remaining defendants in this MDL. It is now the sole beneficiary of the Court's May 29, 2009 ruling (Doc. 1629) on preemption. In that ruling, the manufactured housing defendants' motion for summary judgment on preemption was

> **GRANTED** only to the extent that any of Plaintiffs' state law claims which advance a standard of care that is different from (i.e., not identical to) the formaldehyde regulations in the HUD Code and the formaldehyde warning standard specifically set forth in 24 C.F.R. § 3280.309(a) are dismissed. To be clear, Plaintiffs' other state law claims, particularly those that may involve violations of the HUD Code, remain viable and are not hereby dismissed.

Order and Reasons, Doc. 1629, p. 27 (May 29, 2009).

Palm Harbor is the only HUD Code manufacturer remaining in this MDL. Whether the result of the October 18, 2009 trial against Palm Harbor will be extrapolative to the MDL as a whole is in

---

[1] Palm Harbor has found no state or federal case that uses the term "bellwether defendant." The term also does not appear to be used in the Manual for Complex Litigation.

Palm Harbor's opinion doubtful. The unique set of circumstances applicable to Palm Harbor's construction of a temporary housing unit–the HUD Code, the size of the structure, the set up of a Palm Harbor manufactured home, *etc.*–will likely make the bellwether trial against Palm Harbor of marginal use in the entire MDL.

In addition, the Court's rulings have expressly or effectively mandated that the Government will not be a party to any bellwether trial against Palm Harbor. Pursuant to the Court's preemption ruling, if the cause of action incorporates a standard of care identical to the HUD Code, it is preempted and there is no case against any defendant. If the cause of action alleges a violation of the HUD Code by Palm Harbor, the Court's October 3, 2008 Order and Reasons on the Government's motion to dismiss, (Doc. 717, p. 21 n.9), dismisses those claims against the Government.[2] As a result, even though the Court's prior orders extending the non-litigation track required the PSC and manufactured housing defendants to select a "FEMA ripe" bellwether plaintiff, it is highly unlikely that the October 18, 2010 bellwether trial will be tried against the Government.

Palm Harbor is an extremely minor player in this MDL. According to the August 13, 2008 letter to Magistrate Judge Roby, submitted on behalf of all the manufacturing defendants, Palm Harbor provided a total of 503 units to FEMA. It is estimated that of the non-bankrupt defendants remaining in the MDL (excluding the other manufactured housing defendants who are about to settle

---

[2]Actually, the Court dismissed all claims against the Government where a mobile home is involved. In footnote 9, the Court stated in pertinent part:

> The Court further notes that mobile homes, which are subject to HUD regulations, are expected to be manufactured and provided on conformity with those specific regulations regarding formaldehyde. To the extent that any such mobile homes at issue in this litigation violated government formaldehyde level standards, that liability would belong to the manufacturer alone, and not to FEMA, which had the right to expect that all such mobile homes provided would have been manufactured in complainace with the existing HUD standards. (See Transcript, pp. 35-36). Thus, Plaintiffs' claims against FEMA as they relate to mobile homes are dismissed.

with PSC), Palm Harbor's 503 mobile homes are less than one percent (1%) of the THU's still subject to the MDL.  In addition, Palm Harbor estimates that there about seventy (70) claimants who have sued only Palm Harbor and have provided specific matching information.  If there are 30,000 plaintiffs in this MDL, Palm Harbor's plaintiffs are about two-tenths of one percent (0.2%) of the total number of plaintiffs.[3]  While these numbers and the foregoing observations do not suggest to Palm Harbor that a bellwether trial against it will be of much use to this MDL, Palm Harbor now focuses on its nominations for bellwether plaintiff.

## PALM HARBOR'S NOMINATIONS

**1. Kenneth Woods**

On March 30, 2010 the PSC nominated Kenneth Woods to serve as the bellwether plaintiff against Palm Harbor.  Palm Harbor agreed to this nomination on March 31, 2010, ahead of the then deadline of April 1, 2010.  However, a teleconference was conducted on April 1, 2010 in which counsel for PSC, Palm Harbor and Fluor Enterprises participated.  In that teleconference, the PSC indicated that it desired more time to evaluate the entire set of potential Palm Harbor bellwether nominees.  The PSC filed an unopposed motion to obtain more time and was granted such.  In the interim, the PSC has indicated it will no longer nominate Mr. Woods and in fact will now object to his nomination.

Mr. Woods is an appropriate bellwether plaintiff.  He lived in a Palm Harbor home for approximately nine months, in Convent, Louisiana.  He is currently 53 years old.  On information and belief, he now lives relatively close to the federal courthouse in New Orleans.  If so, he will not

---

[3] Joint Report 15, p. 7, states that the United States received more than 140 Client Lists from the PSC seeking matching information for approximately 80,000 persons.  In that event, Palm Harbor's plaintiffs are approximately eight-one hundredths of one percent (0.08%) of the total amount of claimants.

have to travel far to attend the trial. Mr. Woods lived in Palm Harbor home serial no. PH05-18357, and it appears he was the only occupant of the home during his residency.[4] Palm Harbor respectfully submits that Mr. Woods is an appropriate bellwether nominee. He was when the PSC nominated him, and he remains so.

    **2. Eujohn Moses.**

Mr. Moses is currently 31 years old and his Plaintiff fact Sheet indicates he resided in a Palm Harbor mobile home in New Orleans for at least 15 months. There appears to be some ambiguity in his Plaintiff Fact sheet, but it does not appear that he resided in any other THU's. These same ambiguities suggest that Mr. Moses may have still been living in the Palm Harbor unit at the time he filled out his Plaintiff Fact Sheet. Mr. Moses' physical complaints include skin irritation, diarrhea, headaches, nausea and respiratory complaints.

    **3. Tressie Moses**

Ms. Moses resided in the same home as Eujohn Moses, but her Plaintiff Fact Sheet seems to indicate the home was located in Convent, Louisiana. Ms. Moses is currently 54 years old. Ms. Moses' apparent proximity to New Orleans makes it unlikely that the prospect of attending trial will be burdensome.

---

[4] At least no other potential Palm Harbor bellwether nominee appears to have lived in that home, from the information available to Palm Harbor.

### 4. Tonya Washington

Ms. Washington is currently 39 years old and resided in Palm Harbor mobile home serial no. PH32-27949[5] for an undetermined amount of time.[6] Ms. Washington's Plaintiff fac Sheets indicated her current residence was Greensburg, Louisiana, which is approximately 90 miles from New Orleans. Thus, it is anticipated that Ms. Washington could attend trial without inordinate burden. While Greensburg is located in the Middle District of Louisiana, Ms. Washington filed suit in cause no. 2:09-cv-07821-KDE-ALC in the Eastern District of Louisiana and alleged in Paragraph 17 of the Complaint (denominated an Amending Complaint for Damages[7]) that venue was proper in the Eastern District of Louisiana.

### 5. Shakita Brumfield

Ms. Brumfield is currently 29 years old and resided in the same Palm Harbor mobile home, serial no. PH32-27949,[8] as Tony Washington. Ms. Brumfield's Plaintiff Fact Sheet suggests she lived in that unit for an undetermined amount of time, as well.[9] Ms. Brumfield's Plaintiff fact Sheet indicated her current residence was Greensburg, Louisiana, which is approximately 90 miles from

---

[5] Ms. Washington's PFS indicates the serial number for her Palm Harbor unit was 27949FEMA1460. This information seems to more appropriately match PH32-27949, and thus Palm Harbor uses this serial number for any unit whose serial number is indicated as 27949FEMA1460.

[6] Some of the Plaintiff Fact Sheets for other individuals that resided in this particular unit indicate various lengths of residency, and some seem to suggest that they are still living in this unit.

[7] Ms. Washington was originally one of the Bauer plaintiff, 2:08-cv-05031. The original complaint in that matter alleged that venue was proper because the Eastern District of Louisiana had been designated the transferee court for the MDL.

[8] Ms. Brumfield's PFS also indicates the serial number for her Palm Harbor unit was 27949FEMA1460. This information seems to more appropriately match PH32-27949.

[9] Some of the Plaintiff Fact Sheets for other individuals that resided in this particular unit indicate various lengths of residency, and some seem to suggest that they are still living in this unit.

New Orleans. Thus, it is anticipated that Ms. Brumfield could attend trial without inordinate burden. While Greensburg is located in the Middle District of Louisiana, Ms. Brumfield filed suit in cause no. 2:09-cv-07911-KDE-ALC in the Eastern District of Louisiana and alleged in Paragraph 11 of the Complaint (denominated an Amended Complaint for Damages[10]) that venue was proper in the Eastern District of Louisiana.

**6. Eric Washington**

Mr. Washington resided in the same Palm Harbor mobile home as Tonya Washington and Shakita Brumfield. He is currently 23 years of age. Like the other nominees, he alleges a variety of complaints, including headaches, dizziness, allergies, bleeding of nasal membranes, and so forth. He lived in the Palm Harbor home at least 24 months and, again, it is possible that he is still living there. He apparently lives in Greensburg, and thus could travel the 90 miles to New Orleans for the trial.

## OBJECTION TO PSC's ANTICIPATED NOMINEE

Palm Harbor anticipates that the PSC will nominate a minor, which Palm Harbor shall refer to as KA, III[11] as its bellwether nominee. KA, III is currently three years of age; by the time of the trial he will be four. His Plaintiff Fact Sheet indicates he lived in Palm Harbor serial no. PH22-11105 for 11 months. His PFS indicates that he began living in the unit in September 2006, approximately four months after his date of birth, May 19, 2006. His family apparently stopped living in the Palm Harbor in August 2007. KA, III's mother indicated on his PFS that while living

---

[10]Ms. Brumfield was originally a plaintiff in the *Ware* suit, 2:09-cv-04686, filed in the Eastern District of Louisiana. That original Complaint alleges that the Eastern District was proper venue because all or a substantial portion of the event or omissions giving rise to the claim occurred, *etc.*

[11]CM/ECF procedural requirements indicate that the names of minors shall be removed from filings. Palm Harbor can provide the name of the minor if required through appropriate means.

in the Palm Harbor unit KA, III suffered from irritation, burning and tearing of the eyes; irritation, burning and rashes to the skin; headaches; a persistent cough; and bronchitis. His younger sister, who lived in the Palm Harbor unit for about a month immediately after her birth, had almost identical complaints on her Plaintiff Fact Sheet.

KA, III is a poor candidate for a bellwether plaintiff. Obviously, a four year old would be excused from attending trial. KA, III's family lived in east New Orleans at the time they filled out Plaintiff Fact Sheets, but both of the parent's Fact Sheets indicated they are employed. It is not known if they can take off work to attend the trial, but it likely would be a burden.

KA, III is a young child. He cannot likely testify as to how he felt, or what his symptoms were. His Plaintiff Fact Sheet indicates he received treatment for bronchitis in 2007, when he was anywhere from seven and a half months to 18 months old. His Plaintiff Fact Sheet also indicate he is seeking damages for mental or emotional damages, though he did not seek treatment therefor. These issues make the bellwether trial problematic. Medical issues will come solely from the testimony of adults living with KA, III, as well as whatever medical history he might have at his tender age. In addition, there can be no comparison of KA, III's prior medical history to that he experienced while living in a temporary housing unit, as he is too young to have had much of a medical history prior to living in Palm Harbor's mobile home. At his tender age, Palm Harbor also questions whether KA, III is representative of very many individuals who happened to live in temporary housing units.

In addition, on information and belief, KA, III's tender age makes the job of experts more difficult. It is Palm Harbor's understanding that there is a dearth of research on the effects of formaldehyde on children of such a young age. Certainly there is research on children, but Palm Harbor is unaware of any research on children younger than 18 months. Essentially, KA, III was an

infant while he lived in the Palm Harbor mobile home. Without a body of research, experts will presumably be faced with the task of making quantum leaps in the existing research to try to make it apply to KA, III. It is Palm Harbor's position that this is not a proper circumstance under which to try a bellwether case. For the foregoing reasons, Palm Harbor objects to the PSC's anticipated nomination of KA, III as the Palm Harbor bellwether plaintiff.

Dated this 15th day of April, 2010.

Respectfully submitted,

/s/ Eric L. Lindstrom
Michael J. Craddock
Texas State Bar No. 04970300
Eric L. Lindstrom
Texas State Bar No. 12385200

3100 Monticello Avenue, Suite 550
Dallas, Texas 75205-3466
(214) 750-3550
(214) 750-3551 (FAX)

**ATTORNEYS FOR DEFENDANTS PALM HARBOR HOMES, INC., PALM HARBOR MANUFACTURING, LP, AND PALM HARBOR ALBERMARLE, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Memorandum in Support of the Unopposed Motion of Palm Harbor to Extend Deadline For Bellwether Plaintiff Nomination was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ Eric L. Lindstrom
Eric L. Lindstrom