**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | | |
|---|---|---|
| | * | |
| **IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION** | * | **MDL NO. 1873** |
| | * | **SECTION "N-5"** |
| | * | **JUDGE ENGELHARDT** |
| | * | **MAG. JUDGE CHASEZ** |
| **THIS DOCUMENT RELATES TO:** ***EARLINE CASTANEL, ET AL v . RECREATION BY DESIGN, LLC, SHAW ENVIRONMENTAL, INC., and UNITED STATES OF AMERICA THROUGH THE FEDERAL EMERGENCY MANAGEMENT AGENCY*, NO. 09-3251** | * | |

**************************************************************************

**MEMORANDUM IN SUPPORT OF RECREATION BY DESIGN, LLC'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF KENNETH R. LAUGHERY, PH.D.**

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT,** through undersigned counsel, comes defendant Recreation By Design, LLC ("RBD"), who offers the following memorandum in support of its *Motion in Limine*

to Exclude the Opinions and Testimony of Kenneth R. Laughery, Ph.D.:[1]

## I. BACKGROUND

Plaintiff retained Kenneth R. Laughery, Ph.D. ("Laughery"), a human factors expert, "to review the materials and evaluate it in terms of the human factors, warnings issues involved is the way I interpreted it with respect to the formaldehyde hazard."[2] The Plaintiff retained Laughery, even though the Court excluded the testimony of a human factors expert, Lila Laux, Ph.D,[3] in the Gulf Stream bellwether trial and severely restricted the testimony of Laughery, who was also retained by the Plaintiffs' in the Fleetwood and Forest River bellwether trails. In the Order and Reasons regarding Fleetwood's *Motion in Limine* to exclude Laughery's testimony in that matter, the Court stated, "[t]his Court's October 6, 2009 ruling was and is clear. Only testimony about the need for a warning - not the adequacy of any such warning- shall be admissible. Dr. Laughery is precluded from testifying about whether this particular warning was adequate or about matters which would "assist" the jury in making the ultimate decision on the adequacy of the instant warning."[4] Further, in responding to the Motion to Strike filed by Forest River, the Court adopted its Order and Reasons issued in response to Fleetwood's *Motion in Limine*.[5] Despite this Court's prior rulings excluding

---

[1]As the Court and parties are familiar with the factual/procedural background of this matter, reference is made here to the background as set forth in Recreation by Design, LLC's Memorandum in Support of Motion for Summary Judgment Regarding Prescription (R. Doc. 9722).

[2]Laughery depo. at 54:7-12, excerpts attached as Ex. A.

[3]*See* R. Doc. 1753.

[4]*See* R. Doc. 7533.

[5]*See* R. Doc. 10293.

Laughery from testifying regarding the adequacy of a warning, in his expert report issued in this matter, Laughery has again opined regarding the "adequacy" of a warning.[6] RBD, therefore, requests that the Court apply its prior orders limiting Laughery to rendering an expert opinion only as to the need for a warning, to the instant matter.

Further, in rendering his expert opinions in this matter, Laughery did not conform with all the requirements of Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony. Specifically, Laughery's opinions are not the "product of reliable principles and methods" as required by element two of this rule. According to Laughery, step one in the methodology used to determine whether a product requires a warning is to determine whether there is a hazard involved in the use of the product.[7] Yet in reaching the determination that formaldehyde posed a hazard to Castanel when she resided in her travel trailer, Laughery did not conduct his own analysis nor did he perform the necessary background research on the potential hazards associated with formaldehyde. Rather, Laughery based his conclusion on the hazardous nature of formaldehyde on the reports of fellow expert witnesses, Patricia Williams, Ph.D. and Stephen Smulski, Ph.D.

Given the flaws in Laughery's methodology, Laughery's expert testimony in this matter fails to satisfy the strictures of Federal Rule of Evidence 702 as interpreted by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[8] Additionally, Laughery's opinions will not assist the jury to understand or determine a fact in issue. For these reasons, Laughery's opinions should be excluded.

---

[6]*See* Laughery expert report, attached as Ex. B.

[7]Laughery depo. at 89:8-19, excerpts attached as Ex. A.

[8]509 US. 579, 598, 113 S.Ct.2786, 126 L.Ed.2d 469 (1993).

## II. ARGUMENT AND AUTHORITIES

### A. ADMISSIBILITY REQUIREMENTS FOR EXPERT TESTIMONY

Federal Rule of Evidence 702 gives a district court considerable discretion to admit or exclude expert testimony.[9] Rule 702 provides that an expert witness "qualified ... by knowledge, skill, experience, training, or education" may testify when scientific, technical, or other specialized knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue."[10] For expert testimony to be admissible, Rule 702 requires that: (1) the testimony be based on sufficient facts or data; (2) the testimony be the product of reliable principles and methods; and (3) the witness apply the principles and methods reliably to the facts of the case.[11] Plaintiff, as proponent of the expert evidence, bears the burden of demonstrating its admissibility.[12] Defendants do not have the burden of demonstrating its inadmissibility.[13]

In *Daubert*, the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper ***at the outset*** to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[14] The reliability inquiry requires the Court to assess whether the

---

[9] *See General Electric Co. v. Joiner*, 522 U.S. 136, 151 fn. 1, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

[10] Fed.R.Evid. 702.

[11] Fed.R.Evid. 702.

[12] *See, e.g., Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir.1998); *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002); *see also Daubert*, 509 U.S. at 592 n.10.

[13] *See Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99, 102 (D. Conn. 2006); *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 534 (W.D. Pa. 2003).

[14] 509 US. 579, 598, 113 S.Ct.2786, 125 L.Ed.2d 469 (1993) (emphasis added); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)

reasoning or methodology underlying the expert's testimony is valid.[15] The goal is to exclude expert testimony based merely on subjective belief or unsupported speculation.[16] In addition, the party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[17] To satisfy the relevancy requirement, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact to understand the evidence or determine a fact in issue.[18] This "helpfulness" standard of Rule 702 "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."[19]

It should be noted that *Daubert* carefully distinguishes between the threshold reliability inquiry that plaintiff must satisfy and the role of cross-examination. As the Supreme Court stated, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. These conventional devices ... are the appropriate safeguards where the basis of scientific testimony ***meets the standards*** of Rule 702."[20] As the highlighted language shows, plaintiff must first satisfy

---

(clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony based on technical or specialized knowledge).

15 *See Daubert*, 509 U.S. at 593.

16 *Daubert*, 509 U.S. at 590.

17 *See Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc).

18 *Daubert* at 591.

19 *Daubert* at 591-92 (internal quotations omitted).

20 *Daubert* at 595 (emphasis added).

the burden of demonstrating that the proffered evidence is admissible.[21] An expert's opinion, therefore, must be based on reliable methodology and "fit" the facts of the case before the opinion may have the privilege of being assailed by cross-examination.[22]

**B. Pursuant to the Court's Orders, Laughery's Opinion regarding the "adequacy" of the warning system associated with the Castanel travel trailer should be excluded.**

As detailed above, this Court has repeatedly outlined the parameters for the expert opinions of human factors expert retained in this MDL. Specifically, the Court has ordered that human factors experts can opine as to the necessity of a warning, not as to the adequacy of the warning. Despite this Court's explicit instructions, Dr. Laughery has opined as follows in the Castanel matter:

> The warning system associated with the trailer regarding formaldehyde hazards was inadequate; indeed, it was nonexistent. Three components of an adequate warning system would have included a label prominently displayed in the trailer by the manufacturer Recreation By Design, the Owner Information Manual, and verbal information and warnings by the Shaw representative at the time of trailer delivery. The warning system failed with respect to all of these opportunities to provide information regarding the formaldehyde hazard and its consequences.[23]

Laughery's opinion regarding the inadequacy of the warning system associated with the RBD travel trailer Castanel resided in is a clear contradiction of this Court's previous orders.[24] RBD

---

[21] *See, e.g., McLendon v. Georgia Kaolin, Co.*, Inc., 841 F. Supp. 415, 418 (M.D. Ga 1994) ("these devices are only sufficient safeguards where the scientific testimony meets the standards of Rule 702").

[22] *See Porter v. Whitehall Labs.*, 791 F. Supp. 1335, 1345, 1345 n. 10 (S.D. Ind. 1992) (emphasis in original), *aff'd*, 9 F.3d 607 (7th Cir. 1993).

[23] *See* Laughery expert report, excerpts attached as Ex. B.

[24] *See* R. Doc. 1753, 7533 and 10293.

therefore respectfully request that this Court exclude all testimony regarding Laughery's opinion as to the inadequacy of warning system in the RBD travel trailer.

**C.    Laughery's Testimony is inadmissible under Rule 702 because it is neither reliable nor relevant.**

To determine the reliability of an expert's opinion, a district court may consider the following non-exclusive *Daubert* factors: (1) whether a "theory or technique ...can be (and has been) tested;" (2) whether the theory or technique "has been subjected to peer review and publication;" (3) whether the particular technique involved has a "known or potential rate of error;" (4) whether there are "standards controlling the technique's operation;" and (5) whether the theory or technique warrants "general acceptance" within a "relevant scientific community."[25] These factors are not exhaustive or limiting, and a court may utilize them as it deems fit to tailor an examination of the reliability of expert testimony to the facts of each case.[26] For example, a district court may also weigh "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out any other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case."[27] While weighing these factors, the district court must continue to function as a gatekeeper who "separates expert opinion

---

[25] *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir.2004); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

[26] *Guy v. Crown Equip. Corp.,* 394 F.3d 320, 325 (5th Cir.2004) ("not every Daubert factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant."); *see also Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed.Appx. 377, 381 (5th Cir.2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (citing *Kumho Tire*, 526 U.S. at 152)).

[27] *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir.2007) (quoting *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686-87 (8th Cir.2001)).

evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge."[28]

**i. Laughery's Opinions are Not Based on Reliable Scientific Methodology**

When questioned regarding the methodology he employed in rendering his opinion on whether or not a warning is needed, Laughery testified that his was a multi-step process based on published literature. Laughery testified as follows:

> Q. And you know, maybe my question - - I need to bring it down a little bit, but from your perspective in rendering an opinion on whether or not a warning is needed, is there a particular step of processed or methodology you go through to make that determination?
>
> A. Yes.
>
> Q. Okay. And is there like a Step 1, Step 2 type of process?
>
> A. Yeah. I mean, the several steps - - and I believe these were published, for example, in a couple of those papers that I brought up, but the several steps would include, first, is there a hazard involved in the use of the product.
> And that has to do with evaluating whether or not there's been a hazard analysis, and is so what does it show.
> So - - and obviously, I'm not in favor of warning about hazard analysis that don't exist. And so a first step would be to determine what the hazards are.
> A second step - - and then, the second step would be are the hazards open and obvious, that - - I'm talk - - I'm using that term from a human factors perspective, where essentially, what it means in the contest of my discipline is that the characteristics of the product itself, including its function, communicate the nature of the hazard.

---

[28] *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir.2001).

****

> Then a third step in making a judgment whether a hazard - - whether a warning system is needed is an understanding and knowledge of this hazard information that the consumer, the user of the product already has, not that it's open and obvious, but through whatever history of the user, they have come to be aware of and have knowledge about it; and in which case, if the answer to that is yes, then you may not need to warn or you only need warn for reminder.
>
> Then, a fourth step and last one I'll mention is the issue of is there something that a warning can accomplish in enabling the safe use of the product.
> In other words, if the consumer or user of that product is going to have to do something they're not capable of, then a warning isn't going to solve the problem. And so can a warning actually accomplish the safe use would be another step.
> So those are standard methodologies for analysis of is a warning needed for this product.[29]

Though Laughery testified that the first step in determining whether a warning is required is to determine "if there is a hazard involved in the use of the product," when questioned regarding whether he did a hazard analysis regarding the Castanel unit, Laughery stated that he did not do so. Rather, Laughery testified the he relied on hazard analysis performed by others. Laughery testified:

> A. Well, I'm assuming based on others who have done what I'd call a hazard analysis - - Williams would be one. And I have copies of their reports in this case. And - -what's the other expert? I need to look at this.
>
> Q. I know that we saw Dr. Smulski's materials.
>
> A. Smulski was the one I was referring to. Those are two other experts in the case who have rendered opinion that the formaldehyde - - opinions about the formaldehyde hazard

[29] Laughery depo. at 88:23-24, 89:1-24, 90:1-24, and 91:1-15, excerpts attached as Ex. A.

> associated with the use of the trailer.
> And that was reinforced by other documents that I read, a CDC report and study, the - - even what FEMA was trying to do after the fact in terms of handouts.
> I mean, so there was - - but in terms of other experts, that provided a basis for my assumption that yes, there is a formaldehyde exposure hazard or toxicity hazard that can have negative health effects.
> And so that - - that's the methodology I used. I mean, I'm not the expert that would determine what the toxicologist would determine.[30]

It should be noted that the two experts, Patricia Williams, Ph.D., a toxicologist, and Stephen Smulski, Ph.D., a Wood Product expert, whose opinion Laughery relied on in concluding that formaldehyde was a hazard, did not specify the "level of concern" for formaldehyde such that exposure to same would cause adverse health effects. Also of note, is that Laughery did not know the tested level of formaldehyde in the Castanel unit.[31] Laughery essentially characterized the formaldehyde present in the Castanel unit as a "hazard" without having determined at what level formaldehyde poses health risk and if Castanel was exposed to such a level while residing in the unit. RBD submits to the Court that Laughery's failure to inquire as to these basic matters, call into question the reliability of his methodology.

**CONCLUSION**

A District court must ensure that the "factual basis, data, principles, methods, [and] their application" are sound.[32] Expert testimony should also be excluded where it is speculative or not

---

[30] *Id.* at 91:23-24 and 92:1-22, excerpts attached as Ex. A.

[31] *Id.* at 95:7-10, excerpts attached as Ex. A.

[32] *Kumho Tire co. v. Carmichael,* 526 U.S. 137, 149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

amenable to scientific verification.[33] Based on the above, it is evident that the methodology used by Laughery in reaching his opinion that the travel trailer required a formaldehyde warning, was not sound,[34] thus RBD respectfully requests that the Court exclude the testimony of Kenneth Laughery, Ph.D., in its entirety, or in the alternative, limit his testimony to only the need for a warning previously ruled by the Court in prior bellwether matters.

Respectfully submitted,

***/s/ Lyon H. Garrison***

LYON H. GARRISON, Bar No. 19591
SCOTT P. YOUNT, Bar No. 22679
RANDALL C. MULCAHY, Bar No. 26436
DARRIN L. FORTE, Bar No. 26885
KELLY M. MORTON, Bar No. 30645
GARRISON, YOUNT, FORTE
& MULCAHY, LLC
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 527-0680
Facsimile: (504) 527-0686
Attorneys for defendant,
Recreation By Design, LLC
Email: lgarrison@garrisonyount.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of this electronic filing to all known counsel of record.

***/s/ Lyon H. Garrison***
LYON H. GARRISON, Bar No. 19591

---

[33] *See Allen v. Penn. Eng'g Corp.,* 120 F.3d 194, 196 (5th Cir. 1996).

[34] *Sappington v. Skyjack, Inc.* 512 F.3d 440, 449 (8th Cir. 2007) (quoting *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686-87 (8th Cir. 2001)).