UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | * * * * * * * * | MDL NO. 1873<br><br>SECTION "N-5"<br><br><br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |
| THIS DOCUMENT RELATES TO:<br>*EARLINE CASTANEL, ET AL v. RECREATION BY DESIGN, LLC, SHAW ENVIRONMENTAL, INC.,* and *UNITED STATES OF AMERICA THROUGH THE FEDERAL EMERGENCY MANAGEMENT AGENCY,* NO. 09-3251 | * * * * * * * * * * | |

**********************************************************************

**MEMORANDUM IN SUPPORT OF RECREATION BY DESIGN, LLC'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF DR. LAWRENCE MILLER**

**MAY IT PLEASE THE COURT:**

    **NOW INTO COURT,** through undersigned counsel, comes defendant Recreation By

Design, LLC ("RBD"), who offers the following memorandum in support of its *Motion in Limine*

to Exclude the Opinions and Testimony of Dr. Lawrence Miller,[1] as Dr. Miller does not posses the requisite expertise to assist the jury in the matter, since he is no longer actively engaged in the practice of clinical medicine, and Plaintiff has failed to establish any evidence of general causation sufficient to support Miller's diagnosis, rendering his opinion irrelevant.

## I.  FACTUAL BACKGROUND

The instant action stems from Plaintiff's alleged exposure to formaldehyde while residing in a travel trailer supplied by FEMA as emergency housing.  Plaintiff has retained Dr. Lawrence Miller, a physician certified in internal medicine and pulmonary disease, to present specific causation testimony regarding Plaintiff's alleged respiratory conditions.  Dr. Miller personally examined Castanel on January 13, 2010 and issued his expert report on January 28, 2010.  This report focused on Castanel's respiratory condition and her fear of cancer and their alleged association with formaldehyde.

After a brief discussion of the literature on formaldehyde, Dr. Miller opined that, "within a reasonable degree of medical probability, the exposure to formaldehyde emissions during her residence in the FEMA trailer significantly exacerbated Ms. Castanel's rhinosinusitis."[2] Additionally, after noting that he reviewed the expert report of fellow Plaintiff expert witness, Patricia Williams, Ph.D., Dr. Miller further opined that "based on Ms. Castanel's known exposure to formaldehyde, discussed above, and the evidence summarized by Dr. Williams, it is also my opinion, within a reasonable degree of medical probability, that Ms. Castanel's fear of cancer, after

---

[1]As the Court and parties are familiar with the factual/procedural background of this matter, reference is made here to the background as set forth in Recreation by Design, LLC's Memorandum in Support of Motion for Summary Judgment Regarding Prescription (R. Doc. 9722).

[2]Miller Affidavit, dated January 28, 2010, attached as Ex. A.

her exposure to formaldehyde, are rationally based."³

A brief review of Plaintiff's other medical causation expert is instructive. Plaintiff has retained Patricia Williams, Ph.D. to serve as her only general causation expert in this matter. Williams, a toxicologist (board-certified 2006) cites a number of studies in her report but ultimately list the following opinions:

> Therefore, the following General Causation opinion is rendered:
>
>> A cause-effect relationship exists between formaldehyde and upper respiratory tract damage and cancer. A cause-effect relationship exists between formaldehyde and bronchoconstriction/asthma. A cause-effect relationship exists between formaldehyde and eczema. An association exists between formaldehyde and epistaxis. An association exists between epistaxis and cancer of the sinuses, nasal cavity, and nasal vestibule and wall. An association exists between mold and nonallergic rhinitis. A cause-effect relationship exists between formaldehyde and leukemia.⁴

## II. ARGUMENT AND CITATION TO AUTHORITY

### A.  Dr. Miller is not Qualified to Render Opinions in this Case.

Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." According to the Advisory Committee Notes to Rule 702, "whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier of fact." The Fifth Circuit has previously recognized that expert testimony should be excluded if the court finds that "the jury could adeptly assess [the] situation

---

³*Id.*

⁴Affidavit of Patricia M. Williams, Ph.D., DABT, pg. 70, excerpts attached as Ex. B.

3

using only their common experience and knowledge."[5] The inquiry is thus twofold: (1) whether the expert is qualified, and (2) whether such testimony will assist the trier of fact.[6]

Although Dr. Miller is board certified in Internal Medicine, Pulmonary Disease, and Clinical Pharmacology, he has not worked with patients in the past five years.[7] He now works as a venture capitalist and currently serves as president of Mediphase, a company that is involved in biotech investments.[8] Towards the end of the time frame in which he was still seeing patients, Dr. Miller estimated that only 10% of his work involved seeing patients.[9] Further, prior to his work as an expert witness in relation to the this MDL, Dr. Miller had not treated a patient who had been exposed to formaldehyde.[10]

As this brief review demonstrates, Dr. Miller is no longer in the business of being a clinical physician but has instead shifted his focus to venture capitalism. He no longer sees patients or publishes regularly,[11] and has no experience with formaldehyde-related issues. RBD submits that Dr. Miller does not posses the requisite expertise to assist the jury in evaluating the causative effect of formaldehyde and its impact on Plaintiff, Earline Castanel's, health.[12]

---

[5]*Peters v. Five Star Marine Service,* 898 F.2d 448, 450 (5th Cir. 1990).

[6]*Kiger v. Plaisance Dragline and Dreding, Co., Inc.,* 2006 WL 3844995, *1 (E.D. La., 2006).

[7]Miller depo. at 26:19-24, excerpts attached as Ex. C.

[8]*Id.* at 28:17-20, excerpts attached as Ex. C.

[9]*Id.* at 32:13-18, excerpts attached as Ex. C.

[10]*Id.* at 36:5-11, excerpts attached as Ex. C.

[11]Miller deposition from Fleetwood bellwether trial, dated 9/22/09, at 14:7-18, excerpts attached as Ex. D.

[12]In *Easson v. Velsicol Chemical Corp.,* Dr. Miller sought to provide testimony regarding an increase risk of cancer. 1991 WL 220955 (E.D. La. 1991). The court did not allow him to testify, expressing concerns over Dr. Miller's qualifications to opine regarding cancer:
   Dr. Miller is not an expert in either oncology or pathology. Miller's opinion as to the cause of [the

Accordingly, the Court should strike Dr. Miller's testimony due to his lack of expertise.

**B.     Dr. Millers Testimony is Not Relevant.**

Expert testimony is not exempt from the requirement of Federal Rule of Evidence 402 providing that "[e]vidence which is not relevant is not admissible."[13] Under the Federal Rules of Evidence, admissibility is predicated on more than just logical relevance; rather, legal relevance is paramount: "Although, relevant evidence may be excluded if it probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ... or needless presentation of cumulative evidence."[14] In determining legal relevance under Rule 403, the trial judge has broad discretion and is authorized to balance the probative value of the evidence against its prejudicial effect.[15]

It is the plaintiff's burden to prove causation under the Louisiana Products Liability Act.[16] The plaintiff must prove causation through medical testimony that it is more probable than not that

---

plaintiff's] death was formed without consultation with oncologist or other cancer specialists. Dr. Miller's experience with cancer occurred during his residency when he assisted in a study of the immune system as affected by smoking and asbestos. Dr. Miller does not routinely treat cancer patients, nor has he ever treated a patient with a colon cancer of the type that affected [the plaintiff]).

*See Easson* at *2 citing *Christophersen v. Allied-Signal Corporation,* 939 F.2d 1106 (5th Cir. 1991). As in *Easson,* Dr. Miller's opinions should be excluded here. His opinions regarding Castanel are based on clinical experience that ended years ago, and he had no prior familiarity with the state of formaldehyde research prior to being retained by plaintiff's counsel for the Fleetwood bellwether trial.

[13]*Kiger v. Plaisance Dragline and Dredging Co., Inc.,* 2006 WL 3844995, *1 (E.D. La., 2006).

[14]Fed. R. Evid. 403.

[15]*See United States v. Johnson,* 558 F.2d 744 (5th Cir 1977); *see also United States v. Maceo,* 947 F.2d 1191 (5th Cir. 1991).

[16]*Maranto v. Goodyear Tire & Rubber Co.,* 650 So.2d 757, 759 (La. 1995).

5

the subsequent injuries were caused by the product.[17] In a toxic tort case, the plaintiff must prove both general causation and specific causation - - and must do so with competent expert testimony.[18] General causation deals with whether the substance at issue can cause certain diseases in people in general.[19] Specific causation focuses upon whether the substance was in fact the cause of the ailments or symptoms in the particular patient.[20] Not only is expert medical testimony required to establish causation, but, in a toxic tort case, the plaintiff must also present evidence of the harmful level of exposure to the chemical, and knowledge that plaintiff was exposed to that level.

Plaintiff has failed to coordinate both general and specific causation testimony to support any of her claims.[21] Although Dr. Williams ascribes a causative relationship between formaldehyde and several ailments, her findings do not include a general causation link between formaldehyde and the exacerbation of rhinosinusitis. Additionally, Dr. Miller, who is Plaintiff's only specific causation expert witness, opines that one of the causative effects of Castanel's exposure to formaldehyde is exacerbation of rhinosinusitis.[22] Accordingly, there is no shared specific/general causal link sufficient to support Plaintiff's exacerbation of rhinosinusitis claim.

Due to Plaintiff's failure to satisfy her burden of proof, RBD requests that the Court exclude any and all testimony from Dr. Miller, as it is irrelevant and immaterial as there is no corroborative

---

[17]*Kemp v. Metabolife Int'l, Inc.,* No. 00-3513, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004); *see also Hutchinson v. Shah,* 648 So.2d 451, 452 (La. Ct. App. 1994) ("[w]hen the conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required").

[18]*Knight v. Kirby Inland Marine, Inc.,* 483 F.3d 347, 351 (5th Cir. 2007).

[19]*Kemp,* 2004 WL 2095618, at *3 (citing *Pick v. Am. Med. Sys., Inc.,* 958 F. Supp. 1151, 1164 (E.D. La. 1997)).

[20]*Pick,* 958 F. Supp. at 1164.

[21]For a full discussion of this issue, please refer to RBD's Motion for Summary Judgment as to Causation, R. Doc. 13243.

[22]Miller depo, at 40:19-24, excerpts attached as Ex. C.

6

general causation testimony.

### ii.     Dr. Miller's Deposition Testimony.

Further grounds for excluding Dr. Miller's testimony regarding his opinion that Plaintiff's suffered an exacerbation of rhinosinusitis, is found in his deposition testimony given in this matter.

Dr. Miller testified that he relied largely on the medical history given to him by Castanel in reaching the conclusion that exposure to formaldehyde caused her to suffer an exacerbation of her rhinosinusitis symptoms.[23] However, when presented with medical testimony at his deposition that Castanel's rhinosinusitis symptoms did not increase while she resided in the FEMA travel trailer or after moving out of the trailer, Dr. Miller conceded that he would have to revisit his conclusion regarding her rhinosinusitis. Dr. Miller testified:

> Q.     "I have a question. The question is, would you disagree with this testimony - - this is Dr. Bowers - - referring to Page 58, 13: "Question: With respect to Ms. Castanel's overall health, how would you describe her health? Answer: I think her health is good.
>
> "Question: The office notes we just went through from October of 2003 until last week, Ms. Castanel was treated on a consistent basis; would that be fair to say? Answer: Yes, sir.
>
> "Question: Did you see any changes in Ms. Castanel's condition, significant changes, during that time period from 2003 to last week?" And just so you'll know, "last week" was in January of 2010. "Answer: No, I can't say that it did.
>
> "Question: Would you say that her health and her symptoms remained relatively consistent during the time period, that six-and-a-half, almost seven-year

---

[23]Miller depo. at 110:1-7, excerpts attached as Ex. C.

time period? Answer: Yes.

"Question: Actually a little more than six years. Based on a review of your medical notes and your records, it appears as though Ms. Castanel treated consistently for sinus problems before Hurricane Katrina; is that correct? Answer: Yes, sir.

"Question: Would it be fair to say - - did you not sense or note any increase in Ms. Castanel's sinus problems after Hurricane Katrina?" And Dr. Bowers testified, "No."

Would you have any reason to disagree with that testimony?

A. The testimony is what it is. It's not my job to agree or disagree. In terms of Ms. Castanel's sinus problems, obviously she gave me different information.

Q. If the information given to Dr. Bowers is accurate, and that is that Ms. Castanel did not have any increase in sinus problems after Hurricane Katrina or after living in a FEMA unit, would you still stand by your opinions regarding the fact that you believe Ms. Castanel had an exacerbation of her sinusitis?

A. I can't answer your question. That's not the information I received, so I can't give you an answer.

Q. I want you to assume - - you're an expert. I want you to make an assumption.

\*\*\*\*

A. It doesn't make sense. It's counterfactual to information I have. So I don't think I can answer you.

Q. That's fine. Let's put the facts that you got from Ms. Castanel on the side, just for purposes of this question.

A. Are we talking about a hypothetical patient, some other patient?

> Q. We're talking about a hypothetical question.
>
> A. I'm not sure I understand that at this point.
>
> Q. Let's just go through it. You're an expert, or they're going to attempt to qualify you as an expert. Putting the history given by Ms. Castanel on the side, if Ms. Castanel did not have any increase in her sinus symptoms after Hurricane Katrina or while living in the FEMA unit or after the FEMA unit, would you still opine that Ms. Castanel had an exacerbation of her sinusitis as a result of formaldehyde?
>
> ****
>
> A. I would revisit that conclusion. I'm not sure I can give you that exact answer as we sit here.
>
> Q. So you can't answer that hypothetical?
>
> A. I can't.[24]

Also of importance is the fact that Dr. Miller failed to define what is considered to be a harmful level of formaldehyde and he did not provide evidence that Plaintiff was exposed to this requisite level of formaldehyde. In his report, Dr. Miller only writes in general terms when referencing both of these issues. On page 5 of his report, Dr. Miller states that the "MRL derived for intermediate inhalation (15-365 days) is 30 ppb, and for chronic inhalation (greater than 365 days) is 8 ppb."[25] However, Dr. Miller does not indicate whether he believes that exposure to levels of formaldehyde at levels greater than the stated MRL's are harmful. Further, Dr. Miller also failed to provide evidence that plaintiff was exposed to this the requisite level of formaldehyde which is

---

[24] Miller depo. at 102:1-24, 103:1-24, 104:1-24, and 105:1-3, excerpts attached as Ex. C.

[25] Miller affidavit, pg. 5, attached as Ex. A.

harmful to humans.  Again, in his report, he only address this issue in general terms.  He writes as follows:

> With regard to Ms. Castanel, the primary elements for the correlation of her rhinosinusitis with formaldehyde exposure are present.  As previously noted, a "completed exposure pathway" is present, indicating the strong likelihood that Ms. Castanel was exposed chronically to formaldehyde emissions in her "FEMA trailer" housing.[26]

Further, when questioned at his deposition regarding the level of formaldehyde in Castanel's FEMA travel trailer, Miller responded as follows:

> Q.  As you sit here today, you don't know what the level of formaldehyde was in Ms. Castanel's trailer?
>
> ****
>
> A.  Again, what I specifically, no.  I've discussed the level in FEMA trailers in general in this report.
>
> Q.  And you offered opinions in your report regarding Ms. Castanel's condition and its relationship to formaldehyde in her trailer without knowing the level of formaldehyde in her trailer, correct?
>
> A.  Correct.[27]

These above referenced excerpts from Dr. Miller's deposition testimony and expert report clearly show that Dr. Miller's specific causation opinion is not based on reliable, accurate or all relevant information.  Given the deficiencies in the information relied upon by Dr. Miller in forming his opinion that Castanel's exacerbation of rhinosinusitis was related to formaldehyde exposure, it follows that the opinion is unreliable.  As such, Dr. Miller's testimony is irrelevant and immaterial

---

[26]Miller affidavit, pg. 6, attached as Ex. A.

[27]Miller depo. at 90:12 - 24, excerpts attached as Ex. C.

and should be excluded.

### iii. Dr. Miller's opinion regarding Plaintiff's Fear of Cancer should also be excluded.

As noted above, Dr. Miller also opined that "based on Ms. Castanel's known exposure to formaldehyde, discussed above, and the evidence summarized by Dr. Williams, it is also my opinion, within a reasonable degree of medical probability, that Ms. Castanel's fear of cancer, after her exposure to formaldehyde, are rationally based."[28]

Mental anguish claims, which include the fear of cancer, must be causally related to a defendant's actions.[29] Moreover, damages for mental anguish are only recoverable when the mental anguish results from the fear of developing a condition "as a result of a *present injury*."[30] As discussed in RBD's Motion for Summary Judgment regarding Plaintiff's fear of cancer, Plaintiff has failed to carry her burden of proof to provide the expert causation testimony necessary to recover for any present injury. [31] Therefore, Dr. Miller's testimony regarding Ms. Castanel's fear of cancer is irrelevant and immaterial and should be excluded.

Further basis for excluding Dr. Miller's testimony regarding Plaintiff's fear of cancer claim is also found in his deposition testimony. When questioned regarding his opinion that plaintiff's fear of cancer is rationally based, Dr. Miller testified as follows:

---

[28] Miller Affidavit, attached as Exhibit A.

[29] *Smith v. A.C., Inc.,* 843 F.2d 854, 857-58 (5th Cir. 1988) (quoting *Hagerty v. L & L Marine Svcs., Inc.,* 788 F.2d 315, 318 (5th Cir. 1986)); *see also Maurer v. Heyer-Schulte Corp.,* No. 92-3485, 2002 WL 31819160, at *3 (E.D. La. Dec. 13, 2002) (causation is required for fear of cancer claims). "'[C]ancerphobia' is merely a specific type of compensable mental anguish or emotional distress." *Smith,* 843 F.2d 585.

[30] *Id.* at 858 (emphasis added).

[31] RBD has filed Motions for Summary Judgement Regarding Plaintiff's Mental Anguish and Fear of Cancer claims (R. Doc.13234) and Causation (R. Doc. 13235) and incorporates the arguments included in those motions into the instant motion.

11

Q. Well, how did you come to find that Ms. Castanel had a fear of cancer?

A. She mentioned it. Then we discussed it, of course.

Q. So your finding that Ms. Castnel had a fear of cancer, that was based on Ms. Castanel's comments to you?

A. Yes. I'm not sure how else you would find it.

Q. That's fair. I'm just trying to find out. Did Ms. Castanel tell you she started worrying about cancer?

A. She wasn't completely clear about it, and I don't think she recalled exactly, but it was certainly related to her time in the FEMA trailer.

Q. You're very clear on that; Ms. Castanel's fear of cancer, in your opinion, was based on her time in the FEMA trailer.

A. That's what she told me.

Q. Did Ms. Castanel tell you that her fear of cancer was related to anything else?

A. She did not.

Q. So as we sit here today, it would be your opinion that Ms. Castanel's fear of cancer was related to her time in the FEMA trailer [*sic*]?

A. That's what the patient told me.

Q. And there was no specific information provided by Ms. Castanel regarding fear of cancer?

A. Not that I recall, no.[32]

---

[32] Miller depo. at 57:23-24, 58:24, 58:1-24 and 59:1-4, excerpts attached as Ex. C.

Finally, as noted above, Patricia Williams, Ph. D. also opined that there was a cause-effect relationship between formaldehyde and leukemia. However, Plaintiff provide any expert or medical testimony regarding fear of leukemia. Nor did she provide any expert or medical testimony regarding fear of leukemia. Also, Dr. Miller did not address leukemia in either his expert report or in his deposition testimony. Therefore, any testimony by Dr. Miller regarding formaldehyde and leukemia would be irrelevant, and he should be excluded from testifying regarding leukemia.

On its face, Dr. Miller's deposition testimony regarding Plaintiff's fear of cancer claim is, at best, simply a rehashing of the information given to him by the Plaintiff. It does not include any scientific information or any information that would require the explanation of an expert to allow a member of the jury to grasp the meaning of the statements. Additional, Dr. Miller is not a psychiatrist or a psychologist, thus fear of cancer is outside his area os speciality. As such, Dr. Miller's testimony regarding Plaintiff's alleged fear of cancer will be of no assistance to "the trier of fact" and should be excluded.

    **iv.   Dr. Miller should be excluded from testifying regarding Plaintiff's nasal surgery.**

It is clear from the above referenced excerpts from Dr. Miller's report and deposition testimony, that he does not "present evidence of the harmful level of exposure to the chemical, and knowledge that plaintiff was exposed to that level" as required by law.[33] Plaintiff has, therefore, not provided specific causation testimony linking her alleged exacerbation of rhinosinusitis claim to formaldehyde exposure. Most importantly, Dr. Miller offers no testimony whatsoever as to whether

---

[33]*Allen v. Pa. Eng'g Corp.,* 102 F.3d 197, 199 (5th Cir. 1996); *see also Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 279 n.10 (5th Cir. 1996) (noting importance of the expert knowing the level of exposure to support his causation opinion).

13

plaintiff's nasal surgery is caused by and/or related to any alleged exposure to formaldehyde in her travel trailer.

Federal Rule of Evidence 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Nevertheless, Federal Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...."

Based upon the medical testimony, or lack thereof, noted above, it is apparent that plaintiff has brought forth absolutely no expert medical evidence to show that her recent nasal surgery was causally related to any alleged formaldehyde exposure in her FEMA travel trailer. Dr. Miller is the *only* purported expert who even suggests that plaintiff's rhinosinusitis condition was exacerbated as a result of the travel trailer, and, incredibly, he did not even know the formaldehyde levels plaintiff was allegedly exposed to in her trailer. Further, Dr. Miller has offered no opinion whatsoever with respect to plaintiff's nasal surgery and its causal relationship to any alleged formaldehyde exposure in the travel trailer. As such, Dr. Miller should also be excluded from testifying regarding Plaintiff's nasal surgery.

### III.  CONCLUSION

For the foregoing reasons, RBD respectfully requests that the Court exclude the testimony of Dr. Lawrence Miller.

Respectfully submitted,

*/s/ Lyon H. Garrison*
LYON H. GARRISON, Bar No. 19591
SCOTT P. YOUNT, Bar No. 22679
RANDALL C. MULCAHY, Bar No. 26436
DARRIN L. FORTE, Bar No. 26885
KELLY M. MORTON, Bar No. 30645
GARRISON, YOUNT, FORTE
& MULCAHY, LLC
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 527-0680
Facsimile: (504) 527-0686
Attorneys for defendant,
Recreation By Design, LLC
Email: lgarrison@garrisonyount.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of this electronic filing to all known counsel of record.

*/s/ Lyon H. Garrison*
LYON H. GARRISON, Bar No. 19591

15