# Transcript of the Testimony of
# Dr. Patricia M. Williams

**Date taken: February 24, 2010**

**In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Castanel)**

***Note***

All **electronic deposition & exhibit files**
are available at **www.psrdocs.com**.
Please call or e-mail reporters@psrdocs.com if you need a
**Username** and **Password**.

# Professional Shorthand Reporters, Inc.
Phone:   504-529-5255
Fax:   504-529-5257
Email:   reporters@psrdocs.com
Internet:   www.psrdocs.com



EXHIBIT B

1    connection with the Castanel case; is that
2    correct?
3         A.   That is correct.  It's in addition
4    to what has already been deposed.  So if you
5    want me to outline what is specific to the
6    Castanel case that has not already been
7    deposed on, I'm prepared to do that.
8         Q.   I don't want you to do that yet.
9    You've prepared a report that's Bates
10   labeled CAST-002002 through 2084; is that
11   correct?
12        A.   Yes.
13        Q.   Now, when you said there was some
14   stuff -- that this report is in addition to
15   the work that you've already performed?
16        A.   No.  This report contains all of
17   the previous cases.  And so they're
18   operating under a court order in all of the
19   other depositions that you can't go back and
20   redepose me on matters that have already
21   been deposed.  So each time I go in, I mark
22   specifically what is new to this report for
23   your case.
24        Q.   Okay.  I appreciate -- never mind.
25             Let me ask you the question.  One

1  of the studies that you relied on in
2  Ms. Castanel's -- before I go there, did you
3  review any documents specifically related to
4  Ms. Castanel?
5      A.   Basically, I'm doing general
6  causation.  So, no, I'm really just -- this
7  is a fear of cancer and, at some point, they
8  will let me know which portions of the
9  general causation report, of which this
10 entire thing is a general causation report,
11 will be applicable to her.  And so --
12     MR. YOUNT:
13         Let me interrupt you.  Ms. Court
14 Reporter, will you please read back my
15 question.
16     (Requested portion of transcript read
17 back, as follows:
18     "Question:  Did you review any
19 documents specifically related to Ms.
20 Castanel?")
21 EXAMINATION BY MR. YOUNT:
22     Q.   Will you please answer my question
23 and then you can explain it.
24     A.   Right.  And I'm saying I don't
25 have any documents that I recall specific to

1    A.   I'm not doing specific causation,
2  so I do not have the specific information on
3  Ms. Castanel, so I cannot answer that
4  because I am not doing specific causation.
5    Q.   Okay.  Do you know Ms. Castanel's
6  age?
7    A.   No, I do not.
8    Q.   All right.  Do you know what her
9  race is?
10   A.   No, I do not.
11   Q.   Do you know anything about her
12 prior medical condition before Hurricane
13 Katrina?
14   A.   No, I do not.
15   Q.   Do you know whether she smokes or
16 has ever smoked?
17   A.   No, I do not.
18   Q.   Do you know whether she has ever
19 been diagnosed with cancer?
20   A.   No, I do not.
21   Q.   All right.  Do you know whether
22 anybody ever smoked in her trailer?
23   A.   No, I do not.
24   Q.   Do you know what disease process
25 or injury she is claiming to have sustained

In Re: FEMA Trailer Formaldehyde Products Liability Litigation (Castanel)                           Dr. Patricia M. Williams

Page 14

```
 1   as a result of formaldehyde exposure?
 2        A.   No, I do not know what the
 3   final -- in other words, at some point in
 4   time, I am told what portions of the general
 5   causation will be applicable to her from
 6   this report.
 7        Q.   At this point, you don't know what
 8   that is?
 9        A.   No, I am not clear as to what it
10   is.  I have a general idea, but it is a
11   fear-of-cancer case.
12        Q.   Where did you get that general
13   idea from?
14        A.   Well, it is a fear-of-cancer case.
15   Formaldehyde causes cancer.  It is a
16   fear-of-cancer case when you are exposed to
17   a Group 1 carcinogen.
18        MR. CHEATWOOD:
19             Object to nonresponsive.
20   EXAMINATION BY MR. YOUNT:
21        Q.   How did you get that information
22   that this is a fear-of-cancer case?
23        A.   Well, it's my information that
24   when someone is exposed to a Group 1
25   carcinogen, they do have a legitimate
```

Page 15

1   reason, basis for a fear of cancer.
2       Q.   Have you read Ms. Castanel's
3   complaint or her plaintiff fact information
4   sheet?
5       A.   I don't recall.  You're asking me
6   questions that I don't recall that I have
7   that.  I would have to go back and check.
8   If anything like that is sent to me, my only
9   interest is basically, is there a cancer?
10          And so, at some point -- you know,
11  you are catching me with something that I
12  really don't recall.  So I don't recall
13  having that information.  There is no cancer
14  to my knowledge, so I haven't prepared
15  anything specific to cancer for her.  That's
16  really the extent of what I need to know.
17      MR. CHEATWOOD:
18          Would you read the question back?
19      (Requested portion of transcript read
20  back, as follows:
21      "Question:  Have you read Ms.
22  Castanel's complaint or her plaintiff fact
23  information sheet?")
24      THE WITNESS:
25          I don't recall.

1    Q.   Is that a cause and effect or is
2    that an association?
3    A.   That's a cause and effect.
4    MR. YOUNT:
5         I will tender the witness for now.
6    EXAMINATION BY MR. CHEATWOOD:
7    Q.   Doctor, I just have a couple of
8    questions.
9         Early on you said a number of
10   times that "they" will let you know which
11   part of the report is relevant to this
12   particular plaintiff.
13   A.   They?
14   Q.   That's what you said, "they," two
15   or three times.
16        Who's the "they"?
17   A.   I don't recall saying "they."
18   Q.   I promise you, you did. Because I
19   wrote it down. "They" will let you know
20   which part of the report is relevant to this
21   plaintiff.
22   A.   Oh, you're referring to when
23   whoever is doing the specific causation
24   generates a final report and then gives that
25   final report to me. You have Larry Miller.

1　I will see their reports. That's not
2　involved in my writing this report, but when
3　I see a final report from their specific
4　causation individual, I will know what
5　portions of this report I need to prepare
6　for presentation at this particular trial.
7　　　Q. Okay. So --
8　　　A. When I say "they," I mean, you
9　know, I don't always know who they pulled
10　in -- who the lawyers -- I need to stop
11　using the word "they" -- who the lawyers
12　have pulled in for additional causation
13　experts. I never know what they're doing in
14　that regard.
15　　　But the -- you know, basically,
16　the report, eventually I will see the final
17　report of Dr. Miller and whoever else they
18　have consulted, the treating physicians, and
19　I will know which portions of the general
20　causation need to be explained in court that
21　is relevant to what the findings are in the
22　specific person.
23　　　But other than that, I have
24　nothing to do with the specific causation.
25　　　Q. I didn't ask you anything about

1   the specifics. I just wanted to know who
2   "they" was, so --
3        A.   Well, I mean, the lawyers are
4   going to let me have a copy of the final
5   report so I can select what is pertinent to
6   this particular trial.
7             In other words, as far as I know,
8   eczema has absolutely no bearing on this
9   trial. So I'm not even going to go into
10  that in the trial. So that's what I'm
11  talking about when I say "they."
12       Q.   Thank you. Unfortunately, that
13  didn't clear it up, that just made it muddy.
14            Doctor, this is my question. As I
15  understand what you're telling me, once you
16  finally get the reports from the medical
17  doctors or other experts on the specifics,
18  and the lawyers give you those, then that
19  will let you know what issues are relevant
20  out of your report?
21       A.   "Issues" is the word. Yes. Once
22  I know what the issues are, then I will
23  certainly not bother to present issues that
24  have no relevance to the particular case at
25  hand.

1    Q.  Well, I suspect we may disagree
2  with that, but I appreciate you sharing that
3  with us, because I just wanted to know who
4  "they" was.
5         Now, the other thing is, you were
6  asked just a few questions about your son,
7  and I don't intend to go into that in any
8  great detail except for this:  He was at the
9  last trial, correct, in the back of the
10 courtroom?
11   A.  I guess -- he may have -- what was
12 the last trial?  What was the last trial?
13 Alexander?
14        I think he -- he was in the
15 court -- I think he did step in.
16   Q.  Well, in fact, you identified him
17 in the courtroom?
18   A.  No, I did not identify him.
19   Q.  Well, the other lawyer pointed him
20 out, correct?
21   A.  Right.
22   Q.  In fact, I think he called him a
23 good-looking fellow.  I know you will
24 remember that.  As a mother, you will be
25 proud.  The point -- my question is, he saw