UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCT LIABILITY | * | SECTION "N-5" |
| LITIGATION | * | |
| | * | JUDGE ENGELHARDT |
| | * | |
| THIS DOCUMENT RELATES TO | * | MAG. JUDGE CHASEZ |
| *EARLINE CASTANEL, ET AL* | * | |
| *v.  RECREATION BY DESIGN, LLC* | * | |
| *ET AL*, DOCKET NO. 09-3251 | * | |

**************************************************************************

**RECREATION BY DESIGN, LLC'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO EXCLUDE EXPERT TESTIMONY OF EDWARD SHWERY, PH.D.**

**MAY IT PLEASE THE COURT:**

Defendant, Recreation by Design, LLC ("RBD"), respectfully submits this memorandum in support of its Motion to Exclude the Expert Testimony of Edward H. Shwery, Ph.D.  RBD contends that Dr. Shwery's opinions are unreliable, irrelevant, and should be excluded in their entirety.[1]

---

[1] As the Court and parties are familiar with the factual/procedural background of this matter, reference is made here to the background as set forth in Recreation by Design, LLC's Memorandum in Support of Motion for Summary Judgment Regarding Prescription R. Doc. 9722).

**BACKGROUND**

This action stems from Plaintiff's alleged exposure to formaldehyde while residing in a travel trailer provided by FEMA as emergency housing. Plaintiff has asserted claims for emotional damages as a result of her occupancy of the RBD travel trailer.[2] To support these claims, Plaintiff retained psychologist Edward Shwery, Ph.D. to testify regarding her mental and emotional issues. Shwery examined Plaintiff on two separate occasions. Shwery explained that the second visit was required because he needed to obtain additional information from Plaintiff and because he felt that it was needed from a psychological standpoint.[3]

In his report dated, January 26, 2010, Shwery stated that:

> Ms. Castanel appears to have a circumscribed problem. Her anxiety and distress is apparently the result of having had breathing difficulties during her months in the trailer that led to panic and fears of suffocation and death. Since living back in her home, the intensity, frequency, and duration of her anxieties diminished, but the increase in sinus problems have caused her anxieties to increase.[4]

RBD now brings this Motion in Limine to Exclude Shwery's testimony. RBD asserts that Shwery's testimony is irrelevant, as there is no causal link between the RBD trailer and Castanel's mental health.

---

[2] See Plaintiff's Complaint for Damages, R. Doc. 1, Docket No. 09-3251 and Supplemental and Amending Complaint for Damages, R. Doc. 9401.

[3] Shwery depo. at 11:22-35 and 12:1-23, excerpts attached as Ex. A.

[4] Shwery report, dated January 26, 2010, attached as Ex. B.

2

**LAW AND ARGUMENT**

**I.      Legal Standard**

The United states Supreme Court's decision in *Daubert v. Merrelo Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002).  Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 20-04); see, *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 147 (1999).

*Daubert* also cautions against admitting expert testimony in a case when the application of the expert's methodology to the facts of the case involves and impermissible leap of faith.  The Supreme Court in *General Electric v. Joiner* acknowledges, "[trained experts commonly extrapolate from existing date.  But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to the existing data only by the *ipse dixit* of the expert." *General Electric v. Joiner*, 522 .S. 136, 146, 139 L. Ed. 508, 519 (1997).  If there exists too great an analytical gap between the data and the opinion offered, the testimony is not reliable. *Id. Joiner* reminds district courts that they must review the reasoning used by an expert in applying a

3

given methodology to the expert's ultimate opinion. It is imperative that an expert explains the "how" and the "why" behind his conclusions. *See id*. At 144; see also *Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989) (stressing that the expert must state both the foundation for his opinions and the reasoning from that foundation). Ultimately, when the evidence does not "fit" with the conclusion, the testimonial evidence is not reliable. *Cavallo v. Star Enterprises*, 892 F.Supp. 756, 761-673 (E.D. Va. 1995), *affd in part and rev'd in part*, 100 F.3d 1150 (4th Cir., 1996).

## II.   Dr. Shwery's Opinions are Irrelevant

**A.   Because she has not proven any present injury was caused by formaldehyde, Castanal cannot recover any mental anguish damages, and Dr. Shwery's testimony is therefore irrelevant.**

Expert testimony is not exempt from the requirement of Federal Rule of Evidence 402 providing that "[evidence which is not relevant is not admissible."[5] Under the Federal Rules of Evidence, admissibility is predicated on more than just logical relevance; rather, legal relevance is paramount: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . or needless presentation of cumulative evidence."[6] In determining legal relevance under Rule 403, the trial judge has broad discretion and is authorized to

---

[5] *Kiger v. Plasiance Dragline and Dredging Co., Inc.* 2006 WL 3844995, *1 (E.D. La., 2006).

[6] Fed.R.Evid. 403.

balance the probative value of the evidence against its prejudicial effect.[7]

Moreover, it is the plaintiff's burden to prove causation under the Louisiana Products Liability Act.[8] The plaintiff must prove causation through medical testimony that it is more probable than not that the subsequent injuries were cause by the product.[9] In a toxic tort case, the plaintiff must prove both general causation and specific causation - - and must do so with competent diseases in people in general.[10] Specific causation focuses upon whether the substance was in fact the cause of the ailments or symptoms in the particular patient.[11] Not only is expert medical testimony required to establish causation, but in a toxic tort case, the plaintiff must also present evidence of the harmful level of exposure to the chemical, and knowledge that plaintiff was exposed to that level.

With regard to Dr. Shwery's opinion, RBD notes that mental anguish damages are only recoverable where there is a physical injury. *See Mores v. State Through Dept. Of Wildlife and Fisheries*, 567 So.2d 1081, 1095 (La. 1990). Additionally, damages for fear of

---

[7] See *United States v. Johnson*, 558 F.2d 744 (5th Cir.); see also, *United States v. Maceo*, 947 F.2d 1191 (5th Cir. 1991).

[8] *Maranta v. Goodyear Tire & Rubber Co.*, 650 So.2d 757, 759 (La. 1995).

[9] *Kemp v. Metabolife Int'l, Inc.*, No., 00-3513, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004); *see also Hutchinson v. Shah,* 648 So.2d 451, 452 (La. Ct. App. 1994) ("[when the conclusion regarding medical causation in not one within common knowledge, expert medical testimony is required").

[10] *Knight v. Kirby Inland Marine, Inc.*, 483 F.3d 347, 351 (5th Cir. 2007).

[11] *Kemp*, 2004 WL 2095618, at *3 (citing *Pick v. Am. Med. Sys., Inc.,* 958 Supp. 1151, 1164 E.D. La. 1997)).

developing cancer are only recoverable when mental anguish results from the fear of developing a condition "as a result of a *present injury*." *Smith v. A.C. & S., Inc.* 843 F.2d 854, 858 (5th Cir. 1988) (emphasis added). As will be shown below, Plaintiff has not sustained a "present injury" as a result of residing in her FEMA travel trailer, therefore, her mental damages claims fail. As such, because all of Shwery's testimony is regarding Castanel's mental health, the entirety of his testimony is irrelevant and should be dismissed.

> i. **Shwery's Testimony Regarding Castanel's Anxiety Claims due to exacerbation of rhinosinustitis should be excluded.**

It should initially be noted that Plaintiff has failed to coordinate both general and specific causation testimony to support any of her claims.[12] Although Dr. Williams ascribes a causation relationship between formaldehyde and several ailments, her findings do not include a general causation link between formaldehyde and the exacerbation of rhinosinustitis.[13] Conversely, Dr. Miller, plaintiff's only specific causation expert, opines that one of the causative effects of Castanel's exposure to formaldehyde is the exacerbation of rhinosinustitis.[14] Accordingly, there is not shared specific/general causal link sufficient to support Plaintiff's exacerbation of rhinosinustitis claim.

The lack of shared specific/general causal link to support Plaintiff's exacerbation of

---

[12] For a full discussion of this issue, please refer to RBD's Motion for Summary Judgment as to Causation, R. Doc.13243.

[13] *See* Expert report of Dr. Williams, p. 63-64, excerpts attached as Ex. C.

[14] *See* Deposition of Dr. Miller, p. 113-14, attached as Exhibit D.

rhinosinustitis claim is sufficient basis for the claim to fail. As exacerbation of rhinosinustitis is the only "present injury" Plaintiff claims as a result of her alleged formaldehyde exposure, Plaintiff's associated mental anguish claim of anxiety must also fail. As Shwery's testimony is centered on Plaintiff's alleged mental anguish injuries, his testimony is rendered irrelevant, and should thus be excluded.

Further evidence that Shwery's testimony is irrelevant and should be excluded is the fact that Plaintiff suffered from anxiety problems for several years prior to residing in the FEMA travel trailer. In fact, Shwery's assertion that Castanel's anxiety is related to the increased rhinosinustitis symptoms she suffered as a result of residing in the FEMA travel trailer does not coincide with the evidence in Plaintiff's medical records from her long term treating physicians or their deposition testimony.

A review of Plaintiff's treating physician testimony taken in this matter reveals that she has been a very nervous person and suffered from anxiety for the better part of the last twenty-five years. Plaintiff's treating physician, Dr. Carter Paddock, noted at a February 20, 1984 visit that "...her general health, mainly she said she was a very nervous person."[15] Some ten years later, Castanel again noted to Dr. Paddock that she continued to suffer from nervousness. Dr. Paddock testified, "...So we kind of asked about her general health. She said she was still nervous."[16]

---

[15] Paddock Depo. at 25:2-3, excerpts attached as Ex. E.

[16] Paddock Depo. at 34:4-6, excerpts attached as Ex. E.

7

Further, Dr. Bowers also testified that Castanel also noted that she had suffered from anxiety for several years prior to moving into her travel trailer. Dr. Bowers first began treating Castanel in 2000 while he worked at Methodist Hospital.[17] Dr. Bowers testified as follows regarding Castanel's history of anxiety:

> Q. The anxiety, depression and nervousness you described as chronic, and I did see repeated references to those symptoms, did Ms. Castanel have an ongoing problem with this nervousness and depression in 2004, 2005?
>
> A. I think Ms. Castanel has always had an issue with anxiety. She would be what most people call a high strung person.
>
> Q. That's fair. And do you remember if she had those nervousness issues and depression issues when you treated Ms. Castanel At Methodist Hospital?
>
> A. Definitely.
>
> Q. Yes, sir. And was Ms. Castanel receiving any medication for those issues and nervousness and depression?
>
> A. She took some chlordiazepoxide for that kind of on an as-needed basis and we had attempted to try some daily maintenance medications but they were never successful

---

[17]Bowers Depo. at 14:7-10, excerpts attached as Ex. F. Note that medical records are not available from Methodist Hospital because same was destroyed in Hurricane Katrina.

>   or she would have certain side effects or issues with taking them so we were never able to stick with any one but we did try.[18]

Medical records from an October 21, 2003 visit Castanel had with Dr. Bowers reveal that Castanel suffered from generalized anxiety disorder.[19] Also of note is that at a March 29, 2006 visit with Dr. Bowers, during which she resided in the travel trailer, Castanel stated that she was suffering mentally and that one of her children was giving her trouble.[20] When questioned about this visit at his deposition, Dr. Bowers testified as follows:

>   Q. "...If you don't mind, Doctor, let's go to it looks like March March 29, 2006.
>
>   A. Here we go, yes.
>
>   Q. Let's run through this visit in a little more detail. Please tell us Ms Castanel's complaints.
>
>   A. This patient had sustained quite a significant loss during Hurricane Katrina and during this visit I think things had really started to get to her, and using her own words she said

---

[18] Bowers Depo. at 32:15-25. 33:1-12, excerpts attached as Ex.F.

[19] See Medical Records from October 21, 2003 visit with Dr. Alan Bowers which were attached as Exhibit #3 to his deposition, excerpts attached as Ex. G.

[20] See Medical Records from March 29, 2006 visit with Dr. Alan Bowers which were attached as Exhibit #3 to his deposition, excerpts attached as Ex. G.

"I got problems" and she relayed that she cried every day. She had lost everything and she has more than one child and usually one or the other of them can give her some trouble in her own words and she stresses out about that as well, but on this particular visit I do remember vividly seeing her in my office and seeing her very tearful describing the magnitude of her loss during the hurricane in a way that she could really make you feel how hollow she was because everything had been taken from her. All of her memories, all of her possessions, everything.

Q. And as I understand your testimony, you have a specific recollection
of this meeting with Ms. Castanel?

A. I definitely do.

Q. And your notes are detailed as well that Ms. Castanel's emotional state on this date, January - - I'm sorry, March 29th, 2006 it was related to the loss that she sustained from the hurricane?

A. Yes.

Q. And some of the family problems she was having?

A. Yes, sir.

> Q. Did Ms. Castanel mention any other reasons that she thought she was feeling this depression on March 29th, 2006?
>
> A. I think that pretty much covered it.
>
> Q. Yes, sir. And you - - with your specific recollection, that's your recollection as well that her depression and her emotions were related to her loss from the hurricane?
>
> A. Yes, sir.[21]

Further, Dr. Bowers, when questioned regarding whether Castanel had ever mentioned to him that her FEMA trailer was causing any of her symptoms, responded that she had never once mentioned this to him. Dr. Bowers further stated that had Castanel made such a statement to him, he would have made a notation of it in her records because he writes exactly what the patient's primary complaint is as they speak it.[22]

There is no basis to connect Castanel's anxiety to her alleged formaldehyde exposure. First, no medical expert, including Dr. Miller, has opined that Castanel's alleged increased sinus problems were caused by exposure to a specific level of formaldehyde. Further, there is also a lack of evidence that Castanel has experienced an increase in her sinus problems. In fact, Castanel noted soon after she moved into the travel trailer that her sinus problems

---

[21] Bowers Depo. at 33:18-25, 34:1-25, 35:1-14, excerpts attached as Ex. F.

[22] Bowers Depo. at 57:18-25, 58:1-7, excerpts attached as Ex. F.

were about the same.[23] As such, there is no evidence upon which a jury could reasonably find that Castanel's alleged anxiety is in any way caused by Defendants. Therefore, Shwery's testimony regarding Plaintiff's anxiety is irrelevant, and should be excluded.

### ii. Shwery's Testimony Regarding Castanel's Fear of Cancer is not relevant.

Although he did not render an opinion regarding Plaintiff alleged fear of cancer, in his deposition taken in this matter, Shwery testified that Plaintiff has a fear of cancer, but he did not know when she first developed this fear or what caused her to develop this fear.[24] In fact, Shwery admitted that Castanel did not even bring up this fear of cancer until her second visit with him.[25]

Throughout this MDL, Plaintiff's toxicology expert witness, Patricia M. Williams, has attempted to provide testimony on general causation in an effort to show how formaldehyde *causes* cancer. However, Dr. Williams is unwilling and unable to provide an opinion as to what exposure levels are sufficient to trigger any cancerous process due to formaldehyde exposure.[26] Additionally, Dr. Lawrence Miller, Plaintiff's IME physician, relied on Dr. Williams' general opinion regarding the relationship between formaldehyde and cancer to

---

[23] See Medical Records from October 19, 2006 visit with Dr. Alan Bowers which were attached as Exhibit #3 to his deposition, excerpts attached as Ex. G.

[24] Shwery Depo. at 145:2-7; 146:9-12, excerpts attached as Ex. A.

[25] Shwery Depo. at 65:6-8, excerpts attached as Ex. A.

[26] Williams Depo. dates July 7, 2009, at 97:23-99:6, 127:18-132:15, excerpts attached as Ex. H.

conclude that Castanel's fear of cancer was rational,[27] even though he testified he did not know what the level of formaldehyde was in her unit.[28] Therefore, no expert, medical or otherwise, has indicated that the exposure level that Castanel allegedly experienced puts her at any possible risk for cancer.

Additionally, as noted above, in order to sustain a mental anguish claim, including a fear of cancer claim, a plaintiff must have sustained a "*present injury*". As detailed above, Plaintiff has failed to provide the sufficient general and specific evidence to sustain her claim of exacerbation of rhinosinustitis, therefore she has not sustained a *"present injury"* as a result of residing in her FEMA travel trailer, therefore her fear of cancer must fail. It follows that Shwery's testimony regarding Plaintiff's fear of cancer is thus irrelevant, and he should be excluded from testifying regarding same.

Lastly, once again Shwery's testimony is in conflict with the deposition of his fellow deponents in this matter. At her February 10, 2010 deposition, Castanel testified that she only started worrying about cancer about three or four months ago, which was about the time she was selected as a bellwether Plaintiff in November 2009.[29] Despite this worry, Castanel did not mention this fear to any of her treating physicians.[30] Further, Castanel's long time

---

[27] Affidavit of Lawrence Miller, M.D., pg. 6, attached as Ex. I.

[28] Miller depo. at 90:1-3, excerpts attached as Ex. D.

[29] Castanel Feb. 2, 2010 Depo. at 137:8-19, excerpts attached as Ex. J. See also R. Doc. 6423, wherein the Court appointed Castanel as a bellwether plaintiff.

[30] Castanel Feb. 2, 2010 Depo. at 138:10-18, excerpts attached as Ex. J.

companion, Edwin Ganier, testified at his deposition that Castanel has had a fear of cancer since her son died from cancer approximately ten to twelve years ago.[31]  Finally, none of Castanel treating physicians, who have been treating Plaintiff for several years, provided no testimony that she relayed to them that she feared contracting cancer as a result of residing in her FEMA travel trailer.

Plaintiff has failed to provide sufficient evidence that she suffers from a present injury related to her alleged formaldehyde exposure in the trailer.  By failing to carry her burden of proof with respect to these claims, plaintiff cannot sustain her fear of cancer claim.  Accordingly, Dr. Shwery's testimony regarding Plaintiff's fear of cancer is entirely irrelevant, will not assist the jury, and should be excluded.

## CONCLUSION

For the foregoing reasons, RBD respectfully requests that the Court exclude the testimony of Edward Shwery, Ph.D.

---

[31] Ganier depo. at 55:6-22, excerpts attached as Ex. K.

Respectfully submitted,

*/s/ Lyon H. Garrison*
LYON H. GARRISON, Bar No. 19591
SCOTT P. YOUNT, Bar No. 22679
RANDALL C. MULCAHY, Bar No. 26436
DARRIN L. FORTE, Bar No. 26885
KELLY M. MORTON, Bar No. 30645
GARRISON, YOUNT, FORTE
& MULCAHY, LLC
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 527-0680
Facsimile: (504) 527-0686
Attorneys for defendant,
Recreation By Design, LLC
Email: lgarrison@garrisonyount.com

## CERTIFICATE OF SERVICE

I hereby certify that on April16, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of this electronic filing to all known counsel of record.

*/s/ Lyon H. Garrison*
LYON H. GARRISON, Bar No. 19591