UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| | * | |
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCT LIABILITY | * | SECTION "N-5" |
| LITIGATION | * | |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAG. JUDGE CHASEZ |
| | * | |
| THIS DOCUMENT RELATES TO: | * | |
| *EARLINE CASTANEL, ET AL v .* | * | |
| *RECREATION BY* | * | |
| *DESIGN, LLC, SHAW* | * | |
| *ENVIRONMENTAL, INC.,* | * | |
| *and UNITED STATES OF AMERICA* | * | |
| *THROUGH THE FEDERAL* | * | |
| *EMERGENCY MANAGEMENT* | * | |
| *AGENCY,* NO. 09-3251 | * | |

**********************************************************************

**MEMORANDUM IN SUPPORT OF RECREATION BY DESIGN, LLC'S MOTION *IN LIMINE* TO EXCLUDE IN PART EXPERT TESTIMONY OF WILLIAM SCOTT, P.E.**

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT,** through undersigned counsel, comes defendant Recreation By

Design, LLC ("RBD"), who offers the following memorandum in support of its *Motion in Limine*

to Exclude in Part the Opinions and Testimony of William Scott, P.E. ("Scott")[1].  Defendant shows that Scott made numerous errors in his report and in his calculations when applying a formula known as the "Berge Equation" and thus, Scott lacks the skill and knowledge necessary to testify regarding this equation under Rule 702 .  Defendant further shows that Scott  supplemented his report after the deadlines established by this Honorable Court for offering expert reports and that the supplemented report differs greatly from the initial report.  Lastly, defendant shows that  the Berge Equation is not based on reliable scientific methodology and there is no general acceptance in the scientific community of the Berge Equation.  Accordingly, any testimony or evidence regarding the Berge Equation should be excluded.

## I.  FACTUAL BACKGROUND

The instant action stems from Plaintiff's alleged exposure to formaldehyde while residing in a Temporary Housing Unit ("THU") supplied by FEMA as emergency housing.  Plaintiff retained William Scott, a registered professional environmental engineer, to duplicate the air sampling conducted by defendant's expert, Workplace Hygiene, of the THU in which plaintiff resided.

In connection with his testing, Scott issued a report of his findings.[2]  In his report, Scott explains that formaldehyde containing building materials release formaldehyde.  This process of emission of formaldehyde from these materials is known as "off gassing."  Scott further explains that the rate at which formaldehyde emission levels decrease is not constant, but decreases over time.[3]

---

[1]As the Court and parties are familiar with the factual/procedural background of this matter, reference is made here to the background as set forth in Recreation by Design, LLC's Memorandum in Support of Motion for Summary Judgment Regarding Prescription (R. Doc. 9722).

[2]*See* Exhibit 1, report of William Scott.

[3]*Id.* at p. 10.

Additionally, he opines formaldehyde off gassing rates and resultant airborne concentrations are significantly dependent on temperature and relative humidity.[4]

In his report, Scott explains that he uses a formula known as the "Berge Equation" to "provide a reliable means of normalizing formaldehyde data from varying source conditions."[5]  Scott further explained at his deposition that obtaining formaldehyde levels in low temperatures will produce a reduction of the hard results.  Scott testified that the Berge Equation allows an individual to determine what the formaldehyde levels may be in a particular environment under normal living conditions, such as 75 degrees Fahrenheit.[6]

As will be discussed below, Scott's initial calculations using the Berge formula were incorrect, which prompted a supplemental report by Scott in which the values were significantly different.  This supplemental report was submitted after the court imposed deadline for exchanging expert reports.  Additionally, it is clear based on his calculation errors that Scott is not qualified to use this formula and/or calls into question his results.  Lastly, the Berge Equation has not been accepted in the scientific community for applicability in a situation such as the present one.  Accordingly, any and all testimony of Scott regarding the Berge Equation should be excluded. .

## II. ARGUMENT AND AUTHORITIES

### A.    ADMISSIBILITY REQUIREMENTS FOR EXPERT TESTIMONY

Federal Rule of Evidence 702 gives a district court considerable discretion to admit or

---

[4]*Id*. at p. 13.

[5]*Id*. at p. 13.

[6]*See* Exhibit 2, Deposition of William Scott, p. 76.

exclude expert testimony.[7]  Rule 702 provides that an expert witness "qualified ... by knowledge, skill, experience, training, or education" may testify when scientific, technical, or other specialized knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue."[8] For expert testimony to be admissible, Rule 702 requires that: (1) the testimony be based on sufficient facts or data; (2) the testimony be the product of reliable principles and methods; and (3) the witness apply the principles and methods reliably to the facts of the case.[9]  Plaintiff, as proponent of the expert evidence, bears the burden of demonstrating its admissibility.[10]  Defendants do not have the burden of demonstrating its inadmissibility.[11]

In *Daubert*, the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper ***at the outset*** to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[12]   The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[13]  The goal is to exclude expert testimony based merely on subjective belief or unsupported speculation.[14]  In addition, the party

---

[7] *See General Electric Co. v. Joiner*, 522 U.S. 136, 151 fn. 1, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

[8] Fed.R.Evid. 702.

[9]  Fed.R.Evid. 702.

[10] *See, e.g., Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir.1998); *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002); *see also Daubert*, 509 U.S. at 592 n.10.

[11] *See Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99, 102 (D. Conn. 2006); *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 534 (W.D. Pa. 2003).

[12] 509 US. 579, 598, 113 S.Ct.2786, 125 L.Ed.2d 469 (1993) (emphasis added); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony based on technical or specialized knowledge).

[13] *See Daubert*, 509 U.S. at 593.

[14] *Daubert*, 509 U.S. at 590.

offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[15]  To satisfy the relevancy requirement, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact to understand the evidence or determine a fact in issue.[16]  This "helpfulness" standard of Rule 702 "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."[17]

It should be noted that *Daubert* carefully distinguishes between the threshold reliability inquiry that plaintiff must satisfy and the role of cross-examination.  As the Supreme Court stated, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. These conventional devices ... are the appropriate safeguards where the basis of scientific testimony *meets the standards* of Rule 702."[18]  As the highlighted language shows, plaintiff must first satisfy the burden of demonstrating that the proffered evidence is admissible.[19]  An expert's opinion, therefore, must be based on reliable methodology and "fit" the facts of the case before the opinion may have the privilege of being assailed by cross-examination.[20]

Finally, even if Scott's expert testimony could survive this Court's threshold scrutiny under Rule 702 (which it cannot), his opinions would nevertheless be subject to further review and

---

[15] *See Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc).

[16] *Daubert* at 591.

[17] *Daubert* at 591-92 (internal quotations omitted).

[18] *Daubert* at 595 (emphasis added).

[19] *See, e.g., McLendon v. Georgia Kaolin, Co.*, Inc., 841 F. Supp. 415, 418 (M.D. Ga 1994) ("these devices are only sufficient safeguards where the scientific testimony meets the standards of Rule 702").

[20] *See Porter v. Whitehall Labs.*, 791 F. Supp. 1335, 1345, 1345 n. 10 (S.D. Ind. 1992) (emphasis in original), *aff'd*, 9 F.3d 607 (7th Cir. 1993).

preclusion under Rule 403.[21]   Rule 403 permits a district judge to exclude relevant evidence if its probative value is substantially outweighed by the danger of "unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[22]   As the *Daubert* court correctly noted, "[e]xpert evidence can be both powerful and quite misleading–because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 ... exercises more control over experts than over lay witnesses."[23]   To this end, an expert opinion's "lack of reliable support may render it more prejudicial than probative, making it inadmissible under [Rule] 403."[24]   Courts have routinely held that evidence of experiments and/or tests is inadmissible under Rule 403 when the tests were not conducted under "substantially similar" conditions to those existing at the time of the accident or occurrence.[25]   The burden is on the proponent of the evidence to demonstrate the similarity of the conditions as a foundation for admissibility.[26]   The goal of this requirement is to avoid confusing the jury, as jurors may be misled when they do not fully appreciate how variations in the surrounding conditions between the original occurrence and the staged event can alter the outcome.

---

[21] *See, e.g., Daubert*, 509 U.S. at 595; *Brock v. Caterpillar, Inc.*, 94 F.3d 220, 226 (6th Cir. 1996).

[22] Fed. R. Evid. 403.

[23] *Daubert*, 509 U.S. at 595; *accord Brock*, 94 F.3d at 226.

[24] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[25] *See, e.g., Williams v. Briggs Co.*, 62 F.3d 703, 707-08 (5th Cir.1995); *United States v. Gaskell*, 958 F.2d 1056, 1060 (11th Cir.1993) (citing *Barnes v. General Motors Corp.*, 547 F.2d 275, 277 (5th Cir. 1977).

[26] *See, e.g., Wallace v. General Motors Corp.*, 1997 WL 269498, at *1 (E.D.La.) (citing *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1402 (8th Cir. 1994)); *Gilbert v. Cosco Inc.*, 989 F.2d 399,402 (10th Cir.1993).

### B.     SCOTT LACKS THE NECESSARY EXPERTISE TO TESTIFY REGARDING THE BERGE EQUATION

Pursuant to this Court's Scheduling Order, plaintiff was required to submit their expert report in January 2010.  On or about January 29, 2010, defendant received the expert report of William Scott.[27]  On March 31, 2010, defendant deposed Dr. Scott. During that deposition, Scott was questioned regarding his use of the Berge Equation. Scott admitted that there was a "typo" in his initial report as to the actual formula which constitutes the Berge Equation.  Rather than trying to explain the typo in detail, counsel refers this court to Exhibit 5 attached to Scott's deposition[28] wherein he provides the corrected Berge equation.  The court will notice that the equation in Exhibit 5 replaces a multiplication sign by a division sign.  Additionally, a large portion of the formula is bracketed in Exhibit 5, that was not bracketed in Scott's original report.  These changes are obviously quite significant in terms of mathematical calculations.  However, Scott explains that these differences were merely typos and did not affect his calculations.[29]

Scott was further questioned as to this typo and how he arrived at the Berge Equation that was utilized in his report.  Scott testified that the Berge Equation used in his report is different from the formula used in the original Berge Paper.[30]  He was then asked as to how he arrived at this particular equation.

A.     Is the question how did we derive what's here from what's in this paper?

Q.     Yes.

---

[27]*See* Exhibit 1, report of William Scott.

[28]*See* Exhibit 2, Deposition of William Scott and exhibits 5 attached thereto.

[29]Exhibit 2 pps. 21-24.

[30]Exhibit 2, p. 101.

A.      Okay. I can't tell you that with clarity just sitting here flatfooted without looking at it because I used a different source in Berge's equation than this paper.

Q.      Okay. Well, let me refer you, then, to the Salthammer - - Was the Salthammer the source that you used?

A.      One of them.

Q.      Okay. Do you have the paper with you that you used as the source for what you put in your report?

A.      I've got to go back and look and see what I actually pulled it from.

Q.      Okay.

A.      Okay. I actually think I pulled it from something that ASHRAE had discussing Berge and related it back to the ASTM format.[31]

As noted above, Scott could not provide a definite source of where he obtained this equation, although he believes that he may have obtained it from an ASHRAE paper.[32]

Scott testified that he performed his calculations using the Berge Equation by use of a spreadsheet. He testified that he did not keep the spreadsheet, but he could generate another copy.[33] He was asked by counsel for defendant Shaw Environmental to reproduce a copy of this spreadsheet. On April 2, 2010, approximately a month and a half before trial and nearly two months after plaintiff's expert report deadline, counsel received a spreadsheet from plaintiff's counsel outlining Scott's calculations using the Berge Equation.[34] Plaintiff's counsel further advised that when Scott was creating the spreadsheet he noticed that he "reported" some of the numbers incorrectly in his initial report.[35] As explained below, the results from the spreadsheet differ significantly from the numbers contained in Scott's original report.

---

[31]Exhibit 2, pps. 101-102.

[32]Exhibit 2, p. 102.

[33]Exhibit 2, p. 84.

[34]Exhibit 3, Scott's spreadsheet of Berge calculations.

[35]Exhibit 4, email from Chris Pinedo.

Using the Berge Equation, Scott initially calculated the estimated formaldehyde concentrations in the THU assuming a temperature of 75 degree Fahrenheit and a relative humidity of 60 degrees in his initial expert report as follows:

### Scott Group Samples

| Sample # | Sample Result (ppbV) | Result at 75 degrees & 60% Relative Humidity (ppbV) |
|---|---|---|
| 2917200159 | 8.8 | 32 |
| 2917200303 | 48 | 95 |
| GZ2692 | 19 | 68 |

### Workplace Hygiene Samples

| Sample # | Sample Result (ppbV) | Result at 75 degrees & 60% Relative Humidity (ppbV) |
|---|---|---|
| 35184A | 9 | 32 |
| 35186A | 50 | 91 |
| GZ6994 | 20 | 57[36] |

In the spreadsheet produced on April 2, Scott's calculations were significantly different. For example, with respect to Sample #2917200159[37], Scott's initial calculation using the Berge Equation provided a result of 32 parts per billion. However, his new calculation in the spreadsheet using the Berge Equation resulted in .070 parts per million or 70 parts per billion.[38] This is more than double than was initially reported. Additionally, the results for the next three samples were all significantly

---

[36]*See* Exhibit 1 pps. 13 and 14.

[37]Identified as sample 159 in the spreadsheet.

[38]*See* column labeled Cnorm(ppm) on the spreadsheet. Additionally, the spreadsheet notes the result at parts per million rather than parts per billion as contained in Scott's initial report.

9

different that what was initially reported.  Sample 303 deceased from 95 parts per billion to 77 parts per billion (or .077 parts per million); Sample 2692 increased from 68 parts per billion to 84 parts per billion (or .084 parts per million); Sample 35184A increased from 32 parts per billion to 78 parts per billion (or .078 parts per million).[39]  The last two samples stayed the same.  Thus, out of the six calculations conducted by Scott using the Berge Equation, four were apparently initially calculated incorrectly.  However, as Scott admitted that the formula as expressed in his initial report was incorrect, that the calculations in his initial report was incorrect and he could not identify the exact source as to where he obtained  this version of the Berge Equation, it is extremely questionable as to whether these results are accurate.

This is not the first time that Scott has obtained incorrect calculations using the Berge Equation in this multi-district litigation.  Defendant Forest River also filed a Motion to Exclude the Testimony of William Scott.  As explained in their Memorandum[40], Scott apparently inputted incorrect temperature data into this equation, and thus his conclusions were admittedly "flawed."

The record reveals numerous reasons why Scott's testimony and report regarding the Berge Equation should be excluded.  First,  Scott committed numerous errors in  arriving at his calculations using the Berge Equation.  These errors include:

1.     Providing an incorrect formula in his initial report which included changing a multiplication sign to a division sign and inserting brackets to certain portions of the formula;

2.     Arriving at two significantly different results when comparing the results of  his

---

[39] *See* comparison of Exhibit 3 to pages 13 and 14 of exhibit 1.

[40] Document 11397-1.

initial report to the supplemental spreadsheet;

3.    Admittedly committing other errors when using the Berge Equation, in this same multi district litigation.

Additionally, Scott could not definitely identify the source from which he obtained this "version" of the Berge Equation. Based on the above, it is clear that Scott does not possess the skill or knowledge necessary to properly apply and/or discuss the Berge Equation as required by Rule 702. Accordingly, for these reasons Scott should be precluded from testifying or offering any evidence regarding the Berge Equation.

Lastly, the supplemental report/spreadsheet, which differed significantly from Scott's initial report, was issued well after the deadline to exchange expert reports. This is yet another reason to exclude the supplemental report. Additionally, as the first report pertaining to the Berge Equation was admittedly flawed, this report should be excluded as well.

### C.    SCOTT'S USE OF THE BERGE EQUATION IS NOT GENERALLY ACCEPTED IN THE SCIENTIFIC COMMUNITY

Defendant further shows that there is no general acceptance in the relevant scientific community for use of the Berge Equation to correct ambient air formaldehyde level measurements in a THU. This position was explained in detail by Gulf Stream Coach in a similar Motion in Limine to Exclude the Expert Testimony of William D. Scott. Defendant hereby adopts and incorporates Gulf Stream's Memo and Exhibits relative to this position as if copied herein.[41] To briefly summarize, the formulas used by Scott were meant to "correct" formaldehyde concentrations inside of a large chamber. It was not meant, nor can it be used, to correct actual temperature and humidity

---

[41]*See* Document 3264-1.

conditions inside of a THU.

Other courts have recognized that the Berge Equation is not applicable to the present situation. As noted in the Gulf Stream Memo referenced above, the Indiana Court of Appeals in *Wallace v. Meadow Acres Manufactured Housing, Inc.*[42] upheld the trial court's ruling excluding plaintiff's expert's testimony regarding use of the Berge Equation to "correct" formaldehyde level measurements in a manufactured home. In *Wallace* the court found that there is no general acceptance in the scientific community for use of the Berge equation to correct ambient air formaldehyde level measurements in a manufactured home. Second, the court found that the expert's theory could not be empirically tested because he relied on numerous variables which were not preconditioned. Third, the expert's theory and methodology lacked substantial peer review. And finally, the expert's theory and methodology have a substantial and unquantifiable rate of error. For these reasons, the Appellate Court upheld the trial court's exclusion of this testimony and evidence. Similarly here, this Court should exclude testimony regarding the Berge Equation.

### III.   CONCLUSION

For the foregoing reasons, RBD respectfully requests that the Court exclude in part the testimony of William Scott as it relates to his supplemental report and his testimony regarding the Berge Equation.

---

[42]730 N.E. 2d 809 (Ind. Ct. App. 2000).

Respectfully submitted,

_____*/s/ Lyon H. Garrison*_____

LYON H. GARRISON, Bar No. 19591
SCOTT P. YOUNT, Bar No. 22679
RANDALL C. MULCAHY, Bar No. 26436
DARRIN L. FORTE, Bar No. 26885
KELLY M. MORTON, Bar No. 30645
GARRISON, YOUNT, FORTE
& MULCAHY, LLC
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 527-0680
Facsimile: (504) 527-0686
Attorneys for defendant,
Recreation By Design, LLC
Email: lgarrison@garrisonyount.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of this electronic filing to all known counsel of record.

_____*/s/ Lyon H. Garrison*_____

LYON H. GARRISON, Bar No. 19591

13