UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCT LIABILITY | * | SECTION "N-5" |
| LITIGATION | * | |
| | * | JUDGE ENGELHARDT |
| | * | |
| THIS DOCUMENT RELATES TO | * | MAG. JUDGE CHASEZ |
| *EARLINE CASTANEL, ET AL* | * | |
| *v. RECREATION BY DESIGN, LLC* | * | |
| *ET AL, DOCKET NO. 09-3251* | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE
PLAINTIFF'S REFERENCES TO AN ALTERNATIVE DESIGN
AND RELATED DEMONSTRATIVE EXHIBIT**

**NOW INTO COURT,** through undersigned counsel, comes defendant, Recreation By Design, LLC ("RBD"), who offers the following memorandum in support of its Motion to Strike Plaintiff's References To Alternative Design And Demonstrative Exhibit.[1]

**BACKGROUND**

As part of plaintiff's efforts to address construction and design issues related to the Castanel travel trailer,[2] plaintiff retained five experts, all of whom participated in the

---

[1] As the Court and parties are familiar with the factual/procedural background of this matter, reference is made here to the background as set forth in Recreation By Design, LLC's Memorandum in Support of Motion for Summary Judgment Regarding Prescription (Rec. Doc. 9722).

[2] Throughout this memorandum, RBD refers to plaintiff's trailer as a "FEMA unit" and/or "Emergency Housing Unit" ("EHU") interchangeably.

1

investigation and testing of the subject unit from January 4th through 19th, 2010.[3] One of these proffered experts is Alexis "Al" Mallet, Jr. of First General Services of the South, Inc. ("First General Services"), a self-styled "construction specialist."[4] This Court is undoubtedly familiar with Mr. Mallet, as he was retained as an expert witness in the Gulf Stream, Fleetwood, and Forest River bellwether cases.[5] RBD contends that plaintiff's demonstrative for this matter, described as "Exemplar of a Panel of Wall from Recreation by Design, LLC Travel Trailer and a Panel indicating Alternative Wall Design,"[6] consists of two "mockups" that Mallet brought to his deposition.[7] These mockups were constructed by Mallet and Dalton Toups of First General Services[8], allegedly to service as evidence of a "typical wall section of a travel trailer[9]" and plaintiff's "alternative wall panel design" for travel trailers.[10] A similar, if not the same, demonstrative was used as evidence by plaintiff's counsel in the Forest River trial, and, RBD anticipates that plaintiff's counsel intends to do the same here.[11]

---

[3] See Inspection Report (First General Services of the South, Inc.), attached hereto as Exhibit "A." See Ex. A at p. 35.

[4] Selected pages of the deposition transcript of Alexis Mallet, Jr. are attached hereto as Exhibit "B." See Ex. B at p. 60.

[5] Ex. B at p. 61.

[6] See Plaintiff's Initial Exhibit List, dated March 12, 2010, attached hereto as Exhibit "C." See Ex. C at p. 2 (*sic*); see also Ex. B at pp. 214-254, 263-279.

[7] Ex. B, pp. 214-254, 263-279.

[8] See Ex. B at p. 214.

[9] Ex. B at p. 214.

[10] Ex. B at p. 220.

[11] See Trial Joint Exhibit List, pp. 25, 35 (Rec. Doc. 12397).

Evidence of an alternative design must be reasonably specific and not based on mere speculation.[12] Yet, plaintiff's proposed alternative method and related demonstrative exhibit fail on every element associated with that burden. In very general terms, plaintiff argues that the Castanel unit was not constructed for use in hot, humid climates.[13] In addition, plaintiff claims the vapor barrier inside the unit was not designed for humid climates and trapped moisture inside, leading to formaldehyde off-gassing.[14] Plaintiff asserts that the construction means, methods and materials utilized in the trailer, combined with poor quality of workmanship, contributed to the off-gassing of formaldehyde.[15] Finally, plaintiff claims that products which were ultra low or non-formaldehyde emitting were available for use when the Castanel unit was constructed in 2005.[16] Plaintiff's theories, however, are unsupported by expert testimony—as such, any evidence regarding plaintiff's alternative design construction method should be stricken by the Court.

Moreover, plaintiff's alternative design evidence is insufficient under the Louisiana Products Liability Act ("LPLA").[17] Plaintiff has no evidence to show that the alleged alternative design was feasible when the subject travel trailer was designed. Further, there is no evidence that the alternative design was tested or would have prevented plaintiff's alleged injuries. In short, the evidence relates to mere concepts and untested theories, which are not permitted under

---

[12] *See Lacoste*, 2009 WL at *4 (citing *Seither v. Winnebago Industries, Inc.*, 853 So.2d 37, 41 (La.App.2003)).

[13] *See, e.g.*, Ex. A at pp. 105-108.

[14] *See, e.g.*, Ex. A at pp. 105-108.

[15] *See, e.g.,* Ex. A at pp. 105-108.

[16] *See, e.g.*, Ex. A at pp. 105-108.

[17] La. R.S.9:2800.56.

Louisiana law to support a design defect allegation. Accordingly, plaintiff's alternative design method and related demonstrative are irrelevant under the LPLA.

## ARGUMENT AND AUTHORITIES

I. **ADMISSIBILITY REQUIREMENTS UNDER THE FEDERAL RULES OF EVIDENCE**

Under the Federal Rules of Evidence, only relevant evidence is admissible.[18] Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.[19] Here, plaintiff's proffered alternative design theory and demonstrative are irrelevant because they fail to meet the required elements as set out by the LPLA.

II. **PLAINTIFF'S ALTERNATIVE DESIGN EVIDENCE IN METHOD AND DEMONSTRATIVE FAIL TO SATISFY THE REQUIREMENTS OF THE LPLA AND SHOULD BE STRICKEN**

The LPLA provides the exclusive theories of liability against a manufacturer for damage caused by its products.[20] In order for a manufacturer to be liable under the LPLA, a plaintiff must establish that the damages were "proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity."[21] Under the LPLA, a product can be "unreasonably dangerous" in any of four ways: (1) construction or composition;

---

[18] Fed. R. Evid. 402.

[19] Fed. R. Evid. 401.

[20] La. R.S. 9:2800.51, *et seq*.

[21] La. R.S. 9:2800.54(a).

(2) design; (3) lack of adequate warning; or (4) nonconformity to an express warranty.[22] When making a claim that a product is unreasonably dangerous in design, the plaintiff bears the burden of proving "each and every element of the LPLA's design defect burden."[23]

Here, plaintiff claims, *inter alia*, that the subject travel trailer was unreasonably dangerous in both construction and design.[24] Presumably in an effort to abide with the provisions of the LPLA, plaintiff plans to support her theories via expert testimony and the use of a demonstrative exhibit as evidence of an alternative design for the travel trailer's wall section. For example, Mallet testified at his deposition that the "alternative construction method that has appeared in my reports would be a nonformaldehyde-emitting material and one that restricted air flow and moisture flow from either in or out, and one that could meet almost every climate condition in the United States except for mountainous areas."[25] Although Mallet styles his alternative design as a "construction method," it is evident from his testimony and written report that plaintiff contemplates both alternative construction and design of travel trailers.[26]

Despite plaintiff's apparent confidence in this theory, it is simply not enough to postulate about alternative designs—rather, plaintiffs must prove that the product is unreasonably dangerous in design by showing that when the product left the manufacturer's control: (1) there existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) the likelihood that the product's design would cause the claimant's damage and

---

[22] La. R.S. 9:2800.54(b).

[23] *Seither v. Winnebago Industries, Inc.*, 853 So.2d 37, 41 (La.App. 4 Cir. 2003) (citing La. R.S. 9:2800.54(d)).

[24] *See, e.g.*, Ex. A at pp. 105-108.

[25] Ex. B at p. 220.

[26] Ex. A at pp. 105-108; Ex. B at p. 230.

the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.[27] In other words, plaintiff must: (1) identify a specific alternative design that existed and was capable of preventing her injury; and (2) perform the requisite risk-utility analysis.[28] Because plaintiff cannot meet either of these elements, any evidence to alternative design and use of the demonstrative should be excluded.

In *Seither v. Winnebago Industries, Inc.*, the court found that the trial judge abused his discretion in failing to grant a directed verdict as to the alternative design issue.[29] In that case, there was no valid alternative design presented. The expert "presented merely a concept that was untested, unengineered, and not presented to the jury in any fashion more than mere speculation."[30] The court also noted that the plaintiffs failed to present a risk/utility analysis of the proposed alternative design, particularly since there was no examination of material prices or consideration of manufacturing labor expenses.[31] It should be noted that, while *Seither* does not directly address the admissibility of an alternative design demonstrative directly, it is illustrative of the factors that must be satisfied to be relevant and to provide helpful information for the trier of fact.

---

[27] La. R.S. 9:2800.56.

[28] *See Lacoste v. Pilgrim International*, 2009 WL 126847, *4 (E.D.La.) (citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir.2000); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 183 (5th Cir.1990).

[29] 853 So.2d 37, 41 (La. App. 4 Cir. 2003).

[30] *Siether,* 853 So.2d at p. 40-41.

[31] *Siether,* 853 So.2d at p. 40-41.

Just like *Seither*, plaintiff has not presented a valid alternative design in this case. Rather, plaintiff's proposed alternative designs are mere concepts **which have never been tested**, leaving RBD to defend against vague, amorphous design concepts that change in specifics and benefits as words emerge from the mouths of plaintiff's experts. At his deposition, Mallet admitted that he did not know what type of adhesive is used in his alternative design materials,[32] nor could he name the manufacturer of the hardboard on his demonstrative.[33] Mallet did not do any research on whether the hardboard material was utilized by travel trailer manufacturers for walls and ceilings in 2005.[34] He could not even state the baseline level used for a material to be classified as "non-formaldehyde-emitting."[35] Mallet readily admitted that the structural integrity of such materials for use in travel trailers was unknown,[36] that no "strength-weight" analysis[37] or flexibility tests[38] were conducted on the alternative materials, and that there were no test results regarding how the alternative unit would perform in repeat travel usage.[39] And, of critical importance, no formaldehyde testing or was done regarding the actual use of the alternative construction materials for plaintiff's proposed travel trailer design to determine what, if any,

---

[32] Ex. B at p. 219.

[33] Ex. B at pp. 222-24. It should be noted that the hardboard is referred to as "Masonite" throughout Mallet's deposition, but he admitted that this was only a "generic" term and that he was not certain of the manufacturer. *Id*.

[34] Ex. B at p. 225.

[35] Ex. B at p. 221.

[36] Ex. B at pp. 227-29.

[37] Ex. B at pp. 231-232.

[38] Ex. B at p. 232.

[39] Ex. B at p. 234.

impact the design would have on formaldehyde levels,[40] nor was that design tested for the effects of heat and humidity.[41]

Finally, plaintiff's risk/utility analysis of the alternative materials and design was insufficient. Mallet did not conduct any type of study as to the quantities of his proposed hardboard material available for use in the travel trailer industry in 2005.[42] In fact, the data that Mallet relied on to conduct plaintiff's inquiry on availability was from the year 2000 because he was unable to locate the necessary information for 2005.[43] Likewise, Mallet admitted the foam insulation he has in his alternative design weighs more than fiber-glass insulation and yet he has not done any testing to determine of such a material could be utilized in a travel trailer. Because plaintiff failed to perform the requisite risk/utility analysis, any reference to such method at trial will only confuse and mislead the jury; particularly with the use of demonstrative aide. Therefore, RBD urges that reference to an alternative design and demonstrative exhibit should be excluded from evidence.

## III.   CONCLUSION

For the foregoing reasons, Recreation By Design, LLC, respectfully requests that the Court grant this Motion to Strike Plaintiff's References to Alternative Design and Related Demonstrative Exhibit.

---

[40] Ex. B at p. 233.

[41] Ex. B at p 235.

[42] Ex. B at pp. 226-27.

[43] Ex. B at pp. 226-27.

Respectfully submitted,

*/s/ Randall C. Mulcahy*
LYON H. GARRISON, Bar No. 19591
SCOTT P. YOUNT, Bar No. 22679
RANDALL C. MULCAHY, Bar No. 26436
DARRIN L. FORTE, Bar No. 26885
KELLY M. MORTON, Bar No. 30645
**GARRISON, YOUNT, FORTE**
**& MULCAHY, LLC**
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 527-0680
Facsimile: (504) 527-0686
*Attorneys for Recreation By Design, LLC*
Email: rmulcahy@garrisonyount.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 16th, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of this electronic filing to all known counsel of record.

*/s/ Randall C. Mulcahy*
RANDALL C. MULCAHY, Bar No. 26436