UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCT LIABILITY | * | SECTION "N-5" |
| LITIGATION | * | |
| | * | JUDGE ENGELHARDT |
| | * | |
| THIS DOCUMENT RELATES TO | * | MAG. JUDGE CHASEZ |
| *EARLINE CASTANEL, ET AL* | * | |
| *v. RECREATION BY DESIGN, LLC* | * | |
| *ET AL*, DOCKET NO. 09-3251 | * | |

**************************************************************************

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE*
TO EXCLUDE OPINIONS AND TESTIMONY OF STEPHEN SMULSKI, PH.D.**

**NOW INTO COURT,** through undersigned counsel, comes defendant, Recreation By Design, LLC ("RBD"), who offers the following memorandum in support of its Motion *in Limine* to Exclude the Opinions and Testimony of Stephen Smulski, Ph.D.:[1]

### BACKGROUND

As part of plaintiff's efforts to address construction and design issues related to the Castanel travel trailer[2], plaintiff retained various experts to investigate and test the subject unit. One of these proffered experts is Stephen Smulski, Ph.D. ("Smulski"), who inspected the

---

[1] As the Court and parties are familiar with the factual/procedural background of this matter, reference is made here to the general background as set forth in Recreation By Design, LLC's Memorandum in Support of Motion for Summary Judgment Regarding Prescription (Rec. Doc. 9722).

[2] Throughout this memorandum, RBD refers to plaintiff's travel trailer as a "FEMA unit" and/or "Emergency Housing Unit" ("EHU") and/or "Temporary Housing Unit" ("THU") interchangeably.

1

Castanel trailer on January 13, 2010.[3] Plaintiff retained Smulski for the purpose of identifying and describing the various wood products used in the construction of the RBD travel trailer at issue in this litigation.[4] Smulski is a self-styled expert in "wood science and technology,"[5] a profession for which no license is required.[6] He has no expertise specific to the travel trailer industry, or disaster relief.[7] Similarly, Smulski is not a "warnings" or "human factors" expert,[8] and he does not have any medical background or training.[9]

This Court is undoubtedly familiar with Smulski's credentials and opinions, as he was retained as an expert witness in the Gulf Stream, Fleetwood, and Forest River bellwether cases.[10] In that regard, RBD also seeks to adopt, as if set forth herein, the arguments and defenses previously raised by the aforementioned defendants in their prior motions to exclude Smulski's testimony (Rec. Docs. 2349, 6660, & 11403 respectively). And, to the extent that Smulski's written report in this case offers the same or similar opinions as those in prior cases, RBD respectfully requests that the Court strike them for the reasons already articulated. RBD will provide a brief summary of those prior Orders, *infra*, for ease of reference. To the extent that Smulski offers opinions specific to this case, RBD will address those separately herein.

---

[3] *See* Affidavit of Stephen Smulski, Ph.D., dated January 29, 2010, attached hereto as Exhibit "A." *See* Ex. A at p. 13.
[4] *See, e.g.*, Ex. A.
[5] *Id*. at p. 1.
[6] Selected pages of the deposition transcript of Stephen Smulski, Ph.D., dated February 19, 2010, are attached hereto as Exhibit "B." *See* Ex. B at p. 36.
[7] Ex. B at p. 70.
[8] Ex. B at p. 67.
[9] Ex. B at p. 41.
[10] *See* Ex. B at pp. 34-35.

**ARGUMENT AND AUTHORITIES**

**I.     ADMISSIBILITY REQUIREMENTS FOR EXPERT TESTIMONY**

Federal Rule of Evidence 702 gives a district court considerable discretion to admit or exclude expert testimony.[11]  Rule 702 provides that an expert witness "qualified … by knowledge, skill, experience, training, or education" may testify when scientific, technical, or other specialized knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue."[12]  For expert testimony to be admissible, Rule 702 requires that: (1) the testimony be based on sufficient facts or data; (2) the testimony be the product of reliable principles and methods; and (3) the witness apply the principles and methods reliably to the facts of the case.[13]  Plaintiff, as proponent of the expert evidence, bears the burden of demonstrating its admissibility.[14]  Defendants do not have the burden of demonstrating its inadmissibility.[15]

In *Daubert*, the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper at the outset to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[16]  The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's report is valid.[17]  The goal is to exclude expert testimony based merely on subjective belief or unsupported speculation.[18]  In addition, the party offering the testimony bears the burden of establishing its reliability by a preponderance of the

---

[11] *See General Electric Co. v. Joiner*, 522 U.S. 136, 151 fn. 1, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).
[12] Fed.R.Evid. 702.  For a more detailed discussion of the applicable legal standards regarding the admissibility of expert testimony, please see RBD's Motion *in Limine* to Exclude the Opinions and Testimony of Ervin Ritter, P.E.
[13] *Id*.
[14] *See, e.g., Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc); *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002); *see also Daubert*, 509 U.S. at 592 n.10.
[15] *See Rieger v. Orlor, Inc.*, 427 F.Supp.2d 99, 102 (D. Conn. 2006); *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 534 (W.D. Pa. 2003).
[16] 509 US. 579, 598, 113 S.Ct.2786, 125 L.Ed.2d 469 (1993) (emphasis added); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony based on technical or specialized knowledge).
[17] *See Daubert*, 509 U.S. at 593.
[18] *Id*. at 590.

evidence.[19]  To satisfy the relevancy requirement, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact to understand the evidence or determine a fact in issue.[20]  This "helpfulness" standard of Rule 702 "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."[21]

Thus, trial courts must engage in a rigorous three-part analysis under Rule 702 to determine the admissibility of expert testimony, and consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue.[22]

Additionally, even if an expert's proffered testimony survives the threshold scrutiny under Rule 702, that expert's opinions are subject to further review and preclusion under Rule 403.[23]  Rule 403 permits a district judge to exclude relevant evidence if its probative value is substantially outweighed by the danger of "unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[24]  And, as the *Daubert* court correctly noted, "[e]xpert evidence can be both powerful and quite misleading—because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 … exercises more control over experts than lay

---

[19] *See Moore*, 151 F.3d at 276.
[20] *Daubert* at 591.
[21] *Daubert* at 591-92 (internal quotations omitted).
[22] *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998) (citing *Daubert*, 509 U.S. at 589).
[23] *See, e.g., Daubert*, 509 U.S. at 595; *Brock v. Caterpillar, Inc.*, 94 F.3d 220, 226 (6th Cir. 1996).
[24] Fed. R. Evid. 403.

witnesses."[25]  To this end, an expert opinion's "lack of reliable support may render it more prejudicial that probative, making it inadmissible under [Rule] 403."[26]

Here, Smulski's testimony should be excluded under Rules 702 and 403, and in accordance with this Court's prior rulings.

## II. SMULSKI'S TESTIMONY SHOULD BE EXCLUDED PER THIS COURT'S PRIOR ORDERS

As the Court will recall, Gulf Stream, Fleetwood, and Forest River all filed separate Motions in Limine to exclude certain portions of Smulski's testimony.[27]  The Court issued three Orders.[28]  RBD contends that the following opinions in Smulski's expert report in Castanel fall within the broad categories and/or specific statements previously examined and excluded by the Court.  Consequently, these opinions should be excluded in the instant case.

In his January 29, 2010 expert report, styled in the form of an affidavit, Smulski sets out his various factual bases and opinions in numbered paragraphs.[29]  As such, RBD will address the objectionable portions of Smulski's statements in turn:

**Paragraphs 17 & 35**

Smulski contends that, when the Castanel unit was installed, it was "converted to temporary housing that falls somewhere along continuum between 'short term camping and recreational use' and a 'permanent dwelling.'"[30]  He goes on to state that the use of the trailer by Castanel as temporary housing for months or years was "a reasonably anticipated use given that

---

[25] *Daubert*, 509 U.S. at 595; *accord Brock*, 94 F.3d at 226.
[26] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).
[27] *See* Rec. Docs. 2349, 6660, & 11403.
[28] *See* Rec. Docs. 12642, 2800, & 7683.
[29] *See* Ex. A.
[30] Ex. A at p. 5.

5

this trailer was sold to FEMA for the purpose of temporarily housing persons displaced by natural disasters like Hurricane Katrina."[31]

In its prior Orders, the Court was clear that these sorts of opinions by Smulski were inappropriate, since he used "subjective quantitative terms which the jury must consider" and because his statements contained "undefined terms of possible pejorative nature."[32] Additionally, as a wood products expert, Smulski was not qualified to offer testimony on the nature of housing provided to plaintiffs, since the bases for such opinions are outside the scope of his expertise.[33] RBD requests that the Court similarly limit Smulski's discussion related to the anticipated uses of travel trailers following Hurricane Katrina.

### Paragraphs 22, 23, & 27

RBD also requests that paragraphs 22, 23, and 27, wherein Smulski recites the results of various testing reports on the levels of formaldehyde, receive the same ruling as in the Fleetwood, Gulf Stream, and Forest River cases. Namely, that "it must be made clear to the jury that those tests were not performed by him and he is not offering them as his own opinion, but rather as a basis for his ultimate opinion."[34] Additionally, RBD requests that the Court strike Smulski's statement in Paragraph 23, wherein he asserts that "The CDC did not identify the makers of these travel trailers, referring to them as 'Other.' **It is likely that some of the 'Other' travel trailers were manufactured by Recreation By Design.**"[35] This statement is based on nothing more than blatant speculation and Smulski should not be permitted to make such assertions without any factual support.

---

[31] Ex. A at p. 5.
[32] *See* Order dated August 24, 2009, p. 2 (Rec. Doc. 2800); *see also* Order dated March 9, 2010, p. 1 (Rec. Doc. 12642).
[33] *Id.*
[34] *See* Rec. Doc. 12642 at p. 1; *see also* Rec. Doc. 2800 at p. 3, and Rec. Doc. 7683 at p. 1.
[35] Ex. A at pp. 6-7 (emphasis added).

**Paragraphs 33 & 34**

In paragraph 34 of his report, Smulski opines that RBD could have increased the Castanel unit's air exchange by installing a mechanical ventilation system to remove contaminated indoor air and bring in fresh outdoor air.  This opinion is virtually identical to opinions issued by Smulski in both the Fleetwood and Forest River bellwether cases.  In the Fleetwood bellwether case, the Court ruled that "Dr. Smulski, as a wood science expert, may not testify regarding 'how' the trailer could/should have been ventilated, as he does not appear to be qualified as an expert in the fields of HVAC or travel trailer design."[36]  And, in the Forest River bellwether case, the Court reiterated that Smulski "is not an expert in HVAC" or in "travel trailer design."[37] These rulings should similarly apply to Smulski's statements in paragraph 34.

Moreover, RBD asserts that the Court's prior rulings should also apply to paragraph 33 of Smulski's report, wherein he cites to a ventilation warning on page 10 of RBD's Owner Information document for the subject trailer.[38]  Smulski concludes that "[a]lthough the text in the Owner Information document explicitly addresses ventilation when using *cooking appliance(s)*, the underlying principles apply to all gases in the air inside the trailer including formaldehyde gas."  Once again, Smulski is *not* an expert in ventilation issues or HVAC, and this opinion should therefore be excluded.

**Paragraph 28**

In paragraph 28, Smulski includes a discussion of standards adopted by the California Air Resources Board (CARB) related to LFE wood products, which did not become effective until January 1, 2009.[39]  He also discusses "new" FEMA specifications for travel trailers to be used as

---

[36] Rec. Doc. 7683 at p. 2.
[37] Rec. Doc. 12642 at pp. 2-3.
[38] Ex. A at pp. 10-11 (emphasis in original).
[39] Ex. A at p. 9.

7

temporary housing following natural disasters, which were not released until November of 2008.[40] Smulski includes these recently adopted standards in his report despite the fact that the subject RBD trailer was manufactured sometime in 2005, and plaintiff vacated the unit by August of 2007.[41]

In the Forest River bellwether case, the Court excluded Smulski's discussion of the aforementioned CARB standards on the basis of relevancy.[42] For the same reason, the Court previously excluded evidence related to subsequently-passed ambient air standards in the Gulf Stream bellwether case.[43] RBD contends that the Court should also exclude Smulski's discussion of FEMA specifications that were not released until well after the RBD travel trailer was manufactured and/or plaintiff vacated the unit. These specifications are completely irrelevant to plaintiff's claims in this case, and would only be prejudicial to RBD and confuse and/or mislead the jury.

### Paragraphs 30, 32, & 34

In paragraphs 30, 32, 33, and 34, Smulski offers numerous opinions on alternative designs that should have been adopted by RBD. In paragraph 30, he notes that RBD "had available to it alternative materials that, if used, would have emitted little or no formaldehyde gas."[44] In paragraph 32, Smulski opines that RBD "could have directed the companies who applied the overlays to the hardwood plywood that it did buy to apply an overlay to both the panels' face and back rather than to only its face."[45] He goes on to assert that "[w]hatever formaldehyde is slowly released from the two-sided overlaid panels could then have been

---

[40] Ex. A at p. 9.
[41] Ex. A at pp. 3-4.
[42] Rec. Doc. 12642 at p. 2.
[43] *See* Order dated September 8, 2009 (Rec. Doc. 3069).
[44] Ex. A at p. 10.
[45] Ex. A at p. 10.

removed from inside the trailer by a mechanical ventilation system."[46] Smulski elaborates on this last statement in paragraph 34, and asserts that RBD could have used a mechanical ventilation system, specifically a sensor-controlled roof vent and fan unit called the "Northern Breeze," in the event that alternative wood products were not available.[47]

The Court limited the scope of Smulski's alternative design testimony in the Forest River bellwether case, noting that "...wherein Dr. Smulski offers opinions on alternative designs that should have been adopted by Forest River, the motion is denied to the extent that Dr. Smulski can testify as to the types of wood productions available for use in the construction of the EHU, but granted to the extent that Dr. Smulski is not an expert in HVAC, in travel trailer design, or on installation/blocking of travel trailers."[48] Similarly, in the Gulf Stream bellwether case, the Court ruled that "… it should be made clear that Dr. Smulski is not an expert in design of EHU's in particular, and thus, cannot offer a general opinion regarding the 'design practices' of EHUs beyond the use of wood, wood-based and wood-composite materials in such design."[49] RBD contends that the same limitations should apply to Smulski's alternative design testimony in this case.

To the extent that this Court's previous rulings do not apply to Smulski's alternative design opinions, RBD asserts that his testimony should be excluded because Smulski has not performed the requisite analysis, research, or testing to offer these opinions at trial. The Louisiana Products Liability Act ("LPLA") requires more than just speculation about possible alternative designs.[50] Rather, the proponent of an alternative design theory must: (1) identify a

---

[46] Ex. A at p. 10.
[47] Ex. A at p. 11.
[48] Rec. Doc. 12642 at pp. 2-3.
[49] Rec. Doc. 2800 at pp 3-4.
[50] La. R.S.9:2800.51, *et seq*.

specific alternative design that existed and was capable of preventing her injury; and (2) perform the requisite risk-utility analysis.[51]

In *Seither v. Winnebago Industries, Inc.*, the court found that the trial judge abused his discretion in failing to grant a directed verdict as to the alternative design issue.[52] In that case, there was no valid alternative design presented. The expert "presented merely a concept that was untested, unengineered, and not presented to the jury in any fashion more than mere speculation."[53] The court also noted that the plaintiffs failed to present a risk-utility analysis of the proposed alternative design, particularly since there was no examination of material prices or consideration of manufacturing labor expenses.[54] It should be noted that, while *Seither* does not directly address the admissibility of alternative design testimony directly, it is illustrative of the factors that must be satisfied for such testimony to provide relevant and helpful information to the trier of fact.

Here, Smulski has not performed any risk-utility tests for the alternative designs he offers, nor has he tested these alternative designs. Smulski testified that he did not know the available quantities of his proposed alternative products in 2005, and he did not contact any manufacturers of those products to determine their availability at the time the Castanel unit was manufactured.[55] Smulski also admitted that he did not know if any of his proposed alternative materials were utilized in travel trailer construction in 2005.[56] When asked about whether he conducted any price analysis of the materials for 2005, Smulski replied "No. I never deal with

---

[51] *See Lacoste v. Pilgrim International*, 2009 WL 126847, *4 (E.D.La.) (citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir.2000); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 183 (5th Cir.1990).
[52] 853 So.2d 37, 41 (La. App. 4 Cir. 2003).
[53] *Siether,* 853 So.2d at p. 40-41.
[54] *Siether,* 853 So.2d at p. 40-41.
[55] Ex. B at pp. 98-99.
[56] Ex. B at p. 100.

price in my profession. That is somebody else's area, not mine."[57] Simply put, Smulski has not conducted any risk-utility analysis for his alternative design whatsoever and his opinions should be excluded.

### III. SMULSKI'S ADDITIONAL FINDINGS UNIQUE TO THE CASTANEL UNIT SHOULD BE EXCLUDED UNDER RULES 702 AND 403

Should the Court permit Smulski to testify, RBD requests that the Court limit and/or exclude certain portions of his testimony in the manner described below.

**Paragraph 15 (Stickers)**

In paragraph 15, Smulski opines that "[d]uring my January 13, 2010, inspection, I found no stickers inside the trailer informing the user(s) that the trailer was constructed using the wood composite products particleboard, medium density fiberboard, and hardwood plywood; that these wood composite products are made with urea-formaldehyde adhesive; that these wood composite products are known to release formaldehyde gas after being placed in service; and that formaldehyde gas can cause adverse health effects."[58] Smulski concludes that, the absence of these stickers in the Castanel unit, in conjunction with his personal interpretation of the RBD Owner Information document, denied the "user(s) of this trailer … the opportunity to make an informed decision regarding what action, if any, they may want to take regarding the formaldehyde gas that is released into the air inside the trailer."[59]

RBD asserts that this opinion is irrelevant, in that Smulski testified at his deposition that he was not aware of any regulations that would require such stickers to be placed inside the Castanel unit at the time it was manufactured:

---

[57] Ex. B at p. 104.
[58] Ex. A at p. 4.
[59] Ex. A at p. 4.

11

> Q: So under Item 15, during the inspection of the unit, you did not see any sticker or warning, for lack of a better term, regarding formaldehyde products used in the Castanel unit, correct?
> A: That's correct, I was not able to find one inside the unit.
> Q: And you also read the owner's manual?
> A: Yes.
> Q: Are you aware of any regulation requiring formaldehyde notices in travel trailers that were manufactured in 2005?
> A: I am not.[60]

Even if Smulski's opinion *were* relevant to the facts at issue in this case, the Court previously ruled in the Forest River bellwether that Smulski "may not testify as to the adequacy of any such warning, as such issue is ultimately resolved by the jury."[61] Although factually distinguishable from the present case (in that Smulski specifically opined as to the warning contained in the owner's manual of the Forest River EHU), RBD contends that the rationale behind the Court's ruling should apply here as well. Smulski's testimony in paragraph 15 should be strictly limited to the observations he made from his visual inspection of the trailer and/or the RBD Owner Information document—anything beyond that is well outside the scope of Smulski's expertise and invades the province of the jury.

### **Paragraph 19 (Air Exchange Rate)**

In paragraph 19, Smulski notes that the Castanel unit's "air exchange rate (i.e., ventilation) is low—0.28 air changes per hour. These are the exact conditions that increase the concentration of formaldehyde gas inside the trailer."[62] Smulski testified that he obtained this air exchange rate from plaintiff's expert Paul LaGrange, and that he did not perform his own calculations.[63] Since LaGrange is plaintiff's expert who tested and calculated air exchange rates in the Castanel unit, any opinion by Smulski regarding such rates is duplicative and outside the

---

[60] Ex. B at pp. 68-69.
[61] Rec. Doc. 12642 at p. 2.
[62] Ex. B at p. 5.
[63] *See* Ex. B at pp. 21, 23-26, 43-44, 76.

scope of his expertise.[64] As such, Smulski's paragraph 19 should also be stricken. In the alternative, RBD requests that the Court issue a limiting instruction to the jury consistent with previous instructions regarding Smulski's reliance on the test results of other experts.[65]

### Paragraph 24 (Scott Air Sampling)

In paragraph 24, Smulski recites the results of air sampling conducted by the W.D. Scott Group, Inc. ("Scott")[66] on January 10, 2010.[67] Specifically, Scott reported the formaldehyde level inside the trailer at 48 ppb, and the temperature and relative humidity at 63-65 °F and 70-77%, respectively.[68] Smulski did not personally test the unit for the presence of formaldehyde, nor did he do any equations regarding the levels of formaldehyde.[69] RBD contends that Scott's methodology by in making these calculations is grossly insufficient under Rule 702 and *Daubert*.[70] As such, Smulski's paragraph 24 should also be stricken. In the alternative, RBD requests that the Court issue a limiting instruction to the jury consistent with previous instructions regarding Smulski's reliance on the test results of other experts.[71]

### IV.  CONCLUSION

For the foregoing reasons, Recreation By Design, LLC, respectfully requests that the Court grant this motion *in limine* and exclude the opinions and testimony of Stephen Smulski,

---

[64] For a detailed analysis of the insufficiency of LaGrange's testimony under *Daubert*, please see RBD's Memorandum in Support of Defendant's Motion *in Limine* to Exclude the Opinions and Testimony of Paul LaGrange.
[65] *See, e.g.*, Rec. Doc. 2800 at pp. 2-3 ("However, no party will be allowed to suggest to the jury that Dr. Smulski conducted the testing himself, or that it was done at his direction. Indeed, Dr. Smulski is merely referring to testing done by someone other than himself.").
[66] It should be noted that William Scott, P.E. is the sole principal of the W.D. Scott Group, Inc.
[67] Ex. A at p. 7.
[68] Ex. A at p. 7.
[69] *See* Ex. B at pp. 22, 24-25, 86-87, 90-93.
[70] For a detailed analysis of the numerous errors in Scott's expert report and testimony, please see RBD's Memorandum in Support of Defendant's Motion *in Limine* to Exclude in Part Expert Testimony of William Scott, P.E.
[71] *See, e.g.*, Rec. Doc. 2800 at pp. 2-3 ("However, no party will be allowed to suggest to the jury that Dr. Smulski conducted the testing himself, or that it was done at his direction. Indeed, Dr. Smulski is merely referring to testing done by someone other than himself.").

Ph.D., pursuant to Rules 702 and 403, as well as the Court's Order of March 9, 2010 (Rec. Doc. 12642), the Court's Order of November 20, 2009 (Rec. Doc. 7683), the Court's Order of September 8, 2009 (Rec. Doc. 3069), and the Court's Order of August 24, 2009 (Rec. Doc. 2800).

          Respectfully submitted,

          */s/ Randall C. Mulcahy*
          LYON H. GARRISON, Bar No. 19591
          SCOTT P. YOUNT, Bar No. 22679
          RANDALL C. MULCAHY, Bar No. 26436
          DARRIN L. FORTE, Bar No. 26885
          KELLY M. MORTON, Bar No. 30645
          **GARRISON, YOUNT, FORTE**
          **& MULCAHY, LLC**
          909 Poydras Street, Suite 1800
          New Orleans, Louisiana 70112
          Telephone: (504) 527-0680
          Facsimile: (504) 527-0686
          *Attorneys for Recreation By Design, LLC*
          Email: rmulcahy@garrisonyount.com

## CERTIFICATE OF SERVICE

      I hereby certify that on April 16th, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of this electronic filing to all known counsel of record.

                                                     */s/ Randall C. Mulcahy*
                                         RANDALL C. MULCAHY, Bar No. 26436