UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCT LIABILITY | * | SECTION "N-5" |
| LITIGATION | * | |
| | * | JUDGE ENGELHARDT |
| | * | |
| THIS DOCUMENT RELATES TO | * | MAG. JUDGE CHASEZ |
| *EARLINE CASTANEL, ET AL* | * | |
| *v.  RECREATION BY DESIGN, LLC* | * | |
| *ET AL*, DOCKET NO. 09-3251 | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND/OR
TESTIMONY REGARDING SURGERY-RELATED CLAIMS**

**MAY IT PLEASE THE COURT:**

Defendant, Recreation By Design, LLC ("RBD"), respectfully moves this Honorable Court to issue an order excluding any reference to and evidence and/or testimony regarding plaintiff's recent nasal surgery and any claims arising therefrom.  RBD recently filed a Motion for Partial Summary Judgment regarding plaintiff's surgery-related claims.  For the reasons set forth therein, plaintiff's surgery-related claims should be dismissed with prejudice.  In the event that this Court deems that dismissal of plaintiff's surgery-related claims is not warranted, RBD respectfully submits that the exclusion of any evidence and/or testimony regarding plaintiff's nasal surgery is proper.

## I.  BACKGROUND

As this Court and the parties are well aware of the relevant facts and background, RBD will not rehash those items in the present motion. Accordingly, plaintiff incorporates and adopts herein, as if copied *in extenso*, its Motion for Partial Summary Judgment regarding Surgery-Related Claims and associated Memorandum in Support and Motion *in Limine* to Exclude Testimony of Dr. Lawrence Miller and associated Memorandum in Support.

During the deposition of plaintiff's friend, Edwin Ganier, taken on April 1, 2010, counsel for RBD first learned that plaintiff had undergone nasal surgery the day prior to Mr. Ganier's deposition on March 31, 2010. Neither plaintiff and/or her counsel have at any point informed undersigned counsel that Castanel intended to undergo nasal surgery. Counsel for defendant was not advised of the scheduled surgery nor advised after the surgery by plaintiff's counsel of plaintiff's condition. Trial of this matter is set to commence on May 17, 2010, and plaintiff's deadline for production of expert reports was January 29, 2010.[1]

To this point in the litigation, plaintiff has not produced any expert medical testimony to show that her nasal surgery was caused by any alleged exposure to formaldehyde in her FEMA travel trailer. In light of the upcoming trial date and the already passed expert reporting deadline, any attempt by plaintiff to introduce expert medical testimony from Dr. Lawrence G. Miller, Dr. Joseph Gautreaux and/or any other purported expert regarding plaintiff's nasal surgery and its alleged causal relationship to her travel trailer would be improper and highly prejudicial to RBD's defense of this matter. As a result, plaintiff should not be allowed to introduce any expert medical testimony regarding plaintiff's nasal surgery. Consequently, RBD submits that this Court should issue an

---

[1] *See* Rec. Doc. No. 9471, Trial Scheduling Order.

Order excluding the introduction of any evidence and/or testimony regarding plaintiff's nasal surgery and any claims arising therefrom. Moreover, in light of the fact that plaintiff has failed to produce any evidence whatsoever to show that her nasal surgery is in any way to her alleged exposure to gaseous formaldehyde in her FEMA travel trailer, any reference(s) to plaintiff's nasal surgery at trial should be excluded as well.

## II. LAW & ARGUMENT

It is the plaintiff's burden to prove causation under the Louisiana Products Liability Act.[2] The plaintiff must prove causation through medical testimony that it is more probable than not that the subsequent injuries were caused by the product.[3] In a toxic tort case, the plaintiff must prove both general causation and specific causation -- and must do so with competent expert testimony.[4]

In the present case, plaintiff has brought forth no evidence and/or testimony to suggest that her nasal surgery was caused by her alleged exposure to formaldehyde in her FEMA travel trailer. Dr. Alan Bowers and Dr. Joseph Gautreaux, two of plaintiff's long-term treating physicians, were deposed in conjunction with this matter, and neither testified to a causal link between Castanel's medical conditions, including her nasal surgery, and her alleged formaldehyde exposure. Plaintiff has been a patient of Dr. Bowers, a board certified internist, for the past ten years. Dr. Bowers offered no testimony with respect to plaintiff's nasal surgery. In fact, Dr. Bowers testified that Castanel's medical condition was the same after Hurricane Katrina -- while she was residing in the

---

[2] *Maranto v. Goodyear Tire & Rubber Co.,* 650 So.2d 757, 759 (La. 1995).

[3] *Kemp v. Metabolife Int'l, Inc.,* No. 00-3513, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004); *see also Hutchinson v. Shah,* 648 So.2d 451, 452 (La. App. 1st Cir. 1994) ("[w]hen the conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required").

[4] *Knight v. Kirby Inland Marine Inc.,* 483 F.3d 347, 351 (5th Cir. 2007).

FEMA travel trailer -- as it was before the storm.  Dr. Bowers also testified that he did not notice any increase of Castanel's various medical conditions, including her sinus complaints, while she was residing in the travel trailer.[5]  Additionally, Dr. Bowers testified that it was his opinion that Castanel did not suffer any type of injury as a result of residing in the travel trailer.[6]

Dr. Gautreaux, a board certified Ear, Nose, and Throat specialist, has treated plaintiff since 2002 for various sinus complaints.  Dr. Gautreaux is the only treating physician and/or expert who testified with respect to the possibility of surgery for plaintiff as a result of her sinus symptoms.[7]  Importantly, however, at his deposition, Dr. Gautreaux testified that he did not detect a change in Castanel's medical condition during the time she resided in the travel trailer.[8]  Dr. Gautreaux also testified that throughout the course of his treatment of Castanel from 2002 to present, she suffered from sinusitis and that he did not see any changes in her diagnosis after Hurricane Katrina.[9]  Further, Dr. Gautreaux stated that he has no knowledge of whether formaldehyde can worsen a rhinitis condition,[10] and that Castanel did not once tell him that she thought her symptoms were related to residing in a FEMA travel trailer.[11]

---

[5] *See* Exhibit A, Deposition of Dr. Alan Bowers, at pp. 59-61, 63.  *See* also the deposition testimony of Edwin Ganier, wherein he testified that Castanel's sinus problems did not increase while she resided in the FEMA travel trailer, but, rather, that her sinus problems became progressively worse after she moved out of the travel trailer. Edwin Ganier depo. at 42:20-25, 43:1-25, attached as Ex. B.

[6] *See id.*, at pp. 61-63.

[7] *See* Exhibit C, Deposition of Dr. Joseph Gautreaux, at pp. 75, 86.

[8] *See id.*, at pp. 54, 79- 80.

[9] *See id.*, at p. 54.

[10] *See id.*, at p. 67.

[11] *See id.*, at p. 81.

Dr. Gautreaux also testified that Plaintiff's incidences of sinusitis in 2009 were likely due to exposure to bacteria and were not in any way related to any alleged exposure's dating back to 2007. Dr. Gautreaux testified as follows:

> Q. Could her more frequent visits be related to her sinusitis maybe being more active due to exposure to bacteria?
>
> ****
>
> A. I mean, yes.
>
> Q. And if Ms. Castanel is treating with you in 2009 for sinusitis, would the bacteria which has caused her sinusitis be bacteria she was exposed to in that year, 2009?
>
> ****
>
> A. There's really no way of telling that.
>
> Q. All right. If Ms. Castanel moved out of her FEMA trailer in July of 2007, her treatment for sinusitis to you would not be related to bacteria to which she was exposed in that FEMA trailer in 2007?
>
> ****
>
> A. You've got to repeat that one.
>
> Q. I will be happy to. Ms. Castanel's treatment for you in 2009 for sinusitis related to exposure to bacteria, that wouldn't be related to any exposure to bacteria from a FEMA trailer in which Ms. Castanel lived in 2007?
>
> ****
>
> A. No.
>
> Q. That's a correct statement?
>
> A. That's a correct statement.[12]

It follows that if plaintiff's 2009 incidences of bacteria related sinusitis were unrelated to the time

---

[12] *See id.,* at pgs. 88-90.

she resided in the FEMA travel trailer, then her resulting surgery for treatment of this condition is also unrelated to any alleged exposure she experienced while residing in her travel trailer.

With respect to plaintiff's claims regarding the alleged exacerbation of her rhinosinusitis, plaintiff relies solely on the testimony of her purported expert, Dr. Lawrence Miller. Dr. Miller has opined that, "within a reasonable degree of medical probability, the exposure to formaldehyde emissions during her residence in the FEMA trailer significantly exacerbated Ms. Castanel's rhinosinusitis."[13] Dr. Miller relied on the medical history given to him by Castanel in reaching this conclusion.

However, when presented with medical testimony at his deposition that Castanel's rhinosinusitis symptoms did not increase while she resided in the FEMA travel trailer or after moving out of the trailer, Dr. Miller conceded that he would have to revisit his conclusion regarding her rhinosinusitis. Dr. Miller testified as follows:

> Q. "I have a question. The question is, would you disagree with this testimony - - this is Dr. Bowers - - referring to Page 58, 13: "Question: With respect to Ms. Castanel's overall health, how would you describe her health? Answer: I think her health is good.
>
> "Question: The office notes we just went through from October of 2003 until last week, Ms. Castanel was treated on a consistent basis; would that be fair to say? Answer: Yes, sir.
>
> "Question: Did you see any changes in Ms. Castanel's condition, significant changes, during that time period from 2003 to last week?" And just so you'll know, "last week" was in January of 2010. "Answer: No, I can't say that it did.
>
> "Question: Would you say that her health and her symptoms re-mained relatively consistent during the time period, that six-and-

---

[13] *See* Exhibit D, Affidavit of Dr. Lawrence Miller, dated Jan. 28, 2010, at p. 6.

> a-half, almost seven-year time period? Answer: Yes.
>
> "Question: Actually a little more than six years. Based on a review of your medical notes and your records, it appears as though Ms. Castanel treated consistently for sinus problems before Hurricane Katrina; is that correct? Answer: Yes, sir.
>
> "Question: Would it be fair to say - - did you not sense or note any increase in Ms. Castanel's sinus problems after Hurricane Katrina?" And Dr. Bowers testified, "No."
>
> Would you have any reason to disagree with that testimony?

A. The testimony is what it is. It's not my job to agree or disagree. In terms of Ms. Castanel's sinus problems, obviously she gave me different information.

Q. If the information given to Dr. Bowers is accurate, and that is that Ms. Castanel did not have any increase in sinus problems after Hurricane Katrina or after living in a FEMA unit, would you still stand by your opinions regarding the fact that you believe Ms. Castanel had an exacerbation of her sinusitis?

A. I can't answer your question. That's not the information I received, so I can't give you an answer.

Q. I want you to assume - - you're an expert. I want you to make an assumption.

****

A. It doesn't make sense. It's counterfactual to information I have. So I don't think I can answer you.

Q. That's fine. Let's put the facts that you got from Ms. Castanel on the side, just for purposes of this question.

A. Are we talking about a hypothetical patient, some other patient?

Q. We're talking about a hypothetical question.

A. I'm not sure I understand that at this point.

7

> Q. Let's just go through it. You're an expert, or they're going to attempt to qualify you as an expert. Putting the history given by Ms. Castanel on the side, if Ms. Castanel did not have any increase in her sinus symptoms after Hurricane Katrina or while living in the FEMA unit or after the FEMA unit, would you still opine that Ms. Castanel had an exacerbation of her sinusitis as a result of formaldehyde?
>
> \*\*\*\*
>
> A. I would revisit that conclusion. I'm not sure I can give you that exact answer as we sit here.
>
> Q. So you can't answer that hypothetical?
>
> A. I can't.[14]

Additionally, Dr. Miller failed to define what is considered to be a harmful level of formaldehyde, and he did not provide evidence that plaintiff was exposed to this requisite level of formaldehyde. When questioned at his deposition regarding the level of formaldehyde in Castanel's FEMA travel trailer, Miller responded as follows:

> Q. As you sit here today, you don't know what the level of formaldehyde was in Ms. Castanel's trailer?
>
> \*\*\*\*
>
> A. Again, what I specifically, no. I've discussed the level in FEMA trailers in general in this report.
>
> Q. And you offered opinions in your report regarding Ms. Castanel's condition and its relationship to formaldehyde in her trailer without knowing the level of formaldehyde in her trailer, correct?
>
> A. Correct.[15]

---

[14] *See* Exhibit E, Deposition of Dr. Lawrence Miller, at pp. 102-105.

[15] *See id.*, at p. 90.

It is clear from the above referenced excerpts from Dr. Miller's report and deposition testimony, that he does not "present evidence of the harmful level of exposure to the chemical, and knowledge that plaintiff was exposed to that level" as required by law.[16] Plaintiff has, therefore, not provided specific causation testimony linking her alleged exacerbation of rhinosinusitis claim to formaldehyde exposure. Most importantly, Dr. Miller offers no testimony whatsoever as to whether plaintiff's nasal surgery is caused by and/or related to any alleged exposure to formaldehyde in her travel trailer.

Federal Rule of Evidence 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Nevertheless, Federal Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...."

Based upon the medical testimony, or lack thereof, noted above, it is apparent that plaintiff has brought forth absolutely no expert medical evidence to show that her recent nasal surgery was causally related to any alleged formaldehyde exposure in her FEMA travel trailer. Dr. Miller is the *only* purported expert who even suggests that plaintiff's rhinosinusitis condition was exacerbated as a result of the travel trailer, and, incredibly, he did not even know the formaldehyde levels plaintiff was allegedly exposed to in her trailer. Most importantly for purposes of the present motion, Dr.

---

[16]*Allen v. Pa. Eng'g Corp.,* 102 F.3d 197, 199 (5th Cir. 1996); *see also Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 279 n.10 (5th Cir. 1996) (noting importance of the expert knowing the level of exposure to support his causation opinion).

Miller has offered no opinion whatsoever with respect to plaintiff's nasal surgery and its causal relationship to any alleged formaldehyde exposure in the travel trailer. Additionally, while Dr. Gautreaux noted plaintiff's potential need for nasal surgery, he testified that he did not detect any changes in plaintiff's symptoms during the time period that she resided in the travel trailer.

Despite plaintiff's inability to bring forth any evidence to establish such a causal link, it is anticipated that plaintiff will attempt to reference and/or introduce evidence and/or testimony regarding her nasal surgery. In light of the late notice regarding the surgery and plaintiff's failure to produce expert testimony prior to the January 29, 2010 reporting deadline, any attempts by plaintiff to reference and/or introduce testimony regarding her nasal surgery would be highly prejudicial to RBD and should be excluded.

Furthermore, notwithstanding RBD's position that Dr. Miller's testimony should be excluded in its entirety,[17] any anticipated testimony from Dr. Miller regarding plaintiff's nasal surgery should be excluded as it is not based upon sufficient facts or data, and, therefore, is not relevant. The above referenced excerpts from Dr. Miller's deposition testimony and expert report clearly show that Dr. Miller's opinion with respect to causation is not based on reliable, accurate or all relevant information. Given the deficiencies in the information relied upon by Dr. Miller in forming his opinion that Castanel's exacerbation of rhinosinusitis was related to formaldehyde exposure and the fact that he has not offered any testimony whatsoever with respect to surgery, it follows that any opinion Dr. Miller might offer with respect to plaintiff's nasal surgery is unreliable. As such, any testimony and/or evidence with respect to plaintiff's nasal surgery is irrelevant and immaterial and should be excluded.

---

[17] *See* RBD's Motion *in Limine* to Exclude the Testimony of Dr. Lawrence Miller and associated Memorandum in

### III.  CONCLUSION

Based upon the above and foregoing, Recreation By Design, LLC's Motion *In Limine* to Exclude Evidence and/or Testimony regarding Surgery-Related Claims should be granted. Accordingly, Recreation by Design, LLC respectfully requests that this Honorable Court issue an Order excluding any reference to and evidence and/or testimony regarding plaintiff's nasal surgery and any claims arising therefrom.

>Respectfully submitted,
>
>*/s/ Lyon H. Garrison*
>LYON H. GARRISON, Bar No. 19591
>SCOTT P. YOUNT, Bar No. 22679
>RANDALL C. MULCAHY, Bar No. 26436
>DARRIN L. FORTE, Bar No. 26885
>KELLY M. MORTON, Bar No. 30645
>GARRISON, YOUNT, FORTE
>& MULCAHY, LLC
>909 Poydras Street, Suite 1800
>New Orleans, Louisiana 70112
>Telephone: (504) 527-0680
>Facsimile: (504) 527-0686
>*Attorneys for Recreation By Design, LLC*
>Email: lgarrison@garrisonyount.com

### CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of this electronic filing to all known counsel of record.

>*/s/ Lyon H. Garrison*
>LYON H. GARRISON, Bar No. 19591

Support.