UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL No. 1873 |
| | SECTION "N-5" |
| THIS DOCUMENT RELATES TO: | JUDGE ENGLEHARDT |
| *Earline Castanel, et al. v. Recreation by Design, LLC, et al., Docket No. 09-3251* | MAGISTRATE CHASEZ |

**PLAINTIFF'S OPPOSITION TO DEFENDANT RECREATION BY DESIGN'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO SURGERY-RELATED CLAIMS**

Plaintiff Earline Castanel ("Ms. Castanel") respectfully submits the following Memorandum in Opposition to Defendant Recreation by Design's ("RBD") Motion to for Partial Summary Judgment as to Surgery-Related Claims (Document No. 13233).

RBD's Memorandum indicates that is moving for "partial summary judgment based on plaintiff's recent nasal surgery." RBD's Memorandum, p. 1. RBD then further explains that it is actually seeking to prevent "the introduction of any evidence and/or testimony regarding any alleged nasal surgery and any causal relationship, if any, between plaintiff's nasal surgery and her FEMA travel trailer." RBD's Memorandum, p. 2. RBD has stated the issue in this manner, which is atypical for a summary judgment motion, because there are currently no specific surgery-related claims actually pending in the case, as RBD has recognized and acknowledged ("…it is anticipated that plaintiff, although she has never to this point specifically pled any surgery-related claims, will assert a claim(s) relating to this surgery.") RBD's Memorandum, p. 3. This is an issue

1

of fact which goes to support the severity of the aggravation and exacerbation of the plaintiff's condition. Despite this recognition, RBD has asserted that a partial summary judgment on plaintiff's anticipated claims is somehow warranted. RBD's Memorandum, p. 3.

Without any claim actually pending, it is impossible for this matter to be ripe for summary judgment. RBD's Motion could be denied for this reason alone. However, additional reasons for denial exist in the facts that 1) Ms. Castanel has produced sufficient expert medical testimony to satisfy her burden on causation, and 2) Ms. Castanel can show the existence of a genuine issue of material fact that warrants consideration by a jury. For all of these reasons, RBD's motion must be denied.

I. **STANDARD OF REVIEW.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

A fact is "material" if it may affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. 242. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or

affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When considering a motion for summary judgment, the Court views the evidence in the light ***most favorable to the nonmoving party***. *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir.2002)(emphasis added). Further the Court should draw all reasonable inferences ***in favor of the nonmoving party***. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (5th Cir.2001)(emphasis added).

## II. RBD HAS FAILED TO PROVIDE ANY SPECIFIC EXAMPLES OR EXPLANATION AS TO HOW SUBMISSION OF MEDICAL EXPERT TESTIMONY ON PLAINTIFF'S SURGERY WOULD BE PREJUDICIAL TO ITS DEFENSE.

RBD asserts that any potential surgery-related claims made by Ms. Castanel should be dismissed on technical and/or prejudicial grounds based on the facts that trial is scheduled to begin in approximately one month and on the passage of the expert report deadline in late January. RBD's Memorandum, p. 5. However, RBD has provided no specific examples or explanation of the prejudice it expects to experience.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Moreover, RBD's assertion must be considered disingenuous given that its own IME expert witness, Dr. H. James Wedner, has already "unequivocally testified that there is no connection between Castanel's 2010 nasal procedure and her alleged exposure to formaldehyde while residing in her FEMA trailer." As such, RBD's expert has already considered the plaintiff's surgery and formulated an opinion about it for the defense of

3

RBD's case, which opinion may be further formulated prior to the trial of this matter. RBD's Memorandum demonstrates that it has actually already prepared a defense to Ms. Castanel's potential surgery-related claims.  Clearly, there exist issues of material fact in dispute which preclude summary judgment.

### III. PLAINTIFF HAS PRODUCED EXPERT MEDICAL TESTIMONY TO SHOW THAT HER NASAL SURGERY IS CAUSALLY RELATED FORMALDEHYDE EXPOSURE.

As set forth in Section I, prejudice is not the standard for summary judgment. Again, summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Ms. Castanel has produced the expert medical opinion of Lawrence G. Miller, M.D., M.P.H. that, "within a reasonable degree of medical probability, the exposure to formaldehyde emissions during Ms. Castanel's residence in the FEMA trailer significantly exacerbated Ms. Castanel's rhinosinusitis."  Miller Affidavit, p. 6, attached as Ex. B.  Being triple board certified and having an additional graduate degree in Environmental Health, Dr. Miller is unquestionably qualified to render such an opinion based on his review of scientific literature, Ms. Castanel's medical records, and his own physical examination.

As Dr. Miller has testified, acute and chronic exposure to formaldehyde is known to produce irritation in the eyes and upper respiratory tract.  *See* Ex. B, p. 4.  He has further testified that rhinosinusitis is clearly associated with formaldehyde exposure in humans. Ex. B, p. 5. Finally, it is his testimony that scientific data strongly supports the

correlation between formaldehyde exposure in the development of rhinosinusitis in humans and that the cytotoxic effects of formaldehyde on the nasal and respiratory epithelium is well-described and widely accepted. *Id.*

Ms. Castanel underwent sinus surgery specifically to treat her ongoing rhinosinusitis condition which Dr. Miller has opined was significantly exacerbated by her exposure to formaldehyde during her residence in the FEMA trailer at issue. *See* Ex. B, p. 6. In fact, plaintiff's surgery became scheduled for March 31, 2010 as a consequence of the plaintiff's ongoing medical treatment and follow up for upper respiratory system complaints. As established by Ms. Castanel's medical records, the date for the sinus surgery was dictated by the examination of the plaintiff's sinuses, which began with plain film x-rays on December 28, 2009 ordered by Dr. Gautreaux to investigate complaints of chest congestion and cough. *See* History / Physical Examination Report attached as Ex. C. That x-ray was interpreted to require further evaluation with CT. *See* Radiology Results of December 28, 2009, attached as Ex. D. Consequently, a CT maxiofacial without contrast [dye] was performed on February 22, 2010. *See* Radiology Results of February 22, 2010, attached as Ex. D. Surgery was scheduled as a result of the interpretation of the results of this study, which advised correlation with direct visual inspection. *See* Radiology Results of February 22, 2010, attached as Ex. E.

Dr. Miller has opined that Ms. Castanel's nasal surgery was causally related to formaldehyde exposure as follows:

> With regard to [the development of rhinosinusitis and changes in Ms. Castanel's respiratory mucosa], it is difficult to ascertain a specific cause of Ms. Castanel's rhinosinusitis since 2004. **The substantial reported increase in these symptoms during her occupancy of the trailer strongly supports a role for formaldehyde exposure. In view of Ms. Castanel's exposure to formaldehyde in the trailer and the clear**

5

> **association between formaldehyde and rhinosinusitis, it is highly likely that this exposure exacerbated this illness.** The natural history of rhinosinusitis symptoms associated with formaldehyde exposure is uncertain. While Ms. Castanel's have improved somewhat since leaving the trailer, the symptoms have persisted, and she describes them as more severe than prior to living in the trailer. **In view of the documented histological abnormalities in the upper airways associated with formaldehyde exposure, it is highly likely that symptoms of rhinosinusitis will persist for some time, perhaps indefinitely** (emphasis added).

*See* Ex. B, p. 6. In so testifying, Dr. Miller confirms that sinus surgery was made necessary, at least in large part, due to formaldehyde exposure, since it was pursued to treat a worsening of Ms. Castanel's persistent condition. It is a long-accepted principle of tort law that a defendant takes the plaintiff as she comes – perhaps with a preexisting history of rhinosinusitis and allergies in this case which actually made her more susceptible to conditions known to result from formaldehyde exposure. RBD met the plaintiff and then put her in a small trailer that worsened her rhinosinusitis condition and likely caused it, in Dr. Miller's opinion, to become persistent, perhaps indefinitely. *See* Ex. B, p. 6. Thus, any surgery that is indicated as treatment for rhinosinusitis is causally related to exposure to formaldehyde.

Ms. Castanel's own testimony supports that her rhinosinusitis condition was exacerbated by something in the trailer. Ms. Castanel testified that after a few weeks of living in the trailer she began to feel a "change":

Q: When you lived in that FEMA unit, did you smell anything unusual?

A: Well, when I first walked in, I didn't smell anything, but after I was in there for about three, four, five weeks, like that, that's when I started feeling a change in me.

Q: Okay.

6

> A: I started getting all stuffy. I couldn't breathe like. My entire nose would get so stopped up. I had to do like that (indicating), breathe through my mouth.

Castanel Deposition, attached as Ex. C, p. 85, lines 24-25 through p. 86, lines 1-10.

Ms. Castanel also testified that her stuffiness started after three to four weeks in the trailer:

> Q: Okay. Now, when you were in the trailer for the three or four weeks before this, did you smell anything unusual?
>
> A: Well, when I first walked in, I didn't smell anything, you know. Well, it did smell like newness, like when you go in somewhere where it's new, like that, that's how it smelled, but after that, I started getting stopped up.
>
> Q: And that was three or four weeks later?
>
> A: Yes, I started getting stopped up. And since then, I really been stopped up and getting sick with my sinuses.
>
> Q: So from the time, three or four weeks you moved into the trailer until now, you have been stopped up; is that right?
>
> A: I have been stopped up and running back and forth to the doctor with my sinuses.

Castanel Deposition, attached as Ex. C, p. 87, lines 9-25 through p. 88 lines 1-3

RBD has criticized Dr. Bowers and Dr. Gautreaux for not testifying as to a causal line between Ms. Castanel's nasal surgery and her alleged formaldehyde exposure. Though Dr. Bowers has treated Ms. Castanel for a long period of time and is board certified, he is not an ENT with particular specialization treating diseases of the nose. As such, Dr. Bowers is not clearly the most appropriate and qualified physician and/or expert to opine upon Ms. Castanel sinus/upper airway condition.

As RBD is well aware, Dr. Joseph Gautreaux, a board certified Ear, Nose and Throat specialist, has treated Ms. Castanel for sinus/upper airway complaints. However, Dr. Gautreaux has also testified that he has no knowledge of whether formaldehyde can worsen a rhinitis condition. RBD's Memorandum, p. 9. As such, it is not clear that Dr. Gautreaux should give an opinion as to the ultimate effects of the plaintiff's formaldehyde exposure. As previously explained, Ms. Castanel has produced the testimony of a medical expert, Dr. Miller, on this subject, who is qualified to give both general and specific causation testimony.

RBD has misconstrued Dr. Gautreaux's testimony regarding a lack of change in Ms. Castanel's sinusitis and/or rhinosinusitis diagnosis as indicating a lack of worsening of her condition. Further, even if Ms. Castanel's sinusitis had a bacterial component in 2009, as Dr. Gautreaux has testified, it would not mean that she could not or did not have rhinosinusitis from another cause at an earlier point. Moreover, the testimony cited on pp. 8-10 of RBD's Memorandum does not inquire into Dr. Gautreaux's opinions on whether Ms. Castanel's condition may have been exacerbated by the trailer. Lack of change in diagnosis is properly interpreted as meaning that Ms. Castanel had a diagnosed of sinusitis before Hurricane Katrina which has persisted to the present time. According to Dr. Miller's testimony, this is not only an expected outcome, but the preexisting sinusitis and/or rhinosinusitis was likely worsened by Ms. Castanel's formaldehyde exposure and her history of allergies. *See* Ex. B, p. 6.

Finally, regarding the actual levels of formaldehyde to which Ms. Castanel may have been exposed, it is absurd for RBD to suggest that is possible for Dr. Miller or any expert for that matter to ascertain that knowledge. Formaldehyde levels were not

sampled when Ms. Castanel actually lived in the trailer, and samples taken for this litigation, four years after Ms. Castenel lived in the trailer when it was new, cannot accurately reflect the levels that were present in 2006.  It is also known that formaldehyde emissions vary with temperature, humidity and ventilation.  *See* Ex. B, p. 4.  There is no explanation of an accounting for any of these factors in the recent testing, which was done in the winter, minimizing any off-gassing.  Further, this is exactly the scenario envisioned by this Court when plaintiffs were allowed to conduct testing to create a database to be used for statistical analysis.

It is known, however, that the plaintiff's long-time companion, Edwin Peter Ganier, and her two daughters have testified that they were able to smell formaldehyde in the trailer.  Testimony elicited during the Wright trial established that the Centers for Disease Control ("CDC") and the Agency for Toxic Substances and Disease Registry ("ATSDR") have recognized an odor threshold for formaldehyde of 500-1,000 ppb. In other words, since a recognizable odor was present, the formaldehyde level in Ms. Castanel's trailer must have been at least 500 ppb.

Dr. Miller does address levels of formaldehyde that are considered harmful in his Affidavit.  *See* Ex. B, p. 5.  He also specifically testified as to the presence of a "completed exposure pathway" with Ms. Castanel, explaining that this indicates a strong likelihood that Ms. Castanel was exposed chronically to formaldehyde emissions in her FEMA trailer.  *See* Ex. B, p. 6.  As previously explained, Dr. Miller's testimony does link the persistence and exacerbation of plaintiff's rhinosinusitis claim to formaldehyde exposure.  RBD is simply misunderstands and misconstrues Dr. Miller's testimony.

The plaintiff in this case has come forward with qualified and sufficient medical expert testimony to establish a *prima facie* case of medical causation under the requirements of Louisiana law. For this reason, RBD's motion must be denied and the plaintiff's case must be allowed to move forward.

IV.     **CONCLUSION.**

The standard requires a party moving for summary judgment to "demonstrate the absence of a genuine issue of material fact." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075. The arguments raised in RBD's motion supports that material questions of fact do indeed exist that are appropriate for consideration by a jury. In short, the arguments and counterarguments raised in these briefings establish that the issues of this case are not ripe for summary judgment but, rather, should be heard and decided by a jury.

Further, summary judgment is improper because RBD brings this motion for fear of prejudice. Summary judgment is available only when there exists no genuine issue of material fact such that the defendant is entitled to a judgment as a matter of law.

For all the reasons set forth above, Plaintiff Earline Castanel respectfully requests that this Court deny Defendant Recreation by Design LLC's Motion for Partial Summary Judgment as to Surgery-Related Claims.

    Respectfully submitted,

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

s/ Gerald E. Meunier
GERALD E. MEUNIER, # 9471
**PLAINTIFF'S' CO-LIAISON COUNSEL**

        Gainsburg, Benjamin, David, Meunier & Warshauer, L.L.C
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        T: 504/522-2304
        F. 504/528-9973
        gmeunier@gainsben.com


        s/ Justin I. Woods
        JUSTIN I WOODS, #24713
        **PLAINTIFF'S' CO-LIAISON COUNSEL**
        Gainsburg, Benjamin, David, Meunier & Warshauer, L.L.C
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        T: 504/522-2304
        F. 504/528-9973
        jwoods@gainsben.com

        **COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON. #9938
        MIKAL WATTS, Texas #20981820
        DENNIS REICH, Texas #16739600


        Attorneys for Plaintiff


## CERTIFICATE OF SERVICE

      I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing on April 16, 2010.

        s/ Gerald E. Meunier
        GERALD E. MEUNIER, # 9471