**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION**

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-5"<br><br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO:
*Earline Castanel, et al. v. Recreation By Design, LLC, et al.*
Case No. 09-3251 (E.D. La.)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON MENTAL ANGUISH CLAIMS**</u>

**MAY IT PLEASE THE COURT:**

Plaintiff, Earline Castanel (the "Plaintiff" or "Ms. Castanel"), through undersigned counsel respectfully brings this Opposition to the Motion for Partial Summary Judgment on Mental Anguish Claims and Fear of Cancer (the "Motion for Summary Judgment") filed by Defendants Recreation by Design, LLC ("RBD") and Shaw Environmental, Inc. ("Shaw")(collectively hereinafter "Defendants"). Plaintiff offers this opposition to show that there clearly exists issues of material fact which are proper for the trier of fact to determine at trial, and which preclude summary judgment.

While the Defendants raise arguments as to why Ms. Castanel's claims must fail, these are arguments rather than a showing of no disputed fact, and would be appropriately raised at

trial rather than in the Motion for Summary Judgment. Further, the subjective nature of mental anguish and fear of cancer claims make them fact based, and even the arguments raised by the defendants acknowledge that the experts and medical providers are not all in agreement. This again goes to disputed issues of material fact, which the trier of fact is tasked with examining. Defendants make assertions that any mental condition afflicting the Plaintiff pre-existed Hurricane Katrina, but fail to address the fact that a defendant must take the Plaintiff as she comes, and that if the exposure to formaldehyde exacerbated pre-existing conditions, including her mental and emotional state, they are still liable. Finally, Defendants erroneously argue that Plaintiff was in a position, while living in the trailer, to inform her doctors that she was worried about what the formaldehyde in the trailer was doing to her, and that she thought formaldehyde was causing her injuries. There is no way for the Plaintiff to make any such statement if she was not aware formaldehyde was in the trailer while she was living in it. For these reasons, and as will be more fully articulated below, there clearly exist issues of material fact which are in dispute and which preclude summary judgment.

**I.     SUMMARY OF THE CASE**

Ms. Castanel is a 79 year-old woman who resided in a travel trailer provided by RBD and installed and maintained by Shaw following Hurricane Katrina (the "RBD trailer"). Ms. Castanel lived in the trailer from March, 2006 until the summer of 2007 a period of approximately 16 months. The Plaintiff had a prior history of sinus problems. Further, the Plaintiff was considered in the past by her treating physicians to be tightly wound and anxious. Finally, Plaintiff's son had died of cancer several years before Hurricane Katrina and Ms. Castanel had general worries about cancer due to that loss.

After moving into the RBD trailer, the Plaintiff began having severe problems with her sinuses and breathing. She became afraid she would smother, and within weeks of moving into her trailer went to one of her doctors to see what was wrong. Neither she nor the doctor were aware at that time that she was being exposed to formaldehyde in the trailer, as there had been no warning posted in the RBD trailer itself, no statements of warnings in the owner's manual, and no warnings or statements of any kind issued by any other entity. These problems persisted throughout her occupancy of the RBD trailer, and her anxiety about her sinus problems and being unable to breathe continued.

Upon moving out of the RBD trailer, Ms. Castanel's sinus difficulties continued, and in late March, 2010, she needed to have sinus surgery to address the problem. Since moving out of the trailer, Ms. Castanel has become increasingly aware of the carcinogenic properties of formaldehyde and has developed a fear of cancer specific to her exposure to formaldehyde while living in the RBD trailer. In addition to the fear of cancer, her anxiety relating to her sinuses and inability to breathe has continued and is interwoven with her ongoing medical problems.

## II.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper only where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed R. Civ. P. 56(c). When considering motion for summary judgment, the Court views the evidence in a light most favorable to the nonmoving party, Gillis v. Louisiana, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. Hunt v. Rapides Healthcare System, LLC, 277 F.3d 757, 764 (5th Cir. 2001). A factual dispute where the evidence is sufficient to permit a reasonable trier of

fact to find for the nonmoving party precludes a grant of summary judgment. Smith v. Amedisys, 298 F.3d 434, 440 (5th Cir. 2002).

The standard requires a party moving for summary judgment to "demonstrate the absence of a genuine issue of material fact." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075. The extent of the arguments raised in RBD's motion supports that material questions of fact do indeed exist that are appropriate for consideration by a jury. In short, the arguments and counterarguments raised in these briefings establish that the issues of this case are not ripe for summary judgment but, rather, should be heard and decided by a jury.

No clear legal standard exists for the evaluation of mental anguish claims. Dickerson v. Lexington Ins. Co., 556 F.3d 290, 304-05 (5th Cir. 2009). Determinations relating to mental anguish are therefore almost exclusively within the purview of the fact finder, and should thus be preserved for the jury's evaluation. *See* Id. In the instant matter there is evidence by Plaintiff experts and fact witnesses, including the Plaintiff herself that there exists mental anguish, including but not limited to a fear of cancer, resulting from and exacerbated by the formaldehyde exposure suffered by Ms. Castanel in her RBD trailer and that her fear of cancer is reasonable. Therefore, Defendant's Motion for Summary Judgment should be denied. *See* Amedisys, 298 F.3d at 440.

### III. PLAINTIFF MAY RECOVER FROM AGGREVATION OF PRE-EXISTING CONDITIONS, INCLUDING FEAR OF CANCER

It is axiomatic under the Egg Shell Skull Doctrine that the Defendants must take the Plaintiff as she comes. The Louisiana Supreme Court in American Motorist Ins. Co. v. American Rent-All, Inc., 579 So.2d 429 (La. 1991) held that a "defendant takes his victim as he

4

finds him and is responsible for all natural and probable consequences of his tortuous conduct, " and "where defendant's negligent action aggravates preexisting injury or condition, defendant must compensate victim for the full extent of aggravation." The Defendants in their Motion for Summary Judgment spend considerable time discussing and arguing that the Plaintiff's anxiety and fear of cancer pre-existed the occupancy of the trailer and any exposure to formaldehyde. What Defendants do not do, however, is discuss that Ms. Castanel has anxiety and fear of cancer related specifically to her time in the trailer which was made worse because of her predisposition to fear and anxiety.

There is no dispute that the Plaintiff was considered to be "high strung" and "anxious" by her treating physicians prior to her time in the RBD trailer. Further, as was stated by Edwin Ganier during his April 1, 2010 deposition, the Plaintiff had pre-existing worries about cancer that related to her son's death from cancer ten or twelve years ago.[1] However, as will be discussed below, fact witnesses and experts, in addition to the Plaintiff herself, all have articulated anxiety and fear of cancer specific to her time in the RBD trailer and the symptoms she was experiencing and a fear of cancer which has emerged relating to exposure to formaldehyde. This also indicates a clear issue of material fact which is disputed between parties and must be decided by a trier of fact.

## IV. DEFENDANT RBD ACKNOWLEDGES SUPPORT FOR PLAINTIFF'S CLAIMS

It is important to note that RBD has filed a concurrent Motion for Summary Judgment to Exclude Certain Claims ("Motion to Exclude"). That Motion was filed on April 8, 2010 at Record Doc. 13232, et seq.[2] In the Motion to Exclude, RBD makes assertions that would indicate the Plaintiff has at least met the threshold to defeat a summary judgment on the issues of

---

[1] See select pages of Ganier deposition attached hereto as Exhibit "A"
[2] The Memorandum in Support, Rec. Doc. 13232-1 is attached hereto as Exhibit "B"

exacerbation of rhinosinusitis and mental anguish related to anxiety and fear of cancer.  In its Memorandum in Support, RBD states at p. 3, "Plaintiff's claims appear to be limited to allegations of the exacerbation of her rhinosinusitis, and mental anguish claims of anxiety and fear of cancer…with the exception of those three claims, all of the Plaintiff's remaining claims should be dismissed."  After discussing what Drs. Miller and Shwery say about the Plaintiff's mental anguish, anxiety and fear of cancer, RBD states at p. 10: "Simply put, there is no medical evidence to support any of the Plaintiff's claims other than exacerbation of rhinosinusitis and mental anguish claims of anxiety and fear of cancer."  Then RBD goes on to state:

> Defendants therefore submit to this Court that there "is no genuine issue of material fact" regarding whether Plaintiff has evidence in support of any claim other than her alleged claims of exacerbation of rhinosinusitis and mental anguish claims of anxiety and fear of cancer…

and RBD concludes by stating:

> The Plaintiff has simply failed to provide any evidence in her pleadings, discovery responses, expert opinions, expert deposition testimony, and in her own deposition testimony to support any additional claims other than exacerbation of rhinosinusitis, and mental anguish claims of anxiety and fear of cancer.

The nature and use of the above argument and language implies and articulates that there do exist genuine issues of material fact, supported by "pleadings, discovery responses, expert opinions, expert deposition testimony, and in her own deposition testimony," which would preclude a granting of summary judgment.  Therefore, Plaintiff again asserts that the Motion for Summary Judgment brought by Defendants relating to mental anguish and fear of cancer must fail as there exist genuine issues of material fact which remain in dispute and must be left to the trier of fact.

## V.  SUMMARY JUDGMENT IS PRECLUDED ON FEAR OF CANCER

Plaintiffs carry a particularly light burden in proving reasonableness for purposes of a fear of cancer claim. Smith v. A.C. & S., Inc., 843 F.2d 854, 859 (5th Cir. 1988). In *Smith*, the 5th Circuit held that a plaintiff's burden for a fear of cancer claim does not rise to the level of proving that his exposure will more probably than not lead to cancer. A fear of cancer claim only requires a showing that there is "any possibility of acquiring (the) disease, no matter how remote." Raney v. Walter O. Moss Reg'l Hosp., 629 So.2d 485, 491 (La.App. 3d Cir. 1993). While a fear of cancer claim must be distinguished from general mental anguish, Ms. Castanel's evidence precludes summary judgment on this issue. See Smith, 843 F.2d at 859. Comments made by Ms. Castanel herself, several experts and supporting fact witnesses all create genuine issues of material fact which must be decided by the trier of fact and preclude summary judgment.

The Plaintiff herself discussed the fear of cancer relating to formaldehyde as a recently developed fear, as she has learned more about the carcinogenic properties of formaldehyde in the media.[3] This is a clear distinction from any pre-existing sensitivity or fear of cancer (although it certainly could have been made worse) from the death of her son from cancer 10-12 years ago.[4] Further, two of Ms. Castanel's daughters also indicated that she had voiced a fear of cancer relating to her time in the trailer.[5] In addition to this, two experts discuss Ms. Castanel's fear of cancer as it related to her time in the RBD trailer and her exposure to formaldehyde. Dr. Shwery briefly mentions that Ms. Castanel voiced a fear a private fear that she could develop cancer

---

[3] Select pages of Ms. Castanel's deposition are attached as Exhibit "C"
[4] Select pages of Mr. Ganier's deposition are attached as Exhibit "A"
[5] The depositions of Sandra Davis Castanel and Laverne Williams were taken on April 12, 2010, and the transcripts were unavailable at the time of this Opposition.

7

from her time in the trailer.[6] Dr. Miller also discusses in more detail that Ms. Castanel became very emotional when discussing her fear of cancer, breaking into tears two times while she related her fears of cancer from the exposure to formaldehyde to him. He further found this fear, in the context of the expert report prepared by Dr. Williams discussing at great detail the toxicological links between formaldehyde and cancer, to be rationally based, and specific to her exposure to formaldehyde.[7] There are clearly factual assertions made by the Plaintiff, and supported by others, that she has a fear of cancer relating to her exposure to formaldehyde and which preclude summary judgment on the issue.

It is also important to note that Defendants would try to impose a far too rigorous standard for Plaintiff to overcome the Motion for Summary Judgment relating to fear of cancer. Defendants make arguments that Plaintiff must prove "more probably than not" that fear of cancer (and mental anguish) were caused by the Defendants. This is the standard to prevail at trial. In responding to the Motion for Summary Judgment, Plaintiff need only to show that there exist genuine issues of material fact which go to the heart of the matter, and which are proper for the trier of fact to determine at trial. Plaintiff certainly does not need to win the case at summary judgment. Defendants argue that Plaintiff has produced no epidemiological evidence or dose related causational evidence to determine a level sufficient to trigger an onset of cancer. This is not applicable nor is it an appropriate argument for summary judgment.

To succeed in a fear of cancer claim, Plaintiff need only to show that the risk of developing cancer increased because of her exposure to formaldehyde in the RBD trailer. Plaintiff expert toxicologist Dr. Williams gives detailed attention to the links between

---

[6] See Shwery Expert Report attached as Exhibit "D", p.4.
[7] See Dr. Miller Expert Report attached as Exhibti "E", p. 6.

formaldehyde and cancer in her report.[8] Further, she has articulated repeatedly throughout this MDL litigation that there are no known safe exposure levels to carcinogens. This discussion and attention to the carcinogenicity by Dr. Williams, as has been found to be sufficient in the past bellwether trials, and the discussion made by Dr. Miller relating to the rational basis of the Plaintiff's fear of cancer, are sufficient to defeat this Motion for Summary Judgment. Further, the individual and subjective nature of a fear of cancer claim center around disputed issues of material fact, and this also precludes summary judgment.

## VI.   SUMMARY JUDGMENT IS PRECLUDED ON CLAIM OF MENTAL ANGUISH

In addition to a fear of cancer claim, Plaintiff has a general mental anguish claim relating to the anxiety she developed relating to her sinus and breathing problems which occurred while she lived in the RBD trailer. When examining this anxiety, there are clearly disputed issues of material fact which preclude a summary judgment on this issue.

Defendants raise two major arguments in their Motion for Summary Judgment on the Plaintiff's general mental anguish claims: (1) that the Plaintiff suffered from pre-existing anxiety and depression; and (2) that there was nothing to indicate that her exposure to formaldehyde caused the anxiety she suffers from. The first argument is irrelevant and the second is untrue. As previously discussed, Defendants are liable for aggravation or exacerbation of pre-existing conditions caused by their tortious conduct. If Ms. Castanel was prone to anxiety or "high-strung" prior to Hurricane Katrina as the Defendants argue, that does not diminish the fact that she has also developed anxiety and fear from her time in the RBD trailer and the sinus and breathing problems she developed while living there. It is also important to note that her sinus problems which were made significantly worse while residing in the RBD trailer recently

---

[8] See attached Expert Report of Dr. Williams, Exhibit "F".

necessitated a surgical procedure to alleviate and correct the problem.[9]  Any fear and mental anguish has now been significantly increased due to this surgical intervention which came about in large part due to the exacerbation of her sinus conditions from exposure to formaldehyde in the RBD trailer.

In his expert report, Dr. Shwery came to the conclusions that the Plaintiff has a "circumscribed problem" wherein her anxiety and distress was related to her sinus problems from living in the RBD trailer and that when those increase, her fear and anxiety increase.  He further discusses Ms. Castanel's fear of suffocation and death relating to her sinus and breathing difficulties she experienced while in the trailer, and that these also resurrect as her sinus condition worsens.[10]  When put in context of her recent sinus surgery, there is certainly an increase in anxiety and fear that relates to her time in the RBD trailer and her lingering fears of suffocation and death.

Ms. Castanel herself stated at deposition that she felt she was going to smother while living in the RBD trailer:[11]

> Q.    When you lived in that FEMA unit, did you smell anything unusual?
>
> A.    Well, when I first walked in, I didn't smell anything, but after I was in there for about three, four, five weeks, like that, that's when I started feeling a change in me.
>
> Q.    Okay.
>
> A.    I started getting all stuffy.  I couldn't breathe like.  All my nose would get so stopped up, I had to do like that (indicating), breathe through my mouth.
>
> Q.    And that was three or four weeks after you moved into the FEMA trailer?
>
> A.    After I moved into the trailer.  I just would get stopped up, and then my throat would get sore.  I would go to the doctor and he would paint my throat with

---

[9] This surgery occurred on March 31, 2010 and is the subject of another Motion for Summary Judgment.
[10] See Dr. Shwery's expert report, Exhibit "D".
[11] Selected pages of Ms. Castanel's deposition are attached as Exhibit "C".

some kind of medicine, put me in front of the heat lamp, and he would come back and he takes that out, that stuff, that packing out, and then he will give me a shot and he will give me some medicine to take for my sinus, to clear it up and some nose spray.

Q. And this was the visit to the doctor three or four weeks after you moved into the FEMA trailer?

A. Well, it was about the fifth week, sixth week, something like that. I was feeling so bad and so stuffed up, I had to go to the doctor, because I was afraid I was going to smother.

Q. What doctor was that?

A. Dr. Gautreaux, Joseph Gautreaux.[12]

Later in her deposition, Ms. Castanel again discussed being unable to breathe in the trailer:

Q. Do you know what caused your stuffy nose while living in the FEMA trailer?
A. It just starts getting stopped up and that was it. It just started getting stopped up. And after I got out of the trailer, I'm getting stuffed.

Q. Yes, ma'am.

A. The only thing I just haven't gotten to the point that I feel I'm going to smother, like I was when I was in the trailer, when it first started happening, I got so stopped up, I just couldn't breathe. Okay, (indicating), like that. My nose was just that stopped up. Now it still gets stopped up, but I haven't gotten to that point yet that I couldn't – I can't breathe at all, that I got to (indicating). But my nose still gets stopped up.

Q. So would you say that your nose is better since moving out of the FEMA trailer?

A. I wouldn't say that.

Q. How often do you have a stuffy nose?

A. Almost every other day I'm stuffed up. There ain't a week that passes that I am not stuffed.

Q. How long has it been like that?

---

[12] It is interesting to note that Defendants spend considerable time discussing a visit with Dr. Bowers in March of 2006, when it was clearly Dr. Gautreaux that she discussed this with.

11

> A. Since I got out of that trailer. It goes and comes.
>
> Q. And do you find it's pretty much the same as far as frequency since you moved out of the trailer?
>
> A. Yes, it's still staying the same. Still no change. No better.
>
> Q. And I asked you a few minutes ago, and I wasn't sure of the answer. Was there something in your FEMA trailer that you thought was causing your nose to be stopped up?
>
> A. I don't know. I just know that I got stuffed up. I don't know what was causing it or what. Like I said, when I first walked in there, it just felt like you were walking into a new house, but after I was in there, you know, them three or four weeks, five weeks, that's when I started with this, and I been suffering with it ever since.

From her own testimony, Ms. Castanel clearly was dealing with issues of being unable to breath and feeling like she was going to smother while living in the trailer, and which was directly connected to her sinuses. Her anxiety in this regard began when she started living in this trailer, and has not really abated according to Dr. Shwery as it is directly tied to her ongoing sinus problems which were caused and/or made worse from the exposure to formaldehyde that she suffered while living in the RBD trailer. It must also be noted that Defendants have improperly imposed an affirmative duty of knowledge on the part of the Plaintiff while she resided in the RBD trailer that she was being exposed to formaldehyde. She had no way of knowing she was being exposed to formaldehyde, and her physicians would have no way of knowing that either. There was no warning in the RBD Trailer or in the Owners' Manual, and there had been no warning sent out by any other party at the time of her occupancy either. As such, that argument by Defendants must fail, and due to clearly disputed issues of genuine material fact, the Motion for Summary Judgment must fail.

Defendants also make an inaccurate and untrue argument that there has been no linkage between the Ms. Castanel's exposure to formaldehyde and her sinus and breathing problems. Dr.

Miller's report, in addition to some comments relating to the rationally based fear of cancer, is focused almost exclusively on the general and specific toxicological causation issues relating to the exacerbation of Ms. Castanel's rhinosinusitis caused buy exposure to formaldehdye. Inherent in the term rhinosinusitis is sinus. The term in fact means swelling of the nose and sinuses. Defendants have raised the issue relating to levels of formaldehyde in the trailer being undefined and insufficient to cause injury. However, at this point, three witnesses, Mr. Garnier and two of Ms. Castanel's daughters have testified they smelled formaldehyde in the trailer. This put the levels above the odor threshold, which the ATSDR lists as approximately 1,000 parts per billion.[13] Further, any statement that "the only Plaintiff expert to link the sinus issues and formaldehyde is Dr. Miller" is non-sensical because it would imply that one specific causation medical expert is insufficient. This Court has admonished parties for redundancy and overlap in the past. How many experts would Defendants suggest Plaintiff use to say the same thing?

Simply put, Ms. Castanel's anxiety and fear based upon her sinus and breathing problems stemming from her exposure to formaldehyde are factually supported, and at the very least create sufficient dispute to overcome this Motion for Summary Judgment, and as such, the Motion must be denied.

## VII.   CONCLUSION

The Plaintiff, through her own testimony, expert reports and the testimony of other witnesses (in addition to the reasons listed by the Defendants in their Motion to Exclude Other Claims) has clearly demonstrated that there exist genuine issues of material fact which are central to the claims of mental anguish and fear of cancer. Further, Defendants have not carried their burden of proof and shown there are not issues of material fact. For the reasons and

---

[13] The ATSDR toxicological profile for formaldehyde lists this odor threshold at p. 41, attached hereto as Exhibit "G".

arguments articulated herein, Plaintiff prays that this Honorable Court will deny the Motion for Summary Judgment on the issues of Mental Anguish and Fear of Cancer, raised by the Defendants.

    Respectfully submitted,

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

s/ Gerald E. Meunier
GERALD E. MEUNIER, # 9471
**PLAINTIFF'S' CO-LIAISON COUNSEL**
Gainsburg, Benjamin, David, Meunier & Warshauer, L.L.C
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
T: 504/522-2304
F. 504/528-9973
gmeunier@gainsben.com

s/ Justin I. Woods
JUSTIN I WOODS, #24713
**PLAINTIFF'S' CO-LIAISON COUNSEL**
Gainsburg, Benjamin, David, Meunier & Warshauer, L.L.C
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
T: 504/522-2304
F. 504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON. #9938
MIKAL WATTS, Texas #20981820
DENNIS REICH, Texas #16739600

**Attorneys for Plaintiff**

**CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on April 16, 2010.

                                            s/ Gerald E. Meunier
                                            GERALD E. MEUNIER, # 9471