UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER | * | MDL NO. 1873 |
| | FORMALDEHYDE PRODUCTS | * | |
| | LIABILITY LITIGATION | * | SECTION "N" (5) |
| | | * | |
| | | * | JUDGE ENGELHARDT |
| | | * | MAGISTRATE CHASEZ |
| | | * | |
| **THIS DOCUMENT IS RELATED TO** | | * | |
| | | * | |
| *Earline Castanel et al. v. Recreation by* | | * | |
| *Design, LLC, et al*, Docket No. 09-3251; | | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>PLAINTIFF'S RESPONSE TO DEFENDANT RECREATION BY DESIGN, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE FAILURE TO
WARN CLAIM</u>

Plaintiff Earline Castanel ("Plaintiff") respectfully submits this Memorandum in Opposition to Defendant Recreation By Design, LLC's ("RBD") Memorandum in Support of Its Motion for Partial Summary Judgment as to Plaintiff's Failure to Warn Claim (Document No. 13241-1), and in support, would show:

### **INTRODUCTION**

Plaintiff has asserted claims against RBD under the Louisiana Products Liability Act ("LPLA"). Specifically, Plaintiff claims that the RBD unit at issue in this lawsuit, bearing VIN 5CZ200R2461125294, occupied from February 2006 to March 2007, due to its construction, composition, design, and lack of warnings, exposed Plaintiff to dangerous levels of formaldehyde.

### **STANDARD OF REVIEW**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be granted if the pleadings, discovery, disclosure materials, and affidavits show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See F. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must demonstrate the absence of a genuine issue of material fact." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

"If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial." Harvey v. Toyota Material Handling, USA, Inc., No. 05-0561, 2007 WL 1115235 (W.D. La. April 13, 2007) (citing Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046–47 (5th Cir. 1996)). On a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. See Gillis v. Louisiana, 294 F.3d 755, 758 (5th Cir. 2002). "Factual controversies are to be resolved in favor of the nonmovant, 'but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" Harvey, 2007 WL 1115235

2

at *3 (citing Wallace, 80 F.3d at 1048); see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir.1996). If there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is a genuine issue for trial, and thus, summary judgment is inappropriate. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## DISCUSSION

### I. RBD HAD A DUTY TO WARN OF THE DANGERS OF FORMALDEHYDE IN THE TRAVEL TRAILERS AND IS NOT PROTECTED BY THE SOPHISTICATED USER DEFENSE

Generally, the LPLA holds a manufacturer liable for damage caused by a characteristic of the manufacturer's product that renders the product unreasonably dangerous. See La. Rev. Stat. § 9:2800.54(A) (2009). A product is considered unreasonably dangerous when the manufacturer of the product fails to provide an adequate warning regarding a characteristic of the product that may cause damage, so long as that characteristic was present at the time the product left the manufacturer's control. See id.

However, this section also excepts manufacturers from the duty to provide such warning when "[t]he user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic." See id. § 9:2800.57(B)(2). This is commonly known as the sophisticated user defense. See Mozeke v. Int'l Paper Co., 933 F.2d 1293, 1297 (5th Cir. 1991). "'Sophisticated users' of a product may be presumed to know about the danger because of their familiarity with the product." Mallery v. Int'l Harvester Co., 690 So.2d 765, 768 (La. App. 3d Cir. 11/6/96). "A sophisticated user possesses more than a

3

general knowledge of the product and how it is used." Asbestos v. Bordelon, Inc., 726 So.2d 926, 955 (La. Ct. App. 1978) (finding shipyard employer not a sophisticated user of asbestos-containing insulation as it did not manufacture any insulation of its own and did not construct a final product). Under Louisiana law, "a manufacturer's duty to warn is precluded in situations when the purchaser has particular knowledge of or experience with the inherent dangers in the use of a product, i.e., a sophisticated user." Mozeke, 933 F.2d at 1297. "Whether a user is sophisticated is ordinarily a question of fact for the jury to decide." Id.

In one case, the Fifth Circuit reversed a trial court's finding that an employer was a sophisticated user as a matter of law even though the record showed that the employer had been using the product (ozone) in its manufacturing process for 55 years and this particular ozone generator for 12–13 years before the plaintiff discovered his injuries. See Swope v. Columbian Chemicals Co., 281 F.3d 185, 206 (5th Cir. 2002). The *Swope* court held that experience with a device does not necessarily equate to knowledge. See id. at 208–09.

### A. **RBD has failed to show as a matter of law that FEMA was a sophisticated user of travel trailers.**

> *1. RBD has not shown, and cannot show, that FEMA is constructively charged with all of the knowledge of the United States government.*

RBD has failed to show as a matter of law that FEMA was a sophisticated user of travel trailers. RBD argues that FEMA was "keenly aware" of the issues related to formaldehyde levels in the indoor air, as this topic has been the subject of federal regulation for decades. See Rec. Doc. 13241-1 at 9. RBD goes further to argue that in the 1970s and 1980s, the U.S. Department of Housing and Urban Development ("HUD")

4

set forth regulations dealing with formaldehyde in the ambient air of manufactured homes. See id. RBD argues that FEMA has all of the institutional knowledge of the U.S. government.

The knowledge of the U.S. government as a whole, nor information in possession of other Federal agencies or FEMA officials other than those responsible for providing Plaintiff temporary emergency housing—*i.e.*, FEMA Individual Assistance Program officials in Louisiana or at FEMA Headquarters — is not relevant to assessing whether the United States is liable. See U.S. v. Currency Totaling $48,318.08, 609 F.2d 210, 215 (5th Cir. 1980) (knowledge of custom agent not attributable to government because claimant failed to prove that agent had a duty to reveal information); Wyler v. Korean Air Lines, Inc. 928 F.2d 1167, 1172 (D.C. Cir. 1991) (where duty is owed by the FAA there is no basis for holding the government liable under the FTCA if the Air Force knew of the danger but the FAA did not—stating "[i]ndeed even within FAA imputation of knowledge between different FAA operations may not be justified"); U.S. v. Schiffer, 831 F. Supp. 1166, 1204 n.45 (E.D. Pa. 1993), aff'd, 31 F.3d 1135 (3d Cir. 1994) ("knowledge by other federal agencies such as the Army. . . cannot be imputed to the INS"); State v. Smith, 697 So.2d 889, 891 (Fl. App. 1997) (knowledge in possession of motor vehicle bureau cannot be imputed to revenue department).

Moreover, the cases RBD uses to support this alleged institutional knowledge of FEMA are inapposite. The HUD regulations cited to by RBD are directed to the emission of formaldehyde in manufactured housing (or mobile homes). Travel trailers are not within the ambit of these regulations as travel trailers are not mobile homes. See 2009 Deposition of Douglas Gaeddert, 60:30-63:19 attached as Exhibit A. RBD argues

5

that under *U.S. ex rel. Finney v. Nextwave Telecom, Inc.* (a district court decision from the Southern District of New York), FEMA is charged with the knowledge of these HUD regulations. See 337 B.R. 479, 487 (S.D. N.Y. 2006); c.f. Lambert v. B.P. Products N. Am., Inc., No. 04-347-GPM, 2006 WL 924988 (S.D. Ill. April 6, 2006) ("The Court declines to hold that the United States is in every time and season a sophisticated purchaser.").

However, *Finney* does not stand for that proposition at all. In *Finney*, the United States of America was a plaintiff in a qui tam action where the court held that the United States, not any specific department or sub-agency thereof, was charged with knowledge of the existence of a federal statute. See id. Those facts are distinguishable from the present situation where RBD is asserting that FEMA, an agency of the U.S. government charged with handling national emergencies and disaster relief efforts, is charged with the knowledge of HUD, a separate agency charged with regulating housing.

In further support of RBD's theory, it offers *Morgan v. Brush Wellman, Inc.*, where the Eastern District of Tennessee held that the United States was a sophisticated user of beryllium. See 165 F. Supp. 2d 704, 718 (E.D. Tenn. 2001). However, a closer reading of the facts of that case reveal that it, too, is distinguishable from the present case. In *Morgan*, the exposure to beryllium at issue occurred in the setting of a nuclear armaments facility operated by government contractors. See id. at 706. Beryllium is an essential component used in nuclear reactors and weapons, and is thus an integral part of numerous Department of Defense and Department of Energy applications. See id. at 709. The context in which the claim arose is clearly within the purview of those agencies as the claim arose from exposure in a plant involved with the defense of the United

6

States.  Thus, when the court stated, "the United States agencies and its contractors at Y-12 and K-25 have been and are sophisticated users of beryllium," the court was clearly referring to the agencies identified earlier in the decision and who contract work in this field at the Y-12 and K-25 facilities.  Id. at 718.  The court would not have envisioned that FEMA was to be charged with the intimate knowledge of the Departments of Energy and Defense regarding the properties of beryllium, nor did it state such a proposition.

Likewise, the *Akin* case cited by RBD also fails to support Defendant's proposition.  See Akin v. Ashland Chem. Co., 156 F.3d 1030 (10th Cir. 1998).  In *Akin*, the Tenth Circuit found that the United States Air Force ("Air Force") was a sophisticated purchaser in a claim by Air Force employees related to low-level chemical exposure.  See id. at 1037.  The court based its finding on the ability of the Air Force to conduct studies and its extremely knowledgeable staff.  See id.  However, FEMA is by no means the size of the Air Force.  The Air Force has approximately 481,500 employees, while FEMA employees approximately 3,700 full-time employees and 4,000 stand-by disaster relief employees.[1]  Surely, the court cannot be understood to mean that an agency the size of FEMA, whose sole purpose is to provide disaster relief, has the same breadth of resources, ability to conduct studies, and knowledgeable staff as the United States Air Force.

Thus, all of the cases cited to by RBD are distinguishable on their facts from the present case and in contravention of the greater weight of the law.  Therefore, it cannot be argued with any persuasiveness that FEMA is charged with having the institutional knowledge of the entire U.S. government.

> 2. *FEMA did not have actual knowledge of the dangers of formaldehyde until 2006.*

Furthermore, FEMA did not gain actual knowledge about the dangers of formaldehyde in travel trailers until March 2006 as evidenced by the following testimony:

Deposition of FEMA's Kevin Souza (2008) relevant portions attached as Exhibit B.

- FEMA first became aware of formaldehyde health hazard in March 2006 (see p. 22:5–17);

- FEMA was not aware of formaldehyde-related complaints until March 2006 (see p. 26:13–16);

Deposition of FEMA's Kevin Souza (2009), relevant portions attached as Exhibit C.

- Believed trailers were safe at time of purchase (see pp. 30:17–31:16);

- First heard of formaldehyde concerns in March 2006 (see pp. 42:16–43:12);

Deposition of FEMA's Bryan McCreary, relevant portions attached as Exhibit D.

- Not aware of formaldehyde as an issue during trailer procurement (see p. 15:3–22);

- Not aware of formaldehyde complaints pre-Katrina (see p. 29:8–11);

Deposition of FEMA's David Garratt, relevant portions attached as Exhibit E.

- First became aware of formaldehyde complaint via Sierra Club report from K. Souza (see p. 38:1–10);

---

[1] See U.S. Air Force Home Page, *Air Force Personnel Center*, http://www.afpc.randolph.af.mil/library/airforcepersonnelstatistics.asp (last visited Feb. 8, 2010); FEMA Home Page, *About FEMA, Who We Are*, http://www.fema.gov/ about/#0 (last visited Feb. 8, 2010).

- No formaldehyde claims from residents of trailers from previous disasters (see p. 208:7–16);

Deposition of FEMA's Martin McNeese, relevant portions attached as Exhibit F.

- Prior to Katrina, not aware of any formaldehyde complaints associated with trailers (see p. 101:15–21);

Deposition of FEMA's Guy Bonomo, relevant portions attached as Exhibit G.

- With regard to FEMA's knowledge of formaldehyde, "We were as surprised as the applicants, you know. We had no idea." (see p. 19:16–18);

Expert Report of FEMA expert Michael Lindell, relevant portions attached as Exhibit H.

- FEMA Emergency Managers had no forewarning about formaldehyde in travel trailers from its experience providing temporary housing after previous disasters (see pp. 6–9).

In further support of its claim that FEMA was a sophisticated purchaser, RBD offers that FEMA's "taking responsibility for handling the situation" once the issues of formaldehyde came to light. See Rec. Doc. 13241-1 at 11. First, this does not in any way show that FEMA was a sophisticated purchaser as defined by the law, it merely shows that FEMA acted in a responsible manner in responding to the problem. RBD further states that FEMA "ran formaldehyde tests on unoccupied trailers in its inventory beginning in March 2006, the month FEMA . . . learned of the formaldehyde concern." Id. Tellingly, this statement is completely devoid of any citation to testimony or other factual support. RBD's arguments are irrelevant to the issue of whether FEMA was a sophisticated purchaser or user and are at times unsupported by fact. The fact that RBD's arguments are so reaching belies the weakness of its position.

Based on the foregoing reasons, there exist genuine issues as to material facts regarding whether FEMA was a sophisticated purchaser or sophisticated user of travel trailers such that RBD was exempt, under section 9:2800.57(B)(2) of the LPLA, from providing FEMA warnings of the dangers of formaldehyde exposure in use of its travel trailers.  Thus, RBD's Motion for Partial Summary Judgment should be denied as a matter of law.

### B. RBD has failed to show as a matter of law that Morgan was a sophisticated user of travel trailers.

RBD has not shown, and cannot show, that Morgan Buildings and Spas ("Morgan") was a sophisticated purchaser or user of travel trailers such that RBD was exempt from its duty to warn Morgan and the intended end-users of the trailers of the potential for exposure to dangerous levels of formaldehyde in the travel trailers.  RBD argues that Morgan was a sophisticated user of travel trailers as emergency housing for disaster victims because Morgan had been "in the business of procuring travel trailers for FEMA for several years."  See Rec. Doc. 13241-1 at 12.  However, Morgan testified that it did not have any knowledge of any potential issues with formaldehyde in the travel trailers until approximately February 2006.  See 2009 Deposition of James Schilligo, 47:1–48:5, attached as Exhibit I.  In fact, prior to this litigation, Morgan had never received notice of any complaints from occupants of the travel trailers it supplied for any disaster up through those provided after Hurricane Charlie in 2004.  See id. at 69:16–19, attached as Exhibit I.

In further support of its theory that Morgan was a sophisticated user or purchaser of travel trailers, RBD relies on the request for proposal process whereby Morgan

provided specifications to RBD for the travel trailers and the fact that Morgan had an opportunity to inspect such units upon delivery. See Rec. Doc. 13241-1 at 12.

However, Morgan's specifications did not in any way address the safety requirements of the travel trailers other than to specify that they required grab handles for handicapped occupants. See RBD 33' FH Specifications, included as Exhibit 4 to the 2010 Deposition of Randall Rush, attached as Exhibit J.  Morgan relied on the manufacturer, RBD, for ensuring the safety of the travel trailers in conformance with their intended use. See 2009 Deposition of David Garratt, 157:9 – 158:4, attached as Exhibit A.  In fact, the specifications Morgan provided to RBD did not address any of the warnings necessary for exposure to dangerous chemicals.  Despite the fact that the specifications did not address the need for any such warnings, RBD still saw fit to provide such warnings on potential exposure to other dangerous chemicals such as LP gas and carbon monoxide. See 2010 Deposition of Randall Rush, 124:13–16, attached as Exhibit J.  Thus, RBD had a duty to warn Morgan and the end-users of the dangers of exposure to formaldehyde and that the specifications Morgan had provided were unsuitable for the disclosed, intended use of the trailers:  to provide housing to victims of disasters.

RBD further argues that Morgan "was familiar with the industry practices of travel trailer manufacturing" and "was well versed in all aspects of the units it purchased." See Rec. Doc. 13241-1 at 12.  However, RBD fails to offer any factual support for this broad-sweeping statement of Morgan's alleged knowledge.  In fact, the record shows that Morgan has never manufactured travel trailers or mobile homes. See 2009 Deposition of James Schilligo, 21:18–22:3, attached as Exhibit I.

11

Moreover, based on the *Bordelon* and *Swope* decisions, any general knowledge Morgan may have acquired through its prior experience in providing travel trailers for use by disaster victims is not enough to qualify Morgan as a sophisticated user. See Bordelon, 726 So.2d at 955 ("A sophisticated user possesses more than a general knowledge of the product and how it is used."); Swope, 281 F.3d at 206 (holding that experience with a device does not necessarily equate to knowledge). Furthermore, the Fifth Circuit has held that "[w]hether a user is sophisticated is ordinarily a question of fact for the jury to decide." Mozeke, 933 F.2d at 1297. Thus, given that there are genuine issues of material fact over whether Morgan can be considered a sophisticated user or purchaser, such issue is inappropriate for summary judgment.

## II. RBD HAD A CONTINUING DUTY TO WARN TO WARN THE PLAINTIFF OF THE DANGERS OF FORMALDEHYDE IN THE TRAVEL TRAILER

RBD argues that it did not owe a continuing duty to Plaintiff to warn her about the dangers and risks of formaldehyde in the travel trailer at issue because "RBD never acquired any actual or constructive knowledge of any alleged health hazards relating to formaldehyde and the use of its trailers until this litigation began." See Rec. Doc. 13241-1 at 14.

However, "[i]n all cases of products liability, including those of failure to warn, a manufacturer is presumed to know of its product's potential hazards." Marshall v. Beno Truck Equip., Inc., 481 So.2d 1022, 1030 (La. App. 1st Cir. 1985). In *Chappuis v. Sears Roebuck & Co.*, the Louisiana Supreme Court held that, "when the danger is known to the manufacturer and cannot justifiably be expected to be within the knowledge of users generally, the manufacturer must take reasonable steps to warn the user." Chappuis v.

12

Sears Roebuck & Co., 358 So.2d 926, 930 (La. 1978).  Furthermore, "[t]he user must be warned concerning the potential dangers of a product, whether he be the purchaser or not, and it is the user who should be furnished instructions or warnings intended to prevent misuse." Marshall, 481 So.2d at 1030.

Thus, as a manufacturer of a product that posed serious health risks to its user, RBD is deemed to be an expert on its product and knew or should have known of these dangers.  See id.  In fact, RBD had actual knowledge of the dangers of formaldehyde-emitting components in its travel trailers as early as 2004 through the material safety data sheets ("MSDS") provided to RBD regarding each component by the component manufacturers.  See 2010 Deposition of Randall Rush, 213:3–215:11, attached as Exhibit J.  The MSDS for the urea-formaldehyde bonded wood products contained in RBD's travel trailers clearly warn that the products release formaldehyde, which may cause "eye, skin and respiratory irritation."  Id.  Even if possession of the MSDS is not deemed to constitute actual knowledge by RBD, it certainly constitutes constructive knowledge of the dangers of formaldehyde in its travel trailers as specifically admitted by RBD itself. See id. at 217:25–218:10.

Although RBD asserts the lack of any "verifiable" complaints regarding formaldehyde in any of the travel trailers manufactured by RBD since its inception in 1999 is evidence of its alleged lack of knowledge (see Rec. Doc. 13241-1 at 14), such assertion does not mitigate or destroy RBD's actual knowledge (through the MSDS) or its constructive knowledge (as imposed by law) of the dangers of exposure to formaldehyde emitting components in the travel trailers.

RBD further argues that it did not owe Plaintiff a continuing duty to warn her of the dangers of formaldehyde in its travel trailers because RBD did not learn of any such dangers after the product left its control.  <u>See</u> Rec. Doc. 13241-1 at 14.  However, RBD learned of the issues of formaldehyde in its travel trailers in 2006 around the time the first article in the Wall Street Journal came out, which was after the delivery of Plaintiff's trailer to Morgan in early December 2005 and at or after Plaintiff began occupying the trailer in February 2006.  <u>See</u> 2009 Deposition of James Schilligo, 114:11–115:6, attached as Exhibit I.

Thus, genuine issues of material facts exist regarding whether RBD owed a continuing duty to warn Plaintiff, and RBD's motion for partial summary judgment must fail as a matter of law.

## **CONCLUSION**

Based upon the foregoing reasons, Plaintiff Earline Castanel respectfully requests that this Court deny Defendant Recreation By Design, LLC's Partial Motion for Summary Judgment on the Failure to Warn Claim.


Respectfully Submitted,


**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
         GERALD E. MEUNIER, #9471
         **PLAINTIFFS' CO-LIAISON COUNSEL**

14

Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:     504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:     504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
Dennis Reich, Texas #16739600

**CERTIFICATE OF SERVICE**

  I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on April 16, 2010.


          s/Gerald E. Meunier
          GERALD E. MEUNIER, #9471