1

1           UNITED STATES DISTRICT COURT

2            DISTRICT OF LOUISIANA

3             NEW ORLEANS DIVISION

4    In Re:  FEMA Trailer   )

5    Formaldehyde Products  ) MDL No. 1873

6    Liability Litigation   )

7

8                      Washington, D.C.

9                      Tuesday, July 7, 2009

10   Videotape Deposition of DAVID EDWARD GARRATT, called

11   for examination by counsel for Plaintiffs in the

12   above-entitled matter, the witness being duly sworn

13   by CHERYL A. LORD, a Notary Public in and for the

14   District of Columbia, taken at the offices of NELSON

15   MULLINS RILEY & SCARBOROUGH LLP, 101 Constitution

16   Avenue N.W., Suite 900, Washington, D.C., at 9:07

17   a.m., and the proceedings being taken down by

18   Stenotype by CHERYL A. LORD, RPR, CRR.

19

20

21

22

EXHIBIT
E

38

1          In paragraph -- or -- I'm sorry -- section

2     4, which is, again, the next section of your

3     declaration, you say:  I became aware of a possible

4     systemic formaldehyde problem involving EHUs in May,

5     June 2006, following the release of a Sierra Club

6     report recording high formaldehyde readings in

7     occupied EHUs.

8          Who brought to your attention that Sierra

9     Club report?

10         A.    A member of my staff named Kevin Souza.

11         Q.    And what is Mr. Souza's title?

12         A.    At the time, he was the chief of our IA

13    policy branch.

14         Q.    And IA stands for?

15         A.    I'm sorry.

16         Individual assistance.

17         Q.    You go on to state that:  In June 2006,

18    the disaster assistance director assumed FEMA

19    responsibility for coordinating the agency response

20    to formaldehyde-related concerns in EHUs.

21         How did the directorate assume FEMA

22    responsibility for coordination?

Garratt, David - Fema 07/07/09

208

1    far more expensive to build.

2         So a number of reasons I think contributed

3    to the use of travel trailers and their popularity at

4    least within a certain segment of the disaster

5    population on those small properties and wanted to

6    stay on their property and rebuild their home.

7         Q.    Am I also correct that during the prior

8    natural disaster events that we talked about prior to

9    Hurricane Katrina, can we assume that there were

10   young children and elderly people and stay-at-home

11   moms living in those travel trailers as well?

12        A.    I think that's safe to assume.

13        Q.    And again you're not aware of any

14   formaldehyde claims by any of those people in those

15   prior disasters?

16        A.    I'm not personally aware of any.

17        Q.    When you were working with the CDC after

18   Hurricane Katrina, did you become aware of the

19   results of a study that they did in Hancock County,

20   Mississippi, of children's pre-Katrina and

21   post-Katrina doctor visits?

22        A.    Not by -- not by that reference.