UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Castanel, et. al. v Recreation by Design, LLC, et. al* | * | |
| Docket No. 09-3251 | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ON CAUSATION**

Plaintiff Earline Castanel responds to Defendant's Recreation by Design, LLC's Motion for Summary Judgment regarding causation, and, in support would show:

**I.
FACTUAL BACKGROUND**

Plaintiff Earline Castanel has asserted claims against Recreation By Design, LLC, under the Louisiana Products Liability Act ("LPLA"). *See* Plaintiff's Complaint for Damages, R. Doc. 1, Docket No. 09-3251, P. 25.  Specifically, Ms. Castanel claims that the Recreation By Design trailer she occupied from February, 2006, until March, 2007, due to its construction, composition, design, and lack of warnings, exposed her to dangerous levels of formaldehyde. *See* Plaintiff's First Supplemental and Amended Complaint, R. Doc. 9401, p. 3.  As a result, Ms. Castanel's rhinosinusitis and related symptoms associated with formaldehyde exposure were exacerbated, producing mental anguish and a fear of cancer. *See* Exhibit B, p. 6.

1

Defendant now claims entitlement to summary based on its erroneous conclusions that Dr. Williams' general causation opinion and Dr. Miller's specific causation opinion are insufficient to establish fact issues. The facts Defendant lists in its Statement of Uncontested Material Facts as relates to Dr. Williams and Dr. Miller are completely false. *See* Statements # 10, 11, 13, 14. Dr. Williams' affidavit included all facts necessary to establish general causation, and Dr. Miller's affidavit presented all the requisites for specific causation. Defendant's motion for summary judgment should therefore be denied.

## II.
## EVIDENCE

Exhibit A    Affidavit of Dr. Patricia Williams

Exhibit B    Affidavit of Dr. Lawrence G. Miller

## III.
## ARGUMENT AND AUTHORITIES

**A.**    Summary Judgment Standard

Summary judgment is proper only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp, 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, Gillis v. Louisiana, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. Hunt v. Rapides Healthcare System, L.L.C., 277 F.3d 757, 764 (5th Cir. 2001). A factual dispute where the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party precludes a grant of summary judgment. Smith v. Amedisys, 298 F.3d 434, 440 (5th Cir. 2002). To prevail against a motion for summary

judgment, the party supporting the existence of a material fact issue need only provide sufficient evidence to present the factual dispute to the fact-finder for resolution. First Nat. Bank of Ariz. V. Cities Service Co., 391 U.S. 253, 288-89 (U.S. 1968). The disputed fact issue need not be resolved conclusively in favor of the party asserting its existence. Id,

B.   Summary judgment should be denied because Dr. Williams raises a fact issue as to general causation.

Defendant speciously claims that Dr. Williams' testimony does not establish general causation as to the exacerbation of Ms. Castanel's rhinosinusitis. Because rhinosinusitis is encompassed in the term "upper respiratory tract damage" as used in Dr. Williams' general causation opinion, however, Defendant's argument, based on its overly literal interpretation of Dr. Williams' testimony, must fail. *See* Hunt, 277 F.3d at 764.

Dr. Patricia Williams, Plaintiff's expert toxicologist, addresses general causation in her affidavit. In the section entitled "General Causation Opinion," Dr. Williams specifically states that "[a] cause-effect relationship exists between formaldehyde and upper respiratory tract damage. . ." *See* Exhibit A, p. 70. Despite Defendant's feigned ignorance, the term "upper respiratory tract damage" unquestionably includes rhinosinusitis.

Dr. Williams explains that chronic "rhinosinusitis" is "an inflammatory disorder affecting the nose and paranasal sinuses." *See* Exhibit A, p. 32. Medline Plus, an online service of the U.S. National Library of Medicine and the National Institutes of Health, defines rhinosinusitis as "inflammation of the mucosa membranes of the nose and one or more of the paranasal sinuses." If the fact that the nose is part of the upper respiratory system were not sufficiently self-evident, Dr. Lawrence Miller includes rhinosinusitis in his discussion of the effects of formaldehyde on the upper respiratory tract. *See* Exhibit B, p. 5. He further explains the biological mechanism by

3

which formaldehyde causes rhinosinusitis as "cytotoxic effects on the nasal and respiratory epithelium. . ." *See* Exhibit B, p. 5.  Dr. Williams' use of the term "upper respiratory tract damage" thus necessarily encompasses rhinosinusitis.  Because she specified that a cause-effect relationship exists, Defendant's argument distinguishing a causal relationship from an association is irrelevant.  Defendant has thus failed to negate Plaintiff's showing of general causation, and is not, therefore, entitled to summary judgment. *See* Amburgey, 936 F.2d at 809.

C. <u>Summary judgment should be denied because Dr. Miller raises a fact issue as to general causation.</u>

Defendant erroneously claims that Dr. Miller's specific causation opinion did not identify the level at which formaldehyde exposure is harmful, or the levels to which Ms. Castanel was exposed.  Defendant's argument fails, however, because Dr. Miller in fact addressed both requisites of specific causation in a toxic tort context.  Defendant's motion for summary judgment should therefore be denied. *See* Amburgey, 936 F.2d at 809.

1. *Dr. Miller identified the standards he relied on for determination of the harmful levels of formaldehyde exposure.*

For determining the harmful level of formaldehyde exposure, Dr. Miller relied on standards set by the Agency for Toxicology and Disease Registry (ATSDR). *See* Exhibit B, p. 5.  He used the Minimal Risk Levels (MRL's) specific to formaldehyde. *See* Exhibit B, p. 5.  His articulation of this standard establishes a fact issue sufficient to allow Ms. Castanel to proceed to trial. *See* First Nat. Bank of Ariz., 391 U.S. at 288-89.

Defendant does not argue that the ATSDR standard is the incorrect standard for Ms. Castanel's case.  Its argument is that Dr. Miller did not explain the standard sufficiently.  On

summary judgment, however, the evidence required to establish a fact issue need only be sufficient to present differing versions of a fact issue to the jury. Id.

    2. *Dr. Miller provided an estimate of Ms. Castanel's formaldehyde exposure level.*

Dr. Miller provided an estimate of the formaldehyde concentration to which Ms. Castanel was exposed sufficient to avoid summary judgment. The standard for proving causation in toxic tort cases is "relatively lenient." *See* Slaughter v. Southern Talc Co.*,* 949 F.2d 167, 173 (5th Cir.1991). Although specific causation in a toxic tort case requires evidence of the levels to which the plaintiff was exposed, precise concentration measurements of the chemical are not required. *See* Curtis; 174 F.3d 670-71. "Circumstantial evidence can be used to establish injurious exposure." O'Neill v. Seariver Maritime, Inc**.,** 246 Fed.Appx. 278, 280 (5th Cir. 2007).

In determining Ms. Castanel's exposure level, Dr. Miller relied on the data obtained by the Center for Disease Control (CDC). *See* Exhibit B, p. 4. In July of 2008, the CDC conducted a random sampling of formaldehyde levels in 519 FEMA trailers. *See* Exhibit B, p. 4. Using its direct measurements, the CDC reported a geometric mean of 77 ppb formaldehyde, with variations up to 590 ppb. *See* Exhibit B, p. 4. Dr. Miller noted that some trailers from every manufacturer measured levels greater than 100 ppb. Exhibit B, p. 4. Recognizing that the CDC considers its data to underestimate the formaldehyde levels of the trailers when in use, Dr. Miller could reasonably conclude that Ms. Castanel's formaldehyde exposure exceeded the MRL's for both intermediate (30 ppb) and chronic (8 ppb) exposure duration. Exhibit B, p. 4.

    3. *Dr. Miller provided exposure standards and concentration levels sufficient to survive summary judgment.*

Dr. Miller identified the ATSDR's MRL's for formaldehyde as the standard he used to determine the concentration above which formaldehyde exposure is harmful. He looked to the

5

CDC's formaldehyde measurements from a multitude of FEMA trailers to estimate Ms. Castanel's exposure level.  Dr. Miller's testimony thus establishes both exposure components required to prove specific causation. Curtis, 174 F.3d at 670.  Defendant's motion for summary judgment as to specific causation should therefore be denied. Amedisys, 298 F.3d 440.

## IV.
## CONCLUSION

Defendant is not entitled to summary judgment on either general or specific causation. Dr. Williams quite succinctly established general causation with her statement that a cause-effect relationship exists between formaldehyde and upper respiratory tract damage.  Dr. Miller demonstrated specific causation by relying on ATSDR standards for formaldehyde to ascertain harmful levels, and by using CDC measurements from a random sampling of FEMA trailers to estimate Ms. Castanel's particular exposure levels.  Defendant's motion for summary judgment should therefore be denied.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE**
**PRODUCT LIABILITY LITIGATION**

BY: s/Gerald E. Meunier
   GERALD E. MEUNIER, #9471
   **PLAINTIFFS' CO-LIAISON COUNSEL**
   Gainsburgh, Benjamin, David, Meunier &
   Warshauer, L.L.C.
   2800 Energy Centre, 1100 Poydras Street
   New Orleans, Louisiana 70163
   Telephone: 504/522-2304
   Facsimile: 504/528-9973
   gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:     504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
DENNIS REICH, Texas # 16739600

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                            s/Gerald E. Meunier
                                            GERALD E. MEUNIER, #9471