UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  FEMA TRAILER FORMALDEHYDE
PRODUCTS LIABILITY LITIGATION

MDL NO. 1873

SECTION N(5)

JUDGE ENGELHARDT

MAGISTRATE CHASEZ

THIS DOCUMENT RELATES TO:  All Cases

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# EXHIBIT A

**THIRD SUPPLEMENTAL AND ADMINISTRATIVE MASTER COMPLAINT
(REC. DOC. 4486)**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

### NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873 <br><br> SECTION "N-4" <br><br> JUDGE ENGELHARDT <br> MAG. JUDGE ROBY |

**THIS DOCUMENT IS RELATED TO ALL CASES**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## THIRD SUPPLEMENTAL AND AMENDED ADMINISTRATIVE MASTER COMPLAINT

Plaintiffs through undersigned counsel respectfully supplement and amend their Original, First, and Second Supplemental and Amended Administrative Master Complaints, herein, in the following respects:

## I. INTRODUCTION

1.      This Complaint of certain persons of the full age of majority, on behalf of themselves and, in some instances, on behalf of individuals who lack the capacity to sue individually (hereinafter, "Named Plaintiffs"), who have been named in any Complaint which has been or will be consolidated or cumulated herein.  For purposes of this Amended Administrative Master Complaint, the identities of all Named Plaintiffs and the specific Manufacturing and No-Bid Contractor Defendants against whom each Named Plaintiff is making claims, as outlined herein, are set forth in the previously filed Complaints which

1

are or will be consolidated in this MDL, and may be found in the docket report of this matter.

2.  For purposes of clarity, Named Plaintiffs herein specifically delete all class action allegations pled in the earlier Administrative Master Complaint (hereinafter "AMC"), as amended, which allegations were set forth in paragraphs 83-97 (Plaintiffs' motion for class action certification having been denied by the Court in its Order and Reasons entered December 29, 2008, Rec. Doc. 1014) and this AMC shall set forth in newly numbered paragraphs all pertinent allegations.

3.  Named Plaintiffs submit this Administrative Master Complaint pursuant to the Court's direction and request.

4.  This AMC is being filed pursuant to the Court's Pretrial Order No. 36 (Rec. Doc. 1386), as amended by Order of the Court entered August 19, 2009 (Rec. Doc. 2760).

5.  This AMC incorporates the factual and legal allegations being presented on behalf of Plaintiffs herein, in order to streamline motion practice and facilitate the disposition of common issues.  This AMC only supersedes the allegations in other actions filed in, or transferred into, this MDL to the extent these allegations present common issues which now will be disposed of through the AMC.

6.  This AMC otherwise does not merge the actions in this MDL into a single cause, or alter the substantive rights of any party to these actions.

7.  This AMC therefore shall not be given the same effect as a traditional complaint, but shall be considered as an administrative device to aid efficiency and economy, as provided for in Rule 42(a) of the Federal Rules of Civil Procedure.

## II. PARTIES

8.   Each Named Plaintiffs is, for purposes of 28 U.S.C. §1332, a citizen of a state other than
     the state(s) in which Defendants are citizens.

9.   Named Plaintiffs are those individuals and entities listed in each and every Complaint or
     action  filed in, or transferred into, this MDL, which is incorporated herein as if set forth
     *in extenso*, who all were provided emergency housing units ("EHU's"), following
     hurricanes Katrina and Rita in 2005.

10.  Defendant **Allen Camper Mfg. Company, Inc.** ("Allen") is upon information and belief
     an Oklahoma corporate entity which conducts business in the States of Louisiana,
     Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers
     or housing units as defined below pursuant to contracts with FEMA for use in the States
     of Louisiana, Mississippi, Alabama, and Texas.

11.  Defendant **Alliance Homes, Inc. d/b/a Adrian Homes** ("Alliance") is upon information
     and belief a Georgia corporate entity which conducts business in the States of Louisiana,
     Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers
     or housing units as defined below pursuant to contracts with FEMA for use in the States
     of Louisiana, Mississippi, Alabama, and Texas.

12.  Defendant **American Camper Manufacturing, LLC d/b/a  AMERI-CAMP** ("AMERI-
     CAMP") is upon information and belief a Georgia corporate entity which conducts
     business in the States of Louisiana, Mississippi, Alabama, and Texas, and which
     manufactured and supplied FEMA trailers or housing units as defined below pursuant to

3

contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

13.     Defendant **American Homestar Corporation** ("American") is upon information and belief a Texas corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

14.     Defendant **American International Group** is, upon information and belief, a foreign insurance corporation licensed to do and doing business in the States of Louisiana, Mississippi, Alabama, and Texas which, at all times relevant herein, had in force and effect a policy or policies of commercial general liability insurance and/or Pollution Legal Liability and/or Excess Liability providing coverage to unnamed, bankrupt defendants **Fleetwood Canada, Ltd., Fleetwood Enterprises, Inc., Fleetwood Homes of North Carolina, Inc., Fleetwood Homes of Georgia, Inc., Fleetwood Travel Trailers of Maryland, Inc.** (collectively, "Fleetwood") and **Monaco Coach Corporation** ("Monaco") for the risks involved in the incident sued upon herein, including coverage for these defendants, and by the terms of which said defendant insurer is liable to Louisiana plaintiffs and may be sued under the Louisiana Direct Action Statute, La. R.S. 22:1269.

15.     Defendant **American International Specialty Lines** is, upon information and belief, a foreign insurance corporation licensed to do and doing business in the States of Louisiana, Mississippi, Alabama, and Texas which, at all times relevant herein, had in

4

force and effect a policy or policies of commercial general liability insurance and/or
Pollution Legal Liability and/or Excess Liability providing coverage to unnamed,
bankrupt defendants Fleetwood and Monaco for the risks involved in the incident sued
upon herein, including coverage for these defendants, and by the terms of which said
defendant insurer is liable to Louisiana plaintiffs and may be sued under the Louisiana
Direct Action Statute, La. R.S. 22:1269.

16.     Defendant **Arch Specialty Insurance Corp.** is, upon information and belief, a foreign
insurance corporation licensed to do and doing business in the States of Louisiana,
Mississippi, Alabama, and Texas which, at all times relevant herein, had in force and
effect a policy or policies of commercial general liability insurance providing coverage
for unnamed, bankrupt defendant, **R-Vision, Inc.** ("R-Vision"), for the risks involved in
the incident sued upon herein, including coverage for this defendant, and by the terms of
which said defendant insurer is liable to Louisiana plaintiffs and may be sued under the
Louisiana Direct Action Statute, La. R.S. 22:1269.

17.     Defendant **Athens Park Homes, L.L.C.** ("Athens") is upon information and belief a
Texas limited liability company which conducts business in the States of Louisiana,
Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers
or housing units as defined below pursuant to contracts with FEMA for use in the States
of Louisiana, Mississippi, Alabama, and Texas.

18.     Defendant **Cavalier Home Builders, LLC** is upon information and belief a Delaware
corporate entity which conducts business in the States of Louisiana, Mississippi,
Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing

5

units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

19.    Defendant **Cavalier Homes Inc.** (collectively with Cavalier Home Builders, LLC, hereinafter "Cavalier") is upon information and belief a Delaware corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

20.    Defendant **Champion Enterprises, Inc.** ("Champion Enterprises") is upon information and belief a Michigan corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

21.    Defendant **Champion Home Builders Co.** ("Champion") is upon information and belief a Michigan corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

22.    Defendant **Circle B Enterprises, Inc.** ("Circle B") is upon information and belief a Georgia corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing

6

units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

23.     Defendant **CMH Manufacturing, Inc.** ("CMH") is upon information and belief a Tennessee corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

24.     Defendant **Coachmen Industries, Inc.** is upon information and belief an Indiana corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

25.     Defendant **Coachmen Recreational Vehicle Company, LLC** is upon information and belief an Indiana limited liability company which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

26.     Defendant **Coachmen Recreational Vehicles of Georgia, LLC** (collectively with Coachmen Industries, Inc. and Coachmen Recreational Vehicle Company, LLC, hereinafter "Coachmen") is upon information and belief an Indiana limited liability company which conducts business in the States of Louisiana, Mississippi, Alabama, and

Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

27. Defendant **Cruiser RV, LLC** ("Cruiser") is upon information and belief an Indiana limited liability company which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

28. Defendant **Crum & Forster Specialty Insurance** is a foreign insurance corporation licensed to do and doing business in the States of Louisiana, Mississippi, Alabama, and Texas which, at all times relevant herein, had in force and effect a policy or policies of commercial general liability insurance providing coverage for the risks involved in the incident sued upon herein, including coverage for unnamed, bankrupt defendant, **Pilgrim International, Inc.** ("Pilgrim"), and by the terms of which said defendant insurer is liable to Louisiana plaintiffs and may be sued under the Louisiana Direct Action Statute, La. R.S. 22:1269.

29. Defendant **Damon Corp.** ("Damon") is upon information and belief a foreign corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

8

30.     Defendant **Del-Jen, Inc.** ("Del-Jen") is upon information and belief a California corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

31.     Defendant **Design Homes, Inc.** ("Design Homes") is upon information and belief a Wisconsin corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

32.     Defendant **Destiny Industries, LLC** ("Destiny") is upon information and belief a Georgia limited liability company which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

33.     Defendant **Dreams R.V. Sales, Inc.** ("Dreams R.V.") is upon information and belief a Florida corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

34.     Defendant **DS Corp.** ("D.S") is upon information and belief an Indiana limited liability company which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

35.     Defendant **DS Corp. d/b/a CrossRoads RV** ("D.S. Corssroads") is upon information and belief an Indiana which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

36.     Defendant **Dutch Housing, Inc. d/b/a Champion Homes** ("Dutch") is upon information and belief a Michigan corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

37.     Defendant **Dutchmen Manufacturing, Inc.** ("Dutchmen") is upon information and belief a Delaware corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

10

38.     Defendant **Fairmont Homes, Inc.** ("Fairmont") is upon information and belief an Indiana corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

39.     Defendant **Forest River, Inc.** ("Forest River") is upon information and belief an Indiana corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

40.     Defendant **Four Winds International Corporation** ("Four Winds") is upon information and belief a Delaware corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

41.     Defendant **Frontier RV, Inc.** ("Frontier") is upon information and belief a Texas corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

11

42. Defendant **Gibraltar Insurance Co.** is, upon information and belief, a foreign insurance corporation licensed to do and doing business in the States of Louisiana, Mississippi, Alabama, and Texas which, at all times relevant herein, had in force and effect a policy or policies of commercial general liability insurance providing coverage to Fleetwood for the risks involved in the incident sued upon herein, including coverage for this defendant, and by the terms of which said defendant insurer is liable to Louisiana plaintiffs and may be sued under the Louisiana Direct Action Statute, La. R.S. 22:1269.

43. Defendant **Giles Family Holdings, Inc.** is upon information and belief a Tennessee corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

44. Defendant **Giles Industries, Inc**. is upon information and belief an Alabama corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

45. Defendant **Giles Industries of Tazewell, Incorporated** (collectively with Giles Family Holdings, Inc. and Giles Industries, Inc., hereinafter "Giles") is upon information and belief a Tennessee corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers

12

or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

46.     Defendant **Gulf Stream Coach, Inc.** ("Gulf Stream") is upon information and belief an Indiana corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

47.     Defendant **Heartland Recreational Vehicles, LLC** ("Heartland") is upon information and belief an Indiana limited liability company which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

48.     Defendant **Homes of Merit, Inc.** ("Merit") is upon information and belief a Florida corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in those states.

49.     Defendant **Horton Homes, Inc.** ("Horton") is upon information and belief a Georgia corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

13

50.     Defendant **Hy-Line Enterprises, Inc. n/k/a FRH, Inc.** ("Hy-Line") is upon information
        and belief an Indiana corporate entity which conducts business in the States of Louisiana,
        Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers
        or housing units as defined below pursuant to contracts with FEMA for use in the States
        of Louisiana, Mississippi, Alabama, and Texas.

51.     Defendant **Indiana Building Systems, LLC d/b/a Holly Park** ("IBS") is upon
        information and belief an Indiana limited liability company which conducts business in
        the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and
        supplied FEMA trailers or housing units as defined below pursuant to contracts with
        FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

52.     Defendant **Insurance Company of the State of Pennsylvania** is a foreign insurance
        corporation licensed to do and doing business in the States of Louisiana, Mississippi,
        Alabama, and Texas which, at all times relevant herein, had in force and effect a policy
        or policies of commercial general liability insurance providing coverage to unnamed,
        bankrupt defendant Monaco for the risks involved in the incident sued upon herein,
        including coverage for this defendant, and by the terms of which said defendant insurer is
        liable to Louisiana plaintiffs and may be sued under the Louisiana Direct Action Statute,
        La. R.S. 22:1269.

53.     Defendant **Insurco, Ltd.** is, upon information and belief, a foreign insurance corporation
        licensed to do and doing business in the States of Louisiana, Mississippi, Alabama, and
        Texas which, at all times relevant herein, had in force and effect a policy or policies of
        commercial general liability insurance providing coverage to unnamed, bankrupt

defendants **Patriot Homes, Inc. and Patriot Homes of Texas, L.P.** (collectively "Patriot") for the risks involved in the incident sued upon herein, including coverage for these defendants, and by the terms of which said defendant insurer is liable to Louisiana plaintiffs and may be sued under the Louisiana Direct Action Statute, La. R.S. 22:1269.

54. Defendant **Jayco, Inc.** ("Jayco") is upon information and belief an Indiana corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

55. Defendant **Jayco Enterprises, Inc.** ("Jayco Enterprises") is upon information and belief an Indiana corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

56. Defendant **Keystone Industries, Inc.** ("Keystone Industries") is upon information and belief an Indiana corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

57. Defendant **Keystone RV Company** ("Keystone") is upon information and belief a Delaware corporate entity which conducts business in the States of Louisiana,

Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers
or housing units as defined below pursuant to contracts with FEMA for use in the States
of Louisiana, Mississippi, Alabama, and Texas.

58.     Defendant **Komfort Corp**. ("Komfort") is upon information and belief a Delaware
        corporate entity which conducts business in the States of Louisiana, Mississippi,
        Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing
        units as defined below pursuant to contracts with FEMA for use in the States of
        Louisiana, Mississippi, Alabama, and Texas.

59.     Defendant **KZRV, LP** ("KZRV") is upon information and belief an Indiana corporate
        entity, which conducts business in the States of Louisiana, Mississippi, Alabama, and
        Texas, and which manufactured and supplied FEMA trailers or housing units as defined
        below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi,
        Alabama, and Texas.

60.     Defendant **Lakeside Park Homes, Inc.** ("Lakeside") is upon information and belief a
        Georgia corporate entity which conducts business in the States of Louisiana, Mississippi,
        Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing
        units as defined below pursuant to contracts with FEMA for use in the States of
        Louisiana, Mississippi, Alabama, and Texas.

61.     Defendant **Layton Homes Corp.** ("Layton") is upon information and belief an Indiana
        corporate entity which conducts business in the States of Louisiana, Mississippi,
        Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing

units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

62.  Defendant **Lexington Homes** ("Lexington") is upon information and belief a Mississippi corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

63.  Defendant **Lexington Insurance Company** is a foreign insurance corporation licensed to do and doing business in the States of Louisiana, Mississippi, Alabama, and Texas which, at all times relevant herein, had in force and effect a policy or policies of excess liability insurance providing coverage for the risks involved in the incident sued upon herein, including coverage for unnamed, bankrupt defendants R-Vision and Monaco, and by the terms of which said defendant insurer is liable to Louisiana plaintiffs and may be sued under the Louisiana Direct Action Statute, La. R.S. 22:1269.

64.  Defendant **Liberty Homes Inc.** ("Liberty") is upon information and belief an Indiana corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

65.  Defendant **Liberty Insurance Corp. Liberty Insurance Corp. and/or Liberty Mutual Insurance Corporation** is, upon information and belief, a foreign insurance corporation

licensed to do and doing business in the States of Louisiana, Mississippi, Alabama, and Texas which, at all times relevant herein, had in force and effect a policy or policies of commercial general liability insurance providing coverage to unnamed, bankrupt defendant R-Vision for the risks involved in the incident sued upon herein, including coverage for these defendants, and by the terms of which said defendant insurer is liable to Louisiana plaintiffs and may be sued under the Louisiana Direct Action Statute, La. R.S. 22:1269.

66.     Defendant **Liberty RV & Marine, Inc.** ("Liberty RV") is upon information and belief a Florida corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

67.     Defendant **Mitchell County Industries, LLC.** ("Mitchell") is upon information and belief a Georgia limited liability company which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

68.     Defendant **Morgan Buildings & Spas, Inc.** ("Morgan") is upon information and belief a Nevada corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas. Specifically, as relates to Louisiana

18

plaintiffs, Morgan is a manufacturer under La. R. S. 9:2800.51, *et. seq.* because it labeled or otherwise held itself out as the manufacturer of FEMA trailers or housing units. In addition, Morgan received a contract from the United States to identify, select and procure temporary housing units for those displaced by Hurricanes Katrina and Rita, and in this capacity also is a "Procurement Defendant".

69.     Defendant **Morgan Building Systems, Inc.** ("Morgan Systems") is upon information and belief an Illinois corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas. Specifically, as relates to Louisiana plaintiffs, Morgan is a manufacturer under La. R. S. 9:2800.51, *et. seq.* because it labeled or otherwise held itself out as the manufacturer of FEMA trailers or housing units. In addition, Morgan received a contract from the United States to identify, select and procure temporary housing units for those displaced by Hurricanes Katrina and Rita, and in this capacity also is a "Procurement Defendant".

70.     Defendant **Murillo Modular Group, LTD** ("Murillo") is upon information and belief a Texas corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

71.     Defendant **Northwood Manufacturing, Inc.** ("Northwood") is upon information and belief an Oregon corporate entity which conducts business in the States of Louisiana,

19

Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

72.    Defendant **Oak Creek Homes, L.P.** is upon information and belief a Texas limited partnership which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

73.    Defendant **Oak Creek Homes, Inc.** (collectively with Oak Creek Homes, LP, hereinafter "Oak Creek") is upon information and belief a foreign corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

74.    Defendant **Palm Harbor Homes, Inc.** is upon information and belief a Florida corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

75.    Defendant **Palm Harbor Manufacturing, Inc.** is upon information and belief a foreign corporate entity which conducts business in the States of Louisiana, Mississippi,

Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

76.    Defendant **Palm Harbor Albermarle, LLC** (collectively with Palm Harbor Homes, Inc. and Palm Harbor Manufacturing, Inc. hereinafter, "Palm Harbor")  is upon information and belief a foreign limited liability company which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

77.    Defendant **Play'Mor Trailers, Inc.** ("Play'Mor") is upon information and belief a Missouri corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

78.    Defendant **Project Resources, Inc. Of California** ("Project") is upon information and belief a California corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

79.    Defendant **Recreation By Design, LLC** ("Recreation") is upon information and belief an Indiana limited liability company which conducts business in the States of Louisiana,

Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

80. Defendant **Redman Homes Inc. (f/k/a Dutch Homes)** ("Redman") is upon information and belief a Delaware corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

81. Defendant **River Birch Homes, Inc. and/or River Birch Homes, L.L.C.** ("River Birch") is/are upon information and belief an Alabama corporate entity/limited liability company which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

82. Defendant **Scotbilt Homes, Inc.** ("Scotbilt") is upon information and belief a Georgia corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

83. Defendant **Sentry Insurance** is, upon information and belief, a foreign insurance corporation licensed to do and doing business in the States of Louisiana, Mississippi,

Alabama, and Texas which, at all times relevant herein, had in force and effect a policy or policies of commercial general liability insurance providing coverage to unnamed, bankrupt defendant Pilgrim for the risks involved in the incident sued upon herein, including coverage for named defendants, and by the terms of which said defendant insurer is liable to Louisiana plaintiffs and may be sued under the Louisiana Direct Action Statute, La. R.S. 22:1269.

84.    Defendant **Silver Creek Homes, Inc.** ("Silver Creek") is upon information and belief a Texas corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

85.    Defendant **Skyline Corporation** ("Skyline") is upon information and belief an Indiana corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

86.    Defendant **Southern Energy Homes, Inc.** ("Southern Energy") is upon information and belief a Delaware corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

87.     Defendant **Starr Excess Liability Insurance Company, Ltd.** is, upon information and belief, a foreign insurance corporation licensed to do and doing business in the States of Louisiana, Mississippi, Alabama, and Texas which, at all times relevant herein, had in force and effect a policy or policies of commercial general liability insurance providing coverage to unnamed, bankrupt defendant Fleetwood for the risks involved in the incident sued upon herein, including coverage for named defendants, and by the terms of which said defendant insurer is liable to Louisiana plaintiffs and may be sued under the Louisiana Direct Action Statute, La. R.S. 22:1269.

88.     Defendant **Starcraft RV, Inc.** ("Starcraft") is upon information and belief an Indiana corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

89.     Defendant **Stewart Park Homes, Inc.** ("Stewart Park") is upon information and belief a Georgia  corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

90.     Defendant **Sun Valley, Inc.** ("Sun Valley") is upon information and belief an Indiana corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing

units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

91.    Defendant **Sunline Acquisition Company Ltd. d/b/a Sunline Coach Company** ("Sunline") is upon information and belief an Pennsylvania limited liability company, which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

92.    Defendant **Sunnybrook R V, Inc.** ("Sunnybrook") is upon information and belief an Indiana corporate entity which conducts which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

93.    Defendant **Sunray RV, LLC** ("Sunray") is upon information and belief a Tennessee limited liability company which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

94.    Defendant **Superior Homes, LLC** ("Superior") is upon information and belief a South Dakota limited liability company which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers

or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

95. Defendant **Superior RV Manufacturing, Inc.** ("Superior RV") is upon information and belief a Washington corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

96. Defendant **Thor California, Inc., doing business in California as Thor Manufacturing** ("Thor") is upon information and belief a Delaware corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

97. Defendant **Timberland RV Company d/b/a Adventure Manufacturing** ("Timberland") is upon information and belief an Indiana corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

98. Defendant **TL Industries, Inc.** ("TL Industries") is upon information and belief an Indiana corporate entity which conducts business in the States of Louisiana, Mississippi,

Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

99.     Defendant **Townhomes, LLC** ("Townhomes") is upon information and belief a Florida limited liability company which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

100.    Defendant **Vanguard Industries of  Michigan, Inc. (a/k/a Palomino RV)** ("Vanguard") is upon information and belief a Michigan corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

101.    Defendant **Viking Recreational Vehicles, LLC** ("Viking") is upon information and belief a Michigan limited liability company which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

102.    Defendant **Waverlee Homes, Inc.** ("Waverlee") is upon information and belief an Alabama corporate entity which conducts business in the States of Louisiana, Mississippi, Alabama, and Texas, and which manufactured and supplied FEMA trailers

27

or housing units as defined below pursuant to contracts with FEMA for use in the States of Louisiana, Mississippi, Alabama, and Texas.

103.    The defendants named in the preceding paragraphs are collectively referred to hereinafter as the "Manufacturing Defendants".

104.    Defendant **Westchester Surplus Lines Insurance Company** (collectively with American International Group, American International Specialty Lines, Arch Specialty Insurance Corp., Crum & Forster Specialty Insurance, Gibraltar Insurance Co., Insurance Company of the State of Pennsylvania, Insurco, Ltd., Lexington Insurance Company, Liberty Insurance Corp. Liberty Insurance Corp. and/or Liberty Mutual Insurance Corporation, Sentry Insurance, and Starr Excess Liability Insurance Company, Ltd. hereinafter the "Insurer Defendants")  is a foreign insurance corporation licensed to do and doing business in the States of Louisiana, Mississippi, Alabama, and Texas which, at all times relevant herein, had in force and effect a policy or policies of excess liability insurance providing coverage for the risks involved in the incident sued upon herein, including coverage for unnamed, bankrupt defendant, R-Vision, and by the terms of which said defendant insurer is liable to Louisiana plaintiffs and may be sued under the Louisiana Direct Action Statute, La. R.S. 22:1269.

105.    The **Defendant United States of America** is sued herein as acting through the Federal Emergency Management Agency (FEMA), and both are referred to interchangeably herein as the "Federal Government," "Government" and/or "FEMA".

106. **Shaw Environmental, Inc.** ("Shaw"), a Louisiana corporate entity, received a No-Bid contract from the Federal Emergency Management Agency ("FEMA") and was tasked with, amongst other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita in the States of Louisiana, Mississippi, Alabama, and Texas.

107. **Fluor Enterprises, Inc.** ("Fluor"), a California corporate entity with its principal place of business in Irving, Texas, licensed to do business in the States of Louisiana, Mississippi, Alabama, and Texas and in good standing, received a No-Bid contract from FEMA and was tasked with, amongst other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita in the States of Louisiana, Mississippi, Alabama, and Texas.

108. **CH2M Hill Constructors, Inc.** ("CH2M"), a Florida corporate entity with its principal place of business in Englewood, Colorado, licensed to do business in the States of Louisiana, Mississippi, Alabama, and Texas and in good standing, received a No-Bid contract from FEMA and was tasked with, amongst other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita in the States of Louisiana, Mississippi, Alabama, and Texas.

29

109.    **Jacquet Construction Services, LLC** ("Jacquet"), a Louisiana limited liability company
with its principal place of business in Louisiana, licensed to do business in the State of
Louisiana and in good standing, received a No-Bid contract from FEMA and was tasked
with, amongst other things, performing significant functions in the transportation,
delivery, installation, maintenance and repair, de-installation and refurbishment of the
temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita
in the State of Louisiana.

110.    **T-Mac, Inc.** ("T-Mac"), a Louisiana corporate entity with its principal place of business
in Louisiana, licensed to do business in the State of Louisiana and in good standing,
received a No-Bid contract from FEMA and was tasked with, amongst other things,
performing significant functions in the transportation, delivery, installation, maintenance
and repair, de-installation and refurbishment of the temporary housing units provided by
FEMA to the victims of hurricanes Katrina and Rita in the State of Louisiana.

111.    **American Radiation Services, Inc.** ("American Radiation"), a Louisiana corporate
entity with its principal place of business in Louisiana, licensed to do business in the
State of Louisiana and in good standing, received a No-Bid contract from FEMA and was
tasked with, amongst other things, performing significant functions in the transportation,
delivery, installation, maintenance and repair, de-installation and refurbishment of the
temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita
in the State of Louisiana.

112.    **ALCATEC, LLC.** ("ALCATEC"), a Mississippi limited liability company with its
principal place of business in Mississippi, licensed to do business in the States of

Louisiana and in good standing, received a No-Bid contract from FEMA and was tasked with, amongst other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita in the State of Mississippi.

113. **JWK, Corp.** ("JWK"), a Delaware corporate entity with its principal place of business in Mississippi, licensed to do business in the States of Louisiana, Mississippi, Alabama, and Texas and in good standing, received a No-Bid contract from FEMA and was tasked with, amongst other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita in the States of Louisiana, Mississippi, Alabama, and Texas.

114. **Bechtel National, Inc**., ("Bechtel")(collectively with Fluor, Shaw, CH2M, Jacquet, T-Mac, American Radiation, ALCATEC, and, JWK hereinafter the "No-Bid Defendants"), a Nevada corporate entity with its principal place of business in California, licensed to do business in the States of Louisiana, Mississippi, Alabama, and Texas and in good standing, received a No-Bid contract from FEMA and was tasked with, amongst other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita in the State of Mississippi only.

31

115.   **North American Catastrophe Services, Inc.** ("NACS"), a Florida corporate entity, (collectively with the **Morgan** defendants, hereinafter the "Procurement Defendants"), received a contract from the United States to identify, select and procure temporary housing units for those displaced by hurricanes Katrina and Rita.

### III. JURISDICTION AND VENUE

116.   This Court has subject matter jurisdiction over the United States of America and FEMA pursuant to 28 U.S.C. §§1346 and 2671, *et seq..*

117.   Each plaintiff alleges to have suffered damages in an amount in excess of $75,000.00, exclusive of interest and costs.

118.   Pursuant to 28 U.S.C. §1332, this Court has subject matter jurisdiction over the claims asserted herein against the defendant(s) with citizenship other than that of plaintiff(s), because of diversity of citizenship and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

119.   Pursuant to 28 U.S.C. §1367(a), this Court has subject matter jurisdiction over any claims, not otherwise subject to federal jurisdiction, based on the Court's supplemental jurisdiction over these claims.

120.   Certain Manufacturing Defendants, No-Bid Defendants, and Procurement Defendants named herein are subject to the *in personam* jurisdiction of this Court because they do substantial business in the State of Louisiana and within this federal district, and at all times relevant hereto engaged in commerce both in this federal district and in the State of Louisiana.   The remaining Manufacturing Defendants, No-Bid Defendants, and

32

Procurement Defendants do substantial business in the States of Mississippi, and/or Alabama, and/or Texas, and at all times relevant hereto engaged in commerce in federal districts in those States, which on remand from this MDL the courts in those districts would have *in personam* jurisdiction over these defendants.

121. Venue is proper in this district pursuant to 28 U.S.C. §1391 because a large portion of the negligent and wrongful actions of the defendants occurred in the Eastern District of Louisiana.

122. Venue is also proper in this district as to the United States of America and FEMA since individual plaintiffs reside in this district and the acts and/or omissions as to certain of the plaintiffs occurred in this district.

123. Venue is also proper in this district under the provisions of 28 U.S.C. §1407, this Court having been determined the appropriate transferee Court pursuant to the order of the United States Judicial Panel on Multidistrict Litigation, entered October 24, 2007.

## IV. FACTS AND GENERAL ALLEGATIONS

124. The Named Plaintiffs residing or living in travel trailers, park models, and mobile homes (hereinafter referred to as "housing units") in the States of Louisiana, Mississippi, Alabama, and Texas were provided these housing units by FEMA after the landfalls of Hurricane Katrina and/or Rita in September of 2005.

125. Of the housing units at issue, "mobile homes" are generally wider than 8 feet and/or longer than 40 feet, for an average area greater than 320 square feet. They are designed to be used as permanent homes and are defined and regulated by the U.S. Department of

Housing and Urban Development ("HUD"). *See* Center for Disease Control and Prevention, INTERIM FINDINGS ON FORMALDEHYDE LEVELS IN FEMA-SUPPLIED TRAVEL TRAILERS, PARK MODELS, AND MOBILE HOMES, Feb. 29, 2008, at 4, *available at* http://www.cdc.gov/Features/FEMAtrailersFindings/pdf/interim_findings.pdf.

126.   Of the housing units at issue, "travel trailers" are wheel-mounted and generally no larger than 8 feet wide and 40 feet long, for an average area of less than 320 square feet.  They are designed to provide temporary living quarters and are generally considered vehicles, regulated by state transportation authorities rather than housing authorities. *Id.*

127.   Of the housing units at issue, "park models" are larger versions of travel trailers (up to 400 square feet in area).  They are designed for temporary living quarters and, although they are manufactured housing, they are exempted from HUD construction standards, typically regulated by transportation authorities and by manufacturer acceptance of a Voluntary American National Standards Institute ("ANSI") standard applying to their construction. *Id.*

128.   The residence of each Named Plaintiff was rendered unhabitable following Hurricanes Katrina and/or Rita, leaving each plaintiff homeless and in need of housing assistance.

129.   FEMA contracted with the Manufacturing Defendants (*i.e.* All defendants named herein who are neither Insurer nor No-Bid Defendants) to purchase thousands of the housing units, primarily travel trailers, for provision to the Named Plaintiffs as temporary housing.

130. On information and belief, the Manufacturing Defendants expedited production of these housing units, and, on information and belief, resorted to using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing units occupied by each Named Plaintiff containing higher than normal levels of formaldehyde.

131. On information and belief, the housing unit of each Named Plaintiff, including those units which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, deviated from Government specifications pertaining to the safety of the unit as a residence.

132. Named Plaintiffs submit that each and all of the housing units which are at issue herein, both those which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, did not conform to any Government-imposed specifications which addressed the design and/or construction of the housing units pertinent to formaldehyde levels.

133. Named Plaintiffs submit that each of the housing units at issue, both those which were manufactured prior to the hurricanes and those later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to the Manufacturing Defendants' use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, but that the Manufacturing Defendants failed to warn the Federal Government about these dangers, which initially were not known to the Federal Government.

134.  Named Plaintiffs submit that the Manufacturing Defendants ignored, or concealed and/or condoned the concealment of, the fact that each and all of the housing units at issue contained dangerous levels of formaldehyde due to the Manufacturing Defendants' use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, all in order to sell the Manufacturing Defendants' products, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions.

135.  Each and all of the Named Plaintiffs spent significant time in the FEMA-provided housing units manufactured by the Manufacturing Defendants and provided to Plaintiffs by the Federal Government.  As a result, the Named Plaintiffs unwittingly were exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing units.

136.  Formaldehyde is found in construction materials such as particle board, fiberboard and plywood, as well as glues and adhesives used in the manufacture of the housing units. Pursuant to federal law, the defendants are required to display a "Health Notice" about exposure to formaldehyde which reads:

IMPORTANT HEALTH NOTICE

Some of the building materials used in this home emit formaldehyde.  Eye, nose and throat irritation, headache, nausea, and a variety of asthma-like symptoms, including shortness of breath, have been reported as a result of formaldehyde exposure.  Elderly persons and young children, as well as anyone with a history of

asthma, allergies, or lung problems, may be at greater risk.   Research is continuing on the possible long-term effects of exposure to formaldehyde.

Reduced ventilation resulting from energy efficiency standards may allow formaldehyde and other contaminants to accumulate in the indoor air. Additional ventilation to dilute the indoor air may be obtained from a passive or mechanical ventilation system offered by the manufacturer. Consult your dealer for information about the ventilation options offered with this home.

High indoor temperatures and humidity raise formaldehyde levels.  When a home is to be located in areas subject to extreme summer temperatures, an air-conditioning system can be used to control indoor temperature levels.  Check the comfort cooling certificate to determine if this home has been equipped or designed for the installation of an air-conditioning system.

If you have any questions regarding the health effects of formaldehyde, consult your doctor or local health department.

*See* 24 C.F.R. §3280.309.

137.   According to the National Cancer Institute, formaldehyde has been classified as a human carcinogen (cancer-causing substance) by the International Agency for Research on Cancer and as a probable human carcinogen by the U.S. Environmental Protection Agency ("EPA").  Additionally, the Agency for Toxic Substances and Disease Registry ("ATSDR") has reported to FEMA and members of Congress that not only is formaldehyde classified as "reasonably anticipated to be a human carcinogen," but also that there is no recognized safe level of exposure, and that any level of exposure to formaldehyde may pose a cancer risk, regardless of duration.

138.   Most published exposure standards for formaldehyde address protective levels for the adult working population in the workplace, based upon a 40-hour work week, and specifically do not address chronic exposure levels or protective levels for the more susceptible population, for instance, the very young, the elderly and those with

respiratory, skin and other chronic diseases. Nonetheless, reference to the levels established by the Occupational Safety and Health Administration ("OSHA") evidences formaldehyde's harmful effects. In 1987, OSHA reduced the amount of formaldehyde to which workers can be exposed over an 8-hour day from 3 ppm to1 ppm. In May, 1992, the formaldehyde exposure limit was further reduced to .75 ppm.

139. HUD regulates formaldehyde levels in certain construction materials to include the pressed wood products used in manufactured housing (such as prefabricated mobile homes). HUD has far stricter exposure limits for residential formaldehyde emissions. By regulation, "All plywood and particle board materials bonded with a resin system or coated with a surface finish containing formaldehyde shall not exceed the following formaldehyde emission levels when installed in manufactured homes: (1) Plywood materials shall not emit formaldehyde in excess of 0.2 parts per million (ppm)...[and] (2) Particle board materials shall not emit formaldehyde in excess of 0.3 ppm...". *See* 24 C.F.R. §3280.308.

140. Both the EPA and the ATSDR have suggested values for safe formaldehyde exposure, which are reproduced below, which values are applicable herein since the FEMA trailers/housing units at issue were intended to be occupied for up to a year and a half by evacuees. *See* 44 C.F.R. § 206.110(e).

| Agency | Standard |
|---|---|
| EPA recognized level at which acute health effects can manifest | 0.1 parts per million (ppm) |
| Agency for Toxic Substances and Disease Registry | 0.04 ppm - short exposures up to 14 days |

| Minimum Risk Levels (MRL) | |
|---|---|
| | 0.03 ppm – exposure durations between 15 and 364 days |
| | 0.008 ppm – exposures of 365 days or greater |

See Union of Concerned Scientists, Citizens and Scientists for Environmental Solutions, *FEMA Exposes Gulf Coast Residents to Formaldehyde*, Updated on Dec 19, 2007, *available at* http://www.ucsusa.org/scientific_integrity/interference/fema-trailers.html.

141. The Manufacturing Defendants knew or should have known of the health hazards inherent in the products it constructed, by familiarity with industry standards, the material safety data sheets in its possession, and published medical studies.

142. FEMA's disaster response obligations are delineated in the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §4121, et seq. (the "Stafford Act"). The Stafford Act outlines two types of temporary housing assistance to be made available to eligible, displaced applicants: financial assistance and direct services. This aid is sometimes referred to as Section 408 assistance. This provision was enacted as Public Law 93-288, Title IV, § 408 (1988). Under the Stafford Act, at 42 U.S.C.A. § 5174, the Executive, through FEMA, may provide "direct assistance" in the form of temporary housing units, acquired by purchase or lease, directly to individuals or households who, because of a lack of available housing resources, would be unable to make use of the alternative "financial assistance" provided under subparagraph (c)(1)(A).

143. In response to hurricanes Katrina and Rita, FEMA, upon information and belief, tasked the Procurement Defendants with the identification, selection and procurement of approximately 143,000 temporary housing units (i.e., travel trailers, park models, mobile

homes and manufactured housing) pursuant to the direct housing assistance provisions of the Stafford Act, which FEMA purchased from the manufacturers and off dealer lots, and intended for Gulf Coast residents in the four states at issue.

144. At all times, the Procurement Defendants identified, selected and procured housing units, and in particular travel trailers, for FEMA to utilize as temporary housing under the Stafford Act, while failing to consult with the manufacturers regarding the warnings or instructions against the use of travel trailers for extended occupancy.

145. The Procurement Defendants communicated with manufacturers prior to hurricanes Katrina and Rita regarding the financial opportunities associated with the provision of travel trailers as temporary housing units, but failed to take into account or research the health concerns relating to formaldehyde exposure to occupants of the travel trailers and other foreseeable problems and defects which would occur during an extended occupancy.

146. The Procurement Defendants knew or should have known that the Federal Government's intended use of the travel trailers and other temporary housing units was for residential occupancy for periods up to eighteen months, if not longer, pursuant to the emergency housing mandate of the Stafford Act.

147. The Procurement Defendants knew or should have known that the manufacturers' intended use of the travel trailers was for intermittent, recreational use, and that the travel trailers were designed as recreational vehicles rather than permanent or long-term housing units. Further, the Procurement Defendants knew or should have known that the manufacturers' warned against long-term occupancy of the travel trailers.

40

148. Following the procurement of the temporary housing units by the Procurement Defendants, the Federal Government contracted with the No-Bid Defendants to implement the mandates of the Stafford Act in the areas affected by hurricanes Katrina and Rita.

149. In order to implement and manage its disaster response obligation and temporary housing mandate under the Stafford Act, FEMA engaged one or more of the No-Bid Defendants with No-Bid contracts, eventually amounting to billions of dollars. The Federal Government also relied on the expertise and knowledge of the No-Bid Defendants and the Procurement Defendants to provide information and advice on, among other things, the conversion of mobile travel trailers into temporary housing units for periods up to, and potentially exceeding, eighteen months in duration.

150. The provision of temporary housing to Named Plaintiffs created a duty on the part of the Federal Government to insure that such housing was habitable in a safe and sanitary condition. However, the housing provided is and was, at all times pertinent hereto, unsafe and presented a clear and present danger to the health and well-being of the Named Plaintiffs and their families by exposing them to elevated and hazardous levels of formaldehyde.

151. Upon information and belief, the No-Bid Defendants were the only contractors engaged by FEMA to assist with the implementation of the Stafford Act in Louisiana, Mississippi, Alabama and Texas in the aftermath of hurricanes Katrina and Rita, from the pickup of a unit at a FEMA staging area through the decommissioning and de-installation of the units at the end of the contracts.

152. The No-Bid Defendants were tasked with the transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units.

153. Under the terms of their contracts, The No-Bid Defendants were obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and indicated by the manufacturers of same. Further, under their No-Bid contracts with FEMA, the No-Bid Defendants were obligated to advise and instruct FEMA regarding the implementation of those contracts. The No-Bid Defendants failed to properly fulfill either of these tasks.

154. The No-Bid Defendants contracted with FEMA to pick-up and transport the temporary housing units from FEMA-controlled staging areas and deliver them to areas which The No-Bid Defendants were tasked with operating. These new areas included staging areas to be managed and maintained as assigned to one of The No-Bid Defendants or individual locations and addresses where the No-Bid Defendants assigned that temporary housing unit would have obligations to manage and maintain it.

155. To accomplish their contractual obligations with FEMA, in addition to the use of subsidiary companies, the No-Bid Defendants entered into numerous sub-contracts, but at all times retained supervisory capacity and responsibility under their individual contracts with FEMA.

156. The No-Bid Defendants were tasked under their contracts with FEMA to identify and prepare the infrastructure for the various group site locations. This included, amongst other things, ensuring there would be adequate water, sewage, electricity, *etc.*. The No-

Bid Defendants knew or should have known that these preparations were for long-term occupancy of the temporary housing units.

157. Once the temporary housing unit(s) occupied by the plaintiff(s) were transported and delivered to a particular location, the No-Bid Defendants had the responsibility for installing that temporary housing unit. The No-Bid Defendants installed the temporary housing units by "blocking" the unit. This meant raising the plaintiff's unit several feet into the air and off of its wheel base, and setting it on concrete blocks.

158. By blocking the temporary housing unit(s) of each plaintiff, the No-Bid Defendants created stress and flexing on the frames of the unit as it were not designed to be lifted off of the wheel base. In fact, the manufacturers of the temporary housing units warned in the various owners' manuals provided with the units, that units should not be jacked so that the vehicle's weight is no longer supported by the wheels.

159. The stress and flexing of temporary housing units' frames caused by the No-Bid Defendants' "blocking" them with weight off of the wheels created distortion in the travel trailer's shell allowing increased moisture intrusion which contributed to increased formaldehyde exposures.

160. The temporary housing unit(s) occupied by the plaintiff(s) which were provided by FEMA were for the most part travel trailers. The travel trailers are, by definition, mobile. They are designed for and intended for periodic, recreational use and not for long-term habitation. By installing the travel trailers on concrete blocks for extended occupancy, the No-Bid Defendants knowingly and intentionally modified the design and the actual use of these units occupied by the plaintiff(s) by converting them into a temporary

housing unit to be used as a residence for long term occupancy in some instances exceeding 18 months.

161.   The No-Bid Defendants failed to consult with the manufacturers of the temporary housing units, including the Manufacturing Defendants, with regard to the installation, warnings, warranty issues or advisability of using travel trailers for long term residence and occupation. The No-Bid Defendants took action which voided the warranties of the manufacturers and directly created or contributed to unsafe and hazardous living conditions in the temporary housing units.

162.   Once the No-Bid Defendants had completed the transportation, delivery and installation of the temporary housing unit(s) occupied by the plaintiff(s), the No-Bid Defendants were tasked with inspecting each unit to ensure that it was safe and habitable, prior to occupancy by the plaintiff(s). Upon information and belief, the No-Bid Defendants failed to adequately inspect the temporary housing units occupied by the plaintiff(s) to ensure that the units were safe and suitable for their intended use – the long-term occupancy by individuals and families displaced by hurricanes Katrina and Rita. This failure to properly inspect the units for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by hurricane victims.

163.   In addition to transportation, site identification, installation and inspection, the temporary housing units occupied by the plaintiff(s) provided in response to hurricanes Katrina and Rita were also managed, maintained and repaired by one of the No-Bid Defendants, or their various subcontractors over whom they maintained direct oversight and responsibility. Upon information and belief, the No-Bid Defendants failed to adequately manage, maintain and repair the temporary housing units which enabled and contributed

to the unsafe and hazardous conditions that led to adverse health effects amongst the Plaintiffs.

164. Parallel to their duty to manage, maintain and repair each temporary housing unit the No-Bid Defendants failed to undertake appropriate action, maintenance or repair in response to numerous complaints made by the plaintiff-occupants of the temporary housing units to various adverse health effects caused by exposure to elevated levels of formaldehyde.

165. Following the plaintiffs' occupancy of each temporary housing unit, the No-Bid Defendants were tasked with its de-installation. Upon discovering the deteriorated condition of the temporary housing units at the time of de-installation and removal, the No-Bid Defendants failed to identify the unsuitability of the temporary housing units for long-term occupancy.

166. In addition to de-installation of the temporary housing units, the No-Bid Defendants were tasked with refurbishment and restoration of the temporary housing units for use, either in direct response to hurricanes Katrina and Rita or for use in the future. By restoring and refurbishing these temporary housing units, the No-Bid Defendants warranted that the units were fit for their intended use, long term occupancy in response to disaster related displacement. By restoring and refurbishing these temporary housing units, the No-Bid Defendants created and perpetuated existing hazardous conditions which would foreseeably lead to adverse health effects caused by the elevated levels of formaldehyde in the temporary housing units. Further, in thousands of cases, following the restoration and refurbishment, these temporary housing units were immediately occupied by new individuals or families displaced by hurricanes Katrina and Rita, and who were then directly exposed to hazardous levels of formaldehyde.

167. The No-Bid Defendants, at every stage of their involvement, failed to warn the plaintiff-occupants of each temporary housing unit of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde – a known human carcinogen – which led directly to adverse health effects, including but not limited to the advent of childhood asthma and the onset of adult asthma in some of the plaintiffs.

168. Through their actions and omissions, the No-Bid Defendants created and perpetuated a situation wherein occupants of the temporary housing units were exposed to elevated levels of formaldehyde and, as a result, suffered adverse health effects. The No-Bid Defendants  negligently failed to adhere to the manufacturer instructions and warnings related to: (1) the manufacturers' intended (short-term) use of the temporary housing units; (2) the installation and set-up of the temporary housing units; and (3) the warning that the temporary housing units contained urea formaldehyde resin which would release formaldehyde gas directly into the intended living space.

169. The No-Bid Defendants failed to warn the occupants of  temporary housing units of the hazardous conditions created by the elevated levels of formaldehyde in the temporary housing units.

170. By restoring and refurbishing the trailer for future habitation, the No-Bid Defendants improperly and negligently warranted that the units were fit for the intended use of long-term occupancy.

171. Finally, despite these failures, the No-Bid Defendants received billions of dollars in contracts from FEMA and the United States government, at the expense of the health of the plaintiff-occupants of the temporary housing units who simply had nowhere else to

go and who were relying on FEMA and its contractors to keep them safe in the aftermath of the greatest natural disaster in the history of the United States.

172.   The Procurement Defendants knowingly and intentionally identified, selected and procured approximately 140,000 travel trailers for converted use by FEMA as temporary housing units, despite the manufacturers' clearly expressed warnings against using the travel trailers for that purpose. In doing so, the Procurement Defendants created and contributed to a situation where hundreds of thousands of people displaced by hurricanes Katrina and Rita were exposed to elevated and hazardous levels of formaldehyde.

173.   The Federal Government has been aware for years that formaldehyde is used in certain construction materials used in manufactured housing, has regulated emissions standards for HUD-regulated mobile homes, has, since the hurricanes, adopted the HUD emissions regulations for travel trailer purchase specifications, and has known for over thirty years of the relationship between formaldehyde emissions in indoor environments and health problems associated therewith.   *See* Statement of R. David Paulison, Administrator, Federal Emergency Management Agency, Department of Homeland Security, before the Committee on Oversight and Government Reform, U.S. House of Representatives, July 19, 2007, *available at* http://oversight.house.gov/documents/20070719131219.pdf.

174.   Although, as alleged above, FEMA has long been aware of the presence of formaldehyde in certain construction materials used in manufactured housing, including these housing units, and specifically was aware of the published dangers associated with the "out" or "off-gassing" or the gradual release into the atmosphere of formaldehyde, upon information and belief, in March of 2006, a family in Mississippi reported the results of

independent testing and health complaints which they related to high levels of formaldehyde.

175. In fact, the Federal Government was conducting initial formaldehyde air sampling of the subject housing units at FEMA staging facilities in Mississippi as early as October 11, 2005 and as late as Jan. 17, 2006. The sampling results showed that the levels detected in nearly every trailer exceeded the ATDSR minimum risk levels associated with exposures up to and exceeding 14 days, that most levels exceeded the EPA recognized level at which acute health effects can manifest, and that several exceeded the OSHA workplace maximum levels. *See* Response of the U.S. Department of Labor, Occupational Safety and Health Administration to Freedom of Information Act Request submitted by a plaintiff herein, November 16, 2007.

176. Nonetheless, even though the Government was actively testing for and aware of the dangerous levels of formaldehyde present in housing units scheduled for delivery to the Plaintiffs, the Inspector General of the Department of Homeland Security, testifying before the Committee on Homeland Security and Governmental Affairs of the United States Senate, approximated that as of February 13, 2006, a little under six months post-Katrina, 75,000 travel trailers had been delivered to Plaintiffs. *See* Statement of Richard L. Skinner, Inspector General, U.S. Department of Homeland Security Before the Committee on Homeland Security and Governmental Affairs, U.S. Senate, February 13, 2006, *available at* http://www.dhs.gov/xlibrary/assets/Skinner-021306.pdf.

177. The Federal Government also continued to supply the defective and dangerous housing units to the Plaintiffs after March of 2006.

48

178.    The Federal Government continued to  supply the defective and dangerous housing units to the Plaintiffs even though the Sierra Club publicly announced the initiation of its own testing of occupied housing units and, in April of 2006, reported the results which reflected formaldehyde levels above the threshold that the EPA warns can cause acute health effects in humans in 83% of the trailers tested. Union of Concerned Scientists, *supra*.

179.    The Federal Government continued to supply the defective and dangerous housing units to the Plaintiffs even though the Federal Government, through FEMA, in March of 2006, conducted formaldehyde testing of unoccupied  housing units at the Purvis, Mississippi staging area, and tested and obtained the results of an occupied Mississippi trailer on April 6, 2006, which reflected the presence of formaldehyde at twelve times the EPA's value.   Union of Concerned Scientists, *supra*, and Exhibits B (*available at* http://oversight.house.gov/documents/20070719113015.pdf)   and D (*available at* http://oversight.house.gov/documents/20070719113219.pdf) attached thereto.

180.    The Federal Government continued to supply the defective and dangerous housing units to the Plaintiffs even though the Federal Government had been notified on a number of occasions in May and June 2006 regarding residents' concerns over formaldehyde emissions in their housing units. Union of Concerned Scientists, *supra*, and Exhibits E (*available at* http://oversight.house.gov/documents/20070719113322.pdf), I (*available at* http://oversight.house.gov/documents/20070719113515.pdf)   and M (*available at* http://oversight.house.gov/documents/20070719113728.pdf) attached thereto.

181. While complaints of formaldehyde exposure continued to be reported to the Federal Government and evidence supporting the existence of dangerous levels of formaldehyde present in the housing units was uncovered, the Federal Government intentionally avoided undertaking any comprehensive testing of their own because it wanted to avoid liability for the problem, as stated in emails from the FEMA Office of General Counsel (OGC) in June of 2006, "Do not initiate any testing until we give the OK. While I agree that we should conduct testing, we should not do so until we are fully prepared to respond to the results. Once you get results and should they indicate some problem, the clock is ticking on our duty to respond to them." Another email repeats these concerns, reading "OGC has advised that we do not do testing, which would imply FEMA's ownership of the issue."  Union of Concerned Scientists, *supra*, and Supplemental A (various emails *available at* http://oversight.house.gov/documents/20070809120917.pdf) and Supplemental B (various emails *available at* http://oversight.house.gov/documents/20070809120940.pdf) attached thereto.

182. Named Plaintiffs aver that, even as each Named Plaintiff was being placed at risk in unsafe temporary housing, the Federal Government had reviewed the results of all earlier testing and complaints of formaldehyde associated with the housing units and were actively conferring with one or more of the manufacturers concerning formaldehyde exposure in the housing units and how best to deal with the publicity fall-out as the media reports of same increased.

183. Evidence of communications between the defendants exists by way of emails emanating from the FEMA Office of General Counsel (OCG).  For example, in June 16, 2006 the

same email which states "OGC has advised that we do not do testing," states that "Gulfstream is working closely with FEMA to resolve the formaldehyde problem in smaller travel trailer (Cavalier) units." A later email reflects relief of the FEMA OCG at the "good news" that "one of the major manufacturers of national housing units (Gulfstream I think)...wanted to get with External Affairs so they could get on the same page...we may get the benefit of the manufacturer's 'science' and 'public relations' approaches." *See* U.S. House of Representatives, Committee on Oversight and Government Reform, FEMA'S TRAVEL TRAILERS: LITIGATION CONSIDERATIONS V. HEALTH AND SAFETY CONSIDERATIONS, AND THE WINNER IS?, July 19, 2007, *available at* http://republicans.oversight.house.gov/Media/PDFs/20070719FEMAEmails.pdf.

184.    FEMA participated in an inter-agency meeting with the EPA and the Centers for Disease Control and Prevention (CDC) in July of 2006, during which senior EPA officials advised FEMA that the "health base level" for formaldehyde might be much lower than previously expected, with anticipated levels being more than 100 times higher. The discussions during this conference were more "strategic" in nature, with the EPA warning against the "the advisability of testing at all" concerned that the data would have to be released to the public and that the media would characterize the findings in the worst possible light. Union of Concerned Scientists, *supra*, and Exhibit R (various emails *available at* http://oversight.house.gov/documents/20070719114058.pdf) attached thereto.

185.    FEMA and EPA senior leadership instead agreed to test ventilation methods on unoccupied trailers. This testing methodology completely failed to simulate the living

conditions of a trailer resident, so results, which would not be released for another seven to eight months, were useless for determining a policy to protect trailer residents. This testing was conducted by FEMA and EPA in September and October of 2006 at a trailer staging area located in Baton Rouge, Louisiana. Union of Concerned Scientists, and Exhibit R attached thereto, *supra*. *See also* Original Health Consultation: Formaldehyde Sampling at FEMA Temporary Housing Units, Agency for Toxic Substances and Disease Registry, February 1, 2007, *available at* http://www.atsdr.cdc.gov/HAC/pha/fema_housing_formaldehyde/formaldehyde_report_0507.pdf.

186.   This testing methodology did not simulate the living conditions, temperatures, humidities, standard ventilation practices, or timescales at which residents lived in the trailers. It also did not take into account that the trailer building materials continue to emit formaldehyde for four to five years. Union of Concerned Scientists, *supra*.

187.   FEMA and FEMA's lawyers purposefully interfered with the design and implementation of the earlier testing of the housing units occupied by the plaintiffs supplied in the wake of the hurricanes in order to avoid legal liability for injuries to Plaintiffs herein as a result of their exposure to formaldehyde. FEMA's activities, which included hiding, manipulating and ignoring the extant science and scientific work and concerns of federal scientists in other agencies, began immediately after FEMA began to receive complaints from trailer residents concerning formaldehyde fumes in 2006. *See* correspondence from U.S. House of Representatives, Committee on Science and Technology, to Michael Chertoff, Secretary, U.S. Department of Homeland Security, January 28, 2008.

188.    FEMA further manipulated the governmental testing by involving a little-known office of
the CDC, the ATSDR, to analyze the testing data, and explicitly sought to ensure that no
long-term exposure considerations would be included in the health consultation by
removing the consultation from the normal ATSDR review process so that scientists who
had specifically recommended looking at long-term exposure effects were excluded from
the review.  FEMA did so in order to avoid negative publicity and legal liability in
connection with the presence of formaldehyde in the housing units.  *See* correspondence
from U.S. House of Representatives, Committee on Science and Technology, to Michael
Chertoff, January 28, 2008 and to Dr. Howard Frumkin, Director, National Center for
Environmental Health/Agency for Toxic Substances and Disease Registry, January 28,
2008.

189.    FEMA's manipulation of the data was evidenced in the testing designed and
implemented by FEMA through the ATSDR in July of 2006.  The testing results of the
study showed high levels of formaldehyde in nearly all of the trailers, yet the ATSDR, at
FEMA's urging, did not use as its "level of concern" its own exposure limit of 0.008 ppm
for 365 days or more, but arbitrarily chose a limit of 0.3 ppm as its "level of concern,"a
level nearly 400 times the ATSDR's annualized exposure limit.  Yet even applying this
"level of concern," the average sampling results still were higher.  *See* THE SERIOUS
PUBLIC HEALTH ISSUES RESULTING FROM FORMALDEHYDE EXPOSURES WITHIN FEMA
TRAVEL TRAILERS ISSUED HURRICANE DISASTER VICTIMS, AND RECOMMENDED ACTION
ITEMS, Testimony of Mary C. DeVany before the Committee on Oversight and
Government Reform, U.S. House of Representatives, July 19, 2007, at 7, *available at*
http://oversight.house.gov/documents/20070719102502.pdf.

190.　Indeed, in testimony before Congress, independent industrial hygienist Mary DeVany described the FEMA testing and analysis process by stating "All I can say, in my professional opinion, is that they did this in order to minimize the actual extent of the problems in these trailers. I have no other conclusion I can draw… I think it was a complete violation of our professional code of ethics."  Oral testimony of Mary C. DeVany before the House Committee on Oversight and Governmental Reform. July 19, 2007 at 107-108 of the full hearing transcript, *available at* http://oversight.house.gov/documents/20071114164004.pdf.

191.　On March 17, 2007, Dr. Mark Klein, of the ATSDR, at the direction of Dr. Frumkin, sent a letter to FEMA's counsel advising, as had Dr. DeRosa, that the February Health Consultation was "possibly misleading and a threat to public health" for failure to disclose the carcinogenic status of formaldehyde and that there are no safe exposure levels.

192.　Despite this information, FEMA and the ATSDR did not revise the original Health Consultation until October of 2007 to include the warning that the original Health Consultation"did not sufficiently discuss the health implications of formaldehyde exposure and included language that may have been unclear, leading to potentially incorrect or inappropriate conclusions."  *See* An Update and Revision of ATSDR's February 2007 Health Consultation: Formaldehyde Sampling of FEMA Temporary-Housing Trailers; Baton Rouge, Louisiana, September-October, 2006, *available at* http://www.atsdr.cdc.gov/substances/formaldehyde/public_assessment.html.

193.   The Federal Government, through FEMA, deliberately ignored and/or rejected objective, scientific standards in the design and implementation of its testing procedures, which resulted in the prolongation of the Plaintiffs' exposure to dangerous levels of formaldehyde in the housing units, and causing them serious injuries.

194.   It was not until December of 2007 that the Federal Government initiated testing of occupied housing units. Apparently, FEMA requested the CDC to conduct testing of a random sample of 519 housing units in Louisiana and Mississippi between December 21, 2007 and January 23, 2008, the stated purpose of which was to assess levels of formaldehyde in indoor air occupied FEMA-supplied housing units. *See* Statement of Howard Frumkin, M.D., DrPH, Director, National Center for Environmental Health/Agency for Toxic Substances and Disease Registry, Centers for Disease Control and Prevention, U. S. Department of Health and Human Services, CDC's RESPONSE TO HEALTH CONCERNS RELATED TO FEMA-PROVIDED TRAVEL TRAILERS AND MOBIL HOMES IN THE GULF COAST REGION, March 4, 2008, at 1, 3-4.

195.   The CDC testing revealed the following important findings: (1) the formaldehyde levels were higher than typical levels of U.S. indoor exposure in single-family homes and apartments; (2) levels ranged from 3 parts per billion (ppb) to 590 ppb, with the average levels in all units measuring 77 ppb, the latter being higher than U. S. background levels in single-family homes and apartments; (3) the levels recorded in many of the units could affect the occupants' health; (4) the contemporary measured levels are likely to under-represent long-term exposures because formaldehyde levels tend to be higher in newer housing units and during warmer weather; (5) higher indoor temperatures were

55

associated with higher formaldehyde levels, independent of unit make or model; and, (6) formaldehyde levels varied by type of housing unit (mobile home, park model, and travel trailer), but all types tested had elevated levels compared to the data on single-family homes and apartments. *Id.* at 4.

196.   The CDC's recommendations as a result of this testing included the following: (1) move quickly to relocate residents before the weather in the region warms up; (2) FEMA and the CDC to consider establishment of a registry to conduct long-term health monitoring of children and others who resided in FEMA- provided housing units in the Gulf Coast Region; (3) families still living in FEMA-provided housing units should spend as much time outdoors as possible and maintain the temperature inside the units at the lowest comfortable level as well as ventilate the unit; and, (4) establish available construction practices which could assure safe and healthy conditions. *Id.* at 5-6, 11.

197.   As a result of this round of testing, the Federal Government implemented a program which essentially entails removing the remaining residents from the subject housing units and placing them into other, safe, forms of housing. The Federal Government's action in this regard was the result of pressure imposed on it to act through various Congressional investigations into the Government's implementation of the "direct assistance" program under the Stafford Act, this litigation, and media coverage.

198.   The Federal Government's actions with regard to these plaintiffs in response to the early reports of formaldehyde emissions, hiding, manipulating and ignoring the extant science and scientific work and concerns of federal scientists in other agencies regarding its testing protocols and its public obfuscation of testing results, are not the kind of actions

which involve decisions grounded in social, economic, or political policy.  Rather, the Federal Government's actions and decisions were all made with a view toward avoiding negative publicity and legal liability.

199.   Additionally and/or in the alternative the Federal Government ignored, avoided and simply failed to adhere to and apply accepted professional and scientific standards in addressing and/or removing the health hazards posed by formaldehyde emissions in the housing units it provided.

## V. CLAIMS ASSERTED AGAINST THE FEDERAL GOVERNMENT: ALL STATES

### COUNT 1:

### CAUSE OF ACTION AGAINST THE FEDERAL GOVERNMENT

200.   Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

201.   At all times herein, the Federal Government was under a duty to use due care and caution for the safety of the foreseeable users and occupants of the subject housing units, which duty extended to each and all of the Named Plaintiffs herein.

202.   The Federal Government was under a duty to provide reasonably safe, functional and habitable housing units for the use of the Named Plaintiffs.

203.   The Federal Government assumed these duties when it implemented the "direct assistance" method of relief under the Stafford Act and as owner/lessor of the housing units which were ultimately provided to the Named Plaintiffs.

204.   The Federal Government was obligated to ensure that the housing units which it provided to the Named Plaintiffs for use as temporary residences were free of defects, including

57

but not limited to elevated levels of formaldehyde, which could visit harm upon Named Plaintiffs through the anticipated and intended use of the housing units.

205. The Federal Government was obligated to promptly warn the Named Plaintiffs of any defects in the housing units which could cause harm and of which the Federal Government was aware.

206. The Federal Government, after becoming aware of the potential for such harm, violated this duty to each Named Plaintiff, rendering the Federal Government negligent, grossly negligent, reckless, willful and/or wanton.

207. As a direct and proximate result of the acts and/or omissions of the Federal Government, as well as its violation(s) of state and federal laws, each Named Plaintiff has suffered, and will continue to suffer harm and injuries, and is entitled to recover damages from the Federal Government.

208. Further, since each Plaintiff is within the class and category of individuals meant to be protected by the state and federal statutory and regulatory laws which the Federal Government violated, Plaintiffs specifically plead the application of the doctrine of negligence *per se.*

209. The Federal Government was negligent and at fault in the following non-exclusive particulars:

a. In continuing to provide unreasonably dangerous housing units to the Named Plaintiffs after FEMA became aware of elevated levels of formaldehyde;

58

b.      In failing to adequately warn the each of the Named Plaintiffs of the unreasonably dangerous nature of the housing units which the Plaintiffs occupied;

c.      In failing to remedy the dangerous nature of the housing units they provided to the Named Plaintiffs once FEMA became aware of the elevated levels of formaldehyde;

d.      In failing to timely implement adequate safety measures and procedures to address/remove the defects in the housing units of the Named Plaintiffs, or to remove or protect the Named Plaintiffs from the defective housing units by providing them with alternative housing;

e.      In knowingly and intentionally suppressing and withholding information from the public that the temporary housing units contained elevated levels of formaldehyde;

f.      In knowingly and intentionally allowing litigation concerns to take priority over its safety mandate relating to the elevated levels of formaldehyde;

g.      In continuing to house Named Plaintiffs in hazardous temporary housing units for extended periods of time after FEMA became aware of elevated levels of formaldehyde in the temporary housing units;

h.      In continuing to house Named Plaintiffs in hazardous, unreasonably dangerous temporary housing units rather than warning Plaintiffs of the dangers and offering rental assistance that would allow Named Plaintiffs to leave the defective temporary housing units;

59

i.      In failing to offer Named Plaintiffs rental assistance or other housing assistance when the Federal Government knew or should have known that the temporary housing units supplied to Named Plaintiffs were unsafe and uninhabitable; and,

j.      Such other actions of negligence and fault as will be shown at the trial of this matter.

## VI. CLAIMS ASSERTED AGAINST THE MANUFACTURING DEFENDANTS

### A.    LOUISIANA STATE-BASED CLAIMS

### COUNT 2:

### CAUSE OF ACTION AGAINST THE MANUFACTURING DEFENDANTS UNDER LOUISIANA PRODUCTS LIABILITY ACT

210.   Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

211.   The Manufacturing Defendants are manufacturers of each of the housing units occupied by the Named Plaintiffs, which units constitute products under the Louisiana Products Liability Act [LPLA].

212.   The exposure to each Named Plaintiff to formaldehyde fumes from the Manufacturing Defendants' products and equipment resulted from the normal, foreseeable, and intended use of the products and equipment, without substantial alteration in the condition in which the Manufacturing Defendants sold these housing units.

213.   The design of the housing units, using plywood, press board, other composite wood products and other products that contain formaldehyde is defective and posed an unreasonable risk of harm to each Named Plaintiff.

214. Alternatively, the use of plywood, press board, other composite wood products and other products that contain formaldehyde constitutes a defect in composition or manufacture that posed an unreasonable risk of harm to each Named Plaintiff.

215. The Manufacturing Defendants' products, equipment and supplies used by each Named Plaintiff were in a defective condition and were unreasonably dangerous under normal use at the time the products and equipment left the Manufacturing Defendants' control. Each Named Plaintiff was an intended and foreseeable user of the alleged defective products and damages and losses to each Named Plaintiff reasonably could have been anticipated by the Manufacturing Defendants.

216. The defects in the Manufacturing Defendants' housing units are the result of and/or include, but are not limited to, the following:

a. In failing to design their respective products so as not to emit dangerous levels of formaldehyde;

b. In providing housing units which, by virtue of their design and/or manufacture and/or composition, were unreasonably dangerous under reasonably anticipated use;

c. In providing housing units which, by virtue of a lack of an adequate warning(s), were unreasonably dangerous under reasonably anticipated use;

d. In providing housing units which did not conform to the express warranties made by the the Manufacturing Defendants regarding their fitness for use as reasonably anticipated;

61

e.    In manufacturing, testing, marketing, distributing, licensing and selling of unreasonably dangerous housing units;

f.    In failing to properly test the housing units to property evaluate the level of emissions of formaldehyde under foreseeable conditions for extended periods of time;

g.    In failing to warn each Named Plaintiff of the unreasonably dangerous nature of the housing unit occupied by the Plaintiff, or warn adequately of the presence of excessive levels of emissions of formaldehyde and the hazards associated with the excess levels of emissions of formaldehyde in the unit.

h.    In failing to ensure that the housing units it manufactured and provided to each Named Plaintiff were suitable for their intended use;

i.    In failing to adhere to any and all express warranties of fitness and safety for the housing units they manufactured and provided;

j.    In manufacturing and providing housing units which were unduly dangerous due to their emissions of formaldehyde; and,

k.    Such other indicia of fault under the LPLA  as will be shown at the trial of this matter.

217.    Plaintiffs aver that the defendant **American International Group** had in full force and effect policies of liability insurance affording coverage to the Manufacturing Defendant Fleetwood with respect to the matters, risks and things for which this defendant is liable

62

herein, thereby affording Louisiana plaintiffs the right to proceed against this defendant Insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:1269.

218.  Plaintiffs aver that the defendant **American International Specialty Lines** had in full force and effect policies of liability insurance affording coverage to the Manufacturing Defendants Fleetwood and Monaco with respect to the matters, risks and things for which this defendant is liable herein, thereby affording Louisiana plaintiffs the right to proceed against this defendant Insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:1269.

219.  Plaintiffs aver that the defendant **Arch Specialty Insurance Corp.** had in full force and effect policies of liability insurance affording coverage to the Manufacturing Defendant R-Vision with respect to the matters, risks and things for which this defendant is liable herein, thereby affording Louisiana plaintiffs the right to proceed against this defendant Insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:1269.

220.  Plaintiffs aver that the defendant **Crum & Forster Specialty Insurance Company** had in full force and effect policies of liability insurance affording coverage to the Manufacturing Defendant Pilgrim with respect to the matters, risks and things for which this defendant is liable herein, thereby affording Louisiana plaintiffs the right to proceed against this defendant Insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:1269.

221.  Plaintiffs aver that the defendant  **Gibraltar Insurance Co.** had in full force and effect policies of liability insurance affording coverage to the Manufacturing Defendant

Fleetwood with respect to the matters, risks and things for which this defendant is liable herein, thereby affording Louisiana plaintiffs the right to proceed against this defendant Insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:1269.

222.   Plaintiffs aver that the defendant **Insurance Company of the State of Pennsylvania** had in full force and effect policies of liability insurance affording coverage to the Manufacturing Defendant Monaco with respect to the matters, risks and things for which this defendant is liable herein, thereby affording Louisiana plaintiffs the right to proceed against this defendant Insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:1269.

223.   Plaintiffs aver that defendant **Insurco, Ltd.** had in full force and effect a policy of liability insurance affording coverage to the Manufacturing Defendant Patriot with respect to the matters, risks and things for which this defendant is liable herein, thereby affording Louisiana plaintiffs the right to proceed against this defendant Insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:1269.

224.   Plaintiffs aver that the defendant **Lexington Insurance Company** had in full force and effect policies of liability insurance affording coverage to the Manufacturing Defendants R-Vision and Monaco with respect to the matters, risks and things for which this defendant is liable herein, thereby affording Louisiana plaintiffs the right to proceed against this defendant Insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:1269.

225.    Plaintiffs aver that the defendant **Liberty Insurance Corp. and/or Liberty Mutual Insurance Corporation** had in full force and effect policies of liability insurance affording coverage to the Manufacturing Defendant R-Vision with respect to the matters, risks and things for which this defendant is liable herein, thereby affording Louisiana plaintiffs the right to proceed against these defendant Insurers under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:1269.

226.    Plaintiffs aver that the defendant **Sentry Insurance** had in full force and effect policies of liability insurance affording coverage to the Manufacturing Defendant Pilgrim with respect to the matters, risks and things for which this defendant is liable herein, thereby affording Louisiana plaintiffs the right to proceed against this defendant Insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:1269.

227.    Plaintiffs aver that the defendant **Starr Excess Liability Insurance Company, Ltd.** had in full force and effect policies of liability insurance affording coverage to the Manufacturing Defendant Fleetwood with respect to the matters, risks and things for which this defendant is liable herein, thereby affording Louisiana plaintiffs the right to proceed against this defendant Insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:1269.

228.    Plaintiffs aver that the defendant **Westchester Surplus Lines Insurance Company** had in full force and effect policies of liability insurance affording coverage to the Manufacturing Defendant R-Vision with respect to the matters, risks and things for which this defendant is liable herein, thereby affording Louisiana plaintiffs the right to

proceed against this defendant Insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:1269.

**B.     MISSISSIPPI STATE-BASED CLAIMS**

## COUNT 3:

### STRICT PRODUCTS LIABILITY
### MS CODE ANNOTATED § 11-1-63

### PRODUCTS LIABILITY: DEFECTIVE MANUFACTURING AND DESIGN

229.    Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

230.    Manufacturing Defendants, at the time that each subject housing unit left their control, knew or should have known that each product was defective because it deviated in a material way from the manufacturers' specifications or from otherwise identical units manufactured to the same manufacturing specifications.

231.    Manufacturing Defendants knew or should have known that the defective condition rendered each subject housing unit unreasonably dangerous to the user or consumer or others.

232.    The defective and unreasonably dangerous condition of each product (the failure of the subject housing units to be safely habitable without exposure to formaldehyde) proximately caused the damages and injuries sustained by each Named Plaintiff.

233.    At the time the subject housing units left the control of Manufacturing Defendants, each subject housing unit did not contain properly selected prepared and installed components.

66

234. At all relative times, each Named Plaintiff lacked actual or constructive knowledge of the defective condition of their respective housing units and that each defective product was inconsistent with their safety.

235. At all relevant times, each Named Plaintiff did not appreciate the danger of their housing unit's defective condition.

236. At all relevant times, each Named Plaintiff did not deliberately and voluntarily choose to expose themselves to this danger in such a manner to register assent to the continuance of the dangerous condition.

237. Each subject housing unit in question failed to function as expected as a result of their design characteristics.

238. An alternative design existed at the time that each housing unit left the control of Manufacturing Defendants which would have not impaired the product's usefulness or desirability.

239. The alternative design would have to a reasonable probability prevented the toxic exposure of each Named Plaintiff.

## PRODUCTS LIABILITY: FAILURE TO WARN

240. Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

241. Each product (housing unit) was defective because it failed to contain adequate warnings or instructions.

## PRODUCTS LIABILITY: BREACH OF EXPRESS WARRANTY

242. Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

243. Each product (housing unit) breached an express warranty and/or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use this product.

## COUNT 4:

## **STRICT LIABILITY AND NEGLIGENCE**

244. Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

245. Manufacturing Defendants knew or should have known that the subject housing units were defective and unreasonably dangerous to the user or consumer or others because of the excessive formaldehyde present in the housing units, which condition was foreseeable. Notwithstanding, the Manufacturing Defendants allowed the defective and dangerous housing units to be placed into the stream of commerce and to reach Named Plaintiffs without substantial change.

246. Manufacturing Defendants failed to warn Named Plaintiffs of the excessive levels/emissions of formaldehyde and the hazards associated therewith. Manufacturing Defendants owed Named Plaintiffs a non-delegable duty to warn of any dangerous and defective conditions under theories of negligence and strict liability.

247. Manufacturing Defendants were negligent in one or more of th following respects which proximately contributed to Named Plaintiffs' injuries:

a. In manufacturing and distributing the subject housing units to Named Plaintiffs for use as temporary housing, which housing was defective and unreasonably dangerous for use due to the presence of excessive formaldehyde levels/emissions;

b.      In failing to properly test/inspect the subject housing units to properly evaluate the presence and/or levels of formaldehyde under foreseeable conditions for extended periods of time;

c.      In manufacturing, advertising, marketing, distributing, and selling the subject housing units to third party users when they knew or should have known that the housing units were defective and not suitable for use under foreseeable conditions;

d.      In failing to provide proper and adequate warnings, after the sales of the subject housing units, of the hazards associated with excessive levels/emissions of formaldehyde; and,

e.      In failing to properly hire, train, and supervise individuals to inspect materials used in the manufacture of the subject housing units to ensure that such materials/component parts did not emit excessive levels of formaldehyde.

## C.    ALABAMA STATE-BASED CLAIMS

### COUNT 5:

### EXTENDED MANUFACTURER'S LIABILITY DOCTRINE
### Code of Ala. § 6-5-521

### PRODUCTS LIABILITY: DEFECTIVE MANUFACTURING AND DESIGN

248.    Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

249.    Manufacturing Defendants were negligent in the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of each of the subject housing units based upon (1) negligence, (2) innocent or negligent misrepresentation, (3) the manufacturer's liability doctrine as it

69

exists or is hereafter constructed or modified, (5) breach of any implied warranty, and (6) breach of any oral express warranty and no other.

250. Manufacturing Defendants, at the time each subject housing unit left their control, knew or should have known that each product (housing unit) was defective because it deviated in a material way from the manufacturers' specifications or from otherwise identical units manufactured to the same manufacturing specifications.

251. Manufacturing Defendants knew or should have known that the defective condition rendered each subject housing unit unreasonably dangerous to the user or consumer or others.

252. The defective and unreasonably dangerous condition of each products(the failure of the subject housing units to be safely habitable without exposure to formaldehyde) proximately caused the damages and injuries sustained by each Named Plaintiff.

253. At the time each subject housing unit left the control of Manufacturing Defendants, the subject housing unit did not contain properly selected prepared and installed components.

254. At all relative times, each Named Plaintiffs lacked actual or constructive knowledge of the defective condition of their respective product (housing unit) and that the defective product was inconsistent with their safety.

255. At all relevant times, each Named Plaintiffs did not appreciate the danger of each subject housing unit's defective conditions.

256. At all relevant times, each Named Plaintiff did not deliberately and voluntarily choose to expose themselves to this danger in such a manner to register assent to the continuance of the dangerous condition.

257.     Each subject housing unit failed to function as expected as a result of the design characteristics.

258.     An alternative design existed at the time each housing unit left the control of Manufacturing Defendants which would have not impaired the product's usefulness or desirability.

259.     The alternative design would have to a reasonable probability prevented the toxic exposure of each Named Plaintiff.

## PRODUCTS LIABILITY: FAILURE TO WARN

260.     Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

261.     Each product (housing unit) was defective because it failed to contain adequate warnings or instructions.

## PRODUCTS LIABILITY: BREACH OF EXPRESS AND IMPLIED WARRANTY OF MERCHANTABILITY

262.     Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

263.     Each product (housing unit) breached express warranties and/or failed to conform to other express factual representations and the warranties of merchantability upon which the claimants justifiably relied in electing to use the product.

## D.     TEXAS STATE-BASED CLAIMS

## COUNT 6:

## CAUSE OF ACTION AGAINST MANUFACTURING DEFENDANTS UNDER TEXAS PRODUCTS LIABILITY LAW

264.     Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

265.   Manufacturing Defendants, at all relevant times, were in the business of designing and manufacturing each housing unit for commercial gain and placed the housing unit in the stream of commerce.

266.   Each housing unit contained design, manufacturing and/or marketing defects at the time the housing unit left Manufacturing Defendants' possession and/or control.

267.   Those defects caused each housing unit to be unreasonably dangerous and such defects were a producing cause of each Named Plaintiff's damages.

268.   The design of each housing unit  using plywood, press board, other composite wood products  or other products that contain formaldehyde, is defective and posed an unreasonable risk of harm to each Named Plaintiff.

269.   Further, the use of plywood, press board, other composite wood products, or other products that contain formaldehyde constitutes a defect in composition or manufacture, which poses an unreasonable risk of harm to each Named Plaintiff.

270.   Additionally, Manufacturing Defendants failed to adequately warn each Named Plaintiff, the end user of each product, of the dangers associated with formaldehyde exposure, the risk of exposure to formaldehyde by using such products, and the means to mitigate such risks, which constitute a marketing defect.

271.   Specifically, the defects in Manufacturing Defendants' housing units  include, without limitation:

a.   Inherent characteristics, known to Manufacturing Defendants, which gave each product such a potential for causing health problems as to render the product unreasonable per se;

72

b. Lack of warnings or lack of sufficient warnings of the inherently dangerous properties of each product when used in the fashion for which they were anticipated or should have been anticipated being used;

c. Lack of instructions or lack of sufficient instructions for eliminating or minimizing the health risks inherent in the use of the product;

d. Lack of sufficient inspections by Manufacturing Defendants of their product to ensure that each product contained sufficient warnings of the dangerous properties of the products;

e. Lack of reasonable inspections by Manufacturing Defendants of their products to ensure that each  product contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of the product;

f. Lack of testing or lack of sufficient tests to determine the effects and/or the risks of formaldehyde fumes on intended users of each product or their guests; and,

g. Defective designs calling for the inclusion of materials which included formaldehyde, when equally suitable materials which did not contain formaldehyde were available, would have prevented or significantly reduced the risk of each Named Plaintiff's damages without substantially impairing the product's utility, and which were economically and technologically feasible at the time each product left the control of Manufacturing Defendants.

272. The defects in the housing units rendered each  product unreasonably dangerous and each defect was a producing cause of each  Named Plaintiff's damages, as set forth herein. Each Named Plaintiff's damages resulted from the normal, foreseeable, and intended use of the product and equipment, without substantial alteration, in the condition in which

Manufacturing Defendants' sold the housing units, or in which they left Manufacturing Defendants' control.

273. Each Named Plaintiff was an intended and foreseeable user of the housing units, and damages and losses to the plaintiffs through normal, foreseeable and intended use of the product, could reasonably be anticipated by Manufacturing Defendants.

274. If Manufacturing Defendants claim that any of the housing units are governed by any local, state or federal government's procedures, regulations or requirements for building or marketing the housing units, then plaintiffs would show that:

    a.    Manufacturing Defendants did not follow such procedures, regulations or requirements and that each housing units did not and does not comply with such procedures, regulations or requirements;

    b.    Even if such procedures, regulations or requirements apply, and even if Manufacturing Defendants built and manufactured the housing units according to such procedures, regulations or requirements, then the housing units still contain manufacturing flaws or defects; and/or,

    c.    Any such safety standards, regulations or requirements are or were inadequate to protect the public from unreasonable risks of injury or damage caused by the housing units; and/or,

    d.    Manufacturing Defendants withheld or misrepresented information or material relevant to the government's or agency's determination of adequacy of the safety standards or regulations at issue in this lawsuit.

**COUNT 7:**

**CAUSE OF ACTION AGAINST MANUFACTURING DEFENDANTS FOR NEGLIGENCE**

74

275.   Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

276.   At all times material Manufacturing Defendants were the designers, marketers, manufacturers, distributors, and/or sellers of the housing units, which have caused Plaintiffs' injuries.

277.   Manufacturing Defendants owed a duty to each Named Plaintiff to provide safe housing units that did not emit unsafe levels of formaldehyde.

278.   Manufacturing Defendants knew or should have known that when they provided the housing units to the general public or directly to FEMA that the housing units would be used in the manner that each Named Plaintiff herein used the housing units.

279.   Manufacturing Defendants breached their duty to each Named Plaintiff in failing to act reasonably in the design, marketing, distribution and sale of the housing unit; specifically by:

   a.   Failing to provide any/or sufficient warnings regarding the inherently dangerous properties of each housing unit when used in the fashion for which they were anticipated or should have been anticipated being used;

   b.   Failing to provide any/or sufficient instructions for eliminating or minimizing the health risks inherent in the use of the housing unit, in particular, the risk of the exposure to formaldehyde;

   c.   Failing to adequately and properly inspect the housing unit to ensure that the housing units contained sufficient warnings of their dangerous properties of the product, in particular, the risk of the exposure to formaldehyde;

   d.   Failing to adequately and properly inspect the housing unit to ensure that such products contained sufficient instructions for eliminating or minimizing the health

risks inherent in the use of the product, in particular, the risk of the exposure to formaldehyde;

e.     Failing to test or lack of sufficient tests to determine the effects and/or the risks of formaldehyde fumes on intended users of the housing unit or their guests;

f.     Failing to properly design the housing unit, including inappropriate designs calling for the inclusion of materials which included formaldehyde, when equally suitable materials which did not contain formaldehyde were available, which would have prevented or significantly reduced the risk of each Named Plaintiff's damages without substantially impairing the housing unit's utility, and which were economically and technologically feasible at the time the housing unit left the control of Manufacturing Defendants;

g.     Failing to properly manufacture the housing unit by incorporating materials in the housing unit which included formaldehyde, when equally suitable materials which did not contain formaldehyde were available, which would have prevented or significantly reduced the risk of each Named Plaintiff's damages without substantially impairing the housing unit's utility, and which were economically and technologically feasible at the time the housing unit left the control of Manufacturing Defendants; and,

h.     Failing to disclose to FEMA or each Named Plaintiff that the housing unit emitted formaldehyde fumes and that such fumes caused health problems, despite the fact that Manufacturing Defendants knew of the dangers of formaldehyde exposure and the emission of formaldehyde from the housing unit.

280. Manufacturing Defendants' breaches were a proximate, direct and/or producing cause of each Named Plaintiff's damages, as set forth herein.

## COUNT 8:

### CAUSE OF ACTION AGAINST MANUFACTURING DEFENDANTS FOR BREACH OF IMPLIED WARRANTY

281. Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

282. At times material herein, Manufacturing Defendants impliedly warranted that each housing unit was made in a good and workmanlike manner, and would be merchantable and habitable, and were fit for their intended purpose as safe and compliant housing units to be used, among other things, to house each Named Plaintiff.

283. As set forth herein, each housing unit were not fit for its intended purpose as safe and compliant housing unit for each Named Plaintiff.

284. Therefore, Manufacturing Defendants breached these warranties.

285. Each Named Plaintiff has notified Manufacturing Defendants of this breach, or has been unable to do so because the housing unit has been removed in many cases.

286. As set forth herein, Manufacturing Defendants' conduct was a producing cause of each Named Plaintiff's damages incurred and set forth herein.

## COUNT 9:

### CAUSE OF ACTION AGAINST MANUFACTURING DEFENDANTS FOR BREACH OF IMPLIED WARRANTIES UNDER THE UCC AND COMMON LAW AND EXPRESS WARRANTIES: ALL STATES

287. Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

288. At all times relevant hereto, the Manufacturing Defendants were in the business of manufacturing, marketing, distributing, and selling mobile homes and travel trailers in the United States.

289. The Manufacturing Defendants sold the subject housing units to the Federal Government, and/or its agents and or representatives for use as FEMA housing units.

290. The Manufacturing Defendants expressly and/or impliedly warranted that the FEMA housing units would be of merchantable quality and fit for their intended purpose as a safe and compliant house to be used, among other things, to house families including families with small children and infants.

291. The Manufacturing Defendants materially breached these warranties in that the FEMA housing units were defective and unfit for those particular purposes and were not of a reasonably merchantable quality.

292. As a direct and proximate result of the Manufacturing Defendants' breaches of these warranties accompanying the FEMA housing units, the Named Plaintiffs have been injured.

## VII. CLAIMS ASSERTED AGAINST THE NO-BID CONTRACTOR DEFENDANTS

**A.  LOUISIANA STATE-BASED CLAIMS**

### COUNT 10:

### CAUSE OF ACTION AGAINST THE
### NO-BID DEFENDANTS UNDER THE LOUISIANA PRODUCTS LIABILITY ACT

293. Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

294. The No-Bid Defendants qualify as manufacturers under the Louisiana Products Liability Act ("LPLA"), as they performed work pursuant to their contracts with FEMA which altered the character, design, construction, and/or quality of the product and the housing units constitute products under the LPLA.

295. The increased exposure to formaldehyde fumes from the alteration of the temporary housing units by the No-Bid Defendants resulted from the normal, foreseeable, and intended use of the products and equipment.

296. The installation and alteration of the temporary housing units, the modifications to the manufacturers' designs, and the "blocking" of units off their wheel base, altered the product which increased the effects of the product's defect and posed an unreasonable risk of harm to each Named Plaintiff.

297. Each Named Plaintiff was an intended and foreseeable users of the alleged defective products, and damages and losses to each Named Plaintiff reasonably could have been anticipated by the No-Bid Defendants.

298.  The No-Bid Defendants, by installing the temporary housing units on concrete blocks for extended occupancy and, further, by installing residential appliances and heating and air conditioning units, knowingly and intentionally modified the design and the actual use of the units.

299. The defects in the No-Bid Defendants' product are the result of and/or include, but are not limited to the following:

    a.    In creating stress and flexing on the frames of the units by lifting significant weight from the wheel base, which distorted the travel trailers' shells allowing for increased moisture intrusion and formaldehyde exposure due to cracks and openings in the shell;

b.    In providing temporary housing units to the each Named Plaintiff which, by virtue of their composition, refurbishment, reconditioning, and/or construction were unreasonably dangerous under reasonably anticipated use;

c.    In providing temporary housing units to each Named Plaintiff which, lacking adequate warnings, were unreasonably dangerous under reasonably anticipated use;

d.    In failing to warn each Named Plaintiff of the unreasonably dangerous nature of the travel trailer(s) converted to temporary housing units for their intended use by FEMA or of the presence of excessive levels of emissions of formaldehyde;

e.    In failure to ensure that the temporary housing units they installed, refurbished, and reconditioned were suitable for their intended use, as long term housing;

f.    In failing to adhere to any and all of the warning against the jacking of the units with weight off their wheel base by the manufacturers;

g.    In failing to follow the manufacturers' instructions for the installation and intended use of the temporary housing units;

h.    In providing housing units which were unduly dangerous due to their emissions of formaldehyde; and,

i.    Such other indicia of fault under the LPLA as will be shown at the trial of this matter.

## COUNT 11:

## NEGLIGENCE OF NO-BID DEFENDANTS UNDER LOUISIANA LAW

298. Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

299. At all relevant times the No-Bid Defendants were tasked with the transportation, installation, site identification, preparation, inspection, maintenance and repair, refurbishment and restoration, and removal of the temporary housing units, which caused the Named Plaintiffs' injuries.

300. The No-Bid Defendants owed a duty to each Named Plaintiff to provide, transport, install, inspect, maintain, repair, refurbish, recondition and restore safe temporary housing units that did not emit hazardous levels of formaldehyde.

301. The No-Bid Defendants knew or should have known when they provided, transported, installed, inspected, maintained, repaired, refurbished, reconditioned and restored the temporary housing units to the general public (thereby modifying and converting the mobile units into residential installations) the actual and intended use of the temporary housing units by each plaintiff, and that the temporary housing units would be used in the manner that each plaintiff herein used the temporary housing units.

302. The No-Bid Defendants breached their duty to each Named Plaintiff in failing to act reasonably in the provision, installation, inspection, maintenance, repair, refurbishment, reconditioning and restoration of the temporary housing units; specifically by:

a. Failing to sufficiently warn the plaintiffs of the inherently dangerous properties or the foreseeable conditions of the temporary housing units when used for long term occupancy; and,

81

b.      Failing to adhere to the manufacturers' warnings against jacking the temporary housing units off the wheel base by "blocking" the units.

303.   The No-Bid Defendants' actions were the proximate cause of the increased exposure of formaldehyde to the each Named Plaintiff.

304.   The No-Bid Defendants contributed to and exacerbated the adverse health impacts upon the residents of the temporary housing units.

## B.   MISSISSIPPI STATE-BASED CLAIMS

### COUNT 12:

### NEGLIGENCE OF NO-BID CONTRACTOR DEFENDANTS
### UNDER MISSISSIPPI LAW

305.   Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

306.   At all relevant times the No-Bid Defendants were tasked with the transportation, installation, site identification, preparation, inspection, maintenance and repair, refurbishment and restoration, and removal of the temporary housing units, which caused the Named Plaintiffs' injuries.

307.   The No-Bid Defendants owed a duty to each Named Plaintiff to provide, transport, install, inspect, maintain, repair, refurbish, recondition and restore safe temporary housing units that did not emit hazardous levels of formaldehyde.

308.    The No-Bid Defendants knew or should have known when they provided, transported, installed, inspected, maintained, repaired, refurbished, reconditioned and restored the temporary housing units to the general public (thereby modifying and converting the mobile units into residential installations) the actual and intended use of the temporary housing units by each plaintiff, and that the temporary housing units would be used in the manner that each plaintiff herein used the temporary housing units.

309. The No-Bid Defendants breached their duty to each Named Plaintiff in failing to act reasonably in the provision, installation, inspection, maintenance, repair, refurbishment, reconditioning and restoration of the temporary housing units; specifically by:

    a.    Failing to sufficiently warn the plaintiffs of the inherently dangerous properties or the foreseeable conditions of the temporary housing units when used for long term occupancy; and,

    b.    Failing to adhere to the manufacturers' warnings against jacking the temporary housing units off the wheel base by "blocking" the units;

310. The No-Bid Defendants' actions were the proximate cause of the increased exposure of formaldehyde to the each Named Plaintiff.

311. The No-Bid Defendants contributed to and exacerbated the adverse health impacts upon the residents of the temporary housing units.

## COUNT 13:

### STRICT PRODUCTS LIABILITY
### MS CODE ANNOTATED § 11-1-63

312. Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

313. The No-Bid Defendants, at the time that each subject housing unit left their control, knew or should have known that each product was defective because it deviated in a material way from the manufacturers' specifications or from otherwise identical units manufactured to the same manufacturing specifications and/or manufacturers' warnings.

314. The No-Bid Defendants, by installing the housing units on concrete blocks for extended occupancy, knowingly and intentionally modified the design and the actual use of the housing units.

315. The No-Bid Defendants knew or should have known that the defective condition rendered each subject housing unit unreasonably dangerous to the user or consumer or others; <u>and</u>

316. The defective and unreasonably dangerous condition of each product (the failure of the subject housing units to be safely habitable without exposure to formaldehyde) proximately caused the damages and injuries sustained by each Named Plaintiff.

317. At all relative times, each Named Plaintiff lacked actual or constructive knowledge of the defective condition of their respective housing units and that each defective product was inconsistent with their safety.

318. At all relevant times, each Named Plaintiff did not appreciate the danger of their housing unit's defective condition.

319. At all relevant times, each Named Plaintiff did not deliberately and voluntarily choose to expose themselves to this danger in such a manner to register assent to the continuance of the dangerous condition.

320. Each subject housing unit in question failed to function as expected as a result of their design characteristics.

321. An alternative design existed at the time that each housing unit left the control of Manufacturing Defendants which would have not impaired the product's usefulness or desirability.

322. The alternative design would have to a reasonable probability prevented the toxic exposure of each Named Plaintiff.

## COUNT 14:

## FAILURE TO WARN

323. Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

324. Each products (housing unit) was defective because it failed to contain adequate warnings or instructions.

325. The No-Bid Defendants failed to warn the Named Plaintiffs of the inherently dangerous properties of the foreseeable conditions of the subject housing units when used for long term occupancy.

326. The No-Bid Defendants failed to warn the Named Plaintiffs of the presence of excessive levels of formaldehyde present in the housing units they installed, maintained, and supervised.

## COUNT 15:

## BREACH OF IMPLIED WARRANTY

327. Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

328. The No-Bid Defendants breached the implied warranty of habitability due to the Named Plaintiffs.  The subject housing units were installed and maintained with an expectation of habitability and a clear implied warranty that such housing would be safe and free of any toxic dangers.

## C.    ALABAMA STATE-BASED CLAIMS

## COUNT 16:

## NEGLIGENCE OF NO-BID CONTRACTOR DEFENDANTS UNDER ALABAMA LAW

329. Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

330. At all relevant times the No-Bid Defendants were tasked with the transportation, installation, site identification, preparation, inspection, maintenance and repair, refurbishment and restoration, and removal of the temporary housing units, which caused the Plaintiffs' injuries.

331. The No-Bid Defendants owed a duty to each Named Plaintiff to provide, transport, install, inspect, maintain, repair, refurbish, recondition and restore safe temporary housing units that did not emit hazardous levels of formaldehyde.

332. The No-Bid Defendants knew or should have known when they provided, transported, installed, inspected, maintained, repaired, refurbished, reconditioned and restored the temporary housing units to the general public (thereby modifying and converting the mobile units into residential installations) the actual and intended use of the temporary housing units by each plaintiff, and that the temporary housing units would be used in the manner that each plaintiff herein used the temporary housing units.

333. The No-Bid Defendants breached their duty to each Named Plaintiff in failing to act reasonably in the provision, installation, inspection, maintenance, repair, refurbishment, reconditioning and restoration of the temporary housing units; specifically by:

a. Failing to sufficiently warn the plaintiffs of the inherently dangerous properties or the foreseeable conditions of the temporary housing units when used for long term occupancy; and,

b. Failing to adhere to the manufacturers' warnings against jacking the temporary housing units off the wheel base by "blocking" the units.

334. The No-Bid Defendants' actions were the proximate cause of the increased exposure of formaldehyde to the each Named Plaintiff.

335. The No-Bid Defendants contributed to and exacerbated the adverse health impacts upon the residents of the temporary housing units.

## D.    TEXAS STATE-BASED CLAIMS

### COUNT 17:

### NEGLIGENCE OF NO-BID CONTRACTOR DEFENDANTS UNDER TEXAS LAW

336. Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

337. At all relevant times No-Bid Defendants were tasked with the transportation, installation, site identification, preparation, inspection, maintenance and repair, refurbishment and restoration, and removal of the temporary housing units, which caused the Named Plaintiffs' injuries.

338. The No-Bid Defendants owed a duty to each Named Plaintiff to provide, transport, install, inspect, maintain, repair, refurbish, recondition and restore safe temporary housing units that did not emit hazardous levels of formaldehyde.

339. The No-Bid Defendants knew or should have known when they provided, transported, installed, inspected, maintained, repaired, refurbished, reconditioned and restored the temporary housing units to the general public (thereby modifying and converting the mobile units into residential installations) the actual and intended use of the temporary

housing units by each plaintiff, and that the temporary housing units would be used in the manner that each plaintiff herein used the temporary housing units.

340. The No-Bid Defendants breached their duty to each Named Plaintiff in failing to act reasonably in the provision, installation, inspection, maintenance, repair, refurbishment, reconditioning and restoration of the temporary housing units; specifically by:

    a.     Failing to sufficiently warn the plaintiffs of the inherently dangerous properties or the foreseeable conditions of the temporary housing units when used for long term occupancy; and,

    b.     Failing to adhere to the manufacturers' warnings against jacking the temporary housing units off the wheel base by "blocking" the units.

341. The No-Bid Defendants actions were the proximate cause of the increased exposure of formaldehyde to the each Named Plaintiff.

342. The No-Bid Defendants contributed to and exacerbated the adverse health impacts upon the residents of the temporary housing units.

## VIII. CLAIMS ASSERTED AGAINST THE PROCUREMENT DEFENDANTS: ALL STATES

### COUNT 18:

### NEGLIGENCE OF PROCUREMENT DEFENDANTS

343. Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

344.  At all relevant times the Procurement Defendants were tasked with the identification, selection and procurement of FEMA temporary housing units for use in Louisiana, Mississippi, Alabama and Texas following hurricanes Katrina and Rita.

345.  The Procurement Defendants owed a duty to Named Plaintiffs to select units which were suitable for the intended purpose of extended habitation up to and exceeding 18 months.

346.  At all relevant times, the Procurement Defendants were in communication with the manufacturers of the subject housing units, including travel trailers, regarding their use as temporary housing units for FEMA in response to hurricanes Katrina and Rita.

347.  The Procurement Defendants knew or should have known when they identified, selected and procured the housing units for use as temporary housing units that the manufacturers specifically warned against such use, and clearly indicated in the various owners' manuals for travel trailers in particular that these were recreational vehicles designed to be mobile and towable, and were expressly not designed for use as permanent dwellings.

348.  The Procurement Defendants knew or should have known that the housing units and travel trailers in particular off-gassed formaldehyde and that extended habitation would expose residents to elevated levels of formaldehyde, increased moisture and condensation and a deterioration of the internal soft goods, all of which rendered the travel trailers unfit for FEMA's intended purpose of extended occupancy.

349.  The Procurement Defendants knowingly and intentionally elected to procure housing units and travel trailers in particular instead of alternative housing more fit for extended occupancy.

89

350. The Procurement Defendants breached their duty to Plaintiffs in failing to act reasonably in the identification, selection and procurement of the temporary housing units, specifically by:

    a.    Failing to sufficiently consult with the manufacturers of the subject housing units regarding their use as FEMA temporary housing units;

    b.    Failing to advise FEMA as to the inadequacy of the travel trailers as temporary housing units; and,

    c.    Knowingly and intentionally selecting the subject housing units, and travel trailers in particular, for use as temporary housing units, rather than alternative housing more fit for extended occupancy.

351. The Procurement Defendants' actions were the proximate cause of the increased exposure of formaldehyde to the Named Plaintiffs, by selecting travel trailers for use as temporary housing units.

352. The Procurement Defendants contributed to the adverse health impacts upon the residents of the temporary housing units by selecting units unfit for extended occupancy.

## IX. DAMAGES ASSERTED

### A.    DAMAGES FOR LOUISIANA STATE-BASED CLAIMS

### COMPENSATORY DAMAGES

353. In addition to and by way of summarizing the compensatory damages prayed for herein, each Named Plaintiff avers that the Manufacturing Defendants, the Insurer Defendants,

The Procurement Defendants, the United States of America through FEMA, and the No-Bid Defendants, individually and/or jointly are responsible for all damages which each Named Plaintiff herein has suffered and continues to suffer as a consequence of defendants' acts and/or omissions as pled herein, which damages include, but are not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages and injuries, loss of consortium, and  loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven at the time of trial.

354.    The damages sought herein by certain Named Plaintiffs on behalf of deceased family members were caused by decedent's exposure to formaldehyde as set forth herein, which damages include, but are not limited to, those available to Named Plaintiffs in wrongful death and survival actions, including loss of society, loss of support, survivor's grief, and incidental damages such as funeral and burial expenses.

**B.     DAMAGES FOR MISSISSIPPI STATE-BASED CLAIMS**

**COMPENSATORY DAMAGES**

355.    In addition to and by way of summarizing the compensatory damages prayed for herein, each Named Plaintiff avers that the Manufacturing Defendants, the Insurer Defendants, The Procurement Defendants, the United States of America through FEMA, and the No-

Bid Defendants, individually and/or jointly are responsible for all damages which each Named Plaintiff herein has suffered and continues to suffer as a consequence of defendants' acts and/or omissions as pled herein, which damages include, but are not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages and injuries, loss of consortium, and  loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven at the time of trial.

356. The damages sought herein by certain Named Plaintiffs on behalf of deceased family members were caused by decedent's exposure to formaldehyde as set forth herein, which damages include, but are not limited to, those available to Named Plaintiffs in wrongful death and survival actions, including loss of society, loss of support, survivor's grief, and incidental damages such as funeral and burial expenses.

## PUNITIVE / EXEMPLARY DAMAGES

357. Pursuant to Miss. Code Ann. § 11-1-65, inasmuch as the conduct of Manufacturing Defendants, and/or the No-Bid Defendants, and/or the Procurement Defendants and their servant/employees constitutes willful, wanton, egregious and reckless disregard for the rights and safety of the plaintiffs, an award of punitive damages is appropriate and necessary under these facts.

## C. DAMAGES FOR ALABAMA STATE-BASED CLAIMS

### COMPENSATORY DAMAGES

358.    In addition to and by way of summarizing the compensatory damages prayed for herein, each Named Plaintiff avers that the Manufacturing Defendants, the Insurer Defendants, The Procurement Defendants, the United States of America through FEMA, and the No-Bid Defendants, individually and/or jointly are responsible for all damages which each Named Plaintiff herein has suffered and continues to suffer as a consequence of defendants' acts and/or omissions as pled herein, which damages include, but are not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages and injuries, loss of consortium, and  loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven at the time of trial.

359.    The damages sought herein by certain Named Plaintiffs on behalf of deceased family members were caused by decedent's exposure to formaldehyde as set forth herein, which damages include, but are not limited to, those available to Named Plaintiffs in wrongful death and survival actions, including loss of society, loss of support, survivor's grief, and incidental damages such as funeral and burial expenses.

**CODE OF ALABAMA § 6-11-23 PUNITIVE / EXEMPLARY DAMAGES**

360.    Pursuant to Alabama Law, inasmuch as the conduct of Manufacturing Defendants, and/or the No-Bid Defendants, and/or the Procurement Defendants and their servants/employees constitutes willful, wanton, egregious and reckless disregard for the rights and safety of

the plaintiffs, an award of punitive damages is appropriate and necessary under these facts.

**D.    DAMAGES FOR TEXAS STATE-BASED CLAIMS**

**COMPENSATORY DAMAGES**

361.    In addition to and by way of summarizing the compensatory damages prayed for herein, each Named Plaintiff avers that the Manufacturing Defendants, the Insurer Defendants, The Procurement Defendants, the United States of America through FEMA, and the No-Bid Defendants, individually and/or jointly are responsible for all damages which each Named Plaintiff herein has suffered and continues to suffer as a consequence of defendants' acts and/or omissions as pled herein, which damages include, but are not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages and injuries, loss of consortium, and  loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven at the time of trial.

362.    The damages sought herein by certain Named Plaintiffs on behalf of deceased family members were caused by decedent's exposure to formaldehyde as set forth herein, which damages include, but are not limited to, those available to Named Plaintiffs in wrongful death and survival actions, including loss of society, loss of support, survivor's grief, and incidental damages such as funeral and burial expenses.

## PUNITIVE DAMAGES

363.  Under the laws of the State of Texas, each Named Plaintiff seeking relief under the statutory provisions set forth herein are also entitled to awards for punitive damages as are appropriate and necessary under these facts.

## REQUEST FOR JURY TRIAL

Each Named Plaintiff is entitled to and demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiffs pray that defendants, the Manufacturing Defendants, the Insurer Defendants, the No-Bid Defendants, the Procurement Defendants, and the Federal Government be served with a copy of this Complaint, and that, after due proceedings:

1.  there be a judgment herein in favor of each Named Plaintiff and against Defendants for all compensatory damages together will legal interest thereon from the date of judicial demand until paid, all costs and expenses of these proceedings, and attorneys' fees, declaring that the defendants are liable for all applicable damages and thereafter;

2.  there be specially included in the judgment in each Named Plaintiffs' favor, provisions for the following damages and relief as found applicable and supported by the evidence:

    a.  past and future physical injuries,

    b.  past and future mental and physical pain and suffering,

    c.  past and future physical impairments and disability,

    d.  past and future reasonable and necessary medical expenses,

95

    e.      past and future loss of earning capacity,

    f.      past and future loss of enjoyment and quality of life,

    g.      loss of consortium and/or society,

    h.      compensable out-of-pocket expenses related to defendants' wrongdoing,

    i.      costs of court; and,

    j.      punitive or exemplary damages

3.     all other general, equitable, and further relief as the Court may deem just and proper.

            Respectfully submitted:

            **FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

        BY:    s/Gerald E. Meunier
               GERALD E. MEUNIER, #9471
               **PLAINTIFFS' CO-LIAISON COUNSEL**
               Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
               2800 Energy Centre, 1100 Poydras Street
               New Orleans, Louisiana 70163
               Telephone:    504/522-2304
               Facsimile:    504/528-9973
               gmeunier@gainsben.com

               s/Justin I. Woods
               JUSTIN I. WOODS, #24713
               **PLAINTIFFS' CO-LIAISON COUNSEL**

Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:   504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
ROBERT M. BECNEL, #14072
RAUL BENCOMO, #2932
FRANK D'AMICO, JR., #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL C. WATTS, Texas #20981820

**SERVICE OF PROCESS INFORMATION**

1.   **The United States of America**
     Through the United States Attorney General,
     Hon. Eric H. Holder, Jr.
     U.S. Department of Justice
     950 Pennsylvania Avenue, NW
     Washington, DC 20530-0001
     And
     Through the Office of the U.S. Attorney for the Eastern District of Louisiana
     Through Jim Letten, United States Attorney
     Hale Boggs Federal Building
     500 Poydras Street, Suite B-210
     New Orleans, Louisiana 70130

2.      **Federal Emergency Management Agency**
        Through the Office of the Director
        Administrator of the Federal Emergency Management Agency
        500 C Street S.W.
        Washington, D.C. 20472

3.      **Allen Camper Mfg. Company, Inc.**
        Through its Agent for Service of Process
        Jerry Peay
        *Address not provided per Secretary of State records*
        Allen, OK

4.      **Alliance Homes, Inc. d/b/a Adrian Homes**
        Through its Agent for Service of Process
        Glinn H. Spann
        734 East Main Street
        Adrian, GA 31002

5.      **American Camper Manufacturing, LLC d/b/a  AMERI-CAMP**
        Through its Agent for Service of Process
        Peter J. Recchio
        1406 Greenleaf Blvd.
        Elkhart, IN 46514

6.      **American Homestar Corporation**
        Through its Agent for Service of Process
        Craig A Reynolds
        2450 South Shore Boulevard
        Ste. 300
        League City, TX 77573

7.      **American International Group**
        Through it Agent For Service of Process
        The Louisiana Secretary of State
        8585 Archives Avenue
        Baton Rouge, Louisiana 70809

8.      **American International Specialty Lines**
        Through the Louisiana Secretary of State
        Legal Services Section
        Post Office Box 94125
        Baton Rouge, Louisiana 70804-9125

9.      **Arch Specialty Insurance Company**
        Through the Louisiana Secretary of State
        Legal Services Section
        Post Office Box 94125
        Baton Rouge, Louisiana 70804-9125

10.     **Athens Park Homes, L.L.C.**
        Through its Agent for Service of Process
        Norman A. Lofgren
        1601 Elm St., Ste. 4100
        Dallas, TX 75201

11.     **Cavalier Home Builders, LLC**
        Through its Agent for Service of Process
        The Corporation Company
        2000 Interstate Pk Dr.
        Suite 204
        Montgomery, AL  36109

12.     **Cavalier Homes Inc.**
        Through its Agent for Service of Process
        The Corporation Company
        2000 Interstate Pk Dr.
        Suite 204
        Montgomery, AL  36109

13.     **Champion Enterprises, Inc.**
        Through its Agent for Service of Process
        The Corporation Company
        30600 Telegraph Road

        Ste. 2345
        Bingham Farms, MI 48025

14.     **Champion Home Builders Co.**
        Through its Agent for Service of Process
        The Corporation Company
        30600 Telegraph Road

        Ste. 2345
        Bingham Farms, MI 48025

15.     **Circle B Enterprises, Inc**.
        Through its Agent for Service of Process
        Jackie Williams
        305 E 3rd Street
        Ocilla, GA 31774

16.     **CMH Manufacturing, Inc.**
        Through its Agent for Service of Process
        C T Corporation System
        800 S. Gay Street
        Suite 2021
        Knoxville, TN 37929

17.     **Coachmen Industries, Inc**.
        Through its Agent for Service of Process
        Corporation Service Company
        251 East Ohio St.
        Suite 500
        Indianapolis, IN 46204

18. **Coachmen Recreational Vehicle Company, LLC**

Through its Agent for Service of Process

Corporation Service Company

251 East Ohio Street

Suite 500

Indianapolis , IN 46204

19. **Coachmen Recreational Vehicles of Georgia, LLC**

Through its Agent for Service of Process

Corporation Service Company

40 Technology Pkwy South, #300

Norcross, GA 30092

20. **Cruiser RV, LLC**

Through its Agent for Service of Process

David E. Fought

7805 N ST RD 9

Howe, IN 46746

21. **Crum & Forster Specialty Insurance Company**

Through the Louisiana Secretary of State

Legal Services Section

Post Office Box 94125

Baton Rouge, Louisiana 70804-9125

22. **Damon Corp.**

Through its Agent for Service of Process

C.T. Corporation System

36 S. Pennsylvania St.

Ste. 700

Indianapolis, IN 46204

23.    **Del-Jen, Inc.**

Through its Agent for Service of Process

Corporation Service Company

320 Somerulos Street

Baton Rouge, Louisiana 70802-6129

24.    **Design Homes, Inc.**

Through its Agent for Service of Process

Randolph Weeks

600 S. Marquette Rd.

P.O. Box 239

Prairie Du Chien, WI 53821-0239

25.    **Destiny Industries, LLC**

Through its Agent for Service of Process

Lester M Castellow

700 South Main Street

Moultrie, GA 31768

26.    **Dreams R.V. Sales, Inc.**

Through its Agent for Service of Process

Alice R Stanley

1201 S Vineland Road, STE. 3121

Winter Garden, FL 34787

27.    **DS Corp.**

Through its Agent for Service of Process

CT Corporation System

36 S Pennsylvania St., # 700

Indianapolis, IN 46204

28.    **DS Corp. d/b/a CrossRoads RV**

c/o Denette Boswell

P. O. Box 40

Topeka, Indiana 46571

29.  **Dutch Housing, Inc. d/b/a Champion Homes**
Through its Agent for Service of Process
The Corporation Company
30600 Telegraph Road
Ste. 2345
Bingham Farms, MI 48025

30.  **Dutchmen Manufacturing, Inc.**
Through its Agent for Service of Process
CT Corporation System
251 E. Ohio Street Suite 1100
Indianapolis, IN 46204

31.  **Fairmont Homes, Inc.**
Through its Agent for Service of Process
Kenneth C. Brinker
502 South Oakland
Nappanee, IN 46550

32.  **Forest River, Inc.**
Through its Agent for Service of Process
J. Richard Ransel
228 W. High St.
Elkhart, IN 46516

33.  **Four Winds International Corporation**
Through its Agent for Service of Process
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

34. **Frontier RV, Inc.**
Through its Agent for Service of Process
Lawyer's Aid Service, Inc.
408 W. 17th Street
Suite 101
Austin, TX 78701

35. **Gibraltar Insurance Co.**
Through the Louisiana Secretary of State
Legal Services Section
Post Office Box 94125
Baton Rouge, Louisiana 70804-9125

36. **Giles Family Holdings, Inc.**
Through its Agent for Service of Process
Alan C. Neely
405 S. Broad St.
New Tazewell, TN 37825-7243

37. **Giles Industries, Inc**.
Through its Agent for Service of Process
CT Corporation System
800 Gay Street
Suite 2021
Knoxville, TN  37929

38. **Giles Industries of Tazewell, Incorporated**
Through its Agent for Service of Process
Alan C. Neely
405 S. Broad St.
New Tazewell, TN 37825-7243

39. **Gulf Stream Coach, Inc.**

Through its Agent for Service of Process

Kenneth C. Brinker

503 South Oakland

Nappannee, IN 46550

40. **Heartland Recreational Vehicles, LLC**

Through its Agent for Service of Process

Douglas Lantz

1001 All Pro Drive

Elkhart, IN 46514

41. **Homes of Merit, Inc.**

Through its Agent for Service of Process

755 West Big Beaver Road 1000

Troy, MI 48084

42. **Horton Homes, Inc.**

Through its Agent for Service of Process

Steve M. Sinclair

557 Milledgeville Road

Eatonton, GA 31024

43. **Hy-Line Enterprises, Inc. n/k/a FRH, Inc.**

Through its Agent for Service of Process

Margaret Flager

52219 Delta Ct.

Elkhart, IN 46516

44. **Indiana Building Systems, LLC d/b/a Holly Park**

Through its Agent for Service of Process

Lisa Kuhtic

51700 Lovejoy Dr.

Middlebury, IN 46540

45.  **Insurance Company of the State of Pennsylvania**
     Through the Louisiana Secretary of State
     Legal Services Section
     Post Office Box 94125
     Baton Rouge, Louisiana 70804-9125

46.  **Insurco, Ltd.**
     Through the Louisiana Secretary of State
     Legal Services Section
     Post Office Box 94125
     Baton Rouge, Louisiana 70804-9125

47.  **Jayco, Inc.**
     Through its Agent for Service of Process
     Glenn E. Killoren
     121 W Franklin St.,  Ste. 200
     Elkhart,  IN 46516

48.  **Jayco Enterprises, Inc.**
     Through its Agent for Service of Process
     Glenn E. Killoren
     121 W Franklin St.,  Ste. 200
     Elkhart,  IN 46516

49.  **Keystone Industries, Inc.**
     Through its Agent for Service of Process
     H.B. Green
     6801 Lake Plaza Drive
     Indianapolis, IN 46220

50.  **Keystone RV Company**
     Through its Agent for Service of Process
     David G. Thomas
     2642 Hackberry Drive
     Goshen , IN 46526

51.   **Komfort Corp**.
      Through its Agent for Service of Process
      C.T. Corporation System
      388 State St.
      Ste. 420
      Salem, OR 97301

52.   **KZRV, LP**
      Through its Agent for Service of Process
      Daryl Zook
      9270 W US 20
      Shipshewana, IN 46565

53.   **Lakeside Park Homes, Inc.**
      Through its Agent for Service of Process
      Ben C. Jarvis
      70 Peachstate Drive
      Adel, GA 31620

54.   **Layton Homes Corp**.
      Through its Agent for Service of Process
      Linda Philippsen
      2520 By-Pass Rd.
      Elkhart, IN 46514

55.   **Lexington Homes**
      Through its Agent for Service of Process
      John W. Barrett
      P. O. Box 987
      Lexington, MS 39095

56.   **Lexington Insurance Company**
      Through the Louisiana Secretary of State
      Legal Services Section
      Post Office Box 94125
      Baton Rouge, Louisiana 70804-9125

57.  **Liberty Homes, Inc.**
     Through its Agent for Service of Process
     Edward J. Hussey
     1101 Eisenhower Dr. North
     Goshen, IN 46527

58.  **Liberty Insurance Corp.**
     Through the Louisiana Secretary of State
     Legal Services Section
     Post Office Box 94125
     Baton Rouge, Louisiana 70804-9125

59.  **Liberty Mutual Insurance Corporation**
     Through the Louisiana Secretary of State
     Legal Services Section
     Post Office Box 94125
     Baton Rouge, Louisiana 70804-9125

60.  **Liberty RV & Marine, Inc.**
     Through its Agent for Service of Process
     Wayne A. Spear
     7500 NW 42 Ave Rd.
     Ocala, FL 34482

61.  **Mitchell County Industries, LLC.**
     Through its Agent for Service of Process
     Alfred J. Powell, Jr.
     2959 U.S. Highway 19
     Pelham, GA 31779

62.  **Morgan Buildings & Spas, Inc.**
     Through its Agent for Service of Process
     C T Corporation System
     5615 Corporate Blvd.
     Ste. 400B
     Baton Rouge, LA 70808

63.  **Morgan Building Systems, Inc.**
Through its Agent for Service of Process
C T Corporation System
5615 Corporate Boulevard, Suite 400B
Baton Rouge, LA 7080

64.  **Murillo Modular Group, LTD**
1400 Bradley Lane
Carrollton, Texas 75007-4855

65.  **Northwood Manufacturing, Inc.**
Through its Agent for Service of Process
Sherry A. Nash
59948 Downs Road
La Grande, OR 97850

66.  **Oak Creek Homes, L.P.**
Through its Agent for Service of Process
Texas Secretary of State
2450 South Shore Boulevard
Suite 300
League City, TX 77573

67.  **Oak Creek Homes, Inc.**
Through its Agent for Service of Process
Texas Secretary of State
2450 South Shore Boulevard
Suite 300
League City, TX 77573

68.  **Palm Harbor Homes, Inc.**
Through its Agent for Service of Process
C T Corporation System
5615 Corporate Blvd.
Ste. 400B
Baton Rouge, LA 70808

69.    **Palm Harbor Manufacturing, Inc.**
       Through its Agent for Service of Process
       C T Corporation System
       5615 Corporate Blvd.
       Ste. 400B
       Baton Rouge, LA 70808

70.    **Palm Harbor Albermarle, LLC**
       Through its Agent for Service of Process
       C T Corporation System
       225 Hillsborough Street
       Raleigh, NC 27603

71.    **Play'Mor Trailers, Inc.**
       Through its Agent for Service of Process
       John C. Willibrand
       3231 Hwy 63 South
       P.O. Box 128
       Westphalia, MO 65085

72.    **Project Resources, Inc. Of California**
       Through its Agent for Service of Process
       National Registered Agents, Inc.
       1011 N. Causeway Boulevard, Suite 3
       Mandeville, Louisiana 70471

73.    **Recreation By Design, LLC**
       Through its Agent for Service of Process
       Randall K. Rush
       21746 Buckingham Rd.
       Elkhart , IN 46516

74.   **Redman Homes Inc. (f/k/a Dutch Homes)**
      Through its Agent for Service of Process
      C T Corporation System
      251 E. Ohio Street
      Suite 1100
      Indianapolis , IN 46204
      and
      C T Corporation System
      5615 Corporate Blvd.
      Ste. 400B
      Baton Rouge, LA 70808

75.   **River Birch Homes, Inc. and/or River Birch Homes, L.L.C.**
      Through its Agent for Service of Process
      Delmo Payne
      5400 Bexar Ave. E.
      Hamilton, AL  35570

76.   **Scotbilt Homes, Inc.**
      Through its Agent for Service of Process
      Sam P. Scott
      2888 Fulford Road
      Waycross, GA 31503

77.   **Sentry Insurance**
      Through the Louisiana Secretary of State
      Legal Services Section
      Post Office Box 94125
      Baton Rouge, Louisiana 70804-9125

78.   **Silver Creek Homes, Inc.**
      Through its Agent for Service of Process
      David H. Silvertooth
      PO Box 150
      Henrietta, TX 76365

79. **Skyline Corporation**
Through its Agent for Service of Process
Linda Philippsen
2520 By-Pass Road
Elkhart, IN 46514

80. **Southern Energy Homes, Inc.**
Through its Agent for Service of Process
C T Corporation System
5615 Corporate Blvd.
Ste. 400B
Baton Rouge, LA 70808
**And**
Wendell Batchelor
Highway 41 North
Addison, AL  35540

81. **Starr Excess Liability Insurance Company, Ltd.**
Through the Louisiana Secretary of State
Legal Services Section
Post Office Box 94125
Baton Rouge, Louisiana 70804-9125
and
Through its Chief Executive Officer
175 Water Street, 19th Floor
New York, New York 10038

82. **Starcraft RV, Inc.**
Through its Agent for Service of Process
Glenn E. Killoren
121 W Franklin St.
Suite 200
Elkhart, IN 46516

83. **Stewart Park Homes, Inc.**
Through its Agent for Service of Process
A. Lucas Stewart, III
219 Industrial Blvd
Thomasville, GA 31792

84. **Sun Valley, Inc.**
Through its Agent for Service of Process
Dan Morrison
120 W Lexington Ave.
Elkhart , IN 46516

85. **Sunline Acquisition Company Ltd. d/b/a Sunline Coach Company**
Through its Agent for Service of Process
245 S Muddy Creek Rd.
Denver, PA 17517-9638

86. **Sunnybrook R V, Inc.**
Through its Agent for Service of Process
Elvie J. Frey Sr.
201 14th St.
Middlebury, IN 46540
or
P. O. Box 2001
Middlebury, IN 46540

87. **Sunray RV, LLC**
Through its Agent for Service of Process
Alan Neely
405 South Broad St.
New Tazewell, TN  37825

88.     **Superior Homes, LLC**
        Through its Agent for Service of Process
        James C. Roby
        816 S Broadway
        P.O. Box 1600
        Watertown, SD  57201-6600

89.     **Superior RV Manufacturing, Inc.**
        Through its Agent for Service of Process
        Carol Sweet
        1693 N. Shepherd Rd.
        Space 6
        Washougal, WA 98671

90.     **Thor California, Inc., doing business in California as Thor Manufacturing**
        Through its Agent for Service of Process
        C T Corporation System
        818 West Seventh St.
        Los Angeles, CA 90017
        and
        Through its Counsel
        John Deeds
        100 S. Main Avenue, Suite 300
        Sidney, Ohio 45365

91.     **Timberland RV Company d/b/a Adventure Manufacturing**
        Through its Agent for Service of Process
        Mark Gerber, President
        P. O. Box 1210
        Peru, IN 46970

92.     **TL Industries, Inc.**
        Through its Agent for Service of Process
        Rebecca Butler Power
        221 W. Lexington Ave.
        Elkhart, IN 46516

114

93. **Townhomes, LLC**
Through its Agent for Service of Process
Gary C. Towns
133 SE Newell Drive
Lake City, FL 32025

94. **Vanguard Industries of Michigan, Inc. (a/k/a Palomino RV)**
Through its Agent for Service of Process
Scott A. Day
31450 M-86
West Colon, MI 49040

95. **Viking Recreational Vehicles, LLC**
CSC-LAWYERS INCORPORATING SERVICE
601 Abbott Road
East Lansing, MI 48823

96. **Waverlee Homes, Inc.**
Through its Agent for Service of Process
Phil Fowler
Hwy. 278 East
Hamilton, AL, 33570

97. **Westchester Surplus Lines Insurance Company**
Through the Louisiana Secretary of State
Legal Services Section
Post Office Box 94125
Baton Rouge, Louisiana 70804-9125

98. **North American Catastrophe Services, Inc.**
Through its Agent for Service of Process
Brenda J. Anderson
620 Dijon Dr.
Melbourne, FL 32937

99. **Shaw Environmental, Inc.**
Through its Agent for Service of Process
C T CORPORATION SYSTEM
5615 CORPORATE BLVD., STE. 400B
BATON ROUGE, LA 70808
And through its Counsel of Record
Karen Whitfield
Baker Donelson, Bearman, Caldwell & Berkowitz, PC
201 St. Charles Ave.
Suite 3600
New Orleans, LA 70170

100. **Fluor Enterprises, Inc.**
Through its Agent for Service of Process
CORPORATION SERVICE COMPANY
320 SOMERULOS ST.
BATON ROUGE, LA 70802-6129
And through its Counsel of Record
Charles Penot
Middleberg Riddle and Gianna
KPMG Centre
Suite 2400
717 Harwood
Dallas, TX 75201

101. **CH2M Hill Constructors, Inc.**
Through its Agent for Service of Process
C T CORPORATION SYSTEM
5615 CORPORATE BLVD., STE. 400B
BATON ROUGE, LA 70808
And through its Counsel of Record
Gerardo Barrios
Baker Donelson, Bearman, Caldwell & Berkowitz, PC
#3 Sanctuary Boulevard
Suite 201
Mandeville, LA 70471

116

102. **Bechtel National, Inc**.
Through its Agent for Service of Process
C T CORPORATION SYSTEM
645 Lakeland East Drive, Ste. 101
Flowood, MS 39232
And through its Counsel of Record
Peter Tafaro
Frilot, LLC
1100 Poydras Street, Suite 3700
New Orleans, LA 70163

103. **Jacquet Construction Services, LLC**
Through its Agent for Service of Process
George A. Mueller, III
4044 Gentilly Road
New Orleans, LA 71026-4813

104. **T-Mac, Inc.**
Through its Agent for Service of Process
Timothy McDonald
232 Coquille Lane
Madisonville, LA 70447

105. **American Radiation Services, Inc.**
Through its Agent for Service of Process
Danny L. Coleman
2609 N. River Rd.
Port Allen, LA 70767

106. **ALCATEC, LLC.**
Through its Agent for Service of Process
Rosemary Barbour
210 E Capitol St.
Suite M114
Jackson, MS 39201

117

107. **JWK, Corp.**

Through its agent for service of process

C. T. Corporation System

5615 Corporate Blvd.

Ste. 400B

Baton Rouge, LA 70808