UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER FORMALDEHYDE          MDL NO. 1873
PRODUCTS LIABILITY LITIGATION

                                          SECTION N(5)

                                          JUDGE ENGELHARDT

                                          MAGISTRATE CHASEZ
THIS DOCUMENT RELATES TO: All Cases

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

### MEMORANDUM IN SUPPORT OF BECHTEL NATIONAL, INC.'S AND CH2M HILL CONSTRUCTORS, INC.'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' MISSISSIPPI PRODUCTS LIABILITY CLAIMS

This memorandum is submitted on behalf of Bechtel National, Inc. ("Bechtel") and CH2M HILL Constructors, Inc. ("CH2M") in support of their Fed Rule Civ. Proc. art. 12(b)(6) motion to dismiss plaintiffs' claims against Bechtel and CH2M brought under Mississippi Products Liability Law, MS Code Annotated § 11-1-63, in all cases pending in this multi-district litigation.

### COURT'S PRIOR DISMISSAL OF PRODUCTS LIABILITY CLAIMS AND APPLICATION TO MDL CASES

This Court has already ruled on this precise legal issue under Louisiana law, granting motions for summary judgment filed by Fluor Enterprises, Inc. ("Fluor") in the *Alexander* case[1]

---

[1]   R. Doc. 3217.

and the *Dubuclet* matter.[2]  In *Dubuclet*, plaintiffs admitted that the material facts were identical to those in the *Alexander* case, concerning the same issue of whether Fluor is a LPLA "manufacturer" and therefore, they could not articulate any factual or legal basis for the court to reach a different conclusion.[3]  Bechtel and CH2M's role as government contractors who hauled and installed emergency housing is identical to Fluor's role, compelling the same result – dismissal of plaintiffs' products liability claims against Bechtel and CH2M.

Specifically, Alana Alexander and her minor son, C.C., were bellwether plaintiffs in the first trial held in September, 2009.[4]  In dismissing the *Alexander* plaintiffs' LPLA claims against Fluor, this Court concluded that:

> Fluor simply does not meet the definition of 'manufacturer' found in the LPLA. . . . [Fluor] was merely a contract service provider, which provided the services of delivering, setting up and readying for use the EHU assigned to the bellwether plaintiffs.  It did not manufacture Plaintiffs' EHU, nor did it assemble it or use it as a component part.  Moreover, Fluor did not purchase the EHU that was assigned to Plaintiffs, nor did it create a new product by setting up the EHU.  It readied the EHU for use; it did not create a new product.[5]

Based on this reasoning, the Court also dismissed the LPLA claims of the bellwether plaintiffs in the *Dubuclet* case.[6]  Most recently, after Shaw Environmental, Inc. ("Shaw") filed a motion for summary judgment to dismiss plaintiffs' products liability claims in the *Wright* bellwether case, the parties entered a stipulation whereby plaintiff waived and dismissed with

---

[2]   R. Doc. 7440.
[3]  See plaintiffs' response to motions for summary judgment by Fluor, Rec. Doc. 7261
[4]   The *Alexander* plaintiffs joined the MDL in *Age, et al. v. Gulf Stream Coach, Inc., et al.*, 09-2892, R. Doc. 1, and their claims were later severed for trial.
[5]   Court's Order and Reasons, R. Doc. 3217, p. 5.
[6]   Court's Order, R. Doc. 7440.

prejudice his claims against Shaw under the LPLA.  Shaw agreed to withdraw its motion as moot, and the Court ruled accordingly.[7]

Like the *Alexander* and *Dubuclet* cases, this is purely a legal issue for the Court to decide. There is nothing unique to any plaintiff in this litigation that would warrant this Court's departure from its well-reasoned decisions in *Alexander* and *Dubuclet*.  Like Fluor, Bechtel and CH2M were hired to place the Emergency Housing Units ("EHU"), "which were manufactured by another entity (which is a party to this lawsuit),"[8] on concrete blocks and connect it to local utilities."  Neither Bechtel nor CH2M manufactured the units or "assembled" the EHUs.[9] Moreover, neither Bechtel nor CH2M purchased or sold the EHUs  assigned to the plaintiffs, nor did they create a new product by setting up the EHUs.

In support of their Mississippi Products Liability claims, plaintiffs assert essentially the same conclusory factual allegations and legal conclusions regarding Bechtel's and CH2M's role as a government contractor hauling and installing EHUs as they made in the *Alexander* and *Dubuclet* cases.  As this Court is aware, from reviewing the standard of evidence in *Alexander* and *Dubuclet*, the contractors' roles as government contractors and the nature of the work pursuant to the IA/TAC with FEMA were the same for all EHUs involved in this MDL litigation. Plaintiffs' AMC allegations do not articulate any factual or legal basis for the Court to reach a different decision as to the Products Liability claims.  The material facts regarding Bechtel and CH2M's role in hauling and installing EHUs are not in dispute, and only questions of law

---

[7]  Court's Order, Rec. Doc. 11342.
[8]  Court's Order and Reasons, R. Doc. 3217, p.  6.
[9]  *Id.* at p. 5.

concerning the applicability of the Mississippi Products Liability statute, similar to those that have already been decided under Louisiana law in favor of the contractors, remain.

Bechtel and CH2M submit that this is the appropriate juncture for the entry of an order dismissing plaintiffs' Mississippi Products Liability claims against Bechtel and CH2M in all MDL cases.  It is unnecessary for the court to look at each individual case, as the allegations and evidence are materially the same.  To require Bechtel and CH2M to file motions in each individual case on this legal issue would impede the progress of this litigation and would require significant time and expense leading to the same result.  Accordingly, this Rule 12 motion is appropriate and Plaintiffs' Mississippi Products Liability claims against Bechtel and CH2M should be dismissed.

## PRELIMINARY STATEMENT

The Federal Emergency Management Agency (FEMA) owned and/or purchased travel trailers, park models and manufactured homes for use as emergency housing units (EHUs) for persons displaced from their residences after Hurricanes Katrina and Rita struck the Louisiana Gulf Coast.  FEMA had an Individual Assistance—Technical Assistance Contract (IA-TAC) with Bechtel and CH2M to deliver, set up and ready these EHUs for use.  In order to perform their obligations under the IA-TAC, Bechtel and CH2M, or one of their subcontractors, would transport and deliver an EHU, place the EHU upon concrete blocks, stabilize the unit and ready the unit for use by the displaced occupant(s).  Plaintiffs claim that these simple steps render Bechtel and CH2M liable as manufacturers of the EHU under Mississippi Products Liability

Law.[10]   The process by which Bechtel and CH2M conducted its tasks and performed its contractual obligations in general, and with respect to individual EHUs, did not create a "product" such that Bechtel or CH2M can be liable as "manufacturers" or "sellers" under the Mississippi Products Liability law.[11]

## **BACKGROUND**

This multi-district litigation (MDL) is the consolidation of multiple federal toxic tort suits in which plaintiffs claim to have inhabited EHUs that were provided to them by FEMA, because their residences were rendered uninhabitable by Hurricanes Katrina and Rita.[12]   After selecting and purchasing these EHUs, FEMA provided them to plaintiffs by contracting with certain companies, similar to those herein, to deliver the EHUs, set them up and make them ready for residential use.[13]   Plaintiffs generally claim to have been exposed to formaldehyde contained in these EHUs and to have suffered damages as a result.   Plaintiffs sued the manufacturers of the EHUs, the United States Government and the government contractors, like Bechtel and CH2M, who delivered and set up these EHUs.   These EHUs consist of travel trailers, park models, or manufactured homes.[14]

In the AMC, plaintiffs generally assert Mississippi Product Liability and negligence claims against Bechtel and CH2M,[15] contending that both entities somehow qualify as "manufacturers" simply because Bechtel and CH2M installed, or had a subcontractor install, the

---

[10]  See Fourth Supplemental and Amended Complaint  (*Rec. Doc.* 4486, ¶¶ 312-322).
[11]  See Court's order, Rec. doc. 3217, p. 5 & 6.
[12]  The AMC, pars. 124 and 128.
[13]  Court's Order, Rec. doc. 717, p. 22.
[14]  Rec. Doc. 1629, n. 1.
[15]  Plaintiffs' negligence claims are addressed in a separate motion.

EHUs on concrete blocks and attached the units to utilities, including water, sewer and electricity.[16]   Bechtel and CH2M, like Fluor, are not manufacturers of any products, and the process by which Bechtel and CH2M conducted their tasks and performed their contractual obligations with respect to the FEMA travel trailers assigned to and ultimately occupied by the plaintiffs did not result in the creation of a "product" whereby Bechtel or CH2M could be liable as "manufacturers."[17]

Plaintiffs admit in the AMC that following Hurricane Katrina they received emergency housing assistance from FEMA, pursuant to the Stafford Act and applicable federal regulations.[18] FEMA provided plaintiffs with EHUs manufactured by the Manufacturing Defendants.[19] Plaintiffs allege (and it is uncontested) that FEMA selected, ordered, and purchased the EHUs through intermediaries and/or from the trailer manufacturers.[20]   Plaintiffs allege (and it is uncontested) that Bechtel and CH2M had contracts with FEMA that required them to haul, install and maintain, for a time, various types of emergency housing manufactured by others that FEMA had selected to provide to people displaced as a result of Hurricanes Katrina and Rita.[21] Plaintiffs also allege (and it is undisputed) that in the course of performing their contractual obligations to FEMA, Bechtel and CH2M utilized subcontractors to haul and install travel

---

[16]  The AMC, count 13, Rec. Doc. 4486.
[17]  Court's Order, Rec. Doc. 3217, p. 516.
[18]  The AMC, art. IV, par. 124, 128, 143-44.
[19]   The plaintiffs classify the manufacturers of the EHUs as the "Manufacturing Defendants" in the AMC.  See AMC, par. 129.
[20]  The AMC, par. 129, 143-44.
[21]  The AMC, pars. 107-148, 152 & 154.

trailers manufactured by others and selected by FEMA to serve as emergency housing for plaintiffs.[22]

## ARGUMENT

### I.     12(b)(6) LEGAL STANDARD

Fed. Rule Civ. Proc. art. 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted.   Under Rule 12(b)(6), a claim may be dismissed either because it asserts a legal theory that is not cognizable as a matter of law or because it fails to allege sufficient facts to support a cognizable claim.  The purpose of Rule 12(b)(6) is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true.  *Eastwood v. U.S.*, No. 2:06-CV-164, 2007 U.S. Dist. Lexis 71892 *4 (E.D. Tn. 2007).  A complaint should be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Turner, 2005 U.S. Dist. Lexis at *7 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed 2d 80 (1957)).  To survive a motion to dismiss under 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Eastwood, 2007 U.S. Dist. Lexis at *4 (citing *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007)). "The complaint must contain either 'direct or inferential allegations respecting all the material elements to sustain a recovery ... .'" Id. (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

---

[22]  See AMC, par. 155 (the allegations which constitute legal conclusions in this paragraph are denied on that basis).

In evaluating motions to dismiss under Rule 12(b)(6), the court "must accept well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." Order and reasons (Rec. doc. 984, p. 5) (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279 (1986)). "However, complaints must provide more than labels and conclusions, formulaic recitations of the elements of causes of action, and facts that do not raise a right to relief above the speculative level." *Martino*, 2009 U.S. Dist. Lexis at *6 (citing *Bell Atl. Corp*., 550 U.S. at 555). *See also* this court's recitation of the legal standards for a Rule 12(b)(6) motion in its order and reasons (Rec. doc. 984, p. 4). Thus, the plaintiff must plead "'enough facts to state a claim to relief that is plausible on its face.'" (Rec. doc. 984) (citing *In re Katrina Canal Breaches Lit*., 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1974)).[23] "In other words, the '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact).'" (Rec. doc. 984, p.4) (quoting *Twombly*, 127 S.Ct. at 1965).[24] The degree of required specificity, however, depends on the context, i.e., the type of claim at issue." (Rec. doc. 984, p. 4) (citing *Robbins*, 519 F.3d at 1247). The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action. *Twombly*, 550 U.S. at 544.

---

[23] See also Martino, 2009 U.S. Dist. Lexis at *6 (a plaintiff's allegations must show that his entitlement to relief is plausible rather than merely speculative) (citing Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008)).

[24] This Court noted the Third Circuit recently described Twombly as "seek[ing] to find a middle ground between 'heightened fact pleading,' which is expressly rejected [relative to Rule 8] . . . and allowing complaints that are not more than 'labels and conclusions' or a 'formulaic recitation of the elements of the cause of action' which the Court stated 'will not do'." Rec. doc. 984, p. 4, n. 3 (citing Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly, 127 S.Ct. at 1965).

"While the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff." *Delhomme v. Caremark Prescription, Inc.,* No. 3:05-cv-505-R, 2005 U.S. Dist. Lexis 26131, *10 (citing *Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas,* 20 F.3d 1362, 1366 (5th Cir. 1994)).  "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Delhomme,* 2005 U.S. Dist. Lexis 26131, *11 (citing *Blackburn v. City of Marshall,* 42 F.3d 25, 931 (5th Cir. 1995) (quotation omitted); *see also Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (cited by this Court in Rec. doc. 984, p. 4); *see also Eastwood,* 2007 U.S. Dist. Lexis at *5 (the court need not accept as true mere legal conclusions or unwarranted factual inferences); <u>Stewart</u>, 2009 U.S. Dist. Lexis at *4 (citing *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.,* 497 F.3d 546, 550 (5th Cir. 2007) ("nevertheless, '[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions'").

Taking the facts as true, a court may grant a motion to dismiss when "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action," as here.  *See Marshall v. Bd. of Education v. Marshall City. Gas Dist.* 992 F.2d 1171, 1174 (11th Cir. 1993).  Thus, "when the allegations in the complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." <u>Stewart</u>, 2009 U.S. Dist.

Lexis at *3 (citing *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1966).

## II.   PLAINTIFFS' MISSISSIPPI PRODUCTS LIABILITY CLAIMS AGAINST BECHTEL AND CH2M FAIL AS A MATTER OF LAW

Plaintiffs' Mississippi Products Liability claims against Bechtel and CH2M fail as a matter of law and should be dismissed pursuant to Rule 12(b)(6).  Bechtel and CH2M are contractors, and plaintiffs repeatedly allege as much, who performed their work according to and in compliance with specifications provided and mandated by FEMA.  Plaintiffs do not allege and it is undisputed that neither Bechtel nor CH2M sold the EHUs.  Moreover, the process by which Bechtel and CH2M conducted their tasks and performed their contractual obligations did not create a "product" whereby Bechtel or CH2M could be liable as manufacturers under Mississippi Products Liability law, entitling Bechtel and CH2M to a dismissal of plaintiffs' product liability claims in all cases pending in this MDL.

The general rule in Mississippi is that a contractor or subcontractor who contracts to supply a product made or sold by another cannot be liable under the products statute if the contractor or subcontractor is not in the business of selling or making the products.  There is no allegation in plaintiffs' complaint that Bechtel or CH2M were sellers or manufacturers of the EHUs.  There is no confusion as to the identity of the manufacturers and/or sellers of the units, as they are also defendants in this litigation.  Because Bechtel and CH2M are not manufacturers or sellers of the EHUs, plaintiffs cannot state a cause of action against either under Mississippi Products Liability law.

MS Code Annotated  § 11-1-63 provides:

Subject to the provisions of Section 11-1-64, in any action for damages caused by a product except for commercial damage to the product itself:

(a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

(i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or

2. The product was defective because it failed to contain adequate warnings or instructions, or

3. The product was designed in a defective manner, or

4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and

(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and

(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sough.

…

The Mississippi Supreme Court held in *Williams v. Bennett* that "Section (a) of the products liability statute serves as a claimant's roadmap and provides the basic framework from which claimants classify their particular claims...  Once claimants define their claims according to section (a) and meet the proof requirements delineated therein, they must meet additional

statutory requirements for their claim to proceed."[25]   This "roadmap" by it terms governs only the liability of sellers and manufacturers, not contractors.  Since neither Bechtel nor CH2M are sellers or manufacturers, plaintiffs can state no cause of action under the statute.

Although the statute does not specifically define "manufacturer" or "seller," the Mississippi Supreme Court has found that a contractor is not a seller or manufacturer in a products liability case.  In *Scordino v. Hopeman Bros., Inc*., the Court found that a subcontractor who built out the interior of ships including furniture is not a seller or manufacturer for purposes of the strict liability provisions of Restatement (Second) of Torts.[26]   Defendant, Hopeman Brothers, was a subcontractor at Ingalls shipyard who installed the ships' interiors, including some furnishings, using paneling which contained asbestos.[27]   The court reviewed whether Hopeman Brothers was a manufacturer or seller in the business of selling a defective product.[28] The Court concluded that Hopeman was not a "seller" or "manufacturer" that "sold" products containing asbestos and could not be held strictly liable in an action brought by employees of the shipbuilder, who alleged that their injuries were caused by exposure to asbestos from these products.[29] The court reasoned:

> (1)     that Hopeman was in the business of joiner subcontracting, i.e., building the interior outfitting of a ship which consisted of installing shipboard furniture, beds, box berthing, non-structural bulkheads, overheads, insulation etc.;

---

[25] 921So.2d 1269 at 1273, (Miss. 2006).
[26] 662 So.2d 640 (Miss. 1995).
[27] *Id*.
[28] *Id*. at 643.
[29] *Id*. at 645.

(2)     that the materials Hopeman purchased to fulfill a joiner subcontract were not purchased for resale;

(3)     that the services and materials Hopeman provided were specified in the contract with Ingalls and the vessel owners; and

(4)     that the total price of a job included both the services and materials that were provided.[30]

The Court explained that Hopeman merely supplied the materials to complete the service for which it was hired pursuant to the contract between the parties and could not be held strictly liable.[31]

Like Hopeman, Bechtel and CH2M are contractors, and the services and materials at issue were specified by the construction contract with FEMA.  Unlike Hopeman did with the materials in *Scordino,* Bechtel and CH2M did not even purchase or supply the EHUs – they only hauled and installed the EHUs, which were manufactured by others and purchased and supplied by FEMA.  Moreover, exactly like *Alexander* and *Dubuclet*, Bechtel and CH2M did not own the trailers in which the plaintiffs resided and did not alter the EHUs and place them in commerce for the consuming public as a seller.

In this Court's prior ruling in favor of Fluor, it concluded that "what Fluor installed, or had a third party install, pursuant to the terms of its contract with FEMA did not create a new product and that the EHU was an EHU before being placed on the blocks and hooking up to utilities, and was still an EHU after being placed blocks…  No new product was created by the

---

[30] *Id.*
[31] *Id.*

process that Fluor utilized."[32]  In the AMC, plaintiffs allege that Bechtel and CH2M utilized the same process to set up the EHUs and make the same material and conclusory allegations against Bechtel and CH2M as those made against Fluor in the *Alexander* and *Dubuclet* cases. Accordingly, the Court must reach the same conclusion under Mississippi law as it did under Louisiana law – neither Bechtel nor CH2M were manufacturers or sellers against whom a strict products liability claim can be brought.

## CONCLUSION

For the foregoing reasons, Bechtel and CH2M respectfully request that that this Court grant their Joint Motion to Dismiss Plaintiffs' Mississippi Products Liability claims with prejudice.

Respectfully submitted,

**FRILOT L.L.C.**

/s/      John J. Hainkel, III
JOHN J. HAINKEL, III – (#18246)
A. J. KROUSE – (#14426)
DAVID P. CURTIS – (#30880) (MS Bar # 102092)
CAROLYN B. HENNESY – (#25089)
PETER R. TAFARO – (#28776)
ANDREW M. MAESTRI – (#30606)
3700 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Tel: (504) 599-8000; Fax: (504) 599-8100
E-Mail: jhainkel@frilot.com
**Attorneys for Bechtel National, Inc.**

and

---

[32] Rec. Doc. 3217, p. 5-6

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

/s/ Gerardo R. Barrios
ROY C. CHEATWOOD – (#4010)
GERARDO R. BARRIOS – (#21223)
M. DAVID KURTZ – (#23821)
KAREN KALER WHITFIELD – (#19350
WADE M. BASS – (#29081)
No. 3 Sanctuary Boulevard, Suite 201
Mandeville, Louisiana 70471
Tel: (985) 819-8400; Fax: (985) 819-8484
E-Mail: gbarrios@bakerdonelson.com
**Attorneys for CH2M Hill Constructors, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was filed electronically using the CM/ECF system. Notice of this filing will be forwarded to all known counsel by operation of the court's electronic filing system. I also certify that I have emailed a copy of this filing to any non-CM/ECF participants on this the 19th day of April, 2010.

/s/      John J. Hainkel, III
JOHN J. HAINKEL, III