UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE § | | MDL No. 1873 |
| PRODUCTS LIABILITY LITIGATION § | | |
| § | | SECTION N(5) |
| § | | |
| THIS DOCUMENT IS RELATED TO: § | | JUDGE ENGELHARDT |
| § | | |
| *ALL CASES* § | | MAGISTRATE CHASEZ |
| § | | |

**MEMORANDUM IN SUPPORT OF
FLUOR ENTERPRISES, INC.'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS TO DISMISS LOUISIANA PRODUCTS LIABILITY CLAIMS
IN THE THIRD AND FOURTH SUPPLEMENTAL AND AMENDED
ADMINISTRATIVE MASTER COMPLAINTS**

This memorandum is submitted on behalf of Fluor Enterprises, Inc. (**FEI**) in support of its motion for partial judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), to dismiss all of plaintiffs' claims against FEI under the Louisiana Products Liability Act (LPLA), in all cases consolidated in this multi-district litigation.

**SYNOPSIS OF COURT'S PRIOR DISMISSAL OF LPLA CLAIMS
AND APPLICATION TO MDL CASES**

This Court has already ruled on this precise legal issue, granting FEI's motion for summary judgment dismissing the Alexander plaintiffs' LPLA claims as a matter of law (Rec. doc. 3217), and dismissing the same LPLA claims against FEI in the Dubuclet suit on summary

judgment (Rec. doc. 7440). In Dubuclet, plaintiffs admitted that the material facts were identical to those in the Alexander case, concerning the same issue of whether FEI is a LPLA "manufacturer" and, thus, they could not articulate any factual or legal basis for the Court to reach a different decision.[1]

Plaintiff Alexander and her minor son, C. C., were bellwether plaintiffs in the first trial held in September 2009.[2] In dismissing the Alexander plaintiffs' LPLA claims against FEI, "[t]his Court conclude[d] that Fluor simply does not meet the definition of 'manufacturer' found in the LPLA."

> [Fluor] was merely a contract service provider, which provided the services of delivering, setting up and readying for use the EHU assigned to the bellwether plaintiffs. It did not manufacturer Plaintiffs' EHU, nor did it assemble it or use it as component part. Moreover, Fluor did not purchase the EHU that was assigned to Plaintiffs, nor did it create a new product by setting up the EHU. It readied the EHU for use; it did not create a new product.[3]

Plaintiffs' LPLA allegations in their AMC[4] against FEI are the same as in Alexander and Dubuclet. Moreover, the facts essential to the court's finding in Alexander are contained on the face of the AMC and do not require the submission of summary judgment evidence. *See* AMC ¶¶ 152, 157-162, 294, 296 and 298.

In support of their LPLA claims in the AMC, plaintiffs assert the same conclusory factual allegations and legal conclusions regarding FEI's role as a government contractor hauling and

---

[1] See plaintiffs' response to motions for summary judgment by FEI, Rec. doc. 7261.
[2] The Alexander plaintiffs joined the MDL in Age, et al v. Gulf Stream Coach, Inc., et al., 09-2892 (Rec. doc. 1) and their claims were later severed for trial. On October 6, 2009, judgment was entered in favor of FEI and in accordance with the jury's verdict dismissing all of the Alexander plaintiffs' claims against FEI (Rec. doc. 5441).
[3] Court's Order and Reasons in Alexander, Rec. Doc. 3217, p. 5.
[4] FEI was not named as a defendant until the third supplemental and amended administrative master complaint, referred to here as the "AMC" or the "Complaint." Although plaintiffs did not style their third supplemental and administrative and amended administrative master complaint as a restated complaint, in paragraph 2, they make clear their intent to restate and supercede the allegations in the first three versions of their complaint. This motion references allegations made against FEI in the AMC.

installing EHUs as they made against FEI in Alexander and Dubuclet. Plaintiffs' AMC allegations do not articulate any different factual or legal basis for the Court to reach a different decision as to their LPLA claims against FEI.

FEI submits that this is the appropriate juncture for the entry of a global order dismissing plaintiffs' LPLA claims against FEI in all MDL cases. It is not necessary for the Court to look at the evidence in each individual case as the essential facts pleaded do not make out a case against FEI as a manufacturer under the LPLA. The best solution to promote judicial economy and efficiency and to allow the parties to focus their resources on the salient issues in these cases is to dismiss the plaintiffs' LPLA claims against FEI in all cases in this MDL, pursuant to Fed. R. Civ. P. 12(c). FEI submits that now is the appropriate time to put this purely legal issue to rest.

## PRELIMINARY STATEMENT

The Federal Emergency Management Agency (FEMA) owned and/or purchased travel trailers, park models and manufactured homes for use as emergency housing units (EHUs) for persons displaced from their residences after Hurricanes Katrina and Rita struck the Louisiana Gulf Coast. FEMA had an Individual Assistance—Technical Assistance Contract (IA-TAC) with FEI to deliver, set up, and ready these EHUs for use. In order to perform their obligations under the IA-TAC, FEI or one of its subcontractors would transport and deliver an EHU, place the EHU upon concrete blocks, stabilize the unit and ready the unit for use by the displaced occupant(s). Plaintiffs claim that these simple steps render FEI liable as a manufacturer of the EHU under the LPLA.[5] The process by which FEI conducted its tasks and performed its

---

[5] The AMC, Count 10 (LPLA claims against the contractor defendants); pars. 148-171 (general allegations against the contractor defendants); par. 107 (specific allegations against FEI).

contractual obligations in general, and with respect to individual EHUs, did not create a "product" such that FEI could be liable as a "manufacturer" under the LPLA.[6]

## BACKGROUND

This multi-district litigation (MDL) is the consolidation of several state and federal toxic tort suits in which plaintiffs claim to have inhabited EHUs that were provided to them by FEMA, because their residences were rendered uninhabitable by Hurricanes Katrina and Rita.[7] After selecting and purchasing these EHUs, FEMA provided them to plaintiffs by contracting with certain companies, like FEI, to deliver the EHUs, set them up, and make them ready for residential use.[8] Plaintiffs generally claim to have been exposed to formaldehyde contained in these EHUs and to have suffered damages as a result. Plaintiffs sued the manufacturers of the EHUs, the United States Government and the government contractors, like FEI, who delivered and set up these EHUs. These EHUs consist of travel trailers, park models or manufactured homes.[9]

In the AMC, plaintiffs generally assert LPLA and, alternatively, negligence claims against FEI,[10] contending that FEI somehow qualifies as a "manufacturer" simply because FEI installed or had a subcontractor install the travel trailers on concrete blocks and attached the units to utilities, including water, sewer and electricity.[11] As this Court previously held, FEI is not a manufacturer of any product, and the process by which FEI conducted its tasks and performed its contractual obligations with respect to the FEMA travel trailers assigned to and ultimately

---

[6] See Court's order, Rec. doc. 3217, p. 5 & 6.
[7] The AMC, pars. 124 and 128.
[8] Court's Order, Rec. doc. 717, p. 22.
[9] Rec. Doc. 1629, n. 1.
[10] Plaintiffs' negligence claims are addressed in FEI's separate Fed. R. Civ. P. 12(c) motion for partial judgment on the pleadings.
[11] The AMC, count 10 (Rec. doc. 4486). These are the identical claims asserted by the Alexander and the Dubuclet plaintiffs against FEI.

occupied by the plaintiffs did not result in the creation of a "product" whereby FEI could be liable as a "manufacturer" under the LPLA.[12]

Plaintiffs admit in the AMC that following Hurricane Katrina they received emergency housing assistance from FEMA, pursuant to the Stafford Act and applicable federal regulations.[13] FEMA provided plaintiffs with EHUs manufactured by the Manufacturing Defendants.[14] Plaintiffs allege (and it is undisputed) that FEMA selected and ordered the EHUs, through intermediataries, from the trailer manufacturers.[15] Plaintiffs allege (and it is uncontested) that FEI had a contract with FEMA that required it to haul, install and maintain for a time various types of RVs manufactured by others that FEMA had selected to provide as emergency housing to people displaced as a result of Hurricanes Katrina and Rita.[16]

## LAW AND ARGUMENT

### I.   RULES 12(c) AND 12(b)(6) LEGAL STANDARDS

Fed. R. Civ. P. 12(c) permits a party to move for judgment after the complaints and answer have been filed by the parties. Martino v. Western & Southern Financial Group, No. 3:08-CV-308-TS, 2009 U.S. Dist. Lexis 98593, *8 (N.D. In. 2009); see Rule 12(c). The standard for reviewing a Rule 12(c) motion is the same as that for a Rule 12(b)(6) motion to dismiss for

---

[12] Court's Order, Rec. doc. 3217, p. 516. The Court may properly consider orders and pleadings filed in this MDL and the contract upon which plaintiffs' claims rely. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (court may consider exhibits attached to a motion to dismiss that the complaint references and that are central to the Plaintiffs' claims); Xavier v. Belfor USA Group, Inc., Civ. A Nos. 06-491, 06-7084, 2007 WL 4224320, *1-2 (E.D. La. 2007) (court may take judicial notice of pleadings because they are matters of public record); Nabors Drilling U.S.A. L.P. v. Twister Exploration, L.L.C., Civ. A. Nos. 01-2109, 2002 WL 287728, *1 (E.D. La. 2002) ("the court may take into account matters of public record, orders, items appearing on the record of the case").
[13] The AMC, art. IV, par. 124, 128, 143-44.
[14] The plaintiffs classify the manufacturers of the EHUs as the "Manufacturing Defendants" in the AMC. See AMC, par. 129.
[15] The AMC, par. 129, 143-44.
[16] The AMC, pars. 107-148, 152 & 154.

failure to state a claim.  See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007); Stewart v. Irene Alonzo, No. C-08-347, 2009 U.S. Dist. Lexis 5362, *5 (S.D. Tx 2009).[17]

### A.    Rule 12(c) Motions for Judgment on the Pleadings

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Judgment on the pleadings is intended to dispose of cases in which the material facts are not in dispute and when the district court may render judgment by looking to the substance of the pleadings and any judicially noticed facts.  Turner v. Murphy Oil USA, Inc., No. 05-4206, 2005 U.S. Dist. Lexis 45123, *8 (citing Herbert Abstract Co. v. Touchstone Props., Ltd. 914 F.2d 74, 76 (5th Cir. 1990) (per curiam)); Bouttee v. ERA Helicopters, LLC, No. 06-0775, 2007 U.S. Dist. Lexis 59149, *14 (W.D. La. 2007).  Similar to a Rule 12(b)(6) motion, the court must accept all well pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.  Turner, 2005 U.S. Dist. Lexis at *8 (citing Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam).  Such a motion may be granted if the moving party clearly establishes that no issue of material fact remains to be resolved and that it is entitled to judgment as a matter of law.  Stewart, 2009 U.S. Dist. Lexis at *4.  Thus, judgment on the pleadings is appropriate where material facts are not disputed and the only issues are questions of law.  Bouttee, 2007 U.S. Dist. Lexis at *15.  "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."  Stewart, 2009 U.S. Dist. Lexis at *5 (citing In re Katrina Canal Breaches Litigation, 495 F.3d at 205).

### B.    Rule 12(b)(6) Motions to Dismiss for Failure to State a Claim

A corollary to Rule 12 is Fed. R. Civ. P. 8, which requires that a plaintiff provide a short and plain statement of the claim showing that the plaintiff is entitled to relief.  As this Court

---

[17] See also Martino, 2009 U.S. Dist. Lexis at *8.

explained, compliance with Fed. R. Civ. P. 8 requires that the complaint provide the defendant with "fair notice of what the plaintiffs' claim is and the grounds upon which its rests."  Order and Reasons (Rec. doc. 984) (citing Bishop v. Shell Oil Co., No. 07-2832, 2008 WL 2079944, *1-2 (E.D. La. 2008); Yount v. Research Specialists, Inc., No. 07-1218, 2008 WL 4470189, *1-2 (E.D. La. 2008); Swierkiewicz v. Sorema, 534 U.S. 506, 511, 122 S.Ct. 992, 998 (2002); see also Christopher v. Harbury, 536 U.S. 403, 416, 122 S.Ct. 2179, 2187 (2002)(the elements of the plaintiff's claim(s) "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant").

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted.  Under Rule 12(b)(6), a claim may be dismissed either because it asserts a legal theory that is not cognizable as a matter of law or because it fails to allege sufficient facts to support a cognizable claim.  The purpose of Rule 12(b)(6) is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true.  Eastwood v. U.S., No. 2:06-CV-164, 2007 U.S. Dist. Lexis 71892 *4 (E.D. Tn. 2007).  A complaint should be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." Turner, 2005 U.S. Dist. Lexis at *7 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed 2d 80 (1957)).  To survive a motion to dismiss under 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Eastwood, 2007 U.S. Dist. Lexis at *4 (citing Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007)). "The complaint must contain either 'direct or inferential allegations respecting all the material elements to sustain a recovery ... .'"  Id. (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).

In evaluating motions to dismiss under Rule 12(b)(6), the court "must accept well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff."  Order and reasons (Rec. doc. 984, p. 5) (citing Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir. 1986), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279 (1986)).  "However, complaints must provide more than labels and conclusions, formulaic recitations of the elements of causes of action, and facts that do not raise a right to relief above the speculative level."  Martino, 2009 U.S. Dist. Lexis at *6 (citing Bell Atl. Corp., 550 U.S. at 555).  See also this court's recitation of the legal standards for a Rule 12(b)(6) motion in its order and reasons (Rec. doc. 984, p. 4).  Thus, the plaintiff must plead "'enough facts to state a claim to relief that is plausible on its face.'"  (Rec. doc. 984) (citing In re Katrina Canal Breaches Lit., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Twombly, 127 S.Ct. at 1974)).[18]  "In other words, the '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact).'"  (Rec. doc. 984, p.4) (quoting Twombly, 127 S.Ct. at 1965).[19]  The degree of required specificity, however, depends on the context, *i.e.*, the type of claim at issue."  (Rec. doc. 984, p. 4) (citing Robbins, 519 F.3d at 1247).  The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.  Twombly, 550 U.S. at 544.

"While the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff."  Delhomme v. Caremark Prescription, Inc., No. 3:05-cv-505-R, 2005 U.S. Dist. Lexis 26131, *10 (citing Kansa

---

[18] See also Martino, 2009 U.S. Dist. Lexis at *6 (a plaintiff's allegations must show that his entitlement to relief is plausible rather than merely speculative) (citing Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008)).

[19] This Court noted the Third Circuit recently described Twombly as "seek[ing] to find a middle ground between 'heightened fact pleading,' which is expressly rejected [relative to Rule 8] . . . and allowing complaints that are not more than 'labels and conclusions' or a 'formulaic recitation of the elements of the cause of action' which the Court stated 'will not do'."  Rec. doc. 984, p. 4, n. 3 (citing Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly, 127 S.Ct. at 1965).

Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas, 20 F.3d 1362, 1366 (5th Cir. 1994)).  "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  Delhomme, 2005 U.S. Dist. Lexis 26131, *11 (citing Blackburn v. City of Marshall, 42 F.3d 25, 931 (5th Cir. 1995)(quotation omitted); see also Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (cited by this Court in Rec. doc. 984, p. 4); see also Eastwood, 2007 U.S. Dist. Lexis at *5 (the court need not accept as true mere legal conclusions or unwarranted factual inferences); Stewart, 2009 U.S. Dist. Lexis at *4 (citing Cent. Laborers' Pension Fund v. Integrated Elec. Servs., 497 F.3d 546, 550 (5th Cir. 2007) ("nevertheless, '[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions'").

Taking the facts as true, a court may grant a motion to dismiss when "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action," as here.  See Marshall v. Bd. of Education v. Marshall City. Gas Dist. 992 F.2d 1171, 1174 (11th Cir. 1993).  Thus, "when the allegations in the complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." Stewart, 2009 U.S. Dist. Lexis at *3 (citing Cuvillier v. Sullivan, 503 F.3d 397, 401 (5th Cir. 2007) (citing Twombly, 127 S.Ct. at 1966).

## II.   PLAINTIFFS' LPLA CLAIMS AGAINST FEI FAIL AS A MATTER OF LAW

Plaintiffs' LPLA claims against FEI fail as a matter of law and should be dismissed pursuant to Rule 12(c).  FEI is a contract provider of professional and/or nonprofessional services that performed its work according to and in compliance with specifications provided and

mandated by FEMA. The process by which FEI conducted its tasks and performed its contractual obligations did not create a "product" whereby FEI could be liable as a manufacturer under the LPLA, entitling FEI to partial judgment on the pleadings, dismissing plaintiffs' LPLA claims against FEI in all cases consolidated in this MDL.

For the plaintiffs to maintain a cause of action against FEI under the LPLA, they are required to plead a set of facts under which FEI can be classified as "a manufacturer." Plaintiffs have failed to do so. FEI is not a "manufacturer" of a "product" under the LPLA. Plaintiffs' LPLA claims against FEI should dismissed under Rule 12(c) because "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." See Turner, 2005 U.S. Dist. Lexis at *7. That the plaintiffs do not allege and cannot prove any facts to support their LPLA claims against FEI has been demonstrated in the Alexander and Dubuclet cases. FEI submits that the time is ripe to dismiss all of plaintiffs' LPLA claims against FEI in all cases consolidated in this MDL.

The LPLA is the exclusive remedy in Louisiana against a "manufacturer" for damages caused by their products. La. R.S. 9:2800.53(1). The LPLA expressly does not apply to actions against providers of professional and/or nonprofessional services, even if the service results in a product, unless they meet the definition of "manufacturer" under the LPLA. La. R.S. 9:2800.52.

La. R.S. 9:2800.53 defines a "manufacturer" and "manufacturing a product" under the LPLA as follows:

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
>
> (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.

> (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
>
> (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.

La. R.S. 9:2800.53(1)(a)-(c).

> La. R.S. 9:2800.53 defines a "product" under the LPLA as follows
>
> (3) "Product" means a corporeal movable that is manufactured for placement into trade or commerce, including a product that forms a component part of or that is subsequently incorporated into another product or an immovable.

La. R.S. 9:2800.53(3).

Plaintiffs contend that FEI qualifies as a manufacturer under the LPLA as FEI performed work, pursuant to its contract with FEMA, that altered the character, design, construction, and/or quality of the product and that the housing units constitute products under the LPLA.[20]

Furthermore, plaintiffs contend that FEI, by installing the temporary housing units on concrete blocks for extended occupancy and, further, by installing residential appliances and heating and air conditioning units, knowingly and intentionally modified the design and the actual use of the units.[21]

In order for plaintiffs to maintain a cause of action against FEI under the LPLA, plaintiffs must first prove that FEI "manufactured" the temporary housing units provided by FEMA to plaintiffs. In support of this allegation, plaintiffs assert that FEI altered the character, design, construction, and/or quality of the housing units by placing them on concrete blocks for extended occupancy. Essentially, plaintiffs allege that FEI's "reconditioning and refurbishment" of the housing units created stress and distortion that allowed for increased moisture intrusion and

---

[20] The AMC, count 10, par. 294.
[21] The AMC, count 10, pars. 296 and 298. These are precisely the <u>same LPLA allegations made by the Alexander and Dubuclet plaintiffs against FEI</u>.

formaldehyde exposure due to cracks and openings in the shell.[22]  In Alexander, this court flatly rejected these same contentions, finding:

> Fluor did not 'refurnish', 'recondition' or 'remanufacture' the EHU or any of its parts.  It merely placed an EHU, which was manufactured by another entity (which is a party to this lawsuit), placed it on blocks and connected local utilities to it.  Based on the Rule 56 evidence before the Court, Fluor simply is not a 'manufacturer' of this EHU within the meaning of the LPLA.[23]

Clearly, subsections (a), (b) and (c) of La. R.S. 9:2800.53(1) have no application to the facts of those cases.  FEI did not label the trailers as its own, did not exercise control over the design, construction or quality of the EHUs, and did not incorporate a component part into the EHUs.  (The EHUs were for all intents and purposes the entire product of the respective Manufacturing Defendants, not FEI).  Therefore, the key issue is whether FEI's activities rose to the level of a "reconditioning" or "refurbishment" required by La. R.S. 9:2800.53.  Generally, remanufacturing, reconditioning, or refurbishing requires one to do something to the product that influences it in a meaningful and creative way.  Slaid v. Evergreen Indem., Ltd., La. App. 32363, 745 So. 2d 793 (La. App. 2d Cir. 1999) (citing John N. Kennedy, A Primer on the Louisiana Products Liability Act, 49 La.L.Rev. 565, 572 (1989)).  This Court held "Fluor did not 'refurbish,' 'recondition,' or 'remanufacture' the EHU or any of its parts."[24]

FEI does not meet the definition of "manufacturer" found in the LPLA.  FEI is a government contractor tasked with making the EHUs ready for occupancy pursuant to the government's specifications.  FEI is not in the business of manufacturing these housing units "for placement into trade or commerce."  La. R.S. 9:2800.53(1).  FEI did not label the EHUs as its own product and it never held itself out as the manufacturer of the EHUs.  R.S.

---

[22] The AMC, par. 159, count 10, par. 299.
[23] Court's Order and Reasons, Rec. doc. 3217, p. 6.
[24] Rec. Doc. 3217, p. 6 (emphasis added).

9:2800.53(1)(a). FEI did not sell the housing units, therefore, subsection (b) is inapplicable. Likewise, FEI did not incorporate component parts by another manufacturer into the housing units. R.S. 9:2900.53(1)(c). There is no evidence (nor any allegations in the AMC) that FEI engaged in any of the above activities defining a manufacturer, and this Court agreed.[25]

Plaintiffs assert that FEI's actions in blocking the units off their wheel base and hooking the units to the utilities somehow altered the trailers and modified their design.[26] As already determined by this Court, FEI did not make, produce, fabricate, construct or design the EHUs.[27]

FEI was a contract service provider delivering, setting up and readying for use the EHUs assigned to plaintiffs  The plaintiffs' factual allegations simply do not meet the definitional requirements of a manufacturer under the LPLA, as this Court has repeatedly recognized.

In a recent ruling on a motion for summary judgment, the United Stated District Court for the Western District of Louisiana in <u>Hughes v. Pogo Producing Co</u>., 2009 WL 536047, 2009 U.S. Dist. Lexis 16736, *1 (W.D. La. 2009), found the builder of a platform (Atlantia Corp.) was <u>not</u> the manufacturer under the LPLA by virtue of incorporating a living quarters package containing allegedly defective bunk beds and a ladder into the platform. The court determined this in spite of the fact that the builder purchased a living quarters package, which included the bunk bed and ladder, from a company (TBS) that manufactured the living quarters package. The builder then welded the entire living quarters package (containing the bunk bed and ladder) onto the platform, and thereafter, sold the entire platform to another company (British Borneo/ENI). The court instructed:

> Atlantia did not *manufacture* either the bunk beds or ladder or the living quarters package itself. Rather, Atlantia was engaged in constructing a platform much as a building contractor engages in the construction of a house, and in so

---

[25] Rec. Doc. 3217, p. 5-6.
[26] The AMC, count 10, pars. 296-298.
[27] Court's Order and Reasons, Rec. doc. 3217, p. 5-6.

> doing incorporated certain component parts which had been manufactured by a third party, much as a building contractor does. (emphasis in original).

Hughes, 2009 U.S. Dist. Lexis 16736 at *25. This case is similar to Hughes as FEI, like Atlantia, simply took what was already manufactured by others and hooked (like in Hughes, welded) them to the travel trailer to make it operational. The Hughes court, in deciding that the builder was not a "manufacturer," relied upon the Louisiana Fifth Circuit Court of Appeal's decision in Parks v. Baby Fair Imports, Inc., 726 So. 2d 62 (La. App. 5th Cir. 1998).

In Parks, the issue was whether a defendant retailer of a children's shirt that was allegedly unreasonably flammable was a manufacturer of the shirt. The plaintiffs bought the shirt from K-Mart, which ordered the shirt from the manufacturer, Baby Fair. Apparently, K-Mart was able to choose certain features of the shirt when ordering, and K-Mart requested a non-specific 55% cotton/45% polyester jersey fabric in a certain color. Beyond specifying the fiber content and color of the fabric, K-Mart had nothing else to do with the fabric selection of the shirt; the specific selection of the particular type and nature of 55% cotton/45% polyester jersey was left to the manufacturer. Hughes at *18, 19.

The trial court granted summary judgment in favor of K-Mart, and the Louisiana Fifth Circuit Court of Appeals affirmed observing:

> We agree with the trial court that K-Mart's placement of this order with Baby Fair does not rise to the level of exercising control over or influencing a characteristic of the design, construction or quality of the product. It appears that K-Mart made a selection from goods available from Baby Fair. Plaintiffs' interpretation would turn all sellers who made specific selections of goods offered from manufacturers into manufacturers themselves. We believe that the legislature intended more direct and specific conduct on the part of the seller than that exhibited by K-Mart in this case. Thus, we conclude that K-Mart was not a manufacturer/seller of the shirt.

Hughes at *20 (quoting Parks, 726 So.2d at 64).

Like the above cases, FEI did not manufacture the alleged product. FEI did not purchase the travel trailers that were used as the EHUs assigned to plaintiffs, nor did FEI create a new product by setting up the travel trailers in accordance with the FEMA specifications. Rather, FEI used stand alone products, such as cinder blocks, PVC pipe, anchors and steps that were used and assembled to block, stabilize and make ready the EHUs for occupancy. Use of these stand alone products does not create a new product.

As this Court recognized in <u>Alexander</u>, <u>Coulon v. Wal-Mart Stores, Inc</u>., 734 So. 2d 916 (La. App. 1st Cir. 1999), "is distinguishable." (Court's Order and Reasons, Rec. Doc. 3217, p. 5-6). In <u>Coulon</u>, Wal-Mart received an unassembled bicycle in a box sent by Roadmaster/Brunswick, the manufacturer of the bicycle parts. Wal-Mart then assembled, or contracted with a third party to assemble, the bicycle. Wal-Mart placed the assembled bicycle on the bicycle sales rack for sale to the consuming public. <u>Coulon</u>, 734 So. 2d at 917. In <u>Coulon</u>, the court construed provisions (a) and (b) of La. R.S. 9:2800.53(1) together when it espoused:

> a 'manufacturer' is an entity which labels a product as its own or otherwise holds itself out as an entity in the business of constructing a product, as well as a seller who exercises control over or influences a characteristic of construction of a product which causes damage.

<u>Id</u>. at 920. While the court in <u>Coulon</u> concluded that "the term 'manufacturing a product' indirectly refers to assembling; thus, one who assembles a product for sale is properly deemed a manufacturer of the assembled product under the LPLA," the court's ruling is fact specific. <u>Id</u>. Insofar as the unassembled bicycle is concerned, each individual piece of the bicycle cannot be used by itself. The assembly of the parts is necessary for the creation of the product, a bicycle. <u>Coulon</u>, 734 So. 2d at 919. In <u>Coulon,</u> Wal-Mart owned the unassembled parts of the bicycle that were ultimately assembled into a bicycle, which Wal-Mart then sold to the consuming

public. The court found that if a defect occurred in the assembly process, then the owner, Wal-Mart, is answerable for that defect as a manufacturer.

Just like the Alexander and Dubuclet trailers, FEI is not the owner of the travel trailers in which the plaintiffs resided, and FEI did not alter these travel trailers and then place them in commerce for the consuming public as a seller.

Distinguishing Coulon, this Court "conclude[d] that what Fluor installed, or had a third party install, pursuant to the terms of its contract with FEMA did not create a new product – as was created in Coulon when the parts of the bicycle were assembled by Wal-Mart to create a bicycle:"

> [T]he EHU was an EHU before being placed on blocks and hooking up to utilities, and was still an EHU after being placed on blocks and being hooked up to utilities. No new product was created by the process that Fluor utilized to set up the EHU.[28]

The AMC alleges that FEI utilized the same process to set up the EHUs. The AMC makes the same material and conclusory allegations against FEI as those made by plaintiffs in the Alexander and Dubuclet suits against FEI. Accordingly, this Court must reach the same conclusion that no new product was created by the process that Fluor utilized to set up the EHUs and, therefore, FEI simply does not meet the definition of "manufacturer" found in the LPLA.[29] Like Alexander and Dubuclet, what you have here are travel trailers before and travel trailers after. By contrast, a bike is not a bike until assembled. In order to succeed on the LPLA claim, plaintiffs must show that FEI is a "manufacturer." Plaintiffs cannot show that FEI is a manufacturer because FEI does not fit any of the subparts of the LPLA's definition of a manufacturer. <u>No construction of the factual allegations support a cause of action against FEI under the LPLA and, therefore, this Court may properly dismiss those claims pursuant to Rule</u>

---

[28] Rec. Doc. 3217, p. 5-6.
[29] Rec. doc. 3217, p. 5-6.

12(c) on the basis of this dispositive issue of law. Plaintiffs have failed to show that FEI altered the EHUs and thereby "remanufactured," "reconditioned" or "refurbished" the EHUs. Simply making minor adjustments to the EHUs and hooking them up to the utilities does not make FEI a "manufacturer" – "[t]his Court concludes that Fluor simply does not meet the definition of 'manufacturer' found in the LPLA."[30]

## CONCLUSION

Plaintiffs' factual assertions and conclusory allegations in the AMC fail to support a legally cognizable cause of action against FEI under the LPLA. No construction of plaintiffs' factual allegations support a cause of action against FEI under the LPLA. Therefore, plaintiffs cannot meet their burden of proof under the act and judgment as a matter of law is proper pursuant to Rule 12(c). The act specifies that plaintiffs must prove four elements: (1) that FEI manufactured the trailers, (2) the trailers' characteristics proximately caused plaintiffs' damage, (3) the characteristics made the trailers unreasonably dangerous, and (4) plaintiffs' damage arose from a reasonably anticipated use of the trailers. Because plaintiffs' factual allegations do not support the first element, that FEI "manufactured" the trailers, their claims under the LPLA fail, as in Alexander and Dubuclet.

Under its contract with FEMA, FEI was obligated to transport the trailers to their designated location, install them on blocks, anchor them to the ground pursuant to FEMA specifications, and connect the trailers to the local utilities (sewer and electricity). Plaintiffs allege that these actions, in particular lifting the trailers from their wheel base, somehow altered the trailers' character, design and construction. None of these activities, which simply readied the trailers for occupancy, make FEI the trailers' manufacturer under the statute's definition.

---

[30] Rec. Doc. 3217, p. 5.

FEI's actions do not constitute an overhaul or a "refurbishment" of the trailers. FEI did not "recondition" the inside or outside of the trailers, nor did it "remanufacture" the trailers or any of their parts. FEI took new trailers manufactured by another entity, placed them on blocks securing them to the ground, and connected local utilities to the trailers. These actions are not "producing," "making," "fabricating," "constructing," or designing" as explained in the statute's definition. FEI is not a seller nor did FEI label the trailers as its own product. "Fluor simply does not meet the definition of 'manufacturer' in the LPLA." (Court's Order and Reasons, Rec. Doc. 3217, p. 5-6).

Failure to meet the first element in the LPLA's four part analysis determining liability is fatal to plaintiffs' claims. For purposes of the LPLA claim, FEI's role is the same regarding all the EHUs involved in the MDL consolidated cases as the Dubuclet and Alexander trailers. As in <u>Alexander</u>, this is a pure question of law and the same result is appropriate, dismissing plaintiffs' LPLA claims in the AMC against FEI. This Court should render consistent rulings dismissing plaintiffs' LPLA claims against FEI. Therefore, partial judgment on the pleadings should be granted and plaintiffs' claims against FEI under the LPLA in all cases consolidated in the MDL should be dismissed as a matter of law, pursuant to Fed. R. Civ. P. 12(c).

        Respectfully submitted,

        **MIDDLEBERG, RIDDLE & GIANNA**

  BY:    <u>s/ Sarah A. Lowman</u>
           Dominic J. Gianna, La. Bar No. 6063
           Sarah A. Lowman, La. Bar No. 18311
           201 St. Charles Avenue, Suite 3100
           New Orleans, Louisiana 70170
           Telephone: (504) 525-7200
           Facsimile: (504) 581-5983
           dgianna@midrid.com
           slowman@midrid.com

        *-and-*

    Charles R. Penot, Jr. (La. Bar No. 1530 &
    Tx. Bar No. 24062455)
    717 North Harwood, Suite 2400
    Dallas, Texas 75201
    Tel: (214) 220-6334; Fax: (214) 220-6807
    cpenot@midrid.com

        *-and-*

    Dominic J. Gianna, La. Bar No. 6063
    Sarah A. Lowman, La. Bar No. 18311
    201 St. Charles Avenue, Suite 3100
    New Orleans, Louisiana 70170
    Telephone: (504) 525-7200
    Facsimile: (504) 581-5983
    dgianna@midrid.com
    slowman@midrid.com

        *-and-*

    Richard A. Sherburne, Jr., La. Bar No. 2106
    450 Laurel Street, Suite 1101
    Baton Rouge, Louisiana 70801
    Telephone: (225) 381-7700
    Facsimile: (225) 381-7730
    rsherburne@midrid.com

    **ATTORNEYS FOR FLUOR ENTERPRISES, INC.**

## CERTIFICATE OF SERVICE

    I hereby certify that on April 19, 2009, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record, including court-appointed liaison counsel, who are CM/ECF participants.

        *s/ Sarah A. Lowman*_____

ND: 4827-5795-7893, v. 3ND: 4827-5795-7893, v. 3