In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 54

1   more pulmonary disease, but more general more

2   recently.

3        Q.   Fair enough.  In the earlier years you saw

4   more patients for pulmonary disease?

5        A.   Correct.

6        Q.   And then in more recent years -- would that

7   be from 1990 to 2005?

8        A.   Somewhere in the 1990s.  I can't give you a

9   strict cut-off.

10        Q.   -- you've treated patients as an internal

11   medicine doctor?

12        A.   That's correct.

13        Q.   Have you ever been referred patients for

14   psychiatric treatments?

15        A.   I don't think I -- no, I wouldn't be

16   referred parents.  I'm not a psychiatrist.

17        Q.   I understand.  Do you administer

18   psychological testing when you see a patient?

19        A.   Not beyond very simple testing, like a

20   mental status exam, no.  I mean, formal

21   neuropsychological testing, no.

22        Q.   What's a mental status exam?  Tell me about

23   that.

24        A.   It's just something that you commonly do in

**EXHIBIT**

B-2

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 55

1     a patient for whom you are concerned about either --

2     a neuropsychiatric problem, just to understand basic

3     issues.  Are they oriented?  Are they able to think

4     clearly?  What's their cognitive function?  Very

5     routine examination.

6          Q.   Very routine examination for all doctors,

7     correct?

8          A.   Well, certainly for internists.  I can't

9     speak for the other specialties.

10         Q.   Does that involve just talking with the

11    patient to make sure the patient gets it?

12         A.   It's a series of questions.  Sometimes you

13    ask them to draw things, write things.

14         Q.   How many questions?

15         A.   It varies.  There's a different -- there

16    are different levels.  There's a mini mental status,

17    which is usually around a dozen questions, and

18    there's a more complex, which is probably about

19    twice that many.

20         Q.   Did you ask Ms. Castanel questions as part

21    of her mental examination?

22         A.   I did not.

23         Q.   Did you ask Ms. Castanel to draw anything

24    as part of a mental examination?

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 56

1      A.   I did not.

2      Q.   Did you administer any type of

3  psychological tests for Ms. Castanel?

4      A.   No.

5      Q.   Have you ever administered psychological

6  tests to your patients?

7      A.    To be clear, there are such things as

8  formal neuropsychological tests, which I mentioned a

9  minute ago I do not administer and have not

10  administered.

11     Q.    Would those psychological tests be

12  important in rendering a diagnosis regarding any

13  psychological or psychiatric problems?

14     A.    Not in common situations, no.  They are

15  used for very complex situations.

16     Q.    What do you mean, in common situations?

17     A.    Common illnesses, like anxiety, depression,

18  those aren't used.

19     Q.    Did you read Dr. Shwery's report in this

20  case?

21     A.    I did.

22     Q.    Did you notice his psychological testing

23  that he did for Ms. Castanel?

24     A.    I noticed that it was performed.

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 57

1    Q.    Did you think that testing was unnecessary?

2    A.    It depends on the your specialty.  For a

3    psychologist.  For an internist, that's not what we

4    do.

5    Q.    So as an internist, you don't administer

6    psychological tests?

7    A.    I think I mentioned that several times now.

8    Q.    Yes, and I'm just trying to understand.  So

9    as an internist, when you're doing that mental

10   status exam, would it be fair to say you just size

11   up the patient, based on observations and a few

12   questions?

13   A.    No.  It's a little bit different.  You

14   initially size up a patient and decide whether you

15   need to do a mental status exam.  I didn't believe

16   -- it was very clear to me that Ms. Castanel was

17   alert and well oriented and cognitively intact.  So

18   no reason to perform a mental status exam, from my

19   point of view.

20   Q.    So you did not perform a mental status exam

21   on Ms. Castanel because you didn't think it was

22   necessary?

23   A.    Right.  I use that in appropriate stations.

24   Q.    Well, how did you come to find that Ms.

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 58

1    Castanel had a fear of cancer?

2        A.    She mentioned it.  Then we discussed it, of

3    course.

4        Q.    So your finding that Ms. Castanel had a

5    fear of cancer, that was based on Ms. Castanel's

6    comments to you?

7        A.    Yes.  I'm not sure how else you would find

8    it.

9        Q.    That's fair.  I'm just trying to find out.

10   Did Ms. Castanel tell you when she started worrying

11   about cancer?

12       A.    She wasn't completely clear about it, and I

13   don't think she recalled exactly, but it was

14   certainly related to her time in the FEMA trailer.

15       Q.    You're very clear on that; Ms. Castanel's

16   fear of cancer, in your opinion, was based on her

17   time in the FEMA trailer?

18       A.    That's what she told me.

19       Q.    Did Ms. Castanel tell you that her fear of

20   cancer was related to anything else?

21       A.    She did not.

22       Q.    So as we sit here today, it would be your

23   opinion that Ms. Castanel's fear of cancer was

24   related to her time in the FEMA trail?

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 59

```
 1        A.    That's what the patient told me.
 2        Q.    And there was no other specific information
 3   provided by Ms. Castanel regarding fear of cancer?
 4        A.    Not that I recall, no.
 5        Q.    Well, you did a report.  Is everything
 6   reflected in your report relative to the basis of
 7   your diagnosis of Ms. Castanel's conditions?
 8        A.    Yes.
 9        Q.    Would you defer to Dr. Shwery, a
10   psychologist, on Ms. Castanel's fear of cancer?
11             MR. TORRY:  Objection to form.
12        A.    I don't think I would use the word "defer."
13   Certainly that's -- his examination and his report
14   is useful information, but we come at it from
15   different angles.  I'm a physician.  He's a
16   psychologist.
17        Q.    Would you think that Dr. Shwery, as a
18   psychologist, would be in a better position to
19   comment on Ms. Castanel's psychological issues?
20             MR. TORRY:  Objection to form.
21        A.    No.
22        Q.    You would agree that you didn't see any
23   need for Ms. Castanel to have any future
24   psychological treatment, based on the fact that you
```

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110        Videoconference Center           www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 60

```
 1    didn't even think she needed a mental examination?
 2            MR. TORRY:  Objection to form.
 3       A.   I think there's some confusion.  First of
 4    all, I'm not her treating physician.  Secondly, I
 5    think perhaps I haven't explained.  A mental status
 6    exam is to make sure the patient is capable of
 7    giving you an accurate history.  That's a bit
 8    different from, I think, the way you've described
 9    it.
10       Q.   I understand.  I just ask questions to try
11    and find out.  So you're not here to comment on any
12    future treatment for Ms. Castanel?
13       A.   I am not.
14       Q.   In any respect?
15       A.   I am not a treating physician, no.
16       Q.   And the sole purpose of your involvement in
17    this case was the fact that you were hired by the
18    Plaintiffs' attorneys to provide an opinion
19    regarding Ms. Castanel's exposure in a FEMA trailer
20    and her present conditions?
21       A.   Regarding the causes of her present
22    condition, yes.
23       Q.   I read your report, and I didn't see any
24    reference to Ms. Castanel telling you about a smell
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation

Lawrence G. Miller, M.D., M.P.H., Vol. I

Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

March 11, 2010

Page 61

```
 1    or odor in the FEMA trailer; is that correct?

 2         A.   It may not be discussed in the report.  She

 3    and I did discuss it.

 4         Q.   Oh, you discussed that with Ms. Castanel?

 5         A.   I do recall that, yes.

 6         Q.   Why wouldn't that be in your report?

 7         A.   I can't give you an answer to that.

 8         Q.   What did you and Ms. Castanel discuss about

 9    the smell of the FEMA trailer?

10         A.   I asked her whether she noticed any odd

11    smells, and she told me she did not.

12         Q.   Fair enough.  And your question was with

13    regard to the entire time Ms. Castanel was in the

14    FEMA trailer, correct?

15         A.   I think I asked her -- I don't recall the

16    exact wording, but I asked her a general question,

17    yes.

18         Q.   Did Ms. Castanel ever tell you that she

19    thought the FEMA trailer was causing some problems

20    with her sinuses?

21         A.   She did.

22         Q.   Was that in response to a specific question

23    by you?

24         A.   Well, I can't recall the exact wording,
```

Doris O. Wong Associates, Inc.                Professional Court Reporters                 617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center                    www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                    2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 62

```
 1    again, but we talked about her sinus problems.  We

 2    talked about when they were better, when they were

 3    worse.  I believe she volunteered, in fact, that

 4    they were worse while she was in the -- living in

 5    the trailer.

 6        Q.    She just offered that information without

 7    being asked a question?

 8        A.    Well, the question we were discussing was

 9    when were the symptoms better, when were they worse.

10        Q.    I read your report.  I don't see any

11    notations about any eye irritation while Ms.

12    Castanel was in the trailer.

13        A.    I don't believe she reported that to me.

14        Q.    Okay.  If you didn't mention eye irritation

15    in your report regarding Ms. Castanel while she was

16    in the trailer, that would mean that she did not

17    tell you that she had eye irritation while in the

18    trailer, correct?

19        A.    I believe that's correct.

20        Q.    Were any attorneys present at the meeting

21    with Ms. Castanel?

22        A.    No.  They were outside -- there was an

23    attorney in the office, but outside the examination

24    room.
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 63

```
 1        Q.    Were there any attorneys present when you

 2   had that conversation with Ms. Castanel?

 3        A.    I'm sorry, which conversation?

 4        Q.    Well, we might be talking about the same

 5   thing.  You have an examination in the examination

 6   room, correct?

 7        A.    Right.

 8        Q.    Is that where you also spoke to Ms.

 9   Castanel?

10        A.    Yes.  Generally where you do your history

11   and physical, yes.

12        Q.    And I've been to the doctor.  I don't know

13   if it's the same everywhere, if you give a history

14   somewhere else.  So were any attorneys present when

15   Ms. Castanel gave you the history?

16        A.    Not that I recall, no.  Her daughter was

17   present.

18        Q.    Did her daughter make any comments during

19   the meeting?

20        A.    A couple of times, when Ms. Castanel

21   couldn't remember something specific, a date or --

22   it was generally something, some fact -- she would

23   turn to her daughter and see if her daughter would

24   know the answer.
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 64

```
 1      Q.   Do you specifically remember what factual

 2   information was provided by the daughter?

 3      A.   I do not.

 4      Q.   Do you remember the daughter's name?

 5      A.   Oh, gosh.  I think it's in here.  Maybe

 6   not.  I don't recall, as we sit here.

 7      Q.   I didn't see a reference to the daughter in

 8   your report.  Is that something you ordinarily

 9   wouldn't note?

10      A.   Not necessarily, no.

11      Q.   And you don't remember any of the factual

12   information provided by the daughter?

13      A.   No.  But, again, it tended to be -- it

14   certainly wasn't about symptoms -- I wouldn't get

15   that information from the daughter -- but it might

16   have been a specific date.

17      Q.   Let's go back to your report, please,

18   Doctor.  Page 2, you write, "Ms. Castanel is a 79

19   year old."  That's where we left off.  I would like

20   to go through your report, and I'm going to

21   apologize in advance because I might interrupt you,

22   but I'll do it politely.  I find it easier for me

23   just to ask while we go along --

24      A.   That's fine.
```

Doris O. Wong Associates, Inc.            Professional Court Reporters            617-426-2432
50 Franklin Street, Boston, MA  02110         Videoconference Center               www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                    2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 65

```
 1      Q.   -- instead of coming in at the end and

 2  going through a laundry list of questions.  So why

 3  don't we go through your report.  We covered that

 4  first sentence.  Then Ms. Castanel reported "current

 5  problems are depression, fatigue and nasal

 6  congestion."  Is fatigue a separate diagnosis?

 7      A.   It's not a diagnosis.  It's a symptom.

 8      Q.   Fair enough.  And Ms. Castanel did tell you

 9  that she had depression and nasal congestion before

10  moving into the trailer, correct?

11      A.   She did.

12      Q.   She indicates -- well, I'll let you read,

13  if you don't mind picking up with that sentence.

14      A.   I'm sorry, what would you like me to do?

15      Q.   The next sentence is, "She indicates that."

16      A.   Do you want me to read out loud?

17      Q.   If you don't mind.

18      A.   "She has intermittent episodes of 'feeling

19  discouraged' or a 'little depressed' for many years;

20  she has not discussed these episodes in most cases

21  with her physicians, and they have resolved."

22      Q.   So she told you these conditions resolved,

23  correct?

24      A.   Well, individual -- the episodes have
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 66

1    resolved, yes.  Be careful about how it's written.

2        Q.    "She has not discussed these episodes in

3    most cases with her physicians."  Why is that in

4    there?  She told you that?

5        A.    She did.

6        Q.    Did she tell you why she didn't discuss

7    these episodes with her physicians?

8        A.    I don't believe I asked her that, but

9    that's quite common.  Most patients -- almost nobody

10   discusses all of their symptoms of any -- with their

11   doctors.  It would take a long time.

12       Q.    And you're specifically referring to the

13   feeling of "discouraged" and "a little depressed,"

14   right?

15       A.    Correct.

16       Q.    Please continue.

17       A.    "Since she left the FEMA trailer, she

18   reports that she has had more persistent and

19   somewhat more severe depression.  She feels like she

20   often doesn't have enough to do, and even when she

21   does, she feels more tired.  She says she is worried

22   about the future, and in particular she is worried

23   about the effects of exposures in the FEMA trailer."

24       Q.    Let me ask a few question.  Do you find

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)          2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 67

1   some older people in their late 70s, who aren't

2   working, do you feel maybe a lot of those people

3   feel like they don't have much to do?  Is that

4   common?

5       A.   That's certainly not uncommon.

6       Q.   And being worried about the future, is that

7   something that's common among all ages?

8       A.   There are degrees of concern.  Many of us

9   have some concerns about the future.  Some people

10  have a lot more.

11      Q.   And as of the date of Ms. Castanel's visit

12  with you, she expressed worry about the effects of

13  exposures in the FEMA trailer, correct?

14      A.   She did.

15      Q.   Did she specifically mention formaldehyde?

16      A.   No, she did not.

17      Q.   Did she say anything else about why she was

18  worried about the effects of exposures in the FEMA

19  trailer?

20      A.   She knew there had been -- she believed

21  there had been chemicals, and she thought those

22  chemicals could harm her.

23      Q.   Do you know where she got that information?

24  Did she tell you?

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 68

```
 1       A.   I do not.

 2       Q.   Do you know if being involved in this

 3   lawsuit has caused Ms. Castanel to worry more?

 4       A.   I don't know the answer to that.

 5       Q.   Do you know if a lawyer or a doctor who

 6   told Ms. Castanel that she might have a claim for

 7   fear of cancer, if that caused her additional worry?

 8            MR. TORRY:  Objection to form.

 9       A.   I don't know.

10       Q.   Did you use the phrase "fear of cancer"

11   with Ms. Castanel?

12       A.   I'm not sure I used those exact terms.  I

13   may have talked about concern about developing

14   cancer or worry about it.  So I don't know the exact

15   words I used.

16       Q.   Just so we can move on, any other comments

17   by Ms. Castanel about the worry associated with

18   living in the trailer?

19       A.   No.  I don't believe so.

20       Q.   Please continue reading the report.

21       A.   Let's see.  Where were we?

22            MR. TORRY:  "She indicated."

23       A.   "She indicated she is worried about

24   developing cancer, which she finds very frightening.
```

Doris O. Wong Associates, Inc.           Professional Court Reporters           617-426-2432
50 Franklin Street, Boston, MA  02110    Videoconference Center                 www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                   2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 69

1    She began to cry twice spontaneously during the

2    discussion, both times when mentioning cancer.  She

3    doesn't believe that her appetite or weight has

4    changed significantly, and she does not believe her

5    sleep habits have changed."

6        Q.   Those are two specific findings or

7    comments, right?

8        A.   Well, when you're concerned about a patient

9    who has anxiety or depression, it's one of the

10   things you want to ask about, how it's affected

11   their other important functions.

12       Q.   Ms. Castanel is sleeping well, and she's

13   maintaining her weight?

14       A.   Well, I didn't say she was sleeping well.

15   I said her sleep habits haven't changed.  That's a

16   little different.

17       Q.   Well, the worry about cancer or living in a

18   FEMA trailer have not affected her sleeping habits;

19   is that correct?

20       A.   That's correct.

21       Q.   Let me ask you this:  Is it common for

22   people in their 70s to think about cancer?

23            MR. TORRY:  Object to the form.

24       A.   I don't think I could give you an answer to

Doris O. Wong Associates, Inc.                Professional Court Reporters                                      617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center                                          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                                    2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 70

1   that question as stated.  I certainly haven't seen

2   any data about it one way or the other.

3       Q.   I'm asking about your experience when you

4   did treat patients.

5       A.   You certainly see patients who are

6   concerned, but I don't -- in my experience, it's by

7   no means a majority.

8       Q.   So you never found that, as people get

9   older, they become more concerned about ailments

10  such as cancer?

11      A.   I think they become more concerned about

12  illnesses in general, but I don't recall seeing -- I

13  wouldn't say that you see -- that they become really

14  fearful.

15      Q.   All right.  You talked about her appetite

16  and weight.  Ms. Castanel told you that she felt

17  fatigued since living in the trailer; is that

18  correct?

19      A.   That's correct.

20      Q.   Do you know if she ever felt fatigued

21  before living in the trailer?

22      A.   We talked about it, yes, but as I say in

23  the next sentence, she literally used the word she

24  felt she was "frisky," and that was exactly her

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)          2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 71

```
 1    term.  But she felt that she, since that time, had

 2    become more -- well, as it's stated here, more

 3    general fatigue, and then she gets tired faster.

 4        Q.    And you described fatigue as a symptom, and

 5    I'm just trying to understand the description of

 6    that symptom.  Is that like being tired, fatigued?

 7        A.    That's what it is.

 8        Q.    Next paragraph, "Ms. Castanel also reports

 9    'sinus trouble,'" and you have that in quotes.  Is

10    that the way Ms. Castanel described it to you?

11        A.    Right.  That was the term she used.

12        Q.    And Ms. Castanel told you about her history

13    of sinus problems?

14        A.    Correct.

15        Q.    And this is all -- this paragraph, it's all

16    the history given by Ms. Castanel, correct?

17        A.    In fact, the way my report is organized is,

18    the beginning is all specifically given -- reported

19    by Ms. Castanel, and then I discuss the medical

20    records subsequently.

21        Q.    Right.  And I just wanted to point that out

22    in the deposition.

23              And just run through for us what Ms.

24    Castanel's history was as far as sinus trouble.
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 72

 1      A.    As I say here, she had had -- she described

 2   her sinus problems before moving to the trailer as

 3   usually mild.  And she had taken medication.  She

 4   didn't recall which specific medications at the

 5   time.

 6           And after moving to the trailer, she

 7   described her sinus problems -- symptoms as more

 8   severe.  She described her headaches as severe.  She

 9   had associated facial pressure.  She couldn't

10   breathe through her nose.  Episodes lasted several

11   days.  She said, after leaving the trailer, she had

12   similar episodes, although not as severe, primarily

13   the nasal congestion and the headache.  She wasn't

14   sure how often she got them since leaving the

15   trailer, but she thought it was several times per

16   month.

17      Q.    And that was Ms. Castanel's history to you?

18      A.    That's correct.

19      Q.    And "Ms. Castanel has a long history of

20   hypertension."  That's unrelated to living in a

21   trailer, correct?

22      A.    Correct.

23      Q.    All right.  Well, let's run through the

24   rest of your report.  Let's go down to the bottom.

Doris O. Wong Associates, Inc.           Professional Court Reporters           617-426-2432
50 Franklin Street, Boston, MA  02110     Videoconference Center                 www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                    2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 73

```
 1    "She lives on St. Peters Street in New Orleans," and

 2    she "lived in a FEMA trailer from March 2006 to

 3    August 2007."

 4       A.   I said "July" here, because that's what she

 5    told me, but perhaps it was August.

 6       Q.   Well, actually -- that's fine, because in

 7    her deposition she testified that she moved out a

 8    few weeks before her departure date.  You have

 9    "July" written down somewhere?

10       A.   It's in the report.

11       Q.   I have "August."

12       A.   Oh, dear.

13            MR. TORRY:  I have "August" too.

14       Q.   Can I see that report?

15       A.   Oh, dear.  It must be an error that I

16    fixed.  I did fix a number of typos, so maybe my

17    version has -- you probably have the final version

18    and I have the one before.

19       Q.   Do you have the report that you edited and

20    made changes to?

21       A.   I do not.

22       Q.   So you fixed some typos in your report; is

23    that correct?

24       A.   Yes.  There was one typo at the end.
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 74

```
 1      Q.   What made you aware of the fact that

 2  information about the dates Ms. Castanel lived in

 3  her trailer was incorrect?

 4      A.   I don't know.  I don't recall.

 5      Q.   Do you know if you had a conversation with

 6  anybody?

 7      A.   I don't recall that.

 8      Q.   So it's your understanding that Ms.

 9  Castanel lived in a FEMA trailer from March 2006 to

10  July of 2007?

11      A.   I don't know that it was July or August.

12      Q.   But you changed your report to indicate

13  "July 2007"?

14      A.   Well, I may have changed it to indicate

15  "August."

16      Q.   You did make changes to your report.  You

17  fixed some typos?

18      A.   There were some typos, yes.

19      Q.   Did you change any substance in your

20  original report?

21      A.   I did not.

22      Q.   Do you know of any other typos that you

23  fixed in your report?

24      A.   We may pick some up as we look at it.  I
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 75

```
 1    don't recall specifically which ones I fixed.

 2        Q.    All right.  We'll just go forward.  The

 3    next section, the next paragraph, Ms. Castanel, you

 4    talk about when she worked in a factory?

 5        A.    Correct.

 6        Q.    What type of factory was that?

 7        A.    I don't recall.

 8        Q.    How long did she work at the factory?

 9        A.    She told me it was very brief, less than a

10    year.

11        Q.    And she worked for more than 30 years as a

12    housekeeper, correct?

13        A.    Correct.

14        Q.    Did she tell you what type of cleansers she

15    used?

16        A.    I asked her specifically.  You can see that

17    in the rest of the paragraph.  She mentioned -- she

18    said she used very few.  The two she remembers were

19    Endust and a washing detergent.

20        Q.    That's fine.  Is that in your report?

21        A.    Yes.

22        Q.    Let me see that report.  (Reviewing

23    document) So you added that information, apparently.

24    That's not in my report.
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 76

```
 1      A.    I'm not sure which -- what you've got.

 2      Q.    That's fine.  You can look at the two

 3   reports and just tell me if the sentence, "She

 4   recalls Endust and washing detergent," tell me if

 5   that's language you added.

 6      A.    It's here.

 7      Q.    Is that in the report that I have?

 8      A.    (Reviewing documents) I don't see it there,

 9   no.

10      Q.    Do you know why you added the sentence

11   about Endust and washing detergent?

12      A.    Again, I can't recall the specific -- at

13   the time, that was information I received from her.

14      Q.    Ms. Castanel followed up with you and gave

15   you specific information about the use of Endust and

16   washing detergent?

17      A.    She did not follow up with me.  I only saw

18   Ms. Castanel one time.

19      Q.    Oh, okay.  But in your first report you

20   didn't put anything about Ms. Castanel telling you

21   about the use of Endust and washing detergent,

22   correct?

23      A.    At least -- again, I'm not sure about this

24   version.
```

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)          2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 77

1      Q.    Do you know if an attorney provided you

2   with information about Endust and washing detergent?

3      A.    No.   I specifically asked her about it.

4      Q.    What made you think to supplement your

5   report and include that information?

6      A.    I can't give you an answer.   I don't know.

7      Q.    So at some point after you rendered your

8   original report, it occurred to you that you should

9   supplement your original report to include Endust

10  and washing detergent?

11     A.    I thought this was the original report.   So

12  I'm confused now.

13     Q.    Can you think of any event or communication

14  that caused you to supplement your original report

15  with the Endust and washing detergent information?

16     A.    No.

17     Q.    So do you know if Ms. Castanel told you

18  about any other specific cleansers that she used in

19  cleaning the house at the church?

20     A.    I asked her, and she did not recall others.

21     Q.    Did you see any other cleansers that Ms.

22  Castanel listed in her deposition?

23     A.    I would have to look back at that. I don't

24  recall that, as we sit here.

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)          2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 78

1    Q.   Could exposure to cleansers and chemicals

2  on a regular basis, as part of housekeeping, cause

3  symptoms?

4    A.   It depends on the chemical.  It's possible.

5    Q.   Let's see.  Let's continue, please, and

6  we'll pick up with that section of the report

7  regarding the Endust and the washing detergent.

8  Let's pick up right after that.

9    A.   "Review of systems is negative except that

10  she reports that she developed light spots on her

11  skin, especially arms and legs, while living in the

12  trailer.  She had mild itching while living in the

13  trailer but this has resolved.  The light spots have

14  persisted.  She also reports that she has had

15  glaucoma."

16    Q.   Now, since you testified at the beginning

17  of this deposition you're not offering any opinions

18  regarding dermatology, we don't have to cover the

19  skin conditions, correct?

20    A.   That's correct.

21    Q.   Tell me -- and I've seen this in medical

22  reports; I would just like to be clear -- what does

23  it mean, "Review of systems is negative"?

24    A.   What you do after you -- generally after

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 79

```
 1    you finish taking the history is literally go

 2    through all the major body systems and ask specific

 3    questions:  "Have you had skin problems?  Have you

 4    had eye problems?"  You literally go through every

 5    major system.

 6        Q.   Do you have that list relative to Ms.

 7    Castanel?

 8        A.   It's a standard list.  That's why I say

 9    it's negative.  I only list the positives.

10        Q.   I understand.  But is there a chart

11    somewhere or notes where you went through the list?

12        A.   No.  Again, you better remember them if

13    you've been practicing medicine for 30 some years.

14        Q.   That's fair.  So you went through all the

15    list of systems with Ms. Castanel, and everything

16    was negative?

17        A.   Except for what I've mentioned here.

18        Q.   And those exceptions would be?

19        A.   Right here.  I talk about --

20        Q.   The sinuses?

21        A.   No.  That's part of the history of the

22    present illness.  I'm not sure where you went to

23    medical school.

24        Q.   No, I didn't.  That's the point.  I'm not
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 80

```
 1    shy about asking questions, because I have to make
 2    sure I understand.
 3        A.    The history of present illness we talked
 4    about earlier.  That's a separate -- that's the
 5    current issues that you elicit during the history.
 6    And then you go through these and review, just to
 7    make sure that you didn't -- that for whatever
 8    reason you didn't miss something or something didn't
 9    come out.
10        Q.    Well, right.  It's a review of systems?
11        A.    Right.
12        Q.    And there are some items that you have to
13    cover?
14        A.    We already talked about the sinuses.  I'm
15    not going to ask about that again in the review of
16    systems.
17        Q.    We were talking about those things that
18    were negative.
19        A.    Right.
20        Q.    And you testified, "Well, I've talked about
21    the things that were positive."
22        A.    Correct.
23        Q.    And that's when I mentioned sinuses.  Is
24    that right?
```

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                    2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 81

1      A.   Not exactly, still.  I didn't need to bring

2   up the sinuses again, because she and I had talked

3   about them in detail.  So that's not part of the

4   review of systems.

5      Q.   That's fine.  Tell me what is part of the

6   review of systems.

7      A.    You start with the skin.  "Have you had

8   any rashes, skin irritation, skin burning?"  Then

9   you move to the eyes.  "Have you had problems" --

10  HEENT, we call it.  "Have you had problems with your

11  eyes, vision, burning, itching, redness?  Have you

12  had any problems with your ears," et cetera, and you

13  just keep going down.

14     Q.   Those are the questions you ask as part of

15  the review of systems?

16     A.   Correct.  That's what they're about.

17     Q.   And you've already testified that Ms.

18  Castanel told you that she didn't have any problems

19  with her eyes, correct?

20     A.   I said earlier here that she has had

21  glaucoma.

22     Q.   Well, that's based on her history?

23     A.   That's what review of systems is.

24     Q.   Okay.  But Ms. Castanel did not mention to

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation

Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I

March 11, 2010

Page 82

```
 1    you that she had any symptoms in her eyes, correct?

 2        A.   Not when I saw her, no.

 3        Q.   Now, it looks like the next section, you go

 4    through the medical records; is that correct?

 5        A.   That's correct.

 6        Q.   All right.  And based on these -- based on

 7    this report, you reviewed the medical records of Dr.

 8    Bowers, Dr. Gautraux and Dr. Paddock; is that

 9    correct?

10        A.   That's correct.

11        Q.   If you would have reviewed any other

12    medical records, would you have put a reference to

13    those medical records in your report?

14        A.   Probably, yes.

15        Q.   So --

16        A.   Unless they were completely

17    noncontributory.  That's why I have to tell you

18    probably.

19        Q.   Do you remember reviewing any medical

20    records from Dr. O'Byrne?

21        A.   Do you remember what kind of doctor he is?

22        Q.   She.  She is an eye doctor.

23        A.   I don't recall whether I reviewed those or

24    not.
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA 02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation

Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I

March 11, 2010

Page 83

```
 1      Q.   Well, we won't go through all the doctors.

 2   It's fair to say that if you reviewed records

 3   relative to Ms. Castanel, you reference those

 4   records in your report?

 5      A.   In general, yes, I would do that.

 6      Q.   I'm going to come back to the medical

 7   records.  Then you performed the physical

 8   examination, correct?

 9      A.   That's correct.

10      Q.   How long did that physical examination

11   last?

12      A.   Usually doesn't take very long.  In

13   general, for me, unless I hear something dramatic,

14   it probably doesn't take more than 15 minutes.

15      Q.   Did you have any positive findings on

16   physical examination?

17      A.   I think you can -- they're stated here.

18   She had some hypopigmented lesions -- areas, on her

19   arms and legs.  That was really the only significant

20   finding.

21      Q.   In fact you noted that her physical

22   examination was unremarkable?

23      A.   Yes.  In general, yes.  That's a general

24   term.
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA 02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 84

```
 1        Q.    There is no reference to any nasal

 2   congestion on this date, correct?

 3        A.    Well, that's not something you would find

 4   on physical examination.

 5        Q.    If Ms. Castanel had a stuffy nose on the

 6   date of your visit, you wouldn't have noted that?

 7        A.    You would not routinely see that on an

 8   exam.

 9        Q.    I'm not following you.

10        A.    There are two -- let me just be clear.  The

11   exam is different from the history.

12        Q.    Right.

13        A.    History is what you discuss with the

14   patient.  The exam is what you see objectively.

15        Q.    I understand that.  If you did a physical

16   exam of a patient and they had congestion in their

17   nose, would you look at their nose?

18        A.    You would, but you often can't see much.

19   Maybe you'll see the turbinates are a tiny bit

20   swollen, but it's not something you would easily see

21   on a routine exam.

22        Q.    Let's talk about specifics.  Did you

23   examine Ms. Castanel's nose?

24        A.    I did.
```

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110   Videoconference Center                www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                  2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 85

1      Q.    Did you make any comments or notes about

2   Ms. Castanel's nose in your report?

3      A.    I didn't see anything that was remarkable.

4      Q.    So you did not note any positive findings

5   after you examined Ms. Castanel's nose on January

6   13, 2010?

7      A.    At the point where I examined her, that's

8   correct.

9      Q.    You listened to her lungs?

10      A.    I did.

11      Q.    How did her lungs sound?

12      A.    It says, "Chest was clear."

13      Q.    How about her heartbeat?

14      A.    "Heart was unremarkable."

15      Q.    Is it fair to say that Ms. Castanel is

16   pretty healthy?

17      A.    I think overall, again, for her stated age.

18   You just have to take that into account.

19      Q.    Let's move forward.  It looks like we're

20   into this about an hour and a half.  Are you doing

21   good going as far as a break?  Do you want a break?

22      A.    I'm fine.  Thank you.

23      Q.    All right.  I think we're moving right

24   along.  The next several pages of the report, it

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110   Videoconference Center                www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                 2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 86

```
 1    looks like the next two pages -- now, I have to

 2    see -- I want to look at the report you have and see

 3    if any changes were made.  (Reviewing documents)

 4           For about two pages you talk about

 5    formaldehyde from the literature that you reviewed;

 6    is that correct?

 7       A.   That's correct.

 8       Q.   Did someone request that you include this

 9    in your report?

10       A.   No.  It's a standard practice in terms of

11    trying to understand associations and causation of

12    illness.

13       Q.   So was it helpful to you to include this

14    summary of the literature that you reviewed in your

15    report?

16       A.   Well, it's not so much it's helpful to me;

17    the idea is trying to be helpful to the reader.

18       Q.   So you're trying to tie in the involvement

19    of formaldehyde by summarizing the literature by

20    putting this section in your report about

21    formaldehyde?

22       A.   Again, it's a standard practice in terms of

23    trying to get the reader to understand the state of

24    the evidence.
```

Doris O. Wong Associates, Inc.                Professional Court Reporters                        617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center                        www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                    2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 87

1     Q.    Is it standard practice in being an expert

2    witness or being a physician?

3     A.    In the former, not the latter.  But if

4    you're an expert witness, specifically looking for

5    causations, causation of illness, you would want to

6    refer to the literature.

7     Q.    What I would like to do is attach both

8    reports.  I'm not going to waste your time by

9    reviewing all this information to make sure it's

10   accurate, but I would like to get a copy of this

11   report that you have in your possession.

12    A.    You're welcome to do so.

13          MR. GARRISON:  We'll just attach that as

14   Exhibit 8.

15              (Document marked as Miller

16              Exhibit 8 for identification)

17    Q.    I'll give that back to you.  Now, the

18   paragraph beginning with "Formaldehyde in housing

19   has been an issue of longstanding concern," is that

20   some type of conclusion?  Where is that from?

21    A.    That's from my interpretation of the

22   literature.

23    Q.    Is that based on your experience?

24    A.    Experience and review of the literature.

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 88

1      Q.    And what experience do you have regarding

2   formaldehyde being an issue of longstanding concern?

3      A.    I have read literally hundreds of papers

4   related to formaldehyde.

5      Q.    Was that all for this case?

6      A.    Yes.

7      Q.    Had you read any literature on formaldehyde

8   before you got retained in any of these FEMA

9   litigation cases?

10     A.    I'm sure I had in the past.  We certainly

11   discussed it when I was doing my toxicology

12   training.  It's routinely discussed, because it's

13   such an important chemical.

14     Q.    When were you doing your toxicology

15   training?

16     A.    Goes back to the mid-1980s.

17     Q.    Do you specifically recall any literature,

18   specific titles or names of literature, that you

19   reviewed regarding formaldehyde before your

20   involvement in this case?

21     A.    I don't recall the specific materials we

22   looked at 25 years ago, no.

23     Q.    Are you aware that formaldehyde is in many

24   different food products and many different

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 89

```
 1    environments?

 2        A.   I am.

 3        Q.   Are you aware that there's probably

 4    formaldehyde in this room as we sit here?

 5        A.   Certainly low levels in the air, yes.

 6        Q.   As you look around at some of the furniture

 7    made of wood products and other materials, are you

 8    aware that there is formaldehyde in those materials?

 9        A.   Certainly some of them I would expect it,

10    yes.

11        Q.   As part of your involvement in this case,

12    have you reviewed any of the reports by Dr. James,

13    the toxicologist?

14        A.   I believe he's -- retained by the

15    Defendant, yes.

16        Q.   Did you make note of the different levels

17    of formaldehyde that are in different products and

18    food products and environments?

19        A.   He mentions several numbers.  I don't

20    recall them as we sit here.  You'll find different

21    numbers elsewhere.  There's a range of estimates.

22        Q.   So you understand that formaldehyde is in

23    many different places?

24        A.   I do.
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 90

```
 1       Q.    Do you know the level of formaldehyde that

 2   was in Ms. Castanel's trailer?

 3       A.    I do not.

 4       Q.    And as you testified earlier, you don't

 5   feel like you need any additional information to

 6   provide opinions in this case?

 7             MR. TORRY:  Objection to the form.

 8       A.    If I said that, that's certainly not what I

 9   intended.  I would, again -- if more information

10   becomes available, I would certainly want to review

11   it.

12       Q.    As you sit here today, you don't know what

13   the level of formaldehyde was in Ms. Castanel's

14   trailer?

15             MR. TORRY:  Objection to the form.

16       A.    Again, what I -- specifically, no.  I've

17   discussed the level in FEMA trailers in general in

18   this report.

19       Q.    And you offered opinions in your report

20   regarding Ms. Castanel's condition and its

21   relationship to formaldehyde in her trailer without

22   knowing the level of formaldehyde in her trailer,

23   correct?

24       A.    Correct.
```

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110        Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 91

```
 1      Q.   Let's go to -- I believe it's Page 5, that

 2   second-to-last paragraph, "Although rhinosinusitis

 3   is clearly associated with formaldehyde exposure in

 4   humans, whether the condition is irritative or

 5   allergic, or a combination of the two, cannot be

 6   stated with certainty."  Do you still agree with

 7   that statement?

 8      A.   I do.

 9      Q.   In fact, you have to rely totally on Ms.

10   Castanel's history to offer any opinion regarding

11   the effect that any formaldehyde in the FEMA trailer

12   had on her condition?

13      A.   I think you've lost me.  You talked about a

14   statement here talking about mechanism of illness,

15   and then you flipped over to Ms. Castanel.  So I'm a

16   little confused by your question.

17      Q.   I do jump around.

18      A.   Maybe you could try to -- try it again.

19      Q.   Okay.  Any opinions that you have related

20   to the causal connection between Ms. Castanel living

21   in a FEMA unit and her exacerbation of her sinus

22   condition, that would be based on Ms. Castanel's

23   history, correct?

24      A.   I don't think -- again, I'm not sure I
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA 02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 92

```
 1   understand your question still, but -- I go back to

 2   what we talked about just a couple of minutes ago.

 3   There is extensive literature on the levels of

 4   formaldehyde in FEMA trailers.  Now, I don't know

 5   the specific measurements in her trailer, but I

 6   refer to that on the previous page.  So if I

 7   understand your question, I think the answer is no.

 8       Q.   Did any of the literature specifically

 9   cover Ms. Castanel?

10       A.   In terms of the exposure level in her

11   trailer?

12       Q.   In terms of the exposure level in her

13   trailer.

14       A.   Not that I've seen.

15       Q.   Did any of the literature specifically

16   cover Ms. Castanel's symptoms?

17       A.   Literature doesn't cover specific patients.

18   So your question makes no sense.

19       Q.   Well, I'm trying to find out if any of the

20   literature had anything to do with Ms. Castanel in

21   particular.

22       A.   Again, it wouldn't make sense.  I can't

23   answer your question.

24       Q.   Okay.  Would it be true to say that the
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 93

 1    literature did not specifically address Ms.

 2    Castanel's symptoms or her condition?

 3            MR. TORRY:  Objection to form.

 4       A.   Again, it doesn't make sense.  There would

 5    be no reason the published literature would do so.

 6       Q.   So you rely on general literature,

 7    literature talking about formaldehyde, to render

 8    opinions regarding Ms. Castanel's condition and what

 9    effect living in a FEMA trailer may have had on it?

10            MR. TORRY:  Objection to form.

11       A.   The answer is yes.  But that's always the

12    case.

13       Q.   Are Ms. Castanel's symptoms important?

14       A.   Of course.

15       Q.   Let's go back to the medical records.  You

16    reviewed Dr. Bowers' records, correct?

17       A.   Correct.

18       Q.   And did Dr. Bowers' records show that Ms.

19    Castanel had sinus problems before living in the

20    trailer?

21       A.   Yes.  I refer to early 2004.

22       Q.   Did Dr. Bowers' records show that Ms.

23    Castanel continued to treat with him for sinus

24    problems during and after the time she lived in the

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 94

```
 1     FEMA trailer?

 2         A.    That's correct.

 3         Q.    Did you note the number of visits that Ms.

 4     Castanel had with Dr. Bowers where she complained of

 5     sinus problems in the years 2004 through 2007?

 6         A.    I don't have it here.  I recall roughly

 7     probably four to five, but I would have to look back

 8     to confirm that.

 9         Q.    If I told you that Dr. Bowers' records

10     showed that Ms. Castanel complained of sinus

11     problems five times in 2004 with Dr. Bowers, one

12     time in 2006 with Dr. Bowers, and one time in 2007

13     with Dr. Bowers, would you disagree with that?

14         A.    I suspect you've counted, but, again, I

15     can't confirm that without looking back at the

16     records.

17         Q.    Would those numbers show that Ms. Castanel

18     did not complain of sinus problems any more after

19     living in the FEMA unit than she did while -- before

20     living in the unit?

21             MR. TORRY:  Objection to the form.

22         A.    No.

23         Q.    Those numbers wouldn't suggest that to you?

24         A.    Let me be clear about that.  Counting
```

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110   Videoconference Center                www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                 2f9201d0-8f99-44ec-a553-0e6737375bda