In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 95

```
 1    physician visits, in my experience, is not a

 2    terribly accurate way of -- in fact it's an

 3    inaccurate way, I'll be stronger, of assessing

 4    symptomatology.

 5         Q.   What about --

 6         A.   Let me finish, please.  There are lots of

 7    reasons that people, patients who come to doctors,

 8    don't come to doctors when they have symptoms.  And

 9    again, counting visits doesn't take that into

10    account.  To my mind, I don't find that useful at

11    all.

12         Q.   What about looking at the number of visits

13    and the symptoms complained of on those visits to

14    determine if a patient is having an increase in

15    symptoms?

16         A.   I would give you the same answer.  I don't

17    find that a useful tool to help answer those

18    questions.

19         Q.   Would you agree that a treating physician

20    is in a better position to diagnose that patient's

21    condition?

22         A.   I don't understand your question.

23         Q.   Would you agree that a physician that sees

24    a patient on a regular basis, more than once, is in
```



EXHIBIT
B-3

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110   Videoconference Center                www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)          2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 96

1    a better position than a physician who sees a

2    patient for one examination -- would you agree that

3    the treating physician is in a better position to

4    diagnose a patient's condition?

5         MR. TORRY:  Objection to form.

6         A.   I can't give you a general answer to that.

7    It would depend on specific circumstances.

8         Q.   So you can't agree with that --

9         A.   I can't agree or disagree.  That's a very

10   specific issue.

11        Q.   In this case, would you defer to Dr. Bowers

12   with respect to Ms. Castanel's treatment for her

13   sinuses from 2002 until the present?

14        A.   I don't understand your question about

15   deferring to.  You would have to explain that to me.

16        Q.   Would you agree with Dr. Bowers regarding

17   Ms. Castanel's symptoms and the treatment of those

18   symptoms from 2002 to the present?

19        A.   Well --

20        MR. TORRY:  Objection to the form.

21        A.   If I understand your question, the records

22   are what they are.  That's not for me to disagree or

23   agree.  It's just what he's recorded is what he's

24   recorded.  So, again, the question doesn't make

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110    Videoconference Center                www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                 2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 97

1    sense to me.

2        Q.   I understand.  Dr. Bowers is the treating

3    physician.  You wouldn't agree that he's in a better

4    position to discuss Ms. Castanel's sinus condition

5    from 2002 until the present?

6            MR. TORRY:  Objection to the form.

7        A.   I'll have to give you the same answer I

8    did.  The records are what they are.  You have that

9    information to work with.

10       Q.   Dr. Bowers prepared those records, didn't

11   he?

12       A.   He did.

13       Q.   Dr. Bowers saw Ms. Castanel on a regular

14   basis from 2002 to the present, didn't he?

15       A.   That's correct.

16       Q.   Would you agree that Dr. Bowers, as the

17   doctor who saw Ms. Castanel, prepared the notations

18   and saw the records, is in a better position to

19   comment on her sinuses from 2002 to the present?

20       A.   A better position than what? I guess I

21   don't understand.

22       Q.   A better position than you.

23           MR. TORRY:  Object to the form.

24       A.   It would depend on what the question is. If

Doris O. Wong Associates, Inc.            Professional Court Reporters                617-426-2432
50 Franklin Street, Boston, MA  02110     Videoconference Center                     www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)          2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 98

```
1    the question is -- if we're talking about potential

2    effects of chemicals or drugs, I don't believe he's

3    a pharmacologist or toxicologist, and I am.  So,

4    again, that's why I go back to my point a few

5    minutes ago.  It depends on the specific

6    circumstances.

7         Q.   Let's talk about symptoms.  Would you agree

8    that Dr. Bowers, as a treating physician who saw Ms.

9    Castanel on a regular basis from 2002 to the

10   present, is in a better position than you to talk

11   about Ms. Castanel's sinus symptoms?

12        MR. TORRY:  Objection to the form.

13        A.   I disagree.  I can read his records as well

14   as anyone else can.  The objective information is

15   present.

16        Q.   You don't find it significant that Dr.

17   Bowers sat in various meetings and visits with Ms.

18   Castanel and saw her and looked at her symptoms and

19   looked at her nose and heard her symptoms, you

20   wouldn't agree because of that, he's in a better

21   position to talk about Ms. Castanel's symptoms from

22   2002 to the present?

23        MR. TORRY:  Objection to the form.

24        A.   I can't answer your question.  I've tried,
```

Doris O. Wong Associates, Inc.            Professional Court Reporters            617-426-2432
50 Franklin Street, Boston, MA  02110       Videoconference Center                   www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                        2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 99

1    but I cannot.

2        Q.    With respect to Dr. Gautraux, would you

3    agree that Dr. Gautraux, as a treating ENT, is in a

4    better position to talk about Ms. Castanel's

5    symptoms, both before, during and after she lived in

6    the trailer?

7            MR. TORRY:   Same objection.

8        A.    I give you the same answer.   I can't answer

9    your question.

10       Q.    So, as you sit here, you would not agree

11   that a physician who sees a patient over time on a

12   regular basis and is a treating physician is in a

13   better position to talk about the patient's symptoms

14   over that period of time than you are?

15           MR. TORRY:   Objection to form.

16       A.    I don't understand the nature of your

17   question about a better position.   I've stated very

18   clearly that the records are the records.   You can

19   review them.   And depending on what question you're

20   asking, that may depend on how you can answer it.

21   So I can't give you a better answer than I have.

22       Q.    Did you review Dr. Reddy's records?

23       A.    Can you remind me who Dr. Reddy is.

24       Q.    He's the gastroenterologist.

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 100

1       A.   I do remember seeing those, yes.

2       Q.   And I don't know if you commented on those

3  in your report.

4       A.   I did not, I don't believe.

5       Q.   As part of his treatment in 2007, Dr. Reddy

6  did examinations and a review of systems, as you

7  did, on a regular basis.  Would you find that

8  information noteworthy relative to Ms. Castanel's

9  condition at those visits?

10      A.   I would have to look back at it.  Without

11  looking at it, I can't answer your question.

12      Q.   Would that information be significant as to

13  Ms. Castanel's condition on the dates that Dr. Reddy

14  performed those physical examinations?

15      A.   It depends -- again, it depends what

16  they're about.  If it's concerning her

17  gastroenterologic problems, I don't comment on

18  those.

19      Q.   I don't want to go into gastroenterology or

20  the problems associated with that.  I'm talking

21  about Dr. Reddy's review of the patient's symptoms

22  in a physical examination.  Wouldn't he be in a

23  position to do a physical examination, as a

24  gastroenterologist?

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 101

```
 1        A.   I don't know what he did.  I'm happy to
 2    look at those records, if you'd like to discuss
 3    them.
 4        Q.   But would you find the findings that Dr.
 5    Reddy had during his physical examinations in 2007
 6    significant?
 7        A.   Depends what he did.  I can't -- I can't
 8    answer that question in general.  But, again, I'm
 9    happy to look at the records.
10        Q.   But as an M.D. who was also board certified
11    in internal medicine at one time, you would trust
12    that Dr. Reddy would be able to administer a
13    physical examination and conduct a review of the
14    patient's symptoms and list accurate findings?
15             MR. TORRY:  Object to the form.
16        A.   I can't answer your question.  I'm happy to
17    look at specific records.
18        Q.   Referring to Dr. Bowers' testimony -- I
19    don't believe you reviewed Dr. Bowers' deposition,
20    did you?
21        A.   I did at one point, yes.
22        Q.   Was there anything in that deposition that
23    you disagreed with?
24        A.   I can't answer that in general.
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 102

```
 1        Q.   I have a question.  The question is, would

 2    you disagree with this testimony -- this is Dr.

 3    Bowers -- referring to Page 58, 13:  "Question:

 4    With respect to Ms. Castanel's overall health, how

 5    would you describe her health?  Answer:  I think her

 6    health is good.

 7            "Question:  The office notes we just went

 8    through from October of 2003 until last week, Ms.

 9    Castanel was treated on a consistent basis; would

10    that be fair to say?  Answer:  Yes, sir.

11            "Question:  Did you see any changes in Ms.

12    Castanel's condition, significant changes, during

13    that time period from 2003 to last week?"  And just

14    so you'll know, "last week" was in January of 2010.

15    "Answer:  No, I can't say that I did.

16            "Question:  Would you say that her health

17    and her symptoms remained relatively consistent

18    during the time period, that six-and-a-half, almost

19    seven-year time period?  Answer:  Yes.

20            "Question:  Actually a little more than six

21    years.  Based on a review of your medical notes and

22    your records, it appears as though Ms. Castanel

23    treated consistently for sinus problems before

24    Hurricane Katrina; is that correct?  Answer:  Yes,
```

Doris O. Wong Associates, Inc.              Professional Court Reporters              617-426-2432
50 Franklin Street, Boston, MA  02110        Videoconference Center                   www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                         2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 103

1    sir.

2            "Question:  Would it be fair to say -- did

3    you not sense or note any increase in Ms. Castanel's

4    sinus problems after Hurricane Katrina?"  And Dr.

5    Bowers testified, "No."

6            Would you have any reason to disagree with

7    that testimony?

8       A.   The testimony is what it is.  It's not my

9    job to agree or disagree.  In terms of Ms.

10   Castanel's sinus problems, obviously she gave me

11   different information.

12      Q.   If the information given to Dr. Bowers is

13   accurate, and that is that Ms. Castanel did not have

14   any increase in sinus problems after Hurricane

15   Katrina or after living in a FEMA unit, would you

16   still stand by your opinions regarding the fact that

17   you believe Ms. Castanel had an exacerbation of her

18   sinusitis?

19      A.   I can't answer your question.  That's not

20   the information I received, so I can't give you an

21   answer.

22      Q.   I want you to assume -- you're an expert.

23   I want you to make an assumption.

24            MR. TORRY:  Objection to the form.

Doris O. Wong Associates, Inc.          Professional Court Reporters                    617-426-2432
50 Franklin Street, Boston, MA  02110     Videoconference Center                        www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                      2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 104

1     A.    It doesn't make sense.  It's counterfactual

2   to information I have.  So I don't think I can

3   answer you.

4     Q.    That's fine.  Let's put the facts that you

5   got from Ms. Castanel on the side, just for purposes

6   of this question.

7     A.    Are we talking about a hypothetical

8   patient, some other patient?

9     Q.    We're talking about a hypothetical

10  question.

11    A.    I'm not sure I understand that at this

12  point.

13    Q.    Let's just go through it.  You're an

14  expert, or they're going to attempt to qualify you

15  as an expert.  Putting the history given by Ms.

16  Castanel on the side, if Ms. Castanel did not have

17  any increase in her sinus symptoms after Hurricane

18  Katrina or while living in the FEMA unit or after

19  the FEMA unit, would you still opine that Ms.

20  Castanel had an exacerbation of her sinusitis as a

21  result of formaldehyde?

22          MR. TORRY:  Objection to the form.

23    A.    I would revisit that conclusion.  I'm not

24  sure I can give you that exact answer as we sit

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 105

1    here.

2         Q.   So you can't answer that hypothetical?

3         A.   I can't.

4         Q.   What more information would you need to

5    answer that hypothetical?

6         A.   I think you would want to know in detail --

7    you'd really have to go into detail exactly what the

8    symptoms were.  To talk about -- at such a high

9    level, I don't believe I can give you a very

10   specific answer.

11        Q.   So is it true you can't give an opinion on

12   the causal connection between Ms. Castanel's living

13   in a FEMA unit, exposure to formaldehyde, and her

14   present sinus symptoms?

15             MR. TORRY:  Object to the form.

16        A.   That's not what you asked me.  You asked me

17   would I change my conclusions.

18        Q.   I'm asking you a new question.

19        A.   All right.  Let's try again.  Can you

20   repeat it again.

21        Q.   Can you give us an opinion regarding the

22   causal connection between Ms. Castanel living in a

23   FEMA unit and her present sinus condition?

24        A.   I did in my report, as you know.  I'm a

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 106

 1    little confused now.

 2        Q.    And I asked you some questions about

 3    information about symptoms obtained by treating

 4    physicians, and you were unable to give an opinion

 5    on medical causation; is that correct?

 6        A.    You've completely confused me now.  We were

 7    talking about treating physicians being in better

 8    positions.  We weren't talking about medical

 9    causation there, to my knowledge.  So now I have no

10    idea what you're speaking about.

11        Q.    The questions about better opinions were

12    ten minutes ago.  The most recent questions were, if

13    you would assume that Dr. Bowers' testimony is true

14    about the fact that Ms. Castanel had no new symptoms

15    or any different symptoms after Hurricane Katrina or

16    after living in a FEMA unit, would you still stick

17    by your testimony on medical causation?

18            MR. TORRY:  Objection.  Asked and answered.

19        A.    I would revisit my conclusions, as I just

20    said.  I can't tell you what the outcome would be.

21        Q.    So you can't answer that question?

22            MR. TORRY:  Objection.

23        A.    I've answered it twice in the same way.

24        Q.    I understand.  Now, you reviewed Dr.

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110    Videoconference Center                 www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                   2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 107

1    Gautraux's records, correct?

2        A.    I did.

3        Q.    You have already testified that it would

4    not be significant to you as to the number of visits

5    Ms. Castanel had with a treating physician and how

6    many times she complained of sinus problems on an

7    annual basis in terms of figuring out if there was

8    any exacerbation of her sinus condition?

9            MR. TORRY:   Objection to the form.

10       Q.    Is that a correct statement?

11       A.    What I stated was, I didn't believe

12   counting visits was an accurate way to represent

13   severity of illness, yes, if that's the same thing

14   you just said.  I'm not sure it is.

15       Q.    Would looking at visits from 2002 to the

16   present and the symptoms complained of by the

17   patient, would that be a way of determining if there

18   was any exacerbation of Ms. Castanel's sinus

19   condition?

20       A.    Not a good one, no.  I'll repeat what I

21   said earlier.  There are many reasons why patients

22   choose to go to a physician or not go to a physician

23   and therefore have a visit, and they're often very

24   difficult to understand.  So just by looking at

Doris O. Wong Associates, Inc.              Professional Court Reporters              617-426-2432
50 Franklin Street, Boston, MA  02110        Videoconference Center                    www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                          2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 108

1     specific visits to me is not a very accurate way to

2     assess that.

3          Q.    Do you find the history or the historical

4     information regarding a patient's treatment, do you

5     find the information is more accurate when it's

6     noted contemporaneously by a physician at each

7     visit, or do you find the historical information is

8     more accurate when a patient just gives you the

9     history of her treatment?

10         A.    They're two different types of information.

11    I can't talk about -- it doesn't make sense to talk

12    about which is more accurate.  You need to

13    incorporate both types of information.

14         Q.    So as we sit here today, you can't state or

15    testify that a patient (sic) taking notes

16    contemporaneously with symptoms or information about

17    symptoms provided by a patient, as opposed to a

18    patient looking back over ten years, you can't say

19    which method would provide more accurate

20    information?

21         A.    You said "patient taking notes."  You meant

22    physician taking notes, I believe.

23         Q.    I did.

24         A.    I will give you the same answer I just gave

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                    2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 109

1    you.  That's complementary information.  It doesn't

2    make sense to talk about more accurate.  You need to

3    incorporate both.

4         Q.   When you treated patients, did you record

5    the symptoms that were given to you by the patient?

6         A.   I did.

7         Q.   And what was the purpose of recording that

8    information?

9         A.   That's part of the history of the present

10   illness, so subsequent treating physicians have the

11   benefit of what you saw on that particular day.

12        Q.   Did you record the symptoms given to you by

13   patients at each visit?

14        A.   That's -- again, I'm giving you the same

15   answer.  Of course.  That's part of what you do.

16        Q.   And when you had to make a decision

17   regarding a patient's condition or treatment, did

18   you look back at the symptoms that were provided to

19   you by the patient on particular visits?

20        A.   You can't really answer a question that

21   general.  It depends on the situation.

22        Q.   You can't answer that question?

23        A.   It's just so general.  It's meaningless to

24   me.

Doris O. Wong Associates, Inc.            Professional Court Reporters            617-426-2432
50 Franklin Street, Boston, MA  02110      Videoconference Center                 www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                     2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 110

1     Q.   Isn't it true that your opinions regarding

2   causation, specifically that Ms. Castanel's sinus

3   condition was exacerbated, that opinion is based on

4   the history given by Ms. Castanel?

5          MR. TORRY:  Objection to the form.

6     A.   That's certainly part of what my opinion is

7   based on, yes.

8     Q.   If Ms. Castanel gave you an inaccurate

9   history regarding her symptoms and the occurrence of

10  those symptoms in relation to living in the FEMA

11  trailer, that would change your opinion on

12  causation?

13         MR. TORRY:  Objection to the form.

14    A.   It might.  It depends on what the

15  inaccuracy was.  Again, your questions are so broad,

16  I can't give you specific answers.

17    Q.   At the time you did an examination of Ms.

18  Castanel, other than the skin conditions, you did

19  not see any objective signs of injury; is that

20  correct?

21    A.   I'm not sure what you mean by objective

22  signs of injury, but -- maybe you could explain that

23  to me.

24    Q.   Sure.  Any objective medical signs of

Doris O. Wong Associates, Inc.        Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110       Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                    2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 111

1    illness or medical conditions.

2        A.    Not beyond what I've mentioned, no.

3        Q.    During your physical examination, did you

4    find any findings that support your opinion on

5    medical causation regarding the exacerbation of Ms.

6    Castanel's sinus condition?

7        A.    No, I wouldn't say -- neither support nor

8    detract from.  For a condition like this, you

9    rarely -- you wouldn't expect much on the physical

10   exam, frankly.

11       Q.    In your analysis of what may have caused

12   Ms. Castanel's alleged exacerbation of her sinus

13   condition, you said you considered other exposures?

14       A.    I did.

15       Q.    What other exposures did you specifically

16   consider?

17       A.    Well, obviously you ask the patient, do

18   they have chemical exposures.  We talked about

19   cleaning agents earlier.  You ask them about their

20   occupational history.  You look at other potential

21   exposures to drugs and chemicals.  You look at their

22   medications, for example.  So, again, part of

23   constructing the differential diagnosis is you look

24   for other possible contributors.

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)          2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 112

1      Q.   And did you note any other possible

2   contributors?

3      A.   I'm sorry?

4      Q.   Did you find any other possible

5   contributors to Ms. Castanel's condition?

6      A.   None that I believed were likely.  There

7   are always -- you can always say things are

8   possible.  It's almost impossible to disprove that.

9   But in terms of likely situations, no.

10     Q.   Did you review any air quality studies

11  regarding the air in New Orleans after Hurricane

12  Katrina?

13     A.   I believe I've seen some of that in

14  material reference -- it may be in the CDC report --

15  but I don't recall the numbers as we sit here.

16     Q.   Do you specifically remember any air

17  quality studies regarding the air in New Orleans

18  after Katrina?

19     A.   Again, I believe that was referenced in the

20  CDC report, but I would have to look back at it.

21     Q.   Did those air quality studies influence

22  your opinions in this case?

23     A.   I don't believe so, but I would want to

24  look back at that report.

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110    Videoconference Center                www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)          2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 113

1    Q.    When is the first time you went to New

2  Orleans after Hurricane Katrina?

3    A.    A year or two after.  I don't remember

4  exactly when.

5    Q.    So what was the purpose of your visit a

6  year or two after?

7    A.    I flew into the airport.

8    Q.    Did you stay in New Orleans any length of

9  time for that visit?

10    A.    I don't think so.  I think -- my wife's

11  family lives north of New Orleans.  I think we just

12  went directly there on that first trip.

13    Q.    Where does your wife's family live?

14    A.    Some live in Tylertown, Mississippi, some

15  in McComb, Mississippi.

16    Q.    Did you spend any time in New Orleans -- by

17  any time, more than a day -- in New Orleans when you

18  made that trip a year or two after Katrina?

19    A.    We go down there regularly, and I lose

20  track on what we do on each trip.  I think the first

21  time we didn't.  I believe the second time we went

22  down, we probably did spend some time in New

23  Orleans.

24    Q.    The second time you went down to New

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)          2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 114

1    Orleans and spent some time there, when was that?

2        A.   I can't tell you the exact date.  It's a

3    couple -- a couple of years ago.

4        Q.   Would that have been 2008, 2009?

5        A.   You know, I don't -- more likely 2008, but

6    as I mentioned, we're down there several times a

7    year.

8        Q.   Do you know anything about the smell that

9    was in neighborhoods after Katrina?

10       A.   I read about it in the newspapers, but I

11   don't know anything beyond that.

12       Q.   Do you have any firsthand experience about

13   the smell that was in neighborhoods after Katrina?

14       A.   I do not.

15       Q.   Did you know, beyond what you read in the

16   papers, that there were damaged properties all over

17   the city after Katrina?

18       A.   Well, we could even see them -- again, I

19   don't recall the exact date of the visit.  We could

20   see some of it, but mostly what I read in the

21   newspapers.

22       Q.   When you did go down to New Orleans for

23   that visit a few years ago, did you notice any

24   smells in the neighborhoods from damaged properties?

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 115

1       A.    I don't recall.

2       Q.    Would the smells, from whatever source

3  associated with damaged properties after a disaster

4  like Katrina, could that cause symptoms, nasal

5  symptoms in somebody who had chronic sinusitis?

6       A.    I wouldn't anticipate an odor alone.  It

7  would depend -- conceivably if there was a specific

8  chemical that caused that odor, that's possible.

9  But the odor itself, it's just a manifestation.

10      Q.    Do you have any opinion regarding whether

11  the smell associated with damaged properties after a

12  hurricane may have caused some exacerbation of Ms.

13  Castanel's sinus condition?

14      A.    I can only tell you just what I mentioned.

15  An odor alone would be unlikely -- it wouldn't be

16  the issue.  You would have to understand what

17  substance was causing that odor.

18      Q.    But as we sit here today, you can't rule

19  out that the smell associated with damaged

20  properties throughout the New Orleans area after

21  Katrina, you can't rule out that that might have

22  caused an exacerbation of Ms. Castanel's sinus

23  condition?

24            MR. TORRY:  Objection to the form.

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 116

1     A.    You can't exclude it, but there are lots of

2  things you can never exclude.  We're talking about

3  probability and what's likely and what's unlikely.

4     Q.    Do you know where Ms. Castanel's house was

5  located on St. Peter?  Do you know that part of the

6  city?

7     A.    I've been there.  I don't recall it very

8  well.

9     Q.    Do you know if that part of the city

10 flooded?

11    A.    I do not.

12    Q.    Do you know anything about the damage to

13 the houses and other properties in that part of the

14 city?

15    A.    No.

16    Q.    Did Ms. Castanel ever tell you that she

17 didn't like being around Sheetrock and construction

18 when they were fixing up houses?

19    A.    She may have.  I don't recall one way or

20 the other.

21    Q.    So as we sit here today, you don't know if

22 Ms. Castanel told you that she didn't like being

23 around Sheetrock and other construction?

24    A.    I don't recall, no.

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110       Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                    2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation

Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 117

 1     Q.   Could houses under construction, houses

 2  being repaired, where Sheetrock is being put in and

 3  construction is taking place with dust and the use

 4  of chemicals and paints, could that cause an

 5  exacerbation of a person's sinus condition?

 6          MR. TORRY:  Object to the form.

 7     A.   You can't exclude it, but I would not -- I

 8  believe it would be unlikely.

 9     Q.   Why do you believe it would be unlikely?

10     A.   Because, again, just dust alone would not

11  be a common or even uncommon way -- means of

12  exacerbating sinusitis.

13     Q.   Well, I didn't just talk about dust.  I'm

14  talking about the use of chemicals in the

15  construction and repair process, chemicals, paints

16  and other problems.

17     A.   I would have to know what the chemicals

18  were.  Again, you can't answer that question in

19  general.

20     Q.   What if Ms. Castanel actually complained

21  about the effect that Sheetrock dust and paint had

22  on her?  Would that be significant to you?

23          MR. TORRY:  Objection to the form.

24     A.   I think she may have mentioned that -- I

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 118

```
 1    don't remember the detail here -- of having some --
 2    feeling like her nasal congestion was a little bit
 3    worse.  It wasn't expressed to me as a major issue.
 4         Q.   Now, let me understand.  Ms. Castanel -- as
 5    we sit here today, you have a recollection that Ms.
 6    Castanel told you that her nasal condition got worse
 7    as a result of exposure to Sheetrock and paint?
 8         A.   No.  That's not what I said.
 9         Q.   I'm trying to understand.
10         A.   So just -- I think during that time she
11    mentioned that her nasal congestion was worse.  But
12    we didn't discuss Sheetrock and paint.
13         Q.   During what time?
14         A.   This time after Katrina, when there was a
15    lot of construction.
16         Q.   And what did you associate Ms. Castanel's
17    nasal condition getting a little worse with when she
18    told you that?
19         A.   I couldn't tell.  I didn't have information
20    to tell me what that might have been.
21         Q.   Well, it sounds like Ms. Castanel was
22    referring to houses under construction and paint, as
23    opposed to a FEMA trailer, with her nasal situation
24    getting worse.
```

Doris O. Wong Associates, Inc.                Professional Court Reporters                        617-426-2432
50 Franklin Street, Boston, MA  02110         Videoconference Center                              www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                         2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 119

 1          MR. TORRY:  Objection to the form.

 2     A.    She did not make that reference to me.

 3     Q.    Well, I'm asking you what your impression

 4 was, as the doctor who saw her.

 5     A.    There are a number of things that certainly

 6 could exacerbate sinusitis.  I didn't have

 7 information as to what those were --

 8     Q.    I understand.  But you were talking about

 9 Ms. Castanel making a statement to you, at some

10 point after Hurricane Katrina some things made her

11 sinus condition worse.

12     A.    Then I wasn't clear.  This was not -- we're

13 not talking about construction materials, et cetera.

14 That was not mentioned to me.

15     Q.    At some point it sounded like you were

16 talking about Ms. Castanel talking about something

17 other than her FEMA trailer made her sinus condition

18 worse.

19     A.    Let me be clear.  Ms. Castanel -- she knew

20 that during the time period her condition was worse.

21 She wasn't trying to tell me it was this that did it

22 or that that did it.  She was saying her condition

23 was worse.

24     Q.    And did she ever say it was worse due to

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)          2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 120

```
 1    some other conditions she was exposed to, other than

 2    her FEMA trailer?

 3        A.   Not that I recall, no.

 4        Q.   If Ms. Castanel complained about Sheetrock

 5    dust or construction causing her symptoms to get

 6    worse, would you say, as a doctor, that exposure to

 7    Sheetrock and other chemicals, as part of a

 8    construction or repair process, made Ms. Castanel's

 9    symptoms worse?

10             MR. TORRY:  Objection to the form.

11        A.   Not necessarily, no.  For many of us it's

12    very hard to tell, when our symptoms get worse, what

13    specifically is doing it.  So I couldn't -- I could

14    not draw that conclusion that you have.

15        Q.   But if a patient tells you, "My symptoms

16    got worse and my nose got irritated when I was

17    around Sheetrock or paint," as a doctor, you would

18    rely on that history by that patient, correct?

19             MR. TORRY:  Objection to the form.

20        A.   You would take that into consideration,

21    yes.

22        Q.   And if a patient told you that "When I'm

23    around paint or Sheetrock, my sinus symptoms get

24    worse," would it be your opinion, as a doctor, that
```

Doris O. Wong Associates, Inc.            Professional Court Reporters            617-426-2432
50 Franklin Street, Boston, MA 02110      Videoconference Center                 www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                    2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 121

```
 1   those substances, Sheetrock or paint, that they
 2   cause irritation to that patient?
 3            MR. TORRY:  Objection to the form.
 4       A.   Well, I can only tell you maybe.  We all
 5   make associations that may or may not be correct.
 6       Q.   And you rely on an accurate history from
 7   your patients to try and associate exposure to
 8   certain things to certain conditions?
 9       A.   You try.
10       Q.   Did you look at all the medications that
11   Ms. Castanel is taking?
12       A.   I did.  I believe -- all the ones that were
13   mentioned in the records, yes.
14       Q.   Do you have a list?
15       A.   It's in -- there's a list in here at the
16   end of the paragraph that begins "Medical records."
17       Q.   Did you consider all the side effects of
18   those medications?
19       A.   I did.
20       Q.   Do you know if any of those medications
21   were causing any side effects to Ms. Castanel?
22       A.   Side effects overall, or side effects
23   specifically related to her main conditions?
24       Q.   Both.
```

Doris O. Wong Associates, Inc.              Professional Court Reporters                617-426-2432
50 Franklin Street, Boston, MA  02110       Videoconference Center                      www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                           2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 122

 1        A.    I can't answer your question about any side

 2    effects of any sort.  Certainly in terms of her

 3    rhinosinusitis, it's my opinion that none of these

 4    are a significant contributor.

 5        Q.    Did you consider the side effects of the

 6    medications in terms of your opinion on medical

 7    causation in this case?

 8        A.    Again, it goes back to the differential

 9    diagnosis.  So I did, yes.

10        Q.    Did you consider all sources of

11    formaldehyde, other than any formaldehyde that might

12    have been in the FEMA trailer where Ms. Castanel

13    lived?

14        A.    We know there is background formaldehyde.

15    You and I have talked about that previously.  I

16    asked whether she might have been exposed to

17    substances that could have resulted in inhaled

18    formaldehyde, and I believe the answer was no, at

19    least not that she was aware of.

20        Q.    Do you know what the background

21    formaldehyde levels were in Ms. Castanel's

22    neighborhood after the hurricane?

23        A.    I haven't seen any measurements of that

24    information, no.

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 123

```
 1      Q.   Do you know what the background level of

 2   formaldehyde was in different neighborhoods in the

 3   city of New Orleans after the hurricane?

 4      A.   Again, I haven't seen any measurements.   I

 5   would be happy to look at them if you have them.

 6      Q.   I don't.  But would that be helpful for

 7   you, to figure out if any of Ms. Castanel's alleged

 8   exacerbation of complaints as a result of exposure

 9   to formaldehyde related to living in a FEMA trailer?

10      A.   I don't have any reason to expect those

11   background levels would be different from the

12   background levels in other cities.  So I don't

13   believe it -- it certainly wouldn't alter my

14   conclusions, no.

15      Q.   What are the background levels in other

16   cities?

17      A.   It varies.  There are a couple of papers on

18   this.  I believe I refer to one of them -- no.  I

19   don't think it's in this list of references.

20           It's on the order of a few parts per

21   billion are the most common.  There are variations,

22   of course.

23      Q.   And you think it would be fair to compare

24   New Orleans after Hurricane Katrina, as far as
```

Doris O. Wong Associates, Inc.            Professional Court Reporters            617-426-2432
50 Franklin Street, Boston, MA  02110            Videoconference Center            www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                    2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 124

1    background levels for formaldehyde, to other cities

2    in general?

3        A.    I don't have any reason not to make that

4    comparison at this point.  I would be happy to look

5    at data to that effect.

6        Q.    In your report you note that an individual

7    with an allergic history would be more sensitive to

8    many irritants; is that correct?

9        A.    That's correct.

10       Q.    And Ms. Castanel, she had an allergic

11   history?

12       A.    She did.

13       Q.    And Ms. Castanel, she would be more

14   sensitive to all irritants; is that correct?

15       A.    "All" is pretty strong.  It's hard to get

16   scientists to talk about all.  But certainly there

17   is evidence for a number of irritants, including

18   formaldehyde.

19       Q.    Well, let's talk about other irritants.  If

20   Ms. Castanel was sensitive to irritants because of

21   her history with allergies, she would also be more

22   sensitive to smells like paint; is that correct?

23       A.    You keep talking about smells.  Smells are

24   not an irritant.  Chemicals are an irritant.

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)          2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 125

1      Q.    Let's talk about exposure, then.

2      A.    If you can tell me which chemicals, I'm

3   happy to give you an answer.

4      Q.    Exposure to house paint.  If Ms. Castanel

5   was sensitive because of her allergic history, she

6   would be sensitive to the exposure to house paint;

7   is that correct?

8      A.    Not necessarily.  Again, what kind of house

9   paint is it?  Is it latex based, oil based?  Depends

10  on the chemicals.

11     Q.    Sherwin Williams --

12     A.    I can't answer the general question.

13     Q.    Let's talk about Sherwin Williams latex

14  house paint.

15     A.    I would have to see an MSDS to find out

16  what's in there.  It's not something I've memorized.

17     Q.    Did you review any MSDSs relative to your

18  involvement in this case?

19     A.    Not that I recall, no.

20     Q.    Latex house paint could cause irritation to

21  Ms. Castanel, if she was exposed to it, due to her

22  sensitivities because of her history of allergist?

23          MR. TORRY:  Objection to the form.

24     A.    I would be happy to look at the components.

Doris O. Wong Associates, Inc.                Professional Court Reporters              617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center                www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                              2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 126

```
 1    I can't answer your question without doing that.

 2        Q.    Other construction substances and dusts,

 3    Ms. Castanel's exposure to these other substances,

 4    that could cause irritation, given her sensitivities

 5    due to her history of allergist?

 6            MR. TORRY:  Objection to form.

 7        A.    Your question is too broad.  I would need

 8    to know specific components.

 9        Q.    You can't even say that exposure to these

10    could cause irritation to someone with these

11    sensitivities?

12        A.    It doesn't make sense until we know what

13    we're talking about, no.

14        Q.    Well, how can you say that Ms. Castanel's

15    exposure to formaldehyde, without even knowing the

16    levels in a FEMA trailer, could cause some

17    exacerbation?

18        A.    Again, I've discussed in the report the

19    likely levels, based on the CDC examination, and I'm

20    relying on that information for the levels.

21        Q.    Do you know how many hours a day Ms.

22    Castanel spent in her FEMA unit?

23        A.    Again, I can't give you a quantitative

24    estimate.  She described to me spending most of the
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 127

```
 1    day at home, but I can't tell you exactly how many

 2    hours that is.

 3        Q.   Do you know if Ms. Castanel kept her

 4    windows open while in the FEMA unit?

 5        A.   It's referred to in one of the expert

 6    reports.  I don't recall as we sit here.

 7        Q.   Would that have any impact on your

 8    opinions, if Ms. Castanel kept her windows open

 9    while she was in the unit?

10        A.   It would not.

11        Q.   Why not?

12        A.   That might alter the level somewhat, but I

13    don't believe -- again, my reading of this

14    literature is that it would not be sufficient to

15    completely flush out the formaldehyde.

16        Q.   Do you know what temperature Ms. Castanel

17    kept her unit?

18        A.   I do not.

19        Q.   In your report you noted that the

20    formaldehyde levels are lower at lower temperatures;

21    is that correct?

22        A.   In general, yes.

23        Q.   Is that information you got from some of

24    the literature you read?
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation

Lawrence G. Miller, M.D., M.P.H., Vol. I

Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

March 11, 2010

Page 128

```
 1        A.    Yes, it is.

 2        Q.    If Ms. Castanel testified at deposition

 3   that she kept her unit at 60 degrees, would that be

 4   significant to you in terms of the formaldehyde

 5   levels?

 6              MR. TORRY:  Objection to the form.

 7        A.    It would not.

 8        Q.    Why not?

 9        A.    Because, again, it would not be -- it might

10   be less formaldehyde than if it was 80 degrees, but

11   that's not going to eliminate formaldehyde.

12        Q.    But you stand by your testimony that, based

13   on your review of the literature, the lower the

14   temperature, the lower the formaldehyde level?

15        A.    In general, yes.  But, again, that's not an

16   absolute correlation.

17        Q.    In determining whether some exposure has

18   had an impact on a person, do you consider the

19   dose-response scenario?

20        A.    It depends on the situation.  For many

21   chemicals there's a dose response, depending on the

22   effect.  For some, there is not.

23        Q.    So wouldn't you want to know the amount,

24   the dose that a person was exposed to?
```

Doris O. Wong Associates, Inc.          Professional Court Reporters          617-426-2432
50 Franklin Street, Boston, MA  02110          Videoconference Center          www.doriswong.com
Electronically signed by Carol H. Kusinitz (601-252-684-5046)                    2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 129

```
 1        A.    We have approximations here.  If I could
 2   get an exact amount, sure I'd be happy to have it.
 3   But approximations here are adequate.
 4        Q.    But as you sit here, you don't have an
 5   exact amount?
 6        A.    I just told you that.
 7        Q.    And the length of the exposure, that would
 8   be part of that analysis?
 9        A.    I'm not sure what you mean by length.
10        Q.    The period of time to which a person was
11   exposed.
12        A.    Well, we know in terms of calendar months,
13   yes.
14        Q.    What about -- you're not sure exactly how
15   much time Ms. Castanel spent in the unit, correct?
16        A.    Not quantitatively, no.
17        Q.    And that would be important to figure out
18   whether there's a causal connection between the FEMA
19   unit and Ms. Castanel's exacerbation of her sinus
20   condition?
21        MR. TORRY:  Objection to form.
22        A.    No, I don't believe so.
23        Q.    You don't believe so?
24        A.    I think we know that she spent adequate
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 130

```
 1    time in the unit for exposure.  Whether it's 12 or

 2    14 or 15 hours, in my mind, won't materially affect

 3    the result.

 4        Q.    How do you come up with that, she spent

 5    adequate time?

 6        A.    She told me -- she obviously slept there,

 7    so we know -- you can take those number of hours.

 8    She told me she spent most of the day there.

 9        Q.    But you don't know, when she left, if she

10    had the windows open or how much time she spent in

11    there specifically?

12        A.    I think I just answered the question.

13        Q.    Yes, sir.  Could you tell if Ms. Castanel

14    had any structural changes in her nose area or nasal

15    region?

16        A.    That's not something one would see with a

17    simple examination.

18        Q.    So --

19        A.    I could not.

20        Q.    Dr. Wednes and Dr. French opined in their

21    reports that if someone can't smell formaldehyde,

22    then it's not causing irritation.  Would you agree

23    with that?

24        A.    I would not.
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 131

1      Q.    Do you know if Ms. Castanel had any damage

2    to her cells as a result of formaldehyde exposure?

3      A.    I am not aware that any kind of biopsy was

4    performed.

5      Q.    So the answer to that question would be no?

6      A.    Unless there is information that I haven't

7    seen.  At this point I don't know the answer.

8      Q.    Do you have any information to suggest that

9    Ms. Castanel has had damage to her cells as a result

10   of formaldehyde exposure?

11     A.    No.  Again, we have -- we can make

12   assumptions based -- not assumptions.

13     Q.    We don't want assumptions.

14     A.    I have no objective evidence.

15     Q.    Do you have any evidence that Ms. Castanel

16   sustained any tissue damage as a result of exposure

17   to formaldehyde in a FEMA trailer?

18     A.    Again, without a biopsy being performed or

19   some tissue being available, the answer is no.

20     Q.    And you don't have any recommendations for

21   future treatment at this time?

22     A.    I'm not a treating physician.

23     Q.    Can you say that it's more probable than

24   not that Ms. Castanel is going to get cancer from

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 132

1    living in a FEMA trailer?

2         A.   No.   I couldn't say that, no.

3         Q.   Can you say it's more probable than not

4    that Ms. Castanel will continue to have an

5    exacerbation of her alleged -- scratch that.   Can

6    you say it's more probable than not that Ms.

7    Castanel will continue to have increased sinus

8    complaints as a result of living in a FEMA trailer?

9         A.   No, I can't.   Let me just explain that for

10   a moment.   We don't know what's called the natural

11   history of rhinosinusitis after formaldehyde

12   exposure.   I'm not aware that it's discussed in the

13   literature.   There is one study in animals which

14   suggests that there are longstanding, perhaps

15   irreversible, changes, but that's not sufficient

16   to -- that's suggestive but not sufficient to draw a

17   conclusion.

18        MR. GARRISON:   I'm going to look through my

19   notes.   Do you have any questions?

20        MR. TORRY:   No, I don't.   Can we take a

21   ten-minute break?

22        MR. GARRISON:   I would prefer to conclude.

23        (Pause)

24

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 133

1      BY MR. GARRISON:

2      Q.    Let me ask you this:  Have you been

3   retained on any other cases by Plaintiffs' counsel

4   in this FEMA litigation, besides the ones we talked

5   about?

6      A.    Besides the Dubuclet and the Wright?  No.

7      Q.    And the three articles that Dennis provided

8   to you this week, that doesn't affect your opinions

9   in this case?

10      A.    It certainly wouldn't change them, no.  If

11   anything, I find it supportive.

12          MR. GARRISON:  That's all I have, Doctor.

13   Thank you.

14          MR. TORRY:  Thank you.  No questions.

15              (Whereupon the deposition

16               was concluded at 11:35 a.m.)

17

18

19

20

21

22

23

24

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 134

```
 1              C E R T I F I C A T E

 2       I, Lawrence G. Miller, M.D., M.P.H., do hereby

 3   certify that I have read the foregoing transcript of

 4   my testimony, and further certify under the pains

 5   and penalties of perjury that said transcript

 6   (with/without) suggested corrections is a true and

 7   accurate record of said testimony.

 8       Dated at _____, this ____ day of _____,

 9   2010.

10

11                        _____

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

Page 135

```
 1     COMMONWEALTH OF MASSACHUSETTS)

 2     SUFFOLK, SS.                 )

 3          I, Carol H. Kusinitz, RPR and Notary Public in

 4     and for the Commonwealth of Massachusetts, do hereby

 5     certify that there came before me on the 11th of

 6     March, 2010, at 9:18 a.m., the person hereinbefore

 7     named, who was by me duly sworn to testify to the

 8     truth and nothing but the truth of his knowledge

 9     touching and concerning the matters in controversy

10     in this cause; that he was thereupon examined upon

11     his oath, and his examination reduced to typewriting

12     under my direction; and that the deposition is a

13     true record of the testimony given by the witness.

14          I further certify that I am neither attorney or

15     counsel for, nor related to or employed by, any

16     attorney or counsel employed by the parties hereto

17     or financially interested in the action.

18          In witness whereof, I have hereunto set my hand

19     and affixed my notarial seal this 15th day of March,

20     2010.

21

22

23          Notary Public

24     Commission expires 6/7/13
```

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda

In re: FEMA Trailer Formaldehyde Products Liability Litigation
Earline M. Castanel, et al. vs. Recreation By Design, LLC, et al.

Lawrence G. Miller, M.D., M.P.H., Vol. I
March 11, 2010

D I S C L A I M E R

This transcript in any format is a confidential

communication between Doris O. Wong Associates,

Inc., a professional court reporting firm, and the

parties to this matter and their counsel.  Any

reproduction or distribution of this transcript

without the express permission of the parties is a

violation of this confidentiality. To fulfill any

request to the court reporter for an additional copy

or copies from persons or entities without standing

in this matter will require the consent of the

parties and/or counsel and/or a court order for such

delivery.

Doris O. Wong Associates, Inc.
50 Franklin Street, Boston, MA  02110
Electronically signed by Carol H. Kusinitz (601-252-684-5046)

Professional Court Reporters
Videoconference Center

617-426-2432
www.doriswong.com
2f9201d0-8f99-44ec-a553-0e6737375bda