**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

IN RE: FEMA TRAILER                          MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                 SECTION "N-5"

                                             JUDGE ENGELHARDT
                                             MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*Earline Castanel, et al. v. Recreation By*
*Design, LLC, et al.*
*Case No. 09-3251 (E.D. La.)*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION**
**TO STRIKE REFERENCES TO ALTERNATIVE DESIGN**
**AND RELATED DEMONSTRATIVE EXHIBIT**

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff Earline Castanel

("Plaintiff" or "Ms. Castanel") who respectfully offers this Opposition to Defendant Recreation

by Design, LLC's ("RBD" or "Defendant") Motion to Strike Plaintiff's References to an

Alternative Design and Related Demonstratives (the "Motion to Strike"). Defendant argues that

Plaintiff has failed to carry her burden in showing the feasibility of alternative design. Further

the defendant argues that the demonstrative aids that Plaintiff intends to utilize at trial showing a

comparison of the RBD wall panel construction and a wall panel constructed using a number of

alternative design features should also be stricken. RBD's Motion to Strike must fail on both of

these accounts. The Plaintiff has met her burden of showing the availability of alternative

designs at time of manufacture.  The experts who discuss alternative design features address them in their reports and also have personal knowledge of alternative construction materials and practices which were available at the time the Plaintiff's trailer was built by RBD, and which would have significantly reduced the formaldehyde exposure suffered by Ms. Castanel.  Further, the Defendant's Motion to Strike must fail against the demonstrative aid as the Defendant fundamentally misconstrues the purpose of the alternative design aid, and places too high a burden on the Plaintiff regarding the use of same.

### I.   ALTERNATIVE DESIGN ARGUMENTS SHOULD BE ALLOWED

Defendant's arguments that Plaintiff has failed to adequately support her claims on the issue of alternative design fall short and must fail.  Plaintiff's experts have given significant attention to the issues surrounding alternative design.  The contentions by RBD that these opinions are unsupported are simply not true.  Further, the legal arguments relied upon by RBD are overly burdensome and they misconstrue the support relied upon by Ms. Castanel to support her contention that there were alternative design features available to RBD at the time the unit was manufactured which would have significantly reduced or eliminated her exposure to formaldehyde.

Defendant raises an argument that Plaintiff has failed to: (1) identify a specific alternative design that existed and was capable of preventing her injury; and (2) perform requisite risk-duty analysis.  To support its arguments, Defendant relies upon *Lacoste v. Pilgrim international*, 2009 WL 126847 (E.D. LA)(*citing Krummel v. Bombardier Corp.*, 206 F.3d 548 (5th Cir. 2000)), and *Seither v. Winnebago Industries Inc.*, 853 So.2d 37 (La.App. 4 Cir. 2003).  The reliance on *Lacoste* must fail based upon the facts, and a number of Fifth Circuit cases, including one relied upon in *Lacoste* itself.

In *Krummel v. Bombardier Corp.*, 206 F.3d at 552, when discussing the risk-utility analysis to a design defect claim under La. Rev. Stat. Ann. §9:2800.56, stated: "A plaintiff may not need to detail and to quantify the risk and utility of a product where the product or design feature in question is "relatively uncomplicated and must be such that a layman could readily grasp them." (citing *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 184 ((5th Cir. 1990).  At issue in the instant litigation are a number of proposed alternative design features which involve simple common sense: (1) use of non-formaldehyde emitting wood products (which were available at the time of manufacture); (2) use of the ubiquitous Tyvek sheeting as a moisture barrier (anybody who has seen a building or house being built in this region would recognize the white Tyvek sheeting); and (3) utilizing "superior" manufacturing efforts (simply putting the unit together as it should have been put together).  While Plaintiff would argue that the other alternative designs are also based upon common sense (i.e. increased ventilation, proper insulation as called for by the HVAC manufacturer, etc.), Ms. Castanel's experts, particularly Mr. Mallet and Dr. Smulski have given considerable attention to each and every alternative design feature discussed in their reports.

In another Fifth Circuit case, *Malbrough v. Crown Equipment Corp.*, 392 F.3d 135, 137 (5th Cir. 2004), when discussing the need for expert testimony to support LPLA claims, which is central to RBD's assertion that Plaintiff failed to offer expert testimony in support of the alternative design claims – to which Plaintiff strenuously disagrees, the Fifth Circuit held:

> Crown asserts that the controlling question of law in this case is whether "the Louisiana Products Liability Act requires Plaintiff to put forth expert testimony in support of her design defect claim against Crown."  Put more precisely as a purely legal question, Crown's argument is that, as a matter of statutory interpretation, the LPLA requires expert testimony in every instance in which a design defect is alleged.  We are unable to agree.

First and most significantly, the plain language of the LPLA does not support Crown's position. The LPLA requires that a plaintiff advancing a design defect, show, *inter alia*, that "the likelihood that the product's design would cause the claimant's damage and the gravity of the damage outweighed the burden of the manufacturer adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." La. Rev. St. Ann. § 9:2800.56. No language or provision of the statute requires that a cause of action alleging a design defect must, as a matter of law, be supported by expert testimony. To the extent the statute allocates burdens of proof or production, it simply states that "the claimant has the burden of proving the elements of [his or her claim]." La. Rev. St. Ann. §9:2800.56.

It is therefore unsurprising that Louisiana case law does not support Crown's reading of the statute…

****

This lack of Louisiana Authority is reflected in *Lavespere v. Niagara Machine & Tool Works, Inc.,* where we remarked that the LPLA does not mandate "that the plaintiff…in every case, introduce evidence that details and quantifies the risk avoided and the burden incurred" in order to present a *prima facie* case of defective design. 910 F.2d 167, 184 (5th Cir. 1990). We further observed that "there may be cases in which the judge or jury, by relying on background knowledge and 'common sense' can 'filling in the gaps' in the plaintiff's case" and thus undertake the utility balancing required by the LPLA without aid of expert testimony.

Base upon the Fifth Circuit's ruling in *Crown*, it would seem that a determination of whether the Plaintiff has met her burden of proof is in the eye of the trier of fact and, as such, this Motion to Strike must fail. Further, the arguments raised by RBD must also fail, as the risk/utililty analysis of alternative materials is not so burdensome as RBD would have this Court believe. Finally, the RBD arguments must fail, because, above all else, Plaintiff's experts have given proper attention and analysis to the numerous alternative design options available to the Defendant at the time Ms. Castanel's unit was manufactured. The failure by RBD to consider any of the alternative designs, let alone implement any of them, is not a sufficient reason to bring, nor does it justify, the Motion to Strike.

It is important to note that the Defendant focuses its Motion to Strike almost exclusively on the deposition testimony of Mr. Mallet. This is misleading. Both Mr. Mallet and Dr. Smulski give considerable attention to alternative design options in their expert reports.[1] Further, RBD's Motion to Strike attacks Mr. Mallet for his purported lack of knowledge of wood products and the chemical properties thereof (specifically the properties of hardboard). This is an issue clearly within the knowledge base of Dr. Smulski, and which is unfair, misleading and disingenuous to criticize Mallet for lack of understanding an issue outside his area of expertise. Further, Mr. Mallet's report clearly states that he reviewed and relied upon Dr. Smulski's knowledge, through conversation and prior reports in the preparation of his own report.[2]

Mr. Mallet dedicates six full pages of his report to specifically addressing and analyzing alternative design/construction methods which could or should have been utilized by RBD at the time the Plaintiff's unit was manufactured for emergency residential use.[3] In fact there are eleven different proposed alternative design/construction methods that Mr. Mallet addresses in his report. These are supported by consideration of, amongst other things: cost analysis, contemporaneous use of the alternative at the time of manufacture by RBD, and benefits of the alternatives compared to the RBD design at issue in the instant matter. It is extremely interesting to note that use of hardboard (which has been used for many years in mobile home manufacture) is actually a cheaper alternative to the hardwood plywood paneling used by RBD in its manufacture of the Plaintiff's unit.[4]

Defendant acts as if many of the recommendations would be simply too burdensome to consider, when in actuality, they could have easily been implemented with minimal impact to

---

[1] See Alexis Mallet, Jr.'s expert report attached hereto as Exhibit "A", see also Dr. Stephen Smulski's expert report attached hereto as Exhibit "B".
[2] See Exhibit "A", p. 4.
[3] Id., pp. 90-95.
[4] Id., p. 90-91.

RBD's construction practices or costs.[5]  Further, the benefit would be substantial considering the adverse health effects attributed to formaldehyde exposure, including but certainly not limited to its carcinogenic properties.  The Defendant's counters to these arguments are diversionary, and do not hold water.

In addition to the significant attention that Mr. Mallet pays to the issues of alternative design and construction, Dr. Smulski also offers substantial testimony on the issue of alternative design materials and practices.[6]  It is interesting that RBD failed to consider Dr. Smulski's opinions in their attack on the Plaintiff's alternative design arguments.  Any arguments by RBD about Mallet's lack of knowledge of what is within Smulski's field of expertise are irrelevant and improper.

Plaintiff asserts that the RBD trailer was unreasonably dangerous for its intended use as emergency residential housing.  Primary to this defect was the urea-formaldehyde containing wood products which were used in the unit construction.  In addition to the urea-formaldehyde in the wood products, Plaintiff argues that the design of the unit itself contained defects which contributed to and increased the exposure to the off-gassed formaldehyde.  Finally, Plaintiff experts offer a number of alternatives of which they have direct knowledge, which could have been incorporated into the design and would have made the design less dangerous, several of which are simple and obvious.  (i.e., Had RBD used ultra-low emitting, or no-formaldehyde emitting materials, the Plaintiff's exposure to formaldehyde would have been reduced or eliminated).

---

[5] For example, RBD argues that Mallet did not give consideration to the weight differential between fiberglass batt insulation and the foam core insulation recommended by Mallet.  The weight difference, even if a couple of hundred pounds would be negligible in the context of a 5500 lb trailer with anticipated additional weight capacity of 1800-2000 lbs.  The improvement in safety and environmental quality of the RBD housing would have been significant for minimal impact on the overall construction and design.

[6] See Exhibit "B", pp. 9-11, paragraphs 29-34.

The defect in the RBD product existed in both design and construction.  The construction defect, not at issue in this Motion to Strike, relates to the inferior quality of workmanship which the Plaintiff experts found.[7]  The design defect related to the unreasonably dangerous nature of the RBD unit which was intended for use as emergency residential occupancy.  Plaintiff's experts have given significant attention to these alternatives, at least sufficient to put the issue in front of a trier of fact to decide whether RBD should or could have implemented the alternatives.  Further, the existence of alternatives contextualizes the unreasonable dangerousness of the product in accordance with the LPLA, and Defendant has not shown why these alternatives raised by Plaintiff's experts are not feasible.  As such, Defendant's Motion to Strike must fail and the issue of alternative design should be preserved for consideration by the trier of fact.[8]

## II.    DEMONSTRATIVE AIDS SHOULD BE ALLOWED

If this Honorable Court finds that Plaintiff may make arguments relating to alternative design, as has been allowed in the two previous bellwether trials nearly identical in issue to the instant matter, then the use of the demonstratives must also be allowed as they will assist the trier of fact.  The demonstrative aids relating to the RBD wall panel mock-up and the alternative design mock-up are intended to help illustrate the elements of testimony that several Plaintiff experts are anticipated to make.  The burden that Plaintiff must carry is actually quite low when it comes to the introduction of demonstrative evidence.  The arguments made by RBD are inaccurate as they relate to the demonstrative panel mock-ups.  First, they are intended as demonstratives to assist the trier of fact, who was not present during any testing, and who does not have construction expertise, to understand many of the design elements at issue in this

---

[7] See Mallet Report, attached as Exhibit "A", p.107
[8] It must be noted that this issue of alternative design has been considered by the trier of fact in the first two bellwether trials.

litigation and which are central to the testimony of Plaintiff's experts.  Second, these mock-ups are intended as **demonstrative aids** rather than exhibits for the trier of fact.

It is also important to explain that the alternative design mock-up is also something which should be viewed in the context of a demonstrative.  The alternative design mock up is a compilation of multiple alternative design options, any one of which would have, by itself, reduced the formaldehyde exposure suffered by Ms. Castanel.  The alternative design mock-up contains at least four alternative design elements which Plaintiff argues were available, achievable and practicable at the time RBD built the Plaintiff's unit.  The alternative design options demonstrated in the alternative design mock-up are:[9] (1) non-urea formaldehyde emitting hardboard, which has been used in the manufacture of mobile homes for decades; (2) Tyvek moisture/vapor barrier -- properly placed in on the outside wall of the cavity space --  which is almost universally used in construction in this region; (3) foam core insulation, which is similar to the structurally insulated panels used in manufactured housing; and (4) caulking/sealing of wall/ceiling penetrations to prevent or limit the flow of moisture and formaldehyde contaminated air between the wall and ceiling cavity space.  Plaintiff makes the argument that these design features were in wide-spread use and available to RBD at the time the Plaintiff's unit was manufactured.  Also, individually or in combination, any of the above alternative designs would have made the unit safer and would have reduced the exposure to formaldehyde suffered by the Plaintiff.

It is axiomatic that a Court has wide discretion when examining issues relating to relevancy, prejudice and probative value of exhibits and demonstrative aids.  A district court has broad discretion in assessing the admissibility under Rule 403 providing for exclusion of relevant evidence if its probative value is substantially outweighed by danger of unfair prejudice,

---

[9] These alternative designs are addressed by both Mr. Mallet and Dr. Smulski in their reports.

confusion of issues or misleading the jury. *U.S. v. Morris*, 79 F.3d 1996 (5th Cir. 1996). Further, this Court has articulated previously that argument itself is inherently prejudicial, and must be so for a party to carry any burden of persuasion and proof.

Further, what is probative when it comes to demonstrative aids is that they must simply illustrate points of testimony to assist the trier of fact in understanding otherwise complex points. As was stated by the court in *Colgan Air, Inc. v. Raytheon Aircraft, Co.*, 535 F.Supp.2d 580 (E.D.VA 2008):

> Demonstrative aids are appropriately and widely used in trials to help illustrate for the jury matters that might otherwise be less than fully understood. Such aids can take various forms, including, *inter alia*, diagrams maps, computer animations or…mock-ups. And regardless of the particular form, all demonstrative aids generally serve the same purpose, namely to explain or clarify a complex principle or concept, or to aid in the understanding of complicated witness testimony, particularly expert testimony. In other words, the primary purpose of a demonstrative aid is "to illustrate other admitted evidence and thus to render it more comprehensible to the trier of fact." 2 McCormick on Evidence § 214 (6th Ed. 2006).

The use of these demonstrative aids imposes no unfair or undue prejudice on Defendant RBD. Instead, the demonstratives merely illustrate points of testimony central to the litigation and clarify otherwise complex issues for the trier of fact. Plaintiff asserts that there is no merit to Defendant's contention that the demonstrative aids should be excluded from trial. Further, the inclusion of alternative design arguments is central to the litigation, and as Plaintiff has shown, testimony by Plaintiff experts to such is proper and must not be excluded. As such, Defendant's Motion to Strike references to the mock-up demonstrative aids must fail.

### III.    CONCLUSION

The Plaintiff has presented substantial expert opinion relating to alternative design and construction, backed up by demonstrative exhibits which illustrate these principles. Defendant RBD has raised arguments in its Motion to Strike which are inaccurate and misleading, and

which must fail for the reasons articulated herein.  Further, there has been absolutely no showing by Defendant that any such testimony or use of the demonstrative aids at issue would unfairly prejudice RBD.  As such, Plaintiff respectfully requests that this Honorable Court deny the Defendant's Motion to Strike, and allow the Plaintiff to present expert testimony relating to alternative design and construction methods, and to utilize the demonstrative aids to assist the trier of fact in understanding the construction and alternative design issues which are central to this litigation.

Respectfully submitted,

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

s/ Gerald E. Meunier
GERALD E. MEUNIER, # 9471
**PLAINTIFF'S' CO-LIAISON COUNSEL**
Gainsburg, Benjamin, David, Meunier &
Warshauer, L.L.C
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
T: 504/522-2304
F. 504/528-9973
gmeunier@gainsben.com

s/ Justin I. Woods
JUSTIN I WOODS, #24713
**PLAINTIFF'S' CO-LIAISON COUNSEL**
Gainsburg, Benjamin, David, Meunier &
Warshauer, L.L.C
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
T: 504/522-2304
F. 504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON. #9938
MIKAL WATTS, Texas #20981820
DENNIS REICH, Texas #16739600

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing on April 22, 2010.

s/ Gerald E. Meunier
GERALD E. MEUNIER, # 9471