Page 1353

```
 1                UNITED STATES DISTRICT COURT
 2                EASTERN DISTRICT OF LOUISIANA
 3
 4
   IN RE:  FEMA TRAILER            *   Docket MDL 1873 "N"
 5 FORMALDEHYDE PRODUCTS           *
   LIABILITY LITIGATION            *   New Orleans, Louisiana
 6                                 *
   THIS DOCUMENT IS RELATED TO:    *   March 19, 2010
 7                                 *
   LYNDON T. WRIGHT V.             *   1:00 P.M.
 8 FOREST RIVER, INC., ET AL       *
   DOCKET NO. 09-2977              *
 9 * * * * * * * * * * * * * * * *

10                        DAY 5
                    AFTERNOON SESSION
11               JURY TRIAL BEFORE THE
              HONORABLE KURT D. ENGELHARDT
12            UNITED STATES DISTRICT JUDGE

13
   APPEARANCES:
14
   For the Plaintiff:        Frank J. D'Amico, Jr. APLC
15                           BY:  FRANK J. D'AMICO, JR., ESQ.
                             BY:  AARON Z. AHLQUIST, ESQ.
16                           622 Baronne Street
                             New Orleans, Louisiana  70113
17
                             Nexsen Pruet, L.L.C.
18                           BY:  PAUL A. DOMINICK, ESQ.
                             P.O. Box 486
19                           Charleston, South Carolina  29402

20                           Reich & Binstock
                             BY:  DENNIS C. REICH, ESQ.
21                           4265 San Felipe
                             Suite 1000
22                           Houston, Texas  77027

23                           T. CHRISTOPHER PINEDO, ESQ.
                             4550 Jericho Road
24                           Corpus Christi, Texas 78413

25
           JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
                   UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```


EXHIBIT

Page 1467

```
 1   A.   Not that I recall, no.
 2   Q.   Have you received any awards -- you have awards listed in
 3   here.  Have you received any awards in the field of toxicology?
 4   A.   I don't believe so, no.
 5   Q.   Have you ever been tendered in a court of law and accepted
 6   as a toxicologist?
 7   A.   I believe so, yes.
 8   Q.   Have you ever been tendered in a court of law and had your
 9   credentials rejected?
10   A.   Not that I know about.
11   Q.   Never?
12   A.   Well, again, I don't understand the legal issues, but not
13   to my knowledge.
14   Q.   Okay.  Were you aware, sir, that -- if you'll just give me
15   a second.
16            MR. GIEGER:  One second, Your Honor.
17   BY MR. GIEGER
18   Q.   Are you familiar with the case called Christianson [sic]
19   vs. Allied Signal?
20   A.   Christianson?
21   Q.   Christianson vs. Allied Signal?
22            MR. REICH:  May we approach, Your Honor?  I think I
23   can short-circuit the process.
24            THE COURT:  Come on up.
25            (WHEREUPON, the following proceedings were held at
```

        JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
                 UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA

Page 1468

1  the bench.)
2        MR. REICH:  Your Honor, I think this really goes
3  beyond the ken of the jury in that it involves a split decision
4  of a panel that reheard the case on en banc.  It was a case
5  that preceded by quite a number of years the Daubert decision.
6  And, basically, I think it was either a five-to-four opinion or
7  a very closely divided en banc rehearing because it was
8  initially affirmed with his opinions by the --
9        THE COURT:  Okay.  Well, let's cut to the chase.
10       MR. REICH:  The bottom line is, it's a complex
11  situation and it's kind of collateral.
12       THE COURT:  It's not really complex if the question
13  is:  Was he accepted by the court as an expert?
14       MR. REICH:  By the trial court and by Fifth Circuit,
15  the panel that initially heard it.  And then on further appeal
16  there was a rejection of -- of his opinions.  But ultimately
17  science vindicated him and it turned out he was right.
18       THE COURT:  Well, wait.  Was the last action taken by
19  the court that he was not accepted as an expert?
20       MR. GIEGER:  Correct.
21       MR. REICH:  The last action after a long convoluted
22  process.
23       THE COURT:  All right.  Then that's what the court's
24  holding was.  So I'll let him ask it.
25       MR. REICH:  All right.  With respect to the question

```
 1   of whether or not he was ultimately -- his opinion was
 2   ultimately rejected, it's not really a fair characterization.
 3           THE COURT:  No.  It's whether he was accepted as an
 4   expert.  If the ultimate decision, from whichever court, en
 5   banc or not, decided he was not, then that was the ruling in
 6   the case.
 7           (WHEREUPON, the following proceedings were held in
 8   open court.)
 9   BY MR. GIEGER
10   Q.  Sir, are you aware that the United States Court of
11   Appeals, Fifth Circuit, in Christianson vs. Allied Signal
12   Corporation affirmed your rejection as an expert?
13   A.  I don't think the case was called Christianson, but that
14   was a case with a similar name.
15           MR. REICH:  Christopherson.
16   BY MR. GIEGER
17   Q.  Christopherson, I'm sorry.
18   A.  I don't understand what fully happened in it.  It was a
19   very drawn-out process over several years.  I can't tell you
20   that I understand that.
21   Q.  You talked about earlier your work at Harvard Medical
22   School; correct?
23   A.  That's correct.
24   Q.  And isn't it a fact that in 1985 you were censured by the
25   Harvard Medical School Internal Committee on Research?
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

```
1    A.    I was not censured, no.
2    Q.    Okay.  Let's look at this document together.
3              MR. D'AMICO:  This hasn't been admitted into
4    evidence, Judge.  I think he can show him the document.
5              MR. GIEGER:  Let me show him the document.
6              THE COURT:  All right.  I've got it now.  Go ahead.
7    Is it on the --
8              MR. GIEGER:  I took it off, Judge.
9              THE COURT:  That's fine.  Put it on there.
10             MR. GIEGER:  Put it on?
11             THE COURT:  I think I've got it.  So that he can see
12   it from there.
13   BY MR. GIEGER
14   Q.    Do you see this document?
15   A.    I do.
16   Q.    Have you seen this document before?
17   A.    Quite a while ago, yes.
18   Q.    Okay.  And this document, it's from Harvard Medical
19   School; correct?
20   A.    That's what it says, yes.
21   Q.    It says, inquiry of certain research done by you,
22   Dr. Lawrence Miller; correct?
23   A.    That's correct.
24   Q.    And does the middle paragraph talk about:  "The Faculty
25   Committee concluded on February 15th, 1985, that Dr. Miller has
```

Page 1471

1  failed in one paper produced during his MGM fellowship and one
2  draft manuscript from his work at the Brigham to authenticate
3  his findings and data in a manner generally recognized as
4  required of all members of the scientific laboratory, and that
5  Dr. Miller's conduct with regard to this research has been
6  unacceptable.  The Dean of the Harvard Medical School has
7  accepted this finding."
8           Is that correct?
9  A.   That's what it says.
10          MR. REICH:  Your Honor, under the Rule of Optional
11 Completeness, I'd request that the last paragraph of the letter
12 be read so the jury gets the full context.
13          THE COURT:  Do you want to do that, Mr. Gieger, or do
14 you want to wait for him on redirect --
15          MR. GIEGER:  I'll read it now.
16          THE COURT:  Okay.
17 BY MR. GIEGER:
18 Q.   "Neither the questioned paper nor the manuscript was
19 published.  The committee found no basis to question the
20 integrity of the published research.  Care of patients was not
21 involved in the allegation against Dr. Miller.  The Harvard
22 Committee did not review or pass judgment in any way upon
23 Dr. Miller's clinical practice or care of patients."
24          That's what it says; right?
25 A.   That's correct.

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Page 1472

1  Q. So you had -- your research was questioned by the Harvard
2  Medical School; correct?
3  A. It was questioned by one of my colleagues, yes.
4  Q. And that's not the -- you've had other research that even
5  you've questioned that you've submitted in the scientific
6  community; isn't that true?
7  A. I'm not sure what you're speaking about.
8  Q. Have you ever withdrawn a paper that you've submitted to
9  a -- to a journal?
10 A. I'm not sure what you're referring to.
11 Q. Have you ever had to withdraw a paper because of the
12 method in which you treated data?
13 A. Not to my -- I'm not sure I recollect what you're speaking
14 about, no.
15 Q. Did you ever have a -- did you ever have to withdraw a
16 paper that you've submitted to a journal because there was a
17 problem with the data in the area of asthma?
18 A. Well, not because of a problem with the data. Amidst this
19 difficulty at Harvard Medical School, I agreed not to publish a
20 paper that was going to be published.
21 Q. Do you remember being deposed in a case called Tamburino
22 vs. American Sterilizer Company on March the 28th, 1995?
23 A. I do not.
24 Q. Do you remember being asked the question: "Have you ever
25 had to withdraw a paper because of the method in which you

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

```
 1   treated data?"
 2           MR. REICH:  Your Honor, this has nothing to do with
 3   the issue of toxicology.  I believe he's been accepted in all
 4   the areas, and there was some issue raised by Mr. Gieger
 5   concerning toxicology.  We're going beyond the scope.
 6           THE COURT:  We are.  The scope of the inquiry at this
 7   point is whether or not he's an expert in the field of
 8   toxicology.  So how does this relate to that inquiry at this
 9   point?
10           MR. GIEGER:  It goes to his ability to give opinions
11   on collected data, which would be the field of toxicology.
12           THE COURT:  Well, I mean, that would be generally
13   stated on any expert.  So is there a reason why you were
14   focused on getting answers out of him that relate to his
15   expertise in toxicology specific?
16   BY MR. GIEGER:
17   Q.   Let me ask this:  Was the study on asthma a toxicological
18   study?
19   A.   It was not.
20   Q.   Was the study at Harvard a toxicological study?
21   A.   It was not.
22           MR. GIEGER:  That's all the questions I have, Judge.
23           THE COURT:  All right.  Mr. Kurtz.
24           MR. KURTZ:  Your Honor, I don't have any additional
25   traverse, but I do think that it's cumulative and irrelevant to
```

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA