UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
|        FORMALDEHYDE PRODUCTS | * | |
|        LIABILITY LITIGATION | * | SECTION "N-5" |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| THIS DOCUMENT RELATES TO: | * | |
| | * | |
| *Earline Castanel, et al. vs. Recreation By Design,* | * | |
| *LLC, Shaw Environmental, Inc.* | * | |
| Docket No. 09-3251 | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S OPPOSITION TO DEFENDANT RECREATION BY DESIGN, LLC'S
MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF GERALD MCGWIN, JR. PH.D.**

**MAY IT PLEASE THE COURT:**

Plaintiff Earline Castanel, through undersigned counsel, respectfully submits this response to Defendant Recreation By Design, LLC's ("RBD") Motion *in Limine* to exclude testimony of Plaintiff's expert epidemiologist on general causation, Gerald McGwin, Jr. Ph.D., and, in support, would show:

**SUMMARY OF ARGUMENT**

RBD contends that Dr. McGwin's testimony regarding general causation is irrelevant, and such testimony would potentially be unfairly prejudicial. RBD states that "the critical issue[s] in this case are (1) the amount, or the exposure level of formaldehyde in Earline Castanel's trailer to which she was exposed while living there, and (2) what injuries Ms. Castanel may have sustained which was caused by the formaldehyde exposure."[1] If RBD would like to concede that formaldehyde exposure generally causes respiratory symptoms, and, thus, would only like to argue about levels of exposure, then Dr. McGwin's testimony would be

---

[1] Defendants' Memorandum in Support of its Motion to Exclude Testimony of Dr. McGwin at p.2.

unnecessary. However, inherent in RBD's second "critical issue" is a challenge to the causation of Ms. Castanel's injuries as a result of her exposure to formaldehyde while living in the trailer manufactured by RBD. Dr. McGwin's general causation testimony does not concern the threshold level at which these symptoms occur, because Dr. Lawrence Miller's testimony compliments that of Dr. McGwin and provides the basis for specific causation, specifically Dr. Miller's opinion that Ms. Castanel suffered an exacerbation of her rhinosinusitis. As will be discussed *infra*, Dr. McGwin's testimony is relevant and more probative than prejudicial as to the association of formaldehyde with respiratory symptoms. Furthermore, testimony regarding general causation between formaldehyde exposure and respiratory symptoms is admissible at trial.

## FACTUAL BACKGROUND

In February 2006, Plaintiff Earline Castanel moved into a trailer that was manufactured by RBD and installed by Shaw. She lived in the trailer continuously until March 2007.[2] Approximately five weeks after moving into the trailer, Ms. Castanel began to suffer breathing problems, sinus problems, eye irritation, and swelling or puffiness around her eyes.[3] She began to develop nausea, abdominal pain, diarrhea, dry skin, itchy skin, and spots and/or rashes about three months after moving into the trailer.[4] Three or four months after moving into the trailer, Ms. Castanel began to suffer tightness of the chest, throat irritation, and hoarseness.[5] Ms. Castanel testified that her sinus condition was "much worse" after she moved into the trailer.[6] She testified that she "just would feel bad" and would get "nauseated" when living in the trailer.[7]

---

[2] See Deposition of Earline Castanel taken on December 2, 2009, excerpts attached as Exhibit "A", at p. 25.
[3] See *Id.* at p.32-33,37.
[4] See *Id.* at p.36-39.
[5] See *Id.* at p.40.
[6] *Id.* at p.69.
[7] *Id.* at p.34-35.

Ms. Castanel stated that her headaches were more severe than those she had experienced before living in the trailer.[8] Even though Ms. Castanel could recall these symptoms and the timing of their arrival to the best of her knowledge, Ms. Castanel stated: "I don't know what it was being caused by, I just know I felt it."[9] It was not until after moving out of her trailer that Ms. Castanel linked her symptoms to formaldehyde in the trailers.[10]

While she was living in the trailer, and after moving out of the trailer, Ms. Castanel has received medical treatment on numerous occasions for chest pain, hypertension, eye irritation, throat and sinus problems.[11] Ms. Castanel was "admitted to the Ochsner Emergency Room in August of 2009 for near scope, and described sinus congestion at the time."[12] Dr. Lawrence Miller noted in his affidavit that Ms. Castanel was prescribed fourteen (14) medications as of October 2008.[13] On March 31, 2010 Ms. Castanel underwent sinus surgery, performed by Dr. Joseph Gautreaux, III.

## ARGUMENT AND AUTHORITIES

### I.   STANDARD OF ADMISSIBILITY

Relevant evidence is generally admissible at trial. Fed. R. Evid. 402. Rule 401 provides that relevant evidence is "evidence, having any tendency to make the existence of any fact that is of consequence the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In determining whether evidence is relevant, a court should ask: "[d]oes the item of evidence tend to prove the matter sought to proved?" Fed. R. Evid. 402, Adv. Comm. Note (1972). In making a relevancy determination, a district judge is

---

[8] See *Id.* at p.38.
[9] *Id.* at p.35.
[10] See *Id.* at p.56,92-93.
[11] Affidavit of Lawrence G. Miller, M.D.,M.P.H. CAST002312, Jan. 28, 2010, attached hereto as Exhibit "B", at p.3
[12] *Id.*
[13] *Id.*

given broad discretion: "[t]his is a question of legal relevance, a matter on which the trial judge has wide discretion, and which the appellate court will not reverse unless the trial judge has clearly abused his discretion." *Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1351, 1356 (5th Cir. 1983) (citing *Wright v. Hartford Accident & Indem. Co.*, 580 F.2d 809, 810 (5th Cir. 1978)). Under Rule 403 of the Federal Rules of Evidence, a district judge is permitted to exclude relevant evidence if he finds that its probative value is substantially outweighed by the danger of "unfair prejudice, confusion of the issues, or misleading the jury". Fed. R. Evid. 403.

## II. DR. MCGWIN'S TESTIMONY IS RELEVANT AND SHOULD NOT BE EXCLUDED.

As RBD correctly points out, Ms. Castanel claims to have sustained exacerbation of rhinosinusitis and mental anguish and emotional distress, including the fear of cancer, as a result of formaldehyde exposure.[14] However, Ms. Castanel also testified to breathing problems, throat irritation, eye irritation and puffiness around her eyes, skin irritation and rashes, and nausea, which in addition to her exacerbated rhinosinusitis and fear of cancer support her additional claims of past pain and suffering, impairments and disability, and loss of enjoyment and quality of life.[15] Dr. McGwin's report and testimony provides evidence that supports Ms. Castanel's respiratory symptoms form the standpoint of general causation. Dr. McGwin's opinion is that "studies support the existence of a causal relationship between residential formaldehyde exposure and respiratory symptoms."[16] Furthermore, Dr. McGwin cited studies that provide evidence of a dose-response relationship between formaldehyde exposure and both respiratory and ocular symptoms.

RBD claims that Dr. McGwin's testimony is not relevant because he does not provide a

---

[14] *Id.* at p.6.
[15] *See* Exhibit "A", at p.32-40.
[16] Report of Gerald McGwin, Jr. Ph.D., CAST002228, January 28, 2010, attached hereto as Exhibit "C", at p.8.

specific (minimum) level of formaldehyde exposure at which the causal relationship exists between residential formaldehyde exposure and respiratory symptoms.[17] This claim is completely without merit. In direct contradiction of what RBD would have this Honorable Court believe, Dr. McGwin has produced evidence in his report of the formaldehyde exposure level at which respiratory symptoms arise.[18] Dr. McGwin references multiple levels of formaldehyde exposure in his report at which a causal connection was found.[19] Additionally, Dr. McGwin cites a NIOSH suggested maximum level of 0.016 ppm formaldehyde for occupational exposure for more than fifteen (15) minutes.[20] These are occupational levels designed to protect healthy workers in an eight-hour work day.

Dr. McGwin's cited studies provide levels of formaldehyde exposure at which a causal relationship was found, each of which was performed under different conditions, with different age groups, for different periods of time, and in different climate condition.[21] The fact that Dr. McGwin is unable given the current science to cite to a specific threshold formaldehyde exposure for respiratory symptoms, presumably for the time period that Ms. Castanel lived in her trailer and in the specific climate conditions over that period of time, does not render his testimony irrelevant.

What RBD left out of its selection of excerpts from Dr. McGwin's deposition testimony were Dr. McGwin's explanations as to why neither he nor the scientists who performed the cited studies can pinpoint a specific threshold level of formaldehyde exposure at which respiratory symptoms arise; Dr. McGwin clearly testified that "many of the studies look at it as a continuum

---

[17] Defendants' Memorandum in Support of its Motion to Exclude Testimony of Dr. McGwin at p.4.
[18] *Id.* ("Here, Dr. McGwin . . . has no idea at what exposure levels this causal connection is triggered.").
[19] *See* Exhibit "C", at p.4.
[20] *Id.* at p.1 ("In the United States, the legal occupational limit for . . . formaldehyde exposure . . . long term . . . (i.e., more than 15 minutes) is 0.75 ppm.").
[21] *Id.* at p.3-7.

and suggest that with each increase in a formaldehyde level, the risk of health, respiratory health effects goes up."[22]

> Q: As we sit here today, you are unable to give an opinion on the level of formaldehyde exposure it would take to have a causal relationship between residential formaldehyde exposure and respiratory symptoms; is that correct?
>
> A: If you wanted and exact number, I would answer "yes." However, the literature clearly suggests that there is a dose-response, there is a trajectory from many of the studies wherein the prevalence of respiratory problems is linearly related to formaldehyde exposure.
>
> So the question sort of really becomes not so much where does it exist and not exist. It's where is it where it's low enough that either for sample size reasons the estimate isn't reliable or for public health reasons it's not a health problem, so the question is sort of hard to answer in that way. There isn't one number that I could give you today.[23]

Furthermore, Dr. Williams' affidavit is supportive of the varying levels at which studies find a causal relationship.[24] In terms of general causation, Dr. McGwin's testimony is clearly relevant.

## III. DR. MCGWIN'S TESTIMONY IS ADMISSIBLE AS IT IS MORE PROBATIVE THAN PREJUDICIAL.

As noted above, broad discretion is vested in the district court for the determination of whether evidence should be admitted based on relevancy and materiality. *Young v. Ill. Cent. Gulf R. Co.*, 618 F.2d 332, 337 (5th Cir. 1980). "Trial courts must not lose sight, however, of the liberal nature of the Federal Rules of Evidence. It must be remembered that '[t]he federal rules and practice favor the admission of evidence rather than its exclusion if it has any probative value at all.'" *Id.* (citing *United States v. Carranco*, 551 F.2d 1197 (10th Cir. 1977)).

Since Dr. McGwin has clearly and indisputably testified as to the multiple studies which

---

[22] Deposition of Gerald McGwin, Jr. Ph.D., February 23, 2010, excerpts attached as Exhibit "D", at p.83.
[23] *Id.* at p.83-84.
[24] *See* Preliminary Affidavit of Patricia M. Williams, CAST002002, Jan. 27, 2010, excerpts attached as Exhibit "E" at p.11-21 (Respiratory symptom threshold varies from study to study; the minimum is between 49 ppb and 81 ppb).

show the levels at which formaldehyde exposure can cause respiratory symptoms, his testimony is both relevant and admissible. In addition, Dr. Williams' testimony is corroborative of the difficulties in determining a minimum, or threshold, level of formaldehyde exposure that causes respiratory illness. Dr. Miller has opined that Ms. Castanel's exposure to formaldehyde while living in her trailer caused an exacerbation of rhinosinusitis, and it is a question of fact for the ultimate fact-finder whether the levels of exposure were high enough to cause Ms. Castanel's injuries. Because Dr. McGwin's testimony is relevant and RBD has offered no other reason why his testimony could be prejudicial, the probative value of Dr. McGwin's testimony is not substantially outweighed by the danger of unfairly prejudicial, and such testimony should not be excluded.

## CONCLUSION

Because Dr. McGwin's testimony is both relevant and admissible, it should not be excluded at trial. Accordingly, Plaintiff requests this Honorable Court deny Defendant RBD's Motion *in Limine* to Exclude Testimony of Gerald McGwin, Jr. Ph.D.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
          GERALD E. MEUNIER, #9471
          **PLAINTIFFS' CO-LIAISON COUNSEL**
          Gainsburgh, Benjamin, David, Meunier &
          Warshauer, L.L.C.
          2800 Energy Centre, 1100 Poydras Street
          New Orleans, Louisiana 70163
          Telephone:    504/522-2304
          Facsimile:    504/528-9973
          gmeunier@gainsben.com

        s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:     504/522-2304
Facsimile:     504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
ROBERT BECNEL, #14072
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL WATTS, Texas # 20981820

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record as indicated below in accordance with the Federal Rules of Civil Procedure on April 23, 2010.

        /s/Gerald E. Meunier
GERALD E. MEUNIER