UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

|  |  |  |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | * * * * * * * * | MDL NO. 1873  SECTION "N-5"  JUDGE ENGELHARDT  MAG. JUDGE CHASEZ |
| THIS DOCUMENT RELATES TO: *EARLINE CASTANEL, ET AL v. RECREATION BY DESIGN, LLC, SHAW ENVIRONMENTAL, INC., and UNITED STATES OF AMERICA THROUGH THE FEDERAL EMERGENCY MANAGEMENT AGENCY,* NO. 09-3251 | * * * * * * * * * * | |

**************************************************************************

**RECREATION BY DESIGN, LLC'S MEMORANDUM IN SUPPORT OF *DAUBERT*
MOTION TO EXCLUDE EXPERT TESTIMONY
OF DR. LAWRENCE MILLER**

**MAY IT PLEASE THE COURT:**

Defendant, Recreation By Design, LLC, submits this Memorandum in Support of *Daubert* Motion to exclude testimony of Plaintiff's proposed specific causation expert, Lawrence Miller,

M.D.[1]

## I. BRIEF STATEMENT OF FACTS

The instant action stems from Plaintiff's alleged exposure to formaldehyde while residing in a travel trailer supplied by FEMA as emergency housing. Plaintiff has retained Dr. Lawrence Miller, a physician certified in internal medicine and pulmonary disease, to present specific causation testimony regarding Plaintiff's alleged respiratory conditions. Dr. Miller personally examined Castanel on January 13, 2010 and issued his expert report on January 28, 2010. This report focused on Castanel's respiratory condition and her fear of cancer and their alleged association with formaldehyde.

After a brief discussion of the literature on formaldehyde, Dr. Miller opined that, "within a reasonable degree of medical probability, the exposure to formaldehyde emissions during her residence in the FEMA trailer significantly exacerbated Ms. Castanel's rhinosinusitis."[2] Additionally, after noting that he reviewed the expert report of fellow Plaintiff expert witness, Patricia Williams, Ph.D., Dr. Miller further opined that "based on Ms. Castanel's known exposure to formaldehyde, discussed above, and the evidence summarized by Dr. Williams, it is also my opinion, within a reasonable degree of medical probability, that Ms. Castanel's fear of cancer, after her exposure to formaldehyde, are rationally based."[3]

---

[1]RBD has filed a Motion in *Limine* to Exclude the Testimony of Dr. Miller and incorporates those argument herein. *See* R. Doc. 13298.

[2]Miller Affidavit, dated January 28, 2010, attached as Ex. A.

[3]*Id.*

## II. LAW AND ARGUMENT

RBD moves to exclude Dr. Lawrence Miller from testifying based on the opinions expressed in his expert report on the grounds that his opinions are unreliable and irrelevant under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*[4] and its progeny.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702."[5] Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant."[6] The burden is on the proponent to prove by a preponderance of the evidence that the expert satisfies the Rule 702 test.[7]

There are a number of nonexclusive factors that a court may consider in evaluating the reliability of an expert, including: (1) whether the technique has been or can be tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, and (4) the existence and maintenance of standards controlling the technique's operation."[8] "Not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other

---

[4] 509 U.S. 579 (1993).

[5] *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 243 (5th Cir. 2002).

[6] *Burleson v. Tex. Dep't of Criminal Justice,* 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 l.Ed.2d 238, 249-50 (1999).

[7] *Mathis v. Exxon Corp.,* 302 F.3d 448, 459-60 (5th Cir. 2002).

[8] *Burleson, 339 F.*3d at 584.

factors it deems relevant"[9]

Further, with respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert,* the proposed testimony must be relevant "not simply in the sense that all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue."[10] Finally, In making a determination, the trial court must also take into consideration Federal Rules 702, *et seq*, which address the permissible scope of expert testimony. These provisions make clear that any expert who testifies must offer evidence that is both relevant and reliable. This requires an expert to show that his proposed testimony and opinion is based upon reliable information and to explain the rigors of his methodology, the basis for that knowledge, and his experience outside the presence of the jury.[11]

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts of date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

i. **Dr. Miller Should be Excluded from Testifying Regarding His Opinion that Plaintiff Experienced an Exacerbation of Rhinosinusitis.**

As referenced above, Dr. Miller opined that "within a reasonable degree of medical probability, the exposure of formaldehyde emissions during her residence in the FEMA trailer

---

[9] *Guy v. Crown Equip, Corp.,* 394 F.3d 320, 325 (5th Cir. 2004).

[10] *Bocanegra v. Vicmar Servs., Inc.,* 320 F.3d 581, 584 (5th Cir. 2003).

[11] *Id.*

significantly exacerbated Ms. Castanel's rhinosinusitis."[12]  However, Dr. Miller rendered this opinion without knowing the tested level of formaldehyde in the Castanel FEMA trailer or the level at which formaldehyde causes health effects in humans.  Dr. Miller also relied on a questionable medical history obtained from the Plaintiff.  For these reasons, Dr. Miller's testimony should be excluded because it does meet the requirements of Federal Rules of Evidence 702  and would not pass the *Daubert* test because the "facts and data" relied on by Dr. Miller as well as Dr. Miller's method, do not meet the standard required of expert testimony.

In a toxic tort case, a plaintiff must present evidence of the harmful level of exposure to the chemical, and knowledge that plaintiff was exposed to that level.[13]  As will be shown below, prior to forming his expert opinion in this matter, Dr. Miller failed to define what is considered to be a harmful level of formaldehyde and he did not provide evidence that Plaintiff was exposed to this requisite level of formaldehyde.

In his report, Dr. Miller only writes in general terms when referencing both of these issues. On page 5 of his report, Dr. Miller states that the "MRL derived for intermediate inhalation (15-365 days) is 30 ppb, and for chronic inhalation (greater than 365 days) is 8 ppb."[14]  Plaintiff has argued that Dr. Miller's reference to the MRLs are sufficient to meet the evidentiary requirement regarding the harmful level of exposure.  RBD asserts that Dr. Miller's general reference to MRLs does not meet this requirement.  Dr. Miller gave no indication in his report that he believes that exposure to

---

[12] Miller Affidavit, dated January 28, 2010, attached as Ex. A.

[13] *Allen v. Pa. Eng'g Corp.,* 102 F.3d 197, 199 (5th Cir. 1996); *see also Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 279 n.10 (5th Cir. 1996) (noting importance of the expert knowing the level of exposure to support his causation opinion).

[14] Miller Affidavit, dated January 28, 2010, attached as Ex. A.

5

levels of formaldehyde at levels greater than the stated MRL's are harmful. Further, Dr. Miller also failed to provide evidence that plaintiff was exposed to the requisite level of formaldehyde which is harmful to humans. Again, the Plaintiff argues that Dr. Miller's general reference in his report, indicated below, satisfies the evidentiary requirement that the plaintiff present evidence that she was exposed to a harmful level of the chemical. Dr. Miller states in his report:

> With regard to Ms. Castanel, the primary elements for the correlation of her rhinosinusitis with formaldehyde exposure are present. As previously noted, a "completed exposure pathway" is present, indicating the strong likelihood that Ms. Castanel was exposed chronically to formaldehyde emissions in her "FEMA trailer" housing.[15]

Again, RBD asserts that this general statement by Dr. Miller, which does not conclusively state that Castanel was exposed to the requisite harmful level of formaldehyde, fails to satisfy Plaintiff's evidentiary requirements.

Moreover, a further flaw in Dr. Miller's opinion, is that he did not know the tested level of formaldehyde in the Castanel FEMA travel trailer. This information is not contained in his expert report, and when questioned at his deposition regarding the level of formaldehyde in Castanel's FEMA travel trailer, Miller responded as follows:

> Q. As you sit here today, you don't know what the level of formaldehyde was in Ms. Castanel's trailer?
>
> ****
>
> A. Again, what I specifically, no. I've discussed the level in FEMA trailers in general in this report.
>
> Q. And you offered opinions in your report regarding Ms. Castanel's condition and its relationship to formaldehyde in her trailer without knowing the level of formaldehyde in her

---

[15]Miller Affidavit, dated January 28, 2010, attached as Ex. A.

     trailer, correct?

  A. Correct.[16]

Further, despite the availability of formaldehyde test results specific to the Castanel unit, Dr. Miller did not consider these results in rendering his expert opinion.  Instead, in an effort to find some basis for his conclusions, Dr. Miller referred generally to the average of test results contained in a Centers for Disease Control (CDC) report issued in 2008 and which reported the results of formaldehyde sampling in 519 randomly selected FEMA units.[17]

The above clearly outlines several deficiencies in Dr. Miller's method and the data relied on in reaching his opinion that the Plaintiff suffered an exacerbation of rhinosinusitis as a results of alleged formaldehyde exposure while residing in her FEMA travel trailer.

In addition to questionable data in concluding that Plaintiff suffered an exacerbation of rhinosinusitis, Dr. Miller also relied on questionable facts.  Plaintiff's long term treating physicians, Dr. Alan Bowers, a board certified Internist, and Dr. Joseph Gautreaux, a board certified ENT, both treated Castanel prior to and after Hurricane Katrina as well as during the time she resided in her FEMA travel trailer.  Both Dr. Bowers and Dr. Gautreaux testified that Castanel's did not experience an increase in sinus problems after Hurricane Katrina.[18]  Note that Dr. Miller reviewed Castanel's medical records from her treatment with Drs. Bowers and Gautreaux before forming his opinions in this matter.

---

  [16]Miller depo. at 90:12 - 24, excerpts attached as Ex. B.

  [17]Miller Affidavit, dated January 28, 2010, attached as Ex. A.

  [18]Bowers depo. at 59:6-15 and 61:5-14, excerpts attached as Ex. C and Gautreaux depo. at 54:6-14, excerpts attached as Ex. D.

Despite having reviewed the medical records of Drs. Bowers and Gautreaux, Dr. Miller testified that he relied largely on the medical history given to him by Castanel in reaching the conclusion that exposure to formaldehyde caused her to suffer an exacerbation of her rhinosinusitis symptoms.[19] However, when presented with medical testimony at his deposition that Castanel's rhinosinusitis symptoms did not increase while she resided in the FEMA travel trailer or after moving out of the trailer, Dr. Miller conceded that he would have to revisit his conclusion regarding her rhinosinusitis. Dr. Miller testified:

> Q.   "I have a question. The question is, would you disagree with this testimony - - this is Dr. Bowers - - referring to Page 58, 13: "Question: With respect to Ms. Castanel's overall health, how would you describe her health? Answer: I think her health is good.
>
> "Question: The office notes we just went through from October of 2003 until last week, Ms. Castanel was treated on a consistent basis; would that be fair to say? Answer: Yes, sir.
>
> "Question: Did you see any changes in Ms. Castanel's condition, significant changes, during that time period from 2003 to last week?" And just so you'll know, "last week" was in January of 2010. "Answer: No, I can't say that it did.
>
> "Question: Would you say that her health and her symptoms remained relatively consistent during the time period, that six-and-a-half, almost seven-year time period? Answer: Yes.
>
> "Question: Actually a little more than six years. Based on a review of your medical notes and your records, it appears as though Ms. Castanel treated consistently for sinus problems before Hurricane

---

[19] Miller depo. at 110:1-7, excerpts attached as Ex. B.

    Katrina; is that correct?  Answer: Yes, sir.

    "Question: Would it be fair to say - - did you not sense or note any increase in Ms. Castanel's sinus problems after Hurricane Katrina?"  And Dr. Bowers testified, "No."

    Would you have any reason to disagree with that testimony?

A.  The testimony is what it is.  It's not my job to agree or disagree.  In terms of Ms. Castanel's sinus problems, obviously she gave me different information.

Q.  If the information given to Dr. Bowers is accurate, and that is that Ms. Castanel did not have any increase in sinus problems after Hurricane Katrina or after living in a FEMA unit, would you still stand by your opinions regarding the fact that you believe Ms. Castanel had an exacerbation of her sinusitis?

A.  I can't answer your question.  That's not the information I received, so I can't give you an answer.

Q.  I want you to assume - - you're an expert.  I want you to make an assumption.

****

A.  It doesn't make sense.  It's counterfactual to information I have. So I don't think I can answer you.

Q.  That's fine.  Let's put the facts that you got from Ms. Castanel on the side, just for purposes of this question.

A.  Are we talking about a hypothetical patient, some other patient?

Q.  We're talking about a hypothetical question.

A.  I'm not sure I understand that at this point.

> Q. Let's just go through it. You're an expert, or they're going to attempt to qualify you as an expert. Putting the history given by Ms. Castanel on the side, if Ms. Castanel did not have any increase in her sinus symptoms after Hurricane Katrina or while living in the FEMA unit or after the FEMA unit, would you still opine that Ms. Castanel had an exacerbation of her sinusitis as a result of formaldehyde?
>
> ****
>
> A. I would revisit that conclusion. I'm not sure I can give you that exact answer as we sit here.
>
> Q. So you can't answer that hypothetical?
>
> A. I can't.[20]

The above excerpt from Dr. Miller's deposition testimony, combined with the testimony from two of Castanel's long term treating physicians that she did not experience a change in the severity of her sinus condition after Hurricane Katrina, clearly shows that Dr. Miller did not rely on accurate data in reaching his opinion that Plaintiff suffered an exacerbation of her rhinosinusitis as a result of alleged formaldehyde exposure while residing in her FEMA travel trailer.

Dr. Miller's reliance on questionable data and facts, when accurate, reliable data and facts were available to him, and his failure to determine the harmful level of formaldehyde and whether Castanel had been exposed to the harmful level, is a clear evidence that Dr. Miller's testimony would not meet the Federal Rule of 702 requirement that expert testimony be based on sufficient facts or data and that the testimony be the product of reliable principles and methods. Likewise, Dr. Miller's testimony would certainly not withstand the application of the *Daubert* requirement that the "reasoning or methodology underlying the testimony be scientifically valid."

---

[20]Miller depo. at 102:1-24, 103:1-24, 104:1-24, and 105:1-3, excerpts attached as Ex. B.

### ii. Dr. Miller's Should be Excluded from Testifying Regarding His Opinion that Plaintiff's Fear of Cancer is Rationally Based.

Dr. Miller's second opinion regarding Castanel is as follows:"based on Ms. Castanel's known exposure to formaldehyde, discussed above, and the evidence summarized by Dr. Williams, it is also my opinion, within a reasonable degree of medical probability, that Ms. Castanel's fear of cancer, after her exposure to formaldehyde, are rationally based."[21] It is RBD's position that Dr. Miller is not qualified to render this opinion.

Dr. Miller has American Board Certifications in Internal Medicine, Pulmonary Disease and Clinical Pharmacology.[22] Dr. Miller also has a National Board of Medical Examiners Certification.[23] Further, Dr. Miller also obtained a M.P.H. in Environmental Health. Dr. Miller is not, however, a board certified Oncologist or Psychiatrist, nor is he a psychologist. Dr. Miller is also not an epidemiologist.

Despite the fact that Dr. Miller does not have the requisite qualifications to be certified as an expert in the areas of cancer diagnosis and treatment and mental health, Dr. Miller opined that Castanel's fear of cancer is rationally based. RBD maintains that Dr. Miller does not posses the knowledge, skill, experience, training, or education, to testify in the form of an opinion or otherwise, that Castanel's fear of cancer is rationally based. Dr. Miller's testimony regarding Castanel's fear of cancer is not based on scientific knowledge and would therefore, be of no assistance to the trier of fact in this matter. For these reasons, Dr. Miller's testimony regarding Castanel's fear of cancer

---

[21] Miller Affidavit, dated January 28, 2010, attached as Ex. A.

[22] See Dr. Miller's Curriculum Vitae, attached as Ex. E.

[23] *Id.*

11

is not reliable because there is no indication of Dr. Miller's knowledge and experience relative to the area of cancer diagnosis and treatment and mental health.

### III. CONCLUSION

*Daubert* requires that "when expert testimony is offered, the trial judge must perform a screening function to insure that expert's opinion is reliable and relevant to the facts at issue in the case.[24] When an expert's "testimony's factual basis, data, principles, methods, or their application are called sufficiently into question...the trial judge must determine whether the testimony has a reliable basis and the knowledge and experience of the relevant discipline."[25]

Further, an opinion of an expert should not be blindly accepted as scientific findings of proof. It is precisely this view of blind acceptance...that needs to be addressed by the judge as "gatekeeper."[26] RBD submits that it is entitled to a "*Daubert*" hearing at which time this Court will decide whether the anticipated opinions of Dr. Lawrence Miller specific causation opinions are reliable and relevant. At this hearing, Plaintiff should be required to prove that the proposed opinions of Dr. Miller are based upon specialized knowledge and experience and that his opinions were reached using sound facts and data, as required by law. Moreover, Plaintiff must prove that Dr. Miller's opinions will somehow assist the jury in deciding the pertinent factual and legal issues in this case.

---

[24] *Watkins v. Telsmith, Inc.,* 121 F.3d 984, 988-89 (5th Cir. 1997).

[25] *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S. Ct. 1167, 1175, 143 L. Ed. 2d 238 (1999), *citing Daubert,* 509 U.S. at 592, 113 S. Ct. 2786.

[26] *Miramon v. Bradley,* 701 So.2d 475, 479 (La. App. 1st Cir. 1997).

Respectfully submitted,

*/s/ Lyon H. Garrison*
LYON H. GARRISON, Bar No. 19591
SCOTT P. YOUNT, Bar No. 22679
RANDALL C. MULCAHY, Bar No. 26436
DARRIN L. FORTE, Bar No. 26885
KELLY M. MORTON, Bar No. 30645
GARRISON, YOUNT, FORTE
& MULCAHY, LLC
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 527-0680
Facsimile: (504) 527-0686
Attorneys for defendant,
Recreation By Design, LLC
Email: lgarrison@garrisonyount.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of this electronic filing to all known counsel of record.

*/s/ Lyon H. Garrison*
LYON H. GARRISON, Bar No. 19591