## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 18731 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Castanel, et. al. v Recreation by Design, LLC, et. al* | * | |
| Docket No. 09-3251 | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S RESPONSE TO RECREATION BY DESIGN, LLC'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF DR. LAWRENCE MILLER**

Plaintiff Earline Castanel responds to Recreation By Design, LLC's (hereinafter "Defendant" or "RBD") Motion *in limine t*o exclude the expert testimony of Dr. Lawrence Miller; and, in support would show:

## I.
## EVIDENCE

Exhibit A     Excerpts from the deposition of Earline Castanel

Exhibit B     Excerpts from the deposition of Dr. Joseph Gautreaux

Exhibit C     Affidavit of Dr. Lawrence Miller, M.D.

Exhibit D     Excerpts from the deposition of Edwin Ganier

Exhibit E     Curriculum Vitae of Lawrence G. Miller

Exhibit F     Excerpts from the deposition of Dr. Lawrence Miller

Exhibit G     Excerpts from the Affidavit of Dr. Patricia Williams

## II.
## FACTUAL BACKGROUND

Plaintiff Earline Castanel has asserted claims against Recreation By Design, LLC, under the Louisiana Products Liability Act ("LPLA"). *See* Plaintiff's Complaint for Damages, R. Doc. 1, Docket No. 09-3251, P. 25. Specifically, Ms. Castanel claims that the Recreation By Design trailer she occupied from February, 2006, until March, 2007, due to its construction, composition, design, and lack of warnings, exposed her to dangerous levels of formaldehyde. *See* Plaintiff's First Supplemental and Amended Complaint, R. Doc. 9401, pp. 2-3.

Although Ms. Castanel suffered from sinus difficulties prior to living in her RBD trailer, her condition worsened during her residence in the trailer. See Exhibit A, p. 89. After moving out of the trailer, her sinus condition continued to degenerate, until Dr. Joseph Gautreaux, her treating physician, performed sinus surgery on March 31, 2010. *See* Exhibit A, pp. 122-23, 162-63; Exhibit B, p. 63; Exhibit D, pp. 43-44.

Dr. Lawrence Miller, Plaintiff's specific causation witness, interviewed and examined Ms. Castanel on January 13, 2010. *See* Exhibit C, p. CAST002313. From her exam, a review of her medical records, and a review of the scientific literature relating to formaldehyde, Dr. Miller concluded that Ms. Castanel had suffered an exacerbation of her rhinosinusitis due to the formaldehyde in her RBD trailer. *See* Exhibit C, p. 6.

Defendant now seeks to strike Dr. Miller's testimony on the basis of lack of qualifications and lack of relevance. Neither argument contains an ounce of merit.

**III.**
**ARGUMENT AND AUTHORITIES**

A. Defendant's motion should be denied because Dr. Miller is qualified to render opinions in this case under Federal Rule of Evidence 702.

Defendant seeks to strike Dr. Miller's testimony by speciously attacking Dr. Miller's qualifications. Rule 702 of the Federal Rules of Evidence provides that a witness qualifies as an expert based on his "knowledge, skill, experience, training, or education. . ." Fed.R.Evid. 702; U.S. v. Hicks, 389 F.3d 514, 524 (5th cir. 2004). Dr. Miller qualifies as an expert pursuant to every source listed in Rule 702. *See* Id. Defendant's motion to exclude Dr. Miller, therefore, should be denied. *See* Id.

1. *Dr. Miller's knowledge, skill, experience, training, and education qualify him as an expert witness.*

Dr. Lawrence Miller received his M.D. Degree from Harvard Medical School. *See* Exhibit E, p. 1. He trained as both an intern and a resident in internal medicine. *See* Exhibit F, pp. 32, 50. He received a Masters Degree in environmental health from the School of Public Health of Boston University. *See* Exhibit E, p. 2. Dr. Miller's training and education in medicine and public health alone qualifies him as an expert physician. *See* Id.

Dr. Miller, however, demonstrates further qualifications as an expert witness. He possesses specialized knowledge sufficient to teach medical students, and is currently serving as an instructor in medicine at Harvard Medical School, and an associate professor in the department of pharmacology and experimental therapeutics at Tufts University School of Medicine. *See* Exhibit E., p. 2. His knowledge, skill, and experience have qualified him for board certifications in internal medicine, pulmonary disease, and clinical pharmacology; and are additionally exhibited in the Manual of Clinical Pulmonary Medicine, which he co-authored. *See*

3

Exhibit E, pp. 4, 11.  Dr. Miller is thus qualified as an expert witness pursuant to all five of the criteria enumerated by Rule 702. *See* Hicks, 389 F.3d at 524.

2. *The fact that Dr. Miller is not currently treating patients does not disqualify him as an expert witness.*

Defendant erroneously argues that Dr. Miller is not qualified as an expert because he no longer treats patients.  It should be noted that Rule 702 does not require an expert to hold the highest or most perfectly-suited credentials, as long as he otherwise qualifies under the Rules of Evidence. Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3rd Cir. 2008).  Differences in expertise go to the weight of the testimony, not its admissibility. Huss v. Gayden, 571 F.3d 442, 452 (5th Cir. 2009).  Dr. Miller's qualifications

As demonstrated above, Dr. Miller posses the specialized knowledge necessary to assist the trier of fact.  The inactivity of his medical practice in no way diminishes the knowledge, skill, experience, training, and education that qualify him as an expert witness.  Since his expertise is sufficient to instruct medical students, it should certainly suffice to assist the trier of fact.  The training and knowledge he acquired through his masters program in environmental health, and his research in pharmacology and toxicology, further enhance his suitability to testify in this environmental exposure case. *See* Exhibit E, pp. 5-15.  Dr. Miller, therefore, is qualified to render expert opinions in this case, despite the fact that he no longer treats patients.  Defendant's motion to exclude Dr. Miller's testimony should therefore be denied. *See* Id.

3. *Dr. Miller is qualified to testify as to specific causation in Ms. Castanel's case.*

Dr. Miller is especially well-qualified to testify as to specific causation in Ms. Castanel's case.  As a physician specializing in internal medicine, he is experienced in treating and diagnosing patients with the same types of illnesses as those suffered by Ms. Castanel.  His

environmental health and toxicology background render him exceptionally skilled in evaluating the scientific literature related to Ms. Castanel's formaldehyde exposure.   The fact that his medical practice has been inactive for a few years in no way negates his knowledge, skill, experience, training, or education.   Because Dr. Miller is so uniquely qualified to render an opinion in Ms. Castanel's case, Defendant's motion to strike his testimony should be denied. *See* Huss, 571 F.3d at 452.

     B.   <u>Defendant's motion to strike should be denied because Dr. Miller's testimony is relevant.</u>

Defendant erroneously claims that Dr. Miller's specific causation testimony is irrelevant because it does not coordinate with Dr. William's general causation testimony - that "rhinosinusitis" is not encompassed by the "term upper reparatory tract damage."   Only an absurdly restrictive interpretation of Dr. Williams' opinion could lead to such a meritless argument.

Dr. Williams' general causation testimony concludes that "[a] cause-effect relationship exists between formaldehyde and upper respiratory tract damage. . ." *See* Exhibit G, p. 70.   She defines "rhinosinusitis" as "an inflammatory disorder affecting the nose and paranasal sinuses." *See* Exhibit G, p. 32.   According to Dr. Williams, not to mention common knowledge, the respiratory tract includes the nose. *See* Exhibit G, p. 40.   Dr. Williams' general causation conclusion regarding upper respiratory tract damage thus necessarily includes damage to the nose. *See* Exhibit G, pp. 32, 40.

Dr. Miller's affidavit also supports the inclusion of rhinosinusitis as upper respiratory tract damage.   He discusses rhinosinusitis in the context of formaldehyde's effect on the upper respiratory tract. *See* Exhibit C, p. 5.   He explains that formaldehyde causes rhinosinusitis by producing "cytotoxic effects on the nasal and respiratory epithelium." *See* Exhibit C, p. 5.   Since

the nose is part of the respiratory tract, the cytotoxic effects described by Dr. Miller qualify as damaging effects to the respiratory tract as defined by Dr. Williams. *See* Exhibit C, p. 5; Exhibit G, p. 40.

Since damage to the nose is damage to the respiratory tract, Dr. Miller's specific causation opinion on rhinosinusitis is encompassed by Dr. Williams' general causation opinion concerning upper respiratory tract damage. Because his specific causation opinion coincides perfectly with Dr. Williams' general causation opinion, Dr. Miller's testimony is relevant. *See* U.S. v. Hall,  653 F.2d 1002, 1005 (5th Cir. 1981) (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.")  Defendant's motion to strike the testimony of Dr. Miller should therefore be denied. *See* Mathiesen v. Panama Canal Co., 551 F.2d 954, 957 (5th Cir. 1977) ("All relevant testimony is admissible unless some specific rule of evidence excludes it.")

C.    Defendant's motion to strike the testimony of Dr. Miller should be denied because he established a rational basis for his opinions.

Defendant erroneously claims that Dr. Miller's specific causation opinion did not identify the level at which formaldehyde exposure is harmful, or the formaldehyde levels to which Ms. Castanel was exposed.  Defendant's argument fails, however, because Dr. Miller, in fact, addressed both.

1.  *Dr. Miller identified the standards he relied on for determination of the harmful levels of formaldehyde exposure.*

For determining the harmful level of formaldehyde exposure, Dr. Miller relied on standards set by the Agency for Toxicology and Disease Registry ("ATSDR"). *See* Exhibit C, p.

6

5.  He used the Minimal Risk Levels ("MRL's") specific to formaldehyde. *See* Exhibit C, p. 5 Defendant does not contest the applicability of the ATSDR standards to this case, but argues only that Dr. Miller did not explain the standards to its liking.  Dr. Miller thus articulated the standards on which he reasonably based his determination of the level of formaldehyde exposure he considered harmful.

   2.  *Dr. Miller provided an estimate of Ms. Castanel's formaldehyde exposure level.*

   Dr. Miller provided a reasonable estimate of the formaldehyde concentration to which Ms. Castanel was exposed.  The standard for proving causation in toxic tort cases is "relatively lenient." *See* Slaughter v. Southern Talc Co.*,* 949 F.2d 167, 173 (5th Cir.1991).   Although specific causation in a toxic tort case requires evidence of the levels to which the plaintiff was exposed, precise concentration measurements of the chemical are not required. *See* Curtis; 174 F.3d 670-71.  "Circumstantial evidence can be used to establish injurious exposure." O'Neill v. Seariver Maritime, Inc**.,** 246 Fed.Appx. 278, 280 (5th Cir. 2007).

   In determining Ms. Castanel's exposure level, Dr. Miller relied on the data obtained by the Center for Disease Control ("CDC"). *See* Exhibit B, p. 4.   In July of 2008, the CDC conducted a random sampling of formaldehyde levels in 519 FEMA trailers. *See* Exhibit B, p. 4. Using its direct measurements, the CDC reported a geometric mean of 77 ppb formaldehyde, with variations up to 590 ppb. *See* Exhibit B, p. 4.  Dr. Miller noted that some trailers from every manufacturer measured levels greater than 100 ppb. Exhibit B, p. 4.  Recognizing that the CDC itself considers its data to underestimate the formaldehyde levels of the trailers when in use, Dr. Miller rationally concluded that Ms. Castanel's formaldehyde exposure exceeded the MRL's for both intermediate (30 ppb) and chronic (8 ppb) exposure duration. Exhibit B, p. 4.

*3. Dr. Miller's exposure standards and concentration levels provide a rational basis for his specific causation opinion.*

Dr. Miller identified the ATSDR's MRL's for formaldehyde as the reasonable standard for determining the concentration above which formaldehyde exposure is harmful. He looked to the CDC's formaldehyde measurements from a multitude of FEMA trailers to estimate Ms. Castanel's exposure level. Dr. Miller's testimony thus establishes both concentration levels that Defendant asserted were lacking. Defendant's motion to strike Dr. Miller's testimony due to lack of harmful and exposure levels should therefore be denied.

D.  Defendant's motion to strike Dr. Miller's testimony should be denied as to fear of cancer because Dr. Miller possesses specialized knowledge that will assist the trier of fact.

Defendant erroneously claims that Dr. Miller failed to causally relate Ms. Castanel's fear of cancer to RBD. Defendant's own citations, however, belie its argument. Dr. Miller testified that during his interview with her, Ms. Castanel related her fear of cancer "to her time in the FEMA trailer." *See* Defendant's motion, p. 12. Since Ms. Castanel's trailer was manufactured by RBD, Dr. Miller's testimony establishes the causal link between Ms. Castanel's fear of cancer and RBD. Defendant's argument thus fails, and its motion to strike Dr. Miller's testimony should, therefore be denied.

Defendant further criticizes Dr. Miller's fear of cancer opinion because he is neither a psychologist nor a psychiatrist. Dr. Miller testified, however, that as part of his internal medicine training, he received training in psychology. *See* Exhibit F, p. 51. He has furthered his understanding of psychological issues via CME courses. *See* Exhibit F, pp. 52-53. He explained that internists routinely treat their patients' minds as well as their bodies. *See* Exhibit F, p. 49. In fact, dealing with psychological illness was a significant part of his internal medicine practice.

8

*See* Exhibit F, p. 50.  Dr. Miller's thus possesses specialized knowledge of psychological issues that will assist the trier of fact.

Dr. Miller's testimony offers further assistance to the trier of fact by evaluating the scientific reasonableness of Ms. Castanel's fear of cancer.  Although a fear of cancer claim requires only a showing that there is "any possibility of acquiring (the) disease, no matter how remote," a scientific basis for the fear must be proven. *See* Raney v. Walter O. Moss Reg'l Hosp., 629 So.2d 485, 491 (La.App. 3d Cir.1993).   Dr. Miller offers testimony on the scientific literature supporting the relation between formaldehyde and an increase risk of developing cancer. *See* Exhibit F, p. 6.

Dr. Miller possesses specialized knowledge that will assist the trier of fact in evaluating Ms. Castanel's fear of cancer.  He has causally related her fear to RBD, and has reviewed the scientific literature to determine if her fear is reasonable.  Defendant's motion to strike Dr. Miller's opinions concerning Ms. Castanel's fear of cancer should therefore be denied.

E.  Dr. Miller should be allowed to testify regarding Ms. Castanel's nasal surgery.

Other than rehashing its previous arguments as to Dr. Miller's testimony, Defendant has failed to articulate any reason for excluding Dr. Miller's testimony on Ms. Castanel's sinus surgery.  As more fully detailed in Plaintiff's response to Defendant's motion *in limine* regarding surgery-related claims, Plaintiff need not prove that Ms. Castanel's surgery was related to her formaldehyde exposure. *See* Fontenot v. Duplechine, 891 So.2d 41, 47 (La.App. 3rd Cir. 2004). All that is necessary is proof that the surgery was more probably than not necessitated by the initial formaldehyde-related injury, the exacerbation of her rhinosinusitis. *See* Id. Unquestionably, Dr. Miller possesses the qualifications to testify as to Ms. Castanel's medical

condition and the necessity of her surgery. *See supra.* Defendant's motion to strike the testimony of Dr. Miller should therefore be denied.

## IV.
## <u>CONCLUSION</u>

Dr. Miller's qualifications are exceptionally well-suited for testifying on the specific cause of Ms. Castanel's injury and the medical necessity of her surgery. As a physician specializing in internal medicine, he has years of relevant experience on which to rely. His specific causation opinion, that Ms. Castanel suffered an exacerbation of rhinosinusitis as a result of her formaldehyde exposure, coincides perfectly with Dr. Williams' general causation opinion that formaldehyde causes upper respiratory damage. He rationally based his opinion on ATSDR standards for harmful formaldehyde levels, and the CDC's estimate of the levels to which Ms. Castanel was exposed. He evaluated Ms. Castanel's fear of cancer during his examination of her, and provided a scientific basis for determining her fear was reasonable. No reason exists to exclude his testimony. Defendant's motion to exclude Dr. Miller's testimony should therefore be denied.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
      GERALD E. MEUNIER, #9471
      **PLAINTIFFS' CO-LIAISON COUNSEL**
      Gainsburgh, Benjamin, David, Meunier &
      Warshauer, L.L.C.
      2800 Energy Centre, 1100 Poydras Street
      New Orleans, Louisiana 70163
      Telephone:    504/522-2304
      Facsimile:    504/528-9973
      gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:      504/522-2304
Facsimile:      504/528-9973
jwoods@gainsben.com


**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
ROBERT BECNEL
DENNIS REICH, Texas # 16739600

11

## **CERTIFICATE OF SERVICE**

     I hereby certify that on _____April 23, 2010_____, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                      s/Gerald E. Meunier
                                      GERALD E. MEUNIER, #9471