UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                         MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                SECTION "N-5"

                                            JUDGE ENGELHARDT
                                            MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*Earline Castanel, et al. v. Recreation By*
*Design, LLC, et al.*
*Case No. 09-3251 (E.D. La.)*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE***
**TO EXCLUDE OPINIONS AND TESTIMONY OF ALEXIS MALLET**

NOW INTO COURT, through undersigned counsel, comes Plaintiff Earline Castanel

("Plaintiff" or "Ms. Castanel") who respectfully offers this Opposition to Defendant Recreation

by Design, LLC's ("Defendant" or "RBD") Motion *in Limine* to Exclude Opinions and

Testimony of Alexis Mallet (the "Motion in Limine"). For the reasons and arguments articulated

herein, Plaintiff believes that the Motion in Limine must fail, and that Alexis Mallet, Jr.

("Mallet") should be allowed to testify and offer opinion specific to the issues contained within

his report and addressed by RBD.

Defendant argues in its Motion in Limine that Mallet's testimony and opinions should be

excluded because it: (1) is duplicative; (2) is based upon unreliable methodology; and (3) will

not assist the trier of fact to understand or determine a fact issue. All three of these arguments are inaccurate, untrue and must fail. Mallet has given testimony on very similar if not identical issues of construction and design in the two previous bellwether trials, *Alexander v. Gulf Stream* and *Wright v. Forest River*. Mallet's expertise relating to building and construction issues has twice been accepted by the Court, and Mallet is being offered for the same areas of expertise in the instant litigation.

The Defendant argues that Mallet's testimony is duplicative because it is simply a compilation and recitation of opinions offered by other Plaintiff experts, Ervin Ritter, Paul LaGrange, C. David Moore, William Scott, and Stephen Smulski. Mallet's testimony is not duplicative in the instant matter, as Plaintiff does not anticipate calling most of the above-listed experts. Therefore, any overlap is irrelevant, as Mallet's trial testimony will be the only testimony the trier of fact will hear, with the exception of Dr. Smulski, relating to issues of construction and design central to this litigation.[1] Undersigned counsel has taken to heart the clear preference of this Honorable Court to do away with cumulative or duplicative testimony after the first two bellwether trials. In fact, this Court has cautioned all parties from wasting the time of the Court and the jury through unnecessary or repetitive testimony. Plaintiff argues that her case can be made significantly more streamlined and time efficient by calling Mallet in place of at least Ritter, LaGrange and Moore. Further, Plaintiff would argue that Mallet is, through his vast experience base and his presence and participation at every phase of the inspection process of Ms. Castanel's trailer, qualified to give the overlapping opinion testimony contained within his report.

---

[1] Further, Mallet will defer to Dr. Smulski on issues pertaining to wood and adhesive science particularly as it relates to formaldehyde, as he has done in the past.

Quite a significant portion of RBD's Motion in Limine is duplicative of parallel motions in limine filed contemporaneously herewith.[2]  As such, and out of an abundance of caution, Plaintiff will adopt and incorporate as if stated herein any responses articulated specific to the parallel motions in limine.  This Opposition will focus on the Mallet's qualifications as an expert, and the areas of the Motion in Limine specific to Mallet and not covered in overlapping or duplicative motions in limine.

Finally, the Motion in Limine brought by the Defendant must fail because RBD has failed to show how any of the opinion testimony given by Mallet would be unfairly prejudicial to the defendant, nor have they shown how the opinions given by Mallet are irrelevant.  As such, pursuant to FRE Rules 401, 402 and 403, as well as Rules 702 and 703, Mallet's opinions are proper, relevant, and should not be excluded.  Further, the opinions given by Mallet will assist the trier of fact on issues central to the litigation.  The Defendant has raised fact based arguments that are in dispute between both parties' experts and are appropriate for the trier of fact, but are not appropriate in the Motion in Limine, and the Motion in Limine must fail.

## I.    MALLET IS QUALIFIED TO GIVE EXPERT OPINION TESTIMONY

Plaintiff puts forth Mallet as an expert in building construction and design, and all that this encompasses, based upon his 30+ years of experience in the building and construction field in Louisiana.[3]  Plaintiff takes offense at the Defense's dismissive statement that Mallet is a "self-styled 'construction specialist'".  Mallet has taken part in hundreds, if not thousands, of costruction and design projects throughout his career, and has a successful contracting company (First General Services of the South) which employs numerous specialists and engineers for its

---

[2] In the *Wright* litigation, this Honorable Court voiced frustration at duplicative pleadings as a waste of the parties' and Courts time and resources, and Plaintiff would represent that is exactly what the duplicative and overlapping filings in the instant matter have done.

[3] See March 18, 2010 morning trial transcript, attached hereto as exhibit "A", p. 909-915 generally.

projects.[4]  Further, Mallet has developed a significant experience base relating to travel trailer, mobile home and manufactured housing repair and construction issues, including litigation relating to nearly identical issues as are present in the instant matter.[5]

It is important to note that Plaintiff experts Moore, Ritter and Lagrange all prepared expert reports based upon their inspections, testing and observations at the direction and request of Mallet.  In fact, the Moore and Lagrange expert reports both state that they are prepared for Mallet and First General Services of the South.[6]  Further, Mallet was present and had input at every stage of the inspection, testing and observations made by the Plaintiff's construction and design experts in Lottie, Louisiana during the January, 2010 inspection and testing, and discussed and consulted with the experts as they prepared their individual reports for First General Services of the South.[7]

In fact, the Defendant's own Motion in Limine filed by the Defendant illustrates exactly this point, at p.9:[8]

Q:      You hired Mr. Ritter to be your HVAC expert, correct?

A:      On the mechanical system.

Q:      On the mechanical system itself and on the operation of the mechanical system, right?

A:      Yes, sir.

Q:      I mean, he is a mechanical engineer, correct?

A:      Mechanical and environmental.

Q:      And you hired Mr. LaGrange to be your testing person as far as duct blaster, blower door and some thermal imaging, correct?...

[4] See Mallet curriculum vitae attached hereto as Exhibit "B".
[5] See Exhibit "A" p. 911.
[6] Cover pages of those expert reports are attached as Exhibit "C".
[7] See Mallet's Expert Report, attached hereto as Exhibit "D", p. 3-5.
[8] The lines of questioning relates to Mallet's deposition, select pages of which are attached hereto as Exhibit "E", see pp. 197-199 and 34-35 respectively.

A: Right, he has those particular toys.

Q: And you hired Mr. Moore to be your civil engineer regarding structural-type issues, correct?...

A: Yes.  And because I am not allowed by licensing laws to perform calculations, engineering-type calculations, so where there is the potential for the need of that, I bring in Mr. Ritter or Mr. Moore or Mr. Hicks or one of my other engineers that I work with on metallurgy or soil areas of that nature.

****

Q: Looking at your billing records, from what you told me a little bit earlier, I take it you have had several conferences and meetings with Mr. Ritter, Mr. LaGrange and Mr. Moore, correct?

A: Yes.  Without looking at the record, I can tell you yes.

Q: Are your findings based upon your conferences with them encompassed within your reports?...

A: Yes, sir.

Mallet's reliance upon these other experts (particularly given that it was at his direction and with his involvement) is perfectly allowable for an expert under Rule 703 of the Federal Rules of Evidence, which governs the bases of opinion testimony by experts.  See: *Lewis v. Rego Co.*, 757 F.2d 66 (3rd Cir. 1985), (Trial court in products liability action should have allowed plaintiffs to inquire on direct examination of expert witness regarding expert's conversation with another expert, where plaintiffs' expert's opinion was based in part on conversation with other expert.); *Ohio Environmental Development Ltd. Partnership v. Envirotest Systems Corp.*, 478 F.Supp.2d 963 (N.D.OH 2007), (An expert's testimony may be formulated by the use of the facts, data and conclusions of other experts.); *Concerned Area Residents for the Environemt v. Southview Farm*, 834 F.Supp. 1422, (W.D.NY 1993), cert denied 115 S.Ct. 1793, (Expert may base opinion on opinion of another expert.).

While Mallet's expert opinions are perfectly acceptable pursuant to FRE Rule 703, Defendant focuses their challenge of Mallet on Rule 702, specifically relating to *Daubert*.   As Defendant articulates, Rule 702 gives a district court considerable discretion to admit or exclude expert testimony, and that Rule 702 provides "that an expert witness 'qualified … by knowledge, skill, experience, training, or education'[9] may testify when scientific, technical, or other specialized knowledge will 'assist the trier of fact to understand the evidence or to determine a fact issue.'"[10]  Further, pursuant to Rule 702, the testimony must: (1) be based on sufficient facts or data; (2) be the product of reliable principles and methods; and (3) apply the principles and methods reliably to the facts of the case.  Plaintiff has done each of these things, and not for the first time.  Mallet has employed the same approach to the instant litigation as he has to each of the past three bellwether trials in the FEMA Formaldehyde Products Liability MDL, and has been accepted by this Court as an expert to testify for the trier of fact in the *Wright* and *Alexander* litigation.[11]  Also, Mallet has faced similar, if not identical, challenges in all prior litigation, and adopts and reasserts all arguments previously given in defense of his qualifications, methodology and opinions.

The opinions rendered by Mallet are based upon days of inspection and testing of the RBD trailer occupied by the Plaintiff, followed by communications with the other experts involved, and additional document review and research on items and issues relevant to the opinions contained within Mallet's expert report.  This litigation is based upon the Louisiana Products Liability Act, and the Plaintiff must show that the RBD unit was unreasonably in design or composition, and/or that RBD failed to adequately warn the Plaintiff of a hazard associated

---

[9] As is shown by Mallet's CV and his prior testimony, he has over 30 years of experience and is well versed in building construction and design issues in Louisiana and the Gulf South, further, he has been involved in dozens, if not hundreds of design and construction related lawsuits as an expert.
[10] See RBD's Motion in Limine, p. 5.
[11] The *Dubuclet v. Fleetwood, et al.* trial settled prior to trial.

with the trailer.  As such, issues of design and construction, and Mallet's opinions thereof, are not only relevant to the litigation, but central to it.  The methodology in Mallet's opinions is based primarily on physical observation and recordation, and is similar if not identical to methodology already accepted by this Court in the prior bellwethers.  The observations and opinions will provide the trier of fact with the support Plaintiff believes is necessary for her to carry her burden at trial as it relates to the design and manufacture of the RBD trailer.

The Defendant also makes an argument to exclude Mallet's opinions and testimony based upon Rule 403, which allows a court to exclude relevant evidence where its probative value is substantially outweighed by the danger of unfair prejudice, confusion on the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  However, the Defendant's ambiguous and vague assertions that Mallet's opinions should be excluded as prejudicial are unfounded and must fail.

Mallet offers a number of opinions which are central to the litigation and which carry significant probative value.  Further, in an effort to streamline the trial and avoid unnecessary overlap and duplication, per Rule 403, Plaintiff will call only Mallet to give testimony on issues relating to Mallet, Ritter, LaGrange and Moore.  This testimony is foundational to the Plaintiff carrying her burden of proof.  The probative value of this testimony is so significant that Defendant's arguments of unfair prejudice must be founded on extreme prejudice.  Plaintiff argues that Defendant has shown no prejudice in its Motion in Limine, because no unfair prejudice exists.  As such, Plaintiff argues that RBD's Motion in Limine must fail.

## II.   MALLET'S COUNTERS TO RBD'S SPECIFIC ARGUMENTS

### A.  Mallet's Testimony is not Duplicative

As has already been discussed, Mallet's testimony is not duplicative of Ritter, LaGrange or Moore, because they will not be called at trial.  As such, Mallet, out of an abundance of caution, incorporates, restates, and reavers any and all arguments and counters made by any bellwether plaintiff in any litigation to this point relating to Mallet, Ritter, LaGrange or Moore as if they were articulated herein.  Further, arguments by RBD that Mallet should be denied the ability to offer opinion on tests conducted by Ritter, LaGrange or Moore that he did not personally witness must fail.  See: *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 113 S.Ct. 2786 (1993), (Unlike an ordinary witness, expert is permitted wide latitude to offer opinions, including those that are not based on first-hand knowledge or observation.); *Kibert v. Peyton*, 383 F.2d 566 (4th Cir. 1967), (An expert witness is permitted to take into account the testimony of others as to what they observed.).  While Mallet personally observed the vast majority of all inspection and testing of the Plaintiff's trailer, it is perfectly acceptable for him to rely upon the observations made by other qualified experts.  As such, all aspects of RBD's argument that Mallet's testimony is duplicative must fail.

### B.  Mallet's Testimony is Reliable and Relevant

The Defendant has argued that Mallet's methodology is also unsound, as Mallet does not offer any opinion which materially relates to the actual levels of formaldehyde that Ms. Castanel was exposed to, and whether that exposure caused her injury.  This argument is misleading. While the issue of formaldehyde exposure and resulting injury is the central theme of this litigation, it is erroneous to assume Mallet offers opinions to the actual levels of formaldehyde encountered by the Plaintiff or makes any comment to the health effects thereof.  This argument is problematic for a number of reasons: (1) Mallet is not a medical expert; (2) no formaldehyde testing was conducted while the Plaintiff resided in the RBD trailer; and (3) the statistical

analysis of what the range of exposure suffered by the Plaintiff is also outside the expertise of Mallet.

However, Mallet is aware of the environmental factors which can contribute to the increased off-gassing of formaldehyde generally.  He is also aware of how design defects can lead to excess, increased or unnecessary exposure to formaldehyde.  Mallet pays considerable attention to these factors throughout his report and offers specific opinions on how defective manufacture and design of the RBD trailer led to increased off-gassing and exposure to formaldehyde by the Plaintiff.[12]  The report addresses how Plaintiff was unnecessarily exposed to elevated levels of formaldehyde because of design and construction defects which rendered the unit unreasonably dangerous.  Defendant is far too specific in its argument that Mallet must show actual levels of exposure suffered by the Plaintiff.  The arguments of RBD, again, are proper to present at trial, but are not sufficient to exclude Mallet's opinions or testimony.  Further, the specific arguments will be addressed as they were raised by RBD in its Motion in Limine.

### C.  Building Codes

The Defendant filed a contemporaneous motion *in limine* on the issue of building codes.  As such, Plaintiff adopts and asserts all arguments raised in the Plaintiff's opposition to that motion *in limine*.

### D.  General Construction Issues

The Defendant makes an argument that Mallet lacks the requisite expertise to opine on HVAC issues and on the design and construction of travel trailers, and that he relies on testing that was done outside his direct observation.  The latter argument is irrelevant, as has already been discussed above.  The argument that Mallet lacks any requisite expertise to discuss HVAC

---

[12] These opinions are offered throughout Mallet's report, Exhibit "D".

systems or workmanship and design of travel trailers is untrue and does not correspond with Mallet's prior testimony, experience base and expert report.   Further, the "problems" of workmanship observed and opined on by Mallet are actual problems, not theoretical or ambiguous or in any other way deserving of the quotations used by RBD.

Mallet has significant and extensive experience relating to HVAC systems.   An examination of his CV shows that he has experience and training on HVAC ducting issues and testing methodologies.[13]   The unsubstantiated assertion that Mallet lacks the ability to discuss or address problems relating to the HVAC system or the ducting must fail.   Mallet's reliance on LaGrange to quantify the testing results does not mean Mallet is unqualified to discuss it.   As has already been clearly stated, Mallet CAN RELY on other experts' findings and opinions.   Further, Mallet's report spends 10 pages analyzing and discussing the various aspects of the HVAC system.[14]   It is also disingenuous to argue that he lacks the expertise to discuss the issue, when the HVAC system and HVAC systems in general are discussed throughout Mallet's deposition and we the subject of some discussion at the *Wright* trial as well.[15]

Defendant also challenges Mallet's ability to opine on the presence of a roof deflection which was observed during the inspection of the RBD unit.   Mallet admitted at deposition that this was an observation rather than an opinion as to what caused the deflection.   Mallet's CV again reveals expertise relating to roof construction and defect issues.[16]   Mallet opines on numerous other design faults, flaws and defects, well within his realm of expertise, his observations, testing and the opinions formulated by the other experts at his direction.   However, Plaintiff will refrain from articulating or arguing on points not directly challenged by RBD, but

---

[13] See p. 2 of Exhibit "B", and the CV generally.
[14] See Exhibit "D", pp. 68-77
[15] See Exhibit "A" p. 952.
[16] See Exhibit "B", p. 1-3 and CV generally.

would refer the Honorable Court to the expert report generally attached hereto as Exhibit "D". Plaintiff would argue that Mallet possesses the requisite expertise, training and experience to discuss, analyze and opine upon general issues of design or construction defects which were present in the RBD trailer, and which are supported by the inspection, observations and testing conducted on same.  As such, RBD's Motion in Limine must fail.

### E.  Formaldehyde Off-Gassing

Defendant challenges Mallet's report in its discussion of how the manufacturing and design defects affect the off-gassing of formaldehyde.  The arguments raised by RBD are that: (1) Mallet deferred to others to conduct measurements of formaldehyde levels; (2) the failure to include the moisture and relative humidity readings taken by data loggers at the time of inspection; and (3) failure to provide factual analysis to support his conclusions that the defects contributed to elevated levels of formaldehyde off-gassing and/or exposure to the Plaintiff. These arguments are not relevant, nor should they be persuasive.  Mallet is not an expert in formaldehyde or formaldehyde testing.  It is natural that he would defer to those who are. Further, the actual results of any testing conducted in January 2010, over four years after manufacture and two and a half years since the Plaintiff resided in the trailer are nearly meaningless in the context of actual levels she was exposed to in the hot Louisiana summer months while she lived in the trailer from March 2006 through July/August 2007.  Further, criticizing Mallet for not relying upon a single set of data logger readings taken during the inspection and testing (none of which were interior wall space or cavity readings), simply doesn't make sense.  A single set of readings of temperature and relative humidity does nothing to show what the levels and readings would have been while Ms. Castanel lived in the RBD unit, particularly during the hot summer months when the unit was new, and what occurred inside the

cavity spaces.  As Defendant cites in their Motion in Limine, the readings were not material to what Mallet's report dealt with.  Finally, challenging Mallet for not giving factual analysis to support his conclusions (whatever factual analysis is), does not accurately frame the opinions that increased relative humidity, moisture and temperature affects the off-gassing of formaldehyde.

The impact of temperature and humidity on formaldehyde off-gassing are a central issue in the report of Stephen Smulski, Ph.D.[17]  In his report, Dr. Smulski states that there are five factors which impact formaldehyde levels: (1) number and age of formaldehyde containing wood products; (2) the volume of space; (3) ventilation; (4) temperature; and (5) relative humidity.  Dr. Smulski is the Plaintiff's wood science expert, and Mallet has deferred to his expertise on urea-formaldehyde resin and formaldehyde off-gassing.  However, Mallet's report is replete with observations of design and construction factors in the RBD trailer that lead to the formaldehyde containing wood products being exposed to increased relative humidity and moisture, and temperature.  These exposures come in the form of duct leaks, penetrations, improperly placed moisture barriers, inadequate insulation, inferior grade of workmanship, etc.  All of these defects affect the quality of the air and which directly impact the wood products in the RBD trailer and the off-gassing of formaldehyde as a result.  There is no need to give precise quantification of off-gassing level increase by Mallet, his observations clearly illustrate a large number of factors present in the RBD trailer which based upon known science and physics led to an increase in the formaldehyde off-gassing, and therefore exposure suffered by the Plaintiff.  As such, Mallet should be allowed to discuss these issues to assist the trier of fact in understanding this fairly complex group of issues.

---

[17] Dr. Smulski's report is attached hereto as Exhibit "F".

### F.  Vapor Barriers

The argument to strike references to a misplaced vapor barrier made by RBD must fail because (1) it is not adequately raised, and (2) it makes no sense.  Plaintiff experts were not allowed to remove wall paneling to look for moisture damage in the interior wall cavity space. The quotations and arguments raised by RBD do not address the thrust of Mallet's argument relating to the misplaced vapor barrier, and show that RBD fundamentally misunderstands the point of argument as it relates to vapor barriers.  Evidence of water damage on the interior living space of Ms. Castanel's trailer is irrelevant to the problems caused by the vapor barrier only existing on the interior wall of the interior space.  The problem of the misplaced vapor barrier is that without a moisture/vapor barrier on the interior side of the external siding/wall, hot, moist air is pulled into the cavity space where it interacts with the raw, untreated, urea-formaldehyde containing wood paneling and leads to increased formaldehyde off-gassing.  Further, the lack of an appropriately placed vapor barrier is exacerbated by numerous penetrations from the exterior of the wall to the interior space, and which bring in untreated, hot, moist air.[18]  Mallet gives discussion founded on scientific principles and observations, to which RBD raises their misguided and inaccurate attack on the vapor barrier.  As such the Motion in Limine must, again, fail.

### G.  Alternative Building Materials

The Defendant filed a contemporaneous motion *in limine* on the issue of alternative building materials.  As such, Plaintiff adopts and asserts all arguments raised in the Plaintiff's opposition to that motion *in limine*.

---

[18] Mallet discusses the interior vinyl covering and the problems which arise in his report generally, and on pp. 56-60, and on p. 106-107.  See Exhibit "D".

### III.    CONCLUSION

Plaintiff expert Al Mallet has over 30 years of experience in construction and design issues in the Gulf South.  He has been offered and accepted as an expert on identical issues in earlier bellwether trials, and Defendant has failed to show how the opinions offered in the instant matter should be excluded.  Further, in an effort to streamline the trial and litigation, and in accordance with this Honorable Court's cautionary instruction to avoid duplicative or cumulative testimony, or to abuse the time of the jury, Plaintiff offers Mallet to give testimony, for which he is eminently qualified, and which encompasses the observations and expertise of Plaintiff experts Moore, Ritter and LaGrange.  Mallet is certainly allowed, under FRE Rule 703 to rely upon the testing, observations and opinion of these other experts, in addition to his own.  Arguments to the contrary are not supported in law and must fail.  Further, the Defendant's arguments are misguided and inaccurate, and RBD has failed to show how any opinions offered by Mallet are either unfairly prejudicial to the extent they outweigh any probative value or that they are not grounded in proper methodology.  For these, and all the reasons articulated herein, Plaintiff humbly requests that this Honorable Court deny the Motion in Limine filed by RBD to exclude the opinions and testimony of Alexis Mallet, Jr.

Respectfully submitted,

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

s/ Gerald E. Meunier
GERALD E. MEUNIER, # 9471
**PLAINTIFF'S' CO-LIAISON COUNSEL**
Gainsburg, Benjamin, David, Meunier &
Warshauer, L.L.C
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
T: 504/522-2304
F. 504/528-9973
gmeunier@gainsben.com

s/ Justin I. Woods
JUSTIN I WOODS, #24713
**PLAINTIFF'S' CO-LIAISON COUNSEL**
Gainsburg, Benjamin, David, Meunier &
Warshauer, L.L.C
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
T: 504/522-2304
F. 504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON. #9938
MIKAL WATTS, Texas #20981820
DENNIS REICH, Texas #16739600

**Attorneys for Plaintiff**

**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing on April 23, 2010.

                      s/ Gerald E. Meunier

                      GERALD E. MEUNIER, # 9471