**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
|          FORMALDEHYDE PRODUCTS | * | |
|          LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Castanel, et. al. v Recreation by Design, LLC, et. al* | * | |
| Docket No. 09-3251 | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S RESPONSE TO RECREATION BY DESIGN, LLC.'S**
**MOTION *IN LIMINE* TO EXCLUDE OPINIONS AND TESTIMONY OF**
<u>**STEPHEN SMULSKI, PH.D.**</u>

**MAY IT PLEASE THE COURT:**

Plaintiff, Earline Castanel, ("Plaintiff") respectfully offers this Response to Defendant Recreation By Design, LLC.'s ("Defendant") Motion *in Limine* to exclude opinions and testimony of Dr. Stephen Smulski, ("Smulski").  Plaintiff objects to Defendant's broad mischaracterization of Smulski's factual and historical testimony as vague and unsupported opinion. As evidenced by Smulski's curriculum vitae, he is well-qualified to offer background facts and history on a number of issues related to wood science and travel trailers. It would be improper to limit the testimony of Dr. Smulski.

1

## I.      STANDARD OF ADMISSIBILITY FOR EXPERT TESTIMONY

Defendant's Motion to Exclude is one to exclude evidence, specifically expert testimony.

Therefore, the Federal Rules of Evidence should govern the Court's analysis of the motion.

FED. R. EVID. 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

FED. R. EVID. 402 provides:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

FED. R. EVID. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Expert testimony need only be based on a reliable and scientifically valid methodology

that fits the facts of a case. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579,

592-93 (1993).  The inquiry into the expert's testimony is "a flexible one" where the individual

factors are neither exclusive nor dispositive. *See Id.* at 594-95. As such, the Court essentially considers whether the expert retains a broad range of knowledge, skills and training. *Id.*

In analyzing the reliability of proposed expert testimony, the role of the Court is to determine whether the expert is qualified in the relevant field, and to examine the methodology used by the expert in reaching his conclusions. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 153 (1999). While extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony of an expert whose knowledge is based on experience. *See Smith v. Ford Motor Co.,* 215 F.3d 713 (7th Cir. 2000)(citing *Bryant v. City of Chicago,* 200 F.3d 1092, 1098 (7th Cir.2000), *Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 590 (7th Cir. 2000); *Kumho,* 526 U.S. at 156 ("No one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")

Though the role of the court may be to serve as a gatekeeper of admissible evidence, it is not intended to replace the adversary system. *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 595. It is certainly not the trial Court's role to determine whether the expert's conclusions are actually correct. *Id.* at 595. So long as the testimony rests upon "good grounds" it should be tested by the adversary process -- competing expert testimony and active cross-examination — rather than excluded from juror's scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. *See Ruiz-Trioche v. Pepsi Cola of Puerto Rico Bottling Co.,* 161 F.3d 77, 85 (1st Cir. 1998) (citing *Daubert,* at 596).

**II.    SMULSKI'S TESTIMONY IS ADMISSIBLE UNDER FRE 702 AND SHOULD NOT BE EXCLUDED PER THIS COURT'S PRIOR ORDERS**

Defendant's motion is based on the premise that Smulski's opinions should be stricken for all reasons previously examined by the Court in the Gulf Stream, Fleetwood and Forest River bellwether cases. (Rec. Doc. 13310-1, ¶ 2.). Further, the Court ruled in a previous order that recitations of the factual predicates on which he forms his opinions are not "opinions," and should not be construed as such. (Rec. Doc. 2800, p. 1). The Court stated that "Of course, Dr. Smulski can and will be expected to recite the factual and/or theoretical bases for his opinions." (Rec. Doc. 2800, p. 2).

In an effort to underscore their argument that Smulski's testimony should be limited, the Defendant also claims that Smulski is a "self-styled expert" in wood science technology. The Plaintiff strenuously objects to this dismissive and unfounded mischaracterization, and refers to Smulski's curriculum vitae which clearly demonstrates that he is a recognized expert in the field of Wood Science and Technology. Dr. Smulski and has a Bachelor's of Science, a Master's of Science and a Ph.D. in wood science technology from university programs accredited by the Society of Wood Science and Technology. Smulski has been a full-time practicing professional in Wood Science and Technology since 1985, and has taught programs in wood science and technology at the University of Massachusetts at Amherst for seventeen years. In addition to publishing over 45 articles on wood and the in-service performance of wood products, Smulski has given over 100 invited presentations on wood and wood products. Smulski is qualified as an expert in Wood and Science Technology, and has testified in Massachusetts, Maryland, Ohio, Connecticut, Minnesota, New Jersey, New York, Kentucky, North Carolina and Louisiana. To claim that he is a "self-styled" expert is not only inaccurate, but misleading.

### A.  Paragraphs 17 & 35

Defendant seeks to limit the testimony of Dr. Smulski relating to the conversion of the trailer from a Recreational Vehicle to Residential Housing. Rec. Doc. 13310-1, p. 5. Defendant also seeks to limit the testimony of Dr. Smulski stating that the use of the trailer by Castanel as temporary housing for months or years was a "reasonably anticipated use given that this trailer was sold to FEMA for the purpose of temporarily housing persons displaced by natural disasters like Hurricane Katrina." (Rec. Doc. 113310-1, p. 5-6.) Defendant seeks this limitation by relying on a prior Order (Rec. Doc. 2008, p. 3) that deemed opinions inappropriate if they contained "[v]ague, potentially pejorative terms."  Plaintiff disputes that Smulski's statements are not an opinion.  One does not need qualification as an expert in order to reasonably conclude that if someone lives in a trailer for months to years the trailer is no longer a "short term and recreational use" but has converted to temporary housing.  When a trailer is used for recreational purposes, it is not put on a foundation, hard-wired and hard-plumbed.  However, the "Temporary Housing Units" provided by FEMA were uniformly installed in such a manner.  Accordingly, this Court has allowed testimony that is a "factual assumption he makes to support his opinions," (Rec. Doc. 2800, p. 3). Because these are clearly "factual assumptions he makes to support his opinions," the testimony should be permitted.

### B.  Paragraphs 22, 23 & 27

Plaintiff objects to any limitation of Smulski's testimony regarding testing reports concerning the levels of formaldehyde.  This Honorable Court allowed Dr. Smulski to refer to these reports cite to the results of various testing reports on levels of formaldehyde in Rec. Doc. 2800, p. 3, which the Court merely required that it be "clear that this testing was not done by him and is not his opinion, but rather is available information that he considered in forming his ultimate

opinion." *Id.*   Dr. Smulski in no way represents that he personally performed the testing. Notably, it was made clear to the juries in both Gulf Stream and Forest River that the tests were not performed by Dr. Smulski, but rather they are a basis for his ultimate opinions.

RBD further asks the Court to strike Smulski's statement contained in Paragraph 23, wherein he avers that "The CDC did not identify the makers of these travel trailers, referring to them as 'Other.' It is likely that some of the 'Other' travel trailers were manufactured by Recreation By Design." Rec. Doc. 13310-1, P. 6. Defendant contends that this statement is based upon speculation, and should not be permitted without any factual support. *Id* at 6. Recreation By Design's argument is without merit. It is not only possible, but probable that one of the thirty-eight (38) travel trailers tested by the CDC was manufactured by Recreation By Design.

## C.  Paragraphs 33 & 34

Plaintiff strongly objects to the limitation of Smulski's testimony regarding a mechanical ventilation system.  Dr. Smulski has written about the importance of ventilation and the use of mechanical ventilation systems for controlling the relative humidity inside buildings in at least three articles.[1]  In addition, Smulski has given numerous invited presentations about moisture problems in wood framed buildings and avoidance of such problems by use of mechanical ventilation systems.  The principles of ventilation apply to all structures whether it is a single-family house, an office building or a trailer.  While Smulski does not promote himself as an expert in the fields of HVAC or travel trailer design, he is an expert in wood science and as such should be allowed to offer opinions regarding wood structures.  Similarly, As such, this Court has allowed Smulski to opine that the ventilation would affect the level of formaldehyde gas in the trailer. Rec. Doc. 7683. Here, Smulski does not testify regarding "how" the trailer

---

[1] *See* Controlling indoor moisture in energy-efficient houses, Architectural Record, 2000; Durability of energy-efficient wood-frame houses, Forest Products Journal,1999; Controlling indoor moisture in energy-efficient houses, Wood Design Focus, 1997.

could/should have been ventilated, and thus should be again allowed to offer opinions regarding the effect of ventilation on the level of formaldehyde gas in the trailer.

Plaintiff vehemently objects to the exclusion of Dr. Smulski's testimony regarding the ventilation warning in Recreation By Design's own Owner Information document because Dr. Smulski is not an expert in ventilation issues of HVAC. Dr. Smulski is an expert on wood science and technology, and thus can testify to related issues such as the scientific applicability of a ventilation warning as it applies to gases in the air inside the trailer, including formaldehyde gas. Accordingly, the testimony should be permitted.

### D. **Paragraph 28**

Plaintiff objects to any limitation regarding the CARB standard. The trier of fact should be informed as to the current standards in order to properly consider all issues of fact in the case. The current standards should be referenced as an instructional tool to provide the trier of fact with the current acceptable level of formaldehyde.

### E. **Paragraphs 30, 32, & 34**

Plaintiff objects to any limitation on Dr. Smulski's testimony as it relates to alternative design, and refers this Court to Section III, *infra*.

Plaintiff strongly objects to the limitation of Smulski's testimony regarding a mechanical ventilation system, including the Northern Breeze. Dr. Smulski has written about the importance of ventilation and the use of mechanical ventilation systems for controlling the relative humidity inside buildings in at least three articles.[2] In addition, Smulski has given numerous invited presentations about moisture problems in wood framed buildings and avoidance of such problems by use of mechanical ventilation systems. The principles of ventilation apply to all

---

[2] *See* Controlling indoor moisture in energy-efficient houses, Architectural Record, 2000; Durability of energy-efficient wood-frame houses, Forest Products Journal,1999; Controlling indoor moisture in energy-efficient houses, Wood Design Focus, 1997.

structures whether it is a single-family house, an office building or a trailer. While Smulski does not promote himself as an expert in the fields of HVAC or travel trailer design, he is an expert in wood science and as such should be allowed to offer opinions regarding wood structures. Similarly, As such, this Court has allowed Smulski to opine that the ventilation would affect the level of formaldehyde gas in the trailer. Rec. Doc. 7683.

III.     SMULSKI'S ALTERNATIVE DESIGNS SATISFY LPLA REQUIREMENTS

In a last-ditch effort to exclude Dr. Smulski's testimony, defendant asks that the Court exclude Dr. Smulski's alternative design opinions "because Smulski has not performed the requisite analysis, research, or testing to offer these opinions at trial." Rec. Doc. 13310-1 p. 9. Defendant goes on to state that "the Louisiana Products Liability Act requires more than just speculation about possible alternative designs," mischaracterizing Dr. Smulski's testimony regarding alternative design as "just speculation." Defendant bolsters this mischaracterization by quoting *Seither v. Winnebago Industries, Inc*. 853 So.2d 37 out of context. Defendant suggests that the *Seither* court found that no alternative design was presented because the proposed alternative design contained "no examination of material prices or consideration of manufacturing labor expenses." Rec. Dec. 13310-1 p. 10. In *Seither*, not only were material price considerations omitted, but the court found that no alternative design was presented because an expert presented "merely a concept that was untested, unengineered, and not presented to the jury in any fashion more than mere speculation." *Id.* at 6. The alternative design "theory or concept" presented by the expert in that case was shown to be "invalid and incapable of passing required federal tests," and "[t]he record [was] devoid of any technical drawings, calculations, scientific study, photographs, or the publication of any engineering principles as to this proposed alternative design." *Id*. Smulski's opinions regarding alternative design are grounded in science.

8

All of Dr. Smulski's proposed alterative designs are tested and analyzed. All of Dr. Smulski's alternative designs are valid and capable of passing federal tests, and the record is arguably overflowing with Dr. Smulski's technical drawings, calculations, scientific study, photographs and publications of appropriate scientific principles as to his proposed alternative designs.

## IV.   SMULSKI'S ADDITIONAL FINDINGS UNIQUE TO THE CASTANEL UNIT SHOULD NOT BE EXCLUDED

### F.  Paragraph 15

Recreation By Design seeks to exclude Dr. Smulski's statement that he "found no stickers inside the trailer informing the user(s) that the trailer was constructed using the wood composite products particleboard, medium density fiberboard, and hardwood plywood; that these wood composite products are made with urea-formaldehyde adhesive; that these wood composite products are known to release formaldehyde gas after being placed in service; and that formaldehyde gas can cause adverse health effects." Ex. B at p. 4. Defendant attempts to exclude this statement on the grounds that it is irrelevant. Clearly, a statement of fact made by an expert witness who performed a visual inspection of the trailer, indicating that he saw no stickers or warning in the trailer is irrelevant. Not only is any competent individual capable of testifying as to whether he observed. Dr. Smulski, through his expertise in wood science and technology, is intimately familiar with stickers and the like placed on such products, and the absence of these stickers goes to the heart of a key issue in this case: whether Recreation By Design adequately warned Ms. Castanel about the adverse health risks associated with long-term formaldehyde exposure. Dr. Smulski is not opining that any particular warning was inadequate, as there was no warning whatsoever. Defendant suggests the Court's rational behind its ruling Smulski's testimony regarding the warning contained in the owner's manual of the Forest River EHU should be applied in the instant case is misguided. As this Court will recall, the Owner's Manual

accompanying the Forest River EHU did contain a "warning" as to the affects of formaldehyde off-gassing in the trailer. Recreation By Design's unit, on the other hand, had <u>no</u> warning at all. Accordingly, the Court should allow Dr. Smulski to testify regarding the omission of stickers on composite wood products in the trailer.

### G. <u>Paragraph 19</u>

Plaintiff objects to any limitation of Smulski's testimony including air exchange rates obtained from Plaintiff's expert Paul LaGrange on the basis that Dr. Smulski did not perform the testing himself.  This Honorable Court allowed Dr. Smulski to refer to such reports in Rec. Doc. 2800, p. 3, which the Court merely required that it be "clear that this testing was not done by him and is not his opinion, but rather is available information that he considered in forming his ultimate opinion." *Id.*   Dr. Smulski in no way represents that he personally performed air exchange testing.  Dr. Smulski's reliance upon LaGrange's testimony is perfectly allowable for an expert under Rule 703 of the Federal Rules of Evidence., which governs the bases of opinion testimony by experts. See: *Lewis v. Rego Co.,* 757 F.2d 66 (3rd Cir. 1985), (trial court in products liability action should have allowed plaintiffs to inquire on direct examination of expert witnesses regarding expert's conversation with other expert.); *Ohio Environmental Development Ltd. Partnership v. Envirotest Systems Corp.,* 478 F. Supp.2d 963 (N.D.OH 2007), (An expert's testimony may be formulated by the use of the facts, data and conclusions of other experts.); *Concerned Area Residents for the Environment v. Southview Farm*, 834 F.Supp. 1422, (W.D.NY 1993), cert denied 115 S.Ct. 1793, (Expert may base opinion on opinion of another expert.).

### H. <u>Paragraph 24</u>

Plaintiff objects to any limitation of Smulski's testimony including the results of air sampling conducted by the W.D. Scott Group, Inc. on the basis that Dr. Smulski did not perform the

testing himself.  This Honorable Court allowed Dr. Smulski to refer to such results in Rec. Doc. 2800, p. 3, which the Court merely required that it be "clear that this testing was not done by him and is not his opinion, but rather is available information that he considered in forming his ultimate opinion." *Id.*   Dr. Smulski in no way represents that he personally performed air sampling.  Further, Dr. Smulski's reliance upon W.D. Scott Group, Inc.'s sampling is perfectly allowable for an expert under Rule 703 of the Federal Rules of Evidence., which governs the bases of opinion testimony by experts. See: *Lewis v. Rego Co.,* 757 F.2d 66 (3rd Cir. 1985), (trial court in products liability action should have allowed plaintiffs to inquire on direct examination of expert witnesses regarding expert's conversation with other expert.); *Ohio Environmental Development Ltd. Partnership v. Envirotest Systems Corp.*, 478 F. Supp.2d 963 (N.D.OH 2007), (An expert's testimony may be formulated by the use of the facts, data and conclusions of other experts.); *Concerned Area Residents for the Environment v. Southview Farm*, 834 F.Supp. 1422, (W.D.NY 1993), cert denied 115 S.Ct. 1793, (Expert may base opinion on opinion of another expert.).

A significant portion of Recreation By Design's Motion *in Limine* is duplicative of parallel motions *in limine* filed contemporaneously herewith. As such, and out of an abundance of caution, Plaintiff will adopt and incorporate as if stated herein any responses articulated specific to the parallel motion *in limine*.

## CONCLUSION

WHEREFORE, the Plaintiff Earline Castanel respectfully requests that this Honorable Court dismiss the Defendant's Motion *in Limine* to Exclude Opinions and Testimony of Stephen Smulski, Ph.D. as an expert witness for the reasons set forth in this Memorandum and the prior rulings of the Court.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE**
**PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        jwoods@gainsben.com

        **COURT-APPOINTED PLAINTIFFS'**
        **STEERING COMMITTEE**
        ANTHONY BUZBEE, Texas # 24001820
        ROBERT BECNEL, #14072
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON, #9938
        DENNIS REICH, Texas #16739600
        MIKAL WATTS, Texas # 20981820

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record as indicated below in accordance with the Federal Rules of Civil Procedure on April 22, 2010.


/s/Justin I. Woods
JUSTIN I. WOODS