UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL NO. 1873 |
| | | SECTION: N-5 |
| | | JUDGE ENGELHARDT |
| This Document Relates to: | | MAG. CHASEZ |
| ALL CASES | | |

**************************************************************************

<u>**OPPOSITION TO JOINT MOTION OF THE GOVERNMENT'S CONTRACTORS TO DISMISS PLAINTIFFS' THIRD AND FOURTH AMENDED MASTER COMPLAINT**</u>

**NOW INTO COURT**, through undersigned counsel, comes the Plaintiffs' Steering Committee, which in opposition to the government's contractors' Joint Motion to Dismiss Plaintiffs' Third and Fourth Amended Master Complaints (Rec. Doc. 13421), do respectfully state:

I.

<u>Procedural History</u>

The present Joint Motion to Dismiss before the court again draws upon the same arguments previously brought to the court's attention regarding the government contractor defense (rehashing the same issues previously canned by the court) by coaxing a ruse that the language of the Third and Fourth Amended Administrative Master Complaints do not establish a viable cause of action.  However the thrust of the present motion: that "Plaintiffs claim that jacking emergency housing made [a] pre-existing defect worse;" that "[p]laintiffs never offer any facts to show how taking the emergency housing off its wheels could have exacerbated the pre-

1

existing defect;" and that "[p]laintiffs also never allege facts that show how the contractors could have complied with the Government-issued specifications without causing the precise harm they complain of" misrepresent the allegations of the Amended Administrative Master Complaints to create the appearance of novelty.

As will be set forth below, and has been previously recognized by this Court, the Plaintiffs must only comply with the pleading requirements of the Federal Rules of Civil Procedure to set forth a cause of action. It is the defendants that must establish facts of their affirmative defense. This they have failed to do...again. In addition, Plaintiffs have produced expert reports establishing that improper jacking created stress and flexing on the frame of the plaintiffs' emergency housing unit ("EHU"), which distorted the travel trailer's shell allowing for increased moisture intrusion and formaldehyde exposure due to cracks and openings in the shell.

II.

**THERE IS NO TECHNICAL BASIS TO GRANT THE MOTION TO DISMISS**

The defendants ask this court to dismiss the Amended Administrative Master Complaints pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) by attacking the Third and Fourth Amended Master Complaints. In considering this motion, the court must accept the factual allegations of the complaint as true and resolve all ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. Fernandez-Montes v. Allied Pilots Ass'n., 987 F.2d 278, 284 (5th Cir.1993). A complaint should not be dismissed for failure to state a claim unless it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim." Id., at 284-85 (quoting Conley v. Gibson, 355 U.S. 41, 45- 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In the present case, defendants claim they are immune from prosecution because of the government contractor defense. Not so. Plaintiffs have made numerous allegations citing the defendants' negligence.

Federal Rules of Civil Procedure, Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary;" the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929, ---- - ---- (2007) (slip op., at 7-8). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, ... a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqnal, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868,(2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U .S. 544, 570 (2007)).

The Third Supplemental and Amended Administrative Master Complaint sets forth detailed allegations regarding Bechtel National Inc. ("Bechtel"), CH2M Hill Constructors, Inc. ("CH2M") and Shaw Environmental, Inc. ("Shaw"). (See Rec. Doc. 4486, ¶¶ 293-342). Each of these defendants received a No-Bid contract from FEMA to perform functions relative to temporary housing after hurricane Katrina. However, as specified by the Plaintiffs' allegations, the defendants's negligence violated both the Louisiana Products Liability Act, as well as general state tort law. Of particular note (since the court has already denied a similar motion) are the allegations that improper jacking created stress and flexing on the frame of the EHU, which distorted the travel trailer's shell allowing for increased moisture intrusion and formaldehyde exposure due to cracks and openings in the shell. (Rec. Doc 4486, ¶ 299).

3

In their motion to dismiss, the defendants do not and cannot dispute that these allegations are "consistent with liability." Instead, they assert that the allegations themselves are inactionable due to the affirmative defense of the governmental contractor defense. This assertion proves hollow because the defendants fail to show that their negligent acts give cause to displace state law. Without proving that a federal interest sufficiently conflicts with state law such that the state law claim must be displaced, the defendants' position is inconsistent with both the letter and the intent of the federal common law governmental contractor defense.

### III.

### DEFENDANTS HAVE NOT PROVEN THAT DISPLACEMENT OF STATE LAW APPLIES; THUS, THE GOVERNMENT CONTRACTOR DEFENSE FAILS

At the outset, the defendants rely upon Yearsley et.al v. W.A. Ross Const.Co., 309 U.S. 18, 60 S. Ct. 413 (1940), to argue that they enjoy an immunity precluding the Court from exercising jurisdiction. In Yearsley, the plaintiff brought suit against a contractor to recover damages resulting from acts producing artificial erosion that washed away part of plaintiff's land. The Supreme Court upheld the appellate court ruling in favor of the defendant, holding simply that "if the authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." Id. at 414.[1]

---

[1] The court avoided any further extension of the ruling by recognizing that "if the authorized action at issue constituted a taking of property for which there must be just compensation under the Fifth Amendment, the Government has impliedly promised to pay that compensation and has afforded a remedy for its recovery by a suit in the Court of Claims."

However, the Supreme Court made clear that this ruling did not confer "immunity," only that there would be "no liability" in that case.  It recognized that "where an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the grounds of liability has been found to be either that he exceeded his authority or that it was not validly conferred." Id. at 414.

The logic of Yearsley has developed substantially since 1940.  The governmental contractor defense was developed in the context of whether private contractors would be held liable for design defects in government-commissioned military equipment.[2]  "The government contractor defense, as formulated in 1988 by the Supreme Court in Boyle, generally immunizes government contractors from civil liability arising out of the performance of federal procurement contracts." Bailey v. McDonnell Douglas Corp., 989 F.2d 794, 797 (5th Cir.1993) (citing Boyle, 487 U.S. at 505-06, 108 S. Ct. at 2515). "The defense stems from the immunity enjoyed by the United States from claims based on the performance of so-called 'discretionary functions', pursuant to the [Federal Tort Claims Act], 28 U.S.C. § 2680(a)." Id. at 797-98. "The primary purpose behind the formulation of the government contractor defense was to 'prevent the contractor from being held liable when the government is actually at fault . . .'" Mitchell v. Lone Star Ammunition, Inc., 913 F.2d 242, 245 & n.5 (5th Cir. 1990) (quoting Trevino v. General Dynamics Corp., 865 F.2d 1474, 1478 (5th Cir. 1989)).

---

[2] In Boyle v. United Technologies Corp., the Supreme Court held that "[l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).

5

To prevail on the government contractor defense, a defendant bears the burden of proving all three elements of the Boyle standard. These three conditions "serve to ensure that the defense operates to immunize the contractor only where the government has actually participated in discretionary design decisions, either by designing a product itself or approving specifications prepared by the contractor." Landgraf v. McDonnell Douglas Helicopter Co., 993 F.2d 558, 560 (6th Cir. 1993) (quoting Harduvel v. General Dynamics Corp., 878 F.2d 1311, 1316 (11th Cir. 1989).

As set forth above, Plaintiffs in the present case have specifically alleged the negligent acts of the defendants that preclude the granting of the Motion to Dismiss. The Amended Administrative Master Complaints specifically allege not only that the defendants' work was performed in such a negligent manner that it either caused or contributed to the harm complained of, but also that the work failed to comply with the requirements of the manufacturer, state and local law, and ultimately the directives of FEMA.

### A.    *PLAINTIFFS HAVE PROPERLY ALLEGED THAT DEFENDANTS FAILED FULFILL REASONABLY PRECISE SPECIFICATIONS*

The very essence of the Plaintiffs' allegations is that the work proposed to have been performed by the contracting defendants required an analysis of the work's impact on the travel trailer's shell to preclude increased moisture intrusion and formaldehyde exposure. The Court has already found, based upon the same contractual language now presented by the present defendants, that a similarly situated contracting defendant Flour failed to prove that it met the standards to qualify for the governmental contracting defense because the first element, the

government's approval of "reasonably precise specifications" was not satisfied because the "critically important aspect" of the jacking procedure was left to the discretion of the contractor. The Court found this to be particularly important because "Plaintiffs assert that the means and methods of jacking up the EHU were a major cause in increasing formaldehyde exposure to Plaintiff."  (Rec Doc. 3205, p. 6 & 8).

Of particular note is the Court's proper conclusion that "Boyle only protects government contractors from liability when the 'discretion over the design *feature* in question was exercised by the government.'"  (Rec Doc. 3205, p. 10).  This logic is in keeping with a similar factual scenario analyzed by the United States Ninth Circuit Court of Appeals, wherein a district court's grant of summary judgment was overturned because although the government was significantly involved in and approved specifications for the design of the entire helicopter, it had not addressed, "**as Boyle requires, whether the design feature in question [i.e., the drive shaft and its components] was considered by the Government officer and not merely by [Bell] itself** ."  [Emphasis added].  Snell v. Bell Helicopter Textron, Inc.,107 F.3d 744, 747 (9th Cir. 1997).

In Snell, the contractor proposed detailed specifications and drawings, and after requiring a number of changes, the military examined, reviewed and approved final detail specifications and drawings.  In overruling the trial court, the Ninth Circuit found that although the evidence revealed that each drawing was signed by a government representative to indicate approval, the evidence did not establish as a matter of law that the government had exercised its discretion with respect to the drive shaft and its components.  The Ninth Circuit found that on the record, the Detail Specification for the helicopter left the design and placement of the drive shaft and its

7

components to the contractor Bell. The record further showed that Bell then prepared and submitted the drawings for the entire helicopter to the government for examination, review and approval to ensure that they met the Detail Specification. The appellate court found that this evidence did not establish as a matter of law that the government exercised its discretion with respect to the drive shaft and its components. On the contrary, testimony of the Bell official in charge of dealing with the military about the design of the helicopter, who attended all of the design meetings, was that there were no discussions with the government about the design of the critical isolation mounts.

In the present case, the Government's contractual directive required that the defendant not only install the unit "in accordance with manufacturer's installation specifications and include other appropriate State and local requirements" (See Rec. Doc. 13421-8, p. 4, ¶ 3.2.2), but also "to establish procedures to ensure that the quality of the work performed complied with generally accepted practices within the trade." (See Rec. Doc. 13421-8, p. 27, ¶ 3.1.4).

This Court has already recognized that "the specifications from FEMA regarding the jacking-up procedure were not specific and left discretion...as to how to jack up the EHU." (Rec. Doc. 12050). Indeed, Plaintiffs have far exceeded the notice requirement by producing expert reports that conclusively establish that the improper jacking techniques utilized by the defendants created conditions with the EHU that were conducive to the entry of air, moisture, and/ or thermal energy infiltration into the walls, ceiling and floor systems. These techniques did not even comply with the manufacturer's installation instructions because the manufacturer indicated that damage to the trailer can occur with jacking by use of the leveling jacks.

Clearly then, the specifications established by FEMA did not conflict with state law. Rather they explicitly required the defendants *to* comply with State and local laws.

Further justification to deny the Motion to Dismiss is in the analysis of the Boyle factors set out by the United States Second Circuit Court of Appeals that elaborated that "federal common law provides the contractor with a defense only where there is both (a) a conflict between the requirements of state tort law and those of the Government contract and (b) an exercise of Government discretion in considering the design feature in question." Lewis v. Babcock Industries, Inc., 985 F.2d 83, 86 (2d. Cir 1993).  The Lewis Court noted that:

> "The purpose of the first part of the test, approval of reasonably precise specifications, is to determine whether a conflict with state law exists at all. As we indicated in *Grispo,* a federally imposed contract requirement displaces only a parallel state law requirement. 897 F.2d at 630. If the Government did not approve reasonably precise specifications for the design feature in question, there is no conflict with state law." Id., at 86.

The Lewis Court noted that "answering the question whether the Government approved reasonably precise specifications for *the design feature in question* necessarily answers the question whether the federal contract conflicts with state law." Id., at 87. [Emphasis added]. As such, without Government direction as to reasonably precise specifications, there can be no immunity.

**B.     THE DEFENDANTS' FAILURE TO EVALUATE THE SPECIFIC DESIGN FEATURE IN QUESTION FAILS TO SATISFY THE THIRD PRONG OF THE BOYLE ANALYSIS**

In essence, for the government contractor defense to apply, the Government need both be aware of potential deficiencies and direct that the Contractor behave in a way that was contrary to the otherwise governing laws.  The defense "[s]tripped to its essentials," is based on the concept that: "[t]he Government made me do it." In re Joint E. & S. Dist. N.Y. Asbestos Litig., 897

9

F.2d 626, 632 (2d Cir. 1990); *see also* Malesko v. Corr. Servs. Corp, 229 F.3d 374, 382 (2d Cir. 2000), rev'd on other grounds, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001).  "The affirmative defense applies only if the government exercised significant control over the relevant actions of the contractor." Densberger v. United Techs. Corp., 97 F.3d 66, 75 (2d Cir. 2002).

The properly pled allegations that the work performed by the defendants required an analysis of its impact on travel trailer's shell to determine whether it allowed increased moisture intrusion and formaldehyde exposure.  For the defendants to enjoy the fruits of the "federal common law" defense identified as the governmental contractor defense, they must prove that the displacement of state law should apply because a "significant conflict" exists between an identifiable federal policy or interest and the operation of state law. Boyle, *supra*.  "The primary purpose behind the formulation of the government contractor defense was to 'prevent the contractor from being held liable when the government is actually at fault . . .'" Mitchell v. Lone Star Ammunition, Inc., 913 F.2d 242, 245 & n.5 (5th Cir. 1990).

However, the contractor is not able to claim immunity when his actions—and not those of the Government—created the damaging condition. Id., at 245-46.  In such a situation, fairness dictates that a government contractor should not be permitted to escape liability by asserting the sovereign immunity of the Government. Id., at 246.  The Fifth Circuit has limited the scope of the Boyle contractor defense to apply only where "discretion over significant details of the *design feature in question* was exercised by the government." Trevino v. General Dynamics Corp., 865 F.2d 1474, 1486 (5th Cir. 1989). [Emphasis added].

Here, the record is replete with evidence that FEMA's guidelines obligated and regularly repeated the requirement that the contractors perform their work in compliance with professional

engineering standards and with state and local laws. Nothing in the record supports the argument that the contractors were obliged to perform their work in a manner that necessitated disregard for Louisiana state law duty of due care as there was no significant conflict between an identifiable federal policy and the operation of state law.

Further, the third prong of the Boyle analysis requires that to invoke the government contractor defense, the contractor must demonstrate that it fully informed the Government about hazards related to the Government's exercise of discretion and that the Government knowingly accepted those hazards. This third condition prescribed by Boyle is necessary because, in its absence, the displacement of state tort law would create an incentive for the contractor to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability. In evaluating this prong, the Court is called upon to decide what constitutes "knowledge" of a "danger" that would trigger a duty to inform the government of the danger.

The record demonstrates that the defendants did not express to FEMA that it was utilizing jacking techniques that failed to meet the manufacturer's installation procedures, or state and local laws, thereby destroying the vapor barrier if the travel trailers shell and allowing increased moisture intrusion and formaldehyde exposure .

### C. DEFENDANTS CONDUCT FAILED TO SATISFY THEIR DUTY OF CARE UNDER LOUISIANA LAW

The Louisiana Civil Code provides that "[e]very act whatever of man that causes damage to another obliges him by those whose fault it happened to repair it." La. C.C. art. 2315. "A duty

is defined as the obligation to conform to the standard of conduct associated with a reasonable man in like circumstances." Fox v. Bd. of Supervisors of Louisiana State University and Agric. and Mech. Coll., 576 So.2d 978, 981 (La.1991).

The work performed by the defendants failed to meet the general standard of care of installation engineers because the defendants failed to proper execute jacking procedures despite manufacturer's warnings regarding improper jacking techniques. Thus, the defendants did not perform their work "with the same degree of skill and care exercised by others in the same profession in the same general area." Hogan Exploration v. Monroe Engineering Associates, Inc., 430 So.2d 696, 700 (La.App. 2d Cir.1983). Moreover, in failing to perform the proper jacking of the EHU, the defendants failed to satisfy its duty to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of their contractual obligations to third parties. Cormier v. Honiron Corp., 771 So.2d 193, 197 (La.App. 3 Cir. 2000). The defendants present no evidence whatsoever of a "significant conflict" in its execution of the contract and the operation of state law.

The plaintiff ordinarily has the burden of proving a breach of the above standards of care. However, an exception to this rule exists "when the conduct of [the professional] may be so unprofessional, so clearly improper, and so manifestly below reasonable standards dictated by ordinary intelligence, as to constitute a prima facie case of either a lack of the degree of skill and care exercised by others in the same general vicinity or failure to reasonably exercise such skill and care." Hogan, quoting Favalora v. Aetna Casualty & Surety, Co., 144 So.2d 544 (La.App. 1st Cir.1962). Thus, the determination of whether a professional has breached a standard of care is not dependent on expert testimony in those instances when "lay persons can infer negligence by

12

applying a common sense standard." <u>M. J. Womack, Inc. v. House of Representatives</u>, 509 So.2d 62, 65 (La.App. 1st Cir.) writs denied 513 So.2d 1208 and 513 So.2d 1211 (La.1987), quoting <u>Hastings v. Baton Rouge General Hospital</u>, 498 So.2d 713 (La.1986).

## IV.

## CONCLUSION

This Court has already ruled that the government's approval of "reasonably precise specifications," a necessary prong to enjoy the benefit of the governmental contractor defense, was not satisfied because the "critically important aspect" of the jacking procedure was left to the discretion of the contractor. Plaintiffs have specifically pled that the means and methods of jacking up the EHU were a major cause in increasing formaldehyde exposure to Plaintiff. For this reason alone, the Motion to Dismiss must be denied.

However, the defendants must further prove that the displacement of state law should apply because a "significant conflict" exists between an identifiable federal policy or interest and the operation of state law. Defendants have presented no such evidence. In fact the record is replete with evidence that FEMA's guidelines obligated and regularly repeated the requirement that the contractors perform their work in compliance with professional engineering standards and with state and local laws. Nothing in the record supports the argument that the contractors were obliged to perform their work in a manner that necessitated disregard for Louisiana state law duty of due care.

For the foregoing reasons, the Joint Motion to Dismiss Plaintiffs' Third and Fourth Amended Master Complaints must be denied.

Respectfully submitted:

FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

BY: <u>s/Gerald E. Meunier</u>
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
gmeunier@gainsben.com

<u>s/Justin I. Woods</u>
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
jwoods@gainsben.com

COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
ROBERT BECNEL, #14072
DENNIS REICH, Texas # 16739600

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 27, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                                                s/Gerald E. Meunier
                                                                GERALD E. MEUNIER, #9471