# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
### NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                          MDL NO. 07-1873
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION                         SECTION "N" (5)

                                             JUDGE ENGELHARDT
                                             MAG. JUDGE CHASEZ

THIS DOCUMENT RELATES TO:

*Nunnery, et al. v. Keystone RV Industries., et al.,*
**Case No. 09-3871 (McGraw)**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS DAVID MCGRAW'S REMAINING FTCA CLAIMS BECAUSE THEY ARE BARRED BY THE DISCRETIONARY FUNCTION EXCEPTION

**TABLE OF CONTENTS**

Table of Contents.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STANDARD OF REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

I.        Part One of the Discretionary Function Exception – Discretionary Conduct.. . . . . . . . . . . . 17

II.       Part Two of The Discretionary Function Exception – An Objective Legal
          Analysis of The Alleged Wrongful Conduct.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ALX El Dorado, Inc., v. Southwest Sav. & Loan Ass'n,*
  36 F.3d 409 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Andrade v. Chojnacki,*
  338 F.3d 448 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Armstead v. Nagin,*
  2006 WL. 3861769 (E.D. La., Dec. 29, 2006)      . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

*Baldassaro v. United States,*
  64 F.3d 206 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19, 21

*Berkovitz v United States,*
  486 U.S. 531 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*City of San Bruno v. FEMA,*
  181 F. Supp. 2d 1010 (N.D. Cal. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dowl v. Tulane Univ. Hosp. and Clinic,*
  2005 WL. 2060921 (E.D. La., Aug. 22, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re FEMA Trailer Formaldehyde Products Liability Litigation,*
  2010 WL. 360361 (E.D. La., Jan. 22, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re FEMA Trailer Formaldehyde Products Liability Litigation,*
  2010 WL. 323898 (E.D. La., Jan. 21, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re FEMA Trailer Formaldehyde Prod. Liab. Litigation,*
  2009 WL. 2599195 (E.D. La., Aug. 21, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re FEMA Trailer Formaldehyde Products Liability Litigation,*
  2009 WL. 2496570 (E.D.La., Aug. 13, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15

*In re FEMA Trailer Formaldehyde Products Liability Litigation,*
  583 F. Supp. 2d 758 (E.D. La. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*In re Katrina Canal Breaches Consol.*,
    2008 WL. 2186400 (E.D. La., May 27, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Freeman v. United States*,
    556 F.3d 326 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

*Garza v. United States*,
    161 Fed. Appx. 341, 2005 WL. 3478009 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . 24

*Gaubert v. United States*,
    499 U.S. 315 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

*Gold v. Local 7 United Food & Comm. Workers Union*,
    159 F.3d 1307, 1309-10 (10th Cir. 1998), *overruled on other grounds by*
    *Styskal v. Weld County Comm'rs.*, 365 F.3d 855 (10th Cir.2004). . . . . . . . . . . . . . . . . . . 14

*Guile v. United States*,
    422 F.3d 221 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 25

*Hix v. Army Corps. of Engineers*,
    155 Fed. Appx. 121 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Johnson v. FEMA*,
    2007 WL. 1592978 (E.D. La. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kiehn v. United States*,
    984 F.2d 1100 (10th Cir.1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Lesoeur v. United States*,
    21 F.3d 965 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Macharia v. United States*,
    334 F.3d 61 (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mortensen v. First Fed. Sav. & Loan Assoc.*,
    549 F.2d 884 (3rd Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Osborn v. United States*,
    918 F.2d 724 (8th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rich v. United States*,
    119 F.3d 447 (6th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Richardson v. United States*,
    943 F.2d 1107 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rosebush v. United States*,
    119 F.3d 438 (6th Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Shansky v. United States*,
    164 F.3d 688 (1st Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Smith v. Johns- Manville Corp.*,
    795 F.2d 301 (3d Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*St. Tammany Parish v. FEMA*,
    556 F.3d 307 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Steel Co. v. Citizens for a Better Envir.*,
    523 U.S. 83 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Sunrise Village Mobile Home Park, L.C. v. United States*,
    42 Fed. Cl. 392 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. S.A. Empresa De Viacao Rio Grandense ("Varig Airlines")*,
    467 U.S. 797 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Williams v. United States*,
    50 F.3d 299 (4th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Williamson v. Tucker*,
    645 F.2d 404 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

**STATUTES, REGULATIONS RULES OF PROCEDURE,**

44 C.F.R. §206.110 (c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

206 C.F.R. §101(g)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Civ. P. 12(h)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 1346(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

28 U.S.C. §§ 2671-80. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2680(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17

42 U.S.C. §5148. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 U.S.C. §5174. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# INTRODUCTION

The United States of America ("United States") submits this memorandum in support of its Fed. R. Civ. P. 12(b)(1) and 12(h)(3) motion to dismiss Plaintiff David McGraw's ("McGraw") Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-80, claims because they are barred by the discretionary function exception. 28 U.S.C. § 2680(a). In support of this motion, the United States incorporates by reference its Motion to Dismiss for Lack of Jurisdiction or Alternatively, Motion for Summary Judgment (Rec. Doc. 196), its Motion to Dismiss Plaintiffs' Remaining FTCA Claims for Lack of Subject Matter Jurisdiction (Rec. Doc. 1545), and the Memoranda and materials filed in support of those two Motions (Rec. Doc. 196, 419,1543, 1545, 1551, 1554, 2049, 2064, 2360, 2505).

The Federal Emergency Management Agency's ("FEMA") decision to provide McGraw with a travel trailer as temporary emergency housing was authorized by the Stafford Act and applicable regulations; and as this Court has ruled, no mandatory and specific regulation governed FEMA's response to a disaster aid recipient's concerns and/or complaints about formaldehyde in these units. *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 583 F.Supp.2d 758, 769-71, 773-74, 776, 781, 785-87 (E.D. La. 2008). As part of its 2008 ruling, however, the Court concluded that because FEMA had a general policy to provide safe and habitable temporary emergency housing, a claimant may potentially avoid dismissal by showing that FEMA ignored a disaster aid recipient's complaints about formaldehyde in his or her trailer. *Id*. The Court in its August 13, 2009, Order and Reasons, expanded upon its initial ruling and explained that:

> [B]ased on the evidence presently before the Court, June 2006 appears to be

1

the general cutoff date for most, if not all, of Plaintiffs' claims against the Government, as the newly-filed supporting materials indicate that it was at this time that the Government began, using its discretion, to respond to complaints of formaldehyde in a way that was reasonably consistent with its general policy of providing safe and habitable housing.

*In re FEMA Trailer Formaldehyde Products Liability Litigation*, 2009 WL 2496570, at *1, n.1

(E.D. La., Aug.13, 2009).  The Court further explained:

. . . that any particular bellwether plaintiff will have a difficult burden of recovering from the Government for its actions/inactions taken/not taken after June 2006.  In other words, Plaintiffs will have a difficult burden of demonstrating that, after June 2006, the discretionary function exception would not apply to the Government's actions.

*Id*. at *2, n.2.

As the United States demonstrates below, McGraw – as a recipient of a FEMA-provided housing unit who moved into the unit *after* June 2006 – cannot meet this burden.  McGraw moved into the Keystone RV Company, Inc. ("Keystone") trailer on or about July 27, 2006.  Exh. 1, Installation Work Order at FEMA217-000001, 04.  By this time, FEMA had already been advised by the installer of the unit, FEMA's Individual Assistance/Technical Assistance Contractor ("IA/TAC") CH2M Hill, Environmental, Inc. ("CH2M Hill"), that all trailers were aired out and vented before being issued to a disaster aid applicant, and that the monthly maintenance contractors had been instructed as part of their monthly maintenance visits to tell occupants to air out and vent their unit.  Exh. 2, March 20, 2006, E-Mail from CH2M Hill to FEMA at SHAW 013521; Exh. 3, Boyle Depo. at 132-35:12-12.  Further, as part of issuing the trailer to McGraw, CH2M Hill provided McGraw with two documents that specifically instructed him to air out and vent the unit on a regular basis.  Exh. 4, McGraw Depo.200-01:8-8; 205-07:22-17; Exh. 5, Trailer Users Guide at MCGRAW000187, 190, 198; Exh. 6, Owners

2

Manual at MCGRAW_EX-000061, 101, 125-26.[1]  These same documents also instructed McGraw

to notify FEMA, the government maintenance contractor, and/or Keystone if he had any problems

associated with the trailer.  Exh. 5, Trailer Users Guide at MCGRAW000184-85; Exh. 6, Owners

Manual at MCGRAW_EX-000013, 015, 011, 030, 122-23; Exh. 13, Temporary Housing

Occupancy Agreement at FEMA200-000062.  Thus, Government action to maintain safe indoor air

quality in FEMA-provided emergency housing units was well underway and in place *before* McGraw

moved into his unit.

      In addition, in June 2006, in furtherance of its efforts to maintain safe indoor air quality, FEMA

issued a press release urging trailer occupants to "ventilate trailers regularly to avoid buildup of possible

odors from construction materials or everyday products such as cigarette smoke."  Exh. 7, June 2006,

Press Release; *see also* Sierra Club Formaldehyde Flyer at FEMA123-000012 (Rec. Doc. 1543-20).

FEMA subsequently took even further action to provide information to travel trailer occupants about

formaldehyde: In September 2006, FEMA issued a formaldehyde brochure; and in July 2007, it issued

a formaldehyde flyer.  Exh. 8, Bonomo Dec. ¶¶2-6; Exh. 9, 2006 Formaldehyde Brochure; Exh. 10,

Larson Dec. ¶¶2-8;. Exh. 11, Molina Dec. ¶¶2-5; Exh. 12, 2007 Formaldehyde Flyer.  Both

documents addressed formaldehyde, provided instructions on actions that occupants could take to

reduce their exposure to formaldehyde, and urged disaster aid recipients to seek medical care if they

had any health concerns.  Exh. 9, 2006 Formaldehyde Brochure; Exh. 12, 2007 Formaldehyde Flyer.

---

    [1]  Exhibit 6, the Keystone Owners Manual has been stamped with two sets of identification numbers MCGRAW000001 to MCGRAW000124 and MCGRAW_EX-000013 to MCGRAW_EX-000136.  For purposes of this memorandum specific page citations to that Exhibit references the MCGRAW_EX-000013 to MCGRAW_EX000136 identification numbers.

In addition, although McGraw testified that he had access to a free medical clinic sponsored by FEMA, he never sought medical treatment for any alleged symptoms or conditions, and moreover, McGraw's decision to live and stay in the trailer was clearly voluntary given his testimony that he had available alternate adequate housing.  Exh. 4, McGraw Depo  214-15:14-11; 217-18:12-7; 266-67:21-14; 293-95:20-18; 327:12-25.[2]  Finally, and perhaps most importantly, notwithstanding the wealth of information made available to McGraw, he never complained to FEMA or to any other entity that had responsibility for the trailer, about formaldehyde, unusual odors, or any health concerns associated with the trailer.  Exh. 4, McGraw Depo. 208-10:20-20; 213-14:25-17; 219-20:25-9; 221-23:4-10.  Accordingly, consistent with this Court's prior Orders and Rulings, FEMA's failure to take further action to protect McGraw was a discretionary decision that was susceptible to policy analysis, and consequently barred by the discretionary function exception.

## FACTS

1.     The applicable statutes, regulations, and policies authorized FEMA to use and issue to disaster aid applicants manufactured housing, travel trailers, and park model units for use as temporary emergency housing units ("EHUs").  *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 583 F.Supp.2d at 785-87.

2.     The applicable statues, regulations, and policies impose no mandatory and specific course of conduct for responding to formaldehyde concerns in EHUs; rather, the applicable provisions

---

[2]  McGraw's decision to remain in the trailer when alternate adequate housing was available to him violated his agreement with FEMA to vacate the trailer as soon as such alternate housing became available.  Exh. 13, Temporary Housing Occupancy Agreement at FEMA200-000062; Exh. 14, Emergency Shelter Agreement at FEMA200-000047.

4

provide FEMA with discretion to determine what action, if any, should be taken in response to these concerns or complaints.[3]  *Id.* at 769-71, 773-74, 776, 781, 785-87.

3.      As a result of the damage to housing stock caused by Hurricanes Katrina and Rita, FEMA purchased both trailers constructed at FEMA's request and trailers constructed for sale to the public.  *See* Dec. McCreary ¶¶1-4, 6 (Rec. Doc. 196-14); Request for Quotation (Rec. Doc. 196-17).  The trailers built for sale to the public are often referred to as "off-the-lot" or "camper" units.  *See* Dec. McCreary ¶¶1-4, 6 (Rec. Doc. 196-14); Exh. 4, McGraw Depo. 166-68:14-18; 174:3-23. Unlike units constructed for FEMA an "off-the-lot" or "camper" unit  has holding tanks to dispose of waste water and sewage – grey and black water tanks and camper style toilets. *See* Dec. McCreary ¶¶1-4, 6 (Rec. Doc. 196-14); Request for Quotation (Rec. Doc. 196-17); Exh. 4, McGraw Depo. 166-68:14-18; 174:3-23. 213:17-24.

4.      McGraw's trailer, assigned FEMA Barcode 1345768, and vehicle identification number ("VIN") 4YDT260226N132486, was an "off-the-lot," "camper" model manufactured by Keystone.  *See* Dec. McCreary ¶¶1-4, 6 (Rec. Doc. 196-14); Request for Quotation (Rec. Doc. 196-

---

[3]  A variety of regulatory and industry standards dealing with formaldehyde have been discussed at length in other filings with this Court.  *See* United States' Memorandum in Support of its Motion to Dismiss for lack of Subject Matter jurisdiction Plaintiffs' Federal Tort Claims Act Claim (Count 2) and Contract Claims (Counts 1 and 3) at 10 (Rec. Doc. 196-3); United States' Reply to Plaintiffs' Steering Committee's ("PSC") Memorandum in Opposition to Defendant United States of America's Motion to Dismiss Plaintiffs' FTCA and Contract Claims for Lack of Subject Matter Jurisdiction at 15-18 & nn 12-14 (Rec. Doc. 419-1). While it is clear that none of these standards amount to mandatory and specific directives, it is also important to note that these standards cover a broad spectrum of values.  There simply is no current scientific consensus or regulatory bright line standard as to what amount of formaldehyde in a residential setting is unacceptable.  This underscores the extent of FEMA's discretion in responding to the formaldehyde issue, particularly in the context of a disaster response with limited available housing stock.  Not only did FEMA have to decide how many complaints warranted a centralized versus individualized response action, but it also had to wade through a variety of inconclusive health and safety standards through the assistance of other specialized government agencies.

5

17); Exh. 4, McGraw Depo. 166-68:14-18; 174:3-23. 213:17-24 ; Ex. 1, Installation Work Order at

FEMA217-000001, 04.  FEMA purchased that unit on or before February 20, 2006, from Scotty's

Camper Sales, Inc., New Iberia, Louisiana.  Exh. 1, Installation Work Order, FEMA217-000004.[4]

     5.      On March 20, 2006, FEMA contacted its Individual Assistance/Technical Assistance

Contractors ("IA/TACs")  to determine what actions, if any, they were taking to address formaldehyde

concerns.  Exh. 2, March 20, 2006, E-Mail from FEMA to CH2M Hill at SHAW 013520-21; Exh. 3,

Boyle Depo. at 132-35:12-12.  That same day, CH2M Hill responded:

> We are currently airing out the TT in the NAS Yard as part of the inspection
> process.  By turning on the AC and exhaust fan in the bathroom, the smell
> would just about in all cases clear up in 24 hour period or in most cases less
> then 24 hours.  We also advise the occupants during the monthly PMI and in
> the maintenance manual (see attached) to ventilate the TT to control the build
> up of moisture, which will also help to reduce the level of off gassing of
> chemicals.

Exh. 2, March 20, 2006, E-Mail from CH2M Hill to FEMA at SHAW 013521[5]; Exh. 3, Boyle Depo.

at 132-35:12-12.[6]

---

[4] It is the United States' understanding that Keystone did not produce any units for FEMA and
that all of their units used in response to Hurricane Katrina and Rita were "off-the-lot," "camper" models
purchased by FEMA from Recreational Vehicle Dealers.

[5] The document attached to the CH2M Hill e-mail and provided to FEMA on March 20, 2006,
was a "Trailer Users Guide" that instructed trailer recipients that they must regularly air out and vent the
trailer to prevent condensation and mold.  Ex. 5, March 20, 2006, E-Mail CH2M Hill to FEMA at Shaw
013523-538.

[6] As previously explained, venting and airing out the trailer is the recommended response to
formaldehyde concerns according to private entities such as the Recreation Vehicle Industry Association
("RVIA"), Trailer Manufacturers such as Fleetwood Enterprises, Inc., and the Sierra Club, and also
according to government agencies such as the Centers for Disease Control/Agency for Toxic Substances
and Disease Registry ("ATSDR"), the United States Environmental Protection Agency ("EPA"), and the
Consumer Product Safety Commission ("CPSC").  *See* July 22, 2009, FEMA E-Mail at FEMA17-005982,
05984 (1543-19); Fleetwood Rule 30(b)(6) Depo. at 110-11:17-19; 141-42:16-5 (Rec. Doc. 1543-13);

6.      On or about July 27, 2006, CH2M Hill installed the Keystone trailer, FEMA Barcode 1345768, VIN 4YDT260226N132486 at 5212 Dauphine Street, New Orleans, Louisiana.  Exh. 1, Installation Work Order at FEMA217-000001 to 002.  That trailer was more than five months old when it was installed.  Exh. 1, Installation Work Order at FEMA217-000004.[7]

7.      As part of the installation/move-in process, CH2M Hill provided McGraw with a "Trailer Users Guide Version 5."  Exh. 4, McGraw Depo. 205-07:22-17.  CH2M Hill reviewed and went over that document with McGraw as part of the move-in process.  Exh. 4, McGraw Depo. 205-07:22-17.  That document listed a telephone number on the front page that McGraw was advised to call in the event he experienced any problems with the trailer.  Exh. 4, McGraw Depo. 210:7-20.  That document also instructed occupants to air out and vent the unit on a regular basis to prevent condensation and mold.  Exh. 5, Trailer Users Guide at MCGRAW000187, 190, 198.[8]

8.      As part of the installation/move-in process, CH2M Hill provided McGraw with the

---

Fleetwood Occupancy Manual at 03-2 (Rec. Doc. 1543-14); Fleetwood Formaldehyde Warning at FLE-00005672 (Rec. Doc. 1543-15); Sierra Club Formaldehyde Flyer at FEMA123-000006 (Rec. Doc. 1543-20); ATSDR, Formaldehyde Toxicological Profile at ATSDR-00025, ATSDR-000329 (Rec. Doc. 1543-16); EPA Fact Sheet at EPA-000003 (Rec. Doc. 1543-17); Consumer Product Safety Commission, An Update on Formaldehyde (rev. 1997) at CPSC-000005 (Rec. Doc. 1543-18).

[7] That the trailer was more than five months old when issued to McGraw is significant because, on June 13, 2006, the Sierra Club – the entity that had publically raised the issue of formaldehyde in travel trailers and urged FEMA to test for formaldehyde – advised FEMA that the level of formaldehyde in travel trailers will decrease to "safe" levels in approximately three to six months after manufacture.  June 13, 2006, Letter at FEMA 123-000007 (Rec. Doc. 1545-21).  Thus, at least according to the advice the Sierra Club gave FEMA, the McGraw's unit was "safe."

[8] This "Trailer Users Guide" is the guide that CH2M Hill prepared and told FEMA on March 20, 2006, that it provided to disaster aid applicants when they move into a trailer; this guide was in fact provided to McGraw in July 2006 when he moved into the trailer.  *Compare* Exh. 2, March 20, 2006, E-mail from CH2M Hill to FEMA and attached "Trailer Users Guide" at Shaw 013523-538 *with* Exh. 4, McGraw Depo.205-07:22-17; Exh. 5, Trailer Users Guide at MCGRAW000187.

Keystone Owners Manual and instructed him to review it. Exh. 4, McGraw Depo. 200-01:8-8. The

Keystone Owners Manual told occupants to air out and vent the unit on a regular basis to prevent

condensation and mold. Exh. 6, Owners Manual at MCGRAW_EX-00061, 101, 126. The Keystone

Owners Manual also contained an Appendix entitled "Chemical Sensitivity Issues." Exh. 6, Owners

Manual at MCGRAW_EX-000125. The pertinent portion of that Appendix instructed occupants that:

> Many individuals are sensitive to the out-gassing from common construction
> materials used in the construction of RV's. This occurs most frequently in hot
> weather and after a unit has been closed up for extended periods. ***Chemical
> sensitivity is an individual reaction.*** Common symptoms include but are
> not limited to burning eyes, respiratory irritations and other allergic reactions.
> These conditions are not manufacturing defects. A common myth is that
> formaldehyde is used in the manufacturing of paneling and other building
> materials. *Keystone RV **does not*** use products containing formaldehyde.
>
> **Suggested Solutions:**
>
> Frequent fresh air ventilation. Open the windows and roof vents when
> possible. . . .

Exh. 6, Owners Manual at MCGRAW_EX-000125 (all emphasis original). *See also* Exh. 4,

McGraw Depo. 200-01:8-8; 221-25:4-24.

     9.      On July 27, 2006, McGraw signed an "Emergency Shelter –Agreement to Rules of

Occupancy." McGraw, in signing that document, acknowledged and agreed that:

> FEMA is providing this unit as a temporary shelter because the President
> declared a major disaster or emergency in the area and I am not able to live in
> my residence due to this event. . . . I agree that I . . . must accept other housing
> options, when they become available.

Exh. 14, Emergency Shelter Agreement at MCGRAW_EX-000168; *see also* McGraw Depo. 257-

58:11-10.

8

10.      In August 2006, FEMA distributed a formaldehyde brochure to trailer occupants.  *See*
Exh. 8, Bonomo Dec. ¶¶2-6.  That brochure provided information about formaldehyde in trailers,
identified actions that could be taken to reduce formaldehyde levels, and encouraged occupants to
consult and talk with a doctor if they had any health concerns.  See Exh. 8, Bonomo Dec. ¶¶2-6; Exh.
9, 2006 Formaldehyde Brochure.

11.      On April 11, 2007, McGraw signed a Temporary Housing Occupancy Agreement.
Exh. 13, Temp. Housing Agreement at MCGRAW_EX-000169.  McGraw in signing that document
agreed and acknowledged that:

> 2.  All parties agree that this Agreement is not intended to, nor does it create,
> a relationship of Landlord and Tenant between FEMA and Occupant.
> Occupant further agrees and understands that this Agreement does not create a
> property interest of Occupant in the unit.
>
> 3.  Occupant understands that FEMA is providing this unit as temporary
> housing assistance to respond to the disaster-related housing needs of
> Occupant.  Temporary housing assistance, including direct housing assistance,
> is a discretionary benefit . . . Occupant acknowledges that the premises
> provided herein are temporary and it is expressly understood that this
> Agreement in no way guarantees continued assistance.
>
> **4.  *Occupant agrees to diligently work to obtain permanent
> accommodations at the earliest possible date. Occupant further agrees
> to accept adequate alternate housing when it becomes available.***

Exh. 13, Temp. Housing Agreement at MCGRAW_EX-000169 (emphasis added); *see also* Exh. 4,
McGraw Depo. 258-61:11-14.

12.      On July 22, 2007, FEMA delivered a formaldehyde flyer to the McGraw's trailer.
Exh. 10, Larson Dec. ¶¶2-8;. Exh. 11, Molina Dec. ¶¶2-5.  That document warned that trailers contain
formaldehyde, provided instructions on actions to take to reduce formaldehyde levels in the unit,

9

encouraged occupants to seek medical advice if they had health concerns, and provided a telephone number for occupants to call if they had health concerns or wanted to vacate the trailer and move into alternative temporary emergency housing.  Exh. 10, Larson Dec. ¶¶2-8;. Exh. 11, Molina Dec. ¶¶2-5; Exh. 12, 2007 Formaldehyde Flyer.

13.   McGraw never contacted FEMA, the Government's contractors, or Keystone to complain or voice concern about formaldehyde, or about anything that could be related to formaldehyde, including odors or any health problems that occurred when he lived in the trailer.  Exh. 4, McGraw Depo. 213-14:25-17; 219-20:25-9; 221-23:4-10.  McGraw testified that:

Q       From your earlier testimony, I gather that somebody came out every month to inspect your trailer and your sister's trailer?

A       Yes.

Q       And at that time, you were generally present?

A       Yes.

Q       And you signed off on those inspections?

A       Yes.

Q       At any point in time did you make any complaints to that inspector about problems with the trailer?

A       No.

Q       You indicated earlier that you may have mentioned that you had a rodent infestation problem to the maintenance person.  Do you recall that?

A       Yes.

Q       Okay. So you did make a complaint about the rodents?

10

A       Yes.

Q       Other than complaining about the rodents to the maintenance person, did you complain about any other problems with the trailer?

A       At one time I complained about the trailer when they was about to take the trailer. The heater went out.

Q       Okay. So you complained about rodents and you also complained about the heater?

A       Yes.

Q       Besides those two complaints, any other complaints?

A       That's it.

Q       Okay. At any point in time did you ever call the maintenance hotline -- And let me step back. I apologize. Okay. This Exhibit 10 [Trailer Users Guide] has on it a maintenance hotline, an 800 number; is that right?

A       Yes.

Q       At any point did you call the maintenance hotline and say, "I have a problem with the trailer"?

A       No.

Q       At any point in time did you call FEMA and say, "I have a problem with the trailer"?

A       No.

Exh. 4, McGraw Depo. 208-10:20-20. McGraw further testified that:

Q       Now, I have looked through your Plaintiff Fact Sheet. Did you ever suffer burning eyes in this unit?

A       Yes, sometimes.

Q       Okay. Did you ever complain to FEMA about that?

11

A       No.

Q       Did you ever complain to the maintenance contractor about that?

A       No, because I really thought it had no connection to the trailer until I saw it on a
        commercial.  Like I say, I thought I was catching a cold or something.

Q       Got it.  But it was here in this manual [Keystone Owners Manual] that you had,
        it explained that that might happen; isn't that right?

A       Yes.

Q       It [Keystone Owners Manual] also said "respiratory irritations and other
        allergic reactions."  Do you see that?

A       Yes.

Q       Did you ever complain -- Did you ever suffer any respiratory irritation or what
        you believe are allergic reactions when you were in the trailer?

A       The only thing that occurred in the trailer was sinus and red eyes and
        headaches.

Q       Okay.  And other than the sinus, red eyes, headaches, and I guess what you
        said, burning eyes earlier, did you suffer any other symptoms in the trailer?

A       Not as far as I know.

Q       And you never complained to FEMA about those symptoms?

A       No.

Q       You never complained to the maintenance contractor about those symptoms?

A       No.

Exh. 4, McGraw Depo. 221-23:22-10; *see also* Exh. 4, McGraw Depo. 219-20:25-9 (McGraw

acknowledged that the Keystone Owners Manual provided contact information for Keystone and

urged occupants to contact Keystone if they had any problems with the trailer; he also acknowledged,

12

however, that he never contacted Keystone).

14.     During his occupancy of the trailer McGraw believes he had access to a free medical

clinic sponsored by FEMA, but never sought any medical advice or care.  Exh. 4, McGraw Depo.

214-15:14-11; 217-18:12-7; 293-95:20-18; 327:12-25.

15.     McGraw had access to adequate alternative housing during his occupancy of the trailer;

specifically, he acknowledges that he could have moved out of the trailer and stayed with his niece, but

chose to remain in the trailer because he did not want to impose upon her and wanted to lived by

himself.  Exh. 4, McGraw Depo. 266-67:21-14.

16.     McGraw vacated the trailer sometime between July 2007 and December 2007, after

he completed repairs to his house.  *See* First Supplemental and Amending Complaint for Damages ¶14

("Supp. Complt.") (trailer vacated in July 2007) (Rec. Doc. 10274); Exh. 4, McGraw Depo. 69-

70:23-9 (trailer vacated in November or December 2007).[9]

## STANDARD OF REVIEW

The United States, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3) , moves to dismiss

McGraw's FTCA claims for lack of subject-matter jurisdiction.  In deciding a Fed. R. Civ. P. 12(b)(1)

and 12(h)(3) motion, the Court may consider exhibits outside the pleadings; indeed, "the trial court is

free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."

*Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3rd Cir. 1977).  *See also*

*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).  A Rule 12(b)(1) and 12(h)(3) motion is

---

[9]  For purposes of this motion the United States assumes that McGraw vacated the unit in December 2007 since that appears to be the date most favorable to McGraw for purposes of assessing whether his claim is barred by the discretionary function exception.

13

treated differently than a Rule 56 summary judgment motions because the jurisdictional issue presented, whether it involves questions of law or fact, must be resolved by the court as a preliminary matter. *See Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990).

Moreover, because jurisdiction is a threshold issue, the separation of powers doctrine requires that the court determine whether it has jurisdiction at the outset, rather than defer the issue until trial, as would occur with denial of a summary judgment motion. *See Steel Co. v. Citizens for a Better Envir.*, 523 U.S. 83, 93-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s]' from the nature and limits of judicial power of the United States' and 'is inflexible and without exception.'"); *Gold v. Local 7 United Food & Comm. Workers Union*, 159 F.3d 1307, 1309-10 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld County Comm'rs.*, 365 F.3d 855 (10th Cir.2004) ("*Steel* requires that a federal court satisfy itself of subject matter jurisdiction before proceeding to the merits of a claim – even when the question of the merits is the easier one and is substantively resolvable against the claim over which jurisdiction is in doubt"). In *Williamson*, 645 F.2d 404, the court explained that:

> [A]t issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. . . . [T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id*. at 412-13 (citing *Mortensen*, 549 F.2d at 891 ("no presumptive truthfulness attaches to plaintiff's allegations"). *See also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). Upon submission of evidence, courts "must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." *Osborn*, 918 F.2d at 730.

14

McGraw bears the burden of establishing subject matter jurisdiction, which includes showing

that his claims are not barred by the FTCA jurisdictional exceptions to the waiver of sovereign immunity

or by the Stafford Act's discretionary function exception. *See Ramming v. United States*, 281 F.3d

158, 161 (5th Cir. 2001); *Dowl v. Tulane Univ. Hosp. and Clinic,* 2005 WL 2060921 *2 (E.D. La.,

Aug. 22, 2005) (Engelhardt, J.) (plaintiff must show that court has subject matter jurisdiction over

FTCA claim). In the instant case, the United States, through its arguments and proffered evidence, has

demonstrated that McGraw has failed to meet his burden, and, accordingly, his claims should be

dismissed under Rule 12(b)(1) and 12(h)(3).

The Court, in its 2008 Order and Ruling applied the Rule 56 summary judgment standard for

purposes of resolving the United States' initial discretionary function motion, in part, because plaintiffs

had not had an opportunity to conduct discovery and because the Court was concerned that facts

relevant to whether FEMA's response actions were susceptible to policy analysis may be inextricably

intertwined with the merits of plaintiffs' claims. *See In re FEMA Trailer Formaldehyde Products

Liability Litigation*, 583 F.Supp.2d at 764-66. Notwithstanding that ruling, the instant motion should

be resolved pursuant to Rule 12(b)(1) and 12(h)(3). McGraw, as well as all other plaintiffs, have had

over two years to conduct discovery and have conducted substantial discovery from FEMA.

Moreover, given the Court's prior two discretionary function rulings, the only remaining issue is whether

actions taken by FEMA in providing McGraw with temporary emergency housing  was susceptible to

and consistent with FEMA's general policy goal to provide safe and habitable temporary emergency

housing. *See In re FEMA Trailer Formaldehyde Products Liability Litigation*, 2009 WL 2496570

*1-2, nn. 1-2. This discrete and distinct issue, much like the FTCA statute of limitations, which is also a

condition on the government's waiver of sovereign immunity, should be resolved pursuant to Fed. R.

Civ. P. 12(b)(1) and 12(h)(3), rather then Rule 56.  *See generally In re FEMA Trailer*

*Formaldehyde Products Liability Litigation*, 2010 WL 360361 (E.D. La., Jan. 22, 2010)

(*Castanel*)*; In re FEMA Trailer Formaldehyde Products Liability Litigation*, 2010 WL 323898

(E.D. La., Jan. 21, 2010)  (*Wright*); *In re FEMA Trailer Formaldehyde Prod. Liab. Litigation*,

2009 WL 2599195 (E.D. La., Aug. 21, 2009) (*Cooper*).

## ARGUMENT

The analysis of the discretionary function exception is the same under both the Stafford Act and

FTCA.[10]  *See St. Tammany Parish*, 556 F.3d at 319.  The discretionary function exception, as set

---

[10]  Although the Stafford Act's discretionary function exception seemingly duplicates the FTCA's provision, its separate existence highlights the inherently discretionary and policy-laden nature of disaster response actions.  *See Sunrise Village Mobile Home Park, L.C. v. United States*, 42 Fed. Cl. 392, 399 (1998) (it is "unquestionable that the disaster relief provided under the Stafford Act is grounded in social, economic, and political policy"); *City of San Bruno v. FEMA*, 181 F. Supp. 2d 1010, 1015 (N.D. Cal. 2001) ("allocation of limited resources among disaster victims is clearly a matter involving policy judgment").
Consistent with that analysis, the following line of cases all involve claims for injunctive relief or for damages under the FTCA, arising out of FEMA's alleged negligent or wrongful discretionary decisions under the Stafford Act made after Hurricane Katrina.  All of these courts invoked the discretionary function exception and dismissed the claims under Fed. R. Civ. P. 12(b)(1) ruling that FEMA's decisions under the Stafford Act are inherently susceptible to policy analysis.  *See St. Tammany Parish v. FEMA*, 556 F.3d 307, 325 (5th Cir. 2009) (decisions related to the extent of actions necessary to protect public health are "exactly the type" of policy considerations that the discretionary function exception shields from judicial scrutiny); *Freeman v. United States*, 556 F.3d 326, 333, 340 (5th Cir. 2009) (allocation of limited resources in the aftermath of Katrina are the types of decisions the discretionary function exception was designed to protect); *In re Katrina Canal Breaches Consol.,* 2008 WL 2186400 *5 (E.D. La. 2008) (Duval, J.) (FTCA claims for alleged failure to competently respond to Hurricane Katrina barred by discretionary function exception because the Stafford Act imposes no mandatory requirements and Government "shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function"); *Johnson v. FEMA*, 2007 WL 1592978 * 2 (E.D. La. 2007) (Vance, J.) (same); *Hillard v. United States*, Civ. Action No. 06-2576, Order at 5 (E.D. La.) (Lemon, J.) (same) (Rec. Doc. 138); *Armstead v. Nagin*, 2006 WL 3861769 * 6 (E.D. La. Dec. 29, 2006) (Duval, J., approving and adopting, in relevant part, the Report and Recommendation of Magistrate Judge Wilkinson) (same).

forth in the FTCA, provides that sovereign immunity will not be waived for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, ***whether or not the discretion involved be abused.***

28 U.S.C. §2680(a) (emphasis added); *see also* 42 U.S.C. §5148.  The discretionary function exception excises from the FTCA's waiver of sovereign immunity and applies to any claim that challenges conduct that is (1) discretionary, and (2) "susceptible to policy analysis."  *See In re FEMA Trailer Formaldehyde Products Liability Litigation*, 583 F.Supp.2d at 768-69; *see also Gaubert v. United States*, 499 U.S. 315, 325 (1991); *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009); *Andrade v. Chojnacki*, 338 F.3d 448, 457(5th Cir. 2003); *Baldassaro v. United States*, 64 F.3d 206, 208, 211 (5th Cir. 1995).  As this Court has recognized, "[t]he purpose of this statutory reservation of sovereign immunity is to protect against 'judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'"  Order at 13 (citing *Gaubert*, 499 U.S. at 323 and *United States v. S.A. Empresa De Viacao Rio Grandense* ("*Varig Airlines*"), 467 U.S. 797, 814 (1984)).

## I.     Part One of the Discretionary Function Exception – Discretionary Conduct.

The discretionary function exception covers only conduct that "'involves an element of judgment or choice.'"  *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 583 F.Supp.2d at 768 (citing *Gaubert*, 499 U.S. at 322 and *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)); *accord Freeman*, 556 F.3d at 337; *Baldassaro*, 64 F.3d at 208.  A government

17

employee exercises discretion, *i.e.*, uses judgment, and makes choices when he or she acts pursuant to a federal statute, regulation, or policy that does not prescribe a specific course of conduct. Unless the statute, regulation or policy mandates a "specific direction" for the employee to take, the employee's conduct is discretionary. *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005); *see also Gaubert*, 499 U.S. at 322; *Freeman*, 556 F.3d at 337; *Rich v. United States*, 119 F.3d 447, 450 (6th Cir. 1997); *ALX El Dorado, Inc., v. Southwest Sav. & Loan Ass'n*, 36 F.3d 409, 411-12 (5th Cir. 1994). Discretion is only removed when "a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,'" because in that circumstance, the employee must follow a clearly prescribed course. *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536); *see also Freeman*, 556 F.2d at 337.

As this Court has previously determined, the applicable statutes, regulations, and policies authorized FEMA to issue manufactured housing units, travel trailers and park model units to disaster aid applicants for use as temporary emergency housing and that the decision is susceptible to policy analysis. *See In re FEMA Trailer Formaldehyde Products Liability Litigation*, 583 F.Supp.2d 769-73. Furthermore, the applicable statutes, regulations, and policies imposed no mandatory and specific course of conduct that FEMA was required to take in response to formaldehyde concerns or complaints; rather, the applicable provisions provided FEMA with discretionary to determine what action, if any, should be taken. *Id*. at 774. Congress, through the Stafford Act, 42 U.S.C. §5174, explicitly vested FEMA with discretionary authority and authorized FEMA to make discretionary decisions regarding temporary emergency housing assistance "based on considerations of cost effectiveness, convenience to the individuals and households, and such other factors as . . . [it] may

18

consider appropriate." 42 U.S.C. §5174(b)(2)(A). The applicable regulations explicitly provide that

FEMA may use "[m]obile homes, travel trailers, and other manufactured housing units," 206 CFR

§101(g)(2), as emergency housing and that, in determining the appropriate assistance,

> FEMA shall determine the appropriate types of housing assistance to be
> provided under this section based on considerations of cost-effectiveness,
> convenience to the individuals and households and the suitability and availability
> of the types of assistance. . . . Temporary housing and repair assistance shall be
> utilized to the fullest extent practicable before other types of housing assistance.

44 CFR §206.110(c).

## II.   Part Two of The Discretionary Function Exception – An Objective Legal Analysis of The Alleged Wrongful Conduct.

Whether an act is susceptible to policy considerations is determined by the nature of the

conduct at issue, not the decision-makers' identity, status, or their subjective intent. *See In re FEMA*

*Trailer Formaldehyde Products Liability Litigation*, 583 F.Supp.2d at 768; *Gaubert*, 499 U.S. at

322, 325; *Freeman*, 556 F.3d at 441. "'[I]t is the nature of the conduct, *rather than the status of*

*the actor*,' that governs whether the exception applies." *Id.* (emphasis added) (citing *Gaubert,* 499

U.S. at 325, *Varig Airlines*, 467 U.S. at 813, and *Baldassaro*, 64 F.3d at 211); *see also Freeman*,

556 F.3d at 341 n.15. "The focus of the inquiry is *not on the agent's subjective intent* in exercising

the discretion conferred by statute or regulation, *but on the nature of the actions taken and on*

*whether they are susceptible to policy analysis*." *Gaubert*, 499 at 325 (emphasis added); *see*

*also Freeman*, 556 F.3d at 342-43 (affirming denial of discovery request to "flesh out" evidence to

determine whether mistakes resulted from operational negligence). Indeed, whether the decision-maker

*actually* considered any specified policies is irrelevant, because the challenged conduct is analyzed

objectively.  This objective legal analysis does not allow for any evaluation of the considerations on

which the decision-maker actually based his conduct in any given instance.  *See Gaubert*, 499 U.S. at

325; *Macharia v. United States*, 334 F.3d 61, 67 (D.C. Cir. 2003); *Lesoeur v. United States*, 21

F.3d 965, 968-69 (9th Cir. 1994); ; *Smith v. Johns- Manville Corp.*, 795 F.2d 301, 308-09 (3d Cir.

1986); *Armstead*, 2006 WL 3861769 at * 5 (the Stafford Act, 42 U.S.C. §5142 "clearly precludes

federal governmental liability for its action or inaction in providing disaster relief").  It is not a question of

fact; as the Fifth Circuit explained in *Freeman*, an actual decision need not be reviewed; decisions

regarding the feasibility, safety, benefits of providing federal aid "in the aftermath of a national disaster

are grounded in social, economic, and public policy . . . [and] are 'susceptible to policy analysis', ***even***

***if the specific decisions were not the result of such a reasoned analysis***."  556 F.3d at 341

(emphasis added) (citing *Gaubert*, 499 U.S. at 325; *Shansky v. United States*, 164 F.3d 688, 692

(1st Cir. 1999) ("[t]he critical question is whether the acts or omissions that form the basis of the suit are

susceptible to a policy-driven analysis, not whether they were the end product of a policy-driven

analysis").[11]

       Conduct is cordoned off as being susceptible to policy analysis if it is "the kind of conduct that

can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 325.

---

[11]  *See also Rosebush v. United States*, 119 F.3d 438, 444 (6th Cir.1997) ("[t]he proper inquiry is whether the challenged actions are 'susceptible to policy analysis,' not whether they were the result of a policy analysis"); *Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir.1993) (holding that "it is unnecessary for government employees to make an actual 'conscious decision' regarding policy factors" for it is "irrelevant whether the alleged failure ... was a matter of 'deliberate choice,' or a mere oversight"); *Richardson v. United States*, 943 F.2d 1107, 1111 (9th Cir. 1991) ("[t]he discretionary function exception may apply 'in the absence of a conscious decision'") (quoting *Kennewick Irrig. Dist. v. United States*, 880 F.2d 1018, 1028 (9th Cir. 1989); *accord Harrell v. United States*, 443 F.3d 1231, 1236 (10th Cir. 2006).

Decisions that "implicate social, economic, or political policies" or that "were undertaken for policy reasons of primary concern" to a Government agency are protected from suit under the FTCA. *See id.* at 332. When agency policies, coupled with relevant statutory provisions, establish governmental policy, that policy "is presumed to have been furthered when" Government employees "exercised their discretion to choose from various courses of action" in response to the policy. *Id.* "[W]hen established government policy allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when he exercises that discretion." *Baldassaro*, 64 F.3d at 211 (citing *Gaubert*, 499 U.S. at 324).

This Court indicated that to satisfy the second-prong of the discretionary function analysis FEMA's issuance and interaction with McGraw regarding the EHU should be consistent with FEMA's general policy goal to provide safe and habitable temporary emergency housing. The record demonstrates that FEMA's conduct was consistent with this general policy. Shortly after receipt of the initial formaldehyde complaint from a trailer occupant in March 2006, FEMA learned and reasonably believed that its contractor CH2M Hill aired out and vented all trailers prior to issuing them to disaster aid applicants. Exh. 2, March 20, 2006, E-Mail from CH2M Hill to FEMA at SHAW 013521; Exh. 3, Boyle Depo. at 132-35:12-12. Thus, because McGraw's trailer was installed by CH2M Hill, FEMA had the discretion to assume that the trailer was aired out and vented before McGraw moved into the unit.

Further, as part of the installation/move-in process, McGraw was provided with a "Trailer Users Guide" and the "Keystone Owners Manual." Exh. 4, McGraw Depo. 205-07:22-17;200-01:8-8; 210:7-20; Exh. 5, Trailer Users Guide at MCGRAW000184; Exh. 6, Owners Manual at

MCGRAW_EX-000013.  The person responsible for moving McGraw into the unit reviewed the

"Trailer Users Guide" with McGraw, and instructed him to read and review the Keystone Owners

Manual.  Exh. 4, McGraw Depo. 205-07:22-17;200-01:8-8; 210:7-20.   Both of these documents

instruct occupants to air out and vent the unit on a regular basis.  Exh. 4, McGraw Depo. 205-07:22-

17;200-01:8-8; 210:7-20.  The Trailer User Guide and Keystone Owner's Manual, as well as other

documents issued to McGraw, also provided telephone numbers for him to call if he had any problem,

concern or defect.  Exh. 5, Trailer Users Guide at MCGRAW000184-98 (bottom of every page of the

document had following information "MAINTENANCE HOTLINE 1-800-774-3249"); Exh. 6,

Owners Manual at MCGRAW_EX-000013, 015, 011, 030, 122-23; Exh. 12, 2007 Formaldehyde

Flyer.  Further, a government contractor was responsible for maintaining the trailer, and McGraw

regularly interacted with representatives of the contractor.  Exh. 4, McGraw Depo. 221-23:22-10.

During the entire time McGraw occupied the trailer, he never made any complaints to FEMA, the

Government Contractors, or Keystone about formaldehyde, odors, or any potential health concerns

associated with the trailer.  Exh. 4, McGraw Depo. 208-10:20-20; 221-23:22-10; 219-20:25-9.

 Moreover, FEMA issued the trailer to McGraw with the requirement that he vacate the unit as

soon as other adequate alternative housing became available.  Exh. 13, Temp. Housing Agreement at

MCGRAW_EX-000169; Exh. 14, Emergency Shelter Agreement at MCGRAW_EX-000168; *see*

*also* Exh. 4, McGraw Depo. 258-61:11-14.  At his deposition McGraw acknowledged that he could

have lived with his niece, but nevertheless, and in apparent violation of his agreement with FEMA,

voluntarily chose to remain in the trailer.  Exh. 4, McGraw Depo. 266-67:21-14.

 In addition, commencing in Spring 2006 and continuing thereafter, formaldehyde was a subject

of public concern, and numerous press releases that encouraged occupants to air out and vent the units. Exh. 7, June 2006, Press Release; *see also* June 13, 2006, Sierra Club Letter at FEMA 123-000001 - 15 (collect of articles referencing FEMA press releases) (Rec. Doc. 1545-21).  In September 2006, FEMA followed up those press reports and distributed a formaldehyde brochure to trailer occupants providing occupants with information about formaldehyde and actions to take to reduce formaldehyde levels; the brochure urged occupants to seek medical treatment if they had any health concerns.  Exh. 8, Bonomo Dec. ¶¶2-6; Exh. 9, 2006 Formaldehyde Brochure.  In July 2007, FEMA distributed a formaldehyde flyer to trailer occupants and that document was delivered to McGraw's trailer on July 22, 2007.  Exh. 10, Larson Dec. ¶¶2-8;. Exh. 11, Molina Dec. ¶¶2-5.  This flyer was similar to the September 2006 brochure, however, it additionally provided a telephone number and urged occupants to call that number if they had any health concerns or wanted to vacate and move out of their trailer. Exh. 12, 2007 Formaldehyde Flyer.

The record demonstrates that FEMA, in providing McGraw with temporary emergency housing acted consistently with its desire to provide safe and habitable temporary emergency housing. The one overarching fact is that the most effective health and safety response to formaldehyde in a structure such as a trailer is to open the windows and doors and air out the unit.  *See supra* at 6 n.4. Consistent with this fact, FEMA, reasonably believed that the unit was aired out and vented before it was issued to McGraw, that trailer occupants such as McGraw were instructed to air out and vent the unit, and took steps to provide trailer occupants with additional information regarding formaldehyde. Exh. 2, March 20, 2006, E-Mail from CH2M Hill to FEMA at SHAW 013521; Exh. 3, Boyle Depo. at 132-35:12-12; Exh. 5, Trailer Users Guide at MCGRAW000187, 190, 198; Exh. 6, Owners

23

Manual at MCGRAW_EX-00061, 101, 125-126.  Significantly, notwithstanding the wealth of information provided,  *McGraw never made any complaint* about formaldehyde, formaldehyde type odors in the unit, or health problems that may have been associated with the trailer to either FEMA or to any government contractor that was responsible for the unit.  Exh. 4, McGraw Depo. 208-10:20-20; 221-23:22-10; 219-20:25-9.

The Fifth Circuit decisions make clear that issues involving the identification of and response to health and safety concerns inherently involve weighing and balancing of policy concerns, and as such any such decisions are protected from judicial review by the discretionary function exception.  *See Guile v. United States*, 422 F.3d 221 (5th Cir. 2005) (duty to provide "safe environment" environment protected by discretionary function exception); *Garza v. United States*, 161 Fed. Appx. 341, 2005 WL 3478009 (5th Cir. 2005) (decision regarding action to keep prisoner "safe and free from harm" protected by discretionary function exception); *Hix v. Army Corps. of Engineers*, 155 Fed. Appx. 121 (5th Cir. 2005) (duty to ensure "public safety" protected by the discretionary function exception).  In the instant case the undisputed evidence shows that FEMA had no reason to believe that the EHU issued to McGraw was defective or constituted a health hazard, but nevertheless it took action consistent with its desire to provide safe and habitable temporary emergency housing units.  The actions FEMA took are susceptible to policy analysis; accordingly, McGraw's claims are barred by the discretionary function exception.

## CONCLUSION

For all the reasons set forth herein, the Court should grant the United States' motion and dismiss McGraw's remaining FTCA claims for lack of subject matter jurisdiction.

24

Dated:  April 28, 2010.                                  Respectfully Submitted,

TONY WEST                                                ADAM BAIN
Assistant Attorney General, Civil Division               Senior Trial Counsel

J. PATRICK GLYNN                                         MICHELLE BOYLE
Director, Torts Branch, Civil Division                   ADAM DINNELL
                                                         MICHELE GREIF
DAVID S. FISHBACK                                        JONATHAN WALDRON
Assistant Director                                       Trial Attorneys

OF COUNSEL:                                              //S// Henry T. Miller
                                                         HENRY T. MILLER (D.C. Bar No. 411885)
JORDAN FRIED                                             Senior Trial Counsel
Associate Chief Counsel                                  United States Department of Justice
                                                         Civil Division – Torts Branch
JANICE WILLIAMS-JONES                                    P.O. Box 340, Ben Franklin Station
Senior Trial Attorney                                    Washington, D.C. 20004
Federal Emergency Management Agency                      Telephone No:  (202) 616-4223
Department of Homeland Security                          E-mail:  Henry.Miller@USDOJ.Gov
Washington, D.C. 20472
                                                         Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

//S// Henry T. Miller
HENRY T. MILLER (D.C. Bar No. 411885)