UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION "N" (5)<br><br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT RELATES TO:

*Nunnery, et al. v. Keystone RV Industries., et al.,*
**Case No. 09-3871 (McGraw)**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### UNITED STATES OF AMERICA'S STATEMENT OF FACTS IN SUPPORT OF ITS MOTION TO DISMISS DAVID MCGRAW'S REMAINING FTCA CLAIMS BECAUSE THEY ARE BARRED BY THE DISCRETIONARY FUNCTION EXCEPTION

Defendant the United States of America ("United States") hereby submits this statement of facts in support of its Fed. R. Civ. P. 12(b)(1) and 12(h)(3) motion to dismiss plaintiff David McGraw's Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b)(1), 2671-80, claims for lack of subject matter jurisdiction because they are barred by the discretionary function exception. 28 U.S.C. § 2680(a).

### FACTS

1. The applicable statutes, regulations, and policies authorized FEMA to use and issue to disaster aid applicants manufactured housing, travel trailers, and park model units for use as temporary emergency housing units ("EHUs"). *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 583 F.Supp.2d at 785-87.

2.      The applicable statues, regulations, and policies impose no mandatory and specific course of conduct for responding to formaldehyde concerns in EHUs; rather, the applicable provisions provide FEMA with discretion to determine what action, if any, should be taken in response to these concerns or complaints.  *Id*. at 769-71, 773-74, 776, 781, 785-87.

3.      As a result of the damage to housing stock caused by Hurricanes Katrina and Rita, FEMA purchased both trailers constructed at FEMA's request and trailers constructed for sale to the public.  *See* Dec. McCreary ¶¶1-4, 6 (Rec. Doc. 196-14); Request for Quotation (Rec. Doc. 196-17).  The trailers built for sale to the public are often referred to as "off-the-lot" or "camper" units.  *See* Dec. McCreary ¶¶1-4, 6 (Rec. Doc. 196-14); Exh. 4, McGraw Depo. 166-68:14-18; 174:3-23.  Unlike units constructed for FEMA an "off-the-lot" or "camper" unit has holding tanks to dispose of waste water and sewage – grey and black water tanks and camper style toilets. *See* Dec. McCreary ¶¶1-4, 6 (Rec. Doc. 196-14); Request for Quotation (Rec. Doc. 196-17); Exh. 4, McGraw Depo. 166-68:14-18; 174:3-23. 213:17-24.

4.      McGraw's trailer, assigned FEMA Barcode 1345768, and vehicle identification number ("VIN") 4YDT260226N132486, was an "off-the-lot," "camper" model manufactured by Keystone.  *See* Dec. McCreary ¶¶1-4, 6 (Rec. Doc. 196-14); Request for Quotation (Rec. Doc. 196-17); Exh. 4, McGraw Depo. 166-68:14-18; 174:3-23. 213:17-24 ; Ex. 1, Installation Work Order at FEMA217-000001, 04.  FEMA purchased that unit on or before February 20, 2006, from Scotty's Camper Sales, Inc., New Iberia, Louisiana.  Exh. 1, Installation Work Order, FEMA217-000004.

5.      On March 20, 2006, FEMA contacted its Individual Assistance/Technical Assistance Contractors ("IA/TACs")  to determine what actions, if any, they were taking to address formaldehyde

concerns. Exh. 2, March 20, 2006, E-Mail from FEMA to CH2M Hill at SHAW 013520-21; Exh. 3, Boyle Depo. at 132-35:12-12. That same day, CH2M Hill responded:

> We are currently airing out the TT in the NAS Yard as part of the inspection process. By turning on the AC and exhaust fan in the bathroom, the smell would just about in all cases clear up in 24 hour period or in most cases less then 24 hours. We also advise the occupants during the monthly PMI and in the maintenance manual (see attached) to ventilate the TT to control the build up of moisture, which will also help to reduce the level of off gassing of chemicals.

Exh. 2, March 20, 2006, E-Mail from CH2M Hill to FEMA at SHAW 013521[1]; Exh. 3, Boyle Depo. at 132-35:12-12.[2]

6. On or about July 27, 2006, CH2M Hill installed the Keystone trailer, FEMA Barcode 1345768, VIN 4YDT260226N132486 at 5212 Dauphine Street, New Orleans, Louisiana. Exh. 1, Installation Work Order at FEMA217-000001 to 002. That trailer was more than five months old when it was installed. Exh. 1, Installation Work Order at FEMA217-000004.

---

[1] The document attached to the CH2M Hill e-mail and provided to FEMA on March 20, 2006, was a "Trailer Users Guide" that instructed trailer recipients that they must regularly air out and vent the trailer to prevent condensation and mold. Ex. 5, March 20, 2006, E-Mail CH2M Hill to FEMA at Shaw 013523-538.

[2] As addressed in other filings, venting and airing out the trailer is the recommended response to formaldehyde concerns according to private entities such as the Recreation Vehicle Industry Association ("RVIA"), Trailer Manufacturers such as Fleetwood Enterprises, Inc., and the Sierra Club, and also according to government agencies such as the Centers for Disease Control/Agency for Toxic Substances and Disease Registry ("ATSDR"), the United States Environmental Protection Agency ("EPA"), and the Consumer Product Safety Commission ("CPSC"). See July 22, 2009, FEMA E-Mail at FEMA17-005982, 05984 (1543-19); Fleetwood Rule 30(b)(6) Depo. at 110-11:17-19; 141-42:16-5 (Rec. Doc. 1543-13); Fleetwood Occupancy Manual at 03-2 (Rec. Doc. 1543-14); Fleetwood Formaldehyde Warning at FLE-00005672 (Rec. Doc. 1543-15); Sierra Club Formaldehyde Flyer at FEMA123-000006 (Rec. Doc. 1543-20); ATSDR, Formaldehyde Toxicological Profile at ATSDR-00025, ATSDR-000329 (Rec. Doc. 1543-16); EPA Fact Sheet at EPA-000003 (Rec. Doc. 1543-17); Consumer Product Safety Commission, An Update on Formaldehyde (rev. 1997) at CPSC-000005 (Rec. Doc. 1543-18).

7.      As part of the installation/move-in process, CH2M Hill provided McGraw with a "Trailer Users Guide Version 5." Exh. 4, McGraw Depo. 205-07:22-17. CH2M Hill reviewed and went over that document with McGraw as part of the move-in process. Exh. 4, McGraw Depo. 205-07:22-17. That document listed a telephone number on the front page that McGraw was advised to call in the event he experienced any problems with the trailer. Exh. 4, McGraw Depo. 210:7-20. That document also instructed occupants to air out and vent the unit on a regular basis to prevent condensation and mold. Exh. 5, Trailer Users Guide at MCGRAW000187, 190, 198.[3]

8.      As part of the installation/move-in process, CH2M Hill provided McGraw with the Keystone Owners Manual and instructed him to review it. Exh. 4, McGraw Depo. 200-01:8-8. The Keystone Owners Manual told occupants to air out and vent the unit on a regular basis to prevent condensation and mold. Exh. 6, Owners Manual at MCGRAW_EX-00061, 101, 126. The Keystone Owners Manual also contained an Appendix entitled "Chemical Sensitivity Issues." Exh. 6, Owners Manual at MCGRAW_EX-000125. The pertinent portion of that Appendix instructed occupants that:

> Many individuals are sensitive to the out-gassing from common construction materials used in the construction of RV's. This occurs most frequently in hot weather and after a unit has been closed up for extended periods. ***Chemical sensitivity is an individual reaction.*** Common symptoms include but are not limited to burning eyes, respiratory irritations and other allergic reactions. These conditions are not manufacturing defects. A common myth is that formaldehyde is used in the manufacturing of paneling and other building materials. *Keystone RV **does not*** use products containing formaldehyde.

---

[3] This "Trailer Users Guide" is the guide that CH2M Hill prepared and told FEMA on March 20, 2006, that it provided to disaster aid applicants when they move into a trailer; this guide was in fact provided to McGraw in July 2006 when he moved into the trailer. *Compare* Exh. 2, March 20, 2006, E-mail from CH2M Hill to FEMA and attached "Trailer Users Guide" at Shaw 013523-538 *with* Exh. 4, McGraw Depo.205-07:22-17; Exh. 5, Trailer Users Guide at MCGRAW000187.

4

> **Suggested Solutions:**
>
> Frequent fresh air ventilation. Open the windows and roof vents when possible. . . .

Exh. 6, Owners Manual at MCGRAW_EX-000125 (all emphasis original). *See also* Exh. 4, McGraw Depo. 200-01:8-8; 221-25:4-24.

9. On July 27, 2006, McGraw signed an "Emergency Shelter – Agreement to Rules of Occupancy." McGraw, in signing that document, acknowledged and agreed that:

> FEMA is providing this unit as a temporary shelter because the President declared a major disaster or emergency in the area and I am not able to live in my residence due to this event. . . . I agree that I . . . must accept other housing options, when they become available.

Exh. 14, Emergency Shelter Agreement at MCGRAW_EX-000168; *see also* McGraw Depo. 257-58:11-10.

10. In August 2006, FEMA distributed a formaldehyde brochure to trailer occupants. *See* Exh. 8, Bonomo Dec. ¶¶2-6. That brochure provided information about formaldehyde in trailers, identified actions that could be taken to reduce formaldehyde levels, and encouraged occupants to consult and talk with a doctor if they had any health concerns. See Exh. 8, Bonomo Dec. ¶¶2-6; Exh. 9, 2006 Formaldehyde Brochure.

11. On April 11, 2007, McGraw signed a Temporary Housing Occupancy Agreement. Exh. 13, Temp. Housing Agreement at MCGRAW_EX-000169. McGraw in signing that document agreed and acknowledged that:

> 2. All parties agree that this Agreement is not intended to, nor does it create, a relationship of Landlord and Tenant between FEMA and Occupant.

5

>    Occupant further agrees and understands that this Agreement does not create a property interest of Occupant in the unit.
>
>    3.   Occupant understands that FEMA is providing this unit as temporary housing assistance to respond to the disaster-related housing needs of Occupant.  Temporary housing assistance, including direct housing assistance, is a discretionary benefit . . . Occupant acknowledges that the premises provided herein are temporary and it is expressly understood that this Agreement in no way guarantees continued assistance.
>
>    4.   ***Occupant agrees to diligently work to obtain permanent accommodations at the earliest possible date. Occupant further agrees to accept adequate alternate housing when it becomes available.***

Exh. 13, Temp. Housing Agreement at MCGRAW_EX-000169 (emphasis added); *see also* Exh. 4, McGraw Depo. 258-61:11-14.

   12.   On July 22, 2007, FEMA delivered a formaldehyde flyer to the McGraw's trailer. Exh. 10, Larson Dec. ¶¶2-8;. Exh. 11, Molina Dec. ¶¶2-5.  That document warned that trailers contain formaldehyde, provided instructions on actions to take to reduce formaldehyde levels in the unit, encouraged occupants to seek medical advice if they had health concerns, and provided a telephone number for occupants to call if they had health concerns or wanted to vacate the trailer and move into alternative temporary emergency housing.  Exh. 10, Larson Dec. ¶¶2-8;. Exh. 11, Molina Dec. ¶¶2-5; Exh. 12, 2007 Formaldehyde Flyer.

   13.   McGraw never contacted FEMA, the Government's contractors, or Keystone to complain or voice concern about formaldehyde, or about anything that could be related to formaldehyde, including odors or any health problems that occurred when he lived in the trailer.  Exh. 4, McGraw Depo. 213-14:25-17; 219-20:25-9; 221-23:4-10.  McGraw testified that:

   Q   From your earlier testimony, I gather that somebody came out every month to

|   |   |
|---|---|
|   | inspect your trailer and your sister's trailer? |
| A | Yes. |
| Q | And at that time, you were generally present? |
| A | Yes. |
| Q | And you signed off on those inspections? |
| A | Yes. |
| Q | At any point in time did you make any complaints to that inspector about problems with the trailer? |
| A | No. |
| Q | You indicated earlier that you may have mentioned that you had a rodent infestation problem to the maintenance person. Do you recall that? |
| A | Yes. |
| Q | Okay. So you did make a complaint about the rodents? |
| A | Yes. |
| Q | Other than complaining about the rodents to the maintenance person, did you complain about any other problems with the trailer? |
| A | At one time I complained about the trailer when they was about to take the trailer. The heater went out. |
| Q | Okay. So you complained about rodents and you also complained about the heater? |
| A | Yes. |
| Q | Besides those two complaints, any other complaints? |
| A | That's it. |

Q        Okay. At any point in time did you ever call the maintenance hotline -- And let me step back. I apologize. Okay. This Exhibit 10 [Trailer Users Guide] has on it a maintenance hotline, an 800 number; is that right?

A        Yes.

Q        At any point did you call the maintenance hotline and say, "I have a problem with the trailer"?

A        No.

Q        At any point in time did you call FEMA and say, "I have a problem with the trailer"?

A        No.

Exh. 4, McGraw Depo. 208-10:20-20. McGraw further testified that:

Q        Now, I have looked through your Plaintiff Fact Sheet. Did you ever suffer burning eyes in this unit?

A        Yes, sometimes.

Q        Okay. Did you ever complain to FEMA about that?

A        No.

Q        Did you ever complain to the maintenance contractor about that?

A        No, because I really thought it had no connection to the trailer until I saw it on a commercial. Like I say, I thought I was catching a cold or something.

Q        Got it. But it was here in this manual [Keystone Owners Manual] that you had, it explained that that might happen; isn't that right?

A        Yes.

Q        It [Keystone Owners Manual] also said "respiratory irritations and other allergic reactions." Do you see that?

A        Yes.

Q	Did you ever complain -- Did you ever suffer any respiratory irritation or what you believe are allergic reactions when you were in the trailer?

A	The only thing that occurred in the trailer was sinus and red eyes and headaches.

Q	Okay. And other than the sinus, red eyes, headaches, and I guess what you said, burning eyes earlier, did you suffer any other symptoms in the trailer?

A	Not as far as I know.

Q	And you never complained to FEMA about those symptoms?

A	No.

Q	You never complained to the maintenance contractor about those symptoms?

A	No.

Exh. 4, McGraw Depo. 221-23:22-10; *see also* Exh. 4, McGraw Depo. 219-20:25-9 (McGraw acknowledged that the Keystone Owners Manual provided contact information for Keystone and urged occupants to contact Keystone if they had any problems with the trailer; he also acknowledged, however, that he never contacted Keystone).

14. During his occupancy of the trailer McGraw believes he had access to a free medical clinic sponsored by FEMA, but never sought any medical advice or care. Exh. 4, McGraw Depo. 214-15:14-11; 217-18:12-7; 293-95:20-18; 327:12-25.

15. McGraw had access to adequate alternative housing during his occupancy of the trailer; specifically, he acknowledges that he could have moved out of the trailer and stayed with his niece, but chose to remain in the trailer because he did not want to impose upon her and wanted to lived by himself. Exh. 4, McGraw Depo. 266-67:21-14.

9

16.     McGraw vacated the trailer sometime between July 2007 and December 2007, after he completed repairs to his house.  *See* First Supplemental and Amending Complaint for Damages ¶14 ("Supp. Complt.") (trailer vacated in July 2007) (Rec. Doc. 10274); Exh. 4, McGraw Depo. 69-70:23-9 (trailer vacated in November or December 2007).

| | |
|---|---|
| Dated: April 28, 2010. | Respectfully Submitted, |
| TONY WEST<br>Assistant Attorney General, Civil Division | ADAM BAIN<br>Senior Trial Counsel |
| J. PATRICK GLYNN<br>Director, Torts Branch, Civil Division | MICHELLE BOYLE<br>ADAM DINNELL<br>MICHELE GREIF |
| DAVID S. FISHBACK<br>Assistant Director | JONATHAN WALDRON<br>Trial Attorneys |
| OF COUNSEL: | *//S// Henry T. Miller*<br>HENRY T. MILLER (D.C. Bar No. 411885) |
| JORDAN FRIED<br>Associate Chief Counsel | Senior Trial Counsel<br>United States Department of Justice<br>Civil Division – Torts Branch |
| JANICE WILLIAMS-JONES<br>Senior Trial Attorney<br>Federal Emergency Management Agency<br>Department of Homeland Security<br>Washington, D.C. 20472 | P.O. Box 340, Ben Franklin Station<br>Washington, D.C. 20004<br>Telephone No: (202) 616-4223<br>E-mail: Henry.Miller@USDOJ.Gov |
| | Attorneys for the United States of America |

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

*//S// Henry T. Miller*
HENRY T. MILLER (D.C. Bar No. 411885)