UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 18731 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Castanel, et. al. v Recreation by Design, LLC, et. al* | * | |
| Docket No. 09-3251 | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO RECREATION BY DESIGN, LLC'S *DAUBERT*
MOTION TO EXPERT TESTIMONY OF DR. LAWRENCE MILLER**

Plaintiff Earline Castanel responds to Recreation By Design, LLC's (hereinafter "Defendant" or "RBD") *Daubert* Motion to exclude the expert testimony of Dr. Lawrence Miller; and, in support would show:

**I.
EVIDENCE**

Exhibit A    Excerpts from the deposition of Earline Castanel

Exhibit B    Excerpts from the deposition of Dr. Joseph Gautreaux

Exhibit C    Affidavit of Dr. Lawrence Miller, M.D.

Exhibit D    Excerpts from the deposition of Dr. Bowers

Exhibit E    Excerpts from the deposition of Dr. Miller

Exhibit F    Curriculum Vitae of Lawrence G. Miller

Exhibit G    Operative Report

Exhibit H    Workplace Hygiene Report

1

## II.
## FACTUAL BACKGROUND

Plaintiff Earline Castanel has asserted claims against Recreation By Design, LLC, under the Louisiana Products Liability Act ("LPLA"). *See* Plaintiff's Complaint for Damages, R. Doc. 1, Docket No. 09-3251, P. 25. Specifically, Ms. Castanel claims that the Recreation By Design trailer she occupied from February, 2006, until March, 2007, due to its construction, composition, design, and lack of warnings, exposed her to dangerous levels of formaldehyde. *See* Plaintiff's First Supplemental and Amended Complaint, R. Doc. 9401, pp. 2-3.

Although Ms. Castanel suffered from sinus difficulties prior to living in her RBD trailer, her condition worsened during her residence in the trailer. See Exhibit A, p. 89. After moving out of the trailer, her sinus condition continued to degenerate, until Dr. Joseph Gautreaux, her treating physician, performed sinus surgery on March 31, 2010. *See* Exhibit A, pp. 122-23, 162-63; Exhibit F.

Dr. Lawrence Miller, Plaintiff's specific causation witness, interviewed and examined Ms. Castanel on January 13, 2010. *See* Exhibit C, p. CAST002313. From her exam, a review of her medical records, and a review of the scientific literature relating to formaldehyde, Dr. Miller concluded that Ms. Castanel had suffered an exacerbation of her rhinosinusitis due to the formaldehyde in her RBD trailer. *See* Exhibit C, p. 6.

Defendant now seeks to strike Dr. Miller's testimony on the basis of *Daubert*. Both the facts and the methodology on which Dr. Miller's opinions were based, however, are entirely reliable.

## III.
## ARGUMENT AND AUTHORITIES

A. <u>Defendant's motion to exclude Dr. Miller's testimony should be denied because the basis for his opinions concerning levels of formaldehyde were rational.</u>

Defendant erroneously claims that Dr. Miller's opinion was not founded on reliable determinations of either the level at which formaldehyde exposure is harmful, or the formaldehyde levels to which Ms. Castanel was exposed. Defendant's argument fails, however, because Dr. Miller's foundation for both was reliable.

1. *Dr. Miller identified the standards he relied on for determination of the harmful levels of formaldehyde exposure.*

For determining the harmful level of formaldehyde exposure, Dr. Miller relied on standards set by the Agency for Toxicology and Disease Registry ("ATSDR"). *See* Exhibit C, p. 5. He used the Minimal Risk Levels ("MRL's") specific to formaldehyde. *See* Exhibit C, p. 5. He explained that the MRL's represent the concentrations of a toxic substance under which no adverse health effects are likely to be produced over a specified period of exposure. *See* Exhibit C, p. 5. Defendant willfully ignores the necessary corollary to this statement, that concentrations above the MRL can be expected to produce adverse health effects. The ATSDR standards on which Dr. Miller relied thus provide a reasonable determination of the level at which formaldehyde is harmful.

Defendant merely "asserts that Dr. Miller's general reference to MRL's does not meet th[e] requirement" regarding harmful level of exposure. Defendant has failed to present any evidence, expert opinion or otherwise, supporting its assertion. Dr. Miller's identification of a reliable and recognized standard relating to formaldehyde's health effects thus comports with

*Daubert's* reliability requirement. *See* Daubert v. Merrell Dow Pharmaceuticals, Inc.*,* 509 U.S. 579, 592-93 (U.S. 1993).

    *2. Dr. Miller provided a rational estimate of Ms. Castanel's formaldehyde exposure level.*

Dr. Miller provided a reasonable estimate of the formaldehyde concentration to which Ms. Castanel was exposed. The standard for proving causation in toxic tort cases is "relatively lenient." *See* Slaughter v. Southern Talc Co.*,* 949 F.2d 167, 173 (5th Cir.1991). Although specific causation in a toxic tort case requires evidence of the levels to which the plaintiff was exposed, precise concentration measurements of the chemical are not required. *See* Curtis v. M&S Petroleum, Inc., 174 F.3d 661, 670-71 (5th Cir. 1999). "Circumstantial evidence can be used to establish injurious exposure." O'Neill v. Seariver Maritime, Inc**.,** 246 Fed.Appx. 278, 280 (5th Cir. 2007) *quoting* Curtis v. M&S Petroleum, Inc., 174 F.3d at 670.

In determining Ms. Castanel's exposure level, Dr. Miller relied on the data obtained by the Center for Disease Control ("CDC"). *See* Exhibit C, p. 4. In July of 2008, the CDC conducted a random sampling of formaldehyde levels in 519 FEMA trailers. *See* Exhibit C, p. 4. Using its direct measurements, the CDC reported a geometric mean of 77 ppb formaldehyde, with variations up to 590 ppb. *See* Exhibit C , p. 4. Dr. Miller noted that some trailers from every manufacturer measured levels greater than 100 ppb. Exhibit C, p. 4. Recognizing that the CDC itself considers its data to underestimate the formaldehyde levels of the trailers when in use, Dr. Miller rationally concluded that Ms. Castanel's formaldehyde exposure exceeded the MRL's for both intermediate (30 ppb) and chronic (8 ppb) exposure duration. Exhibit C, p. 4.

Defendant's criticism that Dr. Miller did not use the formaldehyde test results specific to Ms. Castanel's trailer is unfounded. The test results specific to Ms. Castanel's trailer were obtained over 2 1/2 years after the trailer had been abandoned. *See* Exhibit H. It is well known

that the amount of formaldehyde off-gassing decreases as the formaldehyde-containing materials age. The CDC conducted its testing in 2008, just a year after Ms. Castanel occupied the trailer. *See* Exhibit C, p. 4. Defendant has offered no evidence that the results obtained several years after Ms. Castanel occupied the trailer would have been a better predictor of Ms. Castanel's exposure than were the CDC results, obtained much closer to the time of Ms. Castanel's occupancy. Dr. Miller's choice of the earlier CDC results over the test results made years after the trailer was abandoned, therefore, was sufficiently rational to prevent exclusion under *Daubert. See* Daubert, 509 U.S. at 592-93.

> 3. *Dr. Miller's exposure standards and concentration levels provide a rational basis for his specific causation opinion.*

Dr. Miller identified the ATSDR's MRL's for formaldehyde as the reasonable standard for determining the concentration above which formaldehyde exposure is harmful. He looked to the CDC's formaldehyde measurements from a multitude of FEMA trailers to estimate Ms. Castanel's exposure level. Dr. Miller's testimony thus establishes a rational basis for both concentration levels that Defendant criticizes. Defendant's motion to exclude Dr. Miller's testimony on the basis of the exposure levels on which he relied should therefore be denied. *See* Daubert, 509 U.S. at 592-93.

> B. Defendant's motion to exclude Dr. Miller's testimony should be denied because his opinion that Ms. Castanel's rhinosinusitis was exacerbated was reliable.

Defendant erroneously claims that Dr. Miller relied on questionable facts as a basis for his opinions that Ms. Castanel's rhinosinusitis was exacerbated. One indicia of reliability is whether an expert relied on the type of facts reasonably relied on by other experts in his field. Allen v. Pa. Eng'g Corp., 102 F.3d 194, 198-99 (5th Cir.1996). Dr. Miller's opinion as to the

exacerbation if Ms. Castanel's rhinosinusitis was based in part on his interview and examination of her on January 13. 2010.  *See* Exhibit C, p. CAST002313.  During the interview, Ms. Castanel related that her sinus symptoms had increased in both frequency and severity soon after she moved into the trailer. *See* Exhibit C, p. CAST002313.  A patient history, such as the one obtained by Dr. Miller, is one of the primary and most useful tools in the practice of clinical medicine. *See* REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, pp. 452-53 (2nd ed. Federal Judicial Center (2000).  Dr. Miller's use of the clinical history he obtained from Ms. Castanel is therefore reliable. *See* Allen, 102 F.3d 194, 198-99

.Defendant faults Dr. Miller's opinion that Ms. Castanel's rhinosinusitis was exacerbated on the grounds that neither Dr. Bowers nor Dr. Gautreaux concurred.  It should be noted, however, that Dr. Bowers, Ms. Castanel's primary care physician, and Dr. Gautreaux, her ENT, were concurrently treating Ms. Castanel's sinus problems. *See* Exhibit C, p. 2; Exhibit D, pp. 85-86.  Neither had access to the other's records, nor did they consult each other concerning Ms. Castanel's treatment. *See* Exhibit D, pp. 85-86.  Their opinion as to the course of Ms. Castanel's condition was thus based on only half the facts concerning her medical complaints and treatments.  Dr. Miller, however, reviewed and relied on the medical records of both doctors. *See* Exhibit C, p. 2.  Dr. Miller's opinion was thus based on a much more complete foundation than was that of either Dr. Bowers or Dr. Gautreaux.

Dr. Miller based his opinion that Ms. Castanel's rhinosinusitis was exacerbated on the clinical history he obtained from Ms. Castanel, a methodology routinely used by physicians.  He further based his opinion on a more complete picture of her health than had either of her two treating physicians.  His opinion was based on both a reliable methodology and reliable facts.

Defendant's motion to exclude Dr. Miller's opinion concerning the exacerbation of her rhinosinusitis thus satisfied the *Daubert* criteria. *See* Daubert, 509 U.S. at 592-93.

C. Defendant's motion should be denied as to Ms. Castanel's fear of cancer.

Defendant argues that Dr. Miller is not qualified to give an opinion on the reasonableness of Ms. Castanel's fear of cancer because he is neither an oncologist nor a psychologist. This argument defies logic.

A fear of cancer claim is a type of mental anguish claim. *See* Smith v. A.C. & S., Inc., 843 F.2d 854, 859 (5th Cir. 1988). Dr. Miller testified that as part of his internal medicine training, he received training in psychology. *See* Exhibit E, p. 51. He has furthered his understanding of psychological issues via CME courses. *See* Exhibit E, pp. 52-53. He explained that internists routinely treat their patients' minds as well as their bodies. *See* Exhibit F, p. 49. In fact, dealing with psychological illness was a significant part of his internal medicine practice. *See* Exhibit F, p. 50. Dr. Miller's thus possesses specialized knowledge of psychological issues sufficient to opine on Ms. Castanel's fears.

Because a fear of cancer claim does not require proof that her exposure will more probably than not lead to cancer, Ms. Castanel's fear of cancer claim does not require the testimony of an oncologist. *See* Smith v. A.C. & S., Inc., 843 F.2d 854, 859 Fn. 3 (5th Cir. 1988). A fear of cancer claim requires only a showing that there is "any possibility of acquiring (the) disease, no matter how remote." Raney v. Walter O. Moss Reg'l Hosp., 629 So.2d 485, 491 (La.App. 3d Cir.1993). Dr. Miller's opinion that Ms. Castanel's fear is rational, *i.e.* that a possibility of acquiring cancer as a result of formaldehyde exposure exists, is based on the scientific literature supporting the relation between formaldehyde and an increased risk of

7

developing cancer. *See* Exhibit C, p. 6. As a Harvard-trained M.D., with a Masters Degree in environmental health from the School of Public Health of Boston University, Dr. Miller is exceptionally qualified to evaluate the link between formaldehyde and cancer in the scientific literature. *See* Exhibit F, p. 2. Dr. Miller is thus well-qualified to offer the required opinion, that a possibility of contracting cancer as a result of formaldehyde exposure exists. Raney, 629 So.2d at 491.

## IV.
## CONCLUSION

Dr. Miller used recognized standards relating to formaldehyde in determining the exposure level at which formaldehyde is harmful. The test results he chose to apply to Ms. Castanel's trailer were those obtained nearest the time of her occupancy. His opinion as to the exacerbation of Ms. Castanel's rhinosinusitis was based on a more complete set of records than was available to either of her two treating physicians. Since a fear of cancer claim requires only a determination that the possibility of contracting cancer from formaldehyde exists, Dr. Miller is more than qualified to offer the required opinion. Dr. Miller's testimony is thus based on a reliable methodology appropriately applied to reliable facts. Defendant's *Daubert* motion to exclude Dr. Miller's testimony should therefore be denied.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:   s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com


**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
MIKAL WATTS, Texas # 20981820
DENNIS REICH, Texas # 16739600

## CERTIFICATE OF SERVICE

I hereby certify that on <u>     April 30, 2010     </u>, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
