UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE:   FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| *Earline Castanel v. Recreation by Design LLC* | * | |
| Docket No. 09-3251; | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S RESPONSE TO DEFENDANT RECREATION BY DESIGN, LLC'S DAUBERT MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT PAUL HEWETT

Plaintiff Earline Castanel respectfully submits the following Response to Defendant Recreation by Design, LLC's Daubert Motion to Exclude the Testimony of Plaintiff's Expert Paul Hewett, Ph.D., and hereto states:

### INTRODUCTION

Plaintiff has designated Paul H. Hewett, Ph.D. for his expertise in statistical analysis. Dr. Hewett performed statistical analyses on the dataset of formaldehyde measurements from Recreation by Design travel trailers. *See* Exhibit A, Affidavit of Paul Hewett, Ph.D, CIH p. 2. The data, consisting of numerous separate exposure

1

measurements, was the result of formaldehyde testing conducted on travel trailers by various entities. The testing entities for which the data is publicly available include the Sierra Club, the Centers for Disease Control (CDC), and the Texas Parks & Wildlife Department. From this dataset, Dr. Hewett has drawn numerous conclusions that Recreation by Design ("Defendant") has not taken issue with respect to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993). See Hewett Report, Exhibit A, and Record Doc. 13600-1. Defendant takes issue with only (1) Dr. Hewett's not including formaldehyde measurements that were taken from the Castanel trailer, (2) Dr. Hewett's decay analysis; and, (3) Dr. Hewett's "reliance" on the Versar Study. As will be seen below, each of these criticisms is without merit.

## STANDARD OF ADMISSIBILITY

An expert must "by knowledge, skill, experience, training, or education" provide "scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 508 U.S. 579, 589-91 (1993). Prior to accepting the testimony of an expert witness, trial courts are charged with a "gatekeeper" function requiring a determination of whether an expert is sufficiently qualified and whether their opinion is based upon sound, reliable theory. *Daubert*, 509 U.S. at 589-91 (1993). As such, "[p]roposed testimony must be supported by appropriate validation –*i.e.*, good grounds." *Id*. at 590 (internal quotations omitted). The

2

court's role as gatekeeper, however, should not replace the adversary system. *Pipitone v. Biomatrix*, Inc., 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, H509 U.S. at 595. Defendant does not challenge Dr. Hewett's qualifications, their challenge is to his methodology and his "reliance" on the Versar study. As will be seen below, each of Defendant's criticisms is without merit.

### 1. Defendant Criticizes Dr. Hewett for Not Including Measurements from the Castanel Unit

Defendant criticizes Dr. Hewett for not including the formaldehyde measurements that were taken from the Castanel trailer in his analysis. This criticism is without merit. First and foremost, it should be noted that the formaldehyde measurements from the Castanel unit were not in the database when Dr. Hewett did his analysis. The Castanel unit was measured in January 2010 and the database Dr. Hewett used had been formulated long before that time. Furthermore, Dr. Hewett's report was due on January 29, 2010. Plaintiff did not receive Defendant's final test results on the Castanel unit until sometime around January 19, 2010. See Expert Report of defense expert Tony Watson, Exhibit B, attached hereto.

It should also be noted that the data set Dr. Hewett relied upon included 71 occupied and 105 unoccupied Recreation by Design travel trailers. Exhibit A, p. 19 & 20. Based upon this data, Dr. Hewett calculated summary statistics providing a mean,

3

median, and mode of formaldehyde measurements.  To state that since Dr. Hewett could have added one more data point so instead of 105 measurements he had 106 data points for unoccupied travel trailers and therefore is data is irrelevant or inadmissible borders on the ridiculous.  Defendant's Memorandum p. 7.

There are several items to note in responding to Defendant's criticism.  First, the summary statistics with regard to mean median and mode for occupied trailers would not have changed at all by the inclusion of an additional unoccupied trailer in the dataset.  Second, including one more unoccupied data point in the data in the unoccupied data set, would have resulted in virtually no change in the occupied dataset, i.e., mean median and mode.  Third, historically in this litigation, Defendants have maintained that it was the *occupied* data and not the *unoccupied* data that was relevant since they have previously alleged occupied data more clearly represented the formaldehyde levels existing while someone was living in the trailer.  Fourth, the Castanel unit was measured for formaldehyde in January 2010, almost two and one half years after Plaintiff moved out of the trailer.  It has been widely accepted by Plaintiff and Defense experts, and the United States' Centers for Disease Control (CDC) that the formaldehyde levels decrease with time.[1]   A formaldehyde measurement over two

---

[1]  The United States Centers for Disease Control wrote "[t]hese measured level probably underrepresent [sic] occupant exposures in the early months of occupation and even the average exposure over time the trailers were occupied because formaldehyde levels tend to be higher in newly constructed trailers and during warm weather."  July 2, 2008 Final Report by the Center for Disease Control and Prevention.

4

years after Plaintiff moved out cannot be said to accurately represent the conditions that existed while she lived there.  Fifth, the temperatures when these samples were taken, were very low, and it has also been widely accepted by the Plaintiff and Defense experts and the CDC that the amount of formaldehyde varies with temperature.  Lower levels formaldehyde levels are equated with lower temperatures and higher levels are reported with higher temperatures.  See CDC Report, *supra*. The temperatures were as low as 41 degrees Fahrenheit when the formaldehyde level in the Castanel unit was measured.   See Report of Defense Expert Tony Watson, Exhibit B, p. 18.  Furthermore, if Dr. Hewett had included the measurements from the Castanel trailer that were taken in January 2010, Defendant would have likely objected that such measurements taken almost two and half years after the time she moved out and when the temperatures were much cooler were not representative of the conditions of when she lived there.

Dr. Hewett calculated average formaldehyde levels for Recreation by Design travel trailers occupied and unoccupied.  He also calculated the number and percentage that were above the ATSDR and NIOSH levels of 0.008 ppm and 0.016 ppm.  Again none of the occupied data and statistics would have changed by the inclusion of one additional unoccupied data point being added to the unoccupied data.  And the occupied data that was based on 105 different trailers would not have changed in any appreciable way by adding one more data point.  Defendant alleges in their Motion, "simply put, the samples taken from the plaintiff's trailer would be the best evidence of

5

the formaldehyde levels therein, not an average taken from other trailers." Defendant's Memo, p. 7. Defendant either exhibits a basic misunderstanding of statistical concepts or is trying to deliberately mislead the Court. The samples taken in January 2010 do indeed represent the level of formaldehyde that existed in the trailer in January 2010. The January 2010 samples do not represent the amount of formaldehyde present while Earline Castanel was living in the trailer between March 2006 and August 2007 when the trailer was newer and the temperatures were warmer. Dr. Hewett's analysis represents a summary of the data on newer occupied trailers and when the temperatures were more typical, such as during the time period when Earline Castanel was living in the trailer and are thus more representative of what the Plaintiff experienced.

**2.    Dr. Hewett's Methodology is Reliable**

Defendant criticizes Dr. Hewett's methodology in determining the formaldehyde level "during the periods of occupancy by using a formula involving the decay rate of formaldehyde over time." Defendant's Memorandum, pp 7-8. As a basis for their criticism, Defendant states that other courts have excluded testimony on this identical issue, citing *Wallace v. Meadow Acres Manufactured Housing* 730 N.E. 2d 809 (Ind. C. App. 2000). Defendant's Memorandum, p. 8. First, Plaintiff would point out that this Court is not constrained to follow *Wallace*, a Court that is neither a United States District Court, nor a Louisiana Court, but second, Plaintiff would point out that Defendant

6

misapprehends the reasoning underpinning *Wallace*.

In the *Wallace* case, Dr. Goodish applied multiple decay rates from some unknown source to extrapolate the formaldehyde level in Plaintiff's Redman mobile home. *Id*. at 816. In the case at bar, Dr. Hewett calculated one decay rate of formaldehyde based upon observations from 56 Recreation by Design Travel Trailers.[2] However, there is no record that the expert in *Wallace*, Goodish, measured multiple Redman mobile homes, to come up with a decay rate for Redman mobile homes. *Id*. Goodish used multiple decay rates from other sources and applied to the Redman mobile home in that case.[3] *Id*. Dr. Hewett relied upon on actual data from Recreation by Design travel trailers to come up with a decay rate. He has not used multiple decay rates from other sources to determine the decay rate for Recreation by Design travel trailers. Dr. Hewett has determined what the decay rate is based upon actual data from Recreation by Design travel trailers. This is an element that is missing from the Goodish analysis in the *Wallace* opinion. Since Dr. Hewett used actual data from Recreation by Design trailers it stands to reason that his data is going to be representative of what occurred in the trailers.

---

[2] The number of trailers in the decay analysis is different from the number of trailers in the other analysis. To conduct the decay analysis, information on the trailer age was needed and not all the data points had data on trailer age.

[3] *Id*. at 816 "In Dr. Godish's opinion, formaldehyde has an estimated half life value of 21 months and a second half-life value between two and four years." No basis such as for these half-lives were given such as measurements from other Redmand mobile homes.

It is not clear from Defendant's comments what exactly it is driving at in their criticism of Dr. Hewett's decay rate analysis. However, to the extent that Defendant is implying that there is "one" magical decay rate for formaldehyde and it applies to all circumstances and all products and that rate is yet to be discovered, they are sadly mistaken. By implying there is one decay rate that applies to all circumstances is like saying there is one mile per gallon rate that applies to all vehicles. Decay rates differ based upon the circumstances and products measured. However, there is a scientific consensus on how to calculate decay rates and as the Suta and Versar studies as cited in Dr. Hewett's report show it is an accepted method to calculate decay rates based upon multiple measured formaldehyde levels over time. Exhibit A, p. 44, & 46. Suta and Versar were studies funded by the United States Environmental Protection Agency (EPA) and they determined a decay rate of formaldehyde in mobile homes. *Id*. Those decay rates are based upon the circumstances and situations measured and observed in those cases. The Zinn study, which is a published study which Dr. Hewett cites (Exhibit A, p. 46), confirms that calculating decay rates for formaldehyde has been subjected to peer review and is generally accepted in the scientific community.[4]

---

[4] Zinn, T.W. Cline D. and Lehman, W.F. (1990) Long-term Study of Formaldehyde Emission Decay from Particleboard. *Forest Products Journal* 40:15-18 is cited on page 45 of Dr. Hewett's Report. The Zinn study has a shorter formaldehyde decay rate as would be expected for the products examined in that study, unsurfaced wood products. Many of the pressed wood products in the Versar and Suta studies were coated with a vinyl overlay which would have retarded decay or increased the length of time for one half of the formaldehyde to escape from the wood product.

Regarding the supposed lack of standard for evaluating the "alleged half-life or decay rate for formaldehyde" (Defendant's Memo, p. 9), Plaintiff would further point out that the decay equation has been in use for over 100 years and the process of measuring any quantity known to decay exponentially with time and fitting the standard decay equation to the resulting data is so basic as to hardly need a standard, in much the same fashion as the process of estimating the fuel mileage for you automobile hardly merits a national consensus standard. Ernest Rutherford (1871-1937), Nobel Prize winner and the acknowledged "father of nuclear physics", developed the decay equation and the concept of half-life in the early 1900's and it has been in use ever since.

Lastly, the *Wallace* case also involves many admissions made by the expert that are not involved in this case. In *Wallace*, the expert, Dr. Goodish, admitted that his extrapolation methodology represented a worst case scenario; admitted that "half-life" is a misnomer, and the concept of decay rate is more accurate; admitted there were two different decay rates; and admitted there was no quantifiable rate of error to his calculations. *Id* 816. None of those admissions exist here. Dr. Hewett has calculated one decay rate, he has described his analysis as a "decay rate" not as a half-life and he has calculated a 95% prediction interval for his decay analysis and included it in his Report. Exhibit A, p 41 ff. Defendant's criticism based upon decay rate therefore, is without merit and their Daubert Motion in this regard should be denied.

### 3. Defendant Claims that Dr. Hewett's Reliance on Versar is Misplaced

Defendant alleges that Dr. Hewett relies on the Versar study to create a formula to calculate a decay rate. Defendant's Memorandum, p. 10. This is a fundamental misunderstanding of Dr. Hewett's analysis or a deliberate attempt to mislead the Court on the nature of Dr. Hewett's analysis. Dr. Hewett relies on Versar for the proposition that others have observed and calculated formaldehyde decay rates. Dr. Hewett, as pointed out above, is not saying that the Versar decay rate applies to this travel trailer. The Versar results were presented to show that others including a Department of the United States Government, the EPA, has used the decay model, and applied a similar if not identical statistical procedure to obtaining the estimate of the decay coefficient. The Vesar study also shows that calculating decay rates for formaldehyde is generally accepted in the scientific community. Dr. Hewett is also referencing Versar which found a decay rate of 2.92 years for the proposition that the decay rate Dr. Hewett found for Recreation by Design trailer of 2.748 years, is within the range of reported decay rates. Defendant also takes issue that Dr. Hewett did not produce all the pages to the Versar study. This criticism is without merit. Plaintiff's never received a follow up request for the entire Versar report. Plaintiff produced what she had, and given the limited basis for which Dr. Hewett relied upon Versar, the complete report was not necessary. Defendant's criticism of Dr. Hewett's "reliance" on the Versar study is without merit.

## CONCLUSION AND PRAYER

For the reasons set forth above, Defendant Recreation by Design LLC's Daubert Motion to Exclude the Testimony of Plaintiff's Expert Paul Hewett, is without merit and in all respects should be denied.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:    s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**

        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        LINDA NELSON, #9938
        MIKAL WATTS, Texas # 20981820
        DENNIS REICH, Texas #16739600
        ROBERT M. BECNEL, #14072

## CERTIFICATE OF SERVICE

 I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing on April 30, 2010.

         s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471