Report of Robert E. Wozniak

Reference Castanel versus Recreation by Design, et al
FEMA Trailer Formaldehyde Products Liability Litigation
United States District Court
Eastern District of Louisiana
MDL No. 1873 Section N(5)
Judge Engelhardt
Case Number 09-3251

1.

I earned a Bachelor of Mechanical Engineering Degree in 1974 from the General Motors Institute (now known as Kettering University) located in Flint, Michigan. My professional work history involved working in Engineering capacities for my entire career. I was employed by General Motors Corporation from 1969 to 1978, starting as a cooperative education student and leaving as a Senior Designer. I was employed by Nissan Motor Corporation from 1978 to 1981, starting as a Senior Engineer and leaving as Manager Vehicle Engineering Specifications. I was employed by Nissan Motor Manufacturing Corporation from 1981 to 1983 as a Manager in Product Design Administration Regulatory Compliance. I was employed by Fleetwood Enterprises from 1983 to 2006, starting as a Senior Engineer and leaving as Director of Engineering and Product Compliance for the Recreational Vehicle Group. From 2006 to the present I work as an independent consultant to industry with an emphasis on recreational vehicles.

2.

I have been actively involved with the Recreation Vehicle Industry Association starting by serving on their four technical subcommittees and leaving with participation on the Standards Steering Committee and Enforcement Board. This participation began in 1984 and continued through 2006.



EXHIBIT 1

3.

I have been a member of the National Fire Protection Association Technical Committee On Recreational Vehicles from 1985 to 2006 for the NFPA 1192 Standard for Fire and Life Safety for Recreational Vehicles.

4.

On February 18, 2010 I participated in an inspection at the FEMA storage facility located in Lottie, Louisiana. The trailer that was inspected was assigned a Vehicle Identification Number of 5CZ200R2461125294. This trailer had a December 2005 manufacture date affixed to it.

5.

Observations relating to the trailer are noted:

- The trailer was located in a dirt surface storage field.
- Upon arrival the slideout room was in the inboard position.
- Slideout room seals were inspected and observed to be intact.
- Window seals were inspected and observed to be intact.
- Exterior labels, decals on the trailer consisted of 2 handicapped, 2 wheel lug nut torque, an electrical connection, fresh water connection, and 2 certification.
- Interior labels, decals on the trailer consisted of 2 emergency exit and others as applied by the individual component manufacturer's.
- Two pieces of plumbers tape where located on the trailer interior wall in the area of the upper rear of the refrigerator.
- A length of plumbers tape was evident on the roadside roof at approximately mid coach.

- A tongue jack was installed to the trailer A frame.
- The trailer steel members exhibited a small amount of rust.
- Four stabilizer jacks were installed in the vicinity of the corners of the trailer.
- I found no evidence of panel separations, cabinets not attached to walls, or exterior sheet metal misaligned.
- I found no evidence of water leaks, or water stains on the interior of the trailer.

6.

Based on my experience, knowledge, review of relevant materials, investigation and examination of this travel trailer – this travel trailer was in conformance with all codes and regulations promulgated by the authorities having jurisdiction over this type of product at the time it was manufactured.

*Robert E. Wozniak*
Robert E. Wozniak

Date: 2-24-2010