UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL NO. 1873 |
| | SECTION N(5) |
| | JUDGE ENGELHARDT |
| | MAGISTRATE CHASEZ |
| THIS DOCUMENT RELATES TO: All Cases | |

**REPLY TO PLAINTIFFS' OPPOSITION TO THE JOINT MOTION OF THE GOVERNMENT'S CONTRACTORS TO DISMISS PLAINTIFFS' THIRD AND FOURTH AMENDED MASTER COMPLAINT**

Plaintiffs have abandoned most of the Third and Fourth AMC's untenable allegations. In their Opposition, Rec. Doc. 13823, Plaintiffs defend only one of their many allegations, their Louisiana tort law negligence claim related to putting the emergency housing onto blocks. Plaintiffs allege the contractors were negligent because "the work performed by the defendants required an analysis of its impact on travel trailer's shell to determine whether it allowed increased moisture intrusion and formaldehyde exposure." Rec. Doc. 13823 at 10-13 (citing Louisiana tort cases). As set forth below and earlier, Rec. Doc. 13421-2, the Court should dismiss this claim (as well as the other claims in Plaintiffs' AMC) as wholly implausible and entirely displaced by federal common law. At a minimum, however, because Plaintiffs have now abandoned them, the Court should dismiss Plaintiffs' other claims with prejudice.

1

### I.   **PLAINTIFFS FAIL TO OPPOSE THE CONTRACTORS' ARGUMENTS.**

As the contractors argued at length, Plaintiffs claims must be dismissed under *Iqbal* if Plaintiffs' own facts provide far more likely explanations for their alleged injuries. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). Plaintiffs failed to oppose that argument and failed to meet their obligation under Local Rule 7.5E.[1]  Similarly, the contractors presented well supported arguments to show the government contractor defense's first condition can be satisfied, and has been satisfied, in spite of any purported silence in the specifications related to jacking or any other narrow aspect of the work. Rec. Doc. 13421-2 at 12-21. Although the bulk of the joint motions' pages addressed this argument, Plaintiffs utterly failed to contest that point.

Plaintiffs should not expect the Court to make their case. This MDL is massive, and it puts tremendous burdens on the Court's resources. This matter will be impeded if Plaintiffs can ignore their obligation under Local Rule 7.5E with impunity. The Court has no duty to "conjure up unpled allegations [or arguments]…to save a complaint," *Rios v. The City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006), or to "search the record to find a legal and factual basis for" Plaintiffs' suit. *Armant v. Stalder*, 287 F. App'x 351, 353 (5th Cir. 2008) (per curiam). The Court should regard arguments that Plaintiffs failed to contest as unopposed and grant them.

In particular, the Court should regard the part of the joint motion related to the 12(b)(6) standard, *see* Rec. Doc. 13421-2 at 9-11, as unopposed and dismiss Plaintiffs' claims under *Iqbal*, 129 S. Ct. at 1949-50. Likewise, since Plaintiffs failed to refute the contractors' argument for satisfying the defense's first condition in spite of silence in the specifications, Rec. Doc. 13421-2 at 12-21, the Court should find that aspect of the motion unopposed and grant it.

---

[1] Plaintiffs refer to a report, Rec. Doc. 13823 at 2, but failed to incorporate that into their AMC or attach it to their Opposition papers. Local Rule 7.5E obligated Plaintiffs to provide "reasons" and "authorities" in opposition to the joint motion as well as attach any "documentary evidence," such as a report, upon which they relied. Because Plaintiffs failed to do so, the report cannot be included among the facts Plaintiffs pled or included in their pleadings.

2

## II. PLAINTIFFS GROSSLY DISTORT THE CONTROLLING CASE LAW.

### A. PLAINTIFFS' "SIGNIFICANT CONFLICT" TEST HAS BEEN SOUNDLY REJECTED AS AN ERRONEOUS INTERPRETATION OF *BOYLE*.

Plaintiffs state that: "federal common law provides the contractor with a defense only where there is both (a) a conflict between the requirements of state tort law and those of the Government contract and (b) an exercise of Government discretion in considering the design feature in question." *See* Rec. Doc. 13823 at 9. Plaintiffs grossly mischaracterize the controlling case law. Judge Duval, for example, considered and rejected this very same argument. *See In re Katrina*, 2008 U.S. Dist. LEXIS 108303, *300-01 (E.D. La. Dec. 15, 2008). Relying on the decision that Plaintiffs quote to the Court, Judge Duval held that:

> the purpose of the first part of the [government contractor defense] test, approval of reasonably precise specifications, is to determine whether a conflict with state law exists at all. . . . Thus, answering the question whether the Government approved reasonably precise specifications for the design feature in question necessarily answers the question whether the federal contract conflicts with state law. . . . The sole requirements for the imposition of the government contractor defense have been the three prongs first outlined in *Boyle* . . .

*See id.* (quoting *Lewis v. Babcock Indus., Inc.*, 985 F.3d 83, 86-87 (2d Cir. 1993) (notations omitted); *see also Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 801 (5th Cir. 1993) (holding whether the defense applies depends only on whether *Boyle's* three conditions are met).

### B. PLAINTIFFS GROSSLY DISTORT THE CONTRACTORS' BURDEN FOR ESTABLISHING THE DEFENSE.

Plaintiffs erroneously contend that "the third prong of the *Boyle* analysis requires that to invoke the government contractor defense, the contractor must demonstrate that it fully informed the Government about hazards related to the Government's exercise of discretion and that the Government knowingly accepted those hazards." Rec. Doc. 13823 at 11. Plaintiffs' assertion, at best, strays very far from well established case law. On more than one occasion, the Fifth Circuit has considered this theory and rejected it. For example, the Fifth Circuit has held that:

> The third part of the *Boyle* test requires the contractor to warn the government about those equipment dangers that were known to the contractor, but not to the government. The purpose of this element is not to create an incentive to discover latent defects in a product designed for the government. . . . The [ ] defense does not require a contractor to warn the government of defects about which it only should have known. "After *Boyle*, a government contractor is only responsible for warning the government of dangers about which it has actual knowledge."

*Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 436 (5th Cir. 2000) (quoting *Trevino v. Gen. Dynamics Corp*, 865 F.2d 1474, 1487 (5th Cir. 1989)).

Plaintiffs also incorrectly assert that "for the government contractor defense to apply, the Government need both be aware of potential deficiencies and direct that the Contractor behave in a way that was contrary to the otherwise governing laws." Rec. Doc. 13823 at 9. As with Plaintiffs' other legal propositions, the Fifth Circuit has also rejected this exact argument:

> Plaintiff argues that, in the approval process, the government must have considered and rejected a safer design alternative proposed by the plaintiff, or at least must have itself prospectively limited the discretion of the contractor to include a safer alternative design. The district court noted that this argument is well suited for presentation to Congress or to the Supreme Court rather than the district court but that it *is contrary to the case law*. *See Boyle*, 487 U.S. at 513; *Stout*, 933 F.2d at 334-35; *see also Tate v. Boeing Helicopters*, 140 F.3d 654 (6th Cir. 1998) (Tate II). The *Boyle* court noted that, while this is perhaps a reasonable rule of tort law, it did not sufficiently protect the federal interest . . .
>
>> The design ultimately selected may well reflect a significant policy judgment by Government officials whether or not the contractor rather than those officials developed the design. In addition, it does not seem to us sound policy to penalize, and thus deter, active contractor participation in the design process, placing the contractor at risk unless it identifies all design defects.
>
> *Boyle*, 487 U.S. at 513. The district court noted that this last sentence can mean only that **the defense applies even when the contractor did not warn the government of latent defects—in other words, defects that neither the contractor nor the government considered it at all**. We agree.

*Kerstetter*, 210 F.3d at 436 (italics in original, bold added).

The Court should make note of this last portion of the quoted *Kerstetter* text. It bears special significance here. It shows the defense may apply even if the Government-issued

4

specifications do not address the specific defect that Plaintiffs' claims arise from. As Justice Powell explained, contractors may establish the defense if their work "satisfies an 'intended configuration' that may produce unintended and unwanted results." *Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1317 (11th Cir. 1989) (Powell, J., by designation). The contractors made this point in their well supported motion. *See* Rec. Doc. 13421-2 at 12-21 ("Plaintiffs may not artfully plead around the defense"; "courts interpret 'reasonably precise' broadly"; "If the Government knows of the potential hazard but elects to continue using its contractors work, the first condition is met"). Since Plaintiffs failed to oppose those arguments or the contractors' showing for the third condition, the Court should grant those parts of the joint motion. *See* Local Rule 7.5E; *Armant*, 287 F. App'x at 353; *Rios*, 444 F.3d at 421.

### III.     PLAINTIFFS CANNOT RELY ON GENERAL CONTRACT LANGUAGE.

Plaintiffs argue that the "the Government's contractual directive required that the defendant [ ] install the unit 'in accordance with manufacturer's installation specifications and include other appropriate State and local requirements.'" *See* Rec. Doc. 13823 at 8. Plaintiffs do not contend that these general terms served as a specification. Indeed, they cannot. The Fifth Circuit regards such "general" language as irrelevant to applying the defense. *Kerstetter*, 210 F.3d at 437 n.7 (holding "a general design specification is not contemplated by the first element of the *Boyle* test because 'only the detailed, quantitative specification—and not those calling for such vagaries as a fail safe, simple or inexpensive product—are relevant to the government contractor defense.'") (quoting *In re Air Disaster*, 81 F.3d 570, 575 (5th Cir. 1996)). As a case Plaintiffs cited to the Court makes plain, general terms "represent little more than the hopes of participants that the project on which they are about to embark will turn out well." *Landgraf v.*

5

*McDonnell Douglas Helicopter Co.*, 993 F.2d 558, 560 (6th Cir. 1993) (quoting *Kleenmann v. McDonnell Douglas Corp.*, 890 F.2d 698, 703 (4th Cir. 1989)).

Although the contractors already made this point, Rec. Doc. 13421-2 at 20 n.4, and the Plaintiffs failed to oppose it, it bears repeating here that Plaintiffs cannot rightly complain of a failure to adhere the manufacturer's instructions and also avoid the government contractor defense. Plaintiffs' alleged that the manufacturers' instructions "warn[ed] against jacking the temporary housing units off the wheel base." *See, e.g.*, Ex. A ¶ 302(b) (Rec. Doc. 13421-3). Thus, under Plaintiffs' own facts, there is no end-state allowed by Government-issued specifications that would have complied with both the manufacturer's instructions and the Government-issued specifications. Plaintiffs' intimations to the contrary lack veracity.

Additionally, Plaintiffs wholly ignored, and thus failed to oppose, the contractor's arguments for the defense's second condition. *See* Rec. Doc. 13421-2 at 21-23 ("the Government's continued use even after learning of the potential harm shows that the Government, in its discretion, decided that its contractors' work conformed to the specifications"; that "affirmative decision to continue using its contractors' work conclusively shows the defense's second condition because the Government had complete control over its contractors"). As such, the Court must deem those arguments unopposed and grant that part of the joint motion. *See* Local Rule 7.5E; *Armant*, 287 F. App'x at 353; *Rios*, 444 F.3d at 421.

### IV.   PLAINTIFFS CANNOT USE THE INSPECTIONS TO DEFEAT THE DEFENSE.

Plaintiffs argue that the Government's contractual directive required that the contractors "establish procedures to ensure that the quality of the work performed complied with generally accepted practices within the trade." Rec. Doc. 13823 at 8. Plaintiffs raise this point as part of their erroneous "significant conflict" argument. *Id.* As set forth above, that argument lacks

merit and has been soundly rejected. *See* Part II A *supra*. In any case, as the contractors explained, and as Plaintiffs failed to oppose, the contractors incorporated inspections and quality control procedures into all contracted-for work. Rec. Doc. 13421-2 at 7-8, 18-20. The contractors established the defense's first and second condition with respect to that quality control work by showing the Government inspected, accepted, and continued using its contractors' work during the relevant period. *See* id. at 22-23.

Since Plaintiffs failed to opposed those arguments, the Court should grant that part of the motion. *See* Local Rule 7.5E; *Armant*, 287 F. App'x at 353; *Rios*, 444 F.3d at 421.

## V.   THE DEFENSE DISPLACES PLAINTIFFS TORT CLAIMS ENTIRELY.

Plaintiffs allege the contractors were negligent because "the work performed by the defendants required an analysis of its impact on travel trailer's shell to determine whether it allowed increased moisture intrusion and formaldehyde exposure." Rec. Doc. 13823 at 10-13 (citing Louisiana tort cases). The Court should dismiss this claim for the reasons set forth in the joint motion. *See generally* Rec. Doc. 13421-2 at 11-24. It is worth noting here, however, that Plaintiffs failed to cite any contract term or federal acquisition regulation that required such an "analysis." That reveals much. Plaintiffs have the full contracts. *See, e.g.*, Ex. C at 1 (Rec. Doc. 13421-5). Plaintiffs' failure to offer any such citation should give the Court pause. If such an obligation existed, Plaintiffs would have every incentive to cite it to the Court. Plaintiffs, however, have not because they cannot. If such a duty existed, it comes only from Louisiana tort law. But as the contractors explained, and Plaintiffs have not refuted, "state law is not relevant to the interpretation of a federal contract." *See* Rec. Doc. 13421-2 at 13 n.3.

The Government, in its discretion, never tasked its contractors with undertaking the type of analysis or engineering that Plaintiffs claim the contractors should have performed. The Government's need was far too urgent. Both the Government and the public would have baulked

7

if its contractors had delayed for such an analysis. Instead, in its discretion, the Government directed its contractor to meet *aggressive disaster priorities* by installing thousands of units of *temporary* emergency housing on blocks, in accordance with Exhibit Seven's specifications, *as expeditiously as possible*. *See, e.g.*, Ex. C at 68 (Rec. Doc. 13421-5).

Under the circumstances, treating the Government-issued specifications as anything other than reasonably precise would run counter to *Boyle's* intent. *See Boyle*, 487 U.S. 500, 511-12. It would ignore the nature of the contract and let Plaintiffs second-guess the Government's statutorily protected discretion. *Id*. It would tie the Government's hands when responding to future disasters because no contractor could afford to come to the Government's aid until well after an "analysis" had been conducted. Thus, for the reasons set forth here and in the contractors' joint motion, the Court must hold that the Plaintiffs' own pleadings show the Government approved reasonably precise specifications for its contractors' work.

## VI. THE *YEARSLEY* RULE BARS PLAINTIFFS' CLAIMS ENTIRELY.

Plaintiffs ask the Court to believe that "the defendants rely upon *Yearsley et.al v. W.A. Ross Const. Co.*¸ 309 U.S. 18, 60 S. Ct. 413 (1940), to argue that they enjoy an immunity." Rec. Doc. 13823 at 4. Plaintiffs exaggerate.[2] Nevertheless, the Fifth Circuit's recent affirmation of Judge Duval's application of the *Yearsley* Rule provides alternate grounds for dismissing Plaintiffs' claims. *See Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 206-07 (5th Cir. 2009). Judge Duval had granted a 12(b)(6) motion and dismissed certain state law tort claims against federal contractors. *See In re Katrina*, 2007 WL 763742, *3-4 (E.D. La. Mar. 9, 2007). Judge Duval held that under *Yearsley* contractors cannot be liable even for "actions that are tortious when done by private parties but not wrongful when done by the government." *Id*.

---

[2] The contractors cite *Yearsley* in just one sentence in their twenty-five page joint motion, so Plaintiffs cannot rightly contend that the contractors rely on *Yearsely*. Rec. Doc. 13421-2 at 11.

On appeal, the Fifth Circuit affirmed Judge Duval's decision and upheld immunity for the contractors because (1) the allegedly tortious conduct had been undertaken pursuant to a federal contract intended to further acts of Congress, and (2) the plaintiffs never alleged that the contractors exceeded validly conferred authority. *Ackerson*, 589 F.3d at 206-07. The same prohibition applies here to bar Plaintiffs claims since all of the prongs of the *Yearsley* Rule are met. Plaintiffs allege that "the Federal Government contracted with the No-Bid Defendants to implement the mandates of the Stafford Act" and "to assist with the implementation of the Stafford Act in Louisiana, Mississippi, Alabama and Texas." Ex. A ¶¶ 148, 151 (Rec. Doc. 4486). Plaintiffs never allege the contractors exceeded their validly conferred authority. Thus, since all of the Rule's conditions have been met here, the *Yearsley* Rule bars Plaintiffs' claims entirely. *Ackerson*, 589 F.3d at 206-07.

## VII. <u>CONCLUSION</u>

For the reasons set forth above and in the contractors' memorandum of law, the Court should grant the contractors' joint motion and dismiss Plaintiffs' claims with prejudice.

Respectfully submitted,

**FRILOT L.L.C.**

/s/ *Peter R. Tafaro*
JOHN J. HAINKEL, III – (#18246)
A. J. KROUSE – (#14426)
DAVID P. CURTIS – (#30880)
CAROLYN B. HENNESY –(25089)
PETER R. TAFARO – (#28776)
ANDREW M. MAESTRI – (#30606)
3700 Energy Centre, 1100 Poydras St.
New Orleans, Louisiana 70163
Tel: (504) 599-8000; Fax: (504) 599-8100
E-mail: ptafaro@frilot.com
**Attorneys for Bechtel National, Inc.**

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

/s/ *Gerardo R. Barrios*
ROY C. CHEATWOOD (#4010)
GERARDO R. BARRIOS (#21223)
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
WADE M. BASS (#29081)
No. 3 Sanctuary Boulevard, Suite 201
Mandeville, Louisiana 70471
Tel: (985) 819-8400; Fax: (985) 819-8484
**Attorneys for CH2M Hill Constructors, Inc.**

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

/s/ *M. David Kurtz*
ROY C. CHEATWOOD (#4010)
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Tel: (504) 566-5200; Fax: (504) 636-4000
**Attorneys for Shaw Environmental, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was filed electronically using the CM/ECF system. Notice of this filing will be forwarded to all known counsel by operation of the court's electronic filing system. I also certify that I have emailed a copy of this filing to any non-CM/ECF participants on this the 4th day of May, 2010.

/s/ *Peter R. Tafaro*
PETER R. TAFARO