UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCT LIABILITY | * | SECTION "N-5" |
| LITIGATION | * | |
| | * | JUDGE ENGELHARDT |
| | * | |
| THIS DOCUMENT RELATES TO | * | MAG. JUDGE CHASEZ |
| *EARLINE CASTANEL, ET AL* | * | |
| *v.  RECREATION BY DESIGN, LLC* | * | |
| *ET AL*, *DOCKET NO. 09-3251* | * | |

**************************************************************************

REPLY MEMORANDUM IN SUPPORT OF RECREATION BY
DESIGN, L.L.C.'S DAUBERT MOTION TO EXCLUDE
THE EXPERT TESTIMONY OF PAUL HEWETT

**MAY IT PLEASE THE COURT:**

Recreation by Design, L.L.C.  (hereinafter, "RBC") submits this brief Reply Memorandum to address the issues presented in the Memorandum in Opposition to Exclude Expert Testimony of Paul Hewett submitted by plaintiff.

1.   **Dr. Hewett's Use of Measurements from Trailers other than the Plaintiff's is Irrelevant**.

In its Memorandum to Exclude the testimony of Dr. Hewett, defendant submitted that Hewett should have used the actual formaldehyde measurements obtained from plaintiff's trailer, rather than an average of measurements taken from other RBD trailers. Plaintiff argues in her reply memorandum that even if Dr. Hewett had included the results from the plaintiff's trailer in his calculations, it would not have made a statistical difference with regard to the mean median and mode he calculated. Plaintiff misunderstands defendant's position. Defendant is not claiming that the results from plaintiff's trailer would have made a difference in Dr. Hewett's calculations; rather, defendant shows that the only results which are relevant, are those measurements from plaintiff's trailer.

The Versar report, which Dr. Hewett relies upon in arriving at his figures, indicates that formaldehyde concentrations are not attributable solely to emissions from pressed-wood products. Other sources of formaldehyde in residential settings such as outdoor air, cigarettes, and emissions from gas appliances may remain constant with time, rather than decaying. The Versar report further indicates (in that study) that the age of the structure determined 35% of the formaldehyde level, while all other factors combined to determine the other 65% of the variability. Thus, according to Versar 65% of the formaldehyde rate in a structure depends on variables such as location, temperature, use of the trailer *i.e.* whether the plaintiff ventilated the trailer, used gas appliances in the trailer, smoked in the trailer, etc. Because 65% of the formaldehyde levels in a trailer are determined by variables, most of which are unaccounted for by Dr. Hewett, Dr. Hewett's use of an average measurement to determine the formaldehyde rate in one trailer is clearly unreliable.

Dr. Hewett has no knowledge as to whether the plaintiff or the occupants of any of the measured trailers smoked in the trailer, how often they used the gas appliances in the trailer, how they ventilated the trailer, etc. All of these factors influence the level of formaldehyde in the trailers. This difference is clearly demonstrated by the measurements obtained in RBD trailers. According to Dr. Hewett's report, the minimum measured level of formaldehyde in an occupied trailer was .003 parts per million, while the maximum measured level of formaldehyde in an occupied trailer was .300 parts per million, a difference of a hundredfold![1]

Needless to say, this case and this trial is not about the other RBD trailers, but is about one specific trailer (the plaintiff's), and the levels of formaldehyde that plaintiff was exposed to while she occupied that trailer. Obtaining a mean formaldehyde level for all the trailers is irrelevant to determine the levels of formaldehyde in the plaintiff's trailer, especially when considering that the occupied levels of formaldehyde can differ by as much as one hundred fold.

2.   **Dr. Hewett's Methodology is Not Reliable**

Plaintiff next asserts that Dr. Hewett's methodology is reliable, has been subjected to peer review and is generally accepted in the scientific community. This is not accurate. Dr. Hewett cites to studies such as Suta, Versa, and Zinn, which attempt to measure the decay rate of formaldehyde over time, to support his calculations. In her reply memorandum, plaintiff asserts "The Zinn study, which is a published study which Dr.Hewett cites (Exhibit 1, p. 46) confirms that calculating decay rates for formaldehyde has been subjected to peer review and is generally accepted in the scientific community."[2] Aside from the fact that the methodology used by Zinn has not been generally

---

[1] See Record 13600-2, p. 18.

[2] Plaintiff's Opposition Memorandum, p. 8.

accepted in the scientific community (as will be discussed below), plaintiff fails to point out that there are significant distinctions between the Zinn study and its calculations and Dr. Hewett's report and his calculations.

In Zinn, the authors obtained particle board within 10 to 32 days of manufacture. The board was then placed in a large test chamber. Other procedures were instituted regarding heating, cooling and storing of the boards during testing. Based on this "laboratory" testing, the authors were able to estimate a half life for these particular boards.[3] The estimated half life values of the samples varied between 82 and 371 days. The average half life was noted to be 216 days.[4] Zinn noted that the half life they calculated was less than the 13 months reported in the Gammage study (as cited in Zinn) and much less than the 2.92 years calculated in the Versar report (also cited in Zinn). Zinn further noted that all three **results were derived using different test methods**.[5] Thus, even Zinn realized that, depending on the test methods, the half life could differ as much as five fold.

Zinn ultimately concluded:

1.  Formaldehyde emission levels from particle board can be expected to decrease over time.

2.  The rate at which emission levels decrease is not constant, but diminishes with time. On average, the 16 samples in this study decreased from their initial emission levels by 25 percent in just 38 days. Fourteen samples, tested long enough to reach a half life, took an average of 216 days to reach the 50 percent emission level.

3.  Generally, formaldehyde emission levels decreased linearly with respect to the natural log of time.

---

[3] *See* Exhibit 1, Zinn Study p. 16.

[4] *Id.*, p. 17.

[5] *Id.*, p. 17.

      4.      Decay of panel emission levels with respect to time of these medium density particle boards was strongly related to the initial emission level. The higher the initial emission level the greater the initial decay rate.[6]

The purpose of the Zinn study was to show that formaldehyde levels decrease over time in a laboratory setting. Dr. Hewett however, takes a giant leap from the laboratory type testing of particle board in a chamber where all elements in which the board is exposed to is regulated, to formulating a calculation in which he attempts to extrapolate backwards in time the average formaldehyde levels in RBD's trailers in order to form an opinion as to the levels of formaldehyde that plaintiff was exposed while residing in her trailer. There is a huge difference between what the authors did in Zinn and what Dr. Hewett is attempting to do. As Versar noted, 65% of the formaldehyde levels in the mobile homes they tested were determined by variables, whereas age only accounted for 35%. These variables which are composed of real life applications of the wood and the elements to which the trailer was exposed (such as smoking, cooking, ventilation, etc.), were not taken into consideration by Zinn or by Dr. Hewett. You simply cannot compare the methodology used to obtain the half life or decay rate of formaldehyde which was obtained via testing in laboratory settings in a test chamber to a real life application where the wood is exposed to actual elements over a period of time, which is what Dr. Hewett attempts to do. To go further and say that Dr. Hewett's methodology has been peer reviewed and is generally accepted in the scientific community is completely unsupportable.

In Suta[7], another study which Dr. Hewett relies on to support his theory, the authors

---

[6]*Id.*, p. 18.

[7]*See* Exhibit 2, Suta report. Note: Dr. Hewett did not provide a complete copy of the Suta report, only portions.

attempted to arrive at a formula to determine the effect of home age on formaldehyde concentrations. Once again however, the formula arrived at in Suta did not take into consideration "other pertinent factors such as the amount of particleboard in the home, temperature, humidity, or ventilation."[8] Based on their testing, Suta determined that the formaldehyde concentration half life, based on the age of the home, is 58 months in Danish homes.[9] However, the half life found in Scandinavian homes was about two years;[10] randomly selected mobile homes found in Wisconsin had a half life of about 69 months;[11] other complaint mobile homes in Wisconsin indicated a half life of 28 months.[12] This testing proved, and Suta noted, that "Formaldehyde release from the interior particleboard occurs at a decreasing rate with an increase in the product's age. Eventually the rate of formaldehyde evolution decreases to an imperceptible level. **The length of time necessary for this to occur depends on the atmospheric conditions to which the board has been subjected**, as well as the degree of cure on the resin."[13]

In summary, Suta found that formaldehyde levels decrease over time based on the age of the structure. However, the findings noted by Suta as to the actual half life or decay rate of formaldehyde in these structures varied greatly from 24 months to 69 months. Age of the structure can only provide a limited amount of information as to the decay rate of formaldehyde whereas other

---

[8] *Id.* at IV-25.

[9] *Id.* at IV-25.

[10] *Id.* at IV-25.

[11] *Id.* at IV-25 to 26.

[12] *Id.* at IV-26.

[13] *Id.* at IV-21 (emphasis added).

factors have a huge influence on this rate as demonstrated by the significant differences in the decay rate between the various structures tested. This is exactly why the Court excluded plaintiff's expert's testimony on the very same issue in *Wallace*[14].

In *Wallace*, the court noted that the studies examining the decay rate of formaldehyde have used various methods and have produced different results. Additionally, plaintiff's expert in *Wallace*, Dr. Godish, testified as follows regarding these different results:

Q. There have been several studies done of decay, correct?

A. That's correct.

Q. And as far as the scientific community is concerned, how would you describe these results?

A. The results are quite variable ... the rate of decay depends on the kind of structures that have been evaluated and the particular environments .... So, it - there is a spectrum of results.[15]

Dr. Godish's testimony in *Wallace* is exactly on point. The decay rate of formaldehyde varies, not only from structure to structure, but also due to environment. This is amply supported by the studies relied on by Dr. Hewett *i.e.*, Suta, Versar and Zinn. In fact Zinn even admitted that the half life it calculated was different than the other studies cited therein (Gamish and Versar), as different test methods were used. Although it is unclear what studies Dr. Godish was referring to in his testimony, the ultimate results are the same. Based on the fact that there is no general acceptance in the scientific community as to the exact rate at which formaldehyde decays over time,

---

[14]*Wallace v. Meadow Acres Manufactured Housing*, 730 N.E. 2d 809.

[15]*Id.* at 817.

the *Wallace* court excluded Dr. Godish's testimony.

> Essentially, the extrapolation method used by Dr. Godish relies on the questionable assumption that the rate of formaldehyde's decay has been properly calculated. This assumption is not supported by any reliable scientific methods or the reliable application of any valid theory.[16]

Similarly here, Dr. Hewett attempts to rely on the same methodology as excluded by the court in *Wallace*.

### 3. Dr. Hewett's Reliance on Versar is Misplaced

Lastly, plaintiff states that Hewett relied on Versar for the proposition that others have observed and calculated formaldehyde decay rates and that the Versar study shows that calculating decay rates for formaldehyde is generally accepted in the scientific community. Further, that the decay rate Dr. Hewett found in the RBD trailers, 2.748 years (or 1003 days), is within the range of the decay rate found in the Versar study, 2.92 years. Of course, Dr. Hewett conveniently ignores the fact that the decay rates obtained in Zinn (which he relies on to support his methodology and calculations) was 216 days or the decay rates obtained in Suta (which he also relies on) ranged from two years to almost six years.

Furthermore, simply because a study or studies were conducted in which the authors attempted to quantify the decay rate of formaldehyde does not mean that the methods or results are generally accepted in the scientific community. As illustrated above, the decay rate varies significantly. Further, Zinn noted the test method could have an impact on the results. Perhaps the most telling of all is that even Dr. Hewett admits certain occupied trailers had higher levels of formaldehyde over time, which demonstrates the unreliability of his presumption that formaldehyde

---

[16]*Id.* at 817.

levels in trailers must decrease over time. In fact, the data was so contrary to his presumptions that he chose to disregard it in order for his formulas and tables to work.[17] This is exactly why such results are highly questionable and unbelievable.

In summary, while studies have been conducted to try and determine the decay rate of formaldehyde, there is no generally accepted method by which to do so and there is no generally accepted rate of decay for formaldehyde. See *Wallace*. There are simply too many variables to obtain such a rate.

Accordingly, for the foregoing reasons RBD respectfully requests that this Honorable Court strike the testimony and report of Paul Hewett

Respectfully submitted,

*/s/ Randall C. Mulcahy*
LYON H. GARRISON, Bar No. 19591
SCOTT P. YOUNT, Bar No. 22679
RANDALL C. MULCAHY, Bar No. 26436
DARRIN L. FORTE, Bar No. 26885
KELLY M. MORTON, Bar No. 30645
GARRISON, YOUNT, FORTE
& MULCAHY, L.L.C.
909 Poydras Street, Ste. 1800
New Orleans, LA 70112
Telephone: (504) 527-0680
Facsimile: (504) 527-0686
*Attorneys for defendant,*
*Recreation By Design, LLC*
Email: rmulcahy@garrisonyount.com

---

[17] *See* Exhibit 3, Deposition of Paul Hewett, pps. 119-121; 122-125.

## CERTIFICATE OF SERVICE

      I hereby certify that on May 5th, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of this electronic filing to all known counsel of record who are CM/ECF participants.

                                                */s/ Randall C. Mulcahy*
                                                RANDALL C. MULCAHY, Bar No. 26436