# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * MDL NO. 1873 <br> * <br> * SECTION "N" (5) <br> * |
| THIS DOCUMENT RELATES TO:   09-3251 <br> Earline Castanel vs. Recreation by Design, LLC | * JUDGE ENGELHARDT <br> * <br> * MAGISTRATE CHASEZ <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PRE-TRIAL ORDER

1. **PRE-TRIAL CONFERENCE**

    A Pre-Trial Conference in the above captioned matter will occur before this

Honorable Court on Thursday, May 6, 2010, at 9:00 a.m. at the United States District

Court for the Eastern District of Louisiana before the Honorable Judge Kurt Engelhardt.

2. **APPEARANCE OF COUNSEL**

    **FOR PLAINTIFF, EARLINE CASTANEL:**

    GERALD E. MEUNIER
    JUSTIN I. WOODS
    **PLAINTIFFS' CO-LIAISON COUNSEL**
    Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
    2800 Energy Centre, 1100 Poydras Street
    New Orleans, Louisiana 70163
    Telephone: (504) 522-2304
    Facsimile: (504) 528-9973
    gmeunier@gainsben.com
    jwoods@gainsben.com

    *-and-*



DENNIS C. REICH
Reich & Binstock, LLP
4265 San Felipe Street, Suite 1000
Houston, Texas 77027
Telephone: (713) 622-7271
Facsimile: (713) 623-8724
dreich@reichandbinstock.com

        -and-

MIKAL C. WATTS
Watts Guerra Craft
Four Dominion Drive
Building Three, Suite 100
San Antonio, Texas 78257
Telephone: (210) 447-0500
Facsimile: (210) 447-0501
mcwatts@wgclawfirm.com

T. CHRISTOPHER PINEDO
Attorney at Law
802 N. Carancahua, Suite 2250
Corpus Christi, Texas 78470
Telephone: (361) 866-7444
Facsimile: (361) 866-7440
cpinedo@cpinedolaw.com

*On Behalf of Plaintiff, Earline Castanel*

**FOR DEFENDANTS:**

ANDREW D. WEINSTOCK
**DEFENDANT MANUFACTURERS' LIAISON COUNSEL**
Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock, APLC
3838 N. Causeway Boulevard, 29th Floor
Three Lakeway Center
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Facsimile: (504) 837-3119
andreww@duplass.com

        -and-

LYON H. GARRISON
SCOTT P. YOUNT
DARRIN L. FORTE
RANDALL C. MULCAHY
KELLY M. MORTON
Garrison, Yount, Forte & Mulcahy, LLC
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone:     (504) 527-0680
Facsimile:      (504) 527-0686
lgarrison@garrisonyount.com
syount@garrisonyount.com
dforte@garrisonyount.com
rmulcahy@garrisonyount.com
kmorton@garrisonyount.com

*On Behalf of Recreation by Design, LLC*

3.   **REPRESENTED PARTIES**

   A.     **PLAINTIFF EARLINE CASTANEL**

   Plaintiff Earline Castanel is a resident of the Parish of Orleans.

   B.     **DEFENDANT, RECREATION BY DESIGN, LLC (hereinafter "RBD")**

   Recreation By Design, LLC is an Indiana limited liability company with its

principal place of business in Indiana.

4.   **JURISDICTION**

   Jurisdiction is proper based on 28 U.S.C. § 1332 (diversity of citizenship) and 28

U.S.C. § 1331 (federal question), as well as 28 U.S.C. § 1367 (supplemental jurisdiction).

Jurisdiction is not contested by Defendant.

5.   **PENDING MOTIONS**

   **As of May 4, 2010 at 4:30 p.m., the following motions remain outstanding:**

**A.     PLAINTIFF:**

1.      Motion to Exclude References to Certain Incidents relating to Dr. Lawrence

         Miller (Rec. Doc. 13330)

2.      Motion to Prohibit Reference to the Financial Matters of Earline Castanel

         (Rec Doc. 13331)

3.      Motion to Strike the Addendum to Michael Ginevan, Ph.D's Expert Report

         (Rec. Doc. 13332)

4.      Plaintiff's Request to Add One Additional Witness (Rec. Doc. 13291)

5.      Plaintiff's Motion to Exclude the Testimony of Dr. Ronald French

         (Rec. Doc. 13603)


**B.     DEFENDANT, RECREATION BY DESIGN, LLC:**

1.      Motion for Summary Judgment as to Causation (Rec. Doc. 13235)

2.      Motion for Partial Summary Judgment as to Plaintiff's Failure to Warn Claims

         (Rec. Doc. 13241)

3.      Motion for Partial Summary Judgment on Exclusion of Certain Claims (Rec.

         Doc. 13232)

4.      Motion for Partial Summary Judgment as to Plaintiff's Mental Anguish Claims

         (Rec. Doc. 13234)

5.      Motion for Partial Summary Judgment as to Surgery Related Claims

         (Rec. Doc. 13233)

6.      Motion to Adopt Prior Evidentiary Rulings Entered in the *Wright* bellwether

         trial (Rec. Doc. 13309)

7.      Motion to Strike Plaintiff's References to an Alternative Design and Related Demonstrative Exhibits (Rec. Doc. 13308)

8.      Motion in Limine to Exclude the Testimony of Kenneth Laughery, Ph.D. (Rec. Doc. 13297)

9.      Motion in Limine to Exclude the Testimony of Alexis Mallet (Rec. Doc. 13315)

10.      Motion in Limine to Exclude the Testimony of Gerald McGwin, Ph.D. (Rec. Doc. 13306)

11.      Motion in Limine to Exclude the Testimony of Lawrence Miller, M.D. (Rec. Doc. 13298)

12.      Motion in Limine to Exclude the Testimony of William Scott (Rec. Doc. 13307)

13.      Motion in Limine to Exclude the Testimony of Edward Shwery (Rec. Doc. 13303)

14.      Motion in Limine to Exclude the Testimony of Stephen Smulski (Rec. Doc. 13310)

15.      Motion in Limine to Exclude the Testimony of Patricia Williams (Rec. Doc. 13300)

16.      Motion in Limine to Exclude Evidence and/or Testimony of Surgery Related Claims (Rec. Doc. 13314)

17.      Motion for Daubert Hearing to Exclude Testimony of Lawrence Miller, M.D. (Rec. Doc. 13599)

18.      Motion for Daubert Hearing to Exclude Testimony of Paul Hewett (Rec. Doc. 13600)

19.   Motion for Leave to Supplement Report of Robert James, Ph.D. (Rec. Doc. 13939)

20.   Exparte/Consent Motion to Expedite Hearing on Motion for Leave to File/Motion to Supplement Report of Robert James (Rec. Doc. 13940)

21.   Motion for Leave to File *Motion in Limine* to Prevent and/or Exclude Testimony Regarding Fleetwood (Rec. Doc. 13951)

22.   Exparte/Consent Motion to Expedite Hearing on Motion for Leave to File/*Motion in Limine* to Prevent and/or Exclude Testimony Regarding Fleetwood (Rec. Doc. 13953)

23.   Motion for Leave to File Motion to Strike the Testimony of Albert Jarrell (Rec. Doc. 13955)

24.   Exparte/Consent Motion to Expedite Hearing on Motion for Leave/Motion to Strike the Testimony of Albert Jarrell (Rec. Doc. 13956)

6.   **BRIEF SUMMARY OF MATERIAL FACTS**

A.   **PLAINTIFF'S SUMMARY OF THE FACTS**

Prior to Hurricane Katrina, Plaintiff Earline Castanel resided in her home at 2925 St. Peters Street in New Orleans, Louisiana.  As a result of Hurricane Katrina, Ms. Castanel was displaced from her permanent home in New Orleans since her home flooded and she lost all of her belongings.  Since Ms. Castanel's home was rendered uninhabitable as a result of Hurricane Katrina, she was deemed eligible to receive emergency housing assistance from the Federal Emergency Management Agency (hereinafter "FEMA"), pursuant to the Stafford Act and applicable federal regulations.  The emergency housing assistance provided to Ms. Castanel was in the form of a travel trailer (sometimes hereinafter "the Trailer")

manufactured by the defendant, RBD, with Vehicle Identification Number (VIN)

5CZ200R2461125294.  This trailer was manufactured in Elkhart, Indiana in December,

2005.  The RBD Trailer was delivered to Ms. Castanel for occupancy in New Orleans,

Louisiana, at 2261 Urquhart Street in March, 2006.

Ms. Castanel began living in the Trailer in March, 2006 and stopped living there in

late August, 2007 when permanent housing became available.  She resided continuously in

the Trailer during this period of time.  When Ms. Castanel moved into the trailer she

noticed a smell, like "newness" and after that, she "started getting stopped up."  After living

in this RBD travel trailer, Ms. Castanel was treated by Dr. Joseph Gautreaux for upper

respiratory/rhinosinusitis problems as a result of her exposure to formaldehyde.

RBD had a duty to warn Ms. Castanel about the dangers and risks of formaldehyde

in the travel trailer; this duty was continuing in nature, and legally was owed to Ms.

Castanel by RBD during the entire period that Ms. Castanel occupied this travel trailer.  The

exposure of Plaintiff Ms. Castanel to formaldehyde offgassing from the travel trailer

resulted from the normal, foreseeable, and intended use of the travel trailer as an

emergency housing unit, without substantial alteration, in the condition in which RBD sold

the travel trailer.  The design of the travel trailer as a housing unit, including the use of

particle board, hardwood plywood, medium density fiberboard, other composite wood

products, and other products that contain urea-formaldehyde or urea-formaldehyde resins,

is dangerous and defective and posed an unreasonable risk of injury to Plaintiff Ms.

Castanel.  The use of particle board, hardwood plywood, medium density fiberboard, and

other composite wood products that contain formaldehyde constitutes a dangerous defect

in composition or manufacture that posed an unreasonable risk of harm to Ms. Castanel.

While RBD sold the Trailer to be used as temporary housing, the RBD Owner's Information Manual indicates clearly that the Trailer is a "recreational vehicle" and not intended for residential occupancy. Further, the RBD Owner Information Manual for this trailer contained no information or warnings regarding the hazards or adverse health effects associated with formaldehyde. Also, there were no labels or warnings posted in the trailer provided to Ms. Castanel concerning the hazards of formaldehyde.

The RBD travel trailer was in a defective condition and was unreasonably dangerous under its intended use as temporary residential housing at the time the travel trailer left RBD's control. Ms. Castanel was an intended and foreseeable user of the travel trailer, and the damages and losses to Ms. Castanel reasonably could have been anticipated by RBD. Further, alternative materials were available at the time this unit was manufactured by RBD which would have eliminated or greatly reduced Ms. Castanel's exposure to formaldehyde.

The defects in the travel trailer are the result of and/or include, but are not limited to, the following:

1.     failing to design the travel trailer so as not to emit dangerous levels of formaldehyde;

2.     providing a travel trailer which, by virtue of its design and/or manufacture and/or composition, was unreasonably dangerous under reasonably anticipated use as an emergency housing unit;

3.     providing a travel trailer which, by virtue of a lack of an adequate warning(s), was unreasonably dangerous under its anticipated use as an emergency housing unit; and

4.     providing a travel trailer which did not conform to the implied warranties made by RBD regarding its fitness for use as an emergency housing unit.

Further, RBD negligently failed to:

1.     adequately test the travel trailer to properly evaluate the levels of emissions of formaldehyde under foreseeable conditions for an extended period of time;

2.     conduct formaldehyde testing of travel trailers for Urea Formaldehyde prior to shipping them from RBD plants;

3.     test the travel trailer for formaldehyde once becoming aware of same through the news media and other outlets; and

4.     adhere to residential or building codes in the manufacture of a unit intended for residential occupancy.

Ms. Castanel, a 79 year old native New Orleanian, seeks compensatory damages for: physical pain and suffering; mental anguish and emotional distress including, but not limited to fear of cancer; past and future medical expenses, including costs for a sinus surgery necessitated by this exposure, as well as the costs of future medical treatment, services, surveillance, and/or procedures to address physical and/or mental injuries from formaldehyde exposure which are currently manifest; the aggravation of Ms. Castanel's pre-existing conditions, including exacerbation of Ms. Castanel's upper respiratory conditions and her rhinosinusitis, and other conditions; and/or loss of enjoyment of life suffered by Ms. Castanel as a result of this exposure.

B.     **DEFENDANT, RECREATION BY DESIGN, LLC'S SUMMARY OF THE FACTS**

Recreation By Design, LLC ("RBD"), is an Indiana based limited liability company that specializes in custom built recreational vehicles. Recreation by Design has been in business since 1999. After Hurricane Katrina, Recreation by Design was contacted by Morgan Buildings and Spa, Inc., to produce travel trailers for Morgan pursuant to a contract Morgan held with FEMA. Recreation by Design produced approximately 2,600 units built to Morgan's specification. In turn, Morgan sold these units to FEMA and FEMA accepted these units as conforming with FEMA's specifications.

Recreation by Design manufactured the Morgan units utilizing the same materials as it did for its commercially available units. Recreation by Design started a second production facility with additional employees in order to meet the demand by Morgan, but continued to utilize quality control procedures in building these units to industry standards and Morgan specifications. As part of this production, Recreation by Design actually postponed its commercial production to supply the Morgan units.

Travel trailer VIN#5CZ200R2461125294 was manufactured on or about December 2, 2005 at Recreation by Design's Plant No. 2 in Elkhart, Indiana. This unit was shipped to Baton Rouge, Louisiana where it was inspected by FEMA and Morgan and who accepted the unit for use.

On or about March 11, 2006, Ms. Castanel moved into the Recreation by Design travel trailer that was located at 2261 Urquhart Street. This unit was hauled and installed under the control of IA/TAC contractor, Shaw Environmental, Inc., ("Shaw") from the Baton Rouge location and eventually to the Urquhart address. At the time of unit inspection, there was no damage to the unit. Ms. Castanel occupied the trailer until approximately July

of 2007.

Ms. Castanel has claimed various physical and emotional injuries resulting from her occupancy in the trailer.  Particularly, she claims an exacerbation of rhinosinusitis and exacerbation of mental anguish along with a fear of cancer.  Despite her allegations, none of plaintiff's treating physicians has diagnosed her with any formaldehyde-related condition, and she has failed to demonstrate any causal relationship between her alleged exposure to formaldehyde and any medical condition.

Recreation by Design denies that there are any aspects of the construction or design of the unit occupied by Ms. Castanel which rendered the unit unreasonably dangerous. Further, Recreation by Design denies plaintiff's allegations that Recreation by Design had a duty to warn of the alleged condition regarding formaldehyde in the unit.

7.      **UNCONTESTED MATERIAL FACTS**

A.      Plaintiff, Earline Castanel, is a resident of the Parish of Orleans in the State of Louisiana.

B.      FEMA provided a trailer with Vehicle Identification Number (VIN) 5CZ200R2461125294 to Plaintiff, Earline Castanel, following Hurricane Katrina.

C.      This travel trailer was a 2006 Model 33' PM-FH Handicap Unit manufactured by Defendant Recreation by Design, LLC in Elkhart, Indiana on or about December 2, 2005 for use by FEMA as emergency housing.

D.   RBD sold approximately 2600 travel trailers to Morgan Buildings & Spas, Inc. (hereinafter "Morgan") for provision to FEMA following hurricanes Katrina and Rita. Additional RBD travel trailers were also bought by FEMA from other Dealers/Distributors.

E.   Morgan sold the travel trailer assigned to Ms. Castanel to FEMA for use as emergency housing.

F.   Certain components parts used by RBD in the manufacture of this travel trailer contained urea formaldehyde and/or urea formaldehyde resins.

G.   The RBD travel trailer was shipped to the FEMA Staging area in Baton Rouge, Louisiana, where it was received and inspected by FEMA on or about December 7, 2005.

H.   The RBD travel trailer was picked up at the FEMA staging area in Baton Rouge, Louisiana and hauled by Shaw to its Manhattan staging area prior to being delivered to 2261 Urquhart Street, New Orleans, Louisiana.

I.   The RBD travel trailer was delivered and installed by Shaw's subcontractor at 2261 Urquhart Street, New Orleans, LA.

J.   Earline Castanel resided in this RBD unit from approximately March 2006 to approximately July or August of 2007 or approximately 16 or 17 months.

K.   The travel trailer occupied by Ms. Castanel was a 33-PM -handicap accessible model with a slide-out feature.

L.   FEMA has provided thousands of travel trailers to displaced residents following natural disasters in the United States since at least 1992, including displaced residents from the Gulf Coast region.

M.    FEMA provided approximately 143,000 emergency housing units to families across the Gulf Coast, in response to hurricanes Katrina and Rita.

N.    The RBD Owner Information Manual (RBD05189 - RBD05250) for the trailer contained no warning regarding formaldehyde.

O.    There were no labels posted in the trailer provided to Ms. Castanel warning about formaldehyde.

P.    Prior to Hurricane Katrina, RBD had Material Safety Data Sheets ("MSDS") from composite wood providers which state that certain composite wood products used by RBD in the manufacture of travel trailers contain formaldehyde.

Q.    On January 4, 2010 through January 8, 2010, at the FEMA Storage Facility at Lottie, Louisiana the RBD trailer Vin # 5CZ200R2461125294 was tested for formaldehyde by Tony Watson of Workplace Hygiene on behalf of RBD.

R.    The first test was performed on January 4, and the trailer was tested as it was found.  The level of formaldehyde found in the trailer was 9 parts per billion (ppbv).  This was a one hour test.  During the test, the average temperature in the trailer was 44°F and the average relative humidity was 68%.

S.    A second formaldehyde measurement was taken on January 7, 2010.  This sample was taken after the trailer was aired out with all the doors, windows, and vents open for 24 hours and then the unit was closed up and heaters turned on for 46 hours.  This was a one hour sample, and it resulted in a formaldehyde level of 50 parts per billion (ppbv).  During the conditioning

period, the high temperature in the trailer was 75° and the low temperature was 54° during the first 25 hours of conditioning, and the high temperature in the trailer was 81°F and the low temperature was 69°F within the 21 hour period prior to sampling.  During the sampling period, the average temperature in the trailer during was 66°F degrees and the average relative humidity in the trailer was 67%.

T.    A third formaldehyde measurement was taken beginning on January 7th and continuing on through January 8, 2010 by Workplace Hygiene.  This was a 24 hour sample that was taken after the trailer was aired out with all the doors, windows and vents open for 24 hours, and then the unit was closed up and heaters turned on for 46 hours.  This 24 hour sample resulted in a formaldehyde level of 20 parts per billion (ppbv).  During the conditioning period, the high temperature in the trailer was 75° and the low temperature was 54° during the first 25 hours of conditioning, and the high temperature in the trailer was 81°F and the low temperature was 69°F within the 21 hour period prior to sampling.  During the sampling period the average temperature in the trailer during was 59°F degrees and the average relative humidity in the trailer was 57%.

U.    The weather data collected by Dr. Lee Branscome, Ph.D., a certified meteorologist, attached to his report dated January 21, 2010, is representative of the weather conditions for the time frame included herein.

8.      **CONTESTED ISSUES OF FACT**

A.      <u>**PLAINTIFF, EARLINE CASTANEL:**</u>

1.      Whether or not the RBD travel trailer provided to Earline Castanel by FEMA contained levels of formaldehyde which were hazardous to the health and well being of Earline Castanel.

2.      Whether or not the RBD travel trailer provided to Earline Castanel produced formaldehyde levels and/or exposure sufficient to cause injury including fear of cancer.

3.      Whether or not Plaintiff, Earline Castanel was given an Owner's Manual with this travel trailer.

4.      The nature, extent and adequacy of all pertinent warnings allegedly provided to Plaintiff, Earline Castanel by Defendant RBD.

5.      Whether or not the RBD trailer occupied by Plaintiff was unreasonably dangerous in its design for its intended or reasonably foreseeable use by Plaintiff, Earline Castanel.

6.      Whether or not the RBD trailer occupied by Plaintiff was unreasonably dangerous in its construction or composition for its intended or reasonably foreseeable use by Plaintiff, Earline Castanel.

7.      Whether or not RBD had alternative designs or alternative materials available to it at the time of manufacture.

8.      Whether or not the RBD trailer was unreasonably dangerous in its intended or reasonably foreseeable use, based on inadequate

warnings to Plaintiff, Earline Castanel.

9.    Whether or not RBD failed to provide an adequate warning regarding Urea Formaldehyde inside the trailer occupied by Plaintiff, Earline Castanel that rendered the unit unreasonably dangerous.

10.    Whether or not RBD failed to provide adequate warning of the existence of and health effects caused by formaldehyde in the emergency housing units provided to Earline Castanel.

11.    The amount of damages owed to Plaintiff, Earline Catanel, as a result of the actions of Defendant, RBD, regarding:

    A.    Past, present, and future physical pain and suffering of Earline Castanel;

    B.    Past, present, and future mental anguish and emotional distress of Earline Castanel including, but not limited to fear of cancer;

    C.    Past, present, and future medical expenses for Earline Castanel; including expenses for the surgery related to her exposure to formaldehyde;

    D.    Loss or impairment of life's pleasures for Earline Castanel;

    E.    Other damages which the trier of fact deems appropriate in accordance with the evidence.

12.    Whether or not there is an increased risk of cancer associated with exposure to formaldehyde.

**B.**     **DEFENDANT, RECREATION BY DESIGN, LLC:**

1.     Whether or not the Recreation By Design travel trailer provided to Earline Castanel by FEMA contained levels of formaldehyde which were hazardous to the health and well being of Earline Castanel.

2.     Whether or not the Recreation by Design travel trailer provided to Earline Castanel by FEMA contained levels of formaldehyde which injured Earline Castanel.

3.     Whether or not Plaintiff Earline Castanel was given an Owner's Manual with this travel trailer.

4.     The nature, extent and adequacy of all pertinent warnings allegedly provided to the Plaintiff Earline Castanel by Defendant Recreation by Design.

5.     Whether or not the Recreation By Design trailer occupied by Plaintiff was unreasonably dangerous in its design for its intended or reasonably anticipated use by Plaintiff, Earline Castanel.

6.     Whether or not the Recreation By Design trailer occupied by Plaintiff was unreasonably dangerous in its construction or composition for its intended or reasonably anticipated use by Plaintiff, Earline Castanel.

7.     Whether or not Recreation By Design had alternative designs available to it at the time it manufactured the unit occupied by Recreation By Design.

8.     Whether or not the Recreation By Design trailer was unreasonably dangerous in its intended or reasonably anticipated use, based on inadequate warnings to Plaintiff, Earline Castanel.

9.     The facts and circumstances surrounding the handling of the Recreation By Design unit by Shaw and/or its employees and/or agents.

10.    The amount of damages owed, if any, to Plaintiff Earline Castanel as a result of the actions of Defendant, Recreation By Design, regarding;

   A.    Past, present, and future physical pain and suffering of Earline Castanel;

   B.    Past, present, and future mental anguish and emotional distress of Earline Castanel including, but not limited to fear of cancer;

   C.    Future medical expenses for Earline Castanel; and

   D.    Loss or impairment of life's pleasures for Earline Castanel and other damages which the trier of fact deems appropriate in accordance with the evidence.

11.    The specifications in all contractual agreements between the United States/FEMA and/or Morgan Building and Spas and/or Recreation By Design; and the respective parties' knowledge of, and communication with one another about the risks to Plaintiff Earline Castanel arising from any such specifications.

12.     Whether Earline Castanel has any current medical conditions as a result of exposure to formaldehyde emitted by the Recreation By Design travel trailer while she lived there.

13.     Whether Earline Castanel has any permanent medical conditions as a result of exposure to formaldehyde from the Recreation By Design trailer installed by Shaw.

14.     Whether formaldehyde can cause permanent damage; and if so, at what levels of exposure.

15.     Whether formaldehyde can cause cancer; and of so, what type of cancer and at what level of exposure.

16.     Whether Earline Castanel has been exposed to levels of formaldehyde from the Recreation By Design trailer installed by Shaw sufficient to cause her to have an increased risk of cancer.

17.     Whether exposure to formaldehyde at the levels present in the Castanel trailer would cause a person to have a reasonable fear of contracting cancer.

18.     Whether the amount, composition and manner of use of composite wood products can cause formaldehyde off-gassing in a travel trailer sufficient to cause Plaintiff to be exposed to hazardous levels of formaldehyde.

19.     Whether residential, local or international building codes apply to the travel trailer.

20.     What level of formaldehyde is capable, if any, of causing eye,  nose and/or throat irritation or other health effects.

21.     Whether the trailer used by Earline Castanel was damaged prior to, during or after the initial installation on Urquhart Street in New Orleans, such that the interior air formaldehyde levels were actually increased.

22.     Whether Shaw and/or its subcontractor which jacked and blocked the Castanel trailer were trained and/or competent to do so.

23.     Whether the installation of the Recreation By Design trailer on Urquhart Street was in compliance with government specifications.

24.     Whether the installation of the Recreation By Design trailer complied with applicable codes.

25.     Whether the jacking, blocking and/or installation of this unit caused an increase in formaldehyde off-gassing.

26.     Whether the jacking, blocking, and/or installation of the unit caused any warping or flexing of the frame sufficient to cause damage to the trailer.

27.     Whether or not there existed an unreasonably dangerous level or levels of formaldehyde emissions during the period of Plaintiff's occupancy of the Recreation By Design trailer.

28.     Whether Earline Castanel has any current medical condition caused by exposure to formaldehyde emitted by the Recreation By Design trailer while she lived there.

29.   Whether Plaintiff would have read and heeded any warning.

30.   Whether FEMA had knowledge of any alleged damage-causing characteristics and the extent of that knowledge.

31.   Whether Morgan had knowledge of any alleged damage-causing characteristics and the extent of that knowledge.

32.   Whether FEMA is a sophisticated purchaser/user of emergency housing units.

33.   Whether Morgan is a sophisticated purchaser/user of emergency housing units.

34.   Whether Plaintiff failed to mitigate her damages, if any.

35.   Whether Plaintiff's pre-existing medical and/or emotional conditions caused or contributed to Plaintiff's alleged injuries or damages.

36.   Whether Plaintiff, through action or inaction, contributed to her alleged injuries or damages.

37.   Whether any alleged defect in the trailer was open and obvious.

38.   Whether the harm caused to Plaintiff, if any, results from the acts or omissions of third parties.

39.   The nature and extent of Recreation by Design's interaction with FEMA, either directly or indirectly though Morgan Building and Spas.

40.   Whether Recreation By Design is a government contractor.

41.   The nature and extent of FEMA's review of design of Morgan's prototype trailer.

42.     Whether any alleged alternate design was economically feasible for use.

43.     Whether any alleged alternate design would have adversely affected the utility and/or safety of the product.

44.     Whether any alleged alternate design would have reduced formaldehyde levels below certain levels.

45.     Whether any defect existed at the time the product left Recreation By Design's contol.

46.     Whether FEMA by experience and expertise was aware of the presence and possible hazards, if any, associated with formaldehyde.

47.     Whether Morgan by experience and expertise was aware of the presence and possible hazards, if any, associated with formaldehyde.

48.     Whether the unit at issue was subject to misuse or abuse after it left Recreation By Design's control.

49.     Whether the unit at issue was substantially modified from its original form after it left Recreation By Design's control.

50.     Whether the HVAC system was replaced and/or improperly repaired by a third party.

51.     Whether there was any damage to the unit at the time it was accepted for use.

52.     Whether Shaw had any role in developing, testing or engineering any aspect of FEMA' instructions to place travel trailers on concrete blocks.

53.     Whether FEMA inspected and/or accepted the Castanel trailer after installation.

54.     Whether the installation process damaged the frame or structure of the Castanel trailer in any way.

55.     Whether during the period of Shaw's maintenance of the Castanel trailer, the HVAC was properly serviced and/or repaired.

56.     Whether during the period of Shaw's maintenance of the Castanel trailer, Plaintiff ever lodged a formaldehyde or other odor-related complaint.

57.     Whether Plaintiff ever complained to FEMA or any maintenance contractor of any odor-related issues in the Trailer during the entire time she occupied it.

58.     Whether, after Shaw's maintenance responsibilities ended, maintenance properly continued on the trailer during plaintiff's residency.

59.     Whether the company that deactivated the Castanel trailer damaged the trailer in any way.

60.     Whether the Castanel trailer was damaged during the time it sat unmaintained in the field in Lottie, Louisiana.

61.     Whether Shaw was ever aware that the level of formaldehyde in travel trailers was dangerous.

62.     Whether FEMA and/or Morgan knew that travel trailers were built with products containing urea-formaldehyde.

63.    Whether there was any damage to the Castanel trailer as of March 11, 2006.

64.    Whether there existed an unreasonably dangerous level or levels of formaldehyde emissions during the period of plaintiff's occupancy of the trailer.

65.    Whether Castanel's cigarette smoking, which is known by Castanel to cause cancer, is the cause of Castanel's alleged "fear of cancer."

66.    Whether Ms. Castanel received the FEMA Formaldehyde Notices.

9.    **CONTESTED ISSUES OF LAW:**

A.    Whether Defendant, RBD is liable to Plaintiff Earline Castanel under the Louisiana Product Liability Act ("LPLA").

B.    Whether the Defendant's legal fault, if any, was a cause-in-fact and proximate cause of damages sustained and recoverable by Plaintiff Earline Castanel.

C.    Whether the travel trailer provided to Earline Castanel was unreasonably dangerous in design and/or construction and whether that design and/or construction caused Earline Castanel to suffer damages.

D.    Whether the travel trailer provided to Earline Castanel was unreasonably dangerous; whether RBD inadequately warned of that danger; and whether that inadequate warning caused damages to Earline Castanel.

E.    The amount of damages, if any, sustained by Earline Castanel.

F.    Whether this travel trailer was defective because of a lack of and/or an inadequate warning, and whether said lack of and/or inadequate warning caused damages to Earline Castanel.

G.    Whether specifications provided by the government are reasonably precise as a matter of law when they describe exactly the result desired but do not prevent the contractor from exercising discretion as to the methods for compliance.

H.    Whether there is a basis for asking the jury to allocate fault to a specific non-party person or entity, and, in the case of FEMA, whether that fault must rise to the level of gross or willful misconduct for fault to be allocated to FEMA.

I.    Whether the manufacture of the RBD trailer used by Earline Castanel was subject to residential or building codes in its use as temporary housing.

J.    Whether Shaw was negligent in failing to warn of the existence of Urea Formaldehyde in the Travel Trailer occupied by the Plaintiff.

K.    Whether Plaintiff Earline Castanel may be assessed with comparative fault.

L.    Whether or not the "governmental contractor defense" is available to Recreation By Design.

M.    Whether Shaw or and/or its subcontractors was negligent, and did said negligence cause damages to Earline Castanel.

N.    Whether Shaw had knowledge of Formaldehyde; whether Shaw inadequately warned; and whether that inadequate warning caused damages to Earline Castanel.

O.    Whether Shaw negligently maintained this travel trailer and caused damage to Plaintiff, Earline Castanel.

P.   Whether, Woodrow Wilson, the subcontractor hired by Shaw to jack and block the Castanel trailer in January 2006, was negligent, and did said negligence cause damages to Earline Castanel.

Q.   Whether Shaw is responsible for any negligence of its subcontractor Woodrow Wilson for the manner in which it jacked and blocked the Castanel trailer in January of 2006.

R.   Whether Shaw and/or its subcontractor responsible for maintaining the Castanel travel from March 2006 until June/July 2006 or any period therein was negligent in any way that proximately caused damage to the Plaintiff.

S.   Whether Shaw failed to adequately warn Earline Castanel of formaldehyde in her  trailer during her occupancy, and if Shaw's failure to adequately warn caused damage to Plaintiff Earline Castanel.

T.   Whether Plaintiff has failed to mitigate her damages.

U.   Whether RBD owed any pre- or post-sale duty to warn Plaintiff of the dangers she alleges.

V.   Whether FEMA's status as a sophisticated purchaser/user relieves RBD of any alleged duty to warn.

W.   Whether Morgan's status as a sophisticated purchaser/user relieves RBD of any alleged duty to warn.

X.   Whether Plaintiff is entitled to recover for fear of cancer.

Y.   Whether Plaintiff is judicially estopped from asserting contrary claims.

Z.   Whether any alleged defects were open and obvious.

AA.   Whether Plaintiff's injuries or damages were a result of the actions/inactions of a third party for which RBD is not responsible.

BB.   Whether Plaintiff's alleged injuries and damages, if any, were caused by Plaintiff's pre-existing medical and/or emotional conditions.

CC.   Whether FEMA has an obligation to inform end users of any alleged health hazards associated with formaldehyde.

DD.   Whether Plaintiff has an obligation to locate, review and adhere to the warnings provided by FEMA and/or any other individual or entity.

EE.   Whether Shaw owed Plaintiff a duty to warn.

FF.   Whether Shaw's contractual duty to perform maintenance to the RBD travel trailer extended to Plaintiff and if so, whether Shaw breached this duty.

GG.   Whether FEMA's actions or inactions caused damage to Plaintiff.

HH.   Whether any subsequent FEMA maintenance contractor was negligent in maintaining the Castanel trailer and, if so, did that negligence cause damage to Plaintiff.

II.   Whether RBD is protected from Plaintiff's demands by operation of La. R.S. 9:2771.

JJ.   Whether Plaintiff's claims against RBD are prescribed.

KK.   Whether Shaw is responsible for any negligence of its subcontractors.

LL.   Whether the injuries alleged by Plaintiff, if any at all, were legally or proximately caused by intervening and superseding causes and circumstances.

MM.   Whether Plaintiff's alleged injuries were caused by acts or omissions of a third party for which RBD is not responsible.

10.   **EXHIBITS**

Attached hereto as Exhibit A is Plaintiff's Exhibit List.  Defendant Recreation by Design, LLC's Exhibit List is attached as Exhibit B.   Because of the outstanding motions, parties attach their entire exhibits lists out of an abundance of caution.  The parties will consolidate these lists into a joint submission prior to trial.

11.   **DEPOSITIONS**

Attached hereto as Exhibit C is the Joint Trial Plan in this regard.

The parties will offer the deposition testimony, or portions thereof, of witnesses identified in the attached Trial Plan as being presented by videotape or transcribed deposition.  The parties reserve the right to introduce by deposition the testimony of any witness who is unavailable to testify at trial, though subpoenaed to do so, or when an attempt to subpoena said witness is unsuccessful, or the person resides out of the jurisdiction of this Honorable Court.  However, in an effort to make it easier on this honorable Court, all parties identify the following individuals who will likely be called by video deposition at trial:

1.   Dr. Christopher DeRosa

2.   Stanley Larson

3.   Michael Gaume

4.   George Cornish

5.   Robert Wozniak

6.   Mark Polk (objection - motion pending)

7.      David Garrett

8.      Guy Bonomo

9.      Brian Boyle

10.     Michael Lapinski

11.     Joseph Little

12.     Brian McCreay

13.     Martin McNeese

14.     Kevin Souza

15.     Travis Morris

16.     Faye Green

17.     Geoffrey Compeau, Ph.D.

18.     John Osteraas, Ph.D.

19.     Thang Hoang, M.D.

20.     Alan Bowers, M.D.

12.     **CHARTS AND GRAPHS**

The parties may use charts, graphs, powerpoints, and other demonstrative aids

contained in their experts' reports and/or utilized during expert depositions and/or

marshaled and/or exchanged prior to trial.  The parties have agreed to exchange charts

and graphs, and other visual aides to be used at trial at the offices of Lambert & Nelson,

PLC, 701 Magazine Street, New Orleans, Louisiana 70130 at the time instructed by the

Court.

13.    **WITNESSES**

Attached hereto as Exhibit D is Plaintiff's Witness List.  Defendant Recreation by Design, LLC's Witness List is attached as Exhibit E.  The parties will consolidate these lists into a <u>joint</u> submission prior to trial or as otherwise instructed by this Honorable Court.

14.    **JURY TRIAL**

The parties will submit jury questions/instructions, and objections thereto, and will participate in a jury charge conference with the Court as instructed by this Honorable Court.

15.    **DAMAGES**

The issues of liability will not be tried separately from that of quantum.

16.    **OTHER MATTERS THAT MIGHT EXPEDITE A DISPOSITION OF THE CASE**

17.    **TRIAL**

Trial shall commence on Monday, May 17, 2010, at 8:30 a.m. and will require approximately six days of trial to complete.

18.    **STATEMENT OF COMPLIANCE-I**

This Pre-Trial Order has been formulated after conference at which counsel for the respective parties have appeared in person.   Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19.   **STATEMENT OF COMPLIANCE-II**

Counsel acknowledge that cell phones, pagers, beepers, and any other electronic communication devices are not allowed in the courtroom, and shall abide by this rule. Counsel shall further notify all clients and his/her witnesses of this rule.  Only counsel for the parties are allowed to have computers in the courtroom.

20.   **SETTLEMENT**

There have been discussions between and amongst any parties with mediator John Perry relating to a settlement of claims but these discussions were unsuccessful.

Respectfully submitted:

BY:   _Gerald E. Meunier_

GERALD E. MEUNIER, (#9471)   *by Linda J Nelson*
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer,
L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile: (504) 528-9973
gmeunier@gainsben.com

-and-

/s/Justin I. Woods
JUSTIN I. WOODS, (#24713)
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer,
L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile: (504) 528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'**
**STEERING COMMITTEE**
ANTHONY BUZBEE, (Texas # 24001820)
RAUL BENCOMO, (#2932)
FRANK D'AMICO, Jr., (#17519)
MATT MORELAND, (#24567)
LINDA NELSON, (#9938)
MIKAL WATTS, (Texas # 20981820)
DENNIS REICH, (Texas # 16739600)
ROBERT BECNEL, (#14072)

        *-and-*


 */s/ Andrew D. Weinstock*
ANDREW D. WEINSTOCK
**DEFENDANT MANUFACTURERS' LIAISON COUNSEL**
Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock,
APLC
3838 N. Causeway Boulevard, 29th Floor
Three Lakeway Center
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Facsimile: (504) 837-3119
andreww@duplass.com

        *-and-*


LYON H. GARRISON (#19591)
SCOTT P. YOUNT (#22679)
DARRIN L. FORTE (#26885)
RANDALL C. MULCAHY (#26436)
KELLY M. MORTON (#30645)
Garrison, Yount, Forte & Mulcahy, LLC
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone:    (504) 527-0680
Facsimile:    (504) 527-0686
lgarrison@garrisonyount.com
syount@garrisonyount.com
dforte@garrisonyount.com
rmulcahy@garrisonyount.com
kmorton@garrisonyount.com

*Counsel for Recreation by Design, LLC*

*Castered PTO*

New Orleans, Louisiana, this _____ 6th _____ day of _____ May _____, 2010.

_____
HONORABLE KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE