UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER  MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION  SECTION "N-5"

JUDGE ENGELHARDT
MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*ALL MISSISSIPPI CASES*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PLAINTIFFS' OPPOSITION TO DEFENDANTS
BECHTEL NATIONAL, INC.'S AND CH2M HILL CONSTRUCTORS, INC.'S
12(b)(6) MOTION TO DISMISS PLAINTIFFS'
MISSISSIPPI PRODUCT LIABILITY CLAIMS

MAY IT PLEASE THE COURT:

Plaintiffs, through undersigned counsel, hereby oppose Defendants Bechtel National, Inc.'s ("Bechtel") and CH2M Hill Constructors, Inc.'s ("CH2M") 12(b)(6) Motion to Dismiss Plaintiffs' Mississippi Products Liability Claims (Doc. 13422) and in support would show:

**I. BACKGROUND**

Plaintiffs in this Multi-District Litigation were provided emergency housing units ("EHUs") by the under the provisions of the Stafford Act. As a part of the process of assisting those displaced individuals, FEMA contracted with corporations, such as Bechtel and CH2M, to transport and transform travel trailers into temporary substitute housing. In Defendants' motion, Bechtel and CH2M claim they are not liable under the Mississippi Products Liability Act, Miss. Code Annotated § 11-1-63, ("MPLA") because they do not qualify as a "manufacturer." However, the facts, when viewed in the light most favorable to the Plaintiffs, demonstrate that Bechtel's and CH2M's construction and/or modifications transformed the travel trailers into

temporary housing units. Furthermore, Defendants' construction and/or modifications contributed to the damages complained of by the Plaintiffs.

## II. ARGUMENT AND AUTHORITIES

### a. Rule 12(b)(6) Standard

Motions to dismiss for failure to state a claim are "viewed with disfavor and are rarely granted." *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004) (citing *Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997)). In considering a Rule 12(b)(6) motion to dismiss, the Court must take the well-pleaded factual allegations of the complaint as true. *Id.* In addition, "[a]ll questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001). The plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." (Rec. doc. 984) (citing *In re Katrina Canal Breaches Lit.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the Court may dismiss a complaint "only if it appears certain that plaintiff[s] cannot prove any set of facts in support of [their] claim that would entitle [them] to relief." *Jaufre v. Taylor*, 03-0028, 2004 WL 1444945, at *1 (E.D.La. 2004); *see also Priester*, 354 F.3d at 418-19.

### b. Bechtel and CH2M Qualify as Manufacturers Under the MPLA

Bechtel and CH2M's 12(b)(6) Motion to Dismiss MPLA Claims must be denied as the Plaintiffs have made sufficient factual allegations that both Bechtel and CH2M qualify as manufacturers. The MPLA provides that manufacturers are liable for damages caused by a defective product. *See* Miss. Code Annotated § 11-1-63. Since the MPLA does not define manufacturer, it is necessary to look at the Restatement (Second) of Torts for guidance. "A manufacturer, as implied by the Restatement (Second) of Torts § 395, Comment b, is a person or

company 'who regularly, and *in the course of their principal business, create, assemble and/or prepare goods for sale to the consuming public.*'" *Scordino v. Hopeman Bros., Inc.*, 662 So.2d 640, 645 (Miss. 1995) (quoting *Olson v. Ulysses Irrigation Pipe Co., Inc.,* 649 F.Supp. 1511 (Dist.Kan.1986)) (emphasis in original).

In *Lenoir v. C.O. Porter Machinery Co.*, 672 F.2d 1040 (5th Cir. 1982), the Fifth Circuit reversed a directed verdict in favor of the assembler of a system, where the court felt that the system as a whole, and not simply a part manufactured by another defendant, was potentially defective.

> We find that Lenoir presented evidence, about which reasonable men could differ, that the entire system designed by [defendant] Buss, consisting of conveyors manufactured by Buss and the planer manufactured by [defendant] Porter, was unreasonably dangerous. A question of fact necessarily arises as to whether Lenoir's accident was caused, at least in part, by an unreasonably dangerous system set up and partially manufactured by Buss in full contemplation of the use of the Porter planer. Whether Buss is a consultant or a manufacturer with regard to the cause of Lenoir's injury is not clear in the present case, thus we cannot simply apply the doctrine that mere consultants are not subject to strict liability in tort. As to the substantial changes made in the conveyor/planer system, those issues are sufficiently raised to be decided by the trier of fact. Many of the arguments set forth by Buss, and Porter as well, are addressed to the issues of credibility of witnesses, which are also matters for the jury.

*Id.* at 1246.

Under Lousiana's similar products liability law, "for purposes of strict liability, [the manufacturer of a product] includes not only the original manufacturer, but also any entity that substantially modifies or materially alters the product after its original manufacture through the use of different components or methods of assembly." *Marshall v. Beno Truck Equip. Inc.*, 481 So.2d 1022, 1031 (La. App. 1 Cir. 1985) (citing *Spillers v. Montgomery Ward & Co., Inc.*, 294 So.2d 803 (La. 1974); *LeBouef v. Goodyear Tire & Rubber Co.*, 623 F.2d 985 (5th Cir. 1980) (A corporation or other entity may be liable in product liability for product modifications that

engender injury-causing defects). In *LeBouef*, although Ford did not construct the tire that was at the center of the litigation, Ford was held liable "for its own active role in the assembly of the unreasonably dangerous composite product." *LeBouef*, 623 F.2d at 990. The car assembly, not the failed tire, was found to be defective, and Ford's design selection and engineering knowledge contributed to the court's holding. *See id.*

Bechtel and CH2M's material modifications engendered two injury-causing defects: (1) jacking exacerbated the off-gassing of formaldehyde by causing unintended stress on the construction of the trailers; and (2) jacking and hooking the trailers up to municipal utilities rendered the trailers immobile, residential units thereby causing longer-term exposures to off-gassing formaldehyde than occupants would normally be exposed thereto.[1] In deposition testimony, CH2M's representative, Kenneth Melchiorre, admits that engineering resources were used by CH2M in its contract to provide FEMA trailers for use:

> Q: . . . When you look at these documents, you have engineering drawings, you have work plans, you have technical design definitions on utilities. Let's just use a broad term right now. You have a lot of engineering services going on in these contracts. . . . [I]n that [Katrina and Rita] hurricane response, did [CH2M Hill] Constructors utilize the engineering resources of CH2M Hill?
>
> A: Yes, sir.

Deposition of Kenneth J. Melchiorre, August 11, 2008, p.32-33. Furthermore, CH2M admits that its actions have the effect of changing the travel trailer into a temporary housing unit:

> Q: if you are going to put a set of steps that's fastened to the ground that's supposed to be flush with the threshold --
>
> . . .
>
> Q: That you're going to have to put this travel trailer in some sort of a state where it's not going to be moving around. Do you agree with that?

---

[1] *See* Deposition of Kenneth J. Melchiorre, August 11, 2008, p.176-178, excerpts attached as Exhibit "A" (Blocking, leveling, and adding ramps and steps allowed occupants to reside in the trailers up to 18 months).

> A: I would -- yes, I would agree with that.
>
> Q: Now, when you do that, you're sort of assembling this temporary -- I'm sorry -- this travel trailer into a -- **you're creating a temporary housing unit using the travel trailer which includes steps, correct?**
>
> A: **Yes, sir.**
>
> Q: It includes piers which it sits on, correct?
>
> A: Uh-huh. That's what the performance work statement --
>
> . . .
>
> Q: I understand. And it's going to have plumbing hooked up to it, correct?
>
> A: Yes, sir.
>
> Q: And the plumbing is going to be configured in a way that comports with the -- and we're going to use the site design that you have been -- that we have used as an example that CH2M Hill developed. Okay?
>
> A: Yes.

Deposition of Melchiorre, p.186-188 (emphasis added). There is some disagreement as to whether the technical designs were done by CH2M Hill Inc., CH2M Hill Constructors Inc., or a subcontractor of CH2M, but there is no disagreement that modifications made by CH2M transformed a recreational vehicle into a temporary housing unit. Moreover, it is alleged, and for present purposes established, that the assemblage/modification steps taken by CH2M and Bechtel increased moisture intrusion in the EHUs and formaldehyde exposure to occupants.

Bechtel's 30(b)(6) representative, Jack Hume, gave similar testimony that its engineering resources were employed in installation of the trailers:

> Q: All right. Have you ever seen a document that integrated the manufacturer specifications for the setup of travel trailers and installation of travel trailers?
>
> A: The subcontracts that we issued included the installation of both manufactured homes and travel trailers, and so it was a common

> specification where we combined the requirements that were stated in -- for the manufactured homes in that subcontract.

Q: I don't -- I don't have those documents here because they were delivered late. But my understanding, correct me if I'm wrong -- my understanding is that -- that your subcontracts for travel trailer installation contained a requirement to utilize the manufacturer's guidelines with these other standards.

. . .

Q: Is that true?

A: Yes.

Q: Okay. Now -- and Mr. Garde and people, I guess, in engineering below him would have been responsible, basically, for that?

A: **The engineering group is responsible for the development of the specification, technical requirements in a subcontract. The actual implementation of the installation is handled by our construction organization.**

Deposition of Jack Hume, August 21, 2008, p.51-52 (emphasis added).

In Defendants' primary case supporting its argument, *Scordino v. Hopeman Bros., Inc.*, 662 So.2d 640, 645 (Miss. 1995), the court concluded that the installer of a ship's interior was not a "seller" or "manufacturer" under the MPLA; however, the majority of the court's reasoning was based on analysis of whether that installer was a "seller." *Scordino*, 662 So.2d at 645. The court made a short, one-paragraph judgment concluding that "since we conclude that [defendant] Hopeman is not a seller, it necessarily follows that Hopeman is also not a manufacturer." *Id.* This case is distinguishable from *Scordino*, because, unlike the installer of defective boards in *Scordino*, whose actions did not alter or aggravate the defective condition of the wall paneling that it did not manufacture, CH2M and Bechtel's material modifications created a more defective product, enhancing injury-causing defects of the trailers. The facts of this case are more similar to those in

*Lenoir* and *LeBouef* because the assembly of the system and the transformation of a travel trailer into a temporary housing unit, created a more defective product.

### c. Bechtel and CH2M Constructed the Final Defective Product

Bechtel and CH2M also fall within the scope of the MPLA, because they transformed recreational vehicles into units intended for prolonged, long-term residence and distributed those products. The court in *Lester v. Eldec Induction USA, Inc.*, 2005 WL 2406089, *1 (N.D.Miss. 2005), articulated that "under Mississippi law, both retailers and distributors of a product may be held accountable in a products liability action." In *Eldec*, the distributor and installer of the allegedly defective product was held to fall within the bounds of the "manufacturer" and "seller" limitations of the MPLA. *Id.*

Furthermore, it was clearly the intent of Mississipi's legislature to include downstream distributors or installers like Bechtel and CH2M in products liability suits. Section (g) of the MPLA specifically contemplates inclusion of a downstream party that modifies, alters, or exercises substantial control over an aspect of design (i.e. jacking, utility connection) of a product:

> The manufacturer of a product who is found liable for a defective product pursuant to paragraph (a) shall indemnify a product seller for the costs of litigation, any reasonable expenses, reasonable attorney's fees and any damages awarded by the trier of fact unless the seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; the seller altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought; the seller had actual knowledge of the defective condition of the product at the time he supplied same; or the seller made an express factual representation about the aspect of the product which caused the harm for which recovery of damages is sought.

Miss. Code Annotated § 11-1-63(g)(i).

As stated above, Bechtel and CH2M Hill made significant engineering designs and decisions regarding the EHUs jacking and interconnection with city utilities and materially modified the trailers in the process of jacking the EHUs and hooking the trailers up to utilities. Since material issues of fact exist with regard to whether Bechtel and CH2M exercised substantial control over design aspects of the EHUs (jacking, utility connection, and step installation) that enhanced the off-gassing of formaldehyde and/or altered the use of the travel trailers to a more permanent, long-term living space than originally intended, Plaintiffs' MPLA claims against Bechtel and CH2M should not be dismissed.

In addition, the instant motion calls for a broader ruling on the issue than has been previously made by this Court, a ruling which would be dispositive as a matter of law for all Mississippi plaintiffs in this MDL. Plaintiffs respectfully submit that this outcome would be, at the very least, premature and insupportable under the present record. General discovery should be conducted to explore the relationship between the intended use and the purposes of the travel trailers as recreational vehicles, and the use and purposes of these travel trailers as modified by defendant contractors. The PSC respectfully asks that the motion is too important, and has too broad an impact, not to be accompanied by a more complete record in this regard.

### III. CONCLUSION

Bechtel and CH2M, in the course of their principal business, assembled the final EHUs for use and are therefore "manufacturers" under the MPLA. As the defendants admit, the substantial modifications made by Bechtel and CH2M materially altered the trailers, transforming them into temporary housing units. Alternatively, Bechtel and CH2M are installers within the chain of distribution of the EHUs and, thus, should be included as parties under the MPLA. Because material issues of fact exist as to the nature and extent of Bechtel and CH2M's control over design aspects of the EHUs, which would support MPLA claims against Bechtel

and CH2M, the MPLA claims against Bechtel and CH2M should not be dismissed at this point in the litigation. Accordingly, Plaintiffs respectfully request this Honorable Court deny Bechtel's and CH2M's Motion to Dismiss Plaintiffs' Mississippi Product Liability Claims.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY: */s/Gerald E. Meunier*
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
gmeunier@gainsben.com

*/s/Justin I. Woods*
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
ROBERT BECNEL, #14072
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL WATTS, Texas # 20981820

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record as indicated below in accordance with the Federal Rules of Civil Procedure on May 11, 2010.

>*/s/Gerald E. Meunier*
>GERALD E. MEUNIER, #9471