UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | § § § § | MDL No. 1873 |
| | | SECTION N(5) |
| THIS DOCUMENT IS RELATED TO: | § § | JUDGE ENGELHARDT |
| *ALL CASES* | § § § § | MAGISTRATE CHASEZ |

**REPLY TO PLAINTIFFS' OPPOSITION TO FLUOR ENTERPRISES, INC.'S
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS ON
NEGLIGENCE CLAIMS IN THE THIRD AND FOURTH SUPPLEMENTAL
AND AMENDED ADMINISTRATIVE MASTER COMPLAINTS**

Defendant, Fluor Enterprises, Inc. (**FEI**), replies to Plaintiffs' Opposition (Rec. Doc. 13777) to FEI's Motion for Partial Judgment on the Pleadings on Negligence Claims in the Third and Fourth Supplemental and Amended Administrative Master Complaints (Rec. Docs. 13426 and 13426-1) as follows.

I. **Plaintiffs Opposition Reveals Four Points of Agreement with FEI's Motion**

Plaintiffs' memorandum (Rec. Doc. 13777), while styled an "Opposition," surprisingly reveals four areas of significant agreement with FEI's motion to dismiss plaintiffs' negligence claims. Those agreements are:

1. Like Fluor, plaintiffs agree that the issue of existence of a legal duty is a question of law for the Court. *Compare* Fluor Memorandum in Support (Rec. Doc. 13426-1) at 11 ("Whether a duty is owed is a question of law[,]" *citing Pinsonneault v. Merchants*

*& Farmers Bank*, 816 So.2d 270, 276 (La. 2003)), *with* Plaintiffs' Opposition (Rec. Doc. 13777), at 4 (quoting *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So.2d 627, 632-33 (La. 2006) as stating "[w]hether a duty is owed is a question of law.")  Both parties agree, therefore, that at least this portion of FEI's motion presents a question perfectly suited for the Court and the Court alone on a motion for judgment on the pleadings.  This is not a question for a jury.

2. Despite what they said in their pleadings[1], plaintiffs now concede that ". . . FEI is correct in its assertion that 'Louisiana law does not impose upon FEI the duty to provide the plaintiffs with a trailer free from formaldehyde[.]'"  Plaintiffs' Opposition (Rec. Doc. 13777) at 4.  This is a significant concession for two reasons: (a) it permits the Court to grant FEI's motion in part, in all cases in the MDL, as to any claim that the allegedly negligent conduct of FEI consisted of breaching a duty to provide a trailer free from formaldehyde; and (b) as to the second portion of FEI's motion (duty-risk analysis in Louisiana or legal/proximate cause definition in states other than Louisiana), the nature of the duty in question necessarily informs the question of the scope of risks encompassed by the duty.

3. Plaintiffs now acknowledge that the duty upon which their case hinges is a duty to perform installation services "in a reasonably prudent manner."  Plaintiffs' Opposition (Rec. Doc. 13777) at 4 ("Rather it is plaintiffs' position that, as the intended beneficiaries of a trailer installation service undertaken by FEI, they were

---

[1] *See* Third Supplemental and Amended Administrative Master Complaint (Rec. Doc. 4486) at ¶¶ 300 ("FEI" owed a duty to each Named Plaintiff to provide, transport, install, inspect, maintain, repair, refurbish, recondition and restore safe temporary housing units ***that did not emit hazardous levels of formaldehyde.***")(emphasis added).

2

entitled to have this service performed in a reasonably prudent manner.")[2] Likewise, at least for purposes of argument on this motion, FEI acknowledged in its Memorandum in Support that if FEI owed any duty whatever to plaintiffs, it would consist only of using reasonable care in connection with the hauling and installation of the EHUs. *See* FEI Memorandum in Support (Rec. Doc. 13426-1) at 13 & 14 ("... while it could possibly be argued that FEI had a responsibility to plaintiffs to use reasonable care in connection with hauling and installing their trailers....") and ("... if FEI owed the plaintiffs a duty at all, FEI's duty was to use reasonable care in delivering the trailer and making it operational and ready for occupancy.")

4. Finally, both parties agree that if FEI owes a duty to plaintiffs, the second portion of the inquiry (duty-risk analysis in Louisiana) turns on the so-called "ease of association" test. *Compare* Plaintiffs' Opposition at 6-7, *with* FEI's Memorandum in Support at 14.[3] Understandably, however, plaintiffs like to downplay the role of foreseeability as an element—indeed, a "crucial issue" according to the Louisiana

---

[2] Plaintiffs claim that imposition of this duty is warranted based on the principle that when one voluntarily assumes a duty, one must perform that duty in a reasonable and prudent manner. Plaintiffs' Opposition at 5. Plaintiffs claim to find that assumption of duty by FEI based solely on a trial exhibit from another case (FEI's Tool Box Training Methods) that is not attached to or incorporated in the complaint by reference. The standard for addressing a Rule 12(c) motion is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See In re Katrina Canal Breaches Litigation,* 495 F. 3d 191, 205 (5th Cir. 2007). "In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Benbow v. Aspen Technology, Inc.,* 2003 U.S. Dist. Lexis 10572, *4, n.2 (E.D. La. 2003). If the court accepts materials outside the pleadings, and does not exclude them (which FEI respectfully requests should be done in this instance), then the court must treat the Rule 12(b)(6) motion as a motion for summary judgment under Rule 56, while giving FEI notice of the conversion and a reasonable opportunity to present all pertinent evidence. Fed. R. Civ. P. 12(d). While FEI believes the Court should not convert the motion, if the Court did so, FEI would welcome the opportunity to present the testimony of plaintiffs' own experts about how FEI's "Tool Box Training Method" was apparently directed only to safety of workers.

[3] While plaintiffs do not come right out and admit it, there is no doubt but that the duty-risk, or "ease of association," element of this analysis is also clearly a question of law for the Court, as acknowledged not only by this Court, but by the Fifth Circuit applying Louisiana law. *See Barasich v. Columbia Gulf Transmission Co.,* 467 F. Supp.2nd 676, 691 (E.D. La. 2006)(Vance, J.), *citing Ellison v. Conoco, Inc.,* 950 F.2d 1196, 1205 (5th Cir. 1992).

Supreme Court and the Fifth Circuit[4]—of this analysis. But foreseeability is a crucial element of this analysis, and one that demonstrates the foolishness of plaintiffs' negligence theory against FEI.

## II. The Injuries That Plaintiffs Allege Are Outside the Scope of the Duty Alleged

Now that plaintiffs have conceded that the duty allegedly breached by FEI is a duty to use reasonable care in connection with installation of their trailers, it is easy to see that the risk and injuries alleged have no conceivable association, much less an *ease* of association, with the duty of a hauler and installer of a travel trailer to use reasonable care when setting up the trailer for use.[5] The very statement of the plaintiffs' argument reveals how ludicrous the claim is, how utterly unforeseeable the improbable chain of events. The plaintiffs' argument goes like this:

The Law says, "Mr. Contractor, I told you to be reasonably careful when you set up these travel trailers for use as emergency housing four or five years ago following those two devastating hurricanes that destroyed people's houses back in 2005."

` The Contractor says, "I was. But why do you say that? What happened?"

"You see," says the Law, "if you're not reasonably careful, there's a risk that there may be poisonous material inside the walls of the trailer. (AMC ¶ 133) It might be that there's absolutely no safe level of exposure to the stuff; no matter how much, no matter how long you're exposed to it, (AMC ¶137), even though people buy these trailers for fun

---

[4] *See Ellison*, 950 F.2d at 1205 (quoting *Brown v. Tesack*, 566 So.2d 955, 957 (La. 1990)).
[5] The *Simmons, Barlow & Smith* cases cited by plaintiffs provide no meaningful guidance to the Court on this point. In *Barlow,* the defendant's negligent conduct knocked down an electrical wire, and that very downed wire caused the injury. In *Simmons,* the death was supposedly caused by anxiety and nervousness experienced in an evacuation caused by a chemical spill; the defendant was the trucking company responsible for the spill itself. In *Smith*, the decedent suffered from severe confusion and disorientation, a fact of which the defendant hospital was well aware based on more than one prior episode of bizarre conduct by the decedent while a patient. His death resulted from another sad episode of severe confusion and disorientation. The ease of association is patent in each of these cases.

4

and recreation, pull them behind their cars and stay in them all the time on vacation. (AMC ¶¶126&160) Seems if that material is in the walls, it gives off a gas that contains the bad stuff." (AMC ¶174)

"That's hard to believe. But even so, what's that got to do with me?" asks the Contractor. "I didn't put it there. The Government just told me to pick the RV up at their yard, haul it to some guy's house and put it on blocks there." (AMC ¶¶152, 154, 157)

"Well," says the Law, "stay with me because it's a long story and it's pretty convoluted. If you're not careful and you lift a trailer off its wheel base, that causes stresses and flexing of the unit for which it was not designed (AMC ¶ 159). That stressing and flexing in turn might distort the travel trailer's shell, which in turn opens seams and seals and joints on the trailer. (AMC ¶159) And you know what happens when you do that?"

"Yes," answers the Contractor. "The Government's inspector tells me to go back out there on my nickel to fix it."

"Well, that too, but stay with me because, like I said, it's convoluted. What also happens is it lets moisture get into the walls where that poisonous material might be. Turns out that when that stuff gets wet, it gives off more of that supposedly poisonous gas than it does when it's dry. That gas some how gets sucked inside the trailers where the people live." (AMC ¶159)

"Well, even if it's dry doesn't that gas get sucked in too? (AMC ¶¶210-216) And didn't you tell me that supposedly no amount is safe?" (AMC ¶137)

"Well, yes, I did say that, but don't confuse me with the facts or logic. Point is, I told you to be careful when you set the thing up. And guess what? It all happened, just like I

explained it, there was more of this poisonous gas around, at least that's what these fellows say, so pay up."

That cannot be the law.  It is not the law.  There is no foreseeability.  There is no ease of association.

If a careless contractor damages a trailer during installation, there may be any number of subsequent events that one might say are foreseeable or easily enough associated with the reasonable care duty to warrant imposing liability on the contractor. The owner might say the contractor has to fix the property damage.  One might even say that ***certain types of personal injury*** that result from ***certain conditions*** negligently caused by the contractor ought to be compensable; for example, physical harm to an occupant while in the trailer when the trailer falls from its blocking in a high wind because the contractor failed to install the required anchor.  Or if when building the stairs, the carpenter used nails that were far too short to hold the steps in place and the stairs failed due to the short nails, injuring some one.  But not this harm, not this way.

And it is the job of Courts, not juries, to make determinations of this sort.  And make it, they do.  For example, In *Stephenson v. Commercial Travelers Mut. Ins. Co.*, 893 So.2d 180 (La. App. 3d Cir. 2005), the court affirmed summary judgment for defendants, a school and others, in a mother's action on behalf of her daughter for injuries sustained while playing in a school soccer match.  Plaintiff alleged defendants breached their duty of care by putting her daughter into a soccer game with knowledge that she had been injured the previous week and had not been released to play by her physician.  Defendants asserted that any duty the school may have had to keep the child from playing due to her sprained ***left*** ankle

6

did not extend to protecting her from getting kicked in the ***right leg***.  The court's analysis centered on the legal cause issue:

> Regardless if stated in terms of proximate cause, legal cause or duty, the scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls with the scope of the duty.

*Id*. at 185.

The court found defendants had a duty to act reasonably and to protect those students in their charge from foreseeable harm.  The court rejected plaintiff's argument that the nature of her previous injuries made her present injury extremely foreseeable due to her decreased mobility and agility on the field.  The court explained that a coach cannot be expected to ensure the safety of all players in all circumstances, but instead has a duty to protect them from foreseeable harm. The court did not find that any duty that defendants might have had in that circumstance encompassed the risk of that type of injury.

The case is instructive here.  Presumably, the school and coach would have been held liable if further, serious damage resulted to the student's previously-sprained left ankle.  Similarly, the duty of a trailer installer to install a trailer carefully might encompass certain logical, understandable, foreseeable risks, for example, if electrical connections were negligently prepared by the installation contractor resulted in damage to appliances or caused a fire resulting in personal injury.  But the duty does not and should not encompass the risk of increased release of an allegedly hazardous chemical in something as innocuous and common as a travel trailer, especially when that allegedly hazardous chemical—as to which there is supposedly no safe level of exposure—is allegedly being released any way without regard to the installer's conduct.

Similarly, in *Goodrich v. Caterpillar, Inc.*, 717 So.2d 1235 (La. App. 2d Cir. 1998), a driver, injured while trapped in a tractor fighting a forest fire, claimed that the manufacturer was liable for inadequate warnings under the Louisiana Products Liability Act. The driver suffered severe burns when the tractor stalled after its tracks locked and he was unable to open the cab door to escape. He contended the manufacturer failed to warn of the stalling danger. The doors had been designed and installed by plaintiff's employer.

The trial court granted the manufacturer's motion for summary judgment on the basis that the scope of any alleged duty to warn did not encompass the risks encountered by the driver. The appellate court rejected plaintiffs' argument that the manufacturer's failure to warn of the stalling danger and the locking up of the tractor set into motion the forces that caused plaintiffs' injuries, *i.e.*, "but for" the stalling of the tractor, he would not have been injured. The court found that even assuming for purposes of argument that the manufacturer should have given the warning, that duty did not encompass the circumstances presented. The court acknowledged the tractor was a multi-purpose vehicle used for a variety of purposes, and even accepted plaintiff's contention that one of the foreseeable activities for which this tractor might be utilized was fighting forest fires. However, the court found that "there is a lack of ease of association between the failure to install a warning about the possibility of the tractor locking up and injuries sustained when the driver became trapped in the operator's cage by the defective doors built and installed by his employer." *Id.* at 1238.

Here, even if the Court accepts the contention that FEI should have known the travel trailers were going to be used "long-term," whatever that means, despite the fact that they were generally used for shorter durations, is it reasonable for FEI to believe—and govern

8

its conduct accordingly—that this innocuous, recreational vehicle that families take to state parks for vacation secretly harbors dangerous chemicals?  Of course not.

Similarly, in *Jones v. Gaines*, 978 So.2d 522 (La. App. 2d Cir. 2008), the court affirmed summary judgment for Louisiana DHH, a state hospital, and others, in an action alleging that defendants were negligent in releasing a mental health patient and giving him his car keys.  Two days after the patient was released, he consumed alcohol, had a relapse and drove his car recklessly, causing a collision, killing the victim.  The court held, in part, that defendants breached no standard of care.  The facts did not show a proximate relation between the release of the patient with his car keys and his subsequent decision to intoxicate himself, drive reckless and cause the death of the victim.  Stated differently:

> [T]he **release of [the patient] and giving him his car keys were too remote in the chain of causation** in this case and thus these actions did not constitute a substantial factor in the harm that resulted from [the patient's] reckless operation of the automobile two days later.

*Id*. at 534 (emphasis added).  The court cautioned that "[j]ust because a risk may foreseeably arise by reason of conduct, it is not necessarily within the scope of the duty owed because of that conduct."  *Id*. at 532.[6]

These examples illustrate the time-honored principle that it is ultimately the province of Courts to make policy judgments about under what circumstances and how far legal duties arise and extend.  The concept is the same in Louisiana, Mississippi and Alabama.  These pleadings go too far.  They stretch even pliable concepts like "foreseeability" and "ease of association" beyond the breaking point.  It's time for the Court

---

[6]  Quoting *Hill v. Lundin & Assoc.,* 256 So.2d 620 (La. 1972).

to say no to mind-bending theories of fantastical causation. FEI's motion should be granted.

>Respectfully submitted,
>
>**MIDDLEBERG, RIDDLE & GIANNA**
>
>*/s/ Charles R. Penot, Jr.*
>Charles R. Penot, Jr. (La. Bar No. 1530 &
>Tx. Bar No. 24062455)  **T.A.**
>717 North Harwood, Suite 2400
>Dallas, Texas 75201
>Telephone: (214) 220-6334
>Facsimile:  (214) 220-6807
>
>Dominic J. Gianna, La. Bar No. 6063
>Sarah A. Lowman, La. Bar No. 18311
>201 St. Charles Avenue, Suite 3100
>New Orleans, Louisiana 70170
>Telephone: (504) 525-7200
>Facsimile: (504) 581-5983
>
>*-and-*
>
>Richard A. Sherburne, Jr., La. Bar No. 2106
>450 Laurel Street, Suite 1101
>Baton Rouge, Louisiana 70801
>Telephone: (225) 381-7700
>Facsimile: (225) 381-7730
>
>**Attorneys for Fluor Enterprises, Inc.**

### CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2010, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sends notice of electronic filing to all counsel to be noticed in the MDL proceedings, including primarily court-appointed liaison counsel, who are CM/ECF participants.

>*/s/ Charles R. Penot, Jr.*

ND: 4813-3965-1846, v. 2