UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCT LIABILITY LITIGATION | * | SECTION "N-5" |
| | * | JUDGE ENGELHARDT |
| THIS DOCUMENT IS RELATED TO | * | |
| ALL CASES | | MAG. JUDGE CHASEZ |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## JOINT REPORT NO. 16 OF LIAISON AND GOVERNMENT COUNSEL

Plaintiffs' Liaison Counsel ("PLC"), Manufacturing Defendants' Liaison Counsel

("MDLC"), Individual Assistance/Technical Assistance Contractor Defendants' Liaison Counsel

("IALC"), U.S. Government Counsel ("GC"), and Insurer Liaison Counsel ("ILC") subject to a

full reservation of rights and defenses, respectfully submit this Joint Report No. 16.

**I.      REPORT OF CLAIMS AND CASE INVENTORY:**

PLC and MDLC report that an estimated 3,000 actions now have been filed, or

transferred into this MDL.  The attached appendix lists the complaints that were filed or

transferred into the MDL since the last Joint Report.

**II.      PLAINTIFF FACT SHEETS (PFS)**

The PSC no longer operates a central claims office.  Counsel representing parties are still

obligated to comply with the provisions of Pretrial Order number 2 (Rec. Doc. 87) and number

32 (Rec. Doc. 1180).

**III.      MOTION PRACTICE**

The following Motions are pending:

| | |
|---|---|
| Rec. Doc. 6970 | United States' Motion to Dismiss for Lack of Jurisdiction Claims All "Louisiana Plaintiffs" Based Upon No Analogous Private Liability. Taken under advisement on December 30, 2009. |
| Rec. Doc. 7690 | United States of America's Motion to Dismiss for Lack of Jurisdiction Claims of "Mississippi Plaintiffs" Based Upon No Analogous Private Liability or, in the Alternative, Motion for Judgment as a Matter of Law. Taken under advisement December 30, 2009. |
| Rec. Doc. 10038 | North American Catastrophe's Motion for Partial Summary Judgment. Taken under advisement on March 10, 2010. |
| Rec. Doc. 10656 | United States of America's Motion to Dismiss the FTCA Claims of All "Alabama Plaintiffs" for Lack of Subject Matter Jurisdiction Based Upon no Analogous Private Liability. Taken under advisement on February 22, 2010. |
| Rec. Doc. 11579 | Northfield Insurance Company Cross-Motion for Summary Judgment Regarding Defense and Indemnity. Taken under advisement on March 10, 2010. |
| Rec. Doc. 11858 | United States of America's Motion to Strike Venue Allegations in Plaintiffs' Third and Fourth Supplemental and Amended Administration Master Complaints |
| Rec. Doc. 11936 | United States of America's Motion for Taxation of Costs, Including United States' Costs for Expert Witness to Address Mold Claims in *Wright*. Taken under advisement March 24, 2010. |
| Rec. Doc. 11949 | United States of America's Motion for Taxation of Costs in *Castanel*. Taken under advisement March 24, 2010. |
| Rec. Doc. 11990 | Plaintiffs' Motion to Remand in *Michelle Abrams* |
| Rec. Doc. 11991 | Plaintiffs' Motion to Remand in *Karen Andrews* |
| Rec. Doc. 11992 | Plaintiffs' Motion to Remand in *Pamela Floyd* |
| Rec. Doc. 11993 | Plaintiffs' Motion to Remand in *Pearl Lewis* |
| Rec. Doc. 11994 | Plaintiffs' Motion to Remand in *Eugene Robertson* |
| Rec. Doc. 12264 | United States of America's Motion to Dismiss McGraw's FTCA Claims For Lack of Subject Matter Jurisdiction Because He Failed |

to File a Timely Administration Claim in *Nunnery*. Taken under advisement March 24, 2010

Rec. Doc. 13106 — Plaintiffs' Motion for Leave to File Original Complaint Against USA

Rec. Doc. 13126 — Keystone Motion to Appeal 3/24/10 Ruling Quash Subpoena in *Nunnery*

Rec. Doc. 13210 — Plaintiff Motion in Limine to Exclude Evidence of Prior Arrest History of McGraw in *Nunnery*. Taken under advisement April 20, 2010

Rec. Doc. 13255 — Forest River and Shaw Motion for Entry of Judgment in *Wright*

Rec. Doc. 13298 — Recreation By Design Motion in Limine to Exclude Testimony of Plaintiff Expert Dr. Lawrence Miller in *Castanel*

Rec. Doc. 13304 — Recreation By Design Motion in Limine to Exclude References to Building Codes in *Castanel*

Rec. Doc. 13315 — Recreation By Design Motion in Limine to Exclude Testimony of Alexis Mallet in *Castanel*

Rec. Doc. 13330 — Plaintiff Motion in Limine to Exclude References to Certain Incidents Relating to Dr. Lawrence Miller in *Castanel*

Rec. Doc. 13421 — Contractor Defendants' Joint Motion to Dismiss Plaintiffs' Third and Fourth Amended Master Complaint

Rec. Doc. 13423 — Fluor Motion for Partial Summary Judgment on Pleadings to Dismiss Louisiana Product Liability Claims in Third and Fourth Supplemental and Amended Administrative Master Complaint

Rec. Doc. 13425 — Contractor Defendants' Joint Motion to Dismiss Louisiana Product Liability Claims in Third and Fourth Supplemental and Amended Administrative Master Complaint

Rec. Doc. 13426 — Fluor Motion for Partial Summary Judgment on Pleadings on Negligence Claims in Third and Fourth Supplemental and Amended Administrative Master Complaint

Rec. Doc. 13428 — Contractor Defendants' Joint Motion to Dismiss Negligence Claims in Third and Fourth Supplemental and Amended Administrative Master Complaint

| | |
|---|---|
| Rec. Doc. 13422 | Contractor Defendants' Joint Motion to Dismiss Product Liability Claims |
| Rec. Doc. 13455 | Fluor Motion for Partial Summary Judgment on Pleadings to Dismiss Mississippi Product Liability Claims in Third and Fourth Supplemental and Amended Administrative Master Complaint |
| Rec. Doc. 13599 | Recreation by Design Motion for Daubert Hearing to Exclude Expert Testimony of Dr. L. Miller in *Castanel* |
| Rec. Doc. 13600 | Recreation by Design Motion for Daubert Hearing to Exclude Expert Testimony of Paul Hewet in *Castanel* |
| Rec. Doc. 13852 | United States of America's Motion to Dismiss Plaintiff David McGraw's FTCA Claims for Lack of Subject Matter Jurisdiction Because They are Barred by the Discretionary Function Exception in *Nunnery* |
| Rec. Doc. 13691 | Plaintiffs' Request to File a Global Motion for Leave to Amend and Add the United States Once All Plaintiffs' Claims are Ripe as to the United States (pertaining to 31,000 Watts Law Firm claimants) |
| Rec. Doc. 13957 | United States of America's Motion for Extension of Deadlines of Expert Toxicologist Dr. Robert James, Ph.D., to Issue a Fed. R. Civ. P. 26 Report Addressing the Toxicologist Properties of Crack Cocaine |

## IV.    MANUFACTURED HOUSING UNIT MANUFACTURERS/NON-LITIGATION"TRACK"

On January 14, 2010 the Court entered an Order (Rec. Doc. 10291) set a seventh

bellwether trial to begin on October 18, 2010.

On April 16, 2010, the Court entered a Scheduling Order for the October 18, 2010

manufactured housing bellwether trial.  The Court selected Palm Harbor as the manufacturer

bellwether defendant, and on April 21, 2010, selected KA, a minor, as the bellwether Plaintiff.

The Court further ordered that in the event that KA is rendered unable to serve in his capacity as

bellwether plaintiff for this trial, Tonya Washington will be the substitute bellwether plaintiff. To date, neither KA nor Washington have filed suit against the United States.

By Order dated April 20, 2010 (Rec. Doc. 13448), the Court extended the Non-Litigation Track until July 1, 2010. In the event settlement is not finalized between the Plaintiffs' Steering Committee and the remaining Non-Litigation Track Defendants by that date, then those parties must submit nominations for a bellwether plaintiff and manufactured housing defendant for a second Manufactured Housing Bellwether Trial to be scheduled by future orders of this Court.

By Order dated May 4, 2010 (Rec. Doc. 13958), the Court ordered that no later than July 1, 2010, the Non-Litigation Track Defendants and the PSC will file a Joint Preliminary Class Settlement Agreement and Motion to Certify a Settlement Class.

## V.  MATCHING PLAINTIFF TO DEFENDANT MANUFACTURER AND FEMA CONTRACTOR

The PSC has issued written discovery requesting that the United States disclose the vehicle identification numbers of the emergency housing units ("EHUs") provided to these Plaintiffs by FEMA. PLC has instructed all Plaintiffs' counsel that, in order to have their clients matched, the request for matching should: (1) be submitted in groups of approximately 500 claimants (or a lesser amount if the plaintiff counsel represents less than 500 persons); (2) include a list containing necessary search information in an Excel and PDF spreadsheet format; and (3) for each family of occupants, provide only the name of the head of household or adult family members – no children or other minors should be included. Information that the Plaintiffs' counsel should provide to the United States is the claimant's (a) full name; (b) FEMA ID Number; (c) social security number; (d) date of birth; (e) and address/State where EHU was installed. If a claimant resided in more than one EHU that should be noted and claimant should

5

provide the address/State where each EHU they occupied was located.  To the extent Plaintiffs are aware of the bar code number assigned to their issued unit, this information also should be provided to FEMA.

For plaintiffs who do not remember their FEMA ID, and have not retained any of their correspondence with FEMA (which would have their FEMA identification number on it), and require their FEMA ID number for matching purposes (only those claimants who FEMA actually issued an EHU) may call FEMA to request their FEMA ID.  Only persons who applied to FEMA for aid in response to Hurricanes Katrina and Rita will have a FEMA ID number, and the Privacy Act of 1974 only allows FEMA to provide the FEMA ID number over the telephone to the actual aid applicant or co-applicant.  Counsel should advise that any aid applicant or co-applicant who was issued a FEMA EHU and requires their FEMA ID number may take following action to obtain their FEMA ID number :

1. Call (800) 621-FEMA and press # to speak with a FEMA agent representative.

2. Inform the FEMA agent that they applied for and received FEMA assistance in the form of an emergency housing unit (trailer) following Hurricane Katrina/Rita.

3. Inform the FEMA agent that they cannot find their FEMA ID and no longer have any of their correspondence containing their FEMA ID.

4. Inform the FEMA agent that they would like to obtain their FEMA ID number for their records.

5. Provide the following personal information to the FEMA agent so that the caller's identity may be verified and the FEMA ID may be provided:

    a. Their first and last name.
    b. Their Social Security Number.
    c. Their damaged dwelling address.
    d. Their damaged dwelling telephone number.
    e. Their current mailing address (on file with FEMA).
    f. Their current telephone number (on file with FEMA).

g.  Date of birth.

*See also* Notice by Defendant United States of America Regarding How An Applicant or Co-Applicant Who Applied For and Received A FEMA EHU May Call To Obtain His Or Her FEMA Identification Number For Matching Purposes (Rec. Doc. 10795). (http://www.laed.uscourts.gov/FEMA07md1873/Orders/notice10795.pdf).

The United States received from PSC more than 140 Client Lists seeking matching information for approximately 80,000 persons.  To date, the United States has provided responsive information for all but two requests within thirty days of receipt of the requests, and will continue to process those requests.

Based upon recent discussions with counsel as well as review of various motions filed by parties to extend the deadline to match, the United States believes that some counsel may not understand the matching process and what actions that they must take to identify the manufacturer of the EHU that their client occupied and IA/TAC contractor that installed the unit.

In response to a matching request, the United States produces information obtained from the FEMA FRRATS database.  The key information produced to a claimant is the VIN number and FEMA barcode number of the EHU or EHUs issued to a disaster victim.  Using the VIN number a claimant can determine the identity of the manufacturer of the unit that they occupied. To do this, the claimant must take the VIN number identified and compare it with the "Prefix Key" produced by the Manufacturers' Liaison Counsel in Spring 2008.  Each manufacturer has a unique prefix number that is contained in the VIN, thereby allowing a claimant using the VIN number to determine the manufacturer of the unit that he or she occupied.  In addition, a claimant using the VIN number can also determine the identity of the manufacturer by accessing the link

on the following internet page and inputting the VIN number:

http://www.nhtsa.dot.gov/cars/rules/manufacture/

PSC notes that this process assumes that the VIN provided by FEMA is accurate.

For purposes of identifying the IA/TAC contractor, the claimant must search the Excel spreadsheet produced by the Government to Liaison Counsel in January 2009. That searchable spreadsheet lists each of the EHUs that the IA/TAC contractors installed by VIN number.

Further, claimants should be aware that the matching process identifies the VIN number of the EHU that FEMA issued to a disaster victim. FEMA does not retain information regarding the identity of persons who occupied or resided in an EHU. Generally, the reason why the Government is unable to provide a match for a claimant is because: (1) the personal data provided is inaccurate (incorrect name, FEMA identification number, social security number, address where unit was installed, dates of occupancy), or (2) the claimant occupied an EHU that had been issued to some other person. PSC notes that this is only correct if thte government data is accurate.

The United States has also received numerous duplicate matching requests. A claimant who is not matched may not submit a second request unless they provide further information to the United States in support of the matching request that was not previously provided to the government. To prevent further submissions of duplicate matching requests all counsel in conjunction with the submission of a matching request must provide the following certificate:

> I, _____, certify that the FRRATS Exhibit(s) accompanying this discovery request number _____, does not seek matching information on behalf of individuals for whom information was requested in a previous matching request, unless additional information required by FEMA to conduct a search has been obtained from the client and the newly discovered information for such claimant is clearly identified and marked. I further certify that this exhibit does not contain any requests for matching

8

information for claimants that FEMA has previously provided any responsive matching information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Attorney for Plaintiffs          Date

_____
Name of Firm

_____
Address

_____
City, State and Zip Code

PSC objects to the requirement of FEMA for the completion of the "certification" as it has not been shown to be necessary nor was its use approved in this MDL.

At the January 15, 2010 status conference, the Court agreed to Plaintiffs' Steering Committee's request to establish a "Matching Committee," and Court appointed Mr. Justin Woods, Mr. Mikal Watts as the Plaintiffs' Representatives and Mr. Henry T. Miller as the United States' representative. Plaintiffs' Representatives agreed to provide a proposal identifying actions that they thought would facilitate ongoing matching efforts. As of May 4, 2010, no proposal has been proffered. The PSC, through Mikal Watts, began negotiation of a proposal with counsel for Government but are unable to reach an agreement with Government as to what is a proper protocol or starting point for development of protocol. The United States disagrees with PSC's characterization because no discussions have taken place. Mr. Watts and government counsel have exchanged e-mails through which the United States requested that Mr. Watts comply with parties' agreement and provide a written proposal to serve as a framework for any such discussions.

9

The Watts Law Firm asserts that it represents in excess of 31,000 plaintiffs and has indicated that using the matching process they have successfully matched all but approximately 300 plaintiffs to a manufacturer. In response to the Watts' Law Firm's request for further assistance matching these remaining claimants, the United States has advised the Watts Law Firm to: (1) contact the individual claimants to determine if they possess any further information that will assist in the matching process or possess information indicating manufacturer of unit and contractor responsible for hauling and installing the unit, (2) reiterated early recommendation to issue discovery requests to Government Contractors to determine if they possess any responsive matching information for these unmatched claimants, and (3) contact Plaintiffs' Liaison Counsel and consistent with the Court's Order authorizing requests of 200 Individual Assistance files per, have PLC request production of these claimants Individual Assistance files.

## VI.    DEFENDANT PROFILE FORMS

The PSC has prepared a proposed Defendant Profile Form to be completed by manufacturing defendants and Government IA/TAC defendants. The Government IA/TAC defendants are proposing certain edits to the form and as such are still negotiating with the PSC. The Insurer Defendants have asked for an opportunity to review the proposed form and to offer any comments or edits as it deems necessary. Assuming that the parties will agree to the form shortly, the PSC will then offer an unopposed motion and order for the form to be completed within fifteen (15) days of entry of the Order by the manufacturing and Government IA/TAC defendants.

The Insurer defendants and the PSC are in current discussions regarding the use of a separate profile form as it relates to the insurer defendants.

## VII.   BELLWETHER TRIALS

A. A total of four Bellwether cases are set for trial at this time.  They are as follows:

1.     *Earline Castanel, et al v. Recreation by Design, LLC* is scheduled for May
17, 2010.  Shaw has been dismissed from this case with prejudice.

2.     *McGraw v. Keystone RV, CH2MHill and the United States* is scheduled
for trial on July 19, 2010.  The court initially named four bellwether
candidates for this trial.  As of this date, three of the four plaintiffs have
dismissed their claims, leaving the claims of David L. McGraw as the
remaining plaintiff.  On January 14, 2010, Mr. McGraw filed an Amended
Complaint adding the United States as a Defendant.   Keystone's
objections/appeal related to the Magistrate Judge's ruling regarding
production of Mr. McGraw's JP Morgan Chase Bank credit card and bank
records is preseently pending before the Court.  See Rec. Doc. No. 13126.
The United States of America's Motion to Dismiss McGraw's FTCA
Claims for Lack of Subject Matter Jurisdiction Because He Failed to File a
Timely Administrative Claim (Rec. Doc. 12264) and Motion to Dismiss
Plainiff David McGraw's FTCA Claims for Lack of Subject Matter
Jurisdiction Because They are Barred by the Discretionary Function
Exception (Rec. Doc. 13852) are also presently pending before the Court.

3.     *Robin Lewis v. Gulf Stream Coach, Inc.* is scheduled for September 13,
2010.  If Mr. Lewis is rendered unable to serve as bellwether plaintiff, the
backup will be Easton Charles, Jr. If Mr. Charles is rendered unable to
serve as bellwether plaintiff, the back up will be Daniel Porter.

4.   *K.A. represented by his father, Keith Andrews, Jr. v. Palm Harbor* is scheduled for October 18, 2010. If K.A. is rendered unable to serve as bellwether plaintiff, the backup will be Tonya Washington. A Scheduling Order has been entered in this case. The parties are initiating discovery and attempting to locate the THU's for testing purposes.

B.   The PSC has filed amending complaints in one of the bellwether plaintiffs' cases in order to set forth allegations specific to the selected bellwether plaintiffs in these cases, and will file amending complaints for the remaining bellwether cases in the near future.

## VIII.   SEVERANCE OF BELLWETHER PLAINTIFFS UNDER FRCP RULE 21

A.   Defendants in all bellwether plaintiff cases request the Court sever the individual bellwether claims from their existing Petitions where necessary.

## IX.   MASTER DISCOVERY

A.   General Discovery

1.   The Court has authorized the PSC's request for up to 200 Individual Assistance files per month. For any such requst, PSC must provide to the United States the following information: (1) the claimant's full name, (2) claimant's FEMA identification number ("FEMA ID"), (3) the disaster at issue, i.e., Hurricane Katrina or Rita, (4) claimant's social security number, (5) the location where the trailer which claimant received was installed, and (6) a Privacy Act waiver. In response, the United States must produce within thirty (30) days a receipt of such a request a copy of the plaintiffs' FEMA Individual Assistance ("IA") File.

B.     Insurance Discovery

Primarily through 30(b)(6) depositions, the PSC will conduct discovery of the

Manufacturing Defendants and Individual Assistance/Technical Assistance

Contractor Defendants' relevant information concerning insurance coverage for

the matters at issue in this litigation.  The PSC contemplates that such discovery

will proceed as a separate "Insurance Coverage Discovery Track" simultaneously

with the General Discovery Track.  The Insurer Defendants reserve all rights to

object to any proposed Insurance Discovery.

C.     Inspection and Testing Of Temporary Emergency Housing Units.

On January 10, 2010, the United States, consistent with Court's Order, filed

a Notice of the Government's Intent to Dispose of 91,891 Temporary Emergency

Housing Units located at thirteen (13) FEMA storage facilities.  All of the units

identified in that Notice have been sold and those units, are no longer available

for inspection and testing.

D.     Discovery Other Bellwether Trials

1.     **Recreation By Design, LLC Bellwether Trial.**  The parties have

completed inspections and testing of the Castanel unit.  Numerous

depositions have gone forward including depositions of plaintiff,

Recreation By Design, LLC, and plaintiff experts.  Plaintiff and

defendants have exchanged expert reports.  Discovery is complete with the

exception of the follow-up deposition of Dr. Gautreaux in light of the

plaintiff undergoing an endoscopic procedure on March 31, 2010, and the

deposition of M. Jarrell is being scheduled for next week.

2.      **Keystone Bellwether Trial.**  On November 16, 2009, the Court selected David McGraw as the Keystone Bellwether Plaintiff.  The parties are hopeful that they will be able to complete all discovery by the June 15, 2010, discovery deadline.  The parties have issued and responded to written discovery, exchanged expert reports and depositions are ongoing. A FRCP 30(b)(6) deposition of the defendant manufacturer, Keystone, was commenced on March 31, 2010, and the parties are tentatively set to complete it on May 19, 2010.  The 30(b)(6) deposition of CH2M Hill is set to occur on May 13, 2010.

3.      **Gulf Stream Coach, Inc. Trial.**  On February 26, 2010, the Court selected Robin Lewis as the bellwether plaintiff for the September 13, 2010 trial.  If Robin Lewis cannot serve, he will be replaced by Easton Charles, Jr. and Daniel Porter in that order.  Mr. Lewis has not filed suit against the United States, and Mr. Charles and Mr. Porter have voluntarily and without prejudice dismissed their claims against the United States. All three plaintiffs have also voluntarily and without prejudice dismissed their claims against the Government contractors.  A Scheduling Order has been entered and discovery has commenced in all three cases.

4.      **Palm Harbor Bellwether Trial.**  On April 21, 2010, the Court selected K.A. represented by Keith Andrews, Jr. as the bellwether plaintiff for the October 18, 2010 trial.  If K.A. represented by Keith Andrews, Jr. cannot serve, he will be replaced by Tonya Washington.  The United States is not a defendant in either action.

## X.   SUMMARY JURY TRIALS

The court has issued Pretrial Orders 63 (Rec. Doc. 13871) and 64 (Rec. Doc. 13872) governing the pre-trial and trial plans for summary jury trials in this MDL.

The PSC requested that the Keystone RV bellwether trial, currently set to begin on July 19, 2010 regarding the claims of David McGraw, proceed as a summary jury trial. Counsel for Keystone RV informed the PSC that Keystone is unwilling to have the claims of David McGraw tried pursuant to this Court's summary jury trial procedure. The United States, like Keystone, is also unwilling to agree to use the summary jury trial for the claims of David McGraw.

## XI.   SETTLEMENT CLAIMS AGAINST FLEETWOOD ENTERPRISES, INC.

Representatives for the Plaintiffs' Steering Committee ("PSC") and Fleetwood Enterprises, Inc. ("Fleetwood") and its liability insurers have reached a full and final settlement. It is agreed that all plaintiffs and related claimants will release and dismiss, with prejudice, any and all claims made against Fleetwood, its manufacturing plants or assembly facilities, Gibraltar Insurance Company, Ltd., Chartis Specialty Insurance Company (f/k/a American International Specialty Lines Insurance Company), Starr Excess Liability Insurance Company, Ltd. and any and all other Fleetwood insurers, and alleged insurers, including but not limited to American International Group, Inc. arising out of alleged formaldehyde exposure in emergency housing units manufactured by Fleetwood companies and provided by FEMA to individuals displaced by Hurricanes Katrina or Rita, to include all Fleetwood travel trailers, mobile homes, manufactured housing units and/or park models used as emergency housing units in this regard.

The claims to be released specifically include (a) any and all claims, suits or actions against Fleetwood currently or to be filed in or transferred into the case of *In Re: FEMA Trailer*

*Formaldehyde Product Liability Litigation*, MDL No. 1873, before the United States District Court, E.D. Louisiana ("MDL"), as well as any and all other claims, causes of actions and lawsuits against Fleetwood arising out of the travel trailer, mobile home, manufactured housing units and/or park models used as emergency or FEMA housing or arising out of related claims of formaldehyde exposure, which have not been transferred to the MDL,  including those which are subject to the automatic stay order entered in Fleetwood's bankruptcy proceedings; (b) any and all claims, suits or actions filed against Fleetwood's insurers under the Louisiana Direct Action Statute ("Direct Action Cases")  or similar statute, and either currently pending in the MDL or to be filed in or transferred to MDL, as well as any and all other Direct Action Cases arising out of the FEMA/Formaldehyde Travel Trailer use as emergency housing, filed or to be filed within the prescription period against Fleetwood's insurers, which have not been transferred to the MDL; (c) all claims filed in the federal bankruptcy proceedings entitled *In Re: Fleetwood Enterprises, Inc., et al*, Case No. 09-14254-MJ, pending in the U.S. Bankruptcy Court, Central District of California, Riverside Division; and (d) the claims asserted in the case of *Elisha Dubuclet, et al v. Fleetwood Enterprises, Inc.*, USDC No. 07-9228.  The Fleetwood manufacturing subsidiaries include but are not limited to Fleetwood Canada, Ltd., Fleetwood Homes of North Carolina, Inc., Fleetwood Homes of Georgia, Inc. and Fleetwood Travel Trailers of Maryland, Inc.

The parties agree that for the settlement to be effective they must execute the necessary settlement documents, including releases and dismissals in a form to be acceptable to representatives of Fleetwood Enterprises, Inc. and its liability insurers in their sole respective discretion.  The parties have also agreed to keep the terms, conditions and amount of consideration confidential.

As part of the settlement agreement, plaintiffs and claimants also will dismiss any and all claims against Morgan Buildings and Spas, Inc. ("Morgan") which are filed and pending in the MDL, and which may be filed in or transferred to the MDL as well as any and all other claims, causes of actions, direct actions and lawsuits against Morgan arising out of travel trailer, mobile home, manufactured housing, and/or park model used as emergency/FEMA housing or arising out of related claims of formaldehyde exposure, which have not been transferred to the MDL, to the extent such claims assert fault on the part of Morgan which is purely vicarious as to, and derivative of, the fault of Fleetwood. However, the claims of plaintiffs against Morgan which are based upon Morgan's independent fault (under the Louisiana Product Liability Act, theories of negligence, etc.) are not released and are fully preserved.

The Bankruptcy Court has entered an Order approving the terms of the settlement. Included in the Court's Order is the approval for the MDL Court to administer the settlement procedure. Counsel for Fleetwood and its insurers is currently making arrangements for the settlement funds to be tendered in escrow and through the trust department of IBERIA BANK. Additionally, the parties are finalizing the comprehensive list of claimants for inclusion in the settlement. All claimants included in the settlement will participate in a binding process for the allocation of the net settlement proceeds, with the authority to assure a fair and objective allocation being vested in a Special Master to be appointed by the Court, pursuant to a motion and order under FRCP 53. Certain motion practice and factual findings may become necessary in this process in order to address and satisfy recent legal requirements related to Medicare reimbursement.

## XII.   MISCELLANEOUS

A.   As a result of FEMA's disposal of temporary emergency housing units provided to Hurricane Katrina and Rita disaster aid applicants, the government is no longer allowing persons to access FEMA Storage Facilities absent showing of special circumstances.  In the event that special circumstances exist, any such person granted access to a FEMA Storage Facility must coordinate such a visit through their Liaison Counsel.  Prior to being allowed onto a FEMA facility, any person attempting to inspected and/or test an EHU must completed and provide to the Government a signed/dated Indemnity /Hold Harmless Agreement.  Further, any such persons must review the Inspection/Testing Protocol, and, by signing the Indemnity/Hold Harmless Agreement, agree to comply with terms and conditions set forth therein.  It is imperative that persons accessing the FEMA Storage Facility be familiar with and comply with the terms and conditions in the Inspection/Testing Protocol because failure to do so may result in confiscation of equipment and/or removal from the facility.

B.   Based upon a facial review of various retainer agreements between Plaintiffs and Plaintiffs' counsel that have been attached to administrative claims presented to FEMA in connection with this matter, the United States has become aware that a number of Plaintiffs' counsel could potentially prove to be in violation of 28 U.S.C. § 2678 ("Attorney fees; penalty").  Counsel should be aware that under this provision of the Federal Tort Claims Act ("FTCA"):

No attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25 per centum of any judgment rendered pursuant to section 1364 (b) of this title or any settlement made pursuant to section 2677 of this title, or in excess of 20 per centum of any award, compromise, or settlement made pursuant to section 2672 of this title.

As such, Plaintiffs' counsel should be aware, that if a plaintiff were to succeed in attaining a judgment against the United States pursuant to the FTCA, any counsel who "charges, demands, receives, or collects" a fee in excess of 25 percent "in connection with such claim" could be "fined not more than $2,000 or imprisoned not more than one year, or both." 28 U.S.C. § 2678.

C.   John Perry has been appointed as Mediator for the purposes of exploring the potential for global settlement as to any and all defendant manufacturers in this MDL (Rec. Doc. 13236).

D.   The Court has set a briefing deadline for deciding the "statistical model" issue and the deadline for the Defendants' motion to exclude such evidence is May 18, 2010.  Previously, the parties considered addressing this issue globally.  However, the PSC expert, Paul Hewett, has only addressed his opinions on the issue to the test results for Keystone units only.  The remaining defendants do not consider the issue ripe beyond how it applies to Keystone.

E.   In order to preserve medical records from being destroyed by health care providers as part of its document retention policy and to evaluate the merits and value of plaintiffs' claims, defendants have commenced with sending plaintiff-supplied Medical Authorizations to health care providers. However, most of these health care providers are refusing to honor these Authorizations for the reason that it is not HIPAA compliant because plaintiffs have not executed the Authorizations properly. Examples of non-compliance are: the Authorizations are not signed by anyone, are signed by someone without documented authority such as a

grandmother, and are expired due to the date inserted by plaintiff when it should

have been left undated.

To illustrate the need for these Authorizations and for Plaintiff Fact Sheets that

are completed with the names and addresses of plaintiffs' health care providers

both before and after the sued upon incidents, some of the health care providers

have reported that they have already destroyed the medicals pursuant to their

retention policy. Thus, Litigation Hold letters cannot be submitted to the

plaintiffs' health care providers, either.

These records are vital to the defense regarding determining plaintiffs' pre-

existing medical conditions and medical causation.

## XIII.   MATTERS GOVERNMENT COUNSEL INTEND TO DISCUSS WITH
##         COURT DURING THE CHAMBERS CONFERENCE.

A.   The United States intends to discuss with the Court and Steering
Committee Members entry of a *Lone Pine* type order for purposes of
facilitating determination of whether the Court has subject matter
jurisdiction over a Plaintiffs' claims against the United States.  Given the
Court's ruling that Plaintiffs must demonstrate on a case-by-case basis that
their claims are not barred by either the discretionary function exception
or FTCA two-year statute of limitation for presenting an administrative
claim. See *In  Re: FEMA Trailer Formaldehyde Products Liability
Litigation*, 2009 WL 2496570, at *1-2, n.1, 2 (E.D. La. Aug. 13, 2009)
(Rec. Doc. 2621); *In RE FEMA Trailer Formaldehyde Products Liability
Litigation*, 583 F.Supp.2nd 758, 769-71, 773-74, 776, 781, 785-87 (E.D.
La. 2008) (Rec. Doc. 717); *In RE FEMA Trailer Formaldehyde Products
Liability Litigation*, 2010 WL 360361 (E.D. La., Jan. 22, 2010)
(*Castanel*); *In RE FEMA Trailer Formaldehyde Products Liability
Litigation*, 2010 WL 323898 (E.D. La., Jan. 21, 2010) (*Wright*); *In RE
FEMA Trailer Formaldehyde Products Liability Litigation*, 2009 WL
2599195 (E.D. La., Aug. 21, 2009) (*Cooper*).  The United States believes
that to effectively manage the litigation the Court should enter a *Lone
Pine* type order requiring each Plaintiff, within sixty (60) days of filing a
Complaint or Amending a Complaint to add the United States (or within
sixty (60) days of action being transferred to this MDL Court) to show
the specific action taken by FEMA in providingn them with temporary

emergency housing that violated FEMA's general policy goal to provide safe and habitable temporary emergency housing units, and facts demonstrating that they submitted a timely administrative claim to FEMA.

The PSC believes that inclusion of this particular section is inappropriate and that the Government is again improperly using the Joint Report as a vehicle for legal arguments.

If the Government wishes for this Court to approve a *Lone Pine* Order it should do so in proper form through the use of a motion. The PSC will then address the Government's motion and will prepare its opposition to such in writing.

BY:    s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:     504/522-2304
       Facsimile:     504/528-9973
       gmeunier@gainsben.com

       s/Justin I. Woods
       JUSTIN I. WOODS, #24713
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:     504/522-2304
       Facsimile:     504/528-9973
       jwoods@gainsben.com

       s/Andrew D. Weinstock
       ANDREW D. WEINSTOCK, #18495
       **DEFENDANTS' LIAISON COUNSEL**
       Duplass, Zwain, Bourgeois,
       Pfister & Weinstock
       3838 N. Causeway Boulevard, Suite 2900

Metairie, Louisiana 70002
Telephone:     504/832-3700
Facsimile:     504/837-3119
andreww@duplass.com

s/ Henry T. Miller
HENRY T. MILLER
ADAM BAIN
Senior Trial Counsel
ADAM M. DINNELL
MICHELE GREIF
JONATHAN WALDRON
Trial Attorneys
**ATTORNEYS FOR THE UNITED STATES OF AMERICA**
United States Department of Justice
Civil Division - Torts Branch
1331 Penn. Ave., NW, Rm. 8203-N
Washington, D.C. 20004
Telephone:     202/616-4449
Henry.Miller@usdoj.gov
Adam.Dinnell@usdoj.gov
Jonathan.Waldron@usdoj.gov

s/David Kurtz
DAVID KURTZ
**CONTRACTOR LIAISON COUNSEL**
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
201 St. Charles Ave., Ste. 3600
New Orleans, LA 70170
Telephone: 566-5259
Facsimile: 636-5259
dkurtz@bakerdonelson.com

s/Ralph S. Hubbard, III
RALPH S. HUBBARD, III
**CO-LIAISON COUNSEL FOR INSURERS**
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
27th Floor, Pan-American Life Center
601 Poydras Street
New Orleans, LA 70130
phone: 504 568 1990

fax: (504) 310-9195
email: rhubbard@lawla.com

s/Charles E. Leche
CHARLES E. LECHE
**CO-LIAISON COUNSEL FOR INSURERS**
DEUTSCH, KERRIGAN & STILES, LLP
755 Magazine Street
New Orleans, LA 70130
phone: 504 593 0790
fax: 504 566 4078
email: cleche@dkslaw.com