UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                                          MDL NO. 07-1873
         FORMALDEHYDE PRODUCTS
         LIABILITY LITIGATION
                                                             SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES (Louisiana Plaintiffs)

## ORDER AND REASONS

Before the Court is Defendant United States' Motion to Dismiss the FTCA Negligence

Claims of All "Louisiana Plaintiffs" for Lack of Subject-Matter Jurisdiction Based Upon No

Analogous Private Liability (Rec. Doc. 6970). This motion is opposed. (See Rec. Doc. 9403).

After considering the memoranda filed by the parties and the applicable law, the Court grants

this motion.

## I.      INTRODUCTION

First, the undersigned notes that the motion presently before the Court addresses only the

standard of care to be applied to the United States of America ("the Government" or "FEMA")

for the purposes of assessing liability under Louisiana law. The issue presented herein is *not* the

dismissal of the Government as a defendant, but whether the Government can be held liable

under Louisiana law for negligence under the undisputed facts of this case. Plaintiffs maintain

the right to pursue other causes of action against the Government as set forth in the supplemental and amended master complaints.

## II. BACKGROUND

In this multi-district litigation ("the MDL"), referred to as "In Re: FEMA Trailer Formaldehyde Products Liability Litigation," Plaintiffs are individuals who resided in emergency

housing units ("EHUs") provided by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita. In general, Plaintiffs claim injuries resulting from alleged exposure to the release of formaldehyde and/or formaldehyde vapors in these EHUs. (Rec. Doc. 109, ¶ 30). In their Third Supplemental and Amended Administrative Master Complaint (Rec. Doc. 4486), Plaintiffs have sued over 100 entities, including the Government.[1] (Rec. Doc. 4486, ¶¶ 10-115). The Complaint cites 28 U.S.C. §§ 1346 and 2671, *et seq*., and alleges that the Government is subject to the jurisdiction of this Court through the limited waiver of sovereign immunity, found in the Federal Tort Claims Act ("FTCA"). (*Id.* ¶ 116).

Plaintiffs have alleged that they were provided housing units by FEMA because "[t]he residence of each Named Plaintiff was rendered unhabitable following Hurricanes Katrina and/or Rita." (*Id*., ¶ 124, 128). As a result of what Plaintiffs describe as "the greatest natural disaster in the history of the United States," each and every Plaintiff was essentially left "homeless." (*Id.,* ¶¶ 128, 171). Plaintiffs further allege that FEMA's provision of housing to these homeless "individuals and families displaced by hurricanes Katrina and Rita" created "a duty on the part

---

[1]        Plaintiffs have since filed a Fourth Supplemental and Amended Administrative Master Complaint (Rec. Doc. 7688), which essentially incorporates the same allegations. For the purposes of this Order and Reasons, the Court cites to the Third Amended Complaint; however, the reasons should be interpreted as being applicable to the Fourth Amended Complaint as well, as incorporated therein.

of the Federal Government to insure that such housing was habitable in a safe and sanitary condition," and that the Government was under a duty to: "use due care and caution for the safety of the . . . occupants of the subject housing units"; "provide reasonably safe, functional and habitable housing units"; "ensure that the housing units . . . were free of defects"; and "warn . . . of any defects in the housing units." (*Id.*, ¶¶ 150, 162, 201-205).

Specifically, Plaintiffs  allege that the Government was negligent in: "continuing to provide unreasonably dangerous housing units"; "failing to adequately warn . . . of the unreasonably dangerous nature of the housing units"; "failing to remedy the dangerous nature of the housing units"; "failing to timely implement adequate safety measures and procedures to address/remove the defects in the housing units"; and "continuing to house [Plaintiffs] in hazardous, unreasonably dangerous temporary housing units." (*Id.*, ¶ 209). They also assert that the Government was "grossly negligent, reckless, willful and/or wanton."[2] (*Id.*, ¶ 206).

## III.    SUMMARY OF THE ARGUMENTS

The Government has filed the instant motion seeking the dismissal of all the Louisiana Plaintiffs'[3] negligence claims brought under the FTCA based upon lack of subject-matter jurisdiction. Noting that the FTCA requires the Government's liability to be measured in accordance with the law of the state where the alleged act or omission occurred, the Government

---

[2]      Plaintiffs have also pleaded that the Government "knowingly and intentionally" suppressed and withheld information from the public and "knowingly and intentionally" allowed litigation concerns to take priority over an alleged safety mandate. (Rec. Doc. 4486,¶ 209). The Government notes the it has not waived its sovereign immunity for suits involving the intentional torts of Government employees. *See* 28 U.S.C. § 2680(h).

[3]      The Government defines "Louisiana Plaintiffs" in note 1 of Rec. Doc. 6970 as "all plaintiffs in this . . . MDL . . .  who inhabited FEMA-provided . . . EHUs . . . and allegedly suffered injuries therefrom – while in the State of Louisiana."

contends that FTCA claims of these plaintiffs are shaped (and limited) by the provisions set forth

in Louisiana law. See 28 U.S.C. § 1346(b); *Cleveland ex rel. Cleveland v. United States*, 457

F.3d 397, 403 (5th Cir. 2006)*; Alexander v. United States*, 605 F.2d 828, 832 (5th Cir. 1979)

("[L]iability under the FTCA is governed by state law."); see also *Richards v. United States*, 369

U.S. 1, 9 (1962).  The Government notes that any alleged negligent acts or omissions on the part

of the Government in these cases will have occurred within the State of Louisiana (where the

plaintiff's EHU was located).[4]

Further, the Government stresses that in assessing liability, the FTCA places the United

States on equal footing with private persons.[5] Thus, the Government asserts that its liability is

measured by referencing the state law liability of a private person under similar circumstances.

As a result, the Government claims that it is entitled to raise any and all defenses available to a

---

[4]     According to the Third Amended Administrative Master Complaint, "a large portion of the negligent and wrongful actions of the defendants occurred in the Eastern District of Louisiana" and that some individual plaintiffs "reside in this district and the acts and/or omissions as to certain of the plaintiffs occurred in this district." (Rec. Doc. 4486, ¶¶ 121-122). Although most of the cases brought by the Louisiana Plaintiffs have presumably been filed in Louisiana district courts, this Court recognizes that the location where a case is filed (even if venue is proper) does not necessarily indicate which state law is used to measure FTCA liability. The FTCA allows for two alternative forums of proper venue: (1) "the judicial district where a plaintiff resides" and (2) the judicial district "wherein the act or omission complained of occurred." See 28 U.S.C. § 1402(b). In other words, because of the first option, some cases properly filed in Louisiana district courts could involve plaintiffs who resided in FEMA-provided housing outside the state of Louisiana.  In those cases, liability under the FTCA would be measured using the law of a state other than Louisiana. Conversely, some cases properly filed in district courts outside the state of Louisiana could involve plaintiffs who resided in EHUs located within the state of Louisiana.  In those cases, liability under the FTCA would be measured using Louisiana state law, as opposed to the law of the state where the case was actually filed.

[5]     The FTCA's limited waiver of sovereign immunity – in other words, its limited grant of subject-matter jurisdiction – is expressly limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).  Whether a private individual in like circumstances could be subject to liability is a question of sovereign immunity.  *See United States v. Olson*, 546 U.S. 43, 44 (2005). Although the FTCA looks to state law to measure Government liability, whether there is analogous private liability under similar circumstances remains a question of federal law.

4

private person under state law.

Here, the Government argues that, even if the Louisiana Plaintiffs could prove that the Government was negligent, there is no analogous tort liability against a "private individual under like circumstances" under Louisiana law. See 28 U.S.C. §§ 2674, 1346(b). The Government asserts that the State of Louisiana has sought to encourage the gratuitous provision of shelter to homeless disaster victims by promulgating La. R.S. § 29:733.1 of the "Louisiana Homeland Security and Emergency Assistance and Disaster Act" ("LHSEADA"). This section, entitled "Limitation of liability of owner or operator of facilities", abrogates the potential negligence liability of all private persons and entities that voluntarily and without compensation allow their property or premises to be used as shelter in response to an emergency:

> Any person or organization, public or private, owning or operating immovable property or other premises who voluntarily and without compensation grants a license or privilege or otherwise permits the designation by the state or local homeland security and emergency preparedness agency or use of the whole or any part of the immovable property or premises for the purpose of sheltering persons or household pets or service animals during an actual, impending, mock, or practice emergency, together with his successor in interest, if any, shall not be liable for the death of, or injury to, any person or household pets or service animals on or about such immovable property or premises during the actual, impending, mock, or practice emergency, or for loss of, or damage to, the property of such person, solely by reason or as a result of the license, privilege, designation, or use, unless the gross negligence or the willful and wanton misconduct of the person owning or operating the immovable property or premises or his successor in interest is the proximate cause of the death, injury, loss, or damage occurring during the sheltering period.

La. R.S. §29:733.1.  The Government argues that by alleging that they suffered exposures and resulting injuries from residing in rent-free housing units that were provided in direct response to the continuing effects of a natural disaster, the Louisiana Plaintiffs seek to assert the very type of

negligence claims that would not be allowed to proceed against a private person under Louisiana law. Specifically, the Government asserts that it, through FEMA:

(1) owned or operated "immovable property or other premises";

(2) acted "voluntarily and without compensation";

(3) granted "use of the whole or part of the immovable property or premises"; and

(4) did so for "for the purpose of sheltering persons during an actual . . . emergency."

*See* La. R.S. §29:733.1. Thus, the Government argues that because there is no analogous private liability under state law, there is no subject-matter jurisdiction under the FTCA.

The Louisiana Plaintiffs, on the other hand, oppose the motion and argue that the Court would arrive at an absurd outcome by strictly interpreting this limitation of liability statute in consideration of the Government's effort to apply its protective language to FEMA under the "private person analogy" of the FTCA. The Louisiana Plaintiffs argue that no private person doing or failing to do what FEMA did or failed to do in connection with this litigation could ever be said to fall within the meaning and scope of this statute. They contend that the private person to which the statute applies would have to act voluntarily and without compensation, would be protected only as to personal injury claims occurring during an "actual emergency", and would be open to suit in his capacity as a property owner. Conversely, the Louisiana Plaintiffs assert that here, FEMA did not act "voluntarily," did not proceed "without compensation," is not sued for personal injuries occurring during the actual emergency of Hurricanes Katrina and Rita, and is not sought to be held liable for conduct predicated upon the ownership of travel trailers. Louisiana Plaintiffs argue that the objective of La. R.S. §29:733.1 is not furthered by limiting the liability of FEMA to gross fault. In Plaintiffs' view, such a limitation would not encourage

"Good Samaritan" behavior. Indeed, the Louisiana Plaintiffs assert that FEMA's further involvement in emergency response is required as a matter of law, and does not constitute voluntary altruism. Essentially, the Louisiana Plaintiffs contend that imposing a "gross fault" limitation of liability on their FTCA cases would be inconsistent with the requirement of the FTCA that FEMA be held accountable in tort just as a private citizen would be held accountable under similar circumstances.

## IV. DISCUSSION

### A. Standard of Review

The Government urges the dismissal of the Louisiana Plaintiffs' FTCA negligence claims for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or in the alternative, requests the granting of summary judgment in its favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Because federal courts are inherently courts of limited jurisdiction, the Court begins with the presumption that a cause lies outside its limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Jurisdiction is of course a threshold issue, and a federal court is tasked with determining whether it has jurisdiction as soon as possible before reaching the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

"Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed

facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).[6] In a 12(b)(1) motion, the party asserting jurisdiction (here, the Louisiana Plaintiffs) bears the burden of proof that jurisdiction does in fact exist. *Id.* "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

The United States as a sovereign "is immune from suit save as it consents to be sued," and without such consent, a district court lacks subject matter jurisdiction over claims against it. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). In other words, the United States may not be sued without its consent under the doctrine of sovereign immunity. See *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). However, the FTCA provides that "the United States shall be liable, respecting the provision of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances. . .." 28 U.S.C. § 2674. Similarly, the FTCA provides that courts may only exercise jurisdiction over:

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance

---

[6] In certain instances, courts will convert motions to dismiss under Rule 12(b)(1) into motions for summary judgment under Rule 56 because resolution of the jurisdictional question is intertwined with the merits of the case and materials outside the pleadings have been submitted. See *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004). Here, the Court agrees with the Government that the jurisdictional question – whether La. R.S. § 733.1 would limit the potential tort liability of an analogous private person under similar circumstances – is not intertwined with a merits determination of whether the Government was negligent. Thus, here, the only issue for the Court to decide is whether this specific provision of Louisiana law would limit the liability of a private person under similar circumstances in light of the Louisiana Plaintiffs' allegations and the undisputed facts. Indeed, this question affects all the Louisiana Plaintiffs in the same manner and does not hinge on a case-by-case or individualized analysis, as many issues in this MDL have.

with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The "law of the place where the act or omission occurred" "refers exclusively to state law." *Brown v. United States*, 653 F.2d 196, 201 (5th Cir. 1981); see *Leleux v. United States*, 178 F.3d 750, 759 (5th Cir. 1999). Hence, the FTCA measures governmental liability in accordance with the law of the state where the act or omission at issue occurred. See *Brown*, 653 F.2d at 201.

Whether a private person in "like circumstances" would be subject to liability is a question of sovereign immunity and, thus, is ultimately a question of federal law. See *Olson*, 546 U.S. at 44; see also *United States v. Mottaz*, 476 U.S. 834, 841 (1986). Therefore, if a private person under "like circumstances" would be shielded from liability pursuant to a state statute, the strict construction required by the Supreme Court dictates that lower courts decline to exercise subject-matter jurisdiction.

## B.    Analysis

As part of the FTCA's private analogous liability requirement, numerous courts have determined that the Government is entitled to raise any and all defenses that would potentially be available to a private citizen or entity under state law. See *Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1998); *Banks v. United States*, 623 F. Supp. 2d 751, 752 (S.D. Miss. 2009) ("Where the FTCA applies, the United States can assert the same defenses available to private citizens . . . "); *Woods v. United States*, 909 F. Supp. 437, 442 (W.D. La 1995) (dismissing an FTCA action based upon the private landowner immunity afforded by Louisiana's recreational use statute). Indeed, the United States Supreme Court has explained that the Government's sovereign immunity is only waived "where local law would make a 'private person' liable in

9

tort". *Olson*, 546 U.S. at 44. While La. R.S. §29:733.1 has yet to be used in this context, other

state statutes that limit private liability to only those circumstances where a plaintiff can

establish gross negligence have been applied in the context of FTCA actions. See, e.g., *Bunting*

*v. United States*, 884 F.2d 1143, 1145, 1147-48 (9th Cir. 1989) (in an FTCA case, applying an

Alaska law barring liability except upon a showing of gross negligence); *Ortiz v. U.S. Border*

*Patrol*, 39 F. Supp. 2d 1321, 1322-23 (D. N.M. 1999) (similar – New Mexico law), aff'd, 210

F.3d 390 (10th Cir. 2000); *Priah v. United States*, 590 F. Supp. 2d 920, 930 (N.D. Ohio 2008)

(similar – Ohio law).

Through section 733.1, the State of Louisiana has limited the negligence liability of

private persons who, voluntarily and without compensation, provide shelter in response to an

emergency or disaster.[7] See La. R.S. §29:733.1. Here, the Louisiana Plaintiffs have alleged that

the Government provided them with shelter because their residences were rendered

uninhabitable and because they were left "homeless" as a result of Hurricanes Katrina and Rita.

(Rec. Doc. 4486, ¶¶ 124, 128, 171). This Court concludes that the immunity provision in La.

---

[7]        While the Louisiana Plaintiffs argue that affording the Government the same protections given by section 733.1 to private persons who provide shelter in response to emergencies would constitute "absurd consequences" (See Rec. Doc. 9403, p. 1), they ignore the FTCA's jurisdictional requirement as well as the Supreme Court's holding in *Olson* that there be analogous "private person" liability. See 546 U.S. at 44 (discussing 28 U.S.C. § 1346(b)). Plaintiffs' attempt to distinguish the Government from a private person who provides similar shelters to the ones at issue herein is clearly inapposite with the express statutory and jurisprudential guidelines. While the Court agrees that there are inherent differences between the Government and a private person, such as the collection of taxes and internal regulations, highlighting such distinctions ignores the express legal requirement that there be analogous "private person" liability. For this same reason, the Court finds Plaintiff's reliance on La. R.S. §29:735, an LHSEADA provision focused almost exclusively on "governmental immunity" rather than "private person" immunity, to be of no moment. Again, the Court stresses that the issue here is whether there is analogous "private person" liability - not governmental immunity. Indeed, the Supreme Court has instructed that the FTCA "requires a court to look to the state-law liability of private entities, not that of public entities, when assessing the Government's liability under the FTCA." *Olsen*, 546 U.S. at 46.

R.S. §29:733.1 should be interpreted broadly[8] to shield the Government from liability based on simple negligence because a private person in like circumstances would be shielded from such by the LHSEADA, specifically, section 733.1.[9] It seems clear to the Court that had a private person or entity provided thousands of emergency shelters to the victims of Hurricanes Katrina and Rita, La. R.S. §29:733.1 plainly would preclude any negligence liability for injuries related to the occupants' use of these shelters. Thus, the Court finds that the Government, through FEMA, voluntarily provided FEMA-owned premises for use by disaster victims (including Louisiana Plaintiffs), at no cost, in connection with the real and ongoing exigencies created by Hurricanes Katrina and Rita.

**(1)  FEMA owned or operated "immovable property or other premises" as required by section 733.1.**

It is undisputed in this case that the Government, through FEMA, provided emergency housing units to thousands of homeless disaster victims across the Gulf Coast (including Louisiana Plaintiffs) following Hurricanes Katrina and Rita. (Rec. Doc. 4486, ¶¶ 124, 128, 135, 171). FEMA sheltered displaced residents through the use of FEMA-owned "premises".[10] The

---

[8]  As the Louisiana Attorney General's Office has previously stressed, "the immunity provisions contained in the Act [LHSEADA] must be broadly interpreted." La. Atty. Gen. Op., No. 08-0093, at *28-29; see also *Robin v. United States*, 2006 WL 2038169, at *2 (E.D. La. July 17, 2006) (Lemelle, J.) (discussing the LHSEADA and stating that, based upon a review of other states' emergency statutes, courts generally provide protection from suit to the fullest extent permitted). These opinions seem to conflict with the narrow interpretation of this immunity provision being sought by the Louisiana Plaintiffs.

[9]  The purpose of La. R.S. § 29.733.1 is to immunize those who provide free shelter in response to a disaster from negligence liability. This provision seems to represent a public policy choice by the Louisiana legislature to encourage the provision of free shelter in the context of an emergency or natural disaster.

[10]  While the law contemplates both "immovable property" and "other premises", this Court finds that "other premises" describes a much broader category of property than what would be deemed "immovable property."

EHUs, which were intended and used for habitation, fall within the "other premises" designation.

As the Government notes, the LHSEADA does not specifically define the term "other premises"; however, the term "premises" has been defined by the State Legislature on other occasions. For instance, La. R.S. §9:2791, which pertains to the liability of an owner or occupant of property not used primarily for commercial recreational purposes, defines "premises" as "lands, roads . . . private ways and buildings, structures, machinery or equipment thereon." Further, La. R.S. 13:4711(A)(6), which pertains to public nuisances, defines "premises" as "any building, structure, land, watercraft, or movable." As installed, the EHUs could not be moved from one place to another; they were set up to be inhabited at static locations throughout the sheltering period. Last, it should be noted that the Louisiana Plaintiffs do not appear to dispute that this element of the statute is satisfied.[11] Accordingly, this Court reasons that the FEMA-provided EHUs that were distributed to the plaintiffs in this MDL meet the "other premises" language in section 733.1.

(2)     **FEMA Acted Voluntarily And Without Compensation, as required by La.**

---

[11]     Indeed, in the Complaint, Plaintiffs allege that these EHUs were converted from "mobile" units into "temporary housing unit[s] to be used as . . . residence[s] for long-term occupancy." (Rec. Doc. 4486, ¶ 160). This was allegedly done by "installing" each housing unit by raising the unit "several feet into the air and off of its wheel base, and setting it on concrete blocks." (*Id.* at ¶¶ 157, 159, 296). Plaintiffs have alleged that this immobilization process, in anticipation of long-term habitation, "modified the design and the actual use of these units occupied by the plaintiff(s)." (*Id.* ¶ 160; see also *Id.* at ¶¶ 301, 308 (alleging that the housing units were "installed" as "residential installations"). This was also allegedly accomplished through the installation of "residential appliances and heating and air conditioning units." (Id. at ¶ 298).

These EHUs were physical locations, installed through connections to the land, and were occupied by individuals for shelter on a full-time basis, much like a house or other type of immovable structure. Thus, even if the Louisiana Plaintiffs' EHUs did not qualify as "other premises," the Court concludes that they could properly be considered as "immovable property" given how they were installed (i.e., being permanently affixed to the land through anchors, tie-downs, and piers of block pilings and integrated into permanent utility systems, which were connected to the municipal electrical grid and sewage system).

Here, the Government, through FEMA, provided rent-free emergency housing to otherwise homeless displaced residents after Hurricanes Katrina and Rita.[12] The Government provided these EHUs for over 44 months, without receiving any form of compensation in return. (See Exhibit 11 to Rec. Doc. 6970; Exhibit 16 to Rec. Doc. 6970, pp. 36-37 ("these units are provided at absolutely no cost to the disaster victims . . . Nothing came out of their pockets in terms of the requirements for this. They paid no out-of-pocket costs for this.")). Thus, all Plaintiffs, including the movants of this motion, were allowed to use FEMA's property as emergency shelters and FEMA received no direct monetary benefit.

Despite Plaintiffs' assertions to the contrary, the Government, through FEMA, was not contractually obligated to provide this emergency shelter, nor was it compelled to act in this way.[13] In deciding to offer displaced residents rent-free EHUs, the Government acted on its own volition.[14] Indeed, Plaintiffs have pointed to no law, mandate, contractual agreement, or other

---

[12] The Plaintiffs argue that the Government's provision of rent-free shelter was not in "like circumstances" with a private person who acts without compensation because the Government collects taxes. However, Plaintiffs concede that they, as recipients of Government-owned emergency shelters, did not pay any money for such assistance "in the direct, payment-to-FEMA sense." (Rec. Doc. 9403, p.4). David Garratt, FEMA Acting Deputy Administrator testified that EHU inhabitants "paid no out-of-pocket costs" to live in the EHUs. (Exhibit 16 to Rec. Doc. 6970, p. 37). While this country's taxpayers, potentially including the Louisiana Plaintiffs, helped fund some of the Government's general operations, the Court agrees that such funds are far too attenuated from the Government's provision of EHUs to be considered "compensation" pursuant to section 733.1. To be certain, there was no transactional *quid-pro-quo*, i.e., exchange of money for use of an EHU.

[13] While Plaintiffs seem to recognize in their Complaint that under the Stafford Act the Government's actions are permissive in that FEMA "*may* provide 'direct assistance' in the form of temporary housing units"(Rec. Doc. 4486, ¶ 142, emphasis added), they argue in opposition to the instant motion that the Stafford Act compelled the Government to provide assistance in this case.

[14] The Court finds it important to note that using these EHUs would not have been the Government's first choice. FEMA claims that, initially, it intended to rely primarily on mobile homes wherein disaster victims could be re-located to mobile home cities set up throughout the affected areas.

external provision that obligates the Government to provide free shelter to displaced residents.

As the Government notes, the Stafford Act and its related implementing regulations do not affirmatively require the provision of assistance. Further, the Stafford Act does not mandate if/when/how FEMA should provide housing assistance after disasters. For instance, 42 U.S.C. § 5174(c)(1)(B)(I) states that FEMA "may provide temporary housing units, acquired by purchase or lease, directly to individuals or households" (emphasis added)).  Essentially, while FEMA is permitted by statute to provide emergency housing assistance, a displaced resident does not have an automatic right or entitlement to receive this particular type of housing assistance from FEMA.

While it is true that the Government formed FEMA and set forth various implementing regulations that charge the agency with the responsibility of responding to emergencies, such inherently governmental provisions cannot then be interpreted to vitiate state law protections and authorize suit where a private person would otherwise be shielded.  Doing so would improperly place the Government  "in a differently situated position than private parties . . . thereby undermining the conditions precedent to the United States' waiver of sovereign immunity in the FTCA." *Hill v. SmithKline*, 393 F.3d 111, 1118 (10th Cir. 2004). Plaintiffs' argument that a private person would never be expected to adhere to all of the policy objectives, regulations, and guidelines that they claim shaped the Government's provision of EHUs is not persuasive. This Court is tasked with looking past the inherent differences between the Government and a private

---

(Ex. 8 to Rec. Doc. 196, ¶6). However, for a myriad of reasons, state and local officials apparently objected to this plan, asserting that disaster victims should be placed in, or as close as possible to, their devastated communities to encourage and promote rebuilding and recovery efforts. (*Id.*). In an attempt to satisfy these objections, the Government, through FEMA, made the decision to rely primarily upon travel trailers and park models which, unlike mobile homes, could be placed in, or in close proximity to, the devastated communities. (*Id.*).

person in order to find the most reasonable private person analogy. *LaBarge v. County of Mariposa*, 798 F.2d 364, 366-69 (9th Cir. 1986). The Fifth Circuit mentioned in *Ridgley v. FEMA*, 512 F.2d 727, 736 (5th Cir. 2008), that mandatory language is wholly absent from FEMA's implementing regulations that discuss the provision of assistance. The *Ridgley* Court discussed all of FEMA's implementing regulations, beyond just the rental assistance provision, and stated "[t]here is simply no indication that the regulations constrain FEMA's discretion to the point that it is bound to provide assistance to all eligible individuals").[15]

Further, to address Plaintiffs' assertions that they had a vested property interest in FEMA-provided assistance, the Court finds additional support in a recent opinion which dealt specifically with EHUs and confirmed that "[b]ecause of its institutional discretion, FEMA's emergency housing assistance does not create an entitlement in the plaintiff to a property interest in that assistance." *Johnson v. FEMA*, 2009 WL 1208639, at *1 (E.D. La. May 1, 2009) (Feldman, J.) (denying a plaintiff's request for an injunction to stay in his Government-provided emergency shelter). Also, following Hurricane Andrew, the Court stated in *Lockett v. FEMA*, 836 F.Supp. 847, 854 (S.D. Fla. 1993), that the Stafford Act "clearly shows that assistance is

_____

[15] While Plaintiffs rely upon *McWaters v. FEMA*, 436 F.Supp. 802 (E.D. La. 2006), for the proposition that FEMA is compelled to render housing assistance under the Stafford Act, this Court first notes it is not bound by another district court decision. Further, the language in *McWaters* on this issue is significantly weakened by the Fifth Circuit's decision in *Ridgley*, which was rendered two years after the *McWaters* opinion. Indeed, this Court has previously stated, "[A]s for the applicability of the *McWaters* case to the scenario before this Court, it should be noted that the Fifth Circuit recently held that the Stafford Act, and its accompanying regulations governing the Individual Assistance housing program, even for persons who qualify for housing assistance, does not, in and of itself, create an entitlement to housing assistance." *In re: FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488 (E.D. La. 2008) (citing *Ridgley*, 512 F.3d at 734-45. Further, *McWaters* did not deal with the Government's provision of emergency housing units. *McWaters* dealt specifically with the continuation and administration of certain programs already set in place. *Id.* at 236. This Court agrees that even if the Government had established a pattern or practice of providing emergency shelter to certain qualified individuals, this does not make its decision to initially provide shelter any less voluntary.

15

discretionary, not mandatory".

Based on the above, the Court agrees with the Government that when FEMA chose to provide emergency shelter to displaced residents following Hurricanes Katrina and Rita, it acted of its own volition. Even if the Government undertook the task of assisting the public in an emergency (and had an agency to do so), that fact does not make its decision to undertake that task mandatory, or in other words, non-voluntary. Further, even if it could be said that the Government was obligated to provide this assistance, the Government imposed such an obligation to provide assistance on itself, thereby rendering the obligation as one that was voluntarily undertaken by the Government.

**(3)     FEMA granted the "use of the whole or part of the immovable property or premises."**

First, the Louisiana Plaintiffs do not appear to dispute that this element of the statute is satisfied. Indeed, section 733.1 immunizes all private persons from negligence liability who, as owners/operators of property or premises, do any one of the following three things: (1) grant "a license or privilege"; (2) permit "the designation by the state or local homeland security and emergency preparedness agency"; or (3) grant the "use of the whole or part of the immovable property or premises" See La. R.S. 29:733.1. Here, it is undisputed in this case that the Government, through FEMA, allowed thousands of homeless displaced residents (including Louisiana Plaintiffs) to use FEMA-owned EHUs in direct response to Hurricanes Katrina and Rita. (See Rec. Doc. 4486, ¶ 150). Indeed, Plaintiffs assert that their usage or occupancy of these same EHUs caused certain injuries. (See Rec. Doc. 4486, ¶¶ 179, 207).[16]

---

[16]     A private person who falls under the protections of section 733.1 "shall not be liable for the death of, or injury to, any person on or about such . . . premises during the actual . . . emergency . . . solely by reason or as a result of the . . . *use*." La. R.S. 29:733.1. Thus, any and all negligence

**(4)    FEMA acted to shelter persons during an "actual . . . emergency"**

The provisions of La. R.S. §29:733.1 apply to acts taken during an "actual, impending, mock, or practice emergency."  An "emergency" under the LHSEADA is defined as "the actual or threatened condition which has been or may be created by a disaster."   La. R.S. 29:723(1)(a). The Act also defines "emergency" as "[a]ny national or state emergency," La. R.S. 29:723(1)(b)(iii).

Here, Plaintiffs allege that they were provided EHUs after what they describe as "the greatest natural disaster in the history of the United States." (Rec. Doc. 4486, ¶¶ 128, 171). While the Louisiana Plaintiffs attempt to require a certain temporal relationship or a "strictly-construed durational scope"[17] to the activity covered by section 733.1, the Court concludes that, regardless of whether a private person provides free emergency shelter to disaster victims within days, weeks, months, or even years after a particular disaster, if the emergency shelter is being provided in direct response to actual exigencies created by the disaster, then that private person would be protected from negligence liability under section 733.1. This reasoning is consistent with a stated purpose of the LHSEADA – to help "respond to" and "recover from" emergencies and disasters. See La. R.S. 29:722(a). The same protection afforded private persons in similar circumstances must be afforded the Government in this case.

The Court agrees with the Government that the Louisiana Plaintiffs' occupancy of these

---

claims against such a private person that allege injury or death stemming from the *usage or occupancy* of an emergency shelter are barred under Louisiana law. Notably, section 733.1 does not distinguish between negligence claims that are premised on a defendant's status as property owner and those that are not.  Thus, the Court finds the Louisiana Plaintiffs' argument to the contrary to be without merit.

[17]    See Rec. Doc. 9403, p. 8.

EHUs is undeniably linked with the continuing and actual emergency created by Hurricanes Katrina and Rita, in that Plaintiffs were suddenly without shelter or domicile on a continuing day-to-day, month-to-month basis. Plaintiff assert that they were provided EHUs because "[t]he residence of each Named Plaintiff was rendered unhabitable following Hurricanes Katrina and/or Rita" and each Plaintiff was left "homeless." (Rec, Doc. 4486, ¶¶ 128, 171). All Plaintiffs, including the movants in the instant motion, were allowed to continue living in these EHUs until they were able to recover from Hurricanes Katrina and Rita by finding alternative housing or by rebuilding. (See Exhibit 9 to Rec. Doc. 6970). The Emergency Shelter Agreement required each displaced resident accepting a FEMA-provided EHU to sign and agree that he or she would "accept other housing options when they become available." (*Id.*, ¶ 4). Thus, persons who continued to live in these EHUs[18] continued to do so in direct response to the conditions caused by Hurricanes Katrina and Rita. Indeed, the LHSEADA defines an "emergency" as "the actual or threatened condition which has been or may be created by a disaster." La. R.S. 29:735. Being rendered "homeless" six months later is just as much an emergency for a population of homeowners as being suddenly rendered "homeless" on August 29, 2005.

Because FEMA was providing shelter to Plaintiffs, including the movants in this motion, throughout the actual conditions that were caused by the disaster (i.e., vast homelessness coupled with an immense void of housing alternatives in the hurricane-stricken areas), the Court finds that the Government's actions can be said to have been taken throughout an "actual emergency" as defined by the LHSEADA.

---

[18]    It is appropriate to note that this term has been used throughout this MDL, even by Plaintiffs, and is an acronym for "*emergency* housing unit".

## V.    CONCLUSION

Thus, for all the reasons stated herein, because La. R.S. 29:733.1 would apply to a private person under similar circumstances, the Government is shielded from all FTCA negligence liability. Accordingly,

**IT IS ORDERED** that **"Defendant United States' Motion to Dismiss the FTCA Negligence Claims of All "Louisiana Plaintiffs" for Lack of Subject-Matter Jurisdiction Based Upon No Analogous Private Liability" (Rec. Doc. 6970)** is **GRANTED**.  To the extent that the Louisiana Plaintiffs have alleged claims against the Government based on simple negligence, such claims are dismissed with prejudice.

New Orleans, Louisiana, this <u>18th</u> day of <u>May</u>, 2010.

_____
**KURT D. ENGELHARDT**
**United States District Court**