```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


****************************************************************

IN RE:  FEMA TRAILER
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION
                              DOCKET MDL NO. 1873 "N"
                              NEW ORLEANS, LOUISIANA
                              FRIDAY, MAY 21, 2010, 8:30 A.M.

THIS DOCUMENT RELATES TO:

DOCKET NO. 09-3251,
EARLINE CASTANEL v
RECREATION BY DESIGN, LLC

****************************************************************

              EXCERPT OF DAY 5, MORNING SESSION
              TRANSCRIPT OF JURY TRIAL PROCEEDINGS
          HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
                    UNITED STATES DISTRICT JUDGE



APPEARANCES:


FOR PLAINTIFF:         WATTS GUERRA CRAFT
                       BY:  MIKAL C. WATTS, ESQUIRE
                       FOUR DOMINION DRIVE
                       BUILDING THREE, SUITE 100
                       SAN ANTONIO TX  78257


                       CHRIS PINEDO
                       ATTORNEY AT LAW
                       802 N. CARANCAHUA, SUITE 2250
                       CORPUS CHRISTI TX   78470


                       REICH & BINSTOCK
                       BY:  DENNIS C. REICH, ESQUIRE
                       4265 SAN FELIPE, SUITE 1000
                       HOUSTON TX   77027
```

```
 1  APPEARANCES CONTINUED:

 2

 3  FOR DEFENDANT:            GARRISON YOUNT FORTE & MULCAHY
                              BY:  LYON H. GARRISON, ESQUIRE
 4                                 SCOTT P. YOUNT, ESQUIRE
                                   RANDALL C. MULCAHY, ESQUIRE
 5                            909 POYDRAS STREET, SUITE 1800
                              NEW ORLEANS LA  70112
 6

 7                            DUPLASS ZWAIN BOURGEOIS MORTON
                              PFISTER & WEINSTOCK
 8                            BY:  ANDREW D. WEINSTOCK, ESQUIRE
                                   JOSEPH G. GLASS, ESQUIRE
 9                            THREE LAKEWAY CENTER
                              3838 N. CAUSEWAY BOULEVARD
10                            SUITE 2900
                              METAIRIE LA  70002
11

12

13  OFFICIAL COURT REPORTER:  CATHY PEPPER, CCR, RMR, CRR
                              500 POYDRAS STREET, ROOM B406
14                            NEW ORLEANS LA  70130
                              (504) 589-7779
15
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
16  PRODUCED BY COMPUTER.

17

18

19

20

21

22

23

24

25
```

1                        **E-X-C-E-R-P-T**

2                        FRIDAY, MAY 21, 2010

3                    A F T E R N O O N   S E S S I O N

4

5

6

7          (WHEREUPON, at this point in the proceedings, the
8   excerpt commenced as follows:)
9          MR. WATTS:  And then the final one is the issue as to
10  Shaw.  And here -- and I've read the transcript, again, with
11  respect to what happened, and I guess you could loop this into
12  two arguments.  I think the uncontroverted evidence, and this all
13  comes from Mr. Compeau, Shaw was only responsible for the
14  maintenance of this unit until June the 1st.
15              You have evidence with respect to the date of the
16  setup.  The date of the move-in is March the 11th.  A monthly
17  inspection, according to contract, occurred on the 7th of April.
18  A monthly inspection, according to contract, occurred on the 16th
19  of May.  An AC leak was noted.  It was fixed the next day on the
20  17.  And between May 17 and June 1, there were no calls with
21  respect to any air conditioning problem; and, therefore, when the
22  Shaw contract ends on June 1, I don't think there is any evidence
23  of negligence or proximate cause with respect to the air
24  conditioning maintenance issue.
25              The second part of it is this, and the Court

1  expressed some indication with respect to was there testimony
2  that he didn't take her through and educate her about all of the
3  issues.
4              I think the problem with that is this.  It's one of
5  time.  And, that is, is on March the 11th -- in other words, it's
6  a proximate cause issue.  On March the 11th of 2006, when she
7  moved into the trailer, if the allegation was is that Shaw is
8  negligent because they failed to take her through everything in
9  the trailer, there is no proximate cause with respect to the
10 failure, if any, to give that tour of the trailer.
11         THE COURT:  Well, it wasn't so much the tour as it was
12 the specific warning.
13         MR. WATTS:  Okay.  Well, here's the problem --
14         THE COURT:  Her testimony was that someone was there
15 with the keys, and they basically gave her the keys, and few
16 words were spoken before the person drove off.
17         MR. WATTS:  Exactly.  And here is the problem with it.
18 The only evidence that we have in this case is from Mr. Compeau
19 that as of this time they had received no complaints with respect
20 to the formaldehyde issue.  The only issue -- the only evidence
21 that you have in the case with respect to time is a subsequent
22 deposition where 10 days after she moves in, somebody from FEMA
23 sends an e-mail out to a variety of different contractors saying,
24 hey, we've heard something about this, what are you going to do
25 to lower the formaldehyde level.  And I think nine days after

1  that, Shaw writes back and says, we're going to initiate an
2  airout program, which they did.
3            Any airout program that was initiated after she
4  moved in bears no proximate cause to the failure to warn her
5  about something that there is no evidence in this case they knew
6  anything about at that point.
7       THE COURT:  Well, but we have had as a prominent feature
8  of not only this case but the others the term "a continuing duty
9  to warn," which has been argued, I think, with regard to all of
10 the defendants in the other cases.  And, of course, this case we
11 only have one defendant, but certainly that would -- wouldn't
12 that applicable to Shaw that they had a continuing duty to warn?
13           Even after their contract expired, if they come to
14 know that there is a hazardous circumstance, would they not,
15 according to -- if a defendant -- in this case, it's the
16 defendant making the argument, unlike in the other cases, but
17 wouldn't there be a continuing duty of Shaw to warn that they
18 have set up a trailer, it contains a hazardous substance, they
19 have provided the keys and, thus, access to an inhabitant?
20      MR. WATTS:  I thought that where we ended up in the
21 Wright case is, is that you had concluded that there was no such
22 continuing duty, and that the duty stopped with respect to Shaw
23 as of the date of the end of their contract.
24           And so I don't think there is a continuing duty
25 when the contract specifically said their duties ended on

1   June the 1st, but I get the frame of argument that the Court is
2   bringing up.  And if the legal issue is their continuing duty to
3   warn after your contract ends for a maintenance project, in this
4   case I think that the gravamen of our motion is, is no, for two
5   reasons.  And one of them is that I think that that determination
6   had been made before; and, two, with respect to the specific
7   facts of this case, you have no information that Shaw had any
8   more information about this.
9            THE COURT:  Counsel.
10           MR. YOUNT:  Judge, briefly.  In addition to the matters
11  that Your Honor pointed out, there was also the testimony of
12  Dr. Laughery who testified that he is in favor of and, in fact,
13  in his opinion it is negligent for there not to be this
14  tripartite warning system where not only there needs to be a
15  warning from the manufacturer itself, but that there needs to be
16  this one-on-one interaction, particularly in a situation where we
17  don't know if somebody can read, we don't know their educational
18  level, that there needs to be a one-on-one interaction
19  face-to-face warning system.
20           The testimony of both the FEMA representatives and
21  the Shaw representatives are clear.  And that's Mr. Compeau and
22  Mr. Lapinski and David Garratt all clearly testified that that
23  was Shaw's responsibility.
24           On cross-examination Ms. Castanel admitted that she
25  sued Shaw, and the allegations of the complaint allege that she

1  felt that they were, therefore, negligent.  So, you add the
2  combination of Dr. Laughery, the undisputed testimony that
3  there -- well, I don't know if it's disputed or not, but
4  certainly Ms. Castanel said that nobody did anything with respect
5  to her.  Certainly, there is sufficient evidence to have a
6  failure of the duty to warn, whether it's ongoing or not,
7  certainly when the keys were turned over.
8              MR. WATTS:  Again, I think the problem is, is that where
9  does the duty arise from?  And that is, is that, you know, Judge
10 Kurt Engelhardt did not have a duty to warn about formaldehyde
11 because you had no role in this.  The manufacturer clearly under
12 the law has a duty arising from the dangers of its product.
13             Shaw, on the other hand, its only duty arises by
14 virtue of what it took on in the contract, and so that frames the
15 time of the duty, in answer to your question about a continuing
16 duty, and, more importantly, the duty is defined by the contract.
17 And he says that everybody testified that Shaw was the one
18 responsible for the one-on-one interactions.  Here is the
19 problem.  The testimony was specific to maintenance, number one;
20 number two, a duty with respect to what they know.  And the only
21 evidence that you have in this case is that there were no
22 instances reported to Shaw as of May the 11th, and that they knew
23 nothing as of that point in time.  Anything after that with
24 respect to that ends on June the 1st, and the only case -- or the
25 only evidence that you have in this case with respect to any

1  knowledge is an anecdotal e-mail, we've heard something about
2  formaldehyde, and the question is what are you all going to do by
3  way of setup or something to prevent this.  And then they
4  establish a policy, but that policy post-dates the setup of this
5  date and, therefore, can't be a proximate cause.
6            THE COURT:  Well, but isn't it a component of your
7  negligence claim against Shaw, to the extent that there was one,
8  that Shaw knew or should have known of a hazardous condition, but
9  nonetheless allowed the plaintiff to enter on her premises.  In
10 fact, facilitated the entry on the premises.  And, even if they
11 didn't know, they should have known shortly thereafter or -- it
12 seems to me that we kind of meet ourselves coming and going on
13 this.
14           MR. WATTS:  Let me respond to that.
15           THE COURT:  Well, the other comment that I would make is
16 that we did spend considerable time establishing that
17 formaldehyde, the principles of formaldehyde as an irritant or
18 even as a carcinogen were not discovered after she was -- she was
19 afforded an opportunity to live in a trailer.  I mean, we've
20 spent a lot of time talking about all of the different studies
21 and benchmarks and probable carcinogen or known carcinogen, but
22 it was not discovered as -- it wasn't something that was
23 discovered after she lived in the trailer.
24           MR. WATTS:  I think that, to answer both of your
25 questions, with respect to the allegations that were made, I

1  agree that allegations were made, and if the law of the case is
2  anybody we sued we could get to the jury with, I could save a lot
3  of money not bringing experts, not bringing proof.  I think it's
4  pleading and proof --
5         THE COURT:  Well, no.  I mean, clearly that's not the
6  case.
7         MR. WATTS:  Yeah.
8         THE COURT:  The case is whether there is an evidentiary
9  basis for this jury to look at that blank and put anything other
10 than a zero on it.
11        MR. WATTS:  Right.  And I guess what I'm saying is, is
12 that with respect to this case, which is the way you've asked us
13 to do this -- and I understand that positions are floating around
14 all different ways across cases -- but with respect to this case,
15 a decision was made to not bring trial against Shaw because of
16 all of the air conditioning information and the time frames that
17 we've talked about.
18            And so the question that you've got to decide, is
19 there any evidence that they knew or should have known, and I
20 would argue from the standpoint of the evidence that we have in
21 this case, the only evidence that got before this jury was they
22 had no complaints whatsoever.  There is no evidence that they had
23 any involvement with respect to what was going into the trailers
24 or anything like that.  There is no setup witnesses that we've
25 had before from the standpoint of the staging areas smells and

1  everything like that.  If they'd have brought Schilligo, we would
2  have talked about that.
3             But, I mean, my point is when you wrap your arms
4  around the four corners of the evidence in this case, we think a
5  Rule 50 dismissal is appropriate.
6             THE COURT:  Refresh my memory, did we not have
7  Mr. Jarrell come in and talk about how he went in a whole bunch
8  of them, and he smelled them.  I mean, I thought that was the
9  whole point of his testimony was to highlight the fact that these
10 trailers had a very noticeable -- although defendant objected
11 because he couldn't say it was formaldehyde, but his testimony
12 was that this was pervasive.
13            MR. WATTS:  But then I think you have a problem in that
14 there is no evidence in the case that Mr. Jarrell reported that
15 are to Shaw.  And it's a know or should have known, and he didn't
16 work for Shaw.
17            THE COURT:  Well, no, but Shaw would have been -- Shaw's
18 people would have been smelling what he was smelling.  They were
19 installing the trailers.
20            What I'm saying is I think there's a reasonable
21 basis -- and I'm going to deny the motion.  I think there is a
22 reasonable basis to argue there is a colorable collection of
23 evidence, it may be meager, that's for argument, but I think
24 there is a colorable piece or pieces of evidence that would at
25 least allow an argument to be made.

1      MR. WATTS:  Judge, those are all of our motions.

2      THE COURT:  Anything else that we need to cover on the
3  record at this time?

4      Counsel, anything else on the record?

5      MR. YOUNT:  No, Your Honor.

6      MR. WATTS:  Oh, I'm sorry, no.  I apologize.

7      THE COURT:  Well, then, we can go ahead and close the
8  record here with the exception of any exhibit cleanup you need to
9  put on the record.  We'll go ahead and close up the record right
10 now.

11     (WHEREUPON, at 12:46 p.m. the excerpt and proceedings
12 concluded.)

13                              *   *   *

14

15                        REPORTER'S CERTIFICATE

16

17     I, Cathy Pepper, Certified Realtime Reporter, Registered
Merit Reporter, Registered Professional Reporter, Certified Court
Reporter of the State of Louisiana, Official Court Reporter for
18 the United States District Court, Eastern District of Louisiana,
do hereby certify that the foregoing is a true and correct
19 transcript to the best of my ability and understanding from the
record of the proceedings in the above-entitled and numbered
20 matter.

21
                              *s/Cathy Pepper*
22                            Cathy Pepper, CRR, RMR, CCR
                              Official Court Reporter
23                            United States District Court

24

25

## 0

**09-3251** [1] - 1:8

## 1

**1** [2] - 3:20, 3:22
**10** [1] - 4:22
**100** [1] - 1:18
**1000** [1] - 1:24
**11th** [4] - 3:16, 4:5, 4:6, 7:22
**12:46** [1] - 11:11
**16th** [1] - 3:18
**17** [2] - 3:20
**1800** [1] - 2:5
**1873** [1] - 1:5
**1st** [3] - 3:14, 6:1, 7:24

## 2

**2006** [1] - 4:6
**2010** [2] - 1:6, 3:2
**21** [2] - 1:6, 3:2
**2250** [1] - 1:21
**2900** [1] - 2:10

## 3

**3838** [1] - 2:9

## 4

**4265** [1] - 1:24

## 5

**5** [1] - 1:11
**50** [1] - 10:5
**500** [1] - 2:13
**504** [1] - 2:14
**589-7779** [1] - 2:14

## 7

**70002** [1] - 2:10
**70112** [1] - 2:5
**70130** [1] - 2:14
**77027** [1] - 1:24
**78257** [1] - 1:18
**78470** [1] - 1:21
**7th** [1] - 3:17

## 8

**802** [1] - 1:21
**8:30** [1] - 1:6

## 9

**909** [1] - 2:5

## A

**A.M** [1] - 1:6
**ability** [1] - 11:19
**above-entitled** [1] - 11:19
**AC** [1] - 3:19
**access** [1] - 5:19
**according** [3] - 3:17, 3:18, 5:15
**add** [1] - 7:1
**addition** [1] - 6:10
**admitted** [1] - 6:24
**afforded** [1] - 8:19
**agree** [1] - 9:1
**ahead** [2] - 11:7, 11:9
**air** [3] - 3:21, 3:23, 9:16
**airout** [2] - 5:2, 5:3
**allegation** [1] - 4:7
**allegations** [3] - 6:25, 8:25, 9:1
**allege** [1] - 6:25
**allow** [1] - 10:25
**allowed** [1] - 8:9
**ANDREW** [1] - 2:8
**anecdotal** [1] - 8:1
**answer** [2] - 7:15, 8:24
**ANTONIO** [1] - 1:18
**apologize** [1] - 11:6
**APPEARANCES** [2] - 1:15, 2:1
**applicable** [1] - 5:12
**appropriate** [1] - 10:5
**April** [1] - 3:17
**areas** [1] - 9:25
**argue** [2] - 9:20, 10:22
**argued** [1] - 5:9
**argument** [4] - 5:16, 6:1, 10:23, 10:25
**arguments** [1] - 3:12
**arise** [1] - 7:9
**arises** [1] - 7:13
**arising** [1] - 7:12
**arms** [1] - 10:3
**AT** - 1:20
**ATTORNEY** [1] - 1:20

## B

**B406** [1] - 2:13
**basis** [3] - 9:9, 10:21, 10:22
**bears** [1] - 5:4
**BEFORE** [1] - 1:12
**benchmarks** [1] - 8:21
**best** [1] - 11:19
**between** [1] - 3:20
**BINSTOCK** [1] - 1:23
**blank** [1] - 9:9
**BOULEVARD** [1] - 2:9
**BOURGEOIS** [1] - 2:7
**briefly** [1] - 6:10
**bring** [1] - 9:15
**bringing** [3] - 6:2, 9:3
**brought** [1] - 10:1
**BUILDING** [1] - 1:18
**bunch** [1] - 10:7
**BY** [7] - 1:9, 1:17, 1:23, 2:3, 2:8, 2:15, 2:16

## C

**CARANCAHUA** [1] - 1:21
**carcinogen** [3] - 8:18, 8:21
**case** [20] - 4:18, 4:21, 5:5, 5:8, 5:10, 5:15, 5:21, 6:4, 6:7, 7:21, 7:24, 7:25, 9:1, 9:6, 9:8, 9:12, 9:14, 9:21, 10:4, 10:14
**cases** [3] - 5:10, 5:16, 9:14
**Castanel** [2] - 6:24, 7:4
**CASTANEL** [1] - 1:9
**Cathy** [2] - 11:16, 11:22
**CATHY** [1] - 2:13
**CAUSEWAY** [1] - 2:9
**CCR** [2] - 2:13, 11:22
**CENTER** [1] - 2:9
**certainly** [4] - 5:11, 7:4, 7:5, 7:7
**CERTIFICATE** [1] - 11:15
**Certified** [2] - 11:16, 11:17
**certify** [1] - 11:18
**CHRIS** [1] - 1:20
**CHRISTI** [1] - 1:21
**circumstance** [1] - 5:14

**claim** [1] - 8:7
**cleanup** [1] - 11:8
**clear** [1] - 6:21
**clearly** [3] - 6:22, 7:11, 9:5
**close** [2] - 11:7, 11:9
**collection** [1] - 10:22
**colorable** [2] - 10:22, 10:24
**combination** [1] - 7:2
**coming** [1] - 8:12
**commenced** [1] - 3:8
**comment** [1] - 8:15
**Compeau** [3] - 3:13, 4:18, 6:21
**complaint** [1] - 6:25
**complaints** [2] - 4:19, 9:22
**component** [1] - 8:6
**COMPUTER** [1] - 2:16
**concluded** [2] - 5:21, 11:12
**condition** [1] - 8:8
**conditioning** [3] - 3:21, 3:24, 9:16
**considerable** [1] - 8:16
**contains** [1] - 5:18
**CONTINUED** [1] - 2:1
**continuing** [7] - 5:8, 5:12, 5:17, 5:22, 5:24, 6:2, 7:15
**contract** [9] - 3:17, 3:18, 3:22, 5:13, 5:23, 5:25, 6:3, 7:14, 7:16
**contractors** [1] - 4:23
**corners** [1] - 10:4
**CORPUS** [1] - 1:21
**correct** [1] - 11:18
**counsel** [2] - 6:9, 11:4
**course** [1] - 5:10
**COURT** [14] - 1:1, 2:13, 4:11, 4:14, 5:7, 6:9, 8:6, 8:15, 9:5, 9:8, 10:6, 10:17, 11:2, 11:7
**Court** [7] - 3:25, 6:1, 11:17, 11:17, 11:18, 11:22, 11:23
**cover** [1] - 11:2
**CRAFT** [1] - 1:16
**cross** [1] - 6:24
**cross-examination** [1] - 6:24
**CRR** [2] - 2:13, 11:22

## D

**dangers** [1] - 7:12
**date** [4] - 3:15, 3:16, 5:23, 8:5
**dates** [1] - 8:4
**David** [1] - 6:22
**DAY** [1] - 1:11
**days** [2] - 4:22, 4:25
**decide** [1] - 9:18
**decision** [1] - 9:15
**defendant** [4] - 5:11, 5:15, 5:16, 10:10
**DEFENDANT** [1] - 2:3
**defendants** [1] - 5:10
**defined** [1] - 7:16
**DENNIS** [1] - 1:23
**deny** [1] - 10:21
**deposition** [1] - 4:22
**DESIGN** [1] - 1:9
**determination** [1] - 6:5
**different** [3] - 4:23, 8:20, 9:14
**discovered** [3] - 8:18, 8:22, 8:23
**dismissal** [1] - 10:5
**disputed** [1] - 7:3
**DISTRICT** [3] - 1:1, 1:1, 1:13
**District** [3] - 11:18, 11:23
**DOCKET** [2] - 1:5, 1:8
**DOCUMENT** [1] - 1:7
**DOMINION** [1] - 1:17
**Dr** [2] - 6:12, 7:2
**DRIVE** [1] - 1:17
**drove** [1] - 4:16
**DUPLASS** [1] - 2:7
**duties** [1] - 5:25
**duty** [16] - 5:8, 5:12, 5:17, 5:22, 5:24, 6:2, 7:6, 7:9, 7:10, 7:12, 7:13, 7:15, 7:16, 7:20

## E

**e-mail** [2] - 4:23, 8:1
**EARLINE** [1] - 1:9
**Eastern** [1] - 11:18
**EASTERN** [1] - 1:1
**educate** [1] - 4:2
**educational** [1] - 6:17
**end** [1] - 5:23
**ended** [2] - 5:20, 5:25
**ends** [3] - 3:22, 6:3, 7:24**

**ENGELHARDT** [1] - 1:12
**Engelhardt** [1] - 7:10
**enter** [1] - 8:9
**entitled** [1] - 11:19
**entry** [1] - 8:10
**ESQUIRE** [7] - 1:17, 1:23, 2:3, 2:4, 2:4, 2:8, 2:8
**establish** [1] - 8:4
**establishing** [1] - 8:16
**evidence** [17] - 3:12, 3:15, 3:22, 4:18, 4:20, 5:5, 7:5, 7:21, 7:25, 9:19, 9:20, 9:21, 9:22, 10:4, 10:14, 10:23, 10:24
**evidentiary** [1] - 9:8
**exactly** [1] - 4:17
**examination** [1] - 6:24
**exception** [1] - 11:8
**EXCERPT** [1] - 3:1
**excerpt** [2] - 3:8, 11:11
**exhibit** [1] - 11:8
**experts** [1] - 9:3
**expired** [1] - 5:13
**expressed** [1] - 4:1
**extent** [1] - 8:7

**F**

**face** [2] - 6:19
**face-to-face** [1] - 6:19
**facilitated** [1] - 8:10
**fact** [3] - 6:12, 8:10, 10:9
**facts** [1] - 6:7
**failed** [1] - 4:8
**failure** [3] - 4:10, 5:4, 7:6
**favor** [1] - 6:12
**feature** [1] - 5:7
**FELIPE** [1] - 1:24
**felt** [1] - 7:1
**FEMA** [3] - 1:4, 4:22, 6:20
**few** [1] - 4:15
**final** [1] - 3:9
**fixed** [1] - 3:19
**floating** [1] - 9:13
**follows** [1] - 3:8
**FOR** [2] - 1:16, 2:3
**foregoing** [1] - 11:18
**FORMALDEHYDE** [1] - 1:4
**formaldehyde** [7] - 4:20, 4:25, 7:10, 8:2, 8:17, 10:11

**FORTE** [1] - 2:3
**four** [1] - 10:4
**FOUR** [1] - 1:17
**frame** [1] - 6:1
**frames** [2] - 7:14, 9:16
**FRIDAY** [2] - 1:6, 3:2

**G**

**Garratt** [1] - 6:22
**GARRISON** [2] - 2:3, 2:3
**GLASS** [1] - 2:8
**gravamen** [1] - 6:4
**GUERRA** [1] - 1:16
**guess** [2] - 3:11, 9:11

**H**

**hand** [1] - 7:13
**hazardous** [3] - 5:14, 5:18, 8:8
**heard** [2] - 4:24, 8:1
**HEARD** [1] - 1:12
**hereby** [1] - 11:18
**highlight** [1] - 10:9
**Honor** [2] - 6:11, 11:5
**HONORABLE** [1] - 1:12
**HOUSTON** [1] - 1:24

**I**

**importantly** [1] - 7:16
**IN** [1] - 1:4
**indication** [1] - 4:1
**information** [3] - 6:7, 6:8, 9:16
**inhabitant** [1] - 5:19
**initiate** [1] - 5:1
**initiated** [1] - 5:3
**inspection** [2] - 3:17, 3:18
**installing** [1] - 10:19
**instances** [1] - 7:22
**interaction** [2] - 6:16, 6:18
**interactions** [1] - 7:18
**involvement** [1] - 9:23
**irritant** [1] - 8:17
**issue** [6] - 3:9, 3:24, 4:6, 4:20, 6:2
**issues** [1] - 4:3
**itself** [1] - 6:15

**J**

**Jarrell** [2] - 10:7, 10:14
**JOSEPH** [1] - 2:8
**judge** [2] - 6:10, 11:1
**JUDGE** [1] - 1:13
**Judge** [1] - 7:9
**June** [5] - 3:14, 3:20, 3:22, 6:1, 7:24
**jury** [3] - 9:2, 9:9, 9:21
**JURY** [1] - 1:12

**K**

**keys** [4] - 4:15, 5:19, 7:7
**kind** [1] - 8:12
**knowledge** [1] - 8:1
**known** [5] - 8:8, 8:11, 8:21, 9:19, 10:15
**KURT** [1] - 1:12
**Kurt** [1] - 7:10

**L**

**LA** [3] - 2:5, 2:10, 2:14
**LAKEWAY** [1] - 2:9
**Lapinski** [1] - 6:22
**Laughery** [2] - 6:12, 7:2
**law** [2] - 7:12, 9:1
**LAW** [1] - 1:20
**leak** [1] - 3:19
**least** [1] - 10:25
**legal** [1] - 6:2
**level** [2] - 4:25, 6:18
**LIABILITY** [1] - 1:5
**LITIGATION** [1] - 1:5
**live** [1] - 8:19
**lived** [1] - 8:23
**LLC** [1] - 1:9
**look** [1] - 9:9
**loop** [1] - 3:11
**Louisiana** [2] - 11:17, 11:18
**LOUISIANA** [2] - 1:1, 1:6
**lower** [1] - 4:25
**LYON** [1] - 2:3

**M**

**mail** [2] - 4:23, 8:1
**maintenance** [4] - 3:14, 3:24, 6:3, 7:19
**manufacturer** [2] -

6:15, 7:11
**March** [3] - 3:16, 4:5, 4:6
**matter** [1] - 11:20
**matters** [1] - 6:10
**MAY** [2] - 1:6, 3:2
**MDL** [1] - 1:5
**meager** [1] - 10:23
**mean** [4] - 8:19, 9:5, 10:3, 10:8
**MECHANICAL** [1] - 2:15
**meet** [1] - 8:12
**memory** [1] - 10:6
**Merit** [1] - 11:17
**METAIRIE** [1] - 2:10
**MIKAL** [1] - 1:17
**money** [1] - 9:3
**monthly** [2] - 3:16, 3:18
**MORNING** [1] - 1:11
**MORTON** [1] - 2:7
**motion** [2] - 6:4, 10:21
**motions** [1] - 11:1
**move** [1] - 3:16
**move-in** [1] - 3:16
**moved** [2] - 4:7, 5:4
**moves** [1] - 4:22
**MR** [14] - 3:9, 4:13, 4:17, 5:20, 6:10, 7:8, 8:14, 8:24, 9:7, 9:11, 10:13, 11:1, 11:5, 11:6
**MULCAHY** [2] - 2:3, 2:4

**N**

**need** [2] - 11:2, 11:8
**needs** [3] - 6:14, 6:15, 6:18
**negligence** [2] - 3:23, 8:7
**negligent** [3] - 4:8, 6:13, 7:1
**NEW** [3] - 1:6, 2:5, 2:14
**next** [1] - 3:19
**nine** [1] - 4:25
**NO** [2] - 1:5, 1:8
**nobody** [1] - 7:4
**nonetheless** [1] - 8:9
**noted** [1] - 3:19
**nothing** [1] - 7:23
**noticeable** [1] - 10:10
**number** [2] - 7:19, 7:20
**numbered** [1] - 11:19

**O**

**objected** [1] - 10:10
**occurred** [2] - 3:17, 3:18
**OF** [2] - 1:1, 1:12
**Official** [2] - 11:17, 11:22
**OFFICIAL** [1] - 2:13
**one** [13] - 3:9, 4:4, 5:11, 6:5, 6:16, 6:18, 7:17, 7:18, 7:19, 8:7
**one-on-one** [3] - 6:16, 6:18, 7:18
**ongoing** [1] - 7:6
**opinion** [1] - 6:13
**opportunity** [1] - 8:19
**ORLEANS** [3] - 1:6, 2:5, 2:14
**ourselves** [1] - 8:12

**P**

**p.m** [1] - 11:11
**part** [1] - 3:25
**particularly** [1] - 6:16
**people** [1] - 10:18
**PEPPER** [1] - 2:13
**Pepper** [3] - 11:16, 11:21, 11:22
**person** [1] - 4:16
**pervasive** [1] - 10:12
**PFISTER** [1] - 2:7
**piece** [1] - 10:24
**pieces** [1] - 10:24
**PINEDO** [1] - 1:20
**plaintiff** [1] - 8:9
**PLAINTIFF** [1] - 1:16
**pleading** [1] - 9:4
**point** [5] - 3:7, 5:6, 7:23, 10:3, 10:9
**pointed** [1] - 6:11
**policy** [2] - 8:4
**positions** [1] - 9:13
**post** [1] - 8:4
**post-dates** [1] - 8:4
**POYDRAS** [2] - 2:5, 2:13
**premises** [2] - 8:9, 8:10
**prevent** [1] - 8:3
**principles** [1] - 8:17
**probable** [1] - 8:21
**problem** [7] - 3:21, 4:4, 4:13, 4:17, 7:8, 7:19, 10:13
**proceedings** [3] - 3:7, 11:11, 11:19

**PROCEEDINGS** [2] - 1:12, 2:15
**PRODUCED** [1] - 2:16
**product** [1] - 7:12
**PRODUCTS** [1] - 1:4
**Professional** [1] - 11:17
**program** [2] - 5:2, 5:3
**project** [1] - 6:3
**prominent** [1] - 5:7
**proof** [2] - 9:3, 9:4
**provided** [1] - 5:19
**proximate** [5] - 3:23, 4:6, 4:9, 5:4, 8:5
**put** [2] - 9:9, 11:9

**Q**

**questions** [1] - 8:25

**R**

**RANDALL** [1] - 2:4
**RE** [1] - 1:4
**read** [2] - 3:10, 6:17
**Realtime** [1] - 11:16
**reasonable** [2] - 10:20, 10:22
**reasons** [1] - 6:5
**received** [1] - 4:19
**record** [6] - 11:3, 11:4, 11:8, 11:9, 11:19
**RECORDED** [1] - 2:15
**RECREATION** [1] - 1:9
**refresh** [1] - 10:6
**regard** [1] - 5:9
**Registered** [2] - 11:16, 11:17
**REICH** [2] - 1:23, 1:23
**RELATES** [1] - 1:7
**reported** [2] - 7:22, 10:14
**REPORTER** [1] - 2:13
**Reporter** [6] - 11:16, 11:17, 11:17, 11:22
**REPORTER'S** [1] - 11:15
**representatives** [2] - 6:20, 6:21
**respect** [18] - 3:11, 3:15, 3:21, 3:23, 4:1, 4:9, 4:19, 4:21, 5:22, 6:6, 7:4, 7:20, 7:24, 7:25, 8:25, 9:12, 9:14, 9:23
**respond** [1] - 8:14
**responsibility** [1] - 6:23
**responsible** [2] - 3:13, 7:18
**RMR** [2] - 2:13, 11:22
**role** [1] - 7:11
**ROOM** [1] - 2:13
**Rule** [1] - 10:5

**S**

**s/Cathy** [1] - 11:21
**SAN** [2] - 1:18, 1:24
**save** [1] - 9:2
**Schilligo** [1] - 10:1
**SCOTT** [1] - 2:4
**second** [1] - 3:25
**sends** [1] - 4:23
**SESSION** [1] - 1:11
**set** [1] - 5:18
**setup** [4] - 3:16, 8:3, 8:4, 9:24
**Shaw** [20] - 3:10, 3:13, 3:22, 4:7, 5:1, 5:12, 5:17, 5:22, 6:7, 6:21, 6:25, 7:13, 7:17, 7:22, 8:7, 8:8, 9:15, 10:15, 10:16, 10:17
**Shaw's** [2] - 6:23, 10:17
**shortly** [1] - 8:11
**situation** [1] - 6:16
**smelled** [1] - 10:8
**smelling** [2] - 10:18
**smells** [1] - 9:25
**someone** [1] - 4:14
**sorry** [1] - 11:6
**specific** [3] - 4:12, 6:6, 7:19
**specifically** [1] - 5:25
**spend** [1] - 8:16
**spent** [1] - 8:20
**spoken** [1] - 4:16
**staging** [1] - 9:25
**standpoint** [2] - 9:20, 9:25
**State** [1] - 11:17
**STATES** [2] - 1:1, 1:13
**States** [2] - 11:18, 11:23
**STENOGRAPHY** [1] - 2:15
**stopped** [1] - 5:22
**STREET** [2] - 2:5, 2:13
**studies** [1] - 8:20
**subsequent** [1] - 4:21
**substance** [1] - 5:18
**sued** [2] - 6:25, 9:2
**sufficient** [1] - 7:5
**SUITE** [5] - 1:18, 1:21, 1:24, 2:5, 2:10
**system** [2] - 6:14, 6:19

**T**

**term** [1] - 5:8
**testified** [3] - 6:12, 6:22, 7:17
**testimony** [8] - 4:1, 4:14, 6:11, 6:20, 7:2, 7:19, 10:9, 10:11
**THE** [13] - 1:12, 4:11, 4:14, 5:7, 6:9, 8:6, 8:15, 9:5, 9:8, 10:6, 10:17, 11:2, 11:7
**thereafter** [1] - 8:11
**therefore** [3] - 3:21, 7:1, 8:5
**THIS** [1] - 1:7
**THREE** [2] - 1:18, 2:9
**TO** [1] - 1:7
**took** [1] - 7:14
**tour** [2] - 4:10, 4:11
**TRAILER** [1] - 1:4
**trailer** [6] - 4:7, 4:9, 4:10, 5:18, 8:19, 8:23
**trailers** [3] - 9:23, 10:10, 10:19
**TRANSCRIPT** [2] - 1:12, 2:15
**transcript** [2] - 3:10, 11:19
**trial** [1] - 9:15
**TRIAL** [1] - 1:12
**tripartite** [1] - 6:14
**true** [1] - 11:18
**turned** [1] - 7:7
**two** [4] - 3:12, 6:4, 6:6, 7:20
**TX** [3] - 1:18, 1:21, 1:24

**U**

**uncontroverted** [1] - 3:12
**under** [1] - 7:11
**undisputed** [1] - 7:2
**unit** [1] - 3:14
**UNITED** [2] - 1:1, 1:13
**United** [2] - 11:18, 11:23
**unlike** [1] - 5:16
**up** [4] - 5:18, 5:20, 6:2, 11:9

**V**

**variety** [1] - 4:23
**virtue** [1] - 7:14

**W**

**warn** [7] - 5:4, 5:9, 5:12, 5:17, 6:3, 7:6, 7:10
**warning** [4] - 4:12, 6:14, 6:15, 6:19
**WATTS** [14] - 1:16, 1:17, 3:9, 4:13, 4:17, 5:20, 7:8, 8:14, 8:24, 9:7, 9:11, 10:13, 11:1, 11:6
**ways** [1] - 9:14
**WEINSTOCK** [2] - 2:7, 2:8
**whatsoever** [1] - 9:22
**WHEREUPON** [2] - 3:7, 11:11
**whole** [2] - 10:7, 10:9
**witnesses** [1] - 9:24
**words** [2] - 4:5, 4:16
**wrap** [1] - 10:3
**Wright** [1] - 5:21
**writes** [1] - 5:1

**Y**

**YOUNT** [4] - 2:3, 2:4, 6:10, 11:5

**Z**

**zero** [1] - 9:10
**ZWAIN** [1] - 2:7