UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N-5<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO:

*Lyndon Wright v. Forest River, et al.*, No. 09-2977 (E.D. LA)

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**UNITED STATES OF AMERICA'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR REVIEW OF TAXATION OF COSTS**

Defendant United States of America ("United States") hereby moves pursuant to Fed. R. Civ. P. 54, Local Rule 54.5, and applicable law, for review of the Clerk's award of costs in favor of the United States and against Plaintiff Lyndon Wright (Rec. Doc. 14271). More specifically, the United States seeks through this Motion an award of costs incurred in defending this action, including the costs associated with expert witness fees incurred by the government in defending against Plaintiff's claims for damages due to mold exposure. As demonstrated below, such an award is consistent with applicable law and the record in this case.

**PROCEDURAL BACKGROUND**

On March 2, 2009, Plaintiff Lyndon Wright filed suit against the United States (Rec. Doc. 1, Case No. 09-2977). On March 6, 2009, the Court selected Mr. Wright as a Bellwether Plaintiff and set his case for trial on December 7, 2009 (Rec. Doc. 1299; Rec. Doc. 1307). On June 18, 2009, the Defendants filed a Motion for Protective Order to prohibit the re-testing of the trailer occupied by Mr. Wright (Rec. Doc. 1805; Rec. Doc. 1817). That Motion requested, in

part, that "no mold testing of any kind be permitted" because mold had "not been properly alleged in this case." *Id.* at 11 & n.12 (Rec. Doc. 1805-2).  On June 30, 2009, the Court Ordered that "no mold testing shall be permitted." (Rec. Doc. 2009 at 2).

On July 2, 2009, Plaintiff filed a Motion for Reconsideration arguing that "[t]he prohibition of mold testing will exclude a very large and important piece of evidence essential to Plaintiff's case." Rec. Doc. 2042-1 ¶ 5.  On July 13, 2009, the Court denied Plaintiff's Motion, explaining that "at this late date, the Court will not permit Wright to conduct mold testing to allegedly support his recently-made claims that mold contributed to his injuries." Rec. Doc. 2149 at 3.

Also on July 13, 2009, Plaintiff filed a Motion for Leave to file a First Supplemental and Amending Complaint alleging that his injuries were caused by exposure to mold in the travel trailer (Rec. Doc. 2128).  On July 17, 2009, the Court addressed Plaintiff's Motion and Defendants' objections to that Motion, ruling that Plaintiff could amend his Complaint to assert claims for damages resulting from alleged exposure to mold (Rec. Doc. 2201).  Per this ruling, Plaintiff's First Supplemental and Amending Complaint was filed on July 17, 2009 (Rec. Doc. 2203).

On August 17, 2009, the Court reset the case for trial on March 15, 2010, and required parties to complete all discovery on or before January 29, 2010 (Rec. Doc. 2716).  On November 17, 2009, the United States filed its Motion to Dismiss Lyndon Wright's FTCA claims, asserting that the Court lacked subject matter jurisdiction because Mr. Wright filed suit before exhausting his administrative remedies, 28 U.S.C. § 2675(a), and because his FTCA claims were time-barred by the FTCA two-year statute of limitations, 28 U.S.C. § 2401(b) (Rec. Doc. 7368).

Plaintiff opposed that Motion, arguing that he had complied with applicable legal requirements, and asserting that the Court had subject matter jurisdiction over his FTCA action (Rec. Doc. 8670).  On January 21, 2010, just 8 days before the close of discovery, the Court granted the United States' Motion and dismissed Plaintiffs' FTCA claims for lack of subject matter jurisdiction (Rec. Doc. 10493).

On February 25, 2010, the United States, as the prevailing party, moved for an award of costs pursuant to Fed. R. Civ. P. 54, seeking reimbursement of various expenses, including expenses incurred to defend against Plaintiff's claim for damages due to mold exposure (Rec. Doc. 11936).  Plaintiff opposed that Motion (Rec. Doc. 12963), and the United States filed a Reply Memorandum in support of that Motion on March 23, 2010 (Rec. Doc. 13098).  On May 26, 2010, the Clerk of Court held a telephonic hearing to address the United States' Motion.  On May 28, 2010, the Clerk taxed costs against plaintiff Lyndon Wright and in favor of the United States, in the amount of $24,395.20, which includes all costs the United States sought, except for mold-related expenses (Rec. Doc. 14271).  The United States hereby seeks review of that award, in order to obtain reimbursement for expert expenses it incurred to defend against Plaintiff's frivolous (and eventually abandoned) mold claim.

## RELEVANT FACTS

1.      Dr. Bruce Kelman is a Board-certified toxicologist, certified by the American Board of Toxicology and the Academy of Toxicological Sciences.  He is a Registered Toxicologist in the United Kingdom and the European Toxicology Registries.  Rec. Doc. 13098-4 at 3 (Qualifications Section of Kelman Expert Report).  Dr. Kelman charges $425 per hour for his services as an expert, including for his time spent to prepare an expert report.  Rec. Doc.


11936-5 (Kelman invoices); Rec. Doc. 13098-5 at 23:5-24:8 (Kelman Dep.).

  2.  In July, 2009, in response to the Court's Order allowing Plaintiff to assert his mold claims, the United States hired Dr. Kelman to investigate those claims and prepare a Fed. R. Civ. P. 26 expert report.  *See* Rec. Doc. 11936-5 at 1 (Kelman invoice); Rec. Doc. 13098-4 at 2 (Kelman Report).

  3.  On November 2, 2009, Dr. Kelman issued Rule 26 expert report.  *Id.*

  4.  Costs incurred by the United States for Dr. Kelman's investigation and expert report total $130,072.95.  Rec. Doc. 11936-5 (Kelman invoices).

  5.  On December 15, 2009, PSC deposed Dr. Kelman.  Rec. Doc. 13098-5 (Kelman Dep.).

  6.  On February 1, 2010, the private Defendants filed a Motion for Summary Judgment seeking in part dismissal of Plaintiffs' mold claims.  Rec. Doc. 10933.

  7.  In his Opposition to the private Defendants' Motion, Plaintiff did not contest the dismissal of his mold claims.  Rec. Doc. 11546.

  8.  The Court, in granting in part the private Defendants' Motion for Summary Judgment, ruled that Defendants are entitled to recover expert witness costs, including all expert fees incurred in defending against Plaintiffs' mold claims.  Rec. Doc. 12049 at 2.

## ARGUMENT

Through this Motion, the United States seeks an award of $130,072.95 for costs incurred relating to Dr. Bruce Kelman, a toxicologist hired specifically to investigate Plaintiff's mold claim and provide expert opinion regarding whether Plaintiff was injured as a result of his

4

alleged exposure to mold.[1]  An award of all such costs is warranted because of the unique circumstances under which the mold claim was brought, and subsequently dismissed by the Court.  This matter was addressed by the Court in its March 2, 2010 Order and Reasons granting the private Defendants' summary judgment Motion with respect to Plaintiff's mold claim, where the Court, consistent with its previous instruction to PSC regarding that claim, ruled that Defendants are entitled to the costs of all expert fees related to mold testing and analysis.  Rec. Doc. 12049.  As the Court explained:

> [A] significant portion of Defendant's motion was spent arguing that all claims for damages arising from Plaintiff's alleged mold exposure in the EHU must be dismissed due to a lack of causation testimony.  (See Rec. Doc. 10933, pp. 16-19).  As Defendants note in their Reply, Plaintiff failed to address this issue in his 18-page Opposition.  Indeed, the word "mold" does not appear anywhere therein.  Finding Defendants' unopposed arguments in this regard to have merit, this Court grants this motion.  ***Further, based on Plaintiff's vigorous argument, which he ultimately won, to have mold exposure claims added to this bellwether trial and Defendants' adamant arguments to the contrary, including those relating to the increased cost of litigation expenses relating thereto, the Court finds it appropriate to award Defendants the cost of all expert fees related to mold testing and analysis, as well as the fees for the expert reports that were generated based on such testing and analysis***.

*Id.* at 2 (emphasis added).

　　　　A court, pursuant to its inherent authority, and so long as such an award is not forbidden by Congress, may award costs for expert witnesses in excess of the statutory maximum contained in 28 U.S.C. § 1821.  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-259

---

[1] The United States also seeks affirmance of the Clerk's award of $24,395.20, in favor of the United States and against Plaintiff, for a total cost award of $154,468.15.  These costs are itemized in the United States' pleadings in support of its Motion for an Award of Costs, Rec. Doc. 11936-1 (Memorandum in Support of Motion); Rec. Doc. 11936-5 (Kelman invoices); and 13098-3 (Reply Memorandum in Support of Motion).

(1975); *United States ex rel. Wallace v. Flintco, Inc.*, 143 F.3d 955, 972-73 & n.14 (5th Cir. 1998) (citing cases). Such an award is warranted where a party has willfully disobeyed a court order, or has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co.*, 421 U.S. at 258-259 (citing cases); *United States ex rel. Wallace*, 143 F.3d at 972-73 & n.13; *see also* 28 U.S.C. § 1927 (attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 332-333 (5th Cir. 1995) (expert fees in excess of statutory amounts may be awarded in certain circumstances under discovery rule).

In the instant case an award of expert witness costs, including fees, associated with defending against Plaintiffs' mold claims is warranted. On June 18, 2009, the Defendants filed a Motion for Protective Order to prohibit the re-testing of the trailer occupied by Mr. Wright (Rec. Doc. 1805; Rec. Doc. 1817). That Motion requested, in part, that "no mold testing of any kind be permitted" because mold had "not been properly alleged in this case." *Id.* at 11 & n.12 (Rec. Doc. 1805-2). On June 30, 2009, the Court Ordered that "no mold testing shall be permitted" (Rec. Doc. 2009 at 2). On July 2, 2009, Plaintiff filed a Motion for Reconsideration, arguing that "[t]he prohibition of mold testing will exclude a very large and important piece of evidence essential to Plaintiff's case." Rec. Doc. 2042-1 ¶ 5. On July 13, 2009, the Court denied Plaintiff's Motion. Rec. Doc. 2149. In so doing, the Court referenced its July 6, 2009 Order and Reasons wherein it ruled, on a separate request addressing mold, that:

> Plaintiffs have confirmed that they are not alleging claims relating to the impact of mold on their health. . . . The Court will consider giving an instruction to the jury that Plaintiffs do not allege and cannot recover for

> the impact of the presence of mold on their health.  It should be noted that the substance of this guidance shall also apply to the Court's June 30, 2009 Order and Reasons (Rec. Doc. 2009), wherein it stated that "[n]o mold testing shall be permitted."

Rec. Doc. 2149 at 2-3 (citing Rec. Doc. 2062 at 2).  The Court further explained that "at this late date, the Court will not permit Wright to conduct mold testing to allegedly support his recently-made claims that mold contributed to his injuries." Rec. Doc. 2149 at 3.

Notwithstanding the Court's denial of the Motion for Reconsideration, in addition to the Court's two previous Orders disallowing mold testing and claims, Mr. Wright, on July 13, 2009, filed a Motion for Leave to file a First Supplemental and Amending Complaint alleging that his injuries were caused by exposure to mold in the travel trailer (Rec. Doc. 2128).  On July 17, 2009, the Court held a conference to address Plaintiff's Motion (Rec. Doc. 2201).  In the conference, the Court explained that "[t]he MDL was designed to handle common allegations from several districts relative to formaldehyde exposure . . . . [T]his is the first and only case where mold exposure as a component claim for compensation has been made . . . . So I am very concerned about injecting an entirely new claim for injury based on mold exposure . . . . I don't think that result tells us anything about how the MDL can be resolved." July 17, 2009, Hearing Transcript at 4:10-5:3 (Rec. Doc. 2625-1); *see also id.* at 15:16-23 ("I am surprised that this hasn't come up before" that Plaintiff has "in addition to [his formaldehyde claim] a mold exposure claim.  I don't understand how this could have come up so late.").

During the conference, the United States explained that allowing Plaintiff to test the trailer and assert claims based upon mold would constitute a substantial waste of time and money:

7

> **Mr. Miller**: Judge, even if the plaintiff from the very beginning had been asking for damages that were mold related, we still would have opposed mold testing at this point in time because what is the point of hiring a bunch of mold experts to go out to a trailer that's been sitting out in a field in Louisiana through the winter, summer, all seasons for 18 months? God knows what kind of mold is growing in that thing. I mean, no useful data are going to come out of that expenditure of money on mold testing at this point in time.
>
> \* \* \*
>
> **The Court**: Well, you might be right about that and that sounds like the subject of a *Daubert* motion. It may well be that a test at this point in time is pretty meaningless seems to me, and that's the subject of a *Daubert* motion and that will be the subject of the merits of it, not admissibility.

*Id.* at 22:6-22. The Court later had this exchange with Plaintiff's Counsel:

> **The Court**: You've made an allegation about mold, I hope under Rule 12 you've got some basis to make that allegation. You should already have a lot of information on that. You're asking me to allow this amended complaint, I hope you've already done your homework to a large degree.
>
> **Mr. D'Amico**: We have, Judge.

*Id.* at 36:20-25. Finally, the Court instructed Plaintiff's Counsel, that Plaintiff must promptly abandon the mold claim if he was unable to meet his burden of proof.

> **The Court**: And I have the same concern about expanding beyond formaldehyde, my responsibility was to try to handle in a multidistrict fashion complaints about formaldehyde exposure. The problem with not handling the mold at this point that in order to hopefully achieve a resolution of all of these cases I've got to be able to pick up that piece to the extent that it is not unique to this plaintiff alone but that it may be a common component to a larger group of plaintiffs.
>
> **Mr. D'Amico**: And, Judge, I would say that that's the point if I felt that was an oddball case and it was one of a rarity I would not be proposing that we go forward with this case. I would say, look, we have an anomaly, let's kick him out. All of our statistical analysis and what CDC showed, just like you did in this selection process, one is going to be a mold case and that's what we found.

> **The Court**: Frank, all I can tell you, cautionary word, if you do not have an expert who can help you with your burden of proof, I would expect you to abandon the claim with regard to mold exposure.
>
> **Mr. D'Amico**: Absolutely. And the only reason I am addressing, if you look at the attachment from FEMA about important information about formaldehyde residents, they warn that other pollutants, mold and smoke -
>
> **The Court**: All of that is well and good, but you need testimony to meet your burden of proof that this man . . . That this plaintiff suffered an injury as a result of not just any mold but mold that was present in his unit while he lived in it and not mold from any other source. So you better be prepared to meet that burden. And if you can't, I would expect you to abandon the claim, sooner rather than later.
>
> **Mr. D'Amico**: Absolutely, Judge.

*Id.* at 48-49:6-13. After the conference, the Court issued an Order granting Plaintiff leave to amend his Complaint to add the claim for mold-related injuries (Rec. Doc. 2201).

Within days of that Order, the United States, in direct response to the Plaintiff's late injection of the mold issue into the case, retained Dr. Bruce Kelman, a toxicologist who specializes in mold. Dr. Kelman was specifically hired to investigate and assess Plaintiff's mold claim, to participate in or observe the mold testing of the trailer in which Plaintiff resided, and to prepare an expert report setting forth his opinions regarding Plaintiff's alleged mold exposure and their bases. *See* Rec. Doc. 11936-5 at 1 (Kelman invoice dated July 31, 2009). By February, 2010, the month before trial, Plaintiff had failed to proffer ***any evidence whatsoever*** to meet his burden of proof on the mold claim, and did not even attempt to challenge the private Defendants' Motion to dismiss his mold claim. *See* Memorandum In Support of Motion for Summary Judgement at 16-19 (Rec. Doc. 10933-1); Response to Motion filed by Plaintiffs' Liaison Counsel (Rec. Doc. 11546); Reply to Response to Motion filed by Defendant at 2 (Rec. Doc.

9

11816). For this reason, this Court awarded the private Defendants "the cost of all expert fees related to mold testing and analysis, as well as the fees for the expert reports that were generated based on such testing and analysis." Rec. Doc. 12049 at 2.

    The United States simply requests the same relief that was awarded to the private Defendants in this case, namely, reimbursement for all costs and fees incurred to defend against Plaintiff's spurious mold claim. In fact, the United States incurred the majority of the Defendants' expenses related to the investigation and assessment of Plaintiff's mold claim. The United States, due to its past experience with mold-related issues, undertook the lead to defend against this claim and hired Dr. Kelman.[2] Even though the United States was eventually dismissed from this case for lack of subject matter jurisdiction, prior to trial, the United States was required to expend substantial resources to defend against Plaintiff's mold claim prior to its dismissal. *See* Rec. Doc. 11936-5 (Kelman invoices). This included expenses related to the observation of Plaintiff's mold testing of the trailer and the generation of an expert report. *See id.* Because Plaintiff's Counsel failed to comply with the Court's instruction and promptly abandon the mold claim upon discovering that it lacked merit, this case presents a special circumstance where all costs associated with defending against the mold allegations should be awarded to the United States. *See Alyeska*, 451 U.S. at 258-259; *Cambridge Toxicology Group, Inc., v. Val Exnicios*, 495 F.3d 169, 180-181 (5th Cir. 2007) (attorney who continued to file pleadings despite repeated denials of leave to amend and court instructions was required to pay

---

[2] In the event that the United States was dismissed prior to trial, Dr. Kelman had agreed to continue to work on this action if requested to do so by the private Defendants, and the private Defendants would pay for any such work. However, although the United States was dismissed prior to trial, the private Defendants never engaged Dr. Kelman because the Court granted their Motion and dismissed Plaintiff's mold claim prior to trial. Rec. Doc. 12049.

costs and fees pursuant to 28 U.S.C. § 1927).

These mold-related costs total $130,072.95, and are being sought in addition to the Clerk's award of $24,395.20 in costs in favor of the United States and against Lyndon Wright (Rec. Doc. 14271).  Because Plaintiff needlessly interjected a baseless mold claim into this case in the face of the cautionary words of this Court, which required the United States to spend substantial expert fees to evaluate that claim, justice dictates that the Plaintiff must bear those costs.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court enter an award of costs against Lyndon Wright and in favor of the United States in the amount of $154,468.15, which includes $130,072.95 in costs relating to Plaintiff's mold claim, and $24,395.20 in costs previously awarded to the United States by the Clerk.

Dated: June 4, 2010.                                    Respectfully Submitted,

TONY WEST                                               ADAM BAIN
Assistant Attorney General, Civil Division              HENRY T. MILLER
                                                        Senior Trial Counsel

J. PATRICK GLYNN                                        ADAM DINNELL
Director, Torts Branch, Civil Division                  MICHELE GREIF
                                                        JONATHAN WALDRON
DAVID S. FISHBACK                                       Trial Attorneys
Assistant Director

OF COUNSEL:                                             *//S// Michelle Boyle*
                                                        MICHELLE BOYLE (Va. Bar No. 73710)
JORDAN FRIED                                            Trial Attorney
Associate Chief Counsel                                 United States Department of Justice
                                                        Civil Division – Torts Branch
JANICE WILLIAMS-JONES                                   P.O. Box 340, Ben Franklin Station
Senior Trial Attorney                                   Washington, D.C. 20004
Federal Emergency Management Agency                     Telephone No: (202) 616-4447
Department of Homeland Security                         E-mail: Michelle.Boyle@USDOJ.Gov
Washington, D.C. 20472

                                                        Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

                                                        *//S// Michelle Boyle*
                                                        MICHELLE BOYLE (Va. Bar No. 73710)