UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                                    MDL NO. 07-1873
         FORMALDEHYDE PRODUCTS
         LIABILITY LITIGATION
                                                       SECTION "N"  (5)

THIS DOCUMENT RELATES TO
ALL CASES (Mississippi Plaintiffs)

## ORDER AND REASONS

Before the Court is Defendant United States' Motion to Dismiss the Remaining FTCA

Claims of All "Mississippi Plaintiffs" for Lack of Subject-Matter Jurisdiction Based Upon No

Analogous Private Liability (Rec. Doc. 7690).  This motion is opposed. (See Rec. Doc. 9405).

After considering the memoranda filed by the parties and the applicable law, the Court grants

this motion.[1]

## I.      INTRODUCTION

First, the undersigned notes that the motion presently before the Court addresses all of

the remaining Federal Tort Claims Act ("FTCA") claims brought by the "Mississippi Plaintiffs"

---

[1]      The Court notes that it granted a similar motion to dismiss brought by the Government,
addressing the FTCA claims of all "Louisiana Plaintiffs."  (See Rec. Doc. 14124).  For the purpose of the
instant motion, the Government adopts and incorporates the arguments and law advanced in support of its
motion to dismiss the FTCA claims of the "Louisiana Plaintiffs."  For substantially the same reasons,
restated herein, this Court grants this motion.

against the United States of America ("the Government" or "FEMA"). Based on the wording of the applicable Mississippi law, and on the showing made, this motion affects *all* of the Mississippi Plaintiffs' FTCA claims, not merely the standard of care to be applied to FEMA for the purposes of assessing liability under state law, as was the case in the similar motion filed by the "Louisiana Plaintiffs." The issue presented herein is indeed the dismissal of the Government as a defendant in the Mississippi Plaintiffs' cases. Essentially, this motion seeks dismissal of all Mississippi Plaintiffs' FTCA claims, regardless of whether they are grounded in simple negligence or otherwise.

## II.    BACKGROUND

In this multi-district litigation ("the MDL"), referred to as "In Re: FEMA Trailer Formaldehyde Products Liability Litigation," Plaintiffs are individuals who resided in emergency

housing units ("EHUs") provided by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita. In general, Plaintiffs claim injuries resulting from alleged exposure to the release of formaldehyde and/or formaldehyde vapors in these EHUs. (Rec. Doc. 109, ¶ 30). In their Third Supplemental and Amended Administrative Master Complaint (Rec. Doc. 4486), Plaintiffs have sued over 100 entities, including the Government.[2] (Rec. Doc. 4486, ¶¶ 10-115). The Complaint cites 28 U.S.C. §§ 1346 and 2671, *et seq*., and alleges that the Government is subject to the jurisdiction of this Court through the limited waiver of sovereign immunity, found in the FTCA. (*Id.* ¶ 116).

---

[2]    Plaintiffs have since filed a Fourth Supplemental and Amended Administrative Master Complaint (Rec. Doc. 7688), which essentially incorporates the same allegations. For the purposes of this Order and Reasons, the Court cites to the Third Amended Complaint; however, the reasons should be interpreted as being applicable to the Fourth Amended Complaint as well, as incorporated therein.

Plaintiffs have alleged that they were provided housing units by FEMA because "[t]he residence of each Named Plaintiff was rendered unhabitable following Hurricanes Katrina and/or Rita." (*Id.*, ¶ 124, 128). As a result of what Plaintiffs describe as "the greatest natural disaster in the history of the United States," each and every Plaintiff was essentially left "homeless." (*Id.*, ¶¶ 128, 171). Plaintiffs further allege that FEMA's provision of housing to these homeless "individuals and families displaced by hurricanes Katrina and Rita" created "a duty on the part of the Federal Government to insure that such housing was habitable in a safe and sanitary condition," and that the Government was under a duty to: "use due care and caution for the safety of the . . . occupants of the subject housing units"; "provide reasonably safe, functional and habitable housing units"; "ensure that the housing units . . . were free of defects"; and "warn . . . of any defects in the housing units." (*Id.*, ¶¶ 150, 162, 201-205).

Specifically, Plaintiffs allege that the Government was negligent in: "continuing to provide unreasonably dangerous housing units"; "failing to adequately warn . . . of the unreasonably dangerous nature of the housing units"; "failing to remedy the dangerous nature of the housing units"; "failing to timely implement adequate safety measures and procedures to address/remove the defects in the housing units"; and "continuing to house [Plaintiffs] in hazardous, unreasonably dangerous temporary housing units." (*Id.*, ¶ 209). They also assert that the Government was "grossly negligent, reckless, willful and/or wanton."[3] (*Id.*, ¶ 206).

---

[3]     Plaintiffs have also pleaded that the Government "knowingly and intentionally" suppressed and withheld information from the public and "knowingly and intentionally" allowed litigation concerns to take priority over an alleged safety mandate. (Rec. Doc. 4486,¶ 209). The Government notes the it has not waived its sovereign immunity for suits involving the intentional torts of Government employees. *See* 28 U.S.C. § 2680(h).

## III.    SUMMARY OF THE ARGUMENTS

The Government has filed the instant motion seeking the dismissal of all the remaining

FTCA claims brought by the "Mississippi Plaintiffs'[4] negligence based upon lack of

subject-matter jurisdiction. Noting that the FTCA requires the Government's liability to be

measured in accordance with the law of the state where the alleged act or omission occurred, the

Government contends that all remaining FTCA claims of these plaintiffs are limited by the

provisions set forth in Mississippi tort law. See 28 U.S.C. § 1346(b); *Cleveland ex rel. Cleveland*

*v. United States*, 457 F.3d 397, 403 (5th Cir. 2006)*; Alexander v. United States*, 605 F.2d 828,

832 (5th Cir. 1979) ("[L]iability under the FTCA is governed by state law."); see also *Richards*

*v. United States*, 369 U.S. 1, 9 (1962).  Any alleged negligent acts or omissions on the part of the

Government in these cases will have occurred within the State of Mississippi (where the

"Mississippi Plaintiffs'" EHU were located).

Further, the Government stresses that in assessing liability, the FTCA places the United

States on equal footing with private persons.[5] Thus, the Government asserts that its liability is

measured by referencing the state law liability of a private person under similar circumstances.

As a result, the Government claims that it is entitled to raise any and all defenses available to a

---

[4]     The Government defines "Mississippi Plaintiffs" as "claimants who resided in EHUs
provided to them by FEMA in the State Of Mississippi after Hurricane Katrina."  (Rec. Doc. 7690, p. 11).

[5]     The FTCA's limited waiver of sovereign immunity – in other words, its limited grant of
subject-matter jurisdiction – is expressly limited to "circumstances where the United States, if a private
person, would be liable to the claimant in accordance with the law of the place where the act or omission
occurred." 28 U.S.C. § 1346(b).  Whether a private individual in like circumstances could be subject to
liability is a question of sovereign immunity.  *See United States v. Olson*, 546 U.S. 43, 44 (2005).
Although the FTCA looks to state law to measure Government liability, whether there is analogous
private liability under similar circumstances remains a question of federal law.

private person under state law.

Here, the Government argues that, even if the Mississippi Plaintiffs could prove that the Government was negligent, there is no analogous tort liability against a "private individual under like circumstances" under Mississippi law. See 28 U.S.C. §§ 2674, 1346(b). The Government asserts that the State of Mississippi has sought to encourage the gratuitous provision of shelter to homeless disaster victims by promulgating Miss. Code § 33-15-21(b) of the "Mississippi Emergency Management Law ("MEML"). This section abrogates the potential tort liability of all private persons who, voluntarily and without compensation, allow their property or premises to be used as shelter in response to an emergency, such as a natural disaster:

> Any person owning or controlling real estate or other premises who voluntarily and without compensation grants a license or privilege, or otherwise permits the designation or use of the whole or any part or parts of such real estate or premises for the purpose of sheltering persons or providing assistance to persons during or in recovery from an actual, impending, mock or practice attack or any man-made, technological or natural disaster, together with his successors in interest, if any, shall not be civilly liable for negligently causing the death of, or injury to, any person on or about such real estate or premises by virtue of its use for emergency management purposes, or loss of, or damage to, the property of such person.

Miss. Code § 33-15-21(b)[6]. The Government argues that this law squarely applies to the facts of

---

[6]    The Court notes that section (a) of this law provides as follows:

> Neither the state nor any political subdivision thereof, nor other agencies, nor, *except in cases of willful misconduct*, the agents, employees, or representatives of any of them engaged in any emergency management activities, while complying with or attempting to comply with this article or any rule or regulation promulgated pursuant to the provisions of this article, shall be liable for the death of or any injury to persons, or damage to property, as a result of such activity. The provisions of this section shall not affect the right of any person to receive benefits to which he would otherwise be entitled under this article, or under the workmen's compensation law, or under any pension law, nor the right of any such

this case, barring all remaining FTCA claims (and all negligence claims in general) that stem

from the "of rent-free emergency shelters that were provided voluntarily. Specifically, the

Government asserts that it, through FEMA: (1) owned or controlled "real estate or other

premises"; (2) acted "voluntarily and without compensation"; (3) granted "a license or

privilege, or otherwise permit[ted] the designation or use" thereof; and (4) did so "for the

purpose of sheltering" or "providing assistance to persons during or in recovery from" a natural

disaster. *See* Miss. Code § 33-15-21(b). Thus, the Government argues that because there is no

analogous private liability under Mississippi state law, there is no subject-matter jurisdiction

under the FTCA.

 The Mississippi Plaintiffs, on the other hand, oppose the motion and argue that the Court

would arrive at an absurd outcome by strictly interpreting this limitation of liability statute in

consideration of the Government's effort to apply its protective language to FEMA under the

---

<div style="margin-left: 2em;">

person to receive any benefits or compensation under any act of congress.

</div>

Miss Code 33-15-21(a) (emphasis added). Section (a) deals with state actors, whereas section (b) deals with people (and entities) other than state actors. Importantly, Miss. Code § 33-15-21(b) seems to be broader than section (a). As opposed to limiting liability of state actors "*except in cases of willful misconduct*" as in section (a), section (b) seems to preclude *all* liability arising from a person's negligent, voluntary provision of free shelter during or in recovery from a natural disaster.

 Mississippi Plaintiffs make little-to-no effort to address this important issue. (See brief reference to limitation of liability to gross fault standard on pp. 2 and 8 of Rec. Doc. 9405). *On the showing made*, the Court agrees with the Government that the protection offered by Miss. Code § 33-15-21(b) is not limited to liability arising from simple negligence and does not contain a special exception for gross negligence or other misconduct, as is expressly included in the section applicable to state actors. The Court agrees that as the Mississippi legislature chose to qualify the immunity of state actors engaged in emergency management activities, it easily could have similarly qualified the immunity of private persons in Miss. Code § 33-15-21(b) if it had wished to do so. Thus, *on the showing made*, the Court finds that the immunity from civil liability conferred by Miss. Code § 33-15-21(b) is absolute. Further, section (b) is the applicable section as the Government must be afforded the same protections as a *private person under similar circumstances*.

"private person analogy" of the FTCA. The Mississippi Plaintiffs argue that no private person

doing or failing to do what FEMA did or failed to do in connection with this litigation could ever

be said to fall within the meaning and scope of this statute. They contend that the private person

to which the statute applies would have to act voluntarily and without compensation, would be

protected only as to personal injury claims occurring during an actual emergency, and would be

open to suit in his capacity as a property owner. Conversely, the Mississippi Plaintiffs assert that

here, FEMA did not act "voluntarily," did not proceed "without compensation," is not sued for

personal injuries occurring during the actual emergency of Hurricanes Katrina and Rita, and is

not sought to be held liable for conduct predicated upon the ownership of travel trailers.

Mississippi Plaintiffs argue that the objective of Miss. Code Ann. § 33-15-21(b) is not furthered

by limiting the liability of FEMA. In Plaintiffs' view, such a limitation would not encourage

"Good Samaritan" behavior. Indeed, the Mississippi Plaintiffs assert that FEMA's further

involvement in emergency response is required as a matter of law, and does not constitute

voluntary altruism. Essentially, the Mississippi Plaintiffs contend that imposing this limitation of

liability on their FTCA cases would be inconsistent with the requirement of the FTCA that

FEMA be held accountable in tort just as a private citizen would be held accountable under

similar circumstances.

## IV.    DISCUSSION

### A.    Standard of Review

The Government urges the dismissal of the Mississippi Plaintiffs' remaining FTCA

claims for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of

Civil Procedure, or in the alternative, requests the granting of summary judgment in its favor,

pursuant to Rule 56 of the Federal Rules of Civil Procedure. Because federal courts are inherently courts of limited jurisdiction, the Court begins with the presumption that a cause lies outside its limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Jurisdiction is of course a threshold issue, and a federal court is tasked with determining whether it has jurisdiction as soon as possible before reaching the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

"Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).[7] In a 12(b)(1) motion, the party asserting jurisdiction (here, the Mississippi Plaintiffs) bears the burden of proof that jurisdiction does in fact exist. *Id.* "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

The United States as a sovereign "is immune from suit save as it consents to be sued," and without such consent, a district court lacks subject matter jurisdiction over claims against it.

---

[7]     In certain instances, courts will convert motions to dismiss under Rule 12(b)(1) into motions for summary judgment under Rule 56 because resolution of the jurisdictional question is intertwined with the merits of the case and materials outside the pleadings have been submitted. See *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004). Here, the Court agrees with the Government that the jurisdictional question – whether Miss. Code § 33-15-21(b) would limit the potential tort liability of an analogous private person under similar circumstances – is not intertwined with a merits determination of whether the Government was negligent. Thus, here, the only issue for the Court to decide is whether this specific provision of Mississippi law would limit the liability of a private person under similar circumstances in light of the Mississippi Plaintiffs' allegations and the undisputed facts. Indeed, this question affects all the Mississippi Plaintiffs in the same manner and does not hinge on a case-by-case or individualized analysis, as many issues in this MDL have.

*United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).  In other words, the United States may not be sued without its consent under the doctrine of sovereign immunity. See *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). However, the FTCA provides that "the United States shall be liable, respecting the provision of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances. . .." 28 U.S.C. § 2674.  Similarly, the FTCA provides that courts may only exercise jurisdiction over:

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  The "law of the place where the act or omission occurred" "refers exclusively to state law." *Brown v. United States*, 653 F.2d 196, 201 (5th Cir. 1981); see *Leleux v. United States*, 178 F.3d 750, 759 (5th Cir. 1999). Hence, the FTCA measures governmental liability in accordance with the law of the state where the act or omission at issue occurred. See *Brown*, 653 F.2d at 201.

Whether a private person in "like circumstances" would be subject to liability is a question of sovereign immunity and, thus, is ultimately a question of federal law. See *Olson*, 546 U.S. at 44; see also *United States v. Mottaz*, 476 U.S. 834, 841 (1986). Therefore, if a private person under "like circumstances" would be shielded from liability pursuant to a state statute, the strict construction required by the Supreme Court dictates that lower courts decline to exercise subject-matter jurisdiction.

## B. Analysis

As part of the FTCA's private analogous liability requirement, numerous courts have determined that the Government is entitled to raise any and all defenses that would potentially be available to a private citizen or entity under state law. See *Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1998); *Banks v. United States*, 623 F. Supp. 2d 751, 752 (S.D. Miss. 2009) ("Where the FTCA applies, the United States can assert the same defenses available to private citizens . . . "); *Woods v. United States*, 909 F. Supp. 437, 442 (W.D. La 1995) (dismissing an FTCA action based upon the private landowner immunity afforded by Louisiana's recreational use statute). Indeed, the United States Supreme Court has explained that the Government's sovereign immunity is only waived "where local law would make a 'private person' liable in tort". *Olson*, 546 U.S. at 44. While the Court sees the meaning and purpose of Miss. Code § 33-15-21(b) to be unambiguous and clear on its face, if an interpretation is required, there is case law that interprets other sections of MEML, such as those pertaining to state liability, consistent with the interpretation of section 33-15-21(b), as advanced by the Government. For example, in *Young v. Mississippi State Port*, 06-966, 2007 WL 141906 (S.D. Miss. Jan 12, 2007), the court interpreted MEML sections 33-15-21(a)[8] and 33-15-5(c)[9] to shield state agencies from liability

---

[8]       MEML Section 33-15-21(a) provides:

> Neither the state nor any political subdivision thereof, nor other agencies, nor, except in cases of willful misconduct, the agents, employees, or representatives of any of them engaged in any emergency
> management activities, while complying with or attempting to comply with this article or any rule or regulation promulgated pursuant [thereto], shall be liable for the death of or any injury to persons, or damage to property, as a result of such activity.

[9]       MEML Section 33-15-5(c) provides:

for property damage resulting from their allegedly negligent preparation for and response to Hurricane Katrina. The *Young* Court noted that the state's "hurricane procedure, which Plaintiff describes as ill conceived, and the pre-storm and post-storm actions that the Plaintiff alleges was [sic] negligently executed, is precisely the 'emergency management' conduct the legislature intended to insulate from civil liability" through Mississippi Code Section 33-15-21. *Young*, 2007 WL 141906 at *2. See also *Lindsey v. Mississippi State Port*, et al., No. 06-656, 2006 U.S. Dist. Lexis 77872 (S.D. Miss. Oct. 23, 2006).

Through section 33-15-21(b), the State of Mississippi has abrogated the tort liability of private persons who, voluntarily and without compensation, allow their property or premises to be used as shelter in response to an emergency, such as a natural disaster.[10] See Miss. Code 33-15-21 (b). Here, the Mississippi Plaintiffs have alleged that the Government provided them with shelter because their residences were rendered uninhabitable and because they were left "homeless" as a result of Hurricanes Katrina and Rita. (Rec. Doc. 4486, ¶¶ 124, 128, 171). It is clear to this Court that Miss. Code § 33-15-21 (b) shields the Government from FTCA liability

---

"Emergency management" means the preparation for, the mitigation of, the response to, and the recovery from emergencies and disasters.

[10] While the Mississippi Plaintiffs argue that affording the Government the same protections given by section Miss. Code § 33-15-21(b) to private persons who provide shelter in response to emergencies would constitute "absurd consequences" (See Rec. Doc. 9405, p. 1), they ignore the FTCA's jurisdictional requirement as well as the Supreme Court's holding in *Olson* that there be analogous "private person" liability. See 546 U.S. at 44 (discussing 28 U.S.C. § 1346(b)). Plaintiffs' attempt to distinguish the Government from a private person who provides similar shelters to the ones at issue herein is clearly inapposite with the express statutory and jurisprudential guidelines. While the Court agrees that there are inherent differences between the Government and a private person, such as the collection of taxes and internal regulations, highlighting such distinctions ignores the express legal requirement that there be analogous "private person" liability. Moreover, the question of governmental immunity is of no moment to this Court's analysis. Indeed, the Supreme Court has instructed that the FTCA "requires a court to look to the state-law liability of private entities, not that of public entities, when assessing the Government's liability under the FTCA." *Olsen*, 546 U.S. at 46.

because a private person in like circumstances would be shielded from such by the MEML.[11] It seems clear to the Court that had a private person or entity provided thousands of emergency shelters to the victims of Hurricanes Katrina and Rita, Miss. Code § 33-15-21(b) plainly would preclude any negligence liability for injuries related to the occupants' use of these shelters. Thus, the Court finds that the Government, through FEMA, voluntarily provided FEMA-owned premises for use by disaster victims (including Mississippi Plaintiffs), at no cost, in connection with the real and ongoing exigencies created by Hurricanes Katrina and Rita.

**(1)     FEMA owned or controlled real estate or other premises, as required by Miss. Code § 33-15-21(b)**

It is undisputed in this case that the Government, through FEMA, provided emergency housing units to thousands of homeless disaster victims across the Gulf Coast (including Mississippi Plaintiffs) following Hurricanes Katrina and Rita. (Rec. Doc. 4486, ¶¶ 124, 128, 135, 171). FEMA sheltered displaced residents through the use of FEMA-owned "premises".[12]  The EHUs, which were intended and used for habitation, fall within the "other premises" designation.

As the Government notes, the occupancy agreements entered into between FEMA and the Mississippi Plaintiffs specifically refer to the EHUs as "premises" and "temporary shelter" required by an emergency.  (See Exhibits 5 and 6 to Rec. Doc. 7690).  Further, Mississippi state law provides that EHUs such as travel trailers are among the types of shelter to be used by the

---

[11]     The purpose of Miss. Code § 33-15-21(b) is to immunize those who provide free shelter in response to a disaster from negligence liability.  This provision seems to represent a public policy choice by the Mississippi legislature to encourage the provision of free shelter in the context of an emergency or natural disaster.

[12]     This Mississippi law contemplates both "real estate" and "other premises".  The Court finds that "other premises" describes a much broader category of property than what would be deemed "real estate."

state to house disaster victims, and that a "premises" means a "dwelling unit." *See* Miss. Code §

33-15-219 ("Description of temporary housing" under Mississippi's Individual Assistance and

Emergency Temporary Housing Assistance Act); § 89-8-7 (definition of "premises" from the

definitions Section of Mississippi's Residential Landlord and Tenant Act). Thus, the Court finds

that the EHUs at issue in this case squarely qualify as the type of "premises" contemplated by

the Mississippi Legislature in its enactment of Section 33-15-21(b).

> **(2)      FEMA Acted Voluntarily And Without Compensation, as required by Miss.
> Code § 33-15-21(b)**

Here, the Government, through FEMA, provided rent-free emergency housing to

otherwise homeless displaced residents after Hurricanes Katrina and Rita.[13] The Government

provided these EHUs for over 44 months, without receiving any form of compensation in return.

(See Exhibits 7 and 8 to Rec. Doc. 7690; see also Exhibit 16 to Rec. Doc. 6970, pp. 36-37

("these units are provided at absolutely no cost to the disaster victims . . . Nothing came out of

their pockets in terms of the requirements for this. They paid no out-of-pocket costs for this.")).

Thus, all Plaintiffs, including the movants of this motion, were allowed to use FEMA's property

as emergency shelters and FEMA received no direct monetary benefit.

Despite Plaintiffs' assertions to the contrary, the Government, through FEMA, was not

---

[13]      The Plaintiffs argue that the Government's provision of rent-free shelter was not in "like circumstances" with a private person who acts without compensation because the Government collects taxes. However, Plaintiffs concede that they, as recipients of Government-owned emergency shelters, did not pay any money for such assistance "in the direct, payment-to-FEMA sense." (Rec. Doc. 9405, p.3). David Garratt, FEMA Acting Deputy Administrator testified that EHU inhabitants "paid no out-of-pocket costs" to live in the EHUs. (Exhibit 16 to Rec. Doc. 6970, p. 37). While this country's taxpayers, potentially including the Mississippi Plaintiffs, helped fund some of the Government's general operations, the Court agrees that such funds are far too attenuated from the Government's provision of EHUs to be considered "compensation" pursuant to Miss Code. § 33-15-21(b). To be certain, there was no transactional *quid-pro-quo*, i.e., exchange of money for use of an EHU.

contractually obligated to provide this emergency shelter, nor was it compelled to act in this way.[14] In deciding to offer displaced residents rent-free EHUs, the Government acted on its own volition.[15]  Indeed, Plaintiffs have pointed to no law, mandate, contractual agreement, or other external provision that obligates the Government to provide free shelter to displaced residents.

As the Government notes, the Stafford Act and its related implementing regulations do not affirmatively require the provision of assistance. Further, the Stafford Act does not mandate if/when/how FEMA should provide housing assistance after disasters. For instance, 42 U.S.C. § 5174(c)(1)(B)(I) states that FEMA "*may* provide temporary housing units, acquired by purchase or lease, directly to individuals or households" (emphasis added)).  Essentially, while FEMA is permitted by statute to provide emergency housing assistance, a displaced resident does not have an automatic right or entitlement to receive this particular type of housing assistance from FEMA.

While it is true that the Government formed FEMA and set forth various implementing regulations that charge the agency with the responsibility of responding to emergencies, such inherently governmental provisions cannot then be interpreted to vitiate state law protections and

---

[14]     While Plaintiffs seem to recognize in their Complaint that under the Stafford Act the Government's actions are permissive in that FEMA "*may* provide 'direct assistance' in the form of temporary housing units"(Rec. Doc. 4486, ¶ 142, emphasis added), they argue in opposition to the instant motion that the Stafford Act compelled the Government to provide assistance in this case.

[15]     The Court finds it important to note that using these EHUs would not have been the Government's first choice.  FEMA claims that, initially, it intended to rely primarily on mobile homes wherein disaster victims could be re-located to mobile home cities set up throughout the affected areas. (Ex. 8 to Rec. Doc. 196, ¶6). However, for a myriad of reasons, state and local officials apparently objected to this plan, asserting that disaster victims should be placed in, or as close as possible to, their devastated communities to encourage and promote rebuilding and recovery efforts. (*Id.*). In an attempt to satisfy these objections, the Government, through FEMA, made the decision to rely primarily upon travel trailers and park models which, unlike mobile homes, could be placed in, or in close proximity to, the devastated communities. (*Id.*).

authorize suit where a private person would otherwise be shielded. Doing so would improperly place the Government "in a differently situated position than private parties . . . thereby undermining the conditions precedent to the United States' waiver of sovereign immunity in the FTCA." *Hill v. SmithKline*, 393 F.3d 111, 1118 (10th Cir. 2004). Plaintiffs' argument that a private person would never be expected to adhere to all of the policy objectives, regulations, and guidelines that they claim shaped the Government's provision of EHUs is not persuasive. This Court is tasked with looking past the inherent differences between the Government and a private person in order to find the most reasonable private person analogy. *LaBarge v. County of Mariposa*, 798 F.2d 364, 366-69 (9th Cir. 1986). The Fifth Circuit mentioned in *Ridgley v. FEMA*, 512 F.3d 727, 736 (5th Cir. 2008), that mandatory language is wholly absent from FEMA's implementing regulations that discuss the provision of assistance. The *Ridgley* Court discussed all of FEMA's implementing regulations, beyond just the rental assistance provision, and stated "[t]here is simply no indication that the regulations constrain FEMA's discretion to the point that it is bound to provide assistance to all eligible individuals").[16]

Further, to address Plaintiffs' assertions that they had a vested property interest in

---

[16]     While Plaintiffs rely upon *McWaters v. FEMA*, 436 F.Supp. 802 (E.D. La. 2006), for the proposition that FEMA is compelled to render housing assistance under the Stafford Act, this Court first notes it is not bound by another district court decision. Further, the language in *McWaters* on this issue is significantly weakened by the Fifth Circuit's decision in *Ridgley*, which was rendered two years after the *McWaters* opinion. Indeed, this Court has previously stated, "[A]s for the applicability of the *McWaters* case to the scenario before this Court, it should be noted that the Fifth Circuit recently held that the Stafford Act, and its accompanying regulations governing the Individual Assistance housing program, even for persons who qualify for housing assistance, does not, in and of itself, create an entitlement to housing assistance." *In re: FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488 (E.D. La. 2008) (citing *Ridgley*, 512 F.3d at 734-45. Further, *McWaters* did not deal with the Government's provision of emergency housing units. *McWaters* dealt specifically with the continuation and administration of certain programs already set in place. *Id.* at 236. This Court agrees that even if the Government had established a pattern or practice of providing emergency shelter to certain qualified individuals, this does not make its decision to initially provide shelter any less voluntary.

FEMA-provided assistance, the Court finds additional support in a recent opinion which dealt specifically with EHUs and confirmed that "[b]ecause of its institutional discretion, FEMA's emergency housing assistance does not create an entitlement in the plaintiff to a property interest in that assistance." *Johnson v. FEMA*, 2009 WL 1208639, at *1 (E.D. La. May 1, 2009) (Feldman, J.) (denying a plaintiff's request for an injunction to stay in his Government-provided emergency shelter). Also, following Hurricane Andrew, the Court stated in *Lockett v. FEMA*, 836 F.Supp. 847, 854 (S.D. Fla. 1993), that the Stafford Act "clearly shows that assistance is discretionary, not mandatory".

Based on the above, the Court agrees with the Government that when FEMA chose to provide emergency shelter to displaced residents following Hurricanes Katrina and Rita, it acted of its own volition. Even if the Government undertook the task of assisting the public in an emergency (and had an agency to do so), that fact does not make its decision to undertake that task mandatory, or in other words, non-voluntary. Further, even if it could be said that the Government was obligated to provide this assistance, the Government imposed such an obligation to provide assistance on itself, thereby rendering the obligation as one that was voluntarily undertaken by the Government.

### (3) FEMA granted a "license or privilege" or otherwise permitted "the designation or use" of the premises, as required by Miss. Code § 33-15-21(b)

First, the Mississippi Plaintiffs do not appear to dispute that this element of the statute is satisfied. Indeed, Miss. Code §33-15-21(b) immunizes an owner or controller of the premises who grants a license, privilege, or other permission for a disaster victim to have used such premises. Here, it is undisputed in this case that the Government, through FEMA, allowed thousands of homeless displaced residents (including Mississippi Plaintiffs) to use FEMA-owned

EHUs in direct response to Hurricanes Katrina and Rita. (See Rec. Doc. 4486, ¶¶ 124, 135, 150). Indeed, Plaintiffs assert that their usage or occupancy of these same EHUs caused certain injuries. (See Rec. Doc. 4486, ¶¶ 179, 207).

**(4)    FEMA acted "for the purpose of sheltering persons or providing assistance" to them "during or in recovery from" a "natural disaster", as required by Miss. Code § 33-15-21(b)**

The provisions of Miss. Code 33-15-21(b) apply to acts taken "for the purpose of sheltering persons or providing assistance"  "during or in recovery from" a "natural disaster." Here, Plaintiffs allege that they were provided EHUs after what they describe as "the greatest natural disaster in the history of the United States." (Rec. Doc. 4486, ¶¶ 128, 171).  As the Government notes, the MEML defines "disaster" as an emergency "that causes damage of sufficient severity and magnitude to result in a declaration of an emergency by a county or municipality, the Governor or the President of the United States." Miss. Code § 33-15-5(m). On August 27, 2005, the Governor of Mississippi requested that the President declare a State of Emergency in Mississippi as a result of Hurricane Katrina, noting that he had issued a State of Emergency for the entire state and had determined that the damage caused by Hurricane Katrina was "of such severity and magnitude that effective response [was] beyond the capabilities of the State and affected local governments, and that supplementary Federal assistance [was] necessary" for the health and safety of residents of Mississippi.(Exhibit 9 to Rec. Doc. 7690). Further, on August 29, 2005, the President, through FEMA, declared Hurricane Katrina a major disaster in Mississippi, authorizing FEMA to provide federal assistance to the state and its individuals under the Stafford Act and its implementing regulations. (Exhibit 10 to Rec. Doc. 7690).

In this case, Plaintiffs assert that they were provided EHUs because "[t]he residence of each Named Plaintiff was rendered unhabitable following Hurricanes Katrina and/or Rita" and each Plaintiff was left "homeless." (Rec, Doc. 4486, ¶¶ 128, 171). The emergency conditions of Hurricane Katrina, and its resulting housing shortage, continued to exist long after the Hurricane made landfall. For instance, in the winter of 2007, the Governor of Mississippi requested that FEMA extend its temporary housing assistance program for an additional year, to the winter of 2008. (Exhibit 11 to Rec. Doc. 7690). Indeed, as of the spring of 2008, over 2,000 households remained in FEMA-provided EHUs in Mississippi, and FEMA's temporary emergency housing program did not end in Mississippi until the spring of 2009. (Exhibits 7, 12, and 13 of Rec. Doc. 7690). Thus, the Court concludes that the EHUs[17] at issue in this Motion were provided to the Mississippi Plaintiffs by FEMA "during or in recovery from" Hurricane Katrina, a natural disaster, and according to many, including Plaintiffs, "the greatest natural disaster in the History of the United States." (Rec. Doc. 4486, ¶ 171).

## V.      CONCLUSION

Thus, for all the reasons stated herein, because Miss. Code § 33-15-21(b) would apply to a private person under similar circumstances, the Government is shielded from all remaining FTCA liability. Accordingly,

**IT IS ORDERED** that **Defendant United States' Motion to Dismiss the Remaining FTCA Claims of All "Mississippi Plaintiffs" for Lack of Subject-Matter Jurisdiction Based Upon No Analogous Private Liability (Rec. Doc. 7690)** is **GRANTED**. Thus, all of

---

[17]       It is appropriate to note that this term has been used throughout this MDL, even by Plaintiffs, and is an acronym for "*emergency* housing unit".

Mississippi Plaintiffs' FTCA claims are dismissed for lack of subject matter jurisdiction.

New Orleans, Louisiana, this 23rd day of <u>June</u>, 2010.

_____
**KURT D. ENGELHARDT**
**United States District Court**