UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 SECTION: N(5) |
| This Document Relates to: *Lyndon T. Wright v. Forest River, Inc., et al*, Docket No. 09-2977 | | * * * | JUDGE ENGELHARDT MAG: CHASEZ |

*************************************************************************

## FOREST RIVER, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF COSTS RELATED TO PLAINTIFF'S MOLD CLAIM

**MAY IT PLEASE THE COURT:**

Defendant Forest River Inc. ("Forest River") submits this memorandum in support of its Motion for an Award of Costs related to plaintiff's mold claim. As the Court noted in its Order regarding defendants' Motion for Summary Judgment regarding causation, defendants are owed the cost of all expert fees related to mold testing and analysis, as well as the fees for the expert reports that were generated based on such testing and analysis. *See* Rec. Doc. 12049 at 2. Forest River submits the instant motion to fix those costs.

**BACKGROUND**

Bellwether plaintiff Lyndon Wright originally filed suit in March of 2009; on April 6, 2009, the Court entered Pre-Trial Order No. 34, confirming Wright as Forest River's first trial plaintiff. Rec. Doc. No. 1299. Because plaintiff had already conducted formaldehyde air sampling in 2008, defendants opposed any additional testing of the unit; on June 18, 2009, defendants filed a Motion for Protective Order to prohibit the retesting of the trailer occupied by Mr. Wright. Rec. Doc. 1805; Rec. Doc. 1817. That Motion requested, in part, that the Court preclude any mold testing because plaintiff's mold claims had "not been properly alleged in this case." Rec. Doc. 1805 at 11 & n. 12. On June 30, 2009, the Court ruled that mold testing of the Wright unit would not be allowed. Rec. Doc. 2009 at 2.

On July 2, 2009, plaintiff filed a Motion for Reconsideration arguing that "[t]he prohibition of mold testing will exclude a very large and important piece of evidence essential to Plaintiff's case." Rec. Doc. 2042-1 at para. 5. On July 13, 2009, the Court denied Plaintiff's Motion for Reconsideration, referencing its July 6, 2009 Order and Reasons wherein it ruled on a separate request addressing mold that:

> Plaintiffs have confirmed that they are not alleging claims relating to the impact of mold on their health . . . . The Court will consider giving an instruction to the jury that Plaintiffs do not allege and cannot recover for the impact of the presence of mold on their health. It should be noted that the substance of this guidance shall also apply to the Court's June 30, 2009 Order and Reasons (Rec. Doc. 2009), wherein it stated that "[n]o mold testing shall be permitted.

Rec. Doc. 2149, referencing Rec. Doc. 2062. The Court further explained that "at this late date, the Court will not permit Wright to conduct mold testing to allegedly support his recently-made claims that mold contributed to his injuries." Rec. Doc. 2149 at 3.

Despite this ruling, plaintiff elected to file a Motion for Leave to file a First Supplemental and Amending Complaint on July 13, 2009. This Complaint alleged that plaintiff's injuries were caused in part by exposure to mold in the travel trailer. Rec. Doc. 2128. On July 17, 2009, the Court held a conference to address the additional mold exposure claims in the amended Complaint. Rec. Doc. 2201. In the conference, the Court explained:

> The MDL was designed to handle common allegations from several districts relative to formaldehyde exposure. . .this is the first and only case where mold exposure has been a component claim for compensation. . .I am very concerned about injecting an entirely new claim for injury based on mold exposure . . . I don't think that result tells us anything about how the MDL can be resolved.

July 17, 2009, Hearing Transcript at 4:10-5:3, Rec. Doc. 2625-1; *see also id.* at 15:16-23 ("I'm surprised that this hasn't come up before" that plaintiff "has in addition to [his formaldehyde claim] a mold exposure claim. I don't understand how this could have come up so late."). Counsel for the United States noted that the mold exposure claim and related testing would simply constitute a waste of time and money:

> Mr. Miller: Judge, even if the plaintiff from the very beginning had been asking for damages that were mold related, we still would have opposed mold testing at this point in time because what is the point of hiring a bunch of mold experts to go out to a trailer that's been sitting out in a field in Louisiana through the winter, summer, all seasons for 18 months? God knows what kind of mold is growing in that thing. I mean, no useful data is going to come out of that expenditure of money on mold testing at this point in time.
> * * *
> The Court: Well, you might be right about that and that sounds like the subject of a Daubert motion. It may well be that a test at this point in time is pretty meaningless seems to me, and that's the subject of a Daubert motion and that will be the subject of the merits of it, not admissibility.

July 17, 2009, Hearing Transcript at 22:6-22, Rec. Doc. 2625-1.

The Court further explained that:

> The Court: You've made an allegation about mold, I hope under Rule 12 you've got some basis to make that allegation. You should already have a lot of information on that. You're asking me to allow this amended complaint, I hope you've already done your homework to a large degree.
>
> Mr. D'Amico: We have, Judge.

*Id.* at 36:20-25.

Finally, the Court noted that, should the mold claim lack the appropriate support, plaintiff's counsel must immediately abandon that claim. *Id*. at 48:21-24.

> The Court: . . . And I have the same concern about expanding beyond formaldehyde, my responsibility was to try to handle in a multidistrict fashion complaints about formaldehyde exposure. The problem with not handling the mold at this point that in order to hopefully achieve a resolution of all of these cases I've got to be able to pick up that piece to the extent that it is not unique to this plaintiff alone but that it may be a common component to a larger group of plaintiffs.
>
> Mr. D'Amico: And, Judge, I would say that that's the point if I felt that was an oddball case and it was one of a rarity I would not be proposing that we go forward with this case. I would say, look, we have an anomaly, let's kick him out. All of our statistical analysis and what CDC showed, just like you did in this selection process, one is going to be a mold case and that's what we found.
>
> The Court: Frank, all I can tell you, cautionary word, if you do not have an expert who can help you with your burden of proof, I would expect you to abandon the claim with regard to mold exposure.
>
> Mr. D'Amico: Absolutely. And the only reason I am addressing, if you look at the attachment from FEMA about important information about formaldehyde residents, they warn that other pollutants, mold and smoke
>
> The Court: All of that is well and good, but you need testimony to meet your burden of proof that this man . . . That this plaintiff suffered an injury as a result of not just any mold but mold that was present in his unit while he lived in it and not mold from any other source. So you better be prepared to meet that burden. And if you can't, I would expect you to abandon the claim, sooner rather than later.
>
> Mr. D'Amico: Absolutely, Judge.

*Id*. at 48-49:14-12, Rec. Doc. 2625-1.

After the conference, the Court issued an Order granting Plaintiff leave to amend his Complaint to add the claim for mold-related injuries. Rec. Doc. 2201.

Following the Court's ruling, Forest River requested several of its experts to address the newly pled mold claim. Specifically, Forest River's industrial hygienist Tony Watson assembled a team from Workplace Hygiene to sample and test the mold inside the trailer during the August 2009 testing in Melville, Louisiana. *See* Ex. A, Affidavit of Tony Watson. Watson included the test results in his November 2, 2009 expert report in this case. Another industrial hygienist with Workplace Hygiene, Dr. Bill Dyson, analyzed the test results and provided commentary on fungal speciation and related heath effects in the expert report he furnished in this case. *See* Ex. B, Affidavit of Dr. Bill Dyson. Finally, two of the medical experts retained by Forest River, pulmonologist Dr. Kenneth Smith and immunologist Dr. James Wedner, provided additional commentary on the connection, or lack thereof, between Wright's alleged health conditions and the mold exposure he allegedly experienced while living in the trailer. *See* Exs. C & D, Affidavit of Dr. James Wedner and Affidavit of Dr. Kenneth Smith. As detailed below, each of these experts spent considerable time examining Wright's mold claim, and the fees related to this work should be assessed against plaintiff.

## LAW AND ARGUMENT

Federal courts possess the inherent power to assess attorney's fees and litigation costs when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Batson v. Neal Spelce Associates, Inc.*, 805 F.2d 546 (5th Cir.1986). Further, under Rule 54(d) of the Federal

Rules of Civil Procedure, costs should be allowed to the prevailing party. *See* Fed. Rule Civ. Proc. 54(d). Indeed, the Fifth Circuit has held that a prevailing party is prima facie entitled to costs. *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985); *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006). Only when a clear abuse of discretion is shown can an award of cost be overturned. *See Pacheco*, 448 F.3d at 793 (*citing Kinnear-Weed Corp. v. Humble Oil and Refining Co.*, 441 F.2d 631, 637 (5th Cir. 1971)).

Moreover, the Court has already awarded costs in the *Alexander* suit, a prior bellwether case in the FEMA Trailer Formaldehyde Products Liability Litigation. In *Alexander*, the Court acknowledged that the litigation was "expensive" but nevertheless awarded costs of $75,207.84 and $116,543.07 to Gulf Stream and Fluor, respectively. Rec. Doc. 13323, p. 2  The Court went on to explain that it would not "relieve any non-prevailing party in this litigation of the responsibility to pay costs after trial." *Id*.

Here, the parties spent considerable time and effort in motion practice leading up to trial. Of particular importance to the instant motion is defendants' Motion for Summary Judgment regarding causation. In that motion, Forest River and Shaw pointed out that plaintiff offered **no** expert testimony – either general or specific – to support his contention that mold in the trailer caused any health problems. *See generally* Rec. Doc. 10933, incorporated herein *in extenso.* For instance, Dr. Williams, plaintiff's general causation expert, only offered the following opinion with respect to mold: An association exists between mold exposure and nonallergic rhinitis. *Id.* at p. 11. Dr. Williams expressly acknowledged that this "association" did not constitute a cause-effect relationship. *Id.* at 12. Dr. Miller, another of plaintiff's medical experts, could not point to any

literature to support a causal link between mold exposure and Wright's respiratory symptoms. He testified:

> Q   All right.  Let's talk a little bit about the October 2nd report.  On Page 6 of the report, just above the paragraph wherein you list the complaints that Mr. Wright had, you state that "Mr. Wright was likely exposed to various fungal species while living in the trailer.  Exposure to fungi is associated with exacerbations of upper and lower airways disease, but limitations in the literature do not warrant a causal association."
>      Can you tell me what you meant by that, Doctor?
> A   Well, very simply, that he was likely exposed to fungi.  Now, we know what the fungi were, you know, a year and some time after he left the trailer.  We can't know with certainty what they were prior to. And there certainly is -- There's no question about a literature existing on fungal toxins' effects on the respiratory tract.
>      **But in my understanding, that literature is not definitive at this point. There's a big literature.  It's not exactly clear what does what yet, so that's why I was hesitant to draw any conclusions at that point.**
>
> Q   Okay.  When you say it does "not warrant a causal association," is what you're saying that if you were called upon to testify, your testimony would be that more probably than not there was no causal association between exposure to fungi in Mr. Wright's case and any of the symptoms he's complaining of?
> A   I wouldn't put it that way.  I would say based on limitations in the

> literature, we can't comment one way or the other.
> **Q  Okay. You cannot say more probably than not that fungi caused any of the problems that Mr. Wright is complaining of?**
> A  Right.

*Id.* at p. 17-18 (emphasis added).

Like Dr. Williams, Dr. Miller could not offer any expert testimony to support the contention that mold exposure caused any of Mr. Wright's alleged health problems. Again, plaintiff's counsel could and should have performed an appropriate inquiry into the viability of his mold claims **prior** to amending his complaint and causing all parties to expend the time, money and resources testing the trailer and assembling expert reports.

In his Opposition to the Motion for Summary Judgment on causation, plaintiff never even addressed defendants' arguments related to the mold claim, impliedly conceding that this claim was without merit. Although the Court ultimately denied defendants' Motion for Summary Judgment with respect to plaintiff's formaldehyde exposure claims, the Court did grant the Motion regarding plaintiff's mold claim. The Court noted:

> [A] significant portion of Defendants' motion was spent arguing that all claims for damages arising from Plaintiff's alleged most exposure in the EHU must be dismissed due to a lack of causation testimony. (See Rec. Doc. 10933, pp. 16-19). As Defendants note in their Reply, Plaintiff failed to address this issue in his 18-page Opposition. Indeed, the word "mold" does not appear anywhere therein. Finding Defendants' unopposed arguments in this regard to have merit, the Court grants this motion. **Further, based on Plaintiff's vigorous argument, which he ultimately won, to have mold exposure claims added to this bellwether trial and Defendants' adamant arguments to the contrary, including those relating to the increased cost of litigation expenses relating thereto, the Court finds it appropriate to award Defendants the cost of all expert fees related to mold testing and analysis, as well as the fees for the expert reports that were generated based on such testing and analysis**.

Rec. Doc. 12049 at 2 (emphasis added).

Forest River now seeks those costs described by the Court in the above referenced Order. As noted above, four of Forest River's experts devoted particular attention to the question of plaintiff's mold exposure arising out of his time in the trailer. Tony Watson conducted on-site sampling, and both he and Dr. Bill Dyson analyzed the results of that mold sampling in their respective expert reports. *See* Exs. A & B. Dr. James Wedner also devoted a significant amount of his expert report examining the question of Wright's alleged mold exposure while in the Forest River travel trailer. *See* Ex. C. Dr. Kenneth Smith provided commentary on the causal link between mold and asthma/respiratory conditions in his report. *See* Ex. D. The attached Affidavits for each of these experts outline the cost breakdown for mold sampling, testing, and analysis in expert reports. Tony Watson billed $12,002.17, Dr .Dyson $450, Dr. Wedner $1500, and Dr. Smith $900. These amounts total $14,852.17, and Forest River seeks that sum as compensation for expert fees related to mold testing, analysis and expert reports.

## **CONCLUSION**

For the foregoing reasons, Forest River, Inc. respectfully requests, in connection with the Court's Order (Rec. Doc. 12049), that the Court award $14,852.17 in costs related to plaintiff's mold claims.

Respectfully submitted,

/s/ Carson W. Strickland
ERNEST P. GIEGER, JR. (Bar Roll No. 6154)
JASON D. BONE (Bar Roll No. 28315)
CARSON W. STRICKLAND (Bar Roll No. 31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

# C E R T I F I C A T E

I hereby certify that on the 25th day of June, 2010, a copy of the foregoing Memorandum in Support was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail.

/s/ Carson W. Strickland
CARSON W. STRICKLAND