UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION N-5<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO:

*Lyndon Wright v. Forest River, et al.*, No. 09-2977 (E.D. LA)

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**UNITED STATES OF AMERICA'S REPLY MEMORANDUM IN
SUPPORT OF ITS "MOTION FOR REVIEW OF TAXATION OF COSTS"
(Rec. Doc. 14319)**

**INTRODUCTION**

Defendant United States of America ("United States") hereby submits this Reply Memorandum in support of its Motion for Review of Taxation of Costs, to respond to arguments made by Plaintiff Lyndon Wright, in his Response in Opposition to the United States' Motion (Rec. Doc. 14438) ("PSC Opp."). Plaintiff's arguments lack merit because: (1) the United States is a prevailing party under Fed. R. Civ. P. 54 and as such is presumptively entitled to recover costs; (2) the United States' request is supported by applicable law and the record in this case; and (3) no special factors counsel against granting the costs the United States seeks. In addition to the arguments contained herein, the United States directs the Court to the arguments made in its Memoranda supporting its initial Motion for an Award of Costs, Rec. Docs. 11936-1, 13098-3, and its opening Memorandum supporting the instant Motion, Rec. Doc. 14319-1, and incorporates them herein by reference.

# ARGUMENT

**1. The United States is a Prevailing Party Under Fed. R. Civ. P. 54 and as Such is Presumptively Entitled to Recover its Costs in this Action.**

In his Opposition, Plaintiff argues that the United States is not entitled to prevailing party status under Rule 54, because it was dismissed for lack of subject matter jurisdiction, as opposed to prevailing on the merits of the case. PSC Opp. at 2-3. Plaintiff further contends that the Fifth Circuit has not addressed the question of whether a party that was dismissed with prejudice is a prevailing party for purposes of Rule 54. *Id.* Plaintiff is mistaken in both respects.

The Fifth Circuit has held that a defendant in a case that was dismissed with prejudice is considered a prevailing party under Rule 54. *See Schwarz v. Folloder*, 767 F.2d 125, 130-131 (5th Cir. 1985) ("a dismissal with prejudice gives the defendant the full relief to which he is legally entitled and is tantamount to a judgment on the merits" [for purposes of Rule 54]); *Pacheco v. Mineta, et al.*, 448 F.3d 783, 795 n.19 (5th Cir. 2006) ("A dismissal with prejudice is tantamount to a judgment on the merits and thus the prevailing party is entitled to costs."), *citing Schwarz*, 767 F.2d at 130-131. This is because the "decision to award costs turns on whether a party, as a practical matter, has prevailed." *Schwarz*, 767 F.2d at 130, *citing Anthony v. Marion County General Hosp.*, 617 F.2d 1164, 1169-70 (5th Cir. 1980) ("Although there has not been an adjudication on the merits in the sense of a weighing of facts, there remains the fact that a dismissal with prejudice is deemed an adjudication on the merits for the purposes of *res judicata*. As such, the [defendant] has clearly prevailed in this litigation."). Further, the Fifth Circuit has held that it is proper to award costs, pursuant to Rule 54, to a party that was dismissed for lack of subject matter jurisdiction. *See Porter v. Keesner*, No. 00-31396, 268 F.3d 1064 (5th Cir. 2001), 2001 WL 878061; *see also* 28 U.S.C. § 1919 (the Court "may order the payment of just costs"

2

when "any action or suit is dismissed . . . for want of jurisdiction."). This authority was cited in the United States' Memorandum in Support of its initial Motion for an Award of Costs (Rec. Doc. 11936-1 at 2-3), and was not contested by Plaintiff in his Opposition thereto. *See* Rec. Doc. 12963 at 2-3.[1]

Moreover, the United States' prevailing party status already has been confirmed by the Clerk, who entered a Bill of Costs against Plaintiff and in favor of the United States, which Plaintiff failed to challenge within the time allotted by statute. Fed. R. Civ. P. 54(d)(1) ("On motion served within the next 7 days [after a cost award is entered], the court may review the clerk's action."). Accordingly, Plaintiff has waived his right to challenge the United States' prevailing party status and the Clerk's Bill of Costs of $24,395.20 (Rec. Doc. 14271). *See Johnson v. Mortham*, 173 F.R.D. 313, 316 (N.D. Fla. 1997) (generally, party who fails to timely challenge clerk's cost award waives its objections to the award), *citing* 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 54.100[3] (3d ed. 1997). Instead, the only issue before the Court is whether the United States is entitled to a greater amount of costs than that contained in the Clerk's award. For the reasons stated herein and in previous Memoranda on this issue (*see*

---

[1] The district court cases cited by Plaintiff are inapposite. *See* PSC Opp. at 3. Two of the cases simply noted that the Fifth Circuit had yet to decide whether a defendant in a case that was dismissed *without prejudice* was a prevailing party under Rule 54. *Herman v. Pronto Courier Serv.*, *et al.*, 1999 WL 325439, at *1 (N.D. Tex. May 10, 1999); *Dupree v. 1461 Port Arthur*, 2005 U.S. Dist. LEXIS 8048 (E.D. La. Apr. 25 2005); *Lichtenheld v. Juniper Features, Ltd.*, 1996 WL 685443 at *2 (N.D. Ill. Nov. 21, 1996). Further, in *Herman*, the Court awarded costs even where the case was dismissed without prejudice because it was "highly unlikely" that the plaintiff would re-file her suit, relying Fifth Circuit precedent for the proposition that prevailing party status is to be determined by the practical effect of the disposition of a case on the claims of the parties. 1999 WL 325439 at *1-*2. Plaintiff's remaining case simply notes that a defendant dismissed on purely procedural grounds is not considered a prevailing party under Rule 54. *Kerner v. Cult Awareness Network*, 843 F. Supp. 748, 749-50 (D.D.C. 1994). However, Plaintiff concedes that lack of subject matter jurisdiction, the basis for the United States' dismissal in this case, "involves . . . substantive legal issues." PSC Opp. at 3. Thus, the authority cited by Plaintiff, while not contrary to the United States' position, is irrelevant to this case.

Rec. Docs. 11936-1, 13098-3, 14319-1), that amount should be $154,468.15, which includes the Clerk's award of $24,395.20, and the costs the United States incurred to defend against Plaintiff's mold claim, which total $130,072.95.[2]

**2. The United States' Request is Supported by Applicable Law and the Record in this Case.**

In his Opposition, Plaintiff argues that Dr. Kelman's fees are not recoverable because they exceed the statutory amounts.[3] Plaintiff acknowledges that a court, pursuant to its inherent authority and so long the award is not forbidden by Congress, may award expert witness fees in excess of the statutory amounts when a party has willfully disobeyed a court order, or has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See* PSC Opp. at 6 (citing cases); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) (citing cases); *United States ex rel. Wallace v. Flintco, Inc.*, 143 F.3d 955, 972-73 & n.14 (5th Cir. 1998); *see also* 28 U.S.C. § 1927 (attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 332-333 (5th Cir. 1995) (expert fees in excess of statutory amounts may be awarded in certain circumstances under discovery rule). Nevertheless, Plaintiff argues that

---

[2] These amounts do not include a "sitting" fee for Dr. Kelman's deposition, which Plaintiff accurately notes already has been paid. PSC Opp. at 5.

[3] As noted in the United States' initial Motion for an Award of Costs, generally, the rules governing the amount of costs a prevailing party may recover for witness expenses are set forth in 28 U.S.C. § 1920 and 28 U.S.C. § 1821. Rec. Doc. 11936-1 at 3-5. To the extent Plaintiff argues, PSC Opp. at 6, that prevailing parties may not recover costs for expert witnesses that are not court-appointed, citing 28 U.S.C. § 1920(6) ("Compensation of court appointed experts"), the United States simply notes that its request is not being made pursuant to § 1920(6), but rather pursuant to §§ 1920(3), 1821, applicable caselaw, and the record in this case. *See*, *e.g.*, Rec. Doc. 11936-1 at 3-6. Thus, Plaintiff's argument in this regard is irrelevant.

such an award is not warranted here because he brought his mold claim in good faith and because his Counsel used "their best professional judgment" in pursuing his case. PSC Opp. at 6-7.

      As an initial matter, the losing party's good faith in bringing a claim is not a compelling reason for declining to award costs to the prevailing party in the event that claim is unsuccessful. *See Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 429 (5th Cir. 2000); *Brown v. Wilson County*, No. 02-50810, 2003 WL 1524563, *1 (5th Cir. 2003) (district court erred in refusing to award costs based upon a finding that the plaintiffs' action was not frivolous). More importantly, in this case, the relevant issue is not whether Plaintiff brought his mold claim in good faith, but rather why he ***failed to drop*** his claim, pursuant to the Court's instruction and the understanding of the parties, as soon as he realized the claim lacked merit. *See* Rec. Doc. 14319-1 at 4-10; July 17, 2009, Hearing Transcript at 4:10-5:3; 15:16-23; 22:6-22; 36:20-25; 48-49:6-13 (Rec. Doc. 2625-1). Plaintiff ultimately succeeded in adding his mold claim to the litigation, despite previous failed attempts to do so (*see* Rec. Docs. 2009, 2149, 2062), based on his Counsel's representation that he had a good faith basis to bring the claim, that the claim would relate to other cases in the MDL, and that he would promptly abandon the claim in the event he could not meet his burden of proof. *See* Rec. Doc. 2625-1 at 36:20-25; 48-49:6-13 (Court cautioning Counsel to abandon mold claim "sooner rather than later" if he did not have an expert to assist with his burden of proof, and Counsel agreeing to do so).

      In his Opposition, Plaintiff states that his Counsel did not "overlook[ ] the Court's instructions regarding burden of proof," *see* PSC Opp. at 7, which begs the obvious question, why then did Counsel fail to follow those instructions? The mold claim was added to the litigation on July 17, 2009, and was never abandoned by Plaintiff's Counsel. Yet, Counsel must

have known at some point thereafter that he could not sustain the burden of proof on that claim, since he did not contest its dismissal upon the February 1, 2010 private Defendants' summary judgment Motion (Rec. Docs. 10933, 11546).  On this point, Plaintiff's Opposition to the instant Motion is notably silent, especially in light of the Court's March 2, 2010 Order and Reasons granting the private Defendants' summary judgment Motion on the mold claim, where the Court, consistent with its previous instruction to PSC, ruled that Defendants are entitled to the costs of all expert fees related to mold testing and analysis.  Rec. Doc. 12049.  As the Court explained:

> [A] significant portion of Defendant's motion was spent arguing that all claims for damages arising from Plaintiff's alleged mold exposure in the EHU must be dismissed due to a lack of causation testimony. (See Rec. Doc. 10933, pp. 16-19).  As Defendants note in their Reply, Plaintiff failed to address this issue in his 18-page Opposition.  Indeed, the word "mold" does not appear anywhere therein.  Finding Defendants' unopposed arguments in this regard to have merit, this Court grants this motion. ***Further, based on Plaintiff's vigorous argument, which he ultimately won, to have mold exposure claims added to this bellwether trial and Defendants' adamant arguments to the contrary, including those relating to the increased cost of litigation expenses relating thereto, the Court finds it appropriate to award Defendants the cost of all expert fees related to mold testing and analysis, as well as the fees for the expert reports that were generated based on such testing and analysis***.

*Id.* at 2 (emphasis added).

    Through this Motion, the United States simply requests the same relief that was awarded to the private Defendants in this case.  As previously noted, *see* Rec. Doc. 14319-1 at 10, the United States in fact incurred the majority of the Defendants' expenses related to the investigation of Plaintiff's mold claim because, due to its past experience with mold-related issues, the United States hired Dr. Kelman to assess that claim on behalf of all Defendants.  Even though the United States was eventually dismissed from this case for lack of subject matter jurisdiction, prior to trial, that dismissal was entered less than two-weeks before the close of

discovery and thus, the United States was required to expend substantial resources to defend against Plaintiff's mold claim prior to its dismissal. *See* Rec. Doc. 11936-5 (Kelman invoices). This included expenses related to Plaintiff's mold testing of the trailer (over and above the formaldehyde testing that was previously done), and the generation of an expert report on the subject of mold. *See id.* Because Plaintiff's Counsel failed to comply with the Court's instruction and promptly abandon the mold claim upon discovering that it lacked merit, this case presents a special circumstance where the government's expert witness costs associated with defending against the mold allegations should be awarded to the United States. *See Alyeska*, 451 U.S. at 258-259; *Cambridge Toxicology Group, Inc., v. Val Exnicios*, 495 F.3d 169, 180-181 (5th Cir. 2007) (attorney who continued to file pleadings despite repeated denials of leave to amend and court instructions was required to pay costs and fees pursuant to 28 U.S.C. § 1927).

3.  **No Special Factors Weigh Against the Cost Award the United States Seeks.**

In his Opposition, Plaintiff argues, by reference to the law of other Circuits, that special factors counsel against awarding the costs the United States seeks, including: (1) the relative wealth of the parties; (2) the closeness and complexity of the legal issues of the case; and (3) the benefit conferred to the public by Plaintiff's suit. PSC Opp. at 3-4.[4] However, none of these factors should prevent the Court from awarding the costs the United States seeks. *First*, the authority relied upon by Plaintiff, *see* PSC Opp. at 4, does not support his argument that this Court should decline to award costs to the United States because of the relative wealth of the

---

[4] Plaintiff also notes that misconduct by the prevailing party, and the good faith of the losing party also are potential bases to deny costs. PSC Opp. at 4. Since Plaintiff has not alleged misconduct by the United States, *see id.*, the United States does not address that factor here. The issue of good faith on the part of the losing party is addressed *supra* at 4-5.

parties in this case. For example, in *Singleton v. Smith*, 241 F.3d 534, 539 (6th Cir. 2001), the court actually upheld the cost award entered against an indigent prisoner plaintiff, noting that the trial court "weighed the point that [plaintiff's] needs will be provided by the state in any event, and found the imposition of costs would not be overly burdensome on [plaintiff's] life." The court further stated that "since costs are presumptively awarded and the issue is in the discretion of the trial court, it requires a substantial showing for us to rule that this discretion was abused." *Id.*[5]

*Second*, even where the losing parties' resources were considered in declining to award costs to the prevailing party, that consideration was simply one of several factors in the decision, including the complexity of legal issues and the benefit conferred to the public, neither of which applies here. Thus, In *Association of Mexican-American Educators (AMAE) v. California*, 231 F.3d 572 (9th Cir. 2000), *see* PSC Opp. at 4, the court noted that the class action status, the complexity of the case, and its public importance (as a civil rights challenge to a state standardized test) were significant factors in declining to award costs. That litigation was held to be "extraordinarily important" because "tens of thousands of Californians," the class members, would be affected by its outcome. *Id.* at 593. That court further found that, "[a]lthough Plaintiffs have not prevailed in this action, their claims are not without merit," the issues of the case were "close and complex," and the case presented "issues of the gravest public importance." *Id.*

---

[5] As a factual matter, it appears that PSC may have private, contractual agreements with each plaintiff, which may relieve the individual plaintiffs from the financial responsibilities associated with their litigation in the event their cases are unsuccessful. *See*, *e.g.*, Rec. Doc. 13098-8, Contingent Fee Retainer agreement between plaintiff Earline Castanel and her Counsel. If Mr. Wright and his Counsel have such an agreement, then Mr. Wright's personal financial condition should be irrelevant to this inquiry and should not prevent the Court from entering an award of costs against Plaintiff and in favor of the United States. *See Singleton*, 241 F.3d at 539 (court awarded costs against indigent plaintiff where doing so would not "be overly burdensome on [plaintiff's] life.").

Similarly, in *Stanley v. University of Southern California*, 178 F.3d 1069, 1079-80 (9th Cir. 1999), *see* PSC Opp. at 4, the fact that plaintiff had brought a civil rights claim that raised "important issues [where] the answers were far from obvious," counseled against a cost award, which could have a "chilling effect . . . on future civil rights litigants." That court added, "[w]ithout civil rights litigants who are willing to test the boundaries of our laws, we would not have made much of the progress that has occurred in this nation since *Brown v. Board of Educ.*, 347 U.S. 483 (1954)." *Id.*

By contrast, this case involved the straightforward application of the FTCA's exhaustion and statute of limitations provisions, which had been the subject of previous rulings in this litigation. *See* Order and Reasons at 5-9 (Rec. Doc. 10493); *see also* Order and Reasons at 4-7 (Rec. Doc. 2789); Order and Reasons at 2-3 (Rec. Doc. 2323). Thus, the issues of this case were not "far from obvious," or "close and complex," as in *Stanley* or *AMAE*. 178 F.3d at 1079-80; 231 F.3d at 593. Moreover, the disposition of the mold claim, which generated the vast majority of the costs the United States seeks, was so obvious that its dismissal was not even contested by Plaintiff. *See* Rec. Doc. 12049 at 2. Further, in this case the Court denied class certification, and although Mr Wright's case is designated as a "bellwether" case, it is a single personal injury case that adjudicated Plaintiff's individual tort claims against the United States, and had no legal effect upon the claims of any other plaintiff who has filed suit against the United States. Thus, it is distinguishable from *Stanley*, a civil rights case, and *AMAE*, which was both a civil rights case and a class action. 178 F.3d at 1079-80; 231 F.3d at 593. Accordingly, the special factors advanced by PSC as justification for denying a cost award to the United States as the prevailing party under Rule 54, despite the strong presumption to award those costs, simply do not apply

9

here.[6]

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court enter an award of costs against Lyndon Wright and in favor of the United States in the amount of $154,468.15, which includes $130,072.95 in costs relating to Plaintiff's mold claim, and $24,395.20 in costs previously awarded to the United States by the Clerk.[7]

---

[6] Plaintiff cites no case to support his argument that the United States should not be awarded costs because it appears "to have vast financial resources devoted to this litigation given [its] willingness to litigate numerous 'bellwether trials' and hire expensive experts in [its] defense." PSC Memo. at 4-5. In any event, it is Plaintiff's Counsel who continue to bring bellwether cases, notwithstanding the numerous defense verdicts and dismissals of record in this MDL. *See supra* at 9. Since Plaintiff's Counsel continue to bring such claims, the United States should not be penalized for expending the resources necessary to defend against them. *See Schwarz*, 767 F.2d at 131; *Walters v. Roadway Express, Inc.*, 557 F.2d 521, 526 (5th Cir. 1977) (Under Rule 54, there is a "strong presumption" that costs are to be awarded to a prevailing party, and the failure to award them is "in the nature of a penalty."). *See also* Doc. Rec. 13323 at 2 ("the Court will not relieve any non-prevailing party in this litigation of its responsibility to pay costs . . . .").

[7] To the extent Plaintiff requests that the Court apportion any costs above and beyond the Clerk's award to all claimants in the MDL, this issue has previously been addressed by the Court in its April 16, 2010 Order wherein it upheld the Clerk's award against bellwether Plaintiff Alana Alexander, but encouraged Plaintiffs' Counsel to "spread" the costs among other claimants. Rec. Doc. 13323 at 2. In any event, it is the United States' position that under Rule 54, it is the losing party who is responsible for paying costs to the prevailing party, and that costs should be awarded against Mr. Wright in this case. The United States should not be required to expend resources attempting to recover the costs from the numerous plaintiffs who have filed suit, some of whom may not even be aware that their counsel have brought actions against the United States.

Dated:  June 25, 2010.                                      Respectfully Submitted,


TONY WEST                                                   ADAM BAIN
Assistant Attorney General, Civil Division                  HENRY T. MILLER
                                                            Senior Trial Counsel


J. PATRICK GLYNN                                            ADAM DINNELL
Director, Torts Branch, Civil Division                      MICHELE GREIF
                                                            JONATHAN WALDRON
DAVID S. FISHBACK                                           Trial Attorneys
Assistant Director


OF COUNSEL:                                                 *//S// Michelle Boyle*
                                                            MICHELLE BOYLE (Va. Bar No. 73710)
JORDAN FRIED                                                Trial Attorney
Associate Chief Counsel                                     United States Department of Justice
                                                            Civil Division – Torts Branch
JANICE WILLIAMS-JONES                                       P.O. Box 340, Ben Franklin Station
Senior Trial Attorney                                       Washington, D.C. 20004
Federal Emergency Management Agency                         Telephone No:  (202) 616-4447
Department of Homeland Security                             E-mail:  Michelle.Boyle@USDOJ.Gov
Washington, D.C. 20472

                                                            Attorneys for the United States of America


## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.


                                                            *//S// Michelle Boyle*
                                                            MICHELLE BOYLE (Va. Bar No. 73710)

11