IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LYNDON T. WRIGHT | * | CIVIL ACTION № 09-2977 |
| | * | |
| versus | * | SECTION "N", MAGISTRATE (5) |
| | * | |
| FOREST RIVER, INC., | * | |
| SHAW ENVIRONMENTAL, INC. and | * | |
| United States of America, through the | * | |
| Federal Emergency Management Agency | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**FOREST RIVER, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR AN AWARD OF COSTS RELATED TO PLAINTIFF'S MOLD CLAIM**
**(Rec. Doc. 14545)**

In his Opposition to Forest River, Inc.'s ("Forest River") Motion for an Award of Costs Related to Plaintiff's Mold Claim (Rec. Doc. 14843), plaintiff argues that, despite the Court's express awarding of costs related to plaintiff's mold claim, Forest River is not entitled to the $14,852.17 related to expert testing, analysis and expert reports. Specifically, plaintiff contends that this award is not appropriate because (1) the costs fall outside of those allowed under FRCP

54(d)(1); (2) special factors weigh against an award of costs; (3) plaintiff did not act in bad faith; and (4) any additional costs should be apportioned among all claimants in the MDL. Forest River submits that each of these arguments is without merit, and each will be addressed in turn.

## ARGUMENT

**1. The Court has authority to award expert fees and costs related to plaintiff's mold claim**

Plaintiff erroneously argues that, pursuant to FRCP 54(d)(1), the types of costs awardable to a prevailing party are limited to those enumerated in 28 U.S.C. § 1920. Wright further maintains that recovery of expert costs is permitted only when those experts are court-appointed. Neither position has merit.

Federal Courts possess the inherent power to assess attorney's fees and litigation costs when a losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Batson v. Neal Spelce Associates, Inc.*, 805 F.2d 546, 550 (5th Cir.1986). Indeed, advocacy "simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto." *Id. See also* 28 U.S.C. § 1927 (attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 332-333 (5th Cir. 1995) (expert fees in excess of statutory amounts may be awarded in certain circumstances under discovery rule).

Here, the Court has already found that plaintiff's pursuit of his unsubstantiated mold claim constitutes unreasonable, vexatious conduct that warrants reimbursement to defendants. The Court stated in its ruling on Forest River's Motion for Summary Judgment on causation:

> [B]ased on Plaintiff's vigorous argument, which he ultimately won, to have mold exposure claims added to this bellwether trial and Defendants' adamant arguments to the contrary, including those relating to the increased cost of litigation expenses relating thereto, the Court finds it appropriate to award Defendants the cost of all expert fees related to mold testing and analysis, as well as the fees for the expert reports that were generated based on such testing and analysis.

Rec. Doc. 12049 at 2.

Forest River now simply requests those costs associated with (1) testing and (2) analysis of plaintiff's alleged mold claim. Four of Forest River's experts devoted particular attention to the question of plaintiff's mold exposure. Tony Watson conducted on-site sampling, and both he and Dr. Bill Dyson analyzed the results of that mold sampling in their respective expert reports. *See* Exs. A & B to Forest River's original motion.[1] Dr. James Wedner also devoted a significant amount of his expert report examining the question of Wright's alleged mold exposure while in the Forest River travel trailer. *See* Ex. C to Forest River's original motion. Dr. Kenneth Smith provided commentary on the causal link between mold and asthma/respiratory conditions in his report. *See* Ex. D to Forest River's original motion. The Court has the authority to award the costs for these experts' testing and analysis, and has explicitly recognized Forest River is entitled to its mold-related expert costs.

---

[1] Plaintiff also contends that Tony Watson's travel expenses related to mold testing are not recoverable. However, these expenses were incurred **solely** to address plaintiff's mold claim. *See* Ex. A, Affidavit of Tony Watson, paragraph 7, attached as Ex. A to Forest River's original motion. Thus, these expenses are certainly part of the overall "testing" expense which the Court has deemed recoverable.

Forest River has only requested those sums that fall within the categories defined by the Court and is thus entitled to these sums.

### 2. There are no "special factors" that weigh against an award of costs to Forest River

Although unable to cite to any Fifth Circuit precedent, plaintiff also contends that the following factors should be considered in awarding costs: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources. Rec. Doc. 14843. Plaintiff also notes that courts in other jurisdictions deny costs if "the losing party prosecuted the action in good faith." *Id.*

Of course, as the Court has already implicitly ruled, plaintiff did not act in good faith in his decision to pursue his groundless mold claim. PSC also argues that the Court should not award costs because Mr. Wright cannot afford to pay them. However, in *Chapman v. AI Transport*, one federal court stated:

> Moreover, when awarding costs a district court should not consider the relative wealth of the parties. [Doing so] would unduly prejudice parties with assets and undermine "the presumption that Rule 54(d)(1) creates in prevailing parties' favor, and . . . the foundation of the legal system that justice is administered to all equally, regardless of wealth or status." Even in those rare circumstances where the non-prevailing party's financial circumstances are considered in determining the amount of costs to be awarded, a court may not decline to award any costs at all.

229 F.3d 1012, 1039 (11th Cir. 2000) (internal citations omitted). Even when a losing party's financial resources has been considered by a court, that consideration was not the sole deciding

factor.² Moreover, this Court has already recognized that, despite the costs incurred in litigating bellwether cases in the MDL, it "will not relieve any non-prevailing party in this litigation of the responsibility to pay costs after trial." Rec. Doc. 13323, Order regarding costs in *Alexander*. For these reasons, Mr. Wright's financial position should not preclude an award of Forest River's mold-related costs.

Plaintiff further argues that he should not pay costs because the issues in this case were "extraordinary" and "complex." Rec. Doc. 14843, p. 5. Forest River need not point out the irony that this complexity is **due to plaintiff's own making**, not that of the defendants. Plaintiff, not Forest River, chose to inject a mold claim into what erstwhile had been a formaldehyde suit. Plaintiff, not Forest River, chose to continue to litigate that mold claim despite a complete lack of causation testimony. Moreover, contrary to plaintiff's arguments, an award of the costs for mold testing and analysis would not have a chilling effect on the MDL at all. Instead, it would only serve to remind all plaintiffs of their responsibility to pursue only those claims for which they have a good faith basis. As plaintiff points out, this MDL is expensive litigation, and no party should be forced to devote its time and financial resources to combat meritless claims.

Plaintiff has failed to offer any compelling "special factors" that would justify a denial of a cost award to Forest River. In fact, such an award would promote efficiency within the MDL by

---

² In *Association of Mexican-American Educators (AMAE) v. California*, 231 F.3d 572 (9th Cir. 2000), the Court stated it was not "attempting to create an exhaustive list of 'good reasons' for declining to award costs" in light of the "presumption in favor of awarding costs to prevailing parties." *Id*. at 593. Instead, it simply held that "the reasons that the district court gave for refusing to award costs in this case were appropriate," which included the parties' relative wealth in light of other factors such as the importance of the case and the closeness and complexity of its issues. *Id*. Similarly, in *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926 (7th Cir. 1997), the court's statement regarding the ability to pay was merely dictum, where the court affirmed the district court's cost award to the prevailing party. *Id*. at 945-46.

discouraging frivolous claims that lack a causal foundation. Accordingly, the Court should award Forest River the $14,852.17 associated with mold testing and analysis.

    **3.**     **Plaintiff's decision to continue to pursue his mold claim was in bad faith, and therefore the Court's award of costs is merited**

Plaintiff asserts that neither he nor his counsel ever acted in bad faith or for inappropriate reasons in bringing plaintiff's mold claim. Plaintiff claims there were "legitimate reasons" for brining this claim, as his health problems "were consistent with symptoms associated with exposure to mold."

For the sake of brevity, the complete timeline of plaintiff's mold claim will not be rehashed. *See* Forest River's Original Motion (Rec. Doc. 14545) and USA's Motions for an Award of Costs (Rec. Docs. 11936 &14319) for a more comprehensive discussion of Wright's mold claim. As the Court will recall, there was some initial reluctance to permit the mold claim to go forward. However, the Court eventually allowed plaintiff to amend his Complaint to add mold allegations. *See* Rec. Doc. 2203. Plaintiff's counsel was expressly cautioned, though, that, should there be no good faith basis under FRCP 12 for the mold claim, plaintiff should dismiss it immediately.

> **The Court**: You've made an allegation about mold, I hope under Rule 12 you've got some basis to make that allegation. You should already have a lot of information on that. You're asking me to allow this amended complaint, I hope you've already done your homework to a large degree.
>
> **Mr. D'Amico**: We have, Judge.
>
> Rec. Doc. 2625-1 at 36:20-25.
>
> \* \* \*
>
> **The Court**: And I have the same concern about expanding beyond formaldehyde, my responsibility was to try to handle in a multidistrict fashion complaints about formaldehyde exposure. The problem with not

handling the mold at this point that in order to hopefully achieve a resolution of all of these cases I've got to be able to pick up that piece to the extent that it is not unique to this plaintiff alone but that it may be a common component to a larger group of plaintiffs.

**Mr. D'Amico**: And, Judge, I would say that that's the point if I felt that was an oddball case and it was one of a rarity I would not be proposing that we go forward with this case. I would say, look, we have an anomaly, let's kick him out. All of our statistical analysis and what CDC showed, just like you did in this selection process, one is going to be a mold case and that's what we found.

**The Court**: *Frank, all I can tell you, cautionary word, if you do not have an expert who can help you with your burden of proof, I would expect you to abandon the claim with regard to mold exposure.*

**Mr. D'Amico**: Absolutely. And the only reason I am addressing, if you look at the attachment from FEMA about important information about formaldehyde residents, they warn that other pollutants, mold and smoke - The Court: All of that is well and good, but you need testimony to meet your burden of proof that this man . . . That this plaintiff suffered an injury as a result of not just any mold but mold that was present in his unit while he lived in it and not mold from any other source. So you better be prepared to meet that burden. *And if you can't, I would expect you to abandon the claim, sooner rather than later*.

**Mr. D'Amico**: *Absolutely, Judge*.

Rec. Doc. 2625-1 at 48-49:6-13 (emphasis added).

Despite plaintiff's assertions, he never submitted any expert testimony that linked mold exposure to any injury. Neither Dr. Williams, his general causation expert, nor Dr. Miller, his specific causation expert, opined that mold exposure caused any of Mr. Wright's alleged health problems. By February, 2010, one month before trial, plaintiff had still failed to proffer any evidence whatsoever to meet his burden of proof on the mold claim, and he did not even attempt to challenge Forest River's Motion for Summary Judgment seeking to dismiss his mold claim. *See* Response to Motion filed by Plaintiffs' Liaison Counsel (Rec. Doc. 11546). Thus, the Court awarded Forest

River "the cost of all expert fees related to mold testing and analysis, as well as the fees for the expert reports that were generated based on such testing and analysis." Rec. Doc. 12049 at 2.

In the end, despite the claim that they used their "best professional judgment," plaintiff's counsel did not act in accordance with their own promises to the Court, i.e., dismiss a claim that lacked causal support. Because plaintiff's counsel failed to comply with the Court's instruction (i.e., promptly abandon the mold claim upon discovering that it lacked merit), all costs associated with defending against the mold allegations should be awarded to Forest River pursuant to the Court's Order. *See Alyeska*, 451 U.S. at 258-259; *Cambridge Toxicology Group, Inc., v. Val Exnicios*, 495 F.3d 169, 180-181 (5th Cir. 2007) (attorney who continued to file pleadings despite repeated denials of leave to amend and court instructions was required to pay costs and fees pursuant to 28 U.S.C. § 1927).

### 4. Costs should not be apportioned among all claimants in the MDL

Finally, plaintiff requests the Court spread any potential award among all claimants in the FEMA trailer formaldehyde MDL. Forest River requests that the Court follow the same approach as that of the *Alexander* bellwether. Although the Court "encourage[d] Plaintiff's counsel to devise and pursue any and all appropriate alternatives to spread these costs," it went on to state that it "will not relieve any non-prevailing party in this litigation of the responsibility to pay costs after trial." Rec. Doc. 13323, Order regarding costs in *Alexander*.[3] In short, plaintiff should not be able to avoid his responsibility to bear these costs by shifting them to thousands of others in the MDL, thereby rendering it virtually impossible for Forest River to collect these amounts. Regardless of whether

---

[3] In *Alexander*, the Court acknowledged that the litigation was "expensive" but awarded costs of $75,207.84 and $116,543.07 to Gulf Stream and Fluor, respectively. Rec. Doc. 13323, p. 2.

plaintiff's counsel devises alternative methods to satisfy the judgment, plaintiff is nevertheless responsible for these costs, and Forest River requests that such costs be awarded against him accordingly.

## CONCLUSION

For the foregoing reasons, Forest River, Inc. respectfully requests, in connection with the Court's Order (Rec. Doc. 12049), that the Court award $14,852.17, representing Forest River's incurred costs related to plaintiff's failed mold claims.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (6154)
JASON D. BONE (28315)
CARSON W. STRICKLAND (31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
ATTORNEYS FOR FOREST RIVER, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record via e-filing this 26th day of July, 2010.

/s/ Jason D. Bone