UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: | FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 SECTION: N(5) |
| This Document Relates to: *Lyndon T. Wright. v. Forest River, Inc., et al*, Docket No. 09-2977 | | * * * | JUDGE: ENGELHARDT MAG: CHASEZ |

**************************************************************************

**FOREST RIVER INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION TO ASSESS TAXABLE COSTS**

Defendant Forest River Inc. ("Forest River") respectfully submits this Reply Memorandum to respond to arguments made by plaintiff Lyndon Wright in his Response in Opposition to Forest River Inc.'s Motion to Assess Taxable Costs.

**LAW & ARGUMENT**

**I.      All Costs Sought by Forest River are Reasonable, Necessary and Supported by Law**

   **1.      Deposition & Daily Trial Transcripts**

Plaintiff opposes an award of certain deposition costs, most notably fees associated with videotaping of depositions. Plaintiff argues that fees associated with videotaping of depositions are not recoverable. *See* PSC Opp. p. 3-7  Plaintiff, however, fails to acknowledge that 28 U.S.C. §

1920(2) was amended in 2008 to authorize the award of costs for "fees for printed or **electronically recorded** transcripts."[1] (Emphasis added). Consequently, while the previous language of § 1920(2) may not have authorized an award of these costs, the amendment to the statute clearly encompasses the deposition fees sought by Forest River. Further, the Fifth Circuit has recognized that this amendment allows for an award of costs associated with the videotaping of depositions. *See S&D Training Academy, LLC v. AAFIS, Inc.*, 336 Fed. Appx. 443, 4501 (5th Cir. 2009)(recognizing the 2008 amendment and considering whether the amendment was retroactive). Accordingly, Forest River is entitled to and seeks all costs associated with the video recording of depositions.

Plaintiff next complains that Forest River has not shown that these video depositions were obtained for use at trial. The Fifth Circuit has stated that the standard for an award of costs for depositions is whether **at the time the deposition was taken,** it could reasonably have been expected to be used for trial preparation. *See Fogleman v. ARAMCO*, 920 F. 2d 278, 285 (5th Cir. 1991) (emphasis added). In November 2009, plaintiff submitted a Witness List which listed 111 witnesses, many of which resided outside the subpoena power of this Court. *See* Rec. Doc. 8226. Since Forest River had no indication of which of these witnesses plaintiff would ultimately call, it was necessary to obtain video copies of the witnesses' testimony. Thus, at the time these depositions were obtained, it was reasonably contemplated that the videos would be used at trial.

Plaintiff then claims that Forest River has included costs for "extras" within its calculations such as deposition exhibits, e-transcripts, and postage fees. *See* PSC Opp. p. 4-5. With regard to

---

[1] § 1920(2) previously read "Fees of the court reporter for all or any part of the stenographic transcript obtained for use in the case."

deposition exhibits, these costs may be taxed under § 1920(2) and, to that extent, plaintiff's argument is without merit.[2] *See e.g. Neutrino Development Corp. v. Sonosite, Inc.*, 2007 WL 998636 at *3 (S.D.Tex. 2007). However, after reviewing plaintiff's arguments, Forest River will concede that some of its calculations erroneously included $886.98 in postage and other items not taxable and consequently reduces the amount of costs it seeks for depositions. As such, Forest River adjusts the costs it seeks for depositions to **$46,417.38.**[3]

Plaintiff also complains that Forest River has not shown that the daily trial transcripts were "necessarily obtained for use" in the case. *See* PSC Opp p. 7-9. However, in its Motion, Forest River stated exactly why these transcripts were necessary. *See* Rec. Doc. 14541-1 at p. 4-5. Further, as only one counsel member for each party was allowed at the bench during discussions of evidentiary issues, other counsel needed to follow the real-time transcript in order to both learn of and adhere to the Court's rulings on various evidentiary issues that would apply throughout trial.

Finally, given the length and highly technical nature of this trial, the parties' recollection of testimony differed at times and the Court requested that the parties reference the testimony in the transcript. For example, during Forest River's Rule 50 motions, there was some question as to the testimony of the plaintiff, necessitating reference to the trial transcript at the Court's request. *See* Trial Transcript pp. 2527:25 – 2529:05, attached hereto as Exhibit "A."

---

[2] Even if the Court were to find that the deposition exhibits were somehow not properly taxable under 1920(2), they are properly taxable as "copying costs" under 1920(4).

[3] Forest River further itemizes these costs as $31,043.36 for printed transcripts and $15,374.02 for electronically recorded transcripts.

Finally, Forest River also notes that these daily trial transcript costs were awarded in the *Alexander* matter. *See* Rec. Docs. 10620 &13323. Accordingly, Forest River should be awarded these costs. Accordingly, Forest River is entitled to an award for the costs of daily trial transcripts as well.

### 2. Witness Fees

Plaintiff next objects to Forest River's requests for witness fees. Plaintiff first complains that Forest River is not entitled to recover "sitting fees" for what he characterizes as the depositions of "Forest River's experts." *See* PSC Opp. p. 10-11. However, plaintiff clearly has misread Forest River's Motion. Forest River is not seeking any fees associated with the depositions of its own experts, whose fees were paid by the PSC as plaintiff correctly points out. Rather, Forest River is seeking the $40 witness fee authorized by 28 U.S.C. § 1821 for each of **plaintiff's** own experts for which Forest River paid substantial sitting fees. This award of costs is proper.

Next, despite acknowledging that Forest River is entitled to $240 for the deposition fees of Forest River employees, plaintiff complains that Forest River has not attached any evidence that the depositions of Forest River employees were taken. *See* PSC Opp. p. 10. Forest River refers plaintiff to its itemization of deposition costs and accompanying deposition invoices which clearly demonstrates these depositions were taken. As such, Forest River is entitled to these costs.

Finally, plaintiff complains of Dr. James' travel expenses. Forest River points out that under 1821(c)(4), "all normal travel expenses within and outside the judicial district shall be taxed as costs." *See also Musmeci v. Schwegmann Giant Super Markets*, 2002 WL 535462 at FN4, (E.D.La.

2002) (Barbier, J.) (noting that § 1821 provides that a witness shall be paid for actual travel expenses). As such, an award of these costs is proper.

### 3. Copy Costs

Plaintiff next complains that Forest River has not shown that the copies for which it seeks costs were "necessarily obtained for use in the case." *See* PSC Opp. p. 11-12. The Fifth Circuit's standard requires that there be "some demonstration that the costs necessarily result from the litigation." Forest River has demonstrated the requisite connection, supplying invoices which identify the copies as jury questionnaires and trial exhibits. Plaintiff also complains that Forest River has not shown that its costs for obtaining copies of plaintiff's IRS, Social Security, employment, and medical records were necessary to this litigation. However, these are records of the plaintiff, who placed his health and future earning capacity at issue in this litigation. These documents are pertinent and necessary. Further, the PSC's position is even more perplexing given that, in the *Alexander* matter, the PSC admitted that costs for medical records were properly taxable. *See* Rec. Doc. 8073, p. 4.

Plaintiff next complains that Forest River seeks costs for binders ($360), three hole punching ($1,172.31), and for "redweld folders" ($655.20). *See* PSC Opp. p. 12.

First, Forest River did not include the costs for binders in its calculations. Next, with respect hole punching the trial exhibits, these costs were necessarily incurred as the Court mandated that all exhibits needed to be organized in binders for the jury. The redweld folders were necessary to separate each exhibit and avoid any inadvertent production to the jury. As such, these costs were necessarily incurred pursuant to the mandate of the Court and are properly taxable.

### 4. Electronic Discovery

Plaintiff next complains that Forest River's invoices relating to discovery costs are not necessary and reasonable. Yet plaintiff himself imposed these costs on Forest River with a discovery request for all electronically stored information. *See* June 11, 2009 Email from A. Alquist to counsel for Forest River and "Amended List of Targeted Search Terms," attached as "Exhibit "B." This was a highly complex undertaking. Forest River is a company with hundreds of employees and multiple production plants. The retrieval and subsequent word search of all emails since 2005 (and in some cases, since 2003) is a task that could not have simply been performed by "paralegals and associate attorneys,"contrary to plaintiff's assertions. These costs were reasonable and necessary.

### 5. Audiovisual Trial Support

Plaintiff contends that costs for audiovisual trial support are not merited. In its Motion, Forest River stated that it was entitled to costs for audiovisual trial support and cited cases within this circuit authorizing an award of costs for same. In addition to repeatedly emphasizing that the parties were to present the case as efficiently as possible, the Court also mandated that the parties present their exhibits via the Court's overhead projector or a laptop computer. *See* Rec. Doc. 12407, p. 3. These costs were necessarily incurred and taxing of these costs is appropriate.

Plaintiff then complains that these costs are unreasonable. Such an argument lacks merit. Throughout trial of this matter, Trial Concepts provided audiovisual trial support to both Forest River and Shaw. The Trial Concepts fee was more than reasonable, and Forest River is thus entitled to recover these costs.

### 6. Destructive Testing

Plaintiff finally objects to Forest River's seeking costs associated with destructive testing, which was conducted at plaintiff's behest and over Forest River's vigorous objections. Plaintiff contends that Forest River's testing was not necessary and reasonable. Plaintiff further argues that Forest River was under no obligation to destructively test this trailer but yet "unilaterally" decided to conduct this testing. Such arguments are irrational. It was incumbent upon Forest River to actively participate in the destructive testing of this trailer in order to adequately defend its interests and properly prepare this matter for trial. To the extent plaintiff contends that Forest River's testing protocol was unreasonable, Forest River again points out that it was designed in response to the protocol developed and implemented by plaintiff. As such, the costs incurred with the destructive testing of this trailer were necessary and reasonable.

Throughout the course of this litigation, plaintiff continually saddled Forest River with unreasonable and costly discovery. When necessary, Forest River objected to plaintiff's costly procedures, most notably the destructive testing of this trailer and the injection of the failed mold claim into formaldehyde exposure litigation. Of course, plaintiff's costly discovery procedures were ultimately ineffective and plaintiff now seeks to avoid the costs he so readily sought to incur. However, the fact remains that, between the destructive testing and the failed mold claim, Forest River has been forced to bear the financial burden of the PSC's discovery efforts and has incurred costs substantially in excess of similarly situated MDL defendants. Accordingly, Forest River should be awarded its costs for destructive testing.

**II.     No Special Factors Weigh Against the Costs Forest River Seeks**

Although unable to cite to any Fifth Circuit precedent, plaintiff also contends that the following factors should be considered in awarding costs: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources. PSC Opp. p. 15-16. Plaintiff also notes that courts in other jurisdictions deny costs if "the losing party prosecuted the action in good faith." *Id.* However, none of these factors is sufficient to overcome the "strong presumption" that Forest River is entitled to costs in this matter. *See Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir.1992).

The PSC argues that the Court should not award costs because plaintiff cannot afford to pay them. However, in *Chapman v. AI Transport*, one federal court stated:

> When awarding costs a district court should not consider the relative wealth of the parties. [Doing so] would unduly prejudice parties with assets and undermine "the presumption that Rule 54(d)(1) creates in prevailing parties' favor, and . . . the foundation of the legal system that justice is administered to all equally, regardless of wealth or status." Even in those rare circumstances where the non-prevailing party's financial circumstances are considered in determining the amount of costs to be awarded, a court may not decline to award any costs at all.

229 F.3d 1012, 1039 (11th Cir. 2000) (internal citations omitted). Even when a losing party's financial resources has been considered by a court, that consideration was not the sole deciding

factor, and the courts looked to other issues as well.[4] For these reasons, Mr. Wright's financial position should not bear on the Court's consideration of a cost award in this case.

The PSC contends that, due to the complex nature of this case and that fact that plaintiff was a bellwether plaintiff, it would be unfair and unreasonable to allow plaintiff to bear all costs. However, this matter only involved a single plaintiff with a single personal injury claim. The case had no other legal effect upon any of the claims of any other plaintiff who has filed suit against Forest River. Further, Forest River need not point out the irony that some of this complexity is largely **due to plaintiff's own making**, not that of the defendants. Plaintiff, not Forest River, chose to inject a mold claim into a formaldehyde suit. Plaintiff, not Forest River, chose to continue to litigate that mold claim despite a complete lack of causation testimony from his own experts. Plaintiff has failed to offer any compelling "special factors" that would justify a denial of a cost award to Forest River. Accordingly, the Court should award Forest River the costs it seeks.

## III. Costs Should Be Enforced Solely Against Lyndon Wright

Plaintiff next implores the Court to intervene and apportion the costs amongst all plaintiffs in the MDL on a *pro rata* basis. However, under Rule 54, Lyndon Wright, as the losing party, is

---

[4] In *Association of Mexican-American Educators (AMAE) v. California*, 231 F.3d 572 (9th Cir. 2000), cited by plaintiff, the Court stated it was not "attempting to create an exhaustive list of 'good reasons' for declining to award costs" in light of the "presumption in favor of awarding costs to prevailing parties." *Id*. at 593. Instead, it simply held that "the reasons that the district court gave for refusing to award costs in this case were appropriate," which included the parties' relative wealth in light of other factors such as the importance of the case and the closeness and complexity of its issues. *Id*. Similarly, in *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926 (7th Cir. 1997), the court's statement regarding the ability to pay was merely dictum, where the court affirmed the district court's cost award to the prevailing party. *Id*. at 945-46.

responsible for paying costs to the prevailing party, Forest River. Forest River should not be required to expend additional resources attempting to recover costs from a multitude of litigants.

Further, Forest River points out that plaintiff's request is inappropriate, given that the Court has already addressed this issue twice and placed the onus on **the PSC** to determine an appropriate method for apportioning costs. In the *Alexander* matter, the Court encouraged the PSC to spread the costs among other claimants. *See* Rec. Doc. 13323 at p. 2. In the *Wright* matter, the Court also stated:

> Again, the Court encourages **Plaintiff's counsel** to devise and pursue any and all appropriate alternatives to spread these costs amongst more individuals than only Mr. Wright (i.e., amongst Plaintiff's counsel and/or other claimants).

*See* Rec. Doc. 14338 at p. 2 (emphasis added).

As such, plaintiff's request that the Court apportion the fees should be denied in its entirety, and all costs awarded should be assessed against plaintiff Lyndon Wright.

## CONCLUSION

For the foregoing reasons, Forest River respectfully requests that **$214,955.52** be taxed against plaintiff Lyndon Wright and in favor of Forest River.

Respectfully submitted,

/s/ Jason D. Bone
ERNEST P. GIEGER, JR. (No.6154)
JASON D. BONE (No. 28315)
CARSON W. STRICKLAND (No. 31336)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*ATTORNEYS FOR FOREST RIVER, INC.*

## **C E R T I F I C A T E**

I hereby certify that on the 26th day of July, 2010, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to all known counsel of record by operation of the court's electronic filing system.

                                          /s/  Jason D. Bone
                                          JASON D. BONE