UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                                 MDL NO. 07-1873
       FORMALDEHYDE PRODUCTS
       LIABILITY LITIGATION

                                                                       SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES (Alabama Plaintiffs)

**ORDER AND REASONS**

Before the Court is Defendant United States' Motion to Dismiss the FTCA Claims of All "Alabama Plaintiffs" for Lack of Subject-Matter Jurisdiction Based Upon No Analogous Private Liability (Rec. Doc. 10656). This motion is opposed. (See Rec. Doc. 11470). After considering the memoranda filed by the parties and the applicable law, the Court grants this motion.[1]

**I.     INTRODUCTION**

First, the undersigned notes that the motion presently before the Court addresses all of the remaining Federal Tort Claims Act ("FTCA") claims brought by the "Alabama Plaintiffs" against the United States of America ("the Government" or "FEMA"). Based on the wording of

---

[1] The Court notes that it granted two similar motions to dismiss brought by the Government, addressing the FTCA claims of all "Louisiana Plaintiffs" and "Mississippi Plaintiffs" (See Rec. Docs. 14124 and 14486, respectively). For substantially the same reasons as stated in its previous two Orders, restated herein, this Court grants this motion.

1

the applicable Alabama law, and on the showing made, this motion affects *all* of the Alabama Plaintiffs' FTCA claims, not merely the standard of care to be applied to FEMA for the purposes of assessing liability under state law, as was the case in the similar motion filed by the Government applicable to the "Louisiana Plaintiffs." The issue presented herein is indeed the dismissal of the Government as a defendant in the Alabama Plaintiffs' cases - as was found to be the case in the Order addressing the Government's motion relative to the Mississippi Plaintiffs. Essentially, this motion seeks dismissal of all Alabama Plaintiffs' FTCA claims, regardless of whether they are grounded in simple negligence or otherwise.

## II. BACKGROUND

In this multi-district litigation ("the MDL"), referred to as "In Re: FEMA Trailer Formaldehyde Products Liability Litigation," Plaintiffs are individuals who resided in emergency housing units ("EHUs") provided by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita[2]. In general, Plaintiffs claim injuries resulting from alleged exposure to the release of formaldehyde and/or formaldehyde vapors in these EHUs. (Rec. Doc. 109, ¶ 30). In their Third Supplemental and Amended Administrative Master Complaint (Rec. Doc. 4486), Plaintiffs have sued over 100 entities, including the Government.[3] (Rec. Doc. 4486, ¶¶ 10-115). The Complaint cites 28 U.S.C. §§ 1346 and 2671, *et seq*., and

---

[2] Although Plaintiffs in this MDL consist of individuals who resided in FEMA-provided EHUs following both Hurricane Katrina and Hurricane Rita, the Court notes that only Hurricane Katrina is specifically mentioned in reference to the Alabama Plaintiffs because Hurricane Rita does not appear to have significantly affected Alabama.

[3] Plaintiffs have since filed a Fourth Supplemental and Amended Administrative Master Complaint (Rec. Doc. 7688), which essentially incorporates the same allegations. For the purposes of this Order and Reasons, the Court cites to the Third Amended Complaint; however, the reasons should be interpreted as being applicable to the Fourth Amended Complaint as well, as incorporated therein.

alleges that the Government is subject to the jurisdiction of this Court through the limited waiver of sovereign immunity, found in the FTCA. (*Id.* ¶ 116).

Plaintiffs have alleged that they were provided housing units by FEMA because "[t]he residence of each Named Plaintiff was rendered unhabitable following Hurricanes Katrina and/or Rita." (*Id.*, ¶ 124, 128). As a result of what Plaintiffs describe as "the greatest natural disaster in the history of the United States," each and every Plaintiff was essentially left "homeless." (*Id.,* ¶¶ 128, 171). Plaintiffs further allege that FEMA's provision of housing to these homeless "individuals and families displaced by Hurricanes Katrina and Rita" created "a duty on the part of the Federal Government to insure that such housing was habitable in a safe and sanitary condition," and that the Government was under a duty to: "use due care and caution for the safety of the . . . occupants of the subject housing units"; "provide reasonably safe, functional and habitable housing units"; "ensure that the housing units . . . were free of defects"; and "warn . . . of any defects in the housing units." (*Id.*, ¶¶ 150, 162, 201-205).

Specifically, Plaintiffs allege that the Government was negligent in: "continuing to provide unreasonably dangerous housing units"; "failing to adequately warn . . . of the unreasonably dangerous nature of the housing units"; "failing to remedy the dangerous nature of the housing units"; "failing to timely implement adequate safety measures and procedures to address/remove the defects in the housing units"; and "continuing to house [Plaintiffs] in hazardous, unreasonably dangerous temporary housing units." (*Id.*, ¶ 209). They also assert that the Government was "grossly negligent, reckless, willful and/or wanton."[4] (*Id.*, ¶ 206).

---

[4] Plaintiffs have also pleaded that the Government "knowingly and intentionally" suppressed and withheld information from the public and "knowingly and intentionally" allowed litigation concerns to take priority over an alleged safety mandate. (Rec. Doc. 4486,¶ 209). The Government notes the it has not waived its sovereign immunity for suits involving the intentional torts of

3

## III. SUMMARY OF THE ARGUMENTS

The Government has filed the instant motion seeking the dismissal of all the FTCA claims brought by the "Alabama Plaintiffs"[5] based upon lack of subject-matter jurisdiction. Noting that the FTCA requires the Government's liability to be measured in accordance with the law of the state where the alleged act or omission occurred, the Government contends that all FTCA claims of these plaintiffs are limited by the provisions set forth in Alabama tort law. See 28 U.S.C. § 1346(b); *Cleveland ex rel. Cleveland v. United States*, 457 F.3d 397, 403 (5th Cir. 2006)*; Alexander v. United States*, 605 F.2d 828, 832 (5th Cir. 1979) ("[L]iability under the FTCA is governed by state law."); see also *Richards v. United States*, 369 U.S. 1, 9 (1962). Any alleged negligent acts or omissions on the part of the Government in these cases will have occurred within the State of Alabama (where the "Alabama Plaintiffs" EHUs were located and occupied).

Further, the Government stresses that in assessing liability, the FTCA places the United States on equal footing with private persons.[6] Thus, the Government asserts that its liability is measured by referencing the state law liability of a private person under similar circumstances. As a result, the Government claims that it is entitled to raise any and all defenses available to a

---

Government employees. *See* 28 U.S.C. § 2680(h).

[5] The Government defines "Alabama Plaintiffs" as "all plaintiffs in this multi-district litigation ("MDL") who inhabited FEMA-provided emergency housing units ("EHU") - and allegedly suffered injuries therefrom - while in Alabama." (Rec. Doc. 10656, n. 1).

[6] The FTCA's limited waiver of sovereign immunity – in other words, its limited grant of subject-matter jurisdiction – is expressly limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Whether a private individual in like circumstances could be subject to liability is a question of sovereign immunity. *See United States v. Olson*, 546 U.S. 43, 44 (2005). Although the FTCA looks to state law to measure Government liability, whether there is analogous private liability under similar circumstances remains a question of federal law.

4

private person under state law.

Here, the Government argues that, even if the Alabama Plaintiffs could prove that the Government was negligent, there is no analogous tort liability against a "private individual under like circumstances" under Alabama law. See 28 U.S.C. §§ 2674, 1346(b). The Government asserts that the State of Alabama has sought to encourage the gratuitous provision of shelter to homeless disaster victims by promulgating Ala. Code § 31-9-17 of the "Alabama Emergency Management Act ("AEMA"). This section abrogates the potential civil liability of all private persons who, voluntarily and without compensation, allow their premises to be used as shelter in response to an emergency, such as a natural disaster:

> Any person owning or controlling real estate or other premises who voluntarily and without compensation grants a license or privilege, or otherwise permits the designation or use of the whole or any part or parts of such real estate or premises for the purpose of sheltering persons during an actual disaster or an actual, impending, mock or practice attack, shall, together with his successors in interest, if any, not be civilly liable for negligently causing the death of, or injury to, any person on or about such real estate or premises, or for the loss of, or damage to, the property of such person.

Ala. Code § 31-9-17.[7]  The Government argues that this law squarely applies to the facts of this

---

[7] The Court notes that the preceding statute, relating specifically to the immunity of government actors for tort resulting from emergency management activities, provides as follows:

> Neither the state nor any political subdivision thereof nor other agencies of the state or political subdivisions thereof, nor, *except in cases of willful misconduct, gross negligence or bad faith*, any emergency management worker, individual, partnership, association or corporation complying with or reasonably attempting to comply with this chapter or any order, rule or regulation promulgated pursuant to the provisions of this chapter or pursuant to any ordinance relating to blackout or other precautionary measures enacted by any political subdivision of the state, shall be liable for the death of or injury to persons, or for damage to property, as a result of any such activity...

Ala. Code 31-9-16(b) (emphasis added).  Importantly, Ala. Code § 31-9-17 seems to be broader than Ala.

5

case, barring all FTCA claims (and all negligence claims in general) that stem from the provision of rent-free emergency shelters that were provided voluntarily. Specifically, the Government asserts that it, through FEMA was equivalent to a private person who (1) owns or controls premises, (2) acts voluntarily and without compensation, (3) permits the use of his or her premises, and (4) does so for the purpose of sheltering persons during a disaster. See Ala. Code § 31-9-17. Thus, the Government argues that because there is no analogous private liability under Alabama state law, there is no subject-matter jurisdiction under the FTCA.

The Alabama Plaintiffs, on the other hand, oppose the motion and argue that the Court would arrive at an absurd outcome by strictly interpreting this limitation of liability statute in consideration of the Government's effort to apply its protective language to FEMA under the "private person analogy" of the FTCA. The Alabama Plaintiffs argue that no private person doing or failing to do what FEMA did or failed to do in connection with this litigation could ever be said to fall within the meaning and scope of this statute. They contend that the private person to which the statute applies would have to act voluntarily and without compensation, would be

---

Code 31-9-16(b). As opposed to limiting liability of certain state actors "*except in cases of willful misconduct, gross negligence or bad faith*" as in Ala. Code 31-9-16(b), Ala. Code § 31-9-17 seems to preclude *all* tort liability arising from a person's negligent, voluntary provision of free shelter during an actual disaster.

Alabama Plaintiffs make little-to-no effort to address this important issue. (See brief reference to limitation of liability to gross fault standard on pp. 2 and 8 of Rec. Doc. 11470). *On the showing made*, the Court agrees with the Government that the protection offered by Ala. Code §31-9-17 is not limited to liability arising from simple negligence and does not contain a special exception for gross negligence or other misconduct, as is expressly included in the preceding statute applicable to state actors. The Court agrees that as the Alabama legislature chose to qualify the immunity of state actors engaged in emergency management activities, it easily could have similarly qualified the immunity of private persons in Ala. Code § 31-9-17 if it had wished to do so. Thus, *on the showing made*, the Court finds that the immunity from civil liability conferred by Ala. Code § 31-9-17 is absolute. Further, Ala. Code § 31-9-17 is the applicable section as the Government must be afforded the same protections as a *private person under similar circumstances*.

protected only as to personal injury claims occurring during an actual emergency, and would be open to suit in his capacity as a property owner. Conversely, the Alabama Plaintiffs assert that here, FEMA did not act "voluntarily," did not proceed "without compensation," is not sued for personal injuries occurring during the actual emergency of Hurricanes Katrina and Rita, and is not sought to be held liable for conduct predicated upon the ownership of travel trailers. Alabama Plaintiffs argue that the objective of Ala. Code § 31-9-17 is not furthered by limiting the liability of FEMA. In Plaintiffs' view, such a limitation would not encourage "Good Samaritan" behavior. Indeed, the Alabama Plaintiffs assert that FEMA's further involvement in emergency response is required as a matter of law, and does not constitute voluntary altruism. Essentially, the Alabama Plaintiffs contend that imposing this limitation of liability on their FTCA cases would be inconsistent with the requirement of the FTCA that FEMA be held accountable in tort just as a private citizen would be held accountable under similar circumstances.

## IV. DISCUSSION

### A. Standard of Review

The Government urges the dismissal of the Alabama Plaintiffs' FTCA claims for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or in the alternative, requests the granting of summary judgment in its favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Because federal courts are inherently courts of limited jurisdiction, the Court begins with the presumption that a cause lies outside its limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Jurisdiction is of course a threshold issue, and a federal court is tasked with determining whether it has

7

jurisdiction as soon as possible before reaching the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

"Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001); see also *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir.2007).[8] In a 12(b)(1) motion, the party asserting jurisdiction (here, the Alabama Plaintiffs) bears the burden of proof that jurisdiction does in fact exist. *Ramming*, 281 F.3d at 161. "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

The United States as a sovereign "is immune from suit save as it consents to be sued," and without such consent, a district court lacks subject matter jurisdiction over claims against it. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). In other words,

---

[8] In certain instances, courts will convert motions to dismiss under Rule 12(b)(1) into motions for summary judgment under Rule 56 because resolution of the jurisdictional question is intertwined with the merits of the case and materials outside the pleadings have been submitted. See *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004); see also *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (*quoting Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir.1981)). Here, the Court agrees with the Government that the jurisdictional question – whether Ala. Code § 31-9-17 would limit the potential tort liability of an analogous private person under similar circumstances – is not intertwined with a merits determination of whether the Government was negligent. Thus, here, the only issue for the Court to decide is whether this specific provision of Alabama law would limit the liability of a private person under similar circumstances in light of the Alabama Plaintiffs' allegations and the undisputed facts. Indeed, this question affects all the Alabama Plaintiffs in the same manner and does not hinge on a case-by-case or individualized analysis, as many issues in this MDL have.

the United States may not be sued without its consent under the doctrine of sovereign immunity. See *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). However, the FTCA provides that "the United States shall be liable, respecting the provision of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances. . .." 28 U.S.C. § 2674. Similarly, the FTCA provides that courts may only exercise jurisdiction over:

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The Supreme Court has observed that "we have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State - the source of substantive liability under the FTCA." *F.D.I.C. v. Meyer*, 510 U.S. 471, 478, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994). "Law of the place" does not mean federal law; the FTCA was not intended as a mechanism for enforcing federal statutory duties. *Howell v. United States*, 932 F.2d 915, 917 (11th Cir.1991). Hence, the FTCA measures governmental liability in accordance with the law of the state where the act or omission at issue occurred. See *Howell*, 932 F.2d at 917.

Whether a private person in "like circumstances" would be subject to liability is a question of sovereign immunity and, thus, is ultimately a question of federal law. See *Olson*, 546 U.S. at 44; see also *United States v. Mottaz*, 476 U.S. 834, 841 (1986). Therefore, if a private person under "like circumstances" would be shielded from liability pursuant to a state statute, the strict construction required by the Supreme Court dictates that lower courts decline to exercise subject-matter jurisdiction.

9

B. **Analysis**

As part of the FTCA's private analogous liability requirement, numerous courts have determined that the Government is entitled to raise any and all defenses that would potentially be available to a private citizen or entity under state law. See *Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1998); *Banks v. United States*, 623 F. Supp. 2d 751, 752 (S.D. Miss. 2009) ("Where the FTCA applies, the United States can assert the same defenses available to private citizens . . . "); *Woods v. United States*, 909 F. Supp. 437, 442 (W.D. La 1995) (dismissing an FTCA action based upon the private landowner immunity afforded by Louisiana's recreational use statute). Indeed, the United States Supreme Court has explained that the Government's sovereign immunity is only waived "where local law would make a 'private person' liable in tort". *Olson*, 546 U.S. at 44.

As the Government notes, to date, no case appears to have dealt with the private person immunity provision found at Ala. Code. § 31-9-17. As stated herein, this section 31-9-17 is included in the AEMA, which confers emergency powers upon the Governor and other state actors, and authorizes the establishment of certain local emergency management organizations. See Ala. Code § 31-9-2(a). One of the Act's primary purposes is to assist and encourage emergency response activities. *Id.* Indeed, the AEMA states that all of its provisions, including Ala. Code § 31-9-17, are to be "construed liberally" in order to effectuate the chapter's purpose. (See Rec. Doc. 10656, n. 13). Despite the "marked paucity of caselaw interpreting state emergency management statutes"[9], such as the AEMA, this Court concludes that the meaning and purpose of Ala. Code § 31-9-17 is unambiguous and clear on its face.

---

9   See *Robin v. United States*, 2006 WL 2038169, at *2 (E.D. La. July 17, 2006).

Through section 31-9-17, the State of Alabama has abrogated the tort liability of private persons who, voluntarily and without compensation, provide premises for shelter in response to a disaster, notwithstanding any duties owed by the owner/operator of the premises to the occupants and whether the owner/operator acted negligently.[10] See Ala. 31-9-17. Here, the Alabama Plaintiffs have alleged that the Government provided them with shelter because their residences were rendered uninhabitable and because they were left "homeless" as a result of Hurricane Katrina. (Rec. Doc. 4486, ¶¶ 124, 128, 171). It is clear to this Court that Ala. Code § 31-9-17 shields the Government from FTCA liability because a private person in like circumstances would be shielded from such by the AEMA.[11] It seems clear to the Court that had a private person or entity provided thousands of emergency shelters to the victims of Hurricane Katrina, Ala. Code § 31-9-17 plainly would preclude any negligence liability for injuries related to the occupants' use of these shelters. Thus, the Court finds that the Government, through FEMA, voluntarily provided FEMA-owned premises for use by disaster victims (including

---

[10] While the Alabama Plaintiffs argue that affording the Government the same protections given by section Ala. Code 31-9-17 to private persons who provide shelter in response to emergencies would constitute "absurd consequences" (See Rec. Doc. 11470, p. 1), they ignore the FTCA's jurisdictional requirement as well as the Supreme Court's holding in *Olson* that there be analogous "private person" liability. See 546 U.S. at 44 (discussing 28 U.S.C. § 1346(b)). Plaintiffs' attempt to distinguish the Government from a private person who provides similar shelters to the ones at issue herein is clearly inapposite with the express statutory and jurisprudential guidelines. While the Court agrees that there are inherent differences between the Government and a private person, such as the collection of taxes and internal regulations, highlighting such distinctions ignores the express legal requirement that there be analogous "private person" liability. Moreover, the question of governmental immunity is of no moment to this Court's analysis. Indeed, the Supreme Court has instructed that the FTCA "requires a court to look to the state-law liability of private entities, not that of public entities, when assessing the Government's liability under the FTCA." *Olson*, 546 U.S. at 46.

[11] The purpose of Ala. Code § 31-9-17 is to immunize those who provide free shelter in response to a disaster from negligence liability. This provision seems to represent a public policy choice by the Alabama legislature to encourage the provision of free shelter in the context of an emergency or natural disaster.

Alabama Plaintiffs), at no cost, in connection with the real and ongoing exigencies created by Hurricane Katrina.

### (1) FEMA owned or controlled real estate or other premises, as required by Ala. Code § 31-9-17

It is undisputed in this case that the Government, through FEMA, provided emergency housing units to thousands of homeless disaster victims across the Gulf Coast (including Alabama Plaintiffs) following Hurricane Katrina. (Rec. Doc. 4486, ¶¶ 124, 128, 135, 171). FEMA sheltered displaced residents through the use of FEMA-owned "premises".[12] The EHUs, which were intended and used for habitation, fall within the "other premises" designation.

Although the AEMA does not specifically define the term "other premises," the term "premises" is defined throughout other Sections of the Alabama Code. For instance, in Ala. Code § 13A-3-20 (a criminal law provision), premises is defined as "including any building, as defined in this section." Ala. Code § 13A-3-20(5). The Code goes on to define a building as "[a]ny structure which may be entered and utilized by persons for . . . lodging . . . and includes any vehicle, aircraft, or watercraft used for the lodging of persons . . . ." Ala. Code § 13A-3-20(1). Similarly, in Ala. Code § 35-9A-141 (a section of Alabama's Uniform Residential Landlord and Tenant Act), "premises" is defined as a "dwelling unit." So. 2d 393, 394 (Ala. Civ. App. 1971). Thus, the Court finds that the EHUs at issue in this case squarely qualify as the type of "premises" contemplated by the Alabama Legislature in its enactment of Section 31-9-17.

---

[12] This Alabama law contemplates both "real estate" and "other premises". The Court finds that "other premises" describes a much broader category of property than what would be deemed "real estate."

### (2) FEMA Acted Voluntarily And Without Compensation, as required by Ala. Code § 31-9-17

Here, the Government, through FEMA, provided rent-free emergency housing to otherwise homeless displaced residents after Hurricane Katrina.[13] The Government provided these EHUs for over 44 months, without receiving any form of compensation in return. (See Exhibits 6 to Rec. Doc. 10656; see also Exhibit 7 to Rec. Doc. 10656, pp. 36-37 ("these units are provided at absolutely no cost to the disaster victims . . . Nothing came out of their pockets in terms of the requirements for this. They paid no out-of-pocket costs for this.")). Thus, all Plaintiffs, including the respondents in this motion, were allowed to use FEMA's property as emergency shelters and FEMA received no direct monetary benefit.

Despite Plaintiffs' assertions to the contrary, the Government, through FEMA, was not contractually obligated to provide this emergency shelter, nor was it compelled to act in this way.[14] In deciding to offer displaced residents rent-free EHUs, the Government acted on its own volition.[15] Indeed, Plaintiffs have pointed to no law, mandate, contractual agreement, or other

---

[13] The Plaintiffs argue that the Government's provision of rent-free shelter was not in "like circumstances" with a private person who acts without compensation because the Government collects taxes. However, Plaintiffs concede that they, as recipients of Government-owned emergency shelters, did not pay any money for such assistance "in the direct, payment-to-FEMA sense." (Rec. Doc. 11470, p.3). David Garratt, FEMA Acting Deputy Administrator testified that EHU inhabitants "paid no out-of-pocket costs" to live in the EHUs. (Exhibit 7 to Rec. Doc. 10656, p. 37). While this country's taxpayers, potentially including the Alabama Plaintiffs, helped fund some of the Government's general operations, the Court agrees that such funds are far too attenuated from the Government's provision of EHUs to be considered "compensation" pursuant to Ala. Code. § 31-9-17. To be certain, there was no transactional *quid-pro-quo*, i.e., exchange of money for use of an EHU.

[14] While Plaintiffs seem to recognize in their Complaint that under the Stafford Act the Government's actions are permissive in that FEMA "*may* provide 'direct assistance' in the form of temporary housing units"(Rec. Doc. 4486, ¶ 142, emphasis added), they argue in opposition to the instant motion that the Stafford Act compelled the Government to provide assistance in this case.

[15] The Court finds it important to note that using these EHUs would not have been the Government's first choice. FEMA claims that, initially, it intended to rely primarily on mobile homes

external provision that obligates the Government to provide free shelter to displaced residents.

As the Government notes, the Stafford Act and its related implementing regulations do not affirmatively require the provision of assistance. Further, the Stafford Act does not mandate if/when/how FEMA should provide housing assistance after disasters. For instance, 42 U.S.C. § 5174(c)(1)(B)(I) states that FEMA "*may* provide temporary housing units, acquired by purchase or lease, directly to individuals or households" (emphasis added)). Essentially, while FEMA is permitted by statute to provide emergency housing assistance, a displaced resident does not have an automatic right or entitlement to receive this particular type of housing assistance from FEMA.

While it is true that the Government formed FEMA and set forth various implementing regulations that charge the agency with the responsibility of responding to emergencies, such inherently governmental provisions cannot then be interpreted to vitiate state law protections and authorize suit where a private person would otherwise be shielded. Doing so would improperly place the Government "in a differently situated position than private parties . . . thereby undermining the conditions precedent to the United States' waiver of sovereign immunity in the FTCA." *Hill v. SmithKline*, 393 F.3d 111, 1118 (10th Cir. 2004). Plaintiffs' argument that a private person would never be expected to adhere to all of the policy objectives, regulations, and guidelines that they claim shaped the Government's provision of EHUs is not persuasive. This

---

wherein disaster victims could be re-located to mobile home cities set up throughout the affected areas. (Ex. 8 to Rec. Doc. 196, ¶6). However, for a myriad of reasons, state and local officials apparently objected to this plan, asserting that disaster victims should be placed in, or as close as possible to, their devastated communities to encourage and promote rebuilding and recovery efforts. (*Id.*). In an attempt to satisfy these objections, the Government, through FEMA, made the decision to rely primarily upon travel trailers and park models which, unlike mobile homes, could be placed in, or in close proximity to, the devastated communities. (*Id.*).

14

Court is tasked with looking past the inherent differences between the Government and a private person in order to find the most reasonable private person analogy. *LaBarge v. County of Mariposa*, 798 F.2d 364, 366-69 (9th Cir. 1986). The Fifth Circuit mentioned in *Ridgley v. FEMA*, 512 F.3d 727, 736 (5th Cir. 2008), that mandatory language is wholly absent from FEMA's implementing regulations that discuss the provision of assistance. The *Ridgley* Court discussed all of FEMA's implementing regulations, beyond just the rental assistance provision, and stated "[t]here is simply no indication that the regulations constrain FEMA's discretion to the point that it is bound to provide assistance to all eligible individuals").[16]

Further, to address Plaintiffs' assertions that they had a vested property interest in FEMA-provided assistance, the Court finds additional support in a recent opinion which dealt specifically with EHUs and confirmed that "[b]ecause of its institutional discretion, FEMA's emergency housing assistance does not create an entitlement in the plaintiff to a property interest in that assistance." *Johnson v. FEMA*, 2009 WL 1208639, at *1 (E.D. La. May 1, 2009) (Feldman, J.) (denying a plaintiff's request for an injunction to stay in his Government-provided emergency shelter). Also, following Hurricane Andrew, the Court stated in *Lockett v. FEMA*,

---

[16] While Plaintiffs rely upon *McWaters v. FEMA*, 436 F.Supp. 802 (E.D. La. 2006), for the proposition that FEMA is compelled to render housing assistance under the Stafford Act, this Court first notes it is not bound by another district court decision. Further, the language in *McWaters* on this issue is significantly weakened by the Fifth Circuit's decision in *Ridgley*, which was rendered two years after the *McWaters* opinion. Indeed, this Court has previously stated, "[A]s for the applicability of the *McWaters* case to the scenario before this Court, it should be noted that the Fifth Circuit recently held that the Stafford Act, and its accompanying regulations governing the Individual Assistance housing program, even for persons who qualify for housing assistance, does not, in and of itself, create an entitlement to housing assistance." *In re: FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488 (E.D. La. 2008) (citing *Ridgley*, 512 F.3d at 734-45. Further, *McWaters* did not deal with the Government's provision of emergency housing units. *McWaters* dealt specifically with the continuation and administration of certain programs already set in place. *Id.* at 236. This Court agrees that even if the Government had established a pattern or practice of providing emergency shelter to certain qualified individuals, this does not make its decision to initially provide shelter any less voluntary.

836 F.Supp. 847, 854 (S.D. Fla. 1993), that the Stafford Act "clearly shows that assistance is discretionary, not mandatory".

Based on the above, the Court agrees with the Government that when FEMA chose to provide emergency shelter to displaced residents following Hurricane Katrina, it acted of its own volition. Even if the Government undertook the task of assisting the public in an emergency (and had an agency to do so), that fact does not make its decision to undertake that task mandatory, or in other words, non-voluntary. Further, even if it could be said that the Government was obligated to provide this assistance, the Government imposed such an obligation to provide assistance on itself, thereby rendering the obligation as one that was voluntarily undertaken by the Government.

### (3) FEMA permitted the use of such premises, as required by Ala. Code §31-9-17

First, the Alabama Plaintiffs do not appear to dispute that this element of the statute is satisfied. Indeed, Ala. Code § 31-9-17 immunizes all private persons who, as owners/controllers of real estate or other premises, do any one of the following three things: (1) grant "a license or privilege"; (2) permit "the designation"; or (3) permit the "use of the whole or any part or parts of such real estate or premises". See Ala. Code § 31-9-17. Here, it is undisputed in this case that the Government, through FEMA, allowed thousands of homeless displaced residents (including Alabama Plaintiffs) to use FEMA-owned EHUs in direct response to Hurricane Katrina. (See Rec. Doc. 4486, ¶¶ 124, 135, 150). Indeed, Plaintiffs assert that their usage or occupancy of these same EHUs caused certain injuries. (See Rec. Doc. 4486, ¶¶ 179, 207).

### (4) FEMA acted "for the purpose of sheltering persons during an actual disaster", as required by Ala. Code § 31-9-17

The provisions of Ala. Code 31-9-17 apply to acts taken "for the purpose of sheltering

16

persons during an actual disaster." Here, Plaintiffs allege that they were provided EHUs after what they describe as "the greatest natural disaster in the history of the United States." (Rec. Doc. 4486, ¶¶ 128, 171). Although the AEMA does not define the term "disaster," the term should be liberally construed per the Act's own express requirement. See Ala. Code § 31-9-23 (entitled "Chapter to be liberally construed") (emphasis added). This Court agrees with the Government that allowing a broad interpretation of the term is consistent with the Act's intent to respond to and recover from natural disasters and other events. The Governor of Alabama declared an official state of emergency in Alabama due to the devastation inflicted on the state by Hurricane Katrina. (Exhibits 1 and 4 to Rec. Doc. 10656). Further, the President of the United States declared a major disaster for the state of Alabama (Disaster Number 1605) based upon the extensive and lasting damage caused by Hurricane Katrina. (Exhibits 2 and 8 to Rec. Doc. 10656).

In this case, Plaintiffs assert that they were provided EHUs because "[t]he residence of each Named Plaintiff was rendered unhabitable following Hurricanes Katrina and/or Rita" and each Plaintiff was left "homeless." (Rec, Doc. 4486, ¶¶ 128, 171). The emergency conditions of Hurricane Katrina, and its resulting housing shortage, continued to exist long after the Hurricane made landfall. Thus, the Court concludes that the EHUs[17] at issue in this Motion were provided to the Alabama Plaintiffs by FEMA "during or in recovery from" Hurricane Katrina, a natural disaster, and according to many, including Plaintiffs, "the greatest natural disaster in the History of the United States." (Rec. Doc. 4486, ¶ 171).

---

[17] It is appropriate to note that this term has been used throughout this MDL, even by Plaintiffs, and is an acronym for "*emergency* housing unit".

## V. CONCLUSION

Thus, for all the reasons stated herein, because Ala. Code § 31-9-17 would apply to a private person under similar circumstances, the Government is shielded from all remaining FTCA liability. Accordingly,

**IT IS ORDERED** that **Defendant United States' Motion to Dismiss the FTCA Claims of All "Alabama Plaintiffs" for Lack of Subject-Matter Jurisdiction Based Upon No Analogous Private Liability (Rec. Doc. 10656)** is **GRANTED**. Thus, all of Alabama Plaintiffs' FTCA claims are dismissed for lack of subject matter jurisdiction.

New Orleans, Louisiana, this 9th day of <u>August</u>, 2010.

_____
**KURT D. ENGELHARDT**
**United States District Court**