1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:   FEMA TRAILER FORMALDEHYDE    *    Docket MDL 1873 (N)
              PRODUCTS LIABILITY           *
6             LITIGATION                   *    New Orleans, Louisiana
                                           *
7    This Document Relates to All Cases    *    January 17, 2008
     * * * * * * * * * * * * * * * * * *   *

8

9
                        STATUS CONFERENCE BEFORE THE
10                      HONORABLE KURT D. ENGELHARDT
                        UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13

     Plaintiffs' Co-Liaison          Gainsburgh Benjamin David
14     Counsel:                        Meunier & Warshauer, LLC
                                      BY:  GERALD E. MEUNIER, ESQ.
15                                         JUSTIN I. WOODS, ESQ.
                                      1100 Poydras Street, Suite 2800
16                                    New Orleans, Louisiana 70163

17

     Defendants' Liaison             Duplass Zwain Bourgeois
18     Counsel:                        Morton Pfister & Weinstock, APLC
                                      BY:  ANDREW D. WEINSTOCK, ESQ.
19                                    3838 N. Causeway Blvd., Suite 2900
                                      Metairie, Louisiana 70002
20

21   Official Court Reporter:        Toni Doyle Tusa, CCR, FCRR
                                     500 Poydras Street, Room HB-406
22                                   New Orleans, Louisiana 70130
                                     (504) 589-7778
23

24

25   Proceedings recorded by mechanical stenography; transcript
     produced by computer.

<u>**PROCEEDINGS**</u>

**(January 17, 2008)**

1
2
3      **THE DEPUTY CLERK:**  All rise.
4          **THE COURT:**  Good morning.  As you were.  First of
5  all, I want to welcome all of you-all.  This is the first
6  status conference that we have had with all counsel in what we
7  have come to call the *FEMA Trailer Formaldehyde* multidistrict
8  litigation.
9          I have been working with liaison counsel.  They
10 have been working very diligently to try to get the case off to
11 a start where we can encounter issues as quickly and as
12 efficiently as possible.  My goal in this case is to try to get
13 these issues resolved as promptly as possible and get the case
14 ultimately concluded by way of any of the options of motion
15 practice, settlement, or by trial.  So my goal is to try to get
16 to the trial portion of the case as quickly as possible if it's
17 not otherwise resolved in the other two methods.
18         I have also just met with the committees that
19 have been appointed.  I think that we are off to a good start
20 in terms of the game plan that we are going to follow.  In a
21 second here, I am going to turn it over to liaison counsel to
22 present to you that game plan.
23         We have an agenda which we are going to work
24 through.  My goal is to try to accomplish this agenda in one
25 hour.  That's not to discourage questions or comments.  It's

1   just that we do have an armful of things we want to touch on by

2   way of information that you need to be aware of.  I don't want

3   to get so bogged down that you don't get the information that

4   you need before you leave here today.

5             I do intend to have meetings such as this on a

6   monthly basis once the case is further developed.  You can go

7   ahead and mark this down now.  We have chosen as the next

8   status conference for all counsel the date of March 20, 2008,

9   at 10:00 a.m.  That is in the neighborhood of 60 days away.

10  Quite honestly, when you look at the schedule that's been

11  developed by liaison counsel, I don't see the purpose in us

12  meeting sooner than that given the work that's going to be done

13  between now and then.

14            As I indicated, however, we would like to meet

15  monthly with all of you-all so that you are completely apprised

16  of what's going on in the case and have the opportunity to have

17  input at a meeting such as this.  I would encourage all of

18  you-all to have input, communicate with those on the committees

19  and with liaison counsel within the framework that's

20  established.  I think it's the most efficient way to get the

21  case moving forward.

22            I made reference in the earlier order about the

23  *Manual for Complex Litigation*.  I have and will repeatedly

24  consult with it and encourage you to do so as well.  It's going

25  to be the road map, I think, ultimately of the considerations

1   that are given at various junctures in the case.  If you don't

2   have that or you don't have access to that, you probably should

3   see to it in the near future that you consult with it and know

4   what's in it.  That will be sort of the toolbox that we will

5   use to get the case moving forward.

6              All right.  We have several items on the agenda

7   and I don't want to delay further.  Mr. Weinstock, you were

8   going to approach the issue of the report of case inventory.  I

9   will ask you to go ahead and do that.  That podium is facing

10  me, but if you want to either turn it around or just operate

11  from this side of it so the group can see you.

12      **MR. WEINSTOCK:**  At this time there are 18 cases in

13  the MDL that contain a total of 723 plaintiffs.  The cases have

14  all come from one of the districts in Louisiana, although we

15  understand that there will be some additional filed in

16  Mississippi shortly.

17             Judge, as long as I'm here, No. 2 is an item

18  that really is a defense item.  It has to do with the tag-along

19  cases.  I think at this time defendants are satisfied that

20  logistically we are where we need to be with the tag-along

21  cases, but we just need to be cognizant of any new filings.  It

22  really falls more to us to make sure it gets to this Court for

23  our protection, although the clerks do tend to pick them up.

24      **THE COURT:**  Okay.

25      **MR. MEUNIER:**  Good morning, Your Honor.  May it

1     please the Court.  Jerry Meunier of Gainsburgh Benjamin as

2     plaintiffs' co-liaison.

3                    Before I discuss Pretrial Order 2, with the

4     Court's permission, I would like for my co-liaison counsel and

5     the six members of the plaintiffs' steering committee to

6     briefly introduce themselves for the people that are here.

7              **THE COURT:**  That's a good idea.  We'll also do that

8     at defense counsel's table.

9              **MR. WOODS:**  Justin Woods, Gainsburgh Benjamin,

10    co-liaison counsel.

11             **MR. D'AMICO:**  Frank D'Amico Jr. with the PSC,

12    co-chair of the expert and science and the claims committee.

13             **MR. PENTON:**  Ronnie Penton, co-chair of the trial

14    committee.

15             **MR. MORELAND:**  Matthew Moreland of the Becnel Law

16    Firm, co-chair of the finance and law committee.

17             **MR. BENCOMO:**  Good morning, Your Honor.  If the Court

18    please.  Raúl Bencomo, co-chair of the media and public

19    relations committee and a member of other committees, Bencomo &

20    Associates.

21             **MS. NELSON:**  Good morning, Judge.  I'm Linda Nelson

22    with the law firm of Lambert & Nelson.  I am co-chair of the

23    discovery committee.

24             **MR. BUZBEE:**  Tony Buzbee, various committees, and the

25    only lawyer on the committee from Texas, Your Honor.

 1          **MR. MEUNIER:**  Do the defendant liaison counsel want
 2    to be introduced?
 3          **THE COURT:**  Yes.  Mr. Weinstock.
 4          **MR. WEINSTOCK:**  Andy Weinstock, liaison counsel.
 5          **MR. HINES:**  Richard Hines, Your Honor, from Atlanta,
 6    liaison counsel representing Fleetwood.
 7          **MR. SAPORITO:**  Good morning again, Your Honor.  Jerry
 8    Saporito also representing Fleetwood, etc.
 9          **MR. GIEGER:**  Ernie Gieger representing Forest River.
10          **MR. PERCY:**  Jim Percy, Jones Walker, on the liaison
11    committee representing Starcraft, Pilgrim, Jayco, Keystone, and
12    Thor.
13          **MR. SCANDURRO:**  Tim Scandurro, Scandurro & Layrisson,
14    on the liaison committee representing Gulf Stream.
15          **MR. THARP:**  Stewart Tharp on the defendants'
16    committee representing Coachmen Industries.
17          **THE COURT:**  Thank you.  Mr. Meunier, if you would go
18    forward, then, with the pretrial order that we have established
19    between liaison counsel.
20          **MR. MEUNIER:**  Thank you, Judge.  Pretrial Order 2 was
21    submitted after discussions and negotiations with defendant
22    counsel through their liaison, and we arrived at a jointly
23    acceptable pretrial order that we submitted to the Court.
24               Earlier this week proposed Pretrial Order 2 was
25    also circulated by Mr. Woods to all plaintiffs' counsel of

1    record.  If any plaintiffs' counsel are here and did not

2    receive it, we would ask that they give Mr. Woods their contact

3    information today so that we can be sure they are included on

4    any further mailings.  The order, Judge, speaks for itself, but

5    with the Court's permission, I do want to highlight a few of

6    its more salient provisions.

7                By February 29 the plaintiffs will file a master

8    complaint which will incorporate and supersede all prior

9    pending actions in this MDL.  Whether that master complaint

10   names, in addition to the currently named defendant

11   manufacturers, FEMA or the United States as a defendant will

12   depend upon whether by that time the required six months have

13   elapsed for the filing of the requisite administrative claim

14   form, Form 95, under the FTCA.  As we have advised the Court,

15   the defendant manufacturers, and counsel for the United States

16   as well, the plaintiffs do intend in this MDL to assert claims

17   against the United States through FEMA under the FTCA.

18               I should add, Judge, that in the *Nelson* case,

19   which was filed in the Western District, there is a pending

20   motion, as the Court knows, to name FEMA as a defendant on

21   grounds other than the FTCA, which motion we understand may be

22   addressed by the Court today.  Obviously, to the extent that

23   that motion might be granted and FEMA is added in that case,

24   then the master complaint at the end of February will

25   incorporate those claims against FEMA as well.

1          Pretrial Order 2 then provides for 12(b) motion
2  practice by defendants, then a master answer by defendants,
3  then an initial round of master interrogatories and requests
4  for production with the express provision, as directed by
5  Your Honor, that the parties have an obligation to confer
6  periodically as discovery proceeds and arrive at as many
7  factual stipulations in this case as possible.  The initial
8  written discovery does not, obviously, contemplate going into
9  depositions of experts and other witnesses pending FEMA's
10  appearance in the case as a defendant so that those
11  depositions, etc., can be properly inclusive.
12          Finally, Judge, what I mention about
13  Pretrial Order 2 is its provision for plaintiff fact sheets,
14  the form for which the parties are ordered to negotiate by
15  February 29.  Each named plaintiff in the MDL will complete
16  these fact sheets and provide them to the defendants by
17  July 16, 2008.  If this can be accomplished timely, we do
18  believe this database of essential claims information for all
19  named plaintiffs will be of enormous help to the Court and to
20  all parties in the effective management of this MDL.
21  Otherwise, Judge, I would just urge all plaintiffs' counsel to
22  become familiar with the provisions in Pretrial Order 2.
23          **THE COURT:**  All right.  Thank you, Mr. Meunier.
24          Several motions were filed in connection with
25  the original complaints.  Those motions, as I think I indicated

1    in my previous order, are going to be deferred until after we

2    get the master complaint filed, and then we will go ahead and

3    take up those motions.  It probably would be better to go ahead

4    and term those motions and have them refiled.  Even if they are

5    not grammatically changed, go ahead and have them refiled

6    pursuant to the scheduling order that Mr. Meunier just covered.

7              Those motions are pending and we're cognizant of

8    those.  Obviously, they have not been ruled on or set for

9    hearing.  I envision that once they are filed and are teed up

10    for the Court's disposition, we may have oral argument on some

11    or all of them.  Of course, we'll encounter that on the

12    calendar once we get to that juncture.

13              With regard to the motion to amend in *Nelson*

14    that Mr. Meunier referenced, there was a motion to amend the

15    complaint so as to add FEMA as a defendant.  I understand that

16    counsel for FEMA is here today.  Am I correct in that regard?

17    **MR. MILLER:**  Henry Miller with the United States

18    Department of Justice.  With me also is Michelle Boyle from the

19    Department of Justice, Jordan Fried from FEMA, and Jan Jones

20    from FEMA.

21    **THE COURT:**  Good morning.

22    **MR. MILLER:**  Pursuant to the Court's invitation, we

23    are here.

24    **THE COURT:**  Thank you very much.  Would you-all at

25    some point, preferably today, want to oppose the motion or

1  refer your rights to argue the various issues that I think we

2  all anticipate and that you have already mentioned to me in

3  connection with motion practice?

4              I will tell you, in the interest of moving the

5  case along, my intent is to allow the amendment, reserving of

6  course to FEMA the right to argue jurisdiction and any other

7  issues under Rule 12 or any other provision that FEMA relies

8  upon in connection with the complaint such as it will be filed.

9              In other words, I intend to grant the motion to

10 amend but also order that any claim against FEMA be stated in

11 the master complaint which, as Mr. Meunier has suggested, has

12 not been filed but will be filed pursuant to the schedule.  So

13 you would not have a response to that complaint until the

14 master complaint is filed.  Am I clear on that?

15      **MR. MILLER:**  I understand what you are saying,

16 Your Honor.  I would urge you not to take that course of action

17 because I think the Supreme Court's decision in *McNeil* very

18 clearly holds that taking jurisdiction is improper until the

19 claims are exhausted, and that any involvement or requiring the

20 government to be involved in a case prior to the exhaustion of

21 the administrative remedies is improper and the Court should

22 not do that.  That's my understanding.

23              In this case, at least to let everybody know, we

24 have only 20 administrative claims that have been filed against

25 the United States that we consider legally sufficient.  There

1    are another 20 that do not meet what we think is a legally

2    sufficient requirement.  So, at best, when they exhaust the

3    remedy, we are going to be in here for 20 cases, not 723.

4              **THE COURT:**  Let me ask you:  With regard to those

5    that are properly in the FTCA process that are going to be

6    treated administratively, are we not close or even beyond the

7    time period with regard to at least one or two of those?

8              **MR. MILLER:**  Your Honor, my understanding and from

9    our review of the records is the first two will pass the

10   six-month exhaustion stage on or about February 3 and the next

11   ones come ripe probably at the end of February.  Of these 20,

12   the latest are probably, I believe, in May sometime.

13             **THE COURT:**  Well, let me point out again I think

14   Mr. Meunier mentioned that the master complaint will be filed

15   on or before February 29.  I understand your argument, but it

16   might well be that we will have at least one individual who has

17   completed that process and that argument would not be

18   applicable to that particular person.

19             **MR. MILLER:**  Definitely not that one, but if you are

20   going to join us at this point in the case, that's what's

21   improper.  If they join us in April and they serve the

22   complaint at that point in time, then it will be appropriate as

23   to the people who have exhausted.  Under *McNeil*, my reading of

24   it is it would be improper to join the United States as a

25   defendant until a claim is exhausted.  The Supreme Court dealt

1   with that situation and it views such a filing as a nullity.

2           THE COURT:  Did I understand you correctly that

3   sometime in early February we will have at least one person who

4   would qualify for filing a claim in this case?

5           MR. MILLER:  As of February 3 or thereabouts,

6   Your Honor, a party can sue the United States.  There are two

7   claimants who will have exhausted their administrative

8   remedies.

9           THE COURT:  Well, if I were to grant the motion

10  provisionally, as I indicated, any such claim be set forth in

11  the master complaint to be filed on or before February 29,

12  assuming that it's not filed prior to February 3, wouldn't that

13  negate the argument you're making under *McNeil*?

14          MR. MILLER:  I disagree.  I think logistically what

15  you can say is:  "I'm going to let parties add the

16  United States as their administrative claims are exhausted."

17               Obviously, we would be a tag-along, however it's

18  filed, but for us to become a party at this point for any

19  purposes would be improper.  That's our position.

20          THE COURT:  Well, maybe I'm not being clear.  Even as

21  to the one person who we seem to agree is going to have met the

22  exhaustion requirement by early February -- I understand your

23  argument that there are many who have not even begun that

24  process and there are many that are still early in the process

25  and perhaps they should not be allowed to assert a claim, but

1   if I have one person here who has met the exhaustion
2   requirement, wouldn't that person be --
3            MR. MILLER:  Let me step back.  The motion that was
4   brought by I think it's the Rodney & Etter law firm in the
5   *Nelson* complaint, none of those persons have administrative
6   claims that are legally sufficient.  So as to those persons,
7   they have got to file administrative claims and wait six months
8   from that date anyway.  So as to them it would be clearly
9   improper.
10           THE COURT:  I hear you.
11           MR. MILLER:  As to the other persons, as of
12  February 3 or 4, when there's exhaustion, that's when we can be
13  brought in as a party.  As for everyone else, if you want to
14  say, "I'm going to grant this motion at the time that the
15  claims are exhausted to join the United States," that's fine,
16  but we are not a party at this point, however, until that
17  happens.  The Court would lack jurisdiction to make us a party.
18           THE COURT:  Well, I hear what you are saying, and I
19  think that that is certainly a valid distinction to make.  If
20  the movant on this motion does not qualify on those grounds,
21  the Court can deny that motion, but the Court can also at this
22  juncture grant leave, insofar as this master complaint is
23  concerned, that any individuals who have met the exhaustion
24  requirement might at that juncture assert a claim in this case.
25           MR. MILLER:  Definitely, and that's what we would

1    expect to happen.

2         **THE COURT:**  Well, that's what I'm looking for.  I

3    mentioned early on, at the outset of our meeting here today,

4    that I want to try to move the case along.  Now, those other

5    individuals who either haven't started the process or who are

6    so early in the process, chances are -- I think there's a

7    certainty that the position of the government, with regard to

8    any number of issues in motion practice, are going to be

9    identical to this first plaintiff to assert a claim shortly

10   after February 3.

11        **MR. MILLER:**  Yes, Your Honor.

12        **THE COURT:**  So what I'm trying to do is to say that

13   we can encounter those issues with one as well as we can

14   encounter them with 20, or 200, or however many people are

15   going to comply.

16        **MR. MILLER:**  I agree, Your Honor.  I think in this

17   case what the government intends to do, once we are joined as a

18   party and service is effected pursuant to Rule 4, we would

19   intend to probably file a motion to dismiss based upon the --

20        **THE COURT:**  Right.  I reserve all rights, of course,

21   to the government to file whatever motion practice in response

22   to the complaint.  What I need to get, though, in order to

23   bring these issues before the Court, is a plaintiff who has met

24   the exhaustion requirement.  We will have at least one, perhaps

25   two that can be filed in this master complaint.  It will be

1    clear that those claims are asserted only for the individuals.

2    Once the Court gets the motion practice and rules on it, then

3    those rulings will be applicable probably to all of the other

4    plaintiffs who come behind them.

5              **MR. MILLER:**  I think that would work.

6              **THE COURT:**  Well, to be clear on the record, then,

7    I'm denying the particular motion filed in the *Nelson* case.

8    However, I am instructing plaintiffs' counsel that as to the

9    individual or individuals who have met the exhaustion

10   requirement, they can assert a claim in the master complaint to

11   be filed on or about February 29.

12             **MR. ETTER:**  Your Honor, if I may, I'm John Etter,

13   counsel for the *Nelson* plaintiffs.  I remind the Court that the

14   *Nelson* plaintiffs not only are seeking Federal Tort Claims Act

15   damages but also injunctive relief --

16             **THE COURT:**  I'm going to get to that.

17             **MR. ETTER:**  -- and that injunctive relief can be

18   pursuant to jurisdiction under the Administrative Procedure

19   Act.

20             **THE COURT:**  I'm going to get to that.  Right now I'm

21   focused primarily on the motion to amend the complaint.

22             **MR. MEUNIER:**  Your Honor, I believe the suggestion,

23   though, is that if it's not an FTCA claim that is sought to be

24   included by an amendment, then the prerequisite of the

25   administrative claim form does not apply and that these

 1    plaintiffs should be allowed to amend the government in now for

 2    the purpose of seeking injunctive relief, pretermitting the

 3    question what defenses and motions might be in response to that

 4    amendment.

 5              THE COURT:  You can assert those claims as well.  I

 6    am trying to get past the issue Mr. Miller raised with regard

 7    to simply the FTCA claims.  I'm cognizant -- and I think he is

 8    as well -- that the gamut of claims that the plaintiffs might

 9    seek to assert might go well beyond the scope of FTCA.  Those

10    will be dealt with, I'm sure, by motion practice at some

11    juncture.

12              I understand that we are not talking about only

13    FTCA claims.  What we are talking about, though, at this point

14    is adding FEMA as a defendant.  The one particular issue that

15    he has argued with regard to an amendment is the exhaustion

16    requirement.  I'm trying to remove that impediment for at least

17    one plaintiff so that the Court can take up the broader issues.

18              MR. ETTER:  We would just note that our motion to

19    amend in *Nelson* was first filed, I believe, in July, and none

20    of the present defendants has ever opposed that motion.

21              THE COURT:  I understand.  I understand.

22              MR. ETTER:  Thank you, Your Honor.

23              MR. MEUNIER:  Your Honor, the other issue that I

24    suppose is raised by Mr. Miller's comments is we need to be

25    clear, I guess, what the process is going to be for the

1   government in response to what it considers to be deficient

2   Form 95s.  In our group we are not aware of receipt of any

3   deficiency letters.  Can we confirm that the government is

4   promptly declaring what it considers to be a deficiency when it

5   receives a deficient Form 95?

6              **MR. MILLER:**  Counsel, just for everyone's

7   edification, the requirements for a Form 95 are quite simple:

8   Naming the claimant; identifying the underlying basis for the

9   claim; and a sum certain amount that they require or are

10  demanding.  You can't put "to be determined," "possibly this

11  amount."  It has to be a sum certain.  Those are the

12  requirements.  Anyone who has filed an administrative claim

13  that doesn't meet those requirements, it's legally

14  insufficient.  It's quite clear.  The Fifth Circuit has ruled

15  on this quite clearly.

16              I do not know what FEMA's process is in terms of

17  issuing letters.  I know that to the extent I receive the

18  claims and I have notice of them, I issue letters.  I sent

19  Rodney & Etter two letters explaining that their administrative

20  claims were insufficient and that they should refile and that

21  they should dismiss this motion to amend to add the

22  United States.  They chose not to do that.  That's their

23  choice.  As soon as I find out that a claim is legally

24  insufficient and it's been filed or brought in the lawsuit, I

25  notify counsel.

1          **MR. MEUNIER:**  The other question I have, Judge, which

2     bears on your comment that by February 3, according to this

3     information, there should be a plaintiff who could be included

4     in the master complaint naming the government under the FTCA,

5     is the government willing to provide to us, as Court-appointed

6     counsel, the identity of either the attorney or the individual

7     whose claim the government believes will be through the

8     six-month waiting period as of February 3?

9          **MR. MILLER:**  Your Honor, the answer to that is no.

10    That's Privacy Act information, and that person is represented

11    by counsel.  One would assume that he knows what he wants to

12    do, whether he wants to pursue that claim and file suit or if

13    he doesn't want to pursue that claim and file suit.

14         **THE COURT:**  Well, can you not disclose the name of

15    the attorney who is handling the claim and let that attorney

16    make a decision as to whether or not his client's privacy would

17    include not participating in this case?

18         **MR. MILLER:**  Your Honor, at that point -- I'm not a

19    privacy rights expert, so I would be stepping out of my bounds

20    to say one way or the other.

21         **THE COURT:**  Well, I'm not asking you to be a privacy

22    right expert.  I'm just asking you to tell them the name of the

23    attorney.  The attorney can say, "Look, I don't want to talk to

24    Mr. Meunier.  I don't want anything to do with New Orleans and

25    the MDL," or the attorney might be willing to give him the

1    information.  I'm not going to let the case get bogged down if
2    we can avoid that problem.
3                    It seems to me the attorney for the party can
4    determine and protect the privacy of the individual that the
5    attorney represents.  So if you don't feel comfortable, I
6    understand you don't feel comfortable blurting out names of
7    claimants, but we are talking about the name of an attorney who
8    represents someone who has filed a claim.  That doesn't seem
9    like an unreasonable disclosure.
10           MR. MILLER:  Your Honor, off the top of my head, I
11   don't see any objection to doing that.  I just haven't
12   considered the ramifications one way or the other.  I would
13   like to at least be able to have the opportunity to mull it
14   over.  If there's not a problem with FEMA handing over that
15   information, we will obviously provide it.  I will provide it
16   to plaintiffs and defendants' liaison as well.
17           THE COURT:  The name of the attorney we are talking
18   about.
19           MR. MILLER:  I understand.
20           MR. MEUNIER:  That's all we require.
21           THE COURT:  Would you let Mr. Meunier know that by
22   Tuesday --
23           MR. MILLER:  Certainly, Your Honor.  Sure.
24           THE COURT:  -- if you would, of the decision.  The
25   attorney can either talk to Mr. Meunier or not, but I think we

1   can all trust that that attorney will have the best interests,

2   including the privacy interests, of his or her client at heart.

3           **MR. MILLER:**  I'm inclined to agree with you,

4   Your Honor.

5           **THE COURT:**  Sir.

6           **MR. BECNEL:**  Daniel Becnel, Your Honor.  I wanted to

7   give the Court some precedent to deal with this very issue.  It

8   occurred 33 years ago in Washington, DC, *In re: Swine Flu*,

9   which was one of the first MDLs in the country.

10          Judge Gearhart Gisel, who was the judge in that

11  MDL, ordered the U.S. government, because they were the main

12  party defendant in that vaccine case, to participate

13  immediately in discovery, and ordered the DOJ to participate in

14  discovery to allow the NIH and the CDC to produce the documents

15  dealing with that vaccine.  I just wanted the Court to be aware

16  of that first MDL that dealt with the very issue because the

17  defendant was the U.S. government because of the fact that they

18  had granted immunity to all of the vaccine manufacturers.

19          **THE COURT:**  I appreciate that.  I've had some

20  conversations with liaison counsel and actually Mr. Miller

21  prior to today.  I understand that the issue is not one that is

22  cut and dry from a simple nonparticipation point of view, that

23  there have been cases prior, including the one that you cite,

24  where the government has been involved on the front end.  We'll

25  certainly encounter that.  I'm hoping when we do get to the

1   issue which I think is next, protective order for preservation
2   of evidence and confidentiality order, that counsel who are
3   negotiating that will be cognizant of that precedent such as it
4   would apply in this case.
5                    Mr. Meunier and Mr. Weinstock indicated to me
6   that they had been in contact with Mr. Miller and counsel for
7   the government regarding certain information on trailers and
8   mobile units that have been either in the process of being
9   taken out of use or the general location of where these units
10  might be if they have been taken out of use prior.  I
11  understand that you-all are going to have additional
12  conversations about that.  You're aware of this, Mr. Miller.  I
13  have scheduled a meeting with you and with liaison counsel to
14  occur on January 30 at 10:45 to discuss precisely that issue,
15  among others, relative to what can be done.
16                    I understand the sensitivities that the
17  government may have, particularly with regard to privacy, but I
18  would think that there's an interest in trying to preserve
19  information and make it available, such as it can be, so that
20  it can be used in this litigation.
21                    Mr. Miller, you're aware about that meeting?  I
22  think counsel told me they talked to you about that.
23          **MR. MILLER:**  They certainly did.  I'm available that
24  day and I'm scheduled to be here.
25          **THE COURT:**  Anything that can be done to resolve the

1    issues prior to then would be greatly appreciated.  My

2    expectation is that you-all would have conferred quite a bit

3    and perhaps resolved or established some types of protocols,

4    such as you have done already on the one issue that we have

5    had, to try to resolve that prior to that date so that we can

6    discuss and review the procedures that are going to be in

7    place.

8              **MR. MILLER:**  I would point out to the Court, Judge,

9    the United States is trying to work with plaintiffs and liaison

10   counsel to make the trailer available, reasonably governing the

11   privacy issues.  In this sense because the United States at

12   this stage can only be joined in 20 cases at most, 20

13   plaintiffs at most, I think the appropriate procedural

14   mechanism, if there becomes a dispute that we can't negotiate

15   through, is not a protective order because the truth is for us

16   being a party, we are only going to be a party as to those 20.

17             This is why this is different from the

18   *In re: Swine Flu* litigation.  We are not the primary defendant

19   and we can't be the primary defendant at this point in time.

20   The appropriate way is to file a subpoena against the

21   United States requesting the material that there is a dispute,

22   that we basically have friction over.  That will probably

23   present the issue to the Court for resolution one way or the

24   other.  That's my understanding.  Then the Court can weigh the

25   Privacy Act concern.  The Court can weigh and balance those and

1  determine what is the appropriate way.  In the meantime, I

2  believe most of this might be able to be resolved just through

3  negotiation, which obviously is the best way for everybody.

4          **THE COURT:**  Well, I agree with you on that.  I think

5  there are certainly going to be some mechanisms available to

6  the Court, either by way of its own implementation based on

7  motion practice or by way of agreement, and I certainly

8  appreciate the creativity and intellect of all of you present.

9  There are a number of ways all of this can be done to satisfy

10 the respective concerns, again particularly of privacy, the

11 confidentiality orders, in whole or in part, over certain

12 information, over redaction.  If it's a tiered protective order

13 that's necessary, I think there's a way that we can get to a

14 point where there's a comfort level on all sides.

15          I certainly encourage you to continue to talk

16 about how that can be done because I'm going to be looking to

17 you-all for solutions as to how it can be done.  I have some

18 ideas of my own, but I much prefer you-all to establish a

19 workable framework such that information can be shared.

20          **MR. MILLER:**  We have already started that process,

21 Your Honor.  To give the Court a head's up, I'm actually going

22 to be out of the country starting tomorrow through Sunday the

23 27th and so most of these issues will be dealt with by

24 Ms. Boyle and FEMA counsel in my absence.  I'll be back up to

25 speed by the time I come down at the end of the month.

1      **THE COURT:**  Thank you.  This touches on what
2  Mr. Etter had raised, also, which we are going to get to
3  relative to the preservation of evidence.  I'll get to your
4  issues in a second.

5          Mr. Meunier, I think the next thing we have is
6  the plaintiff fact sheet, if I have not passed over anything.
7  Would you like to take that up.

8      **MR. MEUNIER:**  Yes, Your Honor.  As I mentioned, the
9  burden on plaintiffs of responding to full-fledged sets of
10  interrogatories under the Federal Rules is obviously
11  significant.  I'm pleased to report that we have been able to
12  discuss this issue with defendant liaison and we have arrived
13  at what we feel is a fair solution, which is a plaintiff fact
14  sheet.

15          The form of that sheet is obviously subject to
16  our negotiating effort.  If we can't work that out, we will
17  submit those issues to the Court.  But as I mentioned earlier,
18  the timetable is that the form is decided by the end of
19  February and then by July 16, 2008, the fact sheets are
20  completed.  Obviously, it's done on a rolling basis in that it
21  applies to named plaintiffs as they come into the MDL.

22          These fact sheets, Judge, the reason we think
23  it's so important to get this information established early is
24  that if the Court contemplates in this case a trial plaintiff
25  selection protocol, bellwether trial, representative cases

1   actually being tried on the merits, we think it's important

2   that early on we establish the database, we establish the

3   profile that allows us to pick representative and instructive

4   plaintiffs.

5               As the Court has pointed out, this case perhaps

6   is unique from other mass tort cases in the sense that there is

7   a known population, a finite group of trailer residents out

8   there of potential claims.  So we are not talking about the

9   universe; there's a finite number.  Once we can establish

10  within that population who is interested in proceeding, the

11  fact sheet gives us an early tool to bring them forward for the

12  Court and defendants.

13          **THE COURT:**  We are certainly not at this juncture

14  yet, but my intent would be to have those type of exemplar

15  cases that have been identified by counsel and have been worked

16  up such that they can be tried individually, or even tiered

17  cases to the extent there's some breakdown characteristics

18  amongst the group of plaintiffs.  I can't think of any now, but

19  again we are at the threshold of this thing.  It may develop

20  such that we have tiered cases.  My intent would be to try to

21  select some exemplar cases and get those tried as soon as

22  possible, and I think that will help facilitate that if we can

23  identify those people.

24               I mentioned to liaison counsel -- and

25  Mr. Meunier just made reference to it -- this MDL will probably

1    be different than several others that are around right now in
2    the sense that, in the mass tort context, there is a finite
3    number of people, a quantifiable number of people who have
4    availed themselves of the FEMA housing, the units that are the
5    subject of this case, unlike a case where perhaps a product has
6    been sold over the counter and there are untold thousands,
7    hundreds of thousands, maybe even millions of consumers that
8    have purchased that particular product and may have a claim for
9    damages as a result.

10              So the upshot of that fact and why that's
11   significant to me is that we should be able to move this case
12   along maybe a little quicker than that other type of case.
13   We'll see if that bears out.  That's certainly my thought
14   process, that this will be a case that can be developed a
15   little bit quicker than a mass tort case with unknown numbers
16   of plaintiffs who purchased a product and there's no record of
17   their purchase.

18              Anything else, Mr. Meunier?

19              MR. MEUNIER:  Not on the fact sheets, Judge.  The
20   next item is joint notice protocol.  From a plaintiff's
21   standpoint, Your Honor, Rule 23 as a class action device is
22   critically important in the mass tort cases because of the
23   unique procedural protocols and safeguards that Rule 23 offers
24   for absent unnamed claimants.

25              In this case the plaintiffs' counsel are also

1   aware of the delay and the expense involved in class

2   certification, which can delay the merits discovery and the

3   case development pending the Rule 23 analysis by this Court and

4   on appeal.  Especially, Your Honor, in a case such as this,

5   where the plaintiffs have already been through quite a bit --

6   they are displaced citizens and they can ill afford, frankly,

7   the time-consuming litigation process -- we feel we're obliged

8   to consider alternatives that expedite the process and the mass

9   joinder approach, culminating not in a post-certification

10  common issues trial but hopefully in a series of instructive

11  bellwether trials that give the parties information about the

12  different states that are involved, the different manufacturers

13  that are involved and, of course, FEMA and its legal

14  responsibility.

15              I would mention to the Court that in the recent

16  pharmaceutical MDLs in this Court, in the Eastern District --

17  *Propulsid*, *Vioxx*, and in the mass joinder case of the *Katrina*

18  litigation -- this same idea has been successfully pursued;

19  that class certification while a pending issue and while

20  Rule 23 is available with certain safeguards in the interim is

21  not a front-loaded concern of the court so much as something

22  that is deferred and allows the court and the parties to mature

23  the claims through a bellwether trial process that hopefully at

24  the end leads to resolution without the necessity of even

25  addressing class cert.

1          Now, with that background, of course, what class

2  actions give us is a formality of notice to absent class

3  members.  We have to figure a way, if we are going to take this

4  mass joinder approach, to come up with a notice protocol that,

5  again, can issue to this known universe of trailer occupants to

6  discern who is interested in pursuing a claim, to give a fair

7  deadline for them to come forward, complete the plaintiff fact

8  sheet, failing which it's understood that they are not

9  proceeding in this litigation, and then from there the

10  appropriate selection process.

11          So we have talked to Mr. Weinstock about the

12  possibility -- and I hope it's a real possibility -- of

13  presenting to the Court no later than the next status

14  conference, if not sooner, a proposed protocol, jointly funded

15  by the parties, which would allow us to send out a fair notice

16  comporting with what Rule 23 has in mind in class actions to

17  this known universe of claimants, and then proceed from there

18  with the fact sheet and other steps that are spelled out in the

19  pretrial order.  So we are not at the point where we can

20  delineate that for the Court, but it's an important concept I

21  wanted to mention for those assembled to make sure that we are

22  all aware of how we intend to proceed.

23          **THE COURT:**  Yes.  Thank you.

24          Mr. Weinstock, do you want to respond?

25          **MR. WEINSTOCK:**  Without prearguing why class

1    certification, in our mind, would never work in this case --

2    and this is not a hearing on class certification, certainly.

3    With 10 or 11 different manufacturers and numerous models of

4    vehicles and different levels of whatever chemicals

5    plaintiffs -- formaldehyde -- specifically claim exposure to

6    and different injuries, we feel it would never work as a class

7    action, so it makes perfect sense to see if we can move it to

8    mass joinder.  We definitely have discussed it and will

9    continue to discuss and negotiate it.

10                    As with anything, the devil is in the details

11   because where we break ranks from class action is very

12   important to us because of prescription issues.  When we get a

13   finite number of plaintiffs, we want to know that that's the

14   end of the universe, try representative plaintiffs, see what

15   happens, but not then come back and say, "Oh, by the way, we

16   have this class of additional people.  We just want to go the

17   same route and start all over."

18            THE COURT:  Well, it sounds like an efficient way.

19   As I told you, my focus is on trying to get the case in a

20   position to be resolved one way or the other as promptly as

21   possible.  It sounds like an efficient way to do that given

22   that, again, we have a finite number of people that we are

23   dealing with.  We do have the notice and the joinder issue, so

24   I will be interested in hearing more from you-all about that.

25                    Mr. Miller, did you want to --

1          **MR. MILLER:**  Your Honor, I just wanted to point out

2     that for class certification purposes, although we are not a

3     party yet, every putative class member, for purposes of the

4     government, would have to exhaust their administrative

5     remedies.

6          **THE COURT:**  Well, I understand.  You have been pretty

7     consistent on that, so I understand your position on that.  I

8     think what Mr. Meunier is suggesting is a way that can -- this

9     may even facilitate that because it might be a way to put that

10    on the back end such that those processes can be encountered by

11    the government, for those who are going to file claims, prior

12    to them being identified as a class member, if I understand.

13         If you look at the calendar, it might well be

14    that those persons who need to do that can do that.  Again,

15    that's putting aside the issue of any other claims that the

16    parties will include that are non-FTCA claims, such as they

17    are.  It might serve your purposes, as well, by putting even

18    class issue at the rear after we do some bellwether cases or

19    possibly simply having a joinder of the claims and not going

20    down the class route.  Certainly, with the joinder of claims,

21    if it's an FTCA claim, then I think we are dead on.

22         Okay.  Mr. Etter, you had sought injunctive

23    relief, I believe, in December, and the Court at that time had

24    broached the issue with counsel for FEMA.  I think that was my

25    first conversation with Mr. Miller.  This was about the time,

1   if I remember correctly, at least in terms of public

2   information, that FEMA was going to embark upon some testing of

3   units.

4            FEMA was embarking on the testing starting on

5   December 21, sum certain of the units.  Your injunctive relief,

6   as set forth in the original motion, was pretty

7   all-encompassing.  In my opinion the irreparable harm portion

8   of that motion was addressed and rendered moot.  I know you

9   probably disagree with that, but it was addressed and rendered

10  moot insofar as you were seeking testing.  You were also

11  seeking relocation of individuals, assuming that there was a

12  positive test result.  I think FEMA has established a protocol

13  including liaison counsel and notification to certain counsel

14  in this case with regard to that testing.

15           Now, those were the two issues that I think

16  warranted treatment under the injunctive relief.  You had a

17  series of other issues that you raised also relative to the

18  preservation of information, dissemination of information,

19  disclosure, so on, and so forth.  I was given this morning and

20  you have kindly handed out a bench memorandum which you have

21  prepared, which I believe purports to set forth things that

22  would be the subject of your motion that you believe FEMA has

23  not addressed and that you would have the Court order them to

24  address.

25           **MR. ETTER:**  Actually, if I may, Your Honor, I

1   understand the Court's ruling that the items announced in

2   FEMA's December 13 press release were, in the Court's view,

3   sufficient to address issues of irreparable injury and that you

4   considered our motion for a preliminary injunction moot based

5   on that.

6           What I suggest in this bench memo is that FEMA

7   and the Centers for Disease Control December 13 press release

8   listed a whole series of actions that FEMA, with the assistance

9   of the CDC and others, were going to do.  What I would suggest

10  is it would be appropriate for this Court to require FEMA to

11  regularly report on their progress on accomplishing those steps

12  and if, per chance, FEMA encountered difficulties, wanted to

13  change what it was doing or, heaven forbid, became delayed or

14  bogged down, that this Court and counsel could then confer with

15  FEMA and encourage FEMA to continue what it promised to do.

16          I think it would be appropriate for this Court

17  to retain jurisdiction and supervision over FEMA's announced

18  action plan.  I don't know that that requires a separate

19  hearing, and that's why I have put this forward as a bench memo

20  for this Court's consideration rather than as a motion for

21  further relief.

22          THE COURT:  Well, my reaction to your bench memo

23  here, which is comprehensive, is to allow FEMA, if it chooses

24  to do so, to respond to these.  They haven't seen this yet, and

25  I'm sure they have proceeded with the established procedure

 1   that they have set forth and announced.  Their position

 2   undoubtedly will be that they have complied with the things

 3   that they have announced that they are going to do.

 4                    The previous issue was relative to disclosure of

 5   when testing was going to occur, how it was going to occur, and

 6   we have gotten the liaison counsel involved in that process.

 7   In this form or another form, have you provided this to counsel

 8   for FEMA?

 9            MR. ETTER:  I just did, Your Honor, but not

10   previously.

11            THE COURT:  I appreciate that, and I'm sure they do

12   too, but I need them to be able to, if they choose to do so, to

13   be able to respond to this.  I will give you-all a deadline to

14   give me some response to this if you choose to do so.

15                    My appreciation of the injunctive relief you

16   sought included several things that were not necessarily the

17   stuff of temporary restraining orders or preliminary

18   injunctions because that would be discussed, probably some of

19   it, with Mr. Meunier such as retention of documents, records,

20   things of that sort.

21            MR. ETTER:  I appreciate Mr. Meunier, Mr. Weinstock,

22   and Your Honor's efforts with Mr. Miller to address protecting

23   and preserving evidence and cooperating in testing.  That's why

24   I think, agreeing with Your Honor's earlier observation, it

25   appears those things can be handled as long as FEMA is

1    cooperating and responsive with counsel and is willing to

2    provide some reporting to Your Honor to say what they are

3    doing.

4            I know they have just begun some of this.  What

5    FEMA is reporting publicly in the documents that I can locate

6    does not address yet the details of how all this testing

7    program is going.  So a reason for FEMA to be in this Court

8    either informally, as Mr. Miller is today, or formally is so

9    that we can keep track of what FEMA is doing and setting aside

10   arguments of whether, in my view, FEMA's response is too little

11   too late.

12           I realize I'm not setting forth a clear motion

13   here is exactly what I want today, but I was wanting to provide

14   this for the Court's consideration.

15           THE COURT:  Are you suggesting -- my understanding is

16   that you were -- that this memorandum that you have given me

17   and that you have handed out contains elements of what you

18   sought as injunctive relief or is this generally -- I don't

19   mean to demean it by saying it's sort of a gripe list because

20   these are very important issues.  In other words, is this on my

21   plate as part of your motion for injunctive relief or is this

22   something you would simply like to see treated by all counsel

23   and counsel for FEMA?

24           MR. ETTER:  First, I would like to see this treated

25   by counsel, all counsel and counsel for FEMA.  Second, this

1   list of items were each lifted from the FEMA and Centers for

2   Disease Control December 13 press release.  This is their list

3   of what they told you they were going to do.

4            **THE COURT:**  I understand that.  So actually that's

5   encouraging in the sense that they have already said that they

6   are going to do it.  So if it's on this list and they say, "We

7   are in the process of doing these things," then what is there

8   for the Court to decide at this point?  Are you looking for

9   simply an oversight role for the Court?

10           **MR. ETTER:**  Exactly.  An oversight role for the Court

11  and reporting to this Court by FEMA on a regular basis, say

12  monthly, to report:  We have now tested 300 trailers and here's

13  what we found; we have now talked to 200 trailer occupants; we

14  now are following up on the recommendations of the CDC's panel

15  of experts; the testing at the Lawrence Berkeley lab is under

16  way.  Just as a reporting matter.

17           **THE COURT:**  Here's what I think would be appropriate

18  at this point.  I have already talked to counsel about

19  establishing some type of order that can be followed; and that

20  if it can't be done, it will be discussed at our meeting on

21  January 30.  Are all of these items part of what FEMA announced

22  on the 13th?

23           **MR. ETTER:**  Yes.

24           **THE COURT:**  I would like to go ahead and have the

25  issues that are listed in your memo that you have handed out be

1    the subject of further discussion between liaison counsel and

2    the attorneys for the government so that to the extent they can

3    be included in any such joint order, that's fine.  If that's

4    not satisfactory from your point of view, then we will raise

5    the issue by way of a motion for appropriate relief.

6                    Now, I'm going to ask you to work through the

7    committee and liaison counsel framework because if we get to

8    the point where everybody is filing a motion because of the

9    slightest little thing, we can get down to the point where we

10   are disagreeing on verbiage and then I have 50 motions on one

11   issue.  Lord knows, we can't make everybody happy all at once,

12   but we are going to do the best we can.

13                    I am going to strongly suggest that you work

14   through the committee framework and liaison counsel to try to

15   establish a satisfactory procedure not only for communication

16   between the three entities we have here -- that being the

17   plaintiffs, the defendants, and the government -- but also with

18   regard to the Court's role.

19            MR. ETTER:  I understand that and will do that.

20   Today I had discussed it with plaintiffs' liaison and they

21   suggested that I was the one probably to best present this

22   small piece.

23            THE COURT:  Well, I'm glad you have, and I'm glad

24   that you provided this to counsel for FEMA because I'm sure

25   they will want to respond to it either directly to you or

1   through liaison counsel or to me.

2           **MR. ETTER:**  I have done this as a bench memo today

3   partly because I wasn't sure, if I was going to electronically

4   file it, what I would call it.

5           **THE COURT:**  Well, it hasn't been filed.  I'm not

6   suggesting you file it today.  Quite honestly, I think that we

7   have to have the conversation leading up to January 30, and I

8   would prefer that these items be addressed between counsel

9   before then.  If you were to file it, if you want to renew the

10  motion for injunctive relief -- the problem that I have with

11  injunctive relief is, again, there's relief and then there's

12  relief that needs to be granted in short order.

13          **MR. ETTER:**  I understand that, and so I will defer

14  further filings pending discussion and hopefully positive

15  resolution of all of this.

16          **THE COURT:**  I think that would be the prudent thing

17  to do at this point.

18              Mr. Miller, did you want to --

19          **MR. MILLER:**  I did want to address a couple points

20  that were just raised just to make sure what the government

21  position on this is.  First of all, it's the government

22  position the basis of the amended complaint that Mr. Etter

23  filed does not assert any basis that could provide this Court

24  with authority to issue injunctive relief.

25              Specifically, the 1983 Civil Rights Act claims

1    do not authorize that remedy because they are suing a federal

2    official and 1983 does not authorize claims against federal

3    officials.  The other claims are tort claims, Louisiana law and

4    FTCA.  As we explained, Mr. Etter's clients, none of them have

5    filed legally sufficient administrative claims.  So what we

6    have is a case where Mr. Etter has filed a brief and said,

7    "There's a possibility that I could file a new revised amended

8    complaint that would assert grounds that the Court could have

9    jurisdiction to grant injunctive relief."

10                In addition, at least in the context of the

11   cases we have here, in the *Hilliard* case, which is one of the

12   cases that was joined in, the Court actually addressed the

13   Stafford Act and ADA issues and said it doesn't have

14   jurisdiction because it's totally discretionary, which will

15   then be the government's motion on the tort as well.  That

16   actually had a hearing and everything that addressed it, and it

17   was pretty much resolved that there is no jurisdiction under

18   the Stafford Act and ADA to grant this type of relief.

19                The second thing:  As to Mr. Etter's position at

20   this time, the Court ruled on the motion at the end of

21   December.  Procedurally, the appropriate method for him to

22   bring this to the Court's attention was a motion for

23   reconsideration within ten days.  That time period has run.

24   The appropriate relief for him, if he challenges any issues of

25   the Court's order, is to now take that up on appeal, and he has

1     60 days from the Court's order to do that.

2                  Finally, Your Honor, this is the first I'm had

3     any discussions with you.  Michelle and myself are with the

4     torts branch.  The people you have been dealing with, Michael

5     Sitcov, are federal programs.

6          **THE COURT:**  Right, right.  No, I understand.  I

7     understand.  I apologize if I was melding you-all together for

8     better or worse.  But, no, I appreciate you pointing this out.

9     It was Mr. Sitcov.

10         **MR. MILLER:**  I think there's a reason for the

11    distinction.

12         **THE COURT:**  Before I let you take the podium here,

13    Mr. Meunier, insofar as the record is concerned in this case,

14    the motion has been disposed of.  To that extent I think

15    Mr. Miller is correct.  Now, does that preclude raising these

16    issues either by way of negotiation or by way of motion

17    practice?  Not necessarily.  But the motion itself that you

18    filed, in my opinion and as I have reflected it in the record,

19    the issues have either been disposed of, perhaps are moot, or

20    have been deferred to the procedure we are going to establish

21    for preservation of evidence and records and the sharing and

22    dissemination of that information.

23         **MR. ETTER:**  I understand that, Your Honor.  Why I

24    bring this today, the information was shared by liaison counsel

25    that Your Honor did have an interest in knowing the current

1   situation.

2          THE COURT:  Yes, and I appreciate you doing that.  I

3   am glad you brought it up.  You have given us something that

4   can certainly be the subject of further discussion and will be.

5   It will be because these are all good points that you have

6   listed.

7          MR. MEUNIER:  I simply wanted to thank Mr. Etter on

8   behalf of the plaintiffs' committee and to confirm that in

9   discussions that I suppose will be with Ms. Boyle -- Mr. Miller

10  said he is leaving the country -- by next Tuesday, we will put

11  on the agenda not just the name of the attorney in that Form 95

12  case, not just the travel trailer testing issue, but also the

13  discussion points in this bench memo from Mr. Etter.

14         THE COURT:  All right.  Thank you.  There are two

15  other things I'm going to mention here just briefly in passing,

16  and we are getting down the road here a ways.  I'm going to

17  expect at various benchmark times that have yet to be

18  established that there be some stipulations.  We are going to

19  try to achieve stipulations at various junctures in this case

20  in the interest of saving time and money.  What those will be

21  and on what particular aspects of the litigation, it's probably

22  too early to tell, but I will expect counsel to confer as we

23  get into this and set forth stipulations such that they can be

24  reached, which I think is going to save us, again, time and

25  money.

1              With regard to experts, I also would expect that

2    shortly we would have some type of framework where experts can

3    confer and be provided access, depending on where these units

4    are and in whose control they are in, but I think we need to

5    get our experts on this.  I know some of you have already

6    gotten experts involved, and that's going to be very beneficial

7    to the extent that some of the legwork on this has already been

8    done.  Maybe some of the ultimate opinions that will be offered

9    in this case have already been established.  But it seems to me

10   getting expert evaluation, testing, and conclusions formed by

11   experts is something that can be done sooner rather than later,

12   if it hasn't been done already, so I would encourage you to

13   work in that regard as well.

14              I indicated to you that the next status

15   conference for all counsel will be held here on March 20, 2008,

16   at 10:00.  Is there anything that we have not touched upon that

17   needs to be discussed here today with the group in general?

18         **MR. WOODS:**  Yes, Your Honor.  We wanted to make sure

19   that all plaintiffs' counsel is aware that immediately

20   following this status conference we will have a meeting taking

21   place at the office of Lambert & Nelson.  The address is

22   701 Magazine Street.

23         **THE COURT:**  All right.  Mr. Becnel.

24         **MR. BECNEL:**  Judge, one of the things that has been

25   helpful in many MDLs around the country is setting some date in

 1    advance for what's called the science day.  Judge Fallon did
 2    it.  Judge Katz did it.  They are doing it all over the country
 3    now, and it's relatively new.  It's just been started in the
 4    last year with MDL judges.  I would suggest to the Court it's
 5    an educational program.  It's not binding on anybody.  But the
 6    Court would be able to understand -- whether it's toxicology,
 7    or chemistry, or right-to-know laws under the MDLs, or whatever
 8    it is, you have a certain, finite amount of time with experts
 9    that come in and educate the Court and all of the parties
10    involved on the issues dealing with science.
11            THE COURT:  I'm familiar with that.  As a matter of
12    fact, Judge Fallon, in a conversation I had with him recently
13    at lunch, had mentioned that that was very helpful.  So that's
14    certainly something that the Court would entertain doing at the
15    appropriate time, and I will ask counsel to certainly keep that
16    in mind.  I think it's a good suggestion.  It's probably
17    appropriate it be done at some juncture in this case, and I
18    appreciate you bringing it up.  Judge Fallon, as I indicated,
19    found it very, very helpful in his case.  Certainly anything we
20    can do to get our brains around these issues and get the case
21    resolved, I think that would contribute to it, so I appreciate
22    it.
23            MR. BECNEL:  One other thing, Your Honor, I would
24    suggest that has been done in the *Fen-Phen* litigation with
25    Judge Bechtel, who was both an MDL judge and sat on the MDL

1   Panel for years that handled many MDLs, the issue of

2   certification or bringing people together, one of the big

3   issues that you would have if you don't at least hear the

4   certification issue -- and what Judge Bechtel did in *Fen-Phen*

5   was have the parties brief and argue certification but not rule

6   on it.  That way people knew they had a time frame running

7   because you have some places and people maybe dislocated to,

8   let's say, Minnesota, where you have a six-year statute, or

9   some other places where you have a three-year statute.

10              So if you are trying to get your arms around

11  what are the cases you have, unless you bring it to the Court

12  where people know that you have already heard class cert and

13  their statute might be running, depending on whether the case

14  in their respective states is gone, that's the only way you

15  really, truly get them in here.  And then again, you may have,

16  at least as to the manufacturers, people asserting claims not

17  against the federal government but just against individual

18  manufacturers for less than the jurisdictional amount.

19              **THE COURT:**  Well, that touches upon something that I

20  think Mr. Meunier was talking about earlier relative to when

21  that process of class certification or joinder, depending on

22  which route we go in this case, is taken.  That's something you

23  can raise with Mr. Meunier and your committee.  That might not

24  be a bad idea if we decide to go down that route relative to

25  the Rule 23 issues.

1          I have several ideas along those lines to try to

2    get things done earlier in the case than later.  One of them I

3    will tell you now is perhaps once we start identifying some

4    bellwether cases, have you-all work on what a jury

5    interrogatory form is going to look like, for instance, or what

6    the jury instructions will look like, and do all of this type

7    of stuff many months before trial rather than in the normal

8    time delays, where it would be done in the week or two leading

9    up to trial, because I think it would focus the issues a lot

10   more.

11         So I'm going to try to front-end load that, for

12   lack of a better term, and that's along the lines that you are

13   suggesting with regard to class certification; in other words,

14   to get the information exchanged, get these things worked

15   through long before we get to the brink of a bellwether trial.

16         We'll talk about that as we develop this

17   schedule further.  I think we have a good game plan that

18   counsel have established for getting the case pled and getting

19   the issue joined and getting the motion practice under way, and

20   I think that's where the heavy lifting is going to be in the

21   next few months.  I'm anxious to go ahead and get that taken

22   care of.

23         Okay.  Thank you all very much for being here.

24   We appreciate it.  Thank you all, those on the committees, as

25   well as liaison counsel, Mr. Weinstock, Mr. Woods, and

1    Mr. Meunier.  Thank you very much.

2              Did everybody sign in, by the way?  There is a

3    sign-in sheet.  All in attendance, including those who are not

4    counsel or who are staff with counsel or even just visiting and

5    attending, we would like to have a record of all of those who

6    are in attendance.  So if you have not signed in, we would

7    appreciate it if you do so.  The sign-in sheet is here.  We

8    would like to have a record of all who are in the courtroom

9    today.  If you haven't signed in, please come up here and do

10   so.  Thank you all.

11             **THE DEPUTY CLERK:**  All rise.

12             (WHEREUPON the Court was in recess.)

13                            * * *

14                        <u>CERTIFICATE</u>

15             I, Toni Doyle Tusa, CCR, FCRR, Official Court

16   Reporter for the United States District Court, Eastern District

17   of Louisiana, do hereby certify that the foregoing is a true

18   and correct transcript, to the best of my ability and

19   understanding, from the record of the proceedings in the

20   above-entitled and numbered matter.

21

22

23                           <u>s/ Toni Doyle Tusa</u>
                             Toni Doyle Tusa, CCR, FCRR
24                           Official Court Reporter

25