UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION

CHARLES E. AULTMAN., ET AL.                                          PLAINTIFFS

VS.                                    CIVIL ACTION NO. 2:09-CV-08243-KDE-ALC

KEYSTONE INDUSTRIES, INC.,                                           DEFENDANT

## FIRST AMENDED COMPLAINT AND SUPPLEMENTAL EXHIBIT
## JURY TRIAL REQUESTED

**NOW INTO THE COURT** come the Petitioners to amend their Complaint, and file their Supplemental Exhibit "A" as ordered by the Court and to the following respects would show, to wit:

1. Plaintiffs are adult and minor citizens that resided in the state of Mississippi during and after the destruction of Hurricane Katrina. Plaintiffs are part of the original Complaint filed in the United States District Court, Southern District of Mississippi Southern Division and under EDLA Civil Action Number 09-6968, filed by Eddie Peters, et al v. Gulfstream Coach, Inc., et al. A list of Plaintiffs is provided in Exhibit "A."

2. **Keystone Industries, Inc.** is upon information and belief an Indiana corporate entity while **Keystone RV Company** is upon information and belief a Delaware corporate entity, both of which (collectively known as "**Keystone**") conduct business in the state of Mississippi and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in Mississippi.

___Fee _____
___Process _____
_X_ Dktd _____
___CtRmDep _____
___Doc. No. _____

## JURISDICTION and VENUE

3.      Plaintiffs allege that they have suffered damages in an amount in excess of $75,000.00 exclusive of interest and court costs.

4.      Pursuant to 28 U.S.C. §1332, this Court has subject matter jurisdiction over the claims asserted herein against the defendants with citizenship other than that of the Plaintiffs, because of diversity of citizenship and because of the amount in controversy exceeds, $75,000.00, exclusive of interest and costs.

5.      Pursuant to 28 U.S.C. §1367(a), this Court has subject matter jurisdiction over any claims, not otherwise subject to federal jurisdiction, based on the Court's supplemental jurisdiction over these claims.

6.      Defendant is subject to the *in personam* jurisdiction of this Court because it does substantial business in the State of Mississippi and within this federal district, and were at all times relevant hereto engaged in commerce both in this federal district and in the State of Mississippi.  As well, the Defendant does substantial business in the State of Mississippi, and at all times relevant was hereto engaged in commerce within said State.

7.      Venue is proper in this district pursuant to 28 U.S.C. §1391 as the emergency housing units were provided in the Southern District of Mississippi.  As well, the named Plaintiffs' injuries occurred within the same.

## BACKGROUND

8.      On August 29, 2005 Hurricane Katrina stuck the Mississippi Gulf Coast, as a Category 4 hurricane.  Katrina's fury devastated many of the homes of Mississippi Citizens, including the home of the Plaintiffs.

9.  After the hurricane, the Plaintiffs resided in travel trailers (hereinafter referred to as "FEMA Trailers") that were provided by the Federal Emergency Management Agency ("FEMA") for "temporary" housing. The specific FEMA Trailers in which the Plaintiffs resided were manufactured by the Defendant named in paragraph 2, (hereinafter referred to as "Defendant Manufacturer").

10. FEMA contracted to purchase approximately 120,000 of these FEMA Trailers from numerous private manufacturing companies who reportedly grossed over a billion dollars from the sale of these FEMA Trailers. The named Defendant Manufacturer is one of these many manufactures and manufactured the specific trailer the in which the Plaintiffs resided.

11. Tragically, the rush by Defendant Manufacturer to pursue profit led to the Defendant Manufacturer producing and delivering unsafe and hazardous units. Due to the fault of the Manufacturer Defendant, FEMA Trailers contain a high level of formaldehyde, a known carcinogen and toxic chemical.

12. The Plaintiffs spent significant time in their FEMA Trailers, which were manufactured by the Defendant Manufacturer and which exposed them to dangerously high concentrations of formaldehyde fumes.

13. Although the Defendant Manufacturer knew or should have known of the health hazards inherent in the FEMA Trailers they were making, selling, distributing and delivering, the Defendant Manufacturer failed to inspect the trailers, failed to warn the Plaintiffs of the deadly dangerous of formaldehyde, failed to design the trailers with any suitable or adequate ventilation and failed to construct the trailers with materials that would not emit hazardous levels of formaldehyde and/or failed to follow a proper

manufacturing process that would serve to lower the amount of formaldehyde fumes in the FEMA Trailers.

14. Defendant Manufacturer ignored and/or withheld vital information in order to sell their products and/or to avoid the costs necessary to ensure safety to their end user. The FEMA Trailers provided have been and continue to be unsafe and present a clear and present danger to the health and well being of the Plaintiffs, causing immediate and long term risk to their health.

15. Formaldehyde is used in the manufacture of certain construction materials such as particle board and plywood, both of which are often used in the manufactured home industry. There is no doubt that the Defendant Manufacturer had knowledge of the dangers that formaldehyde presented. In fact, Defendant was required by federal law to display a "Health Notice" about exposure to formaldehyde which reads as follows:

<u>IMPORTANT HEALTH NOTICE</u>

Some of the building materials used in this home emit formaldehyde. Eye, nose and throat irritation, headache, nausea, and a variety of asthma-like symptoms, including shortness of breath, have been reported as a result of formaldehyde exposure. Elderly persons and young children as well as anyone with a history of asthma, allergies, or lung problems, may be at greater risk. Research is continuing on the possible long-term effects of exposure to formaldehyde.

Reduced ventilation resulting from energy efficiency standards may allow formaldehyde and other contaminants to accumulate in the indoor air. Additional ventilation to dilute the indoor air may be obtained from a passive or mechanical ventilation system offered by the manufacturer. Consult your dealer for information about the ventilation options offered with this home.

High indoor temperatures and humidity raise formaldehyde levels. When a home is to be located in areas subject to extreme summer temperatures, an air-conditioning system can be used to control indoor temperature levels. Check the comfort cooling certificate to determine if this home has been equipped or designed for

> the installation of an air-conditioning system. If you have any questions regarding the health effects of formaldehyde, consult your doctor or local health department.
> See 24 C.F.R. §3280.309.

16. According to the National Cancer Institute, formaldehyde has been classified as a human carcinogen (cancer-causing substance) by the International Agency for Research on Cancer and as a probably human carcinogen by the U.S. Environmental Protection Agency.

17. ASTDR, OSHA and NIOSH have all set limits on formaldehyde exposure for adults in the workplace, based on a forty hour work week. Specifically, OSHA reduced the acceptable amount of formaldehyde to which a worker can be exposed over an eight hour day from 3 parts per million (ppm) to 1ppm in 1987. By May of 1992, the limit was further reduced to only 0.75ppm.

18. The Department of Housing and Urban Development ("HUD") regulates formaldehyde levels in certain construction materials, including the pressed wood products used in manufactured housing (such as those used by Defendant Manufacturer). Their regulation states that plywood "shall not emit formaldehyde in excess of 0.2 parts per million . . ." Similarly, regulations require that particleboard materials shall not emit formaldehyde in excess of 0.3 ppm . . ." *See* 24 C.F.R. §3280.308.

19. OSHA also requires medical monitoring for all employees exposed to a time-weighted average concentration of formaldehyde of 0.1 ppm or more.

20. Knowing these facts, the Manufacturer Defendant provided trailers to the victims of Katrina (the Plaintiffs included), each of which emit formaldehyde at a dangerously unhealthy rate in excess of any accepted level, and which have resulted and will continue to result in injury to the Plaintiffs.

5

## COUNT ONE:
## STRICT PRODUCT LIABILITY
## MS CODE ANNOTATED §11-1-63
## DEFECTIVE MANUFACTURING AND DESIGN
## DEFENDANT MANUFACTURER

21. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

22. Manufacturing Defendant, at the time the subject FEMA Trailer left their control, knew or should have known that the products were defective because they deviated in a material way from manufacturers' specifications or from otherwise identical units manufactured to the same manufacturing specifications.

23. The Manufacturing Defendants knew or should have known that the defective condition rendered the subject FEMA Trailers unreasonably dangerous to the user or consumer or others; and

24. The defective and unreasonably dangerous condition of the product (the failure of the FEMA Trailers to be safely habitable without undue exposure to formaldehyde) proximately caused the damages and injuries sustained by Plaintiffs.

25. At the time the subject FEMA Trailers left control of the Defendant Manufacturer, the trailers did not contain properly selected prepared and installed components.

26. At all relative times, Plaintiffs lacked actual or constructive knowledge of the defective condition of the FEMA Trailers and that the said trailers were inconsistent with normal required safety standards.

27. At all relative times, the Plaintiffs did not appreciate the danger of the FEMA Trailers defective conditions.

28. At all relative times, the Plaintiffs did not deliberately nor voluntarily choose to expose themselves to this dangerous in such a manner to register assent to the continuance of the dangerous condition.

29. The FEMA Trailers manufactured by the Manufacturer Defendant failed to function as expected as a result of their design characteristics.

30. An alternative design existed (and was the industry standard) at the time the housing units left control of the Manufacturer Defendants which would not have impaired the products' usefulness or desirability.

31. The alternative design would have to a reasonable probability prevented the toxic exposure of the Plaintiffs.

## COUNT TWO:
## FAILURE TO WARN
## DEFENDANT MANUFACTURER

32. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

33. The FEMA Trailers manufactured by the Defendant Manufacturer were defective in that they failed to provide or contain any adequate warnings or instructions.

34. The Defendant Manufacturer failed to warn the Plaintiffs of the inherently dangerous properties of the foreseeable conditions of the FEMA Trailer when used for long term occupancy.

## COUNT THREE:
## BREACH OF EXPRESS WARRANTY
## DEEFENDANT MANUFACTURER

35. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

36. The FEMA Trailers manufactured by the Defendant Manufacturer breached an express warranty and/or failed utterly to conform to other express factual representations upon which the claimant justifiably relied in electing to use these products.

## COUNT FOUR:
## BREACH OF IMPLIED WARRANTY
## DEEFENDANT MANUFACTURER

37. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

38. The Defendant Manufacturer breached the implied warranty of habitability due to the Plaintiffs. These homes were manufactured with the expectation that the end user would be residing in the home for at least a period of eighteen months. There is a clear implied warranty that such housing would be safe and free of any toxic dangers.

## COUNT FIVE:
## NEGLIGENCE
## DEFENDANT MANUFACTURER

39. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

40. At all times relevant hereto, the Defendant Manufacturer was under a duty to use due care and caution for the safety of foreseeable users and occupants of the FEMA Trailer homes, including the Plaintiffs:

   (a) In manufacturing, marketing, distributing, licensing, and selling the FEMA Trailer;
   (b) In observing and complying with the requirements of all applicable statutes, regulations, and ordinances;
   (c) In ensuring that the product met or exceeded industry standards and government standards; and
   (d) In alerting consumers and occupants of the defects in the mobile homes through a meaningful product recall or other notice of defects to the marketplace.

41. In violation of said duties, the Defendant Manufacturers were negligent, reckless, and/or willful in the following:

   (a) The manufacturing, testing, marketing, distribution, licensing and sale of the FEMA Trailer which was defective and unreasonable dangerous for their foreseeable use because of excessive emissions of formaldehyde;
   (b) The failure to properly test the FEMA Trailers to properly evaluate their level of emissions of formaldehyde under foreseeable conditions for extended periods of time;

8

(c) In manufacturing, advertising, marketing, distributing, and selling the FEMA Trailers to third-parties including, and without limit, government personnel and end users when the Manufacturer Defendant knew or should have known that the mobile homes were defective and unsuitable for use under the foreseeable conditions;

(d) The failure to provide adequate and proper warnings to the occupants and end-users of the FEMA Trailers of the presence of excessive levels of emissions of formaldehyde and the hazards associated with the excessive levels of emissions of formaldehyde.

(e) The failure to provide proper and adequate updates, information, and warnings to occupants and end-users, after the sale of the FEMA Trailers, of the hazards associated with the excessive levels of emissions of formaldehyde; and

(f) The failure to properly hire, train and supervise individuals who, in turn, would inspect materials manufactured by vendors of wood products used in FEMA Trailers to ensure that such wood materials did not emit excessive levels of formaldehyde.

42. As the direct and proximate result of the acts and/or omissions of the Defendant Manufacturer, the Plaintiffs have suffered and will suffer injury and damages.

## COMPENSATORY DAMAGES

43. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

44. As a direct and proximate result of the Defendant Manufacturer acts and omissions, Plaintiffs have suffered and will continue to suffer damages in an amount in excess of the minimum jurisdictional limits of the court for past and future physical pain and mental suffering, past and future reasonable and necessary medical expenses and monitoring, past and future physical impairments and disability, past and future loss of earning capacity, and past and future loss of enjoyment and quality of life and other damages and injuries set for above, including damages Plaintiffs suffered from exposure to formaldehyde, a carcinogenic material.

45. Plaintiffs, as a direct and proximate result of the Defendant Manufacturer negligence, malicious, fraudulent and intentional acts and omissions, and as a direct

9

result of the other causes of action described above, have experienced and continue to experience severe mental pain, anguish and suffering directly attributable to the occurrence made the basis of this lawsuit and directly attributable to their injuries and the harm they have suffered.

46.  Plaintiffs have suffered sizeable out-of-pocket expenses which include travel expenses, attorney's fees, costs of court, time from work and other expenses. Accordingly, Plaintiffs seek all general, special incidental and consequential damages as shall be proven at the time of trial, including exemplary, enhanced and trebled damages, pre-judgment interest, and post-judgment interest.

47.  As a result of the FEMA Trailers' component parts emitting excessive and dangerous levels of formaldehyde, the trailers are dangerous to any human health.

48.  The amount of total damages suffered by Plaintiffs is significant and continuing in nature. Plaintiffs reserve the right to amend and state further with respect to his damages.

## PUNITIVE/EXEMPLARY DAMAGES

49.  Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

50.  Pursuant to Miss. Code Ann. §11-1-65, inasmuch as the conduct of the Defendant Manufacturer constitutes willful, wanton, egregious and reckless disregard for the rights, safety and welfare of the Plaintiffs, an award of punitive damages in appropriate and necessary under the facts at hand.

51.  The Plaintiffs respectfully demand a jury trial.

   **WHEREFORE**, the Plaintiffs pray that:

   1.  The Plaintiffs be awarded actual, consequential and punitive damages;

2. The Defendant Manufacturer provides the Plaintiffs with medical testing to determine the adverse effects of formaldehyde exposure and medical monitoring and surveillance;

3. The Plaintiffs be awarded their attorneys' fees, expenses and costs of this action;

4. The Plaintiffs be awarded prejudgment interest from the date of the filing of this Complaint, and any further relief as the Court may deem appropriate;

5. All other general, equitable, and further relief as the Court may deem just and proper.

THIS the 28th day of July, 2010.

_____
JOHN ARTHUR EAVES, JR., ESQ.
ATTORNEY FOR PLAINTIFFS

John Arthur Eaves, Jr., (MSB 8843)
Jon-Marc King (MSB 9736)
Shana D. Fondren (MSB 100762)
Anders Ferrington (MSB 102444)
**Eaves Law Offices**
101 North State Street
Jackson, MS 39201
Telephone: (601)355-7961
Facsimile (601)355-0530

EXHIBIT "A" KEYSTONE
CIV. ACT. NO. 09-6968

| Last Name | First Name | Middle Name | Case No. |
|---|---|---|---|
| Aultman | Dianna | Individually and on behalf of Z.A., minor child | 09-6968 |
| Aultman | Charles | E. | 09-6968 |
| Woods | David | Lee | 09-6968 |
| Craig | Patricia | On behalf of C.W. and L.W., minor children | 09-6968 |