UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  FEMA TRAILER　　　　　　　＊　MDL NO. 1873
　　　　FORMALDEHYDE PRODUCTS　＊
　　　　LIABILITY LITIGATION　　　　＊　SECTION "N" (5)
　　　　　　　　　　　　　　　　　　＊
THIS DOCUMENT IS RELATED TO　　＊　JUDGE ENGELHARDT
*Octave Bazanac, et al v. Gulf Stream Coach*　＊
*Inc., et al*, Docket No. 09-8320;　　　　＊　MAGISTRATE CHASEZ
Robin Lewis　　　　　　　　　　　　＊
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### MEMORANDUM IN SUPPORT OF MOTION TO STRIKE LIVE TESTIMONY OF PLAINTIFF'S EXPERTS

**MAY IT PLEASE THE COURT:**

After the completion of trial depositions in the above matter, the plaintiff for the first time declared his intention to call Dr. Hewett and Mr. Mallet live at the summary jury trial proceeding.[1] This is impermissible because the plaintiff has forced Gulf Stream to conduct a full trial examination of the witnesses at their depositions, only now to call these witnesses live in an attempt to rehabilitate their testimony.

A review of the commentary on summary jury trial proceedings shows the danger in allowing a witness to appear live after his "trial" deposition has already been conducted. One study of summary jury trials in an Ohio federal court showed that defense attorneys were wary of the summary jury trial proceeding because it forced the defendant to air his entire case and all of his evidence, which only educated the plaintiff as to the defendant's theories for later phases of

---

[1] The plaintiff declared his intention to call Dr. Hewett live on September 8, 2010. The plaintiff declared his intention to call Mr. Mallet live after August 24, 2010, but before September 8 – however, deposition designations were exchanged on both witnesses.

the proceeding.[2] That danger is exactly what will occur here if Dr. Hewett and Mr. Mallet are permitted to testify live. During their depositions, Gulf Stream took a complete trial examination with the understanding that the experts would likely appear either through video testimony or witness summary. Obviously, Gulf Stream's hands were tied – without a firm indication that the witnesses would appear live, Gulf Stream could not risk foregoing areas of inquiry in order to protect its strategy, only to learn later that the depositions were the only opportunity to question them. Had Gulf Stream attempted such a thing, it is highly unlikely the plaintiff would have allowed Gulf Stream a second bite at the apple in the form of follow-up questioning.

Yet, a second bite at the apple is precisely what the plaintiff now wants. Gulf Stream's cross-examination showed the plaintiff its theory on how to limit the impact of Dr. Hewett's and Mr. Mallet's plaintiff-friendly opinions. Now, the plaintiff wants to return to the questioning of these witnesses knowing exactly how to repair any damaging testimony and guard against Gulf Stream's trial cross. This is fundamentally unfair to Gulf Stream and prejudices the entirety of what it accomplished when it deposed the witnesses during the discovery phase. It also reverses the proper course of procedure. Normally, the plaintiff would call his experts during his case-in-chief, and the defendant would have the opportunity for cross-examination. But if the plaintiff is allowed to call Dr. Hewett and Mr. Mallet live, he will have essentially forced Gulf Stream to question the witnesses first, with an opportunity during the direct examination to fix whatever testimony might have been unfavorable for the plaintiff. This is simply impermissible under the rules of procedure and evidence, and it is unduly prejudicial to Gulf Stream.

The plaintiff has taken a similar tack in removing deposition designations previously provided to the Court, which in doing so allows the plaintiff to play a shell game with his

---

[2] *See* M. Daniel Jacoubovitch and Carl M. Moore, *Summary Jury Trials in the Northern District of Ohio*, A REPORT TO THE FEDERAL JUDICIAL CENTER, p. 14 (May 1982), attached hereto as Exhibit "A."

theories. For instance, the plaintiff now proposes to exclude certain designations from the testimony of its expert, Stephen Smulski. This shows that several of the prior designations included unnecessary opinions. However, Gulf Stream was obligated to respond to those designations, which in turn showed the plaintiff Gulf Stream's theory on how to limit the impact of such testimony. The plaintiff then had the full benefit of that knowledge when deciding which opinions to exclude at this late stage.

Clearly, the plaintiff is going to great lengths to hide his theory of the case. Gulf Stream asserts that calling Dr. Hewett and Mr. Mallet live at trial is just another example of that effort, but it is one that should be excluded for the unfairness and prejudice it would create.

Accordingly, Gulf Stream respectfully asks this Court to strike Dr. Hewett and Mr. Mallet from appearing live at the summary jury trial proceeding.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS, PFISTER, & WEINSTOCK**

s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK #18495**
**JOSEPH G. GLASS #25397**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Fax: (504) 837-3119
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON**
**TIMOTHY D. SCANDURRO #18424**
**DEWEY M. SCANDURRO #23291**
607 St. Charles Avenue
New Orleans, LA 70130
Telephone: (504) 522-7100
tim@scanlayr.com
dewey@scanlayr.com
*Counsel for Gulf Stream Coach, Inc.*

## **C E R T I F I C A T E**

I hereby certify that on the 9th day of September, 2010, a copy of the foregoing Memorandum in Support of Motion and Incorporated Memorandum to Strike Certain Witnesses was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

s/Andrew D. Weinstock
_____
ANDREW D. WEINSTOCK #18495
andreww@duplass.com