# Summary Jury Trials in the Northern District of Ohio



A Report to the
Federal Judicial Center

KF
8755
.O36
J3
1982

## THE FEDERAL JUDICIAL CENTER

### Board

The Chief Justice of the United States
*Chairman*

Judge John D. Butzner, Jr.
*United States Court of Appeals
for the Fourth Circuit*

Chief Judge William S. Sessions
*United States District Court
Western District of Texas*

Judge Cornelia G. Kennedy
*United States Court of Appeals
for the Sixth Circuit*

Judge Donald S. Voorhees
*United States District Court
Western District of Washington*

Judge Aubrey E. Robinson, Jr.
*United States District Court
District of Columbia*

Judge Lloyd D. George
*United States Bankruptcy Court
District of Nevada*

William E. Foley
*Director of the Administrative
Office of the United States Courts*

### Director
A. Leo Levin

### Deputy Director
Charles W. Nihan

### Division Directors

Kenneth C. Crawford
*Continuing Education
and Training*

William B. Eldridge
*Research*

Gordon Bermant
*Innovations
and Systems Development*

Alice L. O'Donnell
*Inter-Judicial Affairs
and Information Services*

### Assistant Director
Russell R. Wheeler

1520 H Street, N.W.
Washington, D.C.
Telephone 202/

RECEIVED
DEC 2 8 1990
U.S. COURTS LIBRARY
HOUSTON BRANCH
PROPERTY OF U.S. GOVT.

KF 8755 .036 J3 1982
OCLC # 8861647
18-28-90 FJC



# SUMMARY JURY TRIALS IN THE NORTHERN DISTRICT OF OHIO

By M. Daniel Jacoubovitch and Carl M. Moore
Schools of Journalism and Speech
Kent State University, Kent, Ohio

May 1982

This publication is a product of a study undertaken in furtherance of the Federal Judicial Center's statutory mission to conduct and stimulate research and development on matters of judicial administration. The analyses, conclusions, and points of view are those of the authors. This work has been subjected to staff review within the Center, and publication signifies that it is regarded as responsible and valuable. It should be emphasized, however, that on matters of policy the Center speaks only through its Board.

LIBRARY U. S. COURTS
515 RUSK AVE., RM. 10017
HOUSTON, TX 77002

*Cite as* M.-D. Jacoubovitch & C. Moore, Summary Jury Trials in the Northern District of Ohio (Federal Judicial Center 1982).

FJC-R-82-1

EXECU

I. I

D

J

A

II. D

C

S

III. F

P

V

V

V

J

M

J

IV. C

Append
Court f

Append

Append
mary T

Append

# TABLE OF CONTENTS

EXECUTIVE SUMMARY ................................................................ vii

I. INTRODUCTION: THE SUMMARY JURY TRIAL ........... 1

   Description of the Proceeding ................................................ 1
   Judge Lambros's Rationale for Creating the Summary
      Jury Trial .................................................................. 3
   Assignment of Cases to Summary Jury Trial ..................... 3

II. DESCRIPTION OF THE STUDY ........................................ 5

   Cases Included in the Study .................................................. 5
   Survey of Summary Jury Trial Participants ...................... 6

III. FINDINGS AND DISCUSSION ........................................ 7

   Profile and Status of Cases Assigned to Summary Jury
      Trial ........................................................................... 7
   Views of Attorneys Whose Cases Settled after Summary
      Jury Trial .................................................................. 9
   Views of Attorneys Whose Cases Settled before Summary
      Jury Trial .................................................................. 15
   Views of Attorneys Whose Cases Went On to Full Trial ... 18
   Jurors' Views of Summary Jury Trial ............................... 21
   Magistrates' Views of Summary Jury Trial ...................... 25
   Jury Clerk's Observations about Summary Jury Trial ...... 28

IV. CONCLUSIONS AND RECOMMENDATIONS ................. 31

Appendix A: Judge Lambros's Handbook and Rules of the
Court for Summary Jury Trial Proceedings ............................ 35

Appendix B: Juror Profile Form ............................................. 43

Appendix C: Judge Lambros's Rules of Procedure for Sum-
mary Trial Pretrial Procedure ............................................... 47

Appendix D: Jurors' Advisory Opinion Forms ...................... 51

Jury Trials in
r 1982).

*Contents*

Appendix E: Questionnaires and Interview Schedules Used in the Study ........................................................................................ 55

Appendix F: List of Summary Jury Trial Cases Included in the Study ........................................................................................ 83

Appendix G: Sample Order to Counsel Concerning Jury Instructions and Exhibits ............................................................ 87

iv

.iedules Used in
.............................. 55

.es Included in
.............................. 83

.icerning  Jury
.............................. 87

# LIST OF TABLES

1. Status of Cases Assigned to Summary Jury Trial (SJT) ......... 8

2. Views of Summary Jury Trial Given by Attorneys Whose
   Cases Settled after Summary Jury Trial ............................ 12

3. Views of Summary Jury Trial Given by Attorneys Whose
   Cases Settled before Summary Jury Trial ......................... 17

4. Views of Summary Jury Trial Given by Attorneys Whose
   Cases Went On to Full Trial ........................................... 19

5. Jurors' Perceptions of the Differences between Summary
   Jury Trial (SJT) and Full Trial ....................................... 22

6. Experienced and Unexperienced Jurors' Perceptions of the
   Differences between Summary Jury Trial (SJT) and Full
   Trial (FT) ..................................................................... 24

7. Magistrates' Evaluations of Attorneys' Motivation and Per-
   formance ...................................................................... 27

v

# EXECUTIVE SUMMARY

The purpose of the summary jury trial is to facilitate pretrial termination of cases in which the significant bar to settlement is disagreement between the attorneys or parties regarding a jury's likely findings on liability or damages in the case.

Summary jury trial is presided over by a judge or magistrate of the district court. A ten-member jury venire is presented to counsel for consideration. Counsel are provided with a short character profile of each juror and then given two challenges to arrive at a final six-member jury for the proceeding. Each attorney is given one hour to describe to the jury his party's view of the circumstances of the action. After counsel's presentations, the presiding judge or magistrate delivers to the jury a brief statement of the applicable law, and the jury retires to deliberate. Juries are encouraged to return a consensus verdict, but they may return a special report that anonymously lists the view of each juror as to liability and damages. After the verdict or special report has been returned, counsel meet with the presiding judge or magistrate to discuss the verdict and to establish a timetable for settlement negotiations. Evidentiary and procedural rules are few and flexible.

The first summary jury trial was held on March 5, 1980, in the courtroom of District Judge Thomas D. Lambros, who originated the procedure. Thirty-seven cases were assigned to summary jury trial between February 26, 1980, and October 6, 1980. The majority were personal injury cases.

The Federal Judicial Center charged the authors to analyze the summary jury trial procedure and to document the views and concerns of participants in summary jury trials. The authors observed a number of summary jury trials, reviewed court records, and interviewed or surveyed those who had been involved with cases assigned to summary jury trial, including jurors, counsel, the jury clerk, Judge Lambros, and the two magistrates who presided over the bulk of the summary jury trials in the study.

This report provides an inventory of all cases assigned to summary jury trial through October 6, 1980, and describes attorneys' perceptions of summary jury trial (including attorneys whose cases were assigned to summary jury trial but settled before the actual

vii

*Executive Summary*

proceedings; attorneys whose cases settled after summary jury trial; and attorneys whose cases went through summary jury trial but went on to full trial because summary jury trial did not result in settlement). The report also discusses the views and observations of others who participated in the proceedings: the jurors, the hearing officers, and the jury clerk.

The report concludes that

- The presentation of cases at summary jury trial results in settlement in a substantial proportion of instances

- Assignment of cases to summary jury trial creates a greater impetus for pretrial settlement than does assignment to other pretrial proceedings

- Summary jury trial enables the participation of magistrates in the disposition of cases that would otherwise occupy the time of federal judges.

The report makes the following recommendations:

- The use of the summary jury trial procedure should continue

- A fairly narrow "profile" of cases suitable for routine assignment to summary jury trial should be formulated. Only single defendant/single plaintiff cases should be included, and cases in which the truthfulness of an individual witness's testimony plays a central role should be excluded

- Guidelines for assessing the completeness of discovery should be established

- The Center should encourage implementation of summary jury trial in other districts, particularly in districts that employ magistrates

- The Center should implement a set of procedures to track all cases assigned to summary jury trial.

## I. INTRO

The summar
neys for oppos
their cases bef
agree prior to
dict, the verdi
trial in no way
the merits.

The purpose
termination of
disagreement l
likely findings
currently in u
ern District of

The first sur
courtroom of J
the procedure
jury trial were
1980, in the N
injury cases.

The bases i
Lambros's "H
Trial Proceed
under rule 16
court's inherer

The summar
of the district
cused from the
presence of a
A ten-memb
tion. Counsel
juror (see app

summary jury
nmary jury trial
al did not result
and observations
jurors, the hear-

al results in set-
s

eates a greater
nment to other

of magistrates
vise occupy the

hould continue

routine assign-
ed: Only single
ided, and cases
ess's testimony

scovery should

t of summary
districts that

es to track all

# I.  INTRODUCTION: THE SUMMARY JURY TRIAL

The summary jury trial is a half-day proceeding in which attorneys for opposing parties are given one hour each to summarize their cases before a six-member jury. Unless the parties in the case agree prior to the summary jury trial to be bound by the jury's verdict, the verdict is purely advisory. In addition, the summary jury trial in no way affects the parties' right to a full trial de novo on the merits.

The purpose of the summary jury trial is to facilitate pretrial termination of cases in which the significant bar to settlement is disagreement between the attorneys or parties regarding a jury's likely findings on liability or damages in the case. The procedure is currently in use in the United States District Court for the Northern District of Ohio.

The first summary jury trial was held on March 5, 1980, in the courtroom of District Judge Thomas D. Lambros, who originated the procedure. Notices assigning thirty-seven cases to summary jury trial were mailed between February 26, 1980, and October 6, 1980, in the Northern District of Ohio. The majority were personal injury cases.

The bases in law for the new procedure, as set forth in Judge Lambros's "Handbook and Rules of the Court for Summary Jury Trial Proceedings" (see appendix A), are judges' pretrial powers under rule 16 of the Federal Rules of Civil Procedure and the court's inherent power to manage its docket.

## Description of the Proceeding

The summary jury trial is presided over by a judge or magistrate of the district court. Unless the parties in the case have been excused from the proceeding, they appear with counsel in court. The presence of a court reporter at the summary jury trial is optional. A ten-member jury venire is presented to counsel for consideration. Counsel are provided with a short character profile of each juror (see appendix B). The profile is completed by the jurors indi-

1

*Chapter I*

vidually and includes the juror's name and occupation; the name and occupation of the juror's spouse; the names and ages of the juror's children; the juror's previous knowledge of any parties or counsel in the case or of the nature of the case; and any adverse attitudes the juror has toward the nature of the action. Each attorney is given two challenges to arrive at a final six-member jury for the proceeding.

Each attorney is given one hour to describe to the jury his party's view of the circumstances of the action. The time allotment for the attorney's presentation may be modified in multiparty cases, however, so that presentations can be offered by more than one attorney. In addition, the counsel for the plaintiff may reserve a portion of the hour for a statement of refutation; this statement follows the presentation of the counsel for the defendant.

Evidentiary and procedural rules, as set forth in Judge Lambros's "Rules of Procedure for Summary Trial Pretrial Procedure" (see appendix C), are few and flexible. Counsel may adduce exhibits for the jury and may describe the testimony of witnesses, but only short passages of depositions may be read aloud. Furthermore, no witness's testimony may be referred to unless the reference is based on the product of a discovery procedure; on a written, sworn statement of the witness; or in the absence of these, on a sworn affidavit of counsel that the witness would not sign an affidavit, that the witness would be called in the event of a full trial, and that counsel has been told firsthand the substance of the witness's proposed testimony.

These evidentiary rules have been relaxed in practice by the two magistrates who presided over the bulk of the summary jury trials reported on in this study. Affidavits have not been required in instances in which it could reasonably be assumed that testimony presented at summary jury trial would, indeed, be presented at full trial.

After the attorneys' presentations, the presiding judge or magistrate delivers to the jury a brief statement of the applicable law, and the jury retires to deliberate. Although the jury is encouraged to return a consensus verdict on the case, it may return a special report that anonymously lists each juror's findings on liability and damages (see appendix D). In complex cases, jurors may be called upon to make rulings on separate issues. After the verdict or special report has been returned, counsel meet with the presiding judge or magistrate to discuss the verdict and to establish a timetable for settlement negotiations.

2

---

**Judge Lam**

Judge Lam the summary mission to th Lambros desc ing pretrial s jury trial has, cedures.

Two of thes in the proced parties or att damages is a provides the counsel to rea

Second, ur depend on to scribed by Ju the efficient c means by whi before them.

**Assig**

Inasmuch very flexible criteria for g ment to sum

In general, suitable for before a jury other pretria certain cases assigned to s bros, a case case is likely cation of exi in the case; the resolutio

1. Lambros &
2. *Id.* at 45.

ı; the name
ages of the
y parties or
any adverse
Each attor-
ber jury for

he jury his
ie allotment
multiparty.
, more than
may reserve
s statement
t.

Judge Lam-
Procedure"
uce exhibits
ies, but only
hermore, no
reference is
itten, sworn
a sworn af-
fidavit, that
al, and that
itness's pro-

e by the two
y jury trials
quired in in-
t testimony
ented at full

ge or magis-
plicable law,
encouraged
rn a special
liability and
ay be called
rdict or spe-
ie presiding
olish a time-

## Judge Lambros's Rationale for Creating the Summary Jury Trial

Judge Lambros has presented the rationale for the creation of the summary jury trial in some detail in an article written for submission to the *Cleveland-Marshall Law Review*.[1] Briefly, Judge Lambros describes the summary jury trial as complementing existing pretrial settlement procedures. He asserts that the summary jury trial has, however, a number of advantages over the other procedures.

Two of these advantages are based on the participation of jurors in the procedure. First, in cases in which disagreement between parties or attorneys regarding a jury's likely verdict on liability or damages is a significant bar to settlement, the summary jury trial provides the only opportunity, short of full trial, for parties or counsel to reach an agreement.

Second, unlike other pretrial settlement procedures, courts depend on to reduce their backlogs, the summary jury trial, as described by Judge Lambros, allows the "lay public to participate in the efficient disposition of the court's business and still provide[s] a means by which the federal courts can feasibly accommodate cases before them."[2]

## Assignment of Cases to Summary Jury Trial

Inasmuch as Judge Lambros views the summary jury trial as a very flexible procedure, he has not specified a hard-and-fast set of criteria for gauging the suitability of particular cases for assignment to summary jury trial.

In general, Judge Lambros has stated that summary jury trial is suitable for any case, complex or not, that would normally go before a jury and for which discovery has been completed and all other pretrial procedures have been exhausted. He believes that certain cases that conform to this broad description should not be assigned to summary jury trial, however. According to Judge Lambros, a case should not be assigned to summary jury trial if (a) the case is likely to set precedent (rather than simply require the application of existing law); (b) a government office or agency is a party in the case; or (c) the credibility of a witness is a critical issue in the resolution of the dispute.

1. Lambros & Shunk, *The Summary Jury Trial*, 29 Clev.-Mar. L. Rev. 43 (1980).
2. *Id.* at 43.

3

# II.  DESCRIPTION OF THE STUDY

The Federal Judicial Center charged us to describe the summary jury trial procedure and to document the perceptions and concerns of various kinds of participants in summary jury trials. The findings reported in chapter three are the product of an observation of a selected number of summary jury trials and a survey of persons involved in those trials to elicit their perceptions of the procedure.

Specific information about cases assigned to summary jury trial was obtained by reviewing court records, surveying jurors and counsel (by interview or questionnaire) who had been involved in cases assigned to summary jury trial, and interviewing the jury clerk, Judge Lambros, and the two magistrates who presided over the bulk of the summary jury trials.

Copies of the questionnaires and interview schedules used in this study are presented in appendix E. Survey responses are discussed in detail in chapter three.

## Cases Included in the Study

A list of the summary jury trial cases included in the study, as well as pertinent information about them, is presented in appendix F. The first cases assigned to summary jury trial had been pretried by Judge Lambros shortly before their assignment to summary jury trial. Summary jury trial of these cases was presided over by the judge. Although some cases continued to be assigned to summary jury trial in this manner over the period covered in the study, most of the cases reported on here were assigned using a second procedure.

These cases, some of which had been filed as early as 1975, were identified by Judge Lambros as potentially suitable for summary jury trial. Judge Lambros examined the cases in light of his general criteria for determining suitability for summary jury trial. Cases that appeared to conform to the guidelines were assigned to either Magistrate Jack Streepy or Magistrate David Perelman for pretrial hearing. Cases that were not settled at pretrial went on to summary jury trial, which was presided over by one of the magistrates.

5

*Chapter II*

Information about all cases assigned to summary jury trial from February 26, 1980, through October 6, 1980, was collected and analyzed. The results of the analysis are presented in chapter three.

## Survey of Summary Jury Trial Participants

Three groups of attorneys were surveyed (by telephone interview or questionnaire) for the study: attorneys whose cases were assigned to summary jury trial but settled before the actual proceedings; attorneys whose cases settled after summary jury trial; and attorneys whose cases went through summary jury trial but then went on to trial de novo because the summary jury trial did not result in settlement.

Jurors who had participated in summary jury trial proceedings were surveyed by mail.

The two magistrates who presided over the bulk of cases assigned to summary jury trial prior to and during the study period were interviewed regarding their perceptions of the cases they heard and the motivation and performance of attorneys who argued cases before them at summary jury trial.

The Cleveland federal courthouse jury clerk was interviewed for the study in order to identify some of the effects of summary jury trial on the use and assignment of jurors.

6

III. F

Profile and St

Thirty-seven ca
February 26, 198
thirty-four were
1981, thirty of th
post-summary ju
Eleven of the
summary jury tr
mary jury trial p
were heard by I
Magistrate Stree
A demand for :
cases that went t
before the trial d
out calls for trial
to be bound by th
jury trial verdict:
visory.
The settlement
could not be dete
were in post-sun
awaiting full tria
trial worked well
trials had they ne
Thirty (81 perc
in this study ha
Eleven (30 perce
trial; fifteen (41 :
requests for full
trial resulted, tw
percent) settled t
come of full trial!

# III.  FINDINGS AND DISCUSSION

## Profile and Status of Cases Assigned to Summary Jury Trial

Thirty-seven cases were assigned to summary jury trial between February 26, 1980, and October 6, 1980 (see table 1). Of these cases, thirty-four were personal injury tort actions. As of January 31, 1981, thirty of the cases had settled, six were in various stages of post-summary jury trial negotiation, and one was set for full trial.

Eleven of the thirty-seven cases settled without going through summary jury trial. The other twenty-six cases went through summary jury trial proceedings; five were heard by Judge Lambros, ten were heard by Magistrate Perelman, and eleven were heard by Magistrate Streepy.

A demand for a full trial was the result in five of the twenty-six cases that went through summary jury trial (two of the five settled before the trial date). Fifteen settled after summary jury trial without calls for trial de novo. In none of these cases had parties agreed to be bound by the summary jury trial outcome. Thus, all summary jury trial verdicts in cases discussed in this report were purely advisory.

The settlement rate of the cases assigned to summary jury trial could not be determined because at the time of this study, six cases were in post-summary jury trial negotiation, and one case was awaiting full trial. A tentative conclusion is that summary jury trial worked well in settling cases that might have gone on to full trials had they not been assigned to such a procedure.

Thirty (81 percent) of the thirty-seven cases under consideration in this study had settled by the time this report was written. Eleven (30 percent) of these cases settled before summary jury trial; fifteen (41 percent) settled after summary jury trial without requests for full trial. Of the five cases for which demands for full trial resulted, two (5 percent) settled before the trial date, two (5 percent) settled through trial (one during trial and one as an outcome of full trial), and one is awaiting trial.

7

Chapter III

**TABLE 1**
**Status of Cases Assigned to Summary Jury Trial (SJT)**

| Case Number | Nature of Suit | Date SJT Notice Sent | Settled Pre-SJT | Settled Post-SJT | Outcome |
|---|---|---|---|---|---|
| C75-988 | 330 | 3 13 | | X | |
| C75-1014 | 360 | 3 7 | | X | |
| C75-1113 | 365 | | X | | |
| C76-79Y | 330 | 3 13 | X | | |
| C76-98Y | 360 | 7 2 | | X | |
| C76-102Y | 440 | 9 15 | | X | |
| C76-109Y | 365 | 5 24 | | X | |
| C76-127Y | 350 | 3 10 | | X | |
| C76-159Y | 355 | 3 13 | | X | |
| C76-217Y | 195 | 6 16 | | X | |
| C77-15Y | 330 | 9 2 | | X | |
| C77-28 | * | 3 27 | | X | |
| C77-58Y | 330 | 3 12 | | | Settled without trial |
| C77-96Y | 360 | 3 7 | X | | |
| C77-133Y | 350 | 4 7 | | | Settled without trial |
| C77-161Y | 355 | 3 25 | X | | |
| C77-224Y | 350 | 6 9 | | | Pending |
| 78-67Y | 190 | 9 24 | | | Pending |
| C78-81Y | 330 | 6 9 | | X | |
| C78-94Y | 350 | 3 11 | | | Went through trial |
| C78-1162 | 320 | 6 12 | X | | |
| 78-1174Y | 360 | 6 19 | | X | |
| C78-1608Y | 365 | 2 26 | | X | |
| C78-1625 | 340 | 6 12 | X | | |
| C78-1701 | 330 | 6 12 | X | | Pending |
| C79-565 | 340 | 6 9 | | | Pending |
| C79-593Y | 340 | 6 12 | X | | |
| C79-653 | 350 | 6 18 | | | Settled during trial |
| C79-772 | 330 | 6 10 | X | | |
| C79-773 | 360 | 6 12 | | | Trial pending |
| C79-839 | 360 | 6 27 | X | | |
| C79-921 | 350 | 3 3 | | X | |
| C79-1135 | 350 | 6 12 | X | | |
| C79-1236 | 360 | 6 12 | | X | |
| C79-1307 | 330 | 6 10 | | | Pending |
| C79-1694Y | 330 | 6 9 | | | Pending |
| 80-338 | 350 | 10 6 | | | Pending |

NOTE: The cases listed were assigned to SJT between Feb. 26 and Oct. 6, 1980. The table lists their status as of Jan. 31, 1981.

\* This case was a personal injury suit.

that went [...] percent) [...] into moti[...]

These [...] of the set[...] Because [...] post-sum[...] because [...] settle bef[...] probably [...]

**Vic[...]**

At the [...] ions and [...] thirty-sev[...] plaintiff [...] settlemen[...] about the[...] general [...] question[...] Although [...] some had [...] three.

Eighte[...] torneys [...] sponse r[...] question[...] neys who[...] One plai[...] ed to the[...] therefore [...] tiff and e[...]

The qu[...]

- To [...] goo[...] gun[...]

- To [...] com[...] bee[...]

Of the thirty-seven cases studied, then, twenty-eight (76 percent) had settled by the time this report was written, without full-trial proceedings having been set into motion. Of the twenty-six cases

8

*Findings and Discussion*

that went through summary jury trial proceedings, seventeen (65 percent) had settled without full-trial proceedings having been set into motion.

These preliminary figures provide a very conservative estimate of the settlement rate of the cases assigned to summary jury trial. Because it is unlikely that all six cases now in various stages of post-summary jury trial negotiation will go through full trial, and because it is possible that the one case now awaiting trial will settle before trial, the ultimate settlement rate for these cases will probably be higher than 76 percent.

## Views of Attorneys Whose Cases Settled after Summary Jury Trial

At the end of November 1980, questionnaires that solicited opinions and observations about summary jury trial were mailed to thirty-seven attorneys who had participated, as counsel for the plaintiff or the defendant, in summary jury trials that resulted in settlements. The three-page questionnaire asked for information about the particular cases attorneys had participated in, as well as general evaluations of the procedure. Attorneys were sent one questionnaire for each summary jury trial they had taken part in. Although most attorneys had participated in only one such trial, some had participated in two, and one attorney had participated in three.

Eighteen completed questionnaires were returned by sixteen attorneys (six for plaintiffs and ten for defendants); thus the total response rate for the survey was 43 percent. A second mailing of questionnaires during the second week of December 1980 to attorneys who had not responded did not yield any additional returns. One plaintiff's attorney and one defendant's attorney who responded to the survey had each participated in two summary jury trials; therefore, the final sample comprised seven attorneys for the plaintiff and eleven attorneys for the defendant.

The questionnaire (see appendix E) asked attorneys:

- To rate the extent to which summary jury trial provided a good or poor opportunity to present all of the evidence and arguments favoring their side of the case
- To rate the rapidity of resolution of the case they argued, compared with what they would have expected if the case had been assigned immediately to full trial

9

*Chapter III*

- To describe the role that summary jury trial played in the termination of the case

- Whether they thought a full trial would have yielded a different outcome

- To compare the time and effort the case required of them with what they would have expected had the case not been assigned to summary jury trial

- Whether the case required more or less of their client's time than it would have if it had not been assigned to summary jury trial

- Whether they thought the difference between the charge to jurors that concluded the summary jury trial and the charge that would have concluded a full-trial presentation of the same case had any effect on the outcome

- Whether, in retrospect, they would have preferred that the case had been assigned immediately to full trial rather than to summary jury trial

- Whether their client had commented on the summary jury trial procedure, and if so, what the nature of those comments was

- Whether they would like to use summary jury trial again

- Their general opinion of summary jury trial.

The results of the analysis of the returned questionnaires are presented in table 2. The majority of attorneys, regardless of the party they represented, expressed satisfaction with the opportunity summary jury trial provided them to present the evidence and arguments favoring their side of the case. Plaintiffs' attorneys expressed greater satisfaction on this dimension than defendants' attorneys did, however. Of the plaintiffs' attorneys who responded to the survey, 72 percent rated the opportunity to present their cases as "very good"; 14 percent rated it as "adequate." Of the defendants' attorneys who responded, 18 percent rated the opportunity to present their cases as "very good"; 36 percent rated it as "adequate."

These reports contrast sharply with the views expressed by plaintiffs' attorneys whose cases did not settle through summary jury trial but went on to full trial (see "Views of Attorneys Whose Cases Went On to Full Trial" *infra*).

10

*Findings and Discussion*

The majority of plaintiffs' and defendants' attorneys who responded to the survey indicated that assignment to summary jury trial resulted in more rapid resolution of their cases than they would have expected had their cases been assigned immediately to full trial. Again, summary jury trial was evaluated more favorably on this dimension by counsel for the plaintiff than by counsel for the defendant. Seventy-two percent of the plaintiffs' attorneys responded that the resolution of their cases was "much more rapid"; 28 percent said that it was "somewhat more rapid." Of the defendants' attorneys, 46 percent said that the resolution of their cases was "much more rapid"; 9 percent said that it was "somewhat more rapid."

Responses of counsel for both sides to an open-ended question that asked the attorneys to describe the role that summary jury trial played in the resolution of their cases indicated that summary jury trial was indeed serving some of the functions Judge Lambros hoped it would serve.

Among the responses of plaintiffs' attorneys to this question were the following:

It was very effective in bringing the parties together from a standpoint of bringing home to the defendants the potential exposure of the case.

The jury verdict reflected a disposition of the case that, although not binding, could be duplicated upon full trial, and the parties settled accordingly.

Shocked insurance people into realization that potential was high, as I had projected in settlement discussions.

Responses of attorneys for defendants included the following:

Made the plaintiff more realistic in terms of liability issues and dollar value.

The summary jury trial "aired" the evidence. It gave plaintiff "his day in court." It permitted both sides to hear the evidence contrary to its point of view.

Sharpened the perception of the defendant as to exposure; lessened the plaintiff's demands.

None of the plaintiffs' attorneys predicted that a full trial of the same case would have yielded an outcome that differed from that of the summary jury trial. Of the three attorneys for the defendant who predicted that full trial would have yielded a different outcome, only one said he thought he would have been more success-

11

*Chapter III*

## TABLE 2
### Views of Summary Jury Trial Given by Attorneys Whose Cases Settled after Summary Jury Trial

To what extent did the summary jury trial provide you with a good or poor opportunity to present all of the evidence and arguments favoring your side of the case?

| Attorneys | Very Good | Adequate | Inadequate | Very Poor |
|---|---|---|---|---|
| Plaintiffs' (n = 7) | 5 72% | 1 14% | 1 14% | 0 0% |
| Defendants' (n = 11) | 2 18% | 4 36% | 3 28% | 2 18% |

Compared to what you would have expected of this case if it had been assigned immediately to full trial, do you feel that the summary jury trial resulted in a more or less rapid resolution of this case?

| Attorneys | Much More | Somewhat More | About the Same | Somewhat Less | Much Less | Don't Know |
|---|---|---|---|---|---|---|
| Plaintiffs' (n = 7) | 5 72% | 2 28% | 0 0% | 0 0% | 0 0% | 0 0% |
| Defendants' (n = 11) | 5 46% | 1 9% | 4 36% | 1 9% | 0 0% | 0 0% |

Do you think that the difference between the charge to jurors that concluded the summary jury trial presentation and the charge that would have concluded a full-trial presentation of the same case had any effect on the outcome of the summary jury trial?

| Attorneys | Yes | No | Don't Know |
|---|---|---|---|
| Plaintiffs' (n = 7) | 1 14% | 3 43% | 3 43% |
| Defendants' (n = 11) | 5 46% | 4 36% | 2 18% |

In retrospect, would you have preferred that the case be assigned immediately to full trial rather than to summary jury trial?

| Attorneys | Yes | No | Don't Know |
|---|---|---|---|
| Plaintiffs' (n = 7) | 0 0% | 6 86% | 1 14% |
| Defendants' (n = 11) | 5 46% | 5 46% | 1 8% |

Would you like to use summary jury trial again?

| Attorneys | Yes | No |
|---|---|---|
| Plaintiffs' (n = 7) | 7 100% | 0 0% |
| Defendants' (n = 11) | 9 82% | 2 18% |

12

*Findings and Discussion*

## TABLE 2 (Continued)

Would a full trial have yielded a different outcome?

| Attorneys | Yes | No | Don't Know |
|---|---|---|---|
| Plaintiffs' (n = 7) | 0 0% | 3 43% | 4 57% |
| Defendants' (n = 11) | 3 28% | 4 36% | 4 36% |

Do you feel that this case required more or less of your own time and effort than it would have if it had not been assigned to summary jury trial?

| Attorneys | Much More | Somewhat More | About the Same | Somewhat Less | Much Less | Don't Know |
|---|---|---|---|---|---|---|
| Plaintiffs' (n = 7) | 1 14% | 2 29% | 1 14% | 1 14% | 2 29% | 0 0% |
| Defendants' (n = 11) | 1 9% | 3 27% | 0 0% | 2 18% | 5 46% | 0 0% |

Do you feel that this case required more or less of your client's time than it would have if it had not been assigned to summary jury trial?

| Attorneys | Much More | Somewhat More | About the Same | Somewhat Less | Much Less | Don't Know |
|---|---|---|---|---|---|---|
| Plaintiffs' (n = 7) | 0 0% | 0 0% | 0 0% | 3 43% | 4 57% | 0 0% |
| Defendants' (n = 11) | 1 9% | 1 9% | 3 28% | 0 0% | 6 54% | 0 0% |

ful in a full trial; the other two predicted different outcomes because of the complexity of their particular cases.

Attorneys' estimates of the time and effort the cases required of them, compared with what they would have expected had the cases not been assigned to summary jury trial, varied widely. Comments accompanying the responses indicated that this dispersion in estimates was related to different bases of comparison and that preparation for summary jury trial was considered somewhat less time-consuming than preparation for full trial but more time-consuming than preparation for pretrial hearing.

Evaluations of the demands on client time imposed by assignment of cases to summary jury trial were more clear-cut. A majority of plaintiffs' attorneys (57 percent) and defendants' attorneys (54 percent) estimated that assignment of their cases to summary jury trial had required "much less" of their clients' time than the cases would have required if they had not been so assigned.

13

*Chapter III*

With regard to the effect the abbreviated charge to jurors that concluded the summary jury trial had on the outcome of the case, a majority of plaintiffs' attorneys (86 percent) and defendants' attorneys (54 percent) thought there was no effect or did not know whether there was any effect.

The five attorneys for the defendant who indicated that the abbreviated charge to jurors did affect the outcome of the case attributed this effect to the complexity of the case they were arguing and the oversimplification and loss of meaning of the charge resulting from the brief summary jury trial presentation.

Although none of the plaintiffs' attorneys indicated that, in retrospect, they would have preferred that the case had been assigned immediately to full trial rather than to summary jury trial, almost half (46 percent) of the defendants' attorneys said they would have preferred such an assignment. Comments accompanying this response from defendants' attorneys included the following:

> I would have preferred that the case be assigned for trial within a reasonable time following the filing of the case.

> Obviously the case was settled, but if it did not I would have given plaintiff all the evidence I possessed and my view of the law. He should have been much more prepared the second time around.

> I abhor the concept. While it worked to settle this particular case, I don't believe it should be used extensively.

All the plaintiffs' attorneys who responded to the survey indicated that they would like to use summary jury trial again; most of the defendants' attorneys (82 percent) said they would like to use it again. All these affirmative responses were qualified, however.

Comments accompanying responses to the question concerning the attorneys' willingness to use the summary jury trial procedure again and responses to an open-ended item that solicited attorneys' general opinions of summary jury trial indicated that the majority of attorneys who responded believe that summary jury trial is appropriate for a narrow range of cases. Many attorneys said they would like to have some say in whether or not particular cases are assigned to summary jury trial.

Attorneys' comments included the following:

> Although I fully support the concept of a summary jury trial both for the purposes of aiding settlements and educating attorneys as to both the strengths and weaknesses of their case, I feel it should be restricted to relatively simple claims. . . . It is my opinion that, although discrimination claims can be presented effectively

14

*Findings and Discussion*

e to jurors that
ome of the case,
 defendants' at-
r did not know

ed that the ab-
the case attrib-
re arguing and
harge resulting

ed that, in ret-
l been assigned
ry trial, almost
ey would have
nying this re-
ring:

ial within a

have given
he law. He
around.

icular case.

arvey indicat-
gain; most of
like to use it
owever.

1 concerning
al procedure
ed attorneys'
the majority
y trial is ap-
ys said they
ar cases are

rial both
rneys as
it should
opinion
fectively

with the format, in the future, I should be extremely hesitant to
use it for any claims other than those involving a single plaintiff.

If I had control over case flow, I would only send admitted liabili-
ty cases to the summary procedure. Perhaps I would also send dis-
puted liability cases with *very* simple legal issues.

It is appropriate only to limited kinds of cases such as where par-
ties are few (i.e., only one plaintiff and one or two defendants),
and, therefore, there are few attorney presentations to the jury.
Also it should be limited to cases where the issues can be briefly
presented to the summary trial jury without testimony which is
excluded in this type of proceeding. Also, obviously issues of law
cannot be presented, and these proceedings should be confined to
issues of fact and the summary trial juries should be permitted to
determine and apportion damage claims.

In complex cases I feel it has no virtue; in simple cases where the
issue is essentially one of damages, it has merit.

It can be a good tool but many problems exist. These include ad-
missibility of evidence, excessive "jury" awards which make settle-
ment more difficult, lack of cross-examination, etc.

Thus, most of the attorneys whose cases settled after summary
jury trial (a) were satisfied with the opportunity summary jury
trial provided them to present evidence and arguments, (b) said
that the assignment of their cases to summary jury trial resulted
in more rapid resolution of the cases than assignment to full trial
would have, and (c) indicated a willingness to use summary jury
trial again.

## Views of Attorneys Whose Cases Settled before
## Summary Jury Trial

In an effort to compare the impetus for settlement provided by
assignment of a case to summary jury trial and that provided by
assignment of a case to other federal court procedures (i.e., pretrial
hearing, full trial), we surveyed a group of attorneys whose cases
were assigned to summary jury trial but settled before the actual
proceeding.

Eleven attorneys (six for plaintiffs and five for defendants) were
interviewed by telephone during the first half of December 1980.
The attorneys were asked (see appendix E):

• Whether assignment to summary jury trial resulted in a more
  or less rapid resolution of the case, compared with what they

15

would have expected if the case had been assigned immediately to full trial

- Whether the case had required more or less of their own time and effort than it would have if it had not been assigned to summary jury trial
- Whether the case had required more or less of their client's time than it would have if it had not been assigned to summary jury trial
- Whether they had any comments they wanted to make about summary jury trial.

The results of the analysis of interview responses are presented in table 3.

In response to the first three questions of the interview, which pertained to the impact of assignment to summary jury trial on the speed of resolution of the case and the amount of time required of the attorney and the client, the majority of both plaintiffs' attorneys (66 percent) and defendants' attorneys (60 percent) said that assignment to summary jury trial, per se, had no effect on those aspects of the case.

Those attorneys who stated that assignment to summary jury trial resulted in more rapid resolution of their cases said that they could not have been assigned to a full trial as quickly as they were assigned to a summary jury trial.

Those attorneys who said that assignment of their cases to summary jury trial had required more of their time and effort than the cases would have required had they not been so assigned were comparing their preparation with what would have been required in preparation for pretrial hearings. One attorney said that he would have been happier if the court had simply called for a pretrial hearing.

Perceived differences in demands on client time resulting from assignment of cases to summary jury trial hinged, in two instances, on clients' not having to be prepared for summary jury trial. One defendant's attorney who said that assignment of his case to summary jury trial required "somewhat more" of his client's time than would have been the case if such an assignment had not been made explained that the assignment necessitated his gathering from his client information that he would not otherwise have had to gather.

Although few of the attorneys in this group made substantive comments in response to the interview's final open-ended question about the summary jury trial, those who did echoed some of the concerns expressed by attorneys whose cases went on to full trial

Viev
Wh

Compared to wha
ately to full trial,
less rapid resolut

Attorneys

Plaintiffs'
(n = 6)

Defendants'
(n = 5)

Do you feel that tl
have if it had not

Attorneys

Plaintiffs'
(n = 6)

Defendants'
(n = 5)

Do you feel that th
had not been assi

Attorneys

Plaintiffs'
(n = 6)

Defendants'
(n = 5)

after summar
neys for the p

Summary
witnesses
can't asses
tion. I wish

I can't see
backs of a
nation. Ho
they want

### TABLE 3
### Views of Summary Jury Trial Given by Attorneys
### Whose Cases Settled before Summary Jury Trial

Compared to what you would have expected of this case if it had been assigned immediately to full trial, do you feel that assignment to summary jury trial resulted in a more or less rapid resolution of this case?

| Attorneys | Much More | Somewhat More | About the Same | Somewhat Less | Much Less | Don't Know |
|---|---|---|---|---|---|---|
| Plaintiffs' (n = 6) | 1 17% | 0 0% | 4 66% | 0 0% | 0 0% | 1 17% |
| Defendants' (n = 5) | 1 20% | 1 20% | 3 60% | 0 0% | 0 0% | 0 0% |

Do you feel that this case required more or less of your own time and effort than it would have if it had not been assigned to summary jury trial?

| Attorneys | Much More | Somewhat More | About the Same | Somewhat Less | Much Less | Don't Know |
|---|---|---|---|---|---|---|
| Plaintiffs' (n = 6) | 1 17% | 1 17% | 3 50% | 1 17% | 0 0% | 0 0% |
| Defendants' (n = 5) | 1 20% | 0 0% | 3 60% | 0 0% | 1 20% | 0 0% |

Do you feel that this case required more or less of your client's time than it would have if it had not been assigned to summary jury trial?

| Attorneys | Much More | Somewhat More | About the Same | Somewhat Less | Much Less | Don't Know |
|---|---|---|---|---|---|---|
| Plaintiffs' (n = 6) | 0 0% | 0 0% | 5 83% | 1 17% | 0 0% | 0 0% |
| Defendants' (n = 5) | 0 0% | 1 20% | 3 60% | 0 0% | 1 20% | 0 0% |

after summary jury trial. Following are the comments of two attorneys for the plaintiff:

Summary jury trial works against the plaintiff. You can't present witnesses for pain and suffering in personal injury cases. Jurors can't assess witness credibility. The plaintiff is in a no-win situation. I wish they'd scrap the whole thing.

I can't see how any plaintiff can win. It's got all the time drawbacks of a trial without the benefit of witnesses and cross-examination. How can you determine the credibility of a witness? If they want the law and the witnesses, they should ask for a brief.

17

With regard to the impetus summary jury trial provides for case settlement, one plaintiff's attorney said, "For simple cases, it's probably the same [as assignment to full trial]; for difficult cases, there probably is not as much pressure to settle if the assignment is to summary jury trial."

## Views of Attorneys Whose Cases Went On to Full Trial

Plaintiffs' and defendants' attorneys who participated in three cases that completed summary jury trial but went on to full trial because summary jury trial did not result in settlement were interviewed by telephone during the first half of December 1980. In the interviews attorneys were asked (see appendix E):

- To what extent the summary jury trial provided them with a good or poor opportunity to present all of the evidence and arguments favoring their side of the case
- How much of their time and effort the case required, compared with what it would have required if it had not been assigned to summary jury trial
- How much of their client's time the case had required, compared with what it would have required if it had not been assigned to summary jury trial
- Whether the difference between the charge to jurors that concluded the summary jury trial presentation and the charge that would have concluded a full-trial presentation of the same case had any effect on the outcome of the summary jury trial
- Why the summary jury trial outcome had not resulted in settlement of the case
- Whether their client had commented on the summary jury trial procedure, and if so, what the nature of those comments was
- Whether they would like to use summary jury trial again
- Their general opinion of summary jury trial.

A tabulation of the interview responses is presented in table 4. Regarding the extent to which summary jury trial provided them with a good or poor opportunity to present all of the evidence and arguments favoring their side of the case, two attorneys for the de-

*Findings and Discussion*

rial provides for case
or simple cases, it's
l]; for difficult cases,
le if the assignment

## On to Full Trial

articipated in three
vent on to full trial
ttlement were inter-
cember 1980. In the
):

ovided them with a
he evidence and ar-

ase required, com-
it had not been as-

had required, com-
it had not been as-

to jurors that con-
on and the charge
esentation of the
the summary jury

ot resulted in set-

he summary jury
f those comments

y trial again

ented in table 4.
al provided them
the evidence and
rneys for the de-

**TABLE 4**
**Views of Summary Jury Trial Given by Attorneys**
**Whose Cases Went on to Full Trial**

To what extent did the summary jury trial provide you with a good or poor opportunity to present all of the evidence and arguments favoring your side of the case?

| Attorneys | Very Good | Adequate | Inadequate | Very Poor |
|---|---|---|---|---|
| Plaintiffs' (n = 3) | 0 | 1 | 0 | 2 |
| Defendants' (n = 3) | 2 | 1 | 0 | 0 |

Do you feel that this case has required more or less of your own time and effort than it would have if it had not been assigned to summary jury trial?

| Attorneys | Much More | Somewhat More | About the Same | Somewhat Less | Much Less |
|---|---|---|---|---|---|
| Plaintiffs' (n = 3) | 0 | 2 | 1 | 0 | 0 |
| Defendants' (n = 3) | 1 | 2 | 0 | 0 | 0 |

Do you feel that this case has required more or less of your client's time than it would have if it had not been assigned to summary jury trial?

| Attorneys | Much More | Somewhat More | About the Same | Somewhat Less | Much Less |
|---|---|---|---|---|---|
| Plaintiffs' (n = 3) | 1 | 2 | 0 | 0 | 0 |
| Defendants' (n = 3) | 0 | 2 | 1 | 0 | 0 |

Do you think that the difference between the charge to jurors that concluded the summary jury trial presentation and the charge that would have concluded a full-trial presentation of the same case had any effect on the outcome of the summary jury trial?

| Attorneys | Yes | No | Don't Know |
|---|---|---|---|
| Plaintiffs' (n = 3) | 0 | 1 | 2 |
| Defendants' (n = 3) | 1 | 2 | 0 |

Would you like to use summary jury trial again?

| Attorneys | Yes | No |
|---|---|---|
| Plaintiffs' (n = 3) | 0 | 3 |
| Defendants' (n = 3) | 3 | 0 |

19

*Chapter III*

fendant considered the proceeding "very good," and two attorneys for the plaintiff considered the proceeding "very poor." The two other attorneys, one for the plaintiff and one for the defendant, rated their proceedings "adequate." The plaintiff's attorney qualified his response, saying that it pertained only to testimony and to the fact that the jurors had no opportunity to observe witnesses and evaluate their credibility.

Because their cases went on to full trial, attorneys in this group agreed that assignment of their cases to summary jury trial had required more time and effort of them and their clients than the cases would have required had they not been so assigned. The one attorney for the defendant who said the case had required "about the same" amount of his client's time had succeeded in having his client excused from appearing at the summary jury trial.

Five of the six attorneys interviewed either said that the difference between the charge made to jurors in the summary jury trial and the charge that would have concluded a full-trial presentation had no effect on the summary jury trial outcome or said that they did not know whether it had any effect. The one defendant's attorney who said that the charge did have an effect on the summary jury trial outcome had already been through the full trial of the case, in which there was a directed verdict on liability.

The responses of attorneys to the question that asked whether they would like to use summary jury trial again were neatly polarized: The plaintiffs' attorneys were unanimously opposed and the defendants' attorneys unanimously willing. This polarization is easily understandable in light of the summary jury trial outcomes alone. All three cases in this group involved personal injury claims. In the summary jury trials, juries found no liability in two of the cases and awarded $850 in the third case (plaintiff's demand in the latter case was for $60,000). Two of the cases had completed full trial at the time of the interviews. The plaintiff who had been awarded $850 at summary jury trial was awarded $25,000 at full trial. One of the cases in which the summary jury trial verdict was "no liability" settled for $9,000 during the plaintiff's presentation at full trial.

It should be noted, however, that in the latter case, the plaintiff's attorney said that because of a misunderstanding between himself and the magistrate presiding over the summary jury trial, he was not permitted to present testimony at the summary jury trial that, at full trial, resulted in settlement of the case.

Two of the three attorneys for the plaintiff interviewed said that the summary jury trial systematically works to the advantage of defendants.

20

## Jurors' Views of Summary Jury Trial

In mid-November 1980, questionnaires that solicited opinions and observations about summary jury trial were mailed to eighty-eight jurors who had served at summary jury trials. Of those questionnaires, four were returned by the post office as undeliverable, and forty-six (55 percent of the delivered questionnaires) were filled out by jurors, returned, and analyzed.

The one-page questionnaire (see appendix E) asked jurors:

- Whether they thought there was any difference between summary jury trial and full trial, and if so, to describe the difference.

- For comments about summary jury trial

- Whether they thought there was any difference in understandability between summary jury trial and full trial

- Whether they had ever served at full trials and, if so, at how many

The results of the analysis of the two multiple-choice questions used in the survey are presented in table 5. Almost three-quarters of the respondents (74 percent) answered "yes" to the question, "Do you think there is any difference between the summary jury trial and full trial?"

Responses to the question that solicited comments about summary jury trial demonstrate that the jurors had a good grasp of some of the differences between summary jury trial and full trial:

No witnesses to testify.

Done in shorter period of time. Don't have to come back next day.

Each attorney has the chance to present his side of the case without going through the process of presenting witnesses.

No witnesses; time limit hearing the case and time limit for jury deliberations; if a unanimous decision is not possible, jurors fill out individual form giving individual opinion.

With regard to the relative understandability of summary jury trial, almost half the respondents (48 percent) indicated that there was no difference (22 percent) or that they did not know whether there was a difference (26 percent). Over one-third of the respondents (35 percent) indicated that full trial was more understandable.

21

*Chapter III*

**TABLE 5**
**Jurors' Perceptions of the Differences between**
**Summary Jury Trial (SJT) and Full Trial**[*]

Do you think there is any difference between the summary jury trial and full trial?

| Yes | No | Don't Know |
|---|---|---|
| 34 | 3 | 9 |
| 74% | 6% | 20% |

Do you think there is any difference in understandability between summary jury trial and full trial?

| Full Trial Much More Understandable | Full Trial Somewhat More Understandable | No Difference |
|---|---|---|
| 10 | 6 | 10 |
| 22% | 13% | 22% |

| SJT Somewhat More Understandable | SJT Much More Understandable | Don't Know |
|---|---|---|
| 5 | 3 | 12 |
| 11% | 6% | 26% |

[*]Forty-six jurors responded to the questions.

Less than one-fifth of the respondents (17 percent) indicated that summary jury trial was more understandable.

Some of the jurors' responses to the open-ended question that solicited comments about the summary jury trial pertain to this perceived difference in understandability:

> It is hard to listen to someone for one hour who does not make everything clear or . . . is not a good speaker.

> Too much presented in too short a time.

> All depended on the presentations of two lawyers—no witnesses, no cross-examination, no arguments. Too much seemed left unsaid and not enough facts made absolutely clear.

> You really do not hear enough of the evidence.

> The summary jury trial left much to the imagination, whereas the regular jury trial gave a clearer picture through visual contact with the persons involved.

Many responses to this item, however, expressed an appreciation of the ends that summary jury trial is intended to serve and indi-

22

cated that summa___
dure to use toward

I feel the summa___
take up the cour___

Can see potentia___

Probably saves n___

It is impossible t___
perceptions occurr___
jurors' opinions a___
enced by the infor___
istrates and a few
ing response to the

After my summa___
room to tell us
answer any ques___
jury, we felt just
dict—and, I sus___
fairer because it
mary jury trial
types of cases cle___

Some jurors' co___
opinions elicited fr___
mary jury trial m___
and suitability for
with increasing co___

Judge Lambros.
bench had been ex___
trials from serving
lieved that serving
judgments at the f___
ous trial experienc___
between summary
sponses of jurors
jurors without suc___
(see table 6).

This separation
that may have in___
leagues to eliminat___
subsequent full-tri___
into the question

*Findings and Discussion*

cated that summary jury trial is perceived as a reasonable procedure to use toward those ends:

> I feel the summary jury trial would weed out a lot of cases that take up the court's time and would also save people money.

> Can see potential time savings to all concerned.

> Probably saves money involved in a long trial.

It is impossible to determine, however, the extent to which these perceptions occurred to the respondents spontaneously; some jurors' opinions about summary jury trial may have been influenced by the informal contact between Judge Lambros or the magistrates and a few of the juror panels. One juror wrote the following response to the open-ended query:

> After my summary jury trial was over, the judge came to the jury room to tell us how the summary jury trial originated and to answer any questions we had—also to solicit our comments. As a jury, we felt just as obligated to come to a fair and truthful verdict—and, I suspect, were able to reach that verdict faster and fairer because it was not absolutely binding. I believe the summary jury trial is an excellent tool, especially in getting certain types of cases cleared from the court docket.

Some jurors' comments about summary jury trial paralleled opinions elicited from many attorneys in the study—namely, summary jury trial may work better for some cases than for others, and suitability for assignment to summary jury trial may decrease with increasing complexity of the case to be tried.

Judge Lambros informed us that some of his colleagues on the bench had been excusing jurors who had served at summary jury trials from serving at subsequent full trials because the judges believed that serving at summary jury trials might affect the jurors' judgments at the full trial. Therefore, to determine whether previous trial experience affected jurors' perceptions of the differences between summary jury trial and full trial, the questionnaire responses of jurors with previous full-trial experience and those of jurors without such experience were sorted for separate analysis (see table 6).

This separation does not directly address the host of concerns that may have instructed the decision of Judge Lambros's colleagues to eliminate jurors who served at summary jury trials from subsequent full-trial service. However, it does provide some insight into the question whether experienced and unexperienced jurors

23

*Chapter III*

**TABLE 6**
**Experienced and Unexperienced Jurors' Perceptions**
**of the Differences between Summary Jury Trial (SJT)**
**and Full Trial (FT)**

Do you think there is any difference between the summary jury trial and full trial?

| Jurors | Yes | No | Don't Know |
|---|---|---|---|
| With trial experience* | 18 86% | 2 10% | 1 4% |
| With no trial experience | 16 64% | 1 4% | 8 32% |

Do you think there is any difference in understandability between summary jury trial and full trial?

| Jurors | FT Much More Understandable | FT Somewhat More Understandable | No Difference |
|---|---|---|---|
| With trial experience* | 7 33% | 4 19% | 3 14% |
| With no trial experience | 3 12% | 2 8% | 7 28% |

| Jurors | SJT Somewhat More Understandable | SJT Much More Understandable | Don't Know |
|---|---|---|---|
| With trial experience* | 3 14% | 2 10% | 2 10% |
| With no trial experience | 2 8% | 1 4% | 10 40% |

*Some respondents who reported previous full-trial experience specified that the experience was on grand juries. Because no provision for such experience was made on the questionnaire and because other jurors who indicated previous experience may have served only on grand juries, grand jury experience and full-trial experience were treated as a single category. (The number of experienced jurors was 21, the number of unexperienced jurors, 25.)

have diverse perceptions of the differences between full trial and summary jury trial.

Differences between the two groups of jurors—those with and those without full-trial experience—emerged in the analysis of responses to the question, "Do you think there is any difference between the summary jury trial and full trial?" The proportion of jurors with full-trial experience who thought there was a difference (86 percent) was larger than the proportion of jurors without full-trial experience who thought there was a difference (64 percent).

More pronounced diff...
were found in the anal...
that asked jurors wheth...
understandability betw...
a majority of jurors wit...
cated that there was no...
know if there was a di...
with full-trial experienc...
standable" (33 percent...
"somewhat more unders...

In response to the op...
jurors with full-trial ex...
that were "missing" fr...
full trial, than did jurors...

**Magistrates' V...**

Magistrates Perelman...
one of the twenty-six ca...
proceedings, were inter...
study. For seven of the c...
mediately following the...
cases, the magistrates w...
trates' observations reg...
which they had presid...
views, using a standar...
across cases. The magist...

• For an estimate of...
  full trial
• Whether the attor...
  the presentation of...
  attorneys at trial to...
• Whether it appear...
  were motivated in ...
  ations in anticipati...
• Whether it appear...
  were motivated in ...
  solve the dispute by...
• For a judgment, on...
  ance of attorneys (f...

24

*Findings and Discussion*

eptions
al (SJT)

rial and full trial?
Don't Know

1
4%

8
32%

ummary jury trial

No
Difference

3
14%

7
28%

Don't Know

2
10%

10
40%

ency was on grand juries.
ier jurors who indicated
l experience were treated
ted jurors, 29.1

full trial and

lose with and
analysis of re-
difference be-
proportion of
s a difference
r without full-
: (64 percent).

More pronounced differences between these two groups of jurors were found in the analysis of responses to the questionnaire item that asked jurors whether they thought there was any difference in understandability between summary jury trial and full trial. While a majority of jurors without full-trial experience (68 percent) indicated that there was no difference (28 percent) or that they did not know if there was a difference (40 percent), a majority of jurors with full-trial experience (52 percent) rated full trials "more understandable" (33 percent "much more understandable"; 19 percent "somewhat more understandable").

In response to the open-ended items on the juror questionnaire, jurors with full-trial experience commented more on the things that were "missing" from summary jury trial, as compared with full trial, than did jurors without such experience.

## Magistrates' Views of Summary Jury Trial

Magistrates Perelman and Streepy, who presided over twenty-one of the twenty-six cases that went through summary jury trial proceedings, were interviewed several times in the course of the study. For seven of the cases, the magistrates were interviewed immediately following the summary jury trial. For the remaining cases, the magistrates were interviewed at one sitting. The magistrates' observations regarding eighteen summary jury trials over which they had presided were elicited through in-person interviews, using a standard interview schedule to enable analysis across cases. The magistrates were asked (see appendix E):

- For an estimate of how long the case would have taken in a full trial

- Whether the attorneys were as well-prepared and earnest in the presentation of the case as the magistrates would expect attorneys at trial to be

- Whether it appeared that counsel for either or both parties were motivated in the summary jury trial by tactical considerations in anticipation of further litigation

- Whether it appeared that counsel for either or both parties were motivated in the summary jury trial by a desire to resolve the dispute by summary jury trial

- For a judgment, on a seven-point bipolar scale, of the performance of attorneys (for both parties) in the case.

25

*Chapter III*

The outcomes of the analysis of the magistrates' responses are presented in table 7. Of the thirty-six attorneys evaluated on presentation (eighteen for plaintiffs, eighteen for defendants), the magistrates indicated that twenty-five (69 percent) were as well-prepared and earnest as they would expect attorneys at trial to be. Overall, the magistrates rated more defendants' attorneys as well-prepared and earnest (83 percent) than they did plaintiffs' attorneys (55 percent).

According to the magistrates, a minority (17 percent) of the attorneys whose presentations they heard were motivated in the summary jury trial by tactical considerations in anticipation of further litigation. The magistrates' perceptions of such motivation, however, were slightly more frequent in their evaluation of plaintiffs' attorneys (22 percent) than in their evaluation of defendants' attorneys (11 percent).

The magistrates evaluated a majority (72 percent) of the attorneys they heard as motivated by a desire to resolve the dispute by summary jury trial. This evaluation, however, was applied to a larger proportion of defendants' attorneys (89 percent) than plaintiffs' attorneys (61 percent).

Overall, the magistrates gave favorable ratings to the attorneys' performances at summary jury trial. The magistrates rated attorneys' performances using a seven-point bipolar scale (1= "first-rate, about as good a job as could have been done"; 7= "very poor"). The average rating for all attorney presentations was 2.58 (roughly midway between "very good" and "good"). The average rating for defendants' attorneys (2.11; closer to "very good" than to "good"), however, was higher than that for plaintiffs' attorneys (3.06; closer to "adequate, but no better" than to "good").

The evaluations of attorneys' conduct at summary jury trial generally indicated that the magistrates believed that most of the attorneys took the summary jury trial seriously, using the procedure to pursue resolution of their cases (rather than as an opportunity to gain tactical advantage at subsequent full trial) and presenting their cases well.

Analysis of the magistrates' observations indicates that defendants' attorneys were more frequently viewed as well-prepared and motivated by a desire to resolve their cases by summary jury trial than were plaintiffs' attorneys. Moreover, ratings of presentations by defendants' attorneys were higher than ratings of presentations by plaintiffs' attorneys.

Both magistrates speculated that the difference between the motivation of plaintiffs' attorneys and that of defendants' attorneys might have been due in part to differences in their fee bases. Be-

26

...ates' responses are
...evaluated on pres-
...endants), the mag-
...were as well-pre-
...eys at trial to be.
...attorneys as well-
...id plaintiffs' attor-

...percent) of the at-
...motivated in the
...anticipation of fur-
...such motivation,
...valuation of plain-
...tion of defendants'

...cent) of the attor-
...lve the dispute by
...was applied to a
...ercent) than plain-

...s to the attorneys'
...trates rated attor-
...ale (1="first-rate,
..."very poor"). The
...was 2.58 (roughly
...average rating for
..." than to "good"),
...rneys (3.06; closer

...ary jury trial gen-
...at most of the at-
...ing the procedure
...as an opportunity
...l) and presenting

...ates that defend-
...well-prepared and
...mmary jury trial
...of presentations
...s of presentations

...between the mo-
...ndants' attorneys
...eir fee bases. Be-

## TABLE 7
### Magistrates' Evaluations of Attorneys' Motivation and Performance

Summary Jury Trial

| Case | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Were counsel for both parties as well-prepared and earnest in the presentation of their cases as you would expect attorney at trial to be? | | | | | | | | | | | | | | | | | | |
| Plaintiffs' | no | yes | yes | yes | yes | no | yes | yes | no | no | yes | no | no | no | yes | yes | no | yes |
| Defendants' | yes | yes | yes | no | yes | no | yes | no | yes | no | yes | no | no | yes | yes | yes | no | yes |
| Did it appear to you that counsel for either or both parties were motivated in the summary jury trial by tactical considerations in anticipation of further litigation? | | | | | | | | | | | | | | | | | | |
| Plaintiffs' | no | no | no | no | no | yes | no | no | * | no | yes | no | yes | no | no | no | no | no |
| Defendants' | no | no | no | no | no | no | yes | no | no | no | no | no | no | yes | no | no | no | no |
| Did it appear to you that counsel for either or both parties were motivated in the summary jury trial by a desire to resolve the dispute by summary jury trial? | | | | | | | | | | | | | | | | | | |
| Plaintiffs' | yes | yes | * | yes | yes | yes | yes | yes | yes | * | yes | no | yes | no | yes | yes | no | yes |
| Defendants' | yes | yes | * | yes | yes | yes | yes | yes | yes | yes | yes | no | yes | no | yes | yes | no | yes |
| What is your judgment of the lawyers' performance in this case (1 = first-rate, 7 = very poor)? | | | | | | | | | | | | | | | | | | |
| Plaintiffs'[a] | 3 | 3 | 2 | 1 | 3 | 2 | 1 | 4 | 3 | 6 | 1 | 4 | .7 | 5 | 2 | 1 | 3 | 3 |
| Defendants'[b] | 3 | 1 | 2 | 2 | 2 | 2 | 1 | 3 | 3 | 6 | 2 | 2 | .3 | 2 | 2 | 2 | 3 | 2 |

NOTE: Cases have been assigned arbitrary numbers to protect the anonymity of the magistrates' evaluations.
* indicates a "don't know" response.
[a] The mean of this row is 3.06.
[b] The mean of this row is 2.11.

27

*Chapter III*

cause the fees of plaintiffs' attorneys are based on settlements, and because the novelty of the summary jury trial and the nonbinding nature of summary jury trial verdicts do not provide plaintiffs' attorneys with a basis for confidence regarding settlement of the case through the procedure, resistance of these attorneys to the proceeding is understandable.

Nevertheless, the generally high ratings given all attorneys by the magistrates, and the substantial proportion of cases in the study that were settled by summary jury trial, argue against extreme concern about the observed differences in the motivation and performance of the two types of attorneys.

During the course of the interviews the magistrates were asked for their evaluations of the summary jury trial proceeding and their perceptions of its effects on the conduct of their office. The magistrates were confident about the usefulness of the procedure in the settlement of cases. Both magistrates believed that attorneys' exposure to the magistrates through this procedure would be beneficial in fostering the attorneys' willingness to have them preside over full-trial proceedings. The magistrates also indicated that their experience in summary jury trial proceedings provided good practice for full-trial work.

## Jury Clerk's Observations about Summary Jury Trial

In an effort to identify some of the effects of summary jury trial on the use and assignment of jurors, we interviewed Maria Bennett, jury clerk at the Cleveland federal courthouse, in early February 1981.

In response to a request from one of the judges that no jurors with summary jury trial experience be assigned to juror panels in his court, Bennett established a separate summary jury trial juror pool.

Some jurors are assigned to the summary jury trial pool by random draw from the population of jurors who would otherwise be assigned to the regular pool. Other jurors, whose time commitments might otherwise bar them from regular jury duty, are assigned to the summary jury trial pool because of the brevity and predictability of the length of summary jury trial duty. Bennett stated that because this second kind of juror would otherwise have been excused entirely from any jury duty, the establishment of the summary jury trial juror pool has enabled increased use of jurors.

"Most jurors like the shorter duty," Bennett reported, "but would like to serve on both kinds of trials." This observation was

28

corroborated by one of the jurors in the summary jury trial survey, who wrote, "Being 'stuck' on the summary jury trial, since we weren't chosen for regular trial after that experience, made many of us very unhappy." This juror was, however, aware of the "merits [of summary jury trial] in that it does cut down court time and costs and many abide by the summary jury trial decision."

Bennett said that establishment of the summary jury trial juror pool has not resulted in much extra work for her office. Indeed, she said that summary jury trial has saved her office work in that this procedure does not pose the kinds of day-of-trial settlement and change-of-plea problems often posed by regular trials. She speculated that the use of summary jury trial might, therefore, work to increase the district's overall juror utilization record.

# IV.   CONCLUSIONS AND RECOMMENDATIONS

Despite the objections to, and complaints about, summary jury trial expressed by some attorneys contacted in this study, it is clear that the procedure does serve the purposes Judge Lambros intended. Presentation of cases at summary jury trial results in settlement in a substantial proportion of instances. In the opinion of a number of the attorneys surveyed, assignment of cases to summary jury trial creates a greater impetus toward pretrial settlement than does assignment to other pretrial proceedings. Summary jury trial also enables magistrates to participate in the disposition of cases that would otherwise occupy the time of judges.

We believe that use of the procedure should continue. Some modifications in its use and conduct, however, are suggested by the outcomes of the study.

A majority of attorneys who offered opinions about the summary jury trial commented on its novelty as well as its procedure and content. Attorneys' negative comments about summary jury trial were primarily based on their resistance to preparing for an unfamiliar proceeding, rather than on their actual perceptions of the proceeding itself. Some such comments came from attorneys who had worked on cases that had been assigned to summary jury trial but had settled prior to the proceeding. Inasmuch as some of these attorneys had not even participated in a summary jury trial, their unfavorable views of the procedure appeared to be based primarily on its novelty rather than its content.

Several attorneys who responded to the survey said that their cases simply had not been ready for summary jury trial and that they had needed more time to prepare. In some instances this resulted in continuation of the summary jury trial. In others it resulted in dissatisfaction with the proceeding or its outcome.

Given the importance of tradition and precedent in the legal profession, it is reasonable to assume that the novelty of any new procedure would be sufficient cause for negative opinions. Resistance to innovation may also compound substantive criticism of the content of any new legal procedure. Therefore, the merits of a particular innovation may best be revealed by initially applying the inno-

31

*Chapter IV*

vation to situations in which it has been shown to be most effective, to situations in which participants believe it may be most effective, or to situations in which the consequences of failure are minimized.

Thus, although Judge Lambros is justifiably pleased with the success of summary jury trial thus far and is understandably enthusiastic about applying the procedure to a wider range of cases than it has been applied to thus far, there is a strong argument to be made for conservative application of the procedure until it builds up a longer history of success and becomes more familiar to the bench.

We recommend that a fairly narrow profile of cases suitable for routine assignment to summary jury trial be formulated. Despite the partial success of summary jury trial in multiparty suits, we suggest that the profile typically include only single defendant/single plaintiff cases. We also suggest that counsel in summary jury trials be routinely ordered to submit proposed jury instructions to the court and opposing counsel, to mark and exchange copies of all proposed exhibits, and to inform the court of their objections to any proposed exhibits. Magistrate Streepy is already using such an order in the Northern District of Ohio (see appendix G).

Cases in which the truthfulness of an individual witness's testimony plays a central role should be excluded from summary jury trial proceedings. In addition, guidelines for assessing the completeness of discovery should be established.

Although the proposed profile would only describe cases suitable for routine assignment, it should not be completely restrictive; wider application of the procedure should not be discouraged. Most of the attorneys who indicated that they would be willing to use summary jury trial again stipulated that they would want to be consulted regarding its appropriateness for specific cases. For cases that do not conform to the standards for routine assignment, consultation with counsel regarding the cases' suitability for summary jury trial could well work to increase the rate of settlement of these cases following summary jury trial.

Some of the uncertainties expressed by attorneys about preparation for summary jury trial might be reduced or eliminated by revising Judge Lambros's "Handbook and Rules of the Court for Summary Jury Trial Proceedings" (see appendix A). The formulation of procedural guidelines for the presentation of arguments at summary jury trial and emphasis on the similarity between attorneys' preparation for summary jury trial and preparation for full trial might reduce some of the existing resistance to the procedure.

32

*Conclusions and Recommendations*

shown to be most effec-
elieve it may be most ef-
sequences of failure are

ifiably pleased with the
id is understandably en-
), a wider range of cases
is a strong argument to
the procedure until it
ecomes more familiar to

file of cases suitable for
be formulated. Despite
in multiparty suits, we
only single defendant/
it counsel in summary
proposed jury instruc-
:o mark and exchange
n the court of their ob-
ate. Streepy is already
t of Ohio (see appendix

ividual witness's testi-
d from summary jury
ssessing the complete-

describe cases suitable
:ompletely restrictive;
: be discouraged. Most
)uld be willing to use
ey would want to be
ecific cases. For cases
tine assignment, con-
itability for summary
:ate of settlement of

rneys about prepara-
or eliminated by re-
es of the Court for
dix A). The formula-
:ion of arguments at
larity between attor-
preparation for full
ice to the procedure.

Beyond its effect on summary jury trials in Judge Lambros's court, implementation of these suggestions should work to facilitate the introduction of the summary jury trial procedure into other districts. It is probably not premature to suggest such an introduction. Although some attorneys contacted in the study said that it was primarily their respect for Judge Lambros that prompted them to suspend their skepticism about the procedure before they participated in it, a number of these attorneys said that they came out of the summary jury trial convinced of its intrinsic value in certain cases. Because the bulk of cases were handled by the magistrates, most of the attorneys who expressed willingness to use summary jury trial again did so without having been influenced by a judge's enthusiasm for the procedure.

The Center, then, might well encourage implementation of summary jury trial in other districts, particularly in districts that employ magistrates.

Evaluation of the long-term effects of summary jury trial on caseload management is beyond the scope of this study. Such long-term evaluation would best be conducted by the Center. Many of the cases observed in this study were relatively old; future evaluations of the summary jury trial should include observations of the impact of summary jury trial on recently filed cases so that attorneys' resentment about the delays in assignment to full trial does not bias their perceptions of summary jury trial.

Although evaluation of summary jury trial using more rigorous methods—for example, random assignment of cases to either summary jury trial or traditional procedures—is possible, we do not believe that such an approach is a good idea. Given the numerous dimensions on which cases may vary, it would simply take too long to build up adequate samples to satisfy the requirements of statistical analysis. Also, such an approach would hinder ongoing refinement in summary jury trial procedures because the evaluation could not allow for changes in the procedure without jeopardizing the validity of the findings.

We suggest, rather, that the Center initiate a set of tracking procedures to be applied to all cases assigned to summary jury trial. Instruments could be devised to ascertain the time spent on each summary jury trial by court personnel and the costs associated with jurors' participation in the procedure. Cases that did not settle after summary jury trial could be tracked through full trial to determine whether, as suggested by some plaintiffs' attorneys, summary jury trial favors the defense.

33

# APPENDIX A

## Judge Lambros's Handbook and Rules of the Court for Summary Jury Trial Proceedings

# Handbook and Rules of the Court for Summary Jury Trial Proceedings

## I. Introduction

The third important element of pretrial hearings is arriving at settlements. This possibility should be explored in every instance. While the pretrial judge may not, and should not, exert pressure to induce litigants to settle their cases, he can properly perform the function of a mediator or conciliator, and thereby in many instances assist in leading the parties to an agreement. [Report of the Committee on Pretrial Procedure to the Judicial Conference for the District of Columbia. 4 F.R.Serv. L.R. 47, p. 1015.]

There is a certain class of cases where the only bar to settlement among parties is the uncertainty of the perception of liability and damages by the members of a lay jury. These cases involve issues, like that of "the reasonable man" in negligence litigation, where no amount of jurisprudential refinement and clarification of the laws can aid in resolution of the case. In these cases, settlement negotiations must often involve an analysis of similar jury trials within the experience of counsel and the trial judge as to the findings of liability and damage. In this way, parties grope toward some notion of a likely award figure upon which to base and begin their negotiations.

More often than not, however, this comparison of past trial experience is in vain, and even an agreement on the facts and summary judgment on the liability issue only results in a slightly shorter trial on the issue of damages. I have for some time felt frustration over the need for trial in such cases where neither side wishes litigation and would be willing to consider reasonable settlement and to negotiate in good faith if only some sense of the lay perception of the case could be attained. I suspect that, in this regard, counsel's legal training is a disadvantage because knowledge of the law precludes an ability to see a case as would a lay jury.

In this type of case, I wish to give counsel a chance to sound a lay jury on its perception of liability and damage without affecting the parties' rights to a full trial on the merits and without a large investment of time or money. The summary trial provides a "no-risk" method by which counsel may obtain the perception of six jurors of the merits of their case in the course of a half-day pro-

*Appendix A*

ceeding so as to give parties a reliable basis upon which to build a just and acceptable settlement.

This proceeding *in no way affects* the parties' right to a full trial de novo on the merits. If one or both parties feel the result of the jurors' deliberations is grossly inequitable, the entire matter can be forgotten. Intelligent counsel, however, will readily recognize the value of the proceeding as a predictive tool, and will utilize it to obtain just results for their client at minimum expense.

## II.  Brief Description of the Proceeding

Stated most simply, summary jury trial is the presentation by counsel to a jury of their views of the case and the jury's decision based on such presentations. It is an amalgam of opening and closing arguments with an overview of the trial proofs. No testimony is taken from sworn witnesses. Counsel may restate the anticipated testimony of trial witnesses and are free to adduce exhibits for the jury. Because of the non-binding nature of the proceedings, evidentiary and procedural rules are few and flexible, and tactical maneuvering is kept to a minimum.

The summary jury trial proceeding itself is normally concluded in half a day, and will rarely extend beyond a full day. The proceeding may be presided over by either a district court judge or a magistrate upon assignment by the judge.

In order for any real benefit to be derived, it is essential that counsel have their case in a state of trial readiness when called for summary jury trial. Therefore, normally a pretrial conference will be held shortly before, particularly in those cases assigned to a magistrate. In all cases, unless excused by order of court, counsel are expected to submit requests for jury instructions and a memorandum of law on any novel issues presented by the case no later than three working days before the trial date.

At the summary jury trial attendance by the client or a client representative is expected. If appearance will work a hardship, leave must be sought by way of motion to excuse such attendance.

A jury venire of a sufficient number to provide a jury of six will be called. Counsel are provided with a short profile of each juror, stating:

1. juror's name and occupation.
2. juror's marital status.
3. juror's spouse's name and occupation.
4. names and ages of juror's children.
5. previous knowledge of the juror of any parties, counsel or the nature of the case.

38

6. adverse attitudes of the juror (if any) to the nature of the action.

The judge or magistrate interrogates the full panel. Counsel are permitted to exercise challenges—in a two-party action two apiece, with adjustment in case of multiple plaintiffs or defendants. The first six jurors seated after the challenges constitute the panel.

Counsel are usually given one hour each for their presentations, although adjustments are made for multiple parties which may extend the total beyond two hours. Plaintiff is permitted to reserve a limited time for rebuttal, and it is expected that such time will be used for true rebuttal. If a plaintiff "sandbags" the defendant by holding back on a critical element of the case, the defendant can be granted response time.

In making their statements to the jury, counsel are limited to presenting representations as to evidence which would be admissible at trial. While counsel are permitted to mingle representations of fact with argument, considerations of responsibility and restraint must be observed. Counsel may only present factual representations supportable by reference to discovery materials, including depositions, stipulations, signed statements of witnesses, or other documents, or by a professional representation that counsel personally spoke with the witness and is repeating what the witness stated. Statements, reports and depositions may be read from, but not at undue length.

Physical evidence, including documents, may be exhibited during a presentation and submitted for the jury's consideration during deliberations. Such exhibits are not marked, and at the end of the hearing are returned to the party tendering them.

By virtue of the nature of summary jury trial, objections are not encouraged. However, should counsel overstep the bounds of propriety as to a material aspect of the case, an objection will be received and, if well-taken, the jury admonished.

At the conclusion of the presentations the jury is given an abbreviated charge, and retires for its deliberations. The jury is given the option of returning a consensus verdict, or a special verdict anonymously listing the opinion of each juror as to liability and damages. The jury is encouraged to return a consensus verdict, and given ample time to reach such an agreement. The special verdict, however, does afford counsel some insights as to lay perceptions of the case and may suggest an equitable basis for settlement.

Summary jury trial is generally not recorded. Counsel may, if they wish, arrange for the attendance of a court reporter.

*Appendix A*

If the action is not resolved by counsel at or immediately following the trial proceeding, a pretrial is held before the court shortly thereafter to discuss settlement. It is anticipated that cases not disposed of through summary jury trial will be called for trial on the merits within 30 to 60 days of the summary hearing.

This outline of procedures is reflective of the terms of an order transmitted herewith which controls this action for purposes of all summary jury trial proceedings.

## III.   Basis of the Procedure

This procedure is new, but it is squarely grounded in the Federal Rules of Civil Procedure, both in spirit and technicality.

Remembering that the Rules are to be construed "to secure the just, speedy, and inexpensive determination of every action" [Rule 1, F.R.C.P.], I view this procedure as within a court's pretrial powers [Rule 16(6), F.R.C.P.] and inherent power to control its docket.

Pretrial procedures were born in Detroit in 1932, at a time when the state circuit court was far behind in its docket. Without enabling legislation and on its own initiative, the court set up a mandatory pretrial procedure system. When it became obvious that the pretrial concept was effective in speeding and streamlining cases, the movement spread to Cleveland, Boston and other areas, and was eventually adopted into the Federal Rules. *See* Laws and Stockman, Pretrial Conference (ABA Jud. Admin. Monograph, Series A, No. 4) 4; Comment, 33 Ill. L. Rev. 699 (1939).

As now embodied in Rule 16 of the Federal Rules of Civil Procedure, the pretrial device remains an open-ended tool for processing cases that gives the court wide discretion. As the Seventh Circuit explained in *O'Malley v. Chrysler Corp.*, 160 F.2d 35, at 36:

> The Federal Rules of Civil Procedure, Rules 34-36, 28 U.S.C.A. following section 723c, provide not only for discovery but for pretrial conference. (Rule 16.) Under these rules we think the Court has the wide discretion and power to advance the cause and simplify the procedure before the cause is presented to the jury. The District Court had the power to issue such orders as in the exercise of its sound discretion would advance and simplify the cause before trial. . . . [T]he order made in the instant case was such an order. It was only a step in the orderly procedure of the case. The District Court was exercising its pretrial powers. It would, in our opinion, have had the *power* to make the order it made irrespective of the Federal Rules of Civil Procedure.

*O'Malley* has been repeatedly confirmed by later courts (*see, e.g., Tracor, Inc. v. Premco Instruments, Inc.*, 395 F.2d 849 (5th Cir.

40

1968); *Buffington v. Wood,* 351 F.2d 292 (3d Cir. 1965)), and the only real limitation placed on a court's power under Rule 16 appears to be when the court's action would adversely prejudice a party's position or would compel counsel to adopt one line of trial strategy over another (*see, Identiseal Corporation of Wisconsin v. Positive Identification Systems, Inc.,* 560 F.2d 298 (7th Cir. 1977)). Neither of these two latter considerations is present in the summary trial procedure.

Use of summary trial procedures is necessary in certain cases because it provides one bit of information vital to a proper "sifting of issues and evidence . . . with the view of simplifying, shortening and possibly avoiding a trial" (3 Moore's Federal Practice, ¶16.02)—lay perception of the value of the claimed damages. Time and again, I have seen amicable settlement discussion frustrated merely because counsel and judge had no way of determining a proper figure upon which to build discussions. Often in such a case, a plaintiff will recover in settlement agreement an amount based on the ability of his counsel at forceful and cunning horse-trading; more often, parties are forced to expend thousands of dollars toward a lengthy trial that might have been avoided by a simple three-hour summary jury trial procedure. I am certain that the new procedure will aid in achieving more just settlements and in easing the docket load of the federal courts.

Although the specific procedure is new to the federal system, the idea behind it is familiar from Rule 39(c)—the advisory jury. Admittedly, that Rule provides for an advisory jury only in cases not triable as of right by jury. The clear purpose behind the Rule, however, is to give the court and the parties the opportunity to utilize a jury's particular expertise and perceptions when a case demands those special abilities.

In the summary trial, the court is similarly calling upon jurors to provide their peculiar expertise in a situation where that expertise is vital but not provided for by the present civil procedure practice.

As with every new procedure, the summary trial's success and acceptance or failure and rejection depend largely upon the cooperation of the bar. If counsel use this new tool to expedite cases and aid in settlement, it will be an important new step in the jurisprudential evolution of the federal courts. If the procedure is manipulated by unscrupulous counsel to delay justice and frustrate the court, it will not achieve its purpose. I ask your help in implementing and refining this procedure.

41

273-124 O - 82 - 4

*Appendix A*

## IV. Conclusion

Once again, I urge counsel's support in making this new procedural undertaking work and in providing me with suggestions for the improvement of the procedure in the future.

Thomas D. Lambros
United States District Judge

Dated: ...................

42

# APPENDIX B

## Juror Profile Form

# Juror Profile Form

### To the Juror

You have been selected to take part in a new experiment being conducted by Judge Lambros called a "summary trial." The Judge's clerk will explain the details of the procedure to you before trial, but, briefly, it is a summarized presentation of a case upon which you will be expected to decide the issues within one day. Your verdict will be an advisory opinion to aid in the resolution of the case.

To assist the Court in impaneling a summary jury, you are requested to answer the following questions. Your responses to these questions and such additional questions which may be asked of you by the Court will be helpful in the selection of an impartial summary jury.

At the conclusion of the proceedings, your comments and suggestions will be solicited.

### Questions:

1. Name.

2. Occupation and place of employment. (If retired, add your former occupation and place of employment.)

3. Are you married or single?

4. Your spouse's name.

5. Spouse's occupation and place of employment. (If retired, add the former occupation and place of employment.)

6. Your children's names and ages.

7. Do you know any of the parties or their counsel? If so, specifically state who.

8. Are you in any way personally connected with the facts of this case or do you have personal knowledge of this case? If so, state how.

45

*Appendix B*

9. Is there anything you can think of that would bias your opinion so that you would be unable to give a fair and just consideration to the merits of this case? If so, state what.

..................................................
Your signature

Judge La
Summ

46

lliam S. Sessions
  *District Court*
  *trict of Texas*

d.S. Voorhees
  *District Court*
  *t. of Washington*

d D. George
  *ankruptcy Court*
  *of Nevada*

B. Eldridge
*search*

O'Donnell
*ficial Affairs*
*nation Services*


2 8 1990
TS LIBRARY
N BRANCH
OF U.S. GOVT.

# APPENDIX C

## Judge Lambros's Rules of Procedure for Summary Trial Pretrial Procedure

## United States District Court for the Northern District of Ohio (Eastern Division)

In Re:

Rules of Procedure
For Summary Trial
Pretrial Procedure                    Order
(As amended 1/12/81)

Lambros, District Judge

1. This order is entered pursuant to Rule 16 of the Federal Rules of Civil Procedure and the inherent power of the Court to control the docket.

2. This action is designated as one for summary jury trial proceedings to be conducted by the Court or a Magistrate of this District upon assignment from the Court. If assigned to a Magistrate, the Magistrate is authorized to exercise the same authority which the Court may exercise.

3. The action shall be in trial readiness when called for summary jury trial, with an expectation of trial on the merits within 30-60 days thereafter if not otherwise disposed of.

4. This action shall be heard before a six-member jury, to be selected from a venire specially summoned for that purpose. Counsel will be permitted challenges to the venire—normally two challenges apiece. Counsel will be assisted in the exercise of challenges by a brief voir dire examination to be conducted by the presiding judicial officer and by juror profile forms.

5. Unless excused by order of court, no later than three working days before the date set for hearing counsel shall submit requests for jury instructions and briefs on any novel issues of law presented.

6. Unless excused by order of court, clients or client representatives shall be in attendance at the summary jury trial.

7. All evidence shall be presented through the attorneys for the parties, who may incorporate arguments on such evidence in their presentations. Only evidence that would be admissible at trial upon the merits may be presented. Counsel may only present factual representations supportable by reference to discovery materials, to a signed statement of a witness, to a stipulation, or to a document

49

*Appendix C*

or by a professional representation that counsel personally spoke with the witness and is repeating what the witness stated. Statements, reports and depositions may be read from, but not at undue length. Physical exhibits, including documents, may be exhibited during a presentation and submitted for the jury's consideration.

8. Prior to trial counsel shall confer with regard to physical exhibits, including documents and reports, and reach such agreement as is possible as to the use of such exhibits.

9. Objections will be received if in the course of a presentation counsel goes beyond the limits of propriety in presenting statements as to evidence or argument thereon.

10. After counsel's presentations the jury will be given an abbreviated charge on the applicable law.

11. The jury may return either a consensus verdict or a special verdict consisting of an anonymous statement of each juror's findings on liability and/or damages (each known as the jury's advisory opinion). The jury will be encouraged to return a consensus verdict.

12. Unless specifically ordered by the Court, the proceedings will not be recorded. Counsel may, if so desired, arrange for a court reporter.

13. Counsel may stipulate that a consensus verdict by the jury will be deemed a final determination on the merits and that judgment be entered thereon by the Court, or may stipulate to any other use of the verdict that will aid in the resolution of the case.

14. These rules shall be construed to secure the just, speedy and inexpensive conclusion of the summary jury trial procedure.

**It Is So Ordered.**

.............................................

Thomas D. Lambros
United States District Judge

Dated: ....................

50

personally spoke
ess stated. State-
but not at undue
ay be exhibited
consideration.
d to physical ex-
. such agreement

f a presentation
presenting state-

e given an abbre-

dict or a special
each juror's find-
e jury's advisory
onsensus verdict.
proceedings will
ge for a court re-

dict by the jury
ts and that judg-
stipulate to any
ition of the case.
just, speedy and
rocedure.

# APPENDIX D

# Jurors' Advisory Opinion Forms

## Jurors' Advisory Opinion

We, the Jury, have reached the following consensus:

The issue of liability having already been determined in favor of plaintiff(s) against defendant(s), we, the Jury, find that defendant(s) is/are liable in the amount of $ ...................

We, the Jury, being unable to arrive at a unanimous decision on the amount of liability, make the following anonymous, individual findings:

1. Defendant is liable in the amount of $ ...................

2. Defendant is liable in the amount of $ ...................

3. Defendant is liable in the amount of $ ...................

4. Defendant is liable in the amount of $ ...................

5. Defendant is liable in the amount of $ ...................

6. Defendant is liable in the amount of $ ...................

...................................
Foreperson

53

*Appendix D*

## Jurors' Advisory Opinion

Case No. ........................

We, the Jury, have reached the following consensus —
We, the Jury, find defendant
........... not liable.
........... liable, in the amount of ......................
........... liable, but we are not able to reach a unanimous deci-
sion as to the amount.

We, the Jury, being unable to reach a unanimous decision,
submit our anonymous, individual findings as follows:

1. ........... not liable.
   ........... liable, in the amount of ......................

2. ........... not liable.
   ........... liable, in the amount of ......................

3. ........... not liable.
   ........... liable, in the amount of ......................

4. ........... not liable.
   ........... liable, in the amount of ......................

5. ........... not liable.
   ........... liable, in the amount of ......................

6. ........... not liable.
   ........... liable, in the amount of ......................


........................
Foreperson

54

sus:

unanimous deci-

nimous decision,
ws:

# APPENDIX E

## Questionnaires and Interview Schedules Used in the Study

Cover Letters and Questionnaire Sent to Attorneys
Whose Cases Settled after Summary Jury Trial

373-124 O—82—5

November 25, 1980

Dear Attorney:

Summary jury trial procedures in the Northern District of Ohio are currently being studied for the Federal Judicial Center.

We have written to you to solicit your impressions of the summary jury trial proceeding(s) in which you recently participated,* and your overall impressions of the summary jury trial procedure.

As you know, the procedure is new. Its improvement, alteration, retention or elimination is dependent upon accurate information from those who have participated in it.

Please answer the questions on the enclosed questionnaire as frankly and as honestly as you can. Please do *not* put your name on the questionnaire. We have replaced personal identification with a coded number known only to Carl Moore and M.-Daniel Jacoubovitch, two researchers at Kent State University who are conducting this study for the Federal Judicial Center. At a later stage of this study, even this coded number will be dropped. At no time will your individual response be tied to your name, nor will individual identification be available to any other person. Your anonymity is guaranteed so that you may respond to the questions as freely as possible.

If you have any comments about summary jury trial above and beyond your responses to items on the questionnaire, please write them on the back of the questionnaire, or on separate sheets.

Please complete the questionnaire by December 5, and return it to us in the enclosed postage-paid envelope.

If you have any questions or concerns about the enclosed materials or the overall study, please do not hesitate to call us at Kent State University. Carl Moore can be reached at (216) 672-2659; M.-Daniel Jacoubovitch at (216) 672-2572.

We thank you for your kind consideration and assistance.

Sincerely,

Carl M. Moore

M.-Daniel Jacoubovitch

*If you did not present the case(s) identified on the following sheets at summary jury trial, please route these materials to the attorney(s) who did.

59

*Appendix E*

# Federal Judicial Center Summary Jury Trial Study—
## Attorney Questionnaire

Case Name: ............................
Case Number: ..........................
Attorney Identification Number: ...........................

To what extent did the summary jury trial provide you with a good or poor opportunity to present all of the evidence and arguments favoring your side of the case?

.......... very good
.......... adequate
.......... inadequate
.......... very poor

Compared to what you would have expected of this case if it had been assigned immediately to full trial, do you feel that the summary jury trial resulted in a more or less rapid resolution of this case?

.......... much more rapid
.......... somewhat more rapid
.......... about the same
.......... somewhat less rapid
.......... much less rapid
.......... don't know

Please explain:

Please describe the role that the summary jury trial played in the termination of this case.

Would a full trial have yielded a different outcome?

.......... yes
.......... no
.......... don't know

Please explain:

Do you feel that this case required more or less of *your own time and effort* than it would have if it had *not* been assigned to summary jury trial?

.......... much more
.......... somewhat more

60

*r* Trial Study—

.......... about the same
.......... somewhat less
.......... much less
.......... don't know

Please explain:

*le* you with a good
*ce* and arguments

Do you feel that this case required more or less of *your client's time* than it would have if it had *not* been assigned to summary jury trial?

.......... much more
.......... somewhat more
.......... about the same
.......... somewhat less
.......... much less
.......... don't know

*us* case if it had
*el* that the sum-
*esolution of this

Please explain:

Do you think that the difference between the charge to jurors that concluded the summary jury trial presentation and the charge that would have concluded a full-trial presentation of the same case had any effect on the outcome of the summary jury trial?

.......... yes
.......... no
.......... don't know

*played in the*

Please explain:

In retrospect, would you have *preferred that the case be assigned immediately to full trial rather than to summary jury trial?*

.......... yes
.......... no
.......... don't know

*ur own time*
*ned to sum-*

Please explain:

Has your client commented on the summary jury trial procedure?

.......... yes
.......... no

What was the nature of the comments?

Would you like to use summary jury trial again?

61

37-124 0 - 82 - 5

*Appendix E*

........... yes
........... no

Please explain:

What is your general opinion of summary jury trial?

Please complete this questionnaire and return it to us in the accompanying postage-paid envelope by December 5.

THANK YOU

62

*Questionnaires and Interview Schedules*

December 10, 1980

Dear Attorney:

About ten (10) days ago we wrote to you in order to solicit your impressions of the summary jury trial proceeding(s) in which you participated, and your overall impressions of the summary jury trial. If you have already returned the questionnaire, thank you very much. If not, please complete the enclosed questionnaire. We have enclosed a postage-paid envelope for your convenience.

Thank you for your attention to this matter.

Sincerely,

Carl M. Moore

M. Daniel Jacoubovitch

63

Interview Schedule Used in Telephone Survey of
Attorneys Whose Cases Went On to Full Trial

# Federal Judicial Center Summary Jury Trial Study—
## Attorney Questionnaire

Case Name: ...........................
Case Number: ...........................
Attorney's Name: ...........................

Attorney for: .......... plaintiff          .......... defendant

Compared to what you would have expected of this case if it had been assigned immediately to full trial, do you feel that assignment to summary jury trial resulted in a more or less rapid resolution of this case?

.......... much more rapid
.......... somewhat more rapid
.......... about the same
.......... somewhat less rapid
.......... much less rapid
.......... don't know

Please explain:

Do you feel that this case required more or less of *your own time and effort* than it would have if it had *not* been assigned to summary jury trial?

.......... much more
.......... somewhat more
.......... about the same
.......... somewhat less
.......... much less
.......... don't know

Please explain:

Do you feel that this case required more or less of *your client's time* than it would have if it had *not* been assigned to summary jury trial?

.......... much more
.......... somewhat more
.......... about the same

67

*Appendix E*

.......... somewhat less
.......... much less
.......... don't know

Please explain:

Do you have any comments you wish to make about summary jury trial?

Att

68

nmary jury

## Interview Schedule Used in Telephone Survey of Attorneys Whose Cases Settled before Summary Jury Trial

# Federal Judicial Center Summary Jury Trial Study—
## Attorney Questionnaire

Case Name: .............................
Case Number: ..........................
Attorney's Name: .........................

Attorney for ............ plaintiff ........... defendant

To what extent did the summary jury trial provide you with a good or poor opportunity to present all of the evidence and arguments favoring your side of the case?

.......... very good
.......... adequate
.......... inadequate
.......... very poor

Do you feel that this case has required more or less of *your own time and effort* than it would have if it had *not* been assigned to summary jury trial?

.......... much more
.......... somewhat more
.......... about the same
.......... somewhat less
.......... much less
.......... don't know

Please explain .............

Do you feel that this case has required more or less of *your client's time* than it would have if it had *not* been assigned to summary jury trial?

.......... much more
.......... somewhat more
.......... about the same
.......... somewhat less
.......... much less
.......... don't know

Please explain

71

*Appendix E*

Do you think that the difference between the charge to jurors that concluded the summary jury trial presentation and the charge that would have concluded a full-trial presentation of the same case had any effect on the outcome of the summary jury trial?

.......... yes
.......... no
.......... don't know

   Please explain:

Why has the summary jury trial *not* resulted in settlement of this case?

Has your client commented on the summary jury trial procedure?

.......... yes
.......... no

   What was the nature of the comments?

Would you like to use summary jury trial again?

.......... yes
.......... no

   Please explain:

What is your general opinion of summary jury trial?

THANK YOU

72

**Cover Letter and Questionnaire Sent to Jurors Who
Participated in Summary Jury Trials**

November 14, 1980

Dear Citizen:

Recently you were called upon to perform one of the most time-honored and cherished duties of any citizen of a democracy—serving as a juror.

As a juror you participated in a new trial procedure that has recently been introduced in the Northern District of Ohio—the summary jury trial.

We would like to call upon your kindness to assist us in a study of this new legal procedure. Attached to this letter is a questionnaire attempting to assess your reaction to the summary jury trial(s) for which you served as a juror.

As you know, the procedure is new. Its improvement, alteration, retention or elimination is dependent upon accurate information from those who have participated in it.

Please do *not* put your name on the questionnaire. We have replaced personal identification with a coded number known only to Carl Moore and M. Daniel Jacoubovitch, two researchers at Kent State University who are conducting this study for the Federal Judicial Center. At a later stage of this study, even this coded number will be dropped. At no time will your individual response be tied to your name, nor will individual identification be available to any other person.

We have taken these precautions not because any question in the questionnaire is embarrassing or personal, but rather to help you feel perfectly at ease so that you can respond openly and honestly. Please feel free to make additional comments about any particular question or about your experience as a juror in general; these comments would be most helpful.

Please complete the questionnaire by November 24, and return it to us in the enclosed postage-paid envelope. Your assistance in this study will contribute to the progress and improvement of the American legal system.

If you have any questions or concerns about the enclosed materials or the overall study, please do not hesitate to call us at Kent

*Appendix E*

State University. Carl Moore can be reached at (216) 672-2659; M.-Daniel Jacoubovitch at (216) 672-2572.

We thank you for your kind consideration and assistance.

Sincerely,

Carl M. Moore

M.-Daniel Jacoubovitch

**Federal Judi**

Juror Identificati

During your peri
mary jury trial. T
which attorneys
*summarize* their

Do you think th
trial and full tria

.......... yes
.........., no
.......... don't

If you answered

Do you have any
jury trial?

Do you think the
summary jury tri

.......... full tr
.......... full tr
.......... no dif
.......... SJT s
.......... SJT n
.......... don't

In addition to se
served as a juror

.......... yes
.......... no
.......... don't

If you answer
served on?   .......

Please complete
companying posta

**THANK YOU**

76

373-124 0 – 82 – 7

*Questionnaires and Interview Schedules*

# Federal Judicial Center Summary Jury Trial Study—
# Juror Questionnaire

Juror Identification Number: ..............................

During your period of jury service you served on at least one summary jury trial. The summary jury trial was the proceeding during which attorneys for opposing parties were given one hour each to *summarize* their cases before a six-member jury.

Do you think there is any difference between the summary jury trial and full trial? (please check one answer)

............. yes
............. no
............. don't know

If you answered "yes," what is (or are) the difference(s)?

Do you have any comments you wish to make about the summary jury trial?

Do you think there is any difference in understandability between summary jury trial (SJT) and full trial?

............. full trial much more understandable
............. full trial somewhat more understandable
............. no difference
............. SJT somewhat more understandable
............. SJT much more understandable
............. don't know

In addition to serving on the summary jury trial, have you ever served as a juror for a full trial?

............. yes
............. no
............. don't know

If you answered "yes," how many full-trial juries have you served on? ...............

Please complete this questionnaire and return it to us in the accompanying postage-paid envelope by November 24.

THANK YOU

77

Schedule Used in Interview of Magistrates Who Heard
Summary Jury Trial Cases

### Federal Judicial Center Summary Jury Trial Study—
### Magistrate Questionnaire

Hearing Officer: .............................

Number: ............................

Case Name: ...........................

How long would this case have taken in a full trial?

Were counsel for both parties as well-prepared and earnest in the presentation of their cases as you would expect attorneys at trial to be?

    plaintiff's counsel:
        .............. yes
        .............. no
    defendant's counsel:
        .............. yes
        .............. no

Did it appear to you that counsel for either or both parties were motivated in the summary jury trial by:

    tactical considerations in anticipation of further litigation?

    plaintiff's counsel:
        .............. yes
        .............. no
        .............. don't know
    defendant's counsel:
        .............. yes
        .............. no
        .............. don't know

    a desire to resolve the dispute by summary jury trial?

    plaintiff's counsel:
        .............. yes
        .............. no
        .............. don't know

81

*Appendix E*

defendant's counsel:
.......... yes
.......... no
.......... don't know

Which of the following statements best describes your judgment of
the plaintiff's lawyer's performance in this case?

.......... first-rate, about as good a job as could have been done
.......... very good
.......... good
.......... adequate, but no better
.......... not quite adequate
.......... poor
.......... very poor

Which of the following statements best describes your judgment of
the defendant's lawyer's performance in this case?

.......... first-rate, about as good a job as could have been done
.......... very good
.......... good
.......... adequate, but no better
.......... not quite adequate
.......... poor
.......... very poor

Comments about the case:

82

your judgment of

d have been done

# APPENDIX F

## List of Summary Jury Trial Cases Included in the Study

your judgment of

l have been done

## Appendix F

| Case Number | Case Title | Demand | Pre-SJT Offer | SJT Notice Date* |
|---|---|---|---|---|
| C75-988 | Perkins v. B&O R.R. Co. | $ 50,000 | $ 1,000 | |
| C75-1014 | Wrick v. Norfolk & Western | 15,000 | 0 | 3/13 |
| C75-1113 | Ross v. Schmid Labs, Inc. | | 0 | 3/07 |
| C76-79Y | Salman v. Conrail | 150,000 | 0 | |
| | | | | 3/13 |
| C76-98Y | Whittington v. N.J. Zinc | 30,000 | | |
| C76-102Y | Morris v. Republic Steel | 220,000 | 20,000– | 7/02 |
| | | | 25,000 | 9/15 |
| C76-109Y | Marks v. Emeny | 250,000 | 25,000 | |
| C76-127Y | Yeager v. Scott | 300,000 | 30,000 | 5/24 |
| | | | 100,000 | 3/10 |
| C76-159Y | Leone v. Floyd | 90,000 | 60,000 | |
| C76-217Y | Adgor v. Mellon Stuart | 175,000 | ** | 3/13 |
| C77-15Y | Simstad v. P&LE R.R. | 175,000 | 25,000 | 6/16 |
| C77-28 | Page v. Smith | 50,000 | 2,500 | 9/02 |
| C77-58Y | Silva v. Penn Central | 500,000 | less than | |
| | | | 100,000 | 3/12 |
| C77-96Y | Massi v. Penn Central | 50,000 | 0 | |
| C77-133Y | Klause v. Shebeck | 25,000 | 0 | 3/07 |
| C77-161Y | Leport v. Crawford | | 4,500 | 4/07 |
| | | | | 3/25 |
| C77-224Y | Gould v. Time, D.C. | 560,000 | | |
| 78-67Y | Norada Aluminum v. Jeffries Trucking | | 0 | 6/09 |
| | Jones v. P&LE R.R. et al. | | | |
| C78-81Y | Telishak v. Burlinski | 100,000 | 40,000 | 9/24 |
| C78-94Y | | 60,000 | 12,000 | 6/09 |
| | | | | 3/11 |
| C78-1162 | Green v. Dowdell | 70,000 | 0 | |
| 78-1174Y | Denson v. Brocker | 600,000 | 0 | 6/12 |
| C78-1608Y | Miller v. Riddell | 100,000 | 60,000 + | 6/09 |
| | | | 1,500 costs | 2/26 |
| C78-1625 | McGuire v. Columbia Trans. | | | |
| C78-1701 | Howard v. Conrail | 61,500 | 0 | |
| C79-565 | Nasir v. Bay Shipping | 800,000 | | 6/12 |
| C79-593Y | Zoellers v. Wellsville Terms | 10,000 | | 6/09 |
| C79-653 | Logan v. O'Neil | | 5,000 | 6/12 |
| | | | | 6/18 |
| C79-772 | Orseno v. Lake Terminal | 150,000 | | |
| C79-773 | Johnson v. Pringle Transit | 200,000 | 10,000 | 6/10 |
| C79-839 | Poczik v. Seashore Lanes | 15,000 | 1,000 | 6/12 |
| C79-921 | Jones v. Ingram | 27,500 | 17,500 | 6/27 |
| | | | | 3/03 |
| C79-1135 | Klingshirn v. Mullins | 750,000 | 0 | |
| C79-1236 | Welsh v. Cuyahoga Comm. Hosp. | 25,000 | 12,500 | 6/12 |
| C79-1307 | Eyerman v. P&LE R.R. | 200,000 | 0 | 6/12 |
| C79-1694Y | Unkel v. Conrail | 15,000 | 1,000– | 6/10 |
| | | | 1,500 | 6/09 |
| 80-338 | Koney v. Oligler | 35,000 | 5,000 | |
| | | | | 10/06 |

NOTE: Blanks in the data columns indicate either that the data were not retrievable or that the event did not occur.

*All notices were sent and hearings held in 1980.

**Defendants couldn't agree on offer.

84

*List of Cases*

| Pre-SJT | | | SJT Notice Date* | SJT Hearing Date* | Presiding Officer | SJT Verdict | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Demand | Offer | | | | | Unanimous | Individual |
| 50,000 | $ 1,000 | | 3/13 | 4/01 | L | | X |
| 15,000 | 0 | | 3/07 | 3/26 | L | X | |
| 50,000 | 0 | | 3/13 | | | | |
| 50,000 | 20,000- 25,000 | | 7/02 | 9/08 | S | | |
| 0,000 | 30,000 | | 9/15 | 10/01 | L | X | |
| 0,000 | 100,000 | | 5/24 | 7/09 | S | X | |
| 0,000 | 60,000 | | 3/10 | 4/10 | S | X | |
| 5,000 | ** | | 3/13 | 4/22 | S | X | |
| 5,000 | 25,000 | | 6/16 | 7/22 | P | X | |
| 0,000 | 2,500 | | 9/02 | 9/29 | S | | |
| 0,000 | less than 100,000 | | | 3/27 | L | | X |
| 0,000 | 0 | | 3/12 | 4/09 | P | X | |
| 5,000 | 4,500 | | 3/07 | | | | |
| | | | 4/07 | 4/21 | S | X | |
| 0,000 | 0 | | 3/25 | | | | |
| | | | 6/09 | 6/19 | S | X | |
| 0,000 | 40,000 | | 9/24 | 11/24 | S | | |
| 0,000 | 12,000 | | 6/09 | 7/03 | P | X | |
| 0,000 | 0 | | 3/11 | 4/11 | P | X | |
| 0,000 | 0 | | 6/12 | | | | |
| 0,000 | 60,000 + 1,500 costs | | 6/09 | 9/04 | P | | X |
| | | | 2/26 | 3/05 | L | X | |
| ,500 | 0 | | | 6/09 | | | |
| 000 | | | 6/12 | | | | |
| 000 | 5,000 | | 6/09 | 9/09 | P | X | |
| | | | 6/12 | | | | |
| 000 | 10,000 | | 6/18 | 7/10 | S | | |
| 000 | 1,000 | | 6/10 | | | | |
| 500 | 17,500 | | 6/12 | 7/02 | P | X | |
| | | | 6/27 | | | | |
| 000 | 0 | | 3/03 | 4/02 | P | X | |
| 000 | 12,500 | | 6/12 | | | | |
| 000 | 0 | | 6/12 | 7/22 | P | X | |
| 000 | 1,000- 1,500 | | 6/10 | 9/22 | S | X | |
| 000 | 5,000 | | 6/09 | 8/01 | S | X | |
| | | | 10/06 | 12/16 | P | X | |

or that the event did

85

# APPENDIX G

## Sample Order to Counsel Concerning Jury
## Instructions and Exhibits

## United States District Court for the Northern District
## of Ohio (Eastern Division)

Joan M. Ross, et al.,                    Case No. C75-1113
          Plaintiffs                     Judge Thomas D. Lambros

              -v-

Schmid Laboratories, Inc., etc.,

          Defendant                      Order

Streepy, Mag.

   With reference to the summary jury trial scheduled for July 23,
1980, the parties shall, on or before July 16, 1980:

   (1) Submit proposed jury instructions to the court and counsel;
and

   (2) Mark and exchange copies of all proposed exhibits they plan
to offer at said trial, and inform the court whether they object to
any proposed exhibit, setting forth reasons in support thereof. Fail-
ure to exchange a proposed exhibit shall constitute valid grounds
for objection to its admission. Failure to file an objection to any ex-
changed proposed exhibit shall constitute a waiver of any objection
thereto.


It Is So Ordered.


..........................................
Jack B. Streepy
United States Magistrate

Dated: ......................

                                                              89