UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION N-5<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT RELATES TO: ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT UNITED STATES OF AMERICA'S MEMORANDUM IN
SUPPORT OF ITS MOTION TO MODIFY ORDER (Rec. Doc. 7138) AND ENTER A
PROTECTIVE ORDER PROHIBITING FURTHER DISCOVERY OF FEMA IA FILES
EXCEPT UPON ENTRY OF A PLAINTIFF-SPECIFIC SCHEDULING ORDER OR,
ALTERNATIVELY, FOR AN ORDER SHIFTING COSTS**

Defendant United States of America ("United States") submits this Memorandum in support of its Motion to modify Magistrate Judge Chasez's November 10, 2009, Discovery Order ("Order") (Rec. Doc. 7138) based upon changed circumstances in this litigation. Specifically, the United States seeks a protective order that prohibits the further discovery of FEMA Individual Assistance Files ("IA Files") unless the requester is subject to a Plaintiff-specific scheduling order. In the alternative, the further discovery of FEMA IA Files should be limited to only those Plaintiffs who still have pending claims against the United States and should be subject to a cost shifting arrangement. This relief should be granted for two primary reasons. First, the reasons provided by the Plaintiffs' Steering Committee ("PSC") to justify its need for 200 FEMA IA Files per month at taxpayer expense no longer exist. PSC previously argued that it needed the production of thousands of IA Files (which take FEMA employees one

(1) hour each to produce)[1] concerning non-bellwether claimants to assist with matching plaintiffs to their trailer manufacturer and installation contractor, to facilitate settlement evaluation, and to help choose future bellwether claimants.  Simply put, these arguments are no longer persuasive given that PSC has had the opportunity to create a sizeable sample of some 2,000 IA Files over the past 10 months to assist in bellwether selection and settlement evaluation, and the fact that the matching process has now reached its conclusion per the terms of Pre-Trial Order 68 ("PTO 68") (Rec. Doc. 14200).  Although good cause no longer exists for an order allowing the discovery of a large number of IA Files, Plaintiffs are still currently permitted, per the November 10, 2009 Order, to burden the United States by monopolizing 200 hours of FEMA employee time each month, in perpetuity, taking FEMA employees away from their normal job tasks involving the provision of disaster assistance.  Such productions are also expensive, as the Order currently permits PSC to request approximately $10,000 worth of discovery per month at taxpayer expense, with only the Plaintiffs deriving any possible (albeit tenuous) benefit therefrom.  The United States has always voluntarily produced the IA Files for bellwether plaintiffs in short order after each bellwether plaintiff was selected, but continued IA File productions involving Plaintiffs not subject to a specific trial setting or scheduling order are no longer supported by Plaintiffs' claimed need for these files.

      Second, all IA File requests on behalf of individuals who have no remaining claims against the United States, such as all Mississippi and Alabama plaintiffs, are improper under the Federal Rules of Civil Procedure.  Since issuance of the November 2009 Order regarding IA

---

[1]     Citations to factual averments in this introduction are contained in the Factual Background and Argument sections, *infra*.

Files, the Court has entered judgment in the United States' favor, dismissing all claims brought by Mississippi and Alabama Plaintiffs, and has also dismissed all negligence claims brought by Louisiana Plaintiffs – leaving only the possibility that claims properly sounding in gross negligence and/or willful and wanton misconduct remain cognizable.[2]  Thus, the Court's IA File Order should also be vacated, in part, because it was premised on a motion to compel a discovery response to a request for production, and the discovery rules in the Federal Rules of Civil Procedure, Fed. R. Civ. P. 26-37, only apply to discovery requests propounded upon a *party*. The United States only remains a party to those cases brought by Louisiana Plaintiffs who have proper claims sounding in gross negligence and/or willful or wanton misconduct (if such claims exist).  A request on behalf of any other person is not the proper subject of a discovery request because it is not directed at a current party to their suit.

  For these reasons, the Court should (1) grant the United States' motion, (2) modify the prior Order, and (3) issue a protective order, given the changed circumstances since the initial IA File Order was entered ten (10) months ago.  Should the Court be inclined to permit future IA File requests by certain Louisiana Plaintiffs who seek to maintain gross negligence claims against the United States, the United States alternatively requests that the Court issue a Rule 26(c) protective order requiring the requesting party to bear the estimated costs of the IA File production, except for those requests made by a Plaintiff who is individually subject to a bellwether trial scheduling order.

---

[2]  The United States is not aware of any actions that have been filed against the United States by Texas plaintiffs, and the Court has previously dismissed all claims against the United States brought by individuals who occupied mobile homes.  *See* Order and Reasons, Rec. Doc. 717.

## PROCEDURAL HISTORY

On November 10, 2009, Magistrate Judge Chasez granted in part and denied in part PSC's Motion to Compel, ruling that the PSC may request, and the United States must produce, up to to 200 IA Files per month (Rec. Doc. 7138). That Order further instructed that the "Court holds in abeyance the Government's motion for cost shifting in connection with this production. The Government may re-urge that portion of its motion after the production ordered above has gone forward for a 90 day period so that a reasonable understanding of those costs can be evaluated." *Id.* at 2.

Since entry of the Order, the Court has dismissed all Louisiana Plaintiffs' FTCA negligence claims, and has also dismissed all Mississippi and Alabama Plaintiffs' claims against the United States in their entirety (with final judgment entered). *See* Order and Reasons (Rec. Doc. 14124) (LA Plaintiffs); Order and Reasons (Rec. Doc. 14486) and Entry of Judgment (Rec. Doc. 15058) (MS Plaintiffs); Order and Reasons (Rec. Doc. 15061) and Entry of Judgment (Rec. Doc. 15827 (AL Plaintiffs). Prior to November 2009, the Court had dismissed all claims against the United States brought by Plaintiffs who resided in manufactured housing units (mobile homes). *See* Order and Reasons (Rec. Doc. 717). At this time, the only potential claims that could remain pending against the United States are claims by Louisiana Plaintiffs that properly assert fault based upon gross negligence and/or willful and wanton misconduct.

## FACTUAL BACKGROUND

1. Individual Assistance information relating to disaster victims is maintained by FEMA in the National Emergency Management Information System ("NEMIS") database. NEMIS is an interactive database that contains information relating to all persons who have

applied for and/or received disaster aid from FEMA in response to a disaster.  *See* Exh. 2, Green Depo. P81:L20 - P82:L5.

2. The manner in which information is stored and maintained in the NEMIS database does not allow for it to be electronically downloaded and transferred.  *See id.* at P82:L12 - 83:L6.  Special software must be utilized to identify potentially responsive information, and each and every computer screen containing responsive information must individually be extracted.  *See id.* at P83:L4 - P83:L12.  Once the responsive information is identified and extracted and separately converted into digital form, all responsive information is combined, resulting in what is referred to as the Individual Assistance ("IA") File.  *See id.* at P130:L16 - P131:L12.

3. Based upon FEMA's experience responding to PSC's requests for IA Files made between December 2009, and July 31, 2010, it takes FEMA employees approximately one (1) hour to locate, retrieve, extract, and produce the Individual Assistance information requested by Plaintiffs.  Exh. 1, Green Decl. ¶ 3; *see also* Exh. 2, Green Depo. P131:L13 - P132:L2.  The average cost to locate, retrieve, and extract the information from the NEMIS database is $50.21 per claimant.  Exh. 1, Green Decl. ¶ 4.

### STANDARD OF REVIEW

The Court is afforded considerable discretion in managing discovery.  *See Munoz v. Orr*, 200 F.3d 291, 305 (5th Cir. 2000).  However, this broad discretion is not unlimited – a district court must exercise its discretion within the limitations placed upon it by the Federal Rules.  *Id.*  Only parties to an action are bound by the discovery rules found at Fed. R. Civ. P. 26 through 37.  *See*, *e.g.*, Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request [for

documents under this rule]."). Where a party is dismissed from an action, any pending discovery requests propounded on that party pursuant to that action become moot. *See Twohig v. Davis*, 1992 WL 396846 at *4 (E.D. La. 1992) (discovery request considered moot due to defendants' dismissals from the action as parties). In the event a party is dismissed from an action, any discovery of information from that entity must be obtained through a Rule 45 subpoena, not the discovery rules. *See* Fed. R. Civ. P. 45.

Where a party subject to a discovery request moves for a Rule 26(c) protective order, a court may, for good cause, issue an order to protect a party from undue burden or expense. A court must limit a discovery request issued by a party if the burden or expense of the proposed discovery outweighs its likely benefit, Fed. R. Civ. P. 26(b)(2)(C), or where the information sought is electronically stored and is "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). In ruling on a motion for a protective order, the Court may forbid the disclosure or discovery, or may otherwise place appropriate limitations on that discovery "on just terms." Fed. R. Civ. P. 26(c)(1)(A) & (2). This includes shifting the costs of discovery to the party requesting discovery, where doing so would protect the producing party from undue burden or expense. *See Surplus Source Group, LLC v. Mid America Engine, Inc.*, 2009 WL 961207, (E.D. Tex. 2009) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)); *see also* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from . . . undue burden or expense"). In determining whether the burden or expense of proposed discovery outweighs its likely benefit (and whether to permit or place restrictions on discovery) a court must consider (1) the needs of the case, (2) the amount in controversy, (3) the parties' resources, (4) the importance of the

issues at stake in the action, and (5) the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(iii).

## ARGUMENT

**I.     The Court Should Modify Its November 10, 2009, Order Because the Reasons Provided by PSC in Support of Its Initial Motion To Compel No Longer Exist – Thus, the Production of The Requested Files is No Longer Justified.**

While the November 10, 2009, Order does not provide written reasons for its outcome, by denying in part PSC's Motion to Compel, the Order appeared to recognize the burdensome nature of PSC's request for production of IA Files. Nonetheless, by granting the motion in part, the Court also found good cause existed *at that time* to require the United States to produce 200 IA Files per month in response to PSC's requests. In making this determination, the Court was required to decide whether the burden or expense of the proposed discovery outweighed its likely benefit, considering (1) the needs of the case, (2) the amount in controversy, (3) the parties' resources, (4) the importance of the issues at stake in the action, and (5) the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(iii). Although the Order does not elaborate on these factors, the arguments made by PSC in support of its motion no longer constitute "good cause" to support continued production. Good cause does exist, however, for issuance of a Rule 26(c) protective order to protect the United States from undue burden or expense relating to these productions.

In support of its Motion to Compel, PSC offered three arguments as to why the Court should allow production despite the burden on FEMA to produce these files. First, PSC argued that it required production of IA Files in order to assist matching its clients to the manufacturer

and installing government contractor of their EHUs.[3]  *See* PSC Memo at 3-4 (Rec. Doc. 2554); PSC Supp. Memo at 4 (Rec. Doc. 6002).  Second, PSC argued that it needed these files in order to assist in determining suitable bellwether claimants.  Third, PSC argued it required all of its clients' IA Files for "settlement purposes," stating that no settlement would be possible before obtaining and reviewing every client's IA File.  Each of these arguments now fail to constitute "good cause" to require the government to produce these files at great expense in light of Rule 26(b)(2)(C)(iii)'s factors.

Neither the needs of the case, nor the likely benefit of continued production, support continued production of these IA Files.  With regard to PSC's claimed need to match, the Court has since issued Pre-Trial Order 68 (Rec. Doc. 14200).  PTO 68 sets a deadline of June 15, 2010, for submitting matching requests to the Government and established a "last chance" matching process for those few persons who thereafter remained unmatched – this procedure does not provide for additional matching discovery of the United States.  Additionally, after nearly ten months of IA File productions, it can hardly be argued that PSC has not had ample opportunity to obtain enough files from which to make informed decisions regarding future bellwether selections.  Finally, over the past ten months, the parties have participated in extensive discovery, the Court has issued numerous rulings, and two additional juries have returned defense verdicts in bellwether cases.  These events have provided more insight for settlement purposes than any number of IA Files ever could, and severely undercut any claimed utility in requiring their continued production at Government expense.  Further, PSC has had

---

[3]    The NEMIS database, from which IA Files are created, does not track information relating to an EHU's manufacturer or government contractor.  This kind of information may be included in an IA File only if it happened by chance to be reflected in documents that made up a person's correspondence tab.

the opportunity to request some 2,000 IA Files, a sizeable sample from which to make whatever evaluations they deem necessary.[4] Therefore, neither the needs of the case, nor the likely benefit of continued production, continue to justify the production of 200 IA Files per month at Government expense.

With regard to the other factors, PSC did not initially touch upon the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and how production of IA Files would resolve such important issues. Nonetheless, given the United States' posture in this litigation, these factors do not favor continued production, and PSC's initial arguments in support of their motion to compel no longer justify continued production of IA Files concerning non-bellwether claimants. Rather, the burden of these productions for non-bellwether plaintiffs outweighs the benefit of producing these IA Files prior to a scheduling order in their respective cases; and issuance of a Rule 26(c) protective order is appropriate.

## II.     The November 10, 2009, Order Should be Modified Because it Requires the United States to Respond to Discovery Requests in Cases in Which it is Not a Party.

Due to a number of recent jurisdictional rulings, the United States is no longer a party to a large number of cases in this MDL. All claims against the United States brought by Mississippi and Alabama Plaintiffs have been dismissed, and final judgment has been entered. In addition, considering the Court's prior dismissal of all claims against the United States brought by the occupants of mobile homes and its dismissal of all simple negligence claims brought against the United States by Louisiana Plaintiffs, the status of the United States as a defendant in this litigation has been pared down considerably. Under normal circumstances,

---

[4] One would expect that if PSC's claimed needs were valid, the PSC would have sought the maximum number of 200 IA Files every month. PSC, however, has never issued this number of requests in a single month since the Order was issued allowing them to do so.

where a party is dismissed from an action, any pending discovery requests propounded on that party pursuant to the action become moot. *See Twohig*, 1992 WL 396846 at *4 (discovery request deemed moot due to defendants' dismissals from the action as parties); *see also* Fed. R. Civ. P. 34(a) (restricting requests for production to requests between parties). Here, however, the November 10, 2009, Order is not limited to requests made by persons who have an existing claim against the United States, and PSC continues to submit such IA File requests on behalf of persons who have either not sued the United States or persons whose claims against the United States have been wholly dismissed. One such example is PSC's July 22, 2010, request seeking more than 80 IA Files on behalf of Mississippi Plaintiffs. *See* Exh. 3, PSC IA File Request #21.

Requests for documents of a non-party normally require the issuance of a Rule 45 subpoena. To the extent that PSC elects to proceed in this manner to obtain IA Files, the United States requests that the Court quash such subpoenas due such a request's undue burden upon FEMA's resources – both in terms of employee hours and the cost associated with each production. In the alternative, the United States requests that the Court shift the cost of such productions to the requesting party. *See In Dart Indus. Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (limiting discovery appropriate under Rule 45 where a non-party is subjected to discovery). Under Rule 45, "the [court] must protect a [non-party] from significant expense resulting from compliance" with a subpoena. Fed. R. Civ. P. 45(c)(2)(B)(ii). Shifting the cost of production is the generally accepted way of protecting a non-party from the "significant expense" that Rule 45 seeks to avoid imposing on non-parties subject to a subpoena:

> A nonparty required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court . . . The

> court is not required to fix the costs in advance of production, although this will
> often be the most satisfactory accommodation to protect the party seeking
> discovery from excessive costs. In some instances, it may be preferable to leave
> uncertain costs to be determined after the materials have been produced,
> provided the risk of uncertainty is fully disclosed to the discovering party.

Fed. Rule Civ. P. 45(c) Advisory Committee's Note, 1991 amendments; *see also Orbit One Commc'ns, Inc. v. Numerex Corp.*, 2009 WL 799975 at *6 (E.D. La. 2009) (shifting costs of production to the party who issued the subpoena).

In this case, the Court should shift the costs of any productions permitted under Rule 45 in order to protect the United States, as a non-party in certain cases, from the significant expense associated with the production of these IA files. FEMA has determined, based upon the productions of IA files to Plaintiffs over the past ten (10) months, that each IA File produced costs, on average, $50.21 to produce. Exh. 1, Green Decl., ¶¶ 3-4; *see also* Exh. 2, Green Depo. P131:L13 - P132:L2. While the Order appears to place no limit on Plaintiffs' use of subpoenas to request IA Files, even assuming that Plaintiffs limited their requests to 200 IA Files per month, this still would cost the Government approximately $10,042.00 per month, or $120,504.00 per year. These costs are a "significant expense" that the United States, as a non-party in certain cases, should not have to bear in light of Rule 45's protection against imposing significant expense on a subpoenaed non-party, especially since the United States, as a non-party to certain actions, would derive no benefit from the production. In such situations, the Court "should [not] be reluctant to place the costs of discovery upon the party deriving the benefit therefrom." *State of Florida v. Kerr-McGee Corp.*, 669 F.2d 620, 624 n. 3 (10th Cir. 1982). Therefore, the United States requests that if the Court will not prohibit such subpoenas, that it impose the cost of $50.21 per file and require advanced payment by Plaintiffs for any IA

11

File requested pursuant to a Rule 45 subpoena.[5]

### III.  If the Court Chooses to Permit Continued IA File Requests by Louisiana Plaintiffs Who Still Have Potentially Active Claims Against the United States, a Modification of the November 2009 Order to Include Cost Shifting is Warranted.

If a court orders discovery, it may specify conditions for the discovery, including shifting the costs of that discovery to the party requesting discovery, where doing so would protect the producing party from undue burden or expense.  *See Surplus Source,* 2009 WL 961207 at * 1 (citing *Oppenheimer*, 437 U.S. at 358); *see also* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from . . . undue burden or expense").  The Court should consider the Rule 26(b)(2)(C)(iii) factors in making this determination, which are meant to assist in determining whether the burden or expense of the proposed discovery outweighs its likely benefit.  *See supra*; Fed. R. Civ. P. 26(b)(2)(C)(iii).  The Court may also exercise its discretion in considering other factors that it deems relevant to deciding the issue.

In this case, cost shifting is warranted because production of 200 IA Files per month, as the Order currently permits, constitutes a burden on FEMA's resources and a significant cost to taxpayers that outweighs the likely benefit of such production.  Additional factors the Court

---

[5]   FEMA advises that prepayment of IA Files requested may be made by check addressed to the Federal Emergency Management Agency and mailed to the following addresses:

Via Regular Mail:                              Via Express Mail & Packages:

FEMA                                           FEMA
P.O. Box 70941                                 c/o Wachovia Bank
Charlotte, NC 28272-0941                       QLP Wholesale Lockbox
                                               Lockbox #70941
                                                1525 West WT Harris Blvd - NC0810
                                               Charlotte, NC 28262

should consider also weigh in favor of cost shifting in this case, especially considering the relative benefits to the parties and the ability to control costs. Finally, Government resources and taxpayer funds should not be expended on this kind of tangential discovery prior to the setting of these cases for trial and the issuance of scheduling orders because it is very unlikely that the requesting Plaintiffs will be able to meet their burden of establishing subject-matter jurisdiction.

        **A.**    **Cost Shifting Is Warranted Because the Burden on FEMA, Both in Terms of Resources and Expense, Outweighs Any Benefit Articulated by PSC.**

The November 10, 2009 Order permits PSC to request 200 IA Files per month at Government expense. FEMA has determined, based upon the productions of IA files to Plaintiffs over the past ten (10) months, that each IA File takes, on average, one (1) hour to produce at an average cost of $50.21 per file. At 200 IA Files per month, the Order, therefore, permits PSC to monopolize 200 hours every month of FEMA employee time that could be spent on disaster assistance related tasks. *See* Exh. 2, Green Depo. P73:L17 - P74:L12 (explaining that employees who process IA File requests also perform disaster assistance activities). Further, as previously noted, the production of 200 IA Files per month costs FEMA approximately $10,042 per month, or $120,504 per year. The current Order places no limits on when this discovery should end, but "holds in abeyance" the United States request from the outset to shift costs of production. The United States urges that now is the appropriate time to end such productions or, in the alternative, shift the costs of production to the requesting party for any future requests not relating to a bellwether trial.

The significant cost in employee resources and the expense of such productions to FEMA simply does not outweigh any benefit that PSC has articulated to the Court. The needs

of the case certainly do not require it for the reasons explained above in Section I (discussing why PSC's proffered reasons no longer support production of any non-bellwether IA Files). Nor has PSC ever articulated how an important issue in this litigation would be resolved by the continued production of additional IA Files prior to the requesting Plaintiffs' cases being set for trial and subjected to a scheduling order. Further, the parties' resources and the amount in controversy do not weigh in favor of production, as it is a waste of resources to allocate FEMA employee time and taxpayer funding to producing IA Files prior to these cases being set for trial and a scheduling order issued, regardless of how much money might eventually be at stake in the litigation, even assuming these plaintiffs could overcome their hefty burden to establish subject-matter jurisdiction over their claims against the United States.

      **B.**    **Additional Factors Weigh In Favor Of Cost Shifting.**

Courts may consider additional factors when the issue of shifting the costs of discovery is raised. These include, *inter alia*, the specificity of the request; the likelihood of discovering critical information; the availability of the information from other sources; the relative benefit to the parties of obtaining the information; the costs associated with production; and ability to control costs. *See Murphy Oil USA, Inc. v. Fluor Daniel, Inc.*, 2002 WL 246439 at *5-6 (E.D. LA 2002) (citing *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421 (S.D. N.Y. 2002)). These factors support cost shifting in this case.

Where a discovery request is sweeping in nature, this generally favors shifting of costs to the requesting party. *Id*. Here, PSC argued that it desired to obtain *all* the IA Files of *all* plaintiffs to this litigation, rather than targeting its requests in a specific manner to achieve a specific end. In addition, there is a very low likelihood of the discovery critical information as

to any issue in these cases given the United States' limited potential for liability.  Also, the fact that much of the information PSC seeks could be obtained from other sources further favors cost shifting.  Plaintiffs were able to obtain matching information through FRRATS matching and the Court's "last chance" matching procedure, and further had ample opportunity to obtain enough IA Files over the past ten months to make settlement evaluations and assist with future bellwether selection.

The relative benefits to the parties is an important factor because where the responding party does not benefit from the production, this generally supports cost-shifting.  *See Oppenheimer Fund*, 437 U.S. at 364 (abuse of discretion under Rule 23(d) not to shift costs where production only benefitted requesting party's interest in identifying class members).  In this case, the United States derives no benefit from the proposed discovery.  Each IA File only becomes useful if the Court sets that particular person's case for trial.

The magnitude of the costs associated with production generally favor cost-shifting here because the cost is substantial.  *See Murphy Oil*, at *6.  As noted above, the initial Order authorizes IA File productions that may cost the Government approximately $10,042 per month / $120,504 per year, and monopolizes 200 hours of FEMA employee time.  This "hardly can be viewed as an insubstantial burden" especially in light of the fact that this production only serves to benefit the questionable needs of the PSC.  *See id.* at 362 ($16,000 production costs held substantial burden even where $500 million was involved).  Likewise, the ability to control costs largely rests with the Plaintiffs here, as they are in the best position to know what IA Files they most desire to request and can limit their requests accordingly.  The current Order simply provides no incentive for PSC to try to control costs, as FEMA now bears one hundred percent

of the costs.

Given the overwhelming number of factors favoring the shifting of costs in this case, it is most appropriate to shift the costs of production of these IA file requests to Plaintiffs. If PSC really does need these files for specific Plaintiffs prior to such Plaintiffs being subject to trial or scheduling orders, it should be willing and *required* to bear the cost associated with such requests.

      **C.**      **Changed Circumstances Regarding the United States' Potential for Liability Further Support Cost-Shifting In this Case.**

Since the November 2009 Order reserved judgment on shifting the costs of IA file production, circumstances have changed regarding the United States' potential for liability that favor cost shifting. For instance, the Court has granted the United States' motions to dismiss the claims of all Mississippi and Alabama Plaintiffs against the United States, and has dismissed all simple negligence claims brought by Louisiana Plaintiffs against the United States. In addition, the Court's previous rulings dismissing the FTCA claims of all Plaintiffs who occupied mobile homes, dismissing certain claims pursuant to the FTCA's discretionary function exception, and applying the FTCA's statute of limitations provision all further limit the scope of the United States' potential liability.

Given these rulings, to maintain a potentially viable claim against the United States, a Louisiana Plaintiff would have to successfully prove gross negligence and/or willful and wanton misconduct after establishing that the Court possesses subject matter jurisdiction by demonstrating that (1) they filed a timely administrative claim, (2) timely filed suit after exhausting their administrative remedy, and (3) that the actions at issue are not barred by the FTCA's discretionary function exception. At this point, it is highly unlikely that any individual

Plaintiff will be able to meet this burden, especially given that the extensive discovery PSC has conducted of FEMA has not generated evidence that rises to the level of negligent or wrongful acts or omissions, much less evidence of gross negligence or willful and wanton misconduct. Accordingly, the reality that the United States faces burdensome discovery requests from Plaintiffs whose claims likely are without federal subject matter jurisdiction – further illustrated by the fact that the United States has not participated in any of the bellwether trials because it has either been dismissed by the Court on jurisdictional grounds or Plaintiffs abandoned their claims before such jurisdictional motions were ruled upon – further weighs in favor of cost shifting at this juncture.  Under these circumstances, it would be an undue burden to require the United States to finance Plaintiffs' costly discovery of IA Files for non-bellwether Plaintiffs where it is unlikely that these claims will survive threshold jurisdictional challenges.

## CONCLUSION

For all the reasons set forth in the United States' initial Memorandum in Opposition (Rec. Doc. 2832), its Supplemental Response (Rec. Doc. 6645-1), and the reasons set forth herein, the Court should grant the instant motion and enter a protective order prohibiting further discovery of IA Files except upon entry of a Plaintiff specific scheduling order.  Alternatively, the United States requests that the Court further limit the requests to only those made by Louisiana Plaintiffs who resided in non-mobile home EHUs and who, at least facially, have alleged that the United States acted with gross negligence, and that the Court shift the costs associated with these productions to the PSC – the requesting party.

Dated: September 10, 2010                     Respectfully Submitted,


| | |
|---|---|
| TONY WEST<br>Assistant Attorney General, Civil Division | HENRY T. MILLER<br>ADAM BAIN<br>Senior Trial Counsel |
| J PATRICK GLYNN<br>Director, Torts Branch, Civil Division | ADAM DINNELL<br>MICHELLE BOYLE |
| DAVID S. FISHBACK<br>Assistant Director | Trial Attorneys |
| | //S// *Jonathan R. Waldron* |
| OF COUNSEL<br>JORDAN FRIED<br>Associate Chief Counsel | JONATHAN R. WALDRON<br>(Mo. Bar No. 58898)<br>Trial Attorney<br>United States Department of Justice |
| JANICE WILLIAMS-JONES<br>Senior Trial Attorney<br>FEMA/DHS<br>Department of Homeland Security<br>Washington, D.C. 20472 | Civil Division – Torts Branch<br>P.O. Box 340, Ben Franklin Station<br>Washington, D.C. 20004<br>Attorney Telephone: (202) 307-2091<br>Jonathan.Waldron@USDOJ.Gov |
| | Attorneys for the United States of America |

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 10, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

                                        //S// *Jonathan R. Waldron*
                                        JONATHAN R. WALDRON (Mo. Bar No. 58898)